SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                   :
                                                        :    Chapter 11
                                                        :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**            :    Case No. 05-11063
                                                        :
            Debtors.                                    :    (Jointly Administered)
                                                        :
---------------------------------------------------------------x

**MOTION FOR AUTHORITY (A) TO PREPARE A CONSOLIDATED LIST
OF CREDITORS AND A LIST OF EQUITY SECURITY HOLDERS IN LIEU OF
A MATRIX, (B) TO FILE A CONSOLIDATED LIST OF THE FIFTY LARGEST
GENERAL UNSECURED CREDITORS, AND (C) TO MAIL INITIAL NOTICES**

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]   In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie

**Background**

**A.     Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.     Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors currently operate more than 900 stores in the United States. Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

---

Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

7. The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins. The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C. Capital Structure.**

8. The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9. The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million. Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005. The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005. The waiver expires on June 29, 2005.

10. The Credit Agreement provides for revolving loans and the issuance of letters of credit. It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto. As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of approximately $427 million. The Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11. Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture"). Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes. The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity. The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12. Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN. All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.     Events Leading to the Debtors' Chapter 11 Cases.**

13. In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan"). The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core, and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14. As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States. The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations. Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15. Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses. The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate. The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16. In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November. When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17. On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock. The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18. The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms. Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million. As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.   As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

### Relief Requested

20.   By this Motion, the Debtors request entry of an order authorizing them (a) to prepare a list of creditors and a list of equity security holders in lieu of a matrix; (b) to file a consolidated list of the Debtors' fifty (50) largest unsecured creditors; and (c) to mail initial notices.

**A.   Consolidated List of Creditors and Equity Security Holders.**

21.   By this Motion, and in accordance with this Court's Amended General Order M-138, the Debtors request authority to prepare a consolidated list of creditors and a list of equity security holders in electronic format only, identifying their creditors in the format or formats currently maintained in the ordinary course of business in lieu of any required creditor matrix. The Debtors further seek authority not to file either list with the Court concurrently with the filing of their bankruptcy petitions, but instead to make such lists available only upon request.

22. In this case, permitting the Debtors to maintain a consolidated list of their creditors in electronic format only in lieu of filing a creditor matrix is warranted under the circumstances. Indeed, converting the Debtors' computerized information to a format compatible with the matrix requirements would be an exceptionally burdensome task and would greatly increase the risk and recurrence of error with respect to information already intact on computer systems maintained by the Debtors or their agents.

23. Furthermore, Rule 1007-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") directs a debtor to comply with any standing orders issued by the Court regarding the filing of creditor lists. Pursuant to Amended General Order M-138, dated March 16, 1998, a debtor filing a petition with more than 1,000 creditors and equity security holders, such as the case here, is directed to contact the Clerk of the Court and to use the services of a process and claims agent to assist with such lists.

24. Moreover, concurrently with this Motion and in accordance with Amended General Order M-138, the Debtors have filed an application (the "Notice and Claims Agent Application") seeking the appointment of Logan & Company ("Logan") as claims, noticing and balloting agent in these Chapter 11 Cases. If the Notice and Claims Agent Application is granted, Logan will, among other things, (a) assist with the consolidation of the Debtors' computer records into a creditor database, and (b) complete the mailing of the Notices to the parties in such database.

25. After consultation with Logan, the Debtors believe preparing the consolidated list in the format or formats currently maintained in the ordinary course of business will be sufficient to permit Logan to notice promptly all applicable parties. Accordingly, it is in the best interest of

the Debtors' estates to avoid the cost and risks associated with preparing and filing a separate matrix.

26. Similar relief to the relief requested herein has been granted in this and other courts. In re Tower Automotive, Inc., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 4, 2005); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 3, 2001); In re HQ Global Holdings, Inc., Case No. 02-10760 (Bankr. D. Del. March 14, 2002); In re Kaiser Aluminum Corp., Case No. 02-10429 (Bankr. D. Del. Feb. 13, 2002).

**B.     Single Consolidated List of the Fifty Largest General Unsecured Creditors.**

27. Pursuant to Bankruptcy Rule 1007(d), a debtor shall file "a list containing the name, address and claim of the creditors that hold the 20 largest unsecured claims, excluding insiders…." Fed. R. Bankr. P. 1007(d). However, because many creditors are common to the Debtors, and the Debtors would expend significant resources and effort to reconcile which claims are assertable against which Debtors, the Debtors request authority to file a single, consolidated list of their fifty (50) largest general unsecured creditors.

28. The Debtors have thousands of potential unsecured creditors. Requiring each of the Debtors to file a separate top-twenty list in each of their respective cases would generate hundreds of names, addresses and claim amounts. The Debtors do not believe that such a voluminous filing would facilitate the United States Trustee's or any other party in interest's review of creditor claims. In addition, the exercise of compiling separate top-twenty lists would consume an excessive amount of the Debtors' scarce time and resources. In light of the foregoing, the Debtors submit that authority to file a single consolidated list of the fifty (50) largest unsecured creditors in these cases is in the best interest of the estates and will facilitate the efficient and orderly administration of these cases.

