SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                               :
                                                    :    **Chapter 11**
                                                    :
**WINN-DIXIE STORES, INC., et al.,**                :    **Case No. 05-11063**
                                                    :
                Debtors.                                  :    **(Jointly Administered)**
                                                    :
---------------------------------------------------------------x

### MOTION FOR APPROVAL OF NOTICE
### PROCEDURES AND SCHEDULING OMNIBUS HEARINGS

      Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession (collectively, the "Debtors"), respectfully represent:

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**Background**

**A.     Chapter 11 Filings.**

1. The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2. The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.     Company Background.**

5. The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors currently operate more than 900 stores in the United States. Substantially all of the Debtors' store locations are leased rather than owned.

6. The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins. The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.    Capital Structure.**

8.      The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.      The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million. Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005. The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005. The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit. It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto. As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of approximately $427 million. The Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11. Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture"). Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes. The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity. The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12. Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN. All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.     Events Leading to the Debtors' Chapter 11 Cases.**

13. In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan"). The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core, and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14. As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States. The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations. Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15. Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses. The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate. The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16. In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November. When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17. On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock. The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18. The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms. Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million. As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

## Relief Requested

20.     By this Motion, the Debtors request entry of an order, pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007, (a) establishing notice procedures to be implemented in the Debtors' Chapter 11 cases and (b) scheduling omnibus hearings approximately every two weeks.

**A.    The Master Service List**

21.     More than 200,000 creditors and parties in interest may be entitled to receive notice in these cases. To require the Debtors to provide notice of all pleadings and other papers to these parties in interest would be extremely burdensome and costly to the Debtors' estates, as a result of photocopying and postage expenses as well as other expenses associated with such large mailings. The Debtors, therefore, seek to establish streamlined notice procedures that will

limit the administrative costs of these Chapter 11 cases, while still providing effective notice to parties in interest.

22.     The Debtors propose to establish a list of entities to receive notice of all matters (the "Master Service List"), which would include the following: (i) the Office of the United States Trustee; (ii) the Debtors; (iii) the attorneys for the Debtors; (iv) prior to the appointment of an official committee of unsecured creditors (the "Committee"), the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (v) following the appointment of the Committee, the members of and attorneys for the Committee; (vi) the attorneys for any other committee appointed by the Court; (vii) the attorneys for the Debtors' senior secured lenders; (viii) counsel to the Agent for the Debtors' proposed post-petition debtor-in-possession lenders; (ix) the indenture trustee for the holders of the Debtors' 8 7/8% Senior Notes due 2008; (x) those persons who have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002; and (xi) the Securities and Exchange Commission, the Internal Revenue Service, state and federal attorneys general, and other government agencies, to the extent required by the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

23.     The Debtors submit that notice should be limited to the Master Service List for all matters covered by Bankruptcy Rule 2002 (the "Rule 2002 Matters"), with the express exception of the following:  (i) notice of the first meeting of creditors pursuant to Section 341 of the Bankruptcy Code; (ii) the time fixed for filing proofs of claim pursuant to Bankruptcy Rule 3003(c); (iii) the time fixed for filing objections to, and the hearing to consider approval of, a disclosure statement or confirmation of a plan of reorganization; (iv) notice and transmittal of ballots for accepting or rejecting a plan of reorganization; (v) any hearing on dismissal of the

Chapter 11 cases or their conversion to another chapter; and (vi) the time fixed for accepting or rejecting a proposed modification to a plan of reorganization.

24.     In the case of all other proceedings, notice would be given to the parties on the Master Service List and to any other persons whose specific rights or interests are directly affected by such proceedings.  The Master Service List would also be used for pleadings, papers, and proceedings in addition to Rule 2002 Matters that may be required by the Local Rules.

25.     The Debtors (or their Court-appointed claims agent) will update the Master Service List on a monthly basis to include the name and address of any party in interest that has made a written request for notice since the preceding month.  The updated Master Service List will be filed with the Court only in the event that there is a change to it.

**B.     Omnibus Hearing Dates.**

26.     The Debtors also request that the Court schedule dates for regular, monthly omnibus hearings at which all matters shall be heard, unless the Court orders otherwise for good cause shown.  Given the size and complexity of these Chapter 11 cases, it is likely that numerous matters will require a hearing to consider the positions of various parties in interest.  In the absence of omnibus hearings, parties in interest, including the Debtors, will be required to seek separate hearing dates for matters requiring a hearing.  As a result, the need for hearings may increase, and important matters requiring the Court's consideration could be delayed, thus prejudicing the Debtors' estates.

27.     The Debtors propose that any entity submitting a matter for consideration at an omnibus hearing be required to serve the applicable pleading and all supporting documentation no less than twenty (20) days prior to the applicable hearing date, if possible, and in no event, without order of the Court, less than ten (10) days prior to the applicable hearing date.

28.     The notice accompanying any such pleading should include the title of the pleading, the time and date of the objection deadline (as determined below) and the omnibus hearing date (or other hearing date, as ordered by the Court) at which the party intends to present the pleading.  Unless otherwise ordered by the Court, the objection deadline for all matters should be (a) no later than the seventh (7th) calendar day before the applicable hearing date if the filing is served at least twenty (20) days prior to the applicable hearing date; or (b) no later than the third (3rd) calendar day before the applicable hearing date if the filing is served on less than twenty (20) but at least ten (10) days prior to the applicable hearing date.

29.     The notice should also include a statement that the relief requested in the pleading may be granted without a hearing if no objection is timely filed.

**Basis for Relief**

30.     Pursuant to Bankruptcy Rules 2002(m) and 9007, this Court may designate matters requiring notice, the form and manner of such notice, and the recipients to whom notice must be provided.

31.     Section 105(a) of the Bankruptcy Code provides that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  The establishment of noticing requirements as set forth herein, will promote the Debtors' reorganization efforts by preserving assets that otherwise would be consumed by unnecessary copying, postage, and related expenses.  Such relief will benefit the Debtors' estates and their creditors by conserving resources, while at the same time not prejudicing the rights of any parties in interest in these cases.  Therefore, the relief sought herein falls within Section 105(a) of the Bankruptcy Code.

32. Pursuant to the notice procedures set forth above, all parties in interest that may be affected directly by the relief sought by a particular filing or pleading will receive notice of such filing or pleading. Thus, no party will be adversely affected by the relief requested herein. Limited notice procedures are routinely granted by this Court in large Chapter 11 cases to reduce the expense of the administration of the estate. <u>See</u>, <u>e.g.</u>, <u>In re Tower Automotive, Inc.</u>, Case No. 05-10578 (Bankr. S.D.N.Y. 2005); <u>In re Ogden New York Services, Inc.</u>, Case Nos. 02-40826 through 02-40949 (Bankr. S.D.N.Y. 2002); <u>In re WorldCom, Inc.</u>, Case Nos. 02-13532, 02-13533, 02-42154 through 02-42330 (Bankr. S.D.N.Y. 2002). For these reasons, the Debtors believe the proposed notice procedures are appropriate and should be approved and implemented in these Chapter 11 cases.

33. Similarly, by scheduling omnibus hearings, the Court will facilitate the Debtors' reorganization efforts by enabling the Debtors and other parties in interest to prepare and present motions or applications on an orderly and timely basis, thus reducing the need for emergency hearings and/or expedited relief. In addition, such relief will likely minimize the costs and expenses associated with numerous and potentially irregularly scheduled hearing dates.

## **Notice**

34. Notice of this Motion has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

**Waiver of Memorandum of Law**

35. Pursuant to Local Rule 9013-1(b), because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

(a) approving limited notice and notice procedures;

(b) scheduling omnibus hearings; and

(c) granting the Debtors such other and further relief as is just and proper.

Dated: February 21, 2005
New York, New York

/s/    D. J. Baker
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (917) 777-2150

-and-

Sarah Robinson Borders
Brian C. Walsh
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

PROPOSED ATTORNEYS FOR THE DEBTORS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re                                                       :
                                                            :    **Chapter 11**
                                                            :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**                 :    **Case No. 05-11063**
                                                            :
            Debtors.                                        :    **(Jointly Administered)**
                                                            :
-------------------------------------------------------------x

## ORDER ESTABLISHING NOTICE PROCEDURES
## AND SCHEDULING OMNIBUS HEARINGS

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order establishing notice procedures and scheduling omnibus hearings, all as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court

having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that the Debtors shall establish a master service list (the "Master Service List") that shall initially include the following parties in interest:  (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Debtors; (iii) the attorneys for the Debtors; (iv) prior to the appointment of an official committee of unsecured creditors (the "Committee"), the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (v) following the appointment of the Committee, the members of and attorneys for the Committee; (vi) the attorneys for any other committee appointed by the Court; (vii) the attorneys for the Debtors' senior secured lenders; (viii) counsel to the Agent for the Debtors' proposed post-petition debtor-in-possession lenders; (ix) the indenture trustee for the holders of the Debtors' 8 7/8% Senior Notes due 2008; (x) those persons who have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002; and (xi) the Securities and Exchange Commission, the Internal Revenue Service, state and federal attorneys general, and other government agencies, to the extent required by the Bankruptcy Rules and the Local Rules; and it is further

ORDERED that the Debtors are authorized to limit notice to those parties in interest included in the Master Service List for all matters covered by Bankruptcy Rule 2002 (the "Rule 2002 Matters"); and it is further

ORDERED that in the case of proceedings other than Rule 2002 Matters, absent further Court order, the Debtors are authorized to limit notice to those parties included on the

Master Service List and any other person whose specific rights or interests are directly affected by such proceeding; and it is further

ORDERED that the Debtors or their Court-appointed claims agent shall update the Master Service List monthly and shall file an updated Master Service List with the Court if it includes changes from the last Master Service List filed with the Court; and it is further

ORDERED that notwithstanding the foregoing, notice of the following shall be provided to all known creditors and other parties in interest, at their last address known to the Debtors, unless otherwise ordered by the Court:  (a) notice of the first meeting of creditors pursuant to Section 341 or 1104(b) of the Bankruptcy Code; (b) notice of the time fixed for filing proofs of claim pursuant to Bankruptcy Rule 3003(c); (c) notice of the time fixed for filing objections and the hearing to consider approval of a disclosure statement; (d) notice of the time fixed for filing objections and the hearing to consider confirmation of a plan of reorganization; (e) notice of and transmittal of ballots for accepting or rejecting a plan of reorganization; (f) notice of any hearing on dismissal of the Chapter 11 cases or their conversion to another chapter; and (g) notice of the time fixed for accepting or rejecting a proposed modification to a plan of reorganization; and it is further

ORDERED that the Court shall conduct omnibus hearings approximately every two weeks in the Debtors' Chapter 11 cases ("Omnibus Hearings"); and it is further

ORDERED that the first Omnibus Hearing shall be on _____, 2005 at _____ __.m prevailing Eastern Time; and it is further

ORDERED that the Omnibus Hearings will occur thereafter as may be scheduled by the Court; and it is further

ORDERED that all matters requiring a hearing in the Debtors' Chapter 11 cases shall be set for hearing at an Omnibus Hearing unless alternative dates are approved by the Court for good cause shown; and it is further

ORDERED that any entity submitting a matter for consideration at an omnibus hearing be required to serve the applicable pleading and all supporting documentation no less than twenty (20) days prior to the applicable hearing date, if possible, and in no event, without order of the Court, less than ten (10) days prior to the applicable hearing date and it is further

ORDERED that the notice accompanying any such pleading shall include the title of the pleading, the time and date of the Objection Deadline (as defined below) and the date of the Omnibus Hearing (or other hearing date, as ordered by the Court) at which the party intends to present the pleading; and it is further

ORDERED that, unless otherwise ordered by the Court, the objection deadline for all matters shall be (a) no later than the seventh (7th) calendar day before the applicable hearing date if the filing is served at least twenty (20) days prior to the applicable hearing date; or (b) no later than the third (3rd) calendar day before the applicable hearing date if the filing is served on less than twenty (20) but at least ten (10) days prior to the applicable hearing date (the "Objection Deadline"); and it is further

ORDERED that the notice shall also include a statement that the relief requested in the pleading may be granted without a hearing if no objection is timely filed; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

-5-

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: February ___, 2005
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE