SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**In re**                                                    :
                                                             :    **Chapter 11**
                                                             :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**                  :    **Case No. 05-11063**
                                                             :
                              **Debtors.**                   :    **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

<u>**APPLICATION FOR APPROVAL OF AGREEMENT WITH LOGAN & COMPANY, INC. AND APPOINTMENT OF LOGAN & COMPANY, INC. AS CLAIMS, NOTICING, AND BALLOTING AGENT FOR THE DEBTORS**</u>

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie

## Background

**A.      Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Application under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.      Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

---

Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.      Capital Structure.**

8.      The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.      The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations under the Credit Agreement in the aggregate amount of approximately $427 million.  The Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.     Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture").  Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes.  The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity.  The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12.     Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN.  All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.     Events Leading to the Debtors' Chapter 11 Cases.**

13.     In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core,

and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.     Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second

fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million.  As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

**Relief Requested**

20.     By this Application, the Debtors request entry of an order, pursuant to 28 U.S.C. § 156(c), approving the Debtors' agreement with Logan & Company, Inc. ("Logan") and appointing Logan as claims, noticing, and balloting agent for the Debtors.

**Basis for Relief**

21.     Pursuant to 28 U.S.C. § 156(c), this Court is authorized to utilize facilities other than those of the Clerk's office for the administration of bankruptcy cases, including such

matters as giving notice of hearings and orders filed in these Chapter 11 cases, the meeting of creditors pursuant to Section 341 of the Bankruptcy Code, and claims bar dates, and providing record-keeping and claims-docketing assistance.  For the reasons set forth below, the Debtors believe it is necessary and in the best interest of their creditors and estates to engage Logan to act as outside agent to the Clerk of the Bankruptcy Court to assume full responsibility for the distribution of notices and proof of claim forms and the maintenance, secondary processing, and docketing of all proofs of claim filed in the Debtors' bankruptcy cases.  In addition, the Debtors have determined that they will require the services of Logan with respect to the mailing of various pleadings and other papers in these cases.

22.    Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of entities that the Debtors will be required to serve with various notices, pleadings, and other documents filed in these cases.  In consideration of the number of anticipated claimants and parties in interest and the nature of the Debtors' businesses, the Debtors respectfully submit that the appointment of Logan will expedite the distribution of notices and relieve the Clerk's office of the administrative burden of processing such notices.

23.    Logan is a data processing firm that specializes in noticing, claims processing, voting, and other administrative tasks in Chapter 11 cases.  The Debtors wish to engage Logan to send out certain notices, to maintain claims files and a claims and voting register, to act as balloting agent with respect to certain creditors, to assist with the preparation of the Debtors' schedules and statements of financial affairs, and, if necessary, to serve certain motions and orders.  The Debtors believe that such assistance will expedite service of papers, streamline the claims administration process, and permit the Debtors to focus on their reorganization efforts.

24.      Logan will, as directed by the Debtors, undertake the actions and procedures provided in the agreement attached hereto as <u>Exhibit A</u>, including, but not limited to, the following:

a)      establishing and maintaining a consolidated list of creditors;

b)      serving notices to parties in interest;

c)      maintaining all proofs of claim and proof of interest filed in these cases (collectively, the "Claims");

d)      docketing all the Claims;

e)      maintaining and transmitting to the Clerk's office the official claims registers;

f)      maintaining current mailing lists of all entities that have filed Claims and notices of appearance it receives;

g)      providing the public access for examination to all the Claims at its premises during regular business hours and without charge;

h)      recording all transfers it receives, pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure;

i)      providing the Debtors with consulting and computer software support regarding the reporting and management requirements of the bankruptcy administration process;

j)      providing software education and training as well as consulting and programming support for Debtor-requested reports, program modifications, database modification, and/or other features;

k)      providing assistance in preparing the Debtors' schedules if requested by the Debtors; and

l)      providing balloting and solicitation services to the Debtors;

25.     Logan has substantial experience in the matters upon which it is to be engaged. Logan has provided identical or substantially similar services in other Chapter 11 cases in a variety of jurisdictions, including this District, such as:  In re Williams Communications Group, Inc., Case No. 02-11957 (Bankr. S.D.N.Y.); In re FiberMark, Inc., Case No. 04-10463 (Bankr. D. Vt. 2004); In re GenTek Inc., Case No. 02-12986 (Bankr. D. Del.); In re ICG Communications, Inc., Case No. 00-04238 (Bankr. D. Del.); In re Exodus Communications, Inc., Case No. 01-10539 (Bankr. D. Del.); In re Montgomery Ward, LLC, Case No. 00-04667 (Bankr. D. Del.); In re Einstein/Noah Bagel Corp., Case No. 00-4447 (Bankr. D. Ariz.); In re Eagle Food Centers, Inc., Case No. 00-01311 (Bankr. D. Del.); In re Philip Servs. (Delaware), Inc., Case No. 99-02385 (Bankr. D. Del.); and In re Favorite Brands Int'l Holding Corp., Case No. 99-00726 (Bankr. D. Del.).  Thus, the Debtors believe that Logan is well-suited to serve as claims, noticing, and balloting agent in these Chapter 11 cases.

26.     Annexed hereto as Exhibit B is the declaration of Kathleen M. Logan of Logan, in which she represents that, upon information and belief, Logan is not affiliated with the Debtors, their creditors, other parties in interest, the United States Trustee, or any person employed by the Office of the United States Trustee, and that to the best of Logan's knowledge, after due inquiry, it does not hold or represent any interest adverse to the Debtors, their estates, or any class of creditors or equity interest holders with respect to the matters upon which it is to be engaged.

27.     Logan's compensation is set forth in the agreement attached hereto.  The Debtors respectfully submit that such compensation is reasonable in light of the services to be performed.

Furthermore, the Debtors request authorization to compensate Logan for services rendered, without further order of this Court, upon the submission of monthly invoices by Logan summarizing, in reasonable detail, the services for which compensation is sought.[2]

### Notice

28.    Notice of this Application has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

### Waiver of Memorandum of Law

29.    Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Application.

WHEREFORE, the Debtors respectfully request that this Court:

(a)    enter an order approving the Debtors' agreement with Logan and appointing Logan as claims, noticing, and balloting agent; and

(b)    grant the Debtors such other and further relief as is just and proper.

---

[2]    Because Logan will serve as an administrative agent and an adjunct to the Court, the Debtors do not believe that Logan is a "professional" whose retention is subject to approval under Section 327 of the Bankruptcy Code or whose compensation is subject to approval under Sections 330 and 331 of the Bankruptcy Code.

Dated:  February 21, 2005
        New York, New York

*/s/      D. J. Baker*
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:   (917) 777-2150

-and-

Sarah Robinson Borders
Brian C. Walsh
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

PROPOSED ATTORNEYS FOR THE DEBTORS

**<u>EXHIBIT A</u>**

**<u>AGREEMENT</u>**



## AGREEMENT OF SERVICE

This Agreement is entered into as of the 9th day of February, 2005 between WINN-DIXIE STORES, INC., whose principal place of business is located at 5050 Edgewood Court, Jacksonville, FL 32254-3699 (hereinafter with its officers, servants, agents, employees, licensees, and subcontractors, the "Customer") and LOGAN & COMPANY, INC., whose principal place of business is located at 546 Valley Road, Upper Montclair, New Jersey 07043 (hereinafter with its officers, servants, agents, employees, licensees, and subcontractors, "Logan") and continue until either party shall exercise its rights of suspensions or termination as set forth below.

## TERMS AND CONDITIONS

I.    SERVICES

A.    Logan agrees to be Customer's claims, noticing, and balloting agent and, upon request, to aid Customer prepare its schedules of assets and liabilities and/or schedules of financial affairs (the "Schedules"). Such services include, but are not limited to, providing balloting and solicitation services to Customer as proponent of a plan(s) of reorganization, reconciling claims, and acting as the official claims agent in lieu of the Bankruptcy Court (as hereinafter defined) in:

i.    serving notices to parties in interest;

ii.   maintaining all proofs of claim and proof of interests filed in the bankruptcy case(s) that it receives (collectively, the "Claims");

iii.  docketing all the Claims;

iv.   maintaining and transmitting to the Clerk's office the official claims registers;

v.    maintaining current mailing lists of all entities that have filed Claims and notices of appearance it receives;

vi.   providing the public access for examination to all the Claims at its premises during regular business hours and without charge; and

vii.  recording all transfers it receives, pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedures.

B.    Logan further agrees to provide Customer with consulting and computer software support regarding the reporting and management requirements of the bankruptcy administration process.

C.    Logan further agrees to educate and train Customer in the use of the support software and provide Logan's Standard Reports as well as consulting and programming support for Customer-requested reports, program modifications, database modification, and/or other features in accordance with the Fee Schedule annexed hereto.

D.    Should Logan be required to provide assistance in preparing Customer's Schedules at Customer's place of business, Customer agrees to provide Logan adequate accommodations to perform such services. Such accommodations shall include, but not be limited to, a private office or conference room in which three people can work comfortably and that may be locked, three data lines, three telephone lines, two laser printers comparable to HP 4050 or HP 4100, and availability to high speed copiers and facsimile machines. In addition, Customer agrees to provide Logan twenty-four hour security access to the premises.

II.    PRICES, CHARGES, AND PAYMENT

A.    Logan agrees to charge and Customer agrees to pay Logan's standard prices for its services, expenses, and supplies at the rates or prices in effect on the day such services and/or supplies are provided to Customer at the request of Customer or Customer's professionals, in accordance with the Fee Schedule annexed hereto, and made part hereof it being understood that Customer will pay (i) Logan by wire transmission of funds for all (a) legal publications costs and (b) postage for any mailing to at least 500 creditors, before such publication or mailing, as the case may be, and (ii) outside third parties (such as banks, brokers, ADP, nominees, intermediaries, or agents) directly for any costs incurred in mailing notices, ballots, or any pleadings to shareholders, bondholders, or any other parties.

B.    Logan's prices, charges, and rates are subject to adjustment annually in July.

C.    Customer agrees to pay Logan for any necessary out-of-pocket expenses incurred for transportation, lodging, meals, and related items.

D.    Customer agrees to make an advance payment to Logan by wire transfer to be applied to the final bill in an amount equal to $50,000 (the "Retainer") at the time Customer executes this Agreement. This advance payment will not be used for monthly invoices. Should there remain any outstanding amounts due for services Logan provided before the filing of the bankruptcy case(s), however, then Logan shall be entitled to apply the Retainer to such outstanding amounts and Customer agrees to replenish the Retainer by wire transfer in the same amount thus set off within two business days of notice of the setoff.

2

E.  Logan agrees to submit an invoice to the Customer for each calendar month in which work was performed, in a reasonable time frame; provided, however, that Logan may submit interim invoices in the month preceding any filing. Customer agrees that the amount invoiced (less the amount already paid pursuant to paragraph A above) is due and payable upon its receipt of the invoice. If any amount is unpaid as of 30 days from the receipt of the invoice, Customer further agrees to pay a late charge, calculated as one and one-half percent (1 1/2%) interest on the amount unpaid, accruing from the invoice date. In the case of a dispute in the invoice amount, Customer shall give written notice to Logan within ten (10) days of receipt of the invoice. Interest shall not accrue on any amounts in dispute. The balance of the invoice amount is due and payable in the normal course.

## III.   WARRANTY

A.  Rerun time will be at the cost and expense of Customer except when it is established that machine error or a Logan employee error required such rerun. Accuracy and adequacy of Customer's information are the responsibility of Customer. Customer, in accepting the use of the program, acknowledges the adequacy of the program for its intended use. Logan shall not be liable for non-performance or delay of performance hereunder should such arise out of causes beyond its reasonable control. Such causes may include, but are not limited to, acts of God or a public enemy, fire, electrical or machine failure, strike, lockout, governmental order or regulation, or any other cause, whether similar or dissimilar.

B.  Customer agrees that Logan's limited warranty contained in this Agreement is in lieu of all warranties, expressed or implied, including, but not limited to, any implied warranty of merchantability, fitness, or adequacy for any particular purpose or use, quality, or productiveness capacity. This paragraph shall supersede any paragraph of this Agreement deemed inconsistent with it.

C.  Customer warrants that it will maintain adequate supporting material to enable Logan to regenerate disk files, mass storage files, printer output, and other data furnished or transmitted to Logan by Customer. If the loss of such data is due to Logan's machine failure or its negligence, Logan's liability in any such loss shall be limited to the cost required, at Logan's current rate, to regenerate such lost data from Customer's supporting material on Logan's equipment deemed most suitable by Logan for such regeneration. If Customer has not maintained such adequate supporting material, Logan's liability shall be limited to the same cost as if Customer had done so. Adequate supporting material is defined as exact copies of the diskettes, compact discs, soft copies, or other data furnished to Logan except for records or data which are not in machine-readable form (e.g., typewritten or handwritten source documents) unless such non machine-readable form was furnished to Logan. In no event

shall Logan's liability under this paragraph exceed its liability as set forth elsewhere in this Agreement.

D.     Logan shall have no liability for the loss of any data at Customer's remote terminal site or through telephone communication facilities while transmitting to or from Logan's data center.

E.     Logan warrants that it will maintain daily back-ups of all Customer data and provide system security as to the access of Customer's data files.

IV.     RIGHTS OF OWNERSHIP AND SECURITY INTEREST

A.     The parties understand that the software programs and other materials furnished by Logan pursuant to this Agreement and/or developed during the course of this Agreement by Logan are the sole property of Logan. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation. Customer agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.     Customer further agrees that any ideas, concepts, know-how, or techniques relating to data processing or Logan's performance of its services developed during the course of its Agreement by Logan shall be the exclusive property of Logan.

C.     Logan further agrees that all non-proprietary records, data, files, input material, report forms, and other non-proprietary data received, computed, developed, used, and/or stored pursuant to this Agreement are the exclusive property of Customer (collectively, "Customer Property") and that all such Customer Property shall be furnished without additional charge, except for actual processing costs, to Customer in available machine-readable form as soon as practicable upon termination of this Agreement for any reason whatsoever, provided, however, that it is understood that Logan shall have a possessory security interest in all Customer Property.

D.     Furthermore, upon Customer's request at any time or times while this Agreement is in effect, Logan shall, as soon as practicable, deliver to Customer at Customer's sole expense, any or all of Customer Property, in the form requested by Customer; provided, however, that Customer shall have fulfilled its obligations to Logan under Section II above.

4

V.   NON-SOLICITATION

Customer agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ, or otherwise retain staff of Logan during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless mutually agreed upon by both parties.

VI.   CONFIDENTIALITY

Logan agrees to treat confidentially and keep confidential all Customer records and other information. Customer on behalf of itself and its employees agrees to keep all information with respect to Logan's system, procedures, and software confidential; provided, however, that if either party is required to produce any such information by order of any court, governmental agency, or other regulatory body it may, upon not less than five business days' written notice to the other party, release the required information.

VII.   SUSPENSION OF SERVICES AND TERMINATION

A.   Logan may suspend performance hereunder effective immediately upon written or telegraphic notification to Customer if Customer is in default under any term hereof and may terminate this Agreement if such default shall not be cured within ten (10) days after such notification. Customer's obligation to pay all charges, which shall accrue up to and including said termination date, shall survive any termination hereof.

B.   This Agreement may be terminated by either party, without cause, upon ninety (90) days' prior written notice of such termination.

C.   In the event that this contract is terminated, regardless of the reason for such termination, Logan shall cooperate with Customer to maintain an orderly transfer of record keeping functions and shall provide all necessary staff, services, and assistance required for an orderly transfer, provided Customer has fulfilled its obligations under Section II above. Customer agrees to pay for such services in accordance with Logan's then existing prices for such services.

VIII.   SYSTEM IMPROVEMENTS

Logan's policy is to provide continuous improvements in the quality of service to Customer. Logan, therefore, reserves the right to make changes in operation procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the Logan data center serving Customer.

5

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

    A.    Customer shall indemnify and hold Logan (as defined above) harmless against any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) resulting from action taken or permitted by Logan in good faith with due care and without negligence in reliance upon instructions or orders received from Customer as to anything arising in connection with its performance under this Agreement. Logan shall be without liability to Customer with respect to anything done or omitted to be done, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct.

    B.    In no event shall liability to Customer for any losses or damages, whether direct or indirect, arising out of this Agreement exceed the total amount billed or billable to Customer for the portion of the particular work which gave rise to the loss or damage. In no event shall Logan be liable for any indirect, special, or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

X.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following their deposit in the U.S. Mail, postage pre-paid, on the day transmitted if sent by facsimile, or on the day following the day mailed if sent by overnight courier to the appropriate address set forth below:

| | |
|---|---|
| Logan & Company, Inc. | Winn-Dixie Stores, Inc. |
| 546 Valley Road, Second Floor | 5050 Edgewood Court |
| Upper Montclair, New Jersey 07043 | Jacksonville, FL 32254-3699 |
| Attn: Kathleen M. Logan, President | Attn: Laurence B. Appel, Esq. |
| Tel: (973) 509-3190 | Tel: (904) 783-5427 |
| Fax: (973) 509-3191 | Fax: (904) 783-5651 |

or such other address as the party to receive such notices or requests so designates by written notice to the other.

XI.    APPLICABLE LAW

This Agreement shall be construed in accordance with the laws of the State of New Jersey and may be modified only by a written instrument duly executed by an authorized representative of Customer and an officer of Logan.

6

XII.   ENTIRE AGREEMENT/MODIFICATIONS

A.   Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, and other agreements, oral and written, between the parties relating to the subject matter of this Agreement. The Agreement may not be modified or altered except by written instrument duly executed by both parties. Customer represents it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.

B.   If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

XIII.   ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that Logan can assign this Agreement to a wholly owned Logan subsidiary.

XIV.   JURISDICTION

Exclusive jurisdiction to construe and enforce this Agreement shall be in the United States Bankruptcy Court for the District in which Customer files a bankruptcy petition (the "Bankruptcy Court").

XV.   APPROVAL OF BANKRUPTCY COURT

This Agreement and the termination of Logan's services as official claims agent are subject to the prior approval of the Bankruptcy Court.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the day and year hereinabove written.

LOGAN & COMPANY, INC.                    **CUSTOMER**

By _____             By: _____
   Kathleen M. Logan                          Laurence B. Appel, Esq.

Title:  President                        Title:  Senior Vice President and
                                                 General Counsel

Date:  February 9, 2005                  Date:  February 9, 2005

7


**Logan** & COMPANY, INC.  *bankruptcy administration specialists*

## SET-UP FEE

Initial Date Base Creation and Load of Creditor Data  - One Time Charge (varies with size of case).


## MONTHLY DATA STORAGE

- License Fee and Data Storage per
  Creditor on File                      $   .10 per creditor name per month
  (this charge includes all information regarding creditor (liabilities, claims, notices, etc.)

## INTERNET SET UP AND STORAGE

- Per scanned image  (page)            $   .27
- Annual storage fee is calculated
  at a rate of                         $.  .04 per image      for the 1st year
                                        $   .02 per image      for the 2nd year
                                        $   .01 per image      for the 3rd year
                                        $   .01 per image      for the 4th year or a CD

Proof of Claims CD                     $ 50.00 per CD plus the cost of creation

The annual storage charge is billed after the last timely claim is received pursuant to the Bar Date (s) and is available online.

## BLAST FAXING

- Fax                                  $ .50 per page per recipient

## STANDARD COURT NOTICES

Notice Production

- Initial Set-Up                       $ 75.00 - $450.00

- Envelope, Fold, Stuff, Meter, and Mail
- First Image
  1-4 Pages                            $   .35       Per package
  5-7 Pages                            $   .50       Per package
  8-15 Pages                           $   .75       Per package
  16-20 Pages                          $  1.00       Per package
  21 plus pages                        $  1.50       Per package

- Notice Duplication                   $   .12       Per image
- Postage                                            At cost (Deposit Required)



## STANDARD COURT REPORTING

| | | |
|---|---|---|
| Claims Registers, Service Lists | $   .15 | Per Page |
| PDF Report | $  50.00 | Per Report |
| PDF Printed Report | $   .15 | Per Page |

## INTERNAL RECONCILIATION REPORTING

| | | |
|---|---|---|
| Claim Variance Reports, Claims Workbooks, Etc. | $   .15 | Per Page |

## CONSULTING

| | | |
|---|---|---|
| - Principal (Kate Logan) | $ 270.00 | Per Hour |
| - Account Executive Support | $ 185.00 | Per Hour |
| - Court Testimony (if required) | $ 300.00 | Per Hour |
| - Statement & Schedule Preparation | $ 200.00 | Per Hour |
| - Programming Support | $ 150.00 | Per Hour |
| - Project Coordinator | $ 125.00 | Per Hour |
| - Data Prep Analysis | $ 100.00 | Per Hour |
| - Data Entry | $  70.00 | Per Hour |
| - Clerical | $  45.00 | Per Hour |

## OTHER SERVICES

| | |
|---|---|
| - Copies | $    .15 Per Page |
| - Fax | $  1.00 Per Page |

## OTHER CHARGES

All travel, lodging, courier and other expenses incurred on behalf of Logan & Company for the benefit of customer are reimbursable at cost.

## DEPOSIT

**A retainer deposit is required from all clients and will be deducted from the final bill.**

_____

**Client's signature and date**

<u>**Exhibit B**</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | :     **Chapter 11 Case No.** |
| | : |
| **WINN-DIXIE STORES, INC., <u>et</u> <u>al.</u>,** | :     **Case No. 05-11063** |
| | : |
| Debtors. | :     **(Jointly Administered)** |
| | : |

-------------------------------------------------------------x

<u>**DECLARATION OF KATHLEEN M. LOGAN**</u>

I, Kathleen M. Logan, hereby state and declare as follows:

1.      I am the President of Logan & Company, Inc. ("Logan"), which maintains an office at 546 Valley Road, Upper Montclair, New Jersey  07043.  I am duly authorized to make this Declaration on behalf of Logan, and I submit this declaration in support of the Application (the "Application") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order approving their agreement with Logan and appointing Logan as the official claims, noticing, and balloting agent in the Debtors' Chapter 11 cases.  The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

2.      As agent and custodian of court records, the services my firm proposes to render to the Clerk and the Debtors include the services described in the Application.

3.      Logan represents that:

     (a)      it is not employed by the United States and shall not seek any compensation from the United States;

     (b)      by accepting employment in the case, it waives any rights to receive compensation from the United States;

    (c)      it is not an agent of the United States and is not acting on behalf of the United States;

    (d)      it will not misrepresent any fact to the public; and

    (e)      it will not employ any past or present employee of the Debtors for work involving the Debtors' Chapter 11 cases.

4.      Logan is a data processing firm that specializes in noticing, claims processing, voting and other administrative tasks in Chapter 11 cases. Logan has advised and assisted numerous Chapter 11 debtors in connection with noticing, claims administration and reconciliation, and the administration of plan votes. Logan has provided identical or substantially similar services in other Chapter 11 proceedings, including In re Williams Communications Group, Inc., Case No. 02-11957 (Bankr. S.D.N.Y.); In re FiberMark, Inc., Case No. 04-10463 (Bankr. D. Vt. 2004); In re GenTek Inc., Case No. 02-12986 (Bankr. D. Del.); In re ICG Communications, Inc., Case No. 00-04238 (Bankr. D. Del.); In re Exodus Communications, Inc., Case No. 01-10539 (Bankr. D. Del.); In re Montgomery Ward, LLC, Case No. 00-04667 (Bankr. D. Del.); In re Einstein/Noah Bagel Corp., Case No. 00-4447 (Bankr. D. Ariz.); In re Eagle Food Centers, Inc., Case No. 00-01311 (Bankr. D. Del.); In re Philip Servs. (Delaware), Inc., Case No. 99-02385 (Bankr. D. Del.); and In re Favorite Brands Int'l Holding Corp., Case No. 99-00726 (Bankr. D. Del.)

5.      To the best of my knowledge, neither Logan nor any employee thereof has any affiliation with the Debtors, their creditors, other parties in interest, the United States Trustee, or any person employed by the Office of the United States Trustee. To the best of my knowledge, neither Logan nor any other employee thereof holds any interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged.

6.      In performing these services, Logan will charge the rates set forth in the Agreement annexed as <u>Exhibit A</u> to the Application.  These rates are at least as favorable as the prices Logan charges in cases in which the firm has been retained to perform similar services. Logan should not be required to submit fee applications to the Court.

7.      Logan will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on February 21st, 2005, at Upper Montclair, New Jersey.

*/s/      Kathleen M. Logan*
Kathleen M. Logan
President

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                    :
                                                         :        **Chapter 11 Case No.**
                                                         :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**                      :        **Case No. 05-11063**
                                                         :
            **Debtors.**                                 :        **(Jointly Administered)**
                                                         :
-------------------------------------------------------------x

## INTERIM ORDER APPROVING AGREEMENT WITH
## LOGAN & COMPANY, INC. AND APPOINTING LOGAN & COMPANY, INC.
## <u>AS CLAIMS, NOTICING, AND BALLOTING AGENT FOR THE DEBTORS</u>

Upon the application dated February 21, 2005 (the "Application") of Winn-Dixie

Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order pursuant to 28

U.S.C. § 156(c) approving the Agreement (as defined in the Application) with Logan &

Company, Inc. ("Logan") and appointing Logan as claims, noticing, and balloting agent; all as

more fully set forth in the Application; and upon consideration of the declaration of Kathleen M.

Logan (the "Logan Declaration"); and upon consideration of the Declaration of Bennett L.

Nussbaum pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-

Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having

jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C.

§ § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the

District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.);

and consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§ § 1408 and 1409; and due and proper notice of the Application having been provided to (i) the

Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the

Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the

Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and

the relief requested in the Application being in the best interests of the Debtors, their estates, and

creditors; and the Court having reviewed the Application; and the Court having determined that

the legal and factual bases set forth in the Application establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Application is granted on an interim basis until such time as

the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.;

and it is further

ORDERED that any objection to the relief requested by the Application on a final

basis must be filed with the Court and be served upon (i) the Office of the United States Trustee

for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York

10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New

York, New York 10036; (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree

Street, Atlanta, Georgia  30303; and (iv) Kathleen M. Logan, Logan & Company, Inc., 546

Valley Road, Upper Montclair, New Jersey  07043, so as to be received by _____, 2005 at 5:00

p.m.; and it is further

ORDERED that the Agreement is approved, and Logan is appointed as claims,

noticing, and balloting agent to perform the services described in the Application and in the

Logan Declaration; and it is further

ORDERED that Logan shall not be required to file fee applications with this Court pursuant to Sections 330 and 331 of the Bankruptcy Code on account of the services provided by Logan.  Logan shall be compensated by the Debtors on the terms contained in its engagement letter.  Logan shall be permitted to hold the retainer it received from the Debtors and shall apply it to the Debtors' final invoice or any earlier invoice; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Application is hereby waived.

Dated:  February ___, 2005
         New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x

In re                                                 :

                                              :       **Chapter 11 Case No.**

                                              :

**WINN-DIXIE STORES, INC., <u>et al.</u>,**          :       **Case No. 05-11063**

                                              :

            **Debtors.**                :       **(Jointly Administered)**

                                              :

--------------------------------------------------------------x

### FINAL ORDER APPROVING AGREEMENT WITH
### LOGAN & COMPANY, INC. AND APPOINTING LOGAN & COMPANY, INC.
### <u>AS CLAIMS, NOTICING, AND BALLOTING AGENT FOR THE DEBTORS</u>

              Upon the application dated February 21, 2005 (the "Application") of Winn-Dixie

Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order pursuant to 28

U.S.C. § 156(c) approving the Agreement (as defined in the Application) with Logan &

Company, Inc. ("Logan") and appointing Logan as claims, noticing, and balloting agent; all as

more fully set forth in the Application; and upon consideration of the declaration of Kathleen M.

Logan (the "Logan Declaration"); and upon consideration of the Declaration of Bennett L.

Nussbaum pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-

Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having

jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C.

§ § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the

District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.);

and consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§ § 1408 and 1409; and due and proper notice of the Application having been provided to (i) the

Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the

Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the

Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and

the relief requested in the Application being in the best interests of the Debtors, their estates, and

creditors; and the Court having reviewed the Application; and the Court having determined that

the legal and factual bases set forth in the Application establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Application is granted; and it is further

ORDERED that the Agreement is approved, and Logan is appointed as claims,

noticing, and balloting agent to perform the services described in the Application and in the

Logan Declaration; and it is further

ORDERED that Logan shall not be required to file fee applications with this

Court pursuant to Sections 330 and 331 of the Bankruptcy Code on account of the services

provided by Logan.  Logan shall be compensated by the Debtors on the terms contained in its

engagement letter.  Logan shall be permitted to hold the retainer it received from the Debtors and

shall apply it to the Debtors' final invoice or any earlier invoice; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the

Debtors file a memorandum of law in support of the Application is hereby waived.

Dated: _____ ___, 2005
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE