SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., <u>et al.</u>,** | : | **Case No. 05-11063** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

## MOTION FOR AUTHORITY TO PAY (A) PRE-PETITION COMPENSATION, PAYROLL TAXES, EMPLOYEE BENEFITS, AND RELATED EXPENSES, (B) EXPENSES RELATED TO INDEPENDENT CONTRACTORS, AND (C) CERTAIN RETIREE BENEFITS

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

## Background

**A.      Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the
Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and
manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the
Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no
official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of
this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the
meaning of 28 U.S.C. § 157(b)(2).

**B.      Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United
States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to
published reports, the Debtors are the eighth-largest food retailer in the United States and one of
the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery
store and has grown through acquisitions and internal expansion.  The Debtors currently operate
more than 900 stores in the United States.  Substantially all of the Debtors' store locations are
leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are
employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.      Capital Structure.**

8.      The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.      The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of $427,000,000. The Debtors are seeking

authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-

possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.     Certain of the Debtors are parties to an Indenture with Wilmington Trust

Company dated December 26, 2000 (as amended and supplemented, the "Indenture"). Pursuant

to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of

Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the

Senior Notes. The Senior Notes mature in 2008 and require semi-annual interest-only payments

until maturity. The Senior Notes are unsecured obligations that are *pari passu* with most of the

Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease

obligations (including possible rejection damages), employee obligations, and litigation claims.

12.     Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock

has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN. All

of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.      Events Leading to the Debtors' Chapter 11 Cases.**

13.     In January 2004, the Debtors announced a series of actions designed to improve

their competitive position (the "Strategic Plan"). The Strategic Plan included (a) a review of

business strategies and marketing programs, (b) an expense reduction plan designed to achieve a

$100 million annual expense reduction, (c) a market positioning review through which markets

will be identified as either core, and positioned for future investment and growth, or non-core,

and evaluated for sale or closure, (d) an image makeover program targeting approximately 700

stores for facilities improvement, and (e) a process re-engineering initiative that is intended to

enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.      Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million.  As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

**Relief Requested**

20.     By this Motion, the Debtors respectfully request the entry of an order, pursuant to Sections 105(a), 363(b), 507(a), and 1114 of the Bankruptcy Code, authorizing them (a) to pay pre-petition wages, salaries, compensation, health benefits, and other benefits which the Debtors pay to their full-time and part-time employees (collectively, the "Employees") in the ordinary course of their businesses, and to continue to honor their pre-petition practices, programs, and policies with respect to the Employees, including those practices relating to separation pay (collectively, the "Pre-Petition Employee Obligations"), (b) to pay the pre-petition claims of third parties that provide the Debtors with independent contractors and temporary employees (collectively, the "Independent Contractors") and the pre-petition claims of any Independent Contractors that are parties to contracts with the Debtors, (c) to satisfy their obligations on an

interim basis under various programs for the benefit of their retired employees, and (d) to allow the Debtors' banks and other financial institutions to process, honor, and pay checks or electronic transfers issued by the Debtors to honor pre-petition transfers made by the Debtors in connection with the foregoing.

**The Pre-Petition Employee Obligations**

21.     The Debtors currently employ approximately 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.  Of these, approximately 6% are salaried Employees, with the balance accruing wages on an hourly basis.

22.     The Debtors have incurred costs and obligations in respect of the Employees that remain unpaid as of the Petition Date because they accrued, either in whole or in part, prior to the Petition Date.  By this Motion, the Debtors seek to pay their pre-petition obligations to the Employees in respect of such costs and obligations.

**A.     Wages, Salaries, and Compensation Expenses.**

23.     In the ordinary course of their businesses, the Debtors pay the wages and salaries of the Employees, and certain other performance based amounts (the "Payroll Obligations").  Approximately 74,000 of the Employees are paid hourly, on a weekly basis, and the remainder are paid a salary on either a weekly, bi-weekly or monthly basis.  The Debtors' aggregate gross monthly payroll for all of the Employees is approximately $110 million.

24.     The Debtors' weekly payroll cycle is scheduled to be paid on Tuesday, February 22, 2005.  Approximately 76,500 of the Debtors' hourly employees expect to be paid at that time.  It is critical to the continuation of the Debtors' operations, and to the Debtors' smooth transition into Chapter 11, that payments to these Employees be made in a timely manner.  In

light of the foregoing, the Debtors hereby seek authority to pay, on February 22, 2005,

approximately $25 million owed to their hourly Employees for work performed through

February 9, 2005, in accordance with their pre-petition practices and the terms of the Bridge

Order attached hereto (the "Emergency Payments"). The Debtors' pre-petition secured lenders

have consented to the Debtors' use of cash collateral (as such term is defined in Section 363(a)

of the Bankruptcy Code) to make the Emergency Payments.

25.     Assuming the Emergency Payments are authorized, the Debtors will remain

obligated to Employees for approximately $20 million in Payroll Obligations that accrued during

the balance of the pre-petition period -- from February 10, 2005 through February 21, 2005. The

Debtors also seek authority to pay such amounts pursuant to this Motion and the terms of the

Interim and Final Orders annexed hereto.

26.     In addition, for those Employees that do not receive a direct deposit, there may be

checks issued to Employees for pay periods ending prior to the Petition Date, which have not

been cleared as of the Petition Date and which the Employees will seek to cash or deposit post-

petition.

27.     In light of the foregoing, the Debtors estimate that, as of the Petition Date, there

are approximately $57 million of accrued but outstanding Payroll Obligations. The Debtors do

not believe that any one Employee's unpaid pre-petition salary or wages exceeds the $4,925

threshold provided in Section 507(a)(3) of the Bankruptcy Code.

**B.      Separation Pay.**

28.     The Debtors make separation payments to non-executive employees that are laid

off or otherwise terminated by the Debtors (except those that are terminated for cause)

(collectively, the "Separation Pay Obligations"). The amount of separation pay that each

employee is entitled to depends on his or her salary and the duration of his or her tenure with the Debtors.  Under the Debtors' separation pay practice, employees are paid one week of separation pay for every one year of service, up to a maximum of six (6) weeks for hourly employees and thirteen (13) weeks for non-hourly store and warehouse personnel.  The Debtors' ordinary separation pay practice is to make such payments in a lump sum.  On average, the total separation payment to an employee paid weekly is approximately $2,630, while the total separation payment to an employee paid bi-weekly is $7,900.

29.     The Debtors believe that approximately 300 non-executive Employees that were terminated by the Debtors pre-petition may be entitled to separation payments that have not yet been paid.  The Debtors estimate that, as of the Petition Date, as much as $900,000 in separation payments may remain outstanding.

30.     The Debtors also expect that Separation Pay Obligations will arise post-petition. As part of the Strategic Plan, the Debtors may elect to close certain of their stores in the near term, which will result in additional reductions in the Debtors' workforce.  The Debtors seek authority by this Motion to satisfy their pre-petition Separation Pay Obligations and to continue making separation payments, in accordance with their pre-petition practices, to current employees that are laid off or terminated during the post-petition period.

31.     In addition, certain of the Employees received notices before the Petition Date under the Worker Adjustment and Retraining Notification Act, as amended, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act") and may be terminated by the Debtors prior to the end of the statutory notice period.  In such cases, the Debtors request authority to pay the Employees any amounts owed pursuant to the WARN Act, subject to any permissible offsets based on separation payments made to such Employees (the "WARN Act Obligations").

C.      **Retail Support Group Bonuses.**

32.      Employees that are in the Debtors' retail field support group may earn bonuses based on their quarterly performance (the "Retail Bonus Program"). Such bonuses are generally paid during the quarter following the quarter during which the bonus is earned. As of the Petition Date, less than $716,000 in outstanding bonus payments owed to approximately 355 of the Debtors' retail Employees remain unpaid (the "Retail Bonus Obligations"). No member of the Debtors' senior management is entitled to a bonus under the Retail Bonus Program.

D.      **Paid Time Off.**

33.      In addition to the Payroll Obligations, the Debtors provide their employees with other forms of compensation, including compensation for paid time off (the "PTO Plan"). Under the PTO Plan, eligible Employees accrue paid time off, including vacation, personal, or sick time, maternity leave, jury duty, and bereavement absences. Pursuant to the PTO Plan, Employees are paid their full wage for each vacation, personal, or sick day, up to the maximum number of days accrued by such Employee (based upon weekly hours worked and length of service with the Debtors).

34.      Because the Debtors' obligations under the PTO Plan (the "PTO Obligations") are contingent on, among other things, the number of vacation days taken, employee turnover, the number of sick days taken, and other similar factors, the amount of such obligations that accrued during the pre-petition period but remain unpaid cannot be fixed as of Petition Date. Prior to the Petition Date, the Debtors paid approximately $6 million per month on average in connection with PTO Obligations.

**E.      Health and Welfare Benefits.**

35.      The Debtors sponsor several benefit plans for the Employees, including medical, prescription drug, dental, vision care, disability, and life insurance plans, and a flexible spending plan for medical and dependent care expenses, as well as providing benefits required by COBRA (the "Health and Welfare Benefits").

36.      The Debtors maintain two separate benefit plans, one for part-time employees (the "Part-Time Associate Benefit Plan") and one for full-time employees (the "Full-Time Associate Benefit Plan," and, together with the Part-Time Associate Benefit Plan, the "Benefit Plans"). Each month, the Debtors withhold monies from the Employees in connection with the Benefit Plans and remit such payments, together with certain payment obligations of the Debtors, to various third-party insurance administrators.  The Debtors' payment obligations for the Part-Time Associate Benefit Plan, which they self-insure, are limited to premiums, while their payment obligations for the Full-Time Associate Plan include premiums and benefits accrued during the applicable period.

37.      The Debtors estimate that they currently pay approximately $180 million to third party administrators on an annual basis with respect to the Benefit Plans (including Employee contributions and the Debtors' payment obligations thereunder).  The Debtors believe that, as of the Petition Date, the accrued obligations under the Benefit Plans that have not been paid aggregate approximately $7.0 million (not including the Debtors' incurred but not reported reserve) (the "Benefit Plan Obligations").

**F.      401(k) Employer Contributions.**

38.      The Debtors withhold from the wages of participating Employees contributions towards a 401(k) plan and non-qualified supplemental retirement plan (the "Withholding

Contributions"). Prior to the Petition Date, the Employees participating in the benefit plans paid approximately $2.6 million in Withholding Contributions to the Debtors on a monthly basis.

39.     The Debtors also make matching contributions to each participating Employee's 401(k) plan of $0.50 per dollar contributed by the participating Employee, up to 5% of such Employee's salary, each pay period and matching contributions to each participating Employee's supplemental retirement plan of $0.50 per dollar contributed by the participating Employee, up to 2% of such Employee's salary, each pay period (the "Matching Contributions," and, together with the Withholding Contributions, the "Plan Obligations").   The Debtors estimate that, as of the Petition Date, the accrued obligations related to the Matching Contributions aggregate approximately $1 million.

**G.      Reimbursable Business Expenses.**

40.     Prior to the Petition Date and in the ordinary course of their businesses, the Debtors reimbursed Employees for expenses incurred in the scope of their employment.  The Debtors also directly reimbursed third party credit card providers for expenses incurred by Employees.

41.     The Debtors pay on average approximately $435,000 per month to their Employees and $950,000 per month to credit card providers in connection with expenses incurred by the Employees relating to, *inter alia*, business related travel expenses, business meals, car rentals, and a variety of other miscellaneous business expenses (collectively, the "Reimbursable Expenses").  All of such expenses are incurred by Employees on the Debtors' behalf in connection with employment by the Debtors and in reliance upon the Debtors' reimbursement policy.

**H.    Withheld Amounts.**

42.    The Debtors are required by law to withhold from the Employees' wages amounts related to federal, state, and local income taxes, and social security and Medicare taxes (collectively, the "Trust Fund Taxes") and to remit the same to the appropriate taxing authorities (the "Taxing Authorities").  The Debtors are required to match from their own funds the social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts of state and federal unemployment insurance (collectively, the "Employer Payroll Taxes," and, together with the Trust Fund Taxes, the "Payroll Taxes") and to remit the Payroll Taxes to the Taxing Authorities.  The Debtors estimate that, on a monthly basis, they remit $8.9 million in Employer Taxes and $26 million in Trust Fund Taxes to the Taxing Authorities.

43.    In addition to the Payroll Taxes, the Debtors may withhold from the Employees' wages amounts related to charitable contributions, credit union contributions, garnishments, uniform apparel, and other amounts required to be withheld pursuant to court order, under applicable law, or otherwise (the "Wage Deductions," and, together with the Payroll Taxes, the "Withheld Amounts").  The Wage Deductions are remitted to third parties in the ordinary course of the Debtors' businesses.  The Debtors estimate that, as of the Petition Date, there are approximately $1.5 million in Wage Deductions that have been withheld by the Debtors but have not been remitted to third parties.

**I.    Tuition Reimbursement.**

44.    The Debtors sponsor a college scholarship program and a college reimbursement program (the "Scholarship Programs") for certain employees and their families.  Many of the benefits accrued by the Employees pre-petition with respect to the Educational Program Obligations remain due and owing.  Prior to the Petition Date, the Debtors awarded $350,000 to

Employees under the Scholarship Programs, a significant portion of which remains unpaid (the "Educational Program Obligations").

**J**.     **Employee Assistance Program.**

45.     The Employee Assistance Program (the "EAP") is a professional, confidential hotline that associates and their immediate family can utilize when they need to seek counseling or assistance.  As of the Petition Date, the Debtors estimate that less than $7,800 remains unpaid with respect to the EAP (the "EAP Obligations").

<u>The Independent Contractors</u>

46.     The Debtors also utilize the services of approximately 300 Independent Contractors who provide necessary services relating to the operation of the Debtors' businesses. Included among the Independent Contractors are individuals from temporary service agencies and those acting as freelance consultants providing services with respect to general management and various professional disciplines, such as information technology, pharmacy, and finance.

47.     Payment to each of the Independent Contractors varies according to the terms of each Independent Contractor's arrangement with the Debtors.  Certain of the Independent Contractors are paid directly by the Debtors, while others are paid by temporary services, which are in turn reimbursed by the Debtors.  The Debtors believe that if the temporary services are not paid, they may not make timely payments to the Independent Contractors.  Prior to the Petition Date, the Debtors paid approximately $3 million per month to temporary services and to the Independent Contractors on account of amounts owed to Independent Contractors (collectively, the "Independent Contractor Obligations").

**Retiree Benefits**

48.     In the ordinary course of their businesses, the Debtors maintain certain non-qualified retirement plans for the benefit of approximately 300 of their retired employees (collectively, the "Retirees"), including the Supplemental Retirement Plan (the "SRP") and the Management Security Plan (the "MSP," and together with the SRP, the "Non-Qualified Plans"). The MSP provides death and retirement benefits to certain executives and members of management.  The plan is contributory, but is not funded.  The Debtors provide similar benefits to non-management employees through the SRP, which is fully funded through a Rabbi Trust. Prior to the Petition Date, the Debtors paid approximately $500,000 per month to their Employees and their beneficiaries in connection with the Non-Qualified Plans.

49.     The Debtors intend to continue honoring all retiree medical benefit programs, consistent with their obligations under Section 1114 of the Bankruptcy Code.  The Debtors also believe it is in the best interest of their estates to continue making payments related to Non-Qualified Plans, in the ordinary course of their business, to avoid harm to Retirees.  In light of the foregoing, the Debtors seek authority herein (i) to continue making such payments in accordance with their ordinary business practices and (ii) to pay death benefits of up to $25,000 per person under the Non-Qualified Plans (collectively, the "Non-Qualified Plan Obligations"). The Debtors are seeking such authority on an interim basis, pending a final determination of the Debtors' long-term treatment of the Non-Qualified Plans.

50.     In addition, the Debtors maintain a 401(k) plan, which is a fully-funded, qualified, profit-sharing plan.  An Employee automatically becomes enrolled in the profit-sharing plan after he or she reaches the age of 21 and has completed one year of service.  Once the Employee is enrolled, the Employee or his or her beneficiary becomes eligible to receive profit sharing

contributions.  Participating Employees are eligible for distributions from the profit-sharing plan upon retirement and in the event of disability.  The Debtors anticipate that Employees or their beneficiaries may seek distributions from the profit-sharing plan in the post-petition period.  As such, the Debtors seek authority to continue making such payments to Employees and their beneficiaries in accordance with their ordinary business practices (the "Qualified Plan Obligations").

**Basis for Relief**

51.     The Debtors request the Court authorize, but not require, them (i) to pay, in their sole discretion, the Pre-Petition Employee Obligations, including, but not limited to, the Payroll Obligations, the Retail Bonus Obligations, the Separation Pay Obligations, the WARN Act Obligations, the Withheld Amounts, the Benefit Plan Obligations, the Plan Obligations, the Reimbursable Expenses, the PTO Obligations, the Educational Program Obligations, the EAP Obligations, and all costs incident to the foregoing, (ii) to continue to honor their practices, programs, and policies with respect to the Employees that were in effect as of the Petition Date, (iii) to pay the Independent Contractor Obligations, and (iv) to pay the Non-Qualified Plan Obligations, on an interim basis pending a final determination in connection therewith, to avoid harm to the Debtors' retirees, and (v) to pay the Qualified Plan Obligations.

52.     To ensure that the Employees receive the payments to which they are entitled pursuant to any order approving this Motion, the Debtors also seek authorization to allow their banks and other financial institutions (collectively, the "Banks") to process, honor, and pay checks or electronic transfers issued by the Debtors to honor pre-petition transfers made by the Debtors in connection with the Pre-Petition Employee Obligations.

53.     Pursuant to Sections 507(a)(3) and 507(a)(4) of the Bankruptcy Code, a debtor's employee's claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 90 days before the Petition Date, and claims against the Debtors for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are afforded unsecured priority status to the extent of $4,925 per employee.  11 U.S.C. § 507(a)(3), (a)(4).  Furthermore, Section 363(b) of the Bankruptcy Code provides that the debtor in possession, "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code further provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

54.     The Debtors believe that all of their Pre-Petition Employee Obligations constitute priority claims under Sections 507(a)(3) and (a)(4).  The Debtors submit, however, that to the extent any Employee is owed in excess of $4,925 on account of Pre-Petition Employee Obligations, payment of such amounts is necessary and appropriate and is authorized under Section 105(a) pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also Straus-Duparquet, Inc. v. Local Union No. 3 Int'l Bd. of Elec. Workers, 386 F.2d 649 (2d Cir. 1967) (Separation Pay Obligations arising in connection with a post-petition employee lay-off are administrative claims).

55.     Here, the post-petition stability of the Debtors' workforce is integrally tied to the Debtors' ability to continue to honor the Pre-Petition Employee Obligations and the Independent

Contractor Obligations.  Any delay in payments to Employees and Independent Contractors will impact the Debtors' relationship with essential workers and may irreparably harm employee morale, dedication, confidence, and cooperation.  Similarly, any failure by the Debtors to satisfy the Separation Pay Obligations and the Retiree Obligations will negatively impact employee morale and detract from the support and commitment of the Debtors' workforce.  The support and efforts of the Debtors' workforce during the pendency of the Debtors' Chapter 11 cases is critical to the Debtors' successful reorganization.  At this early stage, the Debtors cannot risk losing the critical mass of their personnel or suffering the substantial damage to their business that would inevitably result from any decline in employee morale.

56.     In addition, for many of the Employees and Retirees, the payments received from the Debtors are needed to enable the Employees and Retirees to meet their own financial obligations.  As a result, absent an order granting the relief requested in this Motion, the Employees, the Retirees, and their families are likely to suffer personal hardship and, in many instances, serious financial difficulties.

57.     Similar relief to the relief requested herein has been granted in this and other courts.  See, e.g., In re Tower Automotive, Inc., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 3, 2005); In re Interstate Bakeries Corporation, Case No. 04-45814 (Bankr. W.D. Mo. Sept. 24, 2004); In re Git-N-Go, Inc., Case No. 04-10509 (Bankr. N.D. Okla. Feb. 13, 2004); In re Westpoint Stevens, Inc., Case No. 03-13532 (Bankr. S.D.N.Y. June 3, 2003); In re The Penn Traffic Company, Case No. 03-22945 (Bankr. S.D.N.Y. May 30, 2003); In re Eagle Food Centers, Inc., Case No. 03-15299 (Bankr. N.D. Ill. Apr. 7, 2003); In re Fleming Companies, Inc., Case No. 03-10945 (Bankr. D. Del. Apr. 4, 2003); In re Magellan Health Services, Inc., Case No. 03-40515 (Bankr. S.D.N.Y. Mar. 11, 2003); In re Dairy Mart Convenience Stores, Inc., Case No.

01-42400 (Bankr. S.D.N.Y. Sept. 25, 2001); In re Grand Union Company, Case No. 00-39613 (Bankr. D.N.J. Oct. 3, 2000).  The Debtors submit that the circumstances of this case warrant similar relief.

58.    For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates.

## Notice

59.    Notice of this Motion has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## Waiver of Memorandum of Law

60.    Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

(a)    authorizing, but not requiring, the Debtors to pay the Pre-Petition Employee Obligations;

(b)    authorizing the Debtors to continue to honor their pre-petition practices, programs, and policies with respect to the Employees;

(c)    authorizing but not requiring the Debtors to pay the Independent Contractors and the temporary services or agencies related thereto;

(d)     authorizing but not requiring the Debtors to pay the Non-Qualified Plan

Obligations, on an interim basis, consistent with their ordinary business practices;

(e)     authorizing but not requiring the Debtors to pay the Qualified Plan Obligations;

(f)     authorizing the Banks to process, honor, and pay checks or electronic transfers

issued by the Debtors to honor pre-petition transfers made by the Debtors in

connection with the foregoing; and

(g)     granting the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
        New York, New York

/s/     D.J Baker
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:   (917) 777-2150

-and-

Sarah Robinson Borders
Brian C. Walsh
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

PROPOSED ATTORNEYS FOR THE DEBTORS

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                          :
                                               :      Chapter 11
                                               :
WINN-DIXIE STORES, INC., <u>et al.</u>,          :      Case No. 05-11063
                                               :
            Debtors.                           :      (Jointly Administered)
                                               :
-------------------------------------------------------------x

## LIMITED BRIDGE ORDER AUTHORIZING
## <u>DEBTORS TO PAY PRE-PETITION COMPENSATION</u>

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for an order (i) authorizing the Debtors

to pay Pre-Petition Employee Obligations (as defined in the Motion) and to continue to honor

pre-petition practices, programs and policies with respect to their employees, (ii) authorizing the

Debtors to pay the Independent Contractors (as defined in the Motion) and the temporary

services or agencies providing such Independent Contractors, (iii) authorizing the Debtors to pay

the Non-Qualified Plan Obligations (as defined in the Motion), on an interim basis, (iv)

authorizing the Debtors to pay the Qualified Plan Obligations (as defined in the Motion), and (v)

authorizing and directing the Debtors' banks and other financial institutions (collectively, the

"Banks") to receive, process, honor and pay all checks presented for payment and electronic

payment requests related to the foregoing; and in light of the exigent circumstances represented

to the Court by the Debtors and their professionals; and it appearing that the limited interim relief

provided herein is in the best interests of the Debtors, their estates, and creditors; and the Court

having reviewed the Motion; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Debtors are authorized to pay up to $25 million of the

accrued and scheduled payroll due to non-executive, hourly employees of the Debtors, which

employees would, in accordance with the Debtors' ordinary business practices, be paid on the

date hereof (the "Emergency Payments"); and it is further

ORDERED that the Debtors are authorized to use cash collateral (as such term is

defined in Section 363(a) of the Bankruptcy Code), in which the Debtors' pre-petition secured

lenders have an interest, to make the Emergency Payments authorized herein; and it is further

ORDERED that, subject to the availability of funds, the Banks are authorized to

process, honor, and pay any and all checks or electronic transfers issued in connection with the

payments authorized under the preceding paragraph; and it is further

ORDERED that the Banks are authorized to rely on the representations of the

Debtors as to which checks or electronic transfers are issued and authorized to be paid in

accordance with this Order without any duty of further inquiry and without liability for following

the Debtors' instructions; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g),

this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.

Dated:  February ___, 2005
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                            :
                                                 :    **Chapter 11**
                                                 :
**WINN-DIXIE STORES, INC., et al.,**             :    **Case No. 05-11063**
                                                 :
         **Debtors.**                            :    **(Jointly Administered)**
                                                 :
-----------------------------------------------------------------x

### INTERIM ORDER AUTHORIZING DEBTORS TO PAY (A) PRE-PETITION COMPENSATION, PAYROLL TAXES, EMPLOYEE BENEFITS, AND RELATED EXPENSES, (B) EXPENSES RELATED TO INDEPENDENT CONTRACTORS, AND (C) CERTAIN RETIREE BENEFITS

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") order (i) authorizing the Debtors to pay

Pre-Petition Employee Obligations (as defined in the Motion) and to continue to honor pre-

petition practices, programs and policies with respect to their employees, (ii) authorizing the

Debtors to pay the Independent Contractors (as defined in the Motion) and the temporary

services or agencies providing such Independent Contractors, (iii) authorizing the Debtors to pay

the Non-Qualified Plan Obligations (as defined in the Motion), on an interim basis, (iv)

authorizing the Debtors to pay the Qualified Plan Obligations (as defined in the Motion), and (v)

authorizing and directing the Debtors' banks and other financial institutions (collectively, the

"Banks") to receive, process, honor and pay all checks presented for payment and electronic

payment requests related to the foregoing; all as more fully set forth in the Motion; and upon

consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule

1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on the

21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of

Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis, until such time as the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.; and it is further

ORDERED that any objection to the relief requested by the Motion on a final basis must be filed with the Court and be served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; and (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia  30303, so as to be received by _____, 2005 at 5:00 p.m.; and it is further

ORDERED that the Debtors are authorized to pay the Pre-Petition Employee Obligations and other related expenses that have accrued by virtue of the services rendered by their employees prior to the Petition Date; and it is further

ORDERED that the Debtors are authorized to continue to honor their pre-petition practices, programs, and policies with respect to the Debtors' employees; and it is further

ORDERED that the Debtors are authorized to pay the Independent Contractor Obligations; and it is further

ORDERED that the Debtors are authorized to pay the Non-Qualified Plan Obligations, on an interim basis, consistent with their ordinary business practices; and it is further

ORDERED that the Debtors are authorized to pay the Qualified Plan Obligations, consistent with their ordinary business practices; and it is further

ORDERED that, subject to the availability of funds, the Banks are authorized to process, honor, and pay any and all checks or electronic transfers issued in connection with the Pre-Petition Employee Obligations, the Independent Contractor Obligations, and the Retiree Obligations; and it is further

ORDERED that the Banks that process, honor, and pay any and all checks or electronic transfers on account of the Pre-Petition Employee Obligations, the Independent Contractor Obligations, and the Retiree Obligations may rely on the representations of the Debtors as to which checks or electronic transfers are issued and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtors' instructions; and it is further

ORDERED that neither this Order, nor the Debtors' payment of any amounts authorized by this Order, shall (i) result in any assumption of any executory contract by the Debtors; (ii) result in a commitment by the Debtors to continue any plan, program, or policy of the Debtors; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtors; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated:  February ___, 2005
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., <u>et al.</u>,** | : | **Case No. 05-11063** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------x

**FINAL ORDER AUTHORIZING DEBTORS TO PAY (A) PRE-PETITION
COMPENSATION, PAYROLL TAXES, EMPLOYEE BENEFITS,
AND RELATED EXPENSES, (B) EXPENSES RELATED TO
INDEPENDENT CONTRACTORS, AND (C) CERTAIN RETIREE BENEFITS**

        Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for an order (i) authorizing the Debtors

to pay Pre-Petition Employee Obligations (as defined in the Motion) and to continue to honor

pre-petition practices, programs and policies with respect to their employees, (ii) authorizing the

Debtors to pay the Independent Contractor Obligations (as defined in the Motion) and the

temporary services or agencies providing such workers, (iii) authorizing the Debtors to pay the

Retiree Obligations (as defined in the Motion), consistent with their ordinary business practices,

on an interim basis, and (iv) authorizing and directing the Debtors' banks and other financial

institutions (collectively, the "Banks") to receive, process, honor and pay all checks presented for

payment and electronic payment requests related to the foregoing; all as more fully set forth in

the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to

Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and

Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and

the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the

Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and

due and proper notice of the Motion having been provided to (i) the Office of the United States

Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the

indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured

creditors, and no other or further notice being required; and the relief requested in the Motion

being in the best interests of the Debtors, their estates, and creditors; and the Court having

reviewed the Motion; and the Court having determined that the legal and factual bases set forth

in the Motion establish just cause for the relief granted herein; and upon all of the proceedings

had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that the Debtors are authorized to pay the Pre-Petition Employee

Obligations and other related expenses that have accrued by virtue of the services rendered by

their employees prior to the Petition Date; and it is further

ORDERED that the Debtors are authorized to continue to honor their pre-petition

practices, programs, and policies with respect to the Debtors' employees; and it is further

ORDERED that the Debtors are authorized to pay the Independent Contractor

Obligations; and it is further

ORDERED that the Debtors are authorized to pay the Non-Qualified Plan

Obligations, on an interim basis, consistent with their ordinary business practices; and it is

further

ORDERED that the Debtors are authorized to pay the Qualified Plan Obligations, consistent with their ordinary business practices; and it is further

ORDERED that, subject to the availability of funds, the Banks are authorized to process, honor, and pay any and all checks or electronic transfers issued in connection with the Pre-Petition Employee Obligations, the Independent Contractor Obligations, and the Retiree Obligations; and it is further

ORDERED that the Banks that process, honor, and pay any and all checks or electronic transfers on account of the Pre-Petition Employee Obligations, the Independent Contractor Obligations, and the Retiree Obligations may rely on the representations of the Debtors as to which checks or electronic transfers are issued and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtors' instructions; and it is further

ORDERED that neither this Order, nor the Debtors' payment of any amounts authorized by this Order, shall (i) result in any assumption of any executory contract by the Debtors; (ii) result in a commitment by the Debtors to continue any plan, program, or policy of the Debtors; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtors; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the

Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____ ___, 2005
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE