SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., et al.,** | : | **Case No. 05-11063** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

## MOTION FOR AUTHORITY TO HONOR CERTAIN
## PRE-PETITION CUSTOMER OBLIGATIONS

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**<u>Background</u>**

**A.      Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.      Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.      Capital Structure.**

8.      The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.      The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of approximately $427 million.  The

Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant

to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.    Certain of the Debtors are parties to an Indenture with Wilmington Trust

Company dated December 26, 2000 (as amended and supplemented, the "Indenture").  Pursuant

to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of

Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the

Senior Notes.  The Senior Notes mature in 2008 and require semi-annual interest-only payments

until maturity.  The Senior Notes are unsecured obligations that are *pari passu* with most of the

Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease

obligations (including possible rejection damages), employee obligations, and litigation claims.

12.    Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock

has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN.  All

of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.    Events Leading to the Debtors' Chapter 11 Cases.**

13.    In January 2004, the Debtors announced a series of actions designed to improve

their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of

business strategies and marketing programs, (b) an expense reduction plan designed to achieve a

$100 million annual expense reduction, (c) a market positioning review through which markets

will be identified as either core, and positioned for future investment and growth, or non-core,

and evaluated for sale or closure, (d) an image makeover program targeting approximately 700

stores for facilities improvement, and (e) a process re-engineering initiative that is intended to

enhance organizational effectiveness and company business initiatives.

14.    As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.    Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.    In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.    On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.    The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since

the announcement of the Debtors' financial results on February 10, 2005, the Debtors have

experienced a reduction in vendor and other credit by more than $130 million.  As a result, the

Debtors have been forced to conclude, after consultation with their advisors, that their interests

and the interests of their creditors, employees, and customers will be best served by a

reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief

executive officer hired in December 2004, intend to implement further asset rationalization and

expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image

and competitive position, with the goal of improving their operations and financial performance

and strengthening their business for the benefit of creditors, customers, employees, and the

communities in which the Debtors operate.

## Relief Requested

20.     By this Motion, the Debtors respectfully request the entry of an order, pursuant to

Sections 105(a), 363(b), and 507(a)(6) of the Bankruptcy Code, (a) authorizing the Debtors to

continue pre-petition Customer Programs; (b) granting the Debtors authority, in their sole

discretion, to honor and pay pre-petition obligations arising under the Customer Programs (as

hereinafter defined); and (c) allowing the Debtors' banks and other financial institutions to

process, honor, and pay checks or electronic transfers issued by the Debtors to honor pre-petition

transfers made by the Debtors in connection therewith.  The Debtors believe that the relief

requested herein is essential to the Debtors' ability to maintain their goodwill in the marketplace

and to maintain the loyalty of their customers.

### Customer Programs

21.     The success and viability of the Debtors' businesses depends upon the loyalty of the Debtors' customers.  To maximize customer loyalty, the Debtors have maintained and followed, in the ordinary course of business, practices and programs for the benefit of their customers, including, but not limited to, those described herein (collectively, the "Customer Programs").

22.     The Debtors use the Customer Programs to reward customer loyalty and provide incentives to buy selected products from the Debtors' stores.  Many, if not all, of the Customer Programs are standard in the retail food business.  Without the ability to continue the Customer Programs and to satisfy their pre-petition obligations in connection therewith, the Debtors risk surrendering their market share to their competitors.  The Customer Programs include the following:

   a.     **Return, Refund, Exchange, Price-Guarantee, and Rain-Check Policies.**

23.     Consistent with industry practice, the Debtors have traditionally maintained return, refund, exchange, price-guarantee, and rain-check policies with respect to both cash and credit purchases to accommodate their customers' needs (collectively, the "Return and Exchange Policies").  These policies provide the Debtors' customers with comfort that they will be "made whole" in the event that merchandise purchased is not to the recipient's liking, is damaged or defective, is incorrectly processed, or is not available.  By this Motion, the Debtors seek authorization to maintain the Return and Exchange Policies with respect to merchandise purchased prior to the Petition Date.

### b.      State Lotteries.

24.      Many of the Debtors' stores sell lottery tickets and similar games of chance sponsored by various states, including Florida, Georgia, Louisiana, South Carolina, and Tennessee (the "Lottery Tickets").  The Debtors, in the ordinary course of their business, "cash out" winning lottery tickets up to $600.00 in most of these states.  By this Motion, the Debtors seek authorization to "cash out" any Lottery Tickets purchased pre-petition that are presented post-petition for payment at their stores.[2]

### c.      Sales Promotions.

25.      From time to time, the Debtors run sales promotions at selected stores (the "Sales Promotions").  Such programs include but are not limited to "buy one get one free" programs, a rebate if a customer purchases a certain amount of merchandise, and sweepstakes programs (in which a customer may win cash, a car, a free trip to a destination, or electronic equipment).  The Debtors believe that the owe approximately $450,000 in outstanding sweepstakes prizes.  In addition, the Debtors estimate they owe approximately $2,000,000 in outstanding sales promotions.  By this Motion, the Debtors seek authorization to honor these obligations and any benefits (such as sweepstakes winnings) deriving therefrom.

### d.      The Coupon Program.

26.      The Debtors maintain a coupon redemption program pursuant to which they honor (i) certain third-party coupons distributed to the Debtors' customers and (ii) the Debtors' own coupons that are included in advertising circulars or distributed in the Debtors' stores (collectively, the "Coupons").  When a customer redeems a valid third-party Coupon in one of the Debtors' stores, the Debtor makes the deduction provided in that Coupon or such other

deduction as may be advertised from the relevant item's purchase price.  After a third-party

Coupon has been processed, the Debtors remit such coupons to a third party intermediary, who

in turn collects the amounts from the various vendors and wires the Debtors the value of the

coupons they collected.

27.    The Debtors believe that their customers will seek to redeem Coupons that were

issued prior to the Debtors' Chapter 11 filings.  By this Motion, the Debtors seek authorization to

honor the Coupons used by their customers consistent with their ordinary business practice.

### e.    Prescription Drug Program.

28.    The Debtors also honor certain third-party-paid prescription drug programs,

pursuant to which eligible customers can purchase certain drugs at the pharmacies located in the

Debtors' stores at a reduced price (the "Prescription Drug Program").  The Debtors bill the

balance of the cost of the prescription drug and the co-pay amount to various insurance

companies.  By this Motion, the Debtors seek authorization to honor any prices advertised or

promised to their customers pre-petition.

### f.    The Gift Card Program.

29.    The Debtors maintain a program by which their customers can purchase Winn-

Dixie gift certificates or cards that can be redeemed for merchandise at a later date (the "Gift

Card Program").  The Debtors estimate that approximately $8,000,000 of gift certificates and

cards have been issued and remain outstanding.  By this Motion, the Debtors seek authorization

to maintain the Gift Card Program and to honor all gift certificates and cards purchased by

customers prior to the Petition Date.

---

[2]    The Debtors are separately seeking relief relating to disposition of funds collected

g.    **Express Special Purchase Program.[3]**

30.    The Debtors offer customers the ability to access thousands of foods and other products not commonly found in their local stores (the "Express Special Purchase Program"). Under the Express Special Purchase Program, customers may obtain certain items not otherwise available in their local Winn-Dixie store.  Once a customer orders a selected item, the item is delivered as per the customer's request.

31.    The maximum amount due under the Express Special Purchase Program is approximately $12,000.  By this Motion, the Debtors seek authorization to honor those orders placed pre-petition and to deliver such products to participating customers in the ordinary course of business.

h.    **Reward Card Program and Reward Card Clubs.**

32.    The Debtors also offer their customers an opportunity to enroll in a customer reward card program which entitles them to receive certain benefits based on the amount they spend at the Debtors' stores (the "Reward Card Program").  The customers enrolled in the Reward Card Program may present their cards at checkout and receive prizes and instant discounts on hundreds of items, specially marked throughout the store.  In addition, Reward Card Program members are automatically enrolled to participate in certain other special programs and promotions, and are eligible to join certain clubs open only to Reward Card Program members (the "Reward Card Clubs").

33.    The Debtors are unable to estimate an exact amount owed as of the Petition Date on account of Reward Card Clubs.  However, the Debtors pay approximately $40,000 on a

---

by the Debtors in sales of Lottery Tickets prior to the Petition Date.

[3]    This program is scheduled to terminate as of March 1, 2005.  By this Motion, the Debtors seek only to pay those obligations outstanding as of the Petition Date.

weekly basis to customers on account of the Reward Card Clubs.  By this Motion, the Debtors

seek authorization to continue the Reward Card Program and Reward Card Clubs, to honor the

benefits accrued by customers enrolled in the Reward Card Program and Reward Card Clubs,

and to continue to provide participating customers with the discounts and other promotions such

customers were entitled to prior to the Petition Date.

### i.      Money Transfer Program.

34.      Many of the Debtors' stores are pick-up locations for wire transfers sent from

third parties electronically through Western Union Financial Services, Inc. ("Western Union") to

a transferee (the "Wire Transfer Program").  By this Motion, the Debtors seek authorization to

continue the Wire Transfer Program and pay any amounts due to transferees on account of wire

transfers arranged through Western Union prior to the Petition Date.[4]

### j.      Community Charity Programs and Sponsorship Programs.

35.      In recognition of their responsibilities as corporate citizens and members of their

community, the Debtors have long supported charitable institutions in the neighborhoods in

which they operate, as well as certain national charitable organizations (the "Charity Programs").

The Charity Programs include the American Cancer Society Hope Lodge, Florida Special

Olympics, Canine Assistants Sponsorship Program, Shamrock for NBA, 4-H, Future Farmers of

America, local area food banks, food for the needy, local little league, and Just Read Florida**.**  In

addition, the Debtors contribute to the Winn-Dixie Stores Foundation, a non-profit organization

that makes charitable contributions to certain charitable organizations such as the United Way.

Under a variety of different programs, the Debtors collect charitable contributions from their

customers and employees to be forwarded to the Charity Programs.  The Debtors estimate that,

as of the Petition Date, they are in possession of a de minimis amount of money contributed to charity by the Debtors' customers.  By this Motion, the Debtors seek authorization to donate such funds in the ordinary course of business to the Charity Programs.

36.    In addition, the Debtors sponsor numerous community events throughout the year, such as home and garden expos, county fairs, and most recently a Super Bowl promotion (the "Community Sponsorships").  Some of these Community Sponsorships require the Debtors to pay invoices up-front, sign letters of intent, or collect amounts to be paid to third parties at a later date.  The Debtors owe approximately $7,800,000 for such Community Sponsorships as of the Petition Date.  A failure to pay these amounts owed for Community Sponsorships will negatively impact the Debtors public image in the communities that the Debtors depend on for customers and business.  By this Motion, the Debtors seek authorization to pay in the ordinary course of business such amounts due for Community Sponsorships.

## Basis for Relief

37.    By this Motion, the Debtors seek an order authorizing them to honor, in their sole discretion, their pre-petition obligations, arising under the Customer Programs in the ordinary course of business.  The dollar value of the amount owed or likely to be owed to or on account of each customer likely is de minimis.

38.    In addition, by this Motion, the Debtors seek authorization to allow their banks and other financial institutions (collectively, the "Banks") to process, honor, and pay checks or electronic transfers issued by the Debtors to honor pre-petition transfers made by the Debtors in connection with the Customer Programs.  The Debtors submit that, in doing so, the Banks may

---

[4]    The Debtors are separately seeking relief relating to disposition of the funds collected by the Debtors in connection with the Wire Transfer Program prior to the Petition Date.

rely on the representations of the Debtors as to which pre-petition checks or electronic transfers should be honored.

39.    Section 507(a)(6) of the Bankruptcy Code provides that up to $2,225 in claims arising from a consumer's pre-petition deposit of money for the purchase of property or services for personal, family, or household use shall have priority over other general unsecured claims. This provision was added to the Bankruptcy Code in 1984 to "protect consumers who had deposited money for goods and services with a business that subsequently filed for bankruptcy" (and has since been adjusted to increase the priority amount).  In re River Village Assocs., 161 B.R. 127, 133 (Bankr. E.D. Pa. 1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995); see also In re Premier Operations, Ltd., 294 B.R. 213, 217 (Bankr. S.D.N.Y. 2003). Section 507(a)(6) protects benefits vested before the Chapter 11 filing of a retail goods and services provider, such as those accrued under certain of the Customer Programs.

40.    The Debtors submit that many of the obligations that arise in connection with the Customer Programs are priority claims under Section 507(a)(6) of the Bankruptcy Code.  Thus, satisfaction of these Customer Obligations on a post-petition basis will not enhance the priority of the customers or prejudice the rights of general unsecured creditors or other parties in interest.

41.    Further support for the relief requested herein is found in Section 105(a) of the Bankruptcy Code, which authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a).  "The basic purpose of section 105(a) is to assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 (15th ed. rev. 2002).

42.     To the extent that the relief requested herein includes the payment of pre-petition claims, such relief finds ample support in a long line of cases which have permitted post-petition payment of pre-petition obligations when necessary to help preserve the debtor's operations and important business relationships.  See, e.g., Miltenberger v. Logansport Ry., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of…[indispensable] business relations…."); In re Chateaugay Corp., 80 B.R. 279 (S.D.N.Y. 1987) (district court denying leave to appeal Bankruptcy Court's order authorizing payment of pre-petition wages, salaries, expenses, and benefits) appeal dismissed, 838 F.2d 59 (2d Cir. 1988).

43.     Under the "necessity of payment" doctrine, the bankruptcy court can exercise its equitable powers to permit the payment of pre-petition claims of those parties whose goods or services are critical to reorganization of the debtors' operations.  See, e.g., In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) ("[I]f payment of a claim which arose prior to reorganization is essential to the continued operation of the railroad during reorganization, payment may be authorized even if it is made out of corpus."); In re Boston & Maine Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); In re Columbia Gas Sys., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (necessity of payment doctrine is applicable where "payment is essential to continued operation of business"); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (stating that the rationale of the necessity of payment rule corresponds with the paramount goal of Chapter 11: debtor reorganization); In re Structurelite Plastics Corp., 86 B.R. 922, 931-932 (Bankr. S.D. Ohio 1988) (agreeing in "principle that a bankruptcy court may exercise its equity

powers under section 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'") (citation omitted).  Customer confidence and goodwill will be severely harmed if, upon the filing of these Chapter 11 cases, the Debtors are unable to fulfill their obligations under the Customer Programs.  Accordingly, payment of the Debtors' obligations under the Customer Programs is consistent with Section105(a) and the "doctrine of necessity."

44.     In addition, the payment of pre-petition claims in connection with the Customer Programs is supportable by Section 363(b) of the Bankruptcy Code, which provides that the trustee may, after notice and a hearing, "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. §  363(b).  The Court may authorize a debtor to use such property if there is a good business reason for doing so, such as aiding in the debtor's reorganization.  In re Lionel Corp., 722 F.2d 1063, 1071-72 (2d Cir. 1983).  Here, as set forth above, satisfaction of the Debtors' obligations with respect to the Customer Programs is integral to retaining customer loyalty and, therefore, to the Debtors' successful reorganization.

45.     Finally, the relief requested herein has been granted in other large Chapter 11 cases, including grocery and other food-related Chapter 11 cases.  See, e.g., In re Tower Automotive, Inc., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 3, 2005); In re Interstate Bakeries Corp., Case No. 04-45814 (Bankr. W.D. Mo. Sept. 24, 2004); In re Westpoint Stevens, Inc., Case No. 03-13532 (Bankr. S.D.N.Y. June 3, 2003); In re Eagle Food Centers, Inc., Case No. 03-15299 (Bankr. N.D. Ill. Apr. 7, 2003); In re Magellan Health Services, Inc., Case No. 03-40515 (Bankr. S.D.N.Y. Mar. 11, 2003); In re Kmart Corp., Case No. 02-02474 (Bankr. N.D. Ill. Jan.

25, 2002); <u>In re Dairy Mart Convenience Stores, Inc</u>., Case No. 01-42400 (Bankr. S.D.N.Y Sept.

24, 2001); <u>In re Grand Union Company</u>, Case No. 00-39613 (Bankr. D.N.J. Oct. 3, 2000).

      46.     For the foregoing reasons, the Debtors submit that continuation of the Customer

Programs and payment of related obligations is essential to the Debtors' successful

reorganization and is in the best interests of the Debtors and their customers, creditors, and

estates.

## <u>Notice</u>

      47.     Notice of this Motion has been provided to the Office of the United States

Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the

indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured

creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice

is necessary.

## <u>Waiver of Memorandum of Law</u>

      48.     Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New

York, because there are no novel issues of law presented herein, the Debtors respectfully request

that the Court waive the requirement that the Debtors file a memorandum of law in support of

this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

(a)    authorizing the Debtors to continue the pre-petition Customer Programs;

(b)    authorizing the Debtors to pay the pre-petition obligations related to the Customer

Programs;

(c)    authorizing the Banks to process, honor, and pay checks or electronic transfers

issued by the Debtors to honor pre-petition transfers made by the Debtors in

connection with the Customer Programs; and

(d)    granting the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
        New York, New York


/s/      *D. J. Baker*
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:   (917) 777-2150

-and-

Sarah Robinson Borders
Brian C. Walsh
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

PROPOSED ATTORNEYS FOR THE DEBTORS

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                                :
                                                     :        **Chapter 11**
                                                     :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**          :        **Case No. 05-11063**
                                                     :
                 **Debtors.**                        :        **(Jointly Administered)**
                                                     :
------------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING DEBTORS TO HONOR<br>CERTAIN PRE-PETITION CUSTOMER OBLIGATIONS

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order authorizing the Debtors to pay pre-petition customer obligations arising in connection with their Customer Programs (as defined in the Motion) pursuant to Sections 105(a) and 507(a)(6) of the Bankruptcy Code, all as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and the relief requested

in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court

having reviewed the Motion; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Motion is granted on an interim basis until such time as the

Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.;

and it is further

ORDERED that any objection to the relief requested by the Motion on a final

basis must be filed with the Court and be served upon (i) the Office of the United States Trustee

for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York

10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New

York, New York 10036; (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree

Street, Atlanta, Georgia  30303; and it is further

ORDERED that the Debtors are authorized, but not required, to continue to honor

all pre-petition obligations under the Customer Programs that they deem are necessary and in the

best interests of their estates, creditors, and interest holders, in the same manner as such

obligations were honored before the commencement of the Debtors' Chapter 11 cases; and it is

further

ORDERED that, subject to the availability of funds, the Debtors' banks and

financial institutions (collectively, the "Banks") are authorized to process, honor, and pay any

and all checks or electronic transfers issued in connection with the Customer Programs; and it is further

ORDERED that the Banks that process, honor, and pay any and all checks or electronic transfers on account of the Customer Programs may rely on the representations of the Debtors as to which checks or electronic transfers are issued and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtors' instructions; and it is further

ORDERED that nothing in the Motion shall be deemed a request for authority to assume, and nothing in this Order shall be deemed an authorization to assume, any executory contract under 11 U.S.C. § 365; and it is further

ORDERED that, except as provided herein, notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any of the Debtors' customers or any other third party; and it is further

ORDERED that notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated:  February ___, 2005
      New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                    :
                                                         :          **Chapter 11**
                                                         :
**WINN-DIXIE STORES, INC., et al.,**                     :          **Case No. 05-11063**
                                                         :
                    **Debtors.**                         :          **(Jointly Administered)**
                                                         :
----------------------------------------------------------------x

### FINAL ORDER AUTHORIZING DEBTORS TO HONOR
### CERTAIN PRE-PETITION CUSTOMER OBLIGATIONS

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for an order authorizing the Debtors to

pay pre-petition customer obligations arising in connection with their Customer Programs (as

defined in the Motion) pursuant to Sections 105(a) and 507(a)(6) of the Bankruptcy Code, all as

more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L.

Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-

Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157

and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District

Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and

1409; and due and proper notice of the Motion having been provided to (i) the Office of the

United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured

lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50)

largest unsecured creditors, and no other or further notice being required; and the relief requested

in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court

having reviewed the Motion; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that the Debtors are authorized, but not required, to continue to honor

all pre-petition obligations under the Customer Programs that they deem are necessary and in the

best interests of their estates, creditors, and interest holders, in the same manner as such

obligations were honored before the commencement of the Debtors' Chapter 11 cases; and it is

further

ORDERED that, subject to the availability of funds, the Debtors' banks and

financial institutions (collectively, the "Banks") are authorized to process, honor, and pay any

and all checks or electronic transfers issued in connection with the Customer Programs; and it is

further

ORDERED that the Banks that process, honor, and pay any and all checks or

electronic transfers on account of the Customer Programs may rely on the representations of the

Debtors as to which checks or electronic transfers are issued and authorized to be paid in

accordance with this Order without any duty of further inquiry and without liability for following

the Debtors' instructions; and it is further

ORDERED that nothing in the Motion shall be deemed a request for authority to

assume, and nothing in this Order shall be deemed an authorization to assume, any executory

contract under 11 U.S.C. § 365; and it is further

-2-

ORDERED that, except as provided herein, notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any of the Debtors' customers or any other third party; and it is further

ORDERED that notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____, 2005
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE