SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**In re**                                                       :
                                                              :        **Chapter 11**
                                                              :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**                     :        **Case No. 05-11063**
                                                              :
           **Debtors.**                                         :        **(Jointly Administered)**
                                                              :
------------------------------------------------------------x

## MOTION FOR AUTHORITY TO TURN OVER CERTAIN FUNDS HELD IN TRUST AND TO CONTINUE PERFORMANCE AND HONOR OBLIGATIONS UNDER CONSIGNMENT ARRANGEMENTS

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

(collectively, the "Debtors"), respectfully represent:

## Background

**A.  Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.  Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.      Capital Structure.**

8.      The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.      The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.    The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations under the Credit Agreement in the aggregate amount of approximately $427 million.  The Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.    Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture").  Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes.  The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity.  The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12.    Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN.  All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.    Events Leading to the Debtors' Chapter 11 Cases.**

13.    In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core,

and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14.    As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.     Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.    In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.    On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second

fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.      The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million.  As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.      As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

## Relief Requested

20.      By this Motion, the Debtors request entry of an order, pursuant to Sections 105(a), 363, and 541 of the Bankruptcy Code, (i) authorizing the Debtors to turn over certain funds held in trust to certain state lottery agencies, to American Express Travel Related Services Company, Inc. ("AMEX"), and to Western Union North America ("WUNA"); and (ii) authorizing the

Debtors to continue performance and honor obligations under their pre-petition consignment sales arrangements (the "Consignment Arrangements").

**Basis For Relief**

**A.      Proceeds from Sale of Lottery Tickets.**

21.      Many of the Debtors' stores sell lottery tickets and similar games of chance sponsored by various states (the "Lottery Programs"). The Debtors deposit the funds received from the Lottery Programs into the Debtors' bank accounts and remit funds equal to the amounts collected (the "Lottery Proceeds") to the appropriate state agency (each, a "Lottery Agency") on a regular basis. As compensation for selling the lottery tickets, the Debtors receive a commission from each state (which amount varies by state). A list of the Lottery Agencies is attached hereto as Exhibit A. The Debtors estimate that as of the Petition Date, they owe the various state Lottery Agencies approximately $1.3 million in the aggregate on account of Lottery Proceeds.[2]

**B.      Gift Card Proceeds.**

22.      Certain of the Debtors sell "American Express Gift Cards" pursuant to that certain agreement dated December 31, 2003 by and between Debtor Winn-Dixie Stores, Inc. and AMEX, as subsequently amended or modified (the "AMEX Agreement"). The AMEX Agreement provides that the proceeds of sales of gift cards (the "Gift Card Proceeds") must be held in trust for the benefit of AMEX. The Debtors estimate that as of the Petition Date, they owe AMEX approximately $26,000 in the aggregate on account of Gift Card Proceeds.

---

[2]      In some states, the Debtors also cash out certain winning lottery tickets, up to a maximum amount. The Debtors are separately seeking authority to honor certain winning lottery tickets presented by their customers.

**C.**      **Money Transfers and Money Orders.**

23.      Debtor Winn-Dixie Stores, Inc. is a party to that certain Western Union North American Agency Agreement (the "WUNA Agreement") dated June 6, 2003 between Debtor Winn-Dixie Stores, Inc. and WUNA, a unit consisting of Western Union Financial Services, Inc. and Integrated Payments Systems, Inc. ("Integrated"). Pursuant to the WUNA Agreement, many of the Debtors' stores allow customers (i) to wire money electronically throughout the United States and Mexico (a "Wire Transfer"), and (ii) to purchase money orders from the stores for cash in face amounts up to $1,000.

**(i)**      **Money Transfers.**

24.      To effectuate a Wire Transfer, a customer pays the principal amount of the money to be wired (plus a fee) to a third party or to be wired to Integrated for payment of the customer's utility bills, to the Debtors' in-store personnel (the "Wire Transfer Funds"). The Debtors' in-store personnel deposit the Wire Transfer Funds into the respective store's depository bank account on a daily basis. Pursuant to the WUNA Agreement, the Debtors are required to hold Wire Transfer Funds in trust for the benefit of WUNA. The Debtors inform WUNA of the amount of the Wire Transfer, the identity of the transferee of the Wire Transfer (or whether the funds are for utility bills), and the pick-up location, and WUNA makes the requested amount available to the transferee or transfers the funds to Integrated. The Debtors then transfer all Wire Transfer Funds collected from the previous day's transfers to an account designated by WUNA. In exchange for these services, WUNA pays the Debtors a monthly fee and commission based on the Debtors' performance. The Debtors estimate that as of the Petition Date, they do not owe WUNA any Wire Transfer Funds, but seek authority to turn over to WUNA any pre-Petition Wire Transfer Funds identified by the Debtors after reconciling their accounts.

**(ii)     Money Orders.**

25.     In addition, the WUNA Agreement provides that customers of the Debtors' stores may purchase money orders from the stores for cash in face amounts up to $1,000.  To obtain a money order, the customer pays the face amount of the money order (plus a fee) to the Debtors' in-store personnel (the "Money Order Funds"; and, together with the Wire Transfer Funds, the "WUNA Funds"), who deposit the Money Order Funds into the respective store's depository bank account on a daily basis.  Pursuant to the WUNA Agreement, the Debtors are required to hold Money Order Funds in trust for the benefit of WUNA.  The Debtors then transfer all Money Order Funds collected from the previous week's sales to an account designated by WUNA.  In exchange for these services, WUNA pays the Debtors a rebate based on each money order sold by the Debtors.  The Debtors estimate that as of the Petition Date, they do not owe WUNA any Money Order Funds, but seek authority to turn over to WUNA any pre-Petition Money Order Funds identified by the Debtors after reconciling their accounts.

**D.     Consignment Arrangements.**

26.     Certain of the Debtors are parties to various Consignment Arrangements.  Under the Consignment Arrangements, certain of the Debtors' vendors (the "Consignment Vendors") provide the Debtors with products that are to be sold to the Debtors' customers in the ordinary course of business, and the Debtors do not pay the Consignment Vendors for the goods until the products are actually sold.  Consequently, the Consignment Arrangements represent a way for the Debtors to supply their customers with a variety of goods and products while avoiding the financial outlay that would otherwise be needed to purchase the goods from the Consignment Vendors and reducing the Debtors' exposure if the products are ultimately not sold.  The Debtors

generally remit the proceeds from the sale of a consigned good (the "Consignment Proceeds") to the Consignment Vendors on a weekly basis.

**E.      Authority.**

27.      Pursuant to Section 105(a) of the Bankruptcy Code, a court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Debtors submit that the relief requested herein is necessary and appropriate to carry out the provisions of the Bankruptcy Code.

28.      The Debtors seek authority to pay (i) all Lottery Proceeds owed to the Lottery Agencies, (ii) all Gift Card Proceeds owed to AMEX, and (iii) all WUNA Funds (if any) owed to WUNA.  In addition, the Debtors request authority to continue performance and honor their obligations under the Consignment Arrangements.  The Debtors believe that the Lottery Proceeds, the Gift Card Proceeds, and the WUNA Funds constitute so-called "trust fund" obligations, which are required to be collected from third parties and held in trust for payment to the Lottery Agencies, AMEX, and WUNA, respectively.  Accordingly, the Debtors believe that the Lottery Proceeds, the Gift Card Proceeds, and the WUNA Funds do not constitute property of the Debtors' estates.  See, e.g., Fla. Stat. Ann. § 24.114 (providing that lottery proceeds are to be held in trust by the retailer); In re Suwannee Swifty Stores, Inc., 266 B.R. 544, 549 (Bankr. M.D. Ga. 2001) (holding that Georgia's lottery statute creates a trust for the lottery proceeds in favor of the Georgia Lottery Corporation); 11 U.S.C. § 541(d).  The Debtors, therefore, have no equitable interest in these proceeds, and such funds are not available for the satisfaction of creditors' claims.

29.      Similarly, the Debtors believe that certain of the Consignment Proceeds are trust funds that must be held for the benefit of certain Consignment Vendors and therefore are not

property of the Debtors' estates.  To the extent that Consignment Proceeds are not trust funds,

the Debtors believe that performance under the Consignment Arrangements is justified under

Section 105(a) of the Bankruptcy Code and the "necessity of payment rule."    Under Section

105(a) of the Bankruptcy Code, courts have used the necessity of payment rule to authorize a

debtor-in-possession to pay certain creditors' pre-petition claims.  Under that rule, a bankruptcy

court will permit a reorganizing debtor to make payments on pre-bankruptcy claims when

payment is necessary to effectuate a successful reorganization.  See In re Ionosphere Clubs, Inc.,

98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (the use of equitable powers to "authorize the payment

of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is

not a novel concept") (citation omitted).

　　　　30.　　　As set forth above, performance under the Consignment Arrangements is

necessary and critical to maintaining a consistent stream of certain goods to the Debtors' stores

and comports with the expectations of the parties and the ordinary course of business between

the parties.  Accordingly, authorizing the Debtors to turn over the Consignment Proceeds to the

Consignment Vendors and to continue performance and honor their obligations under the

Consignment Arrangements is important to maintaining the Debtors' going concern value and

emerging successfully from Chapter 11.

　　　　31.　　　In addition, the Debtors believe that the payment of the Lottery Proceeds, Gift

Card Proceeds, WUNA Funds, and Consignment Proceeds is important to the Debtors' continued

business operations.  Not only do the Debtors earn money directly from the Lottery Programs,

AMEX, WUNA, and the Consignment Vendors, but the Debtors also are compensated indirectly

because these programs and products attract customers to the Debtors' stores and may

incrementally increase revenue at the point of sale.  The Debtors' business could be significantly

harmed if the Debtors could not continue to offer these programs and products and if customers

chose to shop at the Debtors' competitors to have access to these programs and products.

32.    Finally, the Bankruptcy Code does not prohibit a debtor from paying trust fund

and consignment obligations, and the proposed relief will not prejudice the rights of general

unsecured creditors or other parties in interest.  Relief similar to that requested herein has been

granted in other Chapter 11 cases, including in cases of other grocery operators.  See, e.g., In re

Git-N-Go, Inc., Case No. 04-10509 (Bankr. N.D. Okla. Apr. 26, 2004); In re FiberMark, Inc.,

Case No. 04-10463 (Bankr. D. Vt. April 27, 2004); (Bankr. N.D. Okla. April 23, 2004); In re

Penn Traffic Co., Case No. 03-22945 (Bankr. S.D.N.Y. May 30, 2003); In re Gentek, Inc., Case

No. 02-12986 (Bankr. D. Del. Oct. 17, 2002); In re Enron Corp., Case No. 01-16034 (Bankr.

S.D.N.Y. Dec. 3, 2001).  The Debtors submit that the present circumstances warrant similar

relief in their Chapter 11 cases.

33.    For the foregoing reasons, the Debtors believe that granting the relief requested

herein is appropriate and in the best interests of their estates.

**Notice**

34.    Notice of this Motion has been provided to the Office of the United States

Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the

indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured

creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice

is necessary.

**Waiver of Memorandum of Law**

35.    Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New

York, because there are no novel issues of law presented herein, the Debtors respectfully request

that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

(a)     authorizing the Debtors to turn over (i) the Lottery Proceeds to the Lottery Agencies, (ii) the Gift Card Proceeds to AMEX, and (iii) the WUNA Funds to WUNA;

(b)     authorizing the Debtors (i) to turn over the Consignment Proceeds to the Consignment Vendors and (ii) to continue to perform and honor their obligations under the Consignment Arrangements; and

(c)     granting the Debtors such other and further relief as may be just.

Dated: February 21, 2005
New York, New York

                                /s/      D. J. Baker
                                D. J. Baker (DB 0085)
                                Sally McDonald Henry (SH 0839)
                                Rosalie Walker Gray
                                SKADDEN, ARPS, SLATE, MEAGHER
                                  & FLOM LLP
                                Four Times Square
                                New York, New York 10036
                                Telephone:  (212) 735-3000
                                Facsimile:   (917) 777-2150

                                -and-

                                Sarah Robinson Borders
                                Brian C. Walsh
                                KING & SPALDING LLP
                                191 Peachtree Street
                                Atlanta, Georgia  30303
                                Telephone:  (404) 572-4600
                                Facsimile:   (404) 572-5100

                                PROPOSED ATTORNEYS FOR THE DEBTORS

# EXHIBIT A

**Lottery Agencies**

Florida Lottery Commission
Georgia Lottery Corporation
Louisiana Lottery Corporation
South Carolina Education Lottery Commission
Tennessee Lottery Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                          :
                                               :        **Chapter 11**
                                               :
**WINN-DIXIE STORES, INC., et al.,**           :        **Case No. 05-11063**
                                               :
                        **Debtors.**           :        **(Jointly Administered)**
                                               :
-------------------------------------------------------------x

### INTERIM ORDER AUTHORIZING THE DEBTORS TO TURN OVER CERTAIN FUNDS HELD IN TRUST AND TO CONTINUE PERFORMANCE AND HONOR OBLIGATIONS UNDER CONSIGNMENT ARRANGEMENTS

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for authority to turn over certain funds held in trust and to continue performance and honor their obligations under consignment arrangements; all as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors'

noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors; and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis until such time as the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.; and it is further

ORDERED that any objection to the relief requested by the Motion on a final basis must be filed with the Court and be served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; and (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia  30303, so as to be received by _____, 2005 at 5:00 p.m.; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay all Lottery Proceeds (as defined in the Motion) to the Lottery Agencies (as defined in the Motion), consistent with the Debtors' policies and practices in effect as of the Petition Date; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay all Gift Card Proceeds (as defined in the Motion) to American Express Travel Related Services Company, Inc.

("AMEX"), consistent with the Debtors' policies and practices in effect as of the Petition Date; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay all WUNA Funds (as defined in the Motion) to Western Union North America ("WUNA"), consistent with the Debtors' policies and practices in effect as of the Petition Date; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay all Consignment Proceeds (as defined in the Motion) to the Consignment Vendors (as defined in the Motion), consistent with the Debtors' policies and practices in effect as of the Petition Date, and to continue performance and honor their obligations under their pre-petition consignment sales arrangements (the "Consignment Arrangements"); and it is further

ORDERED that entry of this Order is without prejudice to the right of the Debtors to contest the amount of any Lottery Proceeds, Gift Card Proceeds, WUNA Funds, or Consignment Proceeds, whether or not paid pursuant to this Order, or to seek a refund of the same; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, the Lottery Agencies, AMEX, WUNA, the Consignment Vendors, or any third party; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated:  February ___, 2005
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                         :
                                              :    **Chapter 11**
                                              :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**            :    **Case No. 05-11063**
                                              :
          **Debtors.**                        :    **(Jointly Administered)**
                                              :
----------------------------------------------------------------x

**FINAL ORDER AUTHORIZING THE DEBTORS TO TURN OVER CERTAIN**
**FUNDS HELD IN TRUST AND TO CONTINUE PERFORMANCE**
**<u>AND HONOR OBLIGATIONS UNDER CONSIGNMENT ARRANGEMENTS</u>**

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for authority to turn over certain funds

held in trust and to continue performance and honor obligations under consignment

arrangements; all as more fully set forth in the Motion; and upon consideration of the

Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local

Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February,

2005; and the Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of Referral of Cases to

Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July

19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having

been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank,

N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors'

noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors; and no other or further

notice being required; and the relief requested in the Motion being in the best interests of the

Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court

having determined that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor, it is

   ORDERED that the Motion is granted in its entirety; and it is further

   ORDERED that the Debtors are authorized, but not directed, to pay all Lottery

Proceeds (as defined in the Motion) to the Lottery Agencies (as defined in the Motion),

consistent with the Debtors' policies and practices in effect as of the Petition Date; and it is

further

   ORDERED that the Debtors are authorized, but not directed, to pay all Gift Card

Proceeds (as defined in the Motion) to American Express Travel Related Services Company, Inc.

("AMEX"), consistent with the Debtors' policies and practices in effect as of the Petition Date;

and it is further

   ORDERED that the Debtors are authorized, but not directed, to pay all WUNA

Funds (as defined in the Motion) to Western Union North America ("WUNA"), consistent with

the Debtors' policies and practices in effect as of the Petition Date; and it is further

   ORDERED that the Debtors are authorized, but not directed, to pay all

Consignment Proceeds (as defined in the Motion) to the Consignment Vendors (as defined in the

Motion), consistent with the Debtors' policies and practices in effect as of the Petition Date, and

to continue performance and honor obligations under their pre-petition consignment sales

arrangements (the "Consignment Arrangements"); and it is further

ORDERED that entry of this Order is without prejudice to the right of the Debtors to contest the amount of any Lottery Proceeds, Gift Card Proceeds, WUNA Funds, or Consignment Proceeds, whether or not paid pursuant to this Order, or to seek a refund of the same; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, the Lottery Agencies, AMEX, WUNA, the Consignment Vendors, or any third party; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____ ___, 2005
     New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE