SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., <u>et al.</u>,** | : | **Case No. 05-11063** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------------------x

## MOTION FOR AUTHORITY TO CONTINUE PRE-PETITION INSURANCE AND WORKERS' COMPENSATION PROGRAMS AND TO PAY PRE-PETITION PREMIUMS, RELATED OBLIGATIONS, AND PREMIUM FINANCING PAYMENTS

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**Background**

**A.      Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.      Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.      Capital Structure.**

8.      The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.      The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of approximately $427 million.  The

Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant

to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.    Certain of the Debtors are parties to an Indenture with Wilmington Trust

Company dated December 26, 2000 (as amended and supplemented, the "Indenture").  Pursuant

to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of

Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the

Senior Notes.  The Senior Notes mature in 2008 and require semi-annual interest-only payments

until maturity.  The Senior Notes are unsecured obligations that are *pari passu* with most of the

Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease

obligations (including possible rejection damages), employee obligations, and litigation claims.

12.    Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock

has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN.  All

of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.    Events Leading to the Debtors' Chapter 11 Cases.**

13.    In January 2004, the Debtors announced a series of actions designed to improve

their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of

business strategies and marketing programs, (b) an expense reduction plan designed to achieve a

$100 million annual expense reduction, (c) a market positioning review through which markets

will be identified as either core, and positioned for future investment and growth, or non-core,

and evaluated for sale or closure, (d) an image makeover program targeting approximately 700

stores for facilities improvement, and (e) a process re-engineering initiative that is intended to

enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.     Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since

the announcement of the Debtors' financial results on February 10, 2005, the Debtors have

experienced a reduction in vendor and other credit by more than $130 million.  As a result, the

Debtors have been forced to conclude, after consultation with their advisors, that their interests

and the interests of their creditors, employees, and customers will be best served by a

reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief

executive officer hired in December 2004, intend to implement further asset rationalization and

expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image

and competitive position, with the goal of improving their operations and financial performance

and strengthening their business for the benefit of creditors, customers, employees, and the

communities in which the Debtors operate.

## Relief Requested

20.     By this Motion, the Debtors request entry of an order, pursuant to Sections 105(a)

and 363(b) of the Bankruptcy Code, granting them authority to continue their pre-petition

insurance and workers' compensation programs and to pay pre-petition premiums, related

obligations, and premium financing payments.

## Basis for Relief

21.     This Court has the authority to grant the relief requested herein pursuant to

Sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code

provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the

ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Moreover, Section

105(a) of the Bankruptcy Code allows the Court to authorize payments on account of certain pre-

petition claims when necessary.  Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

**A.     The Debtors' Insurance Programs.**

22.     In connection with the operation of their businesses, the Debtors maintain various workers' compensation insurance policies and programs and liability and property insurance policies and programs (collectively, the "Programs") through several different insurance carriers (the "Carriers") and through self-insurance.  The Debtors' Programs are extensive, and in addition to their self-insurance costs, the Debtors spend approximately $27 million annually on insurance premiums.

23.     Prior to the Petition Date, the Debtors entered into insurance brokerage agreements (the "Brokerage Agreements") with the insurance brokerage firm of Marsh USA Inc. (the "Broker") to coordinate the Programs with the various Carriers.  With respect to most of the Debtors' policies, the Carriers charge the Broker directly for all premiums and other amounts due under such policies.  The Broker then sends the Debtors a statement for payment of such premiums, and, once paid by the Debtors, the Broker submits the payments to the Carriers.  The Broker is paid a fee by the Debtors for administering certain of the insurance policies, including, but not limited to, workers' compensation, directors' and officers' liability, fiduciary liability, commercial general and professional liability, and property policies.

24.     The Debtors are currently parties to insurance premium financing commitments with AFCO Premium Credit LLC (AFCO) (each a "Premium Financing Agreement") that cover the following insurance policies:

a. <u>Liability and Workers Compensation Insurance policies</u> – July 1, 2004 to July 1, 2005 policy; eleven installments of $651,918.19 each due on the first of each month through June 1, 2005;

b. <u>Property Insurance Policies</u> – April 30, 2004 through April 30, 2005 policy; eleven installments of $614,491.04 each due on the 30th of each month through March 30, 2005;

c. <u>Aviation Insurance</u> – November 1, 2004 through November 1, 2005 policy; five installments of $26,981.96 each due on the 30th of each month through March 30, 2005;

d. <u>Employment Practices Liability Insurance</u> – September 29, 2004 through November 1, 2005 policy; eleven installments of $131,585.50 each due on the 29th of each month through August 29, 2005; and

e. <u>Directors & Officers Liability Insurance</u> – November 1, 2004 through November 1, 2005 policy; eleven monthly installments of $582,834.91 each due the first of each month through October 1, 2004.

25.     Pursuant to the terms of each Premium Financing Agreement, the Debtors make a down payment contemporaneously with the execution of such agreement and then make monthly payments (together the "AFCO Payment Obligations") to AFCO toward the balance of the financing over the term of each Premium Financing Agreement.  As to each Premium Financing Agreement, AFCO is protected by a security interest in all unearned premiums and dividends that may become payable under the underlying policy or policies.

      **(i)**      **Workers' Compensation Programs.**

26.      Under the laws of the various states in which they operate, the Debtors are required to maintain workers' compensation policies and programs to provide their employees with coverage for claims arising from or related to their employment with the Debtors. The Debtors maintain workers' compensation policies in each of the states in which they operate to cover their statutory obligations (the "Workers' Compensation Programs"). Exhibit A to this Motion is a summary of the Debtors' Workers' Compensation Programs, including a list of the Carriers, policy numbers, policy terms, and the aggregate annual premiums due under them. The Debtors self-insure for workers' compensation coverage in the states of Alabama, Louisiana, Georgia, South Carolina, Mississippi, and North Carolina, but they maintain excess coverage in those states that carries a self-insured retention of $1,500,000 per accident. The Debtors have insurance for workers compensation with a $1,500,000 deductible in the states of Florida, Tennessee, Kentucky, and Virginia. Some states currently covered by the insured programs with deductibles were previously covered under qualified self-insurance. All claims for workers compensation are handled by a third-party claims administrator, Sedgwick Claims Management Services.

27.      In connection with Workers' Compensation Programs in certain states, the Debtors have arranged for the issuance of bonds or standby letters of credit to secure their obligations. The Debtors have provided such security in Alabama, Florida, Georgia, Indiana, Kentucky, Louisiana, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, and Virginia. Certain states from which the Debtors have withdrawn from operations were also self-insured or insured in the past, and bonds or letters of credit have been posted for claims payment obligations that remain in those states.

         **(ii)**       **Liability and Property Insurance.**

28.     The Debtors also maintain various general liability and property insurance policies (the "Liability and Property Policies"), which provide the Debtors with insurance coverage for claims relating to, among other things, commercial general liability, excess liability, commercial umbrella liability, special risks, automobile liability, aviation liability, directors and officers liability, fiduciary liability, commercial crime, property, and terrorism.  Exhibit B to this Motion is a summary of the Debtors' various Liability and Property Policies, including a list of the Carriers, policy numbers, policy terms, and the aggregate annual premiums due under them.

29.     The Debtors are required to pay premiums under the Liability and Property Policies based upon a rate established and billed by each Carrier to the Broker or to the Debtors.  The premiums for the Liability and Property Policies are typically paid yearly in advance (exceptions exist, and the majority of premiums for policies that renewed in 2004 were financed with monthly payments still due to the finance company, AFCO), and the vast majority of the Debtors' premiums have been paid for all pre-petition coverage periods, with post-petition coverage beginning to expire on April 30, 2005.  On certain of the Liability and Property Policies, there are annual retrospective audits and annual "true-ups" of the premiums owed.

30.     The Debtors also self-insure in certain states for automobile liability.  These states include Alabama, Florida, Georgia, Indiana, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, and Virginia.  In connection with their automobile liability self-insurance, the Debtors have posted bonds with the states of Georgia and Kentucky.

**B.**     **Continuation of the Programs is in the Best Interests of the Debtors, Their Estates, and All Parties in Interest.**

31.     Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authorization to continue the Programs on an uninterrupted basis, consistent with pre-petition

practices, and to pay, when due, and in the ordinary course of the Debtors' businesses, all pre-petition premiums (including the AFCO Payment Obligations), administrative fees, and other pre-petition obligations (collectively, the "Obligations") to the Broker, the Carriers, or AFCO, to the extent due and payable post-petition.  Additionally, to the extent a premium payment or similar payment under the Programs was due prior to the Petition Date but remains outstanding, the Debtors seek authority to make such payment.

32.     It is essential to the continued operation of the Debtors' businesses and their efforts to reorganize that the Programs be maintained on an ongoing and uninterrupted basis. The failure to pay premiums or AFCO Payment Obligations when due may affect the Debtors' ability to obtain or renew coverage and could lead to various beneficiaries' drawing on standby letters of credit posted for the account of the Debtors.

33.     If the Liability and Property Policies are allowed to lapse, the Debtors could be exposed to substantial liability for damages resulting to persons and property of the Debtors and others, which exposure could have an extremely negative impact on the Debtors' ability to successfully reorganize.  Such a result would also place at risk the estates' assets necessary to satisfy the secured and unsecured claims of creditors.  Additionally, continued effectiveness of the directors' and officers' liability policies is necessary to the retention of qualified and dedicated senior management.  Moreover, pursuant to the terms of many of their leases and commercial contracts, as well as the guidelines established by the United States Trustee, the Debtors are obligated to remain current with respect to many of their primary insurance policies.

34.     The maintenance of the Workers' Compensation Programs is likewise justified because applicable state law mandates this coverage, and 28 U.S.C. § 959(b) requires the Debtors to comply with valid state laws.  In addition, the Debtors employ approximately 79,000

employees, all of whom depend on the protection that the Workers' Compensation Programs provide.

35.    As of the Petition Date, there were workers' compensation claims pending against the Debtors under the Debtors' Workers' Compensation Programs (the "Workers' Compensation Claims") arising out of employee accidents on the job.  Because of the Debtors' bonds and letters of credit securing their obligations to their injured employees, their failure to make good on their obligations directly to their employees would not benefit them economically.  The injured employees would be entitled to recover from the relevant security instrument, creating a new claim against the Debtors.  Because of administrative and other costs, such a mechanism would cost the Debtors more than paying the claim directly. In addition, it would unnecessarily burden the injured employee.  Accordingly, the Debtors request authority to pay any and all amounts due and owing with respect to any Workers' Compensation Program, and to maintain and continue pre-petition practices with respect to the Workers' Compensation Programs, including, among other things, allowing workers' compensation claimants—to the extent they have valid Workers' Compensation Claims—to proceed with their claims under the applicable insurance policy or program.

36.    Next, the payment of the AFCO Payment Obligations is justified in light of the fact that AFCO is a secured creditor who would be entitled to receive adequate protection on account of its claim.  The continued payment of the AFCO Payment Obligations is necessary to avoid the triggering of defaults under the Premium Financing Agreements that will require the Debtors to commit time and energy during the pendency of these cases better devoted elsewhere.

37.    The amounts the Debtors propose to pay in respect of the Programs are relatively small in light of the size of the Debtors' estates and the potential exposure of the Debtors absent

insurance coverage.  Therefore, it is critical that the Debtors continue to maintain their Programs on an uninterrupted basis and be permitted to pay premiums and related costs in the ordinary course of business and consistent with pre-petition practices.

38.     Bankruptcy courts handling other complex Chapter 11 cases have held that a debtor is authorized to maintain pre-petition insurance programs pursuant to Sections 363(b) and 105(a) where, as here, a sound business justification exists.  See, e.g., In re WorldCom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. 2002); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. 2001).  Given the crucial nature of the Debtors' various coverages, the Debtors submit that similar relief is appropriate in these Chapter 11 cases.

39.     Under the "necessity of payment" doctrine, a bankruptcy court can exercise its equitable powers to permit the payment of pre-petition claims of those parties whose goods or services are critical to reorganization of the debtors' operations.  See, e.g., In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) ("[I]f payment of a claim which arose prior to reorganization is essential to the continued operation of the railroad during reorganization, payment may be authorized even if it is made out of corpus."); In re Boston & Maine Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); In re Columbia Gas Sys., 171 B.R. 189, 192 (Bankr. D. Del. 1994) (necessity of payment doctrine is applicable where "payment is essential to continued operation of the business"); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (stating that the rationale of the necessity of payment rule corresponds with the paramount goal of Chapter 11: debtor reorganization) (referring to Dudley v. Mealey, 147 F.2d 268 (2d Cir.), cert. denied, 325 U.S. 873 (1945)); In re Structurelite Plastics Corp., 86 B.R. 922, 931 (Bankr. S.D.

-13-

Ohio 1988) (agreeing in "principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'") (citation omitted).

**C.      Applicable Banks Should Be Authorized to Honor and Pay Checks Issued and Make Other Transfers in Respect of the Programs.**

40.      If the Court grants the relief sought in this Motion, the Debtors request that all applicable banks and other financial institutions be authorized when requested by the Debtors and in the Debtors' sole discretion, without any duty of inquiry or liability to any party for following the Debtors' instructions, to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts to pay the Obligations, whether those checks are presented prior to or after the Petition Date, and make other transfers, provided that sufficient funds are available in the applicable accounts to make the payments.

**D.      Payment of the Obligations Does not Constitute Assumption.**

41.      The Debtors request that authorization of the payment of the Obligations not be deemed to constitute the post-petition assumption of any executory contract pursuant to Section 365 of the Bankruptcy Code.  The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto.  Moreover, authorization to pay the Obligations should not affect the Debtors' right to contest the amount or validity of any such charges, in whole or in part.

42.      Based on the foregoing, the Debtors submit the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## Notice

43.     Notice of this Motion has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## Waiver of Memorandum of Law

44.     Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court:

(a)     enter an order authorizing the Debtors to maintain the Programs and to pay related pre-petition premiums, related obligations, and premium financing payments; and

(b)     grant the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
        New York, New York

_/s/_      _D. J. Baker_____
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (917) 777-2150

-and-

Sarah Robinson Borders
Brian C. Walsh
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

PROPOSED ATTORNEYS FOR THE DEBTORS

**Exhibit A**

| Type of Coverage | Provider | Policy Number | Policy Period | Premium |
|---|---|---|---|---|
| Workers' Compensation-Deductible Program (Florida, Tennessee, Virginia, and Kentucky) | ACE American Insurance Co. | WLRC43974968 | Annual – Renews each July 1 | $1,255,472 |
| Workers' Compensation-Excess for Self Insured Retention (AL, GA, IN, KY, LA, MS, NC, OH, SC, TN, VA) | ACE American Insurance Co. | WCUC43986600 | Annual – Renews each July 1 | $1,907,468 |

**Exhibit B**

| Type of Coverage | Provider | Policy Number | Policy Period | Premium |
|---|---|---|---|---|
| Automobile Liability | ACE American Insurance Co. | XSA H8015399 | Annual – Renews each July 1 | $530,732 |
| Aviation Liability and Physical Damage | AIG Aviation, Inc. | GM3388683-06 | Annual - Renews each November 1 | $134,080 |
| Business Travel Accident | The Hartford | 10-ETB-16870 | Three-year policy – Renewed November 1, 2004 | $35,386 for three years plus $1,500 one year war risk coverage |
| Crime Insurance (Theft, forgery, fraud, etc.) | Federal Insurance Co. | 6801-6841 | Annual - Renews each November 1 | $60,000 |
| Crime Insurance (Excess) | National Union | 397-36-93 | Annual - Renews each November 1 | $42,285 |
| Directors and Officers Liability | Arch Insurance Co. | DOX 0002402-00 | Annual - Renews each November 1 | $270,000 |
| Directors and Officers Liability | AXIS (Bermuda) | 1127380104 QA | Annual - Renews each November 1 | $240,000 |
| Directors and Officers Liability | AXIS US | ENN 504456-00 | Annual - Renews each November 1 | $240,000 |
| Directors and Officers Liability | AWAC Ltd. (Bermuda) | C 002670/002 | Annual - Renews each November 1 | $291,720 |
| Directors and Officers Liability | AWAC - Side A DIC (Bermuda) | C 004154 / 001 | Annual - Renews each November 1 | $450,000 |
| Directors and Officers Liability | American Cas. Co. of Reading PA | 268049476 | Annual - Renews each November 1 | $180,000 |
| Directors and Officers Liability | Federal Insurance Co. | 8144-8282 | Annual - Renews each October 1 | $695,000 |

| Type of Coverage | Provider | Policy Number | Policy Period | Premium |
|---|---|---|---|---|
| Directors and Officers Liability | Houston Casualty Company | 24-MG-04-A7152 | Annual - Renews each November 1 | $526,911 |
| Directors and Officers Liability | Liberty Mutual Insurance Company | 192951-014 | Annual - Renews each November 1 | $307,068 |
| Directors and Officers Liability | Max Re Ltd (Bermuda) | 5178-509-PLFF-2004 | Annual - Renews each November 1 | $377,000 |
| Directors and Officers Liability | Max Re - Side-A DIC (Bermuda) | 5178509 PLFF 2004/ | Annual - Renews each November 1 | $240,000 |
| Directors and Officers Liability | National Union | 358-69-53 | Annual - Renews each October 1 | $660,250 |
| Directors and Officers Liability | National Union | 358-69-63 | Annual - Renews each November 1 | $170,120 |
| Directors and Officers Liability | Quanta Specialty Lines Insurance Company | CD 0100038804 | Annual - Renews each November 1 | $160,000 |
| Directors and Officers Liability | St. Paul Mercury | 529 CM 02222 | Annual - Renews each November 1 | $358,150 |
| Directors and Officers Liability | Starr Excess (Bermuda) | 4649481 | Annual - Renews each November 1 | $180,000 |
| Directors and Officers Liability | Star Excess (Bermuda) | 4649483 | Annual - Renews each November 1 | $240,000 |
| Directors and Officers Liability | RLI Insurance Company | EPG 0002702A | Annual - Renews each November 1 | $397,250 |
| Directors and Officers Liability | Twin City Fire Insurance Company | 00 DA 022305304 | Annual - Renews each November 1 | $270,000 |

| Type of Coverage | Provider | Policy Number | Policy Period | Premium |
|---|---|---|---|---|
| Directors and Officers Liability | XL Specialty Insurance Company | ELU 087366-04 | Annual - Renews each October 1 | $418,158 |
| Directors and Officers Liability | XL Specialty Insurance Company | ELU 087364-04 | Annual - Renews each November 1 | $161,615 |
| Directors and Officers Liability | XL Specialty Insurance Company | ELU 087368-04 | Annual - Renews each November 1 | $371,937 |
| Directors and Officers Liability | Zurich American Insurance Company | DOC 586062200 | Annual - Renews each November 1 | $160,000 |
| Outside Directorship Liability | Federal Insurance Co. | 8197-5270 | Annual - Renews each November 1 | $2,000 |
| Fiduciary Liability Insurance | Federal Insurance Co. | 8197-5270 | Annual - Renews each November 1 | $285,000 |
| Excess Fiduciary Liability Insurance | National Union Fire Ins. Co. | 03810620 | Annual - Renews each November 1 | $250,800 |
| Excess Fiduciary Liability Insurance | RLI Ins. Co. | EPG 0002703A | Annual - Renews each November 1 | $220,700 |
| Employment Practices Liability Insurance | Illinois National Insurance Co. | 550-66-74 | Annual – Renews each November 1 | $774,192 |
| Employment Practices Liability Insurance | Zurich American Insurance Co. | EOC 5434686-00 | Annual – Renews each November 1 | $570,000 |
| Employment Practices Liability Insurance | XL Insurance Ltd. (Bermuda) | XLEPL-01450 | Annual – Renews each November 1 | $474,150 |
| Employment Practices Liability Insurance – Punitive Damages Liability | Hanseatic Insurance Co. (Bermuda) Ltd. | HIPD200577 | Annual – Renews each November 1 | $57,000 |

| Type of Coverage | Provider | Policy Number | Policy Period | Premium |
|---|---|---|---|---|
| Employment Practices Liability Insurance – Punitive Damages Liability | Starr Excess Liability Insurance International Ltd. (Ireland) | 5373656 | Annual – Renews each November 1 | $97,740 |
| General Liability | ACE American Insurance Co. | XSL G21708069 | Annual – Renews each July 1 | $1,446,909 |
| Excess Liability | ACE American Insurance Co. | XOOG21976283 | Annual – Renews each July 1 | $1,250,000 |
| Excess Liability | Great American Assurance | EXC5166002 | Annual – Renews each July 1 | $292,500 |
| Excess Liability | St. Paul Fire & Marine Ins. Co. | QI09001208 | Annual – Renews each July 1 | $164,250 |
| Excess Liability | American Guarantee Liability (Zurich) | AEC930041003 | Annual – Renews each July 1 | $150,258 |
| Excess Liability | Starr Excess Liability Ins. Int'l Ltd. (Bermuda) | 6340826 | Annual – Renews each July 1 | $534,375 |
| Excess Liability | Liberty Ins. Underwriters, Inc. | LQ1-B71-198262-014 | Annual – Renews each July 1 | $112,500 |
| Excess Liability – Punitive Damages | ACE Bermuda Insurance, Ltd. | WIN0091PD204 | Annual – Renews each July 1 | $100,000 |
| Excess Liability – Punitive Damages | Magna Carta Insurance Ltd. | MCPD201444 | Annual – Renews each July 1 | $30,000 |
| Excess Liability – Punitive Damages | St. Paul (Bermuda) Ltd. | STPBPB292SEU04 | Annual – Renews each July 1 | $21,000 |

| Type of Coverage | Provider | Policy Number | Policy Period | Premium |
|---|---|---|---|---|
| Excess Liability – Punitive Damages | Hanseatic Ins. Co. (Bermuda) | HIPD200533 | Annual – Renews each July 1 | $22,839 |
| Excess Liability – Punitive Damages | Liberty Mutual Insurance Europe Ltd. | 198-262-014-PD | Annual – Renews each July 1 | $37,500 |
| Property (35% Participation) | Lexington Insurance Co. | 7471272 | Annual – Renews each April 30 | $1,433,332 |
| Property (20% Participation) | Lexington Insurance Co. | DP312904 | Annual – Renews each April 30 | $818,918 |
| Property (35% Participation) | Axis Surplus Insurance Co. | EAF700868 | Annual – Renews each April 30 | $1,433,250 |
| Property (10% Participation) | SR Int'l Business Ins. Co. Ltd. | 6043000001 | Annual – Renews each April 30 | $430,000 |
| Property (First Excess Layer) (60% Participation) | Zurich American Ins. Co. | XPP273387607 | Annual – Renews each April 30 | $501,764 |
| Property (First Excess Layer) (10% Participation) | ACE American Ins. Co. | CRXD35647788 | Annual – Renews each April 30 | $88,000 |
| Property (First Excess Layer) (10% Participation) | Commonwealth Ins. Co. | US5066 | Annual – Renews each April 30 | $88,000 |
| Property (First Excess Layer) (10% Participation) | Employers Ins. Co. of Wausau | MQCZ91527241034 | Annual – Renews each April 30 | $88,000 |
| Property (First Excess Layer) (10% Participation) | Arch Insurance Co. | 31PRP3475100 | Annual – Renews each April 30 | $84,000 |
| Property (Second Excess Layer) (20% Participation) | Zurich American Ins. Co. | XPP273387607 | Annual – Renews each April 30 | $95,000 |
| Property (Second Excess Layer) (40% Participation) | ACE American Ins. Co. | CRXD35647788 | Annual – Renews each April 30 | $212,800 |
| Property (Second Excess Layer) (30% Participation) | XL Insurance America, Inc. | US00006556PR04A | Annual – Renews each April 30 | $159,488 |

| Type of Coverage | Provider | Policy Number | Policy Period | Premium |
|---|---|---|---|---|
| Property (Second Excess Layer) (10% Participation) | Lloyd's of London | DP315204 | Annual – Renews each April 30 | $47,500 |
| Property (Third Excess Layer) (10% Participation) | Arch Insurance Co. | 31PRP3475200 | Annual – Renews each April 30 | $33,750 |
| Property (Third Excess Layer) (25% Participation) | ACE American Ins. Co. | CRXD35647788 | Annual – Renews each April 30 | $82,500 |
| Property (Third Excess Layer) (30% Participation) | XL Insurance America, Inc. | US00006556PR04A | Annual – Renews each April 30 | $90,000 |
| Property (Third Excess Layer) (25% Participation) | Axis Surplus Insurance Co. | EAF706878 | Annual – Renews each April 30 | $80,000 |
| Property (Third Excess Layer) (10% Participation) | Lloyd's of London | DP315204 | Annual – Renews each April 30 | $30,000 |
| Property (Fourth Excess Layer) (10% Participation) | Arch Insurance Co. | 31PRP3475200 | Annual – Renews each April 30 | $8,400 |
| Property (Fourth Excess Layer) (30% Participation) | XL Insurance America, Inc. | US00006556PR04A | Annual – Renews each April 30 | $24,000 |
| Property (Fourth Excess Layer) (35% Participation) | Commonwealth Ins. Co. | US5066 | Annual – Renews each April 30 | $30,800 |
| Property (Fourth Excess Layer) (25% Participation) | Employers Ins. Co. of Wausau | MQCZ91527241044 | Annual – Renews each April 30 | $22,000 |
| Property (Deductible Buydown) | Zurich American Inc. Co. | ERP930424402 | Annual – Renews each April 30 | $305,531 |
| Property (Boiler & Machinery) | Travelers Indemnity Co. of Illinois | BM21961X9218TIL04 | Annual – Renews each April 30 | $195,954 |
| Special Crime Insurance | Federal Insurance Co. | 8197-5378 | Three-year policy commencing November 1, 2004 | $26,000 |
| Stand-Alone Terrorism | Illinois Union Ins. Co. | TERD3584465A | Annual – Renews each April 30 | $48,750 |

| Type of Coverage | Provider | Policy Number | Policy Period | Premium |
|---|---|---|---|---|
| Stand-Alone Terrorism | Illinois Union Ins. Co. | TERD35844727 | Annual – Renews each April 30 | $30,000 |
| Stand-Alone Terrorism | WIN General Ins., Inc.[1] | 1-TRIA2-PR | Annual – Renews each July 1 | $217,286 |
| Stand-Alone Terrorism | WIN General Ins., Inc. | 1-TRIA2-CA | Annual – Renews each July 1 | $275,000 |
| Stand-Alone Terrorism | WIN General Ins., Inc. | 1-TRIA1-CA | Annual – Renews each July 1 | $12,000 |

---

[1] WIN General Insurance, Inc., is a non-debtor subsidiary of Debtor Winn-Dixie Stores, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                         :
                                              :          **Chapter 11 Case No.**
                                              :
**WINN-DIXIE STORES, INC., <u>et</u> <u>al.</u>,**           :          **Case No. 05-11063**
                                              :
            **Debtors.**                      :          **(Jointly Administered)**
                                              :
-------------------------------------------------------------x

### INTERIM ORDER GRANTING AUTHORITY TO CONTINUE PRE-PETITION INSURANCE AND WORKERS' COMPENSATION PROGRAMS AND TO PAY PRE-PETITION PREMIUMS, RELATED <u>OBLIGATIONS, AND PREMIUM FINANCING PAYMENTS</u>

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order authorizing the Debtors to continue pre-petition insurance and workers' compensation programs (the "Programs") and to pay pre-petition obligations and premium financing payments in connection therewith (the "Obligations"); all as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors'

noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis until such time as the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.; and it is further

ORDERED that any objection to the relief requested by the Motion on a final basis must be filed with the Court and be served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; and (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia  30303 so as to be received by _____, 2005 at 5:00 p.m.; and it is further

ORDERED that the Debtors are authorized, but not required, to maintain the Programs; and it is further

ORDERED that the Debtors are authorized, but not required, to pay Obligations necessary to maintain the Programs, including premium financing payments; and it is further

ORDERED that the Debtors are authorized, but not required, to pay pre-petition Workers' Compensation Claims (as defined in the Motion) pending against the Debtors under the Programs; and it is further

ORDERED that, subject to the availability of funds, the Debtors' banks and financial institutions (collectively, the "Banks") are authorized to process, honor, and pay any and all checks or electronic transfers issued in connection with the Programs; and it is further

ORDERED the Banks that process, honor, and pay any and all checks or electronic transfers on account of the Programs may rely on the representations of the Debtors as to which checks or electronic transfers are issued and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtors' instructions; and it is further

ORDERED that authorization of the payment of the Obligations shall not be deemed to constitute the post-petition assumption of any executory contract pursuant to Section 365 of the Bankruptcy Code; and it is further

ORDERED that nothing in this Order shall affect the Debtors' right to contest the amount or validity of any Obligations, in whole or in part; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any of the Debtors' insurance providers or any third party; and it is further

ORDERED that notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order, and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated:  February ___, 2005
          New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                         :
                                                              :    **Chapter 11 Case No.**
                                                              :
**WINN-DIXIE STORES, INC., <u>et</u> <u>al.</u>,**            :    **Case No. 05-11063**
                                                              :
            **Debtors.**                                      :    **(Jointly Administered)**
                                                              :
----------------------------------------------------------------x

### FINAL ORDER GRANTING AUTHORITY TO CONTINUE PRE-PETITION INSURANCE AND WORKERS' COMPENSATION PROGRAMS AND TO PAY PRE-PETITION PREMIUMS, RELATED <u>OBLIGATIONS, AND PREMIUM FINANCING PAYMENTS</u>

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for an order authorizing the Debtors to

continue pre-petition insurance and workers' compensation programs (the "Programs") and to

pay pre-petition obligations and premium financing payments in connection therewith (the

"Obligations"); all as more fully set forth in the Motion; and upon consideration of the

Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local

Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February,

2005; and the Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to

Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July

19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank,

N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors'

noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that the Debtors are authorized, but not required, to maintain the Programs; and it is further

ORDERED that the Debtors are authorized, but not required, to pay Obligations necessary to maintain the Programs, including premium financing payments; and it is further

ORDERED that the Debtors are authorized, but not required, to pay pre-petition Workers' Compensation Claims (as defined in the Motion); and it is further

ORDERED that, subject to the availability of funds, the Debtors' banks and financial institutions (collectively, the "Banks") are authorized to process, honor, and pay any and all checks or electronic transfers issued in connection with the Programs; and it is further

ORDERED the Banks that process, honor, and pay any and all checks or electronic transfers on account of the Programs may rely on the representations of the Debtors as to which checks or electronic transfers are issued and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtors' instructions; and it is further

ORDERED that authorization of the payment of the Obligations shall not be deemed to constitute the post-petition assumption of any executory contract pursuant to Section 365 of the Bankruptcy Code; and it is further

ORDERED that nothing in this Order shall affect the Debtors' right to contest the amount or validity of any Obligations, in whole or in part; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any of the Debtors' insurance providers or any third party; and it is further

ORDERED that notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order, and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____ ___, 2005
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE