SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                             :
                                                  :          Chapter 11
                                                  :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**       :          Case No. 05-11063
                                                  :
           Debtors.                               :          **(Jointly Administered)**
                                                  :
---------------------------------------------------------------x

**MOTION FOR ORDER (A) GRANTING ADMINISTRATIVE
EXPENSE STATUS TO DEBTORS' UNDISPUTED OBLIGATIONS
ARISING FROM THE POST-PETITION DELIVERY OF GOODS
ORDERED IN THE PRE-PETITION PERIOD AND AUTHORIZING
THE DEBTORS TO PAY SUCH OBLIGATIONS IN THE ORDINARY
COURSE OF BUSINESS; AND (B) AUTHORIZING PAYMENT OF
<u>PRE-PETITION COMMON CARRIER AND WAREHOUSE CHARGES</u>**

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food

**Background**

**A.     Chapter 11 Filings.**

1. The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2. The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.     Company Background.**

5. The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors currently operate more than 900 stores in the United States. Substantially all of the Debtors' store locations are leased rather than owned.

---

Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

6.     The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.     The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.     Capital Structure.**

8.     The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.     The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10. The Credit Agreement provides for revolving loans and the issuance of letters of credit. It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto. As of the Petition Date, the Debtors were liable for obligations under the Credit Agreement in the aggregate amount of approximately $427 million. The Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11. Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture"). Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes. The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity. The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12. Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN. All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.    Events Leading to the Debtors' Chapter 11 Cases.**

13. In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan"). The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core,

and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.      Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second

fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million.  As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

**Relief Requested**

20.     By this Motion, the Debtors seek the entry of an order (a) granting certain of the Debtors' vendors administrative expense priority status under Sections 503(b) and 507(a)(1) of the Bankruptcy Code for undisputed obligations arising from the Outstanding Orders (as hereinafter defined) for goods delivered to, and accepted by, the Debtors subsequent to the Petition Date; and out of an abundance of caution, authorizing the Debtors to satisfy such undisputed obligations to the Vendors in the ordinary course of business under Section 363(c) of the Bankruptcy Code, (b) authorizing the Debtors to pay certain pre-petition Common Carrier

Charges and Warehouse Charges (as hereinafter defined) under Sections 105 and 363 of the Bankruptcy Code, and (c) allowing their banks and other financial institutions to process, honor, and pay checks or electronic transfers issued by the Debtors to honor pre-petition transfers made by the Debtors in connection therewith.

### Basis for Relief

**A.    The Outstanding Orders.**

21.    As of the Petition Date, the Debtors had numerous pre-petition purchase orders outstanding (the "Outstanding Orders") with certain of their trade vendors and suppliers (the "Vendors") for goods and supplies necessary to the operation of their businesses.  As a consequence of the commencement of the Debtors' Chapter 11 cases, the Vendors may be concerned that delivery of goods after the Petition Date pursuant to the Outstanding Orders will render the Vendors who make such deliveries pre-petition general unsecured creditors of the Debtors' estates.

22.    The Debtors submit that the purchase obligations that arise in connection with the post-petition delivery and acceptance of goods, including goods ordered pre-petition, are in fact administrative expense priority claims under Section 503(b)(1)(A) of the Bankruptcy Code. Thus, satisfaction of the Outstanding Orders on a post-petition basis will not enhance the priority of the Vendors or prejudice the rights of general unsecured creditors or other parties in interest.

23.    Absent authority to satisfy the Outstanding Orders in these Chapter 11 cases, the Debtors may be required to re-issue purchase orders to provide the Vendors with assurance that they are entitled to administrative priority on account of the Outstanding Orders.  Issuing new purchase orders could be a time-consuming task and is likely to disrupt the continuous flow of goods to the Debtors.  Customer confidence and goodwill will be severely harmed if, upon the filing of these Chapter 11 cases, there are even minimal interruptions in the Debtors' ability to

maintain inventory and keep their shelves stocked with the high-quality, diverse selection of goods their customers have come to expect.

24. Relief similar to that requested herein has been granted in other large Chapter 11 cases. See e.g., In re Westpoint Stevens, Inc., Case No. 03-13532 (Bankr. S.D.N.Y. June 3, 2003); In re Fleming Co., Case No. 03-10945 (Bankr. D. Del. Apr. 3, 2003); In re Magellan Health Services, Inc., Case No. 03-40515 (Bankr. S.D.N.Y. Mar. 11, 2003); In re Ames Department Stores, Inc., Case No. 01-42217 (Bankr. S.D.N.Y. Aug. 20, 2001); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 3, 2001); In re Grand Union Co., Case No. 0039613 (Bankr. D.N.J. Oct. 3, 2000).

25. In light of the foregoing, the Debtors submit that entry of an order authorizing the Debtors to satisfy their obligations under the Outstanding Orders is consistent with the priority scheme set forth in the Bankruptcy Code, and is necessary and appropriate under the circumstances of these Chapter 11 cases.

**B.     Common Carrier and Warehouse Charges.**

26. In the ordinary course of the Debtors' business, the Debtors utilize common carriers, movers, shippers, and other similar services (the "Common Carriers"). The Debtors satisfy the majority of their shipping needs from within the company. The Debtors rely on the Common Carriers to transport inventory from various vendors to the Debtors' warehouses. In connection therewith, the Debtors owe approximately $2.5 million as of the Petition Date to such common carriers (the "Common Carrier Charges").

27. The Debtors also utilize storage facilities (the "Warehouses"), almost all of which are operated and owned by the Debtors. However, the Debtors do utilize one or more Warehouses operated by a third-party warehousemen ("Warehousemen"). Depending on the

type of goods shipped from a vendor and the Debtors' inventory at a particular point in time, goods shipped from vendors to the Debtors are often placed in the Warehouses until they become necessary or until room in the Debtors' stores becomes available. The Debtors owe approximately $75,000 as of the Petition Date in connection with their use of third-party Warehouses (the "Warehouse Charges").

28. The Debtors' failure to pay the Common Carrier Charges and the Warehouse Charges may give rise to claims secured by various liens, including liens on goods and supplies or possessory liens under state and other applicable law. Depending on the circumstances of a particular case, these liens may give rise to claims that the Debtors' estates would be required to pay in full. Accordingly, the immediate payment of certain Common Carrier Charges and Warehouse Charges will affect only the timing of such payments and will not prejudice the rights of general unsecured creditors or other parties in interest. In addition, these liens may entitle the Common Carriers and Warehousemen to refuse to release or deliver property that would impede the Debtors' ability to make available to their customers an uninterrupted supply of fresh, saleable inventory. For example, the assertion of a possessory lien could prevent the Debtors from making fresh milk and dairy products available to their customers. All of these scenarios, among others, would cause delay and disruption to the Debtors' business, to the detriment of all parties in interest.

29. Section 363(b) of the Bankruptcy Code provides that the trustee may, after notice and a hearing, "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). The Court may authorize a debtor to use such property if there is a good business reason for doing so, such as aiding in the debtor's reorganization. In re Lionel Corp., 722 F.2d 1063, 1071-72 (2d Cir. 1983). As set forth above, the payment of the Common

Carrier Charges and Warehouse Charges is essential to the uninterrupted operation of the Debtors' stores and to the Debtors' ability to fully stock their shelves. The Debtors submit that the foregoing are legitimate business reasons that support the relief requested herein.

30.  Section 105(a) of the Bankruptcy Code provides this Court with authority to grant the relief requested herein. In a long line of well-established cases, bankruptcy courts have permitted post-petition payment of pre-petition obligations where necessary to preserve or enhance the value of the debtor's estate for the benefit of all creditors. See Miltenberger v. Logansport Railway, 106 U.S. 286 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of ... [crucial] business relations..."); Southern Railway Co. v. Flournoy, 301 F.2d 847 (4th Cir. 1962) ("The principle of necessity of payment [espoused in Miltenberger] has since been carried into different factual surroundings as the basis for granting superpriority to business-operating accounts."); In re Boston and Maine Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); In re Chateaugay Corp., 80 B.R. 279 (S.D.N.Y 1987) (approving lower court order authorizing payment of pre-petition wages, salaries, expenses, and benefits), appeal dismissed, 838 F.2d 59 (2d Cir. 1988). Here, continued performance by the Common Carriers and Warehousemen is essential to the Debtors' ability to stock their shelves with high-quality products on a consistent, uninterrupted basis. Even the mere appearance of inadequately stocked shelves will adversely affect the Debtors' public image and the continued patronage of its customers. In light of the foregoing, payment of the Common Carrier Charges and Warehouse Charges is essential to the Debtors' successful reorganization and falls within the purview of Section 105(a) of the Bankruptcy Code.

31. Relief similar to that requested herein has been granted in other large Chapter 11 cases. See e.g., In re Tower Automotive, Inc., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 3, 2005); In re Interstate Bakeries Corp., Case No. 04-45814 (Bankr. W.D. Mo. Sept. 24, 2004); In re Westpoint Stevens, Inc., Case No. 03-13532 (Bankr. S.D.N.Y. June 3, 2003); In re Fleming Companies, Inc., Case No. 03-10945 (Bankr. D. Del. Apr. 3, 2003); In re Ames Department Stores, Inc., Case No. 01-42217 (Bankr. S.D.N.Y. Aug. 20, 2001); In re Grand Union Co., Case No. 0039613 (Bankr. N.J. Oct. 3, 2000).

32. Based upon the foregoing, the Debtors submit that authorization to pay Common Carrier Charges and Warehouse Charges is essential to the Debtors' successful reorganization and is in the best interest of the Debtors, their creditors and all parties in interest.

33. In addition, by this Motion, the Debtors seek authorization to allow their banks and other financial institutions (collectively, the "Banks") to process, honor, and pay checks or electronic transfers issued by the Debtors to honor pre-petition transfers made by the Debtors in connection with the Common Carrier Charges and Warehouse Charges. The Debtors submit that, in doing so, the Banks may rely on the representations of the Debtors as to which pre-petition checks or electronic transfers should be honored.

**Notice**

34.     Notice of this Motion has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

**Waiver of Memorandum of Law**

35.     Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

(a)     granting administrative expense status to the Debtors' undisputed obligations arising from the Outstanding Orders and authorizing the Debtors to pay such obligations;

(b)     authorizing payment of pre-petition Common Carrier Charges and Warehouse Charges;

(c)     authorizing the Banks to process, honor, and pay checks or electronic transfers issued by the Debtors to honor pre-petition transfers made by the Debtors in connection with the Common Carrier Charges and Warehouse Charges; and

(d)     granting the Debtors such other and further relief as is just and proper

Dated:  February 21, 2005
        New York, New York

/s/     *D. J. Baker*
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (917) 777-2150

-and-

Sarah Robinson Borders
Brian C. Walsh
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100

PROPOSED ATTORNEYS FOR THE DEBTORS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                       :
                                                            :    **Chapter 11**
                                                            :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**                 :    **Case No. 05-11063**
                                                            :
              Debtors.                                      :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

**ORDER (A) GRANTING, ON A FINAL BASIS, ADMINISTRATIVE EXPENSE
STATUS TO DEBTORS' UNDISPUTED OBLIGATIONS ARISING
FROM THE POST-PETITION DELIVERY OF GOODS ORDERED
IN THE PRE-PETITION PERIOD AND AUTHORIZING THE
DEBTORS TO PAY SUCH OBLIGATIONS IN THE ORDINARY
COURSE OF BUSINESS AND (B) AUTHORIZING, ON AN INTERIM BASIS,
<u>PAYMENT OF PRE-PETITION COMMON CARRIER AND WAREHOUSE CHARGES</u>**

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order granting administrative expense status to the Debtors' undisputed obligations arising from the Outstanding Orders (as defined in the Motion) and authorizing the Debtors to pay such obligations in the ordinary course of business, and authorizing the Debtors to pay the Common Carrier Charges and Warehouse Charges (each as defined in the Motion); all as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors; and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted, in part on a final basis and in part on an interim basis until such time as the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.; and it is further

ORDERED that any objection to the relief requested by the Motion on a final basis regarding Common Carrier and Warehouse Charges must be filed with the Court and be served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia 30303; and it is further

ORDERED that the Debtors are authorized, but not directed, to honor or pay those obligations arising from the post-petition delivery of goods ordered by the Debtors before the Petition Date. For purposes of this Order, goods shall be deemed to be delivered to the

Debtors post-petition (a) if possession or control of such goods is transferred to the Debtors on or after the Petition Date, or (b) if, pursuant to a contract or applicable nonbankruptcy law, risk of loss of such goods passes to the Debtors on or after the Petition Date, such as by a vendor's tender of such goods free on board (F.O.B.) to a carrier; and is further

ORDERED that the payment of an obligation arising from the Outstanding Orders shall not preclude the Debtors from contesting the validity of such amounts claimed to be due; and it is further

ORDERED on an interim basis that the Debtors are authorized, but not directed, to honor and pay all Common Carrier Charges and all Warehouse Charges, consistent with their customary practice in the ordinary course of their businesses; and it is further

ORDERED on an interim basis that the payment of an obligation arising from the Common Carrier Charges and the Warehouse Charges shall not preclude the Debtors from contesting the validity of such amounts claimed to be due; and it is further

ORDERED on an interim basis that, subject to the availability of funds, the Debtors' banks and financial institutions (collectively, the "Banks") are authorized to process, honor, and pay any and all checks or electronic transfers issued in connection with the Common Carrier Charges and the Warehouse Charges; and it is further

ORDERED on an interim basis that the Banks that process, honor, and pay any and all checks and electronic transfers on account of the Common Carrier Charges and the Warehouse Charges may rely on the representations of the Debtors as to which checks or electronic transfers are issued and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtors' instructions; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Vendor, Common Carrier, Warehousemen, or any third party; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: February ___, 2005
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                       :
                                                            :     **Chapter 11**
                                                            :
**WINN-DIXIE STORES, INC., et al.,**                        :     **Case No. 05-11063**
                                                            :
            Debtors.                                        :     **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

**FINAL ORDER (A) GRANTING ADMINISTRATIVE EXPENSE
STATUS TO DEBTORS' UNDISPUTED OBLIGATIONS ARISING
FROM THE POST-PETITION DELIVERY OF GOODS ORDERED
IN THE PRE-PETITION PERIOD AND AUTHORIZING THE
DEBTORS TO PAY SUCH OBLIGATIONS IN THE ORDINARY
COURSE OF BUSINESS AND (B) AUTHORIZING PAYMENT OF
<u>PRE-PETITION COMMON CARRIER AND WAREHOUSE CHARGES</u>**

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order granting administrative expense status to the Debtors' undisputed obligations arising from the Outstanding Orders (as defined in the Motion) and authorizing the Debtors to pay such obligations in the ordinary course of business, and authorizing the Debtors to pay the Common Carrier Charges and Warehouse Charges (each as defined in the Motion); all as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors; and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that the Debtors are authorized, but not directed, to honor and pay all Common Carrier Charges and all Warehouse Charges, consistent with their customary practice in the ordinary course of their businesses; and it is further

ORDERED that payment of an obligation arising from the Common Carrier Charges and the Warehouse Charges shall not preclude the Debtors from contesting the validity of such amounts claimed to be due; and it is further

ORDERED that, subject to the availability of funds, the Debtors' banks and financial institutions (collectively, the "Banks") are authorized to process, honor, and pay any and all checks or electronic transfers issued in connection with the Common Carrier Charges and the Warehouse Charges; and it is further

ORDERED that the Banks that process, honor, and pay any and all checks and electronic transfers on account of the Common Carrier Charges and the Warehouse Charges may rely on the representations of the Debtors as to which checks or electronic transfers are issued

- 3 -

and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtors' instructions; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Vendor, Common Carrier, Warehousemen, or any third party; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____ ___, 2005
      New York, New York

                                                  UNITED STATES BANKRUPTCY JUDGE