SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
**In re**                 :

                         :         **Chapter 11**

                         :

**WINN-DIXIE STORES, INC., <u>et al.</u>,**    :        **Case No. 05-11063**

                         :

          **Debtors.**         :         **(Jointly Administered)**

                         :
-------------------------------------------------------------x

## MOTION FOR AUTHORITY TO PAY
## PRE-PETITION CLAIMS ARISING UNDER THE
## <u>PERISHABLE AGRICULTURAL COMMODITIES ACT</u>

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**Background**

**A.     Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.     Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.     The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.     Capital Structure.**

8.     The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.     The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of approximately $427 million. The Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.    Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture"). Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes. The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity. The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12.    Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN. All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.    Events Leading to the Debtors' Chapter 11 Cases.**

13.    In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan"). The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core, and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.     Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since

the announcement of the Debtors' financial results on February 10, 2005, the Debtors have

experienced a reduction in vendor and other credit by more than $130 million.  As a result, the

Debtors have been forced to conclude, after consultation with their advisors, that their interests

and the interests of their creditors, employees, and customers will be best served by a

reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief

executive officer hired in December 2004, intend to implement further asset rationalization and

expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image

and competitive position, with the goal of improving their operations and financial performance

and strengthening their business for the benefit of creditors, customers, employees, and the

communities in which the Debtors operate.

## Relief Requested

20.     By this Motion, the Debtors respectfully request the entry of an order, pursuant to

Sections 105(a) and 541 of the Bankruptcy Code, for authority to implement certain procedures

(the "PACA Procedures") (a) providing for payment of any and all undisputed claims asserted

against the Debtors under the Perishable Agricultural Commodities Act of 1930, as amended, 7

U.S.C. §§ 499a *et seq*. ("PACA") and (b) providing for the resolution of disputed claims asserted

under PACA.  The Debtors submit that implementation of the PACA Procedures will assist the

Debtors in a smooth transition into Chapter 11 and is in the best interests of the Debtors' estates

and all parties in interest.

21.     The Debtors do not believe that their vendors have sold them "livestock,"

"poultry," or any other eligible goods covered by the Packers and Stockyards Act of 1921, as

amended, 7 U.S.C. §§ 181 *et seq*. ("PASA").  Consequently, there should be no valid PASA

claims against the Debtors.  However, the Debtors seek authority to address and resolve valid

PASA claims pursuant to this Motion, as a protective measure in the event that vendors may

have rights under PASA.  As such, "PACA Procedures," "PACA Claims," "PACA Notices," and

other similar terms used herein should incorporate PASA.

## PACA

22.     Congress enacted PACA in 1930 to regulate the sale of "perishable agricultural

commodities."  Endico Potatoes, Inc. V. CIT Group/Factoring, 67 F.3d 1063, 1067 (2d Cir.

1995).  The term "perishable agricultural commodities" is generally defined as all fresh fruits

and vegetables whether or not frozen or packed on ice.  See 7 U.S.C. § 499a(b)(4).  The statute

requires licensing of entities buying and selling fruits and vegetables, and provides various

remedies in connection therewith.  Id.  In 1984, Congress amended PACA to provide protections

to fresh fruit and vegetable sellers in the form of a statutory constructive trust (the "PACA

Trust") consisting of a buyer's entire inventory of food or other derivatives of perishable

agricultural commodities, the products derived therefrom, and the proceeds related to any sale of

the commodities or products (the "PACA Trust Assets").  See 7 U.S.C. § 499e(c)(2).

23.     PACA Trust Assets are preserved as a non-segregated floating trust and may be

commingled with non-trust assets.  A PACA Trust is not property of a debtor's estate.  See In re

Kornblum & Co., 81 F.3d 280, 284 (2nd Cir. 1995); Morris Okun, Inc. v. Harry Zimmerman,

Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993).  However, the disposition of PACA Trust Assets is

subject to the jurisdiction of the bankruptcy court.  See Monterey Mushrooms, Inc. v. Carolina

Produce Distribs., Inc., 110 B.R. 207, 209 (W.D.N.C. 1990); Allied Growers Co-Op, Inc. v.

United Fruit and Produce Co., 86 B.R. 14, 16 (Bankr. D. Conn. 1988).

24.     PACA requires that certain procedural steps be taken by a seller to preserve its rights as a beneficiary of a PACA Trust.  For example, an unpaid supplier of perishable agricultural commodities must provide:

> written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

7 U.S.C. 499e(c)(3).

25.     Beneficiaries of a PACA Trust that adhere to the statutory notice requirements are entitled to prompt payment from the PACA Trust Assets ahead of secured and unsecured creditors of the Debtors' estates.  See "R" Best Product, Inc. v. 646 Corp., No. 00 Civ.8536(HB), 2002 WL 31453909, at *1 (S.D.N.Y. Oct. 31, 2002).  A seller's failure to comply with the statutory notice requirements renders its claim a general unsecured claim.  See In re Chipwich, Inc., 165 B.R. 135, 138 (Bankr. S.D.N.Y. 1994).

26.     PACA's application is limited to sales to commission merchants, brokers, and dealers.  The PACA definition of "dealers" includes persons purchasing fruits and vegetables solely for sale at retail at an annual cost of more than $230,000.  See 7 U.S.C. § 499a(b)(6). Prior to the Petition Date, the Debtors purchased "perishable agricultural commodities" in an amount exceeding the statutory threshold.  Accordingly, the Debtors are generally considered "dealers" of perishable agricultural commodities that are subject to PACA.

## The PACA Procedures

27.      Given the statutory trust created by PACA, the Debtors anticipate that a significant number of their vendors may file notices under PACA (the "PACA Notices") to preserve their rights to the PACA Trust Assets.  The PACA Procedures, as set forth below, are designed to facilitate the resolution of PACA claims in an orderly and efficient manner.

a.      PACA Notices.  Any seller seeking the protection of a PACA Trust must deliver or have previously delivered a valid and timely PACA Notice in accordance with PACA to the Debtors on or before the statutory deadline.

b.      Notice of PACA Order.  The Debtors will send a copy of the order approving this Motion (the "PACA Order") by first-class mail to all persons or entities who have delivered a valid and timely PACA Notice (or a document that purports to be a valid and timely PACA Notice) to the Debtors.

c.      Allowed PACA Claims.  If the Debtors determine that a claim asserted in a PACA Notice (a "PACA Claim") is valid, the Debtors shall pay such claim as an administrative expense of the Debtors' estates as soon as practicable after receipt of the PACA Notice (an "Allowed PACA Claim").  Any holder of an Allowed PACA Claim that accepts payment from the Debtors on account of its PACA Claim shall be deemed to have waived, released, and discharged any and all claims, of any type, kind, or priority on account of or in connection with its PACA Claim against the (i) Debtors, (ii) any former, present, or future officer, director, or employee of the Debtors, (iii) the Debtors' assets and properties, and (iv) any funds or amounts held in trust by the Debtors.

d.      Disputed Claim Report.  As soon as practicable after the period ending ninety (90) days after entry of the PACA Order, the Debtors will file a report ("Report") with the Court that lists the PACA Claims the Debtors believe are invalid in whole or in part.

        (i)      The Report shall be sent by first-class mail to the following parties: (i) the Office of the United States Trustee for the Southern District of New York (ii) counsel for Wachovia Bank, N.A., as the agent for the Debtors' secured lenders, and (iii) counsel for any statutory committee appointed in the Debtors' Chapter 11 cases.

        (ii)     In addition, a copy of the Report and a copy of the PACA Order shall be sent, by first-class mail, to all parties filing a PACA Claim that is the subject of the Report.

    e.    <u>Objections</u>.  The deadline for a claimant to object to the inclusion of a PACA Claim in the Report shall be 4:00 p.m. prevailing Eastern Time on the day that is twenty (20) calendar days from the day on which the Report is filed with the Court and served as set forth herein. Any objection must be filed with the Court and received by Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for the Debtors, Four Times Square, New York, New York, 10036, Attn:  Sally McDonald Henry, Esq., on or before the objection deadline.

    f.    <u>Effect of the Report</u>.

        (i)      With respect to each PACA Claim in the Report as to which no objection is timely received, such PACA Claim shall be deemed an invalid PACA Claim (in whole or in part, as specified in the Report) without further order of the Court and, to the extent invalid, shall not be entitled to the priorities provided under PACA.

        (ii)     With respect to each PACA Claim in the Report as to which an objection is timely received and the parties resolve the objection, the PACA Claim shall be treated as an Allowed PACA Claim or a disallowed PACA Claim, in whole or part, as agreed to by the parties, without further order of the Court, upon the filing by the Debtors of a notice setting forth the agreement of the parties.

        (iii)    With respect to each PACA Claim in the Report as to which an objection is timely received and the objection cannot be resolved by the parties, the PACA Claim shall not be deemed valid or invalid except upon order of the Court.  If a resolution is not reached by at least sixty (60) days after the date of the Report, or such later period as may be agreed to by the claimant, the Debtors will arrange for a hearing before the Court.

g.      Adversary Proceedings.  Pending completion of the PACA Procedures, a stand-still shall be in effect, and parties claiming to be PACA beneficiaries may not take any action to establish the validity and amount of their PACA Claims, including the commencement of adversary proceedings, except pursuant to the PACA Procedures.  The Debtors respectfully request that the Court establish the PACA Procedures as the sole and exclusive method permitted with respect to the resolution and payment of PACA Claims asserted against the Debtors.  The Debtors further request that all vendors with PACA Claims be prohibited from seeking any other treatment for their PACA Claims than is permitted by the PACA Procedures.

### Basis for Relief

28.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The Debtors submit that approval of the PACA Procedures is appropriate and well within the Court's equitable powers under Section 105(a) of the Bankruptcy Code.

29.     Implementation of the PACA Procedures is in accord with both the Bankruptcy Code and PACA.  Consistent with the priority granted to certain vendors under PACA, the PACA Procedures provide for payment of Allowed PACA Claims as administrative expenses ahead of secured and unsecured creditors of the Debtors' estates.  Such payment is appropriate because the PACA Trust Assets do not constitute property of the Debtors' estates.  In addition, the PACA Procedures satisfy due process by providing interested parties with notice and an opportunity to object to the Debtors' designation of their claim as invalid.

30.     Moreover, payment of Allowed PACA Claims will inure to the benefit of the Debtors' estates by fostering a continued relationship between the Debtors and the sellers of

fresh produce.  This relationship is essential to the Debtors' ability to service their customers and

to the efficient, cost-effective operation of their business.  On the other hand, without

implementation of these procedures, the Debtors would likely be subject to numerous claims and

adversary proceedings, including motions by PACA claimants for relief from the automatic

stay/injunctive relief, which would result in the unnecessary expenditure of time, effort, and

money by the Debtors.  Moreover, the Debtors' survival depends, in large part, on their ability to

procure deliveries of PACA goods and on their reputation as a reliable supermarket chain that

pays its vendors in a timely manner.  Any delays in satisfying PACA Claims could adversely

affect the Debtors' ability to obtain fresh fruits and vegetables, thereby affecting the Debtors'

ability to maintain sufficient levels of inventory and adversely affecting the Debtors' competitive

posture and reorganization prospects.

31.    In addition, some courts have held that officers and directors of a debtor may be

held secondarily liable for amounts owed to sellers under PACA.  See, e.g., Red's Market v.

Cape Canaveral Cruise Line, Inc., 181 F. Supp. 2d. 1339, 1344 (M.D. Fla. 2002); A & J Produce

Corp. v. CIT Group, 829 F. Supp. 651, 655-56 (S.D.N.Y. 1993).  Thus, to the extent the Debtors'

obligations under PACA are not promptly satisfied, the Debtors' officers and directors may be

subject to lawsuits during the pendency of these Chapter 11 cases.  Any such lawsuit (and

ensuing potential liability) would distract the efforts of the Debtors and their officers and

directors to implement a successful reorganization strategy, to the detriment of all parties in

interest in these Chapter 11 cases.  Accordingly, the relief requested is essential, appropriate, and

in the best interests of the Debtors, their estates and creditors.

32.    Finally, debtors have received authority to pay PACA Claims in other Chapter 11

cases.  See, e.g., In re Hale-Halsell Co., Case No. 04-11677 (Bankr. N.D. Okla. June 18, 2004);

In re Interstate Bakeries Corp., Case No. 04-45814 (Bankr. W.D. Mo. Nov. 12, 2004); In re The Penn Traffic Co., Case No. 03-22945 (Bankr. S.D.N.Y. May 30, 2003); In re UAL Corp., Case No. 02-48191 (Bankr. N.D. Ill. Dec. 11, 2002).  The Debtors submit that the circumstances described herein warrant similar relief.

### Notice

33.     Notice of this Motion has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as the agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

### Waiver of Memorandum of Law

34.     Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

(a)     authorizing the Debtors to pay undisputed pre-petition claims arising under PACA as set forth in the PACA Procedures;

(b)     establishing the PACA Procedures as the sole method to resolve any and all disputed PACA claims; and

(c)     granting the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
        New York, New York


                                    /s/      D. J. Baker
                                    D. J. Baker (DB 0085)
                                    Sally McDonald Henry (SH 0839)
                                    Rosalie Walker Gray
                                    SKADDEN, ARPS, SLATE, MEAGHER
                                      & FLOM LLP
                                    Four Times Square
                                    New York, New York 10036
                                    Telephone:  (212) 735-3000
                                    Facsimile:   (917) 777-2150

                                    -and-

                                    Sarah Robinson Borders
                                    Brian C. Walsh
                                    KING & SPALDING LLP
                                    191 Peachtree Street
                                    Atlanta, Georgia  30303
                                    Telephone:  (404) 572-4600
                                    Facsimile:  (404) 572-5100

                                    PROPOSED ATTORNEYS FOR THE DEBTORS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                                :
                                                     :          **Chapter 11**
                                                     :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**          :          **Case No. 05-11063**
                                                     :
                 **Debtors.**                        :          **(Jointly Administered)**
                                                     :
------------------------------------------------------------------x

### INTERIM ORDER GRANTING THE DEBTORS AUTHORITY
### TO PAY PRE-PETITION CLAIMS ARISING UNDER
### <u>THE PERISHABLE AGRICULTURAL COMMODITIES ACT</u>

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for an order for authority to pay

undisputed pre-petition claims arising under the Perishable Agricultural Commodities Act

("PACA") and to establish procedures for addressing disputed claims asserted under PACA; all

as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L.

Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-

Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157

and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District

Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and

1409; and due and proper notice of the Motion having been provided to (i) the Office of the

United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured

lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50)

largest unsecured creditors, and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis until such time as the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.; and it is further

ORDERED that any objection to the relief requested by the Motion on a final basis must be filed with the Court and be served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D. J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia  30303; and it is further

ORDERED that the terms of this Order, and any references to PACA contained herein, shall also apply to pre-petition claims asserted against the Debtors arising under the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181 *et seq*.; and it is further

ORDERED that the procedures described below (the "PACA Procedures") are hereby approved and may be implemented by the Debtors:

a.     <u>PACA Notices</u>.  Any seller seeking the protection of a PACA Trust must deliver or have previously delivered a valid and timely PACA Notice in accordance with PACA to the Debtors on or before the statutory deadline.

b.     <u>Notice of PACA Order</u>.  The Debtors shall send a copy of this Order by first-class mail to all persons or entities who have delivered a valid and timely PACA Notice (or a document that purports to be a valid and timely PACA Notice) to the Debtors.

c.     <u>Allowed PACA Claims</u>.  If the Debtors determine that a claim asserted in a PACA Notice (a "PACA Claim") is valid, the Debtors shall pay such claim as an administrative expense of the Debtors' estates as soon as practicable after receipt of the PACA  Notice (an "Allowed PACA Claim").  Any holder of an Allowed PACA Claim that accepts payment from the Debtors on account of its PACA Claim shall be deemed to have waived, released, and discharged any and all claims, of any type, kind, or priority on account of or in connection with its PACA Claim against the (i) Debtors, (ii) any former, present, or future officer, director, or employee of the Debtors, (iii) the Debtors' assets and properties, and (iv) any funds or amounts held in trust by the Debtors.

d.     <u>Disputed Claim Report</u>.  As soon as practicable after the period ending ninety (90) days after entry of the PACA Order, the Debtors will file a report ("Report") with the Court that lists the PACA Claims the Debtors believe are invalid in whole or in part.

   1.    The Report shall be sent by first-class mail to the following parties: (i) the Office of the United States

Trustee for the Southern District of New York, (ii) counsel for the agent for the Debtors' secured lenders, and (iii) counsel for any statutory committee appointed in the Debtors' Chapter 11 cases.

2. In addition, a copy of the Report and a copy of the PACA Order shall be sent, by first-class mail, to all parties filing a PACA Claim that is the subject of the Report.

e.   <u>Objections</u>.  The deadline for a claimant to object to the inclusion of a PACA Claim in the Report shall be 4:00 p.m. prevailing Eastern Time on the day that is twenty (20) calendar days from the day on which the Report is filed with the Court and served as set forth herein. Any objection must be filed with the Court and received by Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for the Debtors, Four Times Square, New York, New York, 10036, Attn:  Sally McDonald Henry, Esq., on or before the objection deadline.

f.   <u>Effect of the Report</u>.

1. With respect to each PACA Claim in the Report as to which no objection is timely received, such PACA Claim shall be deemed an invalid PACA Claim (in whole or in part, as specified in the Report) without further order of the Court and, to the extent invalid, shall not be entitled to the priorities provided under PACA.

2. With respect to each PACA Claim in the Report as to which an objection is timely received and the parties resolve the objection, the PACA Claim shall be treated as an Allowed PACA Claim or a disallowed PACA Claim, in whole or part, as agreed to by the parties, without further order of the Court, upon the filing by the Debtors of a notice setting forth the agreement of the parties.

-4-

3. With respect to each PACA Claim in the Report as to which an objection is timely received and the objection cannot be resolved by the parties, the PACA Claim shall not be deemed valid or invalid except upon order of the Court.  If a resolution is not reached by at least sixty (60) days after the date of the Report, or such later period as may be agreed to by the claimant, the Debtors will arrange for a hearing before the Court.

and it is further

ORDERED that the PACA Procedures are the sole and exclusive method permitted with respect to the resolution and payment of PACA Claims asserted against the Debtors.  All vendors with PACA Claims are prohibited from seeking any other treatment than is permitted by the Procedures above, including instituting an adversary proceeding against the Debtors for or on account of their PACA Claims; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any PACA Claimant or any third party; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest

unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of

appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the

Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated:  February ___, 2005
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                                    :
                                                         :          Chapter 11
                                                         :
WINN-DIXIE STORES, INC., et al.,                         :          Case No. 05-11063
                                                         :
                    Debtors.                             :          (Jointly Administered)
                                                         :
-----------------------------------------------------------------x

## FINAL ORDER GRANTING THE DEBTORS AUTHORITY
## TO PAY PRE-PETITION CLAIMS ARISING UNDER
## THE PERISHABLE AGRICULTURAL COMMODITIES ACT

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for an order for authority to pay

undisputed pre-petition claims arising under the Perishable Agricultural Commodities Act

("PACA") and to establish procedures for addressing disputed claims asserted under PACA; all

as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L.

Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-

Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157

and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District

Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and

1409; and due and proper notice of the Motion having been provided to (i) the Office of the

United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured

lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50)

largest unsecured creditors, and no other or further notice being required; and the relief requested

in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court

having reviewed the Motion; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor, it is

      ORDERED that the Motion is granted in its entirety; and it is further

      ORDERED that the terms of this Order, and any references to PACA contained

herein, shall also apply to pre-petition claims asserted against the Debtors arising under the

Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181 *et seq*.; and it is further

      ORDERED that the procedures described below (the "PACA Procedures") are

hereby approved and may be implemented by the Debtors:

    a.    <u>PACA Notices</u>.  Any seller seeking the protection of a PACA Trust must

deliver or have previously delivered a valid and timely PACA Notice in

accordance with PACA to the Debtors on or before the statutory deadline.

    b.    <u>Notice of PACA Order</u>.  The Debtors shall send a copy of this Order by

first-class mail to all persons or entities who have delivered a valid and

timely PACA Notice (or a document that purports to be a valid and timely

PACA Notice) to the Debtors.

    c.    <u>Allowed PACA Claims</u>.  If the Debtors determine that a claim asserted in

a PACA Notice (a "PACA Claim") is valid, the Debtors shall pay such

claim as an administrative expense of the Debtors' estates as soon as

practicable after receipt of the PACA  Notice (an "Allowed PACA

Claim").  Any holder of an Allowed PACA Claim that accepts payment

from the Debtors on account of its PACA Claim shall be deemed to have

waived, released, and discharged any and all claims, of any type, kind, or

priority on account of or in connection with its PACA Claim against the

(i) Debtors, (ii) any former, present, or future officer, director, or

employee of the Debtors, (iii) the Debtors' assets and properties, and (iv)

any funds or amounts held in trust by the Debtors.

d.    Disputed Claim Report.  As soon as practicable after the period ending

ninety (90) days after entry of the PACA Order, the Debtors will file a

report ("Report") with the Court that lists the PACA Claims the Debtors

believe are invalid in whole or in part.

1.  The Report shall be sent by first-class mail to the
following parties: (i) the Office of the United States
Trustee for the Southern District of New York,
(ii) counsel for the agent for the Debtors' secured
lenders, and (iii) counsel for any statutory
committee appointed in the Debtors' Chapter 11
cases.

2.  In addition, a copy of the Report and a copy of the
PACA Order shall be sent, by first-class mail, to all
parties filing a PACA Claim that is the subject of
the Report.

e.    Objections.  The deadline for a claimant to object to the inclusion of a

PACA Claim in the Report shall be 4:00 p.m. prevailing Eastern Time on

the day that is twenty (20) calendar days from the day on which the Report

is filed with the Court and served as set forth herein. Any objection must

be filed with the Court and received by Skadden, Arps, Slate, Meagher &

Flom LLP, attorneys for the Debtors, Four Times Square, New York, New

York, 10036, Attn: Sally McDonald Henry, Esq., on or before the objection deadline.

  f. <u>Effect of the Report</u>.

    1. With respect to each PACA Claim in the Report as to which no objection is timely received, such PACA Claim shall be deemed an invalid PACA Claim (in whole or in part, as specified in the Report) without further order of the Court and, to the extent invalid, shall not be entitled to the priorities provided under PACA.

    2. With respect to each PACA Claim in the Report as to which an objection is timely received and the parties resolve the objection, the PACA Claim shall be treated as an Allowed PACA Claim or a disallowed PACA Claim, in whole or part, as agreed to by the parties, without further order of the Court, upon the filing by the Debtors of a notice setting forth the agreement of the parties.

    3. With respect to each PACA Claim in the Report as to which an objection is timely received and the objection cannot be resolved by the parties, the PACA Claim shall not be deemed valid or invalid except upon order of the Court. If a resolution is not reached by at least sixty (60) days after the date of the Report, or such later period as may be agreed to by the claimant, the Debtors will arrange for a hearing before the Court.

and it is further

    ORDERED that the PACA Procedures are the sole and exclusive method permitted with respect to the resolution and payment of PACA Claims asserted against the Debtors. All vendors with PACA Claims are prohibited from seeking any other treatment than is permitted by the Procedures above, including instituting an adversary proceeding against the Debtors for or on account of their PACA Claims; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any PACA Claimant or any third party; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____ ____, 2005
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE