SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., <u>et al.</u>,** | : | **Case No. 05-11063** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

## MOTION FOR ORDER (A) AUTHORIZING RETURN OF GOODS PURSUANT TO 11 U.S.C. § 546(g), (B) ESTABLISHING PROCEDURES FOR TREATMENT OF RECLAMATION CLAIMS, AND (C) PROHIBITING THIRD PARTIES FROM INTERFERING WITH DELIVERY OF GOODS

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**Background**

**A.      Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.      Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.      Capital Structure.**

8.      The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.      The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.      The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of approximately $427 million.  The

Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant

to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.     Certain of the Debtors are parties to an Indenture with Wilmington Trust

Company dated December 26, 2000 (as amended and supplemented, the "Indenture").  Pursuant

to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of

Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the

Senior Notes.  The Senior Notes mature in 2008 and require semi-annual interest-only payments

until maturity.  The Senior Notes are unsecured obligations that are *pari passu* with most of the

Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease

obligations (including possible rejection damages), employee obligations, and litigation claims.

12.     Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock

has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN.  All

of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.      Events Leading to the Debtors' Chapter 11 Cases.**

13.     In January 2004, the Debtors announced a series of actions designed to improve

their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of

business strategies and marketing programs, (b) an expense reduction plan designed to achieve a

$100 million annual expense reduction, (c) a market positioning review through which markets

will be identified as either core, and positioned for future investment and growth, or non-core,

and evaluated for sale or closure, (d) an image makeover program targeting approximately 700

stores for facilities improvement, and (e) a process re-engineering initiative that is intended to

enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.      Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million.  As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.    As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

## Relief Requested

20.    By this Motion, the Debtors seek entry of an order, pursuant to Sections 105(a), 362, 503(b), 546(c), and 546(g)[2] of the Bankruptcy Code, (a) authorizing the Debtors to return goods purchased from vendors prior to the commencement of these cases, as more fully set forth herein, (b) providing administrative claim status for valid reclamation claims and establishing procedures for the resolution and payment of valid reclamation claims, and (c) confirming that third parties are stayed or prohibited from interfering with the delivery of goods to the Debtors. The Debtors submit that the relief requested herein will allow the Debtors to better manage their

---

[2]    Due to a drafting error, this subsection was designated as subsection (g) even though Section 546 of the Bankruptcy Code already had a subsection (g); thus, until Congress makes a technical correction to re-designate the new subsection as subsection (h), there are two subsections designated as subsection (g).

inventory of goods, facilitate the resolution of reclamation claims and minimize associated litigation and costs, and ensure the continuous flow of goods to the Debtors.

**<u>Return of Goods</u>**

21.     In the ordinary course of the Debtors' businesses, the Debtors purchase materials, supplies, goods, products, and other related items (collectively, the "Goods") from various suppliers and vendors (the "Vendors") for use and sale in their stores.  The Debtors seek authorization to return certain Goods to the Vendors for credit against such Vendors' pre-petition claims against the Debtors in accordance with Section 546(g).

22.     Section 546(g) of the Bankruptcy Code authorizes a debtor, with the consent of a creditor, to return goods shipped pre-petition to the debtor, for credit against the creditor's pre-petition claim, provided that the Court determines (on a motion made no later than 120 days after the order for relief and after notice and hearing) that such return is in the best interests of the debtor's estate.

23.     The purpose of Section 546(g) is to "relieve the bankruptcy estate of the burden of keeping unwanted or unsalable goods, and relieve the estate of unnecessary liabilities."  138 Cong. Rec. S8265-66 (daily ed. June 16, 1992) (statement of Sen. Reid).  The consensual return of such goods to vendors thus "permit[s] more efficient reorganization of bankruptcy debtors."  Id. S8266.

24.     The Debtors submit that an order permitting such returns will enable the Debtors (a) to obtain proper credit for otherwise unusable goods, cost-effectively and without undue financial risk, and (b) to effectively manage their inventory in this critical stage of the Debtors' Chapter 11 cases.  In light of the foregoing, the Debtors submit that the relief requested is in the best interest of the Debtors' estates, their creditors, and all parties in interest.

**Reclamation Procedures**

25.     Prior to the date hereof, the Debtors received demands from several Vendors asserting a right of reclamation pursuant to Section 2-702(2) of the Uniform Commercial Code (the "UCC").  Moreover, as a result of the commencement of these cases, the Debtors expect to receive numerous reclamation claims pursuant to Section 546(c) of the Bankruptcy Code.  The Reclamation Claims (as hereinafter defined) request that the Debtors either return certain goods (collectively, the "Goods") purportedly delivered to the Debtors on or prior to the commencement of these cases or provide Vendors with an allowed administrative expense priority claim pursuant to section 503(b) of the Bankruptcy Code.

26.     It is of paramount importance for the Debtors to maintain normal business operations and avoid costly and distracting litigation relating to Reclamation Claims.  If the Debtors are unable to establish a global set of reclamation procedures to resolve the Reclamation Claims, they will be faced with the prospect of simultaneously defending multiple reclamation adversary proceedings at a time when the Debtors need to focus on critical aspects of the reorganization process.

27.     Although the Debtors have not completed their review of these demands, they believe that many of the Reclamation Claims may be valid, in whole or in part, subject to certain defenses the Debtors may have to such demands.  In addition, while the Debtors do not concede that any of the elements necessary to prove a right of reclamation have been shown by any of the Vendors, the Debtors seek to adopt a uniform procedure for determining and settling all valid Reclamation Claims so that litigation regarding Reclamation Claims does not interfere with the Debtors' reorganization efforts.

**Treatment of Reclamation Claims**

28.     The Debtors believe that many Vendors will attempt, pursuant to Section 546(c) of the Bankruptcy Code, to assert their right to reclaim Goods delivered to the Debtors shortly before or soon after the Petition Date.  Indeed, certain Vendors have already sent pre-petition notices of reclamation, and these Vendors may attempt to reclaim their Goods and otherwise interfere with the sale of Goods delivered to the Debtors within any applicable reclamation period.  As a result, the Debtors' business operations may suffer and management's attention will be diverted from important operational issues in order to deal with the reclamation claimants.

29.     Pursuant to Section 546(c)(2), this Court may, however, deny reclamation to a Vendor if the Court grants the Vendor's claim (to the extent that the Vendor proves the validity and amount of its alleged reclamation claim) an administrative expense priority pursuant to Section 503(b).  By this Motion, the Debtors thus request that the Court grant administrative treatment to the claim of any Vendor (a) who timely demands in writing reclamation of Goods pursuant to Section 546(c)(1) of the Bankruptcy Code and Section 2-702 of the UCC, (b) whose Goods the Debtors have accepted for delivery, (c) who properly identifies the Goods to be reclaimed and thus proves the validity and amount of its reclamation claim, (d) whose Goods the Debtors do not agree to make available for pick-up by the Vendor, and (e) whose claim is otherwise valid under state or other applicable law (each, a "Reclamation Claim," and collectively the "Reclamation Claims").  If this Motion is approved by the Court, the amount of the administrative claim and the method of payment will be pursuant to procedures proposed herein.

30.     Moreover, the Debtors request that the Court authorize the Debtors to make available Goods for pick-up by any reclaiming seller (a) who timely demands in writing reclamation of Goods pursuant to section 546(c)(i) of the Bankruptcy Code and Section 2-702 of

the UCC, (b) whose Goods the Debtors have accepted for delivery, and (c) who properly identifies the Goods to be reclaimed, provided that the Debtors agree to a return of the Goods as opposed to granting to the Vendor an administrative claim or other form of consideration as permitted under the Bankruptcy Code. Such relief will facilitate uninterrupted operation of the Debtors' business.

### Proposed Reclamation Procedures

31.    By this Motion, the Debtors also seek authorization to implement following procedures (the "Reclamation Procedures") for reconciling Reclamation Claims (as reconciled and/or approved by the Court, the "Allowed Reclamation Claims"):

#### (a)  *Reclamation Demands*

(i)    All Vendors seeking to reclaim Goods from the Debtors will be required to submit a demand (a "Reclamation Demand"):

(1)    before 10 days after receipt of such Goods by the Debtors; or

(2)    if such 10-day period expires after the Petition Date, before 20 days after receipt of such Goods by the Debtors.

(ii)    Such a Reclamation Demand must set forth in specificity the goods for which reclamation is sought and the basis for the Reclamation Claim.

(iii)    Any Vendor who fails to timely submit a Reclamation Demand pursuant to Section 546 of the Bankruptcy Code shall be deemed to have waived its right to payment on any purported Reclamation Claim.

#### (b)  *The Statement of Reclamation*

(i)    Within one hundred twenty (120) days after the Petition Date, the Debtors will provide the Vendor with a copy of the order entered pursuant to this Motion (the "Reclamation Order") and a statement of reclamation (the "Statement of Reclamation" or the "Statement").

(ii)    The Statement of Reclamation will set forth the extent and basis, if any, upon which the Debtors believe the underlying Reclamation Claim is not legally valid and/or the amount that will be considered valid (the "Reconciled

Reclamation Claim"). In addition, the Statement of Reclamation shall identify any defenses that the Debtors choose to reserve, not withstanding any payment of the Reconciled Reclamation Claim (the "Reserved Defenses").

    (iii)  Vendors who are in agreement with the Reconciled Reclamation Claim as contained in the Statement of Reclamation may indicate such assent on the Statement of Reclamation and return the Statement within sixty (60) days after the date of the Statement of Reclamation (the "Reconciliation Deadline") to the Debtors' representative as set forth in such statement with copies to Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for the Debtors, Four Times Square, New York, New York, 10036, Attn: Sally McDonald Henry, Esq.

    (iv)  Vendors who are in disagreement with the Reconciled Reclamation Claim as contained in the Statement of Reclamation (the "Dissenting Vendors") must indicate such dissent on the Statement of Reclamation and return the Statement by the Reconciliation Deadline to the entities and at the addresses identified in subparagraph (iii) of these Procedures, above. A Statement of Reclamation returned under this subparagraph must be accompanied by:

    (1)  a copy of the Reclamation Demand together with any evidence of the date such Reclamation Demand was sent and received;

    (2)  the identity of the Debtor that ordered the products and the identity of the Vendor from whom the Goods were ordered;

    (3)  any evidence demonstrating when the Goods were shipped and received;

    (4)  copies of the respective Debtor's and Vendor's purchase orders and invoices, together with a description of the Goods shipped; and

    (5)  a statement identifying which information on the Debtors' Statement of Reclamation is incorrect, specifying the correct information and stating any legal basis for the objection.

    (v)  The failure of a Dissenting Vendor to materially comply with subparagraph (iv) above shall constitute a waiver of such Dissenting Vendor's right to object to the proposed treatment and allowed amount of such Reclamation Claim, as set forth in the Statement of Reclamation, unless the Court orders otherwise.

    (vi)  Any Vendor who fails to return the Statement of Reclamation by the Reconciliation Deadline or who returns the Statement of

Reclamation by the Reconciliation Deadline but fails to indicate assent or dissent will be deemed to have assented to the Reconciled Reclamation Claim.

### (c)   Fixing the Reclamation Claim

(i)   The Reclamation Claim of (1) any Vendor who returns the Statement of Reclamation by the Reconciliation Deadline and indicates its assent to the Reconciled Reclamation Claim as contained in the Statement of Reclamation, (2) any Vendor who fails to return the Statement of Reclamation by the Reconciliation Deadline, and (3) any Vendor who returns the Statement of Reclamation by the Reconciliation Deadline but who fails to indicate either assent or dissent, will be deemed an Allowed Reclamation Claim in the amount of the Reconciled Reclamation Claim.

(ii)   The Debtors are authorized to negotiate with all Dissenting Vendors and to adjust the Reconciled Reclamation Claim either upward or downward to reach an agreement regarding the Dissenting Vendor's Reclamation Claim.  The Debtors are also authorized to include any Reserved Defenses as part of any such agreement.  In the event the Debtors and a Dissenting Vendor are able to settle on the amount and/or treatment of the Dissenting Vendor's Reclamation Claim, the Reclamation Claim will be deemed an Allowed Reclamation Claim in the settled amount.

(iii)   In the event that no consensual resolution of the Dissenting Vendor's Reclamation Demand is reached within sixty (60) days of the Reconciliation Deadline (or such later date as the parties agree), the Debtors shall file a motion for determination of the Dissenting Vendor's Reclamation Claim and set such motion for hearing at the next regularly scheduled omnibus hearing occurring more than twenty (20) days after the filing of the motion for determination, unless another hearing date is agreed to by the parties or ordered by the Court (the "Determination Hearing").  The Dissenting Vendor's Reclamation Claim, if any, shall be deemed an Allowed Reclamation Claim as fixed by the Court in the Determination Hearing or as agreed to by the Debtors and the Dissenting Vendor prior to a determination by the Court in the Determination Hearing.

### (d)   Treatment of Allowed Reclamation Claims

(i)   The Debtors may at any point in these Reclamation Procedures satisfy in full any Reclamation Claim or Allowed Reclamation Claim by making the Goods at issue available for pick-up by the Vendor or Dissenting Vendor.

(ii)   All Allowed Reclamation Claims for which the Debtors choose not to make the Goods available for pick-up will be paid in full as an administrative expense pursuant to a confirmed plan of reorganization, or earlier,

in whole or in part, to the extent that a reclamation payment plan is proposed and approved by the Court.

32.     The Debtors request that they be permitted to reconcile and pay Allowed Reclamation Claims pursuant to the Reclamation Procedures without need for further order of this Court.  In the event that an Allowed, in whole or in part, Reclamation Claim is paid earlier than the effective date of a confirmed plan of reorganization, any such payments shall be subject to any Reserved Defenses.  Reserved Defenses shall be deemed waived by the Debtors on the earlier of such effective date or the date which is one year following the last payment of an Allowed Reclamation Claim.  Such date may be extended by agreement of the parties or by the Court upon request of the Debtors.

33.     The Debtors further propose that satisfaction of an Allowed Reclamation Claim pursuant to the Reclamation Procedures shall constitute a waiver, release, discharge, and satisfaction of any and all rights and claims that the holder of the Allowed Reclamation Claim has ever had, or hereafter, can, shall or may have, against the Debtors, any former, present, or future officer, director, or employee of the Debtors, and the Debtors' assets and properties, arising from, or in connection with, the Goods constituting the basis for the Allowed Reclamation Claim, and of any other reclamation rights for the same goods that the holder of the Allowed Reclamation Claim has asserted against the Debtors.  The Debtors further request that the holder of an Allowed Reclamation Claim, by accepting payment in accordance with the Reclamation Procedures, be deemed to warrant that it has not assigned any of its rights to its Reclamation Claim.

34.     The Debtors respectfully request that by the payment and acceptance under the Reclamation Procedures set forth herein, the Debtors and the holder of the Allowed Reclamation Claim be deemed to agree that the Debtors do not in any way waive any claims they may have

against any Vendor relating to preferential or fraudulent transfers, or other potential claims, counterclaims or offsets with respect to said Vendors, or any defense to the value of a Reclamation Claim based upon the existence of a prior perfected lien on the Goods.  Rather, the Debtors expressly reserve their rights to pursue such claims, and any and all other claims they may seek to advance against any Vendor in the future other than those arising specifically in connection with the Allowed Reclamation Claim.  The Debtors specifically reserve the right to object on any grounds to any claim filed by the Vendors.

35.    Nothing contained herein will be deemed an admission as to the solvency or insolvency of the Debtors as of the Petition Date or any other date.

36.    The Debtors respectfully request that the Court establish the Reclamation Procedures as the sole and exclusive method permitted with respect to the resolution and payment of Reclamation Claims asserted against the Debtors.  The Debtors further request that (a) all Vendors be prohibited from seeking any other treatment for their Reclamation Claims than is permitted by the Reclamation Procedures, and (b) all parties be prohibited from commencing adversary proceedings against the Debtors in respect of Reclamation Claims.

37.    The Debtors submit that implementing the Reclamation Procedures is a sound exercise of their business judgment and is necessary and appropriate to carry out the provisions of Section 546(c).  The Debtors believe that their ability to reconcile the Reclamation Claims in this uniform manner will assist in the consensual resolution of such demands and, ultimately, the maximization of value for the Debtors' estates and creditors.  The Debtors would avoid unnecessary litigation costs which would arise in connection with non-consensual resolutions of the Reclamation Claims.  If the Reclamation Procedures are not approved and implemented, it can be expected that creditors will file adversary proceedings against the Debtors, thus increasing

the Debtors' costs to defend piecemeal litigation.  The Reclamation Procedures will thus effectively and efficiently streamline the process of resolving these claims for the Debtors and the holders of the Reclamation Claims.  It is therefore in the best interests of the Debtors and their respective estates and creditors to implement the Reclamation Procedures.

## Confirming Stay of Third Parties

38.     Section 362 of the Bankruptcy Code prohibits third parties from taking actions to, among other things, obtain or exercise control over property of the estate, and Section 105 of the Bankruptcy Code permits this Court to enter any order necessary or appropriate to carry out the provisions of the Bankruptcy Code.  Thus, the Debtors request that the Court confirm that a Vendor or any other third party is prohibited from seeking to reclaim Goods that have already been delivered, or interfering with the delivery of Goods presently in transit to the Debtors, absent relief from this Court.  Such relief is both necessary and appropriate under the circumstances and will facilitate uninterrupted operation of the Debtors' business.

## Basis for Relief

39.     Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Debtors submit the relief requested herein is appropriate and well within the Court's equitable powers under Section 105(a) of the Bankruptcy Code.

40.     Absent the relief requested in this Motion, the Debtors would be required to expend substantial time and resources to obtain authorization, on a case-by-case basis, to return unneeded or unwanted Goods or suffer the economic consequences of retaining such Goods. The attendant disruption to the continuous flow of Goods to the Debtors would likely result in deterioration of the Debtors' business.

41.     In addition, absent implementation of the Reclamation Procedures, the Debtors would likely be subject to numerous claims and adversary proceedings, each of which would result in the unnecessary expenditure of time, effort, and money by the Debtors.  Most importantly, this litigation would be detrimental to the Debtors' business relationships and, therefore, to their successful reorganization.

42.     The Debtors submit that implementation of the Reclamation Procedures is a sound exercise of their business judgment and is necessary and appropriate to carry out the provisions of Section 546(c).  The Debtors believe that their ability to reconcile the Reclamation Claims in this uniform manner will assist in the consensual resolution of such demands and, ultimately, the maximization of value for the Debtors' estates and creditors.

43.     Accordingly, the relief requested should be granted because it is necessary for a successful reorganization and is in the best interests of creditors and the estates.  See In re Griffin Retreading Co., 795 F.2d 676, 679-80 (8th Cir. 1986) (affirming grant of administrative claims because such claims provide flexibility to the bankrupt estate by permitting use of property necessary for a successful reorganization); In re Braniff, Inc., 113 B.R. 745, 757 (Bankr. M.D. Fla. 1990) (administrative expense remedy appropriate due to ease of administration, likelihood that all administrative expenses would be paid, and scarcity of unencumbered assets).

44.     Finally, similar relief has been granted in this and other courts.  See, e.g., In re Fleming Companies, Inc., Case No. 03-10945 (Bankr. D. Del. April 22, 2003); In re Eagle Food Centers, Inc., Case No. 03-15299 (Bankr. N.D. Ill. April 7, 2003); In re Genuity Inc., Case No. 02-43558 (Bankr. S.D.N.Y. Dec. 2, 2002); In re Kmart Corp., Case No. 02-02474 (Bankr. N.D. Ill. Jan. 25, 2002); In re Dairy Mart Convenience Stores, Inc., Case No. 01-42400 (Bankr. S.D.N.Y Oct. 23, 2001); In re Owens Corning, Case No. 00-03837 (Bankr. D. Del. Oct. 6, 2000);

<u>In re Stone & Webster, Incorporated</u>, Case No. 00-02142 (D. Del. June 5, 2000).   The Debtors submit that the circumstances described herein warrant similar relief.

45.      In light of the foregoing, the Debtors believe that the relief requested in this Motion is appropriate and is in the best interests of the Debtors, their estates, and their creditors.

### **Notice**

46.      Notice of this Motion has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested herein, the Debtors submit that no further notice is necessary.

### **Waiver of Memorandum of Law**

47.      Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that the Court enter an order:

(a)      authorizing the Debtors to return Goods to Vendors, in their sole discretion, in accordance with Section 546(g) of the Bankruptcy Code;

(b)      providing administrative claim status for valid reclamation claims and approving the Reclamation Procedures;

(c)      prohibiting third parties from interfering with the delivery of Goods to the Debtors; and

(d)      granting the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
        New York, New York


                                    /s/      D. J. Baker
                                    D. J. Baker (DB 0085)
                                    Sally McDonald Henry (SH 0839)
                                    Rosalie Walker Gray
                                    SKADDEN, ARPS, SLATE, MEAGHER
                                      & FLOM LLP
                                    Four Times Square
                                    New York, New York 10036
                                    Telephone:  (212) 735-3000
                                    Facsimile:   (917) 777-2150

                                    -and-

                                    Sarah Robinson Borders
                                    Brian C. Walsh
                                    KING & SPALDING LLP
                                    191 Peachtree Street
                                    Atlanta, Georgia  30303
                                    Telephone:  (404) 572-4600
                                    Facsimile:  (404) 572-5100

                                    PROPOSED ATTORNEYS FOR THE DEBTORS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                              :
                                                   :        **Chapter 11**
                                                   :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**        :        **Case No. 05-11063**
                                                   :
         Debtors.                                  :        **(Jointly Administered)**
                                                   :
-------------------------------------------------------------x

**ORDER (A) AUTHORIZING, ON AN INTERIM BASIS, RETURN
OF GOODS PURSUANT TO 11 U.S.C. § 546(g), (B) ESTABLISHING,
ON AN INTERIM BASIS, PROCEDURES FOR TREATMENT
OF RECLAMATION CLAIMS, AND (C) PROHIBITING
<u>THIRD PARTIES FROM INTERFERING WITH DELIVERY OF GOODS</u>**

     Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for entry of an order authorizing the

Debtors to return goods to vendors, providing administrative claim status for valid reclamation

claims and establishing procedures for the treatment of reclamation claims, and prohibiting third

parties from interfering with delivery of goods; all as more fully set forth in the Motion; and

upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy

Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on

the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of

Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of

New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for

Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the

Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or

further notice being required; and the relief requested in the Motion being in the best interests of

the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the

Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and upon all of the proceedings had before the Court; and

after due deliberation and sufficient cause appearing therefor, it is

      ORDERED that the Motion is granted, in part on a final basis and in part on an

interim basis until such time as the Court conducts a final hearing on this matter (the "Final

Hearing Date"); and it is further

      ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.;

and it is further

      ORDERED that any objection to the relief requested by the Motion on a final

basis with respect to the return of goods pursuant to Section 546(g) of the Bankruptcy Code, to

the treatment of valid reclamation claims as administrative expense claims, or to the Reclamation

Procedures (as defined below) must be filed with the Court and be served upon (i) the Office of

the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor,

New York, New York  10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four

Times Square, New York, New York 10036; (iii) Sarah Robinson Borders, King & Spalding

LLP, 191 Peachtree Street, Atlanta, Georgia  30303; and it is further

      ORDERED on an interim basis that the Debtors are authorized under Section

546(g) of the Bankruptcy Code to return to their vendors (collectively, the "Vendors") any goods

("Goods") that were delivered pre-petition for an offset of the purchase price of such Goods

against the Vendors' pre-petition claim; provided, however, that the Debtors are not required to provide notice or seek further Court authorization to return such Goods; and it is further

ORDERED on an interim basis that claims of Vendors of Goods received, accepted and not returned to the Vendor by the Debtors shall be entitled to administrative expense treatment if and to the extent such claims are the claims of Vendors (a) who timely demand in writing reclamation of Goods pursuant to Section 546(c)(1) of the Bankruptcy Code and Section 2-702 of the UCC, (b) whose Goods the Debtors have accepted for delivery, (c) who properly identifies the Goods to be reclaimed and thus proves the validity and amount of its reclamation claim, (d) whose Goods the Debtors do not agree to make available for pick-up by the Vendor, and (e) whose claims are otherwise valid under state or other applicable law (each, a "Reclamation Claim," and collectively, the "Reclamation Claims"), the amount and method of payment of such administrative expense claims to be determined pursuant to the procedures set forth hereinbelow; and it is further

ORDERED on an interim basis that if a Vendor of Goods has asserted a timely and proper reclamation demand with respect to Goods received and accepted by the Debtors, and not offered by the Debtors for pick-up by the Vendor, then the Debtors are deemed to have waived the following defenses to such Vendor's Reclamation Claim:  (a) the failure of the Vendor to take any or all possible "self-help" measures with respect to such Goods; and (b) the failure of the Vendor to institute an adversary proceeding against the Debtors seeking to enjoin them from using or selling such Goods or any other similar relief; and it is further

ORDERED on an interim basis that the Debtors are authorized to implement the following procedures (the "Reclamation Procedures"), without need of further order of the Court, to resolve the Reclamation Claims asserted in these cases:

- 3 -

*(a)   Reclamation Demands*

(i)   All Vendors seeking to reclaim Goods from the Debtors shall be required to submit a demand (a "Reclamation Demand"):

(1)   before 10 days after receipt of such Goods by the Debtors; or

(2)   if such 10-day period expires after the Petition Date, before 20 days after receipt of such Goods by the Debtors.

(ii)   Such a Reclamation Demand must set forth in specificity the goods for which reclamation is sought and the basis for the Reclamation Claim.

(iii)   Any Vendor who fails to timely submit a Reclamation Demand pursuant to section 546 of the Bankruptcy Code shall be deemed to have waived its right to payment on any purported Reclamation Claim.

*(b)   **The Statement of Reclamation***

(i)   Within one hundred twenty (120) days after the Petition Date, or such later date as may be established by the Court upon motion of the Debtors, the Debtors shall provide the Vendor with a copy of this Order (the "Reclamation Order") and a statement of reclamation (the "Statement of Reclamation" or the "Statement").

(ii)   The Statement of Reclamation shall set forth the extent and basis, if any, upon which the Debtors believe the underlying Reclamation Claim is not legally valid and/or the amount that shall be considered valid (the "Reconciled Reclamation Claim").  In addition, the Statement of Reclamation shall identify any defenses that the Debtors choose to reserve, notwithstanding any payment of the Reconciled Reclamation Claim (the "Reserved Defenses").

(iii)   Vendors who are in agreement with the Reconciled Reclamation Claim as contained in the Statement of Reclamation may indicate such assent on the Statement of Reclamation and return the Statement within sixty (60) days after the date of the Statement of Reclamation (the "Reconciliation Deadline") to the Debtors' representative as set forth in such statement, with copies to Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for the Debtors, Four Times Square, New York, New York, 10036, Attn:  Sally McDonald Henry, Esq.

(iv)   Vendors who are in disagreement with the Reconciled Reclamation Claim as contained in the Statement of Reclamation (the "Dissenting Vendors") must indicate such dissent on the Statement of Reclamation and return

the Statement by the Reconciliation Deadline to the entities and at the addresses identified in subparagraph (iii) of these Procedures, above.  A Statement of Reclamation returned under this subparagraph must be accompanied by:

(1)    a copy of the Reclamation Demand, together with any evidence of the date such Reclamation Demand was sent and received;

(2)    the identity of the Debtor that ordered the products and the identity of the Vendor from whom the Goods were ordered;

(3)    any evidence demonstrating when the Goods were shipped and received;

(4)    copies of the respective Debtor's and Vendor's purchase orders and invoices, together with a description of the Goods shipped; and

(5)    a statement identifying which information on the Debtors' Statement of Reclamation is incorrect, specifying the correct information and stating any legal basis for the objection.

(v)    The failure of a Dissenting Vendor to materially comply with subparagraph (iv) above shall constitute a waiver of such Dissenting Vendor's right to object to the proposed treatment and allowed amount of such Reclamation Claim, as set forth in the Statement of Reclamation, unless the Court orders otherwise.

(vi)    Any Vendor who fails to return the Statement of Reclamation by the Reconciliation Deadline or who returns the Statement of Reclamation by the Reconciliation Deadline but fails to indicate assent or dissent shall be deemed to have assented to the Reconciled Reclamation Claim.

*(c)    Fixing the Reclamation Claim*

(i)    The Reclamation Claim of (1) any Vendor who returns the Statement of Reclamation by the Reconciliation Deadline and indicates its assent to the Reconciled Reclamation Claim as contained in the Statement of Reclamation, (2) any Vendor who fails to return the Statement of Reclamation by the Reconciliation Deadline, and (3) any Vendor who returns the Statement of Reclamation by the Reconciliation Deadline but who fails to indicate either assent or dissent, shall be deemed an Allowed Reclamation Claim in the amount of the Reconciled Reclamation Claim.

(ii)    The Debtors are authorized to negotiate with all Dissenting Vendors and to adjust the Reconciled Reclamation Claim either upward or downward to reach an agreement regarding the Dissenting Vendor's Reclamation

Claim.  The Debtors are also authorized to include any Reserved Defenses as part of any such agreement.  In the event the Debtors and a Dissenting Vendor are able to settle on the amount and/or treatment of the Dissenting Vendor's Reclamation Claim, the Reclamation Claim shall be deemed an Allowed Reclamation Claim in the settled amount.

        (iii)   In the event that no consensual resolution of the Dissenting Vendor's Reclamation Demand is reached within sixty (60) days of the Reconciliation Deadline (or such later date as the parties agree), the Debtors shall file a motion for determination of the Dissenting Vendor's Reclamation Claim and set such motion for hearing at the next regularly scheduled omnibus hearing occurring more than twenty (20) days after the filing of the motion for determination, unless another hearing date is agreed to by the parties or ordered by the Court (the "Determination Hearing").  The Dissenting Vendor's Reclamation Claim, if any, shall be deemed an Allowed Reclamation Claim as fixed by the Court in the Determination Hearing or as agreed to by the Debtors and the Dissenting Vendor prior to a determination by the Court in the Determination Hearing.

### (d)   Treatment of Allowed Reclamation Claims

        (i)   The Debtors may at any point in these Reclamation Procedures satisfy in full any Reclamation Claim or Allowed Reclamation Claim by making the Goods at issue available for pick-up by the Vendor or Dissenting Vendor.

        (ii)   All Allowed Reclamation Claims for which the Debtors choose not to make the Goods available for pick-up shall be paid in full as an administrative expense pursuant to a confirmed plan of reorganization, or earlier, in whole or in part, to the extent that a reclamation payment plan is proposed and approved by the Court;

and it is further

        ORDERED on an interim basis that in the event an Allowed, in whole or in part, Reclamation Claim is paid earlier than the effective date of a confirmed plan of reorganization, any such payments shall be subject to any Reserved Defenses of the Debtors.  Reserved Defenses shall be deemed waived by the Debtors on the earlier of such effective date or the date which is one year following the last payment of an Allowed Reclamation Claim.  Such date may be extended by agreement of the parties or by this Court, or request of the Debtors; and it is further

ORDERED on an interim basis that satisfaction of an Allowed Reclamation Claim pursuant to the Reclamation Procedures shall constitute a waiver, release, discharge, and satisfaction of any and all rights and claims that the holder of the Allowed Reclamation Claim has ever had, or hereafter, can, shall or may have, against the Debtors, any former, present, or future officer, director, or employee of the Debtors, and the Debtors' assets and properties, arising from, or in connection with, the Goods constituting the basis for the Allowed Reclamation Claim, and of any other reclamation rights for the same goods that the holder of the Allowed Reclamation Claim has or may assert against the Debtors; and it is further

ORDERED on an interim basis that by the payment and acceptance under the Reclamation Procedures set forth herein, the Debtors and the holder of the Allowed Reclamation Claim shall be deemed to agree that the Debtors do not in any way waive any claims they may have against any Vendor relating to preferential or fraudulent transfers, or other potential claims, counterclaims, or offsets with respect to said Vendors, or any defense to the value of a Reclamation Claim based upon the existence of a prior perfected lien on the Goods.  The Debtors' rights to pursue such claims, and any and all other claims they may seek to advance against any Vendor in the future other than those arising specifically in connection with the Allowed Reclamation Claim, are hereby reserved, including the right to object on any grounds to any claim filed by the Vendors; and it is further

ORDERED on an interim basis that by accepting payment in accordance with the Reclamation Procedures, the holder of an Allowed Reclamation Claim shall be deemed to warrant that it has not assigned any of its rights to its Reclamation Claim; and it is further

ORDERED that nothing contained in the Motion or in this Order shall be deemed an admission as to the solvency or insolvency of the Debtors as of the Petition Date or any other date; and it is further

ORDERED on an interim basis that the Reclamation Procedures are the sole and exclusive method permitted with respect to the resolution and payment of Reclamation Claims asserted against the Debtors.  Vendors are prohibited from seeking any other treatment for their Reclamation Claims than is permitted by the Reclamation Procedures, and all parties are prohibited from commencing adversary proceedings against the Debtors in respect of Reclamation Claims; and it is further

ORDERED that the Debtors may object on any grounds to any claims filed by the Vendors; and it is further

ORDERED that, in accordance with Sections 105 and 362 of the Bankruptcy Code, Vendors and all other third parties are prohibited from reclaiming or interfering in any way with the post-petition shipment or delivery of Goods to the Debtors without first obtaining relief from this Order; and it is further

ORDERED that, except as provided herein, notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Vendor or any other third party; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated:  February ___, 2005
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                          :
                                               :        **Chapter 11**
                                               :
**WINN-DIXIE STORES, INC., et al.,**           :        **Case No. 05-11063**
                                               :
            **Debtors.**                       :        **(Jointly Administered)**
                                               :
-----------------------------------------------------------------x

**FINAL ORDER (A) AUTHORIZING RETURN OF GOODS
PURSUANT TO 11 U.S.C. § 546(g), (B) ESTABLISHING PROCEDURES FOR
TREATMENT OF RECLAMATION CLAIMS, AND (C) PROHIBITING THIRD
PARTIES FROM INTERFERING WITH DELIVERY OF GOODS**

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for entry of an order authorizing the

Debtors to return goods to vendors, providing administrative claim status for valid reclamation

claims and establishing procedures for the treatment of reclamation claims, and prohibiting third

parties from interfering with delivery of goods; all as more fully set forth in the Motion; and

upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy

Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on

the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of

Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of

New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for

Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the

Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that the Debtors are authorized under Section 546(g) of the Bankruptcy Code to return to their vendors (collectively, the "Vendors") any goods ("Goods") that were delivered pre-petition for an offset of the purchase price of such Goods against the Vendors' pre-petition claim; provided, however, that the Debtors are not required to provide notice or seek further Court authorization to return such Goods; and it is further

ORDERED that claims of Vendors of Goods received, accepted and not returned to the Vendor by the Debtors shall be entitled to administrative expense treatment if and to the extent such claims are the claims of Vendors (a) who timely demand in writing reclamation of Goods pursuant to Section 546(c)(1) of the Bankruptcy Code and Section 2-702 of the UCC, (b) whose Goods the Debtors have accepted for delivery, (c) who properly identifies the Goods to be reclaimed and thus proves the validity and amount of its reclamation claim, (d) whose Goods the Debtors do not agree to make available for pick-up by the Vendor, and (e) whose claims are otherwise valid under state or other applicable law (each, a "Reclamation Claim," and collectively, the "Reclamation Claims"), the amount and method of payment of such administrative expense claims to be determined pursuant to the procedures set forth hereinbelow; and it is further

ORDERED that if a Vendor of Goods has asserted a timely and proper reclamation demand with respect to Goods received and accepted by the Debtors, and not offered by the Debtors for pick-up by the Vendor, then the Debtors are deemed to have waived the following defenses to such Vendor's Reclamation Claim: (a) the failure of the Vendor to take any or all possible "self-help" measures with respect to such Goods; and (b) the failure of the Vendor to institute an adversary proceeding against the Debtors seeking to enjoin them from using or selling such Goods or any other similar relief; and it is further

ORDERED that the Debtors are authorized to implement the following procedures (the "Reclamation Procedures"), without need of further order of the Court, to resolve the Reclamation Claims asserted in these cases:

### (a) Reclamation Demands

(i) All Vendors seeking to reclaim Goods from the Debtors shall be required to submit a demand (a "Reclamation Demand"):

(1) before 10 days after receipt of such Goods by the Debtors; or

(2) if such 10-day period expires after the Petition Date, before 20 days after receipt of such Goods by the Debtors.

(ii) Such a Reclamation Demand must set forth in specificity the goods for which reclamation is sought and the basis for the Reclamation Claim.

(iii) Any Vendor who fails to timely submit a Reclamation Demand pursuant to section 546 of the Bankruptcy Code shall be deemed to have waived its right to payment on any purported Reclamation Claim.

### (b) The Statement of Reclamation

(i) Within one hundred twenty (120) days after the Petition Date, or such later date as may be established by the Court upon motion of the Debtors, the Debtors shall provide the Vendor with a copy of this Order (the "Reclamation Order") and a statement of reclamation (the "Statement of Reclamation" or the "Statement").

(ii)  The Statement of Reclamation shall set forth the extent and basis, if any, upon which the Debtors believe the underlying Reclamation Claim is not legally valid and/or the amount that shall be considered valid (the "Reconciled Reclamation Claim").  In addition, the Statement of Reclamation shall identify any defenses that the Debtors choose to reserve, notwithstanding any payment of the Reconciled Reclamation Claim (the "Reserved Defenses").

(iii)  Vendors who are in agreement with the Reconciled Reclamation Claim as contained in the Statement of Reclamation may indicate such assent on the Statement of Reclamation and return the Statement within sixty (60) days after the date of the Statement of Reclamation (the "Reconciliation Deadline") to the Debtors' representative as set forth in such statement, with copies to Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for the Debtors, Four Times Square, New York, New York, 10036, Attn:  Sally McDonald Henry, Esq.

(iv)  Vendors who are in disagreement with the Reconciled Reclamation Claim as contained in the Statement of Reclamation (the "Dissenting Vendors") must indicate such dissent on the Statement of Reclamation and return the Statement by the Reconciliation Deadline to the entities and at the addresses identified in subparagraph (iii) of these Procedures, above.  A Statement of Reclamation returned under this subparagraph must be accompanied by:

(1)  a copy of the Reclamation Demand, together with any evidence of the date such Reclamation Demand was sent and received;

(2)  the identity of the Debtor that ordered the products and the identity of the Vendor from whom the Goods were ordered;

(3)  any evidence demonstrating when the Goods were shipped and received;

(4)  copies of the respective Debtor's and Vendor's purchase orders and invoices, together with a description of the Goods shipped; and

(5)  a statement identifying which information on the Debtors' Statement of Reclamation is incorrect, specifying the correct information and stating any legal basis for the objection.

(v)  The failure of a Dissenting Vendor to materially comply with subparagraph (iv) above shall constitute a waiver of such Dissenting Vendor's right to object to the proposed treatment and allowed amount of such Reclamation Claim, as set forth in the Statement of Reclamation, unless the Court orders otherwise.

- 4 -

(vi)   Any Vendor who fails to return the Statement of Reclamation by the Reconciliation Deadline or who returns the Statement of Reclamation by the Reconciliation Deadline but fails to indicate assent or dissent shall be deemed to have assented to the Reconciled Reclamation Claim.

### (c)   Fixing the Reclamation Claim

(i)   The Reclamation Claim of (1) any Vendor who returns the Statement of Reclamation by the Reconciliation Deadline and indicates its assent to the Reconciled Reclamation Claim as contained in the Statement of Reclamation, (2) any Vendor who fails to return the Statement of Reclamation by the Reconciliation Deadline, and (3) any Vendor who returns the Statement of Reclamation by the Reconciliation Deadline but who fails to indicate either assent or dissent, shall be deemed an Allowed Reclamation Claim in the amount of the Reconciled Reclamation Claim.

(ii)   The Debtors are authorized to negotiate with all Dissenting Vendors and to adjust the Reconciled Reclamation Claim either upward or downward to reach an agreement regarding the Dissenting Vendor's Reclamation Claim.  The Debtors are also authorized to include any Reserved Defenses as part of any such agreement.  In the event the Debtors and a Dissenting Vendor are able to settle on the amount and/or treatment of the Dissenting Vendor's Reclamation Claim, the Reclamation Claim shall be deemed an Allowed Reclamation Claim in the settled amount.

(iii)   In the event that no consensual resolution of the Dissenting Vendor's Reclamation Demand is reached within sixty (60) days of the Reconciliation Deadline (or such later date as the parties agree), the Debtors shall file a motion for determination of the Dissenting Vendor's Reclamation Claim and set such motion for hearing at the next regularly scheduled omnibus hearing occurring more than twenty (20) days after the filing of the motion for determination, unless another hearing date is agreed to by the parties or ordered by the Court (the "Determination Hearing").  The Dissenting Vendor's Reclamation Claim, if any, shall be deemed an Allowed Reclamation Claim as fixed by the Court in the Determination Hearing or as agreed to by the Debtors and the Dissenting Vendor prior to a determination by the Court in the Determination Hearing.

### (d)   Treatment of Allowed Reclamation Claims

(i)   The Debtors may at any point in these Reclamation Procedures satisfy in full any Reclamation Claim or Allowed Reclamation Claim by making the Goods at issue available for pick-up by the Vendor or Dissenting Vendor.

(ii)    All Allowed Reclamation Claims for which the Debtors choose not to make the Goods available for pick-up shall be paid in full as an administrative expense pursuant to a confirmed plan of reorganization, or earlier, in whole or in part, to the extent that a reclamation payment plan is proposed and approved by the Court;

and it is further

ORDERED that in the event an Allowed, in whole or in part, Reclamation Claim

is paid earlier than the effective date of a confirmed plan of reorganization, any such payments

shall be subject to any Reserved Defenses of the Debtors.  Reserved Defenses shall be deemed

waived by the Debtors on the earlier of such effective date or the date which is one year

following the last payment of an Allowed Reclamation Claim.  Such date may be extended by

agreement of the parties or by this Court, or request of the Debtors; and it is further

ORDERED that satisfaction of an Allowed Reclamation Claim pursuant to the

Reclamation Procedures shall constitute a waiver, release, discharge, and satisfaction of any and

all rights and claims that the holder of the Allowed Reclamation Claim has ever had, or hereafter

can, shall or may have, against the Debtors, any former, present, or future officer, director, or

employee of the Debtors, and the Debtors' assets and properties, arising from, or in connection

with, the Goods constituting the basis for the Allowed Reclamation Claim, and of any other

reclamation rights for the same goods that the holder of the Allowed Reclamation Claim has or

may assert against the Debtors; and it is further

ORDERED that by the payment and acceptance under the Reclamation

Procedures set forth herein, the Debtors and the holder of the Allowed Reclamation Claim shall

be deemed to agree that the Debtors do not in any way waive any claims they may have against

any Vendor relating to preferential or fraudulent transfers, or other potential claims,

counterclaims, or offsets with respect to said Vendors, or any defense to the value of a

Reclamation Claim based upon the existence of a prior perfected lien on the Goods.  The

Debtors' rights to pursue such claims, and any and all other claims they may seek to advance against any Vendor in the future other than those arising specifically in connection with the Allowed Reclamation Claim, are hereby reserved, including the right to object on any grounds to any claim filed by the Vendors; and it is further

ORDERED that by accepting payment in accordance with the Reclamation Procedures, the holder of an Allowed Reclamation Claim shall be deemed to warrant that it has not assigned any of its rights to its Reclamation Claim; and it is further

ORDERED that nothing contained in the Motion or in this Order shall be deemed an admission as to the solvency or insolvency of the Debtors as of the Petition Date or any other date; and it is further

ORDERED that the Reclamation Procedures are the sole and exclusive method permitted with respect to the resolution and payment of Reclamation Claims asserted against the Debtors. Vendors are prohibited from seeking any other treatment for their Reclamation Claims than is permitted by the Reclamation Procedures, and all parties are prohibited from commencing adversary proceedings against the Debtors in respect of Reclamation Claims; and it is further

ORDERED that the Debtors may object on any grounds to any claims filed by the Vendors; and it is further

ORDERED that, in accordance with Sections 105 and 362 of the Bankruptcy Code, Vendors and all other third parties are prohibited from reclaiming or interfering in any way with the post-petition shipment or delivery of Goods to the Debtors without first obtaining relief from this Order; and it is further

ORDERED that, except as provided herein, notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in

favor of, or enhance the status of any claim held by, any Vendor or any other third party; and it is further

       ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

       ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

       ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

       ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____, 2005
     New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE