SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**In re**                                  :

                                       :         **Chapter 11**

                                         :

**WINN-DIXIE STORES, INC., <u>et al.</u>,**       :        **Case No. 05-11063**

                                         :

                 **Debtors.**               :        **(Jointly Administered)**

                                         :
-------------------------------------------------------------x

## MOTION FOR AUTHORITY TO PAY CERTAIN
## WORK-IN-PROGRESS CLAIMS OF ON-SITE PROVIDERS
## <u>AS NECESSARY TO AVOID DISRUPTION TO OPERATIONS</u>

     Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]       In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

## Background

**A.      Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.      Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.      Capital Structure.**

8.      The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.      The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.      The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of approximately $427 million. The Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.     Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture"). Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes. The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity. The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12.     Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN. All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.     Events Leading to the Debtors' Chapter 11 Cases.**

13.     In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan"). The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core, and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14.    As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.    Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.    In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.    On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.    The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms. Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million. As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.    As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

## Relief Requested

20.    By this Motion, the Debtors respectfully request the entry of an order, pursuant to Sections 105(a), 363(b), and, to the extent applicable, 506(b) of the Bankruptcy Code, authorizing them to pay the pre-petition claims of (a) repairmen, contractors, subcontractors, mechanics, materialmen, or other service providers involved in on-site projects that are in progress as of the commencement of these cases and (b) maintenance and other workers who perform routine store maintenance, cleaning, and similar roles (together, the "On-Site Providers") as necessary to avoid disruption to the Debtors' operations (the "Work-in-Progress Claims").

**The On-Site Providers**

21.     In the ordinary course of the Debtors' businesses, the Debtors employ numerous On-Site Providers to provide goods and services ("Goods" and "Services") to the Debtors in connection with (a) repairs, improvements, and upgrades to their stores and facilities (collectively, the "Improvements") and (b) ongoing store maintenance, cleaning, and similar functions (collectively, the "Routine Maintenance").  The Improvements and Routine Maintenance are critical to the uninterrupted operations of the Debtors' businesses, as well as the appearance of the Debtors' stores and facilities.  The foregoing are essential to the maintenance of the Debtors' public image, their ability to provide efficient services to customers, and to their ability to compete with other grocery operators, who in some cases have newer or better-maintained facilities.

22.     As to the Routine Maintenance, the Debtors employ various small On-Site Providers on an ongoing basis who perform such basic services as cleaning and polishing the floors, hauling trash from the stores, armored-car and other security services, price-checking and inventory-counting services, "reset" vendors responsible for adjusting store and shelving displays, pest-control services, and laundry and uniform services.  These services are undertaken at each of the stores on a regular basis.  While the amounts paid to each of these small On-Site Providers are relatively small, the importance of such services cannot be understated as they are necessary to each store's continued daily operations.

23.     Additionally, beginning in 2004, the Debtors have employed numerous On-Site Providers in connection with, among other Improvements, their image makeover program, which involves improving lighting; installing and relocating produce and floral bins and related equipment; painting store interiors and exteriors and product cases; and replacing outside signage

on their stores. On-Site Providers also play a role in the Debtors' efforts to improve their market image by undertaking Improvements such as adding full-service meat displays in the meat department; enhancing the décor in the stores' bakery and deli departments including the installation of new flooring and the installation of heated and refrigerated product displays and adding registers in these departments; installing or upgrading self-checkout services; providing new uniforms for store associates; realigning the merchandise schematic for each store; and incorporating additional enhancements throughout their stores.

24. In many cases, the Improvements are being carried out on an ongoing basis and, as of the date hereof, are incomplete. Additionally, certain of the On-Site Providers who perform Routine Maintenance may be owed small amounts as of the Petition Date on account of services performed. The Debtors believe that the On-Site Providers may refuse to provide the services or materials necessary to complete the Improvements or to return to continue the daily Routine Maintenance if certain of their Work-in-Progress Claims are not paid by the Debtors. In such situations, the Debtors submit that their authority to make such payments is essential to ensure the proper and timely completion of the Improvements and performance of the Routine Maintenance and avoid harm to the Debtors' estates.

25. In certain circumstances, the Debtors' failure to pay the Work-in-Progress Claims of the On-Site Providers may give rise to claims secured by various liens and interests, including mechanics' liens and other liens on real estate, equipment, supplies, and goods under state and other applicable law (the "Liens and Interests").

26. The Debtors owe approximately $9 million as of the Petition Date to On-Site Providers on account of Routine Maintenance. In addition, the Debtors estimate they owe approximately $10 million to On-Site Providers on account of incomplete ongoing

Improvements as of the Petition Date. The Debtors seek authority to make payments (the

"Payments") in satisfaction of the Work-in-Progress Claims asserted by the On-Site Providers,

subject to the following conditions:

> (a)    The Debtors, in their discretion, will determine which On-Site Providers, if any, are entitled to Payments under this Motion, subject to the provisions below;

> (b)    The On-Site Providers must either (i) be engaged in providing Goods or Services with respect to a project at the Debtors' facilities that is incomplete as of the Petition Date or (ii) be engaged in performing Routine Maintenance in one of the Debtors' stores;

> (c)    The Debtors must conclude (i) that the Goods or Services of the On-Site Provider at issue are essential to the proper or timely completion of the project or to the ongoing maintenance of a store, (ii) that the On-Site Provider will refuse to continue providing such Goods or Services if the Work-in-Progress Claims are not paid, and (iii) that the Debtors' facilities or operations will be adversely affected if the Improvements are not properly or timely completed or the Routine Maintenance is not regularly performed;

> (d)    As a condition to receiving a Payment, the On-Site Provider must agree to continue providing Goods or Services to the Debtors as necessary to complete the Improvements or perform the Routine Maintenance on terms at least as favorable as the On-Site Provider made available to the Debtors prior to the Petition Date; and

> (e)    Prior to making a Payment to an On-Site Provider under this Motion, the Debtors may, in their discretion, settle all or some of the Work-in-Progress Claims of the On-Site Providers for less than their face amount without further notice or hearing.

### Basis for Relief

27.    The Court may authorize the Debtors to pay the Work-in-Progress Claims under

Section 105(a) of the Bankruptcy Code. Numerous courts have used their Section 105 equitable

powers under the "necessity of payment" doctrine to authorize payment of a debtor's pre-petition

obligations where, as here, (a) the payment is necessary to effectuate the paramount purpose of

Chapter 11 reorganization to preserve the debtor's potential for rehabilitation, see Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 311-12 (1882); In re Lehigh & N.E. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989); or (b) nonpayment would trigger a withholding of goods or services essential to the debtor's reorganization, see In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999); In re Wehrenberg, Inc., 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001).  Here, completion of the Improvements and performance of the Routine Maintenance is essential to the normal operation of the Debtors' businesses and to the Debtors' ability to maintain a basic service level in and implement upgrades to their stores that will enhance their public image.  Absent the requested relief, the Debtors believe that the On-Site Providers may refuse to continue to provide Goods or Services to the Debtors, thereby preventing the timely performance of Routine Maintenance and the timely completion of the Improvements.  If the Routine Maintenance is not timely performed or the Improvements are delayed or remain unfinished, the Debtors' operations will be disrupted and their stores will be left in a state of disrepair and disorder.  In an industry where appearance, accessibility, and public perception are critical to success, performance of the Routine Maintenance and completion of the Improvements is essential to the Debtors' reorganization.

28.     Section 363(b) of the Bankruptcy Code provides that the trustee may, after notice and a hearing, "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. §  363(b).  The Court may authorize a debtor to use such property if there is a good business reason for doing so, such as aiding in the debtor's reorganization.  In re Lionel Corp., 722 F.2d 1063, 1071-72 (2d Cir. 1983).  As set forth above, the Improvements are essential to the uninterrupted operation of the Debtors' stores and to the Debtors' ability to

project a positive image to their customers.  The Debtors submit that the foregoing are legitimate

business reasons that support the relief requested herein.

29.     In addition, in certain circumstances, the Debtors' failure to pay the Work-in-

Progress Claims would likely result in the On-Site Providers' having rights to assert Liens or

Interests against the Debtors' properties.  Pursuant to Section 362(b)(3) of the Bankruptcy Code,

acts to perfect such Liens or Interests, to the extent consistent with Section 546(b) of the

Bankruptcy Code, are expressly excluded from the automatic stay otherwise established by

Section 362(a) of the Bankruptcy Code.  Moreover, under Section 546(b) of the Bankruptcy

Code, a debtor's lien avoidance powers "are subject to any generally applicable law that ...

permits perfection of an interest in property to be effective against an entity that acquires rights

in such property before the date of perfection."  Therefore, notwithstanding the automatic stay

established by Section 362 of the Bankruptcy Code, many of the On-Site Workers may perfect

and assert Liens or Interests against the Debtors' property.  Thus, they would hold secured

claims under Section 506(b) that would, in any event, be required to be paid in full under Section

1129(b)(2)(A) of the Bankruptcy Code.  Accordingly, the payment of the Work-in-Progress

Claims as described herein will affect only the timing of such payments and will not prejudice

the rights of general unsecured creditors or other parties in interest.

30.     Finally, relief similar to the relief requested herein has been granted in other

significant Chapter 11 cases.  See, e.g., In re Formica Corp., Case No. 02-10969 (Bankr.

S.D.N.Y. Mar. 5, 2002);  In re Washington Group Int'l., Case No. 01-31627 (Bankr. D. Nev.

June 14, 2001); In re VF Brands, Inc., Case No. 01-00285 (D. Del. Jan. 29, 2001); In re Owens

Corning, Case No. 00-03837 (Bankr. D. Del. Oct. 6, 2000); In re Safety-Kleen Corp., Case No.

00-02303 (Bankr. D. Del. June 13, 2000); <u>In re Stone & Webster, Inc.</u>, Case No. 00-02142 (D. Del. June 14, 2000).

31.     For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates.

<b><u>Notice</u></b>

32.     Notice of this Motion has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

<b><u>Waiver of Memorandum of Law</u></b>

33.     Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

(a)     authorizing, but not directing, the Debtors to pay the Work-in-Progress Claims; and

(b)     granting the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
        New York, New York


          /s/     *D. J. Baker*
          D. J. Baker (DB 0085)
          Sally McDonald Henry (SH 0839)
          Rosalie Walker Gray
          SKADDEN, ARPS, SLATE, MEAGHER
           & FLOM LLP
          Four Times Square
          New York, New York 10036
          Telephone:  (212) 735-3000
          Facsimile:   (917) 777-2150

          -and-

          Sarah Robinson Borders
          Brian C. Walsh
          KING & SPALDING LLP
          191 Peachtree Street
          Atlanta, Georgia  30303
          Telephone:  (404) 572-4600
          Facsimile:  (404) 572-5100

          PROPOSED ATTORNEYS FOR THE DEBTORS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                  :
                                                       :        **Chapter 11**
                                                       :
**WINN-DIXIE STORES, INC., et al.,**                   :        **Case No. 05-11063**
                                                       :
                        **Debtors.**                   :        **(Jointly Administered)**
                                                       :
----------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING DEBTORS TO PAY
## CERTAIN WORK-IN-PROGRESS CLAIMS OF ON-SITE PROVIDERS
## AS NECESSARY TO AVOID DISRUPTION TO OPERATIONS

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for authority to pay certain pre-petition

claims (the "Work-in-Progress Claims") of repairmen, contractors, subcontractors, mechanics,

materialmen, maintenance providers, or other service providers (collectively, the "On-Site

Providers") involved in on-site projects that are in process as of the commencement of these

cases or routine maintenance functions as necessary to avoid disruption to the Debtors'

operations; all as more fully set forth in the Motion; and upon consideration of the Declaration of

Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support

of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the

Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28

U.S.C. § § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court

Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to

(i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis until such time as the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.; and it is further

ORDERED that any objection to the relief requested by the Motion on a final basis must be filed with the Court and be served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; and (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia  30303; and it is further

ORDERED that the Debtors are authorized, but not directed, to make payments (the "Payments") on the Work-in-Progress Claims of the On-Site Providers on the following terms and conditions:

(a)     The Debtors, in their discretion, shall determine which On-Site Providers, if any, are entitled to Payments under this Motion, subject to the provisions below;

(b)     The On-Site Providers must either (i) be engaged in providing Goods or Services with respect to a project at the Debtors' facilities that is incomplete as of the Petition Date or (ii) be engaged in performing Routine Maintenance in one of the Debtors' stores;

(c)     The Debtors must conclude (i) that the Goods or Services of the On-Site Provider at issue are essential to the proper or timely completion of the project or to the ongoing maintenance of a store, (ii) that the On-Site Provider will refuse to continue providing such Goods or Services if the Work-in-Progress Claims are not paid, and (iii) that the Debtors' facilities or operations will be adversely affected if the Improvements are not properly or timely completed or the Routine Maintenance is not regularly performed;

(d)     As a condition to receiving a Payment, the On-Site Provider must agree to continue providing Goods or Services to the Debtors as necessary to complete the Improvements or perform the Routine Maintenance on terms at least as favorable as the On-Site Provider made available to the Debtors prior to the Petition Date; and

(e)     Prior to making a Payment to an On-Site Provider under this Order, the Debtors may, in their discretion, settle all or some of the Work-in-Progress Claims of the On-Site Providers for less than their face amount without further notice or hearing; and it is further

ORDERED that an On-Site Provider's acceptance of payment under this Order is deemed to be an acceptance of the terms of this Order, and if the On-Site Provider thereafter does not provide the Debtors with customary trade credit terms during the pendency of these Chapter 11 cases, any payment of Work-in-Progress Claims made after the Petition Date may be deemed to be unauthorized and avoidable by the Debtors pursuant to Section 549 of the Bankruptcy Code; and it is further

ORDERED that the Debtors are authorized, but not directed, to obtain written verification of trade credit terms to be provided by an On-Site Provider before making any payment to such On-Site Provider pursuant to this Order; and it is further

ORDERED that the entry of this Order is without prejudice to the right of the Debtors to contest the amount of any invoice of an On-Site Provider on any grounds; and it is further

ORDERED that nothing in this Order shall constitute a determination regarding whether any On-Site Provider's refusal or threatened refusal to do business with the Debtors or to comply with an executory contract following the Petition Date violates the automatic stay of Section 362(a) of the Bankruptcy Code; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any party subject to this Order; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the

Debtors file a memorandum of law in support of the Motion is hereby waived.


Dated:  February ___, 2005
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                              :
                                                   :          **Chapter 11**
                                                   :
**WINN-DIXIE STORES, INC., et al.,**               :          **Case No. 05-11063**
                                                   :
          **Debtors.**                             :          **(Jointly Administered)**
                                                   :
-----------------------------------------------------------------x

### FINAL ORDER AUTHORIZING DEBTORS TO PAY
### CERTAIN WORK-IN-PROGRESS CLAIMS OF ON-SITE PROVIDERS
### AS NECESSARY TO AVOID DISRUPTION TO OPERATIONS

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for authority to pay certain pre-petition

claims (the "Work-in-Progress Claims") of repairmen, contractors, subcontractors, mechanics,

materialmen, maintenance providers, or other service providers (collectively, the "On-Site

Providers") involved in on-site projects that are in process as of the commencement of these

cases or routine maintenance functions as necessary to avoid disruption to the Debtors'

operations; all as more fully set forth in the Motion; and upon consideration of the Declaration of

Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support

of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the

Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28

U.S.C. § § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court

Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to

(i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the

Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the

Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and

the relief requested in the Motion being in the best interests of the Debtors, their estates, and

creditors; and the Court having reviewed the Motion; and the Court having determined that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

and upon all of the proceedings had before the Court; and after due deliberation and sufficient

cause appearing therefor, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that the Debtors are authorized, but not directed, to make payments

(the "Payments") on the Work-in-Progress Claims of the On-Site Providers on the following

terms and conditions:

(a)     The Debtors, in their discretion, shall determine which On-Site Providers, if any, are entitled to Payments under this Motion, subject to the provisions below;

(b)     The On-Site Providers must either (i) be engaged in providing Goods or Services with respect to a project at the Debtors' facilities that is incomplete as of the Petition Date or (ii) be engaged in performing Routine Maintenance in one of the Debtors' stores;

(c)     The Debtors must conclude (i) that the Goods or Services of the On-Site Provider at issue are essential to the proper or timely completion of the project or to the ongoing maintenance of a store, (ii) that the On-Site Provider will refuse to continue providing such Goods or Services if the Work-in-Progress Claims are not paid, and (iii) that the Debtors' facilities or operations will be adversely affected if the Improvements are not properly or timely completed or the Routine Maintenance is not regularly performed;

(d)     As a condition to receiving a Payment, the On-Site Provider must agree to continue providing Goods or Services to the Debtors as necessary to complete the Improvements or perform the Routine Maintenance on terms

at least as favorable as the On-Site Provider made available to the Debtors prior to the Petition Date; and

(e)     Prior to making a Payment to an On-Site Provider under this Order, the Debtors may, in their discretion, settle all or some of the Work-in-Progress Claims of the On-Site Providers for less than their face amount without further notice or hearing; and it is further

ORDERED that an On-Site Provider's acceptance of payment under this Order is deemed to be an acceptance of the terms of this Order, and if the On-Site Provider thereafter does not provide the Debtors with customary trade credit terms during the pendency of these Chapter 11 cases, any payment of Work-in-Progress Claims made after the Petition Date may be deemed to be unauthorized and avoidable by the Debtors pursuant to Section 549 of the Bankruptcy Code; and it is further

ORDERED that the Debtors are authorized, but not directed, to obtain written verification of trade credit terms to be provided by an On-Site Provider before making any payment to such On-Site Provider pursuant to this Order; and it is further

ORDERED that the entry of this Order is without prejudice to the right of the Debtors to contest the amount of any invoice of an On-Site Provider on any grounds; and it is further

ORDERED that nothing in this Order shall constitute a determination regarding whether any On-Site Provider's refusal or threatened refusal to do business with the Debtors or to comply with an executory contract following the Petition Date violates the automatic stay of Section 362(a) of the Bankruptcy Code; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any party subject to this Order; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____ ___, 2005
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE