SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
In re                               :
                                    :        Chapter 11
                                    :
WINN-DIXIE STORES, INC., et al.,    :        Case No. 05-11063
                                    :
          Debtors.                  :        (Jointly Administered)
                                    :
-------------------------------------------------------------x
```

## APPLICATION FOR AUTHORITY TO RETAIN
## THE BLACKSTONE GROUP, L.P. AS FINANCIAL ADVISORS

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**Background**

**A.    Chapter 11 Filings.**

1.    The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.    The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.    No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.    This Court has jurisdiction over this Application under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.    Company Background.**

5.    The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.    The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.     The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.     Capital Structure.**

8.     The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.     The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of approximately $427 million.  The

Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant

to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.     Certain of the Debtors are parties to an Indenture with Wilmington Trust

Company dated December 26, 2000 (as amended and supplemented, the "Indenture").  Pursuant

to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of

Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the

Senior Notes.  The Senior Notes mature in 2008 and require semi-annual interest-only payments

until maturity.  The Senior Notes are unsecured obligations that are *pari passu* with most of the

Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease

obligations (including possible rejection damages), employee obligations, and litigation claims.

12.     Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock

has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN.  All

of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.      Events Leading to the Debtors' Chapter 11 Cases.**

13.     In January 2004, the Debtors announced a series of actions designed to improve

their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of

business strategies and marketing programs, (b) an expense reduction plan designed to achieve a

$100 million annual expense reduction, (c) a market positioning review through which markets

will be identified as either core, and positioned for future investment and growth, or non-core,

and evaluated for sale or closure, (d) an image makeover program targeting approximately 700

stores for facilities improvement, and (e) a process re-engineering initiative that is intended to

enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.     Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since

the announcement of the Debtors' financial results on February 10, 2005, the Debtors have

experienced a reduction in vendor and other credit by more than $130 million.  As a result, the

Debtors have been forced to conclude, after consultation with their advisors, that their interests

and the interests of their creditors, employees, and customers will be best served by a

reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief

executive officer hired in December 2004, intend to implement further asset rationalization and

expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image

and competitive position, with the goal of improving their operations and financial performance

and strengthening their business for the benefit of creditors, customers, employees, and the

communities in which the Debtors operate.

## Relief Requested

20.     By this Application, the Debtors request entry of an order pursuant to Sections

327(a) and 328 of the Bankruptcy Code, approving the employment of The Blackstone Group,

L.P. ("Blackstone") as financial advisors for the Debtors during these cases.  The Debtors

request that Blackstone be retained to perform the services and on the terms as detailed in this

Application.

## Basis for Relief

21.     As noted above, the Debtors have suffered from recent financial difficulties.  In

recognition of their need for sound restructuring advice, the Debtors, among other things, sought

to retain a firm with substantial experience in the reorganization and restructuring of companies

in financial distress.  As a result of Blackstone's expertise and successful history of providing

restructuring advisory services to other companies in financially complex, troubled situations similar to the Debtors' situation, the Debtors selected Blackstone to provide restructuring services to them.

22.     Blackstone's Restructuring and Reorganization Advisory Services group is a leading advisor to companies as well as creditors in large, complex, and high profile restructurings and bankruptcies.  Established in 1991, the group has advised companies and creditors in more than 150 distressed situations, both in and out of bankruptcy proceedings, involving some $315 billion of total liabilities.  The group's clients include companies, creditors, corporate parents, and financial sponsors, as well as acquirers of troubled assets.  The group has participated in many of the largest restructurings, including Alestra, Altos Hornos de Mexico, America West Airlines, AMF Bowling, Arch Wireless, AT&T Canada, Babcock and Wilcox, Barney's, Big V Supermarkets, Cellnet, Chiquita Brands, Combustion Engineering, Criimi Mae, Dade Behring, Data Systems, Dow Corning, Enron, Ernis Maritime, Exide Technologies, Excite@Home, Flag Telecom, Fleming Companies, Global Crossing, W.R. Grace, Guandong Enterprises, Joy Global, Levitz, Macy's, Mirant Corporation, MobileMedia, Montgomery Ward, Net Servicos de Communicacao, Olympia & York, Trans World Airlines, Williams Communications, and Xerox.  Working in a significant share of all major restructuring assignments, the group is one of the most seasoned and experienced on Wall Street.  The group's senior professionals have well in excess of 150 years of combined experience in restructuring assignments.

23.     Blackstone is familiar with the Debtors' businesses and financial affairs and is well-qualified to provide the services required by the Debtors.  Prior to the Petition Date, the Debtors engaged Blackstone to provide advice in connection with the Debtors' preparation for

the commencement of these cases.  In providing pre-petition services to the Debtors in connection with these matters, Blackstone's professionals have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' operations, debt structure, business and operations and related matters.

24.    Accordingly, Blackstone has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these cases.  Should the Court approve the retention of Blackstone, Blackstone will continue, without interruption, to perform the services for the Debtors as described herein.

25.    The resources, capabilities, and experience of Blackstone in advising the Debtors are crucial to the Debtors' successful restructuring.  An experienced financial advisor such as Blackstone fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  Blackstone will concentrate its efforts on formulating strategic alternatives, negotiating with the Debtors' banks, bondholders, and other creditor constituencies, and assisting the Debtors to formulate and implement a viable Chapter 11 plan of reorganization. Neither law firms nor accounting firms have the experience or resources to do this kind of work. For these reasons, the Debtors require the services of a capable and experienced financial advisory firm such as Blackstone.

26.    The compensation arrangement summarized below and reflected in the engagement letter, which is attached to this Motion as Exhibit A, is consistent with, and typical of, arrangements entered into by Blackstone and other restructuring and consulting firms with respect to rendering similar services for clients such as the Debtors.

27.    Blackstone is well-qualified and able to continue to provide services to the Debtor in a cost-effective, efficient, and timely manner.

28.     The Debtors require the continued services of Blackstone for the following purposes, among others:

(a)     To assist in the evaluation of the Debtors' businesses and prospects;

(b)     To assist in the development of the Debtors' long-term business plan and related financial projections;

(c)     To assist in the development of financial data and presentations to the Debtors' boards of directors, various creditors, and other third parties;

(d)     To analyze the Debtors' financial liquidity and evaluate alternatives to improve the liquidity;

(e)     To analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the restructuring;

(f)     To provide strategic advice with regard to restructuring or refinancing the Debtors' obligations;

(g)     To evaluate the Debtors' debt capacity and alternative capital structures;

(h)     To participate in discussions and negotiations among the Debtors and their creditors, suppliers, lessors, and other interested parties;

(i)     To value securities offered by the Debtors in connection with a restructuring;

(j)     To advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k)     To assist in arranging possible DIP financing and exit financing for the Debtors as requested;

(l)     To provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services;

(m)     To assist the Debtors in preparing marketing materials in conjunction with a possible transaction;

(n)     To assist the Debtors in identifying potential buyers or parties in interest to a transaction and to assist in the due diligence process;

(o)     To assist and advise the Debtors concerning the terms, conditions, and impact of any proposed transaction;

(p)     To assist in the development, evaluation, and negotiation of any potential plan of reorganization and disclosure statement; and

(q)    To provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a restructuring or a transaction as requested and mutually agreed.

29.    To the best of the Debtors' knowledge: (a) Blackstone neither holds nor represents any interest adverse to the Debtors' estates; (b) Blackstone has had no affiliation with the Debtors, their creditors or any party in interest, or their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or the Bankruptcy Judge presiding over these cases; and (c) Blackstone is a "disinterested person" within the meaning of Sections 101(14) and 327(a) of the Bankruptcy Code, except as specifically disclosed more fully in the Declaration of Paul P. Huffard (the "Huffard Declaration"), attached hereto as Exhibit B.

30.    The principal terms of Blackstone's engagement are as follows:

Monthly Fee:  Blackstone will receive a monthly fee of $167,000, payable in advance.

Reimbursement of Expenses:  Blackstone will be reimbursed for reasonable out-of-pocket expenses, such as travel, telephone and facsimile, courier, and copy expenses. Blackstone will be reimbursed for legal fees incurred in responding to discovery or testifying as a witness in any matter relating to its services, excluding testimony provided during the term of the engagement.  To provide for the reimbursement of expenses, the Debtors have provided Blackstone with an expense advance deposit of $50,000. Blackstone will apply the deposit to its expenses only as authorized by this Court.

Restructuring Fee:  Upon consummation of a successful restructuring, as defined in the Agreement, Blackstone will receive an additional fee of $7,000,000.  Any Monthly Fees paid after the first twelve Monthly Fees will be credited against the Restructuring Fee.

Transaction Fee:  Upon the consummation of a transaction, as defined in the Agreement, Blackstone will receive an additional fee of 4% of the first $25 million of proceeds, plus 3% of the amount of proceeds between $25 million and $50 million, plus 2% of the amount of proceeds between $50 million and $100 million, plus 1% of the amount of proceeds over $100 million.  With certain exceptions, and as detailed in the Agreement, the minimum Transaction Fee will be $1,000,000.  The minimum Transaction Fee will be $7,000,000 if there is a sale of substantially all of the operating assets of the Debtors. The first $2,000,000 of the Transaction Fees will be credited against the Restructuring Fee.

<u>Indemnification</u>:  The Debtors will indemnify Blackstone, its principals, employees, and affiliates in the event of certain losses.

<u>Review of Fees and Expenses</u>:  Blackstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that Blackstone shall not be required to maintain time records and, provided further, that Blackstone shall not be required to maintain receipts for expenses in amounts less than $75.

31.     Prior to the Petition Date, Blackstone received certain amounts (as set forth in the Huffard Declaration) from the Debtors as compensation for professional services performed and for the reimbursement of reasonable and necessary expenses incurred in connection therewith.

32.     For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates.

## Notice

33.     Notice of this Application has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## Waiver of Memorandum of Law

34.     Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Application.

WHEREFORE the Debtors respectfully request that this Court:

(a)      enter an order pursuant to Sections 327(a) and 328 of the Bankruptcy Code

authorizing the Debtors to employ The Blackstone Group, L.P. as financial

advisors in these cases; and

(b)      grant the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
        New York, New York


       */s/     D. J. Baker*
       D. J. Baker (DB 0085)
       Sally McDonald Henry (SH 0839)
       Rosalie Walker Gray
       SKADDEN, ARPS, SLATE, MEAGHER
        & FLOM LLP
       Four Times Square
       New York, New York 10036
       Telephone:  (212) 735-3000
       Facsimile:   (917) 777-2150

       -and-

       Sarah Robinson Borders
       Brian C. Walsh
       KING & SPALDING LLP
       191 Peachtree Street
       Atlanta, Georgia  30303
       Telephone:  (404) 572-4600
       Facsimile:   (404) 572-5100

       PROPOSED ATTORNEYS FOR THE DEBTORS

# **EXHIBIT A**

# **AGREEMENT**



The **Blackstone** Group®

February 18, 2005

Mr. Peter Lynch
Chief Executive Officer
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254

Dear Peter:

This letter confirms the understanding and agreement (the "Agreement") between The Blackstone Group L.P. ("Blackstone") and Winn-Dixie Stores, Inc. (together with its subsidiaries, the "Company") regarding the retention of Blackstone on an exclusive basis by the Company effective as of December 15, 2004 as its financial advisor for the purposes set forth herein.  This Agreement replaces and supersedes in all respects the agreements between Blackstone and the Company dated February 23, 2004 and May 10, 2004, and the amendment to the February 23 agreement dated November 2, 2004.

Under this Agreement, Blackstone will provide financial advisory services to the Company in connection with a possible restructuring of certain liabilities of the Company (the "Restructuring") and a possible transaction or transactions involving the sale of assets of the Company (the "Transactions") and will assist the Company in analyzing, structuring, negotiating and effecting the Restructuring or Transaction pursuant to the terms and conditions of this Agreement.  As used in this Agreement, the term Restructuring shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of the Company affecting existing or potential debt obligations or other claims, including, without limitation, senior debt, junior debt, trade claims, real property leases and general unsecured claims (collectively, the "Obligations"), and/or (ii) any complete or partial repurchase, refinancing, extension or repayment by the Company of any of the Obligations.  As used in this Agreement, the term Transaction shall mean, as applicable, any transaction constituting, whether in one or a series of transactions, the sale, transfer or other disposition (including a disposition involving solely the sublease or assignment of a facility with no additional consideration received by the Company), directly or indirectly, of all or a portion of the Company's assets; provided, however, in the case of the sale of a portion of the Company's assets, the term Transaction shall refer only to the sale of the assets identified on Exhibit A attached hereto, which Exhibit may be updated from time to time by the parties hereto.

The financial advisory services to be rendered by Blackstone will include the following:

(a)  Actively and substantially assist in the evaluation of the Company's businesses and prospects;

(b)  Assist in the development of the Company's long-term business plan and related financial projections;

(c)  Assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other third parties;

(d)  Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(e)  Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f)  Provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

(g)  Evaluate the Company's debt capacity and alternative capital structures;

(h)  Participate in discussions and negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

(i)  Value securities offered by the Company in connection with a Restructuring;

(j)  Advise the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k)  Assist in arranging possible debtor-in-possession ("DIP") financing and exit financing for the Company, as requested;

(l)  Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services;

(m)  Assist the Company in preparing marketing materials in conjunction with a possible Transaction;

(n)  Assist the Company in identifying potential buyers or parties in interest to a Transaction and assist in the due diligence process;

(o)  Assist and advise the Company concerning the terms, conditions and impact of any proposed Transaction;

(p)  Assist in the development, evaluation and negotiation of any potential Restructuring and/or plan of reorganization and disclosure statement;

(q)  Assist the Company in preparing for a possible Chapter 11 filing; and

(r)  Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring or a Transaction as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. Blackstone makes no

2

representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. Blackstone is retained under this Agreement solely to provide advice regarding a Restructuring or a Transaction and is not being retained to provide "crisis management."

The Company will pay the following fees to Blackstone for its financial advisory services:

(i)    a monthly advisory fee (the "Monthly Fee") in the amount of $167,000 in cash, with the first Monthly Fee payable upon signing this Agreement and additional installments of such Monthly Fee payable in advance on 23rd day of each monthly thereafter. Any Monthly Fees paid after the first twelve Monthly Fees shall be credited against the Restructuring Fee (as defined below).

(ii)    an additional fee (the "Restructuring Fee") equal to $7,000,000. Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon the execution, confirmation and consummation of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring. The Restructuring Fee will be earned and payable upon consummation of the Restructuring.

(iii)    in addition to the Monthly Fees and the Restructuring Fees, upon the consummation of each Transaction for the sale of assets described on Exhibit A or for the sale of all or substantially all of the operating assets of the Company, a fee ("Transaction Fee") payable in cash directly out of the gross proceeds of each such Transaction in an amount equal to the following percentages of Consideration involved in such Transaction:

| Total Consideration | Percentage |
|---|---|
| On the first $25 million | 4% |
| Plus on the amount between $25 million and $50 million | 3% |
| Plus on the amount between $50 million and $100 million | 2% |
| Plus on the amount over $100 million | 1% |

The scale above will apply to each Transaction on a standalone basis, except for those retail store transactions in which The Food Partners or ExcessSpace Retail Services, Inc. led the Transaction, in which case the Transaction Fee payable to Blackstone shall be in an amount equal to 2.0% and 0.5% of the Consideration, respectively. The minimum Transaction Fee is $1 million, except (1) for those retail store transactions in which The Food Partners or ExcessSpace Retail Services, Inc. led the Transaction and (2) a sale of all or substantially all of the operating assets of the Company in which case the minimum Transaction Fee shall be $7,000,000. The first $2,000,000 of Transaction Fees paid under this Agreement shall be credited against the Restructuring Fee.

As used in this Agreement, Consideration means the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Transaction or a transaction related thereto (including, without limitation, amounts paid (A) pursuant to covenants not to compete or similar arrangements and (B) to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested). Consideration shall also include the face amount of any long-term liabilities (including the net present value of any open store operating leases or manufacturing facility leases assumed or assigned in a Transaction, calculated based on the remaining payments under the assumed lease discounted at 8.0%) or preferred stock (including indebtedness for borrowed money and the amount set forth in the Company's financial statements for any pension liabilities and guarantees) indirectly or directly assumed or acquired, or otherwise repaid or retired, in connection with or in anticipation of the Transaction. If the Transaction takes the form of a purchase of assets, Consideration shall also include (i) the value of any current assets not purchased, minus (ii) the value of any current operating liabilities not assumed, in either case as relates to the business(es) or operations being purchased. Consideration shall include all amounts paid into escrow and all contingent payments payable in connection with the Transaction, with fees on amounts paid into escrow to be payable upon the establishment of such escrow and fees on contingent payments to be payable when such contingent payments are made. If the Consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such Consideration is paid.

In this Agreement, the value of any securities (whether debt or equity) or other property paid or payable as part of the Consideration shall be determined as follows: (1) the value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the public announcement of the Transaction; and (2) the value of securities that are not freely tradable or have no established public market or, if the Consideration utilized consists of property other than securities, the value of such other property shall be the fair market value thereof as mutually agreed by the parties hereto; and

(iv)    reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel (such fees and expenses not to exceed $25,000 without prior approval from the Company, which approval shall not be unreasonably withheld) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses. In connection therewith, the Company shall pay Blackstone and maintain

4

thereafter a $50,000 expense advance for which Blackstone shall account upon termination of this Agreement.

In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (A) this Agreement, including the attached indemnification agreement, and (B) Blackstone's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply Blackstone with a draft of such application and any proposed order authorizing Blackstone's retention sufficiently in advance of the filing of such application and proposed order to enable Blackstone and its counsel to review and comment thereon. Blackstone shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Blackstone's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Blackstone in all respects. Blackstone acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Blackstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that Blackstone shall not be required to maintain time records and, provided further, that Blackstone shall not be required to maintain receipts for expenses in amounts less than $75. In the event that the Company becomes a debtor under the Bankruptcy Code and Blackstone's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Blackstone hereunder as promptly as practicable in accordance with the terms hereof. Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to Blackstone in immediately available funds by wire transfer.

With respect to Blackstone's retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that Blackstone's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Blackstone's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Blackstone's services hereunder could not be measured merely by reference to the number of hours to be expended by Blackstone's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Blackstone and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Blackstone and that the actual time and commitment required of Blackstone and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which Blackstone may

be required to address in the performance of its services hereunder, Blackstone's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Blackstone's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Monthly Fee, Restructuring Fee, and Transaction Fee) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of the Company, including the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party.

Except as contemplated by the terms hereof or as required by applicable law or legal process, Blackstone shall keep confidential all non-public information provided to it by or at the request of the Company, and shall not disclose such information to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with Blackstone's performance of its responsibilities hereunder and who are advised of the confidential nature of the information and who agree to keep such information confidential.

The Company will furnish or cause to be furnished to Blackstone such information as Blackstone believes appropriate to its assignment (all such information so furnished being the "Information"). The Company recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors or, if appropriate in the Company's judgment, in any filings in a Chapter 11 proceeding) without the prior written consent of Blackstone. All services, advice and information and reports provided by Blackstone to the Company in connection with this assignment shall be for the sole benefit of the Company and shall not be relied upon by any other person.

The Company acknowledges and agrees that Blackstone will provide its financial advice exclusively to the Company through the members of the Board of Directors and senior management of the Company and not to the Company's shareholders or other constituencies. The Board of Directors and senior management will make all decisions for the Company regarding whether and how the Company will pursue a Restructuring or Transaction and on what terms and by what process. In so doing, the Board of Directors and senior management will also obtain the advice of the Company's legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of a Restructuring or Transaction. The Company further acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to the Company and does not in such capacity act as a fiduciary for the Company or any other person. Blackstone shall act as an independent contractor and any duties of Blackstone arising out of its engagement pursuant to this Agreement shall be owed solely to the Company.

In consideration of Blackstone's agreement to provide financial advisory services to the Company in connection with this Agreement, it is agreed that the Company will indemnify Blackstone and its agents, representatives, members and employees. A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A.

In the event that, as a result of or in connection with Blackstone's engagement for the Company, Blackstone becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will, so long as Blackstone is not a party to the proceeding in which the information is sought, reimburse Blackstone for the reasonable fees and expenses of its counsel incurred in responding to such a request. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate indemnification agreement attached hereto.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by either the Company or Blackstone; termination for cause by either party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A and (c) unless this Agreement is terminated for cause, Blackstone shall be entitled to the Restructuring Fee or Transaction Fee in the event that a Restructuring or Transaction, respectively, is consummated at any time prior to earlier of (i) 6 months following the consummation of a Plan of Reorganization and (ii) the expiration of 12 months following the termination of this Agreement.

The Company does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of Blackstone Group Holdings L.L.C. and its affiliates in their businesses distinct from the restructuring advisory business of The Blackstone Group L.P., provided that the Information is not made available to representatives of Blackstone Group Holdings L.L.C. and its affiliates who are not involved in the restructuring advisory business of The Blackstone Group L.P. and that appropriate "Chinese wall" measures are taken to insure confidentiality. Notwithstanding the immediately preceding sentence, neither Blackstone Group Holdings L.L.C. nor any of its affiliates shall purchase, advise any third party regarding a purchase or otherwise participate (alone or as part of a group) in the purchase of the Company's or any of its subsidiaries' stock, assets, claims or securities without the prior written consent of the Company.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts executed in and to be performed in that state.

The Company hereby agrees that any action or proceeding brought by the Company against Blackstone based hereon or arising out of Blackstone's engagement hereunder, shall be brought and maintained by the Company exclusively in the courts of the State of Delaware; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case. The Company irrevocably submits to the jurisdiction of the courts of the State of Delaware and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings. The Company hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

8

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

THE BLACKSTONE GROUP L.P.

By: _____

Name:  Paul P. Huffard
Title:  Senior Managing Director

Accepted and Agreed to as
of the date first written above:

WINN-DIXIE STORES, INC.

By: _____

Name:    Peter Lynch
Title:    Chief Executive Officer

9

Exhibit A

| FACILITY TYPE | LOCATION | KEY PRODUCT LINES |
|---|---|---|
| Beverage / Condiment (Chek Beverage / DeepSouth) | Fitzgerald, Georgia | Variety of Bottled Drinks and Condiments |
| Coffee, Tea and Spice (Astor) | Jacksonville, Florida | Spice, Coffee, Tea, Drink Mix, Gravy |
| Dairy (Greenville) [1] | Greenville, South Carolina | Fluid Milk |
| Dairy (Hammond) | Hammond, Louisiana | Fluid Milk |
| Dairy (High Point) | High Point, North Carolina | Fluid Milk, Cottage Cheese, Yogurt |
| Dairy (Miami) | Miami, Florida | Fluid Milk (Regular and Chocolate), Fruit Drinks |
| Dairy (Montgomery) | Montgomery, Alabama | Fluid Milk |
| Dairy (Plant City) | Plant City, Florida | Fluid Milk, Various Ice Creams |
| Pizza | Montgomery, Alabama | Variety of Pizzas and Toppings |
| Retail Stores [2] | Various Locations | — |

[1] To the extent the dairies on this Exhibit are sold together, this will be viewed as one Transaction.

[2] Represents the Company's retail stores deemed to be non-core.

ATTACHMENT A

February 18, 2005

The Blackstone Group L.P.
345 Park Avenue
New York, NY 10154

## INDEMNIFICATION AGREEMENT

Gentlemen:

This letter will confirm that we have engaged The Blackstone Group L.P. ("Blackstone") to advise and assist us in connection with the matters referred to in our letter of agreement dated as of February 18, 2005 (the "Engagement Letter"). In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors and employees and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to or arising out of the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all reasonable expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to or arising out of the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) to the extent finally judicially determined by a court of competent jurisdiction to have primarily resulted from the negligence or willful misconduct of an Indemnified Party (in which event the Indemnified Party will promptly repay us any amounts previously reimbursed by us to such Indemnified Party with respect to the matter that is the subject of such final judicial determination). We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our affiliates for or in connection with the Engagement except for (i) any willful breach by Blackstone of any agreement with us or (ii) any such liability for losses, claims, damages or liabilities incurred by us to the extent finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of such Indemnified Party.

If the indemnification provided for in the preceding paragraph is for any reason (other than the gross negligence or willful misconduct of an Indemnified Party as provided above) unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto) in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For purposes of this agreement, the relative benefits to us and you to the Engagement shall be deemed to be in the same proportion as (a) the total value paid or received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement bears to (b) the fees paid to Blackstone under the Engagement Letter (excluding any amounts paid as reimbursement of expenses).

No Indemnified Party will, without our prior written consent (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not we are an actual or potential party to such claim, action, suit or proceeding. In the event that we seek to settle or compromise or consent to the entry of any Judgment, we agree that such settlement, compromise or consent (i) shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of Blackstone or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on Blackstone or each other Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure substantively prejudices our rights. If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such action or proceeding and we will pay the fees and disbursements of such counsel; provided, however,

2

that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of ours under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of ours and such Indemnified Party; provided that neither we nor any indemnified Party may assign any rights or obligations hereunder without the prior written consent of the other party.

The provisions of this agreement shall apply to the Engagement, as well as any additional engagement of Blackstone by us in connection with the matters which are the subject of the Engagement, and any modification of the Engagement or additional engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by, and construed in accordance with, the laws of the state of Delaware applicable to contracts executed in and to be performed in that state.

Very truly yours,

WINN-DIXIE STORES, INC.

By: _____

Name:

Accepted and Agreed to as of the date first written above:

THE BLACKSTONE GROUP L.P.

By: _____

Name: Paul P. Huffard

Senior Managing Director

3

<u>**Exhibit B**</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**In re**                                          **:**
                                                   **:**      **Chapter 11**
                                                   **:**
**WINN-DIXIE STORES, INC., <u>et</u> <u>al.</u>,**   **:**      **Case No. 05-11063**
                                                   **:**
                        **Debtors.**               **:**      **(Jointly Administered)**
                                                   **:**
------------------------------------------------------------x

**DECLARATION OF PAUL P. HUFFARD**
**AND DISCLOSURE OF COMPENSATION**

I, Paul P. Huffard, hereby state and declare as follows:

1.      I am a Senior Managing Director of The Blackstone Group L.P. ("Blackstone"), a private financial advisory and investment banking firm that maintains offices at 345 Park Avenue, New York, New York 10154, and I make this declaration on behalf of Blackstone ("the Declaration").  I submit this Declaration in support of the application (the "Application") of Winn-Dixie Stores, Inc., *et al.*, the Debtors and Debtors-in-Possession (the "Debtors") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases") for an order authorizing the employment and retention of Blackstone as financial advisor to the Debtors.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

<u>**Blackstone's Qualifications**</u>

2.      Blackstone is recognized for its expertise in providing financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in Chapter 11 proceedings and serving as investment bankers in numerous cases:  (i) *In re AMF Bowling Inc.*, Case No. 01-61119, et al. (Bankr. E.D. Va. July 2, 2001); (ii) *In re Arch Wireless Communications, Inc.,* Case No. 01-46865 (Bankr. D. Mass. November 9, 2001); (iii) *In re*

*Cable & Wireless USA, Inc., et al.*, Case No. 03-13711 (Bankr. D. Del. Dec. 8, 2003); (iv) *In re Chiquita Brands International,* Case No. 01-118812 (Bankr. S.D. Ohio November 28, 2001); (v) *In re Dade Behring Holdings, Inc.*, Case No. 02-B-29020 (Bankr. N.D. Illinois  August 1, 2002); (vi) *In re Enron Corp.,* Case No. 01-16034 (Bankr. S.D.N.Y. December 2, 2001); (vii) *In re Fleming Companies, Inc.*, *et al.*, Case No. 03-10945 (Bankr. D. Del. April 1, 2003); (viii) *In re Global Crossing Corp.*, Case No. 02-40221 (Bankr. S.D.N.Y. January 28, 2002); (ix) *In re The LTV Steel Company, Inc.*, Case No. 00-43866 (Bankr. N.D. Ohio December 29, 2000); and (x) *In re Mirant Corporation, et al.*, Case No. 03-46590 (Bankr. N.D. Tex. July 14, 2003).

3.      I have considerable experience with Chapter 11 restructuring and other distressed company circumstances, advising both debtors and creditors.  I was named one of the country's leading restructuring financial advisors in the 2004 K&A Restructuring Register, a peer group listing assembled by the country's leading restructuring professionals.  Advisory assignments in which I have been actively involved include, among others: Alestra (for AT&T), AT&T Canada (for AT&T), Camelot Music, Inc., Cherokee, Inc., Conti Financial Corp., Crown Pacific, Dade Behring, Inc., Edison Brothers Stores, Inc., Excite@Home (for AT&T), Fleming Companies, Grossman's Inc., Harnischfeger Industries, Inc., Harrah's Jazz Company, Ladish Co., Inc., Legerity Corporation, Levitz Furniture Inc., Loehmann's Inc., The LTV Corporation, R.H. Macy & Co., Mattress Discounters Corp., Montgomery Ward Holding Corp., New World Pasta Company, Plaid Clothing Group Inc., Premium Standard Farms, Stratosphere, Inc., Universal Medical Buildings, Weiner's Stores, Inc., and Wherehouse Entertainment, Inc.

4.      My duties as Senior Managing Director with respect to Blackstone's engagement to represent the Debtors include, among other things, strategic advice, advice on restructuring options, participation in negotiations among the Debtors and their creditors, suppliers, and other

interested parties, assistance to the Debtors in reviewing the terms, conditions and impact of any proposed transaction or restructuring, and participation in presentations to the Debtor's Board of Directors.

5.      I hold a Bachelor of Arts degree in Economics from Harvard College and a Master of Business Administration from the Kellogg Graduate School of Management at Northwestern University.

6.      Prior to joining Blackstone, I was a Vice President of Hellmold Associates, Inc., an investment banking firm specializing in financial restructurings.  Prior to working at Hellmold Associates, I was in the corporate finance department of Smith Barney, Harris Upham & Co., Inc.

7.      Since February 2004, Blackstone has rendered financial advisory services to the Debtors.  Blackstone has become familiar with the Debtor's business and financial situation and is well qualified to represent the Debtors as financial advisors in connection with such matters in a cost-effective and efficient manner.

### Disinterestedness of Professionals

8.      Based on the results of the conflict search conducted to date and described more fully below, to the best of my knowledge, neither I, Blackstone, nor any member or employee thereof, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, other parties-in-interest (as identified to us by Debtors), their respective attorneys, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee, except as disclosed or otherwise described herein.  Neither I, Blackstone, nor any professional thereof, insofar as I have been able to ascertain, is related to any United States Bankruptcy Judge for the Southern District of New York or any of the District Judges of the Southern District of New York who handle bankruptcy cases.

9.    To the best of my knowledge, Blackstone is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that its members and employees:

a.    are not creditors, equity security holders or insiders of the Debtors;

b.    are not and were not investment bankers for any outstanding security of the Debtors;

c.    have not been, within three years before the date of the filing of the Debtors' Chapter 11 petition, (i) investment bankers for a security of the Debtors, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and

d.    were not, within two years before the date of filing of the Debtors' Chapter 11 petitions, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

10.    As part of its diverse practice, Blackstone appears in numerous cases, proceedings and transactions involving attorneys, accountants, investment bankers and financial consultants, some of which may represent claimants and parties-in-interest in the Chapter 11 Cases (including Skadden, Arps, Slate, Meagher & Flom LLP and King & Spalding LLP). Further, Blackstone or companies in which it has investments have in the past, and may in the future, be represented by several attorneys and law firms in the legal community, some of whom may be involved in these proceedings. In addition, Blackstone has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors herein in matters upon which Blackstone is to be employed.

11.    Affiliates of Blackstone serve as general partners for and manage a number of investment vehicles (collectively, the "Blackstone Funds"). The investors in the Blackstone

Funds include many large financial institutions, some of which may be parties in interest in this case but also include affiliates of Blackstone and various of its officers and employees (collectively, the "Employees"), including Employees working on the Debtors' Chapter 11 Cases. In their capacity as limited partners, these Employees have personal investments in the Blackstone Funds, but no control over investment decisions or over business decisions made at the Blackstone Funds.

a. Among other things, the Blackstone Funds are (a) passive investors in other funds (the "Investment Funds") managed by a number of non-traditional money managers, (b) active direct investors in a number of portfolio companies (the "Equity Funds"), (c) active direct investors in real estate including leases, mortgages, fee interests, real estate investment trusts, and businesses which are substantially related to real estate development, construction and operation ("BREP") and (d) investors in a variety of debt instruments and mezzanine loans or similar securities ("Income Funds").

b. As would be the case with respect to a mutual fund investment, neither Blackstone, its affiliates, the Blackstone Funds nor the Employees have any control over the investments made by the Investment Funds in which the Blackstone Funds are invested, including investment purchases, investment divestitures and the timing of such activities.

c. Some of the Investment Funds may invest in distressed debt and may hold or acquire debt of the Debtors. To avoid any appearance of impropriety, where the Blackstone Funds may receive information that Investment Funds are investing in companies in which Blackstone is acting as an advisor, Blackstone maintains internal procedures designed to preclude the dissemination of such information to the Employees who are providing such advisory services. No Employee working on the Debtors' Chapter 11 Cases receives information concerning the individual investments of the Investment Funds in which the Blackstone Funds are invested.

d. Blackstone maintains investment control over the Equity Funds, BREP and the Income Funds ("Managed Funds"). Many large financial institutions who may be involved in the case are investors in the Managed Funds, investors in, or creditors of, companies in which the Managed Funds have investments or provide investment banking services to Blackstone and the Managed Funds on investments.

e. Blackstone maintains a strict separation between its Employees assigned to the Debtors' Chapter 11 Cases and the Employees assigned to the Blackstone Funds.

f.    Likewise, no confidential information concerning the Debtors is permitted to be communicated to the Employees working for the Blackstone Funds.

g.    It is possible that companies owned, in whole or in part, by the Blackstone Funds or which may have had discussions regarding a possible investment or transaction in connection with the Blackstone Funds may have a relationship with the Debtors or otherwise appear on the list of entities attached as exhibits to the Affidavit.  The Debtors may purchase or supply goods and services to, and may be an obligor to, or a creditor of, one or more companies that Blackstone is advising or in which the Blackstone Funds have an investment. These relationships are unrelated to the financial advisory services Blackstone intends to provide in the Chapter 11 Cases. Blackstone maintains that these relationships are subject to the internal confidentiality procedures outlined immediately above and thus have no meaningful bearing on Blackstone's ability to advise the Debtors. Blackstone does not possess enough information concerning the dealings of the numerous companies in which the Blackstone Funds has an investment to detect connections between such companies and the Debtors or parties in interest.

12.    Through its numerous investment banking activities, Blackstone, either directly or through the Blackstone Funds or companies in which they have an interest, has, or may in the future have, substantial business relationships with large financial institutions, such as ABN AMRO, AIG, Bank of America, Bear Stearns, JP Morgan Chase, Citigroup, Credit Lyonnais, CSFB, Deutsche Bank, Fleet, GE Capital, Goldman Sachs, Lehman Brothers, Merrill Lynch, Morgan Stanley, UBS PaineWebber and Wachovia. These institutions are, have been, or may in the future be, investors in Blackstone, the Blackstone Funds or investments made by the Blackstone Funds or provide, have provided, or may in the future provide, investment banking, financial advisory or brokerage services to Blackstone, Blackstone Funds, portfolio companies of the Blackstone Funds, or Employees.  Employees who will work on the Chapter 11 Cases are not involved in the day-to-day activities of Blackstone, the Blackstone Funds or the portfolio companies in which such financial institutions are involved and procedures have been put in place such that no confidential information concerning the Debtors will be communicated to the Employees dealing with such institutions.

13.     Blackstone and certain of its members and employees may have in the past represented, may currently represent, and likely in the future will represent, in matters wholly unrelated to the Debtors' cases, entities that are parties-in-interest in these cases.  Immediately before these cases commenced, the Compliance Manager of Blackstone and his staff received a list of companies and other parties (the "Parties-In-Interest") provided by Winn-Dixie Stores, Inc. that represented non-debtor affiliates, lenders and other parties related to the Chapter 11 Cases.

14.     Robert J. Gentile, the Compliance Manager of Blackstone ("Compliance Manager") is responsible for, among other things, the day-to-day operation of the compliance function at Blackstone.  As part of his job, he maintains, for purposes of monitoring and avoiding conflicts of interest, a list (the "Restricted List") of companies with which Blackstone or one of its investment vehicles is doing business, either as an advisor or an investor or with respect to which Blackstone is in possession of material, nonpublic information or has entered into a confidentiality agreement.  The Compliance Department compared that list of Parties-In-Interest against the Restricted List and determined the existence of twenty possible conflicts.  In connection therewith, the following specific disclosures are made:

> a.      One or more of the Blackstone Private Equity Funds have or are considering potential investment transactions with three Parties-In-Interest. The Parties-In-Interest are subject to confidentiality agreements and cannot be disclosed. Blackstone Debt Advisors L.P. may be considering holding loans of two Parties-In-Interest, Collins & Aikman Corp. and Kmart.  The Mergers & Acquisitions Advisory Group is considering a possible advisory transaction with one of the Parties-In-Interest, which party's name cannot be disclosed due to confidentiality agreements.  One or more of the Blackstone Real Estate Funds have or are considering potential investment transactions with one Party-In-Interest, which is subject to a confidentiality agreement and cannot be disclosed.

> b.      Affiliates of Blackstone serve as general partners for and manage a number of Blackstone Funds of which the investors are primarily

unrelated third parties but also include affiliates of Blackstone and various of its officers and employees. Thirteen of the Parties-In-Interest, predominantly financial institutions, may have investments in Blackstone Funds, may have invested alongside Blackstone Funds in particular companies, may have extended credit to or provided investment banking services to Blackstone, Blackstone Funds or Blackstone portfolio companies. The names of nine of the investors may not be disclosed due to confidentiality obligations. The other investors are Aegis Group, First Union, Merrill Lynch, and Wells Fargo.

     c.    Of those possible conflicts mentioned above, Blackstone is subject to confidentiality agreements with respect to many of the companies involved, some of which may be publicly traded or owned by companies that may be publicly traded. In accordance with these confidentiality obligations, Blackstone is not in a position to disclose the names of many of the companies as stated herein. Blackstone is continuing to review its confidentiality obligations with respect to these possible conflicts. Should it be learned that a relationship should be disclosed, a supplemental affidavit with such disclosures shall be filed.

15.    Blackstone does not believe that any of its involvements with Parties-In-Interest will adversely affect the Debtors in any way. Blackstone has not represented, does not represent, and will not represent any such entity's interest in the Chapter 11 Cases. Blackstone does not believe that any relationship it may have with any of the entities listed on Attachment 1 to the Declaration will interfere with or impair Blackstone's representation of the Debtors in the Chapter 11 Cases. Blackstone may continue to provide professional services to entities or persons that may be creditors of the Debtors or parties-in-interest in the Chapter 11 Cases, provided, however, that such services do not relate to, or have any direct connection with, the Chapter 11 Cases.

## Services to be Provided to the Debtors

16.    Blackstone was retained by the Debtors and the non-debtor affiliates of the Debtors (collectively, "Winn-Dixie Stores, Inc.") on February 23, 2004, pursuant to an engagement agreement. Blackstone and Winn-Dixie Stores, Inc. subsequently executed an

engagement agreement on May 10, 2004 and an amendment to the February 23, 2004 agreement

on November 2, 2004.  On February 18, 2005, Blackstone and Winn-Dixie executed a revised

engagement agreement (the "Blackstone Agreement").  In its capacity as the pre-petition

financial advisor to Winn-Dixie Stores, Inc., Blackstone has rendered financial advisory services

(as described in the Application).  Blackstone has become familiar with the Debtors' operations

and is well qualified to represent the Debtors as financial advisors in connection with such

matters in a cost-effective and efficient manner.

17.     If the Application is approved, the professional services which Blackstone will be

required to render to the Debtors are expected to include the services described in the

Application and providing expert witness testimony on the subject of the tasks identified in the

Application.[1]

18.     The Blackstone Agreement specifically provides that (a) Blackstone has no

responsibility for designing or implementing any initiatives to improve the Debtors' operations,

profitability, cash management or liquidity; (b) Blackstone makes no representations or

warranties about the Debtors' ability to successfully improve their operations, maintain or secure

sufficient liquidity to operate its business, or successfully complete a Restructuring (defined

infra); and (c) Blackstone is not acting as a crisis manager.  The financial advisory services set

forth in the Blackstone Agreement do not encompass other investment banking services or

transactions that may be undertaken by Blackstone at the request of the Debtors not set forth in

the Blackstone Agreement.  The terms and conditions of any such investment banking services,

---

[1]     The description of the Blackstone Agreement in the Application is a summary.
To the extent that the Order Authorizing Debtors to Employ The Blackstone Group, L.P. as
Financial Advisors to be entered by the Bankruptcy Court is inconsistent with the Application or
the Blackstone Agreement, the terms of the Order will control.  To the extent that the

including compensation arrangements, would be set forth in a separate written agreement

between the Debtors and Blackstone and would be subject to any necessary Court approval.

### Professional Compensation and Indemnification Agreement

19.    A copy of the Blackstone Agreement is attached as Exhibit A to the Application.

Blackstone will provide such financial advisory services as set forth in the Blackstone

Agreement for the compensation described therein.

20.    Prior to the Petition Date, Blackstone performed certain professional services for

the Debtors beginning in February 2004 and has invoiced for $2,567,000 in advisory fees,

$1,722,629 in transaction fees, $211,583 in expenses incurred, and $50,000 in expense deposits.

Prior to the Petition Date, Blackstone has received payments totaling $4,551,212 for fees and

expenses invoiced.  The Debtors do not owe Blackstone any amount for services rendered prior

to the Petition Date.  Assuming Blackstone's retention is approved, the amount of fees received

pre-petition that cover the period in which post-petition services are rendered will be credited

against fees earned post-petition.


I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the forgoing is true

and correct.  Executed at New York, New York on February 21, 2005.


/s/   Paul P. Huffard_____
  Paul P. Huffard
  Senior Managing Director

---

Application and the terms of the Blackstone Agreement are inconsistent, the terms of the
Blackstone Agreement shall control.

# Attachment 1
# List of Interested Parties

**Debtors**
Astor Products, Inc.
Crackin' Good, Inc.
Deep South Distributors, Inc.
Deep South Products, Inc.
Dixie Darling Bakers, Inc.
Dixie-Home Stores, Inc.
Dixie Packers, Inc.
Dixie Spirits, Inc.
Dixie Stores, Inc.
Economy Wholesale Distributors, Inc.
Foodway Stores, Inc.
Kwik Chek Supermarkets, Inc.
Sunbelt Products, Inc.
Superior Food Company
Table Supply Food Stores Co., Inc.
WD Brand Prestige Steaks, Inc.
Winn-Dixie Handyman, Inc.
Winn-Dixie Logistics, Inc.
Winn-Dixie Montgomery, Inc.
Winn-Dixie Procurement, Inc.
Winn-Dixie Raleigh, Inc.
Winn-Dixie Stores, Inc.
Winn-Dixie Supermarkets, Inc.

**Non-Debtor Affiliates**
Bahamas Supermarkets Limited
The City Meat Markets Limited
W-D (Bahamas) Limited
WIN General Insurance, Inc.

**Current Officers and  Directors**
John E. Anderson
Laurence B. Appel
J. R. Brogan
D. Michael Byrum
K. B. Cherry
John H. Dasburg
G. L. Estill
T. Wayne Davis
Tillie K. Fowler
Kellie D. Hardee
David F. Henry
H. I. Hopkins, Jr.
Michael J. Istre
J. J. James
Richard C. Judd
P. J. Kennedy
D. G. Lafever
Peter L. Lynch
Richard P. McCook
D. J. Maroney
Mark W. Matta
J. P. Medina
Edward W. Mehrer, Jr.
D. A. Moore, Jr.
Julia B. North
Paul Novak
Bennett L. Nussbaum
E. L. Rainwater
Carleton T. Rider
J. J. Roy
C. S. Rubio
Mark A. Sellers
Dennis M. Sheehan

H. Jay Skelton
Charles P. Stephens
P. L. Tiberio
Ronald Townsend
H. S. Wadford
D. M. Young

**Former Officers and Directors**
Keva M. Bethel
D. H. Bitter
A. Dano Davis
Judith W. Dixon
L. B. Johnson
Bryan C. S. Knowles
Frank Lazaran
Barry J. Rassin
K. A. Romeo
Allen R. Rowland
Karen E. Salem
Hugh G. Sands
John R. Sheehan
Bruce R. Souder

**Senior Secured Lenders**
Amsouth Bank
Bank One
Congress Financial Corporation (Florida),
n/k/a Wachovia National Bank, N.A.
Fleet Retail Group, Inc.
General Electric Capital Corporation
GMAC Commercial Finance LLC
Israel Discount Bank
Merrill Lynch Capital
National City Business Credit, Inc.
PNC Business Credit
RZB Finance LLC
Siemens Financial Services, Inc.
SunTrust Bank
The CIT Group/Business Credit, Inc.
UBS AG, Stamford Branch
Wachovia Bank, National Association
Webster Business Credit Corp
Wells Fargo Foothill LLC

**Mortgage Holders**
Lutheran Brotherhood

**Top 50 Unsecured Trade Creditors on a
Consolidated Basis as of February 18,
2005**
Alberto Culver USA, Inc.
Anderson News LLC
Bayer Corp
Campbell Soup Co.
CH Robinson Worldwide Inc
Clorox Sales Co - KPD
Coca Cola Bottling Co
Coca Cola Bottling Works
Conagra Grocery Products Co.
Del Monte Foods USA
DLJ Produce Inc
Edy's Grand Ice Cream
Fin Tech
Florida Coca Cola
Front End Services Corp.
General Electric Company

General Mills Inc.
Georgia Pacific Corp.
Gerber Products Company
Gillette Company
Good Humor Breyers Ice Cream
Gourmet Award Foods Mid Atlantic
Gulf Coast Coca-Cola Bottling Co.
Hershey Chocolate USA
Johnson & Johnson
Keebler Company
Kellogg Sales Company
Kimberly Clark
Konica Photo Imaging
Kraft (Kraft Foods, Kraft Pizza, Nabisco)
Louisiana Coca Cola
McKee Foods Corporation
Nestle (Nestle Usa, Nestle Purina, Nestle
Water)
Pepperidge Farm Inc-Cookies
Pepsico. & Affiliates
Powerhouse Produce LLC
Procter & Gamble Dist Co.
Riverdale Farms
Ross Laboratories
Safe Harbor Seafood
Sanderson Farms
Sara Lee Foods
Schering Plough Health Care
Schreiber Foods Inc.
Smith Kline Beecham
Unilever (Hpc Usa & Best Foods)
US Bank Corporation
Warner Lambert Consumer Group
Wyeth Consumer Healthcare

**Parties with Filed UCC Financing
Statements**
Bennett's Leasing Incorporated
Cargill, Incorporated
Cisco Systems Capital Corporation
Computer Leasing Company of Michigan,
Inc.
EMC Corporation
Fidelity Leasing, Inc.
Fleet Capital Leasing - Technology Finance
Fleet Leasing Corporation
GATX Technology Services Corporation
Healthguard Finance Corporation
Healthguard International, Inc.
IBM Credit Corporation
IBM Credit LLC
Ikon Office Solutions Inc.
Konica Photo Imaging
Konica USA Inc.
National City Bank of MI/IL
NCR Corporation
Norse Dairy Systems
Storagetek Financial Services Corporation
US Bancorp
Xpedex - Division of International Paper

**Indenture Trustee**
Wilmington Trust Company

**Senior Unsecured Noteholders and**
**Related Funds and Administrators**
American Bond Fund of America
American Capital World Bond Fund
American Funds
American Funds High Income Trust
American Funds Insurance – Asset
Allocation
American Funds Insurance
American Funds Smallcap World Fund
American Memorial Life Insurance Co.
Amerihealth Insurance Company of New
Jersey
Ameriprime Funds
ANIA High Yield Bond Portfolio
Arnhold & S Bleichroeder Advisers, LLC
Assurant Inc.
Austin Investment Management Co.
Aviva Life Insurance Company
Capital Research and Management
Company
Clariden US High Yield Bond Fund
Colonial Intermarket Income Trust
Columbia Management Advisors
CGU Insurance Group
Credit Suisse Asset Management Ltd.
Credit Suisse FS High Yield Bond
Credit Suisse High Yield Bond Fund
Delphi Financial Group
Denver Investment Advisors Inc.
DLJ Investment Management Corp.
Dynamic American Value
Dynamic American Value Fund
First Eagle Funds
First Eagle US Value Fund
First Fortis Life Insurance Company
Fortis Benefits Insurance Company
Fortis Group
Fortis Insurance Company
Fringe Benefit Life Insurance Company
Goodman & Co. Investment Counsel
High Yield Plus Fund
IMS Capital Management
IMS Strategic Income Fund
Independence Blue Cross
John Alden Life Insurance Company
Julius Meinl Investment Gmbh
Liberty Funds Distributor, Inc.
Meinl Capitol
PHUP Training
Prudential Investments Fund Management
LLC
QCC Insurance Company
Regence Blue Shield
Regence BlueCross BlueShield of Oregon
Regence BlueCross BlueShield of Utah
Reliance Standard Life Insurance Company
Securities Management and Research, Inc.
The Vanguard Group
Vanguard Group Incorporated
Vanguard High-Yield Corporate Bond
Portfolio
Vanguard VVIF HighYield Bond Fund
Wellington Management Co. LLP
Westcore Flexible Income Fund
Westcore Funds

**Lessors of Real Property**
100 Executive Drive LP
11010 Seventh Ave Investments

145 Associates Ltd
17161 N W 27th Avenue LLC
1954 Unionport Associates LLC
1980 Unionport Associates LLC
1997 Properties
2525 East Hillsborough Ave LLC
40/86 Mortgage Capital Inc
440 Group Ltd
4JS Family LLLC
5 Points West Shopping Center
51st Street & 8th Ave Corp
7595 Centurion Parkway LLC
9 SC Associates
98 Palms Ltd
99 Eglin Ltd
A F I Management
A G Edwards
A J & C Garfunkel
A L S Telfair Plaza
Ackerberg Group
Ackerman-Midtown Assoc
Acorn Assoc Ltd
Acron USA Fonds Winn Dixie LP
Adams Realty
Aegis Waterford LLC
Aegon USA Realty Advisors Inc
AEI Income & Growth Fund XXI L
AEI Net Lease Income & Growth
AEM Stiftung LLC
Agree Limited Partnership
Aintsar Realty Corp
Airkaman Of Jacksonville Inc
Al Bellotto Inc
Alabama '83 Center Associates
Albert J Cirignano Sr
Albion Pacific Prop Resources
Alfa Mutual Fire Ins Co
Allard LLC
Allied Capital Corporation
Allied Capital REIT Inc
Altamonte SSG Inc
Alvin B Chan Family LP
Alvin B Chan Inc
Alvyn L Woods
Amelia Plaza Shopping Center
American Commercial Realty
American Federal Properties
American Mortgage & Realty Cor
American Paper Box Company Inc
American Plaza Ltd Partnership
American United Life Ins Co
Americana East Investments Inc
Ansel Properties Inc
Applewood Shopping Center
Arcadia FL Diversey West
Arco Realty Company
Arlington Properties Inc
ARS Investment Corporation
Asbury Commons Ltd
Ashy-Brown Gonzales
August Urbanek Investments
Avon Square Ltd
Avondale Square Limited
Azalea Management And Leasing
Azalea Shopping Center
B V Belk Jr
Bainbridge Associates
Baker & Baker
Bakersmith Corners LLC
Banc One

Bank Midwest
Bank Of New York
Bardstown SC LLC
Barlind Enterprises
Barrett Crossing Shopping Cent
Baumgardner-Hogan I LLC
Baxley Zamagias Lp
Baylanding Inc
Bayview Loan Servicing LLC
Beachwalk Centre II LLC
Bedford Avenue Realty Inc
Beer Wells Real Estate Service
Belco Enterprises
Belk Investments
Belleview Square Corp
Belmart Inc
Benderson 85-1 Trust And Wayne
Benderson Trust & Wayne Ruben
Benjamin Adam Setzer As Truste
Bennett V York
BEP II Limited Partnership
Bergeron WD Palmetto LLC
BG Highlands LLC
BG Turfway LLC
BHBS Inc
BHR LLC
Big Pine Shopping Center LLC
Bill Agapion
Bird Square Plaza Management I
Birmingham Realty Co
Blaine Lake LLC
Blanchard and Calhoun Real Est
Blue Angel Crossings
Bob Neill & Associates
Bogalusa Shopping Center Co
Bonners Point LLC
Bordeaux Center Inc
Bowdoin Square LLC
Boyd L Hyder
Boynton Lakes Plaza
Brandon Centre South
Brandywine Plaza Ltd
Brent Lance Trager
Brierwood Village Plaza
Bright-Meyers Dublin Assoc
Broad Street Station S.C.,LLC
Broadmoor Development Co
Brookhaven Retail LLC
Brookwood Flamingo Partners Lp
Brookwood LLC
Brown Investment Properties
Brown Noltemeyer Company
BT Marietta LLC
Bundy New Orleans Co LLC
Bunkie Investment Co LLC
Burlington Associates Ltd Prt
BW Dix Inc
BW Treasure Inc
Byars & Co Inc
C & A Ltd, Lc
C C Altamonte Joint Venture
Ca New Fixed Rate Partnership
Ca New Plan Venture Fund Louis
Cadillac Partnership
Caffery Center LLC
Caldwell Realty & Investment C
California Club Mall
Callahan Plaza Shopping Center
Cameron Edenton Co
Cameron Sanford Company LLC

Camilla Marketplace Associates
Cane River Shopping Cen
Capco 1998 D-7 Arlington Cente
Capital Advisors Inc
Capital Development Company
Capital Properties Associates
Capmark Services LP
Cardinal Entities Company LLC
Carl Dupuis
Carolina Enterprises Inc
Casselsquare LLC
Casto Investments Co Ltd
Cayce Marketplace LP
CC Realty Intermediate Fund I
CDC Paying Agent LLC
Cedar Creek Crossing Associate
Cedar Mountain Village
Cedar Springs Ctr Assocs
Central Progressive Bank
Central Texas Shopping
Centrex Properties Inc
Century Management And
CFG Limited
Chambers Square LLC
Chapel Trail Associates Ltd
Chapin Development Co
Charles Simon Trustee Of Same
Charleston Square Inc Bank Of
CHK & Associates
Cityview LLC
Civic Center Station Ltd
Clayton Crossings LLC
Clearlake Square
Cleveland Marketplace Ltd
Cliffdale Corner Inc
Clinton House Company
CMC Real Estate Program
Collett Management LLC
Collins & Aikman
Collins Pointe Shopping Center
Colonial Development Co LLC
Colonial Properties Services
Colonial Properties Trust
Columbia Marketplace LLC
Columbus Life Insurance Co
Comke Inc
Commercial Leasing One
Commercial Leasing Two
Commercial Net Lease Realty Inc.
Commodore Realty Inc
Concire Centers Inc
Concord Advantage Ii LP
Conseco Mortgage Capital Inc
Constellation Apartments
Cooper Smolen Joint Venture
Coralwood Shopping Center
Cordova Collection Lp
Country Club Centre LLC
CPG Finance I LLC
CPM Associates LP
Crawford Norwood Realtors Inc
Crenshaw-Singleton Properties
Crescent Investment Corp
Crest Haven LLC
Crestview Marketplace LLC
Cross County Associates LP
Crossing Of Orlando Ltd
Crowder Family Joint Venture
Crown Liquors Broward In
Crump Investments Ltd

Crystal Beach Acquistion LP
Crystal Lake At Orlando
Curry Ford LP
Cypress Run LLC
D R Plaza Ltd
Dahlem Enterprises Inc
Dairy Plaza Associates Ltd
Dalraida Properties Inc
Daniel G Kamin
Daniel H Case And
Dauksch Family Partnership
Davie Plaza Limited Partnership
Davis Mill Station
Day Properties LLC
DDR Downreit LLC
DDR MDT Carillon Place LLC
Debary Common Shopping Center
Decatur Realty LLC
Deerfield Company Inc
Deerfoot Marketplace LLC
Defuniak Square Partners Ltd
Del Fair Inc
Del Mar Shopping Center
Delnice Corp N.V.
Delta Interest LLC
Delta Plaza LLC
Deltona Assoc Ltd
DEM Partnership
Dept of Finance State of Alabama
Deutsche Bank f/k/a Bankers Trust
Company
Devcon Enterprises Inc
Dickinson Logan Todd & Barber
Dixon Realty Trust 1999-1
DMI Agent For IDR Jr LLR Jr &
Downtown Destin S/C
Downtown Two LLC
DPJ Company Limited
Dr Ralph Dayan
Drake Rental Account
Drinkard Development
Duckworth Morris Realty
Durham Plaza Associates
E & A Southeast LP
E and A Aquisition Two LP
East Partners Ltd
Eastdale Square LLC
Eastern Retail Holdings Lp
Eastgate Center LLC
Eastgate Investors LLC
Ebinport Assoc
EBR Partnership
Eckstein Properties LLC
Ed Street Dev Co
Eden Meadow Greens Associates
Edens & Avant Inc
Edens & Avant Properties LP
EIG Gordon Village LLC
EIG Hampton Square LLC
Elfers Square Center Inc
Eliot Properties
Elkmont Associates
Elston/Leetsdale LLC
Englewood Village LLC
English Village LLC
Equity Assoc
Equity One (Delta) Inc
Equity One (Hunters Creek)Inc
Equity One (Lantana) Inc
Equity One (Pointe Royale) Inc

Equity One (Summerlin) Inc
Equity One (West Lake) Inc
Equity One Alpha Inc
Equity One Commonwealth Inc
Equity One Inc
Equity One Monument Pointe Inc
Ernst Properties, Inc
Ervin & Susanne Bard
Euclid Warehouses, Inc.
Eugene M Mclain
Eupora Shopping Center
Eutis Mortgage Corporation
Evangeline Life Insurance Co
Excel Realty Partners LP
F R O LLC VII
Fairfield Partners LP
Fairway Food Stores
First National Bank
First Republic Corp of America
First Security Bank
First Security Bank Natl Assoc
First Union National Bank
First Union Wholesale Lockbox
First Westgate Mall LP
Flag Bank
Flagler Retail Associates Ltd
Flamingo East Ltd
Flint Crossing LLC
Florida Dickens Associates Ltd
FMV Associates
Folmar & Associates
Foothills Partnership
Fountain Columbus Assoc LLC
Four Florida Shopping Centers
Francine Trager Kempner
Francis Carrington
Frank D Boren And Gail F Boren
Frank W Guilford Jr Trustee
FRO LLC VIII
FU/WD Opa Locka, LLC
FU/WD Atlanta, LLC
Fury's Ferry Shoppes
FWI 16 LLC
FWI 20 LLC
FWI 23 LLC
FWI 5 LLC
G H I of West Palm Beach LLC
Gad & Asher Realty Ltd
Galileo Cmb T1 Hl TX LP
Galt Ocean Marketplace
Gardens Park Plaza  219
Gates Of St Johns LLC
Gator Carriage Partners Ltd
Gator Jacaranda Ltd
Gator Linton Partners Ltd
Gehr Development Florida LLC
Gem Warwick LLC
General Electric Business Asse
General Electric Capital Business
Genoa Associates LLC
Gentilly Square
George B Nalley Jr
George C Walker
George Chen
George Chen Formosa Developers
George D Zamias
George Dewrell
GLA LLC
Glenwood Midway Co LLC
Glimcher Properties Limited

Glynn Enterprises LLC
Goodings Supermarkets Inc
Gordon K Konrad
Gottlieb Family Trust Houma Ll
Graham And Company
Gray - White LLC
GRE Coralwodd LP
GRE Properties L L C
Great Oak LLC
Great South Mgmt LLC
Greenville Associates
Greenville Compress Co
Greenville Compress Co
Greenville Grocery LLC
Greenwood Commons Assoc
Greer Plaza Inc
GS II Brook Highland LLC
GS II Jacksonville Regional LL
Gulf Coast Properties
Gulfport Plaza Center Inc
H C Plunkett
H R Orlando LLC
H V McCoy & Company Inc
Haddco Properties Ltd Partners
Hall Properties
Hall Properties Inc
Halpern Enterprises
Halpern Enterprises Inc
Hamilton Square LLC
Hammerdale Inc
Hammonton Partners
Harold G  Bagwell
Harvey Lindsay Commercial Real
Hasco Properties
Hayday Inc
Haydel Realty Company Inc
Heathrow Square LLC
Helena Marketplace LLC
Henderson Corporation
Herbert Singer
Heritage Community Bank
Heritage Crossing Associates
Heritage Prop Investment Ltd
Heritage SPE LLC
Herman Maisel & Co Inc
Hialeah Fee Commons Ltd
Hialeah Promenade Limited Part
Highland Associates Lp
Highland Commons Boone LLC
Highland Lakes Associates
Highland Sq Shop Center
Hildebran Associates
Hillcrest Shopping Center
Hillsboro-Lyons Investors Ltd
Hilyard Manor Associates LLP
Hobe Sound S C Company Ltd
Holbrook Heritage Hills LP
Homestead Plaza
Homewood Associates Inc
Homosassa Assoc
Houston Centre LLC
Howell Mill Vlge Shpg Ct
HPC Wade Green LLC
Hudson Square Center Inc
Hurtak Family Partnership Ltd
I Reiss & Company
I Reiss and Co as Agent For
ICOS LLC
III T West LLC Marco Island Ma

Imperial Christina Shopping Ct
Independence Square
Indian Creek Crossing E&A LLC
Indian Village Group Inc
Indianapolis Life Ins Co
Indianapolis Life Insurance Co
Indrio Crossings Inc
Inland Southeast Property Mgmt
Interchange Associates Inc
Interwest Capital Corporation
Intracoastal Mall LLC
Invesco Lp
IPF Heights Limited Partnership
IPF/Capital Limited Partnership
IRT Partners LP
IRT Partners LP Equity One Rea
IRT Property Company
Island Plaza LLC
Isram Realty & Management Inc
Ivey Electric Company
J B Levert Land Co Inc
Jack Fiorella Iii
Jamerson Investments
James And Carolyn Sell
JDN Realty Corporation
Jefferson-Pilot Life
JEM Investments Ltd
Jerome H And Faith Pearlman Tr
JKA Enterprises LLC
JNB Company of Virginia LLC
John Benetti Associates
John C Eyster and E Lee Barran
John T Henley et al
JRT Realty Group - TIAA
Jula Trust
Jupiter Palm Assoc
JWV (La) LLC dba Sunshine Sq
K B Properties Inc
Keller Crossing Texas Lp
Kemor Properties Inc
Kenneth City Partners
Kerbby Partnership
Killen Marteplace LLC
Kimco Development Corp
Kimco University Co Inc
Kingfisher Inc
Kir Augusta 1 044 LLC
Kir Colerain 017 LLC
Kirk Meraux Winn-Dixie LLC
Kite Eagle Creek LLC
KJump Inc
Kmart Corporation
Knightdale Crossing LLC
Koger Equity
Kotis Properties
KPT Communities LLC
KRG Waterford Lakes LLC
L J Melody & Company
L O L LLC
L W Smith Jr Trust
La Petite Roche Center General
Lafayette Life Insurance Co
Lagrange Marketplace LLC
Lake Jackson Tradng Post
Lake Mary Limited Partnership
Lake Sun Properties Ltd
Lakeland Partners
Lakewood Associates Ltd
Lancaster Community Investors
Land Dade Inc

Landing Station
Landmark Enterprises
Landsouth Partners
Langdale Tire Co
Langston Place
Lapalco Village Shop Cen
Laramie River Bay Limited Part
Larissa Lake June Limited Ptnr
Lasala Pinebrook Associates LP
Lasco Realty LLC
Lauderhill Mall
Laureate Capital
Lawrence M Heard
Leatherman Assoc
Leesburg Bansal LLC
Lehmberg Crossing LLC
Leonard R Setzer
LF Limited Lp & Walnut Street
Libby Cross Station Enterprise
LIF Realty Trust
Life Insurance Co Of George
Lincoln Square Partners LP
Lincoln Trust Company
Linpro Investments Inc
Lisette Stanish as Trustee
Litchfield Investments Riverwo
LN Piedmont Village LLC
Lockwood Assoc of GA Ltd Ptr
London Associates Ltd
LPI Key West Associates Ltd
LRS General Partnership
Lucy Company Of South Carolina
LW Jog S C Ltd
M & P Shopping Center
Macon Gravlee
Madison Mall Shopping Ctr Inc
Madison Station Properties LLC
Magnolia Park Shopping Center
Main Street Marketplace LLC
Manatee Village Investments Inc.
Mandarin Loretto Development
Mar Bay Investments LLC
Marions Hope LLC
Market Place Partners
Market Square Inc
Marketown Investors Inc
Marketplace of Americus LLC
Marketplace of Delray Ltd
Marketplace Shopping Center
Mason Shopping Center Partnership
McComb Associates
McDonough Marketplace Partners
McDuffie Square L P
McNab Plaza Inc
MCW Development Inc
MCW RC FL Highlands LLC
MDC South Wind Ltd
MDC Westgate Ltd
Melbourne Beach LLC
Mellon Trust Of California
Merchants Square Investments L
Meridian Supermarket LLC
Metro International Property
Miami Gardens Acquisition LLC
Michael & Irene Simon
Mid American Management Corp
Mid South Yazoo Lp
Midland Loan Services
Midland Loan Services Inc
Midwest Centers

Milford Station Ltd
Miller Group Properties Corp
Miramar Parkway Plaza LLC
Mitchell Co
Mitchell Mortgage Company LLC
Modern Woodman
Modern Woodmen Of America
Mohatra Inc
Monroeville Center Partners
Moorings of Manatee Inc
Morgran Co
Morris Track Corp & Williston
Morro Palms Shopping Center
Moulton Properties
Mount Castle Properties
Mr E M Arnovitz & Mr M Plasker
Mr Hugh M Tarbutton
Mr Malcolm Rosenberg
Mrs Mildred V Gray
Mt Dora Marketplace Ltd
Museum Associates
N K C Properties
N O M Properties Inc
Nalley Construction Co Inc
Naples South Realty Associates
Naranja Lakes Joint Ventures
National Western Insurance Co
National Western Life Insurance
Navarre Square
NB/85 Associates Wayne M Ruben
NDC Asset Management
New Bay Minette LLC
New England Realty Resources
New Plan Excel Realty Trust
New Plan Excel Realty Trust In
New Plan Realty Trust
Newberry Square Shopping Center
Newton Associates
NMB Partners L P
Noble Management Company
Normandy Equities Ltd
North & South Station
North Columbus Crossing Shoppi
North Hixson Marketplace LLC
North Madison Associates Ltd
North Port Village Shopping
Northcross Land & Development
Northeast Plaza Associates
Northern Funds FBO Urbanek Inv
Northside Development Group
Northside Shopping Center
Northway Investments LLC
Northwest Junction Partners
Northwood Oaks LLC Providence
Northwood Plaza LLC
Oakdale Investors Lp
Oaks Shopping Center Inc
Oakwood Village Associates
O'Brien Kiernan Investment Co
Oceanway Plaza Assoc Ltd
Old 97 Inc
Old Kings Highway Assoc
Opal Lee Smith & Sara N Jordan
Orange Grove Shopping Ce
Orix Capital Markets LLC
Orix Real Estate Capital Marke
Orlando Marketplace Limited Pa
PAJ
Palisades Investors LLC
Palm Aire Marketplace LL

Palm Bay West
Palm Beach 2000 Inc
Palm Coast Corners Assoc Lp
Palm Trails Plaza
Palmetto Place Center LLC
Paradise Isle LLC
Park Plaza LLC
Park Plaza Shopping Ctr LLC
Parkland Partnership Lp
Parkview Square Owner Corp
Parkwood Plaza Shopping Center
Parkwood Village Joint Venture
Pass Christian Village
Patricia Or Marshall Weigel
Patton Plaza LLC
Paw Creek Crossing
Peach Orchard Center
Peachtree Parkway Plaza
Pearl Brittain Inc
Pelican Associates
Pell City Marketplace Partners
Peninsula Utilities Inc
Penman Plaza Associates Ltd
Peregine Properties LP
Perimeter Place Associates
Peripety Group Inc c/o Comm P
Phoenix Jr Inc
Pinar Assoc Sc Co Ltd
Pine Island Shopping Center
Pine Plaza
Pinel LP
Pineroots LLC
Pines/Carter
Pinetree Partners Ltd
Pinewood Plaza Associates
Pinson Valley Ltd
Plaza West 15190117351
Pmt Partners V LLC
Pnc Bank Philadelphia
Ponce Realty Company
Ponderosa Center Inc
Popps Ferry Ms Dev
Potter Square Associates
PRB Investments LLC
Premier Plaza Associates LLC
Prestonbury Village Shop Cente
Primax Properties LLC
Prime Shoppes Partners
Primo Justice Properties LLC
Principal Capital Management L
Principal Life Insurance Co
Procacci Commerical Realty Inc
Professional Mortgage Co Inc
Promenades Mall (E&A), LLC
Promventure Limited Partnership
PSI of Louisiana Inc
PSMA Ltd AP FHA FP FLA TIC
Quail Roost Associates
Quail Run Village
Quincy Associates Ltd
R & G Associates
R P Barren River LLC
Rab Land & Development Inc
Rainbow Marketplace LLC
Rainbow Springs Ventures Lc
Ralph Meitin Family
Ramco USA Development Inc
Randall Benderson 1993-1 Trust
Randy Roark
Rappaport Management Co

Rayne Plaza Shopping Center
Red Oak Shopping Center LLC
Reef Associates Ltd
Regency Centers Inc
Regency Saving Bank FSB
Regent Investment Corporation
Retail Center Hampton LLC
Retail Management Group Inc
Retreat Village Management Co
Rial Corporation
Richard Ball & Associates
Ridgeview Inc
Riley Place LLC
River Oaks
Riverwalk Plaza Joint Venture
RK Associates
Robert D Powers
Robert G  Horsman
Robert H Palmer Jr
Robert N Rizika
Robertsdale Dev LLC
Rockbridge Place
Roebuck Ventures Ltd
Ronald Benderson 1995 Trust
Rosemyr Corp
Roxborough Associates LLC
Royal & Son
Royal Companies
Royal Homes Inc
Royal Oaks Brandon Partners
Royal Oaks Plaza Inc
Royals O K Lunch Inc
RSSC LLC
Rudco Properties Inc
Rushmore Friendship LLC
Ruth Guest House Inc
Ruth S Smith Snodgrass Aires
S & C Properties
Salem Crossing Shopping Center
Salemo Village Shopping Center
Sam Development Associates LLC
Samuel Oschin Trustee Michael
Sandefur Investments Inc
Sandifer Partnership Ltd
Sandra Mackey
Sarria Enterprises Inc
Sarria Holdings II Inc
Sarria Holdings Inc
Satterfield Plaza T I C
Saufley Field Partners Ltd
Savitar A/M/A SRA/American LLC
Sawicki Realty Co
SCG Management Inc
Schilleci Millbrook SC LLC
School St Crossing LP
Schwartz Family Trust
Scotland Mall Inc
SCP Winter Garden Fl LLC
Scribe Riviera JV
Sea Pea Inc
Sebring Square Ltd
Selig Enterprises Inc
Sendero Commercial Investments
Seven  Springs Plaza LLC
Shades Creek Partners
Shadrall Associates
Shannon Village Shopping Cente
Shepherdsville Mall Assoc Lp
Sherffield Estates Inc
Sheri Trager Weiss

Shields Plaza
Shoals Marketplace LLC
Shoppes @ 104
Shoppes At 18th & Commercial
Shoppes At Lake Avenue Inc
Shoppes Of Liberty Cit LLC
Sidney Kohl Company
Sidney Lefcourt
Simmons & Harris Inc
Situs Servicing Inc
Sizeler Companies
SJS-Woodlake Plaza LP
Skinners Of Jacksonville Inc
SKS Properties LC
Small Properties
Smith Barney Fbo Weinacker's
Snellville Plaza Ltd
Sormi Inc
South Broadway Corp
South Monroe Commons LLC
South Plaza Associates LLC
South Rockdale Shopping Center
South Square Marketplace
South Win Limited Partnership
Southbrook Partners LLC
Southchase Investors LLC
Southeast US Retail Fund LP
Southern Boulevard Corp
Southern Farm Bureau
Southern Farm Bureau Life Ins
Southern Partners
Southern Stores II LLC
Southgate Associates II LP
Southgate Plaza 93 Ltd
Southgate Plaza Associates LLC
Southmark Properties LLC
Southtrust Bank
Southview Square LLC
SPCP Group LLC
Spectrum Walker
Spectrum/Grandview Pines
Spiller Investment Inc
Spishores LLC
Spring Hill Assoc Ltd
Spring Plaza Limited Prtnrshp
Springdale Station Ltd
Springfield Crossing LLC
Springhill Associates LLC
Springland Associates LLC
Springs Corners LLC
SR JLP JAP LLC
SR TCS LLC
SRT Acquistion Corporation
SSKIB Corporation
St Charles Partners
St Johns Commons Owner Corp
St. Stephens Partners
Staunton Plaza Associate
Stiles West Associates Ltd
Stockman & Nalley Partnership
Stonebridge Village
Structured Product Servicing
STW Holdings LLC
Sugarland Shopping Center
Sulphur Springs Partners LLLP
Sumter Crossing Properties Inc
Sun Lake Plaza Inc
Sun West NC III Ptn Lim
Sunburst Properties Corp
Sunset Centres Ltd

Sunset Centres Ltd Partnership
Sunset Station Partners LLC
Sunset West Shopping Plaza
Sunwest NC III Partnerships
Suwanee County Investors LLC
Swiss Re Investors Inc
T K Harris Comm Re Ser
T S Margate Co Ltd
TA/Western LLC (Pom. Mktplce)
Talladega Community Builders
Tappen Properties LP
Tatone Properties Fla Inc
Tavares Assoc Ltd
Taylor Square Venture
Teachers Retirement System
Ted Glasrud Associates Inc
Terra Nova The Realty Assoc Fu
THC LLC
The Market at Byram LLC
The Marketplace LLC
The Schreiber Co Belleview Ass
The Sembler Company
Tifton Mall Inc
Timberlake Station LLC
TL Nguyen LLC
Toulouse Village Associates
Tower Associates Ltd
Town & Country Shopping Center
Town Square Development
Town'n Country Realty
Trail Plaza
Triangle IV LLLP
Tri-State Commercial Asc
TRL Properties LLC
Troy Marketplace LLC
Trustee Of Trust B
Trustees Of Trust A/C -1
Trustmark National Bank
TS Pierce Sc Co Ltd
TSO Volusia LLC
Tunica Village Partnership
Twelth Street & Washington
Tyrone Gardens LLC
U P SC Ltd
Ullmann Company
United Commercial Mortgage Cor
United Investors Realty
University Crossing
University Tenancy In Common
UrbanAmerica
US Bank Trust Na Corp Trust TF
USPG Portfolio Two LLC
USRP I LLC Glen Lea Shopping C
USRP I LLC Shoppes Of Kildaire
Vachlia Inc
Valrico Square
Venetia Village Center
Ventures LLC
Victoria Square Partners LLC
Victory Berryland LLC
Victory Investments Inc
Victory Kenner LLC
Vigouroux Development LLC
Villa Rica Retail Properties L
Village Marketplace Of
Village Plaza Inc
Village Royale Properties LLC
Vogel & Vogel Partnership
W D Route 3 Limited
W T H II LLC

Wachovia Securities
Walker LA Commercial
Watch Omega Holdings Lp
Waters & Armenia Plaza
Waters Inc S C Mgmt Trust Acct
Watkins Investment
Wayne Ruben
Waynesville Shopping
WBFV Inc
WCL Five LLC
WD Development LLC
WD Jacksonville Fl LLC
WD Marianna Portfolio LP
WD Milton Portfolio L P
W-D Shelby Partnership
Weavers Corner Jt Venture
Webb/Lexington Ventures #108
Webber Commercial Properties L
Weeki Wachee Village Shop Cntr
Weingarten Realty Investors
Wesley Chapel Sc Co Ltd
West Eck Partners LP
West Napoleon Joint Venture
Westfork Plaza
Westgate LLC
Westland Shopping Center LP
Weston Road Shopping Center LL
Westside City Inc
Westwood Shopping Center
WIAB Properties LLC Operating
Wiedemann Square Ltd
Wiedmann Square LLC
Wiggs Realty Co
William H Hall
Willowood Partners Ltd
Winbrook Management Inc
Windsor Place
Windsor Station LC
Windward Partners IV LP
Winyah Village Shopping Ctr
Wiregrass Plaza LLC
Wolfchase Assoc LLC North Palm
Woodberry Plaza E&A LLC
Woodland Village Partnership
WRI/Texla LLC
Xarla Realty LLC
YBD Three Lakes LC
ZSF/WD Bartow, LLC
ZSF/WD Charlotte, LLC
ZSF/WD Clayton, LLC
ZSF/WD Fitzgerald, LLC
ZSF/WD Greenville, LLC
ZSF/WD Hammond, LLC
ZSF/WD High Point, LLC
ZSF/WD Jacksonville, LLC
ZSF/WD Montgomery-31, LLC
ZSF/WD Montgomery-Gunter, LLC
ZSF/WD Opa Locka, LLC
ZSF/WD Orlando, LLC
ZSF/WD Sarasota, LLC
Zuppardo Properties LLC
Zuppardo Real Estate Co
Zurich Structured Finance, Inc.

**Insurance Companies**
ACE American Insurance Co.
ACE Bermuda Insurance, Ltd.
ACE (Illinois Union)
AIG Aviation, Inc.

American Casualty Company of Reading
PA
American Guarantee Liability (Zurich)
Arch Insurance Co.
AWAC - Side A DIC (Bermuda)
AWAC (Bermuda)
AXIS (Bermuda)
Axis Surplus Insurance Co.
AXIS US
CNA
Commonwealth Ins. Co.
Employers Ins. Co. of Wausau
Federal Insurance Co.
Great American Assurance Company
Hanseatic Ins. Co. (Bermuda)
Houston Casualty Company
Illinois National Insurance Co.
Illinois Union Ins. Co.
Lexington Insurance Co.
Liberty Ins. Underwriters, Inc.
Liberty Mutual
Liberty Mutual Insurance Company
Liberty Mutual Insurance Europe Ltd.
Lloyd's of London
Magna Carta Insurance Ltd.
Max Re - Side-A DIC (Bermuda)
Max Re (Bermuda)
Max Re (Bermuda) Ltd.
National Union
National Union Fire Insurance Co.
National Union Fire Insurance Co.
Pittsburgh, PA
Quanta Specialty Lines Insurance Company
RLI Insurance Co.
SR Int'l Business Ins. Co. Ltd.
St. Paul Re (Bermuda) Ltd.
St. Paul Fire & Marine Ins. Co.
St. Paul Mercury Insurance Co.
Starr Excess (Bermuda)
Starr Excess Liability Ins. Int'l Ltd.
(Bermuda)
Starr Excess Liability Insurance
International Ltd. (Ireland)
Travelers Indemnity Co. of Illinois
Twin City Fire Insurance Company
WIN General Ins., Inc.
XL Insurance America, Inc.
XL Insurance Ltd. (Bermuda)
XL Specialty Insurance Company
Zurich
Zurich American Ins. Co.

**Publicly Identified Shareholders**
Brandes Investment Partners L.P.
Brandes Investment Partners, Inc.
Brandes Worldwide Holdings, L.P.
Charles H. Brandes
Jeffrey A. Busby
Glenn R. Carlson
A. Dano Davis
Robert D. Davis
T. Wayne Davis
Davis Family Special Trust 2004
Davis Family Irrevocable Term Trust
DAVFAM Ltd.
DAVFAM II, Ltd.
D.D.I., Inc.
Scott A. Oko, Trustee, Davis Family
Special Trust 2004
SIVAD Investors, LLC

SIVAD Investors II, LLC
Charles P. Stephens

**Accountants**
KPMG LLP

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                               :
                                                    :        Chapter 11
                                                    :
WINN-DIXIE STORES, INC., et al.,                    :        Case No. 05-11063
                                                    :
                Debtors.                            :        (Jointly Administered)
                                                    :
------------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING DEBTORS TO EMPLOY
## THE BLACKSTONE GROUP, L.P. AS FINANCIAL ADVISORS

Upon the Application dated February 21, 2005 (the "Application") of Winn-Dixie

Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order pursuant to Sections

327(a) and 328 of the Bankruptcy Code for authority to employ The Blackstone Group, L.P.,

("Blackstone") as financial advisors in these cases, all as more fully set forth in the Application;

and upon consideration of the declaration of Paul P. Huffard (the "Huffard Declaration"); and the

Court being satisfied, based on the representations made in the Application and in the Huffard

Declaration, that Blackstone does not hold or represent an interest adverse to the Debtors' estates

and is a "disinterested person," as that term is defined under Section 101(14) of the Bankruptcy

Code; and the Court being satisfied that the terms of compensation being sought by Blackstone,

as described in the Engagement Letter attached to the Motion as Exhibit A (the "Letter

Agreement") are reasonable; and upon consideration of the Declaration of Bennett L. Nussbaum

Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions

and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction

to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and

1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District

Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and

consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Application having been provided to (i) the

Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the

Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the

Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and

the relief requested in the Application being in the best interests of the Debtors, their estates, and

creditors; and the Court having reviewed the Application; and the Court having determined that

the legal and factual bases set forth in the Application establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Application is granted on an interim basis until such time as

the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.;

and it is further

ORDERED that any objection to the relief requested by the Application on a final

basis must be filed with the Court and be served upon (i) the Office of the United States Trustee

for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York

10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New

York, New York 10036; (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree

Street, Atlanta, Georgia  30303, and (iv) Paul P. Huffard, The Blackstone Group, L.P., 345 Park

Avenue, New York, New York 10010 so as to be received by _____, 2005 at 5:00 p.m.; and it

is further

ORDERED that the Debtors are authorized to retain Blackstone as their financial advisors, pursuant to Sections 327(a) and 328 of the Bankruptcy Code, as of February 21, 2005, (the "Petition Date") on the terms set forth in the Application, the Letter Agreement, and the Huffard Declaration; and it is further

ORDERED that if any supplemental declarations are filed and served after the entry of this Order, absent any objections filed within twenty (20) days after the filing and service of such supplemental declarations, Blackstone's employment shall continue as authorized pursuant to this Order; and it is further

ORDERED that all compensation and reimbursement of expenses to be paid to Blackstone shall be subject to prior approval of this Court in accordance with the requirements under Sections 330 and 331 of the Bankruptcy Code and any order of this Court establishing procedures for monthly compensation and reimbursement of expenses; provided that the Monthly Fee, as defined in the Letter Agreement, shall not hereafter be subject to challenge except under the standard of review set forth in Section 328(a) of the Bankruptcy Code; and further provided that, notwithstanding the preceding clause, the United States Trustee retains all rights to object to Blackstone's interim and final fee applications (including expense reimbursement) on all grounds, including but not limited to the reasonableness standard provided for in Section 330 of the Bankruptcy Code; and it is further

ORDERED that, notwithstanding the previous paragraph, Blackstone shall not be required to maintain time records or receipts for expenses in amounts less than $75; and it is further

ORDERED that Blackstone is authorized to apply the expense deposit received from the Debtors to pay any expenses relating to services rendered to the Debtors prior to the

Petition Date that remain unpaid and to hold any remaining portion of the expense deposit for application to allowed amounts owed pursuant to Blackstone's final application in these cases; provided, however, that Blackstone shall hold the expense deposit as funds clearly designated for the account of the Debtors; and provided, further, however, that any party in interest may at any time challenge the use and application of the expense deposit by Blackstone; and it is further

ORDERED that all requests of Blackstone for payment of indemnity pursuant to the Letter Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Letter Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Blackstone be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in no event shall Blackstone be indemnified if a Debtor or a representative of the estate asserts a claim for, and a court determines by final order that such claim arose out of, Blackstone's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in the event Blackstone seeks reimbursement for attorneys' fees from the debtors pursuant to the Letter Agreement, the invoices and supporting time records from such attorneys shall be included in Blackstone's own applications (both interim and final), and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under Section 327 of the Bankruptcy Code and without regard to

whether such attorneys' services satisfy Section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED that to the extent this Order is inconsistent with the Letter Agreement, this Order shall govern; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Application is hereby waived.

Dated:  February ___, 2005
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                              :
                                                   :       Chapter 11
                                                   :
WINN-DIXIE STORES, INC., et al.,                   :       Case No. 05-11063
                                                   :
             Debtors.                              :       (Jointly Administered)
                                                   :
-----------------------------------------------------------------x

## FINAL ORDER AUTHORIZING DEBTORS TO EMPLOY
## THE BLACKSTONE GROUP, L.P. AS FINANCIAL ADVISORS

Upon the Application dated February 21, 2005 (the "Application") of Winn-Dixie

Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order pursuant to Sections

327(a) and 328 of the Bankruptcy Code for authority to employ The Blackstone Group, L.P.,

("Blackstone") as financial advisors in these cases, all as more fully set forth in the Application;

and upon consideration of the declaration of Paul P. Huffard (the "Huffard Declaration"); and the

Court being satisfied, based on the representations made in the Application and in Huffard

Declaration, that Blackstone does not hold or represent an interest adverse to the Debtors' estates

and is a "disinterested person," as that term is defined under Section 101(14) of the Bankruptcy

Code; and the Court being satisfied that the terms of compensation being sought by Blackstone,

as described in the Engagement Letter attached to the Motion as Exhibit A (the "Letter

Agreement") are reasonable; and upon consideration of the Declaration of Bennett L. Nussbaum

Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions

and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction

to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and

1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District

Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and

consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Application having been provided to (i) the

Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the

Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the

Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and

the relief requested in the Application being in the best interests of the Debtors, their estates, and

creditors; and the Court having reviewed the Application; and the Court having determined that

the legal and factual bases set forth in the Application establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Application is granted; and it is further

ORDERED that the Debtors are authorized to retain Blackstone as their financial

advisors, pursuant to Sections 327(a) and 328 of the Bankruptcy Code, as of February 21, 2005,

(the "Petition Date") on the terms set forth in the Application, the Letter Agreement, and the

Huffard Declaration; and it is further

ORDERED that if any supplemental declarations are filed and served after the

entry of this Order, absent any objections filed within twenty (20) days after the filing and

service of such supplemental declarations, Blackstone's employment shall continue as authorized

pursuant to this Order; and it is further

ORDERED that all compensation and reimbursement of expenses to be paid to

Blackstone shall be subject to prior approval of this Court in accordance with the requirements

under Sections 330 and 331 of the Bankruptcy Code and any order of this Court establishing

procedures for monthly compensation and reimbursement of expenses; provided that the Monthly Fee, Restructuring Fee, and Transaction Fee, as defined in the Letter Agreement, shall not hereafter be subject to challenge except under the standard of review set forth in Section 328(a) of the Bankruptcy Code; and further provided that, notwithstanding the preceding clause, the United States Trustee retains all rights to object to Blackstone's interim and final fee applications (including expense reimbursement) on all grounds, including but not limited to the reasonableness standard provided for in Section 330 of the Bankruptcy Code; and it is further

ORDERED that, notwithstanding the previous paragraph, Blackstone shall not be required to maintain time records or receipts for expenses in amounts less than $75; and it is further

ORDERED that Blackstone is authorized to apply the expense deposit received from the Debtors to pay any expenses relating to services rendered to the Debtors prior to the Petition Date that remain unpaid and to hold any remaining portion of the expense deposit for application to allowed amounts owed pursuant to Blackstone's final application in these cases; provided, however, that Blackstone shall hold the expense deposit as funds clearly designated for the account of the Debtors; and provided, further, however, that any party in interest may at any time challenge the use and application of the expense deposit by Blackstone; and it is further

ORDERED that all requests of Blackstone for payment of indemnity pursuant to the Letter Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Letter Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in

no event shall Blackstone be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in no event shall Blackstone be indemnified if a Debtor or a representative of the estate asserts a claim for, and a court determines by final order that such claim arose out of, Blackstone's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in the event Blackstone seeks reimbursement for attorneys' fees from the debtors pursuant to the Letter Agreement, the invoices and supporting time records from such attorneys shall be included in Blackstone's own applications (both interim and final), and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under Section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy Section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED that to the extent this Order is inconsistent with the Letter Agreement, this Order shall govern; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the

Debtors file a memorandum of law in support of the Application is hereby waived.

Dated: _____ ___, 2005
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE