SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., et al.,** | : | **Case No. 05-11063** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**MOTION FOR APPROVAL OF**
**INTERIM COMPENSATION PROCEDURES FOR PROFESSIONALS**

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

## Background

**A.      Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.      Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.     The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.     Capital Structure.**

8.     The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.     The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations

under the Credit Agreement in the aggregate amount of approximately $427 million.  The

Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant

to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.    Certain of the Debtors are parties to an Indenture with Wilmington Trust

Company dated December 26, 2000 (as amended and supplemented, the "Indenture").  Pursuant

to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of

Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the

Senior Notes.  The Senior Notes mature in 2008 and require semi-annual interest-only payments

until maturity.  The Senior Notes are unsecured obligations that are *pari passu* with most of the

Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease

obligations (including possible rejection damages), employee obligations, and litigation claims.

12.    Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock

has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN.  All

of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.    Events Leading to the Debtors' Chapter 11 Cases.**

13.    In January 2004, the Debtors announced a series of actions designed to improve

their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of

business strategies and marketing programs, (b) an expense reduction plan designed to achieve a

$100 million annual expense reduction, (c) a market positioning review through which markets

will be identified as either core, and positioned for future investment and growth, or non-core,

and evaluated for sale or closure, (d) an image makeover program targeting approximately 700

stores for facilities improvement, and (e) a process re-engineering initiative that is intended to

enhance organizational effectiveness and company business initiatives.

14.    As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.    Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.    In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.    On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.    The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since

the announcement of the Debtors' financial results on February 10, 2005, the Debtors have

experienced a reduction in vendor and other credit by more than $130 million.  As a result, the

Debtors have been forced to conclude, after consultation with their advisors, that their interests

and the interests of their creditors, employees, and customers will be best served by a

reorganization under Chapter 11 of the Bankruptcy Code.

19.    As part of their restructuring under Chapter 11, the Debtors, led by a chief

executive officer hired in December 2004, intend to implement further asset rationalization and

expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image

and competitive position, with the goal of improving their operations and financial performance

and strengthening their business for the benefit of creditors, customers, employees, and the

communities in which the Debtors operate.

## Relief Requested

20.    By this Motion, the Debtors respectfully request the entry of an order, pursuant to

Sections 105(a) and 331 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure

2016, establishing procedures by which professionals approved under Section 327 of the

Bankruptcy Code by the Court in these cases (the "Professionals") may obtain monthly payment

of a portion of their fees and expenses, subject to review and adjustment in connection with

regular fee applications filed with the Court.

## Basis for Relief

21.    Contemporaneously with the filing of this Motion, the Debtors are seeking

approval of their employment, under Section 327 of the Bankruptcy Code, of Skadden, Arps,

Slate, Meagher & Flom LLP and King & Spalding LLP as their legal counsel in these cases; The

Blackstone Group, L.P. as their restructuring advisors; XRoads Solutions Group, LLC as their

operations restructuring consultants; Kirschner & Legler, P.A. as their special corporate finance

counsel; and Smith, Gambrell & Russell, LLP as their special real estate counsel.[2]  The Debtors

anticipate that they will need to retain other professionals as these cases progress.[3]  In addition,

an official committee of unsecured creditors probably will be appointed in these cases and likely

will retain counsel, and possibly other professionals, to assist it.

22.     The Debtors believe that the relief requested in this Motion will streamline the

professional compensation process and enable the Court and all other parties to monitor the

professional fees incurred in these cases more effectively.

23.     The Debtors propose the following procedures for the interim compensation of

professionals:

(a)     On or before the twentieth (20th) day after the end of a month for which
compensation is sought, each Professional seeking compensation shall serve a
monthly statement (the "Monthly Statement") by hand or overnight delivery on
(i) the Office of the United States Trustee for the Southern District of New York,
33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D.J. Baker,
Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York,
New York 10036; (iii) Sarah Robinson Borders, King & Spalding LLP, 191
Peachtree Street, Atlanta, Georgia 30303; (iv) counsel for any official committee
appointed in these cases; and (v) counsel for the agent for the Debtors' post-
petition secured lenders.  The Monthly Statement need not be filed with the Court,
and a courtesy copy need not be delivered to the presiding bankruptcy judge's
chambers, as this Motion does not alter the requirement for any fee applications in
accordance with Sections 330 and 331 of the Bankruptcy Code.

---

[2]     In addition to these professionals, the Debtors seek the retention of Logan &
Company, Inc. ("Logan"), pursuant to 28 U.S.C. § 156, to serve as claims, noticing, and
balloting agent in these cases.  Because Logan will not be retained under Section 327 of the
Bankruptcy Code, this Motion will not apply to its compensation.

[3]     The Debtors have filed a Motion for Approval of Retention and Compensation of
Professionals Used in the Ordinary Course of Business.  Under the terms of the proposed order
submitted with that motion, certain professionals will be required to seek approval of their fees
only if they exceed certain fee caps.  In that case, the Debtors propose that those professionals be
governed by the procedures outlined in this Motion.

(b)     Each Monthly Statement shall contain a list of individuals and their respective titles who provided services during the statement period, their respective billing rates, the aggregate hours spent by each individual, contemporaneously maintained time entries for each individual in increments of tenths of an hour (except in the case of XRoads Solutions Group, LLC, which may maintain time entries in half-hour increments), and a reasonably detailed breakdown of disbursements incurred.  No professional should seek reimbursement of an expense that would not be permitted under General Order M-104, incorporating the Guidelines for Fees and Disbursements for Professionals in this District.

(c)     In the event that an interested party has an objection to the compensation or reimbursement sought in a particular Monthly Statement, he or she shall, within twenty (20) days after service of the Monthly Statement, serve upon the professional whose statement is objected to and the other persons designated in paragraph (a) above a written "Notice of Objection to Fee Statement," setting forth the nature of the objection and the amount of fees or expenses at issue.

(d)     After the expiration of the twenty-day period described above, the Debtors shall promptly pay eighty percent (80%) of the fees and one hundred percent (100%) of the expenses identified in each Monthly Statement to which no objection has been served.

(e)     If the Debtors receive an objection to a particular Monthly Statement, they shall withhold payment of that portion of the Monthly Statement to which the objection is directed and shall promptly pay the remainder of the fees and expenses in the percentages set forth in the preceding paragraph.

(f)     If any objecting party resolves a dispute with a Professional, the objecting party (or the Debtors, with the consent of the objecting party) shall serve written notice on the persons designated in paragraph (a) above that the objection is withdrawn and shall describe the terms of the resolution.  The Debtors shall promptly pay that portion of the Monthly Statement at issue that is no longer subject to an objection in the percentages set forth in paragraph (d) above.

(g)     Any objection that is not resolved by the parties shall be preserved and presented to the Court at the next interim or final fee application hearing.

(h)     The service or lack of an objection in accordance with paragraph (c) above shall not prejudice the objecting party's right to object to any fee application made to the Court on any ground, whether raised in the objection or not.  Furthermore, the decision by any party not to object to a Monthly Statement shall not be a waiver of any kind or prejudice that party's right to objection to any fee application subsequently made to the Court.

(i)     Approximately every 120 days, but no more than every 180 days, each Professional shall serve and file with the Court, pursuant to Sections 330 and 331 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016, an

application for interim or final approval and allowance of compensation and reimbursement of expenses, including compensation previously paid by the Debtors on the basis of a Monthly Statement. The professional shall serve any fee application on the parties listed in paragraph (a), above, and shall serve a notice of hearing on the fee application on all parties on the Master Service List.

(j)    Any Professional that fails to file a timely application seeking approval of compensation and expenses previously paid on the basis of a Monthly Statement shall be ineligible to receive further monthly payments of compensation or reimbursement of expenses as provided herein absent a further order of the Court.

(k)    Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein shall have any effect on this Court's interim or final allowance of compensation or reimbursement of expenses of any Professional.

(l)    Counsel for any official committee appointed in these cases may, in accordance with the foregoing procedures, collect and submit statements of expenses allowable under Section 503(b)(3)(F) of the Bankruptcy Code, with supporting vouchers, from members of such committee.

24.    Section 331 of the Bankruptcy Code, which generally permits professionals to file fee applications every 120 days, expressly contemplates that professionals may be compensated more frequently "if the court permits." The reality is that "when counsel must wait an extended period for payment, counsel is essentially compelled to finance the reorganization. This result is improper and may discourage qualified practitioners from participating in bankruptcy cases; a result that is clearly contrary to Congressional intent." In re Knudsen Corp., 84 B.R. 668, 672 (9th Cir. B.A.P. 1988) (note omitted). Instead, "Congress relieved retained professionals of the burden of financing lengthy bankruptcy proceedings by permitting the professionals to submit interim requests for compensation." In re Child World, 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995) (internal marks omitted).

25.    In large and complex Chapter 11 cases, courts routinely establish procedures for interim compensation. See, e.g., In re WorldCom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. Aug. 13, 2002); In re Global Crossing, Ltd., Case No. 02-40187 (Bankr. S.D.N.Y. Jan. 28,

2002); In re Kmart Inc., Case No. 02-02474 (Bankr. N.D. Ill. Jan. 25, 2002); In re The Grand

Union Co., Case No. 00-39613 (Bankr. D.N.J. Oct. 3, 2000); In re Mariner Post-Acute Network,

257 B.R. 723 (Bankr. D. Del. 2000).

26.     In addition to minimizing the financial hardship on the Professionals, who must

invest significant resources in these cases, monthly compensation procedures will enable the

Debtors to monitor the costs of administration of their estates, forecast level cash flows, and

implement efficient cash management procedures.  Moreover, these procedures will allow the

Court and parties in interest, including the United States Trustee, to ensure the reasonableness

and necessity of compensation sought in these cases.

27.     For the foregoing reasons, the Debtors believe that granting the relief requested

herein is appropriate and in the best interests of their estates.

### Notice

28.     Notice of this Motion has been provided to the Office of the United States

Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the

indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured

creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice

is necessary.

### Waiver of Memorandum of Law

29.     Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New

York, because there are no novel issues of law presented herein, the Debtors respectfully request

that the Court waive the requirement that the Debtors file a memorandum of law in support of

this Motion.

WHEREFORE the Debtors respectfully request that this Court:

(a)     enter an order establishing procedures by which professionals approved under

        Section 327 of the Bankruptcy Code may obtain monthly payments; and

(b)     grant the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
        New York, New York


                                    /s/     D. J. Baker
                                    D. J. Baker (DB 0085)
                                    Sally McDonald Henry (SH 0839)
                                    Rosalie Walker Gray
                                    SKADDEN, ARPS, SLATE, MEAGHER
                                      & FLOM LLP
                                    Four Times Square
                                    New York, New York 10036
                                    Telephone:  (212) 735-3000
                                    Facsimile:   (917) 777-2150

                                    -and-

                                    Sarah Robinson Borders
                                    Brian C. Walsh
                                    KING & SPALDING LLP
                                    191 Peachtree Street
                                    Atlanta, Georgia  30303
                                    Telephone:  (404) 572-4600
                                    Facsimile:   (404) 572-5100

                                    PROPOSED ATTORNEYS FOR THE DEBTORS

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                            :
                                                 :        Chapter 11 Case No.
                                                 :
WINN-DIXIE STORES, INC., <u>et al.</u>,          :        Case No. 05-11063
                                                 :
              Debtors.                           :        (Jointly Administered)
                                                 :
-----------------------------------------------------------------x

**ORDER APPROVING**
**<u>INTERIM COMPENSATION PROCEDURES FOR PROFESSIONALS</u>**

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and

its debtor affiliates (collectively, the "Debtors") for an order establishing procedures for interim

compensation of professionals, all as more fully set forth in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District

Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided to (i) the Office of the

United States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured

lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50)

largest unsecured creditors, and no other or further notice being required; and the relief requested

in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court

having reviewed the Motion; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that except as may otherwise be provided in an order of this Court

authorizing the retention of a specific professional, any professional whose retention is approved

by this Court pursuant to Section 327 of the Bankruptcy Code (a "Professional") may seek

monthly compensation in accordance with the following procedures:

(a)     On or before the twentieth (20th) day after the end of a month for which compensation is sought, each Professional seeking compensation shall serve a monthly statement (the "Monthly Statement") by hand or overnight delivery on (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia 30303; (iv) counsel for any official committee appointed in these cases; and (v) counsel for the agent for the Debtors' post-petition secured lenders.  The Monthly Statement need not be filed with the Court, and a courtesy copy need not be delivered to the presiding bankruptcy judge's chambers.

(b)     Each Monthly Statement shall contain a list of individuals and their respective titles who provided services during the statement period, their respective billing rates, the aggregate hours spent by each individual, contemporaneously maintained time entries for each individual in increments of tenths of an hour (except in the case of XRoads Solutions Group, LLC, which may maintain time entries in half-hour increments), and a reasonably detailed breakdown of disbursements incurred.  No professional should seek reimbursement of an expense that would not be permitted under General Order M-104, incorporating the Guidelines for Fees and Disbursements for Professionals in this District.

(c)     In the event that an interested party has an objection to the compensation or reimbursement sought in a particular Monthly Statement, he or she shall, within twenty (20) days after service of the Monthly Statement, serve upon the professional whose statement is objected to and the other persons designated in paragraph (a) above a written "Notice of Objection to Fee Statement," setting forth the nature of the objection and the amount of fees or expenses at issue.

(d)     After the expiration of the twenty-day period described above, the Debtors shall promptly pay eighty percent (80%) of the fees and one hundred percent (100%) of

the expenses identified in each Monthly Statement to which no objection has been served.

(e)     If the Debtors receive an objection to a particular Monthly Statement, they shall withhold payment of that portion of the Monthly Statement to which the objection is directed and shall promptly pay the remainder of the fees and expenses in the percentages set forth in the preceding paragraph.

(f)     If any objecting party resolves a dispute with a Professional, the objecting party (or the Debtors, with the consent of the objecting party) shall serve written notice on the persons designated in paragraph (a) above that the objection is withdrawn and shall describe the terms of the resolution.  The Debtors shall promptly pay that portion of the Monthly Statement at issue that is no longer subject to an objection in the percentages set forth in paragraph (d) above.

(g)     Any objection that is not resolved by the parties shall be preserved and presented to the Court at the next interim or final fee application hearing.

(h)     The service or lack of an objection in accordance with paragraph (c) above shall not prejudice the objecting party's right to object to any fee application made to the Court on any ground, whether raised in the objection or not.  Furthermore, the decision by any party not to object to a Monthly Statement shall not be a waiver of any kind or prejudice that party's right to objection to any fee application subsequently made to the Court.

(i)     Approximately every 120 days, but no more than every 180 days, each Professional shall serve and file with the Court, pursuant to Sections 330 and 331 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016, an application for interim or final approval and allowance of compensation and reimbursement of expenses, including compensation previously paid by the Debtors on the basis of a Monthly Statement.  The professional shall serve any fee application on the parties listed in paragraph (a), above, and shall serve a notice of hearing on the fee application on all parties on the Master Service List.

(j)     Any Professional that fails to file a timely application seeking approval of compensation and expenses previously paid on the basis of a Monthly Statement shall be ineligible to receive further monthly payments of compensation or reimbursement of expenses as provided herein absent a further order of the Court.

(k)     Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein shall have any effect on this Court's interim or final allowance of compensation or reimbursement of expenses of any Professional.

(l)     Counsel for any official committee appointed in these cases may, in accordance with the foregoing procedures, collect and submit statements of expenses allowable under Section 503(b)(3)(F) of the Bankruptcy Code, with supporting vouchers, from members of such committee.

and it is further

ORDERED that the provisions of this Order shall not apply to any professional retained pursuant to any order authorizing the employment and compensation of professionals in the ordinary course of business entered in these cases; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____ ___, 2005
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE