UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Winn-Dixie Stores, Inc., <u>et al.</u> | ) | Case No. 05-11063 (RDD) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**EMERGENCY ORDER AUTHORIZING USE OF
CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND
<u>GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363</u>**

THIS MATTER came before this Court on February 22, 2005, upon the Motion, filed on

February 22, 2005 ("Motion"), of Winn-Dixie Stores, Inc., Debtor and Debtor-in-Possession ("Winn-

Dixie"), Winn-Dixie Supermarkets, Inc., Debtor and Debtor-in-Possession ("Supermarkets"), Winn-

Dixie Montgomery, Inc., Debtor and Debtor-in-Possession ("Montgomery"), Winn-Dixie Procurement,

Inc., Debtor and Debtor-in-Possession ("Procurement"), Winn-Dixie Raleigh, Inc., Debtor and Debtor-

in-Possession ("Raleigh") and Dixie Stores, Inc., Debtor and Debtor-in-Possession ("Dixie", and

together with Winn-Dixie, Supermarkets, Montgomery, Procurement and Raleigh, each individually a

"Borrower", and collectively "Borrowers"), Astor Products, Inc., Debtor and Debtor-in-Possession

("Astor"), Crackin' Good, Inc., Debtor and Debtor-in-Possession ("Crackin'"), Deep South Products,

Inc., Debtor and Debtor-in-Possession ("Deep South Products"), Dixie Packers, Inc., Debtor and

Debtor-in-Possession ("Dixie Packers"), Economy Wholesale Distributors, Inc., Debtor and Debtor-in-

503020.3

Possession ("Economy"), Winn-Dixie Logistics, Inc., Debtor and Debtor-in-Possession ("Logistics"),

Deep South Distributors, Inc., Debtor and Debtor-in-Possession ("Distributors"), Dixie Darling Bakers,

Inc., Debtor and Debtor-in-Possession ("Bakers"), Dixie-Home Stores, Inc., Debtor and Debtor-in-

Possession ("Home"), Dixie Spirits, Inc., Debtor and Debtor-in-Possession ("Spirits"), Foodway

Stores, Inc., Debtor and Debtor-in-Possession ("Foodway"), Kwik Chek Supermarkets, Inc., Debtor

and Debtor-in-Possession ("Kwik"), Sunbelt Products, Inc., Debtor and Debtor-in-Possession

("Sunbelt"), Sundown Sales, Inc., Debtor and Debtor-in-Possession ("Sundown"), Superior Food

Company, Debtor and Debtor-in-Possession ("Superior"), Table Supply Food Stores Co., Inc.,

Debtor and Debtor-in-Possession ("Table Supply"), WD Brand Prestige Steaks, Inc., Debtor and

Debtor-in-Possession ("WD Steaks"), Winn-Dixie Handyman, Inc., Debtor and Debtor-in-Possession

("Handyman", and together with Borrowers, Astor, Crackin', Deep South Products, Dixie Packers,

Economy, Logistics, Distributors, Bakers, Home, Spirits, Foodway, Kwik, Sunbelt, Sundown,

Superior, Table Supply, and WD Steaks, each individually a "Debtor" and collectively, the "Debtors"),

pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001

and 9014 of the Federal Rules of Bankruptcy Procedure for Interim and Final Orders (I) Authorizing

Debtors to Obtain Post-Petition Financing and Utilize Cash Collateral, (II) Granting Adequate

Protection to Pre-Petition Lenders, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final

Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) (the "DIP Financing Motion"); and pending an

order of this Court approving the Motion, the Debtors have requested that this Court authorize,

pursuant to Bankruptcy Code §363, the Debtors to use Cash Collateral (as defined below) and,

pursuant to Bankruptcy Code §§ 361 and 363, provide adequate protection to Wachovia Bank

National Association, as Administrative Agent and Collateral Agent for itself ("Pre-Petition Agent") and

the other financial institutions from time to time parties to the Pre-Petition Credit Agreement (as

503020.3

hereinafter defined) (collectively, "Pre-Petition Lenders"; and together with Agent, collectively referred to herein as "Pre-Petition Lender") with respect to any diminution in the value of the Pre-Petition Lender's interests in the Collateral (as defined below), including, without limitation, as may result from the use of Cash Collateral, and that notice procedures in respect of a final hearing be established to consider the entry of a final order authorizing the Debtors' use of Cash Collateral and providing adequate protection to the Pre-Petition Lender in connection therewith:

**IT APPEARING THAT:**

A.    Petition.  On February 21, 2005 (the "Petition Date"), each of the Debtors filed voluntary petitions under Chapter 11, Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Each Debtor is continuing in the management and possession of its business and properties as a debtor-in- possession pursuant to Sections 1107 and 1108 of the Code.  This Court has jurisdiction over these cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

B.    Jurisdiction and Venue.  Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.    Pre-Petition Financing Arrangements.  Prior to the commencement of the Debtors' Chapter 11 cases, Pre-Petition Lender made loans and advances and agreed to provide other credit accommodations to the Borrowers pursuant to the terms and conditions set forth in various agreements, documents and instruments, including, without limitation, the Second Amended and Restated Credit Agreement, dated as of June 29, 2004, by and among Borrowers and the Pre-Petition Lender (as the same has been amended, modified, restated, renewed, replaced and/or supplemented from time to time through to the Petition Date, the "Pre-Petition Credit Agreement") which is incorporated herein by reference; other credit, guarantee and security agreements executed and/or delivered by Debtors in favor of Pre-Petition Lender; Uniform Commercial Code ("UCC") filings; and all other agreements, documents and instruments at any time executed and/or delivered in connection with or related to the

503020.3

- 3 -

Pre-Petition Credit Agreement (as all of the same have been amended, modified, restated, renewed, replaced and/or supplemented from time to time through to the Petition Date, the "Pre-Petition Loan Documents").

D.    Pre-Petition Lender Debt.  The Debtors represent that certain of the Debtors are indebted to the Pre-Petition Lender in respect of all Obligations (as such term is defined in the Pre-Petition Credit Agreement) as of February 18, 2005 in the aggregate principal amount of not less than $ 427,005,000 (the "Pre-Petition Lender Debt"), consisting of , among other things, (i) Loans (as defined in the Pre-Petition Credit Agreement") made pursuant to the Pre-Petition Loan Documents in the aggregate principal amount of not less than $265,000,000, plus all interest, fees, costs and expenses (including, without limitation, all attorneys' fees and legal expenses of Pre-Petition Lender) and all charges accrued and accruing thereon and/or chargeable with respect thereto, and (ii) Reimbursement Obligations (as defined in the Pre-Petition Credit Agreement) in respect of Letters of Credit in an aggregate amount of not less than $162,005,000, plus all interest, fees, costs, expenses (including, without limitation, all attorneys' fees and legal expenses of Pre-Petition Lender) and all charges accrued and accruing thereon or chargeable with respect thereto.

E.    Pre-Petition Lender Collateral.  The Debtors represent that as of the Petition Date, the Pre-Petition Lender Debt is fully secured pursuant to the Pre-Petition Loan Documents by perfected, valid, binding and non-avoidable first priority security interests and liens granted by Debtors to or for the benefit of the Pre-Petition Lender upon all of the Collateral (as defined in the Pre-Petition Credit Agreement) existing as of the time immediately prior to the filing of the petitions for relief herein, and the post-petition proceeds and products thereof (collectively, together with any other property of, among other things, each Debtors' estate in which a security interest or lien has been granted to or for the benefit of Pre-Petition Lender immediately prior to the filing of the petitions for relief herein, the "Pre-Petition Lender Collateral").  The Debtors acknowledge and agree that all of Borrowers' cash on hand, together with all proceeds and products of the Collateral, are all, as of the Petition Date, subject to the Pre-Petition Lenders' liens and security interests and thus constitute "Cash Collateral" within the meaning of the Bankruptcy Code Section 363(a).

503020.3

F.      Pre-Petition Lender's Consent to Use of Cash Collateral.  Pursuant to

Section 363(c)(2) of the Bankruptcy Code, Debtors are unable to use Cash Collateral without the Pre-

Petition Lender's consent or this Court's authorization after notice and a hearing.  Pre-Petition Lender is

willing to allow Debtors to use the Cash Collateral, but only on the terms and conditions specified in this

Order.

G.      Pending the entry of an order approving the DIP Financing Motion, the Debtors do not

have sufficient available sources of working capital and financing to carry on the operation of their

businesses without the use of Cash Collateral.  In addition, the Debtors' critical need for use of Cash

Collateral is immediate.  In the absence of the use of Cash Collateral, serious and irreparable harm to

the Debtors and their estates will occur.

H.      Notice of the Emergency Hearing and the relief requested in the Motion complies with

the requirements of Bankruptcy Code §§ 102(1) and 363 and Bankruptcy Rules 2002 and 4001(b).

I.      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy

Rules 4001(b)(2).  The permission granted herein to use Cash Collateral is necessary to avoid

immediate and irreparable harm to the Debtors.  This Court concludes that the entry of this Order is in

the best interest of the Debtors' estates and creditors and is fair and reasonable.

J.      An official committee of unsecured creditors (the "Committee") has not yet been

appointed in these cases pursuant to Section 1102 of the Bankruptcy Code.

Based upon the foregoing findings and conclusions, and upon the record made before this Court

at the Emergency Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.      Subject to the provisions contained herein, Pre-Petition Lender hereby consents to the

Debtors' use of, and the Debtors are hereby authorized to use effective immediately following the

commencement of the Debtors' Chapter 11 cases, Cash Collateral on an emergency basis during the

period commencing on the Petition Date, through and including 5:00 p.m., eastern standard time,

February 23, 2005 (the "Cash Collateral Period") in an aggregate amount not to exceed, at any time,

$100,000,000.00, inclusive of $100,000,000.00 in Cash Collateral which the Debtors have used to

meet payroll obligations and other liabilities paid immediately following the filings of the Chapter 11

503020.3

petitions for relief herein, thereby leaving up to $100,000,000.00 in Cash Collateral authorized to be used during the Cash Collateral Period (the "Cash Collateral Limit").  The Cash Collateral may be used solely for the payment of payroll and other critical operating expenses.

2.      The Debtors' right to use Cash Collateral in accordance with this Order shall terminate immediately upon the earlier of (i) February 23, 2005 at 5:00 p.m. eastern standard time, (ii) the entry of an order of this Court terminating such right, or (iii) upon the entry of an order dismissing any of the Debtors' Chapter 11 cases or converting any of Debtors' cases to a case under Chapter 7 of the Bankruptcy Code.  Notwithstanding the foregoing, the obligations of the Debtors and the rights, claims, security interests, liens and priorities of Pre-Petition Lender with respect to all transactions which occurred prior to the termination of Debtor's right to use Cash Collateral in accordance with this Order shall remain unimpaired and unaffected by any such termination and shall survive any such termination. The Debtors and Pre-Petition Lender may mutually agree in writing to an extension of the Cash Collateral Period without further order of the Court, but may not increase the amount of Cash Collateral to be used in accordance with this Order in excess of the Cash Collateral Limit without further order of the Court.

3.      As adequate protection for any diminution in the value of the Collateral, including as a result from the use of Cash Collateral pursuant to this Order, Pre-Petition Lender is hereby granted, for the ratable benefit of Lenders, under Bankruptcy Code Sections 361, 362 and 363 as security to the extent of any diminution in the value of the Collateral, including, without limitation, as a result of the use by Debtors of any Cash Collateral on and after the Petition Date, valid, binding, enforceable, non-avoidable and perfected replacement liens on and security interests in (collectively, the "Replacement Liens") all currently owned and hereafter acquired assets or properties (whether pre-petition or post-petition) of each Debtor and its estate (collectively, the "Collateral").  Pre-Petition Lender's Replacement Liens in the Collateral are subject only to (A) the liens and security interests permitted under the Pre-Petition Credit Agreement; provided that such liens and security interests are valid, perfected, unavoidable and subsisting liens or security interests in such property of record as of the Petition Date; (B) all liens, claims and security interest granted to the post-petition secured lenders as

503020.3

- 6 -

requested in the DIP Financing Order; and (C) and any fees payable to the Clerk of the Bankruptcy Court and the United States Trustee.

4.      The Replacement Liens and all claims, rights, interests, administrative claims and other protections granted to or for the benefit of Pre-Petition Lender pursuant to this Order shall constitute valid, enforceable, unavoidable and, to the extent of the Replacement Liens, duly perfected security interests and liens.  Pre-Petition Lender shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by any of the Debtors to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens.

5.      Except with respect to the post-petition liens, rights, claims, interests, protections and priorities granted to or for the benefit of Pre-Petition Lender pursuant to this Order (which post-petition liens, rights, claims, interests, protections and priorities are hereby deemed valid, binding, enforceable, non-avoidable, and duly perfected and not subject to challenge or dispute) all rights of the Committee to investigate and pursue any claims against Pre-Petition Lender with respect to the Pre-Petition Lender's pre-petition liens and security interest in the Pre-Petition Collateral and the pre-petition Obligations owing by Debtors to the Pre-Petition Lender are hereby fully reserved.

6.      The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in any of the Debtors' cases; (b) converting any of Debtors' Chapter 11 cases to a Chapter 7 case; or (c) dismissing any of the Debtors' cases, and the terms and provisions of this Order as well as the Replacement Liens granted pursuant to this Order shall continue in full force and effect notwithstanding the entry of such order.  The provisions of this Order shall be binding upon and inure to the benefit of Pre-Petition Lender, the Debtors, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the cases as a legal representative of any of the Debtors or the Debtors' estates.

7.      The use of Cash Collateral pursuant to the terms and conditions this Order shall not be deemed to be a consent by Pre-Petition Lender to any other or further use of Cash Collateral.

503020.3

8.      The provisions of this Order shall be effective immediately upon entry of this Order by
the Court pursuant to Bankruptcy Rules 6004(g) and 7062.

Dated:  New York, New York
            February 22, 2005


                                        _____/s/ Stuart M. Bernstein ___
                                        United States Bankruptcy Judge

503020.3