UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Winn-Dixie Stores, Inc., <u>et al.</u> | ) | Case No. 05-11063 (RDD) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |

**INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364(c) AND 364(d) OF THE BANKRUPTCY CODE AND RULES 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING ON A SUPERPRIORITY PRIMING LIEN BASIS AND MODIFYING THE AUTOMATIC STAY, (II) AUTHORIZING DEBTORS TO USE PRE-PETITION SECURED LENDERS' CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (III)  AUTHORIZING DEBTORS TO PAY IN FULL ALL CLAIMS OF DEBTORS' PRE-PETITION SECURED LENDERS, AND (IV) PRESCRIBING FORM AND MANNER OF NOTICE AND TIME FOR FINAL HEARING**

THIS MATTER came before this Court on February 22, 2005, upon the Motion

("Motion") of Winn-Dixie Stores, Inc., Debtor and Debtor-in-Possession ("Winn-Dixie"), Winn-

Dixie Supermarkets, Inc., Debtor and Debtor-in-Possession ("Supermarkets"), Winn-Dixie

Montgomery, Inc., Debtor and Debtor-in-Possession ("Montgomery"), Winn-Dixie Procurement,

Inc., Debtor and Debtor-in-Possession ("Procurement"), Winn-Dixie Raleigh, Inc., Debtor and

Debtor-in-Possession ("Raleigh") and Dixie Stores, Inc., Debtor and Debtor-in-Possession

("Dixie", and together with Winn-Dixie, Supermarkets, Montgomery, Procurement and Raleigh,

each individually a "Borrower", and collectively "Borrowers"), Astor Products, Inc., Debtor and

Debtor-in-Possession ("Astor"), Crackin' Good, Inc., Debtor and Debtor-in-Possession

("Crackin'"), Deep South Products, Inc., Debtor and Debtor-in-Possession ("Deep South

Products"), Dixie Packers, Inc., Debtor and Debtor-in-Possession ("Dixie Packers"), Economy

Wholesale Distributors, Inc., Debtor and Debtor-in-Possession ("Economy"), Winn-Dixie

Logistics, Inc., Debtor and Debtor-in-Possession ("Logistics"), Deep South Distributors, Inc.,

Debtor and Debtor-in-Possession ("Distributors"), Dixie Darling Bakers, Inc., Debtor and

Debtor-in-Possession ("Bakers"), Dixie-Home Stores, Inc., Debtor and Debtor-in-Possession

("Home"), Dixie Spirits, Inc., Debtor and Debtor-in-Possession ("Spirits"), Foodway Stores,

Inc., Debtor and Debtor-in-Possession ("Foodway"), Kwik Chek Supermarkets, Inc., Debtor and

Debtor-in-Possession ("Kwik"), Sunbelt Products, Inc., Debtor and Debtor-in-Possession

("Sunbelt"), Sundown Sales, Inc., Debtor and Debtor-in-Possession ("Sundown"), Superior Food

Company, Debtor and Debtor-in-Possession ("Superior"), Table Supply Food Stores Co., Inc.,

Debtor and Debtor-in-Possession ("Table Supply"), WD Brand Prestige Steaks, Inc., Debtor and

Debtor-in-Possession ("WD Steaks"), Winn-Dixie Handyman, Inc., Debtor and Debtor-in-

Possession ("Handyman", and together with Borrowers, Astor, Crackin', Deep South Products,

Dixie Packers, Economy, Logistics, Distributors, Bakers, Home, Spirits, Foodway, Kwik,

Sunbelt, Sundown, Superior, Table Supply, and WD Steaks, each individually a "Debtor" and

collectively, the "Debtors"), filed on February 22, 2005, seeking, inter alia:

      a.   authority, pursuant to Sections 105, 364(c)(1), 364(c)(2), 364(c)(3) and

364(d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code")

and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"),

for Debtors to obtain post-petition secured loans, advances and other financial accommodations

from Wachovia Bank National Association, as Administrative Agent and Collateral Agent for itself ("Agent") and the other financial institutions from time to time parties to the Credit Agreement (as hereinafter defined) (collectively, "Lenders"; and together with Agent, collectively referred to herein as "Lender"), all in accordance with the terms and conditions set forth in the Credit Agreement, dated as of the date hereof (as the same now exists or may hereafter be amended, modified, ratified, extended, renewed, restated or replaced, the "Credit Agreement", a copy of which is included in the Exhibit Supplement to the Motion (the "Exhibit Supplement") and is incorporated herein by reference), by and among Debtors and Lender, and the other Loan Documents (as defined in the Credit Agreement)[1], secured by senior (subject to certain liens and claims set forth below), perfected, valid, enforceable and non-avoidable security interests in and liens upon all of the Collateral (as hereinafter defined);

b.    authority, pursuant to Sections 105, 364(d)(1) and 364(d)(2) of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, for Debtors to grant to Lender, pending the release and termination and/or assignment of the Pre-Petition Lender Junior Liens pursuant to a final, non-appealable Final Financing Order (as hereinafter defined), priming liens on and security interests in (subject to certain liens and claims as set forth in paragraph 8 of this Interim Order) all Pre-Petition Lender Collateral (as hereinafter defined) and in any other assets or properties of the Debtors and their estates, senior and superior in priority in all respects to any and all liens and security interests of the Pre-Petition Lender (as hereinafter defined) in the Pre-Petition Lender Collateral and such other assets and properties (the "Priming Liens"), and in connection with such Priming Liens, provide adequate protection to Pre-Petition Lender by preserving and continuing, on a junior and subordinate basis, its liens on and security interests in

---

[1]    Defined terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Credit Agreement.

the Collateral to secure any Contingent Pre-Petition Lender Debt (as hereinafter defined) in accordance with the terms and conditions contained in this Interim Order (as hereinafter defined);

      c.   authority for Debtors to enter into and comply in all respects with the Credit Agreement and all other Loan Documents, and approval of all of the terms and conditions of the Credit Agreement and all other Loan Documents;

      d.   the granting to Lender superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Obligations (as defined in the Credit Agreement);

      e.   authority, pursuant to Sections 361 and 363 of the Bankruptcy Code, for the Debtors to use cash collateral of the Pre-Petition Lender pursuant to the terms and conditions set forth herein;

      f.   authority, upon the entry of the Interim Order (as hereinafter defined), to immediately repay in full the Pre-Petition Lender Debt (as hereinafter defined) owing by Debtors to Wachovia Bank National Association, in its capacity as Administrative Agent and Collateral Agent for itself ("Pre-Petition Lender Agent") and certain other financial institutions that are parties from time to time to the Pre-Petition Credit Agreement (as hereinafter defined) (the "Pre-Petition Lenders", and together with the Pre-Petition Lender Agent, collectively referred to herein as the "Pre-Petition Lender"), and the simultaneous subordination of the Pre-Petition Lender's liens, claims and encumbrances and the agreement of Pre-Petition Lender to release and terminate, subject to paragraph 6 of this Interim Order, such liens, claims and encumbrances on the date that the Final Financing Order becomes final and non-appealable or earlier as Pre-

Petition Lender may agree, all in accordance with the terms and conditions contained in this Interim Order;

      g.   a preliminary hearing on the Motion to consider entry of an order pursuant to Bankruptcy Rule 4001 (this "Interim Order") authorizing the Borrowers, inter alia, to borrow up to an aggregate amount of $600,000,000 (which amount is inclusive of the repayment in full of the Pre-Petition Lender Debt) in Loans and Letters of Credit (as each term is defined in the Credit Agreement) pursuant to the terms and conditions set forth in the Credit Agreement and the Loan Documents during the period commencing upon the entry of this Interim Order and ending upon the entry of a Final Financing Order (as hereinafter defined); and

      h.   the setting of the date of Final Hearing on the Motion.

      Due and appropriate notice of the Motion, the relief requested therein, the material terms of this Interim Order and the Interim Hearing (as defined below) has been served by the Debtors, whether by telecopy, e-mail, overnight courier or hand delivery, on the following parties:  (1) the Office of the United States Trustee; (2) Agent, (3) Pre-Petition Lender Agent; (4) the Internal Revenue Service ("IRS"); (5) Wilmington Trust Company, in its capacity as Trustee for Winn-Dixie's 8? % Senior Unsecured Notes due 2008 issued for gross cash proceeds of $300,000,000 on March 29, 2001; (6) Debtors' 50 largest unsecured creditors on a consolidated basis; (7) those other creditors known to the Debtors who may have liens against or interests in any of the Debtors' assets and properties, which are more particularly described on Exhibit "A" attached to the Motion (all parties referred to in the foregoing clauses (1) through (7) are collectively referred to as the "Interim Noticed Parties").

The interim hearing on the Motion was held by this Court on February 22, 2005 (the "Interim Hearing").

Upon the record made by the Debtors at the Interim Hearing, including the Motion and the filings and pleadings in the Debtors' Chapter 11 cases, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition.   On February 21, 2005 (the "Petition Date"), each of the Debtors filed voluntary petitions under Chapter 11, Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Each Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Code.

B.    Jurisdiction and Venue.  Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.    Notice.  Sufficient and adequate notice of this Interim Order has been provided based upon the notice sent to the Interim Noticed Parties, the consent to the Motion as approved by this Interim Order by Lender and the Pre-Petition Lender, and no other party herein has filed an objection to the Motion, pursuant to Bankruptcy Rules 4001(c) and (d) and 9014 and Section 102(1) of the Bankruptcy Code as required by Sections 364(c) and 364(d) of the

Bankruptcy Code, and no further notice of, or hearing on, the Motion or this Interim Order is necessary or required.

    D.  <u>Debtors' and Pre-Petition Lender's Acknowledgements and Agreements</u>. Without prejudice to the rights of any other party-in-interest in the Debtors' Chapter 11 cases (but subject to the limitations with respect to such rights contained in paragraph 15(e) of this Interim Order), the Debtors and the Pre-Petition Lender admit, stipulate, acknowledge and agree that:

    (i) *Pre-Petition Financing Arrangements.* Prior to the commencement of the Debtors' Chapter 11 cases, Pre-Petition Lender made loans and advances and agreed to provide other credit accommodations to the Debtors pursuant to the terms and conditions set forth in various agreements, documents and instruments, including, without limitation, the Second Amended and Restated Credit Agreement, dated as of June 29, 2004, by and among Borrowers and the Pre-Petition Lender (as the same has been amended, modified, restated, renewed, replaced and/or supplemented from time to time through to the Petition Date, the "Pre-Petition Credit Agreement"), which is incorporated herein by reference; other credit, guarantee and security agreements executed and/or delivered by Debtors in favor of Pre-Petition Lender (copies of which are annexed to the Exhibit Supplement and incorporated herein by reference); Uniform Commercial Code ("UCC") filings; and all other agreements, documents and instruments at any time executed and/or delivered in connection with or related to the Pre-Petition Credit Agreement (as all of the same have been amended, modified, restated, renewed, replaced and/or supplemented from time to time through to the Petition Date, the "Pre-Petition Loan Documents").

502585.7           7

(ii)    *Pre-Petition Lender Debt*.  The Debtors are indebted to the Pre-Petition Lender in respect of all outstanding Obligations (as defined in the Pre-Petition Credit Agreement) as of February 18, 2005 in the aggregate principal amount of not less than $427,005,000 (the "Pre-Petition Lender Debt"), consisting of, among other things, (i) Loans (as defined in the Pre-Petition Credit Agreement) made pursuant to the Pre-Petition Loan Documents in the aggregate principal amount of not less than $265,000,000, plus all interest, fees, costs and expenses (including, without limitation, all attorneys' fees and legal expenses of Pre-Petition Lender) and all charges accrued and accruing thereon and/or chargeable with respect thereto, and (ii) Reimbursement Obligations (as defined in the Pre-Petition Credit Agreement) in respect of Letters of Credit in an aggregate amount of not less than $162,005,000, plus all interest, fees, costs, expenses (including, without limitation, all attorneys' fees and legal expenses of Pre-Petition Lender) and all charges accrued and accruing thereon or chargeable with respect thereto. The Pre-Petition Lender Debt is unconditionally owing by Debtors to Pre-Petition Lender, without offset, defense or counterclaim of any kind, nature and description whatsoever.

(iii)    *Pre-Petition Lender Collateral*.  As of the Petition Date, the Pre-Petition Lender Debt is fully secured pursuant to the Pre-Petition Loan Documents by perfected, valid, binding and non-avoidable first priority security interests and liens granted by Debtors to or for the benefit of the Pre-Petition Lender upon all of the Collateral (as defined in the Pre-Petition Credit Agreement) existing as of the time immediately prior to the filing of the petitions for relief herein, and the post-petition proceeds and products thereof (collectively, together with any other property of, among other things, each Debtors' estate in which a security interest or lien has been granted to or for the benefit of Pre-Petition Lender immediately prior to the filing of the petitions for relief herein, the "Pre-Petition Lender Collateral").

(iv)    *Repayment of Pre-Petition Lender Debt.*   A portion of Debtors' borrowings from Lender under the Credit Agreement, the other Loan Documents and this Interim Order will be used to repay the Pre-Petition Lender Debt owing to Pre-Petition Lender in accordance with the terms and conditions set forth in this Interim Order.

(v)    *Pre-Petition Lender's Consent to Priming Liens.*   Pre-Petition Lender has consented and agreed that, subject to the terms and conditions contained herein, any and all pre-petition or post-petition liens and security interests (including, without limitation, any adequate protection replacement liens at any time granted to Pre-Petition Lender by this Court) that the Pre-Petition Lender has or may have in the Pre-Petition Lender Collateral or any other assets and properties of the Debtors and their estates shall (a) only secure any Pre-Petition Lender Debt that is (1) at any time repaid with the proceeds of the loans and advances made by the Lender (including, without limitation, at closing of the post-petition credit facility in accordance with this Interim Order) prior to the Final Financing Order becoming final and non-appealable and (2) subsequently reinstated after the full payment thereof because such payment (or any portion thereof) is required to be returned or repaid to Debtors or Lender, other than as a result of a Disgorgement Action (as defined in paragraph 15(e) of this Interim Order); and (b) shall be junior and subordinate in all respects to Lender's liens on and security interests in the Collateral (including, without limitation, Lender's Priming Liens) granted under this Interim Order and the Loan Documents (such junior liens and security interests of the Pre-Petition Lender are hereinafter referred to as the "Pre-Petition Lender Junior Liens").  Such reinstated Pre-Petition Lender Debt described in clauses (a)(1) and (2) above in this paragraph is hereinafter referred to as the "Contingent Pre-Petition Lender Debt" and shall be junior and subordinate in all respects to the Obligations (as defined in the Credit Agreement).  Pre-Petition

Lender has further agreed that, (a) until such time as all of the Obligations are indefeasibly paid

in full in cash in accordance with the Loan Documents and this Interim Order, Pre-Petition

Lender shall have no right to seek or exercise any enforcement rights or remedies in connection

with the Contingent Pre-Petition Lender Debt or the Pre-Petition Lender Junior Liens, including,

without limitation, in respect of the occurrence or continuance of any Event of Default (as

hereinafter defined); (b) the Pre-Petition Lender shall be deemed to have consented to any sale or

disposition of all or any portion of the Collateral approved by, arranged for or by Agent and shall

terminate and release upon any such sale or disposition all of its Pre-Petition Lender Junior Liens

on and security interests in such Collateral; (c) Pre-Petition Lender shall deliver or cause to be

delivered, at Debtors' costs and expense (for which Pre-Petition Lender shall be reimbursed upon

submission to Debtors of invoices or billing statements), any termination statements, releases

and/or assignments (to the extent provided for in paragraph 6 herein) in favor of Lender or other

documents necessary to effectuate and/or evidence the release, termination and/or assignment of

the Pre-Petition Lender Junior Liens on any portion of the Collateral subject to any sale or

disposition approved or arranged for by Agent; and (d) upon the Final Financing Order (as

defined in the Credit Agreement) becoming a final and non-appealable order (and subject to the

right of Pre-Petition Agent to consent to any material modifications contained in the Final

Financing Order that, after giving effect to any such modification, adversely affect the Pre-

Petition Lender's rights contained in paragraphs 9(a), 9(b), 10 and 15(e) of this Interim Order) all

Pre-Petition Lender Junior Liens in the Collateral shall, subject to paragraph 6 of this Interim

Order, terminate and be released (automatically and without further action of the parties), and

Pre-Petition Lender shall execute and deliver such agreements to evidence and effectuate such

termination, release or assignments as Agent may request and Agent shall be authorized to file

on behalf of Pre-Petition Lender such UCC termination statements or such other filings as may

be applicable to the extent required such authorization is required under the Uniform

Commercial Code of the applicable jurisdiction.

E.    Findings Regarding Post-Petition Financing

(i)    *Need for Post-Petition Financing*.  The Debtors represent that

without the financing proposed by the Motion, the Debtors will not have the funds necessary to

pay post-petition payroll, payroll taxes, trade vendors, suppliers, overhead and other expenses

necessary for the continued operation of the Debtors' businesses and the management and

preservation of the Debtors' assets and properties.  The Debtors have requested that, pursuant to

the Credit Agreement, the other Loan Documents and this Interim Order, Lender make loans and

advances and provide other financial accommodations to the Debtors to be used by the Debtors

to: (A) repay the Pre-Petition Lender Debt, and (B) fund the Debtors' general operating, working

capital and other administrative costs of their Chapter 11 cases.  The ability of the Debtors to

continue their businesses and remain viable entities and thereafter reorganize under Chapter 11

of the Bankruptcy Code depends upon the Debtors obtaining such financing from Lender.

Lender is willing to make such loans and advances and provide such other financial

accommodations on a secured basis as more particularly described herein pursuant to the terms

and conditions of the Credit Agreement, all other Loan Documents, including, without limitation,

the Security Agreement, dated as of the date hereof, by and among the Debtors and Agent

("Security Agreement", a copy of which is included in the Exhibit Supplement and is

incorporated herein by reference) and in accordance with this Interim Order.  Accordingly, the

relief requested in the Motion is necessary, essential, and appropriate for the continued operation

of the Debtors' businesses, the management and preservation of their assets and properties and is in the best interests of the Debtors, their estates and creditors.

(ii)  *No Credit Available on More Favorable Terms.*  The Debtors represent that they are unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code or pursuant to Sections 364(a), (b) or (c)(1) of the Bankruptcy Code or secured credit pursuant to Sections 364(c)(2) and (3) only.  Additionally, the Debtors were unable to procure the necessary financing on more favorable terms than those offered by Lender pursuant to the Credit Agreement, the other Loan Documents and this Interim Order.

(iii)  *Business Judgment and Good Faith Pursuant to Section 364(e).* The Debtors represent that the terms of the Credit Agreement and the other Loan Documents among the Debtors and Lender, pursuant to which the post-petition loans, advances, letters of credit and other credit and financial accommodations will be made or provided to Borrowers by Lender have been negotiated at arms' length and in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors.  The Debtors further represent that Lender is extending financing to the Borrowers in good faith and Lender is entitled to the benefits of the provisions of Section 364(e) of the Bankruptcy Code.

(iv)  *Good Cause, Immediate Entry.*  The Debtors represent that the relief requested by the Motion pursuant to the terms of the Credit Agreement, the other Loan Documents and this Interim Order is necessary to avoid immediate and irreparable harm to Debtors' estates. Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Interim Order.  No party appearing in

the Debtors' Chapter 11 cases has filed or made an objection to the relief sought in the Motion

and the entry of this Interim Order, and to the extent any objections were made (and not

withdrawn prior to the entry of this Interim Order) such objections are hereby overruled.

    F.  <u>Committee</u>.  As of the date hereof, the Office of the United States Trustee

has not appointed an official committee of unsecured creditors (the "Committee") in accordance

with section 1102 of the Bankruptcy Code.

    Based upon the foregoing, and after due consideration and good cause appearing therefor:

    IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

    1.  <u>Motion Granted.</u>  The Motion is granted and approved to the extent

provided below.

    2.  <u>Authorization to Borrow on an Interim Basis</u>.  Borrowers are hereby

authorized and empowered to immediately borrow and obtain Loans, Letters of Credit (as each

term is defined in the Credit Agreement) and other financial and credit accommodations from

Lender pursuant to the terms and conditions of the Credit Agreement, the other Loan Documents

and this Interim Order, in such amount or amounts as may be made available to Borrowers by

Lender, in accordance with the terms and conditions set forth in the Credit Agreement, the other

Loan Documents and this Interim Order; <u>provided</u>, <u>however</u>, the aggregate amount of all such

Loans, Letters of Credit and other financial and credit accommodations provided to Borrowers

by Lender in accordance with the Loan Documents and this Interim Order during the period

commencing on the date hereof and ending upon entry of the Final Financing Order shall not

exceed the aggregate principal amount of $600,000,000 outstanding at any one time, which

amount is inclusive of the funds necessary to repay the Pre-Petition Lender Debt in accordance

with this Interim Order.

                3.      <u>Use of Loan and Letter of Credit Proceeds</u>.  Borrowers shall use the

proceeds of the Loans and Letters of Credit made or arranged for by Lender to Borrowers

pursuant to the Credit Agreement, the other Loan Documents and this Interim Order, for (a) the

repayment of the Pre-Petition Lender Debt owed to the Pre-Petition Lender as of the date hereof,

subject to the terms and conditions contained in this Interim Order; (b) the payment of employee

salaries, payroll, taxes, the purchase of goods, materials and other general corporate and working

capital purposes in accordance with the Loan Documents and this Interim Order, including

amounts paid for such purposes which may constitute administrative expense claims under the

Bankruptcy Code attributable to the operation of Debtors' businesses as authorized by order of

the Court and in accordance with the Loan Documents; (c) the fees of the U.S. Trustee, the fees

of the Clerk of this Court, the allowed fees and expenses of attorneys, accountants and other

professionals retained under Section 327 or 1103(a) of the Bankruptcy Code by the Debtors and

the Committee; and (d) all present and future costs and expenses, including all reasonable

attorneys' fees and legal expenses (provided, that, the Debtors shall provide notice of such

attorneys' fees and legal expenses to the Office of the United States Trustee and counsel for the

Committee (if any)), paid or incurred by Lender at any time in connection with the financing

transactions as authorized and provided for in this Interim Order and the Loan Documents, all of

which unpaid fees, commissions, costs and expenses shall be added to, and are included as part

of, the principal amount of the Obligations, secured by the Collateral and afforded all of the

rights, priorities and protections afforded to Lender in respect of the Obligations under this

Interim Order and the Loan Documents.

502585.7

4.    <u>Authorization to Enter Into and Comply with Loan Documents</u>.  Debtors are authorized and directed to execute, deliver, perform and comply with all of the terms and covenants of the Credit Agreement and the other Loan Documents, each of which constitute valid, binding, enforceable and non-avoidable obligations of the Debtors for all purposes during the Debtors' Chapter 11 cases, any subsequently converted case(s) of any Debtor under Chapter 7 of the Bankruptcy Code or after the dismissal or reorganization of any of the Debtors' bankruptcy case(s).   Debtors are hereby authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements in addition to the above Loan Documents, as Lender may reasonably require as evidence of and for the protection of the Obligations and the Collateral or which may be otherwise deemed necessary by Lender to effectuate the terms and conditions of this Interim Order and the Loan Documents, each of such additional documents, instruments, and agreements being included in the definition of "Loan Documents" contained herein.

5.    <u>Approval of Loan Documents</u>.  The terms, conditions and covenants of the Credit Agreement and the other Loan Documents shall be sufficient and conclusive evidence of the borrowing and financing arrangements among Debtors and Lender for all purposes, including, without limitation, the payment of all principal, interest, fees (including, without limitation, unused line fees, servicing fees, letter of credit fees, closing fees, syndication fees, early termination fees, appraisal fees), Lender's legal expenses, and other fees and expenses, as more fully set forth in the Credit Agreement and the other Loan Documents.

6.    <u>Lien Grant</u>.  To secure the prompt payment and performance of any and all Obligations under the Credit Agreement, the other Loan Documents and/or this Interim Order, Lender shall have, and is hereby granted in accordance with the terms and conditions of

the Loan Documents, effective on and after the Petition Date, valid, perfected, enforceable and

non-avoidable first priority security interests in and liens, senior and superior in priority to all

other secured and unsecured creditors of the Debtors' estates, including, without limitation, the

Priming Liens (but subject to the liens and claims set forth in paragraph 8 of this Interim Order),

upon all assets and properties of the Debtors and their estates (excluding any claims and causes

of action brought under Chapter 5 of the Bankruptcy Code and the proceeds thereof) and

including, without limitation, the following (the "Collateral", as such term is more fully defined

in the Security Agreement[2]): contract rights, general intangibles (including, without limitation,

all trademarks, patents and other intellectual property, tax refunds, choses in action, franchises,

licenses and other rights and agreements), accounts, cash or cash equivalents, deposit accounts,

letters of credit, letter-of-credit rights, supporting obligations, chattel paper, documents,

instruments (including any notes receivable and stock in subsidiaries and affiliates and all

interests in any limited liability company or other entity, except as to the stock of controlled

foreign corporations as determined under the Internal Revenue Code for the stock of such

corporations in excess of sixty-five percent (65%) thereof to the extent that it would result in any

material additional US tax liability), investment property, inventory, equipment, fixtures and

other goods, real property (owned and leased) and all products and proceeds of any of the

foregoing.  In no event shall (i) any lien or security interest granted to Lender pursuant to the

Loan Documents or this Interim Order be subject to any lien or security interest that is avoided

and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code;

(ii) any person or entity who pays (or through the extension of credit to any Debtor, causes to be

---

[2]     Capitalized terms used in paragraph 6 of this Interim Order, unless otherwise defined in this Interim Order, shall have the meanings ascribed to such terms in the Security Agreement.  To the extent that there are any inconsistencies or conflicts between the description of Collateral contained in this Interim Order and the description of Collateral contained in the Security Agreement, the description of Collateral as set forth in the Security Agreement shall control and govern in all respects.

paid) any of the Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon, Lender by the terms of the Loan Documents or this Interim Order, until such time as all of the Obligations are indefeasibly paid in full in cash in accordance with the Loan Documents and this Interim Order; and (iii) Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. Upon the Final Financing Order becoming final and non-appealable, all pre-petition liens and security interests of the Pre-Petition Lender in the Pre-Petition Collateral shall be deemed to be assigned (and not terminated and released to the extent so assigned) to Lender as additional collateral security for all Obligations, and such assignment shall be in addition to, and shall not limit, prejudice or impair in any way any of the claims or liens and security interests of Lender in the Collateral granted pursuant to the Loan Documents and this Interim Order. In no event shall Lender have any liability in connection with such assignment or the pre-petition liens so assigned (including, without limitation, any liability relating to a Pre-Petition Lien/Claim Challenge (as defined in paragraph 15(e) herein) or a Disgorgement Action), and in no event shall the Pre-Petition Lender continue to have any rights or benefits in connection with such liens so assigned. Neither this Interim Order nor the lien and claims granted hereby are intended to, or shall, prime or in any way affect the valid set off and recoupment rights of any party in interest.

    7. <u>Lien Perfection</u>. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the liens and security interests in and upon the property of each Debtor's estate granted to Lender, as set forth herein and in the Loan Documents, without the necessity of filing, recording or serving any financing statements, mortgages, deeds of trust or other agreements, documents or instruments which may otherwise

be required under federal or state law in any jurisdiction (collectively, "Lien Recording Documents") or the taking of any other action to validate or perfect the security interests and liens granted to Lender in this Interim Order and the Loan Documents. Such security interests and liens granted to Lender shall be prior and senior to all security interests, liens, claims, and encumbrances of all other creditors in and to such property, subject to paragraph 8 of this Interim Order. If Lender shall, in its discretion, elect for any reason to file any such Lien Recording Documents with respect to such security interests and liens, Debtors are authorized and directed to execute, or cause to be executed, all such Lien Recording Documents upon Lender's request and the filing, recording or service thereof (as the case may be) of such Lien Recording Documents shall be deemed to have been made at the time of and on the Petition Date. Lender may, in its discretion, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Interim Order. Agent shall, in addition to the rights granted to it under the Loan Documents, be deemed the successor-in-interest to the Pre-Petition Agent with respect to all Pre-Petition Collateral access agreements and other agreements with third parties granting rights in, or waiving claims against, any Pre-Petition Collateral, including, without limitation, each collateral access agreement duly executed and delivered by any landlord of the Borrowers or any of their Subsidiaries (as defined in the Credit Agreement).

8.    <u>Permitted Liens and Claims</u>.  Except as otherwise provided pursuant to the provisions of this Interim Order, the security interests and liens of Lender in and upon the Collateral shall not have priority over (i) the liens upon Debtors' property that are permitted in Section 7.2.3 of the Credit Agreement to the extent that such liens are expressly entitled to

priority over Lender's liens in the Collateral as provided for in such Section 7.2.3, (ii) security interests and liens that are (A) valid, perfected, non-avoidable and in existence immediately prior to the Petition Date (other than Pre-Petition Lender's liens in the Pre-Petition Lender Collateral securing the Pre-Petition Lender Debt and/or the Pre-Petition Lender Junior Liens securing the Contingent Pre-Petition Lender Debt) to the that extent such liens and security interest have priority over Lender's liens under applicable law, and (B) valid, non-avoidable and in existence immediately prior to the Petition Date but are perfected subsequent to the Petition Date pursuant to Bankruptcy Code Section 546(b) to the extent that such liens and security interest have priority over Lender's liens under applicable law; and (iii) the Carve Out Expenses, including, without limitation, the Professional Fee Carve-Out as and to the extent set forth in this Interim Order.  The foregoing is without prejudice to the rights of Debtors, the Committee (if any), or any other party in interest, including Lender, to object to the validity, extent, priority, enforceability or allowance of any such liens and security interests referenced in clauses (i) and (ii) above in this paragraph.

9.      <u>Repayment and Termination of Pre-Petition Lender Debt; Adequate Protection.</u>

(a)      Immediately following the entry of this Interim Order, as adequate protection for the Priming Liens granted to Lender in accordance with the terms and conditions contained in this Interim Order, (i) Debtor shall use a portion of the proceeds from the Loans in accordance with the Loan Documents and this Interim Order to repay in full the Pre-Petition Lender Debt and to provide Pre-Petition Lender with cash collateral to secure the Continuing Pre-Petition Lender Debt (as defined below) in the amount equal to $1,000,000 (the "Pre-Petition Lender Cash Collateral") in accordance with the terms and conditions contained herein, and (ii)

Pre-Petition Lender shall have, subject to the terms and conditions set forth below, Pre-Petition

Lender Junior Liens to secure any Contingent Pre-Petition Lender Debt.  The adequate protection

granted to Pre-Petition Lender under this paragraph 9 is expressly conditioned upon the

following: (i) the Contingent Pre-Petition Lender Debt shall be junior and subordinate in right of

payment to all Obligations; (ii) the Pre-Petition Lender Junior Liens shall be junior and

subordinate in all respects to Lender's liens and security interests (including, without limitation,

Lender's Priming Liens) upon and in the Collateral; (iii) until such time as all of the Obligations

are indefeasibly paid in full in cash in accordance with the Loan Documents and this Interim

Order, Pre-Petition Lender shall have no right to seek or exercise any enforcement rights or

remedies in connection with the Contingent Pre-Petition Lender Debt or the Pre-Petition Lender

Junior Liens, including, without limitation, in respect of the occurrence or continuance of any

Event of Default (as hereinafter defined); (iv) the Pre-Petition Lender shall be deemed to have

consented to any sale or disposition of Collateral approved, arranged for or by Agent, and shall

terminate and release upon any such sale or disposition all of its liens on and security interests in

such Collateral; (v) Pre-Petition Lender shall deliver or cause to be delivered, at Debtors' costs

and expense (for which Pre-Petition Lender shall be reimbursed upon submission to Debtors of

invoices or billing statements), any termination statements, releases or other documents

necessary to effectuate and/or evidence the release and termination of Pre-Petition Lender's liens

on or security interests in any portion of the Collateral subject to any sale or disposition approved

or arranged for by Agent; and (vi) upon the Final Financing Order becoming a final and non-

appealable order all Pre-Petition Lender Junior Liens in the Collateral shall, subject to paragraph

6 of this Interim Order, terminate and be released (automatically and without further action of the

parties), and Pre-Petition Lender shall execute and deliver such agreements to evidence and

effectuate such termination and release as Agent may request and Agent shall be authorized to

file on behalf of Pre-Petition Lender such UCC termination statements or other such other filings

as may be applicable to the extent required such authorization is required under the Uniform

Commercial Code of the applicable jurisdiction.  The pre-petition liens held by the Pre-Petition

Lender in the Pre-Petition Collateral will not be assigned to Lender except pursuant to the Final

Financing Order upon its becoming final and non-appealable.  The rights of parties in interest

with respect to the propriety of any such assignment are expressly reserved.  The Pre-Petition

Lender Junior Liens shall remain in effect solely during the interim period prior to the Final

Financing Order becoming final and non-appealable, and shall be assigned or released upon the

Final Financing Order becoming final and non-appealable; provided, however, that the rights of

parties in interest with respect to the propriety of any such assignment are expressly reserved.

Nothing contained in this paragraph 9(a) shall impair the rights of Pre-Petition Lender granted

under this Interim Order.

> (b)     In addition to the repayment of the Pre-Petition Lender Debt and

the grant to Pre-Petition Lender of the Pre-Petition Lender Junior Liens, subject to the terms and

conditions set forth herein, as collateral security for the prompt performance, observance and

payment in full of any Obligations (as defined in the Pre-Petition Credit Agreement) that arise

after the repayment of the Pre-Petition Lender Debt in accordance with this Interim Order as a

result of (i) any post-petition expenses or indebtedness reasonably incurred by the Pre-Petition

Lender in connection with the repayment of the Pre-Petition Lender Debt and the termination

and/or assignment of the Pre-Petition Lender Junior Liens in accordance with the terms and

conditions contained herein, and (ii) Pre-Petition Lender's incurrence of reasonable professional

fees and reasonable legal expenses in connection with any pending or threatened action against

Pre-Petition Lender in accordance with paragraph 15(e) of this Interim Order, other than as a result of Pre-Petition Lender's liens or claims of being invalidated by a Disgorgement Action. Such indebtedness and obligations described in clauses (i) and (ii) of this paragraph are collectively referred to herein as the "Continuing Pre-Petition Lender Debt". Pre-Petition Lender shall continue to have a senior security interest in and right to set off against the Pre-Petition Lender Cash Collateral. Pre-Petition Lender shall release and remit back to the Debtors the Pre-Petition Lender Cash Collateral, less any amounts thereof previously applied by Pre-Petition Lender to Continuing Pre-Petition Lender Debt, upon the earlier of (1) the expiration of the time in which an adversary proceeding may be commenced against Pre-Petition Lender in accordance with paragraph 15(e) of the Interim Financing Order, or (2) the written agreement among Debtors, Pre-Petition Lender and Lender.

    10.    Use of Pre-Petition Lender's Cash Collateral. During the period commencing immediately after the filing of the Debtors' Chapter 11 petitions and terminating upon the date at which the Final Financing Order becomes final and non-appealable (the "Cash Collateral Use Period"), the Debtors shall be authorized to use, subject to the terms contained in this paragraph, the Pre-Petition Lender's cash collateral (as defined in Section 363(a) of the Bankruptcy Code). Pre-Petition Lender hereby reserves the right to seek, as adequate protection against the diminution in the value of the Pre-Petition Lender Junior Liens occasioned by the imposition of the automatic stay and the Debtors' use of Pre-Petition Lender's cash collateral in accordance with sections 361, 362 and 363 of the Bankruptcy Code, a Section 507(b) claim in an amount equal to any diminution in the value of the Pre-Petition Lender Junior Liens; provided, however, any Section 507(b) claim granted to Pre-Petition Lender pursuant to this paragraph or otherwise (i) shall terminate and be released upon the Final Financing Order becoming a final

and non-appealable order; and (ii) shall be junior and subordinate in right of payment to all

Obligations.

11.     Intentionally omitted.

12.     Intentionally omitted.

13.     Modification of Automatic Stay.  Except as otherwise specifically

provided with respect to Lender's rights and remedies after the occurrence of an Event of Default

under the terms of the Loan Documents and subject to the provisions of paragraph 18 below, the

automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the

extent necessary to permit Lender to implement the provisions of the Loan Documents and this

Interim Order.

14.     Superpriority Claim.  For all Obligations now existing or hereafter arising

pursuant to the Credit Agreement, the other Loan Documents and/or this Interim Order, Lender

is hereby granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of

the Bankruptcy Code, which claim shall have priority in right of payment over any and all other

obligations, liabilities and indebtedness of Debtors, now in existence or hereafter incurred by any

of the Debtors and over any and all administrative expenses or priority claims of the kind

specified in, or ordered pursuant to, inter alia, Sections 105, 326, 328, 330, 331, 503(b), 507(a),

507(b), and/or 364(c)(1) of the Bankruptcy Code (the "Superpriority Claim"), provided,

however, that the Superpriority Claim shall be subordinate to (i) the Carve-Out Expenses as and

to the extent set forth in this Interim Order.

15.    (a)    <u>Professional Fee Carve-Out and Other Carve-Out</u>.    Subject to the terms and conditions contained in this paragraph 15, Lender's Superpriority Claim and security interests in and liens upon the Collateral shall be subordinate only to (collectively, the "Carve-Out Expenses"):

(i)  the fees and expenses of the Clerk of this Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a);

(ii)  the allowed reasonable fees and expenses of any Chapter 7 Trustee appointed for any Debtor's Chapter 7 case; provided, that such allowed fees and expenses shall not exceed $50,000 in the aggregate for purposes of constituting a part of the Carve Out Expenses; and

(iii)  on and after the Default Point (as defined below), the allowed unpaid and outstanding reasonable fees and expenses approved by order of the Court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the "Allowed Professional Fees") by attorneys, accountants and other professionals retained under section 327 or 1103(a) of the Bankruptcy Code by the Debtors and the Committee (collectively, the "Professionals") in an aggregate amount not to exceed $12,000,000 (the "Professional Fee Carve-Out").  As used herein, "Default Point" means the date when both (x) an Event of Default (as defined in the Credit Agreement or this Interim Order) shall have occurred, and (y) the Lender has ceased making to Borrowers advances or other extensions of credit in

24

accordance with the terms of the Credit Agreement and the other Loan Documents.

(b)     Payment of Professional Fee Carve-Out.  Any payment or reimbursement made either directly by or on behalf of Lender or by or on behalf of the Debtors on or after the Default Point in respect of any Allowed Professional Fees shall, in either case, permanently reduce the Professional Fee Carve-Out on a dollar-for-dollar basis.  Any payments made to Professionals in respect of Allowed Professional Fees at any time prior to the Default Point shall not reduce the Professional Fee Carve-Out.  Any payments made at any time in respect of any Carve Out Expenses other than Allowed Professional Fees subject to the Professional Fee Carve-Out shall not reduce the Professional Fee Carve-Out.  Lender's obligation to fund or otherwise pay Carve Out Expenses, including Allowed Professional Fees subject to the Professional Fee Carve-Out, shall be added to and made a part of the Obligations, secured by the Collateral, and Lender shall be entitled to all of the rights, claims, liens, priorities and protections under this Interim Order, the Loan Documents, the Bankruptcy Code, and/or applicable law in connection therewith.  Payment of any obligations relating to the Professional Fee Carve-Out or other Carve Out Expenses, whether by or on behalf of Lender, shall not and shall not be deemed to reduce the Obligations and shall not and shall not be deemed to subordinate any of Lender's liens and security interests in the Collateral or its Superpriority Claim to any junior pre-petition or post-petition lien, interest, or claim in favor of any other party.  Except as otherwise provided herein with respect to the Professional Fee Carve-Out and the other Carve Out Expenses, Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Debtors' cases under any chapter of the Bankruptcy Code, and nothing in this Interim Order or

502585.7                                     25

otherwise shall be construed to obligate Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)     <u>Professional Fee Carve-Out Reserve</u>.  Without limiting any of Lender's rights under the Loan Documents or this Interim Order, Lender shall implement a Reserve (as defined in the Credit Agreement) in respect of the Professional Fee Carve-Out and the other Carve-Out Expenses in accordance with the terms and conditions of the Credit Agreement.  Such Reserve shall reduce the amount of Loans and Letters of Credit otherwise available to Borrowers under the Credit Agreement.

(d)     <u>Excluded Professional Fees</u>.  Notwithstanding anything to the contrary in this Interim Order, the Professional Fee Carve-Out shall not be used to pay any Allowed Professional Fees or any other claims incurred in connection with any of the following: (i) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief: (A) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Lender's liens on and security interests in the Collateral, (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Obligations or Lender's liens on and security interests in the Collateral, or (C) preventing, hindering, or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral, (ii) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Lender, (iii) a request for authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from Lender without the prior written consent of Lender, (iv) the

commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, or (v) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Lender, or which is contrary, in a manner that is material and adverse to Lender to any term or condition set forth in or acknowledged by the Loan Documents or this Interim Order.  Nothing contained herein shall limit or prevent the Professional Fee Carve-Out to be used to investigate and/or bring claims against the Pre-Petition Lender with respect to the Pre-Petition Lender Debt or Pre-Petition Lender's liens and security interests in the Pre-Petition Lender Collateral in accordance with paragraph 15(e) of this Interim Order.

(e)    Subject to the terms of this paragraph, the repayment of the Pre-Petition Lender Debt as set forth in paragraph 9 of this Interim Order shall be without prejudice to the rights of the Committee, or if no Committee is formed, any party in interest, to seek to disallow the Pre-Petition Lender's claims in respect of the Pre-Petition Lender Debt, pursue any claims against Pre-Petition Lender in connection with the Pre-Petition Loan Documents or avoid any security interest or liens in the Pre-Petition Lender Collateral or in any other asset or property of the Debtors in which the Pre-Petition Lender claims an interest, including, without limitation, any claim, action or proceeding brought against Pre-Petition Lender in accordance with this paragraph 15(e) that requires the Pre-Petition Lender to disgorge the repaid Pre-Petition Lender Debt (or any portion thereof) as a result of any of Pre-Petition Lender's claims against the Debtors or liens upon and security interests in any of the assets and properties of Debtors (including the Pre-Petition Lender Collateral) and their estates being invalidated, avoided, subordinated, impaired or compromised in any way, either by an order of this Court (or other

court of competent jurisdiction) or by settlement (collectively, a "Disgorgement Action"). The Committee shall have seventy-five (75) calendar days from the date of appointment of counsel for the Committee (and if no Committee is formed, any party in interest shall have seventy-five (75) days from entry of this Interim Order), within which to commence an adversary proceeding (collectively, a "Pre-Petition Lien/Claim Challenge") with respect to the Pre-Petition Lender's claims in respect of the Pre-Petition Lender Debt or security interest in the Pre-Petition Lender Collateral, or any other claims or causes of action against the Pre-Petition Lender relating to the Pre-Petition Loan Documents. If such a Pre-Petition Lien/Claim Challenge is not timely commenced within such applicable period set forth above, (a) the Pre-Petition Lender Debt and Pre-Petition Lender's security interests in and liens upon the Pre-Petition Lender Collateral shall be recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses and perfected, and (b) Pre-Petition Lender and its respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time immediately prior to the Petition Date in accordance with the Pre-Petition Loan Documents entered into with Debtors, and all of the Debtors' acknowledgements, releases and waivers of claims granted to or in favor of Pre-Petition Lender relating to the Pre-Petition Loan Documents in accordance with this Interim Order shall be binding upon all parties in interest in the Debtors' Chapter 11 cases and/or in any subsequently converted case(s) under Chapter 7 of the Bankruptcy Code.

16. <u>Disposition of Collateral</u>. Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, or assume, reject or assign any Leasehold Property (as defined in the Credit Agreement) without the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by Lender or an

order of this Court), except for sales of Debtors' Inventory in the ordinary course of its businesses or except as otherwise provided for in the Credit Agreement, the other Loan Documents and this Interim Order; provided, however, that nothing herein shall impair the Debtors' exercise of their fiduciary duties with respect to the assumption, rejection, or assignment of real property leases.

17.    Waiver of 506(c) Claims Against Lender.  No costs or expenses of administration which already have been, or may hereafter be, incurred in Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code shall be charged or asserted by the Debtors against Lender, its claims or the Collateral, pursuant to Sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior written consent of Lender (and no such consent shall be implied from any other action, inaction or acquiescence by Lender).  Nothing contained in this paragraph shall waive the rights of the Committee or any other party-in-interest to assert a claim under Section 506(c) of the Bankruptcy Code; provided, that, the foregoing does not and shall not be construed to grant standing to any such party to assert a claim under Section 506(c) of the Bankruptcy Code.

18.    Remedies upon Occurrence of Event of Default.  In the event of the occurrence of any of the following: (a) the failure of Debtors to perform in any material respect any of its obligations pursuant to this Interim Order, (b) the occurrence of any Event of Default under the Credit Agreement or the other Loan Documents, (c) the termination or non-renewal of the Loan Documents as provided for in the Credit Agreement, or if terminated sooner by an order of this Court, (d) conversion of any Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, (e) the appointment of a trustee pursuant to Section 1104(a) of the Bankruptcy Code in Debtors' Chapter 11 cases, (f) the appointment of any examiner with

expanded powers pursuant to Section 1106(b) of the Bankruptcy Code in Debtors' Chapter 11

cases, (g) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating or

amending this Interim Order without the express prior written consent of Lender (and no such

consent shall be implied from any other action, inaction or acquiescence by Lender), (h) the

failure to obtain entry of a final non-appealable Final Financing Order as to the approval of the

Credit Agreement and the other Loan Documents, in form and substance acceptable to Lender,

granting the Motion within sixty (60) days after the date of the Motion, (i) the failure of Debtors

to remain current in payment of any material amount of post-petition administrative obligations,

except for amounts the validity of which are being contested in good faith by Debtors, or (j) the

filing of a plan of reorganization by any party which does not provide for the payment in full in

immediately available funds of all Obligations on the effective date thereof on terms and

conditions acceptable to Lender (each of the foregoing being referred to in this Interim Order,

individually, as an "Event of Default" and collectively, as "Events of Default"); then (unless

such Event of Default is specifically waived in writing by Lender, which waiver shall not be

implied from any other action, inaction or acquiescence by Lender) and upon or after the

occurrence of any of the foregoing, and at all times thereafter, after giving five (5) business days

notice in writing, served by hand or telefax upon the Court, Debtors' counsel, counsel to the

Committee, any trustee of Debtors, if appointed, and the United States Trustee:  (i) all of the

Obligations shall become immediately due and payable, (ii) the automatic stay provided for

pursuant to Section 362 of the Bankruptcy Code and any other restrictions on the enforcement by

Lender of its liens upon and security interests in the Collateral or any other rights under the Loan

Documents granted to or for the benefit of Lender or pursuant to this Interim Order shall be

automatically vacated and modified without any further action being required, and (iii) Lender,

without further notice, hearing or approval of this Court, shall be, and are hereby authorized, in the discretion of the Lender, to take any and all actions or remedies which Lender may deem appropriate to proceed against and realize upon the Collateral and any other assets and properties of Debtors' estates upon which Lender has been or may hereafter be granted liens and security interests to obtain the full and indefeasible repayment of the Obligations.  Nothing contained in this Interim Order or otherwise shall be construed to obligate Lender in any way to lend or advance any additional funds to Debtors, or provide other financial accommodations to Debtors upon or after the occurrence of an Event of Default.

19.     <u>Intentionally omitted</u>.

20.     <u>Amendment to Loan Documents</u>.  Agent, with the consent of Debtors, is hereby authorized to amend and/or modify the Loan Documents without further order of the Court for purposes of, among other things, implementing the syndication of the financing provided for in the Credit Agreement and the other Loan Documents (which syndication may result in increased costs charged to the Borrowers under the Credit Agreement and the other Loan Documents) and modifying or waiving compliance with financial covenants contained in the Credit Agreement or increasing the amount of loans available to Borrowers or changes related to any of the foregoing; <u>provided</u>, <u>that</u>, any such amendments and modifications must be in writing and served upon counsel for the Committee and the U.S. Trustee.

21.     <u>Reservation of Lender's Rights</u>. Entry of this Interim Order shall not be deemed to prejudice any and all rights, remedies, claims and causes of action Lender may have against third parties, and shall not prejudice the rights of Lender from and after the entry of this Interim Order to seek any other relief in the Debtors' Chapter 11 cases.  Entry of this Interim

Order shall not in any way constitute:  (a) a preclusion or a waiver of any right of Lender to file,

or to prosecute if already filed, a motion for relief from stay, a motion or request for relief,

including but not limited to any adversary proceeding; (b) agreement, consent, or acquiescence

to the terms of any plan of reorganization by virtue of any term or provision of this Interim

Order; (c) a preclusion or waiver to assert any other rights, remedies or defenses available to

Lender, or to respond to any motion, application, proposal, or other action, all such rights,

remedies, defenses and opportunities to respond being specifically reserved by Lender; or (d) a

preclusion, waiver or modification of any rights or remedies that Lender has against any other

person or entity.

22.    <u>Release Upon Repayment of Obligations</u>  Upon the payment in full of all

Obligations owed to Lender and termination of the Credit Agreement and the other Loan

Documents, Lender shall be released from any and all obligations, liabilities or responsibilities

arising in connection with or related to this Interim Order, the Credit Agreement and the other

Loan Documents in accordance with the terms and conditions contained in the Loan Documents.

23.    <u>Restrictions on Use of Cash Collateral, Additional Financing</u>.  All post-

petition advances and other financial accommodations under the Credit Agreement and the other

Loan Documents are made in reliance on this Interim Order and in the event that an order is

entered at any time in Debtors' Chapter 11 cases or in any subsequently converted case under

Chapter 7 of the Bankruptcy Code any order (other than the Final Financing Order) which (a)

authorizes the use of cash collateral of Debtors in which Lender has an interest or the sale, lease,

or other disposition of property of Debtors' estates in which Lender has a lien or security

interest, except as expressly permitted hereunder or in the Loan Documents, or (b) authorizes

under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of

indebtedness secured by a lien or security interest which is equal or senior to a lien or security

interest in property in which Lender holds a lien or security interest, or which is entitled to

priority administrative claim status which is equal or superior to that granted to Lender herein;

then, in each instance (i) Lender shall have given its express prior written consent thereto, no

such consent being implied from any other action, inaction or acquiescence by Lender, or (ii)

such other order requires that the Obligations shall first be indefeasibly paid in full, including,

without limitation, all debts and obligations of Debtors to Lender which arise or result from the

obligations, loans, security interests and liens authorized herein, on terms and conditions

acceptable to Lender.  The security interests and liens granted to or for the benefit of Lender

hereunder and the rights of Lender pursuant to this Interim Order and the Loan Documents with

respect to the Obligations and the Collateral are cumulative and shall not be altered, modified,

extended, impaired, or affected by any plan of reorganization of Debtors and, if Lender shall

expressly consent in writing that the Obligations shall not be repaid in full upon confirmation

thereof, shall continue after confirmation and consummation of any such plan.

24.    <u>Binding Effect of Interim Order and Loan Documents</u>.

(a)    The provisions of this Interim Order and any actions taken

pursuant hereto shall survive entry of any order which may be entered converting Debtors'

Chapter 11 cases to a Chapter 7 case, dismissing any of Debtors' bankruptcy cases or any order

which may be entered confirming or consummating any plan of reorganization of Debtors, and

the terms and provisions of this Interim Order as well as the priorities in payment, liens, and

security interests granted pursuant to this Interim Order and the Loan Documents shall continue

in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens

and security interests shall maintain their priority as provided by this Interim Order until all

Obligations are indefeasibly paid and satisfied; provided, that, all obligations and duties of

Lender hereunder, under the Loan Documents or otherwise with respect to any future loans and

advances or otherwise shall terminate immediately upon the earlier of the date of any Event of

Default or the date that a plan of reorganization of the Debtors becomes effective unless Lender

has given its express prior written consent thereto, no such consent being implied from any other

action, inaction or acquiescence by Lender.

(b)     The provisions of this Interim Order and the Loan Documents shall

inure to the benefit of Debtors, Lender and the Pre-Petition Lender and shall be binding upon

Debtors, Lender, and the Pre-Petition Lender and their respective successors and assigns,

including any Chapter 11 or Chapter 7 Trustee or other fiduciary hereafter appointed as a legal

representative of Debtors or with respect to property of the estate of Debtors, whether under

Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and shall also be binding

upon all creditors of Debtors and other parties in interest.

25.     <u>No Modification or Stay of This Interim Order</u>.  If any or all of the

provisions of this Interim Order are hereafter modified, vacated or stayed, such modification,

vacation or stay shall not affect (a) the validity of any obligation, indebtedness or liability

incurred by Debtors to Lender or the Pre-Petition Lender prior to the effective date of such

modification, vacation or stay, (b) the validity or enforceability of any security interest, lien, or

priority authorized or created hereunder or pursuant to the Loan Documents, as applicable, or (c)

the indefeasible repayment by Debtors of the Pre-Petition Lender Debt.  Notwithstanding any

such modification, vacation or stay, any indebtedness, obligations or liabilities incurred by

Debtors to Lender or the Pre-Petition Lender prior to the effective date of such modification,

vacation or stay shall be governed in all respects by the original provisions of this Interim Order,

502585.7                                    34

and Lender and the Pre-Petition Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations and/or liabilities. The obligations and indebtedness of Debtors to Lender under this Interim Order and/or the Loan Documents shall not be discharged by the entry of an order confirming a plan of reorganization in Debtors' bankruptcy cases pursuant to Section 1141(d)(4) of the Bankruptcy Code or otherwise, unless and until all Obligations of Debtors to Lender are indefeasibly paid in full in accordance with the terms and conditions of the Loan Documents prior to or concurrently with the entry of such order.

26.    No Waivers or Modification of Interim Order.  Debtors irrevocably waive any right to seek any modifications or extensions of this Interim Order without the prior written consent of Lender and no such consent shall be implied by any other action, inaction or acquiescence by Lender.  Notwithstanding anything to the contrary contained herein, no provision of this Interim Order concerning the repayment of the Pre-Petition Lender Debt pursuant to the provisions of this Interim Order shall be modified, vacated, stayed or altered in any manner or respect.

27.    Conflicting Provisions.  Unless otherwise provided in this Interim Order, to the extent the terms and conditions of the Loan Documents are in conflict with the terms and conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

28.    Good Faith.  The terms of the financing arrangements among Debtors and Lender have been negotiated in good faith and at arms' length among Debtors and Lender and any loans, advances or other financial accommodations which are made or caused to be made to Debtors by Lender pursuant to the Loan Documents are deemed to have been made and provided

in good faith, as the term "good faith" is used in Section 364(e) of the Bankruptcy Code, and

shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that

this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or

otherwise.  Consistent with Section 364(e) of the Bankruptcy Code, if any or all of the provisions

of this Interim Order are hereafter modified, vacated or stayed:

  i.   such stay, modification or vacation shall not affect the validity of any
       obligation, indebtedness, liability or lien granted or incurred by an Debtor
       to Lender prior to the effective date of such stay, modification or vacation,
       or the validity, enforceability or priority of any lien, priority or right
       authorized or created under the original provisions of this Interim Order or
       pursuant to the Loan Documents; and

  ii.  any indebtedness, obligation or liability incurred by any Debtor to Lender
       under the Loan Documents prior to the effective date of such stay,
       modification or vacation shall be governed in all respects by the original
       provisions of this Interim Order, and Lender shall be entitled to all the
       rights, remedies, privileges and benefits, including the liens, security
       interests and priorities granted herein and pursuant to the Loan
       Documents, with respect to any such indebtedness, obligation or liability;
       and

  iii. since the loans made pursuant to the Loan Documents are made in reliance
       on this Interim Order, the Obligations owed Lender prior to the effective
       date of any stay, modification or vacation of this Interim Order cannot, as

a result of any subsequent order in these chapter 11 cases, or in any superseding case, be subordinated, lose its lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to Lender under this Interim Order and/or the Loan Documents.

29.    <u>Interim Financing Term</u>.  The authorization of Debtors to obtain Loans and Letter of Credit Accommodations from Lender in accordance with the Loan Documents and this Interim Order shall expire sixty (60) days from the date of entry of this Interim Order, unless a Final Financing Order (as defined in the Credit Agreement) in form and substance satisfactory to Lender is entered on or before such date.

30.    <u>Final Hearing</u>.  This matter is set for a final hearing at 10:00 a.m. on March 15, 2005 ("Final Hearing"), in the United States Bankruptcy Court for the Southern District of New York, at which time any party-in-interest may appear and state its objections, if any, to the provisions of the post-petition financing arrangements among Debtors and Lender. The following parties shall immediately, and in no event later than February 26, 2005, be mailed copies of this Interim Order or such written summary of this Interim Order as the Court may approve:  (a) the Interim Noticed Parties, (b) all creditors known to the Debtors who may have liens against or interests in any of the Debtors' assets and properties, including, without limitation, all landlords, operators, mortgagors and/or mortgagees of the premises at which any of the Debtors' Inventory or other items of Collateral are located; and (c) all parties who have filed a Notice of Appearance in these Chapter 11 cases.  Objections shall be in writing and shall be filed with the Clerk of this Court, on or before March 11, 2005 at 4:00 p.m., with a copy served upon Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New

York 10036, Attention: D. J. Baker, Esq. and Alexandra Margolis, Esq.; King & Spalding LLP,

191 Peachtree Street, Atlanta, Georgia 30303, Attention: Sarah Borders, Esq.; Otterbourg,

Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York  10169, Attention:

Jonathan N. Helfat, Esq.; and Shearman & Sterling LLP, 599 Lexington Avenue, New York,

New York 10022-6069, Attention:  Andrew Tenzer, Esq. so that such objections are received,

along with copy to Chambers, on or before 4:00 p.m., March 11, 2005.  Any objections by

creditors or any other party-in-interest to any of the provisions of the post-petition financing

arrangements among Debtors and Lender shall be deemed waived unless filed and received in

accordance with the foregoing on or before the close of business on such date.  Except as

otherwise provided in this paragraph, the terms of this Interim Order shall be valid and binding

upon Debtors, all creditors of Debtors (including, without limitation, the Pre-Petition Secured

Lender), and all other parties-in-interest from and after the date of this Interim Order by this

Court.  In the event this Court modifies any of the provisions of this Interim Order and the Loan

Documents following such further hearing, such modifications shall not affect the rights and

priorities of Lender pursuant to this Interim Order with respect to the Collateral and any portion

of the Obligations which arises, or is incurred or is advanced prior to such modifications (or

otherwise arising prior to such modifications), and this Interim Order shall remain in full force

and effect except as specifically amended or modified at such final hearing.

31.    **In the event of any inconsistency between this Order and the Loan**

**Documents, this order shall govern.**     SMB  2/23/05

Dated: New York, New York
February 23, 2005                         **/s/  STUART M. BERNSTEIN**
                                             United States Bankruptcy Judge