UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

WINN-DIXIE STORES, INC., et al.,

Debtors.

Chapter 11

Case No. 05-11063

(Jointly Administered)

**AFFIDAVIT OF SERVICE**

I, Kathleen M. Logan, hereby certify under penalty that:

1.  I am of legal age and I am not a party to this action.

2.  I am President of Logan & Company, Inc., located at 546 Valley Road, Upper Montclair, New Jersey.

3.  On or about February 22, 2005 I caused copies of:

●  the Motion for Authority (A) to Maintain Existing Bank Accounts and Cash Management System, (B) to Continue Use of Existing Checks, and (C) to Continue Use of Current Investment Policy (Docket No. 13);

to be inserted in first class, postage pre-paid and pre-addressed envelopes and delivered to the U.S. Postal Service and/or via facsimile transmission for delivery to those persons on the Service List attached hereto as Exhibit A.  Copy of the served Motion listed above is attached hereto as Exhibit B.

Dated: February 24, 2005

_____
Kathleen M. Logan

Code:  CM

**EXHIBIT A**

Service List
Cash Management Motion
Overnight

**DEBTOR: WINN-DIXIE STORES, INC.**                                      **CASE: 05-11063 (SMB)**

CREDITOR ID: 278068-23
AMERICAN GATEWAY BANK
ATTN: BOOKKEEPER
PO BOX 500
PORT ALLEN LA 70767

CREDITOR ID: 278071-23
BANK OF GRANITE
ATTN: BOOKKEEPER
PO BOX 128
GRANITE FALLS NC 28630

CREDITOR ID: 278073-23
CENTURA
ATTN: GILLIAN AKABI-DAVIS
3201 BEECHLEAF COURT SUITE 700
RALEIGH NC 27604

CREDITOR ID: 278078-23
COMMUNITY BANK & TRUST
ATTN: LORRAINE BAILEY
PO BOX 1489
LAGRANGE GA 30241

CREDITOR ID: 278077-23
COMMUNITY BANK & TRUST
ATTN: BOOKKEEPER
PO BOX 310
UNION SPRINGS AL 36089

CREDITOR ID: 278076-23
COMMUNITY BANK & TRUST
ATTN: BOOKKEEPER
PO BOX 1900
CORNELIA GA 30531

CREDITOR ID: 278084-23
FIRST NATIONAL BANK OF WAUCHULA
ATTN: BOOKKEEPER
PO BOX 966
WAUCHULA FL 33873

CREDITOR ID: 278086-23
HANCOCK BANK
ATTN: MARTY REGAN
PO BOX 4019
GULFPORT MS 39502

CREDITOR ID: 278088-23
IBERIA SAVINGS BANK
ATTN: BOOKKEEPER
PO BOX 12440
NEW IBERIA LA 70562

CREDITOR ID: 278090-23
IRONSTONE BANK
ATTN: PAT CIOTOLA
PO BOX 667
NORCROSS GA 30091

CREDITOR ID: 278089-23
IRONSTONE BANK
ATTN: PAT CIOTOLA
10865 HAYNES BRIDGE ROAD
ALPHARETTA GA 30022

CREDITOR ID: 278096-23
PEOPLES STATE BANK & TRUST
ATTN: RETHA HUTTO
72 EAST PARKER STREET
BAXLEY GA 31513

CREDITOR ID: 278098-23
SECURITY STATE BANK
ATTN: BOOKKEEPER
PO BOX 628
MCRAE GA 31055

CREDITOR ID: 278099-23
SOUTH GA BANKING CO.
ATTN: VICKI WALKER
PO BOX 1505
TIFTON GA 31793

CREDITOR ID: 278100-23
SUNTRUST
ATTN: KERI SALEM
PO BOX 2848
MAIL CODE FL - ORLANDO-1044
ORLANDO FL 32802

CREDITOR ID: 278101-23
TECHE FEDERAL SAVINGS BANK
ATTN: BOBBY
PO BOX 9670
NEW IBERIA LA 70562

CREDITOR ID: 278102-23
THE FIRST NATIONAL BANK
ATTN: BOOKKEEPER
PO BOX 797
TALLADEGA AL 35161

CREDITOR ID: 278103-23
THE HERITAGE BANK
ATTN: VICKI MONDAY
PO BOX 1009
HINESVILLE GA 31310

CREDITOR ID: 278104-23
THE PROVIDENT BANK
ATTN: ACCOUNT MAINTENANCE
ONE EAST FOURTH STREET
CINCINNATI OH 45269

CREDITOR ID: 278111-23
WACHOVIA
ATTN: JENNY CAMPBELL - MC NY4904
12 E 49TH STREET, 20TH FLOOR
NEW YORK NY 10017-1028

CREDITOR ID: 278110-23
WACHOVIA
ATTN: DEBORAH RENTZ CCSC FL0117
214 N. HOGAN STREET
JACKSONVILLE FL 32231

**Total: 21**

Service List
Cash Management Motion
Faxed

**DEBTOR:   WINN-DIXIE STORES, INC.**                                    **CASE:   05-11063 (SMB)**

CREDITOR ID: 278069-23
AMSOUTH
ATTN: LEA ZIMMERMAN
10245 CENTURION PARKWAY
SUITE 200
JACKSONVILLE FL 32256

CREDITOR ID: 278070-23
BANCORP SOUTH
ATTN: NAN CORBELL
PO BOX 787
ABERDEEN MS 39730

CREDITOR ID: 278072-23
BB&T
ATTN: LIZ HOLDER
PO BOX 996
WILSON NC 27894

CREDITOR ID: 278074-23
COLONIAL BANK
ATTN: SHARON PATTERSON
PO BOX 1887
BIRMINGHAM AL 35201

CREDITOR ID: 278075-23
COLONY BANK OF FITZGERALD
ATTN: DEBBIE COBB
PO BOX 1029
FITZGERALD GA 31750

CREDITOR ID: 278079-23
COMMUNITY TRUST BANK
ATTN: BOOKKEEPER
DRAWER 90
HAZARD KY 41702

CREDITOR ID: 278080-23
COMPASS BANK
ATTN: KEELY WAGGONER MCGEE
PO BOX 10566
BIRMINGHAM AL 35296

CREDITOR ID: 278081-23
FIDELITY FEDERAL BANK & TRUST
ATTN: BOOKKEEPER
PO BOX 989
WEST PALM BEACH FL 33402

CREDITOR ID: 278082-23
FIFTH THIRD BANK
ATTN: MATTHEW J. ZECK
38 FOUNTAIN SQUARE PLAZA, MD 10905E
CORPORATE TREASURY MANAGEMENT
CINCINNATI OH 45263

CREDITOR ID: 278083-23
FIRST BANK
ATTN: PEARL
P.O. BOX 1237
CLEWISTON FL 33440

CREDITOR ID: 278085-23
FIRST STATE BANK
ATTN: KELLIE TYRON
PO BOX 1579
KEY WEST FL 33041

CREDITOR ID: 278087-23
HIBERNIA BANK
ATTN: ANGELA TAM
PO BOX 61540
NEW ORLEANS LA 70161

CREDITOR ID: 278091-23
MARKETPLACE FEDERAL CREDIT UNION
ATTN: ACCOUNT MAINTENANCE
7020 A.C. SKINNER PKWY
SUITE 100
JACKSONVILLE FL 32256

CREDITOR ID: 278092-23
MERCHANTS & MARINE BANK
ATTN: DEBBIE NOVAK
3118 PASCAGOULA STREET
PASCAGOULA MS 39567

CREDITOR ID: 278093-23
NATIONAL BANK OF WALTON
ATTN: BOOKKEEPER
PO BOX 728
MONROE GA 30655

CREDITOR ID: 278094-23
NORTHEAST GEORGIA BANK
ATTN: BOOKKEEPER
PO BOX 765
LOVONIA GA 30553

CREDITOR ID: 278095-23
OCEAN BANK
ATTN: JAVIER LOPEZ
PO BOX 44-1140
MIAMI FL 33144

CREDITOR ID: 278097-23
REGIONS BANK
ATTN: LINDA MOORE
417 N. 20TH ST. 8TH FLOOR
BIRMINGHAM AL 35203

CREDITOR ID: 278105-23
TIPPINS BANK & TRUST CO.
ATTN: BOOKKEEPER
PO BOX 157
CLAXTON GA 30417

CREDITOR ID: 278106-23
TRUSTMARK NATIONAL BANK
ATTN: GUY BOYLL
PO BOX 291
CORPORATE ACCOUNTS ROOM 610
JACKSON MS 39205

CREDITOR ID: 278107-23
UNION PLANTERS BANK
ATTN: GINA HOOD X3317
1231 SUNSET DR
GRENADA MS 38901

CREDITOR ID: 278108-23
UNITED BANK
ATTN: ABBY
PO BOX 8
ATMORE AL 36504

CREDITOR ID: 278109-23
US BANK
ATTN: CHIP SPIEGEL
PO BOX 1038
CINCINNATI OH 45201

CREDITOR ID: 278112-23
WAKULLA BANK
ATTN: SUSAN PAYNE TURNER
PO BOX 610
CRAWFORDVILLE FL 32326

CREDITOR ID: 278113-23
WILSON & MUIR
ATTN: BOOKKEEPING
PO BOX 346
BARDSTOWN KY 40004

**Total:   25**

**EXHIBIT B**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | **:** | |
| | **:** | **Chapter 11** |
| | **:** | |
| **WINN-DIXIE STORES, INC., <u>et al.</u>,** | **:** | **Case No. 05-11063** |
| | **:** | |
| **Debtors.** | **:** | **(Jointly Administered)** |
| | **:** | |

---------------------------------------------------------------x

## MOTION FOR AUTHORITY (A) TO MAINTAIN EXISTING
## BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM,
## (B) TO CONTINUE USE OF EXISTING CHECKS, AND
## <u>(C) TO CONTINUE USE OF CURRENT INVESTMENT POLICY</u>

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

(collectively, the "Debtors"), respectfully represent:

## Background

**A.    Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the

Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and

manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the

Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no

official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of

this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2).

**B.    Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United

States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to

published reports, the Debtors are the eighth-largest food retailer in the United States and one of

the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery

store and has grown through acquisitions and internal expansion.  The Debtors currently operate

more than 900 stores in the United States.  Substantially all of the Debtors' store locations are

leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.      Capital Structure.**

8.      The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.      The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations under the Credit Agreement in the aggregate amount of approximately $427 million.  The Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.     Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture").  Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes.  The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity.  The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12.     Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN.  All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.     Events Leading to the Debtors' Chapter 11 Cases.**

13.     In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core, and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.      Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated

accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million.  As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

**Relief Requested**

20.     By this Motion, the Debtors respectfully request the entry of an order, pursuant to Sections 105(a) and 345 of the Bankruptcy Code, authorizing (a) maintenance of their pre-petition bank accounts and cash management system, provided that each bank account bears the designation "debtor-in-possession" or "DIP" (b) continued use of their existing checks, provided that the Debtors affix a "debtor-in-possession" or "DIP" legend on each of the checks, and (c) continued use of their existing investment policy.

21.     Specifically, the Debtors respectfully request entry of an order providing for the waiver of certain of the operating guidelines (the "Operating Guidelines") established by the United States Trustee for the Southern District of New York that require the Debtors: (a) to close all existing bank accounts and to open new debtor-in-possession bank accounts; (b) to establish one account for all estate monies required for the payment of taxes (including payroll taxes); (c) to maintain a separate debtor-in-possession account for cash collateral; and (d) to obtain checks for all debtor-in-possession accounts bearing the bankruptcy case number and the type of account.  Instead, the Debtors propose that their Banks designate each of their current accounts as a "debtor-in-possession" or "DIP" account, to affix a ""debtor-in-possession" or "DIP" legend to each of their current checks, and to affix the "debtor-in-possession" or "DIP" legend to any orders of new check stock during their Chapter 11 cases.  The Operating Guidelines are designed to separate pre-petition and post-petition transactions and operations and prevent the inadvertent payment of pre-petition claims.  The Debtors believe that the existing structure and accounting procedures currently employed by the Debtors (described below) satisfy the spirit of the United States Trustee's requirements and that the Debtors' continued use of existing accounts and checks, as modified by the Debtors' proposals described herein, is necessary for a smooth and

orderly transition into Chapter 11 and to minimize the interference with and disruption of the Debtors' operations that the bankruptcy process entails.

22.    The Debtors' ability to maintain and continue their consolidated cash management system and existing bank accounts is essential to the efficient administration of the Debtors' estates and is necessary to prevent inordinate disruption to the Debtors' operations. Maintenance of the Debtors' cash management system and existing bank accounts is also essential to the Debtors' ability to fund their existing payroll and to implement their proposed debtor-in-possession financing arrangements, all of which are critical components of the Debtors' efforts to reorganize.  Indeed, any disruption in the means by which the Debtors manage their financial affairs and satisfy their ordinary course post-petition obligations (and pre-petition payroll and other pre-petition obligations for which appropriate approval is being sought) would jeopardize the Debtors' reorganization from the outset.

23.    As described more fully below, prior to the commencement of these Chapter 11 cases, the Debtors maintained more than 100 bank accounts with various depositary institutions, including those identified on the schedule attached hereto as Exhibit A (the "Bank Accounts").[2] The Debtors' primary cash management bank is Wachovia Bank, N.A. ("Wachovia"), where the Debtors maintain accounts through which substantially all customer payments are deposited and disbursements are made.

---

[2]    The Debtors believe that Exhibit A is a complete listing of their Bank Accounts. In the event it is determined that any Bank Account was inadvertently omitted from the list, the Debtors request that the relief sought herein be deemed to apply to any and all Bank Accounts maintained in the Debtors' names.

A.    **Cash Management.**

(i)    <u>**The Cash Management System**</u>

24.    The Debtors maintain a sophisticated cash management system with more than 100 bank accounts with a variety of national banks, local banks, and credit unions (the "Cash Management Banks").  The following is a general description of the cash management system currently used by the Debtors.  The Debtors request authority to continue to use the cash management system in substantially the same form, provided that each of the Bank Accounts is designated a "debtor-in-possession" or "DIP" account by the respective Cash Management Bank.

(a)    **Depository Accounts.**

25.    The Debtors maintain accounts (each, a "Depository Account") with varying banks (the "Depository Banks") into which revenues from stores, and automated teller machines located within the stores, are deposited.  Based upon a store's location, the store will either maintain its own Depository Account or will share a Depository Account with several stores located in the same general area.

26.    The Depository Accounts also fulfill a store's daily working capital needs, serving as a source for cash to replenish a store's vault if it falls below its daily target cash on hand.  Cash on hand is reconciled to the point of sale on a daily basis and from the point of sale to a centralized tracking system on a weekly basis.

27.    Before the end of each business day, the Debtors initiate a wire transfer from each Depository Account in the amount equal to the available cash balance that exceeds a pre-determined target level for each Depository Account.

### (b)    Principal Account.

28.    The Debtors maintains a principal concentration account with Wachovia into which the balances from the various Depository Accounts are concentrated each day.  Because of the way the Debtors' funds flow, the vast majority of their funds at any one time reside in the Principal Account.

### (c)    Disbursement Accounts.

29.    The Debtors maintain separate, "zero-balance" controlled disbursement accounts to fund their operations with accounts designated for accounts payable, payroll, special accounts payable, certain lottery proceeds, and certain credit card payments.  In addition, the Debtors maintain controlled-disbursement accounts through which the Debtors' manufacturing, distribution, and dairy operations are funded.  In some instances, a select few of the Debtors' critical vendors are entitled to request direct debit authorization; if the authorization is approved, these requests are debited to the Principal Account.  Otherwise, funds are transferred from the Principal Account to the various disbursement accounts in amounts sufficient to permit checks to be honored as the checks are presented against the accounts.

### (d)    Other Components.

30.    The Debtors also maintain several stand-alone accounts that are also regularly swept into the Principal Account, including accounts for lottery proceeds, credit card receipts, pharmacy receipts, receipts for beer, wine, and spirits, and accounts for debit card, credit card, and EBT reconciliations.  In addition, the Debtors also maintain several stand-alone accounts that are not regularly swept into the Principal Account, including accounts for taxes.

31.    Certain non-debtor affiliates of the Debtors that are located in the Bahamas also infrequently participate in the Cash Management System.  These affiliates are: W-D (Bahamas)

Limited, Bahamas Supermarkets Limited, and The City Meat Markets Limited.  In the ordinary

course of business, on a net basis, these entities contribute cash into the Cash Management

System and do not withdraw funds from the system.

32.     The Debtors maintain regular and detailed records of all transfers among the

various accounts described above.

### (ii)     Maintaining the Cash Management Systems is Integral to the Debtors Uninterrupted Operations

33.     The foregoing centralized cash management procedures have been used by the

Debtors in the past and constitute ordinary, usual, and essential business practices.  Complex

enterprises customarily employ cash management procedures similar to the Debtors' cash

management system because of the numerous benefits they provide, including enhanced control

of funds collected and disbursed across wide-ranging operations and reduced administrative

expenses resulting from centralized control and account reconciliation.  Such a system is

necessary to generate timely and accurate financial information necessary to manage the

Debtors' complex businesses.  Requiring the Debtors to establish a new cash management

system immediately would cause significant delay and produce substantial disruptions of the

Debtors' businesses, particularly when the Debtors are already subject to the usual operational

adjustments attendant to a Chapter 11 filing.  Further, as a practical matter, because of the

Debtors' corporate and financial structure, it would be difficult and expensive to establish and

maintain a separate cash management system for each Debtor.

34.     The Debtors hereby seek authorization to continue utilizing their consolidated

cash management system without disruption.  Given the substantial size and complexity of the

Debtors' operations, the Debtors simply cannot successfully preserve and enhance their value as

a going concern or successfully reorganize if there is substantial disruption in the Debtors' cash

management procedures.  If the requested relief is not granted, the Debtors will suffer significant harm from the almost total operational paralysis which would invariably result if the Court does not permit the current cash management system to be sustained, irreparable harm as a result of the inevitable delay in establishing new post-petition systems and procedures, and the distraction of senior management.

35.    Notwithstanding the Debtors' request to continue to use their cash management system, the Debtors do not intend by this Motion to address, affect, or otherwise prejudice the rights of any creditor of any particular Debtor.  In this respect, to protect creditor interests, the Debtors will continue their pre-petition practice of maintaining precise and strict records and reporting with respect to all intercompany transfers so that all transactions can be readily ascertained.  Furthermore, as additional protection for creditor interests, the Debtors propose that all net post-petition advances from one Debtor to any of the other Debtors shall have priority over any and all administrative expenses (incurred by any of the Debtors) of the kind specified in Section 503(b) and 507(b) of the Bankruptcy Code, subject and subordinate only to (a) any super-priority administrative claims granted by this Court in connection with any motion filed by the Debtors authorizing them to obtain post-petition financing, (b) any payments required to be made to the United States Trustee as specified in 28 U.S.C. § 1930, (c) reasonable fees and expenses of a trustee under Section 726(b) of the Bankruptcy Code, and (d) any compensation allowed by this Court under Sections 328, 330, or 331 of the Bankruptcy Code to any professional retained by the Debtors or any official committee appointed in these cases.

36.    To effectuate the foregoing, and to implement the Debtors' debtor-in-possession financing arrangements (if such authorization is granted by this Court), the Cash Management Banks must be authorized and directed to continue to consolidate the Debtors' funds in

accordance with pre-petition practices, and the automatic stay must be reaffirmed so as to

preclude the Cash Management Banks from offsetting, freezing, recouping, affecting, or

otherwise impeding the use or transfer of or access to any funds of the Debtors contained or

deposited in the Bank Accounts on or subsequent to the Petition Date.

**(iii)    Basis for Relief**

37.    This Court is authorized to grant the relief requested in this Motion pursuant to

Section 105(a) of the Bankruptcy Code, which provides as follows:

> The court may issue any order, process, or judgment that is necessary or
> appropriate to carry out the provisions of this title. No provision of this title
> providing for the raising of an issue by a party in interest shall be construed to
> preclude the court from, sua sponte, taking any action or making any
> determination necessary or appropriate to enforce or implement court orders or
> rules, or to prevent an abuse of process.

38.    Bankruptcy courts routinely grant Chapter 11 debtors authority to continue using

their existing cash management systems and treat such requests for such authority as a relatively

"simple matter."  In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  This

is particularly true where, as here, the Chapter 11 case involves complex financial affairs.  In

fact, some courts have specifically held that a debtor's use of its pre-petition "routine cash

management system" is "entirely consistent" with the provisions of the Bankruptcy Code.  See In

re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985).  Likewise, in another context, the United

States Bankruptcy Court for the District of Delaware has explained that a centralized cash

management system "allows efficient utilization of cash resources and recognizes the

impracticalities of maintaining separate cash accounts for many different purposes that require

cash."  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1993).  The Third

Circuit agreed, emphasizing that a requirement to maintain all accounts separately "would be a

huge administrative burden and economically inefficient."  In re Columbia Gas Sys., Inc., 997

F.2d 1039, 1061 (3d Cir. 1993), cert. denied, 510 U.S. 1110 (1994).  See also In re Southmark

Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor to

"administer more efficiently and effectively its financial operations and assets"); In re UNR

Indus., Inc., 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984).

       39.     Accordingly, similar relief has been granted in recent significant bankruptcy

cases, including cases in this District.  See, e.g., In re Penn Traffic Co., Case No. 03-22945

(Bankr. S.D.N.Y. Oct. 9, 2003); In re Dairy Mart Convenience Stores, Inc., Case No. 01-42400

(Bankr. S.D.N.Y. Sept. 26, 2001); In re Teligent, Inc., Case No. 01-12974 (Bankr. S.D.N.Y. May

21, 2001); In re The Grand Union Co., Case No. 00-39613 (Bankr. D.N.J. Oct. 3, 2000).

**B.**     **Bank Accounts.**

       40.     Integrally related to the Debtors' cash management system is the continued

existence of the Bank Accounts.  The Debtors, their employees, and their vendors would suffer

great hardship if the Debtors were required to substitute new debtor-in-possession bank accounts

for the existing Bank Accounts.  Substitution of the existing Bank Accounts would essentially

render this Court's approval of the continuation of the cash management system, if granted,

meaningless, and inevitably lead to the same delays, confusion, and disruption of the Debtors'

business that this Motion seeks to avoid.  All interested parties will be well served if the Debtors

are permitted to preserve business continuity and avoid the operational and administrative delay

that closing the existing bank accounts and opening new ones would entail.  The Debtors do not

seek authorization to pay any pre-petition claims through checks drawn on the existing bank

accounts that have not yet been honored by the applicable drawee bank, except as separately

authorized by this Court.  Moreover, the Debtors will instruct the Cash Management Banks to

designate each of the Bank Accounts as a "debtor-in-possession" or "DIP" account.

41.     Courts have recognized that a bankruptcy court has the discretion to allow the continued use of existing pre-petition bank accounts, including bankruptcy courts in this District. See, e.g., In re Penn Traffic Co., Case No. 03-22945 (Bankr. S.D.N.Y. Oct. 9, 2003); In re Grant Broad, Inc., 75 B.R. 819, 820 (E.D. Pa. 1987) (referring to order authorizing use of cash collateral and pre-petition bank accounts); In re New York City Shoes, Inc., 78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) (debtor depositing post-petition funds into pre-petition bank accounts). Because of the severe disruption to the Debtors' cash management system and, by extension, the Debtors' businesses, that would result if the Debtors were forced to open new accounts, the Debtors believe it important that this Court grant their request for maintaining the Bank Accounts.  Moreover, by designating each account as a "debtor-in-possession" or "DIP" account, the Debtors believe that the accounts will comply with the spirit, if not the letter, of the Operating Guidelines.

**C.     Checks.**

42.     In the ordinary course of their businesses, the Debtors use numerous checks.  It would be unduly burdensome and costly to replace all of the Debtors' checks before they are exhausted.  The Debtors respectfully submit that to do so would be unnecessary, given that appropriate care can be taken to assure the proper use of the existing checks, particularly by the Debtors' proposal to affix a "debtor-in-possession" or "DIP" legend to the current check stock and any new orders of check stock during these Chapter 11 cases.

**D.     Continued Use of Current Investment Policy.**

43.     The Debtors also seek a waiver of the deposit guidelines set forth in Section 345(b) of the Bankruptcy Code to the extent necessary to allow the Debtors to maintain their bank accounts and their existing cash management procedures.

44.     The Debtors' current investment guidelines require that the Debtors maintain cash in excess of daily operating requirements in a marketable securities portfolio, consisting of securities of "suitable quality" that provide acceptable yields while retaining a high degree of liquidity.  The securities in the portfolio are generally securities issued by federal, state, and local governmental entities, negotiable certificates of deposit of major United States commercial banks, money market fund securities, or securities with a rating of "prime" or "A" or better from nationally recognized rating agencies.  The Debtors perform an annual internal audit to ensure that funds are invested in a manner consistent with proper controls, procedures, and safeguards. Moreover, the funds invested pursuant to these guidelines are subject to a custodial agreement between the Debtors and Wachovia to ensure the receipt, release, and safe-keeping of securities.

45.     Section 345 of the Bankruptcy Code authorizes a debtor to invest cash and money in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  Section 345(b) of the Bankruptcy Code provides as follows:

> (b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
>
> (1) a bond—
>
> > (A) in favor of the United States;
> >
> > (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
> >
> > (C) conditioned on—
> >
> > > (i) a proper accounting for all money so deposited or invested and for any return on such money;
> > >
> > > (ii) prompt repayment of such money and return; and

- 16 -

(iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 9303 of title 31;

unless the court for cause orders otherwise.

11 U.S.C. § 345(b).

46.    Section 345(b) also expressly provides that the Court may modify a debtor's investment requirements for "cause."  Here, the Debtors are large, sophisticated entities with a complex cash management system that relies on multiple banks and accounts on a daily basis. Courts have that found these characteristics sufficient to establish the requisite cause for a modification of the Section 345(b) requirements.  See In re Service Merchandise Co., Inc., 240 B.R. 894, 897 (Bankr. M.D. Tenn. 1999) (waiving Section 345 requirements because of the debtors' sophisticated cash management system procedures).  Similarly, the Debtors believe that their existing cash management procedures are designed to protect the principal invested while maximizing liquidity and, therefore, believe that sufficient cause exists to waive the investment requirements of Section 345(b) to allow the Debtors to continue their existing cash management procedures.

47.    Courts have routinely granted requests to approve the continued use of investment and deposit guidelines that do not comply strictly with Section 345.  See, e.g., In re Penn Traffic Co., Case No. 03-22945 (Bankr. S.D.N.Y. Oct. 9, 2003); In re Ames Department Stores, Inc., Case No. 01-42217 (Bankr. S.D.N.Y. Aug. 20, 2001).  This is especially the case where, as here, the manner of the proposed investments is safe and prudent.  The Debtors submit that their pre-petition investment practices generally conform with the intent of Section 345(b) to protect and maximize the value of their estates.

48.    Moreover, the Debtors believe that the deposits at issue are safe because of the relative strength of the banks where the Debtors' pre-petition accounts are maintained. Requiring the Debtors to open multiple accounts at different banks so that the deposits in each such bank would be insured by FDIC would be unnecessarily burdensome and would lead to the same delays and disruption to the Debtors' business that this Motion seeks to avoid.

49.    For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates.

## Notice

50.    Notice of this Motion has been provided to the Office of the United States Trustee, counsel for Wachovia, as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## Waiver of Memorandum of Law

51.    Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

(a)    authorizing the Debtors to maintain their cash management system, bank accounts, checks, and investment guidelines, subject only to any modifications described in this Motion; and

(b)    granting the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
        New York, New York

/s/      *D. J. Baker*
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:   (917) 777-2150

-and-

Sarah Robinson Borders
Brian C. Walsh
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

PROPOSED ATTORNEYS FOR THE DEBTORS

## EXHIBIT A

## SCHEDULE OF BANK ACCOUNTS

| Bank Name | Account Number | Type of Account |
|---|---|---|
| American Gateway Bank | 224782 | Store Depository Account - NOL71 |
| AmSouth Bank | 3840250830 | Master ZBA Account - HDQ06 |
| AmSouth Bank | 0040003957 | Store Depository Account - JAX05 |
| AmSouth Bank | 3840250857 | Store Depository Account - MTG38 |
| AmSouth Bank | 3840291952 | Store Depository Account - NOL02 |
| AmSouth Bank | 3840250849 | Store Depository Account - ORL05 |
| AmSouth Bank | 0040003736 | Division Principal Account - MTG |
| AmSouth Bank | 0040625559 | Division Principal Account - NOL |
| AmSouth Bank | 0040003744 | Store Depository Account - SAV05 |
| Bancorp South | 60374394 | Store Depository Account - NOL15 |
| Bank of Granite | 22683 | Store Depository Account - CHR18 |
| BB&T | 1951000627 | Store Depository Account - CHR12 |
| BB&T | 5140676103 | Store Depository Account - JAX37 |
| BB&T | 5198710077 | Division Principal Account - RAL |
| BB&T | 1951000783 | Store Depository Account - RAL05 |
| Centura | 211433520 | Store Depository Account - RAL38 |
| Colonial Bank | 8006554813 | Store Depository Account - MTG87 |
| Colony Bank of Fitzgerald | 123798 | Store Depository Account - JAX13 |
| Community Bank & Trust | 196238 | Store Depository Account - MTG32 |
| Community Bank & Trust | 12785 | Store Depository Account - MTG34 |
| Community Bank & Trust | 303578 | Store Depository Account - MTG74 |
| Community Trust Bank | 189588 | Store Depository Account - CHR27 |
| Compass Bank, N.A. | 8104484 | Store Depository Account - MTG13 |
| Compass Bank, N.A. | 71898016 | Store Depository Account - NOL04 |
| Fidelity Federal Bank & Trust | 946989 | Store Depository Account - MIA62 |
| Fifth Third Bank | 7021319764 | Credit Card Wiring Account |
| First Bank | 2013742706 | Store Depository Account - MIA01 |
| First National Bank of Wauchula | 0000072524 | Store Depository Account - ORL38 |
| First State Bank | 100107587 | Store Depository Account - MIA05 |
| Hancock Bank | 043194140 | Store Depository Account - NOL35 |
| Hancock Bank | 013172686 | Store Depository Account - NOL36 |
| Hibernia Bank | 48488694 | Store Depository Account - NOL49 |
| Iberia Savings Bank | 1900120500 | Store Depository Account - NOL13 |
| IronStone Bank | 9060229086 | Store Depository Account - MIA14 |
| IronStone Bank | 9061045772 | Store Depository Account - SAV03 |
| Marketplace Federal Credit Union | 69280 | EBT Account |
| Marketplace Federal Credit Union | 54100 | POS Account |
| Merchants & Marine Bank | 1096012 | Store Depository Account - NOL80 |
| National Bank of Walton | 16352 | Store Depository Account - MTG28 |
| Northeast Georgia Bank | 1863 | Store Depository Account - CHR49 |
| Ocean Bank | 001401420305 | Store Depository Account - MIA61 |

| Bank Name | Account Number | Type of Account |
|---|---|---|
| Peoples State Bank & Trust | 20003480 | Store Depository Account - JAX04 |
| Regions Bank | 7889000003 | Master ZBA Account - HDQ07 |
| Regions Bank | 7887001088 | Store Depository Account - MTG53 |
| Regions Bank | 7887001053 | Store Depository Account - MTG91 |
| Regions Bank | 7887001061 | Store Depository Account - NOL81 |
| Security State Bank | 106450 | Store Depository Account - JAX23 |
| South GA Banking Co. | 41251 | Store Depository Account - JAX19 |
| SunTrust | 215252202558 | Store Depository Account - CHR53 |
| SunTrust | 215252196833 | Master ZBA Account - HDQ05 |
| SunTrust | 215252186900 | Store Depository Account - JAX39 |
| SunTrust | 215252196868 | Store Depository Account - MTG36 |
| SunTrust | 215252196850 | Store Depository Account - MTG37 |
| Teche Federal Savings Bank | 43900018 | Store Depository Account - NOL27 |
| The First National Bank | 1030248 | Store Depository Account - MTG93 |
| The Heritage Bank | 45989 | Store Depository Account - JAX06 |
| The Provident Bank | 0183822 | Consolidated Returns - HDQ99 |
| Tippins Bank & Trust Co. | 1029584 | Store Depository Account - JAX27 |
| Trustmark National Bank | 8701420380 | Store Depository Account - NOL48 |
| Trustmark National Bank | 4907394315 | Store Depository Account - SAV04 |
| Union Planters Bank | 9000447496 | Store Depository Account - NOL07 |
| United Bank | 100603001 | Store Depository Account - MTG06 |
| US Bank | 0492988720 | Store Depository Account - CHR02 |
| US Bank | 0489026575 | Store Depository Account - CHR22 |
| Wachovia Bank, N.A. | 2079940009491 | ADS - Dorman |
| Wachovia Bank, N.A. | 2079940000225 | Accounts Payable |
| Wachovia Bank, N.A. | 2000001208760 | Georgia Lottery - Atlanta |
| Wachovia Bank, N.A. | 2000001208841 | Georgia Lottery - Charlotte |
| Wachovia Bank, N.A. | 2000014403329 | Store Depository Account - CHR23 |
| Wachovia Bank, N.A. | 2090002600018 | Store Depository Account - CHR52 |
| Wachovia Bank, N.A. | 2000016834569 | Credit Card |
| Wachovia Bank, N.A. | 2090001855592 | Credit Card |
| Wachovia Bank, N.A. | 2090002259605 | Pharmacy EDS |
| Wachovia Bank, N.A. | 2079940012624 | Beer, Wine, Spirits |
| Wachovia Bank, N.A. | 2000016834381 | Credit Card - Fuel Centers |
| Wachovia Bank, N.A. | 2000008316215 | Credit Card - Fuel Centers |
| Wachovia Bank, N.A. | 2115001559812 | WIN-PAC of Winn-Dixie Stores, Inc. |
| Wachovia Bank, N.A. | 2090002596902 | Master ZBA Account - HDQ01 |
| Wachovia Bank, N.A. | 2000001208883 | Georgia Lottery - Jacksonville |
| Wachovia Bank, N.A. | 2115001961154 | Store Depository Account - JAX15 |
| Wachovia Bank, N.A. | 2150001126828 | Store Depository Account - MIA15 |
| Wachovia Bank, N.A. | 2115001913982 | Management Security Plan |
| Wachovia Bank, N.A. | 2000015261913 | Store Depository Account - MTG94 |
| Wachovia Bank, N.A. | 2090002596708 | Store Depository Account - ORL45 |
| Wachovia Bank, N.A. | 2079940009734 | Payroll |
| Wachovia Bank, N.A. | 2000020114482 | Division Principal Account - CHR |
| Wachovia Bank, N.A. | 2115000000524 | Headquarters Principal |
| Wachovia Bank, N.A. | 2115002187500 | Division Principal Account - JAX |

| Bank Name | Account Number | Type of Account |
|---|---|---|
| Wachovia Bank, N.A. | 2150001648762 | Division Principal Account - MIA |
| Wachovia Bank, N.A. | 2090002596999 | Store Depository Account - RAL14 |
| Wachovia Bank, N.A. | 2000015254768 | Wachovia Consolidated Returns |
| Wachovia Bank, N.A. | 2090002596627 | Store Depository Account - SAV01 |
| Wachovia Bank, N.A. | 2115000360976 | Special Accounts Payable |
| Wachovia Bank, N.A. | 2000027314913 | Taxes held in Trust |
| Wachovia Bank, N.A. | 2000001208809 | Tennessee Lottery |
| Wachovia Bank, N.A. | 2000027518133 | Table Supply Food Co., Inc. |
| Wachovia Bank, N.A. | 2000027518272 | Dixie Stores, Inc. |
| Wakulla Bank | 1010066701 | Store Depository Account - JAX31 |
| Wakulla Bank | 0710029001 | Store Depository Account - JAX32 |
| Wakulla Bank | 0114775001 | Store Depository Account - JAX34 |
| Wakulla Bank | 1110000501 | Store Depository Account - JAX40 |
| Wilson & Muir | 0078093 | Store Depository Account - CHR03 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                             :
                                                  :        **Chapter 11**
                                                  :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**        :        **Case No. 05-11063**
                                                  :
                    **Debtors.**                   :        **(Jointly Administered)**
                                                  :
-------------------------------------------------------------x

### INTERIM ORDER AUTHORIZING DEBTORS (A) TO MAINTAIN EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM, (B) TO CONTINUE USE OF EXISTING CHECKS, AND <u>(C) TO CONTINUE USE OF EXISTING INVESTMENT GUIDELINES</u>

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for authority to maintain existing bank accounts and cash management system, to continue use of existing checks, and to continue use of existing investment guidelines; all as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A. ("Wachovia"), as agent for the Debtors' secured lenders, (iii) the indenture trustee for the

Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors; and no other or further notice being required; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis until such time as the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.; and it is further

ORDERED that any objection to the relief requested by the Motion on a final basis must be filed with the Court and be served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia  30303; and (iv) Pratap Mukharji, Bain & Company, Inc., The Monarch Tower, Suite 1200, 3424 Peachtree Road, NE  Atlanta, GA  30326, so as to be received by _____, 2005 at 5:00 p.m.; and it is further

ORDERED that the Debtors are authorized to continue to use their pre-petition cash management system procedures, as described in the Motion, in the ordinary course of business; and it is further

ORDERED that the Cash Management Banks (as defined in the Motion) are authorized to continue to service and administer all of the Debtors' bank accounts, including the

accounts identified on Exhibit A to the Motion (collectively, the "Bank Accounts"), as accounts

of the respective Debtor as a debtor-in-possession without interruption and in the usual and

ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, or

automated clearing house transfers ("ACH Transfers") drawn on the Bank Accounts after

February 21, 2005 (the "Petition Date") by holders or makers thereof, as the case may be, subject

to the availability of funds, and, in the event it is determined that any Bank Account was

inadvertently omitted from Exhibit A to the Motion, the relief sought herein shall be deemed to

apply to any and all Bank Accounts maintained in the Debtors' names; and it is further

ORDERED that the Debtors are authorized and empowered (a) to designate,

maintain, and continue to use any and all existing bank accounts with the same account numbers,

including, without limitation, the accounts identified in Exhibit A to the Motion; and (b) to treat

the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; and it is

further

ORDERED that the Cash Management Banks shall designate each of the Bank

Accounts as a "debtor-in-possession" or "DIP" account; and it is further

ORDERED that the Cash Management Banks and their affiliates, successors, and

assigns, pursuant to Sections 105 and 362(a) of the Bankruptcy Code, are stayed from offsetting,

freezing, recouping, affecting, or otherwise impeding the use or transfer of or access to any funds

of the Debtors or cash collateral (as defined in Section 363(a) of the Bankruptcy Code),

contained or deposited in the Bank Accounts maintained by the Debtors or their affiliates, on or

after the Petition Date by reason of any claim (as defined in Section 101(5) of the Bankruptcy

Code) of the Cash Management Banks against the Debtors that arose before the Petition Date;

and it is further

ORDERED that, notwithstanding anything to the contrary in any other order entered in the Debtors' Chapter 11 cases substantially contemporaneously with this Order, the Cash Management Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order(s) of this Court, whether the checks, drafts, wires, or ACH transfers are dated prior to, on, or subsequent to the Petition Date, and whether or not the Cash Management Bank believes the payment is or is not authorized by any order(s) of the Court, (b) have no duty to inquire as to whether such payments are authorized by any order(s) of the Court, and (c) have no liability to any party on account of the Debtors' instructions in accordance with this Order or for honoring a pre-petition check or other item as the result of an innocent mistake made despite implementation of customary item handling procedures; and it is further

ORDERED that nothing contained herein shall prevent the Debtors and Wachovia from implementing changes to the cash management system, including, but not limited to, the opening of any additional bank accounts or closing of any existing bank account(s) as they may deem necessary and appropriate, and the Cash Management Banks are authorized to honor the Debtors' requests to open or close, as the case may be, such bank accounts or additional bank accounts; provided, however, that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation and that is organized under the laws of the United States or any State therein and shall be designated a "debtor-in-possession" or "DIP" account by the respective Cash Management Bank; and it is further

ORDERED that the Debtors are authorized to continue to consolidate the management of their cash and cash equivalents, including, without limitation, their pre-petition procedures related to investments of cash, and to effectuate the transfer of funds among the

Debtors in the ordinary course of business, when and in the amounts determined by the Debtors

to be necessary to maintain the various aspects of their business operations; provided, however,

that (a) the Debtors shall maintain strict records of all such transfers in a manner so that all

transactions can be readily ascertained; (b) all net post-petition advances by and among the

Debtors shall be granted super-priority administrative expense status and shall have priority over

any and all administrative expenses (incurred by any of the Debtors) of the kind specified in

Section 503(b) and 507(b) of the Bankruptcy Code, subject and subordinate only to (i) any super-

priority administrative claims granted by this Court in connection with any motion filed by the

Debtors authorizing them to obtain post-petition financing, (ii) any payments required to be

made to the United States Trustee as specified in 28 U.S.C. § 1930, (iii) reasonable fees and

expenses of a trustee under Section 726(b) of the Bankruptcy Code, and (iv) any compensation

allowed by this Court under Sections 328, 330, or 331 of the Bankruptcy Code to any

professional retained by the Debtors or any official committee appointed in these cases; (c) the

Debtors shall pay the Cash Management Banks any reasonable fees, consistent with pre-petition

practices, related to the post-petition services provided by the Cash Management Banks; and (d)

in the course of providing cash management services to the Debtors, Wachovia is authorized,

without further Order of this Court, to deduct from accounts of the Debtors its customary fees

and expenses based upon the nature of the deposit and cash management services rendered to the

Debtors, after the Petition Date, and further, to charge back to the appropriate accounts of the

Debtors any amounts resulting from, among other things, cash services, branch transactions,

issuance of checks, returned checks, other returned items, or settlement of ACH transfers,

regardless of whether such transactions relate to pre-petition or post-petition activities, and all of

such deductions and charge-backs by Wachovia shall be entitled to administrative expense priority; and it is further

ORDERED that any and all accounts opened by the Debtors on or after the Petition Date at any Cash Management Bank shall, for all purposes under this Order, similarly be subject to the rights and obligations of this Order; and it is further

ORDERED that the Debtors and the Cash Management Banks are hereby authorized to continue to perform pursuant to the terms of any pre-petition agreements that may exist between them, except and to the extent otherwise directed by the terms of this Order, including, but not limited to, that certain "Deposit Agreement and Disclosure for Non-Personal Accounts between Wachovia and the Debtors (the "Wachovia Agreement") shall continue to govern the post-petition cash management relationship between the Debtors and Wachovia, and that all of the provisions of such agreement, including, without limitation, the termination and fee provisions, shall remain in full force and effect.  The parties to such agreements shall continue to enjoy the rights and remedies afforded to them under such agreements, except to the extent modified by the terms of this Order or by operation of the Bankruptcy Code.  Nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that Wachovia is authorized to terminate the Wachovia Agreement or any services provided thereunder on not less than thirty (30) days' prior written notice to the Debtors or as otherwise provided in the Wachovia Agreement; and it is further

ORDERED that, absent consent of Wachovia, Debtors shall not terminate the Wachovia Agreement on less than thirty (30) days' prior written notice to Wachovia.

ORDERED that the Debtors are authorized to continue to use their existing checks, provided that each check is affixed with a "debtor-in-possession" or "DIP" legend; and it is further

ORDERED that the Debtors are authorized to continue their current investment practices as described in the Motion; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated:  February ___, 2005
      New York, New York

                                 _____
                                 UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                           :
                                                :        **Chapter 11**
                                                :
**WINN-DIXIE STORES, INC., et al.,**            :        **Case No. 05-11063**
                                                :
                    **Debtors.**                :        **(Jointly Administered)**
                                                :
-----------------------------------------------------------------x

### FINAL ORDER AUTHORIZING DEBTORS (A) TO MAINTAIN EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM, (B) TO CONTINUE USE OF EXISTING CHECKS, AND (C) TO CONTINUE USE OF EXISTING INVESTMENT GUIDELINES

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for authority to maintain existing bank accounts and cash management system, to continue use of existing checks, and to continue use of existing investment guidelines; all as more fully set forth in the Motion; and upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for Wachovia Bank, N.A. ("Wachovia"), as agent for the Debtors' secured lenders, (iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors; and no other or

further notice being required; and the relief requested in the Motion being in the best interests of

the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the

Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and upon all of the proceedings had before the Court; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that the Debtors are authorized to continue to use their pre-petition

cash management system procedures, as described in the Motion, in the ordinary course of

business; and it is further

ORDERED that the Cash Management Banks (as defined in the Motion) are

authorized to continue to service and administer all of the Debtors' bank accounts, including the

accounts identified on Exhibit A to the Motion (collectively, the "Bank Accounts"), as accounts

of the respective Debtor as a debtor-in-possession without interruption and in the usual and

ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, or

automated clearing house transfers ("ACH Transfers") drawn on the Bank Accounts after

February 21, 2005 (the "Petition Date") by holders or makers thereof, as the case may be, subject

to the availability of funds, and, in the event it is determined that any Bank Account was

inadvertently omitted from Exhibit A to the Motion, the relief sought herein shall be deemed to

apply to any and all Bank Accounts maintained in the Debtors' names; and it is further

ORDERED that the Debtors are authorized and empowered (a) to designate,

maintain, and continue to use any and all existing bank accounts with the same account numbers,

including, without limitation, the accounts identified in Exhibit A to the Motion; and (b) to treat

the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; and it is further

ORDERED that the Cash Management Banks shall designate each of the Bank Accounts as a "debtor-in-possession" or "DIP" account; and it is further

ORDERED that the Cash Management Banks and their affiliates, successors, and assigns, pursuant to Sections 105 and 362(a) of the Bankruptcy Code, are stayed from offsetting, freezing, recouping, affecting, or otherwise impeding the use or transfer of or access to any funds of the Debtors or cash collateral (as defined in Section 363(a) of the Bankruptcy Code), contained or deposited in the Bank Accounts maintained by the Debtors or their affiliates, on or after the Petition Date by reason of any claim (as defined in Section 101(5) of the Bankruptcy Code) of the Cash Management Banks against the Debtors that arose before the Petition Date; and it is further

ORDERED that, notwithstanding anything to the contrary in any other order entered in the Debtors' Chapter 11 cases substantially contemporaneously with this Order, the Cash Management Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order(s) of this Court, whether the checks, drafts, wires, or ACH transfers are dated prior to, on, or subsequent to the Petition Date, and whether or not the Cash Management Bank believes the payment is or is not authorized by any order(s) of the Court, (b) have no duty to inquire as to whether such payments are authorized by any order(s) of the Court, and (c) have no liability to any party on account of the Debtors' instructions in accordance with this Order or for honoring a pre-petition check or other item as the result of an innocent mistake made despite implementation of customary item handling procedures; and it is further

ORDERED that nothing contained herein shall prevent the Debtors and Wachovia from implementing changes to the cash management system, including, but not limited to, the opening of any additional bank accounts or closing of any existing bank account(s) as they may deem necessary and appropriate, and the Cash Management Banks are authorized to honor the Debtors' requests to open or close, as the case may be, such bank accounts or additional bank accounts; provided, however, that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation and that is organized under the laws of the United States or any State therein and shall be designated a "debtor-in-possession" or "DIP" account by the respective Cash Management Bank; and it is further

ORDERED that the Debtors are authorized to continue to consolidate the management of their cash and cash equivalents, including, without limitation, their pre-petition procedures related to investments of cash, and to effectuate the transfer of funds among the Debtors in the ordinary course of business, when and in the amounts determined by the Debtors to be necessary to maintain the various aspects of their business operations; provided, however, that (a) the Debtors shall maintain strict records of all such transfers in a manner so that all transactions can be readily ascertained; (b) all net post-petition advances by and among the Debtors shall be granted super-priority administrative expense status and shall have priority over any and all administrative expenses (incurred by any of the Debtors) of the kind specified in Section 503(b) and 507(b) of the Bankruptcy Code, subject and subordinate only to (i) any super-priority administrative claims granted by this Court in connection with any motion filed by the Debtors authorizing them to obtain post-petition financing, (ii) any payments required to be made to the United States Trustee as specified in 28 U.S.C. § 1930, (iii) reasonable fees and expenses of a trustee under Section 726(b) of the Bankruptcy Code, and (iv)  any compensation

allowed by this Court under Sections 328, 330, or 331 of the Bankruptcy Code to any

professional retained by the Debtors or any official committee appointed in these cases; (c) the

Debtors shall pay the Cash Management Banks any reasonable fees, consistent with pre-petition

practices, related to the post-petition services provided by the Cash Management Banks; and (d)

in the course of providing cash management services to the Debtors, Wachovia is authorized,

without further Order of this Court, to deduct from accounts of the Debtors its customary fees

and expenses based upon the nature of the deposit and cash management services rendered to the

Debtors, after the Petition Date, and further, to charge back to the appropriate accounts of the

Debtors any amounts resulting from, among other things, cash services, branch transactions,

issuance of checks, returned checks, other returned items, or settlement of ACH transfers,

regardless of whether such transactions relate to pre-petition or post-petition activities, and all of

such deductions and charge-backs by Wachovia shall be entitled to administrative expense

priority; and it is further

      ORDERED that any and all accounts opened by the Debtors on or after the

Petition Date at any Cash Management Bank shall, for all purposes under this Order, similarly be

subject to the rights and obligations of this Order; and it is further

      ORDERED that the Debtors and the Cash Management Banks are hereby

authorized to continue to perform pursuant to the terms of any pre-petition agreements that may

exist between them, except and to the extent otherwise directed by the terms of this Order,

including, but not limited to, that certain "Deposit Agreement and Disclosure for Non-Personal

Accounts between Wachovia and the Debtors (the "Wachovia Agreement") shall continue to

govern the post-petition cash management relationship between the Debtors and Wachovia, and

that all of the provisions of such agreement, including, without limitation, the termination and

fee provisions, shall remain in full force and effect.  The parties to such agreements shall continue to enjoy the rights and remedies afforded to them under such agreements, except to the extent modified by the terms of this Order or by operation of the Bankruptcy Code.  Nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that Wachovia is authorized to terminate the Wachovia Agreement or any services provided thereunder on not less than thirty (30) days' prior written notice to the Debtors or as otherwise provided in the Wachovia Agreement; and it is further

ORDERED that, absent consent of Wachovia, Debtors shall not terminate the Wachovia Agreement on less than thirty (30) days' prior written notice to Wachovia.

ORDERED that the Debtors are authorized to continue to use their existing checks, provided that each check is affixed with a "debtor-in-possession" or "DIP" legend; and it is further

ORDERED that the Debtors are authorized to continue their current investment practices as described in the Motion; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the

Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: _____ ___, 2005
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE