UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| Winn-Dixie Stores, Inc., *et al.*, | :    Case No. 05-11063 |
| | :    (Jointly Administered) |
| Debtors. | : |

**OBJECTION OF ALABAMA POWER COMPANY TO DEBTORS'
MOTION FOR ORDER (A) DEEMING UTILITIES ADEQUATELY
ASSURED OF PAYMENT, (B) PROHIBITING UTILITIES FROM ALTERING,
REFUSING, OR DISCONTINUING SERVICES, AND (C) ESTABLISHING
PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE**

Alabama Power Company ("APCO") hereby objects (the "Objection") to the Motion for Order (A) Deeming Utilities Adequately Assured of Payment, (B) Prohibiting Utilities from Altering, Refusing or Discontinuing Services, and (C) Establishing Procedures for Resolving Requests for Additional Assurance (the "Utility Motion"). In filing the Objection, APCO requests the entry of an order requiring Winn-Dixie Stores, Inc., and its debtor affiliates (collectively, the "Debtors"), to deliver to APCO adequate assurance of payment as described herein. In support of its Objection, APCO states as follows:

**I.**

**BACKGROUND**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.*, (the "Bankruptcy Code").

2. APCO provides electric service to the Debtors' facilities throughout the State of Alabama. The Debtors' maintain in excess of one hundred (100) electric service accounts with APCO (the "APCO Accounts") and as of the Petition Date, the unpaid charges due APCO under

756256.1

the APCO Accounts totaled approximately Nine Hundred Eighty-Six Thousand Six Hundred Twenty Dollars ($986,620.00).

3. On the Petition Date, the Debtors filed the Utility Motion whereby the Debtors seek the entry of an order providing, among other things, that: (a) utilities providing services to the Debtors are deemed to be adequately assured of payment for future services based upon the Debtors' obligation to continue to pay for postpetition utility services in a timely manner and the granting of an administrative expense priority to the claims of utilities for such postpetition services; (b) utilities may not alter, refuse or discontinue service to the Debtors or discriminate against the Debtors due to unpaid prepetition obligations of the Debtors or the commencement of these bankruptcy cases; (c) utilities are enjoined from requiring the payment of a deposit or other security as a condition to continued utility service; and (d) utilities must affirmatively request additional assurance of payment in order to assert the rights granted to them in Section 366 of the Bankruptcy Code ("<u>Section 366</u>") and a hearing on such request will not occur until approximately one hundred ten (110) days after the entry of an order granting the Utility Motion.

4. The Utility Motion seeks to evade the requirements of Section 366 while compelling utilities to engage in extraordinary proceedings and to incur inappropriate expenses when availing themselves of the rights that are affirmatively granted to utilities by Section 366. Such practices deprive utilities of their statutory rights and instead create a procedure in which the Debtors are allowed, for all practical purposes, to unilaterally decide if a utility's request for assurance of postpetition payments is reasonable. The proposed procedures will result in delays and expenses to utilities that are contrary to the plain meaning of Section 366.

## II.

## <u>11 U.S.C. SECTION 366</u>

5. Section 366 provides as follows:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

6. A determination of adequate assurance is within the Court's discretion, and is made on a case-by-case basis. *In re Utica Floor Maintenance, Inc.*, 25 B.R. 1010, 1016 (Bankr. N.D.N.Y. 1982); *In re Cunha*, 1 B.R. 330, 332-33 (Bankr. E.D. Va. 1979).

7. Section 366 was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services with the need of the utility to ensure for it and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990).

8. The deposit or other security required of a debtor by Section 366 "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.* 62, B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the court to consider "the length of time necessary for the

utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

### III.

### SECTION 366 REQUIRES MORE ADEQUATE ASSURANCE OF PAYMENT THAN PROPOSED IN THE UTILITY MOTION

9. APCO is inherently at risk since it is statutorily compelled by Section 366 to continue post-petition service to the Debtors for a minimum period of twenty (20) days on an around-the-clock basis and its invoices are payable only after the service has been delivered and irreversibly consumed by the Debtors. No creditors in this bankruptcy case, other than utilities, are required to take such a risk. Typical trade creditors can avail themselves of significantly greater protections such as payment in advance, C.O.D. and refusal to make any further sales until a prior invoice is paid in full. Due to the manner in which the Debtors utilize and pay for utility services, only through a cash deposit, surety bond or advance payment can APCO be adequately assured of payment. Such assurance is the purpose of Section 366.

10. The Utility Motion does not provide APCO with the "deposit or other security" expressly required by Section 366. No provision is made in the Utility Motion that remotely equates to "security" for the payment of future obligations by the Debtors. In the context of a utility-customer relationship, the ordinary or common meaning of "other security" means prepayment of bills, shortened payment deadlines, letters of credit or surety bond or, in any event, something more than the mere promise of a debtor to pay an administrative expense claim. *See In re Best Products Co.*, 203 B.R. 51, 56 (Bankr. E.D. Va. 1996).

11. It is both illogical and unreasonable to equate the Debtors' obligation to pay undisputed invoices (which it is nevertheless required to do) and the allowance of unpaid post-petition invoices of utilities as administrative expenses (to which they are nonetheless entitled) as "security" for the payment of future utility-related obligations owed by the Debtors to APCO and other utilities. Therefore, APCO is entitled to additional adequate assurance of payment in the form of the deposit.

12. The Debtors make no effort in the Utility Motion to examine the circumstances and requirements of APCO and other utilities, including factors such as billing cycles, termination procedures, and regulatory requirements that have a significant influence on the risk that is assumed by utilities when providing postpetition services to the Debtors. Indeed, the significant risks that are imposed upon utilities in this case are disregarded in the Utility Motion in favor of accommodations for the Debtors that are contrary to Section 366.

13. APCO's practice is to read the service meters of the Debtors on a monthly basis. On the date that a meter is read, APCO has already delivered approximately thirty (30) days of electric service for which no payment has been received (Day 30). As a general rule, approximately two to three days after a meter is read, APCO issues a bill to the Debtors (Day 33). Payment of the bill is due upon receipt (Day 36), but is not delinquent until ten (10) days after receipt (Day 46). Once a bill is delinquent, APCO is required by Rule 10 of the Alabama Public Service Commission to send a written notice of termination to a delinquent customer and APCO cannot terminate service until the expiration of five (5) days after delivery of the termination notice to a United States Post Office for postal delivery to the Debtors (at the earliest, Day 52). Additional time invariably passes between the customer's account becoming delinquent and the date upon which electric service is actually terminated. Therefore, APCO

customarily provides businesses such as the Debtors with approximately sixty (60) days of utility service at a particular location before it can and does terminate electric service. This very substantial risk has resulted in formal recognition by the Alabama Public Service Commission in General Rule 8 that a deposit equal to two (2) months average electric service is reasonable and appropriate.

14.    In this case, APCO requests a cash deposit of Two Million One Hundred Eighty-Four Thousand Dollars ($2,184,000) as adequate assurance of future payment by the Debtors. This deposit is equal to approximately two times the average monthly billings by APCO to the Debtors during the twelve-month period prior to the Petition Date and is in an amount that is consistent with the anticipated electricity consumption by the Debtors and the minimum period of time that the Debtors could continue to receive electricity from APCO before service could be terminated for non-payment of postpetition bills.

15.    The deposit requested by APCO is for the amount APCO would require from other customers with questionable or unknown credit and it is within the range approved by case law. *See Matter of Houdashell*, 7 B.R. 901, 903 (Bankr. W.D. Mo. 1981) (approving deposit equal to twice customer's highest monthly electric and natural gas service bill); *In re Stagecoach Enterprises, Inc.*, 1 B.R. 732 (Bankr. M.D. Fla. 1979) (approving deposit equal to amount charged for two natural gas utility billing periods). *See also, Lloyd v. Champaign Telephone Co.*, 52 B.R. 653, 656-57 (Bankr. S.D. Ohio 1985) (approving deposit equal to 2.3 times average monthly telephone billing); *In re Smith, Richardson & Conroy*, 50 B.R. 5, 5-6 (Bankr S.D. Fla. 1985) (approving deposit equal to three months' approximated electric usage).

16. Based upon the foregoing, a cash deposit of Two Million One Hundred Eighty-Four Thousand Dollars ($2,184,000) for APCO, which is equal to approximately two (2) months average electric service, is a fair and reasonable request by APCO and is consistent with both the express provisions and the intent of Section 366, as well as non-bankruptcy laws and regulations that govern the relationship of APCO and the Debtors.

17. APCO respectfully requests that the Court waive the requirement under Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that APCO file a supporting memorandum of law due to the fact that the Objection does not raise any novel issues of law.

**WHEREFORE, PREMISES CONSIDERED,** APCO respectfully requests that the Court enter an order: (a) denying the Utility Motion; (b) compelling the Debtors to provide to APCO a deposit in the amount of $2,184,000.00 as adequate assurance of payment under 11 U.S.C. § 366; and (c) granting to APCO such further relief as this Court deems appropriate.

Dated: March 2, 2005

/s/ Eric T. Ray
W. Clark Watson
Eric T. Ray
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 2600
Birmingham, Alabama 35203
Phone: (205) 251-8100
Fax: (205) 226-8799

*Attorneys for Alabama Power Company*

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing has been served upon the following parties via Untied States mail, properly addressed and postage prepaid, and has been filed electronically via the Court's electronic filing system on this 2nd day of March, 2005:

Sarah Robinson Borders, Esq.  
Brian C. Walsh, Esq.  
KING & SPALDING LLP  
191 Peachtree Street  
Atlanta, Georgia 30303-1763  

David J. Baker, Esq.  
SKADDEN ARPS SLATE MEAGHER & FLOM  
Four Times Square  
New York, New York 10036  

United States Trustee  
33 Whitehall Street, 21st Floor  
New York, New York 10004  

                                        /s/ Eric T. Ray  
                                        Of Counsel