GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.
One Riverfront Plaza
Newark, New Jersey 07102-5496
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
Geraldine E. Ponto (GP-2849)
Attorneys for George Weston Bakeries, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                            :        **Chapter 11**
                                                 :
**WINN-DIXIE STORES, INC., et al.,**             :        **Case No. 05-11063 (RDD)**
                                                 :
                                **Debtors.**      :        **(Jointly Administered)**
------------------------------------------------------------ x

### AMENDED LIMITED OBJECTION TO DEBTORS' MOTION FOR AUTHORITY TO TURN OVER CERTAIN FUNDS HELD IN TRUST AND TO CONTINUE PERFORMANCE AND HONOR OBLIGATIONS UNDER CONSIGNMENT ARRANGEMENTS[1]

George Weston Bakeries, Inc. ("GWB"), by its undersigned counsel, objects to certain

relief sought by the Motion For Authority To Turn Over Certain Funds Held In Trust And To

Continue Performance And Honor Obligations Under Consignment Arrangements [Doc. No. 16]

("Motion") and respectfully states:

1.      On February 21, 2005 ("Petition Date"), Winn-Dixie Stores, Inc. ("Winn-Dixie") and

certain affiliates (collectively, "Debtors") each filed a voluntary petition for relief under Chapter

11 of the Bankruptcy Code.

---

[1]  This document is amended only to correct a typographical error in the heading and is otherwise substantively identical to the initial Limited Objection [Doc. No. 220] filed by GWB.

2.      GWB is a bakery company that before the Petition Date sold fresh baked goods to the Debtors under the brand names Arnold, Brownberry, Entenmann's, Freihofer's, S.B. Thomas and Stroehmann, and has continued such sales since the Petition Date.

3.      As of the Petition Date, the Debtors owed GWB and its related entities approximately $1,900,000.00 for unpaid purchases of bakery goods.

4.      Certain of GWB's deliveries of its baked goods to the Debtors are not recorded as sales to the Debtors triggering GWB's right to payment until the products are actually scanned into the computer registering customer purchases at Winn-Dixie's grocery store checkout.  These sales are commonly referred to in the industry as "scan-based."

5.      On February 22, 2005, the Debtors filed the Motion included among many "first day motions" supported by the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 in Support of First-Day Motions and Applications ("Nussbaum Declaration").

6.      By Interim Order dated February 22, 2005 ("Interim Order"), among other orders entered by the Court on that date and other particular relief granted by the Interim Order on an interim basis, until such time as the Court conducts a final hearing on the matter, the Court authorized, but did not direct, the Debtors "to pay all Consignment Proceeds (as defined in the Motion) to the Consignment Vendors (as defined in the Motion), consistent with the Debtors' policies and practices in effect as of the Petition Date, and to continue performance and honor their obligations under their pre-petition consignment sales arrangements (the "Consignment Arrangements)."  The Interim Order set a final hearing for March 4, 2005, at 10:00 a.m.[2], with any objections due by no later than March 3, 2005, at 4:00 p.m.

7.      GWB was not served with the Motion and has received no payment from the Debtors pursuant to the Interim Order.

---

[2]   By Notice dated today, the final hearing has been postponed until March 15, 2005, at 10:00 a.m.

8.    According to the Motion, certain of the Debtors' vendors are parties to the Consignment Arrangements with the Debtors, whereby those certain vendors ("Consignment Vendors") supply the Debtors with products that are sold to the Debtors' customers in the ordinary course of business, but the Debtors do not pay those vendors for the products until they are actually sold.  Motion, ¶26 at 9.  Those goods are described in the Motion as consigned goods.  Id. at 9-10.

9.    The Motion further states that the Debtors believe that the proceeds from the sales of consigned goods constitute trust funds, which are not property of the Debtors' estates.  Id. ¶ 29 at 10-11.  By the Motion, the Debtors seek authority to turn over such proceeds to the Consignment Vendors and thus continue performance and honor their obligations under the Consignment Arrangements.  Id. ¶ 30 at 11.

10.   To the extent that the proceeds do not constitute trust funds, the Debtors nonetheless seek authority to pay the Consignment Vendors under the "necessity of payment rule."  Id. ¶ 29 at 11.

11.   The Motion provides insufficient information to GWB to enable it to determine whether it is a Consignment Vendor, as defined in the Motion, or whether any of the bakery goods that GWB supplies to the Debtors fall within the Debtors' definition of a "Consignment Arrangement."  The Nussbaum Declaration mimics the description of Consignment Arrangement as set forth in the Motion and provides no additional factual support.  Compare Nussbaum Declaration, ¶107 at 33 with Motion, ¶26 at 9-10.

12.   The Motion does not identify any of the Consignment Vendors or provide any information with respect to the amount of the "Consignment Proceeds," as defined in paragraph 26 of the Motion, which the Debtors seek authorization to pay over to the Consignment Vendors,

whether under a trust theory or the necessity of payment rule. <u>See</u>, <u>generally</u>, Motion. It appears that there are vendors that supply the Debtors with goods and services that will not be favored by the Motion, but the record provides insufficient information to determine who is included and what will be paid if the Motion is finally approved.

13.    GWB objects to entry of any final order on the Motion with respect to the Consignment Arrangements until GWB is given adequate notice and opportunity to be heard with respect to the identity and amount of the payments contemplated by the Debtors pursuant to the Consignment Arrangements.

14.    A cornerstone of the procedures employed in bankruptcy cases is notice. <u>Kewanee Boiler Corp. v. American Standard, Inc.</u>, 297 B.R. 720, 730 (Bankr. N.D. Ill. 2003). Until GWB is afforded adequate notice as to whether its pecuniary rights are affected by the Motion, the Court should deny the Debtors the requested relief. <u>See</u> <u>Id</u>. ("[u]nless a person is adequately informed of proceedings that may effect denial of a legal interest, a hearing serves no purpose and resembles more a scene from Kafka than a constitutional process")(citing <u>Chicago Cable Communications v. Chicago Cable Commission</u>, 879 F.2d 1540, 1546 (7th Cir. 1989)). <u>See also</u> <u>In re Fishgold</u>, 206 B.R. 50, 56 (Bankr. W.D.N.Y. 1997)(person cannot be expected to exercise due diligence to preserve an unknown right).

15.    The Motion simply provides insufficient information upon which GWB can determine whether its rights are directly and adversely affected by the Motion and upon which GWB can come forward with proof in opposition to the Motion.

WHEREFORE, GWB respectfully requests that the Court deny the Motion with respect to the Consignment Arrangements in its current form and grant such other relief as is just and equitable.

March 3, 2005

GIBBONS, DEL DEO, DOLAN
GRIFFINGER & VECCHIONE
A Professional Corporation
Counsel for George Weston Bakeries, Inc.

/s/Geraldine E. Ponto
Geraldine E. Ponto (2849)
One Riverfront Plaza
Newark, NJ  07102-5496
Telephone:     973-596-4500
Telecopy:      973-596-0545