**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re ) | | |
| WINN-DIXIE STORES, INC., et al., ) | Case No. 05-11063 (RDD) | |
| Debtors. ) | Chapter 11 | |
| ) | Jointly Administered | |
| _____ ) | | |

**OBJECTION OF JEA TO DEBTORS' MOTION FOR ORDER
(A) DEEMING UTILITIES ADEQUATELY ASSURED OF
PAYMENT, (B) PROHIBITING UTILITIES FROM ALTERING,
REFUSING, OR DISCONTINUING SERVICES, AND (C) ESTABLISHING
PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE**

JEA objects (the "Objection") to the Motion for Order (A) Deeming Utilities Adequately Assured of Payment, (B) Prohibiting Utilities from Altering, Refusing or Discontinuing Services, and (C) Establishing Procedures for Resolving Requests for Additional Assurance (the "Utility Motion"). In filing the Objection, JEA requests the entry of an order requiring Winn-Dixie Stores, Inc., and its debtor affiliates (collectively, the "Debtors"), to deliver to JEA adequate assurance of payment as described herein. In support of its Objection, JEA states:

**Background**

1.　On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et. seq., (the "Bankruptcy Code").

2. JEA provides electric service to the Debtors' facilities throughout Northeast Florida. The Debtors' maintain approximatley 40 electric service accounts with JEA that (the"JEA Accounts") that generate, on average, $650,000 per month in utility services.

3. On the Petition Date, the Debtors filed the Utility Motion whereby the Debtors seek the entry of an order providing, among other things, that: (a) utilities providing services to the Debtors are deemed to be adequately assured of payment for future services based upon the Debtors' obligation to continue to pay for postpetition utility services in a timely manner and the granting of an administrative expense priority to the claims of utilities for such postpetition services; (b) utilities may not alter, refuse or discontinue service to the Debtors or discriminate against the Debtors due to unpaid prepetition obligations of the Debtors or the commencement of these bankruptcy cases; (c) utilities are enjoined from requiring the payment of a deposit or other security as a condition to continued utility service; and (d) utilities must affirmatively request additional assurance of payment in order to assert the rights granted to them in § 366 of the Bankruptcy Code and a hearing on such request will not occur until approximately 110 days after the entry of an order granting the Utility Motion.

4. The Utility Motion seeks to evade the requirements of § 366 while compelling utilities to engage in extraordinary proceedings and to incur inappropriate expenses when availing themselves of the rights that are affirmatively granted to utilities by § 366. Such practices deprive utilities of their statutory rights and instead create a procedure in which the Debtors are allowed, for all practical purposes, to unilaterally decide if a utility's request for

assurance of postpetition payments is reasonable. The proposed procedures will result in delays and expenses to utilities that are contrary to the plain meaning of § 366.

     5.     Eleven U.S.C. § 366 provides as follows:

> (a)    Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b)    Such utility may alter, refuse or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

     6.     A determination of adequate assurance is within the Court's discretion, and is made on a case-by-case basis. *In re Utica Floor Maintenance, Inc.*, 25 B.R. 1010, 1016 (Bankr. N.D.N.Y. 1982); and *In re Cunha*, 1 B.R. 330, 332-33 (Bankr. E.D. Va. 1979).

     7.     Section 366 was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services with the need of the utility to ensure for it and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990).

     8.     The deposit or other security required of a debtor by § 366 "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re*

Coastal Dry Dock & Repair Corp. 62, B.R. 879,883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3rd Cir. 1985).

**Section 366 Requires More Adequate Assurance
of Payment Than Proposed in the Utility Motion**

9.  JEA is inherently at risk since it is statutorily compelled by § 366 to continue post-petition service to the Debtors for a minimum period of 20 days on an around-the-clock basis and its invoices are payable only after the service has been delivered and irreversibly consumed by the Debtors. No creditors in this bankruptcy case, other than utilities, are required to take such a risk. Typical trade creditors can avail themselves of significantly greater protections such as payment in advance, C.O.D. and refusal to make any further sales until a prior invoice is paid in full. Due to the manner in which the Debtors utilize and pay for utility services, only through a cash deposit, surety bond or advance payment can JEA be adequately assured of payment. Such assurance is the purpose of § 366.

10. The Utility Motion does not provide JEA with the "deposit or other security" expressly required by § 366. No provision is made in the Utility Motion that remotely equates to "security" for the payment of future obligations by the Debtors. In the context of a utility-customer relationship, the ordinary or common meaning of "other security" means prepayment of bills, shortened payment deadlines, letters of credit or surety bond or, in any event, something more than the mere promise of a debtor to pay an administrative expense

claim. *See In re Best Products Co.*, 203 B.R. 51, 56 (Bankr. E.D. Va. 1996). In Florida, where the Debtors are headquartered, a post-petition security deposit equal to two month's average utility expenses is considered the norm. *See e.g., In re Stagecoach Enterprises, Inc.*, 1 B.R. 732 (Bank. M.D. Fla. 1979).

11. It is both illogical and unreasonable to equate the Debtors' obligation to pay undisputed invoices (which it is nevertheless required to do) and the allowance of unpaid postpetition invoices of utilities as administrative expenses (to which they are nonetheless entitled) as "security" for the payment of future utility-related obligations owed by the Debtors to JEA and other utilities. Therefore, JEA is entitled to additional adequate assurance of payment in the form of a deposit.

12. The Debtors make no effort in the Utility Motion to examine the circumstances and requirements of JEA and other utilities, including factors such as billing cycles, termination procedures, and regulatory requirements that have a significant influence on the risk that is assumed by utilities when providing postpetition services to the Debtors. Indeed, the significant risks that are imposed upon utilities in this case are disregarded in the Utility Motion in favor of accommodations for the Debtors that are contrary to § 366.

13. JEA's practice is to read the service meters of the Debtors on a monthly basis. On the date that a meter is read, JEA has already delivered approximately thirty (30) days of electric service for which no payment bas been received (Day 30). As a general rule, approximately two days after a meter is read, JEA issues a bill to the Debtors (Day 32). Payment of the bill is due upon receipt, but is not delinquent until 20 days after receipt (Day 52). Additional time invariably passes between the customer's account becoming delinquent

and the date upon which electric service is actually terminated. Therefore, JEA customarily provides businesses such as the Debtors with approximately 73 days of utility service at a particular location before it can and does terminate electric service. This very substantial risk has resulted in recognition that a deposit equal to 2 months average electric service is reasonable and appropriate.

14.    In this case, JEA requests a cash deposit of $1,300,000 as adequate assurance of future payment by the Debtors. This deposit is equal to approximately two times the average monthly billings by JEA to the Debtors during the twelve-month period prior to the Petition Date and is in an amount that is consistent with the anticipated electricity consumption by the Debtors and the minimum period of time that the Debtors could continue to receive electricity from JEA before service could be terminated for non-payment of postpetition bills.

15.    The deposit requested by JEA is for the amount JEA would require from other customers with questionable or unknown credit and it is within the range approved by case law. *See Matter of Houdashell*, 7 B.R. 901, 903 (Bankr. W.D. Mo. 1981) (approving deposit equal to twice customer's highest monthly electric and natural gas service bill); *In re Stagecoach Enterprises, Inc.*, 1 B.R. 732 (Bankr. M.D. Fla. 1979) (approving deposit equal to amount charged for two natural gas utility billing periods). *See also, Lloyd v. Champaign Telephone Co.*, 52 B.R. 653, 656-57 (Bankr. S.D. Ohio 1985) (approving deposit equal to 2.3 times average monthly telephone billing); *In re Smith, Richardson & Conroy*, 50 B.R. 5, 5-6 (Bankr S.D. Fla. 1985) (approving deposit equal to three months' approximated electric usage).

16. Based upon the foregoing, a cash deposit of $1,300,000 for JEA, which is equal to approximately 2 months average electric service, is a fair and reasonable request by JEA and is consistent with both the express provisions and the intent of § 366, as well as non-bankruptcy laws and regulations that govern the relationship of JEA and the Debtors.

17. JEA respectfully requests that the Court waive the requirement under Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that JEA file a supporting memorandum of law due to the fact that the Objection does not raise any novel issues of law.

**WHEREFORE, PREMISE CONSIDERED**, JEA respectfully requests that the Court enter an order: (a) denying the Utility Motion; (b) compelling the Debtors to provide to JEA a deposit in the amount of $1,300,000.00 as adequate assurance of payment under 11 U.S.C. § 366; and (c) granting to JEA such further relief as this Court deems appropriate.

Dated: March 3, 2005.

**STUTSMAN & THAMES, P.A.**

By /s/ Nina M. LaFleur
    Nina M. LaFleur
    Richard R. Thames

Florida Bar Number 0107451
Florida Bar Number 0718459
121 W. Forsyth Street, Suite 600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)

Attorneys for JEA

## Certificate of Service

I certify that a copy of the foregoing has been furnished electronically and by mail to David J. Baker, Esq., Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522; Sarah Robinson Borders, Esq., King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia 30303; and to the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 on this 3rd day of March, 2005.

/s/ Nina M. LaFleur
_____
Attorney

55115