SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
```
**In re**                                                          **:**
                                                          **:**          **Chapter 11**
                                                          **:**
**WINN-DIXIE STORES, INC., et al.,**          **:**          **Case No. 05-11063**
                                                          **:**
          **Debtors.**                                **:**          **(Jointly Administered)**
                                                          **:**
```
------------------------------------------------------------x
```

## EXPEDITED EMERGENCY MOTION FOR ENTRY OF AN ORDER APPROVING THE SALE OF CERTAIN  PHARMACEUTICAL PRESCRIPTIONS AND INVENTORY

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), moves (the "Motion"), pursuant to section 363 of title 11 of the

United States Code (as amended, the "Bankruptcy Code"), for authorization to sell certain

---

[1]        In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

pharmaceutical prescription and inventory (the "Assets") to Eckerd Corporation ("Eckerd") and

CVS Realty Co. ("CVS"), and in support of the Motion respectfully represents as follows:

## BACKGROUND

**A.      Chapter 11 Filings.**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the

Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors are in possession of their property and operate and manage their

businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3.      No request has been made for the appointment of a trustee or examiner.  A

committee of unsecured creditors (the "Committee") was appointed on March 2, 2005.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of

this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2).

**B.      Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United

States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to

published reports, the Debtors are the eighth-largest food retailer in the United States and one

of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single

grocery store and has grown through acquisitions and internal expansion.  The Debtors currently

operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.      Events Leading to the Debtors' Chapter 11 Cases.**

8.      In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core, and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

9.      As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

10.     Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

11.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

12.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for

their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

13.    The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million.  As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

14.    As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

**RELIEF REQUESTED**

15.    By this Motion, the Debtors respectfully request the entry of an order, pursuant to Bankruptcy Code section 363(c), authorizing the sale (each, a "Transaction") of the Assets at certain retail stores that the Debtors intend to close.

5

16.    The Debtors seek this relief on an expedited basis because of certain state regulatory provisions that require that the Debtors place the Assets in another licensed pharmacy on the date of a store closing in order to promote continued service to consumers and to avoid possible criminal and civil penalties.

## JURISDICTION

17.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BASIS FOR RELIEF

18.    As previously discussed, the Debtors have implemented, and shall continue to implement, an asset rationalization and expense reduction plan with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.  In connection with these plans, the Debtors determined that it was in their best interests to close unprofitable stores in an expeditious manner.  Among the stores targeted for closure are (i) retail store number 950 located in Franklin, Virginia (the "Franklin Store"), and (ii) retail store number 983 located in Rocky Mount, Virginia (the "Rocky Mount Store"; and, together with the Franklin Store, the "Virginia Stores").  The closing of the Franklin Store is scheduled for March 9, 2005, and the closing of the Rocky Mount Store is scheduled for March 10, 2005.

19.     The Assets consist of certain pharmaceutical prescriptions and related

inventory.  Because Virginia state law requires the Debtors to properly transition customer

prescriptions at the date of a store closing, Va. Code Ann. 54.1-3434.01 and 18 Va. Admin.

Code 110-20-130, the approval of the sale of the Assets on an expedited basis is necessary to

permit the Debtors to ensure a seamless transition of these assets for the benefit of consumers

and for creditors of the estate and to avoid potential criminal and civil penalties.  The Debtors

therefore believe that a sale of the Assets would be beneficial to their present customers,

creditors and estates and would help facilitate a successful reorganization.

20.     The Debtors have conducted significant marketing efforts under extreme time

constraints in order to further their goal of selling the Assets for the most attractive price (and

other terms) attainable.  In connection therewith, the Debtors have attempted to identify and

contact all third party purchasers that might be interested in purchasing the Assets.  These

potential purchasers are identified on Exhibit A hereto.  These efforts culminated in (i) an offer

from Eckerd to purchase the Assets at the Franklin Store (the "Franklin Assets") for $215,000

(subject to higher or better offers), paid in cash within one day of entry of an order by this Court

approving the relief sought in the Motion; and (ii) an offer from CVS (CVS and, together with

Eckerd, the "Purchasers") to purchase the Assets at the Rocky Mount Store (the "Rocky

Mount Assets") for $220,000.

21.     The Debtors believe that the sale of the Assets in this manner offers the best

opportunity for the Debtors to maximize the value of the Assets for the benefit of their estates

following intense marketing efforts and to avoid the disruption of services to present

pharmaceutical customers.  Consequently, the Debtors believe that sale of the Assets is in the

best interests of the estates herein, and should be approved.

22.     Accordingly, by this Motion, the Debtors request that the Court enter an order

granting the following relief:

     (a)    Approving the proposed sale of the Franklin Assets to Eckerd or to the party that submits the highest or best offer for the Franklin Assets;

     (b)    Approving the proposed sale of the Rocky Mount Assets to CVS or to the party that submits the highest or best offer for the Rocky Mount Assets;

     (c)    Approving the sales of the Assets and making the following determinations, among others, with respect to such sales:

          (i)    that such sales have been agreed upon, and will be made and completed, in good faith, for purposes of the provisions of Section 363(m) of the Bankruptcy Code;

          (ii)    that such sales shall be made, and the Assets shall be delivered to the Purchasers or to the parties submitting the highest or best offers for the Assets, free and clear of any and all liens, claims, encumbrances and interests;

          (iii)    that the Purchasers or the parties submitting the highest or best offers for the Assets shall receive good, valid and marketable title to the Assets;

          (iv)    that the ten (10) day stay period provided for in Rule 6004(g) of the Federal Rules of Bankruptcy Procedure shall not be in effect with respect to the Sale Order and the Sale Order shall be effective and enforceable immediately upon its entry.

## APPLICABLE AUTHORITY

23.     As stated above, the Debtors believe that the sale of the Assets to the

Purchasers on an expedited basis, subject to higher or better offers, provides the Debtors with

their best, if not only, opportunity to preserve and maximize the value of the Assets for the

benefit of their estates and, therefore, such a sale is in the best interests of the Debtors' creditors

and estates.  As such, the Debtors submit that approval of this Motion and the sale of the

Assets are consistent with applicable law and should be granted.

**A.     Section 363(b) Authorizes the Proposed Sales.**

24.     Bankruptcy Code section 363(b)(1) provides, in relevant part, that "[t]he

trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate."  11 U.S.C. § 363(b)(1).  Although Bankruptcy Code section

363 does not set forth a standard for determining when it is appropriate for a court to authorize

the sale or disposition of a debtor's assets, in applying this section, courts have required that it

be based upon the sound business judgment of the debtor.  See In re Chateaugay Corp., 973

F.2d 141 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find

from the evidence presented before him a good business reason to grant such application);

Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071

(2d Cir. 1983) (same); Stephens Indus. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)

(holding that "bankruptcy court can authorize a sale of all of a chapter 11 debtor's assets under

§ 363(b)(1) when a sound business purpose dictates such action"); In re Delaware & Hudson

Ry. Co., 124 B.R. 169 (D. Del. 1991); In re Phoenix Steel Corp, 82 B.R. 334, 335-36

(Bankr. D. Del. 1987) (stating that judicial approval of a § 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith).  The Debtors respectfully submit that the proposed sales of the Assets fit squarely within the parameters of the sound business judgment test articulated in the above-referenced authorities.

25.      First and foremost, the Debtors have articulated a sound business purpose for the sales of the Assets.  As set forth above, the Virginia Stores are unprofitable and do not fit the Debtors' long-term business strategy, and, in order to close the stores and monetize the Assets for distribution to creditors and to streamline their business operations to facilitate a successful reorganization, the Debtors have decided to consummate a sale of the Assets.  The Debtors believe that the purchase price offered by each Purchaser is fair and reasonable and the Debtors would be prepared to consummate the Transaction even if no other parties submit higher or better offers.

26.      The Debtors respectfully submit that, in light of applicable state law, the notice and timing of the sales of the Assets are adequate and fair, are in the best interest of the public and are reasonably calculated to elicit the highest levels of interest in acquiring the Assets.  As described above, the Debtors have engaged in significant marketing of the Assets in a compressed time frame and strongly believe that these efforts will garner the highest and best possible value for the Assets under the circumstances.  As in the case of Delaware & Hudson

Ry. Co., the Debtors efforts in soliciting and marketing the Assets support the proposed

process and the reasonableness of any offer ultimately presented through that process.

27.     Moreover, because the marketing process created a fair and reasonable

environment for interested parties to submit an offer to purchase the Assets, the Purchasers'

offers for the Assets were necessarily negotiated and presented in good faith.  The Debtors will

be prepared to present further evidence of good faith during the course of the Sale Hearing that

will satisfy this Court and the mandates of Bankruptcy Code section 363(m).

28.     The Debtors intend to give notice of the hearing held to consider approval of

this Motion (the "Sale Hearing") and the proposed sales by the Debtors of the Assets, by

mailing a copy of the Motion and a notice of the Sale Hearing, on or before March 3, 2005, to

(i) the Internal Revenue Service, the state and local taxing authorities; (ii) all parties who

previously have expressed serious interest in acquiring the Assets; (iii) counsel for Wachovia

Bank, N.A., as agent for the Debtors' secured lenders; (iv) the indenture trustee for the

Debtors' noteholders; (v) the Committee; (vi) all entities having requested notices pursuant to

Bankruptcy Rule 2002; and (vii) the Office of United States Trustee (the persons listed in

clauses (i) through (vii) are referred to collectively as the "Notice Parties").  The Debtors submit

that the foregoing is sufficient notice of the Sale Hearing and the proposed sale by the Debtors

of the Assets.

29.     By this Motion, the Debtors intend to sell the Assets in order to monetize them

for distributions to their creditors, and to enhance their ability to successfully reorganize.  The

Debtors strongly believe that, in furtherance of these goals, they have done all that is reasonably possible to secure the highest or best possible offers for the Assets under the circumstances, and believe that any sales must be consummated on or before the closing of the Virginia Stores in order to prevent the complete loss in value of the Assets and possible violations of state law. For all of the foregoing reasons, the proposed sales of the Assets to the Purchasers or to the parties submitting higher or better offers is warranted and appropriate under the terms and provisions of Bankruptcy Code section 363(b), the relief requested in this Motion is a product of sound business judgment and is in the best interests of the Debtors, their creditors and their estates, and the sales of the Assets should therefore be approved.

**B.      Section 363(f) Authorizes the Sales Free and Clear of Liens and Other Claims.**

30.      The Debtors request that the sales and transfer of the Assets be approved free and clear of all liens, claims, encumbrances and other interests, other than those specifically assumed by the Purchasers or the parties submitting the highest or best offers for the Assets. Such relief is consistent with the provisions of Bankruptcy Code section 363(f) in these cases.

31.      Section 363(f) provides that a debtor-in-possession may sell property free and clear of any lien, claim or interest of another entity in such property if any of the following circumstances pertain:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

32.     As indicated by the use of the disjunctive term "or," satisfaction of any one of the five requirements listed in Bankruptcy Code section 363(f) is sufficient to permit the sale of assets free and clear of liens, claims, encumbrances, pledges, mortgages, security interests, charges, options and other interests (collectively, the "Interests").  See In re Elliott, 94 B.R. 343, 345 (E.D. Pa. 1988) (stating that Section 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided that at least one of the subsections is met).

33.     Bankruptcy Code section 1129(b)(2)(A) specifically allows a debtor to sell property subject to a lien, free and clear of such lien, if such lien attaches to the net proceeds of the sale, subject to any claims and defenses that the debtor may possess with respect thereto. See In re Riverside Inv. P'ship, 674 F.2d 634, 640 (7th Cir. 1982).  In this case, the Debtors propose that any Interests in the Assets attach to the proceeds of the sales.  Accordingly, the requirements of Section 363(f) of the Bankruptcy Code can be satisfied, and the sales of the Assets free and clear of all liens, claims, encumbrances and other interests is appropriate.

**C.     The Purchasers Should Be Afforded All Protections Under Bankruptcy Code Section 363(m) as a Good Faith Purchaser.**

34.     Bankruptcy Code section 363(m) provides that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of

13

property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . ."  11 U.S.C. § 363(m).

35.      As discussed above, the marketing and sale of the Assets has been conducted in such a way as to create a fair, open and level playing field.  Accordingly, the Debtors request that the Purchasers (or the parties submitting the highest or best offer for the Assets) be determined to have acted in good faith and be entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m).  See, e.g., In re United Press Int'l, Inc., No. 91 B 13955 (FGC), 1992 U.S. Bankr. LEXIS 842, at *3 (Bankr. S.D.N.Y.  May 18, 1992).

## NOTICE

36.      This Motion will be served, and notice of the Sale Hearing will be given, in accordance with the procedures set forth above.  The Debtors respectfully submit that such notice is sufficient and proper under the circumstances, and that no other or further notice is required.

## WAIVER OF MEMORANDUM OF LAW

37.      Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court

(a)    enter an order substantially in the form attached hereto as <u>Exhibit D</u>, granting the Motion and approving the sale of the Assets to the Purchasers or to the parties submitting higher or better offers for the Assets,

(b)    authorizing the Debtors to take all actions reasonably necessary to effectuate the Transactions, and

(c)    granting such other and further relief as the Court deems just and proper.

Dated: March 3, 2005
       New York, New York

/s/  *D. J. Baker*
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:    (917) 777-2150

-and-

Eric M. Davis
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Rodney Square
P. O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

PROPOSED ATTORNEYS FOR THE DEBTORS

## EXHIBIT A

**Parties To Whom Assets Were Marketed**

| Party | Address |
|---|---|
| CVS<br>Attn: Charles Rotella | 970 West Franklin St<br>Rocky Mount, VA 24151 |
| Kroger<br>Attn: Mark Woolf | 400 Old Franklins Turnpike<br>Rocky Mount, VA 24151 |
| Rite Aid<br>Attn: Dominick Torchia | 100 South College<br>Franklin, VA 23851 |
| Eckerd Corporation<br>Attn: Jim Swearinger | 1031 Armory Dr<br>Franklin, VA 23851 |
| Wal-Mart<br>Attn: Jason Reiser | 1500 Armory Dr. Franklin,<br>Va. 23851 |

406722-Wilmington Server 1A - MSW