Thomas R. Slome (TS-0957)
SCARCELLA ROSEN & SLOME LLP
333 Earle Ovington Boulevard
Ninth Floor
Uniondale, New York 11553-3622
(516) 227-1600

Rachel S. Budke (FBN 185851)
LAW DEPARTMENT, FLORIDA POWER & LIGHT COMPANY
700 Universe Boulevard
Juno Beach, Florida 33408
Telephone: (561) 691-7797
Facsimile: (561) 691-7103

William Douglas White (DC 224592)
MCCARTHY & WHITE PLLC
8180 Greensboro Drive, Suite 875
McLean, Virginia 22102
Telephone: (703) 770-9265
Facsimile: (703) 770-9266

Attorneys for Florida, Power & Light Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., et al.,** | : | **Case No. 05-11063 (RDD)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

**OBJECTION OF CREDITOR, FLORIDA POWER AND LIGHT COMPANY TO DEBTORS' MOTION FOR ORDER (A) DEEMING UTILITIES ADEQUATELY ASSURED OF PAYMENT, (B) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, AND (C) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE**

Florida Power and Light Company ("FPL"), by and through its undersigned counsel, hereby objects to the Debtors' Motion For Order (A) Deeming Utilities Adequately Assured Of Payment, (B) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Services, And (C) Establishing Procedures For Resolving Requests For Additional Assurance and demands that the Debtors furnish a deposit equal to two months of service. In support of the Objection, FPL relies

upon the Declaration of Carolyn Dovo annexed hereto as Exhibit "A," and respectfully states as follows:

**Introduction**

1. On or about the date of filing their petitions, the Debtors also filed a utility motion which requests the Court to enter interim and final orders seeking, among other things, to: (i) deem the Utilities Companies adequately assured of payment for post-petition services without the need for "additional or new" security deposits; (ii) enjoin the Debtors' utility providers, including FPL from altering, refusing, or discontinuing services on account of commencement of these bankruptcy cases or on account of non-payment of pre-petition invoices; and (iii) establish certain procedures for resolving disputes regarding adequate assurance of payment provided by the Debtors.

**Background and FPL Accounts**

2. FPL is a leading provider of electric services to business and residential customers in several markets including those of the Debtors' operations. FPL provides services to the Debtors' businesses under approximately 220 open accounts and is one of Debtors' largest suppliers of electricity.

3. As of the petition date, the Debtors owed FPL approximately $4,000,000 in unpaid charges for utility services.

4. Pre-petition, FPL obtained security from the Debtors in the form of cash deposit totaling $6,900,000. The last deposit installment payment for $1,200,000 was obtained by FPL from the Debtors on October 25, 2004.

5. Post-petition, FPL estimates the Debtors will continue to consume approximately $3,460,000 of electricity on a monthly basis.

**Relief Requested**

6. FPL respectfully requests that the Court deny Debtors' Utilities Motion and enter

an order determining FPL is entitled to a deposit equal to two months of service in the amount of $6,900,000 as adequate assurance of payment pursuant to Section 366(b) of the Bankruptcy Code.

## Objections

**The Debtors' Request for Relief is Procedurally Flawed Because It Was Not Properly Served On FPL**

7. The Debtors' Utility Motion commenced a contested matter under Bankruptcy Rule 9014, but did not comply with its requirement to serve FPL in the manner provided in Bankruptcy Rule 7004. The Debtors' Affidavit of Service (Docket Number 124) states that they served FPL with the Utilities Motion at: Florida Power & Light, P.O. Box 029100, Miami, Florida 33102. This is not valid service upon an officer or managing agent under the Rule. Therefore, the Debtors' request for relief is defective at the outset and cannot be granted. [1]

**The Bankruptcy Court's Order May Not Alter Congress' Allocation of the Rights and Obligations Of The Parties Or Enjoin FPL's Rights Under Section 366**

8. Section 366(a) provides only that a utility may not terminate service during the first 20 days of the case solely on the basis of the bankruptcy filing or pre-petition unpaid usage. See 11 U.S.C. § 366(a). Within that twenty-day period, however, if the Debtors and a utility cannot agree on what constitutes adequate assurance of future payment, the Utility is entitled to discontinue services. See 11 U.S.C. § 366(b); see also In re Hanratty, 907 F.2d 1418, 1419 (3d Cir. 1990) ("If adequate assurance is not given, the utility may alter, refuse or discontinue service to the Debtors."). In addition, the Debtors or any party in interest, after notice and a hearing, may also obtain an order from the court determining that the utility provider is adequately assured of future payment. See 11 U.S.C. § 366(b).

9. Section 366, however, does not grant the bankruptcy court authority to enjoin

---

[1] The Debtors' request also fails to comply with the procedural requirements in the Bankruptcy Rules for obtaining an injunction. No adversary proceeding was file here, and Bankruptcy rule 7001 specifically requires one in these circumstances.

utilities or impose any requirement that the utility first obtain permission from the court to discontinue service for lack of adequate assurance after the twentieth day of the case. See Hanratty, 907 F.2d at 1419. Thus, the Debtors' request for an order prohibiting utilities from terminating service is wholly improper.

10. The utility order may not alter the congressionally mandated balancing of the interests between the utility companies, including FPL, and the Debtors. Even Section 105(a) does not authorize a bankruptcy court to create "substantive rights that would otherwise be unavailable under the Code," U.S. v. Pepperman, 976 F.2d 123, 131 (3d Cir. 1992), or "rights not otherwise available under applicable law." Southern Ry. Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3d Cir. 1985); see also In re Conxus Communications, Inc., 262 B.R. at 898-99 ("While Section 105(a) gives a bankruptcy court general equitable powers, those powers are limited by the provisions of the Bankruptcy Code."). Thus, we must look at the rights granted the Debtors and the utility companies under Section 366. The limitation of any rights thereunder of one party necessarily grants to the other party greater rights than Congress intended under Section 366. Any such shifting of the carefully balanced rights of the Debtors and the utility companies by the utility order is impermissible.

11. Section 366 specifically permits a utility company to discontinue service to a debtor on account of a lack of adequate assurance after the twentieth day of a bankruptcy case. See 11 U.S.C. § 366(b).

12. Furthermore, "policy arguments cannot displace the plain language of the statute; that the plain language of [a section of the Bankruptcy Code] may be bad policy does not justify a judicial rewrite.... Because the statute speaks clearly and its plain language does not produce a patently absurd result or contravene any clear legislative history, [this Court] must 'hold Congress to its words.'" See Perlman v. Catapult Entertainment, Inc. (In re Catapult Entertainment), 165 F.3d 747, 754 (9th Cir. 1999) (quoting Brooker v. Desert Hosp. Corp., 947

F.2d 412, 414-15 (9th Cir. 1991)).

**The Debtors Have Not Furnished Adequate Assurance to FPL**

13. Section 366(b) of the Bankruptcy Code provides, in relevant part, that a "utility," such as FPL, "may alter, refuse, or discontinue service if neither the trustee nor the Debtors, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for services after such date." 11 U.S.C. § 366(b) (emphasis added). Thus, the plain and unambiguous language of the statute requires the Debtors to "furnish adequate assurance" and that adequate assurance must be in the form of either "a deposit or other security."

14. In determining what form and what level of adequate assurance a utility is entitled to receive from the Debtors, the burden of proof lies squarely with "the Debtors, the petitioning party." In re Stagecoach Enters, Inc., 1 B.R. 732, 736 (Bankr. M.D. Fla. 1979).

15. In an attempt to satisfy their burden of proving that adequate assurance exists with respect to FPL, the Debtors offer the following grounds: (i) the protections of Sections 503(b) and 507(a)(1) of the Bankruptcy Code; (ii) that such protections do not prejudice the rights of FPL because the utility companies may seek relief from the Court "in the future upon a change in circumstances;" (iii) the Debtors' "satisfactory payment history" pre-petition with the utility companies;" (iv) the Debtors' assertion that they will be able to continue to pay the utility companies post-petition from their own proceeds, available cash on hand, and funds by the Debtors' proposed DIP credit facility; and (iv) that the Debtors will be harmed if required to pay security deposits.

16. Debtors request that this Court find as a factual matter that FPL is adequately assured by the presence of factors that already exist in most major Chapter 11 bankruptcy cases.

17. The Debtors' reliance on In re Caldor, Inc., 117 F.3d 646 (2d Cir. 1997), is

misplaced and ignores a critical facet of that case. While the Second Circuit in Caldor rejected the utilities' broad legal challenge to the decision below (i.e. that deposits were required as a matter of law), the opinion certainly supports the payment of a deposit based upon the facts of a particular case. Caldor's conclusion is instructive:

> That "adequate assurance of payment" might in certain, exceptional cases require nothing more than what the Code already provides, does not render unnecessary or superfluous §366(b)'s provision that there be "adequate assurance" in all cases--a provision that may indeed require something more in other (if not most) circumstances.

117 F.3d at 652[2] (emphasis added).

**Debtors' Post-Petition Financing Offers Little Comfort To Administrative Creditors Such As FPL**

18. The Debtors' post-petition financing motion frankly concedes at page 6 that they lost over $500,000,000 in 2004 and that their stores have suffered declining sales. Moreover, it appears to indicate that the $600 million post-petition financing obtained (1) will be used substantially to pay down the $427,005,000 in debt already owed to the lender pre-petition and (2) pledges all of the Debtors' assets to the first priority lien of the DIP lender. There is, however, a glaring exception to the lender's priority. At page 17 of the Debtors' financing motion, the administrative expenses of the Debtors' professionals are subject to a carve out which gives them priority and secures the payment of their fees. No such security is being provided to secure the payment of FPL's critical services, which are equally critical to the Debtors' survival.

19. First, if the Debtors are, or begin, to operate unprofitably or run into other financial trouble, access to funds -- which is subject to the lenders' liens -- will likely be

[2] It is also ironic that the Caldor case itself slid into an administrative insolvency in which many creditors, including utilities, were not paid for post-petition services.

difficult, and creditor claims reaching for that cash will be substantial. In such a default situation, the Debtors may be completely unable to use the funds due to liens of, and obligations owed to, pre and post-petition lenders.

20. Likewise, the Debtors' promise to pay FPL is illusory if the Debtors do not have the ability to pay for the services consumed. FPL makes its deposit request pursuant to the Bankruptcy Code to protect itself from a financial loss in the event that the Debtors cannot pay. There has been no evidence presented by the Debtors that sufficient liquidity exists and that operations are running at sufficient positive cash-flows to provide comfort in the promise of the Debtors to pay all utility bills, or that the lenders are committed to provide post-petition financing sufficient to meet the service requirements.

21. Even assuming that the Debtors can show adequate liquidity to support their promise, such liquidity would only allow a "reasonable modification of the amount of the deposit or other security." 11 U.S.C. § 366(b). Indeed, in cases where sufficient liquidity exists and the Debtors have a spotless payment history, some courts have still required a modified deposit. See eg. In re Best Products Co., 203 B.R. 51, 54 (Bankr. E.D. Va. 1996) (requiring one-half month security although Debtors had no defaults, no arrearages, no history of late payments, $150 million cash from recent sale of asset and $250 million debtor-in-possession facility). FPL should not be required to wait until the Debtors' financial condition deteriorates to the point that the right to obtain a deposit under Section 366(b) becomes unenforceable.

**The Requirement of Section 366 To Provide A Deposit Or Other Security Should Be Read Narrowly**

22. The Second Circuit's ruling in Caldor specifically did not decide whether the statutory requirement of a deposit or other security should be read narrowly or broadly but ruled that the Bankruptcy Court's authority to "modify" the level of deposit or other security included the power to require no deposit or other security in those special cases where none

was necessary under the facts presented.

23. The statute requires the Debtors to "furnish adequate assurance" and that adequate assurance must be in the form of either "a deposit or other security." The phrase "deposit or other security" is plain and unambiguous and, therefore, should be interpreted literally without reference to any legislative history (even though such legislative history also supports FPL's position as set forth more fully below). See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 252, 112 S. Ct. 1146, 1149 (1992) ("When the words of a statute are unambiguous, then . . . judicial inquiry is complete.")

24. Even assuming that the requirement of a "deposit or other security" in Section 366(b) was somehow ambiguous when read in isolation, Section 366(b) must be read in context with other provisions of the Bankruptcy Code. As the Supreme Court has acknowledged, "[s]tatutory construction" is a "holistic endeavor . . . A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme - because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." See United Sav. Ass'n v. Timbers of Inwood Forest, 484 U.S. 365, 367; 106 S. Ct. 626, 630 (1988) (citation omitted).

25. A comparison of the language of Section 366(b) with Sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code is instructive. Sections 365(b)(1)(C) and (f)(2)(B) do not require such adequate assurance to be in the form of a "deposit or other security." Compare 11 U.S.C. §§ 365(b)(1)(C) and (f)(2)(B) (requiring "adequate assurance of future performance") with 11 U.S.C. § 366(b) (requiring "adequate assurance" in the form of a "deposit or other security"); see also Field v. Mans, 516 U.S. 59, 75; 116 S. Ct. 437, 446 (1995) ("The more apparently deliberate the contrast, the stronger the inference, as applied, for example, to contrasting statutory sections originally enacted simultaneously in relevant respects.") (citation

omitted).

26. The legislative history of Section 366 provides further support. The House Report on Section 366 simply referred to adequate assurance of payment for future services. The Senate version of the bill, however, required assurance to be given "in the form of a deposit or other security." See S. 2266, 95th Cong., 2d Sess. (1978). The language of the Senate version of Section 366 is more specific and contemplates more than just a mere administrative expense claim.

27. By adopting the language included in the Senate's bill, Congress made a conscious decision that adequate assurance under Section 366 was normally to include more than just an administrative expense claim. There is a sound public policy reason for this distinction. Unlike other entities who choose to extend post-petition credit to or do business with Debtors, utilities do not voluntarily deal with Debtors post-petition; they are required to do so by Section 366. In return, Section 366 grants utilities the right to require a deposit or other security in addition to the statutory administrative expense priority as the quid pro quo for continued services post-petition. Without Section 366's mandate of a deposit or other form of security, utilities would have no ability to be in parity with other entities who may require post-petition a priming lien (like that often demanded by a prospective post-petition lender) or cash in advance payment terms (like trade vendors often require) as a condition to doing business with Debtors.

28. In Field v. Mans, supra, the Supreme Court declared that the utilization in the Bankruptcy Code of a term with an established meaning was meant to incorporate the general common law meaning of that term. 516 U.S. at 70; 116 S. Ct. at 450 n.9. Therefore, in the instant case, this Court should also look to the "general common law" for the meaning of the terms "deposit" or "other security" in Section 366(b).

29. The common law meaning of the term "deposit" denotes "[m]oney placed with a

person as an earnest or security for the performance of some contract, to be forfeited if the depositor fails in his undertaking." Black's Law Dictionary at 438 (6th ed. 1990). Section 101(49) of the Bankruptcy Code specifically defines "security" to include notes, stock, bonds and certificates of deposit." Moreover, at common law, the term "security" is "usually applied to an obligation, pledge, mortgage, deposit, lien, etc. given by a Debtor in order to assure the payment or performance of his debt, by furnishing the creditor with a resource to be used in case of failure in the principal obligation." Black's Law Dictionary at 1355 (6th ed. 1990). .

**Debtors' Motion Does Not Present One Of Those "Exceptional Cases" Under Caldor Where FPL's Adequate Assurance May Be Modified To Nothing More Than The Bankruptcy Code Already Provides**

30. This is a case where FPL saw long before the bankruptcy that the Debtors were in financial difficulty and took prudent steps to secure itself fully to protect against default. Its foresight in securing its accounts should be maintained as adequate assurance going forward. This is not a case where the Debtors are flush with cash with rosy projections for the future. Rather it is case where the Debtors have incurred significant losses and are losing ground to their competition.

31. In the event of a default, it usually takes electric utilities a 2 month period to protect themselves. FPL's situation is precisely that. Under applicable regulations, FPL reads and records usage on a meter located at the Debtors' operations approximately every thirty days (30 days of exposure). Within seven days of a reading, a bill invoicing the past thirty day's usage is issued to the Debtors (37 days of exposure). The Debtors then have ten to fifteen days to make a payment on those bills (47 to 52 days of exposure). If the Debtors miss a payment, the account can then be terminated within a week or so of the invoice due date (54 to 60 days of exposure). Accordingly, if the Debtors decide or are unable to make any more payments on the FPL Accounts, approximately sixty days usage will be unpaid from the time the meter is read, the bill is sent, the bill becomes past due, and the termination actually occurs.

Accordingly, FPL has a two-month exposure on its accounts totaling approximately $6,900,000. Therefore, a deposit of $6,900,000 representing a two month deposit for the accounts on an ordinary billing will maintain its pre-petition secured position and adequately assure FPL that the Debtors will pay for future usage of its services.

WHEREFORE, FPL respectfully requests that this Court enter an order (i) denying the Debtors' utility motion; (ii) awarding FPL a deposit of $6,900,000, equal to two-months of service under Section 366(b) of the Bankruptcy Code; and (iii) granting such further relief as is appropriate.

Dated: Uniondale, New York
March 4, 2005

Respectfully submitted,

SCARCELLA ROSEN & SLOME LLP

By: /s/ Thomas R. Slome
Thomas R. Slome (TS-0957)

333 Earle Ovington Boulevard
Ninth Floor
Uniondale, New York 11553-3622
(516) 227-1600

Rachel S. Budke (FBN 185851)
Law Department, Florida, Power & Light Company
700 Universe Boulevard
Juno Beach, Florida 33408
Telephone: (561) 691-7797
Facsimile: (561) 691-7103

and

William Douglas White (DC 224592)
McCarthy & White PLLC
8180 Greensboro Drive, Suite 875
McLean, Virginia 22102
Telephone: (703) 770-9265

Attorneys for Florida, Power & Light Company