Rachel S. Budke (FBN 185851)
Law Department, Florida, Power & Light Company
700 Universe Boulevard
Juno Beach, Florida 33408
Telephone:     (561) 691-7797
Facsimile:     (561) 691-7103

William Douglas White
McCarthy & White PLLC
8180 Greensboro Drive, Suite 875
McLean, Virginia 22102
Telephone: (703) 770-9265

Attorneys for Florida, Power & Light Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
                                                    x
In re:                                          :
     :
WINN-DIXIE STORES, INC., et al.,                :
            :
            Debtors.                            :
                                                :
```

## DECLARATION OF CAROLYN DOVO IN SUPPORT OF OBJECTION OF CREDITOR, FLORIDA POWER AND LIGHT COMPANY TO DEBTORS' MOTION FOR ORDER (A) DEEMING UTILITIES ADEQUATELY ASSURED OF PAYMENT, (B) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, AND (C) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE

Carolyn Dovo declares as follows:

1.      I am a Bankruptcy Administrator and have held that position with Florida Power & Light Company ("FPL") for approximately 16 years.  I have been employed at FPL for approximately 11 years in customer service positions.  I am responsible for the processing and administration of collection efforts in bankruptcy cases at FPL.

2.      FPL has identified 220 electric accounts with the Debtors.  FPL provides electric service to the Debtors under these 220 accounts.  FPL held pre-petition security for

the Debtors' 220 accounts in the amount of $6,900,000 in the form of a cash deposit. FPL is entitled under its tariffs to a deposit in the amount of $6,900,000 which is equal to two months of service on the debtors' accounts. On average, the Debtors' monthly usage has been approximately $3,460,000. Currently, FPL estimates that its pre-petition claim is approximately $4,000,000, substantially more than one month of service.

    3.    On or about February 21, 2005, FPL Received From The Debtors Their Motion For Order (A) Deeming Utilities Adequately Assured Of Payment, (B) Prohibiting Utilities From Altering, Refusing Or Discontinuing Services, And (C) Establishing Procedures For Resolving Requests For Additional Assurance (the "Utility Motion").

    4.    FPL pays interest on the cash deposits it holds in the amount of six percent (6%) per year.

    5.    FPL bills its customers in arrears, and its "timeline" for the termination of service under the Florida Administrative Code and applicable tariffs is as follows: After FPL provides approximately 30 days of service, it sends out a bill to the customer. The customer then has 20 days to pay the bill before it is considered delinquent. If the bill is not paid after 20 days, FPL sends the customer a notice of default giving the customer 5 working days to cure the default. If the customer does not cure within that time, the customer's service is subject to termination. Applicable codes and tariffs specifically permit FPL to terminate service for nonpayment after prescribed notice. FPL's timeline for billing and collection means that it will have provided approximately 60 days of service on an account before it can terminate for nonpayment. This is why FPL should be entitled to protect itself by obtaining a two-month deposit.

6.   The Florida Administrative Code requires that the rules and regulations for service apply equally to all electric public utilities and that there be no deviation from those rules unless authorized in writing by the Florida Public Service Commission. The Florida Administrative Code further directs that each utility file tariffs with the Florida Public Service Commission and that no rules and regulations can be effective until filed with and approved by the Florida Public Service Commission as provided by law. The Florida Administrative Code further provides that each utility's tariff shall contain specific criteria for determining the amount of deposits in the form of a satisfactory guarantee, cash or letter of credit and that those deposits shall earn a minimum of 6% interest per annum. The Florida Administrative Code specifically permits the utility to consider bills delinquent after 20 days and to terminate service after 5 working days notice. Attached as Exhibit "A" are seven applicable sections of the Florida Administrative Code, four applicable sections of FPL's Electric Tariff and one section of the Official Florida Statutes.

7.   I have read and reviewed the proposed Interim and Final Orders submitted with the Debtors' Utility Motion, which propose awarding an administrative expense priority as adequate assurance under Section 366 of the Bankruptcy Code. The Interim and Final Orders do not provide FPL with a two-month security deposit.

8.   As a Bankruptcy Administrator for FPL, it is my opinion that the Debtors' proposed award of an administrative expense priority is not sufficient adequate assurance under Section 366 of the Bankruptcy Code, because it does not provide FPL with the necessary security in the event of a post-petition default by the Debtors. FPL should obtain a two-month security deposit from the Debtors as adequate assurance under Section 366 of the

3

Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: _3/3/05_

Carolyn Dovo

4

# EXHIBIT A

1. Florida Administrative Code, 25-6.002 – Applicability and Scope (Applies to all electric utilities).

2. Florida Administrative Code, 25-6.033 – Tariffs (Utilities may not adopt tariffs).

3. Florida Administrative Code, 25-6.097 – Customer Deposits (Florida Public Service Commission ("FPSC") rule on customer deposits).

4. Florida Administrative Code, 25-6.099 – Meter Reading (done monthly).

5. Florida Administrative Code, 25-6.100 – Customer Billings (FPSC rule regarding billing periods).

6. Florida Administrative Code, 25-6.101 – Delinquent Bills (FPSC rule regarding delinquent bills).

7. Florida Administrative Code, 25-6.105 – Refusal or Discontinuance of Service by Utility (FPSC rule regarding disconnection notice and time frame – see subparagraph (5)(g)).

8. FPL's Electric Tariff Eighth Revised Sheet No. 6.010 – (See Section 1.6 regarding discontinuance of service).

9. FPL's Electric Tariff Thirteenth Revised Sheet No. 6.040 – (See Section 6.1 regarding deposits).

10. FPL's Electric Tariff Fifteenth Revised Sheet No. 6.050 – (See Section 6.2 and 6.22 regarding deposit interest and 7.1, 7.11 and 7.13 regarding billing periods).

11. FPL's Electr5ic Tariff Tenth Revised Sheet No. 6.060 – (See Section 7.9 regarding delinquent bills).

12. Florida Statutes, Section 366.03 – Duties of Public Utility

25 FL ADC 25-6.002
Rule 25-6.002, F.A.C.
Fla. Admin. Code Ann. r. 25-6.002

Page 1

c

# FLORIDA ADMINISTRATIVE CODE ANNOTATED
## TITLE 25. PUBLIC SERVICE COMMISSION
## CHAPTER 25-6. ELECTRIC SERVICE BY ELECTRIC PUBLIC UTILITIES
## PART I. GENERAL PROVISIONS
Current through August 1, 2004

### 25-6.002. Application and Scope.

(1) These rules and regulations shall apply to all electric public utilities operating under the jurisdiction of the Florida Public Service Commission. They are intended to define and promote good utility practices and procedures, adequate and efficient service to the public at reasonable costs, and to establish the rights and responsibilities of both the utility and the customer.

(2) No deviation from these rules shall be permitted unless authorized in writing by the Commission.

(3) The adoption of these rules shall not in any way relieve any utility from any of its duties under the laws of the State.

Specific Authority 366.05(1) FS. Law Implemented 366.05(1) FS. History-- New 7-29-69, Formerly 25-6.02, Amended 1-31-00.

<General Materials (GM) - References, Annotations, or Tables>

ANNOTATIONS

**Foreign cooperatives**

Where Florida rural electric cooperatives enjoyed power of eminent domain, foreign cooperative meeting F. S. A. § 425.27 requirements was also entitled to exercise this power in order to construct electrical transmission line over appellants' land, and no abuse of discretion was found in that choice of locations; further, since F. S. A. § 425.04(4) authorized rural electric cooperatives to serve up to ten percent non-rural areas, and cooperative had not violated "central station" provisions, foreign corporation's service to four municipalities did not deprive it of its "rural" character. Alabama Electric Cooperative, Inc. v. First National Bank of Akron, Ohio, 684 F. 2d 789 (11th Cir. 1982).

**Municipal utilities**

While Commission had no jurisdiction to set rates for municipal utility, it had authority over "rate structure" of all electric utilities in state; city's differential charges to customers within and without its corporate limits constituted classification system and therefore were matter of "rate structure" subject to jurisdiction of Public Service Commission. City of Tallahassee v. Mann, 411 So. 2d 162 (1982).

**State policy**

Florida cities' claim involving electricity transmission services arose under state "Little FTC Act," Section 501.204, F.S., so was dismissed without prejudice for reassertion in state

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

25 FL ADC 25-6.002
Rule 25-6.002, F.A.C.
Fla. Admin. Code Ann. r. 25-6.002

proceedings. Federal court refused to determine state policy by interpreting scope of regulated business exemption to that statute. City of Gainesville v. Florida Power & Light Company, 488 F. Supp. 1258 (S. D. Fla. 1980).

25 FL ADC 25-6.002
END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

25 FL ADC 25-6.033
Rule 25-6.033, F.A.C.
Fla. Admin. Code Ann. r. 25-6.033

Page 1

c

**FLORIDA ADMINISTRATIVE CODE
ANNOTATED
TITLE 25. PUBLIC SERVICE COMMISSION
CHAPTER 25-6. ELECTRIC SERVICE BY
ELECTRIC PUBLIC UTILITIES
PART III. GENERAL MANAGEMENT
REQUIREMENTS**
Current through August 1, 2004

**25-6.033. Tariffs.**

(1) Each utility may adopt such additional non-discriminatory rules and regulations governing its relations with customers as are necessary and which are not inconsistent with these rules or orders of the Commission. Such rules and regulations shall constitute an integral part of the utility's tariffs and shall be filed with them.

(2) Each utility shall file with the Commission tariffs containing schedules for all rates and charges and copies of all rules and regulations governing the relation of customer and utility.

(a) Each utility shall include in its tariffs without limiting them to the following provisions:

1. Definitions of classes of customers.

2. Rules with which prospective customers must comply as a condition of receiving service, and the terms of contracts required.

3. Rules governing the establishment of credit by customers for payment of service bills.

4. Rules governing deposits and interest on deposits.

5. Rules governing the procedure followed in disconnecting and reconnecting service.

6. Notice by customer required for having service

discontinued.

7. Rules governing temporary, emergency, auxiliary or stand-by service.

8. Rules covering billing periods.

9. Rules covering customer's construction requirements.

10. Rules covering a special type of construction commonly requested by customers which the utility allows to be connected and terms upon which such construction will be permitted. This applies, for example, to a case where a customer desires underground service in overhead territory.

11. Rules covering such portion of service which the utility furnished, owns, and maintains.

12. Rules covering inspection of customer-owned facilities by proper authorities before service is rendered.

(3) All tariff filings shall be in the manner and form as prescribed by the Commission under separate Order entitled "Rules and Regulations Governing the Construction and Filing of Tariffs by Public Utilities.

(4) No rules and regulations, or schedules of rates or charges, or modification or revisions of the same, shall be effective until filed with and approved by the Commission as provided by Law.

(5) A copy of the rules contained herein, as promulgated and adopted by the Commission, also a copy of the rate schedules and rules and regulations of the utility as filed with the Commission, shall be kept on file in the local commercial offices of the utility for inspection by its customers. A customer shall, upon request, be furnished a copy of the rate schedule applicable to his service.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

25 FL ADC 25-6.033
Rule 25-6.033, F.A.C.
Fla. Admin. Code Ann. r. 25-6.033

Specific Authority 366.05(1) FS. Law Implemented 366.03, 366.06 FS. History--Amended 7-29-69, Formerly 25-6.33.

<General Materials (GM) - References, Annotations, or Tables>

ANNOTATIONS

Discriminatory effect

Holding company in class action suit against utilities commission and county failed to establish that commission's inclusion of "in lieu of tax" payments to county as operating expense was arbitrary or unreasonable; failure to make such payments would have effect of discriminating against county taxpayers, who would presumably have to pay through higher taxes for free services received by utility. Rosalind Holding Company v. Orlando Utilities Commission, App., (5th) 402 So. 2d 1209 (1981).

Effective date

Commission followed law regarding prospective ratemaking when it ordered power company to begin billing under new rates on meter readings taken 30 days after effective date of new rates, which was date when issues were decided and official vote taken, rather than date when written order was issued. Gulf Power Company v. Cresse, 410 So. 2d 492 (1982).

Hearings

Public Service Commission deprived intervenors of due process where it notified them of grant of previously-withheld interim rate increase to electric company, promising full hearing and then denying public counsel adequate opportunity to cross-examine and present new evidence. Where public counsel intervene, court said, Commission must develop adequate record to show competent and substantial evidence of reasonableness of increase. Case was remanded, with no refund of increase to public. Citizens of Florida v. Mayo, 333 So. 2d 1 (1976).

New customers

Upon merger of two corporate customers of public electric utility, utility requested deposit as new customer. Public Service Commission did not err in determining that utility's applicable deposit policy did not have to be enacted as administrative rule in its tariff in order to be enforceable. PSC's interpretation of Rule 25-6.97 [now Rule 25-6.097] as containing exclusive statement of information on deposits which must be included in company tariffs, was not clearly erroneous. Utility was not required to adopt as formal regulation its definition of "new customer," as well as all its policies relating to deposits, notwithstanding Rule 25-6.33(2)(a) [now Rule 25-6.033]. Pan American World Airways, Inc. v. Florida Public Service Commission, 427 So. 2d 716 (1983).

Rate of return

State supreme court upheld grant by Public Service Commission of interim rate increase to electric company, where substantial and competent

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

25 FL ADC 25-6.033
Rule 25-6.033, F.A.C.
Fla. Admin. Code Ann. r. 25-6.033

evidence showed company's rate of return at time of grant was substantially lower than last authorized minimum fair rate, with resultant danger to company's financial integrity. Citizens of Florida v. Mayo, 335 So. 2d 809 (1976).

True-up proceedings

Where power company appealed Commission's denial of its petition for authority to recover excess fuel expenses attributable to shutdown of company's nuclear power plant, court concluded that facts concerning company's prior troubles with heat pump, its recognition of necessity of having spare pump on hand and failure to procure spare were sufficient to support Commission finding of company's mismanagement, which justified withholding recovery of costs allegedly incurred due to failure to have replacement pump on hand. Florida Power Corporation v. Cresse, 413 So. 2d 1187 (1982).

Requirement that utilities demonstrate reasonableness of their fuel costs was neither improper nor unusual, and Commission did not err in placing burden on nuclear power company to show that excess costs incurred were reasonable and were not fault of management, where data provided showed that company's fuel costs were significantly higher due to incident, responsibility for which was in dispute; simple production of cost records and documentation could not satisfy requirements imposed on utility in true-up proceeding. Id.

25 FL ADC 25-6.033
END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

C

**FLORIDA ADMINISTRATIVE CODE**
**ANNOTATED**
**TITLE 25. PUBLIC SERVICE COMMISSION**
**CHAPTER 25-6. ELECTRIC SERVICE BY**
**ELECTRIC PUBLIC UTILITIES**
**PART VI. CUSTOMER RELATIONS**
Current through August 1, 2004

**25-6.097. Customer Deposits.**

(1) Deposit required; establishment of credit. Each company's tariff shall contain their specific criteria for determining the amount of initial deposit. Each utility may require an applicant for service to satisfactorily establish credit, but such establishment of credit shall not relieve the customer from complying with the utilities' rules for prompt payment of bills. Credit will be deemed so established if:

(a) The applicant for service furnishes a satisfactory guarantor to secure payment of bills for the service requested. For residential customers, a satisfactory guarantor shall, at the minimum, be a customer of the utility with a satisfactory payment record. For non-residential customers, a satisfactory guarantor need not be a customer of the utility. Each utility shall develop minimum financial criteria that a proposed guarantor must meet to qualify as a satisfactory guarantor. A copy of the criteria shall be made available to each new non-residential customer upon request by the customer. A guarantor's liability shall be terminated when a residential customer whose payment of bills is secured by the guarantor meets the requirements of subsection (2) of this rule. Guarantors providing security for payment of residential customers' bills shall only be liable for bills contracted at the service address contained in the contract of guaranty.

(b) The applicant pays a cash deposit.

(c) The applicant for service furnishes an

irrevocable letter of credit from a bank or a surety bond.

(2) Refund of deposits. After a customer has established a satisfactory payment record and has had continuous service for a period of 23 months, the utility shall refund the residential customer's deposits and shall, at its option, either refund or pay the higher rate of interest specified below for nonresidential deposits, providing the customer has not, in the preceding 12 months, (a) made more than one late payment of a bill (after the expiration of 20 days from the date of mailing or delivery by the utility), (b) paid with a check refused by a bank, (c) been disconnected for nonpayment, or at any time, (d) tampered with the electric meter, or (e) used service in a fraudulent or unauthorized manner.

(3) New or additional deposits. A utility may require, upon reasonable written notice of not less than thirty (30) days, a new deposit, where previously waived or returned, or additional deposit, in order to secure payment of current bills. Such request shall be separate and apart from any bill for service and shall explain the reason for such new or additional deposit, provided, however, that the total amount of the required deposit shall not exceed an amount equal to twice the average charges for actual usage of electric service for the twelve month period immediately prior to the date of notice. In the event the customer has had service less than twelve months, then the utility shall base its new or additional deposit upon the average actual monthly usage available.

(4) Interest on deposits.

(a) Each electric utility which requires deposits to be made by its customers shall pay a minimum interest on such deposits of 6 percent per annum. The utility shall pay an interest rate of 7 percent per annum on deposits of nonresidential customers qualifying under subsection (2) when the utility elects not to refund such deposit after 23 months.

(b) The deposit interest shall be simple interest in

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

25 FL ADC 25-6.097
Rule 25-6.097, F.A.C.
Fla. Admin. Code Ann. r. 25-6.097

all cases and settlement shall be made annually, either in cash or by credit on the current bill. This does not prohibit any utility paying a higher rate of interest than required by this rule. No customer depositor shall be entitled to receive interest on his deposit until and unless a customer relationship and the deposit have been in existence for a continuous period of six months, then he shall be entitled to receive interest from the day of the commencement of the customer relationship and the placement of deposit. Nothing in this rule shall prohibit a utility from refunding at any time a deposit with any accrued interest.

(5) Record of deposits. Each utility having on hand deposits from a customer or hereafter receiving deposits from them shall keep records to show:

(a) The name of each customer making the deposit;

(b) The premises occupied by the customer;

(c) The date and amount of deposit; and

(d) Each transaction concerning the deposits such as interest payments, interest credited or similar transactions.

(6) Receipt for deposit. A non-transferable certificate of deposit shall be issued to each customer and means provided so that the customer may claim the deposit if the certificate is lost. Where a new or additional deposit is required under subsection (3) of this rule, a customer's cancelled check or validated bill coupon may serve as a deposit receipt.

(7) Refund of deposit when service is discontinued. Upon termination of service, the deposit and accrued interest may be credited against the final account and the balance, if any, shall be returned promptly to the customer but in no event later than fifteen (15) days after service is discontinued.

Specific Authority 366.05(1), 350.127(2) FS. Law Implemented 366.03, 366.041(1), 366.05(1), 366.06(1) FS. History--New 7-29-69, Amended 5-9-76, 7-8-79, 6-10-80, 10-17-83, 1-31-84, Formerly

25-6.97, Amended 10-13-88, 4-25-94, 3-14-99.

<General Materials (GM) - References, Annotations, or Tables>

ANNOTATIONS

New customers

Upon merger of two corporate customers of public electric utility, utility requested deposit as new customer. Public Service Commission did not err in determining that utility's applicable deposit policy did not have to be enacted as administrative rule in its tariff in order to be enforceable. PSC's interpretation of Rule 25-6.97 [now Rule 25-6.097] as containing exclusive statement of information on deposits which must be included in company tariffs, was not clearly erroneous. Utility was not required to adopt as formal regulation its definition of "new customer," as well as all its policies relating to deposits, notwithstanding Rule 25-6.33(2)(a) [now Rule 25-6.033]. Pan American World Airways, Inc. v. Florida Public Service Commission, 427 So. 2d 716 (1983).

25 FL ADC 25-6.097
END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



25 FL ADC 25-6.099
Rule 25-6.099, F.A.C.
Fla. Admin. Code Ann. r. 25-6.099

Page 1

c

**FLORIDA ADMINISTRATIVE CODE
ANNOTATED
TITLE 25. PUBLIC SERVICE COMMISSION
CHAPTER 25-6. ELECTRIC SERVICE BY
ELECTRIC PUBLIC UTILITIES
PART VI. CUSTOMER RELATIONS**
Current through August 1, 2004

**25-6.099. Meter Readings.**

Each service meter shall be clearly marked to indicate the units measured. Unless special circumstances warrant, meters shall be read at monthly intervals on the approximate corresponding day of each meter-reading period.

Specific Authority 366.05(1) FS. Law Implemented 366.03, 366.05(1) FS. History--Amended 7-29-69, 4-13-80, Formerly 25-6.99.

<General Materials (GM) - References, Annotations, or Tables>

25 FL ADC 25-6.099
END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

25 FL ADC 25-6.100
Rule 25-6.100, F.A.C.
Fla. Admin. Code Ann. r. 25-6.100

C

**FLORIDA ADMINISTRATIVE CODE
ANNOTATED**
**TITLE 25. PUBLIC SERVICE COMMISSION**
**CHAPTER 25-6. ELECTRIC SERVICE BY
ELECTRIC PUBLIC UTILITIES**
**PART VI. CUSTOMER RELATIONS**
Current through August 1, 2004

**25-6.100. Customer Billings.**

(1) Bills shall be rendered monthly and as promptly as possible following the reading of meters.

(2) By January 1, 1983, each customer's bill shall show at least the following information:

(a) The meter reading and the date the meter is read, in addition to the meter reading for the previous period. If the meter reading is estimated, the word "estimated" shall be prominently displayed on the bill.

(b)1. Kilowatt-hours (KWH) consumed including on and off peak if customer is time-of-day metered.

2. Kilowatt (KW) demand, if applicable, including on and off peak if customer is time-of-day metered.

(c) The dollar amount of the bill, including separately:

1. Customer charge.

2. Energy (KWH) charge, exclusive of fuel, in cents per KWH, including amounts for on and off peak if the customer is time-of-day metered, and energy conservation costs.

3. Demand (KW) charge, exclusive of fuel, in dollar cost per KW, if applicable, including amounts for on and off peak if the customer is time-of-day metered.

4. Fuel cost in cents per KWH (no fuel costs shall be included in the base charge for demand or energy).

5. Total electric cost which is the sum of the customer charge, total fuel cost, total energy cost, and total demand cost.

6. Franchise fees, if applicable.

7. Taxes, as applicable on purchases of electricity by the customer.

8. Any discount or penalty, if applicable.

9. Past due balances shown separately.

10. The gross and net billing, if applicable.

(d) Identification of the applicable rate schedule.

(e) The date by which payment must be made in order to benefit from any discount or avoid any penalty, if applicable.

(f) The average daily KWH consumption for the current period and for the same period in the previous year, for the same customer at the same location.

(g) The delinquent date or the date after which the bill becomes past due.

(h) Any conversion factors which can be used by customers to convert from meter reading units to billing units. Where metering complexity makes this requirement impractical, a statement must be on the bill advising that such information may be obtained by contacting the utility's local business office.

(i) Where budget billing is used, the bill shall contain the current month's consumption and charges separately from budgeted amounts.

(j) The name of the utility plus the address and telephone number of the local office where the bill

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

25 FL ADC 25-6.100
Rule 25-6.100, F.A.C.
Fla. Admin. Code Ann. r. 25-6.100

can be paid and any questions about the bill can be answered.

(3) When there is sufficient cause, estimated bills may be submitted provided that with the third consecutive estimated bill the company shall contact the customer explaining the reason for the estimated billing and who to contact in order to obtain an actual meter reading. An actual meter reading must be taken at least once every six months. If an estimated bill appears to be abnormal when a subsequent reading is obtained, the bill for the entire period shall be computed at a rate which contemplates the use of service during the entire period and the estimated bill shall be deducted. If there is reasonable evidence that such use occurred during only one billing period, the bill shall be computed.

(4) The regular meter reading date may be advanced or postponed not more than five days without a pro-ration of the billing for the period.

(5) Whenever the period of service for which an initial or opening bill is rendered is less than the normal billing period, the charges applicable to such service, including minimum charges, shall be pro-rated except that initial or opening bills need not be rendered but the energy used during such period may be carried over to and included in the next regular monthly billing.

(6) The practices employed by each utility regarding customer billing shall have uniform application to all customers on the same rate schedule.

(7) Franchise Fees.

(a) When a municipality charges a utility any franchise fee, the utility may collect that fee only from its customers receiving service within that municipality. When a county charges a utility any franchise fee, the utility may collect that fee only from its customers receiving service within that county.

(b) A utility may not incorporate any franchise fee into its other rates for service.

(c) For the purposes of this subsection, the term

"utility" shall mean any electric utility, rural electric cooperative, or municipal electric utility.

(d) This subsection shall not be construed as granting a municipality or county the authority to charge a franchise fee. This subsection only specifies the method of collection of a franchise fee, if a municipality or county, having authority to do so, charges a franchise fee.

Specific Authority 366.05(1), 366.04(2) FS. Law Implemented 366.03, 366.04(2), 366.041(1), 366.051, 366.06(1) FS. History--New 2-25-76, Amended 4-13-80, 12-29-81, 6-28-82, 5-16-83.

<General Materials (GM) - References, Annotations, or Tables>

ANNOTATIONS

Validity

Proposed Rule 25-6.100(7) in effect allows investor-owned, municipally-owned, and cooperatively-owned electric utilities paying franchise fees to local government to recoup these fees only from customers living within franchised area. Proposed rule regulates rate structure, not rates. It does not affect dollar amount charged for particular service or amount of consumption. Thus, rule is derived from and does not exceed Commission's explicit power to regulate rate structures of municipal electric utilities. City of Alachua v. Florida Public Service Commission (DOAH 82-202R), 5 FALR 916-A (1983).

25 FL ADC 25-6.100
END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



25 FL ADC 25-6.101
Rule 25-6.101, F.A.C.                                                                    Page 1
Fla. Admin. Code Ann. r. 25-6.101


c

**FLORIDA ADMINISTRATIVE CODE**
**ANNOTATED**
**TITLE 25. PUBLIC SERVICE COMMISSION**
**CHAPTER 25-6. ELECTRIC SERVICE BY**
**ELECTRIC PUBLIC UTILITIES**
**PART VI. CUSTOMER RELATIONS**
Current through August 1, 2004


**25-6.101. Delinquent Bills.**


Bills shall not be considered delinquent prior to the expiration of twenty (20) days from the date of mailing or delivery by the utility.


Specific Authority 366.05(1) FS. Law Implemented 366.03, 366.05(1) FS. History--New 2-25-76.


<General Materials (GM) - References, Annotations, or Tables>

25 FL ADC 25-6.101
END OF DOCUMENT


Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

25 FL ADC 25-6.105
Rule 25-6.105, F.A.C.
Fla. Admin. Code Ann. r. 25-6.105

Page 1

c

**FLORIDA ADMINISTRATIVE CODE
ANNOTATED
TITLE 25. PUBLIC SERVICE COMMISSION
CHAPTER 25-6. ELECTRIC SERVICE BY
ELECTRIC PUBLIC UTILITIES
PART VI. CUSTOMER RELATIONS**
Current through August 1, 2004

**25-6.105. Refusal or Discontinuance of Service by Utility.**

(1) Until adequate facilities can be provided, each utility may refuse to serve an applicant if, in the best judgment of the utility, it does not have adequate facilities to render the service applied for.

(2) Each utility may refuse to serve any person whose service requirements or equipment is of a character that is likely to affect unfavorably service to other customers.

(3) Each utility may refuse to render any service other than that character of service which is normally furnished, unless such service is readily available.

(4) Each utility shall not be required to furnish service under conditions requiring operation in parallel with generating equipment connected to the customer's system if, in the opinion of the utility, such operation is hazardous or may interfere with its own operations or service to other customers or with service furnished by others. Each utility may specify requirements as to connection and operation as a condition of rendering service under such circumstances.

(5) If the utility refuses service for any reason specified in this subsection, the utility shall notify the applicant for service as soon as practicable, pursuant to subsection (7), of the reason for refusal of service. If the utility will discontinue service, the utility shall notify the customer at least 5 working days prior to discontinuance, that service will cease unless the deficiency is corrected in compliance with the utility's regulations, resolved through mutual agreement, or successfully disputed by the customer. The 5-day notice provision does not apply to paragraphs (h), (i), or (j). In all instances involving refusal or discontinuance of service the utility shall advise in its notice that persons dissatisfied with the utility's decision to refuse or discontinue service may register their complaint with the utility's customer relations personnel and to the Florida Public Service Commission at 1-800-342-3552, which is a toll free number. As applicable, each utility may refuse or discontinue service under the following conditions:

(a) For non-compliance with or violation of any state or municipal law or regulation governing electric service.

(b) For failure or refusal of the customer to correct any deficiencies or defects in his wiring or equipment which are reported to him by the utility.

(c) For the use of energy for any other property or purpose than that described in the application.

(d) For failure or refusal to provide adequate space for the meter and service equipment of the utility.

(e) For failure or refusal to provide the utility with a deposit to insure payment of bills in accordance with the utility's regulation, provided that written notice, separate and apart from any bill for service, be given the customer.

(f) For neglect or refusal to provide safe and reasonable access to the utility for the purpose of reading meters or inspection and maintenance of equipment owned by the utility, provided that written notice, separate and apart from any bill for service, be given the customer.

(g) For non-payment of bills or non-compliance with the utility's rules and regulations, and only after there has been a diligent attempt to have the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

25 FL ADC 25-6.105
Rule 25-6.105, F.A.C.
Fla. Admin. Code Ann. r. 25-6.105

customer comply, including at least 5 working days' written notice to the customer, such notice being separate and apart from any bill for service, provided that those customers who so desire may designate a third party in the company's service area to receive a copy of such delinquent notice. For purposes of this subsection, "working day" means any day on which the utility's business office is open and the U.S. Mail is delivered. A utility shall not, however, refuse or discontinue service for nonpayment of a dishonored check service charge imposed by the utility.

(h) Without notice in the event of a condition known to the utility to be hazardous.

(i) Without notice in the event of tampering with meters or other facilities furnished and owned by the utility.

(j) Without notice in the event of unauthorized or fraudulent use of service. Whenever service is discontinued for fraudulent use of service, the utility may, before restoring service, require the customer to make at his own expense all changes in facilities or equipment necessary to eliminate illegal use and to pay an amount reasonably estimated as the loss in revenue resulting from such fraudulent use.

(6) Service shall be restored when cause for discontinuance has been satisfactorily adjusted.

(7) In case of refusal to establish service, or whenever service is intentionally discontinued by the utility for other than routine maintenance, the utility shall notify the applicant or customer in writing of the reason for such refusal or discontinuance.

(8) The following shall not constitute sufficient cause for refusal or discontinuance of service to an applicant or customer:

(a) Delinquency in payment for service by a previous occupant of the premises unless the current applicant or customer occupied the premises at the time the delinquency occurred and the previous customer continues to occupy the premises and such previous customer shall benefit from such service.

(b) Failure to pay for merchandise purchased from the utility.

(c) Failure to pay for a service rendered by the utility which is non-regulated.

(d) Failure to pay for a different type of utility service, such as gas or water.

(e) Failure to pay for a different class of service.

(f) Failure to pay the bill of another customer as guarantor thereof.

(g) Failure to pay a dishonored check service charge imposed by the utility.

(9) When service has been discontinued for proper cause, each utility may charge a reasonable fee to defray the cost of restoring service, provided such fee is included in its filed tariff.

(10) No utility shall discontinue service to any non-commercial customer between 12:00 noon on a Friday and 8:00 a.m. the following Monday or between 12:00 noon on the day preceding a holiday and 8:00 a.m. the next working day. Provided, however, this prohibition shall not apply when:

(a) Discontinuance is requested by or agreed to by the customer; or

(b) A hazardous condition exists; or

(c) Meters or other utility owned facilities have been tampered with or

(d) Service is being obtained fraudulently or is being used for unlawful purposes.

Holiday as used in this subsection shall mean New Year's Day, Memorial Day, July 4, Labor Day, Thanksgiving Day and Christmas Day.

(11) Each utility shall submit, as a tariff item, a procedure for discontinuance of service when that service is medically essential.

Specific Authority 366.05 FS. Law Implemented

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

25 FL ADC 25-6.105
Rule 25-6.105, F.A.C.
Fla. Admin. Code Ann. r. 25-6.105

366.03, 366.04(2)(c), (5), 366.041(1), 366.05(1), 366.06(1) FS. History--New 2-25-76, Amended 2-3-77, 2-6-79, 4-13-80, 11-26-80, 1-1-91, 1-7-93.

&lt;General Materials (GM) - References,
Annotations, or Tables&gt;

25 FL ADC 25-6.105
END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**FLORIDA POWER & LIGHT COMPANY**

<div align="right">

Eighth Revised Sheet No . 6.010
Cancels Seventh Revised Sheet No . 6.010

</div>

## GENERAL RULES AND REGULATIONS FOR ELECTRIC SERVICE

### INTRODUCTION

These General Rules and Regulations are a part of the Company's Tariff, covering the terms and conditions under which Electric Service is supplied by the Company to the Customer. They are supplementary to the "Rules and Regulations Governing Electric Service by Electric Utilities" issued by the Florida Public Service Commission.

### 1 SERVICE AGREEMENTS

1.1  Application for Service. Service may be obtained upon application. Usually all that is required is the service application, a form of identification acceptable to the Company, and the posting of a guarantee deposit.

1.2  Information Needed. To provide service promptly the Company will need the applicant's name, telephone number and address including the street, house number (or apartment number), or the name of the subdivision with lot and block numbers. The types of identification required upon application for service include a valid social security number, tax identification number, driver's license, birth certificate or any other form of identification acceptable to the Company. On new or changed installations, the Company will also need to know the equipment that will be used. The Company will advise the Customer as to whether the desired type of service is available at the designated location.

1.3  Agreement. Service is furnished upon acceptance of the agreement or contract by the Company. Applications are accepted by the Company with the understanding that there is no obligation to render service other than the character of service then available at the point of delivery. A copy of any written agreement accepted by the Company will be furnished to the applicant upon request.

1.4  Applications by Agents. Applications for service requested by firms, partnerships, associations, corporations, etc., shall be made only by duly authorized parties. When service is rendered under an agreement or agreements entered into between the Company and an agent of a principal, the use of such service by the principal shall constitute full and complete ratification by the principal of such agreement or agreements.

1.5  Prior Indebtedness. The Company may refuse or discontinue service for failure to settle, in full, all prior indebtedness incurred by any Customer(s) for the same class of service at any one or more locations of such Customer(s). The Company may also refuse service for prior indebtedness by a previous customer provided that the current applicant or customer occupied the premises at the time the prior indebtedness occurred and the previous customer continues to occupy the premises.

1.6  Discontinuance of Service. Service may be discontinued for violation of the Company's rules or by actions or threats made by a customer, or anyone on the customer's premises, which are reasonably perceived by a utility employee as violent or unsafe, after affording the Customer reasonable opportunity to comply with said rules, and/or the customer agrees to cease from any further act of violence or unsafe condition, including five (5) days written notice to the Customer. However, where the Company believes a dangerous condition exists on the Customer's premises, service may be discontinued without notice.

(Continued on Sheet No. 6.011)

**FLORIDA POWER & LIGHT COMPANY**

<div align="right">

Thirteenth Revised Sheet No. 6.040
Cancels Twelfth Revised Sheet No. 6.040

</div>

<div align="center">

5 COMPANY'S INSTALLATIONS

</div>

5.1 Protection of Company's Property.  The Customer shall properly protect the Company's property on the Customer's premise s, and shall permit no one but the Company's agents, or persons authorized by law, to have access to the Company's wiring, meters, and apparatus.

5.2 Damage to Company's Property.  In the event of any loss or damage to property of the Company caused by or arising out of carelessness, neglect or misuse by the Customer, the cost of making good such loss or repairing such damage shall be paid by the Customer.

5.3 Relocation of Company's Facilities.  When there is a change in the Customer's operation or construction which, in the judgment of the Company, makes the relocation of Company's facilities necessary, or if such relocation is requested by the Customer, the Company will move such facilities at the Customer's expense to a location which is acceptable to the Company.

5.4 Attachments to Poles.  The use of the Company's poles, wires, towers, structures or other facilities for the purpose of fastening or supporting any radio or television aerials or other equipment, or any wires, ropes, signs, banners or other things, not necessary to the supplying by the Company of electric service to the community, or the locating of same in such proximity to the Company's property or facilities as to cause, or be likely to cause, interference with the supply of electric service, or a dangerous condition in connection therewith, is prohibited, and the Company shall have the right forthwith to remove same without notice.  The violator of these rules is liable for any damage resulting therefrom.

5.5 Interference with Company's Facilities.  The Customer should not allow trees, vines and shrubs to interfere with the Company's adjacent overhead conductors, service wires, pad mounted transformers and meter.  Such interference may result in an injury to persons, or may cause the Customer's service to be interrupted.  In all cases the customer should request the Company to trim or remove trees and other growth near the Company's adjacent overhead wires, and under no circumstances should the Customer undertake this work himself, except around service cables when specifically authorized by and arranged with the Company.

5.6 Unobstructed Access to Company's Facilities.  The Company shall have perpetual unobstructed access to its overhead and underground facilities such as poles, underground cables, pad mounted transformers and meters in order to perform repair and maintenance in a safe, timely and cost-efficient manner.  The Customer is responsible for contacting the Company for guidance before constructing any items which may obstruct the Company's access.  Such items include, but are not limited to, building additions, decks, patios, pools, fences or pavings.  Relocation of Company's facilities, as provided in Section 5.3 of these Rules and Regulations, may be necessary.  Should an item interfere with access to Company facilities requiring repair or maintenance, the Company will explore with the Customer all alternatives deemed feasible by the Company to determine the method of repair most acceptable to the Customer.  When the most acceptable or only option involves the Customer removing the obstruction or the Customer taking other actions, the Customer shall accomplish the work within 20 working days.  Should the Customer fail to accomplish said work within 20 working days or to make other satisfactory arrangements with the Company, the Company may elect to discontinue service to the Customer, pursuant to F.A.C. Rule 25-6.105 (5) (f).  In all cases, the Customer will be responsible for all costs in excess of a standard, unobstructed repair.

<div align="center">

6 SECURITY DEPOSITS/GUARANTIES

</div>

6.1 Security Deposit/Guaranty.

(1)    Before the Company renders service or upon termination of an existing Unconditional Guaranty Contract, each applicant will be required to provide:

    a)    information which satisfies the Company's application requirements for no deposit; or
    b)    a Security Deposit consisting of cash, surety bond, or irrevocable bank letter of credit; or
    c)    a guaranty satisfactory to the Company to secure payment of bills.

(2)    Each guarantor must enter into a guaranty contract set forth as Tariff Sheet No. 9.400 or 9.410.  The amount of such initial Security Deposit, if required, shall be based upon estimated billings for a period of two average months, but not less than $25.00.  Estimations shall be based on previous billings at the service address, and/or the equipment/appliances in service or to be put into service.  After four (4) months history is recorded, the initial Security Deposit may be adjusted to compensate for over or under estimations.  Such adjustment may consider seasonal factors.  After twelve (12) months of billing history is recorded, the initial Security Deposit may again be adjusted to compensate for over or under estimations.  The Company may require a subsequent Security Deposit from a Customer, including one whose initial Security Deposit was refunded/released.  A Security Deposit/guaranty may be held by the Company until refunded or released under the terms of rule 6.3.

**FLORIDA POWER & LIGHT COMPANY**

6.2  Deposit Interest.  The interest due will be paid once a year, ordinarily as a credit on regular bills, and on final bills when service is discontinued.  No interest will be paid if service is ordered disconnected for any cause within six months from the date of initial service.

6.21  Residential Deposits.  Simple interest at the rate of 6% per annum will be paid to residential Customers for cash deposits when held by the Company.

6.22  Nonresidential Deposits.  Simple interest at the rate of 6% per annum will be paid on cash deposits of nonresidential customers.  However, simple interest at the rate of 7% per annum will be paid on cash deposits of nonresidential Customers provided the Customer has had continuous service for a period of not less than 23 months, and has not in the preceding 12 months: a) made more than one late payment of the bill (after the expiration of 20 days from the date of mailing or delivery by the Company), b) paid with a check refused by a bank, c) been disconnected for nonpayment at any time, d) tampered with the electric meter, or e) used service in a fraudulent or unauthorized manner.

6.3 Refund of Cash Deposit/Release of Other Security or Guaranty.  After a residential Customer has established a prompt payment record and has had continuous service for a period of not less than 23 months, the Company will no longer require a Security Deposit or guaranty for that account, provided the Customer has not, in the preceding twelve (12) months: a) made more than one (1) late payment of the bill (after the expiration of 20 days from the date of mailing or delivery by the Company), b) paid with a check refused by a bank, c) been disconnected for non-payment, or, at any time d) tampered with the electric meter, or e) used service in a fraudulent or unauthorized manner.  When the Company no longer requires a Security Deposit or guaranty because the residential Customer meets these terms or because the Customer closes the service account and the Company has received final payment for all bills for service incurred at the account, any cash deposit held by the Company for that account will be refunded, and the obligors on any surety bond, irrevocable letter of credit or guaranty for that account will be released from their obligations to the Company.  Cash deposit receipts are not negotiable or transferable and the deposit is refundable only to the Customer whose name appears thereon.  Refunds of cash deposits may be conditioned by the Company upon a showing of proper identification by the person seeking the refund that the individual is the Customer whose name appears on the service account. The utility may elect to refund nonresidential deposits.

6.4 Transfer of Security Deposit/Guaranty.  A Customer moving from one service address to another may have the Security Deposit transferred from the former to the new address.  If the Security Deposit at the former service address is more or less than required by Rule 6.1 for the new address, the amount of the Security Deposit may be adjusted accordingly. Guaranties may not be transferred to a new service address; however, the guarantor may enter into a new guaranty contract (Tariff Sheet No. 9.400 or 9.410) for the new service address.

7 BILLING

7.1 Billing Periods.

7.11 Regular Bills.  Regular bills for service will be rendered monthly.  Bills are due when rendered and shall be considered as received by the Customer when delivered or mailed to the service address or some other place mutually agreed upon.

7.12 Prorated Bill.  The bill may be prorated if the billing period is for more or less than a full month.  Should service be disconnected within less than a month from date of connection, the amount billed will not be less than the regular monthly minimum bill.

7.13 Month.  As used in these Rules and Regulations, a month is an interval between successive regular meter reading dates, which interval may be 30 days, more or less.

**FLORIDA POWER & LIGHT COMPANY**

7.15 Summary Billing. A customer with ten (10) or more FPL accounts may request a single statement for the billing and payment of those accounts under Summary Billing. With Summary Billing, the Customer designates the accounts to be included and the cycle day each month when the Summary Bill is to be rendered. FPL will read each meter and calculate the billing amount for each account separately. The billing amount for each of the designated accounts will be totaled on the Summary Billing Statement, with each of the individual account bills attached as back-up. Summary Bills are due when rendered and Customers are subject to removal from the program if bills are not paid within ten (10) days from the date of mailing.

7.2 Non-Receipt of Bills. Non-receipt of bills by the Customer shall not release or diminish the obligation of the Customer with respect to payment thereof.

7.3 Evidence of Consumption. When service used is measured by meters, the Company's accounts thereof shall be accepted and received at all times, places and courts as prima facie evidence of the quantity of electricity used by the Customer unless it is established that the meter is not accurate within the limits specified by the Commission.

7.4 Application of Rate Schedules. Electric service will be measured by a single metering installation for each point of delivery. The Company will establish one point of delivery for each Customer and calculate the bill accordingly. Two or more points of delivery shall be considered as separate services and bills separately calculated for each point of delivery.

The Company may adjust the measured kilowatt-demand (kwd) of a Customer to compensate for registration of an abnormal demand level due to testing of electrically-operated equipment prior to general operation provided that the Customer contacts the Company in advance and schedules the testing at a mutually agreed upon time.

7.5 Optional Rate. Where a Customer is eligible to take service at a given location under one of two or more optional rate schedules, the Company will, on request, assist in the selection of the most advantageous rate on an annual basis. If the Customer applies in writing for another applicable schedule, the Company will bill on such elected schedule from and after the date of the next meter reading. However, a Customer having made such a change of rate may not make another change until an interval of twelve (12) months has elapsed.

7.6 Taxes and Charges. All of the Company's rates, including minimum and demand charges and service guarantees, are dependent upon Federal, State, County, Municipal, District, and other Governmental taxes, license fees or other impositions, and may be increased or a surcharge added if and when the cost per kilowatt hour, or per Customer, or per unit of demand or other applicable unit of charge, is increased because of an increase in any or all such taxes, license fees or other impositions. A franchise charge shall be added to the bills of all Florida Public Service Commission jurisdictional customers, as determined by the franchise agreements between Florida Power & Light Company and governmental authorities. The charge shall be computed as a percentage of the bill for energy including fuel delivered within the franchise area, excluding separately stated taxes and the franchise charge itself. This charge shall reflect the estimated amount of the annual franchise payment to that specified governmental authority in which the Customer's account is located, plus adjustment for the gross receipts tax and the regulatory assessment fee, and shall be corrected at least annually for any differences between the actual collections and actual payments.

7.7 Disconnection and Reconnection of Service.

7.71 Disconnection of Service. When discontinuing electric service, Customers should notify the Company at least one (1) business day prior to the requested discontinuation date. Customers are responsible for all electric service used on the premise until notice is received and the Company has had a reasonable time to discontinue service. A billing address should be provided to the Company for issuance of the final billing statement and/or deposit refund. When a Customer orders service discontinued, the Company may ask the Customer to open the main switch upon vacating the premises. This will allow the use of electric service until the time of departure and will insure that no energy is used or charges accrue after the Customer leaves. As convenient, a Company employee will visit the premises to read the meter.

7.72 Reconnection of Service. A Customer who reconnects service by closing the switch should give immediate notice thereof to the Company so that proper records may be maintained. Should the Customer neglect to give such notice, the Company's representative will note the reconnection and it will be recorded as of the date when the switch was closed. If this date cannot be readily determined, reconnection shall be recorded as of the preceding meter reading date.

7.8 Change of Occupancy. When a change of occupancy takes place on any premises supplied by the Company with electric service, notice shall be given to the Company not less than one (1) business day prior to the date of change. The outgoing party will be held responsible for all electric service used on such premises until such notice is received and the Company has had a reasonable time to discontinue service. However, if such notice has not been received by the Company prior to the date of change, the accepted application of the succeeding occupant for the electric service will automatically terminate the prior account.

7.9 Delinquent Bills. Bills are due when rendered and become delinquent if not paid within twenty (20) days from the mailing or delivery date. Thereafter, following five (5) working days' written notice, service may be discontinued and the deposit applied toward settlement of the bill. For purposes of this subsection, "working day" means any day on which the Company's business offices are open and the U.S. Mail is delivered.

Statutes & Constitution :View Statutes : flsenate.gov

**Select Year:** 2004 ▒    Go

# The 2004 Florida Statutes

Title XXVII                                        Chapter 366       View Entire Chapter
RAILROADS AND OTHER REGULATED UTILITIES   PUBLIC UTILITIES

**366.03  General duties of public utility.**--Each public utility shall furnish to each person applying therefor reasonably sufficient, adequate, and efficient service upon terms as required by the commission. No public utility shall be required to furnish electricity or gas for resale except that a public utility may be required to furnish gas for containerized resale. All rates and charges made, demanded, or received by any public utility for any service rendered, or to be rendered by it, and each rule and regulation of such public utility, shall be fair and reasonable. No public utility shall make or give any undue or unreasonable preference or advantage to any person or locality, or subject the same to any undue or unreasonable prejudice or disadvantage in any respect.

**History.**--s. 3, ch. 26545, 1951; s. 3, ch. 76-168; s. 1, ch. 77-457; s. 16, ch. 80-35; s. 2, ch. 81-318; ss. 1, 15, ch. 82-25; ss. 20, 22, ch. 89-292; s. 4, ch. 91-429.

Disclaimer: The information on this system is unverified. The journals or printed bills of the respective chambers should be consulted for official purposes. Copyright © 2000-2004 State of Florida.