UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

WINN-DIXIE STORES, INC., et al.,

                              Debtors.

Chapter 11

Case No. 05-11063

(Jointly Administered)

## AFFIDAVIT OF SERVICE

I, Kathleen M. Logan, hereby certify under penalty that:

1.    I am of legal age and I am not a party to this action.

2.    I am President of Logan & Company, Inc., located at 546 Valley Road, Upper Montclair, New Jersey, Noticing and Claims Agent for the above-captioned Debtors.

3.    On or about March 1, 2005 I caused copies of:

●    the Notice of Further Hearing on Emergency Motion Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 for Interim and Final Financing Orders (I) Authorizing Debtors to Obtain Post-Petition Financing and Utilize Cash Collateral, (II) Granting Adequate Protection to Pre-Petition Lenders, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)

●    Interim Order Pursuant to Sections 105, 361, 362, 362, 364(c) and 365(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, (III) Authorizing Debtors to Pay in Full All Claims of Debtors' Pre-Petition Secured Lenders, and (IV) Prescribing Form and Manner of Notice and Time for Final Hearing

Code:  R3

● the Notice of Further Hearing on Motion for an Order (A) Authorizing Return of Goods Pursuant to 11 U.S.C. Sections 546(g), (B) Establishing Procedures for Treatment of Reclamation Claims, and (C) Prohibiting Third Parties from Interfering with Delivery of Goods;

● the Order (a) Authorizing, on an Interim Basis, Return of Goods Pursuant to 11U.S.C. Sections 546(g), (B) Establishing, on an Interim Basis, Procedures for Treatment of Reclamation Claims, and (c) Prohibiting Third Parties from Interfering with Delivery of Goods

to be inserted in pre-addressed, pre-paid envelopes and delivered via Federal Express or US Express for overnight delivery to those persons on the Service List attached hereto as Exhibit A. Copy of the served Notices and Orders listed above is attached hereto as Exhibit B.

Dated: March 5, 2005

_____
Kathleen M. Logan

Code:  R3

**EXHIBIT A**

**Service List**

**DEBTOR:    WINN-DIXIE STORES, INC.**                                                                   **CASE:   05-11063 (RDD)**

CREDITOR ID: 279180-34
KLEMENT SAUSAGE COMPANY INC
C/O BRYAN M BECKER, ESQ
HOWARD SOLOCHEK & WEBER SC
324 EAST WISCONSIN AVE, STE 1100
MILWAUKEE WI 53202

CREDITOR ID: 279179-34
KLEMENT SAUSAGE COMPANY INC
C/O RONALD SCOTT KANIUK, ESQ
TAPLIN & ASSOCIATES
350 FIFTH AVE, STE 2418
NEW YORK NY 10118

CREDITOR ID: 279183-34
NEW YORK VALUE CLUB LTD
D/B/A BELCO DISTRIBUTORS INC
C/O AVRUM J ROSEN
38 NEW STREET
HUNTINGTON NY 11743

        **Total:   3**

**EXHIBIT B**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., et al.,** | : | **Case No. 05-11063 (RDD)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**NOTICE OF FURTHER HEARING ON EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§
105, 361, 362, 363 AND 364 FOR INTERIM AND FINAL FINANCING ORDERS (I)
AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING AND UTILIZE CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION LENDERS,
(III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING
PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

TO PARTIES IN INTEREST:

PLEASE TAKE NOTICE that a hearing has been scheduled for March 15, 2005, at 10:00 a.m. ET, before the Honorable Robert D. Drain, United States Bankruptcy Judge, in Room 610 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, to consider the above Debtors'[1] Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 for Interim and Final Financing Orders (I) Authorizing Debtors to Obtain Post-Petition

---

[1] The "Debtors" consist of Winn-Dixie Stores, Inc., Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

Financing and Utilize Cash Collateral, (II) Granting Adequate Protection to Pre-Petition Lenders, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) (the "Motion"), which has been granted on an interim basis pursuant to an interim order filed at Docket No. 55 (the "Interim Order").

PLEASE TAKE FURTHER NOTICE that any objections to the relief requested in the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court, shall set forth the basis for the objection and the specific grounds therefor, and shall be filed in accordance with the Clerk of this Court in accordance with General Order M-242 which order can be found at www.nysb.uscourts.gov, and shall further be delivered directly to Judge Drain's Chambers and served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Attention: D.J. Baker and Alexandra Margolis, Esq; (iii) King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia 30303, Attention: Sarah Robinson Borders, Esq.; (iv) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, Attention: Jonathan N. Helfat, Esq.; and (v) Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022-6069 Attention: Andrew Tenzer, Esq., so as to be actually received no later than **March 11, 2005, at 4:00 p.m., prevailing Eastern time**. Only objections made in writing and timely filed and received will be considered by the Bankruptcy Court at the hearing.

A conformed copy of the Interim Order is enclosed herewith. Copies of the Motion and of a proposed final order are available upon request to Luisa Bonachea, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York, 10036, Telephone: 212-735-4065, E-mail: lbonache@skadden.com.

Dated:  February 23, 2005
      New York, New York

                              /s/     D. J. Baker
                              D. J. Baker (DB 0085)
                              Sally McDonald Henry (SH 0839)
                              Alexandra Margolis (AM 4163)
                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP
                              Four Times Square
                              New York, New York 10036
                              Telephone: (212) 735-3000
                              Facsimile:   (917) 777-2150

                              - and –

                              Sarah Robinson Borders
                              Brian C. Walsh
                              KING & SPALDING LLP
                              191 Peachtree Street
                              Atlanta, Georgia 30303
                              Telephone: (404) 572-4600
                              Facsimile:  (404) 572-5100

                              PROPOSED ATTORNEYS FOR THE DEBTORS

-2-

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|   |   |   |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| Winn-Dixie Stores, Inc., et al. | ) ) ) ) ) | Case No. 05-11063 (RDD) (Jointly Administered) |
| Debtors. | ) |   |

**INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364(c) AND 364(d) OF THE BANKRUPTCY CODE AND RULES 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING ON A SUPERPRIORITY PRIMING LIEN BASIS AND MODIFYING THE AUTOMATIC STAY, (II) AUTHORIZING DEBTORS TO USE PRE-PETITION SECURED LENDERS' CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (III) AUTHORIZING DEBTORS TO PAY IN FULL ALL CLAIMS OF DEBTORS' PRE-PETITION SECURED LENDERS, AND (IV) PRESCRIBING FORM AND MANNER OF NOTICE AND TIME FOR FINAL HEARING**

THIS MATTER came before this Court on February 22, 2005, upon the Motion ("Motion") of Winn-Dixie Stores, Inc., Debtor and Debtor-in-Possession ("Winn-Dixie"), Winn-Dixie Supermarkets, Inc., Debtor and Debtor-in-Possession ("Supermarkets"), Winn-Dixie Montgomery, Inc., Debtor and Debtor-in-Possession ("Montgomery"), Winn-Dixie Procurement, Inc., Debtor and Debtor-in-Possession ("Procurement"), Winn-Dixie Raleigh, Inc., Debtor and Debtor-in-Possession ("Raleigh") and Dixie Stores, Inc., Debtor and Debtor-in-Possession ("Dixie", and together with Winn-Dixie, Supermarkets, Montgomery, Procurement and Raleigh, each individually a "Borrower", and collectively "Borrowers"), Astor Products, Inc., Debtor and Debtor-in-Possession ("Astor"), Crackin' Good, Inc., Debtor and Debtor-in-Possession ("Crackin'"), Deep South Products, Inc., Debtor and Debtor-in-Possession ("Deep South Products"), Dixie Packers, Inc., Debtor and Debtor-in-Possession ("Dixie Packers"), Economy Wholesale Distributors, Inc., Debtor and Debtor-in-Possession ("Economy"), Winn-Dixie Logistics, Inc., Debtor and Debtor-in-Possession ("Logistics"), Deep South Distributors, Inc., Debtor and Debtor-in-Possession ("Distributors"), Dixie Darling Bakers, Inc., Debtor and Debtor-in-Possession ("Bakers"), Dixie-Home Stores, Inc., Debtor and Debtor-in-Possession ("Home"), Dixie Spirits, Inc., Debtor and Debtor-in-Possession ("Spirits"), Foodway Stores, Inc., Debtor and Debtor-in-Possession ("Foodway"), Kwik Chek Supermarkets, Inc., Debtor and Debtor-in-Possession ("Kwik"), Sunbelt Products, Inc., Debtor and Debtor-in-Possession ("Sunbelt"), Sundown Sales, Inc., Debtor and Debtor-in-Possession ("Sundown"), Superior Food Company, Debtor and Debtor-in-Possession ("Superior"), Table Supply Food Stores Co., Inc., Debtor and Debtor-in-Possession ("Table Supply"), WD Brand Prestige Steaks, Inc., Debtor and Debtor-in-Possession ("WD Steaks"), Winn-Dixie Handyman, Inc., Debtor and Debtor-in-Possession ("Handyman", and together with Borrowers, Astor, Crackin', Deep South Products, Dixie Packers, Economy, Logistics, Distributors, Bakers, Home, Spirits, Foodway, Kwik, Sunbelt, Sundown, Superior, Table Supply, and WD Steaks, each individually a "Debtor" and collectively, the "Debtors"), filed on February 22, 2005, seeking, inter alia:

     a.    authority, pursuant to Sections 105, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), for Debtors to obtain post-petition secured loans, advances and other financial accommodations from Wachovia Bank National Association, as Administrative Agent and Collateral Agent for itself ("Agent") and the other financial institutions from time to time parties to the Credit Agreement (as hereinafter defined) (collectively, "Lenders"; and together with Agent, collectively referred to herein as "Lender"), all in accordance with the terms and conditions set forth in the Credit Agreement, dated as of the date hereof (as the same now exists or may hereafter be amended, modified, ratified, extended, renewed, restated or replaced, the "Credit Agreement", a copy of which is included in the Exhibit Supplement to the Motion (the "Exhibit Supplement") and is incorporated herein by reference), by and among Debtors and Lender, and the other Loan Documents (as defined in the Credit Agreement)[1], secured by senior (subject to certain liens and claims set forth below), perfected, valid, enforceable and non-avoidable security interests in and liens upon all of the Collateral (as hereinafter defined);

     b.    authority, pursuant to Sections 105, 364(d)(1) and 364(d)(2) of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, for Debtors to grant to Lender, pending the release and termination and/or assignment of the Pre-Petition Lender Junior Liens pursuant to a final, non-appealable Final Financing Order (as hereinafter defined), priming liens on and security interests in (subject to certain liens and claims as set forth in paragraph 8 of this Interim Order) all Pre-Petition Lender Collateral (as hereinafter defined) and in any other assets or properties of the Debtors and their estates, senior and superior in all respects to any and all liens and security interests of the Pre-Petition Lender (as hereinafter defined) in the Pre-Petition Lender Collateral and such other assets and properties (the "Priming Liens"), and in connection with such Priming Liens, provide adequate protection to Pre-Petition Lender by preserving and continuing, on a junior and subordinate basis, its liens on and security interests in the Collateral to secure any Contingent Pre-Petition Lender Debt (as hereinafter defined) in accordance with the terms and conditions contained in this Interim Order (as hereinafter defined);

---

[1]    Defined terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Credit Agreement.

1

973946-New York Server 7A - MSW

c.    authority for Debtors to enter into and comply in all respects with the Credit Agreement and all other Loan Documents, and approval of all of the terms and conditions of the Credit Agreement and all other Loan Documents;

d.    the granting to Lender superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Obligations (as defined in the Credit Agreement);

e.    authority, pursuant to Sections 361 and 363 of the Bankruptcy Code, for the Debtors to use cash collateral of the Pre-Petition Lender pursuant to the terms and conditions set forth herein;

f.    authority, upon the entry of the Interim Order (as hereinafter defined), to immediately repay in full the Pre-Petition Lender Debt (as hereinafter defined) owing by Debtors to Wachovia Bank National Association, in its capacity as Administrative Agent and Collateral Agent for itself ("Pre-Petition Lender Agent") and certain other financial institutions that are parties from time to time to the Pre-Petition Credit Agreement (as hereinafter defined) (the "Pre-Petition Lenders", and together with the Pre-Petition Lender Agent, collectively referred to herein as the "Pre-Petition Lender"), and the simultaneous subordination of the Pre-Petition Lender's liens, claims and encumbrances and the agreement of Pre-Petition Lender to release and terminate, subject to paragraph 6 of this Interim Order, such liens, claims and encumbrances on the date that the Final Financing Order becomes final and non-appealable or earlier as Pre-Petition Lender may agree, all in accordance with the terms and conditions contained in this Interim Order;

g.    a preliminary hearing on the Motion to consider entry of an order pursuant to Bankruptcy Rule 4001 (this "Interim Order") authorizing the Borrowers, inter alia, to borrow up to an aggregate amount of $600,000,000 (which amount is inclusive of the repayment in full of the Pre-Petition Lender Debt) in Loans and Letters of Credit (as each term is defined in the Credit Agreement) pursuant to the terms and conditions set forth in the Credit Agreement and the Loan Documents during the period commencing upon the entry of this Interim Order and ending upon the entry of a Final Financing Order (as hereinafter defined); and

h.    the setting of the date of Final Hearing on the Motion.

Due and appropriate notice of the Motion, the relief requested therein, the material terms of this Interim Order and the Interim Hearing (as defined below) has been served by the Debtors, whether by telecopy, e-mail, overnight courier or hand delivery, on the following parties: (1) the Office of the United States Trustee; (2) Agent, (3) Pre-Petition Lender Agent; (4) the Internal Revenue Service ("IRS"); (5) Wilmington Trust Company, in its capacity as Trustee for Winn-Dixie's 8⅞% Senior Unsecured Notes due 2008 issued for gross cash proceeds of $300,000,000 on March 29, 2001; (6) Debtors' 50 largest unsecured creditors on a consolidated basis; (7) those other creditors known to the Debtors who may have liens against or interests in any of the Debtors' assets and properties, which are more particularly described on Exhibit "A" attached to the Motion (all parties referred to in the foregoing clauses (1) through (7) are collectively referred to as the "Interim Noticed Parties").

The interim hearing on the Motion was held by this Court on February 22, 2005 (the "Interim Hearing").

Upon the record made by the Debtors at the Interim Hearing, including the Motion and the filings and pleadings in the Debtors' Chapter 11 cases, and good and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition.  On February 21, 2005 (the "Petition Date"), each of the Debtors filed voluntary petitions under Chapter 11, Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Each Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Code.

B.    Jurisdiction and Venue.  Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.    Notice.  Sufficient and adequate notice of this Interim Order has been provided based upon the notice sent to the Interim Noticed Parties, the consent to the Motion as approved by this Interim Order by Lender and the Pre-Petition Lender, and no other party herein has filed an objection to the Motion, pursuant to Bankruptcy Rules 4001(c) and (d) and 9014 and Section 102(1) of the Bankruptcy Code as required by Sections 364(c) and 364(d) of the Bankruptcy Code, and no further notice of, or hearing on, the Motion or this Interim Order is necessary or required.

D.    Debtors' and Pre-Petition Lender's Acknowledgements and Agreements.  Without prejudice to the rights of any other party-in-interest in the Debtors' Chapter 11 cases (but subject to the limitations with respect to such rights contained in paragraph 15(e) of this Interim Order), the Debtors and the Pre-Petition Lender admit, stipulate, acknowledge and agree that:

(i) Pre-Petition Financing Arrangements.  Prior to the commencement of the Debtors' Chapter 11 cases, Pre-Petition Lender made loans and advances and agreed to provide other credit accommodations to the Debtors pursuant to the terms and conditions set forth in various agreements, documents and instruments, including, without limitation, the Second Amended and Restated Credit Agreement, dated as of June

2

29, 2004, by and among Borrowers and the Pre-Petition Lender (as the same has been amended, modified, restated, renewed, replaced and/or supplemented from time to time through to the Petition Date, the "Pre-Petition Credit Agreement"), which is incorporated herein by reference; other credit, guarantee and security agreements executed and/or delivered by Debtors in favor of Pre-Petition Lender (copies of which are annexed to the Exhibit Supplement and incorporated herein by reference); Uniform Commercial Code ("UCC") filings; and all other agreements, documents and instruments at any time executed and/or delivered in connection with or related to the Pre-Petition Credit Agreement (as all of the same have been amended, modified, restated, renewed, replaced and/or supplemented from time to time through to the Petition Date, the "Pre-Petition Loan Documents").

(ii)    *Pre-Petition Lender Debt.* The Debtors are indebted to the Pre-Petition Lender in respect of all outstanding Obligations (as defined in the Pre-Petition Credit Agreement) as of February 18, 2005 in the aggregate principal amount of not less than $427,005,000 (the "Pre-Petition Lender Debt"), consisting of, among other things, (i) Loans (as defined in the Pre-Petition Credit Agreement) made pursuant to the Pre-Petition Loan Documents in the aggregate principal amount of not less than $265,000,000, plus all interest, fees, costs and expenses (including, without limitation, all attorneys' fees and legal expenses of Pre-Petition Lender) and all charges accrued and accruing thereon and/or chargeable with respect thereto, and (ii) Reimbursement Obligations (as defined in the Pre-Petition Credit Agreement) in respect of Letters of Credit in an aggregate amount of not less than $162,005,000, plus all interest, fees, costs, expenses (including, without limitation, all attorneys' fees and legal expenses of Pre-Petition Lender) and all charges accrued and accruing thereon or chargeable with respect thereto. The Pre-Petition Lender Debt is unconditionally owing by Debtors to Pre-Petition Lender, without offset, defense or counterclaim of any kind, nature and description whatsoever.

(iii)    *Pre-Petition Lender Collateral.* As of the Petition Date, the Pre-Petition Lender Debt is fully secured pursuant to the Pre-Petition Loan Documents by perfected, valid, binding and non-avoidable first priority security interests and liens granted by Debtors to or for the benefit of the Pre-Petition Lender upon all of the Collateral (as defined in the Pre-Petition Credit Agreement) existing as of the time immediately prior to the filing of the petitions for relief herein, and the post-petition proceeds and products thereof (collectively, together with any other property of, among other things, each Debtors' estate in which a security interest or lien has been granted to or for the benefit of Pre-Petition Lender immediately prior to the filing of the petitions for relief herein, the "Pre-Petition Lender Collateral").

(iv)    *Repayment of Pre-Petition Lender Debt.* A portion of Debtors' borrowings from Lender under the Credit Agreement, the other Loan Documents and this Interim Order will be used to repay the Pre-Petition Lender Debt owing to Pre-Petition Lender in accordance with the terms and conditions set forth in this Interim Order.

(v)    *Pre-Petition Lender's Consent to Priming Liens.* Pre-Petition Lender has consented and agreed that, subject to the terms and conditions contained herein, any and all pre-petition or post-petition liens and security interests (including, without limitation, any adequate protection replacement liens at any time granted to Pre-Petition Lender by this Court) that the Pre-Petition Lender has or may have in the Pre-Petition Lender Collateral or any other assets and properties of the Debtors and their estates shall (a) only secure any Pre-Petition Lender Debt that is (1) at any time repaid with the proceeds of the loans and advances made by the Lender (including, without limitation, at closing of the post-petition credit facility in accordance with this Interim Order) prior to the Final Financing Order becoming final and non-appealable and (2) subsequently reinstated after the full payment thereof because such payment (or any portion thereof) is required to be returned or repaid to Debtors or Lender, other than as a result of a Disgorgement Action (as defined in paragraph 15(e) of this Interim Order); and (b) shall be junior and subordinate in all respects to Lender's liens on and security interests in the Collateral (including, without limitation, Lender's Priming Liens) granted under this Interim Order and the Loan Documents (such junior liens and security interests of the Pre-Petition Lender are hereinafter referred to as the "Pre-Petition Lender Junior Liens"). Such reinstated Pre-Petition Lender Debt described in clauses (a)(1) and (2) above in this paragraph is hereinafter referred to as the "Contingent Pre-Petition Lender Debt" and shall be junior and subordinate in all respects to the Obligations (as defined in the Credit Agreement). Pre-Petition Lender has further agreed that, (a) until such time as all of the Obligations are indefeasibly paid in full in cash in accordance with the Loan Documents and this Interim Order, Pre-Petition Lender shall have no right to seek or exercise any enforcement rights or remedies in connection with the Contingent Pre-Petition Lender Debt or the Pre-Petition Lender Junior Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as hereinafter defined); (b) the Pre-Petition Lender shall be deemed to have consented to any sale or disposition of all or any portion of the Collateral approved by, arranged for or by Agent and shall terminate and release upon any such sale or disposition all of its Pre-Petition Lender Junior Liens on and security interests in such Collateral; (c) Pre-Petition Lender shall deliver or cause to be delivered, at Debtors' costs and expense (for which Pre-Petition Lender shall be reimbursed upon submission to Debtors of invoices or billing statements), any termination statements, releases and/or assignments (to the extent provided for in paragraph 6 herein) in favor of Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of the Pre-Petition Lender Junior Liens on any portion of the Collateral subject to any sale or disposition approved or arranged for by Agent; and (d) upon the Final Financing Order (as defined in the Credit Agreement) becoming a final and non-appealable order (and subject to the right of Pre-Petition Agent to consent to any material modifications contained in the Final Financing Order that, after giving effect to any such modification, adversely affect the Pre-Petition Lender's rights contained in paragraphs 9(a), 9(b), 10 and 15(e) of this Interim Order) all Pre-Petition Lender Junior Liens in the Collateral shall, subject to paragraph 6 of this Interim Order, terminate and be released (automatically and without further action of the parties), and Pre-Petition Lender shall execute and deliver such agreements to evidence and effectuate such termination, release or assignments as Agent may request and Agent shall be authorized to file on behalf of Pre-Petition Lender such UCC termination statements or such other filings as may be applicable to the extent required such authorization is required under the Uniform Commercial Code of the applicable jurisdiction.

E.    Findings Regarding Post-Petition Financing

(i)    *Need for Post-Petition Financing.* The Debtors represent that without the financing proposed by the Motion, the Debtors will not have the funds necessary to pay post-petition payroll, payroll taxes, trade vendors, suppliers, overhead and other expenses necessary for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and properties. The

3

Debtors have requested that, pursuant to the Credit Agreement, the other Loan Documents and this Interim Order, Lender make loans and advances and provide other financial accommodations to the Debtors to be used by the Debtors to: (A) repay the Pre-Petition Lender Debt, and (B) fund the Debtors' general operating, working capital and other administrative costs of their Chapter 11 cases. The ability of the Debtors to continue their businesses and remain viable entities and thereafter reorganize under Chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing from Lender. Lender is willing to make such loans and advances and provide such other financial accommodations on a secured basis as more particularly described herein pursuant to the terms and conditions of the Credit Agreement, all other Loan Documents, including, without limitation, the Security Agreement, dated as of the date hereof, by and among the Debtors and Agent ("Security Agreement", a copy of which is included in the Exhibit Supplement and is incorporated herein by reference) and in accordance with this Interim Order. Accordingly, the relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets and properties and is in the best interests of the Debtors, their estates and creditors.

(ii)    *No Credit Available on More Favorable Terms.* The Debtors represent that they are unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code or pursuant to Sections 364(a), (b) or (c)(1) of the Bankruptcy Code or secured credit pursuant to Sections 364(c)(2) and (3) only. Additionally, the Debtors were unable to procure the necessary financing on more favorable terms than those offered by Lender pursuant to the Credit Agreement, the other Loan Documents and this Interim Order.

(iii)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The Debtors represent that the terms of the Credit Agreement and the other Loan Documents among the Debtors and Lender, pursuant to which the post-petition loans, advances, letters of credit and other credit and financial accommodations will be made or provided to Borrowers by Lender have been negotiated at arms' length and in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The Debtors further represent that Lender is extending financing to the Borrowers in good faith and Lender is entitled to the benefits of the provisions of Section 364(e) of the Bankruptcy Code.

(iv)    *Good Cause. Immediate Entry.* The Debtors represent that the relief requested by the Motion pursuant to the terms of the Credit Agreement, the other Loan Documents and this Interim Order is necessary to avoid immediate and irreparable harm to Debtors' estates. Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Interim Order. No party appearing in the Debtors' Chapter 11 cases has filed or made an objection to the relief sought in the Motion and the entry of this Interim Order, and to the extent any objections were made (and not withdrawn prior to the entry of this Interim Order) such objections are hereby overruled.

F.    <u>Committee.</u> As of the date hereof, the Office of the United States Trustee has not appointed an official committee of unsecured creditors (the "Committee") in accordance with section 1102 of the Bankruptcy Code.

Based upon the foregoing, and after due consideration and good cause appearing therefor:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1.    <u>Motion Granted.</u> The Motion is granted and approved to the extent provided below.

2.    <u>Authorization to Borrow on an Interim Basis.</u> Borrowers are hereby authorized and empowered to immediately borrow and obtain Loans, Letters of Credit (as each term is defined in the Credit Agreement) and other financial and credit accommodations from Lender pursuant to the terms and conditions of the Credit Agreement, the other Loan Documents and this Interim Order, in such amount or amounts as may be made available to Borrowers by Lender, in accordance with the terms and conditions set forth in the Credit Agreement, the other Loan Documents and this Interim Order; provided, however, the aggregate amount of all such Loans, Letters of Credit and other financial and credit accommodations provided to Borrowers by Lender in accordance with the Loan Documents and this Interim Order during the period commencing on the date hereof and ending upon entry of the Final Financing Order shall not exceed the aggregate principal amount of $600,000,000 outstanding at any one time, which amount is inclusive of the funds necessary to repay the Pre-Petition Lender Debt in accordance with this Interim Order.

3.    <u>Use of Loan and Letter of Credit Proceeds.</u> Borrowers shall use the proceeds of the Loans and Letters of Credit made or arranged for by Lender to Borrowers pursuant to the Credit Agreement, the other Loan Documents and this Interim Order, for (a) the repayment of the Pre-Petition Lender Debt owed to the Pre-Petition Lender as of the date hereof, subject to the terms and conditions contained in this Interim Order; (b) the payment of employee salaries, payroll, taxes, the purchase of goods, materials and other general corporate and working capital purposes in accordance with the Loan Documents and this Interim Order, including amounts paid for such purposes which may constitute administrative expense claims under the Bankruptcy Code attributable to the operation of Debtors' businesses as authorized by order of the Court and in accordance with the Loan Documents; (c) the fees of the U.S. Trustee, the fees of the Clerk of this Court, the allowed fees and expenses of attorneys, accountants and other professionals retained under Section 327 or 1103(a) of the Bankruptcy Code by the Debtors and the Committee; and (d) all present and future costs and expenses, including all reasonable attorneys' fees and legal expenses (provided, that, the Debtors shall provide notice of such attorneys' fees and legal expenses to the Office of the United States Trustee and counsel for the Committee (if any)), paid or incurred by Lender at any time in connection with the financing transactions as authorized and provided for in this Interim Order and the Loan Documents, all of which unpaid fees, commissions, costs and expenses shall be added to, and are included as part of, the principal amount of the Obligations, secured by the Collateral and afforded all of the rights, priorities and protections afforded to Lender in respect of the Obligations under this Interim Order and the Loan Documents.

4

4.    Authorization to Enter Into and Comply with Loan Documents. Debtors are authorized and directed to execute, deliver, perform and comply with all of the terms and covenants of the Credit Agreement and the other Loan Documents, each of which constitute valid, binding, enforceable and non-avoidable obligations of the Debtors for all purposes during the Debtors' Chapter 11 cases, any subsequently converted case(s) of any Debtor under Chapter 7 of the Bankruptcy Code or after the dismissal or reorganization of any of the Debtors' bankruptcy case(s). Debtors are hereby authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements in addition to the above Loan Documents, as Lender may reasonably require as evidence of and for the protection of the Obligations and the Collateral or which may be otherwise deemed necessary by Lender to effectuate the terms and conditions of this Interim Order and the Loan Documents, each of such additional documents, instruments, and agreements being included in the definition of "Loan Documents" contained herein.

5.    Approval of Loan Documents. The terms, conditions and covenants of the Credit Agreement and the other Loan Documents shall be sufficient and conclusive evidence of the borrowing and financing arrangements among Debtors and Lender for all purposes, including, without limitation, the payment of all principal, interest, fees (including, without limitation, unused line fees, servicing fees, letter of credit fees, closing fees, syndication fees, early termination fees, appraisal fees), Lender's legal expenses, and other fees and expenses, as more fully set forth in the Credit Agreement and the other Loan Documents.

6.    Lien Grant. To secure the prompt payment and performance of any and all Obligations under the Credit Agreement, the other Loan Documents and/or this Interim Order, Lender shall have, and is hereby granted in accordance with the terms and conditions of the Loan Documents, effective on and after the Petition Date, valid, perfected, enforceable and non-avoidable first priority security interests in and liens, senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, including, without limitation, the Priming Liens (but subject to the liens and claims set forth in paragraph 8 of this Interim Order), upon all assets and properties of the Debtors and their estates (excluding any claims and causes of action brought under Chapter 5 of the Bankruptcy Code and the proceeds thereof) and including, without limitation, the following (the "Collateral", as such term is more fully defined in the Security Agreement[2]): contract rights, general intangibles (including, without limitation, all trademarks, patents and other intellectual property, tax refunds, choses in action, franchises, licenses and other rights and agreements), accounts, cash or cash equivalents, deposit accounts, letters of credit, letter-of-credit rights, supporting obligations, chattel paper, documents, instruments (including any notes receivable and stock in subsidiaries and affiliates and all interests in any limited liability company or other entity, except as to the stock of controlled foreign corporations as determined under the Internal Revenue Code for the stock of such corporations in excess of sixty-five percent (65%) thereof to the extent that it would result in any material additional US tax liability), investment property, inventory, equipment, fixtures and other goods, real property (owned and leased) and all products and proceeds of any of the foregoing. In no event shall (i) any lien or security interest granted to Lender pursuant to the Loan Documents or this Interim Order be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) any person or entity who pays (or through the extension of credit to any Debtor, causes to be paid) any of the Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon, Lender by the terms of the Loan Documents or this Interim Order, until such time as all of the Obligations are indefeasibly paid in full in cash in accordance with the Loan Documents and this Interim Order; and (iii) Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. Upon the Final Financing Order becoming final and non-appealable, all pre-petition liens and security interests of the Pre-Petition Lender in the Pre-Petition Collateral shall be deemed to be assigned (and not terminated and released to the extent so assigned) to Lender as additional collateral security for all Obligations, and such assignment shall be in addition to, and shall not limit, prejudice or impair in any way any of the claims or liens and security interests of Lender in the Collateral granted pursuant to the Loan Documents and this Interim Order. In no event shall Lender have any liability in connection with such assignment or the pre-petition liens so assigned (including, without limitation, any liability relating to a Pre-Petition Lien/Claim Challenge (as defined in paragraph 15(e) herein) or a Disgorgement Action), and in no event shall the Pre-Petition Lender continue to have any rights or benefits in connection with such liens so assigned. Neither this Interim Order nor the liens and claims granted hereby are intended to, or shall, prime or in any way affect the valid set off and recoupment rights of any party in interest.

7.    Lien Perfection. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the liens and security interests in and upon the property of each Debtor's estate granted to Lender, as set forth herein and in the Loan Documents, without the necessity of filing, recording or serving any financing statements, mortgages, deeds of trust or other agreements, documents or instruments which may otherwise be required under federal or state law in any jurisdiction (collectively, "Lien Recording Documents") or the taking of any other action to validate or perfect the security interests and liens granted to Lender in this Interim Order and the Loan Documents. Such security interests and liens granted to Lender shall be prior and senior to all security interests, liens, claims, and encumbrances of all other creditors in and to such property, subject to paragraph 8 of this Interim Order. If Lender shall, in its discretion, elect for any reason to file any such Lien Recording Documents with respect to such security interests and liens, Debtors are authorized and directed to execute, or cause to be executed, all such Lien Recording Documents upon Lender's request and the filing, recording or service thereof (as the case may be) of such Lien Recording Documents shall be deemed to have been made at the time of and on the Petition Date. Lender may, in its discretion, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Interim Order. Agent shall, in addition to the rights granted to it under the Loan Documents, be deemed the successor-in-interest to the Pre-Petition Agent with respect to all Pre-Petition Collateral access agreements and other agreements with third parties granting rights in, or waiving claims against, any Pre-Petition Collateral, including, without limitation, each collateral access agreement duly executed and delivered by any landlord of the Borrowers or any of their Subsidiaries (as defined in the Credit Agreement).

---

[2]    Capitalized terms used in paragraph 6 of this Interim Order, unless otherwise defined in this Interim Order, shall have the meanings ascribed to such terms in the Security Agreement. To the extent that there are any inconsistencies or conflicts between the description of Collateral contained in this Interim Order and the description of Collateral contained in the Security Agreement, the description of Collateral as set forth in the Security Agreement shall control and govern in all respects.

5

8.    Permitted Liens and Claims. Except as otherwise provided pursuant to the provisions of this Interim Order, the security interests and liens of Lender in and upon the Collateral shall not have priority over (i) the liens upon Debtors' property that are permitted in Section 7.2.3 of the Credit Agreement to the extent that such liens are expressly entitled to priority over Lender's liens in the Collateral as provided for in such Section 7.2.3, (ii) security interests and liens that are (A) valid, perfected, non-avoidable and in existence immediately prior to the Petition Date (other than Pre-Petition Lender's liens in the Pre-Petition Lender Collateral securing the Pre-Petition Lender Debt and/or the Pre-Petition Lender Junior Liens securing the Contingent Pre-Petition Lender Debt) to the that extent such liens and security interest have priority over Lender's liens under applicable law, and (B) valid, non-avoidable and in existence immediately prior to the Petition Date but are perfected subsequent to the Petition Date pursuant to Bankruptcy Code Section 546(b) to the extent that such liens and security interest have priority over Lender's liens under applicable law; and (iii) the Carve Out Expenses, including, without limitation, the Professional Fee Carve-Out and as to the extent set forth in this Interim Order.  The foregoing is without prejudice to the rights of Debtors. the Committee (if any), or any other party in interest, including, Lender, to object to the validity, extent, priority, enforceability or allowance of any such liens and security interests referenced in clauses (i) and (ii) above in this paragraph.

9.    Repayment and Termination of Pre-Petition Lender Debt: Adequate Protection.

(a)    Immediately following the entry of this Interim Order, as adequate protection for the Priming Liens granted to Lender in accordance with the terms and conditions contained in this Interim Order, (i) Debtor shall use a portion of the proceeds from the Loans in accordance with the Loan Documents and this Interim Order to repay in full the Pre-Petition Lender Debt and to provide Pre-Petition Lender with cash collateral to secure the Continuing Pre-Petition Lender Debt (as defined below) in the amount equal to $1,000,000 (the "Pre-Petition Lender Cash Collateral") in accordance with the terms and conditions contained herein, and (ii) Pre-Petition Lender shall have, subject to the terms and conditions set forth below, Pre-Petition Lender Junior Liens to secure any Contingent Pre-Petition Lender Debt.  The adequate protection granted to Pre-Petition Lender under this paragraph 9 is expressly conditioned upon the following: (i) the Contingent Pre-Petition Lender Debt shall be junior and subordinate in right of payment to all Obligations; (ii) the Pre-Petition Lender Junior Liens shall be junior and subordinate in all respects to Lender's liens and security interests (including, without limitation, Lender's Priming Liens) upon and in the Collateral; (iii) until such time as all of the Obligations are indefeasibly paid in full in cash in accordance with the Loan Documents and this Interim Order, Pre-Petition Lender shall have no right to seek or exercise any enforcement rights or remedies in connection with the Contingent Pre-Petition Lender Debt or the Pre-Petition Lender Junior Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as hereinafter defined); (iv) the Pre-Petition Lender shall be deemed to have consented to any sale or disposition of Collateral approved, arranged for or by Agent, and shall terminate and release upon any such sale or disposition all of its liens on and security interests in such Collateral; (v) Pre-Petition Lender shall deliver or cause to be delivered. at Debtors' costs and expense (for which Pre-Petition Lender shall be reimbursed upon submission to Debtors of invoices or billing statements), any termination statements, releases or other documents necessary to effectuate and/or evidence the release and termination of Pre-Petition Lender's liens on or security interests in any portion of the Collateral subject to any sale or disposition approved or arranged for by Agent; and (vi) upon the Final Financing Order becoming a final and non-appealable order all Pre-Petition Lender Junior Liens in the Collateral shall, subject to paragraph 6 of this Interim Order, terminate and be released (automatically and without further action of the parties), and Pre-Petition Lender shall execute and deliver such agreements to evidence and effectuate such termination and release as Agent may request and Agent shall be authorized to file on behalf of Pre-Petition Lender such UCC termination statements or other such other filings as may be applicable to the extent required such authorization is required under the Uniform Commercial Code of the applicable jurisdiction.  The pre-petition liens held by the Pre-Petition Lender in the Pre-Petition Collateral will not be assigned to Lender except pursuant to the Final Financing Order upon its becoming final and non-appealable.  The rights of parties in interest with respect to the propriety of any such assignment are expressly reserved.  The Pre-Petition Lender Junior Liens shall remain in effect solely during the interim period prior to the Final Financing Order becoming final and non-appealable, and shall be assigned or released upon the Final Financing Order becoming final and non-appealable; provided, however, that the rights of parties in interest with respect to the propriety of any such assignment are expressly reserved.  Nothing contained in this paragraph 9(a) shall impair the rights of Pre-Petition Lender granted under this Interim Order.

(b)    In addition to the repayment of the Pre-Petition Lender Debt and the grant to Pre-Petition Lender of the Pre-Petition Lender Junior Liens, subject to the terms and conditions set forth herein, as collateral security for the prompt performance, observance and payment in full of any Obligations (as defined in the Pre-Petition Credit Agreement) that arise after the repayment of the Pre-Petition Lender Debt in accordance with this Interim Order as a result of (i) any post-petition expenses or indebtedness reasonably incurred by the Pre-Petition Lender in connection with the repayment of the Pre-Petition Lender Debt and the termination and/or assignment of the Pre-Petition Lender Junior Liens in accordance with the terms and conditions contained herein, and (ii) Pre-Petition Lender's incurrence of reasonable professional fees and reasonable legal expenses in connection with any pending or threatened action against Pre-Petition Lender in accordance with paragraph 15(e) of this Interim Order, other than as a result of Lender's liens or claims of being invalidated by a Disgorgement Action. Such indebtedness and obligations described in clauses (i) and (ii) of this paragraph are collectively referred to herein as the "Continuing Pre-Petition Lender Debt". Pre-Petition Lender shall continue to have a senior security interest in and right to set off against the Pre-Petition Lender Cash Collateral. Pre-Petition Lender shall release and remit back to the Debtors the Pre-Petition Lender Cash Collateral, less any amounts thereof previously applied by Pre-Petition Lender to Continuing Pre-Petition Lender Debt, upon the earlier of (1) the expiration of the time in which an adversary proceeding may be commenced against Pre-Petition Lender in accordance with paragraph 15(e) of the Interim Financing Order, or (2) the written agreement among Debtors, Pre-Petition Lender and Lender.

10.    Use of Pre-Petition Lender's Cash Collateral. During the period commencing immediately after the filing of the Debtors' Chapter 11 petitions and terminating upon the date at which the Final Financing Order becomes final and non-appealable (the "Cash Collateral Use Period"), the Debtors shall be authorized to use, subject to the terms contained in this paragraph, the Pre-Petition Lender's cash collateral (as defined in Section 363(a) of the Bankruptcy Code). Pre-Petition Lender hereby reserves the right to seek, as adequate protection against the diminution in the value of the Pre-Petition Lender Junior Liens occasioned by the imposition of the automatic stay and the Debtors' use of Pre-Petition Lender's cash collateral in accordance with sections 361, 362 and 363 of the Bankruptcy Code, a Section 507(b) claim in an amount equal to

6

any diminution in the value of the Pre-Petition Lender Junior Liens; provided, however, any Section 507(b) claim granted to Pre-Petition Lender pursuant to this paragraph or otherwise (i) shall terminate and be released upon the Final Financing Order becoming a final and non-appealable order; and (ii) shall be junior and subordinate in right of payment to all Obligations.

        11.      <u>Intentionally omitted</u>.

        12.      <u>Intentionally omitted</u>.

        13.      <u>Modification of Automatic Stay</u>. Except as otherwise specifically provided with respect to Lender's rights and remedies after the occurrence of an Event of Default under the terms of the Loan Documents and subject to the provisions of paragraph 18 below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit Lender to implement the provisions of the Loan Documents and this Interim Order.

        14.      <u>Superpriority Claim</u>. For all Obligations now existing or hereafter arising pursuant to the Credit Agreement, the other Loan Documents and/or this Interim Order, Lender is hereby granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, which claim shall have priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors, now in existence or hereafter incurred by any of the Debtors and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), and/or 364(c)(1) of the Bankruptcy Code (the "Superpriority Claim"), provided, however, that the Superpriority Claim shall be subordinate to (i) the Carve-Out Expenses as and to the extent set forth in this Interim Order.

        15.      (a)      <u>Professional Fee Carve-Out and Other Carve-Out</u>. Subject to the terms and conditions contained in this paragraph 15, Lender's Superpriority Claim and security interests in and liens upon the Collateral shall be subordinate only to (collectively, the "Carve-Out Expenses"):

        (i) the fees and expenses of the Clerk of this Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a);

        (ii) the allowed reasonable fees and expenses of any Chapter 7 Trustee appointed for any Debtor's Chapter 7 case; provided, that such allowed fees and expenses shall not exceed $50,000 in the aggregate for purposes of constituting a part of the Carve Out Expenses; and

        (iii) on and after the Default Point (as defined below), the allowed unpaid and outstanding reasonable fees and expenses approved by order of the Court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the "Allowed Professional Fees") by attorneys, accountants and other professionals retained under section 327 or 1103(a) of the Bankruptcy Code by the Debtors and the Committee (collectively, the "Professionals") in an aggregate amount not to exceed $12,000,000 (the "Professional Fee Carve-Out"). As used herein, "Default Point" means the date when both (x) an Event of Default (as defined in the Credit Agreement or this Interim Order) shall have occurred, and (y) the Lender has ceased making to Borrowers advances or other extensions of credit in accordance with the terms of the Credit Agreement and the other Loan Documents.

        (b)      <u>Payment of Professional Fee Carve-Out</u>. Any payment or reimbursement made either directly by or on behalf of Lender or by or on behalf of the Debtors on or after the Default Point in respect of any Allowed Professional Fees shall, in either case, permanently reduce the Professional Fee Carve-Out on a dollar-for-dollar basis. Any payments made to Professionals in respect of Allowed Professional Fees at any time prior to the Default Point shall not reduce the Professional Fee Carve-Out. Any payments made at any time in respect of any Carve Out Expenses other than Allowed Professional Fees subject to the Professional Fee Carve-Out shall not reduce the Professional Fee Carve-Out. Lender's obligation to fund or otherwise pay Carve Out Expenses, including Allowed Professional Fees subject to the Professional Fee Carve-Out, shall be added to and made a part of the Obligations, secured by the Collateral, and Lender shall be entitled to all of the rights, claims, liens, priorities and protections under this Interim Order, the Loan Documents, the Bankruptcy Code, and/or applicable law in connection therewith. Payment of any obligations relating to the Professional Fee Carve-Out or other Carve Out Expenses, whether by or on behalf of Lender, shall not and shall not be deemed to reduce the Obligations and shall not and shall not be deemed to subordinate any of Lender's liens and security interests in the Collateral or its Superpriority Claim to any junior pre-petition or post-petition lien, interest, or claim in favor of any other party. Except as otherwise provided herein with respect to the Professional Fee Carve-Out and the other Carve Out Expenses, Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Debtors' cases under any chapter of the Bankruptcy Code, and nothing in this Interim Order or otherwise shall be construed to obligate Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

        (c)      <u>Professional Fee Carve-Out Reserve</u>. Without limiting any of Lender's rights under the Loan Documents or this Interim Order, Lender shall implement a Reserve (as defined in the Credit Agreement) in respect of the Professional Fee Carve-Out and the other Carve-Out Expenses in accordance with the terms and conditions of the Credit Agreement. Such Reserve shall reduce the amount of Loans and Letters of Credit otherwise available to Borrowers under the Credit Agreement.

        (d)      <u>Excluded Professional Fees</u>. Notwithstanding anything to the contrary in this Interim Order, the Professional Fee Carve-Out shall not be used to pay any Allowed Professional Fees or any other claims incurred in connection with any of the following: (i) an

7

assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief: (A) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Lender's liens on and security interests in the Collateral, (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Obligations or Lender's liens on and security interests in the Collateral, or (C) preventing, hindering, or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral, (ii) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Lender, (iii) a request for authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from Lender without the prior written consent of Lender, (iv) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, or (v) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Lender, or which is contrary, in a manner that is material and adverse to Lender to any term or condition set forth in or acknowledged by the Loan Documents or this Interim Order. Nothing contained herein shall limit or prevent the Professional Fee Carve-Out to be used to investigate and/or bring claims against the Pre-Petition Lender with respect to the Pre-Petition Lender Debt or Pre-Petition Lender's liens and security interests in the Pre-Petition Lender Collateral in accordance with paragraph 15(e) of this Interim Order.

        (e)      Subject to the terms of this paragraph, the repayment of the Pre-Petition Lender Debt as set forth in paragraph 9 of this Interim Order shall be without prejudice to the rights of the Committee, or if no Committee is formed, any party in interest, to seek to disallow the Pre-Petition Lender's claims in respect of the Pre-Petition Lender Debt, pursue any claims against Pre-Petition Lender in connection with the Pre-Petition Loan Documents or avoid any security interest or liens in the Pre-Petition Lender Collateral or in any other asset or property of the Debtors in which the Pre-Petition Lender claims an interest, including, without limitation, any claim, action or proceeding brought against Pre-Petition Lender in accordance with this paragraph 15(e) that requires the Pre-Petition Lender to disgorge the repaid Pre-Petition Lender Debt (or any portion thereof) as a result of any of Pre-Petition Lender's claims against the Debtors or liens upon and security interests in any of the assets and properties of Debtors (including the Pre-Petition Lender Collateral) and their estates being invalidated, avoided, subordinated, impaired or compromised in any way, either by an order of this Court (or other court of competent jurisdiction) or by settlement (collectively, a "Disgorgement Action"). The Committee shall have seventy-five (75) calendar days from the date of appointment of counsel for the Committee (and if no Committee is formed, any party in interest shall have seventy-five (75) days from entry of this Interim Order), within which to commence an adversary proceeding (collectively, a "Pre-Petition Lien/Claim Challenge") with respect to the Pre-Petition Lender's claims in respect of the Pre-Petition Lender Debt or security interest in the Pre-Petition Lender Collateral, or any other claims or causes of action against the Pre-Petition Lender relating to the Pre-Petition Loan Documents. If such a Pre-Petition Lien/Claim Challenge is not timely commenced within such applicable period set forth above, (a) the Pre-Petition Lender Debt and Pre-Petition Lender's security interests in and liens upon the Pre-Petition Lender Collateral shall be recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses and perfected, and (b) Pre-Petition Lender and its respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time immediately prior to the Petition Date in accordance with the Pre-Petition Loan Documents entered into with Debtors, and all of the Debtors' acknowledgements, releases and waivers of claims granted to or in favor of Pre-Petition Lender relating to the Pre-Petition Loan Documents in accordance with this Interim Order shall be binding upon all parties in interest in the Debtors' Chapter 11 cases and/or in any subsequently converted case(s) under Chapter 7 of the Bankruptcy Code.

     16.     Disposition of Collateral. Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, or assume, reject or assign any Leasehold Property (as defined in the Credit Agreement) without the prior written consent of Agent and no such consent shall be implied, from any other action, inaction or acquiescence by Lender or an order of this Court), except for sales of Debtors' Inventory in the ordinary course of its businesses or except as otherwise provided for in the Credit Agreement, the other Loan Documents and this Interim Order; provided, however, that nothing herein shall impair the Debtors' exercise of their fiduciary duties with respect to the assumption, rejection, or assignment of real property leases.

     17.     Waiver of 506(c) Claims Against Lender. No costs or expenses of administration which already have been, or may hereafter be, incurred in Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code shall be charged or asserted by the Debtors against Lender, its claims or the Collateral, pursuant to Sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior written consent of Lender (and no such consent shall be implied from any other action, inaction or acquiescence by Lender). Nothing contained in this paragraph shall waive the rights of the Committee or any other party-in-interest to assert a claim under Section 506(c) of the Bankruptcy Code; provided, that, the foregoing does not and shall not be construed to grant standing to any such party to assert a claim under Section 506(c) of the Bankruptcy Code.

     18.     Remedies upon Occurrence of Event of Default. In the event of the occurrence of any of the following: (a) the failure of Debtors to perform in any material respect any of its obligations pursuant to this Interim Order, (b) the occurrence of any Event of Default under the Credit Agreement or the other Loan Documents, (c) the termination or non-renewal of the Loan Documents as provided for in the Credit Agreement, or if terminated sooner by an order of this Court, (d) conversion of any Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, (e) the appointment of a trustee pursuant to Section 1104(a) of the Bankruptcy Code in Debtors' Chapter 11 cases, (f) the appointment of any examiner with expanded powers pursuant to Section 1106(b) of the Bankruptcy Code in Debtors' Chapter 11 cases, (g) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending this Interim Order without the express prior written consent of Lender (and no such consent shall be implied from any other action, inaction or acquiescence by Lender), (h) the failure to obtain entry of a final non-appealable Final Financing Order as to the approval of the Credit Agreement and the other Loan Documents, in form and substance acceptable to Lender, granting the Motion within sixty (60) days after the date of the Motion, (i) the failure of Debtors to remain current in payment of any material amount of post-petition administrative obligations, except for amounts the validity of which are being contested in good faith by Debtors, or (j) the filing of a plan of reorganization by any party which does not provide for the payment in full in immediately available funds of all Obligations on the effective date thereof on terms and conditions acceptable to Lender (each of the foregoing being referred to in this Interim Order, individually, as an

8

"Event of Default" and collectively, as "Events of Default"); then (unless such Event of Default is specifically waived in writing by Lender, which waiver shall not be implied from any other action, inaction or acquiescence by Lender) and upon or after the occurrence of any of the foregoing, and at all times thereafter, after giving five (5) business days notice in writing, served by hand or telefax upon the Court, Debtors' counsel, counsel to the Committee, any counsel to Debtors, if appointed, and the United States Trustee: (i) all of the Obligations shall become immediately due and payable, (ii) the automatic stay provided for pursuant to Section 362 of the Bankruptcy Code and any other restrictions on the enforcement by Lender of its liens upon and security interests in the Collateral or any other rights under the Loan Documents granted to or for the benefit of Lender or pursuant to this Interim Order shall be automatically vacated and modified without any further action being required, and (iii) Lender, without further notice, hearing or approval of this Court, shall be, and are hereby authorized, in the discretion of the Lender, to take any and all actions or remedies which Lender may deem appropriate to proceed against and realize upon the Collateral and any other assets and properties of Debtors' estates upon which Lender has been or may hereafter be granted liens and security interests to obtain the full and indefeasible repayment of the Obligations. Nothing contained in this Interim Order or otherwise shall be construed to obligate Lender in any way to lend or advance any additional funds to Debtors, or provide other financial accommodations to Debtors upon or after the occurrence of an Event of Default.

19.    Intentionally omitted.

20.    Amendment to Loan Documents. Agent, with the consent of Debtors, is hereby authorized to amend and/or modify the Loan Documents without further order of the Court for purposes of, among other things, implementing the syndication of the financing provided for in the Credit Agreement and the other Loan Documents (which syndication may result in increased costs charged to the Borrowers under the Credit Agreement and the other Loan Documents) and modifying or waiving compliance with financial covenants contained in the Credit Agreement or increasing the amount of loans available to Borrowers or changes related to any of the foregoing; provided, that, any such amendments and modifications must be in writing and served upon counsel for the Committee and the U.S. Trustee.

21.    Reservation of Lender's Rights. Entry of this Interim Order shall not be deemed to prejudice any and all rights, remedies, claims and causes of action Lender may have against third parties, and shall not prejudice the rights of Lender from and after the entry of this Interim Order to seek any other relief in the Debtors' Chapter 11 cases. Entry of this Interim Order shall not in any way constitute: (a) a preclusion or a waiver of any right of Lender to file, or to prosecute if already filed, a motion for relief from stay, a motion or request for relief, including but not limited to any adversary proceeding; (b) agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Interim Order; (c) a preclusion or waiver to assert any other rights, remedies or defenses available to Lender, or to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses and opportunities to respond being specifically reserved by Lender; or (d) a preclusion, waiver or modification of any rights or remedies that Lender has against any other person or entity.

22.    Release Upon Repayment of Obligations Upon the payment in full of all Obligations owed to Lender and termination of the Credit Agreement and the other Loan Documents, Lender shall be released from any and all obligations, liabilities or responsibilities arising in connection with or related to this Interim Order, the Credit Agreement and the other Loan Documents in accordance with the terms and conditions contained in the Loan Documents.

23.    Restrictions on Use of Cash Collateral, Additional Financing. All post-petition advances and other financial accommodations under the Credit Agreement and the other Loan Documents are made in reliance on this Interim Order and in the event that an order is entered at any time in Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code any order (other than the Final Financing Order) which (a) authorizes the use of cash collateral of Debtors in which Lender has an interest or the sale, lease, or other disposition of property of Debtors' estates in which Lender has a lien or security interest, except as expressly permitted hereunder or in the Loan Documents, or (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Lender herein; then, in each instance (i) Lender shall have given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by Lender, or (ii) such other order requires that the Obligations shall first be indefeasibly paid in full, including, without limitation, all debts and obligations of Debtors to Lender which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Lender. The security interests and liens granted to or for the benefit of Lender hereunder and the rights of Lender pursuant to this Interim Order and the Loan Documents with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of Debtors and, if Lender shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

24.    Binding Effect of Interim Order and Loan Documents.

(a)    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting Debtors' Chapter 11 cases to a Chapter 7 case, dismissing any of Debtors' bankruptcy cases or any order which may be entered confirming or consummating any plan of reorganization of Debtors, and the terms and provisions of this Interim Order as well as the priorities in payment, liens, and security interests granted pursuant to this Interim Order and the Loan Documents shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Interim Order until all Obligations are indefeasibly paid in full and satisfied; provided, that, all obligations and duties of Lender hereunder, under the Loan Documents or otherwise with respect to any future loans and advances or otherwise shall terminate immediately upon the earlier of the date of any Event of Default or the date that a plan of reorganization of the Debtors becomes effective unless Lender has given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by Lender.

9

(b)    The provisions of this Interim Order and the Loan Documents shall inure to the benefit of Debtors, Lender and the Pre-Petition Lender and shall be binding upon Debtors, Lender, and the Pre-Petition Lender and their respective successors and assigns, including any Chapter 11 or Chapter 7 Trustee or other fiduciary hereafter appointed as a legal representative of Debtors or with respect to property of the estate of Debtors, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and shall also be binding upon all creditors of Debtors and other parties in interest.

25.    No Modification or Stay of This Interim Order.  If any or all of the provisions of this Interim Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by Debtors to Lender or the Pre-Petition Lender prior to the effective date of such modification, vacation or stay, (b) the validity or enforceability of any security interest, lien, or priority authorized or created hereunder or pursuant to the Loan Documents, as applicable, or (c) the indefeasible repayment by Debtors of the Pre-Petition Lender Debt. Notwithstanding any such modification, vacation or stay, any indebtedness, obligations or liabilities incurred by Debtors to Lender or the Pre-Petition Lender prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and Lender and the Pre-Petition Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations and/or liabilities.  The obligations and indebtedness of Debtors to Lender under this Interim Order and/or the Loan Documents shall not be discharged by the entry of an order confirming a plan of reorganization in Debtors' bankruptcy cases pursuant to Section 1141(d)(4) of the Bankruptcy Code or otherwise, unless and until all Obligations of Debtors to Lender are indefeasibly paid in full in accordance with the terms and conditions of the Loan Documents prior to or concurrently with the entry of such order.

26.    No Waivers or Modification of Interim Order.  Debtors irrevocably waive any right to seek any modifications or extensions of this Interim Order without the prior written consent of Lender and no such consent shall be implied by any other action, inaction or acquiescence by Lender. Notwithstanding anything to the contrary contained herein, no provision of this Interim Order concerning the repayment of the Pre-Petition Lender Debt pursuant to the provisions of this Interim Order shall be modified, vacated, stayed or altered in any manner or respect.

27.    Conflicting Provisions.  Unless otherwise provided in this Interim Order, to the extent the terms and conditions of the Loan Documents are in conflict with the terms and conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

28.    Good Faith.  The terms of the financing arrangements among Debtors and Lender have been negotiated in good faith and at arms' length among Debtors and Lender and any loans, advances or other financial accommodations which are made or caused to be made to Debtors by Lender pursuant to the Loan Documents are deemed to have been made and provided in good faith, as the term "good faith" is used in Section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. Consistent with Section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order are hereafter modified, vacated or stayed:

    i.    such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability or lien granted or incurred by an Debtor to Lender prior to the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any lien, priority or right authorized or created under the original provisions of this Interim Order or pursuant to the Loan Documents; and

    ii.    any indebtedness, obligation or liability incurred by any Debtor to Lender under the Loan Documents prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits, including the liens, security interests and priorities granted herein and pursuant to the Loan Documents, with respect to any such indebtedness, obligation or liability; and

    iii.    since the loans made pursuant to the Loan Documents are made in reliance on this Interim Order, the Obligations owed Lender prior to the effective date of any stay, modification or vacation of this Interim Order cannot, as a result of any subsequent order in these chapter 11 cases, or in any superseding case, be subordinated, lose its lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to Lender under this Interim Order and/or the Loan Documents.

29.    Interim Financing Term.  The authorization of Debtors to obtain Loans and Letter of Credit Accommodations from Lender in accordance with the Loan Documents and this Interim Order shall expire sixty (60) days from the date of entry of this Interim Order, unless a Final Financing Order (as defined in the Credit Agreement) in form and substance satisfactory to Lender is entered on or before such date.

30.    Final Hearing.  This matter is set for a final hearing at 10:00 a.m. on March 15, 2005 ("Final Hearing"), in the United States Bankruptcy Court for the Southern District of New York, at which time any party-in-interest may appear and state its objection, if any, to the provisions of the post-petition financing arrangements among Debtors and Lender. The following parties shall immediately, and in no event later than February 26, 2005, be mailed copies of this Interim Order or such written summary of this Interim Order as the Court may approve: (a) the Interim Noticed Parties, (b) all creditors known to the Debtors who may have liens against or interests in any of the Debtors' assets and properties, including, without limitation, all landlords, operators, mortgagors and/or mortgagees of the premises at which any of the Debtors' Inventory or other items of Collateral are located; and (c) all parties who have filed a Notice of Appearance in these Chapter 11 cases.  Objections shall be in writing and shall be filed with the Clerk of this Court, on or before March 11, 2005 at 4:00 p.m., with a copy served upon Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Attention: D. J. Baker, Esq. and Alexandra Margolis, Esq.; King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia 30303, Attention: Sarah Borders, Esq.; Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New

10

York, New York 10169, Attention: Jonathan N. Helfat, Esq.; and Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022-6069, Attention: Andrew Tenzer, Esq. so that such objections are received, along with copy to Chambers, on or before 4:00 p.m., March 11, 2005. Any objections by creditors or any other party-in-interest to any of the provisions of the post-petition financing arrangements among Debtors and Lender shall be deemed waived unless filed and received in accordance with the foregoing on or before the close of business on such date. Except as otherwise provided in this paragraph, the terms of this Interim Order shall be valid and binding upon Debtors, all creditors of Debtors (including, without limitation, the Pre-Petition Secured Lender), and all other parties-in-interest from and after the date of this Interim Order by this Court. In the event this Court modifies any of the provisions of this Interim Order and the Loan Documents following such further hearing, such modifications shall not affect the rights and priorities of Lender pursuant to this Interim Order with respect to the Collateral and any portion of the Obligations which arises, or is incurred or is advanced prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically amended or modified at such final hearing.

31.    **In the event of any inconsistency between this Order and the Loan Documents, this order shall govern.**
       **SMB 2/23/05**

Dated: New York, New York
       February 23, 2005

                              /s/ STUART M. BERNSTEIN
                              United States Bankruptcy Judge

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                          :
                                               :        **Chapter 11**
                                               :
**WINN-DIXIE STORES, INC., et al.,**           :        **Case No. 05-11063 (RDD)**
                                               :
                    **Debtors.**               :        **(Jointly Administered)**
                                               :
----------------------------------------------------------------x

**NOTICE OF FURTHER HEARING ON MOTION FOR ORDER (A) AUTHORIZING RETURN
OF GOODS PURSUANT TO 11 U.S.C. § 546(g), (B) ESTABLISHING PROCEDURES FOR
TREATMENT OF RECLAMATION CLAIMS, AND (C) PROHIBITING THIRD PARTIES
FROM INTERFERING WITH DELIVERY OF GOODS**

TO PARTIES IN INTEREST:

          PLEASE TAKE NOTICE that a hearing has been scheduled for March 4, 2005, at 10:00
a.m. ET, before the Honorable Robert D. Drain, United States Bankruptcy Judge, in Room 610 of the
United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York,
New York, to consider the Debtors'[1] Motion for Order (A) Authorizing Return of Goods Pursuant to 11
U.S.C. § 546(g), (B) Establishing Procedures for Treatment of Reclamation Claims, and (C) Prohibiting
Third Parties From Interfering with Delivery of Goods (the "Motion"), which has been granted on an
interim basis pursuant to an interim order filed at Docket No. 98 (the "Interim Order"). The hearing may

---

[1]       The "Debtors" consist of Winn-Dixie Stores, Inc., Astor Products, Inc., Crackin' Good, Inc.,
Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores,
Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc.,
Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc.,
Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-
Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie
Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

be adjourned from time to time by announcement in open court or on the case docket without written notice to parties in interest.

PLEASE TAKE FURTHER NOTICE that any objections to the relief requested in the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court, shall set forth the basis for the objection and the specific grounds therefore, and shall be filed with the Clerk of this Court in accordance with General Order M-242 which order can be found at www.nysb.uscourts.gov, and shall further be delivered directly to Judge Drain's Chambers and served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Attention: D.J. Baker, Esq.; and (iii) King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia 30303, Attention: Sarah Robinson Borders, Esq., so as to be actually received no later than **March 3, 2005, at 4:00 p.m., prevailing Eastern Time**. Only objections made in writing and timely filed and received will be considered by the Bankruptcy Court at the hearing.

A copy of the Interim Order was either previously served or is enclosed herewith. Copies of the Motion and of a proposed final order are available upon request to Luisa Bonachea, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York, 10036, Telephone: 212-735-4065, E-mail: lbonache@skadden.com.

Dated: March 1, 2005
     New York, New York

*/s/    D. J. Baker*
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:    (917) 777-2150

- and –

Sarah Robinson Borders
Brian C. Walsh
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

PROPOSED ATTORNEYS FOR THE DEBTORS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————x
                                            :
In re                                       :
                                            :        **Chapter 11**
                                            :
**WINN-DIXIE STORES, INC., et al.,**        :        **Case No. 05-11063 (RDD)**
                                            :
             **Debtors.**                   :        **(Jointly Administered)**
                                            :
————————————————————————x

### ORDER (A) AUTHORIZING, ON AN INTERIM BASIS, RETURN OF GOODS PURSUANT TO 11 U.S.C. § 546(g), (B) ESTABLISHING, ON AN INTERIM BASIS, PROCEDURES FOR TREATMENT OF RECLAMATION CLAIMS, AND (C) PROHIBITING THIRD PARTIES FROM INTERFERING WITH DELIVERY OF GOODS

Upon the Motion dated February 21, 2005 (the "Motion") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for entry of an order authorizing the

Debtors to return goods to vendors, providing administrative claim status for valid reclamation

claims and establishing procedures for the treatment of reclamation claims, and prohibiting third

parties from interfering with delivery of goods; all as more fully set forth in the Motion; and

upon consideration of the Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy

Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and Applications sworn to on

the 21st day of February, 2005; and the Court having jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. § § 157 and 1334 and the Standing Order of

Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of

New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) the Office of the United States Trustee, (ii) counsel for

Wachovia Bank, N.A., as agent for the Debtors' secured lenders, (iii) the indenture trustee for the

Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or

further notice being required; and the relief requested in the Motion being in the best interests of

the Debtors, their estates, and creditors; and the Court having reviewed the Motion; and the

Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and upon all of the proceedings had before the Court; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted, in part on a final basis and in part on an

interim basis until such time as the Court conducts a final hearing on this matter (the "Final

Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be March 4, 2005, at 10:00 a.m.; and

it is further

ORDERED that any objection to the relief requested by the Motion on a final

basis with respect to the return of goods pursuant to Section 546(g) of the Bankruptcy Code, to

the treatment of valid reclamation claims as administrative expense claims, or to the Reclamation

Procedures (as defined below) must be filed with the Court, along with copy to Chambers, and

be served upon (i) the Office of the United States Trustee for the Southern District of New York,

33 Whitehall Street, 21st Floor, New York, New York  10004; (ii) D.J. Baker, Skadden, Arps,

Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; (iii) Sarah

Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia  30303, so as to

be received by March 3, 2005 at 4:00; and it is further

ORDERED on an interim basis that the Debtors are authorized under Section

546(g) of the Bankruptcy Code to return to their vendors (collectively, the "Vendors") any goods

- 2 -

("Goods") that are not out of date and that were delivered within ten days prior to the petition date for an offset of the purchase price of such Goods against the Vendors' pre-petition claim; provided, however, that the Debtors are not required to provide notice or seek further Court authorization to return such Goods; and it is further

ORDERED on an interim basis that claims of Vendors of Goods received and not returned to the Vendor by the Debtors shall be entitled to administrative expense treatment if and to the extent such claims are the claims of Vendors (a) who timely demand in writing reclamation of Goods pursuant to Section 546(c)(1) of the Bankruptcy Code and Section 2-702 of the UCC (together, "Applicable Law"), (b) whose Goods the Debtors have received, (c) who identifies the Goods sought to be reclaimed by invoice and proof of delivery, (d) whose Goods the Debtors do not agree to make available for pick-up by the Vendor, and (e) whose claims are otherwise valid under Applicable Law; provided, however, that Debtors shall bear the burden of proof on whether the Goods remained in possession of the Debtors on the reclamation demand date and may satisfy that burden by means of a statistical analysis based upon historical consumption data agreed to by the Vendor or otherwise approved by the Court (each, a "Reclamation Claim," and collectively, the "Reclamation Claims"), the amount and method of payment of such administrative expense claims to be determined pursuant to the procedures set forth hereinbelow; and it is further

ORDERED on an interim basis that if a Vendor of Goods has asserted a timely reclamation demand that is valid under Applicable Law with respect to Goods received by the Debtors, and not offered by the Debtors for pick-up by the Vendor, then the Debtors are deemed to have waived the following defenses to such Vendor's Reclamation Claim: (a) the failure of the Vendor to take any or all possible "self-help" measures with respect to such Goods; and (b)

- 3 -

the failure of the Vendor to institute an adversary proceeding against the Debtors seeking to

enjoin them from using or selling such Goods or any other similar relief; and it is further

ORDERED on an interim basis that the Debtors are authorized to implement the

following procedures (the "Reclamation Procedures"), without need of further order of the Court,

to resolve the Reclamation Claims asserted in these cases:

(a) *Reclamation Demands*

(i)  All Vendors seeking to reclaim Goods from the Debtors
shall be required to submit a demand (a "Reclamation Demand"):

(1)  before 10 days after receipt of such Goods by the
Debtors; or

(2)  if such 10-day period expires after the Petition
Date, before 20 days after receipt of such Goods by the Debtors.

(ii)  Such a Reclamation Demand must set forth in specificity
the Goods for which reclamation is sought and the basis for the Reclamation
Claim to the extent required by Applicable Law.

(iii)  Any Vendor who fails to timely submit a Reclamation
Demand pursuant to section 546 of the Bankruptcy Code shall be deemed to have
waived its right to payment on any purported Reclamation Claim.

(b) **The Statement of Reclamation**

(i)  Within one hundred twenty (120) days after the Petition
Date, or such later date as may be established by the Court upon motion of the
Debtors, the Debtors shall provide the Vendor with a copy of this Order (the
"Reclamation Order") and a statement of reclamation (the "Statement of
Reclamation" or the "Statement").

(ii)  The Statement of Reclamation shall set forth the extent and
basis, if any, upon which the Debtors believe the underlying Reclamation Claim is
not legally valid and/or the amount that shall be considered valid (the "Reconciled
Reclamation Claim").  In addition, the Statement of Reclamation shall identify
any defenses that the Debtors choose to reserve, notwithstanding any payment of
the Reconciled Reclamation Claim (the "Reserved Defenses").

(iii)  Vendors who are in agreement with the Reconciled
Reclamation Claim as contained in the Statement of Reclamation may indicate

- 4 -

such assent on the Statement of Reclamation and return the Statement within sixty (60) days after the date of the Statement of Reclamation (the "Reconciliation Deadline") to the Debtors' representative as set forth in such statement, with copies to Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for the Debtors, Four Times Square, New York, New York, 10036, Attn: Sally McDonald Henry, Esq.

          (iv)   Vendors who are in disagreement with the Reconciled Reclamation Claim as contained in the Statement of Reclamation (the "Dissenting Vendors") must indicate such dissent on the Statement of Reclamation and return the Statement by the Reconciliation Deadline to the entities and at the addresses identified in subparagraph (iii) of these Procedures, above. A Statement of Reclamation returned under this subparagraph must be accompanied by:

          (1)   a copy of the Reclamation Demand, together with any evidence of the date such Reclamation Demand was sent and received;

          (2)   the identity of the Debtor that ordered the products and the identity of the Vendor from whom the Goods were ordered;

          (3)   any evidence demonstrating when the Goods were shipped and received;

          (4)   copies of the respective Debtor's and Vendor's purchase orders and invoices, together with a description of the Goods shipped; and

          (5)   a statement identifying which information on the Debtors' Statement of Reclamation is incorrect, specifying the correct information and stating any legal basis for the objection.

          (v)   The failure of a Dissenting Vendor to materially comply with subparagraph (iv) above shall constitute a waiver of such Dissenting Vendor's right to object to the proposed treatment and allowed amount of such Reclamation Claim, as set forth in the Statement of Reclamation, unless the Court orders otherwise.

          (vi)   Any Vendor who fails to return the Statement of Reclamation by the Reconciliation Deadline or who returns the Statement of Reclamation by the Reconciliation Deadline but fails to indicate assent or dissent shall be deemed to have assented to the Reconciled Reclamation Claim.

### (c)  Fixing the Reclamation Claim

          (i)   The Reclamation Claim of (1) any Vendor who returns the Statement of Reclamation by the Reconciliation Deadline and indicates its assent

to the Reconciled Reclamation Claim as contained in the Statement of Reclamation, (2) any Vendor who fails to return the Statement of Reclamation by the Reconciliation Deadline, and (3) any Vendor who returns the Statement of Reclamation by the Reconciliation Deadline but who fails to indicate either assent or dissent, shall be deemed an Allowed Reclamation Claim in the amount of the Reconciled Reclamation Claim.

(ii)    The Debtors are authorized to negotiate with all Dissenting Vendors and to adjust the Reconciled Reclamation Claim either upward or downward to reach an agreement regarding the Dissenting Vendor's Reclamation Claim. The Debtors are also authorized to include any Reserved Defenses as part of any such agreement. In the event the Debtors and a Dissenting Vendor are able to settle on the amount and/or treatment of the Dissenting Vendor's Reclamation Claim, the Reclamation Claim shall be deemed an Allowed Reclamation Claim in the settled amount.

(iii)    In the event that no consensual resolution of the Dissenting Vendor's Reclamation Demand is reached within sixty (60) days of the Reconciliation Deadline (or such later date as the parties agree), the Debtors shall file a motion for determination of the Dissenting Vendor's Reclamation Claim and set such motion for hearing at the next regularly scheduled omnibus hearing occurring more than twenty (20) days after the filing of the motion for determination, unless another hearing date is agreed to by the parties or ordered by the Court (the "Determination Hearing"). The Dissenting Vendor's Reclamation Claim, if any, shall be deemed an Allowed Reclamation Claim as fixed by the Court in the Determination Hearing or as agreed to by the Debtors and the Dissenting Vendor prior to a determination by the Court in the Determination Hearing.

### (d)    *Treatment of Allowed Reclamation Claims*

(i)    The Debtors may at any point in these Reclamation Procedures satisfy in full any Reclamation Claim or Allowed Reclamation Claim by making the Goods at issue available for pick-up by the Vendor or Dissenting Vendor so long as such Goods are not out of date.

(ii)    All Allowed Reclamation Claims for which the Debtors choose not to make the Goods available for pick-up shall be paid in full as an administrative expense pursuant to a confirmed plan of reorganization, or earlier, in whole or in part, to the extent that a reclamation payment plan is proposed and approved by the Court;

and it is further

ORDERED on an interim basis that in the event an Allowed, in whole or in part,

Reclamation Claim is paid earlier than the effective date of a confirmed plan of reorganization,

- 6 -

any such payments shall be subject to any Reserved Defenses of the Debtors.  Reserved Defenses

shall be deemed waived by the Debtors on (a) the earlier of (i) such effective date; or (ii) the date

that is one year following the last payment of an Allowed Reclamation Claim, or (b) as extended

by agreement of the parties or by this Court, or request of the Debtors (the latter of "a" or "b"

being the "Satisfaction Date"); and it is further

        ORDERED on an interim basis that as of the Satisfaction Date, payment of an

Allowed Reclamation Claim pursuant to the Reclamation Procedures shall constitute a waiver,

release, discharge, and satisfaction of any and all rights and claims that the holder of the Allowed

Reclamation Claim has ever had, or hereafter, can, shall or may have, against the Debtors,

arising from its rights to repossess, reclaim or be paid for the Goods and of any other reclamation

rights for the same Goods that the holder of the Allowed Reclamation Claim has or may assert

against the Debtors; and it is further

        ORDERED on an interim basis that by the payment and acceptance under the

Reclamation Procedures set forth herein, the Debtors and the holder of the Allowed Reclamation

Claim shall be deemed to agree that the Debtors do not in any way waive any claims they may

have against any Vendor relating to preferential or fraudulent transfers, or other potential claims,

counterclaims, or offsets with respect to said Vendors, or any defense to the value of a

Reclamation Claim based upon the existence of a prior perfected lien on the Goods.  The

Debtors' rights to pursue such claims, and any and all other claims they may seek to advance

against any Vendor in the future other than those arising specifically in connection with the

Allowed Reclamation Claim, are hereby reserved, including the right to object on any grounds to

any claim filed by the Vendors; and it is further

ORDERED on an interim basis that by accepting payment in accordance with the Reclamation Procedures, the holder of an Allowed Reclamation Claim shall be deemed to warrant that it has not assigned any of its rights to its Reclamation Claim; and it is further

ORDERED that nothing contained in the Motion or in this Order shall be deemed an admission as to the solvency or insolvency of the Debtors as of the Petition Date or any other date or shall prejudice the Debtors' rights to return unacceptable Goods or Goods delivered but not ordered by the Debtors; and it is further

ORDERED on an interim basis that the Reclamation Procedures are the sole and exclusive method permitted with respect to the resolution and payment of Reclamation Claims asserted against the Debtors.  Vendors are prohibited from seeking any other treatment for their Reclamation Claims than is permitted by the Reclamation Procedures, and all parties are prohibited from commencing adversary proceedings against the Debtors in respect of Reclamation Claims; and it is further

ORDERED that the Debtors may object on any grounds to any claims filed by the Vendors; and it is further

ORDERED that, in accordance with Sections 105 and 362 of the Bankruptcy Code, Vendors and all other third parties are prohibited from reclaiming or interfering in any way with the post-petition shipment or delivery of Goods to the Debtors without first obtaining relief from this Order; and it is further

ORDERED that, except as provided herein, notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Vendor or any other third party; and it is further

ORDERED that nothing in this Order, nor any action taken by the Debtors in furtherance of the implementation of this Order, shall be deemed an assumption or rejection of any executory contract or unexpired lease; and it is further

ORDERED that, notwithstanding Federal Rule of Bankruptcy Procedure 6004(g), this Order shall be effective immediately upon its entry; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated:  February 23, 2005
        New York, New York

                                    /s/  **STUART M. BERNSTEIN**
                                    UNITED STATES BANKRUPTCY JUDGE

546131.04-New York Server 4A - MSW