**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Case No. 05-11063 |
| | ) | (Jointly Administered) |
| Winn-Dixie Stores, Inc., et al., | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| _____ | ) | |

### OBJECTION OF KELLOGG SALES COMPANY, KEEBLER COMPANY AND MURRAY BISCUIT COMPANY TO DEBTORS' RECLAMATION MOTION

Kellogg Sales Company ("Kellogg"), Keebler Company ("Keebler") and Murray Biscuit Company ("Murray") hereby submit this Objection (the "Objection") to the Debtors' Motion for Order (A) Authorizing Return of Goods Pursuant to 11 U.S.C. §546(g), (B) Establishing Procedures for Treatment of Reclamation Claims, and (C) Prohibiting Third Parties From interfering With Delivery of Goods (the "Reclamation Motion")[1].  Kellogg, Keebler and Murray are hereinafter collectively referred to as the "Kellogg Entities" and represent as follows:

### I. JURISDICTION

1.     The Court has jurisdiction over the Reclamation Motion and the Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

### II. BACKGROUND

2.     On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code and commenced the above-captioned Chapter 11 cases (the "Chapter 11 Cases").

3.     The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

---

[1]   All capitalized terms not defined herein shall have the meaning ascribed thereto in the Reclamation Motion or the Interim Reclamation Order (as defined hereunder).

4.    On February 22, 2005, the Debtors filed the Reclamation Motion.

5.    On Febraury 23, 2005, the Court entered an interim order respecting the Reclamation Motion (the "Interim Reclamation Order").  A final hearing on the Reclamation Motion is set for March 15, 2005, at 10:00 a.m. with the corresponding deadline to respond to the Reclamation Motion set for March 3, 2005, at 4:00 p.m.  The Debtors agreed to extend the response deadline with respect to the Kellogg Entities to March 10, 2005, at 4:00 p.m.

6.    On March 1, 2005, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").  No trustee or examiner has been appointed in these Chapter 11 Cases.

7.    The Kellogg Entities are suppliers of food products to the Debtors.  Keebler and Murray are wholly owned subsidiaries of Kellogg.

8.    On February 17, 2005, the Kellogg Entities sent three separate written notices of reclamation to the Debtors (the "Kellogg Demands").  The Kellogg Demands assert reclamation claims in the aggregate amount of $2,609,437.99.

### III.  OBJECTIONS TO THE RECLAMATION MOTION

**A.    The Proposed Procedures Give the Debtors Too Much Time and Leverage to the Prejudice of Reclamation Claimants**

9.    The Kellogg Entities object to the proposed reclamation procedures (the "Proposed Procedures") because the Proposed Procedures would force a reclamation claimant to wait more than seven  months before such claimant may have an opportunity to have its day in Court.

10.    The Proposed Procedures provide 120 days for the Debtors to prepare and serve the Statements of Reclamation indicating whether the Debtors agree or disagree with each reclamation demand.  This initial 120 days, however, is only the start.  The Proposed Procedures

then provide that after the Statements of Reclamation are served on the reclamation claimants, the claimants have 60 days (the "Response Period") to indicate their assent or dissent to the Debtors' proposed treatment of the claimant's reclamation claim as set forth in the Statements of Reclamation.  To the extent a reclamation claimant objects to the treatment set forth in its respective Statement of Reclamation and indicates its dissent in writing to the Debtors, the Debtors would have another 60 days after the expiration of the Response Period (<u>not</u> 60 days after the claimant indicates its dissent in writing; thus a written dissent made immediately after the receipt of a Statement of Reclamation does not expedite the entire process for the particular claimant) to try and reach a consensual resolution with the dissenting reclamation claimant.  It is only after the expiration of this second 60 days and the parties having failed to reach a consensual resolution that the Debtors will be required to file a motion for determination respecting the reclamation claim of the dissenting reclamation claimant.  The proposed procedures, however, provide no time limit within which the Debtors must file such motion for determination.

11.    In effect, under the Proposed Procedures, the Debtors are provided 240 days, or seven  months, to decide whether they agree with any specific reclamation demand made. Furthermore, should the Debtors decide to disagree with a reclamation demand after seven months, the Debtors retain the sole authority to ask the Court to determine the validity of any reclamation claim.  Furthermore, there are no time limitations as to when the Debtors must file the motion to seek Court determination.  The Proposed Procedures, therefore, provide the Debtors with too much time and control over the process and strip the reclamation claimants of their right to a speedy resolution of their claims.

12.     The Kellogg Entities would propose that the Debtors be required to prepare and serve the Statements of Reclamation within 60 days (as opposed to the proposed 90 days) of the Petition Date.  The Debtors have provided no basis for requiring as long as 120 days to determine whether the reclamation demands assert valid claims and if so, the amount of such valid claim.  After the service of the Statements of Reclamation, the claimants should be provided no more than 30 days to convey their assent or dissent to their respective Statement of Reclamation.  Once a claimant indicates its dissent in writing to the Debtors, such claimant and the Debtors should be provided 30 days from the date of the written dissent to work out their differences.  After the expiration of such 30 days, unless the parties agree to extend such period, the dissenting claimants should be allowed to pursue the recovery of their reclamation claims to the fullest extent provided by the Bankruptcy Code.

**B.      The Debtors Should be Required to File a Summary of the Statements of Reclamation**

13.     While each reclamation claimant will be served with the Statement of Reclamation specific to its reclamation demand, the Proposed Procedures are silent with respect to whether the Debtors would file the Statements of Reclamation with the Court.

14.     The Proposed Procedures seek to grant valid reclamation claims administrative expense status.  It is foreseeable that valid reclamation claims may constitute a substantial amount of administrative expense claims.  Under the circumstances, the Kellogg Entities believe that parties in interest in these cases should be entitled to know the amounts of administrative expense claims that may result from the Debtors' determination of valid reclamation claims.

15.     Accordingly, the Kellogg Entities would request that once the Debtors have completed the Statements of Reclamation, the Debtors also prepare and file a reclamation report (the "Reclamation Report") with the Court that provides a summary of each claimant's

reclamation demand and the Debtors' conclusion on whether all, some or none, of each demand that the Debtors believe to be valid. Interested parties should also be provided the opportunity to object to the treatments proposed by the Debtors respecting each reclamation demand.

      **C.**    **Goods to be Picked-Up by Reclamation Claimants Must Be Made Available Within a Set Period of Time**

16.    According to the Proposed Procedures, the Debtors may "at any point in these Reclamation Procedures satisfy in full any Reclamation Claim or Allowed Reclamation Claim by making the Goods at issue available for pick-up…"

17.    As addressed above, the proposed procedures would provide the Debtors seven months to simply decide whether a reclamation demand assert valid reclamation claims. Accordingly, under the proposed procedures, the Debtors theoretically could, after seven months, decide that a claimant has a valid reclamation claim and then decide, instead of granting administrative expense status for the claimant, have the claimant pick-up their goods instead.

18.    While the proposed procedures provide that the Debtors may make available goods for pick-up only if the said goods are not "out of date," there is, however, no definition of what the Debtors may or may not consider as "out of date." The ambiguity in the meaning of "out of date" would certainly lead to confusion and disputes especially if the Debtors make the goods available for pick-up months after the Petition Date.

19.    The Kellogg Entities provide food products to the Debtors that have limited shelf life. It is, therefore, important to the Kellogg Entities that the Debtors are allowed only a short period of time within which to decide whether to have the Kellogg Entities reclaim their goods. The proposed procedures would allow the Debtors to make available goods for pick-up by the Kellogg Entities months after the delivery of the goods. While such goods may arguably not be "out of time" to the extent it may be argued that the expiration date on the items have not passed

at the time the goods are made available for pick-up, nevertheless, if the expiration dates of the said goods were to occur a few days or even a few weeks after the date the goods are made available for pick-up, the Kellogg Entities would essentially be picking up goods of little or no value to the Kellogg Entities because they are no longer sellable.  Such results would completely defeat the Kellogg Entities' reclamation rights under relevant state law as well as Section 546 of the Bankruptcy Code and certainly contrary to public policy.  The reclamation procedures must balance the benefits and risks to both the Debtors' estates and the reclamation claimants.

20.    Due to the possible significant prejudice to the reclamation claimants as described above, the Kellogg Entities would request that the Court set a deadline of March 31, 2005, for the Debtors to determine and make goods available for pick-up by reclamation claimants.  If the Debtors do not make the goods available for pick-up by March 31, 2005, those reclamation claims that are determined to be valid will then be accorded administrative expense status.

21.    Furthermore, the reclamation claimants should be allowed to reserve their rights to refuse pick-up in the event the goods made available for pick-up are not those actually shipped to the Debtors during the reclamation period.  Since the Debtors have or are in the process of closing a number of their stores and presumably moving the inventory in the closed stores to various other locations still operating, it is possible that when the Debtors allow the reclamation claimants to reclaim their goods, the Debtors may inadvertently make available for pick-up goods delivered long before  the reclamation period.  Accordingly, the reclamation claimants should have the right to refuse to pick-up of goods if the goods made available are shown not to be those delivered to the Debtors during the reclamation period.  Furthermore, the claimant should be accorded administrative expense status for the value of the goods that the Debtors intended the claimant to pick-up.

**D.    The Debtors Have Not Shown that Administrative Expense Treatment Will Protect Interests of Reclamation Claimants**

22.    On February 22, 2005, the Debtors filed a motion seeking, among other things, to obtain post-petition financing (the "DIP Financing Motion").  On February 23, 2005, an interim order on the DIP Financing Motion was entered (the "Interim Financing Order").  Despite the entry of the Interim Financing Order, the Debtors have yet to file or provide any financial information or a budget indicating the anticipated administrative expense obligations of the estates.  The Kellogg Entities, therefore, are unable to determine the Debtors' financial ability or liquidity going forward.  Accordingly, there is no basis upon which the Kellogg Entities may assess whether the estates may be able to meet their administrative obligations.[2]

**E.    Valid Reclamation Claims Should Receive the Same Treatment as Other Administrative Claims Including Administrative Claims of Professionals**

23.    The Proposed Procedures seek to grant administrative expense status, pursuant to Section 546(c)(2)(A), to those reclamation claims the Debtors consider valid.  Section 546(c)(2)(A) provides that a court may "deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court – (A) grants the claim of such seller priority as a claim of a kind specified in Section 503(b)…"

24.    Section 507(a) of the Bankruptcy Code sets forth the priority scheme for payment of various categories of claims.  Claims accorded administrative expense status under Section 503(b) of the Bankruptcy Code are accorded first priority for payment under Section 507(a)(1).  Section 507(a)(1) puts <u>all</u> administrative expense claims allowed under Section 503(b) on par with each other, regardless of the nature of or the basis for each such administrative expense claim.   In other words, all administrative expense claims are treated equally under the

---

[2]    The Kellogg Entities are continuing their review of the DIP Financing and may file objections to the DIP Financing Motion.

Bankruptcy Code.   It is only in those rare, unusual and extraordinary occasions that an administrative expense claim is singled out and provided a treatment better than all other administrative expense claims - - - the superpriority administrative expense claim.

25.     One example of the Debtors circumventing the norm is the proposed granting of a "carve out" to certain professionals (as addressed in the DIP Financing and described in the paragraph below) which is contrary to Section 507(a)(1).

26.     The Interim Financing Order provides the Debtors' post-petition lender with an allowed superpriority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code which trumps all administrative expense claims allowed under Section 503(b) (the "Superpriority Claim").   Moreover, the Interim Financing Order also provides for a "carve-out" (the "Carve-Out") for professionals employed by the Debtors' estates under Section 327 of the Bankruptcy Code (the "Professionals").   The Interim Financing Order specifically states that the Debtors' post-petition lenders' Superpriority Claim "*shall* be subordinate to (i) the Carve-Out Expenses as and to the extent set forth in this Interim Order."   See Interim Financing Order, para. 14 (emphasis added).

27.     Claims of professionals employed by a debtor's estate allowed under Section 330 of the Bankruptcy Code constitute administrative expense claims allowed under Section 503(b). Accordingly, the allowed claims of the Professionals are on par with the valid reclamation claims and are to be accorded the same treatment by the Debtors.

28.     By the Carve-Out, however, the Debtors have elevated the administrative expense claims of Professionals to a superpriority status above all other administrative expense claims, including the valid reclamation claims.

29.     Section 507(a)(1) is clear that all administrative expense claims allowed under Section 503(b) be accorded the same priority.  It is, therefore, patently unfair and unwarranted that the administrative expense claims of Professionals are accorded a more favorable treatment to the prejudice of all other similarly situated administrative expense claimants.

30.     Accordingly, the Kellogg Entities would request that the Debtors include the valid reclamation claims as part of the Carve-Out or, alternatively, eliminate the Carve-Out treatment to Professionals so that all administrative expense claimants receive the same treatment.

WHEREFORE, based on the foregoing, the Kellogg Entities request that the Court enter Order modifying the Proposed Procedures consistent with the requests of the Kellogg Entities as set forth above and for such other and further relief that the Court may deem just and proper.


Date:  March 10, 2005


                              /s/ MICHAEL D. WARNER
                              _____
                              Michael D. Warner (MW-3381)
                              WARNER STEVENS, L.L.P.
                              1700 City Center Tower II
                              301 Commerce Street
                              Fort Worth, TX 76102
                              Telephone: (817) 810-5250
                              Facsimile: (817) 810-5255
                              Email:  mwarner@warnerstevens.com

                              Attorneys for Kellogg Sales Company, Keebler
                              Company, and Murray Biscuit Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above Objection of Kellogg Sales Company, Keebler Company and Murray Biscuit Company to Debtors' Reclamation Motion has been served upon the parties listed below on this 10th day of March, 2005, via electronic mail and facsimile (as indicated), and by United States first class mail, properly addressed and postage prepaid.

D.J. Baker, Esq.
Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, NY 10036
Facsimile: 212.735.2000
Electronic Mail: djbaker@skadden.com

Lena Mandel, Esq.
Milbank Tweed Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005-1413
Facsimile: 212.822.5076
Electronic Mail: lmandel@milbank.com

Sarah Robinson Borders, Esq.
King & Spalding LLP
191 Peachtree Street
Atlanta, GA 30303
Facsimile: 404.572.5149
Electronic Mail: sborders@kslaw.com

Office of the United States Trustee
Southern District of New York
33 Whitehall Street, 21st Floor
New York, NY 10004
Facsimile: 212.668.2256
Electronic Mail: deirdre.martini@usdoj.gov

/s/ MICHAEL D. WARNER

_____
Michael D. Warner (MW-3381)