Louis W. Diess, III
McCARRON & DIESS
4900 Massachusetts Avenue, N.W.
Suite 310
Washington, D.C. 20016
(202) 364-0400
(202) 364-2731 – facsimile

Attorneys for the Burch Equipment Group of PACA Creditors

Lawrence H. Meuers
MEUERS LAW FIRM, P.L.
5395 Park Central Court
Naples, Florida 34109
(239) 513-9191
(239) 513-9677 – facsimile

Attorneys for the Duda Group of PACA Creditors

Bruce Levinson (BL0749)
LAW OFFICES OF BRUCE LEVINSON
747 Third Avenue, 4th Floor
New York, New York 10017-2803
(212) 750-9898

Attorneys for PACA Trust Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | : |
| | : Chapter 11 |
| WINN-DIXIE STORES, INC., et al | : Case No. 05-11063 (RDD) |
| | : (Jointly Administered) |
| Debtors | : |

### LIMITED OPPOSITION OF CERTAIN PACA TRUST CREDITORS TO DEBTORS' FINAL ORDER FOR AUTHORITY TO PAY PRE-PETITION CLAIMS UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT AND REQUEST FOR ADEQUATE PROTECTION

Burch Equipment, L.L.C.; Chiquita Fresh, N.A.; Clayton Rawl Farms, Inc.; Dole Fresh Fruit Co., Inc.; Dole Fresh Vegetables, Inc.; Imports Unlimited, Inc.; Collier

- 1 -

340

- 2 -

County Produce, Inc.; Incredible Fresh Produce & Dairy Co.; L&M Companies, Inc.; Marker 29 Produce, Inc.; Mineral King Produce, L.L.C.; Movsovitz & Sons of Florida, Inc.; Richter & Company, Inc.; Sysco Food Services of Central Alabama, Inc.; Sysco Food Service of South Florida, Inc.; and WP Produce Corp., (collectively the "Burch Equipment Group of PACA Creditors") A. Duda & Sons, Inc.; Baker Farms; Fresh Express, Inc.; Fresh Start Produce Sales, Inc.; Giumarra Vineyards Corporation Global Berry Farms, L.L.C.; Hinton Farms Produce; Hollar & Green Produce Co., Inc.; Jac. Vandenberg, Inc.; N&W Farm Produce, Inc.; Oakshire Mushroom Farms, Inc.; PAC Fruit Company, L.L.C.; Sun Commodities, Inc.; Seald Sweet, L.L.C.; Tim Edmonson Farms; and Wilson & Son Sales, Inc. (collectively the "Duda Group of PACA Creditors" and collectively with the Burch Equipment Group of PACA Creditors, the "PACA Trust Creditors"), by their undersigned counsel, hereby respond to the motion of the above-captioned debtors (the "Debtors") for a final order for authority to pay pre-petition claims under the Perishable Agricultural Commodities Act, 7 U.S.C. §499a et. seq. ("PACA") (the "Debtors' Motion"). Debtors, in their first day motions, filed a Motion seeking an Order for Authority To Pay Pre-petition PACA/PASA Claims (the "Motion"). On February 23, 2005, this Court entered an Interim Order Granting The Debtors Authority To Pay Pre-Petition Claims Arising Under The Perishable Agricultural Commodities Act [Docket No. 77] (the "Interim PACA Claims Order").

Although the PACA Trust Creditors are pleased that the Debtors recognize the PACA issues in filing this Motion, the PACA Trust Creditors object to the Debtors proposed Final Order on the following four grounds:

1) The Debtors are not required to pay valid PACA claims by a date certain;

2) The Debtors are not required to adequately protect the PACA trust beneficiaries by setting aside a fund from which payment can be made;

3) The Debtors' time period to review claims and file the Report of Allowed Claims (the "Report") is too long and violates the rights of PACA Trust Beneficiaries to prompt payment; and

4) The procedure to determine valid claims is vague and needs better definition.

In support hereof, The PACA Trust Creditors respectfully represents as follows:

## BACKGROUND

The PACA Trust Creditors supplied Debtors, pre-petition, with wholesale quantities of fresh fruits and vegetables worth nearly $8.5 million, which has not been paid. The PACA Trust Creditors preserved their rights as beneficiaries of the statutory trust by placing the wording on their invoices as allowed by Section 5(c)(4) of the Perishable Agricultural Commodities Act (PACA).[1] As explained below, Debtors are required by the PACA statute to pay promptly for produce and to maintain sufficient assets in trust until full payment is made to the PACA Trust Creditors, even in the event of the filing of bankruptcy. Furthermore, the statute specifically states that the statutory trust was enacted to ensure payment to PACA trust creditors over secured lenders. 7 U.S.C. §499e(c)(1).

Debtors have not paid the PACA Trust Creditors for the produce delivered pre-petition. Instead, Debtors have diverted or are in the process of diverting PACA trust assets to pre and post-petition secured lenders.

---

[1] In 1995, Congress amended PACA to provide that trust rights may be preserved if the seller's invoice contains the following wording:
> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any

Footnote continued …

-3-

On February 21, 2005, Debtors filed a Voluntary Petition for Relief under Chapter 11, Title 11, United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). On February 22, 2005, Debtors moved the Court for an order authorizing but not requiring the payment of PACA trust claims. Debtors admit that the PACA Trust Creditors are entitled to payment and that the trust assets are not part of the estate. Yet, Debtors have not paid any pre-petition PACA trust claims and are continuing to use assets subject to the PACA trust in violation of the law. Debtors will not agree to immediately pay the PACA Trust Creditors in direct violation of the law and have not offered any adequate assurance or security to guarantee payment of the PACA trust claims. Thus, Debtors' motion becomes a procedural ploy to delay payment of PACA trust claims in order to continue dissipating PACA trust assets. Such a procedure is directly contrary to law, and may result in the PACA trust claims not being paid. Debtors' motion should be granted to the extent that it requires prompt payment of pre-petition PACA claims that are outstanding, with the requirement that Debtors fulfill their statutory duties by segregating sufficient proceeds to pay all pre-petition PACA trust claims. In addition to the PACA Trust Creditors named in this response, there are other PACA trust creditors of Debtors across the country that in total have claims of another approximately $20 million.

## DISCUSSION

I.     THE PACA TRUST

    A.     PACA Creates a Statutory Trust For The Benefit of Sellers of Produce.

---

receivables or proceeds from the sale of these commodities until full payment is received.

The PACA was enacted in 1930 to encourage fair trading in the marketing of produce and to prevent unfair and fraudulent practices in an industry peculiarly susceptible to such practices. See, H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S. Code Cong & Admin News 405, 406. In the early 1980's Congress recognized a significant payment problem which had increased in recent years. Id., p. 406. The USDA estimated that an additional ten percent (10%) was added to the consumer's purchase price of fruits and vegetables to make up the losses due to nonpayment for produce. Id., p. 412. In view of this problem, Congress amended the PACA in 1984 by adding Section 5(c), 7 U.S.C. §499e(c), "[T]o increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." Id., p. 406.

To attain this purpose, the amendment established a statutory trust under which a receiver of produce holds its produce-related assets, such as the produce itself or other products derived therefrom, as well as any receivables or proceeds from the sale thereof, and any assets purchased or co-mingled with such proceeds (the "PACA Trust Assets") as a fiduciary until full payment is made to the seller. 7 U.S.C. §499e(c)(2). In re Kornblum & Co., Inc., 81 F.3d 280 (2nd Cir. 1996); Sanzone-Palmisano Company v. M. Seaman Enterprises, Inc., 986 F.2d 1010 (6th Cir., 1993); and Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154 (11th Cir. 1990). The trust provision is "a self-help tool that will enable (suppliers) to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers and receivers of fruits and vegetables." 49 F.R. 45736, Nov. 20, 1984. (See also Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154, 156 (11th Cir. 1990): "In the early 1980s, Congress determined that the increase in non-payment and delinquent payment by produce dealers threatened the financial stability of produce growers."). Thus,

the goal of the law is to assure payment to produce suppliers from the proceeds of their produce.

Congress explained in the statute itself that the main roadblock to this goal was the diversion of produce proceeds to secured lenders. The statute's first clause states that secured financing arrangements in which produce proceeds are used as security and diverted from the suppliers to lenders are against the public interest and a burden on commerce and that the purpose of this law is to remove this burden on commerce. 7 U.S.C. §499e(c)(1). The same rationale applies to buyers, which finance their operations through factoring agreements whereby they sell their accounts receivable to a factor at a discount. E. Armata, Inc. v. Platinum Funding Corp., 887 F. Supp. 590 (S.D.N.Y. 1995).

Under PACA, failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. §499b(4). The PACA regulations also make clear that, "[i]t is the buyer's or receiver's responsibility as trustee to insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment . . ." 49 Fed. Reg. at 45738. Agricultural merchants, dealers and brokers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 CFR 46.46(e)(1).

      B.    PACA Trust Assets Are Not Part Of The Debtors' Estate And Cannot Be Used By Debtors For Other Purposes.

The regulations provide that "[i]f a buyer or receiver declares bankruptcy . . ., trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid." 49 Fed. Reg. at 45738.

There is no question that PACA trust assets are not property of the bankrupt's estate and must be set aside for distribution to trust beneficiaries. In re Long John Silver's Restaurants, Inc., 230 B.R. 29, 32 (Bankr. D. Del. 1999); In re Kelly Food Products, Inc., 204 B.R. 18 (Bkrtcy. C.D. Ill. 1997); In re Southland & Keystone, 132 B.R. 632 (9th Cir. BAP 1991); In re Asinelli, Inc., 93 B.R. 433 (M.D.N.C. 1988); In re Carolina Produce Distributors, Inc., 110 B.R. 207 (W.D.N.C. 1990); In re Fresh Approach, Inc., 48 B.R. 926 (Bkrtcy. 1985); In re Milton Poulos, Inc., 94 B.R. 648 (Bkrtcy. C.D.Cal. 1988). **Furthermore, the PACA Trust Creditors are entitled to immediate turnover of trust funds.** In re Kelly Food Products, Inc., supra; In re W.L. Bradley Co., Inc., 75 B.R. 505 (Bkrtcy. E.D.Pa 1987); In re Fresh Approach, 51 B.R. 412 (Bkrtcy. N.D.Tex. 1985).

## II.   IMMEDIATE RELIEF UNDER THE PACA TRUST

When a produce supplier is not paid, it is entitled to immediate relief, either by the segregation of trust assets, Frio Ice, S.A. v. Sunfruit, Inc., supra; Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106 (2d Cir. 1987); In re Richmond Produce Co., Inc., 112 B.R. 364 (N.D.Cal. 1990); J.R. Brooks & Son v. Norman's Country Market, 98 B.R. 47, 50 (N.D.Fla. 1989), or by immediate payment. In re Kelly Food Products, Inc., supra (debtor required to immediately pay trust assets to The PACA Trust Creditors); In re W.L. Bradley, Inc., 75 B.R. 505 (E.D.Pa. 1987) (automatic stay lifted and immediate payment of trust proceeds required to The PACA Trust Creditors); In re Monterey House, Inc., 71 B.R. 244, 249 (S.D.Tex. 1986) (PACA defendant ordered to disburse unpaid amounts held in trust, and retain remainder in segregated, interest-bearing account to be used to pay The PACA Trust Creditors' interest and attorneys' fees). Thus, until The PACA Trust Creditors are paid or sufficient funds are segregated to satisfy their PACA trust claims, Debtors are

prohibited from diverting PACA Trust Assets of using PACA trust assets to fund their reorganization.

Accordingly, as PACA trust beneficiaries, the PACA Trust Creditors are entitled to immediate payment of their PACA Trust Assets. In re Kelly Food Products, Inc., supra; In re W.L. Bradley Co., Inc., 75 B.R. 505 (Bkrtcy. E.D. Pa. 1987); and In re Fresh Approach, Inc., 51 B.R. 412 (Bkrtcy. N.D. Tex. 1985).

The relief is absolutely necessary in this case because Debtors are dissipating trust assets on a daily basis as its lenders are receiving payments from the sale of debtor's pre-petition inventory. This is directly contrary to the law. E. Armata, Inc. v. Platinum Funding Corp., supra; A&J Produce Corp. v. CIT Group/Factoring, Inc., 829 F. Supp. 651 (S.D.N.Y. 1993). Furthermore, the vague and voluntary procedures Debtors propose to use to pay PACA claims would result in frustrating the requirement for immediate payment and unlawfully would allow Debtors to use trust funds to pay a secured lenders a party which Congress has specifically designated as one which should not receive trust assets. 7 U.S.C. §499e(c)(1).

In addition, there is no justification for a delay in reviewing PACA claims, especially when there is no reserve established to pay the PACA trust creditors. Once the statement is on each invoice, then trust rights are preserved (See 7 U.S.C. §499(e)(4); and Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 206 (3d Cir. 1998) - "Under the 1995 amendment [to PACA], a seller may satisfy the notice requirement by including on its regular invoicing documents a statutory statement indicating the intent to preserve its trust rights."). It is a simple clerical function to ensure the invoice has the proper wording, and a simple accounting function to determine whether the invoice has been paid. There is no need for a drawn out review

or delay. Such a delay is contrary to the prompt payment provisions of the PACA, 7 U.S.C. §499b(4), and the goal of the statutory trust to assure prompt payment to produce suppliers.

### III. NECESSITY FOR ADEQUATE PROTECTION UNDER THE BANKRUPTCY CODE.

Congress codified the concept of "adequate protection" in 11 U.S.C. §361 in order to protect creditors from unfair treatment that might ensue from the balancing and adjustment of debts during bankruptcy. In re WRB West Associates Joint Venture, 106 B.R. 215, 218 (Bankr. D. Montana 1989)(citations omitted). Under §361, adequate protection can take the appearance of periodic cash payments equivalent to any decrease in value, an additional or replacement lien on other property, or other relief that provides the indubitable equivalent. Id. At its core, adequate protection is intended to compensate a secured creditor for any diminution in value or dissipation of collateral as a result of use, depreciation, or destruction. Id.

The PACA Creditors are PACA trust beneficiaries of the Debtors. Case law suggests that trust beneficiaries of the Debtors are entitled to seek not only turnover of trust funds under 11 U.S.C. §725, but also are entitled to demand adequate protection from the Debtor to protect their trust rights. In the case of In re Megafoods Stores, Inc., 210 B.R. 351 (Bankr. BAP 9th Cir. 1997), the Comptroller for the State of Texas attempted to collect pre-petition sales taxes, which had been collected by the Debtor, arguing that the sales taxes were statutory trust assets that the debtor had a duty to collect and maintain for the State. The Comptroller contended that the sales taxes were trust assets, they were not "property of the estate." Id. at 354. After failing to persuade the debtor to voluntarily turn over the trust assets, the Comptroller "requested

and obtained an order from the bankruptcy court for adequate protection of the alleged trust fund taxes on an interim basis." Id. at 353. Application of this principal to PACA trust beneficiaries clearly justifies the PACA Creditors immediate right to adequate protection.

As noted by the Third Circuit Court of Appeal, "the whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained pre-bankruptcy." Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994) (quoting In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987)). As set forth above, the PACA Creditors at all times operated according to the terms of PACA, and have preserved their PACA Trust rights. These steps have ensured that their "bargain" with the Debtors, specifically their right to payment from a floating trust over the Debtors' produce inventory, cash and receivables, will not be disrupted by any securtization device, any diversion of trust assets, or any bankruptcy proceeding. See generally In re Long John Silver's Restaurants, Inc., 230 B.R. 29, 32 (Bankr. D. Del. 1999) ("[A] perfected PACA Trust beneficiary is entitled to payment in full from the trust assets before payment to any other creditors, whether secured or unsecured.") (emphasis added) (citing Tom Lange Co. v. Kornblum & Co (In re Kornblum & Co.), 81 F.3d 280, 284 (2d Cir. 1996)).

Yet the Debtors have confounded the rights of the PACA Trust creditors by diverting and continuing to divert receivables, cash and other assets. As noted by the Court in In re Long John Silver's, "[t]hese [produce] suppliers are usually the least able to survive the delays and losses attendant to a bankruptcy filing by their buyers." In re Long John Silver's, 230 B.R. at 32. Moreover, while the PACA Trust beneficiaries are

deprived of their rights, other creditors benefit by the payment of their pre-petition claims and secured claims. In short, the Debtors proposed Final PACA Order provides no benefit or protection to the PACA Creditors.

The Bankruptcy Code's Sections on Adequate Protection Give this Court the Flexibility to Fashion the Proper Result. Section 363(e) of the Bankruptcy Code can remedy the Debtors' ongoing misuse of the PACA Trust Assets. Under this section, upon request of an "entity that has an interest in property used, [or] sold" by the estate, the Court "shall prohibit or condition such use [or] sale . . . as is necessary to provide adequate protection of such interest." See 11 U.S.C. §363(e) (emphasis added). Further, the safeguards of Section 363(e) extend not only to secured creditors, but to any party having an interest in property that has been used, sold or leased, such as the PACA Trust Beneficiaries. See Zagata Fabricators, Inc. v. Superior Air Prods., 893 F.2d 624, 627 (3d Cir. 1990) (applying adequate protection concepts to a lessor of nonresidential real property, where the debtor/lessee was not paying rent); In re Megafoods Stores, Inc., 210 B.R. 351, 353 (9th Cir. BAP 1997) (noting that state sales tax authorities that were unsuccessful in obtaining immediate turnover of pre-petition sales taxes had then "requested and obtained an order from the bankruptcy court for adequate protection of the alleged trust fund taxes on an interim basis."); see also 3 James F. Queenan et al., Chapter 11 Theory and Practice, at 16:20 (1994) ("Adequate protection deals with property interests and, more particularly, with the value recoverable from those interests. Principles of adequate protection therefore apply to all persons who hold interests in property held or used by the debtor, not just to those holding security interests.") (footnote omitted).

As in <u>Megafoods</u>, the PACA Creditors are beneficiaries of a statutory trust that the Debtors are required to maintain. The Debtors are required to maintain sufficient assets subject to the PACA trust to pay the claims of all PACA trust beneficiaries as they became due. See 7 C.F.R. § 46.46(d)(1). Thus, as in <u>Megafoods</u>, this Court should enter an order requiring adequate protection of the PACA trust assets.

Finally, the PACA Creditors' request for adequate protection, given the sizeable amount owed and the nature of the debt as trust property, is entirely reasonable. In seeking adequate protection, the PACA Creditors are seeking the least obtrusive means of protecting their rights as a PACA trust beneficiaries by availing themselves of the same protection afforded other qualified creditors under the Bankruptcy Code.

The PACA Creditors have established the validity, priority, and extent of their interest. It is now the Debtors' burden to demonstrate how they will adequately protect those interests. See 11 U.S.C. § 363(o). In this case, the Debtors can only satisfy their burden either by (1) paying the PACA Trust Beneficiaries and, (2) pending payment, setting aside the full $30,000,000.00 estimated to be owed to PACA trust beneficiaries in a segregated account to replace the PACA Trust Assets the Debtors have already dissipated. The propriety of this remedy is demonstrated by the Order issued by the United States Bankruptcy Court for the District of Delaware in the case of <u>In re Fleming Companies, Inc., et al</u>, Case No. 03-10945 (MFW), wherein the Court granted the same relief that the PACA trust creditors are seeking herein, and required the Debtor to set aside $26 million for the benefit of the Debtor's PACA creditors. A copy of that Order is attached hereto as Exhibit "A".

Anything less than an actual segregation of PACA trust assets would contravene the statutory and case law on this issue, and will frustrate the Congress' intent that

PACA beneficiaries and their trust rights remain free from the burdens and delays inherent in bankruptcy. Failure to do so will likely lead to the PACA Creditors being left with no PACA Trust Assets and no means of securing payment.

## CONCLUSION

Granting the Debtors' motion in the form requested would be contrary to the PACA trust provisions. It would result in an unjustifiable delay of payment and in a diversion of trust assets so that it is unlikely that the PACA trust creditors will be paid from the PACA trust assets. For these reasons, the PACA trust creditors request the entry of an Order which requires timely payment in accord with the statute and the segregation of trust assets until all pre-petition PACA trust claims are paid in full.

Respectfully submitted,

MEUERS LAW FIRM, P.L.         McCARRON & DIESS

By: _____   By: _____
Lawrence H. Meuers            Louis W. Diess, III
5395 Park Central Court       4900 Massachusetts Avenue, N.W.
Naples, Florida 34109         Suite 310
(239) 513-9191                Washington, D.C. 20016
(239) 513-9677 – facsimile    (202) 364-0400
                              (202) 364-2731
Attorneys for the Duda Group of   Attorneys for the Burch Equipment Group of
PACA Creditors                PACA Creditors

and

LAW OFFICES OF BRUCE LEVINSON

By: _____
Bruce Levinson (BL0749)

747 Third Avenue, 4th Floor
New York, New York 10017-2803
(212) 750-9898

Attorneys for PACA Trust Creditors