PATRICIA RYNN
PRISCILLA W. GRANNIS
RYNN & JANOWSKY, LLP
4100 Newport Place Drive, Suite 700
Newport Beach, CA  92660
Tel:  (949) 752-2911
Fax: (949) 752-0953

Attorneys For Creditors
D.L.J. PRODUCE, INC., et al.

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **WINN DIXIE STORES, INC.,** *et al.*, | : | |
| | : | |
| | : | **Case No.:  05-11063 (RDD)** |
| **Debtors.** | : | |
| | : | |
| | : | |
| | : | |

**Objection Deadline: March 10, 2005 at 4:00 p.m. Prevailing Eastern Time**
**Hearing Date: March 15, 2005 at 10:00 a.m. Prevailing Eastern Time**

## OPPOSITION TO DEBTORS' MOTION FOR AUTHORITY TO PAY PRE-PETITION PACA CLAIMS, SUPPLEMENTAL AUTHORITIES IN SUPPORT OF OBJECTION AND JOINDER TO OPPOSITION OF CERTAIN OTHER PACA TRUST CREDITORS TO DEBTORS' MOTION

COME NOW D.L.J. Produce, Inc.; Church Brothers, LLC; David Oppenheimer &

Associates; Manny Lawrence Sales, Inc.; Chubs Peanuts; Pero Packing and Sales, Inc.;

The Pictsweet Company; Powerhouse Produce, LLC; Schoenmann Produce Co., Inc.;

Spice World, Inc.; Unifrutti of America, Inc.; West Pak Avocado, Inc.; Wm. G. Roe &

Sons, Inc.; C. H. Robinson Company; Del Monte Fresh Produce, NA. Inc.; Lamb-

Weston, Inc.; Avomex, Inc.; MarBran USA; Sunkist Growers, Inc.; Rosemont Farms, Inc., Mastronardi Produce Ltd; Leasa Industries, Inc.; Cavendish Farms Operations, Inc.; Flavor-Pic Tomato Co.; Yakima-Roche Fruit Sales, LLC; Gulfstream Tomato Growers, Inc.; Ayco Farms, Inc.; Coast Citrus Distributors, Inc.; and Pioneer Growers Cooperative; trust creditors with aggregate PACA trust claims in excess of $16.1 Million under the Perishable Agricultural Commodities Act ("PACA") [7 U.S.C. §499e] (hereinafter referred to as "PACA Trust Creditors"), by and through their undersigned counsel, hereby join in the Objection to the Debtors' Motion to Pay Pre-petition Claims Under the Perishable Agricultural Commodities Act ("PACA") and the Packers and Stockyard Act filed by Burch Equipment, LLC, *et al.*

In addition to joining in the Objection filed by Burch Equipment, LLC, *et al.*, the PACA Trust Creditors herein respectfully submit the following additional arguments and authorities in opposition to the Debtors' Motion:

## I.

## INTRODUCTION

The PACA Trust Creditors represented by the undersigned attorneys supplied Debtors, pre-petition, with wholesale quantities of fresh fruits and vegetables ("Produce") worth in excess of $16.1 Million, all of which qualify for protection under the provisions of the PACA.

The Debtors have not paid the PACA Trust creditors for the Produce purchased and delivered prior to the Debtors filing for bankruptcy protection. Instead of complying with their fiduciary duty to ensure prompt payment to suppliers of Produce, the Debtors

have diverted or are in the process of diverting PACA trust assets to pre- and post-petition secured lenders and other third parties in violation of PACA.

The Debtors filed a Voluntary Petition for Relief under Chapter 11, Title 11, United States Code, 11 U.S.C. § 101, *et seq.*, (the "Bankruptcy Code"). On February 22, 2005, the Debtors submitted a motion to this Court for an order authorizing but not requiring payment of PACA trust claims. The Debtors fully recognize the fact that the PACA Trust Creditors are entitled to prompt payment. The Debtors admit that the PACA trust assets are not part of the Debtors' estate. In spite of this, the Debtors have failed to comply with the prompt pay provisions of PACA and have failed to pay the PACA Trust Creditors. In addition, the Debtors have failed to provide the PACA Trust Creditors with adequate assurance or other security that would guarantee payment of the PACA Trust Creditors' claims. Thus, the Debtors' motion should be granted only to the extent that it requires prompt payment of pre-petition PACA claims. Further, to ensure that the Debtors fulfill their duties as statutory trustees, the PACA Trust Creditors request that the Debtors be required to segregate sufficient monies to pay all pre-petition PACA trust claims in full.

## II.

**THE PACA TRUST CREDITORS PERFECTED THEIR RIGHT TO PACA TRUST BENEFITS BY ISSUING INVOICES TO THE DEBTORS THAT CONTAIN THE STATUTORY LANGUAGE NECESSARY TO PRESERVE PACA TRUST RIGHTS IN COMPLIANCE WITH 7 U.S.C. §499e(c)(4)**

As PACA licensees, the PACA Trust Creditors are entitled to preserve PACA trust rights by using ordinary and usual invoice statements to provide notice of their intent to

-3-

preserve its trust benefits.  7 U.S.C. §499e(c)(4).[1]  Specifically, a licensee who includes the following statement on the face of its invoices will have preserved its PACA trust rights:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. 7 U.S.C. §499e(c)(4).

By including the statutory language on their invoices to the Debtors or by sending the Debtors a separate notice of intent, the PACA Trust Creditors have taken all steps necessary to preserve their rights as PACA trust creditors for all transactions which are the subject of those invoices.  The Debtors already have copies of all of these invoices, but additional copies can be provided to counsel for the Debtors for verification purposes, if necessary.

## III.

### THE PACA ESTABLISHES A TRUST FOR THE BENEFIT OF ALL PACA TRUST BENEFICIARIES

The PACA provides that the PACA Trust is created by operation of law upon the delivery of perishable agricultural commodities.   In enacting the PACA Trust Amendment, Congress recognized the importance of protecting the seller's perishable agricultural commodities.  In particular, the PACA states as follows:

> It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which...dealers...who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or

---

[1]  Certain of the PACA Trust Creditors preserved their PACA trust rights by timely sending the Debtors a separate Notice of Intent to Preserve Trust Rights as set forth in 7 U.S.C. §499e(c)(3).

> *otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, **and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.*** 7 U.S.C. §499e(c)(1) (Supp. 1986). (Emphasis added).

Upon the buyer's receipt of the produce, a PACA trust is created in favor of the unpaid seller on all perishable agricultural commodities, all inventories of food or other products derived from perishable agricultural commodities as well as any receivables or proceeds from the sale of such commodities or products. 7 U.S.C. §499e(c)(2) (Supp. 1986). Accordingly, as soon as the Debtors herein received the produce sold by the PACA Trust Creditors, the PACA Trust was created by operation of law.

## IV.

## AS A MATTER OF LAW, PACA TRUST ASSETS ARE NOT PART OF THE BANKRUPTCY ESTATE, BUT RATHER, RIGHTFULLY BELONG TO THE PACA TRUST BENEFICIARIES AND MUST BE IMMEDIATELY SEGREGATED

PACA regulations provide that if a buyer or receiver declares bankruptcy, PACA trust assets are **not to be considered part of the estate** to be distributed to other creditors or sold or transferred unless all trust beneficiaries have been paid. *See, e.g.,* 49 Fed. Reg. at 45738, which unequivocally states:

> If a buyer or receiver declares bankruptcy, makes an assignment for the benefit of creditors, declares its intentions to sell under the bulk sales law or otherwise terminates its business, **trust assets are not to be considered part of the estate to be distributed to other creditors unless all trust beneficiaries have been paid**. (Emphasis added.)

As such, PACA trust assets are excluded from the bankruptcy estate as a matter of law. *See also, e.g., In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir.1996); Stowe *Potato Sales, Inc. v. Terry's, Inc.*, 224 B.R. 329 (W.D. Va. 1998). Because PACA trust assets are not property of the bankrupt's estate, those assets must be immediately set aside for distribution and turnover to the trust beneficiaries. *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 32 (Bkrtcy. D.Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bkrtcy. C.D. Ill. 1997); *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Megafoods Stores, Inc.*, 163 F.3d. 1063 (9th Cir. 1998); *In re Carolina Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1988); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bkrtcy. N.D. Texas 1985); *In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir. 1991).

Particularly instructive is the analysis of the court in *Fresh Approach, supra*, which reasoned:

> It is clear from the terms of the PACA amendments and from the supporting legislative history that Congress intended to create a priority status for unpaid produce claimants ***priming even the administrative claims which normally stand first in line in a bankruptcy distribution***.

*Id*. at 420 (emphasis added).

Based on this analysis, the *Fresh Approach* court concluded that the PACA trust creditor was entitled to <u>immediate</u> payment from the debtor. Likewise, *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bkrtcy. E.D. Pa. 1987), wherein the bankruptcy court concluded that the funds which were subject to the PACA trust did not become property of the estate when the debtor filed a petition and that the unpaid produce seller was unquestionably entitled to <u>immediate payment of such funds</u>. *See also, In re Kelly Food Products, Inc., supra*.

By not segregating trust assets and leaving PACA Trust Creditors unpaid, Debtors are in violation of 7 U.S.C. §499e *et seq. See, e.g., In re Nagelberg & Co., Inc.*, 84 B.R.

19 (Bkrtcy. S.D.N.Y. 1988), which confirms that dissipation of PACA trust assets results from *any* act which *could* result in the diversion of such assets or which *could* prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions. *See also*, 7 C.F.R. §46.46 (b)(2). The Debtors' proposed relief actually does prejudice and impair the ability of the PACA Trust Creditors to recover money owed in connection with their sales transactions because the Debtors' proposed order merely authorized the Debtors to pay PACA trust claims, but does not require them to do so and ties up PACA trust assets, which are not property of the Debtors' estate, for indefinite of time. Further, the Debtors' refusal to pay immediately valid PACA trust claims is a violation of the Debtors' duty to maintain sufficient PACA trust assets that are freely available to satisfy unpaid Produce suppliers. 7 C.F.R. §46.46(d)(1). *See also, C.H. Robinson v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001).

The case of *JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75 (2d Cir. 1990), where the court denied segregation, is distinguishable. *JSG* involved the action of one unpaid creditor against a solvent purchaser which was not in bankruptcy and there was no proven dissipation. *Id.* at 80. The court in *JSG* acknowledged that "the use of a trust under [PACA] was aimed at remedying problems created by buyers' bankruptcies," *id.* at 77, and that a court could employ its traditional equity powers to enjoin the dissipation of PACA trust assets. *Id.* at 78. In the instant case, where the bankruptcy filing admits of the Debtors' insolvency, the automatic stay constitutes dissipation under the PACA regulations, harming all of the Debtors' unpaid PACA trust creditors, and the Debtors propose the indefinite deferment of paying PACA trust claims, this Court should follow *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990). In *Frio Ice*, the Eleventh Circuit Court of Appeals directed the district court to employ its equitable powers to segregate PACA trust funds for the benefit of all unpaid sellers. *Id.* at 159. Segregation often may be the only means by which a federal court can prevent dissipation. *Id.* at 159,

citing H. Rep. No. 543, 98th Cong., 2d Sess. 4, reprinted in 1984 U.S. Code Cong. & Admin. News 405, 407.

Thus, unless Debtors are required to segregate sufficient funds to satisfy all PACA claims, (for which Debtors have made no provision whatsoever in their PACA motion), Debtors shall have succeeded in using PACA trust assets to operate during reorganization. PACA strictly prohibits such diversion of trust funds. PACA assets are not part of the bankruptcy estate and should be beyond the reach of Debtors.

## V.

### THERE IS NO TRACING REQUIREMENT FOR THE PACA TRUST

The PACA Trust does not require tracing and therefore trust assets are to be preserved as a non-segregated "floating trust." In addition, the PACA acknowledges that commingling is contemplated. If a dispute arises regarding the identification of the trust assets, the Debtors have the burden to establish what, if any, assets are *not* subject to the PACA Trust. The court in the *In re Fresh Approach*, 51 B.R. 412, 422 (Bkrtcy. N.D. Texas 1985) case, ["*Fresh Approach II*"], a seminal judicial decision analyzing the impact of the statutory trust provisions, clarified the non-segregated, floating character of the PACA trust.

In accordance with legislative directives, the court in *Fresh Approach II* based its decision upon the Packers and Stockyards Act, 1921 [7 U.S.C. §181, *et seq.*] (hereinafter "PSA"), the federal law after which the PACA was modeled), and its subsequent line of cases, concluding that the trust created by the PACA was intended to be a "floating non-segregated statutory trust," to which claimants need not trace funds. *See, In re Monterey House*, 71 B.R. 244, 247 (Bkrtcy. S.D. Texas 1986). Furthermore, the court in *First State Bank v. Gotham Provision Co. (In re Gotham Provision Co.)*, 699 F.2d 1000, 1011 (5th Cir. 1982) (hereinafter "*Gotham*"), in holding that the PSA established a floating trust, stated:

> *[W]here trust funds are commingled with funds not subject to the trust, a lien on the entire commingled fund exists for the benefit of the beneficiaries of the trust.*

The *Gotham* court further held that when commingling occurs, the only burden on the unpaid sellers is to prove the balance due to them and the existence of a floating pool of commingled inventories of livestock products, accounts receivable), and proceeds derived from cash and credit sales. *Id.* The court in *Gotham* clearly placed the burden on the bankruptcy trustee (and the lending institution) to show that the receivables were *not* subject to the PACA trust. *Id.* at 1012. *In re Hancock-Nelson Mercantile, Inc.*, 95 B.R. 982 (Bkrtcy. N.D. Minn. 1989); *In re W.L. Bradley Company, Inc.*, 75 B.R. 505 (E.D. Pa. 1987).

*In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996) is particularly instructive because of its analysis of the issue of what property makes up the corpus of the PACA Trust. The *Kornblum* court rejected the debtor's contention that the only assets that are held in trust for a particular PACA beneficiary are the specific produce or proceeds supplied by that beneficiary. The court accepted the beneficiaries' argument that the *res* of the PACA Trust is not so limited and that "a single PACA trust exists for the benefit of all of the sellers to a produce debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full."

The *Kornblum* court set forth a three-prong test for analyzing whether specific property is part of the PACA Trust. In order to prove that the property **is not** part of the PACA Trust, the **debtor has the burden** to establish either that (1) no PACA trust existed when the specific property was purchased; (2) even though a PACA Trust existed at that time, the property was not purchased with trust assets; or (3) although a PACA Trust existed when the property was purchased and the property was purchased with trust assets, the debtor thereafter paid all unpaid sellers in full prior to the transactions involving the creditors, thereby terminating the trust.

Moreover, in *In re Atlantic Tropical Market Corporation*, 118 B.R. 139 (Bkrtcy. S.D. Fla. 1990), the court held that the PACA trust fund is established upon the commencement of the purchaser's produce related business.   The court held that any business assets purchased by one who is in the business of buying and selling produce will be presumed to have been purchased with PACA trust assets, and any such assets may thus be viewed as collateral until the PACA trust claim has been paid in full.   *See also, Sanzone-Palmisano Company v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010 (6th Cir. 1993), cited with approval in *In Re Kornblum & Co., supra* at 285.

Accordingly, the PACA Trust Creditors are not required to trace trust funds.  All of the Debtors' assets are presumptively deemed to be subject to the PACA trust and remain so unless the Debtors prove otherwise.  *In re Fresh Approach, supra.*

## VI.

### THE PACA TRUST CLAIMS ARE SUPERIOR TO AND TAKE PRIORITY OVER ALL OTHER SECURED OR UNSECURED CLAIMS, INCLUDING ADMINISTRATIVE CLAIMS

The agriculture industry is unique because of the short life span of agriculture products and thus Congress has recognized that the industry itself must be protected by granting priority status to sellers of produce over other lenders who take liens on accounts, inventory and the proceeds thereof.  [7 U.S.C. §499 e(c)(1)] (Supp. 1986). Thus, if payments are not made to produce suppliers, the plain wording of the PACA compels this Court to give the PACA Trust Creditors' trust claims priority over all other secured or unsecured claims against Debtors.  *See, In re Monterey House, Inc., supra*, at 249; *accord, In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir. 1991); *see also, In re Prange Foods Corp.*, 63 B.R. 211 (Bkrtcy. W.D. Mich. 1986); *Fresh Approach II, supra*, at p. 420-422.

Accordingly, unpaid PACA Trust Creditors take priority over all other creditors, secured and unsecured, on the produce buyer's assets to the full extent of their claim.

*Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F.3d 1 (Mass. 1999). *See also*, *C.H. Robinson Company v. Alanco Corp.*, 239 F.3d 483 (2d Cir. 2001) which held:

> *Allowing a ... PACA trustee to pay any other creditors with, PACA funds before the Seller is paid in full would frustrate [PACA's] purpose, and would be contrary to the language of PACA and its accompanying regulations. PACA trust beneficiaries are entitled to full payment **before** trustees may lawfully use trust funds to pay any other creditors.*

*Id.* at 488 (emphasis added).

## VII.

## THE DEBTORS' PROPOSED ORDER CONTRAVENES THE LETTER AS WELL AS THE SPIRIT OF THE PACA STATUTE

Debtors' proposed Order gives Debtors the authority, but not the duty to pay PACA trust claims. Additionally, it provides Debtor an unlimited amount of time to resolve PACA claims while simultaneously barring the PACA trust creditors from filing actions to enforce their rights against Debtors for immediate turnover of trust funds not part of the estate. Debtors' proposed Order would have a devastating affect on the PACA Trust Creditors who anticipated receiving proceeds from the sale of produce to Debtors when due. The PACA Trust Creditors rely on the prompt payment of products sold to their customers to effectively and adequately manage their current payables and receivables schedules, monitor cash flow, make informed business decisions and, significantly, to purchase their own produce and pay their own PACA trust creditors. 7 U.S.C. § 499(b)(4) (failure to make prompt payment and to preserve the trust are violations of PACA)..

The failure of Debtors to preserve the PACA trust assets and to pay the amounts due their PACA creditors has jeopardized, and will continue to jeopardize, the ability of the PACA Trust Creditors to properly operate their business, to make informed business decisions to purchase new product, and to pay some of their own suppliers, many of whom are themselves PACA trust creditors. This is precisely the type of "domino effect" that the PACA and its trust provisions were enacted to prevent.

The Debtors' Motion fails to include a payment date certain, and fails to provide for a segregation of sufficient PACA trust assets to satisfy all PACA trust creditors. This proposal flies in the face of the PACA statute, and thwarts the legislative intent underlying the PACA, which has been one of the "most successful regulatory programs" originally enacted by Congress in 1930. *Birkenfield v. U.S.,* 369 F.2d 491, 494 (3d Cir. 1966).

The PACA review process should be minimal. The Debtors need only review the outstanding produce invoices to verify that the PACA trust language appears thereon. This is not a lengthy or complicated undertaking, and it should be capable of being completed in a matter of days. In the meantime, the Debtors should be immediately required to sequester sufficient assets to satisfy their pre-petition PACA debt because those assets are not property belonging to the Debtors. When the Debtors have completed their PACA claim review, the Debtors should be required to immediately pay all PACA claims.

Unless the foregoing modifications are incorporated into the Debtors' proposed PACA Order, the Order as drafted would violate the PACA and have a disastrous effect not only on the PACA Trust Creditors represented by the undersigned, but also on the entire claim of aggregated growers, brokers and dealers and handlers within the produce industry.

**VIII.**

**CONCLUSION**

For the foregoing reasons, the PACA trust creditors object to the entry of the Debtors' proposed Order as currently drafted because it runs afoul of PACA and thwarts PACA's important objectives.    In order to comply with PACA, the proposed Order should be amended to require Debtors to immediately set aside at least $30,000,000.00 (which is the Debtors' estimated dollar amount of all PACA creditors' claims) into a segregated account, and to pay the pre-petition PACA trust claims within ten (10) days.

A proposed Order Requiring Segregation of Trust Funds to Cover Certain PACA Claims and Authorizing Procedure for Reconciliation and Payment of Valid Pre-Petition Claims Arising Under the Perishable Agricultural Commodities Act is attached hereto as Exhibit A.

DATED: March 10, 2005

//

//

//

RYNN & JANOWSKY, LLP

By: ___/s/ Priscilla W. Grannis_____
Patricia A. Rynn, Esq.
Priscilla W. Grannis, Esq.
4100 Newport Place Drive, Suite 700
Newport Beach, CA 9260
Telephone: (949) 752-2911
Facsimile: (949) 752-0953
Pat@rjlaw.com
Priscilla@rjlaw.com

Attorneys for D.L.J. Produce, Inc.;
Church Brothers, LLC; David Oppenheimer
& Associates; Manny Lawrence Sales, Inc.;
Chubs Peanuts; Pero Packing and Sales,
Inc.; The Pictsweet Company; Powerhouse
Produce, LLC; Schoemann Produce Co.,
Inc.; Spice World, Inc.; Unifrutti of
America, Inc.; West Pak Avocado, Inc.;
Wm. G. Roe & Sons, Inc.

MARTYN & ASSOCIATES

By: ___/s/ Mark A. Amendola_____
Mark A. Amendola, Esq.
820 Superior Ave., NW, 10th Floor
Cleveland, OH
Telephone: (216) 861-4700
Facsimile: (216) 861-4703
Mamendola@martynlawfirm.com

Attorneys for C. H. Robinson Company;
Del Monte Fresh Produce, NA. Inc.;
Lamb-Weston, Inc.; Avomex, Inc.;
MarBran USA

WHITEMAN, BANKES & CHEBOT,
LLC

By: ___/s/ Jeffrey M. Chebot_____
Jeffrey M. Chebot, Esq.
325 Chestnut Street, Suite 1300
Philadelphia, PA 19106
Telephone: (215) 829-0015
Facsimile: (215) 829-0059
Jchebot@wbc-lawyers.com

Attorneys for Sunkist Growers, Inc.

ROJAS SANTOS STOKES & GARCIA,
LLP

By: ___/s/ Craig A. Stokes_____
Craig A. Stokes, Esq.
3330 Oakwell Ct., Suite 225
San Antonio, Texas 78218
Telephone: (210) 804 0011
Facsimile: (210) 822 2595
Cstokes@rssglaw.com

Attorneys for Rosemont Farms, Inc.,
Mastronardi Produce Ltd, and Leasa
Industries, Inc.

KEATON & ASSOCIATES, P.C.

By: ___/s/ Mary E. Gardner_____
Mary E. Gardner, Esq.
1278 W. Northwest Highway, Suite 903
Palatine, Illinois 60067
Tel: (847) 934-6500
Gardner@pacatrust.com

and

PODVEY, MEANOR, CATENACCI,
HILDNER, COCOZIELLO &
CHATTMAN, P.C

By:  /s/ David A. Adelman
Thomas G. Aljian, Jr., Esq.
Robert Scheinbaum
1 Riverfront Plaza, Suite 800
Newark, New Jersey 07102
Telephone:  (973) 623-1000
Facsimile:  (973) 623- 9131

Attorneys for Cavendish Farms Operations,
Inc. Flavor-Pic Tomato Co.
Yakima-Roche Fruit Sales, LLC
Gulfstream Tomato Growers, Inc.


LAW OFFICE OF ROBERT E.
GOLDMAN

By:  /s/ Robert E. Goldman
Robert E. Goldman, Esq.
1 East Broward Blvd., Ste. 700
Ft. Lauderdale, FL  33301
Telephone:  (954) 745-7450
Facsimile:  (954) 745-7460
Robert@Goldmanlaw.com

Attorney for Ayco Farms, Inc. and
Coast Citrus Distributors, Inc.


ADELMAN LAW OFFICES, P.C.

By:  /s/ David A. Adelman
David A. Adelman, Esq.
1320 Tower Road, Suite 114
Schaumburg, Illinois 60173
Telephone:  (847) 301-4341
Facsimile:  (847) 301-4342
Adelman@pacaenforcer.com

Attorney for Pioneer Growers Cooperative