Hearing Date and Time: March 15, 2005 at 10:00 a.m.
Objection Deadline: March 11, 2005 at 4:00 p.m.

KATTEN MUCHIN ZAVIS ROSENMAN
Thomas J. Leanse (TL-8802)
Dustin P. Branch (DB-3553)
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

-and-

Merritt A. Pardini (MP-3437)
575 Madison Ave
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

Attorneys for The Prudential Insurance Company of America

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
:
In re:                                                  :    Chapter 11
:
WINN-DIXIE STORES, INC., et al.,                        :    Case No. 05-11063 (RDD)
:
        Debtors.                                        :    (Jointly Administered)
:
------------------------------------------------------- x

**LIMITED OBJECTION OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA TO MOTION OF THE DEBTORS FOR A FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364(C) AND 364(D) OF THE BANKRUPTCY CODE AND RULES 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING ON A SUPERPRIORITY PRIMING LIEN BASIS AND MODIFYING THE AUTOMATIC STAY, (II) AUTHORIZING DEBTORS TO USE PRE-PETITION SECURED LENDERS' CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, AND (III) AUTHORIZING THE REPAYMENT IN FULL OF ALL CLAIMS OF DEBTORS' PRE-PETITION SECURED LENDERS**

The Prudential Insurance Company of America (the "Landlord") hereby files this Limited Objection to the Motion Of The Debtors For A Final Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) Of The Bankruptcy Code And Rules 4001 And 9014 Of The Federal Rules Of Bankruptcy Procedure (I) Authorizing Debtors To Obtain Secured Post-Petition

- 1 -

84016690_1

Financing On A Superpriority Priming Lien Basis And Modifying The Automatic Stay, (II) Authorizing Debtors To Use Pre-Petition Secured Lenders' Cash Collateral And Granting Adequate Protection, And (III) Authorizing The Repayment In Full Of All Claims Of Debtors' Pre-Petition Secured Lenders (the "Limited Objection"), and respectfully represent as follows:

## I.  INTRODUCTION

The Debtors' proposal to grant DIP Lenders a lien on nonresidential real property leases – where the lease specifically prohibits such a lien – improperly compromises Bankruptcy Code protections granted in favor of shopping centers landlords. Debtors' proposal to vitiate these protections violates the lease, state law regulations, and the Bankruptcy Code, and exposes Landlord to unnecessary risks to the integrity of its shopping center environment, its ability to market its property, and to comply with its own financing and investment covenants. This Court already authorized a carve-out of such leases from the DIP Lenders' collateral in approving the Debtors' interim request for post-petition financing. That notwithstanding, the Debtors and DIP Lenders seek to deny Landlord this reasonable carve-out in the proposed final financing order, and therefore, Landlord brings this Limited Objection to request that the Court deny any request to encumber or otherwise pledge the Lease as collateral.

## II.  BACKGROUND FACTS

1.  Winn-Dixie Stores, Inc. and certain affiliated parties (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code on February 21, 2005. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.  Landlord is the managing agent of the Lake City Shopping Center, located in Lake City, Florida, wherein the Debtors operate a supermarket (the "Premises") pursuant to an unexpired lease of nonresidential real property (the "Lease"). The Debtors remain responsible for the payment of all rent and related charges accruing under the Lease.

84016690_1

3. The Lease is a "lease of real property in a shopping center" as that term is used in 11 U.S.C. § 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3rd Cir. 1990).

4. On February 21, 2005, Debtors filed the Emergency Motion Pursuant To 11 U.S.C. § 105, 361, 362, 363 and 364 For Interim And Financing Orders (I) Authorizing Debtors To Obtain Post-Petition Financing And Utilize Cash Collateral, (II) Granting Adequate Protection To Pre-Petition Lenders, (III) Modifying The Automatic Stay, And (IV) Scheduling A Final Hearing Pursuant To Bankruptcy rules 4001(b) And (c) (the "Financing Motion"). The Financing Motion seeks post-petition secured loans and other financial accommodations from Wachovia Bank National Association, as Administrative Agent and Collateral Agent for itself and other financial institutions (collectively, the "DIP Lenders").

5. At the hearing on various first day motions, the Bankruptcy Court entered an order approving the Financing Motion on an interim basis (the "Interim Order"). At that hearing, the proposed Interim Order was modified to provide that the DIP Lenders did not have a lien on real property leases, but that the lien only extended to the proceeds of those leases. Landlord's Lease was included in that carve-out. Unfortunately, the Debtors and the DIP Lenders have not consented to preserve this carve-out in the requested final order.

6. Landlord opposes the request to encumber or pledge the Lease. DIP Lenders are not debtors and are not parties to the Lease. The Lease specifically prohibits any pledge of the Lease, and such a lien is unnecessary and does not justify the prejudice that will inure to the Landlord by sacrificing the bargained-for, and Congressionally-protected rights of the Landlord under the Lease. The Bankruptcy Code prohibits such abuse of the rights of Landlord, and the Court should deny the Debtors' request for financing unless and until it is modified as set forth below. To the extent the Debtors and the DIP Lenders agree to limit the lien to only the proceeds of the Lease, Landlord will withdraw this Limited Objection.

### III. ARGUMENT

**A. The Debtors seek authority to grant a lien in the Lease in direct violation of specific terms in the Lease.**

7. The Debtors seek to encumber substantially all Debtors' assets, including the Lease. In the proposed Final Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) Of The Bankruptcy Code And Rules 4001 And 9014 Of The Federal Rules Of Bankruptcy Procedure (I) Authorizing Debtors To Obtain Secured Post-Petition Financing On A Superpriority Priming Lien Basis And Modifying The Automatic Stay, (II) Authorizing Debtors To Use Pre-Petition Secured Lenders' Cash Collateral And Granting Adequate Protection, And (III) Authorizing The Repayment In Full Of All Claims Of Debtors' Pre-Petition Secured Lenders (the "Final Order"), the Debtors seek specific authority to nullify any lease provision that "restricts, limits or impairs in any way" the Debtors' ability to grant a security interest in any of their assets. See Final Order at ¶ 11.

8. The Debtor's request is excessive and contrary to the terms of the Lease and the protections embodied in the Bankruptcy Code. The Lease contains specific and bargained-for language that provides that the "Tenant shall not mortgage or pledge this Lease, and any such mortgage or pledge made in violation of this Paragraph shall be void." See Exhibit A at ¶ 16.[1]

9. The request to grant a security interest in the Lease would also require this Court to ignore the specific prohibition on the pledge of the Lease that the parties negotiated at arms length. Provisions that restrict the ability to encumber leases are critical to a landlord's ability to maintain the integrity of its shopping center environment, as well as to a landlord's ability comply with its own financing and investment covenants. Finally, such an imposed lien detracts from the marketability of the landlord's property. A restriction on the Debtors' ability to pledge the Lease is not an anti-assignment provision that can be viewed as contrary to bankruptcy policy. It is, rather, a reasonable restriction that allows a landlord to preserve clear title to its

---

[1] Due to the length of the Lease, Landlord has provided excerpted portions of the Lease as Exhibit A hereto, which is incorporated herein by this reference. Landlord will have complete copies of the Lease available for the Court and interested parties at any hearing on this matter.

own assets. Debtors cite no authority, and Landlord submits that no authority exists, to legitimize their wholesale attempt to deny Landlord's state law contractual rights, and the protections granted through the Bankruptcy Code. The Court should deny the request to encumber the Lease.

**B.     The Bankruptcy Code protects shopping center lease terms such as the provisions that prohibit encumbering the Lease.**

i.     *The proposed liens are a de facto assignment and DIP Lenders cannot qualify as an assignee under 365(b)(3).*

10.    Given the sweeping remedies granted to the DIP Lenders under the Final Order and related financing documents, in the event that the Debtors default under their obligations to the DIP Lenders, the proposed lien results in a de facto assignment of the Lease to the DIP Lenders. The Lease, however, is a lease for non-residential real property in shopping center, and the Debtors must comply with the heightened protections granted to shopping centers landlords in connection with any such transfer of an interest in the Lease. Therefore, section 365(b)(3) (applicable to an assignment of a lease through § 365(f)) applies, and any assignment of the Lease requires compliance with the special adequate assurance of future performance protections set forth in § 365(b)(3)(A) - (D). 11 U.S.C. § 365(b)(3). Debtors cite to no authority that permits an assignment (under the guise of pledging the Lease as collateral), independent of the adequate assurance safeguards Congress granted landlords.

11.    An assignment of a shopping center lease requires the assignee to comply with all lease provisions, including provisions related to permitted uses. See In re Ames Department Stores, Inc., 121 B.R. 160, 165 (Bankr. S.D.N.Y. 1990) (The purpose of the 1984 amendments to § 365 was to ensure the lessor and other tenants maintain the benefit of their original bargain with the debtor); see also In re Antwerp Diamond, Inc., 138 B.R. 865, 868 (Bankr. N.D. Ohio 1992)(denying assignee of shopping mall lease its request to a conduct going-out-of-business sale on premises where shopping mall leases specifically prohibited going out of business sales). As de facto assignees, § 365(b)(3)(C) requires the DIP Lenders provide adequate assurance of future performance, including that such assignment be subject to all provisions of said Lease.

See In re Joshua Slocum Ltd., 922 F.2d 1081, 1091 (3rd Cir. 1990); see also In re Sun TV and Appliances, Inc., 234 B.R. 356, 371 (Bankr. D. Del. 1999). Under the proposed financing request, DIP Lenders do not propose to (and indeed cannot) provide such adequate assurance of future performance.

12. The DIP Lenders are not in the business of operating grocery stores, and they likely would not assert that they can comply with the material operating provisions contained in the Lease. This Court must not allow the Debtors to jettison the anti-pledging restrictions of the Lease, while enjoying the benefits of continued use of the properties during the course of their reorganization efforts. The Lease's provisions controlling the transfer of an interest in the Lease are material, negotiated at arms-length, and enforceable under the Bankruptcy Code. The Bankruptcy Court should deny the request for financing unless the Final Order is amended to provide that the DIP Lenders will not receive a security interest in the Lease.

ii. *The DIP Lenders do not need a security interest in the Lease to protect their interests.*

13. Prior to filing for bankruptcy protection, the Debtors did not encumber the Lease because such a lien is prohibited by the Lease. There is no legitimate reason to now grant the DIP Lenders (a non-debtor party) a lien that violates the Lease where no such right existed under state law and no such liens existed pre-petition.

14. Moreover, DIP Lenders do not need a security interest in the Lease in order to liquidate their collateral should the Debtors default. Their rights to realize upon the collateral are preserved through both the Bankruptcy Court and state law remedies, none of which contemplate granting DIP Lenders a lien or other possessory right in shopping center space.

15. The Premises is owned by the Landlord, not the Debtors. DIP Lenders have no right or need to force Landlord to relinquish control over those Premises to DIP Lenders or accept a cloud to the title to the Lease. The value in the Lease to the Debtors is that which may be realized from its proceeds in a sale of the leasehold interest. The granting of a security

84016690_1

interest in the Lease – even if it were not specifically prohibited by the Lease – serves no economic purpose, and should not be a component of any post-petition financing.

16. To adequately protect Landlord, the Final Order must limit the pledging to the proceeds of the Debtors' interest in the Lease only.

C. **To the extent that the DIP Lenders may exercise any remedies with respect to the Collateral at the Premises, the Final Order must limit the extent of remedies to comport with the protections provided to Landlord in the Lease.**

17. The Final Order and other financing documents provide DIP Lenders with sweeping relief from the automatic stay to proceed against Debtors' collateral in the event of default upon five (5) business days' notice. The proposed relief would allow DIP Lenders to take control of the Premises irrespective of contrary provisions in the Lease, or in state or local laws.

18. The remedies contemplated by the Final Order contain several provisions that offend the rights of Landlord. Upon the occurrence of an Event of Default, the Final Order permits DIP Lenders to occupy and use Debtors' property. The request for authority to enter onto shopping center property for unspecified purposes, and for an indeterminate amount of time, exposes the Landlord and the shopping center to unnecessary prejudice. Any ability to enter onto the Premises should be limited to the ability to collect and remove collateral, must be by written agreement on terms acceptable to the Landlord, and such occupancy should not exceed thirty (30) days.

19. As stated above, the Debtors do not own the Premises and the Lease explicitly prohibits this attempted usurpation of Landlord's property rights. Landlord provides Debtors a right to occupy certain space in that shopping center which is specifically circumscribed by the terms of the Lease. Debtors possess no right to use the Premises beyond those rights granted within the Lease. The DIP Lenders are not a party to the Lease and have no possessory right to the Premises. To the extent that a liquidation of the collateral would include any attempt to conduct any sale at the Premises, such use or sales are governed by the Lease, and the Debtors and any assignee (including a foreclosing lender) are bound by the terms of the Lease. See 11

U.S.C. §§ 365(b)(3) and (d)(3). Only the Bankruptcy Court can authorize the Debtors to conduct such sale, and it may do so only after carefully weighing the competing interests of the landlords and the debtor-tenant through a separate motion by the Debtors. See, e.g., In re Ames Department Stores, Inc., 136 B.R. 357 (Bankr. S.D.N.Y. 1992). The wholesale disregard of the terms of the Lease contemplated by the Financing Motion and Final Order is simply not supportable by the Bankruptcy Code or any caselaw. The Debtors have not, and cannot, justify exempting the DIP Lenders from the restrictions in the Lease.

20. Finally, should any Final Order permit limited access to the Premises to DIP Lenders, they must bear full financial responsibility not only for all charges arising under the Lease going forward, but also for prior unpaid rent or other charges. The Final Order does not so provide. To the extent the DIP Lenders seek authority to essentially step into the shoes of the Debtors following a default, there is no reason to allow the DIP Lenders to exercise rights which would otherwise be prohibited by the Lease and "assume" the Lease for an indeterminate period of time without being held to cure outstanding post-petition defaults. The DIP Lenders should not, on the one hand, receive a superpriority administrative claim, and on the other hand be relieved from liability for the Debtors' failure to remain current on post-petition rent obligations while the DIP Lenders attempt to realize upon their collateral. This result compels Landlord to continue to suffer as involuntary post-petition creditors, the very result that 11 U.S.C. § 365(d)(3) was intended to counteract. See In re Warehouse Club, Inc., 184 B.R. 316, 318 (Bankr. N.D. Ill. 1994).

D. **The Debtors must provide notice of any default by Debtors that may impact any of the Premises.**

21. The remedies afforded to the DIP Lenders in the event of a default by the Debtors are extreme. In the event of a default by the Debtors, DIP Lenders are granted relief from the automatic stay upon five (5) business days notice to the Debtors, counsel to the Creditors Committee, any trustee of the Debtors, and the U.S. Trustee. Final Order at ¶ 18. There is no provision for notice to affected third parties, such as Landlord, despite the substantial impact that

such default may have on Landlord. Notwithstanding Landlord's objection that any such control is prohibited by the Lease, it is critical that DIP Lenders provide notice to Landlord prior to DIP Lenders taking any action with respect to collateral located at the Premises.

22.   In addition to the foregoing, and to the extent not inconsistent with the relief sought here, the Landlord also joins in the objection(s) of other real property lessors to the relief proposed by the Financing Motion.

### IV.   CONCLUSION

The Debtors provide no authority for, and demonstrate no necessity, to disregard the terms of the Lease and the protections granted Landlord under the Bankruptcy Code. Landlord did not create Debtors' financial maladies, and Landlord should not bear the consequences of this bankruptcy through loss of its contractual rights. In order to properly temper the DIP Lenders' exercise of their rights should an Event of Default occur, the Court should deny the invitation to vitiate the provision in the Lease prohibiting the Debtors from pledging or encumbering the Lease, and limit any lien in favor of the DIP Lenders to only the proceeds obtained through the sale or other disposition of the Lease.

Dated: March 11, 2005

**KATTEN MUCHIN ZAVIS ROSENMAN**
Attorneys for Prudential Insurance Company of America

By: /s/ Merritt A. Pardini

Thomas J. Leanse (TL-8802)
Dustin P. Branch (DB-3553)
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Phone: (310) 788-4400
FAX: (310) 788-4471

Merritt A. Pardini (MP-3437)
575 Madison Ave
New York, New York 10022
Phone: (212) 940-8800
FAX: (212) 940-8776

84016690_1

# EXHIBIT A

LEASE AGREEMENT

by and between

LAKE CITY SHOPPING CENTER INVESTMENT
LIMITED PARTNERSHIP

as Landlord,

and

WINN-DIXIE STORES, INC.,

as Tenant

DATED: As of December 31, 1986

THIS LEASE AGREEMENT made as of the 31 day of December, 1986, by and between LAKE CITY SHOPPING CENTER INVESTMENT LIMITED PARTNERSHIP, a Delaware limited partnership ("Landlord"), with an address of c/o TMW Real Estate Partners, Inc., 2070 South Park Place, Suite 150, Atlanta, Georgia 30339, and WINN-DIXIE STORES, INC., a Florida corporation ("Tenant") with an address of Post Office Box B, Jacksonville, Florida 32203.

In consideration of the rents and provisions herein stipulated to be paid and performed, Landlord and Tenant hereby covenant and agree as follows:

1. **Demise of Premises.** Landlord hereby demises and lets to Tenant and Tenant hereby takes and leases from Landlord for the term or terms and upon the provisions hereinafter specified the following described property (collectively, the "Leased Premises"): (i) the premises described in Exhibit "A" attached hereto and made a part hereof together with the easements, rights and appurtenances thereunto belonging or appertaining (collectively the "Land"); (ii) the buildings (consisting of approximately 45,056 square feet), structures and other improvements constructed and to be constructed on the Land (collectively, the "Improvements"); and (iii) the machinery and equipment described in Exhibit "B" attached hereto and made a part hereof and installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease (collectively, the "Equipment") (excepting Tenant's trade fixtures and equipment).

2. **Certain Definitions.**

   (a) "Additional Rent" shall mean Additional Rent as defined in Paragraph 6.

   (b) "Adjoining Property" shall mean all sidewalks, curbs, gores and vault spaces adjoining any of the Leased Premises.

   (c) "Alterations" shall mean all changes, additions, improvements or repairs to, all alterations, reconstructions,

(v) Landlord may retain ten percent of the restoration fund until the restoration is fully completed;

(vi) the restoration fund shall be kept in a separate interest-bearing account by the trustee; and

(vii) at all times the undisbursed balance of the restoration fund held by Landlord shall be not less than the cost of completing the restoration work free and clear of all liens.

In addition, prior to commencement of restoration and at any time during restoration, if the estimated cost of restoration, as reasonably determined by Landlord, exceeds the amount of the Net Proceeds or the Net Award available for such restoration, the amount of such excess shall be paid by Tenant to the trustee to be added to the restoration fund. Any sum in the restoration fund added by Tenant which remains in the restoration fund upon the completion of restoration shall be returned to Tenant. For purposes of determining the source of funds with respect to the disposition of funds remaining after the completion of restoration, the Net Proceeds or the Net Award shall be deemed to be disbursed prior to any amount added by Tenant.

(b) In the event that there are funds from Net Proceeds under Article 14 remaining undisbursed upon completion of restoration and full payment therefor, then such sum shall be paid to Landlord and credited to Basic and Additional Rent subsequently accruing hereunder. Funds remaining undisbursed from a Net Award shall be paid to Landlord but shall not be so credited.

16. **Subordination to Financing.** Tenant agrees that this Lease shall at all times be subject and subordinate to the lien of any Mortgage, and Tenant agrees, upon demand, without cost, to execute instruments as may be required to further effectuate or confirm such subordination, provided, however, as a condition to this subordination, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this Lease, Tenant's tenancy shall not be disturbed, nor shall this Lease be affected by any default under such Mortgage, and in the event of a foreclosure or other

-24-

enforcement of any such Mortgage, or sale in lieu thereof, the purchaser at such foreclosure sale shall be bound to Tenant for the term of this Lease and any extensions thereof, the rights of Tenant hereunder shall expressly survive, and this Lease shall in all respects continue in full force and effect so long as Tenant fully performs all of its obligations hereunder. Tenant shall not be named as a party defendant in any such foreclosure suit, except as may be required by law.

Tenant agrees that it will give notice to any holder of a first mortgage encumbering the Leased Premises, provided that Tenant has been notified in writing of the name and address of such mortgage holder, of any defaults of the Landlord or other circumstances which would entitle Tenant to terminate this Lease or abate the rental payable hereunder, specifying the nature of the default by Landlord, and thereupon the holder of the Mortgage shall have the right, but not the obligation, to cure any such default by Landlord, and Tenant will not terminate this Lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days after such notice to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot be reasonably cured within such 30-day period. No such Lender shall, upon assuming title to the Leased Premises, be liable for any act or omission of any prior landlord (including Landlord), be subject to any offsets or defenses which Tenant may have against any prior landlord, be bound by any rent or additional rent paid for more than the then current period to any prior landlord, or be bound by any agreement or modification of this Lease made without such Lender's consent after Tenant has been given written notice of such Lender's interest, in such a way as to reduce rent, accelerate rent payments, shorten the original term or change any renewal option. Nothing herein shall be construed to be in conflict with the provisions of paragraph 7 hereof.

17. **Assignment, Subleasing and Vacating.** The Leased Premises may be vacated or may be used by Tenant, or may

be assigned or sublet in whole or in part for use as a retail food store, commonly referred to as a supermarket, or for the conduct of any business not in violation of the provisions of any recorded covenants, restrictions or agreements applicable to the Leased Premises or to the shopping center of which the Leased Premises are a part, or of any Legal Requirements. In the event of any vacating, assignment or subleasing as herein permitted, Tenant shall continue to remain liable and responsible for the payment of the Basic Rent and Additional Rent and the performance of all its other obligations under this Lease, including but not limited to its obligations under Paragraph 11 hereof with respect to repairs and maintenance.

Each sublease of any of the Leased Premises shall be subject and subordinate to the provisions of this Lease. No assignment or sublease made as permitted by this Paragraph shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no assignment or sublease had been made. No assignment or sublease shall impose any obligations on Landlord under this Lease. Tenant shall, within ten days after the execution and delivery of any such assignment, deliver a duplicate original copy thereof in recordable form to Landlord, and within ten days after the execution and delivery of any such sublease, Tenant shall deliver a duplicate original copy thereof to Landlord.

Upon the occurrence of an Event of Default under this Lease, Landlord shall have the right to collect and enjoy all rents and other sums of money payable under any sublease of any of the Leased Premises, and Tenant hereby irrevocably and unconditionally assigns such rents and money to Landlord, which assignment may be exercised upon and after (but not before) the occurrence of an Event of Default. Tenant shall not mortgage or pledge this Lease, and any such mortgage or pledge made in violation of this Paragraph shall be void.

In the event Tenant shall vacate the entire demised premises or cease selling merchandise therein for in excess of a period of

nine (9) months while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant), Landlord shall have the continuing option thereafter to terminate and cancel this Lease upon thirty (30) days' written notice to Tenant of its election to do so, unless within such 30-day period Tenant shall advise Landlord that Tenant had, prior to receipt of such notice, in good faith committed to assign or sublease the demised premises to a third party for occupancy within sixty (60) days, in which event such notice shall be ineffective if Tenant's assignment or sublease is completed.

18. **Permitted Contests.** Tenant shall not be required to (i) pay any Imposition, (ii) comply with any Legal Requirement, (iii) discharge or remove any lien referred to in Paragraphs 9 or 12, or (iv) take any action with respect to any encroachment, violation, hindrance, obstruction or impairment referred to in Paragraph 11(b) so long as Tenant shall contest, in good faith and at its expense, the existence, the amount or the validity thereof, the amount of the damages caused thereby, or the extent of its or Landlord's liability therefor, by appropriate proceedings which shall operate during the pendency thereof to prevent (i) the collection of, or other realization upon, the Imposition or lien so contested, (ii) the sale, forfeiture or loss of any of the Leased Premises, any Basic Rent or any Additional Rent to satisfy the same or to pay any damages caused by the violation of any such Legal Requirement or by any such encroachment, violation, hindrance, obstruction or impairment, (iii) any interference with the use or occupancy of any of the Leased Premises, (iv) any interference with the payment of any Basic Rent or any Additional Rent, and (v) the cancellation of any fire or other insurance policy. Tenant shall provide Landlord security satisfactory in the sole opinion of Landlord assuring the payment, compliance, discharge, removal or other action, including all costs, attorneys' fees, interest and penalties, in the event that the contest is unsuccessful. While any such proceedings are pending and the required

written.

Signed sealed and delivered
in the presence of:

LAKE CITY SHOPPING CENTER IN-
VESTMENT LIMITED PARTNERSHIP, a
Delaware limited partnership

By: TMW REAL ESTATE PARTNERS,
INC., a Georgia corporation, its
authorized general partner

_____  By _____
                               Its                President

_____  Attest _____
As to Landlord                 Its                Secretary

LANDLORD


WINN-DIXIE STORES, INC., a
Florida corporation

_____  By _____
                               Its                President

_____  Attest _____
As to Tenant                   Its                Secretary

(CORPORATE SEAL)

TENANT