**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re ) | Case No. 05-11063 |
| ) | (Jointly Administered) |
| Winn-Dixie Stores, Inc., et al., ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | Hearing Date: March 15, 2005 |
| ) | Hearing Time: 10:00 a.m. |
| ) | Response Deadline: March 11, 2005 |
| _____ ) | |

**RESPONSE OF KELLOGG SALES COMPANY, KEEBLER COMPANY, AND MURRAY BISCUIT COMPANY TO DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 FOR INTERIM AND FINAL FINANCING ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING AND UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

Kellogg Sales Company ("Kellogg"), Keebler Company ("Keebler"), and Murray Biscuit Company ("Murray") hereby submit this Response (the "Response") to the Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 for Interim and Final Financing Orders (I) Authorizing Debtors to Obtain Post-Petition Financing and Utilize Cash Collateral, (II) Granting Adequate Protection to Pre-Petition Lenders, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) (the "Financing Motion")[1]. Kellogg, Keebler and Murray are hereinafter collectively referred to as the "Kellogg Entities" and represent as follows:

---

[1] All capitalized terms not defined herein shall have the meaning ascribed thereto in the Financing Motion or the Interim Financing Order (as defined hereunder).

# I.
# JURISDICTION

1.      The Court has jurisdiction over the Financing Motion and the Response pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

# II.
# BACKGROUND

2.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code and commenced the above-captioned Chapter 11 cases (the "Chapter 11 Cases").

3.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4.      On February 22, 2005, the Debtors filed the Financing Motion.

5.      On February 23, 2005, the Court entered an interim order respecting the Financing Motion (the "Interim Financing Order").  A final hearing on the Financing Motion is set for March 15, 2005, at 10:00 a.m. with the corresponding deadline to respond to the Financing Motion set for March 11, 2005, at 4:00 p.m.

6.      On February 22, 2005, the Debtors filed the Motion for Order (A) Authorizing Return of Goods Pursuant to 11 U.S.C. §546(g), (B) Establishing Procedures for Treatment of Reclamation Claims, and (C) Prohibiting Third Parties From interfering With Delivery of Goods (the "Reclamation Motion").

7.      On February 25, 2005, the Court entered an interim order respecting the Reclamation Motion (the "Interim Reclamation Order").  On March 10, 2005, the Kellogg Entities filed the Objection of Kellogg Sales Company, Keebler Company and Murray Biscuit

___

Company to Debtors' Reclamation Motion. A final hearing on the Reclamation Motion is also set for March 15, 2005, at 10:00 a.m.

8. On March 1, 2005, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed in these Chapter 11 Cases.

9. The Kellogg Entities are suppliers of food products to the Debtors. Keebler and Murray are wholly owned subsidiaries of Kellogg.

10. On February 17, 2005, the Kellogg Entities sent three separate written notices of reclamation to the Debtors (the "Kellogg Demands"). The Kellogg Demands assert reclamation claims in the aggregate amount of $2,609,437.99.

### III.
### KELLOGG ENTITIES' RESPONSE TO THE FINANCING MOTION

11. The Kellogg Entities hold reclamation claims in these cases. While the Kellogg Entities do not object to the Debtors obtaining post-petition financing to fund its operations, the Kellogg Entities have concerns that the structure of the Debtors' post-petition financing may prejudice the Kellogg Entities' reclamation rights. Accordingly, for the reasons set forth below, the Kellogg Entities would request that the Final Financing Order provide that: (i) the reclamation rights of the Kellogg Entities be found to be of value because the Debtors' Pre-Petition Lenders (as defined below) were fully secured at the time the Kellogg Demands were made; (ii) the assignment of the Pre-Petition Liens (as defined below) to the DIP Lenders (as defined below) cannot be used as a means to wipe out valid reclamation claims; and (iii) reclamation claimants such as the Kellogg Entities should be included as part of the Carve-Out proposed in the Financing Motion, or, alternatively, the Carve-Out should be eliminated entirely.

### A. The Kellogg Entities' Reclamation Claims Cannot be Rendered Valueless Because the Debtors' Pre-Petition Lenders Were Fully Secured When the Kellogg Demands Were Made

12. The Kellogg Entities are holders of reclamation claims in these cases. On February 17, 2005, prior to the Petition Date, the Kellogg Entities sent the Kellogg Demands to the Debtors pursuant to the Section 2.702 of the Uniform Commercial Code, as codified in Florida (where the Debtors' headquarters are) and any other relevant jurisdiction, and pursuant to Section 564(c) of the Bankruptcy Code, seeking to reclaim goods delivered to the Debtors within 10 days prior to the date of the Kellogg Demands.

13. Section 546(c) of the Bankruptcy Code preserves the right of a creditor to reclaim goods sold to an insolvent buyer that existed outside of bankruptcy. This section does not create an independent right of reclamation, but rather recognizes such a right if the seller has a right to reclaim under applicable non-bankruptcy law. See *In re Roberts Hardware Co.*, 103 B.R. 396 (Bankr.N.D.N.Y. 1988). Reclamation rights are created by section 2-702 of the Uniform Commercial Code (the "UCC") as adopted and enacted in relevant jurisdictions. Section 2-702 of the UCC confers rights on sellers of goods to reclaim certain goods delivered while the buyer is insolvent, but, such rights of reclamation is subject to the rights of a "buyer in the ordinary course of business or other good faith purchaser." Absent a showing of bad faith, a holder of a prior perfected, floating lien on inventory will be treated as a good faith purchaser with right superior to those of a reclaiming seller. See *In re Victory Markets, Inc.*, 212 B.R. 738 (Bankr.N.D.N.Y. 1997).

14. The Kellogg Demands were sent to the Debtors on February 17, 2005, prior to the Petition Date. Before the Petition Date, the working capital needs of the Debtors were primarily met under that certain Pre-Petition Credit Agreement (as such term is defined in the Financing

Motion) with Wachovia Bank, N.A., as administrative agent (Wachovia, and other lenders which from time to time that are parties to the Pre-Petition Credit Agreement, are collectively referred to as the "Pre-Petition Lenders"). See Financing Motion, ¶8. The Debtors' borrowings under the Pre-Petition Credit Agreement are secured (the "Pre-Petition Liens") by substantially all of the assets of Winn-Dixie Stores, Inc., and its principal domestic affiliates (the "Pre-Petition Collateral"). Id. at ¶22. As of the Petition Date, the Debtors were liable to the Pre-Petition Lenders for obligations under the Pre-Petition Credit Agreement in the aggregate amount of approximately $427 Million (the "Pre-Petition Lender Debt"). Id. at ¶10.

15.  The Pre-Petition Collateral arguably covers the Debtors' inventory which would include the goods sold by the Kellogg Entities to the Debtors. Assuming this to be the true, the Kellogg Entities' reclamation claims would be subject to the Pre-Petition Lenders' lien in the Pre-Petition Collateral.

16.  In circumstances where a secured creditor's claim exceeds the value of the goods securing the claim, some courts hold that a seller's reclamation right for goods covered by the secured creditor's lien is rendered valueless. See *In re Victory Markets, Inc.* at 744; *In re Primary Health Systems, Inc.*, 528 B.R. 111 (Bankr.D.Del. 2001)[2].

17.  In the instant case, however, in the Interim Financing Order, the Court made the Finding that "[a]s of the Petition Date, the Pre-Petition Lender Debt is fully secured…" Interim Financing Order, ¶ D(iii). There is no question, therefore, that, at least as of the Petition Date, the Pre-Petition Lender's claim did not exceed the value of the Pre-Petition Collateral.

---

[2]  A few courts, on the other hand, have allowed a reclamation claimant an administrative claim even when the secured lender's floating lien exceeded the value of the collateral. *See In re Sunstate Diary & Food Products Co.*, 145 B.R. 341, 343 (Bankr.M.D.Fla. 1992); *In re Bolster Supply Group*, 74 B.R. 250 (N.D.Ill. 1987). The Kellogg Entities reserve the right to assert that the Kellogg Demands cannot be rendered valueless regardless of the over- or under-secured status of any of the Debtors' pre-petition or post-petition lenders.

---

18.     The Kellogg Demands were made four days prior to the Petition Date. It would seem reasonable to assume that if the Pre-Petition Lenders were fully secured as of the Petition Date, the Pre-Petition Lenders were fully secured a mere four days prior thereto. Under the circumstances, the Kellogg Entities' reclamation rights, assuming they are subject to the Pre-Petition Lenders' lien, clearly cannot be valueless since the Pre-Petition Lenders were fully secured at the time the Kellogg Demands were made.

19.     Accordingly, based on the foregoing, the Kellogg Entities would request that the Court enter an order finding that the Kellogg Entities' reclamation claims, in amounts to be determined, cannot be valueless because the Pre-Petition Lenders were fully secured as of the date the reclamation demands were made.

**B.    The Post-Petition Assignment of the Pre-Petition Lenders' Lien in the Pre-Petition Collateral to the Debtors' DIP Lenders Must Not Used to Prejudice the Reclamation Rights of the Kellogg Entities**

20.     By the Financing Motion, the Debtors are seeking authority, among other things, to refinance their obligations under the Pre-Petition Credit Agreement pursuant to a debtor-in-possession financing facility (the "DIP Facility") from Wachovia Bank, N.A., as Administrative Agent and Collateral Agent, for itself and other financial institutions from time to time as may be parties to the Credit Agreement providing the DIP Facility (Wachovia Bank and the other financial institutions are collectively referred to as the "DIP Lenders"). The DIP Facility would permit the Debtors to obtain up to $800 Million in financing.

21.     The DIP Facility is structured to provide that the Pre-Petition Lenders will be paid in full (approximately $427 Million). Notwithstanding the payment in full of the Pre-Petition Lender Debt, the Pre-Petition Liens of the Pre-Petition Lenders in the Pre-Petition Collateral are being assigned to the DIP Lenders rather than released and new liens being granted to the DIP

Lenders. Normally, if a pre-petition lender's debt was paid off and a new lien was granted post-petition to the post-petition lender, reclamation claims would not be subject to the (subordinate) new liens of the post-petition lenders.

22. While at first blush this assignment of lien rights may not be of concern, it in fact could significantly prejudice holders of valid reclamation claims, such as the Kellogg Entities.

23. The Kellogg Entities do not object to the Debtors obtaining post-petition financing, and are in support of the Debtors having the necessary cash flow for operations. However, the Kellogg Entities do not support post-petition financing that is provided at the expense of and with risk to the Kellogg Entities.

24. It is clear that valid reclamation claims are determined as of the date the reclaiming vendor makes the reclamation demand. Further, if as of that date the debtor's secured lender is over-secured, upon the subsequent bankruptcy petition of the debtor the holder of the valid reclamation claim is entitled to, *inter alia*, an administrative claim. There is no dispute in this case that the Pre-Petition Lenders were over-secured as of the Petition Date (4 days after the date of the Kellogg Demands)[3]. Thus, the Debtors must provide the Kellogg Entities with an administrative claim for the valid amounts of their reclamation claims[4].

25. However, in this case, the Debtors propose that the Pre-Petition Liens will be assigned to the DIP Lender. This structure could have the effect of increasing the amount of the debt secured by the Pre-Petition Liens. In other words, if the Pre-Petition Liens, as of the Petition Date, secured debt of approximately $427 Million, and after the assignment of the Pre-Petition Liens to the DIP Lenders, such liens could secure a debt of up to $800 Million.

---

[3] See, Transcript of Interim Hearing on DIP Financing Motion, February 22, 2005.
[4] As an alternative to the granting of an administrative claim, the Debtors could, under certain circumstances, return goods that are subject to a valid reclamation claim.

---

**RESPONSE OF KELLOGG ENTITIES TO DEBTORS' FINANCING MOTION**               **Page 7 of 11**

26. If it were clear (which it is not) in the Order approving the DIP Financing that valid reclamation claims entitled to administrative expense status are not affected by the increased debt from the post-petition borrowing, then the Kellogg Entities and other reclamation claimants would have no concerns. However, as currently proposed, the DIP Facility permits the larger post-petition debt amount to be secured by the Pre-Petition Liens which could potentially allow the Debtors and DIP Lenders to assert that the if the DIP Lenders are under-secured (at a later date) all valid reclamation claims and the associated administrative claims flowing there from would be rendered valueless.

27. If the Debtors desire to borrow on a post-petition basis, there should be no reason that such borrowing be designed to provide the means by which the Debtors may seek to make valueless all valid reclamation claims and eliminate the administrative claims that flow there from.

    **C.**   **Valid Reclamation Claims Should Receive the Same Treatment as Other Administrative Claims Including Administrative Claims of Professionals**

28. The Debtors in the Reclamation Motion seek the authority, under Section 546(c) of the Bankruptcy Code, to grant administrative expense treatment to reclamation claims that the Debtors determine to be valid. Section 546(c) allows a court to grant administrative expenses status "of the kind specified in Section 503(b)" to valid reclamation claims. See 11 U.S.C. §546(c)(2)(A).

29. An administrative claim allowed under Section 503(b) is accorded first priority[5] for payment under Section 507(a) of the Bankruptcy Code. Section 507(a)(1) puts <u>all</u> administrative expense claims allowed under Section 503(b) on par with each other, regardless of the nature of or the basis for such administrative expense claims.

---
[5] The Bankruptcy Code provides that in certain rare, unusual and extraordinary occasion, the first priority status of administrative expense claim may be trumped, for example, Section 364(c).

---

30. The Debtors are seeking to circumvent this norm by proposing a "carve out" to the Professionals employed by the estates.

31. The Interim Financing Order provides the Debtors' post-petition lenders with an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "Superpriority Claim") which trumps all administrative expense claims allowed under Section 503(b). The Interim Financing Order also provides for a "carve-out" (the "Carve-Out") for the estates' Professionals. The Interim Financing Order specifically states that the Debtors' post-petition lenders' Superpriority Claim "*shall* be subordinate to (i) the Carve-Out Expenses as and to the extent set forth in this Interim Order." See Interim Financing Order, ¶14 (emphasis added).

32. Claims of professionals employed by a debtor's estate allowed under Section 330 of the Bankruptcy Code constitute administrative expense claims allowed under Section 503(b). Accordingly, under the Bankruptcy Code, the allowed claims of the Professionals are on par with the valid reclamation claims and are to be accorded the same treatment by the Debtors.

33. By the Carve-Out, however, the Debtors have elevated the administrative expense claims of Professionals to a superpriority status above all other administrative expense claims, including the valid reclamation claims.

34. Section 507(a)(1) is clear that all administrative expense claims allowed under Section 503(b) be accorded the same priority. For that reason, it is patently unfair and unwarranted that the administrative expense claims of Professionals are accorded a more favorable treatment to the prejudice of all other similarly situated administrative expense claimants.

35.     Accordingly, the Kellogg Entities would request that the Debtors include the valid reclamation claims as part of the Carve-Out or, alternatively, eliminate the Carve-Out treatment to Professionals so that all administrative expense claimants receive the same treatment.

WHEREFORE, based on the foregoing, the Kellogg Entities request that the Court enter a Final Financing Order containing provisions addressing the concerns of the Kellogg Entities as set forth above and for such other and further relief that the Court may deem just and proper.

Date:  March 11, 2005

/s/ MICHAEL D. WARNER
_____
Michael D. Warner (MW-3381)
WARNER STEVENS, L.L.P.
1700 City Center Tower II
301 Commerce Street
Fort Worth, TX 76102
Telephone: (817) 810-5250
Facsimile: (817) 810-5255

Attorneys for Kellogg Sales Company, Keebler Company, and Murray Biscuit Company

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above RESPONSE OF KELLOGG SALES COMPANY, KEEBLER COMPANY, AND MURRAY BISCUIT COMPANY TO DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 FOR INTERIM AND FINAL FINANCING ORDERS (I) AUTHROIZING DEBTORS TO OBTAIN POST-PETITIOIN FINANCING AND UTILIZE CASH COLLATERAL, (II) GRATING ADEQUATE PROTECTION TO PRE-PETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUTPCY RULES 4001(b) AND (c) has been served upon the parties listed below on this 11th day of March, 2005, via electronic mail and facsimile (as indicated) and by United States first class mail, properly addressed and postage prepaid.

D.J. Baker, Esq.
Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, NY  10036
Facsimile:  212.735.2000
Electronic Mail: djbaker@skadden.com

Sarah Robinson Borders, Esq.
King & Spalding LLP
191 Peachtree Street
Atlanta, GA  30303
Facsimile:  404.572.5149
Electronic Mail: sborders@kslaw.com

Andrew Tenzer, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
Facsimile:  212.848.7179
Email:  atenzer@shearman.com

Lena Mandel, Esq.
Milbank Tweed Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY  10005-1413
Facsimile:  212.822.5076
Electronic Mail: lmandel@milbank.com

Office of the United States Trustee
Southern District of New York
33 Whitehall Street, 21st Floor
New York, NY  10004
Facsimile:  212.668.2256
Electronic Mail: deirdre.martini@usdoj.gov

Jonathan N. Helfat, Esq.
Otterbourg Steindler Houston & Rosen, P.C.
230 Park Avenue
New York, NY  10169
Facsimile: 212.682.6104
Email:  jhelfat@oshr.com

/s/ MICHAEL D. WARNER
_____
Michael D. Warner (MW-3381)