Hearing Date and Time: March 15, 2005 at 10:00 a.m.

SCARCELLA ROSEN & SLOME LLP
333 Earle Ovington Boulevard
Ninth Floor
Uniondale, New York 11553
(516) 227-1600
Thomas R. Slome (TS-0957)
Alan E. Marder (AM-0114)
Jil Mazer-Marino (JM-6470)

Attorneys for Victory Real Estate Investments, LLC,
Victory Investments, Inc., et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| ---------------------------------------------------x | |
|---|---|
| In re | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | Case No. 05-11063 (RDD)<br>(Jointly Administered) |
| Debtors. | |
| ---------------------------------------------------x | |

**LIMITED OPPOSITION OF VICTORY REAL ESTATE INVESTMENTS, LLC TO DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 FOR INTERIM AND FINAL FINANCING ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING AND UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

**NOW INTO COURT**, through undersigned counsel, comes Victory Real Estate Investments, LLC and its landlord subsidiaries[1] (together, "Victory"), and files this Limited Opposition ("Limited Opposition") to the Debtors' Emergency Motion Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, And 364 For Interim And Final Financing Orders (I) Authorizing Debtors To

[1] These subsidiaries (the "Victory Subsidiaries") are: Cedar Hills Consolidated, LLC; Clay Plaza Investors, LLC; Eagle Harbor Investors, LLC; Eastgate Investors, LLC; Jesup Victory, LLC; Madison Investors, LLC; Marketplace of Americus, LLC; Moultrie Square New Orleans, LLC; New Iberia Investors, LLC; Palisades Investors, LLC; Victory Berryland, LLC; Victory Coldwater Plaza, LLC; Victory Gretna, LLC; Victory Kenner, LLC; Victory River Square, LLC; Victory Saks Plaza, LLC; Victory Three Notch Plaza, LLC; and Victory Vidalia, LLC.

Obtain Post-Petition Financing And Utilize Cash Collateral, (II) Granting Adequate Protection To Pre-Petition Lenders, (III) Modifying The Automatic Stay, And (IV) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) And (c) (the "Motion"). For the following reasons, Victory respectfully requests that certain provisions of the post-petition financing arrangement requested by the Debtors be modified, so as to mitigate potentially harmful effects of the financing provisions at issue on lessors of the Debtors including Victory, as discussed more fully below.

## I. INTRODUCTION

On February 21, 2005, Winn-Dixie Stores, Inc. and its debtor affiliates (the "Debtors") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code.

On February 21, 2005, the Debtors also filed the Motion and a proposed Interim Order ("Proposed Interim Order"), requesting, among other things, that the Court approve a post-petition financing package (the "Proposed Post-Petition Financing") which would create a $800 million post-petition facility between the Debtors and certain lenders including Wachovia Bank (the "Lenders"), in which the loans would have "superpriority" status pursuant to Section 364(c) of the Bankruptcy Code. The Proposed Post-Petition Financing is governed by a Credit Agreement (the "Credit Agreement") submitted with the Debtors' papers regarding the Proposed Post-Petition Financing.

On February 23, 2005, after a hearing, the Court entered an Interim Order ("Interim Order") on the Motion. Subsequently, the Debtors have also prepared and circulated to certain parties a proposed Final Order in connection with the final hearing on the Motion (the "Proposed Final Order").

Victory, through its subsidiaries (the "Victory Subsidiaries," which each hold leases as lessor with the Debtors as lessees) is the movant herein. A list of the store locations (the

"Victory Locations") at which the Victory Subsidiaries hold leases is attached hereto in Exhibit "1" to this Limited Opposition.

Victory does not contest the Debtors' assertion that the Debtors require post-petition financing. However, Victory has concerns regarding certain provisions of the Proposed Post-Petition Financing and Proposed Final Order that could be prejudicial to landlords including Victory, and as more fully discussed below, Victory respectfully requests that these provisions be modified to eliminate or at least mitigate these prejudicial effects.

## II. DISCUSSION

Victory objects, on a limited basis as more fully set forth below, to the following provisions of the Post-Petition Financing as stated in the Proposed Final Order, Motion, and Credit Agreement.

### A. Procedural Advantages or Control Granted to the Lenders

Victory objects to two types of control or procedural advantage afforded to the Lenders under the Proposed Post-Petition Financing. As discussed below, Victory objects to: (1) the Lenders' "veto" granted over lease assumption, rejection, and assignment; and (2) the use of accounts controlled by the Lenders.

#### 1. Requirement of Lender Approval for Assumption, Rejection, and Assignment of Leases

The Proposed Final Order contains a provision that states that "Debtors shall not … assume, reject or assign any [lease] without the prior written consent of [Lenders'] Agent…." (Proposed Final Order at ¶16; Interim Order at ¶16) Victory objects to this provision, as an impermissible ceding or transfer of the Debtors' fiduciary duty to exercise their rights under Section 365 of the Bankruptcy Code in the best interest of the Debtors' estates.

Under the Bankruptcy Code and applicable law, in making the decision to assume or reject an unexpired lease or executory contract, the Debtor must exercise its business judgment,

and in order to assume the lease or contract, the Debtor must conclude that, at least in part, maintenance of the lease is more beneficial to the estate than doing without the lease or contract. *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 438 (5th Cir. 2002). The exercise of this right is an exercise of the Debtor's basic fiduciary duties owed to the bankruptcy estate. *See, e.g., In re Trans World Airlines, Inc.*, 261 B.R. 103, 114 (Bankr. D. Del. 2001).

Paragraph 16 of the Proposed Final Order seeks to cede this decision-making power to the Lenders, who are not fiduciaries of the bankruptcy estate and may exercise this power for reasons of their own that are not necessarily in the best interest of the bankruptcy estate. While this provision technically does not place this decision-making authority in the Lenders' hands, it effectively does so, since the Debtors will not be able to assume, reject, or assign a lease without the Lenders' agreement. Courts have recognized that such a pre-petition transfer of decision-making power regarding the assumption or rejection of contracts and leases is improper and should not be allowed. For example, in *In re Trans World Airlines, Inc.*, a party to a contract with the debtor attempted to enforce the debtor's prepetition waiver of its rights to reject that contract. The court did not allow that waiver to be enforced:

> [A] debtor's prepetition agreement not to reject an executory contract, or conversely, to assume such a contract, <u>**violates public policy**</u> in that it purports to bind the debtor-in-possession to a course of action without regard to the impact on the bankruptcy estate, other parties with a legitimate interest in the process or the debtor-in-possession's fiduciary duty to the estate.

*Id.* (emphasis added) *See also In re Mirant Corp.*, 299 B.R. 152, 167 (N.D. Tex. 2003) (maintaining in force injunction which prevented control over Debtor's Section 365 powers by Federal Energy Regulatory Commission, because "the harm to Debtors' reorganization from granting to the Commission veto power over the effective use by Debtors of section 365 is incalculable.") This Court should similarly reject the provision located in Paragraph 16 of the

Proposed Final Order which would grant the Lenders control over the exercise of the Debtors' Section 365 rights.

2. Use of Lender-Controlled Accounts

Under the terms of the Proposed Post-Petition Financing, all monies received by the Debtors henceforth are to be placed in accounts (called "Majority Accounts") under the control of the Lenders. Paragraph 12 of the Proposed Final Order (entitled "Cash Management Authorization") states:

> In accordance with the provisions of the Loan Documents and this Final Order, Debtors are authorized and directed either to deposit or cause to be deposited into the Majority Accounts (as defined in the Credit Agreement), or to remit, in kind, immediately to Lender, all monies, checks, drafts and any other payments received from its account debtors and other parties, now or hereafter obligated to pay Debtors for services provided by Debtors or for inventory or other property of Debtors' estates. Lender is authorized to apply such payments and proceeds received by Debtors to the Obligations in accordance with the Credit Agreement, the other Loan Documents and this Final Order.

(*See also* Proposed Interim Order at ¶12)[2] The "Majority Accounts" are controlled by the Lenders, and under the Credit Agreement the Lenders have the ability to "sweep" these accounts under certain circumstances to apply funds located within the accounts to the Lenders' obligations. (*See, e.g.*, Credit Agreement § 7.4)

When combined with the superpriority nature of the claims granted to the Lenders, these provisions could allow the Lenders to collect sums that otherwise would be paid to landlords such as Victory for the landlords' administrative claims for rent under Bankruptcy Code § 365(d)(3) and cure payments for assumed leases under Bankruptcy Code § 365(b). Sums that would ordinarily be earmarked for the landlords' administrative claims might also come into such accounts as a result of Section 363 sales of the Debtors' leaseholds, and the Lenders could theoretically sweep such sums and refuse to disburse them to the landlords—even where there is

[2] This provision was included in the Proposed Interim Order, but was stricken by the Court at the initial hearing, and was not included in the Interim Order. (Interim Order at ¶12)

a court order requiring payment of such administrative claims. In doing so, the Lenders would presumably rely on Paragraph 12 of the Proposed Final Order, as well as the superpriority nature of their lien, as compared to the ordinary administrative claim status of the landlords' claims. Victory objects to Paragraph 12 of the Proposed Final Order, which could be abused to result in some or all landlords being denied their cure or rent payments under Section 365 or other provisions of the Bankruptcy Code.

**B. <u>Nullification of Prepetition Contracts</u>**

Victory also objects to Paragraph 11 of the Proposed Final Order, which seeks to effect a sweeping nullification of prepetition contracts. This paragraph states that any provision of any contract or lease to which the Debtors are a party which "restricts, limits or impairs in any way any Debtors' ability or right to grant" security interests or liens to Lenders, or otherwise impairs the Debtors' "ability to enter into and comply with all of the terms, conditions and provisions of the Credit Agreement, the other Loan Documents and/or this Final Order … shall not be effective and shall be unenforceable."[3] (*See also* Proposed Interim Order at ¶11)

To the extent that this provision attempts to reject or nullify selected portions of leases, Victory objects to the inclusion of this provision in the Proposed Final Order. Leases must be assumed or rejected as a whole, and cannot be selectively rejected in part. *E.g., In re Village Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992) Moreover, it is questionable whether this Court has the power to effect such a sweeping modification of prepetition leases in this manner. This selective rejection of unspecified and unenumerated contractual provisions, which is potentially far-reaching in scope, could have an effect on numerous lease provisions, and should not be allowed. Therefore, Victory asks that Paragraph 11 of the Proposed Final Order be stricken.

[3] This provision was included in the Proposed Interim Order, but was stricken by the Court at the initial hearing, and was not included in the Interim Order. (Interim Order at ¶11)

In the alternative, if the Court is inclined to retain the portion of Paragraph 11 regarding contractual limits on the Debtors' ability to grant security interests, Victory respectfully suggests that this be done by retaining the language of the paragraph starting at its beginning and ending with the phrase "…shall not be effective and shall be unenforceable" in the ninth line of the paragraph; and that the remaining following language be stricken.

This remaining language (which Victory requests be stricken) seeks to elevate the rights of Lenders above other parties without statutory authority or due process. Victory further suggests that, in addition to striking this language, that language should be included which clearly states that the Lenders do not have any greater rights in the leaseholds (or executory contracts) than the Debtors under Section 365 of the Bankruptcy Code, and that the rights of landlords and other parties to leases and executory contracts under Section 365 of the Bankruptcy Code shall not be impaired.

**C. <u>Leasehold Interests in Favor of the Lenders</u>**

The Proposed Post-Petition Financing creates leasehold mortgages on the Debtors' leaseholds in the Lenders' favor. (Final Order at ¶6; Credit Agreement §§ 1.1, 7.1.16; Motion at ¶31(g)) Victory is concerned that the creation of such mortgages could be interpreted to alter the landlords' rights under Section 365 of the Bankruptcy Code—specifically, as to lease assignment, assumption, or rejection. Therefore, Victory requests that the Final Order on the Motion include a provision stating that (i) the landlords' rights under Section 365 are fully preserved and unaltered in any way by the Proposed Post-Petition Financing; and (ii) the leasehold mortgages constitute assignments of collateral only and not the leaseholds themselves.

**D. <u>Superpriority Status Under Bankruptcy Code Section 364(c) and Possibility of Administrative Insolvency</u>**

Finally, Victory has certain concerns in connection with the superpriority administrative status requested by the Motion. The Proposed Post-Petition Financing creates, in addition to

first-priority secured liens, a superpriority administrative claim under Section 364(c) of the Bankruptcy Code in favor of the Lenders that is virtually unlimited in scope. (Proposed Final Order at ¶14; Interim Order at ¶14; Motion at ¶31(h))

Whenever superpriority debtor-in-possession financing is approved, there is a risk of administrative insolvency, because circumstances could develop in which there are insufficient assets available to satisfy administrative claims. *See 3 Collier on Bankruptcy* § 364.04[2][d].

Administrative claims that could be sacrificed in such a scenario would include certain claims of landlords, including claims for post-petition rent under Bankruptcy Code § 365(d)(3) and cure payments for assumed leases under Bankruptcy Code § 365(f). In the event of administrative insolvency, it is conceivable that, under the terms of the Proposed Post-Petition Financing, landlords such as Victory would even be forced to disgorge earlier-made rent or cure payments.[4] *See, e.g., In re Ames Department Stores*, 306 B.R. 43, 82 (Bankr. S.D.N.Y. 2004) (ordering payment of postpetition rent as administrative claim to landlords; however, such payment was without prejudice to superpriority DIP lenders' rights to request disgorgement of such payments in accordance with that lender's superpriority status). Other administrative claimants (including, potentially, trade creditors who continue doing post-petition business with the Debtors) could also be subject to disgorgement, which could cause these claimants to stop supplying goods or services to the Debtors, with potentially disastrous results for the Debtors' reorganization.

As a way to mitigate these concerns, Victory requests that the Final Order on the Motion establish that administrative claim payments made to landlords and others in the course of this case will <u>not</u> be subject to disgorgement, and that once made, such payments cannot be disgorged.

[4] In the event of administrative insolvency, Victory does not concede that such disgorgement would be proper, and reserves its rights to argue to the contrary.

## III. CONCLUSION

For the reasons stated above, Victory respectfully requests that the Proposed Post-Petition Financing, and the Final Order implementing said financing, be modified to address the potential prejudice to landlords addressed in this Limited Objection.

**WHEREFORE**, Victory Real Estate Investments, LLC respectfully requests that the financing proposal contained in the Debtors' Emergency Motion Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, And 364 For Interim And Final Financing Orders (I) Authorizing Debtors To Obtain Post-Petition Financing And Utilize Cash Collateral, (II) Granting Adequate Protection To Pre-Petition Lenders, (III) Modifying The Automatic Stay, And (IV) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) And (c) be modified as follows:

(1) that Paragraph 16 of the Proposed Final Order be amended or stricken to establish that Lenders have no control over the Debtors' powers under Section 365 of the Bankruptcy Code, and that such powers will be completely unfettered by any requirement of Lender consent;

(2) that Paragraph 12 of the Proposed Final Order (as well as the Credit Agreement) be modified to state that the Lenders may not unilaterally refuse to disburse sums to the Debtors' landlords in payment of administrative claims due to landlords; and that sums to be used for such claims be placed in accounts not within Lenders' control;

(3) that Paragraph 11 of the Proposed Final Order be amended or stricken to establish that no lease provisions shall be nullified by the Proposed Post-Petition Financing; or in the alternative, that this provision be amended to make clear that landlords' rights remain fully protected under Section 365 of the Bankruptcy Code, and that the Lenders do not have any greater rights in the leaseholds than the Debtors under Section 365 of the Bankruptcy Code;

(4) that as to the leasehold mortgages created by the Proposed Post-Petition Financing, that a provision of the Final Order establish that (i) the landlords' rights under Section 365 of the

Bankruptcy Code are fully preserved and unaltered in any way by the Proposed Post-Petition Financing; and (ii) the leasehold mortgages constitute assignments of collateral only and not the leaseholds themselves; and

(5) that the Final Order establish that, once made, administrative claims cannot be disgorged by landlords and other administrative claimants.

Dated: Uniondale, New York
March 11, 2005

SCARCELLA ROSEN & SLOME LLP

By: /s/ Thomas R. Slome
Thomas R. Slome (TS-0957)
Jil Mazer-Marino (JM-6470)

333 Earle Ovington Boulevard
Suite 901
Uniondale, New York 11553
Tel: 516-227-1600

Attorneys for Victory Real Estate Investments, LLC, Victory Investments, Inc., et al.

G:\victory Real Estate\lit\Objection to DIP Financing Motion.doc