| | |
|---|---|
| KELLEY DRYE & WARREN LLP<br>101 Park Avenue<br>New York, New York 10178<br>James S. Carr (JC-1603)<br>Robert L. LeHane (RL-9422)<br>Tel: (212) 808-7800<br>Fax: (212) 808-7897 | **Hearing Date: March 15, 2005 at 10:00 a.m.**<br>**Objection Deadline: March 11, 2005 at 4:00 p.m.** |

Attorneys for Edens & Avant, Developers Diversified Realty Corporation, Weingarten Realty Investors, WRI/TEXLA, LLC, Krusch Properties, LLC, Palm Springs Mile Associates, Ltd., Villa Rica Retail Properties, L.L.C. and ALG Limited Partnership

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: )<br>)<br>)<br>WINN-DIXIE STORES, INC., *et al.*, )<br>)<br>Debtors. )<br>)<br>) | Chapter 11<br><br>Case No. 05 – 11063 (RDD)<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF EDENS & AVANT, DEVELOPERS DIVERSIFIED REALTY CORPORATION, WEINGARTEN REALTY INVESTORS, WRI/TEXLA, LLC, KRUSCH PROPERTIES, LLC, PALM SPRINGS MILE ASSOCIATES, LTD., VILLA RICA RETAIL PROPERTIES, L.L.C. , PINSON MARKETPLACE, LLC AND R.B. RIVERDALE, LLC TO DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C §§ 105, 361, 362, 363 AND 364 FOR INTERIM AND FINAL FINANCING ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING AND UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND (C)**

Edens & Avant, Developers Diversified Realty Corp., Weingarten Realty Investors, WRI/TEXLA, LLC, Krusch Properties, LLC, Palm Springs Mile Associates, Ltd., Villa Rica Retail Properties, L.L.C., Pinson Marketplace, LLC, and R. B., Riverdale, LLC (collectively the "Landlords"), by and through their attorneys, Kelley Drye & Warren LLP, hereby submit this limited objection (the "Objection") to Debtors' Motion for Orders (I) Authorizing Debtors to Obtain Post-Petition Financing and Utilize Cash Collateral, (II) Granting Adequate Protection to Pre-Petition Lenders, (III) Modifying the Automatic Stay, and (IV)

NY01/STEEH/998522.2

Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) (the "Motion"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Landlords object to the Motion because the Debtors seek to grant the Lender a direct lien on the Leases which, in the event of a default by the Debtors, would effect a *de facto* assignment of the Leases to the Lender, which are banks, not retailers or grocers, without requiring that the Lender satisfy the provisions of section 365(b)(3) of the Bankruptcy Code, which applies heightened standards to the assignment of shopping center leases.

2. The Motion also seeks to provide the Lenders with inappropriate remedies in the event the Debtors default under the terms of the DIP Financing, including immediate possession and use of the Leased Premises without notice to the Landlords or regard to the terms of the Leases or any guidelines as to the Lender's use of the Leased Premises (defined below).

## BACKGROUND

3. On February 21, 2005 (the "Petition Date"), Winn-Dixie Stores, Inc. and its debtor affiliates, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

4. The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. The Landlords are the owners, or the managing agents for the landlords, of numerous shopping centers located throughout the United States. The Debtors lease retail space from the Landlords pursuant to written leases (collectively, the "Leases") at the 37 locations

identified in the chart annexed hereto as Exhibit "A" (the "Leased Premises"). The Leased Premises are all located in shopping centers as that term is defined in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

6.  On February 21, 2005, the Debtors filed the Motion, seeking interim and final orders authorizing the Debtors to obtain post-petition secured financing in the maximum aggregate amount of $800 million (the "DIP Financing") from Wachovia Bank National Association, as Administrative Agent and Collateral Agent (the "Agent") and other financial institutions (collectively, the "Lenders," and together with Agent, the "Lender") from time to time parties to a certain Credit Agreement (the "Credit Agreement"). By the Motion, the Debtors request that the financing provided by the Lender be secured by senior, perfected, valid, enforceable and non-avoidable security interests in and liens on substantially all of the Debtors' assets, including a direct lien on the Leases.

7.  On February 23, 2005, this Court entered its Interim Order (the "Interim Order") granting the Motion on an interim basis and scheduling a final hearing for March 15, 2005. Pursuant to the Interim Order, the Lender is granted a security interest in substantially all of the Debtors' assets (the "Collateral"), including all "real property (owned and leased) and all products and proceeds" of the Leasehold Interests. (Interim Order, ¶6, p. 16.) The Interim Order also contains a finding that the Lender has perfected its first priority liens and security interests in the Collateral. (Interim Order, ¶ 7, p. 17-18, Credit Agreement Section 7.3.8, p. 97-98). No evidence has been provided, however, to support the finding that the Lender, without the written consent of a specific landlord, has a validly perfected enforceable pre-petition security interest in any of the Leases.

8.  On March 10, 2005, counsel for the Debtors provided a proposed form of final financing order (the "Proposed Final Order").

**ARGUMENT**

A. **A Direct Lien on the Leases Would Eliminate the Protections that Section 365(b)(3) of the Bankruptcy Code Provides to Shopping Center Landlords**

9. By the Motion, the Debtors seek, *inter alia*, to grant the Lender a direct lien on the Leases. (Motion ¶31(g), p. 15, Credit Agreement Section 7.1.16, p. 81, Security Agreement Section 2.1, p. 6, Proposed Final Order, ¶ 6). Although lenders frequently request liens on real property leases, most cash collateral and post-petition financing orders provide that only the proceeds of the leaseholds are encumbered, not the leaseholds themselves.[1] The Landlords object to any direct liens on the Leases and request that the description of Collateral in the Final Order provide that the lien not attach directly to the Leases, but rather that post-petition liens will be granted only on the proceeds of the sale, assignment or any other disposition of the Lease. This language provides the Lender with a lien on what it desires -- the cash proceeds of the Leases -- and does not prejudice the Debtors.

10. Under section 365(f)(2) of the Bankruptcy Code, a debtor cannot assign an unexpired lease of nonresidential real property without first proving that the proposed assignee can provide the landlord with adequate assurance of future performance.[2] Here, in the event that the Lender foreclosed on the Leases, the Landlords would suffer a *de facto* assignment of the Leases to a new tenant, the Lender, without adequate assurance of future performance as

---

[1] For example, the final debtor-in-possession financing Order in *In re Ultimate Electronics,* Case No. 05-10104 (PJW), dated March 4, 2005, limited the lender's lien to the proceeds of the Leases. Copies of the relevant pages of the final financing Order in *Ultimate Electronics* are attached collectively as Exhibit "B".

[2] Section 365(f)(2), of the Bankruptcy Code provides, in pertinent part, that:

    (2)    The trustee may assign an executory contract or unexpired lease of the debtor only if –
                      *    *    *
    (B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

required by section 365(b)(3) of the Bankruptcy Code when a shopping center lease is assumed and assigned.[3] Thus, the proposed direct lien on the Leases, if allowed, would circumvent critical protections granted to shopping center landlords by paragraphs (b) and (f) of section 365 of the Bankruptcy Code.

11. Thus, while the Landlords do not object to granting the Lender a lien on the proceeds of the sale of the Leases, the Landlords object to any attempt to grant the Lender a direct lien or security interest in the Leases themselves.[4]

12. The Landlord also object to placing liens directly on the Lease because a lien directly on the Leases could violate the terms of financing arrangements between the Landlords and their lenders.

13. In addition, the Motion attempts to delete provision in lease that would restrict placing a lien directly on the lease or in any way interfere with the debtors' ability to convey the security interest sought by the Lender. The Proposed Final Order provides:

> Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is

---

[3] In connection with a shopping center lease, section 365(b)(3) of the Bankruptcy Code provides that adequate assurance of future performance includes adequate assurance:
    (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
    (B) that any percentage rent due under such lease will not decline substantially;
    (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
    (D) that assumption will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

[4] A lien on the potential proceeds of the disposition of Debtors' leases more than adequately protects the Lender's interests, while remaining consistent with the terms of the underlying leases. The "bonus value" of the leases has been recognized as property of the bankruptcy estate, see, e.g., In re Ernst Home Center, Inc., 209 B.R. 974, 985-986 (Bankr. W.D. Wash. 1997), and a security interest in that bonus value, in the form of a lien on the proceeds of the disposition of leases, strikes a balance between the lenders' economic interests, Debtors' need for financing, and the landlords' rights under the leases and the Bankruptcy Code.

> obligated, any provision that restricts, limits or impairs in any way any Debtor's ability or right to grant to Lender security interests in or liens upon any of its assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) or otherwise enter into and comply with all of the terms, conditions and provisions of the Credit Agreement, the other Loan Documents and/or this Final Order (all such provisions being collectively referred to as "Restrictive Clauses") shall not be effective and shall be unenforceable against any such Debtor(s) and Lender, and, therefore, shall not adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Lender pursuant to this Final Order, the Credit Agreement and/or the other Loan Documents or any of the rights of Lender hereunder or thereunder, and such Restrictive Clauses shall not render any contract or lease unable to be assumed and/or assigned by any Debtor, or in any way impair or limit the Debtors' ability or right to assume and/or assign any contract or lease, under Sections 365 or 1123 of the Bankruptcy Code.

(Proposed Final Order, ¶11). There is no authority for this provision and the Landlords request that it be deleted from the final form of financing Order.

### B. The Landlords Object to Granting the Lender Occupancy and Liquidation Rights in Violation of the Leases and Section 365 of the Bankruptcy Code

14. By the Motion, the Debtors request the Court's permission to grant the Lender a variety of inappropriate remedies in the event of the Debtors' default under the Credit Agreement. For example, paragraph 18 of the Proposed Final Order provides in relevant part that:

> …in the event of a default, the automatic stay provided for pursuant to Section 362 of the Bankruptcy Code and any other restrictions on the enforcement by Lender of its liens upon and security interests in the Collateral or any other rights under the Loan Documents granted to or for the benefit of Lender or pursuant to this Final Order shall be automatically vacated and modified without any further action being required, and (iii) Lender, without further notice, hearing or approval of this Court, shall be, and hereby is authorized, in the discretion of Lender, to take any and all actions or remedies which Lender may deem appropriate to proceed against and realize upon the Collateral and any other assets and properties of Debtors' estates upon which Lender has been or may hereafter be granted liens and security

> interests to obtain the full and indefeasible repayment of the Obligations. Nothing contained in this Final Order or otherwise shall be construed to obligate Lender in any way to lend or advance any additional funds to Debtors, or provide other financial accommodations to Debtors upon or after the occurrence of an Event of Default.

Proposed Final Order, ¶ 18.

15. In addition, paragraph 19, Collateral Rights, of the Proposed Final Order Provides:

> (b) upon and after the occurrence of an Event of Default, and subject to Lender obtaining relief from the automatic stay as provided for herein, Lender, in its discretion, in connection with a liquidation of any of the Collateral may, without cost or expense to Lender: (i) enter upon, occupy and use any real property, fixtures and equipment owned or leased by Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses. Lender will be responsible for the payment of any fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property and any reasonable costs or expenses incurred by such lessor, licensor or owner for the period of time that Lender actually occupies or uses the premises, equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Lender actually occupies or uses such assets or properties).[5]

Proposed Final Order, ¶ 19.

16. Essentially, the Motion asks the Court to grant the Lender, a third party non-debtor, the unfettered right, in the event of a default, to occupy and use the Leased Premises without performing all of the Debtors' obligations under the Leases, and without providing the Landlords with adequate assurance of future performance, in absolute violation of paragraphs (b), (d), and (f) of section 365 of the Bankruptcy Code. The Lender does not have the right to

---

[5] Although paragraph 19 of the Proposed Final Order provides for the payment of any reasonable costs, expenses or other amounts due to the Landlords, it is not clear whether this includes all rent

(continued…)

NY01/STEEH/998522.2          7

use the Leased Premises to liquidate its Collateral without complying with all of the obligations under the Leases, and the Debtors have provided no authority that supports such a request. Accordingly, any final Order on the Motion should prohibit the Lender from entering and using the Leased Premises absent the express written consent of the Landlords, or further Order of this Court, after a separate motion requesting such relief on appropriate notice to the Landlords.

17. At a minimum, in the event that the Court authorizes the Lender to occupy the Leased Premises and liquidate its Collateral, any final Order entered on the Motion should provide that if the Lender occupies the Leased Premises, it must timely perform all of the obligations arising under the Leases going forward, and cure all existing defaults as required by section 365(b)(1) of the Bankruptcy Code when a lease is assumed and assigned.

18. Finally, the Proposed Final Order provides that upon the occurrence of an event of default, the Lender can exercise its rights against the Collateral with five (5) business days notice upon the Court, Debtors' counsel, counsel to the Committee, any trustee of Debtors, if appointed, and the United States Trustee, without notifying the Landlords. (Proposed Final Order, ¶18, p. 30.) If the Lender is authorized to occupy the Leased Premises in the event of the Debtors' default, the affected Landlords and their counsel, to the extent known by the Debtors, should receive the same notice provided to the Debtors and Debtors' counsel. Additionally, the Landlords request ten (10) days notice, rather than five (5) days, before the Lender can exercise its rights against the Leases.

## JOINDER IN OTHER OBJECTIONS

19. The Landlords hereby join in the objections filed by the Debtors' other landlords, to the extent not inconsistent herewith.

---

(…continued)
    and rent-related obligations, including, but not limited to, utilities, taxes and common area
    maintenance charges.

NY01/STEEH/998522.2         8

**CONCLUSION**

WHEREFORE, the Landlords respectfully request that the Court (i) deny the relief requested in the Motion unless the Proposed Final Order (a) provides that any lien relating to the Leases shall attach only to the proceeds of the sale of the Leases, and not the Leases themselves, and (b) modifies the Lender's remedies in the event of a default by the Landlords as set forth above; and (ii) grant such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        March 11, 2005

                        KELLEY DRYE & WARREN LLP

                        By: _____
                             James S. Carr (JC-1603)
                             Robert L. LeHane (RL-9422)
                        101 Park Avenue
                        New York, New York 10178
                        Tel:  212-808-7800
                        Fax:  212-808-7897

                        Attorneys for Edens & Avant, Developers Diversified Realty Corporation, Weingarten Realty Investors, WRI/TEXLA, LLC, Krusch Properties, LLC, and Palm Springs Mile Associates, Ltd., Villa Rica Retail Properties, L.L.C., and Pinson Marketplace, LLC, R.B., Riverdale, LLC

## EXHIBIT A

**Edens & Avant**

| Store No. | Property Name | City, State |
|---|---|---|
| 84 | Amelia Plaza | Fernandina Beach, Florida |
| 599 | Baldwin Square | Mobile, Alabama |
| 2620 | Ellis Isle | Jackson, Mississippi |
| 2702 | Indian Creek Crossing | Atlanta, Georgia |
| 2156 | Landing Station | Lake Wylie, South Carolina |
| 1360 | Magee SC | Magee, Mississippi |
| 2213 | Marketplace at Ocala | Ocala, Florida |
| 2333 | Marketplace SC | Palm Bay, Florida |
| 264 | Oakwood Square | Boynton Beach, Florida |
| 2230 | Palm Bay West | Palm Bay, Florida |
| 2708 | Plantation Pointe, SC | Smyrna, Georgia |
| 736 | Promenades Mall | Port Charlotte, Florida |
| 1347 | Reservoire Square SC | Brandon, Mississippi |
| 2723 | Rockbridge Place | Stone Mountain, Georgia |
| 1912 | Shields Plaza | Huntsville, Alabama |
| 2008 | South Square Marketplace | Charlotte, North Carolina |
| 1233 | Woodberry Plaza | West Columbia, South Carolina |

**Developers Diversified Realty Corporation**

| Store No. | Property Name | City, State |
|---|---|---|
| 73 | Jackson Regional | 934 Dunn Avenue Jacksonville, FL |
| 409 | Pepperell Corners | 2440 Pepperall Pkwy Opelika, AL |
| 417 | Brook Highland Plaza | 5201 Highway 280 So Birmingham, AL |
| 631 | Highlands Plaza | 2900 Highland Road   Lakeland, FL |
| 739 | Carillon Place | 5010 Airport Road NO Naples, FL |
| 1255 | West Town Plaza | 441 N. Dunun Plaza Union, SC |
| 1771 | Glenway Crossing | 5150 Glencrossing Way Cincinatti, OH |
| 1811 | Ellis Crossing | 655 N. Expressway Griffin, GA |
| 2174 | Springdale Plaza | 1671 Springdale Drive Camden SC 29020 |
| 2718 | Chamblee Plaza | 5528 Peachtree Ind. Blvd. Chamblee, GA |
| 2735 | Five Forks Village | 850 Dogwood Road Lawrenceville, GA |
|  | Turfway Plaza | Florence, KY |

**Weingarten Realty Investors**

| Store No. | Property Name | City, State |
|---|---|---|
| 359 | TJ Maxx Plaza | 7420 SW 117 St.  Miami, Fl |
| 222 | Vizcaya Square | 901 North Nob Rd  Planation, FL |
| 218 | Embassy Lakes | 2581 No Hiatus Rd Cooper City, FL |

**WRI.TEXLA, LLC**

| | | |
|---|---|---|
| 1537 | Town & Country | 2200 W. Thomas St.<br>Hammond, LA |

**Krusch Properties, LLC**

| | | |
|---|---|---|
| 2039 | Garden Creek Center | 1605 New Garden Rd.,<br>Greenboro, NC |

**Palm Springs Mile Associates, Ltd.**

| | | |
|---|---|---|
| 243 | Palm Springs Mile Shopping Center | 585 W. 49th Street<br>Hialeah, FL |

**Villa Rica Retail Properties, L.L.C.**

| | | |
|---|---|---|
| 2716* | Villa Rica Crossing | Villa Rica, GA |

**R. B. Riverdale, LLC**

| | | |
|---|---|---|
| | Riverdale | Riverdale, GA |

**Pinson Marketplace, LLC**

| | | |
|---|---|---|
| | Pinson Square Marketplace | Pinson, AL |

* Kelley Drye is confirming that these store numbers represent the correct locations for each of these clients.