UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>ULTIMATE ELECTRONICS, et al.,<br><br>Debtors. | Chapter 11<br>Case No. 05-10104 (PJW)<br><br>Jointly Administered<br><br>Related Docket Nos. 15, 58, 76, 173, 195, 254 |

### FINAL ORDER (1) APPROVING POST-PETITION FINANCING, (2) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (3) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 363 AND 364, (4) AUTHORIZING PAYMENT OF ACCRUED INTEREST, AND (5) MODIFYING AUTOMATIC STAY

THIS MATTER having come before the Court upon motion (the "DIP Motion") by Ultimate Electronics, Inc., Fast Trak, Inc., Ultimate Intangibles Corp., Ultimate Leasing Corp., Ultimate Electronics Partners Corp., Ultimate Electronics Leasing LP, and Ultimate Electronics Texas LP (each a "Debtor" and collectively, the "Debtors"), each as a debtor and debtor-in-possession in the above captioned chapter 11 cases (collectively, the "Cases") seeking, among other things, an order authorizing the Debtors to:

(i)     Obtain credit and incur debt up to the aggregate principal amount of $118,547,500 secured by liens (as defined in Section 101(37) of Title 11, U.S.C., as amended (the "Bankruptcy Code") and referred to and defined in more detail herein as the "DIP Liens") on property of the Debtors' estates pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code and with priority, as to administrative expenses, as provided in Section 364(c)(1) of the Bankruptcy Code;

NYDOCS/1184084.11

2. <u>Post-Petition Liens; Super-Priority Administrative Claim Status; Adequate Protection.</u>

2.1 <u>Post-Petition Liens.</u> The DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, pursuant to Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, first priority, continuing, valid, binding, enforceable, and automatically perfected postpetition security interests and other liens (collectively, the "**DIP Liens**") (i) except as otherwise provided herein, in all presently owned and hereafter acquired assets of the Debtors, wherever located, whether now owned or leased (other than if subject to a true lease) or hereafter acquired or leased (other than if subject to a true lease), including without limitation, real, personal and fixture property (whether owned or leased, other than if subject to a true lease), accounts, books, goods (including equipment), deposit accounts, investment property, instruments, letter of credit rights, promissory notes, drafts, documents, chattel paper, inventory, general intangibles (including any agreements or contracts existing as of the date hereof, or hereafter entered into by the Debtors, relating to the liquidation or any other sale outside of the ordinary course of business of any of the Debtors' assets), commercial tort claims, health care insurance receivables, all money and intellectual property, plus all owned real estate, the proceeds of the sale and/or assignment of any leasehold interests, and fixed assets at all of the Debtors' leased facilities and owned locations and proceeds and products of all of the foregoing (including insurance proceeds) and all supporting obligations relating to the foregoing, (ii) in proceeds of any avoidance actions brought pursuant to Section 549 of the Bankruptcy Code to recover any post-petition transfer of Collateral of the DIP Agent or the DIP Lenders, (iii) in any unencumbered assets of the Debtors, and (iv) in all capital stock and other equity interests (the "**Capital Stock**") in the Debtors (other than Ultimate Electronics, Inc.) and subsidiaries

13

has not occurred or issues a Foreclosure Injunction, the automatic stay, as to the DIP Lenders, the DIP Agent, the Pre-Petition Lenders and the Pre-Petition Agent shall automatically be terminated at the end of the Remedies Notice Period and without further notice or order to permit the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders to pursue the remedies set forth above. Regardless of anything contained herein to the contrary, prior to the payment in full in cash of the DIP Revolving Loan and the DIP Tranche B Loan, holders of the DIP Tranche C Loan shall have no right to take any enforcement action or pursue any right or remedy unless first expressly authorized by the DIP Agent in writing.

    10.3  <u>Disposition of Collateral</u>. If the DIP Agent or DIP Lenders exercise any of their rights and remedies upon the occurrence of an Event of Default, the DIP Agent may retain one or more agents to sell, lease, or otherwise dispose of the Collateral, subject to the provisions of paragraphs 10.4 and 10.5 below. In any exercise of rights and remedies upon an Event of Default under the DIP Credit Agreement, the DIP Agent and DIP Lenders are authorized to proceed under or pursuant to the DIP Credit Agreement.

    10.4  <u>Sale of Assets</u>. In the exercise of the DIP Agent's rights and remedies upon an Event of Default,

    (a)  consistent with the provisions of paragraph 10.5 below, the DIP Agent may by written notice to the Debtors require the Debtors to file a motion seeking to retain one or more agents to sell, lease, or otherwise dispose of the Collateral on terms acceptable to the DIP Agent, (a) in accordance with Section 365 of the Bankruptcy Code and (b) subject to the landlords' right to object and prior approval of the Bankruptcy Court. The Debtors shall file such motion within ten (10) business days of the DIP Agent's request and shall diligently prosecute such motion. If the Debtors fail to so file the motion, the DIP Agent may file and prosecute such a motion in the name of the Debtors; and/or

    (b)  consistent with the provisions of paragraph 10.5 below, the DIP Agent may by written notice to the Debtors require the Debtors to file a motion or motions seeking to sell, assume, assign, or otherwise dispose of any

26

or all of the real estate (including, without limitation, leasehold interests) of the Debtors pursuant to Sections 363 and 365 of the Bankruptcy Code, on terms acceptable to the DIP Agent, (a) in accordance with Section 365 of the Bankruptcy Code and (b) subject to the landlords' right to object and prior approval of the Bankruptcy Court. The Debtors shall file such motion or motions within ten (10) business days of the DIP Agent's request and shall diligently prosecute such motion. If the Debtors fail to so file the motion, the DIP Agent may file and prosecute such a motion in the name of the Debtors; and/or

(c) the DIP Agent may proceed under or pursuant to the DIP Credit Agreement.

Any Prior Liens that have a valid, properly perfected, unavoidable and senior interest in any collateral that is the subject of a sale of assets as set forth in this paragraph 10.4, will attach to the proceeds of such sale with the same validity and priority and to the same extent as they held in such collateral prior to the sale. All proceeds realized from any of the foregoing shall be turned over to the DIP Agent for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Credit Agreement and this Final Order, *provided, however* that the proceeds of any collateral that is subject to the Prior Liens shall be first turned over to the holders of the Prior Liens until their claims have been paid in full, and shall thereafter be turned over to the DIP Agent as provided herein.

10.5 Leased Premises. (i) Upon five (5) business days written notice to the landlord of any leased premises that the Termination Date has occurred, the DIP Agent or the Pre-Petition Agent may, subject to any separate agreement by and between such landlord and the DIP Agent or the Pre-Petition Agent, if any, and subject to the other provisions of this Final Order, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to the Collateral, *provided* that (a) all of the landlords' rights and privileges, if any, are reserved and (b) the Debtors shall remain obligated to pay any rent and additional rent due under the terms of their leases and in the event that such obligations are not fulfilled, then

27

whoever is occupying the leased premises as set forth in this paragraph 10.5 shall only pay rent and additional rent obligations of the Debtors that first arise after the DIP Agent's or the Pre-Petition Agent's written notice referenced above and that are payable during the period of such occupancy by the DIP Agent or the Pre-Petition Agent, or their agents, calculated on a per diem basis. Nothing herein shall require the DIP Agent or the Pre-Petition Agent to assume any lease as a condition to the rights afforded to the DIP Agent or the Pre-Petition Agent in this paragraph. Furthermore, any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord may have in any Collateral located on such leased premises, to the extent the same is not void under Section 545 of the Bankruptcy Code, is hereby expressly subordinated to the liens of the DIP Agent or the Pre-Petition Agent in the Collateral. Notwithstanding anything contained herein to the contrary or otherwise, in relation to the Debtors' leased locations, the Debtors and/or the DIP Agent, as the case may be, shall be entitled to move the Court for approval to conduct liquidation or "going-out-of-business sales" in accordance with the provisions of paragraph 10.4 hereof and subject to the terms approved by the Court, which hearing shall be upon not less than five (5) business days' written notice to interested parties, including, without limitation, the landlord to any affected leased location and the Official Committee. Nothing contained herein shall be deemed to prejudice the rights of interested parties other than the Debtors, including, without limitation, the landlord to any affected leased location and the Official Committee, to object to such a request. Prior to moving the Court for approval of the terms of a proposed going-out-of-business sale or the retention of a proposed liquidator, the Debtors and the DIP Agent will confer with the Official Committee as to the terms and conditions related thereto.

DIP Obligations, on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Termination Date.

11.9   Inconsistency. In the event of any inconsistency between the terms and conditions of the DIP Credit Agreement and of this Final Order, the provisions of this Final Order shall govern and control.

11.10   Joint and Several Liability. Nothing in this Final Order shall be construed to constitute a substantive consolidation of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable to the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders in accordance with the terms of the Pre-Petition Credit Agreement, the DIP Credit Facility and the DIP Credit Agreement.

11.11   Enforceability. This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and for the reasons set forth in paragraphs G, H, I and J hereof shall take effect and be fully enforceable immediately upon execution hereof pursuant to Bankruptcy Rule 4001(c)(2).

11.12   Objections Overruled. All objections to the DIP Motion, to the extent not withdrawn or resolved, are hereby overruled.

11.13   Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Final Order according to its terms

SO ORDERED by the Court this 4 day of March, 2005.

                                                UNITED STATES BANKRUPTCY JUDGE