BURR & FORMAN LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Robert B. Rubin (RR-3325)
Derek F. Meek (DM-7723)

DECHERT LLP
30 Rockefeller Plaza
New York, New York  10112
Telephone: (212) 698-3500
Facsimile (212) 698-3599
Joel H. Levitin (JL-5814)
Elise Scherr Frejka (ESF-6896)

*Attorneys for Buffalo Rock Company*

**Hearing Date and Time: April 12, 2005 at 10:00 A.M.**
**Objection Deadline: April 5, 2005 at 4:00 P.M.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                                        :    Chapter 11
                                                              :
Winn-Dixie Stores, Inc., et al.,                              :    Case No.: 05-11063 (RDD)
                                                              :
                              Debtors.                        :    (Jointly Administered)
                                                              :
                                                              :
------------------------------------------------------------x

### MOTION OF BUFFALO ROCK COMPANY TO TRANSFER VENUE OF THE DEBTORS' BANKRUPTCY CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION OR SUCH OTHER DISTRICT WHERE VENUE WOULD BE APPROPRIATE UNDER 28 U.S.C. § 1408

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Buffalo Rock Company ("Buffalo Rock"), a creditor of the above-captioned debtors (the

"Debtors") and a party in interest herein, hereby moves this Court for entry of an Order pursuant

to 28 U.S.C. § 1408 and 1412, rule 1014 of the Federal Rules of Bankruptcy Procedure and

1339204 v21337039 v3

section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") transferring venue of these chapter 11 cases to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division or such other district in the southeastern United States where venue would be appropriate under 28 U.S.C. § 1408.   In support thereof, Buffalo Rock respectfully represents as follows:

## I.    FACTS

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed bankruptcy petitions pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.      It appears that the basis for the venue of the Debtors' bankruptcy cases in New York is by virtue of Dixie Stores, Inc., the first-filed bankruptcy case (Case No. 05-11061). According to Debtors' "Motion for Joint Administration", Dixie Stores, Inc. is a wholly-owned subsidiary of Winn-Dixie Stores, Inc., the ultimate parent company among the Debtors. The Debtors have selected venue in the Southern District of New York's Bankruptcy Court for the other Winn Dixie entities by virtue of the other Debtors' status as "affiliates" of Dixie Stores, Inc. pursuant to 28 U.S.C. § 1408(2).

3.      In an apparent attempt to fabricate venue for its bankruptcy filing in New York, Dixie Stores, Inc. was incorporated on February 9, 2005 in the State of New York, a mere twelve (12) days prior to the Petition Date.  A copy of Dixie Stores, Inc.'s incorporation documents is attached hereto as Exhibit A.

4.      The incorporation of Dixie Stores, Inc. was performed by Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps"), the Debtors' lead bankruptcy counsel in these cases. *See* Exhibit A.  According to the "Application for Authority to Retain Skadden, Arps, Slate,

Meagher & Flom LLP as Lead Restructuring and Bankruptcy Counsel to the Debtors", "Skadden Arps began providing restructuring and bankruptcy services to the Debtors on February 2, 2005."

5.      Of the remaining twenty-three entities that filed for bankruptcy relief, nineteen of those entities are incorporated in the state of Florida.  Additionally, one entity is incorporated in South Carolina, one entity is incorporated in Mississippi, one entity is incorporated in Texas, and one entity is incorporated in Delaware.  A copy of the Debtors' list of entities and their respective states of incorporation is attached hereto as Exhibit B.

6.      The Debtors have retained a law firm headquartered in Atlanta, Georgia as co-bankruptcy counsel.

7.      Pursuant to the interim financing arrangement approved by the Bankruptcy Court, the administrative agent and collateral agent for itself and the other financial institutions that are parties to the Debtors' debtor-in-possession credit agreement is Wachovia Bank National Association.  Wachovia Bank National Association is a bank headquartered in Charlotte, North Carolina.

8.      The Debtors apparent center of business is in Jacksonville, Florida, with the remainder of its business located in the southeastern United States.  Each of the twenty-four Debtors, including Dixie Stores, Inc., lists the individual debtor's "County of Residence or of the Principal Place of Business" as Duval County, Florida on their respective petitions.  Copies of the first two pages of each petition, starting with Dixie Stores, Inc., are attached hereto as Exhibit C.  On Exhibit A to the Winn Dixie Stores, Inc. petition, the Debtors list a brief description of its business as, "Food and drug retailer **operating in the southeastern** United States" (emphasis added).

9.    Each of the Debtors' individual petitions lists the location of the debtor's principal assets as Jacksonville, Florida, except for Dixie Stores, Inc. and Table Supply Food Stores Co., Inc., which entities list the location of their principal assets as "Wachovia Bank, 12 E. 49th Street, 20th Floor, New York, NY, 10017." *See* Exhibit C.

10.    According to its 2005 Annual Report filed January 13, 2005 with the Florida Secretary of State, Table Supply Food Stores Co., Inc.'s principal place of business, registered agent, and each of its officers and directors are located in Florida. A copy of the Annual Report as printed from the Florida Secretary of State website is attached hereto as Exhibit D.

11.    The mailing address stated on each of the Debtors' petitions is "5050 Edgewood Court, Jacksonville, FL, 32254-3699", except for Dixie Stores, Inc., which states "5050 Edgewood Court, Jacksonville, FL, 32254-3699, c/o 111 Eighth Avenue, New York, NY, 10011."[1] *See* Exhibit C. As stated in Dixie Stores, Inc.'s Certificate of Incorporation, this New York address is that of its registered agent, CT Corporation. *See* Exhibit A.

12.    Of the forty largest trade creditors and the ten largest institutional creditors listed by the Debtors, only one creditor, Powerhouse Produce, LLC, is from the state of New York. The vast majority of the remaining fifty largest unsecured creditors are from the southeastern United States. A copy of the largest trade and institutional creditors is attached hereto as Exhibit E. Additionally, according to the Debtors, the three largest secured creditors are from Charlotte, North Carolina,[2] Nashville, Tennessee, and Minneapolis, Minnesota. *See* Exhibit F, which is

---

[1]    One debtor, Winn-Dixie Raleigh, Inc., also lists a North Carolina address in addition to the Jacksonville, Florida address.

[2]    Wachovia Bank, the secured creditor from Charlotte, North Carolina, is listed as "Administrative Agent."

Schedule 2 to the "Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions and Applications" (the "Nussbaum Affidavit").

13.    On information and belief, all of Debtors' employees reside in the southeastern United States.

14.    None of the ordinary course professionals listed in the Debtors' "Motion for Approval of Retention and Compensation of Professionals Used in the Ordinary Course of Business" are located in the state of New York. Instead, the vast majority of these individuals are based in the southeastern United States.

15.    None of the thousands of gas, electricity, and water utilities listed in the exhibit to Debtors' "Motion for Order (A) Deeming Utilities Adequately Assured of Payment, (B) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services, and (C) Establishing Procedures for Resolving Requests for Additional Assurance" (the "Utilities Motion") is located in New York. Only four of approximately one hundred of the telephone utilities listed in the exhibit to the Utilities Motion are located in New York. None of the refuse collectors listed in the exhibit to the Utilities Motion are located in New York.

16.    Additionally, on Schedule 6 to the Nussbaum Affidavit (a copy of which is attached hereto as Exhibit G), the Debtors list all premises that are "owned, leased, or held under other arrangement from which the Debtors operate their businesses." None of the properties listed are in New York. The vast majority of these properties are located in the southeastern United States. Moreover, none of the unexpired leases of non-residential real property which the Debtors seek to reject in their "Motion for Authority to Reject Certain Real Property Leases, Effective as of the Petition Date" are for property located in New York, and the vast majority of the property is located in the southeastern United States.

17.    The Debtors' books and records are located in Jacksonville, Florida. *See* Exhibit H, which is Schedule 7 to the Nussbaum Affidavit. The employees and witnesses who can and would authenticate, explain, and produce the same, are on information and belief, also located in Jacksonville, Florida.

18.    Buffalo Rock, a beverage bottler headquartered in Birmingham, Alabama, sells its products in Georgia, Alabama, and Florida, and is owed approximately $2,800,000 in pre-petition debt by the Debtors.

## II.    LEGAL ANALYSIS

**A.    VENUE OF THESE BANKRUPTCY CASES IS IMPROPER DUE TO THE INCORPORATION IN NEW YORK OF DIXIE STORES, INC. SOLELY TO CREATE VENUE IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. ACCORDINGLY, THE DEBTORS' CASES SHOULD BE TRANSFERRED.**

19.    Section 1408 of Title 28 of the United State Code sets forth the eligibility for a debtor to file for bankruptcy within a particular venue.

20.    While on first glance the Debtors may technically meet the requirements for venue in the Bankruptcy Court for the Southern District of New York, upon deeper examination into the facts underlying the Debtors' eligibility, it is apparent that the Debtors "manufactured" venue in this Court through machinations shortly prior to the Petition Date.

21.    On February 9, 2005, twelve days prior to the Petition Date, Dixie Stores, Inc. was incorporated in New York. *See* Exhibit A. The legal counsel that performed the incorporation was "Skadden Arp [sic] Slate Meagher & Flom LLP", the lead bankruptcy counsel for the Debtors. *See Id.* Given the significant amount of prior preparation that an orderly chapter 11 bankruptcy filing takes, it is clear that the Debtors have been in preparation for filing these cases in advance of the February 9, 2005 incorporation of Dixie Stores, Inc.

22.     Accordingly, the only reasonable conclusion to be drawn is that the Debtors have engaged in blatant forum shopping in an effort to neutralize creditor involvement in these bankruptcy cases. The Debtors know the geographical location of the body of its creditors. By requiring them to participate in a distant court, the Debtors seek to minimize their impact on the Debtors' restructuring efforts. Venue in New York virtually ensures that the creditors will be disenfranchised from complete and effective participation in these bankruptcy cases. *See, e.g., In re Columbia Western, Inc.,* 183 B.R. 660 (Bankr. D. Mass. 1995) ("Creditors frequently find it difficult to finance an objection because of financial pressures caused by the filing of the case itself. Increasing the physical distance between those creditors and the forum may eliminate the ability of those creditors to object."). The Debtors are taking advantage of the fact that absent full and vigorous involvement by the broad range of creditor constituencies in these cases, they will be able to advance their own interests (and potentially the interests of unknown others) at the expense of their creditors, not to mention the goals and policies of the Bankruptcy Code.

23.     The "manufacture" of a debtor's eligibility results in improper venue, warranting the transfer of that debtor's case. In *In re Columbia Western, Inc.,* an Oregon corporation filed a bankruptcy petition in the District of Massachusetts two days after transferring a large sum of money into a Massachusetts bank and executing a month to month lease for office space from which it did not operate. 183 B.R. 660 (Bankr. D. Mass. 1995). Acting on a motion to transfer venue of the case to another venue, the Bankruptcy Court for the District of Massachusetts found that venue was improper under § 1408 and transferred the case to the Bankruptcy Court for the District of Oregon. *Id.* Specifically, the court noted that:

> The Court disregards the conveniently recent transfer to Massachusetts of the Debtor's funds and the lease of the empty office space. Any argument that those acts have relevance would not be made in good faith.

*Id.* at 660, n.12.

24.    Additionally, when faced with a motion to dismiss or transfer venue, the Bankruptcy Court for the District of Massachusetts found that venue was proper when the debtor in that case maintained a residence in Massachusetts in which he had resided in for 30 to 35 percent of the year for the prior twelve years.  However, the court specifically noted that had this "residence" been created strictly for the purpose of creating residence, then that "residence" would not be given any legal effect.  *In re Handel*, 242 B.R. 789, 792, n.7 (Bankr. D. Mass. 1999) ("And a residence created for the purpose of creating venue should be disregarded for any purpose.").

25.    Moreover, several courts, when making a determination as to whether a party meets the requirements of 11 U.S.C. § 109 to be a debtor, have indicated that actions taken solely for creating eligibility may constitute bad faith.  *See, e.g., In re McTague*, 198 B.R. 428, 432-33 (Bankr. W.D. N.Y. 1996) ("If property has been specifically placed or left in the United States for the sole purpose of creating eligibility that would not otherwise exist, then dismissal might be appropriate on other grounds, such as bad faith filing...."); *Bank of America, N.T. & S.A. v. World of English, N.V.*, 23 B.R. 1015, 1019-20 (N.D. Ga. 1982) ("There being no evidence that the bank account was transferred from Japan to California merely to create jurisdiction for a future bankruptcy proceeding involving Debtors...the Court concludes that Debtors have satisfied the eligibility requirements of 11 U.S.C. § 109.").

26.    Courts have also found that the filing of a chapter 11 bankruptcy petition for an entity that lacks ongoing operations and creditors arising from operation of a business is a filing in bad faith.  In *In re Double W Enterprises, Inc.*, the court found that a chapter 11 debtor did not operate "any sort of on-going business" and had no "trade or business debt resulting from any

traditional business operation." 240 B.R. 450, 454 (Bankr. M.D. Fla. 1999). The debtor's only basis for the filing was the "threat of multiple future claims", which the court found to be too illusory upon which to base a filing. Thus, the court believed that, "the case does not promote the policy of chapter 11 'to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors and produce a return for its stockholders.'" *Id.* at 456. Accordingly, the case was found to have not been filed for a "proper purpose" and, thus, was a bad faith filing. *Id. See also In re First Financial Enterprises, Inc.,* 99 B.R. 751, (Bankr. W.D. Tex. 1989) (chapter 11 case filed in bad faith where there were no ongoing business operations and there was no reasonable likelihood of rehabilitation and "it appears that the Debtor has filed this case for the sole purpose of doing indirectly what cannot be done directly.").

27.    Likewise, the filing of a bankruptcy petition solely to achieve bankruptcy venue for a company's "affiliates" cannot be deemed to be a "proper purpose" for a chapter 11 filing, as it does nothing to achieve the restructuring goals of chapter 11. The Court of Appeals for the Sixth Circuit, when faced with a motion for relief from stay by a creditor which asserted that the debtor had filed its bankruptcy petition solely to prevent it from obtaining a piece of property, found the debtor had acted in bad faith in filing its petition. The court, in making this determination, found that:

> Created at the eleventh hour, the debtor was not engaged in an ongoing business, lacked a sufficient cash flow, had few unsecured creditors, and claimed as its sole asset a heavily encumbered property...Given these facts, the bankruptcy court's finding that [the debtor] filed its petition in bad faith cannot be considered clearly erroneous.

*In re Laguna Associates Ltd. Partnership,* 30 F.3d 734, 738 (6th Cir. 1994)

28.    The lack of good faith in the filing of a bankruptcy petition is cause for dismissal of that petition under 11 U.S.C. § 1112(b).  *See, e.g., In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984).

29.    It appears that the basis for venue in New York is Dixie Stores, Inc., an entity incorporated twelve days prior to the Petition Date.  Accordingly, because the actions taken by the Debtors strictly to create venue in this District should not be given any legal effect, venue is not appropriate in the Bankruptcy Court for the Southern District of New York for the remaining entities.

30.    The principles of equity dictate that venue does not lie in New York.  Given its role as a court of equity, there should be no question of a bankruptcy court's ability to disregard the legal effect of any inequitable conduct.  As noted by *In re Scott Cable Communications, Inc.*:

> Section 105(a) was enacted to permit courts a measure of flexibility from the literal language of the code to carry the drafters' intent, recognizing that under isolated circumstances, a literal reading might thwart its purpose.  Section 105 appropriately has been invoked by other bankruptcy court "to prevent the abuses of process which may accompany forum shopping."

263 B.R. 6, 8 (Bankr. D. Conn. 2001) (citations omitted).

31.    Because actions taken by a debtor strictly to create venue or jurisdiction should not be given any legal effect, the Debtors fail to meet the requirements for venue in this district under 28 U.S.C. § 1408.  Thus, pursuant to Bankruptcy Rule 1014(a)(2), the Debtors' bankruptcy cases should be transferred. *See, e.g., In re Taflan*, 312 B.R. 588 (N.D. W.Va. 2004) ("Thus, if a venue is improper, the bankruptcy court must either dismiss the action or transfer it in the interest of justice or for the convenience of the parties.").

**B.    EVEN IF THE COURT FINDS VENUE TO BE PROPER UNDER 28 U.S.C. § 1408, THE INTEREST OF JUSTICE AND THE CONVENIENCE OF THE PARTIES DICTATE THAT THE COURT TRANSFER THESE CASES**

32.    Should this Court find venue to be proper in these cases, the principles of both law and equity still support the transfer of the Debtors' cases to the Middle District of Florida. Rule 1014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 28 U.S.C. § 1412 provide mechanisms for the transfer of a bankruptcy case to another venue.

33.    28 U.S.C. § 1412 dictates that:

> A district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.[3]

34.    Correspondingly, Bankruptcy Rule 1014(a)(1) provides that:

> If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States Trustee, and other entities as directed by the Court, the case may be transferred to any other district if the Court determines that the transfer is in the interest of justice or for the convenience of the parties.

35.    Accordingly, there are two primary issues that must be considered by a court when considering a request to transfer: (a) the interest of justice, and (b) convenience of the parties.

### i.    Interest of Justice

36.    The "interest of justice" criterion has been described as "an elusive term not easily amenable to definition." *In re Pinehaven Associates*, 132 B.R. 982, 990 (Bankr. E.D.N.Y. 1991). Moreover, this component "is a broad and flexible standard that must be applied on a case by case basis." *In re Éclair Bakery Ltd.*, 255 B.R. 121, 141 (Bankr. S.D.N.Y. 2000). Accordingly,

---

[3]    The authority of a bankruptcy court to exercise a district court's power to transfer a case via 28 U.S.C. § 1412 arises from the district court's referral of the bankruptcy court pursuant to 28 U.S.C. § 157(a).

in determining whether the "interest of justice" supports the transfer of an action, a variety of factors may be considered, including "fairness" and the "integrity of the bankruptcy system." *Id.* at 142.

### a.    Forum Shopping and The Integrity of the Bankruptcy System

37.    Even if the Debtors' blatant forum shopping and "manufacture" of eligibility shortly prior to the Petition Date is not found to warrant a finding of improper venue under 28 U.S.C. § 1408, this manufacture of eligibility dictates the transfer of the Debtors' bankruptcy cases in the "interest of justice."  Courts have repeatedly found that forum shopping, either in regard to venue for bankruptcy cases or otherwise, is an "evil" that is disfavored by the federal courts.  As noted by one bankruptcy court:

> Then there is the issue of forum shopping. How much deference should be given to forum selected primarily by the lawyers for the debtors, for their own convenience or remuneration? How much deference should be given to a debtors' concern that it get what it perceives to be a debtors' judge?  Whenever a creditor raises the venue question, none at all.   Forum shopping has never been favored by federal courts, and courts are quick to discern the evil in all its disguises.  In bankruptcy, too often the tactic is masked by pious pronouncements about the debtor's right to select the most advantageous of several possible forums, in order to advance the prospects of reorganization.   That rationale, however, should be taken with several grains of salt.  ***Too many corporations with familiar household names are operating in bankruptcy under the name of some obscure subsidiary whose venue happens to coincide with either the debtor's or the debtor's lawyers perception of the most favorable judicial forum in which to operate.***

*In re Abacus Broadcasting Corp.*, 154 B.R. 682, 668 (Bankr. W.D. Tex. 1993) (emphasis added).

38.    When considering a transfer of venue, this Court has previously found that flagrant forum shopping is not in the "interest of justice."  In refusing to grant a debtor's request to transfer an affiliated debtor's bankruptcy case to Southern District of New York, this Court noted that:

> On October 4, 1988, just prior to the hearing on the order to show cause to transfer venue of the Florida case, Maruki Florida filed its chapter 11 petition in this court in what was without question an effort to supply an affiliate of [the Florida debtor] such that the venue motion would be considered....To entertain the venue motion because of Maruki Florida's eleventh-hour filing after the stay was lifted in the [Florida debtor's] case by the Florida court would be to encourage flagrant forum shopping. Certainly, the interest of justice does not command such a result.

*In re Maruki*, 97 B.R. 166 (Bankr. S.D.N.Y. 1988).

39.    On another occasion, this Court similarly found forum shopping warranted a transfer, as it was not in the interest of justice and it impinged on the integrity of the bankruptcy system.  This Court stated:

> The Court considers that the interests of justice also warrant transfer for another reason.  The Court has found as a fact that this case was filed in the Southern District [of New York] for 'forum shopping' . . . .  The interests of justice require that this Court not reward such an effort.  This Court believes it appropriate to add as an additional relevant factor, though it may rarely be applicable, the integrity of the Bankruptcy Court system.

*In re Éclair Bankruptcy Ltd.*, 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000).

40.    Other courts have echoed this Court's findings that forum shopping is not in the interests of justice.  *See, e.g., In re Jordan*, 313 B.R. 242 (Bankr. W.D. Tenn. 2004) ("The judicial outcomes of such venue motions . . . should be based on a careful review and close scrutiny of the totality of the particular facts and circumstances of each case and consideration of basic fairness protections to allow the court to prevent inequitable abuses and unfair manipulative forum shopping by debtors in voluntary cases and petitioning creditors in involuntary cases.").  Thus, the "interest of justice" would clearly not be furthered by permitting blatant forum shopping, a practice disfavored in federal courts and which impinges on the integrity of the bankruptcy system, to continue unchecked.

### b.    Parties' Expectations

41.    Moreover, this Court has previously found that the "expectations of the parties" should be considered when determining whether venue is appropriate. *See In re Washington, Perito & Dubuc,* 154 B.R. 853 (Bankr. S.D.N.Y. 1993). In *Washington,* the court analyzed and determined venue, and ultimately transferred venue, in light of the "location" of the debtor's principal assets (accounts receivable) while performing a venue analysis in connection with the perfection of a security interest under the Uniform Commercial Code in same.  Applying the parties' expectations to its venue analysis, the court held that "[t[he approach used in the U.C.C. context seems appropriate in the venue context as well because it is an approach which conforms to the expectations of the parties." *Id.* at 861.

42.    With its extensive southeastern contacts, it is doubtful that any entity involved with these bankruptcy cases, other than Debtors' counsel, would "expect" that the Winn Dixie Debtors would file bankruptcy in New York.  Any southeastern forum, most notably the Middle District of Florida, would comport with the various parties' expectations.

### c.    Interests of the Forum in the Matter

43.    Another factor considered by courts in deciding whether the "interest of justice" is met is whether either forum (the current or prospective) has an interest in seeing the bankruptcy adjudicated in its forum.  *See, e.g., In re Enron Corp.,* 317 B.R. 629, 639 (Bankr. S.D.N.Y. 2004); *TIG Ins. Co. v. Smolker,* 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001).  As shown above, New York's ties to the Debtors are tenuous, at best.  On the other hand, Florida has a significant interest in these bankruptcy cases.  A large number of the Debtors' employees reside in the state of Florida, along with a large number of the Debtors' creditors.  These bankruptcy proceedings will have a significant impact on those parties.

44.    Given that the principal place of business of the Debtors is in Florida and a significant amount of the Debtors' operations are in Florida, the court will likely be called upon to apply Florida law.  Florida would most certainly prefer that a Florida court, with its accompanying experience on the issues, apply the law of Florida, rather than have Florida law applied by a foreign jurisdiction.

### d.    Judicial Economy and Efficient Administration

45.    The Debtors' business operations are likely to have a substantial amount of legal proceedings, claims, and entanglements that will need to be handled during the administration of these bankruptcy cases.  With respect to disputed debts and claims, state law will generally supply the governing principles, and in that respect, the law of states other than New York (especially the law of southeastern states) will apply to the vast majority of the disputed debts and claims.  Moreover, the witnesses and documentary evidence necessary to handle any such disputed debts and claims are located in states other than New York (and, on information and belief, are especially concentrated in southeastern states).  Virtually all ancillary actions, especially in state court, connected with disputed debts and claims, will involve either filings or forums outside New York or extensive (and expensive) travel to southeastern states to interview and depose witnesses, engage in document production and review, and related pretrial preparation and discovery.

46.    The necessary proceedings that will need to occur in this Court will involve a waste of judicial resources in becoming acquainted with a wide variety of Florida, Georgia, Alabama, and other southeastern state laws and state legal doctrines.

47.    In addition to a waste of judicial resources, the necessary proceedings that will need to occur in this Court will result in a waste of the Debtors' resources.  Requiring the Debtors' employees and executives to travel repeatedly from Florida and other southeastern

states to New York to serve as witnesses in, or otherwise appear or assist in, proceedings in these bankruptcy cases will be expensive and a needless addition of time, travel, and disruption to the Debtors' business.

48.      Accordingly, a consideration of the "interest of justice", much like the analysis of the convenience of the parties, mandates a transfer of venue to the Middle District of Florida.

### ii.      Convenience of the Parties

49.      As noted by the Court of Appeals for the Second Circuit, "[t]he purpose of statutory venue requirements is to ensure that a case is filed in a forum that is convenient for the parties in interest." *United States of America v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969).   In determining the "convenience of the parties," the Bankruptcy Court for the Southern District of New York has considered the factors set out by the Fifth Circuit Court of Appeals in *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir. 1979). *See, e.g., In re Enron*, 274 B.R. 327 (Bankr. S.D.N.Y. 2002), *abrogated on other grounds by* 317 B.R. 629 (Bankr. S.D.N.Y. 2004) ("The seminal circuit court case on the issue of whether to transfer venue of a bankruptcy case under 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014 is [*In re Commonwealth Oil Refining Co*].").  The factors considered are:

      a.      The proximity of creditors of every kind to the court;

      b.      The proximity of the debtor to the court;

      c.      The proximity of the witnesses necessary to the administration of the estate;

      d.      The location of the assets; and

      e.      The economic administration of the estate.

50.      An evaluation of all of these factors, as applied to the Debtors' bankruptcy cases, weighs in favor of transferring these cases to the Middle District of Florida.

### a.    Proximity of the Creditors to the Court

51.    The vast majority of the Debtors' creditors are located in the southeastern United States.  Of the Debtors' top fifty unsecured creditors, only one is located and New York, and the majority are located in the southeastern United States.  *See* Exhibit E.  Additionally, the agent for the DIP Credit Agreement, Wachovia, is based out of Charlotte, North Carolina and has operations throughout the southeastern United States.  Likewise, the vast majority of ordinary course professionals, many, if not most, of whom are likely creditors, reside in the southeast.  Similarly, almost every utility (out of the Debtors' hundreds of utilities) are based in the southeast.

52.    Finally, the three largest secured creditors are located in Charlotte, North Carolina, Nashville, Tennessee, and Minneapolis, Minnesota.

53.    Transferring these cases to the Middle District of Florida (or elsewhere in the southeastern United States) would bring the vast majority of the creditors closer to these cases and make it easier for those creditors to participate in the bankruptcy proceedings.

54.    Accordingly, this factor weighs significantly in favor of transferring these cases.

### b.    Proximity of the Debtors and Proximity of the Witnesses Necessary to Administration of the Estates

55.    The Debtors operate grocery stores in approximately eight states in the southeastern United States: Florida, Alabama, Louisiana, Tennessee, Virginia, Georgia, North Carolina, and South Carolina.  Moreover, nineteen of the twenty-four Debtors are incorporated in the state of Florida.[4]  *See* Exhibit B.  Furthermore, the Debtors' petitions indicate that the

---

[4]    Outside of the Dixie Stores entity, the remaining four debtors are incorporated in South Carolina, Mississippi, Texas and Delaware.  *See* Exhibit A.

principal place of business of the Debtors is centrally located in Florida. *See* Exhibit C. In fact, twenty-three of the twenty-four Debtors all have the same address in Jacksonville, Florida. *Id.*

56.    Accordingly, the nerve center of the collective Debtors is clearly in Florida. Not only do the Debtors lack a substantive presence of any kind in New York, but the Debtors' lack an operational presence in the Northeast. The Middle District of Florida, or another district in the southeastern United States, is closer by a large margin to every aspect of the Debtors' operations than is the Southern District of New York.

57.    Moreover, the Debtors' key employees who may be called upon to testify in this matter or otherwise appear at hearings are likely based out of the Debtors' nerve center in Jacksonville, Florida. Likewise, the location of the professionals employed by the Debtors to assist them in this case weighs in favor of transferring this case to the a forum in the southeastern United States. The Debtors already have bankruptcy counsel in the southeast, King & Spalding, headquartered in Atlanta, Georgia.

58.    Thus, both factors, the proximity of the Debtors and proximity of witnesses to the venue, weigh strongly in favor of transfer to the Middle District of Florida or another venue in the southeastern United States.

### c.    Location of the Debtors' Assets

59.    The principal location of the majority of the Debtors' assets is likewise in Jacksonville, Florida. *See* Exhibit C. In fact, the Debtors' bankruptcy petitions indicate that the principal location of the assets of every Debtor, except for Dixie Stores, Inc. and Table Supply Food Stores Co., Inc., are located in Jacksonville, Florida.[5] Additionally, the Debtors also have

---

[5]    Dixie Stores, Inc.'s and Table Supply Food Stores Co., Inc.'s assets are conveniently located in New York City with Wachovia, the agent for the Debtors' DIP Credit Agreement.

assets in the seven other southeastern states in which they operate grocery stores. These assets include, among other things, the inventory of the Debtors' stores.

60.     Accordingly, the vast majority of the Debtors' assets are located in Florida, with other assets in the surrounding southeastern states. There is no indication that any of the Debtors, outside of Dixie Stores, Inc. and Table Supply Food Stores Co., Inc.,[6] have any significant assets in New York, or anywhere near New York for that matter. Thus, this factor also weighs in favor of a transfer of these cases.

### d.     Economic Administration of the Estate

61.     Transferring the venue of the Debtors' cases to Florida will alleviate the considerable time and expense that will be incurred by both the Debtors and their creditors if forced to travel from the southeast to New York. Additionally, the transfer of these cases will promote judicial economy, as the Debtors, its assets and its creditors are all located in the southeastern United States.

62.     In light of the headquarters of the Debtors (in Jacksonville, Florida) and the increased proximity of the vast majority of the creditors to Florida, as opposed to New York, both the creditors and Debtors will have more efficient access to the proceedings if the cases are transferred to Jacksonville. Accordingly, the costs to the creditors, the Debtors, and the estates, in terms of both time and money, will be significantly lower if these cases are transferred to Jacksonville, Florida.

### III.     CONCLUSION

63.     The foregoing demonstrates that venue in this district is improper due to the manufacture of venue via last minute, pre-petition machinations. However, even if the Court

---

[6]     The nature of these assets, including the date such assets were placed in New York, is unknown.

finds that the Debtors pre-petition manufacture of eligibility is valid, the convenience of the parties and the interest of justice require that these chapter 11 cases be transferred to the most appropriate venue, the Middle District of Florida.   To retain these cases in this Court would reward the blatant forum shopping engaged in by the Debtors while simultaneously hindering the abilities of the Debtors' creditors to effectively participate in the proceedings and increasing the costs of the administration of this bankruptcy.

64.    Moreover, there can be no better case for the transfer of a bankruptcy case than the instant matter.   These bankruptcy cases have few, if any, relationship to the state of New York absent the last minute incorporation of a shell company.   If the Court does not grant this motion, then the result would be to effectively allow any debtor to file in any district, no matter their level of contact with that district.

## IV.    WAIVER OF MEMORANDUM OF LAW

65.    Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein and the relevant citations of law have already been cited herein, Buffalo Rock respectfully requests that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

## V.    NOTICE

66.    Notice of this motion has been provided to the entities listed on the Master Service List in accordance with the Order (A) Establishing Notice Procedures on a Final Basis and (B) Continuing Hearing With Respect to Scheduling Omnibus Hearings dated March 4, 2005. Notice was also given to the fifty largest unsecured creditors.

**WHEREFORE** Buffalo Rock respectfully requests that the Court transfer the Debtors' cases to the Bankruptcy Court for the Middle District of Florida, Jacksonville Division or such

other district in the southeastern United States where venue would be appropriate under 28

U.S.C. § 1408.  Buffalo Rock further requests such other and further relief as is just and proper.

Dated:    Birmingham, Alabama
          March 14, 2005

                                        BURR & FORMAN LLP

                                        By: _____
                                            Robert B. Rubin
                                            Derek F. Meek
                                            3100 SouthTrust Tower
                                            420 North 20th Street
                                            Birmingham, Alabama  35203
                                            Telephone: (205) 251-3000
                                            Facsimile: (205) 458-5100

                                        DECHERT LLP
                                        Joel H. Levitin (JL-5814)
                                        Elise Scherr Frejka (ESF-6896)
                                        30 Rockefeller Plaza
                                        New York, New York  10112
                                        Telephone: (212) 698-3500
                                        Facsimile (212) 698-3599

                                        *Attorneys for Buffalo Rock Company*