**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x

| | |
|---|---|
| In re | Chapter 11 |
| **SOLUTIA INC.,** *et al.,* | Case No. 03-17949(PCB) |
| Debtors. | Jointly Administered |

----------------------------------------------------------------- x

## FINAL ORDER (I) APPROVING USE OF CASH COLLATERAL, (II) AUTHORIZING DEBTORS TO INCUR POST-PETITION SECURED INDEBTEDNESS, AND (III) GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS PURSUANT TO SECTIONS 105(a), 361, 363, 364(c), 364(d) AND 364(e) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014

Solutia Inc. ("Solutia") and Solutia Business Enterprises, Inc. ("Solutia Business," and together with Solutia, the "Borrowers"), Solutia Systems, Inc. ("Solutia Systems"), Solutia Overseas, Inc. ("Solutia Overseas"), CPFilms Inc. ("CPFilms"), Solutia Management Company, Inc. ("Solutia Management"), Monchem International, Inc. ("Monchem International"), Axio Research Corporation ("Axio"), Solutia Investments, LLC ("Solutia Investments"), Beamer Road Management Company ("Beamer"), Monchem, Inc. ("Monchem"), Solutia Inter-America, Inc. ("Solutia Inter-America"), Solutia International Holding, LLC ("Solutia International"), Solutia Taiwan, Inc. ("Solutia Taiwan"), Solutia Greater China, Inc. ("Solutia China") (each a "Guarantor" and, collectively, the "Guarantors"), as debtors and debtors-in-possession herein (each of the Borrowers and Guarantors a "Debtor" and collectively, the "Debtors" or the "Loan Parties"), having moved on December 17, 2003 (the "Motion") for an order authorizing the use

9564528.8

of certain Collateral (as defined in the Existing Credit Agreement, "Pre-Petition Collateral"),[1]

including certain collateral securing the 2009 Notes pursuant to the 2009 Note Indenture between

Solutia and the 2009 Note Trustee (each of the 2009 Notes, the 2009 Note Indenture and the

2009 Note Trustee as defined in the DIP Loan Agreement), and including cash (together with

any cash as to which liens are granted pursuant to this Final Order, the "Cash Collateral"), in

which certain pre-petition secured parties may have an interest, to incur post-petition secured

indebtedness, to grant security interests and superpriority claims pursuant to sections 105(a) and

364(c) and (d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the

"Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and having requested that:

> (a)    the Court authorize the Debtors to use the Cash Collateral on the terms set forth herein;

> (b)    the Court authorize the Debtors, pursuant to sections 105(a) and 364(c) and (d) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014, to obtain from Citicorp USA, Inc. ("Citicorp") as Administrative, Collateral and Documentation Agents and Citibank, N.A. as Issuer ("Citibank," and together with Citicorp, each an "Agent" and, collectively, the "Agents"), acting for themselves, as lenders, and as agents for other lenders that may from time to time become lenders (Citicorp and Citibank, in their capacities as lenders, together with such other lenders and the Agents, collectively, the "Lenders"), cash advances and other extensions of credit in an aggregate principal amount of up to $525,000,000 (the

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in that certain Financing Agreement by and among the Debtors and Lenders, dated as of January 16, 2004 (as may have been, or may in the future be, amended from time to time, the "DIP Loan Agreement").

9564528.8

"Maximum Final Borrowing") consisting of term loans, revolving loans and letters of credit (including certain letters of credit issued by Citibank prior to the Filing Date which, pursuant to the DIP Loan Agreement, will be deemed to have been issued under the DIP Loan Agreement, which in turn will allow the cash collateral securing the reimbursement obligation under such letters of credit to be released to the Debtors) (collectively, the "DIP Loans"), pursuant to the DIP Loan Agreement to: (i) fund ongoing working capital and general corporate needs of the Debtors during the above-captioned chapter 11 cases (the "Chapter 11 Cases"); (ii) pay the fees, costs, expenses, and disbursements of professionals retained by the Debtors and/or any statutory committees appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Committees"); (iii) pay the costs and expenses of members of the Committees as approved by the Court, and other bankruptcy-related charges as allowed by the Court, including the UST/Clerk Fees (as defined herein); (iv) pay the fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the Lenders under the DIP Loan Agreement and the other agreements, instruments and other documents executed in connection therewith (collectively, with the DIP Loan Agreement, the "DIP Loan Documents"); and (v) upon entry of this Final Order, repay all obligations owing as of the Filing Date under the Existing Credit Agreement (plus all accrued and accruing interest, fees, costs, expenses, charges, reimbursements and other obligations, the "Pre-Petition Obligations"), which repayment requirement constitutes an "Extraordinary Provision" pursuant to this Court's Guidelines for Financing Requests, adopted by General Order No. M-274, dated as of September 9, 2002 (the "Guidelines"), and subject to, among other things, certain provisions in the DIP Loan Agreement which provide that Events of Default thereunder include: (x) the entry of an order granting relief from the automatic stay with respect to a claim in excess of $5,000,000, (y) the making of a

9564528.8

motion by a party in interest seeking the relief set forth in subsection (x) hereof, provided the Debtors do not contest such motion or obtain a stay pending appeal of such motion, if granted and (z) the making of certain management changes; and (vi) upon entry of this Final Order, repay all obligations owing as of the Closing under the DIP Loan Agreement under the debtor-in-possession financing facility between the Debtors and Ableco Finance LLC ("Ableco") as collateral agent, Congress Financial Corporation (Central) ("Congress"), as documentation agent, and Wells Fargo Foothill, Inc. ("Foothill") as administrative agent and the lenders thereunder that was approved by the Court on an interim basis on December 19, 2003 (the "Prior DIP Facility");

      (c)      the Court order, on a final basis as set forth in the Motion, pursuant to sections 364(c)(1), (2), (3) and 364(d) of the Bankruptcy Code, that the Obligations of the Debtors under the DIP Loan Agreement and the other DIP Loan Documents (collectively, the "DIP Obligations") (i) be granted superpriority administrative expense status, having priority over any and all administrative expenses of the kinds specified in, arising or ordered under, sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), and to the extent permitted by law, 726, 1113 and 1114 of the Bankruptcy Code, except the administrative expenses and claims relating to the UST/Clerk Fees and the fees and expenses defined as "Carve-Out Expenses" in the DIP Loan Agreement up to $15,000,000 (the "Carve-Out Expenses") and (ii) be secured by first priority, perfected security interests in and liens on all of the property, assets, or interests in property or assets of each Debtor, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, including, without limitation, all property of such Debtors' "estates" (within the meaning of the Bankruptcy Code), and all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, general intangibles, payment

intangibles, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property (including all of the Principal Properties), fixtures, leases, all of the Capital Stock (whether such stock is voting or non-voting stock) in any of its direct Domestic Subsidiaries, all of the non-voting Capital Stock in any of its direct Foreign Subsidiaries, Solutia UK Holdings Ltd. and Solutia UK Investments Ltd., 65% of all of the voting Capital Stock in any of its direct Foreign Subsidiaries, Solutia UK Holdings Ltd. and Solutia UK Investments Ltd., all of its Capital Stock or other equity interests in Astaris LLC, Flexsys International L.P., Quimica "M" S.A. de C.V. and in all other joint venture, partnership or limited liability company interests or other similar interests of such Debtor in Persons that are not its Subsidiaries directly owned by such Debtor, 65% of the promissory note made by Solutia UK Investments Ltd. in favor of Solutia UK Holdings Ltd., money, investment property, deposit accounts, all commercial tort claims  and all cash and non-cash proceeds, rents, products and profits of any of the foregoing  (all of the foregoing, collectively, the "Post-Petition Collateral"), senior and prior to any and all other liens and security interests in the Post-Petition Collateral, except for Permitted Priority Liens, as provided by section 364(d) of the Bankruptcy Code;

   (d)  the Court grant, as adequate protection for the granting of such senior security interests and the use of such Cash Collateral, (i) to the 2009 Note Holders and 2009 Note Trustee, superpriority administrative expense claims and junior replacement liens on all Post-Petition Collateral  (the "2009 Post-Petition Collateral"), as adequate protection against the diminution of the value of the Pre-Petition Collateral securing the 2009 Notes as of the Filing Date, which junior replacement liens, together with the 2009 Note Holders' pre-petition liens on the collateral securing the 2009 Notes as of the Filing Date (the "2009 Pre-Petition Liens"), shall be subordinated in right and time of payment to the Post-Petition Liens (as defined herein);

(e)        the Court find, pursuant to Bankruptcy Rule 4001(c)(1), that notice of the final hearing to consider the relief requested in the Motion (the "Final Hearing") given to (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) the Debtors' 50 largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions, (iii) counsel to the Existing Lenders, Existing Agent and the Lenders, (iv) counsel to the Agents under the Prior DIP Facility, (v) the indenture trustees for each of the Debtors' public debt securities, (vi) Pharmacia Corporation, (vii) Monsanto Company, (viii) Akin Gump Strauss Hauer & Feld LLP as proposed counsel for Official Committee of Unsecured Creditors (the "Creditors' Committee"), (ix) Weil, Gotshal & Manges LLP as counsel for the *ad hoc* committee (the "2009 Committee") of 2009 Note Holders, and (x) all parties having filed a notice of appearance pursuant to Bankruptcy Rule 2002 on or before the date notice of the final hearing was required to be given pursuant to the Interim Order (as defined below) (collectively, the "Notice Parties") was good and sufficient under the particular circumstances and no other or further notice is or shall be required; and

it appearing that all the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and such relief is essential for the continued operations of the Debtors' businesses; and it further appearing that the Debtors are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code or other secured financing on equal or more favorable terms than those set forth in the DIP Loan Documents; and upon the record herein; and after due deliberation thereon; and sufficient cause appearing therefor;

9564528.8

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED THAT:**[2]

1.      <u>Disposition</u>.  The Motion is hereby granted on a final basis on the terms set forth in this Order.  Any objections to the relief sought in the Motion that have not previously been resolved or withdrawn are hereby overruled on their merits.  This Final Order shall be valid, binding on all parties-in-interest and fully effective immediately upon entry.  The term of this Final Order and the DIP Loan Documents, and use of the Cash Collateral authorized hereunder shall expire, and the DIP Loans made pursuant to this Final Order, the DIP Loan Agreement, and the DIP Loan Documents will mature and, together with all interest thereon and any other DIP Obligations accruing under the DIP Loan Agreement, will become due and payable (unless such DIP Loans and other DIP Obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Final Order by way of acceleration or otherwise) upon the Final Maturity Date (as defined in the DIP Loan Agreement).

2.      <u>Jurisdiction; Venue</u>.  The Court has jurisdiction over the Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D).  Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

3.      <u>Purpose and Necessity of Financing</u>.  The Debtors require the financing described in the Motion to fund, among other things, the Debtors' cash requirements for working capital and general corporate needs during the Chapter 11 Cases.  The Debtors are unable to obtain adequate unsecured credit, allowable under section 503 of the Bankruptcy Code as an administrative expense, or other, secured financing, under sections 364(c) or (d) of the

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Agreement and the other DIP Loan Documents.

4.        Availability of the Financing.  The Lenders are willing to make a loan facility, in the amount and in the manner provided by the DIP Loan Agreement and the other DIP Loan Documents, available to the Debtors only upon the conditions that (a) all Pre-Petition Obligations and obligations under the Prior DIP Facility are Paid in Full (as defined in the Existing Credit Agreement) out of the proceeds of the DIP Loans and all liens on and security interests in the Pre-Petition Collateral granted pursuant to the Existing Credit Agreement, and Post-Petition Collateral granted pursuant to the Prior DIP Facility, are released upon such payment, and (b) the Lenders and Agents are granted, pursuant to sections 364(c)(1), (2), (3) and 364(d) of the Bankruptcy Code: (i) superpriority administrative expense claims with respect to all DIP Loans and other DIP Obligations having priority over any and all administrative expenses of the kinds specified in, or arising or ordered under, sections 105(a), 326, 328, 330, 331, 503(b), 506(c)507, 546(c), and to the extent permitted by law, 726, 1113 and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (except as otherwise expressly provided for herein with respect to the UST/Clerk Fees and the Carve-Out Expenses); and (ii) as security for all DIP Obligations, a first priority, perfected senior security interest in and lien on, all Post-Petition Collateral, subject and subordinate only to Permitted Priority Liens, Mechanics Liens (as defined herein), the UST/Clerk Fees, and the Carve-Out Expenses.  Accordingly, after considering all alternatives, the Debtors have concluded in the exercise of their prudent business judgment that the loan facility provided under the DIP Loan Documents represents the best working capital financing available to them.

9564528.8

5.    <u>Good Cause</u>.  The Debtors' ability to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' estates and their creditors, so that the Debtors can continue to operate their businesses in the ordinary course.  The preservation of the going concern value of the Debtors' businesses is the linchpin to any successful reorganization.  Good cause has been shown for the relief sought in the Motion.

6.    <u>Good Faith</u>.  The terms of the DIP Loan Documents, including the interest rates and fees applicable thereto and the intangible factors inherent therein, are at least as, or more, favorable to the Debtors as those available from alternative sources.  The DIP Loan Documents have been negotiated in good faith and at arm's-length between the Debtors and the Lenders.  Any DIP Loans and other financial accommodations made to the Debtors by the Lenders pursuant to this Final Order and the DIP Loan Agreement or other DIP Loan Documents shall be deemed to have been extended by the Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the Lenders shall be entitled to all protections afforded thereby.  The terms of the loan facility provided under the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  The DIP Loans are hereby deemed to be extended in exchange for reasonably equivalent value and fair consideration.

7.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms of this Final Order, the Debtors are authorized to use Cash Collateral in which any party including the Lenders may have an interest, in accordance with the terms, conditions, and limitations set forth in the budget annexed hereto as Exhibit "A" (the "Budget") and otherwise pursuant to the terms of the DIP Loan Agreement and this Final Order.  The Debtors shall provide copies of Cash Flow Schedules (which shall include accrued but unpaid expenses), as and when required by, and

9564528.8

otherwise in accordance with, section 8.01(a)(xix) of DIP Loan Agreement to the Agents, counsel to the Creditors' Committee and counsel to the 2009 Committee. Such Cash Flow Schedules shall replace the Budget annexed hereto as the Budget defined in this paragraph, and the Debtors shall be entitled to use Cash Collateral in accordance therewith without further approval by the Court. Any dispute in connection with the Budget or the Cash Flow Schedules shall be heard by the Court. To the extent that any such party (other than the 2009 Note Trustee) does not consent to the use of Cash Collateral, the interests of such party are hereby deemed adequately protected.

        8.    <u>Borrowing</u>. The Debtors are immediately authorized to obtain DIP Loans pursuant to the terms of the DIP Loan Documents and this Final Order in the aggregate principal amount of up to the Maximum Final Borrowing. Available financing and advances under the DIP Loan Agreement will be made only (a) to pay the full outstanding amount of all Pre-Petition Obligations, (b) to pay the full outstanding amount of all obligations under the Prior DIP Facility and (c) to fund the Debtors' ordinary working capital needs, general corporate needs, (including professional fees as and when approved by the Bankruptcy Court) and other amounts required or allowed to be paid in accordance with this Final Order and the DIP Loan Documents, including any and all costs of obtaining the DIP Loans.

        9.    <u>Repayment of the Pre-Petition Obligations And Obligations Under The Prior DIP Facility</u>.

        (a)    The Debtors are hereby authorized and directed to use the proceeds of the DIP Loans to, immediately upon entry of this Final Order, indefeasibly pay in full all Pre-Petition Obligations that remain outstanding as of the Final Facility Effective Date, subject only

9564528.8

to the rights of certain parties granted pursuant to paragraph 19 hereof and (ii) all obligations under the Prior DIP Facility that remain outstanding as of the date of Closing;

(b)    Upon payment in full of all outstanding Pre-Petition Obligations and all obligations under the Prior DIP Facility from the proceeds of the DIP Loans, all valid, enforceable and perfected first priority and senior liens on and security interests in all of (i)]the Pre-Petition Collateral pursuant to the Existing Credit Agreement and the other Loan Documents (as defined in the Existing Credit Agreement), as in effect on the Filing Date (the "Pre-Petition Liens"),and (ii) the Post-Petition Collateral pursuant to the Prior DIP Facility (the "Prior Post-Petition Liens"), shall be released, extinguished, discharged, fully satisfied and of no further force and effect. The Debtors are hereby authorized and directed, once the Pre-Petition Obligations and the obligations under the Prior DIP Facility have been indefeasibly Paid in Full (as defined in the Existing Credit Agreement), to file any and all termination statements or other similar instruments evidencing the termination of the Pre-Petition Liens and the Post-Petition Liens.

10.    <u>Superpriority Claim and Lien Priority</u>.

(a)    The Lenders are hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in the amount of all obligations under the DIP Facility having priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), and to the extent permitted by law, sections 726, 1113 and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, subject and subordinate only to the UST/Clerk Fees and the Carve-Out Expenses.

9564528.8

(b)        As security for the DIP Obligations, in accordance with the terms of the

DIP Loan Documents and this Final Order, effectively immediately, the Lenders are hereby

granted, pursuant to sections 364(c) and (d) of the Bankruptcy Code, first priority liens on and

security interests in all of the Post-Petition Collateral (the "Post-Petition Liens"), senior in all

respects to any and all present and future liens, claims, interests or encumbrances, if any,

including, without limitation, any and all liens and security interests held by the 2009 Note

Trustee, for the benefit of the 2009 Note Holders, subject and subordinate only to the Permitted

Priority Liens, the Carve-Out Expenses, the UST/Clerk Fees and any valid mechanics' lien (i)

perfected, or deemed to have been perfected,  prior to, or relating back to a date prior to, the date

on which the Pre-Petition Liens in favor of the Existing Lenders are determined to have been

initially perfected in the assets securing the respective mechanics' liens, or (ii) which, under

applicable law, are deemed to have priority over the Existing Lenders' Pre-Petition Liens

(collectively, the "Mechanics' Liens").

(c)        No lien or security interest granted to the Lenders under this Final Order

or the DIP Loan Documents, shall (i) be subject to any lien or security interest that is avoided

and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or

(ii) hereafter be subordinated to or made *pari passu* with any other lien or security interest

pursuant to sections 364(c) or (d) of the Bankruptcy Code or otherwise.

11.    Perfection of Post-Petition Liens.  The post-petition liens granted

hereunder shall be and hereby are fully perfected security interests.  No additional steps need be

taken by the holders of the post-petition liens to perfect such liens.  Any provision of any lease or

other license, contract or other agreement that requires (i) the consent or approval of one or more

landlords or other parties or (ii) the payment of any fees or obligations to any governmental

entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Post-Petition Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the Lenders or 2009 Note Trustee in accordance with the terms of the DIP Loan Agreement or this Final Order.

12.    _Acknowledgements_.  In seeking post-petition financing under the DIP Loan Agreement, the Debtors (but not any other party in interest) have acknowledged, represented, stipulated and agreed, for purposes of this Final Order, that:

(a)    the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be made or given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Documents to which any Debtor is a party;

(b)    in entering into the DIP Loan Documents, and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are Paid in Full in cash and the Total Commitment is terminated in accordance with the DIP Loan Agreement, the Debtors shall not in any way prime, or seek to prime, the liens provided to the Lenders under this Final Order or the DIP Loan Documents by offering a subsequent lender or a party-in-interest a superior or _pari passu_ lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise;

9564528.8

13

(c)      in entering into the DIP Loan Documents, and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly Paid in Full in cash and the Total Commitment is terminated in accordance with the DIP Loan Agreement, the Debtors shall not in any way or at any time permit to exist an administrative expense claim against any of the Debtors or their subsidiaries that are Loan Parties (now existing or hereafter arising), of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c) 726, 1113 and 1114 of the Bankruptcy Code having priority equal or superior to the priority of the Superpriority Claims or the Adequate Protection Claims (as defined below) of the 2009 Note Trustee provided herein, except for the Carve-Out Expenses and the UST/Clerk Fees;

(d)      the Debtors are indebted to the Existing Agent and the Existing Lenders, as of January 16, 2003, (a) in the aggregate principal amount of not less than $285, 677,102.42 in respect of Pre-Petition Obligations constituting Loans under the Existing Credit Agreement and (b) in the aggregate undrawn amount of not less than $51,328,435.00 in respect of Pre-Petition Obligations related to the Pre-Petition Letters of Credit, in each case, together with interest and fees (including attorneys' fees), accrued and accruing thereon in respect of such loans and letters of credit, costs, expenses, indemnities, reimbursement obligations and other charges now or hereafter owed by the Debtors to the Existing Agents and the Existing Lenders, all of which are unconditionally owing by the Debtors without offset, defense or counterclaim of any kind, nature and description whatsoever;

(e)      except as otherwise provided herein with respect to the Post-Petition Liens, the Existing Agents and the Existing Lenders prior to the Filing Date had, have and,

9564528.8

14

unless and until all Pre-Petition Obligations are indefeasibly Paid in Full (as defined in the

Existing Credit Agreement) from the proceeds of the DIP Loans, shall continue to have valid and

enforceable (i) Pre-Petition Liens on and security interests in all of the Pre-Petition Collateral

pursuant to the Existing Credit Agreement and the other Loan Documents (as defined in the

Existing Credit Agreement), as in effect on the Filing Date, to secure all of the Pre-Petition

Obligations and (ii) Existing Lender Replacement Liens (as defined in the Interim Order) as

adequate protection against any diminution in the value of the Pre-Petition Collateral;

      (f)      the 2009 Pre-Petition Liens held by the 2009 Note Trustee for the benefit

of the 2009 Note Holders are and shall continue to be valid, enforceable and perfected second

priority liens on and security interests in that portion of the Pre-Petition Collateral that secures

the 2009 Notes as in effect as of the Filing Date, which 2009 Pre-Petition Liens shall be subject

to the Post-Petition Liens granted to the Lenders hereunder; and

      (g)      as of the date of the entry of this Final Order, there are no other liens on or

security interests in the Pre-Petition Collateral except for the Permitted Liens and liens held by

the Existing Lenders and Existing Agents and the 2009 Note Trustee.

      13.      Adequate Protection.

      (a)      (i) As adequate protection for use of the Pre-Petition Collateral securing

the 2009 Notes (including Cash Collateral) by the Debtors, and in accordance with sections 361,

363(e), and 364(d) of the Bankruptcy Code, the 2009 Note Trustee, for the benefit of the 2009

Note Holders, is hereby granted valid, perfected, second priority post-petition security interests

in and liens (the "2009 Replacement Liens") on the 2009 Post-Petition Collateral, including,

without limitation, the Cash Collateral, and all cash and non-cash proceeds, rents, products and

profits of such 2009 Post-Petition Collateral, and all of the Principal Properties, to secure an

amount equal to the diminution in the value of the Cash Collateral and that certain Pre-Petition Collateral that secures the 2009 Note Indenture  as in effect as of the Filing Date (the "2009 Diminution Amount"), provided, however, that, notwithstanding anything to the contrary, the 2009 Replacement Liens shall be subordinated to the (i) Post-Petition Liens, (ii) the Permitted Priority Liens, (iii) the Mechanics Liens, (iv) the Designated Mechanics' Liens (as hereinafter defined) (but only to the extent the Designated Mechanics' Liens encumber property that is not subject to a Pre-Petition Lien in favor of the 2009 Note Trustee), (v) the Carve-Out Expenses, and (vi) the UST/Clerk Fees.

     (ii)  As adequate protection for mechanics' liens that were perfected, or are deemed to have been perfected under applicable law, prior to the Filing Date but are not Mechanics' Liens within the definition herein ("Designated Mechanics' Liens"), and in accordance with sections 361, 363(e), and 364(d) of the Bankruptcy Code, each holder of a Designated Mechanics' Lien is hereby granted valid, perfected, junior post-petition security interests in and liens on the 2009 Post-Petition Collateral (the "Designated Mechanics' Liens Replacement Liens") to secure an amount equal to the diminution in the value of the property securing the relevant Designated Mechanics' Lien as in effect or deemed to have been in effect as of the Filing Date (each a  "Designated Mechanics' Lien Diminution Amount"), provided, however, that, notwithstanding anything to the contrary, the Designated Mechanics' Lien Replacement Liens shall be subordinated to (i) the Post-Petition Liens, (ii) the 2009 Replacement Liens (except to the extent that the Designated Mechanics' Lien Replacement Lien in question was perfected or deemed to be perfected prior to the Filing Date in property of the Debtors in which the 2009 Note Trustee did not have a perfected Pre-Petition Lien), (ii) the Permitted

9564528.8

Priority Liens, (iii) the Mechanics Liens, (iv) the Carve-Out Expenses, and (v) the UST/Clerk Fees.

(b)    To the extent that the 2009 Replacement Liens and the Designated Mechanics' Liens Replacement Liens prove insufficient to provide the 2009 Note Holders and 2009 Note Trustee and the holders of Designated Mechanics' Liens, as the case may be, with adequate protection as required by the Bankruptcy Code, the 2009 Note Holders and 2009 Note Trustee and the holders of Designated Mechanics' Liens shall be granted junior superpriority administrative claims (the "Adequate Protection Claims") in the full amount of the 2009 Diminution Amount or the Designated Mechanics' Lien Diminution Amount, as the case may be, as contemplated by section 507(b) of the Bankruptcy Code, having priority over any other claims including claims made pursuant to section 507(b) of the Bankruptcy Code, and junior only to the claims under section 364(c)(1) of the Bankruptcy Code held by the Lenders and subject only to payment of DIP Obligations, the 2009 Diminution Amount, the Carve-Out Expenses, and the UST/Clerk Fees.

(c)    Subject only to the rights of the parties in interest reserved under Paragraph 19 below, and effective upon entry of this Final Order, each Debtor shall be deemed to have agreed not to pursue any and all claims and causes of action it has or may have against the Existing Lenders, Existing Agents, 2009 Note Holders and 2009 Note Trustee or the Pre-Petition Collateral.

(d)    Current Payment of Interest and Certain Fees, Costs and Other Charges in Respect of the 2009 Notes.

(i)    The 2009 Notes shall be paid all interest as and when payable under the 2009 Note Indenture (the "2009 Interest Payments"). Any unpaid interest that came due prior to

9564528.8

the Filing Date or prior to entry of this Order (i.e., the interest payment which was payable on January 15, 2004) shall be paid within five days after entry of this Order. All payments of the 2009 Interest Payments shall be calculated at the contract non-default rate provided under the 2009 Note Indenture.

(ii) The 2009 Note Trustee shall be paid all of its incurred fees, costs and other charges and expenses upon monthly submission of invoices to the Debtors. Any such fees, costs and other charges and expenses of the 2009 Note Trustee that came due prior to the Filing Date or prior to the entry of this Final Order shall be paid within five days after the entry of this Final Order.

(iii) The Debtors shall pay (a) upon submission of invoices and related documentation, the reasonable fees and expenses of Weil, Gotshal & Manges LLP ("WGM"), as counsel to the 2009 Committee, including in each instance any such reasonable fees, charges, expenses and other amounts which were incurred or accrued but unpaid prior to the Filing Date or prior to entry of this Final Order, and (b) upon submission of invoices and related documentation, the reasonable out-of-pocket expenses of the members of the 2009 Committee, including those expenses which were incurred or accrued but unpaid prior to the Filing Date or prior to entry of this Final Order; in both cases, up to an aggregate amount of $475,000.00 (inclusive of any retainer previously paid to WGM).

(iv) The Creditors' Committee shall receive copies of the invoices submitted by WGM (redacted for attorney-client privilege) and the 2009 Note Trustee no later than five business days prior to payment of such fees by the Debtors. To the extent that the Creditors' Committee objects to the payment of any such invoice, it shall be required to give written notice of such objection to WGM or the 2009 Note Trustee, as applicable, and the Debtors. To the

9564528.8

18

extent that any such objection is not timely made with respect to any particular fee invoice, the Creditors' Committee shall be deemed to have waived any objection to such invoice. Any disputes with respect to such invoices shall be resolved by the Bankruptcy Court.

(v)     The Creditors' Committee shall have the right at any time (and the Debtors shall have the right at any time after the payment of the 2009 Interest Payments due July, 2005) to file a motion or commence a proceeding for entry of an order determining:  (a) pursuant to Section 506(b) of the Bankruptcy Code, that the value of that portion of the Pre-Petition Collateral that secures the 2009 Notes does not exceed the amount of the 2009 Notes, (b) that all (I) payments of the 2009 Interest Payments paid to the 2009 Note Holders since the Filing Date and (II) payments of fees and expenses to WGM and the 2009 Note Trustee since the Filing Date should be applied solely in reduction of the secured principal amount of the 2009 Notes (and to any interest arising thereunder but only to the extent accrued and unpaid through the Filing Date) and (c) that all future payments of the 2009 Interest Payments and fees and expenses of WGM and the 2009 Trustee should terminate.  Pending a determination by the Bankruptcy Court with respect to any such motion or proceeding, the obligations of the Debtors to make all such payments, and comply with all other terms and conditions required by this Final Order shall remain.  Notwithstanding anything to the contrary, in the event the Creditors' Committee commences any such motion or proceeding, there shall not be any limitation on the Debtors' ability to participate and advocate positions with respect to such motion or proceeding consistent with their fiduciary duties.

(vi)     Nothing contained in this Final Order shall preclude the 2009 Note Holders, the 2009 Committee, and the 2009 Note Trustee, from seeking a further order of the Bankruptcy Court to obtain other or additional adequate protection, which may include, _inter_

alia, the payment or reimbursement by the Debtors of an investment banker retained by the 2009 Committee, additional cash payments and the payment of additional fees.    Similarly, nothing contained in this Final Order shall preclude the Debtors  (except as set forth in clause (v) above) or the Committee from seeking a further order of the Bankruptcy Court to reduce the adequate protection provisions for the 2009 Note Holders and 2009 Note Trustee.

       14.    <u>Fees</u>.  All fees payable and costs and/or expenses reimbursable under the DIP Loan Agreement and other DIP Loan Documents by the Debtors to the Lenders are hereby approved and shall be promptly paid by the Debtors in accordance with the DIP Loan Documents.  The Debtors are hereby authorized to pay all such fees without the necessity of the Debtors, the Lenders or the Agents filing any further application with the Court for approval or payment of such fees or expenses.  All fees and costs and/or expenses payable by the Debtors in connection with the recording, filing and insuring of financing statements, mortgages and financing statements to confirm (pursuant to paragraphs 15 and 21 of this Final Order) the perfection of the security interests granted or authorized by this Final Order are hereby approved and shall be promptly paid in full by the Debtors without the necessity of the Debtors, the Lenders or the Agents filing any further application with the Court for approval or payment of such fees, costs and/or expenses.  Further, the Creditors' Committee shall receive statements for attorneys' fees (redacted for attorney-client privilege) reimbursable to the Lenders pursuant to the DIP Loan Agreement and this Paragraph 14 no less than 5 days prior to payment of such fees by the Debtor.  Any challenge to such fees not brought within such 5 days shall be forever waived by the Creditors' Committee and hereby barred.  Any disputes with respect to such fees, costs and/or expenses shall be resolved by the Bankruptcy Court.

9564528.8

15.    <u>Authority to Execute and Deliver Necessary Documents</u>. Each of the Debtors is hereby authorized and empowered to enter into and deliver the DIP Loan Agreement in the form annexed hereto, and the other DIP Loan Documents (to the extent not previously executed and delivered), in each case including (subject to any requisite Court approval and the requirements of paragraph 16 hereof) any amendments thereto, and including UCC financing statements and mortgages or deeds of trust encumbering all of the Post-Petition Collateral (including, without limitation, each of the Principal Properties) and securing all of the Debtors' obligations under the DIP Loan Agreement, including repayment of all DIP Obligations. Each of the Debtors is hereby further authorized, empowered and directed (a) to perform all of its obligations under the DIP Loan Documents and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for in the DIP Loan Documents; (b) to perform all acts required under the DIP Loan Documents and this Final Order, including, without limitation, the payment of all principal, interest, charges, fees, and the reimbursement of present and future reasonable costs and expenses (including without limitation, reasonable attorneys' fees and legal expenses) paid or incurred by the Lenders, or the Agents, as provided for in the DIP Loan Documents; and (c) to do and perform all other acts, to make, execute and deliver all other instruments, agreements and documents, which may be required or necessary for the Debtors to perform all of their obligations under this Final Order and the DIP Loan Documents, without further order of the Bankruptcy Court. All unpaid principal, interest, charges, fees, reasonable attorneys' fees and the reimbursement of present and future reasonable costs and expenses payable in accordance with this Final Order or the DIP Loan Documents shall (i) be included and constitute part of the principal amount of the DIP Obligations, (ii) be deemed a superpriority administrative claim having the same priority as all other DIP Obligations

9564528.8

21

hereunder, and (iii) and be secured by a first priority lien on and security interest in all of the Post-Petition Collateral as and to the extent provided for in the DIP Loan Agreement and the other DIP Loan Documents, provided, however, that any such claim or lien shall remain subject and subordinate in priority of payment only to the UST/Clerk Fees and the Carve-Out Expenses and any such lien shall remain subject and subordinate in priority of payment to the Permitted Priority Liens and the Mechanics Liens. The DIP Obligations shall constitute valid and binding obligations of each of the Debtors enforceable against each of them, and each of their successors and assigns, in accordance with the terms of the DIP Loan Documents and the terms of this Final Order.

16.    Amendments. The Debtors, only with the express prior written consent of the Lenders in accordance with the DIP Loan Documents, may enter into any amendments or modifications to the DIP Loan Agreement and the other DIP Loan Documents without the need of further notice and hearing or order of this Court, provided that (i) such modifications or amendments do not materially and adversely affect, in the reasonable view of the Debtors, after consultation with the Committee, the rights of any creditor or other party-in-interest, (ii) notice of any such amendment or modification is filed with the Court and (iii) notice of any such amendment or modification (other than those which in the reasonable view of the Debtors are ministerial, technical or do not adversely affect the Debtors), if any, are provided in advance to the counsel to the Creditors' Committee, counsel to the 2009 Committee, all parties having filed a notice of appearance pursuant to Fed. R. Bankr. P. 2004 that was entered on the docket prior to the date of the filing of such amendment or modification with the Bankruptcy Court and the U.S. Trustee.

9564528.8

17.    UST/Clerk Fees.  The Superpriority Claim, Post-Petition Liens, Adequate Protection Claims, Mechanics Liens, Designated Mechanics' Liens and 2009 Replacement Liens shall be subject and subordinate in payment only to the Carve-Out Expenses as defined below and amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Court (collectively, the "UST/Clerk Fees").

18.    Carve-Out Expenses.

(a)    Carve-Out Expenses, to the extent that the amount entitled to administrative priority under the DIP Loan Agreement (collectively, the "Priority Professional Expenses") (inclusive of (a) any holdbacks required by the Bankruptcy Court, (b) actual, documented and reasonable fees and expenses of a trustee payable under Section 726(b) of the Bankruptcy Code, as required by the Guidelines, and (c) actual, documented and reasonable expenses of the members of the Creditors' Committee) shall be paid by the Debtors pursuant to the terms of the DIP Loan Agreement.

(b)    Carve-Out Expenses also shall include any payments authorized to be made pursuant to any Bankruptcy Court-approved procedure for monthly or other payment of compensation or reimbursement of expenses; provided, however, that nothing contained herein shall be construed (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Bankruptcy Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the Lenders to object to the reasonableness of such

9564528.8

23

amounts; provided, further, that Carve-Out Expenses shall not include, and Cash Collateral or proceeds of any of the DIP Loans shall not be used for, the payment or reimbursement of any fees or disbursements of the Debtors, any Committees or any trustee appointed in these Chapter 11 Cases incurred in connection with the assertion and prosecution of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (A) commencing or prosecuting any action asserting claims pursuant to sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or other cause of action (whether arising under state law, the Bankruptcy Code or other federal law) against the [Lenders], with respect to the validity and extent of the DIP Obligations or the validity, extent and priority of liens and security interests securing the DIP Obligations,; (B) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Lenders' liens on and security interests in the Post-Petition Collateral, ; or (C) preventing, hindering or delaying (whether directly or indirectly) the Lenders, in respect of their liens and security interests in the Post-Petition Collateral (except that nothing herein shall limit the Debtors' ability to seek relief from the Bankruptcy Court of the kind described in paragraph 27(b) hereof). No liens or priority status, other than UST/Clerk Fees and the Carve-Out Expenses, having a lien or administrative priority superior to or *pari passu* with those granted by this Final Order to the Lenders, shall be granted while any portion of the DIP Obligations remains outstanding without the written consent of the Lenders in accordance with the DIP Loan Documents. Effective upon entry of this Final Order, in exchange for the Carve-Out provisions of the DIP Loan Documents, the parties entitled to be paid therefrom shall not be entitled, directly or indirectly, to charge the Post-Petition Collateral, whether by operation of Sections 105, 506(c) or 552(b) or otherwise.

9564528.8

24

19.    <u>Committee Investigation Period</u>.  Notwithstanding anything herein or in the DIP Loan Agreement to the contrary, until seventy-five (75) days after the entry of an order authorizing the retention of counsel for the Creditors' Committee (the "Investigation Termination Date"), the Creditors' Committee  and the 2009 Committee shall be entitled to investigate the validity, perfection, enforceability and extent of the Existing Lenders' and Existing Agents' existing liens relating to the Pre-Petition Obligations, as the case may be, and any other claims or causes of action against the Existing Lenders and Existing Agents.  If such party in interest determines that there may be a challenge to the existing liens of the Existing Lenders and Existing Agents, the Pre-Petition Obligations or the propriety of the repayment of the Pre-Petition Obligations by the Investigation Termination Date, such party shall file a motion seeking authority from the Court to commence such cause of action.  If no such motion is filed on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Existing Lenders and Existing Agents or by an order of the Bankruptcy Court, for cause shown), the acknowledgements contained in paragraphs 12(d) and 12(e) of this Final Order shall be irrevocably binding on all parties in interest without further action by any party or this Court and all parties shall be forever barred from bringing or taking any such action.

20.    <u>Limitation On Additional Surcharges</u>.  The Post-Petition Collateral, Lenders, and Agentsshall not be subject to surcharge for any amounts arising or accruing from the Filing Date through and including the Final Facility Termination Date (with the exception of amounts owing for UST/Clerk Fees and the Carve-Out Expenses), pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code, or otherwise, by (a) any of the Debtors or (b) any other party in interest.  Notwithstanding the foregoing, no action, inaction, or acquiescence by the Lenders, Agents, Existing Lenders, Existing Agents, 2009 Note Holders or 2009 Note Trustee in

9564528.8

25

these cases, including the Lenders' funding of the Debtors' ongoing operations under this Final

Order, or the DIP Loan Documents, shall be deemed to be or shall be considered as evidence of

any alleged consent by the Lenders, Agents, Existing Lenders, Existing Agents, 2009 Note

Holders or 2009 Note Trustee, to a charge against the Post-Petition Collateral, Pre-Petition

Collateral, Lenders, Agents, Existing Lenders, Existing Agents, 2009 Note Holders or 2009 Note

Trustee pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.  The Lenders shall

not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar

doctrine with respect to the Post-Petition Collateral.

      21.    <u>Additional Perfection Measures</u>.

      (a)    The liens, security interests, and priorities granted to the Lenders pursuant

to this Final Order and the DIP Loan Documents with respect to property of the Debtors' estates

shall be perfected by operation of law immediately upon entry of this Final Order by the Court.

Neither the Debtors nor the Lenders shall be required to enter into or to obtain landlord waivers,

mortgagee waivers, bailee waivers or warehouseman waivers or to file or record financing

statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments

in any jurisdiction (including, trademark, copyright, tradename or patent assignment filings with

the United States Patent and Trademark Office, Copyright Office, or any similar agency with

respect to intellectual property), or obtain consents from any licensor or similarly situated party-

in-interest, or take any other action in order to validate and to perfect the security interests and

Post-Petition Liens or 2009 Replacement Liens granted pursuant to this Final Order.

      (b)    If the Lenders, in their sole discretion, choose to obtain consents from any

licensor or similarly situated party-in-interest, to file financing statements, notices of lien or

similar instruments, to record financing statements, mortgages or deeds of trust, or to otherwise

confirm perfection of such security interests and liens: (i) the Lenders are authorized and

empowered to file or record financing statements, mortgages, deeds of trust or similar

instruments which secure the DIP Obligations; (ii) all such documents shall be deemed to have

been recorded and filed as of the time and on the date of entry of this Final Order; and (iii) no

defect in any such act shall affect or impair the validity, perfection and enforceability of the liens

granted hereunder.

          (c)     In lieu of obtaining such consents or filing such financing statements,

notices of lien or similar instruments, the Lenders may, at their sole discretion, choose to file a

true and complete copy of this Final Order in any place at which any such instruments would or

could be filed, together with a description of Post-Petition Collateral located within the

geographic area covered by such place of filing, and such filing by the Lenders shall have the

same effect as if such financing statements, notices of lien or similar instruments had been filed

or recorded at the time and on the date of entry of this Final Order.

          22.    <u>Application of Collateral Proceeds</u>.  Except as otherwise permitted under

the DIP Loan Documents and this Final Order, including, without limitation, Paragraph 7 hereof,

or the Budget with respect to the use of Cash Collateral, the Debtors are hereby authorized and

directed (whether or not an Event of Default or a Default by the Debtors of any of their

obligations under the DIP Loan Documents has occurred) to remit to the Lenders all collections

on, and proceeds of, the Post-Petition Collateral, including all accounts receivable collections,

proceeds of sales of inventory, fixed assets and any other assets, including sales in and outside

the ordinary course of business, and all other cash or cash equivalents, which shall at any time on

or after the Filing Date come into the possession or control of the Debtors, or to which the

Debtors shall become entitled at any time.  The automatic stay provisions of section 362 of the

9564528.8

Bankruptcy Code are hereby modified to permit the Lenders to collect, retain and apply all existing Cash Collateral and collections, remittances and proceeds of Post-Petition Collateral to the DIP Obligations, in accordance with this Final Order and the DIP Loan Documents.

23.    Payment of Administrative Expenses.  Notwithstanding the foregoing, the Debtors shall be permitted to pay, as the same may become due and payable, but solely to the extent permitted by the DIP Loan Documents or the Budget, (i) administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of their businesses, (ii) payments pursuant to "first day" orders entered by this Court, (iii) compensation and reimbursement of expenses to professionals allowed and payable under section 331 of the Bankruptcy Code and (iv) subject to the requirements of the Bankruptcy Code, any other administrative expenses and payments permitted under the DIP Loan Agreement.

24.    Access to Information.  Without limiting the rights of access and information afforded the Lenders under the DIP Loan Agreement and other DIP Loan Documents, the Debtors shall permit representatives, agents and/or employees of the Lenders to have reasonable access to their premises and their records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

25.    Access to Collateral.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the Lenders, contained in this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Agreement, upon three (3) business days' written notice to the landlord of any leased premises upon which any Post-Petition Collateral is located (a "Landlord"), that an

9564528.8

28

Event of Default or a Default by the Debtors of any of their obligations under the DIP Loan Documents or this Final Order has occurred and is continuing, the Lenders may, subject to any separate agreement by and between such Landlord and the Lenders, enter upon any leased premises of any of the Debtors for the purpose of exercising any remedy with respect to Post-Petition Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the Landlords thereunder; provided, however, that the Lenders shall only be obligated to pay base rent, as defined in the lease with any such Landlord (or other agreement between Lender and the Landlord), and charges for utilities (unless otherwise agreed between the Landlord and Lenders) that first arise after the Lenders' written notice referenced above, and that are payable during the period of such occupancy by the Lenders, calculated on a per diem basis. Nothing herein shall require the Debtors to assume and assign to the Lenders any lease under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the Lenders in this paragraph.

26.     Cash Management Systems. The Debtors are authorized and directed to maintain their cash management system in a manner consistent with the DIP Loan Documents and the Cash Management Order.

27.     Automatic Stay Modified. The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified to the extent necessary so as to permit the Lenders:

(a)     upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents or a violation of the terms of this Final Order, and after five (5) business days' prior written notice to the counsel for Debtors, counsel for the Creditors' Committee, counsel for the 2009 Committee and the U.S. Trustee, to declare all or any portion of

the DIP Loans then outstanding to be due and payable and exercise all other enforcement rights and remedies provided for in the DIP Loan Agreement, the other DIP Loan Documents, this Final Order, or under other applicable bankruptcy and nonbankruptcy law (including the right to setoff funds in accounts maintained by the Debtors with any Lenders to repay the DIP Obligations, as to which such prior written notice shall not be required) without requiring prior authorization of this Court in order to exercise such rights and remedies.

(b)    The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, the 2009 Committee and/or the U.S. Trustee have not obtained an order from this Court to the contrary within five (5) business days after receiving such notice from the Lenders pursuant to this Final Order.

(c)    The Debtors, the Creditors' Committee, the 2009 Committee and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay of section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the only issue that may be raised at any such hearing shall be whether, in fact, an Event of Default or Default has occurred and is continuing;

(d)    this Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Final Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code or other injunctive relief requested;

(e)    upon the occurrence and during the continuance of a Default or an Event of Default by the Debtors of any of their obligations under the DIP Loan Documents, the

9564528.8

30

Lenders and/or Agents, as applicable, may, without providing any prior notice thereof, immediately charge interest at the Post-Default Rate set forth in the DIP Loan Agreement;

(f)     upon the occurrence and during the continuance of a Default or an Event of Default by the Debtors of any of their obligations under the DIP Loan Documents or a violation of the terms of this Final Order, the Lenders may at all times continue to collect and sweep cash as provided in paragraphs [22] and [26] hereof; and

(g)     upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents or a violation of the terms of this Final Order, the Lenders shall have no further obligation to provide financing under the DIP Loan Documents or DIP Loan Agreement.

28.     Termination of Authorization to Use Cash Collateral.

(a)     Upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents or a violation of the terms of this Final Order, and after three (3) business days' notice from the Lenders, Agents or, subject to subparagraph (c) hereof, the 2009 Committee, to counsel for the Debtors, counsel for the Committee, counsel for the 2009 Committee and the U.S. Trustee, the authorization to use Cash Collateral under the terms of this Final Order shall automatically terminate, provided, that after such notice, any use of Cash Collateral shall be limited to operating costs as set forth in the Budget or Cash Flow Schedules. If the Debtors' right to use Cash Collateral has been terminated pursuant to the provisions of this Final Order, such right may be extended only upon (i) consent of the Lenders, (ii) the DIP Obligations having been Paid in Full, or (iii) further Order of this Court entered upon and after appropriate notice and opportunity for a hearing being provided to the Lenders, 2009 Committee and 2009 Note Trustee, provided, that the Lenders shall have absolutely no obligation to agree to

9564528.8

31

such an extension under any circumstances and may elect or not elect to agree to such an extension as they determine in their sole and absolute discretion. Notwithstanding the foregoing, if the Debtors' right to use cash collateral has been terminated pursuant to the provisions of this Final Order providing adequate protection to the 2009 Note Trustee contained in paragraph 13 hereof, such right may be extended only upon (i) consent of the 2009 Committee or (ii) further order of the Court entered upon and after appropriate notice and opportunity for a hearing being provided to the 2009 Committee and 2009 Note Trustee.

(b)    Any further Order authorizing the use of Cash Collateral shall be prohibited or conditioned as is necessary to provide adequate protection to the Lenders, the 2009 Note Trustee, and the Designated Mechanics" Lienholders as required by the Bankruptcy Code. At any hearing on any request to authorize the continued use of Cash Collateral, the moving party shall have the burden of proof.

(c)    The right of the 2009 Committee to give the notice and consent referred to in this paragraph 28 shall only apply (i) so long as the then members of the 2009 Committee own at least a majority of the aggregate principal amount of the 2009 Notes and (ii) upon (x) termination of the DIP Loan Agreement or acceleration of the obligations thereunder, (y) the failure to timely pay interest on the 2009 Notes in accordance with this Final Order, or (z) any violation of the terms of this Final Order which materially adversely affects the adequate protection granted to the 2009 Note Holders hereunder.

29.    No Responsible Person. In making the decision to make DIP Loans, administering the DIP Loans, and extending other financial accommodations to the Debtors under the DIP Loan Agreement or collecting the indebtedness and obligations of the Debtors, the Lenders shall not be considered to be exercising control over any operations of the Debtors or

9564528.8

acting in any way as a responsible person, an owner or an operator under any applicable law, excluding applicable tax laws, but otherwise including, without limitation, applicable environmental laws (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute), provided, however, that the foregoing shall only apply to the Lenders for so long as the Lenders do not (a) "participate in management" of the Debtors, as that term is used and defined in 42 U.S.C. § § 9601(20)(E) through (G), or (b) otherwise control the Debtors or be deemed a responsible person, owner or operator, or the equivalent under applicable law.

30.    Successors and Assigns.  The DIP Loan Documents and the provisions of this Final Order shall be binding upon the Lenders, the Debtors and their respective successors and assigns, and shall inure to the benefit of the Lenders and the Debtors and their respective successors and assigns including, without limitation, any trustee, responsible officer, examiner with expanded powers, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code.

31.    No Third Party Beneficiary.  Except with respect to any of the Lenders, Agents, Existing Lenders, Existing Agents, the 2009 Note Holders, the 2009 Note Trustee, their delegates, successors and assigns, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

32.    Binding Nature of Agreement.  Each of the DIP Loan Documents to which the Debtors are and will become a party shall constitute legal, valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms.  The DIP Loan

9564528.8

Documents have been or will be properly executed and delivered to the Lenders by the Debtors. The rights, remedies, powers, privileges, liens and priorities of the Lenders provided for in this Final Order and in any other DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in these cases or in any subsequent case under the Bankruptcy Code, unless and until the DIP Obligations have first been indefeasibly Paid in Full in cash and completely satisfied and the Total Commitment is terminated in accordance with the DIP Loan Agreement.

33.     <u>Subsequent Reversal or Modification</u>.  This Final Order is entered pursuant to section 364 of the Bankruptcy Code, granting the Lenders all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the Lenders prior to the date of receipt by the Lenders of written notice of the effective date of such action or (b) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Documents.  Notwithstanding any such reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability incurred by any of the Debtors to the Lenders prior to written notice to the Lenders of the effective date of such action shall be governed in all respects by the original provisions of this Final Order, and Lenders shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligation or liability.  Notwithstanding the foregoing, nothing herein shall be deemed to limit, affect or modify the ability of this Court to

order appropriate relief in the event of a successful challenge to the validity, perfection, or priority of the Existing Lenders' Pre-Petition Liens.

34.    No Waiver.  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Lenders may have to bring or be heard on any matter brought before this Court.

35.    Sale/Conversion/Dismissal.  (a)  No order providing for either the sale of the ownership of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to indefeasibly pay all DIP Obligations, and such DIP Obligations shall be indefeasibly Paid in Full in cash and completely satisfied and the Total Commitment is terminated in accordance with the DIP Loan Agreement as part of such action, or the Lenders expressly consent in writing to any such transaction or the entry of such an order by the Court or such transaction is expressly permitted in the DIP Loan Documents.  Without limiting the generality of the foregoing, the Debtors shall not sell either the Capital Stock of any of the Debtors or substantially all of the assets including, without limitation,  the Capital Stock of any of the Subsidiaries of any of the Debtors under section 363 of the Bankruptcy Code unless, in any such event, the Lenders expressly consent in writing to any such transaction, such transaction is expressly permitted in the DIP Loan Documents, or the terms of the sale expressly provide that the sale shall not be consummated unless the proceeds of the sale (other than proceeds of the assets of Solutia Europe SA/NV and its subsidiaries) are sufficient to indefeasibly pay all DIP Obligations and such DIP Obligations shall be, upon the closing of such sale, indefeasibly Paid

9564528.8

in Full in cash and completely satisfied and the Total Commitment is terminated in accordance with the DIP Loan Agreement.

      (b)    If an order dismissing any of these cases under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (x) the liens, security interests, and Superpriority Claims granted to the Lenders hereunder and in the DIP Loan Documents, as the case may be, shall continue in full force and effect, shall remain binding on all parties-in-interest and shall maintain their priorities as provided in this Final Order until all DIP Obligations shall have been indefeasibly Paid in Full in cash and the Total Commitment shall have been terminated in accordance with the DIP Loan Agreement, and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the liens, security interests and Superpriority Claims of the Lenders, as the case may be.

      36.    _Injunction_. Except as provided in the DIP Loan Agreement and/or this Final Order, the Debtors shall be enjoined and prohibited from, at any time during the Chapter 11 Cases, (a) granting liens in the Pre-Petition Collateral, the Post-Petition Collateral or any portion thereof to any other parties, pursuant to Section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to, _pari passu_ with or junior to the liens of the Lenders or Existing Lenders, Existing Agents and/or (b) (i) using the Cash Collateral, (ii) using the Post-Petition Collateral, and (iii) applying to the Bankruptcy Court for an order authorizing the use of the Cash Collateral or the Post-Petition Collateral, except in accordance with the DIP Loan Agreement and this Final Order.

      37.    _Survival_. Unless and until the DIP Obligations have been indefeasibly Paid In Full and the 2009 Notes have been or deemed to have been satisfied in accordance with the provisions of the Bankruptcy Code, (a) the protections afforded to the Lenders under this

9564528.8

Final Order, and any actions taken pursuant thereto shall survive the entry of an order (i) confirming a plan of reorganization; (ii) dismissing any of these cases or (iii) converting any of these cases into a case pursuant to chapter 7 of the Bankruptcy Code, (b) the Post-Petition Liens, and the Superpriority Claim and Adequate Protection Claims of the Lenders shall continue in these proceedings, in any such successor case or after any such dismissal. The Post-Petition Liens, the Adequate Protection Claims and the Superpriority Claim shall maintain their validity and priority as provided by this Final Order and shall not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of Indebtedness, conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until the DIP Obligations have been indefeasibly Paid In Full.

38. _Citibank Accounts_. For the avoidance of doubt, nothing contained in this Final Order shall be construed to give any entity a lien or similar right which is senior or equal to, or otherwise to limit or impair, any lien, right of setoff, ownership interest, or other right that Citibank, N.A. (in any capacity) may have with respect to any accounts maintained at Citibank, N.A.

39. _Setoff and Recoupment_. Notwithstanding anything to the contrary contained herein, neither the terms of this Order nor the Interim Order shall limit or impair the nature, extent, validity and/or priority of the rights, if any, of any party-in-interest in the Debtors' Chapter 11 cases under sections 546(c), 545, and 553 and/or the equitable doctrine of recoupment.

40. _Claims Among Borrowers_. As adequate protection for each Debtor for the continued use of the centralized cash management system to the extent that any Debtor transfers

property (including cash) following the Petition Date (the "Adequately Protected Debtor") to or for the benefit of any other Debtor (the "Beneficiary Debtor"), with an aggregate fair value in excess of the aggregate fair value of property (including cash) or benefit received by the Adequately Protected Debtor from the Beneficiary Debtor following the Petition Date, then the following shall apply:

(a) the Adequately Protected Debtor shall have (x) an allowed claim against the Beneficiary Debtor equal to the amount by which the fair value of property (including cash) or benefit transferred (net of any reasonable expenses for overhead or other services reasonably allocated or reasonably charged to the Adequately Protected Debtor) exceeds the aggregate for value of property (including cash) or benefit received, under sections 364(c)(1) and 507(b) of the Bankruptcy Code, having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear a market rate of interest for the period accruing from and after the date such claim arises until repayment thereof (collectively, the "Junior Reimbursement Claim") and (y) a lien on all property of the Beneficiary Debtor's estate under section 364(c)(3) of the Bankruptcy Code securing such Junior Reimbursement Claim ("Junior Lien");

(b) (i) all Junior Reimbursement Claims and Junior Liens shall be junior, subject and subordinate only to the Carve-Out and to the Super-Priority Claim and Liens granted to the Lenders and the 2009 Note Trustee, and to any claims against such Beneficiary Debtor that are expressly senior to, or carved out from, such claims of the Lenders and the 2009 Note Trustee; (ii) the Adequately Protected Debtor shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to a Junior Lien or Junior Reimbursement Claim including, without limitation, seeking relief from the automatic stay, or seeking any sale, foreclosure,

9564528.8

realization upon or repossession or liquidation of any property of another Debtor, or taking any position with respect to any disposition of the property, the business operations, or the reorganization of another Debtor; and (iii) the Lender shall have the exclusive right to manage, perform and enforce all such rights and remedies described in the preceding clause (ii) and under the DIP Agreement, and the Adequately Protected Debtor shall immediately, upon the request of the Lenders, release or otherwise terminate its Junior Lien, to the extent that the property subject to such Junior Lien is sold or otherwise disposed of by the Lenders or the other Debtors, in the case of each of clauses (i), (ii) and (iii) above or the DIP Agreement; and with respect to the effect of Junior Liens on any sale of property by the Debtors, (i) the Debtors may sell property, in accordance with section 363 of the Bankruptcy Code, free and clear of any Junior Lien with such lien attaching to the proceeds of sale in the same priority as existed in respect of the property sold, *and* (ii) the provisions of section 363(k) of the Bankruptcy Code shall not apply.

41.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Agreement or the DIP Loan Documents, the terms and provisions of this Final Order shall govern.

42.    <u>Adequate Notice</u>.  The notice given by the Debtors of the Final Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.  Under the circumstances, no other or further notice of the request for the relief granted at the Final Hearing is required.

9564528.8

39

43.    <u>Entry of Order; Effect</u>.  This Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Final Order on the Court's docket in these Chapter 11 Cases.

44.    <u>JP Morgan Chase Bank, As Indenture Trustee</u>.  Notwihtstanding any other provision of this Order, the Interim Order, the Existing Loan Agreement, or the Financing Agreement dated December 16, 2003, or any related loan documents (collectively, the "Prepetition Ableco Financing Agreement"), any and all claims of the debenture holders and the indenture trustee under the Indenture dated as of October 1, 1997 with respect to the Pre-Petition Ableco Financing Agreements, the Prior DIP Facility or any related transactions, against the Debtors, their officers and directors, or any third parties, are hereby preserved.  No provision in this Order or the Prior DIP Facility shall have any effect on such claims.

Dated: New York, New York
      January 16, 2004

                         /s/ Prudence Carter Beatty
                         UNITED STATES BANKRUPTCY JUDGE

9564528.8