UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No. 01-42217 (REG) |
| AMES DEPARTMENT STORES, INC., et al., | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------x

## FINAL ORDER (1) AUTHORIZING INCURRENCE
## OF INDEBTEDNESS WITH ADMINISTRATIVE
## SUPER-PRIORITY AND SECURED BY SENIOR LIENS
## ON AND SECURITY INTERESTS IN THE KIMCO PRIORITY COLLATERAL
## PURSUANT TO SECTIONS 364(c)(1), (2) AND (3)
## OF THE BANKRUPTCY CODE AND (2) GRANTING OTHER RELIEF

## RECITALS

Ames Department Stores, Inc. ("Ames"), Ames Merchandising Corporation ("Merchandising"), Ames Realty II, Inc. ("Realty"), Ames Transportation Systems, Inc. ("Transportation"), and Amesplace.com, Inc. ("Amesplace") (collectively, "Debtors"), having filed a motion dated August 20, 2001 (the "Motion") for, inter alia:

(a)    authorization, under sections 364(c)(1), (2) and (3) of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtors to obtain post-petition financing in the form of a term credit facility up to a maximum outstanding principal amount of $55,000,000 in accordance with (i) the proposed Debtor-In-Possession Credit Agreement among Realty, as Borrower ("Borrower"), the other Debtors, as Credit Parties, Kimco Funding, LLC ("Kimco"), as Agent and a Lender ("Agent") and the Lenders from time to time parties thereto ("Lenders") substantially in the form of Exhibit "2" to the Motion (as amended from time to time, collectively, the "Post-Petition Loan Agreement")[1], (ii) the Debtor-In-Possession Guaranty of Ames substantially in the form attached to the Post-Petition Loan Agreement (as

---

[1]    All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Post-Petition Loan Agreement.

amended from time to time, the "Post-Petition Parent Guaranty"), and (iii) the Debtor-In-Possession Guaranty of Merchandising, Transportation and Amesplace substantially in the form attached to the Post-Petition Loan Agreement (as amended from time to time, the "Post-Petition Subsidiary Guaranty") (Ames, Merchandising, Transportation and Amesplace being referred to herein as the "Guarantors");

(b)    authorization, under sections 364(c)(1), (2) and (3) of the Bankruptcy Code, to obtain financing from the Agent and Lenders, from time to time under the terms of the Post-Petition Loan Agreement, the Post-Petition Parent Guaranty and the Post-Petition Subsidiary Guaranty (the "Permanent Financing");

(c)    authorization to grant to the Agent and Lenders assurances for the full and timely payment by and performance of the obligations and indebtedness of the Borrower and the Guarantors to the Agent and Lenders in connection with such Permanent Financing including, without limitation, all principal, interest, costs, fees and expenses (the "Post-Petition Obligations") by granting to the Agent, for the ratable benefit of the Agent and the Lenders (i) pursuant to section 364(c)(1) of the Bankruptcy Code, an administrative expense allowable under section 503(b) of the Bankruptcy Code having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 105, 503(b), 506(c) and 507(b) of the Bankruptcy Code, subject, as to priority only to the Superpriority Claims in respect of the obligations under the GE Capital DIP Credit Agreement (the "GE Superpriority Claims") and the Carve-Out Reserve provisions of the Post-Petition Loan Agreement; (ii) pursuant to sections 364(c)(2) of the Bankruptcy Code, a perfected first priority Lien in all unencumbered Kimco Priority Collateral and the proceeds thereof; (iii) pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected Lien upon all Kimco Priority Collateral (and the proceeds thereof) that is subject to valid and perfected liens in existence on the Filing Date or to valid liens in existence on the Filing Date that are perfected subsequent to the Filing Date as permitted by section 546(b) of the Bankruptcy Code or to Permitted Encumbrances, junior only to such valid and perfected Liens but senior to any Liens securing the Indebtedness under the GE Capital DIP Agreement (the "GE Capital Liens") and (iv) a perfected Lien upon all other property (and the proceeds thereof) of the Borrower and each of the other Credit Parties that is subject to valid and perfected Liens in existence on the Filing Date or to valid Liens in existence on the Filing Date that are perfected subsequent to the Filing Date as permitted by section 546(b) of the Bankruptcy Code or to Permitted Encumbrances or to the GE Capital Liens, including the GE Mortgaged Real Property Assets, junior to such Liens; subject only to the "Carve-Out Reserve". All of the foregoing property in clauses (ii) through (iv) above being hereinafter referred to collectively as the "Collateral".

The Court having held a hearing on August 20, 2001, on the Motion on an expedited and emergency basis (the "Preliminary Hearing") pending the Final Hearing before this Court to consider the Post-Petition Loan Agreement, the Post-Petition Parent Guaranty and the Post-Petition Subsidiary Guaranty; and notice of the Preliminary Hearing having been given to (a) the United States Trustee, (b) the Agent, the Lenders and the Pre-Petition Lenders, (c) each of the twenty (20) largest unsecured creditors of the Debtors (on a consolidated basis); and at the conclusion of the Preliminary Hearing the Court having signed and caused to be entered on August 20, 2001 an Interim Order (1) Authorizing Incurrence of Indebtedness With Administrative Super-Priority and Secured by Senior Liens on and Security Interests in the Kimco Priority Collateral Pursuant to Sections 364(c)(1), (2) and (3) of the Bankruptcy Code, (2) Granting Other Relief and (3) Scheduling and Approving the Form and Method of Notice of the Hearing on the Debtors' Motion to Incur Such Financing on a Permanent Basis (the "Interim Order") granting the relief sought in the Motion, subject to a final order thereon; due, adequate and appropriate notice of the Final Hearing having been given pursuant to Rule 4001(c)(1) of the Bankruptcy Rules and in accordance with the requirements of the Interim Order, it appearing that sufficient cause exists under the circumstances of these cases, and after considering the Debtors' need for the Permanent Financing sought in the Motion; and the Final Hearing having been held on September 25, 2001 to consider final approval of the Post-Petition Loan Agreement, the Post-Petition Parent Guaranty and the Post-Petition Subsidiary Guaranty; and the Agent and the Lenders having agreed to provide the Permanent Financing on the terms and conditions set forth in the Post-Petition Loan Documents (as such term is hereinafter defined) as authorized by the Interim Order;

3

Now, upon the record of the Preliminary Hearing and the Final Hearing, and after due deliberation, and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

B.          On August 20, 2001 (the "Filing Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. Pursuant to an order of the Court issued on the Filing Date, these chapter 11 cases are being jointly administered.

C.          The Debtors have continued in the management and operation of their respective businesses and properties as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of these chapter 11 cases. Following the Filing Date, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these cases (the "Committee").

D.          The Debtors have provided actual notice of the terms of the Motion and the Interim Order as directed by the Court in the Interim Order, to (i) counsel for the Committee, (ii) the Office of the United States Trustee, (iii) all parties who have filed requests for notice under Bankruptcy Rule 2002; (iv) the Agent, the Lenders and the Pre-Petition Lenders, (v) each of the twenty largest unsecured creditors of the Debtors (on a consolidated basis) at their respective last known addresses; (vi) counsel for the Agent, (vii) all parties known by the Debtor to have liens on the Debtors' assets; (viii) the licensors under any license agreements under which any Debtor is a licensee to the extent reasonably feasible; (ix) each of the landlords under the Leases; (x) the Internal Revenue Service; (xi) General Electric Capital Corporation ("GE Capital") and (xii) the Securities and Exchange Commission. Such notice is appropriate and adequate under the circumstances set forth herein and presented to this Court. Consequently, adequate notice

4

and opportunity for a final hearing has been given in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

E.        Based on evidence presented to the Court by the Debtors, it appears that (i) the immediate need exists for the Borrower to obtain a term facility to continue the operations of the Debtors' businesses, (ii) the Permanent Financing under the Post-Petition Loan Documents (as defined below) is superior to any of the financing available to the Debtors, (iii) without the Permanent Financing, the Debtors will be unable to conduct their businesses, to pay their employees, and to meet their other direct operating expenses, and (iv) without the Permanent Financing the likelihood of a successful reorganization will be greatly diminished.  Absent entry of this Order, it would appear that the Debtors' operations will be seriously disrupted, resulting in immediate and irreparable harm to the estates. Therefore, entry of this Order and approval of the Permanent Financing will benefit the Debtors and their estates and maximize the ability of the Debtors to reorganize successfully under Chapter 11 and/or maximize the value of the Debtors' assets.

F.        The Lenders have agreed to extend, upon entry of a final order approving the Post-Petition Loan Documents (as defined below) following the Final Hearing, a term loan facility of up to $55,000,000 in the aggregate, all upon the terms and conditions set forth in the Post-Petition Loan Agreement, the Post-Petition Parent Guaranty, the Post-Petition Subsidiary Guaranty and the other documents to be entered into in connection therewith (collectively, the "Post-Petition Loan Documents").

G.        Based on the Motion and the other filings by Debtors herein, in view of the Debtors' current financial condition, financing arrangements and capital structure, the

5

Debtors are unable to obtain an adequate unsecured credit facility allowable under section 503(b)(1) or 364(c)(1) of the Bankruptcy Code merely as an administrative expense pursuant to sections 364(b) or 364(c)(1) of the Bankruptcy Code. The Lenders have conditioned the Permanent Financing upon the grant to the Agent, for the ratable benefit of the Agent and the Lenders, of (i) an administrative expense allowable under section 503(b) of the Bankruptcy Code with priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 105, 503(b), 506(c) and 507(b) of the Bankruptcy Code, subject, as to priority, only to the GE Superpriority Claims and the Carve-Out Reserve; (ii) a perfected first priority Lien on all unencumbered Kimco Priority Collateral and the proceeds thereof; (iii) a perfected Lien upon all Kimco Priority Collateral (and the proceeds thereof) that are subject to valid and perfected Liens in existence on the Filing Date or to valid liens in existence on the Filing Date that are perfected subsequent to the Filing Date as permitted by Section 546(b) of the Bankruptcy Code or to Permitted Encumbrances, junior only to such valid and perfected Liens but senior to any Liens securing the Indebtedness under the GE Capital DIP Agreement; and (iv) a perfected Lien upon all other property (and the proceeds thereof) of the Debtors, that is subject to valid and perfected Liens in existence on the Filing Date or to valid Liens in existence on the Filing Date that are perfected subsequent to the Filing Date as permitted by Section 546(b) of the Bankruptcy Code or to Permitted Encumbrances or to the GE Capital Liens, including the GE Mortgaged Real Property Assets, junior to such Liens; subject only to the Carve-Out Reserve and the Objectors' Liens (as defined below).

6

H.      The terms of the Permanent Financing taken as a whole are more favorable to the Debtors than those available from alternative sources, and such financing will minimize disputes and litigation over collateral values. The terms of the Permanent Financing have been negotiated in good faith and at arm's length among the Debtors and the Agent and Lenders, are fair and reasonable under the circumstances and are enforceable in accordance with their terms. Consequently, any credit extended to the Debtors by the Lenders under the terms of this Order shall be deemed to have been extended in good faith as that term is used in section 364(e) of the Bankruptcy Code, and the Agent and the Lenders are entitled to the benefits of section 364(e).

I.      The Court has jurisdiction over these chapter 11 cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Order is entered in a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O).

J.      The Agent, on behalf of itself as Agent and Lender under the Post-Petition Loan Agreement and on behalf of the other Lenders under the Post-Petition Loan Agreement, has consented to the terms and conditions contained in this Order.

Now, therefore, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1.      The record in these cases and the findings of fact set forth above are incorporated herein by this reference.

2.      The terms and conditions of the Permanent Financing and the Post-Petition Loan Documents are hereby approved for the purposes of the Permanent Financing.

**Authorization to Borrow Under Post-Petition Loan Documents**

3.      The Borrower is immediately authorized and empowered to borrow, and the Guarantors to guaranty, under the Post-Petition Loan Documents the amounts

1-NY/1333867.5

provided for thereunder and for the purposes permitted in strict accordance with the Post-Petition Loan Documents and this Order. The Post-Petition Loan Documents provide for a total loan facility of $55,000,000. Except as otherwise provided in the Post-Petition Loan Documents and this Order, the Post-Petition Obligations shall be:

(i)  Claims entitled to the status of superpriority administrative expenses, in accordance with section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses, whether, heretofore or hereafter incurred, specified in or ordered by the Court pursuant to any other section of the Bankruptcy Code, including, without limitation, sections 105, 326, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code subject and junior solely to the GE Superpriority Claims, except for the Carve-Out Reserve and avoidance actions and recoveries arising under sections 544, 546, 547, 548, 550 and 553 of the Bankruptcy Code ("Avoidance Actions");

(ii)  Secured pursuant to section 364(c)(2) of the Bankruptcy Code, by a first priority perfected Lien on all unencumbered Kimco Priority Collateral and the proceeds thereof;

(iii)  Secured pursuant to section 364(c)(3) of the Bankruptcy Code by perfected Liens on all Kimco Priority Collateral of the Debtors and the proceeds thereof that is otherwise subject to a valid and perfected Lien in existence on the Filing Date or to valid Liens in existence on the Filing Date that are perfected subsequent to the Filing Date as permitted by section 546(b) of the Bankruptcy Code or to Permitted Encumbrances, junior only to such valid and perfected Liens but senior to the GE Capital Liens; and

(iv)  A perfected Lien upon all other property (and the proceeds thereof) of the Debtors that is subject to valid and perfected Liens in existence on the Filing Date or to valid Liens in existence on the Filing Date that are perfected subsequent to the Filing Date as permitted by section 546(b) of the Bankruptcy Code or to Permitted Encumbrances or to the GE Capital Liens, including the GE Mortgaged Real Property Assets, junior to such valid and perfected Liens; subject in each instance of (i), (ii), (iii) and (iv) above to the Carve-Out Reserve and Avoidance Actions and the Objectors' Liens.

4.    The Agent and the Debtors may amend, modify, supplement or waive any provision of the Post-Petition Loan Documents if such amendment, modification, supplement or waiver is not material (in the good faith judgment of the Agent and the Debtors) in accordance with the Post-Petition Loan Documents and the Intercreditor Agreement (as defined below), without any need to apply to, or receive further approval from, the Court.  The Debtors shall, to the extent reasonably practicable, provide the Committee and the United States Trustee with written notice of any amendment, modification, supplement or waiver prior to the date such amendment, modification, supplement or waiver is made.  However, the consent of the United States Trustee and the Committee shall not be required. Any material amendment, modification, supplement or waiver shall be submitted for approval by the Court on appropriate notice in accordance with the Post-Petition Loan Documents and that certain Intercreditor Agreement between GE Capital and Kimco dated August 20, 2001 (the "Intercreditor Agreement")

### Payment Of Obligations

5.    The Debtors are authorized and directed to do and perform all acts, to make, execute and deliver the Post-Petition Loan Documents and all related instruments, agreements and documents, to pay all principal, interest, fees and expenses (including, without limitation, fees and expenses incurred by counsel and other professionals of the Agent) as set forth in the Post-Petition Loan Documents, and to perform all of their obligations under this Order and the Post-Petition Loan Documents, without further Order of the Court.

9

6.      None of the Post-Petition Loan Documents, nor this Order, nor any provision of

any thereof, nor any right arising under any provisions thereof, shall be voidable

or avoidable under section 548 of the Bankruptcy Code or any applicable State

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or

similar statute or common law.

### Collateral Security; Priority Administrative Claims

7.      The Post-Petition Obligations shall have the status of superpriority administrative

expenses, in accordance with section 364(c)(1) of the Bankruptcy Code, over any

and all administrative expenses, whether, heretofore or hereafter incurred,

specified in or ordered by the Court pursuant to any other section of the

Bankruptcy Code, including, without limitation, sections 105, 326, 330, 331,

503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy

Code, subject and junior only to:

(a)     the GE Superpriority Claims;

(b)     amounts payable to the United States Trustee pursuant to 28 U.S.C. §
        1930(a)(6); and

(c)     upon the occurrence and during the continuance of an Event of Default
        (which is not subsequently waived or cured) the payment of accrued and
        unpaid professional fees and expenses allowed by the Bankruptcy Court
        (whether incurred prior to or subsequent to such Event of Default) of
        attorneys, accountants, financial advisors or other professionals retained
        by the Debtors and any Committees appointed in the chapter 11 cases
        pursuant to section 1103 of the Bankruptcy Code, as well as any accrued
        and unpaid expenses so allowed by the Bankruptcy Court of the members
        of the Committee, and with respect to any chapter 7 or chapter 11 trustee
        appointed or elected in the cases to the extent of $50,000 of the Carve-Out
        Reserve (except in each instance to the extent that such fees and expenses
        were incurred in the prosecution of claims, causes of action, actions or
        proceedings against the Agent or the Lenders in respect of the Post-
        Petition Obligations or otherwise), in an aggregate amount (inclusive of
        the Carve-Out Reserve provided in the GECC DIP Facility) not in excess
        of $5,000,000 to be allocated pro rata between the outstanding obligations

10

hereunder and the obligations under the GECC Loan Documents, plus amounts payable pursuant to 28 U.S.C. § 1930 (a)(6), provided, that any payments actually made to such professionals under sections 330, 331 and 503 of the Bankruptcy Code in respect of fees and expenses incurred or accrued (i) prior to the occurrence of an Event of Default shall not reduce the Carve-Out Reserve, and (ii) from and after the occurrence of an Event of Default shall reduce dollar-for-dollar the Carve-Out Reserve. Except with respect to the Carve-Out Reserve and the GE Superpriority Claims, no other claim or expense, having a priority senior to or pari passu with that granted to the Agent, for the ratable benefit of the Agent and the Lenders in this Order, shall be granted in these chapter 11 cases, or any superseding chapter 7 case, while any portion of the Post-Petition Obligations, the Post-Petition Loan Documents or the Commitments thereunder remain outstanding.

8.      Notwithstanding the foregoing, the Debtors shall be permitted to pay, as the same may become due and payable (i) administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of their businesses; (ii) subject to the provisions of paragraph 7 hereof and provided that no Event of Default has occurred and is continuing, compensation and reimbursement of expenses to professionals allowed by this Court and payable under sections 330 and 331 of the Bankruptcy Code, and (iii) any other pre- or post-Filing Date expenses of the Debtors, including adequate protection payments, to the extent approved by an Order of this Court and not otherwise prohibited by the terms of the Post-Petition Loan Documents, provided that the Debtors shall not be permitted to pay any professional fees and expenses incurred in connection with the investigation of potential claims, causes of action, actions or proceedings against the Agent or the Lenders in respect of the Post-Petition Obligations, or otherwise, and in no event shall any of the Carve-Out Reserve be utilized to prosecute or cause to be prosecuted any such claims, causes of action, actions or proceedings. Except for the GE Superpriority Claims, the Carve-Out

11

Reserve and payments under 28 U.S.C. § 1930(a)(6), no costs or expenses of administration shall be imposed against the Agent and the Lenders or the Collateral for the Debtors' Post-Petition Obligations hereunder and under the Post-Petition Loan Documents, under sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise. Notwithstanding the foregoing, nothing in this Order shall preclude the Agent or the Lenders from asserting any objections to professional fees and expenses sought to be paid under the provisions of sections 330, 331 and 503 of the Bankruptcy Code.

9.      As security for the full and timely payment and performance of the Post-Petition Obligations, the Agent, for the ratable benefit of the Agent and the Lenders, is hereby granted, pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, a Lien on the Collateral for the ratable benefit of the Agent and the Lenders. The Liens authorized hereunder shall have first priority, except as otherwise provided in the Post-Petition Loan Documents and this Order, including in respect of the Carve-Out Reserve.

10.     Other than with respect to the GE Capital Liens relating to non-Kimco Priority Collateral (as to which the Liens shall be subordinate solely to GE Capital), the Liens granted hereunder and in the Post-Petition Loan Documents shall not be subordinated to or pari passu with any other Lien, however arising. The Agent and Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Collateral.

11.     The Liens in favor of the Agent and the Lenders described herein and in the Post-Petition Loan Documents shall be deemed valid, binding, enforceable and

12

perfected upon entry of this Order, and shall not be subject to any Lien which is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.  Notwithstanding anything to the contrary in the Post-Petition Loan Documents or this Order, the avoidance of a lien on, or claim with respect to, property of any Debtor under sections 544, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code shall not diminish or otherwise affect the validity or priority of the Liens granted with respect to such property to the Agent and Lenders hereby or in the Post-Petition Loan Documents or any superpriority claims granted to Agent and Lenders hereunder.

12.    The Agent and Lenders shall not be required to file any financing statements, mortgages, notices of Lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the Liens granted by or pursuant to this Order or pursuant to the Post-Petition Loan Documents.

13.    The Agent may, in its sole discretion from time to time, file any such financing statements, mortgages, notices of Lien or similar instruments, take possession of any collateral securing the Post-Petition Obligations, or take any other action to validate or perfect any such security interest, mortgage or other Lien, as the Agent shall deem appropriate in accordance with the terms of the Post-Petition Loan Documents, as well as the Intercreditor Agreement, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order.

14.    A certified copy of this Order, in the discretion of the Agent, may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing

statements, mortgages, notices of Lien or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Order for filing and recording.

15.     Pursuant to sections 105, 363, 364 and 365 of the Bankruptcy Code, any provisions in any of the leases of nonresidential real property under which any of the Debtors is a lessee (each, a "Lease" and collectively, the "Leases") and any provisions in any of the license agreements under which any of the Debtors is a licensee, that require the consent or approval of one or more of the Debtors' landlords or licensors, as the case may be, in order for any Debtor to pledge or mortgage its interest, in such Lease or other agreement, or that prohibits or conditions the granting of any Liens herein are and shall be deemed inconsistent with the provisions of the Bankruptcy Code and are and shall have no force and effect with respect to the transactions granting the Liens by such Debtor in accordance with this Order or the Post-Petition Loan Documents.

## Reporting and Cash Management Matters

16.     The Debtors shall establish and maintain an account or accounts at banks or financial institutions in accordance with the provisions of the Post-Petition Loan Documents, into which all cash proceeds, payments, accounts receivable and cash proceeds thereof and other collections of Collateral shall be immediately deposited in kind by Debtors, all of which shall be applied to the satisfaction of Post-Petition Obligations. The Debtors are hereby authorized to obtain advances under the Post-Petition Loan Documents in accordance with the provisions thereof.

14

17.    The Debtors promptly shall provide Agent reasonable access during reasonable business hours to Debtors' personnel, books and records and the Collateral.

## Termination Events

18.    Notwithstanding the provisions of section 362 of the Bankruptcy Code and without order of or application or motion to the Court, in the event of (a) the failure of any Debtor to perform any of its material obligations under this Order including, without limitation, the requirements set forth in paragraphs 16 and 17, (b) the occurrence and continuance of an Event of Default under the Post-Petition Loan Documents, or (c) the entry of an order avoiding and requiring repayment of any portion of the payments made on account of the Post-Petition Obligations or the payments made as provided in paragraph 5 of this Order, then and upon the occurrence of any of the foregoing (each a "Termination Event"), and at all times during the continuance thereof, the Agent may subject to any applicable provisions of the Intercreditor Agreement and on three (3) Business Days' prior written notice to the Debtors, GE Capital, as well as to the United States Trustee and counsel for the Committee, (w) terminate forthwith the Commitments, (x) declare the Loans and all other Post-Petition Obligations to be immediately due and payable, (y) enforce rights against any Collateral in the possession or control of Agent or a Lender; and (z) exercise, on behalf of the Agent and Lenders, any and all rights and remedies allowed under the Post-Petition Loan Documents, including, but not limited to, the right of the Agent to compel the Debtors to assume and assign leases in accordance with section 365 (or to convey real property in accordance with section 363) which constitute Kimco Priority

15

Collateral to the Agent's designees.  The Agent's and Lenders' failure to exercise any of the rights under this paragraph shall not constitute a waiver of any of their rights.

19. The obligations of the Debtors and the rights, claims, Liens, and priorities of the Agent and the Lenders shall remain unimpaired and unaffected by the termination of the Permanent Financing.

### Access Requirements

20. The Debtors' obligations to allow access to representatives of the Agent and to provide information with respect to and otherwise comply with the undertakings and agreements set forth in this Order and the Post-Petition Loan Documents shall continue beyond and survive the expiration of the Permanent Financing until the Post-Petition Obligations are indefeasibly satisfied and discharged and all Commitments are terminated.

### Resolution of Objections

21. The term "Objectors" as used herein shall refer solely to the parties listed on the annexed Schedule A.

22. Notwithstanding anything contained herein or in the Loan Documents to the contrary, if (1) an Event of Default has occurred and has not been timely cured, and (2) Kimco elects, in its sole discretion, to dispose of any Kimco Priority Collateral in the Cases in accordance with section 363 and/or 365 of the Bankruptcy Code, then in such event the Kimco Priority Collateral shall be disposed of by the Agent subject to higher or better offers, if any, to be received at an auction or auctions to be held in accordance with auction procedures determined by the Agent in consultation with the Debtors, the Objecting

16

1-NY/1333867.5

Landlords (as defined below), GECC and the Committee (the "Auction"). After consulting with the Debtors, the Objecting Landlords (as defined below), GECC and the Committee, the Agent will provide such parties with a copy of the proposed Auction procedures and each of such parties will have ten (10) days from receipt to object to the Auction procedures. If no objection is made, such party shall be deemed to have consented to the Auction procedures and to have waived all objections thereto. If an objection is timely raised, the objection shall be resolved by the Bankruptcy Court or by consent of the parties. At the Auction, Objectors who are lessors of non-residential real property to the Debtors ("Objecting Landlords") will have the right to credit bid their non-disputed cure amounts.

23.     Nothing contained in this Order shall be deemed to prejudice or otherwise affect the right of an Objecting Landlord to assert that any lease has expired (or was properly and effectively terminated) pre-petition. Similarly, nothing contained in this Order shall be deemed to be a waiver of any party's right to contest any such assertion by an Objecting Landlord.

24.     Nothing contained in this Order shall be deemed to be a waiver by any creditor of its right to assert a reclamation claim or any right of the Debtors or other party in interest to object to any such reclamation claim.

25.     The Agent and/or GECC, on behalf of the Post-Petition Lenders, shall cause to be paid to the Objecting Landlords all post-petition rent and other charges incurred under their leases (the "Rent") during the Post Default Period. The term "Post Default Period" as used herein shall mean the period (1) commencing on the sixth

17

day following an Event of Default by Debtors under the Post Petition Loan Documents which has not been cured or waived and (2) terminating on the latest to occur of (a) the date the premises are vacated and returned to the Objecting Landlord, (b) the date of entry of an order of this Court approving the assumption and assignment of an Objecting Landlord's lease, or (c) 10 days after the receipt of written notice from the Agent to the Objecting Landlord that the Agent has abandoned any further interest in the lease and in any property located in the premises. The Agent and GECC shall agree on the portion of Rent that each will be responsible for during the Post Default Period, and if no agreement is reached, the Bankruptcy Court shall apportion the Rent liability. Notwithstanding anything contained herein to the contrary, the obligation of GECC, on behalf of the Post-Petition Lenders, for Rent shall be limited solely to the obligation to cause to be paid to Objecting Landlords the Rent on a per diem basis during the period of any GOB sale, if any.

26.    The term "Rent" shall not include any interest, penalties, default costs, environmental liabilities, late fees, legal fees, hold-over charges or other items not directly related to use and occupancy of the leased premises.

27.    Any GOB sales by the Agent and/or GECC shall be conducted in accordance with guidelines to be established in consultation with the Objecting Landlords, the Debtors, the Committee and GECC or, if no agreement can be reached on such GOB guidelines, as established by Order of this Court.

28.    The existing prepetition liens and/or security interests of Osram Sylvania Products, Inc., Sylvania Lighting Services, Inc., Bombardier Capital, Inc., Safeco

Credit Company, Inc., and General Electric Capital Corporation (on behalf of its commercial equipment financing businesses) (collectively, the "Objector's Liens") shall be senior to the liens and/or security interests granted to the Agent and GECC provided that such Objector's Lien is proven by such Objector to (1) be a validly granted and duly perfected prepetition lien, (2) have had priority over the lien of GECC prior to the filing of these Cases, and (3) be not otherwise subordinated by statute or contract and provided further that the seniority of the Objector's Lien shall be limited solely to the undisputed allowed amount of the claim established by the Objector. The foregoing priority shall not extend to any party who is not an Objector as defined herein or to any property or collateral which is not currently subject to a duly existing and perfected Objector's Lien. In addition, the liens granted to Agent and GECC under this Order shall not attach to any equipment leased to any Debtor by any such Objector under a true lease, as subsequently determined by this Court.

29.     All objections are hereby overruled in their entirety except to the extent expressly set forth in this Order.

### Miscellaneous Provisions

30.     No order dismissing any of the cases under § 1112 of the Code or otherwise shall be entered unless prior to the entry thereof (i) all obligations under the Post-Petition Loan Documents have been indefeasibly paid in full or (ii) all assets of the Debtors have been liquidated and the proceeds distributed in accordance with the priorities established by this Order and the Intercreditor Agreement. The Liens, administrative priorities and other rights and remedies granted to the Agent, for the ratable benefit of the Agent and the Lenders, by the provisions of

19

this Order and any actions taken pursuant hereto shall survive, and shall not be modified, altered or impaired in any manner by (a) any other financing or extension of credit or incurrence of debt by any of the Debtors (under section 364 of the Bankruptcy Code or otherwise), (b) the entry of an order confirming any plan of reorganization, or (c) the entry of an order converting any of these cases to cases under chapter 7, dismissing any of these chapter 11 cases or terminating the joint administration of these chapter 11 cases, or by any act or omission whatsoever. Debtors shall not seek and it shall constitute an Event of Default if any of the Debtors seek, or if there is entered, an order dismissing any of the chapter 11 cases. The terms and provisions of this Order and the Post-Petition Loan Documents shall continue in these chapter 11 cases if they cease to be jointly administered, and in any superseding chapter 7 cases under the Bankruptcy Code, and the Liens granted to the Agent, for the ratable benefit of the Agent and the Lenders, and the superpriority status of the administrative expenses and payment provisions contained in the Post-Petition Loan Documents and this Order shall continue in effect until the Post-Petition Obligations are indefeasibly satisfied and discharged and the Commitments are terminated. Pursuant to sections 105 and 349 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction notwithstanding such dismissal over the Debtors' cases for the purpose of (A) validating the priority of the Liens and (B) enforcing and implementing payment to the Agent and GE Capital from the assets of the Debtors according to the terms of this Order and the Intercreditor Agreement.

1-NY/1333867.5

31.    This Order shall be binding upon and inure to the benefit of the Agent, the Lenders and the Debtors and their respective successors and assigns, including without limitation, any chapter 11 or chapter 7 trustee hereinafter appointed or elected as a representative of any of the Debtors' estates; <u>provided</u>, <u>however</u>, that the Agent and Lenders shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee appointed or elected for the estate of any of the Debtors.

32.    If any provision of this Order is hereafter modified, vacated or stayed by subsequent order of this or any other court for any reason, such modification, vacation or stay shall not affect the validity and priority of any of the Post-Petition Obligations incurred under this Order and, prior to the effective date of any such modification, vacation or stay, the validity, enforceability or priority of the Post-Petition Obligations shall be governed in all respects by the original provisions of this Order, and the Agent and Lenders shall be entitled to all of the rights, privileges and benefits granted herein.

33.    Other than as expressly set forth above, no rights are created hereunder for the benefit of any third party, any creditor (other than the Agent and the Lenders) or any direct, indirect or incidental beneficiary.

34.    The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Agent and the Lenders to take any action authorized or contemplated by this Order or the Post-Petition Loan Documents and to carry out the terms thereof, subject, however, to

21

the satisfaction of any notice, procedural and other conditions contained in this Order, the Post-Petition Loan Documents or the Intercreditor Agreement.

35.    No waiver, modification, or amendment of any of the provisions of this Order shall be effective unless set forth in writing, signed by the parties required under the Post-Petition Loan Documents and approved by the Court.

36.    In the event of any irreconcilable inconsistency between this Order and any agreement heretofore or hereafter entered into by and among any of the Debtors, the Agent or the Lenders, the terms of this Order shall govern and control.

37.    The provisions of this Order shall be effective upon entry of this Order, and the Clerk of the Court is hereby directed to forthwith enter this Order on the docket of this Court maintained in regard to these cases.

Dated:  September _25_, 2001


                                        _/s/ Robert E. Gerber_
                                        United States Bankruptcy Judge

1-NY/1333867.5

## SCHEDULE OF OBJECTORS
## TO DIP LOANS

| OBJECTOR | PROPERTY |
|---|---|
| Capital Commercial Properties, Inc. and Eden Center, Inc. | Store # 2573 – Wheaton, MD<br>Store # 518 – Lutherville-Timonium, MD<br>Store #2570 – Sherly Highway, VA<br>Store #2571 – Falls Church, VA |
| Osram Sylvania Products, Inc., Sylvania Lighting Products, Inc. | N/A |
| One Step Up, Ltd. | N/A |
| Carousel Center Company L.P., | Carousel Center, Syracuse, NY |
| Pyramid Company of Ithaca, | Pyramid Mall, Ithaca, NY |
| Pyramid Company of Watertown, | Salmon Run Mall, Watertown, NY |
| Pyramid Champlain Company, | Champlain Centre North, Plattsburgh, NY |
| Berkshire Mall Group, | Berkshire Mall, Lanesborough, MA |
| Eastpoint Partners, L.P., | Eastpoint Mall, Baltimore, MD |
| Associates of Lebanon, | Lebanon Valley Mall, Lebanon, PA |
| Widewaters Roseland Center Company, LLC, | Roseland Center, Canandaigua, NY |
| New Paltz Properties, L.P., | New Paltz Plaza, New Paltz, NY |
| TP Associates Limited Partnership, | Torrington Parkade Shopping Center, Torrington, CT |
| Shop City Real Estate, LLC | Shop City Shopping Center, Syracuse, NY |
| Bombardier Capital, Inc. | N/A |
| The New Hartford Shopping Center Trust | Store # 2135 – New Hartford Shopping Center, New Hartford, NY |
| RLB Development LLC | Store # 1110 – Penn Cann Mall, Cicero, NY |

1-NY/1333867.5

## SCHEDULE OF OBJECTORS
## TO DIP LOANS
### (cont'd)

| *OBJECTOR* | *PROPERTY* |
|---|---|
| The Druker Company, on behalf of themselves and E&A Northeast Limited Partnership (Samuel Associates); | Acton, MA |
| Manley-Berenson Associates/ Fellsway Plaza Limited Partnership; | Medford, MA |
| W/S Lebanon LLC; | Lebanon, NH |
| Redstone Operating Limited Partnership; | Stoneham, MA |
| The Realty Associates Fund III, L.P.; | Hanover, MA |
| Beverly Plaza Realty Trust; | Beverly, MA |
| MEC Lenox Associates Ltd Partnership; | Lenox, MA |
| North Conway Plaza, LLC; | North Conway, NH |
| Riverbrook Realty LLC; | Plymouth, NH |
| Ronrum Realty LLC; | Rumford, ME |
| Middletown Plaza, LLC | Middletown, RI |
| Safeco Credit Company, Inc. | N/A |
| General Electric Capital Corporation (on behalf of its commercial equipment financing businesses) | N/A |
| Federal Realty Investment Trust | Store # 773 – Brunswick, NJ<br>Store # 2148 – Dedham, MA |
| New Plan Excel Realty Trust, Inc. | Store # 544 – Bethel Park Plaza, Bethel Park, PA<br>Store # 1054 – Cave Springs Corners, Roanoke, VA<br>Central Avenue Marketplace, Toledo (Sylvania), OH<br>Columbus Centre, Columbus, IN<br>Store # 243 – Cortlandville Plaza, Cortland, NY<br>Store #545 – Laurel Mall, Connellsville, PA<br>Store # 328—Northland Shopping Center, Watertown, NY<br>Store # 326 – South Plaza, Norwich, NY<br>Store # 302 -- University Mall, Canton, NY<br>Store # 310 – Westgate Plaza, Oneota, NY |