SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D. J. Baker (DB 0085)

Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**In re**                                           :
                                                    :        **Chapter 11**
                                                    :
**WINN-DIXIE STORES, INC., et al.,**                :        **Case No. 05-11063 (RDD)**
                                                    :
             **Debtors.** [1]                       :        **(Jointly Administered)**
                                                    :
-----------------------------------------------------------------x

**APPLICATION FOR AUTHORITY TO RETAIN**
**PRICEWATERHOUSECOOPERS LLP TO PROVIDE CERTAIN SARBANES-OXLEY**
**COMPLIANCE AND OTHER SERVICES TO THE DEBTORS**

Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and

debtors-in-possession (collectively, the "Debtors"), respectfully represent:

**Background**

1.     On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary

petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

U.S.C. §§ 101 1330 as amended (the "Bankruptcy Code").  Their cases are being jointly

administered by order of this Court.

2.    The Debtors are operating their businesses and managing their properties

as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No

request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the

Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of

unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to section 1103

of the Bankruptcy Code.

3.    The Debtors are grocery and drug retailers operating in the southeastern

United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.

According to published reports, the Debtors are the eighth-largest food retailer in the United

States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a

single grocery store and has grown through acquisitions and internal expansion.  The Debtors

currently operate more than 900 stores in the United States with nearly 79,000 employees.

Substantially all of the Debtors' store locations are leased rather than owned.

4.    This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.

Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2).

5.    The statutory predicate for the relief requested herein is section 327 of the

Bankruptcy Code of the Bankruptcy Code, and such relief is subject to Rule 2014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

6.        By this Application, the Debtors request entry of an order pursuant to section 327(a) of the Bankruptcy Code, approving the retention of PricewaterhouseCoopers LLP ("PwC"), nunc pro tunc to the Petition Date, to provide documentation, testing, and other internal auditing services in connection with the Debtors' compliance with Section 404 of the Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act") and the Debtors' other internal auditing needs. The Debtors request that PwC be retained to provide such services on the terms described herein and in the Internal Audit Master Professional Services Agreement (the "Master Agreement") between the Debtors and PwC, dated August 30, 2004, as supplemented by the Statements of Work attached thereto.[2]  Copies of the Master Agreement and of the Statements of Work that are currently active are attached as Exhibit A hereto.

## Basis for Relief

7.        The Debtors wish to employ PwC to provide internal auditing services in connection with the Debtors' compliance with Section 404 of the Sarbanes-Oxley Act and other internal auditing needs on the terms and conditions described herein and in the Master Agreement as supplemented by the Statements of Work attached thereto.

8.        To help ensure compliance with Section 404 of the Sarbanes-Oxley Act, the Debtors require the services of various professionals.  In this vein, prior to the

---

[2]        The services for which the Debtors seek to retain PwC are ordinary course professional services that would normally be subject to the Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business (the "OCP Order") dated March 4, 2005.  The Debtors are filing this Application to retain PwC pursuant to section 327(a) of the Bankruptcy Code because they anticipate that the cost of the services that they will require from PwC will exceed the monthly and case caps provided in the OCP Order.

commencement of these cases, the Debtors engaged PwC to provide documentation and testing

services necessary to the Debtors to meet the requirements of Section 404 of the Sarbanes-Oxley

Act and, as necessary, other internal auditing services.  The Debtors selected PwC to provide

such services because of PwC's national reputation and expertise in these areas.

9.    The Debtors' retention of PwC is evidenced by the Master Agreement as

supplemented by the Statements of Work attached thereto.  Under the terms of the Master

Agreement the respective scopes of the services and internal audit projects that PwC conducts

are defined in periodic attachments to the Master Agreement, known as a Statements of Work

("SOWs").  Seven SOWs have been executed since the Master Agreement was entered into, of

which five (SOW Nos. 3 through 7) remain active.[3]  As more fully described in the applicable

SOWs, SOW Nos. 3 through 7 relate to internal auditing services provided by PwC in support of

Winn-Dixie's compliance efforts in the areas of entity level internal controls over financial

reporting, PeopleSoft application security controls, PeopleSoft application controls, and general

computer controls.

10.    The Debtors believe that they will continue to require the services

provided by PwC.  Accordingly, the Debtors are hereby seeking authority to retain PwC to

complete the projects described in the remaining active SOWs and to execute additional SOWs

as necessary in order to ensure that the Debtors are able to comply with their Sarbanes-Oxley Act

obligations and satisfy additional internal auditing needs.

11.    The Debtors submit that PwC is well-positioned to provide such services.

As a result of its engagement by the Debtors, PwC has worked closely with the Debtors'

---

[3]    PwC completed the projects described in SOW Nos. 1 and 2 prior to the commencement
of these cases and is currently working to complete the projects described in SOW Nos. 3
through 7.

Sarbanes-Oxley project team and internal audit staff and has become familiar with the Debtors' business and its systems and controls. Accordingly, PwC has the necessary background and capability to deal effectively with internal audit, control and risk assessment issues and other potential issues and problems that may arise in the future course of its work and projects with the Debtors in these cases. Moreover, given its expertise and the institutional knowledge it has acquired regarding the Debtors' business, systems, and controls, PwC is uniquely qualified to provide the services needed by the Debtors. Accordingly, the Debtors' retention of PwC on the terms set forth herein and in the Master Agreement as supplemented is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

12.     The Debtors have also employed the services of CFO Services in connection with their compliance under Section 404 of the Sarbanes-Oxley Act. The services for which the Debtors here seek to retain PwC are not duplicative of the services provided by CFO Services. The services provided by PwC are focused upon the Debtors' overall governance controls and information technology controls. By contrast, the services provided by CFO Services are focused upon the Debtors' accounting processes. Moreover, PwC will consult with the Debtors and, as necessary, the Debtors' professionals throughout the pendency of these cases to ensure that there will be no duplication of services provided to the Debtors.

13.     Subject to the Court's approval of this Application, PwC has indicated its willingness to provide the Sarbanes-Oxley compliance services and other internal auditing services required by the Debtors during these cases.

14.     To the best of the Debtors' knowledge, except as set forth herein and in the Declaration of Elizabeth Dantin and Disclosure of Compensation (the "Dantin Declaration"), attached as Exhibit B hereto: (a) PwC neither holds nor represents any interest adverse to the

Debtors' estates; (b) PwC has had no affiliation with the Debtors, their creditors or any party in

interest, or their respective attorneys and accountants, the United States Trustee, any person

employed in the office of the United States Trustee, or the Bankruptcy Judge presiding over

these cases; and (c) PwC is a "disinterested person" within the meaning of Sections 101(14) and

327(a) of the Bankruptcy Code.

15.      Consistent with the Master Agreement and as described in the Dantin

Declaration, the Debtors have agreed to pay PwC reasonable sums in accordance with the normal

rates charged by PwC for the services provided and to compensate PwC for reasonable and

necessary out of pocket expenses incurred, which expenses may include travel, report

preparation, delivery services, and other necessary costs in providing services to the Debtors in

accordance with PwC's customary reimbursement policies.  PwC's hourly rates for professional

services are based upon the individual resources provided from PwC's various lines of business

and are currently as follows:

| | |
|---|---|
| Partners | $325 to $500 |
| Directors/Senior Managers | $275 to $375 |
| Managers | $200 to $350 |
| Senior Associates/Associates | $175 to $250 |

These rates are PwC's normal and customary rates for the type of services to be provided.  The

Debtors are advised that these rates are subject to change but that any changes will remain in line

with market rates for comparable services.

16.      PwC will file fee applications with the Court in accordance with

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the

United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and

the orders of this Court.  However, PwC has requested that the Debtors seek a waiver on their

behalf of the requirement, contained in the Final Order Approving Interim Compensation

Procedures for Professionals dated March 15, 2005, that its professionals and employees maintain time entries in increments of one tenth of an hour with respect to work performed for the Debtors.

17.    PwC has indicated that the professionals and employees that it uses to provide internal auditing services required by the Debtors are not trained to record their time to the nearest tenth of an hour.  Rather, the individuals working on such projects are assigned for an estimated number of hours and are given discrete functions to perform in the budgeted time allotted to the tasks.  Usually the nature of the work is not such that these individuals are working on multiple engagements or clients.  Rather, the staff is assigned to a given project (depending upon the estimated time required to undertake the project) for a certain number of days or weeks.  Moreover, the services provided by PwC are in the nature of ordinary course professional services and would, thus, normally be subject to the requirements of the Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business (the "OCP Order") dated March 4, 2005.  The OCP Order does not require ordinary course professionals to maintain time records in increments of tenths of an hour but, rather, allows the Debtors to pay for ordinary course professional services upon receipt of a reasonably detailed invoice "indicating the nature of the services rendered and calculated in accordance with [the] professional's standard billing practices."  Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business, Case No. 05-11063 (RDD) (Dkt. 264), at 4 (Bankr. S.D.N.Y. March 4, 2005) (emphasis added).  Accordingly, the Debtors submit that the proposed waiver is reasonable.  Instead, PwC proposes, subject to this Court's approval, to have its professionals and employees record their time in half-hour increments.

18.     Prior to the Petition Date, PwC received certain amounts (as set forth in the Dantin Declaration) from the Debtors as compensation for professional services performed and for the reimbursement of reasonable and necessary expenses incurred in connection therewith.

19.     As of the Petition Date, PwC was owed $150,387 (the "Pre-Petition Claim") for services provided to the Debtors and expenses incurred.  In the interest of continuing its relationship with the Debtors and to meet the requirements of disinterestedness under the Bankruptcy Code, PwC has agreed to waive its Pre-Petition Claim against the Debtors.

## **Notice**

20.     Notice of this Application has been provided to (a) counsel to the U.S. Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, (d)  the other parties in interest named on the Master Service List maintained in these cases, and (e) PwC.  The Debtors submit that no other or further notice need be given.

## **Waiver of Memorandum of Law**

21.     Pursuant to Rule 9013-1(b) of the Local Rules, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order (a) authorizing the Debtors to retain PwC, nunc pro tunc to the Petition Date, to provide documentation, testing, and other internal auditing services in connection with

the Debtors' compliance with Section 404 of the Sarbanes-Oxley Act and the Debtors' other

internal auditing needs and (b) granting such other and further relief as the Court deems just and

proper.

Dated:  March 22, 2005
      New York, New York

<div style="margin-left:40%">

/s/     *D. J. Baker*_____

D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
David M. Turetsky
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:    (212) 735-2000

Eric M. Davis
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Rodney Square
Wilmington, Delaware 19801
Telephone:  (302) 651-3000
Facsimile:  (302) 651-3001

Attorneys for Debtors

</div>

**<u>Exhibit A</u>**

**<u>Internal Audit Master Professional Services Agreement and Active Statements of Work</u>**



PricewaterhouseCoopers LLP
Bank of America Tower
50 North Laura Street, Suite 3000
Jacksonville, FL 32202
Telephone (904) 354-0671
Facsimile (904) 366-3678

August 30, 2004

Mr. Jeffrey Gleason
Director of Internal Audit
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254

## Subject: Internal Audit Master Professional Services Agreement

Dear Mr. Gleason:

Thank you for selecting PricewaterhouseCoopers LLP (PwC) to perform internal audit services for Winn-Dixie Stores, Inc. ("Winn-Dixie" or the "Company") for the period beginning August 30, 2004. The purpose of this letter is to confirm our understanding of the terms of our engagement.

### Services and related report

At your request we will conduct internal audit projects under your direction in accordance with the overall internal audit charter and internal audit plan of the Company, as periodically amended.

These projects will be specified as Attachments to this letter. A sample is provided as Attachment A.

### Our responsibilities and limitations

We will conduct our engagement in accordance with Statements on Standards for Consulting Services issued by the American Institute of Certified Public Accountants. Our engagement does not constitute an audit or an examination, the objective of which is the expression of an opinion on financial statements, on other subject matter or on management's assertion. Accordingly, we will not express such an opinion. If we were to perform additional procedures, other matters might come to our attention that would be reported to you. Our

internal audit reports are intended solely for the use of the audit committee, board of directors and management of the Company and will be restricted to use within the Company.

It is Client's responsibility to determine the procedures deemed necessary in connection with your compliance with the provisions of the Sarbanes-Oxley Act of 2002 (the "Act") and related SEC rules, to execute those procedures and to assess the results of your procedures and the adequacy thereof. We provide no opinion or other form of assurance with respect to your compliance with the Act, related SEC rules, or your procedures. We make no representation as to whether your procedures are sufficient for your purposes. Our Services should not be taken to supplant inquiries and procedures that Client should undertake for purposes of obtaining and using the information necessary in connection with Client's compliance with the provisions of the Act and related SEC rules.

PricewaterhouseCoopers LLP is responsible for performing internal audit procedures in accordance with the terms of the engagement and reporting thereon. The day-to-day performance of the internal audit procedures will be directed, reviewed, and supervised by PricewaterhouseCoopers LLP.

It is important to recognize there are inherent limitations in the auditing process. For example, internal audits are generally based on the concept of selective testing of the data being examined and are, therefore, subject to the limitation that material errors, or fraud or other illegal acts having a direct and material financial impact, if they exist, may not be detected. Also, because of the characteristics of fraud, particularly those involving concealment through collusion and falsified documentation (including forgery), an internal audit may not detect a material fraud. We will, however, communicate to you, as appropriate, any illegal act, material errors or evidence that fraud may exist identified during the course of our internal audit projects.

You acknowledge that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by us as the same may be subject to further work, revision and other factors that may mean that such drafts are substantially different from any final report or advice issued. Our definitive findings and recommendations, if any, will be contained solely in our final written report, if any. Any final report will include information sufficient to allow the Director of Internal Audit to evaluate the adequacy of the audit procedures performed and findings resulting from the performance of those procedures.

Our internal audit activities are intended for the benefit of the audit committee, board of directors and management of the Company and will not be planned or conducted in contemplation of reliance by any third party or with respect to any specific transaction. Therefore, items of a possible interest to a third party may not be specifically addressed, or matters may exist that would be assessed differently by a third party, possibly in connection with a specific transaction. We acknowledge no responsibility to any such party except to the extent that such responsibility may exist under law. Any final report prepared as a deliverable under this arrangement is for the use of the audit committee, board of directors and management only and cannot be shared with any third party without our prior written consent.

2

In the course of providing services under this letter, PricewaterhouseCoopers LLP, may, at its discretion, draw on the resources of other PricewaterhouseCoopers Firms. Client agrees that its relationship is with PricewaterhouseCoopers LLP alone. Client also agrees that it will not bring any claim of any nature against any other PricewaterhouseCoopers Firm or any partner or employee of such a firm relating to the services provided under this engagement letter, except where such a claim cannot be excluded by law, it being understood that, in the event PricewaterhouseCoopers LLP employs the resources or services of other PricewaterhouseCoopers LLP firms, PricewaterhouseCoopers LLP will be responsible for any resources or services provided by the firms to PricewaterhouseCoopers LLP.

## Management's responsibilities

Management is responsible for establishing and maintaining effective internal control as well as evaluating the effectiveness of the system. Effective internal control reduces the likelihood that errors, fraud or other illegal acts will occur and remain undetected; however, it does not eliminate that possibility.

Final determination and assessment of audit risk and scope of internal audit activity will remain the responsibility of the audit committee, board of directors, and management. PricewaterhouseCoopers LLP has not been engaged to, and we will not, perform management functions, make management decisions, or act or appear to act in a capacity equivalent to that of an employee or otherwise engage in any activity that in the judgment of PricewaterhouseCoopers LLP would be inappropriate in the capacity for performing internal audit assignments.

Management also is responsible for making available to us, upon request, all of the necessary information and company personnel to whom we can direct inquiries to perform our internal audit activities.

We will make specific inquiries of management when performing the internal audit services. In addition, we may require a representation letter from members of management who are responsible for or are knowledgeable, directly or through others in the company, about specified financial statement elements, accounts or items, subject matter, management assertions, etc. We intend to rely upon the results of our internal audit procedures, the responses to our inquiries and the written representations, if any, in forming our findings.

## Confidentiality

All data relating specifically to Winn-Dixie's business, and other information identified as confidential by Winn-Dixie, are confidential information of Winn-Dixie. PricewaterhouseCoopers LLP's proprietary software, tools, methodologies, techniques, ideas, discoveries, inventions, know-how and any other oral or written information identified as confidential by PricewaterhouseCoopers LLP, are confidential information of PricewaterhouseCoopers LLP. Winn-Dixie's and PricewaterhouseCoopers LLP's confidential information includes Winn-Dixie and PricewaterhouseCoopers LLP confidential information owned prior to beginning the engagement to which this letter relates as well as Winn_Dixie and PricewaterhouseCoopers LLP confidential information developed during the course of this engagement. Winn-Dixie confidential information and PricewaterhouseCoopers LLP confidential information are collectively referred to as "Confidential Information." Each party shall use Confidential Information of the other party only for the purposes of this engagement and shall not disclose such Confidential Information to any third party without the other party's prior written consent. Each party agrees to take reasonable measures to protect the confidentiality of the other party's Confidential Information and to advise their employees of the confidential nature of the Confidential Information and of the prohibitions herein.

Notwithstanding anything to the contrary contained in this Agreement, neither party shall be obligated to treat as confidential any information disclosed by the other party (the "Disclosing Party") which: (1) is rightfully known to the recipient prior to its disclosure by the Disclosing Party; (2) is released by the Disclosing Party to any other person or entity (including governmental agencies) without restriction; (3) is independently developed by the recipient without any reliance on Confidential Information; or (4) is or later becomes publicly available without violation of this Agreement or may be lawfully obtained by a party from any non-party. Notwithstanding the foregoing, either party will be entitled to disclose Confidential Information of the other to a third party as may be required by law, statute, rule or regulation, including any subpoena or other similar form of process, provided that (and without breaching any legal or regulatory requirement) the party to which the request is made provides the other party with prompt written notice and allows the other party to seek a restraining order or other appropriate relief.

Subject to PricewaterhouseCoopers LLP's confidentiality obligations in this Agreement, nothing herein shall preclude or limit PricewaterhouseCoopers LLP from providing similar services for other clients.

## Electronic mail ("e-mail") communications

During the provision of this engagement the parties may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable

procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

## Release and indemnification

Because of the importance of oral and written representations to effectively perform the procedures set forth in the attachment to this letter, the Company releases PricewaterhouseCoopers LLP and its personnel from any and all claims, liabilities, costs and expenses attributable to any knowing misrepresentation by management. Further, in no event shall PricewaterhouseCoopers LLP be liable to Winn-Dixie, whether a claim be in tort, contract or otherwise (a) for any amount in excess of the total professional fees paid by the Company under this engagement letter attributable to the specific internal audit project giving rise to the liability; or (b) for any consequential, indirect, lost profit or similar damages relating to PricewaterhouseCoopers LLP's services provided under this engagement letter, except to the extent finally determined to have resulted from the negligence or willful misconduct or fraudulent behavior of PricewaterhouseCoopers LLP relating to such services.

In addition, the Company agrees to indemnify and hold harmless PricewaterhouseCoopers LLP and its personnel from any and all claims, liabilities, costs and expenses relating to PricewaterhouseCoopers LLP's services under this engagement letter, except to the extent finally determined to have resulted from the negligence or willful misconduct or fraudulent behavior of PricewaterhouseCoopers LLP relating to such services.

In the unlikely event that differences concerning our services or fees should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense of both parties, the Company and PricewaterhouseCoopers LLP agree not to demand a trial by jury in any action, proceeding or counterclaim arising out of or relating to our services and fees for this engagement.

## Termination

Either party may terminate this engagement or any individual SOW upon written notice to the other. In the event of termination, Winn-Dixie will be responsible for fees and expenses incurred through the date that is required to complete agreed-upon tasks and PricewaterhouseCoopers LLP shall deliver to Winn-Dixie a final report including copies of all work product finalized or in draft form through the date of termination.

5

## Timing and fees

Timing and fees for each internal audit project will be discussed and agreed upon by the Company and PwC as specified in an attachment to this letter. A sample is provided as Attachment A. Our fee estimates are based on the time required by the individuals assigned to the engagement. Individual hourly rates vary according to the degree of responsibility involved and experience and skill required.

We also will bill the Company for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel. Our internal per ticket travel charge is an allocation of estimated costs of running our travel department in a manner to maximize cost savings and minimize total costs.

Invoices rendered are due and payable 30 days from receipt.

## Other matters

Winn-Dixie will own all written material originally prepared for Winn-Dixie and delivered as part of this engagement. While Company personnel may have access to and may use PwC proprietary technology and material during the course of the engagement, PricewaterhouseCoopers LLP does not grant a license in the PwC proprietary technology and material that do not form part of the deliverables to the Company.

Any additional services beyond those contemplated in this engagement letter that you may request and we agree to provide will be the subject of separate written agreements.

In the event we are requested or authorized by you or required by government regulation, subpoena, or other legal process to produce our working papers or our personnel as witnesses with respect to our engagement for you, you will, so long as we are not a party to the proceeding in which the information is sought, reimburse us for our professional time and expenses, as well as the fees and expenses of our counsel, incurred in responding to such a request.

The Company agrees that it will not, directly or indirectly, agree to assign or transfer any claim against PricewaterhouseCoopers LLP arising out of this engagement to anyone.

This engagement letter reflects the entire agreement between us relating to the services covered by this letter. It replaces and supersedes any previous proposals, correspondence and understandings, whether written or oral. The agreements of the Company and PricewaterhouseCoopers LLP contained in this engagement letter shall survive the completion or termination of this engagement.

6

\*    \*    \*    \*    \*    \*

We are proud to provide internal audit services to your company and we appreciate your confidence in our work. If you have any questions about the contents of this letter, please discuss them with us. If the services outlined herein are in accordance with your requirements and if the above terms are acceptable to you, please have one copy of this letter signed in the space provided below and return it to us.

Very truly yours,

*PricewaterhouseCoopers LLP*

PricewaterhouseCoopers LLP

The services and terms as set forth in this letter are agreed to.

Winn-Dixie Stores, Inc.

By:  _____

(Name of company official)

    CFO  WINN-DIXIE
_____
(Title)

        9 |23 |04
_____
(Date)

Winn-Dixie Legal Department
Approved by: SRJ
Date: 9/15/04

**ATTACHMENT A**
**SAMPLE FORM**

**Statement of Work ("SOW")**
**Between Winn-Dixie Stores, Inc. and PricewaterhouseCoopers LLP**

**Project Name:** _____

This SOW is governed under the Internal Audit Master Professional Services Agreement (the

"Agreement") dated August 30, 2004 between Winn-Dixie Stores, Inc. ("Client") and

PricewaterhouseCoopers LLP, ("PwC") and is fully incorporated therein. All terms used in

this SOW and not otherwise defined will have the same meaning as in the Agreement.

I.    PURPOSE AND SCOPE OF THIS SOW:

This SOW covers _____ [describe project generally]. This SOW

confirms the understanding of the objectives, deliverables, timing, staffing and fees for this

project/effort.

II.    PARTIES' RESPONSIBILITIES UNDER THIS SOW

2.1    Services to be provided by PwC:

2.2    Deliverables:

2.3    Client's Responsibilities:

2.4    Timing

8

The timing of the services to be provided hereunder is as follows:

| | |
|---|---|
| Project Start Date: | |
| Estimated Project Completion Date: | |

III.    RESOURCES ASSIGNED TO THIS SOW

The PricewaterhouseCoopers personnel assigned to provide services and deliverables under this SOW are as follows:

IV.    PAYMENT; EXPENSES; AND INVOICES

4.1    Payment Terms

4.2    Professional Fees and Expenses [list sales tax if applicable]

V.    OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

5.1    [Insert terms specific to Project –]

5.2    Client shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services.  Client shall perform the tasks and provide the assistance described in this SOW.  Client shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or

9

materials it provides. Client consents to the use, by staff visiting or working from the Client

site, of the Client's resources, including, but not limited to network, Internet and extranet

access, for the purpose of accessing similar resources. Client agrees to perform in a timely

fashion those tasks and provide the personnel agreed to by the parties and set forth herein.

**IN WITNESS WHEREOF,** the parties to the above referenced Agreement have caused this
SOW to be executed by their authorized representatives.

| PricewaterhouseCoopers LLP | | | |
|---|---|---|---|
| Signature | Printed Name | Title | Date |
| **Winn-Dixie Stores, Inc.** | | | |
| Authorized Signature | Printed Name | Title | Date |

10

**ATTACHMENT A - No. 3**

**Statement of Work ("SOW")**
**Between Winn-Dixie Stores, Inc. and PricewaterhouseCoopers LLP**

**Project Name: Entity Level COSO Controls Assessment**

This SOW is governed under the Internal Audit Master Professional Services Agreement (the "Agreement") dated August 30, 2004 between Winn-Dixie Stores, Inc. ("Client", "Winn-Dixie") and PricewaterhouseCoopers LLP, ("PwC") and is fully incorporated therein. All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

I.    PURPOSE AND SCOPE OF THIS SOW

This SOW covers PwC's support of Winn-Dixie Stores, Inc.'s Entity Level Assessment (ELA) of internal controls over financial reporting. PwC will support Winn-Dixie's ELA work product in relation to the following internal control components: Control Environment, Risk Assessment, Information and Communication, and Monitoring. This SOW confirms the understanding of the objectives, deliverables, timing, staffing and fees for this project.

II.   PARTIES' RESPONSIBILITIES UNDER THIS SOW

**2.1    Services to be provided by PwC:**

- Provide guidance to the Winn-Dixie Sarbanes-Oxley project team on the form and structure of the ELA of internal controls over financial reporting, and recommend an approach and format to provide for a sustainable process.

- Work with the Winn-Dixie Sarbanes-Oxley project team to review documents and evaluate the existence, coverage and/or effectiveness of formal policies, procedures and internal control systems.

- Conduct, lead, or participate in interviews with selected members of management to capture senior-level perceptions and to validate the existence, coverage and/or effectiveness of formal policies, procedures and internal control systems.

- Using the PwC web-based survey tool, conduct a Risk Culture Survey of a broader Winn-Dixie population to identify whether discrepancies exist between senior-level perceptions and entity level perceptions.

- Work with Winn-Dixie Sarbanes-Oxley project team to capture, interpret and report the results of the ELA of internal controls over financial reporting.

**2.2    Deliverables:**

We expect as a result of this project that the following deliverables will be created:

- A written report detailing the four COSO components and related sub-components included in the review; observations based on interview results; document review and survey results; an evaluation of priority regarding control effectiveness; and key remediation recommendations.

- An accumulation of data as evidence of the existence and operation of the entity-level internal controls – data will be gathered by the Winn-Dixie Sarbanes-Oxley team, Internal Audit and/or PwC.

## 2.3    Client's Responsibilities:

The overall definition and scope of the work to be performed and its adequacy in addressing Client's needs, is Client's responsibility. Client agrees to coordinate scheduling of interviews and to use reasonable efforts to ensure interviewee attendance at scheduled meetings. Client agrees to provide administrative support to the PwC project team to gather requested documentation. Members of the Winn-Dixie Sarbanes-Oxley project team or Internal Audit will be available to participate in interviews, review documentation under PwC guidance, administer the Risk Culture Survey, and assist in the evaluation of priority regarding control effectiveness. Communication with Client's external auditor will remain the Client's responsibility.

## 2.4    Timing

The timing of the services to be provided hereunder is as follows:

| Project Start Date: | January 10, 2005 |
|---|---|
| Estimated Project Completion Date: | March 31, 2005 |

## III.    RESOURCES ASSIGNED TO THIS SOW

The project team will be led by Jay Krames, a Director, under the guidance of Elizabeth Dantin, an Internal Audit Partner and in conjunction with Kevin Murphy, Internal Audit Senior Manager. The project team will also include Mark Tan, a Senior Associate, reporting to Jay Krames.

## IV.    PAYMENT; EXPENSES; AND INVOICES

## 4.1    Payment Terms

Invoices rendered are due and payable 30 days from receipt.

## 4.2    Professional Fees and Expenses

Our fees for completion of this project, as previously described, will be based upon the time and materials expended by our professionals, plus our reasonable out-of-pocket expenses. We estimate that our professional fees will be between $82,500 and $110,000, which is based upon estimated project effort of 300 – 400 hours. Additionally, the fee for the Risk Culture Survey is $25,000 for up to 500 respondents and two levels of stratification categories.

## V.    OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

Client shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Client shall perform the tasks and provide the assistance described in this SOW. Client shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides. Client consents to the use, by staff visiting or working from the Client site, of the Client's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources. Client agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the parties and set forth herein.

**IN WITNESS WHEREOF**, the parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| PwC LLP | | | |
|---|---|---|---|
| Signature *Elizabeth Dantu* | Printed Name Elizabeth Dantu | Title Partner | Date 1/7/5 |
| **Winn-Dixie Stores, Inc.** | | | |
| Authorized Signature | Printed Name JEFF GLEASON BENNET NUSSBAUM | Title IA DIRECTOR CFO | Date 2/16/05 |

## ATTACHMENT A – No.4

### Statement of Work ("SOW")
### Between Winn-Dixie Stores, Inc. and PricewaterhouseCoopers LLP

### Project Name:  Internal Audit Assistance with PeopleSoft Application Security Data Aggregation

This SOW is governed under the Internal Audit Master Professional Services Agreement (the "Agreement") dated August 30, 2004 between Winn-Dixie Stores, Inc. ("Client") and PricewaterhouseCoopers LLP, ("PwC") and is fully incorporated therein.  All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

## I.    PURPOSE AND SCOPE OF THIS SOW:

The PeopleSoft applications included in the scope are

- o  Human Resource Management System
    - ▪  Human Resources
    - ▪  Benefits Administration
    - ▪  Payroll
- o  Financials
    - ▪  General Ledger
    - ▪  Accounts Payable
    - ▪  Accounts Receivable
    - ▪  Asset Management
    - ▪  Purchasing
    - ▪  Billing
    - ▪  Budgets

Working with the Winn-Dixie Internal Audit team, we will perform the following task for the in-scope PeopleSoft modules:

- Extract application security data from the PeopleSoft security data tables and aggregate this data into Microsoft Excel to facilitate management's analytical review.

Our scope does not include:

- Documentation of controls
- Testing of controls

## II.    PARTIES' RESPONSIBILITIES UNDER THIS SOW

### 2.1    Services to be provided by PwC:

Working with the Winn-Dixie Internal Audit team, we will extract application security data from the PeopleSoft security data tables and aggregate this data into Microsoft Excel to facilitate management's analytical review for the in-scope PeopleSoft modules.

### 2.2    Deliverables:

We expect as a result of this project that the following deliverable will be created:

A report that will include:
- A summary of the procedures performed; and
- Detailed PeopleSoft application security data matrices.

### 2.3    Client's Responsibilities:

The overall definition and scope of the work to be performed, and its adequacy in addressing Client's needs, is Client's responsibility.

### 2.4    Timing

The anticipated timing of the services to be provided hereunder is as follows:

| Project Start Date: | January 18, 2005 |
|---|---|
| Estimated    Project    Completion Date: | February 11, 2005 |

## III.    RESOURCES ASSIGNED TO THIS SOW

The project team will be led by David Parker, a Manager, under the guidance of Elizabeth Dantin, an Internal Audit Partner and in conjunction with Kevin Murphy, Internal Audit Senior Manager.  The project team will also include James Kennedy, a Senior Associate, reporting to David Parker.

## IV.    PAYMENT; EXPENSES; AND INVOICES

### 4.1    Payment Terms

Invoices rendered are due and payable within 30 days of receipt.

### 4.2    Professional Fees and Expenses

Our fees for completion of this project, as previously described, will be based upon the time and materials expended by our professionals, plus our reasonable out-of-pocket expenses. We estimate that our professional fees will be between $55,000 and $70,000, which is based upon estimated project effort of 200 – 300 hours. In the event this project is expected to exceed this estimate, we will advise you in a timely manner.

## V.    OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

Client shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Client shall perform the tasks and provide the assistance described in this SOW. Client shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides. Client consents to the use, by staff visiting or working from the Client site, of the Client's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources. Client agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the parties and set forth herein.

**IN WITNESS WHEREOF**, the parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| PricewaterhouseCoopers LLP | | | |
|---|---|---|---|
| Signature | Printed Name | Title | Date |
| *Elizabeth Dante* | Elizabeth Dante | Partner | 1/13/5 |
| Winn-Dixie Stores, Inc. | | | |
| Authorized Signature | Printed Name | Title | Date |
| | JEFF GLEASON | LA DIRECTOR | |
| | BENNETT NUSSBAUM | CFO | 2/16/05 |

**ATTACHMENT A – No. 5**

**Statement of Work ("SOW")**
**Between Winn-Dixie Stores, Inc. and PricewaterhouseCoopers LLP**

**Project Name: Assistance Provided to Winn-Dixie Sarbanes-Oxley Project Team**
**Regarding General Computer Controls.**

This SOW is governed under the Internal Audit Master Professional Services Agreement (the "Agreement") dated August 30, 2004 between Winn-Dixie Stores, Inc. ("Client") and PricewaterhouseCoopers LLP, ("PwC") and is fully incorporated therein. All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

## I.   *PURPOSE AND SCOPE OF THIS SOW:*

The Client's Information Technology (IT) Internal Auditors are supporting the company's Sarbanes-Oxley 404 documentation and testing requirements. The purpose of this SOW is to document the understanding of services that will be provided by PwC under the direction of the Client's Sarbanes-Oxley Project Team ("Project Team") that includes the Client's IT Internal Auditors.

## II.   *PARTIES' RESPONSIBILITIES UNDER THIS SOW*

### 2.1   Services to be provided by PwC:

PwC IT auditors will work under the direction of the Client's Project Team. The PwC IT auditors will assist with the review the Client's existing documentation of general computer controls and assist with the development of scope and work plan relevant to general computer controls. Any additional services including documentation or testing of the general computer controls or application controls will be subject to a separate SOW.

### 2.2   Deliverables:

We do not expect that there will be any PwC deliverables created as a result of this project. PwC will contribute to the development of joint project deliverables that are defined and managed by Winn-Dixie.

### 2.3   Client's Responsibilities:

The overall definition and scope of the work to be performed, and its adequacy in addressing Client's needs, is Client's responsibility.

**2.4    Timing**

The anticipated timing of the services to be provided hereunder is as follows:

| Project Start Date: | February 7, 2005 |
|---|---|
| Estimated    Project    Completion    Date: | February 25, 2005 |

## III.    RESOURCES ASSIGNED TO THIS SOW

The project will be conducted under the guidance of Elizabeth Dantin, Internal Audit Partner and in conjunction with Kevin Murphy, Internal Audit Senior Manager.  The project team will also include Winston Campbell, Senior Associate; Robbie Cannon, Associate; and Kenneth Ramcharan, Associate.

## IV.    PAYMENT; EXPENSES; AND INVOICES

**4.1    Payment Terms**

Invoices rendered are due and payable within 30 days of receipt.

**4.2    Professional Fees and Expenses**

Our fees for completion of this project, as previously described, will be based upon the time and materials expended by our professionals, plus our reasonable out-of-pocket expenses.   We estimate that our professional fees will be $43,000, which is based upon estimated project effort of 200 hours and duration of three weeks.  In the event this project is expected to exceed this estimate, we will advise you in a timely manner.

## V.    OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

Client shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Client shall perform the tasks and provide the assistance described in this SOW. Client shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides. Client consents to the use, by staff visiting or working from the Client site, of the Client's resources, including, but not limited to network, Internet and

extranet access, for the purpose of accessing similar resources. Client agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the parties and set forth herein.

**IN WITNESS WHEREOF**, the parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| PricewaterhouseCoopers LLP | | | |
|---|---|---|---|
| Signature *Elizabeth Dante* | Printed Name Elizabeth Dante | Title Partner | Date 2/4/5 |
| Winn-Dixie Stores, Inc. | | | |
| Authorized Signature | Printed Name JEFF GLEASON BENNET NUSSBAUM | Title AUDIT DIRECTOR CFO | Date 2/16/05 |

**ATTACHMENT A – No. 6**

**Statement of Work ("SOW")**
**Between Winn-Dixie Stores, Inc. and PricewaterhouseCoopers LLP**

**Project Name: Assistance Provided to Winn-Dixie Sarbanes-Oxley Project Team
Regarding PeopleSoft Application Security and PeopleSoft Application Controls**

This SOW is governed under the Internal Audit Master Professional Services Agreement (the "Agreement") dated August 30, 2004 between Winn-Dixie Stores, Inc. ("Client") and PricewaterhouseCoopers LLP, ("PwC") and is fully incorporated therein. All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

## I.  PURPOSE AND SCOPE OF THIS SOW:

The Client's Information Technology (IT) Internal Auditors are supporting the company's Sarbanes-Oxley 404 documentation and testing requirements. The purpose of this SOW is to document the understanding of services that will be provided by PwC under the direction of the Client's Sarbanes-Oxley Project Team ("Project Team") that includes the Client's IT Internal Auditors.

The PeopleSoft applications included in the scope are

- Human Resource Management System
  - Human Resources
  - Benefits Administration
  - Payroll
- Financials
  - General Ledger
  - Accounts Payable
  - Accounts Receivable
  - Asset Management
  - Purchasing
  - Billing
  - Budgets

## II.  PARTIES' RESPONSIBILITIES UNDER THIS SOW

### 2.1    Services to be provided by PwC:

PwC IT auditors will work under the direction of the Client's Project Team. The PwC IT auditors will assist with the review the Client's existing documentation of PeopleSoft application security controls and PeopleSoft application controls, and will assist with additional documentation and testing of PeopleSoft application security controls and PeopleSoft application controls for the applications included in the scope as detailed above. Any additional services beyond the scope and timing of this SOW, including remediation or retesting, will be subject to a separate SOW.

### 2.2 Deliverables:

We do not expect that there will be any PwC deliverables created as a result of this project. PwC will contribute to the development of joint project deliverables that are defined and managed by Winn-Dixie.

### 2.3 Client's Responsibilities:

The overall definition and scope of the work to be performed, and its adequacy in addressing Client's needs, is Client's responsibility.

### 2.4 Timing

The anticipated timing of the services to be provided hereunder is as follows:

| Project Start Date: | February 14, 2005 |
| Estimated   Project   Completion Date: | March 31, 2005 |

## III. RESOURCES ASSIGNED TO THIS SOW

The project will be conducted under the guidance of Elizabeth Dantin, Internal Audit Partner in conjunction with Kevin Murphy, Internal Audit Senior Manager. The project team will also include David Parker, Manager and James Kennedy, Senior Associate.

## IV. PAYMENT; EXPENSES; AND INVOICES

### 4.1 Payment Terms

Invoices rendered are due and payable within 30 days of receipt.

### 4.2 Professional Fees and Expenses

Our fees for completion of this project, as previously described, will be based upon the time and materials expended by our professionals, plus our reasonable out-of-pocket expenses.   We estimate that our professional fees will be $110,000, which is based upon estimated project effort of 480 hours and duration of seven weeks.  In the event this project is expected to exceed this estimate, we will advise you in a timely manner.

## V.   *OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW*

Client shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Client shall perform the tasks and provide the assistance described in this SOW. Client shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides. Client consents to the use, by staff visiting or working from the Client site, of the Client's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources.  Client agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the parties and set forth herein.

**IN WITNESS WHEREOF**, the parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| PricewaterhouseCoopers LLP | | | |
|---|---|---|---|
| Signature<br>*Elizabeth Dantis* | Printed Name<br>Elizabeth Dantin | Title<br>Partner | Date<br>2/4/5 |
| Winn-Dixie Stores, Inc. | | | |
| Authorized Signature | Printed Name<br>JEFF GLEASON<br>BENNETT NUSSBAUM | Title<br>IA DIRECTOR<br>CFO | Date<br>2/16/05 |

## ATTACHMENT A – No. 7

### Statement of Work ("SOW")
### Between Winn-Dixie Stores, Inc. and PricewaterhouseCoopers LLP

### Project Name:  Assistance Provided to Winn-Dixie Sarbanes-Oxley Project Team
### Regarding General Computer Controls Documentation and Testing

This SOW is governed under the Internal Audit Master Professional Services Agreement (the "Agreement") dated August 30, 2004 between Winn-Dixie Stores, Inc. ("Client") and PricewaterhouseCoopers LLP, ("PwC") and is fully incorporated therein. All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

## I.    PURPOSE AND SCOPE OF THIS SOW:

The Client's Information Technology (IT) Internal Auditors are supporting the company's Sarbanes-Oxley 404 documentation and testing requirements. The purpose of this SOW is to document the understanding of services that will be provided by PwC under the direction of the Client's Sarbanes-Oxley Project Team ("Project Team") that includes the Client's IT Internal Auditors.

## II.   PARTIES' RESPONSIBILITIES UNDER THIS SOW

### 2.1    Services to be provided by PwC

PwC IT auditors will work under the direction of the Client's Project Team. The PwC IT auditors will assist with the completion of the Client's existing documentation of general computer controls, walkthroughs to validate the design effectiveness of identified key controls, development of a plan to test the identified key controls, and tests of identified key controls to evaluate operating effectiveness. Any additional services, including remediation, re-documentation or re-testing of the general computer controls will be subject to a separate SOW. The scope of services is further detailed in Exhibit 1.

### 2.2    Deliverables

We do not expect that there will be any PwC deliverables created as a result of this project.  PwC will contribute to the development of joint project deliverables that are defined and managed by Winn-Dixie.

### 2.3    Client's Responsibilities

The overall definition and scope of the work to be performed, and its adequacy in addressing Client's needs, is Client's responsibility.

It is Client's responsibility to determine the procedures deemed necessary in connection with the Client's compliance with the provisions of the Sarbanes-Oxley Act of 2002 (the "Act") and related SEC rules, to execute those procedures and to assess the results of your procedures and the adequacy thereof. We provide no opinion or other form of assurance with respect to your compliance with the Act, related SEC rules, or your procedures. We make no representation as to whether your procedures are sufficient for your purposes. Our Services should not be taken to supplant inquiries and procedures that Client should undertake for purposes of obtaining and using the information necessary in connection with Client's compliance with the provisions of the Act and related SEC rules.

### 2.4    Timing

The anticipated timing of the services to be provided hereunder is as follows:

| Project Start Date: | | | March 7, 2005 |
|---|---|---|---|
| Estimated | Project | Completion | April 22, 2005 |
| Date: | | | |

## III.    RESOURCES ASSIGNED TO THIS SOW

The project will be conducted under the guidance of Elizabeth Dantin, Internal Audit Partner and in conjunction with Kevin Murphy, Internal Audit Senior Manager. The project team will also include Bruce Westerman, Manager, Winston Campbell, Senior Associate; Robbie Cannon, Associate; Kenneth Ramcharan, Associate, and other staff members as required.

## IV.    PAYMENT; EXPENSES; AND INVOICES

### 4.1    Payment Terms

Invoices will be rendered and are payable according to the Compensation Procedures for Professionals set forth by the United States Bankruptcy Court, Southern District of New York.

### 4.2 Professional Fees and Expenses

Our fees for completion of this project, as previously described, will be based upon the time and materials expended by our professionals, plus our reasonable out-of-pocket expenses. We estimate that our professional fees will be $530,000, which is based upon estimated project effort of 2,600 hours and duration of seven weeks, as detailed in Exhibit 1. In the event this project is expected to exceed this estimate, we will advise you in a timely manner.

## V. OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

Client shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Client shall perform the tasks and provide the assistance described in this SOW. Client shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides. Client consents to the use, by staff visiting or working from the Client site, of the Client's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources. Client agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the parties and set forth herein.

**IN WITNESS WHEREOF**, the parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| PricewaterhouseCoopers LLP | | | |
|---|---|---|---|
| Signature | Printed Name | Title | Date |
| Winn-Dixie Stores, Inc. | | | |
| Authorized Signature | Printed Name | Title | Date |
| | JEFF GLEASON | AVP or Director | 3/17/05 |
| | BENNETT NUSSBAUM | CFO | |

Elizabeth Dant            Elizabeth Dantin    Partner    3/10/05

**Winn-Dixie Stores, Inc.**
**404 General Computer Controls**
**Evaluation of Work To Be Completed**
**Exhibit 1**

| Domain | Narrative | | | Expected Number of Key Controls | Walkthrough and Evaluation of Design Effectiveness | | Develop Test Plan and Evaluation of Operation Effectiveness | | Summary of Accumulated Deficiencies Documentation | QA & Review (15%) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Completed | To Be Completed | Hours | | # of Walkthroughs | Hours | Key Controls x Sample Size | Total # of Testing Hours (4 Hr Avg. Per Test) | Hours | Hours |
| IT Control Environment | 0% | 100% | 20 | 4 | 1 | 16 | Tested during walkthrough | 0 | 1 | 5 |
| Program Development | 0% | 100% | 24 | 9 | 2 | 24 | 9 x 2 (2 major projects) | 72 | 1 | 18 |
| Program Change | 25% | 75% | 60 | 9 | 4 | 60 | 9 x 15 weekly occurrence | 540 | 1 | 99 |
| Security (Application Security is Not in Scope) | 90% | 10% | 16 | 11 | 1 walkthrough (15 applications 5 environments) | 54 | 3 x 40 / 8 x 5 / 3 key controls, daily occurrence / 8 key controls, 5 environments | 640 | 1 | 107 |
| Computer Operations | 10% | 90% | 50 | 10 | 1 (data center) | 24 | 4 x 40 / 6 x 1 / 4 key controls, daily occurrence / 6 key controls, 1 data center | 646 | 1 | 108 |
| IT Policies (Not in Scope) | 25% | 75% | | | | | | | | |
| Hours | | | 170 | | | 178 | | 1,898 | 5 | 337 |
| Total Hours | | | | | | | | | | 2,588 |

<u>**Exhibit B**</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                              :
                                                                   :        **Chapter 11**
                                                                   :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**        :        **Case No. 05-11063 (RDD)**
                                                                   :
                    Debtors.** [1]                         :        **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------x


**DECLARATION OF ELIZABETH DANTIN**
**AND DISCLOSURE OF COMPENSATION**

I, Elizabeth Dantin, hereby state and declare as follows:

1.        I am a Certified Public Accountant and a partner of

PricewaterhouseCoopers LLP ("PwC"), an accounting and financial services firm with offices at

numerous locations around the world, including an office located at 50 North Laura Street, Suite

3000, Jacksonville, Florida  32202.  I am duly authorized to make this Declaration on behalf of

PwC and I make this Declaration in support of the Application for Authority to Retain

PricewaterhouseCoopers LLP to Provide Certain Sarbanes-Oxley Compliance and Other

Services to the Debtors (the "Application").  The facts set forth in this Declaration are personally

known to me, and, if called as a witness, I could and would testify competently thereto.  Unless

---

[1]        In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related
cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South
Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie
Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc.,
Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food
Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie
Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie
Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

otherwise defined, all capitalized terms used herein have the meanings given to them in the Application.

2.      PwC is a firm of independent public accountants, as defined under the Code of Professional Conduct of the American Institute of Certified Public Accountants, operating throughout the United States.  PwC is one of the largest accounting and auditing, financial consulting and tax consulting firms in the world and has significant experience serving as accountants, auditors and tax advisors to various troubled companies.

## Retention and Qualifications of PwC

3.      The Debtors and PwC entered into the Internal Audit Master Professional Services Agreement (the "Master Agreement"), dated August 30, 2004, pursuant to which PwC has conducted internal audit projects under the direction of, and in accordance with, the overall audit charter and internal plan of the Debtors, as periodically amended.  The services provided by PwC under the Master Agreement are in the nature of documentation and testing services relating to the Debtors' compliance efforts with respect to Section 404 of the Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act") and, as needed and requested by the Debtors, other internal auditing services.  Under the terms of the Master Agreement, the respective scopes of the internal audit projects that PwC conducts are defined in more detail in periodic attachments to the Master Agreement, known as Statements of Work ("SOWs").  Seven SOWs have been executed since the Master Agreement was entered into, of which five (SOW Nos. 3 through 7) remain active.[2]  As more fully described in the applicable SOWs, SOW Nos. 3 through 7 relate to internal auditing services provided by PwC in support of Winn-Dixie's compliance efforts in

---

[2]      PwC completed the projects described in SOW Nos. 1 and 2 prior to the commencement of these cases and is currently working to complete the projects described in SOW Nos. 3 through 7.

the areas of entity level internal controls over financial reporting, PeopleSoft application security controls, PeopleSoft application controls, and general computer controls.  Executed copies of the Master Agreement and SOW Nos. 3 through 7 are attached as <u>Exhibit A</u> to the Application.

4.    The Debtors have indicated that they will continue to require the services provided by PwC during the pendency of these cases.  Moreover, the Debtors and PwC anticipate that, subject to this Court's approval of the Application, they will enter into additional SOWs in the future, as necessary, to meet the Debtors' ongoing service needs related to Sarbanes-Oxley Act compliance and other internal auditing functions.

5.    PwC provided internal auditing services under the Master Agreement prior to the commencement of these cases and has continued to perform under the Master Agreement since the Petition Date.  PwC has worked closely with the Debtors' Sarbanes-Oxley project team and its internal audit staff and to date has invested significant time and resources in its projects with the Debtors.  During the course of its work, PwC has become familiar with the Debtors' business and its systems and controls.  Accordingly, PwC will have the necessary background and capability to deal effectively with internal audit, control and risk assessment issues and potential issues and related problems that may arise in the future course of its work and projects with the Debtors.

6.    PwC understands that the Debtors originally selected PwC for its current and ongoing work because of its experience, qualifications, national reputation, and its ability to perform the services necessary to meet the requirements of Section 404 of the Sarbanes-Oxley Act and the Debtors' other internal auditing needs.  PwC believes that it has assembled a highly qualified team of professionals and paraprofessionals to provide such services to the Debtors and that it is well qualified and uniquely able to act on the Debtors' behalf.

7.      PwC understands that the Debtors have also employed the services of CFO Services in connection with their compliance under Section 404 of the Sarbanes-Oxley Act. The services for which the Debtors seek to retain PwC are not duplicative of the services provided by CFO Services.  The services provided by PwC are focused upon the Debtors' overall governance controls and information technology controls.  By contrast, the services provided by CFO Services are focused upon the Debtors' accounting processes.  Moreover, PwC will consult with the Debtors and, as necessary, the Debtors' professionals throughout the pendency of these cases to ensure that there will be no duplication of services provided to the Debtors.

8.      Subject to this Court's approval of the Application, PwC is willing to perform the services requested by the Debtors on the terms described in the Application and Master Agreement.

## Disinterestedness of Professionals

9.      To the best of my knowledge, information, and belief formed after reasonable inquiry, other than in connection with these cases, neither I nor any partner, principal, associate, or employee of PwC has any affiliation with the Debtors, their creditors, the United States Trustee, any person employed in the Office of the United States Trustee, the Bankruptcy Judge presiding over these cases, or any other party with an actual or potential interest in these cases, or their respective attorneys or accountants, except that (a) prior to the commencement of these cases, PwC rendered services to the Debtors for which it was compensated and (b) PwC has provided accounting and auditing services, and may continue to provide such services, to certain of the Debtors' creditors or other parties in interest in matters unrelated to these cases. Similarly, PwC's many partners, principals, and associates may have business associations with certain of the Debtors' creditors, their shareholders, or other parties in interest herein, or interests

-4-

adverse to such creditors, shareholders, or parties in interest herein, which associations have no connection with these cases.

10.    A summary of the parties in interest (the "Interested Parties") provided to PwC is attached hereto as <u>Attachment 1</u>.  To the best of my knowledge, information and belief, PwC currently is performing services for certain creditors, shareholders or other parties in interest.  In connection with the preparation of this Declaration, PwC professionals are conducting a review of its professional contacts with the Debtors, their affiliates and certain interested parties identified by the Debtors and that are reasonably known to us.  Our review, which is being completed under my supervision, consists of queries of an internal computer database containing names of individuals and entities that are present or recent former clients of PwC in order to identify potential relationships.  The review of relationships with the Interested Parties is in process and continuing as of the date of this Declaration.

11.    PwC has provided and likely will continue to provide services unrelated to the Debtors' cases to the Interested Parties listed on <u>Attachment 2</u>.  Our assistance to these parties has been primarily related to accounting, auditing, tax consulting and/or other advisory services. To the best of my knowledge, no services have been provided to these Interested Parties that could impact their rights in the Debtors' cases, nor does PwC's involvement in these cases compromise its ability to continue such accounting, auditing, tax consulting and/or other consulting services.

12.    To the best of my knowledge, PwC has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases.  If this Court approves the proposed employment of PwC by the Debtors, PwC will not accept any engagement or perform any service in these cases for any entity or person other than

the Debtors. PwC may, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtors or parties in interest in these chapter 11 cases; provided, however, that such services do not and will not relate to, or have any direct connection with, these chapter 11 cases.

13.    The Debtors have consented to the continued and future provision of services by PwC to persons and entities who are creditors or parties in interest on matters unrelated to the Debtors or these cases, and have waived any conflict that might otherwise exist as a result of such other unrelated engagements.

14.    I am not related or connected to and, to the best of my knowledge, no other partner, principal, associate or staff person of PwC is related or connected to any United States Bankruptcy Judge or District Judge for the Southern District of New York or the United States Trustee for the Southern District of New York or to any employee in the offices thereof. Because PwC employs approximately 122,000 individuals worldwide, it is not feasible for us to screen all of those employees for relationships with the United States Trustee and persons employed by the United States Trustee. We have confirmed, however, that no one involved in these cases has any such relationship.

15.    To the best of my knowledge, information and belief, PwC does not have or represent any interest materially adverse to the interests of the Debtors, or of any class of creditors or equity security holders of the Debtors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or any investment banker for any securities of the Debtors, or for any reason except as noted above.

16.    It is PwC's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. To the extent that any

information disclosed herein requires amendment or modification upon PwC's completion of further analysis, or as additional information becomes available to it, a supplemental affidavit will promptly be submitted to the Court.

17.    To the best of my information, knowledge and belief, PwC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that, to the best of my information and belief, PwC:

(a)    is not a creditor, an equity security holder, or an insider of any of the Debtors;

(b)    is not and was not an investment banker for any outstanding security of any of the Debtors;

(c)    has not been within three years before the commencement of these chapter 11 cases, an investment banker for a security of any of the Debtors, or an attorney for such investment banker in connection with the offer, sale or issuance of a security of any of the Debtors;

(d)    is not and was not, within two years before the commencement of these cases, a director, officer or employee of any of the Debtors or of an investment banker of any of the Debtors; and

(e)    does not have an interest materially adverse to the interest of any of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in any of the Debtors or an investment banker of any of the Debtors or for any other reason.

18.    PwC is not a creditor of the Debtors.  According to PwC's books and records, during the ninety-days prior to the Petition Date, PwC received $42,295 from the Debtors for professional services performed and expenses incurred.  As of the Petition Date, the PwC was owed $150,387 (the "Pre-Petition Claim") for services provided to the Debtors and expenses incurred.  In the interest of continuing its relationship with the Debtors and to meet the

requirements of disinterestedness under the Bankruptcy Code, PwC has agreed to waive its Pre-Petition Claim against the Debtors.

## **Compensation**

19.    At this time, PwC is unable to estimate the total cost of continuing to provide the internal audit services described herein.  Consistent with the Master Agreement, the Debtors and PwC have agreed that, subject to this Court's approval, PwC will be paid reasonable sums in accordance with the normal rates charged by PwC for the services provided and to compensate PwC for reasonable and necessary out of pocket expenses incurred which expenses may include travel, report preparation, delivery services and other necessary costs in providing services to the Debtors in accordance with PwC's customary reimbursement policies.  PwC's hourly rates for professional services are based upon the individual resources provided from PwC's various lines of business and are currently as follows:

| | |
|---|---|
| Partners | $325 to $500 |
| Directors/Senior Managers | $275 to $375 |
| Managers | $200 to $350 |
| Senior Associates/Associates | $175 to $250 |

20.    These rates are PwC's normal and customary rates for the type of services to be provided.  The Debtors are advised that these rates are subject to change but that any changes will remain in line with market rates for comparable services.

21.    The extent and scope of services that PwC will provide will be determined based upon individual projects as outlined in the current SOWs and to be outlined in future SOWs.  Personnel with lower billing rates will be used to the extent practicable.

22.    This compensation arrangement is consistent with and typical of arrangements entered into by PwC and other preeminent accounting firms with respect to the rendition of similar services for clients such as the Debtors.

23.     Other than as set forth herein, no arrangement is proposed between the Debtors and PwC for compensation to be paid in these cases.

24.     During the course of these cases, PwC will maintain detailed records of the time spent and costs and expenses incurred in connection with the engagement.  PwC will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York, the United States Trustee Fee Guidelines and the orders of this Court.  The applications will set forth in reasonable detail the services performed, the professional persons providing such services and the time spent.  Such applications will constitute a request for interim payment against PwC's reasonable fees and expenses to be determined at the conclusion of these cases.

25.     Notwithstanding the preceding paragraph, PwC has asked the Debtors to seek a waiver of the requirement, contained in the Final Order Approving Interim Compensation Procedures for Professionals (the "Compensation Order") dated March 15, 2005, that PwC's professionals and employees maintain time entries in increments of one tenth of an hour with respect to work performed for the Debtors.  The professionals and employees that PwC uses to provide the internal auditing services required by the Debtors are not trained to record their time to the nearest tenth of an hour.  Rather, the individuals working on such projects are assigned for an estimated number of hours and are given discrete functions to perform in the budgeted time allotted to the tasks.  Usually the nature of the work is not such that these individuals are working on multiple engagements or clients.  Rather, the staff is assigned to a given project (depending on the estimated time required to undertake the project) for a certain number of days

or weeks.  Moreover, the services provided by PwC are in the nature of ordinary course professional services and would, thus, normally be subject to the requirements of the Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business (the "OCP Order") dated March 4, 2005.  The OCP Order does not require ordinary course professionals to maintain time records in increments of tenths of an hour but, rather, allows the Debtors to pay for ordinary course professional services upon receipt of a reasonably detailed invoice "indicating the nature of the services rendered and calculated in accordance with [the] professional's standard billing practices."  Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business, Case No. 05-11063 (RDD) (Dkt. 264), at 4 (Bankr. S.D.N.Y. March 4, 2005) (emphasis added).  Accordingly, PwC believes that the proposed waiver is reasonable.  Accordingly, PwC proposes, subject to this Court's approval, to have its professionals and employees record their time in half-hour increments.

26.    Subject to the Court's approval of the Application, PwC will earn and receive only those fees and other payments authorized by this Court in relation to services rendered on behalf of the Debtors during the pendency of these cases.

27.    No agreement or understanding in any form or guise exists between PwC and any other person for a division of compensation for services rendered in or in connection with these cases, and no such division of compensation prohibited by Section 504 of the Bankruptcy Code will be made, except among the partners of PwC.  PwC has not shared or agreed to share any compensation received in these cases with any entity other than its partners.

28.    Accordingly, I believe the proposed employment of PwC is appropriate under Section 327(a) of the Bankruptcy Code and is not prohibited by or improper under Federal

Rule of Bankruptcy Procedure 5002.  PwC and the professionals it employs are qualified to represent the Debtors in the matters for which PwC is proposed to be employed.

           29.     To the extent any information disclosed herein requires amendment or modification upon PwC's completion of further review or as additional party-in-interest information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

           I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

           Executed on March 22, 2005, at Calgary, Alberta, Canada.

                                   */s/ Elizabeth Dantin*
                                     Elizabeth Dantin
                                     PRICEWATERHOUSECOOPERS LLP
                                     50 North Laura Street, Suite 3000
                                     Jacksonville, Florida  32202
                                     Telephone:   (904) 366-3667
                                     Facsimile:   (904) 366-3678

**Attachment 1**

**List of Interested Parties**

**Debtors**
Astor Products, Inc.
Crackin' Good, Inc.
Deep South Distributors, Inc.
Deep South Products, Inc.
Dixie Darling Bakers, Inc.
Dixie-Home Stores, Inc.
Dixie Packers, Inc.
Dixie Spirits, Inc.
Dixie Stores, Inc.
Economy Wholesale Distributors, Inc.
Foodway Stores, Inc.
Kwik Chek Supermarkets, Inc.
Sunbelt Products, Inc.
Superior Food Company
Table Supply Food Stores Co., Inc.
WD Brand Prestige Steaks, Inc.
Winn-Dixie Handyman, Inc.
Winn-Dixie Logistics, Inc.
Winn-Dixie Montgomery, Inc.
Winn-Dixie Procurement, Inc.
Winn-Dixie Raleigh, Inc.
Winn-Dixie Stores, Inc.
Winn-Dixie Supermarkets, Inc.

**Non-Debtor Affiliates**
Bahamas Supermarkets Limited
The City Meat Markets Limited
W-D (Bahamas) Limited
WIN General Insurance, Inc.

**Current Officers and Directors**
John E. Anderson
Laurence B. Appel
J. R. Brogan
D. Michael Byrum
K. B. Cherry
John H. Dasburg
G. L. Estill
T. Wayne Davis
Tillie K. Fowler
Kellie D. Hardee
David F. Henry
H. I. Hopkins, Jr.
Michael J. Istre
J. J. James
Richard C. Judd
P. J. Kennedy
D. G. Lafever
Peter L. Lynch
Richard P. McCook
D. J. Maroney
Mark W. Matta
J. P. Medina
Edward W. Mehrer, Jr.
D. A. Moore, Jr.
Julia B. North
Paul Novak
Bennett L. Nussbaum
E. L. Rainwater
Carleton T. Rider
J. J. Roy
C. S. Rubio
Mark A. Sellers

Dennis M. Sheehan

H. Jay Skelton
Charles P. Stephens
P. L. Tiberio
Ronald Townsend
H. S. Wadford
D. M. Young

**Former Officers and Directors**
Keva M. Bethel
D. H. Bitter
A. Dano Davis
Judith W. Dixon
L. B. Johnson
Bryan C. S. Knowles
Frank Lazaran
Barry J. Rassin
K. A. Romeo
Allen R. Rowland
Karen E. Salem
Hugh G. Sands
John R. Sheehan
Bruce R. Souder

**Senior Secured Lenders**
Amsouth Bank
Bank One
Congress Financial Corporation (Florida),
n/k/a Wachovia National Bank, N.A.
Fleet Retail Group, Inc.
General Electric Capital Corporation
GMAC Commercial Finance LLC
Israel Discount Bank
Merrill Lynch Capital
National City Business Credit, Inc.
PNC Business Credit
RZB Finance LLC
Siemens Financial Services, Inc.
SunTrust Bank
The CIT Group/Business Credit, Inc.
UBS AG, Stamford Branch
Wachovia Bank, National Association
Webster Business Credit Corp
Wells Fargo Foothill LLC

**Mortgage Holders**
Lutheran Brotherhood

**Top 50 Unsecured Trade Creditors on a
Consolidated Basis as of February 18,
2005**
Alberto Culver USA, Inc.
Anderson News LLC
Bayer Corp
Campbell Soup Co.
CH Robinson Worldwide Inc
Clorox Sales Co - KPD
Coca Cola Bottling Co
Coca Cola Bottling Works
Conagra Grocery Products Co.
Del Monte Foods USA
DLJ Produce Inc
Edy's Grand Ice Cream

Fin Tech
Florida Coca Cola
Front End Services Corp.
General Electric Company
General Mills Inc.
Georgia Pacific Corp.
Gerber Products Company
Gillette Company
Good Humor Breyers Ice Cream
Gourmet Award Foods Mid Atlantic
Gulf Coast Coca-Cola Bottling Co.
Hershey Chocolate USA
Johnson & Johnson
Keebler Company
Kellogg Sales Company
Kimberly Clark
Konica Photo Imaging
Kraft (Kraft Foods, Kraft Pizza, Nabisco)
Louisiana Coca Cola
McKee Foods Corporation
Nestle (Nestle Usa, Nestle Purina, Nestle
Water)
Pepperidge Farm Inc-Cookies
Pepsico. & Affiliates
Powerhouse Produce LLC
Procter & Gamble Dist Co.
Riverdale Farms
Ross Laboratories
Safe Harbor Seafood
Sanderson Farms
Sara Lee Foods
Schering Plough Health Care
Schreiber Foods Inc.
Smith Kline Beecham
Unilever (Hpc Usa & Best Foods)
US Bank Corporation
Warner Lambert Consumer Group
Wyeth Consumer Healthcare

**Parties with Filed UCC Financing
Statements**
Bennett's Leasing Incorporated
Cargill, Incorporated
Cisco Systems Capital Corporation
Computer Leasing Company of Michigan,
Inc.
EMC Corporation
Fidelity Leasing, Inc.
Fleet Capital Leasing - Technology Finance
Fleet Leasing Corporation
GATX Technology Services Corporation
Healthguard Finance Corporation
Healthguard International, Inc.
IBM Credit Corporation
IBM Credit LLC
Ikon Office Solutions Inc.
Konica Photo Imaging
Konica USA Inc.
National City Bank of MI/IL
NCR Corporation
Norse Dairy Systems
Storagetek Financial Services Corporation
US Bancorp
Xpedex - Division of International Paper

**Indenture Trustee**
Wilmington Trust Company

**Senior Unsecured Note holders and
Related Funds and Administrators**
American Bond Fund of America
American Capital World Bond Fund
American Funds
American Funds High Income Trust
American Funds Insurance – Asset
Allocation
American Funds Insurance
American Funds Smallcap World Fund
American Memorial Life Insurance Co.
Amerihealth Insurance Company of New
Jersey
Ameriprime Funds
ANIA High Yield Bond Portfolio
Arnhold & S Bleichroeder Advisers, LLC
Assurant Inc.
Austin Investment Management Co.
Aviva Life Insurance Company
Capital Research and Management
Company
Clariden US High Yield Bond Fund
Colonial Intermarket Income Trust
Columbia Management Advisors
CGU Insurance Group
Credit Suisse Asset Management Ltd.
Credit Suisse FS High Yield Bond
Credit Suisse High Yield Bond Fund
Delphi Financial Group
Denver Investment Advisors Inc.
DLJ Investment Management Corp.
Dynamic American Value
Dynamic American Value Fund
First Eagle Funds
First Eagle US Value Fund
First Fortis Life Insurance Company
Fortis Benefits Insurance Company
Fortis Group
Fortis Insurance Company
Fringe Benefit Life Insurance Company
Goodman & Co. Investment Counsel
High Yield Plus Fund
IMS Capital Management
IMS Strategic Income Fund
Independence Blue Cross
John Alden Life Insurance Company
Julius Meinl Investment Gmbh
Liberty Funds Distributor, Inc.
Meinl Capitol
PHUP Training
Prudential Investments Fund Management
LLC
QCC Insurance Company
Regence Blue Shield
Regence Blue Cross Blue Shield of Oregon
Regence Blue Cross Blue Shield of Utah
Reliance Standard Life Insurance Company
Securities Management and Research, Inc.
The Vanguard Group
Vanguard Group Incorporated
Vanguard High-Yield Corporate Bond
Portfolio
Vanguard VVIF High Yield Bond Fund
Wellington Management Co. LLP
Westcore Flexible Income Fund
Westcore Funds

**Lessors of Real Property**
100 Executive Drive LP
11010 Seventh Ave Investments
145 Associates Ltd
17161 N W 27th Avenue LLC
1954 Unionport Associates LLC
1980 Unionport Associates LLC
1997 Properties
2525 East Hillsborough Ave LLC
40/86 Mortgage Capital Inc
440 Group Ltd
4JS Family LLLC
5 Points West Shopping Center
51st Street & 8th Ave Corp
7595 Centurion Parkway LLC
9 SC Associates
98 Palms Ltd
99 Eglin Ltd
A F I Management
A G Edwards
A J & C Garfunkel
A L S Telfair Plaza
Ackerberg Group
Ackerman-Midtown Assoc
Acorn Assoc Ltd
Acron USA Fonds Winn Dixie LP
Adams Realty
Aegis Waterford LLC
Aegon USA Realty Advisors Inc
AEI Income & Growth Fund XXI L
AEI Net Lease Income & Growth
AEM Stiftung LLC
Agree Limited Partnership
Aintsar Realty Corp
Airkaman Of Jacksonville Inc
Al Bellotto Inc
Alabama '83 Center Associates
Albert J Cirignano Sr
Albion Pacific Prop Resources
Alfa Mutual Fire Ins Co
Allard LLC
Allied Capital Corporation
Allied Capital REIT Inc
Altamonte SSG Inc
Alvin B Chan Family LP
Alvin B Chan Inc
Alvyn L Woods
Amelia Plaza Shopping Center
American Commercial Realty
American Federal Properties
American Mortgage & Realty Cor
American Paper Box Company Inc
American Plaza Ltd Partnership
American United Life Ins Co
Americana East Investments Inc
Ansel Properties Inc
Applewood Shopping Center
Arcadia FL Diversey West
Arco Realty Company
Arlington Properties Inc
ARS Investment Corporation
Asbury Commons Ltd
Ashy-Brown Gonzales
August Urbanek Investments
Avon Square Ltd
Avondale Square Limited
Azalea Management And Leasing
Azalea Shopping Center
B V Belk Jr

Bainbridge Associates
Baker & Baker
Bakersmith Corners LLC
Banc One
Bank Midwest
Bank Of New York
Bardstown SC LLC
Barlind Enterprises
Barrett Crossing Shopping Cent
Baumgardner-Hogan I LLC
Baxley Zamagias Lp
Baylanding Inc
Bayview Loan Servicing LLC
Beachwalk Centre II LLC
Bedford Avenue Realty Inc
Beer Wells Real Estate Service
Belco Enterprises
Belk Investments
Belleview Square Corp
Belmart Inc
Benderson 85-1 Trust And Wayne
Benderson Trust & Wayne Ruben
Benjamin Adam Setzer As Truste
Bennett V York
BEP II Limited Partnership
Bergeron WD Palmetto LLC
BG Highlands LLC
BG Turfway LLC
BHBS Inc
BHR LLC
Big Pine Shopping Center LLC
Bill Agapion
Bird Square Plaza Management I
Birmingham Realty Co
Blaine Lake LLC
Blanchard and Calhoun Real Est
Blue Angel Crossings
Bob Neill & Associates
Bogalusa Shopping Center Co
Bonners Point LLC
Bordeaux Center Inc
Bowdoin Square LLC
Boyd L Hyder
Boynton Lakes Plaza
Brandon Centre South
Brandywine Plaza Ltd
Brent Lance Trager
Brierwood Village Plaza
Bright-Meyers Dublin Assoc
Broad Street Station S.C.,LLC
Broadmoor Development Co
Brookhaven Retail LLC
Brookwood Flamingo Partners Lp
Brookwood LLC
Brown Investment Properties
Brown Noltemeyer Company
BT Marietta LLC
Bundy New Orleans Co LLC
Bunkie Investment Co LLC
Burlington Associates Ltd Prt
BW Dix Inc
BW Treasure Inc
Byars & Co Inc
C & A Ltd, Lc
C C Altamonte Joint Venture
Ca New Fixed Rate Partnership
Ca New Plan Venture Fund Louis
Cadillac Partnership
Caffery Center LLC
Caldwell Realty & Investment C

California Club Mall
Callahan Plaza Shopping Center
Cameron Edenton Co
Cameron Sanford Company LLC
Camilla Marketplace Associates
Cane River Shopping Cen
Capco 1998 D-7 Arlington Center
Capital Advisors Inc
Capital Development Company
Capital Properties Associates
Capmark Services LP
Cardinal Entities Company LLC
Carl Dupuis
Carolina Enterprises Inc
Casselsquare LLC
Casto Investments Co Ltd
Cayce Marketplace LP
CC Realty Intermediate Fund I
CDC Paying Agent LLC
Cedar Creek Crossing Associate
Cedar Mountain Village
Cedar Springs Ctr Assocs
Central Progressive Bank
Central Texas Shopping
Centrex Properties Inc
Century Management And
CFG Limited
Chambers Square LLC
Chapel Trail Associates Ltd
Chapin Development Co
Charles Simon Trustee Of Same
Charleston Square Inc Bank Of
CHK & Associates
Cityview LLC
Civic Center Station Ltd
Clayton Crossings LLC
Clearlake Square
Cleveland Marketplace Ltd
Cliffdale Corner Inc
Clinton House Company
CMC Real Estate Program
Collett Management LLC
Collins & Aikman
Collins Pointe Shopping Center
Colonial Development Co LLC
Colonial Properties Services
Colonial Properties Trust
Columbia Marketplace LLC
Columbus Life Insurance Co
Comke Inc
Commercial Leasing One
Commercial Leasing Two
Commercial Net Lease Realty Inc.
Commodore Realty Inc
Concire Centers Inc
Concord Advantage Ii LP
Conseco Mortgage Capital Inc
Constellation Apartments
Cooper Smolen Joint Venture
Coralwood Shopping Center
Cordova Collection Lp
Country Club Centre LLC
CPG Finance I LLC
CPM Associates LP
Crawford Norwood Realtors Inc
Crenshaw-Singleton Properties
Crescent Investment Corp
Crest Haven LLC
Crestview Marketplace LLC
Cross County Associates LP

Crossing Of Orlando Ltd
Crowder Family Joint Venture
Crown Liquors Broward In
Crump Investments Ltd
Crystal Beach Acquistion LP
Crystal Lake At Orlando
Curry Ford LP
Cypress Run LLC
D R Plaza Ltd
Dahlem Enterprises Inc
Dairy Plaza Associates Ltd
Dalraida Properties Inc
Daniel G Kamin
Daniel H Case And
Dauksch Family Partnership
Davie Plaza Limited Partnership
Davis Mill Station
Day Properties LLC
DDR Downreit LLC
DDR MDT Carillon Place LLC
Debary Common Shopping Center
Decatur Realty LLC
Deerfield Company Inc
Deerfoot Marketplace LLC
Defuniak Square Partners Ltd
Del Fair Inc
Del Mar Shopping Center
Delnice Corp N.V.
Delta Interest LLC
Delta Plaza LLC
Deltona Assoc Ltd
DEM Partnership
Dept of Finance State of Alabama
Deutsche Bank f/k/a Bankers Trust
Company
Devcon Enterprises Inc
Dickinson Logan Todd & Barber
Dixon Realty Trust 1999-1
DMI Agent For IDR Jr LLR Jr &
Downtown Destin S/C
Downtown Two LLC
DPJ Company Limited
Dr Ralph Dayan
Drake Rental Account
Drinkard Development
Duckworth Morris Realty
Durham Plaza Associates
E & A Southeast LP
E and A Aquisition Two LP
East Partners Ltd
Eastdale Square LLC
Eastern Retail Holdings Lp
Eastgate Center LLC
Eastgate Investors LLC
Ebinport Assoc
EBR Partnership
Eckstein Properties LLC
Ed Street Dev Co
Eden Meadow Greens Associates
Edens & Avant Inc
Edens & Avant Properties LP
EIG Gordon Village LLC
EIG Hampton Square LLC
Elfers Square Center Inc
Eliot Properties
Elkmont Associates
Elston/Leetsdale LLC
Englewood Village LLC
English Village LLC
Equity Assoc

Equity One (Delta) Inc
Equity One (Hunters Creek)Inc
Equity One (Lantana) Inc
Equity One (Pointe Royale) Inc
Equity One (Summerlin) Inc
Equity One (West Lake) Inc
Equity One Alpha Inc
Equity One Commonwealth Inc
Equity One Inc
Equity One Monument Pointe Inc
Ernst Properties, Inc
Ervin & Susanne Bard
Euclid Warehouses, Inc.
Eugene M Mclain
Eupora Shopping Center
Eutis Mortgage Corporation
Evangeline Life Insurance Co
Excel Realty Partners LP
F R O LLC VII
Fairfield Partners LP
Fairway Food Stores
First National Bank
First Republic Corp of America
First Security Bank
First Security Bank Nat'l Assoc
First Union National Bank
First Union Wholesale Lockbox
First Westgate Mall LP
Flag Bank
Flagler Retail Associates Ltd
Flamingo East Ltd
Flint Crossing LLC
Florida Dickens Associates Ltd
FMV Associates
Folmar & Associates
Foothills Partnership
Fountain Columbus Assoc LLC
Four Florida Shopping Centers
Francine Trager Kempner
Francis Carrington
Frank D Boren And Gail F Boren
Frank W Guilford Jr Trustee
FRO LLC VIII
FU/WD Opa Locka, LLC
FU/WD Atlanta, LLC
Fury's Ferry Shoppes
FWI 16 LLC
FWI 20 LLC
FWI 23 LLC
FWI 5 LLC
G H I of West Palm Beach LLC
Gad & Asher Realty Ltd
Galileo Cmb T1 Hl TX LP
Galt Ocean Marketplace
Gardens Park Plaza  219
Gates Of St Johns LLC
Gator Carriage Partners Ltd
Gator Jacaranda Ltd
Gator Linton Partners Ltd
Gehr Development Florida LLC
Gem Warwick LLC
General Electric Business Asse
General Electric Capital Business
Genoa Associates LLC
Gentilly Square
George B Nalley Jr
George C Walker
George Chen
George Chen Formosa Developers
George D Zamias

George Dewrell
GLA LLC
Glenwood Midway Co LLC
Glimcher Properties Limited
Glynn Enterprises LLC
Goodings Supermarkets Inc
Gordon K Konrad
Gottlieb Family Trust Houma Ll
Graham And Company
Gray - White LLC
GRE Coralwodd LP
GRE Properties L L C
Great Oak LLC
Great South Mgmt LLC
Greenville Associates
Greenville Compress Co
Greenville Compress Co
Greenville Grocery LLC
Greenwood Commons Assoc
Greer Plaza Inc
GS II Brook Highland LLC
GS II Jacksonville Regional LL
Gulf Coast Properties
Gulfport Plaza Center Inc
H C Plunkett
H R Orlando LLC
H V McCoy & Company Inc
Haddco Properties Ltd Partners
Hall Properties
Hall Properties Inc
Halpern Enterprises
Halpern Enterprises Inc
Hamilton Square LLC
Hammerdale Inc
Hammonton Partners
Harold D  Bagwell
Harvey Lindsay Commercial Real
Hasco Properties
Hayday Inc
Haydel Realty Company Inc
Heathrow Square LLC
Helena Marketplace LLC
Henderson Corporation
Herbert Singer
Heritage Community Bank
Heritage Crossing Associates
Heritage Prop Investment Ltd
Heritage SPE LLC
Heritage Square Assoc
Herman Maisel & Co Inc
Hialeah Fee Commons Ltd
Hialeah Promenade Limited Part
Highland Associates Lp
Highland Commons Boone LLC
Highland Lakes Associates
Highland Sq Shop Center
Hildebran Associates
Hillcrest Shopping Center
Hillsboro-Lyons Investors Ltd
Hilyard Manor Associates LLP
Hobe Sound S C Company Ltd
Holbrook Heritage Hills LP
Homestead Plaza
Homewood Associates Inc
Homosassa Assoc
Houston Centre LLC
Howell Mill Vlge Shpg Ct
HPC Wade Green LLC
Hudson Square Center Inc
Hurtak Family Partnership Ltd

I Reiss & Company
I Reiss and Co as Agent For
ICOS LLC
III T West LLC Marco Island Ma
Imperial Christina Shopping Ct
Independence Square
Indian Creek Crossing E&A LLC
Indian Village Group Inc
Indianapolis Life Ins Co
Indianapolis Life Insurance Co
Indrio Crossings Inc
Inland Southeast Property Mgmt
Interchange Associates Inc
Interwest Capital Corporation
Intracoastal Mall LLC
Invesco Lp
IPF Heights Limited Partnership
IPF/Capital Limited Partnership
IRT Partners LP
IRT Partners LP Equity One Rea
IRT Property Company
Island Plaza LLC
Isram Realty & Management Inc
Ivey Electric Company
J B Levert Land Co Inc
Jack Fiorella Iii
Jamerson Investments
James And Carolyn Sell
JDN Realty Corporation
Jefferson-Pilot Life
JEM Investments Ltd
Jerome H And Faith Pearlman Tr
JKA Enterprises LLC
JNB Company of Virginia LLC
John Benetti Associates
John C Eyster and E Lee Barran
John T Henley et al
JRT Realty Group - TIAA
Jula Trust
Jupiter Palm Assoc
JWV (La) LLC dba Sunshine Sq
K B Properties Inc
Keller Crossing Texas Lp
Kemor Properties Inc
Kenneth City Partners
Kerbby Partnership
Killen Marteplace LLC
Kimco Development Corp
Kimco University Co Inc
Kingfisher Inc
Kir Augusta 1 044 LLC
Kir Colerain 017 LLC
Kirk Meraux Winn-Dixie LLC
Kite Eagle Creek LLC
KJump Inc
Kmart Corporation
Knightdale Crossing LLC
Koger Equity
Kotis Properties
KPT Communities LLC
KRG Waterford Lakes LLC
L J Melody & Company
L O L LLC
L W Smith Jr Trust
La Petite Roche Center General
Lafayette Life Insurance Co
Lagrange Marketplace LLC
Lake Jackson Trading Post
Lake Mary Limited Partnership
Lake Sun Properties Ltd

Lakeland Partners
Lakewood Associates Ltd
Lancaster Community Investors
Land Dade Inc
Landing Station
Landmark Enterprises
Landsouth Partners
Langdale Tire Co
Langston Place
Lapalco Village Shop Cen
Laramie River Bay Limited Part
Larissa Lake June Limited Ptnr
Lasala Pinebrook Associates LP
Lasco Realty LLC
Lauderhill Mall
Laureate Capital
Lawrence M Heard
Leatherman Assoc
Leesburg Bansal LLC
Lehmberg Crossing LLC
Leonard R Setzer
LF Limited Lp & Walnut Street
Libby Cross Station Enterprise
LIF Realty Trust
Life Insurance Co Of George
Lincoln Square Partners LP
Lincoln Trust Company
Linpro Investments Inc
Lisette Stanish as Trustee
Litchfield Investments Riverwo
LN Piedmont Village LLC
Lockwood Assoc of GA Ltd Ptr
London Associates Ltd
LPI Key West Associates Ltd
LRS General Partnership
Lucy Company Of South Carolina
LW Jog S C Ltd
M & P Shopping Center
Macon Gravlee
Madison Mall Shopping Ctr Inc
Madison Station Properties LLC
Magnolia Park Shopping Center
Main Street Marketplace LLC
Manatee Village Investments Inc.
Mandarin Loretto Development
Mar Bay Investments LLC
Marions Hope LLC
Market Place Partners
Market Square Inc
Marketown Investors Inc
Marketplace of Americus LLC
Marketplace of Delray Ltd
Marketplace Shopping Center
Mason Shopping Center Partnership
McComb Associates
McDonough Marketplace Partners
McDuffie Square L P
McNab Plaza Inc
MCW Development Inc
MCW RC FL Highlands LLC
MDC South Wind Ltd
MDC Westgate Ltd
Melbourne Beach LLC
Mellon Trust Of California
Merchants Square Investments L
Meridian Supermarket LLC
Metro International Property
Miami Gardens Acquisition LLC
Michael & Irene Simon
Mid American Management Corp

Mid South Yazoo Lp
Midland Loan Services
Midland Loan Services Inc
Midwest Centers
Milford Station Ltd
Miller Group Properties Corp
Miramar Parkway Plaza LLC
Mitchell Co
Mitchell Mortgage Company LLC
Modern Woodman
Modern Woodmen Of America
Mohatra Inc
Monroeville Center Partners
Moorings of Manatee Inc
Morgran Co
Morris Track Corp & Williston
Morro Palms Shopping Center
Moulton Properties
Mount Castle Properties
Mr E M Arnovitz & Mr M Plasker
Mr Hugh M Tarbutton
Mr Malcolm Rosenberg
Mrs Mildred V Gray
Mt Dora Marketplace Ltd
Museum Associates
N K C Properties
N O M Properties Inc
Nalley Construction Co Inc
Naples South Realty Associates
Naranja Lakes Joint Ventures
National Western Insurance Co
National Western Life Insurance
Navarre Square
NB/85 Associates Wayne M Ruben
NDC Asset Management
New Bay Minette LLC
New England Realty Resources
New Plan Excel Realty Trust
New Plan Excel Realty Trust In
New Plan Realty Trust
Newberry Square Shopping Center
Newton Associates
NMB Partners L P
Noble Management Company
Normandy Equities Ltd
North & South Station
North Columbus Crossing Shopping
North Hixson Marketplace LLC
North Madison Associates Ltd
North Port Village Shopping
Northcross Land & Development
Northeast Plaza Associates
Northern Funds FBO Urbanek Inv
Northside Development Group
Northside Shopping Center
Northway Investments LLC
Northwest Junction Partners
Northwood Oaks LLC Providence
Northwood Plaza LLC
Oakdale Investors Lp
Oaks Shopping Center Inc
Oakwood Village Associates
O'Brien Kiernan Investment Co
Oceanway Plaza Assoc Ltd
Old 97 Inc
Old Kings Highway Assoc
Opal Lee Smith & Sara N Jordan
Orange Grove Shopping Ce
Orix Capital Markets LLC
Orix Real Estate Capital Marke

Orlando Marketplace Limited Pa
PAJ
Palisades Investors LLC
Palm Aire Marketplace LL
Palm Bay West
Palm Beach 2000 Inc
Palm Coast Corners Assoc Lp
Palm Trails Plaza
Palmetto Place Center LLC
Paradise Isle LLC
Park Plaza LLC
Park Plaza Shopping Ctr LLC
Parkland Partnership Lp
Parkview Square Owner Corp
Parkwood Plaza Shopping Center
Parkwood Village Joint Venture
Pass Christian Village
Patricia Or Marshall Weigel
Patton Plaza LLC
Paw Creek Crossing
Peach Orchard Center
Peachtree Parkway Plaza
Pearl Brittain Inc
Pelican Associates
Pell City Marketplace Partners
Peninsula Utilities Inc
Penman Plaza Associates Ltd
Peregine Properties LP
Perimeter Place Associates
Peripety Group Inc c/o Comm P
Phoenix Jr Inc
Pinar Assoc Sc Co Ltd
Pine Island Shopping Center
Pine Plaza
Pinel LP
Pineroots LLC
Pines/Carter
Pinetree Partners Ltd
Pinewood Plaza Associates
Pinson Valley Ltd
Plaza West 15190117351
Pmt Partners V LLC
Pnc Bank Philadelphia
Ponce Realty Company
Ponderosa Center Inc
Popps Ferry Ms Dev
Potter Square Associates
PRB Investments LLC
Premier Plaza Associates LLC
Prestonbury Village Shop Center
Primax Properties LLC
Prime Shoppes Partners
Primo Justice Properties LLC
Principal Capital Management L
Principal Life Insurance Co
Procacci Commercial Realty Inc
Professional Mortgage Co Inc
Promenades Mall (E&A), LLC
Promventure Limited Partnership
PSI of Louisiana Inc
PSMA Ltd AP FHA FP FLA TIC
Quail Roost Associates
Quail Run Village
Quincy Associates Ltd
R & G Associates
R P Barren River LLC
Rab Land & Development Inc
Rainbow Marketplace LLC
Rainbow Springs Ventures Lc
Ralph Meitin Family

Ramco USA Development Inc
Randall Benderson 1993-1 Trust
Randy Roark
Rappaport Management Co
Rayne Plaza Shopping Center
Red Oak Shopping Center LLC
Reef Associates Ltd
Regency Centers Inc
Regency Saving Bank FSB
Regent Investment Corporation
Retail Center Hampton LLC
Retail Management Group Inc
Retreat Village Management Co
Rial Corporation
Richard Ball & Associates
Ridgeview Inc
Riley Place LLC
River Oaks
Riverwalk Plaza Joint Venture
RK Associates
Robert D Powers
Robert G  Horsman
Robert H Palmer Jr
Robert N Rizika
Robertsdale Dev LLC
Rockbridge Place
Roebuck Ventures Ltd
Ronald Benderson 1995 Trust
Rosemyr Corp
Roxborough Associates LLC
Royal & Son
Royal Companies
Royal Homes Inc
Royal Oaks Brandon Partners
Royal Oaks Plaza Inc
Royals O K Lunch Inc
RSSC LLC
Rudco Properties Inc
Rushmore Friendship LLC
Ruth Guest House Inc
Ruth S Smith Snodgrass Aires
S & C Properties
Salem Crossing Shopping Center
Salemo Village Shopping Center
Sam Development Associates LLC
Samuel Oschin Trustee Michael
Sandefur Investments Inc
Sandifer Partnership Ltd
Sandra Mackey
Sarria Enterprises Inc
Sarria Holdings II Inc
Sarria Holdings Inc
Satterfield Plaza T I C
Saufley Field Partners Ltd
Savitar A/M/A SRA/American LLC
Sawicki Realty Co
SCG Management Inc
Schilleci Millbrook SC LLC
School St Crossing LP
Schwartz Family Trust
Scotland Mall Inc
SCP Winter Garden Fl LLC
Scribe Riviera JV
Sea Pea Inc
Sebring Square Ltd
Selig Enterprises Inc
Sendero Commercial Investments
Seven Springs Plaza LLC
Shades Creek Partners
Shadrall Associates

Shannon Village Shopping Center
Shepherdsville Mall Assoc LP
Sherffield Estates Inc
Sheri Trager Weiss
Shields Plaza
Shoals Marketplace LLC
Shoppes @ 104
Shoppes at 18th & Commercial
Shoppes at Lake Avenue Inc
Shoppes of Liberty Cit LLC
Sidney Kohl Company
Sidney Lefcourt
Simmons & Harris Inc
Situs Servicing Inc
Sizeler Companies
SJS-Woodlake Plaza LP
Skinners of Jacksonville Inc
SKS Properties LC
Small Properties
Smith Barney Fbo Weinacker's
Snellville Plaza Ltd
Sormi Inc
South Broadway Corp
South Monroe Commons LLC
South Plaza Associates LLC
South Rockdale Shopping Center
South Square Marketplace
South Win Limited Partnership
Southbrook Partners LLC
Southchase Investors LLC
Southeast US Retail Fund LP
Southern Boulevard Corp
Southern Farm Bureau
Southern Farm Bureau Life Ins
Southern Partners
Southern Stores II LLC
Southgate Associates II LP
Southgate Plaza 93 Ltd
Southgate Plaza Associates LLC
Southmark Properties LLC
Southtrust Bank
Southview Square LLC
SPCP Group LLC
Spectrum Walker
Spectrum/Grandview Pines
Spiller Investment Inc
Spishores LLC
Spring Hill Assoc Ltd
Spring Plaza Limited Partnership
Springdale Station Ltd
Springfield Crossing LLC
Springhill Associates LLC
Springland Associates LLC
Springs Corners LLC
SR JLP JAP LLC
SR TCS LLC
SRT Acquistion Corporation
SSKIB Corporation
St Charles Partners
St Johns Commons Owner Corp
St. Stephens Partners
Staunton Plaza Associate
Stiles West Associates Ltd
Stockman & Nalley Partnership
Stonebridge Village
Structured Product Servicing
STW Holdings LLC
Sugarland Shopping Center
Sulphur Springs Partners LLLP
Sumter Crossing Properties Inc

Sun Lake Plaza Inc
Sun West NC III Ptn Lim
Sunburst Properties Corp
Sunset Centres Ltd
Sunset Centres Ltd Partnership
Sunset Station Partners LLC
Sunset West Shopping Plaza
Sunwest NC III Partnerships
Suwanee County Investors LLC
Swiss Re Investors Inc
T K Harris Comm Re Ser
T S Margate Co Ltd
TA/Western LLC (Pom. Mktplce)
Talladega Community Builders
Tappen Properties LP
Tatone Properties Fla Inc
Tavares Assoc Ltd
Taylor Square Venture
Teachers Retirement System
Ted Glasrud Associates Inc
Terra Nova The Realty Assoc Fu
THC LLC
The Market at Byram LLC
The Marketplace LLC
The Schreiber Co Belleview Ass
The Sembler Company
Tifton Mall Inc
Timberlake Station LLC
TL Nguyen LLC
Toulouse Village Associates
Tower Associates Ltd
Town & Country Shopping Center
Town Square Development
Town'n Country Realty
Trail Plaza
Triangle IV LLLP
Tri-State Commercial Asc
TRL Properties LLC
Troy Marketplace LLC
Trustee Of Trust B
Trustees Of Trust A/C -1
Trustmark National Bank
TS Pierce Sc Co Ltd
TSO Volusia LLC
Tunica Village Partnership
Twelth Street & Washington
Tyrone Gardens LLC
U P SC Ltd
Ullmann Company
United Commercial Mortgage Cor
United Investors Realty
University Crossing
University Tenancy In Common
UrbanAmerica
US Bank Trust Na Corp Trust TF
USPG Portfolio Two LLC
USRP I LLC Glen Lea Shopping C
USRP I LLC Shoppes Of Kildaire
Vachlia Inc
Valrico Square
Venetia Village Center
Ventures LLC
Victoria Square Partners LLC
Victory Berryland LLC
Victory Investments Inc
Victory Kenner LLC
Vigouroux Development LLC
Villa Rica Retail Properties L
Village Marketplace Of
Village Plaza Inc

Village Royale Properties LLC
Vogel & Vogel Partnership
W D Route 3 Limited
W T H II LLC
Wachovia Securities
Walker LA Commercial
Watch Omega Holdings Lp
Waters & Armenia Plaza
Waters Inc S C Mgmt Trust Acct
Watkins Investment
Wayne Ruben
Waynesville Shopping
WBFV Inc
WCL Five LLC
WD Development LLC
WD Jacksonville Fl LLC
WD Marianna Portfolio LP
WD Milton Portfolio L P
W-D Shelby Partnership
Weavers Corner Jt Venture
Webb/Lexington Ventures #108
Webber Commercial Properties L
Weeki Wachee Village Shop Cntr
Weingarten Realty Investors
Wesley Chapel Sc Co Ltd
West Eck Partners LP
West Napoleon Joint Venture
Westfork Plaza
Westgate LLC
Westland Shopping Center LP
Weston Road Shopping Center LL
Westside City Inc
Westwood Shopping Center
WIAB Properties LLC Operating
Wiedemann Square Ltd
Wiedmann Square LLC
Wiggs Realty Co
William H Hall
Willowood Partners Ltd
Winbrook Management Inc
Windsor Place
Windsor Station LC
Windward Partners IV LP
Winyah Village Shopping Ctr
Wiregrass Plaza LLC
Wolfchase Assoc LLC North Palm
Woodberry Plaza E&A LLC
Woodland Village Partnership
WRI/Texla LLC
Xarla Realty LLC
YBD Three Lakes LC
ZSF/WD Bartow, LLC
ZSF/WD Charlotte, LLC
ZSF/WD Clayton, LLC
ZSF/WD Fitzgerald, LLC
ZSF/WD Greenville, LLC
ZSF/WD Hammond, LLC
ZSF/WD High Point, LLC
ZSF/WD Jacksonville, LLC
ZSF/WD Montgomery-31, LLC
ZSF/WD Montgomery-Gunter, LLC
ZSF/WD Opa Locka, LLC
ZSF/WD Orlando, LLC
ZSF/WD Sarasota, LLC
Zuppardo Properties LLC
Zuppardo Real Estate Co
Zurich Structured Finance, Inc.

**Insurance Companies**
ACE American Insurance Co.

ACE Bermuda Insurance, Ltd.
ACE (Illinois Union)
AIG Aviation, Inc.
American Casualty Company of Reading
PA
American Guarantee Liability (Zurich)
Arch Insurance Co.
AWAC - Side A DIC (Bermuda)
AWAC (Bermuda)
AXIS (Bermuda)
Axis Surplus Insurance Co.
AXIS US
CNA
Commonwealth Ins. Co.
Employers Ins. Co. of Wausau
Federal Insurance Co.
Great American Assurance Company
Hanseatic Ins. Co. (Bermuda)
Houston Casualty Company
Illinois National Insurance Co.
Illinois Union Ins. Co.
Lexington Insurance Co.
Liberty Ins. Underwriters, Inc.
Liberty Mutual
Liberty Mutual Insurance Company
Liberty Mutual Insurance Europe Ltd.
Lloyd's of London
Magna Carta Insurance Ltd.
Max Re - Side-A DIC (Bermuda)
Max Re (Bermuda)
Max Re (Bermuda) Ltd.
National Union
National Union Fire Insurance Co.
National Union Fire Insurance Co.
Pittsburgh, PA
Quanta Specialty Lines Insurance Company
RLI Insurance Co.
SR Int'l Business Ins. Co. Ltd.
St. Paul Re (Bermuda) Ltd.
St. Paul Fire & Marine Ins. Co.
St. Paul Mercury Insurance Co.
Starr Excess (Bermuda)
Starr Excess Liability Ins. Int'l Ltd.
(Bermuda)
Starr Excess Liability Insurance
International Ltd. (Ireland)
Travelers Indemnity Co. of Illinois
Twin City Fire Insurance Company
WIN General Ins., Inc.
XL Insurance America, Inc.
XL Insurance Ltd. (Bermuda)
XL Specialty Insurance Company
Zurich
Zurich American Ins. Co.

**Publicly Identified Shareholders**
Brandes Investment Partners L.P.
Brandes Investment Partners, Inc.
Brandes Worldwide Holdings, L.P.
Charles H. Brandes
Jeffrey A. Busby
Glenn R. Carlson
A. Dano Davis
Robert D. Davis
T. Wayne Davis
Davis Family Special Trust 2004
Davis Family Irrevocable Term Trust
DAVFAM Ltd.
DAVFAM II, Ltd.
D.D.I., Inc.

Scott A. Oko, Trustee, Davis Family
Special Trust 2004
SIVAD Investors, LLC
SIVAD Investors II, LLC
Charles P. Stephens

**Accountants**
KPMG

**Official Committee of Unsecured
Creditors Committee**

R2 Investments, LDC
Deutsche Bank Trust Company Americas
New Plan Excel Realty Trust, Inc.
Kraft Foods Global, Inc.
Pepsico & Subsidiaries
OCM Opportunities Fund V, L.P.
Capital Research & Management Company

**<u>Attachment 2</u>**

## Attachment 2

This information is being provided in connection with the Declaration of Elizabeth Dantin and Disclosure of Compensation (the "Declaration") (hereinafter, together with its affiliates, for this purpose only, "PricewaterhouseCoopers"), in support of the Application for Authority to Retain PricewaterhouseCoopers LLP to Provide Certain Sarbanes-Oxley Compliance and Other Services to the Debtors (the "Application").

Consistent with the Declaration, PricewaterhouseCoopers is in the process of reviewing PricewaterhouseCoopers' relationships with the summary of the parties in interest (the "Interested Parties", attached hereto as Attachment 1). A summary of such representation that PricewaterhouseCoopers was able to locate, as of the date of this Declaration, using its reasonable efforts is reflected in this Attachment.

Based on the results of the relationship search conducted to date as described above, PricewaterhouseCoopers insofar as I have been able to ascertain, PricewaterhouseCoopers currently performs or have previously performed services in matters unrelated to these Chapter 11 Cases to the following individuals or entities or have other relationships with such entities, such as banking relationships.

**Senior Secured Lenders**

Bank One

Congress Financial Corporation (Florida),

n/k/a Wachovia National Bank, N.A.

Fleet Retail Group, Inc.

General Electric Capital Corporation

Merrill Lynch Capital

National City Business Credit, Inc.

PNC Business Credit

Siemens Financial Services, Inc.

SunTrust Bank

The CIT Group/Business Credit, Inc.

UBS AG, Stamford Branch

Wachovia Bank, National Association

Wells Fargo Foothill LLC

**Top 50 Unsecured Trade Creditors on a**

**Consolidated Basis as of February 18, 2005**

Bayer Corp

Campbell Soup Co.

Conagra Grocery Products Co.

General Electric Company

Georgia Pacific Corp.

Kellogg Sales Company

Pepsico. & Affiliates

Sara Lee Foods

Unilever (Hpc Usa & Best Foods)

US Bank Corporation

**Parties with Filed UCC Financing Statements**

Cargill, Incorporated

Cisco Systems Capital Corporation

Fidelity Leasing, Inc.

Fleet Capital Leasing - Technology Finance

Fleet Leasing Corporation

IBM Credit Corporation

IBM Credit LLC

Ikon Office Solutions Inc.

US Bancorp

Xpedex - Division of International Paper

**Attachment 2 - Continued**

| | |
|---|---|
| **Indenture Trustee** | Delphi Financial Group |
| Wilmington Trust Company | Prudential Investments Fund Management LLC |
| **Senior Unsecured Noteholders and Related** | Reliance Standard Life Insurance Company |
| **Funds and Administrators** | The Vanguard Group |
| Capital Research and Management Company | Vanguard Group Incorporated |
| Credit Suisse Asset Management Ltd. | Vanguard High-Yield Corporate Bond Portfolio |
| Credit Suisse FS High Yield Bond | Vanguard VVIF High Yield Bond Fund |
| Credit Suisse High Yield Bond Fund | |

PricewaterhouseCoopers continues to review our relationship(s) with the Interested Parties and will file a supplemental declaration in an expedite manner upon completion of our review.

PricewaterhouseCoopers confirms it is not providing and will not provide services to any of the clients listed that are adverse to the Debtors or related to issues connected to the Debtors' bankruptcy. Further, we are not providing and will not provide services to the Debtors that would be adverse to any of the entities. Despite the size or significance of the relationships with the entities, none of those relationships will compromise in any way PricewaterhouseCoopers' ability to serve as the Debtors' Sarbanes-Oxley Compliance advisors.

PricewaterhouseCoopers has provided and likely will continue to provide services unrelated to the Debtors' case for the various Interested Parties. Our assistance to these parties has been primarily related to auditing, tax, and/or other consulting services. To the best of my knowledge, no services have been provided to these creditors or other parties in interest which could impact their rights in the Debtors' case, nor does PricewaterhouseCoopers' involvement in this case compromise its ability to continue such Sarbanes-Oxley consulting services.

Further, as part of its diverse practice, PricewaterhouseCoopers appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. Also, PricewaterhouseCoopers has performed in the past, and may perform in the future, audit, tax and consulting services for various attorneys and law firms in the legal community, and has been represented by several attorneys and law firms in the legal community, some of whom may be involved in these proceedings. In addition, PricewaterhouseCoopers has in the past, may currently and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases. Based on our current knowledge of the professionals involved, and to the best of my

## Attachment 2 - Continued

knowledge, none of these business relationships create interests materially adverse to the Debtors herein in matters upon which PricewaterhouseCoopers is to be employed, and none are in connection with this case.

Further, to the best of my knowledge, no one involved in this case has any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in this District.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re                                      :
                                           :        Chapter 11
                                           :
WINN-DIXIE STORES, INC., et al.,           :        Case No. 05-11063 (RDD)
                                           :
              Debtors.                     :        (Jointly Administered)
                                           :
---------------------------------------------------------------x

ORDER AUTHORIZING RETENTION OF
PRICEWATERHOUSECOOPERS LLP TO PROVIDE CERTAIN SARBANES-OXLEY
COMPLIANCE AND OTHER SERVICES TO THE DEBTORS

Upon the Application dated March 22, 2005 (the "Application") of Winn-Dixie Stores,

Inc. and its debtor affiliates (collectively, the "Debtors") for an order pursuant to section 327 of

the Bankruptcy Code approving the retention of PricewaterhouseCoopers LLP ("PwC"), nunc

pro tunc to the Petition Date, to provide documentation, testing, and other internal auditing

services in connection with the Debtors' compliance with Section 404 of the Sarbanes-Oxley Act

of 2002 (the "Sarbanes-Oxley Act") and the Debtors' other internal auditing needs, as more fully

set forth in the Application; and upon consideration of the Declaration of Elizabeth Dantin and

Disclosure of Compensation (the "Dantin Declaration"); and the Court having jurisdiction to

consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334

and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for

the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration

of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Application having been provided to (i) counsel to the U.S. Trustee,

(ii) counsel for the Debtors' postpetition secured lenders, (iii) counsel for the Creditors'

Committee, (iv) the other parties in interest named on the Master Service List maintained in

these cases, and (v) PwC, and no other or further notice being required; and the relief requested

in the Application being in the best interests of the Debtors, their estates, and creditors; and the

Court having reviewed the Application; and the Court having determined that the legal and

factual bases set forth in the Application establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court; and after due deliberation and sufficient cause

appearing therefor, it is

   ORDERED that the Application is granted; and it is further

   ORDERED that the Debtors are authorized to retain PwC, nunc pro tunc to the

Petition Date, to provide documentation, testing, and other internal auditing services in

connection with the Debtors' compliance with Section 404 of the Sarbanes-Oxley Act and the

Debtors other internal auditing needs, pursuant to section 327(a) of the Bankruptcy Code, on the

terms set forth in the Application, the Master Agreement, and the Dantin Declaration; and it is

further

   ORDERED that if any supplemental declarations are filed and served after the

entry of this Order, absent any objections filed within twenty (20) days after the filing and

service of such supplemental declarations, PwC's employment shall continue as authorized

pursuant to this Order; and it is further

   ORDERED that PwC shall be compensated upon appropriate application in

accordance with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy

Procedure, the Local Rules, and orders of this Court; and it is further

   ORDERED that notwithstanding the requirements of the Final Order Approving

Interim Compensation Procedures for Professionals dated March 15, 2005, the professionals and

employees of PwC shall be required to maintain time entries in half-hour increments; and it is further

    ORDERED that no work performed by PwC shall be duplicative of work performed by any other professional retained by the Debtors in these cases; and it is further

    ORDERED that PwC is hereby deemed to have waived its "Pre-Petition Claim" (as defined in the Application); and it is further

    ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

    ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Application is hereby waived.

Dated: _____ ___, 2005
   New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

980995-New York Server 7A - MSW