SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
D.J. Baker (DB 0085)

Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
| | |
|---|---|
| **In re** : | |
| : | **Chapter 11** |
| : | |
| **WINN-DIXIE STORES, INC., et al.,** : | **Case No. 05-11063 (RDD)** |
| : | |
| **Debtors.**[1] : | **(Jointly Administered)** |
| : | |

-----------------------------------------------------------x

## APPLICATION FOR AUTHORITY TO EMPLOY
## KPMG LLP AS AUDITORS, ACCOUNTANTS, AND TAX ADVISORS

Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and

debtors-in-possession (collectively, the "Debtors"), respectfully represent:

### Background

1.     On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary

petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11

U.S.C. §§ 101 1330 as amended (the "Bankruptcy Code"). Their cases are being jointly

administered by order of this Court.

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these
related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep
South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc , Dixie Packers, Inc.,
Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores,
Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food
Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie
Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie
Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to section 1103 of the Bankruptcy Code.

3.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States with nearly 79,000 employees.. Substantially all of the Debtors' store locations are leased rather than owned.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicate for the relief requested herein is section 327 of the Bankruptcy Code of the Bankruptcy Code, and such relief is subject to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

6.      By this Application, the Debtors request entry of an order, pursuant to

Section 327(a) of the Bankruptcy Code, approving the employment of KPMG LLP ("KPMG"),

nunc pro tunc to the Petition Date, as auditors, accountants, and tax advisors for the Debtors

during these cases.  The Debtors request that KPMG be retained to perform the services

described in this Application on the terms described herein and in the letter agreement between

the Debtors and KPMG (the "Agreement"), dated February 25, 2005 and attached to this

Application as Exhibit A.

## Basis for Relief

7.      As a public company, Winn-Dixie Stores, Inc. ("Winn-Dixie") is required

by securities laws to be the subject of regular auditing.  For many years, Winn-Dixie has selected

KPMG to handle its auditing and accounting needs.  Pursuant to Section 327(a) of the

Bankruptcy Code, the Debtors request that the Court approve their continued retention of KPMG

as their auditors and accountants during these chapter 11 cases.  KPMG also has provided tax

advisory services to the Debtors for many years.  The Debtors request authority to engage

KPMG to continue providing these valuable services to the Debtors during these cases.  The

Debtors request that the retention of KPMG be on the terms and conditions detailed herein and in

the Agreement.

8.      The Debtors have selected KPMG as their auditors, accountants, and tax

advisors because of KPMG's extensive knowledge of the Debtors' businesses, its general

experience and knowledge, and its recognized expertise in the fields of auditing and accounting

services and tax advisory services.  The Debtors believe that KPMG is both well qualified and

uniquely able to assist them in these cases and in other matters in a most efficient and timely

manner.

9.     In the last year, KPMG has provided professional services to over forty

percent (40%) of the Fortune 100 retail companies.  In the United States, KPMG audits seven (7)

of the largest twenty (20) United States retailers.

10.     The employment of KPMG is appropriate and necessary to enable the

Debtors to successfully reorganize their operations and emerge from these chapter 11 cases as a

profitable enterprise.  Subject to further order of this Court, it is proposed that KPMG be

employed for the following purposes:

**(a) Accounting, Auditing & Risk Advisory Services**

    i.     Audit/Review of annual/quarterly financial statements required to be filed with the Securities and Exchange Commission;

    ii.     Analysis of accounting issues and advice to the Debtors' management regarding the proper accounting treatment of events;

    iii.     Read and comment on the Debtors' documents, if any, required to be filed with the Securities and Exchange Commission;

    iv.     Audit of the financial statements of the Debtors' Employee Benefit Plans as required by the Employee Retirement Income Security Act;

    v.     Audit of the Debtors' Internal Control Over Financial Reporting (ICOFR) in accordance with management's responsibilities under Section 404 of the Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act");[2]

---

[2]     In connection with their compliance with Section 404 of the Sarbanes-Oxley Act, the Debtors employ the services of several professionals.  The compliance services proposed to be provided to the Debtors by KPMG are not duplicative of services that the Debtors receive from other professionals.  Moreover, KPMG will consult with the Debtors and, as necessary, the Debtors' professionals throughout the pendency of these cases to ensure that there will be no duplication of services provided to the Debtors.

vi.    Review of bankruptcy accounting procedures as required by the Bankruptcy Code and generally accepted accounting principles, including, but not limited to, Statement of Position 90-7;

vii.    Review of reports or filings as required by the Bankruptcy Court or the Office of the United States Trustee including monthly operating reports;

**(b)    Tax Advisory Services**

viii.    Review of and assistance in the preparation and filing of any tax returns;

ix.    Advice and assistance to the Debtors regarding tax planning issues, including, but not limited to, assistance in estimating net operating loss carryforwards, international taxes, and state and local taxes;

x.    Assistance regarding transaction taxes, state and local sales, and use taxes;

xi.    Assistance regarding tax matters related to the Debtors' pension plans;

xii.    Assistance regarding real and personal property tax matters, including, but not limited to, review of real and personal property tax records, negotiation of values with appraisal authorities, preparation and presentation of appeals to local taxing jurisdictions, and assistance in litigation of property tax appeals;

xiii.    Assistance regarding any existing or future Internal Revenue Service ("IRS"), state and/or local tax examinations;

xiv.    Advice and assistance on the tax consequences of proposed plans of reorganization, including, but not limited to, assistance in the preparation of IRS ruling requests regarding the future tax consequences of alternative reorganization structures; and

xv.    Other consulting, advice, research, planning or analysis regarding tax issues as may be requested from time to time.

11.    KPMG has stated its desire and willingness to act in these cases and to render the services detailed in the preceding paragraph for the Debtors.

12.    To the best of the Debtors' knowledge: (a) KPMG neither holds nor represents any interest adverse to the Debtors' estates; (b) KPMG has had no affiliation with the Debtors, their creditors or any party in interest, or their respective attorneys and accountants, the

United States Trustee, any person employed in the office of the United States Trustee, or the Bankruptcy Judge presiding over these cases; and (c) KPMG is a "disinterested person" within the meaning of Sections 101(14) and 327(a) of the Bankruptcy Code, except as specifically disclosed more fully in the Declaration of R. Travis Storey, a partner of KPMG (the "Storey Declaration"), attached hereto as Exhibit B.

13.    The Debtors and KPMG have agreed that KPMG will be compensated as set forth in the Agreement. KPMG will be compensated at hourly rates of $600-$700 for partners, $425-$625 for Directors, Senior Managers, and Managers, $220-$375 for Senior Accountants and Staff Accountants, and $100-$150 for paraprofessionals. These rates are KPMG's normal and customary rates for the type of services to be provided. The Debtors are advised that KPMG revises its rates in the normal course of its business on October 1 of each year and that, subject to future agreement between the Debtors and KPMG, the rates applied to services provided with respect to subsequent fiscal years may differ from those listed above. In addition, KPMG and the Debtors have agreed to certain discounts off of these rates for certain types of services. Specifically, the Debtors will receive a twenty-five percent (25%) discount for audit and review of annual and quarterly financial statements required to be filed with the Securities and Exchange Commission; a fifteen-percent (15%) discount for audit of Internal Control Over Financial Reporting (ICOFR) in accordance with management's responsibilities under Section 404 of the Sarbanes-Oxley Act;[3] a ten-percent (10%) discount for all other accounting, auditing and risk advisory services; a twenty-percent (20%) discount for review of

---

[3]    As previously indicated, the Sarbanes-Oxley Act compliance services proposed to be provided to the Debtors by KPMG are not duplicative of services provided by other professionals to the Debtors.

and assistance in the preparation and filing of any tax returns; and a ten-percent (10%) discount for all other tax advisory services.

14.    KPMG will file fee applications with the Court in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and orders of this Court.

15.    On February 21, 2005, KPMG received from the Debtors a retainer in the amount of $500,000, which continues to be held by KPMG as a "last bill" or "security" retainer subject to the future direction and orders of the Court.

16.    Prior to the Petition Date, KPMG received certain amounts (as set forth in the Storey Declaration) from the Debtors as compensation for professional services performed, and additional amounts (as set forth in the Storey Declaration) for the reimbursement of reasonable and necessary expenses incurred in connection therewith.

<u>Notice</u>

17.    Notice of this Application has been provided to (a) counsel to the U.S. Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) KPMG. The Debtors submit that no other or further notice need be given.

<u>Waiver of Memorandum of Law</u>

18.    Pursuant to Rule 9013-1(b) of the Local Rules, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) authorizing the Debtors to employ KPMG LLP as auditors, accountants, and tax advisors <u>nunc</u>

-7-

<u>pro</u> <u>tunc</u> to the Petition Date in these cases and (b) granting such other and further relief as is just

and proper.

Dated:  March 22, 2005
      New York, New York

                        /s/     *D. J. Baker*
                        D. J. Baker (DB 0085)
                        Sally McDonald Henry (SH 0839)
                        Rosalie Walker Gray
                        David M. Turetsky
                        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP
                        Four Times Square
                        New York, New York 10036
                        Telephone:  (212) 735-3000
                        Facsimile:    (212) 735-2000

                        Eric M. Davis
                        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP
                        One Rodney Square
                        Wilmington, Delaware 19801
                        Telephone:  (302) 651-3000
                        Facsimile:  (302) 651-3001

                        Attorneys for Debtors

**Exhibit A**

**Agreement**



**KPMG LLP**
Suite 2700, Independent Square
One Independent Drive
Jacksonville, FL 32201-4190

Telephone   904 364 5671
Fax         904 350 1260
Internet    www.us.kpmg.com

Winn-Dixie Stores. Inc.
5050 Edgewood Court
Jacksonville, FL 32251

February 25, 2005

Attention:   Mr. Edward Mehrer. Chairman of the Audit Committee
             Mr. Bennett L. Nussbaum. Senior Vice President and Chief Financial Officer

This letter will confirm our understanding of our engagement to provide professional services to
Winn-Dixie Stores. Inc. (the Company).

**Objectives and Limitations of Services**

*Integrated Audit Services*

We will perform an audit of the Company's consolidated financial statements and an audit of its
internal control over financial reporting (collectively. the Integrated Audit).

Based on our Integrated Audit. we will issue our reports on:

- The consolidated financial statements of the Company as set forth in Appendix I:
- Schedules supporting such financial statements;
- Management's assessment regarding the effectiveness of the Company's internal
  control over financial reporting and the effectiveness of internal control over financial
  reporting as set forth in Appendix I.

These reports will be included in the annual report (Form 10-K) proposed to be filed by the
Company under the Securities Exchange Act of 1934.

A company's internal control over financial reporting is a process designed to provide
reasonable assurance regarding the reliability of the financial reporting and preparation of
financial statements for external purposes in accordance with U.S. generally accepted accounting
principles.  A company's internal control over financial reporting includes those policies and
procedures that (1) pertain to the maintenance of records that, in reasonable detail. accurately
and fairly reflect the transactions and dispositions of the assets of the company: (2) provide
reasonable assurance that transactions are recorded as necessary to permit preparation of
financial statements in accordance with U.S. generally accepted accounting principles. and that



Winn-Dixie Stores. Inc.
February 25, 2005
Page 2

receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the company's assets that could have a material effect on the financial statements.

The Public Company Accounting Oversight Board (PCAOB), created as a result of the Sarbanes-Oxley Act of 2002 (Sarbanes-Oxley Act), has the authority to establish auditing, quality control, ethics, independence and other standards relating to the preparation of audit reports for issuers, as that term is defined in the Sarbanes-Oxley Act, subject to oversight by the SEC.

We have a responsibility to conduct and will conduct the:

(a) audit of the consolidated financial statements in accordance with the standards of the PCAOB (United States), with the objective of expressing an opinion as to whether the presentation of the consolidated financial statements and schedules. aken as a whole. conforms with U.S. generally accepted accounting principles.

(b) audit of internal control over financial reporting in accordance with the standards of the PCAOB (United States), with the objective of obtaining reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects.

It should be understood that the consolidated financial statements and schedules. management's assessment of the effectiveness of internal control over financial reporting. and our report(s) thereon may be subject to review by the Securities and Exchange Commission (SEC) staff and to the application by them of their interpretation of the relevant rules and regulations.

Our Integrated Audit will include:

(a) performing tests of the accounting records and such other procedures, as we consider necessary in the circumstances. to provide a reasonable basis for our opinion(s).

(b) assessing the accounting principles used and significant estimates made by management. and evaluating the overall consolidated financial statement presentation.

(c) obtaining an understanding of internal control over financial reporting. evaluating management's related assessment. testing and evaluating the design and operating effectiveness of internal control over financial reporting. and performing such other procedures as we considered necessary in the circumstances.



Winn-Dixie Stores, Inc.
February 25, 2005
Page 3

Our Integrated Audit:

    (a) will be planned and performed to obtain reasonable, but not absolute, assurance about whether the consolidated financial statements are free of material misstatement, whether caused by error or fraud. Absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud. Therefore, there is a risk that material errors, fraud (including fraud that may be an illegal act), and other illegal acts may exist and not be detected by an Integrated Audit performed in accordance with the standards of the PCAOB (United States). Also, an audit is not designed to detect matters that are immaterial to the consolidated financial statements. Our Integrated Audit will be planned and performed with an objective to obtain reasonable assurance that no material weaknesses exist in internal control over financial reporting as of the Company's fiscal year end and that the consolidated financial statements are free from material misstatement.

    (b) cannot provide absolute assurance of achieving financial reporting objectives because of its inherent limitations. Internal control over financial reporting is a process that involves human diligence and compliance and is subject to lapses in judgment and breakdowns resulting from human failures. Internal control over financial reporting can be circumvented by collusion or improper management override. Because of such limitations, there is a risk that material misstatements may not be prevented or detected on a timely basis by internal control over financial reporting. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Our reports will be addressed to the board of directors and shareholders of the Company and will be in a form that is in accordance with the published rules and regulations of the SEC and the standards of the PCAOB (United States). We cannot provide assurance that unqualified opinions will be rendered. Circumstances may arise in which it is necessary for us to modify our reports or withdraw from the engagement.

As part of our Integrated Audit, we will read the other information in your annual report (Form 10-K) and consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements or is inconsistent with the results of our audit of internal control over financial reporting. However, our Integrated Audit does not include the performance of procedures to corroborate such other information (including forward-looking statements).



Winn-Dixie Stores, Inc
February 25, 2005
Page 4

*Quarterly Review Services*

As set forth in Appendix I, we will review the consolidated balance sheets of the Company, and the related consolidated statements of operations, shareholders' equity and comprehensive income, and cash flows for the quarterly and year-to-date periods, which are to be included in the quarterly reports (Form 10-Q) proposed to be filed by the Company under the Securities Exchange Act of 1934. We will also review the selected quarterly financial data specified by Item 302 of Regulation S-K, which is required to be included in the annual report (Form 10-K) proposed to be filed by the Company under the Securities Exchange Act of 1934.

We have a responsibility to conduct our reviews in accordance with the provisions of the standards of the PCAOB (United States). The objective of a review of interim financial information is to provide us with a basis for communicating whether we are aware of any material modifications that should be made to such interim financial information for it to conform with U.S. generally accepted accounting principles. Our procedures will be substantially less in scope than an Integrated Audit performed in accordance with the standards of the PCAOB (United States), the objective of which is the expression of opinions regarding the financial statements taken as a whole and internal control over financial reporting. Accordingly, we will not express an opinion on the Company's interim financial information.

Our reviews will consist principally of performing analytical procedures applied to financial data and making inquiries of the Company personnel responsible for financial and accounting matters. Our reviews will include obtaining sufficient knowledge of the Company's business and its internal control as it relates to the preparation of both annual and interim financial information to (a) identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence, and (b) select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with U.S. generally accepted accounting principles.

A review does not contemplate tests of internal controls or accounting records, tests of responses to inquiries by obtaining corroborating evidential matter, and certain other procedures ordinarily performed during an Integrated Audit. Thus, a review does not provide assurance that we will become aware of all significant matters that would be disclosed in an Integrated Audit. Further, a review is not designed to provide assurance on internal control or to identify significant deficiencies or material weaknesses and can not be relied on to detect errors, fraud or illegal acts.

As agreed, we will not issue a written report upon completion of each review. the Company understands that any reference to interim financial information as reviewed by us when such information is included in documents issued to stockholders or third parties (including the SEC)



Winn-Dixie Stores. Inc.
February 25, 2005
Page 5

will necessitate the issuance of a written review report, which must accompany the interim financial information in the document.

*Registration Statements and Other Offering Documents*

We understand that the consolidated financial statements and schedules, management's assessment regarding the effectiveness of internal control over financial reporting, and our written audit reports thereon, as described above, are to be included by the Company in its annual report (Form 10-K), and that in so doing, the Company will be incorporating by reference the consolidated financial statements and schedules, management's assessment regarding the effectiveness of internal control over financial reporting, and our reports thereon in previously filed and effective Forms S-8. Prior to issuing our consent to the incorporation by reference in these registration statements of our reports with respect to the consolidated f.nancial statements and schedules and internal control over financial reporting described above, we will perform procedures as required by the standards of the PCAOB (United States). including, but not limited to, reading information incorporated by reference in these registration statements and performing subsequent event procedures.

Should the Company wish to include or incorporate by reference the consolidated financial statements, management's assessment regarding the effectiveness of internal control over financial reporting, and our audit reports thereon into a future filing under the Securities Act of 1933, or an exempt offering, prior to our consenting to include or incorporate by reference our reports on the consolidated financial statements and internal control over financial reporting, we would consider our consent to the inclusion of our reports and the terms thereof at that time. We will be required to perform procedures as required by the standards of the PCAOB (United States). including, but not limited to, reading other information incorporated by reference in the registration statement or other offering document and performing subsequent event procedures. Our reading of the other information included or incorporated by reference in the offering document will consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements or is inconsistent with the results of our audit of internal control over financial reporting. However, we will not perform procedures to corroborate such other information (including forward-looking statements). The specific terms of our future services with respect to future filings or other offering documents will be determined at the time the services are to be performed.

*Comfort Letters*

Should a comfort letter be requested in connection with a future filing under the Securities Act of 1933, or an exempt offering, the specific terms of our services will be determined at that time.



Winn-Dixie Stores, Inc.
February 25, 2005
Page 6

Prior to our issuance of a comfort letter, management of the Company agrees to supply us with a representation letter that will, among other things, confirm that no events have occurred that would require adjustments to (or additional disclosures in) the audited consolidated financial statements or management's assessment regarding the effectiveness of the Company's internal control over financial reporting referred to above and confirm the Company's responses to certain inquiries made in connection with our issuance of the comfort letter.

### Our Responsibility to Communicate with the Audit Committee

In conjunction with management, who is responsible for establishing the Company's accounting policies, we will discuss our judgments of the quality and understandability, not just the acceptability, of the Company's accounting policies and disclosures, prior to the filing of our audit reports with the SEC.   We believe verbal communication is the appropriate forum to provide open and frank dialogue.

We will report to the Audit Committee and management, in writing, the following matters prior to the filing of our audit reports with the SEC:

- All significant deficiencies[1] and material weaknesses[2] identified during the Integrated Audit. If a significant deficiency or material weaknesses exists because of the oversight of the company's external financial reporting and internal control over financial reporting by the audit committee, we report such deficiency in writing to the chairman of the board of directors.

- Audit adjustments arising from the Integrated Audit that could, in our judgment, either individually or in aggregate, have a significant effect on the Company's financial reporting process.   In this context, audit adjustments, whether or not recorded by the entity, are proposed corrections of the financial statements that, in our judgment, may not have been detected except through the auditing procedures performed.

---

[1] A significant deficiency is a control deficiency, or combination of control deficiencies, that adversely affects an entity's ability to initiate, authorize, record, process, or report external financial data reliably in accordance with U.S. generally accepted accounting principles such that there is more than a remote likelihood that a misstatement of the entity's annual or interim financial statements that is more than inconsequential will not be prevented or detected.

[2] A material weakness is a significant deficiency, or combination of significant deficiencies, that results in more than a remote likelihood that a material misstatement of the annual or interim financial statements will not be prevented or detected.



Winn-Dixie Stores, Inc.
February 25, 2005
Page 7

- Uncorrected misstatements aggregated during the current engagement and pertaining to the latest period presented that were determined by management to be immaterial, both individually and in aggregate.

- All relationships between KPMG LLP and its related entities and the Company and its related entities that, in our judgment, may reasonably be thought to bear on independence.

- Alternative treatments within GAAP for accounting policies and practices related to material items that have been discussed with management during the current audit period, including i) ramifications of the use of such alternative disclosures and treatments and the treatment preferred by us and ii) the process used by management in formulating particularly sensitive accounting estimates.

- Disagreements with management or other serious difficulties encountered in performance of our audit or review services.

- Critical accounting policies and practices applied in the consolidated financial statements and our assessment of management's disclosures regarding such policies and practices, including why certain policies and practices are or are not considered critical, and how current and anticipated future events impact those determinations.

- Other matters required to be communicated by the standards of the PCAOB (United States).

We will also read minutes, if any, of audit committee meetings for consistency with our understanding of the communications made to you and determine that you have received copies of all material written communications between ourselves and management. We will also determine that you have been informed of i) the initial selection of, or the reasons for any change in, significant accounting policies or their application during the period under audit, ii) the methods used by management to account for significant unusual transactions, and iii) the effect of significant accounting policies in controversial or emerging areas for which there is a lack of authoritative guidance or consensus.

To the extent that they come to our attention, we will inform you and management about any material errors and any instances of fraud or illegal acts. Further, to the extent they come to our attention, we will also communicate to you fraud that involves senior management or that, in our judgment, causes a material misstatement of the financial statements and illegal acts that come to our attention, unless they are clearly inconsequential. In the case of illegal acts which, in our judgment, would have a material effect on the consolidated financial statements of the Company, we are also required to follow the procedures set forth in the Private Securities Litigation



Winn-Dixie Stores, Inc.
February 25, 2005
Page 8

Reform Act of 1995, which under certain circumstances requires us to communicate our conclusions to the SEC.

If, during the performance of our Integrated Audit procedures, circumstances arise which make it necessary to modify our reports or withdraw from the engagement, we will communicate to you our reasons for withdrawal. Similarly, if during performance of our quarterly review services we become aware of matters that cause us to believe the interim information filed, or to be filed, with the SEC is probably materially misstated as a result of a departure from U.S. generally accepted accounting principles, we will discuss such matters with management and, if appropriate, communicate such matters to you.

In addition, if we become aware of information that relates to the consolidated financial statements and/or management's assessment regarding the effectiveness of internal control over financial reporting after we have issued our reports or completed our interim review procedures, but which was not known to us at the date of our reports or completion of our interim review procedures, and which is of such a nature and from such a source that we would have investigated that information had it come to our attention during the course of our Integrated Audit and/or interim review procedures, we will, as soon as practicable: (1) communicate such an occurrence to you; and (2) undertake an investigation to determine whether the information is reliable and whether the facts existed at the date of our reports or completion of our interim review procedures. In conducting that investigation, we will have the full cooperation of the Company's personnel. If the subsequently discovered information is found to be of such a nature that (a) our reports or completion of our interim review procedures would have been affected if the information had been known as of the date of our reports or completion of our interim review procedures and (b) we believe that the reports or interim review procedures are currently being relied upon or are likely to be relied upon by someone who would attach importance to the information, appropriate steps will be taken to prevent further reliance on our reports or interim review procedures. Such steps include appropriate disclosures by the Company of the newly discovered facts and the impact to the financial statements.

**Audit Committee Responsibilities**

The audit committee is directly responsible for the appointment of KPMG as independent auditor, determining our compensation, and oversight of our Integrated Audit work, including resolution of disagreements between management and us regarding financial reporting. We understand that we report directly to the audit committee. The audit committee is responsible for preapproval of all audit and nonaudit services provided by us.



Winn-Dixie Stores. Inc.
February 25, 2005
Page 9

## Management Responsibilities

The management of the Company is responsible for the fair presentation, in accordance with U.S. generally accepted accounting principles, of the consolidated financial statements, schedules, and interim financial information and all representations contained therein. Management also is responsible for identifying and ensuring that the Company complies with laws and regulations applicable to its activities, and for informing us of any known material violations of such laws and regulations. Management also is responsible for preventing and detecting fraud, including the design and implementation of programs and controls to prevent and detect fraud, for adopting sound accounting policies, and for establishing and maintaining effective internal control over financial reporting and procedures for financial reporting to maintain the reliability of the consolidated financial statements or interim financial information and to provide reasonable assurance against the possibility of misstatements that are material to the consolidated financial statements or interim financial information. Management is also responsible for informing us, of which it has knowledge, of all deficiencies in the design or operation of such controls.

The management of the Company is also responsible for:

1. Accepting responsibility for the effectiveness of the Company's internal control over financial reporting;
2. Evaluating the effectiveness of the Company's internal control over financial reporting using a suitable control criteria;
3. Supporting its evaluation with sufficient evidence, including documentation; and
4. Presenting a written assessment of the effectiveness of the Company's internal control over financial reporting as the Company's fiscal year end.

If management does not fulfill these responsibilities above, we cannot complete the Integrated Audit.

Management of the Company agrees that all records, documentation, and information we request in connection with our Integrated Audit will be made available to us, that all material information will be disclosed to us, and that we will have the full cooperation of the Company's personnel. As required by the standards of the PCAOB (United States), we will make specific inquiries of management about the representations embodied in the consolidated financial statements or interim financial information and the effectiveness of internal control over financial reporting, and obtain a representation letter from management about these matters. The responses to our inquiries, the written representations, and the results of audit tests, among other things, comprise the evidential matter we will rely upon in forming an opinion on the



consolidated financial statements, management's assessment of internal control and the effectiveness of internal control over financial reporting.

Management is responsible for adjusting the annual consolidated financial statements and interim financial information to correct material misstatements and for affirming to us in the representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the consolidated financial statements being reported upon, or the interim information being reviewed, taken as a whole

## Dispute Resolution

Any dispute or claim arising out of or relating to the engagement letter between the parties, the services provided thereunder, or any other services provided by or on behalf of KPMG or any of its subcontractors or agents to the Company or at its request (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved in accordance with the dispute resolution procedures set forth in Appendix II, which constitute the sole methodologies for the resolution of all such disputes. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction. Mediation, if selected, may take place at a place to be designated by the parties. Arbitration shall take place in Orlando, Florida. Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

Notwithstanding the agreement to such procedures, either party may seek injunctive relief to enforce its rights with respect to the use or protection of (i) its confidential or proprietary information or material or (ii) its names, trademarks, service marks or logos, solely in the courts of the State of Florida or in the courts of the United States located in the State of Florida. The parties consent to the personal jurisdiction thereof and to sole venue therein only for such purposes.

## Other Matters

This letter shall serve as the Company's authorization for the use of e-mail and other electronic methods to transmit and receive information, including confidential information, between KPMG LLP (KPMG) and the Company and between KPMG and outside specialists or other entities engaged by either KPMG or the Company. The Company acknowledges that e-mail travels over the public Internet, which is not a secure means of communication and, thus, confidentiality of the transmitted information could be compromised through no fault of KPMG.



Winn-Dixie Stores. Inc.
February 25, 2005
Page 11

KPMG will employ commercially reasonable efforts and take appropriate precautions to protect the privacy and confidentiality of transmitted information.

Further, for purposes of the services described in this letter only, the Company hereby grants to KPMG a limited, revocable, non-exclusive, non-transferable, paid up and royalty-free license, without right of sublicense, to use all names, logos, trademarks and service marks of the Company solely for presentations or reports to the Company or for internal KPMG presentations and intranet sites.

KPMG is a limited liability partnership comprising both certified public accountants and certain principals who are not licensed as certified public accountants. Such principals may participate in the engagements to provide the services described in this letter.

Without our prior written approval, the Company will not solicit for employment. nor will the Company hire. any current or former partner or any professional employee of KPMG LLP or any of its affiliated member firms. in a financial reporting oversight role (as defined in the SEC independence rules) if such partner or professional employee previously participated in the audit of the Company's consolidated financial statements or quarterly review procedures until the applicable "cooling off" period under the SEC independence rules has expired. That period would commence with the latest date on which the individual participated in the annual audit or quarterly review procedures and would expire upon the filing by the Company of its Form 10-K for the succeeding fiscal year.

*Work Paper Access By Regulators and Others*

The work papers for this engagement are the property of KPMG. In the event KPMG is requested pursuant to subpoena or other legal process to produce its documents relating to this engagement for the Company in judicial or administrative proceedings to which KPMG is not a party. the Company shall reimburse KPMG at standard billing rates for its professional time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

However, we may be requested to make certain work papers available to the PCAOB pursuant to authority given to it by law or regulation. If requested. access to such work papers will be provided under the supervision of KPMG personnel. Furthermore. upon request, we may provide photocopies of selected work papers to the PCAOB. The PCAOB may intend. or decide. to distribute the photocopies or information contained therein to others, including the SEC. We agree to communicate to you on a timely basis any requests by the PCAOB for direct contact with members of the Audit Committee.



Winn-Dixie Stores. Inc.
February 25, 2005
Page 12

*Additional Reports and Fees for Services*

In addition. fees for any special audit-related projects, such as research and/or consultation on special business or financial issues. will be billed separately from the audit fees for professional services set forth in Appendix I and may be subject to written arrangements supplemental to those in this letter.

* * * *

Pursuant to our arrangement as reflected in this letter we will provide the services set forth in Appendix I for each of its subsequent fiscal years until either the audit committee or we terminate this agreement. or mutually agree to the modification of its terms. The fees for each subsequent year will be annually subject to negotiation and approval by the Audit Committee.

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign and return it to us.

Very truly yours,

KPMG LLP

R. Travis Storey
*Partner*


cc:  *Audit Committee*



Winn-Dixie Stores, Inc.
February 25, 2005
Page 13


## ACCEPTED:

**Winn-Dixie Stores, Inc.**

_____

Mr. Edward Mehrer
*Chairman of the Audit Committee*


_____

Bennett L. Nussbaum
*Senior Vice President and Chief Financial Officer*



Winn-Dixie Stores, Inc.
February 25, 2005
Page 14

Appendix I

## Fees for Services

Based upon our discussions with and representations of management, our fees for services we will perform are estimated as follows:

Accounting and Tax Advisory:

| | |
|---|---|
| Partners | $700 - $600 |
| Directors/Senior Managers/Managers | $625 - $425 |
| Senior/Staff Accountants | $375 - $220 |
| Paraprofessionals | $150 - $100 |

With respect to this engagement, we have agreed to apply a one-time discount to our fees as determined under the above rate structure:

- 25% for audit/review of annual/quarterly financial statements required to be filed with the Securities and Exchange Commission
- 15% for audit of the Company's Internal Control Over Financial Reporting (ICOFR) in accordance with management's responsibilities under Section 404 of the Sarbanes-Oxley Act.
- 10% for accounting research and consultation and all other Accounting, Auditing & Risk Advisory Services
- 20% for review of and assistance in the preparation and filing of any tax returns
- 10% for all other tax advisory services

In addition we will bill for reimbursement of expenses as incurred. Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to the client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges which may be charged to clients.



Winn-Dixie Stores, Inc.
February 25, 2005
Page 15

**Appendix II**

Dispute Resolution Procedures

The following procedures are the sole methodologies to be used to resolve any controversy or claim ("dispute"). If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

*Mediation*

Any party may request mediation of a dispute by providing a written Request for Mediation to the other party or parties. The mediator, as well as the time and place of the mediation, shall be selected by agreement of the parties. Absent any other agreement to the contrary, the parties agree to proceed in mediation using the CPR Mediation Procedures (effective April 1, 1998) issued by the Center for Public Resources, with the exception of paragraph 2 which shall not apply to any mediation conducted pursuant to this agreement. As provided in the CPR Mediation Procedures, the mediation shall be conducted as specified by the mediator and as agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties.

*Arbitration*

Arbitration shall be used to settle the following disputes: (1) any dispute not resolved by mediation 90 days after the issuance by one of the parties of a written Request for Mediation (or, if the parties have agreed to enter or extend the mediation, for such longer period as the parties may agree) or (2) any dispute in which a party declares, more than 30 days after receipt of a written Request for Mediation, mediation to be inappropriate to resolve that dispute and initiates a Request for Arbitration. Once commenced, the arbitration will be conducted either (1) in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("CPR Arbitration Rules") as in effect on the date of the engagement letter or contract between the parties, or (2) in accordance with other rules and procedures as the parties may designate by mutual agreement. In the event of a conflict, the provisions of this document and the CPR Arbitration Rules will control.

Exhibit "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., et al.,** | : | **Case No. 05-11063 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

------------------------------------------------------------x

## DECLARATION OF R. TRAVIS STOREY
## AND DISCLOSURE OF COMPENSATION

I, R. Travis Storey, hereby state and declare as follows:

> 1.    I am a Certified Public Accountant and a partner of KPMG LLP, a

professional services firm.  KPMG LLP is the United States member firm of KPMG

International, a Swiss cooperative.  I submit this declaration on behalf of KPMG LLP in

support of the application (the "Application")[2] of Winn-Dixie Stores, Inc.. et. al, as debtors

and debtors-in-possession (collectively, the "Debtors"), for entry of an order, pursuant to

section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules for the Southern district

of New York (the "Local Bankruptcy Rules"), authorizing the retention and employment of

KPMG LLP as auditors, accountants, and tax advisors to the Debtors.  I have personal

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

[2]    Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Application.

knowledge of the matters set forth herein, and if called as a witness, would testify competently thereto.[3]

## QUALIFICATIONS OF PROFESSIONALS

2.      KPMG LLP is a firm of independent public accountants as defined under the Code of Professional Conduct of the American Institute of Certified Public Accountants.

3.      The Debtors have selected KPMG LLP as their auditors, accountants, and tax advisors because of the firm's diverse experience and extensive knowledge in the fields of accounting, taxation and bankruptcy.

4.      The Debtors have employed KPMG LLP as auditors, accountants, and tax advisors for many years.  By virtue of its prior engagement, KPMG LLP is familiar with the books, records, financial information and other data maintained by the Debtors and is qualified to continue to provide auditing, accounting, and tax services to the Debtors.  As such, retaining KPMG LLP is an efficient and cost effective manner in which the Debtors may obtain the requisite services.

5.      In addition, the Debtors need assistance in collecting, analyzing and presenting accounting, financial and other information in relation to these chapter 11 cases. KPMG LLP has considerable experience with rendering such services to debtors and other parties in numerous chapter 11 cases.  As such, KPMG LLP is qualified to perform the work required in these cases.

---

[3]      Certain of the disclosures herein relate to matters within the knowledge of other professionals at KPMG LLP.

## SERVICES TO BE RENDERED

6.     I anticipate that KPMG LLP may render the following services in

these cases:

**(a) Accounting, Auditing & Risk Advisory Services**

i.     Audit/Review of annual/quarterly financial statements required to be filed with the Securities and Exchange Commission;

ii.     Analysis of accounting issues and advice to the Debtors' management regarding the proper accounting treatment of events;

iii.     Read and comment on the Debtors' documents, if any, required to be filed with the Securities and Exchange Commission;

iv.     Audit of the financial statements of the Debtors' Employee Benefit Plans as required by the Employee Retirement Income Security Act;

v.     Audit of the Debtors' Internal Control Over Financial Reporting (ICOFR) in accordance with management's responsibilities under Section 404 of the Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act")[4];

vi.     Review of bankruptcy accounting procedures as required by the Bankruptcy Code and generally accepted accounting principles, including, but not limited to, Statement of Position 90-7;

vii.     Review of reports or filings as required by the Bankruptcy Court or the Office of the United States Trustee including monthly operating reports;

**(b)     Tax Advisory Services**

viii.     Review of and assistance in the preparation and filing of any tax returns;

ix.     Advice and assistance to the Debtors regarding tax planning issues, including, but not limited to, assistance in estimating net operating loss carryforwards, international taxes, and state and local taxes;

---

[4]     Upon information and belief, the Debtors employ the services of several professionals in connection with Sarbanes-Oxley Act compliance.  The services proposed to be provided by KPMG are not duplicative of those provided to the Debtors by other professionals.  Moreover, KPMG will consult with the Debtors and, as necessary, the Debtors' professionals throughout the pendency of these cases to ensure that there will be no duplication of services provided to the Debtors.

x.     Assistance regarding transaction taxes, state and local sales and use taxes;

xi.     Assistance regarding tax matters related to the Debtors' pension plans;

xii.     Assistance regarding real and personal property tax matters, including, but not limited to, review of real and personal property tax records, negotiation of values with appraisal authorities, preparation and presentation of appeals to local taxing jurisdictions and assistance in litigation of property tax appeals;

xiii.     Assistance regarding any existing or future Internal Revenue Service ("IRS"), state and/or local tax examinations;

xiv.     Advice and assistance on the tax consequences of proposed plans of reorganization, including, but not limited to, assistance in the preparation of IRS ruling requests regarding the future tax consequences of alternative reorganization structures; and

xv.     Other consulting, advice, research, planning or analysis regarding tax issues as may be requested from time to time.

7.     Subject to this Court's approval of the Application and letter agreement between the Debtors and KPMG LLP (the "Agreement"), dated February 25, 2005 and attached to the Application as Exhibit A, KPMG LLP is willing to serve as the Debtors' auditors, accountants, and tax advisors and to perform the services described above.

## DISINTERESTEDNESS OF PROFESSIONALS

8.     Based upon information supplied by the Debtors, KPMG LLP searched its client database from 7/1/1999 and forward to identify any connection or relationship with the following entities:

a.     The Debtors and their affiliates;

b.     The Debtors' officers and directors;

c.     The equity shareholders known to own more than twenty percent (20%) of outstanding stock;

d.     The Debtors' major secured creditors;

e.     The Debtors' fifty (50) largest unsecured creditors on a consolidated basis;

-4-

f.      Counsel to the Debtors;

g.      Financial advisors and counsel to certain other parties-in-interest; and

h.      Members of the Creditors Committee.

The names provided to KPMG LLP by the Debtors are set forth in Attachment 1 hereto.

9.      KPMG LLP does not hold or represent an interest adverse to the estate of any of the Debtors.

10.     KPMG LLP is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b), of the Bankruptcy Code in that, to the best of my information and belief, KPMG LLP:

a.      is not a creditor, an equity security holder, or an insider of any of the Debtors;

b.      is not and was not an investment banker for any outstanding security of any of the Debtors;

c.      has not been within three years before the commencement of these chapter 11 cases, an investment banker for a security of any of the Debtors, or an attorney for such investment banker in connection with the offer, sale or issuance of a security of any of the Debtors;

d.      is not and was not, within two years before the commencement of these chapter 11 cases, a director, officer or employee of any of the Debtors or of an investment banker of any of the Debtors; and

e.      does not have an interest materially adverse to the interest of any of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in any of the Debtors or an investment banker of any of the Debtors or for any other reason.

11.     KPMG LLP is not a creditor of the Debtors. Since January 1, 2004, the Debtors have paid KPMG LLP $1,785,498 in fees for services rendered and expenses incurred. As of the Petition Date, KPMG LLP was not owed any amounts for services rendered to the Debtors. On February 21, 2005, KPMG LLP also received a $500,000

advance payment retainer from the Debtors. The full amount of the retainer is available to be applied against fees and expenses relating to services rendered by KPMG LLP postpetition.

12.     To the best of my knowledge, except as set forth herein and in Attachment 2 hereto and incorporated herein by reference, (a) KPMG LLP has no connections with the creditors, any other party-in-interest, or their respective attorneys and accountants; and (b) the KPMG LLP partners and professionals working on this matter are not relatives of the United States Trustee of the Southern District of New York or of any known employee in the office thereof, or any United States Bankruptcy Judge of the Southern District of New York.

13.     KPMG LLP has in the past been retained by, and presently and likely in the future will provide services for, certain creditors of the Debtors, other parties-in-interest, and their respective attorneys and accountants in matters unrelated to such parties' claims against the Debtors or interests in these chapter 11 cases. KPMG LLP currently performs or has previously performed such services for the entities listed in Attachment 2.

14.     KPMG LLP has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to these chapter 11 cases.

15.     KPMG LLP is the United States member firm of KPMG International, a Swiss cooperative of member firms, each a separate legal entity, located worldwide. Only KPMG LLP is being retained in this matter. KPMG LLP has not performed a comprehensive global search for potential relationships between the other KPMG International member firms and the Debtors, other parties-in-interest, and their respective attorneys and accountants. KPMG LLP cannot assure that an engagement will not be

accepted by a foreign member firm of KPMG International for another party that may bear
upon KPMG LLP's engagement by the Debtors.

16.     As part of its practice, KPMG LLP appears in many cases,
proceedings, and transactions involving many different law firms, financial consultants, and
investment bankers in matters unrelated to these bankruptcy cases. KPMG LLP has not
identified any material relationships or connections with any law firm, financial consultant or
investment banker involved in these chapter 11 cases that would cause it to be adverse to any
of the Debtors, the Debtors' estates, any creditor or any other party-in-interest.

17.     If and when additional information becomes available with respect to
any other relationships which may exist between KPMG LLP, foreign member firms of
KPMG International, or their partners and professionals and the Debtors, creditors, or any
other parties-in-interest which may affect these cases, supplemental declarations describing
such information shall be filed with this Court.

## PROFESSIONAL COMPENSATION

18.     Consistent with the Agreement, KPMG LLP's requested compensation
for professional services rendered to the Debtors will be based upon the hours actually
expended by each assigned staff member at each staff member's hourly billing rate, except as
noted below. The Debtors have agreed to compensate KPMG LLP for professional services
rendered at its normal and customary hourly rates.

19.     In the normal course of business, KPMG LLP revises its hourly rates
on October 1 of each year. With respect to services provided in subsequent fiscal years,
KPMG LLP requests that, subject to the Debtors' future agreement, the rates listed below be
revised to the hourly rates that will be in effect at such time. The customary hourly rates for

auditing, accounting, tax advisory and consulting services to be rendered by KPMG LLP and applicable herein are as follows:

Accounting and Tax Advisory:

| | |
|---|---|
| Partners | $700 - $600 |
| Directors/Senior Managers/Managers | $625 - $425 |
| Senior/Staff Accountants | $375 - $220 |
| Paraprofessionals | $150 - $100 |

20.     The rates included in this Declaration are KPMG LLP's normal and customary rates for matters of this sort.  With respect to this engagement, we have agreed to apply a one-time discount to our fees in this matter as determined under the above rate structure:

- 25% for audit/review of annual/quarterly financial statements required to be filed with the Securities and Exchange Commission
- 15% for audit of the Debtors' Internal Control Over Financial Reporting (ICOFR) in accordance with management's responsibilities under Section 404 of the Sarbanes-Oxley Act.[5]
- 10% for all other Accounting, Auditing & Risk Advisory Services
- 20% for review of and assistance in the preparation and filing of any tax returns
- 10% for all other tax advisory services.

21.     KPMG LLP will also seek reimbursement for necessary expenses incurred, which shall include travel, photocopying, delivery service, postage, vendor charges and other out-of-pocket expenses incurred in providing professional services.

22.     KPMG LLP intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in

-8-

accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. KPMG LLP has agreed to accept as compensation such sums as may be allowed by the Court. KPMG LLP understands that interim and final fee awards are subject to approval by this Court.

23.    KPMG LLP has received an advance payment retainer of $500,000 from the Debtors. None of the retainer has been applied to fees and expenses incurred prior to the Petition Date. The retainer will be held by KPMG LLP and applied against postpetition fees and expenses, to the extent allowed by the Court. KPMG LLP is not a prepetition creditor of the Debtors.

24.    In accordance with section 504 of the Bankruptcy Code, I hereby state that there is no agreement or understanding between KPMG LLP and any other entity, other than a member, partner or regular associate of KPMG LLP, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

25.    This declaration is provided in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rule 2014.

26.    I have read the Application, and, to the best of my knowledge, information and belief, the contents of said Application are true and correct.

**[Remainder of Page Intentionally Left Blank]**

---

[5]    As previously indicated, the Sarbanes-Oxley Act compliance services proposed to be provided to the Debtors by KPMG are not duplicative of services provided by other professionals to the Debtors.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on March 22, 2005, at Jacksonville, Florida.

/s/ R. Travis Storey_____
R. Travis Storey
KPMG LLP
One Independent Drive, Suite 2700
Jacksonville, FL 32202

# ATTACHMENT 1

## List of Interested Parties

**Debtors**
Astor Products, Inc.
Crackin' Good, Inc
Deep South Distributors, Inc.
Deep South Products, Inc.
Dixie Darling Bakers, Inc
Dixie-Home Stores, Inc.
Dixie Packers, Inc.
Dixie Spirits, Inc.
Dixie Stores, Inc.
Economy Wholesale Distributors, Inc.
Foodway Stores, Inc.
Kwik Chek Supermarkets, Inc
Sunbelt Products, Inc.
Superior Food Company
Table Supply Food Stores Co., Inc.
WD Brand Prestige Steaks, Inc.
Winn-Dixie Handyman, Inc.
Winn-Dixie Logistics, Inc.
Winn-Dixie Montgomery, Inc
Winn-Dixie Procurement, Inc.
Winn-Dixie Raleigh, Inc.
Winn-Dixie Stores, Inc.
Winn-Dixie Supermarkets, Inc.

**Non-Debtor Affiliates**
Bahamas Supermarkets Limited
The City Meat Markets Limited
Dixon Realty Trust 1999-1
W-D (Bahamas) Limited
WIN General Insurance, Inc.

**Current Officers and Directors**
John E. Anderson
Laurence B. Appel
D. H. Bitter
J. R. Brogan
D. Michael Byrum
K. B. Cherry
John H. Dasburg
G. L. Estill
T. Wayne Davis
Tillie K. Fowler
Kellie D. Hardee
David F. Henry
H. I. Hopkins, Jr.
Michael J Istre
J. J. James
Richard C. Judd
P. J. Kennedy
Bryan C. S Knowles
D. G. Lafever
Peter L. Lynch
D J. Maroney
Mark W. Matta
J. P. Medina
Edward W. Mehrer, Jr.
Julia B. North
Paul Novak
Bennett L. Nussbaum
E. L. Rainwater
Carleton T. Rider

J. J. Roy
C. S. Rubio
Mark A. Sellers
Dennis M. Sheehan
Bruce R. Souder

H. Jay Skelton
Charles P. Stephens
P. L. Tiberio
Ronald Townsend
H. S. Wadford
D. M. Young

**Former Officers and Directors**
Keva M Bethel
A Dano Davis
Judith W. Dixon
L. B. Johnson
Frank Lazaran
Richard P. McCook
D. A. Moore, Jr.
Barry J Rassin
K. A. Romeo
Allen R. Rowland
Karen E. Salem
Hugh G. Sands
John R. Sheehan

**Senior Secured Lenders**
Amsouth Bank
Bank One
Congress Financial Corporation
(Florida), n/k/a Wachovia National
Bank, N.A.
Fleet Retail Group, Inc.
General Electric Capital Corporation
GMAC Commercial Finance LLC
Israel Discount Bank
Merrill Lynch Capital
National City Business Credit, Inc.
PNC Business Credit
RZB Finance LLC
Siemens Financial Services, Inc.
SunTrust Bank
The CIT Group/Business Credit, Inc.
UBS AG, Stamford Branch
Wachovia Bank, National Association
Webster Business Credit Corp
Wells Fargo Foothill LLC

**Mortgage Holders**
Lutheran Brotherhood

**Top 50 Unsecured Trade Creditors on
a Consolidated Basis as of February
18, 2005**
Alberto Culver USA, Inc.
Anderson News LLC
Bayer Corp
Campbell Soup Co.
CH Robinson Worldwide Inc

Clorox Sales Co - KPD
Coca Cola Bottling Co
Coca Cola Bottling Works
Conagra Grocery Products Co.
Del Monte Foods USA
DLJ Produce Inc
Edy's Grand Ice Cream
Fin Tech
Florida Coca Cola
Front End Services Corp.
General Electric Company
General Mills Inc.
Georgia Pacific Corp.
Gerber Products Company
Gillette Company
Good Humor Breyers Ice Cream
Gourmet Award Foods Mid Atlantic
Gulf Coast Coca-Cola Bott ing Co.
Hershey Chocolate USA
Johnson & Johnson
Keebler Company
Kellogg Sales Company
Kimberly Clark
Konica Photo Imaging
Kraft (Kraft Foods, Kraft P zza,
Nabisco)
Louisiana Coca Cola
McKee Foods Corporation
Nestle (Nestle Usa, Nestle Purina, Nestle
Water)
Pepperidge Farm Inc-Cookies
Pepsico. & Affiliates
Powerhouse Produce LLC
Procter & Gamble Dist Co.
Riverdale Farms
Ross Laboratories
Safe Harbor Seafood
Sanderson Farms
Sara Lee Foods
Schering Plough Health Care
Schreiber Foods Inc
Smith Kline Beecham
Unilever (Hpc Usa & Best Foods)
US Bank Corporation
Warner Lambert Consumer Group
Wyeth Consumer Healthcare

**Parties with Filed UCC Financing
Statements**
Bennett's Leasing Incorporated
Cargill, Incorporated
Cisco Systems Capital Corporation
Computer Leasing Company of
Michigan, Inc.
EMC Corporation
Fidelity Leasing, Inc.
Fleet Capital Leasing - Technology
Finance
Fleet Leasing Corporation
GATX Technology Services
Corporation
Healthguard Finance Corporation

Healthguard International, Inc.
IBM Credit Corporation
IBM Credit LLC
Ikon Office Solutions Inc.
Konica Photo Imaging
Konica USA Inc
National City Bank of MI/IL
NCR Corporation
Norse Dairy Systems
Storagetek Financial Services
Corporation
US Bancorp
Xpedex - Division of International Paper

**Indenture Trustee**
Wilmington Trust Company

**Senior Unsecured Noteholders and
Related Funds and Administrators**
American Bond Fund of America
American Capital World Bond Fund
American Funds
American Funds High Income Trust
American Funds Insurance – Asset
Allocation
American Funds Insurance
American Funds Smallcap World Fund
American Memorial Life Insurance Co.
Amerihealth Insurance Company of New
Jersey
Ameriprime Funds
ANIA High Yield Bond Portfolio
Arnhold & S Bleichroeder Advisers,
LLC
Assurant Inc
Austin Investment Management Co.
Aviva Life Insurance Company
Capital Research and Management
Company
Clariden US High Yield Bond Fund
Colonial Intermarket Income Trust
Columbia Management Advisors
CGU Insurance Group
Credit Suisse Asset Management Ltd.
Credit Suisse FS High Yield Bond Fund
Credit Suisse High Yield Bond Fund
Delphi Financial Group
Denver Investment Advisors Inc.
DLJ Investment Management Corp.
Dynamic American Value
Dynamic American Value Fund
First Eagle Funds
First Eagle US Value Fund
First Fortis Life Insurance Company
Fortis Benefits Insurance Company
Fortis Group
Fortis Insurance Company
Fringe Benefit Life Insurance Company
Goodman & Co. Investment Counsel
High Yield Plus Fund
IMS Capital Management
IMS Strategic Income Fund
Independence Blue Cross
John Alden Life Insurance Company
Julius Meinl Investment Gmbh
Liberty Funds Distributor, Inc.
Meinl Capitol
PHUP Training

Prudential Investments Fund
Management LLC
QCC Insurance Company
Regence Blue Shield
Regence BlueCross BlueShield of
Oregon
Regence BlueCross BlueShield of Utah
Reliance Standard Life Insurance
Company
Securities Management and Research,
Inc.
The Vanguard Group
Vanguard Group Incorporated
Vanguard High-Yield Corporate Bond
Portfolio
Vanguard VVIF HighYield Bond Fund
Wellington Management Co  LLP
Westcore Flexible Income Fund
Westcore Funds

**Lessors of Real Property**
100 Executive Drive LP
11010 Seventh Ave Investments
145 Associates Ltd
17161 N W 27th Avenue LLC
1954 Unionport Associates LLC
1980 Unionport Associates LLC
1997 Properties
2525 East Hillsborough Ave LLC
40/86 Mortgage Capital Inc
440 Group Ltd
4JS Family LLLC
5 Points West Shopping Center
51st Street & 8th Ave Corp
7595 Centurion Parkway LLC
9 SC Associates
98 Palms Ltd
99 Eglin Ltd
A F I Management
A G Edwards
A J & C Garfunkel
A L S Telfair Plaza
Ackerberg Group
Ackerman-Midtown Assoc
Acorn Assoc Ltd
Acron USA Fonds Winn Dixie LP
Adams Realty
Aegis Waterford LLC
Aegon USA Realty Advisors Inc
AEI Income & Growth Fund XXI L
AEI Net Lease Income & Growth
AEM Stiftung LLC
Agree Limited Partnership
Aintsar Realty Corp
Airkaman Of Jacksonville Inc
Al Bellotto Inc
Alabama '83 Center Associates
Albert J Cirignano Sr
Albion Pacific Prop Resources
Alfa Mutual Fire Ins Co
Allard LLC
Allied Capital Corporation
Allied Capital REIT Inc
Altamonte SSG Inc
Alvin B Chan Family LP
Alvin B Chan Inc
Alvyn L Woods
Amelia Plaza Shopping Center

American Commercial Realty
American Federal Properties
American Mortgage & Realty Cor
American Paper Box Company Inc
American Plaza Ltd Partnership
American United Life Ins Co
Americana East Investments Inc
Ansel Properties Inc
Applewood Shopping Center
Arcad a FL Diversey West
Arco Realty Company
Arlington Properties Inc
ARS Investment Corporation
Asbury Commons Ltd
Ashy-Brown Gonzales
August Urbanek Investments
Avon Square Ltd
Avondale Square Limited
Azalea Management And Leasing
Azalea Shopping Center
B V Belk Jr
Bainbridge Associates
Baker & Baker
Bakersmith Corners LLC
Banc One
Bank Midwest
Bank Of New York
Bardstown SC LLC
Barlind Enterprises
Barret. Crossing Shopping Cent
Baumgardner-Hogan I LLC
Baxley Zamagias Lp
Baylanding Inc
Bayview Loan Servicing LLC
Beachwalk Centre II LLC
Bedford Avenue Realty Inc
Beer Wells Real Estate Service
Belco Enterprises
Belk Investments
Belleview Square Corp
Belmart Inc
Benderson 85-1 Trust And Wayne
Benderson Trust & Wayne Ruben
Benjamin Adam Setzer As Truste
Bennett V York
BEP I  Limited Partnership
Bergeron WD Palmetto LLC
BG Highlands LLC
BG Turfway LLC
BHBS Inc
BHR LLC
Big Pine Shopping Center L.C
Bill Agapion
Bird Square Plaza Management I
Birmingham Realty Co
Blaine Lake LLC
Blanchard and Calhoun Real Est
Blue Angel Crossings
Bob Neill & Associates
Bogalusa Shopping Center Co
Bonners Point LLC
Bordeaux Center Inc
Bowdon Square LLC
Boyd L Hyder
Boynton Lakes Plaza
Brandon Center South
Brandywine Plaza Ltd
Brent Lance Trager

Brierwood Village Plaza
Bright-Meyers Dublin Assoc
Broad Street Station S.C.,LLC
Broadmoor Development Co
Brookhaven Retail LLC
Brookwood Flamingo Partners Lp
Brookwood LLC
Brown Investment Properties
Brown Noltemeyer Company
BT Marietta LLC
Bundy New Orleans Co LLC
Bunkie Investment Co LLC
Burlington Associates Ltd Prt
BW Dix Inc
BW Treasure Inc
Byars & Co Inc
C & A Ltd, Lc
C C Altamonte Joint Venture
Ca New Fixed Rate Partnership
Ca New Plan Venture Fund Louis
Cadillac Partnership
Caffery Center LLC
Caldwell Realty & Investment C
California Club Mall
Callahan Plaza Shopping Center
Cameron Edenton Co
Cameron Sanford Company LLC
Camilla Marketplace Associates
Cane River Shopping Cen
Capco 1998 D-7 Arlington Cente
Capital Advisors Inc
Capital Development Company
Capital Properties Associates
Capmark Services LP
Cardinal Entities Company LLC
Carl Dupuis
Carolina Enterprises Inc
Casselsquare LLC
Casto Investments Co Ltd
Cayce Marketplace LP
CC Realty Intermediate Fund I
CDC Paying Agent LLC
Cedar Creek Crossing Associate
Cedar Mountain Village
Cedar Springs Ctr Assocs
Central Progressive Bank
Central Texas Shopping
Centrex Properties Inc
Century Management And
CFG Limited
Chambers Square LLC
Chapel Trail Associates Ltd
Chapin Development Co
Charles Simon Trustee Of Same
Charleston Square Inc Bank Of
CHK & Associates
Cityview LLC
Civic Center Station Ltd
Clayton Crossings LLC
Clearlake Square
Cleveland Marketplace Ltd
Cliffdale Corner Inc
Clinton House Company
CMC Real Estate Program
Collett Management LLC
Collins & Aikman
Collins Pointe Shopping Center
Colonial Development Co LLC

Colonial Properties Services
Colonial Properties Trust
Columbia Marketplace LLC
Columbus Life Insurance Co
Comke Inc
Commercial Leasing One
Commercial Leasing Two
Commercial Net Lease Realty Inc.
Commodore Realty Inc
Concire Centers Inc
Concord Advantage Ii LP
Conseco Mortgage Capital Inc
Constellation Apartments
Cooper Smolen Joint Venture
Coralwood Shopping Center
Cordova Collection Lp
Country Club Centre LLC
CPG Finance I LLC
CPM Associates LP
Crawford Norwood Realtors Inc
Crenshaw-Singleton Properties
Crescent Investment Corp
Crest Haven LLC
Crestview Marketplace LLC
Cross County Associates LP
Crossing Of Orlando Ltd
Crowder Family Joint Venture
Crown Liquors Broward In
Crump Investments Ltd
Crystal Beach Acquistion LP
Crystal Lake At Orlando
Curry Ford LP
Cypress Run LLC
D R Plaza Ltd
Dahlem Enterprises Inc
Dairy Plaza Associates Ltd
Dalraida Properties Inc
Daniel G Kamin
Daniel H Case And
Dauksch Family Partnership
Davie Plaza Limited Partnership
Davis Mill Station
Day Properties LLC
DDR Downrent LLC
DDR MDT Carillon Place LLC
Debary Common Shopping Center
Decatur Realty LLC
Deerfield Company Inc
Deerfoot Marketplace LLC
Defuniak Square Partners Ltd
Del Fair Inc
Del Mar Shopping Center
Delnice Corp N.V.
Delta Interest Lc
Delta Plaza LLC
Deltona Assoc Ltd
DEM Partnership
Dept of Finance State of Alabama
Deutsche Bank f/k/a Bankers Trust
Company
Devcon Enterprises Inc
Dickinson Logan Todd & Barber
DMI Agent For IDR Jr LLR Jr &
Downtown Destin S/C
Downtown Two LLC
DPJ Company Limited
Dr Ralph Dayan
Drake Rental Account

Drinkard Development
Duckworth Morris Realty
Durham Plaza Associates
E & A Southeast LP
E and A Aquisition Two LP
East Partners Ltd
Eastdale Square LLC
Eastern Retail Holdings Lp
Eastgate Center LLC
Eastgate Investors LLC
Ebinport Assoc
EBR Partnership
Eckstein Properties LLC
Ed Street Dev Co
Eden Meadow Greens Associates
Edens & Avant Inc
Edens & Avant Properties LP
EIG Gordon Village LLC
EIG Hampton Square LLC
Elfers Square Center Inc
Eliot Properties
Elkmont Associates
Elston/Leetsdale LLC
Englewood Village LLC
English Village LLC
Equity Assoc
Equity One (Delta) Inc
Equity One (Hunters Creek)Inc
Equity One (Lantana) Inc
Equity One (Pointe Royale) Inc
Equity One (Summerlin) Inc
Equity One (West Lake) Inc
Equity One Alpha Inc
Equity One Commonwealth Inc
Equity One Inc
Equity One Monument Pointe Inc
Ernst Properties, Inc
Ervin & Susanne Bard
Euclid Warehouses, Inc
Eugene M Mclain
Eupora Shopping Center
Eutis Mortgage Corporation
Evangeline Life Insurance Co
Excel Realty Partners LP
F R C LLC VII
Fairfield Partners LP
Fairway Food Stores
First National Bank
First Republic Corp of America
First Security Bank
First Security Bank Natl Assoc
First Union National Bank
First Union Wholesale Lockbox
First Westgate Mall LP
Flag Bank
Flagler Retail Associates Ltd
Flamingo East Ltd
Flint Crossing LLC
Florida Dickens Associates Ltd
FMV Associates
Folmer & Associates
Foothills Partnership
Fountain Columbus Assoc LLC
Four Florida Shopping Centers
Francine Trager Kempner
Francis Carrington
Frank D Boren And Gail F Boren
Frank W Guilford Jr Trustee

FRO LLC VIII
FU/WD Opa Locka, LLC
FU/WD Atlanta, LLC
Fury's Ferry Shoppes
FWI 16 LLC
FWI 20 LLC
FWI 23 LLC
FWI 5 LLC
G H I of West Palm Beach LLC
Gad & Asher Realty Ltd
Galileo Cmb T1 HI TX LP
Galt Ocean Marketplace
Gardens Park Plaza 219
Gates Of St Johns LLC
Gator Carriage Partners Ltd
Gator Jacaranda Ltd
Gator Linton Partners Ltd
Gehr Development Florida LLC
Gem Warwick LLC
General Electric Business Asse
General Electric Capital Business
Genoa Associates LLC
Gentilly Square
George B Nalley Jr
George C Walker
George Chen
George Chen Formosa Developers
George D Zamias
George Dewrell
GLA LLC
Glenwood Midway Co LLC
Glimcher Properties Limited
Glynn Enterprises LLC
Goodings Supermarkets Inc
Gordon K Konrad
Gottlieb Family Trust Houma Ll
Graham And Company
Gray - White LLC
GRE Coralwood LP
GRE Properties L L C
Great Oak LLC
Great South Mgmt LLC
Greenville Associates
Greenville Compress Co
Greenville Compress Co
Greenville Grocery LLC
Greenwood Commons Assoc
Greer Plaza Inc
GS II Brook Highland LLC
GS II Jacksonville Regional LL
Gulf Coast Properties
Gulfport Plaza Center Inc
H C Plunkett
H R Orlando LLC
H V McCoy & Company Inc
Haddco Properties Ltd Partners
Hall Investments
Hall Properties Inc
Halpern Enterprises
Halpern Enterprises Inc
Hamilton Square LLC
Hammerdale Inc
Hammonton Partners
Harold G Bagwell
Harvey Lindsay Commercial Real
Hasco Properties
Hayday Inc
Haydel Realty Company Inc

Heathrow Square LLC
Helena Marketplace LLC
Henderson Corporation
Herbert Singer
Heritage Community Bank
Heritage Crossing Associates
Heritage Prop Investment Ltd
Heritage SPE LLC
Heritage Square Assoc
Herman Maisel & Co Inc
Hialeah Fee Commons Ltd
Hialeah Promenade Limited Part
Highland Associates Lp
Highland Commons Boone LLC
Highland Lakes Associates
Highland Sq Shop Center
Hildebran Associates
Hillcrest Shopping Center
Hillsboro-Lyons Investors Ltd
Hilyard Manor Associates LLP
Hobe Sound S C Company Ltd
Holbrook Heritage Hills LP
Homestead Plaza
Homewood Associates Inc
Homosassa Assoc
Houston Centre LLC
Howell Mill Vlge Shpg Ct
HPC Wade Green LLC
Hudson Square Center Inc
Hurtak Family Partnership Ltd
I Reiss & Company
I Reiss and Co as Agent For
ICOS LLC
III T West LLC Marco Island Ma
Imperial Christina Shopping Ct
Independence Square
Indian Creek Crossing E&A LLC
Indian Village Group Inc
Indianapolis Life Ins Co
Indianapolis Life Insurance Co
Indrio Crossings Inc
Inland Southeast Property Mgmt
Interchange Associates Inc
Interwest Capital Corporation
Intracoastal Mall LLC
Invesco Lp
IPF Heights Limited Partnership
IPF/Capital Limited Partnership
IRT Partners LP
IRT Partners LP Equity One Rea
IRT Property Company
Island Plaza LLC
Isram Realty & Management Inc
Ivey Electric Company
J B Levert Land Co Inc
Jack Fiorella Iii
Jamerson Investments
James And Carolyn Sell
JDN Realty Corporation
Jefferson-Pilot Life
JEM Investments Ltd
Jerome H And Faith Pearlman Tr
JKA Enterprises LLC
JNB Company of Virginia LLC
John Benetti Associates
John C Eyster and E Lee Barran
John T Henley et al
JRT Realty Group - TIAA

Jula Trust
Jupiter Palm Assoc
JWV (La) LLC dba Sunshire Sq
K B Properties Inc
Kelle Crossing Texas Lp
Kemer Properties Inc
Kenneth City Partners
Kerbly Partnership
Killen Marteplace LLC
Kimco Development Corp
Kimco University Co Inc
Kingfisher Inc
Kir Augusta 1 044 LLC
Kir Colerain 017 LLC
Kirk Meraux Winn-Dixie LLC
Kite Eagle Creek LLC
KJump Inc
Kmar Corporation
Knightdale Crossing LLC
Kogel Equity
Kotis Properties
KPT Communities LLC
KRG Waterford Lakes LLC
L J Melody & Company
L O L LLC
L W Smith Jr Trust
La Pete Roche Center General
Lafayette Life Insurance Co
Lagrange Marketplace LLC
Lake Jackson Tradng Post
Lake Mary Limited Partnership
Lake Sun Properties Ltd
Lakeland Partners
Lakewood Associates Ltd
Lancaster Community Investors
Land Dade Inc
Landing Station
Landmark Enterprises
Landsouth Partners
Langcale Tire Co
Langston Place
Lapalco Village Shop Cen
Laramie River Bay Limited Part
Larissa Lake June Limited Ptnr
Lasali Pinebrook Associates LP
Lasco Realty LLC
Lauderhill Mall
Laurete Capital
Lawrence M Heard
Leatherman Assoc
Leesburg Bansal LLC
Lehmberg Crossing LLC
Leonard R Setzer
LF Limited Lp & Walnut Street
Libby Cross Station Enterprise
LIF Realty Trust
Life Insurance Co Of George
Lincoln Square Partners LP
Lincoln Trust Company
Linpro Investments Inc
Lisetto Stanish as Trustee
Litchfield Investments Riverwo
LN Piedmont Village LLC
Lockwood Assoc of GA Ltd Ptr
London Associates Ltd
LPI Key West Associates Ltd
LRS General Partnership
Lucy Company Of South Carolina

LW Jog S C Ltd
M & P Shopping Center
Macon Gravlee
Madison Mall Shopping Ctr Inc
Madison Station Properties LLC
Magnolia Park Shopping Center
Main Street Marketplace LLC
Manatee Village Investments Inc
Mandarin Loretto Development
Mar Bay Investments LLC
Marions Hope LLC
Market Place Partners
Market Square Inc
Marketown Investors Inc
Marketplace of Americus LLC
Marketplace of Delray Ltd
Marketplace Shopping Center
Mason Shopping Center Partnership
McComb Associates
McDonough Marketplace Partners
McDuffie Square L P
McNab Plaza Inc
MCW Development Inc
MCW RC FL Highlands LLC
MDC South Wind Ltd
MDC Westgate Ltd
Melbourne Beach LLC
Mellon Trust Of California
Merchants Square Investments L
Meridian Supermarket LLC
Metro International Property
Miami Gardens Acquisition LLC
Michael & Irene Simon
Mid American Management Corp
Mid South Yazoo Lp
Midland Loan Services
Midland Loan Services Inc
Midwest Centers
Milford Station Ltd
Miller Group Properties Corp
Miramar Parkway Plaza LLC
Mitchell Co
Mitchell Mortgage Company LLC
Modern Woodman
Modern Woodmen Of America
Mohatra Inc
Monroeville Center Partners
Moorings of Manatee Inc
Morgan Co
Morris Track Corp & Williston
Morro Palms Shopping Center
Moulton Properties
Mount Castle Properties
Mr E M Amovitz & Mr M Plasker
Mr Hugh M Tarbutton
Mr Malcolm Rosenberg
Mrs Mildred V Gray
Mt Dora Marketplace Ltd
Museum Associates
N K C Properties
N O M Properties Inc
Nalley Construction Co Inc
Naples South Realty Associates
Naranja Lakes Joint Ventures
National Western Insurance Co
National Western Life Insurance
Navarre Square
NB/85 Associates Wayne M Ruben

NDC Asset Management
New Bay Minette LLC
New England Realty Resources
New Plan Excel Realty Trust
New Plan Excel Realty Trust In
New Plan Realty Trust
Newberry Square Shopping Center
Newton Associates
NMB Partners L P
Noble Management Company
Normandy Equities Ltd
North & South Station
North Columbus Crossing Shoppi
North Hixson Marketplace LLC
North Madison Associates Ltd
North Port Village Shopping
Northcross Land & Development
Northeast Plaza Associates
Northern Funds FBO Urbanek Inv
Northside Development Group
Northside Shopping Center
Northway Investments LLC
Northwest Junction Partners
Northwood Oaks LLC Providence
Northwood Plaza LLC
Oakdale Investors Lp
Oaks Shopping Center Inc
Oakwood Village Associates
O'Brien Kiernan Investment Co
Oceanway Plaza Assoc Ltd
Old 97 Inc
Old Kings Highway Assoc
Opal Lee Smith & Sara N Jordan
Orange Grove Shopping Ce
Orix Capital Markets LLC
Orix Real Estate Capital Marke
Orlando Marketplace Limited Pa
PAJ
Palisades Investors LLC
Palm Aire Marketplace LL
Palm Bay West
Palm Beach 2000 Inc
Palm Coast Corners Assoc Lp
Palm Trails Plaza
Palmetto Place Center LLC
Paradise Isle LLC
Park Plaza LLC
Park Plaza Shopping Ctr LLC
Parkland Partnership Lp
Parkview Square Owner Corp
Parkwood Plaza Shopping Center
Parkwood Village Joint Venture
Pass Christian Village
Patricia Or Marshall Weigel
Patton Plaza LLC
Paw Creek Crossing
Peach Orchard Center
Peachtree Parkway Plaza
Pearl Brittain Inc
Pelican Associates
Pell City Marketplace Partners
Peninsula Utilities Inc
Penman Plaza Associates Ltd
Peregine Properties LP
Perimeter Place Associates
Peripety Group Inc c/o Comm P
Phoenix Jr Inc
Pinar Assoc Sc Co Ltd

Pine Island Shopping Center
Pine Plaza
Pinel LP
Pineroots LLC
Pines/Carter
Pinetree Partners Ltd
Pinewood Plaza Associates
Pinson Valley Ltd
Plaza West 15190117351
Pmt Partners V LLC
Pnc Bank Philadelphia
Ponce Realty Company
Ponderosa Center Inc
Popps Ferry Ms Dev
Potter Square Associates
PRB Investments LLC
Premier Plaza Associates LLC
Prestenburg Village Shop Cente
Primax Properties LLC
Prime Shoppes Partners
Primo Justice Properties LLC
Principal Capital Management L
Principal Life Insurance Co
Procacci Commerical Realty Inc
Professional Mortgage Co Inc
Promenades Mall (E&A), LLC
Promventure Limited Partnership
PSI of Louisiana Inc
PSMA, Ltd AP FHA FP FLA. TIC
Quail Roost Associates
Quail Run Village
Quincy Associates Ltd
R & C Associates
R P Burren River LLC
Rab Land & Development Inc
Rainbow Marketplace LLC
Rainbow Springs Ventures Lc
Ralph Merlin Family
Ramco USA Development Inc
Randall Benderson 1993-1 Trust
Randy Roark
Rappaport Management Co
Rayne Plaza Shopping Center
Red Oak Shopping Center LLC
Reef Associates Ltd
Regency Centers Inc
Regency Saving Bank FSB
Regent Investment Corporation
Retail Center Hampton LLC
Retail Management Group Inc
Retreat Village Management Co
Rial Corporation
Richard Ball & Associates
Ridgeview Inc
Riley Place LLC
River Oaks
Rivervalk Plaza Joint Venture
RK Associates
Robert D Powers
Rober G Horsman
Rober. H Palmer Jr
Rober N Rizika
Rober sdale Dev LLC
Rockbridge Place
Roebuck Ventures Ltd
Ronald Benderson 1995 Trust
Rosenyr Corp
Roxborough Associates LLC

Royal & Son
Royal Companies
Royal Homes Inc
Royal Oaks Brandon Partners
Royal Oaks Plaza Inc
Royals O K Lunch Inc
RSSC LLC
Rudco Properties Inc
Rushmore Friendship LLC
Ruth Guest House Inc
Ruth S Smith Snodgrass Aires
S & C Properties
Salem Crossing Shopping Center
Salemo Village Shopping Center
Sam Development Associates LLC
Samuel Oschin Trustee Michael
Sandefur Investments Inc
Sandifer Partnership Ltd
Sandra Mackey
Sarna Enterprises Inc
Sarna Holdings II Inc
Sarna Holdings Inc
Satterfield Plaza T I C
Saufley Field Partners Ltd
Savitar A/M/A SRA/American LLC
Sawicki Realty Co
SCG Management Inc
Schilleci Millbrook SC LLC
School St Crossing LP
Schwartz Family Trust
Scotland Mall Inc
SCP Winter Garden Fl LLC
Scribe Riviera JV
Sea Pea Inc
Sebring Square Ltd
Selig Enterprises Inc
Sendero Commercial Investments
Seven  Springs Plaza LLC
Shades Creek Partners
Shadrall Associates
Shannon Village Shopping Cente
Shepherdsville Mall Assoc Lp
Sherffield Estates Inc
Sheri Trager Weiss
Shields Plaza
Shoals Marketplace LLC
Shoppes @ 104
Shoppes At 18th & Commercial
Shoppes At Lake Avenue Inc
Shoppes Of Liberty Cit LLC
Sidney Kohl Company
Sidney Lefcourt
Simmons & Harris Inc
Situs Servicing Inc
Sizeler Companies
SJS-Woodlake Plaza LP
Skinners Of Jacksonville Inc
SKS Properties LC
Small Properties
Smith Barney Fbo Weinacker's
Snellville Plaza Ltd
Sornu Inc
South Broadway Corp
South Monroe Commons LLC
South Plaza Associates LLC
South Rockdale Shopping Center
South Square Marketplace
South Win Limited Partnership

Southbrook Partners LLC
Southchase Investors LLC
Southeast US Retail Fund LP
Southern Boulevard Corp
Southern Farm Bureau
Southern Farm Bureau Life Ins
Southern Partners
Southern Stores II LLC
Southgate Associates II LP
Southgate Plaza 93 Ltd
Southgate Plaza Associates LLC
Southmark Properties LLC
Southtrust Bank
Southview Square LLC
SPCP Group LLC
Spectrum Walker
Spectrum/Grandview Pines
Spiller Investment Inc
Spishores LLC
Spring Hill Assoc Ltd
Spring Plaza Limited Prtnrshp
Springdale Station Ltd
Springfield Crossing LLC
Springhill Associates LLC
Springland Associates LLC
Springs Corners LLC
SR JLP JAP LLC
SR TCS LLC
SRT Acqustion Corporation
SSKIB Corporation
St Charles Partners
St Johns Commons Owner Corp
St. Stephens Partners
Staunton Plaza Associate
Stiles West Associates Ltd
Stockman & Nalley Partnership
Stonebridge Village
Structured Product Servicing
STW Holdings LLC
Sugarland Shopping Center
Sulphur Springs Partners LLLP
Sumter Crossing Properties Inc
Sun Lake Plaza Inc
Sun West NC III Ptn Lim
Sunburst Properties Corp
Sunset Centres Ltd
Sunset Centres Ltd Partnership
Sunset Station Partners LLC
Sunset West Shopping Plaza
Sunwest NC III Partnerships
Suwanee County Investors LLC
Swiss Re Investors Inc
T K Harris Comm Re Ser
T S Margate Co Ltd
TA/Western LLC (Pom. Mktplce)
Talladega Community Builders
Tappen Properties LP
Tatone Properties Fla Inc
Tavares Assoc Ltd
Taylor Square Venture
Teachers Retirement System
Ted Glasrud Associates Inc
Terra Nova The Realty Assoc Fu
THC LLC
The Market at Byram LLC
The Marketplace LLC
The Schreiber Co Belleview Ass
The Sembler Company

Tifton Mall Inc
Timberlake Station LLC
TL Nguyen LLC
Toulcuse Village Associates
Tower Associates Ltd
Town & Country Shopping Center
Town Square Development
Town'n Country Realty
Trail Plaza
Triangle IV LLLP
Tri-State Commercial Asc
TRL Properties LLC
Troy Marketplace LLC
Trustee Of Trust B
Trustees Of Trust A/C -1
Trustnark National Bank
TS Pierce Sc Co Ltd
TSO Volusia LLC
Tunica Village Partnership
Twelth Street & Washington
Tyrone Gardens LLC
U P SC Ltd
Ullmann Company
United Commercial Mortgage Cor
United Investors Realty
University Crossing
University Tenancy In Common
Urbar America
US Bank Trust Na Corp Trust TF
USPC Portfolio Two LLC
USRF I LLC Glen Lea Shopping C
USRF I LLC Shoppes Of Kildare
Vachlia Inc
Valnco Square
Venetia Village Center
Ventures LLC
Victoria Square Partners LLC
Victory Berryland LLC
Victory Investments Inc
Victory Renner LLC
Vigouroux Development LLC
Villa Rica Retail Properties L
Village Marketplace Of
Village Plaza Inc
Village Royale Properties LLC
Vogel & Vogel Partnership
W D Route 3 Limited
W T H II LLC
Wachovia Securities
Walker LA Commercial
Watel Omega Holdings Lp
Waters & Armenia Plaza
Waters Inc S C Mgmt Trust Acct
Watkins Investment
Wayne Ruben
Waynesville Shopping
WBFV Inc
WCL Five LLC
WD Development LLC
WD Jacksonville Fl LLC
WD Marianna Portfolio LP
WD Milton Portfolio L P
W-D Shelby Partnership
Weavers Corner Jt Venture
Webb/Lexington Ventures #108
Webber Commercial Properties L
Week  Wachee Village Shop Cntr
Weingarten Realty Investors

Wesley Chapel Sc Co Ltd
West Eck Partners LP
West Napoleon Joint Venture
Westfork Plaza
Westgate LLC
Westland Shopping Center LP
Weston Road Shopping Center LL
Westside City Inc
Westwood Shopping Center
WIAB Properties LLC Operating
Wiedemann Square Ltd
Wiedmann Square LLC
Wiggs Realty Co
William H Hall
Willowood Partners Ltd
Winbrook Management Inc
Windsor Place
Windsor Station LC
Windward Partners IV LP
Winyah Village Shopping Ctr
Wiregrass Plaza LLC
Wolfchase Assoc LLC North Palm
Woodberry Plaza E&A LLC
Woodland Village Partnership
WRI/Texla LLC
Xarla Realty LLC
YBD Three Lakes LC
ZSF/WD Bartow, LLC
ZSF/WD Charlotte, LLC
ZSF/WD Clayton, LLC
ZSF/WD Fitzgerald, LLC
ZSF/WD Greenville, LLC
ZSF/WD Hammond, LLC
ZSF/WD High Point, LLC
ZSF/WD Jacksonville, LLC
ZSF/WD Montgomery-31, LLC
ZSF/WD Montgomery-Gunter, LLC
ZSF/WD Opa Locka, LLC
ZSF/WD Orlando, LLC
ZSF/WD Sarasota, LLC
Zuppardo Properties LLC
Zuppardo Real Estate Co
Zurich Structured Finance, Inc.

**Insurance Companies**
ACE American Insurance Co.
ACE Bermuda Insurance, Ltd.
ACE (Illinois Union)
AIG Aviation, Inc.
American Casualty Company of Reading PA
American Guarantee Liability (Zurich)
Arch Insurance Co.
AWAC - Side A DIC (Bermuda)
AWAC (Bermuda)
AXIS (Bermuda)
Axis Surplus Insurance Co.
AXIS US
CNA
Commonwealth Ins Co.
Employers Ins. Co. of Wausau
Federal Insurance Co.
Great American Assurance Company
Hanseatic Ins. Co. (Bermuda)
Houston Casualty Company
Illinois National Insurance Co
Illinois Union Ins. Co.
Lexington Insurance Co.

Liberty Ins. Underwriters, Inc.
Liberty Mutual
Liberty Mutual Insurance Company
Liberty Mutual Insurance Europe Ltd.
Lloyd's of London
Magna Carta Insurance Ltd.
Max Re - Side-A DIC (Bermuda)
Max Re (Bermuda)
Max Re (Bermuda) Ltd.
National Union
National Union Fire Insurance Co.
National Union Fire Insurance Co
Pittsburgh, PA
Quanta Specialty Lines Insurance Company
RLI Insurance Co.
SR Int'l Business Ins. Co. Ltd.
St. Paul Re (Bermuda) Ltd.
St. Paul Fire & Marine Ins. Co.
St Paul Mercury Insurance Co.
Starr Excess (Bermuda)
Starr Excess Liability Ins. Int'l Ltd. (Bermuda)
Starr Excess Liability Insurance International Ltd. (Ireland)
Travelers Indemnity Co. of Illinois
Twin City Fire Insurance Company
WIN General Ins , Inc.
XL Insurance America, Inc.
XL Insurance Ltd. (Bermuda)
XL Specialty Insurance Company
Zurich
Zurich American Ins. Co.

**Publicly Identified Shareholders**
Brandes Investment Partners L.P
Brandes Investment Partners, Inc.
Brandes Worldwide Holdings, L.P.
Charles H. Brandes
Jeffrey A. Busby
Glenn R. Carlson
A. Dano Davis
Robert D. Davis
T. Wayne Davis
Davis Family Special Trust 2004
Davis Family Irrevocable Term Trust
DAVFAM Ltd
DAVFAM II, Ltd.
D.D.I., Inc.
Scott A. Oko, Trustee, Davis Family Special Trust 2004
SIVAD Investors, LLC
SIVAD Investors II, LLC
Charles P. Stephens

**Official Committee of Unsecured Creditors**

R2 Investments, LDC
Deutsche Bank Trust Company Americas
New Plan Excel Realty Trust, Inc.
Kraft Foods Global, Inc
Pepsico & Subsidiaries
OCM Opportunities Fund V, L.P.
Capital Research & Management Company

**ATTACHMENT 2**

This information is being provided in connection with the Declaration of R. Travis Storey in support the Application for Order Authorizing the Retention and Employment of KPMG LLP as Auditors, Accountants, and Tax advisors to the Debtors.  KPMG LLP currently performs (or has previously performed) accounting, tax advisory or consulting services in matters unrelated to these chapter 11 cases for the following entities, or has connections or relationships with the following entities:

Exhibit B

| | | |
|---|---|---|
| Astor Products, Inc | Davis Family Irrevocable Term Trust | Gerber Products Company |
| Crackin' Good, Inc. | Robert D. Davis | Gillette Company |
| Deep South Distributors, Inc | Amsouth Bank | Gourmet Award Foods Mid Atlantic |
| Deep South Products, Inc. | Bank One | Kellogg Sales Company |
| | Congress Financial Corporation (Florida), n/k/a | |
| Dixie Darling Bakers, Inc | Wachovia National Bank, N.A. | Kimberly Clark |
| Dixie-Home Stores, Inc | General Electric Capital Corporation | Konica Photo Imaging |
| Dixie Packers, Inc | GMAC Commercial Finance LLC | Kraft (Kraf Foods, Kraft Pizza, Nabisco) |
| Dixie Spirits, Inc | Israel Discount Bank | Nestle (Nestle Usa, Nestle Purina, Nestle Water) |
| Dixie Stores, Inc. | Merrill Lynch Capital | Pepsi Co & Affiliates |
| Economy Wholesale Distributors, Inc | National City Business Credit, Inc. | Procter & Gamble Dist Co |
| Foodway Stores, Inc. | PNC Business Credit | Sara Lee Foods |
| Kwik Chek Supermarkets, Inc | RZB Finance LLC | Schering Plough Health Care |
| Sunbelt Products, Inc | Siemens Financial Services, Inc | Smith Kline Beecham |
| Superior Food Company | SunTrust Bank | Unilever (Hpc Usa & Best Foods) |
| Table Supply Food Stores Co., Inc | The CIT Group/Business Credit, Inc | US Bank Corporation |
| WD Brand Prestige Steaks, Inc. | UBS AG, Stamford Branch | Warner Lambert Consumer Group |
| Winn-Dixie Handyman, Inc. | Wachovia Bank, National Association | Wyeth Consumer Healthcare |
| Winn-Dixie Logistics, Inc | Wells Fargo Foothill LLC | A G Edwards |
| Winn-Dixie Montgomery, Inc | American Funds | Allied Capital Corporation |
| Winn-Dixie Procurement, Inc | Arnhold S Bleichroeder Advisers, LLC | American United Life Ins Co |
| Winn-Dixie Raleigh, Inc | CGU Insurance Group | Banc One |
| Winn-Dixie Stores, Inc. | Credit Suisse Asset Management Ltd. | Bank Midwest |
| Winn-Dixie Supermarkets, Inc. | Delphi Financial Group | Bank Of New York |
| Bahamas Supermarkets Limited | Denver Investment Advisors Inc. | Capital Advisors Inc |
| The City Meat Markets Limited | DLJ Investment Management Corp | Cargill, Incorporated |
| W-D (Bahamas) Limited | Fortis Group | Century Management And |
| WIN General Insurance, Inc | Fortis Insurance Company | Collins & Aikman |
| John H. Dasburg | IMS Capital Management | Commercial Net Lease Realty Inc. |
| A. Dano Davis | Independence Blue Cross | Deerfield Company Inc |
| T Wayne Davis | Prudential Investments Fund Management LLC | Deutsche Bank f/k/a Bankers Trust Company |
| Edward W. Mehrer, Jr. | Vanguard Group Incorporated | EMC Corporation |
| H Jay Skelton | Alberto Culver USA, Inc | Fairfield Partners LP |
| Charles P Stephens | Bayer Corp | First National Bank |
| A Dano Davis | Campbell Soup Co | First Security Bank |
| D D.I , Inc | Clorox Sales Co - KPD | Glimcher Properties Limited |
| DAVFAM Ltd | Coca Cola Bottling Co | Gordon K Konrad |
| DAVFAM II, Ltd. | Conagra Grocery Products Co | Heritage Prop Investment Ltd |
| SIVAD Investors, LLC | Del Monte Foods USA | IBM Credit Corporation |
| SIVAD Investors II, LLC | General Electric Company | IBM Credit LLC |
| Davis Family Special Trust 2004 | Georgia Pacific Corp | ICOS LLC |
| | | Ikon Office Solutions Inc. |

| | | |
|---|---|---|
| Invesco Lp | Trustmark National Bank | R2 Investments, LDC |
| Jefferson-Pilot Life | Ullmann Company | OCM Opportunities Fund V, L.P. |
| Konica Photo Imaging | US Bancorp | |
| Konica USA Inc | Victory Investments Inc | |
| Koger Equity | Wachovia Securities | |
| Life Insurance Co Of George | Weingarten Realty Investors | |
| Lincoln Trust Company | William H Hall | |
| London Associates Ltd | ZSF/WD Bartow, LLC | |
| Metro International Property | ZSF/WD Charlotte, LLC | |
| Midland Loan Services | ZSF/WD Clayton, LLC | |
| Midland Loan Services Inc | ZSF/WD Fitzgerald, LLC | |
| Mitchell Co | ZSF/WD Greenville, LLC | |
| Modern Woodman | ZSF/WD Hammond, LLC | |
| National City Bank of MI/IL | ZSF/WD High Point, LLC | |
| National Western Insurance Co | ZSF/WD Jacksonville, LLC | |
| NCR Corporation | ZSF/WD Montgomery-31, LLC | |
| New Plan Excel Realty Trust | ZSF/WD Montgomery-Gunter, LLC | |
| New Plan Excel Realty Trust In | ZSF/WD Opa Locka, LLC | |
| New Plan Realty Trust | ZSF/WD Orlando, LLC | |
| Norse Dairy Systems | ZSF/WD Sarasota, LLC | |
| Orix Capital Markets LLC | Zurich Structured Finance, Inc. | |
| Orix Real Estate Capital Market | Lutheran Brotherhood | |
| Peninsula Utilities Inc | ACE American Insurance Co | |
| Pine Plaza | ACE Bermuda Insurance, Ltd. | |
| Plaza West 15190117351 | American Casualty Company of Reading PA | |
| Pnc Bank Philadelphia | American Guarantee Liability (Zurich) | |
| Principal Life Insurance Co | CNA | |
| Regency Centers Inc | Commonwealth Ins Co | |
| River Oaks | Employers Ins Co of Wausau | |
| Schwartz Family Trust | Federal Insurance Co | |
| Sizeler Companies | Illinois Union Ins. Co | |
| Southern Farm Bureau | Liberty Mutual | |
| Southtrust Bank | Liberty Mutual Insurance Company | |
| Storagetek Financial Services Corporation | Liberty Mutual Insurance Europe Ltd. | |
| Structured Product Servicing | RLI Insurance Co | |
| STW Holdings LLC | WIN General Ins , Inc. | • |
| Swiss Re Investors Inc | XL Specialty Insurance Company | |
| TA/Western LLC (Pom. Mktplce) | Zurich | |
| Teachers Retirement System | Zurich American Ins. Co | |
| The Sembler Company | Healthguard Finance Corporation | |
| | Healthguard International, Inc. | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                             :
                                                  :          Chapter 11
                                                  :
WINN-DIXIE STORES, INC., et al.,                  :          Case No. 05-11063 (RDD)
                                                  :
            Debtors.                              :          (Jointly Administered)
                                                  :
-------------------------------------------------------------x

## ORDER AUTHORIZING RETENTION OF
## KPMG LLP AS AUDITORS, ACCOUNTANTS, AND TAX ADVISORS

Upon the Application (the "Application") of Winn-Dixie Stores, Inc. and its debtor

affiliates (collectively, the "Debtors") for an order pursuant to section 327 of the Bankruptcy

Code approving the retention of KMPG LLP ("KMPG"), nunc pro tunc to the Petition Date, as

auditors, accountants, and tax advisors to the Debtors during these cases, as more fully set forth

in the Application; and upon consideration of the Declaration of R. Travis Storey and Disclosure

of Compensation (the "Storey Declaration"); and the Court having jurisdiction to consider the

Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the

Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the

Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of

the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Application having been provided to (i) counsel to the U.S. Trustee,

(ii) counsel for the Debtors' postpetition secured lenders, (iii) counsel for the Creditors'

Committee, (iv) the other parties in interest named on the Master Service List maintained in

these cases, and (v) KPMG, and no other or further notice being required; and the relief

requested in the Application being in the best interests of the Debtors, their estates, and creditors;

and the Court having reviewed the Application; and the Court having determined that the legal

and factual bases set forth in the Application establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Application is granted; and it is further

ORDERED that the Debtors are authorized to retain KPMG, nunc pro tunc to the

Petition Date, as auditors, accountants, and tax advisors to the Debtors during these cases,

pursuant to section 327(a) of the Bankruptcy Code, on the terms set forth in the Application, the

Storey Declaration, and the letter agreement between the Debtors and KPMG dated February 25,

2005; and it is further

ORDERED that if any supplemental declarations are filed and served after the

entry of this Order, absent any objections filed within twenty (20) days after the filing and

service of such supplemental declarations, KPMG's employment shall continue as authorized

pursuant to this Order; and it is further

ORDERED that KPMG shall be compensated upon appropriate application in

accordance with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy

Procedure, the Local Rules, and orders of this Court; and it is further

ORDERED that no work performed by KPMG shall be duplicative of work

performed by any other professional retained by the Debtors in these cases;

ORDERED that, to the extent that any retainer received by KPMG from the

Debtors remains after application to pre-petition fees, charges, costs, or expenses, KPMG is

authorized to hold such remaining retainer for application to allowed amounts owed pursuant to

KPMG's final application in these cases; provided, however, that KPMG shall hold the

remaining retainer as funds clearly designated for the account of the Debtors; and provided, further, however, that any party in interest may at any time challenge the use and application of the retainer by KPMG; and provided, further, however, that to the extent the prepetition retainer is insufficient to satisfy all pre-petition fees, charges, costs, or expenses, KPMG shall waive any unpaid pre-petition fees, charges, costs, or expenses; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Application is hereby waived.

Dated: _____ ___, 2005
     New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE