UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| Winn-Dixie Stores, Inc., <u>et al.</u>, | ) ) | Case No. 05-11063 (RDD) |
| Debtors. | ) ) ) | (Jointly Administered) |

**FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364(c) AND 364(d) OF THE BANKRUPTCY CODE AND RULES 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING ON A SUPERPRIORITY PRIMING LIEN BASIS AND MODIFYING THE AUTOMATIC STAY, (II) AUTHORIZING DEBTORS TO USE PRE-PETITION SECURED LENDERS' CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, AND (III) AUTHORIZING THE REPAYMENT IN FULL OF ALL CLAIMS OF DEBTORS' PRE-PETITION SECURED LENDERS**

THIS MATTER came before this Court on March 18, 2005, upon the Motion ("Motion") of Winn-Dixie Stores, Inc. ("Winn-Dixie"), Winn-Dixie Supermarkets, Inc. ("Supermarkets"), Winn-Dixie Montgomery, Inc. ("Montgomery"), Winn-Dixie Procurement, Inc. ("Procurement"), Winn-Dixie Raleigh, Inc. ("Raleigh") and Dixie Stores, Inc. ("Dixie", and together with Winn-Dixie, Supermarkets, Montgomery, Procurement and Raleigh, each individually a "Borrower", and collectively "Borrowers"), as Debtors and Debtors-in-Possession, Astor Products, Inc. ("Astor"), Crackin' Good, Inc. ("Crackin'"), Deep South Products, Inc.

("Deep South Products"), Dixie Packers, Inc. ("Dixie Packers"), Economy Wholesale

Distributors, Inc. ("Economy"), Winn-Dixie Logistics, Inc. ("Logistics"), Deep South

Distributors, Inc. ("Distributors"), Dixie Darling Bakers, Inc. ("Bakers"), Dixie-Home Stores,

Inc. ("Home"), Dixie Spirits, Inc. ("Spirits"), Foodway Stores, Inc. ("Foodway"), Kwik Chek

Supermarkets, Inc. ("Kwik"), Sunbelt Products, Inc. ("Sunbelt"), Sundown Sales, Inc.

("Sundown"), Superior Food Company ("Superior"), Table Supply Food Stores Co., Inc. ("Table

Supply"), WD Brand Prestige Steaks, Inc. ("WD Steaks"), and Winn-Dixie Handyman, Inc.

("Handyman", and together with Borrowers, Astor, Crackin', Deep South Products, Dixie

Packers, Economy, Logistics, Distributors, Bakers, Home, Spirits, Foodway, Kwik, Sunbelt,

Sundown, Superior, Table Supply, and WD Steaks, each individually a "Debtor" and

collectively, the "Debtors"), as Debtors and Debtors-in-Possession, filed on February 22, 2005,

seeking, inter alia:

> a.    authority, pursuant to Sections 105, 364(c)(1), 364(c)(2), 364(c)(3) and

364(d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code")

and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"),

for Debtors to obtain post-petition secured loans, advances and other financial accommodations

from Wachovia Bank National Association, as Administrative Agent and Collateral Agent for

itself ("Agent") and the other financial institutions from time to time parties to the Credit

Agreement (as hereinafter defined) (collectively, "Lenders"; and together with Agent,

collectively referred to herein as "Lender"), all in accordance with the terms and conditions set

forth in the Credit Agreement, dated as of February 23, 2005 (as the same now exists or may

hereafter be amended, modified, ratified, extended, renewed, restated or replaced, including as

represented on the record of the Final Hearing by counsel for the Agent, the "Credit Agreement",

2

a copy of which was included in the Exhibit Supplement to the Motion (the "Exhibit Supplement") and is incorporated herein by reference), by and among Debtors and Lender, and the other Loan Documents (as defined in the Credit Agreement)[1], secured by senior (subject to certain liens and claims set forth below), perfected, valid, enforceable and non-avoidable security interests in and liens upon all of the Collateral (as hereinafter defined);

b.    authority, pursuant to Sections 105, 364(d)(1) and 364(d)(2) of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, for Debtors to grant to Lender, pending the release and termination and/or assignment of the Pre-Petition Lender Junior Liens upon this Final Order (as hereinafter defined) becoming final and non-appealable, priming liens on and security interests in (subject to certain liens and claims as set forth in paragraph 8 of this Final Order) all Pre-Petition Lender Collateral (as hereinafter defined) and in any other assets or properties of the Debtors and their estates, senior and superior in priority in all respects to any and all liens and security interests of the Pre-Petition Lender (as hereinafter defined) in the Pre-Petition Lender Collateral and such other assets and properties (the "Priming Liens"), and in connection with such Priming Liens, provide adequate protection to Pre-Petition Lender by preserving and continuing, on a junior and subordinate basis, its liens on and security interests in the Collateral to secure any Contingent Pre-Petition Lender Debt (as hereinafter defined) in accordance with the terms and conditions contained in this Final Order;

c.    authority for Debtors to enter into and comply in all respects with the Credit Agreement and all other Loan Documents, and approval of all of the terms and conditions of the Credit Agreement and all other Loan Documents;

---

[1]    Defined terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Credit Agreement.

d.   the granting to Lender superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Obligations (as defined in the Credit Agreement);

e.   authority, pursuant to Sections 361 and 363 of the Bankruptcy Code, for the Debtors to use cash collateral of the Pre-Petition Lender pursuant to the terms and conditions set forth herein;

f.   final approval of the repayment in full of the Pre-Petition Lender Debt (as hereinafter defined) owing by Debtors to Wachovia Bank National Association, in its capacity as Administrative Agent and Collateral Agent for itself ("Pre-Petition Lender Agent") and certain other financial institutions that are parties from time to time to the Pre-Petition Credit Agreement (as hereinafter defined) (the "Pre-Petition Lenders", and together with the Pre-Petition Lender Agent, collectively referred to herein as the "Pre-Petition Lender"), and the simultaneous subordination of the Pre-Petition Lender's liens, claims and encumbrances and the requirement of Pre-Petition Lender to release and terminate or assign, subject to paragraph 6 of this Final Order, such liens, claims and encumbrances on the date that this Final Order becomes final and non-appealable or earlier as Pre-Petition Lender may agree, all in accordance with the terms and conditions contained in this Final Order; and

g.   a final hearing on the Motion to consider entry of an order pursuant to Bankruptcy Rule 4001 (this "Final Order") authorizing the Borrowers, inter alia, to obtain Loans, Letters of Credit (as each term is defined in the Credit Agreement) and other financial and credit accommodations on a permanent basis pursuant to the terms and conditions set forth in the Credit Agreement and the Loan Documents and in accordance with this Final Order.

Due and appropriate notice of the Motion, the relief requested therein, the material terms of this Final Order and the Final Hearing (as defined below) has been served by the Debtors, whether by telecopy, e-mail, overnight courier or hand delivery, on the following parties: (1) the Office of the United States Trustee; (2) the Agent, (3) the Pre-Petition Lender Agent; (4) the Internal Revenue Service; (5) Wilmington Trust Company, in its capacity as Trustee for Winn-Dixie's 8? % Senior Unsecured Notes due 2008 issued for gross cash proceeds of $300,000,000 on March 29, 2001; (6) the Debtors' 50 largest unsecured creditors on a consolidated basis; (7) all other creditors known to the Debtors who may have liens against or interests in any of the Debtors' assets and properties, including, without limitation, all landlords, operators, mortgagors and/or mortgagees of the premises at which any of the Debtors' Inventory or other items of Collateral are located; and (8) all parties who have filed a Notice of Appearance in these Chapter 11 cases, including, without limitation, counsel for the Official Unsecured Creditors Committee (the "Committee") (all parties referred to in the foregoing clauses (1) through (8) are collectively referred to as the "Noticed Parties").

The interim hearing on the Motion was held by this Court on February 23, 2005 (the "Interim Hearing"). The Final Hearing on the Motion was held by this Court on March 18, 2005 (the "Final Hearing"). At the conclusion of the Final Hearing, the Court denied all objections to the Motion that has not been withdrawn or otherwise resolved and approved the Motion as provided herein, for the reasons stated by the Court on the record.

Upon the record made by the Debtors at the Interim Hearing, the Final Hearing, including the Motion and the filings and pleadings in the Debtors' Chapter 11 cases, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     Petition.   On February 21, 2005 (the "Petition Date"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Each Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.     Jurisdiction.   Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.     Notice.   Sufficient and adequate notice of this Final Order has been provided based upon the notice sent to the Noticed Parties and the consent to the Motion as approved by this Final Order by Lender and the Pre-Petition Lender, pursuant to Bankruptcy Rules 4001(c) and (d) and 9014 and Section 102(1) of the Bankruptcy Code as required by Sections 364(c) and 364(d) of the Bankruptcy Code, and no further notice of, or hearing on, the Motion or this Final Order is necessary or required.

D.     Debtors' and Pre-Petition Lender's Acknowledgements and Agreements. Without prejudice to the rights of any other party-in-interest in the Debtors' Chapter 11 cases (but subject to the limitations with respect to such rights contained in paragraph 15(e) of this Final Order), the Debtors, for themselves and not for their estates, and the Pre-Petition Lender admit, stipulate, acknowledge and agree that:

(i) *Pre-Petition Financing Arrangements.*    Prior to the commencement of the Debtors' Chapter 11 cases, Pre-Petition Lender made loans and advances and agreed to provide other credit accommodations to the Debtors pursuant to the terms and conditions set forth in various agreements, documents and instruments, including, without limitation, the Second Amended and Restated Credit Agreement, dated as of June 29, 2004, by and among Borrowers and the Pre-Petition Lender (as the same has been amended, modified, restated, renewed, replaced and/or supplemented from time to time through to the Petition Date, the "Pre-Petition Credit Agreement"), which is incorporated herein by reference; other credit, guarantee and security agreements executed and/or delivered by Debtors in favor of Pre-Petition Lender; Uniform Commercial Code ("UCC") filings; and all other agreements, documents and instruments at any time executed and/or delivered in connection with or related to the Pre-Petition Credit Agreement (as all of the same have been amended, modified, restated, renewed, replaced and/or supplemented from time to time through to the Petition Date, the "Pre-Petition Loan Documents").

(ii)        *Pre-Petition Lender Debt.*  The Debtors were indebted to the Pre-Petition Lender in respect of all outstanding Obligations (as defined in the Pre-Petition Credit Agreement) as of February 18, 2005 in the aggregate principal amount of not less than $427,005,000 (the "Pre-Petition Lender Debt"), consisting of, among other things, (a) Loans (as defined in the Pre-Petition Credit Agreement) made pursuant to the Pre-Petition Loan Documents in the aggregate principal amount of not less than $265,000,000, plus all interest, fees, costs and expenses (including, without limitation, all attorneys' fees and legal expenses of Pre-Petition Lender) and all charges accrued and accruing thereon and/or chargeable with respect thereto, and (b) Reimbursement Obligations (as defined in the Pre-Petition Credit Agreement) in respect of

Letters of Credit in an aggregate amount of not less than $162,005,000, plus all interest, fees, costs, expenses (including, without limitation, all attorneys' fees and legal expenses of Pre-Petition Lender) and all charges accrued and accruing thereon or chargeable with respect thereto. The Pre-Petition Lender Debt is unconditionally owing by Debtors to Pre-Petition Lender, without offset, defense or counterclaim of any kind, nature and description whatsoever.

(iii)    *Pre-Petition Lender Collateral*.  As of the Petition Date, the Pre-Petition Lender Debt was fully secured pursuant to the Pre-Petition Loan Documents by perfected, valid, binding and non-avoidable first priority security interests and liens granted by Debtors to or for the benefit of the Pre-Petition Lender upon all of the Collateral (as defined in the Pre-Petition Credit Agreement) existing as of the time immediately prior to the filing of the petitions for relief herein, and the post-petition proceeds and products thereof (collectively, together with any other property of, among other things, each Debtors' estate in which a security interest or lien has been granted to or for the benefit of Pre-Petition Lender immediately prior to the filing of the petitions for relief herein, the "Pre-Petition Lender Collateral").

(iv)    *Repayment of Pre-Petition Lender Debt*.  A portion of Debtors' borrowings from Lender under the Credit Agreement and the other Loan Documents, and in accordance with the terms of the Interim Order (as hereinafter defined), has been used to repay in full the Pre-Petition Lender Debt owing to Pre-Petition Lender in accordance with the terms and conditions set forth in the Interim Order and this Final Order.

(v)    *Pre-Petition Lender's Consent to Priming Liens*.  Pre-Petition Lender has consented and agreed that, subject to the terms and conditions contained herein, any and all pre-petition or post-petition liens and security interests (including, without limitation, any

adequate protection replacement liens granted under the Cash Collateral Order (as hereinafter defined) or at any time granted to Pre-Petition Lender by this Court) that the Pre-Petition Lender has or may have in the Pre-Petition Lender Collateral or any other assets and properties of the Debtors and their estates shall (a) only secure any Pre-Petition Lender Debt that is (1) at any time repaid with the proceeds of the loans and advances made by the Lender (including, without limitation, at the closing of the post-petition credit facility in accordance with the Interim Order and this Final Order) prior to this Final Order becoming final and non-appealable and (2) subsequently reinstated after the full payment thereof because such payment (or any portion thereof) is required to be returned or repaid to Debtors or Lender, other than as a result of Pre-Petition Lender's liens or claims being invalidated by a Disgorgement Action (as defined in paragraph 15(e) of this Final Order); and (b) be junior and subordinate in all respects to Lender's liens on and security interests in the Collateral (including, without limitation, Lender's Priming Liens) granted under this Final Order and the Loan Documents (such junior liens and security interests of the Pre-Petition Lender are hereinafter referred to as the "Pre-Petition Lender Junior Liens").  Such reinstated Pre-Petition Lender Debt described in clauses (a)(1) and (2) above in this paragraph is hereinafter referred to as the "Contingent Pre-Petition Lender Debt" and shall be junior and subordinate in all respects to the Obligations (as defined in the Credit Agreement). Pre-Petition Lender has further agreed that, (a) until such time as all of the Obligations are indefeasibly paid in full in cash in accordance with the Loan Documents and this Final Order, Pre-Petition Lender shall have no right to seek or exercise any enforcement rights or remedies in connection with the Contingent Pre-Petition Lender Debt or the Pre-Petition Lender Junior Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as hereinafter defined); (b) the Pre-Petition Lender shall be deemed to have consented to

any sale or disposition of all or any portion of the Collateral approved by, arranged for or by

Agent and shall terminate and release upon any such sale or disposition all of its Pre-Petition

Lender Junior Liens on and security interests in such Collateral; (c) Pre-Petition Lender shall

deliver or cause to be delivered, at Debtors' costs and expense (for which Pre-Petition Lender

shall be reimbursed upon submission to Debtors of invoices or billing statements), any

termination statements, releases and/or assignments (to the extent provided for in paragraph 6

herein) in favor of Lender or other documents necessary to effectuate and/or evidence the

release, termination and/or assignment of the Pre-Petition Lender Junior Liens on any portion of

the Collateral subject to any sale or disposition approved or arranged for by Agent; and (d) upon

this Final Order becoming final and non-appealable, all Pre-Petition Lender Junior Liens in the

Collateral shall terminate, be released and/or deemed assigned to Lender in accordance with

paragraph 6 hereof (automatically and without further action of the parties), and Pre-Petition

Lender shall execute and deliver such agreements to evidence and effectuate such termination,

release or assignment as Agent may request and Agent shall be authorized to file on behalf of

Pre-Petition Lender such UCC termination statements or such other filings as may be applicable

to the extent required under the UCC of the applicable jurisdiction.

E.    <u>Findings Regarding Post-Petition Financing</u>

(i)    *Need for Post-Petition Financing*.  Based upon the record

heretofore made before this Court at the Interim Hearing and the Final Hearing, including,

without limitation, the Motion, the Lender's Reply Memorandum of Law in support of the

Motion and the Debtors' Reply Memorandum of Law in support of the Motion, without the

financing proposed by the Motion, the Debtors will not have the funds necessary to pay post-

petition payroll, payroll taxes, trade vendors, suppliers, overhead and other expenses necessary

for the continued operation of the Debtors' businesses and the management and preservation of

the Debtors' assets and properties.  The Debtors have requested that, pursuant to the Credit

Agreement, the other Loan Documents and this Final Order, Lender make loans and advances

and provide other financial accommodations to the Debtors to be used by the Debtors to continue

funding the Debtors' general operating, working capital and other administrative costs of their

Chapter 11 cases.  The ability of the Debtors to continue their businesses and remain viable

entities and thereafter reorganize under Chapter 11 of the Bankruptcy Code depends upon the

Debtors obtaining such financing from Lender.  The Debtors' businesses cannot survive on use

of cash collateral.  Lender is willing to make such loans and advances and provide such other

financial accommodations on a secured basis as more particularly described herein pursuant to

the terms and conditions of the Credit Agreement, all other Loan Documents, including, without

limitation, the Security Agreement, dated as of February 23, 2005, by and among the Debtors

and Agent ("Security Agreement", a copy of which is included in the Exhibit Supplement and is

incorporated herein by reference) and in accordance with this Final Order.  Accordingly, the

relief requested in the Motion is necessary, essential, and appropriate for the continued operation

of the Debtors' businesses, the management and preservation of their assets and properties and is

in the best interests of the Debtors, their estates and creditors.

      (ii)    *No Credit Available on More Favorable Terms.*  The Debtors are

unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code or

pursuant to Sections 364(a), (b) or (c)(1) of the Bankruptcy Code or secured credit pursuant to

Sections 364(c)(2) and (3) only.  Additionally, the Debtors were unable to procure the necessary

financing on more favorable terms than those offered by Lender pursuant to the Credit

Agreement, the other Loan Documents and this Final Order.

(iii)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms of the Credit Agreement and the other Loan Documents among the Debtors and Lender, pursuant to which the post-petition loans, advances, letters of credit and other credit and financial accommodations will be made or provided to Borrowers by Lender have been negotiated at arms' length and in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors.  The Debtors further represent that Lender is extending financing to the Borrowers in good faith and Lender is entitled to the benefits of the provisions of Section 364(e) of the Bankruptcy Code.

(iv)    *Good Cause.*  The relief requested by the Motion pursuant to the terms of the Credit Agreement, the other Loan Documents and this Final Order is necessary to avoid immediate and irreparable harm to Debtors' estates. Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the entry of this Final Order.  To the extent any party appearing in the Debtors' Chapter 11 cases has filed or made an objection to the relief sought in the Motion and the entry of this Final Order (and any such objection was not withdrawn or resolved prior to the entry of this Final Order), such objections are hereby overruled.

F.    Committee.  On March 2, 2005, the Office of the United States Trustee appointed the Committee in accordance with Section 1102 of the Bankruptcy Code.

G.    Use of Cash Collateral.  On February 22, 2005, prior to this Court authorizing the post-petition financing of Debtors by Lender in accordance with the Interim Order, the Court entered the Emergency Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 (the

"Cash Collateral Order"), pursuant to which, among other things, this Court authorized the Debtors to use up to $100,000,000 of the Pre-Petition Lender's cash collateral (as defined in Section 363(a) of the Bankruptcy Code) and granted to the Pre-Petition Lender, as adequate protection for the diminution in the value of the Pre-Petition Lender Collateral, replacement liens and a priority claim under Section 507(b) of the Bankruptcy Code in accordance with the terms and conditions contained therein.

H.    <u>Interim Financing</u>.  On February 23, 2005, this Court entered the Interim Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, (III)  Authorizing Debtors to Pay in Full All Claims of Debtors' Pre-Petition Secured Lenders, and (IV) Prescribing Form and Manner of Notice and Time for Final Hearing, as extended and modified by Order, dated March 15, 2005 (the "Interim Order"), pursuant to which, among other things, the Court authorized the Debtors to (a) enter into the Credit Agreement with Lender pursuant to which the Borrowers were authorized to obtain, and the Guarantors were authorized to guarantee, up to $600,000,000 in Loans, Letters of Credit and other credit accommodations from Lender on a senior secured, superpriority claim basis (subject only to certain permitted liens and claims as set forth in the Interim Order); and (b) repay in full the Pre-Petition Lender Debt, which included a $1,000,000 pledge of cash collateral in favor of the Pre-Petition Lender to secure any Continuing Pre-Petition Lender Debt (as defined in paragraph 9(b) of the Interim Order).

Based upon the foregoing, and after due consideration and good cause appearing therefor:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1.        Motion Granted.  The Motion is granted and approved to the extent provided below.

2.        Authorization to Borrow on a Permanent Basis.  Borrowers are hereby authorized and empowered to continue borrowing and obtaining, and the Guarantors are authorized to continue to guarantee, Loans, Letters of Credit (as each term is defined in the Credit Agreement) and other financial and credit accommodations from Lender pursuant to the terms and conditions of the Credit Agreement, the other Loan Documents and this Final Order, in such amount or amounts as may be made available to Borrowers by Lender, all in accordance with the terms and conditions set forth in the Credit Agreement, the other Loan Documents and this Final Order.

3.        Use of Loan and Letter of Credit Proceeds.  Borrowers shall use the proceeds of the Loans and Letters of Credit made or arranged for by Lender to Borrowers pursuant to the Credit Agreement, the other Loan Documents and this Final Order, for (a) the payment of employee salaries, payroll, taxes, the purchase of goods, materials and other general corporate and working capital purposes in accordance with the Loan Documents and this Final Order, including amounts paid for such purposes which may constitute allowed administrative expense claims (including, without limitation, cure costs incurred with respect to the assumption of real property leases in accordance with Section 365 of the Bankruptcy Code) attributable to the operation of Debtors' businesses as authorized by order of the Court and in accordance with

14

the Loan Documents; (b) the fees of the United States Trustee, the fees of the Clerk of this Court,

the allowed fees and expenses of attorneys, accountants and other professionals retained under

Section 327 or 1103(a) of the Bankruptcy Code by the Debtors and the Committee; and (c) all

present and future costs and expenses, including all reasonable consultants' and advisors' fees,

attorneys' fees and legal expenses (provided, that, the Debtors shall provide notice of such

attorneys' fees and legal expenses to the Office of the United States Trustee and counsel for the

Committee), paid or incurred by Lender at any time in connection with the financing transactions

as authorized and provided for in this Final Order and the Loan Documents, all of which unpaid

fees, commissions, costs and expenses shall be added to, and are included as part of, the principal

amount of the Obligations, secured by the Collateral and afforded all of the rights, priorities and

protections afforded to Lender in respect of the Obligations under this Final Order and the Loan

Documents.

       4.    <u>Authorization to Enter Into and Comply with Loan Documents</u>.  Debtors

are authorized and directed to continue performing under and comply in all respects with all of

the terms and conditions of the Credit Agreement and the other Loan Documents, each of which

constitute valid, binding, enforceable and non-avoidable obligations of the Debtors for all

purposes during the Debtors' Chapter 11 cases, any subsequently converted case(s) of any

Debtor under Chapter 7 of the Bankruptcy Code or after the dismissal or reorganization of any of

the Debtors' bankruptcy case(s).  Debtors are hereby authorized and directed to perform all acts,

and execute and comply with the terms of such other documents, instruments, and agreements as

Lender may reasonably require as evidence of and for the protection of the Obligations and the

Collateral or which may be otherwise deemed necessary by Lender to effectuate the terms and

conditions of this Final Order and the Loan Documents, each of such additional documents,

instruments, and agreements being included in the definition of "Loan Documents" contained herein.

5.      Approval of Loan Documents.  The terms, conditions and covenants of the Credit Agreement and the other Loan Documents are hereby approved in all respects and shall be deemed to be incorporated into the terms and conditions of this Final Order.  Such terms and conditions shall be sufficient and conclusive evidence of the borrowing and financing arrangements among Debtors and Lender for all purposes, including, without limitation, the payment of all principal, interest, fees (including, without limitation, unused line fees, servicing fees, letter of credit fees, closing fees, syndication fees, early termination fees, appraisal fees), Lender's legal and other professional expenses, and other fees and expenses, as more fully set forth in the Credit Agreement and the other Loan Documents.

6.      Lien Grant.  To secure the prompt payment and performance of any and all Obligations under the Credit Agreement, the other Loan Documents and/or this Final Order, Lender shall have, and is hereby granted in accordance with the terms and conditions of the Loan Documents, effective on and after the Petition Date, valid, perfected, enforceable and non-avoidable first priority security interests in and liens, senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, including, without limitation, the Priming Liens (but subject to the liens and claims set forth in paragraph 8 of this Final Order), upon all assets and properties of the Debtors and their estates (excluding any avoidance actions brought by or on behalf of any Debtor under Chapter 5 of the Bankruptcy Code and the proceeds thereof), including, without limitation, the following (the "Collateral"[2]):

---

[2]      All defined terms used in the description of Collateral as set forth in paragraph 6 above shall have the meanings ascribed to such terms in the Security Agreement.

(a)     all Accounts;

(b)     all general intangibles, including, without limitation, all Intellectual Property;

(c)     all goods, including, without limitation, Inventory and Equipment;

(d)     all Real Property and fixtures;

(e)     all chattel paper (including all tangible and electronic chattel paper);

(f)     all instruments (including all promissory notes);

(g)     all documents;

(h)     all Deposit Accounts;

(i)     all letters of credit, banker's acceptances and similar instruments and including all letter-of-credit rights;

(j)     all supporting obligations and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of Receivables and other Collateral, including (i) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, (ii) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (iii) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing, Receivables or other Collateral, including returned, repossessed and reclaimed goods, and (iv) deposits by and property of account debtors or other persons securing the obligations of account debtors;

(k)     all (i) investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (ii) monies, credit balances, deposits and other property of Grantor now or hereafter held or received by or in transit to Agent, any Lender or their respective affiliates or at any other depository or other institution from or for the account of Grantor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(l)     all Commercial Tort Claims, including, without limitation, those identified on Item K of Schedule I to the Security Agreement;

(m)     to the extent not otherwise described above, all Receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of Grantor or any trustee of Grantor;

(n)     all Records; and

(o)     all products and proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the other Collateral.

Notwithstanding the foregoing, "Collateral" shall not include: (a) any Capital Securities (as defined in the Credit Agreement) of the Insurance Captive (as defined in the Credit Agreement), and (b) investment property consisting of Capital Securities of an issuer that is a Foreign Subsidiary (as defined in the Credit Agreement) (other than a Foreign Subsidiary that (i) is treated as a partnership under the Code (as defined in the Credit Agreement) or (ii) is not treated as an entity that is separate from (x) any Debtor pledging such Capital Securities, (y) any Person (as defined in the Credit Agreement) that is treated as a partnership under the Code or (z) any "United States person" (as defined in Section 7701(a)(30) of the Code)) of any Debtor, in excess of 65% of the total combined voting power of all Capital Securities of each such Foreign Subsidiary; provided further, however, that, in the event that Section 956 of the Code or such other provisions of the Code are modified, amended or supplemented such that the pledge of shares of Capital Securities in excess of 65% of the Capital Securities of an issuer that is a Foreign Subsidiary to secure the Obligations would not result in a negative tax impact under the Code, then such Debtor and/or such Foreign Subsidiary shall execute and deliver, in form and substance satisfactory to Agent, such additional Loan Documents or amendments to existing Loan Documents pledging in favor of Lender such number of shares of Capital Securities of such issuer not already pledged to Lender to secure the Obligations.  In no event shall (a) any lien or

security interest granted to Lender pursuant to the Loan Documents or this Final Order be subject

to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates

under Section 551 of the Bankruptcy Code; (b) any person or entity who pays (or through the

extension of credit to any Debtor, causes to be paid) any of the Obligations be subrogated, in

whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in

favor of, or conferred upon, Lender by the terms of the Loan Documents or this Final Order,

until such time as all of the Obligations are indefeasibly paid in full in cash in accordance with

the Loan Documents and this Final Order; and (c) Lender be subject to the equitable doctrine of

"marshaling" or any similar doctrine with respect to the Collateral. Upon this Final Order

becoming final and non-appealable, all pre-petition liens and security interests of the Pre-Petition

Lender in the Pre-Petition Lender Collateral (provided that such pre-petition liens and security

interests shall not exceed theamount of the Prepetition Lender Debt) shall be deemed to be

assigned (and not terminated and released to the extent so assigned) to Lender as additional

collateral security for all Obligations, and such assignment shall be in addition to, and shall not

limit, prejudice or impair in any way any of the claims or liens and security interests of Lender in

the Collateral granted pursuant to the Loan Documents and this Final Order. In no event shall

Lender have any liability in connection with such assignment or the pre-petition liens so assigned

(including, without limitation, any liability relating to a Pre-Petition Lien/Claim Challenge (as

defined in paragraph 15(e) herein) or a Disgorgement Action), and in no event shall the Pre-

Petition Lender continue to have any rights or benefits in connection with such liens so assigned;

provided, that, the Pre-Petition Lender shall be responsible for controlling, directing and funding

its costs in respect of any defense and/or prosecution of any Disgorgement Action or any Pre-

Petition Lien/Claim Challenge. Neither this Final Order nor the liens and claims granted hereby

are intended to, or shall, prime or in any way affect (i) valid and unavoidable set off and recoupment rights that any party in interest may have with respect to the Debtors' accounts receivable, and (ii) valid trust claims of creditors under the Perishable Agricultural Commodities Act, as amended, 7 U.S.C. §499a et seq., or the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181 et seq.

       7.    Lien Perfection.  This Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the liens and security interests in and upon the property of each Debtor's estate granted to Lender, as set forth herein and in the Loan Documents, without the necessity of filing, recording or serving any financing statements, mortgages, deeds of trust or other agreements, documents or instruments which may otherwise be required under federal or state law in any jurisdiction (collectively, "Lien Recording Documents") or the taking of any other action to validate or perfect the security interests and liens granted to Lender in this Final Order and the Loan Documents.  Such security interests and liens granted to Lender shall be prior and senior to all security interests, liens, claims, and encumbrances of all other creditors in and to such property, subject to paragraph 8 of this Final Order.  If Lender shall, in its discretion, elect for any reason to file any such Lien Recording Documents with respect to such security interests and liens, Debtors are authorized and directed to execute, or cause to be executed, all such Lien Recording Documents upon Lender's request and the filing, recording or service thereof (as the case may be) of such Lien Recording Documents shall be deemed to have been made on the Petition Date.  Lender may, in its discretion, file a certified copy of this Final Order in any filing or recording office in any county or other jurisdiction in which Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such

certified copy of this Final Order.  To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (provided that Lender may still take such steps as it wishes to perfect its security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Final Order).  In the event that any Lien Recording Document which Lender elects to file in accordance with this paragraph contains any limitations, defects, deficiencies or other information which might otherwise limit or adversely affect Lender's liens upon and security interests in the Collateral or any of Lender's claims, rights, priorities and/or protections afforded under this Final Order and the Loan Documents, such limitations, defects, deficiencies or other information shall not impair, limit, restrict or adversely affect in any way any of Lender's liens and security interests in the Collateral or its claims, rights, priorities and/or protections granted under this Final Order and/or the Loan Documents.  Agent shall, in addition to the rights granted to it under the Loan Documents, be deemed the successor-in-interest to the Pre-Petition Agent with respect to all Pre-Petition Lender Collateral access agreements and other agreements with third parties granting rights in, or waiving claims against, any Pre-Petition Lender Collateral, including, without limitation, each collateral access agreement duly executed and delivered by any landlord of the Borrowers or any of their Subsidiaries (as defined in the Credit Agreement).

       8.    <u>Permitted Liens and Claims</u>.  Except as otherwise provided pursuant to the provisions of this Final Order, the security interests and liens of Lender in and upon the Collateral shall not have priority over (a) the liens upon Debtors' property that are permitted in

21

Section 7.2.3 of the Credit Agreement to the extent that such liens are expressly entitled to priority over Lender's liens in the Collateral as provided for in such Section 7.2.3, (b) security interests and liens that are (i) valid, perfected, non-avoidable and in existence immediately prior to the Petition Date (other than Pre-Petition Lender's liens in the Pre-Petition Lender Collateral securing the Pre-Petition Lender Debt and/or the Pre-Petition Lender Junior Liens securing the Contingent Pre-Petition Lender Debt) to the extent such liens and security interest have priority over Lender's liens under applicable law, and (ii) valid, non-avoidable and in existence immediately prior to the Petition Date but are perfected subsequent to the Petition Date pursuant to Bankruptcy Code Section 546(b) to the extent that such liens and security interests have priority over Lender's liens under applicable law; and (c) the Carve Out Expenses, including, without limitation, the Professional Fee Carve-Out as and to the extent set forth in this Final Order. The foregoing is without prejudice to the rights of Debtors, the Committee, or any other party in interest, including Lender, to object to the validity, extent, priority, enforceability or allowance of any such liens and security interests referenced in clauses (a) and (b) above in this paragraph.

9.      Repayment and Termination of Pre-Petition Lender Debt; Adequate Protection.  The repayment of the Pre-Petition Lender Debt and the grant to Pre-Petition Lender of the Pre-Petition Lender Junior Liens in accordance with the provisions of the Interim Order and this Final Order are hereby ratified and reaffirmed. In addition, as collateral security for the prompt performance, observance and payment in full of any Continuing Pre-Petition Lender Debt, the Pre-Petition Lender shall hold and continue to have a senior lien and security interest in and right to set off against the Pre-Petition Lender Cash Collateral in accordance with the terms and conditions set forth below. Pre-Petition Lender shall release and remit back to the Debtors

the Pre-Petition Lender Cash Collateral, less any amounts thereof previously applied by Pre-Petition Lender to Continuing Pre-Petition Lender Debt, upon the earlier of (a) the expiration of the time in which an adversary proceeding may be commenced against Pre-Petition Lender in accordance with paragraph 15(e) of this Final Order, or (b) such other date as agreed upon by the written agreement among Debtors, Pre-Petition Lender and Lender.

10.    Use of Pre-Petition Lender's Cash Collateral.  During the period commencing immediately after the filing of the Debtors' Chapter 11 petitions and terminating upon the date at which this Final Order becomes final and non-appealable (the "Cash Collateral Use Period"), the Debtors shall be authorized to use, subject to the terms contained in this paragraph, the Pre-Petition Lender's cash collateral (as defined in Section 363(a) of the Bankruptcy Code).  The right of the Pre-Petition Lender to seek, as adequate protection against the diminution in the value of the Pre-Petition Lender Junior Liens occasioned by the imposition of the automatic stay and the Debtors' use of the Pre-Petition Lender's cash collateral in accordance with Sections 361, 362 and 363 of the Bankruptcy Code, a Section 507(b) claim in an amount equal to any diminution in the value of the Pre-Petition Lender Junior Liens is hereby reserved; provided, however, any Section 507(b) claim granted to Pre-Petition Lender pursuant to this paragraph or otherwise (a) shall terminate and be released upon this Final Order becoming final and non-appealable, and (b) shall be junior and subordinate in right of payment to all Obligations.

11.    Nullifying Pre-Petition Restrictions to Post-Petition Financing.  Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, any provision that restricts, limits or impairs in any way any Debtor's ability or right

to grant to Lender security interests in or liens upon any of its assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the Credit Agreement, the other Loan Documents, the Interim Order and/or this Final Order or otherwise enter into and comply with all of the terms, conditions and provisions thereof (all such provisions being collectively referred to as "Restrictive Clauses") shall not be effective and shall be unenforceable against any such Debtor(s) and Lender to the maximum extent permitted under the Bankruptcy Code and other applicable law, but only with respect to the entry of this Final Order granting such post-petition financing (and in no event shall this paragraph preclude any lessor from enforcing any provision of its applicable lease in the event that (1) Lender becomes a tenant or lessee under such lease by foreclosing on the leasehold mortgage granted herein with respect to such lease, and (2) any reorganized Debtor obtains new financing, including exit financing), and, therefore, shall not adversely affect the validity, priority or enforceability (subject to paragraphs 18, 19 and 20 hereof) of the liens, security interests, claims, rights, priorities and/or protections granted to Lender pursuant to this Final Order, the Credit Agreement and/or the other Loan Documents or any of the rights of Lender hereunder or thereunder to the maximum extent permitted under the Bankruptcy Code and other applicable law.  Subject to paragraphs 18, 19 and 20 hereof, such Restrictive Clauses shall not, to the maximum extent permitted under the Bankruptcy Code and applicable law, render any contract or lease unable to be assumed and/or assigned by any Debtor (or by Agent, on behalf of any Debtor, pursuant to the provisions contained in this Final Order), or in any way impair or limit the ability or right of any Debtor (or by Agent, on behalf of any Debtor, pursuant to the provisions contained in this Final Order) to assume and/or assign any

contract or lease, or any lessor's right to object to such relief on any other grounds, under Sections 365 or 1123 of the Bankruptcy Code.

12. <u>Cash Management Authorization</u>.  In accordance with the provisions of the Loan Documents and this Final Order, Debtors are authorized and directed either to deposit or cause to be deposited into the Majority Accounts (as defined in the Credit Agreement), or to remit, in kind, immediately to Lender, all monies, checks, drafts and any other payments received from its account debtors and other parties, now or hereafter obligated to pay Debtors for services provided by Debtors or for inventory or other property of Debtors' estates.  Lender is authorized to apply such payments and proceeds received by Debtors to the Obligations in accordance with the Credit Agreement, the other Loan Documents and this Final Order.

13. <u>Modification of Automatic Stay</u>.  Except as otherwise specifically provided with respect to Lender's rights and remedies after the occurrence of an Event of Default under the terms of the Loan Documents and subject to the provisions of paragraph 18 below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit Lender to implement the provisions of the Loan Documents and this Final Order.

14. <u>Superpriority Claim</u>.  For all Obligations now existing or hereafter arising pursuant to the Credit Agreement, the other Loan Documents and/or this Final Order, Lender is hereby granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, which claim shall have priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors, now in existence or hereafter incurred by any of the Debtors and over any and all administrative expenses or priority claims of the kind

specified in, or ordered pursuant to, inter alia, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1) and/or 546(c) of the Bankruptcy Code (the "Superpriority Claim"), provided, however, that the Superpriority Claim shall be subordinate to the Carve-Out Expenses as and to the extent set forth in this Final Order.

15.    (a)    <u>Professional Fee Carve-Out and Other Carve-Out Expenses</u>. Subject to the terms and conditions contained in this paragraph 15, Lender's Superpriority Claim and security interests in and liens upon the Collateral shall be subordinate only to (collectively, the "Carve-Out Expenses"):

(i)  the fees and expenses of the Clerk of this Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a);

(ii)  the allowed reasonable fees and expenses of any Chapter 7 Trustee appointed for any Debtor's Chapter 7 case; provided, that such allowed fees and expenses shall not exceed $50,000 in the aggregate for purposes of constituting a part of the Carve Out Expenses; and

(iii)  on and after the Default Point (as defined below), the allowed unpaid and outstanding reasonable fees and expenses approved by order of the Court pursuant to Sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the "Allowed Professional Fees") by attorneys, accountants and other professionals retained under Section 327 or 1103(a) of the Bankruptcy Code by the Debtors and the Committee (collectively, the "Professionals") in an aggregate amount not to exceed $12,000,000 (the "Professional Fee Carve-Out").  As used herein, "Default Point" means

the date when both (x) an Event of Default (as defined in the Credit Agreement or this Final Order) shall have occurred, and (y) the Lender has ceased making to Borrowers advances or other extensions of credit in accordance with the terms of the Credit Agreement and the other Loan Documents.

(b)    <u>Payment of Professional Fee Carve-Out</u>.  Any payment or reimbursement made either directly by or on behalf of Lender or by or on behalf of the Debtors on or after the Default Point in respect of any Allowed Professional Fees shall, in either case, permanently reduce the Professional Fee Carve-Out on a dollar-for-dollar basis.  Any payments made to Professionals in respect of Allowed Professional Fees at any time prior to the Default Point shall not reduce the Professional Fee Carve-Out.  Any payments made at any time in respect of any Carve Out Expenses other than Allowed Professional Fees subject to the Professional Fee Carve-Out shall not reduce the Professional Fee Carve-Out.  Lender's obligation to fund or otherwise pay Carve Out Expenses, including Allowed Professional Fees subject to the Professional Fee Carve-Out, shall be added to and made a part of the Obligations, secured by the Collateral, and Lender shall be entitled to all of the rights, claims, liens, priorities and protections under this Final Order, the Loan Documents, the Bankruptcy Code, and/or applicable law in connection therewith.  Payment of any obligations relating to the Professional Fee Carve-Out or other Carve Out Expenses, whether by or on behalf of Lender, shall not and shall not be deemed to reduce the Obligations and shall not and shall not be deemed to subordinate any of Lender's liens and security interests in the Collateral or its Superpriority Claim to any junior pre-petition or post-petition lien, interest, or claim in favor of any other party.  Except as otherwise provided herein with respect to the Professional Fee Carve-Out and

the other Carve Out Expenses, Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Debtors' cases under any chapter of the Bankruptcy Code, and nothing in this Final Order or otherwise shall be construed to obligate Lender, in any way, to pay compensation to or to reimburse expenses of any Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)     Professional Fee Carve-Out Reserve.  Without limiting any of Lender's rights under the Loan Documents or this Final Order, Lender shall implement a Reserve (as defined in the Credit Agreement) in respect of the Professional Fee Carve-Out and the other Carve-Out Expenses in accordance with the terms and conditions of the Credit Agreement.  Such Reserve shall reduce the amount of Loans and Letters of Credit otherwise available to Borrowers under the Credit Agreement.

(d)     Excluded Professional Fees.  Notwithstanding anything to the contrary in this Final Order, the Professional Fee Carve-Out shall not be used to pay any Allowed Professional Fees or any other claims incurred in connection with any of the following: (i) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief: (A) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Lender's liens on and security interests in the Collateral, (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Obligations or Lender's liens on and security interests in the Collateral, or (C) preventing, hindering, or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral, (ii) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy

28

Code) without the prior written consent of Lender, (iii) a request for authorization to obtain postpetition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code other than from Lender without the prior written consent of Lender, (iv) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, or (v) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Lender, or which is contrary, in a manner that is material and adverse to Lender to any term or condition set forth in or acknowledged by the Loan Documents or this Final Order.  Nothing contained herein shall limit or prevent the Professional Fee Carve-Out to be used to investigate and/or bring claims against the Pre-Petition Lender with respect to the Pre-Petition Lender Debt or Pre-Petition Lender's liens and security interests in the Pre-Petition Lender Collateral in accordance with paragraph 15(e) of this Final Order.

(e)    Subject to the terms of this paragraph, the repayment of the Pre-Petition Lender Debt as set forth in paragraph 9 of this Final Order shall be without prejudice to the rights of the Committee, on behalf of the Debtors' estates or a Trustee on behalf the Debtors' estates, to seek to disallow the Pre-Petition Lender's claims in respect of the Pre-Petition Lender Debt, pursue any claims against Pre-Petition Lender in connection with the Pre-Petition Loan Documents or avoid any security interest or liens in the Pre-Petition Lender Collateral or in any other asset or property of the Debtors in which the Pre-Petition Lender claims an interest, including, without limitation, any claim, action or proceeding brought against Pre-Petition Lender in accordance with this paragraph 15(e) that requires the Pre-Petition Lender to disgorge the repaid Pre-Petition Lender Debt (or any portion thereof) as a result of any of Pre-Petition

Lender's claims against the Debtors or liens upon and security interests in any of the assets and properties of Debtors (including the Pre-Petition Lender Collateral) and their estates being invalidated, avoided, subordinated, impaired or compromised in any way, either by an order of this Court (or other court of competent jurisdiction) or by settlement (collectively, a "Disgorgement Action").  The Committee or Trustee, as referred to above, shall have seventy-five (75) calendar days from the date of appointment of counsel for the Committee within which to commence an adversary proceeding (collectively, a "Pre-Petition Lien/Claim Challenge") with respect to the Pre-Petition Lender's claims in respect of the Pre-Petition Lender Debt or security interest in the Pre-Petition Lender Collateral, or any other claims or causes of action against  the Pre-Petition Lender relating to the Pre-Petition Loan Documents.  If such a Pre-Petition Lien/Claim Challenge is not timely commenced within such applicable period set forth above, (i) the Pre-Petition Lender Debt and Pre-Petition Lender's security interests in and liens upon the Pre-Petition Lender Collateral shall be recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses and perfected, and (ii) Pre-Petition Lender and its respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time immediately prior to the Petition Date in accordance with the Pre-Petition Loan Documents entered into with Debtors, and all of the Debtors' acknowledgements, releases and waivers of claims granted to or in favor of Pre-Petition Lender relating to the Pre-Petition Loan Documents in accordance with this Interim Order shall be binding upon all parties in interest in the Debtors' Chapter 11 cases and/or in any subsequently converted case(s) under Chapter 7 of the Bankruptcy Code.

16.    <u>Disposition of Collateral</u>.  Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, and Debtors shall not assume, assign or reject or seek to assume, assign or reject (except that any Debtor shall assume, assign or reject pursuant to an order from the Court approving any real property lessor's motion to compel such actions) any Leasehold Property (as defined in the Credit Agreement) or other rights under any lease or license of real or personal property without the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by Lender or an order of this Court), except for sales of Debtors' Inventory (as defined in the Credit Agreement) in the ordinary course of their businesses or except as otherwise provided for in the Credit Agreement, the other Loan Documents and this Final Order.  Nothing contained in this paragraph shall limit or impair the right of any real property lessor of any Debtor to request that the Court compel the Debtors to assume or reject any real property lease.

17.    <u>Waiver of 506(c) Claims Against Lender</u>.  No costs or expenses of administration which already have been, or may hereafter be, incurred in the Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code shall be charged or asserted by the Debtors against Lender, its claims or the Collateral, pursuant to Section 105 or 506(c) of the Bankruptcy Code or otherwise without the prior written consent of Lender (and no such consent shall be implied from any other action, inaction or acquiescence by Lender).  Nothing contained in this paragraph shall waive the rights of the Committee or any other party in interest to assert a claim under Section 506(c) of the Bankruptcy Code; provided, that the foregoing does not and shall not be construed to grant standing to any such party to assert a claim under Section 506(c) of the Bankruptcy Code.

18.    <u>Remedies upon Occurrence of Event of Default</u>.  In the event of the occurrence of any of the following: (a) the failure of Debtors to perform in any material respect any of their obligations pursuant to this Final Order, (b) the occurrence of any Event of Default under the Credit Agreement or the other Loan Documents, (c) the termination or non-renewal of the Loan Documents as provided for in the Credit Agreement, or if terminated sooner by an order of this Court, (d) the conversion of any Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, (e) the appointment of a trustee pursuant to Section 1104(a) of the Bankruptcy Code in Debtors' Chapter 11 cases, (f) the appointment of any examiner with expanded powers pursuant to Section 1106(b) of the Bankruptcy Code in Debtors' Chapter 11 cases, (g) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending this Final Order without the express prior written consent of Lender (and no such consent shall be implied from any other action, inaction or acquiescence by Lender), (h) the failure of this Final Order to become final and non-appealable within sixty (60) days after the date of the Motion, (i) the failure of Debtors to remain current in payment of any material amount of post-petition administrative obligations, except for amounts the validity of which is being contested in good faith by Debtors, (j) if any party obtains relief from the automatic stay to enable such party to foreclose or otherwise enforce any junior lien (including contractually junior liens) or other rights such other party may have that are junior, inferior or subject to the rights and claims of Lender in and to any property of the estate of Debtors upon which Lender holds a lien or security interest, or (k) a plan of reorganization or liquidation being filed by any Debtor, or the acceptance by the requisite class(es) of creditors and/or interest holders in any Debtor's estate to enable confirmation under Section 1129 of the Bankruptcy Code of any plan of reorganization or liquidation filed by any party, that, in each case, does not provide for the

payment in full in immediately available funds of all Obligations on the effective date thereof on terms and conditions reasonably acceptable to Lender (each of the foregoing being referred to in this Final Order, individually, as an "Event of Default" and collectively, as "Events of Default"); then (unless such Event of Default is specifically waived in writing by Lender, which waiver shall not be implied from any other action, inaction or acquiescence by Lender) and upon or after the occurrence of any of the foregoing, and at all times thereafter, after giving five (5) business days notice in writing, served by hand or telefax upon the Court (including filing such notice electronically on the Court's docket), Debtors' counsel, counsel to the Committee, any trustee of Debtors, if appointed, the United States Trustee and counsel for various real property lessors of the Debtors as listed on Exhibit "A" to this Final Order:  (i) all of the Obligations shall become immediately due and payable, (ii) the automatic stay provided for pursuant to Section 362 of the Bankruptcy Code and any other restrictions on the enforcement by Lender of its liens upon and security interests in the Collateral or any other rights under the Loan Documents granted to or for the benefit of Lender or pursuant to this Final Order shall be automatically vacated and modified without any further action being required, and (iii) Lender, without further notice, hearing or approval of this Court (subject to paragraphs 19 and 20 hereof), shall be, and hereby is authorized, in the discretion of Lender, to take any and all actions or remedies which Lender may deem appropriate to proceed against and realize upon the Collateral and any other assets and properties of Debtors' estates upon which Lender has been or may hereafter be granted liens and security interests to obtain the full and indefeasible repayment of the Obligations.  Nothing contained in this Final Order or otherwise shall be construed to obligate Lender in any way to lend or advance any additional funds to Debtors, or provide other financial accommodations to Debtors upon or after the occurrence of an Event of Default.

19.    <u>Leasehold Property Rights of Lender</u>.  Without limiting any of the rights or remedies of Lender (including, without limitation, all rights afforded under applicable state law) provided in paragraph 18 hereof or otherwise herein or in any of the Loan Documents, upon or after the occurrence of an Event of Default, and subject to such notices as are otherwise provided for herein, Agent shall have the right, in its discretion, to file and pursue (on behalf of any Debtor or as the secured party with respect to any Leasehold Property) or direct and require any Debtor to immediately file and diligently pursue, and prosecute any motion or other appropriate pleading with this Court seeking the assumption, assignment or rejection of such of the leases with respect to the Leasehold Property as Agent shall specify and in the case of the assignment, assigned to such person or other entity as Agent shall specify and any such assignment shall be on terms and conditions as are acceptable to Agent and subject to (i) higher and better offers to the extent required under Section 363 of the Bankruptcy Code and (ii) the affected lessor's rights under the applicable lease(s) (to the extent such rights are enforceable or effective under Section 365 of the Bankruptcy Code) and the Bankruptcy Code.  Debtors are authorized and directed to execute and deliver such agreements, documents and instruments as Agent may request to effectuate the foregoing, but no such agreements, documents or instruments shall be required for such purpose.

20.    <u>Collateral Rights</u>.  Until all of the Obligations shall have been indefeasibly paid and satisfied in full in immediately available funds and without further order of the Court:

(a) In the event that any party who holds a lien or security interest in any asset or property of the Debtors or their estates that is junior and/or subordinate to the liens and claims of Lender in such property receives or is paid proceeds of the Collateral prior to the indefeasible payment and satisfaction in full of all Obligations, such junior or subordinate lienholder shall be

deemed to have received, and shall hold, such Collateral proceeds in trust for Lender and shall immediately turnover to Lender such proceeds for application to the Obligations in accordance with the Loan Documents and this Final Order.

(b) Upon and after the occurrence of an Event of Default, and subject to Agent obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the costs and expense of Debtors, to: (i) enter upon, occupy and use any personal property, fixtures and equipment owned or leased by Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses.  Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Agent actually occupies or uses such assets or properties); and

(c) On and after the occurrence of an Event of Default, and subject to Agent obtaining relief from the automatic stay as provided for herein, upon Agent providing five (5) business days notice to any Debtor's real property lessor of Agent's intention to enter onto or into such lessor's leased premises to remove or otherwise dispose of any Collateral located at such leased premises in accordance with the terms of this paragraph, Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, following the expiration of such five (5) business days notice period described in this paragraph, to enter onto or into such leased premises for the purpose of removing the Collateral off the leased

premises or selling such Collateral at the leased premises, in each case subject to the applicable terms of such Debtor's lease arrangements with such lessor to the extent enforceable or effective under the Bankruptcy Code and subject to the rights of Agent provided for herein.  The Debtors shall remain obligated to perform any obligation and to pay any rent and additional rent due under the terms of their leases at all times, including during the period commencing upon Agent obtaining the right to enter the Debtors' leased premises in accordance with this paragraph through and including the date at which Agent vacates the leased premises and provides such lessor with written confirmation of such vacation and delivers in connection with such written confirmation any keys, access cards or other means of access to the leased premises to the extent such items are then available to Agent (the "Collateral Access Period").  In the event that such rental or other obligations incurred during the Collateral Access Period are not otherwise fulfilled or performed by or on behalf of Debtors, then Lender will be responsible for the performance and payment of such rental charges (provided, that, any such rental charges for which Lender is responsible during the Collateral Access Period under this paragraph shall be calculated on a per diem basis) and such other obligations under such applicable lease (subject to the provisions of the Bankruptcy Code) and except as otherwise provided by an Order of this Court.  Nothing herein shall require the Lender to assume any lease or cure any defaults as a condition to the rights afforded in this paragraph.  Notwithstanding anything contained herein to the contrary or otherwise, in relation to the Debtors' leased real property, Agent shall have the right, in its discretion, to seek, or direct and require any Debtor to seek, approval from the Court to conduct "going-out-of-business sales" or other sales at any leased location outside the ordinary course of Debtors' businesses conducted at such location, subject to the terms and guidelines approved by the Court and the rights of any lessor of such leased location under their respective

leases and Section 365 of the Bankruptcy Code, and nothing contained herein shall be deemed to prejudice the rights of any real property lessor of any Debtor to any affected leased location to object to such relief.

21.    <u>Amendment to Loan Documents</u>.  Agent, with the consent of Debtors, is hereby authorized to amend and/or modify the Loan Documents without further order of the Court for purposes of, among other things, implementing the syndication of the financing provided for in the Credit Agreement and the other Loan Documents (which syndication may result in increased costs charged to the Borrowers under the Credit Agreement and the other Loan Documents) and modifying or waiving compliance with financial covenants contained in the Credit Agreement or increasing the amount of loans available to Borrowers or changes related to any of the foregoing; <u>provided</u>, <u>that</u>, any such amendments and modifications must be in writing and served upon counsel for the Committee and the United States Trustee.

22.    <u>Reservation of Lender's Rights</u>. Entry of this Final Order shall not be deemed to prejudice any and all rights, remedies, claims and causes of action Lender may have against third parties, and shall not prejudice the rights of Lender from and after the entry of this Final Order to seek any other relief in the Debtors' Chapter 11 cases.  Entry of this Final Order shall not in any way constitute: (a) a preclusion or a waiver of any right of Lender to file, or to prosecute if already filed, a motion for relief from stay, a motion or request for relief, including but not limited to any adversary proceeding; (b) agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Final Order; (c) a preclusion or waiver to assert any other rights, remedies or defenses available to Lender, or to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses

and opportunities to respond being specifically reserved by Lender; or (d) a preclusion, waiver or modification of any rights or remedies that Lender has against any other person or entity.

23.    <u>Release Upon Repayment of Obligations</u>    Upon the payment in full of all Obligations owed to Lender and termination of the Credit Agreement and the other Loan Documents, Lender shall be released by each Debtor and its bankruptcy estate from any and all obligations, liabilities or responsibilities arising in connection with or related to this Final Order, the Credit Agreement and the other Loan Documents in accordance with the terms and conditions contained in the Loan Documents; provided, that, in the event that Lender forecloses on any real property leasehold interest of any Debtor and, as a result, becomes a tenant or lessee under such lease, then the releases provided for in this paragraph in favor of Lender shall not extend to the lease obligations of Lender in its capacity as tenant or lessee under the applicable lease.  Upon repayment in full of all Obligations owed to Lender, the releases granted in favor of Lender, and the termination of the Credit Agreement and the other Loan Documents, all in accordance with this paragraph, the Debtors shall file with this Court a notice evidencing the termination and release of Lender's liens and claims against the Debtors and all assets and properties of their estates.

24.    <u>Restrictions on Use of Cash Collateral, Additional Financing</u>.  All post-petition advances and other financial accommodations under the Credit Agreement and the other Loan Documents are made in reliance on this Final Order.  In the event that any order is entered at any time in Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code which (a) authorizes the use of cash collateral of Debtors in which Lender has an interest or the sale, lease, or other disposition of property of Debtors' estates in which Lender has a lien or security interest, except as expressly permitted hereunder or in the

Loan Documents, or (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of

credit or the incurring of indebtedness secured by a lien or security interest which is equal or

senior to a lien or security interest in property in which Lender holds a lien or security interest, or

which is entitled to priority administrative claim status which is equal or superior to that granted

to Lender herein, then, in each instance described in clauses (a) and (b) of this paragraph, (i)

Lender shall first have given its express prior written consent thereto, no such consent being

implied from any other action, inaction or acquiescence by Lender, or (ii) such other order shall

require that all Obligations first shall be indefeasibly paid in full in immediately available funds.

The security interests and liens granted to or for the benefit of Lender hereunder and the rights of

Lender pursuant to this Final Order and the Loan Documents with respect to the Obligations and

the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected

by any plan of reorganization of Debtors and, if Lender shall expressly consent in writing that

the Obligations shall not be repaid in full upon confirmation thereof, shall continue after

confirmation and consummation of any such plan.

25.    <u>Binding Effect of Final Order and Loan Documents</u>.

(a)    The provisions of this Final Order and any actions taken pursuant

hereto shall survive entry of any order which may be entered converting Debtors' Chapter 11

cases to a Chapter 7 case, dismissing any of Debtors' bankruptcy cases (in the case of any such

dismissal, to the maximum extent permitted under the Bankruptcy Code and other applicable

law) or any order which may be entered confirming or consummating any plan of reorganization

of Debtors, and the terms and provisions of this Final Order as well as the priorities in payment,

liens, and security interests granted pursuant to this Final Order and the Loan Documents shall

continue in this or any superseding case under the Bankruptcy Code, and such priorities in

39

payment, liens and security interests shall maintain their priority as provided by this Final Order until all Obligations are indefeasibly paid and satisfied; provided, that, all obligations and duties of Lender hereunder, under the Loan Documents or otherwise with respect to any future loans and advances or otherwise shall terminate immediately upon the earlier of the date of any Event of Default or the date that a plan of reorganization of the Debtors becomes effective unless Lender has given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by Lender.

(b)     The provisions of this Final Order and the Loan Documents shall inure to the benefit of Debtors, Lender and the Pre-Petition Lender and shall be binding upon Debtors, Lender, and the Pre-Petition Lender and their respective successors and assigns, including any Chapter 11 or Chapter 7 Trustee or other fiduciary hereafter appointed as a legal representative of Debtors or with respect to property of the estate of Debtors, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and shall also be binding upon all creditors of Debtors and other parties in interest.

26.     No Modification or Stay of This Final Order.  If any or all of the provisions of this Final Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by Debtors to Lender or the Pre-Petition Lender prior to the effective date of such modification, vacation or stay, (b) the validity or enforceability of any security interest, lien, or priority authorized or created hereunder or pursuant to the Loan Documents, as applicable, or (c) the indefeasible repayment by Debtors of the Pre-Petition Lender Debt.  Notwithstanding any such modification, vacation or stay, any indebtedness, obligations or liabilities incurred by Debtors to Lender or the Pre-Petition Lender prior to the effective date of such modification,

vacation or stay shall be governed in all respects by the original provisions of this Final Order, and Lender and the Pre-Petition Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations and/or liabilities.  The obligations and indebtedness of Debtors to Lender under this Final Order and/or the Loan Documents shall not be discharged by the entry of an order confirming a plan of reorganization in Debtors' bankruptcy cases pursuant to Section 1141(d)(4) of the Bankruptcy Code or otherwise, unless and until all Obligations of Debtors to Lender are indefeasibly paid in full in accordance with the terms and conditions of the Loan Documents prior to or concurrently with the entry of such order.

27.    No Waivers or Modification of Final Order.  Debtors irrevocably waive any right to seek any modifications or extensions of this Final Order without the prior written consent of Lender and no such consent shall be implied by any other action, inaction or acquiescence by Lender.  Notwithstanding anything to the contrary contained herein, no provision of this Final Order concerning the repayment of the Pre-Petition Lender Debt pursuant to the provisions of this Final Order shall be modified, vacated, stayed or altered in any manner or respect.

28.    Conflicting Provisions.  To the extent the terms and conditions of the Loan Documents are in conflict with the terms and conditions of this Final Order, the terms and conditions of this Final Order shall control.

29.    Reservation of Rights Concerning Reclamation Claims.  For purposes of paragraphs 29 and 30 hereof, a "Reclamation Creditor" is a vendor of goods that has asserted a reclamation demand against a Debtor in accordance with Section 546(c)(1) of the Bankruptcy

Code and/or with any statutory or common law right of a seller of goods that has sold goods to a

debtor, in the ordinary course of such vendor's business, to reclaim such goods if the debtor

received such goods while insolvent.  For purposes of paragraphs 29 and 30 hereof, the claim of

such Reclamation Creditor arising from the reclamation demand is considered a "Reclamation

Claim".  None of (i) the entry of this Final Order, the Interim Order, the Cash Collateral Order

and/or any extensions thereof (collectively, the "Financing Orders"), (ii) the provisions of and the

relief granted in the Financing Orders, and/or (iii) any action taken (or not taken) pursuant to the

Financing Orders, shall in any way affect the treatment or allowance of the Reclamation Claim

of a Reclamation Creditor.  For purposes of the determination of Reclamation Claims, the entry

of the Financing Orders does not effect an exercise of foreclosure rights in any respect and no

party in interest may assert that the Financing Orders or any assignment of any pre-petition lien

is in any way equivalent to, or an exercise of, foreclosure rights; provided that the right of any

Reclamation Creditor to "opt out" of the provisions of this paragraph 29 are reserved in

accordance with the ruling of this Court on the record at the Final Hearing, as so ordered, with

respect to the Motion, or upon further order of this Court.

    30.    <u>Reclamation Claims</u>.  Notwithstanding anything to the contrary contained

in this Final Order (including, without limitation, paragraph 29 hereof), any order approving the

Debtors' Motion for Order (A) Authorizing Return of Goods Pursuant to 11 U.S.C. Section

546(g), (B) Establishing Procedures for Treatment of Reclamation Claims, and (C) Prohibiting

Third Parties from Interfering with Delivery of Goods, filed on February 22, 2005 (docket no.

21) or any other order of this Court that has been or may hereafter be entered in any Debtor's

Chapter 11 case in connection with any Reclamation Claim, any lien and/or administrative

expense claim granted by the Court pursuant to Section 546(c) of the Bankruptcy Code to a

Reclamation Claim of a Reclamation Creditor shall be immediately subordinate to the liens, and shall be subordinate to the superpriority administrative claims, granted and assigned herein to the Lender and the Pre-Petition Lender, and shall be subject to all of the provisions of the Financing Orders (including, without limitation, paragraph 20 hereof).

31.    Good Faith.  The terms of the financing arrangements among Debtors and Lender have been negotiated in good faith and at arms' length among Debtors and Lender and any loans, advances or other financial accommodations which are made or caused to be made to Debtors by Lender pursuant to the Loan Documents are deemed to have been made and provided in good faith, as the term "good faith" is used in Section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. Consistent with Section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Final Order are hereafter modified, vacated or stayed:

> i.    such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability or lien granted or incurred by any Debtor to Lender prior to the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any lien, priority or right authorized or created under the original provisions of this Final Order or pursuant to the Loan Documents;

> ii.    any indebtedness, obligation or liability incurred by any Debtor to Lender under the Loan Documents prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original

provisions of this Final Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits, including the liens, security interests and priorities granted herein and pursuant to the Loan Documents, with respect to any such indebtedness, obligation or liability; and

iii.   since the loans made pursuant to the Loan Documents are made in reliance on this Final Order, the Obligations owed Lender prior to the effective date of any stay, modification or vacation of this Final Order cannot, as a result of any subsequent order in these Chapter 11 cases, or in any superseding case, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to Lender under this Final Order and/or the Loan Documents.


Dated: New York, New York
        March 23, 2005

                    _____/s/ Robert D. Drain_____
                    United States Bankruptcy Judge