Presentment Date:  April 7, 2005 at 12:00 p.m. ET
Objection Deadline:  April 7, 2005 at 11:30 a.m. ET
Hearing Date:  April 12, 2005 at 10:00 a.m. ET
(only if timely objections filed)

Alan W. Kornberg (AWK/0756)
Curtis J. Weidler (CJW/8633)
Jeremy S. Gladstone (JSG/8151)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019
Tel.: (212) 373-3000
Fax: (212) 757-3990

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:                                                          :  Chapter 11
                                                                :  Case Nos. 05-11063 (RDD)
WINN-DIXIE STORES, INC., et al.,            :
                                                                :  (Jointly Administered)
                                                                :
                            Debtors.                         :

------------------------------------------------------------------x

## NOTICE OF PRESENTMENT OF APPLICATION OF OCM OPPORTUNITIES FUND V, L.P. FOR ORDER UNDER 11 U.S.C. § 105(a) PERMITTING SECURITIES TRADING IN CERTAIN CIRCUMSTANCES

PLEASE TAKE NOTICE that upon the annexed application of OCM Opportunities Fund V, L.P. the undersigned will present the attached proposed order to the HONORABLE ROBERT DRAIN, UNITED STATES BANKRUPTCY JUDGE, for signature on April 7, 2005 at 12:00 p.m. ET.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the proposed order must be made in writing and received in the Bankruptcy Judge's chambers and by the undersigned not later than 11:30 a.m. ET on April 7, 2005.  Unless objections are received by that time, the order may be signed.

Dated:  New York, New York
       March 28, 2005

                      PAUL, WEISS, RIFKIND, WHARTON &
                      GARRISON LLP

                      By:      /s/ Alan W. Kornberg
                              Alan W. Kornberg
                              Curtis J. Weidler
                              Jeremy S. Gladstone
                              1285 Avenue of the Americas
                              New York, NY  10019-6064
                              Tel. No. 212-373-3000
                              Tel. No. 212-757-3990

                      Counsel for OCM Opportunities Fund V,
                      L.P.

Alan W. Kornberg (AWK/0756)
Curtis J. Weidler (CJW/8633)
Jeremy S. Gladstone (JSG/8151)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019
Tel:  (212) 373-3000
Fax:  (212) 757-3990

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                    :   Chapter 11
                                          :   Case Nos. 05-11063 (RDD)
                                          :
WINN-DIXIE STORES, INC., et al.,          :
                                          :   (Jointly Administered)
                          Debtors.        :
-------------------------------------------------------------x

## APPLICATION OF OCM OPPORTUNITIES FUND V, L.P. FOR ORDER UNDER 11 U.S.C. § 105(a) PERMITTING SECURITIES TRADING IN CERTAIN CIRCUMSTANCES

TO THE HONORABLE ROBERT DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

OCM Opportunities Fund V, L.P. ("OCM"), a member of the Official Committee of Unsecured Creditors (the "Committee") of Winn-Dixie Stores, Inc., and its affiliated debtors and debtors in possession (collectively, "Winn-Dixie" or the "Debtors"), hereby applies to this Court for the entry of an order under section 105(a) of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), permitting OCM to trade in the Debtors' Securities (as defined below) under certain circumstances, and, in support thereof, states as follows:

### BACKGROUND

*OCM*

1.      OCM is the holder of $25,250,000 of Winn-Dixie's 8.875% senior unsecured notes due April 1, 2008.  OCM is affiliated with Oaktree Capital Management, LLC,

which is a specialized investment firm.  As used herein, the term "Oaktree" refers to OCM, Oaktree Capital Management, LLC and their affiliates.

*The Debtors*

2.    The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.

3.    On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

4.    The Debtors employ approximately 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

*The Creditors' Committee*

5.    On March 2, 2005, the United States Trustee appointed the Committee. OCM is a member of the Committee.

## JURISDICTION

6.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## RELIEF REQUESTED

7.    By this Application, OCM seeks the entry of an order determining that

2

OCM, acting in any capacity, will not violate its duties as a Committee member (and, therefore, will not subject its claims to possible disallowance, reduction, subordination or other adverse treatment) by trading in the Debtors' stock, notes, bonds, debentures, participations in, or any derivatives based upon or relating to, any of the Debtors' debt obligations or other claims or equity interests, to the extent any of these constitute securities under § 2(a)(1) of the Securities Act of 1933 (collectively, the "Securities") during the pendency of the Debtors' cases, provided that OCM establishes and effectively implements the policies and procedures set forth herein, such as a Fire Wall[1] to prevent the misuse of non-public information obtained through OCM's activities as a Committee member.

## PROPOSED PROCEDURES

8.    OCM proposes that (1) OCM shall cause all of its designated personnel who shall sit or serve on the Committee ("Committee Personnel") to execute a letter acknowledging that they may receive non-public information and that they are aware of this Court's order concerning trading by Committee members and the Fire Wall procedures that are in effect with respect to the Securities; (2) Committee Personnel will not share any Committee information with any other employees of Oaktree other than in compliance with the Fire Wall procedures; (3) Committee Personnel will keep any information generated from Committee activities in files inaccessible to other Oaktree employees; (4) Committee Personnel will receive

---

[1]    As used herein, "Fire Wall" refers to a procedure established by an institution to isolate its trading activities from its activities as a member of an official committee of unsecured creditors in a chapter 11 case. A Fire Wall normally includes, inter alia, the employment of different personnel to perform each function, physical separation of the office and file space, procedures for locking committee-related files, separate telephone and facsimile lines for each function and special procedures for the delivery and posting of telephone messages.

3

no information regarding Oaktree's trades in Securities other than the usual and customary internal and public reports showing Oaktree's purchases and sales and the amount and class of securities owned by Oaktree, including the Securities; provided, however, that Committee Personnel shall not receive any such information until at least 30 days after such purchase or sale of Securities unless such information is necessary to OCM's compliance with Committee bylaws; and (5) Oaktree's compliance department personnel or internal counsel shall review from time to time the Fire Wall procedures employed by OCM as necessary to ensure compliance with this Order and shall keep and maintain records of such reviews.

## BASIS FOR RELIEF REQUESTED

9.     Many financial institutions have faced the dilemma in chapter 11 cases of whether they could serve on an official creditors' committee while upholding their duties to their clients to maximize returns through the buying and selling of securities.  This dilemma could discourage the largest creditors with expertise and experience in reorganizations from joining creditors' committees, despite the presumption in the Bankruptcy Code that the committee will "ordinarily" consist of the debtor's largest creditors.  See 11 U.S.C. § 1102(b)(1).

10.     In In re Federated Dep't Stores, Inc., No. 1-90-00130, 1991 WL79143 at *1 (Bankr. S.D. Ohio Mar. 7, 1991), Fidelity Management and Research Company ("Fidelity"), an official creditors' committee member, moved for an order determining that it would not violate its duties as committee member by trading in the debtors' securities if it implemented certain Fire Wall procedures designed to insulate its trading activities from its committee-related activities.  Numerous parties filed responses in support of Fidelity's motion, including the debtors and the United States Securities and Exchange Commission (the "SEC").  A copy of the SEC's memorandum of law in support of Fidelity's motion (the "SEC Memorandum") is

4

attached hereto as Exhibit A.[2]  In urging the bankruptcy court to adopt its position, the SEC

argued that

> consistent with the requirements of the federal securities laws and
> the bankruptcy laws, an entity which is engaged in the trading of
> securities as a regular part of its business and which has
> established procedures reasonably designed to prevent the
> transmission to its trading personnel of information obtained
> through service on an official committee is not precluded from
> serving on the committee and, at the same time, trading in the
> debtor's securities.

SEC Memorandum at 6.  The SEC Memorandum further stated that large institutional creditors,

such as investment advisors and broker-dealers, "have skills and expertise that are likely to be

extremely valuable to the committee," and concluded that there is "no legal impediment to

permitting the service of such entities on official committees." Id.

      11.    The bankruptcy court agreed, holding that Fidelity would not violate its

fiduciary duties as a committee member (or subject its claims to possible disallowance,

subordination, or other adverse treatment) if it traded in the debtor's securities with appropriate

Fire Wall procedures in place. In re Federated Dep't Stores, Inc., 1991 WL 79143 at *1.  The

court also specified certain features that an acceptable Fire Wall procedure must contain,

including (i) written acknowledgement by personnel performing committee work that they could

receive non-public information and were aware of the Fire Wall procedures in effect; (ii) a

prohibition on the sharing of non-public committee information with other employees; (iii)

separate file space for committee work that is inaccessible to other employees; (iv) restrictions

---

[2]    The SEC Memorandum contains a thorough analysis of the relevant law and is
commonly cited as the most influential authority regarding creditors' committee Fire
Walls.  In lieu of preparing and filing an additional memorandum of law on the identical
subject and substantially similar arguments, OCM adopts the legal analysis in the SEC
Memorandum.

on committee personnel's access to trading information; and (v) a compliance review process

(the "Federated Fire Wall Procedures").  Id.

12.     Since Federated, numerous other bankruptcy courts, including this Court,

have recognized the importance of having large institutional creditors participate on official

creditors' committees and have entered orders permitting members of a debtor's official

committee to trade the debtor's securities with a Fire Wall procedure in place.  See In re

Adelphia Communications Corp., No. 02-41729 (Bankr. S.D.N.Y. Aug. 19, 2002) (permitting

members of the official creditors' committee to trade in the debtor's securities in certain

circumstances provided the committee members established and implemented screening wall

procedures); In re WorldCom, Inc., No. 02-13533 (Bankr. S.D.N.Y. Aug. 6, 2002) (same); In re

Global Crossing Ltd., No. 02-40187 (Bankr. S.D.N.Y. March 25, 2002) (same); In re Enron

Corp., No. 01-16034 (Bankr. S.D.N.Y. Feb. 27, 2002) (same); In re Dairy Mart Convenience

Stores, Inc., No. 01-42400 (Bankr. S.D.N.Y. Dec. 20, 2001) (same); In re Iridium Operating

LLC, No. 99-45005 (Bankr. S.D.N.Y. Nov. 3, 1999) (same); In re Favorite Brands Int'l Holding

Corp., No. 99-726 (Bankr. D. Del. May 28, 1999) (permitting members of the official creditors'

committee to trade in the debtor's securities provided the committee members established and

implemented Fire Wall procedures); In re Mid Am. Waste Sys., Inc., No. 97-104 (Bankr. D. Del.

Feb. 21, 1997) (same); In re Ace-Texas, Inc., No. 96-166 (Bankr. D. Del. July 17, 1996) (same);

In re Wherehouse Entm't, Inc. & WEI Holdings, Inc., No. 95-911 (Bankr. D. Del. Sep. 8, 1995)

(same); In re Columbia Gas Sys., Inc., Case No. 91-803 (Bankr. D. Del. Sept. 10, 1991) (same);

In re Harvard Indus., Inc., No. 91-404 (Bankr. D. Del. July 15, 1991) (same).  Copies of the

orders entered in the Adelphia, WorldCom, and Global Crossing cases are attached hereto as

Exhibit B.

13.     In addition, section 105(a) of the Bankruptcy Code authorizes this Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy, ¶ 105.1, at 105-6 (15th rev. ed. 2004).

14.     OCM believes that it should not be precluded from trading in the Debtors' Securities, without exception, during its service on the Committee. As set out more fully in the SEC Memorandum, large institutional creditors have the resources and experience that render them particularly valuable for official committee service. And as OCM is among the Debtors' largest creditors, OCM has a strong incentive to pursue Committee work diligently. Denial of the relief sought herein might discourage the largest creditors with expertise and experience in reorganizations from joining other creditors' committees, despite the presumption in the Bankruptcy Code that the committee will "ordinarily" consist of the debtor's largest creditors. See 11 U.S.C. § 1102(b)(1). Creditors such as OCM should not be forced into the choice of serving on a committee and risking the loss of beneficial investment opportunities for their institutions and clients or foregoing service and possibly compromising those same responsibilities by taking a less active role in the reorganization.

15.     OCM seeks entry of an order that will permit a mechanism for the authorized trading in Securities by OCM or its Affiliates. As set out in the SEC Memorandum, there is no impediment in the federal securities laws or the Bankruptcy Code to the relief sought by OCM. Indeed, the SEC has long recognized the value and legitimacy of Fire Walls in the securities law context. See SEC Memorandum at 7-13. As this and other bankruptcy courts

7

have recognized, there is no reason why Fire Wall procedures cannot prove to be just as useful in bankruptcy.

16.    Accordingly, for the foregoing reasons and those set forth in the attached SEC Memorandum, OCM believes that it and its affiliates should be permitted to trade in the Debtors' Securities during the pendency of these cases on the condition that OCM establishes and effectively implements policies and procedures substantially similar to the Federated Fire Wall Procedures, to prevent the misuse of non-public information obtained through its activities as a Committee member.

## WAIVER OF MEMORANDUM OF LAW

17.    Because this Application presents no novel issues of law and the authorities relied upon by OCM are set forth herein, OCM respectfully requests that the Court waive the requirement for the filing of a separate memorandum of law in support of this Application pursuant to Local Bankruptcy Rule 9013-1(b), but OCM reserves the right to file a brief in reply to any objection to this Application.

## NOTICE

18.    Notice of this Application has been given to (i) counsel for the Debtors, (ii) counsel for the Debtors' postpetition lenders, (iii) the Office of the United States Trustee for the Southern District of New York, (iv) the Securities and Exchange Commission, (v) the United States Attorney's Office, (vi) the United States Attorney General, (vii) the Internal Revenue Service and (viii) all other persons that have requested notice or copies of pleadings filed in these cases under Rule 2002 of the Federal Rules of Bankruptcy Procedure.  In light of the nature of the relief requested herein, OCM submits that no other or further notice need be given.

8

## NO PRIOR REQUEST

19.    No previous application for the relief requested herein has been made to this or any other court.

WHEREFORE, OCM respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit C (1) determining that OCM acting in any capacity will not violate its duties as a Committee member (and accordingly, will not subject its claims to possible disallowance, reduction, subordination, or other adverse treatment) by trading in Securities during the pendency of the Debtors' cases, provided that OCM uses a Fire Wall to insulate its trading activities from the activities related to its Committee service in accordance with the terms of this Application and (2) granting OCM such other relief as this Court deems appropriate.

Dated:      New York, New York
            March 28, 2005

                              PAUL, WEISS, RIFKIND, WHARTON &
                              GARRISON LLP

                              By:      /s/ Alan W. Kornberg
                                      Alan W. Kornberg
                                      Curtis J. Weidler
                                      Jeremy S. Gladstone
                                      1285 Avenue of the Americas
                                      New York, NY  10019-6064
                                      Tel. No. 212-373-3000
                                      Tel. No. 212-757-3990

                              Counsel for OCM Opportunities Fund V, L.P.

Doc #:NY6:937615.5

# **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

No. 1-90-00130

---

In re:

FEDERATED DEPARTMENT STORES, INC.
and
ALLIED STORES CORPORATION, et. al.,

Debtors.

---

MEMORANDUM OF THE SECURITIES AND EXCHANGE COMMISSION
IN SUPPORT OF MOTION OF FIDELITY MANAGEMENT & RESEARCH CO.

JAMES R. DOTY
General Counsel

JACOB H. STILLMAN
Associate General Counsel

THOMAS L. RIESENBERG
Assistant General Counsel

FELICIA H. KUNG
Attorney

Of Counsel
PAUL GONSON
Solicitor

Securities and Exchange Commission
Washington, D.C.  20549

2

## TABLE OF CONTENTS

PAGE

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION
AND SUMMARY OF ITS POSITION . . . . . . . . . . . . . .   4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . .   7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . .   7

A.   Persons who serve on official committees should be
     viewed as "temporary insiders" of the debtor who
     are subject to the insider trading prohibitions of
     the federal securities laws that are applicable to
     other such insiders . . . . . . . . . . . . . . . .   7

B.   It is good corporate practice for entities which
     serve on official committees to establish
     appropriate preventive procedures, such as Chinese
     Walls, in order to protect against misuse of
     material, nonpublic information and because the
     existence of such protective devices may enable
     them to avoid violating the antifraud provisions  .   8

C.   Consistent with the requirements of the federal
     securities laws and the bankruptcy laws, an entity
     which is engaged in the trading of securities as a
     regular part of its business and which has
     established procedures reasonably designed to
     prevent the transmission of information obtained
     through service on an official committee is not
     precluded from serving on the committee and, at
     the same time, trading in the debtor's securities .   10

     1.   The federal securities laws should not preclude
          trading . . . . . . . . . . . . . . . . . .   10

     2.   The bankruptcy laws should also not preclude
          trading . . . . . . . . . . . . . . . . . .   16

          a.   The former Bankruptcy Act . . . . . . . .   16

               (1)   Section 249 . . . . . . . . . . .   16

               (2)   Section 212 . . . . . . . . . . .   19

          b.   The present Bankruptcy Code . . . . . . .   20

3

3.    Trading should be permitted only by entities which
      are engaged in the trading of securities as a
      regular part of their business . . . . . . . . .    23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .    23

4

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO,
WESTERN DIVISION

No. 1-90-00130

In re:

FEDERATED DEPARTMENT STORES, INC.
AND
ALLIED STORES CORPORATION, ET. AL.,

Debtors.

MEMORANDUM OF THE SECURITIES AND EXCHANGE COMMISSION

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION
AND SUMMARY OF ITS POSITION

Fidelity Management & Research Co. ("Fidelity") is a member
of the Official Bondholders' Committee (the "Committee") of
Allied Stores Corporation ("Allied"). Fidelity requests an order
of this Court determining that Fidelity will not be violating its
duties as a Committee member if it trades in the securities of
Allied and its affiliates during the pendency of the Allied and
Federated bankruptcy proceedings so long as appropriate
preventive procedures, such as Chinese Walls, are implemented to
preclude misuse of nonpublic information obtained through service
on the Committee. The United States Trustee in Allied's Chapter
11 bankruptcy proceeding has stated to members of the Committee
that trading in the securities of the debtor and its related
entities would constitute a breach of their fiduciary obligations
as Committee members.

5

The Securities and Exchange Commission, which acts as an advisor to the courts in bankruptcy reorganization cases pursuant to Section 1109(a) of the Bankruptcy Code, 11 U.S.C. §1109(a), submits this memorandum because it believes that the absolute trading bar urged by the U.S. Trustee would deprive the Official Bondholders' Committee of the expertise that the committee members could otherwise provide. The U.S. Trustee's position would discourage multi-service financial institutions and other entities that trade securities as a regular part of their business from serving on these committees. Since such entities have a substantial financial interest in the outcome of the bankruptcy proceeding and can thus be expected to devote significant time and resources to the official committee's activities, such a result would be contrary to the best interests of public investors.

At the outset, the Commission believes it is important to stress that persons who serve on official committees should be viewed as "temporary insiders," see Dirks v. SEC, 463 U.S. 646, 655 n. 14 (1983), who are subject to the proscriptions against illegal insider trading that are applicable to other such insiders. In addition, it should be noted that entities which serve as such temporary insiders, like Fidelity in this case, have found that it is good corporate practice to establish appropriate preventive procedures, such as Chinese Walls, as a means of preventing misuse of nonpublic information and of avoiding liability under the federal securities laws. The

6

Commission has in recent years encouraged this development.

As to the more specific question presented in this case, the Commission believes that, consistent with the requirements of the federal securities laws and the bankruptcy laws, an entity which is engaged in the trading of securities as a regular part of its business and which has established procedures reasonably designed to prevent the transmission to its trading personnel of information obtained through service on an official committee is not precluded from serving on the committee and, at the same time, trading in the debtor's securities. Entities such as investment advisers, broker-dealers, pension funds, banks, or insurance companies have, in some recent bankruptcies, been among the larger creditors. Such institutions have skills and expertise that are likely to be extremely valuable to the committee. There is no legal impediment to permitting the service of such entities on official committees.

## STATEMENT OF THE CASE

Chapter 11 bankruptcy proceedings for Allied and its affiliate, Federated Department Stores, Inc. ("Federated"), are pending before this Court. Allied owns 50% of Federated Holdings, Inc., which wholly owns Federated. In addition, Allied's parent, Federated Stores, Inc., directly or indirectly owns all of the stock of Ralph's Grocery Stores, Inc. ("Ralph's"). Approximately 16.2% of Ralph's stock is owned directly by Allied. Allied, Federated and Ralph's are all issuers of publicly traded "junk" bonds. As part of the

7

reorganization proceedings, official committees for both Allied and Federated were appointed.

On March 5, 1990, the U.S. Trustee sent a letter to an official Federated bondholders' committee stating that members of that committee are precluded from trading in the securities of Federated or its affiliates.  In his letter, the U.S. Trustee stated that "continued trading in the securities of the Debtors and their related entities would constitute a breach of your fiduciary obligations as committee members. . . .  The above trading restrictions shall be in effect until the date a plan of reorganization has been formally approved by the Court, and regardless as to whether your service on the committee has been terminated, [sic] earlier."  The members of the Allied Committee have been informed by the U.S. Trustee that, in his view, the same trading prohibitions would apply to them.

On January 3, 1991, Fidelity moved that this Court enter an order determining that Fidelity will not be violating its duties as a Committee member by trading in the securities of Allied, Federated or Ralph's.

ARGUMENT

A.   Persons who serve on official committees should be viewed as "temporary insiders" of the debtor who are subject to the insider trading prohibitions of the federal securities laws that are applicable to other such insiders.

Under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, an insider having material, nonpublic information about his company must disclose the information or

8

abstain from trading in order to avoid violating those provisions. See SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968) (en banc), cert. denied, 394 U.S. 976 (1969); Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d 228 (2d Cir. 1974).  In the bankruptcy context, the members of an official committee are properly viewed as "temporary insiders", Dirks, 463 U.S. at 655, n. 14, that is, persons who, like "an underwriter, accountant, lawyer, or consultant working for the corporation," have entered into a "special confidential relationship in the conduct of the business of the enterprise and are given access to information solely for corporate purposes." Id.  Such persons are subject to the same insider trading restrictions as true insiders such as corporate directors.  See U.S. v. Carpenter, 791 F.2d 1024, 1027-29 (2d Cir. 1986), aff'd, 108 S. Ct. 316 (1987); SEC v. Ingram, 694 F. Supp. 1437, 1439-40 (C.D. Cal. 1988); SEC v. Tome, 638 F. Supp. 596, 616-17 (S.D.N.Y. 1986), aff'd, 833 F. 2d 1086 (2d Cir. 1987), cert. denied, 108 S. Ct. 1751 (1988).  Thus, official committee members who trade while in possession of material information about the debtor obtained from serving on the committee violate the antifraud provisions of the federal securities laws.

B:      It is good corporate practice for entities which serve on official committees to establish appropriate preventive procedures, such as Chinese Walls, in order to protect against misuse of material, nonpublic information and because the existence of such protective devices may enable them to avoid violating the antifraud provisions.

A means of protecting against the misuse of material,

9

nonpublic information obtained by entities is to ensure that such
information is not transmitted to persons within the entity who
are responsible for making trading decisions.  Chinese Walls and
similar devices are well-established means of preventing the
transmission of such information, and it is good corporate
practice for entities which serve on official committees to
establish Chinese Walls and similar procedures in order to
protect against the misuse of information.  Such devices have the
practical and prophylactic effect of preventing information from
being disseminated within entities except on a "need to know"
basis. 1/

In addition, under the Insider Trading Securities Fraud
Enforcement Act of 1988 (ITSFEA), such devices are mandated for
broker-dealers and investment advisers.  Section 15(f) of the
Securities Exchange Act, 15 U.S.C. § 78o(f), and § 204A of the
Investment Advisers Act of 1940, 15 U.S.C. § 80b-4A, which were
added by ITSFEA, provide that every registered broker or dealer
and every investment adviser subject to § 204 of the Investment
Advisers Act must "establish, maintain, and enforce written
policies and procedures reasonably designed," taking into account
the nature of the business involved, to prevent the misuse of
material, nonpublic information.

---

1/  See, e.g., In re Merrill Lynch, Pierce, Fenner & Smith,
Inc., 43 S.E.C. 933 (1968).  See generally Levine, Gardiner,
and Swanson, Multiservice Securities Firms; Coping With
Conflicts in a Tender Offer Context, Wake Forest L. Rev. 41,
58-66 (1988); and Varn, The Multi-Service Securities Firm
and the Chinese Wall: A New Look in the Light of the Federal
Securities Code, 63 Neb. L. Rev. 197, 211-16 (1984).

10

Chinese Walls and other preventive procedures may also provide a defense to actions brought under the antifraud provisions. The particular characteristics of that defense, and their application to this situation, are discussed in the following section.

C. Consistent with the requirements of the federal securities laws and the bankruptcy laws, an entity which is engaged in the trading of securities as a regular part of its business and which has established procedures reasonably designed to prevent the transmission of information obtained through service on an official committee is not precluded from serving on the committee and, at the same time, trading in the debtor's securities.

1. The federal securities laws should not preclude trading.

We would agree with the U.S. Trustee's position in this case if members of the Allied Committee would violate the federal securities laws by trading in Allied securities while simultaneously serving on the Committee. We believe, however, that, through establishment of preventive procedures such as a Chinese Wall, entities that engage in the trading of securities as a regular part of their business can serve on official committees and simultaneously trade without violating the antifraud provisions.

An entity, by engaging in multiple activities, may subject itself to insider trading liability in several different situations. In the classic case, the investment banking department of a firm may acquire material, nonpublic information about a company at the same time that the broker-dealer department of the firm is recommending or executing customer

11

transactions in the securities of that company based on public
information that is inconsistent with the confidential
information held by the investment banking department.  In this
situation, the firm must reconcile its duty to its investment
banking client with its duty to its retail customers.  As an
agent of the investment banking client, the firm has the duty to
preserve the confidentiality of the material, nonpublic
information that it acquired through its investment banking
relationship. 2/  At the same time, however, the firm is
performing services for its retail customers, and, at least when
it makes trade recommendations, must reveal any material, adverse
information it possesses to those customers. 3/  A breach of that
duty is actionable, under the so-called "shingle theory," for
violation of Rule 10b-5.  See, e.g., Hanly v. SEC, 415 F.2d 589
(2d Cir. 1969).

Chinese Walls and similar devices may provide a defense to

---

2/    See RESTATEMENT (SECOND) OF AGENCY § 395 (1958): "Unless
      otherwise agreed, an agent is subject to a duty to the
      principal not to use or communicate information
      confidentially given him by the principal or acquired by him
      during the course of or on account of his agency . . . ."
      This obligation continues even after the formal agency
      relationship between the parties ends.  See RESTATEMENT
      (SECOND) OF AGENCY, § 396(b).  See also Lavine, Multiservice
      Securities Firms: Coping With Conflicts in a Tender Offer
      Context, 23 Wake Forest L. Rev. at 83 (1988).

3/    See RESTATEMENT (SECOND) OF AGENCY § 381 (1958); see also
      Varn, The Multi-Service Securities Firm and the Chinese
      Wall:  A New Look In the Light of the Federal Securities
      Code, 63 Neb. L. Rev. 197-211 (1984).  Some firms avoid this
      conflict by informing their retail customers that the firm
      will not disclose nonpublic information obtained from the
      firm's investment banking clients.

12

the liabilities stemming from these conflicts.  The Commission
has formalized the use of Chinese Walls as a defense to liability
under Rule 14e-3.  In 1980, the Commission adopted Rule 14e-3,
which mandates a "disclose or abstain from trading duty" for any
person who obtains inside information about a tender offer from
either the offeror or the target company, or from their officers,
directors or employees.  Since the Rule's objective is to prevent
the actual misuse of nonpublic information, the Rule provides an
exception from this duty for entities that can show that the
individuals making the investment decision are not privy to the
inside information and that the entity has implemented policies
and procedures, reasonable under the circumstances, to ensure
that the securities laws would not be violated. 4/

_____

4/   Rule 14e-3(b) states:

        A person other than a natural person shall
     not violate paragraph (a) of this section if
     such person shows that:

        (1)  The individual(s) making the
     investment decision on behalf of
     such person to purchase or sell any
     security described in paragraph (a)
     or to cause any such security to be
     purchased or sold by or on behalf
     of others did not know the
     material, nonpublic information;
     and

        (2)  Such person has implemented
     one or a combination of policies
     and procedures, reasonable under
     the circumstances, taking into
     consideration the nature of the
     person's business, to ensure that
     individual(s) making investment
     decision(s) would not violate

(continued...)

13

Although the Commission has not codified the use of preventive procedures as a means to avoid securities law liability except in Rule 14e-3, the same legal principles extend to actions under Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder. See Statement of David S. Ruder, Chairman, Securities and Exchange Commission, Before the Subcommittee on Securities of the Senate Banking, Housing and Urban Affairs Committee, Concerning the Commission's Revised Proposal to Define Insider Trading (Dec. 15, 1987); Letter from Chairman John S.R. Shad to Honorable Timothy E. Wirth (June 29, 1983), reprinted in H.R. Rep. No. 355, 98th Cong., 1st Sess. 25 (1983). See also Koppers v. American Express, 689 F. Supp. 1413, 413-15 (W.D. Pa. 1988) (reprinting letter to the court from the Commission's General Counsel stating that the Commission "believes that violations of the federal securities laws stemming from these conflicts can be avoided through the use of well-established preventive policies and procedures, such as Chinese

4/(...continued)

paragraph (a), which policies and procedures may include, but are not limited to, (i) those which restrict any purchase, sale and causing any purchase and sale of any such security or (ii) those which prevent such individual(s) from knowing such information.

See Securities Act Release No. 6239, Fed. Sec. L. Rep. (CCH) ¶ 82,646 at 83,461 (Sept. 4, 1980).

14

Walls, restricted lists and watch lists."). 5/

A Chinese Wall defense to liability for insider trading is
also provided under ITSFEA.  Section 21A(a) of the Securities
Exchange Act, which was added by ITSFEA, provides for the
imposition of civil penalties on persons who "control" a person
who engages in illegal insider trading.  Section 21A(b)(1)(B),
however, provides that in order to obtain such penalties the
Commission must show that at least one of two situations existed.
One of these is that the controlling person "knowingly or
recklessly failed to establish, maintain, or enforce any policy
or procedure required under section 15(f) of [the Exchange Act]
or section 204A of the Investment Advisers Act of 1940 6/ and
such failure substantially contributed to or permitted the

---

5/    See also Brief filed by the Commission in Slade v. Shearson,
      Hammill & Co., Inc., Fed. Sed. L. Rep. (CCH) ¶ 94,329
      (S.D.N.Y. 1974), remanded 517 F.2d 398 (2d Cir. 1974)
      (supporting the use of Chinese Walls in brokerage firms if
      the persons who engage in securities transactions for
      customers are thereby effectively isolated from any inside
      information that the firm may receive as an investment
      banker); Doty and Powers, Chinese Walls: The Transformation
      of a Good Business Practice, 26 Am. Crim. L. Rev. 155 (1988)
      (advocating Chinese Wall procedures as good business
      practice for investment firms and specifying elements of an
      effective Chinese Wall); and see Levine, Multiservice
      Securities Firms: Coping With Conflicts in a Tender Offer
      Context, 23 Wake Forest L. Rev. at 58-59 (stating that
      although there are no cases directly addressing the issue,
      "it is fairly clear that an effective Chinese Wall is a
      defense for a multiservice firm in an action charging the
      firm with insider trading violations of Rule 10b-5 or Rule
      14e-3").

6/    See supra p.9.

15

occurrence of the act or acts constituting the violation." 1/

The Commission, through its advocacy of Chinese Wall
procedures, has essentially urged or promulgated a Chinese Wall
defense to actions alleging certain types of wrongdoing, i.e.,
breach of duties to customers and insider trading. The
Commission has taken this position because of the policy in favor
of permitting financial institutions to engage in more than one
type of business activity, i.e., that multi-service financial
institutions continue to function. Here, there exists a
potential conflict between an official committee member's
fiduciary duty to its beneficiary creditors not to profit from
the material, nonpublic information it obtains from its service
on the committee and, on the other hand, the member's fiduciary
duty to its own clients to manage their investments in accordance
with the available information as well as its duty of disclosure
to those with whom it trades.

In the Commission's view, Chinese Wall principles should be
extended to relieve this conflict since, as in the other
situations, there exists a strong policy rationale in favor of
allowing certain financial institutions to trade while serving on
official committees. Entities such as investment advisers,
brokerage firms, banks, pension funds, or insurance companies

---

1/  The alternative basis for obtaining civil penalties from a
    controlling person is, under Section 21A(b)(1)(A), that the
    controlling person "knew or recklessly disregarded the fact
    that such controlled person was likely to engage in the act
    or acts constituting the violation and failed to take
    appropriate steps to prevent such act or acts before they
    occurred."

16

have, in some recent bankruptcies, been among the largest creditors. Such institutions have skills and expertise that are likely to be useful to the committee. In addition, as the largest creditors of the debtor, they are likely to devote substantial time and resources to the official committee's activities.

2. The bankruptcy laws should also not preclude trading.

    a. The former Bankruptcy Act

        (1) Section 249

As to the bankruptcy laws, it is well established that members of official committees are fiduciaries to the creditors they represent. 8/ Section 249 of the former Bankruptcy Act provided that fiduciaries would be denied compensation for services rendered in the bankruptcy proceeding if they engaged in any trading in the debtor's securities. 9/ The provision related

---

8/  See Woods v. City National Bank and Trust Co. of Chicago, 312 U.S. 262, 268-69 (1941); In re Continental Investment Corp., 637 F. 2d 8, 10 (1st Cir. 1980); In re Cosgrove-Meehan Coal Corp., 136 F. 2d 3, 5 (3d Cir. 1943), cert. denied, 320 U.S. 777; In re Midland United Co., 64 F. Supp. 399, 417 (D. Del. 1946); In re Central States Electric Corp., 112 F. Supp. 231, 237 (D. Va. 1953), cert. denied sub nom Harris v. Egan, 346 U.S. 495.

9/  Section 249 provided:

        Any persons seeking compensation for services rendered or reimbursement for costs and expenses incurred in a proceeding under this chapter shall file with the court a statement under oath showing the claims against, or stock of, the debtor, if any, in which a beneficial interest, direct or indirect, has been acquired or transferred by him or for his account, after the commencement of such

                                    (continued...)

17

only to compensation and to expense reimbursement, and none of
the cases under the provision dealt with the question whether, if
the fiduciary were willing to sacrifice compensation and
reimbursement, he could trade in the debtor's securities.
Nevertheless, case law under Section 249 emphasized the strong
policy against conflicts of interest between committee members
and other creditors. As stated in In re Los Angeles Lumber
Products, 37 F. Supp. 708 (S.D. Cal. 1941), "[e]quity has long
subjected to the closest scrutiny any act of a fiduciary which
contained even the germ of a conflict between the interests of
the beneficiaries and the self-interest of the fiduciary." Id.
at 711. Even the lack of fraud or unfairness in the result would
not create an exception to the absolute bar. 10/ As the Supreme
Court stated in Wolf v. Weinstein, 372 U.S. 633 (1963), "In light
of the abuses which the statute was designed to prevent, it has
been thought that to allow any such exception or dispensation

---

9/ (...continued)
proceeding. No compensation or reimbursement
shall be allowed to any committee or attorney, or
other person acting in the proceedings in a
representative or fiduciary capacity, who at any
time after assuming to act in such capacity has
purchased or sold such claims or stock, or by whom
or for whose account such claims or stock have,
without the prior consent or subsequent approval
of the judge, been otherwise acquired or
transferred.

10/   See Woods v. City National Bank and Trust Co. of Chicago,
312 U.S. 262, 268 (1941); see also In re New York, New
Haven and Hartford Railroad Co., 567 F.2d 166, 177 (2d Cir.
1977), cert. denied 96 S. Ct. 120 (1977) ("Congress chose,
however, to single out insider trading as a form of
disloyalty particularly to be discouraged, even in cases of
little or no actual harm.").

18

would frustrate the manifest intent of Congress to impose an effective prophylactic rule." 372 U.S. at 655. 11/

There is, however, no case law discussing the ramifications of Chinese Walls or any other type of preventive procedure under Section 249 or in this context generally. In one case a court implicitly accepted the concept of a Chinese Wall when it allowed compensation under Section 249 to an attorney to a debenture bondholders' committee. In In re Philadelphia & Reading Coal & Iron Co., 61 F. Supp. 120 (E.D. Pa. 1945), the attorney's wife

_____

11/ There are cases in which Section 249 was not interpreted so rigidly. For instance, in In re Midland United Company, 64 F. Supp. 399 (D. Del. 1946), the court allowed compensation to members of an official committee who belonged to brokerage houses that dealt to a small extent in the securities of the debtor's subsidiaries and affiliates. The court stated that in general a fiduciary dealing in such securities should not be compensated under Section 249 because the fiduciary would place himself in a position of conflict. For instance, he might be able to impede the reorganization of the debtor by foreclosing on the assets of the subsidiaries. The court noted that in this case the trading was for the benefit of the fiduciaries' customers, not for the fiduciaries' own account, and the fiduciaries did not inspire the trading. Id. at 415-17. In essence, the court seemed to suggest that the financial remuneration that the brokerage firms would receive from trading in the securities of the debtor's subsidiaries and affiliates on behalf of other parties would not be sufficient to establish a conflicting interest. In another decision, In re Central States Electric Corporation, 112 F. Supp. 281 (E.D. Va. 1953), the court concluded that the attorneys for a bankruptcy reorganization committee that represented the debtor's shareholders were not precluded by Section 249 from receiving compensation even though they directly, or indirectly through their families, traded in the securities of the debtor's subsidiaries. In reaching this conclusion, the court interpreted Section 249 as granting the court discretion to regulate compensation with respect to subsidiaries. It allowed compensation in this case because neither the represented shareholders nor the debtor's estate had been prejudiced by the transactions. Id. at 287.

19

had traded in the securities of the debtor during the reorganization. The issue was raised as to whether the attorney should be denied compensation because trading by the wife was arguably the same as trading by the husband. The court concluded that because the attorney had never apprised his wife of any inside information obtained from the committee and was unaware of his wife's purchases, he should not be denied compensation. _Id._ at 128. The court seemed implicitly to conclude that a satisfactory _de facto_ Chinese Wall had been implemented to insulate the wife from inside information.

### (2) Section 212

An additional provision of the former Act, Section 212, also has some bearing on this issue. It reflected the general principle that fiduciaries should not profit because of their position. Under this section, the courts had the discretionary power to review the circumstances surrounding a fiduciary's acquisition of claims or securities, and to limit the fiduciary's recovery to the amounts paid for such claims or securities. 12/

---

12/   Section 212 provided:

> The judge may examine and disregard any provision of a deposit agreement, proxy, power or warrant of attorney, trust mortgage, trust indenture, or deed of trust, or committee or other authorization, by the terms of which an agent, attorney, indenture trustee, or committee purports to represent any creditor or stockholder, may enforce an accounting thereunder, may restrain the exercise of any power which he finds to be unfair or not consistent with public policy and may limit any claim or stock acquired by such person or committee in contemplation or in the course of the proceeding
>                                                        (continued...)

20

However, the proscriptions against fiduciaries under this section were limited. For instance, Section 212 did not compel sanctions against fiduciaries who traded but, rather, gave the courts discretionary power to limit claims against the estate. 13/ Moreover, Section 212 did not provide a sanction against a fiduciary who bought low and sold high, collecting a profit from third parties instead of from the estate under a reorganization plan. While the court in such a situation could deduct the profits from distributions on any claims that the fiduciary may have retained against the estate, see In re Philadelphia & Western Ry. Co., 64 F. Supp. 738, 741 (E.D. Pa. 1946), the Act did not provide a remedy if the fiduciary profited from the trading, and then sold all of his claims against the estate. Section 212 essentially did not protect the party from whom the fiduciary purchased or to whom he sold.

b. The present Bankruptcy Code

Even if there had been case law under Sections 212 and 249 dealing with the precise question raised here — that is, the use of Chinese Walls to provide an exception to a proscription on trading by committee members — we do not believe that such case law would be clearly applicable today, since neither section was

_____

12/(...continued)
    under this chapter to the actual consideration
    paid therefor.

    (Emphasis added.)

13/  See In re Continental Investment Corp., 637 F.2d 8, 11 (1st Cir., 1980).

21

carried over into the current Bankruptcy Code.  The legislative history on this matter is unclear as to Congress' intent, but nothing suggests that Congress intended the result urged by the U. S. Trustee in this case.

The Senate bill that was first proposed incorporated Section 249 into a new proposed Section 330(b).  14/  That section, however, was omitted from the final bill that became the Bankruptcy Code.  Very little explanation was given for this omission other than a statement by Senator DeConcini that the section was "deleted as unnecessary, as the limitations contained

_____

14/  Proposed Section 330(b) stated:

> No compensation or reimbursement shall be allowed to any committee, attorney, or other person acting in a representative or fiduciary capacity who, at any time after assuming to act in such capacity, has purchased or sold claims or stock, or by whom or for whose account such claims or stock have, without the prior consent or subsequent approval of the court, been otherwise acquired or transferred.

The Senate Report discussing Section 330(b) made clear that, in the Senate's view, Section 249 prohibited committee members from trading in the debtor's securities.  It stated:

> Subsection (b) reenacts section 249 of Chapter X of the Bankruptcy Act (11 U.S.C. 649).  It is a codification of equitable principles designed to prevent fiduciaries in the case from engaging in the specified transactions since they are in a position to gain inside information or to shape or influence the course of the reorganization.  (Citation omitted.)  The statutory bar of compensation and reimbursement is based on the principle that such transactions involve conflicts of interest. . . .

22

therein are covered by section 328(c) of H.R. 8200." 15/

However, an analysis of Section 328(c) of the new Code indicates
that Section 328(c) differs in certain respects from Section 249.
Section 328(c) 16/ authorizes denial of compensation to
professionals who are not disinterested, but unlike Section 249,
it does not apply to members of official or unofficial
committees.  Also, while Section 249 absolutely prohibited
compensation if the person traded in claims or equity securities
of the debtor, Section 328(c) is discretionary with the court.

One possible -- and the most likely -- explanation for the
omission of the prohibitions cited in Section 249 is that
Congress intended to give more flexibility for interpretation of
the fiduciary duty that is owed by members of official
committees.  In general, the bankruptcy court is not constrained
by statute, but can look to its general equitable powers to
restrict fiduciary trading. See, e.g., American Mutual Life
Insurance Co. v. City of Avon Park, 311 U.S. 138, 146 (1940) (a

_____

15/  124 Congressional Record S. 17406 (Oct. 6, 1978).

16/  Section 328(c) provides:

        Except as provided in section 327(c), 327(e),
    or 1107(b) of this title, the court may deny
    allowance of compensation for services and
    reimbursement of expenses of a professional
    person employed under section 327 or 1103 of
    this title if, at any time during such
    professional person's employment under
    section 327 or 1103 of this title, such
    professional person is not a disinterested
    person, or represents or holds an interest
    adverse to the interest of the estate with
    respect to the matter on which such
    professional person is employed.

23

bankruptcy court's powers are "not dependent on express statutory
provisions"). In light of the recognized equitable powers of
bankruptcy courts and the Code's silence regarding the fiduciary
duties of official committee members, it is arguable that
Congress intended to allow a less restrictive interpretation of
fiduciary duties under the new Code. The legislative history of
the current Code also suggests that, in drafting the Code,
Congress may have taken into consideration the sophistication of
the bankruptcy bar today, as well as recent developments in the
securities laws. For instance, in the House Report on the bill
that was ultimately enacted as the current Code, there is a
discussion about why the proposed bill made the appointment of a
trustee in a Chapter 11 reorganization case discretionary. The
Report states: "Reorganization law and practice has changed
substantially in the past 40 years, however, and the absolute
necessity for a trustee in every case has ceased. The serious
abuses of the 1930's have largely been cured by the adoption of
the securities laws, and their vigorous enforcement by the
Securities and Exchange Commission." H.R. Rep. No. 595, 95th
Cong., 2nd Sess. 233, reprinted in 1978 U.S. Code Cong. 7 Ad.
News 5963, 6192 (1978).

       3.   Trading should be permitted only by entities which
             are engaged in the trading of securities as a
             regular part of their business.

The Commission does not urge that the Court hold that all
entities be permitted to trade in the securities of the debtor
while serving on an official committee. Chinese Walls are not

24

fool-proof, and therefore an absolute bar to trading would be a
more effective means of preventing the misuse of material,
nonpublic information.  Also, there are arguments rooted in
bankruptcy law that no trading should be allowed by committee
members.  The Commission therefore believes that trading by
committee members should only be permitted if there exists a
significant policy rationale in favor of allowing trading.  A
"Chinese Wall exception" should only be available to firms that
engage in the trading of securities in their regular course of
business.  Such entities — such as investment advisers,
investment banking firms, brokerage firms, pension funds, and
insurance companies — have the type of expertise which is
valuable to official committees.

   In addition, such entities traditionally have considerable
experience with the implementation of Chinese Walls.  See, e.g.,
Securities Act Release No. 5239, 20 SEC Dkt. 1241, 1252 (Sept. 4,
1980) (in promulgating Rule 14e-3, the Commission stated that it
"understands that policies and procedures to prevent the use of
material, nonpublic information relating to a tender offer as
well as other types of information are widely used by
multiservice financial institutions").  See also Broker-Dealer
Policies and Procedures Designed to Segment the Flow and Prevent
the Misuse of Material Nonpublic Information, [1989-90 Transfer
Binder] Fed. Sec. L. Rep. (CCH) ¶ 84,520 (March 1990).  Moreover,
it is unfair to force such an entity to make a choice between
serving on a committee and continuing to engage in its regular

25

business; such a dilemma is not faced by entities which do not regularly engage in securities trading.

As a final point, the Commission urges this Court to require the entity to file a copy of its Chinese Wall or other preventive policies and procedures with the bankruptcy court prior to trading. Such written notice would likely serve as a deterrent to illegal insider trading and would require that the entity take its obligations in this area seriously. 17/

---

17/  We note that we are merely urging a filing requirement; we are not suggesting that the bankruptcy court review the adequacy of the Chinese Wall procedures.

## EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : | Case No. 02-41729 (REG) |
| Adelphia Communications Corporation, et al., | : |  |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

----------------------------------------------------------------x

### ORDER APPROVING SPECIFIED INFORMATION BLOCKING PROCEDURES AND PERMITTING TRADING IN THE DEBTORS= SECURITIES UPON ESTABLISHMENT OF A SCREENING WALL

Upon the motion (the ATrading Order Motion@) of the Official Committee of Unsecured Creditors (ACommittee@) appointed in chapter 11 cases concerning the above-captioned debtors (collectively, the Debtors), by and through its counsel, Kasowitz Benson Torres & Friedman, LLP for the entry of an order pursuant to section 105(a) of title 11 of the United States Code (the ABankruptcy Code@), approving specified information blocking procedures and permitting trading in the Debtors= Securities (as defined below) in certain situations, and the exhibit attached thereto; and adequate notice of the Trading Order Motion having been given; and no objections to the Trading Order Motion having been filed; and the Court being satisfied that the relief requested in the Trading Order Motion is necessary and in the best interests of the Committee, the creditors, and the Debtors= estates; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.    The Trading Order Motion is granted, subject to the terms and conditions of this Order.

2.    The information blocking policies and procedures established by the Committee

(collectively, the ÒSecurities Trading Committee MembersÓ) and described in the form of the declaration

annexed to the Trading Order Motion as Exhibit A (the ÒScreening Wall DeclarationÓ), which are

designed to prevent the misuse of Committee information and which are acceptable to the Office of the

United States Trustee or otherwise consistent with those policies and procedures, are hereby

APPROVED.

     3.    Committee members, acting in any capacity and engaged in the trading of securities as a

regular part of their business, will not violate their duties as Committee members and, accordingly, will

not subject their claims to possible disallowance, subordination, or other adverse treatment, by trading

in the DebtorsÕ Securities during the pendency of the DebtorsÕ chapter 11 cases, provided that any

Committee member carrying out such trades[1] establishes and effectively implements and adheres to the

information policies and procedures detailed in the Screening Wall Declaration or otherwise approved

by the Office of the United States Trustee.  For purposes of this Order, the term ÒSecuritiesÓ is used as

such term is defined in Section 2(a)(1) of the Securities Act of 1933, including the following but only to

---

[1] ÒTradingÓ shall not include any transactions made (a) by a Securities Trading Committee Member between or among one or more funds for which a Securities Trading Committee Member acts as investment adviser consistent with a Securities Trading Committee MemberÕs management of the funds or (b) by a Securities Trading Committee Member and any of a Securities Trading Committee MemberÕs finance counterparties which do not divest the funds for which a Securities Trading Committee Member acts as investment adviser of such fundsÕ economic interest in such Securities.

the extent they constitute securities thereunder, stocks, notes, bonds, debentures, participations in, or derivatives based upon or relating to, any of the Debtors= debt obligations or equity interests.[2]

4.     As evidence of its implementation of the procedures detailed in the Screening Wall Declaration, any Committee member that wishes to trade in the Debtors= Securities shall, as a precondition to any such trading, cause to be filed with the Bankruptcy Court a Declaration or Affidavit of each individual performing Committee-related activities in the above-captioned chapter 11 bankruptcy cases on behalf of that Committee member stating that such individual shall comply with the terms and procedures set forth in the Screening Wall Declaration.

5.     This Order is without prejudice to the Committee filing a subsequent motion, with or without the support of the United States Trustee, for an order modifying or superceding the information blocking policies and procedures set forth in the Screening Wall Declaration.

6.     This Order shall not preclude the Court from taking any action it may deem appropriate in the event that it is determined that a breach of fiduciary duty has occurred as a result of a defect in, or the ineffectiveness of, the implementation of the information blocking procedures herein approved.

---

[2]  For the avoidance of doubt, this definition does not apply to bank debt and participations in bank debt. A Securities Trading Committee Member is not prohibited from trading claims subject to compliance with applicable law.

7.    This Order shall apply only to those Committee members that are engaged in the trading

of securities as a regular part of their business.

Dated:        New York, New York
              August 19, 2002

                                    */s/ Robert E. Gerber*
                              UNITED STATES BANKRUPTCY JUDGE

Daniel H. Golden (DG-5624)
Michael S. Stamer (MS-4900)
Ira S. Dizengoff (ID-9980)
James R. Savin (JS-9220)
AKIN GUMP STRAUSS HAUER & FELD L.L.P.
590 Madison Avenue
New York, NY 10022
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Proposed Attorneys for the Official Committee of Unsecured
Creditors of WorldCom, Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :
WORLDCOM, INC., et al.,                   :        Case Nos. 02-13533 (AJG)
                                          :
                          DEBTORS.    :        (Jointly Administered)
-------------------------------------------------------x

### ORDER APPROVING SPECIFIED INFORMATION BLOCKING PROCEDURES AND PERMITTING TRADING IN THE DEBTORS' SECURITIES UPON ESTABLISHMENT OF A SCREENING WALL

Upon the emergency motion (the "Motion") of the Official Committee of Unsecured

Creditors ("Committee") appointed in these chapter 11 cases concerning the above-captioned

debtors (collectively, the Debtors), by and through its proposed counsel, Akin Gump Strauss

Hauer & Feld L.L.P., for the entry of an order pursuant to section 105(a) of title 11 of the United

States Code (the "Bankruptcy Code"), approving specified information blocking procedures and

permitting trading in the Debtors' Securities (as defined below) in certain situations, and all

exhibits attached thereto; and adequate notice of the Motion having been given; and no

objections to the Motion having been filed; and the Court being satisfied that the relief requested

1

in the Motion is necessary and in the best interests of the Committee, the creditors, and the

Debtors' estates; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted, subject to the terms and conditions of this Order.

2.      The information blocking policies and procedures established by the Committee

(collectively, the "Securities Trading Committee Members") described substantially in the form

of declaration annexed to the Motion as Exhibit A (the "Screening Wall Declaration"), which are

designed to prevent the misuse of committee information and which are acceptable to the Office

of the United States Trustee or otherwise consistent with those policies and procedures, are

hereby APPROVED.

3.      Committee members, acting in any capacity and engaged in the trading of

securities as a regular part of their business, will not violate their duties as Committee members

and, accordingly, will not subject their claims to possible disallowance, subordination, or other

adverse treatment, by trading in the Debtors' Securities during the pendency of the Debtors'

chapter 11 cases, provided that any Committee member carrying out such trades establishes and

effectively implements and strictly adheres to the information policies and procedures detailed in

the Screening Wall Declaration or otherwise approved by the Office of the United States Trustee.

For purposes of this Order, the term "Securities" is used as such term is defined in Section

2(a)(1) of the Securities Act of 1933, including the following, but only to the extent they

constitute securities thereunder:  stock; notes; bonds; debentures; participations in, or derivatives

based upon or relating to, any of the Debtors' debt obligations or equity interests.  For the

avoidance of doubt, such definition does not apply to bank debt.

2

4.    As evidence of its implementation of the procedures detailed in the Screening Wall Declaration, any Committee member that wishes to trade in the Debtors' Securities shall, as a precondition to any such trading, cause to be filed with the Bankruptcy Court a Declaration or Affidavit of each individual performing Committee-related activities in the above-captioned chapter 11 bankruptcy cases on behalf of that Committee member stating that such individual shall comply with the terms and procedures set forth in the Screening Wall Declaration.

5.    This Order shall not preclude the Court from taking any action it may deem appropriate in the event that it is determined that a breach of fiduciary duty has occurred as a result of a defect in, or the ineffectiveness of, the implementation of the information blocking procedures herein approved.

6.    This Order shall apply only to those Committee members that are engaged in the trading of securities as a regular part of their business.

Dated:    New York, New York
          August 6, 2002


                                        s/Arthur J. Gonzalez
                                        ARTHUR J. GONZALEZ
                                        UNITED STATES BANKRUPTCY JUDGE

3

333644 v1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
In re:                        :
                              : Chapter 11
ENRON CORP., ET AL.           :
                              : Case Nos. 01-16034 (AJG)
                              :
            Debtors.          : Jointly Administered
                              :
------------------------------x

### ORDER, UNDER 11 U.S.C. § 105(a), PERMITTING SECURITIES TRADING IN CERTAIN CIRCUMSTANCES

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Enron Corp. and its affiliated debtors and debtors in possession (collectively, "Enron" or the "Debtors"), having requested by Application dated December 27, 2001 (the "Application"),[1] entry of an order under section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code"), permitting the members of the Committee to trade in the Debtors' Securities (as defined herein) under certain circumstances; and due and proper notice of the Application having been given; and no adverse interest being affected; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED, that the Application is granted, subject to the terms and conditions of this Order; and it is further

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

ORDERED that the requirements of LBR 9013-1(b) are waived with respect to the Application; and it is further

ORDERED, that any Committee member, acting in any capacity, shall not violate (and shall not be deemed to have violated) its fiduciary duties as a Committee member and, accordingly will not subject its claims to possible disallowance, subordination, or other adverse treatment to the extent that such Committee member and/or its affiliates (the "Securities Trading Committee Member") trades in the Debtors' (or their affiliates') securities as such term is defined in Section 2(a)(1) of the Securities Act of 1933, including the following but only to the extent they constitute securities thereunder, stock, notes, bonds, debentures, participations in, or derivatives based upon or relating to, any of the Debtors' debt obligations, or equity interests (collectively, the "Securities")[2] during the pendency of these cases, provided, however, such Securities Trading Committee Member establishes, effectively implements and strictly adheres to the policies and procedures set forth in the Declaration (defined below), such as the Fire Wall (the "Procedures"), to prevent (i) the Securities Trading Committee Member's trading personnel from the misuse of

---

[2] For the avoidance of doubt, this Order does not apply to bank debt. This Order is not intended to prohibit the trading, subject to compliance with applicable law, of any claim whether or not such claim falls within the scope of this Order.

- 2 -

non-public information relating to the Debtors obtained through the performance by such Securities Trading Committee Member's designated personnel ("Committee Personnel") of Committee-related activities and (ii) Committee Personnel from receiving information regarding such Securities Trading Committee Member's trading in the Securities in advance of such trades; and it is further

ORDERED, that any Securities Trading Committee Member will (i) file and cause to be delivered to the United States Trustee a declaration or affidavit in the form of the declaration attached hereto as Exhibit "A" or in a substantially similar form acceptable to the United States Trustee (the "Declaration"), and (ii) file and submit a Declaration to the United States Trustee every three months to verify continued compliance with the Procedures described herein so long as the Securities Trading Committee Member is a member of the Official Committee of Unsecured Creditors of Enron; and it is further

ORDERED, that this Order shall apply to a Securities Trading Committee Member only if it is engaged in trading of Securities as a regular part of its business from the date of his or its appointment to the Committee; and it is further

ORDERED, that this Order is not intended to preclude the Court from taking any action it may deem appropriate in the event that it is determined that an actual breach of fiduciary

- 3 -

duty has occurred because other procedures employed have not been effective or for reasons unrelated to the fact of the Securities Trading Committee Member's ability to trade based upon the establishment of the Procedures set forth in the Declaration; and it is further

ORDERED, that nothing herein shall prevent the Debtors from seeking (and any party in interest from opposing) injunctive relief, as appropriate, to restrict the ability of any party from trading in the Debtors' Securities to the extent necessary to preserve property of the Debtors' estates; and it is further

ORDERED that this Court retains jurisdiction to construe and enforce the terms of this Order.

Dated:    New York, New York
          February 27, 2002

                              **s/Arthur J. Gonzalez**
                              Arthur J. Gonzalez
                              United States Bankruptcy Judge

- 4 -

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
In re:                            :
                                  :  Chapter 11
ENRON CORP., ET AL.               :
                                  :  Case Nos. 01-16034 (AJG)
                                  :
            Debtors.              :  Jointly Administered
                                  :
------------------------------x

<u>DECLARATION OF [DECLARANT]</u>

    I, [Declarant], hereby declare:

    1.   I have personal knowledge of each of the facts

stated in this Declaration, except for those facts stated on

information and belief and as to those facts, I am informed and

believe them to be true.  I am filing and submitting this

Declaration to the United States Trustee on behalf of [Committee

Member] in order to advise the United States Trustee for the

Southern District of New York of the information blocking

procedures designed to prevent [Committee Member]'s trading

personnel and its investment advisory personnel from receiving

any nonpublic information concerning Enron (as defined below) or

its chapter 11 cases that has been received by such committee

member through [Committee Member]'s personnel representatives or

agents ("<u>[Committee Member] Committee Personnel</u>") performing

committee related activities in the chapter 11 cases of Enron

Corp. and its affiliated debtors and debtors in possession in

the above-captioned cases (collectively, "<u>Enron</u>" or the

"Debtors") and to prevent the [Committee Member] Committee Personnel from receiving information regarding Securities[1] of Enron held by [Committee Member].

    2.   I advise the United States Trustee that [Committee Member] has set up the following internal Procedures:

(i) the [Committee Member] shall cause all [Committee Member] Committee Personnel to execute a letter acknowledging that they may receive non-public information as a result of the [Committee Member's] service on the Committee and that they are aware of this order and the Fire Wall Procedures which the [Committee Member] has put in effect with respect to the Securities and will immediately inform committee counsel and the U.S. Trustee in writing if such Procedures are materially breached;

(ii) the [Committee Member]'s personnel serving on the Committee shall not share directly or indirectly any information generated or received solely from Committee activities ("Information") with any other employees of such [Committee Member] other than in compliance with the Fire Wall Procedures (except (a) senior management of such [Committee Member] who, due to their duties and responsibilities, have a legitimate need to know such information, provided that such individuals (1) otherwise comply with the Fire Wall, and (2) use such Information only in connection with their senior managerial responsibilities, and (b) regulators, auditors, and designated legal personnel for the purpose of rendering legal advice to Committee Personnel and who will agree not to share such Information generated from Committee activities with other employees and will keep such Information in files inaccessible to other employees);

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order, Under 11 U.S.C. § 105(a), Permitting Securities Trading In Certain Circumstances.

(iii)    Subject to the exception in the parenthetical in paragraph 2(ii) above, [Committee Member] Committee Personnel shall not discuss any matter relating to the Debtors' cases with any employee of such Securities Trading Committee Member who is reasonably known to be engaged in trading activities on behalf of the Securities Trading Committee Member;

(iv)    [Committee Member] Committee Personnel shall keep Information  generated or received from Committee activities in files (electronic or otherwise) inaccessible to employees not permitted to access such Information hereunder;

(v)    [Committee Member] Committee Personnel shall receive no information regarding the [Committee Member]'s trades in Securities in advance of such trades, except that Committee Personnel may receive the usual and customary internal and public reports showing the [Committee Member]'s purchases and sales and the amount and class of securities owned by such [Committee Member], including the Securities, provided, however, that [Committee Member] Committee Personnel shall not receive any such information until at least 30 days after such purchase or sale of Securities;

(vi)    the [Committee Member]'s compliance department personnel or internal counsel shall review from time to time the Fire Wall Procedures employed by the [Committee Member] as necessary to ensure compliance with this Order and shall keep and maintain records of their review;

(vi)    so long as [Committee Member] is a member of the Official Committee of Unsecured Creditors of Enron, it shall file and submit a declaration to the United States Trustee  every three months to verify continued compliance with the procedures described herein.

3.    [Committee Member] Committee Personnel will not be involved in the trading decisions relating to the Securities.

3

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____ day of _____, 2002, at [New York], [New York].

_____
[Declarant]

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                    :   Chapter 11
                                          :   Case Nos. 05-11063 (RDD)
WINN-DIXIE STORES, INC., et al.,          :
                                          :   (Jointly Administered)
                       Debtors.           :

-------------------------------------------------------------x

## ORDER UNDER 11 U.S.C. § 105(a) PERMITTING
## SECURITIES TRADING IN CERTAIN CIRCUMSTANCES

OCM Opportunities Fund V, L.P. ("OCM"), a member of the Official Committee

of Unsecured Creditors (the "Committee") of Winn-Dixie Stores, Inc. and its affiliated debtors

and debtors in possession (collectively, "Winn-Dixie" or the "Debtors"), having requested by

Application, dated March 28, 2005 (the "Application"),[1] entry of an order under section 105(a)

of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"),

permitting OCM and its affiliates (collectively, "Oaktree") to trade in the Debtors' Securities (as

defined below) under certain circumstances; and due and proper notice of the Application having

been given; and no adverse interest being affected; and after due deliberation and sufficient cause

appearing therefor, it is hereby

ORDERED, that the Application is granted; and it is further

ORDERED, that OCM, acting in any capacity, shall not violate (and shall not be

deemed to have violated) its fiduciary duties as a Committee member and, accordingly will not

subject its claims to possible reduction, disallowance, subordination, or other adverse treatment

to the extent that Oaktree trades in the Debtors' stock, notes, bonds, debentures, participations in

or any derivatives based upon or relating to, any of the Debtors' debt obligations or other claims

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in
       the Application.

or equity interests, to the extent any of these constitute securities under § 2(a)(1) of the Securities Act of 1933 (collectively, the "Securities") during the pendency of these cases; provided, however, OCM establishes, effectively implements and strictly adheres to the policies and procedures set forth in the Declaration (as defined below), such as the Fire Wall (the "Procedures"), to prevent (i) Oaktree's trading personnel from the misuse of information relating to the Debtors obtained through the performance by OCM's designated personnel ("Committee Personnel") of Committee-related activities and (ii) Committee Personnel from receiving information regarding Oaktree's trading in the Securities in advance of such trades; and it is further

ORDERED, that OCM shall (i) file with the Court and cause to be delivered to the United States Trustee a declaration or affidavit in the form of the declaration attached hereto as Exhibit A or in a substantially similar form acceptable to the United States Trustee (the "Declaration") and (ii) file with the Court and submit to the United States Trustee a Declaration every three months to verify continued compliance with the Procedures so long as OCM is a member of the Committee; and it is further

ORDERED, that this Order shall apply to Oaktree only if it is engaged in the trading of Securities as a regular part of its business from the date of OCM's appointment to the Committee; and it is further

ORDERED, that this Order is not intended to preclude the Court from taking any action it may deem appropriate in the event that it is determined that an actual breach of fiduciary duty has occurred because other procedures employed have not been effective or for reasons unrelated to the fact of Oaktree's ability to trade based upon the establishment of the Procedures; and it is further

ORDERED, that nothing herein shall prevent the Debtors from seeking (and any party in interest from opposing) injunctive relief, as appropriate, to restrict the ability of any party from trading in the Debtors' Securities to the extent necessary to preserve property of the Debtors' estates; and it is further

ORDERED, that this Court retains jurisdiction to construe and enforce the terms of this Order.

Dated:    New York, New York
          April ___, 2005

_____
ROBERT DRAIN
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                 :

In re:                       :          Chapter 11
                                 :

WINN-DIXIE STORES, INC., et al.,   :          Case No. 05-11063 (RDD)
                                 :          (Jointly Administered)

              Debtors.     :

                                 :
-------------------------------------------------------x

## <u>DECLARATION OF ALAN S. ADLER</u>

I, Alan S. Adler, hereby declare:

1.    I have personal knowledge of each of the facts stated in this Declaration, except for those facts stated on information and belief and as to those facts, I am informed and believe them to be true. I am filing this Declaration with the Court and submitting the Declaration to the United States Trustee on behalf of OCM Opportunities Fund V, L.P. ("<u>OCM</u>") to advise the Court and the United States Trustee for the Southern District of New York of the information blocking procedures designed to prevent (a) OCM and its affiliates' (collectively with OCM, "<u>Oaktree</u>") trading personnel and their investment advisory personnel from receiving any information concerning Winn-Dixie Stores, Inc. and its affiliated debtors and debtors in possession in the above-captioned case (collectively, "<u>Winn-Dixie</u>" or the "<u>Debtors</u>") or the Winn-Dixie chapter 11 cases that has been received by OCM through OCM's personnel, representatives or agents (the "<u>Committee Personnel</u>") performing committee-related activities in the Winn-Dixie chapter 11 cases and (b) the Committee Personnel from receiving information regarding Securities[1] of Winn-Dixie held by Oaktree.

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order Under 11 U.S.C. § 105(a) Permitting Securities Trading In Certain Circumstances (Docket No. [ ]) (the "<u>Order</u>").

      2.    OCM will have established the following internal procedures before the

Order is entered:

(i)      OCM shall cause all Committee Personnel to execute a letter acknowledging that they may receive non-public information as a result of OCM's service on the Committee and that they are aware of the Order and the Procedures that OCM has put in effect with respect to the Securities and will immediately inform Committee counsel and the United States Trustee in writing if such Procedures are materially breached.

(ii)      Committee Personnel shall not share directly or indirectly any information generated or received solely from Committee activities ("Information") with any other employee of Oaktree, other than:

(a)      senior management of Oaktree who, due to their duties and responsibilities, have a legitimate need to know such information, provided that such individuals (i) otherwise comply with the Winn-Dixie Information Wall and (ii) use such information only in connection with their senior managerial responsibilities, and

(b)      regulators, auditors, and designated legal personnel for the purpose of rendering legal advice to Committee Personnel and who will agree not to share such Information with other Oaktree employees and will keep such Information in files inaccessible to such other employees.

(iii)      Subject to the exceptions set forth in sub-paragraphs ii(a) and ii(b) above, Committee Personnel shall not discuss any matter relating to the Winn-Dixie chapter 11 cases with any member of Oaktree who is reasonably known to be engaged in trading activities on behalf of Oaktree.

(iv)      Committee Personnel shall keep Information in files (electronic or otherwise) inaccessible to employees not permitted to access such Information under the Winn-Dixie Information Wall.

(v)      Committee Personnel shall not be involved in the trading decisions relating to the securities of Winn-Dixie (or its affiliates) and shall receive no information regarding trades in securities of Winn-Dixie (or its affiliates) by Oaktree's funds and accounts in advance of such trades or within thirty days after such trades; it being understood that Committee Personnel may receive after the thirtieth day following such trades the usual and customary internal and public reports showing purchases and sales and the amount and class of securities owned by such Oaktree funds and accounts, including the securities of Winn-

2

Dixie. Notwithstanding the foregoing sentence, Committee Personnel is permitted to receive information necessary for OCM to comply with OCM's obligations under the bylaws of the Committee, including, but not limited to, OCM's obligation to (a) resign from the Committee on account of OCM's transfer or satisfaction of greater than or equal to 75% of its claims and (b) notify the Committee Chair and counsel to the Committee of OCM's reaching an agreement in principle relating to such a transfer or satisfaction of such claims.

(vi)     Oaktree's compliance personnel shall review these procedures from time to time, keep and maintain records of such reviews, and take reasonable steps to monitor compliance with the procedures.

(vii)    So long as OCM is a member of the Official Committee of Unsecured Creditors of Winn-Dixie, it shall file with the Court and submit a declaration to the United States Trustee every three months to verify continued compliance with the procedures described herein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28 day of March, 2005.

_____/s/ Alan S. Adler_____
Alan S. Adler

3