Hearing Date: April 12, 2005 at 10:00 a.m. (NY Time)
Objection Deadline: April 8, 2005 at 4:00 p.m. (NY Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x
In re                            :  Chapter 11
                                 :
WINN-DIXIE STORES, INC., et al., :  Case No. 05-11063 (RDD)
                                 :
                      Debtors.   :  (Jointly Administered)
---------------------------------x

### APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER UNDER 11 U.S.C. §§ 328(a) AND 1103, FED. R. BANKR. P. 2014, AND S.D.N.Y. LBR 2014-1, AUTHORIZING EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL AS ITS FINANCIAL ADVISOR AS OF MARCH 3, 2005

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, "Winn-Dixie" or the "Debtors") hereby applies (the "Application") for an order, under sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code"), rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 2014-1, authorizing the employment and retention of Houlihan Lokey Howard & Zukin Capital ("Houlihan") as its financial advisor effective as of March 3, 2005. The facts and circumstances supporting this Application are set forth in the Declaration of Saul E.

Burian, a Managing Director of Houlihan, in support of this Application, attached hereto as Exhibit A.

## BACKGROUND

1.    Chapter 11 Filings.    On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.    Creditors' Committee.    On March 1, 2005, the United States Trustee appointed the Committee.    No other official committees have been appointed or designated in these cases.

3.    Jurisdiction.    This Court has jurisdiction over this Application under 28 U.S.C. § 1334.    This matter constitutes a core proceeding as that term is defined in 28 U.S.C. § 157.    Venue of the Debtors' chapter 11 cases and this Application is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

4.    The Committee seeks authority to retain and employ Houlihan as its financial advisor in these cases. By this Application, the Committee requests that the Court enter an order authorizing the Committee to retain and employ Houlihan effective as of March 3, 2005, pursuant to the terms of the engagement letter between the Committee

and Houlihan, dated March 10, 2005 (the "<u>Engagement</u>

<u>Letter</u>"), attached hereto as Exhibit <u>B</u>.

**APPLICABLE AUTHORITY**

     5.   Section 1103(a) of the Bankruptcy Code

provides, in relevant part, that the Committee, with the

Court's approval, "may select and authorize the employment

by such committee of one or more attorneys, accountants, or

other agents, to represent or perform services for such

committee."  11 U.S.C. § 1103(a).

     6.   In addition, section 328(a) of the

Bankruptcy Code provides, in relevant part, that the

Committee:

> may employ or authorize the employment of a
> professional person under section 327 or
> 1103 of this title, as the case may be, on
> any reasonable terms and conditions of
> employment, including on a retainer, on an
> hourly basis, or on a contingent fee basis.
> Notwithstanding such terms and conditions,
> the court may allow compensation different
> from the compensation provided under such
> terms and conditions after the conclusion of
> such employment, if such terms and
>
> conditions prove to have been improvident in
> light of developments not capable of being
> anticipated at the time of fixing such terms
> and conditions.

11 U.S.C. § 328(a).

     7.   Bankruptcy Rule 2014 provides, in relevant

part, as follows:

3

> An order approving the employment of
> financial advisors . . . or other
> professionals pursuant to . . . § 1103 . . .
> of the Code shall be made only on
> application of the trustee or committee.

FED. R. BANKR. P. 2014.

    8.   Local Bankruptcy Rule 2014-1 provides, in

relevant part, as follows:

> An application for the employment of a
> professional person pursuant to §§ 327 and
> 328 of the Bankruptcy Code shall state the
> specific facts showing the reasonableness of
> the terms and conditions of the employment,
> including the terms of any retainer, hourly
> fee or contingent fee arrangement.

S.D.N.Y. LBR 2014-1.

<b><u>HOULIHAN'S QUALIFICATIONS</u></b>

    9.   Houlihan is a nationally recognized

investment banking and financial advisory firm, with 9

offices worldwide and more than 400 professionals.

Houlihan's Financial Restructuring Group, which has more

than 100 professionals, is one of the leading advisors and

investment bankers to debtors, bondholder groups, secured

and unsecured creditors, acquirers, and other parties-in-

interest involved in financially troubled companies both in

and outside bankruptcy.  In this role Houlihan has been,

and is involved in some of the largest restructuring

matters in the United States, including representing the

debtors in <u>Covad Communications, Inc.</u>, <u>Dairy Mart</u>

4

<u>Convenience Stores, Inc.</u>, <u>Worldtex, Inc.</u>, and <u>Stage Stores, Inc.</u>, and representing official committees in <u>Enron Corp.</u>, <u>Armstrong Holdings, Inc.</u>, <u>Pillowtex Corp.</u>, <u>Laidlaw, Inc.</u>, <u>WorldCom, Inc.</u>, <u>Tower Automotive, Inc.</u>, <u>Magellan health services, Inc.</u>, and <u>AMF Worldwide, Inc.</u> to name a few of its engagements.  The Committee has selected Houlihan to act as its financial advisors in these cases based on Houlihan's extensive knowledge and expertise in bankruptcy and corporate reorganizations.

10.  The Committee believes that Houlihan's employment is in the best interests of the Committee and all unsecured creditors.  Because of Houlihan's experience in business reorganizations, the Committee believes that Houlihan is exceptionally well qualified to serve as its financial advisors in these cases.

## SERVICES TO BE PROVIDED BY HOULIHAN

11.  Pursuant to the Engagement Letter, it is expected that Houlihan will provide the following services to the Committee in these chapter 11 cases:

- Evaluating the assets and liabilities of the Debtors;

- Analyzing and reviewing the financial and operating statements of the Debtors;

- Analyzing business plans and forecasts of the Debtors;

- Evaluating all aspects of the Debtors' DIP financing; cash collateral usage and adequate protection

therefor; any exit financing in connection with any chapter 11 plan and any budgets relating thereto; and any KERP or similar proposed compensation plan or program;

- Assisting the Committee, as needed, in identifying potential alternative sources of liquidity in connection with any chapter 11 plan or otherwise;

- Providing such specific valuation or other financial analyses as the Committee may require in connection with the cases;

- Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

- Providing testimony in court on behalf of the Committee, if necessary; and

- Assessing the financial issues and options concerning (a) the sale of any assets of Winn-Dixie and/or its non-debtor affiliates, either in whole or in part, and (b) the Debtors' chapter 11 plan(s) or any other chapter 11 plan(s).

12.   By separate application, the Committee is seeking to retain and employ the firm of Alvarez & Marsal, In. ("A&M") as its operations and real estate advisors. Both Houlihan and A&M have undertaken to coordinate their services to the Committee to minimize any potential duplication in the services provided and any potential burden on the Debtors and their professionals.  For example, Houlihan and A&M, in consultation with the Debtors and their professional advisors, have already developed a protocol with respect to coordinating and consolidating any and all information requests to the Debtors through a

Debtors' designee.  Should the situation arise, Houlihan
and A&M have agreed to share, if necessary, information
each receives from the Debtors.  This should eliminate the
need to separately request information already in the
possession (or previously requested) by the other.
Furthermore, Houlihan and A&M will coordinate telephone
conferences and meetings with the Debtors and/or their
professionals, so that, if the topic(s) or information to
be discussed is also relevant to a matter within the
other's scope of responsibility, the other will be
informed, and the topics/information can be discussed
efficiently and without duplication.  These are just a few
of the procedures Houlihan and A&M have put in place to
ensure that there is little, if any, burden placed on the
Debtors during these cases as a result of the Committee's
proposed retention of both firms.  Houlihan and A&M will
continue to develop procedures during the case to ensure
minimal burden on the Debtors ad their professionals.

### CONSIDERATION TO HOULIHAN

13.  Subject to the Court's approval Houlihan
will be entitled to the following consideration[1] for its

---

[1] Neither the Committee, its constituents, nor any of its advisors or
professionals (including, but not limited to, counsel to the
Committee), shall be liable for the fees, expenses or other amounts
payable to Houlihan under the Engagement Letter.

services pursuant to, and as further explained by, the

Engagement Letter:

- <u>Monthly Fee</u>.  Houlihan shall be paid a fee of $100,000 per month, plus expenses.

- <u>Distribution Fee</u>.  Houlihan shall be paid an additional fee (a "<u>Distribution Fee</u>") equal to 0.75% of the aggregate value received by the non-priority unsecured creditors of the Debtors.  The Distribution Fee shall be paid in the same consideration received by the Debtors' non-priority unsecured creditors (including, but not limited, to all related rights, options and contractual benefits); <u>provided</u>, <u>however</u>, that the Committee may determine, in its sole discretion, that the Distribution Fee be paid in cash at a value to be determined by Houlihan and the Committee as of the effective date of a chapter 11 plan or another relevant distribution date.  If paid in kind, the Distribution Fee shall be paid as and when distribution is made to the non-priority unsecured creditors of the Debtors (whether pursuant to a chapter 11 plan, or in any other manner approved by the Court).  The Distribution Fee shall be reduced by one hundred percent (100%) of all monthly fees paid to Houlihan after the twelfth monthly fee that was timely paid, but in no event shall the Transaction fee be reduced to less than zero.

- <u>Indemnification</u>.  Houlihan and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons, shall be indemnified and held harmless to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the Engagement Letter, any actions taken or omitted to be taken by an Indemnified Party (as defined in the Engagement Letter) in connection with Houlihan's provision of services to the Committee, or any Transaction or proposed Transaction contemplated thereby. In addition, the Indemnified Parties shall be reimbursed for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; <u>provided, however</u>, there shall be no

liability to the Debtor under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.

14.   The terms of the Engagement Letter were negotiated between the Committee and Houlihan, and reflect the Committee's evaluation of the extensive work that will be performed by Houlihan and its expertise.

### DISCLOSURE CONCERNING CONFLICTS OF INTEREST

15.   To the best of the Committee's knowledge, information, and belief, other than as set forth or in the Burian Declaration, Houlihan has not represented and has no relationship with: (i) the Debtors, (ii) their respective creditors or equity security holders, (iii) any other parties-in-interest in these cases, (iv) the respective attorneys and accountants of any of the foregoing, or (v) the United States Trustee or any other person employed in the Office of the United States Trustee.

16.   The Committee believes that the employment of Houlihan would be in the best interests of the Committee, the Debtors and their estates and creditors.

## FEE APPLICATIONS AND INTERIM PAYMENTS

17.   Houlihan has received no compensation from the Debtors or any other party-in-interest in connection with these chapter 11 cases.

18.   Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Orders of this Court, Houlihan will apply to the Bankruptcy Court for the interim and final allowance of compensation and reimbursement of expenses.  Because Houlihan will be compensated based on a fixed monthly fee and a transaction fee, the Committee submits that Houlihan should not be required to maintain or provide detailed time records in connection with any of its fee applications.

## WAIVER OF MEMORANDUM OF LAW

19.   The Debtors submit that no novel issue of law is presented with respect to the matters contained herein and respectfully request that the requirement of a separate memorandum of law under Local Bankruptcy Rule 9013-1(b) be waived, but the Committee reserves the right to file a brief in reply to any objection to this Application.

## NOTICE

20.   No trustee or examiner has been appointed in these cases.  Notice of this Application has been given to

(i) the United States Trustee, (ii) counsel for the Debtors, and (iii) those entities that have requested receipt of notice in these cases (collectively, the "Notice Parties").  In light of the relief requested herein, the Committee submits that no other or further notice is required.

## **NO PRIOR REQUEST**

21.  No previous application for the relief requested herein has been made to this or any other court.


[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

WHEREFORE, the Committee respectfully requests
the Court to enter an order, substantially in the form
attached hereto as Exhibit C, (i) authorizing the Committee
to retain and employ Houlihan effective as of March 3,
2005, as its financial advisor pursuant to sections 328(a)
and 1103 of the Bankruptcy Code and (ii) granting the
Committee such other relief as is appropriate.

DATED:  New York, New York
        March 29, 2005

                         **OFFICIAL COMMITTEE OF UNSECURED
                         CREDITORS OF WINN-DIXIE STORES,
                         INC., et al.**

                              R2 Investments LDC,
                              Chairperson of the Official
                              Committee of Unsecured
                              Creditors

                         By: Amalgamated Gadget, L.P., as
                         its Investment Manager

                         By: Scepter Holdings, Inc., its
                         General Partner


                         By:        /s/ Dave Gillespie
                              _____
                              Name: Dave Gillespie
                              Title: Chief Financial Officer