Hearing Date: April 12, 2005 at 10:00 a.m. (NY Time)
Objection Deadline: April 8, 2005 at 4:00 p.m. (NY Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
In re                             : Chapter 11
                                  :
WINN-DIXIE STORES, INC., et al.,  : Case No. 05-11063 (RDD)
                                  :
                       Debtors.   : (Jointly Administered)
---------------------------------x

**APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER UNDER 11 U.S.C. §§ 328(a) AND 1103, FED. R. BANKR. P. 2014, AND S.D.N.Y. LBR 2014-1, AUTHORIZING EMPLOYMENT AND RETENTION OF ALVAREZ & MARSAL, LLC AS ITS OPERATIONS AND REAL ESTATE ADVISOR AS OF MARCH 4, 2005**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, "Winn-Dixie" or the "Debtors") hereby applies (the "Application") for an order, under sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code"), rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 2014-1, authorizing the employment and retention of Alvarez & Marsal, LLC ("A&M") as its operations and real estate advisor effective as of March 4, 2005. The facts and circumstances supporting this

Application are set forth in the Affidavit of Martha E.M. Kopacz, a Managing Director of A&M, in support of this Application, sworn to March 29, 2005 (the "Kopacz Affidavit"), attached hereto as Exhibit A.

## BACKGROUND

1. Chapter 11 Filings. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. Creditors' Committee. On March 1, 2005, the United States Trustee appointed the Committee. No other official committees have been appointed or designated in these cases.

3. Jurisdiction. This Court has jurisdiction over this Application under 28 U.S.C. § 1334. This matter constitutes a core proceeding as that term is defined in 28 U.S.C. § 157. Venue of the Debtors' chapter 11 cases and this Application is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

4. The Committee seeks authority to retain and employ A&M as its operations and real estate advisor in these cases. By this Application, the Committee requests that the Court enter an order authorizing the Committee to

retain and employ A&M effective as of March 4, 2005, pursuant to the terms of the engagement letter between the Committee, A&M and, in part, the Debtors, dated March 4, 2005 (the "Engagement Letter"), attached hereto as Exhibit B.

## APPLICABLE AUTHORITY

5.   Section 1103(a) of the Bankruptcy Code provides, in relevant part, that the Committee, with the Court's approval, "may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee."  11 U.S.C. § 1103(a).

6.     In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that the Committee:

> may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of fixing such terms and conditions.

11 U.S.C. § 328(a).

7.  Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of financial advisors . . . or other professionals pursuant to . . . § 1103 . . . of the Code shall be made only on application of the trustee or committee.

FED. R. BANKR. P. 2014.

8.  Local Bankruptcy Rule 2014-1 provides, in relevant part, as follows:

> An application for the employment of a professional person pursuant to §§ 327 and 328 of the Bankruptcy Code shall state the specific facts showing the reasonableness of the terms and conditions of the employment, including the terms of any retainer, hourly fee or contingent fee arrangement.

S.D.N.Y. LBR 2014-1.

## **A&M'S QUALIFICATIONS**

9.  A&M is a nationally recognized business turnaround and crisis management company that specializes in providing restructuring and advisory services to companies in financial and operational distress.

10. Martha E. M. Kopacz, a Managing Director of A&M, will be responsible for the overall engagement.  Ms. Kopacz has more than twenty years of experience serving the needs of financially and operationally challenged organizations. She brings leadership and a proven track record to addressing critical business processes including

cash flow management and enhancement, profitability improvement, strategic assessment and business plan implementation.  Ms. Kopacz has been involved in major corporate restructuring projects throughout the United States.  Some of her most notable publicly disclosed engagements have included Spalding Holdings Corp., Genuity, Inc., Arthur D. Little, Inc., Essential Therapeutics, Inc., GC Companies, Inc., Quality Stores, Inc., Value America, Inc., Stone & Webster, Greate Bay Holdings, Inc., Sarcom, Inc., CellNet Data Systems, Filene's Basement, Boston Bed & Bath, County Seat Stores, Joan & David Helpern, Inc., The Grand Union Company, Cumberland Farms, Inc., Hills Department Stores, and Almac's Supermarkets, Inc., among others.

   11.  The Committee believes that A&M's employment is in the best interests of the Committee and all unsecured creditors.  Because of A&M's experience in business reorganizations, the Committee believes that A&M is exceptionally well qualified to serve as its financial, operations, and real estate advisor in these cases.

### SERVICES TO BE PROVIDED BY A&M

   12.  Pursuant to the Engagement Letter, it is expected that A&M will provide the following services to the Committee in these chapter 11 cases:

- Review and evaluate the current and prospective operational condition of the Debtors;

- Assist the Committee and its counsel in evaluating and responding to various developments during the course of these Chapter 11 cases in connection with such matters as claims analysis, including preference analysis; vendor relations, including reclamation/PACA issues, and vendor liens/arrangements; substantive consolidation; executory contracts; and real estate interests;

- Advise the Committee concerning various measures for margin improvement in the Debtors' operations;

- Provide other services that may be required by the Committee and that do not overlap with services provided by the Committee's other advisors.

13. By separate application, the Committee is seeking to retain and employ the firm of Houlihan, Lokey, Howard & Zukin ("Houlihan") as its financial advisors in these cases. Both A&M and Houlihan have undertaken to coordinate their services to the Committee to minimize any potential duplication in the services provided and any potential burden on the Debtors and their professionals. For example, A&M and Houlihan, in consultation with the Debtors and their professional advisors, have already developed a protocol with respect to coordinating and consolidating any and all information requests to the Debtors through a Debtors' designee. Should the situation arise, A&M and Houlihan have agreed to share, if necessary, information each receives from the Debtors. This should

eliminate the need to separately request information from the Debtors already in the possession (or previously requested) by the other.  Furthermore, A&M and Houlihan will coordinate telephone conferences and meetings with the Debtors and/or their professionals so that, if the topic(s) or information to be discussed is also relevant to a matter within the other's scope of responsibility, the other will be informed, and the topic/information can be discussed effectively and without duplication.  These are just a few of the procedures A&M and Houlihan have put in place to ensure that there is little, if any, burden placed on the Debtors during these cases as a result of the Committee's proposed retention of both firms.  A&M and Houlihan will continue to develop procedures during the case to ensure minimal burden on the Debtors ad their professionals.

### A&M'S CONSIDERATION

14. Subject to the Court's approval A&M will be entitled to the following consideration, in pertinent part, for its services pursuant to the Engagement Letter:

- <u>Fees</u>.  A&M will receive $100,000 per month for services rendered and a distribution fee of 25 basis points of the non-priority unsecured creditors' recovery upon confirmation of a plan, in cash or in reorganized securities, at the discretion of the Committee.[1]  The distribution fee shall be reduced by

---

[1] In no event shall the Committee or any of its members be liable in any capacity for any amounts owed to or by A&M in connection with this

7

one hundred percent (100%) of all monthly fees paid to A&M after the twelfth monthly fee, but in no event shall the distribution fee be reduced to less than zero.

- Reimbursement of Expenses.  A&M will be reimbursed for its reasonable out-of-pocket expenses (which shall be charged at cost) incurred in connection with this engagement, such as travel, lodging, duplicating, research, messenger and telephone charges.  In addition, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation, approval and enforcement of the Engagement Letter.

- Indemnification.  The Engagement Letter also provides for the Debtors to indemnify and hold harmless A&M and all other Indemnified Parties (as defined in the Engagement Letter) against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the terms of the Engagement Letter (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Engagement Letter; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.

    The Debtors and the Committee also agree that no Indemnified Party shall have any liability to the Debtors or the Committee for or in connection with the engagement of A&M, except to the extent for any such liability for losses, claims, damages, liabilities or

---

engagement and the Engagement Letter, including, without limitation, any of the invoices, expenses, costs, damages or other liabilities in connection with A&M's engagement.

8

expenses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.

15. The terms of the Engagement Letter were negotiated between the Committee and A&M, and reflect the Committee's evaluation of the extensive work that will be performed by A&M and its expertise.

### **DISCLOSURE CONCERNING CONFLICTS OF INTEREST**

16. To the best of the Committee's knowledge, information, and belief, other than as set forth or in the Kopacz Affidavit, A&M has not represented and has no relationship with: (i) the Debtors, (ii) their respective creditors or equity security holders, (iii) any other parties-in-interest in these cases, (iv) the respective attorneys and accountants of any of the foregoing, or (v) the United States Trustee or any other person employed in the Office of the United States Trustee.

17. The Committee believes that the employment of A&M would be in the best interests of the Committee, the Debtors and their estates and creditors.

**FEE APPLICATIONS AND INTERIM PAYMENTS**

18.  A&M has received no compensation from the Debtors or any other party-in-interest in connection with these chapter 11 cases.

19.  Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Orders of this Court, A&M will apply to the Bankruptcy Court for the interim and final allowance of compensation and reimbursement of expenses.  Because A&M will be compensated based on a fixed monthly fee and a success fee based upon the unsecured creditors' recovery upon confirmation of a plan, the Committee submits that A&M should not be required to maintain or provide detailed time records in connection with any of its fee applications.

**WAIVER OF MEMORANDUM OF LAW**

20.  The Debtors submit that no novel issue of law is presented with respect to the matters contained herein and respectfully request that the requirement of a separate memorandum of law under Local Bankruptcy Rule 9013-1(b) be waived, but the Committee reserves the right to file a brief in reply to any objection to this Application.

## NOTICE

21.  No trustee or examiner has been appointed in these cases.  Notice of this Application has been given to (i) the United States Trustee, (ii) counsel for the Debtors, and (iii) those entities that have requested receipt of notice in these cases (collectively, the "Notice Parties").  In light of the relief requested herein, the Committee submits that no other or further notice is required.

## NO PRIOR REQUEST

22.  No previous application for the relief requested herein has been made to this or any other court.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

WHEREFORE, the Committee respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit C, (i) authorizing the Committee to retain and employ A&M effective as of March 4, 2005, as its operations and real estate advisor pursuant to sections 328(a) and 1103 of the Bankruptcy Code and (ii) granting the Committee such other relief as is appropriate.

DATED:  New York, New York
        March 29, 2005

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF WINN-DIXIE STORES, INC., et al.**

R2 Investments LDC, Chairperson of the Official Creditors' Committee

By: Amalgamated Gadget, L.P., as its Investment Manager

By: Scepter Holdings, Inc., its General Partner

By:   /s/ Dave Gillespie
      Name: Dave Gillespie
      Title: Chief Financial Officer