**EXHIBIT B**



600 Lexington Avenue, 6th Floor, New York, NY 10022
Phone: (212) 759-4433  Fax: (212) 759-5532
www.alvarezandmarsal.com

March 4, 2005

Official Committee of Unsecured Creditors in the
jointly administered estates of Winn-Dixie Stores, Inc. and its
affiliated debtors
$R^2$ Investments LDC
301 Commerce Street
Suite 2975
Fort Worth, Texas  76102

Dennis Dunne, Esq.
Milbank, Tweed, Hadley & McCloy
One Chase Manhattan Plaza
New York, NY  10005-1414

Dear Sirs:

This letter agreement ("Agreement") confirms and sets forth the terms and conditions of the engagement of Alvarez & Marsal, LLC ("A&M") by the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy case(s) of Winn-Dixie Stores, Inc. and its affiliated debtors (collectively, the "Debtor") to provide certain advisory services, as described below:

(1) Advisory Services
In connection with this engagement, the Committee has requested that A&M provide the following services:

(a) Review and evaluate the current and prospective operational condition of the Debtor;

(b) Assist the Committee and its counsel in evaluating and responding to various developments or motions during the course of the Debtor's chapter 11 bankruptcy cases, including such matters as claims analysis, including preference analysis, vendor relations, including reclamation/PACA claims and vendor liens/arrangements, substantive consolidation, executory contracts, and real estate interests;

(c) Advise the Committee concerning various measures for margin improvement in the Debtor's operations;

  (d) Provide other services that may be required by the Committee and that do not overlap with services provided by the Committee's other advisors.

  Martha E. M. Kopacz, a Managing Director of A&M, will be responsible for the overall engagement. She will be assisted by other A&M personnel. A&M personnel providing services to the Debtor may also work with other A&M clients in conjunction with unrelated matters.

(2) <u>Fees and Expenses</u>
A&M will receive $100,000 per month for services rendered (the "Monthly Fee"). A&M will also receive a restructuring fee (the "Restructuring Fee") equal to 25 basis points of the non-priority unsecured creditors' recovery upon consummation of a plan of reorganization confirmed in these cases (the "Chapter 11 Plan"), calculated based on the recovery projected to be received (and using the same assumptions, including the amount of claims, used in establishing the projected recovery) by the class(es) of creditors represented by the Committee (the "Committee Constituents") in the disclosure statement pursuant to which votes approving the Chapter 11 Plan were solicited. In the event a range of recovery has been provided in the disclosure statement, the Restructuring Fee will be based on the mid-point of the range of recoveries. If the distributions to the Committee Constituents are fixed under the Chapter 11 Plan regardless of the aggregate amount of Allowed Claims, then the Restructuring Fee shall be calculated based on the aggregate amount to be distributed to the Committee Constituents. The Restructuring Fee shall be reduced by 100% of all Monthly Fees paid to A&M after the twelfth Monthly Fee. The Restructuring Fee may be payable, in the sole discretion of the Committee, in cash or in the same combination of cash, assets and property as is being distributed under the Chapter 11 Plan to the Committee Constituents.

In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses (which shall be charged at cost) incurred in connection with this engagement, such as travel, lodging, duplicating, research, messenger and telephone charges. In addition, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation, approval and enforcement of this Agreement.

Fees and expenses will be billed on a monthly basis, and invoices shall be presented simultaneously to the Debtor and the Committee. We understand that the Debtor will pay our invoices, upon receipt, subject to applicable bankruptcy law, rules and local orders.

In no event shall the Committee or any of its members be liable in any capacity for any amounts owed to or by A&M in connection with this engagement and this

Agreement, including, without limitation, any of our invoices, expenses, costs, damages or other liabilities in connection with this engagement.

(3)  Term

The term of A&M's engagement hereunder shall commence on the date hereof and may be terminated without cause at any time by either A&M or the Committee, upon [10 days] prior written notice to the other party; provided, however, that no such termination shall affect the right of A&M to receive any fees and reimbursement of out-of-pocket expenses that have accrued prior to such termination; and provided further that in the event A&M has not received the Restructuring Fee prior to termination, A&M shall nevertheless be entitled to receive the Restructuring Fee after termination if the Chapter 11 Plan is confirmed prior to the six month anniversary of termination of the engagement.

(4)  Access to Information / Other Issues

In order for A&M to perform the services set forth above, it will be necessary for A&M personnel to have access to certain books, records and reports of the Debtor and to have discussions with the Debtor's personnel. Accordingly, it is understood that the Debtor has agreed to cooperate with A&M personnel and to make available at reasonable times and locations their personnel and customarily provided reports. To the extent A&M is not given the Debtor's cooperation or access to the Debtor's personnel, books and records and other sources of data, A&M's ability to provide the services set forth above will be limited.

Because of the limitations in this engagement, the depth of A&M's analysis and verification of the data are limited. It is understood that A&M is not being requested to perform an audit and that A&M is entitled to rely on the accuracy and validity of the data disclosed to A&M or supplied to A&M by employees and representatives of the Debtor. A&M is not updating, nor is A&M under any obligation to, update data submitted to A&M or review any other areas unless specifically requested to do so.

You understand that the services to be rendered will include a review and assessment of projections and other forward looking statements and that numerous factors can affect the actual results of the Debtor's operations, which may materially and adversely differ from those projections and other forward looking statements. A&M makes no representation or guarantee that any business plan or restructuring alternative is the best course of action.

(5)  Attorney Work Product

We understand that our work will be done at the direction of the Committee, and that work performed by us as part of this engagement, including, without limitation, any reports we may prepare, is privileged and confidential and is

deemed to constitute an attorney work product which we will not disclose to any other third-party (other than Milbank, Tweed, Hadley & McCloy and the Committee) except at the direction of the Committee or otherwise in accordance with the terms hereof or as required by law.

(6) <u>Confidential Information</u>
We recognize and acknowledge that certain information and documentation which we may receive in connection with our engagement is proprietary and confidential, including, without limitation, nonpublic financial and business information and documents hereafter furnished to us by the Debtor or by the Committee. By signing this Agreement, we confirm and agree that, without the prior consent of the Committee, we will not disclose, distribute, publish or release to any third party (excluding Milbank, Tweed, Hadley & McCloy and the Committee) any nonpublic information or documents now or hereafter received or obtained by us in this engagement, except as required by law, subpoena, or other process and as to which we will provide the Committee prior notice. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of acts by us. The Committee acknowledges that, in rendering services to the Committee, A&M may obtain information, including non-public information, from various independent sources which may be subject to confidentiality agreements, provided that A&M keeps such non-public information confidential in accordance with its duties to the Committee.

(7) <u>Indemnification</u>
The attached indemnification agreement is incorporated herein by reference and shall be executed by the Committee upon the acceptance of this Agreement and by the Debtor in its capacity as debtor-in possession upon entry of an order authorizing this Agreement. The indemnification agreement is an essential and integral part of this engagement, and accordingly, execution by the Committee and the Debtor is a condition to A&M's obligation to provide services under this Agreement. Termination of this engagement shall not affect any of these indemnification provisions, which shall remain in full force and effect.

(8) <u>Non-Solicitation</u>
The Committee, on behalf of its members, agrees that, until two year subsequent to termination of this engagement, it will not solicit, recruit or hire any employee of A&M, while employed by A&M, who worked on this engagement; provided that this restriction shall not apply with respect to any general solicitation for new employees which is not targeted at employees of A&M. The parties agree that in light of the inability to quantify the damages which A&M would suffer as a result of any breach of this provision, damages in the amount of the fees which could

have been earned over a twelve-month period at current hourly rates for any employee solicited, recruited or hired in violation of this provision are a reasonable estimate and shall be payable to A&M by the party breaching this provision.

(9) Miscellaneous

This Agreement (a) shall be governed and construed in accordance with the laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter hereof; and (c) may not be amended or modified except in writing executed by the parties hereto. Each of the parties hereto agrees (a) to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder; (b) that, to the extent permitted by applicable law, any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; (c) to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and (d) waives any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement.

Please sign and return a copy of this engagement letter signifying your agreement with the terms and provisions herein.

Very truly yours,

Alvarez & Marsal, LLC

By: *signature*
Martha E. M. Kopacz
Managing Director

Accepted & Agreed:
Milbank, Tweed, Hadley & McCloy, on behalf of
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
For Winn-Dixie Stores, Inc. and its affiliated debtors

By: *signature*
Dennis Dunne

## INDEMNIFICATION AGREEMENT

This indemnity is made part of an agreement, dated March 4, 2005 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") among Alvarez & Marsal, LLC ("A&M"), Winn-Dixie Stores, Inc. and its affiliated chapter 11 debtors (collectively, and with respect to the obligations hereunder, jointly and severally, the "Company") and the Official Committee of Unsecured Creditors appointed in the Company's cases (the "Committee"), for services to be rendered to the Committee by A&M.

A.   The Company agrees to indemnify and hold harmless each of A&M, its shareholders, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Company and the Committee also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Committee for or in connection with the engagement of A&M, except to the extent for any such liability for losses, claims, damages, liabilities or expenses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Company and the Committee further agree that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.   In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) or for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to

produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.  If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefore, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby accept its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company or the Committee, the Company or the Committee may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company or the Committee, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company or the Committee such counsel is unable to represent both the Indemnified Party and the Company or the Committee, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefore. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.  In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company or the Committee, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant

equitable considerations shall be considered.  No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.    The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim.

F.    Neither termination of the Agreement nor termination of A&M's engagement (nor the conversion of the Company's chapter 11 case to a chapter 7 case) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.    The Company acknowledges that, in rendering services to the Committee, A&M may obtain information, including non-public information, from various independent sources, provided that A&M keeps such non-public information confidential in accordance with its duties to the Committee.

WINN-DIXIE STORES, INC.
Debtor in possession, for itself and its
affiliated debtors

By: _____

ALVAREZ & MARSAL, LLC

By: *Martha E. M. Kopacz* (signature)
Martha E. M. Kopacz
Managing Director

Milbank, Tweed, Hadley & McCloy, on
behalf of
The Official Committee of Unsecured
Creditors appointed in the Winn-Dixie
Stores, Inc. chapter 11 cases

By: *D. F. Dunne /L.M.* (signature)
Dennis Dunne