**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:                                            :
                                                  :   **Chapter 11**
                                                  :
**WINN-DIXIE STORES, INC., et al.,**              :   **Case No. 05-11063 (RDD)**
                                                  :
         Debtors.                                 :   **(Jointly Administered)**
                                                  :
-----------------------------------------------------------------x

**ORDER UNDER 11 U.S.C. §§ 105(a) AND 363 AND FED. R. BANKR. P. 6004
(I) AUTHORIZING AND APPROVING THE SALE OF A 2002 GULFSTREAM
G-200 AIRCRAFT AND RELATED EQUIPMENT TO MAJESTIC REALTY CO.
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES,
(II) AUTHORIZING PAYMENT OF A BROKERAGE FEE TO BLOOMER
deVERE GROUP AVIA, INC. IN CONNECTION WITH SALE AND
<u>(III) GRANTING RELATED RELIEF</u>**

Upon the expedited motion (the "Motion")[1] of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order (i) authorizing and approving the sale of a 2002 Gulfstream G-200 aircraft and related equipment (the "Assets") to Molinaro Koger, Inc. ("Koger") free and clear of liens, claims, interests and encumbrances, subject to higher and better offers, (ii) authorizing payment of a brokerage fee to Bloomer deVere Group Avia, Inc. ("deVere") in connection with the sale and (iii) granting related relief; and a hearing regarding the Motion having been held (the "Sale Hearing"); and a competing bid for the Assets having been submitted by Majestic Realty Co. (the "Purchaser") prior to the Sale Hearing; and such bid having been accepted by the Debtors and the terms of the agreement between the Debtors, and the Purchaser

---

[1]   All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

having been set forth in the Aircraft Purchase and Sale Agreement dated as of March 28, 2005 (as modified prior to the Sale Hearing, the "Purchase Agreement"), a copy of which is attached hereto as Exhibit A; and it appearing, under the circumstances, that due notice of the Motion and the Sale Hearing have been given and due and proper notice of the Motion having been provided to (i) the Internal Revenue Service, the state and local taxing authorities; (ii) all parties who previously have expressed serious interest in acquiring the Assets; (iii) counsel for the Debtors' postpetition secured lenders (the "DIP Lenders"); (iv) the indenture trustee for the Debtors' noteholders; (v) counsel for the Creditors' Committee; (vi) all known holders of Claims and Interests (as those terms are defined below) in the Assets; (vii) all entities having requested notices pursuant to Fed. R. Bankr. P. 2002; (viii) the Office of United States Trustee; and (ix) any other parties not otherwise named herein but included in the Order (A) Establishing Notice Procedures on a Final Basis and (B) Continuing Hearing with Respect to Scheduling Omnibus Hearings (Dkt. No. 254), and no other or further notice need be given; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and their creditors; and upon the record of the hearing on the Motion, and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and good and sufficient cause appearing therefor:

THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these Chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Motion are 11 U.S.C. §§ 105(a), 363(b), (f), (m), and (n) and Fed. R. Bankr. P. 6004.

C. As evidenced by the certificate of service filed on the Motion, the Debtors served the Motion and notice of the Sale Hearing as contemplated by paragraph 35 of the Motion. The foregoing notice constitutes proper, timely and sufficient notice of the Motion, the Sale Hearing, and the sale of the Assets; such notice has been provided in accordance with the Motion, 11 U.S.C. § 102(1) and Fed. R. Bankr. P. 2002, and such notice was adequate and appropriate notice under the particular circumstances, and no other or further notice is required.

D. A reasonable opportunity to object or be heard with respect to the Motion and the sale of the Assets has been afforded to all parties in interest (including all third parties asserting Interests or Claims (as such terms are defined below) in, to or against the Assets, if any).

E. The Debtors' marketing efforts with respect to the Assets were reasonable, adequate, and designed to obtain the highest price possible for the Assets.

F. The Purchase Agreement has been duly and validly authorized by all necessary corporate action of the Debtors. Upon entry of this Order, the Debtors shall

have all the corporate power and authority necessary to consummate the sale of the Assets in accordance with the terms and conditions of the Purchase Agreement.

G.   Upon the record of this matter, other than the consent of the DIP Lenders (which consent has been obtained), no consents or approvals are required for the Debtors to consummate a sale of the Assets with the Purchaser.

H.   The Purchase Agreement reflects the exercise of the Debtors' sound business judgment.

I.   Approval at this time of the sale of the Assets to the Purchaser is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

J.   The Debtors have demonstrated a good, sufficient, and sound business purpose and justification for the sale of the Assets, including, without limitation, that: (i) absent an immediate sale of the Assets to the Purchaser, the Debtors would potentially lose the value of the Assets to the detriment of their estates and their creditors; and (ii) the marketing of the Assets has garnered the highest and best possible value for the Assets under the circumstances.

K.   The Purchase Agreement was negotiated, proposed, and agreed to by the Debtors and the Purchaser without collusion, in good faith, and from arm's length bargaining positions.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

L.   The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby.  The

Purchaser has acted and will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in consummating a sale of the Assets at all times after the entry of this Order.

M. The Purchase Agreement must be approved and consummated promptly in order to preserve the value of the Assets.

N. The Purchaser's offer for the Assets embodies a fair and reasonable offer to acquire the Assets and was the highest and otherwise best offer available for the Assets.

O. The transfer of the Assets to the Purchaser will be a legal, valid and effective transfer of the Assets and will vest the Purchaser with good and valid title in and to the Assets, free and clear of any lien, lease, or encumbrance of any nature (collectively, the "Interests") and claims (as such term is defined in 11 U.S.C. § 101(5)) ("Claims") because either no Interests in or Claims against the Assets exist or because one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) have been satisfied. All net proceeds of the sale of the Assets shall be remitted to Wachovia Bank, National Association in its capacity as Administrative Agent and Collateral Monitoring Agent ("Wachovia") for application against the outstanding indebtedness owing by the Debtors to Wachovia and the other post-petition senior secured lenders of the Debtors as provided by the terms of the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting

Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order"), and the Loan Documents (as defined in the Final Financing Order), including without limitation, the Consent to Sale of Aircraft and Related Assets, dated on or about the date hereof (the "Consent").

       P.       Payment of the Brokerage Fee to deVere in connection with the sale of the Assets is reasonable, customary and not detrimental to the Debtors' estates.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

       1.       The findings of fact and conclusions of law set forth above be, and the same hereby are, ratified and adopted as findings of this Court.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

       2.       The Motion is GRANTED.

       3.       The terms and conditions of the Purchase Agreement are hereby approved in all respects pursuant to 11 U.S.C. §§ 105(a) and 363.

       4.       Pursuant to 11 U.S.C. §§ 105(a) and 363(f), as provided for in the Purchase Agreement, the Assets shall be transferred to the Purchaser free and clear of all Interests and Claims.  All net proceeds of the sale of the Assets shall be remitted to Wachovia for application against the outstanding indebtedness owing by the Debtors to Wachovia and the other post-petition senior secured lenders of the Debtors as provided

by the Final Financing Order and the Loan Documents, including, without limitation, the Consent.

5. Each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions (provided that the taking of such actions shall not require such creditor to incur any material costs) as may be reasonably necessary to release its Interests or Claims, if any, against the Assets, as such Interests or Claims may have been recorded or may otherwise exist.

6. This Order (i) is and shall be effective as a determination that any and all Interests or Claims existing as to the Assets have been unconditionally released, discharged, and terminated, and that the conveyance of the Assets described herein has been effected, and (ii) is and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

7. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary or appropriate to consummate the Purchase Agreement.

8. If any person or entity that has filed financing statements, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests on or Claims in the Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Interests or other Claims that the person or entity has with respect to the Assets or otherwise, then (i) the Debtors are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets, and (ii) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests and other Claims of any kind or nature whatsoever in the Assets.

9. All entities that are presently in possession of any portion of the Assets are directed to surrender possession of the Assets to the Purchaser.

10. The consideration provided by the Purchaser for the Assets shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law, and may not be avoided under 11 U.S.C. § 363(n).

11. The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in 11 U.S.C. § 363(m). Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Assets shall not affect the validity of the sale to the Purchaser, unless such authorization

is duly stayed pending appeal. The Purchaser is a purchaser in good faith of the Assets and is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

12. During the pendency of the Debtors' jointly administered case, this Court shall retain exclusive jurisdiction (i) to enforce and implement the Purchase Agreement and any agreements and instruments executed in connection with the Purchase Agreement, (ii) to compel delivery of possession of the Assets to the Purchaser, (iii) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, and (iv) to interpret, implement, and enforce the provisions of this Order.

13. Nothing contained in any plan of reorganization or liquidation confirmed in these Chapter 11 cases, or any order of this Court confirming such a plan, or any other order entered in these Chapter 11 cases or in any subsequent Chapter 7 cases shall conflict with or derogate from the terms of this Order.

14. In the absence of a stay pending appeal, in the event that the Purchaser and the Debtors elect to consummate the Purchase Agreement at any time after entry of this Order, then, the Purchaser, as a purchaser in good faith within the meaning of 11 U.S.C. § 363(m), shall be entitled to the protections of 11 U.S.C. § 363(m) if this Order or any authorization contained herein is reversed or modified on appeal.

15. The terms and provisions of this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates and their creditors, the Purchaser, their affiliates, and their respective successors and assigns, and this Order shall be binding in all respects upon all persons, if any, asserting Interests in or Claims against the Debtors' estates or the Assets. The Purchase Agreement shall be enforceable

against and binding upon, and not subject to rejection or avoidance by, the Debtors or any Chapter 7 or Chapter 11 trustee of the Debtors and their estates.

16. The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

17. Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; <u>provided</u>, <u>however</u>, that, in connection therewith, the parties shall obtain the prior written consent of the Creditors' Committee, which consent shall not be unreasonably withheld; and <u>provided</u> <u>further</u>, that any such modification, amendment or supplement shall neither be materially adverse to the Debtors nor materially adversely change, with respect to the Debtors, the economic substance of the transactions contemplated hereby.

18. To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the Purchase Agreement shall govern, except with respect to the remittance of the proceeds to Wachovia as set forth above in paragraphs O and 45 upon the sale of the Assets, in which case, this Order shall govern.

19. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Purchase Agreement, together with

all additional instruments and documents that may be necessary to implement the Purchase Agreement, and the Debtors are authorized to take all further actions as may be necessary for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to the Purchaser their Assets, or as may be necessary to the performance of the Debtors' obligations under the Purchase Agreement.

20. The Debtors are authorized to pay to deVere the Brokerage Fee, $147,500, from the proceeds of the sale of the Assets to the Purchaser.

21. Any findings or conclusions read into the record by the Court at the Sale Hearing that are not expressly set forth in this Order are hereby fully incorporated as if the same were set forth herein.

22. Notwithstanding Fed. R. Bankr. P. 6004(g), this Order shall take effect immediately upon entry.

Dated: March 31, 2005
New York, New York

/s/Robert D. Drain
Honorable Robert D. Drain
United States Bankruptcy Judge

# EXHIBIT A

409842-Wilmington Server 1A - MSW