## AIRCRAFT PURCHASE AND SALE AGREEMENT

This Aircraft Purchase and Sale Agreement (this "Agreement") is made as of March 28, 2005, by and between Winn-Dixie Stores, Inc., with an address at 5050 Englewood Court, Jacksonville, Florida 32254 ("Seller), and Majestic Realty Co., a California corporationwith an address at 13191 Crossroads Parkway North, Sixth Floor, City of Industry, CA. 91746-3497, or its assigns ("Purchaser").

## RECITALS

A.  Seller owns that certain 2002 Gulfstream Aerospace G-200 aircraft, bearing the manufacturer's serial number 074 and the U.S. civil aviation mark N80R (the "Airframe"), together with two (2) Pratt & Whitney Canada PW306A engines bearing manufacturer's serial numbers PCE-CC0149 and PCE-CC0150 (the "Engines"), the appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment or property installed on or attached to the Airframe and Engines, listed in Exhibit I attached hereto and incorporated herein by this reference (the "Aircraft Specification"), and all books, manuals, logbooks, maintenance records and other data related to the operation and maintenance of the Aircraft the Airframe and Engines currently in Seller's possession (the "Aircraft Documents") (the Airframe, the Engines and the other foregoing described equipment and property, collectively, the "Aircraft").

B.  Subject to the terms and conditions set forth in this Agreement, Seller desires to sell and deliver the Aircraft to Purchaser and Purchaser desires to accept and purchase the Aircraft from Seller.

C.  Seller, Purchaser and Insured Aircraft Title Services, Inc., a corporation organized under the laws of the state of Oklahoma ("Escrow Agent") will enter into a mutually acceptable escrow agreement ("Escrow Agreement") with respect to the transactions contemplated hereunder, in the form attached hereto as Exhibit VI and incorporated herein by this reference.

D.  Purchaser now desires to enter into this Agreement.

E.  Seller commenced Case No. 05-11063-rdd (the "Case") under Chapter 11, 11 U.S.C. sections 101 et seq. (the "Bankruptcy Code"), on February 21, 2005 by filing a voluntary petition with the United States Bankruptcy Court for the Southern District of New York (the "Court").

IN CONSIDERATION of the mutual covenants contained herein, the parties hereto agree as follows:

ARTICLE 1.    SALE OF AIRCRAFT.

1.1    Subject to the terms and conditions set forth herein, Seller hereby agrees to sell and deliver, and Purchaser hereby agrees to buy and accept the Aircraft.

**Error! Unknown document property name.**

ARTICLE 2.    BANKRUPTCY COURT APPROVAL

2.1    Seller's and Purchaser's obligations under this Agreement are subject to and conditioned upon the entry of the Order (as defined herein) of the Court approving the sale of the Aircraft to Purchaser, pursuant to the terms and conditions of this Agreement, becoming a Final Order (as defined herein).  The Final Order must be acceptable to Purchaser and must provide for a sale of the Aircraft to Purchaser, free and clear of all liens, encumbrances and claims.  "Final Order" shall mean an action, ruling, or other order approving the sale of the Aircraft pursuant to the terms and conditions of this Agreement ("Order") (i) that shall have become final as to an action or order of the Court, (ii) that has not been reversed, vacated or stayed, is no longer subject to appeal, certiorari proceeding or other proceeding for review, reconsideration, re-argument or rehearing, and (iii) that no appeal, certiorari proceeding or other proceeding for review, reconsideration, re-argument or rehearing has been requested or is then pending, and the time to file any such appeal, certiorari proceeding or other proceeding for review, reconsideration, re-argument or rehearing has expired.

2.2    Motion to Approve Sale to Purchaser.

2.2.1.    No later than five (5) days from the date hereof, Seller shall file Seller's motion to sell the Aircraft (the "Motion"), which Motion shall contain all of the provisions required for authority to sell the Aircraft to Purchaser, as provided in this Agreement.  Seller shall diligently pursue the issuance of the Order and use its best efforts to obtain the Order and to ensure that the Order becomes a Final Order as soon as practicable.

2.2.2.    Seller's effort to obtain Court approval of the sale of the Aircraft shall include, but not be limited to, initiation of any contested matter or, as necessary, adversary proceeding or other exercise of jurisdiction by the Bankruptcy Court that may be required pursuant to Section 363 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or otherwise, to the extent necessary.  Seller shall oppose any challenges to any such approval or exercise of jurisdiction by the Court, including an appeal.  Seller shall provide not less than 20 days notice, pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, to all required creditors and parties in interest, and the United States Trustee of the Motion of the hearing before the Court to approve the Motion, or such lesser time as the Court may allow on a motion to shorten time.

ARTICLE 3.    DELIVERY CONDITION, INSPECTION AND ACCEPTANCE.

3.1    The Aircraft shall be delivered to Purchaser on the Delivery Date (as defined in Section 3.12 herein) in the following condition:

3.1.1    equipped as specified in the Aircraft Specification and in the same condition as during the Inspection;

3.1.2    with a current and valid United States Standard Airworthiness Certificate;

3.1.3    in an airworthy condition (as "airworthy" has the meaning set out in Chapter 1, Paragraph 9 of FAA Order 8130.21) suitable for operations under Part 91 of the FAR, with all systems and installed equipment and engines in normal working order and operating to manufacturers' specifications, and with each engine able to produce its rated takeoff power in a ground power run;

3.1.4    up to date on all manufacturers' recommended maintenance and inspection schedules (including all calendar and hourly inspections), and in compliance with all applicable FAA airworthiness directives and manufacturers' service bulletins (or equivalents) that have been issued with respect to the Aircraft on or before the Delivery Date;

3.1.5    with all applicable airframe, engine, and avionics maintenance programs and contracts, if any, paid to the date and time of the Delivery Date and transferable to Purchaser;

3.1.6    with no corrosion or damage and no history of corrosion or damage;

3.1.7    with no parts, systems or components installed in the Aircraft on a temporary loan or exchange basis; and

3.1.8    with all Aircraft Documents original and complete, continuous and up-to-date, printed or published in English, and maintained in accordance with industry standards and the applicable Federal Aviation Regulations ("FAR").

3.2    Upon the Order becoming a Final Order, pursuant to this Agreement, Seller shall remove the Aircraft from the used aircraft market and at Purchaser's expense (limited to expense for fuel and landing fees), Seller shall ferry the Aircraft from its then present location to the Gulfstream Service Center in Savannah, Georgia ("Inspection Facility") where the Aircraft shall undergo a pre-purchase inspection in accordance with a G-200 Phase "A" inspection ("Inspection") and the additional items set out in Exhibit II attached hereto and incorporated herein by this reference. The Inspection will commence upon the arrival of the Aircraft at the Inspection Facility, and after the Order becomes a Final Order, and will not exceed ten (10) days after the arrival of the Aircraft at the Inspection Facility, except for delays caused by the condition of the Aircraft or the Inspection Facility's schedule.   Purchaser shall have three (3) business days from the conclusion of the Inspection to conditionally accept or to reject the Aircraft pursuant to Section 3.4 below.

**Error! Unknown document property name.**

3.3     Upon the Order becoming a Final Order, Seller shall make the Aircraft available for the Inspection.  Purchaser shall open a work order with the Inspection Facility for Purchaser's account to pay all costs of the Inspection.   Seller shall open an account with the Inspection Facility for the correction of any "Airworthiness Discrepancies" (as defined below) found during the Inspection.   The work order of Purchaser shall be acknowledged by Seller, but Seller shall have no liability thereon.   The work order of Seller shall be acknowledged by Purchaser, but Purchaser shall have no liability thereon.  Flight costs for a test flight of the Aircraft that will not exceed two (2) hours shall be at Purchaser's cost for fuel and landing fees.  Purchaser shall have the right to have an agent  on board the Aircraft during any test flight.  All flights of the Aircraft under this Agreement shall be under the operational control of Seller.

3.4     Purchaser shall cause the Inspection Facility to conduct the Inspection to identify in reasonable detail those discrepancies that cause the Aircraft to not be in compliance with the delivery conditions in Section 3.1 herein ("Airworthiness Discrepancies"), and Seller shall bear the cost of correcting each and every Airworthiness Discrepancy.   The parties hereto agree that cosmetic items noted by the Inspection Facility during the Inspection shall not be an obligation of Seller to correct.   At the conclusion of the Inspection, Purchaser may, in its sole discretion, reject the Aircraft by notifying Seller and Escrow Agent in writing of such rejection as provided in Section 3.7.  If Purchaser does not reject the Aircraft, Seller and Purchaser shall each execute a Technical Acceptance Certificate (the "Acceptance"), the form of which is attached hereto as Exhibit III and is incorporated herein by this reference ("Certificate") setting forth on an attachment thereto a list of all Airworthiness Discrepancies.   If Purchaser fails to execute the Certificate within three (3) days of delivery by the Inspection Facility of a list of Airworthiness Discrepancies found as a result of the Inspection, then Purchaser shall be deemed to have rejected the Aircraft.   Upon the mutual execution by Seller and Purchaser of the Certificate, subject to Section 3.5, Seller shall be obligated to correct and pay for the correction of all Airworthiness Discrepancies attached to the Certificate.   Seller and Purchaser each shall have paid their respective amounts owed the Inspection Facility prior to the Aircraft's departure from the Inspection Facility.   Except as otherwise provided herein, Purchaser, upon executing the Certificate shall be irrevocably obligated to accept delivery of the Aircraft after Seller has performed Seller's obligations under the Certificate and Seller has met its other obligations under this Agreement.  Upon Purchaser's Acceptance of the Aircraft by Purchaser's execution of the Certificate, the Deposit (as defined in Section 4.1 herein) shall become non-refundable to Purchaser except as specifically provided herein, or except in the case of Seller's default under this Agreement.

3.5     It shall be a pre-condition to Purchaser's obligation to accept delivery of the Aircraft at Delivery (as defined in Section 3.10 herein) that the Aircraft shall be in the condition set forth in Section 3.1 herein.

3.6     It shall be a pre-condition to Purchaser's obligation to accept delivery of the Aircraft at Delivery (as defined in Section 3.10 herein) that Gulfstream Aerospace shall have agreed in writing to the transfer to Purchaser of the EGM Program, as modified, conditioned, or expanded by any e-mails, letters, side-letters, or other understandings between Gulfstream Aerospace and Seller.

4

3.7    Should Purchaser, in its sole discretion, reject the Aircraft or be deemed to have rejected the Aircraft prior to Purchaser's execution of the Certificate, as set out in Sections 3.2 and 3.4 herein, Purchaser, at Purchaser's sole cost, shall be responsible to return the Aircraft to its physical condition prior to the Inspection and Purchaser shall indemnify Seller for any physical damage to the Aircraft incurred in connection with the Inspection, unless such damage was caused by an act or omission of Seller or if such damage is covered and paid by insurance carried by the Inspection Facility.    Payment of the Deposit, as defined in Section 5.1(a), by Escrow Agent to Purchaser, shall be preconditioned upon Purchaser having paid the Inspection Facility for all costs of Purchaser due the Inspection Facility.    Upon Purchaser's notice to Escrow Agent that Purchaser has rejected the Aircraft, and preconditioned upon written confirmation by Inspection Facility and Seller that Purchaser has paid all amounts set out above in this Section 3.7, Escrow Agent shall pay the Deposit to Purchaser on the next business day after receiving notice from Purchaser, Seller and Inspection Facility that Purchaser has performed all preconditions required herein for the return of the Deposit.    Purchaser may give Seller notice of Purchaser's rejection prior to acceptance by writing "REJECTS" across the face of the Certificate, initialing "REJECTS" and delivering the Certificate to Seller, notifying Seller of Purchaser's rejection of the Aircraft.    Notwithstanding anything herein to the contrary, Purchaser shall not be responsible for the costs set out in this Section 3.7 unless the Court's Order approving the sale of the Aircraft becomes the Final Order.

3.8    Unless at such time Seller shall be in breach or default under this Agreement or as otherwise provided herein, should Purchaser fail to purchase the Aircraft after Purchaser has executed the Certificate and Seller has corrected and paid for all of the Airworthiness Discrepancies attached to the Certificate, Purchaser shall pay for the Inspection and Seller's out-of-pocket expenses related to the flight to the Inspection Facility and any test flights and shall pay Seller for all expenses incurred by Seller in connection with Seller's attempt to sell the Aircraft to Purchaser hereunder, including without limitation, Seller's legal and professional fees and those costs over and above fuel and landing fees for each flight of the Aircraft performed by Seller hereunder.    The Deposit shall be paid to Seller as Seller's exclusive remedy and as sole compensation for the removal of the Aircraft from the used aircraft market and the loss of use of the Aircraft during the period of the Inspection.    Upon Seller's receipt of the Deposit and the other payments referred to in this Section 3.8, this Agreement shall become null and void and neither Seller or Purchaser shall be further obligated to each other under this Agreement. Notwithstanding anything herein to the contrary, Purchaser shall not be responsible for the costs set out in this Section 3.8 unless the Court's Order approving the sale of the Aircraft becomes the Final Order.

3.9    Should Seller fail to correct all the Airworthiness Discrepancies designated to be corrected and paid for by Seller attached to the Certificate, then Purchaser may terminate this Agreement provided Purchaser has paid the Inspection Facility for all the costs and charges related to any work orders opened by Purchaser at the Inspection Facility.    Upon such termination by Purchaser, the Escrow Agent shall pay the Deposit to Purchaser and Seller shall pay to Purchaser, upon Purchaser's demand, for all expenses incurred by Purchaser in connection with Purchaser's attempt to purchase the Aircraft including, without limitation, Purchaser's legal and professional fees and the cost of the Inspection and any payments made to Seller for ferry or test flights.    Upon receipt by Purchaser of the Deposit and other amounts set forth in the

5

preceding sentence, this Agreement shall be null and void and neither party hereto shall have any further obligation to the other.

3.10    Upon completion of the correction of all Airworthiness Discrepancies and the placement of the "approved for return to service" entry by the Inspection Facility in the Aircraft's logbook, Purchaser and Seller shall, within three (3) business days, proceed to closing and delivery at the Inspection Facility or at another mutually agreeable location within the continental United States (closing and delivery "Delivery").   In the event Delivery shall not take place at the Inspection Facility, Purchaser shall pay  the cost of fuel and landing fees for the ferry flight from the Inspection Facility to such other Delivery location.

3.11    If the Aircraft is damaged or destroyed after Purchaser has accepted the Aircraft as set out in Section 3.4 herein, but before Delivery, Seller shall notify Purchaser of such damage within twelve (12) hours of the incident and Purchaser, in Purchaser's sole discretion, shall give notice to Seller within two (2) business days after Purchaser receives such information whether Purchaser will accept the Aircraft after the Aircraft has been repaired from an incident resulting in anything less than a total loss.   Should Purchaser notify Seller that Purchaser rejects the Aircraft due to such incident, Escrow Agent shall, upon confirmation that Purchaser has paid the Inspection Facility for all costs due the Inspection Facility from Purchaser, during the next day when Escrow Agent's bank is open, pay the Deposit back to Purchaser.

3.12    Prior to the day of Delivery ("Delivery Date"), Seller shall have, pursuant to this Section 3.12, delivered to Purchaser the Final Order and delivered to Escrow Agent a fully executed but undated Warranty Bill of Sale conveying legal title to the Aircraft to Purchaser free and clear of any lien, claim, lease or encumbrance of any nature whatsoever except any claim arising through Purchaser or any of its agents or contractors.   Such Warranty Bill of Sale shall be in the form as set out as Exhibit IV attached hereto and incorporated herein by this reference ("Bill of Sale").   Prior to the day of Delivery, Seller shall have also executed and delivered to Escrow Agent an undated FAA Bill of Sale (AC Form 8050-2) for filing and recording at the FAA Registry in Oklahoma City, Oklahoma (the "FAA Bill of Sale") (collectively the Bill of Sale and the FAA Bill of Sale, the "Bills of Sale").   In addition, prior to the day of Delivery, Purchaser shall have executed and delivered to Escrow Agent an undated FAA Application for Registration (AC Form 8050-1) for filing and recording at the FAA Registry in Oklahoma City, Oklahoma (the "FAA Registration Application") and a duly executed but undated Delivery Receipt (as defined in Section 3.13 herein).   Subject to and in accordance with the terms and conditions set forth in the Escrow Agreement, on the Delivery Date (a) Seller shall instruct Escrow Agent to date and file the FAA Bill of Sale with the FAA Registry and to date and deliver the Bill of Sale to Purchaser after Purchaser has paid the Purchase Price to Seller as defined in Section 5.1 herein and (b) Purchaser shall instruct Escrow Agent to date and file the FAA Registration Application with the FAA Registry and to date and deliver the Delivery Receipt to Seller as further set out in Section 3.13 herein upon notice from Escrow Agent that the FAA Bill of Sale and FAA Registration Application have been duly filed at the FAA Registry in Oklahoma City, Oklahoma.

3.13    On the Delivery Date, subject to and in accordance with the terms and conditions set forth in the Escrow Agreement, Purchaser shall pay the balance of the Purchase Price (as

6

defined in Section 5.1 herein) and cause the delivery to Seller of a duly executed Delivery Receipt acknowledging delivery of the Aircraft.  Such Delivery Receipt shall be in the form set forth in Exhibit V, which is attached hereto and incorporated herein by this reference ("Delivery Receipt"), and will be effective when executed by an authorized agent of Purchaser and delivered to Seller.  Upon execution and delivery by Purchaser of the Delivery Receipt, (a) it shall be conclusively presumed that Purchaser has approved and accepted the physical condition of the Aircraft "as is, where is, with all faults" in its then-current physical condition and state of repair, and (b) Purchaser shall unconditionally waive and release any claim against Seller for any breach of any representation or warranty regarding the Aircraft, whether express or implied.. Payment of the Purchase Price by Purchaser shall be a precondition to Delivery and Seller's delivery of the Bills of Sale, as set out in Section 3.12 herein, to Purchaser.  The Delivery of the Aircraft, the delivery of the Final Order, delivery of the executed Bill of Sale by Seller to Purchaser, the filing of the FAA Bill of Sale at the FAA Registry, the truth and accuracy of Seller's representations and warranties and the performance of Seller's covenants and agreements under this Agreement shall be preconditions to Purchaser delivering an executed Delivery Receipt to Seller.

3.14    Seller agrees, at the  sole cost and expense of Purchaser, promptly after Delivery, to assist in the transfer of all maintenance service plans, including the ESP Gold Lite Plan carried on the Engines, the Airframe or any part or engine thereof to Purchaser to the extent transferable. Purchaser understands that there may be certain enrollment or transfer fees required for transfer of some extended coverage maintenance programs, and Purchaser will apply for and pay for the transfer of coverage for those programs.

ARTICLE 4.    <u>TITLE AND RISK OF LOSS</u>.

4.1    Title to and risk of loss of the Aircraft shall pass from Seller to Purchaser when Purchaser has executed and delivered to Seller or its representative (or authorized the Escrow Agent to deliver) the Delivery Receipt and Seller has executed and delivered (or authorized the Escrow Agent to deliver) to Purchaser or its representative the Bills of Sale, and not prior thereto.

ARTICLE 5.    <u>PURCHASE PRICE AND PAYMENT SCHEDULE</u>.

5.1    The purchase price of the Aircraft is FIFTEEN MILLION SEVEN HUNDRED THOUSAND DOLLARS AND NO/100 (US$15,700,000.00) ("Purchase Price") and shall be paid in immediately available funds to Seller in the following manner:

(a)    Purchaser has deposited TWO HUNDRED FIFTY THOUSAND DOLLARS AND NO/100 (US$250,000.00) in an escrow account with Escrow Agent ("Deposit"); and

Error! Unknown document property name.

(b)    Purchaser's transfer of the balance of the Purchase Price, FIFTEEN MILLION FOUR HUNDRED FIFTY THOUSAND DOLLARS AND NO/100 (US$15,450,000.00), on or before the Delivery Date to Escrow Agent.


ARTICLE 6.    <u>COMMISSIONS</u>.

6.1    Seller represents to Purchaser that Seller has hired, at Seller's sole cost, Bloomer deVere as its broker for the transaction anticipated by this Agreement..

6.2    Both parties hereto agree to indemnify and hold the other harmless from and against any and all claims, suits, damages, costs and expenses (including, but not limited to, reasonable attorneys' fees) asserted by any agent, broker or other third party for any commission or compensation of any nature whatsoever based upon the transactions contemplated by this Agreement.

ARTICLE 7.    <u>DISCLAIMER BY SELLER OF WARRANTIES</u>.

THE AIRCRAFT AND ANY AND ALL OTHER ITEMS SUBJECT TO THIS AGREEMENT ARE SOLD ON AN "AS-IS, WHERE-IS, WITH-ALL-FAULTS" BASIS AND WITH ALL FAULTS. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN SECTION 9.1.3 HEREIN OR IN THE BILL OF SALE, SELLER DOES NOT MAKE, AND SELLER HEREBY DISCLAIMS, ANY AND ALL EXPRESS, IMPLIED OR STATUTORY WARRANTIES OR REPRESENTATIONS OF ANY NATURE WHATSOEVER WITH RESPECT TO THE AIRCRAFT AND ANY AND ALL OTHER ITEMS SUBJECT TO THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, AS TO THE DESIGN OR CONDITION OF THE AIRCRAFT, ITS MERCHANTABILITY, DURABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OF THE MATERIAL OR WORKMANSHIP OF THE AIRCRAFT, OR THE CONFORMITY OF THE AIRCRAFT TO THE PROVISIONS AND SPECIFICATIONS OF ANY PURCHASE ORDER OR ORDERS RELATING THERETO, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT, OR ANY OTHER MATTER CONCERNING THE AIRCRAFT (WHICH DISCLAIMER PURCHASER HEREBY SPECIFICALLY ACKNOWLEDGES PURSUANT TO ITS ACCEPTANCE OF THE BILL OF SALE). EXCEPT WITH RESPECT TO THE EXPRESS WARRANTIES AND/OR REPRESENTATIONS OF SELLER IN SECTION 9.1.3 HEREIN AND IN THE BILL OF SALE, PURCHASER HEREBY WAIVES ANY CLAIM (INCLUDING, WITHOUT LIMITATION, ANY CLAIM FOR INCIDENTAL OR CONSEQUENTIAL DAMAGE) OR EXPENSE CAUSED BY THE AIRCRAFT OR BY PURCHASER'S LOSS OF USE THEREOF FOR ANY REASON WHATSOEVER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER SHALL NOT BE LIABLE OR RESPONSIBLE FOR ANY DEFECTS, EITHER PATENT OR LATENT (WHETHER OR NOT DISCOVERABLE BY PURCHASER) IN THE AIRCRAFT, OR FOR ANY DIRECT OR INDIRECT DAMAGE TO PERSONS OR PROPERTY RESULTING THEREFROM, OR FOR PURCHASER'S LOSS OF USE OF THE AIRCRAFT OR FOR ANY INTERRUPTION IN

**Error! Unknown document property name.**

PURCHASER'S BUSINESS CAUSED BY PURCHASER'S INABILITY TO USE THE AIRCRAFT FOR ANY REASON WHATSOEVER.

ARTICLE 8.    <u>TAXES</u>.

8.1    Purchaser shall be responsible for paying (a) any and all sales, use, value added, stamp, excise, transfer or similar taxes, and any interest or penalties on such taxes, imposed on the purchase and sale of the Aircraft pursuant to this Agreement and (b) any and all landing fees, property taxes, excise taxes, fuel taxes, excise or similar taxes, and any interest or penalties on such taxes, that may be assessed against the Aircraft attributable to Purchaser's ownership and operation of the Aircraft on and after the Delivery Date (collectively, "Purchaser Taxes"). In the event that Purchaser fails to pay any Purchaser Taxes and such Purchaser Taxes are levied upon, assessed against, collected from, or otherwise imposed on Seller, then Purchaser shall indemnify, protect, defend and hold Seller harmless from and against all such Purchaser Taxes, together with any interest, penalties or other additions thereto, and any legal or other expenses incurred to defend or protect against any such Purchaser Taxes. In the event Seller receives notice or otherwise becomes aware of any audit, claim, assessment or proposed assessment of any tax for which Purchaser may be responsible under this Section, Seller shall immediately notify Purchaser thereof, and Purchaser shall have the right to control, manage or defend any such audit, claim, assessment or proposed assessment. Seller's failure to provide Purchaser such notice in a timely manner shall relieve Purchaser of its obligation to pay any such tax, or any associated interest or penalties, to the extent Purchaser's rights have been impaired by Seller's failure.

8.2    Seller shall be responsible for paying (a) any and all taxes on, or measured by, the income, gross revenue, capital gain or any other characterization of the gain of Seller in connection with the sale of the Aircraft pursuant to this Agreement and (b) any and all landing fees, property taxes, excise taxes, fuel taxes, excise or similar taxes, and any interest or penalties on such taxes, that may be assessed against the Aircraft attributable to Seller's ownership and operation of the Aircraft prior to the Delivery Date (collectively, "Seller Taxes"). In the event that Seller fails to pay any Seller Taxes and such Seller Taxes are levied upon, assessed against, collected from, or otherwise imposed on Purchaser, then Seller shall indemnify, protect, defend and hold Purchaser harmless from and against all such Seller Taxes, together with any interest, penalties or other additions thereto, and any legal or other expenses incurred to defend or protect against any such Seller Taxes.

8.3    It shall be a condition to Seller's obligation to sell the Aircraft to Purchaser hereunder that Seller, in good faith, shall have received evidence satisfactory to Seller that Purchaser is exempt from or has paid or has made arrangements satisfactory to Seller for the payment of any sales or use taxes imposed on the purchase and sale of the Aircraft.

ARTICLE 9.    <u>REPRESENTATIONS OF SELLER</u>.

9.1    <u>Seller's Representations and Warranties</u>.    Seller represents and warrants to Purchaser that:

Error! Unknown document property name.

9.1.1   Seller is a corporation duly organized and validly existing in good standing under the laws of the state of its incorporation.

9.1.2   Subject to approval of the Court, Seller has had at all relevant times the power and authority to execute and deliver the Aircraft and to perform its obligations under this Agreement.

9.1.3   At Delivery, except for any liens, claims or encumbrances of Purchaser, Seller shall have good and marketable title to the Aircraft free and clear of all liens, claims and encumbrances.

9.1.4   Subject to approval of the Court, the execution, delivery and performance of this Agreement by Seller will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under, or result in the creation or imposition of any lien upon Seller under any indenture, mortgage or other agreement or instrument to which it is a party or by which it or any of its property is bound, or any existing applicable law, rule, regulation, judgment, order or decree of any government, governmental instrumentality or court having jurisdiction over it or any of its properties.

9.1.5   Except for approval of the Court, neither the execution and delivery by Seller of this Agreement nor the consummation of any of the transactions contemplated hereby requires the consent or approval of, the giving of notice to, or, subject to Section 9.1.3, the taking of any other action in respect of, any trustee or holder of any indebtedness or obligation of Seller or any governmental authority or agency, other than the filing and recording of the FAA Bill of Sale and the FAA Registration Application at the FAA Registry in Oklahoma City, Oklahoma, and except such other consents, approvals, notices and actions as have been obtained, given, or taken, as the case may be.

9.1.6   No law or governmental rule or regulation makes invalid or not binding on Seller, this Agreement by reason of its participation in the transactions contemplated hereby.

9.1.7   This Agreement has been duly authorized, executed and delivered by Seller and constitutes the legal, valid and binding obligation of Seller enforceable in accordance with the terms hereof.

9.1.8   Seller is the sole and exclusive legal and beneficial owner of the Aircraft and has good and marketable title to it, free and clear of all debts, liens, security interests, pledges and collateral assignments.

Error! Unknown document property name.

ARTICLE 10.  <u>REPRESENTATIONS OF PURCHASER</u>.

      10.1  <u>Purchaser's Representations and Warranties</u>.  Purchaser represents and warrants to Seller that:

      10.1.1  Purchaser is a corporation duly organized and validly existing in good standing under the laws of its state of incorporation.

      10.1.2  Purchaser has had at all relevant times the power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement.

      10.1.3  The execution, delivery and performance of this Agreement by Purchaser has been duly authorized by all necessary company action. Compliance with the terms and provisions hereof do not and will not result in a conflict with or result in a breach of any of the terms or provisions of, or constitute a default under, or result in the creation or imposition of any lien under any indenture, mortgage or other agreement or instrument to which it is a party or by which it or any of its property is bound, or any existing applicable law, rule, regulation, judgment, order or decree of any government, governmental instrumentality or court having jurisdiction over it or any of its properties.

      10.1.4  Neither the execution and delivery by Purchaser of this Agreement nor the consummation of any of the transactions contemplated hereby requires the consent or approval of, the giving of notice to, or the taking of any other action in respect of, any trustee or holder of any indebtedness or obligation of Purchaser or any governmental authority or agency, except such as have been obtained, given, or taken, as the case may be.

      10.1.5  No law or governmental rule or regulation makes invalid or not binding on Purchaser, this Agreement by reason of its participation in the transactions contemplated hereby.

      10.1.6  This Agreement has been duly authorized, executed and delivered by Purchaser and constitutes the legal, valid and binding obligation of Purchaser enforceable in accordance with the terms hereof.

ARTICLE 11.  <u>FORCE MAJEURE</u>.

      11.1  Each party shall be excused from, and shall not be liable in any manner for, any delay or failure in its performance under this Agreement if occasioned by a cause or causes beyond its control including, but not necessarily limited to, acts of God, wars, insurrections, riots, hostilities, acts of government, fire, strikes, other material labor disputes, explosions, major accidents, or floods. Notwithstanding the foregoing, the failure of Seller to obtain the Order or a Final Order as provided herein shall not be deemed to be an event of force majeure. Should

11

Seller be prevented from delivering the Aircraft due to force majeure, Seller shall have thirty (30) days after the scheduled Delivery Date to tender the Aircraft for Delivery, or Purchaser may, at its sole option, give written notice to Seller of its decision to terminate this Agreement. Both parties hereto agree that if Seller acknowledges that Seller cannot deliver this Aircraft within the thirty (30) day period after the event of force majeure, Purchaser may terminate this Agreement immediately.   If Seller cannot deliver the Aircraft, Purchaser will continue to have the obligation to pay the Inspection Facility any costs incurred by Purchaser.   If Purchaser terminates this Agreement pursuant to this Article 11, Seller through Escrow Agent shall refund the Deposit to Purchaser, this Agreement shall become null and void and neither party shall be obligated to the other under this Agreement.

ARTICLE 12.  <u>TERMINATION</u>.

12.1    Either party hereto may terminate this Agreement in the event the other party materially breaches any of the terms and conditions contained herein, or otherwise defaults in the performance of its contractual obligations.   Such termination shall be effective upon five (5) days written notice to  the defaulting party (unless such default is cured within such five (5) days) and shall in no way affect the rights or liabilities of the parties hereto which shall have accrued as of the date of such termination.

12.2    Purchaser may terminate this Agreement by written notice to Seller, if the Order has not become a Final Order on or before April 10, 2005 (the "Termination Date"), in which event Seller shall have no further obligation under this Agreement and the Escrow Agent shall deliver to Purchaser the Deposit without deduction for any inspection expenses, all of which shall be the sole liability of Seller.   Purchaser, in its sole discretion, may extend the Termination Date.

12.3    Intentionally Deleted

12.4    Except as provided in Article 11, if Seller fails to obtain the Final Order by April 10, 2005 (unless extended by Purchaser), and  deliver the Aircraft or perform its obligations in accordance with this Agreement, Purchaser shall have the option of terminating this Agreement and receiving a return of the Deposit in full in which event Seller shall pay or reimburse Purchaser for all costs incurred by Purchaser in connection with the Purchaser's attempt to purchase the Aircraft including, without limitation, Purchaser's legal and professional fees, the cost of the Inspection,  and any payments made to Seller for ferry or test flights.

ARTICLE 13.  <u>NOTICES</u>.

13.1    All notices or other communications shall be in writing and shall be sent by (a) personal delivery, (b) telephone facsimile transmission, (c) express courier or delivery service, addressed as follows:

**Error! Unknown document property name.**

SELLER

Winn-Dixie Stores, Inc.
5050 Englewood Court
Jacksonville, FL  32254

Tel:    904-370-7172
Fax:   904-783-5646
Attn:   Mike Chlebovec


With a copy to:

Lane Powell PC
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101
Tel:    206-223-7431
Fax:   206-223-7107
Attn:   Kit Narodick

PURCHASER

Majestic Realty Co.
13191 Crossroads Parkway North
Sixth Floor
City of Industry, CA. 91746-3497
Tel:    562-948-4306
Fax:   562-692-1553
Attn:   John H. Semchen III


With a copy to:

Latham & Watkins LLP
633 West 5th Street, Suite 4000
Tel:  213-891-8720
Fax:  213-891-8763
Attn:  Peter M. Gilhuly, Esq.

and

Law Offices of Stuart A. Heller
1325 Fourth Avenue, Suite 940
Seattle, WA. 98101-2509
Tel:  (206) 623-0579
Fax: (206)682-7972
Attn: Stuart A. Heller, Esq.


13.2    All notices shall be deemed given as of the date of receipt.


ARTICLE 14.  MANUFACTURER WARRANTIES.

14.1    Manufacturer Warranties

14.1.1 At Delivery or promptly thereafter, Seller agrees, at its sole cost and expense, to cause to be transferred to Purchaser all manufacturer's and peripheral vendors' warranties including, without limitation, the EGM Program, as modified, conditioned, or expanded by any e-mails, letters, side-letters, or other understandings between Gulfstream Aerospace and Seller provided that copies of such other modifications  shall be provided to Purchaser prior to completion of Inspection as that term is defined in Section 3.2 hereof.

14.1.2 To the extent that the same may not be assigned or otherwise made available to Purchaser, Seller agrees, at the sole cost and expense of Purchaser, to exert its best reasonable efforts to enforce such rights as Seller may have with respect thereto for the benefit of Purchaser.

Error! Unknown document property name.

ARTICLE 15.  <u>MODIFICATION</u>.

      15.1    No modification, amendment or termination of this Agreement shall be effective unless it is in writing and signed by each party hereto or their duly authorized representative.

ARTICLE 16.  <u>LITIGATION COSTS</u>.

      16.1    In the event of any litigation or arbitration between Seller, on the one hand, and Purchaser, on the other, respecting or arising out of this Agreement, the prevailing party, whether or not such litigation proceeds to final judgment or determination, shall be entitled to recover from the non-prevailing party or parties all of the attorney's fees incurred with respect to such legal efforts, in each such action, suit or other proceeding, including any and all appeals or petitions therefrom.

ARTICLE 17.  <u>WAIVER</u>.

      17.1    All rights of hereunder of Seller, on the one hand, and Purchaser, on the other, are separate and cumulative.

      17.2    No waiver by either party of any default hereunder shall be deemed a waiver of any subsequent default.

ARTICLE 18.  <u>SUCCESSORS AND ASSIGNS</u>.

      18.1    Except where expressly provided to the contrary, this Agreement, and all provisions hereof, shall inure to the benefit of and be binding upon the parties hereto, their successors in interest, assigns, administrators, executors, heirs and devisees.

      18.2    No party may assign or transfer its rights or obligations under this Agreement without the prior written consent of the other party.

ARTICLE 19.  <u>INDEMNIFICATION</u>.

      19.1    In the event of any breach of any covenant, warranty or representation herein, the breaching party shall indemnify, defend and hold the non-breaching party harmless from any and all claims, debts, liabilities, costs, damages, obligations and actions of every kind or nature whatsoever arising out of or in any way relating to such breach, including, but not limited to, indemnifying the non-breaching party for all attorneys' fees and costs incurred in connection with any defense.

14

ARTICLE 20.  <u>COUNTERPARTS</u>.

     20.1    This Agreement may be signed in several counterparts, each of which shall be an original, but all of which together shall constitute the same instrument.   Delivery of a signed counterpart by telephone facsimile transmission shall be effective as delivery of a manually signed counterpart of this Agreement.

ARTICLE 21.  <u>MISCELLANEOUS</u>.

     21.1    This Agreement sets forth the entire contract between the parties hereto and supersedes all previous communications, representations or agreements, whether oral or written, between the parties with respect to the sale and purchase of the Aircraft.

     21.2    Should any provisions of this Agreement be void or unenforceable, such provisions shall be deemed omitted, and this Agreement, with such provision omitted, shall remain in full force and effect.   Such invalid or unenforceable provision will be replaced, if possible, through interpretation or through good faith negotiations between the parties hereto so as to maintain the purposes and intentions of this Agreement and the provisions in question.

     21.3    Any Exhibits, Attachments, Appendices and/or Schedules annexed to this Agreement are hereby incorporated herein by reference and are an integral part of this Agreement, and where there is any reference to this Agreement, it shall be deemed to include any and all Exhibits, Attachments, Appendices and/or Schedules.

     21.4    This Agreement shall in all respects be governed by, and construed in accordance with, the laws of Florida, including all matters of construction, validity and performance, without giving effect to its conflict of laws provisions.

     21.5    During the pendency of the Case, exclusive jurisdiction and venue over any and all disputes between the parties arising under this Agreement shall be in, and for such purpose each party hereby submits to the jurisdiction of, the Court.   Thereafter, exclusive jurisdiction and venue over any and all disputes between the parties arising under this Agreement shall be in, and for such purpose each party hereby submits to the jurisdiction of, the federal and state courts in Florida.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized agents as of the date first above written.

WINN-DIXIE STORES, INC.
Seller

MAJESTIC REALTY CO., a California corporation.
Purchaser

By:_____

Title:_____

Date:_____

By:_____
    Edward P. Roski, Jr.
    Chairman and Chief Executive Officer

Date:_____

**Error! Unknown document property name.**

## EXHIBIT I

## 2002 Gulfstream 200
## s/n 0747N80R

**AIRFRAME**:

| | |
|---|---|
| **Total Time**: | [511] |
| **Landings**: | [477] |

**APU:** Garrett GTCP 36-150

**ENGINES**: One ESP Gold Lite Plan

| | Eng 1 | Eng 2 |
|---|---|---|
| **Total Time**: | [511] | [511] |
| **Cycles**: | [477] | [477] |

| | |
|---|---|
| **AVIONICS**: | Collins Pro-Line 4 |
| **EFIS**: | Collins 5 Tube EFIS |

| | |
|---|---|
| **EGPWS**: | Honeywell Mark V Enhanced |

| | |
|---|---|
| **AP**: | Collins FCC 4000 |
| **COMMS**: | Dual Collins VHP 422D vfe/8.33 Spac. |
| **NAVS**: | Dual Collins VIR 432 w/FM IMM |
| **DME**: | Dual Collins DME 442 |
| **ADF**: | Dual Collins ADF 462 |
| **TPDR**: | Dual Collins TDK 94D Mode S |
| **Radar** | Collins Color TWR 850 |
| **RAD ALT**: | Collins ALT 4000 |
| **LRN**: | Dual Collins FMC-6100 w/ Dual GPS-4000A |

| | |
|---|---|
| **HFComm** | Dual Honeywell KHF 950 |
| **FMS**: | Dual Collins FMC 61 10 w/Printer |
| **COMPASS**: | Dual Collins AHS-3000 AHS |
| **PHONED** | MagnaStar Radio w/ 3 handsets |
| **AFIS**: | Honeywell |
| **FDR**: | FDR w/57 Parameters |
| **CVR**: | Universal CVR-120 |
| **TCAS**: | Collins TCAS |

**INTERIOR**:

Gulfstream lightweight completion.  Nine Passenger configuration featuring 4 place berthable club forward, Aft two place berthable club and a single 3-place divan. Jump Seat.  Cabin amenities include 2 dataports, AirShow 400 and 7 electrical outlets.  Forward Galley and Aft Lav. Galley includes ice drawer, coffee maker, wine storage, cold food storage & microwave.  Entertainment center features DVD, 5-disc CD player, VHS, and two 14 inch LCD monitor.  Fireblocked.

**MISC. INFORMATION:**

| | |
|---|---|
| Life Rafts & Life Jackets | IAI proprietary Parts Warranty (exp. 3/28/08) |
| China Service/ Glassware/ Cutlery | Paint & Interior Warranty 2 Yrs. (exp 3/28/05) |
| Labor Warranty is 5 Yrs. or 3,000 hrs (exp. 3/28/08) | Rockwell Collins 5 Yrs. or 3,000 hrs. (exp. 3/28/08) |

Primary Structural Warranty 10 Years or 10,000 Hours (exp. 3/28/13)
Pratt Whitney Engine Warranty handled directly with Pratt Whitney and is 5 Years from Operational Delivery or 3,000 engine hours (3/28/08)
EGM Program (3/28/08)

*Specifications/descriptions are provided as introductory information and do not constitute representation or warranties of Bloomer deVere or Bloomer deVere client(s).  Accordingly, you should rely on your own inspection of the aircraft.  Any proposed transaction is subject to final execution of a contract acceptable in form and substance to Bloomer de Vere, its client(s), and their counsel.*

## SPECIFICATIONS SUBJECT TO VERIFICATION
## UPON INSPECTION BY PURCHASER

## <u>EXHIBIT II</u>

### SCOPE OF PRE-PURCHASE INSPECTION

2      Phase "A" Inspection
3      Full Avionics ramp test
4      Full Engine boroscope
5      Engine "Minor" Inspection
6      Cabin Windows thickness check
7      Generator Brush Inspection
8      APU boroscope and filter check

**Error! Unknown document property name.**

## EXHIBIT III

### TECHNICAL ACCEPTANCE CERTIFICATE

The undersigned representative of MAJESTIC REALTY CO. or its successors or assigns ("Purchaser") hereby certifies that Purchaser has, pursuant to the Aircraft Purchase and Sale Agreement, dated as of March __, 2005 (the "Agreement"), between WINN-DIXIE STORES, INC. ("Seller") and Purchaser, inspected the 2002 Gulfstream Aerospace Model G-200 aircraft, bearing the manufacturer's serial number 074 and the U.S. civil aviation mark N80R (the "Airframe"), with the two (2) attached Pratt & Whitney Canada PW306A engines bearing manufacturer's serial numbers PCE-CC0149 and PCE-CC0150 (the "Engines") and inspected the appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment or property installed on or attached to the Airframe and Engines, the tools, spares, all other equipment for the Airframe and Engines listed in Exhibit I attached to the Agreement (the Airframe, the Engines and the other foregoing described equipment and property, collectively, the "Aircraft") and hereby conditionally accepts the Aircraft in accordance with the conditions set out in Section 3.4 of the Agreement.  Capitalized terms used but not defined in this Certificate have the meanings given them in the Agreement.

The undersigned representative of Seller hereby represents to Purchaser that Seller, at Seller's cost, will correct all the Airworthiness Discrepancies (as determined under the terms of Section 3.4 of the Agreement) attached to this Certificate prior to Delivery of the Aircraft to Purchaser.  Purchaser represents to Seller that Purchaser shall as long as all other conditions set forth in the Agreement are met, then, after all Airworthiness Discrepancies are corrected by Seller, will irrevocably accept the Aircraft "AS IS – WHERE IS, WITH ALL FAULTS" at the Delivery location on the Delivery Date.

DATED:  _____, 2005

MAJESTIC REALTY CO.., a California corporation
Purchaser


By:_____
    Edward P. Roski, Jr.
    Chairman and Chief Executive Officer


WINN-DIXIE STORES, INC.
Seller


By:_____

Title:_____

19

## EXHIBIT IV

### WARRANTY BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS:

THAT WINN-DIXIE STORES, INC., with an address at 5050 Englewood Court, Jacksonville, FL 32254 ("Seller"), is the owner of the full legal and beneficial title to that certain 2002 Gulfstream Aerospace Model G-200 aircraft, bearing manufacturer's serial number 074 and the U.S. civil aviation mark N80R (the "Airframe"), together with two (2) Pratt & Whitney Canada PW306A engines bearing manufacturer's serial numbers PCE-CC0149 and PCE-CC0150 (the "Engines"), the appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment or property installed on or attached to the Airframe and Engines and all books, manuals, logbooks, maintenance records and other data related to the operation and maintenance of the Aircraft the Airframe and Engines currently in Seller's possession (the Airframe, the Engines and the other foregoing described equipment and property, collectively, the "Aircraft").

THAT for good and valuable consideration, receipt of which is hereby acknowledged, Seller, does this _____ day of April 2005, grant, convey, transfer, deliver and set over, at the _____ Airport, all right, title and interest in and to the Aircraft unto MAJESTIC REALTY CO.. ("Purchaser"), and unto its successors and assigns forever.

THIS Bill of Sale is delivered by Seller to Purchaser, at the _____ Airport, and is governed by the laws of the state of Florida, exclusive of its conflicts of law provisions.

IN WITNESS WHEREOF, SELLER has caused this instrument to be executed by its duly authorized officer this _____ day of April 2005.

WINN-DIXIE STORES, INC.


By: _____

Title: _____

Error! Unknown document property name.

## EXHIBIT V

## DELIVERY RECEIPT

The undersigned, on behalf of, and as the duly authorized agent of MAJESTIC REALTY CO.. ("Purchaser"), hereby acknowledges receipt from WINN-DIXIE STORES, INC. ("Seller") of the delivery to Purchaser at the _____ Airport, on this ___ day of April 2005, of the following described aircraft:

One (1) 2002 Gulfstream Aerospace Model G-200 aircraft, bearing manufacturer's serial number 074 and the U.S. civil aviation mark N80R (the "Airframe"), together with two (2) Pratt & Whitney Canada PW306A engines bearing manufacturer's serial numbers PCE-CC0149 and PCE-CC0150 (the "Engines") (the "Engines"), the appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment or property installed on or attached to the Airframe and Engines and all books, manuals, logbooks, maintenance records and other data related to the operation and maintenance of the Airframe and Engines.

in accordance with the terms of the Aircraft Purchase and Sale Agreement dated as of March ___, 2005, between Purchaser and Seller pertaining to this transaction.

MAJESTIC REALTY CO., a California corporation

By: _____
      Edward P. Roski, Jr.
      Chairman and Chief Executive Officer

Error! Unknown document property name.

**EXHIBIT VI**

**ESCROW AGREEMENT**

This Escrow Agreement (this "Escrow Agreement") is made and entered into as of March ___, 2005, by and among MAJESTIC REALTY CO.. ("Purchaser"), WINN-DIXIE STORES, INC. ("Seller"), and INSURED AIRCRAFT TITLE SERVICES, INC. ("Escrow Agent").

This Escrow Agreement is being entered into in connection with the execution of a certain Aircraft Purchase and Sale Agreement (the "Agreement") between Purchaser and Seller pertaining to one (1) Gulfstream Aerospace G-200 aircraft, bearing manufacturer's serial number 074 and the U.S. civil aviation mark N80R (the "Airframe"), together with two (2) Pratt & Whitney Canada PW306A engines bearing manufacturer's serial numbers PCE-CC0149 and PCE-CC0150 (the "Engines" and collectively with the Airframe, the "Aircraft"). Capitalized terms used herein and not defined herein shall have the meaning assigned to such terms in the Aircraft Purchase and Sale Agreement.

In consideration of the payments herein provided for and the agreements and promises of the parties herein contained, the parties hereto agree as follows:

(A)    Escrow Agent has established an escrow account in its own name (the "Escrow Account"). Any deposit in the Escrow Account shall be made by wire transfer of immediately available funds according to the wire instructions set forth in Attachment 1, which is attached hereto and made a part hereof. All funds deposited therein shall be held without interest.

(B)    Purchaser has deposited in the Escrow Account a deposit in the amount of Two Hundred Fifty Thousand Dollars (US$250,000) (the "Deposit") to be held subject to this Escrow Agreement pursuant to the Aircraft Purchase and Sale Agreement, which shall remain refundable until Escrow Agent receives the mutually executed Technical Acceptance Certificate, at which point the Deposit shall, except as otherwise provided in the Agreement, become nonrefundable to Purchaser.

(C)    Prior to the Delivery Date:  (1) Seller shall place in escrow with Escrow Agent a duly executed but undated FAA Bill of Sale (AC Form 8050-2) and a duly executed but undated Warranty Bill of Sale (the FAA Bill of Sale and Warranty Bill of Sale collectively referred to herein as the "Bills of Sale"); and (2) Purchaser shall place in escrow with Escrow Agent a duly executed but undated FAA Registration Application (AC Form 8050-1) and Delivery Receipt; and (3) place in the Escrow Account Purchaser's share of the escrow fees of the Escrow Agent; and (4) the remainder of the Purchase Price.

(D)    On the Delivery Date, the parties, and their respective counsel if requested by the relevant party, shall participate in a telephone conference call to effect the closing:

(1)    Escrow Agent shall confirm to all parties on the call that it is holding funds in the amount of the Purchase Price (as defined in the Agreement) and one or more manually executed original counterparts of each of the FAA Registration Application and the

Error! Unknown document property name.

FAA Bill of Sale (collectively, the "FAA Documents"), the Bill of Sale and each other document and writing as any party may have elected to deposit with Escrow Agent (together with the FAA Documents and the Warranty Bill of Sale, collectively, the "Documents");

(2)     Escrow Agent shall confirm to all parties on the call that the FAA Documents are in proper form for filing with the Federal Aviation Administration ("FAA");

(3)     Escrow Agent shall further confirm to all parties on the call that it has checked the ticker tape on such date and that the Aircraft and its engines remain free and clear of any liens;

(4)     each Party on the conference call shall confirm to Escrow Agent that Escrow Agent is authorized to release such party's signed Documents, to fill in the date of the closing in appropriate spaces in the Documents, and to proceed with the filing of the FAA Documents with the FAA upon the concurrent authorization to such effect from each other Party on the conference call and the confirmation of the Federal Funds Reference number for the wire transfer referred to in clause (5) below;

(5)     upon verbal authorization by each party to Escrow Agent as provided in clause (4) above, Purchaser shall instruct Escrow Agent to wire transfer the Purchase Price minus Seller's share of the escrow fees to Seller or as Seller may direct.  Escrow Agent shall notify the parties on the conference call of the Federal Funds Reference Number for that wire transfer as soon as it is available; and

(6)     immediately upon notice to the parties of that Federal Funds Reference Number, Escrow Agent shall file the FAA Documents with the FAA, and Escrow Agent shall confirm the time of filing of each of the FAA Documents to the parties on the conference call.

(7)     promptly thereafter, Escrow Agent shall send to Purchaser by overnight courier originally executed counterparts of the warranty Bill of Sale and shall send to Seller by overnight courier originally executed counterparts of the Delivery Receipt.

(E)     The authorized persons to give the Escrow Agent instructions are:

(1)     for Seller,
Winn Dixie Stores, Inc.
5050 Englewood Court
Jacksonville, FL  322544
Phone:     904-370-7172
Fax:        904-783-5646
Attn: Mike Chlebovec

Error! Unknown document property name.

      (2)     For Purchaser,
              Majestic Realty Co..
              13191 Crossroads Parkway North
              Sixth Floor
              City of Industry, CA. 91746-3497
              Tel:    562-948-4306
              Fax:   562-692-1553
              Attn:  John H. Semcken III

(F)    Should Purchaser or Seller breach the Agreement, Escrow Agent shall pay the funds held on deposit to the appropriate party upon written instructions from both Purchaser and Seller.  Notwithstanding the prior sentence, the Deposit shall be controlled under the provisions set out in the Agreement to which this Escrow Agreement is an exhibit.

(G)    Subject to Section D above, any instructions, directions or notices required to be delivered hereunder to Escrow Agent (a) shall be in writing, (b) may be delivered by hand delivery, internationally recognized overnight courier, or facsimile, and (c) may be executed in one (1) or more counterparts, each of which shall constitute an original and all of which, taken together, shall constitute the same instrument.  All notices to Escrow Agent shall be addressed as follows:

        Name:                Insured Aircraft Title Services, Inc.
        Address:             4848 S.W. 36th Street
        City/State:          Oklahoma City, OK  73179
        Attention:         Kirk Woford
        Phone:             (800) 654-4882
        Fax:               (405) 681-5356

(H)    Escrow Agent shall perform its customary FAA filing service.  Escrow Agent shall act as stakeholder and shall not be responsible for validity, sufficiency or collectibility of funds deposited hereunder, and shall not be required to determine existence of any fact or decide any questions of law.  Escrow Agent shall not be liable in any respect on the account of identity, authority or rights of the persons executing or delivering or purporting to execute or deliver any such document, paper or funds, its duties hereunder being limited to the safekeeping of funds deposited hereunder, and for the delivery of the same in accordance with this Escrow Agreement.

(I)    In accepting funds deposited hereunder, it is agreed and understood among the parties hereto that Escrow Agent will not be called upon to construe this Escrow Agreement or any document hereunder.

(J)    Escrow Agent, as part of the consideration for the acceptance of this Escrow Agreement, will not be liable for any acts or omissions done in good faith, nor for any claims, demands or losses, nor for any damages made or suffered by any party to this Escrow Agreement, except such as may arise through or be caused by its bad faith or gross negligence.

**Error! Unknown document property name.**

(K)     The Escrow Agent's fee and expenses shall be shared equally by Seller and Purchaser and paid to Escrow Agent by Seller and Purchaser at the closing from funds deposited in the Escrow Account or as otherwise agreed by the parties hereto.

(L)     The term of this Escrow Agreement may be amended at any time by the mutual written consent of the parties hereto.

(M)     The Agreement and this Escrow Agreement supersedes any other contract or agreement with reference to the funds deposited hereunder, in so far as Escrow Agent is concerned, and Escrow Agent may rely absolutely thereon to the exclusion of any and all other agreements among the parties hereto, except any duly executed subsequent amendments to the Agreement or this Escrow Agreement.

(N)     This Escrow Agreement shall be governed by the laws of the State of Oklahoma, except for its conflicts of laws provisions.

(O)     This Escrow Agreement may be executed in multiple counterparts, originally signed or a facsimile thereof, each of which shall constitute an original, all of which, taken together, shall constitute the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the date first above written.

MAJESTIC REALTY CO., a California                WINN-DIXIE STORES, INC.
company, as Purchaser                            as Seller


By:_____            By:_____
    Edward P. Roski, Jr.
    Chairman and Chief Executive Officicer      Title:_____

Date:_____            Date:_____


INSURED AIRCRAFT TITLE SERVICES,
INC.
as Escrow Agent



By:_____

Title:_____

Date:_____

Error! Unknown document property name.

**Insured Aircraft Title Service, Inc.**

P.O. Box 19527
Oklahoma City, Oklahoma 73144
(405) 681-6663  (800) 654-4882
FAX #405-681-9229

# WIRE TRANSFER INSTRUCTIONS

FUNDS BEING WIRED TO INSURED ESCROW SERVICE SHOULD BE WIRED
PURSUANT TO THE FOLLOWING INSTRUCTIONS:

*INTERNATIONAL BANK OF COMMERCE*

*1200 SAN BERNARDO*

*LAREDO, TEXAS  78040*

**ABA:  114 902 528**
**SWIFT CODE:  IBCLUS44**

**CREDIT:  INSURED AIRCRAFT TITLE SERVICE, INC.**
**ACCOUNT NUMBER:  0717213717**

**REFERENCE:  GULFSTREAM G-200, SERIAL NUMBER 074**

**ATTENTION:  KIRK WOFORD**

FOR OVERNIGHT DELIVERIES PLEASE USE THE FOLLOWING ADDRESS

*4848 SOUTHWEST 36th STREET*

*OKLAHOMA CITY, OK  73179*

TEL:  405-681-6663

Escrow deposits received are considered refundable to the depositor until we are notified
otherwise by the depositor or until we are in receipt of a fully executed purchase agreement
outlining the terms and conditions of funds held in escrow.

This escrow account is non-interest bearing.  Fees must be paid at the time of closing.

Error! Unknown document property name.
409856.02-Wilmington Server 1A - MSW