# Lease

THIS LEASE, made this __6th__ day of ___October___, 19_77_,

between ___W. G. LASSITER, JR.___

_____

_____ (hereinafter called "Landlord")

and ___WINN-DIXIE STORES, INC., a Florida corporation,___

_____

(hereinafter called "Tenant"); _____

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires,

singular or plural, and the heirs, legal representatives, successors and assigns of the respective

parties;

## WITNESSETH:

PREMISES

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and

demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord,

for the term hereinafter specified, the following described premises:

That certain store building, approximately __160__ feet in width by __160__

feet in depth, together with coolers and freezers on the rear thereof,

and the land on which the same shall stand (hereinafter collectively called "demised

premises"), which store building and related improvements are to be constructed by

Landlord according to plans and specifications to be approved by the parties as herein

provided, and shall be in the location and of the dimensions as outlined in red on the

Plot Plan __entitled "Northlake Plaza", prepared by Schwab &__

__Twitty Architects, Inc., West Palm Beach, Florida, dated__

__August 15, 1977, last revised August 30, 1977,__ ,

attached hereto marked Exhibit "A" and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in

detail on Exhibit "A"), known as ___Northlake Plaza___

(hereinafter called "shopping center"), located __at the Southeast corner of__

__Military Trail and Northlake Boulevard (Lake Park Road West)__

in the City of ___Palm Beach Gardens___ County of ___Palm Beach___,

State of ___Florida___, the legal description of the shopping center being

as follows:

See Exhibit "B" attached hereto and by this
reference made a part hereof for legal des-
cription of shopping center.

APPROVED
AS TO FORM
_T. Cox_
DIVISION MGR.
_PMH_
LEGAL DEPT.
WINN - DIXIE STORES,
INC.

This instrument was prepared by
Francis P Hamilton. Attorney -
at-Law, whose address is 5050
Edgewood Court, Jacksonville,
Florida 32205

WD 33-36—Revised 5/65

"EXHIBIT" "A"

SC-2M

**TERM**

FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said premises for the transaction of its business as hereinafter provided for an initial term of _____ _____twenty (20)_____ years from said commencement date. The parties agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

**RENTAL**

1. The Tenant agrees to pay to the Landlord as a minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of _Seventy-six Thousand Eight Hundred and no/100----------------------------------- Dollars ($_76,800.00_) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of __Six Thousand Four Hundred and no/100__ -----------------------------------------------------Dollars ($_6,400.00_) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof.

In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to amount, if any, by which _____-one-_____ per cent ( 1 %) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30th during the term of the lease, and any extensions thereof, exceeds _Seventy-six Thousand Eight__ Hundred and no/100--------------------------Dollars ($_76,800.00_);

[redacted lines]

-2-

SC-3M

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

**DEFINITION OF "GROSS SALES"**

1a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) accommodation sales, such as sales of postage stamps, government bonds or savings stamps or similar items; (5) returns of merchandise to suppliers or manufacturers; (6) net amount of discounts allowed to any customer, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (7) merchandise or other things of value issued in redemption of trading stamps or as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF SALES**

1b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

**USE**

2. The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, or for the conduct of any general mercantile business; provided, however, except as a supermarket, the demised premises shall not be used, nor assigned or subleased under the terms of Article 26 herein, for any use or business which shall be in direct competition with the primary use or business engaged in by any other then tenant in the shopping center to whom Landlord has granted a right of exclusive use, of which Tenant has been given notice as herein provided, and provided further, the demised premises shall not be used for the sale o Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises.

*prescription drugs or drugs required to be dispensed by a licensed pharmacist, so long as a drug store is in operation in the shopping center.

CONSTRUCTION 3   The Landlord, at its sole cost and expense, shall construct the shopping center, substantially
OF SHOPPING      as shown on Exhibit "A", consisting of all the buildings shown thereon, together with all side-
CENTER           walks, streets, entranceways, malls, parking areas, service drives, driveways and related improve-
                 ments, said improvements (excluding buildings) being sometimes hereinafter referred to as "com-
                 mon areas." The Landlord, at its sole cost and expense, shall grade and surface with top quality
                 materials all paved portions of the common areas (including parking area), and shall provide
                 proper and adequate water drainage and lighting system and operations therefor and shall
                 operate and maintain the same in good repair and usable condition for use by the patrons
                 of the shopping center and the tenants and their employees during the term of this lease and
                 any extensions thereof  The arrangement and location of all store buildings and common areas
                 (including parking area) within the shopping center shall at all times during the term of this lease,
                 or any extensions thereof, be maintained as shown on Exhibit "A" and shall not be changed
                 without the written consent of the Tenant  If not shown on Exhibit "A", Tenant expressly re-
                 serves the right to approve the finish elevations of all store buildings and common areas (includ-
                 ing parking and service areas) within the shopping center which are to be constructed concur-
                 rently with Tenant's store building

Notwithstanding the foregoing, it is understood that Landlord intends
initially to construct only Tenant's building and the store buildings
required under Articles 5 and 6 herein, together with all the common
areas of the shopping center, including without limitation, all the side-
walks, drives, entranceways, service areas and parking areas to the limits
of the initial paving within Phase I as shown on Exhibit "A", and includ-
ing the "U-shaped" 25-foot access road near the Easterly end of the
shopping center providing access from the service area  at the rear of the
buildings to the parking area at the front thereof.  Landlord reserves
the right, but shall not be required, to construct additional buildings
within the building areas reserved therefor indicated on Exhibit "A",
with the depth and interior dimensioning of same to be at Landlord's dis-
cretion, provided, however, such additional buildings shall be of like
structural and architectural quality as the building for Tenant, and all
such buildings shall be set back from the streets adjoining the shopping
center or the property lines thereof distant at least within the sidewalk
lines or building outlines as shown on Exhibit "A".    Landlord further
reserves the right to expand the shopping center into Phase II thereof as
shown on Exhibit "A" and shall have the right, but shall not be required,
to construct additional buildings and common areas upon such property
with the depth and interior dimensioning of the buildings to be at Land-
lord's discretion, provided, however, such additional buildings shall be
of like structural and architectural quality as the building for Tenant
and all such buildings shall be set back from the streets adjoining the
shopping center or the property lines thereof distant at least within the
sidewalk lines or building outlines as shown on Exhibit "A".   The North-
South future building area near the East end of the shopping center may
be joined to the buildings to be initially constructed in Phase I of the
shopping center on the condition that at all times there shall be main-
tained a paved through service drive a minimum of 25 feet in width per-
mitting a circular traffic pattern around all buildings from time to time
constructed in the shopping center and with the understanding that the
25-foot access road above referred to shall not be closed or relocated
until a new paved driveway in substitution therefor is constructed and
opened to traffic.  Throughout the shopping center, or any enlargement
thereof, in connection with the construction of any additional buildings,
at least the ratio of automobile parking area to gross building area as
hereinafter provided shall be maintained at all times; and Landlord shall
grade and pave such additional parking area as is necessary for such
purpose and shall also provide such additional buildings with adequate
service areas and drives.  Landlord agrees that Tenant shall have unin-
terrupted use and enjoyment of the demised premises and the common areas
during any such additional construction without unreasonable interference
therewith by reason of such construction work.  Pending construction there-
on, all future building sites and areas reserved for future parking and
common areas shall be maintained as grassed and landscaped areas and
kept free of weeds and underbrush or may be paved for parking usage.

Concurrently with the above construction, Landlord agrees at its sole cost and expense, to construct the store building for occupancy by Tenant in accordance with the plans and specifications to be approved by both Landlord and Tenant. Plans and specifications shall be approved when initialed by both parties, and when initialed shall constitute a part of this lease. Said plans and specifications shall provide for a completed store building, commonly referred to as a "lock and key job," and shall include, but without limitation the following: automatic doors, interior partitions, all plumbing and plumbing fixtures, drains, electrical wiring, lighting fixtures to Tenant's requirements, connection of Tenant's trade fixtures to plumbing and electrical outlets, air conditioning and heating systems and equipment including insulated ducts, automatic sprinkler system, manager's office, storm shutters, delicatessen department, music and P. A. systems (except microphones and amplifiers to be furnished by Tenant), vinyl asbestos floor covering in sales area and vinyl asbestos, quarry tile and ceramic tile floor coverings as specified in other areas (color at Tenant's option) and connections to all utilities. Tenant at its own expense shall furnish its own trade fixtures. Any and all such fixtures and equipment furnished by Tenant shall remain its property and may be removed from the demised premises at any time.

COMPLETION DATE

4. Landlord covenants and agrees that the construction of the shopping center shall begin not later than _____February 1, 1978_____ and shall be completed not later than _____December 1, 1978_____; and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction; provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than _____April 1, 1979_____, said option to terminate shall not arise. If pursuant to this paragraph Tenant shall cancel or terminate this lease, Landlord agrees for a period of three (3) years after such cancellation or termination not to permit or consent to the use as a supermarket of the demised premises, or any portion of the shopping center, or any enlargement thereof

COMMENCE-MENT DATE

5. The Tenant shall open its store for business within thirty (30) days following performance of the following:

    (a) Tenant's store building and other improvements constructed on the demised premises shall have been delivered to Tenant completed in accordance with the plans and specifications;

    (b) Construction of all of the common areas (including parking area hereinafter specifically required) shall have been completed substantially as shown on Exhibit "A";

    (c) Construction of at least ___147___ lineal feet of store frontage and ___14,400___ sq. ft. of total building area (excluding Tenant's store building) shall have been completed as shown on Exhibit "A" and said area leased to other tenants and opened for business or readied for opening for business simultaneously with Tenant; and

    (d) The stores to be operated by each of the following tenants shall have been completed and opened for business or been readied for opening for business simultaneously with Tenant:

Chain Drug Store
6,000 sq. ft. of other retail and
service shops

    (e) 13,000 sq. ft. of additional building space for occupancy by retail and service shops shall have been constructed with fronts and floors and under roof, but interior partitions and interior finishes thereof need not be completed until any specific space is occupied, and none of such space shall be required to be leased to tenants or opened for business.

In the event that all the above requirements shall not have been met on or prior to _____April 1, 1979_____ _____, the Tenant at its sole option may cancel and terminate this lease

Rent shall begin to accrue hereunder upon the date the Tenant opens its store for business, or upon the expiration of thirty (30) days following the performance of all the above require-. ments, whichever date shall sooner occur No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications

RETAIL
AND
SERVICE
STORES
ONLY

It is expressly agreed that only retail and service stores shall be allowed to operate in the shopping center, or any enlargement thereof, without the prior written consent of Tenant, it being the intention of the parties hereto that no spa, bowling alley, skating rink, bingo parlor, office building, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ or health and recreational or entertainment-type activities shall be permitted therein; provided, however, the operation of business and professional offices within the specified areas of the shopping center and limited as follows shall not be deemed a violation hereof: (i) within the East-West row of buildings in Phase I, not in excess of 6,000 square feet; (ii) within the North-South future building area near the East end of the shopping center, not in excess of 7,000 sq. ft.; and (iii) the building sites hereinafter described in Article 7 may be utilized for offices subject to the height and size restrictions imposed in Article 7. Further, one motion picture theatre shall be permitted to be operated within the shopping center provided the same shall not be located closer than 500 feet from any part of Tenant's building.

OTHER
TENANTS

6. As a condition and inducement to Tenant's entering into this lease, Landlord represents and warrants that it has entered into firm commitments for leases with the tenants listed below for the terms and for the amount of floor space indicated:

| Name | Term Years | Minimum Floor Area (sq. ft.) |
|---|---|---|
| Chain Drug Store | 20 | 8,400 |
| Other Retail and Service Shops | Variable | 6,000 |

Landlord further warrants and represents that such tenants shall occupy the space in the shopping center in the locations indicated on Exhibit "A" and in the minimum amounts set opposite their respective names above; and Landlord agrees, on demand, to furnish evidence satisfactory to Tenant, prior to and as a further condition to the establishment of the commencement date of this lease, that Landlord has entered into non-cancellable leases, except for default, with such tenants.

**PARKING
AND
COMMON
AREAS**

7. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees. a non-exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common areas, including parking area, as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks.

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide:

(a) a minimum of 5.5 automobile parking spaces for each 1,000 square feet of gross building area (including additional floor levels) in the shopping center, and

within Phase I of the shopping center
(b) facilities for convenient parking of at least ____345____ automobiles;

and in event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, the Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination. All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during customary food store shopping hours, and Landlord further agrees that no signboards or other construction shall be erected in any of the common areas (including the parking area) shown on Exhibit "A" or so as to obstruct the view of the demised premises from the adjoining public streets  Landlord further agrees that without the prior written consent of Tenant herein, no traveling carnivals, fairs or shows nor sales by transient merchants utilizing vehicles or booths shall be allowed in the shopping center, or any enlargement thereof.

As shown on Exhibit "A", as to the parcel in the Southwest corner of the shopping center adjoining the East line of Military Trail marked "Future Building Site", any building constructed thereon shall not exceed one story or 18 feet in height nor 3,000 sq. ft. in area; as to the building site lying Easterly of Military Trail and marked "Future Building 4,000 s.f.", any building constructed thereon shall not exceed one story or 18 feet in height nor 4,000 sq. ft. in area; as to the tract marked "Outparcel 1.4 A", any building constructed thereon shall not exceed one story or 18 feet in height nor 10,000 sq. ft. in area; and as to the building site lying Southerly of Northlake Boulevard and marked "Future Building 6,000 s.f.", any building constructed thereon shall not exceed one story or 18 feet in height nor 6,000 sq. ft. in area.  As to all such parcels, tracts or building sites, the same may be used only for retail or service uses or businesses which do not violate the restriction on use set forth in Articles 5 and 28 hereof.  Pending such use or construction thereon, each shall be maintained as a grassed or landscaped area and kept free of weeds and underbrush or may be paved as parking area.

**SERVICE
AREA**

8. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances a parking space for two large trailer trucks for continuous use and further agrees that Tenan shall have 24-hour a day facilities for ingress and egress to the rea: of the demised premises and the exclusive right to such space as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

**UTILITIES**

9. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities

TENANT'S
REPAIRS

10. Upon completion of construction by Landlord and acceptance of the demised premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear   Within such repair responsibility of Tenant shall be included:  the air conditioning and heating equipment (but not duct work which shall be the responsibility of Landlord) and the floor covering, provided, however, Landlord shall accord to Tenant the benefit of any warranties extended by the manufacturers or installers of such equipment and flooring; the interior exposed plumbing including any stoppages thereof, except such as may be caused by structural defects or faulty construction; the replacement of any plate glass damaged or broken, except that covered by Landlord's fire and extended coverage insurance; and the lighting fixtures and interior wiring extending to the main circuit breaker panels.

the automatic sprinkler system and
central alarm therefor, if any, and

LANDLORD'S
REPAIRS

11. The Landlord shall, at its cost and expense, keep and maintain the common areas (including parking area) in good condition and repair, and shall maintain the exterior of Tenant's store building, including the window frames, ~~glass~~ roof, gutter, downspouts, exterior painting, masonry walls, foundation and structural members, and the plumbing (including septic tank, if any), ~~concealed~~ of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the common areas (including parking area) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that the Landlord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements, or other casualty covered by Landlord's fire and extended coverage insurance   Within such repair responsibility of Landlord shall be included:  the repair of the wiring from and including the main circuit breaker panels extending to the public utility power source.

If in order to protect the Tenant's property in the store building it shall be necessary to make emergency repairs to any portion thereof which is the responsibility of the Landlord to repair, or if the Landlord after receipt of notice as above provided fails or neglects to make with all due diligence such other repairs to the store building or common areas (including parking area) which are the responsibility of the Landlord, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs  Landlord further covenants that the store building will be so constructed and maintained at all times so as structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that said premises may conform to such ordinances, statutes, rules or regulations now in force or which may be hereafter passed, adopted or promulgated

Except on the roof,

SIGNS

12. ^/Tenant may place, erect and maintain any signs on the ~~roof~~ walls, and any other place on or about the demised premises, which signs shall remain the property of Tenant and may be removed at any time during the term of this lease, or any extension thereof, provided Tenant shall repair or reimburse Landlord for the cost of any damage to the demised premises resulting from the installation or removal of such signs.

Landlord agrees to construct a large pylon sign advertising the shopping center near the margin of Northlake Boulevard as shown on Exhibit "A", and Tenant shall be permitted to affix thereon an electrically illuminated sign advertising its business to be connected to power outlets installed by Landlord, but Tenant shall bear the expense of its sign lettering.  The expense of lighting of the sign shall be shared by such tenants in the same ratio as exists between the square foot area of the sign faces of the respective tenants (and if a sign face is installed advertising the shopping center, Landlord shall participate and share in the expense of lighting according to the same formula).

- 8 -

FIXTURES
AND
INTERIOR
ALTERATIONS

13   The Tenant, at its own expense, may from time to time during the term of this lease make any interior alterations, additions and improvements in and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

Tenant may construct and build or install in said premises any and all racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items

INDEMNIFI-
CATION

14.  Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises.

Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss by reason of an accident or damage to any person or property happening on or about all common areas (including, without limitation, parking area, sidewalks, ramps and service areas) of the shopping center, and Landlord further agrees to carry, at its expense, public liability insurance coverage on all common areas (including, without limitation, parking area, sidewalks, ramps and service areas) of the shopping center, with a contractual liability endorsement on the policy, in a company qualified to transact business in the state in which the demised premises are located, stipulating limits of liability of not less than $200,000 for an accident affecting any one person; and not less than $500,000 for an accident affecting more than one person; and $50,000 property damage. Certificate of such coverage from the insuror providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant.

CLEANLINESS

15.  Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the entryways and delivery areas adjoining the building reasonably clean and free from rubbish and dirt  Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit the Landlord or its agent at all reasonable times to enter upon the premises for making repairs and for examining or showing the same to prospective purchasers

FIRE

16   In the event that Tenant's building shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, then Tenant may elect within thirty (30) days after such damage, to terminate this lease by giving to the Landlord a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease  If Tenant's building shall thereby suffer damage to any extent less than 75% of the value thereof, or if Tenant does not elect to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored. If at any time during the term

of this lease or any extensions thereof any of the buildings in the shopping center, exclusive of Tenant's store building, are damaged by fire or by the elements or otherwise, Landlord shall immediately commence and diligently prosecute to completion repair of all such damage and shall restore said improvements to their condition prior to such damage

Landlord agrees to carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant and on all other buildings within the shopping center in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees.

QUIET ENJOYMENT

17. The Landlord covenants, warrants and represents that upon commencement of the lease term, the shopping center, including the demised premises, will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof

Notwithstanding the foregoing, it is understood that Landlord's title to the demised premises is that of a leasehold under the provisions of a long-term ground lease; and Landlord covenants that it will pay the rental punctually and do and perform all things necessary to keep such ground lease in full force and effect during the term of this lease and any extensions thereof and will not cause or concur in its termination without Tenant's prior written consent.

The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business or use of common areas for parking purposes, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting Tenant from conducting a general mercantile business or using the common areas (including parking area) in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder

TAXES AND LIENS

18. All taxes, assessments and charges on land or improvements and obligations secured by mortgage or other lien upon the demised premises or the shopping center shall be promptly paid by the Landlord when due The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at six per cent (6%) per annum.

CONDEM-NATION

19. If any part of the demised premises in excess of ten percent (10%) thereof, or any lesser part thereof which would materially or substantially interfere with the conduct of Tenant's business therein or more than twenty-five percent (25%) of the buildings, exclusive of Tenant's building, within the shopping center, be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to termina this lease as aforesaid, the Landlord shall immediately commence and diligently prosecute to completion the repair and restoration of the improvements, including Tenant's store building, within the shopping center to a condition comparable to their condition at the time of taking and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances.

In the event that any portion of the common areas (including parking area and access thereto) designated as such on Exhibit "A", be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, so as to materially or substantially interfere with the conduct of Tenant's business in the demised premises, or so as to re-

duce the required parking area by an amount in excess of ____ten____ per cent ( 10 %) or within Phase I of the shopping center, /reduce the number of cars which may be conveniently parked to less than __311_____, the Tenant may, at its option, terminate this lease and shall be liable for rent only up to the time of such taking.

DEFAULT   20. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default.

BANKRUPTCY   21. The Tenant further covenants and agrees that if, at any time, Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease agreement at an end and shall forthwith be entitled to immediate possession of the said premises.

CONSTRUCTION
RISKS

22  It is understood and agreed that nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing said improvements, and that the Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the Tenant's store building for the causes herein stated  The Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their sub-contractors, employees, agents or servants by reason of Landlord's constructing said improvements pursuant to the terms of this lease  Landlord shall indemnify Tenant and save Tenant harmless from and against all claims and suits for damage to persons or property from defects in material or from the use of unskilled labor or from any negligence caused by Landlord, Landlord's contractors, sub-contractors or by any of their employees, agents or servants during the progress of the work in constructing said improvements or from any faulty construction thereof

NOTICES

23  All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at __4801 Georgia__

__Avenue, West Palm Beach, Florida 33405,__

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to Tenant at __P. O. Box 520352, Miami, Florida 33152,__

or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail.

END OF
TENANCY

24  The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct

ARBITRATION

25  In the event there should arise any misunderstanding between the parties hereto as to the compliance with the terms and conditions of this lease upon the part of either of the parties hereto, or as to whether the Tenant's store building tendered by the Landlord has been improved in substantial conformity with the plans and specifications approved by the parties, or whether the common areas, including parking area, comply with the agreement of the parties hereto, or as to whether either party has ground hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties hereto agree upon one; otherwise, to a board of three arbitrators, of whom one shall be selected by each party within ten (10) days after such 30-day period, and a third person shall be selected by these two; and the decision and award of such single arbitrator, if only one is used, or any two of such board, if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively, and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction  Each of the parties hereto covenants to abide by any such arbitration decision.

ASSIGNMENT AND SUBLEASING

26. The Tenant may without the consent of the Landlord assign this lease, or sublease or vacate the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease.

In the event of any assignment or sublease or vacating of the entire premises the minimum rental thereafter shall be the average percentage rental, if any, paid by Tenant for the two years immediately preceding such assignment, vacating or subletting plus the minimum guaranteed rental provided for herein provided, however, this provision shall not apply in the event such assignment or sublease shall be to any corporation or entity which is the parent of, subsidiary to or affiliated with Tenant or to any corporation or entity with which Tenant merges or consolidates or to which it sells all or substantially all of its business in the state where the demised premises are situated. The provisions of this paragraph shall not be construed to limit or restrict the right of Tenant to sublease a portion or department of the demised premises without consent of Landlord to any concessionaire or licensee or otherwise in connection with the operation of Tenant's business in the demised premises, provided the sales of such concessionaire or licensee shall be included within the gross sales of Tenant, as defined hereinabove in Article 1a

EXTENSIONS

27. It is further agreed that Tenant, at its option, shall be entitled to the privilege of ___five___ ( 5 ) successive extensions of this lease, each extension to be for

a period of ___five___ (5 ) years and on the same terms and conditions

and at the same rentals as provided herein for the initial lease

term. _____

_____

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least ___six (6) months___ before the expiration of the initial term, and if extended, at least ___six (6) months___ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

EXCLUSIVE SUPERMARKET

28. Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods or frozen foods without written permission of the Tenant, except the sale of such items in not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared ready-to-eat food items, either for consumption on or off the premises, shall not be deemed a violation hereof, provided, however, as to the storeroom to be occupied by the Drug Store only, the sale of such food items shall be expanded to 1,500 sq. ft. of sales area. Further, it is expressly agreed that only Tenant herein may operate a bakery and/or delicatessen in the shopping center, and any enlargement thereof.

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name and address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provision herein to the contrary, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of the terms of this exclusive provision as to property located within 1000 feet of any exterior boundary of the shopping center, but nothing herein shall deprive Tenant of any rights of recourse against Landlord, its heirs, legal representatives, successors and assigns, by way of suit for damages or injunctive relief, or as otherwise provided by law, in the event of any such violation.

-13-

SUBORDINATE   29.  The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

BENEFIT   30.  This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

SHORT FORM LEASE   31.  The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

MARGINAL TITLES   32.  The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

COMPLETE AGREEMENT   33.  This written lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

TAXES   34.  During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of any increase in ad valorem real estate taxes levied against the demised premises in excess of the amount of such taxes levied thereon for the first (1st)     full calendar year of the lease term in which both the value of the land and the buildings thereon shall be assessed for tax purposes; provided, however, any additional rental payable hereunder by the Tenant may be credited on a non-cumulative basis against any and all percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit.  Tenant shall be responsible only for its pro rata share of such taxes for fractional years occurring at the beginning and expiration of the term of this lease, and any extensions thereof.

If such taxes shall not be assessed separately, but shall be included within an assessment of the demised premises and others, said assessments shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio which the square footag of Tenant's store building bears to the total square footage of all store buildings (including additional floor levels) from time to time existing in the shopping center.  The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements, discounts or refunds thereon. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant, and such additional rental shall be payable by Tenant on demand after payment by Landlord.  All taxes, other than ad valorem real estate taxes, including special assessment improvement liens and the like, shall remain the sole responsibility of the Landlord.  However, Tenant shall remain responsible for sales taxes on rentals levied by law on lessees.

-14-

Tenant shall have the right from time to time to contest or protest
or review by legal proceedings or in such other manner as may be
provided, any such taxes, assessments or other governmental imposi-
tions aforementioned, and to institute such proceedings in the name
of the Landlord as the Tenant may deem necessary; provided, however,
any expense incurred by reason thereof shall be borne by the Tenant
and such proceedings conducted free of all expense to the Landlord.

OPTION FOR   35.  Tenant is hereby granted the option and privilege at the
EXPANSION    times hereinafter specified during the term of this lease, or any
             extensions thereof, of enlarging its store building by incorporat-
ing therein the area to the Easterly side thereof, such addition not to
exceed sixty (60) feet in width by one hundred sixty (160) feet in depth.
It is intended that the expansion is to be accomplished during the first
ten (10) years of the initial term of this lease only (a) at such times
as the expansion area shall remain undeveloped, or if any adjoining store-
rooms have been constructed thereon, at such time as the same may be vacan
and not under lease, or (b) at the expiration of the tenth (10th) year of
the initial term of this lease, it being contemplated that Landlord shall
lease such area to other tenants only for such periods as will expire con-
currently with the expiration of the tenth (10th) year of the initial term
of this lease.  Thereafter, the option may be exercised only at such times
as the adjoining storerooms may be vacant and not under lease, or at
5-year intervals, it being contemplated that Landlord shall lease such
area to other tenants only for such periods as will expire at 5-year
intervals dating from the expiration of the tenth (10th) year of the
initial term of this lease.  Landlord shall give notice to Tenant of any
such expiration dates and, during the period between nine (9) months
and six (6) months prior to such expiration dates, afford to Tenant
the opportunity to exercise this option, and upon Tenant giving to
Landlord a notice in writing of its exercise thereof, Landlord agrees
to construct such addition, or prepare such enlargement area for occupancy
by Tenant, at its sole cost and expense, in accordance with plans and
specifications to be approved by the parties hereto, with the construction
to be completed with all due diligence following the vacation of the
necessary area by any other tenant, and the enlarged portion of the build-
ing to be of a like quality of construction as the original building for
Tenant.  In order to facilitate the expansion of Tenant's demised store
building as herein contemplated, Landlord agrees that any adjacent build-
ing or buildings within the expansion area shall be of like structural
quality and in architectural harmony with Tenant's store building, shall
front on a line which is the interior sidewalk line of Tenant's demised
store building extended and shall have a finish floor level, roof and ceil-
ing heights which shall be at the same elevations as the finish floor
level, roof and ceiling heights of Tenant's demised store building.
Further, Landlord agrees that the wall of Tenant's demised store building
adjoining the expansion area shall be constructed with steel column sup-
ports therein equivalently spaced to the nearest row of steel column
supports within the open area of Tenant's demised store building and such
wall supports shall be of sufficient load bearing capacity to carry the
roof support system across the full span of the original and of the expande
building width.

Upon completion of such building addition, if there shall not at such date remain at
least fifteen (15) years of the then term of this lease, such term shall be extended
for such period of time as shall be necessary to provide a full fifteen (15) years
from such date.  Thereafter, during such extended term, the annual minimum guaranteed
rental (and the base for computation of percentage rental hereunder) shall be increased
by the greater of: an amount equal to twelve percent (12%) of the cost of such addition,
or an amount equal to $3.00 per square foot of the enlargement area, or an amount equal
to a computed percentage times the cost of such addition, such percentage consisting of
four percent (4%) plus the current prime interest rate charged by New York City banks
at the time of the exercise of the option.  At Tenant's request, construction cost shall

be established by bids obtained by Landlord from at least three (3) reputable contractors acceptable to Tenant, with the final cost of the addition upon completion to be certified to by the general contractor performing the work. During such extended term the provisions of this lease shall remain in effect and the option periods herein provided (if any shall then remain) shall be construed to follow upon the end of the extended term and the rentals to remain as adjusted in consequence of the addition. Upon completion of the addition, it shall be and become a portion of the demised premises and this lease thereby be taken and construed as so amended.

For the purpose of computing the cost of the building addition hereunder, there shall be included therein the original construction cost to Landlord of any existing store-rooms utilized to permit the expansion of Tenant's building, plus any additional costs expended in demolition or construction work necessary to incorporate the entire enlarge-ment area as a part of Tenant's enlarged building. Further, for the purposes of this Article "construction cost" shall be defined as the sum of: all direct costs of construction or demolition work and any tie-in of electrical, mechanical, plumbing, refrigeration and air conditioning and heating components to the existing systems in Tenant's original building, including, but not limited to, all labor, services and materials, work permits or fees, contractor's profit, inspection fees, premium on contractors' payment and performance bond and premium on builders' risk insurance during the construction period, and also reasonable architects' fees. It is further intended that if the adjoining storerooms are constructed initially with Tenant's building or others under a common construction contract or common architectural design and common architectural fees that the common direct costs relating to these storerooms shall be appropriately prorated so as to allocate thereto only the just and equitable portion of any such common costs; provided, however, Landlord's original construction cost thereof shall be reduced to the depreciated book value of said existing storeroom(s), at the time this option is exercised, as carried by Landlord for Federal Income Tax purposes. Landlord agrees upon request of Tenant to certify the original construction cost of said existing storeroom(s) and to evidence to Tenant all records of Landlord in relation to its depreciation reserve and to the then existing book value of the original construction.

Nothing herein contained shall constitute any express or implied obligation on the part of the holder of a first mortgage encumbering the fee simple title to the demised premises or any purchaser at a sale under foreclosure of such mortgage, to comply with the terms and provisions of this Article, it being the understanding of the parties that the obligation to cause such expansion is the sole obligation of the Landlord, its heirs, legal representatives, successors and assigns.

COMMON AREA   36. Landlord agrees to operate and maintain all the common areas, as
MAINTENANCE   herein defined, and provide therefor all such services as are reasonably
required, including, but without limitation, cleaning and sweeping, policing, if necessary, general repair and maintenance of all paved surfaces, re-painting of parking area striping, and watering and maintenance of landscaped areas. For such services, Tenant shall pay to Landlord, as additional rental hereunder, and as reimbursement for the annual cost thereof, the sum of $2,560.00 per year, payable in twelve (12) equal monthly installments of $213.33 per month in advance on the first day of each and every calendar month of the lease term, and any extensions thereof. If the Landlord after receipt of written notice from Tenant to do so shall fail to make the repairs or perform the services described in this Article, the Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental install-ments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred therein.

IN WITNESS WHEREOF, the Landlord and Tenant have executed

- 16 -

this instument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_Ellen M. Steele_
_Florence B Nelson_
As to Landlord

_W. G. Lassister, Jr._ (SEAL)

LANDLORD

_Frances N. Bayless_
_Matthew W Quin_
As to Tenant

WINN-DIXIE STORES, INC.

By _____
Its _Executive_ President

Attest: _F. P. Hamilton_
Its _Assistant_ Secretary

TENANT

(CORPORATE SEAL)

Florida - 1 Individual; 1 Corporate

STATE OF   FLORIDA       )
COUNTY OF *Palm Beach* )

      The foregoing instrument was acknowledged before me this

*October*        *6*, 19 _77_, by   W. G. LASSITER, JR.

_____

_____ .

(NOTARIAL SEAL)

*Ellen M. Steel*
Notary Public, State and County aforesaid

My commission expires:

Notary Public, State of Florida at Large
My Commission Expires June 26, 1983

STATE OF   FLORIDA       )
                         )
COUNTY OF   DUVAL        )

      The foregoing instrument was acknowledged before me this

*October*    *18*, 19 _77_, by   *CW Waldorf*

and   *FP Hamilton*, *Exec Vice* President and *Asst*

Secretary, respectively, of   WINN-DIXIE STORES, INC.

_____, a   Florida

corporation, on behalf of the corporation.

Notary Public, State and County aforesaid

(NOTARIAL SEAL)

My commission expires:
NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES APRIL 12, 1980

LEGAL DESCRIPTION
OF
SHOPPING CENTER

That certain piece, parcel or tract of land situate, lying and being in the County of Palm Beach and State of Florida, more particularly described as follows:

The North three quarters (N 3/4) of the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) (less the East 440.0 feet thereof) of Section 24, Township 42 South, Range 42 East, less and excepting that portion of the above described property conveyed to the County of Palm Beach for the right-of-way of Military Trail (S.R. 809) in Deed Book 893, Page 349, Deed Book 893, Page 351, and Official Record Book 2284, Page 1042, and also less that portion of the above described property conveyed to the County of Palm Beach for the right-of-way of Lake Park West Road, in Deed Book 912, at Page 299, and in Deed Book 912, Page 301 in the Public Records of Palm Beach County, Florida.

The same being also described as follows:

Commencing at the quarter section corner in the North line of Section 24 aforesaid; thence South 88° 08' 44" East along the North line of said Section 24 (the North line of said Section 24 is assumed to bear South 88° 08' 44" East and all other bearings are relative thereto) a distance of 150.88 feet to a point; thence South 1° 51' 16" West a distance of 75.0 feet to the POINT OF BEGINNING of the herein described parcel, said point lying on the South right-of-way line of Lake Park West Road (125 foot right-of-way); thence South 88° 08' 44" East parallel to the North line of said Section 24 and along said South right-of-way line a distance of 730.28 feet to a point of intersection with the West line of the East 440 feet of the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of said Section 24; thence South 1° 43' 11" West along the West line of the said East 440 feet a distance of 920.29 feet to a point of intersection with the South line of the North three quarters (N 3/4) of the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of said Section 24; thence North 88° 10' 38" West along the South line of the North three quarters (N 3/4) of the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of said Section 24 a distance of 828.36 feet to a point of intersection with the East right-of-way line of Military Trail as now laid out and in use, said point lying 50.0 feet East of as measured at right angles to, the North-South quarter section line of said Section 24; thence North 1° 34' 06" East along said East right-of-way line and parallel with said North-South quarter section line a distance of 471.16 feet to a point; thence South 88° 25' 54" East along said East right-of-way line a distance of 8.59 feet to a point; thence North 0° 40' 47" East along said East right-of-way line a distance of 328.57 feet to a point of curve concave to the East, having a radius of 7579.44 feet and a central angle of 0° 20' 17"; thence Northerly along the arc of said curve a distance of 44.72 feet to a point of intersection with a nontangent curve concave to the Southeast, having a radius of 100.0 feet, a central angle of 76° 20' 33" and a radial bearing at this point of South 74° 29' 17" East; thence Northerly, Northeasterly and Easterly along the arc of said curve a distance of 133.24 feet to the point of tangent and the POINT OF BEGINNING.  Containing in all 17.43 acres, more or less.

EXHIBIT "B"

SHORT FORM LEASE

THIS SHORT FORM LEASE, made this _6th_ day of _October_

19 _77_ , between  _W. G. LASSITER, JR._ _____

_____

(hereinafter called "Landlord") and  _WINN-DIXIE STORES, INC., a_

_Florida corporation,_ _____

_____ (hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context

admits or requires, singular or plural, and the heirs, legal representa-

tives, successors and assigns of the respective parties;

WITNESSETH:

That the Landlord, in consideration of the covenants of

the Tenant, does hereby lease and demise unto said Tenant and the

Tenant hereby agrees to take and lease from the Landlord, for the

term hereinafter specified, the following described premises:

That certain store building, approximately _160_ feet in
width by _160_ feet in depth, together with coolers and freezers
_on the rear thereof_____ , and the land on which
the same shall stand (hereinafter collectively called
"demised premises"), which store building and related im-
provements are to be constructed by Landlord according to
plans and specifications to be approved by the parties here-
to and shall be in the location and of the dimensions as
outlined in red on the Plot Plan _entitled "Northlake Plaza"_,
_prepared by Schwab & Twitty Architects, Inc., West Palm Beach_,
_Florida, dated August 15, 1977, last revised August 30, 1977_,
attached as Exhibit "A" to a certain collateral lease agree-
ment executed by the parties hereto and of even date herewith.

The demised premises are located in a shopping center develop-
ment known as _Northlake Plaza_ (hereinafter
called "shopping center"), located _at the Southeast corner of_
_Military Trail and Northlake Boulevard (Lake Park Road West)_
in the City of _Palm Beach Gardens_, County of _Palm Beach_,
State of _Florida_ , the legal description of
the shopping center being attached hereto as Exhibit "B" and by
this reference made a part hereof.

FOR THE TENANT TO HAVE AND TO HOLD from the date when

Tenant opens said premises for the transaction of its business for

an initial term of _____twenty_____ ( _20_ ) years.

It is further agreed that Tenant, at its option, shall be

entitled to the privilege of __five__ ( _5_ ) successive extensions

of this lease, each extension to be for a period of _five_ ( _5_ ) years.

APPROVED
AS TO FORM
_____
DIVISION MGR.
FPH
LEGAL DEPT.
WINN-DIXIE STORES,
INC.

This instrument was prepared by
Francis P. Hamilton, Attorney-
at-Law, whose address is 5050
Edgewood Court, Jacksonville,
Florida 32205

Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods or frozen foods without written permission of the Tenant, provided, however, that the provisions of this paragraph are expressly subject to and conditioned upon certain modifications thereof as particularly set forth in the collateral lease agreement of even date herewith below mentioned.

IT IS UNDERSTOOD AND AGREED that this is a Short Form Lease which is for the rents and upon the terms, covenants and conditions contained in the aforesaid collateral lease agreement executed by the parties hereto and bearing even date herewith, which collateral lease agreement is and shall be a part of this instrument as fully and completely as if the same were set forth herein.

IN WITNESS WHEREOF, the Landlord and Tenant have executed

this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_Ellen M. Steele_

_Florence B. Nelson_
As to Landlord

_W. G. Lassiter, Jr._ _____ (SEAL)

LANDLORD

_Frances H. Bayless_

As to Tenant

WINN-DIXIE STORES, INC.

By _____
Its _____ /President

Attest: _F. P. Hamilton_
Its _Assistant_ Secretary

TENANT

(CORPORATE SEAL)

-3-

Florida - 1 Individual; 1 Corporate

STATE OF FLORIDA )
COUNTY OF *Palm Beach* )

The foregoing instrument was acknowledged before me this

*October* 6 , 19 77 , by W. G. LASSITER, JR.

_____

_____

(NOTARIAL SEAL)                    *Ellen M. Steele*
                                   Notary Public, State and County aforesaid

My commission expires:

Notary Public, State of Florida at Large
My Commission Expires June 28, 1980

STATE OF FLORIDA )
                 )
COUNTY OF DUVAL  )

The foregoing instrument was acknowledged before me this

*October* 18 , 19 77 , by *C W Waldorf*

and *F P Hamilton* , *Exec Vice* President and *Asst*

Secretary, respectively, of WINN-DIXIE STORES, INC.

_____ , a Florida

corporation, on behalf of the corporation.

(NOTARIAL SEAL)                    Notary Public, State and County aforesaid

My commission expires:
NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES APRIL 12, 1980

LEGAL DESCRIPTION
OF
SHOPPING CENTER

That certain piece, parcel or tract of land situate, lying and being in the County of Palm Beach and State of Florida, more particularly described as follows:

The North three quarters (N 3/4) of the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) (less the East 440.0 feet thereof) of Section 24, Township 42 South, Range 42 East, less and excepting that portion of the above described property conveyed to the County of Palm Beach for the right-of-way of Military Trail (S.R. 809) in Deed Book 893, Page 349, Deed Book 893, Page 351, and Official Record Book 2284, Page 1042, and also less that portion of the above described property conveyed to the County of Palm Beach for the right-of-way of Lake Park West Road, in Deed Book 912, at Page 299, and in Deed Book 912, Page 301 in the Public Records of Palm Beach County, Florida.

The same being also described as follows:

Commencing at the quarter section corner in the North line of Section 24 aforesaid; thence South 88° 08' 44" East along the North line of said Section 24 (the North line of said Section 24 is assumed to bear South 88° 08' 44" East and all other bearings are relative thereto) a distance of 150.88 feet to a point; thence South 1° 51' 16" West a distance of 75.0 feet to the POINT OF BEGINNING of the herein described parcel, said point lying on the South right-of-way line of Lake Park West Road (125 foot right-of-way); thence South 88° 08' 44" East parallel to the North line of said Section 24 and along said South right-of-way line a distance of 730.28 feet to a point of intersection with the West line of the East 440 feet of the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of said Section 24; thence South 1° 43' 11" West along the West line of the said East 440 feet a distance of 920.29 feet to a point of intersection with the South line of the North three quarters (N 3/4) of the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of said Section 24; thence North 88° 10' 38" West along the South line of the North three quarters (N 3/4) of the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of said Section 24 a distance of 828.36 feet to a point of intersection with the East right-of-way line of Military Trail as now laid out and in use, said point lying 50.0 feet East of as measured at right angles to, the North-South quarter section line of said Section 24; thence North 1° 34' 06" East along said East right-of-way line and parallel with said North-South quarter section line a distance of 471.16 feet to a point; thence South 88° 25' 54" East along said East right-of-way line a distance of 8.59 feet to a point; thence North 0° 40' 47" East along said East right-of-way line a distance of 328.57 feet to a point of curve concave to the East, having a radius of 7579.44 feet and a central angle of 0° 20' 17"; thence Northerly along the arc of said curve a distance of 44.72 feet to a point of intersection with a nontangent curve concave to the Southeast, having a radius of 100.0 feet, a central angle of 76° 20' 33" and a radial bearing at this point of South 74° 29' 17" East; thence Northerly, Northeasterly and Easterly along the arc of said curve a distance of 133.24 feet to the point of tangent and the POINT OF BEGINNING. Containing in all 17.43 acres, more or less.

EXHIBIT "B"

ATTORNMENT AGREEMENT

THIS AGREEMENT, made in several counterparts, each of
which shall be construed as if an original, this _6 th_ day of
_October_ , 1977, by and between LOUIS B. BILLS, as
Trustee, hereinafter called the "Owner"; and W. G. LASSITER, JR.,
hereinafter called the "Lessee"; and WINN-DIXIE STORES, INC., a
Florida corporation, hereinafter called "Winn-Dixie";

WITNESSETH:

WHEREAS, the Owner by Lease dated April 20, 1976, as
amended, (hereinafter called "Overlease") leased to Lessee
a parcel of land (hereinafter called "Overlease premises") located
at the Southeasterly corner of Military Trail and Northlake Boulevard
in the City of Palm Beach Gardens, County of Palm Beach and State
of Florida, the Overlease premises being more particularly described
on Exhibit "B" attached hereto and by this reference made a part
hereof, for an initial term of fifty (50) years commencing on May 1,
1976, upon the terms and conditions as more particularly set forth
therein, and

WHEREAS, said Overlease has been amended by Lease Modi-
fication Agreement dated October 6, 1976 and by Second Lease Modi-
fication Agreement dated February 2, 1977, and a Memorandum of Long
Term Lease dated February 2, 1977 has been recorded in Official Record
Book 2638, page 636 of the Public Records of Palm Beach County,
Florida; and

WHEREAS, the Owner is the owner in fee of the Overlease
premises, together with the lessor's interest in the Overlease and
has full authority to execute and deliver this Agreement; and

WHEREAS, the Overlease has been at all times since its
commencement date, and now is, in full force and effect and no
default has occurred, either in the payment of rent or in the per-
formance of any other covenants of the Lessee thereunder; and

WHEREAS, the Lessee is about to execute and deliver to
Winn-Dixie a Sublease dated _OCTOBER 6, 1977_ , hereinafter
called the "Sublease") of a part or all of the Overlease premises

APPROVED
AS TO FORM
_____
DIVISION MGR.
FVH
LEGAL DEPT.
WINN DIXIE STORES

This instrument was prepared by
Francis P. Hamilton. Attorney-
at-Law, whose address is 5050
Edgewood Court, Jacksonville,
Florida 32205

(being more particularly described in said Sublease), a short form of which is to be recorded in the Public Records of Palm Beach County, Florida, for a term of twenty (20) years to commence upon the delivery of possession, as in said Sublease provided, subject to five (5) 5-year option extensions thereof, unless sooner terminated or extended as therein provided; and

WHEREAS, a copy of the said Sublease has been exhibited to the Owner and the Owner is willing to consent to said Sublease and to approve the terms, covenants and conditions thereof, and the Owner, Lessee and Winn-Dixie are willing to agree that the Sublease shall remain in effect in the event the Overlease expires or comes to an end;

NOW THEREFORE, in consideration of the premises and in order to induce Winn-Dixie to enter into the Sublease, the parties hereto mutually covenant and agree as follows:

1.  The Owner hereby consents to the execution and delivery of the Sublease by and between the Lessee and Winn-Dixie.

2.  The Owner agrees with the Lessee and Winn-Dixie that no act which Winn-Dixie or Lessee is required or permitted to do under the terms of the Sublease and no failure by Winn-Dixie or Lessee to perform an act, which act, if performed, would be a breach of the Sublease, shall constitute a default under the Overlease.

3.  The Lessee and Winn-Dixie agree with the Owner that they will perform and comply with all the terms, covenants and conditions of the Sublease which are binding upon them respectively. Lessee agrees with Winn-Dixie and Owner that Lessee will perform and comply with all the terms, covenants and conditions of the Overlease which are binding upon Lessee. At the request of Winn-Dixie, the Owner shall advise Winn-Dixie in writing from time to time prior to the commencement of the term of the Sublease, whether the Overlease continues to be in full force and effect and whether any default by the Lessee has occurred thereunder.

4.  The Owner and Lessee agree with Winn-Dixie that in the event that, for any reason whatsoever, the Overlease shall terminate or come to an end during the term of the Sublease,

-2-

(a) the Sublease shall remain in full force and effect, in accordance with its terms, as a direct lease with the Owner, as landlord, (b) the Owner shall give Lessee and Winn-Dixie prompt notice in writing of such event (together with essential details and dates), and (c) from and after receipt by Winn-Dixie of said notice, the payment by Winn-Dixie to the Owner of rental payments and other payments then due or thereafter becoming due to the Landlord under the Sublease shall constitute full performance by Winn-Dixie of all of its obligations under the Sublease with respect to such payments. The Owner, Lessee and Winn-Dixie further agree that if the said Overlease premises, or any part thereof, is ever purchased by Lessee, whether pursuant to any option contained in the Overlease or otherwise, said purchase shall be subject to all rights of Winn-Dixie under the Sublease, and the Sublease shall remain in full force and effect.

5. Wherever and whenever in this Agreement or in the Overlease, or in the Sublease, it shall be required or permitted that notice or demand be given or served by any party, such notice or demand shall be given or served upon all other parties to this Agreement, or to their respective successors as notified in writing so given or served upon all other parties to this Agreement. Such notice or demand shall be given or served and shall not be deemed to have been given or served unless in writing and forwarded by registered or certified mail, addressed as follows:

| To Owner at: | 321 Northlake Boulevard, Suite 204<br>North Palm Beach, Florida 33408 |
| To Lessee at: | 4801 Georgia Avenue<br>West Palm Beach, Florida 33405 |
| To Winn-Dixie at: | P. O. Box 520352<br>Miami, Florida 33152 |

Such addresses may be changed from time to time by either party by serving notices as above provided.

6. The obligations of the parties hereto shall, from and after the execution and delivery hereof, be binding upon and shall inure to the benefit of the parties hereto, their heirs, legal

representatives, successors and assigns.

IN WITNESS WHEREOF, the Owner, Lessee and Winn-Dixie have executed this agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

_Christopher H Carl_
_Patricia V. Cornell_
As to Owner

_Louis B. Bills, as Trustee_ (SEAL)

OWNER

_Ellen M. Steele_
_Maus Clark_
As to Lessee

_W. G. Lassiter, Jr._ (SEAL)

LESSEE

_Frances N. Bayless_
_Judith W. Dunn_
As to Winn-Dixie

WINN-DIXIE STORES, INC.

By _____
   Its _____,President

Attest: _____
   Its _____ Secretary

WINN-DIXIE

(CORPORATE SEAL)

-4-

STATE OF *Florida* )

COUNTY OF *Palm Beach* )

    The foregoing instrument was acknowledged before me this

*October* ____ *6* , 19 _77_ , by ____ LOUIS B. BILLS, as ____

Trustee, _____

_____

_____

                                *Patricia A. Connell*
                               Notary Public, State and County aforesaid

(NOTARIAL SEAL)

                           My commission expires:
                               Notary Public, State of Florida at Large
                               My Commission Expires Sept. 26, 1981

 

STATE OF     FLORIDA )

COUNTY OF *Palm Beach* )

    The foregoing instrument was acknowledged before me this

*October* ____ *6* , 19 _77_ , by ____ W. G. LASSITER, JR. ,

_____

_____

                                *Ellen M. Steele*

(NOTARIAL SEAL)              Notary Public, State and County aforesaid

                           My commission expires:
                               Notary Public, State of Florida at Large
                               My Commission Expires June 26, 1980

 

STATE OF     FLORIDA )

COUNTY OF     DUVAL )

    The foregoing instrument was acknowledged before me this

*October* ____ *18* , 19 _77_ , by *O. W. Waldauf*

and _*T. P. Hamilton*_ , *Exec. Vice* President and *Asst*

Secretary, respectively, of ____ WINN-DIXIE STORES, INC. ____

_____ , a     Florida

corporation, on behalf of the corporation.

                                *Judith W. Dixon*
                                Notary Public, State and County aforesaid

(NOTARIAL SEAL)

                           My commission expires:
                               NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
                               MY COMMISSION EXPIRES APRIL 12, 1980

LEGAL DESCRIPTION
OF
SHOPPING CENTER

That certain piece, parcel or tract of land situate, lying and
being in the County of Palm Beach and State of Florida, more
particularly described as follows:

The North three quarters (N 3/4) of the Northwest Quarter
(NW 1/4) of the Northeast Quarter (NE 1/4) (less the East
440.0 feet thereof) of Section 24, Township 42 South,
Range 42 East, less and excepting that portion of the
above described property conveyed to the County of Palm
Beach for the right-of-way of Military Trail (S.R. 809)
in Deed Book 893, Page 349, Deed Book 893, Page 351, and
Official Record Book 2284, Page 1042, and also less that
portion of the above described property conveyed to the
County of Palm Beach for the right-of-way of Lake Park
West Road, in Deed Book 912, at Page 299, and in Deed Book
912, Page 301 in the Public Records of Palm Beach County,
Florida.

The same being also described as follows:

Commencing at the quarter section corner in the North line
of Section 24 aforesaid; thence South 88° 08' 44" East along
the North line of said Section 24 (the North line of said
Section 24 is assumed to bear South 88° 08' 44" East and all
other bearings are relative thereto) a distance of 150.88
feet to a point; thence South 1° 51' 16" West a distance
of 75.0 feet to the POINT OF BEGINNING of the herein described
parcel, said point lying on the South right-of-way line of
Lake Park West Road (125 foot right-of-way); thence South
88° 08' 44" East parallel to the North line of said Section
24 and along said South right-of-way line a distance of
730.28 feet to a point of intersection with the West line of
the East 440 feet of the Northwest Quarter (NW 1/4) of the
Northeast Quarter (NE 1/4) of said Section 24; thence South
1° 43' 11" West along the West line of the said East 440 feet
a distance of 920.29 feet to a point of intersection with the
South line of the North three quarters (N 3/4) of the North-
west Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of
said Section 24; thence North 88° 10' 38" West along the
South line of the North three quarters (N 3/4) of the North-
west Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of
said Section 24 a distance of 828.36 feet to a point of inter-
section with the East right-of-way line of Military Trail as
now laid out and in use, said point lying 50.0 feet East of
as measured at right angles to, the North-South quarter section
line of said Section 24; thence North 1° 34' 06" East along
said East right-of-way line and parallel with said North-South
quarter section line a distance of 471.16 feet to a point;
thence South 88° 25' 54" East along said East right-of-way
line a distance of 8.59 feet to a point; thence North 0° 40'
47" East along said East right-of-way line a distance of
328.57 feet to a point of curve concave to the East, having a
radius of 7579.44 feet and a central angle of 0° 20' 17";
thence Northerly along the arc of said curve a distance of
44.72 feet to a point of intersection with a nontangent curve
concave to the Southeast, having a radius of 100.0 feet, a
central angle of 76° 20' 33" and a radial bearing at this point
of South 74° 29' 17" East; thence Northerly, Northeasterly and
Easterly along the arc of said curve a distance of 133.24 feet
to the point of tangent and the POINT OF BEGINNING.  Containing
in all 17.43 acres, more or less.

EXHIBIT "B"

SUPPLEMENTAL LEASE AGREEMENT

THIS AMENDMENT, made this _7th_ day of _June_ ,
1979, between W. G. LASSITER, JR. (hereinafter called "Landlord")
and WINN-DIXIE STORES, INC., a Florida corporation,(hereinafter called
"Tenant"); which terms "Landlord" and "Tenant" shall include the
heirs, legal representatives, successors and assigns of the respec-
tive parties;

WITNESSETH:

WHEREAS, by Lease dated October 6, 1977, Landlord did
lease and demise unto Tenant those certain premises, therein more
particularly described, located in a shopping center development
now known as Gardens Park Plaza, located at the Southeast corner of
Military Trail and Northlake Boulevard (Lake Park Road West), in the
City of Palm Beach Gardens, County of Palm Beach and State of
Florida, for an initial term of twenty (20) years commencing upon a
date dependent upon the completion of certain construction, and for
such rentals and upon such terms and conditions as more particularly
set forth therein, a short form of said Lease bing recorded in
Official Record Book 2759, page 912 of the Public Records of Palm
Beach County, Florida; and

WHEREAS, the said construction has been completed and the
Tenant has now opened for business in the demised premises and the
parties hereto desire to fix the commencement date of said Lease, as
hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the sum
of Ten Dollars ($10.00) and other good and valuable considerations, in
hand paid by the Tenant to the Landlord, the receipt and sufficiency
of which is hereby acknowledged, it is mutually agreed as follows:

1. The commencement date of the above described Lease
dated October 6, 1977 is fixed at May 31, 1979, and the expiration of
the initial term of twenty (20) years demised therein shall be
May 30, 1999, at twelve o'clock midnight.

APPROVED
AS TO FORM
Division Mgr.
FPH
Legal Dept.
Winn-Dixie Stores,
Inc.

This instrument was prepared by
Francis P. Hamilton, Attorney-
at-Law, whose address is 5050
Edgewood Court, Jacksonville
Florida 32205.

2.   It is mutually understood and agreed that the said Lease dated October 6, 1977 shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby.   All covenants, terms, obligations and conditions of said Lease, not modified or amended by this Supplemental Lease Agreement, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
As to Landlord

_____ (SEAL)
W. G. Lassiter, Jr.

LANDLORD


_____
As to Tenant

WINN-DIXIE STORES, INC.

By_____
   Its                    Vice President

Attest:_____
       Its                Secretary

TENANT

(CORPORATE SEAL)

-2-

STATE OF   FLORIDA    )
                       )
COUNTY OF Palm Beach   )

       The foregoing instrument was acknowledged before me this

_____ June _____   7___ , 19 _79_ , by   W. G. LASSITER, JR. _____

_____

_____ .

(NOTARIAL SEAL)                Nancy D. Clark
                            Notary Public, State and County aforesaid

                            My commission expires:
                              Notary Public, State of Florida at Large
                              My Commission Expires September 29, 1982
                              Bonded through Cornelius, Johnson & Clark, Inc.

STATE OF   FLORIDA    )
                       )
COUNTY OF   DUVAL     )

       The foregoing instrument was acknowledged before me this

_____ June _____  15 , 19 _79_ , by _____

and _____ , Executive President and _____

Secretary, respectively, of   WINN-DIXIE STORES, INC. _____

_____ , a   Florida _____

corporation, on behalf of the corporation.

(NOTARIAL SEAL)                Notary Public, State and County aforesaid

                            My commission expires:
                            NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
                            MY COMMISSION EXPIRES APRIL 12, 1980

SECOND AMENDMENT TO LEASE

THIS AMENDMENT, made this ___/9th___ day of ___March___,
1987, between W. G. LASSITER, JR. (hereinafter called "Landlord")
and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter
called "Tenant"); which terms "Landlord" and "Tenant" shall
include the heirs, legal representatives, successors and assigns
of the respective parties;

WITNESSETH:

WHEREAS, by Lease dated October 6, 1977, Landlord did
lease and demise unto Tenant those certain premises, therein more
particularly described, located in a shopping center development
now known as Gardens Park Plaza, located at the Southeast corner
of Military Trail and Northlake Boulevard (Lake Park Road West),
in the City of Palm Beach Gardens, County of Palm Beach and State
of Florida, for an initial term of twenty (20) years commencing
upon a date dependent upon the completion of certain
construction, now fixed as May 31, 1979, and expiring at midnight
on May 30, 1999, and for such rentals and upon such terms and
conditions as more particularly set forth therein, a short form
of said Lease being recorded in Official Record Book 2759, page
912 of the Public Records of Palm Beach County, Florida; and

WHEREAS, said Lease was amended in certain respects by
Supplemental Lease Agreement dated June 7, 1979.

WHEREAS, the parties hereto have agreed that the Tenant
may construct an addition to its building and construct a
vestibule on the front thereof and make other related renovations
and alterations to make the enlarged building suitable for use by
Tenant in the conduct of its business, and the parties, hereto
have agreed to make certain modifications and amendments to said
Lease, as amended, for such purposes, as hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the
sum of Ten Dollars ($10.00) and other good and valuable
considerations, in hand paid by the Tenant to the Landlord, the
receipt and sufficiency of which is hereby acknowledged, it is
mutually agreed as follows:

APPROVED
AS TO FORM
ELR
Division Mgr.
PM
Legal Dept.
Winn-Dixie Stores,

This instrument was prepared by
Francis P. Hamilton, Attorney-
at-Law, whose address is 5050
Edgewood Court, Jacksonville,
Florida 32205.

1. By virtue of substituting a new plot plan attachment to said Lease, as amended, and for the purpose of graphically showing the contemplated enlargement of Tenant's store building and the location and dimensions thereof, the said Lease dated October 6, 1977, as amended, is hereby further amended by deleting from the first page thereof the reference to the "Plot Plan entitled "Northlake Plaza", prepared by Schwab & Twitty Architects, Inc., West Palm Beach, Florida, dated August 15, 1977, last revised August 30, 1977" and by substituting in lieu thereof the words "Plot Plan prepared by A. J. Verde Architects, P.A., Miami, Florida, dated for identification December 16, 1986". Attached hereto and by this reference made a part hereof is a copy of the said Plot Plan dated December 16, 1986, and this plot plan shall be substituted in all respects for the plot plan previously attached to said Lease dated October 6, 1977, as amended, as Exhibit "A" thereto, which former plot plan is hereby deleted in its entirety. Whereinsoever in said Lease, as amended, reference is made to Exhibit "A", the same shall be construed to apply to the plot plan attached hereto. Tenant hereby consents to the changes in site layout as evidenced by the above substituted plot plan.

2. Tenant agrees, with the approval and consent of the Landlord hereby evidenced, at Tenant's cost and expense, subject to reimbursement by Landlord of the cost thereof as hereinafter provided, with due diligence to undertake the necessary construction work to enlarge Tenant's present building by constructing a permanent addition on the Westerly side thereof, measuring 60 feet in width by 160 in depth, together with an enclosed vestibule 85 feet in width by 10 feet in depth across the front of the enlarged building, and concurrently to make such other renovations, alterations and remodeling of the overall enlarged building, including construction and installation of a new store front, removal and reinstallation of doors, walls and partitions, construction and installation of exterior slab-mounted coolers and freezers and exterior loading docks, as are necessary to make the enlarged building suitable for use by

Tenant in the conduct of its business.  The new addition and the other renovations and alterations and related improvements as herein contemplated shall be constructed in accordance with plans and specifications therefor to be furnished by Tenant and which shall be approved by both parties hereto on or before two (2) weeks after the said plans and specifications are furnished by Tenant.  In the event the parties shall not approve the same within such period, to be evidenced by their initials thereon, this Second Amendment to Lease shall become null and void and of no further force and effect unless the parties hereto shall mutually agree in writing to extend the period for approval of said plans and specifications.  All such construction work shall be performed in a good and workmanlike manner and in conformity with all applicable building codes and requirements of governmental authorities and shall be of comparable structural quality as the existing store building for Tenant.  Tenant agrees to indemnify and hold the Landlord harmless from any mechanics', materialmen's or laborers' liens or encumbrances arising out of such construction work and to cause such liens, if any, to be promptly discharged.

3.  It is agreed that Landlord shall bear the expense of the construction work contemplated hereunder up to its outside limit hereinafter fixed, and, upon completion of such work, as soon as the cost of construction thereof can be determined, and which cost shall be certified to by the general or supervising contractor performing the work, the Landlord agrees promptly to reimburse the Tenant upon demand in cash for the actual cost expended by Tenant in the contemplated construction work.  The rental adjustment hereinafter stipulated shall take effect on the date Landlord reimburses Tenant for the construction cost, notwithstanding that the Tenant may sooner have occupied and placed in use the enlargement area.  For the purposes hereof, the construction cost shall be defined to include the entire cost of construction of the building addition and all alterations and renovations to the existing building required to make the enlarged and renovated building suitable for use by Tenant in the

conduct of its business, together with architects' and engineering fees, but excluding, however, from such construction cost the expense of any and all of Tenant's racks, counters, shelving, cases and other merchandising fixtures and equipment. Tenant shall be permitted to secure bids for the proposed construction or to negotiate an agreed price with a contractor for the purpose of effecting the proposed construction.

4. It is understood and agreed that the undertaking of the Landlord to contribute to the construction of the building addition and vestibule and the other renovations and alterations as contemplated herein is and shall be to a maximum amount of Five Hundred Fifty Thousand Five Hundred and no/100 Dollars ($550,500.00), and on behalf of Tenant, the outside limit for construction cost shall be Five Hundred Seventy-Five Thousand and no/100 Dollars ($575,000.00), and in the event that Tenant is unable in good faith to obtain a bid price or a contract price for the construction work at or below this stipulated outside limit, Tenant at its sole option shall have the election of either (a) agreeing to pay the excess of such cost over the amount of Landlord's contribution (without right of reimbursement therefor from the Landlord) and to proceed with the contemplated construction work, or (b) declaring this amendment null and void by giving written notice thereof to the Landlord, and thereupon both parties shall be relieved of and from all further liability hereunder and the said Lease, as amended, shall be deemed to continue in full force and effect as if this amendment had not been executed.

5. Tenant agrees that the construction of the building addition and necessary alterations, renovations and remodeling shall begin within thirty (30) days after the approval of the plans and specifications and shall be completed and tendered to Tenant ready for occupancy and use within eight (8) months after beginning of construction; provided, however, that if Tenant shall fail to complete said improvements within the stipulated time due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather,

-4-

or other similar happenings which are beyond the control of Tenant, the completion date shall be extended for the additional period of two (2) months; and failing such completion within such extended period, Landlord may, at its option, take over the work and effect the completion thereof and all sums expended therein by Landlord shall be repaid to it by Tenant upon demand, or failing such payment, may be deducted from the amount which Landlord is to reimburse Tenant, as herein set forth.

6. It is understood that concurrently with the commencement of construction of the building enlargement, the Landlord will deliver possession to Tenant of the existing 60 feet in width by 80 feet in depth adjoining building to be incorporated in the overall enlargement to a depth of 160 feet. The Landlord agrees to cause the tenant presently occupying such adjoining storeroom to remove therefrom, which removal Landlord agrees to effect on or prior to two (2) months subsequent to the date of execution hereof by both parties, and Landlord agrees to deliver possession of such storeroom to Tenant free and clear of all tenancies as soon as available, but in any event on or prior to the stipulated date.

7. Upon completion of the building addition and vestibule and the other renovations and alterations contemplated herein, and the issuance of a Certificate of Occupancy covering same and the acceptance and occupancy thereof by Tenant, and reimbursement by Landlord to Tenant of the construction cost thereof as hereinabove provided, the following further modifications to said Lease, as amended, shall become effective:

(a) The building addition and vestibule, together with all permanent improvements, alterations, renovation and related improvements herein contemplated, shall be and become a part of the demised premises, and whereinsoever in said Lease, as amended, reference is made to the demised premises, the same shall be thereafter construed to apply to the enlarged building and the land on which the same shall stand.

(b) Said Lease, as amended, is hereby further amended to provide that instead of the rentals provided in

Article 1 of said Lease, as amended, for the duration of the initial lease term, and any exercised option extensions thereafter, Tenant agrees to pay to the Landlord as minimum guaranteed rental for the enlarged demised premises the sum of One Hundred Ninety-Three Thousand Four Hundred Eight and 00/100 Dollars ($193,408.00) per year, payable in twelve (12) equal monthly installments of Sixteen Thousand One Hundred Seventeen and 33/100 Dollars ($16,117.33), which installments shall be due and payable in advance on the first day of each and every calendar month of the initial lease term, and any extensions thereof.

In addition, Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30th exceeds One Hundred Sixteen Thousand Three Hundred Thirty-Seven and 99/100 Dollars ($116,337.99). The percentage rentals shall be calculated and paid in like fashion as provided in Article 1 of said Lease, as amended.

Rentals shall be calculated and paid under the present applicable rates of the original Lease, as amended, until the rentals begin to accrue under the above substituted provisions, and the rentals for any month in which a change of rates occurs shall be prorated between the previously effective rates and the rates effective under the above substituted provisions. The parties hereto agree to execute a further supplement to the Lease, as amended, fixing the effective date of the above described rental adjustment when determined, as herein provided.

(c) During the remainder of the initial lease term, and any exercised option extensions thereafter, Tenant agrees to reimburse Landlord for the increased annual ad valorem taxes levied on the shopping center (of which the demised premises are a part) and the increased annual premium cost of fire and extended coverage insurance on the building on the demised premises resulting from the construction of the vestibule

addition and renovations to the existing building. The amount of the increase in ad valorem taxes levied against the demised premises resulting from such cause shall be the difference between the taxes levied for the next preceding tax year and those levied for the first year after completion of construction in which the augmented value of the enlarged building, including the addition and renovations, is assessed for tax purposes. The increased premium cost of fire and extended coverage insurance on the  building on the demised premises shall be the difference between  the  annual  premium  paid  immediately  preceding construction of the building addition and the annual premium established for the same type coverages immediately following the completion of the building addition as based upon the augmented value of the enlarged building. Landlord agrees to evidence to Tenant the tax statements and insurance premium statements and other pertinent information reasonably required to demonstrate the initial and subsequent increase tax assessment and the increased insurance coverage. As to any further increases in the ad valorem taxes and in the insurance premiums which may occur in subsequent years following the original base period as established for the measurement of the initial increment, and during the remainder of the initial term of the lease, and any exercised option extensions thereafter, Tenant agrees to reimburse Landlord for one hundred percent (100%) of Tenant's proportionate share thereof.

Tenant shall reimburse Landlord annually for such tax and insurance premium increases, respectively, at the time ad valorem taxes become due and payable and at the anniversary date of the applicable insurance policy or policies and within fifteen (15) days after Landlord shall have submitted to Tenant a statement for the respective amounts due. Any payments to be made by Tenant to Landlord hereunder shall be prorated for fractional years occurring at the expiration of the term of the lease, or any exercised option extensions thereafter.

Any additional rental payable hereunder by Tenant in respect of either increased taxes or insurance premiums arising

-7-

out of the building enlargement hereunder shall not be permitted to be offset against percentage rentals hereunder, but additional rental payable in respect of increased taxes on the original building shall continue to be permitted to be offset against percentage rentals.

Tenant shall continue to be responsible for payment to Landlord of any increases of Tenant's pro rata share of the ad valorem real estate taxes levied against the demised premises as provided under Article 34 of the said Lease dated October 6, 1977, as amended.

(d)    The two figures "$2,560.00" and "$213.33" appearing in Article 36 of said Lease, as amended, shall be deleted and in lieu thereof the following figures shall be substituted: "$5,172.50" and "$431.04", respectively.

(e)    In that the enlargement of Tenant's building will have been accomplished under the terms and provisions of this Second Amendment to Lease, it is mutually understood and agreed that the option for expansion under the different formula provided in Article 35 of said Lease, as amended, shall be deemed null and void; provided, however, if for any reason the enlargement shall not be accomplished as contemplated in this Second Amendment to Lease, the said Lease, as amended, shall be deemed to continue in full force and effect, including the option for expansion as set forth in said Article 35 thereof.

8.    In the event Landlord shall fail to reimburse Tenant in full for the amount of the construction cost for which Landlord is obligated within sixty (60) days after demand therefor, Tenant shall have the right to offset the amount thereof, or such portion thereof as shall remain unpaid from time to time, against future rentals payable under the terms of said Lease, as amended, and as further amended by this Second Amendment to Lease.

9.    It is mutually understood and agreed that the said Lease dated October 6, 1977, as amended, shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby. All covenants, terms, obligations and conditions of said Lease, as amended, not

-8-

modified or amended by this Second Amendment to Lease, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____

_____
As to Landlord

_____ (SEAL)
W. G. Lassiter, Jr.

LANDLORD


_____

_____
As to Tenant

WINN-DIXIE STORES, INC.

By_____
   Its _____ Exec. Vice President

Attest_____
      Its _____ Secretary

TENANT

(CORPORATE SEAL)

Florida - 1 Individual; 1 Corporate


STATE OF Florida        )

COUNTY OF Palm Beach )

     The foregoing instrument was acknowledged before me this

_____ March _____ 19 , 19 87 , by   W. G. Lassiter, Jr. _____

_____

_____.


(NOTARIAL SEAL)        _Nancy L. Clark_____
                   Notary Public, State and County
                   aforesaid

                   My commission expires:

                   _____



STATE OF  Florida      )

COUNTY OF ~~Palm Beach~~ Duval )

     The foregoing instrument was acknowledged before me this

_____ March _____ 2? , 19 87 , by  W. B. Thomas _____

and  G. M. Bowman, Sr. _____ , Vice President and _____

Secretary, respectively, of _____ WINN-DIXIE STORES, INC. _____

_____ , a _____ Florida _____

corporation, on behalf of the corporation.


(NOTARIAL SEAL)        _Alice Leighton_____
                   Notary Public, State and County
                   aforesaid

                   My commission expires:

                   _____

THIRD AMENDMENT TO LEASE

THIS THIRD AMENDMENT TO LEASE, made this _10_ day of _Nov_, 19_88_, between W. G. LASSITER, JR. (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the heirs, legal representatives, successors and assigns of the respective parties;

W I T N E S S E T H :

WHEREAS, by Lease dated October 6, 1977, Landlord did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development now known as Gardens Park Plaza, located at the southeast corner of Military Trail and Northlake Boulevard (Lake Park Road West), in the city of Palm Beach Gardens, County of Palm Beach and State of Florida, for an initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, now fixed as May 31, 1979, and expiring at midnight on May 30, 1999, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form of said Lease being recorded in Official Record Book 2759, page 912 of the Public Records of Palm Beach County, Florida; and

WHEREAS, said Lease was amended in certain respects by Supplemental Lease Agreement dated June 7, 1979; and

WHEREAS, said Lease was further amended by Second Amendment to Lease dated March 19, 1987, whereby the parties agreed that the Tenant could construct an addition to its demised store building and make other related alterations thereto, and consequence of which certain further amendments to said Lease would come into effect upon the completion of such construction; and

WHEREAS, the construction of the addition and related improvements described in the said Second Amendment to Lease has

APPROVED
AS TO FORM

Division Manager

Legal Dept.
Winn-Dixie Stores, Inc.

This Instrument was prepared by Charles P. Milford, Jr., Attorney-at-Law whose address is P. O. Box B, Jacksonville, Florida 32203

been completed and the parties hereto desire to amend the said Lease so as to fix the effective date of the lease modifications particularly set forth in the said Second Amendment to Lease;

NOW THEREFORE, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and valuable considerations, in hand paid by the Tenant to the Landlord, the receipt and sufficiency of which are hereby acknowledged, the parties hereto mutually agree that the said Lease is hereby further amended as follows:

1.   The rental adjustment provided in Article 7(b) appearing on pages 5 and 6 of the said Second Amendment to Lease, and the other modifications to the Lease as set forth in the said Second Amendment, are hereby established to take effect as of November 8, 1988.

2.   It is mutually understood and agreed that the said Lease, as previously amended, shall be and remain in full force and effect and unmodified except as the same as specifically modified and amended hereby.  All covenants, terms, obligations and conditions of the said Lease, as previously amended, which are not modified or amended by this Third Amendment to Lease, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____            _____ (SEAL)
                                     W. G. Lassiter, Jr.
_____
/As to Landlord                               LANDLORD


                                     WINN-DIXIE STORES, INC.

_____            By _____
                                        Its                President
_____            Attest _____
As to Tenant                            Its                Secretary

                                            (CORPORATE SEAL)

                                               TENANT

- 2 -

STATE OF FLORIDA

COUNTY OF *Palm Beach*

The foregoing instrument was acknowledged before me this *10th*

day of *November* , 19 *88* , by W. G. LASSITER, JR.

(NOTARIAL SEAL)                    *Nancy L. Clark*
                                   Notary Public
                                   State and County aforesaid
                                   My commission expires:

                                        NOTARY PUBLIC STATE OF FLORIDA
                                        MY COMMISSION EXPIRES SEPT 28, 1990


STATE OF FLORIDA

COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this *25th*

day of *November* , 19 *88* , by *James Kufeldt*

and *J. S. Bryan, Jr.* President and _____ Secretary,

respectively, of WINN-DIXIE STORES, INC., a Florida corporation,

on behalf of the corporation.

(NOTARIAL SEAL)                    *Rebecca L. Sawyer*
                                   Notary Public
                                   State and County aforesaid
                                   My commission expires:

                                        REBECCA L. SAWYER
                                        Notary Public, State of Florida
                                        My Commission Exp. June 3, 1990

## FOURTH AMENDMENT TO LEASE

THIS FOURTH AMENDMENT TO LEASE, made this _24th_ day of _October_ , 1995, between W. G. LASSITER, JR., ( hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the heirs, legal representative, successors and assigns of the respective parties.

## W I T N E S S E T H:

WHEREAS, by Lease dated October 6, 1977, Landlord did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development known as Gardens Park Plaza, located at the southeast corner of Military Trail and Northlake Boulevard (Lake Park Road West), in the City of Palm Beach Gardens, County of Palm Beach and State of Florida, for an initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, now fixed as May 31, 1979, and expiring at midnight on May 30, 1999, and for such rentals and upon such terms and conditions as more particularly set forth therein, or within an Amendment; a short form of the Lease being recorded in Official Record Book 2759, page 912 of the Public Records of Palm Beach County, Florida; and

WHEREAS, the Lease was amended in certain respects by Supplemental Lease Agreement dated June 7, 1979; and

WHEREAS, the Lease was further amended by Second Amendment to Lease dated March 19, 1987; by Third Amendment to Lease dated November 8, 1988; and by Letter Agreement dated May 10, 1989; and

## TERMS OF AGREEMENT

IN CONSIDERATION of the facts mentioned above and the sum of Ten Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to Landlord, the receipt and sufficiency of which is acknowledged by Landlord, it is mutually agreed as follows:

n:\wpwln\miami\333-4th amd
July 24, 1995

APPROVED
AS TO FORM
_____
Division Mgr.
_____
Legal Dept.
Winn-Dixie Stores,
Inc.

This instrument was prepared by Kim Rice Bongiovanni, Attorney at Law, whose address is 5050 Edgewood Court, Jacksonville, Florida 32205.

1.     Landlord and Tenant have mutually agreed to expand the demised store premises. Tenant covenants and agrees to proceed in accordance with the terms, covenants, and conditions of the Lease as modified hereby, to erect or cause to be erected a permanent addition measuring approximately sixty (60) feet in width by one hundred sixty (160) feet in depth on the left and easterly side of the present demised store premises. The addition shall include both existing building area and newly constructed building area. In addition, Tenant agrees to revise the vestibule at the front of the store and receiving areas at the rear of the store. the expanded store premises will contain approximately forth-six thousand four hundred ninety-one (46,491) square feet. Tenant agrees that it shall, in accord with all governmental requirements, remodel and enlarge Tenant's store premises. Tenant will make other renovations and alterations of its existing store building necessary or desirable to make the enlarged and remodeled building suitable for use by tenant in the conduct of its business. The building addition and related improvements shall be of like structural and architectural quality as the existing building for tenant, and all work shall be performed in a first class, good and workmanlike manner and in conformity with plans and specifications (including, but not limited to, final working drawings and specifications) which have been prepared by an architect selected by Tenant and which plans and specifications are hereby approved by both Landlord and Tenant.

Simultaneous or prior to Tenant's completion of enlargement of its demised premises, Landlord will, at its sole cost and expense, perform the following:

(a)    Upgrade and increase parking lot fixtures and lighting throughout entire shopping center parking lot to two (2) foot candle rating.

2.     In order to graphically portray the expansion of Tenant's demised store premises as contemplated by this Fourth Amendment to Lease, there is attached to this Agreement as Exhibit "A-1" a drawing of the proposed expanded store premises, prepared by A.J. Verde Architects, P.A., Miami, Florida, dated March 6, 1995, which drawing by this reference is incorporated herein as if set forth entirely in this Agreement. The drawing attached as Exhibit "A-1" shall depict Tenant's demised store premises and the shopping center layout. The site plan or layout drawing presently attached to the

2

Amendment to Lease as Exhibit "A" is deleted in its entirety. Upon execution of this Fourth Amendment to Lease, the plot plan or site plan attached to this Fourth Amendment to Lease as Exhibit "A-1" shall be the plot plan or site plan as to all references to such document or to Exhibit "A" or "A-1" contained in the Lease, and the Amendments thereto.

3.    (a)    In connection with the construction of the addition and vestibule, Tenant will incorporate into Tenant's existing store building adjacent local store area and vacant area presently not occupied and located left and easterly of Tenant's demised store premises. In event Landlord has made any legal or equitable commitment or created any right for use of the above described area, Landlord agrees to secure the removal of any lien or encumbrance (excluding mortgage liens but including furniture or trade fixtures and equipment) from such expansion area(s) on or prior to thirty (30) days from the date of this Lease Amendment. Landlord further agrees to deliver to Tenant within the time period the existing adjacent store area(s) free of structural defects, asbestos, hazardous materials, and with a water tight roof, to Tenant's specification (this latter requirement being specifically applicable to the existing easterly/left side expansion area). In the event Landlord is unable to do so, then Tenant may, at its sole option, cancel and terminate this Fourth Amendment to Lease, in which event the Lease, as previously amended, shall continue in full force and effect as if this Amendment had not been executed.

(b)    It is understood that the undertaking to construct the building addition and removal of the existing easterly walls of Tenant's building is predicated upon the construction cost (as defined in this Fourth Amendment) not exceeding an outside limit of $1,954,160.00, it being understood that Tenant has obtained a bid from a contractor satisfactory to Tenant and Landlord for construction in an amount no greater than the outside construction cost limit. The acceptable bid is comprised of construction costs, as defined below, and estimated impact fees. In the event the contractor increases the bid in excess of the outside construction cost limit, Tenant shall have the privilege of revising the plans and specifications, with such revisions are to be approved by Landlord and in the event the parties are unable in good faith based upon such revised plans and specifications to obtain a contract for construction at or below the outside construction

3

cost limit, then Tenant, at its option, shall have the election of either:  (a) agreeing to pay the excess of such cost over the outside construction cost limit or (b) agreeing to pay the excess of such cost over the outside construction cost limit or (b) declaring this Fourth Amendment to Lease null and void by giving written notice to Landlord, and upon Landlord's receipt of such notice both parties shall be relieved from any liability under this Fourth Amendment to Lease and the Lease shall continue in full force and effect as if this Fourth Amendment to Lease had not been executed.

4.    For the purpose of this Fourth Amendment to Lease, "construction costs" shall be defined to include the entire cost of construction of the building addition, including the removal of the existing wall(s) between the present demised store premises of Tenant and the addition area(s), conversion of the adjacent building(s) and construction of the new portions of the building area in the adjacent expansion area(s).  Tenant shall pay all costs of any and all of Tenant's merchandising fixtures and equipment.  Included within "construction costs" shall be the total cost of the contractor's performance bond, premium costs on builder's risk and Landlord's general liability insurance (only including insurance policies issued and providing coverage incident to the construction), including architectural and engineering fees and including the cost of any and all permits or licenses required by appropriate authorities during the course of construction.

Upon completion of the construction work, Tenant shall cause the General Contractor performing the construction to certify to Landlord the completion of the construction in accordance with the approved plans and specifications, and the issuance by applicable governmental authorities of final certificates of completion and occupancy, and the delivery to Landlord by Tenant of a contractor's affidavit of completion and certification of construction cost, and waivers of liens from all subcontractors, materialmen and suppliers.

In connection with the enlargement construction work, improvements and remodeling of the demised store premises, both parties agree to indemnify and hold harmless the other and Landlord's lender, from any mechanics', materialmens', or laborers' liens or encumbrances arising out of such enlargement construction work, improvements and remodeling of the demised store premises to be performed by the

4

parties, and to cause such liens, if any, to be promptly discharged. The parties also agrees, during the construction period, to indemnify and hold harmless the other from any claims of injury or death, to any person or for damages or loss to any property arising from the expansion and remodeling project.

5.     Tenant shall approve the construction work upon the demised store building, and specifically shall approve in writing all invoices for labor, materials and supervisory contractor's work, including soft costs, consisting of architectural fees, engineering fees and all other related incidental costs to erection of the contemplated addition to the demised store premises. Provided, Landlord shall have the right to inspect all construction work and to approve same as complying with the approved plans and specifications, and all other requirements, on a timely basis so as not to unreasonably delay the progress of the construction work.

6.     Upon completion of the building addition, vestibule and remodeling, receipt of a final Certificate of Occupancy for the related construction work and Tenant's opening for business in the enlarged remodeled store premises, the following further modifications to the Lease, as previously amended, shall take effect:

(a)     The addition to Tenant's building together with all related improvements contemplated in this Fourth Amendment, shall become a part of the demised premises, and when reference is made to the demised premises in the Lease, as amended, the same shall be construed to apply to the enlarged store building and the land on which the same shall stand.

(b)     The term of the Lease is now fixed to expire at midnight on May 30, 1999 and at this time no options have been exercised.

(c)     It is expressly agreed the five (5) option extension periods of five (5) years each shall be specifically retained shall follow consecutively upon the initial extended Lease term upon the same terms and conditions as contained in the Lease, as amended and as previously agreed between Landlord and Tenant, but at the revised rentals and further lease modifications as provided in this Fourth Amendment to Lease. Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least six (6) months before the expiration of the initial extended term, stating

5

(g)     Rentals shall be calculated and paid under the present applicable rates of the original Lease, until the rentals begin to accrue under the above substituted provisions, and the rentals for any month in which a change of rate occurs, shall be prorated between the previously effective rates and the rates effective after the date of rental adjustment.  The commencement date for the rental increase shall be the earlier of the final certificate of occupancy or completion of the enlarged demised premises and the grand re-opening celebration therein.

(h)     Article 2, appearing on page 5 of the Lease, shall be amended to add as the last sentence of paragraph one (1), the following:

"Tenant shall have the right to operate an automatic teller machine and a photo lab."

(i)     The responsibilities of the respective parties required by Article 10 appearing on page 8 ("TENANT'S REPAIRS") and Article 11 appearing on page 8 ("LANDLORD'S REPAIRS") of the Lease dated October 6, 1977, as amended, shall apply and extend to the addition, vestibule and other enlargements and improvements above described and required.

(j)     The Lease dated October 6, 1977, as amended, shall be further amended by deleting the first line through the eighth line (to the end of subparagraph (b)) of the second grammatical paragraph of Article 7 on page 7, and in lieu thereof inserting: "Landlord shall at all times during the term of this Lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A-1", and of sufficient area to provide in the Shopping Center, at all times, (a) a minimum ratio of at least 5.2 automobile parking spaces for each 1,000 sq. ft. of gross building area (including addition floor levels) in the shopping center, and (b) facilities in the Shopping Center for convenient parking of at least 684 automobiles (minimum);".

(k)     The Lease dated october 6, 1977 shall be further amended by deleting the figure "311" from the sixth line of the second grammatical paragraph of Article 19 on page 11, and in place thereof inserting the figure "615".

(l)     Article 36 of the Lease as amended by Article 7(d) of the Second Amendment to Lease shall be further modified so as to delete the substituted figures and

7

the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this Lease, as amended, shall be so extended without the execution of any other or further document.

(d)     The Lease, as amended, is further amended to provide that instead of the rentals provided in Article 1 of the Lease as amended by Article 7(b) of the Second Amendment to Lease dated March 17, 1987, for the remainder of the initial Lease term and during any exercised option extension periods thereafter, Tenant agrees to pay to Landlord, as minimum guaranteed annual rental for the enlarged demised premises, the sum of Two Hundred Sixteen Thousand Eight Hundred Eight and 00/100 Dollars ($216,808.00). The annual minimum guaranteed rental shall be payable in twelve equal monthly installments of Eighteen Thousand Sixty-Seven and 33/100 Dollars ($18,067.33) payable on the first day of each month in advance during the remainder of the initial term of this Lease commencing in accord with the terms of this Fourth Amendment to Lease and continuing during any exercised option extensions.

(e)     In addition, the percentage rentals as set forth in Article 1 of the Lease as amended by said Second Amendment to Lease, for the remainder of the initial Lease term, and during any exercised option extension periods thereafter, shall be a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales from the enlarged demised premises in each fiscal year of Tenant ending approximately June 30 of each year exceeds $13,973,799.00. Landlord agrees that Tenant shall have the right to reimburse itself from any percentage rents, in excess of $21,680,000.00, for Tenant's contribution toward the construction cost of the building addition, in the amount of $1,954,160.00, together with annual interest at the rate of New York prime rate plus two (2%) percent from the date of completion of construction. This right of reimbursement shall be cumulative and shall continue until Tenant has fully reimbursed itself for the full amount of principal and interest.

(f)     The parties hereto agree to execute a further supplement to the Lease for the purpose of fixing the minimum annual guaranteed rentals and the new modified provisions of the Lease as provided in this Fourth Amendment to Lease.

6

in lieu thereof the following figures shall be substituted: "$7,092.50" and "$591.04", respectively.

(m)    As to Tenant's present existing store building, no change to the existing Lease provisions as amended by Article 7(c) of the Second Amendment to Lease is intended and the existing Lease provisions shall continue in full force and effect except to the extent expressly modified by this Fourth Amendment to Lease. (Except for the ad valorem taxes on the original demised premises of 25,600 sq. ft., the contributions made to Landlord by Tenant are not deductible against percentage rentals.) With respect to the 10,441 sq. ft. building addition contemplated herein only, Tenant shall also make the following additional payments to Landlord:

(i))    Tenant agrees to pay to Landlord the amount of the premiums for Landlord's liability insurance covering the shopping center common areas. Tenant shall be responsible only for its pro-rata share of such premiums, Tenant's pro-rata share to be an apportionment made in the ratio which the 10,441 sq. ft. addition herein contemplated bears to the total square footage of the ground floor of all buildings from time to time existing in the shopping center, including Tenant's store building. The amount of premiums for which Tenant is to reimburse Landlord shall be less any available abatements, discounts or refunds thereon. Landlord shall at all times use its best and earnest efforts to obtain such coverage at the most reasonable rates available. Tenant shall be entitled to receive from the Landlord copies of the statements for such insurance premiums. Tenant shall not be required to make any such payments when the detailed statement of such premiums is delivered to Tenant later than December 31 of the calendar year following the year for which such payments were due, provided written notice is previously sent to Landlord by Tenant regarding Landlord's failure to deliver a statement for such premiums. Further, Tenant shall not be required to make the payments herein described unless and until Tenant is furnished with photocopies of the applicable insurance policy to include the declaration page.

(ii))    Tenant agrees to pay to Landlord as additional rental the Tenant's pro-rata share of the premiums for Landlord's fire and extended

8

coverage insurance allocable to the 10,441 sq. ft. addition herein contemplated. Tenant's pro-rata share of such premiums shall be an apportionment made in the ration which the 10,441 sq. ft. addition bears to the total square footage of the ground floor of all buildings from time to time existing in the shopping center, including Tenant's store building. The amount of premiums for which Tenant is to reimburse Landlord shall be less any available abatements, discounts or refunds thereon. Landlord shall at all times use its earnest and best efforts to obtain such fire and extended coverage insurance at the most reasonable rates available. Tenant shall be entitled to receive from the Landlord copies of the statements for such insurance premiums. Tenant shall not be required to make any such payments when the detailed statement of such premiums is delivered to Tenant later than December 31 of the calendar year following the year for which such payments were due, provided written notice is previously sent to Landlord by tenant regarding Landlord's failure to deliver a statement for such payments. Further, Tenant shall not be required to make the payments herein described unless and until Tenant is furnished with photocopies of the applicable insurance policy to include the declaration page.

(((iii)) Tenant agrees to pay to Landlord the amount of taxes levied against the 10,441 sq. ft. addition herein contemplated. Tenant shall be responsible only for its pro-rata share of such taxes for fractional years occurring at the beginning and expiration of the initial term of this Lease and any extensions thereof. Tenant's pro-rata share shall be made in the ratio in which the 10,441 sq. ft. addition of Tenant herein contemplated bears to the total square footage of all store buildings (including additional floor levels) from time to time existing in the shopping center. The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any available abatements, discounts or refunds thereon, whether or not taken by Landlord. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any taxes are chargeable to Tenant

9

and an "as-built" survey of the shopping center, and such additional rental shall be payable by Tenant on demand after payment by Landlord.

The term "taxes" as used herein shall mean and include all of the following: (A) all ad valorem real estate taxes levied on the shopping center (B) special utility related charges such as solid waste fees which are billed as part of the ad valorem tax statement or similar charges directly related to the specific use of the demised premises; and (C) legal fees and other expert fees incurred by Landlord in negotiating to keep taxes from rising or to reduce taxes, or expenses in legal proceedings to accomplish such purposes.

If the taxes allocable to Tenant's demised premises are separately stated in Landlord's tax bill, or in the alternative, if Landlord can determine the taxes attributable or allocable to the demised premises by receiving a certification or letter from the tax assessor confirming such taxes allocable or attributable to the demised premises separately, then Tenant shall pay the amount of the taxes so determined and in addition through its pro-rata share of the taxes on the shopping center land and common area improvements; but the taxes for the demised premises shall be deemed not to have been assessed separately if they cannot be determined by reference to the tax bill or the assessor's records as just mentioned and in such case, the following paragraph shall apply:

If such taxes shall not be assessed separately, but shall be included within an assessment of the demised premises and others, said assessment shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio as above described.

Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes or assessments aforementioned, and to institute such proceedings in the name of the Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to the Landlord; and provided still further, that Tenant shall take no contest or protest action which results in the

10

institution of any foreclosure proceedings or similar action by the holder of a security deed against the demised premises. Tenant shall not be required to make any such payments when the detailed statement of such ad valorem taxes is delivered to Tenant later than December 31 of the calendar year following the year for which the payments were due, provided written notice is previously sent to Landlord by tenant regarding Landlord's failure to deliver a statement for such taxes.

7.       Landlord shall obtain the written consent of any lenders to this amendment, providing that the Lease, as amended hereby, shall remain in full force and effect and prior to any loan documents or subject to any subordination, non-disturbance and attornment agreement between the lender and Tenant.

8.       It is mutually understood and agreed that the Lease, as previously amended, shall be and remain in full force and effect and unmodified except as the same is specifically modified and amended hereby. All covenants, terms, obligations and conditions of the Lease, as previously amended and as amended hereby, are hereby ratified and confirmed.

9.       Except for real estate taxes on the original demised premises of 25,600 sq. ft., none of the expenses paid to Landlord by the Tenant are deductible against percentage rents.

**IN WITNESS WHEREOF,** the parties hereto have caused this instrument to be

11

executed by the parties as of the date stated at the beginning of this Fourth Amendment to Lease.

**Signed, sealed and delivered**
**in the presence of:**

Printed Name: _DEBRAH A. MARSHALL_    W.G. LASSITER, JR.

Printed Name: _Mellisa Bronikowski_    PrintedName: _W. G. Lassiter, Jr._
Address: _505 S. Flagler Drive_
_Suite 1300, West Palm Beach, FL 33401_

As to Landlord

**LANDLORD**

**WINN-DIXIE STORES, INC.**

Printed Name: Cynthia N. Crossland    By: _____
Its _____ President
Printed Name: _James Kufeldt_
Address: 5050 Edgewood Court
Jacksonville, FL 32254-3699

Printed Name: Rebecca L. Sawyer    Attest: _____
Its Assistant Secretary
Printed Name: _W.D. SMITH, JR._
As to Tenant    Address: 5050 Edgewood Court
Jacksonville, FL 32254-3699

(CORPORATE SEAL)

**TENANT**

12

STATE OF FLORIDA

COUNTY OF _PALM BEACH_

The foregoing instrument was acknowledged before me this _3RD_ day of _October_, 1995, by **W.G. LASSITER, JR.** Such person: *(notary must check applicable box)*

☑ is/are personally known to me.

☐ produced a current Florida driver's license as identification.

☐ produced _____ as identification.

{Notary Seal must be affixed}

_Deborah A. Marshall_
Signature of Notary

Name of Notary (typed. Printed or Stamped)
Commission Number (if not legible on seal): My Comm Expires
My Commission Expires (if not legible on seal): Jan. 26, 1997
No. CC255457

STATE OF FLORIDA

COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this _24th_ day of _October_, 1995, by _James Kufeldt & W. A. Smith Sr._ the _____ President of Asst. Secretary **WINN-DIXIE STORES, INC.**, a Florida corporation, on behalf of the corporation.

Such person(s): *(notary must check applicable box)*

☑ is/are personally known to me.

☐ produced a current Florida driver's license as identification.

☐ produced _____ as identification.

{Notary Seal must be affixed}

_Joni Elizabeth DeWitte_
Signature of Notary

Name of Notary (typed. Printed or Stamped)
Commission Number (if not legible on seal): _____
My Commission Expires (if not legible on seal): _____

JANE ELIZABETH DeWITTE
My Comm. Exp. May 18, 1996
Comm. No CC 201960

13

CONSENT AGREEMENT


       Great Western Bank, a Federal Savings Bank, as Mortgagee under that certain Mortgage dated March 13, 1978 and recorded March 13, 1978, in Official Record Book 2824 at Page 1659, Public Records of Palm Beach County, Florida, and as assignee under that certain Assignment of Leases, Rents and Profits dated March 13, 1978, hereby consents to that certain Fourth Amendment to Lease dated _____, 1995 between W. G. Lassiter, Jr., as Landlord and Winn-Dixie Stores, Inc., a Florida corporation, as Tenant.

Date: ____10 -6 -95_____


GREAT WESTERN BANK,
A FEDERAL SAVINGS BANK


By _____
    Mark DeMik,
    Vice President



State of California          }
                              }
County of Los Angeles    }


    On _Oct. 6_, 1995 before me, _JOAN SERIN_ personally appeared Mark DeMik personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.


WITNESS my hand and official seal.


_____
    Signature of Notary                     (seal)



JOAN SERIN
COMM. #1050024
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Feb. 3, 1999

<u>CONSENT</u>

REPUBLIC SECURITY BANK, f/k/a Republic Savings and Loan Association ("Lender"), as the holder of a mortgage encumbering the premises described in the hereinafter described Fourth Amendment to Lease, and as holder of a certain collateral assignment of the Landlord's interest in the Lease therein described and the rents due thereunder, dated October 6, 1977, hereby consents to that certain Fourth Amendment to Lease dated _Oct 24_____, 1995, between W.G. Lassiter, Jr. and Winn-Dixie Stores, Inc., a copy of which is attached hereto. All further amendments to the lease must be consented to by the Lender.

IN WITNESS WHEREOF, Republic Security Bank, has caused this consent to be executed in its corporate name and its corporate seal to be hereunto affixed and attested by its officer thereunto duly authorized this _21_ day of _NOV_____, 1995.

Signed, sealed and delivered
in the presence of:

_Brenda J. Burkhammer_
Brenda J. Burkhammer
(print witness name)

_Dawn McRae_
Dawn McRae
(print witness name)

REPUBLIC SECURITY BANK

By: _____
              (print name)
Its: _Sr. Vice_President

(CORPORATE SEAL)

STATE OF FLORIDA     )
                     ) SS:
COUNTY OF PALM BEACH )

The foregoing instrument was acknowledged before me this _21st_ day of _November_____, 1995, by _Roger P. Savage_____, the _Sr. Vice_ President of Republic Security Bank, a bank chartered under the laws of the State of Florida, on behalf of the bank, who is personally known to me ~~OR who produced~~ _____
_____ ~~as identification~~ and who did _Not_ take an oath.

_Brenda J. Burkhammer_
Notary Signature

_Brenda J. Burkhammer_
Print Notary Name

NOTARY PUBLIC
State of Florida at Large

My Commission Expires:

H:\1697\10140\DKY1113.AZA\HC
11/13/95

BRENDA J. BURKHAMMER
My Comm Exp. 12/21/97
Bonded By Service Ins
No. CC325002
[ ] Personally Known   [ ] Other I.D.

## FIFTH AMENDMENT TO LEASE

**THIS FIFTH AMENDMENT TO LEASE**, made this _19th_ day of _November_, 1996, between **W. G. LASSITER, JR.**, (hereinafter called "Landlord") and **WINN-DIXIE STORES, INC.**, a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the heirs, legal representative, successors and assigns of the respective parties.

## W I T N E S S E T H:

**WHEREAS**, by Lease dated October 6, 1977, Landlord did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development known as Gardens Park Plaza, located at the southeast corner of Military Trail and Northlake Boulevard (Lake Park Road West), in the City of Palm Beach Gardens, County of Palm Beach and State of Florida, for an initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, now fixed as May 31, 1979, and expiring at midnight on May 30, 1999, and for such rentals and upon such terms and conditions as more particularly set forth therein, or within an Amendment; a short form of the Lease being recorded in Official Record Book 2759, page 912 of the Public Records of Palm Beach County, Florida; and

**WHEREAS**, the Lease was amended in certain respects by Supplemental Lease Agreement dated June 7, 1979; by Second Amendment to Lease dated March 19, 1987; by Third Amendment to Lease dated November 8, 1988; and by Letter Agreement dated May 10, 1989, and by Fourth Amendment to Lease dated October 29, 1995; and

## TERMS OF AGREEMENT

**IN CONSIDERATION** of the facts mentioned above and the sum of Ten Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to Landlord, the receipt and sufficiency of which is acknowledged by Landlord, it is mutually agreed as follows:

1.    Landlord and Tenant have mutually agreed to expand the demised store premises pursuant to the terms contained in the Fourth Amendment to Lease.

2.    Landlord and Tenant desire to amend the Fourth Amendment to Lease to reflect the parties intentions with respect to the construction of the enlargement of the demised premises.

3.    The second paragraph of Article 4 appearing on page 4 of the Fourth Amendment to Lease shall be deleted in its entirety and replaced with the following:

Upon completion of the construction work, Tenant shall cause the General

O:\transfer\miami\333.5th.amd
8/21/96

1

by the parties as of the date stated at the beginning of this Fourth Amendment to Lease.

**Signed, sealed and delivered
in the presence of:**

_Deborah A. Marshall_
Printed Name: DEBORAH A. MARSHALL

_Tanya L. Latham_
Printed Name: Tanya L. Latham

As to Landlord

_W.G. Lassiter, Jr._ _____ (SEAL)
**W.G. LASSITER, JR.**
Address: _505 Sv. Flagler Dr._
_Suite 1300_
_West Palm Beach 7/ 33401_

**LANDLORD**

**WINN-DIXIE STORES, INC.**

By: _James Kufeldt_
Its _____ President
Printed Name: James Kufeldt
Address:    5050 Edgewood Court
            Jacksonville, FL 32254-3699

_Rebecca L. Sawyer_
Printed Name: Rebecca L. Sawyer

Attest: _N/A_
        Its  Assistant Secretary
Printed Name: _____
Address:    5050 Edgewood Court
            Jacksonville, FL 32254-3699

_Jane E. DeWitte_
Printed Name: Jane E. DeWitte

As to Tenant

**(CORPORATE SEAL)**

**TENANT**

4

STATE OF __FLORIDA__
COUNTY OF __PALM BEACH__

The foregoing instrument was acknowledged before me this __10th__ day of __SEPT.__, 1996, by **W.G. LASSITER, JR.** Such person: *(notary must check applicable box)*

☑  is/are personally known to me.

☐  produced a current Florida driver's license as identification.

☐  produced _____ as identification.

{Notary Seal must be affixed}

__Deborah A. Marshall__
Signature of Notary

Name of Notary (typed, Printed or Stamped)
Commission Number (if not legible on seal):_____
My Commission Expires (if not legible on seal):_____

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this __19th__ day of __November__, 1996, by ___James Kufeldt___, the _____ President of **WINN-DIXIE STORES, INC.,** a Florida corporation, on behalf of the corporation. Such person(s): *(notary must check applicable box)*

☑  is/are personally known to me.

☐  produced a current Florida driver's license as identification.

☐  produced _____ as identification.

{Notary Seal must be affixed}

__Jane E. DeWitte__
Signature of Notary

Name of Notary (typed, Printed or Stamped)
Commission Number (if not legible on seal):_____
My Commission Expires (if not legible on seal):_____

JANE E. DeWITTE
My Comm. Exp. May 18, 2000
Comm. No CC 527798

5

CONSENT

REPUBLIC SAVINGS AND LOAN ASSOCIATION, a Florida corporation, as the holder of a mortgage encumbering the premises described in the foregoing Fourth Amendment to Lease, and as holder of a certain collateral assignment of the Landlord's interest in the Lease therein described and the rents due thereunder, dated October 6, 1977, hereby consents to the foregoing Fifth Amendment to Lease and agrees that it shall not be construed as a violation of any of the terms and conditions contained in its said mortgage or said collateral assignment of rents and lease.

IN WITNESS WHEREOF, REPUBLIC SAVINGS AND LOAN ASSOCIATION, has caused this consent to be executed in its corporate name and its corporate seal to be hereunto affixed and attested by its officers thereunto duly authorized this _13th_ day of _September_, 1996.

Signed, sealed and delivered
in the presence of:

Printed Name: _Melissa Chaple_

Printed Name: _Melissa Chaple_

REPUBLIC SECURITY BANK formerly known as REPUBLIC SAVINGS AND LOAN ASSOCIATION, a Florida corporation,

By _____
Printed Name: Roger P. Savage
   Its  Senior Vice President

Attest _____
Printed Name:   Daniel N. Benson
   Its  _____ Vice President


CORPORATE SEAL
LENDER

STATE OF _Florida_
COUNTY OF _Palm Beach_

The foregoing instrument was acknowledged before me this _13th_ day of _September_, 1996, by _Roger P. Savage_, Sr. V. President and _Daniel N. Benson_, Vice President, respectfully, of REPUBLIC SAVINGS AND LOAN ASSOCIATION, a Florida corporation,* on behalf of the corporation. Such person: *(notary must check applicable box)*

☒   *now known as REPUBLIC SECURITY BANK*
    is/are personally known to me.

☐   produced a current Florida driver's license as identification.

☐   produced _____ as identification.

{Notary Seal must be affixed}   _Brenda J. Burkhammer_
                                 Signature of Notary

BRENDA J. BURKHAMMER
My Comm Exp. 12/21/97
Bonded By Service Ins
No. CC325002
[X] Personally Known   [ ] Other I.D.

Name of Notary (typed, Printed or Stamped)
Commission Number (if not legible on seal): _____
My Commission Expires (if not legible on seal): _____

CONSENT

**GREAT WESTERN BANK, a Federal Savings Bank ("Great Western),** as the holder of a mortgage encumbering the premises described in the Fourth Amendment to Lease, and as holder of a certain collateral assignment of the Landlord's interest in the Lease therein described and the rents due thereunder, dated October 6, 1977, hereby consents to the foregoing Fifth Amendment to Lease and agrees that it shall not be construed as a violation of any of the terms and conditions contained in its said mortgage or said collateral assignment of rents and lease, provided, however, that notwithstanding the foregoing, this Consent does not and shall not be interpreted as obligating Great Western or Great Western's successors for any portion of the reimbursement amount agreed to by Landlord under the Fifth Amendment to Lease if Great Western, or any of its successors, should acquire the Property through foreclosure or otherwise

**IN WITNESS WHEREOF, GREAT WESTERN BANK,** has caused this consent to be executed in its corporate name and its corporate seal to be hereunto affixed and attested by its officers thereunto duly authorized this 29ᵗʰ day of _____Oct._____, 1996.

**Signed, sealed and delivered
in the presence of:**

**GREAT WESTERN BANK,
A Federal Savings Bank**

_____
Printed Name   Sue Sugii

By _____
     Mark DeMik
     Its Vice President

_____
Printed Name   Rachel M. Castillo

Attest _____
Printed Name  Mickey Driscoll

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On this 29th day of October, 1996, before me, the undersigned, a Notary Public in and for said County, personally appeared Mark DeMik known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

JOAN SERIN
COMM. #1050024
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Feb. 3, 1999

## SECOND SUPPLEMENTAL LEASE AGREEMENT

**THIS SUPPLEMENTAL LEASE AGREEMENT** (the "Agreement") is made as of December 18, 1997, (the "Effective Date"), between **WINN-DIXIE STORES, INC.,** a Florida  corporation (the "Tenant") and **GARDENS PARK PLAZA LTD.,** a Florida general partnership (the "Landlord").
                                   LIMITED

## R E C I T A L S:

1.      Landlord and Tenant are parties to that certain lease dated October 6, 1977, as amended and/or evidenced by: (a) Short Form Lease dated October 6, 1977, recorded in Official Records Book 2759, page 912 of the public records of  Palm Beach County, Florida; (b) Letter Agreement dated February 19, 1979; (c) Supplemental Lease Agreement dated June 7, 1979; (d) Letter Agreement dated July 9, 1985; (e) Second Amendment to Lease dated March 19, 1987; (f) Third Amendment to Lease dated November 10, 1988 (g) Letter Agreement dated May 10, 1989; (h) Fourth Amendment to Lease dated October 19, 1995 and (i) Fifth Amendment to Lease dated November 19, 1996  (collectively, the "Lease").

2.      The Fifth Amendment provided for Tenant's demised store building to be expanded (the "Expanded Premises"), for certain construction activities to be performed by Tenant ("Tenant's Improvements") and, upon completion of Tenant's Improvements and Tenant's commencement of business, for the Lease to be amended to fix the date for commencing the new minimum annual guaranteed rentals, the new amount payable as additional rental for common area maintenance expenses and ad valorem real estate taxes, and the new base for payment of percentage rentals as provided in the Fifth Amendment.

3.      Tenant's Improvements were completed and Tenant began doing business in the Expanded Premises on the Effective Date.

**NOW THEREFORE,** for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant agree as follows:

1.      The foregoing recitals are true and correct in every respect and incorporated herein by reference.

2.      The term of the Lease, subject to Tenant's rights of extension as ratified in the Fourth Amendment to Lease, shall expire on May 30, 1999 (the "Term").

3.      Beginning on the Effective Date and continuing throughout the Term, Tenant shall pay to Landlord the new minimum annual guaranteed rentals, the new amount payable as additional rental for common area maintenance expenses and ad valorem real estate taxes, and percentage rentals based upon the new base for such payment established under the Fifth Amendment for such Term.

4.    Except as expressly modified herein, the Lease remains in full force and effect as written.

**IN WITNESS WHEREOF**, the parties hereto have signed and sealed this Agreement on the date first set forth above.

Signed, sealed and delivered
in the presence of:

Print name: _AMY P. WILEY_

Print name: _BRENDA J. _____

**WINN-DIXIE STORES, INC.**

By: _____
_James Kufeldt_
Its:  President
Date: _7/13/98_

Print name: _MARTHA OWENS_

Print name: _____

**GARDENS PARK PLAZA LTD.**

By: _____
_GARDENS PARK PLAZA, INC. GENERAL PARTNER_
Its: _PRESIDENT_
Date: _8/5/98_

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this _July_ _13_, 1998, by _James Kufeldt_, as _____ President of **WINN-DIXIE STORES, INC.**, a Florida corporation, on behalf of the corporation, who is personally known to me.

Printed Name: _LUCY W. McCOOK_
Notary Public, State and County aforesaid.
My Commission Expires: _____
Notary ID No.: _____
(NOTARIAL SEAL)

STATE OF _FLORIDA_ )
COUNTY OF _PALM BEACH_ )

The foregoing instrument was acknowledged before me this _AUGUST_ _5_, 1998, by _W. G. LASSITER, JR_ * as _GENERAL PARTNER_ of **GARDENS PARK PLAZA LTD.**, a Florida general ~~LIMITED~~ partnership, ~~on behalf of the general partnership,~~ who [PLEASE CHECK ONE] _✓_ is personally known to me or _____ has produced _____ as identification.

*  , PRESIDENT OF GARDENS PARK PLAZA, INC.

Printed Name: _MARTHA OWENS_
Notary Public, State and County aforesaid.
My Commission Expires: _5/29/2002_
Notary ID No.: _CC 734431_
(NOTARIAL SEAL)

MARTHA OWENS
MY COMMISSION # CC 734431
EXPIRES: 05/29/2002
1-800-3-NOTARY  Fla. Notary Services & Bonding Co.

## CONSENT

**CRIIMI MAE SERVICES LIMITED PARTNERSHIP,** solely in its capacity as special servicer for the registered holders of First Union-Lehman Brothers Commercial Mortgage Trust II, Commercial Mortgage Pass-Through Certificates, Series 1997-C2 (the "Trust"), for which LaSalle National Bank is the trustee and First Union National Bank is the master servicer, hereby consents to the terms and conditions of this Second Supplemental Lease Agreement.

**WITNESS:**

Name: _Wendy L. Vadala_
Name: WENDY L. VADALA

Name: _Justin Fustenberg_

**CRIIMI MAE SERVICES LIMITED PARTNERSHIP,**
solely in its capacity as special servicer for the Trust

By:    CRIIMI MAE Services, Inc., its general partner

By: _____

Name: __Brian L. Hanson__
Title: __Senior Vice President__
Date: __October 6, 1998__

STATE OF _Maryland_  )
COUNTY OF _Montgomery_  )

The foregoing instrument was acknowledged before me this _October 6_____, 1998, by _Brian L. Hanson_, as _Senior Vice President_ of CRIIMI MAE SERVICES LIMITED PARTNERSHIP, special servicer for the registered holders of First Union-Lehman Brothers Commercial Mortgage Trust II, Commercial Mortgage Pass-Through Certificates, Series 1997-C2 (the "Trust"), who **[PLEASE CHECK ONE]** _X_ is personally known to me or _____ has produced _____ as identification.

Name: _____
Notary Public, State and County aforesaid.
My Commission Expires:_____ KAREN D. DEBLOIS
Notary ID No.:_____ NOTARY PUBLIC STATE OF MARYLAND
                            My Commission Expires May 1, 2001
(NOTARIAL SEAL)

Gardens Park Plaza, Ltd.
c/o Flagler Realty and Development, Inc.
505 South Flagler Drive, Suite 1010
West Palm Beach, Florida    33401
561-655-7200

February 14, 2005

Winn Dixie Stores, Inc.
Store #333
5050 Edgewood Court
Jacksonville, FL 32254

**RE: 2003 Common Area Maintenance, Insurance and Real Estate Tax**
**Gardens Park Plaza Store #333**
**Palm Beach Gardens, Florida**

|  | **ORIGINAL STORE AREA** |  |  |
|---|---|---|---|
| 1/1/04-12/31/04 | Real Estate Tax Shopping Center | $ | 254,053.79 |
|  | Less Base Year |  | (32,044.80) |
|  | Net Tax Billable |  | 222,008.99 |
|  | Your Contractual Percentage |  | 23.79% |
|  | Your Pro-rata Share | $ | 52,815.94 |

**1989 STORE EXPANSION**

Taxes and Insurance are due for the year 2004 on the expansion area of
10,450 sq. ft. These costs are **Not Deductible** against percentage rent.

| Taxes: | Assessment after expansion | $ 1,027,591.00 |
|---|---|---|
|  | Assessment before expansion | 748,254.00 |
|  | Increase in Assessed Value | 279,337.00 |
|  | Millage Rate | 24.720998 |
|  | Taxes Due on Expansion Area | $     6,905.49 |
| Insurance: | 2003 Premium | $    27,667.00 |
|  | 2004 Premium | 36,937.00 |
|  | Percentage of Increase (Decrease) | 0.34 |
|  | 2003 Premium Billed | 7,760.01 |
|  | x Percentage Increase (Decrease) | 34.00% |
|  | Your Share of 2004 Premium | $     2,638.40 |

"EXHIBIT" "B"

Winn Dixie Stores, Inc.
Gardens Park Plaza
February 14, 2005
Page Two

## 1997 STORE EXPANSION

Taxes and Insurance are due for the year 2004 on the expansion area of
10,441sq. ft.  These costs are **Not Deductible** against percentage rent.

| | | | |
|---|---|---|---:|
| Taxes: | Real Estate Tax Shopping Center | $ | 254,053.79 |
| | x Prorata Share (10,441/120,241sq. ft.) | | 8.68% |
| | | | 22,051.87 |
| Insurance: | Insurance for Shopping Center | $ | 69,481.10 |
| | x Prorata Share (10,441/120,241sq. ft.) | | 8.68% |
| | | | 6,030.96 |

| | | | | |
|---|---|---|---:|---|
| Summary: | Taxes due under Original Lease | $ | 52,815.94 | |
| | Taxes due on the 1989 Expansion | | 6,905.49 | * |
| | Insurance due on the 1989 Expansion | | 2,638.40 | * |
| | Taxes due on 1997 Expansion | | 22,051.87 | * |
| | Insurance due on 1997 Expansion | | 6,030.96 | * |
| | TOTAL 2004 EXPENSES DUE | $ | 90,442.66 | |

(*Not Deductible from Percentage Rents)

Please make your check payable to Gardens Park Plaza, Ltd. and remit to the
letterhead address.

| PROPERTY CONTROL NUMBER | YEAR | | | EXEMPTIONS | TAXABLE VALUE |
|---|---|---|---|---|---|
| 52 42 42 24 00 000 1470 | 2004 | 40 | 10,284,495 | | 10,284,495 |

BILLS LOUIS B SR ET AL
FLAGLER REALTY & DEV C/O
505 S FLAGLER DR # 1010
WEST PALM BEACH      FL   33401-5949

**LEGAL DESCRIPTION**
24-42-42, N 3/4 OF NW 1/4 OF NE 1/4 (LESS E 440 FT, N 75 FT NORTH LAKE BLVD & WLY 57.21 FTSR 809 RD R/WS)

| COLLECTOR NO | |
|---|---|
| 3-842-023-60 | JOHN K. CLARK, CFC, TAX COLLECTOR PALM BEACH COUNTY |

## AD VALOREM TAXES

| TAXING AUTHORITY | TELEPHONE | EXT. | MILLAGE | TAX AMOUNT |
|---|---|---|---|---|
| COUNTY | 561 355-3996 | | 4 5000 | 46,280.23 |
| COUNTY DEBT | 561 355-3996 | | 0 2677 | 2,753.16 |
| CITY OF PALM BEACH GARDENS | 561 799-4164 | | 5 7680 | 59,320.97 |
| CITY OF PALM BEACH GARDENS DEBT | 561 799-4164 | | 0 2580 | 2,653.40 |
| LIBRARY | 561 355-3996 | | 0 5403 | 5,556.71 |
| LIBRARY DEBT SERVICE | 561 355-3996 | | 0 0404 | 415.49 |
| CHILDRENS SERVICES COUNCIL | 561 655-1010 | | 0 6902 | 7,098.36 |
| F.I.N.D. | 561 627-3386 | | 0 0385 | 395.95 |
| PBC HEALTH CARE DISTRICT | 561 659-1270 | | 1 1000 | 11,312.94 |
| SCHOOL DEBT | 561 434-8837 | | 0 2740 | 2,817.95 |
| SCHOOL LOCAL | 561 434-8837 | | 2 5920 | 26,657.41 |
| SCHOOL STATE | 561 434-8837 | | 5 5660 | 57,243.50 |
| SFWMD EVERGLADES CONST PROJECT | 561 686-8800 | | 0 1000 | 1,028.45 |
| SO FLA WATER MANAGEMENT DIST. | 561 686-8800 | | 0 2840 | 2,920.79 |
| SO FLA WATER MGMT - OKEE BASIN | 561 686-8800 | | 0 3130 | 3,219.05 |

| | | TOTAL AD VALOREM | 229,674.36 |
|---|---|---|---|

## NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | TELEPHONE | EXT. | RATE | AMOUNT |
|---|---|---|---|---|
| SOLID WASTE AUTHORITY | 561 697-2700 | | 34,965.00 | 34,965.00 |

| | TOTAL NON-AD VALOREM | 34,965.00 |
|---|---|---|

| TOTAL AD VALOREM AND NON-AD VALOREM  COMBINED | 264,639.36 |
|---|---|

| AMOUNT DUE IF PAID IN | 254,053.79 | 256,700.18 | 259,346.57 | 261,992.97 | 264,639.36 | 272,584.54 | 304,917.37 |
|---|---|---|---|---|---|---|---|
| | NOVEMBER | DECEMBER | JANUARY | FEBRUARY | MARCH | APRIL/MAY | JUNE/JULY |
| | | | | | | DELINQUENT | |

**** DETACH HERE ****

| PROPERTY CONTROL NUMBER | YEAR | MTG | COLLECTOR NO |
|---|---|---|---|
| 52 42 42 24 00 000 1470 | 2004 | W42 | 3-842-023-60 |

BILLS LOUIS B SR ET AL
FLAGLER REALTY & DEV C/O
505 S FLAGLER DR # 1010
WEST PALM BEACH      FL   33401-5949

**LEGAL DESCRIPTION**
24-42-42. N 3/4 OF NW 1/4 OF  NE 1/4 (LESS E 440 FT. N 75 FT NORTH LAKE BLVD & WLY 57 21 FTSR 809 RD R/WS)

P.O. BOX  3353
WEST PALM BEACH , FL  33402-3353

045 - 576,424                12/03/2004

PAID                                254,053.79

DUPLICATE RECEIPT

MAKE CHECKS PAYABLE TO :
TAX COLLECTOR, PALM BEACH COUNTY

PAYMENTS AFTER MARCH 31st MUST BE BY CASH, MONEY ORDER, CERTIFIED CHECK, BANK DRAFT, US POSTAL ORDER, OR CASHIER'S CHECK.

| AMOUNT DUE IF PAID IN | 254,053.79 | 256,700.18 | 259,346.57 | 261,992.97 | 264,639.36 | 272,584.54 | 304,917.37 |
|---|---|---|---|---|---|---|---|
| | NOVEMBER | DECEMBER | JANUARY | FEBRUARY | MARCH | APRIL/MAY | JUNE/JULY |
| | | | | | | DELINQUENT | |