Hearing Date and Time:  April 12, 2005 at 10:00 a.m. (NY Time)
Objection Deadline:  April 5, 2005 at 4:00 p.m. (NY Time)

CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman (SR 4906)

*Attorneys for Wilmington Trust Company,
as Indenture Trustee for Winn-Dixie Stores, Inc.'s
$300 million $8^{7}/_{8}$ Senior Notes due 2008*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ x
In re:                                            :
                                                  :    **Chapter 11**
                                                  :
**WINN-DIXIE STORES, INC., <u>et al.</u>,**       :    Case No. 05-11063 (RDD)
                                                  :
          Debtors.                                :    (Jointly Administered)
                                                  :
------------------------------------------------------ x

**OBJECTION OF WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE,
AND JOINDER IN OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF WINN-DIXIE STORES, INC., *ET AL.*, TO MOTION OF BUFFALO
ROCK COMPANY SEEKING ENTRY OF AN ORDER, UNDER 28 U.S.C. § 1412,
<u>TRANSFERRING VENUE OF DEBTORS' CASES</u>**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

    Wilmington Trust Company ("<u>Wilmington</u>"), as indenture trustee for the $300 million in aggregate principal amount of eight and seven-eighths percent ($8^{7}/_{8}$%) senior notes due 2008 of Winn-Dixie Stores, Inc. (the "<u>Notes</u>"), by and through its undersigned counsel, Curtis, Mallet-Prevost, Colt & Mosle LLP, submits this Objection and joins in the Objection, dated April 5, 2005, filed by Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), which is incorporated herein by reference, in opposition to the motion, dated March

2267569v7

14, 2005, of Buffalo Rock Company (the "Motion") seeking entry of an order under 28 U.S.C. § 1412 to transfer venue of the above-captioned bankruptcy cases (the "Chapter 11 Cases") to the Bankruptcy Court for the Middle District of Florida.[1] In support of this Objection, Wilmington respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  Wilmington believes the Motion should be denied because (a) venue in this Court is proper for the Chapter 11 Cases, (b) most creditors prefer this Court as the venue for the Chapter 11 Cases over the Middle District of Florida (or the District of Louisiana, as requested by Ernst Properties), (c) New York is more convenient for the parties in the Chapter 11 Cases and (d) the cost of administering the Chapter 11 Cases may be significantly lower if the cases remain in this Court.

**BACKGROUND**

2.  On February 21, 2005, the Debtors commenced these Chapter 11 Cases by each filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

3.  The Debtors are continuing in the management of their businesses and properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.  The Notes were issued under an Indenture dated as of December 26, 2000, by and among Winn-Dixie Stores, Inc., the named Guarantors, and Wilmington Trust Company as Trustee, as amended and supplemented by the First Supplemental Indenture dated as of March

---

[1] The following parties have filed a joinder to the Motion: Riverdale Farms, Inc., Richard J. Ehster and Bradley T. Keller and Ernst Properties, Inc. ("Ernst Properties"). While Ernst Properties joined in the Motion's request to transfer venue of the Chapter 11 Cases, Ernst Properties requested that venue be transferred to the District of Louisiana rather than the Middle District of Florida.

29, 2001, and the Second Supplemental Indenture dated as of January 10, 2002 (collectively, the "Indenture").  As indenture trustee for the Notes, Wilmington bears a fiduciary responsibility for filing claims on behalf of, and otherwise representing the interests of, the holders of the Notes.

5. On March 30, 2005, the Debtors filed a response (the "Response") to the Motion seeking transfer of the Chapter 11 Cases.[2]  The Response is consistent with the representations the Debtors made in filing the Chapter 11 Cases in this Court.  Further, the Response reaffirms that each of the grounds for finding venue for the Chapter 11 Cases in this Court remains proper.  *See* Response, ¶¶ 1-3.

## ARGUMENT

### I. Venue is Proper in the Southern District of New York

6. Venue in the Southern District of New York is proper for the Chapter 11 Cases.  A debtor's choice of venue is governed by 28 U.S.C. § 1408(1), which provides that a petition under Chapter 11 may be filed in the district in which the debtor has had its domicile, residence, principal place of business, or principal assets during the 180 days immediately prior to the filing, or for a longer portion of such 180 day period than the domicile, residence, principal place of business, or principal assets were located in any other district.  Under 28 U.S.C. § 1408(2), affiliates of an entity which is the subject of a pending bankruptcy case may properly file their own bankruptcy cases in the same district.  This rule promotes judicial economy and efficient restructuring of related entities.

---

[2] The Response notwithstanding, the Debtors waived their right to request a change of venue for the Chapter 11 Cases by filing their bankruptcy petitions with this Court and participating in the Chapter 11 Cases before this Court. *See Block v. Citizens Bank* (*In re Moss*), 249 B.R. 200, 203 (Bankr. W.D. Mo. 2000) (filing a bankruptcy case "in a certain venue and subsequent participation in the case constitute[s] both consent to that venue and conduct waiving objections to that venue").  The Debtors' allegation that their request is motivated by the desire to avoid the "distraction" of the venue question is irrelevant.  Further, it seems that transferring the Chapter 11 Cases to another venue is likely to be greater "distraction from the reorganization process" than simply denying the Motion.  *See* Response, ¶ 4.

–3–

7. Dixie Stores, Inc. ("Dixie Stores") is a New York corporation, the principal assets of which are located in Manhattan, New York. *See* Voluntary Petition of Dixie Stores, Inc., Case No. 05-11061 (filed Feb. 21, 2005). Dixie Stores therefore properly filed its petition for relief under Chapter 11 in the Southern District of New York. Because Dixie Stores' Chapter 11 proceeding is properly filed and pending in New York, its affiliates, including the other Debtors, may also properly file in the same district.[3] *See* 28 U.S.C. § 1408(2); *In re Enron Corp.*, 274 B.R. 327, 341 (Bankr. S.D.N.Y 2002).

8. Where venue is proper, a debtor's choice of forum is entitled to deference, and "'where a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities lean[] but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed.'" *See In re Garden Manor Assocs.*, 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988) (quoting 1 J. Moore, *Moore's Federal Practice* ¶ 0.145[5] at 1616 (2d ed. 1988)); *see also Enron*, 274 B.R. at 342 ("Transferring venue of a bankruptcy case is not to be taken lightly.").

9. It is well settled that in a motion for change of venue, the burden is on the movant to prove by a preponderance of the evidence that the proceeding should be transferred. *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1390 (2d Cir. 1990); *In re Bell Tower Assocs., Ltd.*, 86 B.R. 795, 798-99 (Bankr. S.D.N.Y. 1988). The movant must demonstrate that the proposed transfer is "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. As discussed *infra*, these considerations strongly support the retention of this case in New York.

---

[3] Wilmington notes that a second Debtor, Table Supply Food Stores Co., Inc., also listed its principal assets as being located in Manhattan. *See* Voluntary Petition of Table Supply Food Stores Co., Inc., Case No. 05-11062 (filed Feb. 21, 2005).

–4–

## II. The Interest of Justice and the Convenience of the Parties Warrant Retention of Venue in New York.

### A. Interest of Justice.

10. The "interest of justice" component of the test regarding a proposed transfer of venue is "a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *In re Manville Forest Prods. Corp.*, 896 F.2d at 1391. It also "encompasses . . . inquiry as to the forum which facilitates the efficient, proper and expeditious functioning of the courts." *In re Pinehaven Assocs.*, 132 B.R. 982, 990 (Bankr. E.D.N.Y. 1991).

11. All of the factors mentioned in *Manville* and *Pinehaven* are best served by retaining this proceeding in New York. First, the Bankruptcy Court for the Southern District of New York has extensive experience in large and complex bankruptcy proceedings such as this one. *See*, *e.g.*, *In re WorldCom, Inc.*, Case No. 02-13533 (AJG) (Bankr. S.D.N.Y.); *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y.); *In re Global Crossing Ltd.*, Case No. 02-40188 (REG) (Bankr. S.D.N.Y.); *In re Adelphia Communications Corp.*, Case No. 02-41729 (REG) (Bankr. S.D.N.Y.); *In re Bethlehem Steel Corp.,* Case Nos. 01-15288 – 15302 and 01-15308 -15315 (BRL) (Bankr. S.D.N.Y.); *In re NTL, Inc.*, Case No. 02-41316 (ALG) (Bankr. S.D.N.Y.); *In re Reliance Group Holdings, Inc.*, Case No. 01-13404 (AJG) (Bankr. S.D.N.Y.); *In re Ionosphere Clubs, Inc.,* Case Nos. 89 B 10448 (BRL), 89 B 10449 (BRL) (Bankr. S.D.N.Y.); *In re Texaco, Inc.*, Case Nos. 87-20142 through 20144 (ASH) (Bankr. S.D.N.Y.). Notably, many of the complex bankruptcies brought in this District have involved debtors whose business operations were not centered in New York. For example, both Enron Corp. and Texaco, Inc. were based primarily in Texas. Bethlehem Steel was based primarily in Pennsylvania, NTL in the United Kingdom, and Eastern Airlines in Florida.

12. The Court's institutional knowledge, including its supervisory experience and its familiarity with the issues that arise in complex proceedings, will certainly aid in the efficient administration of the Debtors' estate.[4] *See Enron*, 274 B.R. at 349-50 (noting that the court's familiarity with similar types of cases favored retaining the case in New York). For example, the Court's Guidelines for Financing Requests, adopted September 2, 2002, facilitates the smooth progress of the cases by providing a thorough exposition of relevant considerations and detailed guidance in the preparation of cash collateral and financing requests.

13. Secondly, transfer of this proceeding would result in delay while another court both familiarizes itself with the facts and circumstances of this particular proceeding, and begins progress on the "learning curve" involved in the administration of a highly complex bankruptcy. *Enron*, 274 B.R. at 350; *Manville*, 896 F.2d at 1391 (affirming bankruptcy court's decision to retain a case where the court had already "developed a substantial 'learning curve' and . . . transferring venue would have delayed the final resolution of the bankruptcy case"). A transfer which forces a transferee court to rapidly acquire knowledge and experience already possessed by a court which may properly retain and administer the proceeding is inefficient and will cause unnecessary delay in the progress of the proceeding. Avoidance of delay is particularly crucial here due to the number of pending reclamation claims, including claims filed under the Perishable Agricultural Commodities Act, which require expedited resolution.

14. Also relevant to the determination is the fact that the primary credit and debt instruments at issue in this proceeding are governed by New York law. Each of the Indenture, the Debtors' Second Amended and Restated Credit Agreement, dated as of June 29, 2004, and the DIP Financing Agreement and the accompanying Security Agreement and

---

[4] Nonetheless, if venue for the Chapter 11 Cases were transferred to Florida (or Louisiana), Wilmington has no doubt that such courts have the requisite experience and would administer the Chapter 11 Cases competently and judiciously.

–6–

Guaranty Agreement is governed by New York law. It is therefore most efficient to have these documents interpreted by a New York court which already possesses familiarity with the relevant provisions of New York law. *See Pinehaven*, 132 B.R. at 990 (remarking that consideration of the interest of justice "would include looking into the desirability of having a judge familiar with the applicable law hear and determine issues arising in the case"). Transfer to a court that would be required to gain equivalent familiarity with New York law only increases the burden placed on the transferee court and the unnecessary delay in the proceeding.

### B. Convenience of the Parties.

15. In assessing the convenience of the parties, courts consider the economic administration of the estate, the proximity to the Court of creditors, the debtor, and the witnesses necessary to the administration of the estate, the location of the debtor's assets, and the necessity for ancillary administration if liquidation should result. *See In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979) (hereinafter "*CORCO*").

(i) Economic Administration of the Estate.

16. The most important consideration is the economic administration of the estate. *In re Garden Manor Assocs.*, 99 B.R. at 554. "The heart of a [Chapter 11] proceeding is working up a financial plan of arrangement acceptable to all relevant parties." *CORCO*, 596 F.2d at 1247. Economic administration of the estate "translates into inquiry of the need for post-petition financing pursuant to Sec. 364 of the [Bankruptcy Code], the need to obtain financing to fund a plan of arrangement and the location of the sources of that financing and the management personnel in charge of obtaining it." *In re Int'l Filter Corp.*, 33 B.R. 952, 956 (Bankr. S.D.N.Y. 1983); *see also Enron*, 274 B.R. at 348; *In re Land Stewards, L.C.*, 293 B.R. 364, 370 (Bankr. E.D. Va. 2002). Because the primary goal of the Chapter 11 proceeding is the debtor's financial rehabilitation, the proceeding should take place in the location that is most conducive to meeting

this goal. *See CORCO*, 596 F.2d at 1247; *Land Stewards*, 293 B.R. at 370 ("The ability to raise capital, renegotiate loan terms and likely sources of capital are all Virginia based, and accordingly, Virginia is the more appropriate venue.").

17.     Here, financial rehabilitation of the Debtors can best be accomplished in New York. It is indisputable that New York is the financial center which offers the best access to capital markets and to the professional community that specializes in the financial revitalization of complex, distressed enterprises. *Enron*, 274 B.R. at 349 ("New York is a world financial center and, as such, has the resources that will be required to address the Debtors' financial issues."). Moreover, as a large transportation hub, New York is easily accessible to all parties-in-interest. *Id.* at 345, 349 (noting that New York's accessibility to creditors, stockholders, and legal and financial advisors weighs in favor of a New York venue).

18.     Numerous participants in these bankruptcy cases maintain offices in New York. Although located in Delaware, Wilmington has affiliates with offices in New York and its counsel is located in New York. Wachovia Bank National Association, Wells Fargo Foothill LLC, GMAC Commercial Finance LLC, and The CIT Group/Business Credit, Inc., parties to the Debtors' pre-petition credit facility, all maintain offices in New York. Two of the seven members of the Committee (Deutsche Bank Trust Company America and New Plan Excel Realty Trust) are located in New York and a third has retained counsel in New York. *See* Appointment of Committee of Unsecured Creditors, dated March 2, 2005. In addition, at least three other members of the Committee maintain offices in New York (OCM Opportunities Fund V, L.P., Kraft Foods Global, Inc. and Pepsico & Subsidiaries).[5]

---

[5] According to the firms' web sites, Kraft Foods maintains division headquarters in Tarrytown, New York and in East Hanover, New Jersey; Pepsico Inc. and Pepsico International both maintain offices in Purchase, New York; and Oaktree Capital Management, LLC (at the offices of which OCM Opportunities Fund V, L.P. is located, according to the Appointment of Committee of Unsecured Creditors) maintains an office in New York City.

–8–

19. Perhaps more importantly, nearly all of the professionals whose participation is essential to the resolution of the Debtors' troubles are located in or near New York. Three of the seven professional firms retained by the Debtor itself are in New York and one is in Montclair, New Jersey, within commuting distance from New York City. Counsel to the Committee, as well as counsel to Wachovia Bank National Association, which provided pre- and post-petition financing to the Debtors, are located in New York. A review of the list of parties available on PACER as of March 17, 2005, reveals that at least fifty parties identified as creditors are represented by New York-based counsel. In addition, five creditors are represented by counsel located in Philadelphia, and three by counsel in New Jersey.

20. Additionally, while many parties do not maintain New York locations, neither are most such parties conveniently located to Jacksonville, Florida. For example, according to the Appointment of Unsecured Creditors, dated March 2, 2005, the five non-New York based members of the Unsecured Creditors' Committee are located in Texas, Illinois, and California, hardly in proximity to Jacksonville, Florida. Likewise, two of the three entities holding the five largest secured claims, AmSouth Bank and the Lutheran Brotherhood, are located in Tennessee and Minnesota, respectively. *See* Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 in Support of First-Day Motions and Applications (the "Nussbaum Affidavit"), Schedule 2.

21. In determining whether to transfer venue, "the most important [factor] is where the economic administration of the chapter 11 cases can best be accomplished." *In re Suzanne de Lyon*, *Inc.*, 125 B.R. 863, 869 (Bankr. S.D.N.Y. 1991) (citation omitted). If the Chapter 11 Cases are transferred to another venue, each of the parties-in-interest will have to retain local counsel, often in conjunction with other counsel elsewhere, and possibly in addition to counsel that has already been retained in New York. Just as the Court has made significant

–9–

2267569v7

progress on the "learning curve" of these cases, so too have the counsel of various parties-in-interest. *Enron*, 274 B.R. at 350; *Manville*, 896 F.2d at 1391. Transferring the Chapter 11 Cases to a different venue would require much of this effort to be duplicated, in some cases, at the cost of the Debtors' estates, and in other cases, at the cost of individual parties-in-interest. The incurrence of such costs is not in the interest of the Debtors' estates or the holders of the Notes. Further, each of the parties-in-interest will incur substantial costs time traveling to and attending hearings in Florida.

        (ii)      <u>Proximity of Creditors to the Court</u>.

22. The proximity of creditors to the court also supports retention of venue in New York, not transfer to the Middle District of Florida. Many of the Debtors' fifty largest unsecured creditors listed on Schedule 1 to the Nussbaum Affidavit are corporate entities that operate throughout the United States and internationally. *See* Nussbaum Affidavit, Schedule 1. A brief review of the listed creditors reveals that they include such corporate giants as Pepsico, Kraft, Proctor & Gamble, Nestle, General Mills, Unilever, Coca-Cola, Sara Lee, Keebler, and Del Monte, to name only a few. *Id.* Corporations which maintain a national and even global presence do not suffer hardship by appearing in New York, an easily accessible financial and transportation center.

23. Even if the creditors included fewer industry giants, or were located solely in the cities identified on Schedule 1 to the Nussbaum Affidavit, the addresses provided by Debtors indicate that many creditors are located a significant distance from Jacksonville, Florida. *See* Nussbaum Affidavit, Schedule I. Only five of the Debtors' forty largest trade creditors are located in Florida. Ten are in Georgia; nine are in North Carolina; three are in Illinois; and there is one in each of New York, Connecticut, Pennsylvania, Minnesota, Missouri, Michigan, Tennessee, Mississippi, Louisiana, and California. The institutional creditors are an even more

geographically diverse group, with addresses in New York, New Jersey, Massachusetts, Pennsylvania, Wisconsin, Texas, California, Oregon, and Ontario, Canada. *Id.*

24. In *Land Stewards*, the court found that the location of creditors was not determinative in the decision as to whether to transfer venue, especially where "a significant percentage of creditors [were] located elsewhere. For example, seven out of twenty of the largest unsecured creditors [were] located outside of Maryland," the state to which transfer was sought. 293 B.R. at 370. Here, a transfer of venue to the Middle District of Florida would in no way reduce the burden on creditors of participation in the proceeding. On the contrary, more limited transportation options to Jacksonville would increase the costs and burden of participation, while the smaller local bankruptcy bar would limit creditors' options for the retention of local counsel and force many creditors to retain counsel elsewhere and pay for their transportation into Jacksonville to participate in the proceeding.

       (iii)    <u>Proximity of the Debtor, Witnesses and Assets</u>.

25. Although the Debtors maintain their headquarters and management in Jacksonville, Florida, this fact does not warrant the transfer of venue. Modern communications technology and electronic transmission of documents render the physical location of books and records virtually irrelevant. *See CORCO*, 596 F.2d at 1248 (noting that due to the availability of computerized access to records maintained in another jurisdiction, the location of such books and records did not weigh in favor of transfer).

26. Likewise, on those occasions when the participation of the Debtors' officers and directors may be required, it often may be accomplished through telephonic and video conferencing methods, reducing the inconvenience of travel to the Debtors. *See Enron*, 274 B.R. at 347. Moreover, if participation in person were required, the flight between New York and Jacksonville, Florida takes only approximately two and one-half hours. Electronic

case filing and the accessibility of court documents online mean that the Debtors' employees and agents in Florida and throughout the Southeast suffer no disadvantage as a result of distance. *Id.*

27. Additionally, the location of the Debtors' stores and assets throughout the southeastern United States does not support a transfer of venue. The location of the assets is not of primary importance in a Chapter 11 bankruptcy case. *Id.* at 347-48; *Land Stewards*, 293 B.R. at 371 (stating that the location of the debtor's assets in another jurisdiction "is not an important factor here and should not be the basis for the transfer of venue of these Chapter 11 cases"). This is particularly true where, as here, the assets are not centrally located, but spread over a wide geographical area. *See* Nussbaum Affidavit, Schedule 6 (indicating that the Debtors' stores cover a geographical area from Ohio to Texas to Florida); *Enron*, 274 B.R. at 348 ("[W]hile a debtor's location and the location of its assets are often important considerations in single asset real estate cases, these factors take on less importance where a debtor has assets in various locations.").

    (iv)  <u>The Necessity of Ancillary Administration</u>.

28. The potential need for ancillary administration in the event of liquidation does not support transferring this matter to Florida. First, the Chapter 11 Cases are at such an early stage that it is not necessary for this Court to "contemplate the failure" of the Debtors' reorganization efforts. *Enron*, 274 B.R. at 349. Second, as noted above, the Debtors' stores and assets are located throughout a wide geographical area, ranging as far north as Ohio and as far west as Texas. *See* Nussbaum Affidavit, Schedule 6. Consequently, whether liquidation proceedings were held in New York or Florida, the proceedings would be located at a distance from the majority of the assets located at the Debtors' stores and personnel familiar with the operations of those stores.

29. Finally, as the courts in *Enron* and *CORCO* recognized, "anticipation of the failure of the [Chapter 11] proceeding is an illogical basis upon which to predicate a

–12–

2267569v7

–13–

transfer." 596 F.2d at 1248 (citation omitted); *see also Enron*, 274 B.R. at 349. In each case, the court decided that the financial restructuring of the subject business took precedence, and retained venue in the district where assistance in such financial restructuring was available. This Court should likewise determine that the financial recovery of the Debtors takes precedence, and retain the proceeding in New York.

## **WAVIER OF MEMORANDUM OF LAW**

30. Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, as this Objection presents no novel issues of law, Wilmington respectfully requests that the Court waive the requirement for a memorandum of law in support of this Objection.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]

## **CONCLUSION**

For the reasons set forth above, and in the Committee's Objection to the Motion, in which Wilmington joins in its entirety and incorporates by reference as if fully set forth herein, Wilmington respectfully requests that the Court enter an order denying the Motion to transfer venue of the Chapter 11 Cases to the Middle District of Florida or another venue in its entirety.

Dated:    New York, New York
          April 5, 2005

        CURTIS, MALLET-PREVOST,
         COLT & MOSLE LLP

By:   /s/ Steven J. Reisman
      Steven J. Reisman
101 Park Avenue
New York, New York 10178-0061
Tel: (212) 696-6000
Fax: (212) 697-1559

*Attorneys for Wilmington Trust Company,*
*as Indenture Trustee for Winn-Dixie Stores, Inc.'s*
*$300 million $8 \frac{7}{8}$ Senior Notes due 2008*