Hearing Date: April 12, 2005 @ 10:00 a.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D. J. Baker (DB 0085)

Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., et al.,** | : | **Case No. 05-11063 (RDD)** |
| | : | |
| **Debtors.** [1] | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------x

## DEBTORS' REPLY TO LIMITED OBJECTION BY CANE RIVER ASSOCIATES TO THE DEBTORS' REJECTION OF CERTAIN UNEXPIRED REAL PROPERTY LEASES AND THE PROCEDURES ASSOCIATED WITH PROPOSED REJECTION OF ADDITIONAL LEASES

Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and

debtors-in-possession (collectively, the "Debtors"), respectfully submit this reply (the "Reply")

to the Limited Objection (the "Objection") filed by Cane River Associates ("Cane River") to the

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

Debtors' Motion to Reject Certain Unexpired Real Property Leases Effective as of the Petition Date (the "Motion").

## Issue Presented by Objection

1.      Cane River, the landlord under one of the 150 "dark store" leases that the Debtors sought to reject on the "first day" of these cases (the "Leases"), seeks the establishment of a notice period that is <u>over sixty (60) days longer</u> than the period given to the other landlords.  It seeks this lengthy period even though (a) it received the Motion prior to the expiration of the applicable objection deadline, and (b) it received notice of the Debtors' termination of the subject lease only three business days after such a notice was received by the other landlords.  For the reasons set forth below, it is respectfully submitted that Cane River has established no basis for this extraordinary notice period.

## Procedural Background

2.      On February 21, 2005 (the "Petition Date"), in connection with various requests for "first day" relief, the Debtors filed the Motion seeking to reject the Leases.  On February 22, 2005, the Debtors endeavored to serve a copy of the Motion on each of the landlords under the Leases (collectively, the "Landlords").  As reflected in the corresponding Affidavit of Service (Docket No. 121), the Motion was mailed on February 22, 2005 to Cane River at two addresses: (i) c/o Property One, Inc. (Cane River's leasing agent), at an address in Lake Charles, Louisiana and, (ii) c/o Protective Life Insurance Company, at an address in Birmingham, Alabama.

3.      On February 23, 2005, Judge Bernstein entered the Order Authorizing the Debtors to Reject Certain Real Property Leases, Effective as of February 28, 2005 (the "Order"). The Order authorized the rejection of each of the Leases, subject to any objections filed on or before March 10, 2005 (the "Objection Deadline").  As reflected in the corresponding Affidavit

of Service (Docket No. 127), on February 24, 2005, the Debtors endeavored to serve a copy of the Order on each of the Landlords, including Cane River by mail at the two addresses noted above.

4.      Also on or about February 24, 2005, the Debtors sent a letter (the "Turnover Notice"), along with the keys to the premises, via overnight delivery to Cane River at the Lake Charles, Louisiana address, explaining that due to the anticipated rejection of the lease, the keys to the premises were being returned.  A true copy of the Turnover Notice is attached hereto as Exhibit A.  On March 1, 2005, the Debtors learned that delivery of the Turnover Notice could not be completed at the Lake Charles address.  On that same date the Debtors resent the Turnover Notice and keys via overnight delivery to Cane River at a different address in Lafayette, Louisiana.  Cane River acknowledges that it received the Turnover Notice on March 2, 2005[2] -- a date which is only three (3) business days after the date on which the other Landlords would have likely received a similar turnover notice.  A true copy of the receipt evidencing delivery of the Turnover Notice is attached hereto as Exhibit B.

### Basis for Denying Relief Requested in Objection

5.      In the Objection, Cane River essentially argues (a) that it did not receive proper notice of the Debtors' intention to terminate the subject lease, (b) that it did not receive notice of the Motion, and (c) that for each of these reasons it should be granted a notice period that is over sixty (60) days longer than the notice period afforded to the other Landlords. But even if this Court were to accept that Cane River did not receive the Turnover Notice until March 2, 2005, and did not receive the Motion until March 9, 2005 (the date the Objection was filed), it is respectfully submitted that the relief Cane River requests would not be warranted.

6.     First, even if this Court were to conclude that Cane River did not receive the Motion until several days after it was received by the other Landlords, the fact that Cane River filed its Objection on March 9, 2005 provides incontrovertible evidence that Cane River had notice of the Motion prior to the passage of the Objection Deadline and availed itself of the right to file an Objection.  Accordingly, it is difficult to see how Cane River has been in any way prejudiced by any purported delay in its receipt of notice of the Motion.  The absence of prejudice is underscored by the Southern District's recognition that "a bankruptcy court is not prohibited from assigning a pre-objection rejection date." BP Energy Co. v. Bethlehem Steel Corp., 2002 WL 31548723 at * 4 (S.D.N.Y., Nov 15, 2002) (citations omitted).

7.     Similarly, no material prejudice can reasonably be said to have befallen Cane River by virtue of its receipt of the Turnover Notice only three (3) business days after the earliest date on which the other Landlords would have received such a notice[3] -- and certainly no amount of prejudice that would support Cane River's request for a notice period that is over sixty (60) days longer than the notice period afforded to the other Landlords.  Given the fact that only three (3) business days elapsed, to accept Cane River's argument would require the Court to conclude that the notice afforded to all of the other Landlords was somehow deficient – a conclusion belied not only by the Order, itself, but by the following case law emanating from this District that has recognized a bankruptcy court's authority, pursuant to its equitable power, to assign even a retroactive rejection date under section 365(a) of the Bankruptcy Code:

---

[2]     Cane River's acknowledgement of the fact that it received the Turnover Notice on March 2, 2005 is evidenced by its statement in the Objection that the "Debtor was still in possession of the demised premises until March 2, 2005."  (Objection ¶ 3).

[3]     The Debtors sent the other Landlords, via overnight mail on February 24, 2005, a similar turnover notice.  Thus, the earliest date that any of the Landlords would have received such a notice would have been February 25, 2005.

[W]e cannot conclude based on the language of Bankruptcy Code § 365(a) and the relevant case law interpreting this section, that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution.  Bankruptcy courts are courts of equity, see Pepper v. Litton, 308 U.S. 295, 304-05 (1939), and it has been consistently held in the Chapter 11 context that such courts may "abandon mechanical solutions in favor of the pliant reins of fairness."  In re Thinking Machines Corp., 67 F.3d at 1028; In re Winthrop Old Farm Nurseries, 50 F.3d 72, 75 (1st Cir. 1995).  Specifically, courts considering the issue of whether a bankruptcy court is authorized to assign a retroactive rejection date under section 365(a) have held that it may do so "when the principles of equity so dictate."  In re Thinking Machines Corp., 67 F.3d at 1028. See also In re Jamesway Corp., 179 B.R. at 38 ("[A] court can, where appropriate, approve rejection retroactively."); In re CCI Wireless LLC, 279 B.R. 590, 595 (Bankr. D.Colo. 2002) ("[T]his Court may--and in this instance should--approve the rejection of a non-residential lease retroactive to the filing date of the motion to reject the lease.").  As we find no support for appellant's contention that a bankruptcy court is prohibited as a matter of law from assigning a retroactive rejection date under section 365(a), we conclude that the Bankruptcy Court was not unauthorized from doing so.

See BP Energy Co. v. Bethlehem Steel Corp., 2002 WL 31548723 at * 3 (S.D.N.Y., Nov 15, 2002).[4]

8.    It is against this factual and legal backdrop that Cane River now requests that the Debtors provide it with more than sixty (60) days additional notice of their intention to reject the subject lease.  See Objection, ¶ 6.  The Debtors determined that the circumstances warranted the notice period provided under the Motion as all of the leases that were subject of the Motion related to "dark stores" that constituted an enormous financial drain on the Debtors' estates.  In granting the Order, the Court clearly concluded that the circumstances warranted a departure from the norm.  The Debtors respectfully submit that, under such circumstances, the relief requested by Cane River is beyond that granted to all similarly situated Landlords under the Order and is simply inappropriate.

---

[4]    It is worth noting that not one other Landlord filed an objection claiming deficient notice. This fact may be attributable, in whole or in part, to the Landlords' recognition of this Court's broad equitable power with regard to the setting of a rejection date.

9.      As to Cane River's contention that the lease requires the Debtors to leave the property in a certain condition upon termination, the Debtors submit that this is a concern that would be more properly raised in the context of Cane River's assertion of a rejection damage claim.  This contention does not provide any legally cognizable ground for the Objection to the Motion.

10.      For each of these reasons, the Debtors respectfully submit the relief sought in the Objection is without merit and should be overruled.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (a) deny the Objection and (b) grant such other and further relief as the Court deems just and proper.

Dated: April 6, 2005
       New York, New York

/s/      *D. J. Baker*
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
Adam S. Ravin
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:     (212) 735-3000
Facsimile:     (212) 735-2000

Eric M. Davis
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
One Rodney Square
Wilmington, Delaware 19801
Telephone:     (302) 651-3000
Facsimile:     (302) 651-3001

Attorneys for Debtors

6

**EXHIBIT A**



Date 02/24/05


Property One
1 Lakeshore Drive Suit 560
Lake Charles, La. 70629
Jennie Thibodeaux


RE: Store:    # 1565
City/State: Natchitoches, La.


Dear Landlord,

Due to the anticipated rejection of the above referenced lease by
Winn Dixie in the pending bankruptcy action, the keys to the
premises are being delivered to you via Federal Express. Please
also be advised that utilities will be terminated immediately for this
location.

Sincerely,
Jay Archambault

Winn-Dixie Stores, Inc.

**EXHIBIT B**

FedEx | Track

## Track Shipments
## Detailed Results

(?) Quick Help

| Tracking number | 652376581791 | Delivery location | LAFAYETTE, LA |
|---|---|---|---|
| Signed for by | C.ARENA | Delivered to | Receptionist/Front Desk |
| Ship date | Mar 1, 2005 | Service type | Priority Envelope |
| Delivery date | Mar 2, 2005 9:13 AM | Weight | 0.5 lbs. |
| Status | Delivered | | |

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| Mar 2, 2005 | 9:13 AM | Delivered | LAFAYETTE, LA | |
| | 8:21 AM | On FedEx vehicle for delivery | LAFAYETTE, LA | |
| | 7:53 AM | At local FedEx facility | LAFAYETTE, LA | |
| Mar 1, 2005 | 10:43 PM | At dest sort facility | KENNER, LA | |
| | 9:37 PM | Left origin | HARAHAN, LA | |
| | 3:31 PM | Picked up | HARAHAN, LA | |
| | 12:25 PM | Package data transmitted to FedEx | | |



### Email your detailed tracking results (optional)

Enter your email, submit up to three email addresses (separated by commas), add your
message (optional), and click Send email.



Add a message to this email.



