**Hearing Date and Time: April 12, 2005 at 10:00 a.m.**

Thomas R. Slome (TS-0957)
Jil-Mazer Marino (JM-6470)
SCARCELLA ROSEN & SLOME LLP
333 Earle Ovington Boulevard
Ninth Floor
Uniondale, New York 11553-3622
(516) 227-1600

    and

Russell R. Johnson III
3734 Byfield Place
Richmond, Virginia 23233
(804) 747-7208

Co-Counsel for Progress Energy Florida, Inc., Progress Energy Carolinas, Inc., Orlando Utilities Commission; and Tampa Electric Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | ) Chapter 11 |
| **WINN-DIXIE STORES, INC., et al.,** | ) Case No. 05-11063 |
| Debtors. | ) (Jointly Administered) |

**JOINDER OF CERTAIN UTILITY COMPANIES IN SUPPORT OF MOTION OF BUFFALO ROCK COMPANY TO TRANSFER VENUE OF DEBTORS' BANKRUPTCY CASES TO THE UNITED STATES BANKRUPTCY COURT <u>FOR THE MIDDLE DISTRICT OF FLORIDA</u>**

    Progress Energy Florida, Inc. ("Progress Florida"), Progress Energy Carolinas, Inc. ("Progress Carolina"), Orlando Utilities Commission ("OUC") and Tampa Electric Company ("Tampa Electric") (collectively, the "Utilities"), by counsel, hereby submit this Joinder in

1

support of the Motion of Buffalo Rock Company to transfer venue of these bankruptcy cases to the United States Bankruptcy Court for the Middle District of Florida and to address some of the statements made by the Official Committee of Unsecured Creditors (the "Committee") in its Objection to the venue motion.

**Procedural Facts**

1. On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court. The Debtors continue to manage their properties and operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. These cases are being jointly administered.

2. Also on February 21, 2005, the Debtors filed a *Motion for Authorization Order (A) Deeming Utilities Adequately Assured of Payment, (B) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services, and (C) Establishing Procedures for Resolving Requests for Additional Assurance* (the "Utility Motion"). In Exhibit A to the Utility Motion, the Debtors list their gas and electric utility providers along with their refuse providers. Although the Debtors' utility list is quite extensive, there is not a single address listed that receives gas or electric utility service in New York. Accordingly, if the Debtors have a physical address or addresses in New York, they must not pay utility services for that address or addresses or they failed to list their New York utilities in Exhibit A to the Utility Motion.

3. On March 14, 2005, Buffalo Rock Company filed a motion to transfer venue of these cases to the United States Bankruptcy Court for the Middle District of Florida (the "Venue Motion").

4. On March 30, 2005, the Debtors filed a Response to the Venue Motion in which the Debtors requested the Court to grant the Venue Motion and transfer the cases to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

5. On April 5, 2005, the Committee filed an Objection to the Venue Motion. In support of their Objection, the Committee states that the cases should remain in this Court because:

    A. Most creditors prefer New York over Florida;

    B. New York is more convenient for the parties;

    C. This Court has had substantial involvement and made significant rulings in these cases; and

    D. The costs of administering the cases may be significantly lower if the cases remain in New York.

**Facts Regarding the Utilities**

6. Progress Florida (104), OUC (16) and Tampa Electric (30) maintained a total of 150 prepetition accounts with the Debtors, with total average billings exceeding $2 million per month. Progress Florida, OUC and Tampa Electric continue to provide post-petition utility service to the Debtors at the locations that were not the subject of the initial store rejection pleadings.

7. Based on a review of Exhibit A to the Utility Motion, it is clear that the Debtors receive utility service from a substantial number of Florida utilities, including many governmental entities.

**Discussion**

8.     As the Debtors have consented to the transfer of venue, the Utilities will focus on the four points raised by the Committee in support their Objection to the Venue Motion.

**I.     MOST CREDITORS PREFER NEW YORK OVER FLORIDA**

9.     It is not clear how the Committee arrived at the statement that most creditors prefer New York over Florida because it is unlikely they took a scientific poll of the creditors to ask them their opinion and they certainly did not contact the Utilities to ask them their opinion on this matter.  At best, the Committee seems to manufacture a conclusion that most creditors prefer New York over Florida because a large number of creditors have not filed pleadings in support of the Venue Motion.

10.    First, it is not surprising that a large number of creditors would not file pleadings in support of the Venue Motion after the Debtors, well before the date on which responses were due, filed their consent to the transfer.  In addition, a large number of creditors also have not filed <u>objections</u> to the Venue Motion, so the lack of filed pleadings would seem to be an insignificant fact that is open to multiple interpretations.  For example, it is equally likely to believe many creditors, like the Utilities, support the Venue Motion but were reluctant to incur the additional costs and expenses to file a pleading in support of the Venue Motion.  Moreover, it would also be reasonable to conclude from the Debtors' Response to the Venue Motion that the Debtors were experiencing significant pressure from their creditors about their initial venue choice and elected to concede the issue to maintain the vendor support that they will likely need to successfully reorganize.

11.    Absent a scientific survey or poll, the more reasonable presumption is that most

creditors, especially small vendors and creditors that work with the Debtors on a regular basis, would prefer Florida over New York since the Debtors are headquartered in Florida and operate exclusively out of the Southeastern United States.

12. Furthermore, if and when the Debtors file avoidance actions and file objections to claims, which is when most creditors become involved in the bankruptcy cases, it is reasonable to assume that other than the large institutional creditors that may have offices in New York, that creditors would prefer to litigate those matters in a forum closer to their place of business. Since there are very few creditors in New York, other than the large institutional creditors like the Debtors' lender, this factor would tend to weigh in favor of the transfer of venue to Florida.

## II.    NEW YORK IS MORE CONVENIENT FOR THE PARTIES

13. The second basis for the Committee's Objection is their incorrect statement that New York is more convenient for the parties. It is certainly is not more convenient for the Utilities or any of the large number of Florida and southeastern creditors of the Debtors.

14. Even though the Utilities have not conducted their own poll, it would seem likely that creditors would generally prefer a forum that is within a reasonable travel distance, possibly within the range of car or train travel, to a venue that is significantly far away that requires the time, uncertainty and the expense of air travel. Although the Utilities understand there are a large number of creditors other than the utilities, it is clear from Exhibit A to the Utility Motion that it would be geographically more convenient for a larger number of creditors for the cases to proceed in Florida.

15. Moreover, if the cases were transferred to Florida, it would certainly eliminate or significantly reduce the travel burden on the Debtors' employees who are headquartered in

Florida. In addition, since the Debtors are headquartered in Florida and presumably their records are maintained there, it would certainly be more convenient from a documentation standpoint for the Debtors and their employees for the cases to be administered in Florida.

### III. THIS COURT HAS HAD SUBSTANTIAL INVOLVEMENT AND MADE SIGNIFICANT RULINGS IN THESE CASES.

16. Although the Committee believes that this Court has had substantial involvement in this case and made significant rulings, it is important to note that these cases have only been before the Court for less than two months and the Debtors have neither announced nor filed pleadings on how they plan to restructure their debts and operations.

17. Aside from obtaining approval of post-petition financing that was lined up before the filing and rejecting a number of leases, which are common occurrences at the outset of many cases, nothing significant has occurred in this case that would preclude another court from administering these cases.

18. In addition, after a plan of reorganization or liquidation is approved later in these cases, the applicable court will have to administer the avoidance actions that the Debtors may file and the objections to claims. Accordingly, even though a large number of creditors have not actively participated in the early stages of these cases, it is clear that a significant number will become involved in these cases, whether voluntarily (filing and litigating claims) or involuntarily (subject of an avoidance action). Therefore, there does not appear to be any judicial action taken to this point that would prejudice creditors if the cases were moved to Florida.

## IV.   THE COSTS OF ADMINISTERING THESE CASES MAY BE SIGNIFICANTLY LOWER IF THE CASES REMAIN IN NEW YORK.

19.   In support of the statement that the costs of administering these cases may be significantly lower if the cases remain in New York, the Committee states that if the cases are transferred that each of the parties will need local counsel and spend substantial amounts of time traveling to and from hearings. The foregoing argument is without merit for several reasons.

20.   First, regardless of where the cases are administered, creditors will have to retain bankruptcy counsel. Although the large institutional creditors, like some of the Committee's members, may have regular New York bankruptcy counsel and not Florida bankruptcy counsel, it is likely that the Florida creditors have regular Florida bankruptcy counsel and would have to retain New York counsel if the cases remained in New York. Since there are a significantly larger number of Florida creditors than New York creditors, especially since the Debtors have no business operations in New York, this argument would seem to weigh in favor of transferring venue to Florida rather than maintaining it in New York. Moreover, it is reasonable to believe that the hourly billing rates for attorneys in the Middle District of Florida are considerably lower than the rates for attorneys in the Southern District of New York.

21.   Second, if the cases were transferred to Florida, the travel expenses of the Debtors and the creditors, especially the creditors based in Florida, would likely decline. Although a small number of institutional creditors would experience an increase in travel costs if the cases are transferred to Florida, a far larger number of creditors and the Debtors would experience a significant decrease in travel costs and travel time if such a transfer occurred.

22.   Third, since it is important for the Debtors to focus their attention and energy on

their reorganization efforts, they should spend more time working from their offices in Florida rather than expending significant time traveling to and from New York for hearings.

23. Despite the Committee's arguments to the contrary, it strains credibility to argue that a grocery store chain headquartered in Florida and based exclusively in the Southeastern United States should have its bankruptcy cases administered in the Southern District of New York. Moreover, even though the Debtors' initial choice may have been technically proper based on existing law because the Debtors created a New York corporation 12 days before the Petition Date, it should not be afforded the deference that the Committee suggests, especially since the Debtors have changed their position on the preferred venue. In fact, the Committee and Wilmington Trust Company's objections to the Venue Motion leads the Utilities to believe that certain large institutional creditors would prefer to disenfranchise a large number of creditors by making it more difficult for them to participate in the administration of these cases. Although the nationwide jurisdiction of bankruptcy proceedings makes it difficult for many creditors to assert their rights in a distant forum, especially smaller creditors, there is no reason why this case should be pending in New York when there are so few creditors in New York and so many creditors based in or near Florida.

WHEREFORE, the Utilities respectfully request that this Court to:

(I) Grant the Venue Motion and transfer venue of these cases to the United States Bankruptcy Court for the Middle District of Florida; and

  (II) Award such other and further relief as the Court deems just and appropriate.

Dated: Uniondale, New York
   April 7, 2005

             SCARCELLA ROSEN & SLOME LLP


             By: /s/ Thomas R. Slome
               Thomas R. Slome (TS-0957)
               Jil-Mazer Marino (JM-6470)

             333 Earle Ovington Boulevard
             Ninth Floor
             Uniondale, New York 11553-3622
             (516) 227-1600

               and

             Russell R. Johnson III
             3734 Byfield Place
             Richmond, Virginia 23233
             (804) 747-7208

             Co-Counsel for Progress Energy Florida, Inc.;
             Progress Energy Carolinas, Inc.; Orlando Utilities
             Commission; and Tampa Electric Company

G:\Johnson\American\Winn-Dixie\Lit\joinder.doc