BURR & FORMAN LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Robert B. Rubin (RR-3325)
Derek F. Meek (DM-7723)
Marc P. Solomon (MS-7382)

DECHERT LLP
30 Rockefeller Plaza
New York, New York  10112
Telephone: (212) 698-3500
Facsimile (212) 698-3599
Joel H. Levitin (JL-5814)
Elise Scherr Frejka (ESF-6896)

*Attorneys for Buffalo Rock Company*

**Hearing Date and Time: April 12, 2005 at 10:00 A.M.**
**Objection Deadline: April 5, 2005 at 4:00 P.M.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re:                                                    : Chapter 11
:
Winn-Dixie Stores, Inc., et al.,                          : Case No.: 05-11063 (RDD)
:
                                         Debtors.          : (Jointly Administered)
:
:
------------------------------------------------------------x

**BUFFALO ROCK'S OMNIBUS RESPONSE TO OBJECTIONS TO MOTION OF
BUFFALO ROCK COMPANY TO TRANSFER VENUE OF THE DEBTORS'
BANKRUPTCY CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION OR SUCH OTHER
DISTRICT WHERE VENUE WOULD BE APPROPRIATE UNDER 28 U.S.C. § 1408**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Buffalo Rock Company ("Buffalo Rock"), a creditor of the above-captioned debtors (the

"Debtors") and a party in interest herein, hereby files this omnibus response to the:

1346831 v3

(a) *Objection of Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., Et Al., to Motion of Buffalo Rock Company Seeking Entry of An Order, Under 28 U.S.C. § 1412, Transferring Venue of Debtors' Cases* (the "Committee Objection");

(b) *Response of Certain Trade Vendors to Motion of Buffalo Rock company to Transfer Venue of the Debtors' Bankruptcy Cases to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division or Such Other District Where Venue Would be Appropriate Under 28 U.S.C. § 1408* (the "Trade Vendor Objection");

(c) *Objection of Wilmington Trust Company, as Indenture Trustee, and Joinder in Objection of Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., Et al., to Motion of Buffalo Rock Company Seeking Entry of an Order, Under 28 U.S.C. § 1412, Transferring Venue of Debtors' Cases* (the "Wilmington Trust Objection");

(d) *Joinder of Edens & Avant, Weingarten Realty Investors, Palm Springs Mile Associates, Ltd. Villa Rica Retail Properties, L.L.C., ALG Limited Partnership and Curry Ford, LP to the Objection of the Official Committee of Unsecured Creditors' of Winn-Dixie Stores, Inc., Et al. Filed in Opposition to Motion of Buffalo Rock Company to Transfer Venue of the Debtors' Bankruptcy Cases to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division or Such Other District Where Venue Would be Appropriate Under 28 U.S.C. § 1408* (the "Landlord Objection"); and

(e) *Jamarco Realty, LLC's Joinder in the Objection of the Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc. to Motion of Buffalo Rock Company Seeking Entry of an Order Transferring Venue of Debtors' Cases* (the "Jamarco Objection") (collectively, the "Objections").

In support thereof, Buffalo Rock respectfully represents as follows:

## I.    BACKGROUND

1.    On February 21, 2005 (the "Petition Date"), the Debtors filed their respective bankruptcy petitions under chapter 11 of the Bankruptcy Code.

2.    On March 14, 2005, Buffalo Rock filed the *Motion of Buffalo Rock Company to Transfer Venue of the Debtors' Bankruptcy Cases to the United States Bankruptcy Court for the*

*Middle District of Florida, Jacksonville Division or Such Other District Where Venue Would be*
*Appropriate Under 28 U.S.C. § 1408* (the "Motion").

3.      Joinders to the Motion have been filed by **(i)** Riverdale Farms, Inc. (the
"Riverdale Joinder"), (ii) Richard J. Ehster and Bradley T. Keller (the "Employee Joinder"), (iii)
Ernst Properties (the "Ernst Joinder"), (iv) Progress Energy Florida, Inc., Progress Energy
Carolinas, Inc., Orlando Utilities Commission, and Tampa Electric Company (the "Utility
Joinder"), (v) the Dairy Farmers of America, Inc. (the "Dairy Farmer Joinder"), (vi) Beaver
Street Fisheries, Inc. and Ja-Ru, Inc. (the "BSF Joinder"); and (vii) Florida Power and Light
Company (the "Florida Power Joinder") (collectively, the "Joinders").

4.      On March 30, 2005, the Debtors consented to the Motion and also requested
venue be transferred to the United States Bankruptcy Court for the Middle District of Florida.

## II.    ANALYSIS

### A.    If The Court Finds Venue to Be Improper in the Bankruptcy Court for the Southern District of New York, The Court Must Either Dismiss or Transfer The Bankruptcy Cases

5.      Upon objection to venue by a party in interest, if the court determines that venue
is improper, the court must either: (a) dismiss the case; or (b) transfer the action to a proper
venue. A bankruptcy court does not have the option to retain an improperly venued case for the
"convenience of the parties" or for any other reason. *ICMR, Inc. v. Tri-City Foods, Inc.*, 100
B.R. 51 (D. Kan. 1989); *see also In re Pannell*, 243 B.R. 23 (Bankr. S.D. Oh. 1999); *In re
Campbell*, 242 B.R. 740 (Bankr. M.D. Fla. 1999).  While the Motion did not request this Court
to dismiss any or all of the bankruptcy cases, the Court of Appeals for the Second Circuit has
determined that a bankruptcy court may dismiss a bankruptcy case *sua sponte*. *In re C-TC 9th
Avenue Partnership*, 113 F.3d 1304 (2d Cir. 1997).  Accordingly, if this Court determines that

venue does not lie in this District under 28 U.S.C. § 1408, the court may, in its discretion, determine to either transfer or dismiss the cases.

### B. Venue is Improper Under 28 U.S.C. § 1408 Because This Court Should Not Consider Inequitable Conduct or Actions Taken to Manufacture Such Venue

6. The objection filed by the Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., *et al.* (the "Committee") asserts that the plain language of § 1408 has been met by virtue of the incorporation of Dixie Stores, Inc. ("DSI") in New York and the placement of Table Supply Food Stores Co., Inc.'s ("Table Supply") principal assets in New York. The Committee further asserts that it is "irrelevant" that these actions were taken solely for the purpose of creating venue in New York.[1]

7. However, as previously indicated in the Motion, inequitable actions taken by a debtors to create venue where it would not otherwise be available should be disregarded in their entirety.[2] *See, e.g., In re Columbia Western, Inc.*, 183 B.R. 660 (Bankr. D. Mass. 1995); *In re Handel*, 242 B.R. 789, 792 n.7 (Bankr. D. Mass. 1999). In discussing the equitable powers of the bankruptcy court, the United States Supreme Court has noted:

---

[1] The Committee Objection states that the incorporation of DSI solely to achieve venue is "irrelevant" because the Committee had nothing to do with the filing in New York and thus their continued support of venue cannot be undermined by the Debtors' actions. However, this is incorrect because, as discussed *supra*, where venue is improper, the court must either dismiss or transfer the case. Therefore, the Committee's support for an improper venue is itself "irrelevant."

[2] Courts have determined that section 105(a) allows courts flexibility from the Bankruptcy Code's literal language, especially when forum shopping is at issue:

> Section 105(a) was enacted to permit courts a measure of flexibility from the literal language of the code to carry the drafters' intent, recognizing that under isolated circumstances, a literal reading might thwart its purpose. Section 105 appropriately has been invoked by other bankruptcy courts "to prevent the abuses of process which may accompany forum shopping."

*In re Scott Cable Communications, Inc.*, 263 B.R. 6, 8 (Bankr. D. Conn. 2001) (citations ommitted); *see also In re Raytech, Corp.*, 222 B.R. 19, 25 (Bankr. D. Conn. 1998) ("A literal reading of Rule 1014(b) would frustrate that policy by ignoring the financially intertwined relationship between Raytech and the Raymark entities. Therefore, in determining whether Rule 1014(b) has been satisfied, this court will look to the purpose of the rule rather than its literal language.").

> [t]hey have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.

*Pepper v. Litton*, 308 U.S. 295, 305 (1939). Other courts have likewise acknowledged that form should not give way to substance.

> Courts have a legitimate interest in preventing statutes from becoming a shield for serious inequity. Accordingly, it is proper for a court, under very limited circumstances, to make narrow equitable exceptions to statutory rules....
>
> Section 105(a) allows the bankruptcy courts to inject traditional equitable principles into the operation of the bankruptcy system to prevent abuse of the drafter's intent.

*In re Gurney*, 192 B.R. 529, 537 (9th Cir. B.A.P 1996).

8.    To allow debtors to take certain actions shortly prior to the filing of a bankruptcy petition to create venue in a particular district would serve to completely eviscerate the purpose and effect of the law.[3] It is within this Court's equitable powers to prevent such a result, and the facts and circumstance of these cases warrant the Court's exercise of these powers.

**C.    The Debtors Engaged in Inequitable Conduct in Taking Actions Whose Sole Purpose Was to Manufacture Venue in this District**

9.    The conclusion that must be drawn from the record is that the Debtors formed DSI twelve (12) days prior to the Petition Date for the sole purpose of manufacturing venue in this District. This is evident from the timing of the incorporation of DSI (and the timing of the

---

[3] Additionally, the Committee Objection references attempts at changing the venue statutes. Such attempts serve as a recognition on the part of Congress that forum shopping and the manufacture of venue is inequitable. In debating the issue, Congress noted that there were several egregious examples of forum shopping that led bankruptcy cases to be venued in inappropriate locations. Tellingly, none of these examples is as egregious as the facts before this Court. In his remarks to the United States Senate Committee on the Judiciary, Senator John Cornyn (R-TX) introduced and addressed the Fairness in Bankruptcy Litigation Act of 2005 (the "Fairness Act"). The Fairness Act prevented, according to Senator Cornyn, "corporate debtors from moving their bankruptcy cases thousands of miles away from the communities and their workers who have the most at stake." *See* transcript of Senator Cornyn's remarks, attached hereto as Exhibit A. Senator Cornyn also highlights what he calls prominent incidents of forum shopping: Polaroid, K-Mart, and Worldcom. Buffalo Rock submits that the instant case is far more egregious than those held up as the most egregious.

retention of Skadden, Arps, Slate, Meagher and Flom, LLP) and from the recent filing of Winn-Dixie's Statement of Financial Affairs which lists the "Nature of the Business" for DSI as "Financial; Owns Bank Account." A copy of the relevant excerpt from this filing is attached hereto as Exhibit **B**.

10.     Moreover, Table Supply is a company which, upon information and belief, has not operated in approximately fifteen years.[4] The "Nature of the Business" of Table Supply is likewise listed as "Owns Bank Account." *See* Exhibit B. Accordingly, it appears from this description, and the fact that Table Supply's petition indicates that the location of its principal assets is in New York, that the sole purpose of Table Supply is to own a bank account in New York. As the Debtors have no other relationship with New York, the presence of these bank accounts for DSI and Table Supply in New York can only be for the purposes of creating venue in this forum.

11.     Accordingly, since this Court must disregard the inequitable actions taken solely for the purposes of forum shopping, venue does not properly lie in this District, and these cases must be transferred to the Middle District of Florida.

**D.      Because These Cases Have No Relationship To This District, Even if The Court Finds Venue To be Proper, Which It Should Not, the Interest of Justice and Convenience of the Parties Dictate that the Court Transfer These Cases**

12.     Despite the statements set forth in the various Objections, it is evident that all aspects of the "interest of justice" and the "convenience of the parties" factors weigh strongly in favor of transfer. When these factors are viewed both separately and in the aggregate, it cannot

---

[4] Buffalo Rock intends to develop this fact, among others, to supplement the record in the depositions scheduled to take place on April 11, 2005 in New York.

reasonably be argued that the Debtors have a real nexus of any type to New York. The Objections' attempts at justifying venue in New York are responded to below:

### i.    Professionals

13.    At the outset, the Objections assert that New York is a more convenient forum based, in no small part, on the fact that the Debtors' counsel and their other retained professionals are located in New York. However, the convenience of the Debtors' counsel and professionals is an improper basis upon which to determine whether "the convenience of the parties" is met. *See, e.g., In re Seton Chase Associates, Inc.*, 141 B.R. 2, 6 (Bankr. E.D. N.Y. 1992) ("This Court finds unpersuasive the Debtor's argument that the location of its attorneys in this District is a factor for a determination of venue."); *In re Standard Tank Cleaning Corp.*, 133 B.R. 562, 567 (Bankr. E.D. N.Y. 1991) (same). As noted by one court, "[t]he fact that the petitioner's counsel is in Kansas City cannot constitute such a reason for it is rudimentary that it is the convenience of the parties which is to be considered, rather than that of their counsel." *In re Wells*, 17 B.R. 531, 533 (Bankr. W.D. Mo. 1982).

14.    To base the "convenience of the parties" on the location of Debtors' counsel or professionals would invite a company to hire New York counsel and professionals and then assert venue to be proper based upon their retention. It appears that is exactly what has occurred in this case. Despite apparently planning for bankruptcy for some time, the Debtors did not retain Skadden, Arps, Slate, Meagher and Flom LLP as their counsel until less than one month before the filing of the bankruptcy petitions (and seven days before the incorporation of DSI). *See* "Application for Authority to Retain Skadden, Arps, Slate, Meagher, and Flom, LLP as Lead Restructuring and Bankruptcy Counsel to the Debtors" (Docket No. 6).

15.    Furthermore, virtually all of the Debtors' professionals have national practices and frequently participate in bankruptcies venued throughout the country. For example, XRoads

Solutions Group, the Debtors' financial and operations consultant, is currently employed in other bankruptcy proceedings in the southeast. Additionally, Bain & Company, Inc., the provider of "finance group support services" to the Debtors, operates out of Atlanta, Georgia. *See* Exhibit A to the "Application for Authority to Retain Bain & Company, Inc. to Provide Finance Group Support Services" (Docket No. 536). Finally, most of the work of the Debtors' professionals will involve interaction with the Debtors themselves, rather than the court. Accordingly, even if it were material, the change in the venue of the actual bankruptcy cases will have little effect on these professionals.

### ii.   Convenience of Creditors

16.     Particularly distressing is paragraph 26 of the Committee Objection. This Committee's willingness to trample the interests of smaller creditors is evidently shown when the Committee states that "Buffalo Rock also fails to consider its relatively limited role in these cases as opposed to the role of the Committee." Committee Objection, ¶26. The Committee further alleges that Buffalo Rock only filed the Motion to advance its own self-interests.

17.     In filing the Motion, it appears that Buffalo Rock has actually undertaken the role that the Committee has left largely neglected:   Protection of the interests of the unsecured creditors. In contrast, the Committee's objection to Buffalo Rock's Motion serves interests yet to be explained. Despite the Committee's unsubstantiated assertion that "[i]t is clear that New York will be the center of the Committee's efforts to fulfill its mandate," it is the unsecured creditors, both big and small, that should be the center of the Committee's efforts. As Committee's counsel well knows, a committee's statutory and fiduciary responsibilities should not neglect the creditor body as a whole. *See In re Enron*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002) (stating "[i]t is the responsibility of all members to act as fiduciaries for **all** creditors represented by the Official Committee...") (emphasis added and citations omitted).

18.    When the creditor body is viewed in its entirety, including those smaller creditors with a purported "relatively limited role in these cases as opposed to the role of the Committee", the geographic focus of the creditor body favors Florida.    The Committee should *endorse* Buffalo Rock's Motion, as the Debtors have.

19.    In *In re Jitney Jungle*,[5] Judge Walralth of the Bankruptcy Court for the District of Delaware, who has presided over many large bankruptcy cases, has previously found in nearly identical circumstances that:

> I believe that all of the factors that the Courts look to regarding the convenience of factors seem to weigh in favor of transfer to Jackson, Mississippi, with the exception of the location of professionals and the largest creditors, both the DIP lenders and the bondholders, but for the same reason I stated in TransTexas, I believe that the convenience factor has to be determined with an eye towards permitting representation of bankruptcy cases by all entities.
>
> The largest creditors in this case and the debtor itself has national bankruptcy counsel, who are very familiar and able to travel nationally and represent their clients wherever their bankruptcy may be filed.
>
> The small creditors in this case do not have that capability. Both the size of their claim and their interest in this bankruptcy case I think transcends the debtor's arguments that they are simply a small creditor who will not participate in the bankruptcy.
>
> The Mississippi and southeast United States creditors consist of landlords, equipment leasors, employees, local trade vendors, none of whom, if the case remains here, will have a voice in this bankruptcy proceeding....
>
> With respect to the arguments that the debtor is a national company, this is a national case, I don't give it much weight. Again in considering the convenience of the parties, I think it is important in any bankruptcy case that all of the parties have a voice in the bankruptcy and, therefore, I am persuaded to go with the small creditor's rights to assure that not only they are

---

[5] *In re: Jitney Jungle Stores of America, Inc., et al.*, Case No. 99-03602-MFW (Bankr. Del.) (transferred to the Eastern District of Louisiana).

adequately represented but that this court is not besmirched by accepting every case that gets filed here if it is not appropriate.

*See* Exh. C, pp. 170-73, attached hereto.

20.    Judge Walrath correctly noted that the parties who are least likely to be inconvenienced by travel are the national corporations and professionals, whereas the parties-in-interest who are most likely to be inconvenienced are the small and mid-size creditors.

21.    Moreover, as previously indicated, the vast majority of the Debtors' creditors are centered in the southeastern United States, including, but certainly not limited too, (a) the 79,000 employees of the Debtors;[6] (b) the ordinary course professionals;[7] (c) the agent for the DIP Facility;[8] and (d) the utility companies.[9]

### iii.    Convenience of Debtors

22.    The Objections also assert that the proximity of the Debtors to this District does not weigh in favor of transferring these actions. However, the proximity of the Debtors has been repeatedly found by courts to be an important factor in determining whether a transfer be made under 28 U.S.C. § 1412, with good reason. *See, e.g., In re Suzanne de Leon, Inc.*, 125 B.R. 863, 868 (Bankr. S.D.N.Y. 1991). For these companies to effectively reorganize, it will be necessary for some members of the Debtors' senior management to frequently participate and testify in the hearings relevant to these cases. Indeed, representatives from the Debtors have already appeared

---

[6]  *See* "Declaration of Bennett L. Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 in Support First Day Motions and Applications", ¶ 21 (Docket No. 3); *see also* Employee Joinder.

[7]  *See* "Motion for Approval of Retention and Compensation of Professionals Used in the Ordinary Course of Business", (Docket, No. 29).

[8]  Wachovia Bank, N.A. based in Charlotte, North Carolina.

[9]  *See,e.g.,* Utility Joinder; Florida Power Joinder; *see also* "Motion for Order (A) Deeming Utilities Adequately Assured of Payment, (B) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services, and (C) Establishing Procedures for Resolving Requests for Additional Assurance" (Docket No. 23).

at prior hearings.  It will be cheaper and more time efficient for the Debtors to appear at hearings in Jacksonville, Florida (a short drive from their offices) than in New York.  The Debtors' time will be better spent working to reorganize their businesses then traveling to New York.

23.      The Objections also assert that technology, including electronic filing and telephone conferencing, reduces the potential inconvenience that the Debtors may suffer from having their cases administered the length of the country away.  However, this assertion cuts both ways.  This technology is likewise available to reduce the inconvenience that Debtors' counsel, the Committee's counsel and any other entities associated with New York will suffer from having these cases in Florida.  Moreover, the Bankruptcy Court for the Middle District of Florida utilizes electronic case filing, further alleviating any inconvenience for counsel.

### iv.     Results of Manufactured Venue Cannot Justify That Venue

24.      The Wilmington Trust Objection asserts that a factor in favor of retaining these cases is that some creditors are already represented by New York counsel.  However, the reason why most parties who have appeared in this case are represented by New York counsel is because these cases were initially venued in New York.  Were these cases venued in Florida initially or moved to Florida, the list of counsel would have been or will be dominated by Florida lawyers.  To find that because many parties in interest have already retained counsel, a transfer may not be made, would effectively preclude a large bankruptcy case from ever being transferred.  This was clearly not Congress's intent in enacting 28 U.S.C. § 1412.  Furthermore, many of the New York counsel who have made appearances in this case are effectively local counsel for other lawyers.  The fact that these cases will be substantially closer to Winn-Dixie's body of creditors may actually serve to reduce local counsel involvement.

### v.   The "Learning Curve"

25.   The Committee and other objectors cite the possibility of a "learning curve" that a transferee court would inherit.  While a learning curve may be considered in more mature cases, the infancy of the instant cases preclude its application here.  As many of the Joinders to the Motion have stated, if concerns like the learning curve were so great, no case would *ever* be transferred.

26.   Buffalo Rock filed the Motion three weeks after the Petition Date.   The Committee's learning curve argument ignores the fact that this Court had no trouble overcoming the occurrence of multiple proceedings and the entry of various orders entered by the Honorable Stuart M. Bernstein, Chief Judge for the United States Bankruptcy Court for the Southern District of New York, at the inception of this case.

27.   Moreover, any federally appointed United States Bankruptcy Judge, regardless of venue, will be capable of handling a case where many significant hurdles, including debtor-in-possession financing, have already been cleared.

### vi.   The Interest of Justice

#### a.   Interest of the Forum

28.   None of the Objections address the significant interest Florida has in these bankruptcy cases, versus the interests of the state of New York. *See, e.g., In re Standard Tank Cleaning Corp.*, 133 B.R. 562, 567 (Bankr. E.D. N.Y. 1991). The state of Florida clearly has an interest in the successful reorganization of the Debtors by virtue of the large number of the Debtors' stores that are based in Florida and the fact that the majority of the Debtors are Florida corporations.  Should the Debtors ultimately liquidate, there are thousands of Floridians who will be out of a job by virtue of the Debtors' headquarters located in Jacksonville and the presence of almost 500 of the Debtors' stores in Florida.  *See* Exhibit 6 to "Declaration of Bennett L.

Nussbaum Pursuant to Local Bankruptcy Rule 1007-2 in Support First Day Motions and Applications" (Docket No. 3).

### b.    Forum Shopping and Integrity of the Bankruptcy Courts

29.    Moreover, rather conspicuously, none of the Objections address the integrity of the bankruptcy system and the significant policy interests against forum shopping.   Prior precedent from this Court and others indicates that the presence of forum shopping is a significant factor that must be considered by courts when determining whether the interests of justice warrant a transfer. *See, e.g., In re Éclair Bakery, Ltd.*, 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000); *In re Maruki*, 97 B.R. 166 (Bankr. S.D.N.Y. 1988).   For example, the Bankruptcy Court for the Eastern District of New York in considering the transfer of venue, noted that, "[i]t is not in the 'interest of justice' to tolerate or encourage forum shopping." *In re Portjeff Development Corp.*, 118 B.R. 184 (Bankr. E.D.N.Y. 1990).   The complete failure of the Objections to address this point is telling.   However, since the Objections have failed to address this aspect of the interests of justice, this point will not be belabored.   *See* pages 12 - 13 of the Motion for further discussion of these issues.

### E.    Numerical Support for the Motion

30.    Finally, it is important to respond to the assertion made in the Committee Objection that because only a few of the thousands of creditors have moved for a transfer of venue, the body of creditors actually prefers New York.[10]   One of the fundamental bases of the Motion is that the filing of these cases in New York serves to disenfranchise the effective participation of creditors in these cases due to the incredible distance and expense that would be required to effectively participate in these proceedings.   In light of that, it is not surprising that

---

[10] It is just as easy to say that because only a few of the thousands of creditors have filed an objection to the Motion and the Debtors' Response, that the creditors support moving this case to Florida.

many of the creditors did not file joinders or their own motion.  The acquiescence of the Debtors to the transfer of these cases makes it reasonable for creditors to presume that it was not necessary for them to file their own pleading, as transfer was a foregone conclusion.  *See, e.g.,* Dairy Farmer Joinder, paragraph 9.

### III.   NOTICE

31.   Notice of this response has been provided to the entities listed on the Master Service List in accordance with the Order (A) Establishing Notice Procedures on a Final Basis and (B) Continuing Hearing With Respect to Scheduling Omnibus Hearings dated March 4, 2005.

**WHEREFORE** Buffalo Rock respectfully requests that the Court transfer the Debtors' cases to the Bankruptcy Court for the Middle District of Florida or such other district in the southeastern United States where venue would be appropriate under 28 U.S.C. § 1408.  Buffalo Rock further requests such other and further relief as is just and proper.

Dated:   Birmingham, Alabama
         April 9, 2005

                          BURR & FORMAN LLP

                          By:   /s Derek F. Meek
                                Robert B. Rubin (RR-3325)
                                Derek F. Meek (DM-7723)
                                Marc P. Solomon (MS-7382)
                                3100 SouthTrust Tower
                                420 North 20th Street
                                Birmingham, Alabama  35203
                                Telephone: (205) 251-3000
                                Facsimile: (205) 458-5100

DECHERT LLP
Joel H. Levitin (JL-5814)
Elise Scherr Frejka (ESF-6896)
30 Rockefeller Plaza
New York, New York  10112
Telephone: (212) 698-3500
Facsimile (212) 698-3599

*Attorneys for Buffalo Rock Company*



U.S. Senate Committee on the Judiciary
U.S. Senator John Cornyn (R-TX)

**Fairness in Bankruptcy Litigation Act of 2005**

Tuesday, February 8, 2005

Mr. President, I rise today to introduce the Fairness in Bankruptcy Litigation Act of 2005.

This legislation will provide much-needed protection – for consumers, creditors, workers, pensioners, shareholders, and small businesses – by reforming the rules governing venue in bankruptcy cases to combat forum shopping.

Quite simply, my bill will prevent corporate debtors from moving their bankruptcy cases thousands of miles away from the communities and their workers who have the most at stake. And it will prevent bankrupt corporations from effectively selecting the judge in their own cases – because picking the judge isn't far off from picking the verdict.

This Act is a positive step for fairness, responsibility, and justice. It implements a major recommendation from the October 1997 National Bankruptcy Review Commission report, and has earned the support of prominent bankruptcy law professors and practitioners nationwide. The bill is also supported by Texas Attorney General Greg Abbott (R) and former Massachusetts Attorney General Scott Harshbarger (D); Brady C. Williamson, who served as chairman of the National Bankruptcy Review Commission; and major national bankruptcy organizations like the National Association of Credit Management and the Commercial Law League of America. I ask unanimous consent that these endorsement letters be entered into the record at the close of my remarks.

With the introduction of this Act, this body will now have an opportunity to consider this growing crisis, which effects so many consumers and workers, just as we are about to examine the issue of comprehensive bankruptcy reform.

Sadly, our current bankruptcy venue law has become a target for enormous abuse. It's a problem that is well documented by academics, most recently in a comprehensive book published just last week by UCLA Law Professor Lynn M. LoPucki, as well as by Harvard Law Professor Elizabeth Warren, who served as the reporter for the National Bankruptcy Review Commission, and Professor Jay L. Westbrook of the University of Texas Law School.

I have personal experience with the worst kind of forum shopping. During my service to the state of Texas as Attorney General, I argued that the Enron federal bankruptcy court proceedings should be litigated in Houston. That seemed like the common sense argument, of course – after all, Houston was where the majority of employees and others who were victimized by that corporate scandal called home.

Yet that's not where the case ended up. Instead, Enron was able to exploit a key loophole in bankruptcy law to maneuver their proceedings as far away from Houston as possible. They ended up in their desired forum in New York. *See In re Enron Corp.*, 274 B.R. 327 (S.D.N.Y. Bankr. 2002).

Enron used the place of incorporation of one of its small subsidiaries in order to file a bankruptcy claim in New York, and then used that smaller claim as the basis for shifting all of its much larger bankruptcy proceedings into that same court. The company had 7,500 employees in the Houston headquarters, but they filed for bankruptcy in New York, where Enron had only 57 employees.

This kind of blatant forum shopping makes a mockery of our laws. The common-sense legislation that I've introduced today will combat such egregious forum shopping by requiring that corporate debtors file where their principal place of business or principal assets are located (rather than their state of incorporation), and forbidding parent companies from manipulating the venue by filing first through a subsidiary.

Bankruptcy venue abuse is not just bad for our legal system; it hurts America's consumers, creditors, workers, pensioners, shareholders, and small businesses. Under current law, corporate debtors effectively get to pick the court in which they will file for bankruptcy. As a result, creditors can be forced to litigate far away from the real-world location, where costs and inconveniences associated with travel are prohibitive.

This troubling loophole also serves to unfairly enable corporate debtors to evade their financial commitments. It badly disables consumers, creditors, workers, pensioners, shareholders, and small businesses from pursuing and receiving reasonable compensation from bankruptcy proceedings.

Current law allows debtors to forum shop and thereby to pick jurisdictions likely to rule in their favor. If debtors get to pick the jurisdiction, then bankruptcy judges have a disturbing incentive to compete with other bankruptcy courts for major bankruptcy cases, by tilting their rulings in favor of corporate debtors and their attorneys.

The examples are numerous. Here are three of the most prominent incidents:

- **Polaroid.** In October 2001, **Boston**-based Polaroid filed for bankruptcy in **Delaware**, listing assets at $1.9 billion. Polaroid's top executives claimed that the company was a "melting ice cube," and arranged a hasty sale for $465 million to a single bidder. The court refused to hear testimony as to the true value of the company and closed the sale in only 70 days. The top executives went to work for the new buyer and received millions of dollars in stock. Meanwhile, disabled employees had their health-care coverage cancelled. The so-called "melting ice cube" became profitable the day after the sale became final.

- **K-Mart.** In January 2002, failed top executives delivered **Michigan**-based K-Mart to the bankruptcy court in **Chicago**, which reportedly had been actively soliciting large

corporate debtors to file there. With a workforce of 225,000, K-Mart had more employees than any company that had ever filed bankruptcy nationwide. The Chicago judge let the failed executives take tens of millions of dollars in bonuses, perks, and loan forgiveness. Bankruptcy lawyers also profited, pocketing nearly $140 million in legal fees. But some 43,000 creditors received only about ten cents on the dollar.

- **Worldcom.** Worldcom perpetrated one of the biggest accounting frauds in history, inflating its income by $9 billion. Although based in **Mississippi**, Worldcom followed Enron into the **New York** bankruptcy court, where its managers received the same lenient treatment. No trustee was appointed; indeed, five months after the case was filed, the directors in office when the fraud occurred still constituted a majority of the board. They chose their own successors. A Top Worldcom executive used money taken from the company to build an exempt Texas homestead, and Worldcom took no action. That executive then used the homestead to buy his way out of his problems with the SEC. Meanwhile, creditors – mostly bondholders – lost $20 billion.

This is not the first time we have addressed this important issue. The House Judiciary Subcommittee on Commercial and Administrative Law held a hearing on July 21, 2004, entitled "Administration of Large Business Bankruptcy Reorganizations: Has Competition for Big Cases Corrupted the Bankruptcy System?," and Congressman Brad Sherman (D-CA) has previously led efforts to champion bankruptcy venue reform in the House. During the 107th Congress, Senator Durbin introduced S. 2798, the Employee Abuse Prevention Act of 2002, joined by Senators Kennedy, Kerry, Leahy, and Rockefeller, while Congressman William D. Delahunt (D-MA) introduced the same bill in the House; section 205 of that legislation would have reformed the bankruptcy venue law.

Mr. President, I believe we must take steps to respond to this important problem. The American people deserve better from our legal system. All bankruptcy cases deserve to be handled fairly and justly, and no corporate debtor should be allowed to escape responsibility by fleeing to another venue. It is high time that we take up this much-needed reform.



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Page 1 of 5

In re:  **WINN-DIXIE STORES, INC.**                    Case No.:  **05-11063 (RDD)**

## 18.   NATURE, LOCATION AND NAME OF BUSINESS

None
☐
a. If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

| NAME AND ADDRESS | TAXPAYER I.D. NO. (EIN) | NATURE OF BUSINESS | BEGINNING & ENDING DATES |
|---|---|---|---|
| ASTOR PRODUCTS, INC. 5244 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-0858632 | OPERATE COFFEE, TEA AND SPICE PLANTS | 12/13/58 PRESENT |
| CRACKIN' GOOD, INC. 701 N. FORREST STREET VALDOSTA, GA 31601 | 59-3652948 | FORMERLY OPERATED CRACKIN' GOOD CRACKERS AND COOKIES AND SNACKS PLANTS | 06/15/00 PRESENT |
| DEEP SOUTH PRODUCTS, INC. 255 JACKSONVILLE HIGHWAY FITZGERALD, GA 31750-1448 | 59-0855905 | OPERATE JAMS, JELLIES, PEANUT BUTTER AND CONDIMENTS, AND BEVERAGE PLANTS IN FITZGERALD, GA | 12/13/58 PRESENT |
| DIXIE DARLING BAKERS, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-0471662 | INACTIVE | 11/07/31 PRESENT |
| DIXIE PACKERS, INC. STATE ROAD 53 SOUTH MADISON, FL 32340 | 59-1288553 | FORMERLY OPERATED MEAT PACKING PLANT | 02/23/70 PRESENT |
| DIXIE STORES, INC. C/O 111 EIGHTH AVENUE NEW YORK, NY 10011 | 75-3182270 | FINANCIAL; OWNS BANK ACCOUNT | 02/09/05 PRESENT |
| DIXIE-HOME STORES, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-6079054 | INACTIVE | 10/03/55 PRESENT |
| DIXON REALTY TRUST 1999-1 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | | OWN REAL ESTATE | 1999 PRESENT |
| ECONOMY WHOLESALE DISTRIBUTORS, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-0230020 | WHOLESALE GROCERY OPERATION SELLING TO THIRD PARTIES | 11/21/25 PRESENT |
| FAIRWAY FOOD STORES COMPANY, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-6075362 | INACTIVE | 09/27/58 DISSOLVED 06/29/00 |
| KWIK CHEK SUPERMARKETS OF ILLINOIS, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE | 04/21/58 DISSOLVED 06/19/02 |
| KWIK CHEK SUPERMARKETS OF WEST VIRGINIA, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE | 04/21/58 DISSOLVED 8/13/02 |

In re:  **WINN-DIXIE STORES, INC.**                    Case No.:  **05-11063 (RDD)**

---

## 18.   NATURE, LOCATION AND NAME OF BUSINESS

None
☐

a.  If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the **six years** immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the **six years** immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the **six years** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TAXPAYER I.D. NO. (EIN) | NATURE OF BUSINESS | BEGINNING & ENDING DATES |
|---|---|---|---|
| KWIK CHEK SUPERMARKETS, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-6073162 | INACTIVE | 09/27/55 PRESENT |
| MONTEREY CANNING CO. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | MERGED INTO WINN-DIXIE PROCUREMENT, INC., EFFECTIVE 11/15/01 | 6/00 11/15/01 |
| SAVE-RITE GROCERY WAREHOUSE, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-1166473 | OPERATED ALTERNATIVE FORMAT STORES.  MERGED INTO WINN-DIXIE RALEIGH, INC., EFFECTIVE 12/28/04 | 02/15/67 12/28/04 |
| SUNBELT PRODUCTS, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 75-1551401 | INACTIVE | 05/09/77 PRESENT |
| SUNDOWN SALES, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 75-1414946 | INACTIVE | 04/10/73 PRESENT |
| SUPERIOR FOOD COMPANY 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 57-0469943 | OWN AND LEASE REAL ESTATE | 09/27/58 PRESENT |
| TABLE SUPPLY FOOD STORES CO., INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-6079368 | OWNS BANK ACCOUNT | 09/27/58 PRESENT |
| TRANSITORY SUB A, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE STORES, INC., EFFECTIVE 12/28/04. | 12/02/04 12/28/04 |
| TRANSITORY SUB B, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE MONTGOMERY, INC., EFFECTIVE 12/28/04. | 12/02/04 12/28/04 |
| TRANSITORY SUB C, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE STORES, INC., EFFECTIVE 12/28/04. | 12/02/04 12/28/04 |
| TRANSITORY SUB D, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE RALEIGH, INC., EFFECTIVE 12/28/04. | 12/02/04 12/28/04 |
| TRANSITORY SUB E, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE STORES, INC., EFFECTIVE 12/28/04. | 12/02/04 12/28/04 |
| W-D (BAHAMAS) LIMITED EAST-WEST HIGHWAY NASSAU, BAHAMAS | N/A | OPERATE BAHAMA SUPERMARKETS | 04/26/67 PRESENT |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Page 3 of 5

In re:  **WINN-DIXIE STORES, INC.**                                   Case No.:  05-11063 (RDD)

---

**18.    NATURE, LOCATION AND NAME OF BUSINESS**

None    a.  If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and
☐        beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive
         of a corporation, partnership, sole proprietorship, or was a self-employed professional within the six years immediately
         preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities
         within the six years immediately preceding the commencement of this case.

         If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and
         beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting
         or equity securities, within the six years immediately preceding the commencement of this case.

         If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and
         beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the
         voting or equity securities, within the six years immediately preceding the commencement of this case.

| NAME AND ADDRESS | TAXPAYER I.D. NO. (EIN) | NATURE OF BUSINESS | BEGINNING & ENDING DATES |
|---|---|---|---|
| WD BRAND PRESTIGE STEAKS, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-3545257 | INACTIVE | 09/22/98 PRESENT |
| WIN GENERAL INSURANCE, INC. 1156 BOWMAN ROAD, SUITE 208 MOUNT PLEASANT, SC 29464 | 59-3776716 | CAPTIVE INSURANCE COMPANY | 01/13/04 PRESENT |
| WINN-DIXIE ATLANTA, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-1212119 | NAME CHANGED TO WINN-DIXIE MONTGOMERY, INC., EFFECTIVE 06/29/00 | 05/20/68 06/29/00 |
| WINN-DIXIE CHARLOTTE TRANSITORY C, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE PROCUREMENT, INC., EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |
| WINN-DIXIE CHARLOTTE TRANSITORY B, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE LOGISTICS, INC., EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |
| WINN-DIXIE CHARLOTTE TRANSITORY A, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE RALEIGH, INC., EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |
| WINN-DIXIE CHARLOTTE, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-3264623 | OPERATED RETAIL STORES IN CHARLOTTE DIVISION. MERGED INTO WINN-DIXIE RALEIGH, INC., EFFECTIVE 12/28/04 | 06/29/94 12/28/04 |
| WINN-DIXIE HANDYMAN, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 58-1434107 | INACTIVE | 05/08/81 PRESENT |
| WINN-DIXIE LOGISTICS, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-3652949 | OPERATE WAREHOUSES AND FLEET IN ALL DIVISIONS | 06/15/00 PRESENT |
| WINN-DIXIE LOUISIANA, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 72-0488573 | MERGED INTO WINN-DIXIE MONTGOMERY, INC., EFFECTIVE 01/04/05 | 07/21/56 01/04/05 |
| WINN-DIXIE MIDWEST, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-3264623 | NAME CHANGED TO WINN-DIXIE CHARLOTTE, INC., EFFECTIVE 6/29/00 | 06/29/94 06/29/00 |

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

Page 4 of 5

In re:  WINN-DIXIE STORES, INC.

Case No.:  05-11063 (RDD)

---

18.  **NATURE, LOCATION AND NAME OF BUSINESS**

None  a.  If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and
☐      beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive
       of a corporation, partnership, sole proprietorship, or was a self-employed professional within the six years immediately
       preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities
       within the six years immediately preceding the commencement of this case.

       If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and
       beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting
       or equity securities, within the six years immediately preceding the commencement of this case.

       If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and
       beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the
       voting or equity securities, within the six years immediately preceding the commencement of this case.

| NAME AND ADDRESS | TAXPAYER I.D. NO. (EIN) | NATURE OF BUSINESS | BEGINNING & ENDING DATES |
|---|---|---|---|
| WINN-DIXIE MONTGOMERY TRANSITORY B, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. DISSOLVED EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |
| WINN-DIXIE MONTGOMERY TRANSITORY A, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE LOUISIANA, INC., EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |
| WINN-DIXIE MONTGOMERY TRANSITORY C, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE LOGISTICS, INC., EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |
| WINN-DIXIE MONTGOMERY TRANSITORY D, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE PROCUREMENT, INC., EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |
| WINN-DIXIE MONTGOMERY, INC. 1550 JACKSON FERRY ROAD MONTGOMERY, AL 26104-1718 | 59-1212119 | OPERATE RETAIL STORES IN MONTGOMERY DIVISION, SUPERBRAND DAIRY IN MONTGOMERY, AL AND SUPERBRAND PIZZA PLANT | 05/20/68 PRESENT |
| WINN-DIXIE MONTGOMERY, INC. A KENTUCKY CORPORATION 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 63-0363229 | MERGED INTO WINN-DIXIE ATLANTA, INC., EFFECTIVE 06/29/00 | 06/21/65 06/29/00 |
| WINN-DIXIE PROCUREMENT, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-3652951 | CENTRALIZED BUYING AND OWNERSHIP OF WAREHOUSE INVENTORY FOR SALE TO WINN-DIXIE RETAIL OPERATIONS | 06/15/00 PRESENT |
| WINN-DIXIE RALEIGH TRANSITORY C, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE PROCUREMENT, INC., EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |
| WINN-DIXIE RALEIGH TRANSITORY B, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE LOGISTICS, INC., EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |
| WINN-DIXIE RALEIGH TRANSITORY A, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE. MERGED INTO WINN-DIXIE CHARLOTTE, INC., EFFECTIVE 6/29/00. | 06/15/00 06/29/00 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**In re:  WINN-DIXIE STORES, INC.**                                      **Case No.:  05-11063 (RDD)**

---

**18.    NATURE, LOCATION AND NAME OF BUSINESS**

None ☐    a.  If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

| NAME AND ADDRESS | TAXPAYER I.D. NO. (EIN) | NATURE OF BUSINESS | BEGINNING & ENDING DATES |
|---|---|---|---|
| WINN-DIXIE RALEIGH, INC. 833 SHOTWELL ROAD CLAYTON, NC 27520 | 56-0670665 | OPERATE RETAIL STORES IN RALEIGH DIVISION | 05/31/58 PRESENT |
| WINN-DIXIE SUPERMARKETS OF WEST VIRGINIA, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE | 04/21/58 DISSOLVED 08/08/02 |
| WINN-DIXIE SUPERMARKETS OF ILLINOIS, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | N/A | INACTIVE | 04/21/58 DISSOLVED 06/19/02 |
| WINN-DIXIE SUPERMARKETS, INC. 5050 EDGEWOOD COURT JACKSONVILLE, FL 32254 | 59-6078837 | OPERATE RETAIL LIQUOR STORES IN FLORIDA | 04/19/58 PRESENT |

Digested  1/11                    Verna division  1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

**EXHIBIT**

tabbies

_C_

In the matter of            )
                            )
JITNEY JUNGLE STORES OF     )
AMERICA, INC., et al.,      ) Case No. 99-3602 (MFW)
                            )
        Debtors.            )


                        United States Bankruptcy Court
                        824 Market Street - Sixth Floor
                        Wilmington, Delaware


                        Tuesday, December 7, 1999
                        9:40 a.m.



BEFORE:  HONORABLE MARY F. WALRATH,
         United States Bankruptcy Judge



                TRANSCRIPT OF PROCEEDINGS




                WILCOX & FETZER
        1330 King Street - Wilmington Delaware  19801
                    (302) 655-0477



**WILCOX & FETZER LTD.**
Registered Professional Reporters
**COPY**

1   evidence to come in from Nabisco, I would like them to

2   come put it in.  I don't have that letter either.

3              MR. ZOTT:  Well, it is okay, Judge.  It is

4   right here.  Anyway, only point I am making, when you

5   look at the factor you should look at where they are

6   headquartered because the question is, are they big

7   enough that they can handle going to Delaware or Jackson,

8   and they may only have a satellite office, that's the

9   proper way to look at it.

10             Judge, thank you.  I have nothing further.

11  Thank you very much for your time.  I appreciate it.

12             THE COURT:  Anyone else?

13             Let me make my ruling.  I agree with the

14  debtor that 1408 (a) does not bar even a nonoperating

15  company that has no assets from incorporating.  If P&S

16  was incorporated in Delaware it had the right to file

17  bankruptcy in Delaware.  The stipulation of facts shows

18  that the incorporation was, in fact, done in Delaware in

19  sufficient time to permit a filing of bankruptcy.

20             However, finding that it is not illegal

21  does not establish that it is fair, and this type of a

22  tactic I think not only hurts the reputation of counsel

23  but hurts the reputation of the court.  For that reason I

24  find it fails the 1412 interest of justice prong.  It is

1   prong.  It is an alternative.

2            Although I also, for the reasons stated

3   below, find the convenience of the parties does not

4   support venue here.  I think that it is an extremely

5   dangerous precedent to allow counsel to incorporate a

6   company in Delaware solely to get venue here for

7   bankruptcy proceeding.  I think the facts of this case

8   support a finding that that is what occurred.  The

9   suspicious timing of the forming of the corporation

10  almost one year after the operations people recommended

11  it, apparently, because of the inactivity of senior

12  management, I conclude that senior management had

13  determined that separate incorporation was not necessary

14  or not of such a priority that it had to be done before

15  the company even opened up its first operation.

16           The business reasons for incorporating

17  would have militated in favor of incorporating before the

18  operations were opened to avoid the liabilities, as

19  counsel for Alabama Power suggests.

20           So I find that there was not a legitimate

21  business reason for incorporating here in Delaware, and

22  that the sole reason to incorporate here, based on the

23  timing and the factors and the testimony, was simply to

24  allow venue of the bankruptcy proceeding.

1          While the debtor is correct that the

2     parents could have filed a bankruptcy in Delaware because

3     they are Delaware corporations, apparently the debtor

4     made a decision not to do so, for whatever business

5     reason or other reason.  But that is not before me.

6          With respect to the convenience of the

7     parties, let me address that factor.  I believe that all

8     of the factors that the courts look to regarding the

9     convenience of factors seem to weigh in favor of transfer

10    to Jackson, Mississippi, with the exception of the

11    location of the professionals and the largest creditors,

12    both the DIP lenders and the bondholders, but for the

13    same reason as I stated in TransTexas, I believe that the

14    convenience factor has to be determined with an eye

15    towards permitting representation of bankruptcy cases by

16    all entities.

17          The largest creditors in this case and the

18    debtor itself has national bankruptcy counsel, who are

19    very familiar and able to travel nationally and represent

20    their clients wherever the bankruptcy case may be filed.

21          The small creditors in this case do not

22    have that capability.  Both the size of their claim, the

23    nature of their claim and their interest in this

24    bankruptcy case I think transcends the debtors' argument

1    that they are simply a small creditor who won't

2    participate in the bankruptcy.

3              The Mississippi and southeast United States

4    creditors consist of landlords, equipment lessors,

5    employees, local trade vendors, none of whom, if the case

6    remains here, will have a voice in this bankruptcy

7    proceeding.  If they chose not to travel to Jackson,

8    Mississippi, at least it won't be my fault.

9              With respect to the other factors,

10   virtually all of the debtors' assets are located in the

11   southeast, all the business operations are in the

12   southeast, all the employees are in the southeast, all of

13   their physical assets, their books and records, witnesses

14   and documents are located closer to Mississippi than to

15   here.

16             With respect to the issue of the travel

17   plans and convenience, I agree with counsel for Alabama

18   Power, it is a two-way street.  While transfer of venue

19   to Mississippi requires that certain counsel and other

20   parties must travel to Mississippi, leaving it here means

21   that all of the debtors' witnesses must travel the

22   reverse route, which would be equally inconvenient.  So I

23   think that that factor is at most awash.

24             In addition, considering the state of the



1   proceedings, we are in the early stage of these

2   bankruptcies cases, it is less than two months since the

3   case was filed, other than the SUPERVALU issue, which I

4   will get to, there is not a pressing need to retain the

5   case here for consideration of any pending matter.  The

6   DIP financing is in place, the debtors' operations I

7   assume are stable enough that transfer will not cause a

8   major disruption.

9           With respect to the argument that the

10  Christmas season is the debtors' large season, I don't

11  think that transfer of venue of the bankruptcy case is

12  going to have any negative effect on operations.  Again,

13  the witnesses that would be coming from Mississippi will

14  be saved that two-day flight time, and I think they are

15  more crucial to the operations than counsel.

16          With respect to the arguments that the

17  debtor is a national company, this is a national case, I

18  don't give it much weight.  Again, in considering the

19  convenience of the parties, I think it is important in

20  any bankruptcy case that all parties have a voice in the

21  bankruptcy and, therefore, I am persuaded to go with the

22  small creditors' rights to assure that not only they are

23  adequately represented but that this Court is not

24  besmirched by accepting every case that gets filed here

1   if it is not appropriate.

2              With respect to the SUPERVALU issue, let me

3   hear from the debtor as to the alternatives suggested.

4   Grant on a provisional basis with a right of the

5   Mississippi court to vacate it after full hearing or

6   retain jurisdiction for a short period of time?  I am not

7   sure what Alabama's position would be on that either.

8              MR. STEMPEL:  Why don't you address first.

9              MR. HAMMOND:  If I understand it correctly,

10  I think the motion for relief is for a noticing

11  provision, and I think provisionally granting would be

12  good, and if the debtor would consent and the committee

13  would consent it could be granted today, I would think.

14  That's up to them.

15             Your Honor, our position would be we want

16  to probably take the conditional in favor of SUPERVALU

17  because I thought their argument was reasonable.

18             MR. STEMPEL:  Your Honor, the debtor, just

19  from the perspective of full analysis and discussion with

20  the committee, I don't believe we have a problem with

21  provisional entry of the order, if the parties have the

22  right to object to it by a date certain.  I think that

23  works.

24             I would raise one related issue which



WILCOX & FETZER LTD.
Registered Professional Reporters