SUBORDINATE 29 The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

BENEFIT 30. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

SHORT FORM LEASE 31. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

MARGINAL TITLES 32 The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

COMPLETE AGREEMENT 33. This written lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

*Excerpt from Exhibit "A"*

TAXES 34. During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of any increase in ad valorem real estate taxes levied against the demised premises in excess of the amount of such taxes levied thereon for the first (1st) full calendar year of the lease term in which both the value of the land and the buildings thereon shall be assessed for tax purposes; provided, however, any additional rental payable hereunder by the Tenant may be credited on a non-cumulative basis against any and all percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit. Tenant shall be responsible only for its pro rata share of such taxes for fractional years occurring at the beginning and expiration of the term of this lease, and any extensions thereof.

If such taxes shall not be assessed separately, but shall be included within an assessment of the demised premises and others, said assessments shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio which the square footage of Tenant's store building bears to the total square footage of all store buildings (including additional floor levels) from time to time existing in the shopping center. The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements, discounts or refunds thereon. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant, and such additional rental shall be payable by Tenant on demand after payment by Landlord. All taxes, other than ad valorem real estate taxes, including special assessment improvement liens and the like, shall remain the sole responsibility of the Landlord. However, Tenant shall remain responsible for sales taxes on rentals levied by law on lessees.

"EXHIBIT" "A"

-14-

*Excerpt from Exhibit "A"*

Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of the Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to the Landlord.

OPTION FOR EXPANSION

35. Tenant is hereby granted the option and privilege at the times hereinafter specified during the term of this lease, or any extensions thereof, of enlarging its store building by incorporating therein the area to the Easterly side thereof, such addition not to exceed sixty (60) feet in width by one hundred sixty (160) feet in depth. It is intended that the expansion is to be accomplished during the first ten (10) years of the initial term of this lease only (a) at such times as the expansion area shall remain undeveloped, or if any adjoining storerooms have been constructed thereon, at such time as the same may be vacant and not under lease, or (b) at the expiration of the tenth (10th) year of the initial term of this lease, it being contemplated that Landlord shall lease such area to other tenants only for such periods as will expire concurrently with the expiration of the tenth (10th) year of the initial term of this lease. Thereafter, the option may be exercised only at such times as the adjoining storerooms may be vacant and not under lease, or at 5-year intervals, it being contemplated that Landlord shall lease such area to other tenants only for such periods as will expire at 5-year intervals dating from the expiration of the tenth (10th) year of the initial term of this lease. Landlord shall give notice to Tenant of any such expiration dates and, during the period between nine (9) months and six (6) months prior to such expiration dates, afford to Tenant the opportunity to exercise this option, and upon Tenant giving to Landlord a notice in writing of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, at its sole cost and expense, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence following the vacation of the necessary area by any other tenant, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant. In order to facilitate the expansion of Tenant's demised store building as herein contemplated, Landlord agrees that any adjacent building or buildings within the expansion area shall be of like structural quality and in architectural harmony with Tenant's store building, shall front on a line which is the interior sidewalk line of Tenant's demised store building extended and shall have a finish floor level, roof and ceiling heights which shall be at the same elevations as the finish floor level, roof and ceiling heights of Tenant's demised store building. Further, Landlord agrees that the wall of Tenant's demised store building adjoining the expansion area shall be constructed with steel column supports therein equivalently spaced to the nearest row of steel column supports within the open area of Tenant's demised store building and such wall supports shall be of sufficient load bearing capacity to carry the roof support system across the full span of the original and of the expanded building width.

Upon completion of such building addition, if there shall not at such date remain at least fifteen (15) years of the then term of this lease, such term shall be extended for such period of time as shall be necessary to provide a full fifteen (15) years from such date. Thereafter, during such extended term, the annual minimum guaranteed rental (and the base for computation of percentage rental hereunder) shall be increased by the greater of: an amount equal to twelve percent (12%) of the cost of such addition, or an amount equal to $3.00 per square foot of the enlargement area, or an amount equal to a computed percentage times the cost of such addition, such percentage consisting of four percent (4%) plus the current prime interest rate charged by New York City banks at the time of the exercise of the option. At Tenant's request, construction cost shall

"EXHIBIT" "A"

- 15 -

Article 1 of said Lease, as amended, for the duration of the initial lease term, and any exercised option extensions thereafter, Tenant agrees to pay to the Landlord as minimum guaranteed rental for the enlarged demised premises the sum of One Hundred Ninety-Three Thousand Four Hundred Eight and 00/100 Dollars ($193,408.00) per year, payable in twelve (12) equal monthly installments of Sixteen Thousand One Hundred Seventeen and 33/100 Dollars ($16,117.33), which installments shall be due and payable in advance on the first day of each and every calendar month of the initial lease term, and any extensions thereof.

In addition, Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30th exceeds One Hundred Sixteen Thousand Three Hundred Thirty-Seven and 99/100 Dollars ($116,337.99). The percentage rentals shall be calculated and paid in like fashion as provided in Article 1 of said Lease, as amended.

Rentals shall be calculated and paid under the present applicable rates of the original Lease, as amended, until the rentals begin to accrue under the above substituted provisions, and the rentals for any month in which a change of rates occurs shall be prorated between the previously effective rates and the rates effective under the above substituted provisions. The parties hereto agree to execute a further supplement to the Lease, as amended, fixing the effective date of the above described rental adjustment when determined, as herein provided.

(c) During the remainder of the initial lease term, and any exercised option extensions thereafter, Tenant agrees to reimburse Landlord for the increased annual ad valorem taxes levied on the shopping center (of which the demised premises are a part) and the increased annual premium cost of fire and extended coverage insurance on the building on the demised premises resulting from the construction of the vestibule

Excerpt from Exhibit "A"

"EXHIBIT" "A"

-6-

*Excerpt from Exhibit "A"*

addition and renovations to the existing building. The amount of the increase in ad valorem taxes levied against the demised premises resulting from such cause shall be the difference between the taxes levied for the next preceding tax year and those levied for the first year after completion of construction in which the augmented value of the enlarged building, including the addition and renovations, is assessed for tax purposes. The increased premium cost of fire and extended coverage insurance on the building on the demised premises shall be the difference between the annual premium paid immediately preceding construction of the building addition and the annual premium established for the same type coverages immediately following the completion of the building addition as based upon the augmented value of the enlarged building. Landlord agrees to evidence to Tenant the tax statements and insurance premium statements and other pertinent information reasonably required to demonstrate the initial and subsequent increase tax assessment and the increased insurance coverage. As to any further increases in the ad valorem taxes and in the insurance premiums which may occur in subsequent years following the original base period as established for the measurement of the initial increment, and during the remainder of the initial term of the lease, and any exercised option extensions thereafter, Tenant agrees to reimburse Landlord for one hundred percent (100%) of Tenant's proportionate share thereof.

Tenant shall reimburse Landlord annually for such tax and insurance premium increases, respectively, at the time ad valorem taxes become due and payable and at the anniversary date of the applicable insurance policy or policies and within fifteen (15) days after Landlord shall have submitted to Tenant a statement for the respective amounts due. Any payments to be made by Tenant to Landlord hereunder shall be prorated for fractional years occurring at the expiration of the term of the lease, or any exercised option extensions thereafter.

Any additional rental payable hereunder by Tenant in respect of either increased taxes or insurance premiums arising

"EXHIBIT" "A"

-7-

*Excerpt from Exhibit "A"*

out of the building enlargement hereunder shall not be permitted to be offset against percentage rentals hereunder, but additional rental payable in respect of increased taxes on the original building shall continue to be permitted to be offset against percentage rentals.

Tenant shall continue to be responsible for payment to Landlord of any increases of Tenant's pro rata share of the ad valorem real estate taxes levied against the demised premises as provided under Article 34 of the said Lease dated October 6, 1977, as amended.

(d) The two figures "$2,560.00" and "$213.33" appearing in Article 36 of said Lease, as amended, shall be deleted and in lieu thereof the following figures shall be substituted: "$5,172.50" and "$431.04", respectively.

(e) In that the enlargement of Tenant's building will have been accomplished under the terms and provisions of this Second Amendment to Lease, it is mutually understood and agreed that the option for expansion under the different formula provided in Article 35 of said Lease, as amended, shall be deemed null and void; provided, however, if for any reason the enlargement shall not be accomplished as contemplated in this Second Amendment to Lease, the said Lease, as amended, shall be deemed to continue in full force and effect, including the option for expansion as set forth in said Article 35 thereof.

8. In the event Landlord shall fail to reimburse Tenant in full for the amount of the construction cost for which Landlord is obligated within sixty (60) days after demand therefor, Tenant shall have the right to offset the amount thereof, or such portion thereof as shall remain unpaid from time to time, against future rentals payable under the terms of said Lease, as amended, and as further amended by this Second Amendment to Lease.

9. It is mutually understood and agreed that the said Lease dated October 6, 1977, as amended, shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby. All covenants, terms,

"EXHIBIT" "A" obligations and conditions of said Lease, as amended, not

-8-

Winn Dixie Stores, Inc.
Gardens Park Plaza
February 14, 2005
Page Two

### 1997 STORE EXPANSION

Taxes and Insurance are due for the year 2004 on the expansion area of 10,441 sq. ft. These costs are **Not Deductible** against percentage rent.

| | | | |
|---|---|---|---|
| Taxes: | Real Estate Tax Shopping Center | $ | 254,053.79 |
| | x Prorata Share (10,441/120,241 sq. ft.) | | 8.68% |
| | | | 22,051.87 |

| | | | |
|---|---|---|---|
| Insurance: | Insurance for Shopping Center | $ | 69,481.10 |
| | x Prorata Share (10,441/120,241 sq. ft.) | | 8.68% |
| | | | 6,030.96 |

| | | | |
|---|---|---|---|
| Summary: | Taxes due under Original Lease | $ | 52,815.94 |
| | Taxes due on the 1989 Expansion | | 6,905.49 * |
| | Insurance due on 1989 Expansion | | 2,638.40 * |
| | Taxes due on 1997 Expansion | | 22,051.87 * |
| | Insurance due on 1997 Expansion | | 6,030.96 * |
| | TOTAL 2004 EXPENSES DUE | $ | 90,442.66 |

(*Not Deductible from Percentage Rents)

[Handwritten annotation: Excerpt from Exhibit "B"]

Please make your check payable to Gardens Park Plaza, Ltd. and remit to the letterhead address.

"EXHIBIT" "B"