UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------X
                                        :
In re:                                  : Case No. 05-11063
                                        :
     WINN-DIXIE STORES, INC.,           : One Bowling Green
                                        : New York, New York
                 Debtors.               : February 22, 2005
                                        :
----------------------------------------X
```

TRANSCRIPT OF HEARING ON DEBTORS' MOTIONS
BEFORE THE HONORABLE STUART M. BERNSTEIN
CHIEF UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtors:            D. J. BAKER, ESQ.
                            SALLY MCDONALD HENRY, ESQ.
                            PETER J. NECKLES, ESQ.
                            Skadden, Arps, Slate, Meagher & Flom
                            Four Times Square
                            New York, New York 10036

                            BRIAN C. WALSH, ESQ.
                            SARAH ROBINSON BORDERS, ESQ.
                            King & Spalding
                            191 Peachtree Street
                            Atlanta, Georgia 30303

For the U.S. Trustee:       DEIRDRE A. MARTINI, ESQ.
                            RICHARD MORRISSEY, ESQ.
                            U.S. Department of Justice
                            33 Whitehall Street
                            New York, New York 10004


For Kraft, et al.:          MARK J. FRIEDMAN, ESQ.
                            Piper Rudnick Gray Cary
                            6225 Smith Avenue
                            Baltimore, Maryland 21209


Court Transcriber:          DEBBIE BARNARD
                            TypeWrite Word Processing Service
                            356 Eltingville Boulevard
                            Staten Island, New York 10312

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

2

1            THE CLERK:  <u>Winn-Dixie</u>.  Please be seated.

2            THE COURT:  Good afternoon.

3            MR. BAKER:  Good afternoon.

4            MS. MCDONALD HENRY:  Good afternoon.

5            THE COURT:  Go ahead.

6            MR. BAKER:  Good afternoon, Your Honor.

7            Jan Baker and Sally Henry here on behalf of the

8    debtors.  We are also joined by our co-counsel, Sarah Borders

9    and Brian Walsh, who will also be appearing at the hearing.

10           THE COURT:  It looks like you're joined by a cast of

11   thousands.

12           MR. BAKER:  Plus a number of others, Your Honor.

13           THE COURT:  Okay.

14           MS. MARTINI:  Good afternoon, Your Honor.

15           Deirdre Martini, United States Trustee for Region 2,

16   for the Office of the United States Trustee; and with me at

17   counsel table is trial attorney Richard Morrissey.

18           THE COURT:  Welcome.

19           MS. MARTINI:  Thank you.

20           THE COURT:  Go ahead, Mr. Baker.

21           MR. BAKER:  Thank you, Your Honor.

22           Judge, as a preliminary matter, I have to say we very

23   much appreciate Your Honor hearing this matter.  I think it's

24   always awkward when a case is assigned to a judge and he or she

25   is indisposed --

1        THE COURT:  Don't worry, I'll deal with Judge Drain

2  on that.

3        MR. BAKER:  We particularly appreciate it.

4        THE COURT:  Okay.

5        MR. BAKER:  In order to give Your Honor a little bit

6  of context, if I could, I'd like to first tell you that

7  I believe that most, if not all, of these first days are

8  similar to if not identical to the first days that Judge Drain

9  considered and approved last spring in the RCN case.

10        THE COURT:  Well, then you should be sorry you don't

11  have Judge Drain.  So move on to your next point.

12        MR. BAKER:  Very well.

13        Second, Your Honor, we've been working with the U.S.

14  Trustee over the last week and have taken a number of comments

15  from them.

16        And finally, we had agreed with the U.S. Trustee,

17  subject to Your Honor's approval, that any relief entered would

18  be interim in nature given the fact that we do not have a

19  committee appointed.

20        THE COURT:  Okay.

21        MR. BAKER:  If I could, Your Honor, I'd like to just

22  take a couple of minutes and tell you a little bit about this

23  company and then suggest a manner of proceeding for the rest of

24  the afternoon.

25        As Your Honor probably knows, Winn-Dixie is a large

4

1 regional grocer.  It's a 75-year-old company.  It's been listed

2 on the New York Stock Exchange for more than 50 years.  It does

3 about $10 billion a year in sales.  It has a thousand stores

4 and roughly 79,000 employees.

5          The point of that, Judge, is that by any measure this

6 is a case that will have a lot of impact on vendors, employees,

7 shareholders, landlords, and all the other parties in interest.

8          At the same time, Judge, this is what I would call

9 almost an old-fashioned kind of case, and I think we've all

10 gotten used to large financial restructurings over the past few

11 years with what come to be perceived as excessive amounts of

12 debt that the company can't service.

13          This, however, by contrast, while it has significant

14 amounts of debt, about 300 in bond, 300 million in trade, and

15 about 400 million in secured bank debt, fundamentally we

16 believe that this is what I would characterize as an

17 operational turnaround of the sort that in the '80s, for

18 example, we saw a number of.

19          With that as a prelude, we have, Your Honor, the

20 first days, all of which I believe are supported by the

21 Declaration and Affidavit of Mr. Nussbaum.  Mr. Nussbaum is the

22 chief financial officer of the company.  He is present in the

23 courtroom today and prepared to testify.

24          I believe, Your Honor, that the issue that probably

25 most people have focused on today is the proposed DIP

1  financing.

2          THE COURT:  As you know, I didn't get the lending

3  documents until ten minutes ago.

4          MR. BAKER:  Yes, Your Honor.

5          THE COURT:  I just haven't seen them.

6          MR. BAKER:  Absolutely.  And with the Court's

7  permission, what we had thought might make sense would be to

8  take the DIP as the last item today, let the parties who have

9  significant points to be raised and resolved excuse themselves,

10  step outside to the hall, have a discussion, that hopefully

11  will lead to a resolution on whatever those issues may be,

12  we'll proceed with the other issues.

13          THE COURT:  Okay.

14          MR. BAKER:  We have, I should tell Your Honor,

15  proffers and/or direct testimony to put on in support of the

16  DIP, which Ms. Borders will do.  So if that makes sense, I

17  think that would be our suggestion as a way to proceed.

18          THE COURT:  That sounds fine.  Go ahead.

19          MR. BAKER:  So I would invite the parties, with whom

20  I've previously discussed this matter, if they wish to do so,

21  to avail themselves of the Judge's opportunity to step out and

22  discuss this.  Peter Neckles from my firm and Sarah Borders

23  with King & Spalding will be there on behalf of the company.

24          THE COURT:  I signed the joint administration order

25  already.  So you're one for one without even coming to the

6

1  plate.

2          MR. BAKER:  That's terrific.  We'll try and not go

3  downhill from there.

4          THE COURT:  Okay.

5          MR. BAKER:  Thank you.

6          MS. MCDONALD HENRY:  Actually, Your Honor -- my name

7  is Sally McDonald Henry, and I suspect you will not sign the

8  second order because we are asking for a modification because

9  Judge Drain is not here today.

10          THE COURT:  Which is the second order?

11          MS. MCDONALD HENRY:  The second order is Number 9,

12  the Motion for Approval of Notice Procedures and Scheduling

13  Omnibus Hearings.

14          THE COURT:  Is that something that can wait for Judge

15  Drain?

16          MS. MCDONALD HENRY:  We would like to have the

17  omnibus hearing dates wait for Judge Drain.  With respect to

18  the notice procedures, we're asking for very standard notice

19  procedures in that we're asking for the 2002 -- the people who

20  put in a request for notice to be noticed.

21          THE COURT:  Okay.

22          MS. MCDONALD HENRY:  The 50 largest creditors.

23          THE COURT:  Right.

24          MS. MCDONALD HENRY:  And we thought it might expedite

25  things.  Certainly in the interim Judge Drain could always

1  change it, if the Court would enter this order.

2          THE COURT:  Well, why don't you leave the omnibus

3  hearing dates, the number and the dates, up to Judge Drain

4  since it will affect his calendar, but I'll otherwise approve

5  the noticing procedures, and if you want, you can separate them

6  out and just e-mail or submit a separate order with that.

7          MS. MCDONALD HENRY:  Thank you, Your Honor.  That is

8  exactly --

9          THE COURT:  We'll cross out the order you have if you

10 need it for today.

11         MS. MCDONALD HENRY:  Yes.  That's exactly what we'll

12 do.  We were planning to e-mail you a revised order, as you

13 indicated that you would enter the order.

14         THE COURT:  Okay.

15         MS. MCDONALD HENRY:  The next order that I would like

16 to address -- because we are skipping Motion Number 12, the DIP

17 motion -- is the Motion to Maintain Existing Bank Accounts and

18 Cash Management Systems.

19         THE COURT:  Let me just find it.

20         MS. MCDONALD HENRY:  This is Motion 13.

21         THE COURT:  Which volume was that?

22         MS. MCDONALD HENRY:  It is in Volume 2.

23         THE COURT:  Okay.  Go ahead.

24         MS. MCDONALD HENRY:  Your Honor, the fact with

25 respect to the debtors' cash-management system is set forth in

1  the Declaration of Bennett Nussbaum.  If you would like I can

2  proffer that testimony by going over it again.  Otherwise we

3  could consider the contents of his Declaration to be in the

4  record.

5          THE COURT:  Well, is there anybody who objects to my

6  treating the supporting Declaration as the direct testimony on

7  this particular application?

8          The record should reflect there's no response.

9          Is there anybody in court who wants to cross-examine

10 Mr. Nussbaum on this matter?

11         The record should reflect there's no response.

12         I'll accept this as the testimony of Mr. Nussbaum.

13         MS. MCDONALD HENRY:  Thank you, Your Honor.

14         As you will note from Exhibit A that is attached to

15 the motion, the debtors have a great many bank accounts.  In

16 addition, they have a very complex and sophisticated cash-

17 management system.

18         For that reason the debtors are asking the Court to

19 enter an order allowing them to maintain their current bank

20 accounts, maintain their current cash-management system, and

21 maintain their current investment policies.

22         As the Court is well aware, under 345 of the

23 bankruptcy code, the Court can do that for cause.  Given the

24 number of bank accounts, the complexity of the cash-management

25 system, I think that that order would be appropriate in this

1  particular case.

2          I would note that we have discussed this motion and
3  the requested relief specifically with the Office of the
4  United States Trustee.  We were asked to provide that checks
5  going forward will have a "DIP" or "debtor in possession"
6  designation as we use our continuing check stock, and we have
7  agreed with that request from the Office of the United States
8  Trustee.

9          THE COURT:  Let me hear from the United States
10 Trustee.

11         MS. MARTINI:  Your Honor, we're agreeing to the
12 interim order so that it will give the debtor an opportunity to
13 meet with us in the next couple of days to review their
14 complicated cash-management system and also address some of the
15 banking institutions that they currently do business with who
16 are not authorized depositories in the Southern District of New
17 York, but I'm confident that we can come to a resolution
18 ultimately and enter a final order.

19         THE COURT:  Okay.

20         MS. MARTINI:  So I am agreeing to the interim.

21         THE COURT:  Well, how long will it be in effect for?

22         MS. MCDONALD HENRY:  We have a hearing scheduled for
23 the 4th of March before Judge Drain, so I expect that we'll
24 work it out, and certainly we'll work as expeditiously as
25 possible.

1            THE COURT:  All right.  I'll approve that on an

2  interim basis subject to a final hearing on March 4th at 10

3  a.m. before Judge Drain.

4            MS. MCDONALD HENRY:  Thank you, Your Honor.

5            THE COURT:  Any objections will be due March 3rd --

6  unless I say otherwise, for anything that's scheduled for March

7  4th.  Objections are due by March 3rd, 4 p.m.  That means they

8  have to be received in Chambers by then and filed and served.

9            MS. MCDONALD HENRY:  Thank you, Your Honor.

10            The next matter that's on the calendar today is a

11  Motion to Pay Pre-Petition Wages, Salaries and Other Employee

12  Benefits.  That will be handled by my colleague from King &

13  Spalding.

14            THE COURT:  Okay.

15            MR. BAKER:  Your Honor, Jan Baker again.

16            THE COURT:  When did you move to King & Spalding?

17            MR. BAKER:  It was a recent move, Your Honor.

18            THE COURT:  Okay.

19            MR. BAKER:  Your Honor, with respect to the pre-

20  petition wage and benefit motion, we basically are not

21  attempting to deal with any matters affecting executive

22  compensation, retention or anything of that nature.  We're

23  basically seeking authorization to continue our current

24  employee benefit programs, to honor payroll checks up to the

25  statutory maximum, to continue on an interim basis retirement

1 payments to individuals who have retired from the company, and

2 matters of that nature.

3          We think all of the relief requested has been widely

4 granted here in the Southern District and indeed in most large

5 cases we're familiar with.  We've discussed it with the

6 United States Trustee.  We made several changes at their

7 request, and I believe with those changes they have no

8 objection.

9          MS. MARTINI:  No objection.

10          THE COURT:  I don't have a problem with what falls

11 into the priority wages -- and I use "wages" broadly -- but

12 some of the payments you're seeking to make seem to be pre-

13 petition claims.

14          MR. BAKER:  Your Honor, they are pre-petition claims

15 to the extent:  if an employee had an expense check that he or

16 she hadn't yet cashed, if they had unused benefits of some

17 sort, and we can see those are pre-petition claims.

18          We believe, however, that given the nature of the

19 work force, the fact that the bulk of these people are

20 relatively modestly paid individuals, that the hardship to them

21 and the impact on morale of the company would be

22 disproportionate to the amount of dollars involved.

23          THE COURT:  Aside from the wages, the priority wages,

24 what are you seeking, what's the aggregate amount you're

25 seeking to pay?

1            MR. BAKER:  Your Honor, we'd have to go through and
2  total it up, but I can do that if we could just defer this
3  until later.
4            THE COURT:  Okay, let's defer this one.
5            Next is the Pre-Petition Customer Obligations.
6            MR. WALSH:  Good afternoon, Your Honor.  Brian Wash
7  of King & Spalding.
8            THE COURT:  Good afternoon.
9            MR. WALSH:  Your Honor, debtors obviously in the
10 retail business can't survive without their customers and they
11 cannot count on their customers' goodwill unless their
12 transition into Chapter 11 is seamless from a customer
13 perspective.
14            By this motion we're seeking authority to continue
15 customer-related programs and honor pre-petition obligations.
16 We'd include such programs as product returns if the customer
17 is unsatisfied, gift cards, coupons, reward programs,
18 charitable programs and the like.  We believe this relief is
19 common in retail bankruptcy cases, including prior grocery
20 store cases, and we also believe that the relief we're seeking
21 is uncontroversial, but for today we are seeking only interim
22 relief subject to a final order, which I presume will be at the
23 March 4th hearing before Judge Drain.
24            THE COURT:  Well, what does that mean?  That means
25 you're going to be honoring obligations between now and March

1 4th?

2          MR. WALSH:  Exactly.

3          THE COURT:  So you're going to take back what you've

4 given if it's not approved on a final basis?

5          MR. WALSH:  Well, Your Honor, in theory, yes.  We

6 recognize that some things might be difficult to get back.

7          THE COURT:  Okay.  Anybody want to be heard?

8          I'll approve it on an interim basis.  These are

9 priority claims.  I don't know what you're going to do if you

10 pay the money out between now and then.

11          Okay.  And the return date for the final hearing will

12 be March 4th.

13          MR. WALSH:  Thank you, Your Honor.

14          THE COURT:  Next is the turnover of trust funds.

15          MR. WALSH:  Yes, Your Honor.  In this motion the

16 debtors are seeking two types of relief:  first, to pay over

17 funds that are held in express trusts to several beneficiaries;

18 and second, to pay over proceeds of consignment sales.

19          One example of the express trusts are lottery sales.

20 In five states, Your Honor, lottery sales are important to the

21 debtors.  Those proceeds are held in trust.  But even if they

22 weren't, we think it would be appropriate to pay those monies

23 over.

24          For example, there would be sovereign immunity

25 difficulties if the states were to terminate the lottery

1  programs, in getting those reinstated.

2          THE COURT:  But the money you're turning over is

3  money that's owned by the state, isn't it, it's not the

4  debtors' money?

5          MR. WALSH:  That's right.

6          THE COURT:  All right.

7          MR. WALSH:  That's right.  There are also express

8  trusts with American Express for gift cards and with Western

9  Union for money transfers and money orders, and as Your Honor

10 mentioned, we do not believe these are property of the

11 estate's.

12         The debtors also are requesting to be able to perform

13 under consignment arrangements.  The debtors believe it's

14 important to have a steady supply of consigned goods, which

15 include for example Hallmark greeting cards that are in the

16 stores.  The

17         U.S. Trustee's Office requested that we seek this

18 relief on an interim basis subject to final order, and that is

19 in fact what we are seeking today.

20         THE COURT:  Those sound like transactions in the

21 ordinary course of business.

22         MR. WALSH:  That certainly would be, Your Honor.

23 Some of the consignment proceeds might be pre-petition sales

24 where the debtor still has the proceeds and would be turning it

25 over to the consignor.  But it certainly is in the ordinary

1 course of business, that's right.

2      THE COURT:  Okay.  If the secured creditor isn't

3 contending that that's the secured creditor's collateral, it's

4 presumably property of the consignor.

5      MR. WALSH:  That is correct, as far as we understand,

6 Your Honor.

7      THE COURT:  All right.

8      Does anybody want to be heard?

9      The application is granted, again on an interim

10 basis, with a final hearing on March 4th.

11      MR. WALSH:  Thank you, Your Honor.

12      THE COURT:  Next I have the Motion to Continue to Pay

13 Pre-Petition Insurance and Workers' Comp and Related Expenses.

14      MR. WALSH:  Yes, Your Honor.

15      The debtors have what I would describe as complex and

16 comprehensive insurance and workers' compensation programs.

17 They are a combination of true third-party insurance and self-

18 insurance, and portions -- particularly of the self-insured

19 portions -- are secured by bonds and letters of credit in

20 significant amounts.

21      The debtors are also party to five different premium

22 finance agreement for various lines of insurance coverage, and

23 the debtors are seeking authority on an interim basis to

24 continue all of these programs, to make premium finance

25 payments, Your Honor.  Between now and March 4th each of these

1 five premium finance policies will have a payment due, for

2 example.

3          THE COURT:  Do you know what the aggregate amount of

4 those payments will be?

5          MR. WALSH:  Your Honor, I can find it in the motion.

6 It is going to be in the range of about $2 million.  It's on

7 Page 8 of the motion.

8          THE COURT:  All right.

9          MR. WALSH:  The installments for each are outlined.

10          THE COURT:  Is there anyone who wants to be heard?

11          The record should reflect there's no response.

12          Is this on an interim basis also?

13          MR. WALSH:  It is on an interim basis, Your Honor.

14          THE COURT:  It's approved on an interim basis.  The

15 final hearing will be March 4th at 10:00.

16          Next is the Motion to Pay Pre-Petition Taxes and

17 Ordinary Course Government Obligations.

18          MR. WALSH:  Your Honor, by this motion the debtors

19 are seeking authority to pay pre-petition tax, fee and fine

20 obligations, and particularly trust fund taxes.  The sales,

21 use, gasoline and similar taxes are held in trust.  We do not

22 believe they are property of the estate and the debtors don't

23 have any right to withhold them from taxing authorities.  Many

24 other taxes that may come due are secured or priority in nature

25 and would have to be paid under a plan, and the debtors may

1  conclude that their ability to delay payment would not be

2  worth, for example, increased audit activity, litigation over

3  how to pro-rate taxes between pre-petition and administrative

4  planning and similar issues.

5         It's also important that the debtors have the

6  ability, for example, to remain in good standing in various

7  jurisdictions and to remain in the good graces of health

8  authorities, health regulatory authorities, for example.

9         Your Honor, we're not seeking to be required to pay

10 all taxes, simply to have the discretion to do that.

11        We had initially presented this with a final order,

12 Your Honor, recognizing that you are sitting in for Judge Drain

13 today.  We have sent over to Judge Drain's law clerk an interim

14 order instead, and so today we are asking for this to be

15 approved simply on an interim basis.

16        There are some taxes that will come due -- in fact

17 some taxes that were due last Friday and did not get paid --

18 between now and March 4th.  And so that is an example of the

19 sort of thing we would like to have approved with an interim

20 order this afternoon, Your Honor.

21        THE COURT:  Is there anyone who wants to be heard?

22        The record should reflect there's no response.

23        The motion is granted on an interim basis.  The final

24 hearing will be March 4th at 10:00.

25        MR. WALSH:  Thank you, Your Honor.

1          THE COURT:  Next is your Number 19.

2          MS. MCDONALD HENRY:  Good afternoon, Your Honor.

3 Sally McDonald Henry again.

4          The next one is the motion to get granted

5 administrative expense status to obligations arising from the

6 post-petition delivery of goods and to authorize the payment of

7 certain shipping and warehouse charges.

8          As my colleague Mr. Baker explained, it's critical to

9 this reorganization that the debtors maintain the flow of

10 goods, that they maintain the operations in their stores and

11 that they have a business turnaround.  We believe that this

12 motion is critical for that reason.

13         The first question, of course, is that always when

14 there is a Chapter 11, a number -- absent this order there's a

15 great question about whether administrative expense status will

16 be granted, there's a question of whether new purchase orders

17 have to be entered.

18         This will merely clarify it and make it clear.  We're

19 asking or this relief on a final basis.

20         THE COURT:  Well, as long as the goods are delivered

21 pre-petition, that's all that really matters.

22         MS. MCDONALD HENRY:  I agree with that analysis --

23         THE COURT:  Okay.

24         MS. MCDONALD HENRY:  -- but oftentimes we have

25 questions that are asked and you can spend a lot of time trying

1  to convince people that that's the case.

2          THE COURT:  So how are you going to convince them?

3  You're going to give them a copy of the order?

4          MS. MCDONALD HENRY:  Exactly, Your Honor.

5          THE COURT:  Okay.  And they're going to sit there and

6  read this order before they let their stuff --

7          MS. MCDONALD HENRY:  In my experience, it actually

8  can be effective.

9          THE COURT:  Okay.

10          MS. MCDONALD HENRY:  And it's not that you'll have 20

11  or 30 calls, but you might have five critical calls.

12          THE COURT:  Okay.

13          MS. MCDONALD HENRY:  The second issue is with respect

14  to the common carriers and the warehousemen.

15          As you know, under applicable law in many cases liens

16  are created.  As I'm sure the Court is also aware, this part of

17  the operation is absolutely critical.  If the milk is spoiled,

18  if it's not distributed, if critical products -- such as

19  bananas, milk, break -- aren't delivered on time it can be

20  devastating to the operations of the debtors, and for that

21  reason we're asking for relief on an interim basis.

22          THE COURT:  You mean on a final basis?

23          MS. MCDONALD HENRY:  If the Court would be willing to

24  grant it -- well, actually, we've spoken to the Office of the

25  United States Trustee and we agreed that we would seek it on an

1  interim basis.

2          THE COURT:  Okay.

3          MS. MCDONALD HENRY:  So we're talking about shipping

4  charges perhaps $1.85 million and warehouse charges of

5  $75,000.00, but --

6          THE COURT:  These are for goods that you haven't

7  gotten yet and presumably you're not going to get unless you

8  pay the shipping expenses.

9          MS. MCDONALD HENRY:  Yes, exactly, Your Honor.

10          THE COURT:  All right.  Is there any objection to an

11  interim order?

12          MS. MARTINI:  No objection, Your Honor.

13          THE COURT:  Anybody else?

14          The record should reflect there's no response.

15          I'll approve it on an interim basis.

16          I think you're making a lot of work for yourself,

17  approving a lot of these on interim bases, but go ahead.

18          MS. MCDONALD HENRY:  Your Honor, thank you very much.

19          The next order that we have is the PACA/PASA motion,

20  Number 20.  Although it's labeled Perishable Agricultural

21  Commodities Act, in the order we have also provided that claims

22  arising under PASA --

23          THE COURT:  What's PASA?

24          MS. MCDONALD HENRY:  Packers and --

25          THE COURT:  Oh, the Packers and Stockyards Act.

1            MS. MCDONALD HENRY:  I'm sorry.  I've used the
2     acronym so many times I can't say it.
3            THE COURT:  Okay.
4            MS. MCDONALD HENRY:  But you can see it set forth in
5     the order.
6            In any event --
7            THE COURT:  Well, these creditors have lien claims,
8     don't they?
9            MS. MCDONALD HENRY:  Yes.  Actually, they -- it's not
10    even property of the estate under the federal law; it's held in
11    trust.  This is to set up a procedure that will allow us to
12    assure people who contend that they hold those claims that we
13    will address their contentions, that we'll get back to them on
14    a timetable, and that we will recognize their claims to the
15    extent that they're valid under applicable non-bankruptcy law.
16           THE COURT:  All right.  And this is on an interim
17    basis also?
18           MS. MCDONALD HENRY:  Yes, Your Honor, it is.
19           THE COURT:  All right.
20           Is there anyone who wants to be heard?
21           MR. FRIEDMAN:  Yes, Your Honor.
22           THE COURT:  Step up, state your name and say who you
23    represent.
24           MR. FRIEDMAN:  Mark Friedman, Your Honor, Kraft and
25    Sara Lee and McCormick.

1          Just a couple of points, because I understand the

2    need to have some arrangement in place on an interim basis.

3          There are some states that have counterpart state

4    lien laws to PACA and PASA and I think the order should be

5    amended to include protection to the extent that can be

6    established.  They vary all across the country, but there are

7    some states that have them.

8          Secondly, since this -- there is a lien, it's not

9    property of the estate, but we have in the interim procedure

10   these things being paid as an administrative claim.  I think

11   the order should just make clear this doesn't prejudice any

12   rights of PACA/PASA creditors to argue constructive trust

13   theory or anything else depending what happens on a final basis

14   with respect to the DIP lending order.

15          THE COURT:  It's the debtors' motion.  Let me hear

16   from the debtor.

17          MS. MCDONALD HENRY:  We have no objection to these.

18   And we'll work on language of the order and send -- e-mail an

19   amended order to the Court.

20          THE COURT:  Okay.  Just represent that he's seen the

21   order and he has no objection to it.

22          MS. MCDONALD HENRY:  Yes, Your Honor.

23          THE COURT:  Okay.

24          MR. FRIEDMAN:  Thank you.

25          THE COURT:  All right.  Is that also on an interim

1  basis?

2          MS. MCDONALD HENRY:  Yes, Your Honor, it is on an

3  interim basis.

4          THE COURT:  Okay.  It's approved on an interim basis,

5  subject to those changes.

6          MS. MCDONALD HENRY:  Thank you, Your Honor.

7          The next motion that we're asking for, again on an

8  interim basis, is an order allowing the return of goods under

9  546(g) of the bankruptcy code, establishing procedures for the

10  treatment of reclamation claims and providing for the absence

11  of an appearance with third parties with the delivery of goods.

12          As you can imagine, in this particular case we

13  anticipate that there will be a number of reclamation claims

14  that are asserted, and we've tried to set forth a streamlined

15  procedure.

16          I've spoken with various counsel this morning.  They

17  do have some questions about it, and I have told them that I

18  would work with them with respect to that.

19          THE COURT:  Is this something that can wait till the

20  4th?  Do you anticipate anything coming up between now and the

21  4th?

22          MS. MCDONALD HENRY:  Your Honor, the problem is that

23  if people don't see this order entered, they sometimes will

24  feel a need to commence an adversary proceeding.  Some people

25  are concerned that they would somehow waive their rights, and

1  that's why we have asked for that particular relief in

2  particular.

3          THE COURT:  All right.  In light of the responses

4  you've gotten from people, how do you propose to deal with this

5  one?

6          MS. MCDONALD HENRY:  Well, we're proposing to deal

7  with it on an interim basis, to talk with people if they have

8  any questions.  We didn't have any -- we had no objections

9  raised to it, but people asked us if they would talk about the

10 procedures and that type of thing.

11         THE COURT:  Okay.

12         MS. MCDONALD HENRY:  I had no one who specified an

13 objection.  Did I have that I would report that to the Court.

14         THE COURT:  All right.

15         Is there anyone who objects to the entry of the order

16 attached to the first day papers on an interim basis?

17         Yes, sir.  State your name again, please.

18         MR. FRIEDMAN:  Mark Friedman, on behalf of Sara Lee,

19 Kraft Foods and McCormick.

20         If I could suggest, Your Honor, if I could have maybe

21 five minutes to speak to counsel, we may be able to resolve

22 some of the concern with the breadth of the order.

23         THE COURT:  All right.  You know, nothing is really

24 going to happen between now and March 4th, you'll have an order

25 in place, I guess, and if you have a problem, you can take it

1   up with, you know, Judge Drain in the final order.  But you're

2   certainly welcome to speak to counsel, time permitting.

3           MR. FRIEDMAN:  I do agree with debtors' counsel that

4   an interim order of some kind is very useful for both sides

5   because there are some rights that can get compromised in the

6   interim, and I would hope that we could resolve this.

7           THE COURT:  Okay.  I understand that.  I'm prepared

8   to sign this order.  I'm sure that any issues you have you can

9   take up with the final order, if all you need is an interim

10  order in place.

11          MR. FRIEDMAN:  I'm just concerned that the parties

12  would be forced to take action --

13          THE COURT:  Okay.

14          MR. FRIEDMAN:  -- or might be compromised even on an

15  interim basis.

16          THE COURT:  All right.  What I'll ask you to do,

17  then, is e-mail an order when it's resolved, but make a

18  representation that Mr. Friedman consents to the form of the

19  order.

20          Is there anyone else who wants to be heard?

21          Okay, the record should reflect there's no response.

22          MS. MCDONALD HENRY:  Your Honor, it may be that I can

23  speak to Mr. Friedman --

24          THE COURT:  Okay.

25          MS. MCDONALD HENRY:  -- and it may be that given the

1  timing of the discussions with respect to the DIP we can

2  resolve it now, because I do think it is important to get the

3  order entered as soon as possible.  So I will attempt to take

4  care of it in the hall.

5          The next order is Order Number 22.  It's a Motion for

6  Authority to Pay Certain Work-in-Progress Claims and on-site

7  providers.

8          Now, this is a critical order from the debtors' --

9          THE COURT:  It's also a critical vendor order.

10          MS. MCDONALD HENRY:  It may be in part a critical

11  vendor order.

12          THE COURT:  Well, it looks like you want to pay pre-

13  petition claims --

14          MS. MCDONALD HENRY:  Yes.

15          THE COURT:  -- to induce people to do post-petition

16  work on the theory that they won't do it if they don't get

17  paid.

18          MS. MCDONALD HENRY:  Your Honor, with respect to some

19  of these claims, they may be subject to material -- to

20  mechanics liens.

21          THE COURT:  To the extent there's a lien, you know,

22  you can key it up as an adequate protection payment.  That's

23  really not a problem.  But it struck me when I read this that

24  some of these payments are not lien payments; they're simply

25  paying pre-petition claims.

27

1          MS. MCDONALD HENRY:  Your Honor, that is correct.
2  Some of these claims are pre-petition claims.  The reason that
3  the debtor has asked for this, as set forth in the Declaration
4  of Mr. Nussbaum, is that it is so critical for two reasons:
5  number one, the health and safety of all of the employees and
6  of all of the people who come to the stores --
7          THE COURT:  See, but there's an underlying assumption
8  in a motion like this that the vendor -- for lack of a better
9  phrase -- won't provide the service or the goods if they're not
10 paid.  Do any of these vendors have a contractual obligation to
11 continue to work?
12         MS. MCDONALD HENRY:  Very few of them have such --
13         THE COURT:  So why pay them if they have some sort of
14 an agreement which requires them to work?
15         MS. MCDONALD HENRY:  No, I'm saying, Your Honor, in
16 fact very few of them do have an agreement to work.
17         THE COURT:  But some of them do.
18         MS. MCDONALD HENRY:  Yes.  Well, this order doesn't
19 ask for -- doesn't direct the debtors to pay these people; it
20 rather has -- it sets forth the discretion of the debtors to
21 pay the as the debtors believe is necessary for the continued
22 operations of the stores --
23         THE COURT:  And how do I do this without notice to
24 the creditors?
25         MS. MCDONALD HENRY:  Well, this again is on an

1 interim basis.

2       THE COURT:  So it's without prejudice to get the

3 money back?

4       MS. MCDONALD HENRY:  Yes, it is, Your Honor.  That is

5 correct.  That is correct.  Although -- you know, although I

6 can understand that --

7       THE COURT:  Are you going to tell these people when

8 you pay them that "By the way, if it's not approved on a final

9 basis, the debtor can sue to get the money back, or the

10 committee will if the debtor doesn't"?

11       MS. MCDONALD HENRY:  Your Honor, if necessary we will

12 do that.

13       THE COURT:  All right.

14       Does anybody want to be heard with respect to this

15 application?

16       All right, as long as it's on an interim basis and

17 everybody understands that.  To the extent vendors are

18 contractually obligated to deliver a good to a service, I don't

19 see why you should be paying them and I would carve that out of

20 the order.

21       On the other hand, I have no problem with you paying

22 lien claimants because they're really forms of adequate

23 protection payments.  But the order should make clear that it's

24 without prejudice to the court at the final hearing to

25 determine -- not to enter the final order, in which event these

1  amounts will have to be repaid.

2          MS. MCDONALD HENRY:  Thank you, Your Honor.

3          THE COURT:  All right.  Subject, obviously, to

4  reinstatement of any lien rights that somebody may have.

5          When is a committee going to be appointed in this

6  case?

7          MS. MARTINI:  Your Honor, we're targeting March 1st

8  for the organizational meeting.

9          THE COURT:  Okay.

10         MS. MARTINI:  So it will be very -- in the near

11 future.

12         THE COURT:  Okay.  Because it seems to me that these

13 kinds of motions go through a lot easier once you have a

14 committee in place.

15         MS. MCDONALD HENRY:  Yes, Your Honor, we recognize

16 that, and that's one of the reasons why we think that only

17 interim relief is appropriate in this particular case.

18         THE COURT:  Okay.

19         MS. MCDONALD HENRY:  Your Honor, the next motion to

20 be heard today is with respect to utilities.

21         THE COURT:  I don't know, I don't have that.

22         MS. MCDONALD HENRY:  Oh, I beg your pardon.

23         THE COURT:  That you can do by regular notice.

24         MS. MCDONALD HENRY:  Yes, you're right.

25         THE COURT:  You have a 20-day stay anyway.

1            MS. MCDONALD HENRY:  I misspoke, Your Honor.

2            MR. BAKER:  Your Honor, I think the next matter is

3    Item Number 24, dealing with rejection of closed store leases.

4            As indicated in the pleadings prior to the filing and

5    over the last year, the debtors have been engaged in an effort

6    to abandon unprofitable locations.

7            Unfortunately, the annual run rate of those locations

8    when closed -- and we're talking now only about the locations

9    that are truly dark, have not been subleased, have no

10   subtenants, and are simply a recurring monthly cash drain,

11   those obligations total about $70 million a year.

12           As a result the debtors thought it was particularly

13   important to get this motion before the Court today before

14   lease payments are due on March 1, with the provision that it

15   will be done on negative notice.  All of the landlords whose

16   leases are being rejected will be noticed.

17           If any of them believe that the rejection is

18   improvident or inappropriate, they'll have an opportunity to be

19   heard.

20           THE COURT:  What's the procedure that you propose?

21           MR. BAKER:  We're going to notice all of them,

22   Your Honor, and give them I think 15 days to object.

23           THE COURT:  You could bring on a rejection motion on

24   10 days' notice.

25           MR. BAKER:  Let's see.

1          THE COURT:  I was going to say why don't you just

2  move to reject these leases on 10 days' notice?

3          MR. BAKER:  Well, we were concerned, Your Honor, that

4  the -- we didn't want to create an argument that the rental for

5  March 1 was due as an administrative expense.  We wanted to be

6  able to argue that as of March 1, to the extent that the Court

7  does not ultimately sustain any objection or --

8          THE COURT:  Well, that's what I was going to ask.  So

9  you're going to send out a notice and that notice is going to

10 be the rejection?

11         MR. BAKER:  We will notify them that the Court has

12 approved the rejection of the lease but if they object they

13 have a right to come in and be heard and the Court will

14 reconsider that objection.

15         We believe, frankly, that virtually all of these

16 landlords understand this is going to happen and that, simply

17 put, they're not going to object.  If we do, we recognize they

18 didn't have notice today, we can't bind them, and if there's a

19 30-day or 60-day delay while the Court is considering this

20 matter, we're going to have to pay the lease.

21         THE COURT:  Is there amount of time between the time

22 you send the notice and the time the rejection is effective?

23         MR. BAKER:  We want to make it effective, absent

24 objection, as of March 1.

25         THE COURT:  So it really is like a notice of motion

1  to reject the lease effective March 1.

2            MR. BAKER:  Exactly.

3            THE COURT:  All right.

4            Is there anyone who wants to be heard?

5            MS. MARTINI:  Your Honor, I was troubled by the

6  negative notice that's postured in the interim order, but

7  because the debtor has such sizeable rental payments for these

8  facilities -- which are dark, which are not of a benefit to the

9  estate -- I thought the overall savings to the company

10  outweighed the notice procedures when in fact, as Mr. Baker

11  stated, the landlords will have an opportunity to come into

12  court and to posture any defense or any objection that they may

13  have with respect to their particular lease.

14            THE COURT:  All right.  When do you plan to send out

15  these notices, today or tomorrow?

16            MR. BAKER:  We'll send them out tomorrow, Your Honor.

17            THE COURT:  And how long will they have to object?

18            MR. BAKER:  15 days.

19            THE COURT:  All right.  You know, you could

20  accomplish the same thing by shortening the time to make a

21  motion to reject the lease, but as long as they have an

22  opportunity to come in -- and your order should provide that in

23  the event they do object, "you have the burden of proof to show

24  that the rejection was an appropriate exercise of business

25  judgment."

1        MR. BAKER:  Absolutely.

2        THE COURT:  Fine.

3        MR. BAKER:  We'll amend the order to provide that and

4  e-mail it to Your Honor.

5        THE COURT:  Is there anyone who wants to be heard

6  with respect to that order?

7        All right, the record should reflect there's no

8  response, so I'll grant that as modified.

9        Do you want to do the attorney retention

10  applications?  I know they're not on your hot list, but they

11  probably won't take very long.

12        MS. MARTINI:  Your Honor, they would, actually.

13        THE COURT:  Oh, really.

14        MS. MARTINI:  We have some issues with a few of the

15  professionals that are proposed to be retained.  So I would

16  like an opportunity to try to resolve those issues before we

17  even go forward on an interim basis.

18        THE COURT:  All right.  Do you want another hearing

19  date this week or do you just want to deal with it with Judge

20  Drain next week?

21        MR. BAKER:  We'll deal with it on the 4th,

22  Your Honor, if that's acceptable.

23        THE COURT:  All right.  I'm sure whatever he does is

24  going to relate back to the date of the filing so it's not

25  going to matter.

1            MS. MARTINI:  That's fine.

2            THE COURT:  Okay.

3            MS. MARTINI:  Thank you.

4            THE COURT:  I guess that leaves your financing order.

5            MR. BAKER:  Your Honor, if we could return to Item

6    Number 14 on the pre-petition benefits.

7            THE COURT:  Right.

8            MR. BAKER:  Your Honor had asked for a total.  As

9    nearly as I can tell, Your Honor -- with the caveat that, as

10   stated in the motion, some of these amounts are estimated -- we

11   think that it is approximately $15- to $16 million, separate

12   and apart from wages that are owed, up to the amount of the

13   cap.  And we're talking about things such as tuition

14   reimbursement, business expenses --

15           THE COURT:  But how much of that are you going to

16   have to pay -- aside from the wages, how much of that do you

17   have to pay between now and March 4th?  You have tuition

18   programs here, you have various types of programs.

19           MR. BAKER:  Your Honor, I don't have that -- I don't

20   have it broken down that way.  I simply have a gross amount.

21   All I can do is tell Your Honor that the companies told me they

22   think the employees are going to be very focused on trying to

23   see if those payments come in when the employees expect them

24   to, and I think all we're asking today is to make them in the

25   ordinary course.

1          If at the hearing on the 4th something is not paid

2  and the Court determines it's inappropriate to make further

3  payments, then they won't be made.

4          THE COURT:  Okay.

5          Is there anyone who wants to be heard with respect to

6  that proposal?

7          All right, the record should reflect there's no

8  response.

9          I'll approve it on an interim basis, which is not to

10 say you have to pay these expenses, and you certainly shouldn't

11 be pre-paying any expenses between now and then, at least until

12 a committee is appointed and has a chance to take a look at

13 this.

14         MR. BAKER:  Exactly, Your Honor.

15         THE COURT:  I realize most of these are employees and

16 they're probably hourly employees and they're not making very

17 much money.

18         MR. BAKER:  Yes.

19         THE COURT:  All right.

20         Now, what do you want to do with the DIP order?

21         MR. BAKER:  Your Honor, if I could take a two-minute

22 recess and just go out and ask the parties --

23         THE COURT:  Because I had a lot of issues with it,

24 other than not having seen the underlying agreements, and

25 there's someone who wants -- some landlord's attorney who wants

1 to appear by telephone.  That's done.

2          MR. BAKER:  Okay.

3          THE COURT:  So you want to recess until 3:00?  It's

4 now 10 to 3.

5          MR. BAKER:  That would be fine, Your Honor, and we

6 can give you a report then.

7          THE COURT:  All right.  Just knock on Chambers when

8 you're ready.

9          MR. BAKER:  Thank you, Your Honor.

10                         [Second call.]

11          THE COURT:  I understand that you've agreed to

12 adjourn the DIP financing motion for a day and to enter into a

13 cash collateral order.

14          MR. BAKER:  Yes, Your Honor.  We believe the parties

15 made significant progress on the issues that they had raised

16 but we thought under the circumstances, particularly with the

17 lateness at which this reached Your Honor, if Your Honor had

18 any time tomorrow to allow us to come back.

19          THE COURT:  You can come back at -- why don't we say

20 10:30.  I have a calendar in the morning starting at ten but

21 it's not long.

22          What are the terms of the interim cash collateral

23 order, just a replacement lien to the extent that they use cash

24 collateral?

25          MR. BAKER:  Very abbreviated.

1          THE COURT:  That's all the order should ever look
2    like.  There's no reason for a forty page order on the first
3    day of the case.
4          MR. BAKER:  So maybe tomorrow we can convince of
5    where we are.  Should I hand it up to your clerk?
6                    [Pause in proceedings.]
7          THE COURT:  Why don't you make an offer of proof
8    though on the findings?  You had some blanks in the order, Mr.
9    Helfat.
10         MR. HELFAT:  Yes, we were talking to one of the
11   principals, Your Honor, to try to --
12                   [Pause in proceedings.]
13         MS. BORDERS:  Your Honor, Sarah Borders of King &
14   Spalding representing Winn-Dixie.
15         Your Honor, today in the courtroom is Mr. Bennett
16   Nussbaum who has been represented to me as the chief financial
17   officer of Winn-Dixie stores.  If called to testify, he would
18   testify today that prior to the filing of the bankruptcy cases
19   the debtors obtained financing of up to $600 million from a
20   group of lending institutions led by Wachovia Bank.
21         As of the petition date, the debtors had outstanding
22    under that facility $265 million under revolver and $162
23   million in reimbursement obligations related to issued and
24   outstanding letters of credit.  The amount owed to the pre-
25   petition bank group is secured by perfected liens on and

1  security interest, among other things, inventory, pharmacy

2  receivables, pharmacy scripts and certain owed real property of

3  the borrowers as well as a pledge of the equity interest in the

4  debtor's domestic subsidiaries.

5          Mr. Nussbaum would further testify that substantially

6  all of the cash generated by the debtors is cash collateral.

7  He would further testify that the debtors do not have

8  sufficient available sources of working capital and financing

9  to carry on the operation of their businesses without the use

10  of cash collateral today.  He would testify that cash

11  collateral is necessary to pay payroll expenses, to purchase

12  goods and services from trade vendors, and to otherwise meet

13  the obligations of the debtors which occurred during the period

14  covered by the interim cash collateral order.

15          Your Honor, we would be happy to offer Mr. Nussbaum

16  for cross-examination if anyone would like for him to testify.

17          THE COURT:  Is there anyone who objects to the offer

18  of proof as Mr. Nussbaum's direct testimony or wants to cross-

19  examine Mr. Nussbaum?

20          The record should reflect there's no response.

21          Go ahead.

22          MS. BORDERS:  Thank you, Your Honor.

23          THE COURT:  There are blanks in the proposed order.

24  Other than the date for the hearing which is tomorrow at 10:30,

25  which I'll treat as determinous of the cash collateral period,

1  what should I fill in here?  What's the amount of cash

2  collateral you're agreeing to make available?

3          MR. BAKER:  Your Honor, the debtors with the consent

4  of the banks would propose $100 million.

5          THE COURT:  How did you come up with that except for

6  it being a nice round number?

7          MR. BAKER:  Mr. -- we discussed with Mr. Helfat from

8  Blackstone and Mr. Nussbaum their sort of worst case scenarios.

9          THE COURT:  Well, you have to pay at least $25

10  million in wages.

11          MR. BAKER:  Precisely.  Precisely.

12                        [Pause in proceedings.]

13          MR. BAKER:  Does anybody object to the authority to

14  use up to $100 million?

15          The record should reflect there's no response.  Just

16  tell me what to fill in these blanks now in the order.

17          MS. BORDERS:  Your Honor, on Page 6, Paragraph 1 it

18  would be through tomorrow afternoon.

19          THE COURT:  Tomorrow afternoon?

20          MS. BORDERS:  Yes, Your Honor.

21          THE COURT:  Five p.m.?

22          MS. BORDERS:  Five p.m. would be satisfactory.

23          THE COURT:  Eastern time?

24          MS. BORDERS:  Yes, Your Honor.

25          THE COURT:  Okay.

1           MS. BORDERS:  The next two blanks --

2                      [Pause in proceedings.]

3           MS. BORDERS:  Your Honor, that sentence really

4    contemplated a longer use of cash collateral with a shorter --

5    a limitation during an interim period.  We could solve the

6    problem by having $100 million in the first blank.

7    Substantially all of the cash is cash collateral.  So it would

8    be $100 million in the second blank.

9           THE COURT:  Okay.

10          MS. BORDERS:  And then $100 million in the third

11   blank.

12          Then in Paragraph 2, the right to use cash collateral

13   would terminate again at the close of business tomorrow

14   afternoon.

15                      [Pause in proceedings.]

16          MS. BORDERS:  Your Honor, that completes all of the

17   blanks.

18                      [Pause in proceedings.]

19          THE COURT:  Are there any other comments to the

20   proposed order?

21                      [Pause in proceedings.]

22          THE COURT:  I've signed the order.

23          Now, with respect to the -- do you have a disk for

24   this?  Does anybody have a disk for the cash collateral order?

25          Some of the questions I had about the cash -- the DIP

1   financing order are resolved by the fact that I now have the
2   loan documents which I'll have an opportunity to see, but an
3   overall impression I had was that to some extent the order
4   affected the rights of third parties and often the in personam
5   rights of third parties who have not received any notice of the
6   application.  I assume had not seen notice and certainly didn't
7   have an opportunity to be heard.  Let me just go through a
8   couple of these.
9                   [Pause in proceedings.]
10           THE COURT:  I just want to make sure also that nobody
11  other than the pre-petition senior lenders are being primed.
12  Is that correct?  So anybody else who has a valid lien for
13  whatever reason is not being primed.
14           MR. BAKER:  That's correct, Judge.  It's a 363 order.
15   We are not priming -- we are paying off the pre-petition and
16  that's it.
17           THE COURT:  But it's a forty page 363 order.
18           MR. FRIEDMAN:  Your Honor, that's why we wanted to
19  give you more time.  We're not trying to --
20           THE COURT:  I saw the order.  It was the agreement
21  that I didn't see.
22           On Page 18 you're talking about if you choose -- did
23  you have something, Mr. Friedman?
24           MR. FRIEDMAN:  Your Honor, there is a concern.  We
25  talked about it, but that there are other third parties who are

42

1 having certain rights primed, offset rights and reclamation

2 creditors.

3        THE COURT:  The reclamation creditors under the

4 proposed agreement are going to get administrative claims.

5        MR. FRIEDMAN:  And there are -- there's language that

6 has been under discussion that would resolve all of these

7 various categories of rights that at least I'm concerned about

8 with respect to third parties.

9        THE COURT:  You're going to have a chance to talk.

10 Let me just go through some of the things I saw.  On Page 18

11 it's that long Paragraph 7 and it has to do with lien

12 perfection and it has the usual provision that says you don't

13 have to do anything but it gives you the right to file whatever

14 documents you have to file to preserve the lien, and then it

15 says to the extent that there's a problem with your filing

16 under applicable non-bankruptcy law either somehow that law is

17 preempted or it's unconstitutional and I don't know how I could

18 declare that in this order.

19        That one I've never seen, Mr. Helfat.

20        MR. HELFAT:  Do you want us to address any of these

21 this afternoon?

22        THE COURT:  No, I'm not going to approve it.  You

23 don't have to address it.

24        Then you talk about in the event there's a problem

25 with the way you record the lien or there's a problem with the

1  lien document it doesn't matter, it's still a valid recording.

2  Well, what about if a third party relies on that and there's a

3  missed -- an improper description of collateral or something

4  like that?  How can I cut off the right to the third party in

5  an order like this?

6           Next, I'm on Page 21.  There's $1 million priority

7  claim given to the pre-petition lender.  What's the basis of

8  that other than leverage?  This is in part if they have to

9  litigate with you they get a $1 million priority claim to pay

10 their fees?  Sort of chills the desire to challenge their lien,

11 doesn't it?

12          MR. BAKER:  That was the request of the pre-petition

13 lenders, Your Honor.

14          MR. HELFAT:  Your Honor, I don't mean to be at all

15 sarcastic, but there's $12 million for the various

16 professionals in the case.

17          THE COURT:  Yes, but that's the price you pay for

18 using Chapter 11.  I suppose if somebody sues you, you don't

19 even have to defend it and then you'll save your legal fees at

20 the risk of sounding facetious.  I have never seen that one --

21 it may have come up in other guises in more subtle ways but

22 I've never seen granting a lender a priority claim in order to

23 defend the litigation brought by the estate or an estate

24 representative.

25          MR. HELFAT:  Okay.

1          THE COURT:  If your pre-petition loan documents give
2    you a lien up to the amount of your attorney's fees and that's
3    covered, well then you have a lien if that's what it gives you.
4     You have whatever rights you have under the agreement it seems
5    to me.
6          MR. HELFAT:  It was an attempt to limit something,
7    Your Honor, because they do have that right and we didn't want
8    it to go more than $1 million.
9          THE COURT:  Well, if you want to say notwithstanding
10   the rights you won't be entitled to any more than $1 million.
11   That I understand.  But when you read this it looks like it's
12   just giving you $1 million priority claim out of nowhere.
13          Paragraph 11 seems -- I interpret it to say if the
14   debtor has an agreement with somebody else which says that the
15   debtor can't borrow money -- petition financing will not be
16   invalidated by that provision or actually it says the provision
17   is nullified and you may be right in the end but I don't know
18   how I could nullify somebody else's contractual rights without
19   notice.  I think you're probably right.  You can borrow the
20   money so they have a pre-petition claim, that's all, for the
21   amount of the debt.
22          These are the kind of provisions that I saw in there
23   which I thought were inappropriate.  Now, here's one I'm sure
24   every landlord will object to and that is in the event of a
25   default you have the right to go into the leased property and

1  use it.  After 900 landlords in this case you're going to get

2  900 objections to that one and they will all say the same

3  thing.  If you want to get the property you have to assume it

4  and assign -- the debtor has to assume and assign the lease to

5  you.

6           But, in any event, I don't see how I could approve

7  that without notice to the landlords or with respect to the

8  trademarks and the intellectual property, I don't know what the

9  agreements say and it may be that you're not allowed to use

10 those trademarks.  Again, these are issues which should be

11 dealt with with third parties present.  I can't declare their

12 rights.

13          Paragraph 23 is really a stylistic issue.  It says

14 that no order shall be entered that provides for certain

15 things.  Usually it comes up in the guise of no order shall be

16 entered dismissing the case unless it provides for payment in

17 full of the secured creditor's loan.  That's not what this one

18 says but it's a similar one and really we don't approve

19 restrictions on what orders will say.  You can say that

20 notwithstanding anything to the contrary entered in this case

21 your liens and claims would have priority over all other liens

22 and claims or something like that which is what I think you

23 mean.  But you never know what's going to come up in an order

24 and then the question is well if the order contains the

25 offending provision what does that mean, is the order void.

1          So those are kind of my general comments but

2 generally it's the affect on third parties who haven't been

3 heard.

4          Is there anyone else before we break for the day?

5          So I'll see you tomorrow at 10:30.

6          MS. MCDONALD HENRY:  Your Honor, excuse me.  On the

7 reclamation order we would like to have that on for 10:30

8 tomorrow morning too.  We have made considerable progress.

9          THE COURT:  Okay.  Anything else you want to have on

10 for 10:30 tomorrow?

11          MS. MCDONALD HENRY:  No, thank you, Your Honor.

12          THE COURT:  Okay.

13                        *  *  *  *  *

14

15

16

17

18

19

20

21

22

23

24

25

47

1

2

3

4

5

6

7

8

48

1      I certify that the foregoing is a court transcript from an

2 electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5

6                                    Debbie Barnard

7 Dated:   4/7/05

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24