## LIST OF EXHIBITS

| | | |
|---|---|---|
| Exhibit A-1 | - | List of Stores |
| Exhibit A-2 | - | Description of Leases and Leased Premises |
| Exhibit A-3 | - | List of Shopping Centers |
| Exhibit B | - | Form of Bill of Sale |
| Exhibit C | - | Form of Closing Statement |
| Exhibit D | - | Schedule of Certain Excluded Personal Property |
| Exhibit E | - | Form of General Assignment |
| Exhibit F | - | Allocation Schedule |
| Exhibit G | - | List of Subleases |
| Exhibit H | - | Schedule of Seller and Winn-Dixie Disclosures |
| Exhibit I-1 | - | Form of Landlord Estoppel Certificate |
| Exhibit I-2 | - | Form of Seller Estoppel Certificate |
| Exhibit J | - | Required Consents |
| Exhibit K | - | Form of Lease Assignment |
| Exhibit L | - | Form of DEA Power of Attorney |
| Exhibit M | - | Form of Operating Agreement |

EXHIBIT A-1
To Asset Purchase Agreement

List of Stores

| Store | City | County, State | Transaction |
|-------|------|---------------|-------------|
| #954 | Midlothian | Chesterfield County, Virginia | Assignment |
| #956 | Highland Springs | Henrico County, Virginia | Assignment |
| #967 | Quinton | New Kent County, Virginia | Assignment |

EXHIBIT A-2
To Asset Purchase Agreement

Description Of Lease And Related Land

**WINN-DIXIE STORE #954**
Midlothian, Virginia

Lease:            Deed of Lease dated as of August 6, 1990, between The Village at
                  Waterford, as landlord and Winn-Dixie Raleigh, Inc., as tenant;

                  As evidenced by Deed of Short Form Lease dated August 6, 1990
                  recorded in Book 2172, page 406, of the public records of the
                  Office of Clerk of Circuit Court of Chesterfield County, Virginia.

                  As amended by Supplemental Lease Agreement to lease dated
                  January 31, 1992.

Premises:         That certain store building and related improvements located at
                  13530 Genito Road, Midlothian, Virginia  23112.

Legal Description: The real property as more particularly described as follows:

                  The LEASED PREMISES set forth and described in Deed of Short
                  Form of Lease between The Village at Waterford, as Landlord, and
                  Winn-Dixie Raleigh, Inc., as Tenant, dated August 6, 1990 and
                  recorded in Book 2172, page 406 of the Office of Clerk of Circuit
                  Court of Chesterfield County, Virginia.

**WINN-DIXIE STORE #956**
Highland Springs, Virginia

Lease:              Deed of Lease dated as of April 28, 1983, between Springer
                    Associates, as landlord and Winn-Dixie Raleigh, Inc., as tenant;

                    As evidenced by Deed of Short Form Lease dated April 28, 1983
                    recorded in Book 1880, page 1080, of the Office of Clerk of Circuit
                    Court of Henrico County, Virginia.

Amendments:         Supplemental Lease Agreement dated June 20, 1984;

                    First Amendment to Lease dated November 29, 1984;

                    Second Amendment to Deed of Lease dated March 10, 1993;

                    Third Amendment to Deed of Lease dated February 18, 1994; and

                    Lease Term Extension Options Exercise Notice dated October 10,
                    2003.

Premises:           That certain store building and related improvements located at 50
                    South Airport Drive, Highland Springs, Virginia 23075.

Legal Description:  The real property as more particularly described as follows:

                    The LEASED PREMISES set forth and described in Short Form of
                    Lease between Springer Associates, as Landlord, and Winn-Dixie
                    Raleigh, Inc., as Tenant, dated April 28, 1983 and recorded in
                    Official Record Book 1880, page 1080 of the Office of Clerk of
                    Circuit Court of Henrico County, Virginia.

**WINN-DIXIE STORE #967**
Quinton, Virginia

Lease:  Deed of Lease dated as of April 15, 1994, between The Peebles Company, as landlord and Winn-Dixie Raleigh, Inc., as tenant;

As evidenced by Short Form of Deed of Lease dated August 10, 1995 recorded in Book 220, page 244, of the official records of the Office of the Clerk of the Circuit Court of New Kent County, Virginia.

Amendments:  As amended by Amendment to Deed of Lease dated March 31, 1995; and

Second Amendment to Deed of Lease dated August 10, 1995.

Premises:  That certain store building and related improvements located at 7300 Marketplace Drive, Quinton, Virginia 23141

Legal Description:  The real property as more particularly described as follows:

The LEASED PREMISES set forth and described in Short Form of Lease between Julian Peebles, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant, dated August 10, 1995 and recorded in Book 220, pages 244 of the official records of the Office of the Clerk of Circuit Court of New Kent County, Virginia.

## EXHIBIT A-3
### To Asset Purchase Agreement

### List of Shopping Centers

| Store | Shopping Center |
|-------|-----------------|
| #954  | The Village at Waterford |
| #956  | Springer Plaza |
| #967  | The Marketplace at Bottoms Bridge |

EXHIBIT B
To Asset Purchase Agreement

Form of Bill of Sale

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2004, among Food Lion, LLC, a North Carolina limited liability company ("Buyer"), Winn-Dixie Stores, Inc., a Florida corporation ("Winn-Dixie") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in and to the Assets described in the Agreement, relating to Seller's store locations as more particularly described on attached Schedule A.

Seller and Winn-Dixie represent and warrant to Buyer that Seller has good and lawful right, title and interest in such Assets, and that (i) Seller and Winn-Dixie shall defend Buyer from and against the lawful claims of all persons claiming by, through or under Seller or Winn-Dixie, but against none other; and (ii) that, at any time and from time to time after the date hereof, promptly upon the written request of Buyer, Seller and Winn-Dixie will do, execute, acknowledge, and deliver, or cause to be done, executed, acknowledged, and delivered, each and all of such further acts, deeds, assignments, transfers, conveyances, powers of attorney, and assurances as may reasonably be required by Buyer in order to assign, transfer, set over, convey, assure, and confirm unto and vest in Buyer, its successors, and assigns the Assets and title thereto and to put Buyer in possession and operating control of the Assets.

This Bill of Sale is delivered by Seller and Winn-Dixie to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement and the representations and warranties contained therein. Seller acknowledges and agrees that the representations, warranties, covenants, agreements, and indemnities contained in the Agreement will not be superseded hereby but will remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Agreement and the terms of this instrument, the terms of the Agreement will govern. Nothing herein contained will itself change, amend, extend, or alter (nor should it be deemed or construed as changing, amending, extending, or altering) the terms or conditions of the Agreement in any manner whatsoever. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller and Winn-Dixie have caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2004.

"SELLER"

**WINN-DIXIE RALEIGH, INC.,** a Florida corporation

By: _____
Name: _____
Title: _____

"WINN-DIXIE"

**WINN-DIXIE STORES, INC.,** a Florida corporation

By: _____
Name: _____
Title: _____

## Schedule A

### Schedule of Store Locations

## EXHIBIT C
### To Asset Purchase Agreement
### FORM OF CLOSING STATEMENT

**WINN-DIXIE:** Winn-Dixie Stores, Inc., a Florida corporation

**SELLER:** Winn-Dixie Raleigh, Inc., a Florida corporation

**BUYER:** Food Lion, LLC, a North Carolina limited liability company

**TRANSACTION:** Acquisition of Assets and Assumption of Assumed Liabilities, in accordance with the terms and conditions of the Purchase Agreement, with respect to the following Stores:

**PURCHASE PRICE:**

| | |
|---|---|
| Store #954, Midlothian, Virginia | $ 510,243.00 |
| Store #956, Highland Springs, Virginia | $ 488,757.00 |
| Store #967, Quinton, Virginia | $ 1,000.00 |
| **Base Purchase Price:** | **$ 1,000,000.00** |

**CLOSING DATE:** _____

### SELLER'S STATEMENT

**Base Purchase Price** ........................................................... $ -

**Less Adjustments:**
1. Earnest Money Deposit Held by Escrow Agent ... $ -
2. Seller's Prorated Share of Taxes and Other Charges Payable Under Leases (1) ... $ -
3. Buyer's Prorated Share of Rents Paid in Advance Under Subleases (2) ... $ -

   **Total Adjustments:** $ - $ -

**Plus Adjustments:**
1. Seller's Prorated Share of _____ 2004 Rents, and Other Charges Paid in Advance Under Leases (3)
2. Total Amount Due to Seller From Inventory Closing Statement ... $ -

   **Total Adjustments:** $ - $ -

**Plus Closing Costs to be Paid by Seller:**
1. Seller's Attorneys' Fees & Costs (Smith, Gambrell & Russell, LLP) ... P.O.C.
2. Seller's Attorneys' Fees & Costs ... P.O.C.

|     | (Kirschner & Legler, PA) |     |   |     |   |
| --- | --- | --- | --- | --- | --- |
| 3. | Seller's Brokers Fees<br>(The Blackstone Group) | $ | - | | |
| 4. | Seller's Brokers Fees<br>(The Food Partners) | $ | - | | |
| 5. | Seller's Brokers Fees<br>(Excess Space Retail Services, Inc.) | $ | - | | |
| 6. | One-half Closing Escrow Fees<br>(First American Title Insurance Company) | $ | - | | |
| 7. | One-half of Inventory Service Fees (9)<br>(Accurate Inventory & Calculating Service, Inc.) | $ | - | | |
| 8. | Recording/Filing Fees (estimate)<br>(First American Title Insurance Company) | $ | - | | |
| 9. | One-half Environmental Site Assessments<br>(Golder Associates, Inc.) | $ | - | | |
|     | **Total Seller's Closing Costs:** | $ | - | $ | - |

**TOTAL AMOUNT DUE TO SELLER FROM BUYER:**

**Earnest Money Deposits Due to Seller from Escrow Agent:**

**GROSS AMOUNT DUE TO SELLER FROM BUYER AND**
**ESCROW AGENT:**                                                                $          -

### BUYER'S STATEMENT

**Total Purchase Price**                                                                    $       -

**Less Adjustments:**

1.      Earnest Money Deposit Held by Escrow
        Agent

2.                                                                              $       -

        Seller's Prorated Share of _____ 2004
        Rents, and Other Charges Paid in Advance
        Under Leases (3)

                                                                                $       -

                                                                                $_____-_____

        **Total Adjustments:**                                                  $       -        $       -

**Plus Adjustments:**

1.

        Seller's Prorated Share of Taxes and
        Other Charges Payable Under Leases (1)

        Buyer's Prorated Share of Rents Paid in
        Advance Under Subleases (2)

2.                                                                              $_____-_____

        **Total Adjustments:**                                                  $       -        $       -

**Less Closing Costs to be Paid by Buyer:**

| | | |
|---|---|---|
| 1. | Buyer's Attorney's Fees & Costs | P.O.C. |
| | (Akin Gump Strauss Hauer & Feld LLP) | |
| 2. | Title Expenses (Owner's Policy) (4) | $       - |
| | (First American Title Insurance Company) | |
| 3. | One-half Closing Escrow Fees | $       - |
| | (First American Title Insurance Company) | |
| 4. | Surveyor's Fees (5) | $       - |
| | (U.S. Surveyor, Inc.) | |
| 5. | One-half Environmental Site Assessments | $       - |
| | (Golder Associates, Inc.) | |
| 6. | Transfer Taxes | $       - |
| | (First American Title Insurance Company) | |
| 7. | One-half of Inventory Service Fees (9) | $_____-_____ |
| | (Accurate Inventory & Calculating Service, Inc.) | |

| | | |
|---|---|---|
| **Total Buyer's Closing Costs:** | $ - | $ - |
| **SUBTOTAL AMOUNT DUE FROM BUYER:** | | $ - |

**PLUS AMOUNT DUE FROM BUYER FROM INVENTORY CLOSING STATEMENT:**

**PLUS DEPOSIT FROM ESCROW AGENT:** $ -

**GROSS AMOUNT DUE FROM BUYER AND ESCROW AGENT:** $ -

The undersigned parties acknowledge and agree to the foregoing Closing Statement as of this _____ day of _____, 2004, and hereby authorize First American Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                                                                                      **BUYER:**

**WINN-DIXIE RALEIGH, INC., a Florida**                            **FOOD LION, LLC, a North Carolina**
corporation                                                                           limited liability company

By:_____                                       By:_____
Name:_____                                       Name:_____
Title: _____ President                                       Title: _____ President


**WINN-DIXIE:**


**WINN-DIXIE STORES, INC., a Florida**
corporation

By:_____
Name:_____
Title: _____ President

**Notes:**

(1)     <u>2004 Prorations - Amounts Not Yet Paid and Payable.</u>  Prorations are based on (i) estimate of 2004 real estate taxes derived from actual 2003 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2004 insurance charges derived from actual 2003 amounts paid by Seller in arrears in accordance with applicable leases.  Buyer shall be responsible for the payment of such charges for 2004 and subsequent years.  Prorations are as follows:

**Real Estate Taxes**

| Store # _____ | | | Totals |
|---|---|---|---|
| - 2004 Real Estate Taxes | $ | - | |
| - Per Diem Tax Amount | $ | - | |
| - Seller's Share of 2004 Taxes | | | $ |
| (1/1/04 - __/__/04) (_____ days) | $ | - | - |

| Store # _____ | | | |
|---|---|---|---|
| - 2004 Real Estate Taxes | $ | - | |
| - Per Diem Tax Amount | $ | - | |
| - Seller's Share of 2004 Taxes | | | $ |
| (1/1/04 - __/__/04) (_____ days) | $ | - | - |

| Store # _____ | | | |
|---|---|---|---|
| - 2004 Real Estate Taxes | $ | - | |
| - Per Diem Tax Amount | $ | - | |
| - Seller's Share of 2004 Taxes | | | $ |
| (1/1/04 - __/__/04) (_____ days) | $ | - | - |

**Total Real Estate Taxes:**     $ -

**Personal Property Taxes**

| Store # _____ | | | |
|---|---|---|---|
| - 2004 Personal Property Taxes | $ | - | |
| - Per Diem Tax Amount | $ | - | |
| - Seller's Share of 2004 Taxes | | | $ |
| (1/1/04 - __/__/04) (_____ days) | $ | - | - |

| Store # _____ | | | |
|---|---|---|---|
| - 2004 Personal Property Taxes | $ | - | |
| - Per Diem Tax Amount | $ | - | |
| - Seller's Share of 2004 Taxes | | | $ |
| (1/1/04 - __/__/04) (_____ days) | $ | - | - |

Store # _____
- 2004 Personal Property Taxes          $              -
- Per Diem Tax Amount                    $              -
- Seller's Share of 2004 Taxes
                                                                    $
    (1/1/04 - __/__/04) (_____ days)     $              -
                                                                    -
                                                                    $
**Total Personal Property Taxes:**                                 -

**CAM Charges**

Store # _____
- 2004 CAM Charges                       $              -
- Per Diem Amount                        $              -
- Seller's Share of 2004 CAM Charges
                                                                    $
    (__/__/__ - __/__/04) (_____ days)   $              -
                                                                    -
Store # _____
- 2004 CAM Charges                       $              -
- Per Diem Amount                        $              -
- Seller's Share of 2004 CAM Charges
                                                                    $
    (__/__/__ - __/__/04) (_____ days)   $              -
                                                                    -
Store # _____
- 2004 CAM Charges                       $              -
- Per Diem Amount                        $              -
- Seller's Share of 2004 CAM Charges
                                                                    $
    (__/__/__ - __/__/04) (_____ days)   $              -
                                                                    -
                                                                    $
**Total CAM Charges:**                                             -

**Insurance**

Store # _____
- 2004 Insurance                         $              -
- Per Diem Amount                        $              -
- Seller's Share of 2004 Insurance
                                                                    $
    (__/__/__ - __/__/04) (_____ days)   $              -
                                                                    -
Store # _____
- 2004 Insurance                         $              -
- Per Diem Amount                        $              -
- Seller's Share of 2004 Insurance
                                                                    $
    (__/__/__ - __/__/04) (_____ days)   $              -
                                                                    -
Store # _____

- 2004 Insurance                                                     $                    -
- Per Diem Amount                                                   $                    -
- Seller's Share of 2004 Insurance

                                                                                                        $
    (__/__/__ - __/__/04) (_____ days)            $                    -          -
                                                                                                        $
**Total Insurance:**                                                                                -

**Total Amount of Seller's Prorated Share**
                                                                                                        $
    **of 2004 Prorations:**                                                                        -

(2)    _____, 2004 Sublease Prorations - Amounts Previously Received by Seller.
Prorations are based on _____, 2004 rents previously paid to Seller in
accordance with applicable subleases. Buyer shall be responsible for the collection of
such charges that become due and payable for _____, 2004 and thereafter.
Prorations are as follows:

                                                                                             **Totals**
Store # _____
- Total _____, 2004 rent paid:            $                    -
- Per diem rent:                                             $                    -
- Buyer's prorated share
                                                                                                        $
    (__/__/__ - __/__/04) (_____ days)            $                    -          -

Store # _____
- Total _____, 2004 rent paid:            $                    -
- Per diem rent:                                             $                    -
- Buyer's prorated share
                                                                                                        $
    (__/__/__ - __/__/04) (_____ days)            $                    -          -

Store # _____
- Total _____, 2004 rent paid:            $                    -
- Per diem rent:                                             $                    -
- Buyer's prorated share
                                                                                                        $
    (__/__/__ - __/__/04) (_____ days)            $                    -          -
    **Total Amount of Seller's Prorated Share of _____**                    $
**Prorations:**                                                                                   -

(3)    _____, 2004 Prorations - Amounts Previously Paid by Seller. Prorations are
based on _____, 2004 rents, common area maintenance assessments and other
charges previously paid by Seller in accordance with applicable leases. Buyer shall be
responsible for the payment of such charges that become due and payable for
_____, 2004 and thereafter. Prorations are as follows:

**Rent**
                                                                                             **Totals**
Store # _____
- Total _____, 2004 rent paid:            $                    -
- Per diem rent:                                             $                    -

- Buyer's prorated share

   ( _/_/_ - _/_/04) (_____ days)    $ _____ -    $ -

Store # _____
- Total _____, 2004 rent paid:    $ -
- Per diem rent:    $ -
- Buyer's prorated share

   ( _/_/_ - _/_/04) (_____ days)    $ _____ -    $ -

Store # _____
- Total _____, 2004 rent paid:    $ -
- Per diem rent:    $ -
- Buyer's prorated share

   ( _/_/_ - _/_/04) (_____ days)    $ _____ -    $ _____

**Total Amount of Buyer's Prorated Share of _____ Prorations:**    $ -

(4)   <u>Title Premiums and Expenses</u>. Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

                                                                  <u>Totals</u>

<u>Store # _____</u>
- Title Search Fees and Costs    $ -
                                                    $ -
- Title Premium    $ -

<u>Store # _____</u>
- Title Search Fees and Costs    $ -
                                                    $ -
- Title Premium    $ -

<u>Store # _____</u>
- Title Search Fees and Costs    $ -
                                                    $ -
- Title Premium    $ -

**Total Amount of Title Fees and Expenses:**    $ -

(5)   <u>Survey Fees</u>. Survey fees are as follows:

Store # _____    $ -
Store # _____    $ -
Store # _____    $ -

**Total Survey Fees:**    $ -

(6)    <u>Utility Deposits and Charges</u>. All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof. The party responsible for each share of such utility charges shall pay such charges promptly and without demand therefor. Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(7)    <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(8)    <u>Inventory Purchase Price and Adjustments</u>. The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement between Seller, Winn-Dixie Stores, Inc. and Buyer, dated effective as of _____, 2004 (the "Purchase Agreement") and are set forth in a separate Inventory Closing Statement [undefined] between Seller and Buyer dated as of even date herewith. Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

(9)    <u>Inventory Service Fees</u>. Seller and Buyer acknowledge and agree that each will pay one-half of the fees and costs of the Inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices. In the event the final invoices for such Inventory charges is not available at the time of closing, the party responsible for each share of such inventory charges shall pay such charges promptly and without demand therefor upon receipt of the invoices. The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same.

(10)   <u>Capitalized Terms</u>. Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

<u>RECEIPTS</u>:

| | | | |
|---|---|---|---|
| 1. | Amount Due From Escrow Agent | $          - | |
| 2. | Total Amount Due From Buyer | $          - | |
| TOTAL CASH RECEIVED: | | $          - | $          - |

<u>DISBURSEMENTS</u>:

| | | |
|---|---|---|
| 1. | U.S. Surveyor, Inc.<br>(Surveys) | $          - |
| 2. | Golder Associates, Inc.<br>(Environmental Site Assessments) | $          - |
| 3. | The Blackstone Group<br>(Seller's Brokers Fees) | $          - |
| 4. | The Food Partners<br>(Seller's Brokers Fees) | $          - |
| 5. | (Excess Space Retail Services, Inc.)<br>(Seller's Brokers Fees) | $          - |
| 6. | First American Title Insurance Company<br>(Title Premium & Costs, Recdg. & Escrow Fees) | $          - |
| 7. | Accurate Inventory & Calculating Service, Inc.<br>(Inventory Service Fees) | $          - |
| 8. | Winn-Dixie Raleigh, Inc.<br>(Seller's Proceeds) | $          - |
| TOTAL DISBURSEMENTS: | | $          - |

**EXHIBIT D**
**To Asset Purchase Agreement**

**Schedule of Certain Excluded Personal Property**

**See attached schedule**

**Exhibit D**

EXHIBIT E
To Asset Purchase Agreement

Form of General Assignment

**THIS GENERAL ASSIGNMENT** (this "Assignment") is made as of _____, 2004 (the "Effective Date"), by and between **WINN-DIXIE RALEIGH, INC.** a Florida corporation (hereinafter referred to as "Assignor"), and **FOOD LION, LLC**, a North Carolina limited liability company (hereinafter referred to as "Assignee").

### R E C I T A L S :

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached Exhibit A (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective December 15, 2004 by and among Assignor, as seller, Assignee, as buyer, and Winn-Dixie Stores, Inc., as amended from time to time (the "Agreement"). Capitalized terms used in this Assignment without definition shall have the meanings ascribed to such terms in the Agreement.

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee all of Assignor's right, title and interest, as tenant or lessee, in and to any assignable Permits owned by Assignor, warranties and other intangible property relating to the Assets but only if such Permits, warranties and other intangible property do not relate to any other assets or stores of the Seller Parties or any of their Affiliates (collectively, the "Intangible Assets"), and Assignee has agreed to assume and perform certain of Assignor's liabilities and obligations arising under the Intangible Assets, all subject to and in accordance with the terms of the Intangible Assets, the Agreement and this Assignment.

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **RECITALS; DEFINITIONS; EFFECTIVE DATE**. The foregoing Recitals are true and correct and are a material part of this Assignment. Capitalized terms not otherwise defined in this Assignment will have the meanings assigned to such terms in the Agreement. This Assignment will be effective as of the Effective Date.

2.    **ASSIGNMENT**. Assignor hereby grants, transfers and assigns to Assignee, all of the right, title and interest of Assignor in, to and under all of the Intangible Assets. Assignor hereby agrees that it shall remain, and shall be, responsible for all liabilities and obligations of Assignor that have accrued with respect to the

Intangible Assets, if any, prior to the Effective Date.    Assignor hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignee from and against all liabilities and obligations of Assignor that have accrued with respect to the Intangible Assets prior to the Effective Date.

3.    **ASSUMPTION**.    Assignee hereby accepts the aforesaid assignment and assumes and agrees to pay and perform all liabilities and obligations that accrue under the Intangible Assets from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations that accrue with respect to the Intangible Assets on or after the Effective Date.

4.    **ASSIGNOR'S WARRANTY OF TITLE**.    Assignor represents and warrants to Assignee that Assignor has good and lawful right, title and interest to the Intangible Assets, and has not assigned its interest in the Intangible Assets, and that Assignor will defend Assignee's interest thereunder from and against the lawful claims of all persons claiming by, through or under Assignor or its Affiliates, but against none other.

5.    **BINDING EFFECT**.    This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

6.    **FURTHER ASSURANCES**.    Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder.

[END OF PAGE]

**IN WITNESS WHEREOF,** Assignor and Assignee have executed and delivered this Assignment as of the Effective Date.

Signed, sealed and delivered in the presence of:

**"ASSIGNOR"**

**WINN-DIXIE RALEIGH, INC.** a Florida corporation

_____

Name:_____

By:_____

Name: _____

Title:_____ President

_____

Name:_____

[SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

Signed, sealed and delivered in the
presence of:

**"ASSIGNEE"**

**FOOD LION, LLC,** a North Carolina
limited liability company

Name:_____

By:_____

    Name:_____

    Title:_____

Name:_____

                [SEAL]


[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

EXHIBIT F
To Asset Purchase Agreement

Allocation Schedule

| Store | Purchase Price Allocation | Deposit Allocation |
|---|---|---|
| #954, Midlothian, VA | $510,243.00 | $33,000.00 |
| #956, Highlands Springs, VA | $488,757.00 | $33,000.00 |
| #967, Quinton, VA | $1,000.00 | $34,000.00 |
| TOTAL | $1,000,000.00 | $100,000.00 |

## EXHIBIT G
## To Asset Purchase Agreement

### List of Subleases

**NONE**

EXHIBIT H
To Asset Purchase Agreement

## Schedule of Seller and Winn-Dixie Disclosures

6.2    <u>Required Permits</u>.  Consent of Landlord is required as condition to effectiveness of Seller's assignment of lease for Store #956 to Buyer.

EXHIBIT I-1
To Asset Purchase Agreement

Form of
Landlord Estoppel Certificate

WINN-DIXIE STORE #____

Date: _____, 2004

Winn-Dixie Raleigh, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254
Attention: Legal Department

Food Lion, LLC
2110 Executive Drive
Salisbury, NC 28145-1330
Attn:  Real Estate Department

RE:    Store #_____, _____, _____, Virginia (the
       "Premises")

Gentlemen:

        The undersigned Landlord is requested to execute this Certificate as an
inducement for the addressees above to enter into an Assignment and Assumption of
Lease regarding the referenced Premises (the "Assignment").  This is to confirm that
Winn-Dixie Raleigh, Inc., a Florida corporation ("Assignor") may assign its interests
under the Lease to Food Lion, LLC, a North Carolina limited liability company
("Assignee").  The undersigned acknowledges that Assignee's willingness to enter into
the Assignment is based, in part, on the reliance by Assignee on the truth and accuracy
of the statements made herein and Landlord understands and agrees that Assignor and
Assignee will and shall be entitled to rely upon this Certificate for such purposes.  As of
the date of this Certificate, Landlord hereby represents, warrants and certifies to
Assignor and Assignee as follows:

        1.     Lease and Tenant.  Assignor is the present tenant under that certain
lease, as modified or amended, as more particularly described on attached Exhibit A, a
short form of which is recorded in Book _____, page _____ of _____ County,
Virginia public records (the "Lease").  The Lease is in full force and effect and has not,
except as specifically stated in Exhibit A, been modified or amended in any manner
whatsoever, and constitutes the entire agreement between the parties with respect to

the Premises. Any capitalized terms which are not otherwise defined herein shall have the meaning set forth in the Lease.

2.    Term. The Term of the Lease expires on _____, subject to __ _____ (____) _____ options, each for _____ (____) years to extend the Term of the Lease.

3.    Rent. The current base Rent under the Lease is $_____, payable [payment period]; the current [period] common area maintenance fees are $_____ payable [payment period], and the current [period] sales tax on Rent is $_____ _____ payable [payment period]. Insurance premiums and real estate Insurance premiums and real estate taxes are payable annually in arrears at the end of each calendar year. Percentage Rent, if any, under the Lease is payable based on the following formula: the amount, if any, by which _____ percent (_____%) of Tenant's gross sales made from the premises in each fiscal year of Tenant during the term of the Lease exceeds the minimum guaranteed annual rental. Insurance premiums and real property taxes for 2003 were $_____ and $_____, respectively. As of the date of this Certificate, Monthly Rent and all other amounts due and payable by Assignor to Landlord under the Lease are paid in full through _____ _____, and no other amounts are due and payable to Landlord under the Lease, except as follows: _____ _____.

4.    Deposit. If applicable, Landlord currently holds a security deposit in the amount of $_____, as security for the payment and performance of Assignor's obligations under the Lease.

5.    Default by Assignor. Landlord has no actual knowledge of: (a) any default by Assignor under any of the terms, covenants or conditions of the Lease on the part of Assignor to be observed or performed, (b) any event which has occurred and which with the passage of time or the giving of notice, or both, would constitute a default by Assignor under the Lease or would permit termination, modification or acceleration under the Lease, and (c) any construction-related obligation under the Lease that required either the performance or payment of money which Assignor failed to fulfill.

6.    Default by Landlord. Landlord has: (a) committed no default, which remains uncured under any of the terms, covenants or conditions of the Lease on the part of Landlord to be observed or performed, and (b) no knowledge of any event which has occurred and which with the passage of time or the giving of notice, or both, would constitute a default by Landlord under the Lease.

7.    No Action. Landlord has not commenced, and has no actual knowledge that Assignor has commenced, any action or has given or received any notice for the purpose of terminating the Lease.

8.    No Condemnation Notice. Landlord has not received any notice of any condemnation proceeding or eminent domain proceeding affecting the premises subject to the Lease or the shopping center in which such premises are located.

9.    Consent. To the extent that Landlord's consent is required under the Lease, Landlord hereby consents to the assignment of Assignor's interest in the Lease by Assignor to Assignee, and agrees that the execution of the Assignment by Assignor and Assignee will not constitute a default under the Lease.

10.    Addresses For Rent/Notice. The Landlord's current address for purposes of giving notice under the Lease is as follows: _____
_____.
The current address for the payment of rent under the Lease is as follows: _____
_____.    The  Landlord's
Federal Taxpayer Identification Number is: _____.

11.    Miscellaneous. This Certificate shall be binding upon Landlord and inure to the benefit of the Assignor and Assignee hereto and their respective heirs, representatives, successors, and assigns. This Certificate is made and entered into under, and shall be construed according to the laws of the State in which the Premises is located. This Certificate may not be amended except by a written instrument signed by the Landlord, Assignor and Assignee.

**[Signatures on following page]**

Signed, Sealed and Delivered
in the presence of:

**"LANDLORD"**

_____

By: _____

Name:_____     Name: _____

Its: _____

Address:

Name:_____     _____

_____

Attn: _____

Fax No.: _____

Phone No.: _____

STATE OF _____

COUNTY OF _____

    This instrument was acknowledged before me on this ____ day of _____ _____, 2004, by _____, the _____ of _____, a _____, on behalf of the _____. He/she either is [  ] personally known to me, or [  ] has provided a _____driver's license as identification.

_____

Print Name:_____

Notary Public, State of _____

My Commission No.:_____

My Commission Expires:_____

<u>Exhibit A</u>

<u>Description of Lease and Amendments</u>

WINN-DIXIE STORE #_____
_____,_____, _____

Lease dated as of _____, between _____
_____, as landlord and _____, as tenant;

As evidenced by Memorandum of Lease (Short Form Lease) dated _____
recorded in Book _____, page _____, of the public records of _____
_____, County, _____;

As amended by First Amendment to lease dated _____; and

As further amended by Notice of Merger and Name Change dated as of _____,    by
Winn-Dixie _____, Inc., as successor tenant, recorded in Book _____, page
_____, of the public records of _____ County, ____.

EXHIBIT I-2
To Asset Purchase Agreement

Form of
Seller Estoppel Certificate

WINN-DIXIE STORE #_____

Date: _____, 2004

Food Lion, LLC
P.O. Box 1330
2110 Executive Drive
Salisbury, NC  28145-1330
Attn: Real Estate Department

RE:    Store #_____, _____, _____, Virginia
       (the "Premises")

Dear _____:

       The undersigned is requested to execute this Certificate as an inducement for the addressees above to enter into an Assignment and Assumption of Lease regarding the referenced Premises (the "Assignment"). This is to confirm that Winn-Dixie Raleigh, Inc., a Florida corporation ("Seller") may assign its interests under the Lease to Food Lion, LLC, a North Carolina limited liability company ("Assignee"). The undersigned acknowledge that Assignee's willingness to enter into the Assignment is based, in part, on the reliance by Assignee on the truth and accuracy of the statements made herein and Seller and Winn-Dixie Stores, Inc., a Florida corporation ("Winn-Dixie") understand and agree that Assignee will and shall be entitled to rely upon this Certificate for such purposes. As of the date of the Certificate, Seller and Winn-Dixie hereby represent, warrant and certify to Assignee as follows:

       1.    Lease and Tenant. That Seller is the tenant ("Tenant") under a currently effective lease, as modified or amended, as more particularly described on attached Exhibit A, a short form of which is recorded in Volume _____, page _____ of _____ _____ County, Virginia public records (the "Lease").

       2.    Term. That the term of the Lease commenced _____ _____, and is scheduled to expire on _____, subject to_____ (____) options, each for _____ (____) years, exercisable by Tenant, to extend the term of the Lease.

       3.    Rent. The current base Rent under the Lease is $_____payable [payment period]. Common area maintenance fees are _____ payable [payment period], insurance premiums and real estate taxes for 2003 were $_____.

$_____ and $_____respectively. Common area maintenance fees and real estate taxes are payable annually in arrears at the end of each calendar year. Insurance premiums for 2003 were $_____ and are payable annually in arrears. Percentage Rent under the Lease is payable based on the following formula: the amount, if any, by which _____ percent (___%) of Tenant's gross sales made from the Premises in each fiscal year of Tenant during the term of the Lease exceeds the minimum guaranteed annual rental. As of the date of this Certificate, the Rent and all other amounts due and payable by Assignor under the Lease to the landlord ("Landlord") are paid as follows: Rent is paid in full through _____, common area maintenance fees are paid in full through _____, real estate taxes due are paid in full through _____, insurance premiums are paid in full through __ _____, and no other amounts are due and payable to Landlord under the Lease, except as follows: _____
_____.

4.     Default by Tenant.  Tenant has committed no default that remains uncured under any of the terms, covenants or conditions of the Lease on the part of Tenant to be observed or performed. Seller and Winn-Dixie have (a) not received any notice from Landlord of a default by Tenant that remains uncured, and (b) no knowledge of any event which has occurred and which with the passage of time or the giving of notice, or both, would constitute a default by Tenant under the Lease.

5.     Default by Landlord.  Seller and Winn-Dixie have no actual knowledge of (a) any default by Landlord under any of the terms, covenants or conditions of the Lease on the part of Landlord to be observed or performed, or (b) any event that has occurred and that will with the passage of time or the giving of notice, or both, would constitute a default by Landlord under the Lease.

6.     No Action.  That, to the best of Tenant's knowledge, neither Tenant nor Landlord has commenced any action or has given or received any notice for the purpose of terminating the Lease.

7.     Notice.  The address for notices to Tenant is: Winn-Dixie Stores, Inc., 5050 Edgewood Court, P.O. Box B, Jacksonville, Florida 32203-0297, with a copy to: General Counsel, Winn-Dixie Stores, Inc., 5050 Edgewood Ct., P.O. Box B, Jacksonville, Florida 32203-0297.

8.     Addresses For Rent/Notice.  The Landlord's current address for purposes of giving notice under the Lease is as follows: _____
_____.
The current address for the payment of rent under the Lease is as follows: _____
_____.    To the best of Tenant's knowledge, the Landlord's Federal Taxpayer Identification Number is: _____.

**IN WITNESS WHEREOF**, the undersigned have executed this certificate on behalf of Tenant and Winn-Dixie, respectively.

**WINN-DIXIE RALEIGH, INC.,**
a Florida corporation

By: _____
Name: _____
Its: _____

[CORPORATE SEAL]


**WINN-DIXIE STORES, INC.,**
a Florida corporation

By: _____
Name: _____
Its: _____

[CORPORATE SEAL]

<u>Exhibit A</u>

<u>Description of Lease and Amendments</u>

WINN-DIXIE STORE #_____

_____, _____, _____

Lease dated as of _____, between _____, as landlord
and _____, as tenant;

As evidenced by Memorandum of Lease (Short Form Lease) dated _____
recorded in Book _____, page _____, of the public records of _____
_____, County, _____;

As amended by First Amendment to lease dated _____; and

As further amended by Notice of Merger and Name Change dated as of _____,
by Winn-Dixie _____, Inc., as successor tenant, recorded in Book _____,
page _____, of the public records of _____
County, _____.

EXHIBIT J
To Asset Purchase Agreement

Required Consents

Store #956:     Consent of Landlord is required as condition to effectiveness of
                Seller's assignment of lease to Buyer.

EXHIBIT K
To Asset Purchase Agreement

Form of
Lease Assignment

## ASSIGNMENT AND ASSUMPTION OF LEASE

[Store #_____, _____, _____]

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (this "Assignment") is made as of _____, 200__ (the "Effective Date"), by and between WINN-DIXIE RALEIGH, INC. a Florida corporation (hereinafter referred to as "Assignor"), and FOOD LION, LLC, a North Carolina limited liability company (hereinafter referred to as "Assignee");

### RECITALS:

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached Exhibit A (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective December 15, 2004 by and among Assignor, as seller, Assignee, as buyer, and Winn-Dixie Stores, Inc., as amended from time to time (the "Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on attached Exhibit A (the "Lease"), and Assignee has agreed to assume and perform certain of Assignor's liabilities and obligations arising under the Lease, all subject to and in accordance with the terms of the Lease, the Agreement and this Assignment;

NOW, THEREFORE, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **RECITALS; DEFINITIONS; EFFECTIVE DATE**.  The foregoing Recitals are true and correct and are a material part of this Assignment.  Capitalized terms not otherwise defined in this Assignment will have the meanings assigned to such terms in the Agreement. This Assignment will be effective as of the Effective Date.

2.    **ASSIGNMENT**.  Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to

the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder. Assignor hereby agrees that it will remain, and will be, responsible for all liabilities and obligations of the tenant or lessee that have accrued under the Lease prior to the Effective Date, and Assignor hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignee from and against all liabilities and obligations of the tenant or lessee that have accrued under the Lease prior to the Effective Date.

3.    **ASSUMPTION**.    Assignee hereby accepts the aforesaid assignment and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

4.    **ASSIGNOR'S WARRANTY OF TITLE**.    Assignor represents and warrants to Assignee that Assignor has good and lawful right, title and interest in the Premises under the Lease, as tenant or lessee thereunder, and has not assigned or subleased its interest, as tenant or lessee under the Lease, other than as provided in this Assignment or the Agreement, that the Lease as described on the attached <u>Exhibit A</u> constitutes the entire lease agreement between Assignor, as tenant or lessee, and the landlord thereunder, and remains in full force and effect, and that Assignor will defend Assignee's interest as tenant or lessee thereunder from and against the lawful claims of all persons claiming by, through or under Assignor, but against none other.

5.    **INSURANCE CERTIFICATES**.    To the extent Assignee obtains insurance with respect to any of the Premises or obligations under the Lease, Assignee agrees to add Assignor as an additional insured thereunder, provided however, that the foregoing shall not apply in the event Assignee self-insures, nor shall the foregoing apply to the extent Assignee uses blanket insurance policies that cover multiple properties if it would be reasonably impracticable to add Assignor as an additional insured.

6.    **RELEASE OF ASSIGNOR**.    At any time during the term (as the same may be extended under the Lease pursuant to existing options), upon Landlord's execution and delivery to both Assignor and Assignee of an instrument releasing Assignor and its guarantor(s) from their respective obligations under the Lease and under any guaranties of the Lease, accruing from and after the effective date of such release, the provisions of <u>paragraph 6</u> above will be deemed null and void and of no further force or effect, and thereupon, Assignor will have no further right or interest in the Lease or the Premises.

7.    **NOTICES**.    All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the

address(es) set forth below. Each communication will be deemed duly given and received: (a) as of the date and time the same is personally delivered with a receipted copy; (b) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (c) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same; or (d) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

| | |
|---|---|
| If to Assignor: | Winn-Dixie Raleigh, Inc.; Re: Store #_____ <br> Attn: Chief Development Officer <br> 5050 Edgewood Court <br> P.O. Box B <br> Jacksonville, FL 32203-0297 <br> Telefax No.: 904 370 6748 |
| With a copy to: | Winn-Dixie Stores, Inc. <br> Attn: General Counsel <br> 5050 Edgewood Court <br> P.O. Box B <br> Jacksonville, FL 32203-0297 <br> Telefax No.: 904 783 5138 |

or to such other address or telefax number as Assignor may direct from time to time.

| | |
|---|---|
| If to Assignee: | Food Lion, LLC <br> P.O. Box 1330 <br> 2110 Executive Drive <br> Salisbury, NC 28145-1330 <br> Attn: Real Estate Department <br> Telefax No. 704-636-4940 |
| With a copy to: | Food Lion, LLC <br> P.O. Box 1330 <br> 2110 Executive Drive <br> Salisbury, NC 28145-1330 <br> Attn: Legal Department <br> Telefax: 704-639-1353 |

or to such other address or telefax number as Assignee may direct from time to time.

8.  **NOTICE OF ASSIGNMENT**.  On the Effective Date, Assignor and Assignee will execute and deliver a Notice of Assignment of Lease (in a mutually agreeably form) and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Assignment.

9.  **BINDING EFFECT**.  This Assignment will be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

10.  **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder.

11.  **NO BROKERS**.  The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Agreement other than as set forth in the Agreement.

12.  **DISPUTES**.  Sections 15.8 and 18 of the Agreement are incorporated herein by reference and shall apply to any disputes between Assignor and Assignee under this Assignment.

[END OF PAGE]

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered in the presence of:

**ASSIGNOR:**

**WINN-DIXIE RALEIGH, INC.,** a Florida corporation

_____

Name:_____

By:_____
Name: _____
Title: Vice President

_____

Name:_____

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered in the
presence of:

**ASSIGNEE:**

**FOOD LION, LLC, a** North Carolina
limited liability company

By:_____

_____

Name:_____

Name:_____

Title:_____

_____

Name:_____

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

**EXHIBIT A**
to Assignment and Assumption of Lease

Description of Premises and Lease

STORE #:

STREET ADDRESS:

SHOPPING CENTER:

LEASE:

EXHIBIT L
To Asset Purchase Agreement

Form of
DEA Power of Attorney

## POWER OF ATTORNEY

WHEREAS, WINN-DIXIE RALEIGH, INC., a Florida corporation ("SELLER"), WINN-DIXIE STORES, INC., a Florida corporation, and FOOD LION, LLC, a North Carolina limited liability company ("BUYER"), have entered into an Asset Purchase Agreement ("Agreement"), dated December 15, 2004, whereby BUYER shall acquire certain assets from SELLER effective on or about _____ ___, 200__ (the "Asset Sale"), and in consideration of the covenants and agreements contained in the Agreement:

SELLER and BUYER hereby covenant and agree that effective upon, and only upon, the consummation of the Asset Sale pursuant to the terms of the Agreement (the "Effective Time"), BUYER shall have the authority to use Drug Enforcement Administration Registration #_____ issued to SELLER (the "Seller Registration") relating to Seller's former pharmacy location at Store #954, Midlothian, Virginia, until the Termination Date (as defined below).  More specifically, effective upon, and only upon, the Effective Time, SELLER does hereby nominate, constitute, and appoint BUYER for the limited purpose of continuing business operations during transition of the business to BUYER's full ownership and responsibility, as the true and lawful Attorney in Fact for SELLER in its name, place, and stead and hereby gives and grants unto BUYER authority to operate and otherwise conduct business pursuant to the Seller Registration.  SELLER hereby ratifies and confirms all that said Attorney in Fact shall lawfully do or cause to be done by virtue hereof.

BUYER is vested with the power granted herein until the earlier to occur of:

(i)      the issuance to BUYER of a Drug Enforcement Administration registration comparable to the Seller Registration for operation of the business under ownership of BUYER (the "Buyer Registration"), to be determined in SELLER's reasonable discretion; or

(ii)     any failure by BUYER to comply with legal and regulatory requirements applicable to the Seller Registration;

either of these, the "Termination Date."

BUYER has filed an application requesting issuance of the Buyer Registration and hereby covenants that it shall actively and in good faith pursue issuance of such Buyer Registration.  BUYER also covenants that it shall comply with all legal and regulatory requirements applicable to the Seller Registration, and shall indemnify and hold harmless SELLER for any failure by BUYER to comply with such requirements.

**IN WITNESS WHEREOF**, the parties hereto have caused this Power of Attorney to be executed as of the _____ day of _____, 200___.

WINN-DIXIE RALEIGH, INC.

By:_____
Name:
Title:  Vice President

FOOD LION, LLC

By:_____
Name:
Title:

EXHIBIT M
To Asset Purchase Agreement

Form of
Operating Agreement

**OPERATING AGREEMENT**
[Store #____, _____, Virginia]

**THIS OPERATING AGREEMENT** (the "Agreement") is made and entered into as of the ___ day of _____, 200__, by and between **WINN-DIXIE RALEIGH, INC.**, a Florida corporation, with its principal place of business located at 5050 Edgewood Court, Jacksonville, Florida 32254-3699 the ("Seller"), and **FOOD LION, LLC**, a North Carolina limited liability company, with its principal place of business located at 2110 Executive Drive, Salisbury, North Carolina 28147 the ("Buyer").

W I T N E S S E T H :

**WHEREAS**, pursuant to the terms of that certain Asset Purchase Agreement, dated as of December 15, 2004 (the "Purchase Agreement"), by and among Seller, Winn-Dixie Stores, Inc., a Florida corporation, and Buyer, Buyer has purchased Seller's store located at _____, _____, Virginia, including a real property lease and any amendments thereto (the "Store"); and

**WHEREAS**, Buyer has applied for, but not yet obtained, a Commonwealth of Virginia Department of Alcoholic Beverage Control off-premises wine and beer retail sales permit ("ABC Permit") to sell wine and beer at the Store for off-premises consumption; and

**WHEREAS**, the parties hereto desire to enter into this Agreement for the purpose of setting forth the terms and conditions upon which Seller will continue the sale of wine and beer at the Store for a period of time under the ABC Permit issued to Seller;

**NOW, THEREFORE**, for and in consideration of the premises and of the mutual agreements herein contained, the parties covenant and agree as follows:

1.    Termination Date. For the purposes of this Agreement, the "Termination Date" shall mean and refer to the date that is the earlier of (a) the date on which the Buyer obtains an ABC Permit to sell wine and beer at the Store, or (b) _____ __, 200__. The term of this Agreement shall terminate on the Termination Date.

2.    Sale of Wine and Beer. For the duration of this Agreement, Seller shall continue selling wine and beer at the Store under Seller's ABC Permit in accordance with past practice. Buyer shall act as Seller's agent, and Buyer's employees shall

carry out the day-to-day activities related to, the purchase and sale of wine and beer at the Store on behalf of Seller. Notwithstanding any provision of the Purchase Agreement to the contrary, during the term of this Agreement, Seller shall retain ownership of all inventories of all wine and beer at the Store. The payment that Buyer would have made under the Purchase Agreement for beer and wine inventory at the Store shall instead be deemed an increase in the base purchase price under the Purchase Agreement.

3.  Escrow of Net Receipts. Buyer shall segregate in an account all revenues derived from the sale of wine and beer at the Store and shall hold the net receipts in escrow for the benefit of Seller (the "Escrowed Funds") and no other funds of Buyer shall be commingled with the Escrowed Funds. Buyer shall act as escrow agent with respect to the Escrowed Funds, and the account in which the Escrowed Funds are held shall be administered pursuant to the procedures set forth in Schedule A attached hereto (the "Escrow Procedures"). When Buyer obtains the appropriate ABC Permit to sell wine and beer at the Store, then all Escrowed Funds shall be disbursed pursuant to the Escrow Procedures; provided, however, that, in the event the Termination Date occurs prior to Buyer's obtaining the ABC Permit, all remaining Escrowed Funds and wine and beer inventory shall be the property of and paid or released to Seller.

4.  Payment of Expenses. During the term of this Agreement, Buyer shall pay all expenses, taxes, fees and any other liabilities or obligations of any kind incurred in connection with the sale of wine and beer at the Store during the term of this Agreement, and Buyer may use the Escrowed Funds for the payment of such expenses, taxes, fees and any other liabilities or obligations.

5.  Maintenance of Insurance. Prior to the Termination Date, Buyer shall maintain commercially reasonable general liability insurance against claims for bodily injury, loss of life or property damage occurring or arising in connection with the operation of or the sale of wine and beer at the Store under the Seller's ABC Permit with bodily injury, loss of life and property damage coverage; provided, however, that such policy or policies may provide for a commercially reasonable deductible or self-insurance retention amount. Buyer shall cause Seller to be named as an additional insured under the insurance policies required pursuant to this Section 5, and shall provide Seller with insurance certificates demonstrating compliance with this Section 5 and providing that such insurance policies shall not be cancelled or modified prior to the Termination Date for any reason.

6.  Indemnification; Liabilities; Obligations. Buyer hereby agrees to release, defend, indemnify and hold Seller harmless from and against any and all liabilities, claims, damages (other than consequential or speculative damages), costs, expenses (including reasonable attorneys' fees), judgments, proceedings, causes of action, and losses (collectively, "Damages"), arising out of or in any way connected with (a) the sale of wine and beer at the Store on or after the date

of this Agreement under the Seller's ABC Permit, or (b) the failure of Buyer to perform any covenant, agreement or obligation to be performed by Buyer under or pursuant to this Agreement, except to the extent that such Damages arise as a direct result of any willful misconduct or negligence of Seller. Buyer shall be responsible for and hereby assumes, effective as of the date hereof, any and all liabilities, duties and obligations of Seller for taxes or product liability, personal injury, property damage or otherwise based on any tort claim or statutory liability or otherwise that relate directly to the sale of wine and beer at the Store on or after the date of this Agreement under the Seller's ABC Permit, except to the extent that such liabilities, duties and obligations of Seller arise as a direct result of any willful misconduct or negligence of Seller.

7.    <u>Miscellaneous</u>.

a.    Whenever possible, each provision and term of this Agreement shall be interpreted in such a manner as to be valid and enforceable, provided, however, that in the event any provision or term of this Agreement should be determined to be invalid or unenforceable, all other provisions and terms of this Agreement and the application thereof to all persons and circumstances subject thereto shall remain unaffected to the extent permitted by law. If the application of any provision or term of this Agreement to any person or circumstances should be determined to be invalid or unenforceable, the application of such provision or term to other persons and circumstances shall remain unaffected to the extent permitted by law.

b.    This Agreement may be executed in two counterparts, both of which shall be considered one and the same agreement.

c.    As herein used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders, unless the context would clearly not admit such construction.

d.    This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Virginia.

e.    Section or paragraph headings are employed herein solely for convenience of reference, and such headings shall not be used in construing any terms or provisions of this Agreement.

f.    Neither Seller nor Buyer may assign or delegate any duties or obligations under this Agreement without the prior written consent of the other, which consent may be granted or withheld in the reasonable discretion of the party whose consent is so required. Notwithstanding the foregoing, Buyer may assign or delegate all or any portion of its rights and obligations under

this Agreement to an Affiliate of Buyer, without the consent of the Seller so long as Buyer remains primarily liable for Buyer's obligations hereunder.

g.    No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by both parties. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

[signature page follows]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement, as of the date and year first above written.

**SELLER:**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

By:_____
Name:_____
Title:_____

**PURCHASER:**

**FOOD LION, LLC**, a North Carolina limited liability company

By:_____
Name:_____
Title:_____

## Schedule A

### Escrow Procedures

1.  All capitalized terms used in this Schedule A and not otherwise defined herein shall have the meanings ascribed to them in the foregoing Operating Agreement (the "Agreement") to which this Schedule A is attached.

2.  In connection with entering into the Agreement, Seller shall have established a checking account (the "Account") for the deposit of the Escrowed Funds in the name of Seller with an opening balance equivalent to four weeks' worth of Buyer's estimated cost for wine and beer (collectively, the "WB") purchased for sale at the Store. Buyer shall have reimbursed Seller for such opening balance concurrently with the execution of the Agreement.

3.  Seller, the general manager of the Store and any other persons designated by Buyer shall be authorized to sign checks drawn upon the Account.

4.  All bank statements for the Account shall be sent to Seller, and Seller shall reconcile the Account. Seller shall provide copies of the bank Statements and its reconciliations of the Account to Buyer upon Buyer's request therefor.

5.  During the term of the Agreement, Buyer, through the general manager of the Store (or other manager designated by Buyer), shall issue a check to each vendor for the WB purchased for sale at the Store only.

6.  The general manager of the Store (or other manager designated by Buyer) shall write clearly on each invoice for WB the amount, number and date of the check written to pay such invoice.

7.  Only checks written to pay invoices for WB purchased for sale at the Store and to pay or reimburse Seller for taxes due with respect to the sale of WB at the Store may be drawn on the Account.

8.  On Monday of each week during which the Agreement is in effect, Buyer shall deposit an amount equal to the gross sales of WB at the Store from the prior week into the Account. For purposes hereof, the gross sales of WB include sales tax collected on such sales (or otherwise due with respect to sales of WB).

9.  Periodically during the term of the Agreement, Buyer shall provide to Seller the following:

    (a)  A report of gross sales of beer for each day of the relevant period;

    (b)  A report of gross sales of wine for each day of the relevant period;

(c)    A report of sales taxes collected for sales of beer for each day of the relevant period;

(d)    A report of sales taxes collected for sales of wine for each day of the relevant period;

(e)    A report of all daily deposits to the Account for the relevant period listed separately;

(f)    Copies of the validated deposit tickets for all deposits to the Account for the relevant period;

(g)    Copies of all invoices for WB for the relevant period that include the information required pursuant to item 6 above; and

(h)    Copies of complete records of WB inventories at the Store for the relevant period.

10.    All charges for maintenance of the Account (e.g., bank service charges, check charges, etc.) shall be charged against the Account.

11.    Seller shall relinquish all rights to the funds in the Account, and shall assign to Buyer all its rights to beer and wine inventory at the Store, upon the termination of the Agreement and satisfaction of the following conditions:

(a)    Confirmation by Seller that all gross sales of WB from the Store have been reported for all days during the term of the Agreement;

(b)    Confirmation by Seller that all gross sales for WB from the Store were deposited into the Account for all days during the term of the Agreement;

(c)    Confirmation that the off-premises wine and beer retail sales Permit in Seller's name has been returned to Seller and cancelled or destroyed;

(d)    Confirmation that all checks drawn on the Account have been reported;

(e)    The Account check book and all check stock for the Account have been returned to Seller;

(f)    All sales tax and any other tax returns for WB sales from the Store during the term of the Agreement have been filed and all amounts due under such returns have been paid to Seller from the Account;

(g)     Completion of a reconciliation of the Account; and

(h)     Confirmation by Seller that the remaining balance in the Account equals the profit on the WB sales of Seller at the Store recorded after the date of the Agreement plus the opening balance of the Account.

12.     After satisfaction of the conditions set forth in item 11 above, the Account shall be closed and the balance therein, and the wine and beer inventory at the Store, shall become the property of Buyer.

## FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT

**THIS FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT** (this "Amendment") is made effective as of February 15, 2005, by and among:

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("Seller"),

**WINN-DIXIE STORES, INC.**, a Florida corporation ("Winn-Dixie", and together with Seller, the "Seller Parties", and each of them singly, a "Seller Party"), and

**FOOD LION LLC**, a North Carolina limited liability company, or its permitted assignee ("Buyer").

### RECITALS:

A.    The parties have previously entered that certain Asset Purchase Agreement effective December 15, 2004 (the "Purchase Agreement").

B.    The parties desire to amend the Purchase Agreement to reflect certain adjustments in the terms of the transaction, as more particularly set forth in this Amendment.

**NOW, THEREFORE, IN CONSIDERATION** of the mutual covenants and agreements set forth below and for other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

      1.    **Amendments.**  The Purchase Agreement is hereby amended as follows:

         (a)    Closing Date.  Paragraph 15.1(a)(ii) shall be replaced with the following:

           "(ii)    at the election of either Buyer or Winn-Dixie and Seller, if the relevant Closing will not have occurred on or before March 1, 2005, provided that no party will be entitled to terminate this Agreement pursuant to this clause (ii) if such party's failure to fulfill any obligation under this Agreement has been the cause of, or resulted in, the failure of the relevant Closing to occur on or before such date;"

      2.    **Effect of Amendments.**  Except as specifically amended herein, the Purchase Agreement continues in full force and effect in accordance with its terms. In the event of any inconsistency between the terms of this Amendment and the Purchase Agreement, this Amendment will be controlling.

3.    **Counterparts**.  This Amendment may be executed in any number of counterparts, each of which shall be considered an original, but together shall constitute the same agreement.   Facsimile signature counterparts of this Amendment will be considered evidence of execution of this Amendment by the parties.


[SIGNATURES ON THE FOLLOWING PAGE]

2

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment as of the date first above written.

Witnesses:

Name: ANDREW KEITH DAW

Name: CLAIRE M. COVERDELL

Name: ANDREW KEITH DAW

Name: CLAIRE M. COVERDELL

Name: _____

Name: _____

**SELLER:**

**WINN-DIXIE RALEIGH, INC.,**
a Florida corporation

By: _____
Name: Mark W. Matta
Title: Vice President

[SEAL]

**WINN-DIXIE:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

By: _____
Name: Mark W. Matta
Title: Senior Vice President

[SEAL]

**BUYER:**

**FOOD LION, LLC,** a North Carolina limited liability company

By: _____
Name: R. Glenn Dixon, Jr.
Title: Senior Vice President

[SEAL]

3

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE RALEIGH, INC.,**
a Florida corporation

_____
Name:_____

By: _____
Name: _____
Title: Vice President

_____
Name:_____

[SEAL]

**WINN-DIXIE:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

_____
Name:_____

By: _____
Name: _____
Title: Senior Vice President

_____
Name:_____

[SEAL]

**BUYER:**

**FOOD LION, LLC**, a North Carolina limited liability company

_____
Name: _Alan O. Goodrich_

By: _____
Name: R. Glenn Dixon, Jr.
Title: Senior Vice President

_____
Name: _Vivian C Mulkey_

[SEAL]

3



March 15, 2005

**BY TELEFAX AND FEDEX**

Food Lion, LLC
2110 Executive Drive
Salisbury, NC 28145
Attention: Real Estate Department

> Re:    Winn-Dixie Raleigh, Inc./Sale to Food Lion, LLC –
>        Store #954 – Midlothian, Virginia
>        Store #956 – Highland Springs, Virginia
>        Store #967 – Quinton, Virginia

Gentlemen:

Reference is made to Asset Purchase Agreement dated effective December 15, 2004, among Winn-Dixie Raleigh, Inc. ("Seller"), Winn-Dixie Stores, Inc. ("Winn-Dixie"), and Food Lion, LLC ("Buyer"), relating to Seller's proposed assignment and transfer of the above store locations to Buyer, as amended by First Amendment to Asset Purchase Agreement dated February 15, 2005 (the "Purchase Agreement"). On February 21, 2005, Winn-Dixie Stores, Inc., and other Winn-Dixie affiliates, including Seller, filed for bankruptcy protection and reorganization under Chapter 11, United States Bankruptcy Code, in the matter of *In re Winn-Dixie Stores, Inc., et al.*, Case No. 05-11063 (RDD)(Jointly Administered), United States Bankruptcy Court, Southern District of New York (the "Proceeding"). Due to commencement of the Proceeding, Winn-Dixie and Seller cannot further perform the Purchase Agreement, including consummation of the Closings as contemplated thereunder, unless the Bankruptcy Court approves such performance.

Seller and Winn-Dixie intend to seek Bankruptcy Court approval for performance of their respective obligations under the Purchase Agreement, subject to the terms, covenants and conditions set forth below, which will be deemed to modify the Purchase Agreement upon Buyer's signed acknowledgment of this letter. Capitalized terms not defined in this letter will have the meanings assigned in the Purchase Agreement.

Food Lion, LLC
March 15, 2005
Page 2

1.    <u>Termination of Store Operations</u>.  Buyer hereby waives the requirements of
Section 8.1(i) with respect to Seller's grocery store operations at Store #967,
Quinton, Virginia, other than the requirement to maintain the building and the
equipment, subject to ordinary wear and tear, condemnation and casualty.

2.    <u>Continuing Store Operations</u>.  Seller will restock and maintain Store #954,
Midlothian, Virginia, and Store #956, Highland Springs, Virginia as required
pursuant to Section 8.1 of the Agreement; provided, however, that Seller shall be
entitled to maintain lower than normal levels of seasonal and holiday-oriented
general merchandise.    Except as specifically set forth in the immediately
preceding sentence, operational stock levels will be maintained through the
inventory Count Date in the ordinary course of business pursuant to the
requirements of the Purchase Agreement.

3.    <u>Order Approving Purchase Agreement</u>.  Seller and Winn-Dixie shall promptly file
an application with the Bankruptcy Court in the Proceeding seeking approval of
the transactions contemplated in the Purchase Agreement, as modified by this
letter, and the transfer of the Assets to Buyer free and clear of all liens, claims
and encumbrances other than Permitted Encumbrances pursuant, *inter alia*, to
Sections 105, 363, 365 and 1146(c) of the Bankruptcy Code.  Seller and Winn-
Dixie will exercise diligent, commercially reasonable and good faith efforts to
obtain an order of the Bankruptcy Court approving the performance of their
respective obligations under the Purchase Agreement, as modified by this letter
(the "<u>Approval Order</u>").  The Approval Order must be acceptable in form and
substance to Buyer in its sole discretion and, among other things, must contain a
finding in accordance with Section 363(m) of the Bankruptcy Code that Buyer is a
good faith purchaser.  If the Court denies Winn-Dixie's motion to approve the
Purchase, then Seller and Winn-Dixie will be unable to perform their respective
obligations under the Purchase Agreement, and thereupon Buyer will have such
rights and remedies as may be available to it under the Purchase Agreement,
subject, however, to the jurisdiction and review of the Bankruptcy Court in the
Proceeding.  Buyer, Seller and Winn-Dixie each reserve all of their respective
rights under the Purchase Agreement except as such Purchase Agreement is
expressly modified by this letter agreement.

4.    <u>Outside Date</u>.  Paragraph 15.1(a)(ii) of the Purchase Agreement is hereby
amended and restated to read as follows:

      (ii)    at the election of either Buyer or Winn-Dixie and Seller, if the relevant
Closing has not occurred for any reason (including without limitation, the
non-receipt of the Approval Order) on or before Friday, May 27, 2005, in
which event Buyer may seek to enforce its rights under the Purchase
Agreement in Bankruptcy Court.

Food Lion, LLC
March 15, 2005
Page 3

5.  <u>Closing</u>.  Provided that the Court issues the Approval Order, Buyer, Seller and
    Winn-Dixie agree to close the transactions contemplated in the Purchase
    Agreement thirty (30) days after the Approval Order becomes final and non-
    appealable, and otherwise on the terms and conditions set forth in the Purchase
    Agreement, unless the parties mutually agree to close at an earlier date so long
    as such date is after the Approval Order becomes final and non-appealable;
    provided, however, that so long as the Approval Order contains a finding
    pursuant to Section 363(m) of the Bankruptcy Code that the Buyer is a good faith
    purchaser and a waiver of the stay of closing set forth in Rules 6004(g) and
    6006(d) of the Federal Rules of Bankruptcy Procedure and no stay or injunction
    with respect to the Approval Order or the consummation of the transactions
    contemplated by the Purchase Agreement shall have been entered, Seller and
    Winn-Dixie agree that Buyer may waive the condition to closing that the Approval
    Order has become final and non-appealable.

6.  <u>Effect of Proceeding on Representations and Warranties</u>.  Buyer agrees that
    Seller and Winn-Dixie will not be deemed in default under the Purchase
    Agreement solely by reason of the commencement of the Proceeding.

7.  Pre-Petition Claims and Cure Costs.  Section 1.4 of the Purchase Agreement is
    hereby amended by deleting the reference in the penultimate line of such section
    to subsection "(viii)" and replacing such reference with "(ix)" and inserting the
    following as new subsection (viii):

    (viii)  without limiting the generality of the foregoing, any liability of either Seller
            Party with respect to any "Claims" (as defined in the Bankruptcy Code, 11
            U.S.C. sections 101 et seq) against them arising prior to the
            commencement of the chapter 11 proceedings of Winn-Dixie and its
            affiliates and any obligations with respect to pre-bankruptcy monetary
            defaults under the Leases or any other executory contract included within
            the Assets, all of which shall be paid in cash by the Seller Parties on or
            prior to the Closing Date;

If the foregoing terms, covenants and conditions meet with Buyer's approval, please
signify such acceptance by countersigning a copy of this letter on Buyer's behalf in the
space provided below.  Please return the countersigned copy of this letter to the
undersigned not later than Tuesday, March 15, 2005 at 5:00 p.m.

Upon our receipt of your countersigned letter, this letter will constitute a binding
agreement among Seller, Winn-Dixie and Buyer, modifying the Purchase Agreement,
but in all respects subject, for all parties hereto, to the entry of the Approval Order by
the Bankruptcy Court.  If we do not receive your acceptance by such date and time, we
will assume that you are not interested in proceeding with the transaction on the terms
set forth above.

Food Lion, LLC
March 15, 2005
Page 4


We look forward to receiving your acceptance of the terms of this letter.  Please contact the undersigned if you should have any questions or comments regarding the foregoing or the transaction or Proceeding in general.

Sincerely yours,

Richard C. Judd

Senior Vice President
**WINN-DIXIE STORES, INC.**

Richard C. Judd

and   Vice President
**WINN-DIXIE RALEIGH, INC.**


**ACKNOWLEDGED AND AGREED**
this ____ day of March, 2005:


**FOOD LION, LLC**

By: _____
Name: _____
Title: _____

Food Lion, LLC
March 15, 2005
Page 4


We look forward to receiving your acceptance of the terms of this letter. Please contact the undersigned if you should have any questions or comments regarding the foregoing or the transaction or Proceeding in general.

Sincerely yours,



Bennett L. Nussbaum
Senior Vice President          and    Vice President
WINN-DIXIE STORES, INC.                WINN-DIXIE RALEIGH, INC.


                                       ACKNOWLEDGED AND AGREED
                                       this 15th day of March, 2005:


                                       FOOD LION, LLC

                                       By: _____
                                       Name: R. Glenn Dixon Jr
                                       Title: Senior Vice President