**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

**MOTION FOR AN ORDER UNDER**
**11 U.S.C. §§ 105(a) AND 363 AND FED. R. BANKR. P. 6004 (A) AUTHORIZING**
**THE SALE OF CERTAIN  PHARMACEUTICAL PRESCRIPTIONS AND**
**INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND**
**ENCUMBRANCES AND (B) GRANTING RELATED RELIEF;**
**EMERGENCY HEARING REQUESTED**

Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") move (the "Motion") for an order pursuant to sections 105(a) and 363 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 6004 (a) authorizing the sale of certain pharmaceutical prescription and inventory (the "Assets") to CVS Realty Co. (the "Purchaser"), or to the party submitting a higher or otherwise better offer, if any, free and clear of liens, claims, interests, and encumbrances and (b) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**BACKGROUND**

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Court").  By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States with nearly 79,000 employees.  Substantially all of the Debtors' store locations are leased rather than owned.

4.      This Court has jurisdiction over the Motion under 28 U.S.C.
§ 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core
proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested in the Motion are
Bankruptcy Code sections 105(a) and 363, and such relief is subject to Rule 6004 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

6.      By this Motion, the Debtors request that the Court enter an order
on an expedited basis (a) authorizing the sale of certain pharmaceutical prescriptions and
inventory to the Purchaser, or to the party submitting a higher or otherwise better offer,
free and clear of liens, claims, interests and encumbrances and (b) granting related relief.

7.      The Debtors seek this relief on an expedited basis because of
certain state regulatory provisions that require that the Debtors place the Assets in
another licensed pharmacy on the date of a store closing in order to promote continued
service to consumers and to avoid possible criminal and civil penalties.[2]

## BASIS FOR RELIEF

8.      Prior to the filing of these chapter 11 cases, the Debtors undertook
a comprehensive analysis of their businesses to determine how best to maximize their
value and compete in the marketplace and announced a series of actions designed to
improve their competitive position (the "Strategic Plan").  The Strategic Plan includes an

---

[2]      In the event that the Court cannot grant the relief requested before April 27, 2005, the Debtors
will place any purchase price received on account of the Assets in escrow and seek an order authorizing the
sale of the Assets, *nunc pro tunc* to April 27, 2005.

3

asset rationalization and expense reduction plan designed to achieve a $100 million annual expense reduction and a market positioning review with the goal of improving their operations and financial performance and strengthening their businesses for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

9.      In furtherance of the Strategic Plan, and other expense reduction plans, the Debtors determined that it was in their best interests to expeditiously close or sell unprofitable stores and divest themselves of unnecessary, underperforming or non-core assets.  The Debtors' continued ability to reduce their expenses and, thereby, increase liquidity is critical for the success of their chapter 11 cases and is in the best interests of their estates and creditors.  The Debtors have determined that the Assets are not necessary for the Debtors' reorganization and, therefore, seek to maximize their value and sell them by way of this Motion.

**The Assets**

10.      The store that is the subject of this Motion is a supermarket store operated by the Debtors that, as noted above, was slated for sale and/or closure under the Asset Rationalization Plan.  This store is Store #2091 in Reidsville, North Carolina (the "North Carolina Store").  The lease on the North Carolina Store expires by its terms at the end of April.  The Debtors did not believe that the North Carolina Store fits into the Debtors' long term business plans and decided to cease operations there.  The closing of the North Carolina Store is scheduled for April 27, 2005.

11.     The Assets consist of certain pharmaceutical prescriptions and related inventory.  Because North Carolina state law requires the Debtors to properly transition customer prescriptions at the date of a store closing, N.C. Admin. Code tit. 21, r. 46.1806, N.C. Admin. Code tit. 21, r. 46.1503 and N.C. Admin. Code tit. 21, r. 46.2502, the approval of the sale of the Assets on an expedited basis is necessary to permit the Debtors to ensure a seamless transition of these assets for the benefit of consumers and for creditors of the estate and to avoid potential criminal and civil penalties.  Indeed, if the sale is not consummated then it is possible that the Debtors may be forced to abandon the prescriptions to the Purchaser in order to maintain compliance with applicable law.  The Debtors, therefore, believe that a sale of the Assets would be beneficial to their present customers, creditors and estates and would help facilitate a successful reorganization.

**Marketing of the Assets**

12.     As stated above, the lease for the North Carolina Store expires at the end of this month.  The Debtors decided, in the ordinary course, not to renew the lease and close this store.  Beginning in March 2005, the Debtors determined that the Assets were not necessary for their business needs and sought to sell them.

13.     The Debtors concluded that the best means to maximize the value of the Assets was to market them.  The Debtors have conducted marketing efforts under extreme time constraints in order to further their goal of selling the Assets for the most attractive price (and other terms) commercially attainable.  In connection with the marketing efforts, the Debtors have attempted to identify and contact all third party

purchasers that might be interested in purchasing the Assets.  These potential purchasers are identified on Exhibit A to this Motion.  These efforts culminated in an offer from the Purchaser to purchase the Assets for approximately $147,619 -- $85,000 for the prescriptions and approximately $62,600 for the inventory.  After reviewing all offers for the Assets, including all terms of all offers, the Debtors determined that the Purchaser's offer was the highest and otherwise best offer for the Assets.  The Debtors determined that it was in their best interests to enter into a Purchase and Sale Agreement with Purchaser (the "Purchase Agreement"), memorializing the terms of this offer.  Notably, the Purchase Agreement contains an indemnification provision which requires the Debtors to provide certain indemnifications to the Purchaser, which indemnifications are standard in this industry for sales of this type.  The Debtors believe that the terms of the Sale are fair, reasonable and favorable to the them.

14.     The Debtors further believe that the sale of the Assets in this manner offers the best opportunity for the Debtors to maximize the value of the Assets for the benefit of their estates following intense marketing efforts and to avoid the disruption of services to present pharmaceutical customers.  Consequently, the Debtors believe that the sale of the Assets is in the best interests of the estates and should be approved.

**Use of the Proceeds**

15.     The proceeds from the sale of the Assets will be applied in accordance with the terms of the credit agreement governing the Debtors' debtor-in-possession financing facility, as amended.

6

16.    Accordingly, by this Motion, the Debtors request that the Court enter an order granting the following relief:

(a)    authorizing the proposed sale of the Assets to the Purchaser, or to the party that submits a higher or otherwise better offer for the Assets;

(c)    authorizing the proposed sale of the Assets and making the following determinations, among others, with respect to the sale:

(i)    that such sale has been agreed upon, and will be made and completed, in good faith, for purposes of the provisions of Bankruptcy Code section 363(m);

(ii)    that such sale shall be made, and the Assets shall be delivered to the Purchaser or to the party submitting the highest or otherwise better offer for the Assets, free and clear of any and all liens, claims, encumbrances and interests;

(iii)    that the Purchaser or the party submitting the highest or otherwise better offer for the Assets shall receive good, valid and marketable title to the Assets; and

(iv)    that the ten (10) day stay period provided for in Rule 6004(g) of the Bankruptcy Rules shall not be in effect with respect to the Sale Order and the Sale Order shall be effective and enforceable immediately upon its entry.

## APPLICABLE AUTHORITY

**A.    Bankruptcy Code Section 363(b) Authorizes the Proposed Sale.**

17.    Bankruptcy Code section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy Code section 1107 (a) gives the Debtors, as debtors-in-possession, the same authority as a trustee to use, sell or lease property under section 363(b)(1).  <u>See</u> 11 U.S.C. § 1107(a).

18.    Although Bankruptcy Code section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, in applying this section, courts have required that it be based upon the sound business purpose of the debtor.  See In re B.D.K. Health Mgmt., Inc. (In re B.D.K. Health Mgmt.), Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); see also Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented before him a good business reason to grant such application); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all a chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991).  To determine whether a sound business purpose exists, courts look for four factors: (a) sound business reason; (b) fair and reasonable consideration; (c) good faith in the transaction; and (d) adequate and reasonable notice.  Here, the Debtors have established each of these elements.

19.    Sound Business Reason.  The Debtors submit that there is strong business justification for the Sale to the Purchaser.  As noted above, the North Carolina Store is unprofitable and does not fit the Debtors' long-term business strategy and, in

order to close the stores and monetize the Assets for distribution to creditors and to streamline their business operations to facilitate a successful reorganization, the Debtors have decided to consummate a sale of the Assets. The Debtors believe that the purchase price offered by the Purchaser is fair and reasonable and the Debtors would be prepared to consummate the Sale even if no other parties submit higher or better offers.

20. The Sale is essential for the Debtors to continue their business plan to identify and divest themselves of unprofitable assets and this plan will remain critical to the Debtors' survival in these chapter 11 cases. Thus, a sound business reason exists for the Sale.

21. Further, the Sale is supported by a sound business reason, because if the Assets are not sold, the Debtors may be forced to abandon the prescriptions to the Purchaser and, therefore, reap no financial benefit whatsoever in order to maintain compliance with applicable law.

22. <u>Fair and Reasonable Consideration</u>. The Debtors submit that the Sale will provide fair and reasonable consideration to the Debtors' estates. As noted above, the Debtors extensively marketed the Assets in a compressed timeframe and strongly believe that these efforts garnered the highest and otherwise best offer for the sale of the Assets. The offer from the Purchaser is the highest and best offer received to date and the Debtors believe that it is extremely unlikely that additional marketing would realize more value to the Debtors, their estates and their creditors. Thus, the Debtors believe the proposed sale of the Assets to the Purchaser will result in the Debtors receiving fair and reasonable consideration or the Assets.

9

23.    <u>Good Faith</u>.  The proposed Sale is the product of arm's-length negotiations between the Debtors and the Purchaser and, therefore, was made in good faith.  The Purchaser has no affiliation with the Debtors, and the marketing process that occurred ensured a fair and reasonable environment for interested parties to submit an offer to purchase the Assets.  If required, the Debtors are prepared to present further evidence of good faith during the course of the hearing on the Motion that Debtors believe will satisfy this Court and the mandates of Bankruptcy Code section 363(m).

24.    <u>Adequate and Reasonable Notice</u>.  The Debtors respectfully submit that, in light of applicable state law, notice and timing of the Sale Hearing (defined below) is adequate and fair, is in the best interest of the public and is reasonably calculated to elicit any further interest in acquiring the Assets.  The Debtors strongly believe that their marketing efforts garnered the highest and best possible value for the Assets.  As in the case of <u>In re Del. & Hudson Ry. Co.</u>, 124 B.R. 169 (D. Del. 1991), the Debtors' efforts in soliciting and marketing the Assets support the proposed process and the reasonableness of any offer ultimately presented through that process.  <u>See</u> <u>id</u>. at 179 (finding reasonable purchase price where extensive soliciting occurred in addition to negotiations with prospective purchasers).

25.    The Debtors intend to give notice of the hearing to consider approval of this Motion and the Debtors' proposed sale of the Assets (the "Sale Hearing") by serving a copy of the Motion and a notice of the Sale Hearing to (i) each taxing authority known to the Debtors to have a potential interest in the Assets and to the North Carolina Board of Pharmacy (via Federal Express or facsimile); (ii) all parties who

previously have expressed serious interest in acquiring the Assets (via Federal Express or facsimile); (iii) the Purchaser (electronically); (iv) counsel for the Debtors' postpetition secured lenders (the "DIP Lenders") (electronically); (v) the indenture trustee for the Debtors' noteholders (electronically); (vi) counsel for the Creditors' Committee (electronically); (vii) all known holders of Interests and Claims (as those terms are defined below) in the Assets (via Federal Express or facsimile); (viii) all entities having requested notices pursuant to Bankruptcy Rule 2002; (ix) the Office of the United States Trustee (electronically); and (x) any other parties not otherwise named in this Motion but included in the Order (A) Establishing Notice Procedures on a Final Basis and (B) Continuing Hearing with Respect to Scheduling Omnibus Hearings (the persons listed in clauses (i) through (x) are referred to collectively as the "Notice Parties").

26.    The Debtors believe that the foregoing notice is good and sufficient under the particular circumstances and reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those persons most interested in these cases and those persons potentially interested in bidding on the Assets. The Debtors, thus, submit that the proposed notice is sufficient for entry of an order granting the relief requested in the Motion.

27.    By this Motion, the Debtors intend to sell the Assets in order to monetize them for distributions to their creditors, and to enhance their ability to successfully reorganize. The Debtors strongly believe that, in furtherance of these goals, they have done all that is reasonably possible to secure the highest or best possible offer for the Assets and believe that any sale must be consummated on or before the closing of

the North Carolina Store in order to prevent the complete loss in value of the Assets and possible violations of state law.  For all of the foregoing reasons, the proposed Sale to the Purchaser, or to a party submitting a higher or otherwise better offer, is warranted and appropriate under Bankruptcy Code section 363(b), and the relief requested in this Motion is a product of sound business judgment and is in the best interests of the Debtors, their creditors and their estates.  Thus, this Court should approve the sale of the Assets to the Purchaser or to a party submitting a higher or otherwise better offer.

**B.      Section 363(f) Authorizes the Sales Free and Clear of Liens and Other Claims.**

28.      The Debtors seek to sell the Assets free and clear of all liens, claims, interests and encumbrances of any nature, other than those specifically assumed by the Purchaser or the party submitting the highest or otherwise best offer for the Assets. Such relief is consistent with the provisions of Bankruptcy Code section 363(f) in these cases.

29.      Bankruptcy Code section 363(f) provides that a debtor-in-possession may sell property free and clear of liens, claims or interests and encumbrances of another entity in such property if any of the following circumstances apply:

(1)  applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2)  such entity consents;

(3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30.    As indicated by the use of the disjunctive term "or," satisfaction of any one of the five requirements listed in Bankruptcy Code section 363(f) is sufficient to permit the sale of assets free and clear of liens, claims, encumbrances, pledges, mortgages, security interests, charges, options and other interests (collectively, the "Interests") and claims (as such term is defined in 11 U.S.C. § 101(5)) ("Claims").  See In re Gulf States Steel, Inc. of Ala., 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002) ("[s]ince the five conditions listed in 11 U.S.C. § 363(f) are phrased in the disjunctive, property may be sold free and clear of interests if any one of the five conditions is satisfied."); See In re Dundee Equity Corp., Case No. 89-B-10233, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met.").

31.    The Debtors do not believe that the Assets are subject to any liens or other Interests or Claims.  However, to the extent that any Interests or Claims exist the Debtors will satisfy Bankruptcy Code section 363(f) by obtaining any necessary consent of such parties prior to or at the Sale Hearing.

32.    Moreover, to the extent there exist other possible holders of Interests in or Claims against the Assets, the Debtors submit that one of the subsections of Bankruptcy Code section 363(f) applies.  Any Interest in or Claim against the Assets will be adequately protected because it will attach to the proceeds of the sale, with the same validity, enforceability, priority, force and effect they now have as against the

Assets, subject to any rights, claims, defenses and objections of the Debtors and all

interested parties with respect to such Interests and Claims.  Accordingly, the sale should

be approved under Bankruptcy Code section 363(f) and the sale of the Assets free and

clear of any lien, claim, lease or encumbrance of any nature is appropriate.

**C.    The Purchaser Should Be Afforded All Protections Under Bankruptcy Code
Section 363(m) as a Good Faith Purchaser.**

33.    Bankruptcy Code section 363(m) provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does not
> affect the validity of a sale or lease under such authorization to an entity
> that purchased or leased such property in good faith, whether or not such
> entity knew of the pendency of the appeal, unless such authorization and
> such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  The Bankruptcy Code does not define the term "good faith."

Courts, however, indicate that a party would have to show fraud or collusion between the

purchaser and the debtor-in-possession or trustee in order to demonstrate a lack of good

faith.

> The requirement that a purchaser act in good faith . . . speaks to the
> integrity of his conduct in the course of the sale proceedings.  Typically,
> the misconduct that would destroy a purchaser's good faith status at a
> judicial sale involves fraud, collusion between the purchaser and other
> bidders or the trustee, or an attempt to take grossly unfair advantage of
> other bidders.

In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986) (ellipsis in original;

citations omitted); accord Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs. (In re

Colony Hill Assocs.), 111 F.3d 269, 276 (2d Cir. 1997).  No such facts exist here.

34.     The Debtors submit that: (i) the proposed Sale is the subject of arm's-length negotiations with the Purchaser and is made in good faith; (ii) the Purchaser has no affiliation with the Debtors; (iii) the Assets were marketed extensively and the purchase price is fair and reasonable; (iv) to the best of the Debtors' knowledge, the Purchaser has taken no action to chill or otherwise collude with any other party to restrict bidding on the Assets; and (v) the marketing process that occurred and notice of the Sale Hearing ensures that the Purchaser has not exerted undue influence over the Debtors. Accordingly, the Debtors request that the Court find that the Purchaser, or the party submitting a higher or otherwise better offer, acted in good faith within the meaning of Bankruptcy Code section 363(m).  See In re B.D.K. Health Mgmt., 1998 WL, at *4 (finding that the purchaser is entitled to the protections of Bankruptcy Code section 363(m) because the Sale was negotiated at arms-length, proposed in good faith and the consideration for the assets was fair and reasonable.).

**NOTICE**

35.     Notice of the Motion has been provided or will be provided to the Notice Parties listed above in paragraph 25.  The Debtors submit that such notice is sufficient and that no other or further notice need be given.

15

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court

(a)     enter an order substantially in the form attached to this Motion as <u>Exhibit C</u>, granting the Motion and approving the sale of the Assets to the Purchaser or to the party submitting higher or otherwise better offer for the Assets,

(b)     authorizing the Debtors to take all actions reasonably necessary to effectuate the Sale, and

(c)     granting such other and further relief as the Court deems just and proper.

Dated: April 20, 2005

SMITH HULSEY & BUSEY


By  _/s/ Cynthia C. Jackson_____
     Stephen D. Busey
     James H. Post
     Cynthia C. Jackson
Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida  32202
Telephone:  (904) 359-7700
Facsimile:  (904) 359-7708

- and –

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (917) 777-2150

- and –

16

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Eric M. Davis
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Telephone: (302) 651-3000
Facsimile: (302) 651-3001

Attorneys for the Debtors

## EXHIBIT A

### Parties To Whom Assets Were Marketed

| Party | Address |
|---|---|
| CVS Realty Co.<br>Attn: Syed A. Husain, R.Ph.<br>Email: SAHusain@cvs.com<br>Phone: (401) 770-2391 | 1615 Way Street<br>Reidsville, NC 27320 |
| Kmart Company<br>Attn: Berkly Gamble<br>Email: bgamble@kmart.com<br>Phone: (248) 637-4522 | 1623 Way Street<br>Reidsville, NC 27320 |
| Eckerd Corporation<br>Attn: Jim Swearinger<br>Email: jswea2@eckerd.com<br>Phone: (704) 904-9217 | 1703 Freeway Drive<br>Reidsville, NC 27320 |

18