# EXHIBIT "A"

# LEASE

THIS LEASE, made this __11th__ day of _____June_____ , 19 _84_

between __BARRY F. O'NEILL, a Georgia resident,__

_____

_____ (hereinafter called "Landlord")

and __WINN-DIXIE ATLANTA, INC., a Florida corporation duly qualified to trans-__

act business in the State of Georgia,

_____(hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singu-

lar or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

### WITNESSETH:

**PREMISES**     That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and

demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord, for

the term hereinafter specified, the following described premises:

That certain store building, approximately __220___ feet in width by __200_____

feet in depth, __together with concrete pads at rear of store building for__

__installation of Tenant's exterior coolers and/or freezers and a front__
__vestibule,__
and the land on which the same shall stand (hereinafter collectively called "demised pre-

mises"), which store building and related improvements are to be constructed by Land-

lord according to plans and specifications to be approved by the parties as herein pro-

vided, and shall be in the location and of the dimensions as outlined in red on the

Plot Plan _entitled "Plot Plan Olde Mill", prepared by J. Lancaster As-__

__sociates, Engineering and Development Consultants, Marietta, Georgia,__

__dated May 1, 1984_____ ,

attached hereto marked Exhibit "A" and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in de-

tail on Exhibit "A"), known as _____Olde Mill Shopping Center_____

(hereinafter called "shopping center"), located_at the northwesterly corner of___

__the intersection of Old Canton Road and Roswell Road_____

in the County of _____Cobb_____ ,

State of_____Georgia_____ , the legal description of the shopping center being

set forth on Exhibit "B" attached hereto and by this reference made a part hereof.

APPROVED
AS TO FORM
_____
Division Manager
_____
Legal Dept.
Winn-Dixie Stores,
Inc.

This Instrument was prepared by
Charles ?  ?... ? ?.  Attorney -
at -Law  w?o.?e  ?d?ress  is  P. O.
Box B, Jacksonville, Florida 32203

WD 33-36 Rev. 4/79

**TERM**　　FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said premises for the transaction of its business as hereinafter provided (or within forty-five (45) days after satisfaction by Landlord of the requirements of Article 5(a) through Article 5(c) hereof) for an initial term of twenty (20) years from said commencement date. The parties agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

**RENTAL**　　1. The Tenant agrees to pay to the Landlord as a minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of _Two Hundred_

Seventy-Nine Thousand Four Hundred and No/100------------------------------------
Dollars ($ _279,400.00_　) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of _Twenty-Three Thousand Two Hundred Eighty-Two and_

No/100 Dollars------------------------------------------------------------ Dollars
($ _23,282.00_　) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof.

In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which _one_ per cent ( _1_ %) of Tenant's gross sales made from the demised premises in each fiscal year ending approximately June 30th during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental.

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

**DEFINITION OF "GROSS SALES"**　　1a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ (4) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, government bonds or savings stamps or

similar items; (5) returns of merchandise to suppliers or manufacturers; (6) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (7) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF SALES**

1b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof shall object thereto and within ninety (90) days after such objection shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord. In the event such an audit undercovers an understatement by Tenant in the gross sales made by Tenant from the demised premises during the preceding fiscal year in excess of three percent (3%), then, in such event, Tenant shall pay the cost of such audit. Otherwise, Landlord shall bear the cost thereof.

Notwithstanding the foregoing, Landlord shall be permitted to disclose such sales figures to the holders of security deeds on the demised premises or to prospective purchasers of the demised premises.

**USE**

2. The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, or for the conduct of any general mercantile, retail or service business. In no event shall Tenant use or permit the use of the demised premises or any portion thereof for either a massage parlor, an adult book store or similar business catering to pornographic interests, a so called "head shop", a bowling alley, a theater, a funeral parlor, a flea market, an amusement arcade, a warehouse or an office (except as incidental to a permitted use).

Tenant at all times shall at Tenant's sole cost and expense fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises.

**CONSTRUCTION OF SHOPPING CENTER**

3. The Landlord, at its sole cost and expense, shall construct the shopping center, substantially as shown on Exhibit "A", consisting of all the buildings shown thereon, together with all ramps, sidewalks, streets, entranceways, malls, parking areas, service areas, driveways and related improvements, said improvements (excluding buildings) being sometimes hereinafter referred to as "common areas". The Landlord, at its sole cost and expense, shall grade and surface with top quality materials all paved portions of the common areas (including parking area), and shall provide proper and adequate water drainage and lighting system and operations therefor and shall operate and maintain the same in good repair and usable condition for use by the patrons of the shopping center and the tenants and their employees during the term of this lease and any extensions thereof. The arrangement and location of all store buildings and common areas (including parking area) within the shopping center shall at all times during the term of this lease, or any extensions thereof, be maintained as shown on Exhibit "A" and shall not be changed without the written consent of the Tenant. If not shown on Exhibit "A", Tenant expressly reserves the right to approve the finish grade elevations of all store buildings and common areas (including parking and service areas) within the shopping center which are to be constructed concurrently with Tenant's

store building. Notwithstanding the foregoing, it is understood that Landlord intends initially to construct only Tenant's store building and the further store buildings required under Article 5 herein, together with all the common areas in the shopping center as shown on Exhibit "A". Landlord reserves the right, but shall not be required, to construct additional buildings only in the locations and of the dimensions reserved therefor on Exhibit "A", provided, however, such additional buildings shall be of like structural and architectural quality as the building for Tenant; and provided further, however, throughout the shopping center in conjunction with the construction of any additional buildings, at least the ratio of automobile parking area to gross building area as hereinafter required shall be maintained at all times. Landlord agrees that Tenant shall have uninterrupted use and enjoyment of the demised premises in the common areas during any such additional construction without unreasonable interference therewith by reason of such construction work.

Concurrently with the above construction, Landlord agrees at its sole cost and expense, to construct the store building for occupancy by Tenant in accordance with the plans and specifications to be approved by both Landlord and Tenant. Plans and specifications shall be approved when initialed by both parties, and when initialed shall constitute a part of this lease. Said plans and specifications shall provide for a completed store building, commonly referred to as a "lock and key job", and shall include, but without limitation the following: air conditioning and heating equipment including insulated duct work with registers and grilles and roof or ceiling structural system adequately designed to support said air conditioning and heating equipment, plumbing and plumbing fixtures, drains, interior walls and partitions, electrical wiring, lighting fixtures to Tenant's requirements, vinyl asbestos tile floor surfacing (color at Tenant's option), automatic sliding doors, sprinkler system, manager's customer service office, heat reclaim coil, Onan emergency generator, connection of air conditioning and heating equipment and connections to all utilities. Tenant at its expense shall provide its own trade fixtures which shall be connected by Landlord except for refrigeration lines and heat reclaim coil which shall be connected at Tenant's expense. All equipment and fixtures provided by Tenant shall remain the property of Tenant and may be removed by Tenant from the demised premises at any time, provided Tenant is not in default hereunder. In addition, the wall to be erected on the westerly side of Tenant's store building shall be the "knockout" type wall to allow for future expansion pursuant to Article 38 herein.

Except for any liability which Landlord might have with respect to such items under Article 12 of this lease and except for any latent defects in Landlord's installation of Tenant's trade fixtures, Landlord shall have no further liability with respect to Tenant's trade fixtures or the installation thereof once such items have been installed in the demised premises and accepted by Tenant.

**COMPLETION DATE**    4. Landlord covenants and agrees that the construction of the shopping center shall begin not later than ___October 1, 1984___ and shall be completed not later than ___July 1, 1985___; and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction; provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than ___October 1, 1985___, said option to terminate shall not arise. "Construction of the shopping center" shall be deemed to have begun when the first concrete footings have been poured. If pursuant to this paragraph Tenant shall cancel or terminate this lease or if Landlord fails to commence or complete construction of the shopping center by the above dates, Land-

lord agrees to give Tenant the "first right of refusal" on the same terms and conditions as Landlord is willing to grant to a bona fide third party, to be exercised within sixty (60) days after receipt of notice of the terms and conditions from the Landlord, to occupy any premises within the shopping center which Landlord may offer for use as a food supermarket. The "first right of refusal" shall be operative and effective for a period of three (3) years from the date of such cancellation. However, if offered to Tenant within six (6) months after cancellation of this Lease, the lease terms and provisions shall be the same as this Lease.

**COMMENCE-**
**MENT DATE**

forty-five (45)

5. The Tenant shall open its store for business within ▓▓▓▓▓ days following performance of the following:

    (a) Tenant's store building and other improvements constructed on the demised premises shall have been delivered to Tenant completed in accordance with the plans and specifications and Landlord shall have delivered to Tenant, at Landlord's expense, a Certificate of Occupancy or equivalent document for the demised store building;

    (b) Construction of all of the common areas (including parking area hereinafter specifically required) shall have been completed substantially as shown on Exhibit "A";

    (c) Construction of at least 375 lineal feet of store frontage and 39,400 sq. ft. of total building area (excluding Tenant's store building) shall have been substantially completed in the locations shown on Exhibit "A"; and

    In the event that all the above requirements shall not have been met on or prior to _____ _____ October 1, 1985 _____, the Tenant at its sole option may cancel and terminate this lease.

    Rent shall begin to accrue hereunder upon the date the Tenant opens its store for business, or upon the expiration of ▓▓▓▓▓ days following the performance of all the above requirements, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications.

forty-five (45)

Rent shall begin to accrue hereunder upon the date the Tenant opens its store for business, or upon the expiration of forty-five (45) days following the performance of all the above requirements, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications; provided, however, in the event Tenant fails to notify Landlord of any patent defects in the demised premises or of Landlord's failure to comply with the requirements of items (a) through (c) above, within forty-five (45) days after rent begins to accrue hereunder, Tenant shall be deemed to have accepted the premises "as is" and waived the right to object to such matters.

**INVESTMENT**
**TAX CREDIT**
**PASS--**
**THROUGH**

6. In the event that Landlord is not eligible to receive the investment tax credit, Landlord agrees that Tenant may treat as purchased for purposes of the investment tax credit all property leased from Landlord during the tax year in which the lease term commences. The Landlord further agrees to execute an Investment Tax Credit Lessor's Election Statement (provided by Tenant) in accordance with Treasury Regulation Section 1.48-4(g)(2), and to attach a list (provided by Tenant) of such property to its federal income tax return for the tax year in which the lease term commences and to retain a copy of the Investment Tax Credit Lessor's Election Statement in Landlord's records.

**RETAIL AND SERVICE STORES ONLY**

7. Without the prior written consent of Tenant herein only retail and/or service stores shall be allowed to operate in the shopping center, or any enlargement thereof, it being the intent of the parties hereto that no spa, bowling alley, skating rink, bingo parlor, theatre (either motion picture or legitimate), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ sales of automobiles, or health, recreational or entertainment-type activities, or non-retail or non-service type activities, shall be permitted. Landlord may, without the consent of Tenant, lease or operate up to, but not more than, 5,000 square feet of space in the shopping center for business or professional office space.

**PARKING AND COMMON AREAS**

8. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees, a non-exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common areas, as defined in Article 3 hereof, and as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks.

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide:

(a) a minimum ratio of at least_____5.0_____ automobile parking spaces for each 1,000 sq. ft. of gross building area (including additional floor levels) in the shopping center, and

(b) facilities for convenient parking of at least_____507_____ automobiles (minimum) other than any reduction caused by Tenant's exercise of its expansion option described in Article 38 hereof;

and in the event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, the Tenant at its option shall have the right to terminate this lease; provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination. All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during customary food store shopping hours (but in no event later than the earlier of 1/2 hour after Tenant closes its store, or 1:30 a.m.). In the event Tenant desires to keep its store building open after such times, it agrees to reimburse Landlord for the cost of lighting of such portion of the common areas (including parking areas) as is requested by Tenant to be lighted after such times. Landlord further agrees that no sign boards or construction, except for one kiosk and one shopping center pylon sign, shall be erected in any of the common areas (including parking area) shown on Exhibit "A" or so as to obstruct view of the demised premises from the adjoining public streets.

**SERVICE AREA**

9. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances parking spaces for two large trailer trucks for continuous use and further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such spaces as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

**UTILITIES**

10. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities. In no event which is beyond Landlord's control shall an event or default exist or shall Landlord be liable for the unavailability, quality, quantity, failure or interruption of such utilities or service to the demised premises.

**TENANT'S**
**REPAIRS**

11. Upon completion of construction by Landlord and acceptance of the demised premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear.

and

**LANDLORD'S**
**REPAIRS**

12. The Landlord shall, at its cost and expense, keep and maintain, in good condition and repair, the common areas, the exterior of Tenant's store building, including the ████████████████████████ ████████████████████████ roof, ████████████████████████ masonry walls, foundation and structural members, the automatic sprinkler system (including central alarm system therefor, if required by governmental authority), ████████████████████ of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the common areas (as defined in Article 3 hereof) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that the Landlord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements, or other casualty covered by Tenant's self-insurance program as to fire and extended coverage items. Landlord further agrees, at its cost, for the duration of the term of this Lease and any extensions thereof, to cause the entire common areas of the shopping center to be swept clear of all litter and debris a minimum of two times a week.

If in order to protect the Tenant's property in the store building it shall be necessary to make emergency repairs to any portion thereof which is the responsibility of the Landlord to repair, or if the Landlord after receipt of notice as above provided fails or neglects to make with all due diligence such other repairs to the store building or common areas, as defined in Article 3 hereof, which are the responsibility of the Landlord, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs. Landlord further covenants that the store building will be so constructed and maintained at all times so as structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that said premises may conform to such ordinances, statutes, rules or regulations now in force or which may be hereafter passed, adopted or promulgated ; provided, however, that Tenant shall make such changes or alterations in the premises as are required by such governmental authority solely concerning the use of the premises, except that nothing herein contained shall in any wise impair or affect Tenant's option to terminate this Lease contained in Article 18 hereof.

**SIGNS**

13. With the consent of ░░░░░░░░░░ t shall not be unreasonably withheld, Tenant may place, ░░░░░░░░░░ signs on the walls, and any other place on or about the d░░░░░░░░░░ igns shall remain the property of Tenant and may be remov░░░░░░░░░░ e term of this Lease, or any extension thereof, provid░░░░░░░░░░ or reimburse Landlord for the cost of any damage to the demised premises resulting from the installation or removal of such signs. Landlord agrees to give its consent to such signs as are usual t the conduct of Tenant's business. Landlord agrees to construct a shopping center pylon sign in the shopping center in a location to be mutually agreed upon by Landlord and Tenant. Tenant, along with other tenants in the center, shall be permitted to affix on such pylon an electrically illuminated sign panel advertising its business, to be installed by Tenant and connected to power outlets installed by Landlord. Landlord will, at its cost, lay and install suitable underground electrical conduit and wiring extending from Tenant's building to a junction box at the pylon site and Landlord shall also construct and install the necessary concrete base for the pylon sign.

The design of Tenant's sign panel to be affixed to the pylon sign shall be sub-
ject to the approval of Landlord, not to be unreasonably withheld, it being con-
templated that such approval shall be accorded to sign designs usual to Tenant's
business.

FIXTURES
AND
INTERIOR
ALTERATIONS

14.  The Tenant, at its own expense, may from time to time during the term of
this Lease make any non-structural interior alterations, additions and improve-
ments in and to the demised premises which it may deem necessary or desirable
and which do not adversely affect the structural integrity thereof, but it shall
make them in a good, workmanlike manner and in accordance with all valid require
ments of municipal or other governmental authorities.  All permanent structural
improvements shall belong to the Landlord and become a part of the premises upon
termination or expiration of this Lease.

, provided it is not in default under this Lease,

Tenant may construct and build or install in said premises any and all racks, counters, shelves
and other fixtures and equipment of every kind and nature as may be necessary or desirable in the
Tenant's business, which racks, counters, shelves and other fixtures and equipment shall at all times
be and remain the property of the Tenant, and Tenant shall have the right to remove all or any
part of the same from said premises at any time; provided, Tenant shall repair or reimburse Land-
lord for the cost of repairing any damage to said premises resulting from the installation or re-
moval of such items.

Tenant shall not permit any mechanic's and materialmen's or other similar
lien to be filed against the demised premises or the shopping center as a
result of Tenant's construction of alterations, additions and improvements
to the demised premises.

INDEMNIFI-
CATION

15.  Unless caused by the sole negligence of the Landlord, its servants, agents
or employees, Tenant agrees to indemnify and save harmless the Landlord from any
claim or loss by reason of an accident or damage to any person or property hap-
pening in the demised premises.  Likewise, unless caused by the sole negligence
of the Tenant, its servants, agents or employees, Landlord shall indemnify and
save harmless the Tenant from any claim or loss by reason of an accident or dam-
age to any person or property happening on or about all common areas (as defined
in Article 3 hereof) of the shopping center, and Landlord further agrees to car-
ry, at its expense, public liability insurance coverage on all common areas (as
defined in Article 3 hereof) of the shopping center, with a contractual lia-
bility endorsement on the policy, in a company qualified to transact business
in the state where the premises are located, stipulating limits of liability of
not less than $250,000.00 for an accident affecting any one person; and not less
than $500,000.00 for an accident affecting more than one person; and $50,000.00
property damage.  Certificate of such coverage from the insurer providing 30 day
notice to Tenant prior to cancellation or termination shall be furnished to Tena

During the term of this Lease and any extensions thereof, Tenant agrees to pay t
Landlord as additional rental the amount of the premium for Landlord's liability
insurance above described.  Tenant shall be responsible for its pro-rata share o
such premiums, such pro-rata share to be an apportionment made in the ratio whic
the square footage of the ground floor of Tenant's store building bears to the
total square footage of the ground floor of all buildings from time to time exis
ing in the shopping center.  The amount of premiums for which Tenant is to reim
Landlord shall be less any available abatements, discounts or refunds thereon.
Landlord shall at all times use its best and earnest efforts to obtain such cov
erage at the most reasonable rates available.  Tenant shall be entitled to re-
ceive from the Landlord copies of the statements for such insurance premiums.

-8-

**CLEANLINESS**   16. Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the entryways and delivery areas adjoining the building reasonably clean and free from rubbish and dirt. Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit the Landlord or its agent at all reasonable times to enter upon the premises for the purpose of making repairs and for examining or showing the same to prospective purchasers.

**FIRE**   17.   In the event that Tenant's building shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, the either party to this lease may elect within thirty (30) days after such damage, to terminate, and thereupon both parties shall stand released of and from all further liability under this lease.  If Tenant's building shall thereby suffer damage to any extent less than 75% of the value thereof, or if either party does not elect to terminate as aforesaid, then the Landlord agrees to proceed promptl and without expense to the Tenant to repair the damage or restore the improvements, abating a fair and just portion of the minimum guaranteed rent, according to the unusable space, until said premises are completely reinstated or restored If at any time during the term of this lease or any extensions thereof any of th buildings in the shopping center, exclusive of Tenant's store building, are damaged by fire or by the elements or otherwise, Landlord shall immediately commence and diligently prosecute to completion repair of all such damage and shall restore said improvements to their condition prior to such damage.

If damage to Tenant's building in excess of fifty percent (50%) of the value thereof shall occur within the last five (5) years of the initial term or any of the option extension periods provided herein, the obligation of Landlord to restore the demised premises shall not arise unless Tenant shall give notice to Landlord within thirty (30) days after such damage of its desire to extend the term of this Lease for an additional period so as to expire ten (10) years from the date of completion by Landlord of restoration of such damage, and on the same conditions and for the same rentals.  Upon such notice, Landlord agrees with all due diligence to repair and restore Tenant's building and the Lease shall continue and the remaining option periods, if any, shall be construed to follow upon the end of such extended term.  Failing such notice to extend, Landlord at its option shall have the right to terminate this Lease or to restore the premises and the Lease shall continue for the remainder of the then unexpired term.

Landlord shall carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord and on all other buildings within the shopping center in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees.  During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rent the amount of the premium for Landlord's fire and extended coverage insurance above described.  Tenant shall be responsible for its pro-rata share of such premiums, such pro-rata share to be an apportionment made in the ratio which the square footage of the ground floor of Tenant's store building bears to the total square footage of the ground floor of all buildings from time to time existing in the shopping center.  The amount of premiums for which Tenant is to reimburse Landlord shall be less any available abatements, discounts or refunds thereon.  Landlord shall at all times use its best and earnest efforts to obtain such coverage at the most reasonable rates available.  Tenant shall be entitled to receive from the Landlord copies of the statements for such insurance premiums.

Notwithstanding anything herein to the contrary, Landlord's liability to re-pair or restore the demised premises shall not exceed the amount of any insur-ance proceeds received by Landlord.

, except for the matters set forth
on Exhibit "C" attached hereto,

**QUIET ENJOYMENT**

18. The Landlord covenants, warrants and represents that upon commencement of the lease term, the shopping center, including the demised premises, will be free and clear of all liens and encum-brances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peace-ably and quietly have, hold and enjoy the demised premises and all rights, easements, appurte-nances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

. The Landlord warrants the non-existence of any zoning or other restriction preventing or re-stricting use of the demised premises for the conduct of a general mercantile business or use of common areas for parking purposes, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting Tenant from conduct-ing a general mercantile business or using the common areas (as defined in Article 3 hereof) in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

**TAXES AND LIENS**

19. All taxes, assessments and charges on land or improvements and obliga-tions secured by mortgage or other lien upon the demised premises of the shop-ping center shall be promptly paid by the Landlord prior to delinquency. In the event Landlord fails to pay such taxes, assessments and charges within ninety (90) days after receipt by Landlord of written notice from Tenant, the Tenant may perform, acquire or satisfy any lien, encumbrances, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at the rate allowed by Georgia law.

. (And see Article 37 hereof.)

**CONDEM-NATION**

20. If any part of the demised premises in excess of ten percent (10%) thereof, or any lesser part thereof which would substantially interfere with the conduct of Tenant's business therein, or more than twenty percent (20%) of the buildings exclusive of Tenant's building, within the shopping center, be taken for any pub-lic or quasi-public use, under any statute or by right of eminent domain, or pri-vate purchase in lieu thereof, the Tenant shall be entitled to termination of this lease at its option, exercisable within ninety (90) days after such taking; and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as afore said, the Landlord shall immediately commence and diligently prosecute to comple tion the repair and restoration of the improvements, including Tenant's store building, within the shopping center to a condition comparable to their conditi at the time of taking and the lease shall continue, but Tenant shall be entitle to such division of proceeds and abatement of rent and other adjustments as sha be just and equitable under all circumstances.

Notwithstanding anything herein to the contrary, Landlord's obligation and lia-bility to repair and restore the improvements shall not extend beyond any con-demnation proceeds or awards received by Landlord.

The right of Tenant to a division of condemnation proceeds shall extend only to such portion of the award as may be attributed by the court to the disturbance of Tenant's established business, to Tenant's trade fixtures, equipment, lease-hold improvements (including the construction of the expansion area described in Article 38 hereof, if financed by Tenant) and moving expenses. Tenant shall not thereby be entitled to any portion of the award attributable to the land and buildings (except the expansion area, if financed by Tenant) constructed by Landlord, or to the value of the unexpired portion of the Tenant's lease term.

In the event that any portion of the common areas (including parking area and access thereto) designated as such on Exhibit "A", be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, so as to materially or substantially interfere with the conduct of Tenant's business in the demised premises, or so as to reduce the required parking area by an amount in excess of_____ten_____ per cent ( _-10-_  %) or reduce the number of cars which may be conveniently parked to less than_____300_____, the Tenant may, at its option, terminate this lease and shall be liable for rent only up to the time of such taking.

exercisable within ninety (90) days
after such taking,

Tenant hereby expressly acknowledges that Landlord has informed Tenant that the State of Georgia has plans to condemn a portion of the shopping center bordering Roswell Road, for purposes of expanding and improving Roswell Road, and that said condemned portion of the shopping center may be as wide as thirty-five (35) feet along the entire southern boundary of the shopping center. Notwithstanding anything to the contrary in this lease, Tenant hereby expressly agrees that if said condemnation occurs and Landlord redesigns and re-engineers the shopping center in a manner reasonably satisfactory to Tenant, and in such a fashion as to provide adequate parking in the shopping center and automotive ingress/egress into the center from Roswell Road, said condemnation of up to thirty-five (35) feet shall not constitute a default under this lease.

**DEFAULT** 21. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from the Landlord ▓▓▓▓▓▓▓▓▓▓▓ to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default. The remedies provided above are non-exclusive and are in addition to all other remedies available to Landlord at law are in equity.

**BANKRUPTCY** 22. The Tenant further covenants and agrees that if, at any time, Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease agreement at an end and shall forthwith be entitled to immediate possession of the said premises.

11

**CONSTRUCTION RISKS**  23. It is understood and agreed that nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing said improvements, and that the Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the Tenant's store building for the causes herein stated. The Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their sub-contractors, employees, agents or servants by reason of Landlord's constructing said improvements pursuant to the terms of this lease. Landlord shall indemnify Tenant and save Tenant harmless from and against: all mechanics', materialmen's, sub-contractors' and similar liens; all claims and suits for damage to persons or property from defects in material or from the use of unskilled labor; or from any negligence caused by Landlord, Landlord's contractors, sub-contractors or by any of their employees, agents or servants during the progress of the work in constructing said improvements or from any faulty construction thereof.

**NOTICES**  24. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at _____

1343 Terrell Mill Road, Suite 100

Marietta, Georgia 30067

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to Tenant at _____ P. O. Box 4809

Atlanta, Georgia 30302

or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail.

**END OF TENANCY**  25. The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct. It is understood, however, that Tenant shall not be required to restore the demised premises to their original state. Any holding over by Tenant of the demised premises after the expiration of the term of this lease, or any extensions thereof, shall operate and be construed as a tenancy from month to month only at the same rentals reserved herein and upon the same terms and conditions as contained in this lease.

**_MENT_ _)_ _SING_**  26.  Subject to the provisions of Article 2 hereof, the Tenant may without the consent of the Landlord assign this Lease, or sublease or sublease or vacate the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this Lease.  In the event Tenant shall voluntarily vacate the entire demised premises or cease selling merchandise therein for a period in excess of six (6) months while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant), Landlord shall have the continuing option thereafter (unless Tenant shall have reoccupied the premises) to terminate and cancel this Lease upon fifteen (15) da

written notice to Tenant of its election so to do, unless within such fifteen (15) day period Tenant shall advise Landlord that Tenant had prior to receipt of such notice in good faith committed to assign this Lease or sublease the demised premises to a third party for occupancy within two (2) months.

**EXTENSIONS**  27. It is further agreed that Tenant, at its option, shall be entitled to the privilege of_____ ___four___( 4 ) successive extensions of this lease, each extension to be for a period of___five_____( 5 ) years and at the same rentals and upon the same terms and conditions as required herein for the initial term.

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least___six (6) months_____ before the expiration of the initial term, and if extended, at least_____six (6) months_____ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document ; provided, however, the Tenant shall not at the time of any such optio exercise be in default under the terms of this lease.

primarily

**EXCLUSIVE**  28. Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a
**SUPERMARKET**  supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant; except the sale of such items in not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared, ready-to-eat food items, either for consumption on or off the premises, shall not be deemed a violation hereof. With the exception of bars and package stores, only Tenant herein may sell beer and wine in the shopping center for off-premises consumption.

an ice cream shop or

It is specifically agreed that Tenant herein shall have the exclusive right to operate a bakery and/or delicatessen or equivalent department or concession in the shopping center, including any enlargement thereof.

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name and address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provisions herein to the contrary, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of the terms of this exclusive provision as to property located within 1000 feet of any exterior boundary of the shopping center, but nothing herein shall deprive Tenant of any rights of recourse against Landlord, its successors and assigns, by way of suit for damages or injunctive relief, or as otherwise provided by law, in the event of any such violation. If the holder of such first mortgage should succeed to ownership of the demised premises by virtue of

foreclosure or transfer of title thereto in lieu of such foreclosure or otherwise, in such event the terms of this exclusive provision shall apply to the holder of such first mortgage as owner-landlord only with respect to the land which was formerly encumbered by the lien of said first mortgage. For the purposes hereof, the term "first mortgage" shall include any first security instrument.

**SUBORDINATE**   29. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument (in a form acceptable to Tenant) as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the purchaser at such foreclosure sale shall be bound to Tenant for the term of this lease, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

**NOTICE TO LENDER**   30. Tenant agrees that it will give notice to any holder of a first mortgage (which term shall include all security instruments) encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate this lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate this lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period, provided, however, the Tenant shall not be required to deliver such notice to the mortgage holder or to extend to it an opportunity to perform in respect of emergency repairs which Tenant is permitted to make under the provisions of Article 12 of this lease. Tenant also agrees to give notice to such holder of a first mortgage encumbering the demised premises of the exercise by Tenant of its right herein provided to deduct from rental payments any amounts expended by Tenant for repairs, taxes or other expenses which are properly the Landlord's under the provisions of this Lease.

**COMMON AREA MAINTENANCE**   31. Landlord agrees to operate and maintain in good condition and repair all the common areas, as herein defined, and provide therefor all such services as are reasonably required, including, but without limitation, safe-guarding, cleaning and sweeping, lighting, snow and ice removal if necessary, general repair and maintenance of all paved surfaces, repainting of parking area striping, and watering and maintenance of landscaped areas. If the Landlord, after fifteen (15) days following receipt of written notice from Tenant to do so, shall fail to make the repairs or perform the services described in this Article, the Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred therein. For Landlord's services with respect to repair and maintenance of the common areas, Tenant shall pay to Landlord as additional rental hereunder and as reimbursement for the annual cost thereof Tenant's pro-rata share of such expenses. Tenant's pro-rata share shall be the ratio which the square footage of the ground floor of Tenant's store building bears to the total square footage of the ground floor of all store buildings from time to time existing in the shopping center. Tenant shall be entitled to receive from the Landlord a detailed, itemized billing of such common area maintenance expenses on a monthly basis.

BENEFIT  32. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

, but not applicable to assignments as collateral for a mortgage loan

TRANSFER
BY
LANDLORD

33.  The Landlord shall have the privilege of assigning this Lease provided that at the time of such assignment, the assignee thereof shall execute and deliver to the Tenant an assumption agreement in recordable form in and by which the assignee shall assume all the responsibilities and obligations of the Landlord hereunder.  This provision shall apply to all reassignments of this Lease by this Landlord and all subsequent landlords.  Upon compliance with the above the Landlord executing the assignment of lease shall be released from all liab herein subsequent to the date of said assignment and the date of such assumpti agreement by the assignee.  It is understood, however, that Landlord shall be sponsible to Tenant for any violations of Landlord's obligations under this Le which shall have accrued prior to the sale or transfer of Landlord's interest provided that Tenant notified Landlord of any such violation within ten (10) d after notice from Landlord of such sale or transfer of Landlord's interest and notwithstanding the foregoing, Landlord shall be responsible to Tenant for lat defects in the building for a period of one (1) year from the commencement dat of the term of this Lease.

SHORT
FORM
LEASE

34. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

MARGINAL
TITLES

35. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

COMPLETE
AGREEMENT

36. This written lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

TAXES

37.  During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of Landlord's ad valorem real estate taxes levied against the demised premises.  Tenant shall be responsible for its pro-rata share of such taxes for fractional years occurring at the beginning and expiration of the term of this lease, and any extensions thereof.  However, any additional rental payable hereunder by Tenant may be credited on a non-cumulative basis against any and all percentage rentals, if

any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be pro-rated on the basis of the annual credit. Tenant shall be responsible only for its pro-rata share of such taxes for fractional years occurring in the beginning and expiration of the term of this Lease and any extensions thereof.

If such taxes shall not be assessed separately, but shall be included within an assessment of the demised premises and others, said assessment shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio which the square footage of the ground floor of Tenant's store building bears to the total square footage of the ground floor of all store buildings (including additional floor levels) from time to time existing in the shopping center. The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements, discounts or refunds thereon. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant and an "as built" survey of the shopping center, and such additional rental shall be payable by Tenant on demand after payment by Landlord. All taxes, other than ad valorem real estate taxes, including special assessments, improvement liens, and the like, shall remain the sole responsibility of the Landlord. However, Tenant shall remain responsible for sales taxes on rentals levied by law on lessees.

Tenant shall have the right from time to time upon notice to Landlord and any mortgagee to contest or protest or review by legal proceedings or in such other manner as may be provided, any such tax assessments or other governmental impositions aforementioned, and to institut such proceedings in the name of the Landlord as the Tenant may deem necessary provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to the Landlord and provided still further, that Tenant shall take no contest or protest action which results in the institution of any foreclosure proceedings or similar action by the holder of a security deed against the demised premises, and provided still further, that Tenant shall have afforded Landlord a prior opportunity to contest such taxes or assessments and Landlord shall have failed or refused to conduct such a contest.

Notwithstanding the above, it is agreed that Tenant's obligation to make the payments herein described is expressly conditioned upon receipt from Landlord of a written statement for such ad valorem real estate tax increase contributions (as well as the other documents described herein if requested by Tenant no later than December 31 of the calendar year following the year in which the taxes were due.

OPTION FOR
EXPANSION

38.    Tenant is hereby granted the option and privilege at an time during the term of this lease, or any extensions thereof of enlarging its store building by incorporating therein the to the    easterly    side thereof, such addition not to exceed    fifty    ( 50 ) feet in width by two hundred    ( 200 ) feet in depth.  This option me be exercised only at such times as the adjoining storerooms are not leased, or at five (5) year intervals, it being contemplated that Landlord shall not lease such area to other tenants for in excess of five years, and that Tenant shall have the expansion privilege  herein described

no later than five (5) years from the commencement date hereof and at five
(5) year intervals thereafter. Landlord shall give notice to Tenant of any
such expiration date and, during the period between six (6) months and thre
(3) months prior to such expiration date, afford to Tenant the opportunity
exercise this option, and upon Tenant giving to Landlord a notice in writin
of its exercise thereof, Landlord agrees to construct such addition, or
prepare such enlargement area for occupancy by Tenant, in accordance with
plans and specifications to be approved by the parties hereto, with the
construction to be completed with all due diligence following the vacation
of the necessary area by any other tenant, and the enlarged portion of the
building to be of a like quality of construction as the original building
Tenant. In order to facilitate the expansion of Tenant's demised store buil
as herein contemplated, Landlord agrees that any adjacent building or buil
within the expansion area shall be of like structural quality and in
architectural harmony with Tenant's store building, shall front on a line 1
is the interior sidewalk line of Tenant's demised store building extended
and shall have a finish floor level▓▓▓▓▓▓▓▓▓▓▓▓▓▓which shall I
at the same elevation as the finish floor level▓▓▓▓▓▓▓▓▓▓▓▓
of Tenant's demised store building. Further, Landlord agrees that the wal
of Tenant's demised store building adjoining the expansion area shall be
constructed with steel column supports therein equivalently spaced to the
nearest row of steel column supports within the open area of Tenant's demi
store building and such wall supports shall be of sufficient load bearing
capacity to carry the roof support system across the full span of the orig
and of the expanded building width. Upon completion of such building addi
or tender of such additional space to Tenant, if there shall not at such d
remain at least ten (10) years of the then term of this lease, such term s
be extended for such period of time as shall be necessary to provide a ful
ten (10) years from such date. Thereafter, during such extended term, the
annual minimum guaranteed rental (and the base for computation of percenta
rental hereunder) shall be increased by the greater of: an amount equal
to      twelve percent (12%)        of the cost of such addition, or an   amou
equal to the annual rent being generated by tenants in the above-described
expansion area at the time Tenant exercises the expansion option set forth in
this paragraph, or an amount equal to a computed percentage times the cost of
such addition, such percentage consisting of four percent (4%) plus the cur-
rent prime interest rate charged by New York City banks at the time of the
exercise of the option. At Tenant's request, construction cost shall be es-
tablished by bids obtained by Landlord from at least three (3) reputable con-
tractors acceptable to Tenant, with the final cost of the addition upon com-
pletion to be certified to by the general contractor performing the work.
During such extended term the provisions of this lease shall remain in effect
and the option periods herein provided, if any shall remain, shall be con-
strued to follow upon the end of the extended term and the rentals to remain
as adjusted in consequence of the addition. Upon completion of the addition,
it shall be and become a portion of the demised premises and this lease there
be taken and construed as so amended.


Nothing herein contained shall constitute any express or implied obligati
on the part of the holder of a first mortgage encumbering the fee simple
to the demised premises or of any purchaser at a sale under foreclosure o
such mortgage, to comply with the terms and provisions of this Article, it
being the understanding of the parties that the obligation to cause such
expansion is the sole obligation of the Landlord, its heirs, legal repres-
tatives, successors and assigns.

In the event Landlord shall for any reason fail or refuse to construct the
building addition contemplated hereunder after Tenant has properly exercised j
option herein, Tenant, at its option, shall have the right at its own expense
to construct the building addition of the size and quality set forth above.

If Tenant constructs the enlargement, Tenant agrees to cause any mechanics'
liens incurred by and in connection with such expansion to be promptly discharg
and agrees to indemnify and hold harmless the Landlord from any expense occasio
thereby.  Upon completion of such building addition and occupancy thereof by
Tenant, if there shall not at such date remain at least ten (10) years of the
then term of this Lease, the lease term shall be extended for such period of
time as shall be necessary to provide a full ten (10) years from such date.
Thereafter, during such extended term and any exercised option extension perio
thereafter, there shall be no additional minimum guaranteed rental payable by
Tenant in respect of such addition.  Tenant's sole and exclusive remedy in the
event Landlord fails or refuses to construct the building addition contemplated
hereunder shall be to construct such addition, at Tenant's own expense, as pro-
vided herein; and Landlord's failure or refusal to construct such addition shall
not constitute a default under this Lease or give Tenant any right to withhold
rent hereunder or to seek damages against Landlord.



39. Notwithstanding anything to the contrary provided in this lease, if Landlord or any successor in interest of Landlord shall be an in- dividual, joint venture, tenancy in common, firm or partnership, general or limited, it is specifically understood and agreed that there shall be absolutely no personal liability on the part of such indi- vidual or on the part of the members of such firm, partnership or joint venture with respect to any of the terms, covenants and condi- tions of this lease, and that Tenant shall look solely to the equity of Landlord or such successor in interest in the shopping center for the satisfaction of each and every remedy of Tenant in the event of any breach of Landlord of any terms, covenants and conditions of this lease to be performed by Landlord, such exculpation of personal liability to be absolute and without any exception whatsoever.

If Landlord shall default in the performance or observance of any agreement or condition in this lease contained on its part to be per- formed or observed, and if Landlord shall not cure such default within thirty (30) days after notice from Tenant specifying the default (or shall not within said period commence to cure such default and there- after prosecute the curing of such default to completion with due diligence), Tenant may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of Landlord, and any amount paid or any contractual liability incurred by Tenant in so doing shall be deemed paid or incurred for the account of Landlord and the Landlord agrees to reimburse Tenant therefor or save Tenant harmless therefrom; provided that Tenant may cure any such default as aforesaid prior to the expiration of said waiting period, but after said notice to Landlord, if the curing of such default prior the expiration of said waiting period is reasonably necessary to protect the real estate or Tenant's interest therein or to prevent injury or damage to persons or property. If Landlord shall fail to reimburse Tenant upon demand for any amount paid for the account of Landlord hereunder, said amount may be deducted by Tenant from the next or any succeeding payments of rent due hereunder.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this agree- ment the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____

_____          _____ (SEAL)
Notary Public, _____ Cobb              BARRY F. O'NEILL, a resident of
County, _____ GA . My                  the State of Georgia
commission expires:
Notary Public, Georgia, State at Large            LANDLORD
My Commission Expires Feb. 1, 1987
     (Notarial Seal)
As to Landlord


_____          WINN-DIXIE ATLANTA, INC.

_____          By _____
Notary Public, _____ Dekalb             Its _____ Vice President
County, _____ Fla . My
commission expires:                       Attest _____
NOTARY PUBLIC, STATE OF FLORIDA           Its _____ Secretary
My Commission Expires Jan. 20, 1988
     (Notarial Seal)                          (CORPORATE SEAL)
As to Tenant
                                              TENANT

-19-

GUARANTY

In consideration of the sum of Ten Dollars ($10.00) paid by _____

COLUMBIA PROPERTIES, INCORPORATED, a Georgia corporation, _____

_____

hereinafter called "Landlord", to WINN-DIXIE STORES, INC., a Florida corporation with

its principal office at 5050 Edgewood Court, Jacksonville, Florida 32205, hereinafter

called "Guarantor", the receipt and sufficiency whereof are hereby acknowledged, Guarant

does hereby guarantee unto Landlord, its heirs, legal representatives, successors and

assigns, the due performance and observance by WINN-DIXIE ATLANTA, INC., a Florida

corporation duly qualified to transact business in the State of Georgia, _____

_____

hereinafter called "Tenant", of all the terms, covenants and conditions on the part of

Tenant to be performed and observed including, without limitation, payment of rentals

under the attached and foregoing lease agreement dated _June 11, 1984_ ,

covering certain premises located in a shopping center development known as "Olde Mill

Shopping Center", situated at the northwesterly corner of the intersection of Old

Canton Road and Roswell Road in the County of Cobb and State of Georgia _____

_____ .

    IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed in its

corporate name and its corporate seal to be hereunto affixed and attested by its officer

thereunto duly authorized this  14th  day of _____June_____ , 19  84  .


Signed, sealed and delivered
in the presence of:
    (

_____C. Milford_____

Delsa W. Wise
Notary Public, ___Duval____
County, ___Fla.___ .  My
commission expires:
    NOTARY PUBLIC, STATE OF FLORIDA
    My Commission Expires Jan. 20, 1988
    (NOTARIAL SEAL)
As to Guarantor

WINN-DIXIE STORES, INC.,

By _____
    Its    Senior Vice    President

Attest _____
    Its                 Secretary

(CORPORATE SEAL)

GUARANTOR

EXHIBIT "B"

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land
Lots 910 and 963 of the 16th District, 2nd Section of Cobb
County, Georgia, which tract is being more particularly
described as follows:

TO FIND THE POINT OF BEGINNING commence at a point located at
the intersection of the northwesterly right-of-way line of
Roswell Road (132' right-of-way, 66' from centerline) and the
westerly right-of-way line of Old Canton Road
(80' right-of-way, 40' from centerline); running thence along
the northwesterly right-of-way line of Roswell Road South
89° 39' 36" West a distance of 24.41 feet to a point located on
said northwesterly right-of-way line; thence continuing along
said northwesterly right-of-way and along the arc of a curve to
the left (said curve having a radius of 1,498.40 feet and being
subtended by a chord bearing South 86° 17' 42" West and having
a chord distance of 175.89 feet) an arc distance of 175.99 feet
to an iron pin located on said northwesterly right-of-way line,
said pin being the POINT OF BEGINNING; from said POINT OF
BEGINNING as thus established, thence continuing along said
northwesterly right-of-way line and along an arc of a curve to
the left (said curve having a radius of 1,498.40 feet and being
subtended by a chord bearing South 75° 38' 04" West and having
a chord distance of 380.31 feet) an arc distance of 381.34 feet
to a point located on said northwesterly right-of-way line;
thence leaving the northwesterly right-of-way line of Roswell
Road and running North 07° 31' 35" West a distance of
146.05 feet to an iron pin; thence South 89° 43' 41" West a
distance of 153.70 feet to an iron pin; thence South 00° 21'
57" East a distance of 225.00 feet to an iron pin located on
the northwesterly right-of-way line of Roswell Road; thence
continuing along said northwesterly right-of-way line and along
the arc of a curve to the left (said curve having a radius of
1,498.40 feet and being subtended by a chord bearing South 58°
52' 17" West and having a chord distance of 116.38 feet) an arc
distance of 116.40 feet to a point located on said
northwesterly right-of-way line where said northwesterly
right-of-way line intersects with the westerly land lot line of
Land Lot 963 of said District and Section; thence running along
said westerly land lot line North 00° 21' 56" West a distance
of 147.89 feet to an iron pin located at the common
intersection of land lot lines 910, 911, 962 and 963 of said
District and Section; thence running along the westerly land
lot line of Land Lot 910 of said District and Section North
00° 21' 57" West a distance of 655.10 feet to an iron pin
located on said westerly land lot line; thence continuing along
said westerly land lot line North 01° 13' 08" East a distance
of 157.14 feet to an iron pin located on said westerly land lot
line; thence leaving the westerly land lot line of Land Lot 910
of said District and Section and running South 88° 18' 07" East
a distance of 747.23 feet to a point located on the westerly
right-of-way line of Old Canton Road; thence along said
westerly right-of-way line and along the arc of a curve to the
right (said curve having a radius of 1,259.40 feet and being
subtended by a chord bearing South 10° 41' 25" East and having
a chord distance of 122.98 feet) an arc distance of 123.03 feet
to a point located on said westerly right-of-way line; thence
continuing along said westerly right-of-way line and along the
arc of a curve to the right (said curve having a radius of
2,125.40 feet and being subtended by a chord bearing South
08° 52' 37" East and having a chord distance of 194.66 feet) an
arc distance of 194.73 feet to a point located on said westerly
right-of-way line; thence continuing along said westerly
right-of-way line South 06° 15' 08" East a distance of
179.76 feet to an iron pin located on said westerly
right-of-way line; thence leaving the westerly right-of-way

line of Old Canton Road and running South 83° 44' 52" West a
distance of 200.00 feet to an iron pin; thence South
06° 15' 08" East a distance of 190.00 feet to an iron pin
located on the northwesterly right-of-way line of Roswell Road,
said pin also being the POINT OF BEGINNING, as per Survey dated
April 18, 1984 and being last revised May 22, 1985, prepared
for Decatur Federal Savings & Loan Association and Barry F.
O'Neill, prepared by J. S. Ross & Associates and bearing the
certification of Jack R. Busby, Georgia Registered Land
Surveyor No. 1875.

13380