Hearing Date: May 19, 2005, 1:00 p.m.
Objection Deadline: May 12, 2005, 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                              )   Case No. 05-03817-3F1
                                                    )
WINN-DIXIE STORES, INC., et al.,                    )   *Chapter 11*
                                                    )
Debtors.[1]                                         )   Jointly Administered
                                                    )

### DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. §§ 105, 363 AND 364 (I) AUTHORIZING AND APPROVING POST-PETITION PREMIUM FINANCE AGREEMENT BETWEEN DEBTORS AND AFCO PREMIUM CREDIT LLC AND (II) GRANTING RELATED RELIEF

Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move for entry of an order under 11 U.S.C. §§ 105, 363 and 364 authorizing and approving the Debtors' entry into a post-petition commercial premium finance agreement (the "Premium Finance Agreement") with AFCO Premium Credit LLC ("AFCO"). In support of this Motion, the Debtors respectfully represent as follows:

### Background

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 the United States Code, 11 U.S.C. §§ 101-1330

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner. On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3. The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors currently operate more than 900 stores in the United States with nearly 79,000 employees. Substantially all of the Debtors' store locations are leased rather than owned.

4. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested are sections 105, 363 and 364 of the Bankruptcy Code.

**Relief Requested**

6. By this Motion, the Debtors request that the Court authorize and approve the Debtors' entry into the Premium Finance Agreement with AFCO, a copy of which is attached as Exhibit A. As set forth in the Premium Finance Agreement, the Debtors seek to finance approximately $9,722,145.00 in insurance premiums for property insurance obtained from a number of insurers for a one-year period beginning April 30, 2005 (and additional costs including amounts related to a brokerage service placement fee and other customary account servicing fees). In accordance with the Premium Finance Agreement, the Debtors will be required to make a down payment in the amount of $3,402,751.00. Thereafter, the Debtors will be required to make eight (8) monthly payments of approximately $802,246.93.

7. As set forth in the Premium Finance Agreement, with approval from this Court, AFCO will be protected by a security interest in (a) all unearned premiums and dividends (the "Unearned Premiums") that may become payable under those policies set forth in the "Schedule of Policies" annexed to the Premium Finance Agreement (the "Policies") and (b) loss payments that reduce the Unearned Premiums.

8. As a condition to entering into the Premium Finance Agreement, AFCO requires the Debtors to obtain an order of this Court specifically providing many of the following terms:

(a) Pursuant to 11 U.S.C. § 364(c)(2), the Debtors are authorized to enter into the Premium Finance Agreement with AFCO.

(b) AFCO is granted a first and only priority security interest in (i) any and all unearned premiums and dividends which may become payable under the Policies for whatever reason; and (ii) loss payments which reduce the unearned premiums, subject to any mortgage or loss payee interests and subject and subordinate to the senior rights of the Debtors' postpetition secured lender.

(c) The Debtors are authorized to pay AFCO all sums due pursuant to the Premium Finance Agreement with respect to the Policies.

  (d)  The full rights of AFCO pursuant to the Premium Finance Agreement and controlling state law are fully preserved and protected, and will remain unimpaired by the pendency of the bankruptcy case or any subsequent conversion of this proceeding to chapter 7 or any subsequent appointment of a trustee. Except as set forth in the Order, the Debtors' rights are not waived, prejudiced, or forfeited in any manner, and are hereby reserved for the benefit of the estates.

  (e)  In the event that the Debtors default upon any of the terms of the Premium Finance Agreement, then, upon no less than ten days' written notice to the Debtors and its counsel, counsel for the Creditors' Committee, and to counsel for the Debtors' postpetition secured lender, the automatic stay shall be modified without further application to (or order by) the Court unless the Debtors cure the default within such ten-day period, and AFCO may exercise such rights as it may otherwise have under state law, but for the pendency of the Debtors' bankruptcy cases, and, without the necessity of further application to this Court, cancel all Policies listed on the Premium Finance Agreement or any amendment thereto, and receive and apply all unearned insurance premiums to the account of the Debtors. In the event that, after such application of unearned premiums, any sums still remain due to AFCO pursuant to the Premium Finance Agreement, such deficiency shall be deemed an administrative expense of the Debtors' estates. In the event that, after such application of unearned premiums, there are any funds in excess of the sum then due that are obtained by AFCO, AFCO shall pay to the Debtors such excess amount.

9.  In addition to entering an order containing the foregoing terms, the Debtors request that the Court authorize them, without further order, to enter into additional premium finance agreements having substantially similar terms to the Premium Finance Agreement, as necessary during the remaining pendency of these cases. The Debtors recognize that the type and duration of coverage as well as the premium payable and repayment terms of any such additional agreements may vary. Specifically, the Debtors note that in addition to the policies underlying the Premium Finance Agreement, they are currently parties to several insurance premium financing commitments (the "Existing Financing Commitments") with AFCO that cover the following other insurance policies:

4

a. <u>Liability and Workers Compensation Insurance policies</u> – July 1, 2004 to July 1, 2005 policy; eleven installments of $651,918.19 each due on the first of each month through June 1, 2005;

b. <u>Aviation Insurance</u> – November 1, 2004 through November 1, 2005 policy; five installments of $26,981.96 each due on the 30th of each month through March 30, 2005;[2]

c. <u>Employment Practices Liability Insurance</u> – September 29, 2004 through November 1, 2005 policy; eleven installments of $131,585.50 each due on the 29th of each month through August 29, 2005; and

d. <u>Directors & Officers Liability Insurance</u> – November 1, 2004 through November 1, 2005 policy; eleven monthly installments of $582,834.91 each due the first of each month through October 1, 2004.

10.     Because each of the Existing Financing Commitments governing the aforementioned polices will be expiring at various times during the pendency of the Debtors' bankruptcy cases, the Debtors request that the Court provide them with the authority to enter into additional premium finance agreements, for the "renewals" of these policies and the Existing Financing Commitments. The Debtors' request is subject to the condition that (a) the Debtors provide notice thereof to the U.S. Trustee, counsel for the Creditors Committee and counsel for the Debtors' post-petition secured lenders, and (b) such notice parties indicate their approval of the new agreements by not objecting thereto within five (5) business days of receipt of the

---

[2] The Debtors have already sold one of the two airplanes that were covered under this policy. The Debtors are in the process of negotiating the sale of the second plane. To the extent that these efforts are successful, the Debtors' maintenance of aviation insurance will no longer be necessary and, thus, the Debtors would not seek to finance any renewed aviation policy through AFCO.

notice. In the event of any objection from the notice parties, the Debtors will proceed with the new agreements only if approved by subsequent order of this Court.

## Basis for Relief

11. The Debtors' entry into the Premium Finance Agreement is an ordinary course of business transaction that they may undertake under section 363(c) of the Bankruptcy Code but for the limitations contained in section 364(c)(2) of the Bankruptcy Code. Section 364(c)(2) governs secured post-petition financings. It provides that a debtor unable to obtain post-petition financing on an unsecured basis may obtain financing secured by a lien on property not otherwise secured in favor of any party. The security interests to be granted to AFCO in Unearned Premiums under any financed insurance policy require Court approval of the Premium Finance Agreement as a secured financing under 364(c)(2). Section 364(c)(2) is satisfied in these cases because the Debtors are not able to obtain unsecured credit to finance the insurance premiums. The Debtors have determined that the terms offered under the Premium Finance Agreement are well suited to facilitate the Debtors' cash flow management practices.

12. To the extent that the Debtors' entry into the Premium Finance Agreement is considered to be a transaction outside the ordinary course and requiring prior approval on that basis, the Debtors assert that the necessary approval may be granted under section 363(b) of the Bankruptcy Code. Section 363(b) permits a debtor to use property of the estate "other than in the ordinary course of business," after notice and a hearing. Approval under section 363(b) is appropriate where the debtor demonstrates a sound business justification for seeking such relief. In these cases, the Debtors have determined that entry into the Premium Finance Agreement is not only a valid, but also a necessary exercise of their business judgment. The Debtors require the Policies to protect their estates from the risks covered by the Policies and to remain in

compliance with their post-petition financing facility and with the United States Trustee's Operating Guidelines. The Debtors' decision to finance the premiums rather than pay them in full at the commencement of the policy period is consistent with the Debtors' cash flow management practices. Moreover, the financing terms offered under the Premium Finance Agreement are more favorable to the Debtors' estates than would be a draw under the Debtors' post-petition financing facility.

13. In view of the importance of maintaining insurance coverage with respect to business activities and preserving the Debtors' cash flow by financing the premiums due on the policies, it would be in the best interest of the Debtors' estates and creditors to enter into the Premium Finance Agreement both with respect to the Policies and any additional new policies required during the remaining pendency of these cases (including, most notably, the "renewals" of the Existing Financing Commitments). As set forth above, AFCO will only finance premiums on the terms set forth in the Premium Finance Agreement, including the security interest in Unearned Premiums, and with the protections described. Lastly, the Debtors have concluded that they would be unable to obtain unsecured credit in connection with the financing of the Policies.

### Notice

14. Notice of this Motion has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) AFCO. The Debtors submit that no other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request (a) that the Court enter an order pursuant to sections 105, 363 and 364(c)(2) of the Bankruptcy Code, (i) authorizing and approving the Debtors' entry into the Premium Finance Agreement with AFCO with respect to premiums and associated fees for the Policies, and (ii) consistent with the procedures outlined in this Motion, authorizing the Debtors upon notice but without further order to enter into substantially similar post-petition premium finance agreements with respect to other new policies as necessary during the remainder of these cases, and (b) that the Court grant such other and further relief as the Court deems just and proper.

Dated: April 29, 2005
      New York, New York

                    SMITH HULSEY & BUSEY

                    By: /s/ *Cynthia C. Jackson*
                        Stephen D. Busey
                        Cynthia C. Jackson
                  Florida Bar Number 498882
                  225 Water Street, Suite 1800
                  Jacksonville, Florida  32202
                  (904) 359-7700
                  (904) 359-7708 (facsimile)

                        - and –

                  SKADDEN, ARPS, SLATE,
                  MEAGHER & FLOM LLP
                  D. J. Baker
                  Sally McDonald Henry
                  Rosalie Walker Gray
                  Four Times Square
                  New York, New York 10036
                  (212) 735-3000
                  (212) 735-2000 (facsimile)

                  Attorneys for Debtors

## Exhibit A

585621-New York Server 1A - MSW

# Premium Finance Agreement
## AFCO PREMIUM CREDIT LLC
A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.
2951 FLOWERS ROAD SOUTH, SUITE #132, ATLANTA, GA 30341
TEL. NOS. (770) 455-4850 (800) 288-5410

(CHECK APPROPRIATE BOX)
☐ PERSONAL
☒ COMMERCIAL

| | | AGENT (NAME & PLACE OF BUSINESS) | PRODUCER CODE NO. 63-10-01006-0 | INSURED (NAME & RESIDENCE OR BUSINESS ADDRESS) |
|---|---|---|---|---|
| A | TOTAL PREMIUMS $ 9,722,145.00 | MARSH USA INC Attn: AMY BLAKELY 3475 PIEDMONT ROAD STE 1200 ATLANTA, GA ZIP CODE 30305 (404) 760-0112 | | WINN-DIXIE STORES, INC. Attn: DALE BITTER 5050 EDGEWOOD COURT PO BOX B JACKSONVILLE, FL ZIP CODE 32203 (904) 783-5303 |
| B | DOWN PAYMENT $ 3,402,751.00 | | | |

### PAYMENT SCHEDULE

| | AMOUNT FINANCED (A Minus B) | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | |
|---|---|---|---|---|---|
| | | | | FIRST INSTALLMENT DUE | INSTALLMENT DUE DATES |
| C | $ 6,319,394.00 | 8(Monthly) | 802,246.93 | 05/30/2005 | 30th |

### SCHEDULE OF POLICIES

| | FINANCE CHARGE | POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY/ ANNUAL INSTALLMENT | NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL OR POLICY ISSUING AGENT | TYPE OF COVER | MONTHS COVERED BY PREMIUM | PREMIUM $ |
|---|---|---|---|---|---|---|---|
| D | $ 98,581.44 | | | | | | |
| E | DOCUMENTARY STAMP TAX $ | | 04/30/2005 | SEE ATTACHED ADDENDA A&B  The terms of this Agreement are continued on Addenda A & B, annexed hereto and made a part hereof. Insured's Initials X- | MISC | 12 | 9,722,145.00 |
| F | TOTAL OF PAYMENTS (C + D + E) $ 6,417,975.44 | | | | | | |
| G | ANNUAL PERCENTAGE RATE 4.43% | | LBM | | | | |
| | | | | TOTAL PREMIUMS must agree with Block "A" Above → TOTAL $ | | | 9,722,145.00 |

## SECURITY AGREEMENT

**1. DEFINITIONS:** The above named insured ("the Insured") is the debtor. AFCO Premium Credit LLC ("AFCO"), a joint venture of AFCO Credit Corporation and Marsh USA Inc., is the lender to whom the debt is owed. Singular words shall mean plural and vice versa as may be required in order to give the Agreement meaning. "Insurance company or company", "insurance policy or policy" and "premium" refer to those items listed under "Schedule of Policies".

**NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT

Date 4-29-05

X SR VP AND C.F.O.
SIGNATURE OF INSURED(S)
OR DULY AUTHORIZED AGENT OF INSURED(S)

### PRODUCER'S REPRESENTATIONS

The undersigned warrants and agrees:
(1) the Insured has received a copy of this Agreement, and the Required Federal Truth-in-Lending Disclosures for Personal Lines Insurance, if applicable, (2) the policies are in full force and effect and the information in the schedule of policies and the premiums are correct, (3) the insured has authorized this transaction and recognizes the security interest assigned herein, (4) to hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly, indirectly, actually or constructively by any of the insurance companies and to pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured and that any lien the undersigned now has or hereafter may acquire on any return premium arising out of the above listed insurance policies is subordinated to AFCO's lien or security interest therein, (5) there are no exceptions to the policies financed other than those indicated and the policies comply with AFCO's eligibility requirements, (6) no Audit or Reporting Form Policies, policies subject to Retrospective Rating or to minimum earned premiums are included except as indicated and that the Deposit or Provisional Premiums are not less than anticipated premiums to be earned for the full term of the policies, if policy is subject to minimum earned premium, it is $ _____, (7) the policies can be cancelled by the insured or the company on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (8) the undersigned represents that a proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the named insured or if the named insured is the subject of such a proceeding, it is noted on the Premium Finance Agreement in the space in which the insured's name and address is placed.

**Indicate Policy & Prefix Number of Exceptions**

Date _____

X _____
SIGNATURE OF AGENT OR BROKER

FLJV (10/00-win) c. 2000 Afco Premium Credit LLC   7N7VQAPFQ7ULRQLibor041805051805010100   05232005FLdxdbhbxxexebcbxxe   Page 1 of 2

## REMAINING PROVISIONS OF SECURITY AGREEMENT

Page 2 of 2

2. **ASSIGNMENT OF AGREEMENT:** This agreement will be assigned and transferred to and serviced by AFCO Credit Corporation.
3. **PROMISE OF REPAYMENT:** The insured requests AFCO to pay the premiums on the policies shown above. The insured promises to pay to AFCC at its office the amount stated in Block F above, according to the Payment Schedule shown above subject to the rest of the terms of this contract.
4. **SECURITY INTEREST:** The insured assigns to AFCO as security for the total amount payable in this Agreement any and all unearned premiums and dividends which may become payable under the insurance policies and loss payments which reduce the unearned premiums, subject to any mortgagee or loss payee interest. The insured gives to AFCO a security interest in all items mentioned in this paragraph.
5. **DEFAULT CHARGES:** If the insured is more than 5 days late in making an installment payment to AFCO, then the insured will pay to AFCO, in addition to the delinquent installment, a default charge of 5% of the unpaid balance of the delinquent installment or $10, whichever is greater. If the loan is primarily for personal, family or household purposes, the default charge shall not exceed $10.
6. **FINANCE CHARGE:** The finance charge shown in Box D begins to accrue as of the earliest policy effective date.
7. **THIS AGREEMENT BECOMES A CONTRACT:** This Agreement becomes a binding contract when AFCO mails a written acceptance to the insured.
8. **WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees.
9. **REPRESENTATION OF SOLVENCY:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding.
10. **CANCELLATION:** AFCO may cancel the insurance policies financed herein and the unpaid balance due to AFCO shall be immediately payable by the insured if, upon 10 days written notice to the insured, the insured does not pay any installment according to the terms of this Agreement. AFCO, at its option, may enforce payment of this debt without recourse to the security given to AFCO.
11. **POWER OF ATTORNEY:** The insured appoints AFCO its Attorney-In-Fact with full authority to cancel the insurance policies financed herein for nonpayment of premium.
12. **MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's Notice of Cancellation of the insurance policies has been mailed may be credited to the insured's account without affecting the acceleration of this Agreement and without any liability or obligation on AFCO's part to request the reinstatement of the cancelled insurance polices. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to the insured or the insured's agent for the benefit of the insured. No refund of less than $1.00 shall be made. If there is a balance due after AFCO receives the unearned premiums, dividends or loss payments from the insurance company then the insured will pay the balance to AFCO with interest at the rate shown in this contract.
13. **REFUNDS:** The insured will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to the Rule of 78s subject to a $20 nonrefundable charge. If the refund is less than $1, no refund shall be made.
14. **INSURANCE AGENT OR BROKER:** AFCO makes no warrantees or representations concerning the financed insurance coverage nor has it played any part in the selection, structuring or acquisition of such coverage. This Agreement represents the entire understanding of the parties. AFCO has not authorized any party whatsoever to make any representations, commitments or promises or to play any role with respect to this premium finance transaction other than completing this contract on behalf of the insured.
15. **SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or subject to retrospective rating, then the insured promises to pay the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.
16. **CANCELLATION CHARGES:** If AFCO cancels the insurance policies, then the insured will pay AFCO a cancellation charge equal to the difference between $10 and the default charge.
17. **ATTORNEY FEES:** If, for collection, this Agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay the attorney fees but no more than 20% of the amount due and payable under this Agreement.
18. **SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured agrees not to assign the policy without AFCO's written consent except for the interest of mortgagees and loss payees.
19. **MISSING INFORMATION:** If the policy has not been issued at the time of signing this Agreement, then the insured agrees the name of the insurance company, and the policy numbers of the insurance policies may be left blank and may be subsequently inserted in this Agreement. AFCO will notify the insured of this information on its written Notice of Acceptance.
20. **ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. AFCO's payment shall not be applied by the insurance company to pay for any additional premiums owed by the insured as a result of any type of misclassification of the risk. The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign to the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.
21. **AGENT'S WARRANTIES:** To convince AFCO to enter this Agreement and accept the security underlying this Agreement, the person executing this Agreement, if not the insured, warrants severally and as the duly authorized agent of the insured: that he is the duly authorized agent of the insured appointed specifically to enter into this transaction on the insured's behalf; that he can perform any act the insured could or should perform with respect to this transaction; that he will hold in trust for AFCO any payments made or credited to the insured through the undersigned or to the undersigned, directly, indirectly, actually or constructively, by any of the insurance companies and that he will pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured.
22. **LAW GOVERNING THIS AGREEMENT:** The insured agrees that this Agreement shall be governed by the laws of the State of Florida.
23. **DISHONORED CHECK:** If an insured's check is returned because of insufficient funds to pay it, AFCO may impose a charge of $10.
24. **ENDORSEMENTS:** The insured agrees that AFCO may endorse his or her name on any check or draft for all monies that may become due from the insuring company and apply the same as payment of this Agreement returning any excess to his or her agent, provided that if such excess is in an amount less than $1 no refund shall be made.

FLJV (10/00-win) c. 2000 Afco Premium Credit LLC

INSURED'S INITIALS

ADDENDUM A             WINN DIXIE STORES INC

The policies set forth below were placed by Marsh USA Inc. on behalf of the insured. Marsh USA Inc. makes the Broker Representations set forth on the facing page of the Premium Finance Agreement to which this Attachment A is attached, as the same may have been modified or amended by agreement between Marsh USA Inc. and AFCO Credit Corporation, only with respect to the policies listed below.

SCHEDULE OF POLICIES

| EFF. DATE | INSURANCE CO. | POLICY NUMBER | COVERAGE | TERM | PREMIUM |
|---|---|---|---|---|---|
| 4/30/05 | Lexington Ins Co | | Prop | 12 | 1,515,687 |
| | | | Tax | | 24,225 |
| 4/30/05 | Lexington Ins Co UK/Marsh Atlanta | | Prop | 12 | 1,476,813 |
| | | | Tax | | 24,225 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 783,750 |
| | | | Tax | | 13,324 |
| 4/30/05 | SR Intl Business Ins Co Ltd/Marsh Atlanta | | Prop | 12 | 789,000 |
| | | | Tax | | 12,113 |
| 4/30/05 | Zurich American Ins Co | | Prop | 12 | 523,278 |
| 4/30/05 | SR Intl Business Ins Co Ltd/Marsh Atlanta | | Prop | 12 | 189,830 |
| | | | Tax | | 2,848 |
| 4/30/05 | American Empire Surplus Lines Ins Co | | Prop | 12 | 100,500 |
| | | | Tax | | 1,709 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 351,750 |
| | | | Tax | | 5,980 |
| 4/30/05 | Commonwealth Ins Co | | Prop | 12 | 165,825 |
| | | | Tax | | 2,563 |
| 4/30/05 | Arch Ins Co | | Prop | 12 | 175,875 |
| 4/30/05 | Zurich American Ins Co | | Prop | 12 | 200,000 |
| 4/30/05 | Arch Ins Co | | Prop | 12 | 131,250 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 335,000 |
| | | | Tax | | 5,695 |
| 4/30/05 | American Empire Surplus Lines Ins Co | | Prop | 12 | 243,000 |
| | | | Tax | | 4,131 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 112,500 |
| | | | Tax | | 1,913 |
| 4/30/05 | Arch Ins Co | | Prop | 12 | 94,500 |
| 4/30/05 | Hannover Re/Marsh Atlanta | | Prop | 12 | 45,000 |
| | | | Tax | | 765 |
| 4/30/05 | Service Placement Fee | | Fee | 12 | 210,000 |

| Date | Carrier | | Coverage | Months | Amount |
|---|---|---|---|---|---:|
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 274,500 |
| | | | Tax | | 4,667 |
| 4/30/05 | Zurich American Ins Co | | Prop | 12 | 22,500 |
| 4/30/05 | Arch Ins Co | | Prop | 12 | 15,750 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 60,000 |
| | | | Tax | | 1,021 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 18,750 |
| | | | Tax | | 319 |
| 4/30/05 | Commonwealth Ins Co | | Prop | 12 | 24,750 |
| | | | Tax | | 383 |
| 4/30/05 | Travelers Indemnity Co of Illinois | | B&M | 12 | 182,342 |
| 4/30/05 | Zurich American Ins Co | | Prop | 12 | 272,247 |
| 4/30/05 | Illinois Union Ins Co | | Terrorism | 12 | 87,099 |
| | | | Tax | | 1,481 |
| 4/30/05 | TBD | | Prop | 12 | 95,000 |
| | | | Tax | | 1,615 |
| 4/30/05 | TBD | | Prop | 12 | 100,000 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 22,500 |
| | **TOTAL** | | | | **$8,727,973** |

MARSH USA INC.
SIGNATURE: _____
TITLE: SR VP AND C.F.O.
DATE: 4-29-05

ADDENDUM B          WINN DIXIE STORES INC

The policies set forth below were placed by Marsh Global Markets (Bermuda) Ltd. on behalf of the insured. By its signature below, Marsh Global Markets (Bermuda) Ltd. makes the Agent or Broker Representations set forth on the facing page of the Commercial Premium Finance Agreement to which this Attachment B is attached, as the same may have been modified or amended by agreement between Marsh USA Inc. and AFCO Credit Corporation, only with respect to the policies listed below.

## SCHEDULE OF POLICIES

| EFF DATE | INSURANCE CO. | POLICY NUMBER | COVERAGE | TERM | PREMIUM |
|---|---|---|---|---|---|
| 4/30/05 | Max Re (Bermuda) | | Prop | 12 | 49,500 |
| 4/30/05 | Everest Reinsurance (Bermuda) Ltd | | Prop | 12 | 342,713 |
| 4/30/05 | Everest Reinsurance (Bermuda) Ltd | | Prop | 12 | 120,851 |
| 4/30/05 | Everest Reinsurance (Bermuda) Ltd | | Prop | 12 | 72,150 |
| 4/30/05 | Endurance Specialty Ins Ltd | | Prop | 12 | 71,115 |
| 4/30/05 | Endurance Specialty Ins Ltd | | Prop | 12 | 12,154 |
| 4/30/05 | Max Re (Bermuda) | | Prop | 12 | 110,000 |
| 4/30/05 | Endurance Specialty Ins Ltd | | Prop | 12 | 135,718 |
| 4/30/05 | Endurance Specialty Ins Ltd | | Prop | 12 | 79,971 |
| | TOTAL | | | | $994,172 |

**MARSH GLOBAL MARKETS BERMUDA LTD**

SIGNATURE: _____

TITLE: SR VP AND C.F.O.

DATE: 4-29-05