UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,   Case No.: 03:05-bk-03817-JAF

      Debtors.   Chapter 11

_____/   Jointly Administered

**MOTION BY RICHARD EHSTER AND OTHER NON-QUALIFIED
PLAN PARTICIPANTS FOR ORDER DIRECTING APPOINTMENT
OF ADDITIONAL COMMITTEE OF CREDITORS**

Richard Ehster, Bradley T. Keller, Judith W. Dixon, Lawrence H. May, Jr., Larry A. Beck and Ernest G. Hurst (the "Plan Participants"), pursuant to Bankruptcy Code §§ 1102(a)(2) and 1114(d), request the order of this Court directing the appointment of an additional committee of creditors to represent the interests of participants in the following Winn Dixie retirement plans (the "Non-Qualified Plans"): (i) Management Security Plan (the "MSP"); and (ii) Supplemental Retirement Plan (the "SRP"). In support of this motion the Plan Participants state as follows:

A.     Backgroud.

    1.     Chapter 11 Case. On February 21, 2005 (the "Petition Date"), the Debtor filed the above referenced Chapter 11 Bankruptcy Case in the United States Bankruptcy Court, Southern District of New York. On April 14, 2005, the Chapter 11 Case was transferred to this court.

    2.     Business of the Debtor. The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest

food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors currently operate more than 900 stores in the United States. Substantially all of the Debtors' store locations are leased rather than owned. They have approximately 79,000 employees, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis. The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins. The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

3. <u>The Plans</u>. In the ordinary course of their business, the Debtors maintain non-qualified plans for the benefit of retired employees, including the SRP and the MSP. The MSP provides death and retirement benefits to certain executives and members of management. The MSP is contributory, but is not funded. The Debtors provide similar benefits to non-management employees through the SRP, which is fully funded through a Rabbi Trust. Prior to the Petition Date, the Debtors paid approximately $500,000 per month to their employees and their beneficiaries in connection with the Non-Qualified Plans. The participants in the Non-Qualified Plans are not covered by a collection bargaining agreement.

According to the Debtor, there are approximately 1,000 participants in the Non-Qualified Plans with aggregate claims in the approximate amount of $100 million. See Debtor's schedule excerpt attached hereto as Exhibit A.

4. <u>Committee of Unsecured Creditors</u>. On or about March 1, 2005, the office of the United States Trustee appointed the following members to a committee of unsecured creditors:

    a. Capital Research and Management Company;

    b. Deutsche Bank Trust Company Americas;

    c. Kraft Foods Global, Inc.;

    d. New Plan Excel Realty Trust, Inc.;

    e. OCM Opportunities Fund V, L.P.;

    f. Pepsico & Subsidiaries; and

    g. R2 Investments, LDC.

5. <u>Request for Additional Committee</u>. Counsel for the Plan Participants have requested the U.S. Trustee to appoint an additional committee to represent the interests of participants in the Non-Qualified Plans. An additional committee has not been appointed.

B.   <u>Argument and Authority</u>.

1. <u>Appointment of Committee Under § 1102(a)(2)</u>

Bankruptcy Code § 1102(a)(2) provides in relevant part:

> On request of a party in interest, the court may order the appointment of additional committees of creditors...if necessary to assure adequate representation of creditors.... The United States Trustee shall appoint any such committee.

In <u>In re Lykes Bros. Steamship Co., Inc.</u>, 200 B.R. 933 (M.D. Fla. 1996), the court explained that "any party in interest who does not feel adequately represented by the committee appointed by the U.S. Trustee can request that the bankruptcy court order the

appointment of additional committees." Id. at 939.[1]

    a.    Standard of Review and Burden of Proof.

In In re Enron Corp., 279 B.R. 671 (Bankr. S.D. N.Y. 2002), the court considered the standard of review for the decision of the U.S. Trustee not to appoint an additional committee. The court noted that the initial determination whether to appoint an additional committee is often a determination made by the U.S. Trustee, but the criteria to be used by the U.S. Trustee is not set forth in the Bankruptcy Code. The bankruptcy court; however, is instructed to appoint an additional committee to assure "adequate representation." Therefore, the court concluded that:

> This court must necessarily conduct an independent review of whether there is adequate representation by an existing committee by the mandate of 11 U.S.C. § 1102(a)(2). It stands to reason that the determination of adequate representation is thus a legal determination and the U.S. Trustee's decision is subject to de novo review. Citations omitted.

Id. at 684.

The burden is on the moving party to show that the existing committee does not provide adequate representation. In re Dow Corning Corp., 194 B.R. 121, 144 (Bankr. E.D. Mich. 1996); In re Enron, Supra at 685.

---

[1] In addition, the court held that the bankruptcy court may review the trustee's administrative task of appointing committee members to assure that the trustee does not act arbitrarily and capriciously in preforming the administrative tasks mandated by the Code. See also In re Mission Health, Inc., 242 B.R. 527 (Bankr. M.D. Fla. 1999)("...the court's position is that upon an evidentiary showing of arbitrary and capricious action by the United States Trustee the court will direct the trustee to appoint a new committee or to reformulate the committee of unsecured creditors to reflect the purposes of section 1102(b) of the Bankruptcy Code. There may also be cases where the characteristics of unsecured creditors committee are grossly disproportionate from the guidelines set forth in section 1102(b) and similar relief is appropriate").

b. <u>Adequate Representation</u>.

Courts have applied a number of factors in analyzing the adequacy of representation, including:

1. The ability of the committee to function;

2. The nature of the case; and

3. The standing and desires of the various constituencies.

<u>In re McLean Industries, Inc.</u>, 70 B.R. 852, 857 (Bankr. S.D. N.Y. 1987).

In <u>In re Enron</u>, <u>Supra</u>, at 685, the court suggested the following additional considerations:

1. The ability for creditors to participate in the case even without an official committee and the potential to recover expenses pursuant to section 503(b);

2. Whether different classes may be treated differently under a plan and need representation;

3. The motivation of movants;

4. The cost incurred by the appointment of additional committees; and

5. The tasks that a committee or a separate committee is to perform.

The appointment of an additional committee may create added complexity and expense to a Chapter 11 case; however, these factors alone should not be a reason for not forming additional committees if otherwise appropriate. See <u>In re Hills Stores Co.</u>, 137 B.R. 4 (Bankr. S.D. N.Y 1992); <u>In re McLean</u>, <u>Supra</u> at 860).

There are approximately 1,000 participants in the Non-Qualified Plans with aggregate claims in the approximate amount of $100 million.  In the bankruptcy schedules of the Debtor, notwithstanding the magnitude of the claims, the participants in the Non-Qualified Plans were not separately listed.  As a result, the Plan Participants did not receive notice of the bankruptcy case and did not have an opportunity to participate as parties in interest in this case.  In particular, the Plan Participants had no opportunity to participate in any of the "1st day motions" in this case, or the selection of the committee of unsecured creditors.

As retirees and current employees of the Debtor, the Plan Participants have interests far removed and potentially in conflict with the claims of general unsecured creditors.  A simple, but glaring example is the support by the creditors' committee to retain venue of this case in New York when the employees and retirees are located almost exclusively in the South Eastern portion of the country with the largest representation in the State of Florida.

2.      <u>Appointment of Additional Committee Under Bankruptcy Code § 1114.</u>

Bankruptcy Code § 1114 provides in relevant part:

(b)(1) For purposes of this section, the term "authorized representative" means the authorized representative designated pursuant to subsection ...(d) in the case of persons receiving retiree benefits... .

(2) Committees of retired employees appointed by the court pursuant to this section shall have the same rights, powers, and duties as committees appointed under sections 1102 and 1103 of this title for the purpose of carrying out the purposes of sections 1114 and 1129(a)(13) and, as permitted by the court, shall have the power to enforce the rights of persons under this title as they relate to retiree benefits.

> (d) The court, upon a motion by any party in interest, and after notice and a hearing, shall appoint a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate, to serve as the authorized representative, under this section, of those persons receiving any retiree benefits not covered by a collective bargaining agreement.

a. <u>Overview</u>.

Bankruptcy Code § 1114 was added to the Bankruptcy Code by the Retiree Benefits Protection Act of 1988, to protect "retiree benefits" in a Chapter 11 case. Among other things, § 1114 prohibits a trustee, including a debtor in possession, from terminating or modifying retiree benefits unless the court orders modification, or the trustee and the authorized representative of the retirees agree to the modification.

b. <u>Protection of " Retiree Benefits"</u>

For purposes of Bankruptcy Code § 1114, the term "retiree benefits" means:

> Payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

The phrase "any plan, fund, or program" is not defined in § 1114. The courts have used the definition of "employee welfare benefit plan" found in the employee retirement income security act to construe § 1114. See <u>In re New York Trap Rock,</u> 126 B.R. 19 (Bankr. S.D. N.Y. 1991); <u>In re Certified Air Technologies, Inc.</u>, 300 B.R. 355 (Bankr. C.D. Cal. 2003).

In <u>In re New York Trap Rock Corporation</u>, <u>Supra</u>, the Chapter 11 debtor requested authority to terminate an executive medical plan ("EMP") providing medical benefits for then members of the corporate executive office and their qualifying dependents. The EMP had been created by the debtors for the purpose of providing special post-retirement or post-termination benefits to executive officers. The plan provided for the full payment of 100% of each participant's medical expenses. The debtor objected to characterizing the plan as a "plan, fund or program" under Bankruptcy Code § 1114 because: (i) the EMP was unfunded and it was paid out of the debtor's general funds, without the supervision of an appointed administrator; and (ii) participants were key retired officers and therefore, not "retired employees" within the meaning of § 1114. The court determined that the EMP was a "plan" for purposes of Bankruptcy Code § 1114 and there was nothing in § 1114 to authorize a distinction between executive employees under a plan and the number of employees covered by the plan. Therefore, the debtor was not permitted to terminate or modify the plan except pursuant to the provisions of Bankruptcy Code § 1114.

The Non-Qualified Plans provide death and retirement benefits to retired employees of the Debtor. Therefore, the Non-Qualified Plans are a "plan, fund or program" and the payments thereunder are retiree benefits for purposes of section 1114.

    c.    <u>Modification of Rights.</u>

Section 1114(f) provides that:

(1)    Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits, the trustee shall–

(A)    make a proposal to the authorized representative of the retirees. . . ; and

    (B)    provide. . . the representative of the retirees with such relevant information as is necessary to evaluate the proposal.

In the order of the court dated February 22, 2005, the Debtor was authorized, on an interim basis, to pay retiree benefits. Subsequently, in the monthly operating reports of the Debtor, the Debtor has taken the position that the claims of retirees are subject to "compromise".

Section 1114(d) provides that the court "shall appoint a committee of retired employees if the debtor seeks to modify or not pay retiree benefits <u>or</u> if the court otherwise determines that it is appropriate, to serve as the authorized representative. . . " In this case, it is appropriate to appoint a committee of Plan Participants because: (i) the debtor has indicated that the claims of retirees are subject to "compromise"; (ii) a committee is needed to represent the significant and largely unrepresented interests of Plan Participants; and (iii) the participants in the Non-Qualified Plans are not covered by a collective bargaining agreement.

Therefore, the Plan Participants request the order of this Court directing the U.S. Trustee to appoint a committee of participants in the Non-Qualified Plans.

                                                                    /s/ David R. McFarlin
                                                                    David R. McFarlin
                                                                    Florida Bar no.: 328855
                                                                    Kenneth D. Herron, Jr.
                                                                    Florida Bar No.: 699403
                                                                    1851 W. Colonial Drive
                                                                    Orlando, FL 32804
                                                                    Telephone: (407) 648-0058
                                                                    Facsimile: (407) 648-0681

                                                                  Attorneys for selected Plan Participants

<u>CERTIFICATE OF SERVICE</u>

I CERTIFY that a true and correct copy of the foregoing was provided on May 3, 2005, by U.S. mail, first class, or electronic transmission to Winn-Dixie Stores, Inc., 5050 Edgewood Court, Jacksonville, FL 32254-3699; Adam Ravin, Esq., Skadden, Arps, Slate, et al, Four Times Square, New York, NY, 10036; Cynthia C. Jackson, Esq., Smith, Hulsey, & Busey, 225 Water Street, Suite 1800, Jacksonville, FL 32201; U.S. Trustee, 135 W. Central Blvd., #620, Orlando, FL 32801; Milbank, Tweed, Hadley, & McCoy, LLP, 1 Chase Manhattan Plaza, New York, NY 10005; Akerman Senterfit, 50 N. Laura St., Suite 2500, Jacksonville, FL 32202-3646; and the parties listed on the attached Local Rule 1007-2 Parties in Interest List.

/s/ David R. McFarlin
David R. McFarlin