# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,

        Debtors.[1]

Case No.: 3:05-bk-03817-JAF

Chapter 11

Jointly Administered

---

**AFFIDAVIT OF JOHN B. MACDONALD IN SUPPORT OF APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, UNDER 11 U.S.C. §1103 AND FED. R. BANKR. P. 2014 AND 5002, AUTHORIZING RETENTION AND EMPLOYMENT OF AKERMAN SENTERFITT AS CO-COUNSEL**

STATE OF FLORIDA    )
                              )ss:
COUNTY OF DUVAL   )

       JOHN B. MACDONALD, being duly sworn, says:

       1.    I am a shareholder of the firm of Akerman Senterfitt ("Akerman") in its Insolvency and Creditors' Rights Practice Group. I am duly authorized to make this Affidavit on behalf of Akerman.

       2.    I submit this Affidavit pursuant to 11 U.S.C. §1103(b), and Rules 2014 and 5002, Federal Rules of Bankruptcy Procedure, in support of the Application of the Official Committee of Unsecured Creditors (the "Committee") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors in possession (collectively, "Winn-Dixie" or the "Debtors"), for an Order, under 11

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in the jointly administered cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn Dixie Supermarkets, Inc.

{JA233479;5}

U.S.C. §1103, and Rules 2014 and 5002, Federal Rules of Bankruptcy Procedure, authorizing the employment and retention of Akerman as local counsel and co-counsel to the Committee (the "Application").

3. Unless otherwise stated in this Affidavit, I have personal knowledge of the facts set forth herein, or such information is provided to and relied upon by me as derived from the business records of Akerman.[2] Unless otherwise defined herein, capitalized terms and phrases shall have the meanings ascribed to such terms in the Application.

## BACKGROUND

4. On February 21, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. On March 1, 2005, the United States Trustee appointed the Committee and designated the following seven members to serve: (i) Capital Research & Management Company; (ii) Deutsche Bank Trust Company Americas; (iii) Kraft Foods Global, Inc., (iv) New Plan Excel Realty Trust, Inc.; (v) OCM Opportunities Fund V, L.P.; (vi) Pepsico & Subsidiaries; and (vii) R2 Investments, LDC. By Order of the New York Bankruptcy Court dated April 12, 2005, the Committee was authorized to retain and employ as its counsel the law firm Milbank, Tweed, Hadley & McCloy, LLP ("Milbank").

6. On April 14, 2005, the Debtors' cases were transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. §1412 and Rule 1014(a)(1), Federal Rules of Bankruptcy Procedure.

---

[2] Certain of the disclosures set forth herein relate to matters within the knowledge of other attorneys of Akerman and are based on information provided to me by them, or are derived from information maintained within the business records of Akerman to which I have access as a shareholder of Akerman.

7. Pursuant to this Court's Amended Order Upon Transfer of Venue dated April 19, 2005, Orders entered by the New York Bankruptcy Court within the Debtors' Chapter 11 Cases remain in full force and effect before this Court unless otherwise ordered by this Court consistent with the powers inherent in any bankruptcy court. The Order requires out-of-state attorneys to comply with Local Bankruptcy Rule 2090-1, which requires, *inter alia*, a member of the bar of the Middle District of Florida resident in Florida to be responsible for the progress of the case. I agree to act as Milbank's designee pursuant to Local Bankruptcy Rule 2090-1.

### Qualifications of Akerman

8. Akerman is one of the largest law firms in the State of Florida and has an extensive statewide general practice, placing substantial emphasis on corporate, banking, financial and insolvency matters. Akerman has considerable experience in reorganization cases before this Court and others, and is well-qualified to act as local counsel and co-counsel for the Committee. Akerman has significant experience in representing creditors' committees in large Chapter 11 cases and financial restructurings.

### Services to be Rendered

9. The Committee has requested that Akerman act as its co-counsel with Milbank and as its local counsel, and that Akerman render the following services, among others, to the extent specifically directed by the Committee:

    (a) advise the Committee with respect to its rights, powers and duties in these cases;

    (b) assist and advise the Committee in its consultations with the Debtors regarding the administration of these cases;

    (c) assist the Committee in analyzing the claims of the Debtors' creditors and in negotiating with such creditors;

(d)   assist with the Committee's investigation of the acts, conduct, assets, liabilities and financial condition of the Debtors and of the operation of their business;

(e)   assist the Committee in its analysis of, and negotiations with, the Debtors or any third party concerning matters related to, among other things, the terms of a re-organization plan or plans for the Debtors;

(f)   assist and advise the Committee with respect to its communications with the general creditor body regarding significant matters in these cases;

(g)   represent the Committee at all hearings and other proceedings;

(h)   review and analyze all applications, orders, statements of operations and schedules filed with the Court and advise the Committee as to their propriety;

(i)   assist the Committee in preparing pleadings and applications as may be necessary in furtherance of the Committee's interests and objectives; and

(j)   perform such other legal services as may be required and are deemed to be in the interests of the Committee in accordance with the Committee's powers and duties as set forth in the Bankruptcy Code.

10.   Akerman and Milbank will institute appropriate procedures to ensure no duplication of services.

11.   Subject to this Court's approval of the Application, Akerman is willing to serve as the Committee's co-counsel and to perform the services described above.

### Akerman's Connections with Parties in Interest

12.   Except as otherwise set forth herein, the partners, counsel and associates of Akerman (i) do not have any connection with the Debtors, the Debtors' creditors, or any other party in interest, their respective attorneys and accountants, the Office of the United States

Trustee for the Middle District of Florida, or any person employed in the Office of the United States Trustee for the Middle District of Florida, and (ii) pursuant to 11 U.S.C. §1103(b), do not represent any other entity having an adverse interest in connection with these cases.

13. In connection with its proposed retention by the Committee in these cases, Akerman searched its client database to determine whether it has or has had any relationships with the following entities:

(a) the Debtors and their non-debtor affiliates;

(b) the 50 largest unsecured trade creditors of the Debtors on a consolidated basis;

(c) current and former officers and directors of the Debtors;

(d) the Debtors' publicly disclosed equity holders;

(e) senior secured lenders and mortgage holders of the Debtors;

(f) the known holders of the 8.875% Senior Notes due 2008 issued by Winn-Dixie Stores, Inc. (the "Senior Notes"), the funds, administrators and indenture trustee related thereto;

(g) the Debtors' insurers; and

(h) other actual or potential parties in interest in these cases.[3]

14. To the extent that such searches indicated that Akerman has a relationship with any such entity, the identities of such entities, and Akerman's relationships therewith, are set forth in Exhibit "A" attached hereto and incorporated herein.

15. Akerman has been engaged by Winn-Dixie as an Ordinary Course Professional within the Chapter 11 Cases for the performance of legal work in connection with certain labor

---

[3] To determine the parties to search and to conduct these searches, Akerman has relied upon and utilized the list of names attached as Attachment I to the retention applications of each of the Debtors' co-counsel ("Attachment I").

{JA233479;5}                                5

and employment matters and regulatory matters unrelated to the Chapter 11 Cases. Winn-Dixie and Akerman have agreed that, upon approval of this Application, Akerman shall withdraw from all representation of Winn-Dixie in existing matters, with the exception of certain regulatory and administrative work being performed solely by Akerman's office in Tallahassee, Florida. Akerman has agreed thereupon to implement and maintain a "Screening Wall" between those of Akerman's professionals in its Tallahassee office performing regulatory and administrative legal work for Winn-Dixie and those Akerman professionals performing services for the Committee in connection with these Chapter 11 Cases, on all matters for which such professionals are performing services for Winn-Dixie or the Committee, respectively. Subject to that undertaking Winn-Dixie has agreed to permit Akerman to represent the Committee, while at the same time performing regulatory and administrative legal work for Winn-Dixie unrelated to these Chapter 11 Cases solely through Akerman's Tallahassee office, and Winn-Dixie has otherwise agreed to waive any and all conflicts of interest arising by reason of Akerman's representation of the Committee, notwithstanding Akerman's prior representation of Winn-Dixie in unrelated legal matters and notwithstanding Akerman's continuing provision of legal services for Winn-Dixie through its Tallahassee office. The Committee has similarly agreed to waive any conflicts of interest arising by reason of such representation.

16. Akerman currently represents Wachovia Bank, N.A., the administrative and collateral agent under the Debtors' Pre-Petition Credit Agreement, as well as the agent under the Debtors' DIP Credit Agreement, on matters unrelated to these Chapter 11 Cases. Akerman has obtained a waiver from Wachovia to allow it to represent the Committee in these Chapter 11 Cases, subject to limitations which would require the Committee to seek to retain different counsel to represent the Committee in connection with any litigation against Wachovia.

17. As of the Petition Date AmSouth Bank, through its AmSouth Management Group Division, was and remains a secured creditor of the Debtors under an Application and Agreement for Stand-by Letter of Credit (the "AmSouth Letter of Credit"). Although Akerman has for many years performed legal services for AmSouth Bank in many transactional and contested matters, Akerman has not represented AmSouth Bank in any manner with respect to the AmSouth Letter of Credit, nor has Akerman been engaged by AmSouth Bank in any matter related to these Chapter 11 Cases. AmSouth Bank has waived any potential or actual conflict of interest arising by reason of Akerman's representation of the Committee and Akerman's continuing representation of AmSouth Bank on matters unrelated to these Chapter 11 Cases. Additionally, the Committee has indicated that in the event any matters involving the AmSouth Letter of Credit become contested, such that Akerman would represent the Committee in asserting positions adverse to AmSouth in connection with the AmSouth Letter of Credit, the Committee will waive any conflict of interest occasioned by Akerman's representation of AmSouth on matters unrelated to the AmSouth Letter of Credit or these Chapter 11 Cases. In connection therewith Akerman has agreed to implement and maintain a "Screening Wall" between Akerman's professionals performing legal services for AmSouth Bank in connection with matters unrelated to these Chapter 11 Cases and those professionals of Akerman performing services for the Committee in connection with these Chapter 11 Cases, on any and all matters with respect to such conflicting representations.

18. In addition, Akerman has performed a conflicts search with respect to all members of the Committee. To the extent that such search has revealed that Akerman has a relationship with any such entity, the identities of such entities, and Akerman's relationships therewith, are set forth in Exhibit "A."

19. From time to time, Akerman works with certain professional firms which have been retained by the Debtors or other parties in these cases and which may be rendering advice to other parties in interest in these cases, but all of such engagements are with respect to matters unrelated to these Chapter 11 Cases.

20. The Debtors have numerous relationships and creditors. Consequently, although every reasonable effort has been made to discover and eliminate the possibility of any conflict, including the efforts outlined above, Akerman is unable to state with certainty whether any more of its clients or such clients' affiliated entities hold claims adverse to the Debtors' estates or otherwise are parties in interest in these Chapter 11 Cases. However, Akerman is not presently and shall not undertake representation of any entity adverse to the Debtor, the Debtors' estates, or the Committee, except as specifically set forth herein. If Akerman discovers any information which is contrary to or pertinent to the statements made herein, Akerman will promptly disclose such information to the Court on notice to creditors and the United States Trustee.

## Professional Compensation

21. As of the date of this Affidavit, Akerman has received no compensation for its work on behalf of the Committee.

22. Subject to the Court's approval, Akerman will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered.[4] These rates may change from time to time in accordance with Akerman's

---

[4] The hourly rates charged by Akerman professionals differ based on, among other things, such professional's level of experience. The current hourly rates charged by professionals within Akerman's office in Jacksonville, Florida, are:

| | | | |
|---|---|---|---|
| Partners | $ 210 | to | $ 350 |
| Of Counsel and Associates | $ 155 | to | $ 240 |
| Legal Assistants | $ 115 | to | $ 120 |

Additionally, the professionals within Akerman's Insolvency and Creditor's Rights Group in Akerman's other offices in Florida currently charge the following hourly rates:

| | | | |
|---|---|---|---|
| Partners | $ 235 | to | $ 420 |

established billing practices and procedures. Akerman will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of the legal services described above by category and nature of the services rendered.

23. The hourly rates set forth herein are the firm's standard hourly rates for work of the nature required by the Committee. These rates are set at a level designed to compensate Akerman fairly for the work of its attorneys and legal assistants and to cover fixed and routine overhead expenses. It is the firm's policy to charge its clients for all disbursements and expenses incurred in the rendition of services. These disbursements and expenses include, among other things, costs for telephone and facsimile charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials and hearings.

24. Akerman intends to apply to the Court from time to time for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, any guidelines promulgated by the United States Trustee for this District, and the Local Rules and Orders of this Court, and pursuant to any additional procedures which may be established by the Court in these cases.

25. Other than as set forth above, there is no proposed arrangement between the Committee and Akerman for compensation to be paid in these cases. Akerman has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Section 504(b)(i) of the Bankruptcy Code.

26. The proposed employment of Akerman is not prohibited by or improper under Rule 5002 of the Bankruptcy Rules. I am not related, and to the best of my knowledge no

| | | |
|---|---|---|
| Of Counsel and Associates | $ 170 to | $ 580 |
| Legal Assistants | $ 115 to | $ 145 |

{JA233479;5}                                  9

attorney of Akerman is related, to any United States Bankruptcy Judge for the Middle District of Florida or to the United States Trustee for such district or any employee in the office thereof.

27. Akerman is conducting further inquiries of its partners, counsel, and associates with respect to the matters contained herein. Akerman will file supplemental affidavits regarding this retention if any additional relevant information comes to its attention.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

                                                       John B. Macdonald

STATE OF FLORIDA          )
                                ) ss:
COUNTY OF DUVAL        )

The foregoing instrument was acknowledged before me this 3rd day of May, 2005, by John B. Macdonald who is [personally known to me] or who has produced _____ (type of identification) as identification.

                                         Jennifer S. Meehan
                                         NOTARY PUBLIC, STATE OF FLORIDA

JENNIFER S. MEEHAN
MY COMMISSION # DD 286031
EXPIRES: May 29, 2008
Bonded Thru Notary Public Underwriters

(Print, Type or Stamp Commissioned Name of Notary Public)