**Hearing Date: June 2, 2005, 1:00 p.m.**
**Objection Deadline: May 26, 2005, 4:00 p.m.**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

## APPLICATION FOR AUTHORITY TO RETAIN
## DJM ASSET MANAGEMENT, LLC AND
## THE FOOD PARTNERS, LLC AS SPECIAL REAL ESTATE
## CONSULTANTS TO THE DEBTORS

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession  (collectively, the "Debtors"), move for entry of an order under 11 U.S.C. § 327 approving the employment of DJM Asset Management, LLC ("DJM") and The Food Partners, LLC ("TFP") (collectively, "DJM/TFP") as real estate consultants.  The terms of this employment are more fully set forth in this application (the "Application") and in the Real Estate Consulting Agreement, a copy of which is attached as Exhibit A (the "Agreement").  In support of this Application the Debtors respectfully represent as follows:

### Background

1.  On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie

Southern District of New York (the "New York Court").  By order dated April 13, 2005, the

New York Court transferred venue of these cases to this Court.  The Debtors' cases are being

jointly administered for procedural purposes only.

2.    The Debtors are operating their businesses and managing their properties as

debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request has

been made for the appointment of a trustee or examiner.  On March 1, 2005, an official

committee of unsecured creditors (the "Creditors Committee") was appointed to serve in these

cases pursuant to Bankruptcy Code section 1103.

3.    The Debtors are grocery and drug retailers operating in the southeastern United

States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to

published reports, the Debtors are the eighth-largest food retailer in the United States and one of

the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery

store and has grown through acquisitions and internal expansion.  The Debtors currently operate

more than 900 stores in the United States with nearly 79,000 employees.  Substantially all of the

Debtors' store locations are leased rather than owned.

4.    This Court has jurisdiction over the Motion under 28 U.S.C. § 1334.  Venue of this

proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning

of 28 U.S.C. § 157(b)(2).

5.      The statutory predicate for the relief requested by this Application is Bankruptcy

Code section 327.

---

Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-

**Relief Requested**

6.      By this Application, the Debtors request entry of an order pursuant to Bankruptcy Code section 327(a) approving the employment of DJM/TFP as real estate consultants in connection with the valuation of real property assets, negotiations of rental reductions and lease modifications, negotiations of cure claims on leases assumed by the Debtors, and the potential marketing of the Debtors' real estate assets.

**Basis for Relief**

7.      In March of 2005, the Debtors selected DJM to provide the Debtors with brokering, negotiating and disposition services with respect to the Debtors' leased (the "Leases") and owned properties (the "Owned Properties") (collectively, the "Properties"). The Debtors request that the Court approve the retention of DJM on the proposed terms and conditions set forth below and detailed in the Agreement.

8.      The Debtors selected DJM because of DJM's extensive experience working with financially troubled companies' large real estate holdings, including both owned properties and leased properties. In particular, DJM's experience in the real estate industry will greatly assist the Debtors in maximizing the value of their Properties. In addition to its extensive experience in reorganization cases, DJM also has considerable experience in providing the retail industry with real estate advisory services. Such engagements include K Mart Corporation, Charming Shops, Heilig Meyers, Bugle Boy, Hit or Miss, Pergament Home Center, Frankel's Home Furnishings, Inc., Nobody Beats the Wiz, Inc., Rickel's Home Centers Inc., Elder-Beerman Stores Corp., Vitale Foodtown, Inc., Loehmann's, Weathervane Retail Corp., Hechinger's, Jumbo Sports, Levitz, Tops, Gantos, Endicott Johnson (Father & Son), Savemart, Gitano, This

---

Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

End Up, Natural Wonders, Sears (Homelife disposition), C&S Wholesale Grocers (Grand Union disposition), CVS, Harcourt General (General Cinema disposition) and Service Merchandise.

9.      TFP is an investment banking firm focused on the food industry.  TFP's specialized knowledge of the food retail and wholesale industries and, in particular, its experience and expertise in advising in the disposition and acquisition of owned and leased operating grocery stores to other grocery companies, allows TFP to enhance and complement the services provided by DJM and the Debtors' other professionals.  Specifically, in the disposition of grocery stores, TFP has represented numerous privately-held companies, as well as large public companies such as Albertsons, Inc., The Fleming Companies, The Kroger Co., and Spartan Stores, Inc.  TFP also has been involved in the disposition of stores during several supermarket bankruptcies including The Fleming Companies and Marvin's.  In addition, TFP recently advised the Debtors in the marketing and disposition of their grocery stores.  During this representation, TFP advised the Debtors in the sale of approximately 50 stores.  As a result of its experience and expertise in grocery store divestitures, TFP is in a unique position to assist the Debtors and maximize estate value.

10.     Because of TFP's special expertise in dealing with grocery store transactions and DJM's experience in real estate transactions in the Chapter 11 bankruptcy context, the entities have complimentary skill sets.  Therefore, the Debtors believe that retaining both DJM and TFP provide benefits to the estate that neither entity could provide independently.

11.     Furthermore, DJM's and TFP's experience in advising chapter 11 debtors on real estate matters enables them to work efficiently with the Debtors' other advisors on the many potential real estate issues likely to arise.  The employment of DJM and TFP is appropriate and necessary to support the Debtors' reorganization efforts and will better enable them to

4

successfully reorganize their operations and emerge from these chapter 11 cases as a profitable

enterprise.  Subject to further order of this Court, it is proposed that the Debtors retain DJM and

TFP for the following purposes:

(a)     Disposition of Properties – Negotiate for the benefit of the Debtors the sale, lease
or other disposition of Owned Properties and the termination, assignment,
sublease or other disposition of Leases;

(b)     Claims Reductions – Negotiate for the benefit of the Debtors waivers or
reductions of pre-petition cure amounts, Bankruptcy Code Section 502(b)(6)
claims, and other Lease related claims;

(c)     Rent Reductions and Other Lease Modifications – Negotiate for the benefit of the
Debtors rent reductions and other modifications related to Leases;

(d)     Auction Process and Reporting – Assist the Debtors' attorneys and executives
responsible for the documentation of proposed transactions, including assisting in
the auction process of Properties, reviewing documents and assisting in resolving
problems which may arise in the transaction process;

(e)     Additional Consulting Services – DJM and TFP will provide additional
consulting services performed at the Debtors' specific request; and

(f)     Progress Reports – DJM and TFP will provide progress reports to the Debtors
regarding their efforts with respect to paragraphs (a) through (e) listed above.

12.     Consistent with the Agreement, the Debtors propose to compensate DJM and TFP

for their services upon the closing of a transaction that disposes of any of the Properties either by

sale or assignment to a third party or surrender to their respective landlords, on a schedule based

upon the total amount of cash paid by the purchaser, lease assignee, purchaser of designation

rights and/or landlords, as the case may be (the "Gross Proceeds").[1]  Gross Proceeds will include

any amounts attributable to inventory, equipment, fixtures, prescriptions, liquor licenses and

goodwill.  The schedule of proposed fees is as follows:

---

[1]     To the extent of any inconsistency between this Motion or the Agreement, the terms of
the Agreement shall govern.

(a)    For Owned Property dispositions, 2% of Gross Proceeds. The fee increases to 3% if the transaction involves a cooperating broker;

(b)    For Lease dispositions, the greater of (i) 2% of Gross Proceeds or (ii) 2% of the dividend that would have been payable if the Lease were rejected. The fee increases to 3% if the transaction involves a cooperating broker;

(c)    For reduced or waived claims, 3% of such total amount reduced or waived.  If the reduced or waived claim is a lease rejection claim, the fee is 3% of the dividend that would have been payable to the landlord.

(d)    For rent reductions and other monetary lease modifications, 3% of the net present value (using a 6% discount rate) of the Occupancy Cost Savings (as defined in the Agreement) to the Debtors.  DJM and TFP will reduce this fee to 2.5% of such savings if it works on more than 200 Leases;

(e)    For negotiating a Debtor's unilateral right to early termination of a Lease, the reduction of a Lease term, reducing the size of the premises or terminating a Debtor's obligations pursuant to a subleased premises, an amount equal to ½ of one month of Occupancy Cost (as defined in the Agreement) for the applicable Lease;

(f)    For negotiating the payment of tenant improvement dollars to the Debtors, an amount equal to 3% of that payment.  DJM and TFP will reduce this fee to 2.5% of such payment if it works on more than 200 Leases;

(g)    For any other Lease modification, a fee of $3,000;

(h)    For additional consulting services performed at the Debtors' specific request that are not otherwise provided for in the Agreement, DJM and TFP will receive compensation at the rate of $300 per hour; and

(i)    DJM and TFP will charge no additional fees for bankruptcy auction services.

13.    DJM and TFP will split evenly the fees related to dispositions of leases. There will be no splitting of fees regarding claim waivers or rent reductions/lease modifications, all of which fees will go to DJM, unless any transaction also involved a lease disposition, in which case the fee for that transaction would be evenly split.

14.    The Debtors have the sole right to accept or reject any disposition or transaction, including any lease termination or rejection.  Unless otherwise provided for in the Agreement, the Debtors shall pay, when applicable, the transaction fee without further approval from the

6

Court within ten (10) business days after the later of the closing of any such transaction, the receipt by the Debtors of the Gross Proceeds from such transaction, and the receipt by the Debtors of an itemized statement from DJM/TFP.  DJM/TFP proposes to deliver such itemized statements to the Debtors no more than once a month.

15.    In addition, the Debtors have agreed to reimburse DJM/TFP for reasonable preapproved out-of-pocket expenses, including, but not limited to, marketing expenses incurred pursuant to the Budget (as defined in the Agreement) and travel expenses to the corporate offices or as otherwise reasonably necessary.  The Debtors will pay these expenses without further approval from the Court within ten business days of DJM/TFP's written request accompanied by appropriate documentation.  DJM/TFP will present such written request to the Debtors no more than once a month.  If DJM/TFP must prepay any reasonable marketing expenses, DJM/TFP shall present the Debtors with those requests, and, if such expenses are pursuant to the Budget and approved in writing by the Debtors, the Debtors will be responsible for those payments.  Any deviations from the Budget are subject to preapproval in writing by the Debtors, and the Debtors shall pay such preapproved marketing expenses.

16.    The Debtors believe that the fees of DJM/TFP are fair and reasonable in light of industry practice, market rates both in and out of chapter 11 proceedings, DJM/TFP's experience in reorganizations, and the scope of work as detailed in the Agreement.

17.    In addition, based on the compensation structure, the Debtors believe it is inefficient to require DJM/TFP to submit periodic fee applications.  At the conclusion of the retention, DJM/TFP will, however, present to this Court for approval a final fee application.  Thus, the Debtors respectfully request that DJM/TFP receive compensation for their services

pursuant to the proposed compensation structure outlined in the Agreement and without filing periodic fee applications.

18.     To the best of the Debtors' knowledge, based on the information provided by DJM/TFP and subject to DJM/TFP's continuing review: (a) DJM/TFP neither holds nor represents any interest adverse to the Debtors' estates; (b) DJM/TFP is a "disinterested person" within the meaning of Sections 101(14) and 327(a) of the Bankruptcy Code; and (c) DJM/TFP has had no affiliation with the Debtors, their creditors or any party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, except as specifically disclosed more fully in the Declaration of Andrew B. Graiser (the "Graiser Declaration"), and the Declaration of Matthew S. Morris (the "Morris" Declaration") attached as Exhibit B and Exhibit C respectfully.

## Notice

19.     Notice of this Application has been provided to (a) counsel to the U.S. Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) to DJM/TFP.  No other or further notice need be given.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) approving the employment of DJM/TFP, to provide real estate brokerage and advisory services to the Debtors under the terms and conditions outlined herein and fully set forth in the Agreement and (b) granting such other and further relief as is just and proper.

Dated: May 13, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | SMITH HULSEY & BUSEY |
| By    *s/ D. J. Baker*<br>    D. J. Baker<br>    Sally McDonald Henry<br>    Eric M. Davis | By    */s/ Cynthia C. Jackson*<br>    Stephen D. Busey<br>    James H. Post<br>    Cynthia C. Jackson |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(917) 777-2150 (facsimile) | Florida Bar Number 498882<br>225 Water Street, Suite 1800<br>Jacksonville, Florida  32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile) |

**Exhibit A**

**REAL ESTATE CONSULTING AGREEMENT**

DJM Asset Management, LLC and The Food Partners, LLC (collectively "DJM/TFP") and Winn Dixie Stores, Inc. and its debtor affiliates (collectively the "Debtors"), which have filed voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of New York (the "Court"),  hereby agree that DJM/TFP shall act as real estate consultant to the Debtors with respect to the analysis, sale, disposition, re-negotiation and/or termination of its right, title and interest in the owned real estate and leases as directed by the Debtors (the "Properties"). The owned properties are referred to individually as an "Owned Property" and collectively as the "Owned Properties" The leases are referred to individually as a "Lease" and collectively as the "Leases". This agreement is subject to Court approval, as evidenced by the entry of its order (the "Order") approving DJM/TFP's retention according to the terms and provisions set forth below.

Now therefore, in consideration of the terms and provisions set forth below, the parties agree as follows:

I.    **TERM**

The term of retention shall be from the date of the entry of the Order through the earlier of (i) the effective date of the Debtors' plans of reorganization or (ii) the sale of substantially all of the Debtors' assets.

A-1

## II.    DJM/TFP'S SERVICES AND  COMPENSATION

### A.    Services

During the term of retention, DJM/TFP shall provide the following services with respect to the Properties on an exclusive basis (the "Consulting Services"):

1.     Negotiate for the benefit of the Debtors the sale, lease or other disposition of Owned Properties and the termination, assignment, sublease or other disposition of Leases.

2.     Negotiate for the benefit of the Debtors waivers or reductions of pre-petition cure amounts, Bankruptcy Code Section 502(b)(6) claims, and other claims with respect to Leases.

3.     Negotiate for the benefit of the Debtors rent reductions and other modifications with respect to Leases.

4.     Assist the Debtors' attorneys and executives responsible for the documentation of proposed transactions, including assisting in the auction process of Properties, reviewing documents and assisting in resolving problems which may arise in the transaction process; and

5.     Provide progress reports to the Debtors on at least a weekly basis.

DJM/TFP shall make recommendations to the Debtors concerning the sale, lease or other transfer of Owned Properties and the disposition, assumption or rejection of Leases, but the Debtors will have no obligation to accept DJM/TFP's recommendations. DJM/TFP shall not be required to provide the Consulting Services with regard to the Excluded Parties referenced in Section II B 7 below.

**B.**     **Compensation**

1.     *Lease Dispositions:*

Subject to the provisions of Subsection II B 7 below, upon the closing of a transaction in which any Lease is assigned, subleased or otherwise transferred to a third party (including lease termination transactions with landlords and the sale of so-called "Designation Rights"), DJM/TFP shall earn a fee in an amount equal to the greater of (i) 2.00% of the Gross Proceeds of such disposition (to be increased to 3.00% if a cooperating broker is involved in the particular transaction)  and (ii) 2.00% of the dividend that would have been paid to the applicable landlord if the lease had been rejected (to be increased to 3.00% if a cooperating broker is involved in the particular transaction). "Gross Proceeds" for Lease transactions means the total amount of consideration paid or payable (including any cure amounts paid or waived and any amounts attributable to inventory, equipment, fixtures and goodwill) by the assignee, designation rights purchaser, landlord or other transferee. For subleases, "Gross Proceeds" means the net present value, using a 6% discount factor, of the expected sublease income payable by the subtenant and any amounts attributable to inventory, equipment, fixtures or goodwill.

  The fee set forth in subsection (i) above shall be payable to DJM/TFP upon the closing of any such disposition. Any additional fee applicable to subsection (ii) above shall be payable to DJM/TFP at the time a distribution is made to landlords.

2.     *Sale or Lease of Owned Properties:*

Subject to the provisions of Subsection II B 7 below, upon the closing of a transaction in which any Owned Property is sold or leased to a third party, including the sale of so-called

"Designation Rights", DJM/TFP shall earn a fee in an amount equal to 2.00% of the Gross Proceeds of such disposition (to be increased to 3.00% if a cooperating broker is involved in the particular transaction). "Gross Proceeds" for Owned Property sales means the total amount of consideration paid or payable by the purchaser, designation rights purchaser or other transferee of the Owned Property, including any amounts attributable to inventory, equipment, fixtures or goodwill.

. For leases of Owned Properties, "Gross Proceeds" means the net present value, using a 6% discount factor, of the expected lease income payable by the tenant, including any amounts attributable to inventory, equipment, fixtures or goodwill.

This fee shall be payable to DJM/TFP upon the closing of any such sale or lease.

3.      _Reduction in Bankruptcy Claims:_  (a) For any Lease assumed by a Debtor, if the amount required to be paid to the landlord to cure defaults existing at the time of assumption is reduced below the cure amount that the Debtor reasonably acknowledges is owing, DJM/TFP will receive a fee for the waiver or reduction of the cure amount in an amount equal to 3.00**%** of the total amount so reduced or waived. Such fee shall be payable within 5 business days after the earlier to occur of the date that (i) the Debtor's plan of reorganization filed with the Court shall be effective or (ii) a Court order approving the assumption of the applicable Lease is final and non-appealable.

(b)      For any Lease rejected by a Debtor, if the landlord agrees to reduce or waive the claim it could reasonably assert under Bankruptcy Code Section 502(b)(6) or otherwise, DJM/TFP will receive a fee in an amount equal to 3.00**%** of the savings of any dividend that otherwise would have been payable to the landlord in the Debtor's bankruptcy case. Such fee shall be payable

within 5 business days after the effective date of Debtor's plan of reorganization or other

conclusion of its bankruptcy case is effective.

4.      _Rent reductions and other Lease modifications:_

(a)      For renegotiating the monetary terms of any Lease DJM/TFP's fee shall be 3.00**%** of the

net present value, using a 6% discount factor, of Occupancy Cost Savings for the remainder of

the current term, any previously exercised option term of the Lease and any additional Lease

term negotiated. If the number of Leases worked on is greater than 200, such fee shall be reduced

to 2.50% of such savings.  "Occupancy Cost" means the sum of base rent, percentage rent,

CAM, taxes, insurance and other charges payable by the tenant under the Lease, as of the month

prior to the Lease modification. Percentage rent will be calculated using sales figures for the

twelve months ending January 31, 2005 and CAM, taxes, insurance and other charges will be

calculated using the last available full year charge for each item. "Occupancy Cost Savings"

means the difference between the original Occupancy Cost and the renegotiated Occupancy Cost

for the period from the effective date of a Lease amendment until the end of the Lease term,

including any previously exercised option terms and any additional Lease term negotiated. If a

Lease modification involves changing fixed rent to percentage rent, Occupancy Cost Savings

will be calculated using sales figures for the twelve months ended January 31, 2005. DJM/TFP's

fees provided for in this Section 4 (a) shall be earned on the earlier to occur of the date that (i)

any Court order approving the modified Lease terms shall be final and non-appealable or (ii) the

date the Debtor begins to receive the benefits of the renegotiation pursuant to a Lease

amendment. These fees shall be payable as follows: (i) the fee amount earned for the first year's

Occupancy Cost Savings shall be paid when the fee is earned as set forth above, (ii) the fee

amount earned for each successive year's Occupancy Cost Savings shall be paid on each

anniversary of the date such fee was earned  if the Debtor's plan of reorganization is not then

effective and (iii) any and all remaining fees for such Lease modification shall be paid on the

date Debtor's plan of reorganization is effective or the Bankruptcy case is otherwise terminated.

(b)  For negotiating the payment by a Lease landlord of tenant improvement funds to a Debtor,

DJM/TFP's fee shall be an amount equal to 3.00% of the amount of such payment.  If the

number of Leases worked on is greater than 200, such fee shall be reduced to 2.50% of such

payment. For negotiating Debtor's unilateral right to early termination (including lease term

reductions) of a Lease, a reduction in size of the premises or terminating the Debtors' obligations

pursuant to a Lease that has been subleased by a Debtor, DJM/TFP's fee shall be an amount

equal to ½ of one month's Occupancy Cost for such Lease.  For negotiating any other non-

monetary Lease modification DJM/TFP's fee shall be $3,000. DJM/TFP's fees provided for in

this Section 4(b) shall be payable on the earlier to occur of the date that (i) any Court order

approving the modified Lease terms shall be final and non-appealable or (ii) the date the Debtor

begins to receive the benefits of the renegotiation pursuant to a Lease amendment. If a Lease

modification involves both  monetary and a non-monetary modifications, DJM/TFP's fee for

such transaction shall be limited to the greater of the fee calculated pursuant to Section 4 (a) and

4 (b).

(c)     If DJM/TFP shall be paid a fee in connection with the modification and re-negotiation of

a Lease and thereafter such Lease shall be rejected pursuant to applicable bankruptcy law, then

the Debtors shall not be obligated to pay DJM/TFP any portion of the fee earned by DJM/TFP

with respect to that portion of the term of the Lease that occurs after the rejection. However

DJM/TFP shall be entitled to receive and retain a fee based on the first 12 months of Occupancy

Cost Savings.

5.      _Additional Consulting Services:_  DJM/TFP will be compensated for additional consulting services performed at Debtors' specific request and that are not otherwise provided for in this agreement at the rate of $300 per hour. DJM/TFP will keep time records of such services as may be required by the Court.

6.      _Successors and Assigns:_   DJM/TFP shall be entitled to compensation for services rendered whether from the Debtors or any successor or assignee including but not limited to, a Chapter 11 or Chapter 7 Trustee.

7.      _Excluded Party Transactions:_             The parties have agreed upon a list of parties (each an "Excluded Party" and collectively the "Excluded Parties"). Notwithstanding the provisions of Sections II B 1 and 2 above, DJM/TFP shall not earn or be entitled to a fee provided for in those Sections if any Property is sold, leased, assigned, subleased or otherwise transferred to any Excluded Party, provided however, that if either (i) the Debtor files a motion for Court approval of any sale, lease, assignment, sublease or other transfer of any Property to a non-Excluded Party or (ii) as part of a two-step auction process a non-Excluded Party is, or would reasonably be deemed, the highest qualified bidder in the first step of that process, then, upon consummation of a transaction with an Excluded Party for each such Property, DJM/TFP shall earn and be entitled to its applicable fee based on the highest bid made by such non-Excluded Party, regardless of whether an Excluded Party is the winning bidder for such Property. By way of example, if, as part of a two step auction process, a non-Excluded Party submitted the highest qualified bid of $1.6 million for a Property and at the subsequent auction raised its bid to $1.9 mil. but the winning bid was an Excluded Party's bid of $2.0 mil., then DJM/TFP would earn its fee based on the $1.9 mil. highest bid of the non-Excluded Party. Similarly, if a Debtor filed a motion to transfer a Property to a non-Excluded Party at the price of $1.5 mil.and an Excluded Party

submitted a winning overbid of $1.8 mil., with no further bidding by the non-Excluded Party,

then DJM/TFP would earn its fee based on the $1.5 mil. bid of the non-Excluded Party.

If the Debtors request, in writing, that DJM/TFP become involved with negotiations with any

Excluded Party, DJM/TFP shall do so and, as to any transaction with such Excluded Party,

DJM/TFP shall receive its normal applicable fee as set forth in Section II B 1 or 2. Further, if, at

the time the Debtors have determined to conduct a going out of business sale at any Property,

such Property is not the subject of a binding contract to sell, lease, assign, sublease or otherwise

transfer the Property, then, as to any such Property, it shall be deemed that there are no Excluded

Parties as to any transaction involving such Property and DJM/TFP shall receive its normal

applicable fee as set forth in Section II B 1 or 2.


III.    **EXPENSES AND DISBURSEMENTS**


A.     DJM/TFP shall not be responsible for any transactional costs and/or legal expenses

incurred by the Debtors in connection with its retention of DJM/TFP and its involvement with

the Properties.

B.     Debtors will reimburse DJM/TFP for its reasonably incurred marketing expenses in

connection with the sale, lease, assignment or other transfer of the Properties, provided,

however, that such marketing expenses (exclusive of lease scanning costs) shall not exceed a

budget to be pre-approved by the Debtor in the exercise of its reasonable discretion.  Debtors

will also reimburse DJM/TFP for its reasonably incurred travel to the Debtors' offices and as

otherwise necessary to carry out its duties hereunder. Expenses of DJM/TFP (including, but not

limited to, marketing costs) will be paid directly by the Debtors within 10 business days of

DJM/TFP's written request. In the event any such marketing expenses are required to be pre-paid, the Debtors will be presented with those requests.

IV.    **EXCLUSIVE**

Except as regards the Excluded Parties referred to in Section II B 7 above, DJM/TFP shall have the sole and exclusive authority to perform all services outlined herein for all Properties. All relevant inquiries regarding the Properties made to the Debtors shall be redirected to DJM/TFP.

V.    **SURVIVAL**

A.    In the event the Debtors, or their successors or assigns, enter into a transaction during the term of this agreement, the result of which would entitle DJM/TFP to a fee pursuant to this agreement, then regardless of who may be the purchaser, assignee, or successful bidder, DJM/TFP shall be entitled to its fee pursuant to the terms of this agreement upon consummation of the transaction.

B.    In the event DJM/TFP has had and has documented negotiation (which includes a written offer or term sheet) with a third party or landlord prior to the termination of this agreement and a transaction(s) covered by this agreement closes within 120 days after the expiration of this agreement, DJM/TFP shall be entitled to a fee in accordance with the terms of this agreement. DJM/TFP must provide a written list of such third parties with whom it had documented communication and negotiation within 10 business days after termination of this agreement.

## VI.    GENERAL PROVISIONS

A.      The Debtors and DJM/TFP shall deal with each other fairly and in good faith so as to allow both parties to perform its duties and earn the benefits of this agreement.  The Debtors shall promptly provide DJM/TFP all information necessary to complete its duties hereunder, including but not limited to copies of landlord contact information, leases, lease abstracts, current CAM, taxes, insurance and other charges for the Properties broken out by category, and store dimensions.

B.      The Debtors recognize and acknowledge that the services to be provided by DJM/TFP pursuant to this agreement are, in general, transactional in nature. Except as required by Section II B 5, DJM/TFP will not be billing Debtors by the hour nor maintaining time records. It is agreed that DJM/TFP, except as required by Section II B 5, is not requested or required to maintain such time records and that its compensation will be fixed on the percentages or amounts set forth above.

C.      Any correspondence or required notice shall be addressed as follows:

| If to DJM: | DJM Asset Management, LLC | Phone: | (631) 752-1100 X229 |
|---|---|---|---|
| | 445 Broad Hollow Rd, Ste 417 | Fax: | (631) 752-1231 |
| | Melville, NY  11747 | Email: | agraiser@djmasset.com |
| | | Attn: | Andrew Graiser |
| | | | Co-President |
| | | | |
| If to TFP: | The Food Partners, LLC | Phone: | (202) 589-0434 |
| | 1250 Eye Street, NW | Fax: | (202) 589-0433 |
| | Suite 850 | Email: | msmorris@thefoodpartners.com |
| | Washington, DC 20005 | Attn: | Matthew Morris |
| | | | |
| If to the Debtor: | | Phone: | |
| | | Fax: | |
| | | Email: | |
| | | Attn: | |

D.     This agreement is subject to and contingent upon the entry of the Order, acceptable to DJM/TFP and the Debtors, authorizing the Debtors' entry into this agreement, which the Debtors agree to use their best efforts to obtain. The Debtors will provide DJM/TFP with a copy of the pleadings requesting retention of DJM/TFP prior to submission to the Court and advise DJM/TFP of any objection or hearings pertaining to DJM/TFP's retention.  DJM/TFP shall provide the Debtors with any and all information and documentation necessary for its retention by the Debtors.  DJM/TFP's fees shall be payable free and clear of all liens, claims, and encumbrances, without further order or notice from the Court.

E.     The Debtors acknowledge that this letter agreement in its entirety will be attached to, and made a part of, the Debtors' application to the Court and will be incorporated by reference in the Court Order authorizing DJM/TFP's retention.

F.     This agreement shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this agreement.

G.      By executing or otherwise accepting this agreement, the Debtors and DJM/TFP acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

H.      Any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from this agreement or DJM/TFP's services hereunder, shall be subject to the exclusive jurisdiction of the Court.

I.      This agreement may be executed in original counterparts, and if executed and delivered via facsimile shall be deemed the equivalent of an original.

J.      DJM/TFP shall maintain as confidential all proprietary information.    Proprietary information excludes all leases, store and corporate financials and information necessary for DJM/TFP to provide all the above services.

K.      The Debtors and their estates shall indemnify and hold DJM/TFP and its affiliates and their respective officers, directors, employees, agents and independent contractors, harmless from and against all claims, demands, penalties, losses, liabilities or damages, including without limitation, reasonable attorney's fees and expenses, directly or indirectly asserted against, resulting from, or related to DJM/TFP's services provided hereunder, unless such claims, etc. arise as the sole result of DJM/TFP's gross negligence or willful misconduct.

L.      The Debtors acknowledge and DJM Asset Management, LLC discloses that it is a subsidiary of the Gordon Brothers Group, and an affiliate of Gordon Brothers Retail Partners, LLC.

Accepted and Agreed to:                         Accepted and Agreed to:

**DJM Asset Management, LLC**                   **Winn Dixie Stores, Inc., et al.**


_____                _____
By:  Andrew B. Graiser, Co-President            By:
        Officer

Dated: _____                           Dated: _____


**The Food Partners, LLC**


_____
By: Matthew S. Morris
      Principal

Dated: _____

**Exhibit B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

In re: WINN DIXIE                )     Chapter 11
      SUPERMARKETS, INC.     )
                            )     Case No.
                            )
              Debtor.    )

**AMENDED AND RESTATED AFFIDAVIT IN SUPPORT OF APPLICATION OF THE
DEBTOR FOR ORDER AUTHORIZING EMPLOYMENT OF DJM ASSET
MANAGEMENT, LLC, AS
<u>REAL ESTATE CONSULTANT TO THE DEBTOR</u>**

Andrew B. Graiser, being duly sworn, deposes and says:

1.      I am Co-President of DJM Asset Management, LLC ("DJM), located at 445 Broad Hollow Road, Suite 417, Melville, New York 11747.

2.      This Affidavit is submitted in support of the Application for Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention and Employment of DJM Asset Management, LLC ("DJM") as Real Estate Consultant to the Debtor (the "Application").

3.      Neither I, DJM, nor employee thereof, insofar as I have been able to ascertain, has any connection with the Debtor, its creditors, or any other parties in interest herein, except that DJM had been retained by Wachovia Bank, N.A., a post-petition lender to the Debtor, to provide valuations of certain of the Debtor's leasehold properties. Such work is now completed.

4.      From time to time, DJM may have represented or certain creditors of the Debtor and various other parties adverse to the Debtor in matters unrelated to this chapter 11 case. As described below, however, DJM has undertaken a detailed search to determine, and disclose, whether it represents or has represented any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters. To check and clear

potential conflicts of interest in these cases, DJM researched its records to determine if it had any

relationships with the following entities:

     a.    the Debtor;

     b.    the twenty largest unsecured creditors of the Debtor;

     c.    senior lenders;

     d.    other unsecured creditors currently know to it; and

DJM, insofar as I have been able to ascertain, is a "disinterested person" as that term is defined

in section 101(14) of the Bankruptcy Code in that, except for the  relationship referenced in

paragraph 3 above,  DJM and its employees:

     (a)    are not creditors, equity security holders or insiders of the Debtor;

     (b)    are not and were not investment bankers for any outstanding security of

the Debtor;

     (c)    have not been, within three (3) years before the date of the filing of the

Debtor's Chapter 11 petition, (i) investment bankers for a security of the Debtor, or (ii) an

attorney for such an investment banker in connection with the offer, sale, or issuance of a

security of the Debtor; and

     (d)    are not and were not, within two (2) years before the date of the filing of

the Debtor's Chapter 11 petition, a director, officer, or employee of the Debtor or of any

investment banker as specified in subparagraph (b) or (c) of this paragraph.

     5.    DJM and certain of its employees may have in the past represented, may

currently represent and likely in the future will represent creditors of the Debtor in connection

with matters unrelated to the Debtors and these cases.  None of those past or current

representations are material.

6. The terms of DJM's compensation for professional services rendered in connection with this chapter 11 case is subject to approval of this Court and compliance with applicable provisions of the Bankruptcy Code, and are generally on a contingency basis as set forth more fully on Exhibit A to the Retention Agreement.

7. The contingency rate set forth in the Retention Agreement is a standard fee arrangement for DJM's work of this nature. This rate is set at a level designed to fairly compensate DJM for the work of its consultants and to cover fixed and routine overhead expenses. It is DJM's policy to charge its clients for marketing expenses pursuant to the terms and conditions set forth in the Retention Agreement.

8. No promises have been received by DJM or by any employee thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. DJM has no agreement with any other entity to share with such entity any compensation received by DJM in connection with this Chapter 11 case.

WHEREFORE, affiant respectfully prays for the entry of the Order submitted with the Application and for such other and further relief as may be just and proper.

DJM Asset Management, LLC

Andrew B. Gaiser, Co-President
445 Broad Hollow Road, Suite 417
Melville, New York 11747

Sworn to before me this 22 day
of March, 2005.

Loretta LoPiccolo

Notary Public
My Commission Expires:

LORETTA LoPICCOLO
Notary Public, State of New York
No. 01LO6094405
Qualified In Suffolk County
Commission Expires June 16, 20 07

3

**Exhibit C**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

In re: WINN DIXIE
    STORES, INC. <u>et al.</u>        )       Chapter 11
                                   )
                                   )       Case No. 05-11063
                                   )
                  Debtors.      )

## AFFIDAVIT IN SUPPORT OF APPLICATION OF THE DEBTOR FOR ORDER AUTHORIZING EMPLOYMENT OF THE FOOD PARTNERS, LLC, AS <u>REAL ESTATE CONSULTANT TO THE DEBTOR</u>

Matthew S. Morris, being duly sworn, deposes and says:

1.     I am a Principal of The Food Partners, LLC ("TFP"), whose principal office is located at 1250 Eye Street, NW, Suite 850, Washington, DC 20005.

2.     This Affidavit is submitted in support of the Application for Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention and Employment of TFP as Real Estate Consultant to the Debtor (the "Application").

3.     Neither I, TFP, nor employee thereof, insofar as I have been able to ascertain, has any connection with the Debtor, its creditors, or any other parties in interest herein, except that TFP had been retained by Debtor pre-petition to assist in the sale of certain of Debtor's stores. Such work is now completed.

4.     From time to time, TFP may have represented certain creditors of the Debtor and various other parties adverse to the Debtor in matters unrelated to this Chapter 11 case. As described below, however, TFP has undertaken a detailed search to determine, and disclose, whether it represents or has represented any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters. To check and clear potential conflicts of interest in these cases, TFP researched its records to determine if it had any relationships with the following entities:

a.      the Debtor;

b.      the twenty largest unsecured creditors of the Debtor;

c.      senior lenders; and

d.      other unsecured creditors currently know to it.

TFP, insofar as I have been able to ascertain, is a "disinterested person" as that term is defined in

section 101(14) of the Bankruptcy Code in that, except for the  relationships referenced in

paragraph 3 above,  TFP and its employees:

(a)      are not creditors, equity security holders or insiders of the Debtor;

(b)      are not and were not investment bankers for any outstanding security of

the Debtor;

(c)      have not been, within three (3) years before the date of the filing of the

Debtor's Chapter 11 petition, (i) investment bankers for a security of the Debtor, or (ii) an

attorney for such an investment banker in connection with the offer, sale, or issuance of a

security of the Debtor; and

(d)      are not and were not, within two (2) years before the date of the filing of

the Debtor's Chapter 11 petition, a director, officer, or employee of the Debtor or of any

investment banker as specified in subparagraph (b) or (c) of this paragraph.

5.      TFP and certain of its employees may have in the past represented, may

currently represent and likely in the future will represent senior lenders or creditors of the Debtor

in connection with matters unrelated to the Debtors and these cases.  None of those past or

current representations are material.

6.      The terms of TFP's compensation for professional services rendered in

connection with this Chapter 11 case is subject to approval of this Court and compliance with

applicable provisions of the Bankruptcy Code, and are generally on a contingency basis as set

forth more fully on Exhibit A to the Retention Agreement.

7.     The contingency rate set forth in the Retention Agreement is a standard fee arrangement for TFP's work of this nature. This rate is set at a level designed to fairly compensate TFP for its work and to cover fixed and routine overhead expenses. It is TFP's policy to charge its clients for marketing expenses pursuant to the terms and conditions set forth in the Retention Agreement.

8.     No promises have been received by TFP or by any employee thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

9.     WHEREFORE, affiant respectfully prays for the entry of the Order submitted with the Application and for such other and further relief as may be just and proper.

The Food Partners, LLC

Matthew S. Morris, Principal
1250 Eye Street, NW, Suite 850
Washington, DC 20005

Sworn to before me this 9th day
of April, 2005.

Notary Public
My Commission Expires:

JEREMY K. FISHMAN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires May 14, 2008