UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED
JACKSONVILLE, FLORIDA
MAY 1 6 2005
CLERK, U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

In re                                         )
                                              )   Case No. 05-03817-3F1
WINN-DIXIE STORES, INC., et al,               )   Chapter 11
                                              )
Debtors.                                      )   Jointly Administered

## MEMORANDUM OF LAW IN SUPPORT OF OBJECTION OF OLD DIXIE PRODUCE & PACKAGING, INC. TO DEBTORS' REPORT REGARDING CLAIMS UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT

Old Dixie Produce & Packaging, Inc., formally known as Dixie Produce & Packaging, Inc. ("Old Dixie"), objects to the Debtors' Report Regarding Claims Under the Perishable Agricultural Commodities Act (the "Report"), which determined that only $14,162.47 of the $240,100.65 claimed by Old Dixie is an "Allowed PACA Claim," as that term is defined in this Court's Final Order Granting the Debtors Authority to Pay Pre-Petition Claims Under the Perishable Agricultural Commodities Act, dated March 22, 2005 (the "Order"). Relying on 7 C.F.R. § 46.46(e)(2), the Debtors determined that a large portion of Old Dixie's claim was not PACA eligible because the underlying invoices extended payment terms beyond the 30 days allowed under the PACA regulations. This determination is legally incorrect and is based on an apparent misapplication of the governing statute and regulations, *viz.*, 7 U.S.C. § 499e and 7 C.F.R. § 46, *et seq.*

Under the PACA statute and regulations, the parties cannot effectively extend time of payment terms beyond those set forth in the regulations without a prior written agreement to do so. There is no written agreement here, and, as a matter of law, the

invoices do not satisfy the legislative requirements concerning such an agreement. Accordingly, any invoice payment terms calling for payment beyond 30 days do not constitute a waiver of Old Dixie's preserved PACA rights.

Old Dixie preserved its PACA trust rights by quoting the prescribed statutory language of 7 U.S.C. § 499e(c)(4) in each of its invoices. Inasmuch as there is no valid ground to reject Old Dixie's claim, the portion that was rejected by the Debtors should be included in Old Dixie's Allowed PACA claim.

**FACTUAL SUMMARY**

Old Dixie is a licensee under PACA and supplied fresh produce to the Debtors as set forth in the unpaid invoices supporting Old Dixie's claim in the sum of $240,100.65 (Ex. 2 to Old Dixie's Objection). On March 30, 2005, Old Dixie submitted its PACA claim in accordance with the Order. After deducting $53,921.85 for post-petition invoices and other sums that have not been reconciled as of the date of the Report, the Debtors determined that "approximately $165,533 of Old Dixie's invoices are not PACA eligible because the invoices state 'payment due in 45 days,' which exceeds the 30 days allowed by the PACA regulations and that such credit terms extinguish the Claimant's PACA trust rights. See C.F.R. § 46.46(e)(2)." (Report, Ex. D to Ex. 1, Item 13, fn 2). Old Dixie's counsel had received a prior email to that effect from the Debtors' consultant (Ex. 3).

In a letter, dated one week prior to the Report, April 29, 2005, Old Dixie's counsel advised the Debtors' counsel and consultant that the governing statute and regulations require that any extension of payment terms beyond 30 days be set forth in a prior written agreement between the parties, and that such an agreement be filed in the

records of each party, and its terms referred to in the invoices (Ex. 4). Inasmuch as there is no such agreement in Old Dixie's records, Old Dixie's counsel demanded that the Debtors produce one, if it exists. The Debtors have not done so.

## ARGUMENT

Resolution of Old Dixie's claim and objection is a straightforward exercise in statutory construction based on the plain meaning of the PACA statute and regulations. As a general matter, a supplier of produce is entitled to protection under PACA only if it files adequate notice of its intent to preserve trust benefits. The statute sets forth two methods to give such notice, *viz.*, 7 U.S.C. § 499e(c)(3) and (c)(4), which provide, in pertinent part:

> (3) The unpaid supplier, seller or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in the regulations issued by the Secretary, [or] (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction…*When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed in invoices, accountings and other documents relating to the transaction*;
>
> (4) In addition to the method of preserving the benefits of the trust specified in paragraph (3), *a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust*. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products

derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received" [emphasis supplied].

The PACA regulations adopted by the Secretary are in accord with the statute, and set forth certain additional requirements and other matters. The regulations addressing the time for payment prescribe ten days as the time by which payment for produce must be made. 7 CFR §46.2(aa)(5), *see*, 7 CFR § 46.46(e)(1). Section 46.46(e)(1) reiterates the statutory language of 7 U.S.C. § 499e(c)(3), and provides that "parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction." This requirement is also found in 7 C.F.R. § 46.2(aa)(11), which provides, "parties who elect to use different times of payment than those set forth in paragraphs (aa)(1) through (10) of this section must reduce their agreement to writing before entering into the transaction and maintain a copy of the agreement in their record...the party claiming the existence of such an agreement for time of payment shall have the burden of proving it." The maximum payment time that a seller can agree to and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities. 7 C.F.R. § 46.46(e)(2).

Accordingly, in order for a produce supplier to extend payment terms beyond those prescribed in the regulations, the agreement must be (i) written, (ii) entered prior to the transaction, (iii) maintained in the files of each party, and (iv) specifically referred to in the invoices setting forth the extended payment terms. If and only if these four criteria are present, then any extension of the payment period beyond 30 days will cause the

supplier to lose the benefit of the PACA trust. Otherwise, the payment terms default to the 10 day period set forth in the regulations, and any other time period set forth in invoices is irrelevant. *See, Stowe Potato Sales, Inc. v. Terry's Inc.*, 224 B.R. 329 (W.D. Va. 1998).

None of the foregoing factors are present here because there is no pre-transaction written agreement between Winn-Dixie and Old Dixie in the first instance, nor do the Old Dixie invoices refer to any separate agreement. In *Stowe, supra*, a case strikingly similar to this one, the Court held that a supplier's invoices sent as notice under PACA were adequate to preserve the supplier's trust benefits even though the specified time for payment was beyond the regulatory period and the invoices provided that a finance charge would be added to accounts past due 30 days. Like Old Dixie, the *Stowe* plaintiff elected to use the alternative method for a licensee to provide notice under 7 U.S.C. § 499e(c)(4) by including the statutory language in the invoices. The *Stowe* invoices stated, "payment terms: NET 30" and finance charge of 1½% per month (18% per year) will be added to all accounts past due thirty days." The Court held:

> Since Stowe elected to give notice of its intent to preserve trust benefits via its invoices, the statutory language clearly provides that Stowe must lose the benefits of the statutory trust if the notice was inadequate [citation omitted]. Because the parties did not have a pre-transaction written agreement changing the times for payment, it is equally clear that the terms of payment were not required to be set forth on the invoice. Since the invoices contained all of the other required language, notice was properly given. PACA and its regulations require that the invoice notice set forth the payment terms only if there is a pre-transaction written agreement...The payment terms can be extended beyond those established by regulation only by such a written agreement. Accordingly, it would be incongruous to require the invoice to set forth non-binding payment terms. *Id.,* 225 B.R. at 333.

The time of payment terms set forth in many Old Dixie invoices are ineffective to extend the payment terms beyond those established in 46 C.F.R. § 46.46, *et seq*, since there is no pre-transaction written agreement between the parties to do so. Old Dixie complied with the PACA notice requirements set forth in 7 U.S.C. § 499e(c)(4), 7 C.F.R. § 46.46(f), and the Order, by including the required statutory language on each of its invoices delivered to the Debtors. As such, Old Dixie properly preserved its benefits under the trust. *Stowe, supra.*

The regulation cited by the Debtors to reject most of Old Dixie's claim, 7 C.F.R. § 46.46(e)(2) cannot be read in isolation. Such a reading ignores the regulation's context, which includes the preceding regulation of section (e)(1) and the governing statute that require a pre-transaction written agreement to change time of payment terms beyond those in the regulations. In *Hull Company v. Hauser's Food's, Inc.*, 924 F.2d 777 (8th Cir. 1991), the Court affirmed the district court's reasoning that, "the logical reading of the regulation then is that in order to have effect, agreements for payment beyond the 10 day limit set by 7 C.F.R. § 46.2(aa)(5) must be in writing and that 7 C.F.R. § 46.46.(f)(2) bars trust only where there is a *written* agreement in excess of thirty days."[1] Accordingly, the "agreement" referred to in section 46.46.(e)(2) can only refer to pre-transaction written agreements referred to throughout the regulations addressing this issue, not to unsigned invoices of the kind issued by Old Dixie to the Debtors. *See, C.H. Robinson Company v. B.H. Produce Company, Inc.*, 723 F.Supp. 785 (N.D.Ga. 1989)(invoices did

---

[1] 7 C.F.R. §46.46(f)(2) provides in pertinent part, that timely notice of the intent to preserve trust benefits "will be considered to have been made if written notice is given to the debtor within 30 calendar days after the expiration of such other time by which payment must be made as the parties have expressly agreed to in writing before entering into the transaction, but not longer than the time prescribed in paragraph (e)(2) of this section."

6

not constitute express written agreement under the statute; trust benefits denied on other grounds).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court sustain Old Dixie's objection to the Report as to its claim, and that the entire sum of Old Dixie's pre-petition invoices, $186,178.80, be deemed an Allowed PACA Claim pursuant to the Order and payable thereunder, together with such other and further relief that this Court deems just and proper.

Dated: Metairie, Louisiana
       May 13, 2005

Respectfully submitted,

DWYER & CAMBRE

*[signature]*

MARK G. DUNCAN (#29161)
3421 N. Causeway Blvd., Suite 601
Metairie, Louisiana 70002
Telephone: (504) 838-9090
Facsimile: (504) 838-9187

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re )
)
) Case No. 05-03817-3F1
WINN-DIXIE STORES, INC., et al, ) Chapter 11
)
Debtors. )
) Jointly Administered

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading upon the following attorneys for the Debtors in this action by overnight delivery this 13th day of May 2005:

> SKADDEN, ARPS, SLATE, MEAGHER & FLOM
> Four Times Square
> New York, New York 10036
> Attn: Sally McDonald Henry, Esq.

_____
MARK G. DUNCAN

8