051705WD

1

1          WINN-DIXIE STORES, INC., et al.
              (Case No. 05-03817-3F1)
2

3    AUCTION HELD IN CONNECTION
     WITH SALE OF THE
4    DEBTORS' 2002 GULFSTREAM
     G-200 s/n AIRCRAFT
5

6

7

8

9        TRANSCRIPT of Auction Proceedings as taken by and

10   before PATRICIA A. SANDS, a Shorthand Reporter

11   and Notary Public of the States of New York and New

12   Jersey, at the offices of SKADDEN, ARPS, SLATE,

13   MEAGHER & FLOM, Four Times Square, on Tuesday,

14   May 17, 2005, commencing at 5:03 in the afternoon.

15

16

17

18        REPORTING SERVICES ARRANGED THROUGH:
        VERITEXT/NEW JERSEY REPORTING COMPANY, LLC
19   Kabot Battaglia & Hammer - Suburban Shorthand
     Waga and Spinelli - Arthur J. Frannicola, CSR
20            25B Vreeland Road, Suite 301
             Florham Park, New Jersey 07932
21     Tel: (973) 410-4040  Fax: (973) 410-1313

22

23

24

25

2

1    A P P E A R A N C E S:

2

                              051705WD
3      SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
       Four Times Square
4      New York, New York 10036-6522
       BY:   ADAM S. RAVIN, ESQ.
5             KIMBERLY A. LAMAINA, ESQ.
       For the Debtors
6      212 735-3000

7      MILBANK TWEED HADLEY & MCCLOY
       One Chase Manhattan Plaza
8      New York, New York 10005
       BY:   ABHILASH M. RAVAL, ESQ.
9      For the Creditors' Committee
       212 530-5000
10

       HOLLAND & KNIGHT, LLP
11     10 St. James Avenue, 11th Floor
       Boston, Massachusetts 02116
12     BY:   JOHN J. MONAGHAN, ESQ.
       For Leading Edge Aviation Solutions
13     617 573-5834

14     CROWELL & MORING
       1001 Pennsylvania Avenue, NW
15     Washington, DC 20004-2595
       BY:   EILEEN M. GLEIMER, ESQ.
16     For Leading Edge Aviation Solutions
       202 624-2840
17

18     LEADING EDGE AVIATION SOLUTIONS
       777 Franklin Avenue
19     Franklin Lakes, New Jersey 07417
       BY:   CRAIG CARFAGNA, Vice President
20                              Aircraft Transactions
       201 891-0881
21

22

23

24

25

                                                        3

1    A P P E A R A N C E S, continued.

2

3        OTTERBOURG, STEINDLER, HOUSTON & ROSEN, PC
         230 Park Avenue
4        New York, New York 10169-0075
         BY:   JAROD M. STERN, ESQ.
5        For Wachovia Bank, DIP Agent
         212 661-9100

6

051705WD

```
 7    BROWNSTEIN, HYATT, FARBER
      410 Seventeenth Street, 22nd Floor
 8    Denver, Colorado 80202-4437
      BY:   MICHAEL J. PANKOW, ESQ.
 9          ROBERT KAUFMANN, ESQ.
      For Studio City
10    303 223-1106

11

      ACF PROPERTY MANAGEMENT, INC.
12    12411 Ventura Boulevard
      Studio City, California 91604
13    BY:   ALAN C. FOX, President
      818 505-6777
14    For Studio City

15

      WINN-DIXIE STORES, INC.
16    5050 Edgewood Court
      Jacksonville, Florida 32254
17    BY:   MICHAEL P. CHLEBOVEC
            Director Excess Properties
18    904 370-7172

19

      BLOOMER deVERE GROUP AVIA, INC.
20    BY:   RICHARD BEINE
      949 622-5336
21

22

23

24

25
```

4

```
 1

 2

 3

 4                    E X H I B I T S

 5

 6    NUMBER        DESCRIPTION                    PAGE

 7

 8    1             Procedures                     5

 9    2             APA                            5

10
```

Page 3

051705WD

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

1           Skadden, Arps, Slate, Meagher & Flom, LLP
2                   Four Times Square
                    New York, New York
3                    May 17, 2005
                      5:03 p.m.
4

5

6

7               (Exhibits 1 and 2 marked for
   identification.)
8

9                    MR. RAVIN:  We'll go on the record.

10                   We're here today for the auction of

11   a 2002 Gulfstream G-200 aircraft owned by

12   Winn-Dixie, along with two engines and related

13   equipment.

14                   I just wanted to thank all of your

051705WD

15  for your patience, it's been a long afternoon and I

16  appreciate everybody hanging in there.

17              I would like to read a few

18  statements for the record to describe the process

19  that has taken place up to this point.

20              After filing the motion, the Debtors

21  received a bid from Leading Edge Aviation prior to

22  the bid deadline, which bid was accompanied by a

23  $500,000 deposit.  The Leading Edge bid reflected a

24  purchase price of $15,400,000.

25              The Debtors, in consultation with

6

1  the Creditors' Committee, reviewed the bid.  There

2  were several provisions in the Leading Edge

3  Agreement, which differed from the form of

4  agreement submitted by Studio City and attached to

5  the motion.

6              Changes included a surviving

7  representation regarding the fact that with the

8  exception of the Bahamas, the agreement is the

9  aircraft has not operated outside of the United

10  States.

11              In order to have an apples to apples

12  comparison, the Debtors, in consultation with the

13  Creditors' Committee, concluded that there should

14  be a $25,000 deduction applied to the Leading Edge

15  bid to reflect the changes proposed.

16              After further negotiation on several

17  points, Leading Edge signed a revised APA,

18  including all of the points they requested as

19  negotiated with the Debtors and the Creditors'

051705WD

20    Committee.

21              The Debtors provided a copy of the

22    Leading Edge agreement to Studio City, and informed

23    them of the discount on the bid, and that with the

24    discount applied, the Leading Edge bid was the

25    higher and better offer, and thus the auction would

                                                        7

1     open with that bid.

2               The Debtors provided Studio City

3     with the option of either, A, having the terms of

4     the Leading Edge agreement incorporated into their

5     own, in which case there would be no need to apply

6     the discount; or B, keeping the Studio City

7     agreement in the form attached to the motion,

8     explaining that because the Leading Edge bid had

9     been discounted by $25,000, Studio City's initial

10    overbid only needed to be $35,000.

11              Studio City has informed the Debtors

12    that they will open their initial bid in reliance

13    upon the agreement that was attached to the motion,

14    but reserved the right to submit subsequent bids

15    that conformed to the agreement that was submitted

16    by Leading Edge.

17              Auction procedures were distributed

18    to the parties, they have been marked for

19    identification as Exhibit 1.

20              The only changes that the Debtors,

21    in consultation with the Creditors' Committee have

22    made to Exhibit 1 that I would note for the record,

23    are the fact that minimum bidding increments are

051705WD

24    reduced from $50,000 to $10,000, at the request of

25    both parties.   And the time period for submission

8

1    of competing bids has been reduced from ten minutes

2    to five minutes.

3                   We would ask that each party

4    acknowledge on the record that they have been

5    afforded an opportunity to review the auction

6    procedures which will govern the terms of this

7    auction, with the understanding that the Debtors,

8    in consultation with the Committee, may revise

9    these procedures, to the extent that they believe

10    doing so is in the best interests of the Estate.

11                   With that, I would ask that the

12    respective parties acknowledge that on the record.

13                   MR. FOX:   Acknowledge for Studio

14    City Aviation.

15                   MR. MONAGHAN:   John Monaghan,

16    Holland & Knight, counsel to Leading Edge.

17                   We acknowledge that we have reviewed

18    the procedures, have been informed on the record as

19    to what they will be.   Acknowledge the Debtors'

20    rights, in consultation with the Committee, to

21    alter in accordance with its determination with the

22    best interests of the Estate.

23                   Leading Edge would point out for the

24    record at this point in time that while it has

25    agreed to participate in the auction with the rules

9

1    as stated, that is a $25,000 deductible applied to

051705WD

2    its bid, it does so under protest, and without

3    prejudice to its right to seek appropriate redress

4    should it prove necessary, and deem it appropriate

5    in its sole discretion.

6                    MR. RAVIN:  The Debtors are aware of

7    that reservation, whatever effect that might have.

8                    We would now invite Studio City to

9    submit the initial bid.

10                   MR. RAVAL:  I would interrupt just

11   to clarify that it's the Committee's position is

12   that doesn't -- you can reserve your rights, but

13   that doesn't mean that either the Debtors or the

14   Committee are consenting to standing or to your

15   ability to post an objection.

16                   So to the extent you have rights,

17   you have them.  To the extent you don't --

18                   MR. MONAGHAN:  Leading Edge agrees

19   that everybody's rights as to all challenges as to

20   standing, as to merits, as to appropriateness of

21   the reservation are reserved until the hearing.

22                   MR. RAVIN:  We would now invite

23   Studio City to commit their initial bid.

24                   MR. FOX:  $15,380,000, and

25   increasing our deposit to $1 million from the

                                                    10

1    current $500,000.

2                    MR. MONAGHAN:  15,390,000.

3                    MR. RAVIN:  Off the record for a

4    minute.

5                    (Discussion off the record.)

Page 8

051705WD

6          MR. RAVIN:   Back on the record.

7               The Debtors are of the view that the

8     increased deposit that Studio City has offered is

9     not entitled to any increased value, and we would

10    turn the bidding on the purchase price back to

11    Studio City to counter.

12          MR. FOX:   Why do we have to counter?

13               It seems to me our bid is higher.

14    We are at 15,380,000, they are at 15,390,000, take

15    25,000 off of that, we're higher.

16          MR. MONAGHAN:   Every bid we make,

17    before you square up, if you ever square up, is

18    presumed to be -- and we admit that the ultimate

19    purchase price is $25,000 higher.  I'm going to bid

20    10,000 higher than they are.  We acknowledge and

21    understand that 15390 is actually 1540.

22          MR. RAVAL:   We should clarify as to

23    how much, what you're bidding on.  Their bid was

24    15,400,000, there is a 25,000 deduction --

25          MR. FOX:   We're bidding on, as Adam

11

1     stated, we're bidding on the Studio City contract,

2     until further notice.  So we get the $25,000

3     discount.  I think it's confusing to have them

4     bidding in that way, but that's up to --

5          MR. RAVIN:   Can we go off the record

6     for a moment.

7               (Discussion off the record.)

8          MR. RAVIN:   Back on the record.

9               Just to clarify, for purposes of the

10    record, the initial bid that Studio City submitted

051705WD

11    in connection with the words in the agreement that

12    was attached to the motion, was 15,350,000.

13                    The bid that Leading Edge submitted

14    today -- I'm sorry -- the bid that was submitted

15    prior to the expiration of the bid deadline and

16    pursuant to an asset purchase agreement signed

17    today, is 15,400,000.

18                    The Debtors applied a $25,000

19    discount to that in consultation with the

20    Committee, and, thus, the total value of their

21    initial bid was 15,375,000.

22                    In connection with the bidding

23    increments that we have agreed on as $10,000,

24    Studio City must submit a minimum bid of 15,385,000

25    in order to start the bid.

                                                          12

1                    And so with that clarification, I

2     would ask that Studio City commence its bid at

3     15,385,000 or higher.

4                    MR. FOX:   Okay, 15,385,000 with a

5     $1 million deposit.

6                    MR. RAVIN:   Leading Edge.

7                    MR. MONAGHAN:   We will improve that

8     by the $10,000.   For purposes of ease of

9     discussion, I will say 15,395,000.   I acknowledge

10    that, in actuality, it's $25,000 higher, which is

11    15,420,000.

12                    MR. RAVIN:   Studio City.

13                    And I appreciate that clarification.

14                    And just to be clear, so that that

Page 10

051705WD
15   bid would require Leading Edge to make a payment to

16   the Debtors that would be $25,000 higher than the

17   actual number of 15,395,000.

18                    MR. MONAGHAN:  Yes.

19                    MR. RAVIN:  Thank you.

20                    Studio City, your bid.

21                    MR. FOX:  15,450,000, with

22   a $2 million deposit.

23                    MR. RAVIN:  Leading Edge.

24                    MR. MONAGHAN:  15460, which with the

25   $25,000 added, would result in a payment price of

13

1   15,485,000.

2                    MR. RAVIN:  Studio City.

3                    MR. FOX:  15,500,000, with a

4   $3 million deposit.

5                    MR. RAVIN:  Off the record for a

6   minute.

7                    (Discussion off the record.)

8                    MR. RAVIN:  Back on the record.

9                    The Debtors would just like to point

10   out that while at this point they do not believe

11   that the increased deposit that has been offered by

12   Studio City necessarily renders that bid to be a

13   higher and better offer in and of itself; however,

14   the Debtors reserve the right to attribute some

15   increased value, or make a determination that that

16   increased deposit does, in fact, render the Studio

17   City bid to be a higher and better offer in

18   consultation with the Creditors' Committee.

19                    MR. MONAGHAN:  Leading Edge would

051705WD

20    point out that it has presented evidence to the

21    Debtors and the Creditor's Committee of sufficient

22    availability under a line of credit currently

23    available to it, to fund the purchase price in many

24    multiples of what it is we are talking about.    And

25    so would query the basis for ascribing much value

14

1    to an increased deposit, since the wherewithal to

2    close this deal has been aptly demonstrated.

3                    MR. RAVIN:    We appreciate that

4    clarification or that reservation, but we would

5    just like to record to reflect the reservation of

6    rights.

7                    MR. FOX:    And I would also like the

8    record to reflect that $3 million is on deposit

9    currently with Insured Title.    Two and a half

10    million was wired to them yesterday.

11                    MR. RAVIN:    Okay.    Leading Edge, I

12    think it's your bid.

13                    MR. MONAGHAN:    Just to refresh my

14    recollection, is the bid as it stands $5,500,000?

15                    MR. RAVIN:    With a $3 million

16    deposit.

17                    MR. MONAGHAN:    And based upon their

18    contract?

19                    MR. RAVIN:    That's correct.

20                    MR. MONAGHAN:    $15,510,000, which

21    with the $25,000 hold back or up tick, would be a

22    payment of $15,530,000.

23                    MR. RAVIN:    Studio City.

051705WD

24                    MR. FOX:   $15,600,000.   And we'll go

25     back to the $500,000 deposit, reserving our right

15

 1     to increase the 3 million at such time as the

 2     Debtor and Creditors' Committee give additional

 3     weight to it.

 4                    MR. RAVIN:   Leading Edge.

 5                    MR. MONAGHAN:   15,610,000, plus the

 6     $25,000 amount, which is a total purchase price of

 7     15,635,000.

 8                    MR. RAVIN:   Studio City.

 9                    MR. FOX:   15,700,000, same deposit

10     as our previous bid.

11                    MR. RAVIN:   Just so the record is

12     clear, I'm going to assume, unless Studio City

13     advises us otherwise on the record, that we are

14     continuing, that Studio City's bid is continuing to

15     be in the lines of the agreement that was attached

16     to the motion.

17                    MR. FOX:   Fox that is correct.

18                    MR. RAVIN:   Leading Edge.

19                    MR. MONAGHAN:   15,710,000, plus the

20     $25,000 holdback, for a total consideration of

21     15,735,000.

22                    MR. RAVIN:   Studio City.

23                    MR. FOX:   15,720,000.

24                    MR. RAVIN:   Leading Edge.

25                    MR. MONAGHAN:   15730, plus the

16

 1     $25,000, which is 15755.

Page 13

051705WD

2                    MR. RAVIN:   Studio City.

3                    MR. FOX:   15740.

4                    MR. RAVIN:   Leading Edge.

5                    MR. MONAGHAN:   $15,740,000, plus the

6    $25,000 retained amount, or hold back amount, which

7    is a total of $15,775,000.

8                    MR. RAVIN:   Thank you.

9                    Studio City.

10                   MR. FOX:   15775.

11                   MR. RAVIN:   Leading Edge.

12                   MR. MONAGHAN:   $15,785,000, plus the

13   25,000, for a total, I believe that's $15,810,000.

14                   MR. RAVIN:   Studio City.

15                   MR. FOX:   16 million.

16                   MR. RAVIN:   Leading Edge.

17                   MR. MONAGHAN:   16,010,000, total

18   consideration, 16,035,000.

19                   MR. KAUFMANN:   We're going to take a

20   five-minute.

21                   MR. RAVIN:   Off the record.

22                   (Recess.)

23                   MR. RAVIN:   Back on the record.

24                   MR. FOX:   Studio City is at

25   16,020,000.

                                                              17

1                    MR. RAVIN:   Leading Edge.

2                    MR. MONAGHAN:   16,030,000, plus

3    25,000 for the deduct, which is 16,055,000.

4                    MR. RAVIN:   Studio City.

5                    MR. FOX:   16,040,000.

                          Page 14

051705WD

6                    MR. RAVIN:   Leading Edge.

7                    MR. MONAGHAN:   16,050,000, plus

8    25,000 deduct, which is 16,075,000.

9                    MR. RAVIN:   Studio City.

10                   MR. FOX:   16,060,000.

11                   MR. RAVIN:   Leading Edge.

12                   MR. MONAGHAN:   16,070,000, plus

13   $25,000 deduct, which is 16,095,000.

14                   MR. RAVIN:   Studio City.

15                   MR. FOX:   16,080,000.

16                   MR. RAVIN:   Leading Edge.

17                   MR. MONAGHAN:   16,090,000, plus

18   25,000, which is 16,115,000.

19                   MR. RAVIN:   Studio City.

20                   MR. FOX:   16,100,000.

21                   MR. RAVIN:   Leading Edge.

22                   MR. MONAGHAN:   16,110,000, plus

23   25,000, which is 16,135,000.

24                   MR. RAVIN:   Studio City.

25                   MR. FOX:   16,120,000.

                                                  18

1                    MR. RAVIN:   Leading Edge.

2                    MR. MONAGHAN:   16,130,000, plus the

3    25,000, which is $16,155,000.

4                    MR. RAVIN:   Studio City.

5                    MR. FOX:   16,140,000.

6                    MR. RAVIN:   Leading Edge.

7                    MR. MONAGHAN:   16,150,000, plus

8    25,000, which is 16,175,000.

9                    MR. RAVIN:   Studio City.

10                   MR. FOX:   16,160,000.

051705WD

11                    MR. RAVIN:   Leading Edge.

12                    MR. MONAGHAN:   16,170,000, plus

13   $25,000, which is 16,195,000.

14                    MR. RAVIN:   Studio City.

15                    MR. FOX:   $16,080,000.

16                    MR. RAVIN:   I'm sorry, just to

17   clarify --

18                    MR. FOX:   I mean $16,180,000.

19                    MR. RAVIN:   Thank you.

20                    Leading Edge.

21                    MR. MONAGHAN:   16,190,000, plus

22   25,000, which is 16,215,000.

23                    MR. RAVIN:   Studio City.

24                    MR. FOX:   16,200,000.

25                    MR. RAVIN:   Leading Edge.

                                                    19

1                     MR. MONAGHAN:   16,210,000, which

2    plus 25,000, is 16,235,000.

3                     MR. RAVIN:   Studio City.

4                     MR. FOX:   16,220,000.

5                     MR. RAVIN:   Leading Edge.

6                     MR. MONAGHAN:   Five-minute recess.

7                     MR. RAVIN:   Off the record.

8                     (Recess, 5:31 to 5:34 p.m.)

9                     MR. RAVIN:   Back on the record.

10                    Before you begin, I just wanted to

11   make one clarification or clean up item for the

12   record.   And that is the APA that Leading Edge

13   signed has been marked for identification as

14   Exhibit 2, and provided to the court reporter.

051705WD

15          (Inaudible discussion.)

16          MR. RAVIN:  For purposes of

17    clarifying the record, also there is in the

18    agreement that Studio City signed, in Section 6.1

19    there was a change made to clarify the fact that

20    purchaser, I'm sorry, that seller rather than

21    purchaser is responsible for paying the commission

22    of Bloomer deVere, and that will be subject to

23    court approval, but we just wanted to clarify that

24    the reference to the fact that purchaser was

25    obligated to pay that commission that appeared in

                                                    20

1     Studio City's agreement was, in fact, a typo, and

2     has been remedied in the Leading Edge version.  And

3     the Debtors will, if Studio City is the winning

4     bidder, they will make that modification to the

5     agreement.

6          Shall we continue.

7          MR. MONAGHAN:  Leading Edge will

8     remove from its asset purchase agreement the

9     survival of the representation relating to the

10    places to which this plane has flown, and bid

11    $16,230,000.

12          (Inaudible discussion.)

13          MR. RAVIN:  Can we go off the record

14    for a moment, please.

15          (Off the record, 5:36 to 5:48 p.m.)

16          MR. RAVIN:  I would like to go back

17    on the record, and just state for the record that

18    we took approximately a ten-minute recess for the

19    purpose of -- and the Debtors met with Leading

051705WD

20    Edge's counsel, and explained to them that their
21    last bid of 16,130,000 that removed the survival of
22    the representation regarding the location of the
23    aircraft, or the travel of the aircraft, rather,
24    was not an acceptable bid, and that the Debtors do
25    not believe it to be in the best interests of their

21

1    Estate to engage in a process in which the
2    individual provisions of the agreement that Leading
3    Edge signed are now stripped out.
4                    We would just like the record to be
5    clear that that was the nature of the break and the
6    purpose of the break.
7                    And we would ask Leading Edge to
8    submit a bid in response to Studio City's last bid
9    of 16,220,000.
10                   MR. MONAGHAN:   And just for the
11   record, I will state that Leading Edge disagrees
12   with your conclusion.
13                   But let's see if we can moot that
14   for the present purposes, and maybe we will never
15   have to put on the record why it is we disagree or
16   what we think ought to happen, and Leading Edge
17   would bid 16,230,000 under its contract, which is
18   16,255,000.
19                   MR. RAVIN:   And before we turn to
20   Studio City, I would just like the record to also
21   reflect the fact that we did give Leading Edge the
22   option of choosing to operate under the Studio City
23   agreement; and, obviously, they have chosen to

Page 18

051705WD

24    continue to operate under the existing agreement.

25                    MR. MONAGHAN:  Yes.


                                                    22


1                     MR. RAVIN:   Thank you.

2                     MR. MONAGHAN:   We acknowledge that

3     you did give us the option, and we do also

4     acknowledge that we are continuing under the

5     agreement that Leading Edge signed prior.

6                     MR. RAVIN:   Thank you.

7                     Studio City.

8                     MR. FOX:   16,240,000.

9                     MR. RAVIN:   Leading Edge.

10                    MR. MONAGHAN:   16,250,000, plus

11    25,000 deduct, which is 16,275,000.

12                    MR. RAVIN:   Studio City.

13                    MR. FOX:   16,260,000.

14                    MR. RAVIN:   Leading Edge.

15                    MR. MONAGHAN:   16,270,000, plus the

16    25,000, which is 16,295,000.

17                    MR. RAVIN:   Studio City.

18                    MR. FOX:   16,280,000.

19                    MR. RAVIN:   Leading Edge.

20                    MR. MONAGHAN:   $16,290,000, plus the

21    25,000 deduct, which is $16,315,000.

22                    MR. RAVIN:   Studio City.

23                    MR. FOX:   16,300,000.

24                    MR. RAVIN:   Leading Edge.

25                    MR. MONAGHAN:   16,310,000, plus,


                                                    23


1    which is 16,335,000 total consideration.

051705WD

2                    MR. RAVIN:  Studio City.

3                    MR. FOX:  Let's have a recess.

4                    MR. RAVIN:  Off the record, please.

5                    (Recess, 5:52 to 5:56 p.m.)

6                    MR. RAVIN:  Back on the record.

7                    The bid belongs to Studio City.

8                    MR. FOX:  16,320,000.

9                    MR. RAVIN:  Leading Edge.

10                   MR. MONAGHAN:  16,330,000, plus

11   25,000, is 16,355,000.

12                   MR. RAVIN:  Studio City.

13                   MR. FOX:  16,340,000.

14                   MR. RAVIN:  Leading Edge.

15                   MR. MONAGHAN:  16,350,000, plus the

16   25,000, for a total of 16,375,000.

17                   MR. RAVIN:  Studio City.

18                   MR. FOX:  16,360,000.

19                   MR. RAVIN:  Leading Edge.

20                   MR. MONAGHAN:  16,370,000, which is

21   $16,395,000 total consideration.

22                   MR. RAVIN:  Studio City.

23                   MR. FOX:  16,380,000.

24                   MR. RAVIN:  Leading Edge.

25                   MR. MONAGHAN:  $16,390,000, which is

                                                          24

1    $16,415,000.

2                    MR. RAVIN:  Studio City.

3                    MR. FOX:  One minute.

4                    MR. RAVIN:  Off the record.

5                    (Off the record.)

Page 20

051705WD
 6                    MR. RAVIN:  Back on the record.

 7          Studio City.

 8                    MR. FOX:  16,400,000.

 9                    MR. RAVIN:  Leading Edge.

10                    MR. MONAGHAN:  $16,410,000, which is

11     $16,435,000.

12                    MR. FOX:  Okay.  We're done.

13                    MR. RAVIN:  Okay.  I would like to

14     note for the record, Leading Edge the winning

15     bidder --

16                    (Inaudible discussion.)

17                    MR. RAVIN:  I'm sorry, could you

18     read back the last thing on the record.

19                    (The record was read back by the

20     reporter.

21                    MR. RAVIN:  Leading Edge is the

22     winning bidder with a bid of 16,410,000, and the

23     Debtors will present --

24                    MR. FOX:  Plus 25,000.

25                    MR. RAVIN:  Plus 25,000, thank you.

                                                        25

 1                    And the Debtors will present to the

 2     court the asset purchase agreement dated May 17,

 3     that has been marked for identification as

 4     Exhibit 2, and seek approval of that agreement on

 5     May 19th at the hearing scheduled in Jacksonville

 6     before Judge Funk and with that --

 7                    MR. RAVAL:  Could you just clarify

 8     the cash purchase price one more time.

 9                    MR. RAVIN:  Sorry.  The cash

10     purchase price that Leading Edge will be required

051705WD

11    to pay is $16,435,000.

12                        And with that the auction --

13                        MR. MONAGHAN:  Just --

14                        MR. RAVIN:  -- is concluded.

15                        MR. MONAGHAN:  A couple of things,

16    I'm sorry.  Please announce the conclusion.

17                        MR. RAVIN:  And with that, the

18    auction is concluded.

19                        MR. MONAGHAN:  For the record, I

20    would note that in both asset purchase agreements

21    there was a provision for a mutually acceptable

22    order.  We reviewed your form of order, I think

23    it's about where it ought to be, but I would like

24    to take a little time now, if you have it, to go

25    through it, and make you sure we get it in final

                                                    26

1    form and we'll present that to the court as well.

2                        And we would also just request for

3    the record that to the extent that any late filed

4    objections come in, or you have received objections

5    to date to the sale, that you share those with us

6    now that we are the high bidder.

7                        MR. RAVIN:  As of the beginning of

8    the auction, I was not -- I should say as of this

9    morning I was not aware of the filing of any

10    objections.

11                        To the extent that that's changed, I

12    will certainly advise Leading Edge, and will

13    continue to advise them of any filings prior to the

14    hearing.

051705WD
15              MR. MONAGHAN:   Okay.

16              MR. RAVIN:   And with that, I think

17      the auction is concluded.   Thank you everybody.

18                  (The auction was concluded at 6:03

19      p.m.)

20

21

22

23

24

25

                                                        27

1                   C E R T I F I C A T E

2

3          I, PATRICIA A. SANDS, a Shorthand Reporter

4       and Notary Public of the States of New York and New

5       Jersey, do hereby certify that the foregoing is

6       a true and accurate transcript of the auction as

7       taken stenographically by and before me at the

8       time, place, and on the date hereinbefore set

9       forth.

10

11         I do further certify that I am neither of

12      counsel nor attorney for any party in this action,

13      and that I am not interested in the event nor

14      outcome of this litigation.

15

16

17      _____

18      New York certificate No.:  01SA4974309

19      New Jersey certificate No.:  2109345
                    Page 23

051705WD

20

21

22

23

24

25