## EXHIBIT INDEX/GROUP EXHIBIT A

| Exhibit/Document | Description |
|---|---|
| 1. | Loan Agreement dated December 29, 1994 |
| 2. | Note made by Original Borrower in favor of Original Lender dated December 29, 1994 |
| 3. | Leasehold Mortgage, Security Agreement, Financing Statement and Assignment of Subleases dated December 29, 1994 |
| 4. | Assignment of Subleases dated December 29, 1994 |
| 5. | Assignment of Mortgage Loan Documents dated May 4, 1995 |
| 6. | Renewal Note of Original Borrower dated May 4, 1995 |
| 7. | First Modification of Leasehold Mortgage dated May 19, 1995 |
| 8. | First Modification of Assignment of Subleases dated May 10, 1995 |
| 9. | Assumption Agreement dated October 12, 2000 |
| 10. | Assessed Value from County |

# GROUP EXHIBIT A

MEL WILLS JR., CLERK OF THE CIRCUIT COURT - OSCEOLA CTY .  BK  1260
05/24/95  16:19  VERIF D: MMK  INSTR #  95-052650  PG  1605

Prepared by and return to:

Michael E. Wright, Esq.
SMITH, MACKINNON, HARRIS, GREELEY,
EDWARDS & BOWDOIN, P. A.
Suite 800, Citrus Center
255 South Orange Avenue
P.O. Box 2448
Orlando, Florida 32802-2448

## ASSIGNMENT OF MORTGAGE
## LOAN DOCUMENTS

  **KNOW ALL MEN BY THESE PRESENTS** that **SUN BANK, NATIONAL ASSOCIATION**, a national banking association (hereinafter called "Assignor"), in consideration of the sum of **TEN and 00/100 DOLLARS** ($10.00) and other good and valuable consideration, received from or on behalf of **LUTHERAN BROTHERHOOD**, a Minnesota corporation (hereinafter called "Assignee"), at or before the ensealing and delivery of these presents, the receipt and sufficiency whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over to Assignee, without recourse:

  1.  That certain Leasehold Mortgage, Security Agreement, Financing Statement and Assignment of Subleases ("Mortgage"), dated December 29, 1994, made by **GOODING'S SUPERMARKETS, INC.**, a Florida corporation (hereinafter called "Borrower") in favor of the Assignor, recorded in O.R. Book 1231, Page 2392, Public Records of Osceola County, Florida, upon the parcel of land described in said Mortgage;

  2.  That certain Note in the principal amount of $2,280,000.00, dated December 29, 1994, made by Borrower in favor of Assignor;

  3.  That certain Loan Agreement dated December 29, 1994, by and between Borrower and Assignor; and

  4.  That certain Assignment of Subleases dated December 29, 1994, by Borrower in favor of Assignor, recorded in O.R. Book 1231, Page 2429, Public Records of Osceola County, Florida.

C:\PM\WP\DOC\FILE\MORTGAGE\LITIGATION\GOODING\ASSIGN.DOC
May 1, 1995

| BOOK   1260   PAGE   16 6 |

**TOGETHER WITH** all other agreements, financing statements and documents referenced therein or executed in connection therewith (collectively, the "Assigned Documents"), and all the monies due and to become due thereon, with interest thereon, to have and to hold the same unto the Assignee, its successors and assigns forever.

**ASSIGNOR** further warrants and represents that it is the owner and holder of the Assigned Documents, that, to its knowledge the Assigned Documents are valid, enforceable, and not subject to any claim or defenses and that no default or event of default has occurred or is continuing under the Assigned Documents.

**IN WITNESS WHEREOF**, the party of the Assignor has caused these presents to be executed in its name, and its corporate seal to be hereunto affixed, by its proper officers thereunto duly authorized, as of May 4, 1995.

                                    **SUN BANK, NATIONAL ASSOCIATION,**
                                    a national banking association

Witnesses:

_(signature)_                       By: _(signature)_
Print Name: Mary E. Torres          Print Name:  William C. Barr, III
_(signature)_                       As its:  First Vice President
Print Name: Ivette Garcia

                                    **(CORPORATE SEAL)**


**STATE OF FLORIDA**
**COUNTY OF ORANGE**

     The foregoing instrument was acknowledged before me this 4th day of May, 1995, by Michael R. Butler, as First Vice President of **SUN BANK, NATIONAL ASSOCIATION**, a national banking association, on behalf of the Assignor.

                                    _(signature)_
                                    Name:  Mary E. Torres
                                    Notary Public, State of Florida
MARY E TORRES                       Personally Known   X
My Commission CC363030              Produced Identification _____
Expires Apr. 01, 1998               Type of Identification _____
Bonded by ANB
800-852-5878

2

**RENEWAL NOTE**

$2,280,000.00

May __, 1995

　　　　FOR VALUE RECEIVED, GOODING'S SUPERMARKETS, INC., a Florida corporation (hereinafter called the "Borrower") promises to pay to the order of **LUTHERAN BROTHERHOOD**, a Minnesota corporation (hereinafter sometimes called "Lender"), or its assigns, at its office at 625 Fourth Avenue South, Minneapolis, Minnesota 55415, Attention: Investment Division, or at such other place as the holder or holders hereof may from time to time designate in writing, the principal sum of **TWO MILLION TWO HUNDRED EIGHTY THOUSAND AND NO/100ths DOLLARS ($2,280,000.00)** or so much thereof as remains unpaid from time to time (hereinafter called "Principal Balance"), together with interest on the Principal Balance at the rate hereinafter specified, in coin or currency, which, at the time or times of payment, is legal tender for payment of public and private debts in the United States of America, all in accordance with the terms hereinafter set forth.

　　　　From and after the date hereof, and until this Note is fully paid, interest on the Principal Balance shall be computed at the rate of **NINE AND FOUR-TENTHS PERCENT (9.4%)** per annum. Installments of principal and interest shall thereafter be due and payable in two hundred twenty-four (224) consecutive, equal, monthly payments of $21,591.00 each, commencing on July 1, 1995, and continuing thereafter on the first day of each and every calendar month through and including February 1, 2014. The entire Principal Balance, and all unpaid, accrued interest thereon, shall be due and payable in full on March 1, 2014 (the "Maturity Date"). The aforesaid regular, monthly payments of principal and interest shall be applied first to accrued interest and the remainder thereof shall be applied to the Principal Balance; provided, however, that, if the holder hereof has made any advance of monies under the terms of any instrument securing this Note, which the Borrower has not repaid, the holder hereof may, at its option, first apply any monies received from the Borrower to repayment of any such advance, plus interest thereon at the rate of twelve percent (12%) per annum, or at the maximum lawful rate upon the indebtedness evidenced hereby, if any, whichever is less (hereinafter called "Default Rate"), from the date of such advance, in such order as said holder may elect, and the balance, if any, shall be applied to any regularly scheduled, required, monthly payment of principal and interest then due, in the manner above provided. All interest payable hereunder shall be computed on the basis of a thirty (30) day month and a 360 day year.

Except when to the contrary expressly permitted by the Mortgage (as hereinafter defined), no prepayment of this Note, in addition to the regularly scheduled, required payments of principal and/or interest, may be made prior to the Maturity Date, except as

C:\WPWIN60\WPDOCS\LENDEREL\LUTH21\417-GOODING\RE.DOC
June 20, 1995

Correct Page
14753

1     as hereinafter provided.

2

3     During the first ten (10) years of the term hereof Borrower this Note shall be closed to
4     prepayment (the "Closed Period"), however, Borrower may, upon sixty (60) days prior
5     written notice, prepay ten percent (10%) of the outstanding principal balance, non-
6     cumulative, every year, without payment of a reinvestment charge.

7

8     Beginning with the eleventh (11th) Loan Year Borrower may, upon sixty (60) days prior
9     written notice, prepay this Note in full or in part on any regularly scheduled payment
10     date upon the payment of a reinvestment charge equal to five percent (5%) of the
11     outstanding balance of this Note declining one-half percent (1/2%) per Loan Year to a
12     one percent (1%) minimum in the last partial loan year and all times thereafter.

13

14     A Loan Year, for the purposes of this Note, is defined as a twelve (12) month period
15     commencing on the date the first regularly scheduled, required monthly payment of
16     principal and interest is due hereunder or any annual anniversary date thereof. Except
17     when to the contrary expressly provided by the Mortgage, in the event that the
18     indebtedness evidenced hereby becomes due as a result of the exercise by the holder
19     hereof of any right to declare all indebtedness evidenced hereby to be due and payable
20     in full, payment of said indebtedness shall be accompanied by payment of the
21     reinvestment charge specified above which would be applicable to a voluntary
22     prepayment then made, or if a prepayment is received during the Closed Period the
23     reinvestment charge due and owing from Borrower to Lender shall be ten percent
24     (10%). All prepayments may, at the option of Lender, be applied to advances made by
25     Lender under the terms of any instrument which secures or refers to this Note, together
26     with interest thereon at the Default Rate, and accrued interest, and to the Principal
27     Balance in such order as Lender may elect. If Lender elects to apply any such
28     prepayments to unpaid installments of the Principal Balance in the inverse order of
29     their maturity, said application shall not postpone, excuse or reduce the amount of the
30     other regularly scheduled, required monthly payments of principal and/or interest
31     payable hereunder.

32

33     In the event that any required payment of principal and/or interest is not made
34     within ten (10) days of the due date thereof, a late payment charge of four cents ($.04)
35     for each dollar ($1.00) so overdue may be charged by the holder hereof for the purpose
36     of defraying a portion of the expense incident to handling such overdue payment. In
37     the event that any such overdue payment is not made within one (1) month of the due
38     date thereof, an additional late payment charge of four cents ($.04) for each dollar
39     ($1.00) so overdue may be charged by the holder thereof for such purpose, and said
40     holder may charge an additional four cents ($.04) for each dollar ($1.00) so overdue for
41     each additional month, or fraction thereof, during which any such payment remains past
42     due. The foregoing late payment charges apply individually to each required payment
43     of principal and interest, which is past due, and once imposed will not be adjusted pro

47531

rata on a daily basis.

Notwithstanding any provision herein or in any instrument securing or referring to this Note contained, the total liability of the Borrower for payments in the nature of interest hereunder or thereunder shall not exceed interest at the maximum rate permitted by the laws of the State of Florida, if any, and any amount paid as interest in excess of said maximum rate shall not be deemed to be a payment of interest and shall be refunded to the Borrower.

Time is of the essence hereof. Notwithstanding any provision herein which may be construed to provide to the contrary, in the event of any default in the payment of any payment of principal and/or interest, or any part thereof, when due hereunder, in the event of any default in the payment of any other sum of money required to be paid hereunder, under the Mortgage or under any other instrument which secures or refers to this Note (hereinafter called "Other Loan Documents"), or in the event of any default in the performance of or compliance with any other covenant or condition of this Note or any other covenant or condition of the Mortgage or of any Other Loan Documents, then, in any such case, the entire Principal Balance, with all accrued interest, any late payment charges and any applicable reinvestment charge, shall, at The option of the holder hereof, become immediately due and payable, without notice, at the place of payment aforesaid. Failure to exercise this option, however often, shall not constitute a waiver of the right to exercise it thereafter; provided, however, that such option may not be exercised as to any given default subsequent to the correction of that default. From and after the date of occurrence of any such default, and from and after the Maturity Date, interest shall accrue on the Principal Balance at the Default Rate and shall be due and payable on the first day of each calendar month or on demand, at Lender's option; provided, however, that if all defaults are corrected and the indebtedness secured hereby is fully reinstated in accordance with Florida law, the interest payable thereon shall again be computed at the rate provided on page 1 of this Note, unless and until another default shall occur. Except as hereinafter expressly provided, no modification or amendment of the terms of this Note shall be effective unless made in a writing signed by the parties hereto.

Each Borrower, co-maker, endorser, surety and guarantor hereby guaranties payment of this Note, waives demand, presentment, notice of nonpayment, protest, notice of protest, notice of dishonor and diligence in collection and agrees that without any notice the holder hereof, alone or together with any present or future owner or owners of any property covered by the Mortgage or by any Other Loan Document (herein called "Mortgaged Property"), may from time to time extend, renew, or otherwise modify the date or dates or amount or amounts of payment above recited, or the holder hereof may from time to time waive any right it has hereunder, under the Mortgage or under any Other Loan Document and may release any part or parts of the

47531

Mortgaged Property from such Mortgage or Other Loan Documents, with or without consideration, and that, in any such case, each maker, co-maker, endorser, surety and guarantor shall continue to be liable to pay the unpaid balance of the indebtedness evidence hereby as so extended, renewed or modified, and notwithstanding any such waiver or release; and further agrees to pay all costs of collection, including court costs and a reasonable amount for attorneys' fees (including but not limited to court costs and reasonable attorneys' fees on appeal), in case any payment shall not be made when due, and all costs and expenses, including court costs and reasonable attorneys' fees (including court costs and reasonable attorneys' fees on appeal), incurred in protecting the security for this Note or in preserving the Mortgaged Property, or in exercising or defending, or in obtaining the right to exercise, the rights and remedies of Lender hereunder, under the Mortgage or under any Other Loan Document, whether suit be brought or not, and in probate, bankruptcy, insolvency, arrangement, reorganization, receivership and the debtor-relief proceedings, whether or not the holder hereof prevails therein, together with interest thereon at the Default Rate from and after the date of payment of any such costs, expenses and/or fees by said holder.

This Note is secured by that certain Leasehold Mortgage, Security Agreement, Financing Statement and Assignment of Subleases dated December 29, 1994, by Borrower in favor of Sun Bank, National Association ("Sun Bank"), recorded O.R. Book 1231, Page 2392, in the Public Records of Osceola County, Florida, as assigned to Lender pursuant to that certain Assignment of Loan Documents by Sun Bank in favor of the Lender dated as of the date hereof and as further modified by that certain First Modification of Leasehold Mortgage, Security Agreement, Financing Statement and Assignment of Subleases dated as of the date hereof, by and between Borrower and Lender, recorded in the Public Records of Osceola County, Florida (as assigned and modified, herein called "Mortgage") covering the Mortgaged Property, which is located in Osceola County, Florida, and by the Other Loan Documents.

THIS AMENDED AND RESTATED RENEWAL NOTE AMENDS, RESTATES AND RENEWS THAT CERTAIN NOTE (THE "ORIGINAL NOTE") IN THE PRINCIPAL AMOUNT OF $2,280,000.00, BY THE BORROWER IN FAVOR OF THE SUN BANK, NATIONAL ASSOCIATION, DATED DECEMBER 29, 1994, ON WHICH DOCUMENTARY STAMP TAX IN THE AMOUNT OF $7,980.00 HAS BEEN PAID, SAID ORIGINAL NOTE HAVING BEEN ASSIGNED BY SUN BANK TO LENDER.

THE BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AFTER CAREFUL CONSIDERATION AND AN OPPORTUNITY TO SEEK LEGAL ADVICE, WAIVES ITS RIGHT TO HAVE A TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY OF THE PROVISIONS OF THE MORTGAGE, THIS RENEWAL NOTE OR ANY OTHER DOCUMENTS EXECUTED IN CONJUNCTION WITH THE LOAN EVIDENCED BY THIS RENEWAL NOTE AND SECURED BY THE MORTGAGE.

47531

This Note is made with reference to and shall be construed in accordance with and governed by the laws of the State of Florida.

**GOODING'S SUPERMARKETS, INC.**, a
Florida corporation

By: _____

Print Name: _J. Leslie Goff_

As Its: _Vice President_

(CORPORATE SEAL)

47531

47531

MEL WILLS JR., CLERK OF THE CIRCUIT COURT - OSCEOLA CTY    BK  1260
.05/24/95  16:19    )E   FIED: MMK    INSTR #   95-05·    )·    PG  1613

Prepared by and return to:

Michael E. Wright, Esq.
SMITH, MACKINNON, HARRIS, GREELEY
BOWDOIN & EDWARDS, P.A.
Suite 800, Citrus Center
255 South Orange Avenue
P.O. Box 2448
Orlando, Florida 32802-2448

---

### FIRST MODIFICATION OF ASSIGNMENT OF SUBLEASES

**THIS FIRST MODIFICATION OF ASSIGNMENT OF SUBLEASES** (hereinafter called this "Modification"), made and entered into as of the _10th_ day of May, 1995 by **GOODING'S SUPERMARKETS, INC.,** a Florida corporation (hereinafter called the "Borrower"), whose address is 488 Montgomery Avenue, Altamonte Springs, Florida 32714, in favor of **LUTHERAN BROTHERHOOD**, a Minnesota corporation (hereinafter sometimes called "Lender"), or its assigns, at its office at 625 Fourth Avenue South, Minneapolis, Minnesota 55415, Attention: Investment Division.

### WITNESSETH:

**WHEREAS,** Borrower executed a Note dated December 24, 1994, in the principal sum of **TWO MILLION TWO HUNDRED EIGHTY THOUSAND AND NO/100ths DOLLARS ($2,280,000.00)** (the "Original Note") in favor of Sun Bank, National Association ("Sun Bank"), the repayment of which was and is secured by that certain Leasehold Mortgage, Security Agreement, Financing Statement and Assignment of Subleases dated December 29, 1994, by Borrower in favor of Sun Bank, recorded in Official Records Book 1231, Page 2429, in the Public Records of Osceola County, Florida, as assigned to Lender pursuant to that certain Assignment of Mortgage Loan Documents by Sun Bank in favor of the Lender dated as of the date hereof (hereinafter referred to as the "Assignment") and as further modified by that certain First Modification of Leasehold Mortgage, Security Agreement, Financing Statement and Assignment of Subleases dated as of the date hereof, by and between Borrower and Lender, recorded in the Public Records of Osceola County, Florida (as assigned and modified, herein called "Mortgage") encumbering the Borrower's leasehold estate created by that certain Ground Lease dated October 7, 1993 by and between Borrower and George Chen, Solely as Successor Trustee pursuant to that certain Deed To Successor Trustee recorded in O.R. Book 1064, Page 1639, Public Records of Osceola County, Florida, and under the

1  provisions of a certain Land Trust Agreement dated September 15, 1988, and not
2  individually, as the Lessor, in favor of Borrower, as Lessee, a memorandum of which is
3  recorded in O.R. Book 1214 Page 991, Public records of Osceola County, Florida
4  (collectively the "Ground Lease"), with respect to certain real estate situated in the
5  Osceola County, Florida, legally described in Exhibit "A" attached hereto and hereby made
6  a part hereof, and the building and improvements and certain fixtures, equipment,
7  machinery and personal property owned by the Borrower now or hereafter located thereon
8  (hereinafter collectively called the "Mortgaged Property"); and
9
10  **WHEREAS**, as additional security for the Note, the Borrower executed that certain
11  Assignment of Subleases dated December 29, 1994 in favor of Sun Bank, recorded in
12  Official Records Book 1231, Page 2429 (hereinafter referred to as the "Assignment of
13  Subleases"), in the Public Records of Osceola County, Florida, as assigned by Sun Bank
14  to Lender pursuant to the Assignment, pursuant to which the Borrower granted,
15  transferred, assigned, set over and delivered to the Sun Bank all of the Borrower's right,
16  title and interest in, to and under all leases, subleases, licenses, concessions, tenancies
17  and any other agreements creating the right of possession or the right of use without a
18  transfer of title, whether written or oral, now or hereafter existing, and covering all or any
19  part of the Mortgaged Property, together with any and all security deposits made
20  thereunder, all extensions, amendments, modifications, renewals and replacements of any
21  thereof, and any guaranties of the Sublessees (as defined in the Assignment of
22  Subleases) obligations under any Subleases (as defined in the Assignment of Subleases),
23  together with all of the rents, income, revenues, royalties, issues and profits, including,
24  without limitation, all amounts payable to the Borrower on account of maintenance, repairs,
25  taxes, insurance and common area or other charges by any other party to any Sublease,
26  and all amounts paid in compromise or in cancellation of Subleases by any party thereto
27  other than the Borrower, now or hereafter accruing or owing under or from Subleases or
28  otherwise from the Mortgaged Property or any part thereof, whether accruing before or
29  after foreclosure of the Mortgage or during any period of redemption therefrom (referred
30  to in the Assignment of Sublease as "Rentals").
31
32  **WHEREAS**, the Borrower has requested that the Lender renew and extend the Note
33  and the Mortgage on the terms and conditions set forth herein.
34
35  **NOW, THEREFORE**, in consideration of the mutual premises herein contained and
36  other good and valuable consideration, the receipt and sufficiency of which is hereby
37  acknowledged, Borrower and Lender agree as follows:
38
39  1.  Simultaneously herewith, the Borrower is executing and delivering to the
40  Lender that certain Renewal Promissory Note dated as of the date hereof in the original
41  principal amount of $2,280,000.00 (hereinafter referred to in this Agreement as the
42  "Renewal Note, and referred to in the Assignment of Subleases as the "Note"),

C:\WPWIN60\WPDOCS\LENDERS\LUTH21649-GOOD\SUBLEASE.DOC
May 6, 1995

2

| BOOK   1260   PAGE   1615 |

representing the outstanding principal balance of the Original Note as of the date hereof as set forth in paragraph 1 above.

2.     The Renewal Note shall be secured by the Mortgage and the Assignment of Subleases, as modified hereby, to the same extent as if the Renewal Note had been executed and delivered by the Borrower to the Lender on the date of the Mortgage and the Assignment of Subleases.

3.     Nothing herein contained shall be construed to impair the security of the Lender, or its successors or assigns hereunder, under the Mortgage, nor to impair any rights or powers which the Lender may have under or by virtue of the Renewal Note, the Mortgage or any of the other Loan Documents, for the recovery of monies due, with interest, and this Modification shall not be considered a novation.  Except as provided herein, no other term, condition or provision of the Assignment of Subleases as modified hereby shall be in any way altered or changed, and the Borrower hereby ratifies and confirms the Assignment of Subleases, as modified hereby, and its obligations thereunder, and agrees that it is and shall continue to be bound by all such terms, provisions and conditions of the Assignment of Subleases, as further modified and amended hereby.

4.     Article C, Section 1 of the Assignment of Subleases is hereby amended to correct the reference therein to Article I, Section 8 of the Mortgage to Article I, Section 9 of the Mortgage.

5.     Article C, Section 2 of the Assignment of Subleases is hereby amended to correct the reference therein to Article I, Section 13 of the Mortgage to Article I, Section 14 of the Mortgage.

6.     Article C, Section 7 of the Assignment of Subleases is hereby amended to correct the reference therein to Article I, Section 12 of the Mortgage to Article I, Section 13 of the Mortgage.

7.     Article C, Section 9 of the Assignment of Subleases is hereby amended in the following respect.

All notices to "Lender" under the Assignment of Subleases shall hereafter be delivered to:

**LUTHERAN BROTHERHOOD**
625 Fourth Avenue South
Minneapolis, Minnesota 55414
Attention: Investment Department

or to such other address as Lender shall notify Borrower pursuant to the terms of the Assignment of Subleases.

8.   Sun Bank is hereby replaced in the Assignment of Subleases, by Lender, as "Lender".

9.   THE BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AFTER CAREFUL CONSIDERATION AND AN OPPORTUNITY TO SEEK LEGAL ADVICE, WAIVES ITS RIGHT TO HAVE A TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY OF THE PROVISIONS OF THIS MODIFICATION, THE ASSIGNMENT OF SUBLEASES OR ANY OTHER DOCUMENTS EXECUTED IN CONJUNCTION WITH THE LOAN SECURED BY THIS MORTGAGE.

IN WITNESS WHEREOF, the parties hereto have duly executed this Modification as of the date first set forth above.

GOODING'S SUPERMARKETS, INC.,
a Florida corporation

By _____
Print Name: _Leslie Goff_
Print Title: _Vice President_

STATE OF FLORIDA
COUNTY OF _SEMINOLE_

The foregoing instrument was acknowledged before me this _10TH_ day of _MAY_, 1995, by _J. LESLIE GOFF_, as _VICE PRESIDENT_ of GOODING'S SUPERMARKETS, INC., a Florida corporation, on behalf of the corporation.

_____
Name: _THOMAS S. RELICAR_
Notary Public, State of _FLORIDA_
Personally Known ___✓___, or
Produced Identification _____
Type of Identification _____

OFFICIAL NOTARY SEAL
THOMAS S RECICAR
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC25...
MY COMMISSION EXP. JAN...

OFFICIAL NOTARY SEAL
THOMAS S RECICAR
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC250254
MY COMMISSION EXP. JAN. 20, 1997

C:\APP\WINDOW9\DOC\FILENSEAR\AUTH\21641\-GOODSUBLEASE.DOC
May 6, 1995

4

| BOOK 1260 PAGE 1617 |

GOODINGS LEASE AREA
LEGAL DESCRIPTION:
OF A 1.158 ACRE PARCEL EMBRACING A PORTION OF SECTION 3, TOWNSHIP 25 SOUTH, RANGE 27 EAST, OSCEOLA COUNTY, FLORIDA; BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE MOST SOUTHERLY CORNER OF TRACT "C", FORMOSA GARDENS REPLAT, AS RECORDED IN PLAT BOOK 8, PAGES 85 THROUGH
87 OF THE PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA; THENCE RUN SOUTH 38°43'49" WEST, A DISTANCE OF 391.80 FEET TO A
POINT; THENCE RUN SOUTH 06°46'50" EAST, A DISTANCE OF 69.47 FEET TO THE POINT OF BEGINNING; THENCE RUN SOUTH 83°13'10"
WEST, A DISTANCE OF 30.47 FEET TO A POINT; THENCE RUN NORTH 06°46'50" WEST, A DISTANCE OF 14.00 FEET TO A POINT; THENCE
RUN SOUTH 83°13'10" WEST, A DISTANCE OF 16.00 FEET TO A POINT; THENCE RUN SOUTH 06°46'50" EAST, A DISTANCE OF 14.00 FEET
TO A POINT; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 9.30 FEET TO A POINT; THENCE RUN NORTH 06°46'50" WEST, A
DISTANCE OF 8.50 FEET TO A POINT; THENCE RUN NORTH 51°48'50" WEST, A DISTANCE OF 26.80 FEET TO A POINT; THENCE RUN SOUTH
38°13'10" WEST, A DISTANCE OF 16.10 FEET TO A POINT; THENCE RUN SOUTH 06°46'50" EAST, A DISTANCE OF 158.75 FEET TO A
POINT; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 30.00 FEET TO A POINT; THENCE RUN SOUTH 06°46'50" EAST, A DISTANCE
OF 40.00 FEET TO A POINT; THENCE RUN NORTH 83°13'10" EAST, A DISTANCE OF 30.00 FEET TO A POINT; THENCE RUN SOUTH
06°46'50" EAST, A DISTANCE OF 62.20 FEET TO A POINT; THENCE RUN NORTH 83°13'10" EAST, A DISTANCE OF 192.90 FEET TO A
POINT; THENCE RUN NORTH 06°46'50" WEST, A DISTANCE OF 114.50 FEET TO A POINT; THENCE RUN NORTH 83°13'10" EAST, A
DISTANCE OF 8.00 FEET TO A POINT; THENCE RUN NORTH 40°37'16" WEST, A DISTANCE OF 11.45 FEET TO A POINT; THENCE RUN NORTH
06°54'25" WEST, A DISTANCE OF 61.78 FEET TO A POINT; THENCE RUN NORTH 53°42'58" WEST, A DISTANCE OF 11.35 FEET TO A
POINT; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 8.00 FEET TO A POINT; THENCE RUN NORTH 06°46'50" WEST, A DISTANCE
OF 53.10 FEET TO A POINT; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 108.79 FEET TO THE POINT OF BEGINNING.

Together with Ingress, egress, parking, and utility rights over the common areas of Formosa Gardens Shopping
Center and a portion of Lot 4, Formosa Gardens Replat, Plat Book 8, Pages 85-87, Public Records of Osceola
County, Florida, all as provided in that certain Ground Lease dated October 7, 1990, (as amended March 2,
1994, April 3, 1995, May 9, 1995, and May 18, 1995) a memorandum of which is recorded in Official Records
Book 1214, Page 991, Public Records of Osceola County, Florida.

## EXHIBIT "A"

MEL WILLS JR., CLERK OF THE CIRCUIT COURT - OSCEOLA CTY   BK  1260
05/24/95  16:19  V  ED: MMK  INSTR #  95-05265    PG  1618

## RELEASE OF GRANT OF EASEMENT

The undersigned, as owner of the real property which benefits from that certain non-exclusive Grant of Easement, dated October 11, 1984 and recorded October 12, 1984 in Official Records Book 757, Pages 2910-2913, Public Records of Osceola County, Florida, for and in consideration of the sum of $10.00 and other good and valuable considerations, the receipt whereof is hereby acknowledged, hereby releases any right, title and interest in, and hereby quit claims the same, that it may have had or now has in that non-exclusive Grant of Easement and states that it has not since October 11, 1984 to the date of this instrument in any way encumbered or in any way transferred any interest in and to the non-exclusive Grant of Easement to any other party.

IN WITNESS WHEREOF, the undersigned has caused this Release of Grant of Easement to be executed this _10_ day of May, 1995.

Witnesses:

Print Name: _Dwight I. Cool_

Print Name: _Michael E Wright_

By: _George Chen_

George Chen, Solely as Successor Trustee pursuant to that certain Deed To Successor Trustee recorded in O.R. Book 1064, Page 1639, Public Records of Osceola County, Florida, April 22, 1992, and under the provisions of a certain Land Trust Agreement dated September 15, 1988, and not individually

**STATE OF FLORIDA
COUNTY OF ORANGE**

The foregoing instrument was acknowledged before me this 10 day of May, 1995, by George Chen, Trustee.

Name: _____
Notary Public, State of Florida
Personally Known _____, OR
Produced Identification _____
Type of Identification _____

MICHAEL E. WRIGHT
Notary Public, State of Florida
My Comm. expires Aug. 26, 1996
Comm. No. CC139365

MEL WILLS JR., CLERK OF THE CIRCUIT COURT - OSCEOLA CTY. BK 1260
05/24/95 16:19 VEI I. MMK INSTR # 95-052651 } G 1607

Prepared by and return to:

Michael E. Wright, Esq.
**SMITH, MACKINNON, HARRIS, GREELEY**
**BOWDOIN & EDWARDS, P.A.**
Suite 800, Citrus Center
255 South Orange Avenue
P. O. Box 2448
Orlando, Florida 32802-2448

## FIRST MODIFICATION OF LEASEHOLD MORTGAGE

**THIS FIRST MODIFICATION OF LEASEHOLD MORTGAGE** ("Agreement"), made and entered into as of the _____ day of May, 1995 by **GOODING'S SUPERMARKETS, INC.**, a Florida corporation (hereinafter called the "Borrower"), whose address is 488 Montgomery Avenue, Altamonte Springs, Florida 32714, in favor of **LUTHERAN BROTHERHOOD**, a Minnesota corporation (hereinafter sometimes called "Lender"), or its assigns, at its office at 625 Fourth Avenue South, Minneapolis, Minnesota 55415, Attention: Investment Division.

## WITNESSETH:

**WHEREAS**, Borrower executed a Note dated December 29, 1994, in the principal sum of **TWO MILLION TWO HUNDRED EIGHTY THOUSAND AND NO/100ths DOLLARS ($2,280,000.00)** (the "Original Note") in favor of Sun Bank, National Association, a national banking association ("Sun Bank"), the repayment of which was and is secured by that certain Leasehold Mortgage, Security Agreement, Financing Statement and Assignment of Subleases dated December 29, 1994, by Borrower in favor of Sun Bank, recorded in Official Records Book 1231, Page 2392, in the Public Records of Osceola County, Florida, as assigned to Lender pursuant to that certain Assignment of Mortgage Loan Documents by Sun Bank in favor of Lender dated as of the date hereof (herein called "Mortgage") encumbering the Borrower's leasehold estate created by that certain Ground Lease dated October 7, 1993 as amended by amendments thereto dated March 2, 1994, April 3, 1995, May 9, 1995 (which revised the legal description of the demised premises as described on exhibit "A" attached hereto), and May 18, 1995 by and between Borrower and George Chen, Solely as Successor Trustee pursuant to that certain Deed To Successor Trustee recorded in O.R. Book 1064, Page 1639, Public Records of Osceola County, Florida, and under the provisions of a certain Land Trust Agreement dated September 15, 1988, and not individually, as the Lessor, in favor of Borrower, as Lessee, memorandums of which are recorded in O.R. Book 1214 Page 991, and O.R. Book ____, Page ____, both in the Public records of Osceola County, Florida

C:\WP\GOODINGS\LENDER\LUTH31LAN\GOODWGHTGAGE.DOC
May 23, 1995

(collectively the "Ground Lease"); and

**WHEREAS**, the Borrower has requested that Lender renew and extend the Original Note and the Mortgage on the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual premises herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower and Lender agree as follows:

1.    The outstanding principal balance of the Original Note as of the date hereof is $2,280,000.00, and all accrued interest thereon is paid through the date hereof.

2.    Simultaneously herewith, the Borrower is executing and delivering to the Lender that certain Renewal Note dated as of the date hereof in the original principal amount of $2,280,000.00 (hereinafter referred to in this Agreement as the "Renewal Note, and referred to in the Mortgage on and after the date hereof as the "Note"), representing the outstanding principal balance of the Original Note as of the date hereof as set forth in paragraph 1 above. The final maturity date of the Renewal Note and the Mortgage are hereby extended to a date as set forth in the Renewal Note. The maturity date of the Renewal Note and the Mortgage is March 1, 2013.

3.    The Renewal Note shall bear interest and shall be due and payable in accordance with its terms.

4.    The Renewal Note shall be secured by the Mortgage to the same extent as if the Renewal Note had been executed and delivered by the Borrower to the Lender on the date of the Mortgage.

5.    By execution hereof, the Borrower acknowledges and agrees that the amounts set forth in paragraph 1 (the "Amount Due") above is absolutely and unconditionally due and owing to the Lender pursuant to the Note (and the Renewal Note now evidencing the Amount Due), the Mortgage and the other related loan and security documents (collectively, the "Loan Documents"), each and all of which Loan Documents and the rights and remedies granted to the Lender thereunder, are valid and fully binding upon and enforceable against the Borrower in accordance with their respective terms. The Borrower further acknowledges and agrees, as of the date hereof, that the Borrower is not entitled to and will not at any time assert any claim, counterclaim, defense, affirmative defense or right of set off or recoupment which arise out of facts which are in existence on or before the date hereof against the Lender, or any of its officers, directors, employees, agents, successors and assigns, with regard to the Loan Documents or the enforcement of any of the rights and remedies of the Lender whatsoever thereunder, and the Borrower hereby releases, waives and surrenders any and all such claims, counterclaims, defenses,

2

affirmative defenses and rights of set-off or recoupment whatsoever, relating to acts, events, conduct or other matters whatsoever occurring at or prior to the date hereof, that the Borrower might otherwise have been entitled to assert or allege against the Lender for any reason, including but not limited to, any matter related to, connected with, arising out of or regarding the payment of the Amounts Due, or the enforcement of the provisions of the Loan Documents.

6.      Nothing herein contained shall be construed to impair the security of the Lender, or its successors or assigns, under the Mortgage, nor to impair any rights or powers which the Lender may have under or by virtue of the Renewal Note, the Mortgage or any of the other Loan Documents, for the recovery of monies due, with interest, and this Agreement shall not be considered a novation.  Except as provided herein, no other term, condition or provision of the Mortgage shall be in any way altered or changed, and the Borrower hereby ratifies and confirms the Mortgage, as modified herein, and its obligations thereunder, and agrees that it is and shall continue to be bound by all such terms, provisions and conditions of the Mortgage, as further modified and amended hereby.

7.      Lender is hereby substituted for Sun Bank, as Lender in the Mortgage and all of the Loan Documents.

8.      The following paragraph is hereby added to the Mortgage:

The loan secured hereby has been made pursuant to a commitment letter from the Lender to the Borrower, dated November 22, 1994, and amendments thereto dated March 31,1995, April 17, 1995 and April 28, 1995, and as further amended or modified from time to time (hereinafter referred to as the "Commitment").  The terms of the Commitment have survived the closing of said loan by Lender as evidenced by the execution hereof, and the terms of the Commitment are hereby incorporated herein by reference and made a part hereof, to the extent not directly inconsistent herewith, and to the same extent as if fully set forth herein.  Any default by the Borrower under the terms of the Commitment shall be an Event of Default hereunder.

9.      Article IV, Section 3 and Section 8 of the Mortgage is hereby amended by deleting the reference to Sun Bank, National Association and its address and replacing it with the following:

**LUTHERAN BROTHERHOOD**
625 Fourth Avenue South
Minneapolis, Minnesota  55414
Attention: Investment Department

or to such other address as Lender shall notify Borrower pursuant to the terms of the Assignment of Subleases.

10. There shall be added to Article I, a new Section 17 of the Mortgage by inserting the following, to wit:

Section 17 In the event Borrower ceases business operations in the Premises (as that term is defined in the Ground Lease) as contemplated in Paragraph 25(E) of the Ground Lease or otherwise vacates the Premises, Borrower covenants that it will (i) provide Lender written notice of such cessation of business activities thirty (30) calendar days prior to the the the effective date thereof, and immediately (but in no event less than five (5) business days thereof) provide notice to Lender upon Borrower's receipt of any notice from the Ground Lessor that Ground Lessor has elected to terminate the Ground Lease. Borrower hereby assigns and transfers to Lender, Borrower's right to receive all payments due under the Ground Lease resulting from Ground Lessor's election to terminate the Ground Lease or otherwise[1], and agrees to execute or cause to be executed any documents or notices necessary to insure that any sums payable to the Borrower under the Ground Lease by the Ground Lessor are instead paid to Lender as the result of any termination of the Ground Lease by the Ground Lessor. Furthermore, all sums due under the terms of the Note and this Mortgage shall become immediately due and payable upon (i) Ground Lessor's notification to Lender or Borrower of Ground Lessor's intent to terminate the Ground Lease, or (ii) receipt by Lender of any notice from Ground Lessor that Ground Lessor claims a right of set off against or a defense to payment of any sum due from Ground Lessor to Borrower under the Ground Lease which is not withdrawn by Ground Lessor by written notice from Ground Lessor to Lender within the applicable notice and cure periods provided for in Article III, Section 1(e), unless the right of setoff or defense constitutes a default under the Ground Lease, which in said event Article III, Section 1(c) shall apply, and such default under the Ground Lease shall constitute an Event of Default under this Mortgage..

11. **THE BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AFTER CAREFUL CONSIDERATION AND AN OPPORTUNITY TO SEEK LEGAL ADVICE, WAIVES ITS RIGHT TO HAVE A TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY OF THE**

[1]With respect to such sums payable, Lender shall hold all such sums in escrow upon receipt thereof and shall upon satisfaction of the sums due under the Note and the Mortgage, shall immediately remit the balance thereof to Borrower.

| BOOK 1260 PAGE 1611 |

PROVISIONS OF THE MORTGAGE, THE RENEWAL NOTE OR ANY OTHER DOCUMENTS EXECUTED IN CONJUNCTION WITH THE LOAN SECURED BY THE MORTGAGE.

12. Documentary stamp taxes in the amount of $7,980.00 were paid on the recordation of the Mortgage and accordingly none are due hereon because the Renewal Note is from the same obligor as the Note.

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement as of the date first set forth above.

GOODING'S SUPERMARKETS, INC.,
a Florida corporation

By: _____
Print Name: J. Leslie Goff
Print Title: Vice President

STATE OF FLORIDA

COUNTY OF Orange

The foregoing instrument was acknowledged before me this 19th day of May, 1995, by Les Goff, as Vice President of **GOODING'S SUPERMARKETS, INC.,** a Florida corporation, on behalf of the corporation.

_____
Name _____
Notary Public, State of Florida
Personally Known _____, or
Produced Identification _____
Type of Identification _____

MICHAEL E. WRIGHT
Notary Public, State of Florida
My Comm. expires Aug. 26, 1995
Comm. No. CC139365

MICHAEL E. WRIGHT
Notary Public, State of Florida
My Comm. expires Aug. 26, 1995
Comm. No. CC139365

5

GOODINGS LEASE AREA
LEGAL DESCRIPTION:

OF A 1.158 ACRE PARCEL EMBRACING A PORTION OF SECTION 3, TOWNSHIP 25 SOUTH, RANGE 27 EAST, OSCEOLA COUNTY, FLORIDA; BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE MOST SOUTHERLY CORNER OF TRACT "C", FORMOSA GARDENS REPLAT, AS RECORDED IN PLAT BOOK 8, PAGES 85 THROUGH 87 OF THE PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA; THENCE RUN SOUTH 38°43'49" WEST, A DISTANCE OF 391.80 FEET TO A POINT; THENCE RUN SOUTH 06°46'50" EAST, A DISTANCE OF 69.47 FEET TO THE POINT OF BEGINNING; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 30.47 FEET TO A POINT; THENCE RUN NORTH 06°46'50" WEST, A DISTANCE OF 14.00 FEET TO A POINT; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 16.00 FEET TO A POINT; THENCE RUN SOUTH 06°46'50" EAST, A DISTANCE OF 14.00 FEET TO A POINT; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 9.30 FEET TO A POINT; THENCE RUN NORTH 06°46'50" WEST, A DISTANCE OF 8.50 FEET TO A POINT; THENCE RUN NORTH 51°46'50" WEST, A DISTANCE OF 28.80 FEET TO A POINT; THENCE RUN SOUTH 38°13'10" WEST, A DISTANCE OF 16.10 FEET TO A POINT; THENCE RUN SOUTH 06°46'50" EAST, A DISTANCE OF 168.75 FEET TO A POINT; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 30.00 FEET TO A POINT; THENCE RUN SOUTH 06°46'50" EAST, A DISTANCE OF 40.00 FEET TO A POINT; THENCE RUN NORTH 83°13'10" EAST, A DISTANCE OF 30.00 FEET TO A POINT; THENCE RUN SOUTH 06°46'50" EAST, A DISTANCE OF 62.20 FEET TO A POINT; THENCE RUN NORTH 83°13'10" EAST, A DISTANCE OF 192.90 FEET TO A POINT; THENCE RUN NORTH 06°46'50" WEST, A DISTANCE OF 114.50 FEET TO A POINT; THENCE RUN NORTH 83°13'10" EAST, A DISTANCE OF 8.00 FEET TO A POINT; THENCE RUN NORTH 40°37'16" EAST, A DISTANCE OF 11.45 FEET TO A POINT; THENCE RUN NORTH 06°54'25" WEST, A DISTANCE OF 61.78 FEET TO A POINT; THENCE RUN NORTH 53°42'58" WEST, A DISTANCE OF 11.33 FEET TO A POINT; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 8.00 FEET TO A POINT; THENCE RUN NORTH 06°46'50" WEST, A DISTANCE OF 53.10 FEET TO A POINT; THENCE RUN SOUTH 83°13'10" WEST, A DISTANCE OF 106.79 FEET TO THE POINT OF BEGINNING.

Together with ingress, egress, parking, and utility rights over the common areas of Formosa Gardens Shopping Center and a portion of Lot 4, Formosa Gardens Replat, Plat Book 8, Pages 85-87, Public Records of Osceola County, Florida, all as provided in that certain Ground Lease dated October 7, 1990, (as amended March 2, 1994, April 3, 1995, May 9, 1995, and May 18, 1995) a memorandum of which is recorded in Official Records Book 1214, Page 991, Public Records of Osceola County, Florida.

# EXHIBIT "A"

▶47531

This Instrument was Prepared by:

Dean L. Bussey, Esq.
Lutheran Brotherhood
625 Fourth Avenue South
Minneapolis, MN 55415

LB Loan File No. 47531

Once recorded please return to:
Michael E. Wright, Esq.
Gray, Harris & Robinson, P.A.
301 E. Pine Street, Suite 1400
Orlando, Florida 32801

LARRY WHALEY                                    9P
OSCEOLA COUNTY, FLORIDA
CLERK OF CIRCUIT COURT

CL 2001057161            OR 1866/2988
LGJ Date 05/02/2001     Time 10:05:39

DOC STAMPS:                    6,900.60

---

*[Above space reserved for Recording Information]*

## ASSUMPTION AGREEMENT

THIS ASSUMPTION AGREEMENT ("**Agreement**") is made as of the 12th day of October, 2000 ("**Effective Date**"), by and among WINN-DIXIE STORES, INC., a Florida corporation ("**Assuming Borrower**"), GOODING'S SUPERMARKET, INC., a Florida corporation ("**Original Borrower**"), and LUTHERAN BROTHERHOOD, a Minnesota corporation ("**Lender**").

## RECITALS

A.  Original Borrower and Sun Bank, National Association, a national banking association ("**Original Lender**") entered into that certain Loan Agreement dated December 29, 1994 ("**Original Loan Agreement**").

B.  Lender is the holder for value of that certain Note made by Original Borrower in favor of Original Lender dated December 29, 1994, in the original principal amount of Two Million Two Hundred Eighty Thousand and no/100ths Dollars ($2,280,000.00) ("**Original Note**").

C.  The Original Note was secured, among other things, by that certain Leasehold Mortgage, Security Agreement, Financing Statement and Assignment of Subleases dated December 29, 1994, from Original Borrower, as mortgagor, in favor of Original Lender, as mortgagee, and recorded on January 3, 1995, in O.R. Book 1231, Page 2392, Public Records of Osceola County, Florida, as Instrument No. 95-000324, and also recorded on January 12, 1995, in O.R. Book 2870, Page 1453, Public Records of Seminole County, Florida ("**Original Mortgage**").

#31127

1

D.  The Original Mortgage covers and encumbers the leasehold interest in the real property legally described on Exhibit A attached hereto, together with all improvements, appurtenances, hereditaments and other property related thereto as more fully described in the Original Mortgage ("**Property**").

E.  The Original Note was further secured, among other things, by that certain Assignment of Subleases dated December 29, 1994, from Original Borrower, as assignor, to Original Lender, as assignee, recorded in O.R. Book 1231, Page 2429, Public Records of Osceola County, Florida ("**Original Assignment**").

F.  The security interests created by the Original Mortgage and the Original Assignment were perfected, in part, by the filing of that certain UCC Financing Statement executed by Original Borrower, as debtor, to Original Lender, as secured party, recorded on January 18, 1995, in the UCC Records of the Florida Secretary of State as Document No. 950000010478, as assigned to Lender by that certain UCC Financing Statement executed by Original Lender, as assignor, to Lender, as secured party assignee, recorded on May 26, 1995, in the UCC Records of the Florida Secretary of State as Document No. 950000106627, together with any other related UCC Financing Statements that may have been filed in Osceola County, Florida and/or Seminole County, Florida ("**Financing Statements**").

G.  The Loan Agreement, the Original Note, the Original Mortgage, and the Original Assignment were assigned to Lender by that certain Assignment of Mortgage Loan Documents dated May 4, 1995, from Original Lender, as assignor, to Lender, as assignee, recorded on May 24, 1995, in O.R. Book 1260, Page 1605, Public Records of Osceola County, Florida.

H.  The Original Loan Agreement was amended and restated in its entirety by that certain Amended and Restated Loan Agreement dated May 19, 1995, entered into by and between borrower, as borrower, and Lender, as lender ("**Amended and Restated Loan Agreement**").

I.  The Original Note has been amended and restated in its entirety by that certain Renewal Note of Original Borrower dated May, 1995, in the original principal amount of Two Million Two Hundred Eighty Thousand and no/100ths Dollars ($2,280,000.00) ("**Renewal Note**"). The "**Original Note**" and the "**Renewal Note**" is hereinafter referred to as the "**Note**".

J.  The Original Mortgage has been modified and amended by that certain First Modification of Leasehold Mortgage dated May, 1995, executed by Original Borrower and Lender, recorded on May 24, 1995, in O.R. Book 1260, Page 1607, Public Records of Osceola County, Florida ("**First Mortgage Amendment**"). The "**Original Mortgage**" as modified by the "**First Mortgage Amendment**" is hereinafter collectively referred to as the "**Mortgage**".

CL 2001057161          OR 1866/2990

K.  The Original Assignment has been modified and amended by that certain First Modification of Assignment of Subleases dated May 10, 1995, executed by Original Borrower, as borrower, and Lender, as lender, recorded on May 24, 1995, in O.R. Book 1260, Page 1613, Public Records of Osceola County, Florida ("**First Assignment Amendment**"). The "**Original Assignment**" as modified by the "**First Assignment Amendment**" is hereinafter collectively referred to as the "**Assignment**".

L.  The Original Borrower wishes to sell, transfer and assign its leasehold interest in the Property to the Assuming Borrower, and the Original Borrower and the Assuming Borrower have requested that the Lender consent to the transfer of the leasehold interest in the Property to the Assuming Borrower ("**Transfer**"), upon the following conditions and with the following understandings as set forth below.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.  The Original Borrower and the Assuming Borrower represent, warrant and agree that the foregoing recitals are true and accurate and shall constitute a part of this Agreement.

2.  The Original Borrower and the Assuming Borrower represent, warrant and agree that (a) the Amended and Restated Loan Agreement, the Note, the Mortgage, and the Assignment of Subleases ("**Loan Documents**") are and constitute valid, binding agreements of the Assuming Borrower, enforceable against Assuming Borrower in accordance with their respective terms, without right of offset, defense or counterclaim thereto; and (b) the Loan Documents create a first lien against, and security interest in, the leasehold estate in the Property, subject to no other encumbrances except (i) current taxes and assessments, if any, which may constitute a lien against the Property but which are not due and payable at the present time, (ii) those Permitted Encumbrances described in the Mortgage, and (iii) such other exceptions as may have been agreed to in writing by Lender.

3.  The Assuming Borrower hereby agrees, from and after the Effective Date, to pay to Lender all sums, amounts and obligations coming due under the Loan Documents from time to time, commencing on the Effective Date, according to the terms thereof, and hereby assumes all of the liabilities, covenants, undertakings and obligations of the Original Borrower under the Loan Documents, with the same effect as if the Assuming Borrower had originally executed and been a party to each of such Loan Documents. The Assuming Borrower represents and warrants to Lender that the Assuming Borrower possesses and has carefully reviewed complete and accurate copies of all Loan Documents.

4.  Lender hereby consents to the Transfer of the Property to Assuming Borrower in accordance with the terms of this Agreement.

#31127

3

CL 2001057161  OR 1866/2991

5.  The Original Borrower and the Assuming Borrower agree that this Agreement shall not modify the Loan Documents and that all of the Property described in the Mortgage shall remain in all respects subject to the lien or charge thereof; and nothing herein contained, and nothing done pursuant hereto, shall affect or be construed as affecting the lien or charge of the Mortgage, or the priority thereof over other liens or charges, nor, to release or affect the liability of any party or parties who may now or hereafter be liable under or on account of the Loan Documents, including without limitation, the Original Borrower and/or the Assuming Borrower.  The foregoing notwithstanding, by amending and restating the Original Loan Agreement, Lender confirms and agrees that the cross-default provisions contained in section 9.14 of the Original Loan Agreement are of no further force and effect and do not affect any other loans that have been made by Lender to Original Borrower

6.  Both the Original Borrower and the Assuming Borrower represent and warrant that the covenants and agreements set forth in the Loan Documents are true, correct and are hereby reconfirmed as of the date hereof.

7.  As an inducement to the Lender for agreeing to this assumption by Assuming Borrower, each of the Original Borrower and the Assuming Borrower makes the following representations and warranties unto the Lender, its successors and assigns (each such representation being made as to itself and not as to the other borrower), and confirms said representations as current and valid:

    a.  Neither the Original Borrower nor the Assuming Borrower has received any notice of any actions, suits or proceedings (and to the best knowledge of the Original Borrower and the Assuming Borrower, they are not aware of any threatened actions, suits or proceedings) against or affecting the Original Borrower or the Assuming Borrower or any of their respective partners or members before any court or any governmental department or agency, which may result in any material adverse change in the business or financial condition of the Original Borrower or the Assuming Borrower.  The Original Borrower and the Assuming Borrower have complied with all material applicable statutes and regulations of all governmental authorities having jurisdiction over them and are not in default with respect to any order, writ, injunction or decree of any court, or governmental department or agency.

    b.  The execution and delivery of this Agreement (and the deed and other assignment documents by the Original Borrower to the Assuming Borrower) by the Original Borrower and the Assuming Borrower, as the case may be, will not conflict with or result in a breach of the terms, conditions or provisions of, or constitute a default under any agreement of the Original Borrower or the Assuming Borrower, or any agreement or other instrument to which the Original Borrower or the Assuming Borrower is a party or by which the Original Borrower or the Assuming Borrower is bound, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon the Property.

#31127

4

CL 2001057161          OR 1866/2992

c.   Upon the execution of this Agreement, the loan evidenced by the Note is in good standing and not in default in any respect and no default under the Mortgage or the Assignment has occurred and is continuing (or with notice and/or time would exist and be continuing).

d.   This Agreement has been duly and validly authorized, executed and delivered on behalf of the Original Borrower and the Assuming Borrower and this Agreement and the Loan Documents are, and shall remain, valid, binding and enforceable obligations of each of the Original Borrower and the Assuming Borrower in accordance with their terms.

8.   The Original Borrower and the Assuming Borrower, by execution of this Agreement, further acknowledge that the Lender has not waived any of its rights under the Loan Documents by negotiating and entering into this Agreement.

9.   Without limiting the generality of any of the liabilities and obligations assumed by the Assuming Borrower hereby, the Lender, the Original Borrower and the Assuming Borrower agree (a) that, from and after the Effective Date, wherever the terms "undersigned" or "maker" appear in the Note, such references shall mean, in lieu of Original Borrower, the Assuming Borrower, and (b) that wherever the term "borrower" appears in the Amended and Restated Loan Agreement, the Mortgage, and/or the Assignment, such reference shall mean, in lieu of the Original Borrower, the Assuming Borrower.

10.   This Agreement may be executed in any number of counterparts, and each such counterpart, after counterparts are executed by each of the parties hereto, shall constitute one and the same agreement.

11.   It is agreed that, as of the date hereof, neither the Original Borrower nor the Assuming Borrower has any defenses or offsets against the indebtedness evidenced by the Note or the Mortgage.

12.   This Agreement shall bind and inure to the benefit of the parties hereto and their heirs, personal representatives, successors, assigns and the subsequent holders or owners of the Loan Documents.

13.   This Agreement shall be governed by and construed in accordance with the laws of the State in which the Property is located.

*[The remainder of this page is intentionally left blank. Signatures are on the following page.]*

#31127

5

CL 2001057161          OR 1866/2993

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

ASSUMING BORROWER:                    WINN-DIXIE STORES, INC.

By: _Dennis M. Sheehan_

Its: _Senior Vice President_

Address: _5050 Edgewood Court_
         _Jacksonville, FL 32254_


STATE OF _Florida_ )
                   ) ss
COUNTY OF _Duval_ )

The foregoing instrument was acknowledged before me this _13_ day of October, 2000, by _Dennis M. Sheehan_ as _Senior Vice President_ of Winn-Dixie Stores, Inc., a Florida corporation, on behalf of such corporation.

Witness my hand and official seal.

Notary Public

Print: _Alan C. Sheppard, Jr._

My Commission Expires: _Sept. 16, 2001_

ALAN C. SHEPPARD, JR.
Notary Public, State of Florida
My comm. expires Sept. 16, 2001
Comm. No. CC 675696

#31127

6

CL 2001057161          OR 1866/2994

**ORIGINAL BORROWER:**                    GOODING'S SUPERMARKET, INC.,
                                          a Florida corporation

                                          By: _Russell Doerk_
                                          Its: _President + COO_

                                          Address: _Gooding's Supermarkets Inc._
                                                   _3719 Aloma Blvd_
                                                   _Aloma Fl  32803_

STATE OF _Florida_ )
                   ) ss
COUNTY OF _Orange_ )

The foregoing instrument was acknowledged before me this _19th_ day of October, 2000, by _Russell Doerk_, the _President_ of Gooding's Supermarket, Inc., a Florida corporation, on behalf of such corporation.

                                          _[signature]_
                                          Notary Public
                                          Print:                William S. Vanas
                                                      MY COMMISSION # CC899483 EXPIRES
                                                             January 3, 2004
                                          My Commission Expires: _____

#311127

7



# Osceola County Property Appraiser

www.property-appraiser.org

Beaumont Government Complex 350 N. Beaumont Ave. Kissimmee, Florida 34741
P:(407)343-3700 F:(407)343-3708

## Parcel Detail

### Owner Information

| | |
|---|---|
| Parcel | 032527320000010040 |
| | CHEN GEORGE TR |
| Mailing Address | 7836 W IRLO BRONSON HWY |
| | KISSIMMEE , FL 34747 |
| Physical Address | **7858 W IRLO BRONSON MEM H** |
| Tax District | 300 |
| Description | COMMUNITY SHOP-IMP |
| Legal | FORMOSA GARDENS REPLAT PB 85-87 LOT 4 |

### Current Values

Current Value represents working appraised values as of 4/17/2005, which are subject to change prior to certification

| | |
|---|---|
| Land | $699,100.00 |
| AG | $0.00 |
| Extra Features | $0.00 |
| Buildings | $1,527,200.00 |
| Appraised (Just) | $1,527,200.00 |
| Assessed* | $1,527,200.00 |
| Exempt | $0.00 |
| Taxable | **$1,527,200.00** |

\* Assessed Values Reflect Adjustments for Agricultural Classification and/or the Save Our Homes Cap

### Certified Values

Certified Value represents certified values that appeared on the tax as of 10/21/2004

| | |
|---|---|
| Land | $699,100.00 |
| AG | $0.00 |
| Extra Features | $0.00 |
| Buildings | $1,527,200.00 |
| Appraised (Just) | $1,527,200.00 |
| Assessed* | $1,527,200.00 |
| Exempt | $0.00 |
| Taxable | **$1,527,200.00** |

\* Assessed Values Reflect Adjustments for Agricultural Classificati and/or the Save Our Homes Cap

### Sales Information    More

| Seq# | Legal | Price | Date | Deed Type |
|---|---|---|---|---|

### Building Information    More

| Description | Year Built | Area | Value | Roof | Wall |
|---|---|---|---|---|---|
| STORE | 1995 | 630 | $1,527,200.00 | CEMNT TILE | CB STUCCO |
| STORE | 1996 | 15478 | | B-U MTL/GP | CB STUCCO |

### Land Information    More

| Description | Units | Units Type | Value | Frontage | Depth |
|---|---|---|---|---|---|
| COM DE SQ | 64730 | SF | $699,084.00 | 64730 | |

### Extra Features Information    More

| Description | Year Built | Value | Units | Unit Type |
|---|---|---|---|---|

**Please Note:** The Osceola County Property Appraiser makes every effort to produce and publish the most current and accurate information possible. No warra expressed or implied, are provided for the data herein, its use, or its interpretation. The assessment maps are NOT certified maps and therefore are subject to cl The current assessed values as viewed herein are not certified values and are subject to change.