**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER UNDER 11 U.S.C. §§ 105, 363 AND 364**
**(I) AUTHORIZING AND APPROVING POST-PETITION**
**PREMIUM FINANCE AGREEMENT BETWEEN DEBTORS**
**AND AFCO PREMIUM CREDIT LLC AND (II) GRANTING RELATED RELIEF**

These cases came before the Court for hearing on May 19, 2005, upon the motion

of Winn-Dixie Stores, Inc. and certain of its subsidiaries, debtors and debtors-in-possession in

the above-captioned cases (collectively, the "Debtors")[1], for entry of an order under 11 U.S.C. §§

105, 363 and 364 authorizing and approving the Debtors' entry into a post-petition commercial

premium finance agreement attached hereto as Exhibit A (the "Agreement") with AFCO

Premium Credit LLC ("AFCO") and granting related relief (the "Motion"). The Court has

reviewed the Motion, considered the evidence and heard the argument of counsel. After due

deliberation and finding proper notice has been given, the Court determines that good cause

exists to grant the relief and that granting the relief is in the best interest of these estates and

creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.      Pursuant to section 364(c)(2) of the Bankruptcy Code, the Debtors are

authorized to enter into the Agreement.

2.      AFCO is granted a first and only priority security interest in:

---

[1]      All capitalized terms not otherwise defined shall have the meaning ascribed to them in the Motion.

(a)    any and all unearned premiums and dividends which may become payable under the Policies for whatever reason; and

(b)    loss payments which reduce the unearned premiums, subject and subordinate to (i) any beneficiary, mortgagee, landlord or loss payee interests and (ii) the senior rights of the Debtors' postpetition secured lender.

3.    The Debtors are authorized to pay AFCO all sums due pursuant to the Agreement with respect to the Policies.

4.    The complete rights of AFCO pursuant to the Agreement and controlling state law are fully preserved and protected and are and shall remain unimpaired by the pendency of the Debtors' bankruptcy case or any subsequent conversion of such proceeding to a Chapter 7 or any subsequent appointment of a trustee. Except as set forth in this Order, the Debtors' rights are not waived, prejudiced, or forfeited in any manner, and are reserved for the benefit of the estates.

5.    In the event that the Debtors default upon any of the terms of the Agreement, then, upon not less than ten days' written notice to (a) the Debtors and its counsel, (b) counsel for the Creditors' Committee (via facsimile c/o Matthew Barr, Milbank, Tweed, Hadley & McCloy LLP (212) 822-5194), (c) counsel to the Debtors' post-petition secured lender (via facsimile c/o Jonathan N. Helfat, Otterbourg, Steindler, Houston & Rosen, P.C., (212) 682-6104), and (d) the U.S. Trustee (via facsimile c/o Elena Escamilla, (407) 648-6323), the automatic stay shall be modified without further application to (or order by) the Court unless the Debtors cure the default within such ten-day period. In addition, in that event, AFCO may exercise such rights as it may otherwise have under state law, but for the pendency of the Debtors' bankruptcy cases and, without the necessity of further application to the Bankruptcy Court. These rights include the right to cancel all Policies listed on the Agreement or any amendment thereto, and receive and apply all unearned insurance premiums to the account of the Debtors. In the event

2

that, after such application of unearned premiums, any sums still remain due to AFCO pursuant

to the Agreement, such deficiency shall be deemed an administrative expense of the Debtors'

estates under 11 U.S.C. § 503(b). In the event that, after such application of unearned premiums,

there are any funds in excess of the sum then due that are obtained by AFCO, AFCO shall pay to

the Debtors such excess amount.

6.     The Debtors are authorized, without further order, to enter into additional

premium finance agreements having substantially similar terms to the Agreement as necessary

during the remaining pendency of these cases, on the condition that (a) the Debtors provide

notice thereof to the U.S. Trustee (via facsimile c/o Elena Escamilla, (407) 648-6323), counsel

for the Creditors' Committee and counsel for the Debtors' post-petition secured lender, and (b)

such notice parties indicate their approval of the new agreements by not objecting thereto within

ten business days of receipt of the notice. In the event of any objection from the notice parties,

the Debtors shall proceed with the new agreements only if approved by subsequent order of this

Court. It should be recognized that an additional premium finance agreement sought to be

approved under this provision may satisfy the "substantially similar" test outlined in the Motion,

notwithstanding that the type and duration of coverage as well as the premium payable and

repayment terms contained in any such additional agreements vary in certain respects from the

Agreement.

7.     Notwithstanding anything to the contrary contained in the Agreement (and

each premium financing agreement subsequently authorized under this Order), AFCO shall only

have a first priority lien in and upon the unearned premiums arising under the insurance policies

financed by AFCO as authorized by this Order and the dividends relating exclusively to such

unearned premiums. Except as set forth in the preceding sentence, nothing contained in this

Order or otherwise, including, without limitation, the Agreement, shall, or shall be construed to, limit, subordinate or adversely affect in any way (i) the liens, if any, rights, claims and/or priorities granted to any beneficiary, mortgagee or landlord, under (a) any loan document including, without limitation, a mortgage, deed of trust or note, and/or any lease document (as the same may hereafter be amended, modified or extended) related to any of the Debtors' store locations and (b) any applicable law or otherwise; and (ii) any of the liens, rights, claims and/or priorities granted to Wachovia Bank, N.A., as agent ("Agent") for the Debtors' secured post-petition lenders (collectively, "Lenders"), under (a) the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral, and Granting Adequate Protection, (III) Authorizing Debtors to Pay In Full all Claims of Debtors' Pre-Petition Secured Lenders, and (IV) Prescribing Form and Manner of Notice and Time for Final Hearing, dated March 23, 2005 (Docket No. 501) (as the same may hereafter be amended, modified or extended, the "Financing Order"), the Loan Documents (as defined in the Financing Order) and (b) any applicable law or otherwise.

       8.    The costs underlying the payments made under the Agreement will be reconciled and allocated internally amongst the Debtors and their other subsidiaries based on the coverage provided under the underlying insurance policies.  To the extent that any such reconciliation reveals that a non-debtor subsidiary has been provided with coverage under the underlying insurance policies, the Debtors shall be required to obtain payment from such non-

debtor in an amount equal to the non-debtor's proportionate share of the premiums paid under the policies.

9.    The Court shall retain jurisdiction to (i) enforce and implement the terms and provisions of the Agreement, (ii) resolve any disputes arising under or in connection with the Agreement and related documents, and (iii) interpret, implement, and enforce the provisions of this Order.

10.    Notwithstanding Bankruptcy Rule 4001 and 6004(g), the parties may consummate the transactions contemplated by the Agreement authorized hereby immediately upon entry of this Order.

Dated May ___19___, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

**Exhibit A**

### Premium Finance Agreement
### AFCO PREMIUM CREDIT LLC
A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.
2951 FLOWERS ROAD SOUTH, SUITE #132, ATLANTA, GA 30341
TEL. NOS. (770) 455-4850  (800) 288-5410

(CHECK APPROPRIATE BOX)
☐ PERSONAL
☒ COMMERCIAL

| | | | | |
|---|---|---|---|---|
| **A** | **TOTAL PREMIUMS** $ 9,722,145.00 | **AGENT** (NAME & PLACE OF BUSINESS) | **PRODUCER CODE NO.** 63-10-01006-0 | **INSURED** (NAME & RESIDENCE OR BUSINESS ADDRESS) |

| | | |
|---|---|---|
| **B** | **DOWN PAYMENT** $ 3,402,751.00 | MARSH USA INC<br>Attn: AMY BLAKELY<br>3475 PIEDMONT ROAD STE 1200<br>ATLANTA, GA<br>ZIP CODE 30305   (404) 760-0112 |

INSURED: WINN-DIXIE STORES, INC.
Attn: DALE BITTER
5050 EDGEWOOD COURT
PO BOX B
JACKSONVILLE, FL
ZIP CODE 32203   (904) 783-5303

(Debtor in Possession
Case No. 05-03817-3FI)

**C** AMOUNT FINANCED (A minus B) $ 6,319,394.00

**PAYMENT SCHEDULE**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | |
|---|---|---|---|
| | | FIRST INSTALLMENT DUE | INSTALLMENT DUE DATES |
| 8 (Monthly) | 802,246.93 | 05/30/2005 | 30th |

**D** FINANCE CHARGE 98,581.44

**SCHEDULE OF POLICIES**

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY/ ANNUAL INSTALLMENT | NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL OR POLICY ISSUING AGENT | TYPE OF COVER | MONTHS COVERED BY PREMIUM | PREMIUM $ |
|---|---|---|---|---|---|
| **E** DOCUMENTARY STAMP TAX $ | 04/30/2005 | SEE ATTACHED ADDENDA A&B<br><br>The terms of this Agreement are continued on Addenda A & B , annexed hereto and made a part hereof.<br><br>Insured's Initials   X- | MISC | 12 | 9,722,145.00 |
| **F** TOTAL OF PAYMENTS (C + D + E) $ 6,417,975.44 | | | | | |
| **G** ANNUAL PERCENTAGE RATE 4.43% | LBM | | | | |

**TOTAL PREMIUMS must agree with Block "A" Above ——> TOTAL $**   9,722,145.00

**SECURITY AGREEMENT**

1. DEFINITIONS:   The above named insured ("the insured") is the debtor, AFCO Premium Credit LLC ("AFCO"), a joint venture of AFCO Credit Corporation and Marsh USA Inc., is the lender to whom the debt is owed. Singular words shall mean plural and vice versa as may be required in order to give the Agreement meaning. "Insurance company or company", "insurance policy or policy" and "premium" refer to those items listed under "Schedule of Policies".

**NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

**THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT**

Date  4-29-05

SR VP AND C.F.O.

**SIGNATURE OF INSURED(S)**
**OR DULY AUTHORIZED AGENT OF INSURED(S)**

**PRODUCER'S REPRESENTATIONS**

The undersigned warrants and agrees:
(1) the insurer has received a copy of this Agreement, and the Required Federal Truth-in-Lending Disclosures for Personal Lines Insurance, if applicable, (2) the policies are in full force and effect and the information in the schedule of policies and the premiums are correct, (3) the insured has authorized this transaction and recognizes the security interest assigned herein, (4) to hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly, indirectly, actually or constructively by any of the insurance companies and to pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured and that any lien the undersigned now has or hereafter may acquire on any return premium arising out of the above listed insurance policies is subordinated to AFCO's lien or security interest therein, (5) there are no exceptions to the policies financed other than those indicated and the policies comply with AFCO's eligibility requirements, (6) no Audit or Reporting Form Policies, policies subject to Retrospective Rating or to minimum earned premiums are included except as indicated and that the Deposit or Provisional Premiums are not less than anticipated premiums to be earned for the full term of the policies, if policy is subject to minimum earned premium, it is $_____

**Indicate Policy & Prefix Number of Exceptions**

(7) the policies can be cancelled by the insured or the company on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (8) the undersigned represents that a proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the named insured or if the named insured is the subject of such a proceeding, it is noted on the Premium Finance Agreement in the space in which the insured's name and address is placed.

Date _____                                    X_____
**SIGNATURE OF AGENT OR BROKER**

FLJV (10/00-win) c. 2000 Afco Premium Credit LLC    7N7VQAPFQ7ULRQLibor0418060518050101OO    05232005FLdxdbhbxxexebcbxxe    Page 1 of 2

## REMAINING PROVISIONS OF SECURITY AGREEMENT

**2. ASSIGNMENT OF AGREEMENT:** This agreement will be assigned and transferred to and serviced by AFCO Credit Corporation.

**3. PROMISE OF REPAYMENT:** The insured requests AFCO to pay the premiums on the policies shown above. The insured promises to pay to AFCO at its office the amount stated in Block F above, according to the Payment Schedule shown above subject to the rest of the terms of this contract.

**4. SECURITY INTEREST:** See " * " below.

**5. DEFAULT CHARGES:** If the insured is more than 5 days late in making an installment payment to AFCO, then the insured will pay to AFCO, in addition to the delinquent installment, a default charge of 5% of the unpaid balance of the delinquent installment or $10, whichever is greater. If the loan is primarily for personal, family or household purposes, the default charge shall not exceed $10.

**6. FINANCE CHARGE:** The finance charge shown in Box D begins to accrue as of the earliest policy effective date.

**7. THIS AGREEMENT BECOMES A CONTRACT:** This Agreement becomes a binding contract when AFCO mails a written acceptance to the insured.

**8. WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees.

**9. REPRESENTATION OF SOLVENCY:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding.

**10. CANCELLATION:** AFCO may cancel the insurance policies financed herein and the unpaid balance due to AFCO shall be immediately payable by the insured if, upon 10 days written notice to the insured, the insured does not pay any installment according to the terms of this Agreement. AFCO, at its option, may enforce payment of this debt without recourse to the security given to AFCO.

**11. POWER OF ATTORNEY:** The insured appoints AFCO its Attorney-in-Fact with full authority to cancel the insurance policies financed herein for nonpayment of premium.

**12. MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's Notice of Cancellation of the insurance policies has been mailed may be credited to the insured's account without affecting the acceleration of this Agreement and without any liability or obligation on AFCO's part to request the reinstatement of the cancelled insurance polices. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to the insured or the insured's agent for the benefit of the insured. No refund of less than $1.00 shall be made. If there is a balance due after AFCO receives the unearned premiums, dividends or loss payments from the insurance company then the insured will pay the balance to AFCO with interest at the rate shown in this contract.

**13. REFUND:** The insured will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to the Rule of 78s subject to a $20 nonrefundable charge. If the refund is less than $1, no refund shall be made.

**14. INSURANCE AGENT OR BROKER:** AFCO makes no warranties or representations concerning the financed insurance coverage nor has it played any part in the selection, structuring or acquisition of such coverage. This Agreement represents the entire understanding of the parties. AFCO has not authorized any party whatsoever to make any representations, commitments or promises or to play any role with respect to this premium finance transaction other than completing this contract on behalf of the insured.

**15. SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or subject to retrospective rating, then the insured promises to pay the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

**16. CANCELLATION CHARGES:** If AFCO cancels the insurance policies, then the insured will pay AFCO a cancellation charge equal to the difference between $10 and the default charge.

**17. ATTORNEY FEES:** If, for collection, this Agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay the attorney fees but no more than 20% of the amount due and payable under this Agreement.

**18. SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured agrees not to assign the policy without AFCO's written consent except for the interest of mortgagees and loss payees.

**19. MISSING INFORMATION:** If the policy has not been issued at the time of signing this Agreement, then the insured agrees the name of the insurance company, and the policy numbers of the insurance policies may be left blank and may be subsequently inserted in this Agreement. AFCO will notify the insured of the information on its written Notice of Acceptance.

**20. ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. AFCO's payment shall not be applied by the insurance company to pay for any additional premiums owed by the insured as a result of any type of misclassification of the risk. The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign to the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.

**21. AGENT'S WARRANTIES:** To convince AFCO to enter this Agreement and accept the security underlying this Agreement, the person executing this Agreement, if not the insured, warrants severally and as the duly authorized agent of the insured: that he is the duly authorized agent of the insured appointed specifically to enter into this transaction on the insured's behalf; that he can perform any act the insured could or should perform with respect to this transaction; that he will hold in trust for AFCO any payments made or credited to the insured through the undersigned or to the undersigned, directly, indirectly, actually or constructively, by any of the insurance companies and that he will pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured.

**22. LAW GOVERNING THIS AGREEMENT:** The insured agrees that this Agreement shall be governed by the laws of the State of Florida.

**23. DISHONORED CHECK:** If an insured's check is returned because of insufficient funds to pay it, AFCO may impose a charge of $10.

**24. ENDORSEMENTS:** The insured agrees that AFCO may endorse his or her name on any check or draft for all monies that may become due from the insuring company and apply the same as payment of this Agreement returning any excess to his or her agent, provided that if such excess is in an amount less than $1 no refund shall be made.

* The insured assigns to AFCO as security for the total amount payable in this Agreement (a) any and all unearned premiums and dividends which may become payable under the insurance policies; and (b) loss payments which reduce the unearned premiums, subject and subordinate to (i) any beneficiary, mortgagee, landlord or loss payee interests and (ii) the senior rights of the insured's postpetition secured lender.

INSURED'S INITIALS

## ADDENDUM A                    WINN DIXIE STORES INC

The policies set forth below were placed by Marsh USA Inc. on behalf of the insured.

Marsh USA Inc. makes the Broker Representations set forth on the facing page of the Premium Finance Agreement to which this Attachment A is attached, as the same may have been modified or amended by agreement between Marsh USA Inc. and AFCO Credit Corporation, only with respect to the policies listed below.

## SCHEDULE OF POLICIES

| EFF. DATE | INSURANCE CO. | POLICY NUMBER | COVERAGE | TERM | PREMIUM |
|---|---|---|---|---|---|
| 4/30/05 | Lexington Ins Co | | Prop | 12 | 1,515,687 |
| | | | Tax | | 24,225 |
| 4/30/05 | Lexington Ins Co UK/Marsh Atlanta | | Prop | 12 | 1,476,813 |
| | | | Tax | | 24,225 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 783,750 |
| | | | Tax | | 13,324 |
| 4/30/05 | SR Intl Business Ins Co Ltd/Marsh Atlanta | | Prop | 12 | 789,000 |
| | | | Tax | | 12,113 |
| 4/30/05 | Zurich American Ins Co | | Prop | 12 | 523,278 |
| 4/30/05 | SR Intl Business Ins Co Ltd/Marsh Atlanta | | Prop | 12 | 189,830 |
| | | | Tax | | 2,848 |
| 4/30/05 | American Empire Surplus Lines Ins Co | | Prop | 12 | 100,500 |
| | | | Tax | | 1,709 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 351,750 |
| | | | Tax | | 5,980 |
| 4/30/05 | Commonwealth Ins Co | | Prop | 12 | 165,825 |
| | | | Tax | | 2,563 |
| 4/30/05 | Arch Ins Co | | Prop | 12 | 175,875 |
| 4/30/05 | Zurich American Ins Co | | Prop | 12 | 200,000 |
| 4/30/05 | Arch Ins Co | | Prop | 12 | 131,250 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 335,000 |
| | | | Tax | | 5,695 |
| 4/30/05 | American Empire Surplus Lines Ins Co | | Prop | 12 | 243,000 |
| | | | Tax | | 4,131 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | Prop | 12 | 112,500 |
| | | | Tax | | 1,913 |
| 4/30/05 | Arch Ins Co | | Prop | 12 | 94,500 |
| 4/30/05 | Hannover Re/Marsh Atlanta | | Prop | 12 | 45,000 |
| | | | Tax | | 765 |
| 4/30/05 | Service Placement Fee | | Fee | 12 | 210,000 |

| 4/30/05 | Lloyds of London/Marsh Atlanta | | | Prop | 12 | 274,500 |
| | | | | Tax | | 4,667 |
| 4/30/05 | Zurich American Ins Co | | | Prop | 12 | 22,500 |
| 4/30/05 | Arch Ins Co | | | Prop | 12 | 15,750 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | | Prop | 12 | 60,000 |
| | | | | Tax | | 1,021 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | | Prop | 12 | 18,750 |
| | | | | Tax | | 319 |
| 4/30/05 | Commonwealth Ins Co | | | Prop | 12 | 24,750 |
| | | | | Tax | | 383 |
| 4/30/05 | Travelers Indemnity Co of Illinois | | | B&M | 12 | 182,342 |
| 4/30/05 | Zurich American Ins Co | | | Prop | 12 | 272,247 |
| 4/30/05 | Illinois Union Ins Co | | | Terrorism | 12 | 87,099 |
| | | | | Tax | | 1,481 |
| 4/30/05 | TBD | | | Prop | 12 | 95,000 |
| | | | | Tax | | 1,615 |
| 4/30/05 | TBD | | | Prop | 12 | 100,000 |
| 4/30/05 | Lloyds of London/Marsh Atlanta | | | Prop | 12 | 22,500 |
| | **TOTAL** | | | | | **$8,727,973** |

MARSH USA INC.
SIGNATURE: _____

TITLE: Sr VP and C.E.O.

DATE: 4-29-05

## ADDENDUM B          WINN DIXIE STORES INC

The policies set forth below were placed by Marsh Global Markets (Bermuda) Ltd. on behalf of the insured. By its signature below, Marsh Global Markets (Bermuda) Ltd. makes the Agent or Broker Representations set forth on the facing page of the Commercial Premium Finance Agreement to which this Attachment B is attached, as the same may have been modified or amended by agreement between Marsh USA Inc. and AFCO Credit Corporation, only with respect to the policies listed below.

## SCHEDULE OF POLICIES

| END DATE | INSURANCE CO | POLICY NUMBER | COVERAGE | TERM | PREMIUM |
|---|---|---|---|---|---|
| 4/30/05 | Max Re (Bermuda) | | Prop | 12 | 49,500 |
| 4/30/05 | Everest Reinsurance (Bermuda) Ltd | | Prop | 12 | 342,713 |
| 4/30/05 | Everest Reinsurance (Bermuda) Ltd | | Prop | 12 | 120,851 |
| 4/30/05 | Everest Reinsurance (Bermuda) Ltd | | Prop | 12 | 72,150 |
| 4/30/05 | Endurance Specialty Ins Ltd | | Prop | 12 | 71,115 |
| 4/30/05 | Endurance Specialty Ins Ltd | | Prop | 12 | 12,154 |
| 4/30/05 | Max Re (Bermuda) | | Prop | 12 | 110,000 |
| 4/30/05 | Endurance Specialty Ins Ltd | | Prop | 12 | 135,718 |
| 4/30/05 | Endurance Specialty Ins Ltd | | Prop | 12 | 79,971 |
| | TOTAL | | | | $994,172 |

## MARSH GLOBAL MARKETS BERMUDA LTD

SIGNATURE: _____

TITLE: SR VP AND C.F.O.

DATE: 4-29-05