UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., <u>et al</u>.,                Case No.: 3:05-bk-03817-JAF

    Debtors.                                                    Chapter 11

                                                                   /          Jointly Administered

**OBJECTION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION BY RICHARD EHSTER AND OTHERS FOR
ORDER, UNDER 11 U.S.C. §§ 1102(a)(2) AND 1114(d), DIRECTING APPOINTMENT
OF ADDITIONAL COMMITTEE OF UNSECURED CREDITORS**

        The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>") hereby objects to the motion, dated May 3, 2005, of Richard Ehster and other participants (collectively, the "<u>Movants</u>") in certain non-qualified retirement plans identified therein (the "<u>Plans</u>") for the entry of an order, pursuant to sections 1102(a)(2) and 1114(d) of title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>"), directing the United States Trustee to appoint an additional official committee of unsecured creditors, and, in support thereof, respectfully represents as follows:

**PRELIMINARY STATEMENT**

        1.      The Movants are seeking a drastic remedy, rarely granted by the courts. The Movants fail to provide any evidence that the Committee does not already adequately represent their interests. Accordingly, the United States Trustee has properly denied the Movants' request.

        2.      The Committee respectfully submits that the United States Trustee's denial constitutes a reasonable and eminently proper exercise of the discretion granted to her by Congress, and should not be overruled by the Court.

        3.      To the extent the Movants are unsecured creditors of the Debtors' estates

(which, as shown below, is not a foregone conclusion), the Committee, whose membership reflects a cross-section of the Debtors' general unsecured creditors, already adequately represents the Movants' interests of maximizing the value of the Debtors' estates and the distribution to all of the Debtors' unsecured creditors. To the extent the Movants have an interest that is distinct from the interests of the other unsecured creditors, such interest is solely to compel the Debtors to assume the Plans as executory contracts. Unlike the Committee, and virtually every other committee described in case law, the retiree committee urged by the Movants would exist solely to increase the administrative costs of these estates. Once the Plans are assumed, there is no need to negotiate the distributions to, or other treatment of, the claims of the Plans' beneficiaries because payment in full in accordance with the terms of the Plans would be mandated by the Bankruptcy Code. An appointment of an official committee, funded by the Debtors' estates, to pursue such a narrow interest at the expense of the estates and their general unsecured creditors is simply not warranted by applicable law.

4. Accordingly, the Committee respectfully submits that the United States Trustee's judgment must be upheld and the Motion must be denied since (a) the Movants have utterly failed to carry their burden of proof under section 1102(a)(2) of the Bankruptcy Code, and (b) section 1114(d) of the Bankruptcy Code is not applicable or, to the extent it is applicable, its application is, at best, premature because, among other things, the Debtors have not sought to cease paying or otherwise modify retiree benefits.

## ARGUMENT

### I. Movants Are Either Not Creditors of These Estates Or Are Already Adequately Represented

5. The Court should first consider the Movants' exact status in these cases: on the one hand, as the Movants themselves acknowledge, a final Order has been entered in these cases (the "Employee Order"), pursuant to which (despite the fact that the Plans' beneficiaries

{JA237768;1}                                          2

are predominantly former high-level executives, rather than the Debtors' rank and file employees) the Debtors have been paying the Non-Qualified Plan Obligations (as defined therein) in the ordinary course of business, consistent with their ordinary business practices. See Motion at p. 9.  If the Debtors continue to pay the Non-Qualified Plan Obligations, the Movants will never become actual creditors of the Debtors' estates.[1]  On the other hand, if the Debtors stop paying or otherwise modify the Non-Qualified Plan Obligations, (a) to the extent such obligations are not covered by section 1114 of the Bankruptcy Code (as they seem to be), the Movants will become general unsecured creditors whose interests will be identical to those of the other general unsecured creditors already represented by the Committee (i.e. to maximize the value of the Debtors' estates for the benefit of all of the Debtors' creditors), or (b) to the extent such obligations are covered by section 1114 of the Bankruptcy Code, the Court can determine at that time what protections, if any, to grant to the Movants.

6. Accordingly, it appears that the Movants either (a) will not be entitled to any committee representation (as non-creditor parties whose rights are in no way affected by the bankruptcy filing), (b) have the same interests as the other general unsecured creditors already adequately represented by the Committee (and thus are not entitled to a separate committee under section 1102(a)(2) of the Bankruptcy Code), or (c) may be entitled to a section 1114 committee at some point in the future to the extent (i) their claims are entitled to the protections of section 1114, and (ii) the Debtors attempt to modify those of the Non-Qualified Plan Obligations that are protected by such section.

7. Despite the Movants' failure to properly distinguish between their section 1102(a)(2) and section 1114(d) requests, the standards for appointing committees under these two sections are entirely different and must be reviewed separately.

---

[1] This is precisely the reason why the Movants' claim is listed as "contingent" on the Debtors' schedule attached as Exhibit A to the Motion.  When selecting Committee members, the United States Trustee for the Southern District of New York (where these cases were then pending) wanted to ensure that all Committee members had at least some liquidated and non-contingent unsecured claims against the estates, e.g., she specifically chose those of the Debtors' landlords to serve on the Committee whose leases were included in the "first day" rejection motion.

## II. Movants Failed to Carry Their Burden Under Section 1102(a)(2) of the Bankruptcy Code

8.     Generally, courts are extremely reluctant to appoint multiple creditors' committees under section 1102(a)(2) of the Bankruptcy Code. Such an appointment "is an extraordinary remedy," In re Sharon Steel Corp., 100 B.R. 767, 778 (Bankr. W.D. Pa. 1989), and "the **rare** exception." In re W. Coast Video Enter., Inc., 1992 Bankr. LEXIS 446, at *2 (Bankr. E.D. Pa. Apr. 10, 1992) (emphasis added). See also Mirant Americas Energy Mktg. v. The Official Comm. of Unsecured Creditors of Enron Corp., 2003 U.S. Dist. LEXIS 18149, at *23 (S.D.N.Y. Oct. 9, 2003); In re Trans World Airlines, Inc., 1992 WL 168152, at *1 (Bankr. D. Del. Mar. 20, 1992); In re Pub. Serv. Co. of N.H., 89 B.R. 1014, 1020 (Bankr. D.N.H. 1988); In re Texaco, Inc., 79 B.R. 560, 565 (Bankr. S.D.N.Y. 1987).

9.     The burden is on the party seeking the additional committee to prove "inadequate representation." Albero v. Johns-Manville Corp. (In re Johns-Manville Corp.), 68 B.R. 155, 158 (S.D.N.Y. 1986); In re Agway, Inc., 297 B.R. 371, 374 (Bankr. N.D.N.Y. 2003).

10.     Courts have developed a useful bifurcated approach to deciding whether multiple § 1102 committees are indicated in a particular case. First, the court must determine whether the moving parties are adequately represented by the existing committee. Then, even if the court finds inadequate representation, the prevailing case law requires the court to determine whether it should exercise its discretion in appointing an additional committee under the particular circumstances of the case.

11.     Most cases acknowledge that the term "adequate representation" is not easily defined. See, e.g., In re Beker Ind. Corp., 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985) ("The statute affords no test of adequate representation, leaving the bankruptcy court with discretion to examine the facts of each case to determine if additional committees are warranted.").[2] The

---

[2]     The following pertinent factors have been identified for such determination: (a) the nature of the case and the composition of the existing committee, (b) the ability of the existing committee to function, and (c) the standing and desires of various constituencies. See, e.g., In re Hills Stores Co., 137 B.R. 4, 5 (Bankr. S.D.N.Y. 1992); In re McLean Ind., Inc., 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987). However, it is clear that the Bankruptcy Code "does not mandate [that] a

court's decision should be informed by a determination of the nature of the interests of a particular group of creditors and how (if at all) such interests are distinct from, or in conflict with, the interests of the other general unsecured creditors. See, e.g., In re Dow Corning Corp., 194 B.R. 121, 141 (Bankr. E.D. Mich. 1996), rev'd on other grounds, 212 B.R. 258 (E.D. Mich. 1997)..

12.    The Dow Corning court, in considering the issue of adequate representation of the interests of union members and retirees who were being paid currently under a "first day" order, stated that, just as here, it was not even "shown that . . . any of [the union's] members or retirees even possess[ed] claims against the estate [and that] the best way to describe [their] interest [was] in not becoming a creditor." Id. at 144. As stated above, to the extent the Movants' claims ever become actual non-contingent claims, their interests – maximizing their recovery on account of such claims – will be identical to those of the other general unsecured creditors.[3]

13.    The only example the Movants cite of a potential conflict of their interests with those of the other creditors is the Committee's position on the motion to change venue (the "Venue Motion"). While the Committee's position on the Venue Motion reflected the wishes of the holders of a majority of the Debtors' unsecured claims (as such wishes were communicated to the Committee), there were other, smaller unsecured creditors who felt differently, as evidenced by the filing of the Venue Motion and of the several joinders therein. Clearly, the Movants' desire to change venue to this Court was not unique to the Movants, but shared by

---

committee must faithfully reproduce the exact complexion (sic) of the creditor body." Hills Stores, 137 B.R. at 7.

[3] Were the Movants to request that their representative be appointed to the existing Committee, such appointment would be exclusively in the discretion of the United States Trustee, subject to the Court's review under the abuse of discretion standard. See, e.g., In re Mission Health, Inc., 242 B.R. 527, 529-530 (Bankr. M.D. Fla. 1999) (J. Funk, J.) ("The authority to appoint an unsecured creditors' committee lies exclusively with the United States Trustee.. . . This Court does not feel that it is appropriate to override the Trustee's authority by adding committee members upon the motion of each unsecured creditor claiming the Trustee acted arbitrarily and capriciously"). See also Masters, Mates & Pilots V. Lykes Bros. S.S. Co. (In re Lykes Bros. S.S. Co., Inc.), 200 B.R. 933, 940 (M.D. Fla. 1996).

certain of the general unsecured creditors. It is untenable to contend that every time an individual creditor's position differs from that taken by the Committee, such creditor is entitled to a separate committee to represent its interests.

14. Based on all of the foregoing, the Committee respectfully submits that the Movants' interests as creditors, to the extent they presently have any, are adequately represented by the Committee, and that the United States Trustee's denial of their request for the appointment of an additional committee was perfectly justified.

15. However, as stated above, even if the Court disagrees with the Committee regarding adequate representation of the Movants' interests, the Court still must exercise its discretion in deciding whether the appointment of an additional committee is appropriate under the circumstances of these cases. This level of analysis involves consideration of factors such as (a) the timing of application, (b) the costs involved, (c) the potential for added complexity, and (d) the presence of other avenues for movants to participate in the case. See, e.g., Mirant Americas, 2003 U.S. Dist. LEXIS, at *12; Hills Stores, 137 B.R. at 7-8; In the Matter of Interco Inc., 141 B.R. 422, 424 (Bankr. E.D. Mo. 1992); Johns-Manville, 68 B.R. at 155.

16. All of these discretionary factors mitigate against the appointment of an additional committee in these cases: (a) the Movants are making their request at a time when their interests have not been impaired or even threatened; (b) the increased cost and complexity of the cases that will necessarily result from an appointment of an additional committee cannot be justified when balanced against a merely speculative assertion that the Movants' contingent rights are not adequately protected, and (c) there clearly are other avenues for the Movants to participate in the cases, as was evidenced by their joinder in the Venue Motion.

17. Based on all of the foregoing, the Committee respectfully submits that the Movants have utterly failed to meet the burden of proof required of them under section 1102(a)(2) of the Bankruptcy Code, and the United States Trustee's denial of their request for a section 1102 committee was entirely justified.

### III. Section 1114(d) of the Bankruptcy Code is Not Applicable and, to the Extent It is, Its Application is Premature

18. Section 1114(d) of the Bankruptcy Code provides that the court, upon a motion and a hearing, shall appoint a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate. This section was enacted to protect the interests of retired employees of a chapter 11 debtor, as opposed to such debtor's current employees. See, e.g., In re Certified Air Techs., Inc., 300 B.R. 355 (Bankr. C.D. Cal. 2003); In re Farmland Indus., Inc., 294 B.R. 903 (Bankr. W.D. Mo. 2003). Upon information and belief, at least some of the Movants are current employees, rather than retirees, and, accordingly, these Movants are not entitled to seek relief under section 1114.

19. In addition, the Plans appear to be traditional pension plans, a form of deferred compensation primarily for former high-level executives, while the "retiree benefits" that are entitled to special protections under section 1114 (including an appointment of a committee of retirees) are only health and life insurance benefits. See, e.g., Adventure Resources, Inc. v. Holland, 137 F.3d 786, 795 (4th Cir. 1998) (claims based on "pension benefits" are not "the types of benefits enumerated in § 1114(a)"), cert. denied, 525 U.S. 962 (1998); Farmland Ind., 294 B.R. at 919 (where the benefits provided under the benefit plan are "either deferred compensation benefits or benefits based on retirement [as opposed to] payments or reimbursements for medical, surgical or hospital care, [or] benefits payable in the event of sickness, accident, disability, or death," such benefits are not entitled to the protections of section 1114 of the Bankruptcy Code). Accordingly, the Committee submits that the Non-Qualified Plan Obligations are not covered by section 1114 of the Bankruptcy Code.

20. To the extent that the Movants demonstrate (which they have not) that any of the Non-Qualified Plan Obligations may fall within the ambit of section 1114, in light of the Employee Order, it seems clear that the Debtors have not sought to cease timely payments of, or

otherwise modify, such obligations. The Movants' only claim that their rights under the Plans are being modified is based on the fact that, in the monthly operating reports, the Debtors list the claims under such Plans as "subject to compromise." Such designation in no way indicates that the Debtors have any current intention to impair or modify such claims in any way; all that such designation means is that the ultimate determination of such claims will be made in connection with the plan of reorganization to be confirmed in these cases.

21. Further, the Movants' claims based on the Non-Qualified Plan Obligations (to the extent they fall within the ambit of section 1114) are already protected by the provisions of section 1129(a)(13) of the Bankruptcy Code, which does not allow the Debtors to confirm a plan unless such plan provides for the continued payment of all retiree benefits under section 1114. If the Debtors ever try to confirm a plan that does modify retiree benefits, they will only be able to do so in compliance with section 1114. That would be the appropriate time to move the Court, upon a proper showing, for an appointment of a section 1114 committee. Currently, however, it is entirely premature.

22. Accordingly, it appears that "[t]his is not . . . a dispute about adequate representation, but about adequate assurance of alternative compensation." Hills Stores, 137 B.R. at 8. See also Sharon Steel, 100 B.R. at 782 (It is not appropriate to seek the appointment of an additional official committee for the "sole purpose . . . to get [its] professionals on the payroll of the debtors so as to be paid for every undertaking, necessary or unnecessary, without being subject to the increased level of scrutiny under section 503(b)(3) and (4) which require a 'substantial contribution in a case' before any compensation can be awarded").

IV. **If the Court is Inclined to Grant the Motion, the Scope of the Retiree Committee Should be Strictly Limited**

23. Alternatively, if the Court finds that the appointment of a retiree committee in this case is justified notwithstanding the United States Trustee's decision and the

Committee's arguments to the contrary, the Committee respectfully submits that the scope of the rights and obligations of such committee should be strictly limited by the Court at the outset. The Court should restrict the scope of the retiree committee to representing the retirees in connection with any future motion of the Debtors to terminate or modify the payment of retiree benefits under section 1114 of the Bankruptcy Code.

WHEREFORE, the Committee respectfully requests that the Court deny the Motion and grant it such other and further relief as is just and proper.

Dated:     May 26, 2005

AKERMAN SENTERFITT

By: /s/ *John B. Macdonald*
John B. Macdonald
Florida Bar No.: 230340
E-mail: john.macdonald@akerman.com
Patrick P. Patangan
Florida Bar No.: 348340
E-mail: patrick.patangan@akerman.com
50 N. Laura St., Suite 2500
Jacksonville, FL 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

Proposed Counsel for the Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al.

and

MILBANK, TWEED, HADLEY & McCLOY LLP
Dennis F. Dunne (DD)
Matthew S. Barr (MB)
Lena Mandel (LM)
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000

Counsel for the Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al.