**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**DEBTORS' RESPONSE AND OBJECTION TO MOTION BY RICHARD EHSTER AND OTHER NON-QUALIFIED PLAN PARTICIPANTS FOR ORDER DIRECTING <u>APPOINTMENT OF ADDITIONAL COMMITTEE OF CREDITORS</u>**

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above captioned cases, as debtors and debtors-in-possession  (collectively, the "Debtors"), respond and object as follows (the "Objection") to the Motion by Richard Ehster and Other Non-Qualified Plan Participants for Order Directing Appointment of Additional Committee of Creditors (the "Additional Committee Motion"):

**Background**

A.    <u>The Debtors' Chapter 11 Cases</u>

1.    On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "New York Court").  By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court.  Any orders entered by

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

the New York Court remain in full force and effect before this Court, unless otherwise ordered

by this Court.  These cases are jointly administered for procedural purposes only.

2.    The Debtors are operating their businesses and managing their properties

as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request

has been made for the appointment of a trustee or examiner.  On March 1, 2005, an official

committee of unsecured creditors (the "Creditors Committee") was appointed to serve in these

cases pursuant to Bankruptcy Code section 1103.  The members of the Creditors Committee are:

Capital Research and Management Company, a noteholder; Deutsche Bank Trust Company

Americas, a lessor; Kraft Foods Global, Inc., a trade creditor; New Plan Excel Realty Trust, Inc.,

a lessor; OCM Opportunities Fund V, L.P., a noteholder; Pepsico and Subsidiaries, trade

creditors; and R$^2$ Investments, LDC, a noteholder.

B.    The Non-Qualified Plans and the Request for a Second Creditors Committee

3.    In the ordinary course of their businesses, the Debtors maintain non-

qualified retirement plans for the benefit of participating retired employees, including the

Supplemental Retirement Plan (the "SRP") and the Management Security Plan (the "MSP") (the

SRP and MSP collectively, the "Non-Qualified Plans").  The SRP operates as a deferred

compensation program and is designed to provide participating employees with supplemental

provisions for their retirement.  The MSP provides for payment of retirement benefits to

qualifying participants.  The MSP also provides for payment of a death benefit to a designated

beneficiary in the event that the participant dies prior to retirement. There are approximately

1,042 participants in the Non-Qualified Plans (the "Plan Participants").  As of the Petition Date,

the value of vested entitlements for Plan Participants is estimated to have been $105 million.[2]

---

[2]      The value of vested benefits under the SRP as of the Petition Date is estimated to have been
$15,883,998.28.  See In re Winn-Dixie Stores, Inc., Schedules of Assets and Liabilities and Schedules of Executory

4.    Among the Debtors' chief concerns during the run up to the these cases, was the impact that the chapter 11 filings would have upon employees and retirees.  With respect to the Non-Qualified Plans, the Debtors' concern was that the chapter 11 filings would hinder their ability to pay benefits to retired Plan Participants because the majority of the benefits offered under the plans were not retiree benefits subject to the protections of Bankruptcy Code section 1114.[3]  To address their employee and retiree concerns, substantially contemporaneously with the filing of these cases, the Debtors filed the Motion for Authority to Pay (A) Pre-Petition Compensation, Payroll Taxes, Employee Benefits, and Related Expenses, (B) Expenses Related Independent Contractors, and (C) Certain Retiree Benefits, dated February 21, 2005 (the "Motion to Pay Benefits").  In their Motion to Pay Benefits, the Debtors indicated that they believed it to be in "in the best interests of their estates to continue making payments related to [the] Non-Qualified Plans … to avoid harm to the Retirees."  Motion to Pay Benefits, ¶ 49. Accordingly, among other things, the Debtors requested authorization to continue making payments under the Non-Qualified Plans during the course of these cases.  Id.  Moreover, the Debtors indicated that they intended to honor their obligation to continue providing benefits subject to the protection of Bankruptcy Code section 1114.  Id.  The Motion to Pay Benefits was granted by the New York Court, first on an interim basis pursuant to an order entered February 22, 2005 and then on a final basis pursuant to an order entered March 15, 2005 (collectively, the "Benefits Orders").

---

Contracts and Unexpired Leases, Schedule F – Creditors Holding Unsecured Non-Priority Claims, Sub-Schedule: MSP and SRP Participants  (Bankr. S.D.N.Y. Apr. 7, 2005).  The value of vested benefits under the MSP as of the Petition Date is estimated to have been $88,768,532.  Id.

[3]        For further discussion of this point, see infra, ¶¶ 23-24.

3

5.    Pursuant to the Benefits Orders, the Debtors have continued to make payments to Plan Participants who were receiving benefits at the time of the filings.  The Debtors anticipate that they will continue to make such payments for the duration of these chapter 11 cases and, subject to the outcome of negotiations with the Creditors Committee, expect to seek to assume the Non-Qualified Plans as part of a plan of reorganization.

6.    On April 28, 2005, a written request was made by counsel for certain Plan Participants (the "Moving Participants") to the Office of the United States Trustee (the "U.S. Trustee") to appoint a second committee of unsecured creditors to represent the interests of Plan Participants (the "Second Creditors Committee").  Thereafter, on May 3, 2005, the Moving Participants filed the Additional Committee Motion requesting that the Court enter an order directing the U.S. Trustee to appoint a Second Creditors Committee.

7.    On May 4, 2005, the U.S. Trustee, after review and deliberation, determined not to appoint a Second Creditors Committee to represent the interests of Plan Participants.  On May 24, 2005, the U.S. Trustee filed an objection to the Additional Committee Motion opposing the creation of a Second Creditors Committee but indicating that the possibility of adding one or more Plan Participants to the Creditors Committee was being investigated.

**Preliminary Statement**

8.    The appointment of an additional official creditors committee is an extraordinary measure that should only be undertaken in exceptional circumstances.  The facts of these cases do not warrant adoption of this extraordinary measure under either Bankruptcy Code section 1102 or Bankruptcy Code section 1114.  The Debtors would not object if the U.S. Trustee, in the exercise of its discretion, were to appoint a Plan Participant to serve on the Creditors Committee.

4

9.     The relief sought by the Additional Committee Motion is not warranted under Bankruptcy Code section 1102 because the appointment of a Second Creditors Committee is not necessary to assure adequate representation of the Plan Participants' interests.  The Plan Participants are contingent unsecured creditors.  In the event that the Non-Qualified Plans are assumed, then the Plan Participants will receive all benefits and will not hold unsecured claims against the Debtors' estates.  In the event that the Non-Qualified Plans are rejected, the Plan Participants will have claims under the Non-Qualified Plans that will be treated pari passu with all other general unsecured creditors.  The Creditors Committee, which has a diverse membership and a fiduciary duty to represent the interests of all unsecured creditors, assures that the interests of Plan Participants are adequately represented if the Non-Qualified Plans are rejected.  Accordingly, the appointment of a Second Creditors Committee is not warranted under Bankruptcy Code section 1102.

10.     Neither does Bankruptcy Code section 1114 warrant the relief sought by the Additional Committee Motion.  The Debtors have every intention of honoring their obligations to pay benefits protected by Bankruptcy Code section 1114 and have not modified or sought to modify such benefits.  Indeed, the Debtors have shown the opposite inclination by continuing to pay benefits under the Non-Qualified Plans that are not subject to the protections of Bankruptcy Code section 1114.  Accordingly, the appointment of a Second Creditors Committee is not warranted under Bankruptcy Code section 1114.

## Analysis

A.    Bankruptcy Code Section 1102 Does not Support the Creation of a Second Creditors Committee Because the Interests of Plan Participants are Adequately Represented

11.    Bankruptcy Code section 1102 does not support the exceptional relief sought by the Additional Committee Motion because the appointment of a Second Creditors Committee is not necessary to assure the adequate representation of Plan Participants.

12.    Bankruptcy Code section 1102(a)(2) authorizes bankruptcy courts to appoint additional creditors committees under limited circumstances.  Specifically, the section provides, in relevant part, that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors … if necessary to assure adequate representation of creditors …."  11 U.S.C. § 1102(a)(2).  The burden is on the party seeking an additional committee to demonstrate inadequate representation.  See, e.g., In re Agway, Inc., 297 B.R. 371, 374 (Bankr. N.D.N.Y. 2003) (citation omitted).  Moreover, the appointment of an additional committee is an extraordinary remedy that should rarely be invoked.  See, e.g., Id. at 374 (noting that "courts are reluctant to appoint multiple committees in a case notwithstanding the diverse and sometimes conflicting interests of creditors") (internal quotation marks omitted) (citation omitted); In re Enron Corp., 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) (noting that "ordering the appointment of additional committees … is an extraordinary remedy") aff'd sub nom Mirant Americas Energy Marketing, L.P. v. Official Comm. Of Unsecured Creditors of Enron Corp., 2003 WL 22327118 (S.D.N.Y. Oct. 10, 2003).

13.    The Bankruptcy Code does not define, and there is no statutory test for, "adequate representation."  Courts have applied a number of factors in making determinations about the adequacy of representation, including: the ability of the existing committee to function; the nature of the case; the standing desires of various constituencies; the potential for added cost

and complexity in the event that a new committee is appointed; the point in the proceeding in which the motion for an additional committee is made; and whether the interests of the movants may be represented by means other than an official committee.  See, e.g., In re Agway, Inc., 297 B.R. at 374 (listing factors that have been considered by courts).  Some courts have found it appropriate to divide the analysis into two components.  Such courts first look at whether the appointment of an additional committee is necessary to assure that the movants are adequately represented.  To the extent that this first inquiry is answered in the affirmative, the courts then consider whether they should exercise their discretion to appoint an additional committee based upon such factors as the cost associated with the appointment, the time of the application, the potential for added complexity, and the presence of other avenues for creditor participation.  In re Enron Corp., 279 B.R. at 685.  Regardless of the approach taken, the analysis "is without question to be determined on a case-by-case basis," id., and courts have the discretion to examine the individual facts of each case.  See Albero v. Johns-Manville Corp. (In re Johns-Manville Corp.), 68 B.R. 155, 159 (S.D.N.Y. 1986) (citation omitted).

14.     The facts of these chapter 11 cases demonstrate that the Plan Participants' interests are being adequately represented and that a Second Creditors Committee is unnecessary.  To begin, it is important to note that it is with respect to their interests as creditors of the Debtors' estates that the Plan Participants are collectively entitled to adequate representation under Bankruptcy Code section 1102.  See 11 U.S.C. § 1102(a)(2) (indicating that the court may order the appointment of additional committees "if necessary to assure adequate representation of the of creditors …").[4]  The Plan Participants are, in essence, contingent general

---

[4]     Bankruptcy Code section 1102 also allows for the creation of committees of equity holders committees if necessary to assure the adequate representation of equity security holders.  See 11 U.S.C. § 1102(a)(2).  However, the Non-Qualified Plans do not give rise to equity interests and the Plan Participants have not claimed equity ownership as a basis for the relief sought in the Additional Committee Motion.

unsecured creditors.  If the Debtors continue to perform their obligations under the Non-Qualified Plans and assume such plans as part of a plan of reorganization, then the claims of Plan Participants will be satisfied and they will not be creditors of the Debtors' estates.  <u>See</u> 11 U.S.C. § 101(10).  Should the Debtors reject or otherwise terminate the Non-Qualified Plans during these cases, the Plan Participants will have prepetition general unsecured claims that will be treated <u>pari</u> <u>passu</u> with all other general unsecured claims.

15.    The Plan Participants' interests as creditors are being adequately represented by the Creditors Committee.  By virtue of its being the appointed official committee of unsecured creditors, the Creditors Committee has a fiduciary duty to represent the interests of all unsecured creditors, including the Plan Participants.  <u>See</u> <u>In re Garden Ridge Corp.</u>, 2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005).  Moreover, the interests of the Plan Participants are, in relevant respects, similar to those of all general unsecured creditors.  To the extent that the Non-Qualified Plans are rejected and the Plan Participants have unsecured claims, the Plan Participants will have the same interest as every other unsecured creditor – namely, maximizing the value of the Debtors' estates.

16.    The Additional Committee Motion asserts that the interests of Plan Participants differ from those of other general unsecured creditors by virtue of their status as current employees and retirees of the Debtors.  <u>See</u> Additional Committee Motion at 6.  However, such status does not, by itself, indicate that the Plan Participants have interests that are so distinct from other creditors as to require the appointment of a Second Creditors Committee.  <u>Cf.</u> <u>In re Agway, Inc.</u>, 297 B.R. at 374 (denying a request under section 1102 of the Bankruptcy Code for appointment of a separate creditors committee to represent the interests of retirees); <u>In re Mansfield Ferrous Castings, Inc.</u>, 96 B.R. 779, 781 (Bankr. N.D. Ohio 1988) (finding that

employees' unique status as <u>both</u> creditors and equity holders warranted the creation of a separate employee committee but indicating that "<u>if the Employees' status was solely as creditors, the [creditors committee] would be able to adequately represent them</u>") (emphasis added).  The issue is whether the Plan Participants' interests as creditors are <u>adequately</u> represented, not whether they are <u>exclusively</u> represented.  As indicated by the court in <u>Mirant Americas Energy Marketing, L.P.</u>:

> A rule of decision based purely on whether separate classes of creditors have differing interests would lead to the unnecessary proliferation of committees at an astronomical cost to the bankruptcy estates.  Moreover, because creditors would be balkanized into several independent committees, each furthering the interests of only certain groups, the consultation and balancing of interests necessary for a successful negotiation of a reorganization plan would be severely hampered, leading to increased costs and delays.

2003 WL 22327118, at *7 (internal quotation marks omitted) (citation omitted).  The Creditors Committee in these cases has a varied membership – including trade creditors, lessors, and noteholders – and is well-positioned to represent the interests of all unsecured creditors including the Plan Participants.

17.     Moreover, the facts of these cases suggest a reasonable possibility that the Plan Participants will not end up being creditors of the Debtors' estates by virtue of their claims arising under the Non-Qualified Plans.  In this vein, the Debtors have continued to make payments to Plan Participants who were receiving benefits at the time of the filings and anticipate that they will continue to make such payments for the duration of these chapter 11 cases.  Indeed, subject to the outcome of negotiations with the Creditors Committee, the Debtors expect to seek to assume the Non-Qualified Plans as part of a plan of reorganization.  This factual setting further suggests that the appointment of a Second Creditors Committee is not necessary to adequately represent the creditor interests of Plan Participants.  <u>Cf.</u> <u>In re Dow</u>

Corning Corp., 194 B.R. 121, 144 (Bankr. E.D. Mich. 1996) ("The Union has not shown that it

or any of its members or retirees even possess claims against the estate.  The Union's position is

akin to that of a customer who fears that the Debtor might not perform a pre-petition supply

contract.  Of course, if the Debtor rejects any of its executory contractual obligations to the

Union or its members or retirees then they will have claims. … At present, however, the best

way to describe the Union's interest is in not becoming a creditor.") rev'd on other grounds 212

B.R. 258 (E.D. Mich. 1997).

   18. For the foregoing reasons, the appointment of a Second Creditors

Committee to represent Plan Participants is not warranted under Bankruptcy Code section 1102.

However, the Debtors would not object if the U.S. Trustee, in the exercise of its discretion, were

to appoint a Plan Participant to serve on the Creditors Committee.

B. Bankruptcy Code Section 1114 Does Not Support the Creation of a Second Creditors
  Committee Because the Debtors Have not Modified or Sought to Modify and do not
  Have any Intention of Modifying Retiree Benefits

   19. Section 1114 of the Bankruptcy Code does not support the appointment of

a Second Creditors Committee because the Debtors have not sought and do not seek to modify

any "retiree benefits" as defined by that section.

   20. Bankruptcy Code section 1114 affords special protections to a defined set

of retiree benefits by requiring their continued payment during the pendency of the chapter 11

case and compliance with special procedures for any modifications.  11 U.S.C. § 1114(e)-(g).

The retiree benefits subject to the requirements of Bankruptcy Code section 1114 are limited to

"payments … for the purpose of providing or reimbursing payments for retired employees and

their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the

event of sickness, accident, disability, or death under any plan, fund, or program (through the

purchase of insurance or otherwise) maintained or established in whole or in part by the debtor

…." (such benefits being, the "1114 Benefits").  11 U.S.C. § 1114(a).

21.    Among other things, subsection (f) of section 1114 provides that prior to

filing an application seeking modification of 1114 Benefits, the debtor must "make a proposal to

the authorized representative of the retirees …."  11 U.S.C. § 1114(f).  Moreover, subsection (d)

provides that:

> The court, upon motion by any party in interest, and after notice and a hearing,
> shall appoint a committee of retired employees if the debtor seeks to modify or
> not pay the retiree benefits or if the court otherwise determines that it is
> appropriate, to serve as the authorized representative, under this section, of those
> persons receiving any retiree benefits not covered by a collective bargaining
> agreement.

11 U.S.C. § 1114(d).

22.    Notably, while section 1114(d) gives the court discretion to appoint a

committee of retired employees whenever it deems appropriate, as a practical matter, courts have

expressed extreme reluctance to appoint such committees in the absence of a decision by the

debtor to modify or terminate 1114 Benefits.  See In re Farmland Indus., 294 B.R. 903, 920

(Bankr. W.D. Mo. 2003) (holding that no useful purpose would be served by appointing a

committee of retirees unless and until the debtor sought to terminate 1114 Benefits pursuant to

the requirements of section 1114); In re Agway, Inc., 297 B.R. at 375-376 (holding that it was

premature to appoint a retiree committee because the debtor had not made a determination to

modify 1114 Benefits).

23.    Given the facts of these cases, the appointment of a Second Creditors

Committee pursuant to Bankruptcy Code section 1114 is unwarranted.  The Debtors have every

intention of continuing to honor their obligations under Bankruptcy Code section 1114 and have

not modified or sought to modify any 1114 Benefits.  To the contrary, the Debtors have

demonstrated a commitment to paying Plan Participants benefits that are not 1114 Benefits.  As

has been indicated, the Debtors sought and obtained approval to continue making payments

related to the Non-Qualified Plans in accordance with their ordinary business practices, and have

continued to make such payments during the course of these cases.  However, most of the

benefits offered under the Non-Qualified Plans are not 1114 Benefits.

    24.  The benefits protected by Bankruptcy Code section 1114 are benefits

offered under plans denominated as "employee welfare benefit plans" by the Employee

Retirement Income Security Act ("ERISA").  Compare 11 U.S.C. § 1114(a) and 29 U.S.C. §

1002(1);  see also 4 Norton Bankr. L. & Prac. 2d § 84:2 (2004).  By contrast, the Non-Qualified

Plans are classic non-qualified "employee pension plans" as defined ERISA, insofar as they offer

deferred compensation and retirement payments to help participants fund their retirements.  See

29 U.S.C. § 1002(2)(A).  Such benefits do not fall within the definition of 1114 Benefits and are

not subject to Bankruptcy Code section 1114.  See 11 U.S.C. § 1102(a); In re Farmland Indus.,

Inc., 294 B.R. at 919 (holding that benefits that are "deferred compensation benefits or benefits

based on retirement … [do not] fall within the coverage and provisions of § 1114"); Adventure

Resources, Inc. v. Holland, 137 F.3d 786, 795 (4th Cir. 1998) (indicating that pension benefits

are not subject to Bankruptcy Code section 1114); S. Rep. 100-119, 4 (1987) reprinted in 1988

U.S.C.C.A.N. 683, 685 (noting that "[t]his bill is not intended to affect current law treatment of

pension benefits in Chapter 11 proceedings").  Accordingly, by obtaining authorization to

continue making payments under the Non-Qualified Plans and by continuing to make such

payments, the Debtors have gone beyond their obligations under Bankruptcy Code section 1114.

    25.  The foregoing facts make plain that not only are the Debtors committed to

continue paying 1114 Benefits, but they are also dedicated to providing Plan Participants

benefits that are not protected by Bankruptcy Code section 1114.  Yet the Additional Committee

Motion attempts to manufacture a basis for appointing a Second Creditors Committee under

Bankruptcy Code section 1114 by attributing undue significance to the fact that claims under the

Non-Qualified Plans have been listed as "subject to compromise" in the Debtors' operating

reports.  Additional Committee Motion at 9.  However, the use of such an accounting term does

not evidence an intention to modify the Non-Qualified Plans much less an intention to modify

1114 Benefits.  It merely reflects the fact that the ultimate disposition of the Non-Qualified Plans

will be determined by the terms of a plan of reorganization.  Accordingly, the suggestion that a

Second Creditors Committee should be appointed under Bankruptcy Code section 1114 because

claims under the Non-Qualified Plans have been listed as "subject to compromise" is without

merit.

        26.    The court's decision in <u>In re Farmland Indus., Inc.</u> underscores the

impropriety of appointing a retiree committee pursuant to Bankruptcy Code section 1114 under

the circumstances of these cases.  There, the debtor sought to terminate certain retiree benefits

pursuant to the business judgment standard applicable to rejections of executory contracts,

arguing that the benefits in question were not 1114 Benefits.  <u>In re Farmland Indus., Inc.</u>, 294

B.R. at 907, 913.  Several of the debtor's retirees objected and requested the appointment of a

retiree committee pursuant to Bankruptcy Code section 1114.  <u>Id.</u> at 920.  The court held that the

benefits in question were 1114 Benefits and denied the motion to terminate those benefits.  <u>Id.</u> at

919.  However, the court declined to appoint a retiree committee, holding that such a committee

would serve no useful purpose.  In this vein, the court wrote:

> The Court believes that the statute accords the Court discretion in the appointment
> of a committee of retired employees, and further determines that it is not
> appropriate to appoint a committee at this time.  Because the Court is denying the
> Debtors' Motions to terminate the retirees' benefits, no useful purpose would be

served by the appointment of a committee.  Unless and until Farmland seeks to modify or terminate these plans in accordance with the procedures outlined in § 1114, there is no need for the appointment of a committee.

Id. at 920 (citation omitted).

27.     Given the court's decision in In re Farmland Indus., Inc., it is inappropriate to appoint a retiree committee pursuant to Bankruptcy Code section 1114 where, as here, the debtor has not sought to modify any 1114 Benefits.  See also Agway, Inc., 297 B.R. at 375-376 ("The Court finds that at this juncture in the case, it is premature to appoint a committee pursuant to Code § 1114(d).  At such time as the Debtor determines that it is necessary to modify the retirees' benefits, as defined in the statute, the Court will again entertain a motion for the appointment of a committee to act as the authorized representative of the retirees.").  Accordingly, the appointment of a Second Creditors Committee is not warranted under Bankruptcy Code section 1114.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Additional Committee Motion be denied in its entirety and that the Court grant such other and further relief as may be appropriate under the circumstances.

Dated:  May 26, 2005.

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By     s/ D. J. Baker
       D. J. Baker
       Sally McDonald Henry
       Rosalie Walker Gray
       David M. Turetsky
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

Co-Attorneys for Debtors

SMITH HULSEY & BUSEY

By     s/ Cynthia C. Jackson
       Stephen D. Busey
       James H. Post
       Cynthia C. Jackson,
       Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)

Co-Attorneys for Debtors

14