**Hearing Date: June 16, 2005, 1:00 p.m.**
**Objection Deadline: June 9, 2005, 4:00 p.m.**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

### DEBTORS' MOTION FOR ORDER EXTENDING
### EXCLUSIVE PERIODS FOR FILING CHAPTER 11 PLANS AND
### OBTAINING ACCEPTANCES OF SUCH PLANS

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned

cases, as debtors and debtors-in-possession  (collectively, the "Debtors"), move for entry

of an order under 11 U.S.C. § 1121(d) extending their initial exclusive periods for

proposing and obtaining acceptances of one or more plans of reorganization (the

"Motion").  In support of this Motion, the Debtors respectfully represent as follows:

### Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary

petitions for reorganization relief under chapter 11 of title 11 the United States Code, 11

U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code") in the United States

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these
related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors,
Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores,
Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy
Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets,
Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table
Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie
Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc.,
Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie
Supermarkets, Inc.

Bankruptcy Court for the Southern District of New York (the "New York Court").  By

order dated April 13, 2005, the New York Court transferred venue of these cases to this

Court.  The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors are operating their businesses and managing their properties

as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No

request has been made for the appointment of a trustee or examiner.  On March 1, 2005,

the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors (the "Creditors Committee") to serve in these cases

pursuant to Bankruptcy Code sections 1102 and 1103.

3.      The Debtors are grocery and drug retailers operating in the southeastern

United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.

According to published reports, the Debtors are the eighth-largest food retailer in the

United States and one of the largest in the Southeast.  The Debtors' business was founded

in 1925 with a single grocery store and has grown through acquisitions and internal

expansion.  The Debtors currently operate more than 900 stores in the United States with

nearly 79,000 employees.  Substantially all of the Debtors' store locations are leased

rather than owned.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.

Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicate for the relief requested is section 1121(d) of the

Bankruptcy Code.

**Exclusive Periods**

6.      Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose a plan of reorganization (the "Exclusive Proposal Period").  In addition, section 1121(c)(3) of the Bankruptcy Code provides that if a debtor proposes a plan within the Exclusive Proposal Period, it has the balance of 180 days after the commencement of the chapter 11 case to solicit acceptances of such plan (the "Exclusive Solicitation Period").  During the Exclusive Proposal Period and the Exclusive Solicitation Period (together, the "Exclusive Periods"), plans may not be proposed by any party in interest other than the debtor.

7.      In these cases, the Debtors' Exclusive Proposal Period will expire on June 21, 2005, unless extended, and their corresponding Exclusive Solicitation Period will expire on August 22, 2005, unless extended.

**Relief Requested**

8.      By this Motion, the Debtors request entry of an order extending their Exclusive Proposal Period for approximately 120 days, to and including October 19, 2005, and extending their Exclusive Solicitation Period also for approximately 120 days, to and including December 20, 2005.  The Debtors further request that their right to seek additional extensions of one or both of the Exclusive Periods be preserved, without prejudice to the rights of other parties in interest to object to any additional extensions or to seek a reduction of the Exclusive Periods as previously extended.

**Basis for Relief**

9.      The Exclusive Periods are intended to afford the Debtors a full and fair opportunity to rehabilitate their businesses and to negotiate and propose one or more

3

reorganization plans without the disruption and deterioration of their businesses that might be caused by the filing of competing plans of reorganization by nondebtor parties.

10.     Although the Debtors have made significant progress towards rehabilitation since the Petition Date, the Debtors are seeking to extend each of their Exclusive Periods by approximately 120 days in order to afford the Debtors additional time to develop, negotiate and propose one or more reorganization plans.

11.     Section 1121(d) of the Bankruptcy Code provides that this Court may extend the Exclusive Periods for cause:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

12.     The factors which Bankruptcy Courts examine in determining whether or not cause exists to extend the Exclusive Periods include: (i) the size and complexity of the case; (ii) the debtor's progress in resolving issues facing the estate; and (iii) whether an extension of time will harm the debtor's creditors.  See, e.g., In re McLean Indus. Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re Truck Exturision Corp., 844 F.2d 1142, 1161 (5th Cir. 1988); In re Homestead Partners, 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996) (Among other factors, "sufficient 'cause' may exist when … the presence of complex legal issues has occupied much of the debtor's plan making opportunity.") (citations omitted).

13.     In evaluating these factors, the courts are given maximum flexibility to review the particular facts and circumstances presented in the cases before them.  See In re Public Serv. Co., 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent ...

[is] to promote maximum flexibility ...."); First American Bank v. Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986) (acknowledging flexibility that section 1121(d) provides); H.R. Rep. No. 95-595, at 232 (1978) ("[T]he bill allows the flexibility for individual cases that is unavailable today.") reprinted in 1978 U.S.C.C.A.N. 5963, 6191; In re Hoffinger Indus., Inc., 292 B.R. 639 (8th Cir. B.A.P. 2003) (stating that not all factors "are relevant in every case" and court has discretion to "decide which factors are relevant and give the appropriate weight to each").

14.    In the Debtors' cases, the 120-day extensions of each of the Exclusive Periods are fully justified for the reasons set forth below:

    (a)    The Debtors' cases are large and complex;

    (b)    The Debtors have made good-faith progress in positioning themselves to move forward with the proposal of a plan; and

    (c)    This is the Debtors' first request to extend their Exclusive Periods, which extensions will not prejudice the rights of creditors.

A.    The Debtors' Cases Are Complex

15.    Courts frequently grant an extension of the exclusive periods based upon the size and complexity of a chapter 11 case.  See Texaco, 76 B.R. at 327; McLean, 87 B.R. at 834; Homestead 197 B.R. at 720 (recognizing the presence of complex legal issues as one of the bases for cause pursuant to 11 U.S.C. § 1121(d)) ; see also Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) (in case involving 100 creditors holding approximately 225 claims aggregating $10 million against estate valued at $13 million, district court affirmed bankruptcy court's enlargement of the exclusivity period and held that cause may exist if the case is unusually large).

16.    Here, the Debtors' chapter 11 cases are certainly large and complex.  Their financial structure consists of  (a) an $800 million debtor-in-possession secured financing

facility, (b) other prepetition secured obligations, (c) publicly-traded senior unsecured notes, with a remaining principal amount of approximately $300 million, due 2008, (d) trade, litigation and other general unsecured liabilities and (e) publicly-held equity securities at the parent level.  Indeed, there are thousands of creditors and other parties in interest in these cases.  In fact, proof of claim bar date notices have been sent to in excess of 290,000 parties in interest.

17.     The size and complexity of the Debtors' cases is further highlighted by considering their corporate structure and workforce.  Specifically, Winn-Dixie, a publicly-owned Florida corporation, is the ultimate parent of a group of companies that includes the 24 Debtors in these cases.  The Debtors, utilizing the services of approximately 78,000 employees, conduct business through their corporate headquarters in Jacksonville, Florida.  The Debtors' grocery stores and other facilities are located in nine States including Florida, Alabama, Georgia, North Carolina, Louisiana, Mississippi, South Carolina, Tennessee and Virginia.  The Debtors also have affiliates in the Bahamas, which are not involved in these cases.

18.     In sum, the sheer size and complexity of the Debtors' businesses and chapter 11 cases constitute cause to extend the Exclusive Periods.

B.      The Debtors Have Made Good Faith Progress Toward Proposing A Plan

19.     Since the Petition Date, the Debtors have made significant progress in their chapter 11 cases, including the following:

> (a) Early on, the Debtors' management focused on stabilizing the Debtors' businesses and responding to the many time-consuming demands that inevitably accompany the commencement of a chapter 11 case, including responding to myriad inquiries from vendors, utilities, taxing authorities, concerned employees and other parties in interest.

(b)  The Debtors obtained approval of the various first day motions filed in this case and have taken necessary steps to implement the authorizations granted by such orders.

(c)  The Debtors have been working to address the issues raised by the approximately 485 reclamation claims totaling over $116 million.  The Debtors have also resolved the vast majority of the approximately 140 "PACA" claims totaling approximately $30 million, with less than 15 claims still to be resolved.  As to the PACA claims, the Debtors filed a report with the Court in which they (i) detailed the "Allowed PACA Claims," (ii) set forth whether such claims were paid or scheduled to be paid, and (iii) identified the PACA Claims that the Debtors believed to be invalid.

(d)  The Debtors obtained final approval and implemented the closing of an $800 million debtor-in-possession financing facility.

(e)  The Debtors have complied with the various reporting requirements imposed by the United States Trustee, including the submission of initial and monthly reports.

(f)  The Debtors have prepared and filed statements of financial affairs and schedules of assets, liabilities and contracts consistent with the Bankruptcy Code and Bankruptcy Rules.

(g)  The Debtors have complied with due diligence requests from the Creditors' Committee, turning over documents for review by advisors to the Creditors' Committee.

(h)  The Debtors obtained court approval under section 365 of the Bankruptcy Code to extend the time period for assuming or rejecting unexpired leases of non-residential real property. Additionally, through the filing of two motions, the Debtors obtained Court approval to reject approximately 170 unexpired leases of non-residential real property.  The Debtors have commenced a review of their remaining 850 (approximately) unexpired non-residential real property leases to determine whether rejection, assumption or assignment of such leases is in the best interests of their estates.

(i)  The Debtors have sought authority to reject approximately 75 unexpired executory contracts and unexpired leases relating to personal property and services.  The Debtors are continuing to analyze their hundreds of remaining executory contracts and unexpired leases in order to determine whether rejection,

assumption or assignment of such leases is in the best interests of their estates.

(j)   The Debtors have obtained an order of the Court establishing an August 1, 2005 bar date for filing proofs of claim and approving procedures for providing mail and publication notice of the bar date, and they have taken the necessary steps to implement the bar date by complying with the mail and publication notice procedures.

(k)   The Debtors have obtained approval, pursuant to section 363 of the Bankruptcy Code, to sell several assets including (i) two company airplanes for a total of $32 million; (ii) the pharmaceutical prescriptions and related inventory at three stores that were targeted for closure; and (iii) leases, equipment and inventory from three previously closed stores to Food Lion, LLC.  Additionally, the Debtors have sought authority to sell certain de minimis assets, such as vehicles, equipment, store displays and machinery.

(l)   The Debtors, who depend upon approximately 800 utility companies, have resolved requests from certain utility companies who were demanding adequate assurance payments and are continuing to negotiate or litigate with other utility companies as to adequate assurance issues.

(m)   The Debtors are continuing to develop and to work with the Creditors Committee to finalize their long-term store footprint, which is an important step in their emergence strategy.

20.   Based upon the reorganization progress demonstrated to date, this first requested extension of the Exclusive Periods is fully justified on the particular facts of these cases.  Moreover, under the circumstances, a premature termination of the Exclusive Periods would deny the Debtors a meaningful opportunity to negotiate and propose a confirmable plan, and would be antithetical to the paramount reorganization objective of chapter 11.  A termination of the Debtors' Exclusive Periods at this time would encourage the development of competing multiple plans that could lead to unwarranted confrontations, litigation and increased administrative costs.

C.    Creditors Will Not Be Prejudiced By An Extension

21.    The requested extension of the Exclusive Periods will not prejudice the legitimate interests of any creditor or other party in interest.  To the contrary, the proposed extension will advance the Debtors' efforts to preserve value and avoid unnecessary and wasteful motion practice.

22.    Moreover, given the current posture of these cases and certain unresolved issues, it would be premature and counter-productive for any non-Debtor party in interest to initiate the plan proposal process.  Instead, the requested extension will increase the likelihood of a consensual resolution of these cases that preserves reorganization value much more than any plan that the Debtors might file at this time simply to preserve their exclusive rights -- or any creditor initiated plan process that lacks necessary foundation and support.

D.    Conclusion

23.    In short, the Debtors deserve and should be afforded a full and fair opportunity to negotiate, propose and seek acceptances of a chapter 11 plan that builds on the significant reorganization progress made to date.  Accordingly, the requested extension is entirely warranted under the circumstances.

24.    Courts within this and other circuits have routinely granted extensions of exclusivity in reorganization cases.  See e.g., In re Moonraker Assocs., Case No. 95-71219 (Bankr. N.D. Ga. Sept. 17, 1996) (initial extension of exclusivity for approximately 120 days); In re Homestead Partners, Case No. 95-76964 (Bankr. N.D. Ga. June 25, 1996) (extending exclusive periods for an additional 60 days);  In re Sterling Chemicals Holdings, Inc., Case No. 01-37805-H4-11 (WG) (Bankr. S.D. Tex. Oct. 31, 2001)  (initial extension of exclusive periods for 120 days); In re Ames Dept. Stores, Inc.,

Case No. 01-42217 (REG) (Bankr. S.D.N.Y August 20, 2001) (Gerber, J.) (initial

extension of exclusive periods granted for five and one-half months); In re Montgomery

Ward Holding Corp., Case No. 97-01409 (PJW) (Bankr. D. Del. Nov. 7, 1997) (granting

180-day extension); In re the Caldor Corp., Case No. 95-44080 (JLG) (Bankr. S.D.N.Y.

Jan. 19, 1996) (initial extension of exclusive period for six months).

### Notice

25.    Notice of this Motion has been provided to (a) counsel to the U.S. Trustee,

(b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors'

Committee, and (d)  the other parties in interest named on the Master Service List

maintained in these cases.  No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that

the Court (i) enter an order substantially in the form attached as Exhibit A, extending the

Exclusive Proposal Period to and including October 19, 2005, and the Exclusive

Solicitation Period to and including December 20, 2005, without prejudice to the Debtors'

rights to seek further extensions, and (ii) grant the Debtors such other and further relief as

is just and proper.

Dated:  May 27, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By    _s/ D. J. Baker_
    D. J. Baker
    Sally McDonald Henry
    Rosalie Walker Gray
    Adam S. Ravin
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

Co-Attorneys for Debtors

SMITH HULSEY & BUSEY

By    _s/ Cynthia C. Jackson_
    Stephen D. Busey
    James H. Post
    Cynthia C. Jackson,
    Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)

Co-Attorneys for Debtors

581514.10-New York Server 1A - MSW

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER EXTENDING EXCLUSIVE PERIODS FOR FILING CHAPTER 11**
**PLANS AND OBTAINING ACCEPTANCES OF SUCH PLANS**

These cases came before the Court for hearing on June 16, 2005, upon the

motion of Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-

captioned cases, as debtors and debtors-in-possession (the "Debtors"), for entry of an

order under 11 U.S.C. §1121(d) extending their initial 120-day exclusive period for

proposing plans of reorganization (the "Exclusive Proposal Period") and their

corresponding initial 180-day exclusive period for obtaining acceptances of plans of

reorganization (the "Exclusive Solicitation Period"), each for an additional 120 days (the

"Motion").  The Court has reviewed the Motion, considered the evidence and heard the

argument of counsel.  After due deliberation and finding proper notice has been given,

the Court determines that good cause exists to grant the relief and that granting the relief

is in the best interest of these estates and creditors.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.    The Motion is GRANTED.

2.    The Debtors' Exclusive Proposal Period is extended to and including

October 19, 2005.

3.    The Debtors' Exclusive Solicitation Period is extended to and including December 20, 2005.

4.    Entry of this Order is without prejudice to (a) the Debtors' right to seek from this Court other or further extensions of the Exclusive Periods, or (b) any party in interest's right to seek to reduce the Exclusive Periods for cause.

Dated June ___, 2005 in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.