UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In Re: | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | Case No. 05-03817 |
| Debtors. | (Jointly Administered) |

### MOTION TO SHORTEN TIME FOR DEBTOR TO ASSUME OR REJECT AN EXECUTORY CONTRACT

Heritage Mint, Ltd. (hereinafter "Heritage"), by and through its undersigned attorneys, hereby moves this Court for an order shortening the time for the Debtor Winn-Dixie to assume or reject its executory contract (a copy of which is attached hereto as Exhibit B) with Heritage pursuant to 11 U.S.C. § 365 and ordering Winn-Dixie to immediately file its motion to assume or reject the executory contract. This motion is supported by the affidavit of Rick Roberg attached as Exhibit A.

Dated this 27th day of May, 2005.

LANG & BAKER, PLC

By:  /s/ Suzanne K. Weathermon
Kent A. Lang
Suzanne K. Weathermon
8233 Via Paseo del Norte, Suite C-100
Scottsdale, AZ 85258
(480)947-1911

and

SHUTTS & BOWEN LLP

By:   /s/ Andrew M. Brumby
      Andrew M. Brumby
      Florida Bar No. 650080
      Kathleen M. Krak
      Florida Bar No. 045548
      300 S. Orange Ave., Suite 1000
      Post Office Box 4956 (32802-4956)
      Orlando, Florida 32801-5403
      (407) 423-3200

Attorneys for Heritage Mint, L.L.C.

## MEMORANDUM OF POINTS AND AUTHORITIES

Good cause exists in this case pursuant to 11 U.S.C. § 365(d)(2) to shorten Winn-Dixie's time to assume or reject its executory contract for the purchase of goods from Heritage. Time to assume or reject can be shortened if upon balancing the potential benefits and the potential harms, the Court determines that the debtor has reasonable time to decide whether to assume or reject and if shortening time would not prevent the successful rehabilitation of the debtors. In this case, because Winn-Dixie already seeks to return all of the goods it purchased from Heritage pre-petition, including Heritage's reclaimed goods, plus additional goods Winn-Dixie purchased post-petition, and because Winn-Dixie's potential return of goods in excess of the reclamation claim may create voidable transfers, Winn-Dixie's immediate assumption or rejection is necessary to allow Heritage to determine its rights and duties with respect to the returns.

### I. Jurisdiction

1. This Motion presents a core proceeding in which the Court is entitled to enter a final order under 28 U.S.C. §§ 1334 and 157(b)(2)(A).

2. This is a contested matter pursuant to Bankruptcy Rule 9014. This motion is supported by the following memorandum of points and authorities.

## II. Factual Background

3. On June 3, 2004, Winn-Dixie executed a contract for the purchase of goods from and payment to Heritage (hereinafter "the Contract").

4. Heritage began shipping goods pursuant to the contract on or about February 15, 2005.

5. The Contract contains recoupment and reconciliation provisions that allow Heritage to credit Winn-Dixie's account upon its return of goods in "original factory sealed unopened master cartons."

6. On or about February 21, 2005, Winn-Dixie commenced its current Chapter 11 proceedings in this Court.

7. As of February 21, 2005, Heritage had delivered a total of $227,214.72 in goods to Winn-Dixie under the contract (the Pre-petition Deliveries). Winn-Dixie has not paid for the Pre-petition Deliveries.

8. On February 22, 2005, Heritage delivered to Winn-Dixie its demand for reclamation of Merchandise claiming rights to the return of goods valued at $285,825.12. Winn-Dixie subsequently paid for the goods delivered on February 22, 2005, thereby reducing the reclamation claim to $227,214.72.

9. In accordance with the terms of the Contract, Heritage is entitled and obligated to credit returned goods against Winn-Dixie's account for unpaid invoices.

10. Heritage has delivered goods totaling $528,016.08 post-petition (the Post-petition Deliveries). Winn-Dixie has paid all invoices for the Post-petition Deliveries.

11. Winn-Dixie now seeks to return Pre-petition and Post-petition Deliveries. Winn-Dixie reports to Heritage that it intends to return goods far in excess of Heritage's reclamation claim.

12. Performance remains due and owing by both parties under the Contract. Winn-Dixie owes Heritage payment for goods it received between February 15 and February 21, 2005, and Heritage owes Winn-Dixie credits for unpaid merchandise that Winn-Dixie chooses to return. Both parties owe duties of performance on any future orders placed pursuant to the Contract.

### III. Discussion

13. The Bankruptcy Court may shorten the deadline for a chapter 11 debtor in possession to reject or assume an executory contract. 11 U.S.C. §365(d)(2), §1107; *In re Will*, 33 B.R. 843 (Bankr. Ct. M.D. Fla. 1983).

14. An executory contract is one in which the obligation of both the debtor and the creditor are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance by the other. *In re Resource Technology Corporation*, 254, B.R. 215, 223 (Bankr. Ct. N.D. Ill. 2000). The Contract in this case is such a contract, with Winn-Dixie owing payment obligations to Heritage and Heritage owing Guaranteed Sale obligations to Winn-Dixie. The Bankruptcy Court has jurisdiction to order Winn-Dixie to assume or reject the contract.

15. Even when time is shortened, a debtor in possession is entitled to reasonable time to decide whether to accept or reject an executory contract. *See, Brainiff v. GPA Group, PLC (In re Brainiff)*, 118 B.R. 819, 845 (Bankr. Ct. M.D. Fla 1989) *citing, Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir. 1982). What constitutes a reasonable time is within the discretion of the bankruptcy court based on the facts and circumstances of each case. *Id*.

16. In *Dunes Casino Hotel*, 63 B.R. 939, 949 (D.N.J. 1986), the district court sitting as a court of appeal held that when a bankruptcy court shortens a debtor's time to assume or reject a contract, it should consider the nature of the interests at stake, the balance of the harms to

4

the parties, the good to be achieved, the safeguards available to the parties, and whether the action would be arbitrary. Quoting, *In re GHR Energy Corp.*, 41 BV.R. 668, 676 (Bankr. D. Mass. 1984) and *In re Midtown Skating Corp.*, 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980).

17. Similarly, in determining what constitutes a reasonable time, the court in *Theatre Holding Corp.* (681 F.2d at 105-106) considered similar factors, including: (1) the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code; (2) the importance of the contract to the debtor's business and reorganization; (3) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan; and (4) whether exclusivity has terminated pursuant to 11 U.S.C. §1121.

18. Above all, the court should interpret reasonable time consistent with the broad purpose of Chapter 11, which is to "permit successful rehabilitation of debtors." *NLRB v. Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 1194 (1984).

### A. The Nature of Heritage's interests with respect to the Deliveries, the Returns, and the Contract make immediate assumption or rejection necessary.

19. During the pre-assumption period, although non-debtors are required to perform in accordance with a contract, the contracts terms are "temporarily unenforceable against the debtor." *In re The Travelot Company*, 286 B.R., 462, 465 (Bankr. S.D. Ga. 2002) citing, Univ. Med. Ctr. V. Sullivan (In re Med Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992).

20. Outside of bankruptcy law, Heritage would be obligated and entitled under the Guaranteed Sale Provisions to credit Winn-Dixie's account with the value of all goods Winn-Dixie elected to return.

21. Heritage believes it may currently be estopped by the automatic stay of 11 U.S.C. § 362 from receiving returns beyond its reclamation claim, and that both the estate and the post-petition lenders may assert claims to the Post-petition Deliveries.

22. If the Contract is rejected and not assumed, the estate and post-petition lenders may have claims to the goods to the extent of the value of the Post-Petition Deliveries, and therefore Heritage cannot receive the returns without Court approval.

23. If the Contract is assumed, Heritage is obligated to accept the returns and pursue relief to enforce its recoupment rights.

24. Whether the contract is assumed or rejected, requiring Winn-Dixie to file its motion to assume or reject will provide notice to other parties potentially interested in the Post-petition deliveries to assert their claims before the returns are delivered to Heritage.

25. Heritage asserts that its right to credit Winn-Dixie's account with the value of the goods Winn Dixie returns is a right of recoupment, which is not subject to the automatic stay. Recoupment is available when debtors and creditors claims against each other arise out of the same integrated transaction, and is appropriate when claims are so closely intertwined that allowing debtor to escape its obligation would be inequitable. *In re Affiliated of Florida, Inc.*, 258 B. R. 495, 499 (Bankr. M.D. Fla., 2000). However, it is possible that the Court might deem Heritage's reconciliation to be a setoff subject to the automatic stay. In the event the contract is assumed, Heritage will seek this Court's determination that recoupment is available, or in the alternative that the stay may be lifted to allow Heritage to setoff Winn-Dixie's debt in the amount of the value of the returned goods.

26. Until the contract is assumed or rejected, Heritage is bound by competing duties to the estate, the Court, and Winn-Dixie with respect to the returns.

**B. Heritage's rights will be irreparably prejudiced if the court does not shorten Winn-Dixie's time to assume or reject.**

27. Heritage is trapped among competing interests until assumption or rejection. Heritage is on the one hand obligated to perform the contract, accept returns, and perform the

6

accounting function of crediting Winn-Dixie's account for returns. On the other hand, Heritage is prevented by the automatic stay from receiving estate property and calculating any setoff.

28. Under the circumstances, Winn-Dixie's proposal to return goods without making known its intention to assume or reject the Contract could potentially create a claim against the Heritage for the value of any returns it receives. Moreover, while the contract remains unassumed and unrejected, Winn-Dixie is in the position of first having Heritage's Pre-petition Deliveries for free and then using the bankruptcy Court to force the sale of the Pre-petition Deliveries to Heritage in the form of returns.

29. There is no action Heritage can take to safeguard against the potential harms of waiting until plan confirmation to have its contract assumed or rejected.

30. Winn-Dixie reports to Heritage that it intends to return goods far in excess of Heritage's reclamation claim. To prevent further harm to Heritage, it is imperative that Winn-Dixie immediately file its motion to assume or reject the Contract. If the Contract is assumed, Heritage can rest on its obligation to accept all returns pursuant to the Contract and proceed to take steps to recoup. If the Contract is rejected, Heritage is not obligated to accept (and is prevented from accepting) returns that exceed its reclamation claim, and it can take steps to avoid a potential claim by the DIP, trustee, or Trust after confirmation without violating the Contract. The decision of Winn-Dixie to assume or reject the entire Contract[1] is absolutely

---

[1] Winn-Dixie might argue that it elects to assume return provisions, but rejects purchase and payment terms, or alternatively might argue that it elects to assume the contract with respect to some Merchandise but to reject the contract with respect to other Merchandise. However, the obligations owed pursuant to a unified contract cannot be rejected or assumed in pieces. *Brainiff*, 118 B.R. at 845. Therefore, the Winn-Dixie cannot assume its right to return Merchandise pursuant to the guaranteed sale provisions of the Agreement and reject Heritage's right to credit the value of the returned merchandise against its account balance.

7

required before Winn-Dixie begins returning goods, so that Heritage knows what rights and duties it has with respect to the returns.

### C. Winn-Dixie will not be harmed if time to assume or reject is shortened.

31. Winn-Dixie, having decided that it intends to return merchandise and enforce the Guaranteed Sale provisions, it has already determined that Heritage is its best buyer for the Post-petition Deliveries. It should also be in a position to determine immediately whether it intends those returns to constitute a rejection or an enforcement of the Contract. More specifically, to be entitled to return the goods and assert any claim against Heritage at Plan confirmation for credit or refund, Winn-Dixie must assume the Contract.

32. Allowing Winn-Dixie to wait until plan confirmation to assume or reject the Contract under these circumstances is not likely to better permit successful rehabilitation.

### IV. Conclusion: Shortening Winn-Dixie's time to assume or reject is appropriate, and would not be arbitrary given the special circumstances.

Based on the forgoing, the factors present in this case weigh in favor of ordering Winn-Dixie to immediately assume or reject the Contract. First, Heritage will suffer damages beyond the compensation available under the Bankruptcy Code to the extent that Winn-Dixie creates avoidable transfers by returning goods, and forcing Heritage to "repay" Winn-Dixie for merchandise it never paid for in the first place; allowing Winn-Dixie to wait until plan confirmation to assume or reject the Contract, when Winn-Dixie has already determined what it intends to do with the goods, is not likely to better permit successful rehabilitation; and Winn-Dixie, having made the decision to return goods has also had sufficient time to appraise its financial situation and the potential value of the Contract and the goods in formulating a Plan. In these circumstances, an order shortening Winn-Dixie's time to assume or reject the Contract is appropriate.

8

Dated this _27th_ day of May, 2005.

        LANG & BAKER, PLC

By:   /s/ Suzanne K. Weathermon
      Kent A. Lang
      Suzanne K. Weathermon
      8233 Via Paseo del Norte, Suite C-100
      Scottsdale, AZ 85258
      (480)947-1911

      and

SHUTTS & BOWEN LLP

By:   /s/ Andrew M. Brumby
      Andrew M. Brumby
      Florida Bar No. 650080
      Kathleen M. Krak
      Florida Bar No. 045548
      300 S. Orange Ave., Suite 1000
      Post Office Box 4956 (32802-4956)
      Orlando, Florida 32801-5403
      (407) 423-3200

      Attorneys for Heritage Mint, L.L.C.

## AFFIDAVIT OF RICK ROBERG IN SUPPORT OF MOTION TO SHORTEN TIME FOR DEBTOR TO ASSUME OR REJECT AN EXECUTORY CONTRACT

I, Rick Roberg, being first sworn upon my oath, depose and state:

1. I am the Chief Financial Officer of Heritage Mint, Ltd., a creditor of the debtor Winn-Dixie Stores, Inc.. The following statements are based upon my own personal knowledge.

2. On June 3, 2004, Winn-Dixie executed a contract for the purchase of goods from and payment to Heritage (hereinafter "the Contract").

3. Heritage began shipping goods pursuant to the contract on or about February 15, 2005.

4. The Contract contains recoupment and reconciliation provisions that allow Heritage to credit Winn-Dixie's account upon its return of goods in "original factory sealed unopened master cartons."

5. As of February 21, 2005, Heritage had delivered a total of $227,214.72 in goods to Winn-Dixie under the contract (the Pre-petition Deliveries). Winn-Dixie has not paid for the Pre-petition Deliveries.

6. On February 22, 2005, Heritage delivered to Winn-Dixie its demand for reclamation of Merchandise claiming rights to the return of goods valued at $285,825.12. Winn-Dixie subsequently paid for the goods delivered on February 22, 2005, thereby reducing the reclamation claim to $227,214.72.

7. In accordance with the terms of the Agreement, the Heritage is entitled and obligated to credit returned goods against Winn-Dixie's account for unpaid invoices.

8. Heritage has delivered goods totaling $528,016.08 post-petition (the Post-petition Deliveries). Winn-Dixie has paid all invoices for the Post-petition Deliveries.

9. Winn-Dixie now seeks to return Pre-petition and Post-Petition Deliveries. Winn-Dixie reports to Heritage that it intends to return goods far in excess of Heritage's reclamation claim.

10. Performance remains due and owing by both parties under the Contract. Debtor owes Heritage payment for goods it received between February 15 and February 21, 2005, and Heritage owes Winn-Dixie credits for unpaid merchandise that Winn-Dixie chooses to. Both parties owe duties of performance on any future orders placed pursuant to the Contract.

_____
Rick Roberg

STATE OF ARIZONA    )
                    ) ss.
County of Maricopa  )

Subscribed and sworn to before me this 20th day of May, 2005, by Rick Roberg.

_____
Notary Public

My Commission Expires:

Notary Public State of Arizona
Maricopa County
Mary Grant
Expires October 20, 2007



### HERITAGE MINT, LTD.
### Guaranteed Sale Continuity Agreement

THIS AGREEMENT dated this 3rd day of June 2004, by and between Heritage Mint, Ltd., 8241 East Gelding Drive, Scottsdale, AZ 85260 ("Heritage") and Winn Dixie, 7595 Centurion Parkway, Jacksonville, FL 32203 ("Customer").

1. **PRODUCT NAME:**

    "WOW" Dinnerware offered by Heritage Mint, Ltd. (Merchandise)

2. **PARTICIPATING STORES:**

    Approximately 922 stores owned or operated by the Customer.

3. **PROGRAM DATES:**

    Start Date: March 15, ~~2004~~ 2005   End Date: April 26, ~~2004~~ 2005

    Returns Deadline: June 9th, ~~2004~~ 2005.

4. **PROMOTION PRICING:**

    See Attached Exhibit A

5. **PAYMENT TERMS:**

    All invoices will be sent to the Customers place of business, and paid to Heritage as outlined in Exhibit B. Customer will pay 70% of invoice within 30 days of receipt of Merchandise. Customer will withhold 30% of all invoices until required to fund Return of Vendor Credits (RTV's). Final settlement will be paid in 30 days of Heritage Mint, Ltd. reconciliation.

6. **SHIPPING AND FREIGHT:**

    Distribution and reorder shipments will be made as outlined in Exhibit B. Freight charges will be FOB customer's warehouse. Return merchandise, if applicable, shall be shipped FOB customer's warehouse / reclaim center. Heritage reserves the right to arrange and specify carrier for all shipments.

7. **CLAIMS:**

    All claims for shortages, damaged or defective Merchandise shall be evidenced in writing and presented to the carrier and Heritage at the time of delivery. Heritage will not honor such claims if not submitted in writing to the carrier at the time of delivery of Merchandise.

8. **DISPLAYS:**

    One complete display per store will be supplied at no charge to the Customer. Customer agrees to use the displays and set the up properly according to the instructions. At Heritage's discretion, additional displays can be supplied at no cost for lost or damaged displays.



EXHIBIT B

Heritage Mint, Ltd. Continuity Agreement
Page 2

## 9. REPORTING:

Customer shall supply Heritage with weekly sales reported by item on Tuesdays of each week for the duration of the program. This report will also show inventories remaining in stores and in the Customer's warehouse(s). Heritage reserves the right to approve quantities for the original order and all reorders of Merchandise based on reported inventories and sales.

## 10. GUARANTEED SALE PROVISIONS:

Mark which provision applies – A, B, or C. Heritage and Customer will initial applicable provision. All product will be credited at customer cost per attached pricing sheet (Exhibit A). Restocking fees may apply as outlined in item 12.

Initials
Heritage Customer

A) ___ Guaranteed Sale to the Retail Selling Unit/Gift Box – 10.1, 10.2, and 10.3 apply ___ ___

B) ___ Guaranteed Sale to the Unopened Inner Case – 10.1 and 10.2 apply. ___ ___

C) _X_ Guaranteed Sale to the Factory Sealed Carton – 10.1 applies. ___ ___

10.1 Original Factory Sealed Unopened Master Cartons – Merchandise that was shipped to the Customer's distribution center or participating stores, that has never been opened, can be returned for credit.
10.2 Factory Sealed Unopened Inner Cartons – Merchandise in factory fresh sealed inner cartons which have not been opened can be returned for credit.
10.3 Individual Retail Selling Unit – Merchandise in retail selling packaging, i.e. individual box, poly bag, clam pack, or inner pack units, in saleable condition without any markings or tags applied by customer can be returned for credit.

Heritage will not accept any returns of Merchandise after final reconciliation of program has been completed.

## 11. RESTOCKING FEES:

A) _8_ % restocking fee on Original Factory Sealed Unopened Master Cartons.
B) ___ % restocking fee on Factory Sealed Unopened Inner Cartons.
C) ___ % restocking fee on Individual Retail Selling Units.
D) Individual pieces that are not in the Individual Retail Selling Unit configuration cannot be returned. If returned no credit will be given.

## 12. SPECIAL PROVISIONS:

Any special provisions in addition to the agreed provisions of this agreement are outlined in Exhibit C.

Heritage Mint, Ltd. Continuity Agreement
Page 3

### 13. GENERAL CONDITIONS:

The customer agrees to follow the sales plan as offered. This promotion must be run per the attached offer. Any deviation from the attached retail offer will void the guaranteed sale provisions stated on this contract. If the promotion of the Merchandise is interrupted for any reason beyond the control of Heritage or the Customer, the Customer agrees to either extend or rerun the promotion. Neither party will be held responsible for delays as a result of war, fire, flood, strikes, Act of God, or any other conditions beyond their control.

### 14. MISCELLANEOUS:

14.1 Successors and Assigns. The rights and obligations of the parties hereunder shall inure to the benefit of, and be binding and enforceable upon, the respective successors, assigns and transferees of either party.

14.2 Governing Law. This Agreement shall be governed by and interpreted under the laws of the State of Arizona.

14.3 Attorney Fees. In the event of the bringing of any action or suit by a party hereto against another party hereunder by reason of any breach of any of the covenants, agreements or provisions on the part of the other party arising out of this Agreement, then in that event the prevailing party shall be entitled to have and recover from the other party all costs and expenses of the action or suit including, without limitation, attorney fees and costs.

14.4 Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

14.5 Amendments. This Agreement may be amended or varied only by a document, in writing, of even or subsequent date hereof, executed by the parties hereto.

14.6 Severability. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforce-ability of any other provision.

14.7 Headings. The titles or section headings of the various provisions of this Agreement are intended solely for convenience and ease of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any such provisions.

The parties hereto agree to the terms hereof and by signing below agree to be legally bound by them.

"HERITAGE MINT, LTD."

By: _Craig Wright_
Title: VP - Dir. of Sales
Date: 6-23-2004

"CUSTOMER"

By: _[signature]_
Title: Business Development/Marketing
Date: 6-22-04

REV 11.2002

# Heritage Mint Ltd.

## Addendum
## "WOW" Dinnerware

This addendum is between Heritage Mint Ltd. and Winn Dixie Corp. regarding the *"WOW" Dinnerware* sales agreement dated June 3, 2004.

- Terms: Winn Dixie will pay 100% of all WOW Dinnerware invoiced on or after February 22, 2005, within 15 days of receipt of merchandise

"HERITAGE MINT, LTD."

By: _____

Title: _____

Date: _____
CTRBW:100

"Winn Dixie Corp."

By: _____

Title: DIRECTOR - GMD

Date: 2/22/05

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of May 2005, I have served a copy of the foregoing document on the parties set forth below by U.S. Mail, postage prepaid thereon, to be delivered to their last known addresses:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254-3699
Attn: Managing Agent

Adam S. Ravin, Esq.
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036

Cynthia C. Jackson, Esq.
Smith, Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202

Elena L. Escaimilla
Office of the United States Trustee
135 W. Central Boulevard, Suite 620
Orlando, FL 32801

Dennis F. Dunne
Milbank, Tweed, Hally & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005

John B. MacDonald
Akerman Senterfitt
50 N. Laura Street, Suite 2500
Jacksonville, FL 32202

/s/ Andrew M. Brumby
Andrew M. Brumby

10323006_1.DOC

10