UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,      Case No.: 3:05-bk-03817-JAF

    Debtors.      Chapter 11

    Jointly Administered

_____/

**LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO APPLICATION FOR AUTHORITY TO RETAIN DJM ASSET MANAGEMENT, LLC AND THE FOOD PARTNERS, LLC AS SPECIAL REAL ESTATE CONSULTANTS TO DEBTORS**

    The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned cases of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submits this limited objection to the application (the "Application"), dated May 13, 2005, of the Debtors for Authority to Retain DJM Asset Management, LLC and The Food Partners, LLC as Special Real Estate Consultants, and, in support thereof, respectfully represents as follows:

**BACKGROUND**

    1.    On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1330 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

    2.    On March 1, 2005, the United States Trustee duly appointed the Committee.

    3.    By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered

{JA238019;1}

for procedural purposes only. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

4. The Debtors extended the Committee's deadline to file an objection to the Application until today -- May 27, 2005.

## LIMITED OBJECTION

5. By the Application, the Debtors seek authority to retain DJM Asset Management, LLC ("DJM") and The Food Partners, LLC ("TFP" and, collectively, "DJM/TFP") in these cases to provide consulting services in connection with the valuation and disposition of the Debtors' real property assets on the terms, and subject to the conditions, set forth in the Real Estate Consulting Agreement attached to the Application (the "Consulting Agreement").

6. The Committee does not dispute either that the Debtors need the assistance of qualified professionals in dealing with their real estate assets, nor that DJM/TFP are highly qualified professionals, well suited to performing those services for which the Debtors are seeking to retain them. Furthermore, the Debtors and DJM/TFP have already accommodated some of the Committee's concerns with respect to the proposed terms of DJM/TFP's retention by making suggested changes to the proposed form of order seeking approval of the Application. However, some of the Committee's concerns remain unresolved and, accordingly, the Committee is compelled to file this limited objection.[1]

7. **Cooperating Broker.** The Consulting Agreement provides generally that when DJM/TFP closes a transaction in which the Debtors' real property (whether a lease or owned property) is transferred to a third party, DJM/TFP will be entitled to a fee equal to the

---

[1] The Committee will continue to discuss its concerns with the Debtors and DJM/TFP in an effort to consensually resolve them, if possible, prior to the hearing on the Application.

{JA238019;1}  2

greater of (i) 2% of the Gross Proceeds[2] from the disposition of property and (ii) in the case of a lease, 2% of the dividend that would have been payable to the applicable landlord if such lease had been rejected. The Consulting Agreement further provides that the commission payable to DJM/TFP will be increased to 3% if "a cooperating broker is involved in the particular transaction."

8. The proposed 1% increase in the commission is nothing more than an attempt to soften the economic impact to DJM/TFP of sharing its earned 2% commission with a broker representing the proposed buyer. The Committee does not believe the proposed 1% increase is appropriate.

9. As is typical in real estate transactions, the Consulting Agreement contemplates that DJM/TFP will split its brokerage commission if the buyer has a broker. Instead of splitting the commission, however, the Consulting Agreement increases the commission earned and then splits it. The Committee does not believe the estates and their stakeholders should be required to insulate DJM/TFP and bear this additional cost. The proposed 2% commission is reasonable and adequate compensation even if DJM/TFP has to split it with a broker for a buyer.

10. **Appropriate Oversight.** There are several provisions in the Consulting Agreement that allow the Debtors unfettered discretion in authorizing compensation to DJM/TFP without oversight from any other party in interest or approval by this Court. This is simply not appropriate, and either the Debtors should be required to seek this Court's approval, after notice and an opportunity for parties to object, or obtain the prior consent of the Committee -- which has the fiduciary responsibility to the general unsecured creditors to ensure that the Debtors conserve the estates' resources -- before such additional expenses are incurred.

11. Specifically, the Committee believes additional oversight is necessary

---

[2] Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to them in the Application.

with respect to the following:

    (a) **Hourly Fees.** The Consulting Agreement provides that DJM/TFP will be entitled to hourly compensation for "additional consulting services" that the Debtors may request DJM/TFP to provide. The Committee believes that the Debtors should either be required to seek this Court's approval (on notice to parties in interest and after a hearing) before expanding DJM/TFP's services or obtain the prior consent of the Committee. The Committee is concerned that such services could be (i) unnecessary, (ii) covered by other provisions in the Consulting Agreement, or (iii) provided (or should be provided) by other professionals retained by the Debtors (<u>e.g.</u>, the Debtors' financial advisors, Blackstone Group, L.P. ("<u>Blackstone</u>")).

    (b) **Excluded Party.** The Consulting Agreement provides that the Debtors can request that DJM/TFP become involved in negotiations with an Excluded Party (and thus become entitled to a fee for transactions with such Excluded Party). The Committee believes it should be party to any decision concerning which professional is most appropriate for such negotiations.

    (c) **Budget for Marketing Expenses.** Finally, the Consulting Agreement provides that DJM/TFP will be entitled to compensation for reasonable marketing expenses, provided that such expenses are within the budget pre-approved by the Debtors. For some unfathomable reason, the Debtors are refusing to consult with the Committee regarding the reasonableness of any such budget and does not believe the Debtors propose to share this budget with the Court.

12. The Committee respectfully submits that appropriate oversight is necessary to ensure that the interests of the estates' creditors are protected.

13. **Multiple Professionals.** As the Court is aware, the Debtors have retained multiple professionals to assist them in their asset disposition program. The Committee has had numerous discussions with the Debtors and their professionals to ensure that there is no duplication of efforts and that multiple commissions are not earned on the same sales, which the Debtors are and have been working toward. The Committee has been assured that these issues will be addressed in revised agreements and orders. However, as of the filing of this limited objection, the Committee has not yet received the Debtors' proposal on how, or in what document, they intend to address these issues. Accordingly, the Committee expressly reserves its right to make further objections with respect to this issue.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court (a) sustain the limited objection, (b) enter an order denying the Application in its entirety with prejudice unless the proposed retention is modified to account for the concerns raised by this limited objection and (c) grant the Committee such other and further relief as is just and proper.

Dated: May 27, 2005

        AKERMAN SENTERFITT

By: */s/ Patrick P. Patangan*
    John B. Macdonald
    Florida Bar No.: 230340
    E-mail: john.macdonald@akerman.com
    Patrick P. Patangan
    Florida Bar No.: 348340
    E-mail: patrick.patangan@akerman.com
    50 N. Laura St., Suite 2500
    Jacksonville, FL 32202
    Telephone: (904) 798-3700
    Facsimile: (904) 798-3730

Proposed Counsel for the Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al.

and

MILBANK, TWEED, HADLEY & McCLOY LLP
Dennis F. Dunne (DD)
Matthew S. Barr (MB)
Lena Mandel (LM)
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000

Counsel for the Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al.