# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

## DEBTORS' MOTION FOR AN ORDER ESTABLISHING
## BIDDING PROCEDURES FOR THE SALE OF ASSETS

The debtors, Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), move the Court for entry of an order pursuant to sections 105(a) and 363 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), establishing general bidding procedures for the Debtors' sale of (i) any leases or executory contracts, and (ii) any other assets with a value greater than $150,000.00 (whether individually or as a group of leases, executory contracts and/or other assets) (the "Motion").[2]  In support of the Motion, the Debtors respectfully represent as follows:

---

[1]  In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

[2]  By Motion dated May 13, 2005, the Debtors ask the Court for authority to sell assets with a value of $150,000.00 or less, without Court approval or the use of any particular bidding procedures (Docket No. 1184). This Motion is set for hearing in June 2, 2005.

## Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner. On March 1, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors operate more than 900 stores in the United States with nearly 79,000 employees. Substantially all of the Debtors' store locations are leased rather than owned.

## Basis for Relief

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested by this Motion are Bankruptcy Code sections 105(a), and 363 and such relief is subject to Rule 6004, Bankruptcy Rules.

6.      Prior to the Petition Date, the Debtors and their financial advisors began a comprehensive analysis of the Debtors' businesses to determine how best to maximize their value and to compete in today's marketplace.  In connection with this market analysis, the Debtors announced a series of actions designed to improve their competitive position, which the Debtors refer to as their "Strategic Plan".

7.      Since the Petition Date and in furtherance of the Debtors' Strategic Plan, the Debtors and their advisors have continued to identify and market assets, such as the corporate airplanes, that should be sold as part of the Debtors' restructuring efforts.  The Debtors believe that it would be in the best interests of their estates and creditors to establish general bidding procedures to be used consistently for the sale of any asset in the course of these Chapter 11 cases.

### Relief Requested

8.      By this Motion, the Debtors seek entry of an order approving the bidding procedures described in the attached Exhibit A for the sale of assets throughout the course of these Chapter 11 cases (the "Bidding Procedures") and authorizing and approving in advance, the Debtors' ability to offer prospective purchasers a termination fee, overbid protection, and/or release protection, the details of which will be filed with the Bankruptcy Court separately (collectively, the "Bid Protections").

9.      These Bidding Procedures were designed with the assistance of the Debtors' advisors, are based upon industry standards, and are intended to generate interest and obtain the highest value for the sale of assets.  The Bidding Procedures describe, among other matters, the

manner in which bidders and bids become "qualified" and the required bid documents and deadlines.

10.     If approved, the Bidding Procedures permit the Debtors in some circumstances, and in their sole discretion, to offer Bid Protections to prospective purchasers. The Debtors are filing a separate motion with the Bankruptcy Court for an order authorizing the Debtors to file these Bid Protections under seal[3]. Any Bid Protections offered to a prospective purchaser that becomes a stalking horse bidder for a particular asset will be disclosed when the Debtors seek Bankruptcy Court approval for such sale.

11.     Although the Debtors are not seeking approval of any specific transaction by this Motion, the Debtors are requesting authority to implement the Bidding Procedures, enter into binding agreements, and in their sole discretion, to offer one or more of the Bid Protections to stalking horse bidders. Section 105(a) of the Bankruptcy Code provides in pertinent part that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The Debtors' use of property outside the ordinary course should be approved if the Debtors demonstrate a sound business justification for the proposed transaction. See, e.g., In re Tropical Sportswear Int'l Corp., 320 B.R. 15 (Bankr. M.D. Fla. 2005).

12.     The relief requested by the Debtors is in the best interests of the Debtors' respective estates and creditors because the Bidding Procedures will enable the Debtors to obtain the highest and best purchase price for any asset the Debtors ultimately seek to sell. Similar

---

[3]     By filing the proposed Bidding Protections under seal, the Debtors will prevent prospective bidders from knowing the exact protections and termination fees the Debtors are authorized to offer, which will enhance the Debtors' bargaining powers for the benefit of their estates and creditors.

procedures have been successfully used in other cases of comparable magnitude.  See, e.g., In re Friedman's, et al., Case No. 02-B02474 (Bankr. S.D. Ga. April 19, 2005); In re Kmart Corp., Case No. 02-2474 (Bankr. N.D. Ill. March 27, 2002); and In re Service Merchandise Company, Inc., et al., Case No. 399-02649 (Bankr. M.D. Tenn. June 18, 1999).

13.     In addition, the Bid Protections contemplated by the Bidding Procedures are reasonable and necessary to preserve and enhance the value of the assets to be sold.  As such, the Bankruptcy Court is authorized to approve these Bid Protections under sections 363 and 105 of the Bankruptcy Code.  See, e.g., Calpine Corp. v. O'Brien Envtl. Energy, Inc., 181 F.3d 527 (3d Cir. 1999) (allowing termination fees where necessary to preserve estate value).  Bankruptcy courts generally authorize bidding protections where such protections enhance rather than deter bidding.  See, e.g., In re: 995 Fifth Ave. Assn., L.P., 96 B.R. 24 (Bankr. S.D.N.Y. 1989).  Under the Bidding Procedures, potential bidders will be obligated to execute a Purchase Agreement and submit an earnest money deposit.  In light of these conditions and the risk posed to bidders that they may not be the successful bidder, the Debtors believe that potential bidders may be reluctant to submit bids without some form of protection for their investment of time and money.

14.     Moreover, the Debtors' ability to offer Bid Protections is beneficial to the Debtors' estates and creditors by providing the incentive needed to induce a bidder to increase its bid prior to an auction.  To the extent bids can be improved prior to an auction, a higher floor is established for further bidding.  Thus, even if a bidder is offered one or more forms of Bid Protections and is ultimately not the successful bidder, the Debtors will still have benefited from the higher floor established by the improved bid.  The Debtors will exercise prudent business judgment before offering any of the Bid Protections and will do so only if such protection will result in greater overall value to their estates and creditors.

15.     The Debtors, based upon the advice of their financial advisors believe that the Court's advance approval of the proposed Bid Protections will significantly contribute to a robust auction process by inducing bidders to submit preemptive bids.    Under these circumstances, the Court should defer to the Debtors' business judgment to provide Bid Protections.   See, e.g., In re Intergrated Resources, Inc., 147 B.R. 650 (S.D.N.Y. 1992).   The Court's approval of these Bid Procedures and Bidding Protections in advance of the bidding process—and as to the Bid Protections, under seal—has been approved and successfully used in other cases of similar magnitude.   See, e.g., In re Adelphia Communications Corporation, et al., Case No. 02-41729 (Bankr. S.D.N.Y. September 27 and October 22, 2004).

16.     Notice of this Motion has been given to (a) the Office of the United States Trustee for the Middle District of Florida, (b) counsel for the agent for the Debtors' secured lenders, (c) counsel for the Creditors' Committee, and (d) all parties on the Master Service List.  No other notice need be given.

## Conclusion

17.     For the foregoing reasons, the Court's approval of the Bidding Procedures, including the Court's advance authorization for the Debtors to offer prospective purchasers one or more of the Bid Protections, is in the best interests of the Debtors' respective estates and creditors, and is necessary to preserve the value of the Debtors' estates.

WHEREFORE, the Debtors request entry of an order substantially in the form attached as Exhibit B, approving and authorizing the Debtors to implement the Bidding Procedures and Bid Protections and for such other relief as the Court deems just.

Dated: May 27, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By /s/ D.J. Baker
     D. J. Baker
     Sally McDonald Henry
     Rosalie Gray
     Eric M. Davis

Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

Co-Attorneys for Debtors

SMITH HULSEY & BUSEY

By /s/ Cynthia C. Jackson
     Stephen D. Busey
     James H. Post
     Cynthia C. Jackson, F.B.N. 498882
     Eric N. McKay

225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)

Co-Attorneys for Debtors

**Exhibit A**

## EXHIBIT A

### Bidding Procedures

Set forth below are the bidding procedures (the "Bidding Procedures") to be used by the debtors, Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") for the sale of any of the Debtors' assets in these cases including, (i) the assumption and assignment of executory contracts and unexpired leases and (ii) any other assets that have a value greater than $150,000, either individually or as a group, as determined by the Debtors, after consultation with the financial advisors of the committee of unsecured creditors (the "Committee's Professionals").

### The Bidding Process

The Debtors will (a) identify the assets to be sold, (b) solicit letters of interest for the assets, (c) review the letters of interest to designate which proposals are acceptable for the assets, (d) distribute bid packages to bidders with acceptable bids, (e) receive and review bid packages from acceptable bidders, (f) coordinate the efforts of acceptable bidders in conducting their respective due diligence investigations, (g) review, after consultation with the Committee's Professionals, bid packages to determine initial bids and negotiate offers, (h) solicit qualified competing bids, and (i) ultimately determine, after consultation with the Committee's Professionals, the successful bidder. The Debtors reserve the right, after consultation with the Committee's Professionals, to amend these procedures and to adopt such other rules and procedures for the bidding process that will better promote the goals of the bidding process and maximize value received for any of the subject assets.

### Due Diligence

The Debtors will provide confidential information on assets to be sold to potential purchasers (the "Initial Information"). Before receiving Initial Information, each potential purchaser must execute a confidentiality agreement, in a form satisfactory to the Debtors. The Debtors may make the Initial Information and other information available electronically. The Debtors are not obligated to furnish any due diligence information after the Bid Deadline for Qualified Competing Bids (as defined below) or to any person or entity that the Debtors determine is not reasonably likely to be a Acceptable Bidder (as defined below).

### Qualified Proposals, Qualified Bids, Initial Bids and Bid Packages

Any person or entity that seeks to acquire (i) a lease or executory contract or (ii) any other asset from the Debtors with a value of $150,000 or more, either individually or as a group (as determined by the Debtors, after consultation with the Committee's Professionals), must submit a non-binding letter of interest to the Debtors, which must include (a) a proposed purchase price for the asset, (b) an identification of any due diligence required by the proposed purchaser, (c) the proposed timing of the purchase, and (d) any material conditions to which the proposed purchase is subject (the "Proposal"). The Debtors will review each Proposal received to determine in its sole

discretion, after consultation with the Committee's Professionals, which, if any, represents an acceptable offer for the relevant asset (an "Acceptable Proposal").

If the Debtors determine, after consultation with the Committee's Professionals, that one or more Acceptable Proposals for a particular asset has been received, the Debtors will provide each entity that submitted an Acceptable Proposal (an "Acceptable Bidder") with a bid package, including, among other things, (a) a deadline for receiving an initial bid (the "Initial Bid Deadline"), (b) a form asset purchase agreement tailored to the type of asset to be purchased (the "Purchase Agreement"), (c) a form financial declaration evidencing the bidder's financial wherewithal to consummate the transaction and satisfy all of the obligations required by the applicable asset purchase agreement and, if the bidder seeks to assume any unexpired lease or executory contract in connection with such sale, the bidder's ability to provide adequate assurance of future performance under Section 365(f)(2) of the Bankruptcy Code, and a detailed description of the intended use of the premises upon assignment of the lease (the "Declaration"), (d) if applicable, a form assumption and assignment agreement or lease termination agreement, and (e) a form sale order (the "Sale Order").

## Deadline for Initial Bids

Any Acceptable Bidder who wants to proceed with the sale process, must submit an initial bid by the Initial Bid Deadline to the representatives of the Debtors and the Committee's Professionals identified in the bid package.

If required by the instructions included in the relevant bid package, to qualify for further bidding, each initial bid must (a) be received by the Initial Bid Deadline (unless the Debtors, after consultation with the Committee's Professionals, agree to an extension), and include: (b) a signed Purchase Agreement, (c) a blacklined Purchase Agreement showing changes from the applicable form provided by the Debtors, (d) a completed Declaration, (e) if applicable, a signed assumption and assignment agreement or lease termination agreement together with a blacklined version showing any changes from the forms provided by the Debtors, (f) a cashiers check made out or a wire transfer to the law firm or other escrow agent identified in the bid package, representing the earnest money deposit required under the particular purchase agreement, (g) a blacklined Sale Order showing changes from the form provided by the Debtors and (h) include any other information that the Debtors may have requested, including without limitation, evidence of financial wherewithal to consummate each of the transactions contemplated by the Purchase Agreement and to satisfy each of the obligations thereunder.

No initial bid will be contingent upon any due diligence investigation, the receipt of financing, or any board of directors, shareholders or other entity approval.

Each initial bid must disclose: (i) the identity of the Acceptable Bidder's organization, including confirmation that its initial bid is made as principal for the Acceptable Bidder's account and, if not, the basis upon which the Acceptable Bidder is acting and the identities of all other participants (if any). Each initial bid must also disclose any agreements or understandings between the bidder and any third party with

respect to the subject asset or assets or with respect to any possible transaction involving the Debtors.

The submission of an initial bid shall be deemed to be the bidder's consent for the Debtors and their advisors to share any and all information submitted by such bidder to the Committee's Professionals, the DIP Lenders and any landlord with respect to a nonresidential real property lease and any non-debtor party to an executory contract to be assigned to such bidder.

The Debtors will review, in consultation with the Committee's Professionals, each initial bid and, in the Debtors sole discretion, after consultation with the Committee's Professionals, will select the bidder for the asset that has made the highest and best offer (the "Initial Bidder," the bid of such Initial Bidder is the "Initial Bid."). Once the Debtors identify an Initial Bidder for a specific asset, the Debtors will file a motion with the Bankruptcy Court for an order (a) authorizing the sale of such asset under Sections 363 and 365 of the Bankruptcy Code free and clear of liens, claims and encumbrances, except as may be set forth in the applicable Purchase Agreement, and (b) approving the applicable Purchase Agreement (the "Sale Motion"). Unless the Bankruptcy Court enters an order shortening the notice period for any particular asset sale, the Debtors will set a hearing for each Sale Motion on a date that is not less than 23 days after the Debtors file and serve the Sale Motion (the "Sale Hearing").

## Requirements for Qualified Competing Bids

Any Acceptable Bidder or other entity (in the Debtors' sole discretion) that desires to submit a competing bid for an asset that is the subject of a Sale Motion may do so in writing, provided that such bid:

(a) must include an executed Purchase Agreement, blacklined to show changes from the Initial Bidder's Purchase Agreement and clearly setting forth any conditions for closing.

(b) must, if the bidder intends to take assignment of any executory contract or unexpired lease, include an executed assumption and assignment agreement, or lease termination agreement, blacklined to show any changes from the Initial Bidder's assumption and assignment agreement or lease termination agreement.

(c) must exceed the purchase price agreed to by the successful Initial Bidder by a minimum percentage designated by the Debtors (in their sole discretion, after consultation with the Committee's Professionals) in the applicable Sale Motion;

(e) shall not be contingent upon any due diligence investigation, the receipt of financing, or any board of directors, shareholders or other entity approval;

(f) must include an executed Declaration;

(g) must include a cashier's check or be accompanied by a wire transfer in an amount equal to the greater of (1) the amount of the deposit paid by the Initial Bidder or (ii) 10% of the purchase price proposed by the bidder and an acknowledgement by the

bidder that if such bidder becomes the Successful Bidder at the Auction, the deposit will be increased, if applicable, to 10% of the final purchase price;

(h) must disclose the identity of the bidder's organization, including confirmation that the competing bid is made as principal for the bidder's account and, if not, the basis upon which the bidder is acting and the identities of all other participants (if any).

(i) must disclose any agreements or understandings between the bidder and any third party with respect to the subject asset or assets or with respect to any possible transaction involving the Debtors.

If the competing bid includes each of the documents and conditions set forth in subparagraph (a) – (i) above, the bid will constitute a "Qualified Competing Bid". The submission of a competing bid will be deemed to be the bidder's consent for the Debtors and their advisors to share any information submitted by the competing bidder to the Committee's Professionals, the DIP Lenders and any landlord with respect to a nonresidential real property lease and any non-debtor party to an executory contract to be assigned to such competing bidder.

### Deadline for Competing Bids

Qualified Competing Bids must be served upon and actually received by, the representative of the Debtors and the Committee's Professionals specified in the Sale Motion, on or before 5:00 p.m., Eastern Time, on the date that is **twelve days before the applicable Sale Hearing**. The Debtors may extend (after consultation with the Committee's Professionals) the bid deadlines for the delivery of competing bids once or successively, without further notice and for one or more bidders, but shall not be obligated to do so.

### Reservation of Rights

Notwithstanding the Debtors' receipt of an Initial Bid and/or any Qualified Bids for any particular asset, the Debtors may continue to negotiate and solicit offers for the asset, including package offers that encompass more than one asset. The Debtors reserve the right in the exercise of their sole discretion after consultation with the Committee's Professionals to enter into agreements for the sale of any of their assets, either individually or as part of a package prior to an Auction (as defined below), without further notice to any party, which agreements, if any, will be subject to higher or otherwise better bids at the Auction (including evaluation on a package or individual basis) but which may be subject to bid protections or breakup fees as authorized by the Bankruptcy Court. The Debtors shall retain the right, in the exercise of their sole discretion after consulting with the Committee's Professionals, to withdraw one or more assets from the Auction, including in connection with a package offer, up to the date of the Auction. Notwithstanding anything to the contrary in these procedures, the Debtors also reserve the right, in the exercise of their sole discretion after consulting with the Committee's Professionals, to reject any and all bids for any particular asset. Formal approval of a bid will not occur unless and until the Bankruptcy Court enters an order approving and authorizing the Debtors to consummate the transaction. All bids, including those of the Initial Bidder, are subject to Bankruptcy Court approval. The

Debtors will retain all rights to any assets that are not subject to a bid accepted by the Debtors and approved by the Bankruptcy Court at the Sale Hearing.

### Sale Motion and Notice

For each Purchase Agreement, the applicable Sale Motion will seek approval of, among other things, the sale of the asset free and clear of liens, claims and encumbrances under section 363 of the Bankruptcy Code. For each Purchase Agreement that contemplates the assumption or assumption and assignment of executory contracts or unexpired leases, the applicable Sale Motion will also seek approval of (a) the cure amount, if any, to the extent not previously determined by the Court and (b) assumption or assumption and assignment of the applicable executory contract or unexpired lease or approval of any lease termination agreement.

In each instance, the Debtors shall give notice and an opportunity to object to any known lienholders, and if the sale involves an executory contract or lease, the non-debtor parties to each of these contracts and leases. Any objection with respect to a Purchase Agreement, including with respect to the cure amount or the proposed assumption, assumption and assignment, or rejection of executory contracts or unexpired leases in connection with such Purchase Agreement must be filed with the Bankruptcy Court and served upon and received by the Debtors, the Debtors' counsel, the DIP Lenders' counsel and the Committee's counsel on or before 5:00 p.m., Eastern Time, on the date that is set forth in the applicable Sale Motion before the applicable Sale Hearing. If no objection is timely received by the Debtors, all proposed cure amounts provided in the Sale Motion will be deemed to be correct and binding upon all interested parties.

Unless otherwise ordered by the Bankruptcy Court with respect to a particular Sale Motion, a notice of a Sale Motion and the applicable Sale Hearing (the "Sale Notice") will be given electronically or by U.S. mail: (a) to each party that expressed an interest in an asset that is the subject of the particular Sale Motion; (b) if the Sale Motion seeks the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases or approval of any lease termination agreement, to each non-debtor party to such contract or lease; (c) to parties in interest entitled to receive notice under Bankruptcy Rule 2002 Bankruptcy Rule 6004, Local Rule 2002-1 and the Notice Procedures Order; and (d) if the Purchase Price for any asset exceeds $5,000,000, by publishing notice in the national edition of the Wall Street Journal. The Sale Notice (other than a published Sale Notice) shall also include a copy of these Bidding Procedures with appropriate modifications, including deadlines and contact persons.

### Auction

If one or more Qualified Competing Bids are timely received, an auction will be conducted for the particular asset at the time and location specified in the Sale Motion (an "Auction"). The Debtors shall provide notice of any Auction at least two business days before the Auction to all parties who have submitted a Qualified Competing Bid.

Based upon the terms of the Initial Bid and the Qualified Competing Bids and such other information as the Debtors deem (after consultation with the Committee's Professionals) relevant, the Debtors may conduct an Auction in any manner (and upon any terms and conditions) the Debtors believe (after consultation with the Committee's Professionals) will achieve the maximum value for the particular asset to be sold.

The Debtors may (a) determine, in their sole discretion, after consultation with the Committee's Professionals, which Qualified Competing Bid or Initial Bid, if any, is the highest or otherwise best offer with respect to one or more of the assets, and (b) reject in their sole discretion, after consultation with the Committee's Professionals, any bid (including an Initial Bid) that, in the Debtors' sole discretion (but after consultation with the Committee's Professionals), is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors.

At the conclusion of an Auction, the Debtors after consultation with their advisors, the Committee's Professionals and the DIP Lender, shall review each Qualified Competing Bid and the Initial Bid and identify the highest or best offer for the particular asset (each a "Successful Bid"; such bidder is the "Successful Bidder"). The Debtors reserve the right to refuse to consider any bid that fails to comply with the Bidding Procedures or any other procedures established by the Debtors at any Auction. Where the Successful Bid includes a proposed assumption and assignment of a nonresidential real property lease or executory contract, the Debtors will send a copy of the Successful Bid to the affected landlord by e-mail or overnight express delivery so that it is received by the non-debtor party to such contract or lease no later than seven days prior to the Sale Hearing.

If no Qualified Competing Bids are received for a particular asset, the Debtors may determine that, in their sole discretion, after consultation with the Committee's Professionals that the Initial Bid is the Successful Bid and seek Bankruptcy Court approval of the relevant Purchase Agreement without conducting an Auction or, may reject the Initial Bid and not proceed with any sale of the particular asset.

The Auction may be adjourned as the Debtors, after consultation with the Committee's Professionals, deem appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all participants and the Committee's Professionals.

### Sale Hearing

At the Sale Hearing, the Debtors will request that the Bankruptcy Court approve (a) (i) the Successful Bid, (ii) the applicable Purchase Agreement, and (iii) if the sale includes an executory contract or unexpired lease, the proposed assumption, assumption and assignment, or rejection of any executory contract or unexpired leases, and (b) authorize the Debtors to consummate the proposed transaction. If the sale includes an assumption and assignment of an unexpired lease or executory contract, the Bankruptcy

Court will also determine (i) the appropriate cure amount, if any, (but only if the affected landlord timely filed an objection to the cure amount set forth in the applicable Sale Motion), and (ii) whether the Successful Bidder has demonstrated adequate assurance of future performance under section 365(f)(2) of the Bankruptcy Code.

If the Debtors elect to proceed without an Auction, and no objection to the proposed transaction is filed within the applicable time, the Debtors will file a certificate of no objection and a proposed order (a) approving (i) sale of the asset set forth in the applicable Purchase Agreement, (ii) the applicable Purchase Agreement, and (iii) if applicable, the assumption, assumption and assignment, or rejection of any executory contract or unexpired leases under the applicable Purchase Agreement and (b) authorizing the Debtors to consummate the transaction contemplated by the Purchase Agreement. In that event, the Court may enter the Sale Order without holding a Sale Hearing. If timely objections to the proposed transaction are received, then the Debtors will seek Bankruptcy Court approval at a Sale Hearing.

If the Successful Bidder fails to consummate the Successful Bid in accordance with the terms of its Purchase Agreement, the Debtors (i) will retain the earnest money deposit of such bidder, to the extent provided by the purchase agreement, (ii) maintain the right to pursue all available remedies against the bidder, and (iii) upon consultation with the Committee's Professionals, will be free to consummate the proposed transaction with the next highest or best bidder at the Auction and consummate the transaction with such bidder at the highest price bid by such bidder at the Auction without the need for further Bankruptcy Court approval (or, if that bidder is unable to consummate the transaction at that price, the Debtors, after consultation with the Committee's Professionals, may consummate the transaction with the next highest bidder, at the Auction and so forth).

Any bidders submitting bids will bear their own expenses in connection with the sale, regardless of whether the sale is approved, in accordance with the terms of the applicable Purchase Agreement.

### Additional Conditions Applicable to the
### Initial Bid and all Qualified Competing Bids

Notwithstanding anything to the contrary in these procedures, the bid of the Successful Bidder will remain irrevocable in accordance with the terms of the Purchase Agreement executed by the Successful Bidder. All other bids will be irrevocable until the earlier to occur of (i) 60 days after entry of a Sale Order approving the sale of the assets or (ii) closing of the sale of assets in accordance with the Successful Bid. Notwithstanding the foregoing, the right of the Initial Bidder will be governed by the terms of its Purchase Agreement.

Notwithstanding anything to the contrary in these procedures, the earnest money deposit of the Successful Bidder will be retained by the Debtors in accordance with the terms of the Purchase Agreement executed by the Successful Bidder. Deposits of all other bidders will be retained by the Debtors until the earlier to occur of (i) 60 days after entry of a Sale Order approving the sale of the assets or (ii) closing of the sale of assets in

accordance with the Successful Bid.  Notwithstanding the foregoing, the deposit of the Initial Bidder will be governed by the terms of its Purchase Agreement.

Notwithstanding anything to the contrary, the Debtors, after consultation with the Committee's Professionals, have the right to entertain bids that do not conform to one or more of the requirements set forth in these procedures and to deem such bids Qualified Competing Bids.

Notwithstanding anything to the contrary, any conflict between the terms and conditions of this Order and any Purchase Agreement executed by the Debtors and the bidders (including with the Initial Bidder) will be resolved in favor of this Order.

All Bids, the Auction and the Bidding Procedures are subject to such other terms and conditions as are announced by the Debtors, after consultation with the Committee's Professionals.

## "As Is, Where Is"

The proposed transfer of any of the Debtors' assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates, except to the extent set forth in the applicable Purchase Agreement of each Successful Bidder as accepted by the Debtors and approved by the Bankruptcy Court.  Except as otherwise provided in a Purchase Agreement, all of the Debtors' right, title and interest in and to the respective asset will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests in accordance with Section 363 of the Bankruptcy Code.  Any such claim, lien or encumbrance will attach to the net proceeds of the sale of the particular asset.

Each bidder for any of the Debtors' assets will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct such due diligence regarding the asset prior to making its offer as provided in the Purchase Agreement, (b) has relied solely upon its own independent review, investigation and/or inspection of any document including, without limitation, executory contracts and unexpired leases in making its bid, and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the asset, or the completeness of any information provided in connection with the asset sale or the Auction, except as expressly stated in the particular Purchase Agreement.

**<u>Exhibit B</u>**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

ORDER ESTABLISHING BIDDING
PROCEDURES FOR THE SALE OF ASSETS

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 6004, establishing bidding procedures for the Debtors' sale of any unexpired lease or executory contract or sale of any other asset with a value greater than $150,000, and authorizing the Debtors, in their sole discretion, to offer bid protections to prospective purchasers (the "Motion"). The Court has read the Motion and considered the representations of counsel. Upon the representations of counsel and without objection from the United States Trustee or any interested party, the Court makes the following findings of fact:

A.    This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

B.      The Debtors have provided interested parties with proper notice of the Motion, in accordance with 11 U.S.C. §§ 102(1), 105(a), and 363, Fed. R. Bankr. P. 2002 and 6004, Local Rule 2002-1 and the Notice Procedures Order.[1]

C.      The Debtors have demonstrated that implementing the Bidding Procedures is an exercise of their sound business judgment, complies with section 363 of the Bankruptcy Code, and that such procedures are in the best interests of their estates, their creditors and other parties in interest.   Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.      The Motion is granted.

2.      Pursuant to sections 105 and 363 of the Bankruptcy Code, the Bidding Procedures attached as Exhibit A are approved and the Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

3.      Pursuant to sections 105 and 363 of the Bankruptcy Code, the bid protections filed by the Debtors separately and under seal, are approved.

4.      Pursuant to the Bidding Procedures, once the Debtors identify an Initial Bidder for a specific asset, the Debtors will file a motion with the Court for an order (a) authorizing the sale of such asset under section 363 of the Bankruptcy Code free and clear of liens, claims and encumbrances, subject to higher and better offers, (b) approving the applicable Purchase Agreement (which may, in the Debtors' sole discretion, include one or more of the Bid Protections)

---

[1]   All capitalized terms not otherwise defined by this Order shall have the meaning ascribed to them in the Motion.

495940.1

(the "Sale Motion"), and (c) unless the Bankruptcy Court enters an order shortening the notice period, setting a hearing for the Sale Motion on a date that is not less than 23 days after the Debtors file and serve the Sale Motion (the "Sale Hearing").

5.      If one or more Qualified Competing Bids are timely received, an auction will be conducted for the particular asset at the time and location specified in the applicable Sale Motion (an "Auction"). The Debtors will provide notice of any Auction at least two business days before the Auction to all Acceptable Bidders who submit a Qualified Competing Bid.

6.      At the conclusion of an Auction, the Debtors in consultation with their advisors, the Creditors' Committee and the DIP Lender, will review each Qualified Bid and identify the highest or best offer for the particular asset (each a "Successful Bid"). The Debtors may refuse to consider any bid that fails to comply with the Bidding Procedures or any other reasonable procedures established by the Debtors at any Auction. Where the Successful Bid includes a proposed assumption and assignment of a nonresidential real property lease, the Debtors will send a copy of the Successful Bid to the affected landlord by e-mail or overnight express delivery so that it is received by the landlord no later than seven days prior to the Sale Hearing.

7.      If no Qualified Competing Bids are received for a particular asset, the Debtors may determine that, in their sole judgment, the Initial Bid is the Successful Bid and seek Court approval of the relevant Purchase Agreement without conducting an Auction.

3

8.     At the Sale Hearing, the Debtors will request the Court to (a) approve (i) the Successful Bid, (ii) the applicable Purchase Agreement, and (iii) if the sale includes the proposed assumption and assignment of unexpired leases, and (b) authorize the Debtors to consummate the proposed transaction. If the sale includes an assumption and assignment of a nonresidential real property lease, the Court will also determine (a) the appropriate cure amount, if any, (but only if the affected landlord timely filed an objection to the cure amount set forth in the applicable Sale Motion), and (b) whether the Successful Bidder has demonstrated adequate assurance of future performance under section 365(f)(2) of the Bankruptcy Code.

9.     If the Debtors elect to proceed without an Auction and no objection to the proposed transaction is filed within the applicable time, the Debtors' will file a certificate of no objection and a proposed order (a) approving (i) the sale of the asset set forth in the applicable Purchase Agreement, (ii) the applicable Purchase Agreement, and (iii) if applicable, assumption and assignment of unexpired leases under the applicable Purchase Agreement, and (b) authorizing the Debtors to consummate the transaction contemplated by the Purchase Agreement. In that event, the Court may enter the Sale Order without holding a Sale Hearing. If timely objections to the proposed transaction are received, the Debtors will seek Court approval at a Sale Hearing.

10.     The Court retains jurisdiction to hear and determine all matters arising from implementation of this Order.

4

11.     Notwithstanding Fed. R. Bankr. P. 6004(g) and 6006(d), this Order will take effect immediately upon entry.

Dated this _____ day of May, 2005 in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve a
copy of this Order on all persons
served with the Motion.