UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,    Case No.: 03:05-bk-03817-JAF

       Debtors.    Chapter 11
_____/    Jointly Administered

**OBJECTION BY RICHARD EHSTER TO DEBTOR'S
MOTION FOR ORDER AUTHORIZING IMPLEMENTATION
OF EMPLOYEE RETENTION AND SEVERANCE PLANS**

    Richard Ehster objects to the Debtor's motion for order authorizing implementation of employee retention and severance plans (Document no. 1492) and states that:

A.    Background

    1.    Chapter 11 Case: This Chapter 11 case was filed on February 21, 2005 ("Petition Date"). The Debtor has not filed a plan of reorganization. The Debtor has filed a motion to extend the exclusivity period for filing a plan (Document no. 1477).

    2.    Business of the Debtor. The Debtor is a food and drug retailer operating in the Southeastern United States and the Bahama Islands. The Debtor reports that it is the eighth largest food retailer in the United States and one of the largest in the Southeast, based on revenues. The Debtor operates more than 900 stores with nearly 79,000 employees. In fiscal year 2004, the Debtor reported a loss from continuing operations in the amount of $51,000,000. See debtor's annual report.

    3.    Pre-Petition Bonus to Insiders. According to the Debtor's statement of financial affairs, during the one year prior to the Petition Date, the Debtor gave bonuses and "contingent cash payments" to insiders as follows:

| Insiders | Bonus and Contingent Cash Payment | Total Earnings Including Bonus and Contingent Cash Payment |
|---|---:|---:|
| Laurence Appel | $272,224.01 | $887,844.33 |
| David Henry | $214,948.55 | $719,115.26 |
| Richard Judd | $455,868.00 | $864,639.20 |
| Frank Lazraan | $3,172,583.00 | $8,380,925.25[1] |
| Peter Lynch | $1,545,000.00 | $1,785,244.60 |
| Mark Matta | $386,468.00 | $1,415,366.00[2] |
| Richard McCook | $44,957.00 | $2,095,599.00[3] |
| Paul Novak | $286,998.00 | $722,609.00[4] |
| Bennett Nussbaum | $632,849.00 | $1,211,515.00 |
| Karen Salem | $344,541.00 | $701,968.71 |
| Dennis Sheehan |  | $1,206,499.00[5] |
| John Sheehan | $202,400.00 | $797,845.00[6] |

---

[1] Total compensation included a severance payment in the amount of $4,500,000 after payment of bonuses and "contingent cash payments."

[2] Received severance payment in the amount of $660,000 after payment of bonuses and "contingent cash payments."

[3] Received severance payment in the amount of $1,819,867 at time of "contingent cash payment" and continued to received "regular earnings" for three months after the severance payment.

[4] Total compensation includes severance payment in the amount of $125,000 paid after receipt of bonus.

[5] Total compensation includes severance payment in the amount of $780,000.

[6] Total compensation includes severance payment in the amount of $255,500.

4.     <u>Chapter 11 Retention Plan</u>.  Under the Debtor's Chapter 11 retention plan, approximately 290 of the Debtor's "key employees," excluding the Debtor's chief executive officers, will receive nondiscretionary payments, not to exceed $15,977,093.00, ranging from 25% to 150% over and above their respective annual salaries.  The payments will be made according to the following schedule:

    a.     one-third as soon as practicable following the date of approval of the plan;

    b.     one-third paid on October 15, 2005; and

    c.     one-third paid on the date of confirmation of a plan of reorganization..

5.     <u>Corporate Benefits Severance Program</u>.  The Debtor's corporate benefits severance program will provide for severance benefits for each of the Debtor's executives and employees during the Chapter 11 case.  According to the Debtor "assuming a worst case scenario in which all stores are closed and all executives and employees are terminated, the estimated maximum cost of the corporate severance benefit program will be $119,624,611.80 . . ."  Under the program, the vast majority of the employees (73,000 out of 79,000) will receive between $100 and six weeks' salary as severance benefits.  The Chief Executive Officer and Vice Presidents will receive between one and three times annual salary plus "target bonus."  See Debtor's motion at page 5, paragraph 14.

B.     <u>Argument</u>.

Bankruptcy Code §363(b) provides in relevant part:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

1.     <u>Sound Business Purpose</u>.

In determining whether to authorize the use of property of the estate under

Bankruptcy Code §363(b), "courts require the debtor to show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 252 B.R. 147 (D. Del. 1999). The debtor carries the burden of demonstrating that a use, sale or lease will assist the debtor's reorganization. *Id*. at 155 See, *In re Georgetown Steel Company, LLC*, 306 B.R. 549 (Bankr. D. S.C. 2004) (debtor has the burden of establishing its exercise of business judgment and that its proposal is fair and reasonable).

In evaluating whether a sound business purpose justifies the proposed use under Bankruptcy Code §363(b), the court in *In re Montgomery Ward Holding Corp.*, *supra*, at 154, adopted the following analysis found in *In re Lionel Corp.*, 722 F.2d. 1063 (2d. Cir. 1983):

> In fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.  He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effective of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions, and most importantly, perhaps, whether the asst is increasing or decreasing in value. 722 F.2nd at 1071.  In delineating these factors, the Second Circuit cautioned that "this list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge." *Id*.

*In re Georgetown Steel Company, LLC*, 306 B.R. 549 (Bankr. D. S.C. 2004) the court offered the following framework for analyzing the debtor's business judgment:

> This court favors a balanced approach that does not grant debtors unfettered discretion, but permits the court to analyze factors, based on the facts and circumstances of each case, that guide the Court in assessing a debtor's proposed retention plan. Citation omitted. As such, in the matter before the Court, the Court will examine whether Debtor's proposed Retention Plan is an exercise of Debtor's sound business judgment and is fair and reasonable, considering the facts and circumstances of Debtor as well as the Court's ability, if necessary, to tailor the Retention Plan to accomplish necessary goals.

Although distinguishable from this case, courts have approved employee retention plans based on a fact specific analysis. See In *In re The Colad Group, Inc.*, 2005 WL 1083201 (Bankr. W.D. N.Y. 2005) (approving a key employee retention and incentive program for non-insider personnel who would remain with the company through the completion of the anticipated sale of the debtor's operating assets at a total cost to the estate of less than $25,000.00); In *In re Georgetown Steel Company, LLC*, 306 B.R. 549 (Bankr. D. S.C. 2004) (to qualify for the retention program, the employee must remain employed with the debtor until the earlier of: (i) confirmation of a plan; (ii) the closing of a sale of substantially all assets of the debtor; or (iii) the employee's dismissal without cause). In *In Re Aerovox, Inc.*, 269 B.R. 74 (Bankr. D. Mass. 2001) (determination of whether to approve such plans turns on the facts and circumstances of each particular case).

In *In re Montgomery Ward Holding Corp.*, 252 B.R. 147 (D. Del. 1999), the court upheld the bankruptcy court's approval of an employee retention program for "absolutely essential" employees after finding some key executives had been approached by competitors.

In *In re Interco, Inc.* 128 B.R. 229 (Bankr. E.D. Mo. 1991), the bankruptcy court approved a retention plan, linked to performance, for 130 "critical" executives and approved awards in the amount of $2 million to two executives, payable only in the event the chapter 11 plan was confirmed while the individuals were still in the debtor's employ. *Id*. at 232.

In this case, the debtor's motion fails to demonstrate sound business purpose or that the proposed plans are fair and reasonable under the circumstances.

2.  2005 Bankruptcy Reform Legislation.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Public Law 109-8("BAPCPA") amended Bankruptcy Code section 503 to read as follows:

> c) Notwithstanding subsection (b), there shall neither be allowed, nor paid–
>
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that–
>
> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>
> (B) the services provided by the person are essential to the survival of the business; and
>
> (C) either–
>
> (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

      (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

(2) a severance payment to an insider of the debtor, unless--

  (A) the payment is part of a program that is generally applicable to all full-time employees; and

  (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made; or

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

The foregoing provision is effective for cases filed 180 days after enactment. See BAPCPA. Section 1501. The President signed BAPCPA on April 20, 2005. Therefore, the effective date for the amendment to Bankruptcy Code section 503 will be Oct 17, 2005.

As an explanation for the foregoing amendment commentators have observed :

> A recurring complaint, both from organized labor and from media and regulatory observers, is the payment of what may be perceived as excessive amounts to management of troubled companies under the category of "key employee retention plans"(KERPs) or other devices such as those referred to in the pejorative as "golden parachutes."

W. Brown and L Ahern, <u>2005 Bankruptcy Reform Legislation with Analysis,</u> (West 2005).

Although not immediately effective, BAPCPA provides a clear statement from Congress regarding the use of KERPS in chapter 11 cases and the requirements for a finding of sound business judgment. The debtor's proposal for bonus and severance payments violates virtually every restriction under BAPCPA. Specifically, the debtor's proposal fails to satisfy the limitations in BAPCPA because among other things, a "retention payment" to an insider requires a finding by the court based on evidence in the record that--:

    a.    the person has a "bonafide job offer from another business at the same or a greater rate of compensation."

    b.    the services of the person "are essential to survival of the business."

    c.    in no event may the proposed payment exceed "25% of the amount of any similar transfer . . . made to . . . such insider for any purpose during the calendar year before the year in which such transfer is made. . . .

Similarly, the Debtor's proposal fails to satisfy the limitations imposed on severance payments. Specifically, the amount of the payment to insiders may not exceed "10 times the amount of the mean severance pay given to non-management employees during the calendar year in which the payment is made. . . ."

Therefore, Ehster requests the order of this court denying the motion and granting such further relief as may be appropriate.

**CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing was provided on June 9, 2005, by U.S. mail, first class and/or electronic transmission to Cynthia C. Jackson, Esq., Smith, Hulsey, & Busey, cjackson@smithhulsey.com, 225 Water Street, Suite 1800, Jacksonville, FL 32201 and to those parties on the attached Master Service List.

    /s/ David R. McFarlin
David R. McFarlin
Florida Bar no.: 328855
Kenneth D. Herron, Jr.
Florida Bar No.: 699403
1851 W. Colonial Drive
Orlando, FL 32804
Telephone: (407) 648-0058
Facsimile: (407) 648-0681

Attorneys for Richard Ehster