UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                    CASE NO.:   3:05-bk-03817-JAF

                                          CHAPTER 11

WINN-DIXIE STORES, INC., et al.,

                Debtors.          Jointly Administered
_____

**LIMITED OBJECTION OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AND CAPSTONE ADVISORS, INC. TO DEBTORS' MOTION FOR AN ORDER ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF ASSETS**

The Prudential Insurance Company of America and Capstone Advisors, Inc. (the "Landlords") hereby submit this Limited Objection (the "Limited Objection") to the Debtors' Motion For An Order Establishing Bidding Procedures For The Sale Of Assets (the "Motion"), and respectfully represent as follows:

## I.   INTRODUCTION

Debtors seek approval for bidding procedures in connection with the sale and auction of certain of their assets. Landlords do not object to Debtors' efforts to sell assets or to establish appropriate bidding procedures to govern such sales, but the procedures the Debtors propose fail to address critical Landlord concerns, including the timely production of evidence of adequate assurance of future performance. Landlords' participation and review of such information at an early stage of any request to assign leases will inure to the benefit of all

-1-

parties by potentially reducing the costs associated with a protracted evidentiary hearing on lease assignments.

## II.  **BACKGROUND FACTS**

1.   Winn-Dixie Stores, Inc. and certain affiliated parties (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code on February 21, 2005.   The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.   Landlords are the owners or managing agents of the following four (4) shopping centers wherein Debtors remain tenants operating their store locations (the "Premises") pursuant to unexpired leases of nonresidential real property (the "Leases").

| The Prudential Insurance Company of America | |
|---|---|
| St. John's Commons | Jacksonville, FL |
| Park View Square | Miramar, FL |
| Lake City Shopping Center | Lake City, FL |
| Capstone Advisors, Inc. | |
| Knightdale Crossing | Knightdale, NC |

3.   The Leases are "leases of real property in a shopping center" as that term is used in 11 U.S.C. § 365(b)(3).  *See* In

-2-

re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3rd Cir. 1990).

4.     The Debtors do not specify any time frame for their proposed auction process nor the timing for the provision of adequate assurance of future performance information.     The Motion, as drafted, does not maintain critical protections provided by the Bankruptcy Code.     Therefore, the Landlords request that the Court modify the bidding procedures, and any order approving such procedures, to incorporate the modifications set forth below.

## II.   **ARGUMENT**

### A.   **Landlords should be deemed qualified competing bidders.**

5.     The Bidding Procedures[1] allow any party to submit a letter of interest for any lease or executory contract, as well as any other asset valued at greater than $75,000.     Thereafter, Debtors will review these letters and Acceptable Proposals the opportunity to submit an initial bid.     The Bidding Procedures then provide that the Debtor will file a motion to approve the sale of the asset to the highest initial bid.

6.     The above process may result in an extended period of uncertainty for Landlords.     This should not be used by the Debtors to pressure Landlords into waiving legitimate claims in the bankruptcy case.     In light of the continuing uncertainty with respect to their Leases, Landlords should not have to make

---

[1] Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion and related documents.

an initial bid on its own Leases.  Instead, Landlords should be considered a qualified competing bidder for any proposed sale of their Leases.  The Bidding Procedures provide that Debtors have the discretion to allow any party to submit competing bids.

7.  Because the Landlords are the owners of their respective Leases, there is no need to require the Landlord to submit a deposit or any of the information requested by the Bidding Procedures.  As the owners of their own Leases, the Landlords' bid may take the form of claims waivers and/or cash. As such, the deposit requirement does not make sense for such Landlord bids, especially to the extent that the bid represents a waiver of a claim against the Debtors.  Additionally, the Debtors obviously have the ability to terminate or perform under their own Leases and should not need to provide further information to support such ability.  Finally, allowing the Landlords to participate in submitting competing bids will increase the Debtors' ability to maximize the value of the Lease in any sale.

## B. Landlords are entitled to heightened adequate assurance protections of their shopping center Leases.

8.  The Bidding Procedures will control the process for the sale of certain assets, including unexpired leases.  Section 365 provides, *inter alia*, that the Debtors may not assume and assign a lease unless there is adequate assurance that the proposed assignee can perform under such lease.  11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2).  Where the leases involved are shopping center leases, the Bankruptcy Code

-4-

requires more than the basic adequate assurance of future performance of the Lease under § 365(b)(1)(C). In re Arden and Howe Associates, Ltd., 152 B.R. 971, 976 (Bankr. E.D. Cal. 1993). As such, the Debtors must satisfy the heightened adequate assurance requirements by providing the information required by 11 U.S.C. § 365(b)(3).

9. Adequate assurance under § 365(b)(3) includes the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);

- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

10. The definition of adequate assurance of future performance (and its application) arises not only in connection with an assumption when a tenant has defaulted under a lease, but also to adequate assurance of future performance by an assignee under Section 365(f)(2)(B). In re Sun TV and Appliances, Inc., 234 B.R. 356, 370 (Bankr. D. Del. 1999). The Court may look to many factors in determining what is necessary

-5-

to provide adequate assurance of future performance under Section 365(b), including, sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits or other similar forms of security or guarantee. In re Belize Airways, 5 B.R. 152 (Bankr. S.D. Fla. 1980); In re Lafayette Radio Electronics Corp., 9 B.R. 993 (Bankr. E.D.N.Y. 1981). Courts also look to the operating experience of the proposed assignee. In re Bygaph, Inc., 56 B.R. 596 (Bankr. S.D.N.Y. 1986). Although the specific factors may vary, the Bankruptcy Code does require a specific factual showing through competent evidence to determine whether a debtor has provided adequate assurance of future performance. Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986).

11. The Bidding Procedures and proposed order do not specifically require any bidders to provide evidence of adequate assurance of future performance to the Landlords or their counsel in a timely manner. Due to the truncated timeframe between a potential auction of assets and the hearing to approval the successful bidder (as discussed below), the Court should require all potential bidder to provide sufficient information to allow the Landlords to make a determination as to the proposed assignee's ability to perform under the Leases. Until Landlords can review such information, Landlords cannot determine the ability of any potential assignee to perform under the Leases.

12. Additionally, it would greatly assist the Landlords in this process if Debtors provided a contact person for any

-6-

bidders so that Landlords could contact such party in connection with their adequate assurance of future performance analysis.

**C.   Landlords must have a reasonable opportunity to review sufficient evidence to determine the appropriateness of a proposed assignee under 11 U.S.C. § 365(b)(3).**

13.   Fundamental concepts of due process require notice and a meaningful opportunity to be heard. <u>Sullivan v. Barnett</u>, 139 F.3d 158, 171 (3rd Cir. 1998); *see also* <u>Anthony v. Interform Corp.</u>, 96 F.3d 692, 697 (3rd Cir. 1996) ("fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner").   The Debtors provides that it will hold an auction if there are competing bids for an asset that is the subject of a sale motion. Thereafter, the Bidding Procedures only require the Debtors to identify the successful bidder and send a copy of the successful bid to the affected landlord not later than seven (7) days before any sale hearing.   Again, there is no requirement that the Debtors or the potential assignee provide any adequate assurance of future performance information   in advance of the hearing.

14.   Additionally, it appears that under the local rules, the Landlords will not receive even the above information until after objections to the sale motions are due.   Therefore, under the proposed Bidding Procedures, the Landlords will have no opportunity to analyze the proposed assignee's ability to satisfy the requirements of 11 U.S.C. § 365(b)(3)(A)-(D) prior to deciding whether to object to the requested sale, or even prior to the sale.   In such a situation, any sale hearing would

-7-

have to be adjourned until a later date.    This continuance should provide for a period of time sufficient to allow for the exchange of adequate assurance documentation, and a sufficient opportunity to allow Landlord to review and analyze that documentation.    To do otherwise will unfairly deprive Landlord of its rights under the Bankruptcy Code.

15.   The potential timing of the sale hearing as presented affords Landlords no ability to determine the appropriateness of successful bidder, much less analyze any adequate assurance information, prior to the sale hearing.    In order to preserve the Landlords' due process rights, all information and evidence upon which the Debtor and initial bidder intend to rely to establish adequate assurance of future performance under 11 U.S.C. § 365(b)(3)(A) through (D) (e.g., financials, business plans, etc.) not later than the filing of any sale motion. Thereafter, Landlords and their counsel should receive information on any competing bidders within twenty-four (24) hours of receipt by the Debtors.   All parties should have the understanding that the Debtors and any bidders may be subjected to expedited discovery prior to any sale hearing, or that such sale hearing may be continued for some period of time to allow such discovery to be completed.

**D.    The Debtors must provide adequate assurance that they will promptly compensate Landlords for all amounts due under the Leases.**

16.   In order to assume and assign any Lease under § 365(b), Debtors must cure all existing defaults and compensate Landlords for any actual pecuniary loss as a result of those

- 8 -

defaults. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The Debtors cannot assume a lease unless they pay current all outstanding obligations owing under each Lease. This principle is well-recognized. *See* Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989). In the event that any proposed sale of a Lease is ultimately approved, the Debtors and/or the assignee must be required to immediately cure the above obligations. 11 U.S.C. § 365(d)(3); In re Tandem Group, Inc., 60 B.R. 125 127 (Bankr. C.D. Cal. 1986), *citing* In Matter of Condominium Administrative Services, Inc., 55 B.R. 792 (Bankr. M.D. Fla. 1985).

17. The Debtors' do not address when they will provide cure estimates for the outstanding amount owing under any Leases or when the cure estimates will be paid. Landlords request that these amounts be provided in any sale motion and confirmation that said amounts will be paid at closing. This will provide any potential competing bidders with critical information on the costs of taking an assignment of a Lease, and it will maximize the opportunity to resolve cure disputes prior to any sale hearing.

**E.   Any waiver of Federal Rule of Bankruptcy Procedure 6004 and 6006 is improper.**

18. The Landlords also object to the provision of the proposed order approving the Motion that seeks a broad waiver of requirements of Federal Rule of Bankruptcy Procedure 6004(g), especially to the extent it adversely affects the Landlords' appellate rights thereunder. The Rules were amended in 1999 to

-9-

add subsection (g) to Rule 6004, specifically to protect the rights of the objecting parties, and thus eliminate the "rush to the courthouse" to obtain stay orders by those parties adversely affected by entry of orders under 11 U.S.C. §§ 363 or 365.   In any event, it does not appear that the Motion is covered by either Rule 6004 or 6006, and a waiver of the ten (10) appeal period is inappropriate in these circumstances.

**F.   Reservations of rights.**

19.   At this time it is not clear if any of the Leases will be the subject of a sale or auction.   Therefore, this Objection is without prejudice to Landlords' ability to raise further objections in connection with any motion to approve a sale of any of the Leases and Landlords reserve their rights to raise all objections to any successful bidder under Section 365 or otherwise, including objection based upon adequate assurance of future performance and proposed use.   Landlords further reserve their rights to object to any proposed form of agreement with any potential purchaser or assignee.   To the extent consistent with the relief requested herein, Landlords hereby join in the objections raised by other lessors.

**III.  CONCLUSION**

Any order on the Motion should be modified to address the issues raised by herein, including but not limited to: (i) providing timely information on proposed cure amounts for any proposed sale of assets including a Lease; (ii) requiring the

provision of adequate assurance of future performance evidence
with adequate time for review and analysis by the Landlords; and
(iii) granting such further relief as the Court deems proper.

DATED: June 9, 2005

**HELD & ISRAEL**

By: _____
Edwin W. Held, Jr., Esquire
Florida Bar #162574
1301 Riverplace Blvd. Suite 1916
Jacksonville, Florida 32207
(904) 398-7038 Telephone
(904) 398-4283 Facsimile

and

**KATTEN MUCHIN ROSENMAN LLP**
Thomas J. Leanse (TL-8802)
Dustin P. Branch (DB-3553)
2029 Century Park East, Suite 2600
Los Angeles, California  90067
Phone: (310) 788-4400
FAX: (310) 788-4471

Attorneys for Prudential Insurance
Company of America and Capstone
Advisors, Inc.

- 11 -