UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

| | | |
|---|---|---|
| WINN-DIXIE STORES, INC., ET AL. | * | CHAPTER 11 |
| | * | CASE NO. 05-03817-3F1 |
| | * | Jointly Administered |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION FOR MODIFICATION OF SECURITY DEPOSIT FOR UTILITY SERVICE

Pursuant to 11 U.S.C. § 366, the Creditor, City of Plaquemine (hereinafter referred to as "Plaquemine"), by its counsel, hereby apply for a determination as to what security will provide Plaquemine with adequate assurance of future payments. In support of this application, Plaquemine allege that:

### Background

1. On February 21, 2005 (the "Petition Date"), the Debtors In Possession filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et. seq., (the "Bankruptcy Code") in United States Bankrupcty Court for the Southern District of New York . Debtors in Possession cases were transferred to this Court on April 19, 2005.

2. Plaquemine provides electric service to the Debtors in Possession's Winn Dixie Food Store #1579, 58045 Belleview Road, Plaquemine, Louisiana 70764. Winn Dixie Food Store #1579 account number is 560-35000-00.    Winn Dixie Food Store #1579 generates, on average, $18,000 per month in utility services.

3. As of the Petition Date, the unpaid charges due Plaquemine for utility service provided to Winn Dixie Food Store #1579, account number 560-35000-00 totaled Forty nine thousand seven hundred forty nine Dollars and 80/100 ($49,749.80)

4. Pursuant to Interim Order on February 21, 2005, Plaquemine sent by certified mail,

return receipt requested to Debtors in Possession attorney, Brian C. Walsh, KING & SPALDING LLP, its request for adequate assurance. A copy of the letter is attached hereto, incorporated herein by reference, and mark for identifications as Plaquemine Exhibit A.

5. Pursuant to the Order of March 10, 2005, by the Honorable Robert D. Drain, for the United States Bankruptcy Court, Southern District of New York, in the matter entitled "In re: WINN-DIXIE STORES, INC., et al., Case No. 05-11063 (RDD), Jointly Administered," (hereinafter referred to as "New York Case"), the Court ordered that utility companies make a written request to Debtors' counsel for additional adequate assurance in the form of a deposit or other security from the Debtors. Judge Drain also ordered that the request "set forth the location(s) for which utility services are provided, the account number(s) for such location(s), the outstanding balance for each account, and a summary of the Debtors' payment history on each account." Again, on March 17, 2005, Plaquemine sent by certified mail, return receipt request to Debtors in Possession attorney, Jessenia Paoli, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, its request for adequate assurance. A copy of the letter is attached hereto, incorporated herein by reference, and mark for identifications as Plaquemine Exhibit B.

6. Further, pursuant to the Order of March 11, 2005 in the New York Case, Judge Drain ordered that Debtors have sixty (60) days to reach an amicable resolution with the utility company. After sixty (60) days, the Debtors are authorized to file a motion with the Court to determine adequate assurance of payment.

7. On April 8, 2005, Plaquemine again sent a letter to Debtors in Possession's attorneys, Brian C. Walsh and Jessenia Paoli, seeking a response to its request for adequate assurance and seeking Debtors in Possession's intent to negotiate Plaquemine's request. A copy of the letter is attached hereto, incorporated herein by reference, and mark for identifications as Plaquemine

Exhibit C.

8. On or about April 27, 2005, Ms. Jessenia Paoli left a voice message to counsel for Plaquemine, generally advising that Debtor in Possession would consider Plaquemine's request for adequate assurance before May 9, 2005.

9. On May 26, 2005, Debtor in Possession, through its attorney, Ms. Stephanie R. Feld, advised Plaquemine that it rejects Plaquemine's request for adequate assurance, advised of this Court's ruling in the Jacksonville Electric Objection, and gave Plaquemine a June 10 deadline to withdraw its request for adequate assurance or Debtor in Possession would file a motion with this Court to order that Plaquemine is not entitled to adequate assurance. A copy of the letter is attached hereto, incorporated herein by reference, and mark for identifications as Plaquemine Exhibit D

10. Again, on June 3, 2005, Debtor in Possession, through its attorney, Ms. Stephanie R. Feld, advised Plaquemine that the Bankruptcy Court for the Middle District of Florida, Jacksonville Division denied assurance requests by American Electric Power, Orlando Utilities Commission and Duke Energy Corporation and gave Plaquemine a June 10 deadline to withdraw its request for adequate assurance or Debtor in Possession would file a motion with this Court to order that Plaquemine is not entitled to adequate assurance. A copy of the letter is attached hereto, incorporated herein by reference, and mark for identifications as Plaquemine Exhibit E.

11. The Debtor in Possession paid its May utility bill to Plaquemine on May 17th . The current utility bill sent to the Debtor in Possession and due on or before June 20th is $15,324.58.

<u>11 U.S.C. § 366</u>

12. Section 366 provides as follows:

"(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or

discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.'
(b) Such utility may alter, refuse or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance fo payment, in the form of a deposit or otehr security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

13. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended §

366 in the following provisions. It allows the utility provider to terminate service after 30 days

if it does not receive adequate assurance. Adequate assurance is defined as cash deposit, letter of

credit, certificate of deposit, surety bond, prepayment, or other form of security agreeable with

the utility provider. Adequate assurance does not include the availability of an administrative

expense priority. In the Court's determination of adequate assurance, the Court can not take into

account the absence of security before the petition, timely payment of prepetition debt, or an

administrative expense priority. The utility can set off against the prepetition debt its deposit

without notice or order of court.

14. A determination of adequate assurance is within the Court's discretion, and is made

on a case by case basis. *In re Utica Floor Maintenance, Inc*, 25 B.R. 1010, 1016 (Bankr.

N.D.N.Y. 1982); *In re Cunha*, 1 B.R. 330, 332-33 (Bankr. E.D. Va. 1979)

15. Section 366 was enacted to balance a debtor's need for utility service from a provider

that holds a monopoly on such services with the need of the utility to ensure for it and its rate

payers that it receives payment for providing these essential services. *See In re Hanratty*, 907

F.2d 1418, 1424 (3d Cir. 1990)

16. The deposit or other security required of a debtor by Section 366 "should bear a

reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal*

*Dry Dock & Repair Corp.,* 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986).  In making such a determination, it is appropriate for the court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed."  *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985)

<u>SECTION 366 REQUIRES MORE ADEQUATE ASSURANCE OF PAYMENT THAN $375</u>

17.  As set forth in Plaquemines' Exhibits A and B, Plaquemine seeks a security deposit of $36,000 to continue utility service to Debtors in Possession Winn-Dixie Food Store #1579, 58045 Belleview Road, Plaquemine, Louisiana.  This amount represents the two month average of Debtors' in Possession monthly bill.

18.  As calculated by Plaquemine, the Debtors' in Possession pre-petition debt to Plaquemine for utility service is $49,749.80.   Currently, Plaquemine retains $375 deposit from debtor to secure adequate assurance of payment for utility services.

19.  Debtors in Possession currently owe Plaquemine for post petition utility service from March 4 to April 3 in the amount of $19,087.65, due on or before May 20, 2005.

20.  Plaquemine is a municipally owned utility company operating in the State of Louisiana, Parish of Iberville.

21.  Plaquemine avers that Debtors in Possession assumes all the powers of a Chapter 7 trustee and a bona fide purchaser of real property and therefore debtors are a new commercial customer of Plaquemine.

22.  Plaquemine Code of Ordinances Section 21-67(c), a certified copy attached hereto, incorporated by reference, and marked for identification as Plaquemine Exhibit F, applies to Debtors in Possession and empowers Plaquemine to require additional assurance of payment for utility service by  Debtors' in Possession.

23. Plaquemine is inherently as risk since it is compelled to continue post-petition service to the Debtors in Possession for a minimum of thirty days (one billing cycle) on an around the clock basis and its invoices are payable only after service has been delivered and irreversibly consumed by the Debtors in Possession. No creditors in this bankruptcy case, other than utilities, are required to take such a risk. Due to the manner in which Debtors in possession utilize and pay for utility services, only through a cash deposit, surety bond or advance payment can Plaquemine be adequately assured of payment. Such assurance is the purpose of Section 366.

24. The Debtor in Possession does not offer or provide Plaquemine with a "deposit or other security" expressly required by Section 366, except for the previous $375 deposit. In the context of a utility-customer relationship, the ordinary and common meaning of "other security" means prepayment of bills, shortened payment deadlines, letters of credit or surety bond or, in any event, something more than the mere promise of a debtor to pay an administrative expense claim. *See In re Best Products Co.*, 203 B.R. 51,56 (Bankr. E.D. Va. 1996)

25. It is illogical, unreasonable and manifestly unfair to equate the Debtors in Possession obligation to pay undisputed invoices by recognizing post petition invoices of utilities as administrative expenses (which Debtor in Possession is legally obligated to pay) as "security" for the payment of post-petition utility related obligations owed by the Debtors in Possession to Plaquemine and other utilities. Therefore, Plaquemine is entitled to additional adequate assurance of payment in the form set forth in Plaquemine Code of Ordinances Section 21-67(c).

26. Plaquemine's practice is to read the service meter of Debtors in Possession's Winn Dixie Food Store #1579 on a monthly basis. On the date that a meter is read, Plaquemine has already delivered approximately thirty (30) days of electric, water, sewerage and gas for which no

payment has been received. As provided by Plaquemine Code of Ordinances Section 21-68, the

Debtors in Possession utility bill is mailed on the last date of each month, due and payable on or

before the 20th of the month the bill is rendered. Plaquemine Code of Ordinances Section 21-69,

a certified copy attached hereto, incorporated by reference, and marked for identification as

Plaquemine Exhibit G.

27. If payment is not made on or before the 20th of the month, as provided by Plaquemine

Code of Ordinances Section 21-70, ten (10) days must pass before Plaquemine is authorized t

discontinue service. Plaquemine Code of Ordinances Section 21-70, a certified copy attached

hereto, incorporated by reference, and marked for identification as Plaquemine Exhibit H.

28. Plaquemine is required to provide post-petition utility service for no less than forty

(40) days in the event the Debtor in Possession is delinquent on its post-petition obligation to

Plaquemine. It is this substantial risk which led to Plaquemine enacting Plaquemine Code of

Ordinances Section 21-67(c).

29. Plaquemine requests a cash deposit or other similar security as set forth in

Plaquemine Code of Ordinances Section 21-67(c) in the amount of Thirty six thousand dollars

($36,000.00) as adequate assurance of future payments by the Debtors in Possession. This

deposit is equal to approximately two times the average monthly billings by Plaquemine to the

Debtors in Possession during the twelve-month period prior to the Petition Date and is in an

amount that is consistent with the anticipated electricity consumption by the Debtors in

Possession and the minimum period of time that the Debtors in Possession could continue to

receive utility service (electricity, water, gas and sewerage) from Plaquemine before service

could be terminated for non-payment of post petition bills.

30. The deposit or other similar security requested by Plaquemine is for the amount

Plaquemine would require from other new customers, customers with questionable or unknown credit and it is within the range approved by the case law. *See Matter of Houdashell*, 7 B.R. 901, 903 (Bankr. W.D. Mo. 1981)(approving deposit equal to twice customer's highest monthly electric and natural gas service bill); *In re Stagecoach Enterprises, Inc* , 1 B. R. 732 (Bankr. M.D. Fla. 1979)(approving deposit equal to amount charged for two natural gas utility billing periods); *See also, Lloyd v. Champaign Telephone Co* , 52 B.R. 653, 656-57 (Bankr. S.D. Ohio 1985)(approving deposit equal to 2.3 times average monthly telephone billing); *In re Smith, Richardson & Conroy,* 50 B.R. 5, 5-6 (Bankr. S.D. Fla. 1985 (approving deposit equal to three months' approximated electric usage).

31. Based upon the foregoing, a deposit or similar security in the amount of thirty thousand dollars ($36,000.00) for Plaquemine, which is equal to approximately two (2) months average electric service, is a fair and reasonable request by Plaquemine and is consistent with both the express provisions and the intent of Section 366, as well as non bankruptcy laws and regulations that govern the relationship of Plaquemine and Debtors in Possession.

WHEREFORE, the City of Plaquemine prays this Court to enter an Order declaring that payment of a security deposit by the Debtors in the amount of $36,000 or comply with the provisions of Plaquemine Code of Ordinances Section 21-67(c), shall be adequate assurance of future payment under 11 U.S.C. § 366.

RESPECTFULLY SUBMITTED BY:

L. Phillip Canova, Jr., La. Bar #3851
                of
CANOVA AND DELAHAYE
A Professional Law Corporation
Attorneys and Counsellors at Law
58156 Court Street
Plaquemine, Louisiana 70764-2708
(225) 687-8340

Gina M. Schlegel, FL Bar #0195804

                of
PINKSTON & PINKSTON, P. A.
Attorneys and Counsellors at Law
2063 Oak Street
Jacksonville, Florida 32204
(904) 389-5880


ATTORNEYS FOR THE CREDITOR/MOVER,
CITY OF PLAQUEMINE


ATTORNEYS FOR THE CREDITOR/MOVER,
CITY OF PLAQUEMINE

March 8, 2005

EXHIBIT
A

COPY



CERTIFIED MAIL, RETURN RECEIPT REQUESTED

King & Spalding LLP
ATTN: BRIAN C. WALSH
191 Peachtree Street
Atlanta, GA 30303

RE:    IN RE WINN-DIXIE STORE, INC., ET AL, UNITED STATES BANKRUPTCY
COURT, SOUTHERN DISTRICT OF NEW YORK, CHAPTER 11, NO. 05-
11063; **CITY OF PLQUEMINE/CITY LIGHT & WATER PLANT -
REQUEST FOR ADEQUATE ASSURANCE**

Dear Mr. Walsh:

On behalf of the City of Plaquemine/City Light & Water Plant, we request adequate
assurance in the form of an additional deposit or other form of security. The City of
Plaquemine/City Light & Water Plant provides utility service to Winn Dixie Food Store #1579,
58045 Belleview Road, Plaquemine, Louisiana 70764. Winn Dixie Food Store #1579 account
number is 560-35000-00.

Winn Dixie Food Store #1579 outstanding balance as of February 2, 2005 is as follows:

| Month of Bill | Bill dates | Amount of bill | Due date |
|---|---|---|---|
| Feb 2005 | Jan 3 — Feb 2 | $ 18944.07 | March 20th |
| Jan 2005 | Dec 4 — Jan 3 | $ 17805.73 | Feb 20th |
| | | | |
| | Total | $ 36749.80 | |

It is projected that Winn Dixie Food Store #1579 will be obligated for pre petition utility service
through February 21, 2005 in the amount of $50,000. Winn Dixie Food Store #1579 has $375
on deposit with the City of Plaquemine/City Light & Water Plant. According to the City's

King & Spalding LLP

ATTN: BRIAN C. WALSH

March 7, 2005

Page 2

history of payment, this is the second time Winn Dixie Food Store #1579 has been delinquent on it utility bill, being delinquent December 2002.

On April 8, 2003, the City amended Plaquemine Code of Ordinances Chapter 21, Section 67 regarding "Minimum security deposit schedule and refunds." I have enclosed a copy for your information. As set forth in Section 21-67(a)(7)(c), the City hereby formally requests that Winn Dixie Food Store, Inc./Debtor in Possession provide a utility deposit either in the form of (1) a bond executed by Winn Dixie Food Store, Inc./Debtor in Possession and a solvent surety company securing any and all sums due for utility services; (2) an irrevocable letter of credit from a local financial institution; or (3) a utility deposit in the amount of $36,000, which is two (2) months estimated average monthly balance.

The City takes the position that pursuant to the legal fiction that the Debtor in Possession assumes all the powers of a Chapter 7 trustee and a bona fide purchaser of real property, Winn Dixie Food Store, Inc./Debtor in Possession is a new commercial customer, therefore subject to Plaquemine Code of Ordinances Section 21-67. An additional basis for requesting adequate assurance is that the current deposit of $375 secures approximately ½ of 1% of the outstanding pre-petition balance and post petition utility service during a normal billing cycle.

As per the Interim Order, please advise within sixty (60) days from receipt of the City's request. Of course, the City is prepared to discuss an amicable resolution to its adequate assurance request. Please contact me at your earliest convenience. You may also contact me at my email address, pcanova@eatel.net.

Looking forward to hearing from you soon, I am,

Sincerely,

CANOVA AND DELAHAYE

L. Phillip Canova, Jr.

LPCJR/lpc

Enclosures

cc:   Mayor Mark A. "Tony" Gulotta

      Ms. Monika Edmonds

## CANOVA & DELAHAYE
### A LIMITED LIABILITY CORPORATION
### ATTORNEYS AND COUNSELLORS AT LAW
58156 COURT STREET
PLAQUEMINE, LOUISIANA 70764-2708

TELEPHONE (225) 687-8340

TELECOPIER (225) 687-1868

L. PHILLIP CANOVA, JR
LOUIS W. DELAHAYE
THOMAS C. DELAHAYE

March 17, 2005

OF COUNSEL:
BOBBY J. DELISE

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Skadden, Arps, Slate, Meagher & Flom LLP
ATTN: Jessenia Paoli
Four Times Square
New York, NY 10036



RE:   IN RE WINN-DIXIE STORE, INC., ET AL, UNITED STATES BANKRUPTCY
      COURT, SOUTHERN DISTRICT OF NEW YORK, CHAPTER 11, NO. 05-
      11063; **CITY OF PLQUEMINE/CITY LIGHT & WATER PLANT -
      REQUEST FOR ADEQUATE ASSURANCE**

Dear Ms. Paoli:

On behalf of the City of Plaquemine/City Light & Water Plant, we request adequate
assurance in the form of an additional deposit or other form of security. The City of
Plaquemine/City Light & Water Plant provides utility service to Winn Dixie Food Store #1579,
58045 Belleview Road, Plaquemine, Louisiana 70764. Winn Dixie Food Store #1579 account
number is 560-35000-00.

Winn Dixie Food Store #1579 outstanding balance as of February 2, 2005 is as follows:

| Month of Bill | Bill dates | Amount of bill | Due date |
|---|---|---|---|
| Feb 2005 | Jan 3 — Feb 2 | $ 18944.07 | March 20th |
| Jan 2005 | Dec 4 — Jan 3 | $ 17805.73 | Feb 20th |
|  |  |  |  |
|  | Total | $ 36749.80 |  |

Skadden, Arps, Slate, Meagher & Flom LLP

ATTN: Jessenia Paoli

March 17, 2005

Page 2

It is projected that Winn Dixie Food Store #1579 will be obligated for pre petition utility service through February 21, 2005 in the amount of $50,000. Winn Dixie Food Store #1579 has $375 on deposit with the City of Plaquemine/City Light & Water Plant. According to the City's history of payment, this is the second time Winn Dixie Food Store #1579 has been delinquent on it utility bill, being delinquent December 2002.

On April 8, 2003, the City amended Plaquemine Code of Ordinances Chapter 21, Section 67 regarding "Minimum security deposit schedule and refunds." I have enclosed a copy for your information. As set forth in Section 21-67(a)(7)(c), the City hereby formally requests that Winn Dixie Food Store, Inc./Debtor in Possession provide a utility deposit either in the form of (1) a bond executed by Winn Dixie Food Store, Inc./Debtor in Possession and a solvent surety company securing any and all sums due for utility services; (2) an irrevocable letter of credit from a local financial institution; or (3) a utility deposit in the amount of $36,000, which is two (2) months estimated average monthly balance.

The City takes the position that pursuant to the legal fiction that the Debtor in Possession assumes all the powers of a Chapter 7 trustee and a bona fide purchaser of real property, Winn Dixie Food Store, Inc./Debtor in Possession is a new commercial customer, therefore subject to Plaquemine Code of Ordinances Section 21-67. An additional basis for requesting adequate assurance is that the current deposit of $375 secures approximately ½ of 1% of the outstanding pre-petition balance and post petition utility service during a normal billing cycle.

As per the Order of March 10, 2005, please advise within sixty (60) days from receipt of the City's request. Of course, the City is prepared to discuss an amicable resolution to its adequate assurance request. Please contact me at your earliest convenience. You may also contact me at my email address, pcanova@eatel.net.

Simply for your information, an identical request was sent to Mr. Brian C. Walsh, King & Spalding LLC, on March 7, 2005.

Looking forward to hearing from you soon, I am,

Sincerely,

CANOVA AND DELAHAYE

L. Phillip Canova, Jr.

LPCJR/lpc

Enclosures

cc:    Mayor Mark A. "Tony" Gulotta

        Ms. Monika G. Edmond, Utility Billing Director

April
~~March~~ 8, 2005

King & Spalding LLP
ATTN: BRIAN C. WALSH
191 Peachtree Street
Atlanta, GA 30303



Skadden, Arps, Slate, Meagher & Flom LLP
ATTN: Jessenia Paoli
Four Times Square
New York, NY 10036

RE:    IN RE WINN-DIXIE STORE, INC., ET AL, UNITED STATES BANKRUPTCY
COURT, SOUTHERN DISTRICT OF NEW YORK, CHAPTER 11, NO. 05-
11063; **CITY OF PLQUEMINE/CITY LIGHT & WATER PLANT -
REQUEST FOR ADEQUATE ASSURANCE**

Dear Mr. Walsh and Ms. Paoli:

According to the Return Receipt, our request for adequate assurance was received on
March 10, 2005. Therefore, the deadline for reaching a consensual resolution is May 9, 2005.
Please advise as soon as possible whether you intend to comply with our request or intend
to negotiate our request.

Looking forward to hearing from you soon, I am,

Sincerely,

CANOVA AND DELAHAYE

L. Phillip Canova, Jr.
LPCJR/lpc

cc:    Mayor Mark A. "Tony" Gulotta
Ms. Monika G. Edmond, Utility Billing Director

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

DIRECT DIAL
TEL: (212) 735-2107
DIRECT FAX
FAX: (917) 777-2107
EMAIL ADDRESS
SFELD@SKADDEN COM

FOUR TIMES SQUARE

NEW YORK 10036-6522
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

May 26, 2005

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D C
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

VIA FACSIMILE AND REGULAR MAIL

City of Plaquemine/City Light and Water Plant
c/o L. Phillip Canova, Esq.
Canova & Delahaye
58156 Court Street
Plaquemine, LA 70764

    Re:  Winn-Dixie Stores, Inc. et al., Chapter 11 Case No. 05-03817-3F1

Dear Mr. Canova:

        We are writing to you on behalf of Winn-Dixie Stores, Inc. and its affiliates (collectively "Winn-Dixie") with respect to their reorganization under chapter 11 of the Bankruptcy Code. Prior to the date hereof, you made a request for additional adequate assurance pursuant to the Order (A) Deeming Utilities Adequately Assured of Payment, (B) Prohibiting Utilities From Altering, Refusing, or Discontinuing Services, and (C) Establishing Procedures For Resolving Requests For Adequate Assurance, dated March 10, 2005 (the "Utilities Order"). Based on Winn-Dixie's records, it is our understanding that you currently have a nominal deposit.

        Please be advised that, the Bankruptcy Court for the Middle District of Florida, Jacksonville Division, recently denied the adequate assurance request of Jacksonville Electric Authority or JEA at the contested hearing on May 19, 2005. In light of this recent ruling, we are requesting that you withdraw your request for adequate assurance. If we do not receive a written withdrawal of your adequate assurance request by June 10, 2005, we will assume that you intend to go forward with your request. In that case, the Debtors will be filing with the Bankruptcy Court a motion for determination of your adequate assurance request, seeking a ruling from the Bankruptcy Court that you are not entitled to additional adequate assurance.

        Please send your withdrawals of your adequate assurance requests to Denise Kaloudis, at the above address, (tel: 212 735-3738) (fax: 917 777-3738) (email: dkaloudi@skadden.com).

**EXHIBIT**

D



RECEIVED
JUN 01 2005
BY:

If you have any questions, please feel free to contact me or Ms. Kaloudis.

Very truly yours,

Stephanie R. Feld

cc:     Benita Kichler, Esq.
        Sally McDonald Henry, Esq.
        Denise Kaloudis, Esq.

2

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

DIRECT DIAL
TEL: (212) 735- 2107
DIRECT FAX
FAX: (917) 777-2107
EMAIL ADDRESS
SFELD@SKADDEN COM

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden com

June 3, 2005

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D C
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

VIA FACSIMILE AND REGULAR MAIL

City of Plaquemine/City Light and Water Plant
c/o L. Phillip Canova, Esq.
Canova & Delahaye
58156 Court Street
Plaquemine, LA 70764

Re:  Winn-Dixie Stores, Inc. et al., Chapter 11 Case No. 05-03817-3F1

Dear Mr. Canova:

Reference is made to our letter, dated May 26, 2005, advising you that the Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") denied the adequate assurance request of Jacksonville Electric Authority or JEA at the contested hearing on May 19, 2005.

We are writing to you again to advise you that, on June 2, 2005, the Bankruptcy Court also denied the adequate assurance requests of American Electric Power, Orlando Utilities Commission, and Duke Energy Corporation. On June 3, 2005, the Bankruptcy Court entered the orders with respect to its rulings against JEA and the foregoing utilities. We have enclosed copies of those orders for your convenience.

In response to our earlier letter, several utility companies have since withdrawn their requests for adequate assurance. As we previously indicated, if we do not receive a written withdrawal of your adequate assurance request by June 10, 2005, the Debtors will shortly thereafter file with the Bankruptcy Court a motion for determination of your adequate assurance request, seeking a ruling from the Bankruptcy Court that you are not entitled to additional adequate assurance.

Please send your withdrawal of your adequate assurance request to Denise Kaloudis, at the above address, (tel: 212 735-3738) (fax: 917 777-3738) (email: dkaloudi@skadden.com).





If you have any questions, please feel free to contact me or Ms Kaloudis.

Very truly yours,

Stephanie R. Feld

cc:   Benita Kichler, Esq.
      Sally McDonald Henry, Esq.
      Denise Kaloudis, Esq.

UTILITIES                           § 21-67

## ARTICLE V. GAS

### (RESERVED)

**Secs. 21-56—21-66.  Reserved.**

## ARTICLE VI. RATES AND CHARGES

### Sec. 21-67. Minimum security deposit schedule and refunds.

(a) At the time application is made for utility service, the applicant must deposit with the city as a security deposit at its office, for which receipt shall be given, an amount as stated or computed below:



| | |
|---|---|
| (1) Residential water service (each separate meter shall constitute a separate account) | $50.00 |
| (2) Residential electric service (each separate meter shall constitute a separate account) | 125.00 |
| (3) Residential gas service (each separate meter shall constitute a separate account) | 100.00 |
| (4) Residential rental house/apartment water service (each separate meter shall constitute a separate account) | 50.00 |
| (5) Residential rental house/apartment electric service (each separate meter shall constitute a separate account) | 150.00 |
| (6) Residential rental house/apartment gas service (each separate meter shall constitute a separate account) | 100.00 |

(7) Commercial utility deposit. Security deposits for new commercial utility service shall be computed as follows:

    a.  If a new commercial customer's estimated average monthly balance for electrical, water and gas service, as determined solely by the city, is determined

21-67

to be under four hundred dollars ($400.00), per month, the commercial customer's utility deposit shall be as follows:

1. Electrical service ............... $175.00

2. Gas service .................... 125.00

3. Water service ................. 100.00

b. If a new commercial customer's estimated average monthly balance for electrical, water and gas service, as determined solely by the city, is determined to be greater than four hundred dollars ($400.00), per month, but less than eight hundred dollars ($800.00), per month, the commercial customer's utility deposit shall be two (2) months of the commercial customer's estimated average monthly balance.

c. If a new commercial customer's projected average monthly balance for electrical, water and gas service, as determined solely by the city, is determined to be greater than eight hundred dollars ($800.00), per month, the commercial customer's utility deposit shall be obligated and required to obtain a bond executed by the commercial customer as principal and a solvent surety company qualified to do business in the State of Louisiana as surety, conditioned that the principal therein shall timely and faithfully pay to the city any and all sums due for utility services. Upon expiration, said bond shall be renewed. Failure to renew shall constitute grounds for discontinuance of services or other action deemed necessary by the city. In no event shall a surety bond executed by a personal surety be permitted to substitute for the required security deposit.

1. The commercial customer may substitute an irrevocable letter of credit from a financial institution located within the corporate limits of the city in instead of the surety bond required in subsection (7)c.

2.  In the event the commercial customer is unable to obtain a surety bond as required in subsection (7)c or an irrevocable letter of credit from a financial institution located within the corporate limits of the city, the commercial customer's utility deposits shall be two (2) months of the commercial customer's estimated average monthly balance.

(b) Upon termination of utility services, the security deposits thus provided for shall be applied to any remaining utility charges outstanding at the time of final customer disconnect. After application of such funds to the remaining utility charges, within the discretion of the city, any surplus may be applied toward the payment of any other outstanding financial obligations that the customer has with the city.

(c) Solely within the discretion of the city, residential customer hardship utility deposits may be permitted. However, the residential customer's hardship electric service deposit must be paid in full at the time of connection. The residential customer's hardship gas and water deposits shall be paid within sixty (60) days after connection. Residential rental house/apartment utility applicants shall not be permitted hardship utility deposits.

(1)  In the event residential customers and/or residential rental house/apartment utility applicant has a previous balance for utility services with the city, the residential customer and/or residential rental house/apartment utility applicant shall be required to completely satisfy the outstanding balance due the city and make full utility deposits before connections.

(d) Effective June 1, 1981, and thereafter, the utility collector of revenue may authorize refunds of security deposits on residential customers who have established a good payment record. To qualify for such a refund of deposits, the customer must have maintained his account on a current basis for a minimum period of at least forty-eight (48) consecutive months. Residents or customers who have established a good payment record as provided for in this subsection shall be permitted to transfer their good payment record from one account to another in the event of

a change of address and without the necessity of furnishing a new security deposit, and they shall likewise be permitted to add service at their existing resident without having to furnish a new or additional security deposit.

(e) In the event any residential customer or commercial customer establishing a good payment record as outlined in subsection (d) hereinabove should later fail to maintain their account on a current basis and such service is discontinued in accordance with the provisions for such action set forth elsewhere in this article, then and in that event, the customer shall be required to post the security deposit, and/or the bond in lieu thereof, at the time such service is reconnected to the residence or commercial place of business and such security deposit or bond shall be required until the customer has reestablished a good payment record for the consecutive months outlined in subsection (d) above, multiplied by two (2).

(Ord. No. 957, 5-26-81; Ord. No. 181, 4-8-2003)

   Editor's note—Ordinance No. 957, adopted May 26, 1981, was not expressly amendatory of the Code, and thus has been treated as superseding former § 21-67 which pertained to similar subject matter and was derived from Ord. No. 904, adopted Feb. 8, 1977.

### Sec. 21-68. Rates; average monthly payment agreement.

(a) Utility rates charged by the city shall be as presently established or as hereinafter amended from time to time. Such rates are on file in the city light and water plant business office.

(b) The mayor or his designee is authorized to enter an average monthly utility agreement, with city light and water plant utility customer(s), under the terms and conditions as set forth in said agreement, on file with the city light and water plant business office.

(Ord. No. 195, 11-12-03)

### Sec. 21-69. Billing.

(a) All utility bills rendered by the city shall be mailed out on the last day of each month and the net amount shall be due by the twentieth day of the month the bill is rendered. After the twentieth day of the month, the gross amount of the utility bill shall include a one (1) percent penalty. Delinquent notices shall

a change of address and without the necessity of furnishing a new security deposit, and they shall likewise be permitted to add service at their existing resident without having to furnish a new or additional security deposit.

(e) In the event any residential customer or commercial customer establishing a good payment record as outlined in subsection (d) hereinabove should later fail to maintain their account on a current basis and such service is discontinued in accordance with the provisions for such action set forth elsewhere in this article, then and in that event, the customer shall be required to post the security deposit, and/or the bond in lieu thereof, at the time such service is reconnected to the residence or commercial place of business and such security deposit or bond shall be required until the customer has reestablished a good payment record for the consecutive months outlined in subsection (d) above, multiplied by two (2).

(Ord. No. 957, 5-26-81; Ord. No. 181, 4-8-2003)

Editor's note—Ordinance No. 957, adopted May 26, 1981, was not expressly amendatory of the Code, and thus has been treated as superseding former § 21-67 which pertained to similar subject matter and was derived from Ord. No. 904, adopted Feb. 8, 1977.

## Sec. 21-68. Rates; average monthly payment agreement.

(a) Utility rates charged by the city shall be as presently established or as hereinafter amended from time to time. Such rates are on file in the city light and water plant business office.

(b) The mayor or his designee is authorized to enter an average monthly utility agreement, with city light and water plant utility customer(s), under the terms and conditions as set forth in said agreement, on file with the city light and water plant business office.

(Ord. No. 195, 11-12-03)

## Sec. 21-69. Billing.

(a) All utility bills rendered by the city shall be mailed out on the last day of each month and the net amount shall be due by the twentieth day of the month the bill is rendered. After the twentieth day of the month, the gross amount of the utility bill shall include a one (1) percent penalty. Delinquent notices shall



EXHIBIT

6

be mailed out the twenty-first day of the month and the customer will be given until the twenty-fifth day of the month to pay the gross amount of the utility bill. If the bill is not paid by the twenty-fifth day of the month, all utilities shall be disconnected on the next working day. In the event the current gross amount is not paid by end of the current month, an additional four (4) percent penalty shall be added to the unpaid gross amount.

(b) All accounts will be under the supervision and control of the office manager of the city light and water plant. All "cutoffs" are included herein.

(c) The collector of the utility bills for the city will be directly under the office manager.
(Code 1967, § 13-1; Ord. No. 928, 2-21-79; Ord. No. 970, 1-26-82; Amend. of 1-9-90)

## Sec. 21-70. Delinquent payments; cutting off service.

(a) Any consumer being delinquent in the payment in full of a utility bill issued in their name in excess of ten (10) days shall have all services discontinued; and the account will be turned over to the city attorney for collection; and the consumer will be charged for all cost of the proceedings required to collect the balance, together with attorney fees in the amount of twenty-five (25) percent of the amount collected, along with all legal interest from date of judicial demand.

(b) There shall be an additional reconnection charge to each customer whose services are discontinued under this section of ten dollars ($10.00) per service.
(Code 1967, § 13-1; Ord. No. 928, 2-21-79; Ord. No. 970, 1-26-82)

## Sec. 21-70.1. Utility agreements with delinquent custom-ers.

(a) The city is authorized, through the mayor, to enter utility agreements with delinquent customers to pay back past due utility bills.

(b) The city is authorized, through the mayor, to enter an agreement with a delinquent customer which contains the following terms (i) subtract all penalties from the delinquent account,

UTILITIES                                    § 21-70.1

be mailed out the twenty-first day of the month and the customer will be given until the twenty-fifth day of the month to pay the gross amount of the utility bill. If the bill is not paid by the twenty-fifth day of the month, all utilities shall be disconnected on the next working day. In the event the current gross amount is not paid by end of the current month, an additional four (4) percent penalty shall be added to the unpaid gross amount.

(b) All accounts will be under the supervision and control of the office manager of the city light and water plant. All "cutoffs" are included herein.

(c) The collector of the utility bills for the city will be directly under the office manager.
(Code 1967, § 13-1; Ord. No. 928, 2-21-79; Ord. No. 970, 1-26-82; Amend. of 1-9-90)

## Sec. 21-70. Delinquent payments; cutting off service.

(a) Any consumer being delinquent in the payment in full of a utility bill issued in their name in excess of ten (10) days shall have all services discontinued; and the account will be turned over to the city attorney for collection; and the consumer will be charged for all cost of the proceedings required to collect the balance, together with attorney fees in the amount of twenty-five (25) percent of the amount collected, along with all legal interest from date of judicial demand.

(b) There shall be an additional reconnection charge to each customer whose services are discontinued under this section of ten dollars ($10.00) per service.
(Code 1967, § 13-1; Ord. No. 928, 2-21-79; Ord. No. 970, 1-26-82)

## Sec. 21-70.1. Utility agreements with delinquent customers.

(a) The city is authorized, through the mayor, to enter utility agreements with delinquent customers to pay back past due utility bills.

(b) The city is authorized, through the mayor, to enter an agreement with a delinquent customer which contains the following terms (i) subtract all penalties from the delinquent account,

Supp. No. 23                    1280.1


EXHIBIT
tabbies
H