**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

**NOTICE OF COMPROMISE WITH RESPECT TO
DEBTORS' MOTION FOR ORDER AUTHORIZING IMPLEMENTATION
OF EMPLOYEE RETENTION AND SEVERANCE PLANS**

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above

captioned cases, as debtors and debtors-in-possession  (collectively, the "Debtors"),

hereby file this notice in connection with the Debtors' Motion for Order Authorizing

Implementation of Employee Retention and Severance Plans (the "Employee Motion"),

to advise the Court and all parties-in-interest of proposed modifications and clarifications

with respect to the Chapter 11 Retention Plan and Corporate Benefits Severance Program

proposed in the Employee Motion.  The proposed modifications and clarifications result

from the Debtors' negotiations with the Official Committee of Unsecured Creditors (the

"Creditors Committee") and the Debtors' efforts to accommodate the concerns raised by

other parties in interest, including the postpetition secured lenders (the "Lenders") under

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases:
Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie
Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc.,
Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt
Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD
Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie
Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie
Supermarkets, Inc.

the Debtors' $800 million debtor-in-possession credit facility (the "DIP Facility") and the Office of the United States Trustee (the "U.S. Trustee").

## Chapter 11 Retention Plan

1.      As originally filed in the Employee Motion, the Chapter 11 Retention Plan provided for payment of retention incentives (the "Retention Incentives") to participating key employees (the "Key Employees") ranging from 25% to 150% of their respective annual salaries.  Under the modified Chapter 11 Retention Plan, the proposed Retention Incentive of 150% of annual salaries will be reduced to 100% of annual salaries, resulting in Retention Incentives for participating Key Employees ranging from 25% to 100% of their respective annual salaries.

2.      As originally filed, Retention Incentives would have been paid according to the  following schedule: (a) one third paid upon approval of the Chapter 11 Retention Plan by the Court; (b) one third paid on October 15, 2005; and (c) one third paid upon confirmation of a plan of reorganization in the Debtors' chapter 11 cases.  Under the modified Chapter 11 Retention Plan, except with respect to the Debtors' plant managers (the "Plant Managers") as indicated below, Retention Incentives would be paid according to the following schedule: (a) 25% paid upon approval of the Chapter 11 Retention Plan by the Court; (b) 25% paid on November 15, 2005; (c) 25% paid on the earlier of (i) the date of confirmation of a plan of reorganization in the Debtors' cases or (ii) March 15, 2006; and (d) 25% paid 90 days following the effective date of a confirmed plan of reorganization in the Debtors' chapter 11 cases.

3.      Under the modified Chapter 11 Retention Plan, the Debtors' plant managers (the "Plant Managers") would receive Retention Incentives equal to 20 weeks' of their respective salaries.  Payment of the Retention Incentives to the Plant Managers would occur according to the following schedule: (a) 25% paid upon approval of Chapter 11 Retention Plan by the Court and (b) 75% paid upon the Plant Managers' termination by the Debtors without cause.  Except for timing, payment of Retention Incentives to Plant Managers would be subject to all of the terms of the Chapter 11 Retention Plan.

4.      As originally filed, the Debtors' estimated cost of the Chapter 11 Retention Plan included the cost of providing Retention Incentives equal to 100% of annual salary to contemplated future hires with respect to three unfilled positions.  Under the modified Chapter 11 Retention Plan, the Debtors would not provide Retention Incentives for such future hires, provided that the Debtors would retain the right to seek approval to pay such incentives after good faith consultation with the Creditors Committee and the Lenders.

5.      In addition to the savings occasioned by the changes articulated above, the Debtors would further reduce the cost of the modified Chapter 11 Retention Plan by $300,000 but would retain discretion in determining how such reductions are allocated.

6.      As originally filed, the Debtors estimated that total payments under the Chapter 11 Retention Plan would not have exceeded approximately $13,977,093.  Under the modified Chapter 11 Retention Plan, the Debtors estimate that total payments would not exceed approximately $12,177,093.

7.     The rights to payment of Key Employees – including Plant Managers – or any other persons under the Chapter 11 Retention Plan, would be subordinate to the Lenders' liens, claims and rights to payment under the DIP Facility.

**Corporate Benefits Severance Program**

8.     As originally filed in the Employee Motion, the Corporate Benefits Severance Program provided for a severance benefit to the Debtors' chief executive officer (the "CEO Severance Benefit") equal to 3 times annual base salary and target bonus.  Under the modified Corporate Benefits Severance Program, the CEO Severance Benefit would be equal to 2 times annual base salary and target bonus.

9.     As originally filed, the Corporate Benefits Severance Program provided for severance benefits to the senior vice-presidents referred to in tier 2 of paragraph 14 of the Employee Motion (the "SVP Severance Benefits") equal to 2 times annual base salary and target bonus.  Under the modified Corporate Benefits Severance Program, the SVP Severance Benefits would be equal to 1.5 times annual base salary only (no target bonus component).

10.     As originally filed, the Corporate Benefits Severance Program provided for severance benefits to the vice-presidents, group vice-presidents, and regional vice-presidents referred to in tier 3 of paragraph 14 of the Employee Motion (the "VP Severance Benefits") equal to 1 year's annual base salary and target bonus.  Under the modified Corporate Benefits Severance Program, the VP Severance Benefits would be equal to 1 year's annual base salary only (no target bonus component).

4

11.     As originally filed and continuing, to be eligible to receive any benefits under the Corporate Benefits Severance Program, participants are required to enter into an appropriate non-solicitation, non-compete (to the extent applicable), non-disclosure, and non-disparagement agreement with the Debtors and, to the extent applicable, a waiver of any enhanced change in control or other severance benefits.  It is specifically further agreed that as to Peter L. Lynch, the Debtors' chief executive officer, the non-compete provisions contained in that certain employment agreement dated December 9, 2004, between Winn-Dixie Stores, Inc. and Mr. Lynch will apply with respect to any severance paid to Mr. Lynch under the Corporate Benefits Severance Program.

12.     As originally filed, in order to take advantage of an exemption from payment of FICA, FUTA and federal income tax on severance payments, the Corporate Benefits Severance Program provided for the provision of severance benefits to employees in tiers 7 through 11 in paragraph 14 of the Employee Motion by virtue of a supplemental unemployment benefits plan (a "SUB Plan").  Under the modified Corporate Benefits Severance Program, the severance benefits of employees in tiers 5 through 10 would be paid under the SUB Plan (the "Sub Plan Employees") and would be subject to the terms of such plan.

13.     As originally filed, the Corporate Benefits Severance Program provided for severance benefits to the Plant Managers referred to in tier 6 of the Employee Motion (the "PM Severance Benefits") equal to 20 weeks' salary.  Under the modified Corporate Benefits Severance Program, the PM Severance Benefits would be equal to the greater of (a) 4 weeks' salary and (b) 1 week's salary per year of service with a maximum of 12

weeks' salary, each subject to the terms of the SUB Plan and any limitations and requirements imposed by the Internal Revenue Service on such plans.

14.     The description of severance benefits provided to employees in tiers 5, 7, and 9 in paragraph 14 of the Employee Motion (the "Tiers 5, 7, and 9 Employees") referred to the maximum severance benefits that such employees would be eligible to receive.  In addition, under the Corporate Benefits Severance Program, the Tiers 5, 7, and 9 Employees would be entitled to certain minimum severance benefits (4 weeks' salary for tiers 5 and 7 and 2 weeks' salary for tier 9).  Accordingly, the severance benefits for the Tiers 5, 7, and 9 Employees under the Corporate Benefits Severance Program would not be less that the applicable minimum and not more than the severance benefit described in the Employee Motion, subject to the terms of the SUB Plan and any limitations and requirements imposed by the Internal Revenue Service on such plans.

15.     As originally filed, the Debtors contemplated that payment of severance benefits under the Corporate Benefits Severance Plan would take the form of (a) a lump sum cash payment for those employees listed in tiers 1 through 6 in paragraph 14 of the Employee Motion and (b) salary continuation for those employees listed in tiers 7 through 11.  Under the modified Corporate Benefits Severance Plan, payment of severance benefits would take the form of (a) a lump sum cash payment for those employees listed in tiers 1 through 4 and tier 11 and (b) salary continuation for those employees listed in tiers 5 through 10.

16.    If the Corporate Benefits Severance Program is approved by the Court, employees who receive offers of employment from a purchaser of the Debtors' stores or assets would not be entitled to receive severance benefits under the program.

17.    Payment of severance benefits under the Corporate Benefits Severance Program is subject to mitigation in accordance with the terms of the Corporate Benefits Severance Program to the extent that terminated employees obtain new employment.

18.    As originally filed, the Corporate Benefits Severance Program would have remained in place through the second anniversary of the effective date of a confirmed plan of reorganization in the Debtors' chapter 11 cases.  The modified Corporate Benefits Severance Program would remain in place through the first anniversary of the effective date of a confirmed plan of reorganization in the Debtors' chapter 11 cases.

19.    As originally filed, the Corporate Benefits Severance Program did not provide for any reduction in severance benefits paid to Key Employees based upon Retention Incentives paid to such employees under the Chapter 11 Retention Plan.  Under the modified Corporate Benefits Severance Program, until final Retention Incentive payments have been made under the Chapter 11 Retention Plan, any severance benefit payable to a Key Employee – except for severance benefits payable to Plant Managers – would be reduced by the amount of Retention Incentive payments that the Key Employee has actually received under the Chapter 11 Retention Plan.  After final Retention Incentive payments under the Chapter 11 Retention Plan have been made, however, payment of severance benefits to Key Employees would not be offset against Retention Incentives paid to such employees.

7

20.    As originally filed, the estimated maximum cost of the Corporate Severance Benefits Program would have been approximately $119,624,612.  The estimated maximum cost of the modified Corporate Severance Benefits Program would be approximately $113,873,920.  As with the estimate provided in the Employee Motion, the estimated maximum cost included in this paragraph represents the expected cost of the Corporate Severance Benefits Program in a worst case scenario in which all stores are closed and all executives and employees are terminated and there is no mitigation of severance provided.  As indicated in the Employee Motion, the Debtors do not anticipate that such a worst case scenario will arise and believe that it is highly unlikely.

21.    The rights to payment of any employees or any other person under the Corporate Benefits Severance Plan – including the supplemental unemployment benefit plan –  would be subordinate to the Lenders' liens, claims and rights to payment under the DIP Facility.

## Cooperation with the Lenders and Creditors Committee

22.    The Debtors will consult with the Creditors Committee and the Lenders in good faith regarding any terms and provisions relating to future employee bonus or incentive plans proposed to be implemented by the Debtors, if any, prior to filing with the Court or implementing, as applicable, any such bonus or incentive plans.

Dated:  June 15, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | SMITH HULSEY & BUSEY |
| By    */s/ D. J. Baker* | By    */s/ Cynthia C. Jackson* |
|     D. J. Baker |     Stephen D. Busey |
|     Sally McDonald Henry |     James H. Post |
|     Rosalie Walker Gray |     Cynthia C. Jackson |
|     David M. Turetsky |     Florida Bar Number 498882 |
| Four Times Square | 225 Water Street, Suite 1800 |
| New York, New York 10036 | Jacksonville, Florida  32202 |
| (212) 735-3000 | (904) 359-7700 |
| (917) 777-2150 (facsimile) | (904) 359-7708 (facsimile) |

9