F I L E D
JACKSONVILLE, FLORIDA

JUN 1 5 2005

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

```
------------------------------------------------ x
                                                  :   Chapter 11
In re                                             :
                                                  :   Case No.: 3:05-bk-03817-JAF
WINN-DIXIE STORES, INC., et al.,¹                 :
                                                  :
       Debtors.                                   :
------------------------------------------------ x
```

**MOTION OF PROJECT ASSISTANTS, INC. FOR AN ORDER
(I) COMPELLING THE IMMEDIATE PAYMENT OF A CHAPTER 11
ADMINISTRATIVE EXPENSE; OR (II) IN THE ALTERNATIVE,
COMPELLING THE IMMEDIATE DISCONTINUATION AND PURGING OF
SOFTWARE LICENSED OR INSTALLED BY PROJECT ASSISTANTS**

Project Assistants, Inc. (the "Project Assistants"), by and through its attorneys,

hereby moves (the "Motion") this Court for an order, pursuant to sections 503(a) and

503(b)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code"), allowing and

requiring payment of amounts that are due from Winn-Dixie Stores, Inc. ("Winn-Dixie"), one of

the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for post-

petition services provided by Project Assistants as an administrative expense.  Alternatively,

Project Assistants seeks the entry of an order compelling Winn-Dixie to (a) immediately

discontinue use of, and purge from its information systems, all software installed or licensed by

Project Assistants and (b) provide Project Assistants with an officer's certificate providing that

---

¹      In addition to Win-Dixie Stores, Inc., the following entities are debtors in these related
cases:  Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep
South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers,
Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc.,
Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., WD Brand
Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-
Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and
Winn-Dixie Supermarkets, Inc.

all such software has been discontinued and purged. As grounds for its request, Project Assistants respectfully represents as follows:

## JURISDICTION

1.       This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.       The statutory predicate for the relief requested herein is section 503 of the Bankruptcy Code.

## BACKGROUND

### I.       *Debtors' Chapter 11 Filing*

3.       The Debtors are grocery and drug retailers operating in the southeastern United States.

4.       On February 21, 2005 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for reorganization relief under Chapter 11 of title 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered.

5.       The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.       No request has been made for the appointment of a trustee or examiner. On March 1, 2005, the Office of the United States Trustee (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors to serve in these cases pursuant to section 1103 of the Bankruptcy Code.

II.    *Services Provided by Project Assistants*

7.    On or about December 22, 2004, Winn-Dixie and Project Assistants entered into a Statement of Work For Knowledge Management Solution (the "Agreement").  A copy of the Agreement is attached hereto as Exhibit A and incorporated herein by reference.[2] Pursuant to the Agreement, Project Assistants agreed to design, install and service an information technology project management system for Winn-Dixie.

8.    As of the Petition Date, the project management system had not been completed and delivered to Winn-Dixie.  Based on Winn-Dixie's requests to complete the project management system and its assurances of payment, Project Assistants completed the project management system's customization, installation and delivery on February 28, 2005.

9.    Project Assistants incurred costs for labor and materials in connection with the design, installation and servicing of the project management system delivered post-petition. Additionally, Winn-Dixie continues to unlawfully use Project Assistant's software, but has not fully paid the licensing fees of $68,000.00.   In total, $41,677.37 remains due and owing for license fees.  A copy of the invoice for the license fees is attached hereto as Exhibit B and incorporated herein by reference.

**RELIEF REQUESTED**

10.    By this Motion, Project Assistants requests (i) entry of an order, pursuant to section 503 of the Bankruptcy Code, (a) allowing an administrative expense claim and (b) compelling the immediate payment thereof, or (ii) in the alternative, entry of an order compelling Winn-Dixie to (a) immediately discontinue use of, and purge from its information systems, all

---

[2]    Due to its voluminous nature, Exhibit A has been filed and secured upon counsel for the Debtors, the U.S. Trustee, and counsel for the Committee.  Copies are available upon reasonable request to undersigned counsel for Project Assistants.

software installed or licensed by Project Assistants and (b) provide Project Assistants with an officer's certificate providing that all such software has been discontinued and purged.

## BASIS FOR RELIEF REQUESTED

### I.    *Request for Administrative Claim*

11.    Project Assistants is entitled to the highest level of priority for its "actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1).  Section 503(b)(1)(A) of the Bankruptcy Code provides for the allowance of administrative expenses, including the actual, necessary costs and expenses of preserving the estate.  Under the prevailing test, a creditor should be afforded administrative priority for a debt owed to it "if the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor in possession in the operation of the business." In re Jartran, Inc., 732 F.2d 584, 587 (7th Cir. 1984) (quoting In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976)); see also In re Continental Airlines, Inc., 146 B.R. 520, 526 (Bankr. D. Del. 1992) (stating that a claim qualifies as an administrative expense under § 503(b) where it confers a benefit that "run[s] to the debtor in possession and it is typically fundamental to the conduction of its business").  Project Assistants easily meets both these criteria.

12.    In these cases, the materials and services underlying Project Assistants' claims arose after the Petition Date based upon Winn-Dixie's inducements to complete and deliver the project management system.   See Jartan, 732 F.2d at 587-88 (stating that to be entitled to an administrative payment for services, the debtor must have induced the claimant's performance).   Moreover, Project Assistants' services were actual and necessary, and substantially benefited the estate.   By continuing to provide services to the Debtors after commencement of these cases, Project Assistants has provided substantial value to the estates.

The project management system allows the Debtors to enhance the profitability of their operations and, thus, to preserve the value of their estates while they formulate a plan of reorganization.  As such, Project Assistants easily meets its burden of demonstrating that it has conferred a benefit that "was actually used by the debtor post-petition in the ordinary course of debtor's business."  In re  Continental, 146 B.R. at 527.

13.    Indeed, as Project Assistants' claims are trade debts incurred in the ordinary course of business under 11 U.S.C. § 364(a), its claims should presumptively be afforded administrative priority status under §§ 503(b)(1)(A) and 507(a)(1). See, e.g., In re Blumer, 95 B.R. 143 (B.A.P. 9th Cir. 1988); In re Statmore, 177 B.R. 312 (Bankr. D. Neb. 1995); 4 Lawrence P. King, Collier on Bankruptcy ¶ 503.03[6][a] (15th ed. 1997).

14.    Finally, this Court clearly possesses the discretion to order the Debtors to make payments on Project Assistants' post-petition claims.  In re Continental, 146 B.R. at 531. It is an accepted principal that "'ordinary course of business' administrative expenses (such as current postpetition wages and trade debt) generally are paid when due." 4 Collier on Bankruptcy ¶ 503.03[6][a].  Many courts have deemed it the norm to order interim payment of administrative expenses.  See, e.g., In re Isis Foods, Inc., 27 B.R. 156, 157-58 (W.D. Miss. 1982) ("To hold otherwise would be to permit the entity to victimize those who attempt to fulfill the purpose of rehabilitation by doing business with a Chapter 11 debtor."); In re Standard Furniture Co., 3 B.R. 527, 532 (Bankr. S.D. Cal. 1980).   Accordingly, Project Assistants is entitled to immediate payment of its claims.

15.    As a result, Project Assistants now seeks immediate payment of $41,677.37, which is the outstanding amount due for the development, installation and servicing of the project management system, as an administrative expense entitled to priority pursuant to

section 507(a)(1) of the Bankruptcy Code as an actual, necessary cost and expense of the estate within the meaning of section 503(b)(1)(A) of the Bankruptcy Code.

## II.    Request For Order Compelling Winn-Dixie To Discontinue And Purge Software

16.    In the alternative, to the extent the Court declines to order the immediate payment of Project Assistants' administrative claim, Project Assistants requests an order compelling Winn-Dixie to (i) immediately purge from its information systems all software licensed or installed by Project Assistants that is being unlawfully used and (ii) provide Project Assistants with an officers' certificate stating that such software has been purged.

17.    Upon information and belief, Winn-Dixie continues to unlawfully use Project Assistants' proprietary software without having paid the required license fees.  Each use of Project Assistants' proprietary software without paying the required license fees represents a separate act of infringement.  See, e.g., Curtis Mfg. Co. v. Plasti-Clip Corp., 933 F. Supp. 107 (D.N.H. 1995), rev'd on other grounds, 135 F.3d 778 (Fed. Cir. 1998); Baldwin Tech. Corp. v. Dahlgren Int'l, Inc. (In re Dahlgren Int'l, Inc.), 147 B.R. 393, 404, fn. 16 (N.D. Tex. 1992). Moreover, Winn-Dixie's ongoing infringement arises post-petition.  See 28 U.S.C. § 959(a); Voice Sys. & Serv., Inc. v. VMX, Inc., 26 U.S.P.Q.2d 1106, 1113 (N.D. Okla. 1992).[3] Accordingly, Winn-Dixie should be required to discontinue its use of, and compelled to purge its information systems of, Project Assistants' software.

WHEREFORE, Project Assistants respectfully request that this Court (i) enter an order directing the immediate payment of the administrative claim in the amount of $41,677.37, or, (ii) in the alternative, enter an order directing Winn-Dixie to purge from its information

---

[3]    Project Assistants reserves the right to seek additional administrative claims against the Debtors' estates for the Debtors' ongoing infringement or seek relief from the automatic stay to pursue its remedies in the appropriate forum.

systems all software provided by Project Assistants and to provide Project Assistants with an

officer's certificate stating that all such software has been purged, and (iii) grant such other relief

that the Court deems just and proper.

Dated: June __, 2005
      Wilmington, Delaware

                         MORRIS, NICHOLS, ARSHT & TUNNELL

                         Robert J. Dehney (No. 3578)
                         Michael G. Busenkell (No. 3933)
                         1201 North Market Street
                         P.O. Box 1347
                         Wilmington, DE 19899-1347
                         (302) 658-9200

                         Attorneys for Project Assistants, Inc.

461448

# EXHIBIT A

# Winn-Dixie Stores, Inc.

## Statement of Work for:

### Knowledge Management Solution



project
assistants

Statement of Work for:
**Knowledge Management Solution**

# Table of Contents

Goals & Objectives ................................................................................................................... 3
Approach ................................................................................................................................... 4
   Task 1 - Engagement Management ...................................................................................... 4
   Phase I – KM Solution Design ............................................................................................. 6
      Task 1 – Document KM Solution Requirements .............................................................. 6
      Task 1 – Document KM Solution Requirements .............................................................. 7
      Task 2 – Finalize KM Solution Design ............................................................................ 8
   Phase II – KM Solution Implementation ............................................................................. 9
      Task 1 – Conduct Installation of the Knowledge Management Solution Software Components .......... 9
      Task 2 – Configure Knowledge Management Pilot Solution ........................................... 9
      Task 3 – Deliver KnowledgeCentral Training ............................................................... 10
      Task 4 – Deliver Configured Knowledge Management Pilot Solution .......................... 11
   Phase III – KM Solution Support ...................................................................................... 11
      Task 1 – Support Configured KnowledgeCentral Solution .......................................... 11
      Task 2 – Perform Final Project Review & Close out ..................................................... 12
**Deliverable Materials Guidelines** ......................................................................................... 13
   Phase I ................................................................................................................................. 13
   Phase II ............................................................................................................................... 13
**Engagement Assumptions** .................................................................................................... 14
   Deliverables Format ........................................................................................................... 14
   SOW Changes .................................................................................................................... 14
   Cancellation Policy ............................................................................................................ 14
**Business Investment** ............................................................................................................. 15
   Payment Terms ................................................................................................................... 17
**SOW Completion Criteria** ................................................................................................... 18
**Client Responsibilities** .......................................................................................................... 19
   Engagement Sponsor ......................................................................................................... 19
   Work Space ........................................................................................................................ 19
   Server Environment Readiness – Installation Checklist .................................................... 20
      Technology Environment Requirements ........................................................................ 20
   Winn-Dixie Stores, Inc. Responsibilities for Setting-up Training Site ............................ 21
**Attachment A to Statement of Work** ................................................................................... 22
**Attachment B to Statement of Work** ................................................................................... 26
INDEMNITY AGREEMENT ................................................................................................ 26
**Attachment C to Statement of Work** ................................................................................... 28
**Attachment D to Statement of Work** ................................................................................... 32
**Invoice Information** .............................................................................................................. 37
**Training Material Shipment Information** ............................................................................ 38

 

# Goals & Objectives

The goals & objectives for this engagement are as follows:

- Implement an integrated project management, solution development lifecycle, and knowledge management system using KnowledgeCentral and Macroscope solution framework.

- Provide Windows SharePoint Administration Training

- Provide KnowledgeCentral Administration Training

 

# Approach

This Statement of Work is entered into by and between Project Assistants, Inc., a Delaware corporation with offices located in Folkstone Plaza Business Park, 1409 Foulk Road, Wilmington, Delaware 19803 ("Project Assistants"), and Winn-Dixie Stores, Inc, a Florida corporation with offices located at 5050 Edgewood Court, Jacksonville, Florida 32254 ("Winn-Dixie" or "Client"). This Statement of Work shall not become effective unless and until (1) Project Assistants executes Winn-Dixie's standard Indemnity Agreement attached as Attachment B, and (2) Winn-Dixie and Fujitsu Consulting (Canada) Inc. enter into a license agreement with respect to Fujitsu's Macroscope DeveloperSuite. This statement of work sets forth the terms of Project Assistants' engagement to provide a Knowledge Management solution to Winn-Dixie. The details of this offering are listed as tasks to be completed at or with Winn-Dixie resources.

Project Assistants shall deliver a focused project management consulting engagement for Winn-Dixie Stores, Inc. that consists of:

## Task 1 - Engagement Management
Project Assistants shall provide project management for all Project Assistants' responsibilities in this Statement of Work (SOW).

The purpose of this task is to establish the framework for project communication, reporting, procedural and contractual activity. Project Assistants will appoint an Engagement Manager who will have explicit responsibility for the administration and direction of Project Assistants' efforts on this project and will be the focal point for managing and directing Project Assistants' activities with the Winn-Dixie Stores, Inc. Engagement Sponsor who is responsible to the client for this effort.

Effective Project Management is required to plan and schedule all tasks and related sub-tasks of this project and to establish, measure, report and control the performance objectives of these activities.

The Project Assistants' Engagement Manager will perform the following activities:

1. Conduct a project initiation conference call to introduce Project Assistants' Engagement Manager to the Winn-Dixie Stores, Inc. Engagement Sponsor, confirm the details of the SOW review the basic objectives for the project, review project team roles/responsibilities and key contacts, schedule and execute a project kick-off meeting, and review next steps.

2. Establish and administer project management procedures and coordinate the professional services delivery activities with the Winn-Dixie Stores, Inc. Engagement Sponsor.

3. With the Winn-Dixie Stores, Inc. Engagement Sponsor, Project Assistants' Engagement Manager will jointly administer change control procedures described in "Appendix A – Project Change Control Procedures," where necessary.

4. Measure and evaluate project progress against established project objectives. Analyze any scope, schedule and/or budget variances and resolve deviations with Winn-Dixie Stores, Inc. Engagement Sponsor.

5. With the Winn-Dixie Stores, Inc. Engagement Sponsor, Project Assistants' Engagement Manager will establish and maintain a proactive project communications plan throughout the lifecycle of the project.



This task will be complete once Project Assistants has met the completion criteria for the balance of the tasks in this SOW including all project related close out activities.



**Phase I – KM Solution Design**

# Overview of KnowledgeCentral Architecture



## Task 1 – Document KM Solution Requirements

The purpose of this task is to facilitate a requirements workshop that leads to a clearly articulated set of requirements for the Knowledge Management Solution implementation.

The Requirements task will define 'what' the solution must be able to accomplish to achieve the objectives of this engagement and the subsequent Design task will define 'how' the solution will accomplish the Requirements in order achieve the objectives of this engagement.

This task consists of the following major activities:

1. Work with the Winn-Dixie Store, Inc. engagement sponsor to prepare and schedule the requirements workshop agenda.

2. Facilitate a one day workshop with selected Winn-Dixie participants. This workshop will document a clear understanding of the detailed business requirements for the enterprise knowledge management solution. As appropriate, the following key dimensions of the initiatives' requirements will be considered:

   a. Requirements for the implementation of existing Winn-Dixie Stores, Inc. methodologies & processes into the KnowledgeCentral solution.

   b. Gather requirements for pilot routes and deliverables.

   c. Define what has worked and eliminate areas that don't work.

   d. Develop a Visio diagram of the defined requirements.

   e. Requirements for up to six project management work plan templates.

   f. Requirements for technology infrastructure configuration considerations.

   g. Requirements for project manager and team member KnowledgeCentral training.

3. Develop draft Requirements documents from the workshop discussions, notes, and flipcharts.

4. Confirm the contents of Version 1 of the Requirements Documents and facilitate prioritization of requirements with Winn-Dixie Stores, Inc.'s engagement sponsor.

5. Produce meeting minutes to document Winn-Dixie Stores, Inc.'s feedback of Version 1 of the Requirements Documents.

6. Incorporate Winn-Dixie Stores, Inc.'s feedback into Version 2 of the Requirements Documents.

7. Present Version 2 (Final) of the Requirements Documents and solicit approval of the deliverable.

This task will be complete when Project Assistants delivers the Final Requirements Documents to the Winn-Dixie Stores, Inc. Engagement sponsor and Winn-Dixie Stores, Inc. accepts the deliverable in accordance with Section 4 of Attachment A.

 

## Task 2 – Finalize KM Solution Design

The purpose of this task is to use the final Requirements Document to develop a design document that details how the key requirements and design points can be developed into a fully functional application.

This task consists of the following major activities:

1. Utilize the Macroscope methods and deliverables in building the design of Winn-Dixie's Business Solution Delivery Methodology.

2. Work with the Winn-Dixie Stores, Inc. engagement sponsor to prepare and schedule a Design workshop.

3. Facilitate a one day workshop with selected Winn-Dixie participants, based upon the business requirements document deliverable from the previous task.

4. Develop Version 1 of the Technical Specification Document incorporating, as applicable, Macroscope methods and deliverables within the Technical Specification Document.

5. Confirm the contents of Version 1 of the Technical Specification Document with the Winn-Dixie Stores, Inc.'s engagement sponsor and document feedback for the Version 2 of the Technical Specification Document.

6. Produce meeting minutes to document Winn-Dixie Stores, Inc.'s feedback of Version 1 of the Technical Specification Document.

7. Incorporate the Version 1 feedback into Version 2 of the Technical Specification Document.

8. Present Version 2 (Final) of the Technical Specification Document and solicit approval of the deliverable.

This task will be complete when Project Assistants delivers the Final Technical Specification Document to the Winn-Dixie Stores, Inc.'s Engagement sponsor and Winn-Dixie Stores, Inc. accepts the deliverable in accordance with Section 4 of Attachment A.

This Phase will be complete when all deliverables named in the tasks above (as outlined in the Deliverables Guideline) have been accepted by the Winn-Dixie Stores, Inc.'s engagement sponsor.

project

## Phase II – KM Solution Implementation

### Task 1 – Conduct Installation of the Knowledge Management Solution Software Components

The purpose of this task is to verify the installation of Winn-Dixie Stores, Inc.'s existing Microsoft Project 2003 Server software at the client's site and install various additional software applications and components listed below.

This task includes the following key activities:

1. Verify installation of Microsoft Project 2003 Server.

2. Verify installation of Microsoft Windows SharePoint Services for Windows 2003.

3. Install KnowledgeCentral 2003 Server

4. Install Program Central

5. Install StatusReporter

6. Install Macroscope methodology into KnowledgeCentral.

7. Verify connectivity to the Project Server from one (1) Microsoft Project/KnowledgeCentral Web Access Client.

8. Verify connectivity to the Project Server from one (1) Project Professional/KnowledgeCentral Professional Client.

9. Test functionality of the system by publishing one (1) project to the server.

10. Verify the proper creation of the project sub-web and upload a sample document.

This task will be complete when the Project Assistants technical consultant completes all of the sub-listed for this task to Winn-Dixie Stores, Inc.'s satisfaction.

### Task 2 – Configure Knowledge Management Pilot Solution

The purpose of this task is to configure the initial Pilot Solution based upon the requirements identified in the Configuration Requirements Document.

This task includes the following key activities:

1. Build the designed solution in KnowledgeCentral using Macroscope methods and procedures. The initial configuration and construction of the Knowledge Management portion of the pilot system for Winn-Dixie Stores, Inc. will be performed within the following boundaries:

    a. Use the KnowledgeCentral administrator functions to load, save and promote up to six (6) Microsoft Project plan templates as KnowledgeCentral templates.

    b. Use the KnowledgeCentral administrator functions to load up to fifty (50) document templates as KnowledgeCentral documents.

    c. Convert the content for up to fifty (50) Project Guide documents to HTML format for use as custom Project Guides in KnowledgeCentral.

    d. Use the KnowledgeCentral administrator functions to load up to fifty (50) Project Guide templates as KnowledgeCentral project guides.



e.  For each of the six (6) project templates that have been promoted in KnowledgeCentral, use the KnowledgeCentral Administrator functions to link up to twenty tasks to a maximum of three documents for each task and one Project Guide for each task. The following table maps Macroscope and W/D's BSD methodology.

| Macroscope Methodology | W/D BSD Methodology |
|---|---|
| Standard Development | Traditional Development |
| Agile Development | Agile Development |
| Package Selection and Implementation | Implement Package |
| Infrastructure | Infrastructure Upgrade |
| Software Maintenance | Sustaining or Modifying Applications |
| To be developed | Store Based Systems |

2.  If requested by Winn-Dixie Stores, Inc., Project Assistants shall perform an online review session of the initially configured solution with the client, and document appropriate in-scope modifications. At Winn-Dixie's request, Project Assistants will develop a Change Order for this online review session and upon acceptance of the Change Order, Project Assistants' Engagement Manager will coordinate the online review session with the Winn-Dixie Engagement Sponsor.

This task will be complete when the Project Assistants project management consultant completes all of the sub-listed for this task to Winn-Dixie Stores, Inc.'s satisfaction.

## Task 3 – Deliver KnowledgeCentral Training

The purpose of this task is to provide a total of one (1) day of training for the primary KnowledgeCentral user: Project Managers and team members:

### One-Half (½) Day course on KnowledgeCentral Administration

The use of Microsoft Project 2003 with KnowledgeCentral Professional is covered from end to end with emphasis on use KnowledgeCentral Professional in a Microsoft Project 2003 environment.  Project Assistants shall deliver this as a single one half day course (1) time to a maximum of 12 attendees at your site.  (Total of one-half day of training).

### One-Half (½) Day course on Windows SharePoint Services Administration.

This half-day course will cover the details of using the SharePoint Administration content: project plans, documents, and custom project guides delivered through the KnowledgeCentral Web Access client (using the Internet Explorer browser).  Project Assistants shall deliver this as a half-day course (1) time to a maximum of 12 attendees at your site. (Total of one-half day of training).

This task will be complete when Project Assistants provides the following:

1.  Twelve (12) printed copies and one (1) electronic copy of **Introduction to KnowledgeCentral Professional** training material in PDF format.  Winn-Dixie will protect the copy rights to this documentation and place this documentation in a secure environment.



2.  Twelve (12) printed copies and one (1) electronic copy of **Windows SharePoint Services Administration** training material.

3.  One day of training to Winn-Dixie Stores, Inc. (as outlined above).

## Task 4 – Deliver Configured Knowledge Management Pilot Solution

The purpose of this task is to make the final in-scope changes to the solution, install the configured solution on the client's server.

This task includes the following key activities:

1.  Make the in-scope changes to the solution identified in the online demonstration.

2.  Re-create the fully configured solution on the client's server.

3.  Promotion of up to six Microsoft Project plans to the new KnowledgeCentral version format.

4.  Set up KnowledgeCentral user security profiles for up to 25 users.

5.  Perform testing of the fully configured pilot solution.

6.  Make necessary Windows SharePoint Folder Structure changes to support the new methodology.

7.  Migration of the KnowledgeCentral templates documents and Project Guides outlined in the Initial Configuration task.

8.  Perform a walkthrough of configured pilot solution's functionality for client and confirm that the fully configured pilot solution meets requirements identified in Phase I.

9.  Back up the project server database for later use in Phase III.

10. Document the Fully Configured KnowledgeCentral Solution

11. Create a KC Production environment and move methodology over to that server.

This task will be complete when the Project Assistants technical consultant completes all of the sub-listed for this task to Winn-Dixie Stores, Inc.'s satisfaction.

This Phase will be complete when Winn-Dixie Stores, Inc. accepts all deliverables named in the tasks above after Project Assistant's engagement manager delivers them to the Winn-Dixie Sponsor for approval in accordance with the Section 4 of Attachment A.


## Phase III – KM Solution Support

### Task 1 – Support Configured KnowledgeCentral Solution

The purpose of this task is to restore the client's project environment to pre-training status and to provide any necessary technical and end user support to those who will be using the KnowledgeCentral Solution environment.

This task includes the following key activities:

1.  Clean-up and restore the KnowledgeCentral Server environment to pre-training status.  This task will be completed through an on-site restoration procedure of the project server database.

2.  Verify successful restoration of the project server database and KnowledgeCentral content.

 

Statement of Work for:
**Knowledge Management Solution**

3. Provide end user and technical support by phone for up to (8) eight hours over a 30-day period, beginning upon the completion date of Phase II, Task 4.

This task will be complete when Project Assistants restores the Project Server and KnowledgeCentral environment to pre-training status and one of the following events first occurs:

  ▪ Delivery of up to eight (8) hours of support to the Winn-Dixie Stores, Inc. or

  ▪ The expiration of 30 days from the completion date of Phase II, Task 4.

## Task 2 – Perform Final Project Review & Close out

The purpose of this task is to conduct a final project review meeting and close out all project efforts.

This task includes the following key activities:

1. Conduct a half-day on-site meeting (or conference call) to complete final project review and close out.

2. Review of Winn-Dixie Stores, Inc.'s supporting project management methodology, technology and next steps in moving the pilot solution out to the enterprise.

This task will be complete when Project Assistants has conducted a final project review and close out meeting with the Winn-Dixie Stores, Inc. Engagement Sponsor and any key stakeholders.

This Phase will be complete when Winn-Dixie Stores, Inc. accepts all deliverables named in the tasks above after Project Assistant's engagement manager delivers them to the Winn-Dixie Sponsor for approval in accordance with the Section 4 of Attachment A.

 

Statement of Work for:
**Knowledge Management Solution**

# Deliverable Materials Guidelines

## Phase I
1. Requirements Document
2. Final Technical Specifications Document

## Phase II
3. Training Materials as outlined in Task 3 of Phase II

 

# Engagement Assumptions

## Deliverables Format

All project-related, document deliverables will be delivered electronically in Adobe Portable Document Format (PDF). All training materials will be delivered in printed and bound format. Configurational files will be delivered in editable electronic format.

## SOW Changes

All changes to this SOW will be administered by the Project Assistants Engagement Manager according to the Change Control Procedure in Attachment A.

## Cancellation Policy

Once meetings, presentations, and other event dates (such as training) are agreed to by the client, usually via e-mail or telephone, Project Assistants assigns those dates to consultants and begins travel planning. It is to both parties' advantage that these dates be agreed on at least two weeks in advance to control travel costs.

Understandably, it sometimes becomes necessary for clients to cancel agreed-upon dates. Late cancellations, however, mean that Project Assistants will be unable to offer that date to a different client and may incur expenses for the consultant's travel. For those reasons, the following cancellation policy will apply (including cancellations due to inclement weather):

1. Cancellation more than two weeks in advance of the event, no penalty.

2. Cancellation more than one week and two weeks or less in advance of the scheduled event, 50% of the event fee plus any expenses incurred.

Cancellation one week or less in advance of the scheduled date, 100% of the event fee plus any expenses incurred.

# Business Investment

| Services Description | Daily Rate | Estimated Labor Days | |
|---|---|---|---|
| Manage the Engagement | $1,600.00 | 1 | |
| | | | |
| **Phase I –Solution Design** | | | |
| Task 1 – Document Solution Requirements | $1,600.00 | 3 | |
| Task 2 – Finalize Solution Design | $1,600.00 | 3 | |
| **Estimated Phase 1 Time and Materials Phase Sub-total** | | **6** | |
| | | | |
| **Phase II –Solution Implementation** | | | |
| Task 1 – Install KM Components | $1,600.00 | 1 | |
| Task 2 – Configure KM Pilot Solution | $1,600.00 | 7 | |
| Task 3 – Deliver Training | $1,600.00 | 1 | |
| Task 4 – Deliver Configured KM Pilot Solution | $1,600.00 | 1 | |
| **Estimated Phase II Time and Materials Phase Sub-total** | | **10** | |
| | | | |
| **Phase III – KM Solution Support** | | | |
| Task 1 – Support Configured KM Pilot Solution | $1,600.00 | 1 | |
| Task 2 – Perform Project Review & Close Out | $1,600.00 | 0.5 | |
| **Estimated Phase III Time and Materials Phase Sub-total** | | **1.5** | |
| | | | |
| **Estimated Time and Materials Services Sub-total** | | **18.5** | |



K

| Training Material Description | Cost per Manual | Number of Manuals | |
|---|---|---|---|
| KnowledgeCentral 2003 Administration | $50.00 | 12 | |
| Windows SharePoint Administration | $75.00 | 12 | |
| **Training Materials Sub-total** | | | |
| **Estimated Time and Materials Services + Training Materials Sub-total** | | | |

| Software Licensing Description | Cost Per License | Number of Seats (or CPUs) | |
|---|---|---|---|
| KnowledgeCentral 2003 Server (per CPU License) | $10,000.00 | 2 | |
| Program Center** | $0.00 | | |
| StatusReporter** | $0.00 | | |
| KnowledgeCentral 2003 Professional (first 25 licenses included in CPU price) | $0.00 | 25 | |
| KnowledgeCentral 2003 Web Access | $0.00 | 25 | |
| Macroscope DeveloperSuite (50 User License)* | $48,000.00 | 50 | |
| **Actual Software Licensing Sub-total** | | | |
| **Estimated Engagement Total: Time and Materials Services + Training Materials + Software License** | | | |

Note:  Project Assistants will provide maintenance and support services in accordance with Attachment D.

\* Macroscope DeveloperSuite includes Macroscope ManagementSuite and Macroscope ProductivityCenter.  Productivity Center provides co
Development routes (Standard Development, Agile Development, Package Selection & Implementation, Infrastructure, Software Maintenanc
(POS).  The Macroscope Management Suite will be used as the foundation to build the Winn-Dixie Development Methodology listed in this S

\*\* Program Center and StatusReporter will be delivered as part of the KnowledgeCentral order.  The standard offering does not include any c
Winn-Dixie's business requirements.  Customization to these two tools will require a change order be processed to provide added functionalit
Inc.

 

In addition to the license fees, training materials cost, and Time and Materials estimate above, Project Assistants will invoice Winn-Dixie Stores, Inc. for reasonable meals, lodging and transportation expenses for travel of Project Assistants personnel to Winn-Dixie Stores, Inc. locations.

## Payment Terms

Project Assistants will invoice Winn-Dixie for payment of the license fees for Macroscope DeveloperSuite upon signed acceptance of this SOW, provided that Winn-Dixie and Fujitsu Consulting (Canada) Inc. have entered into a Macroscope License Agreement for such software.

Project Assistants will invoice Winn-Dixie for payment of the license fees for KnowledgeCentral 2003 Server upon signed acceptance of this SOW.

Project Assistants will invoice Winn-Dixie for payment of fees for maintenance and support services as provided in Attachment D.

For all other charges, payments and reimbursements, Project Assistants will submit invoices to Winn-Dixie on a monthly basis, with each invoice covering charges accrued during the immediately preceding month. To the extent expenses may be billed, the invoice shall also include an itemization of all expenses for which reimbursement is to be made. Winn-Dixie may withhold from any payment any amount incorrectly invoiced or in dispute. Payments on undisputed charges shall be due thirty (30) days after Winn-Dixie's receipt of the invoice. T&E expenses will be invoiced as incurred and follow Winn-Dixie Stores, Inc. travel policy.

 

# SOW Completion Criteria

Project Assistants services for this SOW will be performed on a <u>time and materials</u> basis. Except with regard to Attachment D, Project Assistants' obligations under this engagement will be satisfied when all deliverables have been accepted by Winn-Dixie.  Project Assistants shall begin work under this SOW on or about January 24, 2005.  Project Assistants will use its best efforts to complete the work Phases described herein and to achieve acceptance of all deliverables by no later than February 21, 2005.

Project Assistants shall notify Winn-Dixie at such time as it should reasonably be apparent to Project Assistants that actual time and materials charges will likely exceed $31,100.  Project Assistants shall thereafter undertake no additional work and accrue no additional time and material charges under this Statement of Work without the advance written authorization of Winn-Dixie. In the event that estimated labor is exhausted prior to Winn-Dixie's acceptance of all deliverables, Project Assistants shall not unreasonably refuse to enter into a Project Change Order to facilitate completion of the project.

Notwithstanding the terms above with respect to SOW Completion Criteria, the parties' respective duties and obligations with respect to maintenance and support under Attachment D shall terminate as provided in Attachment D.

 

# Client Responsibilities

The successful completion of the effort depends on the commercially reasonable commitment and participation of Winn-Dixie Stores, Inc. management and personnel.

The responsibilities listed in this section are in addition to those specified in the Agreement, and are to be provided at no charge to Project Assistants. Project Assistants' performance is predicated upon the following responsibilities being fulfilled by Winn-Dixie Stores, Inc.:

## Engagement Sponsor

Winn-Dixie Stores, Inc. has designated <u>Charlie Derrick</u> as the Winn-Dixie Stores, Inc. Engagement Sponsor, to whom all Project Assistants communications may be addressed and who has the authority to act for Winn-Dixie Stores, Inc. in all aspects of these services. The Winn-Dixie Stores, Inc. Engagement Sponsor will have the authority to make decisions, authorize modifications using a Change Authorization (subject to approval by a Senior Vice President of Winn-Dixie if the cost of the Change Authorization exceeds $10,000), and will be the primary focal point for communications with the Project Assistants Consultant. Specifically, <u>the Winn-Dixie Stores, Inc. Engagement Sponsor will be responsible for the resolution of any critical business issues within a commercially reasonable time after notification.</u> The Winn-Dixie Stores, Inc. Engagement Sponsor will approve or reject deliverables in accordance with Section 4 of Attachment A.

The Winn-Dixie Stores, Inc. Engagement Sponsor will provide for the timely review and approval of all deliverables associated with each task in this SOW.

The Winn-Dixie Stores, Inc. Engagement Sponsor will provide the information necessary to construct a complete set of deliverables, in those areas where Project Assistants relies on the business expertise of Winn-Dixie Stores, Inc. consultants. This assumption is made to ensure that Project Assistants will have access to the Winn-Dixie Stores, Inc. personnel who will provide necessary input in areas such as requirements, design points, user interfaces, and work plan contents for the templates.

## Work Space

Winn-Dixie Stores, Inc. will provide suitable office space, supplies, furniture, telephone, internet access, and other facilities equivalent to those provided to Winn-Dixie Stores, Inc. personnel, for the Project Assistants consultant(s) while working on Winn-Dixie Stores, Inc. premises.



## Server Environment Readiness – Installation Checklist

To optimize installation success, Winn-Dixie Stores, Inc. agrees to adhere to guidelines in the following installation checklist:

1. Windows 2003 Server (Windows SharePoint Services with no FrontPage Extensions with SP-3 or later and Critical Updates.

2. SQL Server 2000 with SP-3 or later, Analysis Server with sp-3 or later and Critical Updates. (Enterprise or Standard Ver.) (Note SQL Server and Analysis Server Should have same service pack level) (SP-3 on both are recommended)

3. SQL Server should be configured to mixed mode authentication

4. One domain user account named PROJ2K2INSTALL, or similar, with local administrator rights on IIS Machine/s and Local Administrator rights on SQL Machine.

5. PROJ2K2INSTALL domain account should also be made a member of OLAP administrators group. (OLAP) administrators group is a NT group, exists on SQL machine and is created when Microsoft Analysis Services is installed)

6. One SQL authenticated account, which has equivalent rights as SA for the SQL server.

7. IIS Server and Client Machines should have IE 5.5 or higher. (IE 6.0 is Recommended)

8. Client Machines will need MDAC 2.6 or higher. (MDAC 2.7 RTM Refresh Recommended)

9. If SQL and IIS machines are, separate then DSO (Decision Support Objects: which is component of Microsoft Analysis Services) should be installed on the IIS machine. (Note you should apply the same service pack level on DSO as to Analysis Services on SQL server)

10. If SQL and IIS machines are separate then the Speed/duplex on the NIC (Network Interface Cards) of both the machines should be set to same speed and should not be set to "Auto negotiate or Auto detect".

11. Client Machines that wish to use the data access pages in Microsoft Project Web Access must have Microsoft Office 2000 or later installed

12. Client Machines which will create Portfolio Analyzer Views must be running MS Office XP or Microsoft Office Web Components (Some of the advanced features can be used only with Office XP Ref Q324844 )

13. For reliable and fast performance, it is recommended that this application runs on a dedicated server

### Technology Environment Requirements

1. Reboots can be done on IIS and SQL machines

2. There are no other web sites, lock down tools, scanning tools, or development tools running on the same IIS machine. These components can be installed after Project Server has been successfully installed. Microsoft has published a Q article to assist with the installation of the IIS lockdown tool. (Q316398).

3. Both SQL and IIS reside in a single domain or in domains that are fully trusted with each other.



Statement of Work for:
**Knowledge Management Solution**

**For more information please refer to:**

http://support.microsoft.com/default.aspx?scid=kb;en-us;316398

http://support.microsoft.com/default.aspx?scid=kb;en-us;324844

## Winn-Dixie Stores, Inc. Responsibilities for Setting-up Training Site

Winn-Dixie Stores, Inc. agrees to provide the following items in preparation for all training events delivered by Project Assistants under this SOW:

❑ A high-intensity display unit from which the instructor can show screens and demonstrations from the training computer.

❑ Workstations, one per student, with Microsoft Project 2003 Professional and Microsoft Internet Explorer version 5.1 or higher. All software will be pre-loaded by client personnel (if workstations are not provided, bring extra power strips for client-provided laptops).

❑ Network access to your server from the Microsoft Project 2003 student workstation with Microsoft Project 2003 Server pre-loaded by client personnel.

❑ A whiteboard with dry erase markers

❑ A white pull down screen for displaying a presentation from the instructor's computer

❑ Send directions to site, start and stop times, etc. to all confirmed students.

❑ Distribute the Class Notes, Exercise Binders and Exercise diskettes, one per student that will be pre-shipped to site by Project Assistants.

❑ Provide early and late access to the building to the Project Assistants instructor. Make sure the site coordinator provides whatever keys and access cards that are required to gain access to the site by 8:00 am on the first day of class.

❑ Communicate all details necessary to have the registered students prepared for class. For example:

   o Notify students that classes begin at 9:00 am and end at approximately 4:30 pm each day.

   o Notify students that there will be a one hour break for lunch will be scheduled from approximately Noon until 1:00 pm each day.

   o Dress is normally casual, unless the client requests otherwise.

# Attachment A to Statement of Work

Project Assistants, Inc.., (hereafter referred to as "The Company"), represents to Winn-Dixie Stores, Inc., (hereafter referred to as "The Client"), that The Company is in the business of providing project management software products and support services which consist of enterprise project management consulting, training, companion software and custom software development.

The Company and The Client agree as follows:

1.  **Independent Contractor Status.** For purposes of this Agreement and all Services to be provided hereunder, The Company shall not be considered a partner, co-venturer, agent, employee, or representative of The Client, but shall remain in all respects an independent contractor. Neither party hereto shall have any right or authority to make or undertake any promise, warranty or representation, to execute any contract, or otherwise to assume any obligation or responsibility in the name of or on behalf of the other party. As an independent contractor, The Company shall not participate in any employee benefits provided by The Client to its employees, including worker's compensation insurance, disability, pension or other employee plans. The Company assumes full responsibility and liability for the payment of any taxes due on money received by The Company hereunder. In making payments to The Company under this Agreement, The Client will not make any deductions for taxes.

2.  **Compensation.** As full and final compensation for The Company's performance of the Services, The Client shall pay The Company fees, in accordance with each Statement of Work. In addition to the estimated price, Project Assistants will provide separate invoices for the actual cost of meals, lodging and transportation expenses ("T&E") incurred for all project-related travel of Project Assistants personnel to your site(s) in accordance with The Client's standard "Travel and Business Expense Policy for Contracts." Costs of training materials, shipping and handling will also be invoiced separately. Payments are due within 30 days after receipt of invoice. A 1.5% finance charge will be added to unpaid invoices monthly with respect to invoiced amounts that are not in good faith dispute.

3.  **Change Control Procedure.** The Company has in place a Change Control Procedure that is set forth in detail as an Appendix to the Statement of Work. This change control procedure is included to provide for a formal, orderly, and well-documented means of making modifications to the scope of this project. Any changes to the Statement of Work must be initiated by using the Change Control Form, and approved in writing by both The Company and The Client.

4.  **Deliverables Acceptance Procedure.** When a project deliverable is ready for transmission to The Client, the Project Assistants Engagement Manager will complete the *Deliverables Transmittal and Acceptance Form* and transmit the completed form with associated deliverable(s) to The Client's Engagement Sponsor. All deliverables are considered accepted upon transmission, unless reasons for rejection are submitted, in writing, to the Project Assistants Engagement Manager within five (5) business days of the transmission date/time.

5.  **Copyrighted Training Materials.** Client hereby acknowledges The Company's rights, titles and interests of every kind and nature whatsoever in and to all training materials and software documentation, and all copies and versions thereof, including all copyrights therein and thereto and all renewals thereof, which have been prepared by The Company.

6.  **Intellectual Property Rights.** The Company hereby grants to Client a non-exclusive, perpetual, fully paid-up right to use, reproduce and modify any computer programs or code provided to Client in the course of performing services described in the SOW strictly for Client's internal business use and **not for resale** and/or distribution outside of Client. Any and all developments including, without limitation, all intellectual property rights in the developments shall remain the sole property of The Company. Any

**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**



and all publications by Client of any developments must contain the applicable Project Assistants, Inc. copyright notice. Client shall take all steps necessary to ensure that the developments are used only within the scope of the rights conveyed by this agreement. This paragraph does not apply to training materials or software documentation provided by The Company. For training materials or software documentation provided by The Company, no part of the document(s) may be reproduced or transmitted in any form or by any means, electronic or mechanical, for any purpose, without the express written consent of The Company. The Company hereby grants to Client a non-exclusive, perpetual, fully paid-up right to possess and use such training materials and software documentation. The Company will release source code to The Client upon receipt of payment of final invoice (other than the continuing invoices for maintenance and support services). All Phase I documentation delivered to The Client shall be owned by Client shall be "works made for hire" and shall be the exclusive property of The Client. To the extent that any of the Phase I documentation is not deemed to be a "work made for hire," effective upon creation of such documentation, Contractor hereby assigns all right, title and interest in these works to The Client without further compensation.

7. **Non-Solicitation of Employees.** The Company and The Client agree that during the term of this Agreement and the twenty-four (24) month period commencing on the date that such term expires or is terminated, they shall not for any reason, either directly or indirectly, on each party's own behalf or in the service of or on behalf of others, solicit, recruit or attempt to persuade any person to terminate such person's employment with The Company or The Client, as the case may be, whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or is at-will.

8. **Governing Law.** This Agreement shall be governed by and interpreted in accordance with laws of the State of Delaware, without giving effect to any of its conflict of laws provisions.

9. **Force Majeure.** Neither party shall be liable or deemed to be in default for any delays due to causes beyond the reasonable control of the party such as war, civil disorders, shortages of raw material or energy or other conservation matters, acts of God, or governmental action, (including regulatory restrictions or actions or regulatory agencies) provided that the affected party promptly notifies the other of the causes and its effects on the Services to be performed hereunder.

10. **Termination.** Either party may terminate this SOW upon thirty (30) days prior written notice to the other. In addition, either party may terminate this SOW for a material breach by the other, provided that prior to such termination the party not in breach shall have given notice to the other party of its intent to terminate if the breach is not cured, and no cure is made by the breaching party within ten (10) business days thereafter. In the event of any termination of this SOW, The Client shall be responsible for any portion of the compensation owed to The Company for any Services rendered prior to the effective date of such termination to the extent such fees and expenses are not cancelable or have not been reimbursed by a third party. Upon receipt of written notice to terminate, both parties shall promptly meet to finalize a plan to conclude/wind-down The Company' activities within the notice period and to minimize the actual cost ultimately to be invoiced to The Client with respect to the remaining days of the wind-down period. Within five (5) days after any termination of this Agreement, The Company shall deliver to The Client all work products resulting from the performance of the Services. Termination of this Statement of Work by The Company for any reason other than The Client's failure to timely cure material breach of Section 5 or 6 of this Attachment or other than The Client's failure to timely cure material breach of its duty to pay license fees with respect to the software licensed directly to The Client by The Company hereunder, shall not result in termination of the rights and licenses granted to Client pursuant to Section 6 of this Attachment, and such rights and licenses shall persist for so long as there is no act or omission of The Client such as would constitute a material breach of any of the foregoing sections or duties. Termination of The Client's license with respect to the Macroscope DeveloperSuite and all parties' rights

WINN-DIXIE STORES, Inc.
CONFIDENTIAL

 

Statement of Work for:
Knowledge Management Solution

with respect to after such termination shall be as provided in the license agreement for Macroscope DeveloperSuite entered into by and between The Client and Fujitsu Consulting (Canada) Inc.

11. **Audit Right.** During the term of the Statement of Work and for three years thereafter, The Client shall have the right to have a certified public accountant chosen by The Client obtain reasonable access during normal business hours to the records of The Company for purposes of auditing labor charges and reimbursement invoiced by The Company. The Client shall bear the cost of each such audit, provided that if the accountant determines that The Company by five percent (5%) or more with respect to the period audited, The Company shall bear the cost of the audit. The company shall promptly reimburse The Client for any payment made by The Client of any excess charges or claims revealed by the audit plus interest from the date the excess payments were made at the rate of one and one-half percent (1.5%) per month.

12. **Intellectual Property Representation and Warranty.** The Company represents and warrants that all deliverables provided to The Client as the work product of The Company shall be the original work of The Company, and shall not infringe upon or violate the intellectual property, proprietary or personal rights of any third party, including without limitation third party copyrights, trademark rights, trade secret rights patent rights, moral rights or rights of privacy or publicity. The Company further represents and warrants that Client's use of the Knowledge Management Solution and related business methodology developed or delivered hereunder will not infringe upon the patent rights of any third party.

13. **Modification Representation and Warranty.** The Company represents and warrants that is has all right and authorization necessary to modify and configure the Macroscope application and templates without infringing upon the intellectual or proprietary rights of Fujitsu Consulting (Canada) Inc. and its applicable licensors (if any).

14. **Limitation of Liability.** THE PARTIES EXPRESSLY AGREE THAT IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR LOST PROFITS, OR FOR ANY CONSEQUENTIAL, SPECIAL, INCIDENTAL, OR INDIRECT DAMAGES, HOWEVER CAUSED AND ON ANY THEORY OF LIABILITY, ARISING OUT OF THIS AGREEMENT, EXCEPT WITH RESPECT TO PERSONAL INJURIES, LIABILITY ARISING OUT OF SECTION 12 OF THIS ATTACHMENT, OR LIABILITY WITH RESPECT TO WHICH INSURANCE COVERAGE IS PROVIDED IN ACCORDANCE WITH ATTACHMENT B.

15. **Notices.**

(a) Any notice required or permitted under this Agreement shall be in writing and shall be given by personal delivery or reputable courier service to the other party at its address set forth below, or at such other address as a party may designate through written notice in the other party.

The Client:

      Winn-Dixie Stores, Inc.
      5050 Edgewood Court
      PO Box B
      Jacksonville, Fl 32203-0297
      Attn: Legal Department, Office of General Counsel

**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**



The Company:

> Project Assistants, Inc.
> Foulkstone Plaza Business Park
> 1409 Foulk Road, Suite 200
> Wilmington, Delaware 19803
> Attn: Bob Kirkpatrick

(b) Notice given by personal delivery shall be deemed effective on the date it is delivered.  Notice by courier service shall be prepaid and shall be deemed to have been given at the time indicated on the courier service's delivery receipt.

**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**

 **project** assistants

Statement of Work for:
Knowledge Management Solution

# Attachment B to Statement of Work

### INDEMNITY AGREEMENT

THIS AGREEMENT, made this 18th day of January, 2005, by the undersigned ("Indemnitor") in favor of Winn-Dixie Stores, Inc., its affiliates, subsidiaries and lenders and landlords, ("Indemnitee").

In consideration of Indemnitee's permitting the Indemnitor or its agents, employees and representatives (including subcontractors) to enter upon or to place, construct or service equipment or material upon premises owned or controlled by Indemnitee, and/or to use any equipment owned or controlled by Indemnitee, Indemnitor agrees as follows:

(1) <u>Indemnity</u>. Indemnitor will indemnify and hold Indemnitee, its successors and assigns, harmless from all loss, liability and expense, and all claims therefor, including reasonable attorneys' fees, by reason of bodily injury, including death, and property damage sustained by any person or entity whatsoever arising out of or in connection with any presence or activity of Indemnitor, its employees, agents and representatives (including sub-contractors) on Indemnitee's premises, including the use of any equipment by Indemnitor or Indemnitee's premises, whether belonging to Indemnitor, Indemnitee, or otherwise, and whether such injury, death, loss or damage is caused, occasioned or contributed to by Indemnitor's negligence or the negligence, sole or concurrent, of Indemnitee, its successors and assigns. Notwithstanding the foregoing, under any contract governed by Florida law, Indemnitor shall, under no circumstances, be required to pay to Indemnitee pursuant to this Agreement, any sum in excess of $2,000,000.00.

(2) <u>Insurance</u>. Indemnitor agrees to maintain general liability coverage with no less than an A-rated carrier with minimum limits of liability of $2,000,000.00. Coverages required are: Premises/Operations, underground, explosion and Collapse, Products/Completed Operations, Contractual, Independent Contractors, Broad Form Property Damage, Personal Injury, Auto Liability, and Statutory Workers Compensation Insurance. Indemnitee shall be an additional name insured on all coverages before Indemnitor uses any equipment or commences any work on Indemnitee's premises. Indemnitee shall be furnished with a Certificate of Insurance providing for 30 days notice to Indemnitee prior to policy cancellation. Such certificate shall be furnished to Indemnitee and updated as required by policy changes.

(3) <u>Compliance with Laws</u>. Indemnitor, in performing any labor or using any equipment on Indemnitee's premises, as contemplated in this Agreement, will fully comply and ensure that its agents, employees, representatives and subcontractors conduct their activities on Indemnitee's premises in a manner which will fully comply with all safety and health standards established by any applicable federal, state or municipal statute, regulation or ordinance, including, without limitation, the federal Occupational Safety and Health Act, as amended.

(4) <u>Costs</u>. Should it become necessary for Indemnitee to incur any costs or expenses, whether direct or indirect, including, but not limited to, attorney's fees, investigator's fees, collection costs, or court costs, in connection with any claim or demand for which indemnification is provided by this Agreement, or in connection with any attempt to recover losses incurred on such claims or demands, or in connection with the enforcement of this Agreement, Indemnitor agrees to fully reimburse Indemnitee for such costs and expenses.

(5) <u>Severability</u>. Any provision, covenant or agreement contained in this Agreement which is found to be prohibited by law or void or unenforceable shall not invalidate the remainder of this Agreement.

WINN-DIXIE STORES, Inc.
CONFIDENTIAL



(6) <u>Termination</u>. This Agreement shall remain in full force and effect unless terminated by written notice given by either party.  After termination, this Agreement shall remain effective as to losses, liabilities and expenses, including claims therefor, arising prior to the date of termination.

IN WITNESS WHEREOF, the Indemnitor has executed this Agreement on the day first above written.

INDEMNITOR

Project Assistants, Inc.
(Name of Company)

_____
By: Augustus J. Cicala, Jr.

Title: President  & CEO

ADDRESS:

Folkstone Plaza Business Park
1409 Foulk Road
Wilmington, Delaware 19803

**WINN-DIXIE STORES, Inc.
CONFIDENTIAL**



Statement of Work for:
Knowledge Management Solution

## Attachment C to Statement of Work



# Travel and Business

# Expense Policy
# for Contracts

**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**

**Allowable Travel Expenses**

The following represents authorized Travel expenses when reasonable, incurred for a business purpose, and properly approved:

• Air travel at the lowest coach or economy fare available
• Personal automobile travel (e.g. mileage reimbursement, tolls, parking, etc.)
• Rental cars
• Taxis and other transport
• Lodging
• Meals
• Gratuities


**Guidance for Certain Travel Expenses**

**Air Travel**
Advance planning is suggested in order to obtain the best rates available. A 14-day advance notice is recommended (whenever possible). The class of business travel is Coach or Economy. First Class travel is not allowed and is not reimbursable.

Because of the high cost of air phone service, use of air phones is not allowed.

**Personal Automobile Travel**
Reimbursement Limits - When using a personal automobile, the mileage and tolls reimbursement will not exceed the cost of other reasonable transportation alternatives for the same trip (i.e. air travel, car rental, etc).   Reimbursement is limited to the allowable IRS rate in effect at the time of the travel.

**Parking**
Winn-Dixie will reimburse reasonable parking costs incurred. Parking at air or rail terminals will be reimbursed. Automobiles will not be parked for extended periods at air terminals unless the combined cost of mileage reimbursement and parking is less than other available transfer costs.

**Rental Cars**
Permissible Car Types – Travelers must rent the smallest car that will reasonably accommodate the traveler, or group of travelers. In most cases a compact or mid-size car will suffice. Travelers will not rent a car larger than a full-size, four door unless the number of persons traveling requires a larger car. Premium, four-wheel drive and convertible vehicles may not be rented for business use.

Refueling Charges – Gasoline charges associated with refueling a rental car prior to returning the vehicle to the rental agency are reimbursable, and travelers will make every effort to refuel the car before returning it. If you are charged a penalty by the car rental agency for failure to return the car with a full tank of gas, Winn-Dixie will not reimburse for this charge.

WINN-DIXIE STORES, Inc.
CONFIDENTIAL

**Taxis and Other Transport**
Travel may entail the use of taxis, buses or other public transportation to go to and from the airport or for movement around a metropolitan area. Cities differ in the types of cost-effective transportation that they offer for transfers to and from airports or around the city. Reasonable transfer costs will be reimbursed.

**Lodging**
The hotel and type of room selected will be reasonable in cost.   Lodging includes only the cost of the room and related taxes. Meal costs included on the hotel bill will be classified as "Meals" on the traveler's expense report. Other business expenses, e.g., business faxes, included on the hotel bill will be accurately classified.   Personal expenses included on the hotel bill (e.g., in-room movies, spa/health club charges, minibar or lounge, etc.) will be identified as personal expenses and may not be submitted for reimbursement.

**Meals**
Meals will be reimbursed for the actual cost of the meal.   Total meals for each day will not exceed $35 without prior written approval.

**Gratuities**
Gratuities paid are reimbursed based on actual amounts expended. Gratuities are normally identified separately when paid to bellmen or airport porters. Gratuities for meals and taxis are normally included in the expenses for these categories. Reasonable gratuities by category are:
• Meals 15% - 20%
• Luggage assistance $1/bag
• Taxi rides 15% - 20%

**Unauthorized Travel Expenses**
The following represent unauthorized travel expenses:
• Air phone charges
• Auto Repairs or damage to a rental or personal automobile
• Rental or personal automobile insurance
• Car washes for rental or personal cars
• Oil changes, and other maintenance or repair services for rental or personal cars
• Clothing or toiletry items
• Gasoline (refueling) charges for personal vehicles used on business trips
• In-room movies or video games
• Laundry and dry cleaning charges on trips lasting five (5) days or less
• Loss or theft of personal funds or property
• Lost baggage replacement
• Medical expenses while traveling
• "No Show" charges for hotel, car services or airline cancellations without a valid business reason
• Parking tickets or traffic tickets
• Personal cellular telephone reimbursements

WINN-DIXIE STORES, Inc.
CONFIDENTIAL

• Personal entertainment
• Spouse's or dependents' transportation, lodging and meal expenses
• Travel insurance
• Trip cancellation insurance
• Use of health club facilities
• Other personal expenditures

Unreasonably costly expenditures (e.g., expensive wines and liquors, meals at inappropriately expensive restaurants, etc.) are not allowed.

## SUBSTANTIATION OF EXPENDITURES

Winn-Dixie Stores, Inc. requires the following items as substantiation of travel expenditures:
• Amount of the expense
• Date and place incurred
• Names and titles of others attending
• Business purpose of the expense

The business purpose of expenditures will be documented in an expense report for each individual.  Expenses may not be aggregated across multiple individuals. Request for travel reimbursements must be submitted no later than 45 days after occurrence of the travel.   Winn-Dixie reserves the right to refuse reimbursement of the travel expense if the request is submitted after the 45 day time period.

Winn-Dixie requires a copy of the original receipts be provided for all expenditures of $25 or more for all business-related expenses. Winn-Dixie will not reimburse expenses in excess of $25 where there is no receipt and one would normally be available. Credit card monthly statements are not an acceptable alternative for an original receipt where an original receipt would normally be available. In those instances where a receipt is lost or is otherwise unavailable, a written statement of the circumstances may be accepted. If the substantiation is insufficient, such expenses will not be reimbursed until adequate substantiation is provided. Where expenditure is unusual or appears to be personal in type or amount, an explanation will be included in the expense report or attached to the supporting receipt. Where expenditure requires approval, evidence of that approval will be attached to the expense report.

**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**

# Attachment D to Statement of Work

### MAINTENANCE SCHEDULE

1.    <u>Definitions</u>.  The following terms shall have their indicated meanings.  Any capitalized term that appears in this Schedule and which is not defined below in this section shall have the meaning provided for it in the Agreement.

      a.    "Call Back" means Project Assistants' first contacting of Winn-Dixie regarding a Problem Report after Project Assistants personnel first learns of the Problem Report by email, rather than in person or by telephone.

      b.    "Documentation" means the documentation for the Software.

      c.    "Fix" means a change to the Software consisting of one or more replacement software modules, application of a "patch" and/or a change in the relevant documentation that will close the Problem Report in response to which the change is released or implemented.  A single Fix may apply to more than one Problem Report.

      d.    "Priority Code" means any of the four codes defined in the table set forth in Exhibit A.

      e.    "Problem Report" means a report issued by one party to the other in accordance with Section 5.a or 5.b of this Schedule.

      f.    "Resolution" means a Fix or other permanent solution to a Problem Report that establishes the conformance of the Software to its Documentation, or the parties' joint determination that a Problem Report identifies only problems that are not the responsibility of Project Assistants.

      g.    "Software" means all software, configurational files and templates (together with any associated tables, data files and the like), other than Fujitsu's Macroscope DeveloperSuite, delivered to Winn-Dixie pursuant to the Statement of Work to which this Schedule is attached, including without limitation KnowledgeCentral 2003 Server, Program Center, StatusReporter, KnowledgeCentral 2003 Professional and KnowledgeCentral 2003 Web Access.

      h.    Workaround" means a temporary solution to a Problem Report that eliminates or significantly reduces the adverse impact of the problem.  A Workaround alone does not constitute a Resolution.

2.    <u>Term and Termination of Schedule</u>.  This Schedule shall become effective upon the later of July 1, 2005 or 180 days after the Effective Date of the Statement of Work, provided that by such time Winn-Dixie has accepted the Software and paid the applicable license fees.  The term of this Schedule shall continue for a period of one (1) year, upon which time it shall automatically renew for successive one (1) year terms, unless earlier terminated pursuant to this Section 2 or either party gives notice of nonrenewal not less than thirty (30) days prior to the expiration of the then-current term.  Either party may terminate this Schedule for its convenience by giving the other party thirty (30) days advance written notice to such effect.  Upon early termination of this Schedule for any reason, Project Assistants shall refund to Winn-Dixie any amounts prepaid by Winn-Dixie for the then-remaining or any forthcoming term, which amount shall be prorated to reflect the number of prepaid days for which service shall not be provided.

3.    <u>Billing and Payment</u>.  Upon the effective date of this Schedule, Project Assistants will invoice Winn-Dixie for payment of $3,600 as maintenance and support fees for the initial term hereof.  Project Assistants will invoice Winn-Dixie for payment of maintenance and support fees for each succeeding

**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**

term of this Schedule no later than ninety (90) days prior to the then forthcoming date of renewal. Project Assistants may change the amount of the fees due pursuant to this Schedule for any forthcoming term of this Schedule, provided that no such change shall be effective in the forthcoming renewal term unless Project Assistants gives notice of the change at least ninety (90) days prior to the date of renewal, and provided further that the increase in rates from the preceding year shall not exceed the lesser of five percent (5%) or the percentage increase in the Consumer Price Index United States City Average for Urban Wage Earners and Clerical Workers for the corresponding time period. Winn-Dixie will pay the initial invoice hereunder within thirty (30) days of its receipt thereof. Winn-Dixie will pay subsequent invoices for maintenance and support no later than the applicable renewal date.

4.    <u>Maintenance Commitments</u>.

    a.    <u>Error Correction</u>. Project Assistants shall correct any failure of any portion of the Software to conform to its Documentation or to any specifications for the Software that are established pursuant to a Statement of Work (including without limitation specifications as to the Software's configuration and implementation), which failure of conformance is discovered by Project Assistants or reported to Project Assistants by Winn-Dixie.

    b.    <u>Fixes and Workarounds</u>.  Project Assistants shall provides Fixes and Workarounds with respect to failure or malfunction of the Software as described in Exhibit A.

    c.    <u>Level of Effort</u>. Project Assistants shall use its best efforts to achieve the commitments set forth in Sections 4.a and 4.b in accordance with the problem severity hierarchy set forth in Exhibit A to this Schedule.

    d.    <u>Updates and Upgrades</u>.  At no cost to Winn-Dixie beyond the base fees charged to Winn-Dixie for maintenance and support services under this Schedule, Project Assistants shall provide to Winn-Dixie within a commercially reasonable time all updates, upgrades and new releases of the Software that Project Assistants makes generally available to Project Assistants' other customers for the Software (if any). Such updates, upgrades and new releases shall become part of the Software and be subject to the terms and conditions applicable thereto.

    e.    <u>Telephone Support</u>.  Project Assistants shall provide its standard telephone support to Winn-Dixie.

    f.    <u>Onsite Support</u>. Project Assistants will invoice Winn-Dixie at its standard labor rates on a time and materials basis for any maintenance or support services that must be provided to Winn-Dixie on Winn-Dixie's site.

5.    <u>Problem Reports</u>. Problem Reports shall be handled according to the division of responsibility and procedures described below:

    a.    <u>Issuance of Problem Reports by Winn-Dixie</u>. In each instance that Winn-Dixie believes that any portion of the Software fails to conform to its Documentation or its specifications, Winn-Dixie personnel shall contact Project Assistants in person or by telephone to report the problem or failure, and, in any event, issue as soon as reasonably possible a hardcopy or emailed "Problem Report" to Project Assistants that sets forth the problem or failure in reasonable detail. If Project Assistants first learns of the Problem Report by email, then Project Assistants shall assign a preliminary Priority Code to the Problem Report and respond to Winn-Dixie ("Call Back") within the time period indicated for the applicable Priority Code as set forth in Exhibit A.

    b.    <u>Issuance of Problem Reports by Project Assistants</u>. In each instance that Project Assistants independently discovers a problem or failure such as described in Section 5.a, Project Assistants shall issue its own Problem Report and share its content with Winn-Dixie as soon as reasonably possible.

<b>WINN-DIXIE STORES, Inc.</b><br>
<b>CONFIDENTIAL</b>

c.    <u>Priority Code</u>. Upon its receipt or internal issuance of the Problem Report and in consultation with Winn-Dixie information technology personnel (if reasonably available), Project Assistants will use the nature of the problem and the business situation to assign a Priority Code reflecting the appropriate level of repair urgency for the problem. The parties shall endeavor in good faith to limit the scope of each Problem Report to a single, focused problem or failure.

d.    <u>Problem Report Response and Resolution</u>.

i.    After its receipt and acknowledgment of a Problem Report, Project Assistants shall address the problem, test its proposed correction, and provide a "Problem Report Response" in the form of either (1) internally implementing, or issuing to Winn-Dixie for its implementation, a Fix or Workaround, or (2) joining Winn-Dixie in agreeing in writing that no Fix or Workaround is required.

ii.    Unless otherwise agreed, Project Assistants will use its best efforts to provide a Problem Report Response in the form of a Fix or Workaround, as well as an ultimate Resolution, each within the time period for the applicable Priority Code set forth in Exhibit A.

**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**

## PRIORITY CODE TABLE

| Priority Code | Classifi-cation | Definition | Call Back | Problem Report Response | Resolution |
|---|---|---|---|---|---|
| 1 | Urgent | Highest level of severity ,indicating the most critical of problems.<br><br>Examples: Winn-Dixie system is down or effectively unusable as a result of the problem; Problem causes mission-critical impact on Winn-Dixie's operation due to loss of functionality used to schedule processes considered to be essential to Winn-Dixie operations, project completion or normal Winn-Dixie productivity.<br><br>No immediately known or implementable workaround. | 2 hours in response to email. | Provide Fix or Workaround within 4 hours | Provide Fix within 2 days. |
| 2 | High | High level of severity indicating serious problems and/or degrading conditions.<br><br>Examples: System is up and running, but the problem causes significant impact. High impact problem where operation is proceeding, but in a significantly impaired fashion, or with loss of functionality needed to schedule processes optimally.<br><br>No immediately implementable workaround. | 4 hours in response to email. | Provide Fix or Workaround within 8 hours | Provide Fix within 2 |
| 3 | Moderate | Medium level of severity. System is up and running and the problem causes only limited or insignificant impact.<br><br>Workaround exists. | 8 hours | Provide Fix or Workaround within 2 days | Provide Fix within 5 days |
| 4 | Low | Low level of severity.<br><br>Examples: Cosmetic, documentation, user interface or ease of use issue; operation is not adversely affected; anomaly found on screen in Documentation. Problem relates to functionality that is relatively unimportant and infrequently used. | 1 day | Approach documented or issues detailed within one week | Resolution to be determined and scheduled by parties in good faith |

The times set forth above in this Exhibit A are the times within which Project Assistants shall complete the indicated action with respect to a Problem Report following Project Assistants' receipt or internal issuance of the Problem Report. All day intervals specified in this exhibit shall consist of calendar days.

**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**

| Project Name: | Estimated Time & Materials Payments (excluding T&E): |
|---|---|
| Knowledge Management Solution Installation | $ 31,100.00 |
| | License Fee for Project Assistants' Software: |
| | $20,000.00 |
| | License Fee for Fitjitsu Software: |
| | $48,000.00 |
| Client Name: Winn-Dixie Stores, Inc. | Client Contact Name: Charlie Derrick |
| Client email address: CharlieDerrick@winn-dixie.com | Client Contact Phone: (904) 350-7179 |
| Project Assistants Contact: David A. Peck | Project Assistants Contact Phone: (302) 593-3539 |

**Formatted:** Font: (Default) Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt

## Agreement to this Statement of Work and Its Attachments

Agreed to this _____ day _____ of  in the county of New Castle, State of Delaware, USA ("Effective Date").

**By:**

**Project Assistants:**    _____
Signature

_____
Augustus J. Cicala, Jr., Chief Executive Officer
Print Name, Title

**Client:**    _____
Signature

_____
Print Name, Title

WINN-DIXIE STORES, Inc.
CONFIDENTIAL

# Invoice Information

Please complete the following invoice information:

Purchase Order Number: _____

☐     The invoice should be sent to the party signing this agreement

☐     The invoice should be sent to the party documented on the purchase order

☐     The invoice should be sent to the following party:


Name: _____

Title: _____

Dept: _____

Address: _____

_____

City: _____

State_____ Zip Code: _____

Telephone: _____

Email: _____


> Please email or fax to:
>
> Project Assistants
>
> **Attn:** Bob Kirkpatrick
>
> **Fax:** (302) 477-9712
>
> **Email:** bkirkpatrick@projectassistants.com


**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**

# Training Material Shipment Information

### Instructions:

- For the "Shipper Information" section, please provide details for your preferred shipping courier.

- For the "Client Ship to Information" section, please provide details for the person who should receive the training materials.

- The quantities and training material types specified in this SOW will be shipped at the time of the execution of the "Authorization to Proceed."

- If you would prefer Project Assistants, Inc. to be responsible for shipping charges, please note that appropriate shipping and handling charges will be added to your training materials invoice.

- If after processing this training materials order additional materials are required, Project Assistants, Inc. will execute a Project Change Order, prior to shipping any additionally required materials.

| Shipper Information |
|---|
| Shipping method (check one): |
| ☐ FedEx    ☐ UPS    ☐ Airborne Express    ☐ Other (specify): _____ |
| Shipper Phone: (____) _____ - _____ |
| Your shipper account number: _____ |
| Your shipping preference: |
| ☐ Next day    ☐ Two Day    ☐ Three Day    ☐ Other (specify): _____ |

| Client Ship To Information | | |
|---|---|---|
| **(Please list information in this section for the person who will receive the training materials)** | | |
| Primary Contact Name: | | |
| Internal Mail Drop: | | |
| Address 1: | | |
| Address 2: | | |
| City: | State: | Zip: |
| Primary Contact email address: | | |
| Primary Contact Phone number: | | |
| Other pertinent ship to information: | | |
| Comments: | | |

**WINN-DIXIE STORES, Inc.**
**CONFIDENTIAL**

01/11/05    16:39    W-D INFORMATION SYSTEMS → 3024779712    NO.286    D01

# Project Scope Change Request Form

Instructions for Requester: Please fill out the Project Name, Request Date, Requester Name, Phone Number, Email Address, Description of Change, and Reason for Change/Benefits. Keep one copy of the completed form for your records and submit one copy to the Project Assistants Project Manager or fax to (302) 477-9712. Please direct any questions to the Project Assistants Project Manager or call (302) 477-9711.

| Project Name: Winn-Dixie Methodology Consulting | | Date: 1/11/2005 | Change No.: CRB-3 |
|---|---|---|---|
| Requestor Name: Winn-Dixie Charlie Weston & Charlie Derrick | Phone: 904-370-7262 | Email: CharlieDerrick@winn-dixie.com | |

**Description of Change:**                 Provide 4-days of Methodology Consulting Services – Week of 1/10/05
(Attach additional sheets if necessary)
This change request will provide W/D with 4 additional days of methodology consulting. The purpose of this change request will begin the foundation planning for six defined W/D Information Technology routes to be implemented using Macroscope methods, deliverables and routes.

                                                                                                Attachment (N)

**Reason for Change / Benefits:**           Continue the definition of six W/D defined methodology routes, deliverables
(Attach additional sheets if necessary)      and procedures.
                                                                                                Attachment (N)

## To Be Completed by Project Assistants Project Manager

| Estimated price/hours to complete impact analysis | $6,400.00 Plus Travel Expenses | Hours 32 | Actual price/hours to complete impact analysis | $ | Hours |
|---|---|---|---|---|---|
| Approval to complete impact analysis: Project Manager | | Signature | Recommendation for Impact Analysis: | xApprove | ☐ Reject |
| Approval to complete impact analysis: Project Manager | | Signature | Recommendation for Impact Analysis: | ☐ Approve | ☐ Reject |

## Results of Impact Analysis

**Impact Analysis (Describe Impact of Change):** This Change Order, for an additional 4-days of consulting services to be delivered the week of January 10, 2004, represents additional services not covered under Project Assistants' Microsoft Project 2003 Implementation SOW of August 2004. Project Assistants, Inc. will invoice Winn-Dixie for 4-days of services and travel-related expenses for this Change Order upon acceptance.

| This request for change is (check one): | Out of Scope:X | In Scope: ☐ | | Attachment ☐ |
|---|---|---|---|---|
| Estimated Price/Hours to Implement Change | $ $6,400.00 Plus Travel Expenses | Actual Price/Hours to Implement Change | $ $6,400.00 Plus Travel Expenses | |

| Impact Analysis reviewed by Project Assistants Project Manager | ☐ | Recommendation for Implementation | ☐ Implement | ☐ Reject |
|---|---|---|---|---|
| Impact Analysis reviewed by Client Project Manager | ☐ | Recommendation for Implementation | ☑ Implement | ☐ Reject |

## Implementation Approval

| Project Assistants Project Manager Approval: | Signature: | Date: |
|---|---|---|
| Client Project Manager Approval: | Signature: Charlie Weston | Date: 1/11/2005 |

Charlie Derrick    1/11/2005

01/03/05    11:40    W-D INFORMATION SYSTEMS → 3024779712                    NO.198    P02

## Project Scope Change Request Form

Instructions for Requester: Please fill out the Project Name, Request Date, Requestor Name, Phone Number, Email Address, Description of Change, and Reason for Change/Benefits. Keep one copy of the completed form for your records and submit one copy to the Project Assistants Project Manager or fax to (302) 477-9712. Please direct any questions to the Project Assistants Project Manager or call (302) 477-9711.

| Project Name: Winn-Dixie Methodology Consulting | Date: 12/30/2004 | Change No.: CRB-2 |
|---|---|---|

| Requestor Name: Winn-Dixie Charlie Weston & Charlie Derrick | Phone: 904-370-7262 | Email: CharlieDerrick@winn-dixie.com |
|---|---|---|

**Description of Change:**      Provide 4-days of Methodology Consulting Services
(Attach additional sheets, if necessary)
This change request will provide W/D with 4 days of methodology consulting. The purpose of this change request will begin the foundation planning for six defined W/D Information Technology routes to be implemented using Macroscope methods, deliverables and routes.

                                         Attachment (N)

**Reason for Change / Benefits:**      Begin the definition of six W/D defined methodology routes, deliverables
(Attach additional sheets if necessary)      and procedures.

                                          Attachment (N)

### To Be Completed by Project Assistants Project Manager

| Estimated price/hours to complete impact analysis | $6,400.00* Plus Travel Expenses | Hours 32 | Actual price/hours to complete impact analysis | $ | Hours |
|---|---|---|---|---|---|
| Approval to complete impact analysis: Project Manager | _____ Signature | | Recommendation for Impact Analysis: | x Approve | ☐ Reject |
| Approval to complete impact analysis: Project Manager | _____ Signature | | Recommendation for Impact Analysis: | ☐ Approve | ☐ Reject |

### Results of Impact Analysis

**Impact Analysis (Describe Impact of Change):** Note that the 32 hours required to complete this 4-day consulting assignment are covered under the Microsoft Project 2003 Pilot Implementation SOW (8/21/04), as these 32 hours were unused during the execution of the Pilot SOW. Project Assistants, Inc. will invoice Winn-Dixie for travel-related expenses only for this 4-day consulting Change Order.

| This request for change is (check one): | Out of Scope:x ☐ | In Scope: ☐ | Attachment ☐ |
|---|---|---|---|
| Estimated Price/Hours to Implement Change | $ T&E Expenses ONLY | Actual Price/Hours to Implement Change | $ T&E Expenses ONLY |

| Impact Analysis reviewed by Project Assistants Project Manager | ☐ | Recommendation for Implementation: | ☐ Implement | ☐ Reject |
|---|---|---|---|---|
| Impact Analysis reviewed by Client Project Manager | ☑ | Recommendation for Implementation: | ☑ Implement | ☐ Reject |

### Implementation Approval

| Project Assistants Project Manager Approval: | Signature: | Date: |
|---|---|---|
| Client Project Manager Approval: | Signature: Chali D_L | Date: 1-3-05 |

x    Charles Derrick   Date 1/3/2005

# EXHIBIT B





| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 02/02/05 | WD0018 |

**Terms: Net 30 days from date of invoice**

Remit Payment To:

## Project Assistants, Inc.

1409 Foulk Road, Suite 200
Wilmington, DE  19803
Voice: (302) 477-9711
Fax:    (302) 477-9712

| Billed To: | Winn Dixie<br>Attn: Charlie Derrick<br>5050 Edgewood CT.<br>Jacksonville, FL  32254 |
|---|---|

| Description | Extended Price |
|---|---|
| **Winn Dixie Knowledge Management Solution** | |
| **Training Materials** | |
| KnowledgeCentral 2003 Administration Manuals (12 @ $50 per manual) | $600.00 |
| Windows SharePoint Administration Manuals (12 @ $75 per manual) | $900.00 |
| | |
| **Software Licensing** | |
| KnowledgeCentral 2003 Server (2 CPU Licenses @ $10,000 per License) | $20,000.00 |
| Macroscope DevelopmentSuite (50 Users License) | $48,000.00 |
| **Total Amount Due** | **$69,500.00** |

Thank You!

## <u>CERTIFICATE OF SERVICE</u>

I, Michael G. Busenkell, certify that I am not less than 18 years of age, and that service of the foregoing **Motion Of Project Assistants, Inc. For An Order (I) Compelling The Immediate Payment Of A Chapter 11 Administrative Expense; Or (II) In The Alternative, Compelling The Immediate Discontinuation And Purging Of Software Licensed Or Installed By Project Assistants** was caused to be served on June 14, 2005, in the manner indicated on the parties on the attached list.

Date:  June 14, 2005

_____
Michael G. Busenkell (No. 3933)

469836

# SERVICE LIST

BY HAND

James C. Carignan, Esq.
Pepper Hamilton LLP
Hercules Plaza
Suite 5100
1313 Market Street
Wilmington, DE  19801

Stephen M. Miller, Esq.
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue
10th Floor
Wilmington, DE  19801

Kurt F. Gwynne, Esq.
Reed Smith LLP
1201 N. Market Street
Wilmington, DE  19801

Karen Bifferato, Esq.
Christina Thompson
Connolly Bove Lodge & Hutz
1007 North Orange Street
Wilmington, DE  19801

Mark Minuti, Esq.
Saul Ewing LLP
222 Delaware Avenue
Suite 1200
Wilmington, DE  19801

Wilmington Trust Company
Attn:  Steven M. Cimalore
1100 North Market Street
Rodney Square North
Wilmington, DE  19890

Drinker Biddle & Reath LLP
Attn:  Andrew J. Flame
1100 North Market Street
Suite 1000
Wilmington, DE  19801

Jason W. Staib, Esq.
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street
Suite 800
Wilmington, DE  19801

Kathleen M. Miller, Esq.
Smith, Katzenstein & Furlow
800 Delaware Avenue
7th Floor
Wilmington, DE  19801

BY FIRST CLASS MAIL

Varnum Riddering Schmidt Howlett LLP
Attn:  Timothy J. Curtin
P.O. Box 352
Grand Rapids, MI  49501-0352

Smith, Gilliam, Williams & Miles, PA
Attn: Brad Patten
P.O. Box 1098
Gainesville, GA  30503

Pitney Hardin LLP
Attn: Richard Meth
P.O. Box 1945
Morristown, NJ  07962-1945

Blanco Tacklabery Combs & Matamoros, PA
Attn: Gene B. Tarr
P.O. Drawer 25008
Winston-Salem, NC  27114-5008

Smith, Anderson, Blount, Dorsett,
Mitchell & Jernigan LLP
Attn: Amos U. Priester IV
P.O. Box 2611
Raleigh, NC  27602-2611

YoungWilliams, P.A.
Attn:  Robert L. Holladay, Jr.
P.O. Box 23059
Jackson, MS  39225-3059

Pitney Hardin LLP
Attn:  Scott A. Zuber, Peter A. Forgosh
P.O. Box 1945
Morristown, NJ  07962-1945

Davis & Fields PC
Attn: Richard Davis
P.O. Box 2925
Daphne, AL  36526

Haywood, Denny & Miller LLP
Attn: Robert Levin
P.O. Box 51429
Durham, NC  51429

GrayRobinson PA
Attn: Donald Nohrr
P.O. Box 1870
Melbourne, FL  32902

Kantrow, Spaht, Weaver & Blitzer
Attn: David S. Rubin
P.O. Box 2997
Baton Rouge, LA  70821-2997

Porzio, Bromberg & Newman PC
Attn:  Warren J. Martin, Brett S. Moore
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ  07962-1997

Foster & Lindeman, PA
Attn: William Lindeman
P.O. Box 3108
Orlando, FL  32802-3108

Developers Diversified Realty Corp.
Attn:  Eric C. Cotton
3300 Enterprise Parkway
P.O. Box 227042
Beachwood, OH  44122

Wheelis & Rozanski
Attn:  Stephen D. Wheelis
P.O. Box 13199
Alexandria, LA  71315-3199

Haynsworth Sinkler Boyd, PA
Attn: William H. Short
P.O. Box 11889
Columbia, SC  29201

Smith Debnam Narron Wyche Saintsing &
Myers LLP
Attn: Byron L. Saintsing, Esq.
P.O. Box 26268
Raleigh, NC  27611

Ray Quinney & Nebeker, PC
Attn: Steven Waterman
P.O. Box 45385
Salt Lake City, UT  84145-0385

Glenn M. Reisman
Two Corporate Drive, Suite 648
P.O. Box 861
Shelton, CT  06484-0861

Johnson, Hearn, Vinegar, Gee & Mercer
PLLC
Attn: Jean Winborne Boyles
P.O. Box 1776
Raleigh, NC  27602

Johnson, Pope, Bokor, Ruppel & Burns LLP
Attn: Michael Markham
P.O. Box 1368
Clearwater, FL  33757

Fox Rothschild LLP
Attn: Joshua T. Klein
2000 Market Street
10th Floor
Philadelphia, PA  19103-3291

Haynes and Boone, LLP
Attn: Judith Elkin
399 Park Avenue
New York, NY  10022-4614

Munsch Hardt Kopf & Harr PC
Attn: Raymond Urbanik, Scott Ellis
1445 Ross Avenue
Suite 4000
Dallas, TX  75202

Kupelian Ormond & Magy PC
Attn:  Terrance Hiller, Paul Magy
and Matthew Thompson
25800 Northwestern Hwy, St. 950
Southfield, MI  48075

Russell R. Johnson
3734 Byfield Place
Richmond, VA  23233

Zeichner Ellman & Krause LLP
Attn:  Stuart Krause
575 Lexington Avenue
New York, NY  10022

Wharton, Aldhizer & Weaver, PLC
Attn:  Stephan W. Milo
The American Hotel
125 S. Augusta St., Ste. 2000
Staunton, VA  24401

Gibbons, Del Deo, Dolan, Griffinger &
Vechione
Attn:  David N. Crapo, Geraldine E.
Ponto
One Riverfront Plaza
Newark, NJ  07102-5497

Moore & Van Allen PLLC
Attn:  David B. Wheeler, Esq.
40 Calhoun Street, Ste. 300
P.O. Box 22828
Charleston, SC  29413-2828

Morrison Cohen LLP
Attn:  Michael R. Lago, Esq.
909 Third Avenue
New York, NY  10022

Stutsman & Thames
Attn:  Nina M. LaFleur, Richard R.
Thames
121 W. Forsyth Street
Suite 600
Jacksonville, FL  32202

Bear Stearns Investment Products Inc.
Attn:  Noah Charney
383 Madison Avenue
New York, NY  10179

McCarter & English LLP
Attn:  William D. Wallach
Four Gateway Center
200 Mulberry Street
Newark, NJ  07102

Bianchi Macron LLP
Attn:  Gerard DiConza
390 Old Country Road
Garden City, NY  11530

Murray, Frank & Sailer LLP
Attn:  Jacqueline Sailer, Aaron D.
Patton
275 Madison Ave.
8th Floor
New York, NY  10016

Mateer & Harbert PA
Attn:  David Landis
225 East Robinson St., Ste. 600
P.O. Box 2854
Orlando, FL  32802-2854

Paul, Weiss, Rifkind, Wharton & Garrison
LLP
Attn: Alan W. Kornberg
1285 Avenue of the Americas
New York, NY  10019-6064

Willkie Farr & Gallagher LLP
Attn:  Alan J. Lipkin, Robin Spigel
787 Seventh Avenue
New York, NY  10019

Haynes and Boone, LLP
Attn: Stacey Jernigan, Mark Elmore
901 Main Street
Suite 3100
Dallas, TX  75202-3789

Wormser, Kiely, Galef & Jacobs LLP
Attn:  Janice B. Grubin, Gary R. von
Stange
825 Third Avenue
New York, NY  10022

Macey, Wilensky, Cohen, Wittner &
Kessler LLP
Attn:  Louis G. McBryan
600 Marquis Two Tower
285 Peachtree Center Ave.
Atlanta, GA  30303-1229

Lowenstein Sandler PC
Attn:  Sharon L. Levine, Esq.
65 Livingston Avenue
Roseland, NJ  07068

Moseley, Prichard, Parrish, Knight &
Jones
Attn: Richard K. Jones, Eric L. Hearn
501 West Bay Street
Jacksonville, FL  32202

Pepper Hamilton LLP
Attn: Alan Sable
500 Grant Street
50th Floor
Pittsburgh, PA  15219-2502

Waller Lansden Dortch & Davis PLLC
Attn:  David E. Lemke, Robert Welhoelter
511 Union Street
Suite 2700
Nashville, TN  37219

Klein & Solomon LLP
Attn: Solomon J. Jaskiel
275 Madison Ave.
11th Floor
New York, NY  10016

Danielle K. Greco
Bradley Arant Rose & White LLP
Attn: John Whittington and Patrick Darby
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35222

McGuirewoods LLP
Attn: Robert A. Cox
Bank of America Corporate Center
100 N. Tryon St., Ste. 2900
Charlotte, NC  28202-4011

Angelo, Gordon & Co.
Attn: James M. Malley
245 Park Ave., 26th Floor
New York, NY  10167

DLA Piper Rudnick Gray Cary US LLP
Attn: Janice Duban
203 N. LaSalle Street
Suite 1900
Chicago, IL  60601

Hunton & Williams, LLP
Attn: Craig V. Rasile
1111 Brickell Avenue
Suite 2500
Miami, FL  33131

Neal & Harwell PLC
Attn: Marc McNamee
150 Fourth Ave., N.
Suite 2000
Nashville, TN  37219

Mimms Enterprises, Inc.
Attn: Thomas B. Mimms, Jr.
85-A Mill Street
Roswell, GA  30075-4952

FagelHaber LLC
Attn: Clinton P. Hansen, Dennis E. Quaid
55 East Monroe
40th Floor
Chicago, IL  60603

Rynn & Janowsky LLP
Attn: Patricia Rynn, Priscilla Grannis
4100 Newport Place Drive
Suite 700
Newport Beach, CA  92660

Hiersche, Hayward, Drakeley & Urbach PC
Attn: Russell W. Mills, Krista P. Bates
15303 Dallas Parkway
Suite 700
Addison, TX  75001

Dykema Gossett PLLC
Attn: Brendan G. Best
400 Renaissance Center
Detroit, MI  48243-1668

Marrero Land and Improvement
Association, Ltd.
Attn: Vincent A. Vastola
5201 Westbank Expressway
Suite 4000
Marrero, LA  70072

Cohen, Todd, Kite & Stanford
Attn: Monica V. Kindt
250 East Fifth Street
Suite 1200
Cincinnati, OH  45202

Hamilton Beach/Proctor-Silex, Inc.
Attn: William Ray
4421 Waterfront Drive
Glen Allen, VA  23060

Kilpatrick Stockton LLP
Attn: Todd C. Meyers
1100 Peachtree St., NE
Suite 2800
Atlanta, GA  30309-4530

Begnaud & Marshall LLP
Attn: Darrel Begnaud
250 N. Milledge Avenue
P.O. Box 8085
Athens, GA  30603

DLA Piper Rudnick Gray Cary US LLP
Attn: Mark Friedman, Susan Maher
6225 Smith Avenue
Baltimore, MD  21209

DLA Piper Rudnick Gray Cary US LLP
Attn: Daniel Carrigan
1200 Nineteenth St., NW
Washington, DC  20036

Moritt, Hock, Hamroff & Horowitz LLP
Attn: Marc Hamroff, Leslie Berkoff
400 Garden City Plaza
Garden City, NY  11530

Schaneville, Baringer & Meltzer
Attn: Dale R. Baringer
918 Government Street
Baton Rouge, LA  70802

Sonnenschein Nath & Rosenthal LLP
Attn: Carole Neville, Jo Christine Reed
1221 Avenue of the Americas, 24th
New York, NY  10020

The Inland Real Estate Group
Attn: Bert K. Bittourna
2901 Butterfield Road
Oak Brook, IL  60523

Pepper Hamilton LLP
Attn: Linda Casey
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799

Reed Smith LLP
Attn: Robert M. Marino
1301 K Street, NW
Suite 1100 - East Tower
Washington, DC  20005-3317

Shapiro & Croland
Attn: Alexander Benisatto, Robert
Shapiro
Continental Plaza II
411 Hackensack Ave., 6th Fl.
Hackensack, NJ  07601

Hughes & Luce
Attn: Sabrina Streusand
111 Congress Avenue
Suite 900
Austin, TX  78701

Todtman, Nachamie, Spizz & Johns, PC
Attn: Alex Spizz
425 Park Avenue
New York, NY  10022

Hance Scarborough Wright Ginsberg &
Brusilow, LLP
Attn: Frank Wright, Ashley Ellis
6000 Signature Place
14755 Preston Road
Dallas, TX  75254

Klehr, Harrison, Harvey, Branzburg &
Ellers, L.P.
Attn: Carol Ann Slocum
475 Haddonfield Road
Suite 510
Cherry Hill, NJ  08002

Reed Smith LLP
Attn: Elena Lazarou, Andrew Morrison
599 Lexington Avenue
27th Floor
New York, NY  10022

Kaufman & Canoles
Attn: Paul Campsen
150 West Main Street
P.O. Box 3037
Norfolk, VA  23514

McCarthy & White PLLC
Attn: William Douglas White
8180 Greensboro Drive
Suite 875
McLean, VA  22102

Reed & Reed
Attn: Diane Reed
501 N. College Street
Waxahachie, TX  75165

Traub Bonacquist & Fox LLP
Attn:  Paul Traub, Wendy Marcari
655 Third Avenue
21st Floor
New York, NY  10017

Locke Liddell & Sapp LLP
Attn:  Omer Kuebel III and
C. Davin Boldissar
601 Poydras St., Ste. 2400
New Orleans, LA  70130-6036

David L. Pollack
Jeffrey Meyers
Dean C. Waldt
Ballard Spahr Andrews & Ingersoll
Mellon Bank Center
51st Floor
1735 Market Street
Philadelphia, PA  19103

Contrarian Capital Management LLC
Attn:  Janice Stanton
411 W. Putnam Avenue
Suite 225
Greenwich, CT  06830

Patterson Belknap Webb & Tyler
Attn:  David W. Dykehouse and
Michael Handler, Esq.
1133 Avenue of The Americas
New York, NY  10036-6710

Cozen & O'Connor
Attn:  Neal D. Colton, David J. Liebman
1900 Market Street
Philadelphia, PA  19103

Kelley Drye & Warren LLP
Attn:  James S. Carr, Robert Lehane
101 Park Avenue
New York, NY  10178

Frank/Gecker LLP
Attn:  Joseph D. Frank, Micah Krohn
325 N. Lasalle Street
Suite 625
Chicago, IL  60610

Manier & Herod
Attn:  J. Michael Franks, Michael
Collins
and Thomas Pennington
150 Fourth Ave. N., Ste. 2200
Nashville, TN  37219-2494

Morgan, Lewis & Bockius LLP
Attn: Neil E. Herman, Esq.
101 Park Avenue
New York, NY  10178-0600

Xroads Solutions Group LLC
Attn: Dennis Simon
9 Executive Circle
Suite 190
Irvine, CA  92614

Allman Spry Leggett & Crumpler
Attn: Leggett R. Bradford, Esq.
380 Knollwood Street
Suite 700
Winston-Salem, NC  27113-5129

Balch & Bingham LLP
Attn: W. Clark Watson, Eric Ray, Esq.
1901 Sixth Ave., N
Suite 2600, P.O. Box 306
Birmingham, AL  35201

Angel & Frankel PC
Attn: Laurence May, Rick A. Steinberg
460 Park Avenue
New York, NY  10022-1906

Kaye Scholer LLP
Attn: Richard Smolev, Keith Murphy
425 Park Avenue
New York, NY  10022-3598

Cox Smith Matthews Incorporated
Attn: Patrick L. Huffstickler
112 E. Pecan
Suite 1800
San Antonio, TX  78205

Jenkens & Gilchrist P.C.
Attn: Michael S. Held, Esq.
1445 Ross Avenue
Suite 3200
Dallas, TX  75202-2799

Michael D. Warner
Warner Stevens, L.L.P.
Attn: David T. Cohen, Emily Chou
1700 City Center Tower II
301 Commerce Street
Fort Worth, TX  76102

Richard W. Ward, Esq.
2527 Fairmount Street
Dallas, TX  75201

Kraft (Kraft Foods, Kraft Pizza, Nabisco)
Attn: Sandra Schirmang
Director of Credit
Three Lakes Drive
Northfield, IL  60093

Elena L. Escamilla
Assistant U.S. Trustee
Office of the United States Trustee
135 West Central Blvd.
Room 620
Orlando, FL  32801

Winn-Dixie Stores, Inc.
Attn: Laurence B. Appel
5050 Edgewood Court
Jacksonville, FL  32254-3699

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: D. J. Baker
Four Times Square
New York, NY  10036

King & Spalding LLP
Attn: Sarah Robinson Borders
191 Peachtree Street
Atlanta, GA  30303

Smith Hulsey & Busey
Attn: Stephen D. Busey
225 Water Street
Suite 1800
Jacksonville, FL  32202

Internal Revenue Service
Special Procedures - Stop 5720
400 W Bay Street
Suite 35045
Jacksonville, FL  32202

U.S. Securities and Exchange Commission
Office of Reorganization
Attn: Susan R. Sherrill-Beard
3475 Lenox Rd., NE, Ste. 1000
Atlanta, GA  30326-1232

Scarcella Rosen & Slome
Attn: Adam L. Rosen, Thomas Slome
333 Earle Ovington Blvd.
Suite 901
Uniondale, NY  11553

Deutsche Bank Trust Company Americas
c/o Nixon Peabody LLP
Attn: Dennis Drebsky, John Rosenthal
437 Madison Avenue
New York, NY  10022

Curtis, Mallet-Prevost, Colt & Mosle LLP
Attn:  Steven J. Reisman, Andrew M. Thau
101 Park Avenue
New York, NY  10178-0061

Pepsico & Subsidiaries
Attn:  Scott Johnson
7701 Legacy Drive 38-109
Plano, TX  75024

Shearman & Sterling LLP
Attn:  Andrew Tenzer
599 Lexington Avenue
New York, NY  10022-6069

Otterbourg, Steindler, Houston & Rosen,
P.C.
Attn:  Dan Fiorello, Jonathan N. Helfat
and Jarod M. Stern
230 Park Ave., 29th Fl.
New York, NY  10169

Milbank, Tweed, Hadley & McCloy LLP
Attn:  Dennis Dunne, Lena Mandel,
Dennis O'Donnell and Matthew Barr
1 Chase Manhattan Plaza
New York, NY  10005

Morgan, Lewis & Bockius LLP
Attn:  Richard S. Toder
101 Park Avenue
New York, NY  10178-0060

Pepper Hamilton LLP
Attn:  I. William Cohen
100 Renaissance Center
36th Floor
Detroit, MI  48243-1157

The Blackstone Group L.P.
Attn:  Flip Huffard
345 Park Avenue
New York, NY  10010

Ice Miller
Attn:  Henry A. Efroymson
and Mark A. Bogdanowicz
One American Square
Box 82001
Indianapolis, IN  46282

Charlie Crist
Office of the Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL  32399-1050

Roetzel & Andress
Attn:  Diana M. Thimmig
1375 East Ninth Street
One Cleveland Ctr., 9th Fl.
Cleveland, OH  44115

Macco & Stern, LLP
Attn:  Richard L. Stern
135 Pinelawn Road
Suite 120 South
Melville, NY  11747

Held & Israel
Attn:  Edwin W. Held
1301 Riverplace Blvd.
Suite 1916
Jacksonville, FL  32207

McGrath North Mullin & Krath, PC LLO
Attn:  James J. Niemeier
First National Tower, Ste. 3700
1601 Dodge Street
Omaha, NE  68102

Taplin & Associates
Attn:  Ronald Scott Kaniuk
350 Fifth Avenue
Suite 2418
New York, NY  10118

Howard, Solochek & Weber, S.C.
Attn:  Bryan M. Becker
324 East Wisconsin Avenue
Suite 1100
Milwaukee, WI  53202

40/86 Advisors, Inc.
Attn:  Frank Berg, Gregory J. Seketa
535 N. College Drive
Carmel, IN  46032

Law Offices of Avrum J. Rosen
Attn:  Avrum J. Rosen
38 New Street
Huntington, NY  11743

Erman, Teicher, Miller, Zucker &
Freedman, P.C.
Attn:  Earle I. Erman, Esq.
400 Galleria Officentre
Suite 444
Southfield, MI  48034

Morton R. Branzburg
Klehr, Harrison, Harvey, Branzburg &
Ellers, L.P.
Attn:  Carolyn Hochstadter Dicker
and Jeffrey Kurtzman
260 South Broad Street
Philadelphia, PA  19102-5003

Morriston & Foerster LLP
Attn:  Jason C. DiBattista
1290 Avenue of the Americas
New York, NY  10104

Sills Cummis Epstein & Gross PC
Attn:  Andrew H. Sherman
One Riverfront Plaza
Newark, NJ  07102

Lathrop & Gage LC
Attn:  Stephen B. Sutton
2345 Grand Boulevard
Suite 2800
Kansas City, MO  64108

Herrick, Feinstein LLP
Attn:  Paul Rubin
2 Park Avenue
New York, NY  10016

Lowndes, Drosdick, Doster, Kantor and
Reed, P.A.
Attn: Zachary J. Bancroft
450 S. Orange Ave., Ste. 800
P.O. Box 2809
Orlando, FL  32802-2809

Milling Benson Woodward LLP
Attn:  David Conroy
909 Poydras Street
Suite 2300
New Orleans, LA  70112-1010

Diaz Wholesale & Mfg. Co., Inc.
Attn: M. Eric Newberg
5501 Fulton Industrial Blvd.
Atlanta, GA  30336

Broad and Cassel
Attn:  C. Craig Eller
One North Clematis St.
Suite 500
West Palm Beach, FL  33401

Pepe & Hazard LLP
Attn:  Charles J. Filardi
30 Jelliff Lane
Southport, CT  06890-1436

Locke Liddell & Sapp LLP
Attn:  W. Steven Bryant, Thomas H. Grace
600 Travis Street
3400 Chase Tower
Houston, TX  77002

Robinson Brog Leinwand Greene Genovese
& Gluck P.C.
Attn:  Fred B. Ringel, Esq.
1345 Avenue of the Americas
New York, NY  10105

Page, Scrantom, Sprouse, Tucker & Ford,
P.C.
Attn:  Lee Champion, Esq.
1111 Bay Ave., 3rd Floor
P.O. Box 1199
Columbus, GA  31902-1199

Airgas, Inc.
Attn:  Mr. David Boyle
259 Radnor-Chester Road, Ste. 100
P.O. Box 6675
Radnor, PA  19087-8675

Hogan & Hartson, L.L.P.
Attn:  Ira S. Greene, Esq.
875 Third Avenue
New York, NY  10022

Discover Financial Services
Attn:  Frank Vydra, Esq.
2500 Lake Cook Road
Riverwoods, IL  60015

Neiman Ginsburg & Mairanz PC
Attn:  Gary Ginsburg
39 Broadway, 25th Fl.
New York, NY  10006

Arnall Golden Gregory LLP
Attn:  Darryl Laddin, J. Hayden Kepner
and James Smith
171 W. 17th St., NW, Ste. 2100
Atlanta, GA  30363

Derek F. Meek
Robert B. Rubin
Marc Solomon
Burr & Forman LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, AL  35203

Katten Muchin Zavis Rosenman
Attn:  Thomas J. Leanse, Dustin P.
Branch
2029 Century Park East
Suite 2600
Los Angeles, CA  90067-3012

Merrill Lynch, Pierce, Fenner & Smith
Incorporated
Attn:  Nicholas Griffiths
4 World Financial Center
New York, NY  10080

Greenberg Traurig, LLP
Attn:  Richard Steven Miller
200 Park Avenue
New York, NY  10166

Greenberg Traurig, LLP
Attn:  Mark D. Bloom
1221 Brickell Avenue
Miami, FL  33131

Grueneberg Law Group, LLC
Attn:  Rudi R. Grueneberg, Esq.
704 East Main Street
Building E
Moorestown, NJ  08057

Boult, Cummings, Conners & Berry PLC
Attn:  Austin L. McMullen
Roundabout Plaza
1600 Division St., Ste. 700
Nashville, TN  37203

Coca-Cola Enterprises Inc.
c/o Miller & Martin PLLC
Attn:  Shelly D. Rucker
832 Georgia Ave., Ste. 1000
Chattanooga, TN  37402-2289

BellSouth
Attn:  Reginald A. Greene
675 West Peachtree St. NE
Suite 4300
Atlanta, GA  30375

Lowenstein Sandler PC
Attn:  Bruce S. Nathan, Anusia L. Gayer
1251 Avenue of the Americas
18th Floor
New York, NY  10020

Anderson Kill & Olick, PC
Attn:  Larry D. Henin
1251 Avenue of the Americas
New York, NY  10020

Wyatt, Tarrant & Combs, LLP
Attn:  John P. Brice
250 West Main Street
Suite 1600
Lexington, KY  40507-1746

Akerman Senterfitt
Attn: John B. Macdonald
50 North Laura Street, Suite 2500
Jacksonville, FL  32202

Reinhart Boerner Van Deuren s.c.
Attn: Joshua Blakely, Michael Jankowski
1000 North Water St., Ste 2100,
P.O.Box 2965
Milwaukee, WI  53201-2965

Loreal Paris
Attn: Patrick Ackerman
35 Broadway Road
Cranbury, NJ  8512

Berger Singerman, P.A.
Attn: Arthur Spector, Grace Robson
350 East Las Olas Blvd., Ste 1000
Fort Lauderdale, FL  33301

Gronek & Latham, LLP
Attn: Scott Shuker
390 N. Orange Ave., Ste 600
Orlando, FL  32801

Broad and Cassel
Attn: Roy S. Kobert
390 North Orange Ave., Ste 1100
Orlando, FL  32801

State of Georgia,
Assistant Attorney General Oscar B.
Fears, III
40 Capitol Square, SW
Atlanta, GA  30334

Johnston, Moore, Maples & Thompson
Attn: Stuart Maples
400 Meridian St., Ste 301
Huntsville, AL  35801

Meland Russin Hellinger & Budwick, PA
Attn: Jonathan Williams
3000 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL  33131

Hedrick, Dewberry, Regan & Durant
Attn: Jeffrey C. Regan
50 North Laura St., Ste 1600
Jacksonville, FL  32202

Shutts & Bowen LLP
Attn: Andrew Brumby
300 South Orange Ave, Suite 1000
Orlando, FL  32801

Mowrey & Biggins, P.A.
Attn: Ronald A. Mowrey
515 North Adams St.
Tallahassee, FL  32301-1111

Borges & Associates, LLC
Attn: Wanda Borges
575 Underhill Blvd., Ste 110
Syosset, NY  11791

Canova and Delahaye
Attn: L. Phillip Canova, Louis Delahaye,
Thomas Delahaye
58156 Court St.
Plaquemine, LA  70764-2708

Akin Gump Strauss Hauer & Feld LLP
Attn: Stephen Kuhn
590 Madison Avenue
New York, NY  10022-2524

Dreyer's Grand Ice Cream
Attn: Shane Weitzel
5929 College Ave.
Oakland, CA  94618

Nick Law Firm, LC
Attn: Tammy N. Nick
676 East 1-10 Service Road
Slidell, LA  70461

Stoltz Real Estate Partners
Attn: Stephen Lewis
725 Conshohocken State Road
Bala Cynwyd, PA  19004

Taft, Stettiniuse & Hollister, LLP
Attn: Richard Ferrell
425 Walnut St., Ste 1800
Cincinnati, OH  45202-3957

Kondos & Kondos Law Office
Attn: Anjel K. Avant, Esq.
1595 N. Central Expressway
Richardson, TX  75080

FPL Law Department
Attn: Rachel S. Budke
700 Universe Boulevard
Juno Beach, FL  33408

Barnes & Thornburg LLP
Attn: Wendy D Brewer
11 South Meridian St
Indianapolis, IN  46204-3535

Miller & Martin PLLC
Attn: Catherine Harrison
1170 Peachtree St., Ste 800
Atlanta, GA  30309-7649

Marks Gray, P.A.
Attn: Nicholas V. Pulignano, Jr.
1200 Riverplace Boulevard, Suite 800
Jacksonville, FL  32207

Keaton & Associates, P.C.
Attn: Mary E. Gardner, Esq.
1278 W. Northwest Hwy., Suite 903
Palatine, IL  60067

Rogers Towers PA
Attn: Betsy Cox, Robert T. Hyde, Jr.
1301 Riverplace Blvd., Ste 1500
Jacksonville, FL  32007

Lee & Rosenberger, a Law Corporation
Attn: Gregg Rapoport
135 W. Green St., Ste 100
Pasadena, CA  91105

Poyner & Spruill LLP
Attn: Judy Thompson
301 South College St., Ste 2300
Charlotte, NC  28202

Law Offices of Daniel Markind
Attn: Johanna Markind
1500 Walnut St., Ste 1100
Philadelphia, PA  19102

Rosenberg & Weinberg
Attn: Herbert Weinberg
805 Turnpike St.
North Andover, MA  1845

Cohen & Thurston PA
Attn: Janet Thurston
1723 Blanding Blvd #102
Jacksonville, FL  32210

Berger Singerman, P.A.
Attn: Berger Singerman
200 South Biscayne Blvd.";"St1 1000
Miami, FL  33131-5308

Wright, Lindsey & Jennings LLP
Attn: James Glover
200 West Capitol Avenue, Suite 2300
Little Rock, AR  72201

Michael E. Lee
Attorney for the City of Huntsville
200 Westside Square, Ste 803
Huntsville, AL  35801-4816

Lowndes, Drosdick, Doster, Kantor &
Reed, PA
Attn: Matt Beal
215 North Eola Drive
P.O.Box 2809
Orlando, FL  32802

Foley & Mansfield PLLP
Attn: Thomas Lallier, Megan Blazina
250 Marquette Ave, Ste 1200
Minneapolis, MN  55401

Harper, Kynes, Geller & Bradford PA
Attn: Charles Buford
2560 Gulf to Bay Blvd, Ste 300
Clearwater, FL  33765

Holland & Knight
Attn: Alan Weiss
15 North Laura St., Ste 3900
Jacksonville, FL  32202

Marvin S. Schulman, PA
2800 Weston Road, Ste 201
Weston, FL  33331

Irby Law Firm
Attn: Albert Adams
P.O.Box 910
Eufaula, AL  36072

Gerard Kouri, Jr.
10021 Pines Blvd., Ste 202
Pembroke Pines, FL  33024-6191

Hill, Ward & Henderson, PA
Attn: Lynn Welter Sherman
PO Box 2231
Tampa, FL  33601

Trenam, Kemker, Scharf, Barkin, Frye,
O'Neill & Mullis
Attn: Lara R. Fernandez, Richard
McIntyre
Post Office Box 1102
Tampa, FL  33601-1102

Volpe, Bajalia, Wickes, Rogerson,
Galloway & Wachs.
Attn: John T. Rogerson
Riverplace Tower
1301 Riverplace Blvd., Suite 1700
Jacksonville, FL  32207

Iurillo & Associates, PC
Attn: Sabrina Beavens
Sterling Square
600 First Ave. North, Ste 308
St. Petersburg, FL  33701

Stovash,,Case & Tingley, PA
Attn: Rachel Adams
SunTrust Center
200 South Orange Avenue, Suite 1220
Orlando, FL  32801-3410

Bregman, Berbert, Schwartz & Gilday, LLC
Attn: Laurence H. Berbert
7315 Wisconsin Avenue, Suite 800
West Bethesda, MD  20814

Anthony Salzano
Counsel for Pasco County Board of County
Commissioners
West Pasco Government Center
7530 Little Road, Ste 340
New Port Richey, FL  34654

Hubbard, Smith, Mcllwain, Brakefield &
Browder PC
Attn: Marcus Brakefield, Christopher
Mcllwain, Kristofor Sodergren
P.O.Box 2427
Tuscaloosa, AL  35403

Platzer, Swergold, Karlin, Levine,
Goldberg & Jaslow, LLP
Attn: Teresa Sadutto
1065 Avenue of the Americas, 18th Fl.
New York, NY  10018

Spain & Gillon, LLC
Attn: Walter F. McArdle
The Zinszer Building
2117 Second Avenue
North Birmingham, AL  35203

Choate, Hall & Stewart
Attn: John Ventola, William McMahon
Exchange Place, 53 State St.
Boston, MA  02109-2891

Genovese Joblove & Battista, P.A.
Attn: Craig P. Rieders
100 Southeast Second Street, Suite 3600
Miami, FL  33131

Johnston, Conwell & Donovan LLC
Attn: W. Howard Donovan, Ann Marie
Daugherty
813 Shades Creek Pkwy, Ste 200
Birmingham, AL  35209

Tabas, Freedman, Soloff & Miller PA
Attn: Joel Tabas
919 Ingraham Bldg, 5 Southeast Second
Ave.
Miami, FL  33131-1538

Epstein Becker & Green, PC
Attn: Annette Kerlin McBrayer
945 East Paces Ferry Rd., Ste 2700
Atlanta, GA  30326

Winderweedle, Haines, Ward & Woodman, PA
Attn: Ryan E. Davis
a/f AmSouth Bank
390 North Orange Ave., Ste 1500 PO Box
1391
Orlando, FL  32802-1391

Dreyer's Grand Ice Cream
c/o Cook, Perkiss & Lew
Attn: David Cook
P.O.Box 270
San Francisco, CA  94104-0270

Munsch Hardt Kopf & Harr PC
Attn: Randall Rios
Bank of America Center
700 Louisiana, 46th Fl.
Houston, TX  77002

RMC Property
c/o Dennis LeVine & Associates
P.O.Box 707
Tampa, FL  3.36011e+008

Pinellas County, Florida Diane Nelson,
Tax Collector
P.O. Box 2943
Clearwater, FL  33757-2943

Morgan & Morgan, Attorneys at Law PC
Attn: Lee P. Morgan
P.O.Box 48359
Athens, GA  30604

Slott, Barker & Nussbaum
Attn: Earl M. Barker
334 East Duval Street
Jacksonville, FL  32202

Karem & Karem, Attorneys at Law
Attn: John W. Harrison, Jr.
333 Guthrie Green, Ste 312
Louisville, KY  40202

Nelson Mullins Riley & Scarborough, LLP
Attn: George B. Cauthen
Meridian Building, 17th Fl.
1320 Main St.
Colombia, SC  29201

Hangley, Aronchick, Segal & Pudlin
Attn: Ashley Chan
One Logan Square, 27th Fl
Philadelphia, PA  19103

Eastman & Smith Ltd
Attn: Kenneth C Baker
One Seagate, 24th Floor
P.O.Box 10032
Toledo, OH  43699-0032

Wilkins, Bankester, Biles & Wynne, PA
Attn: Marion Wynne, Brian Britt
P.O.Box 1367
Fairhope, AL  36532

The Coca-Cola Company
Attn: John Lewis, Litigation Counsel
P.O.Box 1734
Atlanta, GA  30301

Wiles & Wiles
Attn: John J. Wiles
800 Kennesaw Ave., Ste 400
Marietta, GA  30060-7946

Rex D. Rainach, A Professional Law
Corporation
3622 Government St.
Baton Rouge, LA  70806-0646

Wander & Associates
Attn: David H. Wander
641 Lexington Ave., 21st Floor
New York, NY  10022

Metro-Goldwyn-Mayer Home Entertainment
Inc.
Attn: Christopher Miller
10250 Constellation Blvd.
Los Angeles, CA  90067

Ginnie Van Kesteren P.A.
Attn: Ginnie Van Kesteren
111 Second Ave., NE
Suite 706
St. Petersburg, FL  33701

Perkins Cole LLP
Attn: Bruce MacIntyre, Jennifer
Stevenson
1201 Third Avenue
40th Floor
Seattle, WA  98101-3099

Kennedy Covington Lobdell & Hickman LLP
Attn: Margaret Westbrook
Two Hanover Square, Ste. 1900
434 Lafayette St. Mall
Raleigh, NC  27602-1070

Adelman Law Offices PC
Attn: David A. Adelman
1320 Tower Road
Suite 114
Schaumburg, IL  60173

Stichter, Riedel, Blain & Prosser PA
Attn: Don M. Stichter, Edward Peterson
and Elena Ketchum
110 E. Madison St., Ste 200
Tampa, FL  33602

William F. Harmeyer & Associates
Attn: William F. Harmeyer
7322 Southwest Freeway
Suite 475
Houston, TX  77074

The H.T. Hackney Co.
Attn: Kyle Dugger
502 S. Gay Street
Suite 300
Knoxville, TN  37902

Lisa Bittle Tancredi
Venable LLP
Attn: Gregory Cross, Heather Deans Foley
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD  21201

Ken Burton, Jr.
Manatee County Tax Collector
Attn: Susan D. Profant
P.O. Box 25300
819 U.S. 301 Blvd. West
Bradenton, FL  34206-5300

Meuers Law Firm, P.L.
Attn: Lawrence H. Meuers
5395 Park Central Court
Naples, FL  34109

Fredric Buresh, P.A.
Attn: Fredric Buresh
800 SE Third Ave.
4th Floor
Ft. Lauderdale, FL  33316

Simpson Law Offices
Attn: James W. Martin
One Securities Ctr., Ste. 300
3490 Piedmont Rd., NE
Atlanta, GA  30305

Markowitz, Davis, Ringel & Trusty, PA
Attn: Jerry Markowitz, Rachel Rubio
9130 S. Dadeland Blvd.
Suite 1225
Miami, FL  33156

Frank, Weinberg & Black, PL
Attn: David Black
7805 S.W. 6th Court
Plantation, FL  33324

Ford, Bowlus, Duss, Morgan, Kenney,
Safer & Hampton PA
Attn: Michael Bowlus, Katherine Schnauss
10110 San Jose Blvd.
Jacksonville, FL  32257

Kennedy Covington Lobdell & Hickman LLP
Attn: Amy Pritchard Williams
Hearst Tower, 47th Fl.
214 N. Tryon Street
Charlotte, NC  28202

Elk, Bankier, Christu & Bakst, LLP
Attn: Michael R. Bakst
222 Lakeview Avenue
Suite 1330
West Palm Beach, FL  33401

Fredrikson & Byron, P.A.
Attn: John M. Koneck, Esq.
200 S. Sixth Street
Suite 4000
Minneapolis, MN  55402-1425

Liebman, Conway, Olejniczak & Jerry,
S.C.
Attn: Jerome E. Smyth
231 South Adams Street
P.O. Box 23200
Green Bay, WI  54305-3200

Richard Blackstone II, PA
Attn: Richard Blackstone Webber II
320 Maitland Avenue
Altamonte Springs, FL  32701

Anderlini, Finkelstein, Emerick & Smoot
Attn: David G. Finkelstein
400 South El Camino Real
Suite 700
San Mateo, CA  94402

Buckeye Capital Partners, LP
Attn: Philip Brown
230 Park Avenue
Suite 1540
New York, NY  10169

Kenneth C. Meeker
Assistant U.S. Trustee
Office of the United States Trustee
135 West Central Blvd.
Room 620
Orlando, FL  32801

Quadrangle Group LLC
Attn: Patrick Bartel, Andrew Herenstein
375 Park Avenue
14th Floor
New York, NY  10152

Levy & Droney, PC
Attn: Ross G. Fingold
74 Batterson Park Road
Farmington, CT  06032

Citrus County Tax Collector
Attn: Janice A. Warren
210 N. Apopka Avenue
Suite 1000
Inverness, FL  34450

Levenfeld Pearlstein, LLC
Attn: William S. Schwartz
211 Waukegan Road
Suite 300
Northfield, IL  60093

Kaplan and Freedman, P.A.
Attn: Matthew E. Kaplan, Esq.
9410 Southwest 77th Avenue
Miami, FL  33156-7903

AmSouth Bank
Attn: William R. Hoog
13535 Feather Sound Dr.
Bldg. 1, Ste 525
Clearwater, FL  34762

Bodoff & Slavitt LLP
Attn: Joseph Bodoff
225 Friend Street
Boston, MA  02114

Kozyak Tropin & Throckmorton, PA
Attn: John Kozyak, Laurel Isicoff
2525 Ponce de Leon
9th Floor
Coral Gables, FL  33134

Leonard, Street and Deinard
Attn: Larry Ricke
150 South Fifth Street
Suite 2300
Minneapolis, MN  55402

Watkins, Ludlam, Winter & Stennis, P.A.
Attn: Kristina M. Johnson
633 North State Street
P.O. Box 427
Jackson, MS  39205-0427

William P. Wessler
1624 24th Avenue
Gulfport, MS  39501

Kass, Shuler, Solomon, Spector, Foyle &
Singer
Attn: Larry Foyle
1505 N. Florida Avenue
P.O. Box 800
Tampa, FL  33601

Johnston, Harris, Gerde & Jelks, PA
Attn: Jerry Gerde
239 E. 4th Street
Panama City, FL  32401-3110

St. John & Wayne, LLC
Attn: Todd Galante, Paul Evangelista
Two Penn Plaza East
Newark, NJ  07105

Shaw Gussis Fishman Glantz Wolfson &
Towbin, LLC
Attn: Brian Shaw, Allen Guon
321 N. Clark Street
Suite 800
Chicago, IL   60610

Porter, Wright, Morris & Arthur LLP
Attn: James Botti
41 South High Street
31st Floor
Columbus, OH   43215

Smith Debnam Narron Wyche Saintsing &
Myers LLP
Attn: Byron L. Saintsing, Esq.
P.O. Box 26268
Raleigh, NC   27611

Snell & Wilmer, LLP
Attn: Peter Rathwell
One Arizona Center
400 E. Van Buren
Phoenix, AZ   85004-2202

McCormick & Company
Attn: Austin Nooney
211 Schilling Circle
Hunt Valley, MD   21031-1102

Wolff, Hill, McFarlin & Herron, P.A.
Attn: David McFarlin, Kenneth Herron
1851 W. Colonial Drive
Orlando, FL   32804

Sesssions, Fishman & Nathan LLP
Attn: J. David Forsyth
201 St. Charles Avenue
35th Floor
New Orleans, LA   70170-3500

Leatherwood Walker Todd & Mann, PC
Attn: Seann Gray Tzouvelekas
P.O. Box 87
300 E. McBee Ave., Ste. 500
Greenville, SC   29602-0087

Pachulski, Stang, Ziehl, Young, Jones &
Weintraub PC
Attn: Robert Feinstein
780 Third Avenue
36th Floor
New York, NY   10017

Foley & Mansfield, PLLP
Attn: James J. Lotz
545 Madison Avenue
New York, NY   10022

McClain, Leppert & Maney, P.C.
Attn: J. Casey Roy, Michael Leppert
711 Louisiana Street
Suite 3100
Houston, TX   77002

Brenner Kaprosy LLP
Attn: T. David Mitchell
50 East Washington Street
Chagrin Falls, OH   44022-3032

Greenbaum, Rowe, Smith & Davis LLP
Attn: Thomas Denitzio
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ   07095-0988

Alfred E. Smith
60 E. 42nd Street
Suite 2501
New York, NY   10017

Wachtel & Masyr, LLP
Attn: Steven Cohen, Greg Haber
110 East 59th Street
New York, NY   10022

Saul Ewing LLP
Attn: Joyce Kuhns
100 South Charles St., 15th Fl
Baltimore, MD   21201

LaMonica Herbst & Maniscalco, LLP
Attn: Salvatore LaMonica
3305 Jerusalem Avenue
Wantagh, NY   11803

Jennis & Bowen
Attn: David Jennis, Chad Bowen
400 N. Ashley Drive
Suite 2540
Tampa, FL   33602

Squire, Sanders & Dempsey LLP
Attn: Kristin E. Richner
1300 Huntington Center
41 South High Street
Columbus, OH   43215-6197

Brown Raysman Millstein Felder &
Steiner, LLP
Attn: Gerard Catalanello
900 Third Avenue
New York, NY   10022

Broward County Revenue Collection
Division
Litigation Section, Attn: Hollie Hawn
Government Center Annex
115 S. Andrews Ave.
Ft. Lauderdale, FL  33301

Trutt & Franson, PA
Attn: Albert Franson
707 Peninsular Place
Jacksonville, FL  32204

Williams Mullen Hofheimer Nusbaum
Attn: David Greer
999 Waterside Drive
Suite 1700, P.O. Box 3460
Norfolk, VA  23514-0617

Williams Mullen Hofheimer Nusbaum
Attn: Paul Bliley
1021 East Gary Street
P.O. Box 1320
Richmond, VA  23218-1320

Kegler Brown Hill & Ritter
Attn: Stewart Cupps
Capitol Square, Suite 1800
65 East State Street
Columbus, OH  43215-4294

Seyfarth Shaw LLP
Attn: Richard Lauter, Sara Lorber
55 E. Monroe Street
Suite 4200
Chicago, IL  60601-5803

Thompson, O'Brien, Kemp & Nasuti PC
Attn: Albert Nasuti
40 Technology Parkway South
Suite 300
Norcross, GA  30092

Sher Garner Cahill Richter Klein &
Hilbert, L.L.C.
Attn: Elwood F. Cahill, Jr., Neal J.
King
909 Poydras Street
28th Floor
New Orleans, LA  70112

Polsinelli Shalton Welte Suelthaus PC
Attn: Daniel Flanigan
292 Madison Avenue
17th Floor
New York, NY  10017

Polsinelli Shalton Welte Suelthaus PC
Attn: James E. Bird
700 West 47th Street
Suite 1000
Kansas City, MO  64112

Clark, Partington, Hart, Larry, Bond &
Stackhouse
Attn: Keith L. Bell, Jr.
One Pensacola Plaza, Ste. 800
125 W. Romana Street
Pensacola, FL  32501

Jeffrey M. Chebot, Esq.
Whiteman, Bankes & Chebot, LLC
Suite 1300 - Constitution Place
325 Chestnut Street
Philadelphia, PA  19106

Phelps Dunbar
Attn: Douglas C. Noble
111 E. Capital, Suite 600
P.O. Box 23066
Jackson, MS  39225-3066

Stoel Rives LLP
Attn: Peter L. Slinn
600 University Street
Suite 3600
Seattle, WA  98101

Simon Property Group
Attn: Ronald Tucker
115 W. Washington Street
Indianapolis, IN  46204

Weiss Serota Helfman Pastoriza Guedes
Cole & Boniske PA
Attn: Douglas Gonzales
3107 Stirling Rd., Ste. 300
Ft. Lauderdale, FL  33312

Bingham McCutchen LLP
Attn: Anthony Smits
One State Street
Hartford, CT  06103