**Hearing Date: July 14, 2005**
**Objecting Deadline: July 7, 2005**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
|  | ) |  |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
|  | ) |  |
| Debtors. [1] | ) | Jointly Administered |

### DEBTORS' MOTION FOR DETERMINATION OF ADEQUATE ASSURANCE OF PAYMENT OF UTILITIES REQUIRED UNDER 11 U.S.C. § 366

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order under 11 U.S.C. § 366(b) determining that the eleven utility companies identified on the attached Exhibit A are not entitled to additional adequate assurance (the "Motion"). In support of this Motion, the Debtors represent as follows:

### Background

1.    On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

order dated April 13, 2005, the New York Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

      2.     The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. On March 1, 2005, an official committee of unsecured creditors (the "Creditors' Committee") was appointed to serve in these cases pursuant to section 1103 of the Bankruptcy Code.

      3.     The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors currently operate more than 900 stores in the United States with nearly 79,000 employees. Substantially all of the Debtors' store locations are leased rather than owned.

      4.     This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

      5.     The statutory predicates for the relief requested herein are sections 105 and 366(b) of the Bankruptcy Code.

      6.     The Debtors have relationships with approximately 800 different utility companies for the provision of telephone, electric, gas, water, sewer, waste management, and other services. Of the utility companies providing services to the Debtors, approximately 494 do not hold prepetition deposits or other forms of security. The

Debtors' monthly average expenditure for all utility services is approximately $16 million.

7.    On February 21, 2005 the Debtors filed a motion for an order deeming the utility companies adequately assured of payment for postpetition services, prohibiting utilities from altering, refusing, or discontinuing services, and establishing procedures for resolving requests for additional assurance (the "Utilities Motion").

8.    Twelve utility companies filed objections to the Utilities Motion.  These objections included those filed by JEA f/k/a Jacksonville Electric Authority ("JEA"), American Electric Power ("AEP"), Orlando Utilities Commission ("OUC"), and Duke Energy Corporation ("Duke").  None of these objecting utility companies hold prepetition deposits.[2]

9.    By order dated March 10, 2005, the New York Court approved the Utility Motion with respect to nonobjecting utility companies, deeming the utility companies adequately assured of payment for postpetition services, prohibiting the utility companies from altering, refusing, or discontinuing services, and establishing procedures for resolving requests for additional adequate assurance pursuant to section 366(b) of the Bankruptcy Code (the "Utility Order").

10.    The Utility Order authorizes the Debtors to comply with the adequate assurance requests that the Debtors believe are reasonable without further Court order. The Utility Order further provides that if the Debtors are unable to resolve an adequate assurance request within 60 days from the date of receipt thereof, the Debtors are required to file a motion for determination of such request.

---

[2]    OUC's service charges are backed by a $5,000 surety bond – a nominal amount relative to OUC's average monthly charges of approximately $235,000.

11.     To date, the Debtors have received thirty-one requests for security deposits for postpetition service charges from utility companies that hold either no security deposits or nominal security deposits for prepetition utility services.[3]

12.     On May 10, 2005, the Bankruptcy Court held an evidentiary hearing with respect to JEA's objection seeking a postpetition deposit. Based on evidence presented at that hearing regarding the Debtors' satisfactory payment history, net worth, current liquidity, borrowing ability, and average monthly payments to utility companies, the Court overruled JEA's objection.

13.     On June 2, 2005, the Bankruptcy Court held an evidentiary hearing with respect to the objections of AEP, OUC, and Duke for postpetition deposits.  Based on evidence presented at that hearing regarding the Debtors' satisfactory payment history with respect to the foregoing utilities, current liquidity, business plan, and reorganization goals, the Court overruled the objections of AEP, OUC, and Duke.

14.     On June 3, 2005, the Court entered the orders with respect to its rulings against JEA, AEP, OUC, and Duke.

15.     In light of these rulings – and to ease the administrative burdens which would otherwise result if the Debtors were forced to contest the adequate assurance requests from the utility companies that effectively hold no deposits – the Debtors requested that those utility companies withdraw their adequate assurance requests. Twenty utility companies have complied with the Debtors' request and have withdrawn their requests.  The remaining eleven utility companies listed on Exhibit A have declined

---

[3]     Two of the utility companies hold no deposits with respect to the majority of the Debtors' accounts and surety bonds for the others.

and are pursuing their requests for adequate assurance (the "Requesting Utility Companies").

**Relief Requested**

16.     By this Motion, the Debtors seek an order of the Court, pursuant to section 366(b) of the Bankruptcy Code determining that the Requesting Utility Companies are not entitled to additional adequate assurance.

**Basis for Relief**

**A.     The Court has discretion in determining whether adequate assurance is warranted under the circumstances.**

17.     Section 366(b) of the Bankruptcy Code provides that a utility may not "alter, refuse, or discontinue service" if the debtor "furnishes adequate assurance of payment, in the form of a deposit or other security."  11 U.S.C. § 366(b).  Whether a utility is subject to unreasonable risk of nonpayment for postpetition services and whether, therefore, it is entitled to receive a new deposit must be determined from the facts and circumstances of the case.  *See Mass. Elec. Co.--NY v. Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.--NY*, 117 F.3d 646 (2d Cir. 1997).  The Bankruptcy Court is given reasonable discretion to determine what constitutes adequate assurance of payment for continuing utility services.  *In re Caldor, Inc.*, 199 B.R. at 3; *see also Santa Clara Circuits W., Inc.*, 27 B.R. 680, 684 (Bankr. D. Utah 1982).  All that "is required is that the utility be protected from an unreasonable risk of nonpayment." *Mass. Elec. Co.*, 12 B.R. at 158.  The *Santa Clara* court identified the following factors in making the determination of adequate assurance:

(i) the prepetition security required of the debtor by the utility;

5

(ii) the debtor's prepetition payment history;

(iii) the Debtor's present and future ability to pay its current expenses;

(iv) the debtor's net worth;

(v) the debtor's cash requirements;

(vi) the probability of payment through distribution under bankruptcy laws; and

(vii) the degree by which the risks of nonpayment from the debtor exceed the risks of nonpayment from the utility's other customers.

*Santa Clara*, 27 B.R. at 685; *see also In re Caldor, Inc.*, 199 B.R. at 2.

18.    It is well established that a cash deposit is not necessary to satisfy the requirements of adequate assurance. *In re Utica Floor Maint., Inc.*, 25 B.R. 1010, 1014 (Bankr. N.D.N.Y. 1982) ("It is also established that a cash deposit is not always necessary to satisfy the 'adequate assurance' requirement."); *Demp v. Phila. Elec. Co.*, 22 B.R. 331, 332 (Bankr. E.D. Pa. 1982) ("[W]here the debtor has a history of prompt and complete payment, in addition to being completely current in the prepetition utility payments, a cash deposit would be unnecessary."); *Shirey v. Phila. Elec. Co.*, 25 B.R. 247, 249 (Bankr. E.D. Pa. 1982) ("[S]ection 366(b) of the Code does not permit a utility to request adequate assurance of payment for continued services unless there has been a default by the debtor on a pre-petition debt owed for services rendered.").  The drafters of the Bankruptcy Code recognized that "it will not be necessary to have a deposit in every case." H.S. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306.

**B.** **The Debtors' Payment Record, Financial Ability to Satisfy Future Obligations, and the Treatment of Claims of Postpetition Utility Services as Administrative Expenses Constitute Adequate Assurance of Payment of Future Utility Services.**

19.     The Requesting Utility Companies hold either no deposits or nominal deposits for prepetition utility services.  The Debtors' current circumstances, as discussed below, do not compel a deposit now.  As the evidence presented at the hearings on May 19, 2005 and June 2, 2005 demonstrates, the Debtors' prepetition and postpetition payment history, substantial liquidity, net worth, significant cash at hand, and excess borrowing availability of over $200 million support a finding that the Requesting Utility Companies are adequately assured of payment for postpetition services.  Also, all undisputed charges for actual postpetition services provided by the Requesting Utility Companies will be entitled to an administrative expense priority claim under Bankruptcy Code section 507(a)(1), providing additional assurance that future obligations will be paid in full.  *See Va. Elec. & Power Co. v. Caldor, Inc.--NY*, 117 F.3d 646, 651 (2d Cir. 1997).  As further discussed below, the Debtors have provided the Requesting Utility Companies with more than adequate assurance of future payment.

20.     The facts and circumstances present do not support a finding requiring the Debtors to provide the Requesting Utility Companies with a deposit in any amount.   The Debtors historically have paid their utility bills promptly and in full.  The Court has already found that JEA, AEP, OUC and Duke are adequately assured of postpetition payment and that the Debtors were not required to provide a postpetition security deposits to those utility companies.  As the court found with respect to JEA, these Requesting Utility Companies never requested a deposit prepetition for fear of

7

nonpayment when the Debtors' prepetition financial troubles were known.  (5/19/05 Hr'g

Tr. at 46-47.)  Similarly, no deposit or other security is warranted or necessary.

21.     The Debtors now pose less of  a risk for the Requesting Utility Companies

than they did prior the Petition Date.  In fact, all but two of the Requesting Utility

Companies never demanded that the Debtors post security deposits prior to the Petition

Date, and the remaining two Requesting Utility Companies only required nominal

deposits.  The Requesting Utility Companies may <u>not</u> make such a request merely

because of the Debtors' bankruptcy.  *In re Coury*, 22 B.R. 766, 768 (Bankr. W.D. Pa.

1982) ("[W]e find that a utility cannot insist on the payment of security by one of its

customers solely because the customer has filed a bankruptcy petition.").

22.     If the Debtors' financial position significantly changes, the Requesting

Utility Companies may seek relief from the Court.  The Requesting Utility Companies

may monitor the Debtors' financial strength as the Debtors file monthly operating reports.

The Debtors have also received, and continue to receive, extensive media coverage with

respect to their reorganization efforts.  This Court has already recognized with respect to

JEA that "I can be here at 8:00 one morning on a short notice if there's a problem and you

need to get a quick order to turn off all the power." (5/19/05 Hr'g Tr. at 47.)   At the

contested hearing at June 2, 2005, the Court reiterated that "if they ever feel insecure,

substantially insecure, there's been a change of circumstances from today, the Court will

make court time available on short notice.  You can get a good hour at 8:00 o'clock about

any morning and we can deal with this if that case arises." (6/2/05 Hr'g Tr. at 72.)

23.     Thus, the Debtors' obligation to pay all utility expenses as an

administrative expense is more than sufficient to satisfy the adequate assurance

requirement of section 366(b) of the Bankruptcy Code.  The Debtors current liquidity, net

worth, favorable prepetition and postpetition payment history, cash at hand, and access to

DIP financing more than adequately assure the Debtors' future ability to pay postpetition

obligations.

## **Notice**

24.    Notice of the Motion has been provided to (a) counsel to the Office of the

United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c)

counsel for the Creditors' Committee, (d)  the other parties in interest named on the

Master Service List maintained in these cases, and (e) the Requesting Utility Companies.

No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the

Court enter an order: (a) determining that the Requesting Utility Companies are not entitled

to additional adequate assurance (b) granting such other relief as the Court deems just and

proper.

Dated: June 24, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By    *s/ D. J. Baker*     | By    *s/ Cynthia C. Jackson*      |
| D. J. Baker | Stephen D. Busey |
| Sally McDonald Henry | James H. Post |
| Rosalie Walker Gray | Cynthia C. Jackson, |
| | Florida Bar Number 498882 |
| Four Times Square | 225 Water Street, Suite 1800 |
| New York, New York 10036 | Jacksonville, Florida  32202 |
| (212) 735-3000 | (904) 359-7700 |
| (212) 735-2000 (facsimile) | (904) 359-7708 (facsimile) |
| Co-Attorneys for Debtors | Co-Attorneys for Debtors |

**EXHIBIT A**

| Utility Company | Prepetition Deposit | Postpetition Deposit Request |
|---|---|---|
| Bay Laurel Center Community Development District | $0 | $1,800 |
| City of Camilla | $0 | $11,750 |
| City of Plant City, Florida | $25 | $158,000 |
| City of Plaquemine/ City Light & Water Plant | $375 | $36,000 |
| Hillsborough County Water Department | $0 | $6,150 |
| Peace River Electric Cooperative | $0 | $32,000 |
| Public Service of North Carolina | $0 | $1,255 |
| SCANA Energy Marketing, Inc. | $0 | $179,200 |
| South Carolina Electric & Gas | $0 | $268,035 |
| Utilities Board of the City of Andalusia, Alabama | $0 | $26,771.30 |
| Withlacoochee River Electric | $0 | $301,000 |

534278.11-New York Server 6A - MSW