**Hearing Date: August 4, 2005, 1:00 p.m.**
**Objection Deadline: July 28, 2005, 4:00 p.m.**

### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

### DEBTORS' MOTION FOR ORDER AUTHORIZING
### (I) RETROACTIVE REJECTION OF REAL PROPERTY LEASES AND
### (II) ABANDONMENT OF RELATED PERSONAL PROPERTY

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above captioned cases, as debtors and debtors-in-possession (collectively, the "Debtors"), move for entry of an order under 11 U.S.C. §§ 105(a), 365(a) and 554(a) approving and authorizing the Debtors to reject nine non-residential real property leases effective retroactively and to abandon related personal property (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

### Background

1.   On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

New York Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.

2.    The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3.    The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States with nearly 79,000 employees.  Substantially all of the Debtors' store locations are leased rather than owned.

4.    This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.    The statutory predicates for the relief requested in the Motion are sections 105(a) and 365(a) of the Bankruptcy Code.

## Relief Requested

6.    By this Motion, the Debtors seek an order of the Court, pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, approving and authorizing the rejection of each of

2

the unexpired leases of non-residential real property set forth on Exhibit A to this Motion (the "Leases") effective as of the earlier of (a) the date upon which the Debtors provide notice of termination to the landlords party to the leases and tender possession of the premises to each such landlord and (b) the date of entry of an order approving the rejection (such earlier date, the "Effective Date").

### The Leases

7.      The stores that are the subject of the Leases fall into two categories: (a) four stores which were the subject of sublease or assignment relationships between the Debtors (as sublessor or assignor) and Buehler Foods Inc. (as sublessee or assignee) (such stores, the "Buehler Stores") as part of the prepetition restructuring plans initiated in April 2004; and (b) four stores at which the Debtors have ceased operations as part of the prepetition restructuring plans initiated in April 2004 (the "Dark Stores").   As part of their restructuring plans, the Debtors sought to sell, sublet, negotiate buyouts with landlords, or otherwise reduce or eliminate their liability under many leases including the Leases related to the Buehler Stores and the Dark Stores.

8.      As to the Buehler Stores, these efforts to eliminate or reduce lease liability began in May 2004 and culminated in the decision in October 2004 to enter into assignments, subleases or other agreements with Buehler Foods, Inc. ("Buehler") as to approximately 16 stores, including the Buheler Stores that are the subject of this Motion.  Buehler itself filed for bankruptcy relief in the United States Bankruptcy Court, Southern District of Indiana, Evansville Division (Case No. 05-70961), and on June 9, 2005 filed a motion (the "Buehler Rejection Motion") to reject its assigned and subleased interests in the four Buehler Stores.  The Buehler Rejection Motion was approved by Order dated June 23, 2005.  According to the Buehler

Rejection Motion, Buehler has begun to tender possession of the Buehler Stores premises, with rejection of such stores to be deemed effective no later than June 30, 2005. Because the Debtors previously marketed the Buheler Stores and determined that Buehler was the only interested party, the Debtors do not believe it is likely that the expense involved in undertaking further marketing efforts will produce any benefit for the Debtors' estates. In the absence of rejection, the Debtors would be obligated to continue to pay rent and other charges under the Leases governing the Buehler Stores (the "Buehler Leases") in the aggregate monthly amount of $120,023. Accordingly, the Debtors are seeking to reject the Leases governing the Buehler Stores as of the Effective Date.

9.       Additionally, the Debtors seek to reject the Leases governing the Dark Stores (the "Dark Store Leases"). The Debtors were unable to sell, sublet, negotiate buyouts with landlords, or otherwise reduce or eliminate their liability with respect to the four Dark Store Leases. Accordingly, the Debtors continued to pay the monthly rent required under the Dark Store Leases. Because the Debtors no longer occupy the Dark Stores, have previously marketed the Dark Store Leases, and are continuing to pay rent and other charges under the Dark Store Leases in the aggregate monthly amount of approximately $123,404, the Debtors have concluded that the Dark Store Leases constitute a burden on the Debtors and their estates, are not necessary for an effective reorganization, and should be rejected as of the Effective Date.

10.       The rejection of the Leases will save the Debtors' estates approximately $243,427 per month, beginning with the month of July, in administrative expenses, including rent, taxes, insurance premiums, and other charges under the Leases.

11.       To the extent any personal property remains in the properties subject to the Leases, it is of little or no value to the Debtors' estates. Accordingly, the Debtors request that

the Court enter an order deeming any interest of any of the Debtors in any such personal

property abandoned pursuant to Section 554(a) of the Bankruptcy Code, as of the Effective Date.

### Basis for Relief

12.      Pursuant to Sections 365(a) and 1107(a) of the Bankruptcy Code, a debtor-in-

possession, "subject to the court's approval, may assume or reject any executory contract or

unexpired lease of the debtor."  A debtor-in-possession's right to reject executory contracts and

unexpired leases is a fundamental component of the bankruptcy process, as it provides a debtor

with a mechanism to eliminate financial burdens to the estate.  In re Wells, 227 B.R. 553, 564

(Bankr. M.D. Fla. 1998); In re Hardie, 100 B.R. 284 (Bankr. E.D.N.C. 1989); In re Gunter Hotel

Assoc., 96 B.R. 696 (Bankr. W.D. Tex. 1988).

13.      The decision to reject an executory contract or unexpired lease is primarily

administrative and should be given great deference by a court, subject only to review under the

"business judgment" rule.  See In re Gardinier, Inc., 831 F.2d 974, 976 n.2 (11th Cir. 1987); In re

Central Florida Fuels, Inc., 89 B.R. 242, 245 (Bankr. M.D. Fla. 1988); Sharon Steel Corp. v.

Nat'l Fuel Gas Distr. Corp., 872 F.2d 36, 40 (3d Cir. 1989); Sundial Asphalt Co. v. V.P.C.

Investors Corp., 147 B.R. 72 (E.D.N.Y. 1992).  The business judgment rule requires the debtor

to establish that rejection of the agreement will likely benefit the estate.  See Sharon Steel Corp.,

872 F.2d at 39-40; In re Kong, 162 B.R. 86 (Bankr. E.D.N.Y. 1993); In re Central Florida Fuels,

Inc., 89 B.R. at 245.  Courts universally regard the business judgment rule as a low standard to

meet, and therefore, absent a finding of bad faith, will not disturb the decision to reject an

executory contract or unexpired lease by substituting their own judgment for that of the debtor.

See In re III Enter., Inc. V, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994); In re Hardie, 100 B.R. at

287.

14.     Here, the Debtors' business judgment clearly supports rejection of the Leases. The Debtors are not currently receiving and do not believe they will be able to receive revenue from the Dark Stores or the Buheler Stores.  Thus, the Leases are not necessary for a successful reorganization but instead constitute a burden to the Debtors' estates because of administrative expenses arising from the continuation of the Leases.  Indeed, rejection of the Leases benefits the Debtors' estates by alleviating a monthly cost of approximately $243,427, including taxes, insurance premiums, and other charges due under the Leases.  Consequently, the Debtors seek authority under Section 365 of the Bankruptcy Code to reject the Leases.

15.     The relief requested by this Motion is consistent with the type of relief granted by courts.  See, e.g., In re Hale-Halsell Co., Case No. 04-11677 (Bankr. N.D. Okla. April 23, 2004); In re Git-N-Go, Inc., Case No. 04-10509 (Bankr. N.D. Okla. March 2, 2004); In re Penn Traffic Co., Case No. 03-22495 (Bankr. S.D.N.Y. June 18, 2003); see also BP Energy Co. v. Bethlehem Steel Corp., 2002 WL 31548723 at * 3 (S.D.N.Y. Nov 15, 2002) (recognizing that it is within court's equitable power to assign a retroactive rejection date under section 365(a) of the Bankruptcy Code).  Accordingly, the present circumstances warrant similar relief in their Chapter 11 cases.

## Rejection Damages

16.     To the extent that any of the landlords party to the Leases intend to claim rejection damages as a result of the proposed rejections, the Debtors request that the Court order that the deadline for filing a proof of claim for such rejection is 30 days after the date of entry of the order corresponding to this Motion.

**Notice**

17.     Notice of the Motion has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) the landlords party to the Leases.  No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order (a) authorizing and approving the rejection of the Leases, effective as of the Effective Date; (b) authorizing the abandonment of all of the Debtors' personal property remaining on the properties subject to the Leases; (c) establishing a deadline for the landlords under the Leases to file a rejection damage claim; and (d) granting such other and further relief as the Court deems just and proper.


Dated: June 30, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By    *s/ D. J. Baker* | By    *s/ Cynthia C. Jackson* |
| D. J. Baker | Stephen D. Busey |
| Sally McDonald Henry | James H. Post |
| Rosalie Walker Gray | Cynthia C. Jackson, |
| Adam S. Ravin | Florida Bar Number 498882 |
| Four Times Square | 225 Water Street, Suite 1800 |
| New York, New York 10036 | Jacksonville, Florida  32202 |
| (212) 735-3000 | (904) 359-7700 |
| (212) 735-2000 (facsimile) | (904) 359-7708 (facsimile) |
| djbaker@skadden.com | cjackson@smithhulsey.com |
| | |
| Co-Attorneys for Debtors | Co-Attorneys for Debtors |

**Exhibit A**

**SCHEDULE OF LEASES**

| Store Number | Leased Property Location | Landlord |
|---|---|---|
| 1612 | 5252 Bardstown Road Louisville, KY | Ralph Dyan & Sarah Dyan |
| 1621 | 5364 Dixie Highway Louisville, KY | Bradley Real Estate |
| 1645 | 2809 W. Broadway Louisville, KY | Ainstar Realty Corp. |
| 1686 | 3430 Taylor Blvd. Louisville, KY | Taylon LLC |
| 2712 | 931 Monroe Drive Atlanta, GA | Ackerman Midtown Assoc Ltd |
| 2712 | 931 Monroe Drive Atlanta, GA | John Lagatta |
| 901 | 3024 Sunset Ave Rocky Mount, SC | Carolina Development Company |
| 969 | 6601 Lake Harbor Road Midlothian, VA | JNB Company of Virginia LLC |
| 977 | 3300 Broadrock Blvd Richmond, VA | Horton Properties, LLC |