**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

**DEBTORS' MOTION FOR ORDER (A) AUTHORIZING
THE SALE OF PHARMACEUTICAL PRESCRIPTIONS AND
INVENTORY FREE AND CLEAR OF LIENS, CLAIMS
AND INTERESTS AND (B) GRANTING RELATED RELIEF**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), move the Court for entry of an order pursuant to 11 U.S.C. §§ 363 and 1146 and Rule 6004, Federal Rules of Bankruptcy Procedure authorizing the sale of pharmaceutical prescriptions and inventory free and clear of claims, liens and interests, and granting related relief (the "Motion"). In support of the Motion, the Debtors respectfully represent:

**Background**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the Bankruptcy Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner. On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors currently operate more than 900 stores in the United States with nearly 79,000 employees. Substantially all of the Debtors' stores are leased rather than owned.

4. Prior to the Petition Date, the Debtors and their financial advisors began a comprehensive analysis of the Debtors' businesses to determine how best to maximize their value. In connection with this analysis, the Debtors announced a series of actions to improve their competitive position, which the Debtors refer to as their Strategic Plan. The Strategic Plan includes an effort to reduce the Debtors' annual expenses by over $100 million.

5. In connection with the Strategic Plan, the Debtors and their financial advisors analyzed the Debtors' market areas and determined that some of these markets are noncore, with limited opportunities for the Debtors and unprofitable operations in the aggregate.

499826.3

Prepetition, the Debtors sold or closed 111 stores in these noncore areas and another 45 unprofitable stores in core areas. Postpetition, the Debtors have determined that all stores located in non core market areas should be sold or closed.

6. Since the Petition Date, the Debtors and their financial advisors have continued to analyze all of the Debtors' stores in core areas, including each store's market share, cash flow, profitability, real estate quality and financial outlook. Based upon this analysis, the Debtors have identified additional unprofitable stores located in core markets that should be sold or closed (collectively, the "Targeted Stores").

7. The Debtors have extensively marketed the Targeted Stores and as of June 30, 2005, the Debtors have received bids from national grocery chains and smaller grocers for seventy-nine of the Targeted Stores. The Debtors, in consultation with their financial advisors, the legal and financial advisors to the Creditors' Committee (the "Committee's Professionals") and Wachovia Bank, National Association, in its capacity as administrative agent (the "DIP Lender," and collectively, with its professionals, the "DIP Lender Agent Representatives"), have selected twenty of these bidders as stalking horse enterprise sale bids for one or more of the Targeted Stores (the "Stalking Horse Enterprise Bids"). Concurrently with the filing of this Motion, the Debtors filed a motion seeking approval of the sale of the Targeted Stores (the "Sale Motion").

8. The Debtors' operate pharmacies at one hundred and seven of the Targeted Stores (collectively, the "Targeted Pharmacy Stores"). Attached as Exhibit A is a schedule identifying each of the Targeted Pharmacy Stores. Many of the purchasers of the Targeted Pharmacy Stores will purchase the pharmaceutical prescriptions and inventory located at the store (collectively, the "Pharmaceutical Assets"). In the circumstance in which the Targeted

3

Pharmacy Store is not sold or a purchaser does not purchase the store's Pharmaceutical Assets, the Debtors must sell or otherwise transfer the Pharmaceutical Assets under applicable state law.

9.  There is a significant market for Pharmaceutical Assets among a fairly small group of purchasers. The Debtors are providing an information package to each such purchaser detailing the Pharmaceutical Assets available for sale. The Debtors anticipate receiving a number of offers for the Pharmaceutical Assets.

**Relief Requested**

10. By this Motion, the Debtors request authority to sell any or all of the Pharmaceutical Assets free and clear of liens, claims and interests for the highest or best offer at or before the Auction (as defined below).

11. In the marketing process and Auction, the Debtors will comply with the bidding procedures approved by the Court by Order dated June 21, 2005 (Docket No. 1801) (the "Bidding Procedures"). A copy of the Bidding Procedures is attached as Exhibit B. Any bidder who desires to submit a bid must do so by 5:00 p.m. E.T. by Monday, July 11, 2005. The bidder must execute an asset purchase agreement substantially in the form attached as Exhibit C, marked to show any changes. The Debtors' proposed form of purchase agreement contains customary terms, conditions and defaults for sales of this type and is consistent with other pharmaceutical sale agreements previously approved by the Court.

12. The material terms of the proposed purchase agreement are as follows:[2]

    (a) <u>Purchase Price</u>.

---

[2] This summary of the purchase agreement is provided as a convenience only. To the extent that this summary differs in any way from the terms of the purchase agreement, the terms of the purchase agreement and related documents control. Capitalized terms are defined in the purchase agreement.

499826.3

(b) <u>Assets</u>.  The Pharmaceutical Assets to be sold and transferred include:

    (i) the pharmacy inventory;

    (ii) the pharmacy prescriptions;

    (iii) the prescription drug inventory; and

    (iv) all prescription files and records, customer information and patient profiles relating to the Pharmacy, including any such files or records maintained by computer.

(c) <u>Sale Free and Clear</u>.  The Pharmaceutical Assets will be transferred free and clear of any liens, claims, and interests pursuant to 11 U.S.C. §363.

(d) <u>Court Order</u>.  The sale of the Pharmaceutical Assets is subject to entry of an order of the Court authorizing the sale pursuant to the terms of the purchase agreement.

(e) <u>State and Federal Law</u>.  The purchase agreement provides that the Debtors will comply with all regulations relating to notice of the transfer.

13.  The Debtors will choose the four highest or best bids and permit these bidders to participate at the Auction.  The Debtors will hold the Auction of the Pharmaceutical Assets at 3:00 p.m. E.T. on July 19, 2005, at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036.  The Debtors will make arrangements to allow bidders for the Pharmaceutical Assets to participate in the Auction telephonically when appropriate.

14.  At the conclusion of the Auction, the Debtors will determine, after consultation with the DIP Lender Agent Representatives and the Committee's Professionals, which, if any, is the highest or best offer for any particular Pharmaceutical Asset (a "Successful Bid").  The Debtors will file and serve within 24 hours of the conclusion of the Auction, by overnight or hand delivery, a notice summarizing the Successful Bid (i) the Committee's Professionals, (ii) the U.S. Trustee, (iii) the DIP Lender Agent Representatives, and (iv) the Master Service List.

499826.3

A hearing to approve the Successful Bid(s) will be held on July 29, 2005 (or such other later date as the Debtors designate) (the "Sale Hearing").  **Objection Deadline:**  Only objections filed and served on D. J. Baker at djbaker@skadden.com, Skadden, Arps, Slate, Meagher, & Flom, LLP, Four Times Square, New York, New York 10036 and on Cynthia C. Jackson at cjackson@smithhulsey.com, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 so as to be received by **July 20, 2005** will be considered by the Bankruptcy Court at the Sale Hearing. .

15. At the Sale Hearing, the Debtors will request entry of one or more orders substantially in the form attached as Exhibit D, authorizing the Debtors to sell the Pharmaceutical Assets to the Successful Bidder free and clear of liens, claims and interests in accordance with Bankruptcy Code section 363.

## Applicable Authority

### A. Authority to Enter into the Purchase Agreement and Sell the Assets

16. Bankruptcy Code section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy Code section 1107(a) gives the Debtors, as debtors-in-possession, the same authority as a trustee to use, sell or lease property under section 363(b)(1).

17. A debtor's sale under section 363(b)(1) should be approved when supported by a sound business reason. *See In re BDK. Health Mgmt., Inc.,* Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a section 363(b) application

must find from the evidence presented before him a good business reason to grant such application); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (holding that a debtor in possession may sell assets of his estate outside the ordinary course of business if he has an articulated business justification); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all a chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that the business judgment test is the proper standard to apply when considering a debtor's motion to sell assets outside the ordinary course of business); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (holding that a trustee must show that "there is a sound business purpose for conducting the sale prior to confirmation of a plan"); *In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) ("[T]he Trustee has the burden to establish sound business reasons for the terms of the proposed sale").

18.     Once a court is satisfied that a sound business reason for the sale exists, the court must also consider whether (a) the sale price is fair and reasonable, (b) the purchaser is proceeding in good faith, and (c) the debtor has provided interested parties with adequate and reasonable notice. *Delaware & Hudson,* 124 B.R. at 175-76.

19.     The Debtors have a sound business reason for pursuing this sales process in the manner set forth in the Motion. To the extent the Debtors receive a bid for any of the Pharmaceutical Assets, the Debtors need to consummate the sale as quickly as possible to limit operational expenses and avoid exposure to civil or criminal penalties. The Debtors must comply with applicable state and federal laws concerning the transfer of customer

prescriptions, and completing the sale expeditiously will ensure a seamless transition of the Pharmaceutical Assets for the benefit of consumers and parties in interest. Accordingly, there is a sound business purpose for the requested relief.

**B.     The Sale Free and Clear of All Liens and Encumbrances**

20.    The Debtors request that the sale and transfer of any of the Pharmaceutical Assets be approved free and clear of any lien, claim, or interest. This relief is consistent with the provisions of Bankruptcy Code section 363(f).

21.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property of the estate free and clear of all liens and encumbrances, after notice and a hearing. *See In re Parrish*, 171 B.R. 138, 140 (Bankr. M.D. Fla. 1994) (noting that compliance with the requirements of section 363(f) is a prerequisite to a sale free and clear of liens).

22.    The Debtors believe that there are no interests in or claims against the Assets, other than those of the DIP Lender. The interests of the DIP Lender will be satisfied because the Debtors will cause all net proceeds from any of the sales to be paid to the DIP Lenders to the extent required, in accordance with the terms of the Final Order pursuant to sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-Petition Secured Lenders dated March 23, 2005 (Docket No. 501) (the "Final Financing Order") and the Loan Documents (as defined in the Final Financing Order).

**C.     Good Faith Purchaser**

23.    Bankruptcy Code section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
>
> 11 U.S.C. § 363(m).

24. The Bankruptcy Code does not define the term "good faith". Courts, however, have held that a party would have to show fraud or collusion between the purchaser and other bidders or the Debtors to demonstrate a lack of good faith.

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchasers's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.
>
> *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988).

*Accord Kabro Assoc. of W. Islip, LLC v. Colony Hill Assoc. (In re Colony Hill Assoc.)*, 111 F.3d 269, 276 (2d Cir. 1997).

25. The Debtors submit that: (a) the Pharmaceutical Assets were marketed extensively; and (b) the marketing process and notice of the Sale Hearings ensure that any purchaser of Pharmaceutical Assets has not exerted undue influence over the Debtors. Accordingly, at the Sale Hearing the Debtors will request that the Court find that the respective purchaser acted in good faith within the meaning of Bankruptcy Code section 363(m). *See BDK Health Mgmt.*, 1998 WL 34188241, at *4 (finding that a purchaser was entitled to the protections of Bankruptcy Code section 363(m) because the sale was negotiated

at arms-length, proposed in good faith and the consideration for the assets was fair and reasonable).

### D.   Pharmaceutical Notice

26.   The states in which the Debtors operate a Targeted Pharmacy Store have regulations governing the transfer of Pharmaceutical Assets.  See e.g. *46 La. Admin. Code Title 46, pt. LIII, § 1133; Ga. Code Ann., § 10-1-393*.  Although the regulations vary among the states, generally a pharmacy operator is required to transfer any Pharmaceutical Assets to another entity before the pharmacy closes.  These state regulations may also require the Debtors to notify their customers of the transfer so that the customer is able to obtain his prescription without delay.  The Debtors will comply with these notices.

### E.   The Sale Should be Exempt from Taxes

27.   Bankruptcy Code Section 1146(c) provides that "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax."  11 U.S.C. § 1146(c).  This language has been construed to include transfers pursuant to a sale outside of, but in furtherance of effectuating, a reorganization plan. *Webster Classic Auctions, Inc*., 318 B.R. 216, 218 (Bankr. M.D. Fla. 2004) (adopting rationale that purpose of Bankruptcy Code Section 1146(c) is to facilitate reorganizations and that transfers need not be postconfirmation); *BDK Health Mgmt.*, 1998 WL 34188241, at *8 (granting Bankruptcy Code Section 1146(c) relief outside of confirmed plan); *see also In re T.H. Orlando Ltd.*, 391 F.3d 1287, 1291 (11th Cir. 2004) (exemption applies where transfer is necessary to the consummation of a plan.); *City of New York v. Jacoby-Bender, Inc. (In re Jacoby-Bender, Inc.)*, 758 F.2d 840, 841-42 (2d Cir. 1985) (holding that where a transfer is

necessary to the consummation of a plan, the transfer is "under a plan" within meaning of Bankruptcy Code section 1146(c)); *City of New York v. Smoss Enters. Corp. (In re Smoss Enters. Corp.)*, 54 B.R. 950, 951 (E.D.N.Y. 1985) (stating that Section 1146(c) was designed to reach transfers on which "the plan hinged and which the court had to approve prior to the confirmation"), *aff'd mem.*, No. 85-5106, 1986 U.S. App. LEXIS 28677 (2d Cir. Mar. 31, 1986); *In re United Press Int'l, Inc.*, Case No. 91 B 13955 (FGC), 1992 Bankr. LEXIS 842, at *4, *6-7 (Bankr. S.D.N.Y. May 18, 1992) (holding that Bankruptcy Code Section 1146(c) exemption applied to Section 363 sale where it found "the value of the Debtor's assets is likely to deteriorate [during the] time necessary to . . . confirm a plan"); *In re Permar Provisions, Inc.*, 79 B.R. 530, 533-34 (Bankr. E.D.N.Y. 1987) (stating that determination of applicability of Bankruptcy Code Section 1146(c) exemption is same for pre- and post-confirmation dispositions of property, namely "whether the sale of 'property is essential to confirmation of the plan'") (citation omitted).

28.     Although the Debtors have not yet filed a Chapter 11 plan of reorganization, an integral part of any plan will be the Debtors' ability to divest themselves of the Pharmaceutical Assets.  In light of the foregoing, the Debtors respectfully submit that the sale of the Pharmaceutical Assets is an integral part of, and a necessary predicate toward, the Debtors' Chapter 11 reorganization plan.  Accordingly, the sales should be exempt under Bankruptcy Code Section 1146(c) from any stamp, transfer, sales, recording or similar taxes.

**F.     Elimination of 10-Day Stay Under Rules 6004(g)**

29.     Pursuant to Rule 6004(g), F.R. Bankr. P., unless the Court orders otherwise, all orders authorizing the sale of property outside of the ordinary course of business pursuant to section 363 of the Bankruptcy Code are automatically stayed for ten days after entry of the order.  Given the requirements of the Purchase Agreement and the need to close the sale as

promptly as possible, the Debtors request that the Court order and direct a waiver of the 10-day stay period.

## Notice

30.     The Debtors will serve this Motion, together with a notice of hearing upon (i) all entities known to have expressed an interest in any of the Pharmaceutical Assets in the last twelve months, (ii) all entities known to assert any lien, claim, or interest in any of the Pharmaceutical Assets, and (iii) all parties on the Master Service List.

## Conclusion

For the foregoing reasons, the Debtors respectfully request that at the Sale Hearing, the Court enter one or more orders substantially in the form attached as Exhibit D (a) authorizing the Debtors to sell any particular Pharmaceutical Asset free and clear of all liens, claims and encumbrances; and (b) granting such other and further relief as the Court deems just and proper.

Dated: July 1, 2005

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By   */s/ D. J. Baker*  <br>    D. J. Baker<br>    Sally McDonald Henry<br>    Rosalie W. Gray<br>    Eric M. Davis | By   */s/ Cynthia C. Jackson*  <br>    Stephen D. Busey<br>    James H. Post<br>    Cynthia C. Jackson  F.B.N. 498882<br>    Eric N. McKay |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(212) 735-2000 (facsimile)<br>djbaker@skadden.com | 225 Water Street, Suite 1800<br>Jacksonville, Florida  32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>cjackson@smithhulsey.com |
| Co-Attorneys for Debtors | Co-Attorneys for Debtors |

499826.3