**Objection Deadline: July 28, 2005, 4:00 p.m.**
**Hearing Date: August 4, 2005, 1:00 p.m.**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

## MOTION FOR ENTRY OF ORDER APPROVING STIPULATION BETWEEN DEBTORS AND TRADE VENDORS REGARDING RECONCILIATION AND TREATMENT OF TRADE VENDORS' RECLAMATION CLAIMS AND ESTABLISHING POST-PETITION TRADE LIEN PROGRAM

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned cases, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order under 11 U.S.C. §105(a) and Fed. R. Bankr. P. 9019 approving a settlement between certain trade vendors (the "Vendors")[2] and the Debtors on the terms set forth in the stipulation (the "Stipulation")[3] attached hereto as Exhibit A. In support of the motion (the "Motion"), the Debtors state as follows:

### Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"), in the United States Bankruptcy

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

[2]      The Vendors are as follows: The Clorox Sales Co., ConAgra Foods, Inc., Conopco, Inc., Frito Lay, Inc., General Mills Inc., Kraft Foods Global, Inc., Masterfoods USA, a division of Mars, Inc., Nestle USA, Inc., Pepsi Bottling Group, The Procter & Gamble Distribution Co., Quaker Sales & Distribution, Inc., Sara Lee Corporation, and S.C. Johnson & Son, Inc.

[3]      Capitalized terms not defined herein shall have the meaning ascribed to such term in the Stipulation.

Court for the Southern District of New York (the "New York Court").  By order dated April 13,

2005, the New York Court transferred venue of these cases to this Court.

2.      The Debtors are operating their businesses and managing their properties

as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No

request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the

Official Committee of Unsecured Creditors (the "Creditor's Committee") was appointed to serve

in these cases pursuant to section 1103 of the Bankruptcy Code.

3.      The Debtors are grocery and pharmaceutical retailers operating in the

southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace"

banners.  According to published reports, the Debtors are the eighth-largest food retailer in the

United States and one of the largest in the Southeast.  The Debtors' business was founded in

1925 with a single grocery store and has grown through acquisitions and internal expansion.  The

Debtors currently operate more than 900 stores in the United States with nearly 79,000

employees.  Substantially all of the Debtors' store locations are leased rather than owned.

4.      This Court has jurisdiction over the Motion under 28 U.S.C. § 1334.

Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested by this Motion are section

105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

## Relief Requested

6.      By this Motion, the Debtors seek entry of an order under 11 U.S.C.

§ 105(a) and Fed. R. Bankr. P. 9019 approving the Debtors' entry into and performance under

the Stipulation, substantially in the form annexed hereto as Exhibit A, which, as more fully

described below, resulted in, among other things, (i) the establishment of a trade vendor lien program, and (ii) the procedures for the calculation and treatment of trade vendors' reclamation claims, for those trade vendors that participate in the trade vendor lien program.

7.    For the reasons stated below, the Debtors believe that the Stipulation provides for a settlement that is in the best interests of the Debtors' estates, is reasonable, and should be approved.  The Creditors' Committee supports the settlement.

## Basis for Relief

8.    Reclamation generally allows a vendor to regain possession of certain goods shipped on credit to an insolvent purchaser where the vender was unaware of the purchaser's insolvency.  Roughly 480 reclamation claims were sent to the Debtors.  To avoid distracting, unnecessary litigation by reclamation vendors to reclaim their goods, the Debtors filed a motion on the Petition Date seeking the entry of an order (i) authorizing the Debtors to return goods purchased from vendors prior to the Petition Date, (ii) providing administrative claim status for valid reclamation claims and establishing procedures for the resolution and payment of valid reclamation claims, and (iii) confirming that third parties are stayed or prohibited from interfering with the delivery of goods to the Debtors (the "Reclamation Motion").

9.    The Debtors received several objections to the Reclamation Motion. Vendors objected to, among other things, (i) the proposed reclamation procedures, (ii) the proposed treatment and payment of reclamation claims and (iii) the time in which the Debtors could assert the defense of the existence of a prior perfected lien on the goods supplied by vendors (the "valueless" defense).  On April 4, 2005, the New York Court entered the Final Order (A) Establishing Procedures for Treatment of Reclamation Claims and (B) Prohibiting Third Parties from Interfering with Delivery of Goods (the "Reclamation Order").

10.     The Reclamation Order established reclamation procedures pursuant to which the Debtors would file a statement of reclamation (the "Statement of Reclamation") setting forth the extent and basis, if any, upon which the Debtors believe a reclamation claim is not factually or legally valid (other than the Specific Reclamation Defenses[4]) and/or the amount that shall be considered valid (the "Reconciled Reclamation Claim").  In addition, the Statement of Reclamation would identify with specificity any defenses that are not Specific Reclamation Defenses that the Debtors choose to reserve, notwithstanding any payment of the Reconciled Reclamation Claim.

11.     Pursuant to the Reclamation Order, reclamation vendors who disagree with the Reconciled Reclamation Claim (the "Dissenting Vendors") must indicate such dissent on the Statement of Reclamation and return to the Debtors the Statement of Reclamation with documents evidencing their reclamation claim.  The Dissenting Vendors were also entitled to seek documents from the Debtors relating to their reclamation claim.[5]

12.     These reclamation procedures provided the mechanism pursuant to which reclamation claims would be resolved.  Based on the Debtors' analysis and conversations with reclamation vendors, there were several factual and legal issues subject to dispute.  Rather than litigate these factual and legal issues (potentially with 480 reclamation vendors), the Debtors and the Vendors sought to resolve the Vendors' reclamation claims and entered into negotiations in an effort to reach a mutually satisfactory resolution.  The negotiations resulted in a program whereby a Vendors' reclamation claim would be resolved (the "Reclamation/Trade Lien

---

[4]      The term "Specific Reclamation Defense" means the following defenses: (i) the existence of prior perfected liens on the goods and (ii) the decrease in a claim as a result of the disposition of proceeds from the sale of goods.

[5]      See Reclamation Order for the complete reconciliation procedures.

Program") and each reclamation vendor (and non-reclamation trade vendors) may opt to participate in the program on the same terms as the Vendors[6].

13.    The terms of the Reclamation/Trade Lien Program is set forth in the Stipulation, subject to the approval of the Court.  The Debtors believe entering into the Stipulation is a reasonable compromise and is in the best interest of the Debtors, their estates, their creditors, all parties in interest.

### Stipulation[7]

14.    The key terms and conditions of the Stipulations are as follows:

(a)    The establishment of a reconciliation process, as required by the Reclamation Order.

(b)    Participating Reclamation Vendors will provide favorable post-petition trade credit, which will be secured by a junior lien.

(c)    An agreement with respect to (i) sufficiency of a reclamation demand, (ii) calculation of the reclamation window, (iii) determination of when goods are deemed received by the Debtors, (iv) consumption rates in connection with the calculation of reclamation claims, and (v) methodology to calculate setoff.

(d)    Payment over 9 months of a Participating Vendors' Allowed Reclamation Claim.

(e)    Any preference claim arising from transfers made before February 10, 2005 shall be waived against Participating Vendors. Preference Claims arising from transfers made on or after February 10, 2005 shall be preserved, provided Winn-Dixie identifies such claims on or before July 15, 2005.

(f)    Reclamation vendors and non-reclamation vendors may opt into the Reclamation Settlement Program.

---

[6]       The reclamation vendors that opt into the Reclamation/Trade Lien Program are referred to as "Participating Reclamation Vendors".  Reclamation creditors that do not opt into the settlement are "Non-Participating Reclamation Vendors."

[7]       The following description is intended solely to highlight for the Court and interested parties the most significant terms of the Stipulation.  All parties are directed to the Stipulation annexed hereto as Exhibit A for the controlling terms of the settlement.

(g)      Debtors waive the Specific Reclamation Defenses, including the "valueless" defense.

(h)      Payment of certain reasonable legal fees of Vendors up to $300,000.

### **Applicable Authority**

15.      Settlements and compromises are "a normal part of the process of reorganization" and are strongly favored over litigation. <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968) (quoting <u>Case v. Los Angeles Lumber Prods. Co.</u>, 308 U.S. 106, 130 (1939)). The Eleventh Circuit has stated that:

> [P]ublic policy strongly favors pre-trial settlement in all types of litigation because such cases, depending on their complexity, "can occupy a court's docket for years on end, depleting the resources of parties and taxpayers while rendering meaningful relief increasingly elusive" . . . . Second, litigation costs are particularly burdensome on a bankrupt estate given the financial instability of the estate.

<u>Munford v. Munford, Inc.</u> (<u>In re Munford, Inc.</u>), 97 F.3d 449, 455 (11th Cir. 1996) (quoting <u>Wald v. Wolfson (In re U.S. Oil & Gas Litig.</u>), 967 F.2d 489, 493 (11th Cir. 1992)).

16.      Bankruptcy Rule 9019 sets forth the standard for bankruptcy court approval of compromises of controversies, providing that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

17.      To approve a settlement under Bankruptcy Rule 9019, a bankruptcy court must determine that the settlement is supported by adequate consideration and that it is fair, equitable, and in the best interests of the debtor's estate. In doing so, bankruptcy courts consider a variety of factors, including (a) the probability of success in the litigation; (b) the difficulties associated with collection; (c) the complexity of the litigation and the attendant expense,

inconvenience and delay; and (d) the paramount interests of, and deference to the views of, the creditors.  See In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir.1990).

18.     The Debtors submit that the settlement is appropriate for approval upon a consideration of such factors.  The Debtors have analyzed the likelihood of success on the merits with respect to the reclamation claims of their reclamation vendors.  The Debtors' assessment has been reached with the advice of legal counsel, and has been made based on a fair determination of the issues involved in the potential litigations.  While the Debtors believe the probability of success is significant with respect to many of the factual and legal issues, all litigation has inherent risks, both known and unknown, and there can be no guarantee of success.

19.     The Debtors have received approximately 480 reclamation claims.  The issues relating to these claims are fact-intensive, to which there will likely be substantial dispute. Without the Reclamation/Trade Lien Program, and the option for all the trade vendors to participate in the program, the Debtors will likely be involved in hundreds of contested matters with numerous factual and legal issues in each contested matter.  For instance, absent a settlement for each reclamation vendor, the Debtors may need to litigate one or more of the following issues: (i) whether the reclamation vendor's goods delivered to the Debtors are or were subject to the DIP Lenders' prior perfected security interest, (ii) whether the Debtor that received the reclamation demand received the goods, (iii) whether the writing sent to the Debtors requested the return of the goods, or sufficiently identified the goods in a timely manner, (iv) whether the reclamation vendor shipped goods to the Debtors with knowledge of the Debtors' insolvency, (v) whether the reclamation claim was timely asserted, (vi) whether the goods of a reclamation vendor were consumed prior to the Debtors' receipt of a reclamation demand and, if yes, the amount of such consumption, (vii) whether the Debtors commingled the goods described

in the reclamation demand by the date the Debtors received the demand, and (viii) the

methodology to calculate setoffs.  In addition, the Debtors anticipate litigation with respect to

calculation of the reclamation window in connection with the determination of a vendor's

reclamation claim.

20.     The Debtors have also evaluated the costs and expenses associated with

several hundred potential contested matters.  Continued litigation would be time-consuming and

require the Debtors to incur further fees and costs of counsel and other professionals.  The

Debtors have also analyzed the non-monetary cost of litigating with their vendors.  The Debtors

are continuing to operate and manage their businesses and the goodwill that they have developed

over the years with their vendors is essential for the Debtors' business.  Litigating some or all of

the above issues with the reclamation vendors would neither foster good vendor relations, nor

entice vendors to provide favorable trade credit terms, thereby hurting the Debtors' cash flow.

The complexity, risks and costs of the litigation and the attendant expenses, inconveniences, and

delay for the Debtors outweighs the probability of success.

21.     The settlement is the product of extensive, arm's length, good faith

negotiations between the Debtors and the Vendors.  The Reclamation/Trade Lien Program is in

the best interests of the Debtors, their estates, and creditors because it (i) provides for a vendor

lien program pursuant to which the Debtors will receive favorable post-petition credit terms, (ii)

establishes procedures for the calculation and treatment of reclamation claims for Participating

Reclamation Vendors, thereby resolving important reclamation issues on an amicable basis, thus

fostering improved relations and minimizing disputes with the Debtor's trade vendors, consistent

with the Debtors' overall efforts to operate more efficiently, (iii) allows a vendor to opt into the

Reclamation/Trade Lien Program, and (iv) reduces the possibility protracted, expensive and uncertain litigation (including the possibility of one or more adverse judgments).

22.    Furthermore, under the Reclamation/Trade Lien Program, the following issues will not be litigated: (i) the "valueless" defense, (ii) the calculation of the reclamation window, (iii) the sufficiency of a reclamation claim, (iv) the determination when goods were received by the Debtors, (v) the rate of consumption, (vi) the treatment of the reclamation claims, and (vii) the methodology to calculate setoff.  As a result, the potential disputes between the parties will be narrowed, thus reducing the potential for litigation between the parties.

23.    Finally, entry into the Reclamation/Trade Lien Program is in the best interests of Winn-Dixie's trade vendors because (i) it resolves numerous potential reclamation issues on favorable terms to both the Participating Vendors and the Debtors, (ii) the Debtors will waive potential preferences arising from payments made before February 10, 2005, and (iii) the Debtors will assert potential preference claims by July 15, 2005 with respect to payments made during the period February 10, 2005 through February 21, 2005, so the reclamation vendors will not be left to guess whether the Debtors intend to assert preference claims at a later date.

24.    The settlement represents the most cost effective and efficient solution to resolve the reclamation claims asserted against the Debtors.  Accordingly, the Debtors believe that the settlement is appropriate in light of the relevant factors and should be approved.

### Notice

25.    Notice of this Motion has been provided to (a) the reclamation vendors and/or their counsel, (b) counsel to the United States Trustee, (c) counsel for the Debtors' post-petition secured lenders, (d) counsel for the Creditors Committee, and (e) the other parties in interest named on the Master Service List maintained in these cases.  No other or further notice need be given.

26.      WHEREFORE, based upon the foregoing, the Debtors respectfully request

that the Court (i) enter an order substantially in the form attached as Exhibit B, approving the

Stipulation and authorizing the settlement set forth in the Stipulation and (ii) grant such other and

further relief as the Court deems just and proper.

Dated:  July 1, 2005

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By    /s/ D. J. Baker                              By    /s/ Stephen D. Busey
        D. J. Baker                                        Stephen D. Busey
        Sally McDonald Henry                              James H. Post
        Rosalie Walker Gray                               Cynthia C. Jackson,
                                                          Florida Bar Number 498882
Four Times Square                              225 Water Street, Suite 1800
New York, New York 10036                       Jacksonville, Florida  32202
(212) 735-3000                                 (904) 359-7700
(212) 735-2000 (facsimile)                     (904) 359-7708 (facsimile)

Co-Attorneys for Debtors                       Co-Attorneys for Debtors

539075.08-New York Server 6A - MSW