**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

**MOTION FOR AN ORDER (A) AUTHORIZING THE
DEBTORS TO RETAIN LIQUIDATING AGENT AND
APPROVING AGENCY AGREEMENT, (B) AUTHORIZING THE
DEBTORS TO SELL MERCHANDISE FREE AND CLEAR OF
LIENS THROUGH STORE CLOSING SALES IN ACCORDANCE WITH
ATTACHED GUIDELINES AND (C) GRANTING RELATED RELIEF**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), move the Court for entry of an order pursuant to 11 U.S.C. §§ 105, 327, 363, and 1146 and Rules 2014 and 6004, of the Federal Rules of Bankruptcy Procedure (i) authorizing the Debtors to employ and retain Hilco Merchant Resources, LLC ("Hilco") and Gordon Brothers Retail Partners, LLC ("Gordon Brothers" and together with Hilco, the "Agent") as liquidating agent pursuant to the agreement attached as Exhibit A (the "Agency Agreement"), (ii) authorizing the Debtors to discontinue operations at those stores the Debtors sell to purchasers who do not purchase the existing inventory, equipment and supplies (collectively, the "Merchandise") and at those stores the Debtors are ultimately unable to sell and intend to close,

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are Debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

(iii) authorizing the Debtors to sell the Merchandise, and the furniture, fixtures and equipment (the "FF&E") at the closing stores free and clear of liens, claims and interests and pursuant to the guidelines attached as Exhibit 8.1 to the Agency Agreement (the "Guidelines"), and (iv) granting related relief (the "Motion"). In support of the Motion, the Debtors respectfully represent:

**Background**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner. On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") to serve in these cases pursuant to Bankruptcy Code Sections 1102 and 1103.

3. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors

currently operate more than 900 stores in the United States with nearly 79,000 employees. Substantially all of the Debtors' store locations are leased rather than owned.

4. Prior to the Petition Date, the Debtors and their financial advisors began a comprehensive analysis of the Debtors' businesses to determine how best to maximize their value and to compete in today's marketplace. In connection with this analysis, the Debtors announced a series of actions designed to improve their competitive position, which the Debtors refer to as their Strategic Plan. The Strategic Plan includes an effort to reduce the Debtors' annual expenses by over $100 million.

5. Also in connection with the Strategic Plan, the Debtors and their financial advisors analyzed the various markets and determined that some markets are noncore, have limited business opportunities and are unprofitable in the aggregate. Prior to the Petition Date, the Debtors sold or closed 111 stores in these noncore areas. The Debtors also sold or closed 45 unprofitable stores within their core market areas.

6. The Debtors and their financial advisors have identified 326 additional stores that are either in noncore locations or are, nevertheless, unprofitable (collectively, the "Targeted Stores") A schedule identifying the Targeted Stores is attached as Exhibit B. As of June 30, 2005, the Debtors have marketed the Targeted Stores to both grocers and nongrocers. To date, the Debtors have received bids on seventy-nine of the Targeted Stores from other grocers (the "Enterprise Bidders").

7. In accordance with the bidding procedures approved by the Court by order dated June 21, 2005, the Debtors will hold an auction of the Targeted Stores to Enterprise Bidders on July 18 and 19, 2005. At the conclusion of the Auction, the Debtors will determine which, if any, bid from an Enterprise Bidder for each of the Targeted Stores is the highest or best bid (the

"Successful Bid"). The Debtors will make this determination after consultation with the financial and legal advisors to the Creditors' Committee (the "Committee's Professionals") and Wachovia Bank, National Association, in its capacity as administrative agent (the "DIP Lender" and collectively, with its professionals, the "DIP Lender Agent Representatives"). The Debtors will continue to market Targeted Stores that are not subject to a Successful Bid to nongrocers and the Debtors anticipate holding another Auction for these remaining Targeted Stores in August, 2005. To the extent the Debtors are ultimately unable to sell a Targeted Store, the Debtors will close the store and ultimately reject the related lease.

8. The Debtors anticipate that many of the Enterprise Bidders will purchase the existing Merchandise and FFF&E at the Targeted Stores. To the extent, however, that (i) a purchaser does not want to purchase the Merchandise and FF&E from a particular Targeted Store or (ii) the Debtors are unable to sell a Targeted Store to a grocer, the Debtors will need to promptly sell the Merchandise and FF&E at each of these remaining Targeted Stores (collectively, the "Closing Stores") to obtain value for these estates. In addition, the Debtors need to promptly surrender the Closing Store to the purchaser or, upon rejection of the lease, to the applicable landlord, as soon as feasible. Any unnecessary delay may cause the Debtors to incur additional administrative obligations in the form of rent and other overhead, without providing any corresponding benefit to the detriment of all creditors.

**Relief Requested**

9. By this Motion, the Debtors seek authority (i) pursuant to section 327(e) of the Bankruptcy Code, to employ and retain the Agent to assist the Debtors in liquidating the Merchandise at the Closing Stores, (ii) approve the Agency Agreement and, pursuant to section

363 of the Bankruptcy Code, authorize the Debtors and the Agent to take all actions contemplated by the Agreement, (iii) discontinue operations at the Closing Stores (other than to sell the Merchandise and FF&E), and (iv) sell the Merchandise and FF&E at the Closing Stores free and clear of liens, claims and interests and pursuant to the Guidelines.

10.    The Agency Agreement provides the Debtors with the opportunity to dispose of the Merchandise and FF&E and to maximize the sale proceeds. The following is a summary of the material terms of the Agency Agreement: [2]

>    A.    <u>Agent's Fee</u>.  As compensation for the services being provided, the Agent will be entitled to a fee (the "Agent's Fee") in an amount equal to (i) $4,500 per store, plus (ii) 10% of the amount of net proceeds (gross proceeds less expenses) of sale between 43.25% of retail value of Merchandise sold and 44.25% of retail value of Merchandise sold; plus (iii) 20% of the amount of net proceeds of sale between 44.25 % of retail value of Merchandise sold and 45.25% of retail value of Merchandise sold; plus (iv) 30% of the amount of the net proceeds of sale exceeding 45.25% of retail value of Merchandise sold.

>    B.    <u>FF&E Fee</u>.  The Debtors may elect, on a store-by-store basis, to have the Agent dispose of the FF&E at the Closing Stores. If the Debtors make such an election for a Closing Store, the fee payable to the Agent with respect to the FF&E will be (i) $2,250 per Closing Store, plus (ii) 15% of the amount by which the net proceeds of sale of the FF&E (gross proceeds less expenses) exceed $50,000 per store.

>    C.    <u>Control of Proceeds</u>.  All cash proceeds from the sale will be handled in accordance with the Debtors' normal cash management procedures.

>    D.    <u>Final Reconciliation</u>.  Within sixty days after the end of the sale, the Agent and the Debtors will jointly prepare a final reconciliation including, without limitation, a summary of Proceeds, taxes, expenses, and any other accountings required (the "Final Reconciliation"). Within five days of completion of the Final Reconciliation, (i) any undisputed and unpaid expenses will be paid by the Debtors and (ii) any portion of the Agent's fee related to a Closing Store for which there is no disputed amount will be paid by the Debtors to the Agent.

>    E.    <u>Expenses of the Sale</u>.  All expenses of the sale will be borne by the Debtors consistent with an expense budget to be agreed to between the Agent and the Debtors (the "Expense Budget"). To the extent that the actual expenses exceed the

---

[2] This summary of the Agency Agreement is provided as a convenience only. To the extent that this summary differs in any way from the terms of the Agency Agreement, the terms of the Agency Agreement and related documents control.

budgeted amount set forth on the Expense Budget, the Agent will pay such excess (unless the expenses exceed the budget because budget information supplied by the Debtors was incorrect or because the Debtors breached the Agency Agreement, in which case the Debtors will be responsible for the excess).

  F. <u>Merchandise Subject to this Agreement</u>.  The Merchandise includes all finished goods inventory that is owned by the Debtors and located in the particular Closing Store on the sale commencement date, and all "Replenishment Goods" brought into the Closing Store after the sale commencement date.  The Merchandise also includes such additional inventory of the Debtors that is not located in the Closing Store on the sale commencement date but which the Debtors and the Agent mutually agree to include in the sale on terms and conditions acceptable to the Debtors and the Agent.  The Merchandise does not include:  (i) goods which belong to sublessees, licensees, or concessionaires of the Debtors; (ii) goods held by the Debtors on memo, on consignment, or as bailee; (iii) pharmaceutical goods in the pharmacy departments; provided, however, that the Debtors have the right (but not the obligation) to continue to operate the pharmacy department at the stores and retain all proceeds relating to such sales; provided further, however, that all direct costs and expenses associated or incurred in connection with the operation of the pharmacy departments at the stores will be at the Debtors sole expense; (iv) goods or operations relating to ATM machines, "Coin Star" machines, and "bale" salvage at the stores; provided, however, that the Debtors have the right (but not the obligation) to continue such operations at the stores and retain all proceeds relating to such sales; provided further, however, that all direct costs and expenses associated or incurred in connection with such operations relating to ATM machines at the stores will be at the Debtors' sole expense; (v) FF&E improvements to real property which are located in the stores; and (vi) spoiled/unsaleable merchandise.

  G. <u>Vacating the Stores</u>.  The sales under the Agency Agreement will commence immediately after entry of an order of this Court approving the Agreement and continue until September 15, 2005 (subject to extension or acceleration at each Store with the mutual agreement of the Debtors and the Agent); provided that the sale of the FF&E at each store will continue until September 30, 2005 (subject to extension or acceleration at each Store with the mutual agreement of the Debtors and the Agent).  The Agent will provide the Debtors with not less than seven days' advance written notice of its intention to vacate any store.  On the sale termination date, the Agent must vacate and leave the stores in "broom clean" condition (ordinary wear and tear excepted).  All assets of the Debtors used by the Agent in the conduct of the sale must be returned by the Agent to the Debtors.

11. By this Motion, the Debtors seek authority to sell the Merchandise and FF&E through the Agent under the Agency Agreement in accordance with the Guidelines. The Guidelines adequately balance the rights of landlords to maintain the integrity of their properties with the Debtors' obligation to maximize recoveries for their estates and creditors.

497916.7    6

12. The Guidelines permit the Debtors and the Agent to liquidate the Merchandise at the Closing Stores without complying with any applicable state and local statutes, rules or ordinances governing liquidation or "going-out-of-business" sales, including laws governing (i) bulk sales, (ii) advertising, (iii) licensing requirements and procedures, (iv) waiting periods or time limits, and (v) inventory increases or the transfer of Merchandise between Targeted Stores (collectively, the "Local Laws"). Notwithstanding the foregoing, however, the Debtors and the Agent will comply with all state and local public health and safety laws (the "Safety Guidelines Laws"), as well as tax, labor, employment, environmental laws (collectively, the "General Laws"), to the extent applicable.

13. The Guidelines also permit the Debtors and the Agent to liquidate the Merchandise and FF&E at the Closing Stores without complying with any provisions of a lease, contract or other agreement of the Debtors that would otherwise prevent or impair the Debtors' conduct of the sales, including any "going dark provisions."

14. The Debtors retention of the Agent under the Agency Agreement and prompt closing and sale of the Merchandise pursuant to the Guidelines and closing of the Closing Stores is in the best interest of the Debtors' respective estates and creditors.

**Applicable Authority**

A. **The Debtors' Decision to Retain an Agent, Cease Operations and Sell the Merchandise at the Closing Stores is Supported by a Sound Business Reason**

15. The Debtors seek authority, pursuant to section 327(e) of the Bankruptcy Code, to employ and retain the Agent to assist the Debtors in liquidating the Merchandise and FF&E at the Closing Stores. The Debtors believe that the results of the Store Closing Sales will be substantially enhanced by the Agent and that it would be more costly for the Debtors to

undertake the Store Closing Sales without the Agent. The Agency Agreement was negotiated at arms-length and in good faith by the Debtors and the Agent. The terms of the Agency Agreement are fair and reasonable, and are consistent with those charged by liquidators in major liquidation sales of this nature. The Debtors have confidence in the ability of the Agent to maximize the value of the Merchandise and FF&E.

16. Bankruptcy Code Section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code Section 1107 (a) gives the Debtors, as debtors-in-possession, the same authority as a trustee to use, sell or lease property under Section 363(b)(1).

17. Courts have held that transactions under Section 363(b)(1) should be approved when they are supported by a sound business reason. *See In re BDK Health Mgmt., Inc.,* Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a Section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (holding that a debtor in possession can sell assets of his estate outside the ordinary course of business if he has an articulated business justification); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063,

1071 (2d Cir. 1983) (holding that the business judgment test is the proper standard to apply when considering a debtor's motion to sell assets outside the ordinary course of business); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (holding that a trustee must show that "there is a sound business purpose for conducting the sale prior to confirmation of a plan"); *In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) ("[T]he Trustee has the burden to establish sound business reasons for the terms of the proposed sale").

18. If a sound business reason exists, the law vests a debtor's decision to use property out of the ordinary course of business with a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Official Comm. Of Subordinated Bondholders v. Integrated Resources, Inc. (*In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Accordingly, parties challenging a debtor's decision must make a showing of "bad faith, self-interest, or gross negligence." *Id.*

19. The Debtors have a sound business reason to retain the Agent under the Agency Agreement and to sell the Merchandise and FF&E at these Closing Stores under the Guidelines. The Debtors' sale of the Merchandise will bring substantial value to the estate and the Merchandise and FF&E is not necessary because it is located at stores the Debtors will no longer operate. The Debtors' prompt liquidation of the Merchandise and FF&E and surrender of the Closing Stores to the purchaser or, if applicable, the landlord, will avoid unnecessary administrative expenses.

20. Liquidation sales are a routine part of chapter 11 cases involving retail debtors. *See, e.g., In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (holding that "going-out-of-business" sales are an important part of "overriding federal policy requiring Debtor to maximize estate assets"). Bankruptcy courts have granted similar relief in other cases involving retailers. *See, e.g., In re Breuners Home Furnishings Corp.*, Case No. 04-12030 (Bankr. D. Del. July 30, 2004); *In re Mansour's, Inc.*, Case No. 04-10979 (Bankr. N.D. Ga. Apr. 20, 2004); *In re Heilig-Meyers Co.*, Case No. 00-34533 (Bankr. E.D. Va. Sept. 13, 2000); *In re London Fog, Inc.*, Case No. 99-3446 (Bankr. D. Del. Oct 7, 1999); *In re Starter Corp.*, Case No. 99-906 (Bankr. D. Del. July 2, 1999); *In re WSR Corp.*, Case No. 98-1241 (Bankr. D. Del. Oct. 28, 1998); *In re Montgomery Ward Holding Corp.*, Case No 97-1409 (Bankr. D. Del. Nov 7, 1997).

**B.     The Debtors Should Be Permitted to Sell Merchandise Free and Clear of All Liens and Encumbrances**

21. The Debtors request that the sale and transfer of the Merchandise and FF&E pursuant to the Guidelines and this Motion be approved free and clear of liens, interest and encumbrances. This relief is consistent with the provisions of 11 U.S.C. § 363(f).

22. Pursuant to Section 363(f) of the Bankruptcy Code, after notice and a hearing, a debtor may sell property of the estate free and clear of all liens, interests and encumbrances. *See In re Parrish*, 171 B.R. 138, 140 (Bankr. M.D. Fla. 1994) (noting that compliance with the requirements of Section 363(f) is a prerequisite to a sale free and clear of liens).

23. The Debtors believe that there are no interests or claims in the Merchandise and FF&E other than the senior liens and superpriority administrative claims of the DIP Lender, which will attach to the net proceeds received from the sale of the Merchandise and FF&E. The

interests of the DIP Lender will be satisfied because the Debtors will cause all net proceeds of the sales to be paid to the DIP Lenders to the extent required in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Lien Bases and Modify the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-Petition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order). Notwithstanding the foregoing, the liens and claims of the DIP Lender (and any other liens encumbering the Merchandise or FF&E) will not attach to the proceeds of sale that constitute the Agent's Fee or FF&E Fee under the Agency Agreement.

C.   **Leasehold Provisions Restricting Liquidation Sales are Unenforceable in Chapter 11**

24.   A number of the leases governing the Closing Stores contain provisions restricting or prohibiting the Debtors from conducting a going-out-of-business sale, liquidations, or similar sales. These provisions are unenforceable in chapter 11 because they impermissibly restrain the debtors' ability to maximize the value of its assets under 11 U.S.C. § 363. *See, e.g., In re Tobago Bay Trading Co.*, 112 B.R. 463, 467 (Bankr. N.D. Ga. 1990) (finding that the debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting the debtor from liquidating its inventory were enforced); *In re R.H. Macy & Co., Inc.*, 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994) (holding that restrictive lease provisions are unenforceable in a chapter 11 case when the debtor sought to conduct going-out-of-business sale); *In re Ames Dep't Stores Inc.*, 136 B.R. at 359 ("[T]o enforce the anti-[going-out-of-

business] sale clause of the Lease would contravene overriding federal policy requiring the Debtor to maximize estate assets by imposing additional constraints never envisioned by Congress."); *In re Libson Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding that restrictive lease provisions are unenforceable in chapter 11 cases when the debtor sought to conduct going-out-of-business sale).

25.   Bankruptcy courts have permitted debtors to bypass such restrictive lease provisions in numerous chapter 11 cases.  *See, e.g., In re Breuners Home Furnishings Corp.*, Case No. 04-12030 (Bankr. D. Del. July 30, 2004); *In re WSR Corp.*, Case No. 98-1241 (Bankr. D. Del. Oct. 28, 1998); *In re Montgomery Ward Holding Corp.*, Case No 97-1409 (Bankr. D. Del. Nov 7, 1997); *In re Edison Bros. Stores, Inc.*, Case No. 95-1354 (Bankr. D. Del. June 25, 1997); *In re County Seat Inc.*, Case No. 96-1637 (Bankr. D. Del. Nov. 14, 1996); *In re Pic 'N Pay Stores Inc.*, Case No. 96-182 (Bankr. D. Del March 29, 1996).

### D.   Waiver of any State or Local Laws or Ordinances Restricting the Sales

26.   Each of the states in which the Debtors intend to sell the Merchandise and FF&E have Local Laws restricting the conduct of liquidation sales.  Each of these states also, however, has statutes and regulations which generally except going-out-of-business sales which are authorized by bankruptcy court order from the Local Laws.  *See*, Ala. Code 1975 §8-13-23; Fl. St. §559.25; Ga. St. §10-1-396; La. R.S. 51.32; and N.C.G.S.A. §66-82.  To the extent these sales are not already excepted from the Local Laws, the Debtors seek authority to conduct the sales without complying with the Local Laws; provided, however, that the Debtors, and their agents, will continue to be bound by and comply with Safety Laws and General Laws, to the extent applicable.

27. As a general matter, under 28 U.S.C. § 959(b), a debtor-in-possession must "manage and operate the property . . . according to the requirements of the valid laws of the state in which such property is situated." The Eleventh Circuit and other courts, however, have held that a debtor-in-possession liquidating estate property does not "manage and operate" the property for purposes of Section 959(b). *See In re N.P. Mining Co., Inc.*, 963 F.2d 1449, 1460-61 (11th Cir. 1992) (holding that Section 959(b) does not apply when a debtor-in-possession is liquidating property as opposed to operating a business); State of *Missouri v. U.S. Bankr. Court for E.D. of Arkansas*, 647 F.2d 768, 778 n.18 (8th Cir. 1981) (same); Missouri Dep't. of Natural Resources v. Valley Steel Prods. Co., Inc. (*In re Valley Steel Prods. Co., Inc.)*, 157 B.R. 442, 447-48 (Bankr. E.D. Mo. 1993) (same); *In re Corona Plastics, Inc.*, 99 B.R. 231, 235-36 (Bankr. D.N.J. 1989) (same). Because the Debtors seek to sell the Merchandise and FF&E and cease operations at the Closing Stores, Section 959(b) does not require compliance with the Local Laws.

28. In any event, federal bankruptcy law preempts state and local laws which conflict with the bankruptcy code or its underlying policies. *See In re Shenango Group, Inc.*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("[T]rustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code . . . [A] state statute cannot place burdens on them where the result would contradict the priorities established by the federal bankruptcy code."), aff'd 112 F.3d 633 (3d Cir. 1997). Preemption is appropriate when, as here, the Local Laws at issue concern economic regulation rather than the health and safety regulations. *See Baker & Drake, Inc. v. Public Svc. Comm. Of Nev. (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1353 (9th Cir. 1994) (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety."); *see also Walker v. Maury County ( In re Scott Housing Sys., Inc.)*, 91 B.R. 190, 196-97

(Bankr. S.D. Ga. 1988) (holding that automatic stay under Section 362 is broad and preempts state law except for those laws designed to protect public health and safety).

29. If applied, the Local Laws will undermine the fundamental purpose of 11 U.S.C. § 363(b) by placing constraints on the Debtors' ability to marshal and maximize estate assets for the benefit of their respective creditors. The Debtors request that the Court waive any Local Laws requiring creditor notification because creditors and lienholders are protected by the notice provisions of the federal bankruptcy laws. The Debtors further request that the Court prohibit any federal, state, or local governmental agency or entity from preventing or interfering with the proposed liquidation sales. *See State of Missouri v. U.S. Bankr. Court for E.D. of Arkansas*, 647 F.2d at 776 (holding that an attempt to enforce state regulation governing liquidation of grain warehouses directly conflicted with bankruptcy court's control over property of the estate and thus violated the automatic stay).

30. The Debtors' requested waiver of the Local Laws is narrowly tailored to facilitate the successful consummation of the Merchandise and FF&E sales. The Debtors are not seeking a waiver of all state and local laws, but only those that apply specifically to liquidation or going-out-of-business sales. The Debtors and their agents will comply with all Safety Laws and General Laws.

31. Under these circumstances, bankruptcy courts have permitted debtors to bypass such Local Laws in numerous chapter 11 cases. *See, e.g., In re Breuners Home Furnishings Corp.*, Case No. 04-12030 (Bankr. D. Del. July 30, 2004); *In re WSR Corp.*, Case No. 98-1241 (Bankr. D. Del. Oct. 28, 1998); *In re Montgomery Ward Holding Corp.*, Case No 97-1409 (Bankr. D. Del. Nov 7, 1997); *In re Edison Bros. Stores, Inc.*, Case No. 95-1354 (Bankr. D. Del. June 25, 1997).

**E.      Hilco and Gordon Brothers are Disinterested and Hold No Adverse Interest**

32.     To the best of the Debtors' knowledge, information and belief, other than as set forth in the Rule 2014 affidavits to be separately filed by Hilco and Gordon Brothers in these cases, neither Hilco nor Gordon Brothers represents or holds any interest adverse to the Debtors or the Debtors' estates with respect to the matters for which Hilco and Gordon Brothers are to be retained in these cases.

### Notice

33.     Notice of this Motion has been given to: (a) counsel to the Creditor's Committee; (b) counsel to the DIP Lender; (c) all entities known to assert a lien, claim or interest in or on the Merchandise; (d) all non-debtor parties to the leases of the Targeted Stores; (e) the Office of the United States Trustee; (f) the Attorneys General for the States of Alabama, Florida, Georgia, Tennessee, North Carolina, South Carolina, Louisiana and Tennessee; and (g) all entities having requested notices pursuant to Rule 2002; and (h) all parties on the Master Service List.

### Conclusion

For the foregoing reasons, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit C: (a) authorizing the Debtors to retain the Agent pursuant to Bankruptcy section 327 pursuant to the Agency Agreement and to take all actions reasonably necessary to sell the Merchandise and FF&E and cease other operations at the Closing Stores; (b) authorizing the Debtors (through the Agent) to liquidate the Merchandise free

and clear of liens, claims and interests; (c) authorizing the Debtors to do so under the Guidelines and without complying with lease provisions and local regulations which would otherwise impair such sales; and (d) granting such other and further relief as the Court deems just and proper.

Dated: July 1, 2005

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By   */s/ D. J. Baker*<br>    D. J. Baker<br>    Sally McDonald Henry<br>    Rosalie Gray<br>    Eric M. Davis | By   */s/ Cynthia C. Jackson*<br>    Stephen D. Busey<br>    James H. Post<br>    Cynthia C. Jackson. (F.B.N. 498882)<br>    Eric N. McKay |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(212) 735-2000 (facsimile)<br>djbaker@skadden.com | 225 Water Street, Suite 1800<br>Jacksonville, Florida  32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>cjackson@smithhulsey.com |
| Co-Attorneys for Debtors | Co-Attorneys for Debtors |