# EXHIBIT A

## AGENCY AGREEMENT

This Agency Agreement (the "Agreement") is made as of this 30th day of June, 2005, by and between a joint venture composed of Hilco Merchant Resources, LLC, and Gordon Brothers Retail Partners, LLC (the "Agent"), and Winn-Dixie Stores, Inc. (the "Merchant"), a Florida corporation.

### RECITALS

WHEREAS, Merchant, together with certain of its affiliates and subsidiaries, is a debtor and debtor in possession with a Chapter 11 case pending in the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Court").

WHEREAS, Merchant desires that Agent act as Merchant's exclusive agent for the purpose of (i) selling all of the Merchandise (as hereinafter defined) located in 240 of Merchant's retail food stores or such larger or smaller number of Stores from time to time mutually agreed upon by Agent and Merchant, which stores are identified on Exhibit "1" attached hereto and made part hereof (each a "Store" and collectively, the "Stores") during the Sale Term, by conducting a "store closing" or similar theme sale at each of the Stores; and (ii) at Merchant's option, selling or otherwise disposing of the furniture, fixtures, and equipment located at any Stores and any distribution centers designated by Merchant (the "FF&E") and other Excluded Goods designated by Merchant, subject to the terms and conditions set forth herein (the matters described in clauses (i) and (ii) hereof are collectively referred to as the "Sale");

WHEREAS, Agent is willing to serve as Merchant's exclusive agent to conduct the Sale and, to the extent Merchant exercises the option pursuant to Section 14 hereof, the disposition of the FF&E in accordance with the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Agent and Merchant hereby agree as follows:

Section 1.

1.1     Defined Terms.  Capitalized terms as used in this Agreement will have the following meanings when used herein.

"Accounting Firm" means a nationally recognized accounting firm mutually acceptable to Merchant and Agent.

"Agency Documents" means this Agreement and each other document and agreement contemplated hereby and executed and delivered in connection herewith.

"Agent" has the meaning set forth in the Preamble.

# EXHIBIT A

"<u>Agent Claim</u>" means any such claim, demand, penalty, loss, liability or damage that arises from the acts or omissions of Agent, or its supervisors, agents, independent contractors, employees located at any of the Stores, or the Merchant's Store-level employees being supervised by Agent in connection with or related to the Sales.

"<u>Agent's Fee</u>" has the meaning set forth in Section 3.1.

"<u>Agent Indemnified Parties</u>" means Agent and its officers, directors, employees, agents and independent contractors.

"<u>Agreement</u>" has the meaning set forth in the Preamble.

"<u>Approval Order</u>" means the order entered by the Bankruptcy Court (i) approving this Agreement, (ii) authorizing the conduct of the Sale pursuant to the terms of this Agreement (A) notwithstanding any state or local law or regulation otherwise governing or purporting to govern the licensing and conduct of the Sale (other than laws related to public health and safety and other similar items), (B) notwithstanding any provision in any lease, mortgage, or other occupancy agreement that purports to limit, govern or restrict the conduct of the Sale, and (C) without the necessity of obtaining any third-party consents, and (iii) which Approval Order shall not have been reversed, vacated or stayed.

"<u>Bankruptcy Court</u>" has the meaning set forth in the Recitals.

"<u>Event of Default</u>" means Merchant's or Agent's failure to perform any of its respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting party.

"<u>Excluded Goods</u>" means Spoiled/Unsaleable Merchandise and any other goods not included as "Merchandise" in the Agreement including, but not limited to Merchant Consignment Goods.

"<u>Expenses</u>" means the cost of Replenishment Goods and all "reasonable," out of pocket, documented and customary expenses incurred in connection with the conduct of the Sale and the operation of the Stores during the Sale Term, consistent with and subject to the categories and aggregate amount set forth in the Expense Budget, <u>provided</u>, that Occupancy Expenses shall be limited on a per diem per Store basis during the Sale Term at each Store.

"<u>Expense Budget</u>" means an expense budget annexed hereto as <u>Exhibit "A"</u> which sets forth all Expenses related to the Sale and the operation of the Stores during the Sale Term to be agreed to between Agent and Merchant in writing prior to the commencement of the Sale, together with any amended, modification or supplemented Expense Budget in form and substance satisfactory to Merchant and Agent.

"<u>Final Reconciliation</u>" means a final reconciliation of the Sale including, without limitation, a summary of Proceeds, taxes, Expenses, and any other accountings required

# EXHIBIT A

hereunder, prepared jointly by Agent and Merchant within sixty (60) days after the Sale Termination Date.

"FF&E" has the meaning set forth in the Preamble.

"FF&E Election" means, with respect to FF&E, an option exercisable solely by Merchant in writing on an individual Store-by-Store basis within five (5) days after the Sale Commencement Date, to require Agent to sell the FF&E in any such Store(s).

"FF&E Expense Budget" means an additional expense budget for FF&E-related sale expenses to be mutually agreed upon by Merchant and Agent.

"FF&E Fee" means a commission equal to (a) $2,250 per Store; plus (b) 15% of the amount of the Net FF&E Proceeds in excess of the Minimum FF&E Threshold.

"FF&E Sale Termination Date" means September 30, 2005, subject to extension or acceleration at each Store in accordance with Section 6.1 of this Agreement.

"Interim Reconciliation" has the meaning set forth in Section 8.6.

"Manufacturers Coupons" means manufacturers' coupons and rebates and vendor product allowances.

"Merchandise" has the meaning set forth in Section 5.1.

"Merchant" has the meaning set forth in the Preamble.

"Merchant Consignment Goods" means those goods located in any of the Stores which are not included in Merchandise hereunder.

"Minimum FF&E Threshold" means the amount of Net FF&E Proceeds from the sale of FF&E which must be generated before clause (b) of the FF&E Fee is applicable and is equal to $50,000 per Store.

"Minimum Threshold" means the amount of Net Proceeds which must be generated before clause (b) of the Agent's Fee is applicable and is equal in amount to 43.25% of the Retail Value of the Merchandise.

"Net FF&E Proceeds" means the gross proceeds from the sale of FF&E, including, without limitation, any buyer's premium, less the expenses of the sale of the FF&E (other than Occupancy Expenses).

"Net Proceeds" means the aggregate Proceeds less Expenses. In no event shall cash on hand at the Stores on the Sale Commencement Date constitute Proceeds for purposes of calculating Net Proceeds.

# EXHIBIT A

"Occupancy Expenses" means base rent, percentage rent, HVAC, utilities, CAM, real estate and use taxes, merchant's association dues, and building insurance relating to the Stores on Exhibit B, which shall be mutually agreed to by Merchant and Agent.

"Proceeds" has the meaning set forth in Section 7 of the Agreement.

"Remaining Merchandise" means all unsold Merchandise remaining, if any, in the Stores at the Sale Termination Date.

"Replenishment Goods" means certain inventory (i) replenished in the ordinary course (e.g., perishables) including, without limitation, meat, eggs, milk, yogurt, bread, baked goods, deli, ready-to-serve foods, and produce, and DSD (direct store delivery) goods mutually agreed by Merchant and Agent to be Replenishment Goods; and (ii) other items of inventory (e.g., private label goods, bailment goods) mutually agreed by Merchant and Agent to be Replenishment Goods.

"Retail Value" means for all Merchandise, the gross margin retail or, for each item of Merchandise, the "scan down" retail price of such item of Merchandise.

"Sale" has the meaning set forth in the Recitals.

"Sale Commencement Date" means immediately after the entry of the Approval Order, but in no event later than July 29, 2005.

"Sale Guidelines" means the Sale guidelines annexed hereto as Exhibit 8.1.

"Sale Term" means the period from the Sale Commencement Date to the Sale Termination Date.

"Sale Termination Date" means September 15, 2005, subject to extension or acceleration at each Store in accordance with Section 6.1 of this Agreement.

"Sales Taxes" means all sales, excise, gross receipts, and other taxes attributable to sales of Merchandise as indicated on Merchant's point of sale equipment (other than taxes on income) payable to any taxing authority having jurisdiction.

"Spoiled/Unsaleable Merchandise" means spoiled perishables and produce Inventory that would not be bought by a customer in the ordinary course, such as opened bottles or cans, near-dated or expired or out-of date goods, or near-dated or out-of-date groceries, meat, eggs, milk, yogurt, bread, baked goods, deli, ready-to-serve foods, defrosted frozen goods, and produce.

"Store(s)" has the meaning set forth in the Recitals.

"Supervisors" means qualified supervisors to conduct the Sale and to manage the Sale process and dispose of the Merchandise from the Stores.

# EXHIBIT A

1.2     Exhibits.  The following non-exclusive list of Exhibits and Schedules annexed to this Agreement, as listed below, are an integral part of this Agreement:

| Exhibit | Description |
|---------|-------------|
| Exhibit A | Budget |
| Exhibit B | Occupancy Expenses |
| Exhibit 1 | Stores List |
| Exhibit 8.1 | Sale Guidelines |
| Exhibit 8.5 | Form of Daily Report |
| Exhibit 12.4 | Agent Insurance Policies |

1.3     Currency.  Unless otherwise specified, all references to monetary amounts refer to United States dollars.

Section 2.

2.1     Appointment of Agent.  Subject to the issuance of the Approval Order, Merchant hereby appoints Agent, and Agent hereby agrees to serve, as Merchant's exclusive agent for the limited purpose of conducting and overseeing the Sale in accordance with the terms and conditions of this Agreement.  Agent shall provide Merchant with the following services in accordance with the terms hereof:

(a)     Sell or otherwise dispose of the Merchandise, FF&E and other Excluded Goods from the Stores.

(b)     Provide Supervisors to conduct the Sale and to manage the Sale process and dispose of the Merchandise and other assets located at any of the Stores.

(c)     Recommend and implement Merchant-approved (i) point of purchase, point of sale, and external and internal advertising and signage necessary to effectively sell the Merchandise at the Stores in accordance with a "store closing" or other mutually agreeable theme (Agent shall deliver copies of all advertising materials for the Sale to Merchant which shall have the right, within three (3) business days of such delivery, to approve such materials (which approval shall not be unreasonably withheld or delayed); provided, however, that the failure of the Merchant to reasonably respond to any request for approval within three (3) business days shall be deemed to be approval of the subject materials), (ii) pricing and presentation of Merchandise, (iii) staffing levels for the Stores (including store employees), (iv) merchandise transfer strategies between and among the Stores, and (v) store operation practices (i.e., ongoing services and housekeeping).

(d)     Recommend and implement a Merchant-approved Agent's operating plan for the Sale, including, (i) projections for anticipated discount phasings, revenues and expenses to be incorporated into and made a part of the Expense Budget, (ii) advertising and promotions plan, (iii) supervision plan including, FF&E supervision and central office supervision, (iv) a DSD replenishment plan including, without limitation, any deviations in respect of anticipated phased discounts related to the DSD Merchandise, (v) an FF&E sales plan including, if applicable, anticipated revenues and expenses and occupancy requirements is attached hereto as

# EXHIBIT A

Schedule 3(a), and (vi) management of Merchandise levels prior to the Sale Commencement Date as mutually agreed by Merchant and Agent.

    (e)    Maintain focused and constant communication with Merchant's employees and managers to keep them abreast of strategy and timing, and maintain communication with landlords.

    (f)    Maintain integrity and value of Merchant's "brands" and corporate image throughout the Sale.

    (g)    Subject to the entry of the Approval Order, advise Merchant with respect to the legal requirements of effecting the "store closing" or other mutually agreeable theme in compliance with all federal, state, and local laws, rules, and regulations, including without limitation state and local permitting laws, to the extent (if at all) applicable following issuance of the Approval Order.

    (h)    Establish, monitor and provide oversight of and conduct accounting functions for the Sale, including, without limitation, evaluation of sales of Merchandise by category, sales reporting, mark-downs and discounts, expense monitoring and reporting and updating the Expense Budget by providing weekly comparisons of actual and projected information, sales tax compliance and retail services such as Western Union and lottery sales.

    (i)    Supervise each Store throughout the Sale Term such that the operation of each of the Stores is being properly maintained, including ongoing customer service and housekeeping activities.

    (j)    Recommend and implement Merchant-approved staffing levels for the Stores and appropriate bonus and/or incentive programs for store employees, which are all subject to approval by Merchant in its sole discretion.

    (k)    Develop and recommend to Merchant the use of transitional marketing materials in the Store locations to direct customers to Merchant's on-going stores in that market (if any).

    (l)    Provide recommendations and implement Merchant-approved for loss prevention initiatives.

    (m)    Perform such other related services deemed by the parties to be necessary or prudent to facilitate the Sale.

    (n)    if requested by Merchant, and upon terms and conditions set forth in Section 5.3 hereof, oversee and supervise the disposition of FF&E at the Stores;

    (o)    distribute and transfer Merchandise between Stores, including additional Merchandise from Merchant's distribution center(s) for disposition in the Sale, and in that connection providing those additional services described in Section 2.2 below.

# EXHIBIT A

Title to all Merchandise shall remain with Merchant at all times during the Sale Term until such Merchandise is sold by or on behalf of Merchant. All sales of Merchandise in the Stores shall be made on behalf of Merchant.

       2.2    In connection with the Services to be provided by Agent pursuant to Section 2.1(n) hereof with respect to the oversight of the distribution and transfer of Merchandise between and among the Stores and Merchant's distribution centers, Agent shall, to the extent necessary or appropriate in connection with the Sale or as requested by the Merchant, provide Merchant with the following services regarding the movement of Merchandise in and between the Stores and Merchant's distribution centers:

       (a)    establish a plan with respect to the identification, timing and routing of Merchandise to be moved and provide projections for the anticipated Expenses related thereto, which Expense projections shall be incorporated into and made a part of the Expense Budget;

       (b)    recommend and implement Merchant-approved distribution of Merchandise from Merchant's distribution center(s) and/or the other Store locations to the Stores;

       (c)    coordinate the preparation of Merchandise to be moved;

       (d)    communicate with Merchant's store managers as to the method of identifying, packing, and shipping such Merchandise among the Stores; and

       (e)    recommend appropriate staffing levels to coordinate the movement of Merchandise and the identification, packing and shipping of such Merchandise, and the provision of Supervisors necessary to coordinate such services.

       2.3    In connection with the Sale, Agent shall directly retain and engage all Supervisors. The number and location of Supervisors to be retained and engaged by Agent with respect to the Sale shall be determined by Agent and Merchant. The Agent and Merchant shall confer periodically concerning the increase/decrease of the number of Supervisors needed during the course of the Sale Term, as the circumstances may dictate and shall agree on any such increases or decreases. The Supervisors are independent contractors engaged by Agent and are not and shall not be deemed to be employees or agents of Merchant in any manner whatsoever; nor do the Supervisors have any relationship with Merchant by virtue of this Agreement or otherwise which creates any liability or responsibility on behalf of Merchant for such Supervisors. During the Sale Term, each Supervisor shall perform Services during normal Store operating hours and for the period of time prior to the Store opening and subsequent to the Store closing, as required in connection with the Sale in Agent's discretion. In consideration of Agent's engagement of said Supervisors, Merchant agrees to pay/reimburse Agent the amount of Agent's fees/expenses for such supervisory services as set forth on Schedule 2.2 hereof, which amounts shall be in addition to the fees specified in Section 3 of this Agreement and shall be set forth in the Expense Budget; provided, however, that Merchant shall have no liability or obligation whatsoever to pay any such fees or expenses that exceed the budgeted amounts for such fees and expenses as set forth in the Expense Budget.

# EXHIBIT A

Section 3.    <u>Agent's Fee.</u>

3.1    <u>Payments to Merchant and Agent.</u>  As compensation for the services being provided pursuant to this agreement, Agent shall be entitled to a fee (the "<u>Agent's Fee</u>") in an amount equal to (a) $4,500 per Store plus (b)(i) 10% of the amount by which the Net Proceeds of the Sale are equal to or greater than 43.25% of the Retail Value of the Merchandise and less than 44.25% of the Retail Value of the Merchandise, (ii) 20% of the amount by which the Net Proceeds of the Sale are equal to or greater than 44.25% of the Retail Value of the Merchandise and less than 45.25% of the Retail Value of the Merchandise, or (iii) 30% of the amount by which the Net Proceeds of the Sale are equal to or greater than 45.25% of the Retail Value of the Merchandise.  The Agent's Fee shall be paid by Merchant following the final reconciliation described in Section 3.3 below.  All Remaining Merchandise shall remain the property of Merchant but Agent shall be responsible for the disposition of such Remaining Merchandise in accordance with the instructions of Merchant.

3.2    <u>Control of Proceeds; Calculation of Net Proceeds.</u>    All cash proceeds from the Sale shall be retained by Merchant and handled in accordance with Merchant's normal cash management procedures.  For purposes of calculating Net Proceeds and the aggregate Retail Value of the Merchandise, Agent and Merchant shall jointly keep (i) a strict count of gross register receipts less applicable sales taxes, and (ii) cash reports of sales within each Store.  Register receipts shall show for each item sold the retail price (as reflected on Merchant's books and records) for such item, and the markdown or other discount permitted to be granted by Agent in connection with such sale in accordance with the terms hereof.  All such records and reports shall be made available to Agent and Merchant during regular business hours upon reasonable notice.

3.3    <u>Final Reconciliation.</u>

(a)    Within sixty (60) days after the Sale Termination Date, Agent and Merchant shall jointly prepare a Final Reconciliation of the Sale.  Within five (5) days of completion of the Final Reconciliation, (i) any undisputed and unpaid Expenses shall be paid by Merchant, and (ii) any portion of the Agent's Fee related to a Store for which there is no disputed amount will be paid by Merchant to Agent.  Any (x) disputed amount(s) or (y) Agent's Fee related to any Store where there are disputed amounts shall not be paid until all disputes related to such Store have been resolved by agreement of the parties or as determined in the manner prescribed in Section 3.3(b) hereof.  During the Sale Term, and until all of the Agent's and Merchant's obligations under this Agreement have been satisfied, Merchant shall have full access to Agent's records with respect to Proceeds, taxes, Expenses, and other records related to the Sale to review and audit such records.

(b)    In the event that there is any dispute with respect to the Final Reconciliation, such dispute shall be promptly (and in no event later than the third business day following the request by either Merchant or Agent) submitted to the Accounting Firm for resolution.  The non-prevailing party shall bear the cost of the Accounting Firm.  The parties shall request that the Accounting Firm render a final and binding decision on the dispute within seven (7) business days following the submission of the dispute.

8

# EXHIBIT A

Section 4.    <u>Expenses</u>.

    4.1    <u>Expenses of the Sale</u>.

All Expenses of the Sale shall be borne by Merchant in accordance with the Expense Budget. To the extent the Expenses of the Sale exceed, in the aggregate, the amount set forth in the Expense Budget as a result of budget information supplied by Merchant being incorrect or Merchant otherwise breaching this Agreement, the amount in excess of the amounts in the Expense Budget shall not be Expenses hereunder and shall be paid by Merchant. To the extent the Expenses of the Sale, in the aggregate, exceed the amount set forth in the Expense Budget for any other reason, such amounts shall not be Expenses hereunder and shall be paid by Agent. A copy of the Expense Budget is attached hereto as <u>Exhibit "A"</u> and is incorporated herein by reference. Agent agrees that the actual Expenses incurred in connection with the Sale (to the extent such items are within the control of Agent) shall not exceed the aggregate amount of the Expense Budget unless Merchant and Agent mutually agree in writing. Without limiting the generality of the foregoing, during the Sale Term, Merchant shall provide Agent with (i) central administrative services necessary to administer the Sale, (ii) employees at the Stores (to the extent deemed necessary by Merchant to effect the Sale), and (iii) peaceful use and occupancy of, and reasonable access (including reasonable before- and after- hours access and normal utilities/phone service) to, the Stores for the purpose of preparing for, conducting, and completing the Sale as contemplated hereby. It is anticipated that Agent will advance funds for certain categories of reasonable supervision and advertising expenses identified in the Expense Budget, and Merchant shall reimburse Agent therefor (in connection with each Interim Reconciliation) upon presentation of invoices and statements for such expenses, which reimbursement shall be in addition to the Agent's Fee. In the event that Agent fails to timely vacate any of the Stores on or before September 30, 2005, Agent shall reimburse Merchant for any expenses and/or claims arising from or related to such Store after September 30, 2005.

    4.2    <u>Payment of Expenses</u>.

Except for Expenses in excess of the payable Expense Budget, which shall be payable by either Agent or Merchant as set forth in Section 4.1 of this Agreement, on the third business day following each Interim Reconciliation, all undisputed Expenses submitted by Agent for the preceding period based upon invoices and other documentation reasonably satisfactory to Merchant shall be paid by Merchant. To the extent Merchant disputes that Agent is entitled to payment of any portion of its Expenses, Merchant may withhold payment of the disputed amount and the parties shall work in good faith to resolve the dispute in the manner contemplated by Section 3.3(b).

Section 5.    <u>Merchandise</u>.

    5.1    <u>Merchandise Subject to this Agreement</u>.  (a)  For purposes of this Agreement, "<u>Merchandise</u>" shall mean all inventory that is owned by Merchant located in the Stores on the Sale Commencement Date and all Replenishment Goods brought into the Stores after the Sale Commencement Date in the ordinary course of business, including, but not limited

# EXHIBIT A

to, cigarettes and liquor, provided that Merchant has the requisite licenses and employees, and provided further that Agent complies with all applicable law(s), and up to $4.8 million (at cost) of slow-moving, obsolete inventory as set forth on Exhibit 5.1 attached hereto or any additional amount mutually agreed to by Agent and Merchant. Notwithstanding the foregoing, "Merchandise" shall not include: (1) goods which belong to sublessees, licensees, or concessionaires of Merchant; (2) goods held by Merchant on memo, on consignment, or as bailee; (3) pharmaceutical goods in the pharmacy departments; provided, however, that Merchant shall have the right (but not the obligation) to continue to operate the pharmacy department at the Stores and retain all proceeds relating to such sales; provided further, however, that all direct costs and expenses associated or incurred in connection with the operation of the pharmacy departments at the Stores shall be at Merchant's sole expense; (4) goods or operations relating to ATM machines, "Coin Star" machines, and "bale" salvage at the Stores; provided, however, that Merchant shall have the right (but not the obligation) to continue such operations at the Stores and retain all proceeds relating to such sales; provided further, however, that all direct costs and expenses associated or incurred in connection with such operations at the Stores shall be at Merchant's sole expense; (5) FF&E and improvements to real property which are located in the Stores; and (6) Spoiled/Unsaleable Merchandise. In addition to the foregoing, Merchandise shall also include such additional inventory of Merchant, including direct store delivery goods, that is not located in the Stores on the Sale Commencement Date but which Merchant and Agent mutually agree to include in the Sale no later than the first week after the Sale Term on terms and conditions acceptable to Merchant and Agent in accordance with the terms of this Agreement; it being the intent of the parties to maximize the opportunity incident to the Sale and, thus, to liquidate any obsolete or slow moving goods within the Merchant's chain while at the same time, setting the proper Minimum Threshold.

     5.2     <u>Excluded Goods</u>. Merchant shall retain all responsibility for Excluded Goods. Merchant and Agent shall agree whether to include any Excluded Goods in the Sale and, to the extent appropriate, sell these Excluded Goods at prices established by agreement between Merchant and Agent. The Agent and Merchant shall agree how to share proceeds of such Sales.

     5.3     <u>FF&E</u>.

     (a)     Merchant may, in its sole discretion, elect on a Store-by-Store basis to have Agent market and sell the FF&E by making one or more FF&E Elections. If Merchant makes one or more FF&E Elections, Agent shall market and sell the FF&E in the applicable Stores during the time period commencing on the Sale Commencement Date and concluding on the FF&E Sale Termination Date; provided, however, that Agent shall not sell any fixtures affixed to a wall or the floor unless (i) the proceeds to be received from the sale of such fixtures are substantially greater than the estimated cost of repairs to the relevant wall or floor; or (ii) the purchaser of such fixtures repairs the wall or floor in a commercially reasonable manner at its own expense. In the event Merchant exercises the FF&E Election with respect to the FF&E in any Store(s), Agent shall be entitled to receive a commission equal to the FF&E Fee, Merchant shall have the right to determine, in the exercise of its reasonable discretion, the sale price of such FF&E. Unless the applicable lessor agrees that FF&E may be abandoned at the applicable Store, all FF&E shall be removed from the Store(s) on or before the FF&E Sale Termination Date. Notwithstanding anything to the contrary herein, the Merchant reserves the right to solicit and simultaneously consider offers to dispose of such property separate and apart from the

# EXHIBIT A

liquidation process contemplated by this Agreement in which case no FF&E Fee shall be earned by or payable to Agent. The Merchant shall remove any hazardous material, including, without limitation, freon. Expenses incident to removal of such hazardous materials do not constitute expenses of the sale of FF&E hereunder and shall be paid by Merchant upon demand by Agent.

(b)    Merchant shall reimburse reasonable out of pocket expenses attributable to the sale of FF&E pursuant to the FF&E Expense Budget, which FF&E Expense Budget shall be mutually agreed upon in writing by Merchant and Agent. On or prior to the FF&E Sale Termination Date for each Store, Agent shall leave such Store in "broom clean" condition (ordinary wear and tear excepted); *provided, however,* as of the FF&E Sale Termination Date, Agent may abandon in place in a neat and orderly manner any unsold FF&E at the Stores unless the applicable lessor agrees that FF&E may be abandoned at the applicable Store. For the avoidance of doubt, Occupancy Expenses shall not be taken into consideration in determining the FF&E Fee.

5.4    <u>Licensed Departments</u>. Pharmacy and various other departments at the Stores are licensed to third party operators (the "<u>Licensed Departments</u>"). Merchant and Agent shall mutually agree on how to divide amounts payable by the licensees under the agreements pursuant to which they license the Licensed Departments. In no event shall Agent have any liability to the licensees under the agreements pursuant to which they license the Licensed Departments.

Section 6.    <u>Sale Term</u>.

6.1    <u>Term</u>. The Sale shall commence at the Stores on the Sale Commencement Date. Subject to the Approval Order, the Agent shall complete the Sale at each Store, and shall vacate each Store's premises in favor of Merchant or its representative or assignee on or before the Sale Termination Date, provided that Agent may continue its efforts to sell the FF&E on or prior to the FF&E Sale Termination Date. The Sale Termination Date at any of the Stores may be (a) extended by mutual written agreement of Agent and Merchant or (b) accelerated by Agent, in which case Agent shall provide Merchant with not less than seven (7) days' advance written notice of any such planned accelerated Sale Termination Date. The FF&E Sale Termination Date at any of the Stores may be (a) extended by mutual written agreement of Agent and Merchant or (b) accelerated by Agent, in which case Agent shall provide Merchant with not less than seven (7) days' advance written notice of any such planned accelerated FF&E Sale Termination Date.

6.2    <u>Vacating the Stores</u>. Agent shall provide Merchant with not less than seven (7) days' advance written notice of its intention to vacate any Store. Notwithstanding the foregoing, all Stores shall be vacated on or prior to September 30, 2005 unless Merchant and Agent mutually agree otherwise. On or prior to the FF&E Sale Termination Date at each Store, Agent shall vacate in favor of Merchant or its representatives or assignee, and leave such Store in "broom clean" condition (ordinary wear and tear excepted). All assets of Merchant used by Agent in the conduct of the Sale (*e.g.* FF&E, supplies, etc.) shall be returned by Agent to Merchant or left at the Stores' premises at the end of the Sale Term to the extent the same have not been sold or used as contemplated by this Agreement in the conduct of the Sale or have not been otherwise disposed of through no fault of Agent. Agent agrees that it shall be obligated to

11

# EXHIBIT A

repair any damage caused by Agent (or any representative, agent or licensee thereof) to any Store during the Sale Term, ordinary wear and tear excepted.

      Section 7.     Sale Proceeds.

      7.1     Proceeds.  For purposes of this Agreement, "Proceeds" shall mean the total amount (in dollars) of all sales of Merchandise and Merchant Consignment Goods plus all manufacturer's coupons, food stamps and other government subsidized credits, and post-petition return to vendor credits following the Sale Commencement Date (as agreed to by Merchant and Agent) and related items in connection with such sales made under this Agreement, exclusive of (i) Sales Taxes, (ii) credit card and bank card fees and chargebacks, (iii) returns, allowances, and customer credits, (iv) amounts held in trust for third parties and (v) proceeds generated from the sale of pharmaceutical goods in the pharmacy department.

      7.2     Credit Card Proceeds.  Agent may use Merchant's credit card facilities (including Merchant's credit card terminals and processor(s), credit card processor coding, and existing bank accounts) for credit card sales, and Merchant shall process credit card transactions, applying customary practices and procedures.

      Section 8.     Conduct of the Sale.

      8.1     Rights of Agent.  Agent shall be permitted to conduct the Sale, on behalf of Merchant, as a "store closing" or similar theme sale in the Stores throughout the Sale Term in a manner consistent with the Sale Guidelines and in accordance with this Agreement.  In addition to any other rights granted to Agent hereunder, in performing its duties in connection with the Sale, Agent shall have the right for purposes of the Sale:

      (a)     to implement Sale prices and Stores hours in accordance with an agreed upon plan with Merchant as set forth in the Expense Budget and subject to the terms of applicable leases, mortgages, or other occupancy agreements, and local laws or regulations, including, without limitation, Sunday closing laws;

      (b)     to request from Merchant the use of, during the Sale Term in accordance with the Expense Budget all FF&E, bank accounts, Store-level customer lists and mailing lists, computer hardware and software, existing supplies located at the Stores, intangible assets (including Merchant's name, logo, and tax identification numbers), Store keys, case keys, security codes, and safe and lock combinations required to gain access to and operate the Stores, and any other assets of Merchant located at the Stores (whether owned, leased, or licensed) consistent with applicable terms of leases or licenses.  Agent shall exercise due care and return to the Merchant immediately at the end of the Sale all materials and supplies except materials or supplies expended;

      (c)     to request from Merchant the use of Merchant's central office facilities, central administrative services, and personnel to process payroll, perform MIS, and provide other central office services necessary

# EXHIBIT A

for the Sale to the extent that such services are normally provided by Merchant in-house, at no cost to Agent subject, however, to the Expense Budget; provided, however, that in the event Agent expressly requests Merchant to provide services other than those normally provided to the Stores and relating to the sale of merchandise by Merchant in the ordinary course of business and as expressly contemplated by this Agreement, Agent shall be responsible to reimburse Merchant, as an Expense of the Sale hereunder, for the actual incremental cost of such services incurred by Merchant to a third party (e.g., a party which is not affiliated with or related to Merchant);

 (d) to establish and implement Merchant-approved advertising, signage, and promotion programs consistent with a "store closing," or similar theme sale, and as otherwise provided in the Approval Order and the Sale Guidelines (including, without limitation, by means of media advertising, banners, A-frame, and similar signage);

 (e) to request permission of Merchant to transfer Merchandise between Stores and to facilitate such transfer as directed by Merchant;

 (f) to assist Merchant, at Merchant's sole option, to replenish the Replenishment Goods;

 (g) Recommend and implement Merchant-approved (i) point of purchase, point of sale, and external and internal advertising and signage necessary to effectively sell the Merchandise at the Stores in accordance with a "store closing" or other mutually agreeable theme (Agent shall deliver copies of all advertising materials for the Sale to Merchant which shall have the right, within three (3) business days of such delivery, to approve such materials (which approval shall not be unreasonably withheld or delayed); provided, however, that the failure of the Merchant to reasonably respond to any request for approval within three (3) business days shall be deemed to be approval of the subject materials), (ii) pricing and presentation of Merchandise, (iii) staffing levels for the Stores (including store employees), (iv) merchandise transfer strategies between and among the Stores, and (v) store operation practices (i.e., ongoing services and housekeeping);

 (h) at Agent's election, and as an Expense identified in the Expense Budget, to continue offer customer services currently offered in the Stores relating to "moneygrams" or money orders, accepting payment of customer utility bills, and check cashing;

 (i) to use the bakery, deli, meat, and other departments, including Licensed Departments, other than pharmacy departments and lottery departments, for periods of time to be agreed between Agent and Merchant;

13

# EXHIBIT A

(j)     to return Merchandise to vendors with the consent of Merchant; and

(k)     to work with Merchant prior to the Sale Commencement Date to manage Merchandise levels at the Stores.

8.2     <u>Terms of Sales to Customers, Compliance With Law</u>. All sales of Merchandise will be "final sales" and "as is," and all advertisements and sales receipts will reflect the same. Agent shall not warrant the Merchandise in any manner, but will, to the extent legally permissible, pass on all manufacturers' warranties to customers. All sales will be made only for cash and nationally recognized bank credit cards, <u>provided, however</u>, that if Agent determines to accept personal checks, Agent shall bear the risk of loss relating thereto. Unless otherwise directed by Merchant in writing, Agent shall accept Merchant's gift certificates, Merchandise credits, due bills, and rain checks issued by Merchant prior to the Sale Commencement Date. Except as may otherwise be provided in the Approval Order, Agent shall comply with all applicable laws and regulations in its conduct of the Sale, including laws and regulations governing the advertising of the Sale, Merchandise pricing, and employment. If Agent fails to perform its responsibilities in accordance with this Section 8.2, Agent shall indemnify and hold harmless Merchant from and against any and all costs including, but not limited to, reasonable attorneys' fees, assessments, fines, or penalties which Merchant sustains or incurs as a result or consequence of the failure by Agent to comply with applicable laws and regulations. Agent shall honor Manufacturers' Coupons; <u>provided, however</u>, that when Merchant is reimbursed by its coupon clearing house, the net actual amount of such reimbursement shall be included in the calculation of Proceeds at the next Interim Reconciliation of Proceeds during the Sale. Merchant and Agent shall prepare all appropriate documentation incidental to submission of the Manufacturers' Coupons to the respective manufacturer and/or vendor, and Merchant shall retain all monies received from the manufacturers or vendors on account of such Manufacturers' Coupons. In addition, and in accordance with applicable law, Agent shall accept food stamps; <u>provided, however</u>, that as part of the weekly Sale reconciliation pursuant to Section 8.6 hereof, the amount of food stamps shall be included in the calculation of Proceeds.

8.3     <u>Sales Taxes</u>. During the Sale Term, all Sales Taxes shall be added to the sales price of Merchandise and collected by Agent, on Merchant's behalf, and be immediately deposited in Merchant's existing accounts, trust accounts, or other accounts, as designated by Merchant. With Agent's cooperation, Merchant shall promptly pay all Sales Taxes and file all applicable reports and documents required by the applicable taxing authorities. Provided Agent performs its responsibilities in accordance with this Section 8.3, Merchant shall indemnify and hold harmless Agent from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines, or penalties which Agent sustains or incurs as a result or consequence of the failure by Merchant to promptly pay such taxes to the proper taxing authorities and/or the failure by Merchant to promptly file with such taxing authorities all reports and other documents required, by applicable law, to be filed with or delivered to such taxing authorities. If Agent fails to perform its responsibilities in accordance with this Section 8.3, and provided Merchant complies with its obligations hereunder, Agent shall indemnify and hold harmless Merchant from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines, or penalties which Merchant sustains or incurs as a result or

14

# EXHIBIT A

consequence of the failure by Agent to collect Sales Taxes and/or, to the extent Agent is required hereunder to prepare reports and other documents, the failure by Agent to promptly deliver any and all reports and other documents required to enable Merchant to file any requisite returns with such taxing authorities.

      8.4    Supplies. Agent shall have the right to use for purposes of the Sale all existing supplies (e.g., boxes, bags, twine) located at the Stores, at no charge to Agent. In the event that additional supplies are required in any of the Stores during the Sale, the acquisition of such additional supplies shall be the responsibility of Agent as an Expense; provided, however, that Merchant shall assist Agent in obtaining supplies from Merchant's vendors at Merchant's cost to the extent set forth in the Expense Budget. Supplies have not been, and shall not be, prior to the Sale Commencement Date, transferred by Merchant to or from the Stores so as to alter the mix or quantity of supplies at the Stores from that existing on such date, other than in the ordinary course of business.

      8.5    Daily Reports. Agent shall prepare and deliver to Merchant (i) reports of sales (gross and net of discount) on a daily basis, in the form attached hereto as Schedule 8.5, and (ii) from time to time upon request, such other reports as the parties mutually agree are reasonably necessary to properly effect the Sale. Each party to this Agreement shall, at all times during the Sale Term and during the one-year period thereafter, provide the other with access to all information, books, and records relating to the Sale and to this Agreement. All records and reports shall be made available to Agent and Merchant during regular business hours upon reasonable notice. In addition, Merchant and Agent shall conduct weekly executive conference calls regarding the Sale process and Agent's lead supervisor and financial/accounting supervisor shall be on premises at the Merchant's headquarters and available to answer Merchant's questions during the Sale Term.

      8.6    Sale Reconciliation. On each Wednesday during the Sale Term, commencing on the second Wednesday after the Sale Commencement Date, Agent and Merchant shall cooperate to reconcile Expenses, sales of Merchant Consignment Goods and such other Sale-related items as either party shall reasonably request, in each case for the prior week or partial week (i.e., Sunday through Saturday), all pursuant to procedures agreed upon by Merchant and Agent (each such reconciliation, an "Interim Reconciliation"). Within sixty (60) days after the end of the Sale Term, Agent and Merchant shall complete the Final Reconciliation, the written results of which shall be certified by representatives of each of Merchant and Agent as a final settlement of accounts between Merchant and Agent.

      8.7    Force Majeure. If any casualty or act of God prevents the conduct of business in the ordinary course at any Store for a period in excess of seven (7) consecutive days, such Store and the Merchandise located at such Store shall be eliminated from the Sale and considered to be deleted from this Agreement as of the last date of such event, and Agent and Merchant shall have no further rights or obligations hereunder with respect thereto. Agent will use its best efforts to consolidate and transfer all Merchandise which is not the subject of insurance proceeds and include said Merchandise in the Sale in other Stores.

      Section 9.    Conditions Precedent. The willingness of Agent and Merchant to enter into the transactions contemplated under this Agreement is directly conditioned upon the

# EXHIBIT A

satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by the applicable party:

       (a)    All representations and warranties of Merchant and Agent hereunder shall be true and correct in all material respects (provided that neither party shall be able to terminate this Agreement pursuant to Section 14.10 if any breaches of representations or warranties that would cause this Section 9(a) to be failed to be satisfied have been cured in the time contemplated by Section 13).

       (b)    On or before July 29, 2005, the Court shall have entered the Approval Order.

      Section 10.    Representations, Warranties, and Covenants.

       10.1    Merchant's Representations, Warranties, and Covenants.  Merchant hereby represents, warrants, and covenants in favor of Agent as follows:

       (a)    Merchant (i) is a corporation duly organized, validly existing, and in good standing under the laws of the jurisdiction of its incorporation; (ii) has all requisite corporate power and authority to own, lease, and operate its assets and properties and to carry on its business as presently conducted and, subject to the requirement of Bankruptcy Court approval, has the power and authority to consummate the transactions contemplated by this Agreement; and (iii) is and during the Sale Term will continue to be duly authorized and qualified to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification, including all jurisdictions in which the Stores are located, except, in each case, to the extent that the failure to be in good standing or so qualified could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder.

       (b)    Subject to the issuance and entry of the Approval Order, Merchant has the right, power, and authority to execute and deliver the Agency Documents and to perform fully its obligations thereunder. Subject to the issuance and entry of the Approval Order, Merchant has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval on the part of Merchant is required for Merchant to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale. Subject to the issuance and entry of the Approval Order, each of the Agency Documents has been duly executed and delivered by Merchant and constitutes the legal, valid, and binding obligation of Merchant enforceable in accordance with its terms. Subject to the issuance and entry of the Approval Order, no court order or decree of any federal, state, or local governmental authority or regulatory body is in effect that would prevent or materially impair, or is required for the Merchant's consummation of, the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefor, other than as shall be obtained prior to the Sale Commencement Date, except for any such consent the failure of which to be obtained could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder. Other than for those contracts or agreements identified by Merchant to Agent on or prior to the Sale Commencement Date, if any,

# EXHIBIT A

no contract or other agreement to which the Merchant is a party or by which the Merchant is otherwise bound will prevent or materially impair the consummation of the Sale and the other transactions contemplated by this Agreement.

(c)    Agent shall have the right, subject to the right of Merchant to maintain a separate FF&E liquidator, to the unencumbered use and occupancy of, and peaceful and quiet possession of, each of the Stores, in order to perform its obligations described in this Agreement. Other than as identified by Merchant to Agent on or prior to the Sale Commencement Date, to the extent necessary in furtherance of the Sale, Merchant shall throughout the Sale Term maintain in a manner consistent with its customary and historic practices, at its sole expense (except as otherwise provided herein), all cash registers, heating systems, refrigeration, air conditioning systems, elevators, escalators, alarm systems, and all other mechanical devices used in the ordinary course of operation of the Stores or, if applicable, use reasonable efforts to cause any applicable landlord to comply with its obligations under applicable lease and occupancy agreements with respect to any such matter.

(d)    Merchant has not and shall not purchase or transfer to or from the Stores any merchandise or goods outside the ordinary course in anticipation of the Sale without the prior agreement of Agent.

(e)    From June 15, 2005 through the Sale Commencement Date, the Merchant has operated and will operate the Stores and all of its stores that are not part of the Sale (the "Remaining Stores") in the ordinary course of business consistent with post-petition historical operations. Without limiting the foregoing, from June 15, 2005 through the Sale Commencement Date, (i) Merchant has not conducted and will not conduct any promotions or advertised sales at the Stores except promotions and sales in the ordinary course of business consistent with promotions and sales at the Remaining Stores and historic promotions and sales for comparable periods last year, (ii) except as set forth in Section 5.1, Merchant has continued and will continue to replenish the Stores with new Merchandise in a manner consistent with replenishment of the Remaining Stores and historic practices unless otherwise agreed to by the parties, and (iii) all rack jobbers and service vendors have continued and will continue to service the Stores in the ordinary course.

(f)    Merchant owns and will own at all times during the Sale Term, good and marketable title to all of the Merchandise free and clear of all liens, claims and encumbrances of any nature, except for presently existing or future liens, which, in accordance with the Approval Order, shall attach only to the Proceeds to be retained by Merchant hereunder and shall not attach to the Agent's Fee. Merchant shall not create, incur, assume or suffer to exist any security interest, lien or other charge or encumbrance upon or with respect to any of the Merchandise or the Proceeds except for presently existing or future liens, which, in accordance with the Approval Order, shall attach only to the Proceeds to be retained by Merchant hereunder and shall not attach to the Agent's Fee.

(g)    Merchant covenants to continue to operate the Stores in the post-petition ordinary course of business from the date of this Agreement to the Sale Commencement Date, and to operate the Remaining Stores in the ordinary course of business from the date of this Agreement through the Sale Termination Date, in each case (i) selling inventory during such

17

# EXHIBIT A

period at customary prices, (ii) not promoting or advertising any sales or in-store promotions (including POS promotions) to the public (except for Merchant's historic and customary promotions for all of its locations), (ii) not returning inventory to vendors and not transferring inventory or supplies between or among Stores and Remaining Stores, except as permitted by this Agreement, and (iv) not making any material management personnel moves or changes at the Stores without Agent's prior written consent (which consent will not be unreasonably withheld). Without limiting the foregoing, Merchant shall not conduct or advertise "going out of business", "store closing", or "liquidation" sales at any of the Remaining Stores located within the market area of any Store at any time during the Sale Term and Merchant shall not offer a discount in such closing Remaining Store or Remaining Stores greater than that being simultaneously offered by Agent in the Stores in such market area.

(h)    Merchant shall provide Agent with its historic policies and practices regarding product recalls.

(i)    Agent shall have peaceful and quiet use and occupancy of the Stores during the term of the Sale, and the expiration date of any lease or effective date of any rejection of any lease, if any, covering a Store shall not be prior to the FF&E Sale Termination Date at such Store.

10.2    <u>Agent's Representations, Warranties, and Covenants</u>.  Agent hereby represents, warrants, and covenants in favor of Merchant as follows:

(a)    Agent is composed of limited liability companies, each of which (i) is duly formed, and validly existing, and in good standing under the laws of the State of its organization; (ii) has all requisite power and authority to carry on its business as presently conducted and to consummate the transactions contemplated hereby; and (iii) is and during the Sale Term will continue to be duly authorized and qualified as a foreign company to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification.

(b)    Agent hereby acknowledges and warrants that prior to the execution of the Agreement, Agent has had an opportunity to inspect the Stores and the Merchandise.

(c)    Agent has the right, power, and authority to execute and deliver each of the Agency Documents to which it is a party and to perform fully its obligations thereunder. Agent has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval is required on the part of Agent for Agent to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale. Each of the Agency Documents has been duly executed and delivered by the Agent and constitutes the legal, valid and binding obligation of Agent enforceable in accordance with its terms. No court order or decree of any federal, state or local governmental authority or regulatory body is in effect that would prevent or impair or is required for Agent's consummation of the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefor. No contract or other agreement to which Agent is a party or by which Agent is otherwise bound will prevent or impair the consummation of the transactions contemplated by this Agreement.

18

# EXHIBIT A

(d)    No action, arbitration, suit, notice, or legal, administrative, or other proceeding before any court or governmental body has been instituted by or against Agent, or to Agent's knowledge, has been threatened against or affects Agent, which questions the validity of this Agreement or any action taken or to be taken by Agent in connection with this Agreement, or which if adversely determined, would have a material adverse effect upon Agent's ability to perform its obligations under this Agreement.

(e)    During the Sale Term, Agent shall maintain (i) a safe working and shopping environment in the Stores; and (ii) Store cleanliness in a manner at least consistent with Merchant's past practices for the Stores.

(f)    Except as may otherwise be provided in the Approval Order, during the Sale Term, Agent shall comply with all federal, state, and local laws, rules, and regulations applicable to Agent in connection with the transactions contemplated by this Agreement.

Section 11.    <u>Insurance</u>.

11.1    <u>Merchant's Liability Insurance</u>.  Merchant shall continue until the Sale Termination Date, in such amounts and on such terms and conditions as are consistent with Merchant's ordinary course operations, all of its liability insurance policies including, but not limited to, products liability, comprehensive public liability, auto liability, and umbrella liability insurance, covering injuries to persons and property in, or in connection with Merchant's operation of, the Stores, and shall cause Agent to be named an additional named insured with respect to all such policies.  Prior to the Sale Commencement Date, Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof and naming Agent as an additional named insured, in form reasonably satisfactory to Agent.  In the event of a claim under any such policies, Merchant shall be responsible for the payment of all deductibles, retentions, or self-insured amounts to the extent said claim arises from or relates to the alleged acts or omissions of Merchant or its employees, agents (other than Agent's employees), or independent contractors (other than Agent and independent contractors hired by Agent in conjunction with the Sale or Merchant's employees being supervised by Agent).

11.2    <u>Merchant's Casualty Insurance</u>.  Merchant shall continue until the Sale Termination Date, in such amounts and on such terms and conditions as are consistent with Merchant's ordinary course operations, fire, flood, theft, and extended coverage casualty insurance covering the Merchandise in a total amount equal to no less than the cost value thereof. In the event of a loss to the Merchandise on or after the date of this Agreement, the proceeds of such insurance attributable to the Merchandise (net of any deductible) shall constitute Proceeds. Prior to the Sale Commencement Date, Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof, in form and substance reasonably satisfactory to Agent.

11.3    <u>Workers' Compensation Insurance</u>.  Merchant shall continue until the Sale Termination Date, in such amounts and on such terms and conditions as are consistent with Merchant's ordinary course operations, workers' compensation insurance (including employer liability insurance) covering all of Merchant's Store-level employees in compliance with all

19

# EXHIBIT A

statutory requirements. Prior to the Sale Commencement Date, Merchant shall deliver to Agent a certificate of its insurance broker or carrier evidencing such insurance.

11.4    Agent's Insurance. Agent shall maintain at Agent's cost and expense throughout the Sale Term, in such amounts and on such terms and conditions as are acceptable to Merchant in its reasonable discretion, comprehensive public liability and automobile liability insurance policies covering injuries to persons and property in, or in connection with Agent's duties at, the Stores, and shall cause Merchant to be named an additional insured with respect to such policies. Exhibit 11.4 attached hereto contains a description of all such policies. Prior to the Sale Commencement Date, Agent shall deliver to Merchant certificates evidencing such insurance policies, setting forth the duration thereof and naming Merchant as an additional insured, in form and substance reasonable satisfactory to Merchant. In the event of a claim under such policies, Agent shall be responsible for the payment of all deductibles, retentions, or self-insured amounts thereunder, to the extent said claim arises from or relates to the alleged acts or omissions of Agent or Agent's employees, agents or independent contractors.

11.5    Risk of Loss.

Without limiting any other provision of this Agreement, Merchant acknowledges that Agent is conducting the Sale on behalf of Merchant solely in the capacity of an agent, and that in such capacity (i) Agent shall not be deemed to be in possession or control of the Stores or the assets located therein or associated therewith, or of Merchant's employees located at the Stores, except, however, that Agent shall be responsible for supervising the conduct of the Merchant's Store-level employees in connection with the Sale, and (ii) except as expressly provided in this Agreement, Agent does not assume any of Merchant's obligations or liabilities with respect to any of the foregoing, other than with respect to supervising the conduct of the Merchant's Store-level employees. Agent shall not be deemed to be a successor employer. Merchant and Agent agree that, subject to the terms of this Agreement, Merchant shall bear all responsibility for liability claims of customers, employees, and other persons arising from events occurring at the Stores during and after the Sale Term, except for any Agent Claims. In the event of any liability claim other than an Agent Claim, Merchant shall administer such claim and shall present such claim to Merchant's liability insurance carrier in accordance with Merchant's policies and procedures existing immediately prior to the Sale Commencement Date. To the extent that Merchant and Agent agree that a claim constitutes an Agent Claim, Agent shall administer such claim and shall present such claim to its liability insurance carrier, and shall provide copies of the initial documentation relating to such claim to Merchant. In the event that Merchant and Agent cannot agree whether a claim constitutes an Agent Claim, each party shall present the claim to its own liability insurance carrier, and a copy of the initial claim documentation shall be delivered to the other party at the address specified in Section 15.1 hereof.

Section 12.    Indemnification.

12.1    Merchant Indemnification. Merchant shall indemnify and hold the Agent Indemnified Parties harmless from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Agent resulting from or related to:

# EXHIBIT A

(a)     Merchant's material breach of or failure to comply with any of its agreements, covenants, representations, or warranties contained in any Agency Document;

(b)     any failure of Merchant to pay to its employees any wages, salaries, or benefits due to such employees during the Sale Term;

(c)     any consumer warranty or products liability claims except to the extent such claims arise from representations made by the Agent relating to the Merchandise;

(d)     any liability or other claims asserted by customers, any of Merchant's employees, or any other person against any Agent Indemnified Party (including, without limitation, claims by employees arising under collective bargaining agreements, workers' compensation or under the WARN Act), except for Agent Claims and such other claims for which Agent has indemnified Merchant elsewhere in this Agreement;

(e)     the gross negligence or willful misconduct of Merchant or any of its officers, directors, employees, agents (other than Agent), or representatives.

Notwithstanding anything to the contrary contained in this section 12.1, Merchant's aggregate obligation to indemnify Agent under the terms of the Agreement shall expire three (3) months after the Sale Termination Date and shall not exceed $15,000,000 in the aggregate.

12.2    Agent Indemnification. To secure Agent's indemnity obligations under this section, Agent shall issue a letter of credit from a bank acceptable to Merchant, in Merchant's sole discretion, in an amount no less than $15 million. The cost of the letter of credit, including fees associated therewith, shall be an Expense of Sale added to the Expense Budget. Agent shall indemnify and hold Merchant and its officers, directors, employees, agents and representatives harmless from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Merchant resulting from or related to (including acts or omissions of persons or entities affiliated with or acting on behalf of the Agent):

(a)     Agent's material breach of or failure to comply with any local, state, or federal laws or regulations, or any of its agreements, covenants, representations or warranties contained in any Agency Document;

(b)     any harassment, discrimination, or violation of any laws or regulations or any other unlawful, tortious, or otherwise actionable treatment of any employees or agents of Merchant by Agent or any of its employees, agents, independent contractors, or other officers, directors, or representatives of Agent;

(c)     any claims by any party engaged by Agent as an employee or independent contractor arising out of such engagement;

(d)     any Agent Claims; and

(e)     the negligence or willful misconduct of Agent or any of its officers, directors, employees, agents, or representatives.

21

# EXHIBIT A

Notwithstanding anything to the contrary contained in this section 12.2, Agent's aggregate obligation to indemnify Merchant under the terms of the Agreement shall expire three (3) months after the Sale Termination Date and shall not exceed $15,000,000 in the aggregate.

      12.3   Indemnification Procedure. The party seeking indemnity under this Agreement shall: (a) fully and promptly notify the other party of any claim or proceeding, or threatened claim or proceeding; (b) permit the indemnifying party to take full control of such claim or proceeding; (c) cooperate in the investigation and defense of such claim or proceeding; (d) not compromise or otherwise settle any such claim or proceeding without the prior written consent of the other party, which consent shall not be unreasonably withheld, conditioned, or delayed; and (e) take all reasonable steps to mitigate any loss or liability in respect of any such claim or proceeding.

      Section 13.   Defaults. In the event of an Event of Default, the non-defaulting party may, in its discretion, elect to terminate this Agreement upon seven (7) business days' written notice to the other party and pursue any and all rights and remedies and damages resulting from such default hereunder.

      Section 14.   Miscellaneous.

      14.1   Notices. All notices and communications provided for pursuant to this Agreement shall be in writing, and sent by hand, by facsimile, or a recognized overnight delivery service, as follows:

| If to the Agent: | | Hilco Merchant Resources |
|---|---|---|
| | | 5 Revere Drive, Suite 206 |
| | | Northbrook, IL 60062 |
| | Attn: | Cory Lipoff |
| | | EVP & Principal |
| | Tel: | (847) 849-2915 |
| | Fax: | (847) 897-0717 |
| | | |
| | | Gordon Brothers Group |
| | | 40 Broad Street |
| | | Boston, MA 02109 |
| | Attn: | Brad Snyder |
| | | Managing Director and Principal |
| | Tel: | (617) 422-6216 |
| | Fax: | (617) 422-6288 |

# EXHIBIT A

with a copy to:

|  |  |
|---|---|
|  | Latham & Watkins LLP |
|  | Sears Tower, Suite 5800 |
|  | 233 S. Wacker Drive |
|  | Chicago, IL  60606 |
| Attn: | Josef S. Athanas, Esq. |
| Tel: | (312) 876-7608 |
| Fax: | (312) 993-9767 |

If to Merchant:

|  |  |
|---|---|
|  | Winn-Dixie Stores, Inc. |
|  | 5050 Edgewood Ct. |
|  | Jacksonville, FL  32254 |
| Attn: | Sheon Karol |
| Tel: | (904) 370-7772 |
| Fax: | (904) 370-7773 |

with a copy to:

|  |  |
|---|---|
|  | King & Spalding LLP |
|  | 191 Peachtree Street |
|  | Atlanta, GA 30303 |
| Attn: | Paul Ferdinands, Esq. |
| Tel: | (404) 572-4600 |
| Fax: | (404) 572-5149 |

14.2    Governing Law: Consent to Jurisdiction. This Agreement shall be governed and construed in accordance with the laws of the State of Florida, without regard to conflicts of laws principles thereof. The parties hereto agree that the Bankruptcy Court shall retain jurisdiction to hear and finally determine any disputes arising from or under this Agreement, and by execution of this Agreement each party hereby irrevocably accepts and submits to the exclusive jurisdiction of such court with respect to any such action or proceeding and to service of process by certified mail, return receipt requested to the address listed above for each party.

14.3    Entire Agreement. This Agreement contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto.

14.4    Amendments. This Agreement may not be modified except in a written instrument executed by each of the parties hereto.

14.5    No Waiver. No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be

# EXHIBIT A

deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party. Failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

        14.6    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and be binding upon Agent and Merchant, including, but not limited to, any Chapter 11 or Chapter 7 trustee. Agent shall not be permitted to assign its obligations under this Agreement.

        14.7    <u>Execution in Counterparts</u>. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one agreement. This Agreement may be executed by facsimile, and such facsimile signature shall be treated as an original signature hereunder.

        14.8    <u>Section Headings</u>. The headings of sections of this Agreement are inserted for convenience only and shall not be considered for the purpose of determining the meaning or legal effect of any provisions hereof.

        14.9    <u>Reporting</u>. If requested by Merchant, Agent shall prepare weekly reports including, without limitation, reports that comply with the Merchant's current weekly cash reporting to its central office, reflecting the progress of the Sale, which shall specify the Proceeds received to date. The Agent will maintain and provide to Merchant sales records to permit calculation of and compliance with any percentage rent obligations under Stores leases. During the course of the Sale, Merchant shall have the right to have representatives continually act as observers of the Sale in the Stores so long as they do not interfere with the conduct of the Sale.

        14.10  <u>Termination</u>. This Agreement shall remain in full force and effect until the first to occur of: (i) receipt by Merchant of written notice from Agent that any of the representations specified in Section 9 hereof have not been satisfied; (ii) receipt by Agent of written notice from Merchant that any of the conditions specified in Section 9 hereof have not been satisfied; or (iii) the expiration of the Sale Term and completion and certification by Merchant and Agent of the final Sale reconciliation pursuant to Section 8.6 above. Notwithstanding the foregoing, the provisions of Sections 3.3, 11 and 12 above shall survive the termination of this Agreement pursuant to this Section 14.10.

      Section 15.    <u>Employee Matters</u>.

        15.1    <u>Merchant's Employees</u>. Agent may use Merchant's employees in the conduct of the Sale to the extent Agent in its sole discretion deems expedient, and Agent may select and schedule the number and type of Merchant's employees required for the Sale. Agent shall identify any such employees to be used in connection with the Sale (each such employee, a "<u>Retained Employee</u>") prior to the Sale Commencement Date. Retained Employees shall at all times remain employees of Merchant, and shall not be considered or deemed to be employees of Agent. Merchant and Agent agree that except to the extent that wages and benefits of Retained Employees constitute Expenses hereunder, nothing contained in this Agreement and none of Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by

# EXHIBIT A

Agent of any of Merchant's obligations relating to any of Merchant's employees including, without limitation, Worker Adjustment Retraining Notification Act ("WARN Act") claims and other termination type claims and obligations, or any other amounts required to be paid by statute or law (except to the extent such items are amounts for which Merchant is entitled to indemnification hereunder); nor shall Agent become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees. Merchant shall not, without Agent's prior written consent, raise the salary or wages or increase the benefits for, or pay any bonuses or make any other extraordinary payments to, any of its employees prior to the Sale Termination Date.

      15.2   Termination of Employees. Agent may in its discretion stop using any Retained Employee at any time during the Sale. In the event of termination of any Retained Employee, Agent will use all reasonable efforts to notify Merchant at least five (5) days prior thereto, except for termination "for cause" (such as dishonesty, fraud or breach of employee duties), in which event no prior notice to Merchant shall be required, provided Agent shall notify Merchant as soon as practicable after such termination. From and after the date of this Agreement and until the Sale Termination Date, Merchant shall not transfer or dismiss employees of the Stores except "for cause" without Agent's prior consent, which consent shall not be withheld unreasonably.

IN WITNESS WHEREOF, Agent and Merchant hereby execute this Agreement by their duly authorized representatives as of the day and year first written above.

A JOINT VENTURE COMPOSED OF HILCO
MERCHANT RESOURCES, LLC, AND GORDON
BROTHERS RETAIL PARTNERS, LLC

By:    Hilco Merchant Resources, LLC

By: _____
Name: _____
Title: _____

WINN-DIXIE STORES, INC.

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, Agent and Merchant hereby execute this Agreement by their duly authorized representatives as of the day and year first written above.

**A JOINT VENTURE COMPOSED OF HILCO MERCHANT RESOURCES, LLC, AND GORDON BROTHERS RETAIL PARTNERS, LLC**

By:     Hilco Merchant Resources, LLC

By: _____
Name: _____
Title: _____

**WINN-DIXIE STORES, INC.**

By: _____
Name: _____
Title: _____

**Exhibit 8.1**

**Winn-Dixie Stores, Inc. – Store Closing Guidelines**

The following procedures shall apply to Store closing sales ("Sales") to be held at the Stores:[1]

1.  The Sale shall be conducted so that the Stores in which sales are to occur remain open no longer than the normal hours of operation provided for in the respective leases for the Stores.

2.  The Sale shall be conducted in accordance with applicable state and local "Blue Laws," and thus, where applicable, no Sale shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday.

3.  All display and hanging signs used by the Merchant and the Agent in connection with the Sale shall be professionally produced, and all hanging signs shall be hung in a professional manner. To the extent authorized by the Bankruptcy Court, the Merchant and the Agent may advertise the Sale as a "store closing" or similar themed sale at the Stores, as provided by the Agency Agreement. The Merchant and the Agent shall not use neon or day-glo signs. Nothing contained herein shall be construed to create or impose upon the Merchant and the Agent any additional restrictions not contained in the applicable lease. In addition, the Merchant and the Agent shall be permitted to utilize exterior banners at the Stores; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store location and shall not be wider than the front of the Store. In addition, the Merchant and the Agent shall be permitted to utilize sign walkers and customary street signage.

4.  Conspicuous signs shall be posted in the cash register areas of each affected Store to the effect that all sales are "final" and that customers with any questions or complaints subsequent to the conclusion of the Sale may contact a named representative of the Merchant or the Agent at a specified telephone number.

5.  The Agent shall not distribute handbills, leaflets, or other written materials to customers outside of any of the Stores, unless permitted by the applicable lease or if distribution is customary in the shopping center in which the Store is located. Otherwise, the Agent may solicit customers in the Stores themselves. The Agent shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

6.  At the conclusion of the Sale, Agent shall vacate the Stores in "broom-clean" condition, and shall otherwise leave the Stores in the same condition as at the commencement of the Sale, ordinary wear and tear excepted; provided, however,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agency Agreement.

that the Merchant and/or the Agent shall be authorized to leave any Abandoned Property (as that term is defined herein) in the Stores; provided, further, that the Merchant does not undertake any greater obligation than as set forth in an applicable lease with respect to a Store. The Merchant may abandon any FF&E or other materials of *de minimis* value (the "Abandoned Property") not sold in the Sale at the Store premises at the conclusion of the Sale. Any Abandoned Property left in a Store after a lease is rejected shall be deemed abandoned, with the landlord having the right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord and without waiver of any damage claims against the Merchant.

7.  The Merchant and/or the Agent may sell FF&E owned by the Merchant and located in the Stores during the Sale. The Merchant or the Agent, as the case may be, may advertise the sale of FF&E. Additionally, the purchasers of any FF&E sold during the Sale shall only be permitted to remove the FF&E either through the back shipping areas or through other areas after Store business hours.

8.  Landlords will be provided with the name and telephone number of a representative of the Merchant to notify of any problem arising during the Sale.

9.  The Agent shall not make any alterations to interior or exterior Store lighting. No property of any landlord of a Store shall be removed or sold during the Sale. The hanging of exterior banners or other signage shall not constitute an alteration to a Store.

10. At the conclusion of the Sale at each Store, pending assumption or rejection of applicable leases, the landlords of the Stores shall have reasonable access to the Store premises as set forth in the applicable leases. The Merchant, the Agent, and their agents and representatives shall continue to have exclusive and unfettered access to the Stores.

11. Post-petition rents shall be paid and other lease obligations shall be performed by the Merchant as required by the Bankruptcy Code, except as modified pursuant to the Approval Order, until the rejection or assumption and assignment of each lease.

12. The rights of the landlords for any damages to the Stores shall be reserved in accordance with the applicable leases.

13. The Merchant shall notify a representative of the relevant landlord of the date on which the Sale is scheduled to conclude at a given Store, within three business days of the Merchant's receipt of such notice from the Agent.

14. Subject to Bankruptcy Court approval, the Merchant and/or the Agent may conduct one or more auctions of Merchandise and/or FF&E from the Stores.