## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,                    Case No.: 3:05-bk-03817-JAF

          Debtors.                    Chapter 11

                                 Jointly Administered

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

These cases came before the Court upon Motion by Richard Ehster and Other Non-Qualified Plan Participants ("Movants") for Order Directing Appointment of Additional Committee of Creditors (the "Motion for Additional Committee") pursuant to 11 U.S.C. §§ 1102(a)(2) and 1114(d).  The Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Debtors and the United States Trustee object to the Motion for Additional Committee.  The Court conducted a hearing on the matter on June 2, 2005.  Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

On February 21, 2005 (the "Petition Date") Winn-Dixie Stores, Inc., together with 23 affiliated entities[1] (the "Debtors") filed voluntary petitions under Chapter 11 of the

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie

Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). The cases are being jointly administered pursuant to the Order Directing Joint Administration of Cases entered on February 22, 2005. The Debtors continue to manage their properties and operate their businesses as debtors in possession in accordance with §§ 1107(a) and 1108 of the Bankruptcy Code.

The Debtors have retained a number of experts in the cases including financial advisors, financial and operations restructuring consultants, conflicts counsel, accountants, auditors, tax advisors, special real estate litigation counsel, special real estate consultants and finance group support service experts. The Creditors' Committee has retained financial advisors and an operations and real estate advisor.

In the ordinary course of their businesses, the Debtors maintain non-qualified retirement plans for the benefit of participating retired employees, including the Supplemental Retirement Plan (the "SRP") and the Management Security Plan (the "MSP") (the SRP and MSP collectively, the "Non-Qualified Plans"). The SRP operates as a deferred compensation program and is designed to provide participating employees with supplemental provisions for their retirement. The MSP provides for payment of retirement benefits to qualifying participants and also provides for payment of a death benefit to a designated beneficiary in the event that the participant dies prior to retirement. There are approximately 1,042 participants in the Non-Qualified Plans (the

---

Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

"Plan Participants"). As of the Petition Date, the value of vested entitlements for the Plan Participants is estimated to have been $105 million.[2]

On February 22, 2005 the Debtors filed Motion for Authority to Pay (A) Pre-Petition Compensation, Payroll Taxes, Employee Benefits, and Related Expenses, (B) Expenses Related to Independent Contractors, and (C) Certain Retiree Benefits (the "Motion to Pay Benefits"). In the Motion to Pay Benefits, among other things, the Debtors requested authorization to continue making payments under the Non-Qualified Plans during the course of these cases. The New York Court first granted the Motion to Pay Benefits on an interim basis pursuant to an order entered February 22, 2005 and then on a final basis pursuant to an order entered March 15, 2005 (collectively, the "Benefits Orders").

On March 2, 2005 the United States Trustee filed a notice of Appointment of Committee of Unsecured Creditors. The members of the Creditors' Committee are: Capital Research and Management Company, a note-holder; Deutsche Bank Trust Company Americas, a lessor; Kraft Foods Global, Inc., a trade creditor; New Plan Excel Realty Trust, Inc., a lessor; OCM Opportunities Fund V, L.P., a note-holder; Pepsico and Subsidiaries, trade creditors; and R[2] Investments, LDC, a note-holder.

On April 14, 2005 the New York Court entered Amended Order Transferring Venue of the Debtors' Bankruptcy Cases to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division. Any orders entered by the New York

---

[2]The value of vested benefits under the SRP as of the Petition Date is estimated to have been $15,883,998.28. See In re Winn-Dixie Stores, Inc., Schedules of Assets and Liabilities and Schedules of Executory Contracts and Unexpired Leases, Schedule F – Creditors Holding Unsecured Non-Priority Claims, Sub-Schedule: MSP and SRP Participants (Bankr. S.D.N.Y. Apr. 7, 2005). The value of vested benefits under the MSP as of the Petition Date is estimated to have been $88,768,532. Id.

Court remain in full force and effect, unless otherwise ordered by this Court. Pursuant to the Benefits Orders, the Debtors have continued to make payments to plan participants who were receiving benefits at the time of the filings.

On April 28, 2005 counsel for Movants made a written request to the United States Trustee to appoint a second committee of creditors to represent the interests of the Plan Participants. On May 3, 2005 Movants filed the Motion for Additional Committee requesting that the Court enter an order directing the United States Trustee to appoint a second creditors' committee. On May 4, 2005 the United States Trustee determined not to appoint a second creditors' committee to represent the Plan Participants' interests. On May 24, 2005 the United States Trustee filed an objection to the Motion for Additional Committee opposing the creation of a second creditors' committee but indicating that it was investigating the possibility of adding one or more of the Plan Participants to the Creditors' Committee.[3] The Creditors' Committee and the Debtors also filed objections to the Motion for Additional Committee.

## Conclusions of Law

### Appointment of an Additional Committee pursuant to 11 U.S.C. § 1102

The Movants seek the appointment of an additional creditors' committee pursuant to 11 U.S.C. § 1102. Section 1102 of the Bankruptcy Code authorizes bankruptcy courts to appoint additional creditors' committees "if necessary to assure adequate representation of creditors or of equity security holders." The party seeking the appointment of an additional committee bears the burden of proving it is not adequately represented. In re Agway, Inc., 297 B.R. 371, 374 (Bankr. N.D.N.Y. 2003). The

---

[3] As of June 2, 2005 the United States Trustee had not appointed a Plan Participant to the Creditors' Committee.

appointment of an additional committee is an extraordinary remedy. In re Enron Corp., 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) aff'd sub nom. Mirant Americas Energy Marketing, L.P. v. Official Comm. Of Unsecured Creditors of Enron Corp., 2003 WL 22327118 (S.D.N.Y. Oct. 10, 2003).

The Bankruptcy Code does not define adequate representation. Courts have applied a number of factors in determining whether a moving party is adequately represented, including: 1) the ability of the committee to function; 2) the nature of the case; 3) the standing and desires of the various constituencies; 4) the ability for creditors to participate in the cases without an official committee and the potential to recover expenses pursuant to § 503(b); 5) whether different classes may be treated differently under a plan and need representation; 6) the motivation of movants; 7) the costs incurred by the appointment of additional committees; and 8) the tasks that a committee or separate committee is to perform. Enron Corp., 279 B.R. at 685 (internal citations omitted). Whatever the approach taken, the analysis is "without question to be determined on a case by case basis." Id.

The Court finds the following factors relevant to its analysis: 1) the nature of the case; 2) whether an additional committee would provide a benefit to the overall administration of the estate; 3) the costs, including the retention of experts other than attorneys, which would result from the appointment of an additional committee; 4) whether the Plan Participants' interests are already being represented; 5) whether the Plan Participants' position is unique; 6) and the Plan Participants' ability to participate in the case without an official committee. The Court recognizes that these cases are large and

complex. However, the Court finds that appointing an additional committee would not facilitate a more harmonious resolution of the cases but would instead engender discord, litigation and delay. The Court finds that an additional committee would not provide a benefit to the overall administration of the estate. The singular goal of a committee representing the Plan Participants would be to ensure the assumption of the Non-Qualified Plans. The Court does not find it appropriate for the estates to fund litigation regarding the assumption or rejection of a particular contract. The Court finds that the additional costs, especially those associated with the retention of experts, militate against the appointment of an additional committee.[4]  The Court finds that the Plan Participants' interests are already being represented by the Creditors' Committee. To the extent that the Non-Qualified Plans are rejected and the Plan Participants have unsecured claims, they will have the same interest as every other unsecured creditor, maximizing the value of the Debtors' estates. The Court does not find that the Plan Participants' position is so unusual as to warrant the appointment of an additional creditors' committee. The issue is whether the Plan Participants' interests are adequately represented, not whether they are exclusively represented. As indicated by the court in Mirant Americas Energy Marketing, L.P.:

> A rule of decision based purely on whether separate classes of creditors have differing interests would lead to the unnecessary proliferation of committees at an astronomical cost to the bankruptcy estates. Moreover, because creditors would be balkanized into several independent committees, each furthering the interests of only certain groups, the consultation and balancing of interests necessary for a successful negotiation of a reorganization plan would be severely hampered, leading to increased costs and delays.

---

[4] In light of the numerous experts retained by the Debtors and the Creditors' Committee, the Court has little doubt that an additional committee would seek to retain its own experts.

2003 WL 22327118 at *7 (internal quotation marks omitted) (citation omitted). The Creditors' Committee in these cases has a varied membership – including trade creditors, lessors, and note-holders – and is well-positioned to represent the interests of all unsecured creditors including the Plan Participants. Finally, the Court finds that the Plan Participants are able to participate in the cases without an official committee, either through an ad hoc committee or on an individual basis.

### Appointment of an Additional Committee pursuant to 11 U.S.C. § 1114

Alternatively, Movants argue the Court should appoint an additional committee under § 1114(d) which provides:

> The court, upon motion by any party in interest, and after notice and a hearing, shall appoint a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate, to serve as the authorized representative, under this section, of those persons receiving any retiree benefits not covered by a collective bargaining agreement.

11 U.S.C. § 1114(d).

The Committee argues that the obligations under the Non-Qualified Plans are not retiree benefits as set forth in § 1114. The Debtors contend that most of the benefits offered under the Non-Qualified Plans are not § 1114 benefits. To the extent that any payments under the Non-Qualified Plans are § 1114 benefits, the Debtors have not sought to modify or not pay the payments. Movants argue that it is otherwise appropriate for the Court to appoint an additional committee because the Debtors have indicated in their operating reports that the Non-Qualified Plans are subject to compromise. However, the use of such a term does not evidence an intention to modify the Non-Qualified Plans. Such a designation merely reflects that the ultimate disposition of the Non-Qualified Plans will be determined by the terms of a plan of reorganization. While § 1114(d) gives

a court discretion to appoint a committee of retired employees whenever it deems appropriate, courts have been reluctant to appoint such committees in the absence of an attempt by a debtor to modify or terminate § 1114 benefits.  See In re Farmland Indus, Inc., 294 B.R. 903, 920 (Bankr. W.D. Mo. 2003) (holding that no useful purpose would be served by appointing a committee of retirees unless and until the debtor sought to terminate § 1114 benefits pursuant to the requirements of § 1114); In re Agway, Inc., 297 B.R. at 375-376 (holding that it was premature to appoint a retiree committee because the debtor had not made a determination to modify § 1114 benefits).  In the event the Debtors attempt to modify retiree benefits, the Court will consider a motion for an appointment of a § 1114 committee.  At this point in the case, the Court finds such a motion premature. Notwithstanding the foregoing, the Court urges the United States Trustee to consider appointing a Plan Participant to the Creditors' Committee.

### Conclusion

The Court finds that the Plan Participants are adequately represented by the Creditors' Committee and that it need not appoint an additional committee to represent their interests.  To the extent that any of the obligations under the Non-Qualified Plans are retiree benefits as set forth in § 1114, the Court finds that the Debtors have not sought to modify or not pay the payments and that a motion pursuant to § 1114(d) to appoint a committee of retired employees is premature.  The Court will enter a separate Order consistent with these Findings of Fact and Conclusions of Law.

DATED this 6 day of July, 2005 in Jacksonville, Florida.

JERRY A. FUNK
United States Bankruptcy Judge

8

**Copies to:**

David R. McFarlin, Esq.
Adam Ravin, Esq.
Cynthia C. Jackson, Esq.
Dennis F. Dunne, Esq.
John B. Macdonald, Esq.
United States Trustee