UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors.¹ | ) Jointly Administered |
| | ) |

**DEBTORS' OBJECTION TO MOTION OF HERITAGE MINT, LTD. TO SHORTEN
TIME FOR DEBTOR TO ASSUME OR REJECT AN EXECUTORY CONTRACT**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), object to the Motion to Shorten Time for Debtor to Assume or Reject an Executory Contract filed by Heritage Mint, Ltd. (Docket No. 1481) (the "Motion"). In support of this objection, the Debtors respectfully represent as follows:

**Background**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

2. Prior to the Petition Date, Heritage Mint, Ltd. ("Heritage") and Winn-Dixie executed a contract, dated as of June 3, 2004 (the "Contract") for the purchase of "WOW"

---

¹ In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie

dinnerware (the "Goods").  The Contract is a guaranteed sale continuity agreement that requires Heritage to take back all unsold, unopened Goods.

3. On February 21, 2005, the Debtors filed a motion in the New York Court seeking the entry of an order (i) authorizing the Debtors to return goods purchased from vendors prior to the Petition Date, (ii) providing administrative claim status for valid reclamation claims and establishing procedures for the resolution and payment of valid reclamation claims, and (iii) confirming that third parties are stayed or prohibited from interfering with the delivery of goods to the Debtors (the "Reclamation Motion").

4. On April 4, 2005, the New York Court entered the Final Order (A) Establishing Procedures for Treatment of Reclamation Claims and (B) Prohibiting Third Parties From Interfering with Delivery of Goods (Dkt. No. 626, the "Final Reclamation Order").  The Final Reclamation Order granted the Reclamation Motion and established procedures by which the Debtors would file a statement of reclamation (the "Statement of Reclamation") setting forth the extent and basis, if any, upon which the Debtors believe a reclamation claim is not factually or legally valid (other than the Specific Reclamation Defenses[2]) and the amount that shall be considered valid (the "Reconciled Reclamation Claim").  In addition, the Statement of Reclamation was to identify any other defenses that the Debtors chose to reserve, notwithstanding any payment of the Reconciled Reclamation Claim.  The Final Reclamation Order also provided that the procedures set forth in the Final Reclamation Order are the sole and exclusive method for reconciling/resolving reclamation claims.

---

Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2

5.      By order dated May 19, 2005 (the "Extension Order"), this Court extended the deadline to file the Statements of Reclamation to June 30, 2005.

6.      By letter dated February 22, 2005, Heritage asserted a reclamation demand for the return of the Goods in the amount of $285,825.12. Subsequently, Heritage reduced its demand to $227,214.72 (the "Heritage Reclamation Claim")[3]. (Motion ¶ 8.)

7.      After the Petition Date, the Debtors continued to do business with Heritage and paid Heritage $528,016.08 for all Goods received postpetition. The Goods, however, did not sell as anticipated. As a result, the Debtors sought to return Goods valued at approximately $400,000 to Heritage pursuant to the terms of the Contract.

8.      Heritage informed the Debtors that they would not accept any Goods in excess of $227,214.72 -- the amount Heritage asserted as its prepetition reclamation claim. As a result, the Debtors did not return the Goods to Heritage.

9.      On or about May 27, 2005, Heritage filed the Motion. Heritage filed a notice of hearing with respect to the Motion on June 21, 2005.

10.     On June 30, 2005, the Debtors filed and served 489 Statements of Reclamation, including a Statement of Reclamation with respect to the Heritage Reclamation Claim, which includes a numerical reconciliation of and various defenses to the Heritage Reclamation Claim.

---

[2]    The term "Specific Reclamation Defense" means the following defenses: (i) the existence of prior perfected liens on the goods and (ii) the decrease in a claim as a result of the disposition of proceeds from the sale of the goods.

[3]    The Debtors disagree with the amount of the Heritage Reclamation Claim and believe that the claim is significantly less than the amount asserted by Heritage. See paragraph 10 regarding the Heritage Statement of Reclamation.

11. On July 1, 2005, the Debtors filed a Motion for Entry of Order Approving Stipulation Between Debtors and Trade Vendors Regarding Reconciliation and Treatment of Trade Vendors' Reclamation Claims and Establishing Post-Petition Trade Lien Program (Dkt. No. 1965, the "Reclamation/Trade Lien Approval Motion"). By the Reclamation/Trade Lien Approval Motion, the Debtors seek approval of a global settlement with reclamation claimants, such as Heritage Mint, providing, among other things, (i) the establishment of a trade vendor lien program (the "Reclamation/Trade Lien Program") pursuant to which the Debtors will receive favorable postpetition credit terms, (ii) procedures for the calculation and treatment of trade vendors' reclamation claims for those trade vendors that elect to participate in the Reclamation Trade Lien Program, and (iii) the ability of a vendor to opt into the Reclamation/Trade Lien Program. Finally, the global settlement contains a provision that a reclamation vendor cannot settle its claim on more favorable terms than set forth in the stipulation.

## **Objection**

12. By its Motion, Heritage seeks to shorten the Debtors' time to assume or reject its executory contract for the purchase and sale of Goods under section 365(d)(2) of the Bankruptcy Code. Heritage's Motion should be denied because: (i) Heritage has not established a compelling reason why the time for the Debtors to decide whether to assume or reject the Contract should be shortened, (ii) requiring the Debtors to assume or reject the Contract is premature and is not in the best interests of the Debtors' estates and creditors, and, in the alternative, (iii) the reclamation procedures and other provisions of the Final Reclamation Order are the exclusive method to reconcile Heritage's reclamation claim.

(a)     Executory Contract

13.     Bankruptcy Code section 365(d)(2) provides that "the trustee may assume or reject an executory contract . . . <u>at any time before the confirmation of a plan</u>." 11 U.S.C § 365(d)(2) (emphasis added).  However, "the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." <u>Id</u>.

14.     "The debtor must be given a reasonable time in which to make the decision to assume or reject an executory contract." <u>Braniff, Inc. v. GPA Group PLC</u>, 118 B.R. 819, 845 (Bankr. M.D. Fla. 1990).  What constitutes a reasonable time "is left to the sound discretion of the bankruptcy court in light of the circumstances of the case." <u>Id.</u>  Indeed, it has been noted that "'[p]ermitting the debtor to make its decision as late as the plan confirmation date enables the debtor to carefully evaluate the possible benefits and burdens of an [executory contract].  It is vitally important to all interested parties that the debtor make a prudent assumption or rejection decision….'" <u>In re Physician Health Corp.</u>, 262 B.R. 290, 292 (Bankr. D. Del. 2001) (alterations in original) (<u>quoting</u> <u>In re Wheeling-Pittsburgh Steel Corp.</u>, 54 B.R. 385, 388 (Bankr. W.D. Pa. 1985)).  In evaluating a motion to compel early assumption or rejection, "the court must balance the interests of the contracting party against the interests of the debtor and its estate." <u>Physician Health Corp.</u>, 262 B.R. at 292.

15.     A creditor must have a compelling reason for the court to shorten the time for debtors to decide whether to assume or reject an executory contract. <u>In re Physician Health Corp.</u>, 262 B.R. at 295 (holding that other party to executory management agreement failed to establish any compelling reason for requiring debtors, only five months into attempted reorganization, to decide on expedited basis whether to assume or reject contract, where debtors

were performing under agreement, and there was no evidence that debtors were being dilatory or that other party was being prejudiced by debtors' delay).  Here, Heritage has not provided a compelling reason why the time for the Debtors to decide whether to assume or reject the Contract should be shortened.  Simply put, the issue between the parties is that the Debtors want to return approximately $400,000 in unsold Goods and Heritage does not want to accept their return.  Notwithstanding the acknowledgment by Heritage that it is obligated under the terms of the Contract to credit the Debtors' account with the value of all Goods they elected to return (Motion ¶¶ 20, 27),  Heritage asserts, among other things, that immediate assumption or rejection of the Contract is (i) necessary because "[it] believes it <u>may</u> currently be estopped by the automatic stay of 11 U.S.C. § 362 from receiving returns beyond its reclamation claim, and that both the estate and the post-petition lenders <u>may</u> assert claims to the [p]ost-petition [d]eliveries" (Motion ¶ 21) (emphasis added), and (ii) required "before Winn-Dixie begins returning goods, so that Heritage knows what rights and duties it has with respect to the returns" (Motion ¶ 30).  Moreover, Heritage asserts that it believes that it "will suffer damages beyond the compensation available under the Bankruptcy Code to the extent that Winn-Dixie creates avoidable transfers by returning goods, and forcing Heritage to 'repay' Winn-Dixie for merchandise it never paid for in the first place."  (Motion at 8.)

       16.     Although Heritage complains about its perceived uncertainty -- and there is no uncertainty -- regarding the effect of receiving the Goods that the Debtors seek to return, the Motion does not -- and cannot -- allege that Heritage has been deprived of its rights under the Contract.  It appears that Heritage believes that third parties may have claims against the Goods in question and is now simply dissatisfied with the ramifications of the potential interests of third

parties in respect of the Goods that the Debtors seek to return. This is not a compelling reason to require the Debtors to prematurely assume or reject the Contract.

17. The denial of the Motion will not prejudice Heritage. Heritage's arguments that it <u>may</u> be prevented by the automatic stay from accepting returns and that it faces the possibility of voidable transfers are contrary to the terms of the Contract that permit returns to be made by the Debtors. Until the Contract is rejected, the Debtors are entitled to return the Goods for credit pursuant to the terms of the Contract. Such voluntary returns in accordance with the terms of the Contract in and of themselves do not violate the automatic stay. Moreover, the Debtors are entitled to return the Goods pursuant to the Final Reclamation Order which provides as follows:

> The Debtors may at any point in these Reclamation Procedures satisfy in full any Reclamation Claim or Allowed Reclamation Claim by making the Goods at issue available for pick-up by the Vendor or Dissenting Vendor to the extent allowed under Applicable Law, in accordance with ordinary prepetition practices and procedures for return of goods applicable between the Vendor and Debtors. (Final Reclamation Order at 8.)

Instead of accepting the return of the Goods, Heritage requests that the Debtors assume or reject the Contract so that if the Contract is assumed, Heritage is placed in a better position vis-a-vis the Debtors' other creditors. At this early stage of these complex cases, the Debtors should not have to determine whether to assume or reject the Contract and provide one vendor better treatment than the other vendors. Moreover, Heritage will not be harmed by allowing the Debtors to return the Goods under the terms of the Contract without having to assume or reject the Contract because the Debtors now understand that Heritage already has a purchaser for the Goods.

18. Furthermore, the Debtors have thousands of contracts with their many vendors, are currently in the process of evaluating and analyzing their businesses, and are making

7

progress in deciding which contracts to keep and which to reject. If the Motion is granted, numerous other vendors may bring similar motions seeking to shorten the time for the Debtors to assume or reject their contracts before the Debtors are ready to make that determination. Requiring the Debtors to assume or reject the Contract at this time would be premature, and not in the best interests of the Debtors' estates and creditors.

(b)     <u>Reclamation Procedures</u>

19.     A second reason why the Motion should be denied is because it seeks relief in direct contradiction of the reclamation procedures provided by the Final Reclamation Order. The purpose of the Final Reclamation Order was to establish a court-approved process pursuant to which reclamation claims would be resolved without the exercise of self help remedies and the commencement of extraneous and unnecessary litigation. Heritage's Motion ignores the Final Reclamation Order in that it seeks to circumvent the reclamation reconciliation process by requiring the Debtors to assume or reject the Contract. That decision, however, is not necessary to resolve the Heritage Reclamation Claim. This claim is Heritage's only claim against the Debtors. The reclamation procedures and other provisions of the Final Reclamation Order are the sole and exclusive court-approved method for the resolution of reclamation claims (without first obtaining relief from the Final Reclamation Order). Here, the Debtors have served Heritage with the Statement of Reclamation pursuant to the terms of the Final Reclamation Order. Pursuant to the reconciliation process set forth in the Final Reclamation Order, reclamation vendors are required to return the Statement of Reclamation indicating their assent or dissent with respect to the Reconciled Reclamation Claim within 75 days after the date of the Statement of Reclamation (i.e. September 13, 2005)[4]. If Heritage disagrees with its Statement of

---

[4]     The details of the reconciliation process are set forth in the Final Reclamation Order.

Reclamation, it should disagree in accordance with the terms of the Final Reclamation Order. The Motion should be denied because it seeks to circumvent the reclamation procedures set forth in the Final Reclamation Order.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (i) deny Heritage's Motion and (ii) grant such other and further relief as the Court deems just and proper.

Dated: July 7, 2005

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | SMITH HULSEY & BUSEY |
|---|---|
| By   */s/ D.J. Baker*  <br>         D.J. Baker<br>         Sally McDonald Henry<br>         Rosalie Gray<br><br>         Four Times Square<br>         New York, New York 10036<br>         (212) 735-3000<br>         (917) 777-2150 (facsimile)<br>         djbaker@skadden.com<br><br>         Co-Attorneys for Debtors | By   */s/ Cynthia C. Jackson*  <br>         Stephen D. Busey<br>         James H. Post<br>         Cynthia C. Jackson<br><br>         225 Water Street, Suite 1800<br>         Jacksonville, Florida  32202<br>         (904) 359-7700<br>         (904) 359-7708 (facsimile)<br>         cjackson@smithhulsey.com<br><br>         Co-Attorneys for Debtor |