**Hearing Date August 18, 2005**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors. [1] | ) Jointly Administered |
| | ) |

**MOTION FOR DETERMINATION OF OLD DIXIE PRODUCE AND PACKAGING,
INC.'S CLAIM UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and

debtors-in-possession  (collectively, the "Debtors"), submit this Motion for Determination (the

"Motion") of the objection (the "Objection") filed by Old Dixie Produce & Packaging, Inc. ("Old

Dixie") to the Debtors' Report Regarding Claims Under the Perishable Agricultural Commodities

Act (the "PACA Report").  In support of this Motion, the Debtors respectfully state as follows:

<u>**Introduction**</u>

1.   Under the PACA Order, dated March 22, 2005, the Debtors put in place a program

for resolving PACA (Perishable Agricultural Commodities Act) claims.  With the exception of

one claim, the Debtors have resolved, or are in the process of resolving, each of the 127 separate

PACA claims in these cases, resulting in payments of approximately $30 million to the various

PACA claimants.  The one unresolved claim is that of Old Dixie, in which the claimant seeks

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related
cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep
South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers,
Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc.,
Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown
Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand
Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-
Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and
Winn-Dixie Supermarkets, Inc.

PACA protection for invoices totaling approximately $240,000.  Of that amount, the Debtors

have paid approximately $53,000 in the ordinary course of the Debtors' business.  In addition, on

June 27, 2005, the Debtors paid Old Dixie $14,162.47 as its only preserved PACA Claim.  The

Debtors deemed the remaining amount of approximately $169,000 (the "Contested Amount") to

be ineligible under PACA because Old Dixie's invoices provided credit terms of 45 days, well

beyond the 30 day maximum term allowed by PACA.

     2.  Simply put, under PACA and the rules and regulations implementing PACA, the

Contested Amount is not eligible for PACA trust protection because Old Dixie's invoices

provided credit terms of 45 days.  To the contrary, the PACA regulations state unequivocally

that the parties cannot extend payment terms beyond 30 days and still qualify for PACA trust

protection.   Case law is equally clear.  The only two cases that have directly addressed the issue

of whether invoices that allow payment terms beyond 30 days are entitled to PACA protection –

cases which the Objection fails to cite, let alone distinguish -- have denied any such protection.

     3.  Old Dixie ignores this well-established authority and, instead, argues that because

there was no agreement prior to the transaction to extend payment terms, Old Dixie properly

preserved its PACA trust rights through the invoice method of notice.  That is not the issue in

this case.  The issue is whether or not Old Dixie can waive its PACA trust rights by wording on

its invoices.  As the cases below reflect, regardless of whether there is a pre-existing agreement,

courts have routinely denied PACA protection when payment terms extend beyond 30 days.

This rule has been applied to any post-transaction agreement which extends payment terms

beyond 30 days, including invoices.

**A.**     **The Plain Language of PACA and its Regulations Establishes an Unconditional 30
Day Credit Limit To PACA Trust Protection.**

4.   PACA requires all covered entities to make "full payment promptly" for all purchases of perishable agricultural commodities received in interstate commence. 7 U.S.C. § 499b(4). "Full payment promptly" has been defined to require payment "within 10 days."  However, PACA also allows the parties to extend payment terms as long as such terms do not exceed 30 days.

> "the *maximum time* for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is *30 days* after receipt and acceptance of the commodities as defined in §  46.2(dd) and paragraph (a)(1) of this section."

7 C.F.R. § 46.46(e)(2) (emphasis added).  This limitation exists because the statute is intended to protect only those produce sellers making short-term credit arrangements.  As noted by the House Committee in connection with enacting PACA, "the committee does not intend the trust to apply to any credit transaction that extends beyond a reasonable period."  H.R. Rep. No. 98-543 at 7 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 410.

5.   Old Dixie's invoices, which provide credit terms of 45 days, constitute a written agreement between the parties in which Old Dixie agreed to extend payment terms beyond the 30 day maximum permitted by PACA.  The invoices reflect a voluntary election by Old Dixie to waive its PACA rights.  It would be wrong as a matter of both contract law and PACA law to ignore that election.[2]

**B.    Every Court Which Has Addressed The Issue Has Upheld the 30 Day Credit Limit on PACA Trust Protection.**

---

[2]    The PACA statute clearly contemplates that invoices may be used by the parties to create or modify trust benefits.  For example, C.F.R. § 46.46(f) states that the parties can use any type of writing, including "their invoice or any other billing statement to preserve trust benefits."   Moreover, the invoices in this instance were never contested by either party and were contained in the records of both Old Dixie and Winn-Dixie, thereby constituting binding contracts under Florida law. Fla. Stat. § 672.207.

6.   Not only does Old Dixie's Objection reject the plain meaning and text of the PACA regulations without citing any supporting case law, it also ignores the two main cases addressing this very issue.  In Logan v. Oregon Potato Company, 2004 WL 2851949 (D. Or. Dec. 13, 2004), the District Court in Oregon faced an identical situation where the PACA supplier provided potatoes pursuant to invoices that allowed for payment beyond 30 days.  As in the case here, the PACA vendor argued that, because there was no pre-transaction agreement as to payment terms, the court should simply ignore the invoices which allowed payment beyond 30 days.  The court disagreed and held that the extended payment terms on the invoices abolished the vendor's PACA trust rights.  The court also noted that "PACA provides valuable trust benefits to sellers of commodities who seek prompt payment from their buyers. It is not too onerous to require that sellers strictly comply with the notice deadline set forth in PACA and in the regulations implementing PACA in exchange for those valuable benefits."  Id. at *30.

7.   The Logan court relied heavily on the Sixth Circuit decision in Overton v. Distributors, Inc. v. Heritage Bank, 340 F.3d 361 (6th Cir. 2002).  In Overton, the parties had a pre-transaction agreement setting forth thirty day payment terms.  After a certain period of time, the PACA vendor's invoices deviated from that agreement and stated that payment was due 10 days from the end of the month, which effectively allowed for up to 40 day terms.  The court in Overton focused on the invoice language, stating "Congress's purpose in enacting PACA was to protect sellers delivering their produce on essentially cash terms, not to provide protection to sellers who are willing to extend payment terms beyond the statutory maximum."  As such, the court held that the PACA vendor's "40-day maximum payment term failed to preserve its trust benefits under PACA."  Id. at 368.

4

8.    There is additional authority holding that any written agreement to extend payment terms beyond 30 days, whether through a pre-transaction or post-transaction agreement, results in the vendor waiving its PACA trust rights.  For example, in Patterson Frozen Foods, Inc. v. Crown Foods International, Inc., 307 F.3d 666 (7th Cir. 2002), the court stated that "if a supplier does agree to a payment term of greater than 30 days, then the manner in which a supplier agrees is dispositive concerning the issue of whether the supplier has forfeited its PACA rights. A written agreement for terms of greater than 30 days renders the supplier ineligible for the PACA trust rights."  Id. at 671.  Although Patterson involved a post-default agreement based on an exchange of emails, there is no reason to limit the holding to post-default agreements.  The court in Patterson held that nothing in either the PACA statute or regulation states that a seller may either invoke or abrogate its trust rights only by formal contract.  Id

9.    A similar conclusion was reached in American Banana Co. v. Republic National Bank of New York, 362 F.3d 33 (2d Cir. 2004).  In American Banana, after an exhaustive review of the legislative history on PACA, the Second Circuit Court of Appeals concluded that a post-transaction agreement "extending payment terms beyond thirty days is no different than that of a pre-transaction agreement doing the same:  both are inconsistent with the prompt-payment objective, which is fundamental to PACA."  Id. at 44.   The court concluded that Congress intended that trust protection would not apply to "any credit transaction that extends beyond a reasonable period" which is defined under the PACA regulations to be 30 days.  Id. at 45.  See also In re Lombardo Fruit, 12 F.3d 806, 809 (8th Cir. 1994) (an "agreement to extend payment terms ... beyond the thirty-day maximum allowed by the regulations deprives [the supplier] of [PACA] trust protection"); Greg Orchards & Produce, Inc. v. Roncone, 180 F.3d 888, 892 (7th Cir. 199) (post-default agreement to extend credit terms beyond 30 days makes sellers ineligible

for PACA trust protection).  In all of these cases, the PACA regulations were used to deny

PACA protection based on credit terms that went beyond 30 days, regardless of whether there

was a pre-transaction agreement.

10.  Finally, Old Dixie's reliance on <u>Stowe Potato Sales, Inc. v. Terry's. Inc.</u>, 224 B.R.

329, 333 (W. D. Vir. 1998) to ignore its invoice terms is misplaced.  <u>Stowe</u> is completely

inapposite in that the court focused not on whether the vendor waived its PACA trust rights but

on whether the invoice language properly preserved such rights by providing proper notice.  In

<u>Stowe</u>, the invoice stated that payment was due within 30 days and that interest accrues beyond

that date.  The debtor argued that because the finance language contemplated payment beyond 30

days, the invoices allowed payment terms beyond 30 days and therefore did not preserve the

vendor's PACA trust rights.  The court disagreed with the debtor and held that the finance

language did not contemplate payment beyond 30 days and therefore the vendor had provided

sufficient notice to preserve its PACA trust rights.  Those facts are simply irrelevant here where

there is no issue as to whether the vendor extended payment terms beyond 30 days.  Moreover,

Old Dixie confuses the issue of preserving PACA trust rights by providing proper notice with

waiver of those rights.  In other words, the issue is not as in <u>Stowe</u>, whether the invoice language

preserved Old Dixie's PACA trust rights, but whether those invoices resulted in a voluntary

waiver of those rights.  The express language that Old Dixie included on its invoices – payment

due in 45 days – clearly resulted in a voluntary waiver of its PACA trust rights.[3]

---

[3]  Old Dixie's reliance on <u>C.H. Robinson Co. v. B.H. Produce Co., Inc.</u>, 723 F.Supp. 785
(N.D.Ga.1989) is totally misplaced.  In <u>C.H. Robinson</u>, the court ruled that the PACA
seller could not rely on its invoices to preserve its PACA rights, rendering its PACA
claim untimely.  It is significant to note that <u>C.H. Robinson</u> predates the amendments to
PACA that permit vendors to not only preserve their PACA rights by a written agreement
(the old rule) but also by placing the proper legend on their invoices (the invoice method
of notice).  It is therefore unclear how <u>C.H. Robinson</u> can stand for the proposition cited

**<u>Notice</u>**

11. The Motion has been sent by first-class mail to (i) the Office of the United States for the Middle District of Florida, Jacksonville Division, (ii) counsel for the agent for the Debtors' secured lenders, (iii) counsel for the Creditors' Committee, (iv) all parties on the Master Service List, (v) all PACA claimants whose PACA claims are listed in the PACA Report and who are not represented by counsel, and (vi) by electronic mail to all attorneys who have entered an appearance in this case on behalf of any PACA claimant.

  Dated:        July 7, 2005

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By   _/s/ D.J Baker_           By   _/s/ C. Jackson_
        D. J. Baker                   Stephen D. Busey
        Sally McDonald Henry          James H. Post
        Thomas J. Matz                Cynthia C. Jackson,
        Sina Toussi                   Florida Bar Number 498882
Four Times Square               225 Water Street, Suite 1800
New York, New York 10036        Jacksonville, Florida  32202
(212) 735-3000                  (904) 359-7700
(212) 735-2000 (facsimile)      (904) 359-7708 (facsimile)

Co-Attorneys for Debtors        Co-Attorneys for Debtors

---

by Old Dixie, especially in light of the cases discussed above in which the PACA regulations were applied to post-transaction agreements, including invoices.