UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

In re | Case No. 05-03817

| (Jointly Administered)

WINN DIXIE STORES, INC., et al. |

Debtors. | Chapter 11

LANDLORD'S CURE AMOUNT STATEMENT
AND OBJECTION
FOR STORE LOCATED AT
RIDGE PLAZA, NEW PORT RICHEY, FLORIDA (STORE #752)

THE RONALD BENDERSON 1995 TRUST and THE BENDERSON 85-1 TRUST,

together known as BUFFALO - MARINE ASSOCIATES (hereinafter, the "LANDLORD"),

submits the following Landlord's Cure Amount Statement for the Winn Dixie Store located at

Ridge Plaza, New Port Richey, Florida  (Store #752):

1.     Debtor is LANDLORD's tenant pursuant to a certain Lease dated April 15, 1988

(hereinafter, the "Lease").  Attached hereto and made a part hereof as Exhibit A is a copy of the

Lease (including all amendments, supplements and modifications thereto, if any).

2.     Pursuant to the Leases, the Debtor is obligated to pay monthly base rent (with

scheduled rent increases, if any) in accordance with the amounts set forth in the Lease.  See

Exhibit A, page 2.

3.    In addition to base rent, Debtor is obligated to pay certain additional ancillary rent for percentage rent, common area maintenance ("CAM"), real estate taxes, utilities (including telephone, electricity, water, gas and other utilities) and HVAC (with a cap not to exceed $500 in each instance). See Exhibit A, Lease, page 2 - §1 (percentage rent), page 6 - §10 (utilities), page 7 - §11 (HVAC), page 15 - §31 (CAM) and page 16 - §37 (taxes).

4.    The Debtor owes the sum of $2,641.57 for (as applicable) unpaid rent, percentage rent, real estate taxes, utilities, CAM payments and HVAC charges for its Ridge Plaza, New Port Richey, Florida location (Store #752). This differs from the amount of $-0- as shown on Debtor's Exhibit F - Schedule of Cure Amounts to its Motion for Order (A) Authorizing the Sale of Assets Free and Clear of Liens, Claims and Interests and Exempt from Taxes, (B) Authorizing the Assumption and Assignment of Leases and Contracts and (C) Granting Related Relief, dated July 1, 2005. It is unclear how Debtor arrives at its scheduled cure amount of $-0-.

5.    Attached hereto as Schedule I is a breakdown of the foregoing amounts with supporting documentation, as the total cure payment due through July 31, 2005 (subject to unbilled amounts as explained below).

6.    **Please note that the sales reporting period runs from July 1 through June 30; therefore the percentage rent calculation for July 1, 2004 through June 30, 2005 cannot yet be calculated until Debtor submits its sales report. Any percentage rent billing will not be generated until after receipt of sales reports from Debtor.**

7.    **LANDLORD reserves the right to invoice and collect payment from Debtor and/or its assignees for these and all other accruing charges not yet billed in the ordinary course of business.**

Dated:  July 8, 2005

Respectfully submitted,

Susan M. Hassinger, Esq.
THE RONALD BENDERSON 1995 TRUST and
THE BENDERSON 85-1 TRUST, together known
as BUFFALO - MARINE ASSOCIATES
Office and P.O. Address
570 Delaware Avenue
Buffalo, New York  14202
716/878-9364

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Landlord's Cure Amount Statement and Objection For Store Located at Ridge Plaza, New Port Richey, Florida (Store #752) was placed with an overnight carrier, postage prepaid, for delivery on the following business day, this 8th day of July, 2005, and addressed to:


D. J. Baker, Esq., Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square, New York, New York  10036

Cynthia C. Jackson, Esq., Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida  32202

SUSAN M. HASSINGER, ESQ.
THE RONALD BENDERSON 1995 TRUST and
THE BENDERSON 85-1 TRUST, together known
as BUFFALO - MARINE ASSOCIATES
Office and P.O. Address
570 Delaware Avenue
Buffalo, New York  14202
716/878-9364

# STATEMENT

```
                                                Winn Dixie
                                     RE - 2048  Ridge Plaza
                                                8601 Little Road @ Ridge Road
                                                New Port Richey
                                                FL 34654-
```

Remit to:
```
┌─────────────────────────────────────────────────────┐
│ Buffalo-Marine Associates                            │
│ Braden River Post Office, PO Box 21199               │
│ Bradenton, FL 34204-1199                             │
└─────────────────────────────────────────────────────┘
```

Winn-Dixie Stores, Inc.
Winn Dixie #752
Attn: Property Manager-Chrissy Norris
1141 SW 12th Avenue
Pompano Beach, FL 33069

| | |
|---|---|
| PROPERTY NUMBER | 2048 |
| UNIT NUMBER | 015 |
| STATEMENT DATE | 07/08/05 |
| ACCOUNT NUMBER | 00004786 |
| LEASE NUMBER | 00045280 |

Your Account with us reflects the following amount due.
Please mail your payment as soon as possible.   Thank You.
Address questions to your Account Representative,   Sharon L. Alcorn
at (941)360-7237.

| | Date | Ty | Document Number | Remark | Invoice Amount | Open Balance |
|---|---|---|---|---|---|---|
| A | 01/19/05 | RN | 4109011 001 | Replace HVAC Compressors | 500.00 | 500.00 |
| B | 03/02/05 | RN | 4135264 001 | 2004 REAL ESTATE TAX | 2,141.57 | 2,141.57 |

                                        Balance Due     2,641.57

```
***          FOR PROPER APPLICATION OF PAYMENT TO YOUR ACCOUNT:          ***
*** YOU MUST REFERENCE DOCUMENT NUMBER AND LEASE NUMBER WITH YOUR REMITTANCE. ***
```

Note - Please remember to forward your payment to our new P.O. Box noted
       above.  Please make sure to allow for sufficient mailing time
       to assure timely application of your payment.

## SCHEDULE I

| Current | 31 - 60 | 61 - 90 | 91 - 120 | Over 120 |
|---|---|---|---|---|
| | | | | 2,641.57 |



# BENDERSON
# DEVELOPMENT
# COMPANY, INC.

570 Delaware Ave. Buffalo, N.Y. 14202
(716) 886-0211 · Fax (716) 886-2269

Remit to - Buffalo-Marine Associates
Braden River Post Office, PO Box 21199
Bradenton, FL 34204-1199

Winn-Dixie Stores, Inc.                    **Invoice Date   Invoice No**
Winn Dixie #752                                01/19/05      04109011
Attn: Area Property Manager
5050 Edgewood Court                         **Account No.**
Jacksonville, FL 32254-3699                    00045280

                                           RE - 2048   UNIT - 015
                                           Ridge Plaza

PLEASE DETACH AND RETURN THIS PORTION WITH YOUR REMITTANCE

4109011-001   Replace HVAC Compressors           500.00
              Total Amount Due                    500.00

Note - Please remember to forward your payment to our new P.O. Box noted
       above.  Please make sure to allow for sufficient mailing time
       to assure timely application of your payment.

Please address any questions regarding this invoice to:
Sharon L. Alcorn at (716)878-9465.

THIS STATEMENT SHOWS CHARGES WHICH ARE DUE ACCORDING TO THE TERMS OF YOUR LEASE, RENTS ARE DUE AND PAYABLE ON THE FIRST OF THE MONTH
AND ALL OTHER CHARGES BILLED ARE DUE AND PAYABLE UNDER THE TERMS OF YOUR LEASE.

## SCHEDULE I(A) – 5 pages



04109011

# BENDERSON DEVELOPMENT COMPANY INC.
## MANUAL INVOICE FORM

SEND INVOICE:  ☑ YES   ☐ NO

| | |
|---|---|
| ACTION CODE | 'A' |
| INVOICE AMOUNT | $500.00 |
| TENANT NAME | Winn Dixie # 752 |
| LEASE NUMBER | 45280 |
| TENANT NUMBER (IF NON TENANT) | 4786 |
| PROPERTY NUMBER | 2048 |
| PAYMENT TERMS | |

### TO BE COMPLETED BY BILLING DEPT

INVOICE #: 4109011   INVOICE DATE: 1/19/05   BATCH NUMBER: 744693

| GROSS AMOUNT | BILL CODE (G/L CODE IF NON TENANT) | DESCRIPTION |
|---|---|---|
| $$500.00 | HV | Replace HVAC Compressors |
| | | |
| $$500.00 | | |

INVOICE TEXT

EXPLANATION:

| | | | |
|---|---|---|---|
| REQUESTED BY: | GCD | DATE: | 12/16/04 |
| APPROVED BY: | | DATE: | 1/10/05 |
| ENTERED BY: | | DATE: | 1/13/05 |

DOCUMENT2
REVISED: 0/0/00

24 Hour Service



**Gulf Coast**
Air Conditioning & Refrigeration, Inc.
#1 in Quality and Excellence
20 Years of Experience

N⍤  1312

State Certified
Lic. No. CAC058208

Commercial and Residential
Installation and Service

7460 E. Country Highlands Dr. • Floral City, FL 34436
Tel. (352) 860-1535 • Fax (352) 860-1830

| Make & Model | | Serial No. |
|---|---|---|
| | | PO# FP-108688 |

Benderson Development Co., Inc.
ATTN: ACCOUNTS PAYABLE (TERMS: NET 0)
8441 Cooper Creek Blvd.
University Park, Fl.          ZIP 34201

Date 12/8/04

Phone _____

Customer
P.O. No. FP-108688

Service ☐    Inspection ☐
Partial Bill ☐   Complete Bill ☒

**Complaint**

**Report**   - Replaced 2 Copeland compressors (3D53-1500-TFC) for
main sales area unit a/c. Includes crane, freon,
recovery, driers, sight glass and labor.

CHANGE ORDER
2048    $ 5000.00

WINN DIXIE #752
45280
4286

BPL HVAC
Compressors

| MATERIAL | Selling Price |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| | | | | TOTAL MAT'L | | |
|---|---|---|---|---|---|---|
| | | | | FSST | | |
| | Hrs. @ Straight Time | Hrs. Travel | | | | |
| | Hrs. @ OT | Hrs. Delivery | | | | |
| | Customer's Acceptance | | | | | |
| | | | | L & M | | |
| | Date | | | | | |
| Service Mechanic | Job No. | | | TOTAL | 8,400 | 00 |

RG PRINTING CO., Inverness, FL (352) 726-2026

Page 1 of 1

# PURCHASE ORDER

FP - 108688

AKM

| | |
|---|---|
| INVOICE TO: **Benderson Development Co., Inc.** | JOB: HVAC Repairs |
| ATTN: ACCOUNTS PAYABLE | LOCATION: Ridge Plaza |
| 8441 Cooper Creek Blvd. | 8601 Little Road @ Ridge Road |
| University Park, FL 34201 | SHIP TO: New Port Richey, FL 34654- |

| P.# (941) 359-8303 F.# (941) 359-1836 | PROPERTY/JOB# | 2048 | JOB FILE / ALPHA FILE |
|---|---|---|---|

| VENDOR | CONTACT | | |
|---|---|---|---|
| Gulf Coast Air Conditioning & | NAME: | | |
| Refrigeration, Inc. | PHONE#: | (352) | 860-1535 |
| 7460 E. Country Highlands Drive | FAX#: | (352) | 860-1830 |
| Floral City, FL 34436 | | | |
| VENDOR #: 100325 | FAX DATE: | | |

| P.O. DATE | TERMS | SHIP VIA | FOB POINT | START DATE | COMPLETION DATE |
|---|---|---|---|---|---|
| 11/30/04 | | | | | |

## SCOPE OF WORK

| | |
|---|---|
| Replacement of 2 copeland compressors (3D53-1500-TFC) for main sales area a/c unit. Price includes crane, freon, freon recovery, driers, new sight glass and labor. | 8,400.00 |

SALES TAX (INCL ) *

| **CONTRACTOR SIGNATURE: | BENDERSON SIGNATURE: | TOTAL $ | 8,400.00 |
|---|---|---|---|

*BY SIGNING THIS DOCUMENT CONTRACTOR AGREES TO THE SCOPE OF WORK STATED ABOVE & THE TERMS OF THE AGREEMENT

| SALES TAX | I.D.A NO TAXES | C.I. MATERIAL ONLY | TAXABLE LABOR & MATERIAL ONLY | | SUPERVISOR | ACCOUNTING | EXEC APPROVAL |
|---|---|---|---|---|---|---|---|
| AWARDED | BID ATTACH BID SUMMARY | UNIT ATTACH UNIT BREAKDOWN | T&M ATTACH RATE AGREEMENT | COST PLUS ATTACH BID SUMMARY | | | |
| REASON | L.W. LESSORS WORK | B.W. BILLABLE WORK | F.C. FIELD CHANGE | D.D. DRAWING DEFICIENCY | | | |
| CODING | NO/CB | CAM | DIRECT CB | VENDOR CB | | | APPROVALS NEEDED |

*SALES TAX MUST APPEAR SEPARATELY ON TAXABLE INVOICES

PARTIAL C/B TO LEASER 45280 of $500^{00}

Contractor agrees to defend, indemnify, hold harmless Benderson Development Company, Inc. and all of its related or affiliated corporations, subsidiaries, entities, companies, trusts and/or partnerships and their owned, controlled, associated, affiliated and subsidiary companies, corporations and/or partnerships and the respective agents, consultants, principals, partners, servants, officers, stockholders, directors, employees and trustees ("Benderson") against all claims for bodily injury or property damage arising out of or in any way connected with the contractor's work which is the subject of this Purchase Order. Contractor agrees to name Benderson, as defined above, as additional insured on its comprehensive general liability insurance policy and also agrees that its comprehensive general liability insurance policy shall be endorsed to reflect that it is primary for Benderson and that its limits will be exhausted before any other insurance is to apply and shall contain contractual obligations and completed operations endorsements and shall have limits of at least $1,000,000.00. Contractor will provide Benderson with both a certificate of insurance indicating above coverage and a copy of the policy with the additional insured endorsement prior to commencing the work herein.

Oct 28 04 07:38p    DANNY PEEPLES         352-860-1830        p.1

# Proposal

Page No. _____ of _____ Pages

### Gulf Coast
*Air Conditioning & Refrigeration, Inc.*
*Excellence Is Our Business*
*20 Years of Experience - 24 hr. Service*

State Certified
Lic. No. CAC058208

*Commercial and Residential*
*Installation and Service*

7460 E. Country Highlands Dr.
Floral City, FL 34436
Tel. (352) 860-1535
Fax (352) 860-1830

| PROPOSAL SUBMITTED TO | PHONE | DATE |
|---|---|---|
| Benderson Development ATT:Allison | 941-374-9453 | 10/28/04 |

| STREET | JOB NAME |
|---|---|
|  | WINN DIXIE |

| CITY, STATE AND ZIP CODE | JOB LOCATION |
|---|---|
|  | New Port Richey |

| ARCHITECT | DATE OF PLANS | JOB PHONE |
|---|---|---|

We hereby submit specifications and estimates for:

Replacement of two 15hp Copeland compressors (3D53-1500-TFC)
on main sales area a/c unit. Price includes crane, freon,
freon recovery, driers, new sight glass and labor.

**We Propose** hereby to furnish material and labor — complete in accordance with above specifications, for the sum of:

Eight thousand, four hundred & no/100  ------    dollars ($ 8,400.00    ).

Payment to be made as follows:

In full upon job completion.

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized
Signature _____

Note: This proposal may be
withdrawn by us if not accepted within _____ 30 _____ days.

### Acceptance of Proposal
— The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Date of Acceptance: 11/22/04

Signature _____

Signature _____



# BENDERSON DEVELOPMENT COMPANY, INC.

570 Delaware Ave. Buffalo, N.Y. 14202
(716) 886-0211 · Fax (716) 886-2269

Remit to - Buffalo-Marine Associates
Braden River Post Office, PO Box 21199
Bradenton, FL 34204-1199

Winn-Dixie Stores, Inc.
Winn Dixie #752
Attn: Area Property Manager
5050 Edgewood Court
Jacksonville, FL 32254-3699

| Invoice Date | Invoice No |
|---|---|
| 03/02/05 | 04135264 |

Account No.
00045280

RE - 2048    UNIT - 015
Ridge Plaza

PLEASE DETACH AND RETURN THIS PORTION WITH YOUR REMITTANCE

| | | |
|---|---|---|
| 4135264-001 | 2004 REAL ESTATE TAX | 2,141.57 |
| | Total Amount Due | 2,141.57 |

Note - Please remember to forward your payment to our new P.O. Box noted
above.  Please make sure to allow for sufficient mailing time
to assure timely application of your payment.

Please address any questions regarding this invoice to:
Sharon L. Alcorn at (941)359-8303.

THIS STATEMENT SHOWS CHARGES WHICH ARE DUE ACCORDING TO THE TERMS OF YOUR LEASE, RENTS ARE DUE AND PAYABLE ON THE FIRST OF THE MONTH
AND ALL OTHER CHARGES BILLED ARE DUE AND PAYABLE UNDER THE TERMS OF YOUR LEASE.

## SCHEDULE I(B) – 5 pages



04135264

INVOICE #   4135264

Winn Dixie                                    ACCOUNT #     45280

                       2004 REAL ESTATE TAX

                       PROPERTY #    2048
                       8601 Little Road @ Ridge Road
                       New Port Richey, FL


TAX AMOUNT(s):
              #SBL    26-25-16-0000-00500-0000          157,042.48
              #SBL    26-25-16-0010-02000-0020               41.95
              #SBL    B-00528-500                            63.08
                                                    ------------------

              TOTAL TAXES ...................     157,147.51

              LESS: TAX BASE (if applicable)     149,180.30-
                                                    ------------------

              NET TAXES FOR BILLING .........       7,967.21

              X PRORATED SHARE ..............         26.8798%
                                                    ------------------

              YOUR SHARE OF TAXES ...........       2,141.57

              ESCROW BILLING FOR PERIOD .....           0.00

              BALANCE FROM PRIOR BILLINGS ...           0.00
                                                    ------------------

              TOTAL REAL ESTATE TAX DUE           2,141.57
                                                 ==================


       PLEASE REFERENCE ACCOUNT #    45280    WITH YOUR REMITTANCE

RS0005385

# PASCO COUNTY FLORIDA
## NOTICE OF AD VALOREM TAXES AND NON-AD VALOREM ASSESSMENTS

| 2004 REAL ESTATE | P&L 11057-01-7 | PARCEL 26-25-16-0000-00500-0000 |
|---|---|---|

ASSESSED TO BENDERSON 85-1 TRUST &

| ASSESSED VALUE | 9159705 | EXEMPTIONS | | TAXABLE VALUE | 9159705 |
|---|---|---|---|---|---|

## AD VALOREM TAXES

| TAXING AUTHORITY | MILLAGE | TAXES LEVIED |
|---|---|---|
| COUNTY COMMISSION OPERATING | 7.4230 | 67992.49 |
| COUNTY SCHOOL OPERATING | 6.0800 | 55691.01 |
| COUNTY SCHOOL CAPITAL OUTLAY | 1.5000 | 13739.56 |
| COUNTY MUN SER FIRE DIST | 1.6140 | 14783.76 |
| SW FLA WATER MNGMNT DIST | .4220 | 3865.40 |
| COASTAL RIVERS BASIN | .2350 | 2152.53 |
| PASCO COUNTY MOSQUITO CONTROL | .2213 | 2027.04 |
| COUNTY WIDE SCHOOL BOND 2000 | .3640 | 3334.13 |

## NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE/BASIS | AMOUNT |
|---|---|---|
| | 2048 | |

PAY AMOUNT UNDER APPROPRIATE MONTH.

▼ PLEASE DETACH HERE AND RETURN BOTTOM PART WITH PAYMENT ▼

## PROPERTY TAX NOTICE • PASCO COUNTY FLORIDA

| 2004 REAL ESTATE | P&L 11057-01-7 | PARCEL 26-25-16-0000-00500-000 |
|---|---|---|

TOTAL AMOUNT DUE IF PAID BY:                     *DELINQUENT APR

| NOV 30 | DEC 31 | JAN 31 | FEB 28 | MAR 31 | DELINQUENT APR 1 |
|---|---|---|---|---|---|
| 157042.48 | 158678.34 | 160314.20 | 161950.06 | 163585.92 | |

PAYABLE TO: MIKE OLSON, TAX COLLECTOR (CHECKS ON U.S. BANKS) P.O. BOX 276, DADE CITY FL 33526-027

ASSESSD VAL   9159705   LAKE WORRELL ACRES UNIT 2 PB 4                  MLCD 620
  HMSTD EX                PG 83 POR OF BLOCKS 2 & 3
  OTHER EX                DESC AS COM NW COR LOT 1 BLK
TAXABLE VAL   9159705   (FULL DESCRIPTION ON TAX ROLL)

BENDERSON 85-1 TRUST &
BENDERSON RONALD 1995 TRUST
570 DELAWARE AVE
BUFFALO                  NY 14202-1207

Pasco County Tax Collector Parcel Search Result                    *Page 1 of 1*

# Mike Olson TAX COLLECTOR PASCO COUNTY FLORI

HOME    |    Real Estate Search    |    Tangible Search    |    Occupational Search

Tax  |  Driver License  |  Motor Vehicle  |  Boat  |  Hunting/Fishing/Occupational License

## Real Estate Property Search Results

· CURRENT AS OF: 11/19/2004  19:10:18 ·

**\*\*\* THE INFORMATION CONTAINED HEREIN DOES NOT CONSTITUTE A TITLE SEARCH AND SHOULD NOT BE RELIED ON AS SUCH. ADDITIONAL LIENS AND DELINQUENCIES MAY EXIST THAT ARE NOT INCLUDED BELOW. THE PASCO COUNTY TAX COLLECTOR ACCEPTS NO RESPONSIBILTY FOR THE ACCURACY OF THE INFORMATION PROVIDED. ALL FIGURES ARE SUBJECT TO CHANGE OR CORRECTION.(SEE FLORIDA STATUTE 197.122)**

| | | |
|---|---|---|
| **Parcel ID** | **2004  Tax Year** | |
| 26 25 16 0010 02000 0020 | ASSESSED VALUE | 2,447 |
| **Owner of Record** | HMSTD EXEMPTION | |
| HOOKER CORE INC | OTHER EXEMPTION | |
| 1875 CENTURY BLVD #300 | TAXABLE VALUE | 2,447 |
| | AREA | 6200 |
| ATLANTA GA 30345-3319 | MILLAGE | 17.85930 |
| **Legal Description** (First 4 Lines) | GROSS TAX | |
| | (INCLUDING SPECIAL | 43.70 |
| PORT RICHEY LAND | DISTRICTS) | |
| COMPANY SUB | **Special Districts** | |
| PB 1 PGS 60 & 61 POR | SOLID WASTE | |
| TRACT 20 | PASCO COUNTY STREETLIGHT | |
| DESC AS COM AT NE COR | **Current Tax** | |
| OF NW1/4 | **AMOUNT DUE IF POSTMARKED BY** | |
| OF SEC 26 TH ALG NORTH | **11/30/04  41.95** | |
| BDY OF | **AMOUNT DUE IF POSTMARKED BY** | |
| **Mail To Information** | **12/31/04  42.39** | |
| SAME AS ABOVE | DATE          RECEIPT      AMOUNT PAID | |
| **Escrow Code** | **Tax Lien (Homestead Denial)** | |
| NONE | NONE | |
| | **Unpaid Delinquent Taxes** | |
| NONE | | |

**Search Again**

**Appraiser's Information**          **Appraiser's Map**          **Delinquent Map**          **Delinquent Map Information**

[ Email Us ]   [ Webmaster ]

2048

HOME    |    Real Estate Search    |    Tangible Search    |    Occupational Search

Tax  |  Driver License  |  Motor Vehicle  |  Boat  |  Hunting/Fishing/Occupational License

TS03028

# PASCO COUNTY FLORIDA
## NOTICE OF AD VALOREM TAXES AND NON-AD VALOREM ASSESSMENT

2004 TANGIBLE PERSONAL PROPERTY     P&L 20076-06-3 ACCOUNT B-00528-500

ASSESSED TO BENDERSON DEVELOPMENT     ATTN: LEE NOWORYTA TAX DEPT

ASSESSED VALUE    3680    EXEMPTIONS     TAXABLE VALUE    3680

## AD VALOREM TAXES

| TAXING AUTHORITY | MILLAGE | TAXES LEVIED |
|---|---|---|
| COUNTY COMMISSION OPERATING | 7.4230 | 27.32 |
| COUNTY SCHOOL OPERATING | 6.0800 | 22.37 |
| COUNTY SCHOOL CAPITAL OUTLAY | 1.5000 | 5.52 |
| COUNTY MUN SER FIRE DIST | 1.6140 | 5.94 |
| SW FLA WATER MNGMNT DIST | .4220 | 1.55 |
| COASTAL RIVERS BASIN | .2350 | .86 |
| PASCO COUNTY MOSQUITO CONTROL | .2213 | .81 |
| COUNTY WIDE SCHOOL BOND 2000 | .3640 | 1.34 |

2048

## NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE/BASIS | AMOUNT |
|---|---|---|
| | | |

▼ PLEASE DETACH HERE AND RETURN BOTTOM PART WITH PAYMENT ▼

## PROPERTY TAX NOTICE • PASCO COUNTY FLORIDA

2004 TANGIBLE PERSONAL PROPERTY     P&L 20076-06-3   ACCOUNT B-00528-500
TOTAL AMOUNT DUE IF PAID BY:      *DELINQUENT APR

| NOV 30 | DEC 31 | JAN 31 | FEB 28 | MAR 31 | DELINQUENT APR 1 |
|---|---|---|---|---|---|
| 63.08 | 63.74 | 64.40 | 65.05 | 65.71 | |

PAYABLE TO: MIKE OLSON, TAX COLLECTOR (CHECKS ON U.S. BANKS) P.O. BOX 276, DADE CITY FL 33526-02

ASSESSD VAL    3680   SHOPPING CENTER SIGN        MLCD 620
EXEMPTIONS        RIDGE PLAZA
TAXABLE VAL    3680   8601 LITTLE RD
PENALTY

BENDERSON DEVELOPMENT
ATTN: LEE NOWORYTA TAX DEPT
8441 COOPER CREEK BLVD
UNIVERSITY PARK     FL 34201-2006

# LEASE

THIS LEASE, made this _15th_ day of _April_ , 19 _88_

between _HOOKER ATLANTA (7) CORPORATION, a Georgia corporation, and NONA BARNES,_

_INC., a Georgia corporation, d/b/a LJ HOOKER DEVELOPMENTS, a Georgia Joint_

_Venture,_ _____ (hereinafter called "Landlord")

and _____WINN-DIXIE STORES, INC., a Florida corporation,_____

_____

_____(hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singu-

lar or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## WITNESSETH:

**PREMISES**     That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and

demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord, for

the term hereinafter specified, the following described premises:

That certain store building, approximately __220__ feet in width by __200__

feet in depth, _together with the necessary pads for Tenant's pad-mounted_
_coolers and freezers on the rear thereof, and_
_vestibule measuring 12 feet deep by 88 feet wide,_

and the land on which the same shall stand (hereinafter collectively called "demised pre-

mises"), which store building and related improvements are to be constructed by Land-

lord according to plans and specifications to be approved by the parties as herein pro-

vided, and shall be in the location and of the dimensions as outlined in red on the

Plot Plan _last revised March 2, 1988, by Richard L. Bowen and Associates,_

_Inc., Cleveland, Ohio, entitled "Ridge Plaza, Port Richey, Florida"_

_____,

attached hereto marked Exhibit "A" and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in de-

tail on Exhibit "A"), known as _____"Ridge Plaza"_____

(hereinafter called "shopping center"), located _at the northwesterly corner of_

_the intersection of Ridge Road and Little Road_____

in the City of __New Port Richey_____ , County of _____Pasco_____ ,

State of_____Florida_____ , the legal description of the shopping center being

set forth on Exhibit "B" attached hereto and by this reference made a part hereof.

APPROVED
A___ ___ ___M
Division Mgr.

Legal Dept.
Winn-Dixie Stores,
Inc.

This instrument was prepared by
William _. F_r_a _n. Attorney -
at-law whose address is 5050
Edgewood _ourt, Jacksonville,
Florida 3?2?5

WD 33-36 Rev. 4/79

**TERM**    FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said premises for the transaction of its business as hereinafter provided for an initial term of _____ __twenty (20)_____ years from said commencement date. The parties agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided.

    This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

**RENTAL**    1. The Tenant agrees to pay to the Landlord as a minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of __Two Hundred Ninety-Two Thousand Eight Hundred Sixty-Four and 00/100_____ Dollars ($_292,864.00___) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of__Twenty-Four Thousand Four Hundred Five____ __and 33/100_____Dollars ($_24,405.33___) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof.

    In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which___---one---_____ per cent (-------1%) of Tenant's gross sales made from the demised premises in each fiscal year ending approximately June 30th during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental.

    Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

**DEFINITION OF "GROSS SALES"**

1a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF SALES**

1b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

If, as a result of Landlord's inspection and audit, the gross sales vary from those reported by two percent (2%) or more, Tenant shall, upon demand, pay Landlord's cost of the inspection and audit.

**USE**

2. The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, or for the conduct of any general mercantile, retail or service business; ~~provided, however, the demised premises shall not be used for the sale of prescription drugs or drugs required to be dispensed by a licensed pharmacist, so long as a drug store is in operation in the shopping center.~~

Notwithstanding the foregoing, the demised premises shall be initially opened and used for a period of six months for a retail food store, commonly referred to as a "supermarket", provided, however, it is specifically agreed that Tenant herein shall thereafter not be required to continue to remain open for business in the shopping center, either for the operation of a food supermarket or otherwise.

over

Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises.

SC-4

**CONSTRUCTION OF SHOPPING CENTER** 3. The Landlord, at its sole cost and expense, shall construct the shopping center, substantially as shown on Exhibit "A", consisting of all the buildings shown thereon, together with all ramps, sidewalks, streets, entranceways, malls, parking areas, service areas, driveways and related improvements, said improvements (excluding buildings) being sometimes hereinafter referred to as "common areas". The Landlord, at its sole cost and expense, shall grade and surface with top quality materials all paved portions of the common areas (including parking area), and shall provide proper and adequate water drainage and lighting system and operations therefor and shall operate and maintain the same in good repair and usable condition for use by the patrons of the shopping center and the tenants and their employees during the term of this lease and any extensions thereof. The arrangement and location of all store buildings and common areas (including parking area) within the shopping center shall at all times during the term of this lease, or any extensions thereof, be maintained as shown on Exhibit "A" and shall not be changed without the written consent of the Tenant. If not shown on Exhibit "A", Tenant expressly reserves the right to approve the finish grade elevations of all store buildings and common areas (including parking and service areas) within the shopping center which are to be constructed concurrently with Tenant's store building. which consent shall not be unreasonably withheld.

Concurrently with the above construction, Landlord agrees at its sole cost and expense, to construct the store building for occupancy by Tenant in accordance with the plans and specifications to be approved by both Landlord and Tenant. Plans and specifications shall be approved when initialed by both parties, and when initialed shall constitute a part of this lease. Said plans and specifications shall provide for a completed store building, commonly referred to as a "lock and key job", and shall include, but without limitation the following:

automatic doors, interior partitions, all plumbing and plumbing fixtures, drains, electrical wiring, lighting fixtures to Tenant's requirements, connection of Tenant's trade fixtures to plumbing and electrical outlets, air conditioning and heating systems and equipment including insulated ducts, automatic sprinkler system, A.D.T. like alarm system (if required), manager's office, storm shutters, delicatessen department, music and P.A. systems (except microphones and amplifiers to be furnished by Tenant) vinyl floor covering in sales area and vinyl, quarry tile and ceramic tile floor coverings as specified in other areas (all colors and patterns at Tenant's option); and connections to all utilities. Tenant at its own expense shall furnish its own trade fixtures. Any and all such equipment and fixtures furnished by Tenant shall remain its property and may be removed from the demised premises at any time.

**COMPLETION DATE** 4. Landlord covenants and agrees that the construction of the shopping center shall begin not later than _APRIL 1, 1988_ and shall be completed not later than_AUGUST 1, 1988_; and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction; provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than_FEBRUARY 1, 1989_, said option to terminate shall not arise. "Construction of the shopping center" shall be deemed to have begun when the first concrete footings have been poured. If pursuant to this paragraph Tenant shall cancel or terminate this lease or if Landlord fails to commence or complete construction of the shopping center by the above dates, Landlord agrees for a period of three (3) years after such failure or cancellation or termination not to permit or consent to the use as a supermarket of the demised premises or any portion of the shopping center, or any enlargement thereof, except by Tenant.

**COMMENCE-
MENT DATE**

5. The Tenant shall open its store for business within sixty (60) days following performance of the following:

(a) Tenant's store building and other improvements constructed on the demised premises shall have been delivered to Tenant completed in accordance with the plans and specifications and Landlord shall have delivered to Tenant, at Landlord's expense, a Certificate of Occupancy or equivalent document for the demised store building;

(b) Construction of all of the common areas (including parking area hereinafter specifically required) shall have been completed substantially as shown on Exhibit "A";

(c) Construction of at least __625__ lineal feet of store frontage and __70,000__ sq. ft. of total building area (excluding Tenant's store building) shall have been completed as shown on Exhibit "A" and said area leased to other tenants and opened for business or readied for opening for business simultaneously with Tenant; and

(d) The stores to be operated by each of the following tenants shall have been completed and opened for business or been readied for opening for business simultaneously with Tenant:

drug store

(e) In addition, not less that 40,000 square feet of additional building space for occupancy by retail and service shops shall have been constructed with fronts and floors and under roof, but the interior partition and interior finishes thereof need not be completed until any such specific space is occupied, and none of such space shall be required to be leased to tenants or open for business.

**OTHER
TENANTS**

6. As a condition and inducement to Tenant's entering into this lease, Landlord represents and warrants that it has entered into firm commitments for leases with the tenants listed below for the terms and for the amount of floor space indicated:

| Name | Minimum Term Years | Minimum Floor Area (sq. ft.) |
| --- | --- | --- |
| Drug Store | 20 | 10,000 |

Landlord further warrants and represents that such tenants shall occupy the space in the shopping center in the locations indicated on Exhibit "A" and in the minimum amounts set opposite their respective names above; and Landlord agrees, on demand, to furnish evidence reasonably satisfactory to Tenant, prior to and as a further condition to the establishment of the commencement date of this lease, that Landlord has entered into ~~non-cancellable~~ leases, except for default, with such tenants.

which are non-cancellable during the above referenced minimum term

**RETAIL
AND
SERVICE
STORES
ONLY**

7. Without the prior written consent of Tenant herein only retail and/or service stores shall be allowed to operate in the shopping center, or any enlargement thereof, it being the intent of the parties hereto that no spa, bowling alley, skating rink, bingo parlor, theatre (either motion picture or legitimate), business or professional offices, sales of automobiles, or health, recreational or entertainment-type activities, or non-retail or non-service type activities, shall be permitted, provided however, business and/or professional offices shall be permitted to be located in the building spaces other than "RTL. G-" and "RTL. S," as shown on said plot plan.

-5-

**PARKING AND COMMON AREAS**

8. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees, a non-exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common areas, as defined in Article 3 hereof, and as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks.

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide:

    (a) a minimum ratio of at least __5.0__ automobile parking spaces for each 1,000 sq. ft. of gross building area (including additional floor levels) in the shopping center, and

    (b) facilities for convenient parking of at least __912__ automobiles (minimum);

and in the event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, the Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord, ~~using~~ the default within thirty (30) days after receipt of such notice of termination. All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during Tenant's food store shopping hours, and Landlord further agrees that no signboards or other construction shall be erected in any of the said common areas shown on Exhibit "A" or so as to obstruct the view of the demised premises from the adjoining public streets. Without the prior written consent of Tenant herein, no carnivals, fairs or shows nor sales by merchants utilizing vehicles or booths in the common areas shall be allowed in the shopping center, or any enlargement thereof.

    commencing in good
    faith to cure
                                                 ~~except as~~

                      as allowed on the demised premises as
                      of the commencement date of this lease

**SERVICE AREA**

9. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances parking spaces for two large trailer trucks for continuous use and further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such spaces as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

                      to the extent allowed by law at the
                      demised premises

    promptly when due

**UTILITIES**

10. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises, and Landlord agrees at all times to do nothing which interfers with Tenant's access to such utilities.

**TENANT'S REPAIRS**

11. Upon completion of construction by Landlord and acceptance of the demised premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear.

Within the repair responsibilities of Tenant shall be included: interior exposed plumbing including stoppages not caused by Landlord's negligence; and maintenance of air conditioning and heating equipment provided in each instance its said liability for both parts and labor shall not exceed $500.00, unless such repairs are necessitated by any act or omission (negligent or otherwise) of Tenant, its agents, employees, invitees or licens- ees, or by the failure of Tenant to perform its obligations under the terms of this lease; floor surfacing; automatic doors; and windows and plate glass except such damage as covered by Land- lord's fire and extended coverage insurance.

concealed

**LANDLORD'S REPAIRS**

12. The Landlord shall, at its cost and expense, keep and maintain, in good condition and repair, the common areas, the exterior of Tenant's store building, including the ~~windows~~ ~~and~~ ~~plate~~ ~~glass~~ ~~common~~ ~~areas~~, roof, gutter, downspouts, exterior painting, masonry walls, foundation and struc- tural members, the automatic sprinkler system (including central alarm system therefor, if required by governmental authority), the plumbing (including septic tank, if any), wiring, air conditioning and heating systems ~~and~~ ~~flooring~~ of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the common areas (as defined in Article 3 hereof) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that the Land- lord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements, or other casualty covered by Landlord's fire and extended coverage insurance.

and which have not been reimbursed to Tenant by
Landlord within thirty (30) days of such repairs.
If in order to protect the Tenant's property in the store building it shall be necessary to make emergency repairs to any portion thereof which is the responsibility of the Landlord to repair, or if the Landlord after receipt of notice as above provided fails or neglects to make with all due dili- gence such other repairs to the store building or common areas, as defined in Article 3 hereof, which are the responsibility of the Landlord, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs. Landlord further covenants that the store building will be so constructed and main- tained at all times so as structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that said premises may conform to such ordinances, statutes, rules or regulations now in force or which may be hereafter passed, adopted or promulgated, except Landlord shall not be responsible therefor if such non-conformity shall be the result of (a) a departure from permitted uses hereunder, or (b) alterations made by Tenant.

interior          interior

**SIGNS**

13. Tenant may place, erect and maintain any signs on the ~~roof~~ walls, and any other place on or about the demised premises, which signs shall remain the property of Tenant and may be removed at any time during the term of this lease, or any extension thereof, provided Tenant shall repair or reimburse Landlord for the cost of any damage to the demised premises resulting from the installa- tion or removal of such signs.

Landlord agrees to share in the construction of two shopping center pylons to be constructed in the shopping center in the location as shown on Exhibit "A", and Tenant, together with the other tenants in the center, shall be permitted to affix thereon an electrically illuminated sign panel advertising its business, to be installed by Tenant and connected to power outlets to be installed by Landlord. The cost of the shopping center pylon, including foundation, support posts and the shopping center sign shall be shared on a cost basis as follows: each of the tenants who affixes a sign to the pylon shall bear a portion of the cost of constructing the pylon on a pro-rata basis based upon the size which the tenant's sign bears to the entire square footage area of all signs affixed to the pylon sign, Landlord's pro-rata share being based upon the square footage of the shopping center sign affixed to the pylon. Landlord at its expense shall lay and install suitable underground conduit and wiring extending to the pylon from Tenant's building.

<u>non-structural</u>

**FIXTURES AND INTERIOR ALTERATIONS**

14. The Tenant, at its own expense, may from time to time during the term of this lease make any interior alterations, additions and improvements in and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good, workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

<u>or HVAC system</u>

<u>trade</u>                    <u>trade</u>

Tenant may construct and build or install in said premises any and all racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

Tenant shall not permit any mechanic's or other liens to stand against the demised premises or the shopping center for work or material furnished to Tenant. In the event any mechanic's or materialman's or other lien is filed against the demised premises or shopping center as a result of any work or act of Tenant, Tenant, at its expense, shall discharge or bond off the same within ten (10) days from the filing thereof. If Tenant fails to discharge said mechanic's or materialman's or other lien, Landlord may bond or pay the same without inquiring into the validity or merits of such lien, and all sums advanced by Landlord shall be paid by Tenant on demand as additional rent. Landlord hereby gives notice to all persons that any liens claimed by any person as a result of improving the demised premises pursuant to a contract with the Tenant or any person other than the Landlord shall extend to and only to the right, title and interest, if any, of the person who contracts for said improvements. In no event shall said lien extend to the interest of the Landlord, its successors or assigns in the demised premises and shopping center. Landlord hereby expressly prohibits any such liability. This paragraph shall be construed so as to prohibit, in accordance with the provisions of Chapter 713, Florida Statutes, the interest of the Landlord in the demised premises, the shopping center or any part thereof, from being subject to a lien for any improvements made by Tenant or any third party to the demised premises.

-8-

**INDEMNIFI-
CATION**

15. Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises. Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss by reason of an accident or damage to any person or property happening on or about all common areas (as defined in Article 3 hereof) of the shopping center, and Landlord further agrees to carry, at its expense, public liability insurance coverage on all common areas (as defined in Article 3 hereof) of the shopping center, with a contractual liability endorsement on the policy, in a company qualified to transact business in the state where the premises are located, stipulating limits of liability of not less than $500,000.00 for an accident affecting any one person; and not less than $1,000,000.00 for an accident affecting more than one person; and $100,000.00 property damage. Certificate of such coverage from the insurer providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant within fifteen (15) days of Landlord's receipt of Tenant's written request.

**CLEANLINESS**

16. Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the entryways and delivery areas adjoining the building reasonably clean and free from rubbish and dirt. Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit the Landlord or its agent at all reasonable times to enter upon the premises for the purpose of making repairs and for examining or showing the same to prospective purchasers, insurers, or lenders.

or at any time in the event of emergency

except to such extent that liability existed or was at issue prior to such casualty.

**FIRE /
CASUALTY**

neither                                    either Landlord or

17. In the event that Tenant's building shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, then Tenant may elect within thirty (30) days after such damage, to terminate this lease by giving to the ~~Landlord~~ a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease. If Tenant's building shall thereby suffer damage to any extent less than 75% of the value thereof, or if ~~Tenant does not~~ elects to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored. If at any time during the term of this lease or any extensions thereof any of the buildings in the shopping center, exclusive of Tenant's store building, are damaged by fire or by the elements or otherwise, Landlord shall immediately commence and diligently prosecute to completion repair of all such damage and shall restore said improvements to their condition prior to such damage .

to the extent of available insurance proceeds,                           other party

Landlord shall carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant and on all other buildings within the shopping center in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees; and Tenant hereby expressly waives any and all claims against Landlord for loss or damage to Tenant's merchandise, fixtures and equipment due to fire, explosion, windstorm or other casualty covered by standard fire and extended insurance policies, regardless of cause of such damage, including, without limitation, damage resulting from negligence of Landlord, its agents, servants, or employees.

-9-

except ad valorem real estate taxes for the current year, and except a valid first mortgage held by _____, and the other matters set forth in Exhibit "C",

**QUIET ENJOYMENT**

18. The Landlord covenants, warrants and represents that upon commencement of the lease term, the shopping center, including the demised premises, will be free and clear of all liens and encumbrances superior to the leasehold hereby created, that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that, the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof without Landlord's interference.

_____, Tenant upon Tenant's timely payment of the

The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business or use of common areas for parking purposes, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting Tenant from conducting a general mercantile business or using the common areas (as defined in Article 3 hereof) in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

**TAXES AND LIENS**

19. All taxes, assessments and charges on land or improvements and obligations secured by mortgage or other lien upon the demised premises or the shopping center shall be promptly paid by the Landlord prior to delinquency, the Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at the maximum rate allowed by law.

unless Landlord is legally contesting the amount or legality of any such taxes, assessment or charge, in which event they shall be paid upon final resolution of such contest. Upon thirty (30) days' prior notice to Landlord and the opportunity to cure,

**CONDEM-NATION**

thirty        (30%)

20. If any part of the demised premises or more than twenty per cent (20%) of the buildings, exclusive of Tenant's building, within the shopping center, be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as aforesaid, the Landlord shall immediately commence and diligently prosecute to completion the repair and restoration of the improvements, including Tenant's store building, within the shopping center to a condition comparable to their condition at the time of taking and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances, provided however, Tenant must elect to terminate within 90 days after receipt by Tenant from Landlord of notice that the demised premises have been so appropriated or taken, with the election specifying the effective date of termination, not later than the effective date of taking.

Notwithstanding the foregoing, however, Tenant shall not be entitled to any award for the loss of or loss in the value of leasehold, but only to an award for loss of or damage to its trade fixtures and for the unamortized cost of any improvements made by Tenant, and moving expenses if allowable, and such awards as are provided to Tenant under the laws of the State of Florida.

-10-

In the event that any portion of the common areas (including parking area and access thereto) designated as such on Exhibit "A", be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, so as to materially or substantially interfere with the conduct of Tenant's business in the demised premises, or so as to reduce the required parking area by an amount in excess of_____ten_____ per cent (-----10 %) or reduce the number of cars which may be conveniently parked to less than_____821_____, the Tenant may, at its option, terminate this lease and shall be liable for rent only up to the time of such taking.

**DEFAULT**  21. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default within six (6) months.

**BANKRUPTCY**  22. The Tenant further covenants and agrees that if, at any time, ~~Tenant is adjudged bankrupt or insolvent under the laws of the United States or any government,~~ or makes a general assignment for the benefit of creditors, or if a receiver of ~~all the~~ property of the Tenant is appointed and shall not be discharged within ninety (90) ~~days after~~ such appointment, then the Landlord may, at its option, declare the term of ~~this lease~~ agreement at an end and shall forthwith be entitled to immediate possession ~~of the said~~ premises.

Tenant files a voluntary petition in bankruptcy for adjudication as a bankrupt or insolvent, or the failure to timely discharge within thirty (30) days of filing a petition filed against Tenant seeking any reorganization, rearrangement, recomposition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other statute, law or regulation related to bankruptcy, insolvency or other relief for debtors

**CONSTRUCTION RISKS**  23. It is understood and agreed that nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing said improvements, and that the Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the Tenant's store building for the causes herein stated. The Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their sub-contractors, employees, agents or servants by reason of Landlord's constructing said improvements pursuant to the terms of this lease. Landlord shall indemnify Tenant and save Tenant harmless from and against: all mechanics', materialmen's, sub-contractors' and similar liens; all claims and suits for damage to persons or property from defects in material or from the use of unskilled labor; or from any negligence caused by Landlord, Landlord's contractors, sub-contractors or by any of their employees, agents or servants during the progress of the work in constructing said improvements or from any faulty construction thereof.

-11-

Acceptance of possession by Tenant of the demised premises shall be conclusive evidence that Landlord's work to the date of possession had been fully performed in the manner required, except for latent defects. Any items of Landlord's work which are not completed as of delivery of possession shall be identified by Tenant on a punch list to be submitted to Landlord within thirty (30) days after such delivery and Landlord shall thereafter complete the same, provided such punch list items are Landlord's responsibility according to the approved plans and specifications. Any items of Landlord's work which are not timely identified on such punch list shall be deemed completed.

**NOTICES**

24. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at _____

_____1875 Century Boulevard, Suite 300_____
Atlanta, Georgia  30345
_____Attention:  Property Management_____
or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to

Tenant at _____P. O. Box 440 or 2400 E. Hillsborough Avenue_____

_____Tampa, Florida  33601_____
or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail.

**END OF TENANCY**

25. The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct. It is understood, however, that Tenant shall not be required to restore the demised premises to their original state. Any holding over by Tenant of the demised premises after the expiration of the term of this lease, or any extensions thereof, shall ~~operate and be construed~~ as a tenancy from month to month only at ~~the same rentals reserved herein and upon~~ the same terms and conditions as contained in this lease.

an increase in minimum guaranteed rent to $ 439,296.00  per annum and an increase in percentage rental to 1.5% of gross sales and otherwise upon

not operate, except by written agreement, to extend or renew this lease or create a new lease, but in such case, Landlord's rights shall be limited to either the immediate termination of Tenant's occupancy or the treatment of Tenant's occupancy

**ASSIGNMENT AND SUBLEASING**

26. The Tenant may without the consent of the Landlord assign this lease, or sublease or vacate the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease.

In the event of any assignment or sublease or vacating of the entire premises, the rental thereafter shall be a fixed rental only consisting of the average percentage rental, if any, paid by Tenant for the two years immediately preceding such assignment, vacating or subletting plus the minimum guaranteed rental provided for herein; provided, however, this provision shall not apply in the event such assignment or sublease shall be to any corporation or entity which is the parent of, subsidiary to or affiliated with Tenant or to any corporation or entity with which Tenant merges or consolidates or to which it sells all or substantially all of its business in the state where the demised premises are situated. The provisions of this paragraph shall not be construed to limit or restrict the right of Tenant to sublease a portion or department of the demised premises without consent of Landlord to any concessionaire or licensee or otherwise in connection with the operation of Tenant's business in the demised premises, provided the sales of such concessionaire or licensee shall be included within the gross sales of Tenant, as defined hereinabove in Article 1a.

In the event Tenant shall vacate the entire demised premises or cease selling merchandise therein for in excess of a period of six (6) months, while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant), Landlord shall have the continuing option thereafter (unless Tenant shall have re-occupied the premises) to terminate and cancel this lease upon fifteen (15) days written notice to Tenant of its election to do so, unless within such fifteen (15) day period Tenant shall advise Landlord that Tenant had, prior to receipt of such notice in good faith committed to assign this lease or sublease the demised premises to a third party for occupancy within two (2) months.

Notwithstanding anything in this Article to the contrary, it is expressly agreed that any assignment or subletting hereunder shall be subject to the permitted use provisions set forth in Article 2 hereinabove.

                              if Tenant is not in default,
**EXTENSIONS**   27. It is further agreed that Tenant, at its option, shall be entitled to the privilege of _____
             five _____ ( 5 ) successive extensions of this lease, each extension to be for a period
of __five_____( 5 ) years and at the same rentals and upon the same terms
and conditions as required herein for the initial term.


        Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at
least__six (6) months_____ before the expiration of the initial term, and if ex-
tended, at least____six (6) months_____ before the expiration of such extended
term, stating the intention of the Tenant to exercise such option and the period for which such option is
exercised and thereupon this lease shall be so extended without the execution of any other or further
document.


**EXCLUSIVE**   28. Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a
**SUPERMARKET**  supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees
that it will not directly or indirectly lease or rent any property located within the shopping center, or
within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat,
fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to
sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged
in any such business without written permission of the Tenant; and Landlord further covenants and agrees

not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant; except the sale of such items in not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared, ready-to-eat food items, either for consumption on or off the premises, shall not be deemed a violation hereof. With the exception of bars and package stores, only Tenant herein may sell beer and wine in the shopping center for off-premises consumption.

*and a drug store*

Further, only Tenant herein may operate a delicatessen in the shopping center, or any enlargement thereof, and Tenant also reserves the right at any time to operate a pharmacy and a bakery department within its store premises. Notwithstanding the foregoing, as to the storeroom to be occupied by the drug store only, the permitted sale of the above described food items shall be expanded to 1,000 square feet of sales area.

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name and address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provisions herein to the contrary, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of the terms of this exclusive provision as to property located within 1000 feet of any exterior boundary of the shopping center, but nothing herein shall deprive Tenant of any rights of recourse against Landlord, its successors and assigns, by way of suit for damages or injunctive relief, or as otherwise provided by law, in the event of any such violation. If the holder of such first mortgage should succeed to ownership of the demised premises by virtue of foreclosure or transfer of title thereto in lieu of such foreclosure or otherwise, in such event the terms of this exclusive provision shall apply to the holder of such first mortgage as owner-landlord only with respect to the land which was formerly encumbered by the lien of said first mortgage. For the purposes hereof, the term "first mortgage" shall include any first security instrument.

**SUBORDINATE**

*reasonably*

29. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument (in a form acceptable to Tenant) as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the purchaser at such foreclosure sale shall be bound to Tenant for the term of this lease, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

**NOTICE TO LENDER**

30. Tenant agrees that it will give notice to any holder of a first mortgage (which term shall include all security instruments) encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate this lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate this lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period, provided, however, the Tenant shall not be required to deliver such notice to the mortgage holder or to extend to it an opportunity to perform in respect of emergency repairs which Tenant is permitted to make under the provisions of Article 12 of this lease.

SC-14

**COMMON AREA MAINTENANCE** 31. Landlord agrees to operate and maintain in good condition and repair all the common areas, as herein defined, and provide therefor all such services as are reasonably required, including, but without limitation, safe-guarding, cleaning and sweeping, lighting, snow and ice removal if necessary, general repair and maintenance of all paved surfaces, repainting of parking area striping, and watering and maintenance of landscaped areas. If the Landlord, after fifteen (15) days following receipt of written notice from Tenant to do so, shall fail to make the repairs or perform the services described in this Article, the Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred therein.

For such services, Tenant shall pay to Landlord, as additional rental hereunder, and as reimbursement for the annual cost thereof, the sum of $11,264.00 per year, payable in twelve (12) equal monthly installments of $938.67 per month on the first day of each and every calendar month of the lease term, and any extensions thereof.

**BENEFIT** 32. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

**TRANSFER BY LANDLORD** 33. In the event Landlord transfers Landlord's interest in this lease, Landlord agrees to promptly provide Tenant with documentary evidence, satisfactory to Tenant, of such transfer of Landlord's interest in this lease.

reasonably

**SHORT FORM LEASE** 34. The Landlord agrees that at any time upon the written request of the Tenant it will execute and permit recording of a short form of this lease in the form as agreed to by the parties.

**CAPTIONS** 35. The captions appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

**COMPLETE AGREEMENT**  36. This written lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

**TAXES**  37.  During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of any increase in ad valorem real estate taxes levied thereon for the first (1st) full calendar year of the lease term in which both the value of the land and the buildings thereon shall be assessed for tax purposes; provided, however, any additional rental payable hereunder by the Tenant may be credited on a non-cumulative basis against any and all percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit.  Tenant shall be responsible only for its pro rata share of such taxes for fractional years occurring at the beginning and expiration of the term of this lease, and any extensions thereof.

If such taxes shall not be assessed separately, but shall be included within an assessment of the demised premises  and others, said assessments shall be fairly apportioned to determine Tenant's share thereof.  Such apportionment shall be made in a ratio which the square footage of Tenant's store building bears to the total square footage of all store buildings (including additional floor levels) from time to time existing in the shopping center.  The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements, discounts or refunds thereon.  Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant and an "as built" survey of the shopping center, and such additional rental shall be payable by Tenant on demand after payment by Landlord.  All taxes, other than ad valorem real estate taxes, including special assessments, improvement liens and the like, shall remain the sole responsibility of the Landlord.  However, Tenant shall remain responsible for sales taxes on rentals levied by law on lessees and all taxes on the personal property of Tenant.

Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes,assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of Landlord as Tenant may deem necessary; provided however, any expenses incurred by reason thereof shall be borne by Tenant and such proceedings conducted free of all expense to Landlord. .

**OPTION FOR EXPANSION**  38.  Provided Tenant is not in default or commencing to cure such default consistent with Article 21 hereinabove, Tenant is hereby granted the option and privilege at any time during the term of this lease, or any extensions thereof, of enlarging its store building by incorporating therein the area to the southerly side thereof, such addition not to exceed sixty (60) feet in width by two hundred (200) feet in depth.  It is intended that the expansion is to be accomplished during the first seven (7) years of the initial term of this lease only (a) at such times as the expansion area shall remain undeveloped, or if any adjoining storerooms have been constructed thereon, at such time as the same may he vacant and not under lease, or (b) at the expiration of the seventh (7th) year of the initial term of this lease, it being contemplated that Landlord shall not lease such area to other tenants only for such periods as will expire concurrently with the expiration of the seventh (7th) year of the initial term of this lease.  Thereafter, the option

-16-

may be exercised at 5-year intervals, it being contemplated that Landlord shall lease such area to other tenants only for such periods as will expire at 5-year intervals dating from the expiration of the seventh (7th) year of the initial term of this lease. Landlord shall give notice to Tenant of any such expiration date and, during the period between nine (9) months and six (6) months prior to such expiration date, afford to Tenant the opportunity to exercise this option, and upon Tenant giving to Landlord a notice in writing of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence following the vacation of the necessary area by any other tenant, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant. In order to facilitate the expansion of Tenant's demised store building as herein contemplated, Landlord agrees that any adjacent building or buildings within the expansion area shall be of like structural quality on a linewhich is the interior sidewalk line of Tenant's demised store building extended and shall have a finish floor level, roof and ceiling heights which shall be at the same elevations as the finish floor level, roof and ceiling heights of Tenant's demised store building. Landlord agrees that the wall of Tenant's demised store building, adjoining the expansion area shall be constructed with steel column supports therein equivalently spaced to the nearest row of steel column supports within the open area of Tenant's demised store building and such wall supports shall be of sufficient load bearing capacity to carry the roof support system across the full span of the original and of the expanded building width.

Upon completion of such building addition, or tender of such additional space to Tenant, if there shall not at such date remain at least ten (10) years of the then term of this lease, such term shall be extended for such period of time as shall be necessary to provide a full ten (10) years from such date Thereafter, during such extended term, the annual minimum guaranteed rental (and the base for computation of percentage rental hereunder) shall be increased by the greater of: an amount equal to fourteen percent (14%) of the cost of such addition, or an amount equal to $6.50 per square foot of the enlargement area, or an amount equal to a computed percentage times the cost of such addition, such percentage consisting of four percent (4%) plus the current prime interest rate charged by New York City banks at the time of the exercise of the option. At Tenant's request, construction cost shall be established by bids obtained by Landlord from at least three (3) reputable contractors acceptable to Tenant, with the final cost of the addition upon completion to be certified to by the general contractor performing the work. During such extended term the provisions of this lease shall remain in effect and the option periods herein provided, if any shall then remain, shall be construed to follow upon the end of the extended term and the rentals to remain as adjusted in consequence of the addition. Upon completion of the addition, it shall be and become a portion of the demised premises and this lease thereby be taken and construed as so amended.

If after Tenant has requested Landlord to enlarge Tenant's building in accordance with the foregoing option the parties are unable to reach a mutually satisfactory agreement as to the terms and conditions upon which the enlargement is to be accomplished at Landlord's expense, or if after such agreement has been reached Landlord is for any reason unable or refuses to construct said addition, Tenant, at its option, shall have the right, at its own expense, to commence promptly after such notice the construction of a building addition of like quality of construction as the original building within the area reserved therefor up to but not in excess of the stipulated size in accordance with plans and specifications to be provided by the Tenant and to be approved by the parties hereto, which approval shall not be unreasonably withheld by Landlord. Upon completion and occupancy of such building addition by Tenant the lease term hereof shall be extended on the same terms and conditions for such period of time as shall be necessary to provide a full ten (10) years from such date (without Tenant's exercise of any renewal options) and Tenant shall be entitled to occupy the enlarged area during construction and for a ten (10) year period thereafter without obligation to pay any minimum guaranteed rental in respect of such enlargement area, and percentage rentals due hereunder, if any, shall be adjusted as described in the paragraph appearing immediately following just as if guaranteed rentals had been increased as described in the said paragraph next below.

With respect to the Tenant's constructing the addition at its expense, upon the expiration of the extended 10-year term hereinabove described, and for the remainder of the lease term hereof including any extended or renewal periods, the annual minimum guaranteed rental for the total premises as so enlarged shall be increased by a sum equal to the same minimum guaranteed rental per square foot of the enlargement area that Tenant is then paying for the original building, with guaranteed rentals for fractional years and fractional months occurring at the beginning and end of the said remaining lease term to be prorated between the rentals payable before and those payable after the rental adjustments provided herein, and the percentage rentals due hereunder shall be adjusted to equal the amount, if any, by which one percent (1%) of Tenant's gross sales as herein defined made from the said enlarged demised premises in each fiscal year of Tenant ending approximately June 30 exceeds said increased annual minimum guaranteed rental hereinabove stipulated.

After completion of the building addition herein described the provisions of this·lease shall remain in effect and the option periods herein provided, if any shall then remain, shall be construed to follow upon the end of the extended term.  Upon completion of the addition, it shall be and become a portion of the demised premises and this lease shall be taken and construed as so amended.

Tenant agrees to cause any mechanics' liens incurred by it in connection with such expansion to be promptly discharged and hereby agrees to indemnify and hold harmless Landlord from any expense occasioned thereby.  Neither Landlord nor Tenant will make, nor will they be required to make, any future expansion which will violate the minimum ratio of automobile parking area to building areas as provided for in this lease.  Tenant agrees that any expansion work performed by it shall not unreasonably interfere with the business of other tenants in the shopping center.

Nothing herein contained shall constitute any express or implied obligation on the part of the holder of a first mortgage (which term "mortgage" shall include all security instruments) encumbering the fee simple title to the demised premises, or of any purchaser at a sale under foreclosure of such mortgage, to comply with the terms and provisions of this Article, it being the understanding of the parties that the obligation to cause such expansion is the sole obligation of the Landlord, its heirs, legal representatives, successors and assigns.

The increased area of Tenant's building resulting from the expansion and any increased taxes resulting therefrom over and above the taxes for the year prior to the completion of the expansion area shall be taken into consideration in computing the amounts  of Tenant's common areas and tax contributions required by Articles 31 and 37 hereof.

**LIMITATION OF LIABILITY**    39.  The Tenant shall look solely to the Landlord's interest in the shopping center and in the Landlord's personal property used in connection with the shopping center for the satisfaction of any judgment or decree requiring the payment of money by the Landlord, based upon any default hereunder, and no other property or asset of the Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of such judgment or decree.

**SELF-HELP**    40.  If Landlord shall default in the performance or observance of any agreement or condition in this lease contained on its part to be performed or observed, and if Landlord shall not cure such default within thirty (30) days after notice from Tenant specifying the default (or shall not within said period commence to cure such default and thereafter prosecute the curing of such default to completion with due diligence), Tenant may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of the Landlord, and any amount paid or any contractual liability incurred by Tenant in so doing shall be deemed paid or

-18-

incurred for the account of Landlord and the Landlord agrees to reimburse Tenant therefor or save Tenant harmless therefrom; provided that Tenant may cure any such default as aforesaid prior to the expiration of said waiting period, but after said notice to Landlord, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the real estate or Tenant's interest therein or to prevent injury or damage to persons or property. If Landlord shall fail to reimburse Tenant upon demand for any amount paid for the account of Landlord hereunder, said amount may be deducted by Tenant from the next or any succeeding payments of rent due hereunder.

ESTOPPEL

41. Tenant shall, without charge therefor, at any time and from time to time, within a reasonable time after request therefor by Landlord, execute, acknowledge and deliver to Landlord a written estoppel certificate, in reasonable form, certifying to Landlord, any mortgagee or any purchaser of the shopping center, or any other person designated by Landlord, as of the date of such estoppel certificate: (i) that Tenant is or is not in possession of the demised premises, has unconditionally accepted the same (if such be the case) and, after the term commences, is currently paying the rent reserved hereunder; (ii) that this lease is unmodified and in full force and effect (or if there has been modification that the same is in full force and effect as modified and setting forth such modifications); (iii) whether or not there are then existing any set-offs or defenses against the enforcement of any right or remedy of Landlord, or any duty or obligation of Tenant, hereunder (and, if so, specifying the same in detail); (iv) the date, if any, to which any rent has been paid in advance; (v) that Tenant has no knowledge of any uncured defaults on the part of Landlord under this lease (or if Tenant has knowledge of any such uncured defaults, specifying the same in detail); and (vii) any other matters that Landlord or its mortgagee may require to be confirmed. Any failure by Tenant to execute and deliver such certificate, substantially in form as set forth above, and within a reasonable time shall constitute an irrevocable power of attorney appointing and designating Landlord or its successors or assigns as attorney-in-fact to execute and deliver such estoppel certificate as herein provided.

ATTORNEY'S FEES

42. In the event of any litigation between the parties arising out of this lease or the collection of any funds due hereunder, the prevailing party shall be entitled to recover all costs incurred, such costs to include, without limitation, reasonable attorneys' fees and paralegals' fees, also including such attorneys' fees and paralegals' fees on appeal and in any bankruptcy proceedings.

LAW

43. This lease shall be governed by the laws of the State of Florida.

-19-

COUNTER-   45.  This lease may be executed in any number of counterparts, each of which
PARTS      shall be deemed to be an original and all of which together shall comprise but
           a single instrument.


           **IN WITNESS WHEREOF,** Landlord and Tenant have caused this instrument to be
           properly executed as of the day and year first above written.


Signed, sealed and delivered          LJ HOOKER DEVELOPMENTS,
in the presence of:                   A Georgia Joint Venture, By

                                      Hooker Atlanta (7) Corporation

_____             By _____
                                        Its _____ President
_____             Attest _____
As to Hooker Atlanta                    Its        Secretary
(7) Corporation
                                          (Corporate Seal)



_____             NONA BARNES, INC.

_____             By _____
As to Nona Barnes, Inc.                 Its _____ President
                                      Attest _____
                                        Its        Secretary

                                          (Corporate Seal)

                                              **LANDLORD**



                                      WINN-DIXIE STORES, INC.

_____             By _____
                                        Its        President
_____             Attest _____
As to Tenant                            Its        Secretary

                                          (Corporate Seal)

                                              **TENANT**

STATE OF _Georgia_

COUNTY OF _DeKalb_

    The foregoing instrument was acknowledged before me this _15th_ day of _April_ , 1988, by _Bob Beishline_ and _Kent Murphy_ , _Vice_ President and _____ Secretary, respectively, of _HOOKER ATLANTA (7) CORPORATION, a Joint Venturer of LJ HOOKER DEVELOPMENTS, a Georgia Joint Venture_ ,

a _Georgia_ corporation, on behalf of the corporation.

(NOTARIAL SEAL)

            _Gracie Kendall_
            Notary Public, State and County aforesaid

            My commission expires:

            Notary Public, Fulton County, Georgia
            My Commission Expires Sept. 18, 1989

STATE OF _Georgia_

COUNTY OF _DeKalb_

    The foregoing instrument was acknowledged before me this _15th_ day of _April_ , 1988, by _Bob Beishline_ and _Kent Murphy_ , _Vine_ President and _____ Secretary, respectively, of _NOMA BARNES, INC., a Joint Venturer of LJ HOOKER DEVELOPMENTS, a Georgia Joint Venture_ ,

a _Georgia_ corporation, on behalf of the corporation.

(NOTARIAL SEAL)

            _Gracie Kendall_
            Notary Public, State and County aforesaid

            My commission expires:

            Notary Public, Fulton County, Georgia
            My Commission Expires Sept. 18, 1989

STATE OF FLORIDA

COUNTY OF DUVAL

    The foregoing instrument was acknowledged before me this _22ⁿᵈ_ day of _April_ , 1988, by _James Kufeldt_ and _J.S. Bryan, Jr._ , _____ President and _____ Secretary, respectively, of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation.

(NOTARIAL SEAL)

            _Laura F. Baughman_
            Notary Public, State and County aforesaid

            My commission expires: _7-17-90_

Exhibit "A"

EXHIBIT "B"

RIDGE PLAZA

Northwesterly corner of the intersection of
Ridge Road and Little Road
New Port Richey, Pasco County, Florida

All that certain piece, parcel or tract of land, lying and being situated in the City of New Port Richey, County of Pasco, State of Florida together ith all improvements thereon or to be constructed thereon and all appurtenances thereto belonging or in anywise appertaining, more particularly described as follows, to wit:

A PORTION OF BLOCK 1 AND A PORTION OF BLOCK 2, AND BLOCK 3, LAKE WORRELL ACRES UNIT TWO, AS SHOWN ON PLAT RECORDED IN PLAT BOOK 4, PAGE 83 OF THE PUBLIC RECORDS OF PASCO COUNTY, FLORIDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGIN AT THE NORTHWEST CORNER OF LOT 1, BLOCK ONE, OF SAID LAKE WORRELL ACRES UNIT TWO; THENCE RUN EAST, 804.00 FEET ALONG THE SOUTHERLY RIGHT-OF-WAY LINE OF RUBY LANE AS NOW ESTABLISHED; THENCE SOUTH, 1030.00 FEET ALONG THE WESTERLY RIGHT-OF-WAY LINE OF LITTLE ROAD AS NOW ESTABLISHED; THENCE WEST, 200.00 FEET; THENCE SOUTH, 199.96 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF RIDGE ROAD AS NOW ESTABLISHED; THENCE NORTH 89°56'31" WEST, 322.05 FEET ALONG SAID NORTHERLY RIGHT-OF-WAY LINE; THENCE CONTINUE ALONG SAID NORTHERLY RIGHT-OF-WAY LINE, SOUTH 00°03'29" WEST, 10.00 FEET; THENCE NORTH 89°56'31" WEST, 289.36 FEET ALONG SAID NORTHERLY RIGHT-OF-WAY LINE; THENCE NORTH 00°02'35" EAST, 1239.36 FEET ALONG THE WESTERLY BOUNDARY LINE OF SAID BLOCK ONE TO THE POINT OF BEGINNING.

CONTAINING 21.950 ACRES, MORE OR LESS.

SUBJECT TO EASEMENTS AND RESTRICTIONS OF RECORD.

# See Exhibit
# Or
# Large Site Plan
# Located
# In file

## SUPPLEMENTAL LEASE AGREEMENT

THIS SUPPLEMENTAL LEASE AGREEMENT, made this 31st day of January 1989, between HOOKER CORE, INC., a Georgia corporation, hereinafter called "Landlord", and WINN-DIXIE STORES, INC., a Florida corporation , hereinafter called "Tenant", which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties,

### W I T N E S S E T H:

WHEREAS, by lease dated April 15, 1988, HOOKER ATLANTA (7) CORPORATION, a Georgia corporation, and NONA BARNES, INC., a Georgia corporation, d/b/a LJ HOOKER DEVELOPMENTS, a Georgia Joint Venture, did lease and demise unto Tenant certain premises located in a shopping center development situated at the northwesterly corner of the intersection of Ridge Road and Little Road in the City of New Port Richey, County of Pasco, and State of Florida, reference being made to said lease for a more detailed description of the demised premises, for a term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, and upon such terms and conditions as are set forth therein, a short form of said lease appearing of record in Official Records Book 1703, page 0402 in the Office of the Clerk of the Court, Pasco County, Florida, and

WHEREAS, all rights, title and interest of the said HOOKER ATLANTA (7) CORPORATION, a Georgia corporation, and NONA BARNES, INC., a Georgia corporation, d/b/a LJ HOOKER DEVELOPMENTS, a Georgia Joint Venture, as Landlord under said lease have been transferred and are vested absolutely in Landlord herein, and

WHEREAS, Tenant has now opened for business in the demised premises and the parties desire to fix the commencement date of

APPROVED
AS TO FORM

Division Mgr.

Legal Dept.
Winn-Dixie Stores,
Inc.

This instrument was prepared by
.... .O Dealie Jr. Attorney-
... .... arrsrs Sr s 5050
Ed (x3d6 Court, Jarksonville,
Florida 32205

said lease as hereinafter set forth,

NOW THEREFORE, in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations paid by Tenant to Landlord, the receipt and sufficiency whereof are hereby acknowledged, it is mutually agreed:

1.   The commencement date of the above-described lease dated April 15, 1988, is fixed at November 10, 1988 and the expiration of the initial term of twenty (20) years demised therein shall be at midnight on November 9, 2008.

2.   All covenants, terms and conditions of the above-described lease, as amended, not modified or amended by this supplemental lease agreement are hereby ratified and confirmed.

IN WITNESS WHEREOF, Landlord and Tenant have executed this supplemental lease agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

HOOKER CORP., INC.

By _____
   Its   Vice   President

Attest _____
   Its   V/P   Secretary

(Corporate Seal)

LANDLORD

_____
As to Landlord


WINN-DIXIE STORES, INC.

By _____
   Its         President

Attest _____
   Its         Secretary

(Corporate Seal)

TENANT

_____
As to Tenant

-2-

STATE OF GEORGIA

COUNTY OF DeKALB

     The foregoing instrument was acknowledged before me this

31st day of JANUARY , 1989, by C. ROBERT BEISHLINE

and RICHARD M. PITYER , VICE President and VICE

~~PRESIDENT Secretary~~, respectively, of HOOKER CORE, INC. ,

a Georgia corporation, on behalf of the corporation.

(NOTARIAL SEAL)                  Notary Public, State and County
aforesaid

                                    My commission expires: Notary Public, Fulton County, Georgia
My Commission E . . . . . . . . 9


STATE OF FLORIDA

COUNTY OF DUVAL

     The foregoing instrument was acknowledged before me this

10th day of February , 19 89 , by James Kufeldt

and J. S. Bruse or , ——— President and ———

Secretary, respectively, of WINN-DIXIE STORES, INC., a Florida

corporation, on behalf of the corporation.

(NOTARIAL SEAL)                  Notary Public, State and County
aforesaid

                                    My commission expires: 7-17-90





*2044/004*
*41522*

WINN-DIXIE STORES, INC.   2400 E. HILLSBOROUGH AVE.   P. O. BOX 440   TAMPA, FLORIDA 33601-0440   (813) 237-3711

March 23, 1989

Hooker Core, Inc.
4830 West Kennedy Boulevard
Suite 445
Tampa, Florida  33609

**LEGAL DEPT.
DO NOT REMOVE**

      Re:  Winn-Dixie Store #752
          Ridge Plaza
          New Port Richey, Florida

Gentlemen:

    Reference is hereby made to lease dated April 15, 1988 covering subject location wherein you are Landlord and we are Tenant.

    Notwithstanding any provisions of Article 28 of said lease ("OPTION FOR EXPANSION"), appearing on page 16, it is hereby agreed between us that the expansion option available to the Tenant described therein shall become first available on September 1, 1999.  Thereafter, the option may be exercised at five year intervals.

    Except as hereby modified said lease dated April 15, 1988 shall be and remain in full force and effect and unchanged.

    Please date and sign in the spaces provided therefor below the two extra copies of this letter here enclosed to evidence your approval of the agreement herein contained, and then return said two copies to us at the letterhead address.

                      WINN-DIXIE STORES, INC.

                    By _____
                        D. L. Kimsey, Vice President

                        TENANT

    The foregoing agreement is hereby approved this 12TH day of
MAY_____, 1989.

                    HOOKER CORE, INC.

                    By _____
                    Its _____ President

                      LANDLORD

**OPERATORS OF SUPERMARKETS ACROSS THE SUNBELT**