UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

```
--------------------------------------------------- x
                                                     :
In re:                                               :      Case No. 05-03817-3F1
                                                     :
WINN-DIXIE STORES, INC., et al.,                     :      Chapter 11
                                                     :
                    Debtors.                         :      (Jointly Administered)
                                                     :
                                                     :      Obj. Deadline:  July 14, 2005 @ 4:00 p.m.
                                                     :      Hrg. Date:  July 27, 2005 @ 10:00 a.m.
                                                     :
--------------------------------------------------- x
```

### OBJECTION OF CAPSTONE ADVISORS, INC. TO PROPOSED CURE AMOUNTS DUE UNDER THE UNEXPIRED LEASE OF REAL PROPERTY AT STORE NO. 890 (KNIGHTDALE CROSSING) KNIGHTDALE, NC

Capstone Advisors, Inc. (the "Landlord") hereby submit this Objection (the "Objection") to the Debtors' Proposed Cure Amounts Due Under The Unexpired Lease Of Real Property At Store No. 890 (Knightdale Crossing) Knightdale, NC (the "Motion"), and respectfully represents as follows:

## I.    BACKGROUND FACTS

1.    Winn-Dixie Stores, Inc. and certain affiliated parties (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code on February 21, 2005. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.    Landlord is the owner or managing agent of the following shopping center wherein Debtors remain a tenant operating their store location (the "Premises") pursuant to an unexpired lease of nonresidential real property (the "Lease").

| Capstone Advisors, Inc. | |
|---|---|
| Knightdale Crossing | Knightdale, NC |

3.      The Lease is a "lease of real property in a shopping center" as that term is used in 11 U.S.C. § 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3rd Cir. 1990).

4.      On or about June 3, 2005, Debtor served the Conditional Cure Notice. The amounts set forth therein do not reflect all charges owing to Landlords under the Leases.

## II.    ARGUMENT

5.      The Debtors' proposed cure amount does not provide for payment of all obligations due under the Lease.

6.      Landlord's cure, as compared to the Debtors' cure is set forth below:

| Center | Pre-Petition Post-Petition | Interest | Attorney Fees[1] | Landlord Cure[2] | Debtor's Cure |
|---|---|---|---|---|---|
| Capstone/Knightdale | $83,502.25 $5,364.48 | $457.55 $266.02 | $6,026.22 | **$95,616.52** | **$58,839.06** |

7.      In determining what the Debtors must pay as cure pursuant to 11 U.S.C. § 365(b), the following must also be taken into consideration:

## A.    Year-end Adjustments and Reconciliation

8.      In addition to rent, attorneys fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy space at shopping centers pursuant to triple-net leases, where they typically pay rent and related lease

---

[1]    Attorneys' fees calculated through July 12, 2005 and do not include fees incurred from that date through the closing of any sale to assign the Leases. Landlords will provide such additional attorneys' fees when available

[2] Landlord Cure does not include year-end reconciliation charges that remain unbilled at this time.

charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred by the property. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances in this case, year-end reconciliations and adjustments for previous years for the Debtors are not yet complete. In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.

9.      Debtors continue to be responsible for all unbilled charges as they come due under the Leases. As a result, Landlords have not provided any estimates for these unbilled charges in their cure calculations and will simply bill the Debtors or their successor-in-interest in the ordinary course when those bills or credits are generated. That notwithstanding, any order approving any assignment of the Leases and the cure amount should provide whether the Debtors or their successor-in-interest under the Lease will remain liable for these unbilled charges. In the event these liabilities remain with Debtors, the Court should establish a reserve to cover such reconciliations. Should the proposed sale in any way attempt to limit the Debtors' responsibility for such unbilled charges, the Landlords reserve the right to add such estimated amounts to their cure request. Any attempt to limit Debtors' liability for such charges is contrary to the principles underlying Section 3.65, and should not be allowed.

**B.      Attorney Fees, Costs, and Interest**

10.      The Lease contains provisions for the recovery of attorneys' fees, costs, and interest in the event the Landlord is required to take legal action to protect its interest. The Debtors are obligated to cure all defaults under the Lease, and compensate the Landlord for its

actual pecuniary losses as a result of defaults under the Lease. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtor allowed to assume lease provided it cured *all pre-petition defaults*).

11.    In assuming and assigning the Lease, the Debtors take the Lease *cum onere*, that is, subject to existing burdens. The Debtors cannot, on the one hand, assume the favorable portions of the Lease and, on the other hand, reject the unfavorable aspects of the same Lease. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue the performance of the Lease, the Landlord is entitled to the full benefit of the bargain under its Lease with the Debtors. *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996); In re Washington Capital Aviation and Leasing, *supra*. The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtor to continue in a beneficial contract provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition to assumption of the Leases. *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D. N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtors' default under the Lease, and thus to properly assume the Lease. Additionally, post-petition interest is allowable where such interest is provided for under the terms of the Lease. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

12.    Attorneys' fees and costs are also proper components of a cure claim. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease

- 4 –

must be paid as a condition of assumption of the lease. Entertainment, Inc., 223 B.R. at 152 (citation omitted). Where is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Entertainment, Inc., 223 B.R. at 154. The fact that a lessor uses bankruptcy procedures to enforce a lease should not preclude :recovery of attorney fees and costs for such enforcement activity, particularly where the Bankruptcy Court is the exclusive forum where the lessor can obtain any relief, being foreclosed from state court relief by the automatic stay. Id., *see also*, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (landlord's fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al*, 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the Debtors' other obligations that arise postpetition . . . .").

13.    At this time, Landlord cannot accurately determine the total attorneys' fees that will be involved with each lease because these amounts will continue to accrue at least through the Plan confirmation hearing. Landlord will provide Debtors the most accurate information on attorneys' fees as soon as it is available.

14    As a, practical matter at this juncture, the best the Landlord can do is provide the most accurate information presently available regarding the cure payable by the Debtors, but must reserve the unqualified right to unilaterally amend the cure amounts as necessary (up through and including the time of any actual assignment) to include any additional sum of money for any reason, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. Otherwise, there is no basis to impose upon the Landlord the equivalent of an administrative bar date without the ability to recover rent and lease charges to which they are entitled under the Lease.

**C.     Reservation of rights to object to evidence of adequate assurance of future performance by any proposed assignee of the Lease.**

15.     At this point, no stalking-horse bidder has been identified by the Debtors, and no evidence of adequate assurance of future performance of a proposed assignee has been provided to the Landlords.

16.     Debtors bear the ultimate burden of persuasion as to issues under 11 U.S.C. § 365. *See* In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also* Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985).

17.     Despite the burden the Debtors bear, it is the Landlord who must object to the sale of their Leases (including any cure to be paid under 11 U.S.C. § 365) before the auction, even though there may be no stalking-horse bidder.

18.     The Debtors may not assume and assign the Lease unless there is adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C). *See also* 11 U.S.C. § 365(f)(2). More than adequate assurance of future performance of the Lease under Section 365(b)(1)(C) is required here, however, because the Lease is a shopping center lease. As such, the Debtors must provide all adequate assurance information as required by Section 365(b)(3), not simply information the Debtors or the proposed assignee might consider adequate for purposes of Section 365(b)(1)(C).

19.     Until the Landlord can identify the proposed assignee under the Lease, Landlord cannot make an informed decision on whether to object to any eventual sale. Therefore, Landlord reserves the right to supplement this Objection upon learning of the identity of the proposed assignee of the Lease, including the right to request a continuance to conduct limited discovery to review evidence of adequate assurance of future performance as required by Sections 365(b) and 365(f)(2).

20.     To the extent not inconsistent with this Objection, Landlord joins in the objection of other landlord claimants.

- 6 -

## III.    **CONCLUSION**

In order to protect the interests of the Landlord, the cure amounts should be established (subject to adjustment by the Landlord) as set forth herein, and the Court should grant such other relief that the Court finds may be just and proper.

Dated: July 14, 2005

HELD & ISRAEL

By:_____

Edwin W. Held, Jr., Esquire
Florida Bar #162574
Adam N. Frisch, Esquire
Florida Bar #635308
1301 Riverplace Blvd., Suite 1916
Jacksonville, Florida 32207
(904) 398-7038 Telephone
(904) 398-4283 Facsimile

and

**KATTEN MUCHIN ROSENMAN LLP**
Thomas J. Leanse (TL-8802)
Dustin P. Branch (DB-3553)
2029 Century Park East, Suite 2600
Los Angeles, California  90067
Phone: (310) 788-4400
FAX: (310) 788-4471

/winndixie/capstonebranchobj.djg