*Promenade*
*Daytona Beach Fl*
*Store # 2312*
*Landlord: Great Oak LLC*

*ORIGINAL*

**FIRST AMENDMENT TO LEASE**

THIS FIRST AMENDMENT TO LEASE (this "Amendment") is made as of June 15, 1998 by and between **Great Oak, LLC**, a Delaware limited liability company ("Landlord") and **Winn-Dixie Stores, Inc.**, a Florida corporation ("Tenant").

**RECITALS:**

A.      Landlord and Tenant are parties to that certain Lease dated July 24, 1987, as amended and/or evidenced by: (a) Short Form Lease dated July 24, 1987, recorded in Volume 3056, page 319 of the public records of Volusia County, Florida; (b) Letter Agreements dated September 23, 1987 and June 20, 1988; (c) Addendum to Lease and Second Addendum to Lease, each dated December 28, 1988; and (d) Supplemental Lease Agreement dated April 11, 1989 (as amended and evidenced, the "Original Lease"), pursuant to which Tenant has occupied and rented from Landlord the premises consisting of approximately 45,056 square feet, more particularly described in the Original Lease (the "Premises") and located in a shopping center commonly known as Promenade Shopping Center (f/k/a The Shoppes of Towne Center) and described in the Original Lease (as the same may be altered or expanded, the "Shopping Center").

B.      The term of the Original Lease expires at midnight on March 29, 2009 (the "Scheduled Expiration Date"), subject to Tenant's right to renew for 5 subsequent extension periods of 5 years each (collectively, the "Term").

C.      Tenant is permitted under the terms of the Original Lease to expand the Premises to include approximately 12,000 square feet of additional space located to the south of the Premises in the Shopping Center (the "Additional Space," and together with the Premises, the "Expanded Premises"). The Expanded Premises will consist of a total of approximately 57,000 leasable square feet. Landlord has agreed to lease to Tenant the Additional Space.

D.      Landlord and Tenant have agreed to amend the Original Lease upon the terms and conditions of this Amendment (the Original Lease, as amended by this Amendment is herein called the "Lease").

E.      Capitalized terms not otherwise defined herein shall have the meanings attributed to such terms in the Original Lease.

**FOR VALUABLE CONSIDERATION**, the receipt and sufficiency of which hereby are acknowledged, Landlord and Tenant agree, covenant, represent, and warrant, as applicable, as follows:

1.      <u>Recitals.</u> The foregoing recitals are true and correct in every respect and incorporated herein by reference.

2.      <u>Additional Space.</u> Landlord hereby leases the Additional Space to Tenant and Tenant hereby rents the Additional Space from Landlord upon the terms and conditions of the Lease.

3.      <u>Tenant's Improvements.</u> Tenant shall, at its own initial cost and expense (except for Landlord's Contribution and the Roof Contribution, as hereinafter defined), construct or cause to be constructed certain improvements ("Tenant's Improvements") upon the Additional Space, substantially in accordance with plans and specifications previously reviewed and approved by Landlord ("Tenant's Plans") and as shown on the Site Plan prepared by Tipton Associates, Incorporated, dated June 20, 1996, last revised September 10, 1996, and attached hereto as Exhibit "A" and incorporated herein by reference (the "Site Plan"). Landlord's and Tenant's execution of this Amendment constitutes their respective approval of the Site Plan and the development or redevelopment of the Shopping Center consistent therewith, and Landlord's and Tenant's consent to the submission of the Site Plan to the City of Daytona. Landlord and Tenant acknowledge and agree that the Site Plan may need to be revised (collectively, "Governmental Revisions") in order to obtain approval of the Site Plan by the City of Daytona, or any other appropriate governmental authority (collectively, the "Governmental Site Plan Approvals"). Landlord and Tenant each agree that any such Governmental Revisions shall be subject to Landlord's and Tenant's written approval, which approval

shall not be unreasonably delayed or withheld; provided, however, that no such Governmental Revisions shall be approved by Tenant if the revision in question would have a material adverse effect on Tenant's business operations in, parking for, or ingress or egress to or from the Expanded Premises. Landlord's and Tenant's approval of the Site Plan (and any Governmental Revisions thereto) shall survive any termination of this Amendment.  In addition, Tenant may and shall make such other changes (such changes subject to Landlord's prior approval, which approval shall not be unreasonably withheld, delayed, or conditioned), and interior modifications as are necessary or desirable to make the entire Expanded Premises suitable for Tenant's use in the conduct of its business. Tenant will perform or cause to be performed all construction of Tenant's Improvements in a good and workmanlike manner and in accordance with all applicable governmental laws, rules, and regulations.  Pursuant to Section 713.10, Florida Statutes, the interest of the Landlord in the Shopping Center and the Expanded Premises shall not be subject to liens for improvements made by Tenant.  At the Landlord's request, Tenant shall execute a written instrument, in form and content agreeable to Tenant, to be recorded for the purpose of providing notice of existence of the provisions of the preceding sentence in accordance with Section 713.10, Florida Statutes. Tenant shall hold Landlord and Landlord's interest in the Shopping Center harmless from any lien or encumbrance arising out of or in connection with Tenant's Improvements and will, at Landlord's request, record a memorandum of such indemnification in the public records of the county in which the Shopping Center is located.  Tenant shall indemnify and hold Landlord harmless from and against any claims or suits for damage to persons or property from defects in materials or the use of unskilled labor or from negligence or wilful misconduct of Tenant, its agents, employees, or contractors and subcontractors in connection with construction of Tenant's Improvements.

Paragraph 38 of the Original Lease, *Option for Expansion*, provides that in the event Landlord constructs a building in the Additional Space, then said building will have, among other things, a roof and ceiling heights the same as Tenant's Premises. The building constructed in the Additional Space was not constructed to the specifications set forth in the Original Lease and, therefore it will be necessary for Tenant to rebuild the roof in the Additional Space in order to make it compatible with Tenant's existing Store. It is anticipated that this additional roof work will cost approximately $90,000.00. As part of Tenant's Improvements, Tenant will rebuild the roof in the Additional Space so that it is the same height as the Premises. Landlord shall reimburse Tenant $90,000.00 to compensate Tenant for this additional roof work (the "Roof Contribution"). The Roof Contribution shall be Tenant's sole claim for any defect or deficiency in the physical condition of the Additional Space.

4.    **Deadlines.**    Landlord shall deliver to Tenant possession of the Additional Space no later than the Construction Commencement Date (as defined below) in the condition existing as of the date of this Amendment, without representation or warranty except as specifically provided in this Amendment. Construction of Tenant's Improvements shall be completed on or before the date which is 270 days after the Construction Commencement Date (the "Construction End Date"). If Landlord fails to timely deliver the Additional Space to Tenant, Tenant may, at its option exercisable by written notice to Landlord and as Tenant's sole remedy, either (i) extend to Landlord such additional time to deliver the Additional Space as Tenant deems reasonable, in Tenant's sole discretion, and the Construction Commencement Date and Construction End Date shall automatically be extended for any delay in Landlord's delivery of the Additional Space, or (ii) terminate this Amendment, in which case the Original Lease will continue in effect; provided, however, that Landlord shall be liable to Tenant for the cost of Tenant's Plans, and the cost of the Commitment, the Survey, and the Audit (all as hereinafter defined), and additionally, if Tenant enlarges the Premises in accordance with the Original Lease at a later date, Landlord shall be liable to Tenant for the amount of the Roof Contribution. Promptly following the execution of this Amendment, Landlord shall submit the Site Plan to the appropriate municipal and/or county governmental authorities for approval. The "Construction Commencement Date" shall be the date which is 180 days after the Execution Date, as hereinafter defined, of this Amendment. If Landlord fails to obtain the Governmental Site Plan Approvals on or before the Construction Commencement Date, then Tenant may, at its option, exercisable by written notice to Landlord and as Tenant's sole remedy, either (i) extend to Landlord such additional time to obtain the Governmental Site Plan Approvals as Tenant deems reasonable, in Tenant's sole discretion, or (ii) terminate this Amendment, in which case the Original Lease will continue in effect; provided, however, that Landlord shall be liable to Tenant for the cost of Tenant's Plans, and the cost of the Commitment, the Survey and the Audit (all as hereinafter defined), and additionally, if Tenant enlarges the Premises in accordance with the Original Lease at a later date, Landlord shall be liable to Tenant for the amount of the Roof Contribution.

Upon obtaining the Governmental Site Plan Approvals (including approval by Landlord and Tenant of any Governmental Revisions), the Original Lease shall be deemed automatically amended so that all references to "Exhibit A", the "Plot Plan", or the "Site Plan" shall mean and refer to the Site Plan incorporating any Governmental Revisions. Such amendment to the Original Lease shall survive any termination of this Amendment. Landlord shall use good faith and due diligence to obtain the Governmental Site Plan Approvals.

     5.     <u>Landlord's Improvements.</u> On or before the Construction End Date, Landlord shall, at its own cost and expense, reseal and restripe the parking lot in the area labeled as Phase 1 on the Site Plan ("Landlord's Improvements").

     6.     <u>Force Majeure.</u> Neither Landlord nor Tenant shall be liable or responsible for any delay in performing or completing their respective nonmonetary obligations under this Amendment due to strikes, riots, acts of God, shortages of labor or materials, theft, fire, public enemy, injunction, insurrection, court order, laws, or any other factor or force beyond their respective control.

     7.     <u>Completion.</u> Upon the earlier of (i) the Construction End Date, or (ii) the completion of Tenant's Improvements and commencement of Tenant's doing business in the Additional Space (such earlier date being the "Remodel and Enlargement Sale Date"):

     (a)     All references in the Original Lease to "Tenant's store building," "the building," "Tenant's Food Store," "the demised premises" and any other term referring to the Premises shall be deemed and interpreted to apply and refer to the Expanded Premises and the land upon which the Expanded Premises are constructed;

     (b)     The Scheduled Expiration Date shall be a date which is 15 years from and after the Remodel and Enlargement Sale Date and Tenant shall retain the right to renew and extend the Term beyond such Scheduled Expiration Date for 5 subsequent extension periods of 5 years each as provided in the Original Lease;

     (c)     Landlord shall not designate any portion of the parking areas in the Shopping Center (but excluding Outparcels "J," "K," and "L" which, pursuant to the terms of the Original Lease are not part of the Shopping Center, but are subject to the Declaration of Restrictions and Grant of Easement recorded at O.R. Book 3056, Page 309, of the public records of Volusia County, Florida, and certain restrictions or limitations as set forth in the Lease) for the exclusive use of any party and shall at all times provide and maintain a surfaced parking area and the number of parking spaces as shown on the Site Plan. Notwithstanding the foregoing, if any applicable laws, rules, or regulations (collectively, "Legal Requirements") mandate that a greater number of parking spaces be provided and maintained, such Legal Requirements shall control. Without Tenant's prior written consent, Landlord will not seek or permit another tenant of the Shopping Center to seek a variance or waiver from the minimum parking requirements applicable to the Shopping Center pursuant to such Legal Requirements. If any portion of the Phase 1's parking area is reduced by an amount in excess of ten percent (10%), Tenant may, at its option, terminate the Lease within 60 days of the reduction and shall be liable for Basic, Additional, and Percentage Rent only up to the time of such reduction. In the case of a reduction in Phase 1's parking area by an amount in excess of ten percent (10%) following which Tenant desires to terminate the Lease, however, Tenant shall notify Landlord and Landlord shall have 30 days after the date of Tenant's notice to propose alternative replacement parking area. If the alternative replacement parking area meets with Tenant's reasonable approval, Landlord will proceed to promptly pave and provide such alternative parking and the Lease shall continue. If the alternative parking area does not meet with Tenant's reasonable approval and such deficiency of parking facilities shall continue for 30 days after Tenant sends written notice thereof to Landlord giving reasonable details of the alternative parking deficiencies, Tenant shall have the right to terminate the Lease, provided that the termination of the Lease for such a default may be prevented and the Lease reinstated by Landlord curing the default within 30 days after the receipt of such notice of termination.

     8.     <u>Landlord's Contribution.</u> Within 30 days of the later of (i) the Remodel and Enlargement Sale Date, or (ii) the date on which Tenant has provided Landlord with: (a) a certificate from Tenant's architect stating that the Expanded Premises have been constructed in substantial accordance with Tenant's Plans, (b) a Certificate of Occupancy or its equivalent for the Expanded Premises, and (c) a final affidavit and lien

waiver from Tenant's general contractor and from any parties who have provided a notice to owner, Landlord shall pay to Tenant the sum of $1,197,700.00 ("Landlord's Contribution") and the Roof Contribution to partially reimburse Tenant for a portion of Tenant's Improvements. Simultaneously with Landlord paying Landlord's Contribution and the Roof Contribution to Tenant, Landlord and Tenant shall enter into a Second Supplemental Lease Agreement in the form attached hereto as Exhibit "C" and Tenant shall issue to Landlord an Estoppel Certificate in the form attached hereto as Exhibit "D".

9.    Rent. Following the Remodel and Enlargement Sale Date, and further upon completion of Landlord's Improvements and receipt by Tenant of Landlord's Contribution and the Roof Contribution:

Rent for the Expanded Premises shall be due and payable in accordance with the following:

(a)    Basic Rent:

(i) Basic Rent: Tenant shall pay to Landlord as annual basic rent for the Expanded Premises the sum of $411,164.00 per annum, payable in advance on the first day of each and every calendar month of the remainder of the Term, in equal monthly installments of $34,263.67.00 per month ("Basic Rent"). Basic Rent shall be subject to adjustments as set forth in (a)(ii) below.

(ii) Basic Rent Adjustment:

(A)    Increase in Basic Rent.  If the actual final construction cost of Tenant's Improvements (excluding the additional roof work contemplated in the last grammatical paragraph of paragraph 3 above) following completion thereof is more than $1,197,700.00 (the "Anticipated Construction Cost"), then Tenant may elect by written notice to Landlord, in Tenant's sole discretion, either to (1) pay the difference between the actual construction cost of Tenant's Improvements (excluding the additional roof work contemplated in the last grammatical paragraph of paragraph 3 above) and the Anticipated Construction Cost out-of-pocket or (2) require Landlord to pay such difference to Tenant (such payment being referred to as the "Cost Overage"); provided, however, that in no event shall Landlord be required to make any Cost Overage payment in excess of $500,000.00. Effective upon Landlord's payment of the Cost Overage to Tenant pursuant to (2) above, Basic Rent shall be increased by an amount per annum necessary to amortize the Cost Overage (using a 365 day or 366 day year) over the remaining term of the Lease to the Scheduled Expiration Date at an annual rate of interest of 12 percent, payable in equal monthly installments.

If the effective date of such increase in Basic Rent is on a day other than a Basic Rent due date, then the next payment of Basic Rent, as adjusted for such increase, shall also include an amount representing the monthly installment amount of such increase, prorated for the number of days between the effective date of such increase and the next due date for payment of Basic Rent.

(B)    Decrease in Basic Rent.  If the actual final construction cost of Tenant's Improvements (excluding the additional roof work contemplated in the last grammatical paragraph of paragraph 3 above) following completion thereof is less than the Anticipated Construction Cost (the "Cost Savings"), then Landlord's Contribution shall be reduced by the Cost Savings and Tenant may, upon written notice to Landlord, decrease Basic Rent by an amount per annum necessary to amortize the Cost Savings (using a 365 day or 366 day year) over the remaining term of the Lease to the Scheduled Expiration Date at an annual rate of interest of 12 percent, deducted from Basic Rent in equal monthly installments; provided, however, that Tenant shall not be entitled to a reduction in Basic Rent, and Landlord shall not be entitled to a reduction in the Landlord's Contribution, for any portion of such Cost Savings equal to or less than $10,000.00 (an amount equivalent to Tenant's $10,000 miscellaneous construction contingency).

If the effective date of such decrease in Basic Rent is on a day other than a Basic Rent due date, then the next payment of Basic Rent, as adjusted for such decrease, shall also reflect a deduction representing the monthly amount of such decrease, prorated for the number of days between the effective date of such decrease and the next due date for payment of Basic Rent.

(C)    Following completion of construction of Tenant's Improvements, Tenant shall promptly provide Landlord with a certification letter from Tenant and a contractor's affidavit each setting forth the actual construction cost of Tenant's Improvements (excluding the additional roof work contemplated in the last grammatical paragraph of paragraph 3 above). In the event of an adjustment of Basic Rent, the Second Supplemental Lease Agreement shall set forth the adjusted Basic Rent, as determined in accordance with (A) and (B) above, for the Expanded Premises.

(b) Percentage Rent: Tenant shall pay Percentage Rent to Landlord equal to the amount by which one percent (1%) of Tenant's gross sales in each fiscal year exceed the Basic Rent. Any Percentage Rent due shall be calculated based upon and payable on or before 60 days after the expiration of each fiscal year of Tenant, which fiscal year currently is from July 1 to June 30 of each year.

(c) Additional Rent:

(i) Additional Rent: Pursuant to the Original Lease, Tenant pays an amount on a monthly basis to partially compensate Landlord for its expenses in maintaining the Shopping Center common areas ("Additional Rent"). Tenant shall pay Additional Rent for this purpose in the amount of $5,700.00 per annum, payable on the first day of each and every calendar month of the remainder of the Term, in equal monthly installments of $475.00.

(ii) Tenant shall pay, within 30 days of receipt of Landlord's statement therefor, its Pro-rata Share of "Real Estate Taxes." Real Estate Taxes includes all ad valorem real estate taxes, less any abatements, discounts, or refunds permitted by law but excludes special assessments. Real Estate Taxes does not include any late fees or penalties incurred by Landlord due to Landlord's untimely payment of Real Estate Taxes, Landlord's income taxes or any taxes levied upon the personal property of Landlord or any other tenant of the Shopping Center. Within a reasonable time after Landlord receives notice or otherwise learns of any pending increase in Real Estate Taxes or the assessment amount used to calculate the same, Landlord shall notify Tenant in writing, stating whether or not Landlord intends to challenge the same. If Landlord institutes any action to challenge any assessment or Real Estate Taxes, then if the reasonable out-of-pocket costs of such challenge is less than the amount of Real Estate Taxes saved as a result of the challenge, Tenant shall pay as a portion of Common Area Maintenance Expenses and Additional Rent its Pro-rata Share of such cost, but if such cost exceeds the amount of Real Estate Taxes saved as a result of the challenge, Landlord shall pay the entire cost of the challenge. If Landlord elects not to protest or challenge any Real Estate Taxes or assessment increase, Tenant shall have the right to contest or protest the same by legal action, in Landlord's name if necessary, but at Tenant's sole cost and expense. Tenant's Pro-rata Share means a fraction, the numerator of which is 57,000 and the denominator of which is the number of gross leasable square feet in the entire Shopping Center, as it is portrayed on the Site Plan.

10.    Conditions Precedent. Notwithstanding anything to the contrary in this Amendment, Tenant shall have no liability hereunder and no obligation to commence Tenant's Improvements unless and until the following ((a) through (g)) ( the "Conditions Precedent") have been satisfied or complied with. Tenant shall have no right to commence construction of the Tenant Improvements until Tenant delivers written notice to Landlord that all of the Conditions Precedent have been satisfied, complied with by Landlord, and/or waived by Tenant. Tenant shall provide Landlord with written notice on or before the Construction Commencement Date stating whether the Conditions Precedent have been satisfied to Tenant's reasonable satisfaction provided that Landlord timely satisfies its obligations in connection with the same. If Tenant fails to timely notify Landlord of its acceptance or nonacceptance of the Conditions Precedent on or before the Construction Commencement Date, then Tenant shall be deemed to have waived the same. If all of the Conditions Precedent are not satisfied and Tenant delivers written notice of nonacceptance of the Conditions Precedent

to Landlord on or before the Construction Commencement Date, then Tenant may, at its option, exercisable by written notice to Landlord and as Tenant's sole remedy, either (i) if otherwise specifically provided in this Amendment, extend to Landlord such additional time to satisfy the unsatisfied Conditions Precedent(s) as Tenant deems reasonable, in Tenant's sole discretion, (ii) waive the unsatisfied Conditions Precedent(s), or (iii) terminate this Amendment, in which case the Original Lease will continue in effect; provided, however, that Tenant may exercise any further remedies available to Tenant as specifically provided in this Amendment.

(a) <u>Title.</u>  On or before 10 days after the date on which both Landlord and Tenant shall have executed this Amendment (the "Execution Date"), Tenant shall order from Lawyers Title Insurance Corporation (the "Title Company"), at Tenant's expense, a current title insurance commitment naming Tenant as the proposed insured, committing to insure Tenant's leasehold interest in the Expanded Premises and including copies of all title exceptions (the "Commitment").  Tenant shall have until 10 days after receiving both the Commitment and the Survey, as hereinafter defined (the "Title/Survey Review Deadline") to examine the Commitment. Tenant shall, on or before the Title/Survey Review Deadline, provide written objections, if any, to Landlord as to exceptions listed in the Commitment which affect the Expanded Premises.  It shall be a condition to Tenant's obligations under this Amendment that the Expanded Premises be subject only to exceptions reasonably satisfactory to Tenant ("Permitted Exceptions").  If Tenant timely sends to Landlord Tenant's Title Objection Notice, Landlord shall have 10 days after the date of receipt of such Tenant's Title Objection Notice to notify Tenant in writing whether Landlord is willing or, in its reasonable judgment, able to cure the objections before the Construction Commencement Date ("Landlord's Title Objection Response").  If Landlord notifies Tenant that it is unwilling or unable to cure Tenant's objections, then Tenant may, as Tenant's sole remedy, either (i) terminate this Amendment, in which case the Original Lease shall continue in effect as written; provided, however, that Landlord shall be liable to Tenant for the cost of Tenant's Plans, and the cost of the Commitment, the Survey, and the Audit, and additionally, if Tenant enlarges the Premises in accordance with the Original Lease at a later date, Landlord shall be liable to Tenant for the amount of the Roof Contribution, or (ii) Tenant may elect to waive its objections.  Tenant shall make such election within 15 days after receipt of Landlord's notice.  If Landlord notifies Tenant that it is willing and able to cure Tenant's objections, then it shall use reasonable efforts and shall have until the Construction Commencement Date to cure such objections.  If Landlord fails to cure Tenant's objections within such time, Tenant may, as Tenant's sole remedy, either (i) grant such additional time as it deems reasonable, in Tenant's sole discretion, (ii) may waive its objections, or (iii) may terminate this Amendment in which case the Original Lease shall continue in effect as written; provided, however, that Landlord shall be liable to Tenant for the cost of Tenant's Plans, and the cost of the Commitment, the Survey, and the Audit, and additionally, if Tenant enlarges the Premises in accordance with the Original Lease at a later date, Landlord shall be liable to Tenant for the amount of the Roof Contribution.  Notwithstanding the foregoing, Landlord shall cure or cause to be removed any exceptions (not caused by the act or omission of Tenant) that can be cured solely by the payment of money (i.e. taxes due and payable, mortgages or other encumbrances (unless Tenant obtains a subordination and nondisturbance agreement), mechanics' or construction liens, etc.), shall terminate and cause the eviction of any tenants under any other leases to the Additional Space, shall deliver evidence of Landlord's status, power, and authority as required by the Title Company, and shall execute and deliver an owner's and nonforeign affidavit as reasonably required by the Title Company.

(b) <u>Survey.</u>  On or before 10 days after the Execution Date, Tenant shall order at its sole expense from a surveyor licensed in the state in which the Shopping Center is located, an actual survey of the real property comprising the Shopping Center, showing all improvements currently located thereon (the "Survey"). The Survey shall show the metes and bounds or plat legal description of the Shopping Center as shown on the Commitment, shall locate all exceptions shown in the Commitment that are capable of being so located, and shall bear the certificate and be prepared in accordance with the survey protocol attached hereto as Exhibit "B".  Tenant shall have until the Title/Survey Review Deadline to review the Survey.  If the Survey shows any matters relating to the Expanded Premises which are objectionable to Tenant, in its reasonable judgment, Tenant shall notify Landlord in writing specifying survey defects on or before the Title/Survey Review Deadline ("Tenant's Survey Objection Notice").  If Tenant timely sends to Landlord Tenant's Survey Objection Notice, Landlord shall have 10 days after the date of receipt of such Tenant's Survey Objection Notice to notify Tenant in writing whether Landlord is willing or, in its reasonable judgment, able to cure the objections before the Construction Commencement Date ("Landlord's Survey Objection Response").  If Landlord notifies Tenant that it is unwilling or unable to cure Tenant's objections, then Tenant may, as Tenant's sole remedy, either (i) terminate this Amendment, in which case the Original Lease shall continue

in effect as written; provided, however, that Landlord shall be liable to Tenant for the cost of Tenant's Plans, and the cost of the Commitment, the Survey, and the Audit, and additionally, if Tenant enlarges the Premises in accordance with the Original Lease at a later date, Landlord shall be liable to Tenant for the amount of the Roof Contribution, or (ii) Tenant may elect to waive its objections. Tenant shall make such election within 15 days of receipt of Landlord's notice. If Landlord notifies Tenant that it is willing and able to cure Tenant's objections, Landlord shall use reasonable efforts and shall have until the Construction Commencement Date to cure such objections. If Landlord fails to cure Tenant's objection within such time, Tenant may, as Tenant's sole remedy, either (i) waive its objections, or (ii) terminate this Amendment in which case the Original Lease shall continue in effect as written; provided, however, that Landlord shall be liable to Tenant for the cost of Tenant's Plans, and the cost of the Commitment, the Survey, and the Audit, and additionally, if Tenant enlarges the Premises in accordance with the Original Lease at a later date, Landlord shall be liable to Tenant for the amount of the Roof Contribution.

(c) Environmental Audit. On or before 10 days after the Execution Date, Tenant shall order an update of the environmental audit of the Shopping Center provided by ICF Kaiser Engineers, Inc., addressed to Tenant, which audit analyzes, addresses, investigates, and/or reports as to those matters recommended to be included in a Phase I environmental audit pursuant to current ASTM standards (an "Audit"). Tenant shall have until the Title/Survey Review Deadline to review the Audit. If it reveals any environmental condition not acceptable to Tenant, in its reasonable judgment, Tenant shall notify Landlord in writing on or before the Title/Survey Review Deadline ("Tenant's Environmental Objection Notice"), Landlord shall have 10 days after receipt of Tenant's Environmental Objection Notice to notify Tenant in writing whether Landlord is willing or, in its reasonable judgment, able to cure the objections before the Construction Commencement Date. If Landlord notifies Tenant that it is unwilling or unable to cure such environmental condition, then Tenant may, as Tenant's sole remedy, either (i) terminate this Amendment in which case the Original Lease shall continue in effect as written; provided, however, that Landlord shall be liable to Tenant for the cost of Tenant's Plans, and the cost of the Commitment, the Survey, and the Audit, and additionally, if Tenant enlarges the Premises in accordance with the Original Lease at a later date, Landlord shall be liable to Tenant for the amount of the Roof Contribution, or (ii) Tenant may elect to waive its objections. Tenant shall make such election within 15 days after receipt of Landlord's notice. If Landlord notifies Tenant that it is willing and able to cure Tenant's objections, then it shall use reasonable efforts and shall have until the Construction Commencement Date to cure any environmental condition objected to by Tenant. If Landlord fails to so cure Tenant's objections within such time, Tenant may, as Tenant's sole remedy, either (i) waive its objections, or (ii) terminate this Amendment in which case the Original Lease shall continue in effect as written; provided, however, that Landlord shall be liable to Tenant for the cost of Tenant's Plans, and the cost of the Commitment, the Survey, and the Audit, and additionally, if Tenant enlarges the Premises in accordance with the Original Lease at a later date, Landlord shall be liable to Tenant for the amount of the Roof Contribution.

(d) Zoning/Comprehensive Plan. Tenant shall have received, prior to the Construction Commencement Date, written evidence from appropriate authorities that the zoning classification for the Premises allows for the operation of Tenant's business as permitted under the Lease and that the zoning classification is appropriate for and consistent with any existing state comprehensive plan future land use designation for the Expanded Premises (the "Zoning Letter").

(e) Notice Re: Governmental Site Plan Approvals. Landlord has provided a notice to Tenant that the Governmental Site Plan Approvals have been obtained.

(f) Approval of Governmental Revisions. Landlord and Tenant have approved any Governmental Revisions.

(g) Building Permit. Tenant has obtained a building permit for Tenant's Improvements.

11.    Construction Easement. Landlord grants to Tenant, its agents, employees, contractors, and subcontractors a nonexclusive temporary construction easement over and across the areas of the Shopping Center shown as shaded areas on the Site Plan attached as Exhibit "E" as a "Construction Easement Area". Such easement shall expire upon such completion of Tenant's Improvements.

12.    Consent to Non-Retail Use.  Tenant hereby consents to any office or other non-retail use of (a) the Shopping Center actually in existence and being used as of the date of this Amendment and (b) the premises in the Shopping Center formerly occupied by Phillips College, as outlined on the Site Plan attached hereto as Exhibit "F" provided, however, (i) such premises may not be used for any use exclusive to Tenant as set forth in the Lease or any other recorded document affecting the Shopping Center or for any of the following uses:  (1) spa, health, sports, or exercise club; (2) lounge, bar, "teen lounge" or social encounter club; (3) bowling alley; (4) pawn shop; (5) skating rink; (6) bingo or electronic or other game parlor; (7) theater (either motion or legitimate); (8) area or space for the sale or display of pornographic or "adult" material; (9) abortion or HIV clinic; (10) automobile dealership; (11) church; (12) manufacturing or storage business; (13) public auditorium or other public entertainment facility; (14) restaurant; or (15) any business requiring parking for delivery or service trucks on a routine or frequent basis such as a pizza delivery business; and (ii) such use shall be subject to the prior written consent of Tenant; and (iii) all parking for the premises in the Shopping Center formerly occupied by Phillips College and for the premises currently occupied by Evergreen Marketing shall be behind or in Phase 2 as shown on the Site Plan (or as otherwise approved by Tenant in writing) and shall not interfere with Tenant's delivery trucks' access to the Expanded Premises, and Landlord shall take all reasonable measures to enforce the same.  Landlord hereby agrees that, upon Tenant's written request, Landlord will engage a security service, at Landlord's sole cost and expense (Landlord shall not assess the cost of the security service as a common area maintenance expense to Tenant), to direct any patrons of any office or non-retail use in the Shopping Center to not use those parking facilities located in Phase 1 of the Shopping Center, and that Landlord shall continue to utilize a security service for this purpose during such times and occasions as may be reasonably requested by Tenant.

13.    Authority/No Consents.

(a) Landlord represents and warrants to Tenant that:

(i)    it has the power and lawful authority to execute, deliver, and perform its obligations under this Amendment, such execution, delivery, and performance has been authorized by all necessary action, and no consent, authorization, approval, or notice to any other party is necessary in connection with such execution, delivery, or performance or as a prerequisite to the enforceability against Landlord of this Amendment; the person signing this Amendment on behalf of Landlord is/are authorized to do so;

(ii)    it has not, nor to the best of its knowledge has any other party, except in accordance with applicable law, used, stored, or disposed of any Hazardous Substance, as hereinafter defined, in, on, or under the Shopping Center. "Hazardous Substance" includes, without limitation, any and all material or substances which are defined as "hazardous waste", "extremely hazardous waste" or a "hazardous substance" pursuant to the applicable Legal Requirements. "Hazardous Substance" also includes, but is not limited to, asbestos, polychlorobiphenyls ("PCB's"), chlorofluorocarbons, petroleum, and any substance for which any Legal Requirements require a permit or special handling in its use, storage, treatment, or disposal; and

(iii)    to the best of its knowledge, the Additional Space is free of latent defects.

(b) Tenant represents and warrants to Landlord that:

(i)    it is incorporated under Florida law and its status is active and current;

(ii)    it has the corporate power and authority to execute, deliver, and perform its obligations under the Original Lease and this Amendment, which execution, delivery, and performance has been authorized by all necessary corporate action and does not require any consent or approval of, or notice to, any third party; the person(s) signing this Amendment on behalf of Tenant is/are authorized to do so; and

(iii)    it has not, and will not, except in accordance with applicable law, use(d), store(d), or dispose(d) of any Hazardous Substance in, on, or under the Expanded Premises or the sewer system serving the Expanded Premises.

When used in this paragraph 13, the phrase "to the best of its knowledge" means the actual knowledge of Charles Carneal, being the asset manager of GE Capital Realty Group, Inc. responsible for the general management of the Shopping Center.

14.    <u>No Novation.</u>  Except as expressly modified or amended by this Amendment, the Original Lease remains in full force and effect.

15.    <u>Headings.</u>  The headings appearing in this Amendment are for reference only and do not modify or affect the terms hereof.

16.    <u>Exhibits.</u>    The following Exhibits are attached hereto and incorporated herein:

| | | |
|---|---|---|
| Exhibit "A" | - | Site Plan |
| Exhibit "B" | - | Surveyor's Protocol and Certificate |
| Exhibit "C" | - | Second Supplemental Lease Agreement |
| Exhibit "D" | - | Estoppel Certificate |
| Exhibit "E" | - | Construction Easement and Non-Retail Use Areas |
| Exhibit "F" | - | Premises formerly occupied by Phillips College |

**IN WITNESS WHEREOF,** Landlord and Tenant have executed and delivered this Amendment as of the date first above written.

Signed, sealed and delivered
in the presence of:

Printed Name: _Jerry Tem_

Printed Name: _Al Von Stein_

As to Landlord

Landlord:

**Great Oak, LLC,** a Delaware limited liability company

By: GE Capital Realty Group, Inc., a Texas corporation, as
Servicer

By: _____
Printed Name: _J. E. JERNIGAN_
Its: _Vice_    President

Tenant:

**Winn-Dixie Stores, Inc.,** a Florida corporation

By: _R. P. McCook_
Printed Name: _R. P. McCook_
Its: _Vice_    President

Printed Name: _AMY P. WILEY_

Printed Name: _BRENDA J. BABCOCK_

As to Tenant

STATE OF _Texas_  )

COUNTY OF _Dallas_  )

    The foregoing instrument was acknowledged before me this _9_ day of _June_, 199_8_, by _____, the _VP_ President of GE Capital Realty Group, Inc., a Texas corporation, on behalf of the corporation, as Servicer on behalf of GREAT OAK, LLC, a Delaware limited liability company. He/she [Please check] ✓ is personally known to me or____ has produced _____ as identification.

                                   _Beth Jones_

Printed Name: _Beth Jones_
Notary Public, State and County aforesaid.
My Commission Expires: _12/31/2000_
Notary ID No.: _____

                     (NOTARIAL SEAL)

                 **BETH JONES**
               **NOTARY PUBLIC**
              **State of Texas**
          **Comm. Exp. 12-31-2000**

STATE OF FLORIDA )

COUNTY OF DUVAL )

    The foregoing instrument was acknowledged before me this _June_ _15_, 199_8_, by _R. P. McCook_, _Vice_ President of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation, who is personally known to me.

                     _Lucy W. McCook_

Printed Name: _LUCY W. McCOOK_
Notary Public, State and County aforesaid.
My Commission Expires:_____
Notary ID No.:_____

       (NOTARIAL SEAL)

                 LUCY W McCOOK
               Notary Public, State of Florida
               Commission No. 571604
               My Commission Exp. Oct 1 2000

EXHIBIT "B"

WINN-DIXIE SURVEY PROTOCOL AND ORDER FORM
(Form SP-1)

This protocol presents the minimum scope of work Winn-Dixie Stores, Inc. or its subsidiaries or affiliates require for its boundary and improvements surveys. The following protocol has been developed to assist the surveyor in the preparation of the survey. The survey should include the following:

1.    A Surveyor's Certificate in the form attached hereto should be included on the face of the map. No other certifications should appear on the face of the map which deal with the same issues that are contained within the Surveyor's Certificate, except those otherwise required by this protocol.

2.    The survey must be certified to the persons or entities listed below or as otherwise requested by Winn-Dixie:

Winn-Dixie Stores, Inc.
Winn-Dixie _____, Inc.
_____ (Title Company)
_____ (Legal Counsel serving as Title Agent)
_____ (Other)

3.    The Surveyor's Certificate should refer to the title commitment, a copy of which (together with copies of the exceptions listed therein) will be provided to the surveyor as soon as possible.

4.    The legal description should refer to County, range, township, section and/or lot, and should match the legal description contained in the title commitment. If the legal description in the title commitment is not a metes and bounds description, the legal description on the map should also include the metes and bounds description, including a point of beginning and all of the calls therefor, together with a certification that both descriptions describe one and the same property. The metes and bounds calls should be labeled on the boundary lines and the metes and bounds description should be printed separately on the survey. The survey should show interior lot lines, if any. If the property is made up of several different parcels or lots, the following will be required: (a) separate descriptions for each parcel or lot, (b) a legal description that tracks around the outer boundary of the overall parcel, and (c) a surveyor's certification that they are one and the same property and that the parcels or lots are contiguous. If the record legal description and the actual measurements differ, both should be labeled as to each call and should be separately printed on the map, together with a certification that both descriptions describe one and the same property.

5.    The legal description should include a statement of acreage.

6.    The map should show the size (including gross square footage), location, and type of all existing buildings and the distance of such buildings from each boundary line, and show all "permanent" and significant improvements other than buildings, such as signs, parking areas or structures, etc. If there are existing improvements on the subject property, the map should indicate the number of existing and required handicapped, motorcycle, regular and other parking spaces. A note should be added indicating the number of parking spaces required by applicable zoning regulations.

7.    The map should indicate the location of water/gas/sewer mains of telephone/electric/utility lines or irrigation lines serving the subject property as evidenced by on-site observation by showing manholes, catch basins, crossing wires or cables, valve vaults and other surface indications.

8.    The map should show fences or walls and their dimensions and nature of use.

9.  The map should indicate any encroachments onto the subject property from any exterior source or onto adjacent property from the subject property and should indicate any visible easements or rights-of-way (other than those of record).

10. The map should show the widths of all streets and identify all streets as being either public or private rights of way and include arrows from all rights of way up to the edge of the property line to indicate that there are no gaps. The map should show points of access (curb cuts) from public rights of way (street or road) into the subject property. The map should contain a vicinity map showing the property surveyed in reference to nearby highway(s) or major street intersection(s). If the property is not abutted by a public roadway, the survey should show the location of the nearest public roadway and its distance from the property.

11. The map should identify and show setback, height and bulk restrictions of record or disclosed by applicable zoning or building codes (in addition to those recorded in subdivision maps) (and should note the source of same). If none, the map should so state.

12. The map should show all easements of record, including those that benefit the property, and identify same with the applicable recording information (Official Records Book and Page number). If an easement or other recorded document listed in the title commitment does not affect the subject property, is blanket in nature, or is not locatable, this should be noted.

13. Monuments must be placed (or a reference monument or witness to the corner) at all major corners of the boundary of the property, unless already marked or referenced by an existing monument or witness to the corner.

14. The map should show any retention or detention ponds or drainage structures or facilities.

15. The map should indicate names of all adjoining property owners on all sides of the subject property.

16. The map should indicate the flood zone designation for the subject property (with proper annotation based on Federal Flood Insurance Rate Maps or the state or local equivalent, by scaled map location and graphic plotting only).

17. The map should state the street address of the subject property or state that no street address has been assigned.

18. Significant observations not otherwise required to be disclosed should be noted on the map.

19. If checked below, a separate topographical survey should be completed.

    Topographical Required:  _____ yes      _____ no

20. If the property is unimproved at the time the survey is prepared, in an effort to assist Winn-Dixie in correctly locating the proposed improvements, the surveyor should contact Winn-Dixie's Store Design Department. Upon the surveyor's receipt of information from either Winn-Dixie's Store Design Department or their architect, the surveyor should prepare, in addition to the survey, a separate map showing the following:

    (a)  the projection of the location of the footprint of the contemplated improvements.

    (b)  If the contemplated improvements are used as a [check one] _____ supermarket; _____ warehouse; _____ manufacturing facility, the following applies with respect to parking spaces:

|  | Existing Parking Spaces | Required (by applicable building and zoning codes) |
|---|---|---|
| Regular (10') | | |
| Handicapped | | |
| Motorcycle | | |
| Other | | |

21.   The survey should note and the separate map (if any is prepared) should note any encroachments of existing (or proposed) improvements onto the subject property, onto adjacent property or over established building setback lines or easement areas.

22.   In addition to the above, the surveyor should furnish a copy of the declarations page of the surveyor's professional liability insurance policy.

JK2 108728.11 80130 00846
5/6/98 8:45 am                                        14

## SURVEYOR'S CERTIFICATE

Certified to: _____

Re:  File #_____    Drawing #_____    Title:_____

The undersigned Registered Land Surveyor (the "Surveyor") hereby certifies that:

1.    This survey was prepared from an actual on-the-ground survey of the real property shown hereon (the "Property") and was conducted by the Surveyor or under the Surveyor's supervision;

2.    Monuments have been duly located or placed and actually exist at all major corners of the boundaries of the Property and such monuments are located, are of the size, and consist of the materials, as shown on this Survey;

3.    The survey and the legal description of the Property, including the point of beginning and all calls, is true, correct, and accurate, is identical to the legal description contained in _____ Title Insurance Company's commitment for title insurance No. _____ dated _____ (the "Commitment") and there are no visible discrepancies, conflicts, shortages in area, boundary line conflicts, visible encroachments onto or protruding from the Property, or visible easements or rights-of-way (other than those which exist pursuant to recorded instruments) except as noted hereon;

4.    All recorded easements or other instruments or exceptions noted in the Commitment ("Exceptions") and capable of being located have been correctly located hereon and are indicated by official recording information [book and page], and those Exceptions which cannot be located or do not affect the Property are noted hereon either as "blanket" Exceptions that affect the entire Property or as not affecting the Property;

5.    The following, if they exist on the Property, have been located on this Survey:

(a)    buildings (labeled as to type, dimensions and gross square footage, and distance from each boundary line);

(b)    significant other improvements other than buildings, such as signs, parking areas, or other structures such as fences or walls (labeled as to dimensions and nature of use);

(c)    water/gas/sewer mains and telephone/electric/utility lines (as determined by on site surface observation only);

(d)    water retention or detention ponds;

(e)    high water marks, if the Property is located on or contains a body of water;

(f)    interior lot lines; and

(g)    any natural or constructed objects affecting the Property;

6.    Lines indicating all setback restrictions of record or disclosed by applicable building or zoning codes are drawn hereon and any height or bulk restrictions of record or disclosed by applicable building or zoning codes, if any, are noted hereon and the source for either type of restriction is indicated on this Survey.  If no such restrictions affect or apply to the Property, a note has been placed hereon to so indicate;

7.    If a street address has been assigned for the Property, it is noted on this Survey;

8.    A vicinity map is contained on this Survey and such vicinity map shows the Property in reference to nearby public rights-of-way and major street intersections.  This Survey shows the names and widths of all rights-of-way bounding the Property and indicates (a) whether such rights-of-way are public or private; (b) by use of arrows drawn to the Property boundary line that there are no gaps between the Property boundaries and the borders of such rights-of-way; (c) existing curb cut access points to any such rights-of-way which are public; and (d) that the Property has access to and from a public roadway as shown on the Survey.  This Survey shows the distance to and location of the nearest intersecting public street or road [if access is by easement or private right of way];

9.    Based upon a review of Federal Flood Insurance Rate Maps (or the state or local equivalent if no federal map exists), the Surveyor has determined by scaled map location and graphic plotting only that the Property is not located in a 100 year Flood Plain or in an identified "flood prone area" as defined by the U.S. Department of Housing

JK2 108728.11 80130 00846
5/6/58 8:45 am

and Urban Development, pursuant to the Flood Disaster Insurance Rate Map Panel #_____, dated _____, which such map panel covers the area in which the Property is situated;

      10.    The  Property  contains  approximately  _____  acres  and  currently  is  zoned _____;

      11.    The name of the owners of the properties adjoining the Property are indicated on this Survey;

      12.    This Survey meets or exceeds the minimum technical standards established pursuant to the laws of the state in which the Property is located and meets the requirements set forth in the Winn-Dixie Survey Protocol (Form SP-1).

      13.    This is to certify that this map or plat and the survey on which it is based were made (i) in accordance with "Minimum Standard Detail Requirements for ALTA/ACSM Land Title Surveys," jointly established and adopted by ALTA and ACSM in 1992, and includes items 1, 2, 3, 4, 6, 7,  8,  and 10 of Table A thereof, and (ii) pursuant to the Accuracy Standards (as adopted by ALTA and ACSM and in effect on the date of this certification) of a(n) [insert "Urban," "Suburban," "Rural," or "Mountain/Marshland" here] Survey.

Signature:_____ Registered Land Surveyor No._____

Address:_____ _____

Phone:_____
Fax:_____

EXHIBIT "C"

Second Supplemental Lease Agreement

**THIS SECOND SUPPLEMENTAL LEASE AGREEMENT** (the "Agreement") is made as of _____ (the "Effective Date"), between **WINN-DIXIE STORES, INC.,** a Florida corporation (the "Tenant") and **GREAT OAK, LLC,** a Delaware limited liability company (the "Landlord").

**R E C I T A L S:**

1.      Landlord and Tenant are parties to that certain lease dated July 24, 1987, as amended and/or evidenced by: (a) Short Form Lease dated July 24, 1987, recorded in Volume 3056, page 319 of the public records of Volusia County, Florida; (b) Letter Agreements dated September 23, 1987 and June 20, 1988; (c) Addendum to Lease and Second Addendum to Lease, each dated December 28, 1988; (d) Supplemental Lease Agreement dated April 11, 1989; (e) First Amendment to Lease dated _____; (the "First Amendment" and collectively, the "Lease").

2.      The First Amendment provided for the property leased to Tenant to be expanded (the "Expanded Premises"), for certain construction activities to be performed by Tenant ("Tenant's Improvements") and, upon completion of Tenant's Improvements and Tenant's commencement of business, for the Lease to be amended to fix the date for commencing the new Basic Rent, Additional Rent, Percentage Rent, and Real Estate Taxes payable as provided in the First Amendment.

3.      Tenant's Improvements were completed and Tenant began doing business in the Expanded Premises on _____ and received Landlord's Contribution, as defined in the First Amendment, on the Effective Date.

**NOW THEREFORE,** for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant agree as follows:

1.      The foregoing recitals are true and correct in every respect and incorporated herein by reference.

2.      The term of the Lease, subject to Tenant's rights of extension as provided in the First Amendment, shall expire on _____ (the "Term").

3.      Beginning on the Effective Date and continuing throughout the Term, Tenant shall pay to Landlord the Basic Rent, Additional Rent, Percentage Rent, and Real Estate Taxes payable as provided in the First Amendment.

4.      Except as expressly modified herein, the Lease remains in full force and effect as written.

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Agreement on the date first set forth above.

**Signed, sealed and delivered**
**in the presence of:**

**Landlord:**

**Great Oak, LLC,** a Delaware limited liability company

By: GE Capital Realty Group, Inc., a Texas corporation, as Servicer

_____
Printed Name:_____

By:_____
Printed Name:_____
Its: _____ President

_____
Printed Name:_____

As to Landlord

JK2 108728.11 80130 00846
5/6/98 8:45 am

Tenant:

**Winn-Dixie Stores, Inc., a Florida corporation**

By:_____
Printed Name: _____    Printed Name:_____
                                     Its:  _____    President
Printed Name:_____

As to Tenant

STATE OF _____ )

COUNTY OF _____ )

    The foregoing instrument was acknowledged before me this _____ day of _____, 199__, by
_____, the _____ President of GE Capital Realty Group, Inc., a Texas corporation, on behalf of
the corporation, as Servicer on behalf of GREAT OAK, LLC, a Delaware limited liability company.  He/she [Please
check]____ is personally known to me or____ has produced _____ as identification.

        Printed Name: _____
        Notary Public, State and County aforesaid.
        My Commission Expires:_____
        Notary ID No.: _____

        (NOTARIAL SEAL)

STATE OF FLORIDA )

COUNTY OF DUVAL )

    The foregoing instrument was acknowledged before me this _____ _____, 199__, by
_____ President of WINN-DIXIE STORES, INC., a Florida corporation, on behalf
of the corporation, who is personally known to me.

        Printed Name: _____
        Notary Public, State and County
        aforesaid.
        My Commission Expires:_____
        Notary ID No.:_____

        (NOTARIAL SEAL)

EXHIBIT "D"

Estoppel Certificate

WINN-DIXIE STORE #_____
Volusia County, Florida
Promenade Shopping Center

The undersigned officer of WINN-DIXIE STORES, INC., a Florida corporation ("WINN-DIXIE") hereby certifies, on behalf of WINN-DIXIE, that as of _____, 19__ (the "Certificate Date"), the following is true and correct:

1.      That WINN-DIXIE is the tenant ("Tenant") under a currently effective lease (as amended as described below, the "Lease") with GREAT OAK, LLC, a Delaware limited liability company, as the current landlord ("Landlord") dated July 24, 1987, conveying a leasehold estate of the property described therein (the "Premises") located in a shopping center known as Promenade Shopping Center (the "Shopping Center"), and the Lease has been amended or is evidenced only by [TO BE EDITED TO REFLECT ACTUAL DOCUMENTS WHEN PREPARED]:

> (a)    Short Form Lease dated July 24, 1987, recorded in Official Records Volume 3056, page 319 of the public records of Volusia County, Florida;
> (b)    Letter Agreements dated September 23, 1987 and June 20, 1988;
> (c)    Addendum to Lease and Second Addendum to Lease, each dated December 28, 1988;
> (d)    Supplemental Lease Agreement dated April 11, 1989;
> (e)    First Amendment to Lease dated _____;
> (f)    Second Supplemental Lease Agreement dated _____.

2.      That the term of the Lease commenced March 30, 1989, and is scheduled to expire on _____ unless renewed or terminated in accordance with the terms of the Lease. Pursuant to the Lease, Tenant is entitled to renew the Lease for 5 terms of 5 years each.

3.      That, to the best of Tenant's knowledge, and subject to Tenant's right of audit and review as provided in the Lease, all rent and other charges due from Tenant to Landlord have been paid through and including _____, 199__, and Tenant currently has no defense, set-offs, or counterclaims to the payment of rent or other charges due Landlord under the Lease.

4.      That, to the best of Tenant's knowledge, Landlord is not in default under the Lease.

5.      That the Lease contains no provision for purchase of the Premises by Tenant.

6.      Tenant has received no notice of any sale, transfer, assignment, or pledge of Landlord's interest in the Lease or the rent due thereunder to any party except: _____ and _____

7.      Tenant is not the subject of any filing for bankruptcy or reorganization under any applicable bankruptcy law.

8.      Notwithstanding anything to the contrary herein:

> (a)    No acceptance or possession of the Premises, opening for or operation of business by Tenant therein, execution of this certificate, or payment of rent under the Lease constitutes or will constitute acceptance by Tenant of work or materials that are defective or not completed in accordance with Tenant's plans and specifications, or a waiver of Tenant's rights against Landlord in connection therewith except in connection with the Additional Space and the Roof Contribution as such terms are defined and discussed in the First Amendment to Lease dated _____.

> (b)    Tenant makes no representation or warranty that the Premises or the Shopping Center, or any portion thereof is in compliance with the Americans With Disabilities Act

JK2 108728.11 80130 00846
5/6/98 8:45 am

or other applicable laws or regulations, however, it has not received notification from any government agency of any noncompliance therewith.

9.      The address for notices to Tenant is Real Estate Manager, Winn-Dixie Orlando Division, 3015 Coastline Drive, Orlando, Florida 32808, with a copy to: General Counsel, Winn-Dixie Stores, Inc., 5050 Edgewood Ct., P.O. Box B, Jacksonville, FL 32203-0297.

10.     This certificate is not valid and may not be relied upon unless and until it is executed by the Landlord and a signed counterpart is received by Tenant.

IN WITNESS WHEREOF, the undersigned has executed this certificate on behalf of Tenant.

WINN-DIXIE STORES, INC.

By:_____
Printed Name:_____
Its:_____

The undersigned, on behalf of Landlord, affirms that the certifications by Tenant in the foregoing certificate are true and correct to the best of Landlord's knowledge. Further, Landlord certifies that, to the best of Landlord's knowledge, Tenant has fully performed its obligations under the Lease to date and Tenant is not in default thereunder.

IN WITNESS WHEREOF, the undersigned has executed this certificate on behalf of Landlord.

GREAT OAK, LLC

By: GE Capital Realty Group, Inc., a Texas corporation, as Servicer

By:_____
Printed Name:_____
Its:        _____    President

JK2 108728.11 80130 00846
5/6/98 8:45 am



EXHIBIT "E"



SUPPLEMENTAL LEASE AGREEMENT

THIS AGREEMENT, made this _11 th_ day of _APRIL_, 1989, between SHOPPES OF TOWNE SOUTH, INC., a Florida corporation, (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the heirs, legal representative, successors and assigns of the respective parties;

WITNESSETH:

WHEREAS, by Lease dated July 24, 1987, Landlord did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development known as The Shoppes of Towne South, located at the northeast corner of Nova and Beville Roads, in the City of Daytona Beach, County of Volusia and State of Florida, for an initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form of said Lease being recorded in Official Record Book 3056, pages 0319 through 0325 of the Public Records of Volusia County, Florida; and

WHEREAS, the Lease has been amended to date by letter agreements dated September 23, 1987 and June 20, 1988, and by Addendum to Lease and Second Addendum to Lease each respectively dated December 22, 1988; and

WHEREAS, the said construction has been completed and the Tenant has now opened for business in the demised premises and the parties hereto desire to fix the commencement date of said Lease, as hereinafter set forth.

NOW THEREFORE, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and valuable considerations, in hand paid by the Tenant to the Landlord,

PROVED
TO FORM

tion Mgr.

al Dept.
ive Stores,
Inc.

This instrument was prepared by
Ronald D. Peterson, Attorney-at-Law
whose address is 5050 Edgewood
Court, Jacksonville, Florida 32205

the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

    1.   The commencement date of the above described Lease dated July 24, 1987 is fixed at March 30, 1989, and the expiration of the initial term of twenty (20) years demised therein shall be March 29, 2009 at twelve o'clock midnight.

    2.   It is mutually understood and agreed that the Lease dated July 24, 1987, as amended, shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby.  All covenants, terms, obligations and conditions of the Lease, as previously amended, not modified or amended by this Supplemental Lease Agreement, are hereby ratified and confirmed.

    IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

SHOPPES OF TOWNE SOUTH,
INC.

By _____

Its _____ President

As to Landlord

Attest: _____

Its _____ Secretary

(CORPORATE SEAL)

LANDLORD

WINN-DIXIE STORES, INC.

_____

By _____

Its _____ President

As to Tenant

Attest: _____

Its _____ Secretary

(CORPORATE SEAL)

TENANT

STATE OF *Florida* )
COUNTY OF *Broward* )

    The foregoing instrument was acknowledged before me this _11_ day of _April_, 1989, by _Ralph Chernin_ and _Alan Chernin_, _The_ President and _The_ Secretary, respectively, of SHOPPES OF TOWNE SOUTH, INC., a Florida corporation, on behalf of the corporation.

(NOTARIAL SEAL)

                              NOTARY PUBLIC, State and County
                              aforesaid

                              My Commission Expires:
                              4-30-90

STATE OF    FLORIDA )
COUNTY OF    _____ )

    The foregoing instrument was acknowledged before me this _____ day of _____, 1989, by _____ and _____, _____ President and _____ Secretary, respectively, of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation.

(NOTARIAL SEAL)

                                NOTARY PUBLIC, State and County
                              aforesaid

                              My Commission Expires:

SUPPLEMENTAL LEASE AGREEMENT

THIS AGREEMENT, made this _11th_ day of _APRIL_, 1989, between SHOPPES OF TOWNE SOUTH, INC., a Florida corporation, (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the heirs, legal representative, successors and assigns of the respective parties;

WITNESSETH:

WHEREAS, by Lease dated July 24, 1987, Landlord did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development known as The Shoppes of Towne South, located at the northeast corner of Nova and Beville Roads, in the City of Daytona Beach, County of Volusia and State of Florida, for an initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form of said Lease being recorded in Official Record Book 3056, pages 0319 through 0325 of the Public Records of Volusia County, Florida; and

WHEREAS, the Lease has been amended to date by letter agreements dated September 23, 1987 and June 20, 1988, and by Addendum to Lease and Second Addendum to Lease each respectively dated December 22, 1988; and

WHEREAS, the said construction has been completed and the Tenant has now opened for business in the demised premises and the parties hereto desire to fix the commencement date of said Lease, as hereinafter set forth.

NOW THEREFORE, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and valuable considerations, in hand paid by the Tenant to the Landlord,



This instrument was prepared by
Ronald E. Peterson, Attorney-at-Law
whose address is 5050 Edgewood
Court, Jacksonville, Florida 32205

the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1.   The commencement date of the above described Lease dated July 24, 1987 is fixed at March 30, 1989, and the expiration of the initial term of twenty (20) years demised therein shall be March 29, 2009 at twelve o'clock midnight.

2.   It is mutually understood and agreed that the Lease dated July 24, 1987, as amended, shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby.    All covenants, terms, obligations and conditions of the Lease, as previously amended, not modified or amended by this Supplemental Lease Agreement, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

SHOPPES OF TOWNE SOUTH,
INC.

By _____
Its                President

Attest: _____
Its                Secretary

_____
As to Landlord

(CORPORATE SEAL)

LANDLORD

WINN-DIXIE STORES, INC.

By _____
Its                President

Attest: _____
Its                Secretary

_____
As to Tenant

(CORPORATE SEAL)

TENANT

STATE OF _Florida_ )
COUNTY OF _Broward_ )

The foregoing instrument was acknowledged before me this _11_ day of _April_, 1989, by _Ralph Cherkin_ and _Alan Cherkin_, _The_ President and _The_ Secretary, respectively, of SHOPPES OF TOWNE SOUTH, INC., a Florida corporation, on behalf of the corporation.

(NOTARIAL SEAL)

NOTARY PUBLIC, State and County aforesaid

My Commission Expires: _4-30-90_

STATE OF    FLORIDA )
COUNTY OF _Duval_ )

The foregoing instrument was acknowledged before me this _27th_ day of _April_, 1989, by _James Kufeldt_ and _J. S. Bryan, Jr._, _____ President and _____ Secretary, respectively, of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation.

(NOTARIAL SEAL)

_Susan B. Clarkson_
NOTARY PUBLIC, State and County aforesaid

Notary Public, State of Florida
My Commission Expires Commission Expires Apr. 11, 1992

NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS NON-DISTURBANCE AND ATTORNMENT AGREEMENT, made this _5th_ day of _October_, 1987, between SHOPPES OF TOWNE SOUTH, INC., a Florida corporation ("Landlord"), WINN-DIXIE STORES, INC., a Florida corporation ("Tenant"), and MIDATLANTIC NATIONAL BANK ("Mortgagee") which terms "Landlord", "Tenant" and "Mortgagee" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties.

RECITALS

A.   Shoppes of Towne South, Inc., is named as Landlord in the Lease described below, which Lease demises certain described store premises located in a shopping center development situated at the northeasterly corner of the intersection of Nova Road and Beville Road in Daytona Beach, Volusia County, Florida.

B.   The Tenant has entered into a Lease with the Landlord for certain store premises, which Lease is dated July 24, 1987, for an initial term of twenty (20) years, commencing upon Tenant's opening for business in the demised store premises as specified in the Lease and a short form of the Lease will be recorded in the public records of Volusia County, Florida, (which Lease is hereinafter referred to as the "Lease").

C.   Mortgagee has accepted a mortgage (which together with any modifications, consolidations, extensions, increases or renewals is referred to in this Agreement as the "Mortgage") made by Landlord to Mortgagee, dated ___July 10___, 1987, and recorded in Official Records Book 3007, page 1001, of the public records of Volusia County, Florida, securing a loan made by Mortgagee covering the entire premises under the Lease, but Tenant is requiring that this Agreement be executed and delivered.

D.   The Lease and Short Form Lease have not been amended to date.


APPROVED
AS TO FORM
_____
DIVISION MGR.
_____
LEGAL DEPT.
WN-DIXIE STORES,
INC.

This instrument was prepared by
Ronald D. Peterson, Attorney-at-Law
whose address is 5050 Edgewood
Court, Jacksonville, Florida 32205

IN CONSIDERATION of the above and the mutual promises below, the parties, intending to be legally bound, covenant and agree as follows:

1.    The Lease is in full force and effect in accordance with its terms.   Mortgagee has approved the terms of the Lease and has agreed that Landlord may enter into the Lease with Tenant.

2.    Neither the Landlord nor the Tenant will, without the prior written consent of the holder of the Mortgage:  (i)  modify the Lease or any extensions or renewals thereof in such a way as to reduce the rent, accelerate rent payments, shorten the original term or change any renewal option;  (ii) terminate the Lease except as provided by its terms;  (iii) tender or accept a surrender of the Lease or a prepayment in excess of one month of any rental due under the Lease;  or  (iv) subordinate or permit subordination of the Lease to any lien subordinate to the Mortgage.   Any such purported action without such consent shall be void as against the holder of the Mortgage.

3.    Any notice required to be given to the Landlord by the Tenant shall be given also to the holder of the Mortgage, provided such holder (other than the Mortgagee) shall have notified the Tenant in writing of its name and address, and any right of the Tenant dependent upon notice shall take effect only after notice so given.   Performance or commencement to cure such default within thirty (30) days of said notice by the holder of the Mortgage in accordance with the conditions of the Lease shall satisfy such conditions of the Lease requiring performance by the Landlord.

4.    Always provided Tenant shall not be in default under the Lease, Tenant's right to possession of the leased premises and Tenant's rights arising out of the Lease shall not be affected or disturbed by the Mortgagee, or any other holder of the Mortgage, in the exercise of any of their rights under the Mortgage, or the note secured thereby; nor shall Tenant be named

as a party defendant in any foreclosure of the lien of the Mortgage nor in any other way be deprived of its rights under the Lease. Also, in the event that the Mortgagee or any other person acquires title to the leased premises pursuant to the exercise of any remedy provided for in the Mortgage, the Lease shall not be terminated or affected by the foreclosure or sale or any such proceeding and the Mortgagee hereby covenants that any sale of the leased premises pursuant to the exercise of any rights and remedies under the Mortgage or otherwise, shall be made subject to the Lease and the rights of the Tenant thereunder, and Mortgagee or such other person acquiring title to the leased premises shall be bound by the Lease to perform the covenants and obligations of Landlord required therein. The Tenant will attorn to the Mortgagee or any other holder of the Mortgage who has acquired the premises through foreclosure or otherwise. This provision shall be self-operative but the Tenant will execute and deliver any additional instruments required to evidence such attornment.

5.   At such time as the Tenant accepts and occupies the premises demised under the Lease, the Tenant agrees to furnish the Landlord and/or the holder of the Mortgage with an estoppel certificate stating that the Tenant has accepted said premises,



is in possession of same, is paying rent and knows of no offsets or defenses against the Landlord, except as set forth in said estoppel certificate.

This Agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their heirs, legal representatives, successors and assigns.

IN WITNESS WHEREOF, this Non-Disturbance and Attornment Agreement has been duly executed by the parties hereto.

Signed, sealed and delivered in the presence of:

SHOPPES OF TOWNE SOUTH, INC.

By _____ Its _____ President

Attest _____ Its _____ Secretary

As to the "Landlord"

(CORPORATE SEAL)

LANDLORD

WINN-DIXIE STORES, INC.

By _____ Its _____ President

Attest _____ Its _____ Asst. Secretary

As to the "Tenant"

(CORPORATE SEAL)

TENANT

MIDATLANTIC NATIONAL BANK

By _____ Its ANTHONY M. President ASSISTANT VICE

Attest _____ Its CATHERINE BRONS Secretary Assistant Cashier

As to the "Mortgagee"

(CORPORATE SEAL)

MORTGAGEE

-4-

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this 3 day of SEPTEMBER , 1987 by RALPH CHECNIN and ALAN CHECNIN , the _____ President and _____ Secretary of SHOPPES OF TOWNE SOUTH, INC., a Florida corporation, known to me to be the persons who subscribed to the foregoing instrument and acknowledged to me that they executed the same on behalf of SHOPPES OF TOWNE SOUTH, INC.

(Notarial Seal)

Notary Public
My Commission Expires:

NOTARY PUBLIC, STATE OF FLORIDA
MY COMMISSION EXPIRES MAR. 21, 1991,
BONDED THRU NOTARY PUBLIC UNDERWRITERS


STATE OF FLORIDA

COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 14th day of October , 1987 by A. Dano Davis and J. S. Crosslin , the ___ President and Clerk Secretary of WINN-DIXIE STORES, INC., a Florida corporation, known to me to be the persons who subscribed to the foregoing instrument and acknowledged to me that they executed the same on behalf of WINN-DIXIE STORES, INC.



(Notary Seal)

Notary Public
My Commission Expires:

STATE OF *New Jersey*

COUNTY OF *Middlesex*

The foregoing instrument was acknowledged before me this

_5th_ day of _October_ , 1987 by _ANTHONY MINUTI_
                                    _ASSISTANT VICE PRESIDENT_

and _CATHERINE BROTHERTON_
       _Assistant Cashier_ , the _Asst Vice_ President and _Asst. Cashier_

of MIDATLANTIC NATIONAL BANK, known to me to be the

persons who subscribed to the foregoing instrument and

acknowledged to me that they executed the same on behalf of

MIDATLANTIC NATIONAL BANK.

                                    _Sharon Wojtaszek_
(Notarial Seal)                     Notary Public
                                    My Commission Expires:

                                    SHARON WOJTASZEK
                                    NOTARY PUBLIC OF NEW JERSEY
                                    My Commission Expires June 19, 1992

SECOND ADDENDUM TO LEASE

THIS SECOND ADDENDUM TO LEASE is made and entered into this 28 day of Dec , 198 X , by and between SHOPPES OF TOWNE SOUTH, INC., a Florida corporation, as Landlord, and WINN-DIXIE STORES, INC., a Florida corporation, as Tenant.

W I T N E S S E T H :

WHEREAS, Landlord and Tenant entered into that certain Shopping Center Lease dated July 24, 1987 relative to the rental of space in that certain Shopping Center known as "The Shoppes of Towne South" in the City of Daytona Beach, County of Volusia, State of Florida; a Short Form thereof having been recorded November 4, 1987 in O.R. Book 3056, at Page 319 of the Public Records of Volusia County, Florida (hereinafter referred to as "Lease"); and

WHEREAS, Landlord and Tenant entered into that certain Addendum to Lease dated ___December 22___, 198_8_; and

WHEREAS, Landlord and Tenant desire to modify the terms and provisions of the Lease.

NOW THEREFORE, in consideration of the sum of Ten ($10.00) Dollars and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.     That the above recitals are true and correct.

2.     That paragraph 4 of the Lease is hereby deleted, and substituted in its place as paragraph 4 is the following:

"4.     Landlord covenants and agrees that the construction of the shopping center shall begin not later than September 1, 1987 and shall be completed not later than February 28, 1989; and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction; provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than March 31, 1989, said option to terminate shall not arise. "Construction of the shopping center" shall be deemed to have begun when the first concrete footings have been poured. If pursuant to this paragraph Tenant shall cancel or terminate this lease or if Landlord fails to commence or complete construction of the shopping center by the above dates, Landlord agrees to give the Tenant the first right of refusal, on the same terms and conditions as Landlord is willing to grant to a bona fide third party, to be exercised within sixty (60) days after receipt of notice of the terms and conditions from the Landlord, to occupy any premises within the shopping center which Landlord may offer for use as a food supermarket. The first right of refusal shall be operative and effective for a period of three years from the date of such cancellation. However, if offered to Tenant within six (6) months after cancellation of this Lease, the Lease terms and provisions and rentals shall be the same as this Lease."

3.     Except as otherwise modified herein, the terms and provisions of the Lease and the Addendum to Lease remain in full force and effect.

APPROVED
AS TO FORM

Division Mgr.

Legal Dept.
Winn-Dixie Stores,
Inc.

4.    In the event of a conflict between the terms and provisions of the Lease, the Addendum to Lease and this Second Addendum, the terms and provisions of this Second Addendum shall be controlling.

**IN WITNESS WHEREOF**, the parties hereto have hereunto set their hands and seals the day and year above written.

WITNESSES:

SHOPPES OF TOWNE SOUTH, INC., a Florida corporation, Landlord

By _____

(CORPORATE SEAL)

WINN-DIXIE STORES, INC., a Florida corporation, Tenant

By _____

(CORPORATE SEAL)

-2-

ADDENDUM TO LEASE

THIS ADDENDUM TO LEASE is made and entered into this 28 day of Dec , 198 7 , by and between SHOPPES OF TOWNE SOUTH, INC., a Florida corporation, as Landlord, and WINN-DIXIE STORES, INC., a Florida corporation, as Tenant.

W I T N E S S E T H :

WHEREAS, Landlord and Tenant entered into that certain Shopping Center Lease dated July 24, 1987 relative to the rental of space in that certain Shopping Center known as "The Shoppes of Towne South" in the City of Daytona Beach, County of Volusia, State of Florida; a Short Form thereof having been recorded November 4, 1987 in O.R. Book 3056, at Page 319 of the Public Records of Volusia County, Florida (hereinafter referred to as "Lease"); and

WHEREAS, Landlord and Tenant desire to modify the terms and provisions of the Lease.

NOW THEREFORE, in consideration of the sum of Ten ($10.00) Dollars and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. That the above recitals are true and correct.

2. That the following language is added as paragraph 39 to the Lease:
"39. Notwithstanding any item in this Lease to the contrary, the interest of the Landlord shall not, under any circumstances, be subject to liens for improvements made by or on behalf of Tenant (except for Landlord's construction of the premises as required under this Lease and the approved plans and specifications).

3. Except as otherwise modified herein, the terms and provisions of the Lease remain in full force and effect.

4. In the event of a conflict between the terms and provisions of the Lease and this Addendum, the terms and provisions of this Addendum shall be controlling.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.

WITNESSES:

_____

_____

SHOPPES OF TOWNE SOUTH, INC., a Florida corporation, Landlord

By _____   pres

(CORPORATE SEAL)

Laura E Baughm
Susan G Conklin

WINN-DIXIE STORES, INC., a Florida corporation, Tenant

By _____

(CORPORATE SEAL)

APPROVED
AS TO FORM

Division Mgr.

Legal Dept.
Winn-Dixie Stores,
Inc.

NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS NON-DISTURBANCE AND ATTORNMENT AGREEMENT, made this 5ᵗʰ day of _October_, 1987, between SHOPPES OF TOWNE SOUTH, INC., a Florida corporation ("Landlord"), WINN-DIXIE STORES, INC., a Florida corporation ("Tenant"), and MIDATLANTIC NATIONAL BANK ("Mortgagee") which terms "Landlord", "Tenant" and "Mortgagee" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties.

RECITALS

A.   Shoppes of Towne South, Inc., is named as Landlord in the Lease described below, which Lease demises certain described store premises located in a shopping center development situated at the northeasterly corner of the intersection of Nova Road and Beville Road in Daytona Beach, Volusia County, Florida.

B.   The Tenant has entered into a Lease with the Landlord for certain store premises, which Lease is dated July 24, 1987, for an initial term of twenty (20) years, commencing upon Tenant's opening for business in the demised store premises as specified in the Lease and a short form of the Lease will be recorded in the public records of Volusia County, Florida, (which Lease is hereinafter referred to as the "Lease").

C.   Mortgagee has accepted a mortgage (which together with any modifications, consolidations, extensions, increases or renewals is referred to in this Agreement as the "Mortgage") made by Landlord to Mortgagee, dated _July 10_, 1987, and recorded in Official Records Book 3007, page 1001, of the public records of Volusia County, Florida, securing a loan made by Mortgagee covering the entire premises under the Lease, but Tenant is requiring that this Agreement be executed and delivered.

D.   The Lease and Short Form Lease have not been amended to date.



This instrument was prepared by
Ronald D. Peterson, Attorney-at-Law
whose address is 5050 Edgewood
Court, Jacksonville, Florida 32205

IN CONSIDERATION of the above and the mutual promises below, the parties, intending to be legally bound, covenant and agree as follows:

1.    The Lease is in full force and effect in accordance with its terms. Mortgagee has approved the terms of the Lease and has agreed that Landlord may enter into the Lease with Tenant.

2.    Neither the Landlord nor the Tenant will, without the prior written consent of the holder of the Mortgage: (i) modify the Lease or any extensions or renewals thereof in such a way as to reduce the rent, accelerate rent payments, shorten the original term or change any renewal option; (ii) terminate the Lease except as provided by its terms; (iii) tender or accept a surrender of the Lease or a prepayment in excess of one month of any rental due under the Lease; or (iv) subordinate or permit subordination of the Lease to any lien subordinate to the Mortgage. Any such purported action without such consent shall be void as against the holder of the Mortgage.

3.    Any notice required to be given to the Landlord by the Tenant shall be given also to the holder of the Mortgage, provided such holder (other than the Mortgagee) shall have notified the Tenant in writing of its name and address, and any right of the Tenant dependent upon notice shall take effect only after notice so given. Performance or commencement to cure such default within thirty (30) days of said notice by the holder of the Mortgage in accordance with the conditions of the Lease shall satisfy such conditions of the Lease requiring performance by the Landlord.

4.    Always provided Tenant shall not be in default under the Lease, Tenant's right to possession of the leased premises and Tenant's rights arising out of the Lease shall not be affected or disturbed by the Mortgagee, or any other holder of the Mortgage, in the exercise of any of their rights under the Mortgage, or the note secured thereby; nor shall Tenant be named

as a party defendant in any foreclosure of the lien of the Mortgage nor in any other way be deprived of its rights under the Lease. Also, in the event that the Mortgagee or any other person acquires title to the leased premises pursuant to the exercise of any remedy provided for in the Mortgage, the Lease shall not be terminated or affected by the foreclosure or sale or any such proceeding and the Mortgagee hereby covenants that any sale of the leased premises pursuant to the exercise of any rights and remedies under the Mortgage or otherwise, shall be made subject to the Lease and the rights of the Tenant thereunder, and Mortgagee or such other person acquiring title to the leased premises shall be bound by the Lease to perform the covenants and obligations of Landlord required therein. The Tenant will attorn to the Mortgagee or any other holder of the Mortgage who has acquired the premises through foreclosure or otherwise. This provision shall be self-operative but the Tenant will execute and deliver any additional instruments required to evidence such attornment.

5.   At such time as the Tenant accepts and occupies the premises demised under the Lease, the Tenant agrees to furnish the Landlord and/or the holder of the Mortgage with an estoppel certificate stating that the Tenant has accepted said premises,



is in possession of same, is paying rent and knows of no offsets or defenses against the Landlord, except as set forth in said estoppel certificate.

This Agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their heirs, legal representatives, successors and assigns.

IN WITNESS WHEREOF, this Non-Disturbance and Attornment Agreement has been duly executed by the parties hereto.

Signed, sealed and delivered in the presence of:

SHOPPES OF TOWNE SOUTH, INC.

By _____

Its _____ President

Attest _____

Its _____ Secretary

(CORPORATE SEAL)

As to the "Landlord"

LANDLORD

WINN-DIXIE STORES, INC.

By _____

Its _____ President

Attest _____

Its _____ Ass. Secretary

(CORPORATE SEAL)

As to the "Tenant"

TENANT

MIDATLANTIC NATIONAL BANK

By _____

Its ANTHONY MINI President
ASSISTANT VICE PRESIDENT

Attest _____

Its CATHERINE BROT Secretary
Assistant Cashier

(CORPORATE SEAL)

As to the "Mortgagee"

MORTGAGEE

-4-

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this 3 day of SEPTEMBER , 1987 by RALPH CHERNIN

and ALAN CHERNIN , the _____ President and _____

Secretary of SHOPPES OF TOWNE SOUTH, INC., a Florida corporation,

known to me to be the persons who subscribed to the foregoing

instrument and acknowledged to me that they executed the same on

behalf of SHOPPES OF TOWNE SOUTH, INC.

_Judith De Milio._
Notary Public

(Notarial Seal)                    My Commission Expires:

NOTARY PUBLIC, STATE OF FLORIDA
MY COMMISSION EXPIRES MAR. 21, 1991.
BONDED THRU NOTARY PUBLIC UNDERWRITERS.


STATE OF FLORIDA

COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 14th day of October , 1987 by _____

and _____ , the _____ President and _____

Secretary of WINN-DIXIE STORES, INC., a Florida corporation,

known to me to be the persons who subscribed to the foregoing

instrument and acknowledged to me that they executed the same on

behalf of WINN-DIXIE STORES, INC.

_____
Notary Public
My Commission Expires:

-5-

STATE OF *New Jersey*
COUNTY OF *Middlesex*

The foregoing instrument was acknowledged before me this _5th_ day of _October_ , 1987 by ___ARTHUR_____ ASSISTANT VICE PRESIDENT _____ and __KATHERINE BROMBERTON__ , the _Asst Vice_ President and _Asst Cashier_ Assistant Cashier

of MIDATLANTIC NATIONAL BANK, known to me to be the persons who subscribed to the foregoing instrument and acknowledged to me that they executed the same on behalf of MIDATLANTIC NATIONAL BANK.

_Sharon Wojtaszek_
Notary Public
My Commission Expires:

(Notarial Seal)

SHARON WOJTASZEK
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires June 19, 1992

SHORT FORM LEASE

THIS SHORT FORM LEASE, made this 24th day of July,
1987, between SHOPPES OF TOWNE SOUTH, INC. a Florida corporation
(hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a
Florida corporation (hereinafter called "Tenant"); which terms
"Landlord" and "Tenant" shall include, wherever the context
admits or requires, singular or plural, and the heirs. legal
representatives, successors and assigns of the respective
parties;

WITNESSETH:

That the Landlord, in consideration of the covenants of the
Tenant, leases and demises to the Tenant and the Tenant agrees to
take and lease from the Landlord, for the term specified later in
this agreement, the following described premises:

That certain store building, approximately 220 feet in
width by 200 feet in depth, together with concrete pads
for coolers and freezers at the rear and vestibule at
the front and the land on which the same shall stand
(hereinafter collectively called "demised premises"),
which store building and related improvements are to be
constructed by Landlord according to plans and speci-
fications to be approved by the parties hereto and
shall be in the location of the dimensions as outlined
in red on the plot plan attached as Exhibit "A" to a
certain collateral lease agreement executed by the
parties hereto and of even date herewith.

The demised premises are located in a shopping center
development known as The Shoppes of Towne South
(hereinafter called "shopping center"), located at the
northeast corner of Nova and Beville Roads, in Daytona,
Volusia County, Florida, the legal description of the
shopping center being attached hereto as Exhibit "B"
and by this reference made a part hereof.

FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant
opens said premises for the transaction of its business for an
initial term of twenty (20) years.

It is further agreed that Tenant, at its option, shall be
entitled to the privilege of five (5) successive extensions of
this Lease, each extension to be for a period of five (5) years.

Landlord covenants and agrees that the Tenant shall have the
exclusive right to operate a supermarket in the shopping center


APPROVED
AS TO FORM
_____
DIVISION MGR.
_____
LEGAL DEPT.
WIN-DIXIE STORES,
INC.

This instrument was prepared by
Ronald D. Peterson, Attorney-at-Law
whose address is 5050 Edgewood
Court, Jacksonville, Florida 32205

and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1,000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, drug store or pharmacy, meat, fish or vegetable market or bakery/delicatessen, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant. Tenant and National Drug shall have the exclusive right in the shopping center, including any enlargement thereof, to sell prescription drugs which require the presence of a licensed pharmacist. Tenant shall have the exclusive right to operate a bakery/delicatessen in the shopping center and only Tenant and National Drug may sell beer and wine in the shopping center for off-premises consumption; provided however, that the provisions of this paragraph are expressly subject to and conditioned upon certain modifications thereof as particularly set forth in the collateral lease agreement of even date herewith below mentioned.



IT IS UNDERSTOOD AND AGREED that this is a Short Form Lease which is for the rents and upon the terms, covenants and conditions contained in the aforesaid collateral lease agreement executed by the parties hereto and bearing even date herewith, which collateral lease agreement is and shall be a part of this instrument as fully and completely as if the same were set forth herein.

Signed, sealed and delivered
in the presence of:

SHOPPES OF TOWNE SOUTH, INC.

By _____
Its                    President
Attest _____
Its                    Secretary

(CORPORATE SEAL)

LANDLORD

As to Ralph Chernin Company, Inc.

WINN-DIXIE STORES, INC.

By _____
Its                    President
Attest  F.P.Hamilton
Its     Ass't. Secretary

(CORPORATE SEAL)

TENANT

As to Winn-Dixie Stores, Inc.

-3-

STATE OF FLORIDA  )

COUNTY OF BROWARD  )


The foregoing instrument was acknowledged before me this
24 day of JULY , 1987, by RALPH CHEKNIN and
ALAN CHEKNIN , the _____ President and _____
Secretary of SHOPPES OF TOWNE SOUTH, INC. a Florida corporation,
on behalf of the corporation.

_____
NOTARY PUBLIC, State and County
(NOTARIAL SEAL)                                aforesaid

My Commission Expires:

NOTARY PUBLIC, STATE OF FLORIDA
MY COMMISSION EXPIRES MAR. 21, 1991.
BONDED THRU NOTARY PUBLIC UNDERWRITERS.


STATE OF FLORIDA  )

COUNTY OF DUVAL  )


The foregoing instrument was acknowledged before me this
14th day of Aug. , 1987, by A. Dano Crews and
J.P. Narmutbe , _____ President and Asst.
Secretary, respectively, of WINN-DIXIE STORES, INC., a Florida
corporation, on behalf of the corporation.

_____
NOTARY PUBLIC, State and County
(NOTARIAL SEAL)                                aforesaid

My Commission Expires: