UNITED STATES BANKRUPTCY COURT
THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| WINN-DIXIE STORES, INC., *et al.*, | ) Case No. 05-03817-3F1 |
| | ) Chapter 11 |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) |
| | ) |

**FIRST INTERIM APPLICATION OF HOULIHAN LOKEY HOWARD &
ZUKIN CAPITAL AS FINANCIAL ADVISOR FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED AND FOR
REIMBURSEMENT OF EXPENSES FOR THE PERIOD
MARCH 3, 2005 THROUGH MAY 31, 2005**

Name of Applicant:                                   Houlihan Lokey Howard & Zukin Capital

Authorized to Provide Professional          The Official Committee of Unsecured Creditors
Services to:                                               Winn-Dixie Stores, Inc., et al.

Date of Retention:                                     March 3, 2005

Periods for which Compensation and        March 3, 2005 through May 31, 2005
Reimbursement is Sought:

Amount of Compensation Sought as Actual,   $293,548.39 (subject to any applicable holdback)
Reasonable, and Necessary:

Amount of Expense Reimbursement Sought as   $19,676.68
Actual, Reasonable, and Necessary[1]:

---

[1] Houlihan Lokey Howard & Zukin reserves the right to supplement this Application with expenses not yet
accounted for or processed in its accounting system.

## UNITED STATES BANKRUPTCY COURT
## THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| **WINN-DIXIE STORES, INC.**, *et al.*, | ) Case No. 05-03817-3F1 |
| | ) Chapter 11 |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) |
| | ) |

## FIRST INTERIM APPLICATION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES FOR THE PERIOD MARCH 3, 2005 THROUGH MAY 31, 2005

Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey"), financial advisor to the Official Committee of Unsecured Creditors (the "Committee") of Winn-Dixie Stores, Inc. (the "Debtors"), hereby makes this First Interim Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the period March 3, 2005 through May 31, 2005 (the "Application"). In support of this Application, Houlihan Lokey respectfully represents as follows:

1.      This Application is made pursuant to (i) Sections 328(a), 331, and 1103(a) of the Bankruptcy Code; (ii) Bankruptcy Rules 2016 (the "Bankruptcy Rules"); (iii) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. §330 dated January 30, 1996; (iv) the final Order approving interim compensation procedures for professionals ("Fee Procedures Order") entered by the Court on March 15, 2005; and (v) this Court's Order, dated June 3, 2005, authorizing the

Committee to retain and employ Houlihan Lokey as financial advisor to the Committee in these Chapter 11 cases (the "Retention Order").

2.        By this Application, Houlihan Lokey requests allowance and approval of interim compensation in the amount of $293,548.39 in gross fees, subject to any applicable holdback, and reimbursement of actual and necessary expenses in the amount of $19,676.68 for the period effective nunc pro tunc to March 3, 2005 through May 31, 2005 (the "First Interim Period").

## Background

3.        On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

4.        On March 1, 2005, the United States Trustee duly appointed the Committee.[2]

5.        By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

6.        This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the

---

[2] The United States Trustee appointed the following entities to the Committee: R[2] Investments, LDC, Deutsche Bank Trust Company Americas, New Plan Excel Realty Trust, Inc., Kraft Foods Global, Inc., Pepsico & Subsidiaries, OCM Opportunities Fund V, L.P., and Capital Research & Management Company.

Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 328 and 331 of the Bankruptcy Code.

## Retention of Houlihan Lokey

7.      On March 3, 2005, the Committee retained Houlihan Lokey to act as the financial advisor to the Committee.

8.      On March 29, 2005, the Committee filed an application with this Court (the "Retention Application") requesting authorization to employ and retain Houlihan Lokey as financial advisor to the Committee pursuant to Sections 328(a) and 1103 of the Bankruptcy Code. As noted in the Committee's retention application, Houlihan Lokey performed services for the Committee effective nunc pro tunc to March 3, 2005.

9.      On June 3, 2005, this Court authorized the Committee to retain and employ Houlihan Lokey as financial advisor to the Committee in these Chapter 11 cases, pursuant to the terms of the engagement letter between the Committee and Houlihan Lokey dated March 3, 2005 (the "Engagement Letter") as modified by the Retention Order. A copy of the Retention Order is attached hereto as Exhibit "C".

10.     Pursuant to the Retention Order, Houlihan Lokey has been authorized to provide such financial advisory related services as may be requested by the Committee, including the following:

> a) Evaluating the assets and liabilities of the Debtors;
>
> b) Analyzing and reviewing the financial and operating statements of the Debtors;
>
> c) Analyzing business plans and forecasts of the Debtors;

d)  Evaluating all aspects of the Debtors' DIP financing; cash collateral usage and adequate protection therefor; any exit financing in connection with any chapter 11 plan and any budgets relating thereto; and any KERP or similar proposed compensation plan or program;

e)  Assisting the Committee, as needed, in identifying potential alternative sources of liquidity in connection with any chapter 11 plan or otherwise;

f)  Providing such specific valuation or other financial analyses as the Committee may require in connection with the cases;

g)  Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

h)  Providing testimony in court on behalf of the Committee, if necessary; and

i)  Assessing the financial issues and options concerning (a) the sale of any assets of Winn-Dixie and/or its non-debtor affiliates, either in whole or in part, and (b) the Debtors' chapter 11 plan(s) or any other chapter 11 plan(s).

### Terms and Conditions of Compensation of Houlihan Lokey

11.    On a monthly basis, pursuant to the Retention Order, Houlihan Lokey is to be compensated as follows:

a)  a monthly fee (the "Monthly Fee") equal to $100,000.00 per month, payable in cash for each month or any part thereof; and

b)  Houlihan Lokey shall be entitled to reimbursement of all out-of-pocket expenses reasonably incurred by Houlihan Lokey before termination (or related to Houlihan Lokey's pre-termination services) in connection with the matters contemplated by the Engagement Letter. Out-of-pocket expenses include, but are not limited to, all reasonable travel expenses, duplicating charges, on-line service charges, messenger services, delivery services, meeting services, long distance and mobile telephone and facsimile charges incurred by Houlihan Lokey.

12.     As noted by the Committee in the Retention Application, Houlihan Lokey's fee
structure under the Engagement Letter appropriately reflects the nature of the services to be
provided by Houlihan Lokey and the fee structures typically utilized by leading financial
advisors when billing on a non-hourly basis.

### Summary of Services Provided by Houlihan Lokey

13.     The Committee selected Houlihan Lokey as its financial advisor because of its
extensive and diverse experience, knowledge, and reputation in the restructuring field, its
understanding of the issues involved in chapter 11 cases, and because the Committee believes
that Houlihan Lokey is well-qualified to provide the financial advisory services that will be
required here.  Houlihan Lokey has served as financial advisor in many large chapter 11 cases.

14.     Although a number of professionals have worked on this engagement, the
following professionals have performed substantial services to the Committee in these cases
(biographies of such professionals are annexed hereto as Exhibit "F"):

> David R. Hilty – Managing Director
> Saul E. Burian – Managing Director
> Joshua S. Scherer – Senior Vice President
> Agnes K. Tang – Associate
> Peter W. Chidyllo – Analyst

15.     During the First Interim Period, Houlihan Lokey's work on behalf of the
Committee has involved five general project categories[3], including:

---

[3] While specific work could qualify under more than one of these categories, Houlihan Lokey has assigned each of
its various tasks/services to the most representative category. As an example, work performed evaluating projected

(a)    Diligence and Review of Company Business Plan and Footprint;

(b)    Analysis of Financial Statements and Operational Performance of the Debtors;

(c)    Correspondence, Meetings, and Discussions with Parties-In-Interest;

(d)    Evaluating and monitoring of Company asset divestitures; and

(e)    Case Administration.

16.    **Diligence and Review of Company Business Plan and Footprint.** Houlihan Lokey expended considerable time and effort in understanding the Company's 2006 forecast submitted pursuant to the DIP credit agreement. Houlihan Lokey visited the Company's distribution operations and performed due diligence regarding the Company's store operations. Furthermore, Houlihan Lokey held numerous in-person and phone discussions with senior management of each of the Company's operational and regional divisions. In addition, Houlihan Lokey researched the state of the retail grocery industry to assess the strategic long-term viability of the Company. Houlihan Lokey continues to review the Company's planned operational initiatives as the Company prepares its long-term business plan.

17.    **Analysis of Financial Statements and Operational Performance of the Debtors.** Throughout the First Interim Period, Houlihan Lokey performed substantial due diligence on the Debtors' financial projections, actual financial results, general operations and key operating initiatives. During the First Interim Period, Houlihan Lokey evaluated the Debtors' 12-week cash flow forecasts, as provided, in order to analyze trends in cash receipts and cash disbursements. In addition, Houlihan Lokey participated in frequent calls with the

---

cash flows would pertain on some basis to all of the categories outlined above and would not be specifically assignable to any one.

Debtors to evaluate current financial and operational performance and subsequently reported to the Committee on major trends and business developments.

18.    **Correspondence, Meetings, and Discussions with Parties-In-Interest.** Houlihan Lokey engaged in extensive correspondence and preparation for meetings with the Committee, the Debtors, the Debtors' advisors and various parties-in-interest in these Chapter 11 cases. Houlihan Lokey expended significant time and effort (both in-person and via conference call) meeting the due diligence requirements of the Committee. In addition, Houlihan Lokey conducted numerous meetings via conference call with parties-in-interest to provide situational updates. Furthermore, during the First Interim Period, Houlihan Lokey actively participated in the reclamation agreement that was ultimately reached amongst the Company, the ad-hoc trade creditors committee, and the Committee.

19.    **Evaluating and monitoring of Company asset divestitures.** As part of the Company's operational restructuring efforts, there are substantial assets to be divested based on the Company's reorganized geographic store footprint. In addition, there are non-core assets (i.e., manufacturing facilities) that are to be sold as part of the Company's focus on its core business. Houlihan Lokey has worked closely in conjunction with Xroads and Blackstone in the various asset sales processes.

20.    **Case Administration.** This category includes various services related to the Chapter 11 cases generally, retention matters, addressing questions of individual members of the Committee, Chapter 11 procedures, communications and administrative functions and other matters not falling into any of the other categories listed above.

21.    During these Chapter 11 cases, Houlihan Lokey coordinated the services it performed at the Committee's request with services of other advisors and counsel, as appropriate, in an effort to avoid unnecessary duplication of effort.

## Relief Requested

22.    By this Application, Houlihan Lokey seeks allowance of compensation and reimbursement of expenses for the First Interim Period as follows:

(a)    Compensation of $293,548.39, subject to any applicable holdback, in respect of fees accrued during the First Interim Period, consisting of monthly fees for the period beginning March 3, 2005 and ending May 31, 2005 (all of the full amount sought is currently unpaid). A summary of the Monthly Fees due and paid during the First Interim Period is attached hereto as Exhibit "D".

(b)    Reimbursement of reasonable, actual, and necessary expenses in the amount of $19,676.68 (all of this amount is currently unpaid) incurred in connection with Houlihan Lokey's services. A summary and itemization of these expenses is attached hereto as Exhibit "E".

## Authority for Requested Relief

23.    By its Retention Order, this Court specifically provided that (a) "the Committee is authorized to retain and employ Houlihan Lokey effective as of March 3, 2005, pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code, as its financial advisors on terms set forth in the [Retention] Application and the Engagement Letter...." and (b) "Houlihan Lokey's compensation in accordance with the terms of the Engagement Letter...shall not...hereafter be subject to challenge except under the standard of review of Section 328(a) of the Bankruptcy Code", provided, however, solely as to the Office of the United States Trustee, such fees and expense reimbursements shall hereafter be subject to challenge under the standard of review under Section 330 of the Bankruptcy Code.

24.     Section 330 of the Bankruptcy Code provides for the award of compensation to professionals. 11 U.S.C. § 330. Section 330, by its terms, is "subject to" the provisions of Section 328 of the Bankruptcy Code. *Id.* Section 328(a) permits a debtor, with the Court's approval, to employ a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

25.     Section 328 represents a departure from the practice that prevailed prior to the enactment of the Bankruptcy Code in 1978. The purpose of Section 328 is to permit the pre-approval of compensation arrangements as a method of insuring that the most competent professionals are available to provide services in bankruptcy cases. *See In re Westbrooks*, 202 B.R. 520, 521 (Bankr. N.D. Ala. 1996) (percentage fee arrangements "comport with the Bankruptcy Code's goal of attracting highly qualified professionals to the bankruptcy forum"); *In re Olympia Holding Corp.*, 176 B.R. 962, 964 (Bankr. M.D. Fla. 1994). Once the terms of a professional's retention have been approved under Section 328(a), the agreed-upon compensation cannot be altered unless the agreed terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also In re Reimers*, 972 F.2d 1127, 1128 (9th Cir. 1992) (compensation agreement approved under Section 328(a) must be enforced in the absence of unforeseeable circumstances, and is not subject to a "reasonableness" review under Section 330); *In the Matter of National Gypsum Company*, 123 F.3d 861 (5th Cir. 1997) (same); *In re Olympia Holding Corp.*, 176 B.R. at 964 (same). As the Court explained in *National Gypsum*:

If the most competent professionals are to be available for complicated

capital restructuring and the development of successful corporate
reorganization, they must know what they will receive for their expertise
and commitment.  Courts must protect those agreements and expectations,
once found to be acceptable.

123 F.3d at 863.

26.    There have been no developments since the Petition Date that were "not capable

of being anticipated" and that would justify any modification to the fees and expense

reimbursements specified in the Engagement Letter.  Accordingly, under Section 328, the fees

and expenses requested herein are appropriate.

27.    The fees and expenses sought in the Application are also appropriate under

section 330 of the Bankruptcy Code.  With respect to the level of compensation, Section

330(a)(1) provides, in pertinent part, that the Court may award to a professional person:

> reasonable compensation for actual, necessary service rendered…

Section 330(a)(3)(A), in turn, provides that

> In determining the amount of reasonable compensation to be awarded, the court
> shall consider the nature, the extent, and the value of such services, taking into
> account all relevant factors, including:
>
> (a)    the time spent on such services;
>
> (b)    the rate charged for such services;
>
> (c)    whether the services were necessary to the administration of, or beneficial
> at the time at which the service was rendered toward the completion of, a
> case under this title;
>
> (d)    whether the services were performed within a reasonable amount of time
> commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed; and,
>
> (e)    whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other
> than cases under this title.

- 10 -

28.    Houlihan Lokey's fees and expenses fulfill the requirements of Section 330 of the Bankruptcy Code. As discussed above, Houlihan Lokey, among many other things, (a) spent significant time analyzing the Company's operations and business plan, (b) actively participated in the DIP financing discussion with the Debtors' lenders and (c) updated the Committee on the Company's progress on various operational initiatives and asset divestiture programs. The professional services and related expenses that are the subject of this Application were rendered and incurred in connection with these Chapter 11 cases, and in discharge of Houlihan Lokey's professional responsibilities as financial advisor for the Committee in these Chapter 11 cases. Houlihan Lokey's services have been substantial, necessary, and beneficial to the Committee and other parties-in-interest. Houlihan Lokey believes that the fees and expenses requested by this Application are reasonable, similar to the compensation charged by comparably skilled practitioners in cases other than those in bankruptcy, and necessary given the variety and complexity of the issues involved in these cases and the need to act or respond on an expedited basis to those issues.

WHEREFORE, Houlihan Lokey requests the Court enter an Order substantially in the form of the Order annexed hereto as Exhibit "H", (i) allowing the compensation for financial advisory services rendered to the Committee during the First Interim Period in the amount of $293,548.39 subject to any applicable holdback and reimbursement of actual and necessary expenses in the amount of $19,676.68, and (ii) authorizing and directing the Debtors to pay to Houlihan Lokey all amounts requested pursuant to the Fee Procedures Order.

Dated: July 13, 2005

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL

By: _____
David R. Hilty
Houlihan Lokey Howard & Zukin Capital
245 Park Avenue, 20th Floor
New York, New York 10167
(212) 497-4133
Financial Advisors for the Debtors