**EXHIBIT B**

**Copy of the Engagement Letter**



HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL

INVESTMENT BANKERS

www.hlhz.com

As of March 3, 2005

To:    The Official Committee of Unsecured Creditors (the "Committee") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors-in-possession (the "Debtors") and its remaining affiliate and subsidiary corporations (collectively with the Debtors, the "Company"), in care of:

> Counsel to the Official Committee
>
> Milbank, Tweed, Hadley & McCloy LLP
> 1 Chase Manhattan Plaza
> New York, NY 10005-1413
>
> Attn: Dennis Dunne, Esq.

Dear Dennis:

This letter confirms the terms of the agreement between Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey" or the "Firm") and the Committee concerning the Committee's engagement of Houlihan Lokey to provide financial advisory and related services to the Committee, effective as of March 3, 2005 (the "Effective Date"), in connection with the Debtors' Chapter 11 cases (the "Cases"), which are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

1.    <u>Scope of Engagement</u>.  Pursuant to its engagement by the Committee, Houlihan Lokey's services will include:

    a)  Evaluating the assets and liabilities of the Debtors;

    b)  Analyzing and reviewing the financial and operating statements of the Debtors;

    c)  Analyzing business plans and forecasts of the Debtors;

    d)  Evaluating all aspects of the Debtors' DIP financing; cash collateral usage and adequate protection therefor; any exit financing in connection with any chapter 11 plan and any budgets relating thereto; and any KERP or similar proposed compensation plan or program;

e) Assisting the Committee, as needed, in identifying potential alternative sources of liquidity in connection with any chapter 11 plan or otherwise;

f) Providing such specific valuation or other financial analyses as the Committee may require in connection with the cases;

g) Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

h) Providing testimony in court on behalf of the Committee, if necessary; and

i) Assessing the financial issues and options concerning (a) the sale of any assets of Winn-Dixie and/or its non-debtor affiliates, either in whole or in part, and (b) the Debtors' chapter 11 plan(s) or any other chapter 11 plan(s).

2.    **Committee Engagement**.  Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("Committee Counsel")), shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder.  All financial advice, written or oral, provided by Houlihan Lokey to the Committee pursuant to this Agreement is intended solely for the use and benefit of the Committee, and such advice may not be disclosed publicly or made available to third-parties without the prior consent of Houlihan Lokey, which consent shall not be unreasonably withheld.  Houlihan Lokey is providing its services as the financial advisor to the Committee, and is not providing any services on behalf of the individual members of the Committee.  To the extent any issue arises as to the scope, nature or substance of Houlihan Lokey's analysis, the Committee, with the advice of Committee Counsel, shall resolve such issue.  At the direction of Committee Counsel, certain communication and correspondence between Houlihan Lokey and the Committee, and work product and analyses prepared by Houlihan Lokey for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Debtors, and accordingly will be subject to the attorney-client privilege and work-product privilege between Houlihan Lokey, Committee Counsel and the Committee.

3.    **Advisor**.  Houlihan Lokey's services are limited to those specifically provided in this Agreement or subsequently agreed-upon by the parties hereto, and Houlihan Lokey shall have no obligation or responsibility for any other services.  Houlihan Lokey is providing its services hereunder as an independent contractor, and the parties agree that this Agreement does not create an agency or fiduciary relationship between Houlihan Lokey and the parties to this Agreement.

4.    **Consideration**.  As consideration for the services being provided by Houlihan Lokey to the Committee, the Company shall pay Houlihan Lokey a fee of $100,000 per month (the "Monthly Fee") commencing as of the Effective Date.  The Company shall pay the Monthly Fee in advance on each monthly anniversary of the Effective Date of this Agreement, provided that the first payment shall be made upon approval of this Agreement by the Bankruptcy Court and

shall be in respect of the period as from the Effective Date through the month in which the payment is made. Payment shall be made to Houlihan Lokey at the address above, Attention: Saul E. Burian / David R. Hilty. In addition, the Company agrees to promptly reimburse Houlihan Lokey, upon request from time to time, for all out-of-pocket expenses reasonably incurred by Houlihan Lokey in connection with the matters contemplated by this Agreement. Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, duplicating charges, on-line service charges, messenger services, delivery services, meeting services, long distance telephone and facsimile charges incurred by Houlihan Lokey.

In addition, Houlihan Lokey shall be paid an additional fee (a "Distribution Fee") equal to 0.75% of the aggregate value received by the non-priority unsecured creditors of the Company. The Distribution Fee shall be paid in the same consideration received by the non-priority unsecured creditors of the Company (including but not limited to all related rights, options and contractual benefits); provided, however, that the Committee may determine, in its sole discretion, that the Distribution Fee be paid in cash at a value to be determined by Houlihan Lokey and the Committee as of the effective date of a plan of reorganization or other relevant distribution date[1]. If paid in kind, the Distribution Fee shall be paid as and when distributions are made to non-priority unsecured creditors of the Company (whether pursuant to a plan of reorganization or any other manner approved by the Bankruptcy Court). The Distribution Fee shall be reduced by one hundred percent (100%) of all Monthly Fees paid to Houlihan Lokey after the twelfth Monthly Fee that was timely paid, but in no event shall the Distribution Fee be reduced to less than zero.

The parties acknowledge that a substantial professional commitment of time and effort will be required by Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for the Firm. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the Firm. Given the numerous issues which may arise in these cases, the Firm's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature whether in, or out of court, the parties agree that the fee arrangement

---

1 For the purpose of calculating the value of the consideration received by non-priority unsecured creditors of the Debtors, all consideration received, including, without limitation, cash, debt securities, equity securities, property, rights, options and other interests and consideration, will be valued using one of the following three methods, in order of preference: (i) to the extent such securities are traded on a when-issued basis and the market for these securities is reasonably liquid, the securities will be valued at the mean of the closing bid and asked quotations averaged for the ten trading days immediately prior to the effective date of the relevant plan of reorganization or the applicable distribution date for the securities, whichever is more appropriate (the "Value Date"); (ii) to the extent such securities have not been traded prior to the Value Date or if the market for such securities is not reasonably liquid, and the 8.875% Senior Notes due 2008 ("Senior Notes") continue to trade and the market for the Senior Notes is reasonably liquid, the mean of the closing bid and asked quotations averaged for the ten trading days immediately prior to the Value Date will be used as a proxy to value the securities and such other consideration being distributed in respect of the Senior Notes; or (iii) to the extent the trading price of the Senior Notes is not available or is not a fair proxy for value, then debt securities will be valued at face value and, for all other securities, consideration and assets to be distributed to the non-priority unsecured claims of the debtors, Houlihan Lokey and the Committee will mutually agree on a fair valuation thereof for the purposes of calculating the Distribution Fee.

hereunder is reasonable, fairly compensates Houlihan Lokey and provides certainty to the Debtors and the Committee.

5.      **Bankruptcy Court**. The Committee shall, as soon as practicable following the execution of this Agreement by the Committee, seek an order from the Bankruptcy Court authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to (and subject to the standard of review of) Section 328(a) and 1103 of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules, and shall use its best efforts to cause such application to be considered on the most expedited basis. The employment application and the order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey sufficiently in advance of their filing, and must be acceptable to Houlihan Lokey in its discretion. If the order authorizing the employment of Houlihan Lokey is obtained, the Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Agreement, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. The terms of this paragraph are solely for the benefit of Houlihan Lokey and may be waived, in whole or in part, only by Houlihan Lokey.

6.      **Termination**. This Agreement is terminable upon thirty (30) days written notice by the Committee or Houlihan Lokey, provided, however, that the Company shall pay Houlihan Lokey all previously unpaid Monthly Fees and the pro-rata portion of the Monthly Fee for the month in which the Agreement is terminated. The termination of this Agreement will not affect (a) the Debtors' indemnification, reimbursement, contribution and other obligations set forth in this Agreement and (b) Houlihan Lokey's right to receive, and the Debtors' obligation to pay (i) any and all fees and expenses accrued as of the effective date of termination of this Agreement, and (ii) provided that Houlihan Lokey does not terminate the Agreement, the Distribution Fees in respect of (a) creditor distributions pursuant to a plan of reorganization confirmed by the Bankruptcy Court prior to termination of this Agreement or within twelve months following the effective date of any termination of this Agreement or (b) creditor distributions otherwise made prior to termination of this Agreement or within the twelve month period following such termination.

7.      **Information**. The Committee acknowledges and agrees that, in rendering its services hereunder, Houlihan Lokey will be using and relying on information made available to it by the Debtors and their advisors (the "Information") (and information available from public sources and other sources deemed reliable by Houlihan Lokey) without independent verification thereof by Houlihan Lokey or independent appraisal by Houlihan Lokey. Houlihan Lokey does not assume responsibility for the accuracy or completeness of the Information or any other information regarding the Company. The Committee and Company acknowledge that, in rendering services to the Committee, Houlihan may obtain information, including non-public information, from various independent sources provided that Houlihan keeps such non-public information confidential in accordance with its duties to the Committee. Such independent

sources may provide information to Houlihan Lokey notwithstanding any confidentiality agreement.

8.    **Choice of Law; Jurisdiction.**  THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.  REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK, PROVIDED THAT SUCH CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS.  BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT.  EACH PARTY HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.  THE PARTIES HERETO CONSENT TO SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW.  THE PARTIES HERETO WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.

9.    **Authority.**  The parties hereto have all requisite corporate power and authority to enter into this Agreement and the transactions contemplated hereby and have fully reviewed this Agreement, have obtained counsel on its terms, and have participated in the drafting of this Agreement such that it shall not be construed against any one party.  This Agreement has been duly and validly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

10.    **Counterparts.**  For the convenience of the parties, any number of counterparts of this Agreement may be executed by the parties hereto. Each such counterpart shall be, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

11.    <u>Severability</u>.  If it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that any term or provision hereof is invalid or unenforceable, (i) the remaining terms and provisions hereof shall be unimpaired and shall remain in full force and effect and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

12.    <u>Entire Agreement</u>.  This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understanding relating to the matters provided for herein.  No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

13.    <u>Indemnification</u>.  As a material part of the consideration for Houlihan Lokey to furnish its services under this Agreement, the Debtors shall indemnify Houlihan Lokey shall hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the Agreement, any actions taken or omitted to be taken by an Indemnified Party in connection with Houlihan Lokey's provision of services to the Committee or the proposed transactions contemplated thereby. In addition, the Debtors shall reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, there shall be no liability to the Company under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.

If for any reason the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection with a proposed transaction and/or the services rendered by Houlihan Lokey.  If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Debtors shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection therewith, as well as any other relevant equitable considerations.

The Committee and the Debtors shall not affect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification

from the Debtors unless, such settlement or release contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey. The Committee and/or the Debtors shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the prior written consent of the Committee and the Debtors.

The Committee and the Company further agree that neither Houlihan Lokey nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the Committee, the Debtors or any other person or entity (including the Debtors' equity holders and creditors) related to or arising out of Houlihan Lokey's engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the Committee and/or the Debtors which are finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party. The indemnity, reimbursement, contribution and other obligations and agreements of the Committee and the Debtors set forth herein shall apply to any modifications of this Agreement, shall be in addition to any liability which these parties may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of these parties and each Indemnified Party. The foregoing indemnification provisions shall survive the consummation of any transaction and/or any termination of the relationship established by this Agreement.

The obligations of Houlihan Lokey are solely corporate obligations, and no officer, director, employee, agent, shareholder or controlling person of Houlihan Lokey shall be subjected to any personal liability whatsoever to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement or any person relying on the services provided hereunder. The Debtors' obligations with respect to any and all payments owing to Houlihan Lokey and the indemnification, reimbursement, contribution and other similar obligations of the Debtors under this Agreement shall survive any termination of this Agreement.

*Official Committee of Unsecured Creditors of Winn-Dixie, Inc.*          *Page 8*
*March 3, 2005*


Dated and effective as of the 3rd day of March 2005.

**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL**

By: Saul E. Burian
Managing Director


**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
WINN-DIXIE STORES, INC.**


By:     Dennis Dunne, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005