UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 05-03817-3F1 |
| Debtors. | ) | Jointly Administered |

**FIRST INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS
AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM
MARCH 4, 2005 THROUGH AND INCLUDING MAY 31, 2005**

| | |
|---|---|
| Name of Applicant | Alvarez & Marsal, LLC |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors of Winn-Dixie Stores, LLC, et al. |
| Date of Retention | Order entered on June 3, 2005 nunc pro tunc to March 4, 2005 |
| Period for which Interim Compensation and Reimbursement is sought | March 4, 2005 though and including May 31, 2005 |
| Amount of Interim Compensation sought as actual, reasonable and necessary | $300,000.00 |
| Amount of Interim Reimbursement sought as actual, reasonable and necessary | $8,738.74 |

This is an interim application

## Summary of Professional's Hours

| Professional | Title | 3/4/05 - 3/31/05 | 4/1/05 - 4/30/05 | 5/1/05 - 5/31/05 | Total |
|---|---|---|---|---|---|
| Martha Kopacz | Managing Director | 62.0 | 78.0 | 66.5 | 206.5 |
| William McGuire | Managing Director | 11.8 | 3.0 | 22.9 | 37.7 |
| Andrew Hede | Senior Director | 65.5 | 111.0 | 72.0 | 248.5 |
| Gregory Ford | Director | 18.0 | 3.0 | 14.7 | 35.7 |
| Matthew Gavejian | Associate | - | 20.0 | 60.0 | 80.0 |
| David Kirsch | Associate | - | 4.0 | - | 4.0 |
| Total Hours | | 157.3 | 219.0 | 236.1 | 612.4 |

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 05-03817-3F1 |
| Debtors. | ) | Jointly Administered |

**FIRST INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS
AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM
MARCH 4, 2005 THROUGH AND INCLUDING MAY 31, 2005**

Alvarez & Marsal, LLC ("A&M"), operations and real

estate advisor to the official committee of unsecured creditors

(the "Committee") of Winn-Dixie Stores, Inc. and its affiliated

debtors and debtors-in-possession appointed in the above-

captioned cases (collectively, "Winn-Dixie" or the "Debtors"),

hereby submits its application (the "Application"), pursuant to

sections 328 and 331 of title 11 of the United States Code (as

amended, the "Bankruptcy Code"), rule 2016 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), the United

States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C.

§ 328 effective January 30, 1996 (the "U.S. Trustee

Guidelines"), and the Final Order Approving Interim Compensation

Procedures for Professionals, dated March 15, 2005 (Docket No.

434) (the "Interim Compensation Order"), for the allowance of

interim compensation for professional services rendered from March 4, 2005 through and including May 31, 2005 (the "<u>First Interim Compensation Period</u>"), and for reimbursement of expenses incurred in connection with such services, and in support thereof respectfully represents as follows:

**I.  INTRODUCTION**

**A. <u>Background</u>**

1.    On February 21, 2005 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "<u>New York Bankruptcy Court</u>").

2.    On March 1, 2005, the United States Trustee duly appointed the Committee.

3.    By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

4.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of the

2

Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 328 and 331 of the Bankruptcy Code.

**B.    Retention of A&M and Billing History**

5.    On June 3, 2005, pursuant to the Order Under 11 U.S.C. § 1103 And Fed. R. Bankr. P. 2014 And 5002, Authorizing Retention And Employment Of Alvarez & Marsal, LLC As Committee's Operations and Real Estate Advisors (Docket No. 1557) (the "Retention Order"), the Committee's retention of A&M in these cases was authorized effective as of March 4, 2005.

6.    This Application is A&M's first interim application for approval and allowance of compensation and reimbursement of expenses.  A&M makes this interim application pursuant to sections 328 and 331 of the Bankruptcy Code.  No prior application has been made to this or any other court for the relief requested herein.

7.    In accordance with the engagement letter between the Committee and A&M (dated March 4, 2005), A&M seeks reimbursement for its fixed fee of $100,000.00 per month.

8.    In accordance with the Interim Compensation Order, A&M submitted a monthly fee statement to, among others, the Debtors seeking interim compensation and reimbursement of

3

expenses.  During the First Interim Compensation Period, A&M
submitted the following fee statement:

    (a)   On June 27, 2005, pursuant to the Interim Compensation
        Order, A&M served its first fee statement for the
        period from March 4, 2005 through and including May
        31, 2005 (the "First Fee Statement").  The First Fee
        Statement sought an allowance of $300,000.00
        (representing three months of services at a fixed fee
        of $100,000.00 per month) as compensation for services
        rendered and the reimbursement of $8,738.74 in
        expenses.

    9.  As of the filing of this Application, A&M has not
received payment with respect to the First Interim Fee
Statement.  There is an unpaid balance of $308,738.74 for the
First Interim Compensation Period.

    10.  A&M has not entered into any agreement, express
or implied, with any other party for the purpose of fixing or
sharing fees or other compensation to be paid for professional
services rendered in these cases.

    11.  No promises have been received by A&M or any
member thereof as to compensation in connection with these cases
other than in accordance with the provisions of the Bankruptcy
Code.

## II.  CASE STATUS

    12.  The Debtors have not filed a disclosure statement
or a plan of reorganization in these cases.

## III. **APPLICATION**

13.   By this Application, A&M is seeking full allowance of (a) compensation for professional services rendered by A&M, as operation and real estate advisor to the Committee, during the First Interim Compensation Period and (b) reimbursement of expenses incurred by A&M in connection with such services during the First Interim Compensation Period.

14.   In this Application, A&M seeks approval of the amount of $300,000.00 for advisory services rendered on behalf of the Committee during the First Interim Compensation Period and the amount of $8,738.74 for reimbursement of expenses incurred in connection with the rendition of such services, for a total award of $308,738.74.

15.   Pursuant to the Interim Compensation Order, A&M, together with all other retained professionals, is entitled to eighty percent (80%) of its fees sought in A&M's First Interim Fee Statement and reimbursement of one hundred percent (100%) of A&M's expenses.  As noted above, A&M has not received to date 80% of fees and 100% of expenses for the First Fee Statement (totaling $248,738.74).  A&M is, therefore, seeking a total payment of $308,738.74 pursuant to this Application, representing the unpaid balance of 100% of fees and 100% of expenses for the First Fee Statement.

5

16.   The fees sought by this Application reflect an aggregate of 612.4 hours of professional time spent and recorded in performing services for the Committee during the First Interim Compensation Period.

17.   A&M rendered to the Committee all services for which compensation is sought solely in connection with these cases in furtherance of the duties and functions of the Committee.

18.   A&M maintains electronic records of the time expended in the rendering of the professional services required by the Committee.  These records are maintained in the ordinary course of A&M's business.  For the convenience of the Court and parties in interest, a billing summary for the First Interim Compensation Period is attached as part of the cover sheet, setting forth the name of each professional for whose work on these cases compensation is sought, each professional's title and the amount of time expended by each such professional.

19.   Attached hereto as Exhibit A are time entry records broken down in halves of an hour by professional, based on guidelines from the Retention Order, setting forth a description of services performed by each professional on behalf of the Committee for the First Interim Compensation Period.

20.   A&M also maintains electronic records of all expenses incurred in connection with the performance of

professional services.  A summary of the amounts and categories

of expenses for which reimbursement is sought for the First

Interim Compensation Period is attached hereto as Exhibit B.

### IV.  SUMMARY OF PROFESSIONAL SERVICES RENDERED

21.  The following summary is intended to highlight

the services rendered by A&M and segregate those services into

categories where A&M has expended a number of hours on behalf of

the Committee.  It is not meant to be a detailed description of

all of the work performed; detailed descriptions of the day-to-

day services provided by A&M during the First Interim

Compensation Period and the time expended performing such

services are fully set forth in Exhibit A hereto.  Such detailed

descriptions show that A&M was heavily involved in the

performance of services for the Committee on a daily basis,

including night and weekend work, often under time constraints

to meet the needs of the Committee in these cases. Furthermore,

eighty-six percent (86%) of the time incurred by A&M

professionals was incurred by Managing Directors and Directors,

the most experienced professionals in the firm.

### A.  Retention Matters

22.  A&M prepared and filed its Employment Application

and the Affidavit of Martha Kopacz to be retained as operations

and real estate advisor to the Official Committee of Unsecured

Creditors of Winn-Dixie Stores, Inc. A&M participated in many

conversations with the Committee counsel, Debtors' professionals
and representatives of the Office of the US Trustee in New York
and Jacksonville prior to the Retention Order being entered on
June 3, 2005.

B.    **Business Plan / Store Analysis**

23.   A&M performed an operational review of the
Debtor's preliminary fiscal 2006 business plan and footprint
rationalization.  A&M has participated in discussions with
operations management regarding operating initiatives to improve
store performance, industry benchmarking and historical
operating practices.  A&M respectfully asserts that its
operating experience is vital to the proceedings as the Debtor's
operating performance will help maximize the distributions to
the Debtors' unsecured creditors.

C.    **Case Management**

24.   A&M discussed case issues, case timeline and next
steps and has coordinated work product and work flow with other
advisors and Committee counsel.  As a part of the chapter 11
process, A&M reviewed the Debtors' filed Statements of Financial
Affairs and Schedule of Assets and Liabilities.

D.    **Reclamation**

25.   A&M reviewed and discussed various reclamation
term sheets.  A&M prepared analyses to understand the
incremental liquidity impact of proposed reclamation settlements

and participated in telephonic meetings with the Ad Hoc Reclamation Committee and the Trade Subcommittee of the Official Unsecured Creditors Committee.

**E.    Real Estate**

26.    A&M reviewed proposed lease rejections, specific-store lease agreements, real estate impacts of proposed store closures and leasing impacts of the revised footprint.  A&M real estate professionals participated in discussions with landlords, Debtor's representatives and advisors as well as the Committee.

**F.    Executory Contracts**

27.    A&M reviewed proposed rejections of executory contracts, and discussed same with Debtors' advisors, to better understand the business purposes for rejection, potential damages and, as an alternative to rejection and in an effort to maximize creditor recovery, potential realizable value from assignment of contracts.  A&M prepared schedules detailing contracts to be rejected and presented its findings to the Committee.

**G.    Insurance**

28.    A&M reviewed proposed insurance premium financings, collateral requirements, premium pricing levels, factors behind pricing increases, insurance coverage and factors behind the selection of insurance providers with Winn-Dixie's

advisors and the Committee.  A&M discussed coverage policies and the factors behind pricing and coverage changes.

**H.    Teleconference / Meetings**

29.  A&M Team members participated in numerous in-person meetings and teleconferences with the Debtors, the Debtors' advisors and legal counsel, as well as the Committee members and their counsel, on a variety of issues.

**I.    Employee Retention / Severance**

30.  A&M reviewed the Company's proposed retention and severance plan, analyzed historical payroll and other compensation data, benchmarked Winn-Dixie's compensation program to other companies and participated in negotiations with Winn-Dixie and its advisors.

**J.    Store / Company Financials**

31.  A&M prepared a database of detailed store-by-store financials including several revenue, operating and profitability analyses for the purposes of understanding the Company's proposed footprint rationalization.

**K.    Store and distribution operations**

32.  A&M team members independently conducted numerous store visits and participated in additional visits with members of Winn-Dixie's executive and operations management team.  A&M then prepared an operational review including an evaluation of store conditions, merchandising, inventory content and adequacy

and store management.  A&M presented its review, based on the
store visits and input from Winn-Dixie's management, to the
Committee.

L.    **Payment of Pre-petition claims**

        33.  A&M reviewed the payment of pre-petition claims
with the Debtors' legal counsel and financial advisors and
advised the Committee regarding the same.

M.    **Perishable Agricultural Commodities Act ("PACA")**

        34.  A&M reviewed, assessed and analyzed Winn-Dixie's
outstanding PACA liability.


                   **VI.   ALLOWANCE OF COMPENSATION**

        35.  The professional services rendered by A&M,
particularly in light of A&M's specialized role as operations
and real estate advisor, have required a high degree of
professional competence and expertise to address the numerous
issues requiring evaluation and action by the Committee.  A&M
respectfully submits that the services rendered to the Committee
were performed efficiently, effectively and economically, and
that the results obtained to date have benefited not only the
members of the Committee, but also the unsecured creditors as a
whole and the Debtors' estates.

        36.  The allowance of interim compensation for
services rendered and reimbursement of expenses in bankruptcy

                              11

cases is expressly provided for in section 331 of the Bankruptcy
Code:

> Any professional person . . . may apply to the
> court not more than once every 120 days after an
> order for relief in a case under this title, or
> more often if the court permits, for such
> compensation for services rendered . . . as is
> provided under section 330 of this title.

11 U.S.C. § 331.

37.    With respect to the allowance of compensation,
section 328(a) of the Bankruptcy Code provides that with Court
approval:

> A committee . . . may employ or authorize the
> employment of a professional person . . . on any
> reasonable terms and conditions of employment,
> including on a retainer, on an hourly basis, or
> on a contingent fee basis, compensation for
> actual, necessary services rendered.

11 U.S.C. § 328(a).

38.    The total time spent by A&M professionals during
the First Interim Compensation Period was 612.4 hours.  As shown
by this Application and supporting exhibits, A&M's services were
rendered economically, primarily by the most experienced
members of the team, and without unnecessary duplication of
efforts.  In addition, the work involved, and thus the time
expended, was carefully assigned in consideration of the
experience and expertise required for each particular task.

## VII. EXPENSES

39.  A&M has incurred a total of $8,738.74 in expenses in connection with representing the Committee during the First Interim Compensation Period.  A&M records all expenses incurred in connection with the performance of professional services.  A summary of these expenses is annexed hereto as Exhibit B.

40.  In connection with the reimbursement of expenses, A&M's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients.  The expenses charged to A&M's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals and computerized research costs.

41.  A&M charges the Committee for these expenses at rates consistent with those charged to A&M's other bankruptcy clients, which rates are equal to or less than the rates charged by A&M's to its non-bankruptcy clients.

42.  Professionals at A&M have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of any air travel expenses in excess of coach fares.  Throughout the First Interim Compensation Period,

A&M has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII.  **NOTICE**

43.  Notice of this Motion has been given to counsel to the Debtors, counsel to the agent for the Debtor's DIP lender, the United States Trustee, the chair of the Committee, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases.  In light of the nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.

## IX.  **CONCLUSION**

WHEREFORE, A&M respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit C, (a) allowing A&M (i) interim compensation for professional services rendered as advisor to the Committee during the First Interim Compensation Period in the amount of $300,000.00 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $8,738.74, for a total award of $308,738.74; (b) authorizing and directing the Debtors to pay to A&M $308,738.74, which is the amount outstanding for services rendered and expenses incurred during the First Interim Compensation Period; and (c) granting such further relief as is just.

Dated: July 14, 2005

ALVAREZ & MARSAL, LLC

By: /s/ Martha E. M. Kopacz
     Martha E. M. Kopacz
     600 Lexington Avenue
     Sixth Floor
     New York, New York 10022
     (212) 759-4433

     Operation and Real Estate
     Advisor to Official Committee
     of Unsecured Creditors of Winn-
     Dixie Stores, Inc., et al.