**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                    Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., <u>et al.</u>,    Chapter 11

          Debtors.                        Jointly Administered

_____/

**FIRST APPLICATION OF MILBANK, TWEED, HADLEY & McCLOY LLP, COUNSEL**
**TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM**
**ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR**
**REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM**
**<u>MARCH 1, 2005 THROUGH AND INCLUDING MAY 31, 2005</u>**


Name of Applicant:              <u>Milbank, Tweed, Hadley & McCloy LLP</u>

Authorized to Provide
Professional Services to:       <u>Official Committee of Unsecured</u>
                                <u>Creditors</u>

Date of Retention              <u>April 12, 2005 (effective as of</u>
(Final Approval):              <u> March 1, 2005)</u>

Period for which compensation
and reimbursement is sought:   <u>March 1, 2005 – May 31, 2005</u>

Amount of Compensation
requested:                     <u>$1,194,617.50</u>

Amount of Expense
Reimbursement requested:       <u>$108,654.51</u>

This is a(n): ___<u>X</u>___ interim   _____ final application.

This is the first interim fee application filed by Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP in these cases.

Prior Applications:

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| | N/A | N/A | N/A | N/A |

FIRST INTERIM FEE APPLICATION OF MILBANK, TWEED,
HADLEY & McCLOY LLP: AS COUNSEL TO OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF WINN DIXIE STORES, INC., ET AL.
(MARCH 1, 2005 – MAY 31, 2005)

| Name | Position; Experience | Hourly Rate | Total Hours | Total Compensation |
|------|----------------------|-------------|-------------|--------------------|
| Luc Despins | Financial Restructuring Partner for 11 years; admitted in 1986. | $790 | 22.60 | $17,854.00 |
| Dennis Dunne | Financial Restructuring Partner for 8 years; admitted in 1991. | $790 | 300.00 | $237,000.00 |
| Matthew Barr | Financial Restructuring Partner for 1 year; admitted in 1997. | $550 | 480.30 | $264,165.00 |
| Risa Rosenberg | Financial Restructuring of Counsel for 4 years; admitted in 1984. | $630 | 5.80 | $3,654.00 |
| Peter Roest | Financial Restructuring Associate for 19 years; admitted in 1986. | $510 | 83.00 | $42,330.00 |
| Lena Mandel | Financial Restructuring Associate for 15 years; admitted in 1990 | $505 | 242.30 | $122,361.50 |
| Bruce Dailey | Global Finance Associate for 7 years; admitted in 1998. | $495 | 20.80 | $10,296.00 |
| Dennis O'Donnell | Financial Restructuring Associate for 12 years; admitted in 1992. | $495 | 38.80 | $19,206.00 |

| | | | | |
|---|---|---|---|---|
| Abhilash Raval | Financial Restructuring Associate for 8 years; admitted in 1997. | $495 | 122.60 | $60,687.00 |
| Jeffrey Milton | Financial Restructuring Associate for 4 years; admitted in 1999. | $475 | 168.20 | $79,895.00 |
| Michael Comerford | Financial Restructuring Associate for 3 years; admitted in 2003. | $400 | 480.20 | $192,080.00 |
| James Bulger | Financial Restructuring Associate for 2 years; admitted in 2004. | $375 | 17.40 | $6,525.00 |
| Samuel Khalil | Financial Restructuring Associate for 2 years; admitted in 2004 | $375 | 31.60 | $11,850.00 |
| Soham Naik | Financial Restructuring Associate for 2 years; admitted in 2004. | $375 | 220.00 | $82,500.00 |
| Rena Ceron | Legal Assistant | $170 | 117.70 | $20,009.00 |
| Alessandra Bulow | Legal Assistant | $155 | 8.50 | $1,317.50 |
| Holly Erick | Legal Assistant | $150 | 46.80 | $7,020.00 |
| Scott McCabe | Legal Assistant | $140 | 37.20 | $5,208.00 |

| | | | | |
|---|---|---|---|---|
| Jacqueline Clark | Managing Attorney Clerk | $135 | 60.30 | $8,140.50 |
| Joshua Wallach | File Clerk | $110 | 15.50 | $1,705.00 |
| Devon Pizzino | File Clerk | $110 | 7.40 | $814.00 |
| **Total** | | **$472.74[1]** | **2,527.00 hours** | **$1,194,617.50** |

---

[1] The blended rate <u>excluding</u> paraprofessionals is $515.04 per hour.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                        Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., <u>et al.</u>,        Chapter 11

          Debtors.                            Jointly Administered

_____/

**FIRST APPLICATION OF MILBANK, TWEED, HADLEY & M<u>c</u>CLOY LLP, COUNSEL
TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR
REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM
<u>MARCH 1, 2005 THROUGH AND INCLUDING MAY 31, 2005</u>**

Milbank, Tweed, Hadley & M<u>c</u>Cloy LLP ("<u>Milbank</u>"),

counsel to the official committee of unsecured creditors (the

"<u>Committee</u>") of Winn-Dixie Stores, Inc. and its affiliated

debtors and debtors-in-possession appointed in the above-

captioned cases (collectively, "<u>Winn-Dixie</u>" or the "<u>Debtors</u>"),

submits its application (the "<u>Application</u>"), pursuant to

sections 330 and 331 of title 11 of the United States Code (as

amended, the "<u>Bankruptcy Code</u>"), rule 2016 of the Federal Rules

of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the United

States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under

Section 330 of the Bankruptcy Code effective January 30, 1996

(the "<u>U.S. Trustee Guidelines</u>"), and the Final Order Approving

Interim Compensation Procedures for Professionals, dated March

15, 2005 (Docket No. 434) (the "Interim Compensation Order"),
for the allowance of interim compensation for professional
services rendered from March 1, 2005 through and including May
31, 2005 (the "First Interim Compensation Period"), and for
reimbursement of expenses incurred in connection with such
services, and in support thereof respectfully represents as
follows:

## I. INTRODUCTION

### A. Background

1.     On February 21, 2005 (the "Petition Date"), the
Debtors each filed a voluntary petition for relief under chapter
11 of the Bankruptcy Code in the United States Bankruptcy Court
for the Southern District of New York (the "New York Bankruptcy
Court").

2.     On March 1, 2005, the United States Trustee duly
appointed the Committee.

3.     By order dated April 13, 2005, the New York
Bankruptcy Court transferred venue of these cases to this Court.
The Debtors' cases are being jointly administered for procedural
purposes only.  The Debtors continue to operate their businesses
and manage their properties as debtors in possession pursuant to
sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or
examiner has been appointed in these cases.

4.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of the Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.

**B.    Retention of Milbank and Billing History**

5.    On April 12, 2005, pursuant to the Order Under 11 U.S.C. § 1103 And Fed. R. Bankr. P. 2014 And 5002, Authorizing Retention And Employment Of Milbank, Tweed, Hadley & McCloy LLP As Counsel To Official Committee Of Unsecured Creditors Of Winn-Dixie Stores, Inc., et al. (Docket No. 702) (the "Retention Order"), the Committee's retention of Milbank in these cases was authorized effective as of March 1, 2005.[1]

6.    This Application is Milbank's first interim application for approval and allowance of compensation and reimbursement of expenses.  Milbank makes this interim application pursuant to sections 330 and 331 of the Bankruptcy

---

[1]    On March 30, 2005, the New York Bankruptcy Court entered an order (Docket No. 607) approving Milbank's retention on an interim basis subject to final approval, which occurred pursuant to the Retention Order.

Code.  No prior application has been made to this or any other

court for the relief requested herein.

        7.    In accordance with the Interim Compensation

Order, Milbank submitted monthly fee statements to, among

others, the Debtors seeking interim compensation and

reimbursement of expenses.  During the First Interim

Compensation Period, Milbank submitted the following fee

statements:

    (a)  On May 4, 2005, pursuant to the Interim Compensation
         Order, Milbank served its first fee statement for the
         period from March 1, 2005 through and including March
         31, 2005 (the "First Fee Statement").  The First Fee
         Statement sought an allowance of $447,752 as
         compensation for services rendered and the
         reimbursement of $35,345.75 in expenses.

    (b)  On May 25, 2005, pursuant to the Interim Compensation
         Order, Milbank served its second fee statement for the
         period from April 1, 2005 through and including April
         30, 2005 (the "Second Fee Statement").  The Second Fee
         Statement sought an allowance of $362,756 as
         compensation for services rendered and the
         reimbursement of $37,266.13 in expenses.

    (c)  On June 30, 2005, pursuant to the Interim Compensation
         Order, Milbank served its third fee statement for the
         period from May 1, 2005 through and including May 31,
         2005 (the "Third Fee Statement" and together with the
         First Fee Statement and the Second Fee Statement,
         collectively the "First Interim Fee Statements").  The
         Third Fee Statement sought an allowance of $384,109.50
         as compensation for services rendered and the
         reimbursement of $36,042.63 in expenses.

        8.    As of the filing of this Application, Milbank has

received two payments during the First Interim Compensation

Period totaling $721,018.28 with respect to the First Interim

Fee Statements.  Milbank has applied these payments to the First Fee Statement (80% of fees and 100% of expenses) and to the Second Fee Statement (80% of fees and 100% of expenses). Milbank has not received any payments with respect to the Third Fee Statement, as of the filing of this Application.  There is an unpaid balance of $582,253.73 for the First Interim Compensation Period.

9.    Milbank has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

10.    No promises have been received by Milbank or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## II.    CASE STATUS

11.    The Debtors have not filed a disclosure statement or a plan of reorganization in these cases.

## III.    APPLICATION

12.    By this Application, Milbank is seeking full allowance of (a) compensation for professional services rendered by Milbank, as counsel for the Committee, during the First Interim Compensation Period and (b) reimbursement of expenses

incurred by Milbank in connection with such services during the First Interim Compensation Period.

13.    In this Application, Milbank seeks approval of the amount of $1,194,617.50 for legal services rendered on behalf of the Committee during the First Interim Compensation Period and the amount of $108,654.51 for reimbursement of expenses incurred in connection with the rendition of such services, for a total award of $1,303,272.01.

14.    Pursuant to the Interim Compensation Order, Milbank, together with all other retained professionals, is entitled to eighty percent (80%) of its fees sought in each of Milbank's First Interim Fee Statements and reimbursement of one hundred percent (100%) of Milbank's expenses.  As noted above, Milbank received to date 80% of fees and 100% of expenses for the First Fee Statement (totaling $393,547.35).  Milbank has also received to date 80% of fees and 100% of expenses for the Second Fee Statement (totaling $327,470.93).  Milbank is, therefore, seeking a total payment of $582,253.73 pursuant to this Application, representing the unpaid balance of 100% of fees and 100% of expenses for the Third Fee Statement (totaling

$420,152.13),[2] <u>plus</u> the 20% hold-back amount of fees for the
First Fee Statement and Second Fee Statement, pursuant to the
Interim Compensation Order, of $162,101.60.

15.   The fees sought by this Application reflect an
aggregate of 2,527 hours of attorney and paraprofessional time
spent and recorded in performing services for the Committee
during the First Interim Compensation Period, at a blended
average hourly rate of $472.74 for both professionals and
paraprofessionals.

16.   Milbank rendered to the Committee all services
for which compensation is sought solely in connection with these
cases in furtherance of the duties and functions of the
Committee.

17.   Milbank maintains computerized records of the
time expended in the rendering of the professional services
required by the Committee.   These records are maintained in the
ordinary course of Milbank's business.   For the convenience of
the Court and parties in interest, a billing summary for the
First Interim Compensation Period is attached as part of the
cover sheet, setting forth the name of each attorney and
paraprofessional for whose work on these cases compensation is

---

[2]      To the extent Milbank receives any payment for the Third Fee Statement
         prior to the hearing on this Application, Milbank will advise the Court

sought, each attorney's year of bar admission, the aggregate amount of time expended by each such attorney or paraprofessional, the hourly billing rate for each such attorney or paraprofessional at Milbank's current billing rates and an indication of the individual amounts requested as part of the total amount of compensation requested.  In addition, set forth in the billing summary is additional information indicating whether each attorney is a partner or associate, the number of years each attorney has held such position, and each attorney's area of concentration.  The compensation requested by Milbank is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

18.  Attached hereto as <u>Exhibit A</u> are time entry records broken down in tenths of an hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description of services performed by each attorney and paraprofessional on behalf of the Committee for the First Interim Compensation Period.

19.  Milbank also maintains computerized records of all expenses incurred in connection with the performance of professional services.  A summary of the amounts and categories

---

and amend its request accordingly.

of expenses for which reimbursement is sought for the First
Interim Compensation Period, as well as a breakdown of expenses
by project category and detailed descriptions of these expenses,
are attached hereto as <u>Exhibit B</u>.

### IV.   <u>SUMMARY OF PROFESSIONAL SERVICES RENDERED</u>

20.   To provide an orderly summary of the services
rendered on behalf of the Committee by Milbank, and in
accordance with the U.S. Trustee Guidelines, Milbank has
established the following separate project billing categories in
connection with these cases:

  (a)  Adequate Protection Issues and Litigation
  (b)  Asset Sales
  (c)  Automatic Stay Enforcement & Litigation
  (d)  Business Plan Review and Analysis
  (e)  Change of Control Transactions
  (f)  Claims Analysis and Estimation
  (g)  Committee Administration
  (h)  Committee Meetings
  (i)  Court Hearings
  (j)  Customer Contracts & Programs
  (k)  Debtor-in-Possession Meetings and Communications
  (l)  DIP and Exit Financing
  (m)  Disclosure Statement
  (n)  Employee Issues
  (o)  Environmental Issues
  (p)  Equipment/Personal Property Leases
  (q)  Exclusivity Issues
  (r)  Executory Contracts
  (s)  Fee Applications – Other
  (t)  File, Docket and Calendar Maintenance
  (u)  General Communications with Creditors
  (v)  Insurance Matters
  (w)  PACA
  (x)  Pension Issues
  (y)  Preparation of Milbank Fee Applications
  (z)  Real Property Leases
 (aa)  Reclamation Issues

(bb) Regulatory Issues
(cc) Reorganization Plan
(dd) Reporting Requirements
(ee) Retention of Professionals
(ff) Rule 2004 Examinations
(gg) Secured Transactions
(hh) Substantive Consolidation
(ii) Tax Issues
(jj) Travel Time
(kk) Union Issues
(ll) Utilities Advice
(mm) Vendor Issues
(nn) Voidable Transfers and other potential claims
(oo) Venue Issues

21. The following summary is intended to highlight a number of the services rendered by Milbank in the separate project billing categories where Milbank has expended a considerable number of hours on behalf of the Committee, and it is not meant to be a detailed description of all of the work performed. Detailed descriptions of the day-to-day services provided by Milbank during the First Interim Compensation Period and the time expended performing such services in each project billing category are fully set forth in Exhibit A hereto. Such detailed descriptions show that Milbank was heavily involved in the performance of services for the Committee on a daily basis, including night and weekend work, often under extreme time constraints to meet the needs of the Committee in these cases.

**A.   Asset Sales**

22. During the First Interim Compensation Period, the Debtors filed several motions relating to the sale of various

non-core assets.  On behalf of the Committee, Milbank attorneys worked closely with the Committee's financial advisors and the Debtors' legal and financial advisors to negotiate enhanced asset sale values and transaction terms for the Debtors' estates in connection with such sales.  Milbank attorneys (i) reviewed and analyzed numerous transactions proposed by the Debtors during the First Interim Compensation Period, (ii) engaged in continual interaction with the Debtors regarding discrete asset sale issues that arose throughout the First Interim Compensation Period through numerous conference calls and other correspondence, and (iii) regularly informed the Committee of pending asset sales orally and through memoranda analyzing the proposed transactions and recommending courses of action for the Committee.  These transactions involved, among other things, the sale of two airplanes, pharmaceutical sales, and the sale of approximately 326 store leases and related inventory as part of the Debtors reduced footprint with 20 stalking horse bids for 79 stores.

23.  In connection with the aircraft sale transactions, Milbank attorneys (i) negotiated and prepared form purchase agreements with the Debtors and their advisors, (ii) reviewed numerous purchase agreement markups from multiple bidders and conferred with the Debtors regarding the same, (iii) conferred with the Debtors regarding the selection of a

stalking horse, and (iv) participated in a sale auction and selection of the winning bidder.

24.   In connection with the sale of store leases during the First Interim Compensation Period, Milbank attorneys (i) negotiated and prepared form asset purchase agreements with the Debtors and their advisors, with a focus on crafting correct precedents and templates to be used for multiple sales, (ii) reviewed and commented on the preparation of bidding procedures for an auction and sale motion, and (iii) conferred with the Debtors on an optimal structure for the auction and methods for maximizing value received from the sale of the leases through stalking horse auctions.

**B.    Committee Administration**

25.   Milbank's attention to the Committee's organizational needs enabled the Committee to promptly complete the administrative matters that were necessary to the Committee's effective participation in these cases.  Following the Committee's organization and formation, Milbank attorneys drafted various documents necessary for the efficient administration of the Committee's affairs, such as the Committee bylaws that address internal decisions and governance. Moreover, throughout the First Interim Compensation Period, Milbank attorneys have counseled and advised the Committee regarding its statutory and fiduciary duties to the unsecured

creditor body and the fiduciary obligations of the other parties-in-interest in general.

26.   Milbank prepared memoranda, and provided advice orally when time constraints so required, on the various pending issues arising in these cases.   Milbank analyzed issues and motions filed in the Debtors' cases and recommended action.

27.   For instance, following the Committee's formation, Milbank attorneys reviewed and prepared memoranda for circulation to the Committee regarding the Debtors' "first day" motions, which were filed in connection with the Debtors' voluntary petitions for bankruptcy.   Milbank analyzed issues regarding the Debtors' "first day" motions, discussed with Committee members the relief sought and Milbank's recommendations, and negotiated with counsel to the Debtors the terms of various final orders for "first day" motions.

28.   During the First Interim Compensation Period, Milbank attorneys also reviewed, analyzed and discussed with the Committee requests made to the United States Trustee (the "U.S. Trustee") for the formation of an equity committee.   At the request of the U.S. Trustee, Milbank drafted response letters to the U.S. Trustee regarding the Committee's position with respect to such requests.

29.   Due to Milbank attorneys' experience in counseling various parties in interest in restructurings and bankruptcy cases, Milbank believes it provided and will continue to provide to the Committee a unique perspective and sophisticated understanding of all issues relating to the administration of the Debtors' cases.

**C.**   **Committee Meetings**

30.   Numerous issues arose during the First Interim Compensation Period requiring meetings of the Committee. Committee meetings generally occur weekly via teleconference. Prior to such meetings, in addition to the memoranda discussed above, Milbank organized the Committee meetings by drafting agendas that included topics from all of the Committee's professionals and by distributing certain other materials for Committee members to review.  Milbank discussed with the Committee all significant matters arising in these cases during the First Interim Compensation Period and assisted the Committee in formulating positions on issues as they arose.

31.   Through Committee meetings and conference calls, and numerous other communications with members of the Committee, Milbank has assisted the Committee in (i) fulfilling its obligations to unsecured creditors and (ii) making informed decisions regarding the numerous issues that have arisen in these cases.

D.    <u>Court Hearings</u>

            32.    Throughout the First Interim Compensation Period,
Milbank attorneys, on behalf of the Committee, prepared for and
attended numerous court hearings.  To prepare for these
hearings, Milbank attorneys expended considerable time reviewing
and analyzing pleadings filed by the Debtors and third parties
and conducted independent legal and factual research as
necessary.  In addition, Milbank attorneys drafted and argued
numerous pleadings on behalf of the Committee.  Milbank
attorneys were often called upon to present oral argument in
court not only with respect to the Committee's own pleadings,
but also with respect to various forms of relief sought by the
Debtors or other interested parties.  These hearings covered
motions seeking, among other things, approval of (i) the "first
day" motions, (ii) DIP financing motion, (iii) the retention of
various professionals, (iv) a motion for the transfer of venue,
(v) motions seeking the rejection of various personal property
and real property leases, and (vi) asset sales, including two
airplane sales, pharmaceutical sales, and other non-core asset
sales.

E.    <u>DIP and Exit Financing</u>

            33.    Milbank attorneys reviewed and negotiated changes
to the terms of the debtor-in-possession ("<u>DIP</u>") financing
facility proposed by the Debtors in an effort to ensure that the

Debtors' estates obtained the best terms available.  These efforts involved numerous meetings and discussions with the Debtors' counsel, the Debtors' financial advisors, counsel to the proposed DIP lender, and with members of the Committee to analyze numerous and complex DIP financing issues.  Milbank attorneys also reviewed, analyzed, and commented on drafts of an order authorizing the Debtors to enter into the DIP facility and reviewed, analyzed and commented on the credit agreement and related documents incorporating the terms of the DIP facility. Since approval of the DIP facility, Milbank attorneys have reviewed one amendment to the DIP facility proposed by the Debtors and the DIP lenders, and submitted their recommendation to the Committee.

34.  Milbank attorneys also appeared in court to support the approval of the DIP financing facility.

**F.**   **Employee Issues**

35.  During the First Interim Compensation Period, Milbank attorneys also reviewed, analyzed and discussed with Committee members a request that was made to the U.S. Trustee for the formation of a retiree committee and a motion that was filed with this Court requesting the same.  Based upon a recommendation from the Committee and at the request of the U.S. Trustee, Milbank attorneys drafted a response letter to the U.S. Trustee regarding such request.  Additionally, Milbank

attorneys, at the request of the Committee, drafted an objection to the motion that was filed with this Court.

36.   During the First Interim Compensation Period, Milbank attorneys also reviewed, analyzed and negotiated the Debtors' proposed terms for a key employee retention plan and severance plan (the "KERP").  In consultation with the Committee and the Committees' financial advisors, Milbank submitted various comments to the Debtors regarding the KERP. Additionally, Milbank attorneys and other Committee professionals engaged in extensive negotiations with counsel to the Debtors' and the Debtors' other professionals over the terms and conditions of the KERP.  The Debtors eventually incorporated a majority of the Committee's KERP comments resulting in a consensual resolution of disputes regarding the KERP between the Committee and Debtors.

## G.   File, Docket & Calendar Maintenance

37.   Milbank's paraprofessionals maintained a filing and record-keeping system as well as monitored the docket in these cases.  To ensure that the Committee was apprised of filings as they occurred, Milbank paraprofessionals routinely reviewed the docket and obtained any necessary papers or exhibits on an ongoing basis.

38.   In addition, Milbank paraprofessionals created a calendar tracking system to alert the Committee of deadlines in the Debtors' cases.  As needed, Milbank also circulated pleadings and other documents to, and discussed upcoming hearings and motions with, the Committee.

**H.   Real Property Leases**

39.   During the First Interim Compensation Period, Milbank attorneys reviewed, analyzed and negotiated the terms and conditions under which the Debtors sought to reject numerous real property leases.  Milbank attorneys engaged in extensive negotiations with counsel to the Debtors' over the terms and conditions of proposed lease rejections.

**I.   Reclamation Issues**

40.   During the First Monthly Interim Compensation Period, Milbank attorneys spent significant time negotiating with the Ad Hoc Committee of Reclamation Creditors (the "Ad Hoc Committee"), the Debtors and their respective counsel and professionals in an effort to consensually resolve numerous issues relating to the treatment of reclamation claims including, but not limited to, establishing a trade lien program and restoring normal trade credit for the Debtors.  In this regard, Milbank attorneys attended numerous meetings with the Ad Hoc Committee, the Committee and the Committee's and Debtors' professionals relating to formulating a settlement proposal,

term sheet and other related materials.  Milbank attorneys also reviewed and commented on numerous settlement proposals, term sheets, pleadings, and other related materials in connection with reaching a consensual resolution of such issues.

## J.   Retention of Professionals

41.  During the First Interim Compensation Period, Milbank coordinated with the Committee during the interview and selection process of the Committee's other professionals including: Houlihan Lokey Howard & Zukin Capital as financial advisors; Alvarez & Marsal, LLC as operations and real estate advisors and Akerman Senterfitt as Committee co-counsel. Similarly at the request of the Committee, Milbank assisted in the preparation and drafting of the Committee's various retention applications for these other professionals, as well as preparing Milbank's own retention application.

42.  Milbank also assisted the Committee with the review of the Debtor's proposed professionals in order to, among other things, minimize the likelihood of any duplication of efforts.  For example, Milbank reviewed and negotiated the Debtor's retention of the Blackstone Group, L.P., XRoads Solutions Group LLC, DJM Asset Management, LLC and The Food Partners, LLC, Bain & Company, Inc., and Deloitte Consulting LLP to ensure that each firm was necessary to the Debtor's restructuring and would not result in duplication of efforts.

**K.    Venue Issues**

43.    During the First Interim Compensation Period, Milbank attorneys spent significant time, pursuant to the Committee's direction, in reviewing and analyzing the issues involved in addressing a motion to transfer venue filed by a creditor in these cases.  Milbank attorneys reviewed various other pleadings related to the motion to transfer venue. Milbank attorneys participated in the evidentiary hearings with respect to the motion to transfer venue.

**V.    FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

44.    The factors to be considered in awarding attorneys fees as enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most courts.[3]  Milbank respectfully submits that the

---

[3]    Grant v. Florida Power Corp. (In re American Fabricators, Inc.), 197 B.R. 987, 993-94 (Bankr. M.D. Fla. 1996) (adopting the First Colonial factors and noting that Fifth Circuit decisions before 1981 are binding precedent in the Eleventh Circuit).  The factors embraced by the Fifth Circuit in First Colonial were adopted by the Fifth Circuit's decision in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), except that First Colonial also included the "spirit of economy" as a factor which was expressly rejected by Congress in enacting section 330 of the Bankruptcy Code.  Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1403 (11th Cir. 1997).  The remaining First Colonial factors continue to apply to determine the reasonableness of fees awarded under the Bankruptcy Code.  3 Collier on Bankruptcy ¶ 330.04[3][c] (Lawrence P. King, et al., eds., 15th ed. 1997).  In addition, a majority of the First Colonial factors are now codified in section 330(a)(3).  Id.

consideration of these factors should result in this Court's allowance of the full compensation sought.

(A) <u>The Time and Labor Required</u>.  The professional services rendered by Milbank on behalf of the Committee have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

(B) <u>The Novelty and Difficulty of Questions</u>.  Novel and complex issues have arisen in the course of these chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In these cases, as in many others in which the firm is involved, Milbank's effective advocacy and creative approach to problem solving have helped clarify and resolve difficult issues and will continue to prove beneficial.

(C) <u>The Skill Requisite to Perform the Legal Services Properly</u>.  Milbank believes that its recognized expertise in the area of financial restructuring, its ability to draw from highly experienced professionals in other areas of its practice such as structured finance, mergers and acquisitions, litigation, environmental and regulatory law and its practical approach to the resolution of issues help maximize the distributions to the Debtors' unsecured creditors.

(D) <u>The Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>.  Due to the size of Milbank's financial restructuring department and the firm as a whole, Milbank's representation of the Committee has not precluded the acceptance of new clients.  However, the number of matters needing attention on a continuous basis has required several of Milbank's attorneys to commit significant portions of their time to these cases.

(E) <u>The Customary Fee</u>.  The compensation sought herein is based upon Milbank's normal hourly rates for services of this kind.  Milbank respectfully submits that the

compensation sought herein is not unusual given the magnitude and complexity of these cases and the time dedicated to the representation of the Committee. Such compensation is commensurate with fees Milbank has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

(F) <u>Whether the Fee is Fixed or Contingent</u>. Milbank charges customary hourly rates for the time expended by its attorneys and paraprofessionals in representing the Committee, and Milbank's fee is not outcome dependent.

(G) <u>Time Limitations Imposed by Client or Other Circumstances</u>. As stated above, Milbank has been required to attend to various issues as they have arisen in these cases. Often, Milbank has had to perform these services under significant time constraints requiring attorneys and paraprofessionals assigned to these cases to work evenings and on weekends.

(H) <u>The Amount Involved and Results Obtained</u>. The Committee represents the interests of unsecured creditors holding unsecured claims estimated at well over $500 million dollars. Through Milbank's efforts, the Committee has been an active participant in these chapter 11 cases. The Committee's participation, with Milbank's counsel and guidance, has greatly contributed to the efficient administration and prospects for reorganization of these cases.

(I) <u>The Experience, Reputation and Ability of the Attorneys</u>. Milbank has a sophisticated and nationally recognized corporate reorganization and financial restructuring practice, and Milbank attorneys involved in this representation have played a major role in numerous complex restructurings including, for example, the chapter 11 cases of Enron Corp., RCN Corp., Intermet Corp., Fruit of the Loom Inc., Adelphia Communications Corp., US Airways Group, Inc., Global Crossing Ltd., Fleming Companies, Inc., Dairy Mart Convenience Stores, Inc., Lernout & Hauspie Speech Products N.V., Teligent, Inc., World Access, Inc., ORBCOMM Global, L.P., ICO Global Communications Inc., Safety-Kleen Corp., HomePlace Stores, Inc., Hvide Marine, Inc., Sun TV and Appliances, Inc., Seven-Up/RC Bottling Company of Southern California,

Inc. and Ames Department Stores, Inc.  Milbank's
experience enables it to perform the services
described herein competently and expeditiously.

(J)   <u>The "Undesirability" of the Case</u>.  These cases are not
undesirable but, as already indicated, have required a
significant commitment of time from many of Milbank's
attorneys.

(K)   <u>Nature and Length of Professional Relationship</u>.
Milbank was selected as the Committee's counsel
shortly after the Committee's formation, on March 1,
2005, and was retained effective as of that date
pursuant to an order of the Court dated April 12,
2005.  Milbank has been rendering services
continuously to the Committee since the Committee was
formed, and Milbank has rendered such services in a
necessary and appropriate manner.

## VI.   <u>ALLOWANCE OF COMPENSATION</u>

45.   The professional services rendered by Milbank
have required a high degree of professional competence and
expertise to address, with skill and dispatch, the numerous
issues requiring evaluation and action by the Committee.
Milbank respectfully submits that the services rendered to the
Committee were performed efficiently, effectively and
economically, and that the results obtained to date have
benefited not only the members of the Committee, but also the
unsecured creditors as a whole and the Debtors' estates.

46.   The allowance of interim compensation for
services rendered and reimbursement of expenses in bankruptcy
cases is expressly provided for in section 331 of the Bankruptcy
Code:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

47.   With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person, "reasonable compensation for actual, necessary services rendered."   Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)   the time spent on such services;
> (B)   the rates charged for such services;
> (C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> (E)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).

24

48.   The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases.   In re Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("Congress determined, it appears, that on average the gain to the estate of employing able, experienced, expert counsel would outweigh the expense to the estate of doing so, and that unless the estate paid competitive [market] sums it could not retain such counsel on a regular basis.") (citations and quotations omitted).

49.   The total time spent by Milbank attorneys and paraprofessionals during the First Interim Compensation Period was 2,527.00 hours and has a fair market value of $1,194,617.50.   As shown by this Application and supporting exhibits, Milbank's services were rendered economically and without unnecessary duplication of efforts.   In addition, the work involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.

## VII.  EXPENSES

50.   Milbank has incurred a total of $108,654.51 in expenses in connection with representing the Committee during the First Interim Compensation Period.   Milbank records all

expenses incurred in connection with the performance of professional services.

51.   In connection with the reimbursement of expenses, Milbank's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients. The expenses charged to Milbank's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

52.   Milbank charges the Committee for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients.

53.   In providing or obtaining from third parties services which are reimbursable by clients, Milbank does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

54.   Milbank regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services

because such items are not included in the firm's overhead for the purpose of setting the billing rates.

55.   Attorneys at Milbank have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of any air travel expenses in excess of coach fares.  Throughout the First Interim Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII. **NOTICE**

56.   Pursuant to the Interim Compensation Order, notice of this Motion has been given to bankruptcy counsel to the Debtors, corporate counsel to the Debtors, counsel to the agent for the Debtor's post-petition secured lender, the United States Trustee, the chair of the Committee, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases.  In light of the nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.

## IX.  **CONCLUSION**

WHEREFORE, Milbank respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit C, (a) allowing Milbank (i) interim compensation for professional services rendered as counsel for the Committee

27

during the First Interim Compensation Period in the amount of $1,194,617.50 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $108,654.51, for a total award of $1,303,272.01;

(b) authorizing and directing the Debtors to pay to Milbank $582,253.73, which is an amount equal to the difference between (i) the $1,303,272.01 award and (ii) $721,018.28, the aggregate amount that the Debtors have paid to Milbank pursuant to the Interim Compensation Order for services rendered and expenses incurred during the First Interim Compensation Period; and

(c) granting such further relief as is just.

Dated: July 15, 2005

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

By: /s/ Dennis F. Dunne
    Dennis F. Dunne (DD 7543)
    Matthew S. Barr (MB 9170)
    1 Chase Manhattan Plaza
    New York, New York 10005
    (212) 530-5000

    Counsel for Official Committee
    of Unsecured Creditors of Winn-
    Dixie Stores, Inc., et al.