UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | )    **Case No. 05-03817-3F1 (JAF)** |
| | )    *Chapter 11* |
| **WINN-DIXIE STORES, INC., et al.,** | )    **Jointly Administered** |
| | ) |
| **Debtors.**[1] | )    **Hearing Date: August 4, 2005** |
| | )    **Hearing Time: 1 p.m. Eastern** |

---

**FINAL APPLICATION OF BAIN & COMPANY, INC.
FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR FEES IN THE
AMOUNT OF $426,473.00 AND REIMBURSEMENT OF EXPENSES IN THE AMOUNT
OF $37,923.71 FOR THE PERIOD FEBRUARY 21, 2005 THROUGH FEBRUARY 28,
2005 AND $800,000.00 IN FEES AND EXPENSES FOR THE PERIOD MARCH 1, 2005
THROUGH MAY 31, 2005**

Bain & Company, Inc. ("**Bain**"), strategic and financial consultants to the debtors and

debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**"), hereby submits

its final[2] application (the "**Application**") seeking allowance of compensation for services

rendered and reimbursement of expenses incurred in the period February 21, 2005 through

February 28, 2005 and allowance and payment of compensation for services rendered to the

Debtors and expenses incurred for the period March 1, 2005 through May 31, 2005 (the period

from February 21, 2005 through May 31, 2005 hereinafter defined as the "**Compensation

Period**"), and in support thereof, represents as follows:

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Subbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

[2]      The Retention Order, as defined below, provides that Bain may file a final fee application seeking approval and immediate and full payment of allowed amounts at any time after entry of the order. See Retention Order, ¶3.

## BACKGROUND

1.      On February 21, 2005 (the "**Petition Date**"), the Debtors filed voluntary petitions

for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-

13330 as amended (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the

Southern District of New York (the "**New York Court**").  By order dated April 13, 2005, the

New York Court transferred venue of these cases to this Court.

2.      The Debtors are operating their businesses and managing their properties as

debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No

request has been made for the appointment of a trustee or examiner.  On March 1, 2005, a

committee of general unsecured creditors (the "**Committee**") was appointed to serve in these

cases.

3.      The Court has jurisdiction over the Application under 28 U.S.C. §§ 157 and 1334.

Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This Application is a core proceeding

pursuant to 28 U.S.C. §157(b)(2).

## RELIEF REQUESTED

4.      By this Application, Bain requests final approval and payment of compensation

for services rendered and expenses incurred in providing strategic consulting and financial

services to the Debtors during the Compensation Period.

## RETENTION OF BAIN

5.      For more than a year prior to the Petition Date, Bain had been providing ordinary

course support services to the Debtors' internal financial group, including company footprint

planning and analysis, general and administrative optimization, and inventory management.  The

Debtors requested that Bain continue to provide those and other services upon a chapter 11 filing.

6.     Based on discussions with the U.S. Trustee for the Southern District of New York, the Debtors did not believe it was necessary to consider Bain a "professional" for purposes of retention in bankruptcy under either Section 327(a) of the Bankruptcy Code or as an ordinary course professional.  In light of the discussions with the U.S. Trustee for the Southern District of New York, the Debtors continued to obtain services from Bain during the post-petition period and paid Bain, in the ordinary course, for invoiced post-petition fees and expenses incurred in February 2005 (for the period February 21st through 28th).  Bain received, in the ordinary course, $426,473.00 in fees and $37,923.71 in expenses from the Debtors related to the post-petition period (February 21st-28th) in February 2005.

7.     Subsequently, however, the U.S. Trustee for the Southern District of New York informed the Debtors that the nature of services provided by Bain would require that the Debtors treat and retain Bain as a professional in these proceedings.

8.     On March 25, 2005, the Debtors filed an application (the "**Retention Application**") seeking to retain Bain *nunc pro tunc* for a limited period of time pursuant to section 327(a) of the Bankruptcy Code.  Per the Retention Application, the Debtors sought court approval for Bain to provide the following services in these cases for the period from the Petition Date through May 31, 2005:

        (a)     Company Footprint Planning and Analysis – Analysis of market potential, capital needs, operating economics, and competitive issues;

        (b)     General and Administrative Optimization – Analysis related to the right sized general and administrative level; staffing and organization recommendations; and

(c)    Inventory Management and Merchandising – Support services to ensure tracking of inventory initiatives and implementation and, as needed, projects to support merchandising efforts.

9.    The Retention Application provided that Bain be compensated for its services on a flat-fee arrangement of $500,000 per month, which monthly fee may be adjusted by mutual agreement of the Debtors and Bain to reflect any changes in the services provided by Bain.  In addition, the Retention Application provided that Bain charge the Debtors 15% of professional fees for out-of-pocket expenses, which will be reconciled against actual expenses such that Bain will only be compensated for actual expenses incurred in providing services to the Debtors. Finally, as additional expenses, the Debtors requested in the Retention Application that Bain be allowed reimbursement for its outside counsel's fees and expenses incurred in these cases up to an aggregate cap of $100,000, subject to increases as mutually agreed by the Debtors and Bain and as approved by the Court.

10.    The Retention Application provided that, given Bain's retention under a flat-fee arrangement and the fact that Bain's invoices do not contain time entries or descriptions in the ordinary course, Bain would submit an invoice containing, in summary format, the name of each professional and the aggregate amount of time spent during the applicable month by each such individual in rendering services to the Debtors.   In addition, Bain would submit invoices itemizing the type and amount of expenses incurred during that month.

11.    Bain has received from the Debtors payment of a retainer in the amount of $500,000 (the "**Retainer**") for application to fees, charges, and disbursements relating to services rendered subsequent to the Petition Date.

- 4 -

12. Subsequently, these proceedings were transferred from the New York Court to this Court.

13. On May 10, 2005, the U.S. Trustee filed an objection to the Retention Application. At approximately the same time, the Committee raised certain concerns with the Debtors and Bain regarding alleged preferential payments on Bain's pre-petition services provided to the Debtors. In addition, the Committee also expressed concerns with Bain's retention in these proceedings. The parties subsequently engaged in settlement negotiations resulting in a resolution of the Committee and the U.S. Trustee's concerns with Bain's retention and a withdrawal of the U.S. Trustee's objections to Bain's retention.

14. Pursuant to the terms of the settlement negotiations, Bain agreed to (i) seek allowance of the post-petition payments made to Bain in the ordinary course in February 2005 of $426,473.00 in fees and $37,923.71 in expenses, (ii) cap payment of its fees and expenses for the period March 1, 2005 through May 31, 2005 at an aggregate amount of $800,000.00, and (iii) not seek payment of its attorneys fees and expenses incurred in these proceedings. In return, all parties removed any objections to Bain's retention and payment in these proceedings under the terms above, and the Debtors and the Committee agreed not to pursue chapter 5 actions against Bain.

15. In an Order dated May 24, 2005 (the "**Retention Order**"), this Court approved Bain's retention in these proceedings. The Retention Order provides, in relevant part, that Bain would seek (i) reduced payment of fees and expenses incurred in the period from March 1, 2005 through May 31, 2005 in the aggregate amount of $800,000, and (ii) approval of the post-petition amounts already paid to Bain for February 2005.

- 5 -

16.    The Retention Order further provides: "Bain shall not be required to maintain detailed time records, but shall submit fee applications containing a brief description of the services rendered during the applicable time period and shall attach (a) an invoice containing, in summary format, the name of each professional, and the aggregate amount of time spent during the applicable period by each individual in rendering services on behalf of the Debtors; provided, however, that Bain shall not be required to provide in any fee invoice any time entries; and (b) an invoice itemizing the type and amount of expenses incurred during that month." A true and correct copy of the Retention Order is attached hereto at **Exhibit "A."**

17.    Based on the negotiations between the parties, the Retention Order was made expressly contingent upon this Court's approval of a Stipulation dated May 27, 2005 (the "**Stipulation**"), entered into by and between the Debtors, Bain, and the Committee.    The Stipulation documented the settlement between Bain and the Committee, described above, and provided for a release and waiver of the Debtor's chapter 5 actions against Bain. On May 27, 2005, the Debtors filed a motion seeking approval of the settlement entered into by and between the Debtors, Bain, and the Committee and as set forth in the Stipulation. By Order dated June 16, 2005 (the "**Stipulation Order**"), this Court approved the Stipulation and the settlement by and between the Debtors, the Committee, and Bain.    Upon this Court's approval of the Stipulation and entry of the Stipulation Order, the Retention Order became final. A true and correct copy of the Stipulation Order is attached hereto at **Exhibit "B."**

**BAIN'S FEE APPLICATION**

A.    **Request for Compensation and Reimbursement**

18.    Pursuant to the terms of the Retention Order, Bain submits this application for compensation for services rendered and reimbursement of charges and disbursements incurred in

- 6 -

these cases during the Compensation Period. During the period March 1 through May 31, 2005, Bain provided services to the estates in an amount totaling $2,428,234.00.[3] In addition, during that same period, Bain incurred expenses totaling $217,460.00. Bain's total fees and expenses in the period March 1, 2005 through May 31, 2005 aggregated to $2,645,694.00. Pursuant to the terms of the Retention Order, Bain has agreed to seek a reduced payment of fees and expenses for the period March 1 through May 31, 2005 in the aggregate amount of $800,000.

19.    In addition, as explained above, Bain was initially engaged in these proceedings as an ordinary course professional and was, therefore, compensated for fees and expenses incurred post-petition in February 2005 (the "**February Post-Petition Amounts**"). Although paid as an ordinary course vendor, in an abundance of caution, Bain seeks approval from this Court of the February Post-Petition Amounts as well in this Application. True and correct copies of invoices for Bain's fees and expenses incurred during the Compensation Period are attached hereto at **Exhibit "C."**

20.    As set forth in Bain's Retention Application as well as the Retention Order entered by this Court, Bain was retained on a flat-fee basis by the Debtors and was not required to maintain time entries. Pursuant to the terms of the Retention Application and the Retention Order, the fee invoices attached hereto at Exhibit C contain the name of each professional, a general description of the services provided, and the aggregate amount of time spent during the applicable period by each individual in rendering services on behalf of the Debtors. Further, pursuant to the terms of the Retention Application and the Retention Order, the expense invoices

---

[3]    Pursuant to the terms of Bain's engagement, it agreed to limit those fees to $1,500,000. When aggregated to Bain's expenses incurred in these cases ($217,460.00), the total amount of fees and expenses incurred by Bain in these proceedings exceed $1.7 million. Pursuant to the terms of the Retention Order, Bain is seeking compensation and reimbursement of less than half that amount ($800,000.00).

CHI99 4497782-5.054168.0063

attached at Exhibit C itemize the type and amount of expenses incurred during that month by Bain personnel. Set forth below is a description of the services provided by Bain in these cases.

21.     The Retention Order also allows Bain to apply the Retainer against all allowed amounts after this Court's approval of Bain's final application in these cases. Pursuant to this final application, Bain seeks authority to apply the Retainer against all amounts allowed herein. To the extent this Application is deemed by the Court to be an interim application, Bain will continue to hold onto the Retainer pursuant to the terms of the Retention Order and will apply such Retainer against amounts approved by this Court in Bain's final application. Any remaining amount from the Retainer not applied against the approved fees and expenses will be returned to the Debtors at that time.

**B.      Services Provided by Bain**

22.     Bain has worked closely with the Debtors and their advisors to improve the performance of the Debtors and to maximize the return for creditors through its evaluation and work for the Debtors on 1) defining the optimal store, distribution and manufacturing footprint, 2) reducing general and administrative headcount and expenses, and 3) optimizing distribution center inventories. All of the services performed by Bain were necessary for the proper administration of the bankruptcy cases.

23.     The following is an overview of the services provided by Bain to the Debtors during the Compensation Period:

          (a)     Footprint Analysis:

                    (i)     Bain analyzed what stores, distribution centers, and manufacturing facilities the Debtors should retain to optimize go-forward financial performance for the Debtors and their creditors.

- 8 -

(ii)    Bain's store footprint analysis included analysis of market share, competitive dynamics, profitability, operating performance, and potential improvements for each of the Debtors' stores. Bain aggregated its footprint analysis with financial modeling provided by the Debtors' other professionals to provide an integrated set of recommendations to the Debtors' management that identified the go-forward store footprint and associated economics. Bain led weekly meetings with the Debtors' management to review the analysis and agree on the go-forward store footprint.

(iii)    Bain's distribution center analysis focused on identifying the most cost effective set of distribution centers that would provide sufficient distribution capacity for the new store footprint. This work required detailed analysis of distribution center capacities, warehouse costs, and transportation costs. Additionally, Bain performed extensive primary research (e.g., benchmarking, discussions with industry experts) to evaluate the potential economics of distribution outsourcing. Bain compiled its analysis into an integrated set of recommendations that were presented to and approved by the Debtors' management.

(iv)    Bain's manufacturing facility analysis included calculating pro-forma profits and losses for each of Winn-Dixie's manufacturing facilities given the new store footprint. The pro-forma profits and losses were compared against alternative souring options to identify the optimal go-forward manufacturing footprint. Bain led weekly meetings with the Debtors' management to review the analysis and agree on the go-forward manufacturing footprint.

(b)    General and Administrative (G&A) Cost Optimization:

(i)    Bain worked with the Debtors to redesign the Finance, Marketing, Supply Chain, Human Resources, and Information Technology organizations to reduce G&A costs and create more effective and efficient organizational designs. For each function, Bain gathered external G&A benchmarks, identified the critical activities for the function, eliminated unnecessary activities, redesigned the organizational structure, and calculated the new G&A costs for the function.

(c)    Inventory Management and Merchandising:

(i)    Bain provided the Debtors with analysis and recommendations on optimizing inventory levels, including changing order quantities, order patterns and reorder logic, optimizing order mix, working on procedures to ensure buyer compliance, analyzing category profitability and working on assortment and shelf space planning, and changing policies and procedures for merchants and procurement.

24.    Various Bain team members played key roles in completing work described above, including:

(a)    <u>Vice Presidents (Pratap Mukharji, Richard Allison)</u>: Provided overall direction to the Bain team and formulated and communicated strategies with the Debtors' senior management.

(b)    <u>Manager (Ned Peverley)</u>: Managed the day-to-day work of the Bain team on the ground at the Debtors' place of business, integrating the output of the Bain analysis into recommendations, and presenting the Bain recommendations and implementation strategies to the Debtors' management.

(c)    <u>Consultants (Aaron Miller, David Bell, Felipe Oyanadel, Jim Harris, LeGrand Lewis)</u>: Bain consultants led the G&A redesign of the Debtors' Finance, Marketing, Supply Chain, Human Resources, and Information Technology organizations by working directly with the Debtors' management to define the new organizational structure. In addition, Bain consultants provided oversight of analysis and work executed by associate consultants.

(d)    <u>Associate Consultants (Ian Carlton, Shweta Agarwal, Richard Alton, Colin Hunter)</u>: Bain's associate consultants were the junior-most members of the Bain team and charged with much of the research, review and analysis of the data needed to advise the Debtors. Bain associate consultants gathered data from the client and external sources and executed supporting analysis for footprint, G&A, and inventory work.

25.    The foregoing services provided were necessary to improve the operations and management of the Debtors' businesses and maximize the value of their assets in connection with their strategic, operational and organizational reorganization issues.

## C.    General Provisions

26.    Bain submits that the amounts requested herein for its fees and expenses are fair and reasonable given: (i) the nature of the bankruptcy cases; (ii) the novelty and complexity of the bankruptcy cases; (ii) the time and labor required to represent the Debtors effectively; (iv) the time limitations imposed by the bankruptcy cases; (v) the nature and extent of the services rendered; (vi) Bain's experience, reputation and ability; (vii) the value of Bain's services; and (viii) the cost of comparable services other than in a case under the Bankruptcy Code.

27.    In accordance with 18 U.S.C. §155, and outside of the agreement set forth in the Stipulation, no member of Bain has entered into any agreement, express or implied, with any

other party in interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

28.    In accordance with Bankruptcy Code §504, no agreement or understanding exists between Bain or any member or consultant thereof, on the one hand, and any other person, on the other hand, for division of such compensation as Bain may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by any member or consultant of Bain.

29.    Bain has attached hereto at **Exhibit D** a proposed form of order requesting an allowance of its fees and expenses both paid and outstanding in these cases.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

**WHEREFORE**, Bain respectfully requests (i) approval and payment of compensation for its services and reimbursement of its expenses incurred in these proceedings from the period March 1, 2005 through May 31, 2005 in the aggregate amount of $800,000, and (ii) approval of the following amounts paid pre-petition for the period February 21 through February 28, 2005: $426,473.00 for services rendered and $37,923.71 in expenses incurred.

Dated: July 15, 2005

MARKS GRAY, P.A.

 /s/    **Nicholas V. Pulignano, Jr.**
Nicholas V. Pulignano, Jr.
Florida Bar No.: 0319181
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida 32207
npulignano@marksgray.com
P: (904) 398-0900
F: (904) 399-8440
Attorneys for Bain & Company, Inc.


McDERMOTT WILL & EMERY LLP
Mohsin N. Khambati
Illinois Bar No.: 06272526
227 W. Monroe Street, Suite 5400
Chicago, Illinois 60606
Telephone: 312-984-6888
Cell: 847-890-2474
Facsimile: 312-984-7700
Email: mkhambati@mwe.com
Co-Counsel for Bain & Company, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served on this 15th

day of July, 2005 either by electronic transmission or by United States first class mail

postage prepaid to the parties listed below:

Elena L. Escamilla
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida  32801
Phone: 407-648-6465
Fax: 407-648-6323
Elena.L.Escamilla@usdoj.gov


Kenneth C. Meeker
Assitant U.S. Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida  32801
Phone:  407-648-6301
Fax:  407-648-6323
ken.meeker@usdoj.gov

Winn-Dixie Stores, Inc.
Attn: Laurence B. Appel
5050 Edgewood Court
Jacksonville, FL 32254-3699
Phone: 904-783-5000
Fax: 904-783-5059
LarryAppel@winn-dixie.com

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: D. J. Baker
Four Times Square
New York, New York 10036
Phone: 212-735-2150
Fax: 917-777-2150
djbaker@skadden.com

- 13 -

Otterbourg, Steindler, Houston & Rosen, P.C.
Attn: Jonathan N. Helfat
230 Park Avenue, 29th Floor
New York, NY  10169
Phone: 212-661-9100
Fax: 212-682-6104
Jhelfat@oshr.com

Milbank, Tweed, Hadley & McCloy LLP
Attn: Matthew Barr
1 Chase Manhattan Plaza
New York, NY 10005
Phone: 212-530-5000
Fax: 212-530-5219
Mbarr@milbank.com

King & Spalding LLP
Attn: Sarah Robinson Borders
191 Peachtree Street
Atlanta, GA 30303
Phone: 404-572-4600
Fax: 404-572-5149
sborders@kslaw.com

Smith Hulsey & Busey
Cynthia C. Jackson
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)

MARKS GRAY, P.A.

 /s/    **Nicholas V. Pulignano, Jr.**
Nicholas V. Pulignano, Jr.
Florida Bar No.: 0319181
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida  32207
npulignano@marksgray.com
P: (904) 398-0900
F: (904) 399-8440
Attorneys for Bain & Company, Inc.

CHI99 4497782-5.054168.0063

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER AUTHORIZING DEBTORS TO RETAIN**
**BAIN & COMPANY, INC. TO PROVIDE FINANCE GROUP SUPPORT SERVICES**

These cases came before the Court for hearing on May 19, 2005, upon the application of

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned jointly-

administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry

of an order authorizing the Debtors to retain Bain & Company, Inc. ("Bain") to provide finance

group support services to the Debtors (the "Application").[1]    The Court has reviewed the

Application and the supporting Declaration of Pratap C. Mukharji and Disclosure of

Compensation (the "Mukharji Declaration") and has considered ~~the evidence and heard the~~ the representations

~~argument~~ of counsel. The Court has also reviewed the objection to the Application filed by the

United States Trustee and has been advised of the negotiations and agreement by and between

the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and Bain, the

terms of which have been read into the record and will be subject to subsequent approval by the

Court (the "Stipulation and Agreed Order"). After due deliberation and finding proper notice has

been given, the Court determines that good cause exists to grant the relief requested in the

Application as provided in this Order and that granting such relief is in the best interest of these

estates and creditors. Accordingly, it is

---

[1]    All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Application.

EXHIBIT A

ORDERED AND ADJUDGED THAT:

1.    The Application is granted as set forth in this Order.

2.    Subject to paragraph 3 below, the Debtors are authorized to retain Bain, nunc pro tunc to the Petition Date, to provide finance group support services on the terms set forth in the Application, the Mukharji Declaration, and the letter agreement between the Debtors and Bain dated February 18, 2005 and attached to the Application as Exhibit A.

3.    The terms of Bain's retention under the Application are hereby modified such that Bain shall seek reduced payment of fees and expenses incurred in the period from March through May 2005 in the aggregate amount of $800,000 (the "Allowed Reduction"); provided, however, the Allowed Reduction shall include Bain's fees and expenses through reasonable conclusion of its present work in the event such work continues past May 31, 2005.  At any time after entry of the Order approving the Stipulation and Agreed Order, Bain may file a final fee application seeking approval and immediate and full payment of the Allowed Reduction and amounts already paid to Bain for the post-petition portion of February 2005 services.  *Provided, however,* Bain's agreement to seek payment of reduced fees and expenses in the amount of the Allowed Reduction shall be expressly contingent upon this Court's approval of the Stipulation and Agreed Order, which shall be entered into and supported by each of the Debtors, the Committee and Bain.  To the extent the Stipulation and Agreed Order is not approved by this Court, the rights of the Committee and the United States Trustee to object to Bain's retention, which retention pursuant to paragraph 2 is conditioned upon this Court's approval of the Stipulation and Agreed Order, and to any request by Bain for fees and expenses, is expressly preserved and will be scheduled for hearing at the next scheduled omnibus hearing date; and further Bain reserves the

2

EXHIBIT A

right to seek the full allowance and payment of all of its fees and expenses as provided in the Application.

4.    The Stipulation and Agreed Order shall be presented for approval by the Court upon motion with adequate notice to necessary parties in interest.

5.    If any supplemental declarations are filed and served after the entry of this Order, absent any objections filed within twenty (20) days after the filing and service of such supplemental declarations, Bain's employment shall continue as authorized pursuant to this Order.

6.    Bain shall be compensated, as provided in this Order, upon appropriate application in accordance with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, and orders of this Court.

7.    Notwithstanding the previous paragraph, and as set forth in the Application, Bain shall not be required to maintain detailed time records but shall submit fee applications containing a brief description of the services rendered during the applicable time period and shall attach: (a) an invoice containing, in summary format, the name of each professional, and the aggregate amount of time spent during the applicable period by each such individual in rendering services on behalf of the Debtors; provided, however, that Bain shall not be required to provide in any fee invoice any time entries; and (b) an invoice itemizing the type and amount of expenses incurred during that month.

8.    Bain is authorized to hold the $500,000 retainer it received from the Debtors prepetition for application to the allowed amount after this Court's approval of Bain's final application in these cases; provided, however, that Bain shall hold the remaining retainer as funds clearly designated for the account of the Debtors; and provided, further, however, that to

3

EXHIBIT A

the extent the prepetition retainer is insufficient to satisfy all pre-petition fees, charges, costs, or expenses, Bain shall waive any unpaid pre-petition fees, charges, costs, or expenses.

9.      All requests by Bain for payment of indemnity under the letter agreement attached to the Application as Exhibit A shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the letter agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought. _**Provided, however**_, in no event shall Bain be indemnified in the case of its own willful misconduct, gross negligence, bad faith or self-dealing. In the event Bain seeks reimbursement for attorneys' fees from the Debtors pursuant to the indemnity in the letter agreement, the invoices and supporting time records from such attorneys shall be included in Bain's own applications (both interim and final), and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under any provision of the Bankruptcy Code and with regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

10.      To the extent this Order is inconsistent with the letter agreement attached to the Application as Exhibit A, this Order shall govern.

4

EXHIBIT A

11.    The Court shall retain jurisdiction to hear and determine all matters arising from

the implementation of this Order.

Dated May _04_, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.

999874.03-New York Server 7A - MSW

EXHIBIT A

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

ORDER APPROVING SETTLEMENT
WITH BAIN & COMPANY, INC. PURSUANT TO TERMS OF STIPULATION

These cases came before the Court for hearing on June 16, 2005, upon the motion

of Winn-Dixie Stores, Inc. and certain of its subsidiaries, debtors and debtors-in-possession in

the above-captioned cases (collectively, the "Debtors"), for entry of an order approving a

settlement negotiated by and between Bain & Company, Inc. ("Bain") and the Official

Committee of Unsecured Creditors (the "Committee"), and agreed to by the Debtors, in

accordance with the terms of the Stipulation attached as Exhibit A (the "Motion"). The Court

has reviewed the Motion and considered the representations of counsel. Based upon the

representations of counsel and without objection by the United States Trustee or any other

interested parties, and after due deliberation and finding proper notice has been given, the Court

determines that good cause exists to grant the relief and that granting the relief is in the best

interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.    The Motion is granted.

2.    The settlement described in the Stipulation is approved.

3.    The Debtors are authorized to take any and all actions that may be

required to implement the settlement described in the Stipulation.



4.    The Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

Dated _June 16_, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

EXHIBIT B

# EXHIBIT C

-

**Bain & Company, Inc.**
**Case Hours Detail Feb 1-28, 2005**

| Person | Level | # of hours | Cost/Hr | Total Fee | Description (post-filing: 2/21-2/28) |
|--------|-------|-----------:|--------:|----------:|-------------------------------------|
| Pratap Mukharji | Director | 96 | 1,250 | 120,000 | Overall project management |
| Jorge Leis | Director | 80 | 1,250 | 100,000 | Overall project management |
| Ritch Allison | Vice President | 100 | 1,000 | 100,000 | Overall project management |
| Ned Peverley | Manager | 150 | 781 | 117,150 | Overall project management |
| Bill Wade | Manager | 140 | 781 | 109,340 | Inventory optimization |
| Jim Harris | Consultant | 220 | 563 | 123,860 | Inventory optimization |
| Aaron Miller | Consultant | 310 | 563 | 174,530 | Footprint analysis |
| David Bell | Consultant | 180 | 375 | 67,313 | Footprint analysis |
| Tahir Faruqui | Consultant | 174 | 375 | 65,250 | Footprint analysis |
| Kristy Huffman | Consultant | 196 | 375 | 73,500 | Inventory optimization |
| LeGrand Lewis | Consultant | 240 | 375 | 90,000 | Inventory optimization |
| Felipe Oyanedel | Consultant | 222 | 375 | 83,250 | Footprint analysis |
| Ian Carlton | Associate Consultant | 176 | 344 | 60,544 | Footprint analysis |
| AT Gimbel | Associate Consultant | 92 | 344 | 31,648 | N/A - not on team after 2/21 |
| Rich Alton | Associate Consultant | 240 | 219 | 52,560 | Footprint analysis |
| Bryan Grulke | Associate Consultant | 213 | 219 | 46,647 | Footprint analysis |
| Shweta Agarwal | Associate Consultant | 224 | 156 | 34,944 | Inventory optimization |
| Colin Hunter | Associate Consultant | 270 | 156 | 42,120 | Footprint analysis |

|  |  |
|--|--|
| Total Fees | 1,492,656 |
| *Total Post-Filing Fees* | *426,473* |
| Agreed Cap | 1,000,000 |
| Total Request | 1,000,000 |



**Bain & Company, Inc.**
**Expense Request Feb 1-28, 2005**

**Expenses**

| Person | Level | Airfare | Hotel | Taxi/Car | Meals | Other* | Total |
|---|---|---|---|---|---|---|---|
| Pratap Mukharji | Director | 1,950.00 | 455.00 | 601.00 | 156.00 | 94.00 | 3,256.00 |
| Jorge Leis | Director | 1,530.00 | 319.00 | 216.00 | 169.00 | 182.00 | 2,416.00 |
| Ritch Allison | VP | 3,721.00 | 502.00 | 1,318.00 | 207.00 | 519.00 | 6,267.00 |
| Ned Peverley | Manager | 1,266.00 | 492.00 | 296.00 | 478.00 | 166.00 | 2,698.00 |
| Bill Wade | Manager | - | 246.00 | 701.00 | 81.00 | 132.00 | 1,160.00 |
| David Bell | Consultant | 846.00 | 984.00 | 296.00 | 234.00 | 210.00 | 2,570.00 |
| Tahir Faruqui | Consultant | 3,500.00 | 1,876.00 | 1,423.00 | 446.00 | 20.00 | 7,265.00 |
| Jim Harris | Consultant | 3,516.00 | 1,068.00 | 1,100.00 | 118.00 | 287.00 | 6,089.00 |
| Kristy Huffman | Consultant | - | - | - | - | - | - |
| LeGrand Lewis | Consultant | 4,481.00 | 1,591.00 | 1,296.00 | 358.00 | 23.00 | 7,749.00 |
| Aaron Miller | Consultant | 2,120.00 | 2,041.00 | 596.00 | 593.00 | 133.00 | 5,483.00 |
| Felipe Oyanedel | Consultant | 872.00 | 370.00 | 491.00 | 132.00 | 121.00 | 1,986.00 |
| Shweta Agarwal | Associate Consultant | 2,347.00 | 987.00 | 870.00 | 754.00 | 216.00 | 5,174.00 |
| Rich Alton | Associate Consultant | 4,313.00 | 873.00 | 998.00 | 285.00 | - | 6,469.00 |
| Ian Carlton | Associate Consultant | 1,086.00 | 369.00 | 360.00 | 274.00 | 54.00 | 2,143.00 |
| AT Gimbel | Associate Consultant | 428.00 | 246.00 | 224.00 | 546.00 | 91.00 | 1,535.00 |
| Bryan Grulke | Associate Consultant | 3,562.00 | 1,231.00 | 1,213.00 | 795.00 | 257.00 | 7,058.00 |
| Colin Hunter | Associate Consultant | 1,537.00 | 1,848.00 | 1,434.00 | 783.00 | 264.00 | 5,866.00 |
| | Travel Agency Tickets and Fees | 3,066.00 | - | - | - | 1,221.00 | 4,287.00 |
| | **Total Expenses** | **40,141.00** | **15,498.00** | **13,433.00** | **6,409.00** | **3,990.00** | **79,471.00** |

| External Vendors | Amount |
|---|---|
| Aircar | 264.00 |
| Central Parking | 16.00 |
| Federal Express | 8.00 |
| IT Market Research | 1,625.00 |
| Retail Market Research | 144.00 |
| **Total External Vendors** | **2,057.00** |

**Internal Services**

| | |
|---|---|
| Graphics, Postage, Supplies and Typing | **9,555.00** |
| Research & Library | **8,327.00** |
| Computing & Telecom | **33,323.00** |

| **Total Expenses** | **132,733.00** |
|---|---|

| *Total Post-Filing Expenses* | **37,923.71** |
|---|---|

* Other expenses include parking, mileage, communication (Phone, fax, internet), postage, freight, market research


EXHIBIT C

**Bain & Company, Inc.**
**Case Hours Detail March 1-31, 2005**

| Person | Level | # of hours | Cost/Hr | Total Fee | Description |
|---|---|---|---|---|---|
| Pratap Mukharji | Director | 60 | 1,250 | 75,000 | Overall project management |
| Ritch Allison | Vice President | 110 | 1,000 | 110,000 | Overall project management |
| Ned Peverley | Manager | 212 | 781 | 165,572 | Overall project management |
| Jim Harris | Consultant | 45 | 563 | 25,335 | Inventory optimization |
| Aaron Miller | Consultant | 174 | 563 | 97,962 | G&A reduction/Footprint analysis |
| David Bell | Consultant | 183 | 375 | 68,438 | G&A reduction |
| LeGrand Lewis | Consultant | 65 | 375 | 24,375 | Inventory optimization |
| Felipe Oyanedel | Consultant | 225 | 375 | 84,375 | G&A reduction |
| Ian Carlton | Associate Consultant | 251 | 344 | 86,344 | G&A reduction/Footprint analysis |
| Rich Alton | Associate Consultant | 210 | 219 | 45,990 | G&A reduction |
| Bryan Grulke | Associate Consultant | 30 | 219 | 6,570 | G&A reduction |
| Shweta Agarwal | Associate Consultant | 214 | 156 | 33,384 | G&A reduction/Footprint analysis |
| Colin Hunter | Associate Consultant | 45 | 156 | 7,020 | G&A reduction |

|  |  |
|---|---|
| Total Fees | 830,365 |
| Agreed Cap | 500,000 |
| Total Request | 500,000 |



**Bain & Company, Inc.**
**Expense Request March 1-31, 2005**

**Expenses**

| Person | Level | Airfare | Hotel | Taxi/Car | Meals | Other* | Total |
|---|---|---|---|---|---|---|---|
| Pratap Mukharji | Director | 1,454.00 | 246.00 | 218.00 | 44.00 | 124.00 | 2,086.00 |
| Jorge Leis | Director | 1,047.00 | - | 71.00 | 16.00 | - | 1,134.00 |
| Ritch Allison | VP | 2,182.00 | 655.00 | 651.00 | 299.00 | 473.00 | 4,260.00 |
| Ned Peverley | Manager | 2,832.00 | 1,726.00 | 1,343.00 | 713.00 | 237.00 | 6,851.00 |
| David Bell | Consultant | 2,422.00 | 862.00 | 890.00 | 235.00 | 219.00 | 4,628.00 |
| Jim Harris | Consultant | 879.00 | 270.00 | 183.00 | 41.00 | 73.00 | 1,446.00 |
| LeGrand Lewis | Consultant | - | 556.00 | 217.00 | 90.00 | 15.00 | 878.00 |
| Aaron Miller | Consultant | 6,658.00 | 3,732.00 | 3,447.00 | 1,722.00 | 642.00 | 16,201.00 |
| Felipe Oyanedel | Consultant | 2,127.00 | 738.00 | 423.00 | 233.00 | 24.00 | 3,545.00 |
| Shweta Agarwal | Associate Consultant | 2,026.00 | 1,602.00 | 456.00 | 1,106.00 | 257.00 | 5,447.00 |
| Rich Alton | Associate Consultant | 4,653.00 | 933.00 | 1,228.00 | 373.00 | 16.00 | 7,203.00 |
| Ian Carlton | Associate Consultant | 2,233.00 | 861.00 | 993.00 | 687.00 | 256.00 | 5,030.00 |
| Bryan Grulke | Associate Consultant | 554.00 | 123.00 | 100.00 | 129.00 | 50.00 | 956.00 |
| Colin Hunter | Associate Consultant | - | 246.00 | 260.00 | 83.00 | 10.00 | 599.00 |
| | Travel Agency Tickets and Fee | 3,356.00 | - | - | - | 2,735.00 | 6,091.00 |
| | **Total Expenses** | **29,067.00** | **12,550.00** | **10,480.00** | **5,771.00** | **2,396.00** | **66,355.00** |

| External Vendors | Amount |
|---|---|
| Aircar | 406.00 |
| American Express | 14.00 |
| Bostoncoach | 260.00 |
| Federal Express | 10.00 |
| Harvard Business School | 23.00 |
| McDermott, Will & Emery | 1,879.00 |
| Retail Market Research | 117.00 |
| **Total External Vendors** | **2,709.00** |

**Internal Services**

| | Amount |
|---|---|
| Graphics, Postage, Supplies and Typing | 6,114.00 |
| Research & Library | 4,595.00 |
| Computing & Telecom | 17,159.00 |
| **Total Expenses** | **96,932.00** |

* Other expenses include parking, mileage, communication (Phone, fax, internet), postage, freight, market research


EXHIBIT C

**Bain & Company, Inc.**
**Case Hours Detail April 1-30, 2005**

| Person | Level | # of hours | Cost/Hr | Total Fee | Description |
|---|---|---|---|---|---|
| Pratap Mukharji | Director | 60 | 1,250 | 75,000 | Overall project management |
| Ritch Allison | Vice President | 110 | 1,000 | 110,000 | Overall project management |
| Ned Peverley | Manager | 240 | 781 | 187,440 | Overall project management |
| Aaron Miller | Consultant | 240 | 563 | 135,120 | G&A reduction/Footprint analysis |
| David Bell | Consultant | 269 | 375 | 100,688 | G&A reduction |
| Felipe Oyanedel | Consultant | 282 | 375 | 105,750 | G&A reduction |
| Ian Carlton | Associate Consultant | 223 | 344 | 76,712 | G&A reduction/Footprint analysis |
| Rich Alton | Associate Consultant | 40 | 219 | 8,760 | G&A reduction |
| Shweta Agarwal | Associate Consultant | 236 | 156 | 36,816 | G&A reduction/Footprint analysis |

|  |  |
|---|---|
| Total Fees | 836,286 |
| Agreed Cap | 500,000 |
| Total Request | 500,000 |



**Bain & Company, Inc.**
**Expense Request April 1-30, 2005**

Expenses

| Person | Level | Airfare | Hotel | Taxi/Car | Meals | Other* | Total |
|---|---|---|---|---|---|---|---|
| Pratap Mukharji | Director | 892.00 | 124.00 | 146.00 | 8.00 | 113.00 | 1,283.00 |
| Ritch Allison | VP | 2,232.00 | 655.00 | 365.00 | 468.00 | 430.00 | 4,150.00 |
| Ned Peverley | Manager | 1,932.00 | 984.00 | 484.00 | 483.00 | 538.00 | 4,421.00 |
| David Bell | Consultant | 2,077.00 | 1,747.00 | 614.00 | 529.00 | 418.00 | 5,385.00 |
| LeGrand Lewis | Consultant | 439.00 | - | - | - | - | 439.00 |
| Aaron Miller | Consultant | 2,280.00 | 1,603.00 | 847.00 | 459.00 | 72.00 | 5,261.00 |
| Felipe Oyanedel | Consultant | 2,575.00 | 1,355.00 | 1,150.00 | 339.00 | 74.00 | 5,493.00 |
| Shweta Agarwal | Associate Consultant | 1,698.00 | 991.00 | 357.00 | 586.00 | 497.00 | 4,129.00 |
| Rich Alton | Associate Consultant | 326.00 | - | - | 18.00 | - | 344.00 |
| Ian Carlton | Associate Consultant | 2,263.00 | 980.00 | 363.00 | 533.00 | 152.00 | 4,291.00 |
| | Travel Agency Tickets & Fees | 331.00 | - | - | - | - | 331.00 |
| | **Total Expenses** | **17,045.00** | **8,439.00** | **4,326.00** | **3,423.00** | **2,294.00** | **35,527.00** |

| External Vendors | Amount |
|---|---|
| American Express CPC | 6.00 |
| Bostoncoach | 110.00 |
| Federal Express | 8.00 |
| Retail Market Research | 45.00 |
| **Total External Vendors** | **169.00** |

**Internal Services**

| Graphics, Postage, Supplies and Typing | 3,138.00 |
|---|---|
| Research & Library | 3,567.00 |
| Computing & Telecom | 13,698.00 |

| **Total Expenses** | **56,099.00** |
|---|---|

* Other expenses include parking, mileage, communication (Phone, fax, internet), postage, freight, market research



**Bain & Company, Inc.**
**Case Hours Detail May 1-31, 2005**

| Person | Level | # of hours | Cost/Hr | Total Fee | Description |
|--------|-------|-----------|---------|-----------|-------------|
| Pratap Mukharji | Director | 26 | 1,250 | 32,500 | Overall project management |
| Ritch Allison | Vice President | 120 | 1,000 | 120,000 | Overall project management |
| Ned Peverley | Manager | 235 | 781 | 183,535 | Overall project management |
| Aaron Miller | Consultant | 230 | 563 | 129,490 | G&A reduction/Footprint analysis |
| David Bell | Consultant | 246 | 375 | 92,250 | G&A reduction |
| Felipe Oyanedel | Consultant | 256 | 375 | 96,000 | G&A reduction |
| Ian Carlton | Associate Consultant | 210 | 344 | 72,240 | G&A reduction/Footprint analysis |
| Shweta Agarwal | Associate Consultant | 228 | 156 | 35,568 | G&A reduction/Footprint analysis |

|  | Total Fees | 761,583 |
|---|---|---|
|  | Agreed Cap | 500,000 |
|  | Total Request | 500,000 |

EXHIBIT C

**Bain & Company, Inc.**
**Expense Request May 1-31, 2005**

### Expenses

| Person | Level | Airfare | Hotel | Taxi/Car | Meals | Other* | Total |
|--------|-------|---------|-------|----------|-------|--------|-------|
| Pratap Mukharji | Director | - | 159.00 | 89.00 | 8.00 | 49.00 | 305.00 |
| Ritch Allison | VP | 2,234.00 | 492.00 | 489.00 | 623.00 | 246.00 | 4,084.00 |
| Ned Pevereley | Manager | 1,952.00 | 1,479.00 | 796.00 | 383.00 | 360.00 | 4,970.00 |
| David Bell | Consultant | 2,097.00 | 1,603.00 | 185.00 | 480.00 | 301.00 | 4,666.00 |
| Aaron Miller | Consultant | 1,466.00 | 480.00 | 791.00 | 168.00 | 22.00 | 2,927.00 |
| Felipe Oyanedel | Consultant | 1,609.00 | 1,235.00 | 826.00 | 587.00 | 52.00 | 4,309.00 |
| Shweta Agarwal | Associate Consultant | 2,661.00 | 1,369.00 | 112.00 | 704.00 | 1,060.00 | 5,906.00 |
| Richard Alton | Associate Consultant | - | - | 47.00 | - | - | 47.00 |
| Ian Carlton | Associate Consultant | 2,121.00 | 1,279.00 | 772.00 | 676.00 | 227.00 | 5,075.00 |
| | Travel Agency Tickets and Fees | 2,651.00 | - | - | - | - | 2,651.00 |
| | **Total Expenses** | **14,140.00** | **8,096.00** | **4,107.00** | **3,629.00** | **2,317.00** | **34,940.00** |

| External Vendors | Amount |
|------------------|--------|
| Euromonitor International | 113.00 |
| McDermott, Will & Emery | 12,859.00 |
| Retail Market Research | 45.00 |
| **Total External Vendors** | **13,017.00** |

| Internal Services | |
|-------------------|--|
| Graphics, Postage, Supplies and Typing | 2,742.00 |
| Research & Library | 32.00 |
| Computing & Telecom | 13,698.00 |

| **Total Expenses** | **64,429.00** |
|--------------------|---------------|

\* Other expenses include parking, mileage, communication (Phone, fax, internet), postage, freight, market research



# EXHIBIT D

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:                                          )    Case No. 05-03817-3F1

WINN-DIXIE STORES, INC., et al.,                )    *Chapter 11*

Debtors.                                        )    Jointly Administered
                                                )

### ORDER APPROVING FINAL APPLICATION OF BAIN & COMPANY, INC. FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR FEES IN THE AMOUNT OF $426,473.00 AND REIMBURSEMENT OF EXPENSES IN THE AMOUNT OF $37,923.71 FOR THE PERIOD FEBRUARY 21, 2005 THROUGH FEBRUARY 28, 2005 AND $800,000.00 IN FEES AND EXPENSES FOR THE PERIOD MARCH 1, 2005 THROUGH MAY 31, 2005

These cases came before the Court on the application dated July 15, 2005 (the "**Application**") of Bain & Company, Inc. ("**Bain**") for an order under 11 U.S.C. §§ 330 and 331 (i) allowing compensation for professional services rendered and expenses incurred on behalf of the Debtors in the period March 1, 2005 through May 31, 2005 in the aggregate amount of $800,000.00, and authorizing immediate payment of the same, and (ii) allowing $426,473.00 in fees and $37,923.71 in expenses incurred in the period February 21, 2005 through February 28, 2005 (collectively, the February fees and expenses shall hereinafter be referred to as the "**February Amounts**") and paid by the Debtors to Bain in the ordinary course. The period from February 21, 2005 through May 31, 2005 shall hereinafter be referred to as the "**Compensation Period.**" A hearing on the Application was held on August 4, 2005. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, has read the Application, considered the representations of counsel and has determined that notice of the Application is good and sufficient under the circumstances and that no other or further notice need be given.

Accordingly, it is ORDERED:

1.      The Application is granted.

2.      The fees earned and the expenses incurred by Bain during the Compensation Period, including the February Amounts paid to Bain by the Debtors in the ordinary course of business, as set forth in the Application, are hereby approved and allowed.

3.      Upon entry of this Order, Bain is hereby authorized to apply any retainer from the Debtors that it has in its possession and control toward paying down amounts due and outstanding for the period March 1, 2005 through May 31, 2005.

4.      The Debtors are authorized and directed to pay to Bain (to the extent not previously paid), immediately upon entry of this Order, the sum of $800,000.00, representing the aggregate fees and expenses earned and incurred by Bain in the period March 1, 2005 through May 31, 2005, less any amounts on retainer applied by Bain toward its aggregate fees and expenses for the period March 1, 2005 through May 31, 2005.

5.      Dated this _____ day of _____ 2005 in Jacksonville, Florida



                                        _____
                                        Jerry A. Funk
                                        United States Bankruptcy Judge


Nicholas V. Pulignano, Jr. is directed to serve
a copy of this Order on all parties who
received copies of the Application.