**Hearing Date: August 4, 2005, 1:00 p.m.**
**Objection Deadline: July 28, 2005, 4:00 p.m.**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| Debtors.[1] | ) Jointly Administered |

## MOTION FOR AN ORDER AUTHORIZING THE DEBTORS
## TO RENEW CERTAIN INSURANCE PROGRAMS AND
## ASSUME WORKERS' COMPENSATION PROGRAM

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as

debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry

of an order pursuant to sections 105, 363, 364 and 365 of Title 11 of the United States

Code (as amended, the "Bankruptcy Code") authorizing the Debtors to renew certain

insurance programs and related agreements with ACE American Insurance Company

("ACE") that commenced on July 1, 2004 and to assume the Workers' Compensation

Program (as defined below) (the "Motion"). In support of the Motion, the Debtors

respectfully state as follows:

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

## BACKGROUND

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Court").  By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States with nearly 79,000 employees.  Substantially all of the Debtors' store locations are leased rather than owned.

4.     The Debtors' exclusive periods to propose a plan and solicit acceptances on a plan have been extended to September 19, 2005 and November 21, 2005, respectively.

5.     This Court has jurisdiction over the Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## RELIEF REQUESTED

6.     By this Motion, the Debtors request that the Court enter an order authorizing the Debtors (a) to renew insurance programs and related agreements with ACE (described below) and (b) to assume the Workers' Compensation Insurance Program with ACE (as defined below).

## BASIS FOR RELIEF

7.     On February 22, 2005, the Debtors filed their Motion for Authority to Continue Pre-Petition Insurance and Workers' Compensation Programs and to Pay Pre-Petition Premiums, Related Obligations and Premium Financing Payments (the "Insurance Motion").  On February 23, 2005, an interim order was entered approving the Insurance Motion and granting the Debtors the authority to maintain their insurance programs and to pay obligations necessary to maintain them.  The order further authorized the Debtors to continue making insurance premium and premium financing payments and pay prepetition obligations relating to their workers' compensation programs.  On March 15, 2005, a final order (the "Final Insurance Order") was entered approving the Insurance Motion on a final basis.  The Debtors seek through this Motion

to maintain pre-existing insurance programs with ACE which is expressly provided for by

the Final Insurance Order.  In addition, the Debtors seek to assume an insurance program

not previously requested by the Debtors in the Insurance Motion.

        8.     In connection with the operation of their business, the Debtors

maintain various insurance policies and programs through several different insurance

carriers, such as ACE, and through self-insurance.  The Debtors' insurance programs are

extensive.  In addition to their self-insurance costs, the Debtors spend approximately $27

million annually on insurance premiums.[2]

        9.     ACE provides the Debtors with a casualty insurance program for

workers' compensation pursuant to certain policies and program agreements (the

"Workers' Compensation Program"), general liability (the "General Liability Program"),

and automobile liability (the "Auto Liability Program" and together with the Workers'

Compensation Program and General Liability Program the "Insurance Programs").

        10.    The Debtors have maintained both primary and first layer excess

coverage packaged with one insurer and maintain large deductible and self-retention

programs.  The primary package with ACE includes $3.5 million of coverage including

the first layer of excess insurance risk transfer above retentions and deductibles.  The

Debtors also have $300 million additional excess coverage above the primary package.

This Motion seeks to continue the primary casualty Insurance Programs with ACE

---

[2]      On May 19, 2005, this Court authorized the Debtors to finance their insurance premiums through
AFCO Premium Credit LLC.

(detailed below), relief that the Debtors believe is already authorized by the Final Insurance Order and to assume the Workers' Compensation Program.

11.    Workers Compensation Program. The Debtors are required by state law to maintain workers' compensation policies and programs to provide their employees with coverage for claims arising from or related to their employment with the Debtors. Under the Workers' Compensation Program, the Debtors maintain workers' compensation in each of the states in which they operate to cover their statutory obligations and also employers' liability policies.

12.    The Debtors self-insure for workers' compensation coverage in the states of Alabama, Louisiana, Georgia, South Carolina, Mississippi and North Carolina. The Debtors maintain through ACE excess coverage above their self-insured retention limit of $1.5 million per accident or per employee. For the states noted above, the policy limit for the excess coverage is according to statutory limits of each state above the $1.5 million self-insured retention limit.

13.    The Debtors also have a deductible workers' compensation program in the states of Florida, Indiana, Kentucky, Tennessee and Virginia. The Debtors have maintained a deductible program in Florida since 1998. In January 2005, the Debtors transferred the other four states to the deductible program, due to insufficient payroll in those states to maintain self-insurance. Under the Workers' Compensation Program, the deductible is $1.5 million per accident for bodily injury and per person for injury by disease and the policy limit is according to statutory limits above the $1.5

million deductible.  The annual premiums for the 2004 Workers' Compensation Program are approximately $2,158,438.

14.    General Liability Program.  Under the General Liability Program, ACE provides the Debtors with excess commercial general liability coverage.  The coverage is in excess of amounts that the Debtors retain in states where they are self-insured.  The self-insured retention amounts are approximately $2 million.  The policy limit is $1.5 million per occurrence subject to an aggregate of $5 million.  The annual premiums for the 2004 General Liability Program are approximately $1,418,540.

15.    Auto Liability Program.  Under the Auto Liability Program, ACE provides the Debtors with excess automobile liability coverage.  The coverage is in excess of amounts that the Debtors retain in states where they are self-insured.  The self-insured retention is $2 million.  The auto policy limit is $1.5 million per occurrence.  The annual premiums for the 2004 Auto Liability Program are approximately $520,332.

16.    Under the Insurance Programs, the Debtors posted $23.5 million in letters of credit to maintain the Insurance Programs.

17.    The Insurance Programs are renewable.  Pursuant to the terms of a proposal by ACE dated June 28, 2005 (the "Proposal") for the maintenance of the Insurance Programs, the Debtors and ACE agreed to renew the Insurance Programs.  ACE's Proposal requires the Debtors to post $65 million in letters of credit (an increase of $41,500,000) and contains the following premium modifications: (a)  Workers' Compensation Program:  $1,946,028 (a decrease of $212,410); (b)  General Liability

Program:  $1,032,461 (a decrease of $386,079); and  (c)  Auto Liability:  $373,855 (a

decrease of $146,477).

18.    Other than the above modifications, the terms of the Insurance

Programs are virtually the same from last year -- and the Insurance Programs actually cost

the Debtors less money this year than last year.

19.    Total Cost. The total cost of the Insurance Programs (including

premiums and expenses) is $4,602,814,[3] representing an almost 10% reduction from last

year.

20.    ACE has conditioned maintenance of the Insurance Programs upon

entry of a Bankruptcy Court order that:

(a)  authorizes the Debtors to assume the prepetition Workers'
Compensation Program;

(b)  provides that ACE's claims with respect to the Debtors' obligations
under the Workers' Compensation Program are entitled to administrative expense
priority under Bankruptcy Code section 503(b)(1)(A);

(c)  authorizes the Debtors to pay obligations under the Insurance
Programs and provide additional security to the extent required and to enter into
further renewals in the ordinary course of business, without further order of this
Court; and

(d)  authorizes ACE to adjust, settle and pay insured claims, without
further order of this Court.

21.    The Proposal also provides that the failure to obtain Bankruptcy

Court approval by August 4, 2005 is grounds for cancellation of the insurance policies.

---

[3]      This figure includes the insurance coverage discussed above, plus expenses in the amount of
$1,250,470.

22.     The continuation of the Insurance Programs and the assumption of

the Workers' Compensation Program are necessary for the success of these cases and are

in the best interests of the Debtors' estates and their creditors.  The Debtors, together with

their insurance broker Marsh USA, Inc., have researched the insurance markets and

available programs and have been unable to locate another insurer willing and able to

provide insurance coverage on the same or better terms as ACE.

### APPLICABLE AUTHORITY

**The Debtors Should be Authorized to Renew the Insurance Programs**

23.     Section 363(c)(1) of the Bankruptcy Code provides that a debtor-

in-possession may enter into a transaction "in the ordinary course of business, without

notice or a hearing, and may use property of the estate in the ordinary course of business

without notice or a hearing."  11 U.S.C. § 363(c)(1).

24.     Bankruptcy Code section 363(b)(1) provides that a debtor-in-

possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary

course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy Code

section 1107(a) gives the Debtors, as debtors-in-possession, the same authority as a

trustee to use, sell or lease property under section 363(b)(1).  See 11 U.S.C. § 1107(a).

25.     Although Bankruptcy Code section 363 does not set forth a

standard for determining when it is appropriate for a court to authorize the sale or

disposition of a debtor's assets, in applying this section, courts have required that it be

based upon the sound business purpose of the debtor.  See In re B.D.K. Health Mgmt.,

Inc. ("B.D.K. Health Mgmt."), Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5

(Bankr. M.D. Fla. November 16, 1998) (approving sale where sale serves a sound business purpose); see also Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented before him a good business reason to grant such application).

26.     Here, there is strong business justification for the maintenance of the Insurance Programs.[4]  The necessity of insurance for the Debtors is without question. Indeed, without certain forms of insurance, namely worker's compensation insurance, the Debtors are not legally able to operate.

27.     Moreover, the Insurance Programs are reasonably priced and even represent a reduction in the costs from 2004, approximately 10%.

28.     Further, prior to entering into the Insurance Programs with ACE in 2004, the Debtors considered several other insurers.  No other insurer was able to offer lower cost options for the Debtors.  The Debtors also explored additional insurer options with XL, Discover Re and AIG before agreeing to renew the Insurance Programs.  The Debtors determined, in their business judgment, that ACE's insurance policies and programs remain the lowest cost option for the Debtors and their estates.

29.     Additionally, the security requirement, although an increase from year 2004-2005 of $41.5 million, is considerably less than what the Debtors initially

---

[4]     The Debtors believe that renewals of their insurance programs are ordinary course of business activities within the meaning of Bankruptcy Code section 363(c) and not subject to Court approval. The Debtors, however, seek authority under Bankruptcy Code section 363(b) out of an abundance of caution to the extent that such action is not deemed to be within the ordinary course of the

estimated.  The security is also already provided for in the Debtors' post-petition

financing facility.

   30. The Debtors believe that the Insurance Programs are standard for

an enterprise of the Debtors' size.  Most importantly, however, the Debtors believe that by

continuing their insurance policies with ACE they have adequately insured their business,

thereby protecting the interests of their estates and allowing the Debtors to continue to

operate.  Thus, this Court should authorize the Debtors to renew the Insurance Programs

with ACE.

**The Debtors Should be Authorized to Assume the Workers' Compensation Program**

   31. Bankruptcy Code section 365(a) provides that a debtor-in-

possession, "subject to the court's approval, may assume or reject any executory contract

or unexpired lease of the debtor."[5]  The decision to assume or reject an executory contract

is governed by the business judgment rule.  In re Gardinier, Inc., 831 F.2d 974, 975 n. 2

(11th Cir. 1987).

   32. Here, the "business judgment" standard is satisfied.  The

assumption of the Workers' Compensation Program is an express condition to the

continuation of the Insurance Programs.  The maintenance of the Insurance Programs is

---

Debtors' business or to the extent that entering into the renewals is not authorized by the Final
Insurance Order.

[5] This Motion assumes that the Workers' Compensation Program is an executory contract due not
only to the material open obligations on the program but also due to the benefits the program
produces for the estates.  See In re General Development Corp., 84 F.3d 1364 1375 (11th Cir.
1996) ("the question of whether a contract is executory is determined by the benefits that
assumption or rejection would produce.").

critical for these cases.  The Debtors' failure to assume the Workers' Compensation

Program would entitle ACE to cancel the Insurance Programs.  Cancellation of the

programs would force the Debtors to seek replacement insurance coverage because state

laws mandate coverage, and 28 U.S.C. § 959(b) requires Debtors to comply with valid

state laws.  Replacement insurance will be at a much higher cost for the estates and would

create a risk of a gap in coverage.

33.    Additionally, the assumption of the Workers' Compensation

Program is not likely to cause any additional liability on the Debtors' estates.  First, the

payment of any obligations, including prepetition obligations owing under the program,

has already been authorized by the Final Insurance Order.  The assumption of the

program only further provides for payment of any obligations under the program,

obligations that the Debtors already carefully reviewed before filing the Insurance Motion

and determined to be necessary obligations for the success of these cases.

34.    Second, any amounts not yet paid upon on the Workers'

Compensation Program are projected by the Debtors to be less than the collateral securing

such obligations.  Indeed, the risk exposure relating to prepetition claims under ACE's

worker's compensation deductible program is only approximately $18 million.  The

Debtors have carefully considered their obligations to cure defaults, of which there are

none, and the potential amount of claims that can be asserted under the program.  The

Debtors believe that the costs associated with paying obligations under the Workers'

Compensation Program, including payment of prepetition obligations on a priority basis,

pale in comparison to the necessity of the Insurance Programs, and specifically the maintenance of the Workers Compensation Program.

35.    Moreover, as consideration for the assumption of the Workers' Compensation Program, the Debtors negotiated a lower price for the Insurance Programs as a whole.  Accordingly, the Debtors believe that the decision to assume the program is the product of sound business judgment and should be approved.

**The Debtors Should be Authorized to Obtain Unsecured Credit From ACE in Connection with the Insurance Programs and the Satisfaction of ACE's Administrative Claims for Reimbursement**

36.    Section 364(b) of the Bankruptcy Code provides that: "[t]he court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(b).  Under the Workers' Compensation Program, the Debtors will pay all amounts below the deductible/retention threshold.  Thus, notwithstanding the collateral, prior to the Debtors' reimbursement of these amounts within the deductible, the Debtors are arguably obtaining unsecured credit from ACE.  The Debtors believe that obtaining such credit is a transaction in the ordinary course of business and, therefore, the reimbursement obligations and any other obligations under the Workers' Compensation Program may be considered administrative expense claims.  However, out of an abundance of caution, in the event that obtaining such credit would be deemed to be outside the ordinary course of the Debtors' business, the Debtors are seeking to obtain such credit and to have reimbursement obligations and any other obligations under the Workers' Compensation

-12-

Program treated as administrative expense claims entitled to priority under Bankruptcy

Code section 503(b)(1)(A) to the extent that ACE's exposure is greater than the collateral

securing the Debtors' obligations.[6]

        37.     For the foregoing reasons, the Debtors submit that use of estate

monies outside the ordinary course of business to pay their expense reimbursement

obligations to ACE is in the best interests of their estates and demonstrates the exercise of

sound business judgment.

### NOTICE

        38.     Notice of the Motion has been provided or will be provided to

(a) the U.S. Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel

for the Creditors Committee and (d) other parties named on the Master Service List. The

Debtors believe that such notice is sufficient and that no other or further notice need be

given.

---

[6]     ACE's claims under the Workers' Compensation Program should be deemed administrative
expenses of the estates because such treatment is required under the Proposal and the program is
necessary and essential to preserve the estates and critical for the success of these cases.  See 11
U.S.C. § 503(b)(1)(A) providing that administrative expenses are the actual, necessary costs
incurred to preserve the estates.  Further, the Debtors believe that payment of the obligations under
the program have already been authorized by the Final Insurance Order.

WHEREFORE, based upon the foregoing, the Debtors respectfully request

that the Court enter an order substantially in the form attached to this Motion as

Exhibit A.

Dated: July 15, 2005

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By   /s/ D. J. Baker                   By    /s/ Cynthia C. Jackson
     D. J. Baker                             Stephen D. Busey
     Sally McDonald Henry                    James H. Post
     Rosalie Walker Gray                     Cynthia C. Jackson,
                                             Florida Bar Number 498882
Four Times Square                      225 Water Street, Suite 1800
New York, New York 10036               Jacksonville, Florida  32202
(212) 735-3000                         (904) 359-7700
(212) 735-2000 (facsimile)             (904) 359-7708 (facsimile)
                                       cjackson@smithhulsey.com

Co-Attorneys for Debtors               Co-Attorneys for Debtors

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER AUTHORIZING THE DEBTORS TO RENEW CERTAIN INSURANCE**
**PROGRAMS AND ASSUME WORKERS' COMPENSATION PROGRAM**

These cases came before the Court upon the motion of Winn-Dixie Stores, Inc.

and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession

(collectively, the "Debtors"[1]) for entry of an order pursuant to sections 105, 363, 364 and

365 of Title 11 of the United States Code (as amended, the "Bankruptcy Code")

authorizing the Debtors to renew certain insurance programs and related agreements with

ACE American Insurance Company ("ACE") that commenced on July 1, 2004 and to

assume the Workers' Compensation Program (the "Motion"). The Court has reviewed the

Motion, and heard the representations of counsel. Upon the representations of counsel

and without objection by the United States Trustee or any other interested party, the

Court determines that good cause exists to grant the relief and that granting the relief is in

the best interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.      The Motion is granted.

---

[1]      All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them
in the Motion.

2.      Pursuant to 11 U.S.C. §§ 105 and 363, the Debtors are authorized to renew the Insurance Programs with ACE, to enter into insurance policies and program agreements reasonably necessary or appropriate to implement or maintain the Insurance Programs, and to pay their obligations under the Insurance Programs, including premiums and losses, in the ordinary course of business, without further order of this Court.

3.      The Debtors shall provide additional security to ACE to the extent required under the Insurance Programs and authorized under the Debtors' postpetition financing facility (the "DIP Facility") or authorized by Court order, provided that the terms of the Insurance Programs do not materially adversely change, with respect to the Debtors, and the Debtors first obtain the consent of the Creditors' Committee and the Debtors' postpetition secured lenders (the "DIP Lenders"), which consents shall not be unreasonably withheld.  Nothing stated in this paragraph shall be deemed to impair ACE's rights under the Insurance Programs.

4.      The Debtors are authorized to enter into further renewals of the Insurance Programs in the ordinary course of their business, without further order of this Court, and this Order will govern such renewals, provided that the terms of the Insurance Programs do not materially adversely change, with respect to the Debtors, and the Debtors first obtain the consent of the Creditors' Committee and the DIP Lenders, which consents shall not be unreasonably withheld.

5.      The Debtors are further authorized to renew their other insurance programs referenced in the Insurance Motion in the ordinary course of their business,

without further order of this Court, provided that the Debtors first obtain the consent of the Creditors' Committee and the DIP Lenders, which consents shall not be unreasonably withheld.

6.      Pursuant to 11 U.S.C. §§ 105(a) and 365(a), the Debtors are authorized to assume the Workers' Compensation Program and the Workers' Compensation Program is assumed effective upon entry of this Order. Except as provided for in the next paragraph, the requirements of 11 U.S.C. § 365(b)(1), if any, are satisfied with respect to the Workers' Compensation Program.

7.      ACE's claims with respect to the Debtors' obligations under the Workers' Compensation Program, to the extent not paid or reimbursed by the Debtors, shall be entitled to administrative expense priority under 11 U.S.C. § 503(b)(1)(A).

8.      Pursuant to 11 U.S.C. § 364, the Debtors are authorized to incur unsecured credit to the extent necessary under the Insurance Programs and allowable under the Insurance Programs and the DIP Facility.

9.      ACE is authorized to adjust, settle and pay insured claims, subject to the terms of the Workers' Compensation Programs, without further order of this Court.

10.      This Order and the The Insurance Programs may not be altered by any plan of reorganization approved in this case and shall survive any such plan.

11.      This Order shall bind the Debtors, their successors in interest and assigns, including, without limitation, any trustee in bankruptcy.

12.      During the pendency of the Debtors' jointly administered cases, this Court retains exclusive jurisdiction (a) to enforce and implement the Debtors' insurance

- 3 -

programs with ACE or another insurer; (b) to resolve any disputes, controversies or claims arising out of or relating to the Debtors' insurance programs with ACE or another insurer; and (c) to interpret, implement, and enforce the provisions of this Order.

13.    Notwithstanding Fed. R. Bankr. P. 6004(g), this Order shall take effect immediately upon entry.

Dated this _____ day of _____, 2005 in Jacksonville, Florida

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

- 4 -