not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations, including any right of termination, shall be determined in accordance with paragraph 16 of this Agreement rather than pursuant to this paragraph 15.1(a)(v);

(vi)    at the election of Buyer or Seller as provided in paragraph 12 of this Agreement, in which case Seller shall direct Escrow Agent to return the Deposit to Buyer; provided, however, that if at the time any such election is made, Buyer is in breach in respect of this Agreement, then Buyer's and Seller's respective rights, remedies and obligations (including any right of termination) shall be determined in accordance with paragraph 16.2 of this Agreement rather than pursuant to this paragraph 15.1(a)(vi);

(vii)   at the election of Seller (A) if this Agreement is not the Successful Bid or (B) if the Bankruptcy Court denies Bankruptcy Court Approval, in which case Seller shall direct Escrow Agent to return the Deposit to Buyer; provided, however, that if at the time any such election is made, Buyer is in breach in respect of this Agreement, then Buyer's and Seller's respective rights, remedies and obligations (including any right of termination) shall be determined in accordance with paragraph 16.2 of this Agreement rather than pursuant to this paragraph 15.1(a)(vii);

(viii)  at the election of Seller if the Cure Costs with respect to the Lease exceed 15% of the Base Purchase Price, in which case Seller shall direct Escrow Agent to return the Deposit to Buyer; provided, however, that if at the time any such election is made, Buyer is in breach in respect of this Agreement, then Buyer's and Seller's respective rights, remedies and obligations (including any right of termination) shall be determined in accordance with paragraph 16.2 of this Agreement rather than pursuant to this paragraph 15.1(a)(viii); or

(ix)    at the election of Buyer or Seller if the Closing will not have occurred on or before the Outside Date for any reason other than as contemplated in paragraphs 15.1(a)(i) through 15.1(a)(viii) of this Agreement, in which case Seller shall direct Escrow Agent to return the Deposit to Buyer; provided that neither Buyer nor Seller, as the case may be, will be entitled to terminate this Agreement pursuant to this paragraph 15.1(a)(ix) if such party's breach of this

Agreement has been the cause of, or resulted in, the failure of the Closing to occur on or before such date and in the case of any such breach Buyer's and Seller's respective rights, remedies and obligations (including any right of termination) shall be determined in accordance with paragraph 16 of this Agreement rather than pursuant to this paragraph 15.1(a)(ix).

(b)     If this Agreement is terminated for any reason, then all materials provided by Seller to Buyer and all materials relating to the Assets obtained by Buyer and all copies of any such materials will be delivered to Seller within 5 Business Days following termination. This paragraph shall not in any way limit Buyer's duties to Seller or Winn-Dixie under the Confidentiality Agreement.

(c)     Upon any termination of this Agreement pursuant to paragraphs 15.1(a)(iii) through (ix) of this Agreement, each party will retain those rights (if any) it may have under paragraph 16 of this Agreement against any other party for breach by such other party prior to such termination of any of its covenants or other obligations under or relative to this Agreement.

16.0     **Default and Remedies**.

16.1     Buyer's Default. If the Closing as contemplated under this Agreement is not consummated due to Buyer's breach of this Agreement, or if this Agreement is terminated due to Buyer's breach of this Agreement, then Seller shall be entitled, as its sole and exclusive remedy for such breach, (A) to terminate this Agreement, and (B) to receive the Base Deposit as liquidated damages for the breach of this Agreement and not as a penalty, it being agreed between the parties hereto that the actual damages to Seller in the event of such a breach are impractical to ascertain and the amount of the Base Deposit is a reasonable estimate thereof. Seller hereby expressly waives and relinquishes any and all other remedies at law or in equity. Seller's right to receive the Base Deposit is intended not as a penalty, but as full-liquidated damages. The right to receive the Base Deposit as full liquidated damages is Seller's sole and exclusive remedy in the event of breach of this Agreement by Buyer, and Seller hereby waives and releases any right to (and Seller hereby covenants that it shall not) sue Buyer with respect to the Store or the Assets: (a) for specific performance of this Agreement, or (b) to recover any damages of any nature or description other than or in excess of the Base Deposit. Buyer hereby waives and releases any right to (and hereby covenants that it shall not) Seller to seek or claim a refund of the Base Deposit (or any part thereof) on the grounds that the Base Deposit is unreasonable in amount

and exceeds Seller's actual damages or that its retention by Seller constitutes a penalty and not agreed upon and reasonable liquidated damages. This paragraph 16.1 is subject to paragraph 16.4 of this Agreement.

16.2    Default by Seller. If the sale as contemplated under this Agreement is not consummated due to Seller's breach of this Agreement, or if this Agreement is terminated due to Seller's breach of this Agreement, then Buyer shall be entitled, as its sole and exclusive remedy for such breach, to receive the return of the Base Deposit, which return shall operate to terminate this Agreement and release Seller from any and all liability under this Agreement. Buyer expressly waives and releases (i) any right to seek specific performance of Seller's obligations under this Agreement and (ii) any right to seek or collect any damages, including any actual, consequential, speculative, remote or punitive damages. This paragraph 16.2 is subject to paragraph 16.4 of this Agreement.

16.3    Notice of Default; Opportunity to Cure. Neither Seller nor Buyer shall be deemed to be in default hereunder until and unless such party has been given written notice of its failure to comply with the terms hereof and thereafter does not cure such failure within 5 Business Days after receipt of such notice; provided, however, that this paragraph 16.3 (i) shall not be applicable to Buyer's failure to deliver any Deposit or any portion thereof on the date required under this Agreement or to a party's failure to make any deliveries required of such party on the Real Property Escrow Date or the Closing Date and, accordingly, (ii) shall not have the effect of extending the Closing Date or the due date of any Deposit.

16.4    Recoverable Damages. In no event shall the provisions of paragraphs 16.1 and 16.2 of this Agreement limit (i) either Buyer's or Seller's obligation to indemnify the other party, or the damages recoverable by the indemnified party against the indemnifying party due to, a party's express obligation to indemnify the other party in accordance with the Confidentiality Agreement and paragraphs 16.5 and 17.3 of this Agreement, or (ii) either Buyer's or Seller's obligation to pay costs, fees or expenses under the Confidentiality Agreement and paragraphs 3.3.3 and 3.4.3 of this Agreement, or the damages recoverable by any party against any other party due to a party's failure to pay such costs. In addition, if this Agreement is terminated for any reason, and Buyer or any Affiliate of Buyer asserts any claim or right to any Asset that would otherwise delay or prevent Seller from having clear, indefeasible, and marketable title to any Asset, then Seller shall have all rights and remedies available at law or in equity with respect to such assertion by Buyer and any loss, damage or other consequence suffered by Seller as a result of such assertion.

16.5    Buyer Indemnification of Seller.  Buyer shall indemnify and save and hold harmless Seller and its Affiliates and representatives, from and against any and all costs, losses liabilities, damages, lawsuits, deficiencies, claims and expenses (whether or not arising out of third-party claims) including, without limitation, interest, penalties, reasonable attorneys' fees and all amounts paid in investigation, defense or settlement for any of the foregoing (herein, the "Damages") incurred in connection with or arising out of or resulting from (a) any breach of any covenant or warranty by Buyer (including any payment obligation), or the inaccuracy of any representation made by Buyer in or pursuant to this Agreement or other transaction documents, (b) any liability, obligation or commitment of any nature (absolute, accrued, contingent or otherwise) of Buyer that is due to or arises in connection with Buyer's acts or omissions prior to, on or after the Closing Date, including any claim, liability, or obligation that is assumed by Buyer pursuant to this Agreement or in any transaction documents signed by Buyer.  Notwithstanding the foregoing, Buyer shall not be liable for any matter (i) with respect to which Seller has not given Buyer written notice within a reasonable period of time following Seller's receiving written notice of such matter, specifying the claim and the basis for the claim in reasonable detail (unless the failure to provide such information did not have a material adverse effect on Buyer), or (ii) that is due Seller's acts or omissions.  The provisions of this paragraph 16.5 shall cover all obligations and liabilities of whatsoever kind, nature or description relating, directly or indirectly, to product liability, third party litigation or third party claims against Buyer or Seller in connection with, arising out of, or relating to the Assets.  This paragraph 16.5 shall survive the Closing or earlier termination of this Agreement.

17.0    **Miscellaneous.**

17.1    Notices. All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this Agreement will conform to the requirements of this paragraph 17.1 and will be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number or by attachment to an e-mail transmission to the recipient's e-mail address and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if given by e-mail transmission when confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next Business Day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iv) if delivered by United States Mail, three days after depositing with the United States Postal Service, postage

prepaid by certified mail, return receipt requested, or (v) if given by nationally recognized or reputable overnight delivery service, on the next Business Day after receipted deposit with same, addressed to Seller or Buyer at their respective addresses stated below:

If to Seller:

Winn-Dixie Raleigh, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn:  Chief Financial Officer
Telefax No. 904 783 5646
e-mail: *bennettnussbaum@winn-dixie.com*

With a copy to:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn:  Office of General Counsel
Telefax No. 904 783 5651
e-mail: *larryappel@winn-dixie.com*

and

King & Spalding LLP
191 Peachtree Street
Atlanta, Georgia  30303
Attn:  Timothy N. Tucker
Telefax No. 404-572-5148
e-mail:  *ttucker@kslaw.com*

If to Buyer:

Roger Kim
OGA's Enterprises, Inc.
683 Joseph Lowery Blvd.
Atlanta, Georgia 30310

or such other address as any party may from time to time specify by notice to the other.

17.2    <u>Notice of Certain Inquiries</u>.  If any party is contacted, whether before or after the Closing and whether orally or in writing, by the United States Department of Justice or the Federal Trade Commission, or any similar

state governmental authority, with respect to any transactions contemplated by this Agreement, such party will promptly notify the other party of such contact and describe the facts and circumstances thereof.

17.3    Brokers and Finders.   The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Agreement other than that due by Seller to Seller's Brokers.  Seller agrees to pay all fees and commissions claimed by Seller's Brokers as a result of the transaction contemplated by this Agreement, which fees and commissions will be considered payable only if, as and when the Closing contemplated by this Agreement occurs.   Except for Seller's Brokers, neither Seller nor Buyer has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with the sale of the Assets or this Agreement.   Seller and Buyer hereby indemnify and agree to hold harmless each other from and against any claims by any other Person for brokerage fees, commissions or other similar costs related to the purchase of the Assets and this Agreement by reason of Seller's or Buyer's own acts, said indemnifications by Seller and Buyer to survive the Closing or earlier termination of this Agreement.

17.4    Successors and Assigns.  This Agreement will be binding upon, and inure to the benefit of, the parties hereto and their respective successors, and permitted assigns.

17.5    Assignment.  Neither Seller nor Buyer may assign or delegate any duties or obligations under this Agreement without the prior written consent of the other, which consent may be granted or withheld in the sole discretion of the party whose consent is so required.  No assignment by Buyer shall release or relieve Buyer of its liabilities and obligations hereunder, which shall remain in full force and effect notwithstanding any such assignment.

17.6    Amendments.  Except as otherwise provided herein, this Agreement may be amended or modified by, and only by, a written instrument executed by Seller and Buyer (and delivered physically or by facsimile transmission from any party or its counsel to the other party or its counsel) and subject to Bankruptcy Court Approval, if applicable.

17.7    Governing Law.  The application and effect of this will be governed by and construed in accordance with the laws of the State in which the Store is located; the application and effect of this Agreement as to any matter of the rights and obligations of the parties generally will be governed by and construed in accordance with the laws of the State of Florida.

17.8   <u>Merger of Prior Agreements</u>.   This Agreement supersedes all prior agreements and understandings between the parties hereto, other than the Confidentiality Agreement, and (except for the Confidentiality Agreement) constitutes the entire agreement of the parties with respect to the matters contained herein.   **BUYER ACKNOWLEDGES ITS OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT CONTINUE AFTER THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT**.

17.9   <u>Survival</u>.   Acceptance by Buyer of the Conveyance Instrument shall constitute an acknowledgement by Buyer that all of Seller's representations, covenants and obligations under this Agreement and all conditions to Buyer's obligations to close under this Agreement have been performed, satisfied and/or waived.   Seller's representations, warranties, covenants and obligations under this Agreement shall not survive the Closing but shall merge into the Conveyance Instrument, and shall have no further force or effect after the Closing, except that those covenants of Seller under <u>paragraphs 3.3.3, 3.3.4 and 17.3</u> of this Agreement that are expressly provided to be performed after the Closing shall survive.   All representations, warranties, covenants of obligations of Buyer under this Agreement shall survive the Closing.   In addition, all representations, covenants and obligations of Buyer under the Confidentiality Agreement shall survive the termination or consummation of this Agreement.

17.10   <u>Time is of the Essence</u>.   Time is of the essence of this Agreement.

17.11   <u>No Recordation</u>.   This Agreement will not be recorded in any public office or court other than as part of the Bankruptcy Court Approval process except that upon default it may be presented to a court of competent jurisdiction.

18.0   **Escrow Agent**.

18.1   <u>Duties</u>.   By signing a copy of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Upon its receipt of funds from Buyer, Escrow Agent will receive and hold such funds, and interest, if any, accrued thereon, in trust to be disposed of in accordance with the provisions of this Agreement.

18.2   <u>Indemnity</u>.   Escrow Agent will not be liable to any party except for claims resulting from the negligence or willful misconduct of Escrow Agent.   If the escrowed funds or interest, if any, accrued thereon is involved in any controversy or litigation, the parties hereto will jointly and severally indemnify and hold Escrow Agent free and harmless from and against any and all loss, cost, damage, liability or expense, including costs of

reasonable attorneys' fees to which Escrow Agent may be put or which may incur by reason of or in connection with such controversy or litigation, except to the extent it is finally determined that such controversy or litigation resulted from Escrow Agent's negligence or willful misconduct. If the indemnity amounts payable hereunder result from the fault of Buyer or Seller (or their respective agents), the party at fault will pay, and hold the other party harmless against, such amounts. Otherwise, Buyer and Seller each will be responsible for one-half of such amounts.

18.3 <u>Dispute</u>. If a written objection is filed within the time allowed or if Escrow Agent is in doubt as to its duties, Escrow Agent may continue to hold the escrowed funds and interest, if any, accrued thereon until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court, or Escrow Agent may interplead the same in such court and be relieved of any and all liability therefor. In any action or proceeding regarding the escrowed funds or interest, if any, accrued thereon brought by Escrow Agent or to which Escrow Agent is made a party, the Escrow Agent will be entitled to recover its reasonable costs and attorneys' fees (through appeal) from whichever of Seller or Buyer is not the prevailing party in such action or proceeding. If there is no prevailing party, Seller and Buyer each shall be responsible for one-half of such costs and fees.

18.4 <u>Execution by Escrow Agent</u>. Escrow Agent has executed this Agreement solely for the purpose of acknowledging and agreeing to the provisions of this <u>paragraph 18.</u> Escrow Agent's consent to and execution of any modification or amendment of this Agreement other than this <u>paragraph 18 </u>shall not be required.

19.0 **Waiver of Jury Trial**. Buyer and Seller each acknowledge and agree that the nature of this Agreement makes a jury determination of any dispute arising out of this Agreement or relating to the transactions contemplated herein undesirable. Accordingly, Buyer and Seller each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Agreement or the transactions contemplated herein.

20.0 **Consent to Jurisdiction. THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.**

Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in <u>paragraph 17.1</u> of this Agreement shall be effective service of process for any action, suit or proceeding with respect to any matters to which it

has submitted to jurisdiction as set forth above. Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum. If a court finds that subject-matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Middle District of Florida, Jacksonville Division, or if such court shall not have jurisdiction, then to the appropriate courts of the State of Florida sitting in Duval County, Florida.

21.0 **HSR Filings.** The parties anticipate that the transactions contemplated hereby are exempt from review and filing under the HSR Act. However, if such is not the case, Seller and Buyer shall each seek regulatory approval or HSR clearance and prepare and submit, in a timely manner, all necessary filings for Seller and Buyer in connection with this Agreement under the HSR Act and the rules and regulations thereunder. Seller and Buyer shall request expedited treatment of such HSR Filing by the Federal Trade Commission, shall make promptly any appropriate or necessary subsequent or supplemental filings, and shall furnish to each other copies of all HSR Filings at the same time as they are filed with the appropriate governmental authority except to the extent such party is legally restricted from providing or believes, based where appropriate on the advice of counsel, that it should not provide such copies.

22.0 **Disclaimers and Waivers.**

22.1 **NO RELIANCE ON DOCUMENTS. EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN PARAGRAPHS 5 AND 6 HEREOF (THE "CONTRACT WARRANTIES"), SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE TRUTH, ACCURACY OR COMPLETENESS OF ANY MATERIALS, DATA OR INFORMATION DELIVERED BY OR ON BEHALF OF SELLER TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY. BUYER ACKNOWLEDGES AND AGREES THAT ALL MATERIALS, DATA AND INFORMATION DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY (WHETHER DELIVERED OR MADE AVAILABLE ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE) ARE PROVIDED TO BUYER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF SUCH MATERIALS, DATA OR INFORMATION BY BUYER SHALL BE AT THE SOLE RISK OF BUYER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BUYER ACKNOWLEDGES AND AGREES THAT (A) ANY TITLE, ENVIRONMENTAL, ENGINEERING, SALES, FINANCIAL OR OTHER REPORT WITH RESPECT TO THE**

ASSETS WHICH IS DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER SHALL BE FOR GENERAL INFORMATIONAL PURPOSES ONLY, (B) BUYER SHALL NOT HAVE ANY RIGHT TO RELY ON ANY SUCH REPORT DELIVERED BY SELLER OR ANY AFFILIATE TO BUYER, BUT RATHER WILL RELY ON ITS OWN INVESTIGATIONS AND ANY REPORTS COMMISSIONED BY BUYER WITH RESPECT THERETO, AND (C) NEITHER SELLER, ANY AFFILIATE OF SELLER NOR THE PERSON WHICH PREPARED ANY SUCH REPORT DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER SHALL HAVE ANY LIABILITY TO BUYER FOR ANY INACCURACY IN OR OMISSION FROM ANY SUCH REPORT.

22.2   **Disclaimers**.  EXCEPT FOR THE CONTRACT WARRANTIES, BUYER UNDERSTANDS AND AGREES THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESSED OR IMPLIED, WITH RESPECT TO THE ASSETS, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ASSETS WITH LAWS, THE ABSENCE OR PRESENCE OF HAZARDOUS MATERIALS OR OTHER TOXIC SUBSTANCES (INCLUDING WITHOUT LIMITATION MOLD OR ANY MOLD CONDITION), COMPLIANCE WITH ENVIRONMENTAL LAWS, THE TRUTH, ACCURACY OR COMPLETENESS OF ANY DOCUMENTS, MATERIALS, REPORTS OR OTHER INFORMATION PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE TO BUYER, OR ANY OTHER MATTER OR THING REGARDING THE ASSETS.  BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE ASSETS "AS IS, WHERE IS, WITH ALL FAULTS".  BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND NEITHER SELLER NOR ANY AFFILIATE IS LIABLE FOR OR BOUND BY, ANY EXPRESSED OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE ASSETS OR RELATING THERETO PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER OR ANY AFFILIATE, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE, OTHER THAN THE CONTRACT WARRANTIES.

BUYER ACKNOWLEDGES THAT BUYER'S ACCESS AND INSPECTION RIGHTS HAVE BEEN LIMITED AS SET FORTH IN THIS AGREEMENT AND THAT BUYER UNDERSTANDS THE RISKS ASSOCIATED WITH PURCHASING THE ASSETS ON THE BASIS OF SUCH LIMITED INVESTIGATIONS. BUYER REPRESENTS TO SELLER THAT NOTWITHSTANDING SUCH LIMITATIONS BUYER HAS CONDUCTED SUCH INVESTIGATIONS AS BUYER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE ASSETS AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS MATERIALS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE ASSETS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION), AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AFFILIATES, AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN THE CONTRACT WARRANTIES. UPON CLOSING, BUYER SHALL ASSUME THE RISK THAT ADVERSE MATTERS, INCLUDING BUT NOT LIMITED TO, CONSTRUCTION DEFECTS AND ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY BUYER'S INVESTIGATIONS, AND BUYER, UPON CLOSING, SHALL BE DEEMED TO HAVE WAIVED, RELINQUISHED AND RELEASED SELLER AND SELLER'S AFFILIATES (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS) FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING CAUSES OF ACTION IN TORT OR UNDER ANY ENVIRONMENTAL LAW), LOSSES, DAMAGES, LIABILITIES (WHETHER BASED ON STRICT LIABILITY OR OTHERWISE), LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS) OF ANY AND EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, WHICH BUYER MIGHT HAVE ASSERTED OR ALLEGED AGAINST SELLER AND SELLER'S AFFILIATE'S (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS) AT ANY TIME BY REASON OF OR ARISING OUT OF ANY LATENT OR PATENT CONSTRUCTION DEFECTS OR PHYSICAL CONDITIONS, VIOLATIONS OF ANY APPLICABLE LAWS (INCLUDING, WITHOUT LIMITATION, ANY ENVIRONMENTAL LAWS) AND ANY AND ALL OTHER ACTS, OMISSIONS, EVENTS, CIRCUMSTANCES OR MATTERS REGARDING THE ASSETS.

BUYER AGREES THAT SHOULD ANY INVESTIGATION, CLEANUP, REMEDIATION OR REMOVAL OF HAZARDOUS SUBSTANCES OR OTHER ENVIRONMENTAL CONDITIONS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION) ON OR RELATED TO THE ASSETS BE REQUIRED AFTER THE DATE OF CLOSING, NEITHER SELLER NOR ANY AFFILIATE SHALL HAVE ANY LIABILITY TO BUYER TO PERFORM OR PAY FOR SUCH INVESTIGATION, CLEAN-UP, REMOVAL OR REMEDIATION, AND BUYER EXPRESSLY WAIVES AND RELEASES ANY CLAIM TO THE CONTRARY.

**BUYER FURTHER ACKNOWLEDGES THAT (1) THE CONTRACT WARRANTIES SHALL NOT SURVIVE THE CLOSING BUT SHALL MERGE INTO THE CONVEYANCE INSTRUMENT, AND SHALL HAVE NO FURTHER FORCE OR EFFECT AFTER THE CLOSING AND (2) THE LIABILITY OF SELLER UNDER OR WITH RESPECT TO THE CONTRACT WARRANTIES SHALL BE LIMITED TO THE EXPRESS REMEDIES OF BUYER SET FORTH IN THIS AGREEMENT.**

**BUYER REPRESENTS AND WARRANTS THAT THE TERMS OF THE DISCLAIMERS, WAIVERS AND RELEASES CONTAINED HEREIN AND THEIR CONSEQUENCES HAVE BEEN COMPLETELY READ AND UNDERSTOOD BY BUYER, AND BUYER HAS HAD THE OPPORTUNITY TO CONSULT WITH, AND HAS CONSULTED WITH, LEGAL COUNSEL OF BUYER'S CHOICE WITH REGARD TO THE TERMS OF SUCH DISCLAIMERS, WAIVERS AND RELEASES.   BUYER ACKNOWLEDGES AND WARRANTS THAT BUYER'S EXECUTION OF THESE DISCLAIMERS, WAIVERS AND RELEASES IS FREE AND VOLUNTARY.**

22.3    <u>Effect and Survival of Disclaimers</u>.  Seller and Buyer acknowledge that the provisions of this <u>paragraph 22</u> are an integral part of the transactions contemplated in this Agreement and a material inducement to Seller to enter into this Agreement and that Seller would not enter into this Agreement but for the provisions of this <u>paragraph 22</u>.  Seller and Buyer agree that the provisions of this <u>paragraph 22</u> shall survive Closing or any termination of this Agreement.

[Signature page follows]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**SELLER:**

**WINN-DIXIE RALEIGH, INC.,** a Florida corporation

By:_____

    Name:_____Bennett L Nussbaum_____

    Title:   SENIOR VICE PRESIDENT

**BUYER:**

**OGA'S ENTERPRISES, INC.,** a Georgia corporation, d/b/a Big Bear Supermarket

By:_____

    Name: Roger Kim

    Title: Owner

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**SELLER:**

**WINN-DIXIE  RALEIGH,  INC.,** a  Florida corporation

By:_____
   Name:___Bennett L Nussbaum_____
   Title: Vice President


**BUYER:**

**OGA'S  ENTERPRISES,  INC.,** a  Georgia corporation, d/b/a Big Bear Supermarket

By:_____
   Name: Roger Kim
   Title: Owner

Acknowledged and agreed this ___ day of _____, 2005 for the limited purposes set forth in paragraph 18 of this Agreement:

**ESCROW AGENT:**

**NEAR NORTH NATIONAL TITLE LLC**

By: _____
Name: _____
Title: _____

Store Number # 2725

## LIST OF EXHIBITS

Exhibit A-1  -  Description of Store
Exhibit A-2  -  Description of Lease and Leased Premises
Exhibit B    -  Form of Bill of Sale
Exhibit B-1  -  Equipment List
Exhibit C-1  -  Form of Closing Statement
Exhibit C-2  -  Form of Inventory Closing Statement
Exhibit D    -  Schedule of Certain Excluded Personal Property
Exhibit E    -  Base Purchase Price Allocation; Deposits
Exhibit F    -  Permitted Encumbrances
Exhibit G    -  Form of Conveyance Instrument
Exhibit H    -  Form of Inventory Certificate

### EXHIBIT A-1
### To Asset Purchase Agreement

### Description of Store

| **Store No.** | **Street Address** | **City** | **County** | **State** |
|---|---|---|---|---|
| 2725 | 2849 Candler Road | Decatur | DeKalb | Georgia |

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASE AND RELATED LAND

WINN-DIXIE STORE # **2725**
Decatur, Georgia

Lease:               Lease dated December 20, 1974, between Sandra Sherman Mackey, as
                     Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

                     as evidenced by Short Form Lease dated December 20, 1974, recorded in Book
                     3280, Page 338, of the public records of DeKalb County, Georgia

Amendments/
Guaranty:            Guaranty dated December 23, 1974

                     Supplemental Lease Agreement dated August 8, 1975

                     Amendment and Extension of Lease dated May 11, 1995

                     Letter Agreement dated November 19, 1999

                     Assignment and Assumption of Lease Agreement dated December 12, 2001

                     Notice of Exercise of Lease Term Extension dated December 21, 2004

Premises:            That certain store building and related improvements located at 2849
                     Candler Road, Decatur, DeKalb County, Georgia

Legal Description:   The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

EXHIBIT "B"

All that certain piece, parcel or tract of land, lying and being situated in Land Lot 120 of the Fifteenth District, DeKalb County, Georgia, together with all improvements thereon or to be constructed thereon and all appurtenances thereto belonging or in anywise appertaining, more particularly described as follows, to wit:

Commencing at the southeasterly corner of said Land Lot 120 (said point being also the common corner of Land Lots 120, 121, 105 and 104), run thence south 89° 13' west along the southerly boundary of said Land Lot 120 a distance of 194.54 feet to an iron pipe and the POINT OF BEGINNING; thence continuing along said southerly boundary of Land Lot 120 run south 89° 13' west a distance of 343.41 feet to an iron pipe; thence run north 3° 40' east a distance of 410.0 feet to an iron pipe; thence run north 84° 30' east a distance of 220.56 feet to an iron pipe; thence run south 11° 50' east a distance of 112.15 feet to an iron pipe; thence run south 13° 17' 10" east a distance of 324.51 feet to the POINT OF BEGINNING.

The parcel of land hereinabove described is shown as "Tract No. 2" and constitutes a portion of a larger parcel of land shown on survey last revised June 17, 1974, by Louis Sheldon Matthews, Jr., Registered Land Surveyor No. 1508, entitled "Survey for Atlanta Federal Savings and Loan Association Property at South DeKalb Mall", which survey is by this reference made a part hereof.

2725
2849 Candler Road
Decatur, GA

EXHIBIT B
To Asset Purchase Agreement

Form of

## BILL OF SALE

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2005, among **OGA'S ENTERPRISES, INC.**, a Georgia corporation, ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement, including the equipment listed in Exhibit B-1, (other than the Lease and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 200___.

"SELLER"

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

By: _____

Name: _____

Title: _____

EXHIBIT B-1
To Asset Purchase Agreement

Equipment List

**STORE NO. 2725**
**2849 CANDLER ROAD, DECATUR, GEORGIA**
**DESCRIPTION OF OWNED EQUIPMENT**

| ITEM DESCRIPTION | ITEM DESCRIPTON |
|---|---|
| BACKROOM SUPPLIES | CONDENSING UNIT |
| SHOPPING CARTS | REFRIGERATION SYSTEM |
| OPTIPLEX SX260 | CONDENSING UNIT |
| OPTIPLEX SX260 | CONDENSING UNIT |
| OPTIPLEX SX260 | CONDENSING UNIT |
| OPTIPLEX SX260 | CONDENSING UNIT |
| POS 4690 OSV3 SWARE | DAIRY CONDENSOR |
| LEXMARK T630N | DAIRY CONDENSOR |
| LEXMARK T630N | WALK IN ICE CREAM CONDENSOR |
| 4610 THERMAL PRINTER | RADIO |
| 4610 THERMAL PRINTER | MANAGERS OFFICE |
| 4610 THERMAL PRINTER | LOTTO BOX CABINET |
| 4610 THERMAL PRINTER | DAIRY CASE |
| 4610 THERMAL PRINTER | DAIRY CASE |
| 4610 THERMAL PRINTER | DAIRY CASE |
| 4610 THERMAL PRINTER | DAIRY CASE |
| 4610 THERMAL PRINTER | DAIRY CASE |
| 4610 THERMAL PRINTER | DAIRY CASE |
| PTC960XDS | DAIRY CASE |
| ENTERASYS ETHERNET SWITCH | JUICE CASE |
| ENTERASYS ETHERNET SWITCH | LUNCH MEAT CASE |
| CMI TIME CLOCK | LUNCH MEAT CASE |
| CMI TIME CLOCK | EXHAUST FANS 2 |
| QVS POS SOFTWARE | DELI OVEN |
| 33005075 DBL RACK ELE OVEN | COOLER RACKS-3 |
| 33005076 PROOFER | MOBILE HOT FOOD MERCHANDISER |
| REFURB REMODEL | QUANTUM PRINTER |
| CHECK POINT SECURITY SYSTEM | HAND WRAP STATION |
| CHECK POINT SECURITY SYSTEM | ADAMATIC DBL RACK ELE OVEN |
| ALARM SYSTEM | PROOFER |
| BAKERY SHELF DISPLAY | MIXER |
| BAKERY SHELF DISPLAY | SERVICE DELI |
| BAKERY SHELF DISPLAY | SERVICE DELI |
| BAKERY SHELF DISPLAY | EXHAUST FAN & INSTALLATION OF |
| LOAD KING BALER | HEAT FAN |
| BALER | FROZEN FOOD-ICE CREAM CASE |
| CHECK ENCODER | FROZEN FOOD-ICE CREAM CASE |
| CHECKOUT LANE | FROZEN FOOD-ICE CREAM CASE |
| CHECKOUT LANE | FROZEN FOOD-ICE CREAM CASE |
| CHECKOUT LANE | FROZEN FOOD-ICE CREAM CASE |
| CHECKOUT LANE | FROZEN FOOD-ICE CREAM CASE |
| CHECKOUT LANE | FROZEN FOOD-ICE CREAM CASE |
| CHECKOUT LANE | REACH-IN FROZEN FOOD CASE |
| CHECKOUT LANE | MEAT DEPT SINK |

**EXHIBIT B-1**
**PAGE 1 OF 3**

| ITEM DESCRIPTION | ITEM DESCRIPTON |
|---|---|
| EVAPORATOR COIL | ONAN GENERATOR SET |
| EVAPORATOR COILS | ONAN GENERATOR |
| BAKERY FREEZER COIL | MEAT GRINDER |
| BAKERY FREEZER COIL | ELECTRIC HANDICAP CART |
| BAKERY FREEZER COIL | MUELLER FRE-HEATER |
| ICE CREAM-FROZEN FOOD CASE | SCALE UPGRADE |
| FROZEN FOOD-ICE CREAM CASE | HOBART RETAIL SERVICE SCALE |
| FROZEN FOOD-ICE CREAM CASE | SCALE UPGRADE |
| EXTINGUISHING SYSTEM INSTA | 1860 SCALE |
| PLUMBING INSTALLATION | SP1500 SCALE |
| ELECTRICAL INSTALLATION | 18UP PRINTER |
| 8' MEAT CASE | SCALE |
| LUNCHMEAT CASE | LOAD CELL PLU SERVICE SCALE |
| MULTI DECK MEAT CASE-27751 | SEAFOOD CONVERSION 12' W/SPICE |
| MULTI DECK MEAT CASE-27751 | SEAFOOD STEAMER |
| MULTI DECK MEAT CASE-27751 | SEAFOOD CASE |
| MULTI DECK MEAT CASE-27751 | SEAFOOD CASE |
| MULTI DECK MEAT CASE-27751 | SHELVING |
| KY/WR MT CS-28123,43437 | SHELVING |
| MEAT SAWS | SHELVING |
| AUTOMATIC DOORS | MADIX SHELVING |
| VESTIBULE | SAVE RITE GROCERY SIGN |
| ARCHITECT FEES | SAVE RITE GROCERY SIGN |
| COMPUTER ROOM | ONE TIME LICENSE |
| CIG STORAGE CAGE | AIX ONE TIME CHARGE |
| VIDEO CONSOLE | FOOD STAMP\CURRENCY COUNTER |
| INSTALLING CABLES | 50 UNICARTS |
| LOCKERS | PENN PRODUCE COOLER |
| SHELVING | PENN FREEZER |
| DOCK SEALS | PENN DELI COOLER |
| SUPERMAKERTCOOLER W/CEILING PA | PENN MEAT FREEZER |
| TELEPHONE SYSTEM | PENN FREEZER |
| HEAT RECLAIM COIL | PENN FISH COOLER |
| HONEYWELL TIME OF DAY PANE | PENN DAIRY COOLER |
| MUSIC SYSTEM | PENN FREEZER |
| SPEED LIFTS | PENN DAIRY COOLER |
| PALLET JACK SLIDER BACKSTOP | DAIRY COOLER DOOR |
| PALLETJACK | MEAT  COOLER DOOR |
| PALLETJACK | PRODUCE COOLER DOOR |
| BAKERY PREP TABLES-6 | FREEZER DOOR |
| PRODUCE PREP TABLES-2 | HVAC |
| PRODUCE CACE | CEILINGS AND WALL |
| PRODUCE CASE | PANIC DOOR |
| PRODUCE CASE | DOORS AND WINDOW |
| PRODUCE CASE | RETROFIT LIGHTING |
| PRODUCE MISTING SYTEM | LIGHTING |
| PRODUCE CASE W/MIRRORED CANOPY | LIGHTING |
| EXHAUST FANS | ELECTRICAL |
| EXHAUST HOODS | FLOORING |
| AUTOMATIC FIRE SUPPRESSION SYS | FLOOR |
| IBM RISC 6000 REGISTER UPGRADE | SEAL & STRIPE PARKING LOT |
| STOCKROOM DOORS | DETEX ALARM |
| STOCK ROOM DOOR | PHENOLIC TOILET PARTITIONS |
| STOCK ROOM DOOR | CABINETRY |
| STOCK ROOM DOOR | PAINTING |

| ITEM DESCRIPTION | ITEM DESCRIPTON |
|---|---|
| GARY SAFE | PLUMBING |
| SERVICE SCALE | # 33004774 ROOF TOP HVAC UNIT |
| FIRE PROTECTION | |

**EXHIBIT C-1**
**To**
**Asset Purchase Agreement**

**INDIVIDUAL STORE CLOSING STATEMENT**

**BUYER:**                    OGA's Enterprises, Inc., a Georgia corporation

**SELLER:**                   Winn-Dixie Raleigh, Inc., a Florida corporation

**ESCROW AGENT and**         _____
**SETTLEMENT AGENT:**

**Property:**                 Store No. 2725

**CLOSING DATE:**             _____, 2005

**SELLER'S STATEMENT**

**BASE PURCHASE PRICE:**

Leasehold:                                                    $_____

FF&E:                                                         $_____

BASE PURCHASE PRICE:                                          $_____

**SUPPLIES PRICE:**                                           $_____

**TOTAL BASE PURCHASE PRICE AND**
**SUPPLIES PRICE:**
                                                              $_____

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and          $_____
Other Charges Payable Under Lease (1)

Buyer's Prorated Share of Rents Paid in       $_____
Advance **[Under Sublease (2)]**

**Total Debit Adjustments:**                  $_____

**Plus Adjustments (Credit):**                                $_____

Seller's Prorated Share of Rents and
Other Charges Paid in Advance Under
Lease (3)                                                     $_____

Exhibit C-1
Page 1 of 8