<u>LIST OF EXHIBITS</u>
<u>TO</u>
<u>ASSET PURCHASE AGREEMENT,</u>
<u>BY AND BETWEEN WINN-DIXIE RALEIGH, INC. AND HARRIS TEETER, INC.</u>

Exhibit A-1    -    List of Stores
Exhibit A-2    -    Description of Leases, Subleases and Leased Premises
Exhibit A-3    -    List of Shopping Centers
Exhibit B      -    Form of Bill of Sale
Exhibit C-1    -    Form of Closing Statement
Exhibit C-2    -    Form of Inventory Closing Statement
Exhibit D      -    Schedule of Certain Excluded Personal Property
Exhibit E      -    Base Purchase Price Allocation; Deposits
Exhibit F      -    Permitted Encumbrances
Exhibit G      -    Form of Conveyance Instrument
Exhibit H      -    Form of Inventory Certificate

EXHIBIT A-1
To Asset Purchase Agreement

<u>List of Stores</u>

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 805 | 8100 Brier Creek Parkway | Raleigh | Wake | North Carolina |
| 851 | 6024 Falls of Neuse Road | Raleigh | Wake | North Carolina |
| 2014 | 13639 Providence Road | Weddington | Union | North Carolina |
| 2022 | 265 Eastchester Drive | High Point | Guilford | North Carolina |
| 2039 | 1605 New Garden Road | Greensboro | Guilford | North Carolina |
| 2040 | 5322 Liberty Road | Greensboro | Guilford | North Carolina |
| 2061 | 2727 S. Church Street | Burlington | Alamance | North Carolina |
| 2090 | 2575 Highway 105 | Boone | Watauga | North Carolina |
| 2104 | 9759 Sam Furr Road | Huntersville | Mecklenburg | North Carolina |

C725381.6

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 805
Raleigh, North Carolina

<u>Lease</u>:          Deed of Lease dated January 14, 2002 between WD Development, LLC, as
               Landlord, and Winn-Dixie Raleigh, Inc., as Tenant, including Exhibits A through
               M, Short Form of Lease/Memo of Lease (including Exhibit A and B)

               As evidenced by Short Form Deed of Lease dated January 14, 2002, recorded in
               Book 9253, Page 1613, of the public records of Wake County, North Carolina.

<u>Amendments</u>:

Supplemental Lease Agreement dated May 15, 2003 between WD Development, LLC, as
Landlord, and Winn-Dixie Raleigh, Inc., as Tenant

<u>Premises</u>:     That certain store building and related improvements located at 8100 Brier Creek
               Parkway, Raleigh, North Carolina, Wake County.

<u>Legal Description</u>:     The Shopping Center in which the Premises is located is more particularly
described as follows:

               SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

          None

<u>Amendments to Sublease(s)</u>:

          None

C725381.6

## Legal Description

That certain parcel of land lying in the Cedar Fork Township, City of Raleigh, Wake County, North Carolina and being more particularly described as follows:

Beginning at a point in the Southern right of-way line of Little Brier Creek Lane (variable width Public right of way), said point being North 47 degrees 08 minutes 43 seconds West a distance of 153.93 feet from a new 3/4" Outside Diameter (O.D.) iron pipe set in the said Southern right of way line of Little Brier Creek Lane at its intersection with the sight distance right of way line for Brier Creek Parkway; thence from said beginning point leaving said Southern right of way line Little Brier Creek Lane along a new 50-foot private access easement, 32.40 feet along a curve to the left having a radius of 20.00 feet, chord bearing of South 86 degrees 26 minutes 44 seconds West and a chord distance of 28.97 feet to a point; thence along said 50-foot private access easement line South 40 degrees 02 minutes 10 seconds West a distance of 393.76 feet to a point; thence along said 50-foot private access easement line 16.49 feet along a curve to the left having a radius of 10.50 feet, chord bearing of South 04 degrees 57 minutes 50 seconds East and a chord distance of 14.85 feet to a point; thence leaving said 50-foot private access easement line South 49 degrees 57 minutes 50 seconds East a distance of 173.30 feet to a point; thence South 50 degrees 48 minutes 53 seconds East a distance of 28.98 feet to a point; thence along a curve to the left having a radius of 39.51 feet, chord bearing of South 82 degrees 15 minutes 04 seconds East and chord distance of 41.21 feet to a point in the Northern right of way line of Brier Creek Parkway (variable width Public right of way); thence along said Northern right of way line Brier Creek Parkway 221.87 feet along a curve to the left having a radius of 1969.86 feet, chord bearing of South 34 degrees 55 minutes 36 seconds West and chord distance of 221.75 feet to a point; thence along said Northern right of way line Brier Creek Parkway South 31 degrees 27 minutes 11 seconds West a distance of 207.41 feet to a point; thence leaving said Northern right of way line in the Northern right of way line of Brier Leaf Lane (variable width public right of way); thence along said Northern right of way line Brier Leaf Lane North 74 degrees 10 minutes 52 seconds West a distance of 97.20 feet to a point; thence along said Northern right of way line Brier Leaf Lane 119.35 feet along a curve to the right having a radius of 375.00 feet, chord bearing of North 65 degrees 03 minutes 53 seconds West and chord distance of 118.85 feet to an existing 1" (O.D.) iron pipe found; thence along said Northern right of way line becoming the Eastern right of way line of said Brier Leaf Lane, 637.02 feet along a curve to the right having a radius of 365.00 feet, chord bearing of North 00 degrees 15 minutes 03 seconds West and chord distance of 559.20 feet to a 1" (O.D.) iron pipe found; thence along said Eastern right of way line Brier Leaf Lane North 49 degrees 44 minutes 46 seconds East a distance of 186.35 feet to a point; thence leaving said Eastern right of way line Brier Leaf Lane South 40 degrees 15 minutes 14 seconds East a distance of 49.15 feet to a point; thence South 49 degrees 57 minutes 50 seconds East a distance of 173.71 feet to a point in a 50-foot private access easement; thence along said 50-foot private access easement 16.49 feet along a curve to the left having a radius of 10.50 feet, chord bearing of North 85 degrees 02 minutes 10 seconds east and chord distance of 14.85 feet to a point; thence along said 50-foot private access easement North 40 degrees 02 minutes 10 seconds East a distance of 398.19 feet to a point; thence along said 50-foot private access easement 31.04 feet along a curve to the left having a radius of 20.01 feet, chord bearing of North 04 degrees 23 minutes 53 seconds West and a chord distance of 28.02 feet to a new 3/4" (O.D.) iron pipe set in the said Southern right of way line of Little Brier Creek Lane; thence along said Southern right of way line Little Brier Creek Lane South 47 degrees 08 minutes 49 seconds East a distance of 90.71 feet to a point, the Point of Beginning.

Said parcel contains 7.752 Acres and is shown and delineated as "WD Parcel" on this map entitled "ALTA/ACSM LAND TITLE SURVEY FOR WD DEVELOPMENT, LLC — PARCEL "E" LOT 4 BRIER CREEK" (Sheets 1 and 2) prepared by BBM Associates, Inc. and dated December 21, 2001.

EXHIBIT A-2
Page 2 of 20

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT
<u>DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 851
Raleigh, North Carolina

<u>Lease</u>:        Lease dated May 15, 1979 between North Hills, Inc., as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant, including Exhibits A and B and Short Form of Lease/Memo of Lease

As evidenced by Short Form Lease dated May 15, 1979, recorded in Book 2741, Page 238, of the public records of Wake County, North Carolina.

<u>Amendments</u>:

Supplemental Lease Agreement dated July 11, 1980 between North Hills, Inc., as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant.

Letter Agreement dated February 25, 1981 between North Hills, Inc., as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant, including Exhibit A.

First Amendment to Lease dated October 20, 1993 between North Hills Properties, Inc., as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant, including Exhibit A.

Second Amendment to Lease dated May 31, 1996 between North Hills Properties, Inc., as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant.

Amendment to Lease dated October 14, 1998 between FAC Mortgage, LLC, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant.

Letter Agreement dated May 13, 2003 from Winn-Dixie Stores, Inc. and CPG Finance, I, LLC.

<u>Premises</u>:      That certain store building and related improvements located at 6024 Falls of Neuse Road, Raleigh, North Carolina, Wake County.

<u>Legal Description</u>:      The Shopping Center in which the Premises is located is more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

None

<u>Amendments to Sublease(s)</u>:

None

EXHIBIT A-2
Page 3 of 20

C725381.6

Southeasterly corner of Intersection of
Falls of Neuse Road and Spring Forest Road
Raleigh, North Carolina

All that certain piece, parcel or tract of land lying
and being situated in the City of Raleigh, County of Wake,
State of North Carolina, together with all improvements
thereon, or to be constructed thereon and all appurtenances
thereto belonging or in anywise appertaining, particularly
described as follows, to-wit:

Commencing at a point where the eastern right-of-way of Falls of
Neuse Road (said right-of-way being 45' east of the centerline
of Falls of Neuse Road) intersects the southern right-of-way of
Spring Forest Road (said right-of-way being 45' south of the center-
line of Spring Forest Road) and runs thence N 76degrees 56 minutes
36 seconds E, a tangent distance of 24.38' to a point on said
right-of-way of Spring Forest Road, the point of BEGINNING of said
tract of land; runs thence from said BEGINNING point along the
southern right-of-way of Spring Forest Road N 76 degrees 56 minutes
36 seconds E 520.06' to a point where said right-of-way line inter-
sects the centerline of a 20' wide Sanitary Sewer Easement; runs
thence along the centerline of a 20' wide Sanitary Sewer Easement
the following courses:  S 27 degrees 13 minutes 24 seconds E 324.32',
S 27 degrees 18 minutes 59 seconds E 377.22', S 46 degrees 40 minutes
39 seconds E 193.84', and S 15 degrees 21 minutes 39 seconds E 149.48',
to a point on the northern right-of-way of a future street; runs
thence along the right-of-way of said future street S 61 degrees
40 minutes 36 seconds W 94.41' to a point, thence along a curve to
the left with a radius of 317.90', an arc distance of 394.26' to a
point, thence along another curve to the right with a radius of
27.026', an arc distance of 40.35' to a point in the northern right-
of-way of another future street, thence continuing along the northern
right-of-way of said future street S 76 degrees 09 minutes 33 seconds
W 665.10' to a point, thence along a curve to the right, with a
radius of 25', an arc distance of 41.216' to a point on the eastern
right-of-way of Falls of Neuse Road, thence continuing along the
eastern right-of-way of Falls of Neuse Road the following courses:
N 09 degrees 22 minutes 54 seconds W 165.92', thence along a curve
to the right, with a radius of 3,774.719', an arc distance of
535.285', and N 01 degrees 15 minutes 24 seconds W 606.80' to a
point; thence leaving the right-of-way of Falls of Neuse Road and
curving to the right with a radius of 30', an arc distance of 40.95'
to a point in the right-of-way of Spring Forest Road, the point of
BEGINNING and containing 23.9175 acres, according to a survey
prepared by Castleberry-Edgerton Company, Consulting Engineers,
dated October 4, 1978.

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 2014
Weddington, North Carolina

<u>Lease</u>:        Lease dated September 20, 1993 between Weddington Associates, as Landlord and Winn-Dixie Charlotte, Inc., as Tenant, including Short Form of Lease/Memo of Lease.

As evidenced by Short Form Lease dated September 20, 1993, recorded in Book 660, Page 485, of the public records of Union County, North Carolina.

<u>Amendments</u>:

Supplemental Lease Agreement dated December 5, 1994 between Weddington Associates, as Landlord and Winn-Dixie Charlotte, Inc., as Tenant.

<u>Premises</u>:        That certain store building and related improvements located at  13639 Providence Road, Weddington, North Carolina, Union County.

<u>Legal Description</u>:        The Shopping Center in which the Premises is located is more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

None

<u>Amendments to Sublease(s)</u>:

None

EXHIBIT A-2
Page 5 of 20

C725381.6



**A. ALAN WALLWORK**
REGISTERED LAND SURVEYOR

2086 GOLD HILL ROAD
FORT MILL, SC 29715
803-548-4254

### Tract G

Beginning at an old P/K nail in the centerline of
Providence Road (N.C. Hwy. #16) said point also being
the southwesterly corner of Claire J. King Heirs
property, recorded in D.B. 115-272, in the Union County
Register of Deeds, thence N77-43-19E 116.42' to an old
iron, said point being the common corner between B.C.S.
Moss, Inc. property, recorded in D.B. 375-543, in the
Union County Register of Deeds and Claire J. King Heirs
property, thence in seven courses as follows: (1)
N75-46-55E 204.36' to an old iron (2) N75-46-42E 34.57'
to an old iron (3) N1-40-12E 65.35' to an old iron (4)
N64-52-59E 25.02' to an old iron (5) N73-32-21E 122.97'
to an old iron (6) N81-33-1HE 183.40' to an old iron
(7) S52-05-45E 13.62' to an old iron, said point being
on the westerly line of the Jimmy F. Spittle property,
recorded in D.B. 390-842, in the Union County Register
of Deeds, thence in two courses as follows: (1)
S4-05-42W 173.42' to an old iron (2) S68-25-52E 12.87'
to an old iron, said point being the common corner
between the Jimmy F. Spittle property and the
northwesterly corner of Mrs. J.W. Matthews property,
recorded in D.B. 75-89, in the Union County Register of
Deeds, thence in two courses as follows: (1) S25-57-56E
131.72' to an old iron (2) S9-27-30W 311.70' to an old
iron, said point being the common corner between Mrs.
J.W. Matthews property and the Town of Weddington
property, thence with the Town of Weddington property
S24-37-39W 125.45' to a point, thence S75-53-17W
382.61' to a point, thence S1-47E 220.00' to a point in
the centerline of N.C. Hwy. #84, thence with the
centerline of N.C. Hwy. #84, S88-13W 72.00' to a point,
thence N1-47W 105.00' to a point, thence N10-39-49E
107.29' to a point, thence N0-21E 216.06' to a point of
curve, thence with a circular curve to the left having
a radius of 10.00' and an arc of 19.39' to a point of
reversed curve, thence with an arc of a circular curve
to the right having a radius of 372.64' and an arc of
172.13' to a point of tangent, thence N84-16W 62.37' to
a point in the centerline of Providence Road (N.C.Hwy.
#16) thence in five courses as follows: (1) N8-12-22E
40.00' to a point (2) N5-50-33E 95.39' (3) N4-05-13E
96.77' (4) N2-49-06E 94.92" (5) N0-48-47E 71.90' to a
point, said point being the point and place of
Beginning, containing 10.177 acres, shown on a map
drawn by A. Alan Wallwork, dated August 22, 1990.

C725381.6

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 2022
High Point, North Carolina

<u>Lease</u>:          Lease dated May 26, 1994 between H.P.M. Limited Partnership, as Landlord, and
                Winn-Dixie Charlotte, Inc., as Tenant, including Short Form Lease.

                As evidenced by Short Term Lease dated May 26, 1994, recorded in Book 4212,
                Page 0289, of the public records of Guilford County, North Carolina.

<u>Amendments</u>:

Supplemental Lease dated July 10, 1995 between H.P.M. Limited Partnership, as Landlord, and
Winn-Dixie Charlotte, Inc., as Tenant.

Assignment of Lease dated June 25, 1998 between Winn-Dixie Charlotte, Inc., as Assignor, and
W-D Transfer, Inc., as Assignee

<u>Premises</u>:        That certain store building and related improvements located at 265 Eastchester
                Drive, High Point, North Carolina, Guilford County.

<u>Legal Description</u>:      The Shopping Center in which the Premises is located is more particularly
described as follows:

          SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

          None

<u>Amendments to Sublease(s)</u>:

          None

C725381.6

### SHOPPING CENTER DEVELOPMENT

Northeasterly Corner of the Intersection of
Eastchester Drive and Kirkwood Street
High Point, Guilford County, North Carolina


All that certain piece, parcel or tract of land lying and
being situated in the City of High Point, County of Guilford,
State of North Carolina, together with all improvements thereon
or to be constructed thereon and all appurtenances thereto be-
longing or in anywise appertaining, particularly described as
follows, to wit:

BEGINNING at a point in the East right of way of Kirkwood Street, said point being

located North 3 degrees 50 minutes 10 seconds East, 87.68 feet from the Northeast

intersection of Kirkwood Street and Eastchester Drive, thence with the East right

of way of Kirkwood Street, North 03 degrees 50 minutes 10 seconds East, 516.11 feet

to a point in said right of way, thence North 45 degrees 29 minutes 06 seconds East,

29.30 feet to a point, said point being in the South right of way of East Parris

Avenue, thence with the South right of way of East Parris Avenue, the following

courses and distances: North 88 degrees 21 minutes 04 seconds East, 10.01 feet,

thence with a curve to the left having a radius of 734.00 feet an arc distance

of 606.55 feet to a point, and North 41 degrees 00 minutes 15 seconds East,

15.24 feet and with a curve to the right having a radius of 666.00 feet an arc

distance of 219.44 feet to a point in said South right of way of East Parris Avenue,

thence leaving said right of way South 13 degrees 44 minutes 40 seconds East,

140.00 feet to a point, thence North 79 degrees 08 minutes 58 seconds East, 150.00

feet to a point, said point being in the West line of Crotts & Wall, thence with

Crotts & Wall's West line South 03 degrees 56 minutes 45 seconds West, 120.34 feet

to a point, said point being Crotts & Wall's Southwest corner and The Seventh Day

Adventist Church's Northwest corner, thence with said Church's West line South

03 degrees 39 minutes 10 seconds West, 570.63 feet to a point, in said Church's

line, thence South 79 degrees 14 minutes 50 seconds West, 164.77 feet to a point,

thence South 10 degrees 45 minutes 10 seconds East, 125.00 feet to a point, said

point being in the North right of way of Eastchester Drive, thence with said North

right of way the following courses and distances: South 79 degrees 14 minutes 50

seconds West, 405.27 feet to a point, South 80 degrees 42 minutes 50 seconds

West, 99.37 feet, South 81 degrees 39 minutes 50 seconds West, 93.90 feet to

C725381.6

. a point in said R/W, thence North 10 degrees 45 minutes 10 seconds West, 150.00 -
feet to a point, thence south 79 degrees 14 minutes 50 seconds West, 159.57 feet.
to the point and place of BEGINNING.

The above described Tract is identified as Lot A, containing 15.055 acres more
or less and is subject to a 15 foot Utility Easement for a Sanitary Sewer and
being shown on survey dated May 8, 1974, by Davis-Martin, Inc.,
Engineers and Land Surveyors, High Point, North Carolina, designated
Job No. S-8355 and being recorded in the Office of Register of Deeds
of Guilford County, North Carolina in Plat Book 54, Page 36, which
survey is by this reference made a part hereof.

C725381.6

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 2039
Greensboro, North Carolina

<u>Lease</u>:          Lease dated August 25, 1997 between Krusch Properties, LLC, as Landlord, and
                Winn-Dixie Charlotte, Inc., as Tenant, including Exhibits A through J, Short
                Form of Lease/Memo of Lease.

                As evidenced by Short Form Lease dated August 25, 1997, recorded in Book
                4607, Page 0752, of the public records of Guilford County, North Carolina.

<u>Amendments</u>:

Amendment to Lease dated March 25, 1999 between Krusch Properties, LLC, as Landlord,
Garden Creek Association, as Association, and Winn-Dixie Raleigh, Inc., as Tenant, including
Exhibits A and B.

Amendment to Short Form of Lease dated March 25, 1999 between Krusch Properties, LLC, as
Landlord, and Winn-Dixie Raleigh, Inc., as Tenant, including Exhibits A and B.

<u>Premises</u>:       That certain store building and related improvements located at 1605 New Garden
                Road, Greensboro, North Carolina, Guilford County.

<u>Legal Description</u>:     The Shopping Center in which the Premises is located is more particularly
described as follows:

              SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

        None

<u>Amendments to Sublease(s)</u>:

        None

C725381.6

*LEGAL DESCRIPTION*

BEGINNING ON AN EXISTING IRON IN THE NORTHWEST QUADRANT OF WILLDOSKEY DRIVE AND NEW GARDEN ROAD, THENCE RUNNING WITH THE NORTH MARGIN OF NEW GARDEN ROAD S 61–16–20 W 70.02' TO A POINT; THENCE CONTINUING WITH THE NORTH MARGIN OF NEW GARDEN ROAD ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 1909.86' AND A CHORD BEARING AND DISTANCE OF S 75–25–55 W 106.40' TO A POINT, SAID POINT BEING OUR COMMON CORNER WITH PROPOSED OUTPARCEL A; THENCE RUNNING WITH THE COMMON LINES OF PROPOSED OUTPARCEL A THE FOLLOWING BEARINGS AND DISTANCES: 1) N 08–25–02 W 225.93' TO A POINT; 2) S 81–34'58 W 37.54' TO A POINT; 3) S 73–44–45 W 173.50' TO A POINT; 4) S 81–34–58 W 59.93' TO A POINT; 5) S 51–34–58 W 70.43' TO A POINT; 6) ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 192.00' AND A CHORD BEARING AND DISTANCE OF S 22–12–17 E 69.64' TO A POINT; 7) S 12–25–18 E 6.52' TO A POINT; 8) S 12–24–53 E 67.85' TO A POINT IN THE NORTH MARGIN OF NEW GARDEN ROAD; THENCE RUNNING WITH THE NORTH MARGIN OF NEW GARDEN ROAD S 80–28–31 W 57.88' TO A POINT, SAID POINT BEING OUR COMMON CORNER WITH PROPOSED OUTPARCEL B; THENCE RUNNING WITH THE LINES OF PROPOSED OUTPARCEL B THE FOLLOWING BEARINGS AND DISTANCES: 1) N 08–28–20 W 102.13' TO A POINT; 2) ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 144.00' AND A CHORD BEARING AND DISTANCE OF N 46–59–20 W 113.77' TO A POINT; 3) ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 428.00' AND A CHORD BEARING AND DISTANCE OF N 62–18–27 W 81.33' TO A POINT; 4) S 36–34–58 W 67.78' TO A POINT; 5) S 81–34–58 W 57.89' TO A POINT; 6) S 08–25–02 E 200.28' TO A POINT IN THE NORTH MARGIN OF NEW GARDEN ROAD, SAID POINT BEING OUR COMMON CORNER WITH PROPOSED OUTPARCEL B; THENCE LEAVING THE LINES OF PROPOSED OUTPARCEL B AND RUNNING WITH THE NORTH MARGIN OF NEW GARDEN ROAD S 71–10–31 W 26.39' TO AN EXISTING IRON; THENCE CONTINUING WITH THE NORTH MARGIN OF NEW GARDEN ROAD N 74–33–45 W 238.39' TO A CONCRETE MONUMENT IN THE NORTHEAST QUADRANT OF NEW GARDEN ROAD AND HORSE PEN CREEK ROAD; THENCE RUNNING WITH THE EAST MARGIN OF HORSE PEN CREEK ROAD N 28–30–24 W 280.33' TO A CONCRETE MONUMENT; THENCE CONTINUING WITH THE EAST MARGIN IN HORSE PEN CREEK ROAD N 10–49–11 W 354.46 FEET TO A CONCRETE MONUMENT; THENCE CONTINUING WITH THE EAST MARGIN OF HORSE PEN CREEK ROAD THE FOLLOWING BEARINGS AND DISTANCES: 1) N 51–42–08 E 33.04' TO A CONCRETE MONUMENT; 2) N 05–13–43 E 49.55' TO A CONCRETE MONUMENT; 3) N 45–59–32 W 46.07' TO A CONCRETE MONUMENT; 4) N 01–54–23 E 328.48' TO A POINT, SAID POINT BEING IN THE EAST MARGIN OF HORSE PEN CREEK ROAD AND ALSO BEING OUR COMMON CORNER WITH RAVEN RIDGE SUBDIVISION AS RECORDED IN PLAT BOOK 81 PAGE 101; THENCE RUNNING WITH THE LINE OF RAVEN RIDGE SUBDIVISION S 88–53–16 E 357.87' TO A POINT, SAID BEING OUR COMMON CORNER WITH RAVEN RIDGE SUBDIVISION AS RECORDED IN PLAT BOOK 81 PAGE 101 AND PLAT BOOK 85 PAGE 10; THENCE CONTINUING WITH THE LINES OF RAVEN RIDGE  SUBDIVISION S 09–10–22 E 145.07' TO A POINT; N 80–55–03 E 30.94' TO AN EXISTING IRON PIPE; S 57–02–12 E 195.80' TO AN EXISTING IRON PIPE; S 61–10–17 E 56.78' TO AN EXISTING IRON PIPE, SAID IRON PIPE BEING OUR COMMON CORNER WITH RAVEN RIDGE SUBDIVISION AS RECORDED IN PLAT BOOK 85 PAGE 10 AND HIGH ACRES SUBDIVISION AS RECORDED IN PLAT BOOK 34  PAGE 33; THENCE RUNNING WITH THE LINES OF HIGH ACRES SUBDIVISION 1) S 38–27–08 W 182.92' TO AN EXISTING IRON PIPE; 2) S 35–47–15 E 120.42' TO AN EXISTING IRON PIPE; 3) S 35–21–19 E 121.14' TO AN EXISTING IRON PIPE; 4) S 76–55–55 E 91.12' TO AN EXISTING IRON PIPE; 5) N 73–44–45 E 138.80' TO AN EXISTING IRON PIPE; 6) N 62–17–03 E 159.01' TO AN EXISTING IRON PIPE IN THE WEST MARGIN OF WILLDOSKEY DRIVE; THENCE RUNNING WITH THE WEST MARGIN OF WILLDOSKEY DRIVE THE FOLLOWING BEARINGS AND DISTANCES: 1) S 26–58–18 E 92.04' TO AN EXISTING IRON PIPE; 2) S 28–26–25 E 336.69' TO AN EXISTING IRON PIPE; 3) S 01–51–40 W 39.98' TO THE POINT AND PLACE OF BEGINNING CONTAINING 15.045 ACRES MORE OR LESS AND LYING IN MOREHEAD TOWNSHIP, GUILFORD COUNTY, NORTH CAROLINA.

EXHIBIT A-2
Page 11 of 20

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 2040
Greensboro, North Carolina

<u>Lease</u>:   Lease dated September 29, 1976 between Gerald C. Parker, Sr. and Nora Jean
Benfield Parker, his wife, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant,
including Exhibits A and B, Short Form of Lease/Memo of Lease.

     As evidenced by Short Form Lease dated September 29, 1976, recorded in Book
2844, Page 801, of the public records of Guilford County, North Carolina.

<u>Amendments</u>:

Assignment of Lease dated June 25, 1977 between Winn-Dixie Raleigh, Inc., as Assignor, and
Winn-Dixie Charlotte, Inc., as Assignee.

Supplemental Lease Agreement dated March 10, 1978 Gerald C. Parker, Sr. and Nora Jean
Benfield Parker, his wife, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant.

Letter Agreement dated December 16, 1986 from Winn-Dixie Charlotte, Inc. to Mr. Richard
Shrosphire and Mr. Earl Blake.

First Amendment to Lease dated February 26, 1987 between Bill Agapion, as Landlord, and
Winn-Dixie Charlotte, Inc., as Tenant.

Agreement (Amendment to Lease) dated May 6, 1987 between Norman D. Reynolds and N.
Dennis Reynolds, Jr., his son, D/B/A Reynolds Properties, as first party and Winn-Dixie
Charlotte, Inc., as second party.

Second Amendment to Lease dated June 27, 1988 between Bill Agapion, as Landlord, and
Winn-Dixie Charlotte, Inc., as Tenant.

Assignment of Lease dated June 25, 1998 between Winn-Dixie Charlotte, Inc., as Assignor, and
W-D Transfer, Inc., as Assignee.

<u>Premises</u>:  That certain store building and related improvements located at 5322 Liberty
Road, Greensboro, North Carolina, Guilford County.

C725381.6

<u>Legal Description</u>:    The Shopping Center in which the Premises is located is more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

None

<u>Amendments to Sublease(s)</u>:

None

C725381.6

FOREST OAKS SHOPPING CENTER

Southwesterly Corner of the Intersection of
Liberty Road (Old U. S. Highway No. 421) and
North Carolina State Road No. 3411
Guilford County, North Carolina

All that certain piece, parcel or tract of land lying and
being situated in Fentress Township, in the County of Guilford,
State of North Carolina, together with all improvements thereon
or to be constructed thereon and all appurtenances thereto
belonging or in anywise appertaining, particularly described
as follows, to wit:

BEGINNING in the south right-of-way line of Old U. S.
Highway No. 421 (Liberty Road) and in the west right-of-way
line of North Carolina State Road No. 3411 (Hagan Stone Road),
run thence with the west margin of said North Carolina State
Road No. 3411 South 1 degree 2 minutes 50 seconds East 163.04
feet, South 0 degree 15 minutes 20 seconds East 169.24 feet,
South 2 degrees 26 minutes 40 seconds West 198.44 feet and
South 5 degrees 0 minute 40 seconds West 77.75 feet to Parker's
original southeast corner; thence with Parker's original line
North 85 degrees 5 minutes 55 seconds West 1,034.21 feet to
Kirkman's corner; thence with Kirkman's line N 7° 14' 40" E
254.63 feet and N 7° 4' 10" E. 149.04 feet to Lippard's corner;
thence with Lippard's line N 4° 40' 30" E. 95.86 feet to Greeson's
corner; thence with Greeson's line N 83° 26' 50" E 173.3 feet
to Greeson's corner with Barker; thence with Barker's line
N 83° 46' 50" E 258.62 feet to Garner's original corner; thence
with Garner's new line South 30 degrees 29 minutes 30 seconds
West 20 feet to Garner's new corner; thence with Garner's new
line North 81 degrees 24 minutes 50 seconds East 305.63 feet
to Garner's new corner; thence with Garner's line North 34 degrees
47 minutes 55 seconds East 113.75 feet to the south right-of-way
line of Old U. S. Highway No. 421, Parker's and Garner's original
common corner; thence with the south right-of-way line of said
Highway South 53 degrees 30 minutes 50 seconds East 50 feet to
the northwest corner of Ann Reynolds; thence with Reynolds' line
South 36 degrees 29 minutes 10 seconds West 205 feet to Reynolds'
corner; thence with Reynolds' line South 53 degrees 30 minutes
50 seconds East 151.41 feet to Reynolds' corner; thence with
Reynolds' line North 67 degrees 1 minute 5 seconds East 46.44
feet to Reynolds' corner; thence with Reynolds' line North
36 degrees 29 minutes 10 seconds East 165 feet to the south
right-of-way line of Old U. S. Highway No. 421; thence with
the south right-of-way line of said Highway South 53 degrees
30 minutes 50 seconds East 20 feet to the POINT OF BEGINNING,
containing 12.99 acres, more or less, as shown on survey dated
August 1976, prepared by Hugh M. Creed, North Carolina Registered
Engineer No. 3387, Greensboro, North Carolina, entitled "Grading
and Utility Plan of Forest Oaks Shopping Center, Fentress Town-
ship, Guilford County, North Carolina", which survey is by this
reference made a part hereof.

EXHIBIT A-2
Page 14 of 20

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 2061
Burlington, North Carolina

<u>Lease</u>:          Lease dated July 19, 1995 between New Market Square Limited Partnership, as
              Landlord, and Winn-Dixie Charlotte, Inc., as Tenant, including Short Form of
              Lease/Memo of Lease.

              As evidenced by Short Form Lease dated July 19, 1995, recorded in Book 948,
              Page 800, of the public records of Alamance County, North Carolina.

<u>Amendments</u>:

Assignment of Lease dated June 25, 1998 between Winn-Dixie Charlotte, Inc., as Assignor, and
W-D Transfer, Inc., as Assignee

Supplemental Lease Agreement dated June 28, 1996 between New Market Square Limited
Partnership, as Landlord, and Winn-Dixie Charlotte, Inc., as Tenant

<u>Premises</u>:      That certain store building and related improvements located at 2727 S. Church
              Street, Burlington, North Carolina, Alamance County.

<u>Legal Description</u>:    The Shopping Center in which the Premises is located is more particularly
described as follows:

        SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

        None

<u>Amendments to Sublease(s)</u>:

        None

C725381.6

LEGAL DESCRIPTION

A certain tract or parcel of land in the City of Burlington, Boone
Station Township, Alamance County, North Carolina, adjoining the
lands of Lot No. 1, Section One, Shadowbrook Acres, Shadowbrook
Drive, South Church Street, Lot No. 1 of Equicap Property, and
others, and more particularly described as follows:

BEGINNING at an iron stake at the northwest intersection of the

right-of-way lines of Shadowbrook Drive and South Church Street,

thence with the north right-of-way line of South Church Street

N. 88° 22' 43" W. 739.19 ft. to an iron stake, corner with Lot No. 1

of Equicap Property; thence with the line of Lot No. 1 of Equicap

Property N. 4° 05' 55" E. 620.58 ft. to an iron stake, corner with

said Lot No. 1 of Equicap Property; thence continuing with said

Lot No. 1 S. 88° 22' 43" E. 848.01 ft. to an iron stake, corner with

said Lot No. 1 of Equicap Property and in the line of Lot No. 1 of

Section One, Shadowbrook Acres; thence with the line of Lot No. 1,

Section One, Shadowbrook Acres, S. 4° 47' W. 201.20 ft. to an iron

stake, corner with said Lot No. 1 and the west right-of-way line of

Shadowbrook Drive; thence with the west right-of-way line of Shadow-

brook Drive, a curve to the left having a delta angle 48° 01',

radius 467.42', tangent 208.19', length 391.72', degree 12.2579°,

a chord bearing and distance of S. 22° 31' 33" W. 352.38 ft. and

arc distance 361.52 ft., to an iron stake and point of tangency;

thence continuing with the west right-of-way line of Shadowbrook

Drive S 00° 28' W. 90.00 ft. to the POINT OF BEGINNING, and contain-

ing 11.208 acres, and being Lot No. 2 of the Equicap Property,

surveyed by Alley, Williams, Carmen, & King, Inc., dated January 3,

1985, a plat of which is recorded in Plat Book __30__, at

page __28__.

C725381.6

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 2090
Boone, North Carolina

<u>Lease</u>:          Lease dated October 1, 1991 between Aston-Fidler Limited Partnership, as
Landlord, and Winn-Dixie Charlotte, Inc., as Tenant, including Exhibits A and B
and Short Form of Lease/Memo of Lease.

As evidenced by Short Form Lease dated October 1, 1991, recorded in Book 196,
Page 128, of the public records of Watauga County, North Carolina.

<u>Amendments</u>:

Supplemental Lease Agreement dated July 24, 1993 between Aston-Fidler Limited Partnership,
as Landlord, and Winn-Dixie Charlotte, Inc., as Tenant.

<u>Premises</u>:          That certain store building and related improvements located at 2575 Highway
105, Boone, North Carolina, Watauga County.

<u>Legal Description</u>:          The Shopping Center in which the Premises is located is more particularly
described as follows:

SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

None

<u>Amendments to Sublease(s)</u>:

None

C725381.6

LEGAL DESCRIPTION OF SHOPPING CENTER

BEING THAT CERTAIN PARCEL OF LAND LYING IN NEW RIVER TOWNSHIP,
WATAUGA COUNTY, NORTH CAROLINA, BOUNDED ON THE NORTH BY THE
100 FOOT RIGHT-OF-WAY OF NORTH CAROLINA HIGHWAY 105, ON THE
EAST BY WINKLER AND ABDIN, ON THE SOUTH BY DAVIS, ON THE WEST
BY DAVIS AND COOK, AND MORE ACCURATELY DESCRIBED AS FOLLOWS:


BEGINNING AT A POINT, SAID POINT BEING A NEW IRON PIPE SET IN
THE SOUTHERN RIGHT-OF-WAY LINE OF SAID NORTH CAROLINA HIGHWAY 105,
SAID NEW IRON PIPE BEING LOCATED SOUTH 56-27-16 EAST A DISTANCE
OF 114.72 FEET FROM AN EXISTING IRON PIPE (3/4 INCH CONDUIT)
MARKING THE NORTHWEST CORNER OF THE KENNETH WAYNE COOK PROPERTY
(DEED BOOK 170 PAGE 872) AT THE SAID SOUTHERN RIGHT-OF-WAY OF
SAID NORTH CAROLINA HIGHWAY 105; THENCE WITH SAID SOUTHERN RIGHT-
OF-WAY LINE FOLLOWING CALLS AND DISTANCES: SOUTH 56-56-26 EAST
FOR 320.76 FEET TO A NEW IRON PIPE, SOUTH 60-10-52 EAST FOR
108.76 FEET TO A NEW IRON PIPE, SOUTH 61-23-00 EAST FOR 130.00
FEET TO A NEW IRON PIPE, SOUTH 64-44-08 EAST FOR 138.51 FEET TO
A NEW IRON PIPE, SOUTH 65-10-01 EAST FOR 68.16 FEET TO A NEW
IRON PIPE, SOUTH 66-10-04 EAST FOR 25.00 FEET TO A NEW IRON
PIPE (SAID NEW IRON PIPE BEING LOCATED NORTH 66-39-00 WEST A
DISTANCE OF 149.77 FEET FROM AN EXISTING IRON PIPE MARKING THE
NORTHEAST CORNER FOR WINKLER AT THE SAID SOUTHERN RIGHT-OF-WAY
OF NORTH CAROLINA HIGHWAY 105); THENCE WITH WINKLER'S WESTERN
LINE SOUTH 21-36-16 WEST FOR A DISTANCE OF 137.06 FEET TO A
NEW IRON PIPE AND CORNER WITH WINKLER, THENCE WITH THE SOUTHERN
LINE OF WINKLER SOUTH 68-36-20 EAST A DISTANCE OF 49.06 FEET TO
A COMPUTED POINT IN A CREEK (SAID POINT BEING LOCATED NORTH 68-
36-20 WEST A DISTANCE OF 99.57 FEET FROM AN EXISTING IRON PIPE
AND SOUTHEASTERN CORNER OF THE WINKLER PROPERTY) AND CORNER WITH
ABDIN (DEED BOOK 105 PAGE 714, PLAT BOOK 11 PAGE 10); THENCE
WITH THE WESTERN LINE OF ABDIN SOUTH 22-03-00 WEST FOR A DISTANCE
OF 15.00 FEET TO AN EXISTING IRON PIPE AND REFERENCE FOR SAID
COMPUTED POINT, THENCE CONTINUING WITH THE LINE OF ABDIN SOUTH
22-03-00 WEST FOR A DISTANCE OF 148.93 FEET TO AN EXISTING IRON
PIPE (3/4 INCH GALVANIZED), THENCE WITH THE LINE OF ABDIN SOUTH
22-00-30 WEST A DISTANCE OF 82.09 FEET TO AN EXISTING IRON PIPE
(3/4 GALVANIZED) AND CORNER WITH ABDIN; THENCE WITH THE NORTHERN
LINE OF DAVIS (DEED BOOK 30 PAGE 459) NORTH 80-04-54 WEST FOR
A DISTANCE OF 73.72 FEET TO AN EXISTING IRON PIPE (1/2 INCH
CONDUIT) AT A FENCE CORNER, SAID IRON PIPE BEING SOUTHEAST OF
A 24 INCH HEMLOCK WITH A LARGE "X" ON THE SOUTHEAST SIDE; THENCE
NORTH 69-03-59 WEST FOR A DISTANCE OF 68.04 FEET TO AN EXISTING
IRON PIPE (1/2 INCH REBAR AT THE INTERSECTION OF A FENCE LINE
AND A CREEK), THENCE NORTH 68-56-00 WEST FOR A DISTANCE OF 245.36
FEET TO AN EXISTING IRON PIPE (1/2 INCH CONDUIT AT A 24 INCH
CUCUMBER TREE AND FENCE CORNER), THENCE WITH A NEW LINE FOR DAVIS
NORTH 68-56-00 WEST FOR A DISTANCE OF 108.09 FEET TO A NEW IRON
PIPE, THENCE NORTH 11-18-48 WEST A DISTANCE OF 36.10 FEET TO A
NEW IRON PIPE, THENCE NORTH 14-59-01 WEST FOR A DISTANCE OF 20.57
FEET TO A NEW IRON PIPE, THENCE NORTH 12-50-07 WEST FOR A DISTANCE
OF 32.61 FEET TO A NEW IRON PIPE, THENCE NORTH 14-28-00 WEST FOR
A DISTANCE OF 99.15 FEET TO A NEW IRON PIPE, THENCE NORTH 27-35-
14 WEST FOR A DISTANCE OF 38.55 FEET TO A NEW IRON PIPE, THENCE
NORTH 30-44-39 WEST FOR A DISTANCE OF 107.38 FEET TO A NEW IRON
PIPE, THENCE NORTH 31-21-36 WEST FOR A DISTANCE OF 76.14 FEET TO
A NEW IRON PIPE, THENCE NORTH 33-33-37 WEST FOR A DISTANCE OF
56.32 FEET TO A NEW IRON PIPE, THENCE NORTH 38-23-30 WEST FOR A
DISTANCE OF 29.33 FEET TO A NEW IRON PIPE AND CORNER WITH DAVIS,
THENCE NORTH 28-01-54 EAST FOR A DISTANCE OF 39.59 FEET TO A NEW
IRON PIPE, THENCE NORTH 28-01-54 EAST FOR A DISTANCE OF 24.80
FEET TO AN EXISTING IRON PIPE AND SOUTHEAST CORNER OF THE COOK
PROPERTY (DEED BOOK 170 PAGE 872), THENCE WITH THE EASTERN LINE
OF COOK NORTH 28-01-54 EAST FOR A DISTANCE OF 108.92 FEET TO
THE POINT AND PLACE OF BEGINNING, CONTAINING 6.775 ACRES +/-,
ACCORDING TO A SURVEY BY MUNICIPAL ENGINEERING SERVICES COMPANY,
P.A., ENTITLED "SURVEY FOR MOUNTAIN PLAZA PARTNERSHIP," DATED
DECEMBER 18, 1989.

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 2104
Huntersville, North Carolina

<u>Lease</u>:            Lease dated October 31, 1995 between Northcross Land & Development Limited Partnership, as Landlord, and Winn-Dixie Charlotte, Inc., as Tenant, including Exhibits A through C and Short Form Lease

As evidenced by Short Form Lease dated October 31, 1995, recorded in Book 8541, Page 350, of the public records of Mecklenburg County, North Carolina.

<u>Amendments</u>:

Amendment to Lease dated April 4, 1996 between Northcross Land & Development Limited Partnership, as Landlord, and Winn-Dixie Charlotte, Inc., as Tenant.

Supplemental Lease dated April 24, 1997 between Northcross Land & Development Limited Partnership, as Landlord, and Winn-Dixie Charlotte, Inc., as Tenant.

Second Amendment to Lease dated January 1, 2001 between Northcross Land & Development Limited Partnership, as Landlord, and Winn-Dixie Charlotte, Inc., as Tenant, including Exhibit A-1.

<u>Premises</u>:        That certain store building and related improvements located at 9759 Sam Furr Road, Huntersville, North Carolina, Mecklenburg County.

<u>Legal Description</u>:    The Shopping Center in which the Premises is located is more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

None

<u>Amendments to Sublease(s)</u>:

None

C725381.6

Lying and being situated in Huntersville Township, Mecklenburg County, North Carolina and being more particulary described as follows:

BEGINNING at an existing iron pin marking the intersection of the northerly margin of the right-of-way of Sam Furr Road (NC Hwy. 73) (SR 2145) (100' R/W) and the westerly property line of the property conveyed to Danny L. Burris as the same is described in deed recorded in Deed Book 5383 at Page 609 in the Mecklenburg County Public Registry and running thence with the westerly property line of the aforesaid Danny L. Burris property N 10-20-23 W 711.25 feet to a point; thence N 10-20-24 W 649.85 feet to a point; thence N 52-10-30 W 858.27 feet to a point; thence S 88-31-59 W 930.45 feet to a point in the easterly margin of the right-of-way of Statesville Road (U.S. Hwy. 21) (NC Hwy. 73); thence with the easterly margin of the aforesaid right-of-way of Statesville Road five (5) calls and distances as follows: (1) S 05-53-31 E 129.66 feet to a point; (2) in a southeasterly direction with the arc of a circular curve to the left, having a radius of 10,648.16 feet (chord bearing S 08-06-59 E and distance 692.34 feet), an arc distance of 692.46 feet to a point; (3) S 09-58-46 E 445.79 feet to a point; (4) N 80-00-50 E 10.00 feet to a point; and (5) S 09-59-25 E 25.33 feet to a point in the northerly property line of the property conveyed to First Union National Bank as the same is described in deed recorded in Deed Book 7133 at Page 751 in the aforesaid Public Registry; thence with the northerly, easterly, southeasterly and southerly property lines of the aforesaid First Union National Bank property four (4) calls and distances as follows: (1) N 80-01-14 E 190.98 feet to a point; (2) S 10-14-13 E 187.67 feet to a point; (3) S 52-01-16 E 51.23 feet to a point; and (4) S 37-58-44 W 238.55 feet to a point in the southwesterly margin of the aforesaid right-of-way of Statesville Road; thence with the southwesterly margin of the aforesaid right-of-way of Statesville Road S 52-02-16 E 36.51 feet to a point in the northerly margin of the right-of-way of Sam Furr Road (NC Hwy. 73) (SR 2145) (100' R/W); thence with the northerly margin of the aforesaid right-of-way of Sam Furr Road S 84-03-30 E 262.14 feet to a point in the westerly property line of the property conveyed to Sam Nafisi as the same is described in deed recorded in Deed Book 7380 at Page 129 in the aforesaid Public Registry; thence with the aforesaid Sam Nafisi property four (4) calls and distances as follows: (1) N 05-56-30 E 184.24 feet to a point; (2) S 84-03-30 E 235.12 feet to a point; (3) S 09-58-38 E 83.15 feet to a point; and (4) S 05-56-30 W 104.28 feet to a point in the northerly margin of the aforesaid right-of-way of Sam Furr Road; thence with the northerly margin of the aforesaid right-of-way of Sam Furr Road four (4) calls and distances as follows: (1) S 84-03-30 E 228.81 feet to a point; (2) S 05-56-30 W 14.97 feet to a point; (3) S 84-03-30 E 237.48 feet to a point; and (4) S 84-07-02 E 529.30 feet to a point, the POINT OR PLACE OF BEGINNING, containing 56.6463 acres, all as shown on survey prepared by James J. Cobb, N.C.R.L.S., reference to which survey is hereby made for a more particular description.

SAVE AND EXCEPT therefrom, that certain parcel of land more particularly described as follows:

TO ARRIVE AT THE POINT OF BEGINNING, COMMENCE AT AN IRON PIN SITUATED ON THE NORTHERN RIGHT OF WAY LIMIT OF SAM FURR ROAD (NC HIGHWAY NO. 73), THENCE ALONG THE LINE COMMON TO THE LANDS OF DANNY L. BURRIS AS DESCRIBED IN DEED BOOK 5383 PAGE 609 AND NORTHCROSS LAND & DEVELOPMENT LIMITED PARTNERSHIP AS DESCRIBED IN DEED BOOK 7859 PAGE 573; NORTH 10'20'23" WEST, A DISTANCE OF 287.25 FEET TO THE POINT OF BEGINNING OF THE LAND TO BE DESCRIBED, SAID POINT BEING DESIGNATED BY A NEW IRON PIN; THENCE CONTINUING WITH SAID LINE, NORTH 10'20'23"  WEST, A DISTANCE OF 424.00 FEET TO A NEW IRON PIN; THENCE WITH THE FOLLOWING FOURTEEN NEW COURSES, WITH SAID POINTS BEING DESIGNATED BY NEW IRON PINS (1) SOUTH 79'39'37" WEST, A DISTANCE OF 223.35 FEET (2) SOUTH 10'20'23" EAST A DISTANCE OF 10.10 FEET; (3) SOUTH 79'39'37" WEST, A DISTANCE OF 204.83 FEET; (4) NORTH 10'20'23" WEST, A DISTANCE OF 55.07 FEET; (5) SOUTH 79'39'37" WEST, A DISTANCE OF 399.26 FEET; (6) WITH THE ARC OF A CIRCULAR CURVE TO THE RIGHT HAVING A RADIUS OF 500.00 FEET, A DISTANCE OF 219.25 FEET, SAID ARC SUBTENDED BY A CHORD OF SOUTH 06'07'52" EAST, 217.50 FEET; (7) SOUTH 06'06'53" WEST, A DISTANCE OF 233.22 FEET; (8) SOUTH 84'03'30" EAST, A DISTANCE OF 293.36 FEET; (9) NORTH 10'20'23" WEST, A DISTANCE OF 40.32 FEET; (10) NORTH 79'39'37" EAST, A DISTANCE OF 122.27 FEET; (11) NORTH 05'52'58" EAST, A DISTANCE OF 91.76 FEET; (12) NORTH 79'39'37" EAST, A DISTANCE OF 286.05 FEET; (13) SOUTH 10'20'23" EAST, A DISTANCE OF 74.67 FEET; (14) NORTH 79'39'37" EAST, A DISTANCE OF 193.91 FEET TO THE POINT OF BEGINNING; CONTAINING 8.3361 ACRES MORE OR LESS, AND BEING A PORTION OF THE NORTHCROSS LAND AND DEVELOPMENT LIMITED PARTNERSHIP PROPERTY AS DESCRIBED IN DEED BOOK 7659 PAGE 573.

EXHIBIT A-3
To Asset Purchase Agreement

LIST OF SHOPPING CENTERS

| Store No. | Name of Shopping Center |
|---|---|
| 805 | Brier Creek Parkway |
| 851 | North Ridge Shopping Center |
| 2014 | Wedding Corners |
| 2022 | High Point Mall |
| 2039 | Garden Creek Center |
| 2040 | Forest Oaks Shopping Center |
| 2061 | New Market Square |
| 2090 | Highland Commons |
| 2104 | Northcross Shopping Center |

C725381.6

EXHIBIT B
To Asset Purchase Agreement

<u>Form of Bill of Sale</u>

**<u>BILL OF SALE</u>**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("<u>Seller</u>"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 200___, between Harris Teeter, Inc., a North Carolina corporation, ("<u>Buyer</u>") and Seller (the "<u>Agreement</u>"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Leases and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached <u>Schedule A</u>.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement.  All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

C725381.6

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 200____.

"SELLER"

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

By: _____

Name: _____

Title: _____

C725381.6

**EXHIBIT C-1**
**To**
**Asset Purchase Agreement**
**FORM OF CLOSING STATEMENT**

**CLOSING STATEMENT SUMMARY**

**BUYER:**                    Harris Teeter, Inc., a North Carolina corporation

**SELLER:**                   Winn-Dixie Raleigh, Inc., a Florida corporation

**ESCROW AGENT and**          _____
**SETTLEMENT AGENT:**

**PROPERTIES[1]:**            Store No. 805, 851, 2014, 2022, 2039, 2040, 2061, 2090, 2104

**CLOSING DATE:**             _____, 2005

---

**SELLER'S STATEMENT**

| | | |
|---|---|---|
| I. | **BASE PURCHASE PRICE:** | $_____ |
| II. | **SUPPLIES PRICE:** | $_____ |
| III. | **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | $_____ |
| A. | **NET CREDIT/DEBIT TO SELLER:** | ($_____)      or $_____ |
| B. | **TOTAL CLOSING COSTS PAYABLE BY SELLER:** | ($_____) |

**AMOUNT DUE SELLER**                    $_____

**BUYER'S STATEMENT**

| | | |
|---|---|---|
| I. | **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | $_____ |
| A. | **NET CREDIT/DEBIT TO BUYER:** | ($_____)      or $_____ |

---

[1] Itemized individual Closing Statements for each Property are attached

Exhibit C-1
Page 1 of 10

C725381.6

**B.    TOTAL CLOSING COSTS PAYABLE BY**        ($_____)
**BUYER:**

**C    BASE DEPOSIT**                          ($_____)

**AMOUNT DUE FROM BUYER**                                    $_____

## TOTAL DISBURSEMENTS[2]

| | | |
|---|---|---|
| 1. | Base Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |

**TOTAL RECEIPTS:**                                         $_____

| | | |
|---|---|---|
| 1. | Seller's Brokers Fees | ($_____) |
| 2. | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($_____) |
| 3. | Inventory Service Fees | |
| 4. | Seller's Cure Costs | ($_____) |
| 5. | Seller's Proceeds | |
| [6.] | [Other] | ($_____) |

**TOTAL DISBURSEMENTS:**

## STIPULATIONS

1.  Purchase Agreement.  This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").  Attached hereto are individual itemized closing statements for each of the Properties covered by the Purchase Agreement.

2.  Authorization to Disburse.  By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____

_____

_____

3.  Counterparts.  This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.  To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature

---

[2] Refer to Individual Property Closing Statement for Itemization.

Exhibit C-1
Page 2 of 10

pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. <u>Adjustments</u>.    Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                        **BUYER:**

**WINN-DIXIE  RALEIGH, INC.**,            **HARRIS TEETER, INC.**,
a Florida corporation                          a North Carolina corporation

By: _____     By: _____

Name: _____     Name: _____

Title: Vice President                          Title: _____

_____

Exhibit C-1
Page 3 of 10

C725381.6

## <u>INDIVIDUAL PROPERTY CLOSING STATEMENT</u>

**BUYER:**                    _____, a _____

**SELLER:**                   Winn-Dixie _____, Inc., a Florida corporation

**ESCROW AGENT and**          _____
**SETTLEMENT AGENT:**

**Property:**                 Store No. _____, _____, _____, _____

**CLOSING DATE:**             _____, 2005

## <u>SELLER'S STATEMENT</u>

**ALLOCATED BASE PURCHASE**
**PRICE:**

Leasehold:                                                       $_____

FF&E:                                                            $_____

TOTAL BASE PURCHASE PRICE**:**                                   **$_____**

**SUPPLIES PRICE:**                                              **$_____**

**TOTAL ALLOCATED  BASE**
**PURCHASE PRICE AND SUPPLIES**
**PRICE:**                                                       **$_____**

<u>**Less Adjustments (Debit)**</u>**:**

Seller's Prorated Share of Taxes and          $_____
Other Charges Payable Under Leases (1)

Buyer's Prorated Share of Rents Paid in       $_____
Advance **[Under Subleases (2)]**

Environmental Report Costs Paid by            $_____
Seller (amounts in excess of $3,000 per
Store)

**Total Debit Adjustments:**                  $_____

<u>**Plus Adjustments (Credit):**</u>                               $_____

Exhibit C-1
Page 4 of 10

C725381.6

Seller's Prorated Share of Rents and
Other Charges Paid in Advance Under
Leases (3)                                                              $_____

Environmental Report Costs Paid by
Seller, up to $3,000 per Store

[Other]                                                                 $_____

  **Total Credit Adjustments:**                                $_____

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs               $_____

Seller's Brokerage Fees                        $_____

Cure Costs                                     $_____

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER**                                                $_____


**<u>BUYER'S STATEMENT</u>**

**ALLOCATED BASE PURCHASE**                    $_____
**PRICE:**

**SUPPLIES PRICE:**                            $_____

**TOTAL ALLOCATED  BASE**
**PURCHASE PRICE AND SUPPLIES**
**PRICE:**                                                              $_____

**<u>Less Adjustments (Credit):</u>**

Allocated Amount of Base Deposit                                        $_____

Seller's Prorated Share of Rents and                                   $_____
Other Charges Paid in Advance Under
Leases (1)

[Other]                                                                 $_____

**Total Debit Adjustments:**

Exhibit C-1
Page 5 of 10

**Plus Adjustments (Debit):**                                         $_____

Seller's Prorated Share of Rents and          $_____
Other Charges Paid in Advance Under
Leases (3)

Environmental Report Costs, up to $3,000      $_____
per Store

[Other]                                        $_____

  **Total Credit Adjustments:**                              $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs               $_____

Title Insurance Premiums(4)                   $_____

Title Examination Fees                        $_____

Transfer/Documentary Taxes                    $_____

Closing Escrow Fees                           $_____

Inventory Service Fees(8)                     $_____

**Total Buyer's Closing Costs:**              $_____

**AMOUNT DUE FROM BUYER**                                    $_____

**ALLOCATED AMOUNT OF BASE**                                $_____
**DEPOSIT**

**TOTAL AMOUNT DUE AT CLOSING**                             $_____


## SCHEDULE OF DISBURSEMENTS

1.    Allocated Amount of Base Deposit from Escrow Agent      $_____
2.    Amount Due From Buyer                                   $_____

**TOTAL RECEIPTS:**                                          $_____

1.    The Blackstone Group L.P.                             ($_____)
      (Seller's Brokers Fees)
2.    The Food Partners, LLC                                ($_____)
      (Seller's Brokers Fees)

Exhibit C-1
Page 6 of 10

| | | |
|---|---|---|
| 3. | DJM Asset Management, LLC | ($_____) |
| | (Seller's Brokers Fees) | |
| 4. | _____ Title Insurance Company | ($_____) |
| | Title Premiums, Title Examination Fees and related | |
| | Costs, Recording and Escrow Fees | |
| 5. | _____ | |
| | Transfer/Documentary Taxes | |
| 6. | **[Name of Inventory Service]** | ($_____) |
| | (Inventory Service Fees) | |
| 7. | _____ | ($_____) |
| | (Lease Cure Costs, if any) | |
| 8. | _____ | ($_____) |
| | (Sublease Cure Costs, if any) | |
| 9. | Seller | ($_____) |
| | (Seller's Proceeds) | |
| [10.] | [Other] | ($_____) |

**TOTAL DISBURSEMENTS:**


**Notes:**

(1)　　<u>2005 Prorations - Amounts Not Yet Paid and Payable</u>.  Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with applicable leases.  Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store #_____

- 2005 Real Estate Taxes $
- Per Diem Tax Amount $
- Seller's Share of 2005 Taxes
　(1/1/05 - __/___/05) (_____ days)　$_____　　　_____

**Total Real Estate Taxes:**


**Personal Property Taxes**

Store #_____

- 2005 Personal Property Taxes $
- Per Diem Tax Amount $
- Seller's Share of 2005 Taxes
　(1/1/05 - __/___/05) (_____ days)　$_____　　　_____

**Total Personal Property Taxes:**


**CAM Charges**

Exhibit C-1
Page 7 of 10

Store # _____
- 2005 CAM Charges                              $
- Per Diem Amount                               $
- Seller's Share of 2005 CAM Charges
  (__/__/__ - __/__/05) (_____ days)           $ _____                    _____
**Total CAM Charges:**

**Insurance**

Store # _____
- 2005 Insurance                                $
- Per Diem Amount                               $
- Seller's Share of 2005 Insurance
  (__/__/__ - __/__/05) (_____ days)           $ _____
**Total Insurance:**
**Total Amount of Seller's Prorated**
**Share   of 2005 Prorations:**                                                 _____

(2)      _____, 2005 Sublease Prorations - Amounts Previously Received by
Seller.  Prorations are based on _____, 2005 rents previously paid to
Seller in accordance with applicable subleases.  Buyer will be responsible for
the collection of such charges that become due and payable for _____,
2005 and thereafter.  Prorations are as follows:

Store # _____
- Total _____, 2005 rent paid:             $
- Per diem rent:                                $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)           $ _____

**Total Amount of Seller's Prorated Share of _____  Prorations:**

(3)      _____, 2005 Prorations - Amounts Previously Paid by Seller.  Prorations
are based on _____, 2005 rents, common area maintenance
assessments and other charges previously paid by Seller in accordance with
applicable leases.  Buyer will be responsible for the payment of such charges
that become due and payable for _____, 2005 and thereafter.
Prorations are as follows:

**Rent**

Store # _____
- Total _____, 2005 rent paid:             $
- Per diem rent:                                $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)           $ _____

Exhibit C-1
Page 8 of 10

C725381.6

- Per diem rent:                                    $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)        $_____   _____

**Total Amount of Buyer's Prorated Share of _____ Prorations:**


(4)    <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title
examination fees and title insurance premiums, are as follows:

<u>Store #_____</u>
- Title Search Fees and Costs              $              -
- Title Premium                            $_____  -

 **Total Amount of Title Fees and Expenses:**


(5)    <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller
directly by the respective utility companies.  Seller will be responsible for
payment of any portion of any utility charges attributable to utility service
(including telephone service) provided through and including the date hereof.
Buyer will be responsible for payment of any new utility deposits which may be
assessed by the respective utility companies and for payment of any portion of
such utility charges attributable to utility service provided subsequent to the
date hereof.  The party responsible for each share of such utility charges will
pay such charges promptly and without demand therefor.  Each party agrees
to indemnify and hold harmless the other party from and against liability for
payment of the first party's share of such utility charges.


(6)    <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not
determinable as of the Closing Date or reflected on this Closing Statement will
be taken into account at the Closing based on good faith estimates with the
actual amount to be calculated by Seller and Buyer as soon as practicable
after the actual amounts are determinable with an appropriate adjustment to
be paid by the appropriate party promptly after determination.  Seller and
Buyer also acknowledge and agree to execute any documents necessary to
correct any errors or omissions in the Closing Statement with an appropriate
adjustment to be paid by the appropriate party promptly after determination.
Buyer agrees that it will timely make all required notifications to appropriate
taxing authorities to effect the change in party responsible for taxes.


Exhibit C-1
Page 9 of 10

C725381.6

(7)     <u>Inventory Purchase Price and Adjustments</u>.   To the extent Inventory has acquired inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement  between Seller and Buyer dated as of even date herewith.  Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

(8)     <u>Inventory Service Fees</u>. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices.  Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs.  In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store.  Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)     <u>Capitalized Terms</u>.  Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

Exhibit C-1
Page 10 of 10

C725381.6

Exhibit C-2

To Asset Purchase Agreement

Form of Inventory Closing Statement

**INVENTORY CLOSING STATEMENT**

**SELLER**         Winn-Dixie _____, Inc., a Florida corporation

**BUYER:**         _____ a _____

**TRANSACTION:**     Acquisition of Leasehold Interest  in Store _____, _____, _____

**BASE PURCHASE PRICE:**  Under Separate Closing Statement

**INVENTORY PRICE (2):**

|  | Store _____ | $ |
|---|---|---|
|  | Store _____ | $ |
|  | Store _____ | $ |
|  | Store _____ | $ _____ |

    **Total Aggregate Inventory Price:**  $

**CLOSING DATE:**      _____, 2005

**SELLER'S STATEMENT**

**Inventory Price**              $

**Less Adjustments:**

  1.   Ten Percent of Inventory Price

      Retained by Escrow Agent  $ _____

      **Total Adjustments:**  $     $ (   )

**TOTAL AMOUNT DUE TO SELLER:**     $ _____

**BUYER'S STATEMENT**

**Aggregate Inventory Price**         $

**Plus Closing Costs to be Paid by Buyer:**

Exhibit C-2
Page 1 of 3

C725381.6

| | | | |
|---|---|---|---|
| 1. | Inventory Service Fees (3) (Direct Payment or Reimbursement to Seller) | | $ |
| | **Total Buyer's Inventory Closing Costs:** | $ | $ |

**AMOUNT DUE FROM BUYER:**                                                    $

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this day of July, 2004, and hereby authorize **[Title Insurer],** as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**BUYER:**

**WINN-DIXIE RALEIGH, INC.**, a Florida Corporation

**Harris Teeter, Inc.**, a North Carolina corporation

By:_____
Name:_____
Title: _____ President

By:_____
Name:_____
Title: _____

**Notes**:

(1)     Adjustments.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

Exhibit C-2
Page 2 of 3

C725381.6

(2)     <u>Inventory Price Adjustments</u>.  The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement.  Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement.  The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period.  To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

(3)     <u>Inventory Service Fees</u>.  The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same.  Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4)     <u>Capitalized Terms</u>.   Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## <u>DISBURSEMENT SCHEDULE</u>

<u>RECEIPTS</u>:

1.     Total Amount Due From Buyer          $ _____

TOTAL CASH RECEIVED:                                    $                              $ _____

<u>DISBURSEMENTS</u>:

1.     Winn-Dixie _____, Inc.                                    $ _____
       (Seller's Proceeds and Reimbursement of Inventory
       Service Fee)

TOTAL DISBURSEMENTS:                                                      $ _____
BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT
PURSUANT TO PURCHASE AGREEMENT:                                        $

Exhibit C-2
Page 3 of 3

EXHIBIT D
To Asset Purchase Agreement

Schedule of Certain Excluded Personal Property

[to be prepared by Seller and approved by Buyer]

C725381.6

EXHIBIT E
To Asset Purchase Agreement

Base Purchase Price Allocation; Base Deposit; Inventory Deposit

| Store No. | Base Purchase Price | Base Deposit | Inventory Deposit |
|---|---|---|---|
| 2022 | $ 5,220,000 | $ 522,000 | $ 517,000 |
| 2014 | $ 3,485,000 | $ 348,500 | $ 671,000 |
| 851 | $ 3,485,000 | $ 348,500 | $ 429,000 |
| 2104 | $ 2,675,000 | $ 267,500 | $ 545,000 |
| 2040 | $ 550,000 | $ 55,000 | $ 297,000 |
| 2061 | $ 160,000 | $ 16,000 | $ 528,000 |
| 805 | $ 475,000 | $ 47,500 | $ 660,000 |
| 2039 | $ 400,000 | $ 40,000 | $ 330,000 |
| 2090 | $ 300,000 | $ 30,000 | $ 302,500 |
| **Total** | **$16,750,000** | **$1,675,000** | **$4,279,500** |

C725381.6

EXHIBIT F
To Asset Purchase Agreement

Permitted Encumbrances

1.  Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2005 and subsequent years.

2.  All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.  Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.  Rights of Landlords under the Leases, including the rights of any Landlord's mortgagee.

5.  All matters set forth as exceptions in the Initial Title Reports or the site plans, other than Monetary Liens.

6.  All other matters set forth as exceptions in those Title Reports other than the Initial Title Reports, other than Monetary Liens.

7.  All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

C725381.6

EXHIBIT G
To Asset Purchase Agreement

Form of
Lease Assignment

## ASSIGNMENT AND ASSUMPTION OF LEASE

[Store #_____, _____, _____]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 200___ (the "Effective Date"), by and between **WINN-DIXIE RALEIGH, INC.** a Florida corporation (hereinafter referred to as "Assignor"), and **HARRIS TEETER, INC.,** a North Carolina corporation (hereinafter referred to as "Assignee");

## R E C I T A L S :

A.   Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached <u>Exhibit A</u> (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective _____, 2005 by and among Assignor, as seller, Assignee, as buyer, as amended from time to time (the "Agreement").

B.   As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on the attached <u>Exhibit A</u> (the "Lease"), and all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, together with all amendments thereto, described on <u>Exhibit A</u> (the "Subleases"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Subleases after the Effective Date, all subject to and in accordance with the terms of the Lease, the Subleases, the Agreement and this Assignment;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.   **EFFECTIVE DATE**.  This Assignment shall be effective as of the Effective Date.

2.   **ASSIGNMENT**.

(a)   Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or

lessee thereunder.

(b)     Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to the Subleases and all the rights, benefits and privileges of the landlord or lessor thereunder.

3.     **ASSUMPTION; ACCEPTANCE OF PREMISES**.

(a)     Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b)     Assignee hereby accepts the aforesaid assignment of the Subleases and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Subleases from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Subleases on or after the Effective Date.

(c)     Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate.  Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations.   Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor.  Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4.   **NOTICES**.  All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below.  Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received  by the transmitting party if not during normal business hours for the recipient.

    If to Assignor:        Winn-Dixie _____, Inc.; Re: Store #_____
                           5050 Edgewood Court
                           Jacksonville, FL 32254-3699
                           Attn: Chief Financial Officer
                           Telefax No.: 904/783-5646

    With a copy to:        Winn-Dixie Stores, Inc.
                           5050 Edgewood Court
                           Jacksonville, FL 32254-3699
                           Attn: Office of General Counsel
                           Telefax No.: 904/783-5641

or to such other address or telefax number as Assignor may direct from time to time.

    If to Assignee:        _____
                           _____
                           _____
                           _____
                           Telefax No.: _____

or to such other address or Telefax number as Assignee may direct from time to time.

5.   **NOTICE OF ASSIGNMENT**.  On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Assignment.

6.  **BINDING EFFECT**.  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7.  **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

8.  **NO BROKERS**.  The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B.  Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment.    Except  for  Assignor's  Brokers  and  Assignee's  Brokers, respectively,  neither  Assignor  nor  Assignee  has  dealt  with  any  investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises.  Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for  brokerage  fees,  commissions  or  other  similar  costs  related  to  this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

9.  **ATTORNEYS' FEES**.  If Assignor becomes a party to any suit or proceeding affecting the Premises or involving this Assignment or Assignee's interest under this Assignment, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Assignment, or to enforce  performance  of  any  of  the  agreements,  conditions,  covenants, provisions, or stipulations of this Assignment, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand. All references in this Assignment to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment  and  appellate  levels  and  in  connection  with  bankruptcy proceedings.

10. **WAIVER OF JURY TRIAL**.  Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Subleases makes a jury determination of any dispute arising out of this Assignment,  the  Premises,  the  Lease  or  the  Subleases  undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally

waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Subleases.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

_____

Name:_____

By:_____
Name: _____
Title: Vice President

_____

Name:_____

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

EXHIBIT G
Page 5 of 8

C725381.6

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

_____, a

_____

By:_____

_____
Name:_____

Name:_____
Title:_____

_____
[SEAL]

Name:_____

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

EXHIBIT G
Page 6 of 8

Exhibit A

Description of Premises and Lease

STORE #:

STREET ADDRESS:

SHOPPING CENTER:

LEASE:

AMENDMENTS TO LEASE:

SUBLEASES:

AMENDMENTS TO SUBLEASES:

Exhibit B

<u>Schedule of Brokers</u>

<u>EXHIBIT B-1</u>

<u>ASSIGNOR'S BROKERS</u>:[3]

     The Blackstone Group L.P.
     345 Park Avenue
     New York, New York  10154

<u>EXHIBIT B-2</u>

<u>ASSIGNEE'S BROKERS</u>:

     None

---

[3]  Modify for particular transaction to reflect the area more listed brokers which is acting as Seller's Broker for the transaction.

C725381.6

EXHIBIT H
to Asset Purchase Agreement

Form of Inventory Certificate

**INVENTORY CERTIFICATE**

| | | | |
|---|---|---|---|
| Store #: _____ | | Date: _____/_____/ | |
| Store Address: | | Time: _____ : _____ AM  PM | |

| | Inventory Taken @ Retail | Valuation Percentage | Inventory @ Cost |
|---|---|---|---|
| Dry Grocery Taken @ Retail | $ | X  77.00% | $ |
| Frozen Grocery Taken @ Retail | $ | X  65.00% | $ |
| Dairy Taken @ Retail | $ | x  80.00% | $ |
| Tobacco Taken @ Retail | $ | x  82.00% | $ |
| Alcohol Taken @ Retail | $ | x  85.00% | $ |
| Packaged Lunch Meats Taken @ Retail | $ | x  68.00% | $ |
| General Merchandise Taken @ Retail | $ | x  65.00% | $ |
| Pharmaceutical Taken @ Cost | | | $ |
| Gasoline Taken @ Cost | | | $ |
| | $ | x _____% | $ |
| | $ | x _____% | $ |
| | $ | x _____% | $ |
| Total Inventory | | | $ |

_____    ____/____/____
Seller's Authorized Agent                       Date

_____    ____/____/____
Buyer's Authorized Agent                       Date