<u>LIST OF EXHIBITS</u>
<u>TO</u>
<u>ASSET PURCHASE AGREEMENT</u>
<u>BY AND BETWEEN WINN-DIXIE RALEIGH, INC. AND ALEX LEE, INC.</u>

Exhibit A-1  -  Store
Exhibit A-2  -  Description of Lease, Subleases and Leased Premises
Exhibit A-3  -  Shopping Center
Exhibit B    -  Form of Bill of Sale
Exhibit C-1  -  Form of Closing Statement
Exhibit C-2  -  Form of Inventory Closing Statement
Exhibit D    -  Schedule of Certain Excluded Personal Property
Exhibit E    -  [Intentionally Omitted]
Exhibit F    -  Permitted Encumbrances
Exhibit G    -  Form of Conveyance Instrument
Exhibit H    -  Form of Inventory Certificate
Exhibit I    -  Exceptions to Representations and Warranties of Seller
Exhibit J    -  List of Known Roof Warranties and Guaranties
Exhibit K    -  Form of Landlord's Estoppel Certificate
Exhibit L    -  Warranties and Guaranties Assignment

\\COR\433684.3

EXHIBIT A-1
To Asset Purchase Agreement

<u>Store</u>

| Store No. | Street Address | City | County | State |
|-----------|---------------|------|--------|-------|
| **805** | 8100 Brier Creek Parkway | Raleigh | Wake | North Carolina |

EXHIBIT A-2
To Asset Purchase Agreement

<u>DESCRIPTION OF LEASES SUBLEASES AND LEASED PREMISES</u>

WINN-DIXIE STORE # 805
Raleigh, North Carolina

<u>Lease</u>:          Deed of Lease dated January 14, 2002 between WD Development, LLC, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant, including Exhibits A through M, Short Form of Lease/Memo of Lease (including Exhibit A and B)

As evidenced by Short Form Deed of Lease dated January 14, 2002, recorded in Book 9253, Page 1613, of the public records of Wake County, North Carolina.

<u>Amendments</u>:

Supplemental Lease Agreement dated May 15, 2003 between WD Development, LLC, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant

<u>Premises</u>:     That certain store building and related improvements located at 8100 Brier Creek Parkway, Raleigh, North Carolina, Wake County.

<u>Legal Description</u>:    The Shopping Center in which the Premises is located is more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

None

<u>Amendments to Sublease(s)</u>:

None

## Legal Description

That certain parcel of land lying in the Cedar Fork Township, City of Raleigh, Wake County, North Carolina and being more particularly described as follows:

Beginning at a point in the Southern right of way line of Little Brier Creek Lane (variable width Public right of way), said point being North 47 degrees 08 minutes 43 seconds West a distance of 153.93 feet from a new 3/4" Outside Diameter (O.D.) iron pipe set in the said Southern right of way line of Little Brier Creek Lane at its intersection with the sight distance right of way line for Brier Creek Parkway; thence from said beginning point leaving said Southern right of way line Little Brier Creek Lane along a new 50-foot private access easement, 32.40 feet along a curve to the left having a radius of 20.00 feet, chord bearing of South 86 degrees 26 minutes 44 seconds West and a chord distance of 28.97 feet to a point; thence along said 50-foot private access easement line South 40 degrees 02 minutes 10 seconds West a distance of 393.76 feet to a point; thence along said 50-foot private access easement line 16.49 feet along a curve to the left having a radius of 10.50 feet, chord bearing of South 04 degrees 57 minutes 50 seconds East and a chord distance of 14.85 feet to a point; thence leaving said 50-foot private access easement line South 49 degrees 57 minutes 50 seconds East a distance of 173.30 feet to a point; thence South 50 degrees 48 minutes 53 seconds East a distance of 28.96 feet to a point; thence 43.36 feet along a curve to the left having a radius of 39.51 feet, chord bearing of South 82 degrees 15 minutes 04 seconds East and chord distance of 41.21 feet to a point in the Northern right of way line of Brier Creek Parkway (variable width Public right of way); thence along said Northern right of way line Brier Creek Parkway 221.87 feet along a curve to the left having a radius of 1969.86 feet, chord bearing of South 34 degrees 55 minutes 36 seconds West and chord distance of 221.75 feet to a point; thence along said Northern right of way line Brier Creek Parkway South 31 degrees 27 minutes 11 seconds West a distance of 207.41 feet to a point; thence leaving said Northern right of way line Brier Creek Parkway along a sight distance right of way line South 60 degrees 25 minutes 03 seconds West a distance of 136.13 feet to a point in the Northern right of way line of Brier Leaf Lane (variable width public right of way); thence along said Northern right of way line Brier Leaf Lane North 74 degrees 10 minutes 52 seconds West a distance of 97.20 feet to a point; thence along said Northern right of way line Brier Leaf Lane 119.35 feet along a curve to the right having a radius of 375.00 feet, chord bearing of North 65 degrees 03 minutes 53 seconds West and chord distance of 118.85 feet to an existing 1" (O.D.) iron pipe found; thence along said Northern right of way line becoming the Eastern right of way line of said Brier Leaf Lane, 637.02 feet along a curve to the right having a radius of 365.00 feet, chord bearing of North 00 degrees 15 minutes 03 seconds West and chord distance of 559.20 feet to a 1" (O.D.) iron pipe found; thence along said Eastern right of way line Brier Leaf Lane North 49 degrees 44 minutes 46 seconds East a distance of 186.35 feet to a point; thence leaving said Eastern right of way line Brier Leaf Lane South 40 degrees 15 minutes 14 seconds East a distance of 49.15 feet to a point; thence South 49 degrees 57 minutes 50 seconds East a distance of 173.71 feet to a point in a 50-foot private access easement; thence along said 50-foot private access easement 16.49 feet along a curve to the left having a radius of 10.50 feet, chord bearing of North 85 degrees 02 minutes 10 seconds east and chord distance of 14.85 feet to a point; thence along said 50-foot private access easement North 40 degrees 02 minutes 10 seconds East a distance of 398.19 feet to a point; thence along said 50-foot private access easement 31.04 feet along a curve to the left having a radius of 20.01 feet, chord bearing of North 04 degrees 23 minutes 53 seconds West and a chord distance of 28.02 feet to a new 3/4" (O.D.) iron pipe set in the said Southern right of way line of Little Brier Creek Lane; thence along said Southern right of way line Little Brier Creek Lane South 47 degrees 08 minutes 49 seconds East a distance of 90.71 feet to a point, the Point of Beginning.

Said parcel contains 7,752 Acres and is shown and delineated as "WD Parcel" on this map entitled "ALTA/ACSM LAND TITLE SURVEY FOR WD DEVELOPMENT, LLC — PARCEL "E" LOT 4 BRIER CREEK" (Sheets 1 and 2) prepared by BBM Associates, Inc. and dated December 21, 2001.

EXHIBIT A-2
Page 2 of 9

EXHIBIT A-2
Page 3 of 9

EXHIBIT A-3
To Asset Purchase Agreement

SHOPPING CENTER

| Store No. | Name of Shopping Center |
|-----------|-------------------------|
| 805 | Brier Creek Parkway |

EXHIBIT B
To Asset Purchase Agreement

<u>Form of Bill of Sale</u>

**<u>BILL OF SALE</u>**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("<u>Seller</u>"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 200___, between Alex Lee, Inc., a North Carolina corporation, ("<u>Buyer</u>") and Seller (the "<u>Agreement</u>"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Leases and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached <u>Schedule A</u>.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this \_\_\_\_\_ day of _____, 200\_\_\_.

"SELLER"

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

By: _____
Name: _____
Title: _____

<u>EXHIBIT C-1</u>
To  Asset Purchase Agreement

<u>FORM OF CLOSING STATEMENT</u>

**<u>CLOSING STATEMENT SUMMARY</u>**

**BUYER:**                                      Alex Lee, Inc., a North Carolina corporation

**SELLER:**                                    Winn-Dixie Raleigh, Inc., a Florida corporation

**ESCROW AGENT and**          Near North National Title, LLC
**SETTLEMENT AGENT:**

**PROPERTIES:**                          Store No. 805

**CLOSING DATE:**                      _____, 2005

---

**SELLER'S STATEMENT**

| | | | |
|---|---|---|---|
| I. | **BASE PURCHASE PRICE:** | | $_____ |
| II. | **SUPPLIES PRICE:** | | $_____ |
| III. | **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | | $_____ |
| A. | **NET CREDIT/DEBIT TO SELLER:** | ($_____) | or $_____ |
| B. | **TOTAL CLOSING COSTS PAYABLE BY SELLER:** | ($_____) | |

**AMOUNT DUE SELLER**                                      $_____

**BUYER'S STATEMENT**

| | | | |
|---|---|---|---|
| I. | **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | | $_____ |
| A. | **NET CREDIT/DEBIT TO BUYER:** | ($_____) | or $_____ |
| B. | **TOTAL CLOSING COSTS PAYABLE BY BUYER:** | ($_____) | |

Exhibit C-1
Page 1 of 10

**C    BASE DEPOSIT**                                                   **($_____)**

**AMOUNT DUE FROM BUYER**                                               **$_____**

### TOTAL DISBURSEMENTS[1]

1.    Base Deposit from Escrow Agent                                 $_____
2.    Amount Due From Buyer                                          $_____

**TOTAL RECEIPTS:**                                                  $_____

1.    Seller's Brokers Fees                                          ($_____)
2.    Title Premiums, Title Examination Fees and related
       Costs, Recording and Escrow Fees                             ($_____)
3.    Inventory Service Fees
4.    Seller's Cure Costs                                            ($_____)
5.    Seller's Proceeds                                             _____
[6.]   [Other]                                                       ($_____)

**TOTAL DISBURSEMENTS:**

### STIPULATIONS

1.    <u>Purchase Agreement</u>.  This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").  Attached hereto are individual itemized closing statements for each of the Properties covered by the Purchase Agreement.

2.    <u>Authorization to Disburse</u>.  By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

                         _____
                         _____
                         _____

3.    <u>Counterparts</u>.  This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.  To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4.    <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on

---
[1] Refer to Individual Property Closing Statement for Itemization.

Exhibit C-1
Page 2 of 10

the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize Near North National Title, LLC, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                    **BUYER:**

**WINN-DIXIE  RALEIGH, INC.**,                 **ALEX LEE, INC.**,
a Florida corporation                          a North Carolina corporation


By:                                            By:
_____              _____
Name:                                          Name:
_____                  _____
Title: Vice President                          Title:
                                               _____

Exhibit C-1
Page 3 of 10

## INDIVIDUAL PROPERTY CLOSING STATEMENT

**BUYER:**               _____, a _____

**SELLER:**              Winn-Dixie Raleigh, Inc., a Florida corporation

**ESCROW AGENT and**     Near North National Title, LLC
**SETTLEMENT AGENT:**

**Property:**            Store No. _____, _____, _____, _____

**CLOSING DATE:**        _____, 2005

## SELLER'S STATEMENT

**ALLOCATED BASE PURCHASE PRICE:**

Leasehold:                                                    $_____

FF&E:                                                        $_____

TOTAL BASE PURCHASE PRICE**:**                              $_____

**SUPPLIES PRICE:**                                         $_____

**TOTAL ALLOCATED  BASE PURCHASE PRICE AND SUPPLIES PRICE:**   $_____

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and          $_____
Other Charges Payable Under Leases (1)

Buyer's Prorated Share of Rents Paid in       $_____
Advance **[Under Subleases (2)]**

Environmental Report Costs Paid by            $_____
Seller (amounts in excess of $3,000 per
Store)

**Total Debit Adjustments:**                  $_____

**Plus Adjustments (Credit):**                              $_____

Seller's Prorated Share of Rents and
Other Charges Paid in Advance Under
Leases (3)                                                  $_____

Exhibit C-1
Page 4 of 10

Environmental Report Costs Paid by
Seller, up to $3,000 per Store

[Other] $_____

  **Total Credit Adjustments:** $_____

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs $_____

Seller's Brokerage Fees $_____

Cure Costs $_____

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER** $_____


**BUYER'S STATEMENT**

**ALLOCATED BASE PURCHASE
PRICE:** $_____

**SUPPLIES PRICE:** $_____

**TOTAL ALLOCATED  BASE
PURCHASE PRICE AND SUPPLIES
PRICE:** $_____

**Less Adjustments (Credit):**

Allocated Amount of Base Deposit $_____

Seller's Prorated Share of Rents and $_____
Other Charges Paid in Advance Under
Leases (1)

[Other] $_____

**Total Debit Adjustments:**

**Plus Adjustments (Debit):** $_____

Exhibit C-1
Page 5 of 10

Seller's Prorated Share of Rents and                      $_____
Other Charges Paid in Advance Under
Leases (3)

Environmental Report Costs, up to $3,000                  $_____
per Store

[Other]                                                   $_____

  **Total Credit Adjustments:**                                              $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs                           $_____

Title Insurance Premiums(4)                               $_____

Title Examination Fees                                    $_____

Transfer/Documentary Taxes                                $_____

Closing Escrow Fees                                       $_____

Inventory Service Fees(8)                                 $_____

**Total Buyer's Closing Costs:**                          $_____

**AMOUNT DUE FROM BUYER**                                                 $_____

**ALLOCATED AMOUNT OF BASE**                                             $_____
**DEPOSIT**

**TOTAL AMOUNT DUE AT CLOSING**                                          $_____

## SCHEDULE OF DISBURSEMENTS

1.     Allocated Amount of Base Deposit from Escrow Agent          $_____
2.     Amount Due From Buyer                                       $_____

**TOTAL RECEIPTS:**                                                      $_____

1.     The Blackstone Group L.P.                                   ($_____)
      (Seller's Brokers Fees)
2.     The Food Partners, LLC                                      ($_____)
      (Seller's Brokers Fees)
3.     DJM Asset Management, LLC                                   ($_____)
      (Seller's Brokers Fees)

Exhibit C-1
Page 6 of 10

4.      _____ Title Insurance Company                    ($_____)
        Title Premiums, Title Examination Fees and related
         Costs, Recording and Escrow Fees
5.      _____
        Transfer/Documentary Taxes
6.      **[Name of Inventory Service]**                            ($_____)
        (Inventory Service Fees)
7.      _____                                      ($_____)
        (Lease Cure Costs, if any)
8.      _____                                      ($_____)
        (Sublease Cure Costs, if any)
9.      Seller                                                     ($_____)
        (Seller's Proceeds)
[10.]   [Other]                                                    ($_____)
**TOTAL DISBURSEMENTS:**


**Notes:**

(1)     <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>.  Prorations are based
        on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts
        paid by Seller in arrears in accordance with leases; and (ii) estimate of 2005
        insurance charges derived from actual 2004 amounts paid by Seller in arrears
        in accordance with applicable leases.  Buyer will be responsible for the
        payment of such charges for 2005 and subsequent years.
        **Real Estate Taxes**
        Store #_____
        - 2005 Real Estate Taxes                       $
        -  Per Diem Tax Amount                         $
        -  Seller's Share of 2005 Taxes
           (1/1/05 - __/__/05) (_____ days)           $_____        _____
        **Total Real Estate Taxes:**

        **Personal Property Taxes**
        Store #_____
        - 2005 Personal Property Taxes                 $
        -  Per Diem Tax Amount                         $
        -  Seller's Share of 2005 Taxes
           (1/1/05 - __/__/05) (_____ days)           $_____        _____
        **Total Personal Property Taxes:**

        **CAM Charges**
        Store #_____
        - 2005 CAM Charges                             $

Exhibit C-1
Page 7 of 10

- Per Diem Amount                                      $
- Seller's Share of 2005 CAM Charges
  (__/__/__ - __/__/05) (_____ days)        $_____                    _____
**Total CAM Charges:**

**Insurance**

Store #_____
- 2005 Insurance                                      $
- Per Diem Amount                                     $
- Seller's Share of 2005 Insurance
  (__/__/__ - __/__/05) (_____ days)        $_____
**Total Insurance:**
**Total Amount of Seller's Prorated**
**Share  of 2005 Prorations:**                                                   _____

(2)      _____, 2005 Sublease Prorations - Amounts Previously Received by
         Seller.  Prorations are based on _____, 2005 rents previously paid to
         Seller in accordance with applicable subleases.  Buyer will be responsible for
         the collection of such charges that become due and payable for _____,
         2005 and thereafter.  Prorations are as follows:

         Store #_____
         - Total _____, 2005 rent paid:          $
         - Per diem rent:                              $
         - Buyer's prorated share
           (__/__/__ - __/__/05) (_____ days)          $_____

         **Total Amount of Seller's Prorated Share of _____  Prorations:**

(3)      _____, 2005 Prorations - Amounts Previously Paid by Seller.  Prorations
         are  based  on  _____,  2005  rents,  common  area  maintenance
         assessments and other charges previously paid by Seller in accordance with
         applicable leases.  Buyer will be responsible for the payment of such charges
         that  become  due  and  payable  for  _____,  2005  and  thereafter.
         Prorations are as follows:

         **Rent**

         Store #_____
         - Total _____, 2005 rent paid:           $
         - Per diem rent:                              $
         - Buyer's prorated share
           (__/__/__ - __/__/05) (_____ days)          $_____
         - Per diem rent:                              $
         - Buyer's prorated share
           (__/__/__ - __/__/05) (_____ days)          $_____   _____

Exhibit C-1
Page 8 of 10

**Total Amount of Buyer's Prorated Share of _____ Prorations:**

(4) <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

<u>Store #_____</u>
- Title Search Fees and Costs                    $                -
- Title Premium                                          $_____-

**Total Amount of Title Fees and Expenses:**

(5) <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the respective utility companies.  Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof.  Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6) <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7) <u>Inventory Purchase Price and Adjustments</u>.  To the extent Inventory has acquired inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement  between Seller and Buyer dated as of even date herewith.  Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

Exhibit C-1
Page 9 of 10

(8)    Inventory Service Fees. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices.  Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)    Capitalized Terms.  Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

Exhibit C-1
Page 10 of 10

Exhibit C-2

To Asset Purchase Agreement

Form of Inventory Closing Statement

**INVENTORY CLOSING STATEMENT**

**SELLER**                      Winn-Dixie  Raleigh, Inc., a Florida corporation

**BUYER:**                      _____ a _____

**TRANSACTION:**            Acquisition of Leasehold Interest  in Store _____, _____, _____

**BASE PURCHASE PRICE:**     Under Separate Closing Statement

**INVENTORY PRICE (2):**

| | | |
|---|---|---|
| | Store _____ | $ |
| | Store _____ | $ |
| | Store _____ | $ |
| | Store _____ | $ _____ |

**Total Aggregate Inventory Price:**      $

**CLOSING DATE:**                _____, 2005

**SELLER'S STATEMENT**

**Inventory Price**                                          $

**Less Adjustments:**

| | | | |
|---|---|---|---|
| 1. | Ten Percent of Inventory Price | | |
| | Retained by Escrow Agent | $ _____ | |
| | **Total Adjustments:** | $ | $   (            ) |

**TOTAL AMOUNT DUE TO SELLER:**                                $

**BUYER'S STATEMENT**

**Aggregate Inventory Price**                                  $

**Plus Closing Costs to be Paid by Buyer:**

| | | |
|---|---|---|
| 1. | Inventory Service Fees (3) | _____ $ |

Exhibit C-2
Page 1 of 3

|  | | |
|---|---|---|
| (Direct Payment or Reimbursement to Seller) | | |
| **Total Buyer's Inventory Closing Costs:** | $ | $ _____ |

**AMOUNT DUE FROM BUYER:**                                                $ _____

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this day of July, 2005, and hereby authorize **[Title Insurer],** as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**BUYER:**

**WINN-DIXIE RALEIGH, INC.**, a Florida Corporation

**ALEX LEE, INC.**, a North Carolina corporation

By:_____

By:_____

Name:_____

Name:_____

Title: _____ President

Title: _____

**Notes:**

(1)     Adjustments.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(2)     Inventory Price Adjustments.  The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement.  Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement.  The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period.  To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

Exhibit C-2
Page 2 of 3

(3) <u>Inventory Service Fees</u>. The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same. Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4) <u>Capitalized Terms</u>. Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

### <u>DISBURSEMENT SCHEDULE</u>

<u>RECEIPTS</u>:

1. Total Amount Due From Buyer $ _____

TOTAL CASH RECEIVED: $ _____ $ _____

<u>DISBURSEMENTS</u>:

1. Winn-Dixie _____, Inc. $ _____
(Seller's Proceeds and Reimbursement of Inventory Service Fee)

TOTAL DISBURSEMENTS: $ _____

BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT PURSUANT TO PURCHASE AGREEMENT: $ _____

Exhibit C-2
Page 3 of 3

EXHIBIT D
To Asset Purchase Agreement

Schedule of Certain Excluded Personal Property

[to be prepared by Seller and approved by Buyer]

EXHIBIT E
To Asset Purchase Agreement

[Intentionally Omitted]

EXHIBIT F
To Asset Purchase Agreement

Permitted Encumbrances

1.      Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2005 and subsequent years.

2.      All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.      Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.      Rights of the Landlord under the Lease, including the rights of the Landlord's mortgagee.

5.      All matters set forth as exceptions in the Initial Title Reports or the site plans, other than Monetary Liens.

6.      All other matters set forth as exceptions in those Title Reports other than the Initial Title Reports, other than Monetary Liens.

7.      All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

EXHIBIT G
To Asset Purchase Agreement

Form of
Conveyance Instrument

**ASSIGNMENT AND ASSUMPTION OF LEASE**
[Store #805]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 200___ (the "Effective Date"), by and between **WINN-DIXIE RALEIGH, INC.** a Florida corporation (hereinafter referred to as "Assignor"), and **ALEX LEE, INC.,** a North Carolina corporation (hereinafter referred to as "Assignee");

**R E C I T A L S :**

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached <u>Exhibit A</u> (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective _____, 2005 by and among Assignor, as seller, Assignee, as buyer, as amended from time to time (the "Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on the attached <u>Exhibit A</u> (the "Lease"), and all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, together with all amendments thereto, described on <u>Exhibit A</u> (the "Subleases"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Subleases after the Effective Date, all subject to and in accordance with the terms of the Lease, the Subleases, the Agreement and this Assignment;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **EFFECTIVE DATE**.  This Assignment shall be effective as of the Effective Date.

2.    **ASSIGNMENT**.

(a)    Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

(b)     Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to the Subleases and all the rights, benefits and privileges of the landlord or lessor thereunder.

3.    **ASSUMPTION; ACCEPTANCE OF PREMISES**.

(a)     Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b)     Assignee hereby accepts the aforesaid assignment of the Subleases and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Subleases from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Subleases on or after the Effective Date.

(c)     Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate.  Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations.    Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor.  Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements    located    thereon,    including,    but    not    limited    to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4.    **NOTICES**.  All notices, requests, demands, and other communications required

or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below.  Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received  by the transmitting party if not during normal business hours for the recipient.

|  |  |
|---|---|
| If to Assignor: | Winn-Dixie Raleigh, Inc.; Re: Store #805 |
|  | 5050 Edgewood Court |
|  | Jacksonville, FL 32254-3699 |
|  | Attn: Chief Financial Officer |
|  | Telefax No.: 904/783-5646 |
|  |  |
| With a copy to: | Winn-Dixie Stores, Inc. |
|  | 5050 Edgewood Court |
|  | Jacksonville, FL 32254-3699 |
|  | Attn: Office of General Counsel |
|  | Telefax No.: 904/783-5641 |

or to such other address or telefax number as Assignor may direct from time to time.

|  |  |
|---|---|
| If to Assignee: | Alex Lee, Inc. |
|  | P.O. Box 800 |
|  | 120 Fourth Street SW |
|  | Hickory, North Carolina 28602 |
|  | Attn: General Counsel |
|  | Telefax No.: 828-725-4435 |

or to such other address or Telefax number as Assignee may direct from time to time.

5.    **NOTICE OF ASSIGNMENT**.  On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Assignment.

6.   **BINDING EFFECT**.  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7.   **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

8.   **NO BROKERS**.  The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B.  Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment.    Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises.  Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

9.   **ATTORNEYS' FEES**.  If Assignor becomes a party to any suit or proceeding affecting the Premises or involving this Assignment or Assignee's interest under this Assignment, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Assignment, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Assignment, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand. All references in this Assignment to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment and appellate levels and in connection with bankruptcy proceedings.

10.  **WAIVER OF JURY TRIAL**.  Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Subleases makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease or the Subleases undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally

waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Subleases.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

_____

Name:_____

By:_____
Name: _____
Title: Vice President

_____

Name:_____

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

_____, a
_____

By:_____
Name:_____
Title:_____

_____
Name:_____

[SEAL]

_____
Name:_____

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

Exhibit A

<u>Description of Premises and Lease</u>

<u>STORE #</u>:

<u>STREET ADDRESS</u>:

<u>SHOPPING CENTER</u>:

<u>LEASE</u>:

<u>AMENDMENTS TO LEASE</u>:

<u>SUBLEASES</u>:

<u>AMENDMENTS TO SUBLEASES</u>:

Exhibit B

<u>Schedule of Brokers</u>

<u>EXHIBIT B-1</u>

<u>ASSIGNOR'S BROKERS</u>:

        The Blackstone Group L.P.
        345 Park Avenue
        New York, New York  10154

        The Food Partners, LLC
        1250 Eye Street, N.W.
        Suite 850
        Washington, D.C.  20005

        DJM Asset Management, LLC
        445 Broad Hollow Road
        Suite 417
        Melville, New York  11747

<u>EXHIBIT B-2</u>

<u>ASSIGNEE'S BROKERS</u>:

        None

EXHIBIT H
To Asset Purchase Agreement

Form of Inventory Certificate

**INVENTORY CERTIFICATE**

| | | | | |
|---|---|---|---|---|
| Store #: _____ | | | Date: _____/_____/ | |
| Store Address: | | | Time: _____ : _____ AM  PM | |

| | Inventory Taken @ Retail | Valuation Percentage | Inventory @ Cost |
|---|---|---|---|
| Dry Grocery Taken @ Retail | $ | X  77.00% | $ |
| Frozen Grocery Taken @ Retail | $ | X  65.00% | $ |
| Dairy Taken @ Retail | $ | x  80.00% | $ |
| Tobacco Taken @ Retail | $ | x  82.00% | $ |
| Alcohol Taken @ Retail | $ | x  85.00% | $ |
| Packaged Lunch Meats Taken @ Retail | $ | x  68.00% | $ |
| General Merchandise Taken @ Retail | $ | x  65.00% | $ |
| Total Inventory | | | $ |

_____    ____/____/____
Seller's Authorized Agent                            Date

_____    ____/____/____
Buyer's Authorized Agent                            Date

EXHIBIT  I
To Asset Purchase Agreement

<u>Exceptions to Representations and Warranties of Seller</u>

[To Be Provided by Seller]

Exhibit I
Page 1 of 1

EXHIBIT J
To Asset Purchase Agreement

<u>List of Known Roof Warranties and Guaranties</u>

[None]

EXHIBIT K
To Asset Purchase Agreement

<u>Form of Landlord Estoppel Certificate</u>

WINN-DIXIE STORE #805

Date: _____, 2005

Winn-Dixie _____, Inc.
5050 Edgewood Court
Jacksonville, Florida  32254
Attn: _____

Alex Lee, Inc.
P.O. Box 800
120 Fourth Street SW
Hickory, North Carolina 28602
Attn: General Counsel

RE:   Store #_____, _____, _____, _____
      (the "Premises")

Ladies and Gentlemen:

        The undersigned landlord or lessor ("<u>Landlord</u>") is requested to execute this Certificate in connection with a proposed Assignment and Assumption of Lease regarding the referenced Premises (the "<u>Assignment</u>") between Winn-Dixie Raleigh, Inc., a Florida corporation ("<u>Assignor</u>") and _____ ("<u>Assignee</u>").  The undersigned acknowledges that Assignee's willingness to enter into the Assignment is based, in part, on the reliance by Assignee on the truth and accuracy of the statements made herein and Landlord understands and agrees that Assignor and Assignee will and shall be entitled to rely upon this Certificate for such purposes.  As of the date of this Certificate, Landlord hereby represents, warrants and certifies to Assignor and Assignee as follows:

        1.      <u>Lease and Tenant</u>.  Landlord is the present landlord or lessor and Assignor is the present tenant under that certain lease, as modified or amended, as more particularly described on attached <u>Exhibit A</u> (the "Lease").  The Lease is in full force and effect and has not, except as specifically stated in <u>Exhibit A</u>, been modified or amended in any manner whatsoever, and constitutes the entire agreement between the parties with respect to the Premises.  Any capitalized terms which are not otherwise defined herein shall have the meaning set forth in the Lease.

2.      <u>Notices</u>.  Tenant should send rent payments and any other monetary obligations under the Lease to the following party at the following address (which is the current address used to send rent payments): _____.
All notices from Tenant to Landlord should be sent to the following address:
_____.

3.      <u>Miscellaneous</u>.  This Certificate shall be binding upon Landlord and inure to the benefit of the Assignor and Assignee hereto and their respective heirs, representatives, successors, and assigns.  This Certificate is made and entered into under, and shall be construed according to the laws of the State in which the Premises is located.  This Certificate may not be amended except by a written instrument signed by the Landlord, Assignor and Assignee.

**[Signatures on following page]**

Signed, Sealed and Delivered
in the presence of:                                    **"LANDLORD"**

                                             _____

_____    By: _____
Name:_____    Name: _____
    Its: _____

_____    Address:
Name:_____    _____

    _____
    Attn: _____
    Fax No.: _____
    Phone No.: _____

STATE OF _____
COUNTY OF _____

      This instrument was acknowledged before me on this \_\_\_\_ day of _____
_____, 2005, by _____, the _____
of _____, a_____ _____, on behalf of
the _____.  He/she either is [   ] personally known to me, or [   ] has provided
a _____driver's license as identification.

    _____
    Print Name:_____
    Notary Public, State of _____
    My Commission No.:_____
    My Commission Expires:_____

## Exhibit A

## Description of Lease and Amendments

WINN-DIXIE STORE #_____

_____,_____, _____

Lease dated as of _____, between _____
_____, as landlord and _____, as tenant;

As evidenced by Memorandum of Lease (Short Form Lease) dated _____
recorded in Book _____, page _____, of the public records of _____
_____, County, _____;

As amended by First Amendment to lease dated _____; and

_____

_____

_____

EXHIBIT L
To Asset Purchase Agreement

<u>Form of Warranties and Guaranties Assignment</u>

[Not applicable]

Exhibit L
Page 1 of 1