06720\40153
LP I.D. No. 3
750402
Milledgeville GA

LEASE AGREEMENT

Peregrine Properties Limited Partnership,
an Iowa limited partnership authorized
to transact business in Georgia as Peregrine
Ownership and Leasing Limited Partnership
as Landlord

to

Winn-Dixie Atlanta, Inc.,
as Tenant

Dated as of August 25, 1994

8/29/94

Exhibit A

## TABLE OF CONTENTS

Page

1.  Demise of Premises; Priority of Lease . . . . . . . . .   1
    (a)  The Leased Premises . . . . . . . . . . . . . . . .   1
    (b)  Priority of Lease . . . . . . . . . . . . . . . . .   1

2.  Definitions  . . . . . . . . . . . . . . . . . . . . . .   1

3.  Title and Condition  . . . . . . . . . . . . . . . . . .   4
    (a)  Title . . . . . . . . . . . . . . . . . . . . . . .   4
    (b)  Condition of Leased Premises  . . . . . . . . . . .   4
    (c)  Assignment of Warranties, Guaranties, Indemnities .   5
    (d)  Granting of Easements . . . . . . . . . . . . . . .   5
    (e)  Conveyances for Public Purposes . . . . . . . . . .   6

4.  Use of Leased Premises; Quiet Enjoyment  . . . . . . . .   8
    (a)  Use . . . . . . . . . . . . . . . . . . . . . . . .   8
    (b)  Landlord's Covenant of Quiet Enjoyment  . . . . . .   8

5.  Term . . . . . . . . . . . . . . . . . . . . . . . . . .   8

6.  Rent . . . . . . . . . . . . . . . . . . . . . . . . . .   9
    (a)  Basic Rent  . . . . . . . . . . . . . . . . . . . .   9
    (b)  Additional Rent . . . . . . . . . . . . . . . . . .   9

7.  Net Lease; Non-Terminability . . . . . . . . . . . . . .  10
    (a)  No Abatement of Basic Rent  . . . . . . . . . . . .  10
    (b)  No Termination of Lease; No Defense to Tenant's
         Obligations . . . . . . . . . . . . . . . . . . . .  10
    (c)  Continuing Obligations of Tenant  . . . . . . . . .  10
    (d)  Tenant's Waivers  . . . . . . . . . . . . . . . . .  11

8.  Payment of Impositions; Compliance with Law  . . . . . .  11
    (a)  Impositions . . . . . . . . . . . . . . . . . . . .  11
    (b)  Compliance with Law . . . . . . . . . . . . . . . .  12

9.  Liens; Recording and Title . . . . . . . . . . . . . . .  12

10. Indemnification  . . . . . . . . . . . . . . . . . . . .  12

11. Maintenance and Repair . . . . . . . . . . . . . . . . .  12
    (a)  Maintenance . . . . . . . . . . . . . . . . . . . .  12
    (b)  Encroachments . . . . . . . . . . . . . . . . . . .  13
    (c)  Landlord's Right of Entry . . . . . . . . . . . . .  13
    (d)  Replacement Equipment . . . . . . . . . . . . . . .  13
    (e)  Hazardous Waste . . . . . . . . . . . . . . . . . .  14

12. Alterations  . . . . . . . . . . . . . . . . . . . . . .  15

i

Exhibit A

13.  Condemnation . . . . . . . . . . . . . . . . . . . . . . . .  15
     (a)  Assignment of Condemnation Award  . . . . . . . . . .  15
     (b)  Total or Substantial Condemnation . . . . . . . . . .  16
     (c)  Partial Condemnation  . . . . . . . . . . . . . . . .  17
     (d)  Landlord's Equipment Condemnation . . . . . . . . . .  18
     (e)  Proceedings . . . . . . . . . . . . . . . . . . . . .  18

14.  Insurance  . . . . . . . . . . . . . . . . . . . . . . . .  18
     (a)  Type of Insurance . . . . . . . . . . . . . . . . . .  18
     (b)  Insurance Requirements; Self-Insurance  . . . . . .  19
     (c)  Mortgagee Loss Payable Clauses; Cancellation of
          Insurance . . . . . . . . . . . . . . . . . . . . . .  20
     (d)  Payment of Premiums; Policy Replacements  . . . . .  20
     (e)  Blanket Policies  . . . . . . . . . . . . . . . . . .  20
     (f)  Casualty Loss Claims  . . . . . . . . . . . . . . . .  21
     (g)  Termination Upon Casualty . . . . . . . . . . . . . .  21

15.  Restoration  . . . . . . . . . . . . . . . . . . . . . . .  23

16.  Economic Abandonment . . . . . . . . . . . . . . . . . . .  24

17.  Substitution of Property . . . . . . . . . . . . . . . . .  25

18.  Procedure Upon Purchase  . . . . . . . . . . . . . . . . .  27
     (a)  Title to be Conveyed  . . . . . . . . . . . . . . . .  27
     (b)  Payment of Purchase Price; Conveyance Documents;
          Other Costs . . . . . . . . . . . . . . . . . . . . .  27
     (c)  Assumption of Note and Mortgage . . . . . . . . . . .  27

19.  Assignment and Subleasing  . . . . . . . . . . . . . . . .  28

20.  Permitted Contests . . . . . . . . . . . . . . . . . . . .  28

21.  Conditional Limitations; Default Provision . . . . . . .  29
     (a)  Events of Default . . . . . . . . . . . . . . . . . .  29
     (b)  Landlord's Remedies Upon Default  . . . . . . . . . .  30
     (c)  No Relief of Obligations  . . . . . . . . . . . . . .  31
     (d)  Current Damages . . . . . . . . . . . . . . . . . . .  32
     (e)  Liquidated Final Damages  . . . . . . . . . . . . . .  32

22.  Additional Rights of Landlord  . . . . . . . . . . . . . .  33
     (a)  Non-Exclusive, Cumulative Remedies  . . . . . . . . .  33
     (b)  Tenant's Waiver of Redemption . . . . . . . . . . . .  33
     (c)  Costs Upon Default and Litigation . . . . . . . . . .  33

23.  Notices  . . . . . . . . . . . . . . . . . . . . . . . . .  33

24.  Estoppel Certificate . . . . . . . . . . . . . . . . . . .  34

25.  Surrender and Holding Over . . . . . . . . . . . . . . . .  35

26.  No Merger of Title . . . . . . . . . . . . . . . . . . . .  35

Exhibit A

| | | |
|---|---|---|
| 27. | Expansion . . . . . . . . . . . . . . . . . . . . . . . . | 36 |
| 28. | Right of First Refusal . . . . . . . . . . . . . . . . . | 36 |
| 29. | Change of Control . . . . . . . . . . . . . . . . . . . | 36 |
| 30. | Miscellaneous . . . . . . . . . . . . . . . . . . . . . | 37 |
| 31. | Incorporation by Reference . . . . . . . . . . . . . . . | 38 |

        Exhibit "A" - Description of Leased Premises
        Exhibit "B" - Landlord's Equipment
        Exhibit "C" - Tenant's Equipment
        Exhibit "D" - [Reserved]
        Exhibit "E" - Basic Rent Payments
        Exhibit "F" - Purchase Prices
        Exhibit "G" - Estoppel Certificate

Location of Definitions (by paragraph numbers):

        Additional Rent - 6(b)
        Alterations - 2
        Assignment - 2
        Basic Rent - 6(a)
        Basic Rent Payment Dates - 6(a)
        Commencement Date - 5
        Condemnation - 2
        Cost - 2
        Change of Control - 29
        Default Rate - 6(b)
        Event of Default - 21(a)
        Extended Term - 5
        Guarantor - 2
        Guaranty - 2
        Impositions - 8(a)
        Improvements - 1(a)
        Initial Term - 5
        Land - 1(a)
        Landlord - introductory paragraph
        Landlord's Equipment - 1(a)
        Leased Premises - 1(a)
        Legal Requirements - 2
        Lien - 2
        Mortgage - 2
        Mortgagee - 2
        Net Award - 2
        Net Proceeds - 2
        Note - 2
        Permitted Encumbrances - 2
        Purchase and Sale Agreement - 2
        Replaced Equipment - 11(d)
        Replacement Equipment - 11(d)

iii

Requisition - 2
State - 1(a)
Substitute Assignment - 17(e)
Substitute Guaranty - 17(e)
Substitute Lease - 17(e)
Substitute Mortgage - 17(e)
Substitute Note - 17(e)
Substitute Property - 17
Substitution Date - 17
Taking - 2
Tenant - introductory paragraph
Tenant's Equipment - 1(a)
Term - 2
Termination Date - 13(b), 14(g), 16 and 29

Exhibit A

THIS LEASE AGREEMENT (this **"Lease"**), made as of this 25th day of August, 1994, by and between PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Georgia as Peregrine Ownership and Leasing Limited Partnership (**"Landlord"**), with an address of 711 High Street, Des Moines, Iowa 50392, Attn: Commercial Real Estate Loan Administration, Reference No. 750402 and WINN-DIXIE ATLANTA, INC., a Florida corporation (together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety, called **"Tenant"**), with an address of 5050 Edgewood Court, P.O. Box B, Jacksonville, Florida 32203.

In consideration of the rents and agreements herein stipulated to be paid and performed, Landlord and Tenant hereby covenant and agree as follows:

1. Demise of Premises; Priority of Lease.

(a) The Leased Premises. Landlord hereby demises and lets to Tenant, and Tenant hereby takes and leases from Landlord, for the term or terms and upon the provisions hereinafter specified, the following described property (collectively, the **"Leased Premises"**): (i) the premises described in Exhibit "A" hereto, together with all easements, rights and appurtenances thereunto belonging or appertaining (collectively, the **"Land"**); (ii) the buildings, structures and other improvements constructed and to be constructed on the Land (collectively, the **"Improvements"**); and (iii) the machinery and equipment described in Exhibit "B" hereto and installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease (collectively, the **"Landlord's Equipment"**). The machinery, equipment and fixtures described in Exhibit "C" hereto and the Tenant's trade fixtures and equipment are and remain the property of Tenant whether the same constitute real or personal property under the law of the state in which the Leased Premises are located (the **"State"**); such machinery, equipment, fixtures and trade fixtures, together with all additions and accessions thereto, substitutions therefor and replacements thereof are herein collectively called **"Tenant's Equipment"**.

(b) Priority of Lease. This Lease is prior to the lien of any Mortgage, and is made subject to the Permitted Encumbrances.

2. Definitions. For the convenience of the parties, the table of contents to this Lease contains a list of the paragraphs of this Lease in which certain terms used in this Lease are defined. Unless the context otherwise specifies or requires the following terms used in this Lease have the following meanings:

- 1 -

Exhibit A

"**Alterations**" means all changes, additions, improvements or repairs to, all alterations, reconstructions, renewals or removals of, and all substitutions or replacements for, any of the Improvements or Landlord's Equipment, whether interior or exterior, structural or non-structural, or ordinary or extraordinary.

"**Assignment**" means an assignment of this Lease and the Guaranty executed by Landlord in favor of a Mortgagee.

"**Condemnation**" means a Taking or a Requisition.

"**Cost**" means, without duplication, the aggregate actual cost paid by or on behalf of Tenant in connection with the construction and acquisition of the Leased Premises for the following items:  (i) the Land and Improvements, including site improvements, obtaining necessary easements, storm drainage, off-site road construction and utilities (including adjacent land for, and costs related to roads and utilities subsequently dedicated to municipalities) and equipment incorporated in the Improvements or constituting a functional part thereof including, without limitation, heating and air conditioning systems, plumbing and wiring, (ii) the Landlord's Equipment, including the cost of installation thereof, (iii) all fees and expenses in connection with the placement, issuance and sale of the Note and any interim financing of the Leased Premises, (iv) title transfer fees, title insurance premiums and recording expenses and taxes (including transfer taxes), (v) indirect construction costs such as capitalized interest, taxes and insurance and other allocable costs during construction and (vi) fees to and disbursements of professionals such as attorneys, architects, engineers and surveyors.

"**Guarantor**" means Winn-Dixie Stores, Inc., a Florida corporation.

"**Guaranty**" means the guaranty of this Lease, dated as of the date hereof, executed by Guarantor in favor of Landlord.

"**Leased Premises**" means the Leased Premises described in paragraph 1 and includes any part thereof.

"**Legal Requirements**" means all present and future laws, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every duly constituted governmental autho-rity or agency (but excluding those by their terms not applicable to Tenant or the Leased Premises as a result of some grandfather clause or similar provision), and all covenants, restrictions and conditions now or hereafter of

-2-

06720/40153
LP I.D. No. 3

Exhibit A

record which may be applicable to Tenant or to the Leased Premises, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of the Leased Premises, even if compliance therewith necessitates structural changes or improvements or results in interference with the use or enjoyment of the Leased Premises.

"**Lien**" means charge, encumbrance, title retention agreement, pledge, lien, security interest, mortgage and/or deed of trust.

"**Mortgage**" means a mortgage, deed of trust, deed to secure debt or similar security instrument creating a Lien on the Leased Premises in favor of a Mortgagee.

"**Mortgagee**" means a person or entity which is the holder of a Note of Landlord, secured by a Mortgage and an Assignment.

"**Net Award**" means the entire award payable by reason of a Condemnation, less any expenses incurred by Landlord, Tenant or a Mortgagee in collecting such award, and less any portion of such award retained by Tenant pursuant to paragraph 13(a)(i).

"**Net Proceeds**" means the entire proceeds of any insurance required under paragraph 14(a), together with any self-insurance payment required of Tenant, less any expenses incurred by Landlord, Tenant or a Mortgagee in collecting such proceeds or payment.

"**Note**" means a secured note or promissory note executed by Landlord in favor of Mortgagee secured by a Mortgage and an Assignment.

"**Permitted Encumbrances**" means:

(i) easements, rights-of-way, servitudes, other similar reservations, rights and restrictions and other defects and irregularities in the title to the Leased Premises, none of which materially lessens the value of the Leased Premises or materially impairs the use of the Leased Premises for the purposes held by Tenant;

(ii) matters identified as exceptions to title in the mortgagee title insurance policy delivered to and accepted by any Mortgagee on the Commencement Date;

(iii) any condemnation right reserved to or vested in any municipality or public authority with respect to the Leased Premises; and

- 3 -

06720/40153
LP I.D. No. 3

Exhibit A

(iv) any Liens for Impositions not then delinquent and any Liens of mechanics, materialmen and laborers for work or services performed or materials furnished in connection with the Leased Premises which are not then overdue or the amount or validity of which is being contested by Tenant pursuant to, and as permitted by, paragraph 20.

"**Purchase and Sale Agreement**" means the Real Estate Purchase and Sale Agreement, dated June 8, 1994, between Principal Mutual Life Insurance Company and Winn-Dixie Stores, Inc.

"**Requisition**" means any temporary requisition or confiscation of the use or occupancy of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

"**Taking**" means any taking of the Leased Premises in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of any agreement with any condemnor in settlement of or under threat of any such condemnation or other eminent domain proceeding or by any other means, or any de facto condemnation.

"**Term**" means the Initial Term, any Extended Term or the Initial Term together with any Extended Term.

3.   Title and Condition.

(a)  Title.   The Leased Premises are demised and let subject to (i) the rights of parties in possession, (ii) the existing state of title as of the Commencement Date (including, without limitation, the Permitted Encumbrances), (iii) any state of facts which an accurate survey or physical inspection of the Leased Premises might show, (iv) all Legal Requirements, and (v) the condition of the Leased Premises as of the Commencement Date, all without representation or warranty by Landlord.   Tenant has examined the title to the Leased Premises on and as of the Commencement Date and has found the same to be satisfactory for all purposes.

(b)  Condition of Leased Premises.   Tenant acknowledges that it has received the Leased Premises in good condition and repair on the Commencement Date.  LANDLORD HAS NOT MADE, AND WILL NOT MAKE, ANY INSPECTION OF THE LEASED PREMISES, AND LANDLORD LEASES, AND TENANT TAKES, THE LEASED PREMISES "AS-IS".   TENANT ACKNOWLEDGES THAT LANDLORD HAS NOT MADE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY WARRANTY OR

- 4 -

06720/40153
LP I.D. No. 3

Exhibit A

REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE LEASED PREMISES, ITS FITNESS FOR ANY USE OR PURPOSE, ITS DESIGN OR CONDITION FOR ANY USE OR PURPOSE, THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, ITS VALUE, COMPLIANCE WITH SPECIFICATIONS, LOCATION, USE, CONDITION, MERCHANTABILITY, QUALITY, DESCRIPTION, DURABILITY OR OPERATION OR LANDLORD'S TITLE THERETO; IT BEING AGREED THAT ALL RISKS INCIDENT TO ALL OF THESE MATTERS ARE TO BE BORNE BY TENANT. TENANT ACKNOWLEDGES THAT THE LEASED PREMISES ARE OF ITS SELECTION AND HAVE BEEN CONSTRUCTED TO ITS SPECIFICATIONS. TENANT HAS INSPECTED THE LEASED PREMISES AND THEY ARE SATISFACTORY TO TENANT. IN THE EVENT OF ANY DEFECT OR DEFICIENCY OF ANY NATURE IN THE LEASED PREMISES, WHETHER PATENT OR LATENT, LANDLORD SHALL HAVE NO RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING THEREFROM (INCLUDING STRICT LIABILITY IN TORT). THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN NEGOTIATED AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY REPRESENTATIONS OR WARRANTIES BY LANDLORD, EXPRESS OR IMPLIED, WITH RESPECT TO THE LEASED PREMISES, ARISING PURSUANT TO ANY LAW NOW OR HEREAFTER IN EFFECT OR OTHERWISE.

(c) Assignment of Warranties, Guaranties, Indemnities. Landlord hereby assigns, without recourse or warranty whatsoever, to Tenant, for the duration of this Lease, all Landlord's interest in all warranties (except warranties of title to the Leased Premises), guaranties and indemnities, express or implied, and similar rights which Landlord may have against any manufacturer, seller, engineer, contractor or builder in respect of the Leased Premises, including, any rights and remedies existing by contract or pursuant to the Uniform Commercial Code. So long as no default has occurred and is continuing hereunder and until the expiration or termination of this Lease, Tenant shall have the right (at its sole cost and expense) to enforce any such warranty, guaranty or indemnity in the name of Landlord or Tenant. Landlord hereby agrees to execute and deliver, at Tenant's expense, such further documents (including powers of attorney) as Tenant may reasonably request, in order that Tenant may have the full benefit of the assignment effected or intended to be effected by this paragraph and the ability to enforce such warranties, guaranties and indemnities.

(d) Granting of Easements. So long as no default has occurred and is continuing hereunder, Landlord, at the request of Tenant, will (i) grant easements and other rights in the nature of easements, (ii) release existing easements or other rights in the nature of easements which are for the benefit of the Leased Premises, (iii) execute amendments to any covenants and restrictions affecting the Leased Premises, (iv) grant party wall rights for the benefit of any land adjoining the

- 5 -

Exhibit A

Land, and (v) execute and deliver to any person any instrument appropriate to confirm or effect such grant, release or amendment, upon receipt by Landlord of a certificate of Tenant and Guarantor, signed by the President or a Vice President of Tenant and Guarantor stating:

(A) that the Leased Premises (including all related easements), following such grant, release or amendment, (1) constitutes an integrated economic unit for use as a retail grocery facility, including sufficient parking and all necessary and required utilities, (2) is a contiguous parcel of land, without gap or hiatus, (3) has adequate access to and from public highways, and (4) is not in violation of any Legal Requirement or any restrictive covenant or other agreement applicable thereto;

(B) that such grant, release or amendment will not materially lessen the value of the Leased Premises;

(C) the consideration to be received in connection with such grant, release or amendment; and

(D) that upon such grant, release or amendment, this Lease and the Guaranty shall remain in full force and effect and Tenant and Guarantor shall remain obligated under this Lease and the Guaranty without any reduction of Basic Rent, Additional Rent or any other sums payable under this Lease or the Guaranty to the same extent as if such conveyance or transfer had not been made, such easement, license, other right or privilege had not been granted, such easement or appurtenance had not been released, such party wall rights had not been granted, such release had not been granted, and such instrument had not been executed and delivered; and

(E) that Tenant will perform all of the obligations under such instrument of grant, release or amendment.

Tenant may retain any consideration up to $5,000 payable for such grant, release or amendment. Any consideration in excess of $5,000 shall be paid to Landlord.

(e) Conveyances for Public Purposes. So long as no default has occurred and is continuing hereunder, Landlord will, at Tenant's request, (i) sell, assign, convey or otherwise transfer an interest in the Leased Premises to any

- 6 -

06720/40153
LP I.D. No. 3

Exhibit A

person legally empowered to take such interest by
Condemnation, (ii) execute petitions to have the Leased
Premises annexed to any municipal corporation or utility
district, (iii) dedicate, transfer or release portions of the
Leased Premises for road, highway or other public purposes,
and (iv) execute and deliver to any person any instrument
appropriate to confirm or effect such sale, transfer,
annexation or dedication, upon receipt by Landlord of a
certificate of Tenant and Guarantor, signed by the President
or a Vice President of Tenant and Guarantor stating:

    (A)  with respect to any sale, assignment, conveyance or
other transfer pursuant to clause (i) above,
(1) the consideration being paid for such interest,
(2) that such consideration is not less than the
fair market value of such interest, as determined
by Tenant and Guarantor, and (3) such sale,
assignment, conveyance or transfer is being made in
anticipation that such interest would otherwise be
taken by Condemnation;

    (B)  that the Leased Premises (including all related
easements), following such sale, assignment,
transfer, conveyance, annexation or dedication,
(1) constitutes an integrated economic unit for use
as a retail grocery facility including sufficient
parking and all necessary and required utilities,
(2) is a contiguous parcel of land, without gap or
hiatus, (3) has adequate access to and from public
highways, and (4) is not in violation of any Legal
Requirement or any restrictive covenant or other
agreement applicable thereto;

    (C)  that such sale, assignment, transfer, conveyance,
annexation or dedication will not materially lessen
the value of the Leased Premises;

    (D)  the consideration to be received in connection with
such sale, assignment, transfer, conveyance,
annexation or dedication;

    (E)  that upon such sale, assignment, transfer,
conveyance, annexation or dedication, this Lease
and the Guaranty shall remain in full force and
effect and Tenant and Guarantor shall remain
obligated under this Lease and the Guaranty without
any reduction of Basic Rent, Additional Rent or
other sums payable under this Lease or the Guaranty
to the same extent as if such sale, assignment,
conveyance or transfer had not been made, such
petition had not been made or granted, such right-

- 7 -

06720/40153
LP I.D. No. 3

Exhibit A

> of-way, dedication, other right or privilege had
> not been granted, and such instrument had not been
> executed and delivered; and

> (F)    that Tenant will perform all of the obligations
> under such instrument of sale, assignment,
> conveyance or transfer or under such petition.

Tenant may retain any consideration up to $5,000 payable for
such sale, assignment, conveyance, transfer, dedication or
annexation.  Any consideration in excess of $5,000 shall be paid to
Landlord.

4.    Use of Leased Premises; Quiet Enjoyment.

(a) Use.  The Leased Premises may be used as a retail
facility in the business of Tenant or for any other lawful
purpose, except that the Leased Premises shall not be used for
any purpose which shall violate any Legal Requirement, any
insurance policy in effect with respect to the Leased
Premises, or any covenants, restrictions or agreements
applicable to the Leased Premises or constitute a public or
private nuisance or waste.

(b) Landlord's Covenant of Quiet Enjoyment.  So long as
no Event of Default exists hereunder, Landlord covenants to do
no act to disturb the peaceful and quiet occupation and
enjoyment of the Leased Premises by Tenant, provided that
Landlord or any Mortgagee may enter upon and examine the
Leased Premises at reasonable times and upon reasonable notice
to Tenant.

5.    Term.  Subject to the provisions hereof, Tenant shall
have and hold the Leased Premises for an initial term (the "Initial
Term") commencing on September 2, 1994 (the "Commencement Date"),
and ending on August 31, 2014.  So long as no Event of Default then
exists hereunder, Tenant shall have the option to extend the Term
as provided below for 6 additional terms (each an "Extended Term")
of 5 years each by giving notice to Landlord not less than 6 months
prior to the expiration of the then current Term.  If Tenant does
not give any such notice to extend to Landlord in a timely fashion,
the Term shall automatically terminate at the end of the then
current Term.  Any such Extended Term shall be subject to all of
the provisions of this Lease, all of which shall continue in full
force and effect.  If Tenant does not exercise an option for an
Extended Term, Landlord shall have the right during the remainder
of the then current Term (i) to advertise the availability of the
Leased Premises for sale or for reletting, and to erect upon the
Leased Premises signs indicating such availability (provided that
such signs do not unreasonably interfere with the use of the Leased
Premises by Tenant), and (ii) to show the Leased Premises to

- 8 -

prospective purchasers or tenants at reasonable times during normal business hours upon reasonable notice to Tenant. If Tenant shall fail to timely exercise its right to extend the Term for any Extended Term, then Tenant's right to extend the Term for any further Extended Terms shall terminate and be null and void.

6.    Rent.

    (a) Basic Rent.  Tenant shall pay to Landlord, as rent for the Leased Premises during the Term, the amounts (the "Basic Rent") determined in accordance with the schedule set forth in Exhibit "E" hereto, commencing on December 1, 1994, and continuing on the first day of each March, June, September and December thereafter during the Term, except that the last payment of the Initial Term (if there is no Extended Term) or the last payment of the final Extended Term shall be made on the last August 31 occurring during such Term (the said days being herein called the "Basic Rent Payment Dates").  Tenant shall pay the Basic Rent to Landlord at Landlord's address set forth above, or at such other place or to such other person as Landlord from time to time may designate to Tenant in writing, in funds which at the time of such payment shall be legal tender for the payment of public or private debts in the United States of America.  Basic Rent for the period from the Commencement Date through November 30, 1994, shall be in the amount of $64,350.71 and shall be paid on December 1, 1994.

    (b) Additional Rent.  Tenant shall pay and discharge when the same shall become due, as additional rental (the "Additional Rent"), all other amounts and obligations which Tenant assumes or agrees to pay or discharge pursuant to this Lease, together with every fine, penalty, interest and cost which may be added for nonpayment or late payment thereof.  In the event of any failure by Tenant to pay or discharge any of the foregoing, Landlord shall have all rights, powers and remedies provided herein, by law or otherwise, in the event of nonpayment of Basic Rent.  If any instalment of Basic Rent is not paid within 5 business days after the due date thereof, Tenant shall pay to Landlord, as a late charge and as Additional Rent, an amount equal to 2% of the amount of such installment.  Tenant shall also pay to Landlord on demand, as Additional Rent, interest at 9.91% per annum (the "Default Rate") (i) on all overdue installments of Basic Rent from (x) 5 days after the due date thereof with respect to the first such overdue instalment in any 12-month period and (y) the due date thereof with respect to any subsequent overdue instalment in such 12-month period, in each case until paid in full, and (ii) on all overdue amounts of Additional Rent which Landlord or Mortgagee shall have paid on behalf of Tenant, from the date of payment thereof by Landlord or Mortgagee, until paid in full.

- 9 -

Exhibit A

7.   Net Lease; Non-Terminability.

(a)   No Abatement of Basic Rent.   This Lease is a net
lease, and Basic Rent, Additional Rent and all other sums
payable hereunder by Tenant shall be paid without notice or
demand, and without setoff, counterclaim, recoupment,
abatement, suspension, deferment, diminution, deduction,
reduction or defense.

(b)   No Termination of Lease; No Defense to Tenant's
Obligations.   This Lease shall not terminate nor shall Tenant
have any right to terminate this Lease (except as expressly
provided in paragraphs 13(b), 14(g), 16 and 17) nor shall
Tenant be entitled to any setoff, counterclaim, recoupment,
abatement, suspension, deferment, diminution, deduction,
reduction or defense of or to Basic Rent, Additional Rent or
any other sums payable under this Lease (except as expressly
provided in paragraph 15), nor shall the obligations of Tenant
under this Lease be affected, any present or future law to the
contrary notwithstanding, by reason of:  (i) any damage to or
destruction of the Leased Premises by any cause whatsoever,
(ii) any Condemnation, (iii) the prohibition, limitation or
restriction of Tenant's use of the Leased Premises, (iv) any
eviction by paramount title or otherwise, (v) Tenant's
acquisition of ownership of the Leased Premises other than
pursuant to paragraphs 13(b), 14(g), 16 or 17, (vi) any
default on the part of Landlord hereunder or under any other ·
agreement, (vii) any latent or other defect in, or any theft
or loss of, the Leased Premises, (viii) the breach of any
warranty of any seller or manufacturer of any of the
Landlord's Equipment, or (ix) any other cause whether similar
or dissimilar to the foregoing.   It is the intention of the
parties hereto that the obligations of Tenant hereunder shall
be separate and independent covenants and agreements, and that
Basic Rent, Additional Rent and all other sums payable by
Tenant hereunder shall continue to be payable in all events
and that the obligations of Tenant hereunder shall continue
unaffected for any reason, unless the requirement to pay or
perform the same shall have been terminated pursuant to an
express provision of this Lease.

(c)   Continuing Obligations of Tenant.   Tenant agrees
that it shall remain obligated under this Lease in accordance
with its provisions and that (except as otherwise expressly
provided in paragraphs 13(b), 14(g), 16 and 17), it shall not
take any action to terminate, rescind or avoid this Lease,
notwithstanding (i) the bankruptcy, insolvency,
reorganization, composition, readjustment, liquidation,
dissolution, winding-up or other proceeding affecting
Landlord, or (ii) any action with respect to this Lease
(including the disaffirmance hereof) which may be taken by

- 10 -

Exhibit A

Landlord in any proceeding under the Federal Bankruptcy Act or any similar federal or state law, or by any trustee, receiver or liquidator of Landlord or by any court in any such proceeding.

(d) <u>Tenant's Waivers</u>. Tenant waives all rights which may now or hereafter be conferred by law (i) to quit, terminate or surrender this Lease or the Leased Premises, and (ii) to any setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease, except as otherwise expressly provided herein.

## 8. Payment of Impositions; Compliance with Law.

(a) <u>Impositions</u>. Subject to the provisions of paragraph 20, Tenant shall, before interest or penalties are due thereon, pay and discharge the following whether the same became due and payable before, on or after the Commencement Date (collectively, the "Impositions"): all taxes (including gross rental taxes), assessments, levies, fees, water and sewer rents and charges, utilities and communications taxes and charges and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are, at any time, prior to or during the Term, imposed upon or assessed against (i) the Leased Premises, (ii) any Basic Rent, Additional Rent or other sum payable hereunder, (iii) this Lease, the leasehold estate created hereby, or (iv) the acquisition, occupancy, leasing, use or possession of the Leased Premises (including without limitation, any gross income tax, gross rental tax, sales tax, use tax or excise tax). Tenant shall have no obligation to pay federal, state or local (x) franchise, capital stock or similar taxes, of Landlord, (y) net income, net rental, excess profits or other taxes, of Landlord, or (z) any estate, inheritance, succession, gift, capital levy or similar tax unless such taxes referred to in clauses (x) and (y) above, are in lieu of, or a substitute for, any tax, assessment, levy or charge which, if it were in effect on the Commencement Date, would be payable by Tenant. If any assessment may be paid in installments, Tenant shall have the option to pay such assessment in installments; in such event, Tenant shall be liable only for those installments which become due and payable during the Term. Tenant shall prepare and file all tax reports required by governmental authorities which relate to the Impositions. Tenant shall, within 90 days after payment thereof, deliver to Landlord copies of all receipts for payment of Impositions.

- 11 -

06720/40153
LP I.D. No. 3

Exhibit A

(b) <u>Compliance with Law</u>. Subject to the provisions of paragraph 20, Tenant shall at all times comply with and cause the Leased Premises to comply with and conform to all Legal Requirements, all contracts (including insurance policies), agreements and restrictions applicable to the Leased Premises or its ownership, occupancy or use, including those which require structural, unforeseen or extraordinary changes to the Leases Premises.

**9.    LIENS; RECORDING AND TITLE.    TENANT SHALL NOT, DIRECTLY OR INDIRECTLY, CREATE OR PERMIT TO BE CREATED OR TO REMAIN, AND SHALL PROMPTLY DISCHARGE, ANY LIEN (WHETHER CREATED OR ARISING BEFORE, ON OR AFTER THE COMMENCEMENT DATE) ON THE LEASED PREMISES OR ANY BASIC RENT, ADDITIONAL RENT OR ANY OTHER SUMS PAYABLE BY TENANT UNDER THIS LEASE, WHICH ARISES OR EXISTS FOR ANY REASON, OTHER THAN THE MORTGAGE, THE ASSIGNMENT, PERMITTED ENCUMBRANCES AND ANY LIEN CREATED BY OR RESULTING FROM ANY ACT BY LANDLORD NOT CONSENTED TO BY TENANT. NOTICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE LIABLE FOR ANY LABOR, SERVICES OR MATERIALS FURNISHED OR TO BE FURNISHED TO TENANT, OR TO ANYONE HOLDING THE LEASED PREMISES THROUGH OR UNDER TENANT, AND THAT NO MECHANICS' OR OTHER LIENS FOR ANY SUCH LABOR, SERVICES OR MATERIALS SHALL ATTACH TO OR AFFECT THE INTEREST OF LANDLORD IN THE LEASED PREMISES.**

10.    <u>Indemnification</u>.    Tenant agrees, at its sole cost and expense, to pay, protect, indemnify, save and hold harmless Landlord and Mortgagee from and against any and all liabilities, losses, damages, penalties, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature whatsoever, howsoever caused, arising from (i) any injury to, or death of, any person, or any loss of, or damage to, any property on the Leased Premises, or on adjoining sidewalks, streets or ways, or connected with the use, condition or occupancy thereof (unless caused by the gross negligence or willful misconduct of Landlord or Mortgagee), whether or not Landlord or Mortgagee has or should have knowledge or notice of the defect or conditions causing or contributing to such injury, death, loss or damage, (ii) any violation by Tenant of any provision of this Lease, of any contract or agreement to which Tenant is a party or by which it is bound, affecting this Lease or the Leased Premises, or (iii) any contest referred to in paragraph 20. The obligations of Tenant under this paragraph shall survive the expiration or termination of this Lease.

11.    <u>Maintenance and Repair</u>.

(a)    <u>Maintenance</u>. Tenant shall at all times (i) maintain the Leased Premises and adjoining sidewalks, streets and ways in safe condition, and in good repair and appearance (except for ordinary wear and tear), (ii) maintain the Landlord's Equipment in good mechanical condition, and (iii) promptly

- 12 -

make all structural changes and repairs to the Leased Premises (including shoring of walls and foundations to insure safe condition) of every kind and nature, whether foreseen or unforeseen, which may be required by any Legal Requirement or for the safety of the Leased Premises, and (iv) keep and maintain the Land, Improvements and Landlord's Equipment in such good repair and appearance as they were on the Commencement Date (except for ordinary wear and tear). Landlord shall not be required to maintain, repair or rebuild the Leased Premises in any way, and Tenant hereby expressly waives the right to make repairs or alterations at the expense of Landlord pursuant to any Legal Requirement now or hereafter in effect. All such work of repair or rebuilding by Tenant shall be done in a good and workmanlike manner.

(b)  <u>Encroachments</u>.  In the event that any Improvement now or hereafter constructed shall (i) encroach upon any property, street or right-of-way adjoining the Leased Premises, (ii) violate the provisions of any restrictive covenant affecting the Leased Premises, (iii) hinder or obstruct any easement or right-of-way to which the Leased Premises is subject, or (iv) impair the rights of others in, to or under any of the foregoing, then, promptly after written request of Landlord, Tenant shall either (x) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation, hindrance, obstruction or impairment, whether the same shall affect Landlord, Tenant or both, or (y) take such action as shall be necessary to remove such encroachment, hindrance or obstruction and to end such violation or impairment. If such action is in the form of an Alteration, such Alteration shall conform to the provisions of paragraph 12.

(c)  <u>Landlord's Right of Entry</u>.  Landlord and any Mortgagee shall have the right, upon reasonable notice to Tenant (or without notice in case of emergency), to enter upon the Leased Premises for the purpose of making any repairs or rebuilding which may be necessary by reason of Tenant's failure to comply with the provisions of subparagraphs (a) and (b) of this paragraph 11. Except in case of emergency, the right of entry shall be exercised at reasonable times and at reasonable hours. The cost of all such work shall be Additional Rent, and Tenant shall pay the same to Landlord (or Mortgagee), together with interest thereon at the Default Rate from the time of demand for payment by Landlord (or Mortgagee) to Tenant, until paid by Tenant, immediately upon written demand therefor and upon submission to Tenant of evidence of Landlord's (or Mortgagee's) payment of such costs.

(d)  <u>Replacement Equipment</u>.  Tenant shall from time to time replace with other operational equipment or parts (the

- 13 -

06720/40153
LP I.D. No. 3

"**Replacement Equipment**") any of the Landlord's Equipment (the "**Replaced Equipment**") which shall have become worn out, obsolete or unusable for the purpose for which it is intended, been taken by a Condemnation, or been lost, stolen, damaged or destroyed. Tenant shall repair, at its sole cost and expense, all damage to the Leased Premises caused by the removal of the Replaced Equipment or of Tenant's Equipment, or the installation of the Replacement Equipment. All Replacement Equipment shall become the property of Landlord, shall be free and clear of all Liens and rights of others, and shall become a part of the Landlord's Equipment to the same extent as the Replaced Equipment was part of the Landlord's Equipment.

(e) <u>Hazardous Waste</u>. If any activity has been, was, or in the future will be, conducted at the Leased Premises, or any past, present or future use of the Leased Premises in any manner or any event occurs whether on or off the Leased Premises, (i) which would cause the Leased Premises to become a hazardous waste treatment storage or disposal facility within the meaning of, or otherwise bring the Leased Premises within the ambit of, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901 <u>et seq.</u>, or any other federal, state or local law or regulation relating to Hazardous Materials, (ii) so as to cause the release or threatened release of Hazardous Materials from the Leased Premises within the meaning of, or otherwise bring the Leased Premises within the ambit of, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601-9657, or any other federal, state or local law or regulation relating to Hazardous Materials, (iii) so as to cause the discharge of pollutants or effluents into any water source or system, or the discharge into the air of any emissions, which would require a permit under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 <u>et seq.</u>, or the Clean Air Act, 42 U.S.C. §§ 7401 <u>et seq.</u>, or any other federal, state or local law or regulation relating to Hazardous Materials, or (iv) so as to create a condition on the Leased Premises which is in violation of any federal, state or local law or regulation relating to Hazardous Materials, Tenant agrees to promptly notify Landlord and Mortgagee, if any, of any claim made in respect thereof. If Tenant discovers that Hazardous Materials exist on the Leased Premises in violation of any applicable law (whether or not disclosed in any environmental report issued on or prior to the Commencement Date), Tenant shall promptly notify Landlord of such condition, and shall, with all due diligence, take every remedial, removal and other actions necessary to remediate, remove, contain or clean up such Hazardous Materials in a manner and to the extent required by applicable law. Tenant agrees to comply with each of the recommendations contained in all environmental reports issued relating to the Leased Premises if such recommendations

- 14 -

06720/40153
LP I.D. No. 3

Exhibit A

are deemed necessary by Tenant, Landlord or Mortgagee, in each case in the exercise of prudent business judgment, for the protection, operation and maintenance of the Leased Premises. Tenant further agrees to protect, indemnify, save harmless and defend Landlord and Mortgagee, if any, from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) imposed upon or incurred by any of them, which arise, directly or indirectly, out of (x) the existence of Hazardous Materials on the Leased Premises, or (y) any action or omission of Tenant, its agents or employees, which constitutes a violation of, or creates a condition on the Leased Premises which is in violation of, any Legal Requirement relating to Hazardous Materials. The indemnity set forth in the preceding sentence shall survive the expiration or earlier termination of this Lease.

12.  Alterations.  Tenant may, at its expense make any Alterations, construct upon the Land any additional Improvements or install equipment in the Improvements or accessions to the Landlord's Equipment without Landlord's consent, provided that (i) the character of the Leased Premises shall not be materially changed and the market value of the Leased Premises shall not be materially lessened by any such Alteration, construction or installation (it being agreed that any expansion or enlargement referred to in paragraph 27 shall not be deemed to constitute a material change in the character of the Leased Premises), nor shall the usefulness or structural integrity of the Leased Premises be impaired thereby, (ii) all such work of Alteration, construction and installation shall be performed in a good and workmanlike manner, (iii) all such Alterations, construction and installation shall be expeditiously completed in compliance with all Legal Requirements, (iv) all work done in connection with any such Alteration, construction or installation shall comply with the requirements of any insurance policy required to be maintained by Tenant hereunder, (v) Tenant shall promptly pay all costs and expenses of any such Alteration, construction or installation, and Tenant shall discharge all Liens filed against the Leased Premises arising out of the same, and (vi) Tenant shall procure and pay for all permits and licenses required in connection with any such Alteration, construction or installation. In the case of any other proposed Alteration, construction or installation, Tenant shall first obtain Landlord's and Mortgagee's consents, which consents may be withheld in Landlord's or Mortgagee's sole discretion. All such Alterations, construction and installations shall be the property of Landlord and shall be subject to this Lease.

13.  Condemnation.

(a)  Assignment of Condemnation Award.  Subject to the provisions of this paragraph 13 and paragraph 15, Tenant

- 15 -

06720/40153
LP I.D. No. 3

Exhibit A

hereby irrevocably assigns to Landlord any award or payment to which Tenant is or may be entitled by reason of any Condemnation, whether the same shall be paid or payable for Tenant's leasehold interest hereunder or otherwise; but nothing in this Lease shall be deemed to (i) assign to Landlord any award or payment on account of Tenant's Equipment or other tangible property, moving expenses, loss of business, and similar claims to the extent Tenant shall have a right to make a separate claim therefor against the condemnor, or (ii) impair Tenant's right to any award or payment resulting from such separate claim.  If Landlord receives notice of any proposed Condemnation from any person having the power of eminent domain, Landlord shall promptly give Tenant notice of such proposed Condemnation; the failure of Landlord to give such notice to Tenant shall not affect Tenant's obligations under this paragraph 13 or any other provision of this Lease.

(b)  <u>Total or Substantial Condemnation</u>.   If (i) the entire Leased Premises, or (ii) any substantial portion of the Leased Premises, the loss of which even after restoration would be substantially and materially adverse to the business operations of Tenant on the Leased Premises, shall be subject to a Taking, then Tenant shall, not later than 60 days after notice of such Taking, give notice to Landlord of its intention to terminate this Lease on any Basic Rent Payment Date specified in such notice (the **"Termination Date"**) which shall be not less than 120 days nor more than 240 days after such notice to Landlord.  Such notice shall be accompanied by a certificate of Tenant and Guarantor, signed by the President or any Vice President of Tenant and Guarantor, stating that, in the judgment of the Executive Committee of the Board of Directors of Tenant and Guarantor, the conditions referred to in clause (i) or (ii) above exist with respect to the Leased Premises by reason of such Taking.  As used in this paragraph 13(b), **"substantial portion"** means (a) 5% or more of the building space contained in the Improvements, (b) 10% or more of the parking area, (c) 15% or more of the building space and parking area in any combination, or (d) taking of any material access to the Leased Premises for which no reasonable alternative is available at a reasonable cost.    If the Termination Date occurs during the Initial Term, as part of such notice, Tenant shall, at its election:   (x) give to Landlord its irrevocable offer to purchase the Leased Premises, or the portion of the Leased Premised remaining after such Taking, if any, and to purchase the Net Award payable to Landlord in connection with such Taking, at a price which, at Tenant's election, shall be either (1) the amount determined in accordance with <u>Exhibit "F"</u> hereto, or (2) such amount determined in accordance with <u>Exhibit "F"</u> hereto minus the then unpaid principal amount of the Note (in which case Tenant shall assume all of the obligations under the Note and

- 16 -

Exhibit A

Mortgage pursuant to paragraph 18(c)) or (y) notify Landlord
and any Mortgagee that it will effect a substitution of
property for the Leased Premises pursuant to paragraph 17
within 180 days after such notice.    If (A) Tenant's
termination notice is accompanied by Tenant's irrevocable
offer to purchase the Leased Premises (and Net Award) as set
forth in clause (x) of the immediately preceding sentence, and
if Landlord shall reject such offer by notice to Tenant
(accompanied by the written consent of Mortgagee to such
rejection) given not later than the tenth day prior to the
Termination Date, or (B) the Termination Date shall occur
during an Extended Term, then the Net Award for such Taking
shall belong to Landlord and this Lease shall terminate on the
Termination Date upon the payment by Tenant of all
installments of Basic Rent, all Additional Rent and all other
sums then due and payable under this Lease to and including
the Termination Date.    Unless Landlord shall have rejected
such offer to purchase the Leased Premises by notice to Tenant
(accompanied by Mortgagee's written consent) given not later
than the tenth day prior to the Termination Date, or if
Landlord shall make such rejection without the written consent
of Mortgagee, then Landlord shall be conclusively presumed to
have accepted such offer to purchase, and Landlord shall
(1) transfer and convey the Leased Premises, or remaining
portion thereof, if any, to Tenant or its designee upon the
terms and provisions set forth in paragraph 18, and (2) assign
to Tenant or its designee all of Landlord's right, title and
interest in and to the Net Award for such Taking, against
payment by Tenant of the purchase price therefor (including
any assumption of the Note pursuant to paragraph 18(c)),
together with all installments of Basic Rent, all Additional
Rent, and all other sums then due and payable under this Lease
to and including the Termination Date.    In the event of the
termination of this Lease pursuant to this paragraph, and if
Tenant or its designee shall have purchased the Leased
Premises pursuant to this paragraph, Tenant or its designee
shall be entitled to the Net Award for such Taking.

    If Tenant elects to substitute a Substitute Property for
the Leased Premises in accordance with the provisions of
paragraph 17, Tenant or its designee shall be entitled to the
Net Award for the Taking of the Leased Premises upon comple-
tion of such substitution pursuant to paragraph 17, provided
no Event of Default has then occurred or is continuing
hereunder.

    (c)  <u>Partial Condemnation</u>. In the event of any Taking of
the Land or Improvements which does not result in a
termination of this Lease pursuant to paragraph 13(a), the
Term shall nevertheless continue and there shall be no
abatement or reduction of Basic Rent, Additional Rent or any

- 17 -

Exhibit A

other sums payable by Tenant hereunder, except as specifically provided in paragraph 15.    Subject to the requirements of paragraph 15, the Net Award for such Taking shall be retained by Landlord and, promptly after such Taking, Tenant shall commence the restoration of, and diligently continue to restore, the Land and Improvements as nearly as possible to their value, condition and character immediately prior to such Taking, in accordance with the provisions of paragraph 15.

Upon the final payment to Landlord of the Net Award for a Taking which falls within the provisions of this paragraph 13(c), Landlord shall make the Net Award available to Tenant for such restoration, in accordance with the provisions of paragraph 15.

In the event of a Requisition of the Leased Premises, the Net Award for such Requisition allocable to the Term shall be paid to Tenant and this Lease shall continue in full force and effect without any abatement or reduction of the Basic Rent, Additional Rent or other sums payable by Tenant hereunder. Any portion of such Net Award allocable to any period after the expiration or termination of the Term shall belong to Landlord.

(d)    Landlord's Equipment Condemnation.    In the event of any Taking of Landlord's Equipment which does not fall within the provisions of paragraph 13(b), this Lease shall continue in full force and effect and without any abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder.  Tenant shall, whether or not the Net Award is sufficient for the purpose, promptly replace Landlord's Equipment so taken, in accordance with the provisions of paragraphs 11(d) and 15, and the Net Award for such a Condemnation shall thereupon be payable to Tenant.

(e)    Proceedings.    Tenant shall take all appropriate actions with respect to each Condemnation proceeding, action, negotiation, prosecution and adjustment and shall pay all cost and expenses thereof, including the cost of Landlord's and Mortgagee's participation therein, provided that Landlord's and Mortgagee's consents shall be required to any settlement or agreement with the condemning authority (except one involving solely an award or payment to which Tenant is entitled under paragraph 13(a)), such consent not to be unreasonably withheld or delayed.

14.    Insurance.

(a)    Type of Insurance.    Tenant shall maintain at its sole cost and expense the following insurance on the Leased Premises:

- 18 -

06720/40153
LP I.D. No. 3

Exhibit A

(i)    Insurance against loss or damage to the Improvements and Landlord's Equipment by fire and other risks from time to time included under standard extended and additional extended coverage, vandalism and malicious mischief policies, in amounts not less than the actual replacement value of the Improvements and Landlord's Equipment, excluding footings and foundations and other parts of the Improvements which are not insurable.  Such policies may be subject to a deductible amount not in excess of $50,000.

(ii) General public liability insurance against claims for bodily injury, death or property damage occurring on, in, or about the Leased Premises or adjoining sidewalks, streets or ways, in an amount not less than $1,000,000 for bodily injury or death to any one person, not less than $5,000,000 for any one accident, and not less than $1,000,000 for property damage.   Policies for such insurance shall be for the mutual benefit of Landlord, Tenant and any Mortgagee.

(iii) Workers' compensation insurance covering all persons employed in connection with any work done on or about the Leased Premises for which claims for death or bodily injury could be asserted against Landlord, Tenant or the Leased Premises, or in lieu of such workers' compensation insurance, a program of self-insurance complying with the rules, regulations and requirements of the appropriate agency of the State.

(b)   Insurance  Requirements;  Self-Insurance.     The insurance required by paragraph 14(a) shall be written by companies of recognized financial standing which are approved by Landlord and any Mortgagee and are authorized to do an insurance business in the State.   In the event that at any time Guarantor's senior debt shall be rated below BBB- by Standard & Poor's Corporation and below baa3 by Moody's Investors Services, Inc., such insurance shall be written by insurers rated A or better by Best's with a claims paying rating of "X" or better.  Notwithstanding the above, so long as Tenant is not in default hereunder and Guarantor's tangible net worth (as determined under generally accepted accounting principles in effect on the Commencement Date) exceeds $500,000,000, Tenant may self-insure each of the coverages described in paragraph 14(a). Sums due from Tenant in lieu of insurance proceeds because of such self-insurance shall be treated as insurance proceeds for all purposes under this Lease.  The insurance (i) shall be for a term of not less than 6 months, (ii) shall be in amounts sufficient at all times to satisfy any coinsurance requirements thereof, and (iii) shall (except for the workers' compensation insurance referred to in

- 19 -

06720/40153
LP I.D. No. 3

Exhibit A

paragraph 14(a)(iii)) name Landlord, Tenant and any Mortgagee as insured parties, as their respective interests may appear. If said insurance or any part thereof shall expire, be withdrawn, become void by breach of any condition thereof by Tenant, or become void or unsafe by reason of the failure or impairment of the capital of any insurer, or if for any other reasonable cause said insurance shall become unsatisfactory to Landlord or Mortgagee, Tenant shall promptly obtain new or additional insurance satisfactory to Landlord and Mortgagee.

(c) <u>Mortgagee Loss Payable Clauses; Cancellation of Insurance</u>. Each insurance policy referred to in clause (i) of paragraph 14(a) shall contain a mortgagee loss payable clause in favor of any Mortgagee. Each policy shall provide that it may not be canceled except after 30 days prior notice to Landlord and any Mortgagee.  Each such policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forfeiture of all or a part of such insurance payment, (ii) the occupation or use of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Mortgagee pursuant to any provision of the Mortgage upon the happening of an event of default thereunder, or (iv) any change in title or ownership of the Leased Premises.

(d) <u>Payment of Premiums; Policy Replacements</u>.  Tenant shall pay as they become due all premiums for the insurance required by this paragraph 14, shall renew or replace each policy, and shall deliver to Landlord such renewal or replacement policy and evidence of the payment of the full premium therefor at least 20 days prior to the expiration date of each policy.  In the event of Tenant's failure to comply with any of the foregoing requirements, Landlord shall be entitled to procure such insurance.  Any sums expended by Landlord in procuring such insurance shall be Additional Rent and shall be repaid by Tenant immediately upon demand therefor by Landlord, together with interest thereon at the Default Rate, from the time of payment by Landlord until fully paid by Tenant.

(e) <u>Blanket Policies</u>.  Any insurance which Tenant is required to obtain pursuant to paragraph 14(a) may be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant or Guarantor, provided that such "blanket" policy or policies otherwise comply with the provisions of this paragraph 14.

- 20 -

(f) <u>Casualty Loss Claims</u>.  In the event of any casualty loss, Tenant shall give Landlord and Mortgagee immediate notice thereof.   Tenant is hereby authorized to adjust, collect and compromise, in its name or in Landlord's name, all claims under any of the insurance policies required by paragraph 14(a)(i) and to execute and deliver on behalf of Landlord all necessary proofs of loss, receipts, vouchers and releases required by the insurers.  Landlord agrees to sign, upon request of Tenant, all such proofs of loss, receipts, vouchers and releases.  Landlord and Mortgagee shall have the right to join in any such adjustment, claim or compromise and any adjustment, settlement or compromise of any such claim shall be subject to the prior written approval of Landlord and any Mortgagee.  All proceeds of any insurance required under clause (i) of paragraph 14(a) shall be payable to Mortgagee. Each insurer is hereby authorized and directed to make payment under said policies, including return of unearned premiums, directly to Mortgagee instead of to Landlord and Tenant jointly; and Landlord and Tenant hereby appoint Mortgagee as attorney-in-fact to endorse any draft therefor.

Except as provided in paragraph 14(g), in the event of any casualty (whether or not insured against) resulting in damage to the Leased Premises, this Lease shall continue in full force and effect without abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder.   The Net Proceeds of such casualty shall be . retained by Mortgagee subject to paragraph 15 and, promptly after such casualty, Tenant shall commence and diligently continue to restore the Leased Premises as nearly as possible to their value, condition and character immediately prior to such damage, in accordance with the provisions of paragraph 15.

Upon the final payment to Mortgagee of such Net Proceeds, Mortgagee shall make the Net Proceeds available to Tenant for restoration, in accordance with the provisions of paragraph 15.

(g) <u>Termination Upon Casualty</u>.   If any substantial portion of the Leased Premises is damaged or destroyed in any casualty such that it would be uneconomic for Tenant to restore the Leased Premises to their condition prior to such damage or destruction for use in the business operations of Tenant, then Tenant may, not later than 60 days after such casualty, give to Landlord notice of its intention to terminate this Lease on any Basic Rent Payment Date specified in such notice (also, a "Termination Date") which shall not be less than 120 days nor more than 240 days after such notice to Landlord, and Tenant shall thereupon have no obligation to restore the Leased Premises.  Such notice shall be accompanied

- 21 -

Exhibit A

by a certificate of Tenant and Guarantor, signed by the President or any Vice President of Tenant and Guarantor, stating that, in the judgment of the Executive Committee of the Board of Directors of Tenant and Guarantor, rebuilding, restoring or repairing the Leased Premises for continued use and occupancy in the business carried on by Tenant on the Leased Premises immediately prior to such casualty would be uneconomic.  As used in this paragraph 14(g), **"substantial portion"** means 50% or more of the replacement cost of the Improvements.  If the Termination Date occurs during the Initial Term, as part of such notice Tenant shall at its election:  (x) give to Landlord its irrevocable offer to purchase the Leased Premises, or the portion of the Leased Premised remaining after such casualty, and to purchase the Net Proceeds payable to Landlord in connection with such casualty, at a price which, at Tenant's election, shall be either (1) the amount determined in accordance with Exhibit "F" hereto, or (2) such amount determined in accordance with Exhibit "F" hereto minus the then unpaid principal amount of the Note (in which case Tenant shall assume all of the obligations under the Note and Mortgage pursuant to paragraph 18(c)) or (y) notify Landlord and any Mortgagee that it will effect a substitution of property for the Leased Premises pursuant to paragraph 17 within 180 days after such notice.  If (A) Tenant's termination notice is accompanied by Tenant's irrevocable offer to purchase the Leased Premises (and Net Proceeds) as forth in clause (x) of the immediately preceding sentence, and if Landlord shall reject such offer by notice to Tenant (accompanied by the written consent of Mortgagee to such rejection) given not later than the tenth day prior to the Termination Date, or (B) the Termination Date shall occur during an Extended Term, then the Net Proceeds for such casualty shall belong to Landlord and this Lease shall terminate on the Termination Date upon the payment by Tenant of all installments of Basic Rent, all Additional Rent and all other sums then due and payable under this Lease to and including the Termination Date.   Unless Landlord shall have rejected such offer to purchase the Leased Premises by notice to Tenant (accompanied by Mortgagee's written consent) given not later than the tenth day prior to the Termination Date, or if Landlord shall make such rejection without the written consent of Mortgagee, then Landlord shall be conclusively presumed to have accepted such offer to purchase, and Landlord shall (1) transfer and convey the Leased Premises, or remaining portion thereof, if any, to Tenant or its designee upon the terms and provisions set forth in paragraph 18, and (2) assign to Tenant or its designee all of Landlord's right, title and interest in and to the Net Proceeds for such casualty, against payment by Tenant of the purchase price therefor (including any assumption of the Note pursuant to paragraph 18(c)), together with all installments

- 22 -

06720/40153
LP I.D. No. 3

Exhibit A

of Basic Rent, all Additional Rent and all other sums then due and payable under this Lease to and including the Termination Date. In the event of the termination of this Lease pursuant to this paragraph 14(g), and if Tenant or its designee shall have purchased the Leased Premises pursuant to this paragraph, Tenant or its designee shall be entitled to the Net Proceeds for such casualty.

If Tenant elects to substitute a Substitute Property for the Leased Premises in accordance with the provisions of paragraph 17, Tenant or its designee shall be entitled to the Net Proceeds for such casualty upon completion of such substitution pursuant to paragraph 17, provided no Event of Default has then occurred or is continuing hereunder.

15.   Restoration.  In the event of any casualty referred to in paragraph 14(f) or Taking referred to in paragraph 13(c), Tenant shall be entitled to receive the Net Proceeds payable in connection with such casualty and the Net Award payable in connection with such Taking, but only on the basis of certificates of Tenant, signed by the President or any Vice President of Tenant, delivered to Mortgagee from time to time as such rebuilding, restoration and repair progresses or is completed.   Each such certificate shall describe the work for which Tenant is requesting payment, the cost incurred by Tenant in connection therewith, and shall state that such work has been performed in conformity with the requirements of paragraphs 11 and 12, the estimated cost of completing such work, and that Tenant has not theretofore received payment for such work.  Upon completion of the work described in this paragraph 15, if any Net Proceeds or Net Award remaining after the final payment has been made for such work is less than $100,000, such remaining Net Proceeds or Net Award shall be paid to Tenant.  If such remaining Net Proceeds or Net Award is $100,000, or greater than $100,000, such remaining Net Proceeds or Net Award shall, at Landlord's option, be retained by Landlord; if retained by Landlord then (i) Cost as set forth in Exhibit "F" hereto shall be reduced by the amount of such remaining Net Proceeds or Net Award so retained by Landlord, and (ii) each instalment of Basic Rent, payable thereafter during the Initial Term commencing with the second Basic Rent Payment Date subsequent to the final payment to Tenant for such work, shall be reduced by 2.499325% of such remaining Net Proceeds or Net Award retained by Landlord.  If not retained by Landlord, such remaining Net Proceeds or Net Award shall be paid to Tenant.  If the cost of any such work required to be done by Tenant pursuant to this paragraph shall exceed the amount of such Net Proceeds or Net Award, the deficiency shall be paid by Tenant.  No payments shall be made to Tenant pursuant to this paragraph 15 if any default exists under this Lease unless and until such default shall have been cured or removed.

- 23 -

06720/40153
LP I.D. No. 3

Exhibit A

16.  <u>Economic Abandonment</u>.  So long as no default then exists
hereunder, if the Leased Premises shall have become uneconomic or
unsuitable for continued use and occupancy in the business
operations of Tenant and in the business operations of any
affiliate of Tenant, and if the Executive Committee of the Board of
Directors of Tenant and Guarantor have decided to discontinue the
use of the Leased Premises in its business operations during the
period ending on the first anniversary of the date of the delivery
of the notice hereinafter referred to in this paragraph 16, or if
Tenant, on or before such date of delivery, has already
discontinued such use, then Tenant may notify Landlord of its
intention to terminate this Lease on the Basic Rent Payment Date
specified in such notice (also a **"Termination Date"**) which shall be
not less than 120 nor more than 240 days after the date of delivery
of such notice.  As part of said notice, Tenant shall, at its
election:  (x) give to Landlord its irrevocable offer to purchase
the Leased Premises at a price which, at Tenant's election, shall
be either (1) the amount determined in accordance with <u>Exhibit "F"</u>
hereto, or (2) such amount determined in accordance with <u>Exhibit
"F"</u> hereto minus the then unpaid principal amount of the Note (in
which case Tenant shall assume all of the obligations under the
Note and Mortgage pursuant to paragraph 18(c)) or (y) notify
Landlord and any Mortgagee that it will effect a substitution of
property for the Leased Premises pursuant to paragraph 17 within
180 days of such notice.  If Tenant's termination notice is
accompanied by Tenant's irrevocable offer to purchase the Leased
Premises as set forth in clause (x) of the immediately preceding
sentence, and if Landlord shall reject such offer by notice to
Tenant (accompanied by the written consent of Mortgagee to such
rejection) given not later than the tenth day prior to the
Termination Date, then this Lease shall terminate on the
Termination Date upon the payment by Tenant of all installments of
Basic Rent, all Additional Rent and all other sums then due and
payable under this Lease to and including the Termination Date.
Unless Landlord shall have rejected such offer to purchase the
Leased Premises by notice to Tenant (accompanied by Mortgagee's
written consent) given not later than the tenth day prior to the
Termination Date, or if Landlord shall make such rejection without
the written consent of Mortgagee, then Landlord shall be
conclusively presumed to have accepted such offer to purchase, and
Landlord shall transfer and convey the Leased Premises to Tenant or
its designee upon the terms and provisions set forth in
paragraph 18 against payment by Tenant of the purchase price
therefor (including any assumption of the Note pursuant to
paragraph 18(c)), together with all installments of Basic Rent, all
Additional Rent and all other sums then due and payable under this
Lease to and including the Termination Date.  Tenant shall not open
any new retail grocery store within a five-mile radius (measured
front door to front door) of the Leased Premises during the period
beginning one year prior to the Termination Date and ending one
year after the Termination Date unless Tenant has elected to

- 24 -

06720/40153
                                                                    LP I.D. No. 3

Exhibit A

substitute such retail grocery store as a Substitute Property for the Leased Premises pursuant to paragraph 17 or unless Tenant pays to Landlord at the later of the Termination Date and 10 days following commencement of such use an additional amount equal to the difference between the Modified Make Whole Premium, based on Treasuries plus 25 basis points determined as of the Termination Date and the Make Whole Premium paid or to be paid on the Termination Date. The obligation of Tenant under the immediately preceding sentence shall survive the termination of this Lease and purchase of the Leased Premises by Tenant.

17.  Substitution of Property.  So long as no Event of Default has occurred and is continuing under this Lease, Tenant may elect pursuant to paragraph 13(b), 14(g) or 16 to substitute other real property, the improvements thereon and equipment therein used or to be used in Tenant's business as a retail food store (the "Substitute Property") for the Leased Premises and, on the date for substitution set forth in such notice (the "Substitution Date"), Landlord shall transfer the Leased Premises to Tenant provided that all of the following conditions shall have been satisfied:

(a)  The Cost or fair market value, determined as provided in subparagraph (c) below, of the Substitute Property shall be equal to or greater than (i) the original Cost of the Leased Premises and (ii) the then appraised value of the Leased Premises.

(b)  With respect to any Substitute Property on which construction of Improvements was completed within 2 years of the Substitution Date, Landlord and Mortgagee shall have received a certificate of Tenant, signed by the President or a Vice President of Tenant, setting forth the cost to Tenant of acquiring the Land portion of such Substitute Property, of construction of the Improvements thereon, and of acquisition and installation of the Landlord's Equipment therein, if any, which may include such items as are included in the definition of Cost with respect to the Leased Premises.

(c)  With respect to any Substitute Property on which construction of improvements was completed more than 2 years prior to the Substitution Date, Landlord and Mortgagee shall have received an appraisal, made by an independent appraiser at Tenant's expense selected by Tenant and approved by Landlord and Mortgagee, meeting standards generally accepted at the time by institutional mortgage lenders, of the fair market value of such Substitute Property as of a date within 90 days prior to the Substitution Date.

(d)  With respect to the Leased Premises, Landlord and Mortgagee shall have received an appraisal, made by an independent appraiser at Tenant's expense selected by Tenant

- 25 -

06720/40153
LP I.D. No. 3

Exhibit A

and approved by Landlord and Mortgagee, meeting standards generally accepted at the time by institutional mortgage lenders, of the fair market value of the Leased Premises as of a date within 90 days prior to the Substitution Date.

(e) With respect to the Substitute Property, Landlord shall have received, in substantially the form of this Lease and the Guaranty, a substitute lease (the "**Substitute Lease**") and a substitute guaranty (the "**Substitute Guaranty**") duly authorized, executed and delivered by Tenant and Guarantor, and Mortgagee shall have received, in substantially the form of the Note, the Mortgage and the Assignment related to the Leased Premises, a substitute Note (the "**Substitute Note**"), substitute Mortgage (the "**Substitute Mortgage**") and a substitute Assignment (the "**Substitute Assignment**") duly authorized, executed and delivered by Landlord, which Substitute Mortgage shall create a first lien on the Substitute Property, and which shall otherwise be in form and substance satisfactory to Mortgagee.

(f) Landlord and Mortgagee shall have received evidence that, on the Substitution Date, Landlord has good and marketable fee simple title to the Substitute Property, subject only to Permitted Encumbrances and that all appropriate recordings, registrations and filings with respect to the Substitute Lease, Substitute Mortgage and Substitute Assignment have been made. The Mortgagee shall have received a survey and a loan policy of title insurance in the form and with the endorsements which would have been required by the Purchase and Sale Agreement had the Substitute Property been one of the properties identified in the Purchase and Sale Agreement.

(g) All necessary approvals, authorizations and consents of all governmental bodies (including courts) having jurisdiction with respect to the transactions contemplated by this paragraph 17 shall have been obtained and all taxes, fees and other charges payable in connection therewith shall have been paid.

(h) Landlord and Mortgagee shall have received all other documentation required to be furnished by Tenant [and Guarantor] under the Purchase and Sale Agreement to the same extent, with the same effect and subject to the same approvals as if the Substitute Property had been one of the properties identified in the Purchase and Sale Agreement. Tenant shall be obligated to pay all costs and expenses incurred by it, Landlord or Mortgagee in connection with the transaction contemplated by this paragraph 17, including the reasonable fees and expenses of counsel to Landlord and Mortgagee.

- 26 -

06720/40153
LP I.D. No. 3

Exhibit A

18.   <u>Procedure Upon Purchase.</u>

(a)   <u>Title to be Conveyed</u>.  In the event of the purchase
of the Leased Premises or any part thereof by Tenant or its
designee pursuant to any provision of this Lease, Landlord
need not transfer and convey to Tenant or its designee any
better title thereto than Landlord received, and Tenant shall
accept such title, subject, however, to all Liens, exceptions
and restrictions on, against or relating to the Leased
Premises and to all applicable Legal Requirements, but (except
in the case of a purchase in which Tenant assumes or takes
subject to the Note and Mortgage), free of the Lien of the
Mortgage and Liens, exceptions and restrictions which have
been created by or resulted from acts of Landlord taken
without the consent of Tenant.

(b)   <u>Payment of Purchase Price; Conveyance Documents;
Other Costs</u>.  Upon the date fixed for any such purchase of the
Leased Premises pursuant to any provision of this Lease,
Tenant shall pay to Landlord at its address set forth above,
or at any other place designated by Landlord, the purchase
price therefor specified herein (including, if applicable, the
assumption documents referred to below), and Landlord shall
thereafter deliver to Tenant a deed which describes the Leased
Premises then being sold to Tenant, and conveys and transfers
the title thereto which is described in paragraph 18(a), toge-
ther with such other instruments as shall be necessary to
transfer or assign to Tenant or its designee any other pro-
perty then required to be sold by Landlord pursuant to this
Lease.   Tenant shall pay all charges incident to such convey-
ance and transfer (including, without limitation, reasonable
attorneys' fees, escrow fees, recording fees, title insurance
premiums and all applicable federal, state and local taxes
(other than any net income tax or franchise tax levied upon or
assessed against Landlord)) which may be incurred or imposed
by reason of such conveyance and transfer and other
instruments.  Upon the completion of such purchase (other than
a purchase pursuant to paragraph 28), but not prior thereto
(whether or not any delay in the completion of or the failure
to complete such purchase shall be the fault of Landlord),
this Lease and all obligations hereunder (including the
obligations to pay Basic Rent and Additional Rent) shall
terminate, except with respect to obligations and liabilities
of Tenant, actual or contingent, under this Lease which arose
on or prior to such date of purchase.

(c)   <u>Assumption of Note and Mortgage</u>.  If Tenant's offer
to purchase the Leased Premises pursuant to paragraph 13(b),
14(g) or 16 includes the assumption of the Note and Mortgage,
Tenant and Guarantor shall execute and deliver to Landlord and
Mortgagee all such documents (including assumption agreements,

- 27 -

guaranties and opinions of counsel) as Landlord or Mortgagee shall reasonably require to effect such assumption and the guaranty by Guarantor of all of Tenant's obligations regarding same, in form and substance satisfactory to Landlord and Mortgagee.    The agreement of Tenant assuming the Note and Mortgage shall provide that Tenant shall be personally liable on a full-recourse basis for the payment and performance of all of the obligations of the borrower under the Note and Mortgage and shall contain a "change of control" provision substantially to the effect of paragraph 29 hereof except that the obligation of Tenant shall be to prepay the Note at the price and as otherwise provided in the Mortgage.  The guaranty of Guarantor shall be in form acceptable to Mortgagee and in substantially the same form as the Guaranty.

19.  Assignment and Subleasing.  This Lease may be assigned and the Leased Premises may be sublet in whole or in part without the consent of Landlord so long as the Guaranty and the liability of Guarantor thereunder shall not be reduced thereby.    Each sublease of the Leased Premises shall be subject and subordinate to the provisions of this Lease.  No assignment or sublease made as permitted by this paragraph 19 shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no assignment or sublease had been made.    No assignment or sublease shall impose any obligations on Landlord under this Lease.  Tenant shall, within 10 days after the execution and delivery of any such assignment or sublease, deliver a duplicate original copy thereof to Landlord.

Tenant hereby irrevocably and unconditionally assigns to Landlord all rents and other sums payable under any sublease of the Leased Premises; provided, however, that Landlord hereby grants Tenant a license to collect all such rents and other sums so long as no Event of Default has occurred and is continuing.    Tenant shall not mortgage or pledge this Lease or the leasehold estate created hereby, and any such mortgage or pledge made in violation of this paragraph 19 shall be void.

20.  Permitted Contests.  Tenant shall not be required to (i) pay any Imposition, (ii) comply with any Legal Requirement, (iii) discharge or remove any Lien referred to in paragraphs 9 or 12, or (iv) take any action with respect to any encroachment, violation, hindrance, obstruction or impairment referred to in paragraph 11(b) so long as Tenant shall contest, in good faith and at its expense, the existence, the amount or the validity thereof, the amount of the damages caused thereby, or the extent of its or Landlord's liability therefor, by appropriate proceedings which shall operate during the pendency thereof to prevent (A) the collection of, or other realization upon, the Imposition or Lien so contested, (B) the sale, forfeiture or loss of any of the Leased

- 28 -

06720/40153
LP I.D. No. 3

Exhibit A

Premises, any Basic Rent or any Additional Rent to satisfy the same or to pay any damages caused by the violation of any such Legal Requirement or by any such encroachment, violation, hindrance, obstruction or impairment, (C) any interference with the use or occupancy of the Leased Premises, (D) any interference with the payment of any Basic Rent, any Additional Rent or any other sum payable hereunder, and (E) the cancellation of any fire or other insurance policy. If Guarantor's tangible net worth (determined in accordance with generally accepted accounting principles in effect on the Commencement Date) shall be less than $500,000,000 at the time of commencement of any such contest, Tenant shall provide to Landlord and Mortgagee a bond of a surety acceptable to Landlord and Mortgagee in an amount satisfactory to Landlord and Mortgagee. While any such proceedings are pending, neither Landlord nor Mortgagee shall have the right to pay, remove or cause to be discharged the Imposition or Lien thereby being contested. Tenant agrees that each such contest shall be promptly and diligently prosecuted to a final conclusion, except that Tenant shall, so long as the conditions of the first sentence of this paragraph 20 are at all times complied with, have the right to attempt to settle or compromise such contest through negotiations. Tenant shall pay and save Landlord and Mortgagee harmless against any and all losses, judgments, decrees and costs (including all reasonable attorneys' fees and expenses) in connection with any such contest and shall, promptly after the final determination of such contest, fully pay and discharge the amounts which shall be levied, assessed, charged or imposed or be determined to be payable therein or in connection therewith, together with all penalties, fines, interest, costs and expenses thereof or in connection therewith, and perform all acts the performance of which shall be ordered or decreed as a result thereof. No such contest shall subject Landlord or Mortgagee to the risk of any material civil liability or any criminal liability.

   21.   Conditional Limitations; Default Provision.

       (a)   Events of Default.   The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Lease: (i) a failure by Tenant to make any payment of Basic Rent, Additional Rent or other sum herein required to be paid by Tenant for a period of 10 days after notice to Tenant of such failure; (ii) a failure by Tenant to duly perform and observe, or a violation or breach of, any other provision hereof which failure, violation or breach shall continue for a period of 30 days after notice to Tenant thereof; provided that if such failure, violation or breach cannot be cured by mere payment of money and cannot with diligence be cured within such 30-day period, the period to cure such failure, violation or breach shall be extended for such longer period of time as is reasonably necessary to cure such failure, violation or breach so long as Tenant shall commence to cure such failure, violation or breach within said

- 29 -

Exhibit A

30-day period and actively, diligently and in good faith proceed with continued curing thereof until it shall be fully cured; (iii) any material representation or warranty made by Tenant in this Lease or any other document delivered in connection with the execution and delivery of this Lease proves to be incorrect in any material respect; (iv) Tenant shall (A) voluntarily be adjudicated a bankrupt or insolvent, (B) seek or consent to the appointment of a receiver or trustee for Tenant or the Leased Premises, (C) file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, (D) make a general assignment for the benefit of creditors, or (E) admit in writing its inability to pay its debts as they mature; (v) a court shall enter an order, judgment or decree appointing a receiver or trustee for Tenant or the Leased Premises or approving a petition filed against Tenant which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and such order, judgment or decree shall remain in force, undischarged or unstayed, 60 days after it is entered; (vi) the Leased Premises shall have been left unattended and without security for a period of 30 consecutive days; (vii) Tenant shall be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution; or (viii) the estate or interest of Tenant in the Leased Premises shall be levied upon or attached in any proceeding and such proceeding shall not be vacated or discharged within sixty 60 days after such levy or attachment.

(b) <u>Landlord's Remedies Upon Default</u>. If an Event of Default shall have occurred, Landlord shall have the right at its option, then or at any time thereafter during the continuance of such Event of Default, to do any one or more of the following without demand upon or notice to Tenant:

(i) Landlord may give Tenant notice of Landlord's intention to terminate this Lease on a date specified in such notice. Upon the date therein specified, the Term and the estate hereby granted and all rights of Tenant hereunder shall expire and terminate as if such date were the date hereinbefore fixed for the expiration of the Term, but Tenant shall remain liable for all its obligations hereunder, including its liability for Basic Rent, Additional Rent or any other sums payable under this Lease, as hereinafter provided.

(ii) Landlord may, whether or not the Term of this Lease shall have been terminated pursuant to clause (i) above, (x) give Tenant notice to surrender the Leased Premises to Landlord immediately or on a date specified in such notice, at which time Tenant shall surrender and deliver

- 30 -

Exhibit A

possession of the Leased Premises to Landlord, or (y) reenter and repossess the Leased Premises by summary proceedings, ejectment or any other means or procedure. Upon or at any time after taking possession of the Leased Premises, Landlord may remove any persons or property therefrom. Landlord shall be under no liability for, or by reason of, any such entry, repossession or removal. No such entry or repossession shall be construed as an election by Landlord to terminate this Lease unless Landlord gives a written notice of such intention to Tenant pursuant to clause (i) above.

(iii) After repossession of the Leased Premises pursuant to clause (ii) above, whether or not this Lease shall have been terminated pursuant to clause (i) above, Landlord shall have the right (but shall be under no obligation) to relet the Leased Premises or any part thereof to such tenant or tenants for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) for such rent, on such conditions (which may include concessions or free rent) and for such uses as Landlord, in its absolute discretion, may determine; and Landlord may collect and receive any rents payable by reason of such reletting.  Landlord shall not be responsible or liable for any failure to relet the Leased Premises or any part thereof or for any failure to collect any rent due upon any such reletting.  Landlord may make such Alterations as Landlord in its sole discretion may deem advisable.  Tenant agrees to pay Landlord, as Additional Rent, immediately upon demand, all reasonable expenses incurred by Landlord in obtaining possession, in performing Alterations and in reletting the Leased Premises, including fees and commissions of attorneys, architects, agents and brokers.

(iv) Landlord may exercise any other right or remedy now or hereafter existing by law or in equity.

(c)  No Relief of Obligations.    No expiration or termination of this Lease pursuant to paragraph 21(b)(i) or any other provision of this Lease, by operation of law, repossession of the Leased Premises pursuant to paragraph 21(b)(ii) or otherwise, or reletting of any of the Leased Premises pursuant to paragraph 21(b)(iii), shall relieve Tenant of any of its liabilities and obligations hereunder, including the liability for payment of Basic Rent, Additional Rent and all other sums payable hereunder, all of which shall survive such expiration, termination, repossession or reletting.

- 31 -

Exhibit A

(d) <u>Current Damages</u>. In the event of any expiration or termination of this Lease or repossession of the Leased Premises by reason of the occurrence of an Event of Default, Tenant shall pay to Landlord all Basic Rent, all Additional Rent and all other sums required to be paid by Tenant to and including the date of such expiration, termination or repossession and, thereafter, Tenant shall, until the end of what would have been the Term in the absence of such expiration, termination or repossession, and whether or not the Leased Premises shall have been relet, be liable to Landlord for and shall pay to Landlord as liquidated and agreed current damages (i) all Basic Rent, all Additional Rent and all other sums which would be payable under this Lease by Tenant in the absence of such expiration, termination or repossession, less (ii) the net proceeds, if any, of any reletting pursuant to paragraph 21(b)(iii), after deducting from such proceeds all of Landlord's expenses in connection with such reletting (including all repossession costs, brokerage commissions, legal expenses, attorneys' fees, employees' expenses, costs of Alterations and expenses of preparation for reletting). Tenant hereby agrees to be and remain liable for all sums aforesaid, and Landlord may recover such damages from Tenant and institute and maintain successive actions or legal proceedings against Tenant for the recovery of such damages. Nothing herein contained shall be deemed to require Landlord to wait to begin such action or other legal proceedings until the date when the Term would have expired by limitation had there been no such Event of Default.

(e) <u>Liquidated Final Damages</u>. At any time after any such expiration or termination of the Term or repossession of the Leased Premises by reason of the occurrence of an Event of Default, whether or not Landlord shall have collected any current damages pursuant to paragraph 21(d), Landlord shall be entitled to recover from Tenant, and Tenant will pay to Landlord on demand, as and for liquidated and agreed final damages for Tenant's default and in lieu of all current damages beyond the date of such demand (it being agreed that it would be impracticable or extremely difficult to fix the actual damages and it being further agreed that the amount herein described is a reasonable pre-estimate of the amount of Landlord's probable damages), an amount equal to the excess, if any, of (i) the Basic Rent, Additional Rent and other sums which would be payable under this Lease from the date of such demand (or, if it be earlier, the date to which Tenant shall have satisfied in full its obligations under paragraph 21(d) to pay current damages) for what would be the then unexpired term of this Lease in the absence of such expiration, termination or repossession, discounted at the rate of 4% per annum over (ii) the then fair net rental value of the Leased Premises for the same period. The discount rate to be used in

- 32 -

Exhibit A

determining such fair rental value shall be 4% per annum. If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, Landlord shall be entitled to the maximum amount allowable under such statute or rule of law.

22. Additional Rights of Landlord.

(a) Non-Exclusive, Cumulative Remedies. No right or remedy herein conferred upon or reserved to Landlord is intended to be exclusive of any other right or remedy and each and every right and remedy shall be cumulative and in addition to any other right or remedy contained in this Lease. No delay or failure by Landlord to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof. In addition to the other remedies provided in this Lease, Landlord shall be entitled, to the extent permitted by applicable law, to injunctive relief in case of the violation or attempted or threatened violation of any of the provisions of this Lease, or to specific performance of any of the provisions of this Lease.

(b) Tenant's Waiver of Redemption. Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have under any present or future law to redeem any of the Leased Premises or to have a continuance of this Lease after termination of this Lease or of Tenant's right of occupancy or possession pursuant to any court order or any provision hereof, and (ii) the benefits of any present or future law which exempts property from liability for debt or for distress for rent.

(c) Costs Upon Default and Litigation. Tenant shall pay to Landlord and Mortgagee as Additional Rent all the expenses incurred by Landlord or Mortgagee in connection with any default or Event of Default or the exercise of any remedy by reason of any default or Event of Default, including reasonable attorneys' fees and expenses. If Landlord or Mortgagee shall be made a party to any litigation commenced against Tenant or any litigation pertaining to this Lease or the Leased Premises, at the option of Landlord and Mortgagee, Tenant, at its expense, shall provide Landlord or Mortgagee with counsel approved by Landlord and Mortgagee and shall pay all costs incurred or paid by Landlord and Mortgagee in connection with such litigation.

23. Notices. All notices, demands, requests, consents, approvals, offers, statements and other instruments or communications required or permitted to be given pursuant to this Lease shall be in writing and shall be deemed to have been given

- 33 -

06720/40153
LP I.D. No. 3

Exhibit A

for all purposes when delivered in person or one day after given to an overnight courier which guaranties overnight delivery or three days after being deposited in the United States mail, by registered or certified mail, return receipt requested, postage prepaid, addressed to Landlord or Tenant at its address stated above or addressed to Mortgagee or Guarantor at its address listed below:

If to Mortgagee:    Principal Mutual Life Insurance Company
                    711 High Street
                    Des Moines, Iowa 50392
                    Attn:Commercial Real Estate
                         Loan Administration
                         Loan No. 750402

If to Guarantor:    Winn-Dixie Stores, Inc.
                    5050 Edgewood Court
                    Jacksonville, Florida 32254
                    Attention: General Counsel
                    Telephone: 904/783-5427
                    Telecopy: 904/783-5138

        For the purposes of this paragraph, any person may substitute its address by giving fifteen days' notice to the other persons in the manner provided above.

        24.   Estoppel Certificate.  Landlord and Tenant shall, at any time and from time to time, upon not less than 20 days' prior request by the other, execute, acknowledge and deliver to the other a statement in writing, executed by an authorized officer certifying (i) that this Lease is unmodified and in full effect (or, if there have been modifications, that this Lease is in full effect as modified, setting forth such modifications), (ii) the dates to which Basic Rent, Additional Rent and all other sums payable hereunder have been paid, (iii) that to the knowledge of the signer of such certificate no default by either Landlord or Tenant exists hereunder or specifying each such default of which the signer may have knowledge, (iv) with respect to a certificate signed on behalf of Tenant, that to the knowledge of the signer of such certificate, there are no proceedings pending or threatened against Tenant before or by any court or administrative agency which if adversely decided would materially and adversely affect the financial condition and operations of Tenant, or if any such proceedings are pending or threatened to said signer's knowledge, specifying and describing the same, and (v) with respect to the certificate signed on behalf of Tenant, if requested by Landlord, to the further effect set forth in Exhibit "G" hereto.  It is intended that any such statements may be relied upon by Mortgagee, the recipient of such statements or their assignees, or by any prospective purchaser or mortgagee of the Leased Premises.

- 34 -

06720/40153
                                                                   LP I.D. No. 3

Exhibit A

25.  <u>Surrender and Holding Over</u>.    Upon the expiration or earlier termination of this Lease, Tenant shall peaceably leave and surrender the Leased Premises (except for any portion thereof with respect to which this Lease has previously terminated) to Landlord in the same condition in which the Leased Premises were originally received from Landlord on the Commencement Date, except as repaired, rebuilt, restored, altered, replaced or added to as permitted or required by any provision of this Lease, and except for ordinary wear and tear.  Tenant shall remove from the Land and Improvements on or prior to such expiration or earlier termination all property situated thereon which is owned by Tenant or third parties other than Landlord, and Tenant at its expense shall, on or prior to such expiration or earlier termination, repair any damage caused by such removal.  Property not so removed at the end of the Term or within 30 days after the earlier termination of the Term for any reason whatsoever shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises.  The cost of removing and disposing of such property and repairing any damage to the Leased Premises caused by such removal shall be borne by Tenant.  Landlord shall not in any manner or to any extent be obligated to reimburse Tenant for any property which becomes the property of Landlord as a result of such expiration or earlier termination.

Any holding over by Tenant of the Leased Premises after the expiration or earlier termination of the term of this Lease or any extensions thereof shall operate and be construed as a tenancy from month to month only, at double the Basic Rent reserved herein and upon the same terms and conditions as contained in this Lease. Notwithstanding the foregoing, any holding over shall entitle Landlord, in addition to collecting double rentals, to exercise all rights and remedies provided by law or in equity, including the remedies of paragraph 21(b).

26.  <u>No Merger of Title</u>.    There shall be no merger of this Lease nor of the leasehold estate created by this Lease with the fee estate in or ownership of the Leased Premises by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, (i) this Lease or the leasehold estate created by this Lease or any interest in this Lease or in such leasehold estate, and (ii) the fee estate or ownership of the Leased Premises or any interest in such fee estate or ownership.  No such merger shall occur unless and until all persons, corporations, firms and other entities (including any Mortgagee) having any interest in (x) this Lease or the leasehold estate created by this Lease, and (y) the fee estate in or owner- ship of the Leased Premises sought to be merged shall join in a written instrument effecting such merger and shall duly record the same.

- 35 -

06720/40153
LP I.D. No. 3

Exhibit A

27. <u>Expansion</u>. It is understood that Tenant may at future times during the Term of this Lease wish to enlarge the Improvements by constructing Alterations and additions thereto and that such enlarging may require purchase of additional land. Tenant shall have the sole responsibility for negotiating and providing for the purchase, renovation and construction of such Alterations and additions and of such land as is necessary for its expansion plans. If Tenant is able to obtain agreements for the purchase of such additional land and contracts for the Alterations and additions at a cost satisfactory to it, Tenant may then request that Landlord purchase such Alterations, additions and land and incorporate the same into this Lease upon terms and conditions negotiated by the parties.

In the event the parties are unable to agree, Tenant shall have the right to construct Alterations and additions at its own expense and to make such changes as are necessary to make the entire enlarged building suitable for use and occupancy by Tenant in the conduct of its business; but Tenant shall not have the right to mortgage or pledge this Lease or the leasehold estate created hereby or its interest in such Alterations to finance such Alterations. At end of the Term of this Lease, title to the Alterations, additions and land as necessary to meet any Legal Requirements shall pass to Landlord and Tenant shall execute additional documents as necessary to complete such transfer.

28. <u>Right of First Refusal</u>. Tenant shall have the right of first refusal to purchase the Leased Premises as hereinafter set forth. If at any time during the Term Landlord shall receive a bona fide offer (other than at public auction) from a third person (except in lieu of exercise of the power of eminent domain) for the purchase of the Leased Premises, which offer Landlord shall desire to accept, Landlord shall promptly deliver to Tenant a copy of such offer, and Tenant may within 15 days thereafter elect to purchase the Leased Premises on the same terms and conditions as those set forth in such offer. If Tenant shall not accept such offer within the time herein specified the aforesaid right of first refusal shall terminate but the Term of this Lease shall otherwise continue. The right of first refusal in this paragraph shall be inapplicable to a transfer upon foreclosure of the Mortgage, including the giving by Landlord of a deed in lieu of foreclosure or to any subsequent transfer to a third person.

29. <u>Change of Control</u>. In the event that, at any time during the Initial Term, a Change of Control (as hereinafter defined) shall occur, Tenant shall, not later than 30 days after such Change of Control, give to Landlord an irrevocable offer to purchase the Leased Premises on a date (also, a **"Termination Date"**) specified in such notice, which shall be not less than 120 nor more than 240 days after the date of such notice, at a price determined in accordance with <u>Exhibit "F"</u> hereto. If Landlord shall reject such

- 36 -

06720/40153
LP I.D. No. 3

Exhibit A

offer to purchase by notice to Tenant (accompanied by the written consent of Mortgagee thereto) given not later than the tenth day prior to the Termination Date, this Lease shall remain in full force in effect. Unless Landlord shall have rejected such offer to purchase by notice to Lessee given not later than the tenth day prior to the Termination Date, or if Landlord shall make such rejection without the written consent of Mortgagee, then Landlord shall be conclusively presumed to have accepted such offer to purchase, and Landlord shall transfer and convey the Leased Premises to Tenant or its designee upon the terms and provisions set forth in paragraph 18, against payment by Tenant of all installments of Basic Rent, all Additional Rent and all other sums then due and payable under this Lease to and including such Termination Date.

As used in this paragraph 29, **"Change of Control"** means the acquisition by any person or Group, together with any Affiliates thereof, of (i) 50% or more of the beneficial interest in the voting capital stock of Tenant or Guarantor or (ii) the control of a majority of Tenant's or Guarantor's Board of Directors, provided that such acquisition or control, directly or indirectly, by the Davis Family or Affiliates thereof shall not constitute a Change of Control. **"Group"** means more than one person, acting in concert, to achieve control of Tenant. **"Affiliate"** of any specified person means any other person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified person. For the purposes of this definition, **"control"** when used with respect to any specified person means the power to direct the management and policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms **"controlling"** and **"controlled"** have the meanings correlative to the foregoing. **"Davis Family"** means Mr. A.D. Davis, relatives (by birth or marriage) and descendants of Mr. A.D. Davis, Mr. James E. Davis, Mr. M. Austin Davis and Tine W. Davis, trusts, estates, corporations and other entities involving any of them and their associates whether now living or existing or hereafter coming into existence.

Tenant shall immediately notify Landlord and Mortgagee of the occurrence of a Change of Control.

30. <u>Miscellaneous</u>. The paragraph headings in this Lease and the Table of Contents preceding this Lease are for convenience only and are not part of this Lease or to be used in determining the intent of the parties or otherwise interpreting this Lease. As used in this Lease the singular shall include the plural as the context requires, and the following words and phrases shall have the following meanings: (i) **"including"** shall mean "including but not limited to"; (ii) **"provisions"** shall mean "provisions, terms, agreements, covenants and/or conditions"; and (iii) **"obligation"** shall mean "obligation, duty, agreement, liability, covenant or

- 37 -

06720/40153
LP I.D. No. 3

Exhibit A

condition". Any act which Tenant is required to perform under this Lease shall be performed at Tenant's sole cost and expense. This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought. The covenants of this Lease shall run with the land and bind Tenant and all successors and assigns of Tenant and shall inure to the benefit of and bind Landlord, its successors and assigns. In the event any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unen- forceability shall not affect any other provision of this Lease but this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. This Lease may be simultaneously executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes. This Lease shall be governed by and construed according to the laws of the state in which the Leased Premises are located.

31. Incorporation by Reference. Attached to this Lease are Exhibits "A", "B", "C", "D", "E", "F" and "G" all of which are incorporated by this reference in, and form a part of, this Lease.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

- 38 -

06720/40153
LP I.D. No. 3

Exhibit A

IN WITNESS WHEREOF, Landlord and Tenant have caused this instrument to be executed and sealed as of the day and year first above written.

> PEREGRINE PROPERTIES LIMITED
> PARTNERSHIP, an Iowa limited
> partnership authorized to
> transact business in Georgia as
> Peregrine Ownership and Leasing
> Limited Partnership
>
> By: Equity  FC,  Ltd.,  an  Iowa
> corporation, its general partner
>
> By: _Karen A. Pearston_____
> Name: Karen A. Pearston
> Title: Counsel
>
> By: _____
> Name: LEANNE M. SWENSON
> Title: Counsel

"Landlord"

[CORPORATE SEAL]

06720/40153
LP I.D. No. 3

Exhibit A

WINN-DIXIE ATLANTA, INC.,
a Florida corporation

By:_____
Name:_____Wayne F. Ripley, Jr._____
Title:_____Vice President_____

"Tenant"

[CORPORATE SEAL]

- 40 -

06720/40153
LP I.D. No. 3

Exhibit A

06720/40153
L.P. I.D. No. 3

## EXHIBIT "A"

LEGAL DESCRIPTION

TRACT 1

**ALL THAT TRACT OR PARCEL OF LAND** lying and being in Land Lot 296 of the 1st District, City of Milledgeville, Baldwin County, Georgia and being more particularly described as follows:

**TO FIND A POINT OF BEGINNING** begin at a concrete monument located at the intersection of northwest right-of-way line of Hammock Street (which right-of-way is 54 feet at this point) with the southwest right-of-way line of U.S. Highway No. 441 (which right-of-way is 150 feet at this point); thence run North 38°15' 43" West, along the southwest right-of-way line of U.S. Highway No. 441, a distance of 220.87 feet to an iron pin and the **POINT OF BEGINNING** and from said Point of Beginning; thence leave said right-of-way line and run South 62°34'22" West, along property now or formerly owned by Merchants & Farmers Bank of Milledgeville and Raymond M. Pittman, a distance of 322.41 feet to an iron pin; thence run South 66°00'00" West, along property now or formerly owned by Raymond M. Pittman, a distance of 424.70 feet to an iron pin; thence run South 23°39'49" East, along property now or formerly owned by Raymond M. Pittman, a distance of 120.11 feet to an iron pin; thence run South 44°46'42" West, along property now or formerly owned by L.D. Hammock, a distance of 121.29 feet to an iron pin; thence run North 36°38'13" West, along property now or formerly owned by Rheem Manufacturing Company, a distance of 425.21 feet to a point; thence run North 51°43' 13" East, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 372.89 feet to a point; thence run North 29°44'56" West, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 65.81 feet to a point; thence run North 51°43'13" East, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 205.41 feet to a point; thence run South 38°16'47" East, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 13.71 feet to a point; thence run North 51°43'13" East, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 43.27 feet to a point; thence run South 38°21'39" East, along property now or formerly owned by Georgia Power Company and Business Associates, a distance of 219.11 feet to an iron pin; thence run South 59°49'29" East, along property now or formerly owned by Business Associates, a distance of 94.43 feet to an iron pin; thence run South 38°37'54" East, along property now or formerly owned by Quadvest, Inc., a distance of 115.03 feet to an iron pin; thence run North 62°08'21" East, along property now or formerly owned by Quadvest, Inc., a distance of 154.38 feet to an iron pin; thence run North 41°13'36" East, along property now or formerly owned by Quadvest, Inc., a distance of 48.71 feet to an iron pin located on the southwest right-of-way line of U.S. Highway No. 441; thence run South 38°15'42" East, along the southwest right-of-way line of U.S. Highway No. 441, a distance of 70.00 feet to an iron pin and the **POINT OF BEGINNING.** Said tract containing 6.153 acres more or less as shown on survey for Principal Mutual Life Insurance Company and Lawyers Title Insurance Corporation by Freeland-Clinkscales and Associates, Inc., James R. Freeland, Georgia Registered Land Surveyor No. 2221, dated May 20, 1994.

Exhibit A

TRACT 2

**TOGETHER WITH** all of the easements, rights and benefits which constitute appurtenances running with title to the insured property under the following instruments: (i) Reciprocal Easement Agreement by and between Bright-Meyers Milledgeville Associates, L.P. and Sunbelt-Dix, Inc., dated October 21, 1992, recorded in Deed Book 320, Page 628, aforesaid records; (ii) Easement Agreement by and between Century Bank and Trust and Bright-Meyers Milledgeville Associates, L.P., dated August 17, 1992, recorded in Deed Book 316, Page 450, aforesaid records; (iii) Warranty Deed from Bright-Meyers Milledgeville Associates, L.P. and Henry G. Andrews, dated February 5, 1992, recorded in Deed Book 305, Page 27, aforesaid records; and (iv) Easement Agreement (Second Easement Tract and Shopping Center) by and between Bright-Meyers Milledgeville Associates, L.P., Sunbelt-Dix, Inc. and Georgia Power Company, dated December 22, 1992, recorded in Deed Book 324, Page 365, aforesaid records.

06720/40153
LP ID No. 3

## EXHIBIT "B"
## TO LEASE

### LANDLORD'S EQUIPMENT

All machinery, apparatus, equipment, fittings, appliances and fixtures of every kind and nature whatsoever including all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air conditioning, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatus, equipment, fittings, appliances, engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switch-boards, and all storm doors and windows, dishwashers, attached cabinets and partitions and all articles of personal property of every kind and nature whatsoever now or hereafter affixed to, attached to, placed upon, used or usable in any way in connection with the use, enjoy-ment, occupancy or operation of the Leased Premises and Improvements but excluding coolers, trade fixtures, inventory, furniture and other personalty constituting Tenant's Equipment.

Exhibit A - Page 1

Exhibit A

06720/40153
LP ID No. 3

### EXHIBIT "C"
### TO LEASE

#### TENANT'S EQUIPMENT

All coolers, freezers, trade fixtures, inventory, furniture and other personalty belonging to Tenant, including the items listed on Schedule C-1.

Exhibit C - Page 1

Exhibit A

SCHEDULE C-1

| ASSET DESCRIPTION |
| --- |
| LOAD KING COMPLETE CHECKOUT LANE |
| IBM POS 2 POS TERMINAL |
| IBM POS 2 POS TERMINAL |
| IBM POS 2 POS TERMINAL |
| IBM POS 2 POS TERMINAL |
| IBM POS 2 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS 1 POS TERMINAL |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| IBM POS SCANNER SCALE |
| SURGE SUPPRESSOR |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |
| LOAD KING COMPLETE CHECKOUT LANE |

| ASSET DESCRIPTION |
| --- |
| LOAD KING COMPLETE CHECKOUT LANE |
| CUSTOMER SERVICE COUNTER |
| SOFTWARE |
| IBM 4690 REMOTE OPERATING SOFTWARE |
| IBM OPERATING SOFTWARE |
| ENCODER |
| BATCH ENCODER |
| STANDARD REGISTER BATCH ENCODER |
| SAFE W/THERMAL RELOCKERS |
| HOBART PX30-2 V/CHART |
| HOBART PX30-2 V/CHART |
| HOBART PX30-2 V/CHART |
| HOBART PX30-2 V/CHART |
| HOBART PX30-1 W/PAN & CHAIN |
| HOBART PX30-2 V/CHART |
| HOBART PX30-2 V/CHART |
| HOBART PX30-2 V/CHART |
| HOBART SP21500 PRINTER |
| HOBART SP21500 PRINTER OF SALE SCALE |
| HOBART SP21500 PRINTER |
| HOBART SP21500 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE W/FISH PAN |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART SP1500-2 SCALE |
| HOBART 976 SCALE |

| ASSET DESCRIPTION |
| --- |
| HOBART SCALEMASTER COMM MODULE |
| HOBART CHOPPER |
| HOBART 4246-2 MIXER/GRINDER |
| HOBART 5001-2 MEAT SAW |
| HOBART MEAT SAW |
| HOBART 403 TENDERIZER |
| SLICER STAND |
| SLICER STAMP |
| HOBART 1612E-1 ENHANCED SLICER |
| HOBART 1612E-1 ENHANCED SLICER |
| HOBART 1612E-1 ENHANCED SLICER |
| HOBART 1612E-1 ENHANCED SLICER |
| HOBART 1612E-1 ENHANCED SLICER |
| HOBART 1612E-1 ENHANCED SLICER |
| HOBART 1712E-1 ENHANCED SLICER |
| BREAD SLICER V/STAND |
| EVAPORATOR COIL FOR DAIRY COOLER |
| EVAPORATOR COIL FOR MEAT COOLER |
| EVAPORATOR COIL FOR MEAT COOLER |
| EVAPORATOR COIL FOR SEAFOOD FREEZER |
| EVAPORATOR COIL FOR DELI FREEZER |
| EVAPORATOR COIL FOR FREEZER |
| EVAPORATOR COIL FOR MEAT FREEZER |
| EVAPORATOR COIL FOR BAKERY COOLER |
| EVAPORATOR COIL FOR SEAFOOD COOLER |
| EVAPORATOR COIL FOR PRODUCE COOLER |
| EVAPORATOR COIL FOR MEAT PREP |
| EVAPORATOR COIL FOR MEAT PREP |
| EVAPORATOR COIL FOR SALAD COOLER |
| EVAPORATOR COIL FOR DELI COOLER |
| EVAPORATOR COIL FOR FLORAL COOLER |
| EVAPORATOR COIL FOR DAIRY COOLER |
| EVAPORATOR COIL FOR BAKERY FREEZER |
| EVAPORATOR COIL FOR FF FREEZER |
| EVAPORATOR COIL FOR FF FREEZER |

SCHEDULE C-1

Exhibit A

ASSET DESCRIPTION

EVAPORATOR COIL FOR IC FREEZER

CONDENSER
CONDENSER
CONDENSER

XPRT/HVAC REFRIG COMPUTER
LOW TEMP CMPD COOL SYSTEM - RACK A
LOW TEMP CMPD COOL SYSTEM - RACK B
MED TEMP CMPD COOL SYSTEM - RACK C
MED TEMP CMPD COOL SYSTEM - RACK D
HUSSMAN TAC CONDENSING UNIT

PENN DAIRY COOLER
PENN FREEZER
PENN ICE CREAM FREEZER
PENN PRODUCE COOLER
PENN HEAT COOLER
PENN SEAFOOD FREEZER
PENN SEAFOOD COOLER
PENN DELI FREEZER
PENN DELI COOLER
PENN BAKERY COOLER
PENN BAKERY FREEZER
PENN FLORAL COOLER
PENN ICE CREAM FREEZER

SPECIAL CABINET - BEER CASE
HUSSMAN SELF-CONTAINED WINE CASE
HUSSMAN 3' BEER & JUICE CASE
HUSSMAN 8' BEER & JUICE CASE
HUSSMAN 8' SOLID BACK DAIRY CASE
HUSSMAN 8' SOLID BACK DAIRY CASE
HUSSMAN 8' SOLID BACK DAIRY CASE
HUSSMAN 12' BEER & JUICE CASE
HUSSMAN 12' BEER & JUICE CASE
HUSSMAN 12' SOLID BACK DAIRY CASE
HUSSMAN 12' SOLID BACK DAIRY CASE
HUSSMAN 12' SOLID BACK DAIRY CASE
HUSSMAN 12' SOLID BACK DAIRY CASE
HUSSMAN 12' SOLID BACK DAIRY CASE
HUSSMAN 12' SOLID BACK DAIRY CASE

ASSET DESCRIPTION

HUSSMAN 12' SOLID BACK DAIRY CASE

S/S 4-DR REFRIG CABINET - SALAD BAR
FOOD PROCESSOR
LETTUCE CUTTER
TOMLINSON SOUP KETTLE
TOMLINSON SOUP KETTLE

FROZEN FOOD ENDS - 4
FROZEN FOOD ENDS - 4
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE
HUSSMAN REACH-IN FROZEN FOOD CASE

HUSSMAN REACH-IN ICE CREAM CASE
HUSSMAN REACH-IN ICE CREAM CASE
HUSSMAN REACH-IN ICE CREAM CASE
HUSSMAN REACH-IN ICE CREAM CASE
HUSSMAN REACH-IN ICE CREAM CASE
HUSSMAN REACH-IN ICE CREAM CASE

ASSET DESCRIPTION

HUSSMAN 8' MULTI-DECK LUNCH MEAT
HUSSMAN 8' MULTI-DECK LUNCH MEAT
HUSSMAN 8' MULTI-DECK LUNCH MEAT
HUSSMAN 12' MULTI-DECK LUNCH MEAT
HUSSMAN 12' MULTI-DECK REG TEMP MEAT
HUSSMAN 12' MULTI-DECK REG TEMP MEAT
HUSSMAN 12' MULTI-DECK REG TEMP MEAT
HUSSMAN 12' MULTI-DECK REG TEMP MEAT
HUSSMAN 12' MULTI-DECK POULTRY CASE
HUSSMAN 12' MULTI-DECK REG TEMP MEAT
HUSSMAN END ISLAND REFRIG MEAT
HUSSMAN END ISLAND REFRIG MEAT
HUSSMAN WIDE ISLAND REFRIG MEAT

FLORAL WALL
FLORAL POINT MERCHANDISER
3-TIER FLORAL CIRCULAR DISPLAY
3-TIER CIRCULAR FLORAL DISPLAY
3-STEP FLORAL DISPLAY
SERVICE COUNTER
MULTIPLE GLASS CUDC CONFIGURATION
FLORAL SINK STATION
3-TIER RADIUS BAKER
3-TIER RADIUS BAKER
WORK COUNTER
XL TERMINAL FOR FLORAL DEPT
OPEN FLORAL MERCHANDISER - MARK II
OPEN FLORAL MERCHANDISER - MARK II

HUSSMAN BANANA ENDS - 8
HUSSMAN MULTI-DECK FRESH PREPACK
HUSSMAN 8' MULTI-DECK REFRIG PROD
HUSSMAN 8' MULTI-DECK REFRIG PROD
HUSSMAN 8' MULTI-DECK REFRIG PROD
HUSSMAN 8' MULTI-DECK REFRIG PROD
HUSSMAN 12' MULTI-DECK REFRIG PROD
HUSSMAN 12' MULTI-DECK REFRIG PROD
HUSSMAN 12' MULTI-DECK REFRIG PROD
HUSSMAN 12' MULTI-DECK REFRIG PROD
HUSSMAN END ISLAND NON-REFRIG PROD
HUSSMAN END ISLAND NON-REFRIG PROD
HUSSMAN END ISLAND NON-REFRIG PROD
HUSSMAN END ISLAND NON-REFRIG PROD
HUSSMAN END ISLAND NON-REFRIG PROD
HUSSMAN END ISLAND NON-REFRIG PROD
HUSSMAN END ISLAND NON-REFRIG PROD

ASSET DESCRIPTION

HUSSMAN WIDE ISLAND REFRIG PRODUCE
HUSSMAN WIDE ISLAND REFRIG PRODUCE
HUSSMAN WIDE ISLAND REFRIG PRODUCE

PHARMACY VERGE
P94 NEW STORE SYSTEM FILE
PHARMACY CREDIT TERMINAL

KASHA TWIN VACUUM CLEANER
FLOORKEEPER

CLEAVER-BROOKS FILTER
FOLLETT BIN
ICE COMPLETE HOME ICE MACHINE W/BIN
ICE COMPLETE HOME ICE MACHINE W/BIN
HOSHIIZAKI URC - 24 C
HOSHIIZAKI REMOTE ICE CUBER

PYLON SIGN
EXTERIOR SIGNS

MIRROR PANEL

PHOTO LAB COMPLETE
FILM POWER BOY W/DISPLAYWALL BACK
PHOTO LAB LIGHTED SHOWCASE
XL TERMINAL - FILM PROCESSING DEPT

INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR

ASSET DESCRIPTION

INSECT-O-CUTOR

SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
3 ROLL FLOOR WRAPPER
SANISEALER WRAPPER CONSOLE
SANISEALER WRAPPER CONSOLE
SANISEALER WRAPPER CONSOLE
SANISEALER WRAPPER CONSOLE
MANUAL HEAT SEALER
HOBART HAND WRAP STATION
HOBART AUTOMATIC STRETCH WRAPPER

POPCORN MACHINE
SERVICE DELI & CHEESE CASE
SERVICE HOT FOOD CASE
P-33A CASE W/REAR STORAGE
ICE CREAM DIPPING CABINET
LOAD KING PORTABLE DESK FOR BAKERY
LOAD KING LOCKER FOR BAKERY
LOAD KING DONUT GLAZE TABLE
LOAD KING SYCE PROOF
LOAD KING DONUT FRYER
LOAD KING PIZZA PREP UNIT REFRIG
CUSTOM BUILT JUICE DISPLAY
CUSTOM-BUILT FOOD COURT
CVAP W/O 1000 DELI CHEF OVEN
CUSTOM 6' RACK UNITS - 3
CUSTOM TWO-LAYER BOX BINS - 3
CUSTOM ISLAND MERCHANDISERS - 6
DUAL COFFEE BREWER
COFFEE/TEA SERVER/DISPENSER
CUP DISPENSER
ICE & BEVERAGE DISPENSER
HOBART 34 STAND-HSFOD
DELI WALL-MOUNT SHELF
DELI MICROWAVE TABLE
CHEESE DISPLAY
JUICE DISPENSER
CROMWELIN TUMBLER - MARINATER
HAINO CHEESE WRAPPER
HAINO CHIP WRAPPER
COUNTER CONV PIZZA OVEN W/STAND
STAR GRILL
TOASTMASTER 4-SL TOASTER
COUNTER TOP GRIDDLE
FRESH N SQUEEZE JUICER

ASSET DESCRIPTION

JUPITER 4 SEATER ISLAND - 2
COUNTER TOP CUP DISPENSER
STAINLESS STEEL BOAT RACKS - 4
SS WALL MOUNT DELI STORAGE RACKS-6
HOBART PRESSURE FRYER W/FILTER
HOBART PRESSURE FRYER W/FILTER
HOBART MICROWAVE OVEN
HOBART MIXER
HOBART MIXER
ORANGE JUICER MACHINE
BAKER'S AID ELEC OVEN
BAKER'S AID ELECTRIC RACK OVEN
SAVORY BUN WARMER
DONUT DROPPER
MODEL 350E POPCORN POPPER
HOBART CONVECTION OVEN
HOBART ELECTRIC EXPANDO RANGE
HOT DOG GRILL
FHP 400 SMOKEHOUSE
SHARP MICROWAVE OVEN
HOBART FOOD PROCESSOR
HOBART ELECTRIC PROOFER
REFRIGERATED SERVICE W/WEDGE
REFRIGERATED SERVICE W/WEDGE
ADENDA SYCE WALL DISPLAY CASE
CONTEMPRA MOREFRIG SERVICE
CONTEMPRA CASH STAND
CONTEMPRA REFRIG SYCE
CONTEMPRA SYCE SERVICE DISPLAY
ADENDA SELF SERVICE W/WEDGE
ADENDA MOSR, HARD ROLL/WALL SHELV
CONTEMPRA MOREFRIG SYCE W/WEDGE
CONTEMPRA MOREFRIG SYCE W/WEDGE
CONTEMPRA REFRIG SELF SERVICE
CONTEMPRA OUTSIDE WEDGE
CONTEMPRA 77' FREEZER UNIT
PATTY MACHINE
FULLY AUTO 3 RACK ROLL IN PROOF BOX
FULLY AUTO 3 RACK ROLL IN PROOF BOX
HUSSMAN WIDE ISLAND CHEESE CASE
HUSSMAN WIDE ISLAND CHEESE CASE
HUSSMAN WIDE ISLAND DELI SANDWICH
HUSSMAN WIDE ISLAND DELI SANDWICH
HUSSMAN WIDE ISLAND CHEESE CASE
HUSSMAN WIDE ISLAND DELI SANDWICH

SERVICE FISH CASE
LOBSTER TANK
LOAD KING PORTABLE DESK FOR SEAFOOD
STAINLESS STEEL CABINET W/SINK
BOAT RACK

## ASSET DESCRIPTION

HOBART ELECTRIC STEAMER
HUSSMAN HOMEREFRI ISL FOR SF SAUCES

DSD DESK WITH DOORS
IBM STORE CONTROLLER/ORDERING VEHIC

UNIVERSAL ALUMINUM CARTS - 26
LOAD KING ALUM FLORAL CARTS - 2
LOAD KING ALUM DAIRY CARTS - 3
LOAD KING ALUM F / F CARTS - 3
LOAD KING ALUM I C CARTS - 6
LOAD KING STAINLESS SEAFOOD CART
LOAD KING ALUM CARTS FOR MEAT - 2
LOAD KING ALUM CARTS FOR MEAT - 5
LOAD KING ALUM CARTS FOR MEAT - 4
LOAD KING 8 X 4 ALUM CARTS - 4
MAX CART
DELI CART
CART
UNIVERSAL ALUM CARTS - 20

COPPER TUBING
COPPER TUBING
COPPER TUBING
COPPER TUBING
COPPER TUBING

29 GAL RECEPTACLE - 2
45 GAL DOME TOP TRASH RECEPTACLES-6
BALER

PALLET JACK SLIDER
PALLET JACK SLIDER
PALLET JACK SLIDER
SERCO DOCK LEVELERS
SERCO DOCK LEVELERS
SERCO DOCK LEVELERS
CRATE W/PORTABLE BASE

## ASSET DESCRIPTION

IK GENERATOR & TRANSFER SWITCH

WIRE FENCE

DELI PREP TABLE
MEAT PREP TABLE
LOAD KING BAKERY PREP TABLES - 2
LOAD KING PREP TABLE W/LABEL RACK
LOAD KING SALAD PREP TABLES - 2
LOAD KING PRODUCE PREP TABLES - 3
LOAD KING FISH PREP TABLE
LOAD KING FISH PREP TABLE
LOAD KING MEAT PREP TABLES - 5
LOAD KING MEAT PREP TABLE
LOAD KING 2-TIER MEAT GRIND TABLE
LOAD KING PRESTIGE MEAT TABLE
LOAD KING PREP TABLE
LOAD KING PREP TABLES - 5
LOAD KING DELI DUMPING TABLES - 2
LOAD KING DELI PREP TABLE W/LABEL
3/S DOLY TABLE W/SINK - SALAD BAR
EUROPEAN MAPLE TABLE W/CASTERS
EUROPEAN MAPLE TABLE W/CASTERS
PRESTIGE MEAT PREP TABLE
SEAFOOD PREP TABLE
DELI PREP TABLE
PRODUCT PREP TABLES - 2
2-TIER GRIND TABLE
VEG-TOG EUROPEAN TABLES - 3

ICE TABLE SPOT MERCHANDISER
ICE TABLE SPOT MERCHANDISER
HUSSMAN END WITH MIRROR
4' CAMEO HIGH BACK STEP ENDS - 4
POWER BUYS W/BUMPER & TRIM - 6
POWER BUYS W/DISPLAYWALL BACK - 2
ROLLING SAMPLING TABLE
FROZEN FOOD BLUFF
WALL OF VALUE BLUFF
DISPLAY WALL BLUFF
16' WINE RACK
ISLAND SPOT CASE END DISPLAYS - 4

## ASSET DESCRIPTION

HATCO FLAV-R-FRESH DISPLAY

PUBLIX SHELVING
PUBLIX SHELVING
HUSSMAN SHELVING
HUSSMAN SHELVING
PUBLIX SHELVING
12 GLASS SHELVES
HUSSMAN LIGHTED SHELVING

ELECTRIC AIR CURTAINS - 2
AIR CURTAINS

HANDICAP CART
SUPPLY CABINET
LOAD KING PORTABLE DESK FOR MEAT
LOAD KING PORTABLE DESK
LOAD KING LOCKERS - 2
LOAD KING LOCKERS - 7
LOAD KING DESK3-FROM,DAIRY,MEAT - 3
LOAD KING DESK FOR SALAD PREP DEPT
PARTY FAVORS GONDOLA
LOCATION DECOR
LUXOR VIDEO CONSOLE
BICYCLE RACK
BRITE LITE INTERIOR NEON GRAPHICS
BLOWER
E-Z SHOPPER HANDICAP CARTS - 2
DIAPER DECK - 2
6' OAK BENCHES - 2
4' OAK BENCHES - 2
3' OAK BENCH
KEY-MAKING COUNTER
"DRY CLEANING" SIGN
WALL DECOR FOR WINE DEPT
COMPUTER INTERFACE
LOAD KING 3 S FREESTANDING DESK
TV/VCR COMBO
PERSON WEIGHER

SHOPPING CARTS

BACKROOM SUPPLIES

Exhibit A

06720/40153
LP ID No. 3

EXHIBIT "D"
TO LEASE

[Reserved]

Exhibit D - Page 1

Exhibit A

06720/40153
LP ID No. 3

## EXHIBIT "E"
## TO LEASE

### BASIC RENT PAYMENTS

1.   Basic Rent.  Basic Rent shall be $260,295.00 per annum, payable on each March 1, June 1, September 1 and December 1 commencing on December 1, 1994, and continuing thereafter throughout the Initial Term (provided, however, if there is no Extended Term, the final installment of the Initial Term shall be made on August 31, 2014), in equal installments of $65,073.75 each, except that if the Commencement Date shall not occur on September 1, 1994, the installment of Basic Rent due on the first Basic Rent Payment Date shall be equal to the product of (a) the quarterly rent instalment and (b) the fraction whose numerator is the number of days from (and including) the Commencement Date through (and including) November 30, 1994 and whose dominator is ninety.

2.   Basic Rent During Extended Terms.  Basic Rent shall be $260,295.00 per annum, payable on each March 1, June 1, September 1 and December 1 commencing on December 1, 2014, and continuing thereafter throughout each of the Extended Terms (provided, however, the final payment of the last Extended Term shall be made on the last August 31 occurring during the final Extended Term of this Lease).

Exhibit E - Page 1

Exhibit A

06720/40153
LP ID No. 3

## EXHIBIT "F"
## TO LEASE

### PURCHASE PRICES

The Cost of the Leased Premises is $2,775,000.00. Upon the purchase of the Leased Premises by Tenant pursuant to paragraph 13(b), 14(g), 16 or 29 of this Lease, the purchase price payable shall be an amount equal to the sum of (i) the unpaid principal amount of the Note together with interest accrued and unpaid thereon and any applicable Make Whole Premium (based on Treasuries plus 50 basis points for paragraphs 16 and 29, and Treasuries plus 25 basis points for the penultimate sentence of paragraph 16) and (ii) the Equity Constant Percentage times the Cost of the Leased Premises plus $11,056.90 compounded quarterly at the rate of 10% per annum from the Commencement Date to the Termination Date. The "Equity Constant Percentage" means the amount (calculated to 6 places to the right of the decimal point) determined by dividing $4,430,554.93 by $69,018,000.00.

Exhibit F - Page 1

Exhibit A

06720\40153
LP ID No. 3

## EXHIBIT "G"

### LESSEE ESTOPPEL CERTIFICATE

The undersigned, _____,
a _____ (the "**Tenant**") is the tenant or lessee
under a Lease Agreement (the "**Lease**") dated as of _____,
1994, between Tenant and _____,
a _____, as Landlord (the "**Landlord**") of
certain real property located in _____, in the State of
Georgia as described on attached <u>Exhibit A</u> (the "**Premises**").  With
the understanding that _____,
a _____ ("**Lender**"), will rely upon the representations
made herein in making a loan of $_____ (the    "**Loan**")    to
Landlord evidenced by a Real Estate Note (the "**Note**") in said
amount executed by Landlord in favor of Lender and secured by a
Deed to Secure Debt and Security Agreement (the "**Mortgage**")
creating a first lien on the Premises and an Assignment of Lessor's
Interest in Leases creating a direct and absolute assignment to
Lender all of Landlord's rights, title and interest as Landlord in
and to the Lease, Tenant hereby represents and certifies as
follows:

1.    The Tenant is the owner and holder of all rights, title
and interest in the Lease.

2.    [The construction of the Improvements and installation of
the Equipment on the Premises has been substantially completed, and
such construction complies with the requirements of all laws,
ordinances, rules and regulations applicable thereto.]

3.    The Landlord does not have any unsatisfied obligations to
the Tenant arising out of or incurred in connection with the
construction of the Improvements on the Premises, the sale of the
Premises to the Landlord or the leasing of the Premises to the
Tenant, and no right of termination or offset exists with respect
to any rents or other sums payable or to become payable by the
Tenant under the Lease.

4.    All building permits [except certificates of occupancy],
if any, required for the operation of the Premises by the Tenant
have been obtained, and under applicable zoning and use laws,
ordinances, rules and regulations, as well as environmental
protection laws, the Premises may be used for the purposes
contemplated by the Tenant.

5.    The Lease is in full force and effect and has not been
modified, supplemented, canceled or amended in any respect except
as stated above.

Exhibit G - Page 1

Exhibit A

6.    The term of the Lease commenced on _____, 1994, and continues through at least _____, 20_____.   The Tenant is obligated to pay rent in quarterly instalments in an amount not less than $_____ each, which rent obligation is continuing and is not past due or delinquent in any respect. No instalment of rent has been or will be prepaid.

7.    The Premises comprise an approximately _____ square foot retail grocery store.

8.    No event has occurred or is continuing which would constitute a default by either the Tenant or the Landlord under the Lease or would constitute such a default but for the requirement that notice be given or that a period of time elapse or both.   No offset exists with respect to any rents or other sums payable or to become payable by the Tenant under the Lease.

9.    Landlord hereby directs Tenant to make all rent and other payments directly to Lender until otherwise advised in writing by Lender.   Landlord and Tenant hereby acknowledge the Landlord's authorization and direction to Tenant to make all payments due under the Lease directly to Lender (and whether or not any default ever occurs under the Note or Mortgage) after the date hereof to a bank designated in writing at least 10 business days prior to a rent payment date by Lender.

10.    The Tenant agrees to pay to Lender all rentals and any other sums due Landlord whatsoever under the Lease on the due date thereof without offset, counterclaim, deduction, defense, abatement, deferment or diminution for any reason (except as otherwise provided in paragraph 15 of the Lease), on or before such date such payments are due to the Landlord under the Lease and Tenant will not, for any reason whatsoever, seek to recover from Lender any monies paid to the Lender by virtue of the Lease notwithstanding that the Landlord shall not have had good right or lawful authority to lease the Premises to Tenant pursuant to the Lease.

11.    The Tenant agrees to deliver to Lender duplicate original copies of all notices, offers, undertakings, demands, statements, documents or other communications which it may deliver pursuant to the Lease.

12.    Any provisions of the Lease notwithstanding and so long as the Note is outstanding, Tenant agrees that it will not cause or permit any termination of the Lease by reason of the default of Landlord without first giving written notice to Lender ("Tenant's Notice") and affording to Lender the opportunity to cure the default within the periods (the "Cure Periods") hereinafter set forth.   Tenant's Notice shall be set forth with particularity the nature and extent of Landlord's default. If such action requires only the payment of money, Lender shall have twenty (20) days from the date of its receipt of Tenant's Notice within which to cure the

Exhibit G - Page 2

Exhibit A

default.  If such action requires more than the payment of money,
Lender shall have sixty (60) days and shall have such additional
time as is necessary provided that Lender commences action to cure
such default and diligently proceeds with said actions until the
cure is complete. In this connection, Lender shall have the right,
but not the obligation, to do any act or thing which is necessary
or proper to be done in the performance or observance of the
agreements, covenants and conditions of the Lease to be performed
or observed by Landlord to prevent or avoid termination of the
Lease by reason of Landlord's default.  In any event, the Lease
shall be and remain in full force and effect during the Cure
Periods and thereafter if Landlord's default set forth in Tenant's
Notice are timely cured within the Cure Period, and Tenant shall
not withhold or reduce the rent or any instalment of rent during
such Cure Period.

13.  Without the prior written consent of the Lender, Tenant
agrees not to enter into any agreement subordinating or terminating
the Lease nor to enter into any agreement amending or modifying the
Lease and any attempted subordination, amendment or termination
shall be void.  In the event that the Lease shall be amended,
modified or supplemented with the Lender's prior written consent,
the Lease as so amended, modified or supplemented shall continue to
be subject to the provisions of this Certificate. Tenant covenants
and agrees with Lender that Tenant shall remain obligated under the
Lease in accordance with its terms and that it will not take any
action to terminate, rescind or avoid the Lease notwithstanding the .
bankruptcy, insolvency, reorganization, composition, readjustment,
- liquidation, dissolution, winding up or other proceedings affecting
the Landlord or any assignee of the Landlord, and notwithstanding
any action with respect to the Lease which may be taken by an
assignee or receiver of the Landlord or any such assignee or by any
court in any such proceedings.

14.  Tenant agrees that if pursuant to paragraph [3(f)],
13(b), 14(g), 16 or 29 of the Lease, the Tenant shall offer to
purchase the Premises, or any part thereof, notice of acceptance of
such offer shall be deemed validly given for all purposes if given
by the Lender.  If the Tenant shall become obligated to purchase
the Premises, or any part thereof, pursuant to paragraph [3(f)],
13(b), 14(g), 16 or 29 of the Lease, a deed or other instrument
conveying and transferring the Premises, or any part thereof, which
is executed and delivered by the Lender, reciting Lender as agent
and attorney in fact of the Landlord will be acceptable as being in
compliance with the provisions of the Lease, provided that said
deed or other instrument shall otherwise be in compliance with the
provisions of the Lease.  The Tenant further agrees that if it
shall become necessary for the Lender or any other party to
institute any foreclosure or other judicial proceeding so that the
title to the Premises, or any part thereof, may be conveyed to the
Tenant, the time permitted for the delivery of the deed or other
instrument relating to such conveyance shall be extended to the
extent necessary to permit the Lender or such other party to

Exhibit G - Page 3

institute and conclude such foreclosure or other judicial proceedings, and the Tenant agrees that the Lease shall not terminate but shall continue in full effect until the expiration of such period of extension; provided, however, that the Tenant may, in lieu of waiting for the conclusion of such foreclosure or other judicial proceedings, terminate the Lease upon the purchase by the Tenant from the Lender without warranty or recourse, the Note, the Mortgage and all of the Lender's interest under the other documents and instruments evidencing, governing and securing the Loan for a purchase price equal to the lesser of (1) the outstanding principal balance of the Note and the accrued interest thereon, or (2) the purchase price (as determined pursuant to paragraph [3(f)], 13(b), 14(g), 16 or 29 of the Lease) and further provided that if the Lender shall fail, refuse or be unable to sell to the Tenant the Note, the Mortgage and the Lender's interest under the loan documents evidencing the Loan, then the Lease shall terminate upon the expiration of 60 days following the Tenant's offer to purchase the same.

15.    This Certificate may not be modified orally or in any manner other than by an agreement, in writing, signed by the parties hereto and their respective successors in interest. This Certificate shall inure to the benefit of and be binding upon the parties hereto, and their respective successors and assigns, and to no other persons or entities, and any representations, warranties and agreements made herein shall survive the closing of the Loan between the Lender and Landlord.

16.    In the event title to the Premises, or any part thereof, is acquired or becomes vested in the Tenant (other than pursuant to paragraph [3(f)], 13(b), 14(g), 16 or 29 of the Lease), whether pursuant to the Lease or otherwise, there shall be no merger of estates and the Lease shall not terminate or be affected thereby.

17.    For so long as the Note is outstanding, Lender or its designee may upon reasonable notice enter upon the Premises during regular business hours to visit or inspect the Premises and discuss the affairs, finances and accounts of Tenant applicable to the property or the Lease at such reasonable times as Lender or its designee may request.

18.    Neither the execution, delivery or performance of the Lease or this Certificate by Tenant violates any applicable law, order, writ, injunction or decree of any court or government authority of competent jurisdiction or results in any default under the terms of any agreement or instrument to which Tenant is a party or creates any lien, charge or encumbrance upon said property except those expressly created or permitted by the Lease.

19.    The Lease and this Certificate have been duly authorized, executed and delivered by Tenant and constitute legal, valid and binding instruments enforceable against Tenant in accordance with their respective terms, except as such terms may be limited by

Exhibit G - Page 4

Exhibit A

bankruptcy, insolvency or similar laws affecting creditor's rights generally.

20.    The provisions of the Lease, including the rents payable thereunder, were negotiated at arms length and no consent, authorization or approval of any government authority is necessary in connection with Tenant's execution, delivery or performance of the Lease or this Certificate.

21.    All notices, demands, requests or other communications to be given to Tenant or Lender pursuant hereto shall be in writing and shall be delivered by hand or sent by certified mail return receipt requested or by a reputable national service guaranteeing overnight delivery, postage prepaid, to (i) in the case of Tenant, _____, Attention: _____, (b) in the case of Lender, _____ _____, Attention: _____, or (c) at such other address as the party to be notified shall have specified by notice in writing.    Notices shall be effective upon receipt or upon refusal to accept delivery.

22.    Except as set forth herein, between Landlord and Tenant, the execution and delivery of this Certificate shall in no way expand the rights and obligations of the Landlord and Tenant arising under the Lease.

23.    This Certificate and the representations made herein shall be governed by the laws of the State of Georgia.

24.    Any capitalized terms used in this Certificate not otherwise herein defined shall have the same meaning as ascribed to such capitalized term in the Lease.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Exhibit G - Page 5

Exhibit A

        In witness whereof, this Certificate has been duly executed,
sealed and delivered by the authorized officers of the undersigned
as of _____, 19_____.

                              TENANT:

                              _____,
                              a _____


                              By:_____
                              Name:_____
                              Title:_____


                              [CORPORATE SEAL]


Exhibit G - Page 6


Exhibit A

LANDLORD

_____,

a _____

By:_____
Name:_____
Title:_____

[CORPORATE SEAL]

LENDER:

_____,

a _____

By:_____
Name:_____
Title:_____

[CORPORATE SEAL]

Exhibit G - Page 7