## REAL ESTATE NOTE

$2,872,931.50                    Waycross, Georgia                    August 25, 1994

    FOR VALUE RECEIVED, the undersigned, PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Georgia as Peregrine Ownership and Leasing Limited Partnership (hereinafter referred to as the "**Maker**"), promises to pay to the order of PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, an Iowa corporation [hereinafter referred to as the "**Payee**"; the Payee, together with any subsequent holder(s) hereof, hereinafter collectively referred to as the "**Holder**"], at the office of the Payee at 711 High Street, Des Moines, Iowa, 50392, or at such other place as the Holder may designate to the Maker in writing from time to time, the principal sum of Two Million Eight Hundred Seventy-Two Thousand Nine Hundred Thirty-One and 50/100 Dollars ($2,872,931.50) or so much thereof as shall from time to time have been advanced, together with interest on the unpaid balance of said sum from the date funds are advanced hereunder, at the rate of seven and nine hundred ten thousand four hundred sixteen one-millionths (7.910416%) per annum, computed on the basis of a 360 day year composed of twelve 30-day months, in installments as follows:

> On December 1, 1994, principal and interest shall be due and payable in the amount of Seventy One Thousand One Hundred Seventy-Two and 62/100 Dollars ($71,172.62), with quarterly installments consisting of principal and interest in the total amount of Seventy-One Thousand Eight Hundred Three and 90/100 Dollars ($71,803.90) being due and payable on the first day of each March, June, September and December thereafter until said principal and interest are fully paid, except that all remaining principal and interest shall be due and payable on August 31, 2014 ("**Maturity Date**"). Each installment shall be credited first upon interest then accrued and the remainder upon principal, and interest shall cease to accrue upon principal so credited. If on the date of the first installment, interest is accrued for more or less than one installment period, the amount of said installment shall be increased or decreased by the amount that the interest accrued exceeds or is less than the interest for one installment period based on the actual number of days elapsed to the date of said installment. All principal and interest shall be paid in lawful money of the United States of America.

    No privilege is reserved by the Maker to prepay any principal of this note prior to the Maturity Date, except that so long as no default or Event of Default exists under this note or any instrument by which it is secured, privilege is reserved, after giving sixty (60) days' prior written notice to the holder of this note, to prepay in full, but not in part, all principal and interest to the date of payment, along with all sums, amounts, advances, or charges due under any instrument or agreement by which this note is secured, upon the payment of a "**Make Whole Premium**." The

-2-

Make Whole Premium shall be the greater of (a) one percent (1%) of the principal amount to be prepaid, or (b) the excess, if any, of

   (i)   the aggregate present value as of the date of payment or prepayment noticed as set forth above (hereinafter, the "**Payment Date**") of each dollar of principal being paid or prepaid (taking into account the application of such prepayment as set forth herein) and the amount of interest (exclusive of interest accrued to the Payment Date) that would have been payable in respect of such dollar of principal being paid or prepaid if such payment or prepayment had not been made, determined by discounting such amounts monthly at a rate which is equal to the "**Treasury Rate**" from the due date of this note, <u>over</u>

   (ii)   100% of the principal amount being paid or prepaid.

The "**Treasury Rate**" will be equal to the arithmetic mean of the yields to maturity converted to a monthly equivalent of United States Treasury obligations with a constant maturity (as compiled by and published in the United States Federal Reserve Bulletin [H.R. 15] (hereinafter "**H.R. 15**") or its successor publication for each of the two weeks immediately preceding the Payment Date) most nearly equal to the remaining "Weighted Average Life to Maturity" of this note as of the Payment Date. If the yields referred to in the preceding sentence shall not have been so published, the yields corresponding to the Payment Date shall be calculated on the basis of the arithmetic mean of the arithmetic means of the secondary market ask rates, as of approximately 3:30 P.M., New York City time, on the last business days of each of the two weeks preceding the Payment Date, for the actively traded U.S. Treasury security or securities with a maturity or maturities most closely corresponding to the "Weighted Average Life to Maturity", as reported by three primary United States Government securities dealers in New York City of national standing selected in good faith by the holder of this note. If no maturity exactly corresponding to such remaining "Weighted Average Life to Maturity" should appear therein, yields for the next longer and the next shorter published maturities shall be calculated pursuant to the foregoing sentence and the Treasury Rate shall be interpolated from such yields on a straight-line basis (rounding to the nearest month).

The "**Weighted Average Life to Maturity**" with respect to this note means, at the Payment Date, the number of years obtained by dividing the "Remaining Dollar-years" of this note by the outstanding principal amount hereof. "**Remaining Dollar-years**" means the sum of the product obtained by multiplying (A) the amount of each then remaining required principal repayment (including repayment of any principal at the due date of this note) by (B) the number of years (rounded to the nearest one-twelfth) which will elapse between the Payment Date and the date such required payment is due.

    The Maker agrees that if the Holder accelerates the whole or any part of the principal sum evidenced hereby, or applies any proceeds as if such application had been made as a result of such acceleration, pursuant to the provisions of the "Security Instrument" (as hereinafter defined), between the Maker and Principal Mutual Life Insurance Company, the Maker waives any right to prepay said principal sum in whole or in part without premium and agrees to pay, as liquidated damages and not as a penalty, a "**Make Whole Premium**." Maker and Holder acknowledge and

-3-

agree that the actual loss of Holder in the event of any payment after acceleration, as herein provided, is impossible to ascertain as of the date of this Note and that the Make Whole Premium is a reasonable estimate of such loss. The Make Whole Premium shall be the greater of (a) one percent (1%) of the principal amount to be prepaid, or (b) the excess, if any, of

(i) the aggregate present value as of the date of payment or prepayment noticed as set forth above (hereinafter, the "**Payment Date**") of each dollar of principal being paid or prepaid (taking into account the application of such prepayment as set forth herein) and the amount of interest (exclusive of interest accrued to the Payment Date) that would have been payable in respect of such dollar of principal being paid or prepaid if such payment or prepayment had not been made, determined by discounting such amounts monthly at a rate which is equal to the "**Treasury Rate**" from the due date of this note, over

(ii) 100% of the principal amount being paid or prepaid.

The "**Treasury Rate**" will be equal to the arithmetic mean of the yields to maturity converted to a monthly equivalent of United States Treasury obligations with a constant maturity (as compiled by and published in the United States Federal Reserve Bulletin [H.R. 15] (hereinafter "**H.R. 15**") or its successor publication for each of the two weeks immediately preceding the Payment Date) most nearly equal to the remaining "Weighted Average Life to Maturity" of this note as of the Payment Date. If the yields referred to in the preceding sentence shall not have been so published, the yields corresponding to the Payment Date shall be calculated on the basis of the arithmetic mean of the arithmetic means of the secondary market ask rates, as of approximately 3:30 P.M., New York City time, on the last business days of each of the two weeks preceding the Payment Date, for the actively traded U.S. Treasury security or securities with a maturity or maturities most closely corresponding to the "Weighted Average Life to Maturity", as reported by three primary United States Government securities dealers in New York City of national standing selected in good faith by the holder of this note. If no maturity exactly corresponding to such remaining "Weighted Average Life to Maturity" should appear therein, yields for the next longer and the next shorter published maturities shall be calculated pursuant to the foregoing sentence and the Treasury Rate shall be interpolated from such yields on a straight-line basis (rounding to the nearest month).

The "**Weighted Average Life to Maturity**" with respect to this note means, at the Payment Date, the number of years obtained by dividing the "Remaining Dollar-years" of this note by the outstanding principal amount hereof. "**Remaining Dollar-years**" means the sum of the product obtained by multiplying (A) the amount of each then remaining required principal repayment (including repayment of any principal at the due date of this note) by (B) the number of years (rounded to the nearest one-twelfth) which will elapse between the Payment Date and the date such required payment is due.

It is hereby expressly agreed that should any default be made in the payment as stipulated above of either principal or interest which remains unpaid ten (10) days after due, or should Maker default in either conveying to Holder the undivided interest or making the payment abovesaid, or should any Event of Default as defined in the Security Instrument be made in the performance of

REAL ESTATE NOTE                                                                                                06720/40153
                                                                                                                LP I.D. No. 8

Exhibit B

any of the covenants or conditions contained therein or in any other document concerning or given as security for the indebtedness evidenced hereby, the principal of this obligation or any unpaid part thereof and all unpaid interest accrued thereon shall, at the option of the Holder, at once become due and payable and may be collected forthwith, regardless of the Maturity Date. Interest shall accrue on the outstanding principal balance of this note from the date of such default or Event of Default (so long as the same continues), regardless of whether or not there has been an acceleration of the principal indebtedness evidenced hereby at the rate equal to two percent (2%) in excess of that which would have accrued hereunder had such default or Event of Default not occurred. Time is of the essence of this note. The Maker agrees to pay all costs of collection including, but not limited to Holder's reasonable attorney's fees. In addition to the foregoing, a late charge shall be payable by Maker for any installment payment of principal or interest which is not paid within five (5) days following the due date thereof, and said late charge shall equal two percent (2%) of the amount paid late, to defray the expenses incurred in handling such delinquent payments.

Notwithstanding anything herein or in any instrument by which this note may be secured to the contrary, no provision contained herein or therein which purports to obligate the Maker to pay any amount of interest or any fees, costs or expenses which are in excess of the maximum permitted by applicable law, shall be effective to the extent it calls for the payment of any interest or other amount in excess of such maximum. Any such excess shall, at the option of the Holder, either be paid to the Maker or be credited to principal.

Presentment for payment, demand, protest and notice of demand, protest and non-payment are hereby waived by the Maker. Failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment, or the acceptance of a past due installment, shall not be construed as a novation of this note or as a waiver of the right of the Holder thereafter to insist upon strict compliance with the terms of this note without previous notice of such intention being given to the Maker. This note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.

The Maker hereby waives and renounces for itself, its legal representatives, successors, and assigns, all rights to the benefits of any appraisement, exemption, and homestead now provided or which may hereafter be provided by the Constitution and laws of the United States of America and of any state thereof to and in all his property, real and personal, against the enforcement and collection of the obligations evidenced by this note.

The Maker hereby transfers, conveys, and assigns to the Holder a sufficient amount of such homestead or exemption as may be set apart in bankruptcy, to pay this note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to the Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint the Holder the attorney-in-fact for the Maker to claim any and all such homestead or exemptions allowed by law.

-5-

The indebtedness evidenced by this note and the obligations created hereby are secured by that certain Deed to Secure Debt and Security Agreement (herein referred to as the "**Security Instrument**") entered into on even date herewith between the Maker and the Payee concerning certain Premises located in Waycross, Ware County, Georgia, which Security Instrument is to be filed for record on or about the date hereof in the appropriate public records of said County wherein said Premises is located.

This note is intended to constitute a contract under and shall be construed and enforceable in accordance with the laws of said State wherein is located the Premises conveyed by the Security Instrument.

As used herein, the terms "Maker," "Payee," and "Holder" shall be deemed to include their respective heirs, successors, legal representatives, and assigns, whether voluntary by action of the parties or involuntary by operation of law.

The following provisions shall govern Maker's personal liability:

(a) Notwithstanding any provision to the contrary in this note, the Security Instrument or any other instrument or agreement by which this note is secured (collectively referred to herein as the "**Loan Documents**"), and except as otherwise provided in this paragraph, the liability of Maker under the Loan Documents shall be limited to the interest of Maker in the Premises and the rents, issues, proceeds and profits thereof. In the event of foreclosure of the liens evidenced by the Loan Documents, no judgment for any deficiency upon the indebtedness evidenced by the Loan Documents shall be sought or obtained by the holder hereof against Maker. Nothing contained in this paragraph shall:

(i) prevent the failure of Maker to make any payment or to perform any obligation under any of the Loan Documents within the time periods provided therein from being an Event of Default thereunder;

(ii) be construed as limiting the obligations of Maker to any tenant under any lease of the Premises;

(iii) in any way limit or impair the lien or enforcement of the Loan Documents pursuant to the terms thereof; or

(iv) limit the obligations of any indemnitor or guarantor, if any, of Maker's obligations under the Loan Documents.

(b) Notwithstanding subparagraph (a) above, Maker shall be personally liable to the holder hereof for:

(i) Maker's failure to comply with paragraphs 1.02 (taxes) and 1.03 (insurance) of the Security Instrument;

REAL ESTATE NOTE

06720/40153
LP I.D. No. 8

Exhibit B

-6-

(ii)   any event or circumstance for which Maker indemnifies the holder hereof under paragraph 1.06(g) of the Security Instrument (environmental indemnity);

(iii)  Maker's failure to pay utilities on or before the date such payments are due;

(iv)   operation and maintenance of the Premises;

(v)    any sums expended by the holder hereof in fulfilling the obligations of Maker as lessor under any lease of the Premises prior to a sale of the Premises pursuant to foreclosure or power of sale, a bona fide sale (permitted by the terms of the Security Instrument or consented to in writing by the holder hereof) to an unrelated third party or upon conveyance to the holder hereof of the Premises by a deed acceptable to the holder hereof in form and content (each of which shall be referred to as a "Sale" for purposes of this paragraph) or expended by the holder hereof after a Sale of the Premises for obligations of Maker which arose prior to a Sale of the Premises;

(vi)   any rents or other income regardless of type or source of payment (including, but not limited to, CAM charges, lease termination payments, refunds of any type, prepayment of rents, settlements of litigation, or settlements of past due rents) from the Premises, which Maker has received or has a right to receive after an Event of Default under the Loan Documents or an event which, with the passage of time, the giving of notice, or both, would constitute an Event of Default, either or both of which has occurred and is continuing, and which are not applied to (A) expenses of operation and maintenance of the Premises and the taxes, assessments, charges and insurance of the Premises, taking into account sufficient reserves for the same and for replacements and recurring items, and (B) payment of principal, interest and other charges when due under the Loan Documents; provided that any payments to parties related to Maker shall be considered expenses of operation only if they are at market rates or fees consistent with market rates or fees for the same or similar services;

(vii)  any security deposits of tenants not turned over to the holder hereof upon conveyance of the Premises to the holder hereof pursuant to foreclosure or power of sale or by a deed acceptable to the holder hereof in form and content;

(viii) misapplication or misappropriation of tax reserve accounts, tenant improvement reserve accounts, security deposits, prepaid rents or other similar sums paid to or held by Maker or any other entity or person in connection with the operation of the Premises;

(ix)   any waste committed or allowed by Maker with respect to the Premises; and

(ix)   any insurance or condemnation proceeds or other similar funds or payments applied by Maker in a manner other than as expressly provided in the Loan Documents.

-7-

(c) Notwithstanding anything to the contrary in the Loan Documents, the limitation on liability contained in subparagraph (a) above SHALL BECOME NULL AND VOID and shall be of no further force and effect in the event:

(i) of any breach or violation of paragraph 1.17 (due on sale or encumbrance) of the Security Instrument; or

(ii) of any fraud or willful misrepresentation by Maker regarding the Premises, the making or delivery of any of the Loan Documents or in any materials or information provided by Maker in connection with the loan evidenced hereby.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

-8-

IN WITNESS WHEREOF, the Maker has executed this Note under seal on the date first above written.

        PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Georgia as Peregrine Ownership and Leasing Limited Partnership

By: Equity FC, Ltd., an Iowa corporation, its general partner

By: *Karen A. Pearston*
Name: Karen A. Pearston
Title: Counsel

By: *Leanne M. Swenson*
Name: LEANNE M. SWENSON
Title: Counsel

[CORPORATE SEAL]

REAL ESTATE NOTE

J:\RE\06720\40153\lp8\NOTE2.189

06720/40153
LP I.D. No. 8
August 23, 1994

Exhibit B