UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | * | |
| | | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | * | |
| | | Chapter 11 |
| Debtors | * | |
| | | Jointly Administered |
| *    *    *    *    *    *    * | * | *    *    *    *    *    * |

**LIMITED OPPOSITION OF ALLIED CAPITAL CORPORATION, CWCAPITAL ASSET MANAGEMENT LLC, CRIIMI MAE SERVICES LIMITED PARTNERSHIP AND ORIX CAPITAL MARKETS, LLC[1] TO THE DEBTORS' AMENDED MOTION FOR AN ORDER (A) AUTHORIZING THE DEBTORS TO RETAIN LIQUIDATING AGENT AND APPROVING AGENCY AGREEMENT, (B) AUTHORIZING THE DEBTORS TO SELL MERCHANDISE FREE AND CLEAR OF LIENS THROUGH STORE CLOSING SALES IN ACCORDANCE WITH ATTACHED GUIDELINES AND (C) GRANTING RELATED RELIEF**

Allied Capital Corporation ("Allied"), in its capacity as the holder of the mortgages on five properties leased to the Debtors, and CWCapital Asset Management LLC ("CWCapital"), CRIIMI MAE Services Limited Partnership ("CMSLP") and ORIX Capital Markets, LLC ("ORIX"), in their capacities as servicers, special servicers and/or landlords of over 125 properties leased to the Debtors (collectively, the "Winn-Dixie Stores"), by and through their undersigned counsel, file this limited opposition to the Amended Motion for an Order (A) Authorizing the Debtors to Retain Liquidating Agent and Approving Agency Agreement, (B) Authorizing the Debtors to Sell Merchandise Free and Clear of

---

[1] CWCapital Asset Management LLC, CRIIMI MAE Services Limited Partnership and ORIX Capital Markets, LLC are not acting in their individual capacities, but rather they are acting solely in their capacity as loan servicers.

Liens through Store Closing Sales in Accordance with the Attached Guidelines and (C) Granting Related Relief (the "Motion") filed by Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), and in support thereof state as follows:

## BACKGROUND

On or about February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their affairs as debtors-in-possession. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. As of the Petition Date, the Debtors operated more than 900 stores in the United States, with virtually all of the Debtors' store locations being leased rather than owned.

With respect to the Winn-Dixie Stores, a substantial percentage of landlords (the "Landlords") financed their shopping centers through secured loans (the "Loans") that were pooled into trusts, the beneficial ownership of which is evidenced by various classes of commercial mortgage pass-through certificates (the "Trusts"). Allied, CWCaptial, CMSLP and ORIX (collectively, the "Servicers") are the servicers for the various Loans.

In connection with obtaining the Loans, the Landlords executed a form of mortgage or deed of trust, promissory note, and assignment of leases and rents (collectively, the "Loan Documents"). Pursuant to the terms of the Loan

Documents, the Trusts hold liens on all rights, title and interest in and to the Winn-Dixie Stores, including but not limited to all buildings, structures, improvements and tenements thereon, all easements, rights-of-way, appurtenances, leases, rents, issues, proceeds, profits, and all fixtures, machinery, motors, elevators, radiators, and all plumbing, heating, lighting ventilating, refrigerating, air conditioning and sprinkler equipment, and other interests as set forth in the mortgage (collectively, the "Collateral Property").

## THE PROPOSED SALE

In June of 2005, the Debtors announced that they would be closing over three hundred stores as part of a Strategic Plan. In furtherance of that plan, the Debtors filed the instant Motion seeking authority to sell existing inventory, equipment and supplies (collectively, the "Merchandise") and the furniture, fixtures and equipment (collectively, the "FF&E") from as many as 326 stores located in eight different states[2] (collectively, the "Target Stores"). Of those Target Stores, at least twenty-eight (28) are leased (the "Leases")[3] from Landlords who have granted the Trusts liens and security interests on the stores.[4]

The Servicers object to the proposed sales because it is impossible to tell from the Motion what the Debtors intend to include in the sale of FF&E. Indeed, the Motion only describes the FF&E in the most general of terms. The

---

[2] The states include Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina and Tennessee.

[3] A representative copy of one of the Leases for the Winn-Dixie Stores is attached hereto as Exhibit A.

[4] A list of the twenty-eight Target Stores that are included in the Trusts is attached hereto as Exhibit B.

3

Agency Agreement, which is attached as Exhibit A to the Motion, does not identify the FF&E to be sold at any given store, but rather states that at the Debtors' sole discretion an election can be made on a store by store basis to sell the FF&E. It is clear from the Loan Documents and the Leases that each of the Winn-Dixie Stores includes fixtures and equipment that do not belong to the Debtors, but instead belong to the Landlords and are therefore the Trusts' collateral and not the proper subject of the pending Motion.

## THE SALE MOTION SHOULD BE DENIED TO THE EXTENT THAT IT SEEKS AUTHORITY TO SELL NON-DEBTOR PROPERTY

A debtor cannot sell property that it does not own under Section 363 of the Bankruptcy Code.[5] The Servicers object to the Motion because it is impossible to tell from the bare, generalized descriptions provided in the Motion and Agency Agreement, whether the Debtors own the items that they propose to sell. Some, and perhaps all, of the FF&E may belong to the Landlords and serve as collateral for the Trusts' loans to the Landlords under the Loan Documents.

To determine whether an item is a fixture, Courts look to the law of the state where the real property is located. See Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law"). In South Carolina, for example, the law provides that one must consider the "(1) mode of attachment, (2) character of structure or article, (3) the intent of the parties making the annexation, and (4) the relationship of the parties." Carjow, LLC v. Simmons,

---

[5] A trustee may sell the property of certain co-owners under Section 363, but the narrow exceptions to the general rule are not applicable in this case.

4

563 S.E. 2d. 359, 362 (S.C. Ct. App. 2002).[6]  In applying the foregoing or similar tests, various courts have found that items such as those which could conceivably be included in the Debtors' definition of FF&E are in fact fixtures that are a part of the realty.  See, e.g., In re Vic Bernacchi & Sons, 170 B.R. 647, 653 (Bankr. N.D. Ind. 1994) (conveyor system and conveyor belt found to be fixtures); In re Mayfield, 31 B.R. 900, 902 - 05 (Bankr. E.D. Tenn. 1983) (elevators found to be fixtures); Washington Metro. Area Transit Auth. v. Precision Small Engines, et al., 227 F.3d 224 (4th Cir. 2000) (mezzanine that was bolted to the wall and required disassembly prior to removal was a fixture that was a part of the realty, rather than a trade fixture belonging to the tenant).

In addition, the Landlords and the Debtors frequently agreed in the Leases that certain personal property and fixtures at the Target Stores belongs to the Landlords, rather than the Debtors.  In many instances, the Debtors leased not only the land, but also the "Improvements" and "Landlord's Equipment" at the

---

[6] Similar criteria are used in Alabama, Florida, Georgia, Mississippi and North Carolina.  See, e.g., In re Albright, 214 B.R. 408, 409-410 (Bankr. N.D. Ala. 1997) (stating that the criteria for determining what constitutes a fixture are (1) whether there is an actual annexation to the realty or something appurtenant thereto; (2) the appropriateness to the use of purposes of that part of the realty with which it is connected; and (3) the intention of the party making the annexation); In re Gray Indus., Inc., 595 F.2d 1045, 1048 (5th Cir. 1979) (discussing annexation, appropriateness to the use of that part of the realty to which it is connected, and the intention of the party making the annexation as the factors to determine what constitutes a fixture); Homac Inc. v. Fort Wayne Mortgage Co., 577 F. Supp. 1065, 1069-70 (N.D. Ga. 1983) (describing three part test for determining what is a fixture: degree of physical attachment and removability of the article, the intention of the parties and whether the requisite unity of title between the personalty and realty was present at the time it became a fixture); Motorola Communications and Elecs., Inc. v. Dale, 665 F.2d 771, 773 (5th Cir. 1982) (stating that a fixture determination must consider the nature, mode of attachment, purpose for which it is used, relation of the party making the annexation and other attendant circumstances that would indicate intent); Wilson v. McLeod Oil Co., 398 S.E.2d 586, 598 (N.C. S. Ct. 1990) (considering the manner of attachment, nature and purpose for which the article is attached to the realty, and the intention with which the annexation was made).

5

Target Stores.  Typically, the Leases define Improvements as "buildings, structures and other improvements constructed and to be constructed on the Land...."  See Ex. A, Representative Lease at ¶ 1(a).  Landlord's Equipment, on the other hand, is identified in the Leases as the machinery and equipment listed on an attached schedule, which is "installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefore and replacements thereof permitted by this Lease...."  See id.  The schedule of Landlord's Equipment covers:

> All machinery, apparatus, equipment, fittings, appliances and figures of every kind and nature whatsoever including all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air conditioning, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatus, equipment fittings, appliances, engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switch-boards, and all storm doors and windows, dishwashers, attached cabinets and partitions and all articles of personal property of every kind and nature whatsoever now or hereafter affixed to, attached to, placed upon, used or usable in any way in connection with the use, enjoyment, occupancy or operation of the Leased Premises and Improvements but excluding coolers, trade fixtures, inventory, furniture and other personalty constituting Tenant's Equipment.[7]

Id. at Schedule B.

---

[7] Many of the Leases have a separate schedule setting forth the specific items, which constitute the "Tenant's Equipment."  The Servicers do not object to the Motion to the extent it seeks authority for the sale of items that qualify as Tenant's Equipment, so long as any damage caused by the removal and sale of those items is repaired, as provided for in the Agency Agreement, in accordance with the terms of the Leases.

The Leases also contemplate that the Debtors may make certain "Alterations"[8] to the Winn-Dixie Stores. However, any such Alterations become property of landlord and accordingly are additional security for landlord's obligations under the Loan Documents. To the extent that any of the FF&E items that the Debtors are proposing to sell were not part of the Winn-Dixie Stores when the Leases were executed, those items would be Alterations and consequently the property of Landlords, not the Debtors. The same Alterations would then become further collateral for the liens of the Trusts. As such, the Debtors do not have the right to remove Alterations under the Lease.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[8] The Leases typically define Alterations as "changes, additions, improvements or repairs to, all alterations, reconstructions, renewals or removals of, and all substitutions or replacements for, any of the Improvements or Landlord's Equipment, whether interior or exterior, structural or non-structural, or ordinary or extraordinary." See id. at ¶ 12.

WHEREFORE, Allied Capital Corporation, CWCapital Asset Management LLC, CRIIMI MAE Services Limited Partnership and ORIX Capital Markets, LLC respectfully request that this Court enter an Order (i) denying the Debtors' Motion; and (ii) granting the Trusts such other and further relief as is just and proper.

Dated: July 20, 2005.

    /s/ Gregory A. Cross
Gregory A. Cross, Esq.
Heather Deans Foley, Esq.
Venable LLP
1800 Mercantile Bank & Trust Bldg.
Two Hopkins Plaza
Baltimore, Maryland 21201
(410) 244-7400 (Phone)
(410) 244-7742 (Facsimile)
e-mail: gacross@venable.com

-and-

Richard R. Thames
Nina M. LaFleur
Stutsman & Thames, P.A.
121 W. Forsyth Street, Suite 600
Jacksonville, Florida 32202
(904) 358-4000 (Phone)
(904) 358-4001 (Facsimile)
e-mail: rrthames@stutsman-thames.com

*Attorneys for Allied Capital Corporation,*
*CWCapital Asset Management LLC,*
*CRIIMI MAE Services Limited Partnership*
*and ORIX Capital Markets, LLC,*
*as Servicers, Special Servicers and/or Landlords*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of July, 2005, a copy of the foregoing Limited Opposition of Allied Capital Corporation, CWCapital Asset Management LLC, CRIIMI MAE Services Limited Partnership and ORIX Capital Markets, LLC to the Debtors' Amended Motion for an Order (A) Authorizing the Debtors to Retain Liquidating Agent and Approving Agency Agreement, (B) Authorizing the Debtors to Sell Merchandise Free and Clear of Liens Through Store Closing Sales in Accordance with Attached Guidelines and (C) Granting Related Relief was served electronically and via first class mail, postage prepaid, on each of the following:

> David J. Baker
> Skadden Arps Slate Meagher & Flom, LLP
> Four Times Square
> New York, New York 10036
> djbaker@skadden.com
>
> Cynthia C. Jackson
> Smith Hulsey & Busey
> 225 Water Street, Suite 1800
> Jacksonville, Florida 32202
> cjackson@smithhulsey.com


                /s/ Heather Deans Foley
                Heather Deans Foley