**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: * | |
| * | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., * | |
| * | Chapter 11 |
| Debtors * | |
| * | Jointly Administered |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**LIMITED OPPOSITION OF ALLIED CAPITAL CORPORATION,
CWCAPITAL ASSET MANAGEMENT LLC,
CRIIMI MAE SERVICES LIMITED PARTNERSHIP AND
ORIX CAPITAL MARKETS, LLC[1] TO THE DEBTORS' MOTION FOR
ORDER (A) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF
LIENS, CLAIMS AND INTERESTS AND EXEMPT FROM TAXES,
(B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF LEASES
AND CONTRACTS AND (C) GRANTING RELATED RELIEF**

Allied Capital Corporation ("Allied"), in its capacity as the holder of the mortgages on five properties leased to the Debtors, and CWCapital Asset Management LLC ("CWCapital"), CRIIMI MAE Services Limited Partnership ("CMSLP") and ORIX Capital Markets, LLC ("ORIX"), in their capacities as servicers, special servicers and/or landlords of over 125 properties leased to the Debtors (collectively, the "Winn-Dixie Stores"), by and through their undersigned counsel, file this limited opposition to the Motion for an Order (A) Authorizing the Sale of Assets Free and Clear of Liens, Claims and Interests and Exempt from Taxes, (B) Authorizing the Assumption and Assignment of Leases and Contracts and (C) Granting Related Relief (the "Motion") filed by Winn-Dixie Stores, Inc. and

---

[1] CWCapital Asset Management LLC, CRIIMI MAE Services Limited Partnership and ORIX Capital Markets, LLC are not acting in their individual capacities, but rather they are acting solely in their capacity as loan servicers.

twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), and in support thereof state as follows:

## BACKGROUND

On or about February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their affairs as debtors-in-possession.  The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  As of the Petition Date, the Debtors operated more than 900 stores in the United States, with virtually all of the Debtors' store locations being leased rather than owned.

With respect to the Winn-Dixie Stores, a substantial percentage of landlords (the "Landlords") financed their shopping centers through secured loans (the "Loans") that were pooled into trusts, the beneficial ownership of which is evidenced by various classes of commercial mortgage pass-through certificates (the "Trusts").  Allied, CWCapital, CMSLP and ORIX (collectively, the "Servicers") are the servicers for the various Loans.

In connection with obtaining the Loans, the Landlords executed a form of mortgage or deed of trust, promissory note, and assignment of leases and rents (collectively, the "Loan Documents").  Pursuant to the terms of the Loan Documents, the Trusts hold liens on all rights, title and interest in and to the Winn-Dixie Stores, including but not limited to all buildings, structures, improvements

and tenements thereon, all easements, rights-of-way, appurtenances, leases, rents, issues, proceeds, profits, and all fixtures, machinery, motors, elevators, radiators, and all plumbing, heating, lighting ventilating, refrigerating, air conditioning and sprinkler equipment, and other interests as set forth in the mortgage (collectively, the "Collateral Property").

## THE PROPOSED ASSIGNMENTS

In June of 2005, the Debtors announced that they would be closing over three hundred stores as part of a Strategic Plan. In furtherance of that plan, the Debtors filed the instant Motion seeking authority to sell the leases on 326 stores located in eight different states[2] (collectively, the "Target Stores"). Of those Target Stores, at least twenty-eight (28) are leased (the "Leases")[3] from Landlords who have granted the Trusts liens and security interests on the stores.[4] In addition to offering for sale the Debtors' interest, as tenant, under the Leases, the Debtors are purporting to also include the Debtors' interest in any leasehold improvements, fixtures and equipment located in the Target Stores (collectively, the "Sale Assets"). Pursuant to § 363(f) of the Bankruptcy Code, the Debtors are seeking approval to sell these items free and clear of any liens, claims or interests.

The Servicers object to the proposed sales because it is impossible to tell from the Motion what the Debtors intend to include as part of the Sale Assets.

---

[2] The states include Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina and Tennessee.

[3] A representative copy of one of the Leases for the Winn-Dixie Stores is attached hereto as Exhibit A.

[4] A list of the twenty-eight Target Stores that are included in the Trusts is attached hereto as Exhibit B.

3

Indeed, the proposed Asset Purchase Agreement attached as Exhibit E to the Motion describes "Improvements" as the Debtors' interest in "heating and air conditioning systems, facilities used to prove any utility services, or other similar services to the Building, elevators, docks, lifts, doors, storefronts, ceilings, walls, partitions, lighting fixtures, and flooring," while "Equipment" is broadly defined as "trade fixtures and equipment located in the Building." No specific list of items to be sold at any given store is included in the Motion. It is clear, however, from the Loan Documents and the Leases that each of the Winn-Dixie Stores includes fixtures and equipment that do not belong to the Debtors, but instead belong to the Landlords and are therefore the Trusts' collateral and not the proper subject of the pending Motion.

    The Motion is also objectionable because it fails to recognize the interests of the Trusts pursuant to their Loan Documents. The Landlords have granted the Trusts a lien on rents and an assignment of leases as collateral for the repayment of the Loans. By seeking authority to assign the Debtors' interests in the Leases free and clear of any liens, claims or interests, the Debtors are purporting to improperly cut-off the Trusts' contractual lien rights in the rents and leases. Moreover, to the extent that the Debtors are proposing to consummate the assignments without obtaining consent from the Landlords, the Debtors are impairing the corresponding rights of the Trusts under the Loan Documents to approve lease assignments that impact their collateral. Any assignment of the

Leases must provide adequate protection for the pre-existing rights of the Trusts under the Loan Documents.

## ARGUMENT

*I.  The Motion Should be Denied to the Extent that it Seeks Authority to Sell Non-Debtor Property.*

A debtor cannot sell property that it does not own under Section 363 of the Bankruptcy Code.[5] The Servicers object to the Motion because it is impossible to tell from the bare, generalized descriptions provided in the Motion and proposed form of Asset Purchase Agreement, whether the Debtors own the items that they propose to sell. Some, and perhaps all, of the improvements, fixtures and equipment may belong to the Landlords and serve as collateral for the Trusts' loans to the Landlords under the Loan Documents.

To determine whether an item is a fixture, Courts look to the law of the state where the real property is located. See Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law"). In South Carolina, for example, the law provides that one must consider the "(1) mode of attachment, (2) character of structure or article, (3) the intent of the parties making the annexation, and (4) the relationship of the parties." Carjow, LLC v. Simmons, 563 S.E. 2d. 359, 362 (S.C. Ct. App. 2002).[6] In applying the foregoing or similar

---

[5] A trustee may sell the property of certain co-owners under Section 363, but the narrow exceptions to the general rule are not applicable in this case.

[6] Similar criteria are used in Alabama, Florida, Georgia, Mississippi and North Carolina. See, e.g., In re Albright, 214 B.R. 408, 409-410 (Bankr. N.D. Ala. 1997) (stating that the criteria for determining what constitutes a fixture are (1) whether there is an actual annexation to the realty or something appurtenant thereto; (2) the appropriateness to the use of purposes of that part of the realty with which it is connected; and (3) the intention of the party making the

5

tests, various courts have found that items such as those which could conceivably be included in the Sale Assets are in fact fixtures that are a part of the realty.  See, e.g., In re Vic Bernacchi & Sons, 170 B.R. 647, 653 (Bankr. N.D. Ind. 1994) (conveyor system and conveyor belt found to be fixtures); In re Mayfield, 31 B.R. 900, 902 - 05 (Bankr. E.D. Tenn. 1983) (elevators found to be fixtures); Washington Metro. Area Transit Auth. v. Precision Small Engines, et al., 227 F.3d 224 (4th Cir. 2000) (mezzanine that was bolted to the wall and required disassembly prior to removal was a fixture that was a part of the realty, rather than a trade fixture belonging to the tenant).

   In addition, the Landlords and the Debtors frequently agreed in the Leases that certain personal property and fixtures at the Target Stores belongs to the Landlords, rather than the Debtors.  In many instances, the Debtors leased not only the land, but also the "Improvements" and "Landlord's Equipment" at the Target Stores.  Typically, the Leases define Improvements as "buildings, structures and other improvements constructed and to be constructed on the Land...."  See Ex. A, Representative Lease at ¶ 1(a).  Landlord's Equipment, on the other hand, is

---

annexation); In re Gray Indus., Inc., 595 F.2d 1045, 1048 (5th Cir. 1979) (discussing annexation, appropriateness to the use of that part of the realty to which it is connected, and the intention of the party making the annexation as the factors to determine what constitutes a fixture); Homac Inc. v. Fort Wayne Mortgage Co., 577 F. Supp. 1065, 1069-70 (N.D. Ga. 1983) (describing three part test for determining what is a fixture: degree of physical attachment and removability of the article, the intention of the parties and whether the requisite unity of title between the personalty and realty was present at the time it became a fixture); Motorola Communications and Elecs., Inc. v. Dale, 665 F.2d 771, 773 (5th Cir. 1982) (stating that a fixture determination must consider the nature, mode of attachment, purpose for which it is used, relation of the party making the annexation and other attendant circumstances that would indicate intent); Wilson v. McLeod Oil Co., 398 S.E.2d 586, 598 (N.C. S. Ct. 1990) (considering the manner of attachment, nature and purpose for which the article is attached to the realty, and the intention with which the annexation was made).

identified in the Leases as the machinery and equipment listed on an attached schedule, which is "installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefore and replacements thereof permitted by this Lease…." See id. The schedule of Landlord's Equipment covers:

> All machinery, apparatus, equipment, fittings, appliances and figures of every kind and nature whatsoever including all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air conditioning, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatus, equipment fittings, appliances, engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switch-boards, and all storm doors and windows, dishwashers, attached cabinets and partitions and all articles of personal property of every kind and nature whatsoever now or hereafter affixed to, attached to, placed upon, used or usable in any way in connection with the use, enjoyment, occupancy or operation of the Leased Premises and Improvements but excluding coolers, trade fixtures, inventory, furniture and other personalty constituting Tenant's Equipment.[7]

Id. at Schedule B.

The Leases also contemplate that the Debtors may make certain "Alterations"[8] to the Winn-Dixie Stores. However, any such Alterations become property of landlord and accordingly are additional security for landlord's

---

[7] Many of the Leases have a separate schedule setting forth the specific items, which constitute the "Tenant's Equipment." The Servicers do not object to the Motion to the extent it seeks authority for the sale of items that qualify as Tenant's Equipment, so long as any damage caused by the removal and sale of those items is repaired, as provided for in the Agency Agreement, in accordance with the terms of the Leases.

[8] The Leases typically define Alterations as "changes, additions, improvements or repairs to, all alterations, reconstructions, renewals or removals of, and all substitutions or replacements for, any of the Improvements or Landlord's Equipment, whether interior or exterior, structural or non-structural, or ordinary or extraordinary." See id. at ¶ 12.

7

obligations under the Loan Documents. To the extent that any of the Sale Assets were not part of the Winn-Dixie Stores when the Leases were executed, those items would be Alterations and consequently the property of Landlords, not the Debtors. The same Alterations would then become further collateral for the liens of the Trusts. As such, the Debtors do not have the right to remove Alterations under the Lease.

II.     *The Motion Ignores the Lien Rights of the Trusts.*

In relevant part, Section 363 of the Bankruptcy Code provides as follows:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). The instant Motion is fundamentally flawed because the Debtors fail to recognize the first priority liens of the Trusts. Moreover, the Debtors bear the burden of proving that a sale of the Leases free and clear of the Trusts' liens

8

meets at least one of the five requirements contained in 11 U.S.C. § 363(f). Having made no such showing, the Debtors' Motion is facially deficient.

Even if the Debtors had recognized the Trusts' liens, the proposed sale of the Leases on the Winn-Dixie Stores would not meet any of the requirements contained in 11 U.S.C. § 363(f). Specifically, the proposed sale of Leases would not meet the requirements of subsections (1), (2), (3) or (4) because (i) applicable nonbankruptcy law does not permit the sale free and clear of the Trusts' interests, (ii) the Trusts do not consent to the sales, (iii) there is no evidence that the price at which the Debtors propose to sell the Leases exceeds the aggregate value of the liens held by the Trusts, and (iv) the interests of the Trusts are not in dispute. See 11 U.S.C. § 363(f)(1)-(4).

The Motion is also objectionable because it purports to cut off the Trusts' liens against the proceeds of any sale. Courts that have allowed a sale to occur pursuant to § 363 have uniformly found that a secured creditor's lien attaches to the proceeds of the sale. See In re Healthco Int'l, Inc., 174 B.R. 174, 177 (Bankr. D. Mass. 1994); and Sherer v. Federal Nat'l Mortgage Ass'n (In re Terrace Chalet Apts., Ltd.), 159 B.R. 821, 829 (D.N.D. Ill. 1993). The legislative history of § 363(f) makes it clear that any "sale under this subsection is subject to the adequate protection requirement . . . [and that] most often, adequate protection in connection with the sale free and clear of other interests will be to have those interests attached to the proceeds of the sale." House Rep. No. 95-595, 95th Cong., 1st Sess. 345 (1977); see also In re The Lady H Coal Co., Inc., et al., 199 B.R. 595, 605

(Bankr. S.D. W.Va. 1996), aff'd 99 F.3d 573 (4th Cir. 1996) (stating that the "well established rule that sales within a bankruptcy proceeding occur free and clear of any interest is founded upon the principle that good faith purchasers receive clean title to the property and *that any claim against the property attach to the proceeds*")(emphasis added). The Trusts' lien rights must attach to the proceeds of any sale that satisfies the other requirements of § 363 of the Bankruptcy Code.

III.    *The Debtors' Motion Contravenes the Terms of the Leases and the Loan Documents.*

Section 363(e) of the Bankruptcy Code provides, in relevant part, that, "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." To the extent that the Debtor wants to assign the Leases, the Debtors must comply with these requirements, as well as the terms of the Leases and the Loan Documents. See Calvert v. Bongards Creameries (In re Schauer), 835 F.2d 1222, 1225 (8th Cir. 1987) (indicating that Section 363(b)(1) does not authorize transfers of property contrary to the restrictions imposed by state and contract law). "The rights, obligations, and restrictions existing pre-bankruptcy have not been forfeited, modified, or terminated by the debtor's insolvency, [or] by the filing of the bankruptcy ...[r]ather, the trustee has the same rights as the debtor under the agreement." Rice v. Shoney's Inc. (In re Dean), 174 B.R. 787, 790 (Bankr. E.D. Ark. 1994) (where joint venture agreement restricted transfer of interests). The "permissive" language of Section 363(b) grants no authority to ignore existing

10

contractual rights, but rather a trustee or debtor-in-possession is bound by the terms of its contracts.  See In re Pin Oaks Apartments, 7 B.R. 364, 367 (Bankr. S.D. Tex. 1980).

In the instant case, the Debtors must comply with the terms of the existing Leases as they relate to assignments.[9]  The Leases generally require the consent of the Landlords if the Debtors are no longer going to be financially responsible for the payment of amounts due or liable for the performance of all other terms, covenants and conditions under the Leases.  Similarly, the Trusts typically have a corresponding right to approve a lease assignment that impacts the Trusts' collateral.  To the extent that the Debtors are attempting to eviscerate the Landlords' rights, they are also altering the Trusts corresponding rights under the Loan Documents.  Accordingly, any order entered by the Court with respect to the sale of leases must be conditioned upon the Debtor's compliance with the terms of both the Leases and the Loan Documents in order to protect the Trusts' pre-existing contractual rights or make an express property by property finding of adequate protection of the rights of the Landlords and Trusts.

WHEREFORE, Allied Capital Corporation, CWCapital Asset Management LLC, CRIIMI MAE Services Limited Partnership and ORIX Capital Markets, LLC respectfully request that this Court enter an Order (i) denying the

---

[9]  By way of example, leases which encumber the Trusts' collateral are often subordinated to the Trusts' liens.  To the extent that the Leases being assigned are subordinate to the liens granted in the Loan Documents, any subsequent assignment should also be subordinate to the pre-existing liens of the Trusts.

Debtors' Motion; and (ii) granting the Trusts such other and further relief as is just and proper.

Dated: July 20, 2005.   /s/ Gregory A. Cross
Gregory A. Cross, Esq.
Heather Deans Foley, Esq.
Venable LLP
1800 Mercantile Bank & Trust Bldg.
Two Hopkins Plaza
Baltimore, Maryland 21201
(410) 244-7400 (Phone)
(410) 244-7742 (Facsimile)
e-mail: gacross@venable.com

-and-

Richard R. Thames
Nina M. LaFleur
Stutsman & Thames, P.A.
121 W. Forsyth Street, Suite 600
Jacksonville, Florida 32202
(904) 358-4000 (Phone)
(904) 358-4001 (Facsimile)
e-mail: rrthames@stutsman-thames.com

*Attorneys for Allied Capital Corporation,*
*CWCapital Asset Management LLC,*
*CRIIMI MAE Services Limited Partnership*
*and ORIX Capital Markets, LLC,*
*as Servicers, Special Servicers and/or Landlords*

12

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of July, 2005, a copy of the foregoing Limited Opposition of Allied Capital Corporation, CWCapital Asset Management LLC, CRIIMI MAE Services Limited Partnership and ORIX Capital Markets, LLC to Debtors' Motion for an Order (A) Authorizing the Sale of Assets Free and Clear of Liens, Claims and Interests and Exempt from Taxes, (B) Authorizing the Assumption and Assignment of Leases and Contracts and (C) Granting Related Relief was served electronically and via first class mail, postage prepaid, on each of the following:

>David J. Baker
>Skadden Arps Slate Meagher & Flom, LLP
>Four Times Square
>New York, New York 10036
>djbaker@skadden.com
>
>Cynthia C. Jackson
>Smith Hulsey & Busey
>225 Water Street, Suite 1800
>Jacksonville, Florida 32202
>cjackson@smithhulsey.com

>/s/ Heather Deans Foley
>Heather Deans Foley