16. <u>Economic Abandonment</u>. So long as no default then exists hereunder, if the Leased Premises shall have become uneconomic or unsuitable for continued use and occupancy in the business operations of Tenant and in the business operations of any affiliate of Tenant, and if the Executive Committee of the Board of Directors of Tenant and Guarantor have decided to discontinue the use of the Leased Premises in its business operations during the period ending on the first anniversary of the date of the delivery of the notice hereinafter referred to in this paragraph 16, or if Tenant, on or before such date of delivery, has already discontinued such use, then Tenant may notify Landlord of its intention to terminate this Lease on the Basic Rent Payment Date specified in such notice (also a "Termination Date") which shall be not less than 120 nor more than 240 days after the date of delivery of such notice. As part of said notice, Tenant shall, at its election: (x) give to Landlord its irrevocable offer to purchase the Leased Premises at a price which, at Tenant's election, shall be either (1) the amount determined in accordance with <u>Exhibit "F"</u> hereto, or (2) such amount determined in accordance with <u>Exhibit "F"</u> hereto minus the then unpaid principal amount of the Note (in which case Tenant shall assume all of the obligations under the Note and Mortgage pursuant to paragraph 18(c)) or (y) notify Landlord and any Mortgagee that it will effect a substitution of property for the Leased Premises pursuant to paragraph 17 within 180 days of such notice. If Tenant's termination notice is accompanied by Tenant's irrevocable offer to purchase the Leased Premises as set forth in clause (x) of the immediately preceding sentence, and if Landlord shall reject such offer by notice to Tenant (accompanied by the written consent of Mortgagee to such rejection) given not later than the tenth day prior to the Termination Date, then this Lease shall terminate on the Termination Date upon the payment by Tenant of all installments of Basic Rent, all Additional Rent and all other sums then due and payable under this Lease to and including the Termination Date. Unless Landlord shall have rejected such offer to purchase the Leased Premises by notice to Tenant (accompanied by Mortgagee's written consent) given not later than the tenth day prior to the Termination Date, or if Landlord shall make such rejection without the written consent of Mortgagee, then Landlord shall be conclusively presumed to have accepted such offer to purchase, and Landlord shall transfer and convey the Leased Premises to Tenant or its designee upon the terms and provisions set forth in paragraph 18 against payment by Tenant of the purchase price therefor (including any assumption of the Note pursuant to paragraph 18(c)), together with all installments of Basic Rent, Additional Rent and all other sums then due and payable under this Lease to and including the Termination Date. Tenant shall not open any new retail grocery store within a five-mile radius (measured front door to front door) of the Leased Premises during the period beginning one year prior to the Termination Date and ending one year after the Termination Date unless Tenant has elected to

substitute such retail grocery store as a Substitute Property for the Leased Premises pursuant to paragraph 17 or unless Tenant pays to Landlord at the later of the Termination Date and 10 days following commencement of such use an additional amount equal to the difference between the Modified Make Whole Premium, based on Treasuries plus 25 basis points determined as of the Termination Date and the Make Whole Premium paid or to be paid on the Termination Date. The obligation of Tenant under the immediately preceding sentence shall survive the termination of this Lease and purchase of the Leased Premises by Tenant.

17. <u>Substitution of Property</u>. So long as no Event of Default has occurred and is continuing under this Lease, Tenant may elect pursuant to paragraph 13(b), 14(g) or 16 to substitute other real property, the improvements thereon and equipment therein used or to be used in Tenant's business as a retail food store (the "Substitute Property") for the Leased Premises and, on the date for substitution set forth in such notice (the "Substitution Date"), Landlord shall transfer the Leased Premises to Tenant provided that all of the following conditions shall have been satisfied:

(a) The Cost or fair market value, determined as provided in subparagraph (c) below, of the Substitute Property shall be equal to or greater than (i) the original Cost of the Leased Premises and (ii) the then appraised value of the Leased Premises.

(b) With respect to any Substitute Property on which construction of Improvements was completed within 2 years of the Substitution Date, Landlord and Mortgagee shall have received a certificate of Tenant, signed by the President or a Vice President of Tenant, setting forth the cost to Tenant of acquiring the Land portion of such Substitute Property, of construction of the Improvements thereon, and of acquisition and installation of the Landlord's Equipment therein, if any, which may include such items as are included in the definition of Cost with respect to the Leased Premises.

(c) With respect to any Substitute Property on which construction of improvements was completed more than 2 years prior to the Substitution Date, Landlord and Mortgagee shall have received an appraisal, made by an independent appraiser at Tenant's expense selected by Tenant and approved by Landlord and Mortgagee, meeting standards generally accepted at the time by institutional mortgage lenders, of the fair market value of such Substitute Property as of a date within 90 days prior to the Substitution Date.

(d) With respect to the Leased Premises, Landlord and Mortgagee shall have received an appraisal, made by an independent appraiser at Tenant's expense selected by Tenant

· 25 ·

06720/60153
LP I.D. No. 19

and approved by Landlord and Mortgagee, meeting standards generally accepted at the time by institutional mortgage lenders, of the fair market value of the Leased Premises as of a date within 90 days prior to the Substitution Date.

(e)  With respect to the Substitute Property, Landlord shall have received, in substantially the form of this Lease and the Guaranty, a substitute lease (the "Substitute Lease") and a substitute guaranty (the "Substitute Guaranty") duly authorized, executed and delivered by Tenant and Guarantor, and Mortgagee shall have received, in substantially the form of the Note, the Mortgage and the Assignment related to the Leased Premises, a substitute Note (the "Substitute Note"), substitute Mortgage (the "Substitute Mortgage") and a substitute Assignment (the "Substitute Assignment") duly authorized, executed and delivered by Landlord, which Substitute Mortgage shall create a first lien on the Substitute Property, and which shall otherwise be in form and substance satisfactory to Mortgagee.

(f)  Landlord and Mortgagee shall have received evidence that, on the Substitution Date, Landlord has good and marketable fee simple title to the Substitute Property, subject only to Permitted Encumbrances and that all appropriate recordings, registrations and filings with respect to the Substitute Lease, Substitute Mortgage and Substitute Assignment have been made. The Mortgagee shall have received a survey and a loan policy of title insurance in the form and with the endorsements which would have been required by the Purchase and Sale Agreement had the Substitute Property been one of the properties identified in the Purchase and Sale Agreement.

(g)  All necessary approvals, authorizations and consents of all governmental bodies (including courts) having jurisdiction with respect to the transactions contemplated by this paragraph 17 shall have been obtained and all taxes, fees and other charges payable in connection therewith shall have been paid.

(h)  Landlord and Mortgagee shall have received all other documentation required to be furnished by Tenant and Guarantor under the Purchase and Sale Agreement to the same extent, with the same effect and subject to the same approvals as if the Substitute Property had been one of the properties identified in the Purchase and Sale Agreement. Tenant shall be obligated to pay all costs and expenses incurred by it, Landlord or Mortgagee in connection with the transaction contemplated by this paragraph 17, including the reasonable fees and expenses of counsel to Landlord and Mortgagee.

- 26 -

## 18. Procedure Upon Purchase.

(a) **Title to be Conveyed.** In the event of the purchase of the Leased Premises or any part thereof by Tenant or its designee pursuant to any provision of this Lease, Landlord need not transfer and convey to Tenant or its designee any better title thereto than Landlord received, and Tenant shall accept such title, subject, however, to all Liens, exceptions and restrictions on, against or relating to the Leased Premises and to all applicable Legal Requirements, but (except in the case of a purchase in which Tenant assumes or takes subject to the Note and Mortgage), free of the Lien of the Mortgage and Liens, exceptions and restrictions which have been created by or resulted from acts of Landlord taken without the consent of Tenant.

(b) **Payment of Purchase Price; Conveyance Documents; Other Costs.** Upon the date fixed for any such purchase of the Leased Premises pursuant to any provision of this Lease, Tenant shall pay to Landlord at its address set forth above, or at any other place designated by Landlord, the purchase price therefor specified herein (including, if applicable, the assumption documents referred to below), and Landlord shall thereafter deliver to Tenant a deed which describes the Leased Premises then being sold to Tenant, and conveys and transfers the title thereto which is described in paragraph 18(a), together with such other instruments as shall be necessary to transfer or assign to Tenant or its designee any other property then required to be sold by Landlord pursuant to this Lease. Tenant shall pay all charges incident to such conveyance and transfer (including, without limitation, reasonable attorneys' fees, escrow fees, recording fees, title insurance premiums and all applicable federal, state and local taxes (other than any net income tax or franchise tax levied upon or assessed against Landlord)) which may be incurred or imposed by reason of such conveyance and transfer and other instruments. Upon the completion of such purchase (other than a purchase pursuant to paragraph 28), but not prior thereto (whether or not any delay in the completion of or the failure to complete such purchase shall be the fault of Landlord), this Lease and all obligations hereunder (including the obligations to pay Basic Rent and Additional Rent) shall terminate, except with respect to obligations and liabilities of Tenant, actual or contingent, under this Lease which arose on or prior to such date of purchase.

(c) **Assumption of Note and Mortgage.** If Tenant's offer to purchase the Leased Premises pursuant to paragraph 13(b), 14(g) or 16 includes the assumption of the Note and Mortgage, Tenant and Guarantor shall execute and deliver to Landlord and Mortgagee all such documents (including assumption agreements,

- 20 -

guaranties and opinions of counsel) as Landlord or Mortgagee shall reasonably require to effect such assumption and the guaranty by Guarantor of all of Tenant's obligations regarding same, in form and substance satisfactory to Landlord and Mortgagee. The agreement of Tenant assuming the Note and Mortgage shall provide that Tenant shall be personally liable on a full-recourse basis for the payment and performance of all of the obligations of the borrower under the Note and Mortgage and shall contain a "change of control" provision substantially to the effect of paragraph 29 hereof except that the obligation of Tenant shall be to prepay the Note at the price and as otherwise provided in the Mortgage. The guaranty of Guarantor shall be in form acceptable to Mortgagee and in substantially the same form as the Guaranty.

19. **Assignment and Subleasing.** This Lease may be assigned and the Leased Premises may be sublet in whole or in part without the consent of Landlord so long as the Guaranty and the liability of Guarantor thereunder shall not be reduced thereby. Each sublease of the Leased Premises shall be subject and subordinate to the provisions of this Lease. No assignment or sublease made as permitted by this paragraph 19 shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no assignment or sublease had been made. No assignment or sublease shall impose any obligations on Landlord under this Lease. Tenant shall, within 10 days after the execution and delivery of any such assignment or sublease, deliver a duplicate original copy thereof to Landlord.

Tenant hereby irrevocably and unconditionally assigns to Landlord all rents and other sums payable under any sublease of the Leased Premises; provided, however, that Landlord hereby grants Tenant a license to collect all such rents and other sums so long as no Event of Default has occurred and is continuing. Tenant shall not mortgage or pledge this Lease or the leasehold estate created hereby, and any such mortgage or pledge made in violation of this paragraph 19 shall be void.

20. **Permitted Contests.** Tenant shall not be required to (i) pay any Imposition, (ii) comply with any Legal Requirement, (iii) discharge or remove any Lien referred to in paragraphs 9 or 12, or (iv) take any action with respect to any encroachment, violation, hindrance, obstruction or impairment referred to in paragraph 11(b) so long as Tenant shall contest, in good faith and at its expense, the existence, the amount or the validity thereof, the amount of the damages caused thereby, or the extent of its or Landlord's liability therefor, by appropriate proceedings which shall operate during the pendency thereof to prevent (A) the collection of, or other realization upon, the Imposition or Lien so contested, (B) the sale, forfeiture or loss of any of the Leased

- 28 -

Premises, any Basic Rent or any Additional Rent to satisfy the same or to pay any damages caused by the violation of any such Legal Requirement or by any such encroachment, violation, hindrance, obstruction or impairment, (C) any interference with the use or occupancy of the Leased Premises, (D) any interference with the payment of any Basic Rent, any Additional Rent or any other sum payable hereunder, and (E) the cancellation of any fire or other insurance policy. If Guarantor's tangible net worth (determined in accordance with generally accepted accounting principles in effect on the Commencement Date) shall be less than $500,000,000 at the time of commencement of any such contest, Tenant shall provide to Landlord and Mortgagee a bond of a surety acceptable to Landlord and Mortgagee in an amount satisfactory to Landlord and Mortgagee. While any such proceedings are pending, neither Landlord nor Mortgagee shall have the right to pay, remove or cause to be discharged the Imposition or Lien thereby being contested. Tenant agrees that each such contest shall be promptly and diligently prosecuted to a final conclusion, except that Tenant shall, so long as the conditions of the first sentence of this paragraph 20 are at all times complied with, have the right to attempt to settle or compromise such contest through negotiations. Tenant shall pay and save Landlord and Mortgagee harmless against any and all losses, judgments, decrees and costs (including all reasonable attorneys' fees and expenses) in connection with any such contest and shall, promptly after the final determination of such contest, fully pay and discharge the amounts which shall be levied, assessed, charged or imposed or be determined to be payable therein or in connection therewith, together with all penalties, fines, interest, costs and expenses thereof or in connection therewith, and perform all acts the performance of which shall be ordered or decreed as a result thereof. No such contest shall subject Landlord or Mortgagee to the risk of any material civil liability or any criminal liability.

21. <u>Conditional Limitations; Default Provision.</u>

(a) <u>Events of Default.</u> The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Lease: (i) a failure by Tenant to make any payment of Basic Rent, Additional Rent or other sum herein required to be paid by Tenant for a period of 10 days after notice to Tenant of such failure; (ii) a failure by Tenant to duly perform and observe, or a violation or breach of, any other provision hereof which failure, violation or breach shall continue for a period of 30 days after notice to Tenant thereof; provided that if such failure, violation or breach cannot be cured by mere payment of money and cannot with diligence be cured within such 30-day period, the period to cure such failure, violation or breach shall be extended for such longer period of time as is reasonably necessary to cure such failure, violation or breach so long as Tenant shall commence to cure such failure, violation or breach within said

- 29 -

30-day period and actively, diligently and in good faith proceed with continued curing thereof until it shall be fully cured; (iii) any material representation or warranty made by Tenant in this Lease or any other document delivered in connection with the execution and delivery of this Lease proves to be incorrect in any material respect; (iv) Tenant shall (A) voluntarily be adjudicated a bankrupt or insolvent, (B) seek or consent to the appointment of a receiver or trustee for Tenant or the Leased Premises, (C) file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, (D) make a general assignment for the benefit of creditors, or (E) admit in writing its inability to pay its debts as they mature; (v) a court shall enter an order, judgment or decree appointing a receiver or trustee for Tenant or the Leased Premises or approving a petition filed against Tenant which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and such order, judgment or decree shall remain in force, undischarged or unstayed, 60 days after it is entered; (vi) the Leased Premises shall have been left unattended and without security for a period of 30 consecutive days; (vii) Tenant shall be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution; or (viii) the estate or interest of Tenant in the Leased Premises shall be levied upon or attached in any proceeding and such proceeding shall not be vacated or discharged within sixty 60 days after such levy or attachment.

(b) <u>Landlord's Remedies Upon Default</u>. If an Event of Default shall have occurred, Landlord shall have the right at its option, then or at any time thereafter during the continuance of such Event of Default, to do any one or more of the following without demand upon or notice to Tenant:

(i) Landlord may give Tenant notice of Landlord's intention to terminate this Lease on a date specified in such notice. Upon the date therein specified, the Term and the estate hereby granted and all rights of Tenant hereunder shall expire and terminate as if such date were the date hereinbefore fixed for the expiration of the Term, but Tenant shall remain liable for all its obligations hereunder, including its liability for Basic Rent, Additional Rent or any other sums payable under this Lease, as hereinafter provided.

(ii) Landlord may, whether or not the Term of this Lease shall have been terminated pursuant to clause (i) above, (x) give Tenant notice to surrender the Leased Premises to Landlord immediately or on a date specified in such notice, at which time Tenant shall surrender and deliver

- 30 -

06730/40153
LP I.D. No. 19

possession of the Leased Premises to Landlord, or (y) reenter and repossess the Leased Premises by summary proceedings, ejectment or any other means or procedure. Upon or at any time after taking possession of the Leased Premises, Landlord may remove any persons or property therefrom. Landlord shall be under no liability for, or by reason of, any such entry, repossession or removal. No such entry or repossession shall be construed as an election by Landlord to terminate this Lease unless Landlord gives a written notice of such intention to Tenant pursuant to clause (i) above.

(iii) After repossession of the Leased Premises pursuant to clause (ii) above, whether or not this Lease shall have been terminated pursuant to clause (i) above, Landlord shall have the right (but shall be under no obligation) to relet the Leased Premises or any part thereof to such tenant or tenants for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) for such rent, on such conditions (which may include concessions or free rent) and for such uses as Landlord, in its absolute discretion, may determine; and Landlord may collect and receive any rents payable by reason of such reletting. Landlord shall not be responsible or liable for any failure to relet the Leased Premises or any part thereof or for any failure to collect any rent due upon any such reletting. Landlord may make such Alterations as Landlord in its sole discretion may deem advisable. Tenant agrees to pay Landlord, as Additional Rent, immediately upon demand, all reasonable expenses incurred by Landlord in obtaining possession, in performing Alterations and in reletting the Leased Premises, including fees and commissions of attorneys, architects, agents and brokers.

(iv) Landlord may exercise any other right or remedy now or hereafter existing by law or in equity.

Landlord's exercise, following a default by Tenant under this Lease, of any right granted hereunder or under any applicable law to lock out or change the locks securing the Leased Premises shall not impose upon Landlord any duty to notify Tenant of the name and address or telephone number of the individual or company from whom a new key may be obtained, nor shall Landlord have a duty to provide Tenant with a new key or any other means of access to the Leased Premises. Landlord and Tenant agree that the parties hereto intend that all rights and remedies of Landlord under this Lease or otherwise available to Landlord under applicable law shall supersede, and Tenant hereby waives, any conflicting provisions of

- 31 -

66720/60153
LP I.D. No. 19

Chapter 93 of the Texas Property Code, and any amendments, modifications, recodification or other changes thereto.

(c) No Relief of Obligations.    No expiration or termination of this Lease pursuant to paragraph 21(b)(i) or any other provision of this Lease, by operation of law, repossession of the Leased Premises pursuant to paragraph 21(b)(ii) or otherwise, or reletting of any of the Leased Premises pursuant to paragraph 21(b)(iii), shall relieve Tenant of any of its liabilities and obligations hereunder, including the liability for payment of Basic Rent, Additional Rent and all other sums payable hereunder, all of which shall survive such expiration, termination, repossession or reletting.

(d) Current Damages.    In the event of any expiration or termination of this Lease or repossession of the Leased Premises by reason of the occurrence of an Event of Default, Tenant shall pay to Landlord all Basic Rent, all Additional Rent and all other sums required to be paid by Tenant to and including the date of such expiration, termination or repossession and, thereafter, Tenant shall, until the end of what would have been the Term in the absence of such expiration, termination or repossession, and whether or not the Leased Premises shall have been relet, be liable to Landlord for and shall pay to Landlord as liquidated and agreed current damages (i) all Basic Rent, all Additional Rent and all other sums which would be payable under this Lease by Tenant in the absence of such expiration, termination or repossession, less (ii) the net proceeds, if any, of any reletting pursuant to paragraph 21(b)(iii), after deducting from such proceeds all of Landlord's expenses in connection with such reletting (including all repossession costs, brokerage commissions, legal expenses, attorneys' fees, employees' expenses, costs of Alterations and expenses of preparation for reletting).    Tenant hereby agrees to be and remain liable for all sums aforesaid, and Landlord may recover such damages from Tenant and institute and maintain successive actions or legal proceedings against Tenant for the recovery of such damages.    Nothing herein contained shall be deemed to require Landlord to wait to begin such action or other legal proceedings until the date when the Term would have expired by limitation had there been no such Event of Default.

(e) Liquidated Final Damages.    At any time after any such expiration or termination of the Term or repossession of the Leased Premises by reason of the occurrence of an Event of Default, whether or not Landlord shall have collected any current damages pursuant to paragraph 21(d), Landlord shall be entitled to recover from Tenant, and Tenant will pay to Landlord on demand, as and for liquidated and agreed final

- 32 -

06720/40153
LP I.D. No. 19

damages for Tenant's default and in lieu of all current damages beyond the date of such demand (it being agreed that it would be impracticable or extremely difficult to fix the actual damages), an amount equal to the excess, if any, of (i) the Basic Rent, Additional Rent and other sums which would be payable under this Lease from the date of such demand (or, if it be earlier, the date to which Tenant shall have satisfied in full its obligations under paragraph 21(d) to pay current damages) for what would be the then unexpired term of this Lease in the absence of such expiration, termination or repossession, discounted at the rate of 4% per annum over (ii) the then fair net rental value of the Leased Premises for the same period. The discount rate to be used in determining such fair rental value shall be 4% per annum. If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, Landlord shall be entitled to the maximum amount allowable under such statute or rule of law.

22.    Additional Rights of Landlord.

(a)  Non-Exclusive, Cumulative Remedies.  No right or remedy herein conferred upon or reserved to Landlord is intended to be exclusive of any other right or remedy and each and every right and remedy shall be cumulative and in addition to any other right or remedy contained in this Lease.  No delay or failure by Landlord to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof.  In addition to the other remedies provided in this Lease, Landlord shall be entitled, to the extent permitted by applicable law, to injunctive relief in case of the violation or attempted or threatened violation of any of the provisions of this Lease, or to specific performance of any of the provisions of this Lease.

(b)  Tenant's Waiver of Redemption.  Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have under any present or future law to redeem any of the Leased Premises or to have a continuance of this Lease after termination of this Lease or of Tenant's right of occupancy or possession pursuant to any court order or any provision hereof, and (ii) the benefits of any present or future law which exempts property from liability for debt or for distress for rent.

(c)  Costs Upon Default and Litigation.  Tenant shall pay to Landlord and Mortgagee as Additional Rent all the expenses incurred by Landlord or Mortgagee in connection with any default or Event of Default or the exercise of any remedy by reason of any default or Event of Default, including

reasonable attorneys' fees and expenses.  If Landlord or Mortgagee shall be made a party to any litigation commenced against Tenant or any litigation pertaining to this Lease or the Leased Premises, at the option of Landlord and Mortgagee, Tenant, at its expense, shall provide Landlord or Mortgagee with counsel approved by Landlord and Mortgagee and shall pay all costs incurred or paid by Landlord and Mortgagee in connection with such litigation.

23.  **Notices.**  All notices, demands, requests, consents, approvals, offers, statements and other instruments or communications required or permitted to be given pursuant to this Lease shall be in writing and shall be deemed to have been given for all purposes when delivered in person or one day after given to an overnight courier which guaranties overnight delivery or three days after being deposited in the United States mail, by registered or certified mail, return receipt requested, postage prepaid, addressed to Landlord or Tenant at its address stated above or addressed to Mortgagee or Guarantor at its address listed below:

If to Mortgagee:    Principal Mutual Life Insurance Company
                    711 High Street
                    Des Moines, Iowa 50392
                    Attn: Commercial Real Estate Loan
                          Administration, Loan No. 750418

If to Guarantor:    Winn-Dixie Stores, Inc.
                    5050 Edgewood Court
                    Jacksonville, Florida 32254
                    Attention: General Counsel
                    Telephone: 904/783-5427
                    Telecopy: 904/783-5138

For the purposes of this paragraph, any person may substitute its address by giving fifteen days' notice to the other persons in the manner provided above.

24.  **Estoppel Certificate.**  Landlord and Tenant shall, at any time and from time to time, upon not less than 20 days' prior request by the other, execute, acknowledge and deliver to the other a statement in writing, executed by an authorized officer certifying (i) that this Lease is unmodified and in full effect (or, if there have been modifications, that this Lease is in full effect as modified, setting forth such modifications), (ii) the dates to which Basic Rent, Additional Rent and all other sums payable hereunder have been paid, (iii) that to the knowledge of the signer of such certificate no default by either Landlord or Tenant exists hereunder or specifying each such default of which the signer may have knowledge, (iv) with respect to a certificate signed on behalf of Tenant, that to the knowledge of the signer of such certificate, there are no proceedings pending or threatened

- 34 -

06720/40153
LP I.D. No. 19

against Tenant before or by any court or administrative agency which if adversely decided would materially and adversely affect the financial condition and operations of Tenant, or if any such proceedings are pending or threatened to said signer's knowledge, specifying and describing the same, and (v) with respect to the certificate signed on behalf of Tenant, if requested by Landlord, to the further effect set forth in Exhibit "G" hereto.    It is intended that any such statements may be relied upon by Mortgagee, the recipient of such statements or their assignees, or by any prospective purchaser or mortgagee of the Leased Premises.

25.  **Surrender and Holding Over.**    Upon the expiration or earlier termination of this Lease, Tenant shall peaceably leave and surrender the Leased Premises (except for any portion thereof with respect to which this Lease has previously terminated) to Landlord in the same condition in which the Leased Premises were originally received from Landlord on the Commencement Date, except as repaired, rebuilt, restored, altered, replaced or added to as permitted or required by any provision of this Lease, and except for ordinary wear and tear.  Tenant shall remove from the Land and Improvements on or prior to such expiration or earlier termination all property situated thereon which is owned by Tenant or third parties other than Landlord, and Tenant at its expense shall, on or prior to such expiration or earlier termination, repair any damage caused by such removal.  Property not so removed at the end of the Term or within 30 days after the earlier termination of the Term for any reason whatsoever shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises.   The cost of removing and disposing of such property and repairing any damage to the Leased Premises caused by such removal shall be borne by Tenant.  Landlord shall not in any manner or to any extent be obligated to reimburse Tenant for any property which becomes the property of Landlord as a result of such expiration or earlier termination.

Any holding over by Tenant of the Leased Premises after the expiration or earlier termination of the term of this Lease or any extensions thereof shall operate and be construed as a tenancy from month to month only, at double the Basic Rent reserved herein and upon the same terms and conditions as contained in this Lease. Notwithstanding the foregoing, any holding over shall entitle Landlord, in addition to collecting double rentals, to exercise all rights and remedies provided by law or in equity, including the remedies of paragraph 21(b).

26.  **No Merger of Title.**    There shall be no merger of this Lease nor of the leasehold estate created by this Lease with the fee estate in or ownership of the Leased Premises by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, (i) this Lease or the leasehold estate created by this Lease or any interest in this

- 25 -

06720/40153
LP I.D. No. 19

Lease or in such leasehold estate, and (ii) the fee estate or ownership of the Leased Premises or any interest in such fee estate or ownership. No such merger shall occur unless and until all persons, corporations, firms and other entities (including any Mortgagee) having any interest in (x) this Lease or the leasehold estate created by this Lease, and (y) the fee estate in or ownership of the Leased Premises sought to be merged shall join in a written instrument effecting such merger and shall duly record the same.

27. <u>Expansion</u>. It is understood that Tenant may at future times during the Term of this Lease wish to enlarge the Improvements by constructing Alterations and additions thereto and that such enlarging may require purchase of additional land. Tenant shall have the sole responsibility for negotiating and providing for the purchase, renovation and construction of such Alterations and additions and of such land as is necessary for its expansion plans. If Tenant is able to obtain agreements for the purchase of such additional land and contracts for the Alterations and additions at a cost satisfactory to it, Tenant may then request that Landlord purchase such Alterations, additions and land and incorporate the same into this Lease upon terms and conditions negotiated by the parties.

In the event the parties are unable to agree, Tenant shall have the right to construct Alterations and additions at its own expense and to make such changes as are necessary to make the entire enlarged building suitable for use and occupancy by Tenant in the conduct of its business; but Tenant shall not have the right to mortgage or pledge this Lease or the leasehold estate created hereby or its interest in such Alterations to finance such Alterations. At end of the Term of this Lease, title to the Alterations, additions and land as necessary to meet any Legal Requirements shall pass to Landlord and Tenant shall execute additional documents as necessary to complete such transfer.

28. <u>Right of First Refusal</u>. Tenant shall have the right of first refusal to purchase the Leased Premises as hereinafter set forth. If at any time during the Term Landlord shall receive a bona fide offer (other than at public auction) from a third person (except in lieu of exercise of the power of eminent domain) for the purchase of the Leased Premises, which offer Landlord shall desire to accept, Landlord shall promptly deliver to Tenant a copy of such offer, and Tenant may within 15 days thereafter elect to purchase the Leased Premises on the same terms and conditions as those set forth in such offer. If Tenant shall not accept such offer within the time herein specified the aforesaid right of first refusal shall terminate but the Term of this Lease shall otherwise continue. The right of first refusal in this paragraph shall be inapplicable to a transfer upon foreclosure of the Mortgage,

- 14 -

including the giving by Landlord of a deed in lieu of foreclosure or to any subsequent transfer to a third person.

29. **Change of Control**. In the event that, at any time during the Initial Term, a Change of Control (as hereinafter defined) shall occur, Tenant shall, not later than 30 days after such Change of Control, give to Landlord an irrevocable offer to purchase the Leased Premises on a date (also, a "Termination Date") specified in such notice, which shall be not less than 120 nor more than 240 days after the date of such notice, at a price determined in accordance with **Exhibit "F"** hereto. If Landlord shall reject such offer to purchase by notice to Tenant (accompanied by the written consent of Mortgagee thereto) given not later than the tenth day prior to the Termination Date, this Lease shall remain in full force in effect. Unless Landlord shall have rejected such offer to purchase by notice to Lessee given not later than the tenth day prior to the Termination Date, or if Landlord shall make such rejection without the written consent of Mortgagee, then Landlord shall be conclusively presumed to have accepted such offer to purchase, and Landlord shall transfer and convey the Leased Premises to Tenant or its designee upon the terms and provisions set forth in paragraph 18, against payment by Tenant of all installments of Basic Rent, all Additional Rent and all other sums then due and payable under this Lease to and including such Termination Date.

As used in this paragraph 29, "Change of Control" means the acquisition by any person or Group, together with any Affiliates thereof, of (i) 50% or more of the beneficial interest in the voting capital stock of Tenant or Guarantor or (ii) the control of a majority of Tenant's or Guarantor's Board of Directors, provided that such acquisition or control, directly or indirectly, by the Davis Family or Affiliates thereof shall not constitute a Change of Control. "Group" means more than one person, acting in concert, to achieve control of Tenant. "Affiliate" of any specified person means any other person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified person. For the purposes of this definition, "control" when used with respect to any specified person means the power to direct the management and policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have the meanings correlative to the foregoing. "Davis Family" means Mr. A.D. Davis, relatives (by birth or marriage) and descendants of Mr. A.D. Davis, Mr. James E. Davis, Mr. M. Austin Davis and Tine W. Davis, trusts, estates, corporations and other entities involving any of them and their associates whether now living or existing or hereafter coming into existence.

Tenant shall immediately notify Landlord and Mortgagee of the occurrence of a Change of Control.

- 17 -

30.  **Miscellaneous.**  The paragraph headings in this Lease and the Table of Contents preceding this Lease are for convenience only and are not part of this Lease or to be used in determining the intent of the parties or otherwise interpreting this Lease.  As used in this Lease the singular shall include the plural as the context requires, and the following words and phrases shall have the following meanings: (i) "including" shall mean "including but not limited to"; (ii) "provisions" shall mean "provisions, terms, agreements, covenants and/or conditions"; and (iii) "obligation" shall mean "obligation, duty, agreement, liability, covenant or condition".  Any act which Tenant is required to perform under this Lease shall be performed at Tenant's sole cost and expense.  This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought. The covenants of this Lease shall run with the land and bind Tenant and all successors and assigns of Tenant and shall inure to the benefit of and bind Landlord, its successors and assigns.  In the event any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Lease but this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.  This Lease may be simultaneously executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.  This Lease shall be governed by and construed according to the laws of the state in which the Leased Premises are located.

31.  **Incorporation by Reference.**  Attached to this Lease are Exhibits "A", "B", "C", "D", "E", "F" and "G" all of which are incorporated by this reference in, and form a part of, this Lease.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

- 34 -

06730/40153
LP LD. No. 19

IN WITNESS WHEREOF, Landlord and Tenant have caused this instrument to be executed as of the day and year first above written.

PEREGRINE PROPERTIES LIMITED
PARTNERSHIP, an Iowa limited
partnership

By: Equity    FC,    Ltd.,    an    Iowa
    corporation, its general partner

By: _Karen Pearson_____
Name: Karen A. Pearson
Title: Counsel

By: _____
Name: LEANNE SUDER
Title: Counsel

"Landlord"

- 39 -

06720/40153
LF I D. No. 19

WINN-DIXIE TEXAS, INC.,
a Texas corporation

By: _____
Name: ___Wayne E. Ripley, Jr.___
Title: ___Vice President___

"Tenant"

- 40 -

06720/40153
LP I D. No. 19