**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

**SUPPLEMENT TO DEBTORS' MOTION FOR ORDER**
**(A) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF**
**LIENS, CLAIMS AND INTERESTS AND EXEMPT FROM TAXES,**
**(B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF**
**LEASES AND CONTRACTS AND (C) GRANTING RELATED RELIEF**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), file this supplement to their motion filed on July 1, 2005, for entry of an order pursuant to 11 U.S.C. §§ 363, 365 and 1146 and Rules 6004 and 6006, Federal Rules of Bankruptcy Procedure: (i) authorizing the sale of inventory, equipment, supplies and other assets in connection with leased stores free and clear of claims, liens and interests, (ii) authorizing the assumption and assignment of leases in connection with the sales, (iii) determining that all such sales are exempt from any stamp, transfer, recording or similar tax, (iv) determining any requisite cure, and (v) granting related relief (Docket No. 1961) (the "Sale Motion").

1.  By the Sale Motion, the Debtors notified all interested parties of their intent to sell all leases and related assets for 323 of their stores (collectively, the "Targeted Stores"). At the time the Sale Motion was filed, the Debtors had twenty Stalking Horse Bidders for their July 18

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

Auction. Subsequently, the Debtors entered into purchase agreements with a number of other purchasers, including Associated Wholesale Grocers, Inc. and Alex Lee, Inc.(collectively, "AWG/Alex Lee"). As provided by the Sale Motion, the Debtors are only filing copies of the asset purchase agreements submitted by the successful bidders at the July 18 Auction (the "Successful Bids") with the Bankruptcy Court (as opposed to an additional motion) and will ask the Court to approve the Sale Motion as to the Successful Bids. Despite this general procedure, the terms of the asset purchase agreement the Debtors entered into with AWG/Alex Lee require the Debtors to file this supplement to the Sale Motion (the "Supplement").

2.      By this Supplement, the Debtors request authority to (a) enter into the Purchase Agreement attached as Exhibit A,[2] (b) assume and assign the applicable leases and (c) sell twenty-nine of the Targeted Stores (the "Assets") to AWG/Alex Lee or one or more of their affiliates, retail members or customers (the "Ultimate Purchaser").

3.      The material terms of the Purchase Agreement are as follows:[3]

  (a)   <u>Purchase Price</u>. The purchase price to be paid by the Purchasers for the Assets (other than Inventory and Supplies) is $4,037,236. The purchase price for the Inventory is the total inventory price (based on a percentage of the retail shelf price) for each item of inventory and is to be paid at closing after an inventory count. The supplies price is $2,500 per store.

  (b)   <u>Assets</u>. The assets to be sold and transferred to the Purchasers include:

     (i)    the Debtors' rights in the applicable leases and in any leasehold improvements;

     (ii)   the Debtors' interest in all fixtures and equipment located in buildings existing on the Debtors' leased premises, other than Excluded Personal Property, and the Debtors' interest in the buildings including but not limited to any Improvements, as defined in the Purchase Agreement, and any trade fixtures and equipment;

---

[2] At the request of the Purchasers, the Debtors have agreed to not file Exhibit J to the Purchase Agreement.

[3] This summary of the Purchase Agreement is provided as a convenience only. To the extent that this summary differs in any way from the terms of the Purchase Agreement, the terms of the Purchase Agreement and related documents control.

    (iii) the grocery, general and pharmacy related over the counter inventory, other than excluded inventory, at the relevant store and the pharmacy inventory, if any;

    (iv) for the stores with pharmacies, the Pharmacy Scrips, prescription drug inventory and control of the pharmacy phone line, if transferable; and

    (v) the Supplies.

  (c) <u>Sale Free and Clear</u>.  The Purchase Agreement provides that the Assets are to be transferred free and clear of any liens, claims, interests and encumbrances (other than any Permitted Encumbrances) pursuant to 11 U.S.C. §363.

  (d) <u>Assumption and Assignment of the Leases; Cure Costs</u>.  On the closing date, the Debtors will assume and assign the relevant leases to the Purchasers.  In connection with the assumption and assignment of the leases, the Debtors are responsible for any cure required pursuant to 11 U.S.C. §365(b).

  (e) <u>Court Order</u>.  The sale of the Assets to the Purchasers is subject to entry of an order of the Bankruptcy Court authorizing the sale pursuant to the terms of the Purchase Agreement.

  (f) <u>Allocation</u>.  The Agreement includes an allocation of the purchase price on a store-by-store basis.

  4. The Purchase Agreement provides for the assumption and assignment of the relevant leases to the Purchasers provided however, that neither AWG/Alex Lee nor the Ultimate Purchaser will have any obligation to assume any lease described as "TNB" on Exhibit A-1 to the Purchase Agreement if AWG/Alex Lee has terminated the Purchase Agreement for any such Store because they are unable to obtain concessions from the applicable landlord.  The Debtors will pay any undisputed cure amount due the affected landlords at closing.  Any disputed cure amounts will be paid by the Debtors once adjudicated by the Bankruptcy Court.

## Applicable Authority

A.     **Authority to Enter into the Purchase Agreement and Sell the Assets**

5.     Bankruptcy Code Section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code Section 1107(a) gives the Debtors, as debtors-in-possession, the same authority as a trustee to use, sell or lease property under Section 363(b)(1).

6.     A debtor's sale under Section 363(b)(1) should be approved when supported by a sound business reason. *See In re BDK Health Mgmt., Inc.*, Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a Section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (holding that a debtor in possession may sell assets of his estate outside the ordinary course of business if he has an articulated business justification); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that the business judgment test is the proper standard to apply when considering a debtor's motion to sell assets outside the ordinary course of business); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (holding that a trustee must show that "there is a sound business purpose for conducting the sale prior to confirmation of a plan"); *In re Gulf States Steel, Inc. of Alabama*, 285

B.R. 497, 514 (Bankr. N.D. Ala. 2002) ("[T]he Trustee has the burden to establish sound business reasons for the terms of the proposed sale").

7. Once a court is satisfied that a sound business reason for the sale exists, the court must also consider whether (a) the sale price is fair and reasonable, (b) the purchaser is proceeding in good faith, and (c) the debtor has provided interested parties with adequate and reasonable notice. Delaware & Hudson, 124 B.R. at 175-76.

8. The Debtors have a sound business reason for consummating the transaction contemplated in the Purchase Agreement. To preserve the going concern value for the Assets, the Debtors need to consummate the sale as quickly as possible. Delay in the sale will, based on the Debtors' prepetition experience, result in a significant loss of value for the stores and impair the ultimate recovery of creditors. Accordingly, there is a sound business purpose for the requested relief.

**B.      The Sale Free and Clear of All Liens and Encumbrances**

9. The Debtors request that the sale and transfer of the Assets pursuant to the Purchase Agreement be approved free and clear of any lien, claim, or interest. This relief is consistent with the provisions of Bankruptcy Code Section 363(f) in these cases.

10. Pursuant to Section 363(f) of the Bankruptcy Code, a debtor may sell property of the estate free and clear of all liens and encumbrances, after notice and a hearing. *See In re Parrish*, 171 B.R. 138, 140 (Bankr. M.D. Fla. 1994) (noting that compliance with the requirements of Section 363(f) is a prerequisite to a sale free and clear of liens).

11. The Debtors believe that there are no interests in or claims against the Assets, other than those of the DIP Lender, and the nondebtor parties to the leases and subleases. Any undisputed claims of the landlord will be paid by the Debtors upon closing, in accordance with the terms and conditions of the Purchase Agreement and 11 U.S.C. §365. Any disputed cure will be

satisfied upon adjudication by the Bankruptcy Court at the Cure Hearing or by resolution of the Debtors and the affected landlord.  The interests of the DIP Lender will be satisfied because the Debtors will cause the proceeds from any of these sales to be paid in accordance with the terms of the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-Petition Secured Lenders dated March 23, 2005 (Docket No. 501) (the "Final Financing Order") and the Loan Documents (as defined in the Final Financing Order).

      12.    To the extent that any other interests in or claims against the Assets exist, the Debtors will satisfy Bankruptcy Code Section 363(f).  Moreover, any holder of any interests or claims will be adequately protected because interests and claims, if any, will attach to the proceeds of the Sale, with the same validity, enforceability, priority, force and effect they now have as against the Assets, subject to any rights, claims, defenses and objections of the Debtors and all interested parties.  Accordingly, the requirements of Bankruptcy Code Section 363(f) will be satisfied, and the sale of the Assets free and clear of any lien, claim, or interest is appropriate.  Thus, the proposed sale satisfies section 363(f) of the Bankruptcy Code.

**C.      Good Faith Purchaser**

13.     Bankruptcy Code Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

14.     The Bankruptcy Code does not define the term "good faith". Courts, however, have held that a party would have to show fraud or collusion between the purchaser and other bidders or the Debtors to demonstrate a lack of good faith.

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchasers' good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.
>
> *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988).

*Accord Kabro Assoc. of W. Islip, LLC v. Colony Hill Assoc. (In re Colony Hill Assoc.)*, 111 F.3d 269, 276 (2d Cir. 1997).

15.     The Debtors submit that: (a) the Assets were marketed extensively; and (b) the marketing process that occurred and the notice of the sale hearing ensure that neither AWG/Alex Lee nor the Ultimate Purchaser have exerted undue influence over the Debtors. If a landlord objects to the proposed sale, the Debtors will also offer additional evidence of the Purchasers' good faith. Accordingly, at the sale hearing the Debtors will request that the Court find that AWG/Alex Lee and/or the Ultimate Purchaser acted in good faith within the meaning of

Bankruptcy Code Section 363(m). *See BDK Health Mgmt.*, 1998 WL 34188241 at *4 (finding that the purchaser was entitled to the protections of Bankruptcy Code Section 363(m) because the sale was negotiated at arms-length, proposed in good faith and the consideration for the assets was fair and reasonable.).

**D.    Authority to Assume and Assign the Leases**

16.    Section 365(a) of the Bankruptcy Code authorizes a debtor to assume an unexpired lease subject to the Court's approval.

17.    The standard that is applied in determining whether an unexpired lease should be assumed is the debtors' "business judgment" that the assumption is in the debtor's economic best interest. *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984). The Debtors' assumption and assignment of any lease connected to the Assets is an integral part of the proposed sale and, therefore, within the Debtors' sound business judgment.

18.    Bankruptcy Code Section 365(b)(1) codifies the requirements for assuming an unexpired lease of a debtor:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee:
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)    provides adequate assurance of future performance under such contract or lease.
>
> 11 U.S.C. § 365(b)(1).

By the Purchase Agreement, the Debtors have agreed to comply with Bankruptcy Code Section 365(b)(1)(A) and (B) by curing any defaults under the respective lease.

19. At the sale hearing, the Debtors will also satisfy Bankruptcy Code Section 365(b)(1)(C), by demonstrating adequate assurance of future performance by the Ultimate Purchaser. Bankruptcy Code Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if:
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.
>
> 11 U.S.C. § 365(f)(2).

20. The meaning of "adequate assurance" depends on the facts and circumstances of each case, but should "be given a practical pragmatic construction". *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992) (citation omitted), *aff'd*, 993 F.2d 300 (2d Cir. 1993). The assurance that rent will be paid is a chief determinant in assessing adequate assurance of future performance. *Id*.

21. Adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;

      (C)      that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

      (D)      that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

Thus, adequate assurance includes demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance was present when prospective assignee of lease from debtor had the financial resources, and an expressed willingness, to devote sufficient funding to business in order to give it strong likelihood of succeeding).

      22.      Each landlord of the affected leases will be provided with this Motion as well as a declaration providing the necessary financial information for the proposed assignee for their lease. If a landlord of any affected lease or sublease objects to this proposed sale, the Debtors will offer evidence at the sale hearing to demonstrate the financial wherewithal of the Ultimate Purchaser including, their experience in the industry and willingness and ability to perform. At the sale hearing, the Court and interested parties will have the opportunity to evaluate and, if necessary, challenge the ability of the Ultimate Purchaser to provide adequate assurance of future performance. The Court will therefore have sufficient bases to find that adequate assurance of future performance exists.

**E.     The Sale Should be Exempt from Taxes**

23.     Bankruptcy Code Section 1146(c) provides that "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax."  11 U.S.C. § 1146(c).  This language has been construed to include transfers pursuant to a sale outside of, but in furtherance of effectuating, a reorganization plan.  *Webster Classic Auctions, Inc.*, 318 B.R. 216, 218 (Bankr. M.D. Fla. 2004) (adopting rationale that purpose of Bankruptcy Code Section 1146(c) is to facilitate reorganizations and that transfers need not be postconfirmation); *BDK Health Mgmt.*, 1998 WL 34188241, at *8 (granting Bankruptcy Code Section 1146(c) relief outside of confirmed plan); *see also In re T.H. Orlando Ltd.*, 391 F.3d 1287, 1291 (11th Cir. 2004) (exemption applies where transfer is necessary to the consummation of a plan.); *City of New York v. Jacoby-Bender, Inc. (In re Jacoby-Bender, Inc.)*, 758 F.2d 840, 841-42 (2d Cir. 1985) (holding that where a transfer is necessary to the consummation of a plan, the transfer is "under a plan" within meaning of Bankruptcy Code section 1146(c)); *City of New York v. Smoss Enters. Corp. (In re Smoss Enters. Corp.)*, 54 B.R. 950, 951 (E.D.N.Y. 1985) (stating that Section 1146(c) was designed to reach transfers on which "the plan hinged and which the court had to approve prior to the confirmation"), *aff'd mem.*, No. 85-5106, 1986 U.S. App. LEXIS 28677 (2d Cir. Mar. 31, 1986); *In re United Press Int'l, Inc.*, Case No. 91 B 13955 (FGC), 1992 Bankr. LEXIS 842, at *4, *6-7 (Bankr. S.D.N.Y. May 18, 1992) (holding that Bankruptcy Code Section 1146(c) exemption applied to Section 363 sale where it found "the value of the Debtor's assets is likely to deteriorate [during the] time necessary to . . . confirm a plan"); *In re Permar Provisions, Inc.*, 79 B.R. 530, 533-34 (Bankr. E.D.N.Y. 1987) (stating that determination of applicability of Bankruptcy Code Section 1146(c) exemption is same for pre- and post-

confirmation dispositions of property, namely "whether the sale of 'property is essential to confirmation of the plan'") (citation omitted).

24.     Although the Debtors have not yet filed a Chapter 11 plan of reorganization, an integral part of any plan will be the Debtors' ability to divest themselves of these stores to AWG/Alex Lee or the Ultimate Purchaser.  In light of the foregoing, the Debtors respectfully submit that the sale of the Assets is an integral part of, and a necessary predicate toward, the Debtors' Chapter 11 reorganization plan.  Accordingly, the sale should be exempt under Bankruptcy Code Section 1146(c) from any stamp, transfer, sales, recording or similar taxes.

**F.      Elimination of 10-Day Stay Under Rules 6004(g) and 6006(d)**

25.     Pursuant to Rule 6004(g), F.R. Bankr. P., unless the Court orders otherwise, all orders authorizing the sale of property outside of the ordinary course of business pursuant to Section 363 of the Bankruptcy Code are automatically stayed for ten days after entry of the order. Rule 6006(d), F.R. Bankr. P. provides a similar ten-day automatic stay period with respect to the assumption and assignment of executory contracts.  Given the requirements of the Purchase Agreement and the need to close the sale and assume and assign the leases as promptly as possible, the Debtors request that the Court order and direct a waiver of the 10-day stay period.

## **Conclusion**

For the foregoing reasons, the Debtors respectfully request that the Court enter an order substantially in the form attached (a) authorizing the Debtors to enter into the Purchase Agreement and sell the Assets free and clear of all liens, claims and encumbrances and exempt from taxes, (b) authorizing the Debtors to assume and assign the relevant leases and subleases; and (c) granting such other and further relief as the Court deems just and proper.

Dated: July 21, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By  */s/ D. J. Baker*<br>     D. J. Baker<br>     Sally McDonald Henry<br>     Rosalie Walker Gray<br>     Eric M. Davis | By  */s/ Cynthia C. Jackson*<br>     Stephen D. Busey<br>     James H. Post<br>     Cynthia C. Jackson  (F.B.N. 498882) |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(212) 735-2000 (facsimile)<br>djbaker@skadden.com | 225 Water Street, Suite 1800<br>Jacksonville, Florida  32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>cjackson@smithhulsey.com |
| Co-Attorneys for Debtors | Co-Attorneys for Debtors |

00502243.3