# PURCHASE AND SALE AGREEMENT

This **PURCHASE AND SALE AGREEMENT** ("Agreement") is made and entered into as of the 19th day of July, 2005, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation, with its principal place of business at 5050 Edgewood Court, Jacksonville, FL 32254 (hereinafter "Seller"), and **PUBLIX SUPER MARKETS, INC.**, a corporation of the State of Florida, with its principal place of business at 3300 Publix Corporate Parkway, Lakeland, Florida  33811-3311 (hereinafter "Buyer").

**RECITALS:**

A. Seller owns and operates pharmacies located within Seller's supermarkets as described on Exhibits A-2 and C  (individually, "Pharmacy" or, collectively, "Pharmacies").

B. Buyer desires to purchase from Seller the prescription files and records and the Pharmacy inventory located at each of the Pharmacies (the "Assets").

C. Seller desires to sell said Assets upon the terms, covenants and agreements hereinafter provided.

D. Seller filed a voluntary petition (the "Petition") for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "Filing Date") and has operated its business as a debtor-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date.  By order entered on April 13, 2005, the Chapter 11 bankruptcy case of Seller was transferred to the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") where it is being administered under Case No. 05-03817-3F1 (the "Bankruptcy Case").

**In consideration of the covenants and agreements hereinafter contained and of the mutual undertakings of the parties hereto and subject to Bankruptcy Court approval**, it is hereby mutually agreed by and between Seller and Buyer as follows:

1. Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, the following described personal property:

a. all prescription files and records, customer lists and patient profiles relating to each Pharmacy, including any such files or records maintained by computer (collectively referred to as the "Records") currently located at the Pharmacies or any Records at each of the Pharmacies added between the date of this Agreement and the Closing Date as defined in paragraph 6 below.

SGRJAX\71413.2

     b.    the entire inventory of non-damaged, in-date legend drug products located in each Pharmacy at the conclusion of the Physical Inventory described in paragraph 5 below, including full and partial containers and controlled substances, as well as insulin, syringes, and certain specified over-the-counter items identified in Exhibit A-1 hereto (collectively referred to as the "Pharmacy Products.")  A product will be considered out-of-date if the product has less than 60 days remaining to its expiration date on the date the Physical Inventory is taken.

2.    The parties acknowledge that this Agreement is subject to approval by the Bankruptcy Court, and that the Bankruptcy Court must issue an order (or orders) in the Bankruptcy Case approving this Agreement and all of the terms and conditions hereof, and further authorizing Seller to consummate the transactions contemplated herein ("Bankruptcy Court Approval").  Buyer agrees to use its best efforts to assist Seller in seeking Bankruptcy Court Approval of this Agreement.

3.    On or before that date which is two (2) business days prior to the Closing Date (as that term is defined in paragraph 6 below) or such earlier date after Bankruptcy Court approval of this Agreement as Buyer and Seller may mutually designate, Buyer will transfer and deliver to the Escrow Agent identified herein (by wire transfer to an account designated in writing by Escrow Agent) the following sums:

     a.    One Million Nine Hundred Thousand and no/100 Dollars ($1,900,000.00) for the Records.

     b.    A deposit equal to Seller's acquisition cost for the estimated quantities of Pharmacy Products as set forth in the schedule attached hereto as Exhibit A-2.

Buyer shall also deliver to Escrow Agent as soon as practicable, but prior to the Closing Date, two counterparts of the relevant Closing Statement as described in paragraph 5(c) below, executed by Buyer.  (Buyer's executed Closing Statement is hereinafter referred to as "Buyer's Escrowed Items").  The final price to be paid by Buyer for the Pharmacy Products shall be determined pursuant to a Physical Inventory in the manner set forth in paragraph 5 below, and together with the amount set forth in subparagraph 3(a) above, shall comprise the "Purchase Price."  At closing, the Buyer will transfer and deliver to the Escrow Agent (by wire transfer to an account designated in writing by Escrow Agent) the amount by which the Purchase Price exceeds the amounts delivered and deposited pursuant to subparagraphs 3(a) and 3(b) above.  If the aggregate funds and deposits on hand exceed the Purchase Price, then Seller and Buyer shall provide written instructions to the Escrow Agent to deliver the excess to Buyer promptly following closing.  Seller may waive compliance by Buyer as to any of the foregoing items.

4.    On or before that date which is two (2) business days prior to the Closing Date (as that term is defined in paragraph 6 below) or such earlier date after Bankruptcy Court approval of this Agreement as Buyer and Seller may mutually designate, Seller will deliver to Escrow Agent an executed Bill of Sale conveying to Buyer complete and unencumbered title to the Records and to the Pharmacy Products to be sold pursuant to this Agreement.  A sample of the Bill of Sale is attached hereto as Exhibit B.  Seller shall also deliver to Escrow

Agent as soon as practicable, but prior to the Closing Date, two counterparts of the relevant Closing Statement as described in paragraph 5(c) below, executed by Seller. (The executed Bill of Sale and Seller's executed Closing Statement are hereinafter referred to as "Seller's Escrowed Items."). Buyer may waive compliance by Seller as to any of the foregoing items.

5. a. On or before that date which is one (1) business day prior to the Closing Date (as that term is defined in paragraph 6 below), a physical inventory of all Pharmacy Products at each Pharmacy (the "Physical Inventory") shall be conducted by a recognized inventory service selected by Seller in its sole discretion. Seller and Buyer each will have registered pharmacists as their respective representatives present at each Pharmacy during the Physical Inventory who will acknowledge in writing all computations before leaving the Pharmacy.

      b. Each of the Pharmacy Products shall be inventoried by item as follows:

           i. Schedule II drug products shall be inventoried as exact counts and transferred on DEA Form 222 supplied to Seller and Buyer.

           ii. Legend drug products shall be inventoried at Seller's current acquisition cost.

           iii. Over-the-counter items set forth on Exhibit A-1 will be inventoried at Seller's current acquisition cost.

           iv. "Will call" prescriptions filled by Seller but not purchased by customers at the time of the Physical Inventory shall be credit returned and included in the inventory count.

Pharmacy Products in opened containers shall be inventoried at one-half of the full container cost. Unopened containers shall be inventoried at the full cost of the container.

      c. Upon completion of the Physical Inventory, except for mathematical errors, other agreed upon changes or disputes noted in writing, the count of the inventory service shall be final and binding on the parties for all purposes of this Agreement and shall be used to determine the value of the Pharmacy Products. Upon completion of the valuation of the Pharmacy Products, which shall be completed prior to the Closing Date, the Buyer and Seller shall execute a closing statement, which shall contain the final purchase price for the Pharmacy Products at each Pharmacy and shall otherwise be consistent with the count of the inventory service, and shall have incorporated therein appropriate disbursement instructions to Escrow Agent.

      d. The parties agree to cooperate in connection with the Physical Inventory and will attempt, in good faith, to resolve any disputes respecting the quantity or quality of Pharmacy Products that may arise during the Physical Inventory. Any disputes that have not been resolved by the Closing Date shall be separately listed and settled by the Buyer and Seller as expeditiously as practicable thereafter or, if the parties cannot agree, by the

Bankruptcy Court. Any such determination of any dispute shall be final and binding on the parties.

      e.    The cost of the Physical Inventory will be shared and paid equally by the parties. Seller will engage the inventory service, but the fees of the inventory service will be billed to and paid by Buyer with appropriate credits given to Buyer at closing. Buyer agrees to pay such fees at closing or earlier if then due and in any event before delinquent.

6.    The closing of the transactions contemplated herein will take place on that date designated by Buyer in writing, and reasonably acceptable to Seller, that is between three (3) days and thirty (30) days following Bankruptcy Court Approval of this Agreement (the "Closing Date"). At the closing of these transactions, Seller will, subject to the terms and conditions herein, direct Escrow Agent to deliver Seller's Escrowed Items to Buyer, and Buyer will, subject to the terms and conditions herein, direct Escrow Agent to deliver Buyer's Escrowed Items and the Purchase Price to Seller. Immediately after the closing of these transactions, Seller shall surrender to Buyer possession of the Records and the Pharmacy Products. Buyer shall make appropriate arrangements to move the Records and the Pharmacy Products from the Pharmacy to Buyer's facilities. Buyer shall be responsible for any charges or losses resulting from the movement of the Records or the Pharmacy Products.

7.    The Parties agree to indemnify and hold harmless each other against, and in respect of, all liabilities, losses, claims, costs or damages, including reasonable legal fees (the "Claims") resulting from or arising out of:

      a.    any breach of any representation or warranty made by them herein,

      b.    any failure to perform any of their obligations, covenants or agreements hereunder,

      c.    with respect to indemnification by Seller, any Claims made against or incurred by Buyer that relate to the Records or the Pharmacy Products or the operation of the Pharmacies during the period up to and including the Closing Date, and,

      d.    with respect to indemnification by Buyer, any Claims made against or incurred by the Seller that relate to the Records or the Pharmacy Products during the period from and after the Closing Date.

8.    Buyer shall not assume any liability of any nature not expressly provided herein as a result of the transactions contemplated hereunder. At closing and subject to Bankruptcy Court approval, Seller will sell and convey the Records and the Pharmacy Products free and clear of all liens, claims, set offs, encumbrances and interests as provided by Section 363 of the United States Bankruptcy Code. In addition, the order approving the purchase of the Pharmacy Assets shall (i) contain a finding that Buyer is a good faith purchaser within the meaning of 11 U.S.C. sec. 363(m); (ii) be subject to review and approval by Buyer's bankruptcy counsel and (iii) not be subject to any stay pending appeal as of the Closing Date.

9. Seller agrees to comply with all applicable laws and regulations that may relate to its transfer of the Records or the Pharmacy Products. In particular, Seller shall notify the appropriate governmental agencies, including the state Board of Pharmacy and the regional DEA office, of the transfers described herein. If Seller requests information or assistance necessary to its fulfillment of its obligations under this provision, Buyer agrees that it will cooperate and use commercially reasonable efforts to render such assistance.

10. Buyer agrees to comply with all applicable laws and regulations that may relate to its receipt and continued maintenance and administration of the Records or the Pharmacy Products, including without limitation the "Privacy Rule" promulgated under the Health Insurance Portability and Accountability Act of 1996. If Buyer requests information or assistance necessary to its fulfillment of its obligations under this provision, Seller agrees that it will cooperate and use commercially reasonable efforts to render such assistance.

11. Seller represents and warrants to Buyer that it is a corporation duly organized and in good standing under the laws of the State of Florida, that subject to Bankruptcy Court approval Seller has full power and authority to enter into and perform this Agreement, and that Seller has taken all appropriate action to enable it to perform this Agreement.

12. Buyer represents and warrants to Seller that it is a corporation duly organized and in good standing under the laws of the State of Florida, that Buyer has full power and authority to enter into and perform this Agreement and that the execution, delivery and performance of this Agreement has been duly authorized by all requisite corporate action on behalf of Buyer.

13. All notices hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, addressed, if to Buyer,

to:

| | |
|---|---|
| Publix Super Markets, Inc. | Publix Super Markets, Inc. |
| P.O. Box 407 | P.O. Box 407 |
| Lakeland, FL 33802-0407 | Lakeland, FL 33802-0407 |
| Attn: Fred Ottolino, | Attn: Office of General Counsel |
| Vice President Pharmacy | |

and if to Seller,

to:

| | |
|---|---|
| WINN-DIXIE STORES, INC. | WINN-DIXIE STORES, INC. |
| 5050 Edgewood Court | 5050 Edgewood Court |
| Jacksonville, FL 32254 | Jacksonville, FL 32254 |
| Attn: Mike LeBlanc, | Attn: Office of General Counsel |
| Business Development Manager, Pharmacy | |

Provided, however, that each party by like notice may designate any further or different addresses to which subsequent notices shall be sent.

14. This Agreement shall bind and benefit the successors and assigns of the respective parties hereto.

15. The Bankruptcy Court shall have exclusive jurisdiction over all matters, including any legal action, suit or proceeding arising out of or relating to this Agreement, any related agreements, or the contemplated transactions and the interpretation, implementation and enforcement of this Agreement, and the parties hereto irrevocably submit and consent to such jurisdiction. Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in paragraph 13 of this Agreement shall be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum.

16. In the event of litigation between the parties arising out of or relating to this Agreement, any related agreements, or the contemplated transactions and the interpretation, implementation and enforcement of this Agreement, the party prevailing in such litigation shall be entitled to recover from the non-prevailing party its reasonable attorneys' fees and court costs, including any fees and costs incurred during pre-suit investigation, mediation or other alternative dispute resolution process, or on appeal(s).

17. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, including all matters of construction, validity, performance and enforcement.

18. a. By signing a copy of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Upon its receipt of funds from Buyer, Escrow Agent will receive and hold such funds, and interest, if any, accrued thereon, in trust to be disposed of in accordance with the provisions of this Agreement. Escrow Agent will not be liable to any party except for claims resulting from the negligence or willful misconduct of Escrow Agent. If the escrowed funds or interest, if any, accrued thereon is involved in any controversy or litigation, the parties hereto will jointly and severally indemnify and hold Escrow Agent free and harmless from and against any and all loss, cost, damage, liability or expense, including costs of reasonable attorneys' fees to which Escrow Agent may be put or which may incur by reason of or in connection with such controversy or litigation, except to the extent it is finally determined that such controversy or litigation resulted from Escrow Agent's negligence or willful misconduct. If the indemnity amounts payable hereunder result from the fault of Buyer or Seller (or their respective agents), the party at fault will pay, and hold the other party harmless against, such amounts. Otherwise, Buyer and Seller each will be responsible for one-half of such amounts.

b.  If a written objection is filed within the time allowed or if Escrow Agent is in doubt as to its duties, Escrow Agent may continue to hold the escrowed funds and interest, if any, accrued thereon until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court, or Escrow Agent may interplead the same in such court and thereafter be relieved of any and all liability.  In any action or proceeding regarding the escrowed funds or interest, if any, accrued thereon brought by Escrow Agent or to which Escrow Agent is made a party, the Escrow Agent will be entitled to recover its reasonable costs and attorneys' fees from whichever of Seller or Buyer is not the prevailing party in such action or proceeding.  If there is no prevailing party, Seller and Buyer each shall be responsible for one-half of such costs and fees.

c.  Escrow Agent has executed this Agreement solely for the purpose of acknowledging and agreeing to the provisions of this paragraph 18.  Escrow Agent's consent to and execution of any modification or amendment of this Agreement other than this paragraph 18 shall not be required.

19. This Agreement constitutes the entire agreement between the parties and supersedes all prior offers, negotiations, and understandings, whether oral or written, between the parties hereto and may only be modified by a writing executed by both parties.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, this Agreement has been executed and delivered as of the day and year first above written.

        **SELLER:**

        **WINN-DIXIE STORES, INC.**, a Florida corporation

        By: _____
        Name: Tom Robbins
        Title: Senior Vice President

        **BUYER:**

        **PUBLIX SUPERMARKETS, INC.**

        By: _____
        Name: _____
        Title: _____

Acknowledged and agreed this 21st day of July, 2005 for the limited purposes set forth in paragraph 18 of this Agreement:

**ESCROW AGENT:**

**SMITH, GAMBRELL & RUSSELL, LLP**
**Jacksonville, Florida office**

By: _____
Name: Douglas G. Stanford
Title: Partner

8

# EXHIBIT A-1
## OTC ITEMS TO BE INCLUDED IN SALE

| CIN | Item Description | NDC | Vendor Name |
|---|---|---|---|
| 1714872 | INS HUMULIN 70/30 10ML | 2871501 | LILLY ELI & CO |
| 2990174 | ONE TCH ULTRA 100 | 53885024510 | LIFESCAN INC |
| 1325398 | INS HUMULIN N 100U/ML 10ML | 2831501 | LILLY ELI & CO |
| 2778207 | ACCU-CHEK CCRV 100 | 50924038110 | ROCHE DIAGNOSTICS |
| 1171008 | INS NOVOLIN 70/30 10ML | 169183711 | NOVO NORDISK PHARMACEUTICAL INC |
| 3437829 | ACCU-CHEK COMPACT 102 | 50924088401 | ROCHE DIAGNOSTICS |
| 1391051 | INS NOVOLIN N 100U/ML 10ML | 169183411 | NOVO NORDISK PHARMACEUTICAL INC |
| 2487239 | BD UFII 31X5/16 100X0.5 328468 | 8290328468 | BECTON DICKINSON CONS |
| 1325240 | INS HUMULIN R 100U/ML 10ML | 2821501 | LILLY ELI & CO |
| 2990166 | ONE TCH ULTRA 50 | 53885024450 | LIFESCAN INC |
| 2245389 | ONE TCH BAS PROF II TEST 100 | 53885037410 | LIFESCAN INC |
| 2778199 | ACCU-CHEK CCRV 50 | 50924037350 | ROCHE DIAGNOSTICS |
| 3270238 | ACCU-CHEK COMPACT 51 | 50924098850 | ROCHE DIAGNOSTICS |
| 3235421 | ACCU-CHEK ACTIVE 50 | 50924047550 | ROCHE DIAGNOSTICS |
| 3383866 | FREESTYLE TEST STRIPS 100 | 99073012101 | THERASENSE |
| 2812451 | ASCENSIA ELITE 100 | 193394221 | BAYER DIAGNOSTICS |
| 1860956 | BD UF 30GX0.5N 0.5ML100 328466 | 8290328466 | BECTON DICKINSON CONS |
| 3398864 | MUCINEX 600MG 40 | 63824000840 | ADAMS LABORATORIES |
| 2355337 | ACCU-CHEK ADVNT 100 | 50924096610 | ROCHE DIAGNOSTICS |
| 1860949 | BD UF 30GX0.5IN 1ML 100 328411 | 8290328411 | BECTON DICKINSON CONS |
| 2772184 | ONE TCH SRST 100 | 53885005210 | LIFESCAN INC |
| 3270022 | ACCU-CHEK COMPACT KIT | 50924001901 | ROCHE DIAGNOSTICS |
| 3376118 | INS NOVOLIN 70/30 INNOLET 5X3 | 169231721 | NOVO NORDISK PHARMACEUTICAL INC |
| 2561066 | BD UFII 30GX5/16 100X1ML328418 | 8290328418 | BECTON DICKINSON CONS |
| 2721306 | INS NOVOLIN 70/30 5X3ML | 169347718 | NOVO NORDISK PHARMACEUTICAL INC |
| 1710631 | ASCENSIA ELITE 50 | 193391850 | BAYER DIAGNOSTICS |
| 2824514 | INS HUMULIN 70/30 5X3ML PFS | 2877059 | LILLY ELI & CO |
| 1231539 | INS NOVOLIN R 100U/ML 10ML | 169183311 | NOVO NORDISK PHARMACEUTICAL INC |
| 2487247 | BD UFII 31X5/16 100X0.3 328438 | 8290328438 | BECTON DICKINSON CONS |
| 2990182 | ONE TCH ULTRA SYS METR | 53885024701 | LIFESCAN INC |
| 2848208 | ASCENSIA AUTODISC 100 | 193362721 | BAYER DIAGNOSTICS |
| 1147099 | INS HUMULIN L 100U/ML 10ML | 2841501 | LILLY ELI & CO |
| 2710945 | ASCENSIA AUTODISC 5 | 193361050 | BAYER DIAGNOSTICS |
| 2399715 | SOFTCLIX 100 | 50924097110 | ROCHE DIAGNOSTICS |
| 3453677 | BD TEST STRIPS 50 322053 | 8290322053 | BECTON DICKINSON CONS |
| 2420289 | ONE TCH SRST 50 | 53885035950 | LIFESCAN INC |
| 2073112 | ACCU-CHEK ADVNT CARE KIT | 50924086001 | ROCHE DIAGNOSTICS |
| 2196061 | NOVOFINE 30 ND 30GX8MM 100 | 169185250 | NOVO NORDISK |

| CIN | Item Description | NDC | Vendor Name |
|---|---|---|---|
| | | | PHARMACEUTICAL INC |
| 2975647 | FREESTYLE TEST STRIPS 50 | 99073012050 | THERASENSE |
| 1561349 | ONE TCH BAS PROF II TEST 50 | 53885019850 | LIFESCAN INC |
| 3292034 | PRECISION XTRA 100 | 57599987705 | MEDISENSE INC |
| 3536844 | ASCENSIA MICROFILL 100TESTSTRP | 193709021 | BAYER DIAGNOSTICS |
| 3447117 | LORATADINE 10MG 100 | 781507701 | SANDOZ - CS (GENEVA) |
| 1152388 | BD MF 28GX0.5N0.5ML 100 328465 | 8290328465 | BECTON DICKINSON CON |
| 3459377 | MUCINEX 600MG 20 | 63824000820 | ADAMS LABORATORIES |
| 2325447 | PRECISION QID 100 | 57599740105 | MEDISENSE INC |
| 2073104 | ACCU-CHEK ADVNT 50 | 50924055350 | ROCHE DIAGNOSTICS |
| 1625615 | INS HUMULIN 50/50 10ML | 2951501 | LILLY ELI & CO |
| 1860964 | BD UF 30GX0.5N 0.3ML100 328431 | 8290328431 | BECTON DICKINSON CONS |
| 2760312 | BD UF3 PEN 31GX8MM 100 320109 | 8290320109 | BECTON DICKINSON CONS |
| 3376134 | INS NOVOLIN N INNOLET 5X3ML | 169231421 | NOVO NORDISK PHARMACEUTICAL INC |
| 2824522 | INS HUMULIN N 100U/ML 5X3MLPFS | 2873059 | LILLY ELI & CO |
| 2444065 | INS HUMULIN U 100U/ML 10ML | 2861501 | LILLY ELI & CO |
| 1152669 | BD MF 28GX0.5IN 1ML 100 328410 | 8290328410 | BECTON DICKINSON CONS |
| 2744480 | ONE TCH FASTTAKE 50 | 53885044450 | LIFESCAN INC |
| 2721280 | INS NOVOLIN N 100UML 5X3ML PEN | 169347418 | NOVO NORDISK PHARMACEUTICAL INC |
| 3007788 | ONE TCH ULTRASOFT 100 | 53885039310 | LIFESCAN INC |
| 3307337 | NOVOFINE 31 ND 31GX6MM 100 | 169185255 | NOVO NORDISK PHARMACEUTICAL INC |
| 1237551 | BD ALCOHOL SWAB 100 326895 REG | 8290326895 | BECTON DICKINSON CONS |
| 2539716 | MAG-OX 400 120 | 165002212 | BLAINE COMPANY |
| 2487213 | BD UF PEN 29GX0.5N 100  328203 | 8290328203 | BECTON DICKINSON CONS |
| 2325439 | PRECISION QID 50 | 57599740004 | MEDISENSE INC |
| 2772168 | ONE TCH FASTTAKE 100 | 53885004810 | LIFESCAN INC |
| 2254589 | VIVONEX PEDIATRIC 36X1.7OZ | 212713176 | NOVARTIS NUTRITION |
| 3126786 | FERREX 150 100UD | 51991020311 | BRECKENRIDGE PHARM INC – CS |
| 1370626 | MURO-128 5% 15ML OPTH | 24208027715 | BAUSCH & LOMB (BRAND) |
| 2533628 | SOFTCLIX 200 | 50924098820 | ROCHE DIAGNOSTICS |
| 3536810 | ASCENSIA MICROFILL 50 TESTSTRP | 193708050 | BAYER DIAGNOSTICS |
| 2245397 | ONE TCH BAS PROF II TEST 25 | 53885019725 | LIFESCAN INC |
| 3335395 | BD UF3 MINI PEN 31GX5MM 100 | 8290320119 | BECTON DICKINSON CONS |
| 1370600 | MURO-128 5% 3.5GM OPTH OINT | 24208038555 | BAUSCH & LOMB (BRAND) |
| 2420297 | ONE TCH SRST METER SYSTEM | 53885034101 | LIFESCAN INC |

# EXHIBIT A-2

## ESTIMATED AMOUNTS OF PHARMACY PRODUCTS

| Store | ADDRESS | CITY | ZIP | ST | Closing Inventory 7-13-05 | RX Weekly Avg (6 weeks ending 7-13-05) |
|---|---|---|---|---|---|---|
| 417 | 5201 HWY 289 SOUTH | BIRMINGHAM | 35242 | AL | $149,987 | 451 |
| 1223 | 6101 CALHOUN MEMORIAL HWY | EASLEY | 29640 | SC | $97,782 | 497 |
| 1908 | 4800 WHIRESBURG DR. | HUNTSVILLE | 35802 | AL | $152,067 | 467 |
| 1909 | 1000 BELTLINE RD SW | DECATUR | 35601 | AL | $167,676 | 570 |
| 2240 | 4058 13TH STREET | ST. CLOUD | 34769 | FL | $101,252 | 343 |
| 2262 | 18840 NEW US HWY 441 | MT DORA | 32757 | FL | $89,213 | 323 |
| 2316 | 624 BARNES BLVD. | ROCKLEDGE | 32955 | FL | $118,557 | 445 |
| 2361 | 10330 S. FEDERAL HWY | PORT ST. LUCIE | 34952 | FL | $81,676 | 314 |
| 2707 | 110 SOUTH CEDAR STREET | McDONOUGH | 30253 | GA | $90,173 | 377 |
| 2729 | 3101 ROSWELL RD | MARIETTA | 30062 | GA | $114,430 | 627 |
| 2737 | 2116 FAIRBURN RD | DOUGLASVILLE | 30135 | GA | $95,847 | 253 |

**EXHIBIT B**

**SAMPLE BILL OF SALE**

**BILL OF SALE**

THE UNDERSIGNED, for and in consideration of _____ ($_____) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the Purchase and Sale Agreement entered into on the _____day of _____, 2005 (the "Agreement"), between **WINN-DIXIE STORES, INC.,** a Florida corporation (hereinafter referred to as the "Seller"), and PUBLIX SUPER MARKETS, INC., a corporation of the State of Florida  (hereinafter referred to as the "Buyer"), Seller does hereby sell, transfer and convey unto Buyer the following personal assets and personal properties presently contained in Seller's Pharmacy located at:_____ (hereinafter referred to as the "Pharmacy"):

    a.    all prescription files and records, customer lists and patient profiles relating to the Pharmacy, including any such files or records maintained by computer (hereinafter collectively referred to as the "Records") currently located at the Pharmacy.

    b.    the entire inventory of non-damaged, in-date legend drug products currently located in the Pharmacy, including full and partial containers and controlled substances, as well as insulin, syringes, and certain specified over-the-counter items identified in Exhibit A–1 to the Agreement (hereinafter collectively referred to as the "Pharmacy Products.")

The Records and the Pharmacy Products are being transferred free and clear of any and all liens, claims, interests, set offs and encumbrances pursuant to the Order Approving Debtors' (A) Sale of Pharmaceutical Assets Free and Clear of Liens, and (B) Granting Related Relief, dated _____, 2005.

TO HAVE AND TO HOLD the said property described above unto Buyer, its successors and assigns, forever.

IN WITNESS WHEREOF, Seller has hereunto caused this Bill of Sale to be executed this _____day of _____, 2005.

By: _____

NAME:_____

TITLE: _____

SGRJAX\71413.2

**EXHIBIT C**

| Store | ADDRESS | CITY | ZIP | ST |
|---|---|---|---|---|
| 417 | 5201 HWY 289 SOUTH | BIRMINGHAM | 35242 | AL |
| 1908 | 4800 WHIRESBURG DR. | HUNTSVILLE | 35802 | AL |
| 1909 | 1000 BELTLINE RD SW | DECATUR | 35601 | AL |
| 1223 | 6101 CALHOUN MEMORIAL HWY | EASLEY | 29640 | SC |
| 2240 | 4058 13TH STREET | ST. CLOUD | 34769 | FL |
| 2262 | 18840 NEW US HWY 441 | MT DORA | 32757 | FL |
| 2316 | 624 BARNES BLVD. | ROCKLEDGE | 32955 | FL |
| 2361 | 10330 S. FEDERAL HWY | PORT ST. LUCIE | 34952 | FL |
| 2707 | 110 SOUTH CEDAR STREET | McDONOUGH | 30253 | GA |
| 2729 | 3101 ROSWELL ROAD | MARIETTA | 30062 | GA |
| 2737 | 2116 FAIRBURN ROAD | DOUGLASVILLE | 30135 | GA |