## PURCHASE AND SALE AGREEMENT

This **PURCHASE AND SALE AGREEMENT** ("Agreement") is made and entered into as of the 19th day of July, 2005, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation, with its principal place of business at 5050 Edgewood Court, Jacksonville, FL 32254 (hereinafter "Seller"), and **WALGREEN CO.**, an Illinois corporation, with its principal place of business at 200 Wilmot Road, Deerfield, Illinois 60015 (hereinafter "Buyer").

### RECITALS:

A.    Seller owns and operates a pharmacy business(es) within Seller's supermarket(s) located at the addresses shown on Exhibit "A" attached hereto and by this reference incorporated fully herein (the "Pharmacy(ies)").

B.    Buyer desires to purchase from Seller the prescription files and records and the stock of prescription pharmaceutical merchandise located at the Pharmacies (collectively, the "Assets") upon the terms, covenants and agreements hereinafter provided.

C.    Seller desires to sell said Assets upon the terms, covenants and agreements hereinafter provided.

D.    Seller filed a voluntary petition (the "Petition") for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "Filing Date") and has operated its business as a debtor-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date. By order entered on April 13, 2005, the Chapter 11 bankruptcy case of Seller was transferred to the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") where it is being administered under Case No. 05-03817-3F1 (the "Bankruptcy Case").

**In consideration of the covenants and agreements hereinafter contained and of the mutual undertakings of the parties hereto and subject to Bankruptcy Court approval**, it is hereby mutually agreed by and between Seller and Buyer as follows:

1.    Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, the following described personal property:

a.    any and all prescriptions, prescription files and records, customer lists and patient profiles, including without limitation (i) any files or records maintained electronically; (ii) any files or records added between the date of this Agreement and the date of transfer; (iii) as of April 14, 2003, a record of all disclosures of Protected Health Information ("PHI"), as that term is defined in the Health Insurance Portability and Accountability Act of 1996, P. L. 104-191, and its implementing rules and regulations ("HIPAA"); (iv) a CD, FTP, or other electronic transfer means as Buyer reasonably requires, containing all prescription file and

Record data in electronic form, including all data specified on Exhibit "B" attached hereto and made a part hereof; and (v) a complete and accurate log of all disclosures of protected health information made by Seller and Seller's Business Associates (as defined in HIPAA) since April 14, 2003 (hereinafter collectively referred to as "Records"); and

      b.    the entire inventory of non-damaged, in-date legend drug products located in the Pharmacies at the conclusion of the Physical Inventory described in paragraph 5 below, including full and partial containers and controlled substances, as well as insulin, syringes, and certain specified over-the-counter items identified in Exhibit "C" attached hereto and made a part hereof (collectively referred to as the "Pharmacy Products.")  A product will be considered in date if the product has more than 90 days remaining to its expiration date on the date the Physical Inventory is taken.  Pharmacy Products will not be deemed to include any prescription items over three years old; vials or bottles; any merchandise that has been damaged, broken, is shopworn, faded (including faded labels) or has visible deterioration; or obsolete merchandise not currently being supplied by distributors to retail stores.

2.    The parties acknowledge that this Agreement is subject to approval by the Bankruptcy Court, and that the Bankruptcy Court must issue an order (or orders) in the Bankruptcy Case approving this Agreement and all of the terms and conditions hereof, and further authorizing Seller to consummate the transactions contemplated herein ("Bankruptcy Court Approval").  Seller agrees to use its best efforts to obtain Bankruptcy Court approval of this Agreement.

3.    a.    On that date which is one (1) business day prior to the Closing Date (as that term is defined in paragraph 6 below), a physical inventory of all Pharmacy Products at the Pharmacy(ies) (the "Physical Inventory") shall be conducted by Washington Inventory Service.  No pre-counting of Pharmacy Products will be permitted.  Seller and Buyer each will have at least one and not more than four registered pharmacists or other personnel present at the Pharmacy during the Physical Inventory.  A representative of each party will acknowledge in writing all computations before leaving the Pharmacy.

      b.    Each of the Pharmacy Products shall be inventoried by item as follows:

          i.    Schedule II drug products shall be inventoried as exact counts and transferred on DEA Form 222 supplied to Seller and Buyer.

          ii.    Legend drug products shall be inventoried at Seller's actual acquisition cost, as marked on containers; provided however, that if Seller's actual acquisition cost is unavailable at the time of the Physical Inventory, then the legend drug products shall be valued as follows: for brand-name pharmaceuticals, 75% of the average wholesale price at the time of purchase by Seller, as determined by reference to the Medi-Span, Inc. Prescription Pricing Guide ("AWP"); for generic pharmaceuticals, 20% of the AWP.

          iii.    Over-the-counter items set forth on Exhibit C will be inventoried at Seller's current acquisition cost, as marked on containers; provided however, that if Seller's actual acquisition cost is unavailable at the time of the Physical Inventory, then the over-the-counter items will be valued at 40% of retail price.

    iv. Prior to the Closing, Seller shall use reasonable efforts to fill and deliver to pharmacy customers any partially filled prescriptions with a remaining quantity balance ("IOU Prescriptions").  For any IOU Prescriptions remaining on the Closing Date, Seller shall credit the prescription to the customer or to the third-party payor, as appropriate, on the Closing Date.  Buyer assumes no liability for IOU Prescriptions.  In addition, prior to the Closing Date, Seller shall reverse and return to stock any filled prescriptions that have not been picked up, providing all necessary notice to any third-party payors, and shall provide Buyer with a list of such prescriptions so that Buyer is prepared to fill such prescriptions on or after the Closing Date.

    v. Pharmacy Products in opened containers shall be inventoried in tenths.  Unopened containers shall be inventoried at the full cost of the container.

    vi. In no event will the purchase price for the Pharmacy Products exceed 110% of the inventory amount(s) shown on Exhibit "A".

  c. Upon completion of the Physical Inventory, the Buyer and Seller shall execute a closing statement containing the final purchase price for the Pharmacy Products at the Pharmacies as determined by the inventory service.  Except for mathematical errors, other agreed upon changes or disputes noted in writing, the count of the inventory service shall be final and binding on the parties for all purposes of this Agreement and shall be used to determine the value of the Pharmacy Products.

  d. The parties agree to cooperate in connection with the Physical Inventory and will attempt, in good faith, to resolve any disputes respecting the quantity or quality of Pharmacy Products that may arise during the Physical Inventory.  Any disputes that have not been resolved by the Closing Date shall be separately listed and settled by the Buyer and Seller as expeditiously as practicable thereafter or, if the parties cannot agree, by the Bankruptcy Court.  Any such determination of any dispute shall be final and binding on the parties.

  e. The cost of the Physical Inventory will be shared and paid equally by the parties.  The inventory service will invoice each party separately.

  f. The purchase price for the Records shall be as shown on Exhibit "A".

4. Upon completion of the Physical Inventory, the following procedure shall be employed:

  a. Seller shall execute and deliver to Buyer a Bill of Sale in the form attached hereto as Exhibit "D", conveying to Buyer complete and unencumbered title to the Pharmacy Products and Records.

  b. Seller shall immediately surrender possession of the Pharmacy Products and Records.  With respect to the Records, the transaction contemplated herein shall be deemed completed on the Closing Date.

      c.      Buyer shall pay to Seller the amount specified in Section 3 above for the Records upon Seller's delivery of the Records.

      d.      Within two (2) business days after receipt of the executed inventory report, Buyer shall pay to Seller the purchase price of the Pharmacy Products in accordance with the terms hereof.

5.      The closing of the transactions contemplated herein will take place on that date designated by Buyer in writing, and reasonably acceptable to Seller, that is between three (3) days and thirty (30) days following Bankruptcy Court Approval of this Agreement (the "Closing Date"). Buyer shall make appropriate arrangements to move the Records and the Pharmacy Products from the Pharmacies to Buyer's facilities. Buyer shall be responsible for any costs or expenses resulting from the movement of the Records and the Pharmacy Products after the completion of the Physical Inventory.

6.      The Parties agree to indemnify and hold harmless each other against, and in respect of, all liabilities, losses, claims, costs or damages, including reasonable legal fees (the "Claims") resulting from or arising out of:

      a.      any breach of any representation or warranty made by them herein,

      b.      any failure to perform any of their obligations, covenants or agreements hereunder,

      c.      with respect to indemnification by Seller, any Claims made against or incurred by Buyer that relate to the Records or the Pharmacy Products or the operation of the Pharmacy during the period up to and including the Closing Date, and,

      d.      with respect to indemnification by Buyer, any Claims made against or incurred by the Seller that relate to the Records or the Pharmacy Products during the period from and after the Closing Date.

7.      Buyer shall not assume any liability of any nature not expressly provided herein as a result of the transactions contemplated hereunder. Without limiting the generality of the foregoing, Buyer does not assume any type of successor liability as to trade creditors, unemployment, income, property, sales or other taxes, or otherwise, and Seller agrees to save and hold Buyer harmless from any claim for the same. As a condition of Buyer's obligation to close on the transaction contemplates herein, Seller will obtain a Bankruptcy Court order permitting and directing Seller to sell and convey the Records and the Pharmacy Products to Buyer, free and clear of all liens, claims and interests as provided by Section 363 of the United States Bankruptcy Code.

8.      Seller agrees to comply with all applicable laws and regulations that may relate to its transfer of the Records or the Pharmacy Products. In particular, Seller shall notify the appropriate governmental agencies, including the state Board of Pharmacy and the regional DEA office, of the transfers described herein. If Seller requests information or assistance

necessary to its fulfillment of its obligations under this provision, Buyer agrees that it will reasonably cooperate with Seller by providing such assistance.

9. Buyer agrees to comply with all applicable laws and regulations that may relate to its receipt of the Records or the Pharmacy Products. If Buyer requests information or assistance necessary to its fulfillment of its obligations under this provision, Seller agrees that it will cooperate and use commercially reasonable efforts to render such assistance.

10. a. After the Closing Date, Seller shall retain a complete copy of all Record Data in accordance with applicable record retention laws and regulations.

   b. Seller shall terminate any existing telephone accounts, including advertising and yellow pages agreements, for the Pharmacies. Seller shall arrange for call referral for all calls to the telephone numbers so canceled to the corresponding Walgreens drug stores shown on Exhibit "A". There shall be no charge to Buyer for such call referral service, and Buyer shall have no liability for telephone charges or billings arising from the number canceled by Seller. Further, Seller shall permit Buyer to place a sign at or near the Pharmacy drop-off window or the front entrance to the premises containing the Pharmacy for a period of ninety (90) days advising customers that all prescription files have been transferred to the corresponding Walgreens drug store.

   c. Seller shall notify each of its customers who have had a prescription filled or refilled within the last two years, of the transaction contemplated herein, by mailing them a letter in form attached hereto as Exhibit "E". The cost of such mailing shall be borne by Buyer.

   d. Seller shall complete and return to Buyer, the Form W-9 attached hereto, for tax reporting purposes.

11. Seller represents and warrants to Buyer that it is a corporation duly organized and in good standing under the laws of the State of Florida, that subject to Bankruptcy Court approval Seller has full power and authority to enter into and perform this Agreement, and that Seller has taken all appropriate action to enable it to perform this Agreement. Seller further covenants to Buyer that Seller will use commercially reasonable efforts to continue to operate its business in the Pharmacies in the normal course through the Closing Date, including without limitation maintaining normal operating hours and staffing levels, and that there will be no material adverse change to the business in the Pharmacies between the date of execution of this Agreement and the Closing Date, including without limitation maintaining the average daily prescription counts shown on Exhibit "A". Buyer shall have the right, upon reasonable notice and at Buyer's expense, to audit Seller's prescription records to verify such average daily prescription count on or before the Closing Date. Seller also hereby represents and warrants that its Federal Employer Identification Number ("FEIN") is _____ and its State Business Tax Number is _____.

12. Buyer represents and warrants to Seller that it is a corporation duly organized and in good standing under the laws of the State of Illinois, that Buyer has full power and authority to enter into and perform this Agreement and that the execution, delivery and performance of this Agreement has been duly authorized by all requisite corporate action on behalf of Buyer.

13. All notices hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, addressed, if to Buyer,

to:

| | |
|---|---|
| Walgreen Co. | Walgreen Co. |
| 200 Wilmot Road | 104 Wilmot Road |
| Mail Stop #2294 | Mail Stop #2194 |
| Deerfield, Illinois  60015 | Deerfield, Illinois  60015 |
| Attn.:  Director, Pharmacy Services | Attn.:  Law Dept. (MM) |

and if to Seller,

to:

| | |
|---|---|
| WINN-DIXIE STORES, INC. | WINN-DIXIE STORES, INC. |
| 5050 Edgewood Court | 5050 Edgewood Court |
| Jacksonville, FL 32254 | Jacksonville, FL 32254 |
| Attn:  Mike LeBlanc, Counsel<br>Business Development Manager, Pharmacy | Attn:  Office of General |

Provided, however, that each party by like notice may designate any further or different addresses to which subsequent notices shall be sent.

14. This Agreement shall bind and benefit the successors and assigns of the respective parties hereto.

15. The Bankruptcy Court shall have exclusive jurisdiction over all matters, including any legal action, suit or proceeding arising out of or relating to this Agreement, any related agreements, or the contemplated transactions and the interpretation, implementation and enforcement of this Agreement, and the parties hereto irrevocably submit and consent to such jurisdiction.  Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in paragraph 13 of this Agreement shall be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.  Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum.

16. In the event of litigation between the parties arising out of or relating to this Agreement, any related agreements, or the contemplated transactions and the interpretation, implementation and enforcement of this Agreement, the party prevailing in such litigation shall be entitled to recover from the non-prevailing party its reasonable attorneys' fees and court costs, including any fees and costs incurred during pre-suit investigation, mediation or other alternative dispute resolution process, or on appeal(s).

17. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, including all matters of construction, validity, performance and enforcement.

18. This Agreement constitutes the entire agreement between the parties and supersedes all prior offers, negotiations, and understandings, whether oral or written, between the parties hereto and may only be modified by a writing executed by both parties.

IN WITNESS WHEREOF, this Agreement has been executed and delivered as of the day and year first above written.

**SELLER:**

**WINN-DIXIE STORES, INC.**, a Florida corporation

By: _____
Name:  Tom Robbins
Title:  Senior Vice President

**BUYER:**

**WALGREEN CO.**, an Illinois corporation

By: _____
Name: _____
Title: _____

# EXHIBIT A

## PHARMACY LOCATIONS, RX COUNTS, INVENTORY ESTIMATES, AND CORRESPONDING BUYER LOCATIONS

| Store | ADDRESS | CITY | ZIP | ST | Closing Inventory 7-13-05 | RX Weekly Avg (6 weeks ending 7-13-05) |
|---|---|---|---|---|---|---|
| 147 | 602 BRANNEN STREET | STATESBORO | 30458 | GA | $136,051 | 710 |
| 170 | 7303 N W 4TH BLVD. | GAINESVILLE | 32607 | FL | $130,865 | 380 |
| 338 | 4301 HILLSBORO BLVD | COCONUT CREEK | 33073 | FL | $100,344 | 257 |
| 547 | 2244 HWY 31 SOUTH | PELHAM | 35124 | AL | $115,903 | 342 |
| 593 | 5711 ADAMSVILLE PKWY | ADAMSVILLE | 35005 | AL | $153,850 | 564 |
| 1264 | 1529 JOHN B WHITE SR BLVD | SPARTANBURG | 29301 | SC | $116,708 | 356 |
| 1936 | 8644 E. BRAINERD RD. | CHATTANOOGA | 37421 | TN | $139,578 | 338 |
| 2200 | 4008 WINTER GARDEN-VINELAND ROAD | WINTER GARDEN | 34787 | FL | $74,087 | 95 |
| 2312 | 1415 NOVA ROAD | DAYTONA | 32114 | FL | $101,164 | 306 |
| 2663 | 1270 WICKHAM RD 17 | MELBOURNE | 32935 | FL | $91,546 | 190 |
| 2721 | 9105 HICKORY FLAT HWY | WOODSTOCK | 30188 | GA | $112,147 | 384 |

**EXHIBIT B**

**REQUIRED FORMAT FOR RECORD DATA**

| **Patient Data Required:** |
| --- |
| Name |
| Address |
| City |
| State |
| Zip |
| Phone |
| DOB |
| Sex |
| Safety Caps |
| All Third Party Information |
| |
| **Doctor Data Required:** |
| Name |
| Address |
| City |
| State |
| Zip |
| Phone 1 |
| Phone 2 |
| DEA |
| State ID |
| Ancillary IDs |
| |
| **Prescription History** |
| Rx Number |
| Date Written |
| Date Dispensed |
| Drug Name (w/NDC number) |
| Drug Dispensed (w/NDC number) |
| Quantity Written |
| Quantity Dispensed |
| Refills Authorized |
| SIG Line |
| DAW |
| Cost |
| Price |
| Co-pay |
| RPH Initials |
| **All corresponding dispensing history for RXs** |

# EXHIBIT C
## OTC ITEMS TO BE INCLUDED IN SALE

| CIN | Item Description | NDC | Vendor Name |
|---|---|---|---|
| 1714872 | INS HUMULIN 70/30 10ML | 2871501 | LILLY ELI & CO |
| 2990174 | ONE TCH ULTRA 100 | 53885024510 | LIFESCAN INC |
| 1325398 | INS HUMULIN N 100U/ML 10ML | 2831501 | LILLY ELI & CO |
| 2778207 | ACCU-CHEK CCRV 100 | 50924038110 | ROCHE DIAGNOSTICS |
| 1171008 | INS NOVOLIN 70/30 10ML | 169183711 | NOVO NORDISK PHARMACEUTICAL INC |
| 3437829 | ACCU-CHEK COMPACT 102 | 50924088401 | ROCHE DIAGNOSTICS |
| 1391051 | INS NOVOLIN N 100U/ML 10ML | 169183411 | NOVO NORDISK PHARMACEUTICAL INC |
| 2487239 | BD UFII 31X5/16 100X0.5 328468 | 8290328468 | BECTON DICKINSON CONS |
| 1325240 | INS HUMULIN R 100U/ML 10ML | 2821501 | LILLY ELI & CO |
| 2990166 | ONE TCH ULTRA 50 | 53885024450 | LIFESCAN INC |
| 2245389 | ONE TCH BAS PROF II TEST 100 | 53885037410 | LIFESCAN INC |
| 2778199 | ACCU-CHEK CCRV 50 | 50924037350 | ROCHE DIAGNOSTICS |
| 3270238 | ACCU-CHEK COMPACT 51 | 50924098850 | ROCHE DIAGNOSTICS |
| 3235421 | ACCU-CHEK ACTIVE 50 | 50924047550 | ROCHE DIAGNOSTICS |
| 3383866 | FREESTYLE TEST STRIPS 100 | 99073012101 | THERASENSE |
| 2812451 | ASCENSIA ELITE 100 | 193394221 | BAYER DIAGNOSTICS |
| 1860956 | BD UF 30GX0.5N 0.5ML100 328466 | 8290328466 | BECTON DICKINSON CONS |
| 3398864 | MUCINEX 600MG 40 | 63824000840 | ADAMS LABORATORIES |
| 2355337 | ACCU-CHEK ADVNT 100 | 50924096610 | ROCHE DIAGNOSTICS |
| 1860949 | BD UF 30GX0.5IN 1ML 100 328411 | 8290328411 | BECTON DICKINSON CONS |
| 2772184 | ONE TCH SRST 100 | 53885005210 | LIFESCAN INC |
| 3270022 | ACCU-CHEK COMPACT KIT | 50924001901 | ROCHE DIAGNOSTICS |
| 3376118 | INS NOVOLIN 70/30 INNOLET 5X3 | 169231721 | NOVO NORDISK PHARMACEUTICAL INC |
| 2561066 | BD UFII 30GX5/16 100X1ML328418 | 8290328418 | BECTON DICKINSON CONS |
| 2721306 | INS NOVOLIN 70/30 5X3ML | 169347718 | NOVO NORDISK PHARMACEUTICAL INC |
| 1710631 | ASCENSIA ELITE 50 | 193391850 | BAYER DIAGNOSTICS |
| 2824514 | INS HUMULIN 70/30 5X3ML PFS | 2877059 | LILLY ELI & CO |
| 1231539 | INS NOVOLIN R 100U/ML 10ML | 169183311 | NOVO NORDISK PHARMACEUTICAL INC |
| 2487247 | BD UFII 31X5/16 100X0.3 328438 | 8290328438 | BECTON DICKINSON CONS |
| 2990182 | ONE TCH ULTRA SYS METR | 53885024701 | LIFESCAN INC |
| 2848208 | ASCENSIA AUTODISC 100 | 193362721 | BAYER DIAGNOSTICS |
| 1147099 | INS HUMULIN L 100U/ML 10ML | 2841501 | LILLY ELI & CO |
| 2710945 | ASCENSIA AUTODISC 5 | 193361050 | BAYER DIAGNOSTICS |
| 2399715 | SOFTCLIX 100 | 50924097110 | ROCHE DIAGNOSTICS |
| 3453677 | BD TEST STRIPS 50 322053 | 8290322053 | BECTON DICKINSON CONS |
| 2420289 | ONE TCH SRST 50 | 53885035950 | LIFESCAN INC |
| 2073112 | ACCU-CHEK ADVNT CARE KIT | 50924086001 | ROCHE DIAGNOSTICS |

| CIN | Item Description | NDC | Vendor Name |
|---|---|---|---|
| 2196061 | NOVOFINE 30 ND 30GX8MM 100 | 169185250 | NOVO NORDISK PHARMACEUTICAL INC |
| 2975647 | FREESTYLE TEST STRIPS 50 | 99073012050 | THERASENSE |
| 1561349 | ONE TCH BAS PROF II TEST 50 | 53885019850 | LIFESCAN INC |
| 3292034 | PRECISION XTRA 100 | 57599987705 | MEDISENSE INC |
| 3536844 | ASCENSIA MICROFILL 100TESTSTRP | 193709021 | BAYER DIAGNOSTICS |
| 3447117 | LORATADINE 10MG 100 | 781507701 | SANDOZ - CS (GENEVA) |
| 1152388 | BD MF 28GX0.5N0.5ML 100 328465 | 8290328465 | BECTON DICKINSON CON |
| 3459377 | MUCINEX 600MG 20 | 63824000820 | ADAMS LABORATORIES |
| 2325447 | PRECISION QID 100 | 57599740105 | MEDISENSE INC |
| 2073104 | ACCU-CHEK ADVNT 50 | 50924055350 | ROCHE DIAGNOSTICS |
| 1625615 | INS HUMULIN 50/50 10ML | 2951501 | LILLY ELI & CO |
| 1860964 | BD UF 30GX0.5N 0.3ML100 328431 | 8290328431 | BECTON DICKINSON CONS |
| 2760312 | BD UF3 PEN 31GX8MM 100 320109 | 8290320109 | BECTON DICKINSON CONS |
| 3376134 | INS NOVOLIN N INNOLET 5X3ML | 169231421 | NOVO NORDISK PHARMACEUTICAL INC |
| 2824522 | INS HUMULIN N 100U/ML 5X3MLPFS | 2873059 | LILLY ELI & CO |
| 2444065 | INS HUMULIN U 100U/ML 10ML | 2861501 | LILLY ELI & CO |
| 1152669 | BD MF 28GX0.5IN 1ML 100 328410 | 8290328410 | BECTON DICKINSON CONS |
| 2744480 | ONE TCH FASTTAKE 50 | 53885044450 | LIFESCAN INC |
| 2721280 | INS NOVOLIN N 100UML 5X3ML PEN | 169347418 | NOVO NORDISK PHARMACEUTICAL INC |
| 3007788 | ONE TCH ULTRASOFT 100 | 53885039310 | LIFESCAN INC |
| 3307337 | NOVOFINE 31 ND 31GX6MM 100 | 169185255 | NOVO NORDISK PHARMACEUTICAL INC |
| 1237551 | BD ALCOHOL SWAB 100 326895 REG | 8290326895 | BECTON DICKINSON CONS |
| 2539716 | MAG-OX 400 120 | 165002212 | BLAINE COMPANY |
| 2487213 | BD UF PEN 29GX0.5N 100 328203 | 8290328203 | BECTON DICKINSON CONS |
| 2325439 | PRECISION QID 50 | 57599740004 | MEDISENSE INC |
| 2772168 | ONE TCH FASTTAKE 100 | 53885004810 | LIFESCAN INC |
| 2254589 | VIVONEX PEDIATRIC 36X1.7OZ | 212713176 | NOVARTIS NUTRITION |
| 3126786 | FERREX 150 100UD | 51991020311 | BRECKENRIDGE PHARM INC – CS |
| 1370626 | MURO-128 5% 15ML OPTH | 24208027715 | BAUSCH & LOMB (BRAND) |
| 2533628 | SOFTCLIX 200 | 50924098820 | ROCHE DIAGNOSTICS |
| 3536810 | ASCENSIA MICROFILL 50 TESTSTRP | 193708050 | BAYER DIAGNOSTICS |
| 2245397 | ONE TCH BAS PROF II TEST 25 | 53885019725 | LIFESCAN INC |
| 3335395 | BD UF3 MINI PEN 31GX5MM 100 | 8290320119 | BECTON DICKINSON CONS |
| 1370600 | MURO-128 5% 3.5GM OPTH OINT | 24208038555 | BAUSCH & LOMB (BRAND) |
| 2420297 | ONE TCH SRST METER SYSTEM | 53885034101 | LIFESCAN INC |

**EXHIBIT D**

**SAMPLE BILL OF SALE**

**BILL OF SALE**

THE UNDERSIGNED, for and in consideration of _____ ($_____) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the Purchase and Sale Agreement entered into on the _____day of _____, 2005 (the "Agreement"), between **WINN-DIXIE STORES, INC.,** a Florida corporation (hereinafter referred to as the "Seller"), and _____, a corporation of the State of _____ (hereinafter referred to as the "Buyer"), Seller does hereby sell, transfer and convey unto Buyer the following personal assets and personal properties presently contained in Seller's Pharmacy located at: _____ _____ (hereinafter referred to as the "Pharmacy"):

    a.    The Records, as defined in the Agreement; and

    b.    The Pharmacy Products, as defined in the Agreement.

TO HAVE AND TO HOLD the said property described above unto Buyer, its successors and assigns, forever.

IN WITNESS WHEREOF, Seller has hereunto caused this Bill of Sale to be executed this _____day of _____, 2005.

By: _____

NAME: _____

TITLE: _____

# EXHIBIT E

# FORM OF PATIENT LETTER

**Pharmacy Name**
**Address**
**City, State, Zip**

Date

*Name*
*Address*
*City, State, Zip*

Dear Patient:

As you may be aware, our pharmacy will be closing soon or has closed. To provide you with the best continued service, we entrusted your pharmacy records to Walgreens, whose pharmacists and staff look forward to welcoming you and fulfilling your needs.

Although we had other choices, Walgreens seemed the best pharmacy to continue the tradition of care we have been proud to provide for many years. We also believe you'll benefit from the many unique services this nationwide company offers. Enclosed is a brochure describing Walgreens' pharmacy benefits, including the availability of your prescriptions at any Walgreens location, anytime – day or night. We will miss you, but believe you'll be pleased with the service, professionalism and convenience provided by this 103-year-old pharmacy company.

When you are ready to have your next prescription filled, please contact your Walgreens' pharmacist at the following location or at the Walgreens nearest you:

**Walgreens**
1234 Main Street

**Anytown, USA  12345**
**(xxx) xxx-xxxx**

Thank you so much for your loyal patronage throughout the years.

Sincerely,

Winn-Dixie Stores, Inc.