KELLEY DRYE & WARREN LLP                    Hearing Date: July 27, 2005 at 10:00 a.m.
101 Park Avenue
New York, New York  10178
James S. Carr ( JC-1603)
Robert L. LeHane ( RL-9422)
Tel:  (212) 808-7800
Fax: (212) 808-7897

   -and-

HELD & ISRAEL
1301 Riverplace Blvd., Ste. 1916
Jacksonville, FL  32207-9024
Edwin W. Held (0162574)
Tel: (904) 398-7036
Fax:  (904) 398-4283

Attorneys for Developers
Diversified Realty Corporation

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

_____
In re:                                                              )          Case No.  05-03817-3F1
                                                                       )
WINN-DIXIE STORES, INC., et al.,               )          Chapter 11
                                                                       )
Debtors.                                                          )          Jointly Administered
                                                                       )
_____)

**LIMITED OBJECTION OF DEVELOPERS DIVERSIFIED
REALTY CORPORATION TO ASSIGNMENT OF LEASE FOR
STORE 739, NAPLES, FL TO WAL-MART STORES, INC.**

       1.       Developers Diversified Realty Corporation, co-managing agent for

Macquarie DDR Trust (the "Landlord"), by and through its attorneys, Kelley Drye & Warren LLP

and Held & Israel, hereby submits this Limited Objection (the "Limited Objection") to the Motion

(the "Motion"), dated July 1, 2005, of Winn-Dixie Stores, Inc. *et al.* (the "Debtors" or "Winn-

Dixie") for authorization to, among other things, assume and assign leases, and the Amended Notice

of Filing and Hearing, dated July 19, 2005 (the "Notice") providing notice of the Debtors' intent to

1

enter into an asset purchase agreement with, and to assume and assign the Debtors' lease of Winn-Dixie Store No. 739 (the "Lease") [1] located at Carillon Plaza, 5010 Airport North Road in Naples, Florida (the "Leased Premises") to Wal-Mart Stores, Inc. ("Wal-Mart"). In support of the Limited Objection, the Landlord respectfully states as follows:

## PRELIMINARY STATEMENT

2. The Landlord does not object to Wal-Mart as a replacement tenant for Winn Dixie. However, unless the Order approving the assignment provides otherwise, the assignment of the Lease will expose the Landlord to significant damages under a provision in another shopping center tenant's lease. In addition, Wal-Mart has requested an eighteen (18) month build-out period, notwithstanding the terms of the Lease, which would expose the Landlord to the possible termination of another lease in the shopping center. Finally, under the circumstances, there is no basis to grant the Debtors request for a waiver of the crucial ten-day period provided in Bankruptcy Rules 6004(g) and 6006(d) to seek a stay of the order authorizing the assignment of the Lease pending the outcome of an appeal.

3. As a result, the Landlord requests that in connection with the assignment of the Lease to Wal-Mart that the Court (i) either require Wal-Mart and/or the Debtors to indemnify the Landlord for any reduced rental income resulting from the assignment of the Lease to Wal-Mart or otherwise protect the Landlord from reduced rent or lease terminations resulting from the assignment of the Lease to Wal-Mart; (ii) limit the time for Wal-Mart to perform its construction of a prototypical Wal-Mart neighborhood grocery store at the Leased Premises to six (6) months as required by the Lease; and (iii) deny the Debtors request for a waiver of the ten day stay.

---

[1] A copy of the Lease is available upon written request and will be produced at an evidentiary hearing, if such a hearing is necessary.

## BACKGROUND

4.      The Leased Premises is located at a "shopping center" as that term is used in section 365 of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have remained in possession of their assets and have continued in the management of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      On July 1, 2005, the Debtors filed the Motion, requesting, among other things, authorization to assume and assign the Lease to the highest or best bidder.

7.      At an auction on July 18, 2005, Wal-Mart was the successful bidder for the Lease. As a result of its successful bid, by the Motion and the Notice, the Debtors now ask the Court to approve the Asset Purchase Agreement (the "Purchase Agreement"), effective July 20, 2005, for the sale of assets located at and related to the Leased Premises and the assignment of the Lease to Wal-Mart.

## THE THIRD PARTY LEASE

8.      Among others, the Landlord is party to a lease with another tenant (the "Third Party Tenant") in the same shopping center pursuant to a written lease (the "Third Party Lease") between the Landlord's predecessor and the Third Party.[2]

9.      The Third Party Lease provides that as a condition of the Third Party Tenant's obligation to pay full rent, Winn-Dixie must occupy the Leased Premises at the commencement of the Third Party Lease, and continue to occupy the Leased Premises during the

---

[2]    A copy of the Third Party Lease is available for review upon execution of a confidentiality agreement by the requesting party, and will be produced, under seal, at an evidentiary hearing, if such hearing is necessary.

3

entire term of the Third Party Lease. Specifically, Section 7.2 of the Third Party Lease, as amended, provides that if Winn-Dixie ceases to operate at the Leased Premises during the term of the Third Party Lease, the Third Party Tenant may reduce its rent to the lesser of (i) Minimum Rent as defined in the Third Party Lease, or (ii) a percentage of the Third Party Tenant's gross sales during the preceding month at a percentage rate specified in the Third Party Lease:

> Section 7.2 - Cotenancy.
>
> (a)   As used herein, the term "Opening cotenancy" shall mean that Winn-Dixie shall be operating on the commencement Date in at least 50,000 square feet, Service Merchandise shall be operating in at least 45,000 square feet and at least two (2) of the following retailers shall be operating in at least the amount of square footage specified herein: Circuit City - 21,000; OfficeMax - 22,000; and T.J. Maxx - 25,000. As used herein, the term "Ongoing Cotenancy" shall mean that (i) Winn-Dixie and (ii) either Service Merchandise or at least two (2) of the other cotenants named in this paragraph shall be open and conducting retail business within the Shopping Center. Anytime when either of these requirements is not met is hereinafter referred to as a "Reduced Occupancy Period."
>
> (b)   If the Opening Cotenancy is not met, Tenant may pay only fifty percent (50%) of the Minimum Rent in lieu of the full amount until the Reduced Occupancy Period ends. If a Reduced Occupancy Period occurs at any time following commencement of the Term, Tenant's total obligation for Minimum Rent and Percentage Rent shall be to pay within fifteen (15) days after the close of each calendar month the lesser of (i) Minimum Rent as provided in Section 7.1 hereof, or (ii) a percentage of Tenant's Gross Sales during the preceding month at the percentage rate specified in Section 8.1(a). Any rent paid pursuant to clause (ii) of the preceding sentence shall be classified as "Minimum Rent" for purposes of computing the sum of Percentage Rent due in any given Lease Year under the provisions of Section 8.1. In addition, if the Reduced Occupancy Period continues for a period of nine (9) months, Tenant may, at its option, terminate this Lease upon thirty (30) days' notice to Landlord.
>
> (c)   Unless and until this Lease is terminated, nothing contained in this Section 7.2 shall affect Tenant's other monetary obligations under this lease, including those set forth in Articles 10, 11 and 18 of this Lease.

**OBJECTION**

10.     Under section 365(f)(2) of the Bankruptcy Code, the Debtors may assign the Lease only if the Debtors assume the Lease pursuant to the requirements of the Bankruptcy Code and the Landlord is provided with adequate assurance of future performance by Wal-Mart, whether or not there has been a default under the Lease.[3]  Shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of obtaining adequate assurance of future performance from any proposed assignee of a real property lease.  *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990); *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002).  In connection with a shopping center lease, adequate assurance of future performance includes adequate assurance –

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption will not disrupt any tenant mix or balance in such shopping center.

---

[3]  Section 365(f)(2), of the Bankruptcy Code provides, in pertinent part, that:

> (2)     The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> \*     \*     \*
>
> (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

11 U.S.C. § 365(b)(3). The Debtors bear the burden of demonstrating adequate assurance of future performance. *In re Rachel Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

I.  **WAL-MART AND/OR THE DEBTORS MUST INDEMNIFY THE LANDLORD FOR ANY DAMAGES CAUSED BY THE ASSIGNMENT**

   A.  **The Assignment of the Lease Must Not Breach Any Provision of Any Other Leases in the Shopping Center**

   11. Section 365(b)(3)(C) of the Bankruptcy Code is clear on its face that an assignment of a lease in a shopping center cannot breach any other provision contained in any other lease relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C). *See also In re Helig Meyers Company,* 294 B.R. 660, 663 (Bankr. E.D. Va. 2001) (objection to assignment sustained because assignment conflicted with exclusivity provision in another shopping center lease); *In re Troutman Investment Company d/b/a Troutman's Emporium*, Case No. 02-69650 (Bankr. D. OR, August 14, 2003) (Unpublished Opinion) (assignment of debtor's lease to an electronics retailer was not permitted because the proposed use would violate the use clause and an exclusivity provision in an existing tenant's lease, despite fact that existing tenant's lease was executed subsequent to the lease being assigned).

   12. As set forth above, upon the assignment of the Lease to Wal-Mart, the Third Party Tenant may, at its option, declare a breach of the Third Party Lease and invoke Section 7.2, and reducing its rent accordingly. In the event that the Third Party Tenant invokes Section 7.2 of the Third Party Lease and reduces its rental obligation to the Landlord, the Landlord will suffer significant monetary damages and if the Third Party, after nine months, terminate the Third Party Lease.

   13. As such, absent agreement by Wal-Mart and/or the Debtors to indemnify the Landlord for any loss of rental income resulting from the assignment of the Lease to Wal-Mart, the

Debtors and Wal-Mart cannot demonstrate adequate assurance of future performance under section 365(b)(3)(C) of the Bankruptcy Code. In order to provide adequate assurance of future performance, the Debtors and/or Wal-Mart must agree to indemnify the Landlord to the extent that the Third Party Lease is breached and the Third party's rental obligation is reduced as a result of the assignment of the Lease to Wal-Mart. Alternatively, the Order approving the assignment of the Lease to Wal-Mart must provide that the use and occupancy of the Leased Premises by Wal-Mart other than as a "Winn Dixie" store, and as a Wal-Mart neighborhood grocery store in a manner typically operated by Wal-Mart will not constitute a breach or default, or grounds to reduce rent or terminate the Third Party Lease, or any other agreement relating or referring to the Lease to which the Debtors or the Landlord are a party.

**B.  The Debtors Must Compensate the
     Landlord for any Pecuniary Loss**

14.   In addition, pursuant to section 365(b)(1) of the Bankruptcy Code, in connection with the assignment of the Lease, the Debtors are required to cure all outstanding defaults under the Lease. In conjunction with this duty, the Debtors must agree to compensate the Landlord for any actual pecuniary loss, including any loss incurred as a result of the rental decrease to which the Third Party Tenant will be entitled as a result of the assignment to Wal-Mart. *See* 11 U.S.C. § 365(b)(1)(B). Accordingly, the Landlord requests that, in connection with the Debtors' obligation to cure all monetary defaults and compensate for any pecuniary losses resulting from such default that Wal-Mart and/or the Debtors be required to indemnify the Landlord for any pecuniary loss incurred as a result of the assignment of the Lease to Wal-Mart, including any reduced rental income from the Third Party Lease.

**C.  The Landlord is Entitled to Adequate Protection
     Under Section 363(e) of the Bankruptcy Code**

15.   Section 363(e) of the Bankruptcy Code requires that, on the request of an

7

entity with an interest in property being sold, with or without a hearing, the sale of such property must be conditioned so as to provide the party with an interest in the property adequate protection of such interest.[4]  "A landlord's right to adequate protection seems to follow clearly from the language of §363(e) of the Bankruptcy Code . ."  *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001).   Here, the Landlord has an interest in the Lease, an asset being sold by the Debtors.  Thus, the Landlord requests that any Order approving the sale of the Lease to Wal-Mart adequately protect the Landlord from any adverse economic impact that the assignment of the Lease will have on the Landlord's leases with other tenants such as the Third Party Tenant.  Specifically, as set forth above, the Landlord requests that the Order approving the assignment of the lease to Wal-Mart provide that that the use and occupancy of the Leased Premises by Wal-Mart other than as a "Winn Dixie" store, and as a Wal-Mart neighborhood grocery store in a manner typically operated by Wal-Mart will not constitute a breach or default, or grounds to reduce rent or terminate the Third Party Lease, or any other agreement relating or referring to the Lease to which the Debtors or the Landlord are a party.

## II.   THE ASSIGNMENT OF THE LEASE TO WAL-MART MUST BE SUBJECT TO ALL THE TERMS OF THE LEASE, INCLUDING THE CONTINUOUS OPERATING COVENANT

16.   Neither the Debtors nor Wal-Mart have agreed to comply with the operating covenant in the Lease which provides that if Winn-Dixie is not operating in the Leased Premises for longer than six months, the Landlord may terminate the Lease.  The Debtors and Wal-Mart have

---

[4]   Section 363(e) of the Bankruptcy Code provides in relevant part:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

instead requested, pursuant to the Purchase Agreement and the proposed Order filed by the Debtors, that following the assignment of the Lease, Wal-Mart be allowed up to eighteen (18) months to alter and perform construction at the Leased Premises prior to commencing its operations there. Wal-Mart must take the Lease subject to all the provisions thereof. Six months is more than adequate time for a retailer of Wal-Mart's economic stature to perform any necessary alterations at the Leased Premises. Although paragraph 26 of the Lease allows Winn-Dixie to assign the Lease, the Lease also provides that if Winn-Dixie voluntarily vacates and ceases to do business at the Leased Premises for a period of longer than six (6) months, the Landlord may terminate or cancel the Lease on fifteen (15) days notice:

> In the event Tenant shall voluntarily vacate the entire demised premises or cease selling merchandise therein for in excess of a period of six (6) months while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant, Landlord shall have the continuing option thereafter (Unless Tenant shall have reoccupied the premises and recommenced selling merchandise) to terminate and cancel this lease upon fifteen (15) days' written notice to Tenant of its election so to do, unless within such fifteen (15) day period Tenant shall advise Landlord that Tenant had prior to receipt of such notice in good faith committed to assign this lease or sublease the demised premises to a third party, for occupancy within two (2) months.

17.     The assignment of the Lease to Wal-Mart must remain subject to this provision, which gives the Landlord a termination right in the event that Winn-Dixie ceases doing business at the Leased Premises for more than six months.

18.     In addition, under Section 7.2 of the Third Party Lease, if Winn-Dixie ceases to operate at the Leased Premises for a period of nine (9) months, the Third Party Tenant may terminate the Third Party Lease upon thirty (30) days written notice to the Landlord. (See ¶7.2 First Amendment, p.4, supra.)

19.     Thus, unless the Order approving the assignment provides otherwise,

allowing Wal-Mart to perform construction at the Leased Premises for a period of eighteen (18) would provide the Third Party Tenant with the right to terminate the Third Party Lease, causing the Landlord significant damage.  Section 365(b)(3)(C) of the Bankruptcy Code requires that the assignment of the Lease be subject to all provisions in the Lease and not breach any provisions in other leases relating to the shopping center.  Thus, the assignment of the Lease to Wal-Mart must be subject to all the terms of the Lease and Wal-Mart's build-out time at the Leased Premises should be limited to six (6) months and subject to the terms of the Lease.

### III.   THE WAIVER OF THE 10-DAY STAY PROVIDED BY BANKRUPTCY RULES 6004(g) AND 6006(d) IS PREJUDICIAL TO THE LANDLORD

20. Pursuant to the Motion at ¶ 42, pg. 17, the Debtors request a waiver of the 10-day stay under Bankruptcy Rules 6004(g) and 6006(d).[5]  A waiver of the 10-day stay provided by Bankruptcy Rules 6004(g) and 6006(d) should only be granted when a debtor has made an "evidentiary showing of a business exigency requiring a closing within 10 days." *See In re PSINet, Inc.*, 268 B. R. 358, 379 (Bankr. S.D.N.Y. 2001) (cause for a waiver of rules 6004(g) and 6006(d) is not established by a generalized assertion that "an expedited closing" is required).

21. As the advisory committee's notes reflect, a stay pending appeal is crucial to preserve the Landlord's right to contest an order authorizing the assignment of the Lease.  Without the protections of Bankruptcy Rules 6004(g) and 6006(d), the Landlord's due process right to

---

[5] Bankruptcy Rule 6004(g) provides:

> An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise.

Fed. R. Bankr. Pro.6004(g).

Bankruptcy Rule 6006(d) provides:

> An order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise.

Fed. R. Bankr. Pro.6006(d).

appeal an order approving the assignment of the Lease would be terminated upon consummation of the sale and assignment. *See* Fed. R. Bankr. P. 6004 and 6006 advisory committee's note. Any appeal, even if leave to appeal were granted, would be rendered moot by the valid assignment of the Lease. *See In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3rd Cir. 2000) (if a stay of a sale of a lease is not obtained, any appeal becomes moot). To address this issue, Bankruptcy Rule 6006(d) provides sufficient time for a party to request a stay pending appeal of an order authorizing the assignment of a lease under section 365(f) of the Bankruptcy Code before the assignment is consummated. *See* Fed. R. Bankr. P. 6006 advisory committee's note. Similarly, Bankruptcy Rule 6004(g) provides sufficient time for a party to request a stay pending appeal of an order authorizing the use, sale or lease of property under section 363(b) of the Bankruptcy Code before the order is implemented. *See* Fed. R. Bankr. P. 6004 advisory committee's note.

22.     Considering the consequences of failing to obtain a stay, it would be extremely prejudicial and inequitable to deprive the Landlord of the crucial ten-day period provided in Bankruptcy Rules 6004(g) and 6006(d) to seek a stay of the order authorizing the assignment of the Lease pending the outcome of an appeal. The Debtors and Wal-Mart, on the other hand, will not suffer prejudice by imposition of the 10 day-stay because Wal-Mart is not purchasing the inventory at the Leased Premises and there is no reason for the assignment of the lease to be effective immediately. Rather, the Debtors' agents will be conducting a store closing sale at the Leased Premises which will conclude sometime between September 15, 2005 and September 30, 2005. The earliest that the Lease will be assigned to Wal-Mart is mid-September.

23.     Thus, the Debtors have not made any evidentiary showing or provided any competent factual or legal justification for the requested waiver with respect to the assignment of the Lease and the Court should not grant a waiver of the stay.

**WHEREFORE**, the Landlord requests that the Court (i) enter an Order requiring Wal-Mart and/or the Debtors to indemnify the Landlord for any pecuniary loss or reduced rental income resulting from the assignment of the Lease to Wal-Mart; (ii) require Wal-Mart to limit the time for Wal-Mart's construction at the Leased Premises to six (6) months and commence operations at the Leased Premises within six (6) months from the effective date of the assignment; (iii) determine that the use and occupancy of the Leased Premises by Wal-Mart other than as a "Winn Dixie" store, and as a Wal-Mart neighborhood grocery store in a manner typically operated by Wal-Mart will not constitute a breach or default, or grounds to reduce rent or terminate the Third Party Lease, or any other agreement relating or referring to the Lease to which the Debtors or the Landlord are a party; (iv) deny the Debtors' request for a waiver of the 10-day stay provided by Bankruptcy Rules 6004(g) and 6006(d), and (v) grant such other and further relief as the Court deems just and proper.

Dated: July 25, 2005

        KELLEY DRYE & WARREN LLP
        By: */s/ Robert L. LeHane*
            James S. Carr (JC-1603)
            Robert L. LeHane (RL-9422)
        101 Park Avenue
        New York, NY 10178
        Tel: (212) 808-7800
        Fax: (212) 808-7897

        -and-

        HELD & ISRAEL
        1301 Riverplace Blvd., Ste. 1916
        Jacksonville, FL 32207-9024
        Edwin W. Held (0162574)
        Tel: (904) 398-7036
        Fax: (904) 398-4283

        ATTORNEYS FOR DEVELOPERS DIVERSIFIED
        REALTY CORPORATION