UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) ) ) | |
| WINN-DIXIE STORES, INC., *et al.*, | ) ) | CASE NO. 05-03817-3F1 |
| Debtors. | ) ) ) ) | CHAPTER 11 JOINTLY ADMINISTERED |

**OBJECTION OF NEW PLAN EXCEL REALTY TRUST, INC. TO DEBTORS' MOTION FOR ORDER (A) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND EXEMPT FROM TAXES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF LEASES AND CONTRACTS AND (C) GRANTING RELATED RELIEF (BI-LO)**

TO THE HONORABLE, JERRY A. FUNK
UNITED STATES BANKRUPTCY JUDGE:

NEW PLAN EXCEL REALTY TRUST, INC. ("New Plan"), by its undersigned attorneys, makes this Objection to Debtors' Motion for Order (A) Authorizing the Sale of Assets Free and Clear of Liens, Claims and Interests and Exempt from Taxes, (B) Authorizing the Assumption and Assignment of Leases and Contracts and (C) Granting Related Relief (the "Motion") and in support thereof avers:

1. New Plan is the owner or agent for the owners of the shopping centers identified below at which Debtors operate grocery stores pursuant to leases (each a "Lease" and together the "Leases") that are subject to the Motion.

| Store # | Shopping Center | Location |
|---|---|---|
| 1906 | Cloverdale Village | Florence, AL |
| 1938 | St. Elmo Central | Chattanooga, TN |

2. All of New Plan's premises are located in shopping centers, as that term is used in 11 U.S.C. § 365(b)(3). *See, In Re: Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

DMEAST #8286556 v1

**General Objections to Sale**

3. Debtors propose to sell certain assets, including the Leases, to BI-LO, LLC ("BI-LO") and Southern Family Markets Acquisition LLC ("SFM") or their permitted assignees (together the "Assignee" or "Assignees")

4. New Plan objects to the proposed asset sale, and the assumption and assignment of its Leases to the Assignees, unless Debtors and/or the Assignees comply with all of the requirements of Sections 365(b) and (f) of the Bankruptcy Code. Absent the ability, or willingness, of the Assignees and Debtors to satisfy said requirements Debtors' Motion must be denied. New Plan reserves the right to renew and supplement this objection in the event that a proposed assignee other than the Assignees is identified.

5. Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code Debtors may only assign the Leases if "adequate assurance of future performance by the assignee of such . . . lease is provided, . . . ." As set forth in Section 365(b)(3), adequate assurance of future performance in the shopping center context includes, inter alia, adequate assurance:

> "(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> * * *
>
> (C) that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, . . . relating to the shopping center;...."

6.  The burden of proof on adequate assurance issues is with the Debtors. *See, In re Lafayette Radio Electronics Corp.* 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

### Financial Condition and Operating Performance

7.  New Plan has only been supplied with certain adequate assurance information regarding the financial condition and operating history of BI-LO Group ("BLG"), on a consolidated basis. BI-LO is apparently a wholly owned subsidiary of BLG. SFM appears to be a newly formed entity without any operating history. BLG is <u>not</u> the proposed assignee of either of New Plan's Leases. Each of New Plan's Leases are guaranteed by the tenant's parent, Winn-Dixie Stores, Inc. No guaranty of the Leases has been proposed for this transaction.

8.  Accordingly, unless at the very least BLG is willing to guaranty the New Plan Leases, Assignees have failed to demonstrate adequate assurance of future performance. Indeed, with regard to SFM, the Declaration of Mark Gross simply states that SFM will meet its rental obligations from store operations and presents a one-page *pro forma*.

### Cure Amounts

9.  New Plan previously filed its cure objection (the "Cure Objection", see docket # 2146, filed July 14, 2005) setting forth its monetary claims for rentals due. New Plan incorporates the allegations of the Cure Objection herein as fully as though same were set forth at length hereat.

### Demand for Security Deposit

10. Pursuant to Section 365(l) of the Bankruptcy Code, New Plan demands that, in addition to any showing of the ability of the Assignees to provide adequate assurance of future performance, the Assignees post Letters of Credit, or, in New Plan's sole discretion, a security deposit, in an amount equal to six (6) months rent and additional rent under each Lease as security for the performance of the Tenant's obligations under the Leases.

**Liability for Year-End Adjustments**

11. As set forth in the Cure Objection, the tenants under New Plan's Leases are responsible for certain year-end adjustments to items such as common area maintenance ("CAM"), taxes and other items that are paid during the course of the year on an estimated basis. Generally the year-end adjustment, or true-up, of these categories does not take place until several months after the close of the landlord's fiscal year. Accordingly, 2005 year-end adjustments have not as yet been billed and are not even known to the New Plan. Since § 365 only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet even been billed, unpaid year-end adjustments are not a part of the cure obligation of the Debtors. The obligation to pay the year-end adjustments is, however, certainly a part of the obligation of the Debtors and the Assignee to provide adequate assurance of future performance.

12. The proposed Sale Order provides that:

> All defaults, claims or other obligations of the Debtors arising or accruing under each of the Leases, if any, prior to assumption or that could have been raised prior to assumption (without giving effect to any acceleration clauses or any default provisions of the kind specified in the 11 U.S.C. § 365(b)(2) will be cured or deemed cured by the Debtors in accordance with the Purchase Agreement, by paying the Cure Amounts.

13. The aforesaid language, and similar provisions contained in the Sale Order, would have the effect of relieving both the Debtors and the Assignees of any liability for the year-end adjustments accruing prior to the effective date of the transfer of the Leases. This provision goes much further then simply stating that the Cure Amounts will cure all defaults, which is what § 365 contemplates. The quoted language also relieves the Debtors of accruing claims or other obligations, for which there is absolutely no authority. Accordingly, the quoted language, and similar language contained in the Sale Order, must be modified to assure that New

Plan is paid all year-end adjustments when due and thus receives the full benefit of its bargain under the Leases.

14.     New Plan requests that the language of the Sale Order be amended to provide that the Assignees shall be responsible for all year-end adjustments, whether accruing prior to or after the effective date of the assignment of the Leases, when such charges become due in accordance with the terms of the Leases.  The Order should further provide, if the parties have not already done so, that it is the obligation of the Debtors and the Assignees to prorate these charges on an estimated basis as otherwise provided in Section 3.3.4 of the Purchase Agreement.  New Plan is willing to provide Debtors and the Assignees with the actual year-end adjustments for each of the prior three years upon which such prorations may, in those parties' discretion, be based.

15.     Alternatively, New Plan would request that the Order be clarified to require that the Assignees shall be responsible for all such costs accruing on and after the effective date of the assignment of the leases and that the Debtors shall place in a separate escrow account for the benefit of New Plan only (which account may accrue interest for the benefit of Debtors only) an amount equal to 125% of Debtors' proportionate share of the year-end adjustments attributable to fiscal year 2005) based upon the average annual adjustments for the prior three years).  Such escrow is necessary in order to assure that New Plan will receive from the Debtors the adjustment amounts when said amounts are billed in 2006.

**Objections to Proposed Order**

16.     New Plan objects to the following provisions of the proposed Sale Order:

(a)     The second sentence of recital "Q" needs to be modified for the reasons set forth above, since there may be amounts owing and due under the Leases.

(b) The final sentence of recital "T" should be modified to provide that the Purchaser is responsible for all year-end adjustments as more particularly set forth in paragraph 14 above.

(c) The reference to overruling any objection to any proposed Cure Amounts in the second decretal paragraph should be eliminated unless all Cure Amounts have been resolved as of the date of the sale hearing and not reserved for a further hearing.

(d) The description of the Leases may not include all relevant documentation. Accordingly, decretal paragraph 6 should be modified.

(e) Decretal paragraph 9 allows for various documentation to be modified, amended or supplemented by Debtors and the Assignees without further Order of Court provided that the Debtors first obtain the prior written consent of the DIP lender and the Creditors Committee, and that the modification, amendment or supplement does not have a material adverse effect on Debtors' estates. Such language should be modified to also provide that the modifications may not alter the provisions of any of the Leases or the related documents nor diminish any of New Plan's rights or obligations under said agreement.

(f) Decretal paragraph 10 must be modified to provide that the Permitted Encumbrances include all lease restrictions and the provisions of any reciprocal easement agreements, operating agreements or similar agreements which affect the Leases.

(g) Decretal paragraph 11 should be modified as previously noted with regard to obligations for year-end adjustments. Decretal paragraphs 15 and 17 should be similarly modified.

(h) Decretal paragraph 24 should be modified to provide that the Purchaser is responsible for all year-end adjustments, as noted above.

    (i)  Decretal paragraph 31 must be modified unless the parties have agreed to a listing of all relevant documents.

    (j)  Decretal paragraph 34 should be eliminated, as set forth below, unless the parties have consentually agreed to both the transaction and the form of proposed order.

## Assumption and Amendment Agreement

  17.  New Plan requests that, as a condition to any order approving assumption and assignment of the Leases, Assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the Assignee shall become directly obligated to New Plan, or the particular landlord entity, and the provisions of the lease regarding notice addresses will be modified. It is essential under the laws of certain states that such an agreement be executed in order to establish privity of contract between the landlord and the assignee. A form of agreement is attached hereto as Exhibit "A".

## Waiver of Rules 6004(g) and 6006(d) Stays

  18.  Debtors request that this Court waive the stay period provided by Bankruptcy Rules 6004(g) and 6006(d) with regard to the sale and assignment of any lease. It is unfair to request, at this time, that the Court waive stay periods which were specifically added to the Rules in order to avoid the prejudice to third parties to sales where a closing took place before an appeal and request for stay could be filed and heard. No waiver of the aforesaid rules should be granted at this time. Rather, the Court must decide on a case by case basis, based upon specific objections and the likelihood of appeal, whether or not to grant the requested stay.

### Reservation of Rights

19.     New Plan reserves the right to make such other and further objections as may be appropriate as additional information and revised orders and/or agreements are submitted.

### Joinder in Other Objections

20.     New Plan hereby joins in the objections filed by Debtors' other landlords, to the extent not inconsistent herewith.

**WHEREFORE,** New Plan prays that Debtors' motion be denied absent the provision of adequate assurance of future performance, the provision of an appropriate security deposit, provision for the payment of all year-end adjustments, provision of an assumption and amendment agreement and amendment of the proposed Sale Order, all as more particularly set forth above; and

**WHEREFORE**, New Plan prays that in the event the proposed assumption and assignment of the Leases is approved that same shall be conditioned upon the provision of guarantees and security deposits as part of the Assignees' adequate assurance of future performance, provision for the payment of all year-end adjustments, provision of an assumption and amendment agreement and amendment of the proposed Sale Order, all as more particularly set forth above; and,

**WHEREFORE,** New Plan prays for such other and further relief as may be just and required under all of the circumstances.

July 26, 2005

        **BALLARD SPAHR ANDREWS & INGERSOLL, LLP**

        **BY:   /s/ David L. Pollack**
        **DAVID L. POLLACK**
        **JEFFREY MEYERS**
        **DEAN WALDT**
        **Attorneys for New Plan Excel Realty Trust, Inc.,**
        **51st Floor - Mellon Bank Center**
        **1735 Market Street**
        **Philadelphia, Pennsylvania  19103**
        **(215) 864-8325**

LOCAL COUNSEL:

Alan M. Weiss, Esquire
Holland & Knight LLP
15 North Laura Street
Suite 3900
Jacksonville, FL 32202
(904) 798-5459 [telephone]
(904) 358-1872 [facsimile]
Alan.Weiss@HKLaw.com

## CERTIFICATE OF SERVICE

I certify that service of the foregoing was made on July 26, 2005 via ECF Noticing and telecopier upon the parties listed below.

          /s/ David L. Pollack

| | |
|---|---|
| D.J. Baker<br>Sally McDonald Henry<br>Rosalie W. Gray<br>Eric M. Davis<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY  10036<br>djbaker@skadden.com<br>Fax: 212-735-2000 | Stephen D. Busey<br>James H. Post<br>Cynthia C. Jackson<br>Eric N. McKay<br>Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, FL  32202<br>cjackson@smithhulsey.com<br>Fax: 904-359-7708 |
| Elena L. Escamilla<br>U.S. Trustee<br>135 W. Central Boulevard<br>Room 620<br>Orlando, FL  32801<br>Elena.L.Escamilla@usdoj.gov<br>Fax: 407-648-6323 | Dennis F. Dunne<br>Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY  10005<br>Attorneys for OCUC<br>ddunne@milbank.com<br>Fax: 212-530-5219 |
| John B. Macdonald, Esquire<br>Akerman Senterfitt<br>50 North Laura Street<br>Suite 2500<br>Jacksonville, FL  32202<br>johnmacdonald@akerman.com<br>Fax: 904-798-3730 | Winn-Dixie Stores, Inc.<br>Attn: Laurence B. Appel<br>5050 Edgewood Court<br>Jacksonville, FL  32801<br>larryappel@winn-dixie.com<br>Fax: 904-783-5059 |