**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| **In re** | ) | |
| | ) | |
| **WINN-DIXIE STORES, INC.,** *et al.*, | ) | **CASE NO. 05-03817-3F1** |
| | ) | |
| **Debtors.** | ) | **CHAPTER 11** |
| | ) | **JOINTLY ADMINISTERED** |
| | ) | |

**OBJECTION OF NEW PLAN EXCEL REALTY TRUST, INC. TO DEBTORS'
MOTION FOR ORDER (A) AUTHORIZING THE SALE OF ASSETS FREE
AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND EXEMPT FROM
TAXES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF LEASES
AND CONTRACTS AND (C) GRANTING RELATED RELIEF (SUPERVALU)**

TO THE HONORABLE, JERRY A. FUNK
UNITED STATES BANKRUPTCY JUDGE:

NEW PLAN EXCEL REALTY TRUST, INC. ("New Plan"), by its undersigned

attorneys, makes this Objection to Debtors' Motion for Order (A) Authorizing the Sale of Assets

Free and Clear of Liens, Claims and Interests and Exempt from Taxes, (B) Authorizing the

Assumption and Assignment of Leases and Contracts and (C) Granting Related Relief (the

"Motion") and in support thereof avers:

      1.     New Plan is the owner or agent for the owners of the shopping centers

identified below at which Debtors operate grocery stores pursuant to leases (each a "Lease" and

together the "Leases") that are subject to the Motion.[1]

---

[1] The Motion originally also applied to Store #2737, Midway Village, Douglasville, GA. That location was eliminated by the amendment to the Purchase Agreement. In the event that Debtors intend to move forward with the assumption and assignment of that lease, this Objection should also be deemed to apply thereto.

| Store # | Shopping Center | Location |
|---------|-----------------|----------|
| 2717 | Sweetwater Village | Austell, GA |
| 2736 | Creekwood Shopping Center | Rex, GA |

2.      All of New Plan's premises are located in shopping centers, as that term is used in 11 U.S.C. § 365(b)(3).  *See, In Re: Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

## General Objections to Sale

3.      Debtors propose to sell certain assets, including the Leases, to All American Quality Foods, Inc. ("AAQF" or "Assignee")

4.      New Plan objects to the proposed asset sale, and the assumption and assignment of its Leases to AAQF, unless Debtors and/or AAQF comply with all of the requirements of Sections 365(b) and (f) of the Bankruptcy Code.  Absent the ability, or willingness, of AAQF and Debtors to satisfy said requirements Debtors' Motion must be denied. New Plan reserves the right to renew and supplement this objection in the event that a proposed assignee other than AAQF is identified.

5.      Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code Debtors may only assign the Leases if "adequate assurance of future performance by the assignee of such . . . lease is provided,. . . ."  As set forth in Section 365(b)(3), adequate assurance of future performance in the shopping center context includes, inter alia, adequate assurance:

> "(A)    of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> * * *
>
> (C)    that assumption and assignment of such lease is subject to

> all the provisions thereof, including (but not limited to) provisions
> such as radius, location, use or exclusivity provision, and will not
> breach any such provision contained in any other lease, . . . relating
> to the shopping center;…."

6.      The burden of proof on adequate assurance issues is with the Debtors.

*See, In re Lafayette Radio Electronics Corp.* 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

## Financial Condition and Operating Performance

7.      New Plan has received the form bidder declaration of Gerald Taylor, President of AAQF.  That declaration consists of form information to which is attached a one page, unaudited, uncertified balance sheet comparing AAQF's assets and liabilities as of the end of May 2004 and 2005, together with an income and expense statement for the period ending May 29, 2005, as well as year-to-date.  Even this very limited financial information is of questionable value since it does not account for the proposed acquisitions by AAQF of several of Debtors' locations.

8.      Each of New Plan's Leases is guaranteed by Winn-Dixie Stores, Inc.  No guaranty or credit enhancement has been offered by AARF.

9.      Based upon the information currently available, Debtors and AAQF have failed to demonstrate adequate assurance of future performance.

## Cure Amounts

10.     New Plan previously filed its cure objection (the "Cure Objection", see docket # 2146, filed July 14, 2005) setting forth its monetary claims for rentals due.  New Plan incorporates the allegations of the Cure Objection herein as fully as though same were set forth at length hereat.

**Demand for Security Deposit**

11.     Pursuant to Section 365(l) of the Bankruptcy Code, New Plan demands that, in addition to any showing of the ability of AAQF to provide adequate assurance of future performance, AAQF post Letters of Credit, or, in New Plan's sole discretion, security deposits, in an amount equal to six (6) months rent and additional rent under each Lease as security for the performance of the tenant's obligations under the Leases.

**Liability for Year-End Adjustments**

12.     As set forth in the Cure Objection, the tenants under New Plan's Leases are responsible for certain year-end adjustments to items such as common area maintenance ("CAM"), taxes and other items that are paid during the course of the year on an estimated basis. Generally the year-end adjustment, or true-up, of these categories does not take place until several months after the close of the landlord's fiscal year.  Accordingly, 2005 year-end adjustments have not as yet been billed and are not even known to the New Plan.  Since § 365 only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet even been billed, unpaid year-end adjustments are not a part of the cure obligation of the Debtors.  The obligation to pay the year-end adjustments is, however, certainly a part of the obligation of the Debtors and the Assignee to provide adequate assurance of future performance.

13.     The proposed Sale Order (at ¶ 13) provides that:

> All defaults, claims or other obligations of the Debtors arising or accruing under each of the Leases, if any, prior to assumption or that could have been raised prior to assumption (without giving effect to any acceleration clauses or any default provisions of the kind specified in the 11 U.S.C. § 365(b)(2) will be cured or deemed cured by the Debtors in accordance with the Purchase Agreement, by paying the Cure Amounts.

14.     The aforesaid language, and similar provisions contained in the Sale Order, would have the affect of relieving both the Debtors and AAQF of any liability for the year-end adjustments accruing prior to the effective date of the transfer of the Leases.  This provision goes much further then simply stating that the Cure Amounts will cure all defaults, which is what § 365 contemplates.  The quoted language also relieves the Debtors of accruing claims or other obligations, for which there is absolutely no authority.  Accordingly, the quoted language, and similar language contained in the Sale Order, must be modified to assure that New Plan is paid all year-end adjustments when due and thus receives the full benefit of its bargain under the Leases.

15.     New Plan requests that the language of the Sale Order be amended to provide that AAQF shall be responsible for all year-end adjustments, whether accruing prior to or after the effective date of the assignment of the Leases, when such charges become due in accordance with the terms of the Leases.  The Order should further provide, if the parties have not already done so, that it is the obligation of the Debtors and the Assignee to prorate these charges on an estimated basis as otherwise provided in Section 3.3.1 of the Purchase Agreement. New Plan is willing to provide Debtors and AAQF with the actual year-end adjustments for each of the prior three years upon which such prorations may, in those parties' discretion, be based.

16.     Alternatively, New Plan would request that the Order be amended to require that AAQF shall be responsible for all such costs accruing on and after the effective date of the assignment of the leases and that the Debtors shall place in a separate escrow account for the benefit of New Plan only (which account may accrue interest for the benefit of Debtors only) an amount equal to 125% of Debtors' proportionate share of the year-end adjustments attributable to fiscal year 2005 (based upon the average annual adjustments for the prior three

years).  Such escrow is necessary in order to assure that New Plan will receive from the Debtors

the adjustment amounts when said amounts are billed in 2006.

## Objections to Proposed Order

17.     New Plan objects to the following provisions of the proposed Sale Order:

(a)     The second sentence of recital "Q" needs to be modified for the

reasons set forth above, since there may be amounts owing and due under the Leases.

(b)     The final sentence of recital "T" should be modified to provide that

the Purchaser is responsible for all year-end adjustments as more particularly set forth in

paragraph 15 above.

(c)     The reference to overruling any objection to any proposed Cure

Amounts in the second decretal paragraph should be eliminated unless all Cure Amounts have

been resolved as of the date of the Sale Hearing and not reserved for a further hearing.

(d)     The "deemed" consent provision of decretal paragraph 6 should be

amended unless New Plan does, in fact, consent to the assignment.  If the motion is granted over

New Plan's objection the paragraph should state that the assignment is allowed notwithstanding

New Plan's failure to consent and over its objection.

(e)     Decretal paragraph 8 allows for various documentation to be

modified, amended or supplemented by Debtors and the Assignees without further Order of

Court provided that the Debtors first obtain the prior written consent of the DIP lender and the

Creditors Committee, and that the modification, amendment or supplement does not have a

material adverse effect on Debtors' estates.  Such language should be modified to also provide

that the modifications may not alter the provisions of any of the Leases or the related documents

nor diminish any of New Plan's rights or obligations under said agreement.

(f)    Decretal paragraph 9 must be modified to provide that the Permitted Encumbrances include all lease restrictions and the provisions of any reciprocal easement agreements, operating agreements or similar agreements which affect the Leases.

(g)    All decretal paragraphs which reference payment of Cure Amounts or claims, including, but not limited to, paragraphs 9, 13, 16, 18, 20, 21, 23, 27 and 28, should be modified as noted above to clarify the responsibility of the Debtors and AAQF with regard to year-end adjustments.

(h)    Decretal paragraph 31 and recital U should be eliminated, as set forth below, unless the parties have consentally agreed to both the transaction and the form of proposed order.

### Assumption and Amendment Agreement

18.    New Plan requests that, as a condition to any order approving assumption and assignment of the Leases, AAQF shall be required to enter into a short form Assumption and Amendment Agreement whereby AAQF shall become directly obligated to New Plan, or the particular landlord entity, and the provisions of the lease regarding notice addresses will be modified.  It is essential under the laws of certain states that such an agreement be executed in order to establish privity of contract between the landlord and the assignee.  A form of agreement is attached hereto as Exhibit "A".

### Waiver of Rules 6004(g) and 6006(d) Stays

19.    Debtors request that this Court waive the stay period provided by Bankruptcy Rules 6004(g) and 6006(d) with regard to the sale and assignment of any lease.  It is unfair to request, at this time, that the Court waive stay periods which were specifically added to the Rules in order to avoid the prejudice to third parties to sales where a closing took place before an appeal and request for stay could be filed and heard.  No waiver of the aforesaid rules

should be granted at this time.  Rather, the Court must decide on a case by case basis, based upon specific objections and the likelihood of appeal, whether or not to grant the requested stay.

## Reservation of Rights

20.      New Plan reserves the right to make such other and further objections as may be appropriate as additional information and revised orders and/or agreements are submitted.

## Joinder in Other Objections

21.      New Plan hereby joins in the objections filed by Debtors' other landlords, to the extent not inconsistent herewith.

**WHEREFORE,** New Plan prays that Debtors' Motion be denied absent the provision of adequate assurance of future performance, the provision of an appropriate security deposit, provision for the payment of all year-end adjustments, provision of an assumption and amendment agreement and amendment of the proposed Sale Order, all as more particularly set forth above; and

**WHEREFORE**, New Plan prays that in the event the proposed assumption and assignment of the Leases is approved that same shall be conditioned upon the provision of guarantees and security deposits as part of the AAQF's adequate assurance of future performance, provision for the payment of all year-end adjustments, provision of an assumption and amendment agreement and amendment of the proposed Sale Order, all as more particularly set forth above; and,

**WHEREFORE,** New Plan prays for such other and further relief as may be just and required under all of the circumstances.

July 27, 2005

**BALLARD SPAHR ANDREWS & INGERSOLL, LLP**

**BY:    /s/ David L. Pollack**
**DAVID L. POLLACK**
**JEFFREY MEYERS**
**DEAN WALDT**
**Attorneys for New Plan Excel Realty Trust, Inc.,**
**51st Floor - Mellon Bank Center**
**1735 Market Street**
**Philadelphia, Pennsylvania  19103**
**(215) 864-8325**

**LOCAL COUNSEL:**

Alan M. Weiss, Esquire
Holland & Knight LLP
15 North Laura Street
Suite 3900
Jacksonville, FL 32202
(904) 798-5459 [telephone]
(904) 358-1872 [facsimile]
Alan.Weiss@HKLaw.com

# E X H I B I T   A

**EXHIBIT A**

## ASSUMPTION AND AMENDMENT AGREEMENT

THIS ASSUMPTION and AMENDMENT AGREEMENT ("Agreement"), made this _____ day of _____, 200__ by and between _____ having an address at _____ (hereinafter called "Landlord") and _____, a _____ _____ having an address at _____ _____, (hereinafter called "Assignee").

W I T N E S S E T H:

WHEREAS, Landlord and _____ **t/a** _____ (or one of its affiliates or predecessors) ("_____" and/or "Debtors") entered into a lease dated _____ (said lease, together with all prior amendments thereto, if any, are collectively hereinafter called the "Lease") pursuant to which Landlord let unto _____ premises (rental space #_____) located in the _____ Shopping Center (hereinafter called the "Premises") _____; and

WHEREAS, by Order of the United States Bankruptcy Court for the _____ District of _____ dated _____, 200__ _____ was granted the right to assign the Lease to Assignee (the "Approval Order").

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto, each intending to be legally bound hereby, covenant and agree as follows:

1. **Effective Date of Assignment**. _____ has assigned to Assignee all of its right, title and interest in and to the Lease, together with all benefits and advantages to be derived therefrom, said assignment to be effective as of _____, 200__ (the "Effective Date").

2. **Assumption of Obligations by Assignee**. Assignee, for the direct benefit of Landlord, as of the Effective Date, hereby assumes the timely and true performance of all of the rents, terms, covenants, conditions and provisions of the Lease hereby assigned at the time and manner set forth in the Lease (including without limitation the obligations to pay the rent and additional rent and to use the Premises as more fully set forth in said Lease), all with the same force and effect as if Assignee had executed the Lease originally as the tenant named therein. The liability of Assignee under the Lease shall become primary as to all obligations under the Lease. Assignee shall specifically be liable for all year-end adjustments for any calendar year not previously billed.

3.      **<u>Lease Modifications as of the Effective Date</u>**.

The Lease shall be modified as set forth herein:

(a) **<u>Notices</u>**.  **(Section ___)** Pursuant to Section ___, Tenant's notice address is hereby amended to:

_____
_____
_____
_____

(b) **_____.** (Section ___) Pursuant to Section ___, _____ is hereby amended to:


4.      This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their heirs, administrators, executors, successors and assigns.

5.      All other terms and conditions of the Lease shall remain and continue in full force and effect are unmodified and unchanged hereby except to the extent provided herein.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

WITNESS/ATTEST:

LANDLORD:

_____

By: _____

_____

By: _____

TENANT:

_____

a _____

WITNESS/ATTEST:

_____

_____

By: _____
Name: _____
Title: _____

## <u>CERTIFICATE OF SERVICE</u>

I certify that service of the foregoing was made on July 27, 2005 via ECF

Noticing and telecopier upon the parties listed below.


_____/s/ David L. Pollack_____

| | |
|---|---|
| D.J. Baker<br>Sally McDonald Henry<br>Rosalie W. Gray<br>Eric M. Davis<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY  10036<br>djbaker@skadden.com<br>Fax: 212-735-2000 | Stephen D. Busey<br>James H. Post<br>Cynthia C. Jackson<br>Eric N. McKay<br>Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, FL  32202<br>cjackson@smithhulsey.com<br>Fax: 904-359-7708 |
| Elena L. Escamilla<br>U.S. Trustee<br>135 W. Central Boulevard<br>Room 620<br>Orlando, FL  32801<br>Elena.L.Escamilla@usdoj.gov<br>Fax: 407-648-6323 | Dennis F. Dunne<br>Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY  10005<br>Attorneys for OCUC<br>ddunne@milbank.com<br>Fax: 212-530-5219 |
| John B. Macdonald, Esquire<br>Akerman Senterfitt<br>50 North Laura Street<br>Suite 2500<br>Jacksonville, FL  32202<br>johnmacdonald@akerman.com<br>Fax: 904-798-3730 | Winn-Dixie Stores, Inc.<br>Attn: Laurence B. Appel<br>5050 Edgewood Court<br>Jacksonville, FL  32801<br>larryappel@winn-dixie.com<br>Fax: 904-783-5059 |