Hearing Date: August 4, 2005, 1:00 p.m.

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

## DEBTORS' OBJECTION TO APPLICATION
## FOR PAYMENT OF ADMINISTRATIVE EXPENSES
## (WINN-DIXIE STORE #1908, THE VILLAGE OF WHITESBURG, HUNTSVILLE,
## ALABAMA) FILED BY TRANSAMERICA LIFE INSURANCE COMPANY

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and

debtors-in-possession (collectively, the "Debtors"), submit this objection (the "Objection") in

response to the Application for Payment of Administrative Expenses filed by Transamerica Life

Insurance Company (the "Motion") (Docket No. 1849). In opposition to the Motion, the Debtors

respectfully represent as follows:

### Background of Transamerica Lease

1.      Winn Dixie Montgomery, Inc. (as successor in interest to Winn-Dixie Atlanta,

Inc.) is party to a lease dated September 4, 1986, governing a store located in Huntsville,

Alabama (as amended, the "Transamerica Lease"). Transamerica Life Insurance Company

("Transamerica") was at all relevant times the lessor under the Transamerica Lease.

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases:  Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2.      On May 6, 2005, the Court entered the Order Under 11 U.S.C. § 365(d)(4) Granting Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Order") (Docket No. 1070).  The Order extended, to September 19, 2005, the Debtors' time to assume or reject all but two of its several hundred unexpired leases of non-residential real property.  Under the Order, the Debtors agreed to continue to honor their postpetition obligations under their various real property leases as required by section 365(d)(3) of the Bankruptcy Code.  The Debtors have undertaken to honor all of their postpetition obligations arising under such leases, including the Transamerica Lease.

## Argument

3.      In the Motion, Transamerica asks this Court to adopt an approach taken by the *minority* of the courts considering the issue and hold that certain obligations that *accrued* prepetition (in 2004) should be characterized as postpetition obligations simply because they "became due and payable" after the filing of the Debtors' bankruptcy cases.  See Motion ¶ 5. Specifically, Transamerica argues that the Debtors owe lease operating expenses totaling $76,222.25, comprised of:  2004 property tax obligations ($36,912.38), 2004 insurance obligations ($2,532.52), and 2004 common area maintenances charges ("CAM") charges ($36,777.35) (collectively, the "Prepetition Invoice").[2]

4.      Notably, the Prepetition Invoice was sent to the Debtors on February 16, 2005 – five days prior to the date on which the Debtors commenced these bankruptcy cases (February 21, 2005).  See Motion Ex. A.  Thus, it affirmatively appears from the Exhibit to the Motion that the

---

[2]      Transamerica asserts that the Debtors owe $36,777.35 for prepetition CAM charges.  However, according to the Debtors' books and records, the Debtors owe Transamerica $36,217.77 for prepetition CAM charges.  This minor discrepancy is noted here only for purposes of reserving the Debtors' rights to argue same during the claims reconciliation process.  This discrepancy should not in any way impact upon the Court's consideration of the merits of the Motion.

2

Prepetition Invoice not only *accrued* prepetition but was *invoiced* prepetition.  Apparently, Transamerica contends that this debt is postpetition because the Prepetition Invoice was not received by the Debtors until March 3, 2005 (according to the certified mail receipt included in Exhibit A to the Motion).[3]

5.      But regardless of whether the Prepetition Invoice was received prepetition or postpetition, where, as here, the lease obligations at issue <u>accrued</u> prepetition and relate to prepetition use of the property, the clear majority of courts considering the issue have adopted the "accrual" approach and held that such obligations are prepetition obligations, notwithstanding that they may have "become due" postpetition.

6.      The "accrual" approach interprets section 365(d) of the Bankruptcy Code consistently with the pre-1984 practice under section 503(b)(1) of the Bankruptcy Code of requiring the debtor to timely pay only the pro rata amount of rent, taxes and other obligations accruing during the post-petition, pre-rejection period.  <u>See</u> <u>In re Handy Andy Home Improvement Ctrs., Inc.</u>, 144 F.3d 1125, 1126-28 (7th Cir. 1998); <u>El Paso Props. Corp. v. Gonzales</u> (In re Furr's Supermarkets, Inc.), 283 B.R. 60, 68-70 (B.A.P. 10th Cir. 2002); <u>Newman v. McCrory Corp.</u> (In re McCrory Corp.), 210 B.R. 934, 936-40 (S.D.N.Y. 1997); <u>Schneider & Reiff v. William Schneider, Inc.</u> (In re William Schneider, Inc.), 175 B.R. 769, 771-73 (S.D. Fla.

---

[3]      Thus, by focusing upon the date of receipt (March 3, 2005), Transamerica is attempting to benefit from the two week delay that allegedly exists between the date the Prepetition Invoice was issued and the date it was allegedly received.  This alleged delay, however, might have been avoided had Transamerica complied with the Debtors' repeated requests to stop sending notices to Ms. Tinsley in Atlanta, Georgia, and begin sending all notices to Ms. Archambault in Harahan, Louisiana. As reflected in the correspondence attached to this Objection as Exhibit A, the Debtors advised Transamerica in December, 2004 and then again in January, 2005 of this change in notice parties.  Indeed, in the January correspondence, Ms. Tinsley expressly advised Transamerica that "[c]ontinuing to mail [her] billings, will only cause a significant delay [in] the reimbursement process." Notwithstanding these requests, Transamerica sent the Prepetition Invoice to Ms. Tinsley at the old address.  Had the Prepetition Invoice been sent to the proper address, it may well have been received by the Debtors prepetition. Having chosen to ignore these requests, it would appear disingenuous (at best) for Transamerica to now attempt to rely upon the date of receipt.

1994); <u>Child World, Inc. v. Campbell/ Mass. Trust</u> (In re Child World, Inc.), 161 B.R. 571, 573-77 (S.D.N.Y. 1993); <u>Heathcon Holdings, LLC v. Dunn Indus., LLC</u> (In re Dunn Indus., LLC), 320 B.R. 86, 92-93 (Bankr. D. Md. 2005);  <u>In re Phar-Mor, Inc.</u>, 290 B.R. 319, 322-28 (Bankr. N.D. Ohio 2003);  <u>In re Travel 2000, Inc.</u>, 264 B.R. 444, 450-51 (Bankr. W.D. Mich. 2001); <u>In re Oscar Hornsby, Inc.</u>, No. 00-61313, 2001 Bankr. LEXIS 1062, at *4-6 (Bankr. E.D. Ky. Jan. 26, 2001); <u>In re All for A Dollar, Inc.</u>, 174 B.R. 358, 361-62 (Bankr. D. Mass. 1994); <u>In re Ames Dep't Stores, Inc.</u>, 150 B.R. 107, 108-09 (Bankr. S.D.N.Y. 1993); <u>In re Warehouse Club, Inc.</u>, 184 B.R. 316, 317-18 (Bankr. N.D. Ill. 1995); <u>Daugherty v. Kenerco Leasing, Inc.</u> (In re Swanton Corp.), 58 B.R. 474, 475 (Bankr. S.D.N.Y. 1986).  The holdings of these courts support the view "that Congress did not intend § 365(d)(3) to include debtor-tenants' rental obligations arising prepetition, but billed postpetition." <u>Child World</u>, 161 B.R. at 574.  <u>See also</u> <u>Handy Andy</u>, 144 F.3d at 1128 (discussing Congressional intent); <u>William Schneider</u>, 175 B.R. at 772-73 (discussing legislative history).  These holdings are, indeed, consistent with the language of the statute itself, as section 365(d)(3) of the Bankruptcy Code requires the debtor to "timely perform all the obligations of the debtor . . . *arising from and after* the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected." 11 U.S.C. § 365(d)(3) (emphasis added).  <u>See</u> <u>In re Furr's Supermarkets, Inc.</u>, 283 B.R. at 66  ("Under the proration rule, lessors are entitled to lease payments under [section] 365(d)(3) arising during and attributable to the period after the order for relief. . . .").

7.     A minority of courts, applying the "billing date approach," have required payment of obligations accruing prepetition when the obligations "first become due and enforceable after the order [for relief] under the terms of the lease." <u>Centerpoint Props. v. Montgomery Ward Holding Corp.</u> (In re Montgomery Ward Holding Corp.), 268 F.3d 205, 209 (3d Cir. 2001).  <u>See</u>

also Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.), 203

F.3d 986, 989-90 (6th Cir. 2000); Inland's Monthly Income Fund, L.P. v. Duckwall-ALCO

Stores, Inc. (In re Duckwall-ALCO Stores, Inc.), 150 B.R. 965, 974-76 & n.23 (D. Kan. 1993);

In re R.H. Macy & Co., 152 B.R. 869, 873-74 (Bankr. S.D.N.Y. 1993), aff'd sub nom. Bullock's

Inc. v. Lakewood Mall Shopping Ctr. (In re R.H. Macy & Co.), No. 93 Civ. 4414 (SS), 1994 WL

482948 (S.D.N.Y. Feb. 23, 1994); In re Appletree Mkts. Inc., 139 B.R. 417, 418-21 (Bankr. S.D.

Tex. 1992).

     8.     The majority's "accrual" approach, however, best protects the interests of

landlords, debtor-tenants and other creditors in a manner consistent with the Bankruptcy Code's

broader purposes of reorganization and equality among similarly situated creditors.  Specifically,

the "accrual" approach best implements Bankruptcy Code section 365(d)(3)'s goal of protecting

landlords during the period between the bankruptcy filing and acceptance or rejection of a lease

by making the debtor fully responsible for liabilities *relating to* its post-petition use of the

property.  At the same time, the "accrual" approach furthers the Bankruptcy Code's overarching

policies of equality among creditors and a "fresh start" for the debtor because landlords are fairly

compensated for postpetition services provided to the debtor, without imposing "sunk costs" on

otherwise viable enterprises.  See, e.g., Handy Andy, 144 F.3d at 1127-28.  Further, the "accrual"

approach protects the interest of other, similarly situated, unsecured creditors by protecting

landlords only to the extent of post-petition use of the landlord's property.  See id.  In contrast,

"[r]eliance strictly on the billing date would result in a windfall either to the landlord or to the

debtor-tenant," based on the fortuitous (or deliberate) timing of the billing date and/or filing of the

petition.  McCrory Corp., 210 B.R at 940.  See also Dunn Indus., 320 B.R. at 93 ("While

Montgomery Ward [billing date approach] may provide a bright line rule, it will also promote the

type of lawyering that should not be encouraged in our bankruptcy system.").  In sum, under the accrual approach, the Prepetition Invoice is a prepetition obligation because it relates to amounts that *accrued prepetition* (in 2004).

9.      In any event, even if this Court applied the minority's "billing date" approach, Transamerica's obligations are not administrative expense claims because they "became due" prior to the petition date.  Specifically, even though the Debtors received the Prepetition Invoice postpetition, the Prepetition Invoice was *issued* prepetition--on February 16, 2005.  Courts in several jurisdictions have recognized the date of invoicing as the time at which an obligation "becomes due."  See Dunn Indus., 320 B.R. at 89 (adopting accrual method, but observing that under billing date approach, "the Debtor's obligation to pay taxes [arises] . . . at the moment there was a legally enforceable duty to perform under the lease, i.e. at the time of invoicing");  R. H. Macy, 152 B.R. at 874 (applying billing date method to real estate tax reimbursements, and emphasizing that the "obligation arose postpetition when the supplemental and adjusted tax statements were issued, at which time they first became obligations of the [d]ebtor under the [l]ease.").  See also In re Trak Auto Corp., 277 B.R. 655, 663 (Bankr. E.D. Va. 2002) (adopting accrual method and noting that "[a]dopting a method where debtor's liability would turn solely on when bills are *issued* has the potential to create a windfall for a landlord who decides to manipulate when it bills the debtor for taxes and CAM charges so that the amounts due become a post-petition claim") (emphasis added), aff'd sub nom. LaSalle Nat'l Trust, N.A. v. Trak Auto Corp., 288 B.R. 114 (E.D. Va. 2003),  rev'd on other grounds sub nom. In re Trak Auto Corp., 367 F.3d 237 (4th Cir. 2004).  Indeed, the Sixth Circuit defines the "billing bate approach" as the date an amount becomes "due" under a lease -- not the date it is invoiced or is otherwise "payable" See In re Koenig Sporting Goods, Inc., 229 B.R. 388, 390 (6th Cir. BAP 1999) ("[A]

statement of the Billing Date Approach would be any amount coming due under a lease in the post-petition . . .period"). Accordingly, even under the billing date approach, the Prepetition Invoice would properly be considered to be a prepetition debt because it *first became a legally enforceable obligation* even under the Transamerica Lease prepetition (i.e., the "billing date"). Consequently, although the Debtors believe that the majority's accrual approach represents the more sound approach, regardless of which approach is here applied, the Prepetition Invoice constitutes a prepetition obligation that the Debtors are precluded from paying at this time.

## Conclusion

The Prepetition Invoice relates entirely to amounts that accrued during the prepetition period and are, thus, not obligations that should be paid under section 365(d)(3) of the Bankruptcy Code. For each of these reasons the Debtors respectfully request that the Court deny the relief sought in the Motion.

Dated: July 27, 2005

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By ___/s/ D. J. Baker_____ | By ___/s/ James H. Post_____ |
| D. J. Baker | Stephen D. Busey |
| Sally McDonald Henry | James H. Post |
| Adam S. Ravin | Cynthia C. Jackson, |
| Denise Kaloudis | Florida Bar Number 175460 |
| Four Times Square | 225 Water Street, Suite 1800 |
| New York, New York 10036 | Jacksonville, Florida 32202 |
| (212) 735-3000 | (904) 359-7700 |
| (212) 735-2000 (facsimile) | (904) 359-7708 (facsimile) |
| djbaker@skadden.com | cjackson@smithhulsey.com |
| | |
| Co-Attorneys for Debtors | Co-Attorneys for Debtors |

**EXHIBIT A**



TELSA TINSLEY
Area Property Manager
Real Estate Department

December 16, 2004

Connie Carpenter
**COLLIERS, TURLEY, MARTIN & TUCKER**
5250 Virginia Way, Suite 100
Brentwood, TN 37027

Re:   **CHANGE IN REGIONAL OFFICE MANAGEMENT NOTICE**
      **WINN-DIXIE STORE #1908**
      **VILLAGE ON WHITESBURG**
      **HUNTSVILLE, AL 35803**

Dear Ms. Carpenter:

Winn-Dixie Stores, Inc. has recently initiated a number of changes to more efficiently operate our business. We have consolidated our eight operating divisions into four regions. The above referenced location has been reassigned to the Western region. Effective immediately the contact person for property management related issues, as well as common area maintenance, real estate taxes and insurance billings is listed below, as well as the development manager for the Western region.

<table>
<tr><td>Area Property Manager</td><td>Development Manager</td></tr>
<tr><td>Jay Archambault</td><td>Dave Belock</td></tr>
<tr><td>600 Edwards Avenue</td><td>600 Edwards Avenue</td></tr>
<tr><td>Harahan, LA 70123</td><td>Harahan, LA 70123</td></tr>
<tr><td>Phone# 504-731-2211</td><td>Phone# 504-731-2210</td></tr>
</table>

Please do not hesitate to contact me at (404) 346-2424 if you have questions or problems. I am still available to you and will continue to be so until your property is aligned with the new team.

Sincerely,

Telsa D. Tinsley
Area Property Manager

WD 29-180

**From:**       "Telsa Tinsley" <TelsaTinsley@winn-dixie.com>
**To:**         "'ccarpenter@ctmt.com'" <ccarpenter@ctmt.com>
**Date:**       1/27/05 1:50PM
**Subject:**    Winn-Dixie Store 1908 Village on Whitesburg

Connie,

Please have your accountants change the contact and billing information as requested in my December 2004 letter to you.  Continuing to mail me billings, will only cause a significant delay the reimbursement process.

Thanks in advance for your cooperation.

Best regards,
Telsa Tinsley
Area Property Manager
Winn-Dixie Real Estate Department
P. O. Box 43425
Atlanta, Georgia 30336
Phone:  404-346-2424
Fax:  404-346-2411


**CC:**         "Jay Archambault" <JayArchambault@winn-dixie.com>

**From:**     "Telsa Tinsley" <TelsaTinsley@winn-dixie.com>
**To:**       "'Carpenter, Connie'" <CCarpenter@ctmt.com>
**Date:**     1/27/05 1:59PM
**Subject:**  RE: Winn-Dixie Store 1908 Village on Whitesburg


-----Original Message-----
From: Carpenter, Connie [mailto:CCarpenter@ctmt.com]
Sent: Thursday, January 27, 2005 1:55 PM
To: Telsa Tinsley
Cc: Jay Archambault
Subject: RE: Winn-Dixie Store 1908 Village on Whitesburg


Will you please resend this information?  I never received it.  Thanks.

Connie H. Carpenter, CPM
Property Manager
Colliers Turley Martin Tucker
Phone: (615) 259-1351
Facsimile (615) 259-1415
424 Church St.  Suite 1506
Nashville TN 37219
Email:  ccarpenter@ctmt.com
www.ctmt.com


-----Original Message-----
From: Telsa Tinsley [mailto:TelsaTinsley@winn-dixie.com]
Sent: Thursday, January 27, 2005 12:51 PM
To: Carpenter, Connie
Cc: Jay Archambault
Subject: Winn-Dixie Store 1908 Village on Whitesburg

Connie,

Please have your accountants change the contact and billing information as
requested in my December 2004 letter to you.  Continuing to mail me
billings, will only cause a significant delay the reimbursement process.

Thanks in advance for your cooperation.

Best regards,
Telsa Tinsley
Area Property Manager
Winn-Dixie Real Estate Department
P. O. Box 43425
Atlanta, Georgia 30336
Phone: 404-346-2424
Fax:  404-346-2411


**CC:**        "Jay Archambault" <JayArchambault@winn-dixie.com>

January 27, 2005

Connie Carpenter
**COLLIERS, TURLEY, MARTIN & TUCKER**
5250 Virginia Way, Suite 100
Brentwood, TN 37027

      **Re:**    **CHANGE IN REGIONAL OFFICE MANAGEMENT NOTICE**
               **WINN-DIXIE STORE #1908**
               **VILLAGE ON WHITESBURG**
               **HUNTSVILLE, AL 35803**

Dear Ms. Carpenter:

Winn-Dixie Stores, Inc. has recently initiated a number of changes to more efficiently operate our business. We have consolidated our eight operating divisions into four regions. The above referenced location has been reassigned to the Western region. Effective immediately the contact person for property management related issues, as well as common area maintenance, real estate taxes and insurance billings is listed below, as well as the development manager for the Western region.

| Area Property Manager | Development Manager |
|---|---|
| Jay Archambault | Dave Belock |
| 600 Edwards Avenue | 600 Edwards Avenue |
| Harahan, LA 70123 | Harahan, LA 70123 |
| Phone# 504-731-2211 | Phone# 504-731-2210 |

Please do not hesitate to contact me at (404) 346-2424 if you have questions or problems. I am still available to you and will continue to be so until your property is aligned with the new team.

               Sincerely,

               Telsa D. Tinsley
               Area Property Manager