UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**ORDER (A) AUTHORIZING THE DEBTORS
TO RETAIN LIQUIDATING AGENT AND APPROVING
AGENCY AGREEMENT, (B) AUTHORIZING THE DEBTORS
TO SELL MERCHANDISE FREE AND CLEAR OF LIENS AND
EXEMPT FROM STAMP OR SIMILAR TAXES THROUGH
STORE CLOSING SALES IN ACCORDANCE WITH THE
ATTACHED GUIDELINES AND (C) GRANTING RELATED RELIEF**

These cases came before the Court on the Amended Motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") for an Order (A) Authorizing the Debtors to Retain Liquidating Agent and Approving Agency Agreement, (B) Authorizing the Debtors to Sell Merchandise Free and Clear of Liens Through Store Closing Sales in Accordance with the Attached Guidelines and (C) Granting Related Relief (the "Motion")[2].    The Court has reviewed the Motion, considered the evidence and heard argument of counsel.   After due deliberation, the

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are Debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

[2]    Capitalized terms used but not defined in this Order have the meanings ascribed to such terms in the Agency Agreement or, if not defined in the agreement, as defined in the Motion.

Court finds that (i) the Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) notice of the Motion and the hearing on the Motion was adequate under the circumstances, (iv) the Store Closings and Store Closing Sales set forth in the Motion are based upon the sound business judgment of the Debtors and the Debtors' means of carrying them out as set forth in the Motion are reasonable, necessary and in the best interests of the Debtors' estates, (v) the Debtors and a joint venture composed of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (the "Agent") entered into the Agency Agreement dated as of June 30, 2005 attached to the Motion as Exhibit A and incorporated by reference, as amended, (the "Agency Agreement") in "good faith" within the meaning of section 363(m) of the Bankruptcy Code 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") and the Debtors' sales of goods under the Agency Agreement will be "good faith" sales within the meaning of section 363(m) of the Bankruptcy Code, (vi) the Agency Agreement has been negotiated in good faith and at arm's-length between the Debtors and the Agent, and (vii) neither member of the Agent represents any interest adverse to the Debtors or their estates in the matters for which the Agent is proposed to be retained, and each member of the Agent is "disinterested" within the meaning of section 101(14) of the Bankruptcy Code; and (viii) just cause exists for the relief granted. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.      The Motion is granted on the terms and conditions provided by this Order.

2.      In accordance with section 363 of the Bankruptcy Code, the Debtors are authorized and empowered to cease retail operations at the Stores  and take such other

actions as are reasonable and necessary to cease operations at the Stores upon the conclusion of the Store Closing Sales (as defined below).

3.      In accordance with sections 363(b) and 105(a) of the Bankruptcy Code, the Debtors are authorized and empowered to conduct the Sales and to sell the FF&E (as defined in the Agency Agreement) through the Agent on the terms and conditions set forth in the Agency Agreement (collectively the "Store Closing Sales") and in accordance with the terms of this Order.

4.      Pursuant to section 327 of the Bankruptcy Code, the Debtors are authorized and empowered to enter into the Agency Agreement and to employ and retain the Agent as their liquidation consultant in accordance with the terms and conditions of the Agency Agreement, including, without limitation, the provisions for compensation of the Agent, without the need for further Court approval or fee application or similar procedure.  The terms of the Agency Agreement are approved and this Order and the Agency Agreement are binding upon the Debtors, all creditors of the Debtors, and any trustees appointed in these proceedings or any trustees appointed in any subsequent proceedings under chapter 7 or chapter 11 of the Bankruptcy Code relating to the Debtor.

5.      In accordance with the terms of the Agency Agreement and this Order, the Debtors and the Agent are authorized to augment the Store Closing Sales by selling Replenishment Goods in the Stores notwithstanding federal, state or local laws that purport to prohibit or restrict augmentation of the Store Closing Sales.  Pursuant to section 363(f) of the Bankruptcy Code, all inventory and FF&E to be sold by the Debtors at the Store Closing Sales are sold free and clear of any and all liens, claims and interests, with any liens, claims and interests to attach to net proceeds after payment of the Agent's

Fee and the FF&E Fee in the order of priority provided by the Final Financing Order and the Loan Documents. The Agent is entitled to the protection of section 363(m) of the Bankruptcy Code in connection with the Store Closing Sales.

6.     After payment of the Agent Fee and the FF&E fee, the Debtors shall cause the net proceeds from the Sales to be paid to the DIP Lender to the extent required in accordance with the terms and conditions of the Final Financing Order and the Loan Documents.

7.     Subject to the restrictions set forth in this Order, the Debtors and the Agent are authorized to take any and all actions as may be necessary to implement the Agency Agreement in accordance with and subject to the terms of this Order and each of the transactions contemplated by the Agency Agreement, and any actions taken by the Debtors and the Agent necessary to implement the Agency Agreement prior to the date of this Order are approved and ratified in accordance with this Order.

8.     The Debtors and their officers, employees, and agents (subject to the Debtors' internal policies and procedures) are authorized to execute such documents as necessary to carry out the Store Closing Sales and related actions including, without limitation, the Agency Agreement.

9.     All parties and persons of every nature and description, including but not limited to landlords, utility companies, governmental agencies, sheriffs, marshals or other public officers, creditors, newspapers, other advertising mediums, and all those acting for or on their behalf, are jointly and severally restrained and enjoined from (a) charging advertising rates in excess of the rates charged pursuant to the Debtors' prepetition advertising agreements or, if no such agreements exist, charging advertising rates in

excess of rates regularly charged to non-bankrupt customers in the ordinary course, (b) in any way interfering with or otherwise impeding the Store Closing Sales conducted in accordance with the Agency Agreement and this Order, or the Agent's right to use the Stores, and all services, furniture, fixtures, equipment and other assets of the Debtors which the Agent is granted the right to use in the Agency Agreement, or (c) instituting any action or proceeding in any court (other than this Court) or other administrative body having as its objective the obtaining of an order or judgment that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales, the operation of the Stores, or the performance by the Debtors of their obligations under the Agency Agreement, including, without limitation, the obligation to pay all amounts to which the Agent is due pursuant to the terms of the Agency Agreement; provided, however, that notwithstanding the authority granted to the Debtors and the Agent to conduct Store Closing Sales in accordance with the Agency Agreement and this Order, this Order does not exempt the Debtor or the Agent or their assigns from complying with Safety Laws and the Guidelines.

10.     The Agent is authorized and empowered to conduct the Store Closing Sales in accordance with the Agency Agreement and this Order and take all actions necessary to implement the terms and conditions set forth in the Agency Agreement, including, without limitation, refusing to accept returns of goods by customers and advertising the Store Closing Sales as "store closing sales" in media advertisements and on interior and exterior banners and other signage that the Agent deems appropriate, without complying with federal, state or local laws, rules, statutes, ordinances, licensing requirements, regulations and procedures of any kind or nature, including, without

limitation, laws, rules, statutes, ordinances, licensing or consent requirements, regulations and procedures with respect to licenses and permits, state and local waiting periods or time limits, advertising and transferring Merchandise between locations; provided, however, that the Agent shall comply with Safety Laws, and provided that notwithstanding anything in the Agency Agreement or this Order to the contrary, (a) the Store Closing Sales in the State of Tennessee shall be no more than 90 days in duration and (b) no obsolete or slow moving goods shall be brought into the Stores located in the State of Tennessee from the Debtors' other Stores.

11.   The Agent is authorized and empowered to conduct the Store Closing Sales and take all actions necessary to implement the terms and conditions of the Agency Agreement, including, without limitation, advertising the Store Closing Sales as "store closing sales" in media advertisements, and on interior and exterior banners and other signage that Agent deems appropriate, notwithstanding any consent requirement in, or restrictive provision of, any lease, reciprocal easement agreement or related documents purporting to limit such actions, and Bankruptcy Code section 365(d)(3) does not preclude the relief granted in this paragraph; provided, however, that the Agent complies with the Sale Guidelines attached as Exhibit 1 and the terms of the Agency Agreement and this Order.

12.   The Debtors and their officers, employees, and agents are not required (a) to obtain the approval of any federal, state, or local government agency, department or other authority, and landlord or any other third parties to conduct the closing of the Stores, to conduct the Store Closing Sales and to take the related actions authorized by the Order or (b) to execute, obtain or file releases, termination statements, assignments,

consents, or other instruments to effect, consummate and implement the provisions hereof.

13.    The Debtors and Agent shall not modify, amend or waive any provision of this Order, the Agency Agreement, and/or all schedules and exhibits (including, without limitation, the Expense Budget and any projections related to the Sale) annexed to the Agency Agreement without the prior consent of the DIP Lender; provided, however, that Agent and the Debtors shall not be required to obtain the prior consent of the DIP Lender with respect to any modification(s) or variance(s) to any line item in the Expense Budget, as previously approved by the DIP Lender, if, after giving effect to all such modifications and/or variances, the amount of such line item does not in the aggregate increase by an amount equal to or greater than 10% of the line item contained in the Expense Budget previously approved by the DIP Lender.

14.    The Agency Agreement and attached Exhibits may be modified, amended or supplemented by the parties without further order of the Court; provided, however, that the parties shall obtain the prior written consent of the Creditors' Committee, which consent shall not be unreasonably withheld; and provided further, that any such modification, amendment or supplement shall neither be materially adverse nor materially adversely change the economic substance of the transactions contemplated by the Agency Agreement and this Order. Provided, however, that, notwithstanding anything in this paragraph to the contrary, that Agent and the Debtors shall not be required to obtain the prior consent of the Creditors' Committee with respect to any modification(s) or variance(s) to any line item in the Expense Budget, as previously approved by the Creditors' Committee, if, after giving effect to all such modifications

and/or variances, the amount of such line item does not in the aggregate increase by an amount equal to or greater than 10% of the line item contained in the Expense Budget previously approved by the Creditors' Committee. The Debtors shall provide the U.S. Trustee with a copy of any amendment or modification that requires the consent of the Creditors' Committee hereunder.

15.    The Agent is granted a limited license and right to use, during the Sale Term (as defined in the Agency Agreement), the trade names, logos and customer lists relating to and used in connection with the operation of the Stores, solely for the purpose of conducting the Store Closing Sales.

16.    Except as expressly set forth in the Agency Agreement, the Agent is not liable for any claims against the Debtors, and the Agent will have no successor liabilities whatsoever.

17.    No bulk sales law or any similar law of any state or other jurisdiction will apply in any way to the transactions authorized by this Order.

18.    Pursuant to section 1146(c) Bankruptcy Code, no transfer, stamp or similar tax will apply to the transactions authorized by this Order.

19.    The transfer of inventory and other assets between and among the Debtors' Stores is authorized in accordance with and subject to the terms contained in the Agency Agreement and this Order.

20.    The Debtors shall file with the Court a copy of the final reconciliation under the Agency Agreement when it is received by the Debtors.

21.    To the extent of any conflict between this Order, the Agency Agreement, the Motion, or any other order entered in these cases, the terms of this Order shall govern.

22.     This Court retains exclusive jurisdiction to resolve any dispute arising from or relating to the Store Closing Sales, the Agency Agreement or this Order.

23.     Notwithstanding Rule 6004(g) of the Federal Rules of Bankruptcy Procedure, this Order will take effect immediately upon signature.

24.     This Order is the "Approval Order" described in the Agency Agreement.

25.     If landlords have any issues regarding the Store Closing Sales, they may contact Eric Kaup at Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, Illinois  60062, phone number (847) 849-2966.

26.     Notwithstanding anything to the contrary set forth in this Order, the Agent agrees that the terms of any written agreements ("Landlord Agreements") between the Agent or its members and any landlords with regard to the conduct of the Store Closing Sales shall control with respect to any conflict between the terms of this Order and the terms of the Landlord Agreements.

27.     In the event any landlord alleges the Agent or Merchant has violated this Order or any Landlord Agreement, such landlord may seek a hearing before this Court on three days' notice.

28.     Any landlord of the Debtors may within 10 days of the date of this order give notice to the Debtors specifically identifying property in stores which are being liquidated pursuant to the terms of this order which the landlords contend to be property of the landlord and not property of the Debtors and therefore should not be sold by the

Agent.  No such property identified by a landlord shall be sold by the Debtors or the Agent absent agreement of the parties or further order of the Court.

Dated this __27__ day of July, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

00503195.2