#332
West Palm
Beach, 71

LEGAL DESCRIPTION
OF
SHOPPING CENTER

That certain piece, parcel or tract of land situate, lying and being in
the County of Palm Beach and State of Florida, more particularly described
as follows:

All of the South one-half (S 1/2) of the Northeast one-quarter
(NE 1/4) of the Northwest one-quarter (NW 1/4) of Section 1,
Township 44 South, Range 42 East, Palm Beach County, Florida;
less the East 463 feet and also less the South 440 feet of the
West 454 feet of the East 697 feet; and also less the South 40
feet less the East 697 feet thereof, more particularly described
as follows:

Commencing at the Southeast corner of the Northeast one-quarter
(NE 1/4) of the Northwest one-quarter (NW 1/4) of said Section 1,
also being the centerline intersection of Gun Club Road and Mili-
tary Trail (S.R. 809); thence North 0° 05' 07" East along said
centerline of Military Trail, also being the East line of the
said Northeast one-quarter (NE 1/4) of the Northwest one-quarter
(NW 1/4) of Section 1, a distance of 40.00 feet; thence South
89° 50' 07" West, a distance of 53.00 feet to the intersection of
the West right-of-way line of Military Trail and the North right-of-
way line of Gun Club Road; thence continue South 89° 50' 07" West
along the North right-of-way line of Gun Club Road, said line being
parallel to and 40.00 feet North of as measured at right angles to
the South line of the said Northeast one-quarter (NE 1/4) of the
Northwest one-quarter (NW 1/4) of Section 1, a distance of 644.00
feet to the POINT OF BEGINNING of the herein described parcel; thence
North 0° 05' 07" East, a distance of 400.00 feet; thence North
89° 50' 07" East, a distance of 234.00 feet; thence North 0° 05'
07" East, a distance of 227.32 feet more or less to the South line
of South Trail Park, as recorded in Plat Book 10, page 65, Public
Records of Palm Beach County, Florida; thence South 89° 51' 27"
West, a distance of 205.59 feet more or less to the Southwest corner
of said South Trail Park; thence continue South 89° 51' 27" West, a
distance of 668.59 feet more or less to the West line of the said
Northeast one-quarter (NE 1/4) of the Northwest one-quarter (NW 1/4)
of Section 1; thence South 0° 02' 33" West along the said West line
of the Northeast one-quarter (NE 1/4) of the Northwest one-quarter
(NW 1/4) of Section 1, a distance of 627.75 feet more or less to the
said North right-of-way line of Gun Club Road; thence North 89° 50'
07" East along the said North right-of-way line of Gun Club Road,
a distance of 639.71 feet more or less to the POINT OF BEGINNING.
Containing 10.941 acres, more or less.

TOGETHER WITH a mutual and non-exclusive easement, right, license
and privilege of passage and use, both pedestrian and automotive,
and for ingress and egress, such easement for use in common with
the Landlord, its heirs, legal representatives, successors and
assigns, and for others similarly entitled, including the Tenant
herein, its successors and assigns, and the other tenants occupying
space from time to time in the shopping center, and their respective

EXHIBIT "B" – Page 1 of 2

LEGAL DESCRIPTION OF SHOPPING CENTER - continued

employees, agents, suppliers, customers and invitees, over, across and upon the following described parcel of land:

### PARCEL 1

The North 88 feet of the following described land:

The West 644 feet of the East 697 feet of the North 400 feet of the South 440 feet of the South one-half (S 1/2) of the Northeast one-quarter (NE 1/4) of the Northwest one-quarter (NW 1/4) of Section 1, Township 44 South, Range 42 East, Palm Beach County, Florida.

### PARCEL 2

The West 53 feet of the following described land:

The West 644 feet of the East 697 feet of the North 400 feet of the South 440 feet of the South one-half (S 1/2) of the Northeast one-quarter (NE 1/4) of the Northwest one-quarter (NW 1/4) of Section 1, Township 44 South, Range 42 East, Palm Beach County, Florida.

TOGETHER ALSO WITH a mutual and non-exclusive easement, right, license and privilege for installing, maintaining and operating a sign advertising the existence, entryway and location of the shopping center above described and the name of Tenant herein, such easement for use in common with the Landlord, its heirs, legal representatives, successors and assigns and for others similarly entitled, including the Tenant, on and upon the following described parcel of land:

### PARCEL 3

The South 30 feet of the North 118 feet of the East 30 feet of the following described land:

The West 644 feet of the East 697 feet of the North 400 feet of the South 440 feet of the South one-half (S 1/2) of the Northeast one-quarter (NE 1/4) of the Northwest one-quarter (NW 1/4) of Section 1, Township 44 South, Range 42 East, Palm Beach County, Florida.

EXHIBIT "B" - Page 2 of 2

EXHIBIT B
To Asset Purchase Agreement

Form of

**BILL OF SALE**

**BILL OF SALE**

     **WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2005, among **ALIMA CORPORATION**, a Florida corporation, ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Lease and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

     This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2005.

"SELLER"

**WINN-DIXIE STORES, INC.,** a Florida corporation


By: _____
Name: _____
Title: _____

EXHIBIT B
Page 2 of 2

**EXHIBIT C-1**
**To**
**Asset Purchase Agreement**

**INDIVIDUAL STORE CLOSING STATEMENT**

| | |
|---|---|
| **BUYER:** | Alima Corporation, a Florida corporation |
| **SELLER:** | Winn-Dixie Stores, Inc., a Florida corporation |
| **ESCROW AGENT and**<br>**SETTLEMENT AGENT:** | _____ |
| **Property:** | Store No. 332 |
| **CLOSING DATE:** | _____, 2005 |

**SELLER'S STATEMENT**

**BASE PURCHASE PRICE:**

Leasehold:                                                        $_____

FF&E:                                                             $_____

BASE PURCHASE PRICE:                                              $_____

**SUPPLIES PRICE:**                                              $_____

**TOTAL  BASE PURCHASE PRICE AND**
**SUPPLIES PRICE:**

                                                                 $_____

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and            $_____
Other Charges Payable Under Lease (1)

Buyer's Prorated Share of Rents Paid in         $_____
Advance **[Under Sublease (2)]**

**Total Debit Adjustments:**                    $_____

**Plus Adjustments (Credit):**                                   $_____

Exhibit C-1
Page 1 of 10

Seller's Prorated Share of Rents and
Other Charges Paid in Advance Under
Lease (3)                                                          $_____

Environmental Assessment Costs Paid by                             $_____
Seller

[Other]                                                           $_____

  **Total Credit Adjustments:**                                    $_____

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs              $_____

Seller's Brokerage Fees                       $_____

Cure Costs                                    $_____

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER**                                           $_____


<u>**BUYER'S STATEMENT**</u>

**ALLOCATED BASE PURCHASE**              $_____
**PRICE:**

**SUPPLIES PRICE:**                      $_____

**TOTAL BASE PURCHASE PRICE AND**
**SUPPLIES PRICE:**
                                                                   $_____

<u>**Less Adjustments (Credit)**</u>**:**

Allocated Amount of Base Deposit                                  $_____

Seller's Prorated Share of Rents and                              $_____
Other Charges Paid in Advance Under
Lease (1)

[Other]                                                           $_____

**Total Debit Adjustments:**

Exhibit C-1
Page 2 of 8

**Plus Adjustments (Debit):**                                              $_____

Seller's Prorated Share of Rents and          $_____
Other Charges Paid in Advance Under
Lease (3)

Environmental Assessment Costs Paid by        $_____
Seller

[Other]                                        $_____

  **Total Credit Adjustments:**                                 $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs               $_____

Title Insurance Premiums(4)                   $_____

Title Examination Fees                        $_____

Transfer/Documentary Taxes                    $_____

Buyer's Brokerage Fees                        $_____

Closing Escrow Fees                           $_____

Inventory Service Fees(8)                     $_____

**Total Buyer's Closing Costs:**              $_____

**AMOUNT DUE FROM BUYER**                                      $_____

**ALLOCATED AMOUNT OF BASE**                                  $_____
**DEPOSIT**

**TOTAL AMOUNT DUE AT CLOSING**                               $_____

## SCHEDULE OF DISBURSEMENTS

| | | |
|---|---|---|
| 1. | Allocated Amount of Base Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | The Blackstone Group L.P. | ($_____) |
| | (Seller's Brokers Fees) | |
| 2. | The Food Partners, LLC | ($_____) |

Exhibit C-1
Page 3 of 8

|   | (Seller's Brokers Fees) | |
|---|---|---|
| 3. | DJM Asset Management, LLC | ($_____) |
|   | (Seller's Brokers Fees) | |
| 4. | _____ Title Insurance Company | ($_____) |
|   | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | |
| 5. | _____ | |
|   | Transfer/Documentary Taxes | |
| 6. | **[Name of Inventory Service]** | ($_____) |
|   | (Inventory Service Fees) | |
| 7. | _____ | ($_____) |
|   | (Lease Cure Costs, if any) | |
| 8. | _____ | ($_____) |
|   | (Sublease Cure Costs, if any) | |
| 9. | Seller | ($_____) |
|   | (Seller's Proceeds) | |
| [10.] | [Other] | ($_____) |

**TOTAL DISBURSEMENTS:**

**Notes:**

(1) <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>.  Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease.  Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store # 332
- 2005 Real Estate Taxes                    $
- Per Diem Tax Amount                        $
- Seller's Share of 2005 Taxes
  (1/1/05 - __/__/05) (_____ days)     $_____          _____
**Total Real Estate Taxes:**

**Personal Property Taxes**

Store # 332
- 2005 Personal Property Taxes          $
- Per Diem Tax Amount                        $
- Seller's Share of 2005 Taxes
  (1/1/05 - __/__/05) (_____ days)     $_____          _____
**Total Personal Property Taxes:**

Exhibit C-1
Page 4 of 8

**CAM Charges**

Store # 332
- 2005 CAM Charges                                $
- Per Diem Amount                                 $
- Seller's Share of 2005 CAM Charges
  (__/__/__ - __/__/05) (_____ days)    $_____        _____
**Total CAM Charges:**

**Insurance**

Store # 332
- 2005 Insurance                                  $
- Per Diem Amount                                 $
- Seller's Share of 2005 Insurance
  (__/__/__ - __/__/05) (_____ days)    $_____
**Total Insurance:**
**Total Amount of Seller's Prorated
Share  of 2005 Prorations:**                                          _____

(2)        _____, 2005 Sublease Prorations - Amounts Previously Received by Seller.  Prorations are based on _____, 2005 rents previously paid to Seller in accordance with Sublease.  Buyer will be responsible for the collection of such charges that become due and payable for _____, 2005 and thereafter.  Prorations are as follows:

Store # _____
- Total _____, 2005 rent paid:        $
- Per diem rent:                             $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)      $_____
**Total Amount of Seller's Prorated Share of _____ Prorations:**

(3)        _____, 2005 Prorations - Amounts Previously Paid by Seller.  Prorations are based on _____, 2005 rents, common area maintenance assessments and other charges previously paid by Seller in accordance with applicable Lease.  Buyer will be responsible for the payment of such charges that become due and payable for _____, 2005 and thereafter.  Prorations are as follows:

**Rent**

Store # 332
- Total _____, 2005 rent paid:        $
- Per diem rent:                             $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)      $_____

Exhibit C-1
Page 5 of 8

- Per diem rent:                              $
- Buyer's prorated share
   (__/__/__ - __/__/05) (_____ days)         $ _____    _____

**Total Amount of Buyer's Prorated Share of _____ Prorations:**


(4)    <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

<u>Store #332</u>
- Title Search Fees and Costs               $               -
- Title Premium                             $               -

   **Total Amount of Title Fees and Expenses:**

(5)    <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the respective utility companies.  Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof.  Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6)    <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7)    <u>Inventory Purchase Price and Adjustments</u>.  To the extent Inventory has acquired Inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement between Seller and Buyer dated as of even date herewith.  Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

Exhibit C-1
Page 6 of 8

(8)     Inventory Service Fees. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices.  Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)     Capitalized Terms.  Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.


## STIPULATIONS

1.  Purchase Agreement.  This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").

2.  Authorization to Disburse.  By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

3.  Counterparts.  This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.  To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4.  Adjustments.    Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

Exhibit C-1
Page 7 of 8

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                    **BUYER:**

**WINN-DIXIE STORES, INC.**                    **ALIMA CORPORATION,**
a Florida corporation                          a Florida corporation

By: _____                By: _____

Name: _____                Name: _____

Title: Vice President                          Title: _____

                                               _____

Exhibit C-1
Page 8 of 8

Exhibit C-2

To Asset Purchase Agreement

Form of Inventory Closing Statement

**INVENTORY CLOSING STATEMENT**

| | |
|---|---|
| **SELLER** | Winn-Dixie Stores, Inc., a Florida corporation |
| **BUYER:** | Alima Corporation, a Florida corporation |
| **TRANSACTION:** | Acquisition of Leasehold Interest in Store 332 |
| **BASE PURCHASE PRICE:** | Under Separate Closing Statement |

**INVENTORY PRICE (2):**

$_____

_____

**CLOSING DATE:** _____, 2005

**SELLER'S STATEMENT**

| Inventory Price | | | $ |
|---|---|---|---|

**Less Adjustments:**

| 1. | Ten Percent of Inventory Price | | |
|---|---|---|---|
| | Retained by Escrow Agent | $ _____ | |
| | **Total Adjustments:** | $ | $ ( _____ ) |
| **TOTAL AMOUNT DUE TO SELLER:** | | | $ _____ |

**BUYER'S STATEMENT**

| Inventory Price | | $ |
|---|---|---|

**Plus Closing Costs to be Paid by Buyer:**

| 1. | Inventory Service Fees (3) | _____ $ |
|---|---|---|

Exhibit C-2

Page 1 of 3

(Direct Payment or Reimbursement
to Seller)
   **Total Buyer's Inventory Closing
   Costs:**                              $                    $ _____

**AMOUNT DUE FROM BUYER:**                                   $ _____

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this day of July, 2004, and hereby authorize **[Title Insurer]**, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

                                                  **BUYER:**

                                                  **ALIMA CORPORATION**, a Florida
                                                  corporation
**WINN-DIXIE STORES, INC.**, a Florida
corporation

By:_____
Name:_____                        By:_____
Title: _____ President                    Name:_____
                                                  Title: _____

**Notes:**

(1)    Adjustments.   Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(2)    Inventory Price Adjustments.  The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement. The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period. To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

Exhibit C-2
Page 2 of 3

(3)    Inventory Service Fees. The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same. Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4)    Capitalized Terms. Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

RECEIPTS:

1.    Total Amount Due From Buyer        $ _____

TOTAL CASH RECEIVED:                     $              $ _____

DISBURSEMENTS:

1.    Winn-Dixie Stores, Inc.                          $ _____
      (Seller's Proceeds and Reimbursement of Inventory Service Fee)

TOTAL DISBURSEMENTS:                                   $ _____
BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT
PURSUANT TO PURCHASE AGREEMENT:
                                                      $ _____

Exhibit C-2
Page 3 of 3

**EXHIBIT D**
**To Asset Purchase Agreement**

<u>Schedule of Certain Excluded Personal Property</u>

[see attached schedules]

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records.  Prepared by Management

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0332 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M2921 | 5/15/2001 | CLC | 28751 | $35.17 | 48 | 6/30/2005 | POS |
| 0332 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M4793 | 5/15/2001 | CLC | 28751 | $35.18 | 48 | 6/30/2005 | POS |
| 0332 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDFH8 | 5/15/2001 | CLC | 28751 | $6.69 | 48 | 6/30/2005 | Personal Computers |
| 0332 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDFL2 | 5/15/2001 | CLC | 28751 | $6.70 | 48 | 6/30/2005 | Personal Computers |
| 0332 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 0332 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 0332 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | H87M11 | 7/17/2002 | CLC | 32942 | $181.37 | 36 | 7/31/2005 | Servers |
| 0332 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | 77CK11 | 7/17/2002 | CLC | 32942 | $68.44 | 36 | 7/31/2005 | Servers |
| 0332 | DCC | E551 | 15MO | DELL E551 15INCH | | | 7/17/2002 | CLC | 32942 | $0.00 | 36 | 7/31/2005 | Personal Computers |

Other Leased Equipment
None

Privileged and Confidential

EXHIBIT E

[intentionally omitted]

EXHIBIT F
To Asset Purchase Agreement

Permitted Encumbrances

1.  Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2005 and subsequent years.

2.  All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.  Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.  Rights of Landlord under the Lease, including the rights of any Landlord's mortgagee.

5.  Rights of Subtenant under the Sublease.

6.  All matters set forth as exceptions in the Initial Title Reports or the site plans, other than Monetary Liens.

7.  All other matters set forth as exceptions in those Title Reports other than the Initial Title Reports, other than Monetary Liens.

8.  All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

EXHIBIT G
To Asset Purchase Agreement

Form of
Lease Assignment

**ASSIGNMENT AND ASSUMPTION OF LEASE**
[Store #332]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 2005 (the "Effective Date"), by and between **WINN-DIXIE STORES, INC.** a Florida corporation (hereinafter referred to as "Assignor"), and **ALIMA CORPORATION,** a Florida corporation (hereinafter referred to as "Assignee");

**R E C I T A L S :**

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached Exhibit A (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective _____, 2005 by and among Assignor, as seller, Assignee, as buyer, as amended from time to time (the "Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on the attached Exhibit A (the "Lease"), and all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, together with all amendments thereto, described on Exhibit A (collectively, whether one or more, the "Sublease"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Sublease after the Effective Date, all subject to and in accordance with the terms of the Lease, the Sublease, the Agreement and this Assignment;

**NOW, THEREFORE,** in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **EFFECTIVE DATE**.  This Assignment shall be effective as of the Effective Date.

2.    **ASSIGNMENT**.

    (a)    Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

(b)   Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to the Sublease and all the rights, benefits and privileges of the landlord or lessor thereunder.

3.   **ASSUMPTION; ACCEPTANCE OF PREMISES**.

(a)   Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b)   Assignee hereby accepts the aforesaid assignment of the Sublease and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Sublease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Sublease on or after the Effective Date.

(c)   Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate. Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations.   Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor.  Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4.   **NOTICES**.  All notices, requests, demands, and other communications required

or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below.  Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received  by the transmitting party if not during normal business hours for the recipient.

| | |
|---|---|
| If to Assignor: | Winn-Dixie Stores, Inc.; Re: Store #332<br>5050 Edgewood Court<br>Jacksonville, FL 32254-3699<br>Attn: Chief Financial Officer<br>Telefax No.: 904/783-5646 |
| With a copy to: | Winn-Dixie Stores, Inc.<br>5050 Edgewood Court<br>Jacksonville, FL 32254-3699<br>Attn: Office of General Counsel<br>Telefax No.: 904/783-5641 |

or to such other address or telefax number as Assignor may direct from time to time.

| | |
|---|---|
| If to Assignee: | Alima Corporation<br>2828 Coral Way, Suite 30<br>Miami, FL  33145<br>Attn:  Manual Marin<br>Telefax No. 305/442-8915<br><br>and<br><br>Gaston R. Alvarez, P.A.<br>2701 Le Jeune Road, Suite 407<br>Coral Gables, FL  33134<br>Telefax No. 305/441-9109<br>Email: agaston0@bellsouth.net |

or to such other address or Telefax number as Assignee may direct from time to time.

EXHIBIT G
Page 3 of 8

5.    **NOTICE OF ASSIGNMENT**. On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Assignment.

6.    **BINDING EFFECT**. This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7.    **FURTHER ASSURANCES**. Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

8.    **NO BROKERS**. The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B. Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment.    Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises. Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

9.    **ATTORNEYS' FEES**. If Assignor becomes a party to any suit or proceeding affecting the Premises or involving this Assignment or Assignee's interest under this Assignment, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Assignment, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Assignment, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand. All references in this Assignment to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all

post-judgment and appellate levels and in connection with bankruptcy proceedings.

10.    **WAIVER OF JURY TRIAL**.  Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Sublease makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease or the Sublease undesirable.  Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Sublease.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE STORES, INC.**, a Florida corporation

_____

Name:_____

By:_____
Name: _____
Title: Vice President

_____

Name:_____

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

**ALIMA CORPORATION,** a Florida
corporation
By:_____
Name:_____

_____

Name:_____

Title:_____

[SEAL]

_____

Name:_____

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

EXHIBIT G
Page 6 of 8

Exhibit A

<u>Description of Premises and Lease</u>

<u>STORE #</u>:

<u>STREET ADDRESS</u>:

<u>SHOPPING CENTER</u>:

<u>LEASE</u>:

<u>AMENDMENTS TO LEASE</u>:

<u>SUBLEASE(S)</u>:

<u>AMENDMENTS TO SUBLEASE(S)</u>:

Exhibit B

<u>Schedule of Brokers</u>

<u>EXHIBIT B-1</u>

<u>ASSIGNOR'S BROKERS</u>:

      The Food Partners, LLC
      1250 Eye Street, N.W.
      Suite 850
      Washington, D.C.  20005

<u>EXHIBIT B-2</u>

<u>ASSIGNEE'S BROKERS</u>:

EXHIBIT H
to Asset Purchase Agreement

Form of Inventory Certificate

**INVENTORY CERTIFICATE**

| | | | |
|---|---|---|---|
| Store #: _____ | | Date: _____/_____/ | |
| Store Address: | | Time: _____ : _____ AM  PM | |

| | Inventory Taken @ Retail | Valuation Percentage | Inventory @ Cost |
|---|---|---|---|
| Dry Grocery Taken @ Retail | $ | x  60.00% | $ |
| Frozen Grocery Taken @ Retail | $ | x  60.00% | $ |
| Dairy Taken @ Retail | $ | x  60.00% | $ |
| Tobacco Taken @ Retail | $ | x  60.00% | $ |
| Alcohol Taken @ Retail | $ | x  60.00% | $ |
| Packaged Lunch Meats Taken @ Retail | $ | x  60.00% | $ |
| Pharmaceutical Taken @ Cost | | | $ |
| Gasoline Taken @ Cost | | | $ |
| | $ | x  _____% | $ |
| | $ | x  _____% | $ |
| | $ | x  _____% | $ |
| Total Inventory | | | $ |

_____     ____/____/____
Seller's Authorized Agent                          Date

_____     ____/____/____
Buyer's Authorized Agent                          Date