Store Number # 1914

## LIST OF EXHIBITS

| Exhibit A-1 | - | Description of Store |
| Exhibit A-2 | - | Description of Lease and Leased Premises |
| Exhibit B | - | Form of Bill of Sale |
| Exhibit C-1 | - | Form of Closing Statement |
| Exhibit C-2 | - | Form of Inventory Closing Statement |
| Exhibit D | - | Schedule of Certain Excluded Personal Property |
| Exhibit E | - | Base Purchase Price Allocation; Deposits |
| Exhibit F | - | Permitted Encumbrances |
| Exhibit G | - | Form of Conveyance Instrument |
| Exhibit H | - | Form of Inventory Certificate |

EXHIBIT A-1
To Asset Purchase Agreement

Description of Store

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 1914 | 7950 Highway 72 West | Madison | Madison | Alabama |

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

## WINN-DIXIE STORE # 1914
Madison, Alabama

Lease:            Lease dated October 14, 1993 between Still Hunter, Jr., as Landlord, and Winn-Dixie Montgomery, Inc., as Tenant;

                  as evidenced by Short Form Lease dated October 14, 1993, recorded in Book 0827, Page 0538, of the public records of Madison County, Alabama

Amendments/
Guaranty:         Guaranty dated October 22, 1993

                  First Amendment to Lease Agreement dated March 4, 1994

                  Supplemental Lease Agreement dated February 16, 1995

                  Assignment and Assumption of Landlord's Interest in Leases dated March 10, 1995, recorded in Deed Book 0850, Page 0970, of the Probate Records of Madison County, Alabama

Premises:         That certain store building and related improvements located at 7950 Highway 72 West, Madison, Madison County, Alabama

Legal Description:  The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

EXHIBIT A-2
Page 1 of 1

## LEGAL DESCRIPTION

### Shopping Center Parcel

ALL THAT PART OF THE NORTHWEST QUARTER OF SECTION 28, TOWNSHIP 3 SOUTH, RANGE 2 WEST OF THE HUNTSVILLE MERIDIAN, MADISON COUNTY, ALABAMA.

PARTICULARLY DESCRIBED AS BEGINNING AT AN IRON STAKE ON THE EASTERLY MARGIN OF WALL-TRIANA HIGHWAY; SAID POINT OF TRUE BEGINNING IS FURTHER DESCRIBED AS BEING SOUTH 02 DEGREES 35 MINUTES 23 SECONDS WEST, 1801.23 FEET; AND SOUTH 87 DEGREES 24 MINUTES 37 SECONDS EAST, 40.00 FEET FROM THE NORTHWEST CORNER OF SECTION 28, TOWNSHIP 3 SOUTH, RANGE 2 WEST.

THENCE FROM THE POINT OF TRUE BEGINNING,ALONG THE EASTERLY MARGIN OF WALL-TRIANA HIGHWAY, NORTH 02 DEGREES 35 MINUTES 23 SECONDS EAST, 193.91 FEET TO A POINT ON A CURVE AT THE SOUTHWESTERLY CORNER OF OUT PARCEL "A";

THENCE AROUND SAID CURVE TO THE LEFT, WITH A RADIUS OF 27.00 FEET AND A CHORD BEARING AND DISTANCE OF SOUTH 76 DEGREES 39 MINUTES 05 SECONDS EAST, 22.65 FEET TO A POINT AT THE P.T. OF THE CURVE;

THENCE NORTH 78 DEGREES 33 MINUTES 09 SECONDS EAST, 66.40 FEET TO A POINT;

THENCE NORTH 65 DEGREES 38 MINUTES 28 SECONDS EAST, 75.90 FEET TO A POINT;

THENCE NORTH 11 DEGREES 28 MINUTES 57 SECONDS WEST, 74.62 FEET TO A POINT;

THENCE NORTH 24 DEGREES 18 MINUTES 43 SECONDS EAST, 70.24 FEET TO A POINT;

THENCE NORTH 11 DEGREES 28 MINUTES 57 SECONDS WEST, 108.59 FEET TO A POINT ON A CURVE;

THENCE AROUND SAID CURVE TO THE LEFT, WITH A RADIUS OF 57.65 FEET AND A CHORD BEARING AND DISTANCE OF NORTH 80 DEGREES 56 MINUTES 57 SECONDS WEST, 40.47 FEET TO A POINT AT THE P.T. OF THE CURVE;

THENCE SOUTH 78 DEGREES 30 MINUTES 03 SECONDS WEST, 62.62 FEET TO A POINT AT THE P.C. OF A CURVE TO THE LEFT;
THENCE AROUND SAID CURVE TO THE LEFT, WITH A RADIUS OF 63.50 FEET, AND A CHORD BEARING AND DISTANCE OF SOUTH 59 DEGREES 03 MINUTES 18 SECONDS WEST, 42.26 FEET TO A POINT ON THE EASTERLY MARGIN OF WALL-TRIANA HIGHWAY AND THE NORTHWESTERLY CORNER OF OUT PARCEL "A";

THENCE ALONG THE EASTERLY MARGIN OF SAID HIGHWAY, NORTH 02 DEGREES 35 MINUTES 23 SECONDS EAST, 74.31 FEET TO AN IRON STAKE;

THENCE NORTH 78 DEGREES 30 MINUTES 03 SECONDS EAST, 733.04 FEET TO A POINT;

THENCE SOUTH 11 DEGREES 28 MINUTES 57 SECONDS EAST, 467.44 FEET TO A POINT AT THE NORTHEASTERLY CORNER OF OUT PARCEL "C";

THENCE SOUTH 78 DEGREES 30 MINUTES 03 SECONDS WEST, 172.00 FEET TO A POINT;

THENCE SOUTH 11 DEGREES 28 MINUTES 57 SECONDS EAST, 232.56 FEET TO A POINT ON THE NORTHERLY MARGIN OF U.S. HIGHWAY NUMBER 72 (WEST) AND THE SOUTHWESTERLY CORNER OF OUT PARCEL "C";

THENCE ALONG THE NORTHERLY MARGIN OF SAID HIGHWAY NUMBER 72, SOUTH 78 DEGREES 30 MINUTES 03 SECONDS WEST, 331.80 FEET TO A POINT AT THE SOUTHEASTERLY CORNER OF OUT PARCEL "B";

THENCE NORTH 11 DEGREES 28 MINUTES 57 SECONDS WEST, 236.18 FEET TO A POINT AT THE NORTHEASTERLY CORNER OF OUT PARCEL "B";

THENCE SOUTH 78 DEGREES 30 MINUTES 03 SECONDS WEST, 139.72 FEET TO A POINT AT THE NORTHWESTERLY CORNER OF OUT PARCEL "B";

THENCE SOUTH 02 DEGREES 35 MINUTES 28 SECONDS WEST, 43.51 FEET TO AN IRON STAKE AT THE NORTHEASTERLY CORNER OF THE SHELL FOOD MART SERVICE STATION PROPERTY;

THENCE SOUTH 78 DEGREES 33 MINUTES 09 SECONDS WEST, 206.18 FEET TO THE POINT OF TRUE BEGINNING AND CONTAINING 9.5177 ACRES MORE OR LESS.

EXHIBIT "B"

1914
7950 Highway 72 West
Madison, AL

EXHIBIT B
To Asset Purchase Agreement

Form of

**BILL OF SALE**

**WINN-DIXIE MONTGOMERY, INC.,** a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2005, among **STAR MARKET, INC.,** an Alabama corporation, ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Lease and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF,** Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2005.

"SELLER"

**WINN-DIXIE MONTGOMERY, INC.,** a Florida corporation

By: _____
Name: _____
Title: _____

**EXHIBIT C-1**
**To**
**Asset Purchase Agreement**

**INDIVIDUAL STORE CLOSING STATEMENT**

**BUYER:**                    Star Market, Inc., an Alabama corporation

**SELLER:**                  Winn-Dixie Montgomery, Inc., a Florida corporation

**ESCROW AGENT and**        _____
**SETTLEMENT AGENT:**

**Property:**                Store No. 1914

**CLOSING DATE:**            _____, 2005

**SELLER'S STATEMENT**

**BASE PURCHASE PRICE:**

Leasehold:                                                    $_____

FF&E:                                                         $_____

BASE PURCHASE PRICE:                                          $_____

**SUPPLIES PRICE:**                                           $_____

**TOTAL  BASE PURCHASE PRICE AND**
**SUPPLIES PRICE:**
                                                              $_____

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and         $_____
Other Charges Payable Under Lease (1)

Buyer's Prorated Share of Rents Paid in      $_____
Advance **[Under Sublease (2)]**

**Total Debit Adjustments:**                 $_____

**Plus Adjustments (Credit):**                                $_____

Exhibit C-1
Page 1 of 10

Seller's Prorated Share of Rents and
Other Charges Paid in Advance Under
Lease (3)                                                   $_____

Environmental Assessment Costs Paid by                      $_____
Seller

[Other]                                                     $_____

   Total Credit Adjustments:                                $_____

NET DEBIT/CREDIT TO SELLER

Less Closing Costs Payable by Seller:

Seller's Attorneys' Fees & Costs          $_____

Seller's Brokerage Fees                   $_____

Cure Costs                                $_____

Total Seller's Closing Costs:

AMOUNT DUE TO SELLER                                        $_____


## BUYER'S STATEMENT

ALLOCATED BASE PURCHASE            $_____
PRICE:

SUPPLIES PRICE:                    $_____

TOTAL BASE PURCHASE PRICE AND
SUPPLIES PRICE:
                                                           $_____

Less Adjustments (Credit):

Allocated Amount of Base Deposit                            $_____

Seller's Prorated Share of Rents and                       $_____
Other Charges Paid in Advance Under
Lease (1)

[Other]                                                    $_____

Total Debit Adjustments:

Exhibit C-1
Page 2 of 8

**Plus Adjustments (Debit):**                                                     $_____

Seller's Prorated Share of Rents and                    $_____
Other Charges Paid in Advance Under
Lease (3)

Environmental Assessment Costs Paid by          $_____
Seller

[Other]                                                                    $_____

  **Total Credit Adjustments:**                                        $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs                          $_____

Title Insurance Premiums(4)                                  $_____

Title Examination Fees                                          $_____

Transfer/Documentary Taxes                               $_____

Buyer's Brokerage Fees                                       $_____

Closing Escrow Fees                                           $_____

Inventory Service Fees(8)                                      $_____

**Total Buyer's Closing Costs:**                          $_____

**AMOUNT DUE FROM BUYER**                                                $_____

**ALLOCATED AMOUNT OF BASE**                                             $_____
**DEPOSIT**

**TOTAL AMOUNT DUE AT CLOSING**                                          $_____

## SCHEDULE OF DISBURSEMENTS

1.    Allocated Amount of Base Deposit from Escrow Agent        $_____
2.    Amount Due From Buyer                                     $_____

**TOTAL RECEIPTS:**                                                      $_____

1.    The Blackstone Group L.P.                                 ($_____)
    (Seller's Brokers Fees)
2.    The Food Partners, LLC                                    ($_____)

Exhibit C-1
Page 3 of 8

|   |   |   |
|---|---|---|
|   | (Seller's Brokers Fees) |   |
| 3. | DJM Asset Management, LLC | ($_____) |
|   | (Seller's Brokers Fees) |   |
| 4. | _____ Title Insurance Company | ($_____) |
|   | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees |   |
| 5. | _____ |   |
|   | Transfer/Documentary Taxes |   |
| 6. | **[Name of Inventory Service]** | ($_____) |
|   | (Inventory Service Fees) |   |
| 7. | _____ | ($_____) |
|   | (Lease Cure Costs, if any) |   |
| 8. | _____ | ($_____) |
|   | (Sublease Cure Costs, if any) |   |
| 9. | Seller | ($_____) |
|   | (Seller's Proceeds) |   |
| [10.] | [Other] | ($_____) |

**TOTAL DISBURSEMENTS:**

**Notes:**

(1)   <u>2005 Prorations - Amounts Not Yet Paid and Payable.</u>  Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease.  Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store # _____

| | |
|---|---|
| - 2005 Real Estate Taxes | $ |
| - Per Diem Tax Amount | $ |
| - Seller's Share of 2005 Taxes (1/1/05 - __/__/05) (_____ days) | $ _____ |

**Total Real Estate Taxes:**

**Personal Property Taxes**

Store # _____

| | |
|---|---|
| - 2005 Personal Property Taxes | $ |
| - Per Diem Tax Amount | $ |
| - Seller's Share of 2005 Taxes (1/1/05 - __/__/05) (_____ days) | $ _____ |

**Total Personal Property Taxes:**

Exhibit C-1
Page 4 of 8

**CAM Charges**

Store # _____

| | |
|---|---|
| - 2005 CAM Charges | $ |
| - Per Diem Amount | $ |
| - Seller's Share of 2005 CAM Charges | |
| (__/__/__ - __/__/05) (_____ days) | $ _____ |

**Total CAM Charges:**                                    _____

**Insurance**

Store # _____

| | |
|---|---|
| - 2005 Insurance | $ |
| - Per Diem Amount | $ |
| - Seller's Share of 2005 Insurance | |
| (__/__/__ - __/__/05) (_____ days) | $ _____ |

**Total Insurance:**
**Total Amount of Seller's Prorated**
**Share of 2005 Prorations:**                            _____

(2)       _____, 2005 Sublease Prorations - Amounts Previously Received by Seller. Prorations are based on _____, 2005 rents previously paid to Seller in accordance with Sublease. Buyer will be responsible for the collection of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

Store # _____

| | |
|---|---|
| - Total _____, 2005 rent paid: | $ |
| - Per diem rent: | $ |
| - Buyer's prorated share | |
| (__/__/__ - __/__/05) (_____ days) | $ _____ |

**Total Amount of Seller's Prorated Share of _____ Prorations:**

(3)       _____, 2005 Prorations - Amounts Previously Paid by Seller. Prorations are based on _____, 2005 rents, common area maintenance assessments and other charges previously paid by Seller in accordance with applicable Lease. Buyer will be responsible for the payment of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

**Rent**

Store # _____

| | |
|---|---|
| - Total _____, 2005 rent paid: | $ |
| - Per diem rent: | $ |
| - Buyer's prorated share | |
| (__/__/__ - __/__/05) (_____ days) | $ _____ |

Exhibit C-1
Page 5 of 8

- Per diem rent:                                      $
- Buyer's prorated share
 (__/__/__ - __/__/05) (_____ days)          $ _____  _____
**Total Amount of Buyer's Prorated Share of _____ Prorations:**


(4)    <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

Store # _____
- Title Search Fees and Costs              $                    -
- Title Premium                            $ _____  -
   **Total Amount of Title Fees and Expenses:**

(5)    <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the respective utility companies.  Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6)    <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7)    <u>Inventory Purchase Price and Adjustments</u>.  To the extent Inventory has acquired inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement  between Seller and Buyer dated as of even date herewith.  Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

Exhibit C-1
Page 6 of 8

(8)    <u>Inventory Service Fees</u>. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices. Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)    <u>Capitalized Terms</u>. Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

## STIPULATIONS

1.    <u>Purchase Agreement</u>. This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").

2.    <u>Authorization to Disburse</u>. By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

3.    <u>Counterparts</u>. This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4.    <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

Exhibit C-1
Page 7 of 8

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**WINN-DIXIE MONTGOMERY, INC.,**
a Florida corporation

By: _____

Name: _____

Title: Vice President

**BUYER:**

**STAR MARKET, INC.,** an Alabama corporation

By: _____

Name: Darden Heritage

Title: President

Exhibit C-1
Page 8 of 8

Exhibit C-2

To Asset Purchase Agreement

Form of Inventory Closing Statement

**INVENTORY CLOSING STATEMENT**

**SELLER**                          Winn-Dixie Montgomery, Inc., a Florida corporation

**BUYER:**                          Star Market, Inc., an Alabama corporation

**TRANSACTION:**                    Acquisition of Leasehold Interest in Store #1914

**BASE PURCHASE PRICE:**            Under Separate Closing Statement

**INVENTORY PRICE (2):**

                                    $_____

                                    _____

**CLOSING DATE:** _____ , 2005 _____

**SELLER'S STATEMENT**

**Inventory Price**                                                    $

**Less Adjustments:**

    1.          Ten Percent of Inventory Price
                        Retained by Escrow Agent            $ _____
                                **Total Adjustments:**       $              $   (_____)
**TOTAL AMOUNT DUE TO SELLER:**                                            $ _____

**BUYER'S STATEMENT**

**Inventory Price**                                                    $

**Plus Closing Costs to be Paid by Buyer:**
    1.          Inventory Service Fees (3)      _____ $

Exhibit C-2
Page 1 of 3

(Direct Payment or Reimbursement
to Seller)
   **Total Buyer's Inventory Closing
Costs:**                  $               $ _____

**AMOUNT DUE FROM BUYER:**                 $ _____

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this day of July, 2004, and hereby authorize **[Title Insurer]**, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**BUYER:**

**STAR MARKET, INC.,** an Alabama
corporation

**WINN-DIXIE MONTGOMERY, INC.,** a Florida
corporation

By: _____

Name: _____

Title: _____ President

By: _____

Name: Darden Heritage

Title:   President

**Notes:**

(1)     <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(2)     <u>Inventory Price Adjustments</u>. The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement. The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period. To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

Exhibit C-2
Page 2 of 3

(3)    <u>Inventory Service Fees</u>.  The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same.  Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4)    <u>Capitalized Terms</u>.  Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

<u>RECEIPTS</u>:

1.    Total Amount Due From Buyer            $ _____

TOTAL CASH RECEIVED:                         $                    $ _____

<u>DISBURSEMENTS</u>:

1.    Winn-Dixie Montgomery, Inc.                        $ _____
      (Seller's Proceeds and Reimbursement of Inventory Service Fee)

TOTAL DISBURSEMENTS:                                     $ _____
BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT
PURSUANT TO PURCHASE AGREEMENT:
                                                        $ _____

Exhibit C-2
Page 3 of 3

EXHIBIT D
To Asset Purchase Agreement

<u>Schedule of Certain Excluded Personal Property</u>

[see attached schedules]

Project Jaguar
Leased Equipment List

Source:  Jaguar internal accounting records.  Prepared by Management.

1914

| | | | | Description | Qty | Serial | Date | | Price | Term | Date | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1914 | IBM | 8477 | 42Y | NETFINITY 1000 PL | 1 | M0715 | 5/15/2001 | CLC | 28777 | $35.17 | 48 | 6/30/2005 POS |
| 1914 | IBM | 8477 | 42Y | NETFINITY 1000 PL | 1 | M4779 | 5/15/2001 | CLC | 28777 | $35.18 | 48 | 6/30/2005 POS |
| 1914 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDAY6 | 5/15/2001 | CLC | 28777 | $6.69 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDAY7 | 5/15/2001 | CLC | 28777 | $6.70 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | TPH93 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | TPV58 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | TPV78 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | TPV79 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | TPX85 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | TPX93 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | TF212 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | VMV13 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | VMW37 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | VNX12 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | VNX14 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 4694 | S45 | POS REGISTER | 1 | VNX26 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 POS |
| 1914 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CPW20 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRA60 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRA62 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRA64 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRA71 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRB42 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRB44 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRB45 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRB46 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 Personal Computers |
| 1914 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 Software |
| 1914 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 Software |
| 1914 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | 1VIL11 | 7/17/2002 | CLC | 32538 | $161.37 | 36 | 7/31/2005 Servers |
| 1914 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | 6YRB11 | 7/17/2002 | CLC | 32538 | $68.44 | 36 | 7/31/2005 Servers |
| 1914 | TEL | 960BULK | XDS | 900MHZ(093RADIO) | 1 | 002069 | 7/17/2002 | CLC | 34098 | $16.36 | 36 | ######## Radio Frequency |
| 1914 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 7/17/2002 | CLC | 32538 | $0.00 | 36 | 7/31/2005 Personal Computers |

Other Leased Equipment
Health Resource Computer System
Health Clinic Blood Pressur Machine
IVR Equipment

Privileged and Confidential

EXHIBIT E

[intentionally omitted]