KELLEY DRYE & WARREN LLP        **Hearing Date: July 29, 2005 at 10:00 a.m.**
101 Park Avenue
New York, New York 10178
James S. Carr ( JC-1603)
Robert L. LeHane ( RL-9422)
Tel: (212) 808-7800
Fax: (212) 808-7897

   -and-

HELD & ISRAEL
1301 Riverplace Blvd., Ste. 1916
Jacksonville, FL  32207-9024
Edwin W. Held (0162574)
Tel: (904) 398-7036
Fax:  (904) 398-4283

Attorneys for JDN Realty Corporation

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

---

| | |
|---|---|
| In re: | )    Case No.  05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., *et al.*, | )    Chapter 11 |
| | ) |
| Debtors. | )    Jointly Administered |
| | ) |

---

**OBJECTION OF JDN REALTY CORPORATION TO (I) ASSIGNMENT OF LEASE
FOR STORE 2718, CHAMBLEE, GA, TO CKP INTERNATIONAL, INC.
AND (II) WAIVER OF THE TEN DAY STAY PERIOD REQUIRED BY RULES
6004(g) AND 6006(d) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

JDN Realty Corporation (the "Landlord"), by and through its counsel, Kelley Drye &

Warren LLP and Held & Israel, hereby submits this Objection (the "Objection") to the Supplement

to Motion (the "Supplemental Motion"), dated July 21, 2005, of Winn-Dixie Stores, Inc. ("Winn-

Dixie") and its debtor affiliates and subsidiaries (collectively, the "Debtors") for authorization to,

among other things, assume and assign leases, and the Amended Notice of Filing and Hearing (the

"Notice") dated July 19, 2005, providing notice of the Debtors' intent to enter into an asset purchase

agreement with, and to assume and assign the Debtors' lease for Winn-Dixie Store No. 2718

(the "Lease") located at the Chamblee Plaza Shopping Center (the "Shopping Center"), 5528

Peachtree Industrial Boulevard, Chamblee, Georgia (the "Leased Premises"), to CKP International

Foods, Inc. ("CKP"). The Landlord also objects to the Debtors' request for waiver of the ten day

stay period mandated by Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"). In support of the Objection, the Landlord respectfully represents as

follows:

## PRELIMINARY STATEMENT

1.      The Landlord objects to the Debtors' proposed assignment of the Lease to the

Buyer on two grounds. First, the Debtors have failed to provide adequate assurance of future

performance under the Lease as required by section 365(f)(2) and (b)(3) of the Bankruptcy Code.

Specifically, the Debtors have failed to prove that CKP's financial condition and operating

performance are similar to the financial condition and operating performance of the Debtors when

the Lease was executed. As such, the Debtors have failed to provide adequate assurance sufficient

to satisfy the heightened requirements of section 365(b)(3) of the Bankruptcy Code, and the

proposed assignment of the Lease to CKP must be denied.

2.      Second, the Debtors have provided no evidence and no basis for waiver of

the ten day stay provided under Bankruptcy Rules 6004(g) and 6006(d). On the other hand, the

Landlord will be prejudiced by waiver of the ten day stay. Accordingly, the Court should deny the

Debtors' request for a waiver of the ten day stay period under Bankruptcy Rules 6004(g) and

6006(d).

## BACKGROUND

3.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors

have remained in possession of their assets and have continued in the management of their

businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.       On July 1, 2005 the Debtors filed the Motion for Order (A) Authorizing the Sale of Assets Free and Clear of Liens, Claims and Interests and Exempt from Taxes, (B) Authorizing the Assumption and Assignment of Leases and Contracts and (C) Granting Related Relief, requesting, among other things, authorization to assume and assign certain leases to the highest or best bidder.  The Debtors held an auction on July 18, 2005.

5.       On July 21, 2005, the Debtors filed the Supplemental Motion, seeking, among other things, Court approval for the sale of assets related to the Leased Premises and assignment of the Lease to Alex Lee and Associated Wholesale Grocers, Inc. on behalf of CKP, the ultimate assignee.  The Supplemental Motion also requests waiver of the ten day stay of the sale order provided under Bankruptcy Rules 6004(g) and 6006(d).

6.       The Leased Premises are located in a "shopping center" as that term is used in section 365 of the Bankruptcy Code.

## THE LEASE

7.       The Debtors lease the Leased Premises pursuant to the Lease by and between The Bonny Corporation and Winn-Dixie Atlanta, Inc., dated as of July 1, 1976, as amended.  The Lease commenced as of November 1, 1986 and expires on October 31, 2006.  Pursuant to section 27 of the Lease, the Debtors are entitled to five consecutive five year term extensions of the Lease upon notice to the Landlord.

## CKP: THE PROPOSED ASSIGNEE

8.       According to the testimony of Tony Chong, provided at his deposition no July 27, 2005, CKP operates a single store as a farmer's market known as Mercado Del Pueblo, in Norcross, Georgia.  *See* Deposition of Tony Chong dated July 27, 2005, at p. 12, an uncertified, preliminary copy of the transcript of the Mr. Chong's deposition, without exhibits, is attached here

3

to as Exhibit 1 (hereafter, "Chong Dep. at _____")  A certified copy will be filed as soon as it is available and the exhibits will be available at trial.   CKP, which was incorporated in the State of Georgia in June 2004, sells international foods.  *See* Chong Dep. at 6.  In addition, CKP subleases excess space to vendors that sell, among other things, audio equipment (i.e., stereo speakers), housewares, and swimwear.  *See* Chong Dep. at 23.

9.      CKP is an affiliate of seven independently owned and operated Grand Mart Stores.  *See* Chong Dep. at 6-7.  The Grand Mart Stores are located in Virginia, the District of Columbia and Maryland.  *Id.*  Min Kang is the majority shareholder in each of the Grand Mart Stores, including CKP, holding 51% of the shares of CKP.  The minority shareholders are Tony Chong (19%), Michael Kim (19%) and Mr. Shin (12%).  Chong Dep. at 8.  Mr. Kang invested $1.5 million in CKP to cover startup costs and, according to Mr. Chong, CKP will provide additional funds to acquire the Lease and commence operations at Store No. 2718.  *See* Chong Dep. at 46.

10.      If the Court approves the assignment of the Lease to CKP, Mr. Chong and Mr. Kim (hereafter, the "Operating Investors") intend to manage CKP at Store No. 2718.  *See* Chong Dep. at 64.  However, CKP's financial condition is poor, and the Operating Investors have no history of operating a supermarket.

11.      CPK's financial condition is not similar to and does not compare with the financial condition of the Debtors at the time the Lease was executed on July 1, 1976.  Rather, CKP's financial condition is best described as precarious.  CKP's financial statements (which consist of a compilation of data rather than audited financial statements prepared according to generally accepted accounting principles) provided in support of the Motion, show that CKP had revenues of $6.76 million, gross profit of $1.59 million, and operating income of $16,780 for the period January 1, 2005 to May 31, 2005.  *See* Exhibit B to Declaration of Tony Chong (hereafter, the "Declaration").  A copy of the Declaration is annexed hereto as Exhibit 2.  CKP's current assets

as of May 2005 were $1.0 million, current liabilities were $1.096 million, and working capital was negative $96,000. *Id.* In addition, CKP's balance sheet reflects three cash accounts that had negative balances totaling $117,846.[1] *Id.* Furthermore, Mr. Chong testified that in June 2005, CKP's checking account balance was overdrawn by $4,700. *See* Chong Dep. at p. 71. Mr. Chong testified that the negative account balance occurred because CKP's sales decreased by 3% due to its customer's migration to another international food store that opened recently in the area. *See* Chong Dep. At p. 71-72.

12.     Mr. Chong also testified that CKP will need to rely on equity infusions by Grand Mart Stores to meet its liquidity needs. *See* Chong Dep. at 42. However, although CKP provided the Landlord with *unaudited* balance sheets and statements of income for two additional independently owned and operated Grand Mart Stores, CKP has provided no financial information regarding Mr. Kang, the principal shareholder of Grand Mart Stores. More importantly, neither Mr. Kang nor any of the independently owned Grand Mart Stores have agreed to guaranty the obligations of CKP as tenant under the Lease.

13.     Moreover, the Operating Investors' management experience has been limited to convenience stores, small supermarkets, or farmers' markets. *See* Chong Dep., Exh. 3. For example, Mr. Chong held one management position as head of the "American" section of a supermarket before he purchased and operated a convenience store and the Mercado Del Pueblo farmers' market. Chong Dep. at 55-57. Mr. Kim's resume shows that he held a position as head of "American" section at a supermarket, and has revitalized several troubled supermarkets. However, there is no evidence of sustained profitability at these supermarkets. Mr. Kim's experience consists

---

[1]     CKP's accountant, Bruce Choi, informed JDN's counsel that CKP sends checks to vendors before the funds are in its account in order to capture the "float." The negative cash account tracks these payables and are in the balance sheet for administrative convenience. CKP does not explain this accounting method in its CKP's financial statements.

of operating a convenience store for two years and a farmers' market for three months.  *See* Chong

Dep. at 60-63.

## OBJECTION

14.     By this Objection, the Landlord requests that the Court deny the Motion with

respect to Store No. 2817 because the Debtors and CKP cannot demonstrate adequate assurance of

future performance of the Lease obligations.  CKP's financial condition and operating performance

are not similar to the Debtors' financial condition and operating performance when the Debtors

entered into the Lease.

**I.      THE DEBTORS HAVE FAILED TO PROVIDE ADEQUATE
        ASSURANCE OF FUTURE PERFORMANCE AS REQUIRED
        BY SECTIONS 365(b)(3) OF THE BANKRUPTCY CODE**

15.     Under Bankruptcy Code section 365(f)(2), a debtor cannot assign an

unexpired lease of nonresidential real property without proving that the proposed assignee can

provide the landlord with adequate assurance of future performance.[2]  Shopping center landlords are

afforded special statutory protections under the Bankruptcy Code.  One such protection is the right

to obtain adequate assurance of future performance from any proposed assignee of a real property

lease. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

16.     Section 365(b)(3) defines "adequate assurance" in connection with

assignment of a real property lease in a shopping center.  Section 365(b)(3) states, in relevant part:

> Adequate assurance of future performance includes adequate
> assurance –

---

[2]     Section 365(f)(2) of the Bankruptcy Code provides, in relevant part:

> (2)     The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
>                 *       *       *
>
> (B)     adequate assurance of future performance by the assignee of such contract or lease is provided,
>         whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease; [and]

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center

11 U.S.C. § 365(b)(3)(A) and (C).

17.     Debtors bear the burden of demonstrating adequate assurance of future performance. *In re Rachel Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

### A.     CKP's Financial Condition and Operating Performance are not Similar to that of the Debtors at the Time of Lease Execution

18.     Section 365(b)(3)(A) of the Bankruptcy Code requires that the financial condition and operating performance of a proposed assignee to a lease in a shopping center must be similar to the financial condition and operating performance of the debtor at the time the Lease was executed. *In re The Casual Male Corp.*, 120 B.R. 256, 264 (Bankr. D. Mass. 1990). The statute's primary purpose is to provide adequate assurance for the payment of future rent. *Id.*; *In re Serv. Merchandise Co.*, 279 B.R. 675, 682 (Bankr. M.D. Tenn. 2002). As such, the assignee's financial condition and operating performance "must be at least as strong" as the debtor's at the time of lease execution. *Casual Male*, 120 B.R. at 264.

19.     Here, the Debtors and CKP failed to demonstrate that CKP's financial condition and operating performance are at least as strong as were the fianancial condition and operating performance of the Debtors' on July 1, 1976, the date the Lease was executed. As of May 31, 2005, CKP had revenues of $6.76 million, gross profit of $1.59 million, and operating income

of $16,780.  CKP's current assets as of May 2005 were $1.0 million, CKP's current liabilities were $1.096 million, and working capital was negative $96,000.  CKP's liquidity is so thin that a reduction in customer traffic in June 2005 caused CKP to overdraw its checking account by $4,700.

20.    By contrast, the Debtors, at the time Winn-Dixie entered into the Lease, had financial strength, liquidity and ongoing operations that dwarf those of CKP.  The 1976 10-K of Winn-Dixie, Inc. (the "1976 10-K")[3] demonstrates that the Debtors had current assets of $337 million, current liabilities of $147.4 million, and working capital in the amount of $115.5 million. In addition, the Debtors had revenues of $3.3 billion, and net income of $63 million.[4]  Total cash on hand amounted to $23.3 million.

21.    In addition, the Debtors' average annual sales per store and earnings per share of common stock had increased every year from 1974-1976.  *See* 1976 10-K, June 29, p. 12. At the time the Debtors entered into the Lease with the Landlord, they were operating 1,030 supermarkets across eleven states and the Bahama Islands, and operated several support facilities, including, but not limited to, twelve full service warehousing and distribution centers serving Winn Dixie's stores, two bakeries, four ice cream processing and milk bottling plants, as well as manufacturing and packaging plants for condiments, beverages and meat packing plants. *See* 1976 10-K, p. 1.

22.    When the Lease was executed, the Debtors' management had guided the Debtors through decades of continually improving sales and sustained growth.  By contrast, the Operating Investors have virtually no experience operating a supermarket.  Instead, the Operating Investors have operated a convenience store and farmers' markets.  At best, the Operating Investors operated a section in a supermarket.  Even if CKP intends to rely on the

---

[3]    A copy of the 1976 10-K of Winn-Dixie, Inc. will be introduced into evidence at the hearing.

operating performance of Grand Mart Stores, such reliance should be discounted by this Court since CKP and the Debtors have provided no information regarding Mr. Kang, Grand Mart's principal shareholder, and his affiliates.

23.     Given Winn-Dixie's sound financial condition and history when the Lease was executed, it is evident that CKP's financial condition and operating performance are not even remotely close to the financial condition and operating performance of the Debtors at the time of Lease execution.  Because of the enormous disparity between the financial condition and operating performance of the Debtors when the Lease was executed and CKP's current financial condition and operating performance, CKP has not satisfied the requirements of section 365(b)(3)(A) of the Bankruptcy Code.

24.     Even if the Court were inclined to grant the Motion with respect to Store No 2718, the Court should require CKP to provide the Landlord with additional security duo the significant risk that CKP will default on the Lease obligations.  Pursuant to section 365(l) of the Bankruptcy Code, CKP must be able to provide the Landlord with a security deposit or other guaranty of performance equal to the security that the Landlord would have required upon initial leasing to the Buyer.[5]  Here, the Landlord would require the guaranty of an entity with substantial assets and a letter of credit equal to not less than one year's base rent under the Lease.

---

(cont.)

[4]     Based on the Consumer Price Index, $63 million of net income in 1976 had a relative value in 2003 of approximately $283.8 million.  *See* Relative Value Calculator at *http://www.eh.net/hmit/compare*.

[5]     Section 365(l) of the Bankruptcy Code states:

> If an unexpired lese under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. 365(l).

## II.    THE WAIVER OF THE TEN DAY STAY PROVIDED BY BANKRUPTCY RULES 6004(g) AND 6006(d) IS PREJUDICIAL TO THE LANDLORD

25.    The Debtors request that the Court waive the rights provided to the Landlord under Bankruptcy Rules 6004(g) and 6006(d).[6]  A waiver of the ten day stay provided by Bankruptcy Rules 6004(g) and 6006(d) should only be granted when a debtor has made an "evidentiary showing of a business exigency requiring a closing within 10 days." *See In re PSINet, Inc.*, 268 B. R. 358, 379 (Bankr. S.D.N.Y. 2001) (cause for a waiver of rules 6004(g) and 6006(d) is not established by a generalized assertion that "an expedited closing" is required).

26.    As the advisory committee's notes to these rules reflect, a stay pending appeal is crucial to preserve the Landlord's right to contest an order authorizing the assignment of the Lease.  Without the protections of Bankruptcy Rules 6004(g) and 6006(d), the Landlord's due process right to appeal any sale order entered by the Court would be terminated upon consummation of the sale.  *See* Fed. R. Bankr. P. 6004 and 6006 advisory committee's note.  Any appeal, even if leave to appeal were granted, would be rendered moot by the valid assignment of the Lease.  *See In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3rd. Cir. 2000) (if a stay of a sale of a lease is not obtained, any appeal becomes moot).  To address this issue, Bankruptcy Rule 6006(d) provides sufficient time for a party to request a stay pending appeal of an order authorizing the assignment of a lease under section 365(f) of the Bankruptcy Code before the assignment is consummated.  *See* Fed. R. Bankr. P. 6006 advisory committee's note.  Similarly, Bankruptcy Rule 6004(g) provides

---

[6]    Bankruptcy Rule 6004(g) states:

> An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise.

Fed. R. Bankr. Pro.6004(g).

Bankruptcy Rule 6006(d) states:

> An order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise.

sufficient time for a party to request a stay pending appeal of an order authorizing the use, sale or lease of property under section 363(b) of the Bankruptcy Code before the order is implemented. *See* Fed. R. Bankr. P. 6004 advisory committee's note.

27.     Considering the consequences of failing to obtain a stay, it would be extremely prejudicial and inequitable to deprive the Landlord of the crucial ten day period provided in Bankruptcy Rules 6004(g) and 6006(d) to seek a stay of the order authorizing the assignment of the Lease pending the outcome of an appeal.  This is particularly true, where, as in this case, the Debtors have failed to make any evidentiary showing or provide any competent factual or legal justification for the requested waiver.  As such, the Court should not grant a waiver of the stay.

## RELIEF REQUESTED

28.     Because the Debtors and CKP have failed to meet the burden of providing adequate assurance of future performance under section 365(b)(3) of the Bankruptcy Code, the Landlord requests that the Court enter an Order denying assignment of the Lease to CKP.

29.     In addition, if the Court requires an evidentiary hearing to resolve the issues raised by this Objection, the Landlord respectfully requests that the Court schedule a hearing and allow the parties thirty (30) days from the entry of the order to conduct expedited discovery pursuant to Bankruptcy Rules 7026 and 7030 through 7037, all of which are made applicable to the this proceeding pursuant to Bankruptcy Rule 9014.

30.     Finally, because the Debtors have failed to meet their evidentiary burden of proving cause for waiver of the ten-day stay period under Bankruptcy Rules 6004(g) and 6006(d), the Court should deny waiver of the ten-day stay period.

---

(cont.)
    Fed. R. Bankr. Pro.6006(d).

## RESERVATION OF RIGHTS

31.    The Landlord hereby reserves its right to supplement the Objection on any additional factual or legal grounds, including, but not limited to, any additional facts and circumstances that may be discovered upon completion of discovery of CKP and its principals.

WHEREFORE, the Landlord respectfully requests that the Court enter an Order (i) denying the proposed assignment of the Lease to CKP, (ii) denying the requested waiver of the ten day stay provided under Bankruptcy Rules 6006(g) and 6006(d), and (iii) set a discovery schedule to the extent deemed necessary, and (v) grant such other and further relief as the Court deems just and proper.

Dated: July 28, 2005

KELLEY DRYE & WARREN LLP
By: */s/ Robert L. LeHane*
      James S. Carr (JC-1603)
      Robert L. LeHane (RL-9422)
101 Park Avenue
New York, NY 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

-and-

HELD & ISRAEL
1301 Riverplace Blvd., Ste. 1916
Jacksonville, FL 32207-9024
Edwin W. Held (0162574)
Tel: (904) 398-7036
Fax: (904) 398-4283

ATTORNEYS FOR JDN REALTY CORPORATION

## CERTIFICATE OF SERVICE

I, Debra Yang, on July 28, 2005, caused to be served the *OBJECTION OF JDN REALTY CORPORATION TO (I) ASSIGNMENT OF LEASE FOR STORE 2718, CHAMBLEE, GA, TO ALEX LEE AND ASSOCIATED WHOLESALE GROCERS, INC. ON BEHALF OF CKP INTERNATIONAL, INC. AND (II) WAIVER OF THE TEN DAY STAY PERIOD REQUIRED BY RULES 6004(g) AND 6006(d) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE* upon the following parties, via telecopier, e-mail and/or overnight mail:

| | |
|---|---|
| David J. Baker, Esq.<br>Skadden Arps Slate Meagher & Flom, LLP<br>Four Times Square<br>New York, New York 10036<br>Fax: 212-735-2000 | Cynthia C. Jackson, Esq.<br>Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, Florida 32201<br>Fax: 904-359-7708 |
| Jonathan N. Helfat, Esq.<br>Daniel Fiorillo, Esq.<br>Otterbourg, Steindler, Houston & Rosen, P.C.<br>230 Park Avenue<br>New York, New York  10169<br>Fax:  212-682-6104 | Dennis F. Dunne, Esq.<br>Matthew Scott Barr, Esq.<br>Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, New York 10005<br>Fax:  212-530-5219 |
| Associated Wholesale Grocers, Inc.<br>Attn: General Counsel<br>5000 Kansas Avenue<br>P.O. Box 2932<br>Kansas City, Kansas 66110-2932<br>Fax: 913-288-1573 | Alex Lee, Inc.<br>Attn: General Counsel<br>P.O. Box 8090<br>120 Fourth Street SW<br>Hickory, North Carolina 28602<br>Fax  :828-725-4435 |
| Tony Chong<br>4975 Jimmy Carter Blvd<br>Suite 110<br>Norcross, Georgia 30093<br>Fax: 770-817-9954 | Michael Chung, Esq.<br>Kim & Woo, LLC<br>3950 Shackleford Rd.<br>Suite 425<br>Duluth, Georgia 30096<br>Fax: 678-638-0115 |

*/s/ Debra Yang*
Debra Yang