**Exhibit A**

VOL 6150 PG 2252

OFFICIAL RECORDS

INDENTURE OF MORTGAGE


from


COMMONWEALTH AVENUE WAREHOUSE, INC.,
as grantor


to


BANK OF NEW ENGLAND TRUST COMPANY,
NATIONAL ASSOCIATION


and


F.W. KAWAM,
as Trustees


Dated as of June 20, 1986


Prepared by & Return to:

M. Suzanne Badenhoop, Esq.
Csaplar & Bok
655 Montgomery Street
San Francisco, California  94111

Received $2,114.00 in payment of 2 mill
Intangible tax/pursuant to Chapter 199, F. S.
Amount included in Receipt No. 568784A
Clerk Circuit Court, Duval County, Florida
S. MORGAN SLAUGHTER, By

VOL 6150 PG 2253

OFFICIAL RECORDS

## TABLE OF CONTENTS

Preliminary Statement.................................... 1
Granting Clause First.................................... 2
Granting Clause Second................................... 3
Granting Clause Third.................................... 3

ARTICLE 1    Defined Terms................................ 5

ARTICLE 2    The Notes.................................... 10
             2.1.   The Original Notes.................... 10
             2.2.   Additional Notes..................... 10
             2.3.   Payment of Notes..................... 12
             2.4.   The Register......................... 12
             2.5.   Registration of Notes; Execution of Notes  12
             2.6.   Certificate of Authentication........ 13
             2.7.   Transfers and Exchanges.............. 13
             2.8.   Trustee as Agent..................... 14
             2.9.   Registered Owner..................... 14
             2.10.  Cancellation of Notes................ 14

ARTICLE 3    Particular Covenants of Owner................ 15

             3.1.   Title to the Trust Estate; Use Thereof... 15
             3.2.   Further Assurances................... 15-
             3.3.   Recording............................ 15
             3.4.   Payment of the Notes................. 16
             3.5.   The Lease............................ 16
             3.6.   Existence; Compliance with Laws...... 16
             3.7.   After-acquired Property.............. 17
             3.8.   Taxes................................ 17
             3.9.   Insurance............................ 18
             3.10.  Advances by Trustee.................. 19
             3.11.  Negative Covenants................... 19
             3.12.  Lease Basic Rent..................... 20
             3.13.  Payment of Trustees' Compensation.... 20
             3.14.  Performance by Lessee................ 20

ARTICLE 4    Possession, Use and Release of the Trust Estate  22

             4.1.   Receipt of Money..................... 22
             4.2.   Lease Termination.................... 22
             4.3.   Casualty and Condemnation............ 23
             4.4.   Conveyance in Anticipation of
                    Condemnation, Granting of
                    Easements, Etc....................... 24
             4.5.   Transfer of the Property............. 25

VOL 6150 PG 2254

* OFFICIAL RECORDS *

ARTICLE 5    Application of Moneys........................    26

    5.1.    Moneys Under the Lease..................    26
    5.2.    Purchase Price..........................    26
    5.3.    Proceeds of Insurance; Condemnation
       Awards; Minor Releases...............    26

ARTICLE 6    Prepayment..................................    27

    6.1.    Prepayment..............................    27
    6.2.    Deposit of Moneys.......................    27

ARTICLE 7    Events of Default and Remedies..............    28

    7.1.    Events of Default.......................    28
    7.2.    Sale of Trust Estate; Application
       of Proceeds..........................    33
    7.3.    Receivers...............................    35
    7.4.    Suits by Trustee........................    35
    7.5.    Waiver of Default.......................    35
    7.6.    Remedies Cumulative.....................    36
    7.7.    Waiver of Rights........................    36
    7.8.    Direction of Remedies...................    36
    7.9.    Suit by Registered Owners...............    37

ARTICLE 8    Trustees....................................    38

    8.1.    Rights and Obligations of Trustees......    38
    8.2.    Individual Trustee......................    41
    8.3.    Resignation of Trustee..................    42
    8.4.    Successor Trustee.......................    42
    8.5.    Resignation and Removal of Individual
       Trustee..............................    43
    8.6.    Separate and Co-Trustees................    44
    8.7.    Liability of Trustee....................    45

ARTICLE 9    Miscellaneous...............................    46

    9.1.    Satisfaction............................    46
    9.2.    Supplements With Consent................    46
    9.3.    Delivery of Supplements.................    47
    9.4.    Immunity from Liability.................    47
    9.5.    Execution of Instruments by
       Registered Owners....................    48
    9.6.    Limitation of Rights of Others..........    48
    9.7.    Severability............................    48
    9.8.    Notices.................................    49
    9.9.    Maximum Interest Payable................    49
    9.10.   Counterparts............................    49
    9.11.   Successors and Assigns..................    49
    9.12.   Table of Contents, Headings.............    50

VOL 6150 PG 2255

OFFICIAL RECORDS

9.13. Governing Law.......................... 50
9.14. Incorporated Schedules.................. 50

SCHEDULES

Schedule  A - Description of the Land Parcel
Schedule  B - Form of Notes



VOL 6150 PG 2256

OFFICIAL RECORDS

INDENTURE OF MORTGAGE, dated as of June 20, 1986 (together with all amendments and supplements hereto, called this Indenture), from COMMONWEALTH AVENUE WAREHOUSE, INC., a Florida corporation (herein, together with its successors and assigns, called Owner), having an address c/o Greyhound Leasing & Financial Corporation, Greyhound Tower, Phoenix, Arizona 85077, Attention:  Division Risk Manager, Real Estate, as grantor, to BANK OF NEW ENGLAND TRUST COMPANY, NATIONAL ASSOCIATION, a national banking association, as Trustee, and F.W. KAWAM, as Individual Trustee, (Individual Trustee and Trustee are herein collectively called Trustees), each having an address c/o The Connecticut Bank and Trust Company, National Association, One Constitution Plaza, Hartford, Connecticut 06115, Attention:  Corporate Trust Department.

PRELIMINARY STATEMENT

The defined terms used in this Indenture, if not elsewhere defined herein, have the meanings set forth in Article 1.  Owner has acquired a fee simple interest in a land parcel and the Improvements located thereon.  In order to finance a portion of the cost of acquiring its interest in the Property, Owner is issuing the Notes and executing this Indenture for the purpose of granting the Property and the Trust Estate as security for the payment of the Notes.  This Indenture constitutes a first lien on the Trust Estate, subject only to Permitted Exceptions of the character described in clauses (a) through (e) of the definitions of Permitted Exceptions.  The Trust Estate shall be and remain subject to the lien of this Indenture and shall constitute security for all of the Notes so long as any of the Notes shall remain outstanding.  Owner is duly authorized to issue the Notes and to execute and deliver this Indenture, and all actions required by law and all actions of Owner required therefor have been duly taken.

NOW, THEREFORE, THIS INDENTURE WITNESSETH:  That Owner, in consideration of the premises, the acceptance by Trustees of the trusts hereby created, the purchase and acceptance of the Original Notes in the principal amount of $10,057,000 by the purchasers thereof, and other good and valuable consideration, the receipt and sufficiency whereof is hereby acknowledged, and in order to secure the payment of all sums payable on the Notes and to declare the terms and conditions upon and subject to which the Notes are to be issued, authenticated, delivered and secured, has executed and delivered this Indenture, and has created a security interest in, mortgaged, granted, bargained, sold, assigned, pledged, given, transferred, set over and conveyed, and by these presents does create a security interest in, mortgage, grant, bargain, sell, assign, pledge, give, transfer, set over and convey, unto Trustees (in the case of either Trustee or

VOL 6150 PG 2257

OFFICIAL RECORDS

Individual Trustee, only to the extent of its legal
qualification under the laws of any particular jurisdiction to
receive and hold property therein for the purposes hereof) and
to their successors in the trusts hereby created and their
assigns forever all of Owner's estate, right, title and
interest in, to and under any and all of the property described
in the following Granting Clauses, subject only to the
Permitted Exceptions of the character referred to in clauses
(a) through (e) of the definition of Permitted Exceptions.  The
rights of Lessee under the Lease are prior to and superior to
the lien of this Indenture, whether or not the Lease (or a
memorandum thereof) is recorded prior to the recordation of
this Indenture.

### Granting Clause First

         The parcel of land described in Schedule A hereto
(the Land Parcel), together with (a) all buildings, structures
and other improvements now standing or at any time hereafter
constructed or placed upon the Land Parcel, including, without
limitation, all building materials, equipment and fixtures of
every kind and nature on the Land Parcel or in any such
building, structure or other improvement (said buildings,
structures, other improvements, building materials, equipment
and fixtures being herein collectively called the
Improvements), (b) all and singular the tenements,
hereditaments, easements, rights-of-way, rights, privileges and
appurtenances in and to the Land Parcel and Improvements,
including, without limitation any streets, ways, alleys,
vaults, gores or strips of land adjoining the Land Parcel,
(c) all claims or demands of Owner in law or in equity, in
possession or expectancy of, in and to the Land Parcel and
Improvements and (d) subject to the provisions of Granting
Clause Second, all rents, income, revenues, issues and profits
from and in respect of the property described in clauses (a)
through (c) of this Granting Clause First (except sums payable
directly to any person other than the lessor under the Lease)
and the present and continuing right to make claim for,
collect, receive and give receipt for the same, it being the
intention of the parties hereto that, so far as may be
permitted by law, all property of the character hereinabove
described which is now owned or is hereafter acquired by Owner
and is affixed, attached or annexed to the Land Parcel shall be
and remain or become and constitute a portion of the Trust
Estate and the security covered by and subject to the lien
hereof.  The Land Parcel together with the Improvements located
thereon and the other property described in this Granting
Clause First relating to the Land Parcel or the Improvements
are herein individually called the Property.

VOL 6150 PG 2258

OFFICIAL RECORDS

### Granting Clause Second

The Lease, including all extensions and renewals of the term thereof, together with the entire right, title and interest of Owner as lessor under the Lease, including, without limitation, the present and continuing right to make claim for, collect, receive and make receipt for any and all of the rents, income, revenues, issues and profits and other sums of money payable or receivable under the Lease, whether payable as rent or otherwise, to accept or reject any offers made pursuant to the Lease to purchase the Property, to bring actions and proceedings under the Lease or for the enforcement thereof and to do anything which Owner or any lessor is or may become entitled to do under the Lease, provided that the Grant made by this Granting Clause Second shall be subject to the provisions of the Assignment and shall not impair or diminish any obligation of Owner under the Lease, nor shall any such obligation be imposed upon any Trustee.

### Granting Clause Third

The Construction Agency Agreement, together with the entire right, title and interest of Owner thereunder and the Agency Account and any and all moneys and other property, which may from time to time become subject to the lien hereof or which may come into the possession or be subject to the control of Trustees pursuant to this Indenture, the Construction Agency Agreement or the Assignment, it being the intention of Owner and it being hereby agreed that all property hereafter acquired by Owner and required to be subjected to the lien of this Indenture or intended so to be shall forthwith upon the acquisition thereof by Owner be subject to the lien of this Indenture as if such property were now owned by Owner and were specifically described in this Indenture and granted hereby or pursuant hereto; and Trustees are hereby authorized to receive any and all such property as and for additional security for the payment of the Notes and all other sums secured or intended to be secured hereby.

TO HAVE AND TO HOLD all and singular the Trust Estate, whether now owned or held or hereafter acquired, unto Trustees, their successors in the trusts created hereby and their assigns forever;

IN TRUST, NEVERTHELESS, with power of sale, for the equal and ratable benefit and security of the registered owners of the Notes, without preference, priority or distinction of any thereof over any other by reason of difference in time of issuance or otherwise, except as expressly provided herein, and for the enforcement of the payment of the principal, premium, if any, and interest on the Notes in accordance with their terms, and all other sums payable under this Indenture or on

-3-

VOL 6150 PG 2259

OFFICIAL RECORDS

the Notes, and the observance and performance of the provisions of this Indenture, all as herein provided.

IT IS HEREBY COVENANTED, DECLARED AND AGREED that the Notes are to be issued and secured and that the Trust Estate is to be held and disposed of by Trustees, upon and subject to the provisions of this Indenture.

VOL 6150 PG 2260

OFFICIAL RECORDS

# ARTICLE 1
## Defined Terms

Unless the context otherwise specifies or requires, the following terms shall have the meanings specified (such definitions to be applicable equally to singular and plural nouns and verbs of any tense):

"Additional Notes" means all Notes issued pursuant to Section 2.2 and all Notes issued in exchange or substitution therefor pursuant to Section 2.7.

"Additional Rent" has the meaning specified in paragraph 4(b) of the Lease.

"Agency Account" means all moneys deposited with and held by Trustee, from time to time, in accordance with the Construction Agency Agreement.

"Assignment" means the Assignment of Lease Agreement, dated as of the date hereof, from Owner, as assignor, to Trustees, as assignees, relating to the Lease and the consent of Lessee thereto, as amended or supplemented from time to time as permitted hereby or thereby.

"Basic Rent" has the meaning specified in paragraph 4(a) of the Lease.

"Construction Agency Agreement" means the Financing, Construction and Agency Agreement, dated as of the date hereof, among Owner, Lessee and Trustee.

"Corporate Trust Office" means the principal corporate trust office of Trustee, which office is, on the date of the delivery of this Indenture, located at the principal corporate trust office of its affiliate, The Connecticut Bank and Trust Company, National Association, One Constitution Plaza, Hartford, Connecticut 06115, Attention:  Corporate Trust Department.

"default" means any act or occurrence which, with notice or lapse of time, or both, would constitute an Event of Default under this Indenture.

"Event of Default" means any occurrence or act of the character specified in Section 7.1(a) through 7.1(1).

"Grant" means create a security interest in, mortgage, grant, bargain, sell, assign, pledge, give, transfer, set over and convey.

VCL 6150 PG 2261

OFFICIAL RECORDS

"Improvements" has the meaning specified in Granting Clause First.

"Individual Trustee" means F.W. Kawam and his successors as individual trustee under this Indenture.

"Instalment Payments" has the meaning specified in the Notes.

"Instalment Payment Dates" means the dates on which the Instalment Payments are due in accordance with the terms of the Notes.

"Institutional Investor" means any of the following organizations existing under the laws of the United States or any state thereof or of the District of Columbia or of Canada or any province thereof: (i) any bank, trust company or national banking association, acting for its own account or in a fiduciary capacity, (ii) any charitable foundation or other eleemosynary institution, (iii) any insurance company or wholly-owned subsidiary thereof, (iv) any pension or retirement trust or fund for which any bank, trust company or national banking association or investment adviser registered under the Investment Advisers Act of 1940, as amended, is acting as trustee or agent, or if self-managed, having invested funds of at least $50,000,000, (v) any investment company, as defined in the Investment Company Act of 1940, as amended, (vi) any college or university, (vii) any government, any public employees' pension or retirement system, or any other governmental agency supervising the investment of public funds or (viii) a "real estate investment trust," as defined in Section 856 of the Internal Revenue Code of 1954, as amended.

"Land Parcel" has the meaning specified in Granting Clause First.

"Lease" means the Lease Agreement, dated as of the date hereof, between Owner, as lessor, and Lessee, as lessee, relating to the Property, as amended or supplemented from time to time as permitted hereby or thereby, together with any short form thereof for purposes of recording.

"Lessee" means Winn-Dixie Stores, Inc., a Florida corporation, and any person succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety.

"lien of this Indenture" and terms of like import mean the security title or other interest or charge Granted to Trustees by this Indenture (including the after-acquired property clauses hereof) or subsequently Granted hereunder or pursuant hereto to Trustees (whether made by Owner or any other

-6-

VOL 6150 PG 2262

OFFICIAL RECORDS

person) or otherwise created, which effectively constitutes any property a part of the security held by Trustees for the benefit of the Notes.

"Net Condemnation Proceeds" and "Net Casualty Proceeds" have the respective meanings set forth in paragraph 12(a) and 13(a) of the Lease.

"Notes" means the Original Notes and the Additional Notes from time to time issued and, unless the context otherwise specifies or requires, outstanding under this Indenture.

"Original Notes" means the Notes issued in accordance with Section 2.1 and all Notes issued in exchange or substitution therefor pursuant to Section 2.7.

"outstanding" means, with reference to Notes, as of any particular time, all Notes theretofore issued pursuant to this Indenture, except (i) Notes theretofore cancelled by Trustee or surrendered to Trustee for cancellation; (ii) Notes theretofore paid in full or Notes required to be prepaid in full within 30 days thereafter, provided that, in the case of Notes so to be prepaid, cash sufficient for such prepayment thereof shall theretofore have been deposited with, or shall then be held by, Trustee in accordance with the provisions of this Indenture; (iii) Notes in exchange or substitution for which other Notes shall theretofore have been issued pursuant to Section 2.7; and (iv) Notes registered in the name of Owner, Lessee, or any nominee or affiliate of either thereof, and with respect to Owner, any successor in interest to its interests in the Property or its nominee or affiliate.

"Owner" has the meaning specified in the first paragraph hereof.

"Permitted Exceptions" means:

(a)   Easements, rights-of-ways, servitudes, other similar reservations, rights and restrictions and other minor defects and irregularities in the title to the Property, none of which materially lessens the value of the Property or materially impairs the use thereof for the purposes held by Owner and leased by Lessee under the Lease.

(b)   The right reserved to or vested in any municipality or public authority by the terms of any right, power, franchise, grant, license, permit, provision of law, zoning law or use regulation to terminate such right, power, franchise, grant, license, permit, provision of law, zoning law or use regulation or to condemn, appropriate, recapture or designate a purchaser of the Property;

-7-

VOL 6150 PG 2263

✦ OFFICIAL RECORDS ✦

(c)  Any liens for taxes, assessments and other governmental charges and any liens of mechanics, materialmen and laborers for work or services performed or materials furnished in connection with the Property which are not due and payable, or the amount or validity of which are being contested at the time pursuant to the Lease or Section 3.6 or 3.8 hereof by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereon and the sale or forfeiture of the Property or any interest therein to satisfy the same;

(d)  The easements, rights-of-way, encroachments, encumbrances, or other irregularities in title, if any, set forth in the policy of mortgage title insurance issued to and accepted by Trustees;

(e)  The rights of Lessee under the Lease;

(f)  The lien hereof and any rights granted hereby;

(g)  The Assignment; and

(h)  The purchase money mortgage permitted pursuant to Section 3.11.

"person" means an individual, partnership, corporation, trust, estate, unincorporated association, syndicate, joint venture or organization, or a government or any department or agency thereof.

"Property" has the meaning specified in Granting Clause First.

"Register" means the register maintained for the registration and transfer of the Notes in accordance with Section 2.4.

"registered owner" means the person in whose name a Note is registered on the Register.

"Reimbursable Expenses" has the meaning specified in paragraph 15(a) of the Lease.

"Trustee" means Bank of New England Trust Company, National Association, and its successors and assigns as trustee under this Indenture.

"Trustees" means Trustee and Individual Trustee, as trustees under this Indenture, together with all co-trustees and separate trustees appointed as provided in Section 8.6.

VOL 6150 PG 2264

& OFFICIAL RECORDS

"Trust Estate" means all moneys and other property subject or intended to be subject to the lien of this Indenture at any time, including, without limitation, the Property, the Lease and all other property and interest therein listed in the Granting Clauses of this Indenture, and the phrase "Trust Estate" includes any part of the Trust Estate.

VOL 6150 PG 2265

OFFICIAL RECORDS

ARTICLE 2
The Notes

Section 2.1.   The Original Notes.   (a) The Original Notes shall be designated as the "9.95% Secured Notes Due July 1, 2011" in the aggregate original principal amount of $10,057,000 and shall be issued on the date of the delivery of this Indenture.   Owner shall execute and deliver the Original Notes to Trustee for authentication, together with a written order of Owner signed by the president or any vice president of Owner requesting authentication and delivery of such Original Notes.   Trustee shall authenticate and deliver such Original Notes in accordance with such written order.

(b)   The Original Notes shall be dated the date of issuance thereof (except in the case of Notes issued pursuant to Section 2.7) and shall otherwise be as follows:

The Original Notes shall bear interest on the unpaid principal amount thereof at the rate of 9.95% per annum computed on the basis of a 360-day year of twelve 30-day months.   The principal of and interest on the Original Notes shall be payable as follows:   (A) interest accrued on the unpaid principal amount of the Original Notes from and including the date of issuance thereof to and including June 30, 1986, shall be due and payable on July 1, 1986; and (B) thereafter be due and payable on the first day of each month as to accrued and unpaid interest and as to principal due on the Instalment Payment Dates; and (C) the remaining unpaid principal amount, if any, together with interest accrued and unpaid thereon shall be due and payable on July 1, 2011.   Each Instalment Payment, when paid, shall be applied first to the payment of all interest accrued and unpaid on the Original Notes, and second to payment of the principal of the Original Notes.

(c)   The Original Notes and the certificates of Trustee to be executed thereon shall be substantially in the form shown in Schedule B hereto, with such omissions, insertions and variations as are in this Indenture provided for or permitted or as may be required by law.

Section 2.2.   Additional Notes.   (a) So long as Lessee has a tangible net worth in excess of $250,000,000, if Lessee incurs costs of at least $1,000,000 in making additions to or alterations of the Improvements, from time to time Owner may issue additional notes (herein called Additional Notes), subject to compliance with the provisions of this Section 2.2

-10-

VOL 6150 PG 2266

*OFFICIAL RECORDS*

and paragraph 15 of the Lease.  Additional Notes to be issued
with respect to the Property at any one time shall constitute a
separate series of Additional Notes.  Each series of Additional
Notes shall be equally and ratably secured by this Indenture
with the Notes, without preference, priority or distinction as
to lien or otherwise.

(b)  So long as any of the original purchasers of the
Notes or their nominees or affiliates (collectively the
Original Purchasers) shall be the registered owner of any
Original Note or other Additional Note, Owner will not issue
Additional Notes of any series to any person other than the
Original Purchasers unless (a) Owner makes a written offer to
sell to each Original Purchaser a principal amount of the
Additional Notes of such series which bears the same proportion
to the principal amount of all Additional Notes of such series
as the amount of the Original Notes purchased by such Original
Purchaser bears to the principal amount of all the Original
Notes purchased by such Original Purchaser, (b) such offer
shall not expire or be revoked for a period (to be specified
therein) of not less than 30 business days, and (c) one or more
of the Original Purchasers shall not accept such offer within
such period, provided, however, that if any Original Purchaser
accepts such offer within such period, it shall have an
additional 15 business days to agree to purchase the principal
amount of the Additional Notes which any other Original
Purchasers do not agree to purchase within such period (and in
the event that more than one Original Purchaser agrees to
purchase the principal amount of the Additional Notes which
other Original Purchasers do not agree to purchase (the Second
Round Purchasers), such principal amount shall be divided
between such Second Round Purchasers in the same proportion as
the amount of Original Notes purchased by each such Second
Round Purchaser bears to the principal amount of Original Notes
purchased by all Second Round Purchasers.  Any of such
Additional Notes which are not accepted by an Original
Purchaser within the periods described in clause (b) above may
then be offered to Institutional Investors upon terms
substantially identical to those offered to the Original
Purchasers.  Neither Owner nor any agent on its behalf will
sell or offer any Additional Notes for sale to, or solicit any
offer to buy any thereof from, or otherwise approach or
negotiate in respect thereof with, any other person so as
thereby to bring the issue or sale thereof or of the Original
Notes under the provisions of Section 5 of the Securities Act
of 1933, as amended, or so as to require the qualification of
this Indenture under the Trust Indenture Act of 1939, as
amended.

(c)  Additional Notes may be issued solely for the
purpose of financing Reimbursable Expenses and only upon terms
and conditions agreed upon by Owner and the persons purchasing

-11-

VOL 6150 PG 2267

*OFFICIAL RECORDS*

such Additional Notes.  Additional Notes shall mature on
July 1, 2011.  Upon compliance with such terms and conditions,
Owner shall execute and deliver such Additional Notes to
Trustee for authentication, together with the written order of
Owner requesting authentication and delivery of the Additional
Notes against payment therefor.  Trustee shall authenticate and
deliver such Additional Notes in accordance with such written
order.

Section 2.3.  Payment of Notes.  (a)  The principal
of, premium, if any, and interest on the Notes shall be payable
at the Corporate Trust Office in lawful money of the United
States of America, against presentation of the Notes for
notation of the payment or prepayment made thereon or, in the
case of a payment or prepayment which will discharge all
indebtedness of Owner evidenced thereby, against surrender
thereof.

(b)  Notwithstanding the provisions of Section 2.3(a),
if there shall be filed with Trustee an executed copy of an
agreement between Owner and the registered owner of any Note to
the effect that (i) Owner will cause all amounts which become
due and payable on such Note (except a payment or prepayment of
principal which will discharge all indebtedness of Owner
evidenced by such Note) to be paid by check or bank wire
transfer of Trustee duly mailed or made to such registered
owner at its address or to its account appearing on the
Register, without presentation of such Note to Trustee, and
(ii) such registered owner or person will not sell, transfer or
otherwise dispose of such Note other than as provided in
Section 2.7, then Trustee shall, until such Note has been
transferred on the Register, pay all amounts which become due
and payable on such Note in accordance with the provisions of
such agreement.  The two Note Purchase Agreements, each dated
as of June 20, 1986, between Owner and, respectively,
Commonwealth Life Insurance Company and Peoples Security Life
Insurance Company, constitute such agreements.

Section 2.4.  The Register.  Owner shall cause to be
kept at the Corporate Trust Office one or more books (the
Register) for the registration of the Notes (including all
transfers) and the names and addresses of the registered owners
of the Notes.  Owner hereby appoints Trustee its registrar to
keep the Register.

Section 2.5.  Registration of Notes; Execution of
Notes.  All Notes shall be registered as to principal amount
and interest and may be issued in denominations of $500,000 or
any amount in excess thereof.  The Notes shall be signed on
behalf of Owner by its President or a duly authorized Vice
President.

-12-

VOL 6150 PG 2268

OFFICIAL RECORDS

Section 2.6.  <u>Certificate of Authentication</u>.  No Note shall be valid or become obligatory for any purpose or be binding upon Owner, or be entitled to the benefits and security of this Indenture, unless and until it has been authenticated by Trustee's execution of the certificate of authentication thereon in the form prescribed herein.  The authentication and delivery by Trustee of any Note shall be conclusive and the only competent evidence that such Note has been duly issued and is entitled to the benefits and security of this Indenture.

Section 2.7.  <u>Transfers and Exchanges</u>.  (a)  Notes shall be transferred or exchanged only on the Register.  Any Note or Notes may, upon surrender to Trustee at the Corporate Trust Office, be transferred or be exchanged for one or more Notes of the same series, tenor and aggregate outstanding principal amount at the time, as requested by the registered owner thereof, provided that in the case of a transfer to a third party, the Note to be transferred shall be accompanied by an instrument of transfer satisfactory to Trustee, and provided further that in the case of a requested exchange or transfer of a lost, destroyed or stolen Note, such registered owner shall not be required to surrender such Note, but shall furnish to Owner and Trustee such indemnity (which, if such registered owner shall be the original purchaser of any Note, its nominee or affiliate, shall consist only of an agreement to indemnify Owner and Trustee against loss or liability in connection with the issuance of a new Note) and such evidence of loss, destruction, theft and ownership as they may reasonably require.  Owner shall thereupon execute, and Trustee authenticate and deliver, a new Note or Notes, of like series and tenor, in the requested authorized denomination or denominations, for the same aggregate original principal amount, and registered in the requested name.  Trustee shall not be required to transfer any Note on the Register during the period of the 10 days next preceding any Instalment Payment Date.

(b)  Trustee shall mark on each such new Note (i) the principal amount of such new Note, (ii) the date to which interest has been paid on the Note or Notes so surrendered, (iii) the amount of all payments and prepayments of principal previously made on the Note or Notes so surrendered which are allocable to such new Note, and (iv) the amount of each Instalment Payment payable on such new Note.  Each Instalment Payment payable on such new Note shall bear the same proportion to the corresponding Instalment Payments on the Note or Notes so surrendered as the principal amount of such new Note bears to the principal amount of the Note or Notes so surrendered.  Interest shall be deemed to have been paid on such new Note to the date to which interest shall have been paid or shall have on the Note or Notes so surrendered, and all payments and

-13-

VOL 6150 PG 2269

OFFICIAL RECORDS

prepayments of principal marked on such new Note shall be deemed to have been made thereon.  Such new Note shall be dated the date of the Note or Notes so surrendered.  No service charge shall be made for any exchange or transfer of Notes, but Owner may require payment of a sum to cover any tax or governmental charge that may be imposed with respect thereto. All Notes issued in exchange or substitution for Notes so surrendered shall be valid obligations of Owner, evidencing the same debt as the Notes surrendered and shall be entitled to the benefits and security of this Indenture.

Section 2.8.  <u>Trustee as Agent</u>.  Trustee is hereby appointed the agent of the registered owners of the Notes for the payment, registration, transfer and exchange of Notes. Subject to the provisions of Section 2.3(b), Notes may be presented for payment at or sent to the Corporate Trust Office.

Section 2.9.  <u>Registered Owner</u>.  Owner and Trustees shall deem and treat the registered owner of any Note as the absolute owner thereof (whether or not such Note shall be overdue) for the purpose of receiving payments of principal, premium, if any, and interest on such Note and for all other purposes, and neither Owner nor Trustees shall be affected by any notice to the contrary.  All such payments made to or upon the order of such registered owner, including, without limitation, all payments made pursuant to Section 2.3(b), shall be valid and effectual to satisfy and discharge the liability upon such Note to the extent of the sum or sums so paid.

Section 2.10.  <u>Cancellation of Notes</u>.  All Notes surrendered to Trustee for the purpose of payment, prepayment, transfer or exchange shall be cancelled by it, and no Notes shall be issued in lieu thereof except as expressly required or permitted by this Indenture.  Trustee shall hold all such cancelled Notes until this Indenture shall have been discharged, at which time Trustee shall either deliver such cancelled Notes in the manner necessary to effect the discharge and release of this Indenture or, if no such delivery is necessary, shall deliver such cancelled Notes to Owner.

VOL 6150 PG 2270

✎ OFFICIAL RECORDS ✎

ARTICLE 3
Particular Covenants of Owner

Owner hereby represents, warrants, covenants and agrees as follows:

Section 3.1.   Title to the Trust Estate; Use Thereof. Owner has good and marketable fee simple title to the Land Parcel and the Improvements, in each case, free and clear of all liens, encumbrances, charges and other exceptions to title except Permitted Exceptions.  Owner has and shall have full right, power and lawful authority to Grant the Trust Estate to Trustees in the manner and form herein done or intended; and shall, subject to its rights to transfer the Property in compliance with Section 4.5, preserve its title to the Property subject only to Permitted Exceptions; and forever warrants and defends the same to Trustees against the claims of all persons.  This Indenture constitutes a valid first lien on the Property, subject only to Permitted Exceptions of the character described in clauses (a) through (e) of the definition of Permitted Exceptions.

Section 3.2.   Further Assurances.  Owner will, at its expense, do, execute, acknowledge and deliver or cause to be done, executed, acknowledged and delivered all such further acts, instruments and assurances reasonably required by Trustee for the better Granting to Trustees of the Trust Estate hereby Granted or for carrying out the intention of, or facilitating the performance of, this Indenture.

Section 3.3.   Recording.  Owner will, upon the execution and delivery hereof and thereafter from time to time, cause this Indenture, the Lease (or a memorandum thereof), the Assignment, each supplement and amendment to each of said instruments and financing statements with respect thereto and each instrument of further assurance (collectively called the Recordable Documents) to be filed, registered and recorded as may be required by law to publish notice and maintain the lien hereof upon the Trust Estate and to publish notice of and protect the validity of the Recordable Documents.  Owner will, from time to time, perform or cause to be performed any other act as required by law and will execute or cause to be executed any and all further instruments (including financing statements, continuation statements and similar statements with respect to any of said documents) reasonably requested by Trustee for such purposes.  If Owner shall fail to comply with this Section, Trustee shall be and is hereby irrevocably appointed the agent and attorney-in-fact of Owner to comply therewith (including the execution, delivery and filing of such financing statements and other instruments), but this sentence shall not prevent any default in the observance of this Section from constituting an Event of Default.  To the extent permitted

-15-

ᵸ 6150 ᵣ 2271

⸦ OFFICIAL RECORDS ⸧

by law, Owner shall pay or cause to be paid recording taxes and fees incident thereto and all expenses, taxes and other governmental charges incident to or in connection with the preparation, execution, delivery or acknowledgment of the Recordable Documents, any instruments of further assurance and the Notes.

Section 3.4.  <u>Payment of the Notes</u>.  Owner will punctually pay, or cause to be paid, the principal, interest, premium, if any, and all other sums to become due in respect of the Notes in accordance with this Indenture and the Notes.

Section 3.5.  <u>The Lease</u>.  At all times the Property shall be leased to Lessee under the Lease, provided, that the Property may be subleased and/or the Lease may be assigned and/or the Property may be transferred upon compliance with the Lease and the provisions hereof.  Owner will punctually perform all obligations, covenants and agreements by it to be performed as lessor under the Lease in accordance therewith and will at all times do all things necessary to compel performance by Lessee of all its obligations, covenants and agreements under the Lease.  Owner will give to Trustee notice of all defaults thereunder promptly after obtaining knowledge thereof.  Owner will maintain the validity and effectiveness of the assignment to Trustees of the Lease made by this Indenture and the Assignment and (except as expressly permitted by the Lease, this Indenture or the Assignment) will take no action, will permit no action to be taken by others and will not omit to take any action, which action or omission would release Lessee from its obligations or liabilities under the Lease or would result in the termination, amendment or modification or impair the validity of the Lease or the Assignment.

Section 3.6.  <u>Existence; Compliance with Laws</u>.  (a) Owner will keep in full force and effect its existence, franchises, rights and privileges as a corporation in the State of Florida and will do or cause to be done all things necessary to preserve and keep in full force and effect its right to own property and to enforce contracts in the State of Florida. Owner will comply with or cause to be complied with (a) any applicable law, or other legal requirement or order of the United States, of any state or of any other governmental authority and (b) any contract, agreement or other instrument to which Owner is a party or has given its consent, provided, in each case, Lessee is not contesting such compliance pursuant to the Lease.

(b)  Owner may, at its expense, contest or cause to be contested, by appropriate legal proceedings conducted in good faith and with due diligence, compliance with any law, legal requirement or order of the United States, any state or any other governmental authority or any contract, agreement or other instrument (including without limitation the requirements

-16-

VOL 6150 PG 2272

OFFICIAL RECORDS

imposed by or for the benefit of any insurer pursuant to any insurance agreement), provided that (i) such proceedings shall suspend the collection thereof from the Trust Estate, any interest therein, Basic Rent, Additional Rent, purchase payments or other sums payable under the Lease, (ii) neither the Trust Estate, any part thereof or interest therein, nor Basic Rent, Additional Rent, purchase payments or any other sums payable under the Lease or any portion thereof would be in danger of being sold, forfeited or lost by reason of such proceedings, (iii) such contract, agreement or other instrument (including any insurance agreement) would not be rendered invalid or unenforceable by reason of such contest (provided that such contest relates only to the payment of sums or the performance of acts required thereunder and not the validity, legality, enforceability or applicability of any such contract, agreement or instrument) and (iv) such proceedings would not subject Trustees or any registered owner of a Note to any civil or criminal liability.

Section 3.7.    After-acquired Property.    All right, title and interest of Owner in and to all improvements, alterations, substitutions, restorations and replacements of, and all additions and appurtenances to the Property, hereafter acquired by or released to Owner, immediately upon such acquisition or release and without any further Granting by Owner, shall become part of the Property and the Trust Estate and shall be subject to the lien hereof fully, completely and with the same effect as though now owned by Owner and specifically described in the Granting Clauses hereof.    Owner shall execute and deliver to Trustees any further assurances, mortgages, grants, conveyances or assignments thereof as Trustee may reasonably require to subject the same to the lien hereof.

Section 3.8.    Taxes.    (a) Owner will do or cause to be done everything necessary to preserve the lien hereof without expense to Trustees, including, without limitation, paying and discharging or causing to be paid and discharged, whether or not payable directly by Owner or subject to withholding at the source, (i) all taxes, assessments, levies, fees, water and sewer rents and charges and all other governmental charges, general, special, ordinary or extraordinary, and all charges for utility or communications services, which may at any time be assessed, levied or imposed upon Owner, the Trust Estate, this Indenture, the indebtedness secured hereby or the revenues, rents, issues, income and profits of the Trust Estate or which may arise in respect of the occupancy, use, possession or operation thereof, (ii) all income, excess profits, sales, gross receipts and other taxes, duties or imposts, whether similar or not in nature, assessed, levied or imposed by any governmental authority on Owner, the Trust Estate or the revenues, rents, issues, income and profits of the Trust Estate

-17-

VCT 6150 PG2273

OFFICIAL RECORDS

and (iii) all lawful claims and demands of mechanics, laborers, materialmen and others which, if unpaid, might create a lien on the Trust Estate, or on the revenues, rents, issues, income and profits of the Trust Estate, unless in each case Lessee, in good faith and at its own expense, shall contest the amount or the validity thereof in accordance with the Lease or Owner shall contest the amount or validity thereof in accordance with Section 3.8(b).  Nothing in this Section shall require the payment by Owner of any net income or franchise or similar tax of Trustees, Lessee or the registered owners of the Notes.

(b)  Owner may, at its expense, contest or cause to be contested (in the case of any item involving more than $25,000, such contest may be made only after prior written notice to Trustee), by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity or application, in whole or in part, of any item specified in Section 3.8(a) or lien therefor, provided that (i) such proceeding shall suspend the collection thereof from the Trust Estate, any interest therein, Basic Rent, Additional Rent, purchase payments or other sums payable under the Lease, (ii) neither the Trust Estate nor any interest therein, Basic Rent, Additional Rent, purchase payments or any other sums payable under the Lease or any portion of either thereof, would be in any danger of being sold, forfeited or lost by reason of such proceedings and (iii) such proceedings would not subject Trustees or any registered owner of a Note to any civil or criminal liability.

Section 3.9.  Insurance.  (a) Owner will maintain, or cause to be maintained with respect to the Property, insurance of the character and with the coverage, provisions and mortgagee endorsement required to be maintained by the Lease, whether or not the Lease shall have been terminated.

(b)  Each such insurance policy shall provide that it shall not be cancelled except after 30 days' written notice to Trustees and that it shall not be invalidated by any act or neglect of Owner, nor by occupancy of the Property for purposes more hazardous than permitted by such policy, nor by any foreclosure or other proceedings relating to the Property, nor by change in title to the Property.  In the event of termination of the Lease, all insurance referred to in paragraph 11 of the Lease and required by this Section 3.9(b) shall be in form satisfactory to Trustee and in amounts not less than the amount required by the Lease and in no event less than the aggregate unpaid principal balance of the Notes, together with the aggregate interest accrued and unpaid thereon.  Such insurance shall be issued by insurance companies as required pursuant to the Lease and satisfactory to Trustee.

ᴠᴏʟ 6150 ᴘᴀɢᴇ 2274

⍯ OFFICIAL RECORDS ⍰

(c)   Insurance claims by reason of damage to or destruction of the Property shall be adjusted by Lessee or Owner in accordance with the Lease, but Trustees shall have the right to join in adjusting any such claim in excess of $100,000, and Owner shall assist Trustees in any such adjustment at their request.

(d)   Owner will not take out any separate insurance concurrent in form or contributing in the event of loss with that required to be maintained under this Section unless Trustees are included therein as named insureds, with loss payable to Trustees as provided in the Lease.  Owner shall immediately notify Trustee whenever any such separate insurance is taken out, specifying the insurer and full particulars as to the policies evidencing the same, and shall deliver to Trustees certificates of insurers evidencing such insurance.

(e)   Owner will, on the date of the delivery hereof, deliver or cause to be delivered to Trustee original copies of all policies of insurance (or certificates of the insurers under such policies evidencing the same) as may be required pursuant hereto to be maintained or to be caused to be maintained by Owner.  Thereafter, at least 30 days prior to the expiration of such insurance and within 10 days of the issuance of any additional policies or amendments or supplements to any of such policies, Owner will deliver or cause to be delivered duplicate original copies of the same (or certificates of the insurers under such policies evidencing the same) to Trustee.

Section 3.10.  <u>Advances by Trustees</u>.  If Owner shall fail to perform or cause to be performed any of the covenants contained in Section 3.3, 3.6, 3.8 or 3.9, Trustees may make advances to perform the same in Owner's behalf, and all sums so advanced shall be secured hereby prior to the Notes; and Owner shall repay on demand all sums so advanced with interest thereon at the rate of the greater of (i) 11.95% per annum and (ii) the prime rate established by Trustee on the date such advance is made plus 3% (or the highest rate not prohibited by law, whichever is less), such interest to be computed from and including the date of the making of such advance to and including the date of such repayment.

Section 3.11.  <u>Negative Covenants</u>.  Owner will not (i) sell, lease, transfer, convey, assign or otherwise dispose of the Trust Estate or any part thereof except as provided in Article 4 or in the Lease; (ii) claim any credit on, or make any deduction from interest or premium, if any, or on principal of the Notes by reason of payment of any taxes levied or assessed or to be levied or assessed on the Trust Estate; or (iii) create or suffer to be created, directly or indirectly, any mortgage, lien, encumbrance, charge or other exception to title or ownership upon or against the Trust Estate or any

VOL 6150 PG 2275

OFFICIAL RECORDS

rents or other income arising therefrom, other than Permitted
Exceptions and as expressly permitted by this Indenture or by
the Lease.  Owner shall not (i) create, assume or suffer to
exist any indebtedness for borrowed money, except the Notes and
other indebtedness fully subordinated to the Notes incurred in
connection with a sale of the Property in accordance with
Section 4.5 (provided that so long as any Note remains
outstanding, such other indebtedness shall (x) be governed by a
provision substantially similar to Section 9.4 of this
Indenture, (y) provide that the holder of such indebtedness
shall neither accelerate the amounts due thereunder nor
institute foreclosure of the lien thereof and (z) provide that
it will not constitute a claim except to the extent of the
proceeds of the security therefor); provided that regular
instalment payments of principal and interest may be made on
such subordinated indebtedness so long as no Event of Default
has occurred and is continuing hereunder; (ii) make or permit
to remain outstanding any loan or advance to any person;
(iii) own or acquire any stock or securities of, any person, or
guarantee any obligation (including, without limitation, any
lease) of any person; (iv) engage directly or indirectly in any
business other than the acquisition and ownership of its
interests in and leasing of the Property; or (v) use moneys
from any employee benefit plan (as defined in the Employee
Retirement Income Security Act of 1974, as amended) established
by Owner to perform any of Owner's obligations under this
Indenture or transfer its interest in the Trust Estate to any
such employee benefit plan.

Section 3.12.  <u>Lease Basic Rent</u>.  Each instalment of
Basic Rent, on each date for the payment thereof, shall be
sufficient to make all payments on the Notes due on or about
such date; and the purchase price which would be payable by
Lessee upon the purchase of the Property pursuant to the Lease
on any date and rental due on such date shall not be less than
the then aggregate unpaid balance of the Notes, together with
accrued and unpaid interest thereon and any applicable premium.

Section 3.13.  <u>Payment of Trustees' Compensation</u>.
Owner shall pay or cause to be paid the compensation to which
Trustees are entitled hereunder and all disbursements and other
expenses incurred by Trustees hereunder, and all taxes which
may be assessed against Trustees arising from this transaction
(except income and similar taxes with respect to Trustees'
compensation) as such or against funds on deposit with Trustee
pursuant hereto which Trustees might be required or permitted
by law to deduct from such deposit and pay, and all statutory
penalties or other payments which Trustees may be required to
pay or make hereunder or by virtue hereof.

Section 3.14  <u>Performance by Lessee</u>.  Compliance by
Lessee or any sublessee of the Property with the terms of the

VOL 6150 PG 2276

OFFICIAL RECORDS

Lease or any sublease which if performed by Owner would
constitute compliance by Owner with the provisions of this
Indenture shall be deemed compliance by Owner herewith.
Performance by Lessee or any sublessee of any of Owner's
obligations hereunder, whether or not pursuant to the Lease or
any sublease, shall be the equivalent of Owner's performance
thereof.

6150 2277

OFFICIAL RECORDS

ARTICLE 4
Possession, Use and Release of the Trust Estate

Section 4.1.  Receipt of Money.  Trustees shall
receive and collect directly and without the intervention or
assistance of any fiscal agent or other intermediary all rents
and other sums required or permitted to be paid to Trustees
under the Lease and the Assignment and shall hold and disburse
the same pursuant to this Indenture.  Trustees may demand and
enforce payment thereof and may take such other action as they
deem necessary or advisable in connection therewith.

Section 4.2.  Lease Termination.  (a) Within 5 days
after receipt by Owner of any notice from Lessee given pursuant
to the Lease of the intention of Lessee to terminate the Lease
and containing its offer to purchase the Property pursuant to
paragraphs 12(b), 13(c) or 14 of the Lease (or to purchase any
Net Casualty Proceeds or Net Condemnation Proceeds paid or
payable with respect thereto), Owner shall furnish to Trustees
and each registered owner of a Note a copy of such notice and
any certificate delivered in connection with such notice.
Owner will, not later than the tenth day prior to the
expiration date of the period within which such offer may be
rejected, either (i) notify Lessee of the acceptance thereof
and thereafter comply with all applicable provisions of the
Lease so that the purchase by Lessee of the Property shall be
duly consummated within the time prescribed by the Lease or
(ii) pay to Trustee by bank-wire transfer of immediately
available funds an amount equal to the amount specified in
Schedule D of the Lease as determined on the Termination Date
(as defined in the Lease).  If Owner shall not make said
payment and shall fail to notify Lessee of its acceptance of
such offer prior to the date referred to above, or if after
notifying Lessee of such acceptance, shall fail to comply with
the applicable provisions of the Lease or otherwise cause the
same to be complied with, Trustee shall, and shall have the
right and power (which right and power are coupled with an
interest) to, and is hereby irrevocably appointed the agent and
attorney-in-fact of Owner and of any and every future assignee
or owner of the Property or any interest therein to, notify
Lessee of such acceptance and take all actions necessary to
comply with the applicable provisions of the Lease, including,
without limitation, the execution and delivery, in the name and
on behalf of Owner or other assignee or owner of the Property
of any interest therein, of a deed or other instrument of
conveyance or assignment, conveying and assigning the Property
(or the Net Casualty Proceeds or Net Condemnation Proceeds
relating thereto) to Lessee or its designee; but the provisions
of this sentence shall not prevent the failure of Owner to
convey the Property (or the Net Casualty Proceeds or Net
Condemnation Proceeds relating thereto) in accordance herewith
from constituting an Event of Default.  If Lessee shall

VOL 6150 PG 2278

OFFICIAL RECORDS

purchase the Property pursuant to paragraphs 12(b), 13(c) or 14(b) of the Lease and shall make payment of the purchase price therefor to Trustee and otherwise shall be in compliance with the Lease, or if Owner shall make the payment referred to in clause (ii) of this Section 4.2(a), then Trustees shall execute and deliver to Owner or its designee a release, in recordable form, of the Property and the Lease from the lien of this Indenture promptly after receipt of such payment, together with all other sums then due and payable under this Indenture. If the payment referred to in clause (ii) of this Section 4.2(a) shall be paid to Trustee, then Trustees shall promptly execute and deliver to Lessee their written consent to the rejection made by Owner of such offer.

Payments received by Trustee pursuant to this Section 4.2(a) shall become part of the Trust Estate and shall be applied pursuant to Article 5. If such notice shall be received by Trustee from Lessee, Trustee shall promptly furnish a copy thereof to Owner, and the provisions of this Section shall be applicable to the same extent as if such notice had been received by Owner from Lessee upon the furnishing of such copy to Owner.

(b)  Each deed or other instrument of conveyance or assignment executed and delivered by Trustee pursuant to this Section shall be binding upon Owner and every future owner of the Property or any interest therein with the same effect as if Owner and every such owner had personally executed and delivered the same, and every such owner by receipt or acquisition of any right, title or interest in the Property hereby irrevocably appoints Trustee as its agent and attorney-in-fact with the power and authority (which power and authority are coupled with an interest) to execute and deliver such deeds or other instruments of conveyance or assignment in its behalf and name.

(c)  Trustee shall not give notice to Lessee of the acceptance of such offer until after the tenth day prior to the expiration date of the period within which such offer may be rejected.

Section 4.3.  <u>Casualty and Condemnation</u>.  Owner, immediately upon obtaining knowledge of any damage or casualty to the Property or of any proceeding for the taking of the Property in condemnation or other eminent domain proceeding, shall notify Trustee.  Trustees may participate in any proceedings relating to such damage, casualty, condemnation or other eminent domain, and Owner will deliver or cause to be delivered to Trustees all instruments requested by Trustee to permit such participation.  Any insurance proceeds, award or compensation payable to Owner or assigned to Owner by Lessee is hereby assigned to and shall be paid to Trustee, subject to the

VOL 6150 PG 2279

OFFICIAL RECORDS

rights of Lessee thereto pursuant to the Lease.
Notwithstanding the foregoing, any such insurance proceeds,
award a compensation held by Trustee pursuant to paragraph
12(c) or 13(b) of the Lease, shall, until disbursed to Lessee
in accordance with paragraphs 12(c) or 13(b) of the Lease,
either (i) be deposited by Trustee in accounts insured by the
Federal Deposit Insurance Corporation or the Federal Savings
and Loan Insurance Corporation or (ii) invested in obligations
of (x) the United States of America or any agency thereof whose
obligations are backed by the full faith and credit of the
United States of America, (y) any financial institution whose
long-term debt obligations are rated A+ or better by Standard &
Poor's Corporation or (2) any financial institution whose
commercial paper is rated A-1+ or better by Standard & Poor's
Corporation.   Trustees shall be under no obligation to question
the amount of the insurance proceeds, award or compensation and
may accept the same.   In any such proceeding Trustees may be
represented by counsel satisfactory to Trustee at the expense
of Owner or Lessee shall (i) fail to employ counsel
reasonably satisfactory to Trustees, (ii) elect not to assume
the defense of such proceeding or (iii) fail to diligently
prosecute the defense thereof.   Any award or compensation so
received shall be applied pursuant to Article 5.

     Section 4.4.   <u>Conveyance in Anticipation of
Condemnation, Granting of Easements, Etc</u>.   If no default shall
have happened and be continuing, Owner may, from time to time
with respect to its interests in the Property, (i) sell,
assign, convey or otherwise transfer any interest therein to
any person legally empowered to take such interest under the
power of eminent domain, (ii) grant easements and other rights
in the nature of easements, (iii) release existing easements or
other rights in the nature of easements which are for the
benefit of the Property, (iv) dedicate or transfer unimproved
portions of the Property for road, highway or other public
purposes, (v) execute petitions to have the Property annexed to
any municipal corporation or utility district, (vi) execute
amendments to any covenants and restrictions affecting the
Property and (vii) execute and deliver to any person any
instrument appropriate to confirm or effect such grants,
releases, dedications and transfers, and Trustees shall execute
and deliver an instrument necessary or appropriate to consent
to said action and/or to release said interest, right or
portion from the lien hereof upon receipt by Trustees of:

          (a) such instrument;

          (b) a certificate of the President or a Vice
President of Lessee stating that such action is not
detrimental to the proper conduct of business on the
Property, reciting the consideration, if any, being

VOL 6150 PG 2280

OFFICIAL RECORDS

paid in connection with such action and stating that
such action does not materially impair the use of the
Property or materially reduce its value and, if such
action is of the character described in clause (i)
above, stating that said action is being taken in
anticipation that the interest in question would
otherwise be taken under the power of eminent domain;

(c) a duly authorized and binding undertaking of
(i) Lessee that Lessee will remain obligated under the
Lease and the Assignment in accordance with their
respective terms; and (ii) of Owner that Owner will
remain obligated under this Indenture and the
Assignment in accordance with their respective terms,
in each case to the same extent as if such action had
not occurred; and

(d) such other instruments, certificates and
opinions of counsel as Trustee may reasonably request.

Section 4.5.  Transfer of the Property.  If no default
shall have happened and be continuing, Owner may sell, assign
or otherwise transfer all or any part of its interests in the
Property subject to the lien hereof, the Lease and the
Assignment, provided that upon any such sale, assignment or
transfer the purchaser, assignee or transferee shall execute
and deliver to Trustee an instrument, in form and substance
satisfactory to Trustee, irrevocably appointing Trustee as
agent and attorney-in-fact with the right and power (which
right and power are coupled with an interest) to take all
actions and do all things in the name and on behalf of such
purchaser, assignee or transferee of the character which
Trustee is authorized hereby to do as agent and
attorney-in-fact of Owner, and to execute and deliver in the
name and on behalf of such purchaser, assignee or transferee
any deed or other instrument which, pursuant to the terms
hereof, Trustee is authorized to execute and deliver in the
name and on behalf of Owner.  In connection with a sale by
Owner of its interest in the Property, Owner's transferee shall
expressly agree (a) that the interest or estate so acquired is
subject and subordinate to this Indenture, the Lease and the
Assignment and (b) to be bound by all of the obligations and
undertakings of Owner contained in this Indenture applicable to
the Property and Owner, subject to the provisions of
Section 9.4 of this Indenture.

VOL 6150 PG 2281

OFFICIAL RECORDS

## ARTICLE 5
## Application of Moneys

Section 5.1. <u>Moneys Under the Lease</u>. (a) Unless and until an Event of Default shall have happened and be continuing to Trustee's knowledge, moneys received by Trustee pursuant to the Assignment as Basic Rent and as interest on any overdue instalment thereof shall be applied, first to the payment of the initial interest payment or Instalment Payment on the Notes, together with interest on any overdue amount or amounts thereof, due on or about the date on which such payment of Basic Rent is due, and second (if no default has occurred and is continuing under the Notes or this Indenture) the excess, if any, shall be paid to Owner or upon its written order, free of the lien hereof.

(b) Any moneys received by Trustee as Additional Rent or other sums payable under the Lease shall be applied first to the purposes for which such moneys were paid pursuant thereto and second (if no default has occurred and is continuing under the Notes or this Indenture) the excess, if any, shall be paid to Owner or upon its written order, free of the lien hereof.

Section 5.2. <u>Purchase Price</u>. Moneys received by Trustee as the purchase price for the Property pursuant to paragraphs 12(b), 13(c) or 14 of the Lease or from Owner pursuant to clause (ii) of Section 4.2(a) of this Indenture upon a rejection of an offer by Lessee to purchase the Property pursuant to such paragraphs of the Lease shall be applied first to the payment or prepayment of the aggregate unpaid principal balance of the Notes at a price equal to 100% of the principal amount thereof, plus accrued and unpaid interest thereon to the date fixed for payment, without premium, and second (if no default shall have occurred and be continuing under the Notes or this Indenture) the excess, if any, shall be paid to Owner or upon its written order after such payment or prepayment, free of the lien hereof.

Section 5.3. <u>Proceeds of Insurance; Condemnation Awards, Minor Releases</u>. Moneys received by Trustee as payment for loss under any policy of insurance (including mortgage title insurance) or as an award or compensation for the taking, in condemnation or other eminent domain proceedings, of the Property, shall be paid over to Lessee as and to the extent that Lessee is entitled to receive the same under the Lease.

vi 6150 pg 2282

OFFICIAL RECORDS

### ARTICLE 6
#### Prepayment

Section 6.1.  <u>Prepayment</u>.  No prepayment of the Notes may be made except as provided in Article 5 in connection with moneys received under paragraphs 12(b), 13(c) and 14 of the Lease or from Owner pursuant to clause (ii) of Section 4.2(a) of this Indenture.

Section 6.2.  <u>Deposit of Moneys</u>.  On or prior to the date fixed for any prepayment of any of the Notes, the moneys required for such prepayment shall be deposited or caused to be deposited with Trustee by Owner.  Interest on any Note designated for prepayment shall cease upon the date fixed for prepayment unless default shall be made in the prepayment thereof.

VCL 6150 PG 2283

*OFFICIAL RECORDS*

ARTICLE 7
Events of Default and Remedies

Section 7.1.   Events of Default.  If one or more
of the following Events of Default shall happen, that is to say:

(a)  if default shall be made in the payment of
any interest payment or Instalment Payment, when and as the
same shall become due and payable and such default shall
continue for five (5) days after written notice to Owner
thereof, or in any other payment of the principal, interest, or
premium, if any, on the Notes, when and as the same shall
become due and payable, whether at maturity, by acceleration or
as part of any prepayment or otherwise, as in the Notes and
this Indenture provided;

(b)  subject to the provisions of Section 7.1.VI,
if an Event of Default (as defined in the Lease) under the
Lease shall have occurred and be continuing;

(c)  if a default shall have occurred and be
continuing under the Assignment or the Note Purchase
Agreements, each dated as of the date hereof, between Owner and
Commonwealth Life Insurance Company and Peoples Security Life
Insurance Company, respectively;

(d)  if any representation or warranty of Owner
or Lessee set forth in (i) any certificate delivered in
connection with the making of the loan secured hereby,
(ii) this Indenture, the Lease or the Assignment (and consent
thereto) or (iii) any certificate, notice, demand or request
delivered to Trustees or any registered owner of Notes pursuant
to this Indenture, the Lease or the Assignment shall be
incorrect in any material respect, as of the time when the same
shall have been made or as to continuing warranties as of any
time when the same shall be in effect;

(e)  if default shall be made in the due
observance or performance of any covenant or agreement
contained in the first or fourth sentence of Section 3.5 or in
Section 3.11, 3.12, 4.2 or 4.5;

(f)  if Owner shall fail to keep in full force
and effect its existence, rights, franchises and privileges,
except in the case of a merger, consolidation or sale or
transfer of substantially all of Owner's assets as an entirety,
provided that the survivor of such merger or consolidation has
a net worth at least equal to that of Owner and such survivor
or the transferee of such assets has expressly assumed the
obligations of Owner under the Notes, this Indenture and the
Assignment;

-28-

VOL 6150 PG 2284

OFFICIAL RECORDS

(g)   if default shall be made in the due observance or performance of any other covenant, condition or agreement of Owner contained herein or in any of the Notes and any such default shall have continued for 30 days after written notice thereof to Owner (provided, that in the case of any such default which cannot be cured by the payment of money and cannot with diligence be cured within such 30-day period, if Owner shall commence promptly to cure the same and thereafter prosecute the curing thereof with diligence, the time within which such default may be cured shall be extended for such period as is necessary to complete the curing thereof with diligence and continuity but not in excess of 90 days);

(h)   subject to the provisions of clause 7.1(VI), if Trustee shall not actually receive directly any payment of Basic Rent pursuant to the Assignment which has been paid irrespective of the reason for such non-receipt;

(i)   if a receiver, United States Trustee, trustee or liquidator (or other similar official) of the Trust Estate or of Owner or any then owner of Owner's interest in the Trust Estate shall be appointed in any proceeding or by any federal or state officer or agency and shall not be discharged within 60 days after such appointment, or if Owner or any such owner shall consent to such appointment, or if a custodian for purposes of any federal bankruptcy statute of substantially all of Owner's or any such owner's interest in the Trust Estate is appointed or otherwise takes possession thereof, or if by decree of such court Owner or such owner shall be adjudicated a bankrupt or be declared insolvent under any federal or state bankruptcy laws, or if an order for relief shall be entered in any bankruptcy proceeding (for all purposes of clauses (i), (j), (k) and (l) of this Section 7.1, references to Owner, as opposed to "any then owner of Owner's interest", shall be deemed to be effective only if and to the extent that Owner retains any interest in the Trust Estate or any liability with respect thereto hereunder);

(j)   if Owner shall be liquidated or dissolved or shall begin proceedings toward its liquidation or dissolution, or if Owner or any such owner shall file a petition commencing a voluntary case under any federal bankruptcy or similar law or in bankruptcy or for reorganization or for an arrangement pursuant to any state bankruptcy or similar law or shall make an assignment for the benefit of its creditors or shall admit in writing its inability to pay its debts generally as they become due or shall consent to the appointment of a receiver of the Trust Estate, or if a petition or an answer proposing the reorganization of Owner or any such owner pursuant to the Federal Bankruptcy Code or any similar law, federal or state, shall be filed in, and approved by, any court;

VOL 6150 PG 2285

OFFICIAL RECORDS

(k)  if Owner or any such owner shall generally not pay its debts as such debts become due or if an involuntary case against Owner or any such owner, as debtor, is commenced by a petition for reorganization or liquidation under any federal bankruptcy or similar law, federal or state, and if such petition shall not be discharged or denied within 60 days after the date on which such petition was filed; or

(l)  if final judgment for the payment of money shall be rendered against Owner or any such owner and Owner or any such owner, as the case may be, shall not discharge the same or cause it to be discharged within 30 days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal or shall not provide Trustees with an indemnity bond or other security for the payment thereof, in each case, satisfactory to Trustees and the registered owners of the Notes;

then in every such case during the continuance of any Event of Default:

I.   Upon notice to Owner, Trustees may, and upon the request of the registered owners of a majority in principal amount of the outstanding Notes shall, declare the entire unpaid principal amount of the Notes (if not then due and payable) and all accrued and unpaid interest thereon to be due and payable immediately, anything in the Notes or in this Indenture contained to the contrary notwithstanding.

II.  Either Trustee personally, or by its agents or attorneys, may enter into and upon the Trust Estate (including the Property) and may exclude Owner and its agents and servants wholly therefrom; and, at the expense of the Trust Estate, may use, operate, manage and control the same and conduct the business thereof, may maintain and restore the Property, may insure and reinsure the same and may make all necessary or proper repairs, renewals and replacements and any useful alterations, additions, betterments and improvements thereto and thereon, all as it may deem advisable; and in every case Trustees shall have the right to manage and operate the Trust Estate and to carry on the business thereof and exercise all rights and powers of Owner with respect thereto either in the name of Owner or otherwise as Trustees shall deem best. Trustees shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Trust Estate and said earnings, revenues, rents, issues, profits and income are hereby assigned to Trustees, their successors in trust and their assigns. After deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and

VOL 6150 PG 2286

OFFICIAL RECORDS

improvements and taxes, assessments, insurance and prior or other proper charges upon the Trust Estate, as well as reasonable compensation for the services of all attorneys, servants and agents by Trustees properly engaged and employed (including compensation and expenses in connection with any appeal), Trustees shall apply the moneys arising as aforesaid as follows:

(1)  if an Event of Default other than an Event of Default described in clause (a) of this Section shall have happened, first to the payment of the Instalment Payments and any other payments of the interest on the Notes and principal thereof, when and as the same shall become payable, and second to the payment of any other sums required to be paid by Owner under this Indenture; or

(2)  if an Event of Default described in clause (a) of this Section shall have happened, in the order of priorities and amounts set forth in clauses second, third, fourth and fifth of Section 7.2(e).

Trustees shall apply any moneys received as final liquidated damages pursuant to paragraph 19(h) of the Lease in the order of priorities and amounts set forth in Section 7.2(e).

III.   Trustees, with or without entry, personally or by their agents or attorneys, may, and upon the written request of the registered owners of a majority in principal amount of the outstanding Notes, shall:

(1)   sell, to the extent permitted by law, all and singular the Trust Estate and all estate, right, title, interest, claim and demand therein and right of redemption thereof at one or more private or public sales, as an entirety or in parcels and at such times and places and upon such terms as Trustees may specify in the notice or notices of sale to be given to Owner or as may be required by law;

(2)   institute proceedings for the complete or partial foreclosure hereof; or

(3)   take all steps to protect and enforce their rights and remedies, whether by action, suit or proceeding in equity or at law (for the specific performance of any covenant, condition or agreement in the Notes or in this Indenture contained or in aid of the execution of any power herein granted or for any foreclosure hereunder or for the enforcement of any other appropriate legal or equitable remedy) or otherwise as Trustees shall deem most effectual to protect and enforce the same.  Trustees may conduct any number of sales from time to time.  The power of sale shall not be exhausted by any one or more such sales as to any part of the Trust Estate

VT 6150 PG 2287

OFFICIAL RECORDS

remaining unsold, but shall continue unimpaired until all of the Trust Estate shall have been sold or the Notes and all indebtedness of Owner hereunder shall have been paid.

IV.   Pursuant to the power of sale hereby conferred, Trustees may sell the Trust Estate after having given all notices, made all postings and done all other acts required by and in the manner prescribed by applicable law with respect to the day, time, place, terms of the sale and otherwise.  In addition, Trustees shall have the statutory power of sale, if any, as may be provided by the law of the State of Florida. This Indenture is made upon the statutory conditions provided for by the law of the State of Florida.

V.   Trustees shall have all rights and remedies provided to a secured party by the Uniform Commercial Code with respect to such property in the Trust Estate, if any, as is governed by the Uniform Commercial Code.

VI.   If an event of default (as defined in the Lease) under the Lease shall have occurred and be continuing: (i) if such event of default shall be of the nature set forth in paragraph 19(a)(i)(A) of the Lease (herein called a Basic Rent Default), such Basic Rent Default shall not constitute an Event of Default under clause (b) of this Section 7.1 if Owner cures such Basic Rent Default within any grace period permitted under the Lease, provided that Owner shall not be entitled to cure more than twelve Basic Rent Defaults during the period this Indenture shall be in effect; provided, further, that Owner shall only be entitled to cure such Basic Rent Defaults so long as it shall (A) take any and all actions necessary to perform or cause to be performed all other obligations of Lessee under the Lease, including, without limitation, the repair, restoration and maintenance of the Property as required by the Lease and (B) permit Trustees and any registered owner of a Note to inspect the Property in order to determine if Owner is complying with the requirements of clause (A) of this proviso; and (ii) if such event of default shall be of the nature set forth in paragraph 19(a)(i)(C) of the Lease as it relates to paragraph 7 of the Lease or 19(a)(i)(D) of the Lease (herein called a Lease Default), such Lease Default shall not constitute an Event of Default hereunder if (A) with respect to a Lease Default that can be cured by the payment of money, Owner cures such Lease Default within 30 days after written notice of the failure which resulted in such Lease Default shall be given to Lessee and (B) with respect to a Lease Default that cannot be cured by a payment of money, Owner commences to cure such Lease Default 15 days after the occurrence thereof, prosecutes such cure with diligence and continuity and completes such cure within one year after written notice of the failure which resulted in such Lease Default was given to Lessee of the occurrence of such Lease

VOL 6150 PG 2288

OFFICIAL RECORDS

Default; provided, however, that the continuation of any such Lease Default during such period would not affect the payment of the Notes or the priority of the lien of this Indenture or result in a significant deterioration of the security provided by this Indenture.

Section 7.2. <u>Sale of Trust Estate; Application of Proceeds</u>. (a) Trustees may postpone any sale of all or any part of the Trust Estate under or by virtue of this Article by public announcement at the time and place of such sale, and from time to time thereafter may further postpone such sale by public announcement made at the time of sale fixed by the preceding postponement.

(b) Upon the completion of any sale made by Trustees under or by virtue of this Article, Trustees shall execute and deliver to the purchaser good and sufficient deeds and other instruments conveying, assigning and transferring all its estate, right, title and interest in and to the property and rights sold all without recourse to Owner or any subsequent owner of the Property. Trustees are hereby irrevocably appointed the true and lawful attorneys of Owner and any subsequent owner of the Trust Estate or any part thereof to make, in their own name and stead or in the name of Owner or any such subsequent owner, all necessary conveyances, assignments, transfers and deliveries of the property and rights so sold, all without recourse to Owner or any such subsequent owner, and for that purpose Trustees may execute all necessary deeds and instruments of assignment and transfer and may substitute persons with like power, Owner and every such subsequent owner hereby ratifying and confirming, all without recourse to Owner and any such subsequent owner, all that its said attorneys or such substitutes shall lawfully do by virtue hereof. Nevertheless, Owner and any such subsequent owner, if so requested in writing by Trustee, shall ratify and confirm any such sale by executing and delivering to Trustees, without recourse, or to such purchaser any instrument which, in the judgment of Trustee, is suitable or appropriate therefor. Any such sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Owner and any person claiming from, through or under Owner in and to the property and rights so sold, and shall be a perpetual bar at law and in equity against Owner and its successors, assigns and any and all persons who claim or may claim the same from, through or under any of them.

(c) The receipt of Trustees, or either of them, for the purchase money paid as a result of any such sale shall be a sufficient discharge therefor to any purchaser of the Trust

VOL 6150 PG2289

OFFICIAL RECORDS

Estate sold as aforesaid; and no such purchaser or its
representatives, grantees or assigns, after paying such
purchase money and receiving such receipt, shall be bound to
see to the application of such purchase money upon or for any
purpose hereof, shall be answerable in any manner whatsoever
for any loss, misapplication or nonapplication of any of such
purchase money or shall be bound to inquire as to the
authorization, necessity, expediency or regularity of any such
sale.

(d)  In the event of any sale made under or by virtue
of this Article (whether made under the power of sale herein
granted or under or by virtue of judicial proceedings or of a
judgment or decree of foreclosure and sale), the entire
principal of and interest on the Notes and all other sums
required to be paid by Owner pursuant hereto, if not previously
due and payable, shall immediately become due and payable,
anything in the Notes or in this Indenture to the contrary
notwithstanding, subject to provisions of Section 9.4 of this
Indenture.

(e)  The purchase money, proceeds or avails of any
sale made under or by virtue of this Article, together with any
other sums which then may be held by Trustees or any of them,
as part of the Trust Estate or the proceeds thereof, whether
under the provisions of this Article or otherwise, shall be
applied:  first, to the payment of the costs and expenses of
such sale, including reasonable compensation to Trustees, their
agents and counsel, and of any judicial proceeding wherein the
same may be made; second, to the payment of the whole amount
then owing on the Notes for interest; third, to the payment of
the whole amount then owing on the Notes for principal; fourth,
to the payment of any other sums secured by this Indenture; and
fifth, to the payment of the surplus, if any, to whosoever
shall be lawfully entitled thereto.

(f)  Upon any sale made under or by virtue of this
Article (whether made under any power of sale herein granted or
under or by virtue of judicial proceedings or of a judgment or
decree of foreclosure and sale), to the extent permitted by
applicable law, Trustees, on behalf of the registered owners of
Notes, may bid for and acquire the Trust Estate and in lieu of
paying cash therefor may make settlement for the purchase price
by crediting upon the indebtedness of Owner secured by this
Indenture the net proceeds of sale after deduction of all
costs, expenses, compensation and other charges to be paid
therefrom as herein provided and any other sums which Trustee
is authorized to deduct under this Indenture.  The person
making such sale shall accept such settlement without requiring
the production of any of the Notes, and without such
production, there shall be deemed credited thereon the pro rata
share of the net proceeds of sale ascertained and established

ᴇᴛ 6150 ᴘᴀɢ2290

⟋ OFFICIAL RECORDS Ꞌ

as aforesaid.  Trustees, or either of them, upon so acquiring the Trust Estate or any part thereof, shall be entitled to hold, deal with and sell the same in any manner provided by applicable laws.

(g)  In case of proceedings against or involving Owner in insolvency or bankruptcy (including any proceeding under any federal or state bankruptcy or insolvency statute or similar law) or any proceedings for its reorganization or involving the liquidation of its assets, Trustees shall be entitled to prove the whole amount of principal, interest and premium, if any, due upon the Notes to the full amount thereof and all other payments, charges and costs due under this Indenture without deducting therefrom any proceeds obtained from the sale of the whole or any part of the Trust Estate; provided, however, that in no case shall Trustees receive a greater amount than such principal and interest and such other payments, charges and costs from the aggregate amount of the proceeds of all sales of the Trust Estate and the distribution from the estate of Owner.

Section 7.3.  _Receivers_.  After the happening of any Event of Default, immediately upon the commencement of any legal proceeding by Trustees, or either of them, in aid of the enforcement of the Notes or of this Indenture, and without regard to the adequacy or inadequacy of the security of the Trust Estate, Trustees shall be entitled to the appointment of a receiver or receivers of the Property and of all the earnings, revenues, rents, issues, profits and income thereof, and Owner hereby consents to any such appointment.

Section 7.4.  _Suits by Trustee_.  All rights of action under this Indenture or under any of the Notes may be enforced by Trustees without the possession of any of the Notes and without the production thereof at any trial or other proceeding relative thereto.  A copy of any Note, if properly certified by Trustee to be true and correct, shall constitute conclusive evidence of all matters that could be proven by production of the original of that Note in any trial or proceeding relative thereto.  Any such suit or proceeding instituted by Trustees shall be brought in their name as trustees (subject to the provisions of Article 8 hereof), and, subject to the rights of Trustees, any recovery of judgment shall be for the ratable benefit of the registered owners of the Notes.

Section 7.5.  _Waiver of Default_.  Trustees, upon the request of the registered owners of 66 2/3% in principal amount of the outstanding Notes, shall waive any default hereunder and its consequences, except a default (i) in the payment or prepayment of the principal, interest and premium, if any, of any Note when and as the same shall become due and payable, (ii) depriving Trustees or the registered owner of any Note of a lien upon the Trust Estate or (iii) in the due performance or

-35-

vcl 6150 pc 2291

◦ OFFICIAL RECORDS ◦

observance of the covenants and obligations of Owner contained
in the first or fourth sentence of Section 3.5 or in Section
3.11, 3.12, 4.2 or 4.5.  In case of any such waiver or in case
any proceeding taken on account of any such default shall have
been discontinued or abandoned or determined adversely to
Trustees, then, and in every such case, Owner, Trustees and the
registered owners of the Notes shall be restored to their
former positions and rights hereunder respectively.  No such
waiver shall extend to any subsequent or other default or
impair any right consequent thereon.

    Section 7.6.  _Remedies Cumulative_.  No remedy herein
conferred upon or reserved to Trustees or to the registered
owners of the Notes is intended to be exclusive of any other
remedy or remedies, and each and every such remedy shall be
cumulative and shall be in addition to every other remedy given
hereunder or now or hereafter existing at law or in equity.  No
delay or omission of Trustee or of any registered owner of the
Notes to exercise any right or power accruing upon any Event of
Default shall impair any such right or power or shall be
construed to be a waiver of any such Event of Default or an
acquiescence therein; and every power and remedy given by this
Indenture to Trustees or to the registered owners of the Notes
may be exercised from time to time and as often as may be
deemed expedient by Trustees or by the registered owners of the
Notes.

    Section 7.7.  _Waiver of Rights_.  Owner agrees that it
will not at any time or in any manner whatever claim or take
any benefit of any stay, extension or moratorium law which may
affect the terms of this Indenture; nor claim or take any
benefit of any law providing for the valuation or appraisal of
the Trust Estate or any part thereof prior to any sale or sales
thereof; nor, after any such sale, claim or exercise any right
to redeem the property so sold or to be sold or any part
thereof; and Owner hereby expressly waives all benefit or
advantage of any such law and covenants not to hinder, delay or
impede the execution of any power herein granted or available
at law or in equity, but to suffer and permit the execution of
every power and remedy as though no such law existed.  Owner
waives all right to have the Trust Estate marshaled upon any
foreclosure hereof.

    Section 7.8.  _Direction of Remedies_.  The registered
owners of a majority in principal amount of the outstanding
Notes shall have the right by an instrument in writing
delivered to Trustees to direct the time, method and place of
conducting any proceeding for any remedy available to Trustees
with respect to this Indenture or of exercising any power or
trust conferred upon Trustees, and Trustee, subject to the
provisions of Section 8.1, shall have the right to decline to
follow any such direction if Trustee in good faith shall, by

VOL 6150 PG 2292

OFFICIAL RECORDS

the Chairman of the Board of Directors, the President or a Vice President of Trustee, determine that the proceeding so directed would involve it in personal liability or would be unjustly prejudicial to the registered owners of Notes not joining in such direction.  Trustees, or either of them, shall not be liable with respect to any action taken or omitted to be taken by them in good faith in accordance with any written instruction furnished to Trustees, or either of them, by the registered owners of a majority in principal amount of the Notes outstanding in response to a written application by Trustee therefor.  If no such instrument or instruction has been received from the registered owners of a majority in principal amount of the Notes outstanding, Trustees, or either of them, may take such action, if any, as Trustees, or either of them, shall determine.

Section 7.9.  <u>Suit by Registered Owners</u>.  If an Event of Default described in Section 7.1(a) shall have happened and be continuing and the registered owners of at least a majority in principal amount of the outstanding Notes shall have requested Trustees, or either of them, to act with respect thereto and Trustee or Individual Trustee, as the case may be, shall have failed so to act within 15 days of such request, then and only then shall any registered owner have the right to institute proceedings against Owner or the Trust Estate for the collection of all moneys due and payable.

ʀ 6150 ₚₓ2293

OFFICIAL RECORDS

## ARTICLE 8
## The Trustees

Section 8.1.  Rights and Obligations of Trustees.
Trustees accept the trusts hereby created and agree to perform
their duties herein for the benefit of the registered owners of
the Notes upon the following terms and conditions:

(a)  Trustees shall have the full power and authority
to do all things not inconsistent with the provisions of this
Indenture in order to enforce this Indenture or to take any
action with respect to an Event of Default, or to institute,
appear in or defend any suit or other proceeding with respect
thereto, or to protect the interests of the registered owners
of the Notes.  Trustees shall not be answerable or accountable
except for their own bad faith, misconduct or negligence, and
Owner agrees to indemnify and save harmless Trustees from any
liability and damages which they may incur or sustain, in good
faith and without negligence, in the exercise and performance
of their powers and duties hereunder, nor shall Trustees be
accountable for the use of any proceeds from the sale of the
Notes.  Except as otherwise expressly set forth in Section
8.1(l) and 8.1(m), Trustees shall have no obligation to take
any action to protect, preserve or enforce any rights or
interests in the Trust Estate or towards the execution or
enforcement of the trusts hereby created which, in their
opinion, shall be likely to involve expense or liability,
unless one or more of the registered owners of the Notes shall
offer to furnish reasonable indemnity against such liability
and expense to Trustees.  In accepting the trusts hereunder and
the Trust Estate, Trustees are acting solely as trustees
hereunder and not in their individual capacities, and all
persons, other than Owner and the registered owners of Notes,
having any claim against Trustees, arising by reason hereof,
shall look only to the Trust Estate for payment or satisfaction
thereof.  As trustees, Trustees shall use the same degree of
care and skill as a prudent expert financial institution would
use under the circumstances in the conduct of its own affairs.
Trustee may become the owner of a Note or Notes with the same
rights it would have if it were not Trustee hereunder, subject
always to its fiduciary duties hereunder.

(b)  Trustees shall be entitled to receive the
compensation from Owner previously agreed upon for all services
rendered by them hereunder prior to an Event of Default, and to
be reimbursed for all proper disbursements incurred by them
hereunder prior to an Event of Default, provided that no
commissions shall be paid for the collection of moneys pursuant
to the terms hereof.  Trustees shall be entitled to reasonable
compensation for their services and reimbursement for all
proper disbursements incurred by them upon or after an Event of

冊 6150 ㎨2294

OFFICIAL RECORDS

Default, or instituting, appearing in or defending any suit or proceeding with respect thereto.

(c) Trustees shall incur no liability in acting upon any signature, notice, request, consent, instrument, certificate, opinion, or other instrument reasonably believed by them to be genuine. In administering the trusts, Trustees may execute any of the trusts or powers hereof directly or through their agents or attorneys and may, at Owner's expense, consult with counsel, accountants and other skilled persons to be selected and employed by them, and the reasonable expenses thereof shall be paid by Owner, and Trustees shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice of any such person.

(d) The recitals and statements in this Indenture and the Notes (except for Trustee's certificate of authentication endorsed on the Notes) are statements by Owner alone, and shall not be considered as made by, or as imposing any obligation or liability upon, Trustees. In executing this Indenture, Trustees make no covenant or representation as to the rights of the registered owners of the Notes, the title or interest of Owner in or to, or the condition of, the Trust Estate or the sufficiency of the security for the Notes.

(e) Trustees shall have no duty to see to any recording, filing or registration of this Indenture, any instrument of further assurance, any instrument constituting part of the Trust Estate, or any amendments or supplements to any of said instruments, or to see to the payment of any fees, charges or taxes in connection therewith (and Trustees may act with respect to the Notes and pay out deposited moneys without regard thereto), or to give any notice thereof, or to see to the payment of or be under any duty in respect of any tax, assessment or other governmental charge which may be levied or assessed on the Trust Estate or any part thereof or against Owner.

(f) Whenever in administering the trust, Trustees shall deem it necessary or desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established with respect to Trustees for such purposes by a certificate or other instrument executed by the registered owner of any of the Notes (although Trustees may act in reliance thereon, such shall not be deemed to be conclusively proved or established against Owner) and delivered to Trustees, and such certificate or other instrument shall be full warrant to Trustees for any action taken, suffered or omitted by them on the faith thereof, but in their discretion Trustees may in lieu thereof accept other evidence of such fact

VEI 6150 PG2295

OFFICIAL RECORDS

or matter or may require such further or additional evidence as may seem reasonable to them.

(g)   Trustees shall have no obligation to see to the payment or discharge of any liens (other than the lien hereof, and then only to the extent herein provided) upon the Trust Estate, or to see to the payment of the principal of, premium or interest on any obligation secured thereby or to the delivery or transfer to any person of any property released from any such lien, or to give notice to or make demand upon any mortgagor, mortgagee or other person for the delivery or transfer of any of such property.

(h)   Trustees shall have no duty to confirm or verify any schedules setting forth the interest and principal payments to be made on any Note or any financial or other statements or reports or certificates furnished pursuant to any provision hereof, and they shall be under no other duty in respect of the same, except to retain the same in their files, and permit the inspection thereof at reasonable times by the registered owner of any Notes.

(i)   Trustees shall not be concerned with or accountable to any person for the use or application of any deposited moneys which shall be released or withdrawn in accordance with the provisions hereof or of any property or securities or the proceeds thereof which shall be released from the lien hereof in accordance with the provisions hereof.

(j)   Trustees shall not be required to ascertain or inquire as to the performance or observance of any of the covenants or agreements herein contained, or contained in any other instruments, pledged or assigned to Trustees hereunder, to be performed or observed by Owner or any party to any such other instruments.  Trustees shall not be required to take notice or be deemed to have notice or knowledge of any default or Event of Default (except default in the payment of moneys to Trustees which Owner is required to pay to Trustees on or before a specified date or within a specified time after receipt by Trustees of a notice or certificate which was in fact received and except default in the delivery of any certificate, opinion or other document expressly required to be delivered to Trustees by any provision hereof at or within a specified time), except if an officer of Trustee shall have actual knowledge thereof or unless Trustees shall receive from Owner or the registered owner of a Note written notice stating that a default or Event of Default has occurred and specifying the same, and in the absence of such notice, Trustees may conclusively assume that there is no such default or Event of Default, except as aforesaid.  Promptly after receiving knowledge thereof, Trustee shall notify all registered owners of Notes of any Event of Default, and if such Event of Default

-40-

VCI 6150 PG 2296

OFFICIAL RECORDS

is subsequently wholly cured or waived, Trustee shall give notice to such effect to the registered owners of the Notes.

(k)   Trustee shall forward to every registered owner of Notes a copy of any financial report, certificate or communication submitted to Trustee pursuant hereto.

(l)   Any other provision of this Indenture to the contrary notwithstanding, including, without limitation, Sections 3.9 and 3.10 of this Indenture, Trustee shall not be obligated to enforce any of its rights granted hereunder to require performance by Owner or to give or withhold its consent or approval to any act or compliance with any term, covenant or condition of this Indenture by Owner without prior direction of the registered owners as to such enforcement of rights or consent or approval by Trustee, nor shall Trustee be obligated to advance any moneys pursuant to the terms of this Indenture without the prior direction of the registered owners, which direction shall either be accompanied by moneys sufficient for such advance or include other provisions satisfactory to Trustee for the payment of the amount of such advance.

(m)   If default shall be made in the payment of any moneys due under or pursuant to any instrument included in the Trust Estate or if default shall otherwise be made in the due performance of any provision of any such instrument, then (without prejudice to any right to claim a default or to assert any right consequent thereon) Trustee may, and upon the request of the registered owners of a majority in principal amount of the outstanding Notes and the provision of reasonable security for the cost thereof shall, cause proper proceedings to be instituted and prosecuted in a court of competent jurisdiction or take any other action to enforce such payment and collect the amount due or enforce the performance of such provisions.

Section 8.2.   <u>Individual Trustee</u>.   Individual Trustee shall be subject to the following terms and conditions:

(a)   Subject to the provisions of Section 8.6, all rights, powers, duties and obligations conferred or imposed upon Trustees shall be conferred or imposed solely upon and solely exercised and performed by Trustee, except as expressly provided otherwise in this Indenture and except to the extent that under any law of any jurisdiction in which any particular act is to be performed Trustee shall be incompetent or unqualified to perform such act, in which event such rights, powers, duties and obligations shall be exercised and performed by Individual Trustee.

(b)   Any power granted by this Indenture to or which this Indenture provides may be exercised by Individual Trustee

-41-

VOL 6150 PG 2297

OFFICIAL RECORDS

shall not be exercised by him except jointly with, or with the written consent of, Trustee.

(c)    Individual Trustee may, at any time by an instrument in writing, constitute Trustee or its successor in trust hereunder his agent or attorney-in-fact, with full power and authority, to the extent which may be permitted by law, to do any and all acts and things and exercise any and all discretion which he is authorized or permitted to do or exercise, for and in his behalf and in his name.

Section 8.3.    Resignation of Trustee.    Trustees may resign and be discharged of the trusts by giving notice thereof to each registered owner of a Note, Owner and the then owner of the Trust Estate, specifying the date (not less than 90 days after such notice) when such resignation shall take effect. Such resignation shall take effect on the later of the date so specified or the appointment and acceptance of a successor trustee pursuant to Section 8.4, provided, that if a successor Trustee shall not have been appointed within 90 days after the giving of the notice of such resignation the Trustee may apply to any court of competent jurisdiction to appoint a successor Trustee to act until such time, if any, as a successor shall have been appointed by the holders of Notes as provided in Section 8.4.    Any successor Trustee so appointed by such court shall immediately and without further act be superseded by any successor Trustee appointed by the holders of the Notes as above provided.

Section 8.4.    Successor Trustee.    (a) Trustees may be removed at any time by notice from the registered owners of a majority in principal amount of the outstanding Notes.    If Trustee shall have given notice of its intention to resign, shall resign, be removed or otherwise be incapable of acting, or if Trustee shall be taken under the control of any public officer or a receiver appointed by a court, or be adjudged a bankrupt or insolvent, then a successor may be appointed by the registered owners of a majority in principal amount of the outstanding Notes; provided, that Owner may appoint a successor trustee to act until such successor shall be so appointed. Owner shall notify the registered owners of the Notes outstanding of any such appointment by Owner, but any successor trustee so appointed by Owner shall immediately and without further act be superseded by a successor trustee appointed by the registered owners as above provided.

(b)    Any successor to Trustee shall execute, acknowledge and deliver to its predecessor, Owner and the then owner of the Trust Estate, an instrument accepting such appointment, and thereupon such successor, without any further act, deed or conveyance, shall become vested with all the

VOL 6150 PG2298

OFFICIAL RECORDS

estate, properties, rights, powers, duties and trusts of its predecessor in the trusts hereunder with like effect as if originally named as trustee herein; provided, however, that on the written request of Owner or the then owner of the Trust Estate or the successor trustee, such predecessor shall execute and deliver an instrument transferring to such successor, upon the trusts expressed in this Indenture, such estate, properties, rights, powers and trusts and shall duly assign, transfer, deliver and pay over to such successor, any property and moneys subject to the lien hereof and held by such predecessor.

(d)  Any corporation into which Trustee may be merged or with which it may be consolidated, or any corporation resulting from any merger or consolidation or conversion to which it shall be a party, shall be the successor to Trustee without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

Section 8.5.  Resignation and Removal of Individual Trustee.  (a) Individual Trustee may resign and be discharged of the trusts by notice thereof to Owner, the then owner of the Trust Estate and Trustee specifying the date (which shall be not less than 30 days after the date of such notice) when such resignation shall take effect.  Such resignation shall take effect on the earlier of the date so specified or the appointment of a successor Individual Trustee as hereinafter provided.

(b)  Individual Trustee may be removed at any time by the registered owners of a majority in principal amount of the Notes then outstanding or by Trustee, by delivery of a notice of such removal to Individual Trustee and Trustee.

(c)  If at any time Individual Trustee shall die, resign or be removed or otherwise become incapable of acting, or if for any reason the office of Individual Trustee shall become vacant, a successor shall forthwith be appointed by Trustee or, if Trustee shall fail to make such appointment within 60 days after such occurrence, by the registered owners of a majority in principal amount of the outstanding Notes.

(d)  Any successor to Individual Trustee shall execute, acknowledge and deliver to his predecessor, Trustee, Owner and the then owner of the Trust Estate, an instrument accepting such appointment, and thereupon such person, without any further act or instrument, shall become vested with all the estates, properties, rights, powers, duties and trusts of his predecessor in the trusts hereunder with like effect as if originally named as Individual Trustee, herein; provided,

VOL 6150 PG 2299

⚡ OFFICIAL RECORDS ⚡

however, that on the written request of Owner, Trustee or such successor, such predecessor shall execute and deliver an instrument transferring to such successor, upon the trusts herein expressed, such estates, properties, rights, powers and trusts, and shall duly assign, transfer, deliver and pay over to such successor, any property and money subject to the lien hereof held by him.

Section 8.6.  <u>Separate and Co-Trustees</u>  (a)  If it deems such to be necessary or prudent, Trustee shall have the power to appoint one or more persons to act as separate trustees or co-trustees, jointly with Trustee, of any of the property subject to the lien hereof, and any such person shall be such separate trustee or co-trustee, with such powers and duties as shall be specified in such instrument.

(b)  Every separate trustee and co-trustee shall, to the extent not prohibited by law, be subject to the following terms and conditions:

(1)  The rights, powers, duties and obligations conferred or imposed upon such separate or co-trustee shall be conferred or imposed upon and exercised or performed by Trustee and such separate or co-trustee, as shall be set forth in the instrument appointing him or it; provided, however, that such separate or co-trustee shall take no action without the consent of Trustee (unless the requirement for such consent shall be forbidden by law as to any particular application of such requirement).

(2)  All powers, duties, obligations and rights conferred upon Trustee, in respect of the custody of all cash deposited hereunder, shall be exercised solely by Trustee; and

(3)  Trustee may at any time by written instrument accept the resignation of or remove any such separate trustee or co-trustee, and upon the request of Trustee, Owner shall join with Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to make effective such resignation, but Trustee shall have the power to accept such resignation or to make such removal without making such request.  A successor to a separate trustee or co-trustee so resigning or removed may be appointed in the manner provided in this Section.

(c)  Such separate trustee or co-trustee, upon acceptance of such trust, shall be vested with the estates or property specified in such instrument, either jointly with Trustees, or separately, as may be provided therein, subject to all the trusts, conditions and provisions of this Indenture; and every such instrument shall be filed with Trustee.  Any

VOL 6150 PG 2300

OFFICIAL RECORDS

separate trustee or co-trustee may, at any time, by written instrument constitute Trustee his agent or attorney-in-fact with full power and authority, to the extend permitted by law, to do all acts and things and exercise all discretion authorized or permitted by him, for and in behalf of him and his name.  If any separate trustee or co-trustee shall be dissolved, become incapable of acting, resign, be removed or die, all the estates, property, rights, powers, trusts, duties and obligations of said separate trustee or co-trustee, so far as permitted by law, shall vest in and be exercised by Trustee, without the appointment of a successor to said separate trustee or co-trustee, until the appointment of a successor to said separate trustee or co-trustee is necessary as provided in Section 8.6(a).

(d)  Any notice, request or other writing, by or on behalf of the registered owners of the Notes then outstanding delivered to Trustee shall be deemed to have been delivered to Individual Trustee, and all separate trustees and co-trustees.

Section 8.7.  Liability of Trustee.  No trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder.

VOL 6150 PG 2301

OFFICIAL RECORDS

ARTICLE 9
Miscellaneous

Section 9.1.  Satisfaction.  If and when the Notes
shall have become due and payable (whether by lapse of time or
by acceleration or by the exercise of the privilege of
prepayment), and Owner shall pay or cause to be paid (provided
such payment is permitted or required hereby) the full amount
thereof and shall also pay or cause to be paid all other sums
payable hereunder by Owner, then this Indenture shall cease and
terminate and Trustees shall satisfy and cancel the same,
reconvey the Trust Estate to Owner, and execute and deliver
such instruments as shall be requested by Owner to satisfy and
discharge the lien hereof at the cost of Owner.

Section 9.2.  Supplements With Consent.  (a) With the
written consent of the registered owners of not less than
33-1/3% in principal amount of the outstanding Notes, Owner and
Trustees may at any time, subject to the conditions and
restrictions contained in this Indenture, enter into
supplements which shall form a part hereof, when required or
permitted by any of the provisions of this Indenture or for any
one or more of the following purposes:

    (i)    to correct or amplify the description of
any property subject to the lien hereof;

    (ii)    to Grant to Trustees one or more
additional properties in trust for the
purposes herein provided;

    (iii)    to add to the covenants and agreements of
Owner herein contained and other covenants
and agreements thereafter to be observed
or to surrender any right or power herein
reserved to or conferred upon Owner;

    (iv)    to qualify this Indenture under the Trust
Indenture Act of 1939, as amended, or any
similar federal statute hereinafter in
effect, except that nothing herein
contained shall permit or authorize the
including in any supplement hereto of the
provisions referred to in Section
316(a)(2) of said Act or any corresponding
provision of any such similar federal
statute.

(b)  With the written consent of the registered owners
of not less than 66-2/3% in principal amount of the outstanding
Notes, Owner and Trustees may at any time enter into
supplements or amendments changing in any manner or eliminating

-46-

VOL 6150 PG 2302

& OFFICIAL RECORDS ~

any of the provisions of this Indenture; provided, that without
the consent of the registered owner of each Note no such
supplement or amendment shall (i) impair, affect or change the
right of such registered owner to receive payments or
prepayments of the principal of and payments of the interest
and premium, if any, on its Notes, as therein and herein
provided, or (ii) permit the creation of any lien on the Trust
Estate equal or prior to the lien hereof or deprive any
registered owner of Notes of the benefit of a lien on the Trust
Estate, or (iii) establish any preference or priority among
registered owners of Notes except as expressly set forth herein
or alter the priority of the rights of such registered owners
as to any other creditors of Owner, or (iv) amend or modify
Sections 3.5, 3.6, 3.11, 3.12, 3.13 and 4.2, or (v) change the
percentages of the principal amount of the outstanding Notes
referred to in Sections 7.1I, 7.5, 7.8 and 7.9 or this Section
9.2.  Upon receipt by Trustees of a certified resolution
authorizing the execution of any such supplement or amendment
by Owner, and upon the filing with Trustee of evidence of the
consent of the registered owners of Notes, as aforesaid,
Trustees shall join with Owner in the execution of such
supplement or amendment unless such supplement or amendment
affects Trustees' rights, duties or immunities hereunder or
otherwise, in which case Trustees may in their discretion, but
shall not be obligated to, enter into such supplement.  It
shall not be necessary for the consent of the registered owners
of Notes under this Section to approve the particular form of
any proposed supplement, but it shall be sufficient if such
consent shall approve the substance thereof.

        Section 9.3.  _Delivery of Supplements_.  Promptly after
the execution of any supplement Owner shall mail, first class
postage prepaid, a conformed copy of such supplement to each
registered owner of a Note at the address of such registered
owner appearing on the Register.  Any failure of Owner to give
such notice, or any defect therein, shall not, however, in any
way impair or affect the validity of such supplement.

        Section 9.4.  _Immunity from Liability_.  No recourse
shall be had for the payment of the principal of or interest or
premium, if any, on the Notes or for any claim based hereon or
otherwise in respect of the Notes or based on or in respect of
this Indenture, against (i) Owner, any incorporator or any
past, present or future subscriber to the capital stock,
stockholder, officer, director, agent or employee of Owner
(together with those of any predecessor or successor
corporation); (ii) any legal representative, heir, estate,
successor or assign of any thereof; (iii) any corporation,
partnership (or any partner thereof), individual or entity to
which the Trust Estate or any part thereof granted by this
Indenture shall have been transferred; or (iv) any other person
on the ground that in entering into the transactions evidenced

VOL 6150 PG 2303

& OFFICIAL RECORDS

by the Notes and by this Indenture, Owner was acting as an agent for the account and benefit of such person and that such person was the principal of Owner, in any such case, under any rule of law, statute or constitution, or by the enforcement of any assessment or penalty, or otherwise, in each case, for any deficiency or any other sums owing on the Notes or arising under or with respect to this Indenture.  It is understood that the Notes and all obligations under or with respect to this Indenture may not be enforced against any person or entity described in clauses (i) through (iv) above provided that the foregoing provisions of this paragraph shall not (x) prevent recourse to the Trust Estate or the sums due or to become due under any instrument which is part of the Trust Estate, including, without limitation, the right to proceed against Lessee under the Lease and the Assignment, or (y) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by the Notes or secured by this Indenture, but the same shall continue until paid or discharged, and provided, further, that the foregoing provisions of this Section shall not limit the right of any person to name any person or entity described in clauses (i) through (iv) above or any transferee as a party defendant in any action or suit for a judicial foreclosure of or in the exercise of any other remedy under the Notes or this Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such person, entity or transferee.

Section 9.5.  Execution of Instruments by Registered Owners.  Any request or other instrument or action by the registered owner of any Note shall bind every future registered owner of the same Note and the registered owner of any Note issued in exchange therefor or in lieu thereof in respect of anything done or suffered to be done by Trustees or Owner pursuant to such request or other instrument or action.

Section 9.6.  Limitation of Rights of Others.  Nothing in this Indenture is intended or shall be construed to give to any person, other than Owner (including its successors and assigns as owner of the Property or any interest therein), Trustees and the registered owners of the Notes any legal or equitable right, remedy or claim under or in respect of this Indenture or any covenant, condition or provision herein contained.

Section 9.7.  Severability.  In case any one or more of the provisions contained herein or in the Notes shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Indenture shall be construed as if such provision had never been contained herein or therein.

-48-

VOL 6150 PG 2304

OFFICIAL RECORDS

Section 9.8.  <u>Notices</u>.  All notices, demands, designations, certificates, requests, offers, consents, approvals, appointments and other instruments given pursuant to this Indenture (collectively called Notices) shall be in writing and shall be deemed to have been given upon receipt or upon refusal to accept delivery.  Any Notice to Trustees or either of them, shall be given at the Corporate Trust Office. Any Notice to Owner shall be deemed to have been given by being sent, by prepaid certified or registered mail or by prepaid messenger service guaranteeing overnight delivery to Owner c/o Greyhound Leasing & Financial Corporation, Greyhound Tower, Phoenix, Arizona 85077, Attention:  Division Risk Manager, Real Estate, or at such other address or addresses as may be filed by Owner with Trustees.  Notices to the registered owners of the Notes shall be given by being sent to the registered owners of the Notes at their respective addresses appearing on the Register, by certified or registered mail or by delivery service guaranteeing overnight delivery.  Whenever in this Indenture the giving of Notice is required, the giving thereof may be waived in writing at any time by the person or persons entitled to receive such Notice.  Except as in this Indenture otherwise expressly provided, (i) this Indenture may not be modified except by an instrument in writing executed by Owner and Trustees, and (ii) no requirement hereof may be waived at any time except by a writing signed by the party against whom such waiver is sought to be enforced, nor shall any waiver be deemed a waiver of any subsequent breach or default.  Any Notice to be given by Owner to Trustees hereunder shall also be given by Owner to Lessee.

Section 9.9.  <u>Maximum Interest Payable</u>.  No provision of this Indenture or of the Notes shall require the payment or permit the collection of interest in excess of the maximum not prohibited by law.  If any excess of interest in such respect is herein or in the Notes provided for, or shall be adjudicated to be so provided for herein or in the Notes, Owner shall not be obligated to pay such interest in excess of the amount permitted by law, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Indenture and the Notes.

Section 9.10.  <u>Counterparts</u>.  This Indenture may be executed in any number of counterparts and each thereof shall be deemed to be an original; and all such counterparts shall constitute but one and the same instrument.

Section 9.11.  <u>Successors and Assigns</u>.  All of the provisions herein contained shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto, to the same extent as if each such successor and assign were in each case named as a party to this

VOL 6150 PG 2305

OFFICIAL RECORDS

Indenture.  Wherever used, the singular shall include the plural, the plural shall include the singular and the use of any gender shall include all genders.

Section 9.12.  <u>Table of Contents, Headings</u>.  The table of contents and the headings appearing in this Indenture have been inserted for convenient reference only and shall not modify, define, limit or expand the express provisions of this Indenture.

Section 9.13.  <u>Governing Law</u>.  This Indenture shall be governed by the law of the State of Florida.

Section 9.14.  <u>Incorporated Schedules</u>.  The following are Schedules A and B referred to in this Indenture, which are hereby incorporated by reference herein.

VOL 6150 PG 2306

OFFICIAL RECORDS

## SCHEDULE A

### Description of Land Parcel

That certain piece, parcel or tract of land situate, lying and being in the City of Jacksonville, County of Duval, State of Florida, to wit:

A portion of the Southeast 1/4 of Section 7, Township 2 South, Range 26 East, Duval County, Florida, being more particularly described as follows:

For a point of reference, commence at the intersection of the Northerly right-of-way line of Commonwealth Road, as now established for a width of 60 feet, with the Westerly right-of-way line of Edgewood Avenue, as now established for a width of 100 feet; run thence South 88°00'00" West, along said Northerly right-of-way line of Commonwealth Road, a distance of 802.34 feet to the point of beginning for this description.

From the point of beginning thus described, run thence North 00°08'35" East, a distance of 1323.92 feet to the Southerly right-of-way line of 1st Street West, as now established for a width of 60 feet; run thence South 87°47'39" West, along said Southerly right-of-way line, a distance of 922.77 feet to a found iron pipe; run thence South 00°04'15" West, a distance of 1320.54 feet to a point in the aforementioned Northerly right-of-way line of Commonwealth Road; run thence North 88°00'00" East along said Northerly right-of-way line, a distance of 920.98 feet to a found iron pipe and the point of beginning.

FA 6150 PG2307

✓ OFFICIAL RECORDS ✓

SCHEDULE B

COMMONWEALTH AVENUE WAREHOUSE, INC.

9.95% SECURED NOTE DUE JULY 1, 2011

Registered No. __                                    $_____

        COMMONWEALTH AVENUE WAREHOUSE, INC., a Florida corporation (Owner),
for value received, hereby promises to pay to _____
(Payee), or its registered assigns, on or before July 1, 2011, as herein
provided, the principal sum of _____ AND ____/100
DOLLARS ($_____) and to pay interest on the unpaid principal amount
hereof from the date hereof to maturity at the rate of 9.95% per annum and (to
the extent not prohibited by applicable law) to pay interest on any overdue
principal, premium, if any, and interest at the rate of the greater of
(i) 11.95% per annum and (ii) the prime rate established by Trustee (as
hereinafter defined) on the date such payment was due plus 3% (or at the
maximum rate not prohibited by law, whichever is less), in each case computed
on the basis of a 360-day year of twelve 30-day months.

        Such principal, premium, if any, and interest shall be payable
without presentation of this Note by wire transfer in immediately available
funds at Bank of New England Trust Company, National Association (Trustee),
c/o The Connecticut Bank and Trust Company, National Association, One
Constitution Plaza, Hartford, Connecticut 06115, Attention: Corporate Trust
Department, with sufficient information identifying such wire transfer as a
payment on this Note (except that upon compliance with the conditions of
Section 2.3 of the Indenture hereinafter referred to, such payment shall be
made by wire transfer to Payee at the address and to the account requested by
Payee), in lawful money of the United States of America, in the following
manner:

        (i)    interest accrued on the unpaid principal amount of this Note,
               from and including the date hereof and to and including June 30,
               1986, shall be due and payable on July 1, 1986;

        (ii)   thereafter, 299 equal monthly payments of principal and interest
               shall be due and payable on the first day of each month,
               commencing on August 1, 1986, and continuing on the first day of
               each month thereafter, to and including June 1, 2011, each in
               the amount of _____ AND ____/100
               DOLLARS ($_____);

        (iii)  thereafter, one payment of principal and interest shall be due
               and payable on July 1, 2011, in the amount of
               _____ AND ____/100 DOLLARS
               ($_____); the payments referred to in clause (ii) and this

VOL 6150 PG 2308

OFFICIAL RECORDS

clause (iii) are called Instalment Payments and the dates upon which such payments are due are herein called the Instalment Payment Dates; and

(vi)   the remaining unpaid principal amount, if any, together with interest accrued and unpaid thereon shall be due and payable on July 1, 2011.

Each Instalment Payment, when paid, shall be applied first to the payment of interest accrued and unpaid on the unpaid principal amount of this Note to and including the day prior to the date fixed for such payment and second to payment on account of the principal hereof.

This Note is one of Owner's 9.95% Secured Notes Due July 1, 2011, which is issued pursuant to an Indenture of Mortgage, dated as of June 20, 1986 (herein, together with all amendments and supplements thereto, called the Indenture), from Owner, as grantor, to Bank of New England Trust Company, National Association and F.W. Kawam, as trustees (Trustees). Reference is hereby made to the Indenture for a description of the Trust Estate (as defined in the Indenture) thereby pledged and assigned, the nature and extent of the security for the Notes and the rights of the registered owners of the Notes and Owner in respect of such security and otherwise. The Notes are also secured by the Assignment of Lease Agreement, dated as of June 20, 1986, from Owner, as assignor, to Trustees, as assignee (the Assignment), relating to a Lease Agreement, dated as of June 20, 1986 (the Lease), from Owner, as lessor, to Winn-Dixie Stores, Inc., as lessee (Lessee).

The principal of this Note is subject to prepayment from time to time, only in the manner, to the extent and under the circumstances set forth in the Indenture.

Upon the occurrence of an Event of Default specified in the Indenture, the principal hereof and the interest accrued and unpaid hereon may be declared to be forthwith due and payable as provided in the Indenture.

This Note is issuable only as a fully registered Note.  The Owner shall deem and treat the person in whose name this Note is registered on the Register (as such term is defined in the Indenture) as the absolute owner thereof (whether or not this Note shall be overdue) for the purpose of receiving payments of principal, premium and interest and for all other purposes, and the Owner shall not be affected by any notice to the contrary. In accordance with the provisions of the Indenture, this Note may be transferred on the Register at the Corporate Trust Office (as defined in the Indenture) and exchanged for Notes of other denominations.

Should any indebtedness represented by this Note be collected at law or in equity or in bankruptcy or other proceeding or should this Note be placed in the hands of attorneys for collection after default, Owner agrees to pay, in addition to the principal, premium, if any, and interest due and payable hereon, all costs of collecting or attempting to collect this Note, including reasonable attorneys' fees and expenses (including those incurred in connection with any appeal).

2

VOL 6150 PG 2309

⚓ OFFICIAL RECORDS ⚓

Anything contained herein, in the Indenture or the Assignment to the contrary notwithstanding, no recourse shall be had for the payment of the principal of or interest on this Note or for any claim based hereon or otherwise in respect hereof or based on or in respect of the Indenture, against (i) Owner, any incorporator or any past, present or future subscriber to the capital stock, stockholder, officer or director, agent or employee of Owner (together with any predecessor or successor corporation); (ii) any legal representative, heir, estate, successor or assignee of any thereof; (iii) any corporation (or any officer, director or shareholder thereof), partnership (or any partner thereof), individual or entity to which the Trust Estate or any part of any thereof shall have been transferred; or (iv) any other person on the ground that in entering into the transactions evidenced by this Note and the Indenture, Owner was acting as an agent for the account and benefit of such person and that such person was the principal of Owner, in any such case, under any rule of law, statute or constitution, or by the enforcement of any assessment or penalty, or otherwise. It is understood that this Note and all obligations under or with respect to the Indenture may not be enforced against any person or entity described in clauses (i) through (iv) above; provided, that the foregoing provisions of this paragraph shall not (x) prevent recourse to the Trust Estate or the sums due or to become due under any instrument which is part of the Trust Estate, including, without limitation, the right to proceed against the Lessee under the Lease or (y) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by this Note or secured by the Indenture, but the same shall continue until paid or discharged, and provided, further, that the foregoing provisions of this paragraph shall not limit the right of any person to name any person or entity described in clauses (i) through (iv) or any transferee of any interest in the Trust Estate as a party defendant in any action or suit for a judicial foreclosure of or in the exercise of any other remedy under this Note or under the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against such person, entity or transferee.

This Note shall be governed by the law of the State of Florida.

IN WITNESS WHEREOF, Owner has caused this 9.95% Secured Note Due July 1, 2011, to be duly executed.

Dated: June   , 1986

COMMONWEALTH AVENUE WAREHOUSE, INC.
a Florida corporation

By: _____
    Printed Name: _____
    Title: _____

(Seal)

Attest: _____
        Printed Name: _____
        Title: _____

3

VOL 6150 PG 2310

OFFICIAL RECORDS

## CERTIFICATE OF AUTHENTICATION

This Note is one of the 9.95% Secured Notes Due July 1, 2011 described in the within-mentioned Indenture.

BANK OF NEW ENGLAND TRUST COMPANY,
NATIONAL ASSOCIATION,
as Trustee

By:_____
Authorized Signature

4

VOL 6150 PG 2311

OFFICIAL RECORDS

    IN WITNESS WHEREOF, COMMONWEALTH AVENUE WAREHOUSE, INC. has caused
this Indenture to be executed and delivered, and BANK OF NEW ENGLAND TRUST
COMPANY, NATIONAL ASSOCIATION, in token of its acceptance of the trusts
created hereunder, by its duly authorized officers, has caused this Indenture
to be executed and delivered and its corporate seal to be hereunto affixed and
attested, and F.W. KAWAM, in token of his acceptance of the trusts created
hereunder, has hereunto set his hand and seal, all as of the day and year
first above written.

(Corporate Seal)                     COMMONWEALTH AVENUE WAREHOUSE, INC.

Attest:                              By: _____
                                     Printed Name: Michael J. Naughton
By: _____          Title: V.P.
Printed Name: Donald F. Howell
Title: Vice-President


(Corporate Seal)                     BANK OF NEW ENGLAND TRUST COMPANY,
                                     NATIONAL ASSOCIATION
Attest:
                                     By: _____
By: _____          Printed Name: F. W. KAWAM
Printed Name: Mason M. Lemont         Title: VICE PRESIDENT
Title: Asst. Secretary


                                     By: _____ L.S.
                                        F.W KAWAM

VOL 6150 PG 2312

OFFICIAL RECORDS

STATE OF NEW YORK        )
                         ) ss.
COUNTY OF NEW YORK       )

The foregoing instrument was acknowledged before me this 24th day of June, 1986, by Michael J. Naughton and Donald Howell, the Vice President and Vice President, respectively, of COMMONWEALTH AVENUE WAREHOUSE, INC., a Florida corporation, on behalf of the corporation.

Catherine A. Carroll
Notary Public in and for
said State

(Notarial Seal)

My commission expires:

CATHERINE A. CARROLL
Notary Public, State of New York
No. 24-4860418
Qualified in Kings County
Certificate filed in New York County
Commission Expires March 27, 1988

VOL 6150 PG 2313

<u>OFFICIAL RECORDS</u>

STATE OF   <u>Connecticut</u>   )
                             ) ss.
COUNTY OF   <u>Hartford</u>    )

    The foregoing instrument was acknowledged before me this <u>20th</u> day of June, 1986, by <u>F. W. Kawam</u> and <u>Mason M. Lemont</u>, the <u>Vice President</u> and <u>Assistant Secretary</u>, respectively, of BANK OF NEW ENGLAND TRUST COMPANY, NATIONAL ASSOCIATION, a national banking association, on behalf of the association.

Notary Public in and for
said State

(Notarial Seal)

My commission expires:

EARLA MAE SHEPPARD
NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 31, 1989

VOL 6150 PG 2314

OFFICIAL RECORDS

STATE OF  Connecticut    )
                         ) ss.
COUNTY OF  Hartford      )

The foregoing instrument was acknowledged before me this ___20th___ day of
June, 1986, by F.W. KAWAM.

_____
Notary Public in and for
said State

(Notarial Seal)

My commission expires:
EARLA MAE SHEPPARD
NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 31, 1989

86- 62156

JUN 25  I 04 PM '86

FILED AND RECORDED IN PUBLIC
RECORDS OF DUVAL COUNTY, FLA.

CLERK OF CIRCUIT COURT

FIRST AMENDMENT
TO
INDENTURE OF MORTGAGE

Dated as of June 20, 1986


from


COMMONWEALTH AVENUE WAREHOUSE, INC.,
as grantor


to


BANK OF NEW ENGLAND TRUST COMPANY,
NATIONAL ASSOCIATION


and


F.W. KAWAM,
as Trustees

Dated as of November 1, 1987


Prepared by

David H. Stanley, Esquire
Csaplar & Bok
655 Montgomery Street
San Francisco, California  94111

THIS FIRST AMENDMENT TO INDENTURE OF MORTGAGE, dated as of
November 1, 1987 (this Amendment), from COMMONWEALTH AVENUE WAREHOUSE, INC., a
Florida corporation (herein, together with its successors and assigns, called
Owner), having an address c/o Greyhound Financial Corporation, Greyhound
Tower, Phoenix, Arizona 85077, Attention: Division Risk Manager, Real
Estate, as grantor, to BANK OF NEW ENGLAND TRUST COMPANY, NATIONAL
ASSOCIATION, a national banking association, as Trustee, and F.W. KAWAM, as
Individual Trustee, (Individual Trustee and Trustee are herein collectively
called Trustees), each having an address c/o The Connecticut Bank and Trust
Company, National Association, One Constitution Plaza, Hartford, Connecticut
06115, Attention: Corporate Trust Department, amends and forms a part of the
Indenture of Mortgage, dated as of June 20, 1986, between Owner and Trustees
(the Original Indenture). The Original Indenture together with this Amendment
are herein called the Indenture. Capitalized terms not otherwise defined
herein shall have the meanings set forth in the Original Indenture.


PRELIMINARY STATEMENT

        Owner has acquired a fee simple interest in the Property. Owner has
issued Original Notes in order to finance a portion of the cost of acquiring
its interest in the Property. Owner now intends to issue its Series A 11.05%
Secured Notes Due July 1, 2011 (the Series A Additional Notes) pursuant to
Section 2.2 to finance Reimbursable Expenses (the Original Notes and the
Series A Additional Notes are collectively called the Notes). The Property
and the Trust Estate have been granted as security for the payment of the
Notes. The Indenture constitutes a first lien on the Trust Estate, subject
only to Permitted Exceptions of the character described in clauses (a) through
(e) of the definitions of Permitted Exceptions. The Trust Estate shall be and
remain subject to the lien of the Indenture and shall constitute security for
all of the Notes so long as any of the Notes shall remain outstanding. Owner
is duly authorized to issue the Series A Additional Notes and to execute and
deliver this Amendment, and all actions required by law and all actions of
Owner required therefor have been duly taken.

        For and in consideration of the mutual agreements herein contained
and other good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the parties agree as follows:

        NOW, THEREFORE, THIS INDENTURE WITNESSETH: That Owner, in
consideration of the premises, the acceptance by Trustees of the trusts hereby
created, the purchase and acceptance of the Notes by the purchasers thereof,
and other good and valuable consideration, the receipt and sufficiency whereof
is hereby acknowledged, and in order to secure the payment of all sums payable
on the notes and to declare the terms and conditions upon and subject to which
the Notes are to be issued, authenticated, delivered and secured, has executed
and delivered this Indenture, and has created a security interest in,
mortgaged, granted, bargained, sold, assigned, pledged, given, transferred,
set over and conveyed, and by these presents does create a security interest
in, mortgage, grant, bargain, sell, assign, pledge, give, transfer, set over
and convey, unto Trustees (in the case of either Trustee or Individual
Trustee, only to the extent of its legal qualification under the laws of any

particular jurisdiction to receive and hold property therein for the purposes hereof) and to their successors in the trusts hereby created and their assigns forever all of Owner's estate, right, title and interest in, to and under any and all of the property described in the following Granting Clauses, subject only to the Permitted Exceptions of the character referred to in clauses (a) through (e) of the definition of Permitted Exceptions.  The rights of Lessee under the Lease are prior to and superior to the lien of this Indenture, whether or not the Lease (or a memorandum thereof) is recorded prior to the recordation of this Indenture.

## GRANTING CLAUSE FIRST

The parcel of land described in Schedule A hereto (the Land Parcel), together with (a) the buildings, structures and other improvements now standing or at any time hereafter constructed or placed upon the Land Parcel, including, without limitation, all building materials, equipment and fixtures of every kind and nature on the Land Parcel or in any such building, structure or other improvement (said buildings, structures, other improvements, building materials, equipment and fixtures being herein collectively called the Improvements), (b) all and singular the tenements, hereditaments, easements, rights-of-way, rights, privileges and appurtenances in and to the Land Parcel and Improvements, including, without limitation, any streets, ways, alleys, vaults, gores or strips of land adjoining the Land Parcel, (c) all claims or demands of Owner in law or in equity, in possession or expectancy of, in and to the Land Parcel and Improvements and (d) subject to the provisions of Granting Clause Second, all rents, income, revenues, issues and profits from and in respect of the property described in clauses (a) through (c) of this Granting Clause First (except sums payable directly to any person other than the lessor under the Lease) and the present and continuing right to make claim for, collect, receive and give receipt for the same, it being the intention of the parties hereto that, so far as may be permitted by law, all property of the character hereinabove described which is now owned or is hereafter acquired by Owner and is affixed, attached or annexed to the Land Parcel shall be and remain or become and constitute a portion of the Trust Estate and the security covered by and subject to the lien hereof.  The Land Parcel together with the Improvements located thereon and the other property described in this Granting Clause First relating to the Land Parcel or the Improvements are herein individually called the Property.

## GRANTING CLAUSE SECOND

The Lease, including all extensions and renewals of the term thereof, together with the entire right, title and interest of Owner as lessor under the Lease, including, without limitation, the present and continuing right to make claim for, collect, receive and make receipt for any and all of the rents, income, revenues, issues and profits and other sums of money payable or receivable under the Lease, whether payable as rent or otherwise, to accept or reject any offers made pursuant to the Lease to purchase the Property, to bring actions and proceedings under the Lease or for the enforcement thereof and to do anything which Owner or any lessor is or may become entitled to do under the Lease, provided that the Grant made by this Granting Clause Second

shall be subject to the provisions of the Assignment and shall not impair or diminish any obligation of Owner under the Lease, nor shall any such obligation be imposed upon any Trustee.

## GRANTING CLAUSE THIRD

The Construction Agency Agreement, together with the entire right, title and interest of Owner thereunder and the Agency Account and any and all moneys and other property, which may from time to time become subject to the lien hereof or which may come into the possession or be subject to the control of Trustees pursuant to this Indenture, the Construction Agency Agreement or the Assignment, it being the intention of Owner and it being hereby agreed that all property hereafter acquired by Owner and required to be subjected to the lien of this Indenture or intended so to be shall forthwith upon the acquisition thereof by Owner be subject to the lien of this Indenture as if such property were now owned by Owner and were specifically described in this Indenture and granted hereby or pursuant hereto; and Trustees are hereby authorized to receive any and all such property as and for additional security for the payment of the Notes and all other sums secured or intended to be secured hereby.

TO HAVE AND TO HOLD all and singular the Trust Estate whether now owned or held or hereafter acquired, unto Trustees, their successors in the trusts created hereby and their assigns forever;

IN TRUST, NEVERTHELESS, with power of sale, for the equal and ratable benefit and security of the registered owners of the Notes, without preference, priority or distinction of any thereof over any other by reason of difference in time of issuance or otherwise, except as expressly provided herein, and for the enforcement of the payment of the principal, premium, if any, and interest on the Notes in accordance with their terms, and all other sums payable under this Indenture or on the Notes, and the observance and performance of the provisions of this Indenture, all as herein provided.

IT IS HEREBY COVENANTED, DECLARED AND AGREED that the Notes are to be issued and secured and that the Trust Estate is to be held and disposed of by Trustees, upon and subject to the provisions of this Indenture.

1.   The Indenture is hereby amended by:

(a)   Adding the following to Article 1 as a Defined Term:

"Series A Additional Notes means the Notes issued in accordance with Section 2.2(d) and all Notes issued in exchange or substitution therefor, pursuant to Section 2.7."

(b)   Adding the following to Article 2 as Section 2.2(d):

"Section 2.2(d).   <u>Series A Additional Notes</u>.  (a) Series A Additional Notes shall be designated as the "Series A 11.05% Secured Notes Due July 1, 2011" in the aggregate original

5

principal amount of $2,789,633.83 and shall be issued on the
date of the delivery of the Amendment to Indenture dated as of
November 1, 1987.  Owner shall execute and deliver the Series A
Additional Notes to Trustee for authentication, together with a
written order of Owner signed by the president or any vice
president of Owner requesting authentication and delivery of
such Series A Additional Notes.  Trustee shall authenticate and
deliver such Series A Additional Notes in accordance with such
written order.

"(b)   The Series A Additional Notes shall be dated the date of
issuance thereof (except in the case of Notes issued pursuant to
Section 2.7) and shall otherwise be as follows:

The Series A Additional Notes shall bear interest on the
unpaid principal amount thereof at the rate of 11.05% per annum
computed on the basis of a 360-day year of twelve 30-day months.
The principal of and interest on the Series A Additional Notes
shall be payable as follows:  (A) interest accrued on the unpaid
principal amount of the Series A Additional Notes from and
including the date of issuance thereof to and including
December 31, 1987, shall be due and payable on January 1, 1988;
and (B) thereafter be due and payable on the first day of each
month as to accrued and unpaid interest and as to principal due
on the Instalment Payment Dates; and (C) the remaining unpaid
principal amount, if any, together with interest accrued and
unpaid thereon shall be due and payable on July 1, 2011.  Each
Instalment Payment, when paid, shall be applied first to the
payment of all interest accrued and unpaid on the Series A
Additional Notes, and second to payment of the principal of the
Series A Additional Notes.

"(c)   The Series A Additional Notes and the certificates of
Trustee to be executed thereon shall be substantially in the form
shown in Schedule C hereto, with such omissions, insertions and
variations as are in this Indenture provided for or permitted or
as may be required by law."

(c)   Amending Article 7, Section 7.1(c) to read as follows:

"(c)   if a default shall have occurred and be continuing under
the Assignment, the Note Purchase Agreements, each dated as of
June 20, 1986, between Owner and Commonwealth Life Insurance
Company and Peoples Security Life Insurance Company,
respectively, or the Note Purchase Agreement, dated as of
November 1, 1987, between Owner and Commonwealth Life Insurance
Company;"

(d)   Amending Article 9, Section 9.14 to read as follows:

"Section 9.14.  Incorporated Schedules.  Schedules A, B and C
referred to in this Indenture are hereby incorporated by
reference herein."

6

2. The Indenture is amended to add thereto Schedule C attached hereto and incorporated by reference herein.

3. The Owner and Trustees hereby reconfirm each and every other provision of the Indenture.

IN WITNESS WHEREOF, COMMONWEALTH AVENUE WAREHOUSE, INC. has caused this Amendment of Indenture to be executed and delivered, and BANK OF NEW ENGLAND TRUST COMPANY, NATIONAL ASSOCIATION, in token of its acceptance of the trusts created hereunder, by its duly authorized officers, has caused this Amendment of Indenture to be executed and delivered and its corporate seal to be hereunto affixed and attested, and F.W. KAWAM, in token of his acceptance of the trusts created hereunder, has hereunto set his hand and seal, all of the day and year first above written.

COMMONWEALTH AVENUE WAREHOUSE, INC.

By: _____
   Printed Name: Robert J, Fitzsimmons
   Title: Vice President

(Corporate Seal)

Attest:

By: _____
   Printed Name: THOMAS H. REED
   Title: ASSISTANT SECRETARY

BANK OF NEW ENGLAND TRUST COMPANY, NATIONAL ASSOCIATION

(Corporate Seal)

Attest:

By: _____
   Printed Name:
   Title:

By: _____
   Printed Name:
   Title:

By: _____, L.S.
   F.W. KAWAM

7

2.  The Indenture is amended to add thereto Schedule C attached hereto and incorporated by reference herein.

3.  The Owner and Trustees hereby reconfirm each and every other provision of the Indenture.

IN WITNESS WHEREOF, COMMONWEALTH AVENUE WAREHOUSE, INC. has caused this Amendment of Indenture to be executed and delivered, and BANK OF NEW ENGLAND TRUST COMPANY, NATIONAL ASSOCIATION, in token of its acceptance of the trusts created hereunder, by its duly authorized officers, has caused this Amendment of Indenture to be executed and delivered and its corporate seal to be hereunto affixed and attested, and F.W. KAWAM, in token of his acceptance of the trusts created hereunder, has hereunto set his hand and seal, all of the day and year first above written.

COMMONWEALTH AVENUE WAREHOUSE, INC.

(Corporate Seal)

Attest:

By: _____
   Printed Name:
   Title:

By: _____
   Printed Name:
   Title:

BANK OF NEW ENGLAND TRUST COMPANY,
NATIONAL ASSOCIATION

(Corporate Seal)

Attest:

By: _____
   Printed Name: W. Krouscher
   Title: Assistant Secretary,

By: _____
   Printed Name: F. W. KAWAM
   Title:        VICE PRESIDENT

By: _____, L.S.
   F.W. KAWAM

7

CONSENT TO AMENDMENT TO INDENTURE OF MORTGAGE

COMMONWEALTH LIFE INSURANCE COMPANY and PEOPLES SECURITY LIFE
INSURANCE COMPANY hereby consent to the foregoing First Amendment to Indenture
of Mortgage Dated as of November 1, 1987.

COMMONWEALTH LIFE INSURANCE COMPANY

(Seal)

By: _____
Name: Theodore M. Haag
Title: Second Vice President - Investments

Attest:

By: _____
Name: Michael H. Sims
Title: Secretary

PEOPLES SECURITY LIFE INSURANCE COMPANY

(Seal)

By: _____
Name: Theodore M. Haag
Title: Second Vice President - Investments

Attest:

By: _____
Name: Paul J. Houk
Title: Assistant Secretary

8

SCHEDULE A

Legal Description

That certain piece, parcel or tract of land situate, lying and being in the
City of Jacksonville, County of Duval, State of Florida, to wit:

A portion of the Southeast 1/4 of Section 7, Township 2 South, Range 26 East,
Duval County, Florida, being more particularly described as follows:

For a point of reference, commence at the intersection of the Northerly
right-of-way line of Commonwealth Road, as now established for a width of 60
feet, with the Westerly right-of-way line of Edgewood Avenue, as now
established for a width of 100 feet; run thence South 88°00'00" West, along
said Northerly right-of-way line of Commonwealth Road, a distance of 802.34
feet to the point of beginning for this description.

From the point of beginning thus described, run thence North 00°08'35" East, a
distance of 1323.92 feet to the Southerly right-of-way line of 1st Street
West, as now established for a width of 60 feet; run thence South 87°47'39"
West, along said Southerly right-of-way line, a distance of 922.77 feet to a
found iron pipe; run thence South 00°04'15" West, a distance of 1320.54 feet
to a point in the aforementioned Northerly right-of-way line of Commonwealth
Road; run thence North 88°00'00" East along said Northerly right-of-way line,
a distance of 920.98 feet to a found iron pipe and the point of beginning.

SCHEDULE C

COMMONWEALTH AVENUE WAREHOUSE, INC.

SERIES A 11.05% SECURED NOTE DUE JULY 1, 2011

Registered No. __                                          $2,789,663.83

COMMONWEALTH AVENUE WAREHOUSE, INC., a Florida corporation (Owner), for value received, hereby promises to pay to Commonwealth Life Insurance Company (Payee), or its registered assigns, on or before July 1, 2011, as herein provided, the principal sum of Two Million Seven Hundred Eighty-Nine Thousand Six Hundred Sixty-Three AND 83/100 DOLLARS ($2,789,663.83) and to pay interest on the unpaid principal amount hereof from the date hereof to maturity at the rate of 11.05% per annum and (to the extent not prohibited by applicable law) to pay interest on any overdue principal, premium, if any, and interest at the rate of the greater of (i) 13.05% per annum and (ii) the prime rate established by Trustee (as hereinafter defined) on the date such payment was due plus 3% (or at the maximum rate not prohibited by law, whichever is less), in each case computed on the basis of a 360-day year of twelve 30-day months.

Such principal, premium, if any, and interest shall be payable without presentation of this Note by wire transfer in immediately available funds at Bank of New England Trust Company, National Association (Trustee), c/o The Connecticut Bank and Trust Company, National Association, One Constitution Plaza, Hartford, Connecticut 06115, Attention: Corporate Trust Department, with sufficient information identifying such wire transfer as a payment on this Note (except that upon compliance with the conditions of Section 2.3 of the Indenture hereinafter referred to, such payment shall be made by wire transfer to Payee at the address and to the account requested by Payee), in lawful money of the United States of America, in the following manner:

    (i)   interest accrued on the unpaid principal amount of this Note, from and including the date hereof and to and including December 31, 1987, shall be due and payable on January 1, 1988;

    (ii)  thereafter, 281 equal monthly payments of principal and interest shall be due and payable on the first day of each month, commencing on February 1, 1988, and continuing on the first day of each month thereafter, to and including June 1, 2011, each in the amount of TWENTY-SEVEN THOUSAND SEVEN HUNDRED EIGHTY-THREE AND 18/100 DOLLARS ($27,783.18);

    (iii) thereafter one payment of principal and interest shall be due and payable on July 1, 2011 in the amount of TWENTY-SEVEN THOUSAND SEVEN HUNDRED SEVENTY-SIX AND 78/100 DOLLARS ($27,776.78); the payments referred to in clause (ii) and this

clause (iii) are called Instalment Payments and the
dates upon which such payments are due are herein
called the Instalment Payment Dates; and

(vi)   the remaining unpaid principal amount, if any, together
with interest accrued and unpaid thereon shall be due
and payable on July 1, 2011.

Each Instalment Payment, when paid, shall be applied first to the payment of
interest accrued and unpaid on the unpaid principal amount of this Note to and
including the day prior to the date fixed for such payment and second to
payment on account of the principal hereof.

This Note is one of Owner's Series A 11.05% Secured Notes Due July 1,
2011, which is issued pursuant to an Indenture of Mortgage, dated as of
June 20, 1986, as amended as of November 1, 1987 (herein, together with all
amendments and supplements thereto, called the Indenture), from Owner, as
grantor, to Bank of New England Trust Company, National Association and F.W.
Kawam, as trustees (Trustees). Owner has previously issued its 9.95% Secured
Notes Due July 1, 2011 pursuant to the Indenture (the Series A 11.05% Secured
Notes Due July 1, 2011 and the 9.95% Secured Notes Due July 1, 2011,
collectively the Secured Notes). The Secured Notes are equally and ratably
secured by the Indenture. Reference is hereby made to the Indenture for a
description of the Trust Estate (as defined in the Indenture) thereby pledged
and assigned, the nature and extent of the security for the Secured Notes and
the rights of the registered owners of the Secured Notes and Owner in respect
of such security and otherwise. The Secured Notes are also secured by the
Assignment of Lease Agreement, dated as of June 20, 1986, from Owner, as
assignor, to Trustees, as assignee as amended as of November 1, 1987 (the
Assignment), relating to a Lease Agreement, dated as of June 20, 1986 (the
Lease), from Owner, as lessor, to Winn-Dixie Stores, Inc., as lessee (Lessee),
as amended as of November 1, 1987.

The principal of this Note is subject to prepayment from time to
time, only in the manner, to the extent and under the circumstances set forth
in the Indenture.

Upon the occurrence of an Event of Default specified in the
Indenture, the principal hereof and the interest accrued and unpaid hereon may
be declared to be forthwith due and payable as provided in the Indenture.

This Note is issuable only as a fully registered Note. The Owner
shall deem and treat the person in whose name this Note is registered on the
Register (as such term is defined in the Indenture) as the absolute owner
thereof (whether or not this Note shall be overdue) for the purpose of
receiving payments of principal, premium and interest and for all other
purposes, and the Owner shall not be affected by any notice to the contrary.
In accordance with the provisions of the Indenture, this Note may be
transferred on the Register at the Corporate Trust Office (as defined in the
Indenture) and exchanged for Notes of other denominations.

2

Should any indebtedness represented by this Note be collected at law or in equity or in bankruptcy or other proceeding or should this Note be placed in the hands of attorneys for collection after default, Owner agrees to pay, in addition to the principal, premium, if any, and interest due and payable hereon, all costs of collecting or attempting to collect this Note, including reasonable attorneys' fees and expenses (including those incurred in connection with any appeal).

Anything contained herein, in the Indenture or the Assignment to the contrary notwithstanding, no recourse shall be had for the payment of the principal of or interest on this Note or for any claim based hereon or otherwise in respect hereof or based on or in respect of the Indenture, against (i) Owner, any incorporator or any past, present or future subscriber to the capital stock, stockholder, officer or director, agent or employee of Owner (together with any predecessor or successor corporation); (ii) any legal representative, heir, estate, successor or assignee of any thereof; (iii) any corporation (or any officer, director or shareholder thereof), partnership (or any partner thereof), individual or entity to which the Trust Estate or any part of any thereof shall have been transferred; or (iv) any other person on the ground that in entering into the transactions evidenced by this Note and the Indenture, Owner was acting as an agent for the account and benefit of such person and that such person was the principal of Owner, in any such case, under any rule of law, statute or constitution, or by the enforcement of any assessment or penalty, or otherwise. It is understood that this Note and all obligations under or with respect to the Indenture may not be enforced against any person or entity described in clauses (i) through (iv) above; provided, that the foregoing provisions of this paragraph shall not (x) prevent recourse to the Trust Estate or the sums due or to become due under any instrument which is part of the Trust Estate, including, without limitation, the right to proceed against the Lessee under the Lease or (y) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by this Note or secured by the Indenture, but the same shall continue until paid or discharged, and provided, further, that the foregoing provisions of this paragraph shall not limit the right of any person to name any person or entity described in clauses (i) through (iv) or any transferee of any interest in the Trust Estate as a party defendant in any action or suit for a judicial foreclosure of or in the exercise of any other remedy under this Note or under the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against such person, entity or transferee.

This Note shall be governed by the law of the State of Florida.

3

IN WITNESS WHEREOF, Owner has caused this Series A 11.05% Secured Note Due July 1, 2011, to be duly executed.

Dated:  December ___, 1987

COMMONWEALTH AVENUE WAREHOUSE, INC.
    a Florida corporation


By:_____

(Seal)                              Printed Name:
                                    Title:


Attest:_____
        Printed Name:
        Title:

4

STATE OF ARIZONA          )
                          )ss.
COUNTY OF MARICOPA        )


    The foregoing instrument was acknowledged before me this 11th day of December, 1987, by  Robert J. Fitzsimmons and Thomas H. Reed, Vice President and Assistant Secretary, respectively, of COMMONWEALTH AVENUE WAREHOUSE, INC., a Florida corporation, on behalf of the corporation.

                             Notary Public in and for said State

(Notarial Seal)

My Commission Expires:
  My Commission Expires Mar. 14, 1991

STATE OF CONNECTICUT )
                     ) ss.
COUNTY OF HARTFORD   )


        The foregoing instrument was acknowledged before me this _10_ day of
December, 1987, by F.W. KAWAM and ___**F. W. KAWAM**___ and
___**V. Kreuscher**___, the Vice President and ~~Assistant~~ Secretary ,
respectively, of BANK OF NEW ENGLAND TRUST COMPANY, a national banking
association, on behalf of the association.

                                    _____
                                    Notary Public in and for said State


(Notarial Seal)

My commission expires:
        DAWN PICCOLI HEINTZ
          _NOTARY PUBLIC_
     MY COMMISSION EXPIRES MARCH 31, 1992

STATE OF <u>Kentucky</u>  )
                         ) ss.
COUNTY OF <u>Jefferson</u>  )


        The foregoing instrument was acknowledged before me this <u>10</u> day of
December, 1987, by <u>Theodore M. Haag</u>   and <u>Michael H. Sims</u>   , the Second Vice
<u>President-Investments</u>and <u>Secretary</u>          , respectively, of COMMONWEALTH
LIFE INSURANCE COMPANY, a <u>Kentucky</u>  corporation, on behalf of the corporation.

                              _Kimberly A. Carlan_____
                              Notary Public in and for said State

(Notarial Seal)

My commission expires:

  _10-30-91_____

STATE OF <u>Kentucky</u>  )
                 ) ss.
COUNTY OF <u>Jefferson</u>  )


       The foregoing instrument was acknowledged before me this <u>10</u> day of December, 1987, by <u>Theodore M. Haag</u> and <u>Paul J. Houk</u>, the Second Vice President-Investments and <u>Assistant Secretary</u>, respectively, of PEOPLES SECURITY LIFE INSURANCE COMPANY, a <u>North</u> ~~Carolina~~ corporation, on behalf of the corporation.

                                 _Kimberly A. Coslaw_
                                 Notary Public in and for said State

(Notarial Seal)

My commission expires:

  _10-30-91_