Hearing Date:  August 4, 2005

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| Debtors.¹ | ) Jointly Administered |

## DEBTORS' OBJECTION TO CITY OF PLAQUEMINE'S MOTION FOR MODIFICATION OF SECURITY DEPOSIT FOR UTILITY SERVICE

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates, debtors and debtors-in-possession (collectively, the "Debtors"), object (the "Objection") to the Motion for Modification of Security Deposit for Utility Service (the "Motion") filed by the City of Plaquemine ("Plaquemine").  In support of this Objection, the Debtors represent as follows:

### Preliminary Statement

1.  Plaquemine is requesting a deposit of $36,000, equal to approximately two times average monthly billings – an amount 96 times the $375 deposit Plaquemine required prepetition.  As this Court previously ruled with respect to other

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

utilities, the Debtors' liquidity, net worth, cash on hand, and borrowing availability demonstrate adequate assurance of payment. The facts relating to Plaquemine do not compel a different result. Indeed, the Debtors have paid the prepetition and postpetition invoices of Plaquemine *promptly* and *in full*. Accordingly, this Court should deny the Motion.

## Background

A.      The Debtors' Chapter 11 Cases

    2. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

    3. The Debtors are operating their businesses and managing their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. On March 1, 2005, an official committee of unsecured creditors (the "Creditors' Committee") was appointed to serve in these cases under section 1103 of the Bankruptcy Code.

B.      The Debtors' Relationship With Utilities

    4. The Debtors have relationships with approximately 800 different utility companies for the provision of telephone, electric, gas, water, sewer, waste management, and other services. The majority of these utility companies do not hold

prepetition deposits or other forms of security. The Debtors' monthly average expenditure for all utility services is approximately $16 million.[2]

C.  Procedural History Regarding Adequate Assurance

5.  On February 21, 2005, the Debtors filed a motion under section 366(b) of the Bankruptcy Code for an order deeming the utility companies adequately assured of payment for postpetition services, prohibiting utilities from altering, refusing, or discontinuing services, and establishing procedures for resolving requests for additional assurance (the "Utilities Motion").

6.  By order dated March 10, 2005, the New York Court approved the Utility Motion on a final basis with respect to nonobjecting utility companies and continued the Utility Motion with respect to objecting utility companies (the "Utility Order").

7.  The Utility Order authorizes the Debtors to comply with the adequate assurance requests that the Debtors believe are reasonable without further Court order. The Utility Order further provides that if the Debtors are unable to resolve an adequate assurance request within sixty days from the date of receipt thereof, the Debtors are required to file a motion for determination of such request.

D.  Evidentiary Hearings On Adequate Assurance

8.  Among others, JEA f/k/a Jacksonville Electric Authority ("JEA"), American Electric Power ("AEP"), Orlando Utilities Commission ("OUC"), and Duke Energy Corporation ("Duke"), objected to the Utility Motion, seeking postpetition

---

[2]  The Debtors are in the process of reducing the size of their store base from 913 stores in the United States and the Bahamas to 587 stores. Consequently, the Debtors' monthly average utility expenditure will decrease.

3

deposits. JEA, AEP, OUC, and Duke provide utility services to the Debtors under a total of more than 400 accounts.

9. On May 10, 2005, the Bankruptcy Court held an evidentiary hearing with respect to JEA's objection. Based on evidence presented at that hearing regarding the Debtors' satisfactory payment history, net worth, current liquidity, borrowing ability, and average monthly payments to utility companies, this Court overruled JEA's objection.

10. Similarly, on June 2, 2005, the Bankruptcy Court held an evidentiary hearing on the objections of AEP, OUC, and Duke. Based on evidence presented at that hearing regarding the Debtors' satisfactory payment history with respect to those utilities, current liquidity, business plan, and reorganization goals, this Court overruled the objections of AEP, OUC, and Duke.

11. On June 3, 2005, this Court entered the orders with respect to its rulings against JEA, AEP, OUC, and Duke.

E. <u>Adequate Assurance Requests</u>

12. To date, the Debtors have received thirty-one requests for postpetition security deposits from utility companies that hold either no security deposits or nominal security deposits for prepetition utility services.[3]

13. In light of this Court's rulings against JEA, AEP, OUC, and Duke – and to ease the administrative burdens which would otherwise result if the Debtors were forced to contest adequate assurance requests –the Debtors requested that those utility companies holding either no deposits or nominal deposits withdraw their requests.

---

[3]  Two of the utility companies hold no deposits with respect to the majority of the Debtors' accounts and surety bonds for the others.

Twenty-three utility companies have complied and withdrew their requests. The remaining eight utility companies, including Plaquemine, have declined and are pursuing their requests.

14. On June 24, 2005, the Debtors filed the Motion for Determination of Adequate Assurance of Payment of Utilities, requesting that this Court determine that the eight utility companies refusing to withdraw their requests are not entitled to additional adequate assurance (the "Motion for Determination") (Doc. No. 875).[4] The Motion for Determination will be heard on the August 4, 2005 omnibus hearing date.

F. City of Plaquemine

15. On June 13, 2005, Plaquemine filed its Motion seeking a postpetition security deposit in the amount of $36,000 – approximately two times the average monthly billings of the one store (#1579) to which it provides electric service located at 58045 Belleview Road, Plaquemine, Louisiana 70764. Before the filing of the Debtors' petition, Plaquemine required only a deposit of $375.

16. The Debtors have historically paid the Plaquemine's prepetition invoices promptly – on average of 8.6 days before the due date.[5] The Debtors have also timely paid the Plaquemine's postpetition invoices.

---

[4] The Motion for Determination originally pertained to eleven utility companies. Three utility companies subsequently withdrew their adequate assurance requests following the filing of such motion.

[5] Any unpaid prepetition amount owing to Plaquemine is a result of the timing of the filing of the Debtors' cases.

**Argument**

I. **The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 does not apply to the Motion.**

17. Plaquemine erroneously argues that this Court must consider the amendments to section 366 ("Amended Section 366"), set forth in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA"), in making its determination of whether adequate assurance has been granted to Plaquemine. Amended Section 366 does not apply to the Motion because it is not yet effective. Except as otherwise provided in BAPCA, BAPCA will take effect 180 days after the date of its enactment. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1501. Thus, Amended Section 366 will be effective 180 days after April 20, 2005 – or October 17, 2005 – and is not applicable to bankruptcy cases commenced before the effective date of BAPCA. The Debtors filed voluntary petitions for reorganization relief on February 21, 2005. Accordingly, Amended Section 366 is not applicable to the Motion.

II. **This Court has discretion in determining whether adequate assurance is warranted under the circumstances.**

18. Section 366(b) of the Bankruptcy Code provides that a utility may not "alter, refuse, or discontinue service" if the debtor "furnishes adequate assurance of payment, in the form of a deposit or other security." 11 U.S.C. § 366(b). Whether a utility is subject to unreasonable risk of nonpayment for postpetition services and whether, therefore, it is entitled to receive a new deposit must be determined from the facts of the case. *See In re Keydata Corp.*, 12 B.R. 156, 158 (Bankr. 1st Cir. 1981); *In re*

*Caldor, Inc.--NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.--NY*, 117 F.3d 646 (2d Cir. 1997).  All that "is required is that the utility be protected from an unreasonable risk of nonpayment." *In re Keydata Corp.*, 12 B.R. at 158.  The *Santa Clara* court identified the following factors in making the determination of adequate assurance:

>  (i) the prepetition security required of the debtor by the utility;
>
>  (ii) the debtor's prepetition payment history;
>
>  (iii) the debtor's present and future ability to pay its current expenses;
>
>  (iv) the debtor's net worth;
>
>  (v) the debtor's cash requirements;
>
>  (vi) the probability of payment through distribution under bankruptcy laws; and
>
>  (vii) the degree by which the risks of nonpayment from the debtor exceed the risks of nonpayment from the utility's other customers.

*In re Santa Clara Circuits W., Inc.*, 27 B.R. 680, 685 (Bankr. D. Utah 1982); *see also In re Caldor, Inc.*, 199 B.R. at 2.

       19.    Contrary to Plaquemine's assertions, it is well established that a security deposit is not necessary to satisfy the requirements of adequate assurance.  *In re Utica Floor Maint., Inc.*, 25 B.R. 1010, 1014 (N.D.N.Y. 1982) (concluding that a deposit is not always necessary to satisfy the adequate assurance requirement); *In re Demp,* 22 B.R. 331, 332 (Bankr. E.D. Pa. 1982) ("[W]here the debtor has a history of prompt and complete payment, in addition to being completely current in the prepetition utility payments, a cash deposit would be unnecessary."); *In re Shirey*, 25 B.R. 247, 249 (Bankr. E.D. Pa. 1982) ("[S]ection 366(b) of the [Bankruptcy] Code does not permit a utility to request adequate assurance of payment for continued services unless there has been a

7

default by the debtor on a pre-petition debt owed for services rendered."). The drafters of the Bankruptcy Code recognized that "[it] will not be necessary to have a deposit in every case." H.S. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306.

**III.  The Debtors' payment record, financial ability to satisfy future obligations, and the treatment of claims of postpetition utility services as administrative expenses constitute adequate assurance of payment of future utility services provided by Plaquemine.**

20.  Plaquemine holds a prepetition security deposit in the amount of $375, and now requests a postpetition deposit in the amount of $36,000 – 96 times greater. The Debtors' current circumstances, as discussed below, do not compel a greater deposit. The Debtors' prepetition and postpetition payment history, liquidity, net worth, cash on hand, and excess borrowing availability support a finding that Plaquemine is adequately assured of payment for postpetition services. Also, all undisputed charges for actual postpetition services provided by Plaquemine will be entitled to an administrative expense priority claim under Bankruptcy Code section 507(a)(1), providing additional assurance that future obligations will be paid in full. *See Va. Elec. & Power Co. v. Caldor, Inc.--NY*, 117 F.3d 646, 651 (2d Cir. 1997). As further discussed below, Plaquemine is more than adequately assured of future payment.

21.  The Debtors historically have paid Plaquemine's prepetition invoices promptly and in full. Indeed, the Debtors have paid the prepetition invoices on an average of 8.6 days before the due date. The Debtors have also timely paid Plaquemine's postpetition invoices – contrary to its mistaken assertion that the Debtors have outstanding postpetition invoices.[6] Thus, the facts do not support a finding

---

[6]  The Debtors timely paid the following postpetition invoices in full: (i) the invoice due on May 20, 2005 was paid by the Debtors on May 12, 2005; (ii) the invoice due on

8

requiring the Debtors to provide Plaquemine with a deposit in any amount. This Court has already found that JEA, AEP, OUC, and Duke are adequately assured of future payment and that the Debtors were not required to provide postpetition security deposits to those utility companies – which have more than 400 accounts with the Debtors compared to the one account of Plaquemine. Similarly, no deposit or other security for Plaquemine is warranted or necessary under the circumstances.[7]

22.     The Debtors now pose less of a risk for Plaquemine than they did before the Petition Date. Indeed, Plaquemine only required a nominal deposit prepetition. Plaquemine may <u>not</u> make such a request merely because of the Debtors' bankruptcy. *In re Coury*, 22 B.R. 766, 768 (Bankr. W.D. Pa. 1982) ("[W]e find that a utility cannot insist on the payment of security by one of its customers solely because the customer has filed a bankruptcy petition.").

23.     If the Debtors' financial position significantly changes, Plaquemine may seek relief from this Court. Plaquemine may monitor the Debtors' financial strength as the Debtors file monthly operating reports. The Debtors have also received, and continue to receive, extensive media coverage with respect to their reorganization efforts. This Court has already recognized with respect to JEA that "I can be here at 8:00 one

---

June 20, 2005 was paid by the Debtors on June 10, 2005; and (iii) the invoice due on July 20, 2005 was paid by the Debtors on July 12, 2005.

[7]     Plaquemine relies on cases the facts in which are clearly distinguishable from the facts in these cases. In both *In re Houdashell* and *In re Stagecoach Enters., Inc.,* the debtors had a history of irregular and partial payments. *In re Houdashell*, 7 B.R. 901, 903 (Bankr. W.D. Mo. 1981); *In re Stagecoach Enters., Inc.*, 1 B.R. 732, 736 (Bankr. M.D. Fla. 1979). In *Lloyd v. Champaign Tel. Co.,* the debtors were in arrears prepetition, whereas these Debtors were not delinquent on any of Plaquemine's prepetition invoices. *Lloyd v. Champaign Tel. Co.*, 52 B.R. 653, 656-57 (Bankr. S.D. Ohio 1985).

morning on a short notice if there's a problem and you need to get a quick order to turn off all the power." (5/19/05 Hr'g Tr. at 47.)  At the contested hearing on June 2, 2005, this Court reiterated that "if they ever feel insecure, substantially insecure, there's been a change of circumstances from today, the Court will make court time available on short notice.  You can get a good hour at 8:00 o'clock about any morning and we can deal with this if that case arises." (6/2/05 Hr'g Tr. at 72.)

**IV.    The Bankruptcy Code preempts the Plaquemine Code of Ordinances.**

24.    Plaquemine relies on the Plaquemine Code of Ordinances in requesting adequate assurance of two times the monthly average billings.   This Court is not bound by the Plaquemine Code of Ordinances.   The court in *In re Stagecoach Enters., Inc.* held that "[t]his Court is not bound by either the tariff or the [Florida] Public Service Commission Rules because of the Supremacy Clause of the United States Constitution, Article VI, Cl. 2." *In re Stagecoach Enters., Inc.*, 1 B.R. 732, 735 (Bankr. M.D. Fla. 1979).  Accordingly, this Court should give little weight to the Plaquemine Code of Ordinances.  *See id.*

## Conclusion

The Debtors' current liquidity, net worth, prepetition and postpetition payment history, cash on hand, and access to DIP financing more than adequately assure the Debtors' future ability to pay postpetition obligations to Plaquemine.  The Debtors' obligation to pay Plaquemine's utility charges as an administrative expense is more than sufficient to satisfy the adequate assurance requirement of section 366(b) of the Bankruptcy Code.  Thus, additional adequate assurance for Plaquemine is not warranted.  Accordingly, the Debtors request that this Court deny Plaquemine's Motion.

## **Notice**

25.     Notice of the Objection has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) Plaquemine.  No other or further notice need be given.

Dated: July 28, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By   *s/ D. J. Baker*<br>     D. J. Baker<br>     Sally McDonald Henry<br>     Rosalie Walker Gray | By   *s/ Cynthia C. Jackson*<br>     Stephen D. Busey<br>     James H. Post<br>     Cynthia C. Jackson,<br>     Florida Bar Number 498882 |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(212) 735-2000 (facsimile) | 225 Water Street, Suite 1800<br>Jacksonville, Florida  32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile) |
| Co-Attorneys for Debtors | Co-Attorneys for Debtors |

538578-New York Server 6A - MSW