EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

## WINN-DIXIE STORE # 2731
Decatur, Georgia

Lease: Lease dated June 14, 1984 between S. Stephen Selig, III and Cathy Selig d/b/a S&C Properties, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

as evidenced by Short Form Lease dated June 14, 1984, recorded in Book 5018, Page 139, of the public records of DeKalb County, Georgia

Amendments/
Guaranty: Guaranty dated June 20, 1984

Letter Agreement dated February 13, 1985

Supplemental Lease Agreement dated November 22, 1985

First Amendment to Shopping Center Lease Agreement dated April 23, 1998

Assignment and Assumption of Lease Agreement dated April 4, 2001

Premises: That certain store building and related improvements located at 1496 Church Street, Decatur, DeKalb County, Georgia

Legal Description: The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

EXHIBIT "B"

LEGAL DESCRIPTION

All that certain piece, parcel or tract of land lying and being situate in Decatur, DeKalb County, Georgia, more particularly described as follows:

BEGINNING AT THE IRON PIN LOCATED at the point formed by the intersection of the south line of the right-of-way of North Decatur Road (a 100-foot right-of-way) with the northwest line of the right-of-way of Church Street (an 80-foot right-of-way) and running thence in a southwesterly direction along the northwest line of said right-of-way of Church Street and following the curvature thereof a distance of 912.50 feet to an iron pin; running thence north 74 degrees 28 minutes west a distance of 158.48 feet to an iron pin; running thence north 72 degrees 41 minutes west a distance of 386.95 feet to an iron pin; running thence north 04 degrees 39 minutes east a distance of 97.38 feet to an iron pin; running thence north 05 degrees 07 minutes east a distance of 100.28 feet to an iron pin; running thence north 05 degrees 05 minutes east a distance of 96.0 feet to an iron pin; running thence north 72 degrees 29 minutes west a distance of 179.54 feet to an iron pin; running thence north 19 degrees 38 minutes east a distance of 145.83 feet to an iron pin; running thence north 18 degrees 50 minutes east a distance of 413.60 feet to an iron pin located on the south line of said right-of-way of North Decatur Road; running thence in an easterly direction along the south line of said right-of-way of North Decatur Road and following the curvature thereof a distance of 1,035.10 feet to the POINT OF BEGINNING, being improved property shown as containing 16.43 acres in area on the plat of survey prepared for Residuary Trust u/w Ben J. Massell by Watts & Browning-Eng'rs, bearing the certification of A. W. Browning, Georgia Registered Land Surveyor No. 490 and dated June 15, 1978.

2731
1496 Church Street
Decatur, GA

EXHIBIT "A"



SITE PLAN for
WINN-DIXIE ATLANTA, INC. and
WINN-DIXIE STORES, INC.

PARKING PLAN:

Before Expansion: 914 cars
238,216 SQ FT LEASABLE AREA
3.8 cars per 1,000 SQ FT LEASABLE AREA

After Expansion: 896 cars
245,216 APPROX SQ FT LEASABLE AREA
3.6 cars per 1,000 SQ FT LEASABLE AREA

SUBURBAN PLAZA SHOPPING CENTER
1496 CHURCH STREET, DECATUR GA 30030-1559
2557-2641 NORTH DECATUR ROAD, DECATUR, GA 30033-6126

2731
1496 Church Street
Decatur, GA

EXHIBIT B
To Asset Purchase Agreement

Form of

**BILL OF SALE**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2005, among **Y.M. LEE, INC.**, a Georgia corporation ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Lease and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2005.

"SELLER"

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

By: _____
Name: _____
Title: _____

**EXHIBIT C-1**
**To**
**Asset Purchase Agreement**

**INDIVIDUAL STORE CLOSING STATEMENT**

| | |
|---|---|
| **BUYER:** | Y.M. Lee, Inc. a Georgia corporation |
| **SELLER:** | Winn-Dixie Raleigh Inc., a Florida corporation |
| **ESCROW AGENT and SETTLEMENT AGENT:** | _____ |
| **Property:** | Store No. 2731 |
| **CLOSING DATE:** | _____, 2005 |

**SELLER'S STATEMENT**

**BASE PURCHASE PRICE:**

Leasehold:                                                $_____

FF&E:                                                     $_____

BASE PURCHASE PRICE:                                      $_____

SUPPLIES PRICE:                                           $_____

TOTAL BASE PURCHASE PRICE AND
SUPPLIES PRICE:
                                                          $_____

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and          $_____
Other Charges Payable Under Lease (1)

Buyer's Prorated Share of Rents Paid in       $_____
Advance **[Under Sublease (2)]**

**Total Debit Adjustments:**                  $_____

**Plus Adjustments (Credit):**                                         $_____

Exhibit C-1
Page 1 of 10

| | | |
|---|---|---|
| Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Lease (3) | | $_____ |
| Environmental Assessment Costs Paid by Seller | | $_____ |
| [Other] | | $_____ |
| **Total Credit Adjustments:** | | $_____ |

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

| | | |
|---|---|---|
| Seller's Attorneys' Fees & Costs | $_____ | |
| Seller's Brokerage Fees | $_____ | |
| Cure Costs | $_____ | |

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER**                                            $_____

## BUYER'S STATEMENT

| | | |
|---|---|---|
| **ALLOCATED BASE PURCHASE PRICE:** | $_____ | |
| **SUPPLIES PRICE:** | $_____ | |
| **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | | $_____ |

**Less Adjustments (Credit):**

| | | |
|---|---|---|
| Allocated Amount of Base Deposit | | $_____ |
| Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Lease (1) | | $_____ |
| [Other] | | $_____ |

**Total Debit Adjustments:**

Exhibit C-1
Page 2 of 8

| | | |
|---|---|---|
| **Plus Adjustments (Debit):** | | $_____ |
| Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Lease (3) | $_____ | |
| Environmental Assessment Costs Paid by Seller | $_____ | |
| [Other] | $_____ | |
|    Total Credit Adjustments: | | $_____ |
| **NET DEBIT/CREDIT TO BUYER** | | |
| **Less Closing Costs Payable by Buyer:** | | |
| Buyer's Attorneys' Fees & Costs | $_____ | |
| Title Insurance Premiums(4) | $_____ | |
| Title Examination Fees | $_____ | |
| Transfer/Documentary Taxes | $_____ | |
| Buyer's Brokerage Fees | $_____ | |
| Closing Escrow Fees | $_____ | |
| Inventory Service Fees(8) | $_____ | |
| **Total Buyer's Closing Costs:** | $_____ | |
| **AMOUNT DUE FROM BUYER** | | $_____ |
| **ALLOCATED AMOUNT OF BASE DEPOSIT** | | $_____ |
| **TOTAL AMOUNT DUE AT CLOSING** | | $_____ |

### SCHEDULE OF DISBURSEMENTS

| | | |
|---|---|---|
| 1. | Allocated Amount of Base Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | The Blackstone Group L.P. (Seller's Brokers Fees) | ($_____) |
| 2. | The Food Partners, LLC | ($_____) |

Exhibit C-1
Page 3 of 8

|  |  |  |
|---|---|---|
|  | (Seller's Brokers Fees) |  |
| 3. | DJM Asset Management, LLC | ($_____) |
|  | (Seller's Brokers Fees) |  |
| 4. | _____ Title Insurance Company | ($_____) |
|  | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees |  |
| 5. | _____ |  |
|  | Transfer/Documentary Taxes |  |
| 6. | **[Name of Inventory Service]** | ($_____) |
|  | (Inventory Service Fees) |  |
| 7. | _____ | ($_____) |
|  | (Lease Cure Costs, if any) |  |
| 8. | _____ | ($_____) |
|  | (Sublease Cure Costs, if any) |  |
| 9. | Seller | ($_____) |
|  | (Seller's Proceeds) |  |
| [10.] | [Other] | ($_____) |

**TOTAL DISBURSEMENTS:**

**Notes:**

(1) <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>. Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease. Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store # _____

- 2005 Real Estate Taxes               $
- Per Diem Tax Amount                  $
- Seller's Share of 2005 Taxes
    (1/1/05 - __/__/05) (____ days)    $ _____    _____

**Total Real Estate Taxes:**

**Personal Property Taxes**

Store # _____

- 2005 Personal Property Taxes         $
- Per Diem Tax Amount                  $
- Seller's Share of 2005 Taxes
    (1/1/05 - __/__/05) (____ days)    $ _____    _____

**Total Personal Property Taxes:**

Exhibit C-1
Page 4 of 8

**CAM Charges**

Store # _____

- 2005 CAM Charges                              $
- Per Diem Amount                               $
- Seller's Share of 2005 CAM Charges
  (__/__/__ - __/__/05) (_____ days)     $_____

**Total CAM Charges:**

**Insurance**

Store # _____

- 2005 Insurance                                $
- Per Diem Amount                               $
- Seller's Share of 2005 Insurance
  (__/__/__ - __/__/05) (_____ days)     $_____

**Total Insurance:**
**Total Amount of Seller's Prorated
Share of 2005 Prorations:**                                    _____

(2)     _____, **2005 Sublease Prorations - Amounts Previously Received by Seller.** Prorations are based on _____, 2005 rents previously paid to Seller in accordance with Sublease. Buyer will be responsible for the collection of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

Store # _____
- Total _____, 2005 rent paid:          $
- Per diem rent:                                $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)     $_____

**Total Amount of Seller's Prorated Share of _____ Prorations:**

(3)     _____, **2005 Prorations - Amounts Previously Paid by Seller.** Prorations are based on _____, 2005 rents, common area maintenance assessments and other charges previously paid by Seller in accordance with applicable Lease. Buyer will be responsible for the payment of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

**Rent**

Store # _____
- Total _____, 2005 rent paid:          $
- Per diem rent:                                $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)     $_____

Exhibit C-1
Page 5 of 8

|  |  |
|---|---|
| - Per diem rent: | $ |
| - Buyer's prorated share (__/__/__ - __/__/05) (_____ days) | $ _____ |
| **Total Amount of Buyer's Prorated Share of _____ Prorations:** | |

(4) <u>Title Premiums and Expenses</u>. Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

Store # _____
- Title Search Fees and Costs       $         -
- Title Premium                     $         -

**Total Amount of Title Fees and Expenses:**

(5) <u>Utility Deposits and Charges</u>. All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof. The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor. Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6) <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7) <u>Inventory Purchase Price and Adjustments</u>. To the extent Inventory has acquired inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement between Seller and Buyer dated as of even date herewith. Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

Exhibit C-1
Page 6 of 8

(8)      <u>Inventory Service Fees</u>. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices. Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)      <u>Capitalized Terms</u>. Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

## STIPULATIONS

1. <u>Purchase Agreement</u>. This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").

2. <u>Authorization to Disburse</u>. By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____
_____
_____
_____

3. <u>Counterparts</u>. This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

Exhibit C-1
Page 7 of 8

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                              **BUYER:**

**WINN-DIXIE RALEIGH, INC.**                             **Y.M. LEE, INC.**
a Florida corporation                                    a Georgia corporation


By: _____                       By: _____
Name: _____                        Name: _____
Title: _____                      Title: _____

Exhibit C-1
Page 8 of 8

Exhibit C-2

To Asset Purchase Agreement

Form of Inventory Closing Statement

**INVENTORY CLOSING STATEMENT**

| | |
|---|---|
| **SELLER** | Winn-Dixie Raleigh, Inc., a Florida corporation |
| **BUYER:** | Y.M. Lee, Inc., a Georgia corporation |
| **TRANSACTION:** | Acquisition of Leasehold Interest in Store 2731 |
| **BASE PURCHASE PRICE:** | Under Separate Closing Statement |

**INVENTORY PRICE (2):**

$_____

**CLOSING DATE:** _____, 2005 _____

**SELLER'S STATEMENT**

**Inventory Price**                                                                                   $

**Less Adjustments:**

    1.    Ten Percent of Inventory Price
           Retained by Escrow Agent    $ _____
           Total Adjustments:    $ _____    $ ( _____ )

**TOTAL AMOUNT DUE TO SELLER:**    $ _____

**BUYER'S STATEMENT**

**Inventory Price**                                                                                   $

**Plus Closing Costs to be Paid by Buyer:**
    1.    Inventory Service Fees (3)    _____    $

Exhibit C-2
Page 1 of 3

|  |  |  |
|---|---|---|
| (Direct Payment or Reimbursement to Seller) | | |
| **Total Buyer's Inventory Closing Costs:** | $ | $ _____ |

**AMOUNT DUE FROM BUYER:**                                                                                  $ _____

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this day of July, 2004, and hereby authorize **[Title Insurer]**, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**BUYER:**

**WINN-DIXIE** _____ **, INC.**, a Florida corporation

_____., a _____

By:_____
Name:_____
Title: _____ President

By:_____
Name:_____
Title: _____

**Notes:**

(1) <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(2) <u>Inventory Price Adjustments</u>. The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement. The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period. To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

Exhibit C-2
Page 2 of 3

(3) <u>Inventory Service Fees</u>. The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same. Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4) <u>Capitalized Terms</u>. Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

<u>RECEIPTS</u>:

| | | | |
|---|---|---|---|
| 1. | Total Amount Due From Buyer | $ _____ | |
| **TOTAL CASH RECEIVED:** | | $ | $ _____ |

<u>DISBURSEMENTS</u>:

| | | | |
|---|---|---|---|
| 1. | Winn-Dixie _____, Inc.<br>(Seller's Proceeds and Reimbursement of Inventory Service Fee) | | $ _____ |
| **TOTAL DISBURSEMENTS:** | | | $ _____ |
| **BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT PURSUANT TO PURCHASE AGREEMENT:** | | | $ |

Exhibit C-2
Page 3 of 3

EXHIBIT D
To Asset Purchase Agreement

Schedule of Certain Excluded Personal Property

[see attached schedules]

Leased Equipment List
Store 2731

| ID | Div. | Mfg | Type | Model | 46XX | 46XX Type | lexmark | Qty | Serial # | Equip. # | PO # | Install Date | Lessor | Lease # | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5733 | 33 | IBM | 6331 | B2N | 0 | | IBM BLACK E54 15I | 1 | XCVG5 | 194925 | 28176 | 15-Apr-01 | CLC | 28176 | Personal Computers |
| 5734 | 33 | IBM | 6331 | B2N | 0 | | IBM BLACK E54 15I | 1 | XCVD3 | 194926 | 28176 | 15-Apr-01 | CLC | 28176 | Personal Computers |
| 5731 | 33 | IBM | 8477 | 42Y | 0 | | NETFINITY 1000 PI | 1 | M1407 | 194923 | 28176 | 15-Apr-01 | CLC | 28176 | POS |
| 5732 | 33 | IBM | 8477 | 42Y | 0 | | NETFINITY 1000 PI | 1 | M5017 | 194924 | 28176 | 15-Apr-01 | CLC | 28176 | POS |
| 8056 | 33 | TEL | PTC960 | XDS | 0 | | RF RE-MANUFACTURE | 1 | 930174 | 201437 | 29234 | 16-Jun-01 | CLC | 29234 | Radio Frequency |
| 13751 | 33 | DCC | E551 | 15MO | 0 | | DELL E551 15INCH | 1 | | 223731 | 31735 | 17-May-02 | CLC | 31735 | Personal Computers |
| 13752 | 33 | DCC | PV715N | 1U | 0 | | DELL NAS PV715N W | 1 | J0N111 | 223732 | 31735 | 17-May-02 | CLC | 31735 | Servers |
| 13750 | 33 | DCC | 2500 | P3 | 0 | | POWEREDGE 2500 P3 | 1 | 5H2F11 | 223730 | 31735 | 17-May-02 | CLC | 31735 | Servers |
| 40253 | 12 | NCR | SCANNER | 7837 | 0 | | 7837-1000-9090 H/ | 1 | 653373 | 206743 | 30119 | 16-Sep-01 | CLC1 | 30119 | POS |
| 28061 | 33 | SPI | 244030 | 010 | 0 | | MAGELLAN SCANNER | 1 | 038105 | 96912 | 6556 | 01-Mar-96 | CLC1 | 06556 | POS |
| 28062 | 33 | SPI | 244030 | 010 | 0 | | MAGELLAN SCANNER | 1 | 038106 | 96913 | 6556 | 01-Mar-96 | CLC1 | 06556 | POS |
| 28063 | 33 | SPI | 244030 | 010 | 0 | | MAGELLAN SCANNER | 1 | 038107 | 96914 | 6556 | 01-Mar-96 | CLC1 | 06556 | POS |
| 28064 | 33 | SPI | 244030 | 010 | 0 | | MAGELLAN SCANNER | 1 | 038108 | 96915 | 6556 | 01-Mar-96 | CLC1 | 06556 | POS |
| 28065 | 33 | SPI | 244030 | 010 | 0 | | MAGELLAN SCANNER | 1 | 038109 | 96916 | 6556 | 01-Mar-96 | CLC1 | 06556 | POS |
| 28066 | 33 | SPI | 244030 | 010 | 0 | | MAGELLAN SCANNER | 1 | 038110 | 96917 | 6556 | 01-Mar-96 | CLC1 | 06556 | POS |
| 28067 | 33 | SPI | 244030 | 010 | 0 | | MAGELLAN SCANNER | 1 | 038111 | 96918 | 6556 | 01-Mar-96 | CLC1 | 06556 | POS |
| 28068 | 33 | SPI | 244030 | 010 | 0 | | MAGELLAN SCANNER | 1 | 038112 | 96919 | 6556 | 01-Mar-96 | CLC1 | 06556 | POS |
| 28069 | 33 | SPI | 244030 | 010 | 0 | | MAGELLAN SCANNER | 1 | 038113 | 96920 | 6556 | 01-Mar-96 | CLC1 | 06556 | POS |
| 25564 | 33 | IBM | 4693 | 3S1I | 4693 | 3S1I | POS TERMAINAL | 1 | 088856 | 101903 | 0007920 | 01-Mar-96 | CLC1 | 03307 | POS |
| 25559 | 33 | IBM | 4693 | 3S1D | 4693 | 3S1D | POS TERMINAL-SUPM | 1 | 088861 | 101894 | 0007920 | 01-Mar-96 | CLC1 | 03307 | POS |
| 25560 | 33 | IBM | 4693 | 3S1D | 4693 | 3S1D | POS TERMINAL-SUPM | 1 | 088860 | 101895 | 0007920 | 01-Mar-96 | CLC1 | 03307 | POS |
| 25561 | 33 | IBM | 4693 | 3S1D | 4693 | 3S1D | POS TERMINAL-SUPM | 1 | 088858 | 101896 | 0007920 | 01-Mar-96 | CLC1 | 03307 | POS |
| 25562 | 33 | IBM | 4693 | 3S1D | 4693 | 3S1D | POS TERMINAL-SUPM | 1 | 088859 | 101897 | 0007920 | 01-Mar-96 | CLC1 | 03307 | POS |
| 25563 | 33 | IBM | 4693 | 3S1D | 4693 | 3S1D | POS TERMINAL-SUPM | 1 | 088857 | 101898 | 0007920 | 01-Mar-96 | CLC1 | 03307 | POS |
| 37814 | 6 | IBM | 4693 | 3S1I | 4693 | 3S1I | POS TERMAINAL | 1 | N1098 | 145156 | 18473 | 01-Jan-99 | CLC1 | 18473 | POS |
| 37815 | 6 | IBM | 4693 | 3S1I | 4693 | 3S1I | POS TERMAINAL | 1 | N1099 | 145157 | 18473 | 01-Jan-99 | CLC1 | 18473 | POS |
| 37816 | 6 | IBM | 4693 | 3S1I | 4693 | 3S1I | POS TERMAINAL | 1 | N1100 | 145158 | 18473 | 01-Jan-99 | CLC1 | 18473 | POS |
| 52699 | 33 | IBM | SAV2 | SVCS | 0 | | SAV2 SERVICES | 1 | | 218636 | 923001 | 01-Jul-01 | ICC | 23001 | Software |
| 51660 | 33 | IBM | SAV2 | SFTW | 0 | | IBM SAV2 SOFTWARE | 1 | | 217495 | 923001 | 01-Jul-01 | ICC | 23001 | Software |
| 54012 | 33 | PCG | ROI | SFTW | 0 | | FIELDS SOFTWARE ( | 1 | | 42997 | | 01-Feb-93 | PCG | 00000 | Software |

**Other Leased Equipment**
TRM Copier

Leased Equipment List
Store 2731

| Rent Amount | Total Payments To Date | Total Lease Payments | Lease Term Interest Rate | To Date Interest Rate | Annualized Rent $'s | Lease Term | Expire Date |
|---|---|---|---|---|---|---|---|
| $5.27 | $270.18 | $252.96 | $0.14 | $0.16 | $63.24 | 48 | 31-May-05 |
| $5.27 | $270.18 | $252.96 | $0.14 | $0.16 | $63.24 | 48 | 31-May-05 |
| $36.60 | $1,876.36 | $1,756.80 | $0.14 | $0.16 | $439.20 | 48 | 31-May-05 |
| $36.60 | $1,876.36 | $1,756.80 | $0.14 | $0.16 | $439.20 | 48 | 31-May-05 |
| $19.58 | $963.34 | $704.88 | $0.16 | $0.26 | $234.96 | 36 | 11-Nov-11 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 36 | 31-May-05 |
| $68.44 | $2,603.00 | $2,463.84 | $0.13 | $0.15 | $821.28 | 36 | 31-May-05 |
| $181.37 | $6,898.11 | $6,529.32 | $0.13 | $0.15 | $2,176.44 | 36 | 31-May-05 |
| $3.41 | | | | | $40.92 | | |
| $12.34 | | | | | $148.08 | | |
| $12.34 | | | | | $148.08 | | |
| $12.34 | | | | | $148.08 | | |
| $12.34 | | | | | $148.08 | | |
| $12.34 | | | | | $148.08 | | |
| $12.34 | | | | | $148.08 | | |
| $12.34 | | | | | $148.08 | | |
| $12.36 | | | | | $148.32 | | |
| $14.65 | | | | | $175.80 | | |
| $14.65 | | | | | $175.80 | | |
| $14.65 | | | | | $175.80 | | |
| $14.65 | | | | | $175.80 | | |
| $14.65 | | | | | $175.80 | | |
| $14.65 | | | | | $175.80 | | |
| $40.36 | | | | | $484.32 | | |
| $40.36 | | | | | $484.32 | | |
| $40.36 | | | | | $484.32 | | |
| $31.74 | | | | | $380.88 | 48 | 30-Jun-05 |
| $99.96 | | | | | $1,199.52 | 48 | 30-Jun-05 |
| $0.00 | | | | | $0.00 | 60 | 31-Jan-98 |

EXHIBIT E

[Intentionally Deleted]