EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES AND RELATED LAND</u>

## WINN-DIXIE STORE # 126
Fitzgerald, Georgia

| | |
|---|---|
| Lease: | Lease dated April 12, 1994 between Village Plaza, Inc., as Landlord, and Winn-Dixie Stores, Inc., as Tenant; |
| | as evidenced by Short Form Lease dated April 12, 1994, recorded in Book 325, Page 253, of the public records of Ben Hill County, Georgia |
| Amendments/ Guaranty: | Letter Agreement dated April 13, 1994 |
| | Supplemental Lease Agreement dated July 24, 1994 |
| Premises: | That certain store building and related improvements located at 162 Ocilla Highway, Fitzgerald, Ben Hill County, Georgia |
| Legal Description: | The real property as more particularly described as follows: |

SEE ATTACHED LEGAL DESCRIPTION

## LEGAL DESCRIPTION OF SHOPPING CENTER

All that tract or parcel of land containing approximately 17 acres and lying and being in Land Lot 91 in the Third Land District and in Land Lot 302 of the Fourth Land District of Ben Hill County, Georgia, and being particularly described as follows:

Commencing at a point located at the intersection of the south-easterly right of way line of the Seaboard Coast Line right of way (100 foot right of way) with the northeasterly right of way line of U. S. Highway #129/319 (80 foot right of way); thence running North 13°00' East along said southeasterly right of way line of said Seaboard Coast Line railroad right of way 298.0 feet to a railroad iron for the POINT OF BEGINNING; run thence South 84°01' East 840.0 feet to a point; thence South 33°38' East 518.63 feet to a point; thence South 56°22' West 678.0 feet to a point; thence North 33°38' West 200 feet to a point; thence South 56°22' West 185 feet to a point located on said north-easterly right of way line of U. S. Highway #129/319 (80 foot right of way); thence North 33°38' West along said northeasterly right of way line of U. S. Highway #129/319 538 feet to a point; thence North 56°22' East 120 feet to a point; thence North 33° 38' West 225 feet to a point on the southeasterly right of way line of the Seaboard Coast Line railroad right of way (100 foot right of way); thence North along said railroad right of way line 13°00' East 135 feet, more or less, to the POINT OF BEGINNING.

Said property is shown on that certain Plat of Survey for Forward Fitzgerald Inc. prepared by S. Y. A. Ball, registered land surveyor, dated August 12, 1973, which survey is by this reference made a part hereof.

**126**
**162 Ocilla Highway**
**Fitzgerald, GA**

EXHIBIT "B"

EXHIBIT B
To Asset Purchase Agreement

Form of

**BILL OF SALE**

**WINN-DIXIE _____, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2005, among **TOM-TOM FOODS, INC.** a Georgia corporation, ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Lease and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

EXHIBIT B
Page 1 of 2

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2005.

"SELLER"

**WINN-DIXIE _____, INC.,** a Florida corporation

By: _____
Name: _____
Title: _____

EXHIBIT B
Page 2 of 2

**EXHIBIT C-1**
**To**
**Asset Purchase Agreement**

**INDIVIDUAL STORE CLOSING STATEMENT**

**BUYER:**                    _____, a _____

**SELLER:**                   Winn-Dixie _____, Inc., a Florida corporation

**ESCROW AGENT and**          _____
**SETTLEMENT AGENT:**

**Property:**                 Store No. _____

**CLOSING DATE:**             _____, 2005

**SELLER'S STATEMENT**

**BASE PURCHASE PRICE:**

Leasehold:                                                        $_____

FF&E:                                                            $_____

BASE PURCHASE PRICE:                                             $_____

**SUPPLIES PRICE:**                                              $_____

**TOTAL  BASE PURCHASE PRICE AND**
**SUPPLIES PRICE:**
                                                                 $_____

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and          $_____
Other Charges Payable Under Lease (1)

Buyer's Prorated Share of Rents Paid in       $_____
Advance **[Under Sublease (2)]**

**Total Debit Adjustments:**                  $_____

**Plus Adjustments (Credit):**                                   $_____

Exhibit C-1
Page 1 of 8

Seller's Prorated Share of Rents and
Other Charges Paid in Advance Under
Lease (3)                                                                    $_____

Environmental Assessment Costs Paid by                                       $_____
Seller

[Other]                                                                      $_____

  **Total Credit Adjustments:**                                             $_____

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs                 $_____

Seller's Brokerage Fees                          $_____

Cure Costs                                       $_____

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER**                                                     $_____


**BUYER'S STATEMENT**

**ALLOCATED BASE PURCHASE**                      $_____
**PRICE:**

**SUPPLIES PRICE:**                              $_____

**TOTAL BASE PURCHASE PRICE AND**
**SUPPLIES PRICE:**
                                                                             $_____

**Less Adjustments (Credit):**

Allocated Amount of Base Deposit                                             $_____

Seller's Prorated Share of Rents and                                        $_____
Other Charges Paid in Advance Under
Lease (1)

[Other]                                                                      $_____

**Total Debit Adjustments:**

Exhibit C-1
Page 2 of 8

**Plus Adjustments (Debit):**                                           $_____

Seller's Prorated Share of Rents and          $_____
Other Charges Paid in Advance Under
Lease (3)

Environmental Assessment Costs Paid by        $_____
Seller

[Other]                                       $_____

   **Total Credit Adjustments:**                         $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs               $_____

Title Insurance Premiums(4)                   $_____

Title Examination Fees                        $_____

Transfer/Documentary Taxes                    $_____

Buyer's Brokerage Fees                        $_____

Closing Escrow Fees                           $_____

Inventory Service Fees(8)                     $_____

**Total Buyer's Closing Costs:**              $_____

**AMOUNT DUE FROM BUYER**                                              $_____

**ALLOCATED AMOUNT OF BASE**                                          $_____
**DEPOSIT**

**TOTAL AMOUNT DUE AT CLOSING**                                       $_____

## SCHEDULE OF DISBURSEMENTS

1.    Allocated Amount of Base Deposit from Escrow Agent      $_____
2.    Amount Due From Buyer                                    $_____

**TOTAL RECEIPTS:**                                                    $_____

1.    The Blackstone Group L.P.                               ($_____)
     (Seller's Brokers Fees)
2.    The Food Partners, LLC                                   ($_____)

Exhibit C-1
Page 3 of 8

|  |  |  |
|---|---|---|
|  | (Seller's Brokers Fees) |  |
| 3. | DJM Asset Management, LLC | ($_____) |
|  | (Seller's Brokers Fees) |  |
| 4. | '_____ Title Insurance Company | ($_____) |
|  | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees |  |
| 5. | _____ |  |
|  | Transfer/Documentary Taxes |  |
| 6. | **[Name of Inventory Service]** | ($_____) |
|  | (Inventory Service Fees) |  |
| 7. | _____ | ($_____) |
|  | (Lease Cure Costs, if any) |  |
| 8. | _____ | ($_____) |
|  | (Sublease Cure Costs, if any) |  |
| 9. | Seller | ($_____) |
|  | (Seller's Proceeds) |  |
| [10.] | [Other] | ($_____) |

**TOTAL DISBURSEMENTS:**

**Notes:**

(1)  2005 Prorations - Amounts Not Yet Paid and Payable.  Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease.  Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store # _____

|  |  |  |
|---|---|---|
| - 2005 Real Estate Taxes | $ |  |
| - Per Diem Tax Amount | $ |  |
| - Seller's Share of 2005 Taxes |  |  |
|    (1/1/05 - __/__/05) (____ days) | $_____ | _____ |

**Total Real Estate Taxes:**

**Personal Property Taxes**

Store # _____

|  |  |  |
|---|---|---|
| - 2005 Personal Property Taxes | $ |  |
| - Per Diem Tax Amount | $ |  |
| - Seller's Share of 2005 Taxes |  |  |
|    (1/1/05 - __/__/05) (____ days) | $_____ | _____ |

**Total Personal Property Taxes:**

Exhibit C-1
Page 4 of 8

### CAM Charges

<u>Store # _____</u>
- 2005 CAM Charges       $
- Per Diem Amount       $
- Seller's Share of 2005 CAM Charges
    (__/__/__ - __/__/05) (_____ days)    $ _____        _____
**Total CAM Charges:**

### Insurance

<u>Store # _____</u>
- 2005 Insurance       $
- Per Diem Amount       $
- Seller's Share of 2005 Insurance
    (__/__/__ - __/__/05) (_____ days)    $ _____
**Total Insurance:**
**Total Amount of Seller's Prorated**
**Share of 2005 Prorations:**           _____

(2)     <u>_____, 2005 Sublease Prorations - Amounts Previously Received by Seller</u>. Prorations are based on _____, 2005 rents previously paid to Seller in accordance with Sublease. Buyer will be responsible for the collection of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

<u>Store # _____</u>
- Total _____, 2005 rent paid:       $
- Per diem rent:       $
- Buyer's prorated share
    (__/__/__ - __/__/05) (_____ days)    $ _____
**Total Amount of Seller's Prorated Share of _____ Prorations:**

(3)     <u>_____, 2005 Prorations - Amounts Previously Paid by Seller</u>. Prorations are based on _____, 2005 rents, common area maintenance assessments and other charges previously paid by Seller in accordance with applicable Lease. Buyer will be responsible for the payment of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

### Rent

<u>Store # _____</u>
- Total _____, 2005 rent paid:       $
- Per diem rent:       $
- Buyer's prorated share
    (__/__/__ - __/__/05) (_____ days)    $ _____

Exhibit C-1
Page 5 of 8

- Per diem rent:                                  $
- Buyer's prorated share
   (__/__/__ - __/__/05) (_____ days)         $_____   _____

**Total Amount of Buyer's Prorated Share of _____ Prorations:**


(4)     <u>Title Premiums and Expenses</u>. Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

     <u>Store #_____</u>
     - Title Search Fees and Costs              $                    -
     - Title Premium                            $_____-_

     **Total Amount of Title Fees and Expenses:**

(5)     <u>Utility Deposits and Charges</u>. All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof. The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor. Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6)     <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7)     <u>Inventory Purchase Price and Adjustments</u>. To the extent Inventory has acquired inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement between Seller and Buyer dated as of even date herewith. Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

Exhibit C-1
Page 6 of 8

(8)     <u>Inventory Service Fees</u>. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices.  Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs.  In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store.  Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)     <u>Capitalized Terms</u>.  Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

## STIPULATIONS

1.  <u>Purchase Agreement</u>.  This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").

2.  <u>Authorization to Disburse</u>.   By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____
_____
_____
_____

3.  <u>Counterparts</u>.  This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.  To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4.  <u>Adjustments</u>.   Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

Exhibit C-1
Page 7 of 8

The undersigned parties acknowledge and agree to the this Closing Statement as of this \_\_\_\_\_ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                                    **BUYER:**

**WINN-DIXIE** _____,          **TOM-TOM FOODS, INC.,**
a Florida corporation                                 a Georgia corporation

By: _____          By: _____

Name: _____          Name: _____

Title: Vice President                               Title: _____

Exhibit C-1
Page 8 of 8

Exhibit C-2

To Asset Purchase Agreement

Form of Inventory Closing Statement

### INVENTORY CLOSING STATEMENT

**SELLER**                   Winn-Dixie _____, Inc., a Florida corporation

**BUYER:**                   _____ a _____

**TRANSACTION:**             Acquisition of Leasehold Interest  In Store _____

**BASE PURCHASE PRICE:**     Under Separate Closing Statement

**INVENTORY PRICE (2):**

$_____

_____

**CLOSING DATE:** _____, 2005

### SELLER'S STATEMENT

**Inventory Price**                                              $

**Less Adjustments:**

     1.        Ten Percent of Inventory Price

              Retained by Escrow Agent              $_____

                **Total Adjustments:**           $               $     (          )

**TOTAL AMOUNT DUE TO SELLER:**                                  $

### BUYER'S STATEMENT

**Inventory Price**                                              $

**Plus Closing Costs to be Paid by Buyer:**

     1.        Inventory Service Fees (3)           _____ $

Exhibit C-2
Page 1 of 3

|  | (Direct Payment or Reimbursement to Seller) | | |
| --- | --- | --- | --- |
|  | **Total Buyer's Inventory Closing Costs:** | $ | $ _____ |

**AMOUNT DUE FROM BUYER:**          $ _____

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this day of July, 2004, and hereby authorize **[Title Insurer]**, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

                                                                   **BUYER:**

**WINN-DIXIE**    **, INC., a Florida**                       _____., a _____
corporation

By:_____ _____
Name:_____                                  By:_____
Title: _____ President                    Name:_____
                                                   Title: _____

**Notes:**

(1)      <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(2)      <u>Inventory Price Adjustments</u>. The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement. The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period. To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

Exhibit C-2
Page 2 of 3

(3)    <u>Inventory Service Fees</u>.  The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same.  Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4)    <u>Capitalized Terms</u>.  Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## <u>DISBURSEMENT SCHEDULE</u>

<u>RECEIPTS</u>:

| | | |
|---|---|---|
| 1. | Total Amount Due From Buyer | $_____ |
| TOTAL CASH RECEIVED: | | $_____    $_____ |

<u>DISBURSEMENTS</u>:

| | | |
|---|---|---|
| 1. | Winn-Dixie _____, Inc.<br>(Seller's Proceeds and Reimbursement of Inventory Service Fee) | $_____ |

TOTAL DISBURSEMENTS:                                                          $_____
BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT
PURSUANT TO PURCHASE AGREEMENT:
                                                                             $_____

Exhibit C-2
Page 3 of 3

**EXHIBIT D**
**To Asset Purchase Agreement**

Schedule of Certain Excluded Personal Property

[see attached schedules]

**Project Jaguar**
**Leased Equipment List**

Source: Jaguar internal accounting records.  Prepared by management.

Privileged and Confidential

| Store | Vendor | Model | Type | Description | Qty | Item | Date | Code | Number | Price | Mo | End Date | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0126 | IBM | 8477 | 42Y | NETFINITY | 1 | M0613 | 6/15/2001 | CLC | 29285 | $36.60 | 48 | 7/31/2005 | POS |
| 0126 | IBM | 8477 | 42Y | NETFINITY | 1 | M1400 | 6/15/2001 | CLC | 29285 | $36.60 | 48 | 7/31/2005 | POS |
| 0126 | IBM | 6331 | B2N | IBM BLACI | 1 | XDLB5 | 6/15/2001 | CLC | 29285 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| 0126 | IBM | 6331 | B2N | IBM BLACI | 1 | XDLF2 | 6/15/2001 | CLC | 29285 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| 0126 | IBM | 4694 | S45 | 4694 S45 | 0 | VKN03 | 7/17/2001 | CLC | 29863 | $57.62 | 48 | 7/31/2005 | POS |
| 0126 | IBM | 4694 | S45 | 4694 S45 | 0 | VKL01 | 7/17/2001 | CLC | 29863 | $57.58 | 48 | 7/31/2005 | POS |
| 0126 | IBM | 4694 | S45 | 4694 S45 | 1 | VMK49 | 7/17/2001 | CLC | 29863 | $57.58 | 48 | 7/31/2005 | POS |
| 0126 | IBM | 4694 | S45 | 4694 S45 | 1 | VPL88 | 7/17/2001 | CLC | 29863 | $57.58 | 48 | 7/31/2005 | POS |
| 0126 | IBM | 4694 | S45 | 4694 S45 | 1 | VPM06 | 7/17/2001 | CLC | 29863 | $57.58 | 48 | 7/31/2005 | POS |
| 0126 | IBM | 4694 | S45 | 4694 S45 | 1 | VPM10 | 7/17/2001 | CLC | 29863 | $57.58 | 48 | 7/31/2005 | POS |
| 0126 | IBM | 4694 | S45 | 4694 S45 | 1 | VPP92 | 7/17/2001 | CLC | 29863 | $57.58 | 48 | 7/31/2005 | POS |
| 0126 | IBM | 4610 | TS4 | THERMAL | 1 | AGT99 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 4610 | TS4 | THERMAL | 1 | AGV55 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 4610 | TS4 | THERMAL | 1 | AGV62 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 4610 | TS4 | THERMAL | 1 | AGV65 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 4610 | TS4 | THERMAL | 1 | AGV67 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 4610 | TS4 | THERMAL | 1 | AGV76 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 4610 | TS4 | THERMAL | 1 | AGV77 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 4610 | TS4 | THERMAL | 1 | AGV78 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 4610 | TS4 | THERMAL | 1 | AGX20 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 4694 | S45 | POS REGI | 1 | VPM25 | 7/1/2001 | ICC | 22986 | $51.00 | 48 | 6/30/2005 | POS |
| 0126 | IBM | 6331 | M2N | WHITER N | 1 | CRB87 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0126 | IBM | 6331 | M2N | WHITER N | 1 | CRB89 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0126 | IBM | 6331 | M2N | WHITER N | 1 | CRB91 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0126 | IBM | 6331 | M2N | WHITER N | 1 | CRB94 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0126 | IBM | 6331 | M2N | WHITER N | 1 | CRF13 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0126 | IBM | 6331 | M2N | WHITER N | 1 | CRF15 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0126 | IBM | SAV2 | SFTW | IBM SAV2 | 1 | | 7/1/2001 | ICC | 22991 | $99.96 | 48 | 6/30/2005 | Software |
| 0126 | IBM | SAV2 | SVCS | SAV2 SER | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 0126 | DCC | 2500 | P3 | POWEREI | 1 | X8W11 | 6/17/2002 | CLC | 32359 | $181.37 | 36 | 6/30/2005 | Servers |
| 0126 | DCC | PV715N | 1U | DELL NAS | 1 | 4ZRB11 | 6/17/2002 | CLC | 32359 | $68.44 | 36 | 6/30/2005 | Servers |
| 0126 | DCC | E551 | 15MO | DELL E55 | 1 | | 6/17/2002 | CLC | 32359 | $0.00 | 36 | 6/30/2005 | Personal Computers |

# EXHIBIT E

**[intentionally omitted]**

EXHIBIT F
To Asset Purchase Agreement

Permitted Encumbrances

1.    Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2005 and subsequent years.

2.    All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.    Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.    Rights of Landlord under the Lease, including the rights of any Landlord's mortgagee.

5.    Rights of Subtenant under the Sublease.

6.    All matters set forth as exceptions in the Initial Title Reports or the site plans, other than Monetary Liens.

7.    All other matters set forth as exceptions in those Title Reports other than the Initial Title Reports, other than Monetary Liens.  **[Note to Buyer:   See paragraph 4.2 of the Asset Purchase Agreement for the limited right of Buyer to object to such matters.]**

8.    All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

EXHIBIT G
To Asset Purchase Agreement

Form of
Lease Assignment

## ASSIGNMENT AND ASSUMPTION OF LEASE
[Store #_____, _____, _____]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 200___ (the "Effective Date"), by and between **WINN-DIXIE** _____, **INC.** a Florida corporation (hereinafter referred to as "Assignor"), and _____, a _____ (hereinafter referred to as "Assignee");

### R E C I T A L S :

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached Exhibit A (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective _____, 2005 by and among Assignor, as seller, Assignee, as buyer, as amended from time to time (the "Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on the attached Exhibit A (the "Lease"), and all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, together with all amendments thereto, described on Exhibit A (collectively, whether one or more, the "Sublease"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Sublease after the Effective Date, all subject to and in accordance with the terms of the Lease, the Sublease, the Agreement and this Assignment;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **EFFECTIVE DATE**.  This Assignment shall be effective as of the Effective Date.

2.    **ASSIGNMENT**.

   (a)    Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

(b)    Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to the Sublease and all the rights, benefits and privileges of the landlord or lessor thereunder.

3.    **ASSUMPTION; ACCEPTANCE OF PREMISES**.

(a)    Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b)    Assignee hereby accepts the aforesaid assignment of the Sublease and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Sublease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Sublease on or after the Effective Date.

(c)    Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate.  Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations.    Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor.  Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4.    **NOTICES**.  All notices, requests, demands, and other communications required

EXHIBIT G
Page 2 of 8