Store Number # 2090

## <u>LIST OF EXHIBITS</u>

Exhibit A-1    -    Description of Store
Exhibit A-2    -    Description of Lease and Leased Premises
Exhibit B      -    Form of Bill of Sale
Exhibit C-1    -    Form of Closing Statement
Exhibit C-2    -    Form of Inventory Closing Statement
Exhibit D      -    Schedule of Certain Excluded Personal Property
Exhibit E      -    Base Purchase Price Allocation; Deposits
Exhibit F      -    Permitted Encumbrances
Exhibit G      -    Form of Conveyance Instrument
Exhibit H      -    Form of Inventory Certificate

EXHIBIT A-1
To Asset Purchase Agreement

<u>Description of Store</u>

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 2090 | 2575 Highway 105 | Boone | Watauga | North Carolina |

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES, SUBLEASES AND LEASED PREMISES

WINN-DIXIE STORE # 2090
Boone, North Carolina


Lease:           Lease dated October 1, 1991 between Aston-Fidler Limited Partnership, as
                 Landlord, and Winn-Dixie Charlotte, Inc., as Tenant, including Exhibits A and B
                 and Short Form of Lease/Memo of Lease.

                 As evidenced by Short Form Lease dated October 1, 1991, recorded in Book 196,
                 Page 128, of the public records of Watauga County, North Carolina.

Amendments:

Supplemental Lease Agreement dated July 24, 1993 between Aston-Fidler Limited Partnership,
as Landlord, and Winn-Dixie Charlotte, Inc., as Tenant.

Premises:        That certain store building and related improvements located at 2575 Highway
                 105, Boone, North Carolina, Watauga County.

Legal Description:    The Shopping Center in which the Premises is located is more particularly
described as follows:

       SEE ATTACHED LEGAL DESCRIPTION

Sublease(s):

       None

Amendments to Sublease(s):

       None

LEGAL DESCRIPTION OF SHOPPING CENTER

BEING THAT CERTAIN PARCEL OF LAND LYING IN NEW RIVER TOWNSHIP,
WATAUGA COUNTY, NORTH CAROLINA, BOUNDED ON THE NORTH BY THE
100 FOOT RIGHT-OF-WAY OF NORTH CAROLINA HIGHWAY 105, ON THE
EAST BY WINKLER AND ABDIN, ON THE SOUTH BY DAVIS, ON THE WEST
BY DAVIS AND COOK, AND MORE ACCURATELY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT, SAID POINT BEING A NEW IRON PIPE SET IN
THE SOUTHERN RIGHT-OF-WAY LINE OF SAID NORTH CAROLINA HIGHWAY 105,
SAID NEW IRON PIPE BEING LOCATED SOUTH 56-27-16 EAST A DISTANCE
OF 114.72 FEET FROM AN EXISTING IRON PIPE (3/4 INCH CONDUIT)
MARKING THE NORTHWEST CORNER OF THE KENNETH WAYNE COOK PROPERTY
(DEED BOOK 170 PAGE 872) AT THE SAID SOUTHERN RIGHT-OF-WAY OF
SAID NORTH CAROLINA HIGHWAY 105; THENCE WITH SAID SOUTHERN RIGHT-
OF-WAY LINE FOLLOWING CALLS AND DISTANCES: SOUTH 56-56-26 EAST
FOR 320.76 FEET TO A NEW IRON PIPE, SOUTH 60-10-52 EAST FOR
108.76 FEET TO A NEW IRON PIPE, SOUTH 61-23-00 EAST FOR 130.00
FEET TO A NEW IRON PIPE, SOUTH 64-44-08 EAST FOR 138.51 FEET TO
A NEW IRON PIPE, SOUTH 66-10-01 EAST FOR 68.16 FEET TO A NEW
IRON PIPE, SOUTH 66-10-04 EAST FOR 25.00 FEET TO A NEW IRON
PIPE (SAID NEW IRON PIPE BEING LOCATED NORTH 66-39-00 WEST A
DISTANCE OF 149.77 FEET FROM AN EXISTING IRON PIPE MARKING THE
NORTHEAST CORNER FOR WINKLER AT THE SAID SOUTHERN RIGHT-OF-WAY
OF NORTH CAROLINA HIGHWAY 105); THENCE WITH WINKLER'S WESTERN
LINE SOUTH 21-36-16 WEST FOR A DISTANCE OF 137.06 FEET TO A
NEW IRON PIPE AND CORNER WITH WINKLER, THENCE WITH THE SOUTHERN
LINE OF WINKLER SOUTH 68-36-20 EAST A DISTANCE OF 49.06 FEET TO
A COMPUTED POINT IN A CREEK (SAID POINT BEING LOCATED NORTH 68-
36-20 WEST A DISTANCE OF 99.57 FEET FROM AN EXISTING IRON PIPE
AND SOUTHEASTERN CORNER OF THE WINKLER PROPERTY) AND CORNER WITH
ABDIN (DEED BOOK 105 PAGE 714, PLAT BOOK 11 PAGE 10); THENCE
WITH THE WESTERN LINE OF ABDIN SOUTH 22-03-00 WEST FOR A DISTANCE
OF 15.00 FEET TO AN EXISTING IRON PIPE AND REFERENCE FOR SAID
COMPUTED POINT, THENCE CONTINUING WITH THE LINE OF ABDIN SOUTH
22-03-00 WEST FOR A DISTANCE OF 148.93 FEET TO AN EXISTING IRON
PIPE (3/4 INCH GALVANIZED), THENCE WITH THE LINE OF ABDIN SOUTH
22-00-30 WEST A DISTANCE OF 82.09 FEET TO AN EXISTING IRON PIPE
(3/4 GALVANIZED) AND CORNER WITH ABDIN; THENCE WITH THE NORTHERN
LINE OF DAVIS (DEED BOOK 30 PAGE 459) NORTH 80-04-54 WEST FOR
A DISTANCE OF 73.72 FEET TO AN EXISTING IRON PIPE (1/2 INCH
CONDUIT) AT A FENCE CORNER, SAID IRON PIPE BEING SOUTHEAST OF
A 24 INCH HEMLOCK WITH A LARGE "X" ON THE SOUTHEAST SIDE; THENCE
NORTH 69-03-59 WEST FOR A DISTANCE OF 68.04 FEET TO AN EXISTING
IRON PIPE (1/2 INCH REBAR AT THE INTERSECTION OF A FENCE LINE
AND A CREEK), THENCE NORTH 68-56-00 WEST FOR A DISTANCE OF 245.36
FEET TO AN EXISTING IRON PIPE (1/2 INCH CONDUIT AT A 24 INCH
CUCUMBER TREE AND FENCE CORNER), THENCE WITH A NEW LINE FOR DAVIS
NORTH 68-56-00 WEST FOR A DISTANCE OF 108.09 FEET TO A NEW IRON
PIPE, THENCE NORTH 11-18-48 WEST A DISTANCE OF 36.10 FEET TO A
NEW IRON PIPE, THENCE NORTH 14-59-01 WEST FOR A DISTANCE OF 20.57
FEET TO A NEW IRON PIPE, THENCE NORTH 12-50-07 WEST FOR A DISTANCE
OF 32.61 FEET TO A NEW IRON PIPE, THENCE NORTH 14-28-00 WEST FOR
A DISTANCE OF 99.15 FEET TO A NEW IRON PIPE, THENCE NORTH 27-35-
14 WEST FOR A DISTANCE OF 38.55 FEET TO A NEW IRON PIPE, THENCE
NORTH 30-44-39 WEST FOR A DISTANCE OF 107.38 FEET TO A NEW IRON
PIPE, THENCE NORTH 31-21-36 WEST FOR A DISTANCE OF 76.14 FEET TO
A NEW IRON PIPE, THENCE NORTH 33-33-37 WEST FOR A DISTANCE OF
56.32 FEET TO A NEW IRON PIPE,  THENCE NORTH 38-29-30 WEST FOR A
DISTANCE OF 29.33 FEET TO A NEW IRON PIPE AND CORNER WITH DAVIS,
THENCE NORTH 28-01-54 EAST FOR A DISTANCE OF 39.59 FEET TO A NEW
IRON PIPE, THENCE NORTH 28-01-54 EAST FOR A DISTANCE OF 24.80
FEET TO AN EXISTING IRON PIPE AND SOUTHEAST CORNER OF THE COOK
PROPERTY (DEED BOOK 170 PAGE 872), THENCE WITH THE EASTERN LINE
OF COOK NORTH 28-01-54 EAST FOR  A DISTANCE OF 108.92 FEET TO
THE POINT AND PLACE OF BEGINNING, CONTAINING 6.775 ACRES +/-,
ACCORDING TO A SURVEY BY MUNICIPAL ENGINEERING SERVICES COMPANY,
P.A., ENTITLED "SURVEY FOR MOUNTAIN PLAZA PARTNERSHIP," DATED
DECEMBER 18, 1989.

EXHIBIT B
To Asset Purchase Agreement

Form of

**BILL OF SALE**

**WINN-DIXIE _____, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 200___, among _____, a _____, ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Lease and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 200___.

"SELLER"

**WINN-DIXIE _____, INC.,** a Florida corporation

By: _____

Name: _____

Title: _____

<u>EXHIBIT C-1</u>
To
**Asset Purchase Agreement**

**<u>INDIVIDUAL STORE CLOSING STATEMENT</u>**

**BUYER:** _____, a _____

**SELLER:** Winn-Dixie _____, Inc., a Florida corporation

**ESCROW AGENT and
SETTLEMENT AGENT:** _____

**Property:** Store No. _____

**CLOSING DATE:** _____, 2005

**<u>SELLER'S STATEMENT</u>**

**BASE PURCHASE PRICE:**

Leasehold: $_____

FF&E: $_____

BASE PURCHASE PRICE: $_____

**SUPPLIES PRICE:** $_____

**TOTAL  BASE PURCHASE PRICE AND
SUPPLIES PRICE:**
$_____

**<u>Less Adjustments (Debit):</u>**

Seller's Prorated Share of Taxes and          $_____
Other Charges Payable Under Lease (1)

Buyer's Prorated Share of Rents Paid in        $_____
Advance **[Under Sublease (2)]**

**Total Debit Adjustments:**              $_____

**<u>Plus Adjustments (Credit):</u>**                        $_____

Exhibit C-1
Page 1 of 10

Seller's Prorated Share of Rents and
Other Charges Paid in Advance Under
Lease (3)                                                         $_____

Environmental Assessment Costs Paid by                            $_____
Seller

[Other]                                                           $_____

  **Total Credit Adjustments:**                                   $_____

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs              $_____

Seller's Brokerage Fees                       $_____

Cure Costs                                    $_____

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER**                                          $_____


### BUYER'S STATEMENT

**ALLOCATED BASE PURCHASE**                   $_____
**PRICE:**

**SUPPLIES PRICE:**                           $_____

**TOTAL BASE PURCHASE PRICE AND**
**SUPPLIES PRICE:**
                                                                  $_____

**Less Adjustments (Credit):**

Allocated Amount of Base Deposit                                  $_____

Seller's Prorated Share of Rents and                             $_____
Other Charges Paid in Advance Under
Lease (1)

[Other]                                                           $_____

**Total Debit Adjustments:**

Exhibit C-1
Page 2 of 8

**Plus Adjustments (Debit):**                                                          $_____

Seller's Prorated Share of Rents and                      $_____
Other Charges Paid in Advance Under
Lease (3)

Environmental Assessment Costs Paid by        $_____
Seller

[Other]                                                               $_____

  **Total Credit Adjustments:**                                                   $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs                            $_____

Title Insurance Premiums(4)                                  $_____

Title Examination Fees                                          $_____

Transfer/Documentary Taxes                                $_____

Buyer's Brokerage Fees                                       $_____

Closing Escrow Fees                                           $_____

Inventory Service Fees(8)                                     $_____

**Total Buyer's Closing Costs:**                           $_____

**AMOUNT DUE FROM BUYER**                                                     $_____

**ALLOCATED AMOUNT OF BASE**                                                $_____
**DEPOSIT**

**TOTAL AMOUNT DUE AT CLOSING**                                          $_____


## SCHEDULE OF DISBURSEMENTS

1.      Allocated Amount of Base Deposit from Escrow Agent         $_____
2.      Amount Due From Buyer                                                      $_____
**TOTAL RECEIPTS:**                                                                     $_____

1.      The Blackstone Group L.P.                                                 ($_____)
         (Seller's Brokers Fees)
2.      The Food Partners, LLC                                                     ($_____)

Exhibit C-1
Page 3 of 8

|  |  |  |
|---|---|---|
|  | (Seller's Brokers Fees) |  |
| 3. | DJM Asset Management, LLC | ($_____) |
|  | (Seller's Brokers Fees) |  |
| 4. | _____ Title Insurance Company | ($_____) |
|  | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees |  |
| 5. | _____ |  |
|  | Transfer/Documentary Taxes |  |
| 6. | **[Name of Inventory Service]** | ($_____) |
|  | (Inventory Service Fees) |  |
| 7. | _____ | ($_____) |
|  | (Lease Cure Costs, if any) |  |
| 8. | _____ | ($_____) |
|  | (Sublease Cure Costs, if any) |  |
| 9. | Seller | ($_____) |
|  | (Seller's Proceeds) |  |
| [10.] | [Other] | ($_____) |

**TOTAL DISBURSEMENTS:**


**Notes:**

(1)  2005 Prorations - Amounts Not Yet Paid and Payable.  Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease.  Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store #_____

| | | |
|---|---|---|
| - 2005 Real Estate Taxes | $ | |
| - Per Diem Tax Amount | $ | |
| - Seller's Share of 2005 Taxes (1/1/05 - __/__/05) (_____ days) | $_____ | _____ |

**Total Real Estate Taxes:**


**Personal Property Taxes**

Store #_____

| | | |
|---|---|---|
| - 2005 Personal Property Taxes | $ | |
| - Per Diem Tax Amount | $ | |
| - Seller's Share of 2005 Taxes (1/1/05 - __/__/05) (_____ days) | $_____ | _____ |

**Total Personal Property Taxes:**

Exhibit C-1
Page 4 of 8

**CAM Charges**

Store # _____

| | |
|---|---|
| - 2005 CAM Charges | $ |
| - Per Diem Amount | $ |
| - Seller's Share of 2005 CAM Charges | |
| (__/__/__ - __/__/05) (_____ days) | $ _____ _____ |

**Total CAM Charges:**

**Insurance**

Store # _____

| | |
|---|---|
| - 2005 Insurance | $ |
| - Per Diem Amount | $ |
| - Seller's Share of 2005 Insurance | |
| (__/__/__ - __/__/05) (_____ days) | $ _____ |

**Total Insurance:**
**Total Amount of Seller's Prorated**
**Share  of 2005 Prorations:**                                                _____

(2)         _____, 2005 Sublease Prorations - Amounts Previously Received by Seller. Prorations are based on _____, 2005 rents previously paid to Seller in accordance with Sublease.  Buyer will be responsible for the collection of such charges that become due and payable for _____, 2005 and thereafter.  Prorations are as follows:

Store # _____

| | |
|---|---|
| - Total _____, 2005 rent paid: | $ |
| - Per diem rent: | $ |
| - Buyer's prorated share | |
| (__/__/__ - __/__/05) (_____ days) | $ _____ |

**Total Amount of Seller's Prorated Share of _____ Prorations:**

(3)         _____, 2005 Prorations - Amounts Previously Paid by Seller.  Prorations are based on _____, 2005 rents, common area maintenance assessments and other charges previously paid by Seller in accordance with applicable Lease.  Buyer will be responsible for the payment of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

**Rent**

Store # _____

| | |
|---|---|
| - Total _____, 2005 rent paid: | $ |
| - Per diem rent: | $ |
| - Buyer's prorated share | |
| (__/__/__ - __/__/05) (_____ days) | $ _____ |

Exhibit C-1
Page 5 of 8

- Per diem rent:                                        $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)                  $_____    _____

**Total Amount of Buyer's Prorated Share of _____ Prorations:**


(4)     <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title
        examination fees and title insurance premiums, are as follows:

        Store #_____
        - Title Search Fees and Costs              $              -
        - Title Premium                            $              -
          **Total Amount of Title Fees and Expenses:**


(5)     <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller
        directly by the respective utility companies.  Seller will be responsible for
        payment of any portion of any utility charges attributable to utility service
        (including telephone service) provided through and including the date hereof.
        Buyer will be responsible for payment of any new utility deposits which may be
        assessed by the respective utility companies and for payment of any portion of
        such utility charges attributable to utility service provided subsequent to the
        date hereof.  The party responsible for each share of such utility charges will
        pay such charges promptly and without demand therefor.  Each party agrees
        to indemnify and hold harmless the other party from and against liability for
        payment of the first party's share of such utility charges.


(6)     <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not
        determinable as of the Closing Date or reflected on this Closing Statement will
        be taken into account at the Closing based on good faith estimates with the
        actual amount to be calculated by Seller and Buyer as soon as practicable
        after the actual amounts are determinable with an appropriate adjustment to
        be paid by the appropriate party promptly after determination.  Seller and
        Buyer also acknowledge and agree to execute any documents necessary to
        correct any errors or omissions in the Closing Statement with an appropriate
        adjustment to be paid by the appropriate party promptly after determination.
        Buyer agrees that it will timely make all required notifications to appropriate
        taxing authorities to effect the change in party responsible for taxes.

(7)     <u>Inventory Purchase Price and Adjustments</u>.  To the extent Inventory has
        acquired inventory pursuant to the Purchase Agreement, the Inventory Price
        has been determined in good faith by the parties in accordance with the
        provisions set forth in the Purchase Agreement and is set forth in a separate
        Inventory Closing Statement between Seller and Buyer dated as of even date
        herewith.  Seller and Buyer acknowledge and agree that if any dispute should
        arise as to the Inventory Price with respect to any item or items of Inventory,
        Seller and Buyer will resolve the dispute in accordance with the terms and
        provisions of the Purchase Agreement.


Exhibit C-1
Page 6 of 8

(8)    Inventory Service Fees. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices. Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)    Capitalized Terms. Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

## STIPULATIONS

1.  Purchase Agreement. This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").

2.  Authorization to Disburse. By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____
_____
_____
_____

3.  Counterparts. This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4.  Adjustments. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

Exhibit C-1
Page 7 of 8

The undersigned parties acknowledge and agree to the this Closing Statement as of th s \_\_\_\_\_ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                         **BUYER:**

**WINN-DIXIE** _____,          _____,
a Florida corporation                              a _____

By: _____         By: _____

Name: _____        Name: _____

Title: Vice President                              Title: _____

Exhibit C-1
Page 8 of 8

Exhibit C-2

To Asset Purchase Agreement

Form of Inventory Closing Statement

**INVENTORY CLOSING STATEMENT**

**SELLER**                    Winn-Dixie _____, Inc., a Florida corporation

**BUYER:**                    _____ a _____

**TRANSACTION:**          Acquisition of Leasehold Interest in Store _____

**BASE PURCHASE PRICE:**   Under Separate Closing Statement

**INVENTORY PRICE (2):**

$_____

_____

**CLOSING DATE:** _____ _____, 2005

**SELLER'S STATEMENT**

| | | |
|---|---|---|
| **Inventory Price** | | $ |
| **Less Adjustments:** | | |
| 1.  Ten Percent of Inventory Price | | |
| Retained by Escrow Agent | $ _____ | |
| **Total Adjustments:** | $ | $   ( _____ ) |
| **TOTAL AMOUNT DUE TO SELLER:** | | $ |

**BUYER'S STATEMENT**

| | | |
|---|---|---|
| **Inventory Price** | | $ |
| **Plus Closing Costs to be Paid by Buyer:** | | |
| 1.  Inventory Service Fees (3) | _____ $ | |

Exhibit C-2
Page 1 of 3

(Direct Payment or Reimbursement
to Seller)
**Total Buyer's Inventory Closing
Costs:**                          $              $_____

**AMOUNT DUE FROM BUYER:**                                $_____

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this day of July, 2004, and hereby authorize **[Title Insurer]**, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                  **BUYER:**

**WINN-DIXIE**      , **INC.**, a Florida        _____., a _____
corporation

By:_____
Name:_____            By:_____
Title: _____ President        Name:_____
                                       Title: _____

**Notes:**

(1)     Adjustments.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(2)     Inventory Price Adjustments.  The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement.  Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement.  The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period.  To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

Exhibit C-2
Page 2 of 3

(3)    <u>Inventory Service Fees</u>. The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same. Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4)    <u>Capitalized Terms</u>. Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

<u>RECEIPTS</u>:

1.    Total Amount Due From Buyer    $ _____

TOTAL CASH RECEIVED:    $    $ _____

<u>DISBURSEMENTS</u>:

1.    Winn-Dixie _____, Inc.    $ _____
(Seller's Proceeds and Reimbursement of Inventory Service Fee)

TOTAL DISBURSEMENTS:    $ _____
BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT
PURSUANT TO PURCHASE AGREEMENT:    $

Exhibit C-2
Page 3 of 3

EXHIBIT D
To Asset Purchase Agreement

<u>Schedule of Certain Excluded Personal Property</u>

See Attached.

EXHIBIT E

[intentionally omitted]

EXHIBIT F
To Asset Purchase Agreement

Permitted Encumbrances

1.    Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2005 and subsequent years.

2.    All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.    Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.    Rights of Landlord under the Lease, including the rights of any Landlord's mortgagee.

5.    Rights of Subtenant under the Sublease.

6.    All matters set forth as exceptions in the Initial Title Reports or the site plans, other than Monetary Liens.

7.    All other matters set forth as exceptions in those Title Reports other than the Initial Title Reports, other than Monetary Liens.    **[Note to Buyer:  See paragraph 4.2 of the Asset Purchase Agreement for the limited right of Buyer to object to such matters.]**

8.    All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

EXHIBIT G
To Asset Purchase Agreement

Form of
Lease Assignment

**ASSIGNMENT AND ASSUMPTION OF LEASE**
[Store #_____, _____, _____]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 200___ (the "Effective Date"), by and between **WINN-DIXIE** _____, **INC.** a Florida corporation (hereinafter referred to as "Assignor"), and _____, a _____ (hereinafter referred to as "Assignee");

**R E C I T A L S :**

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached Exhibit A (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective _____, 2005 by and among Assignor, as seller, Assignee, as buyer, as amended from time to time (the "Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on the attached Exhibit A (the "Lease"), and all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, together with all amendments thereto, described on Exhibit A (collectively, whether one or more, the "Sublease"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Sublease after the Effective Date, all subject to and in accordance with the terms of the Lease, the Sublease, the Agreement and this Assignment;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **EFFECTIVE DATE**.  This Assignment shall be effective as of the Effective Date.

2.    **ASSIGNMENT**.

(a)    Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

(b)    Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to the Sublease and all the rights, benefits and privileges of the landlord or lessor thereunder.

3.    **ASSUMPTION; ACCEPTANCE OF PREMISES**.

(a)    Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b)    Assignee hereby accepts the aforesaid assignment of the Sublease and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Sublease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Sublease on or after the Effective Date.

(c)    Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate.  Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations.   Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor.  Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4.    **NOTICES**.  All notices, requests, demands, and other communications required

or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

> If to Assignor:      Winn-Dixie _____, Inc.; Re: Store #_____
> 5050 Edgewood Court
> Jacksonville, FL 32254-3699
> Attn: Chief Financial Officer
> Telefax No.: 904/783-5646
>
> With a copy to:      Winn-Dixie Stores, Inc.
> 5050 Edgewood Court
> Jacksonville, FL 32254-3699
> Attn: Office of General Counsel
> Telefax No.: 904/783-5641

or to such other address or telefax number as Assignor may direct from time to time.

> If to Assignee:      _____
> _____
> _____
> _____
> Telefax No.: _____

or to such other address or Telefax number as Assignee may direct from time to time.

5.   **NOTICE OF ASSIGNMENT**.  On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Assignment.

6.   **BINDING EFFECT**.  This Assignment shall be binding upon and inure to the

benefit of Assignor and Assignee, and their respective successors and assigns.

7.  **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

8.  **NO BROKERS**.  The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B.  Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment.    Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises.  Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

9.  **WAIVER OF JURY TRIAL**.  Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Sublease makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease or the Sublease undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Sublease.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE _____, INC.,** a
Florida corporation

By:_____

_____
Name:_____

Name: _____

EXHIBIT G
Page 4 of 8

Title: Vice President

Name:_____

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

_____, a
_____
By:_____
Name:_____
Title:_____

[SEAL]

_____
Name:_____

_____
Name:_____

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

Exhibit A

<u>Description of Premises and Lease</u>

<u>STORE #</u>:

<u>STREET ADDRESS</u>:

<u>SHOPPING CENTER</u>:

<u>LEASE</u>:

<u>AMENDMENTS TO LEASE</u>:

<u>SUBLEASE(S)</u>:

<u>AMENDMENTS TO SUBLEASE(S)</u>:

Exhibit B

<u>Schedule of Brokers</u>

<u>EXHIBIT B-1</u>

<u>ASSIGNOR'S BROKERS</u>:

      The Blackstone Group L.P.
      345 Park Avenue
      New York, New York  10154

      The Food Partners, LLC
      1250 Eye Street, N.W.
      Suite 850
      Washington, D.C.  20005

      DJM Asset Management, LLC
      445 Broad Hollow Road
      Suite 417
      Melville, New York  11747

<u>EXHIBIT B-2</u>

<u>ASSIGNEE'S BROKERS</u>:

EXHIBIT H
to Asset Purchase Agreement

Form of Inventory Certificate

**INVENTORY CERTIFICATE**

| Store #: _____ | Date: _____/_____/ |
| Store Address: | Time: _____ : _____ AM  PM |

|  | Inventory Taken<br>@ Retail | Valuation<br>Percentage | Inventory<br>@ Cost |
|---|---|---|---|
| Dry Grocery Taken @ Retail | $ | X  77.00% | $ |
| Frozen Grocery Taken @ Retail | $ | X  65.00% | $ |
| Dairy Taken @ Retail | $ | x  80.00% | $ |
| Tobacco Taken @ Retail | $ | x  82.00% | $ |
| Alcohol Taken @ Retail | $ | x  85.00% | $ |
| Packaged Lunch Meats Taken @ Retail | $ | x  68.00% | $ |
| Pharmaceutical Taken @ Cost |  |  | $ |
| Gasoline Taken @ Cost |  |  | $ |
|  | $ | x _____% | $ |
|  | $ | x _____% | $ |
|  | $ | x _____% | $ |
| Total Inventory |  |  | $ |

_____  ____/____/____
Seller's Authorized Agent                Date

_____  ____/____/____
Buyer's Authorized Agent                Date