29. Finally, relief similar to that requested in this Motion has been granted in other large Chapter 11 cases. See, e.g., In re Tower Automotive, Inc., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 4, 2005); In re NRG Energy, Inc., Case No. 03-13054 (Bankr. S.D.N.Y. May 14, 2003); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 3, 2001); In re HQ Global Holdings, Inc., Case No. 02-10760 (Bankr. D. Del. March 14, 2002); In re Kaiser Aluminum Corp., Case No. 02-10429 (Bankr. D. Del. Feb. 13, 2002).

**C.     Mail Initial Notices to Creditors.**

30. As stated above, contemporaneously herewith, the Debtors are seeking authority to retain Logan as their notice and claims agent. The Debtors propose that Logan undertake all initial mailings directed by the Court or the United States Trustee or required by the Bankruptcy Code. Additionally, Logan will assist the Debtors in preparing creditor lists and mailing required notices.

31. With such assistance, the Debtors will be prepared to file a computer-readable consolidated list of creditors and a list of equity security holders upon request, and will be capable of undertaking all necessary mailings.

**Notice**

32. Notice of this Motion has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## **Waiver of Memorandum of Law**

33. Pursuant to Local Rule 9013-1(b), because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

(a) authorizing the Debtors to prepare a consolidated list of creditors and a list of equity security holders in lieu of a matrix;

(b) authorizing the Debtors to file a consolidated list of their fifty (50) largest general unsecured creditors;

(c) authorizing the Debtors to mail initial notices with the assistance of their claims agent; and

(d) granting such other and further relief as is just and proper.

Dated: February 21, 2005
      New York, New York

           /s/     *D. J. Baker*
           D. J. Baker (DB 0085)
           Sally McDonald Henry (SH 0839)
           Rosalie Walker Gray
           SKADDEN, ARPS, SLATE, MEAGHER
            & FLOM LLP
           Four Times Square
           New York, New York 10036
           Telephone: (212) 735-3000
           Facsimile: (917) 777-2150

           -and-

           Sarah Robinson Borders
           Brian C. Walsh
           KING & SPALDING LLP
           191 Peachtree Street
           Atlanta, Georgia 30303
           Telephone: (404) 572-4600
           Facsimile: (404) 572-5100

           PROPOSED ATTORNEYS FOR THE DEBTORS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                              :
                                                   :          **Chapter 11**
                                                   :
**WINN-DIXIE STORES, INC., et al.,**               :          **Case No. 05-11063**
                                                   :
            Debtors.                               :          **(Jointly Administered)**
                                                   :
------------------------------------------------------------x

**ORDER AUTHORIZING THE DEBTORS (A) TO PREPARE A CONSOLIDATED LIST OF CREDITORS AND A LIST OF EQUITY SECURITY HOLDERS IN LIEU OF A MATRIX, (B) TO FILE A CONSOLIDATED LIST OF THE FIFTY LARGEST GENERAL UNSECURED CREDITORS, AND (C) TO MAIL INITIAL NOTICES**

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order authorizing (a) the preparation of a consolidated list of creditors and a list of equity security holders in lieu of a matrix, (b) the filing of a consolidated list of the Debtors' fifty largest general unsecured creditors, and (c) the mailing of initial notices; all as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motion and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the

Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required, and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED, that, notwithstanding Bankruptcy Rule 1007(d) and Local Rule 1007-1, the Debtors are authorized to prepare a consolidated list of creditors and a list of equity security holders in a computer-readable format that is acceptable to the Clerk of the Court and to make such list available only upon request; and it is further

ORDERED, that the Debtors are authorized to file a consolidated list of their fifty (50) largest general unsecured creditors; and it is further

ORDERED, that the Debtors, with the assistance of Logan and Company (upon this Court's authorization to engage Logan & Company as the Debtors' notice and claims agent (the "Notice and Claims Agent")), are authorized, but not directed, to mail initial notices, such as (a) a notice of filing of the Chapter 11 Cases; (b) a notice of a meeting of creditors under section 341 of the Bankruptcy Code; and (c) any correspondence the Debtors may wish to send to creditors and equity security holders as part of the Debtors' communication efforts to keep their creditors and equity security holders informed with respect to the status of the Chapter 11 Cases; and it is further

ORDERED, that the Debtors, with the assistance of the Notice and Claims Agent, are authorized, but not directed, to undertake all mailings directed by the Court, the United States

-3-

Trustee or as required by the Bankruptcy Code, including, but not limited to, the notice of commencement and any other correspondence that the Debtors may wish to send to creditors and equity security holders; and it is further

ORDERED, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order; and it is further

ORDERED, that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: February ___, 2005
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE