<u>LIST OF EXHIBITS</u>

Exhibit A-1    -    List of Stores
Exhibit A-2    -    Description of Leases and Leased Premises
Exhibit B      -    Form of Bill of Sale
Exhibit C-1    -    Form of Closing Statement
Exhibit C-2    -    Intentionally Omitted
Exhibit D      -    Schedule of Certain Excluded Personal Property
Exhibit E      -    Allocation Schedule
Exhibit F      -    Permitted Encumbrances
Exhibit G      -    Form of Conveyance Instrument
Exhibit H      -    Intentionally Omitted

Store Numbers.
603
2724
2726

## LIST OF EXHIBITS

| Exhibit A-1 | - | List of Stores |
| Exhibit A-2 | - | Description of Leases and Leased Premises |
| Exhibit B | - | Form of Bill of Sale |
| Exhibit C-1 | - | Form of Closing Statement |
| Exhibit D | - | Schedule of Certain Excluded Personal Property |
| Exhibit E | - | Base Purchase Price Allocation; Deposits |
| Exhibit F | - | Permitted Encumbrances |
| Exhibit G | - | Form of Conveyance Instrument |

EXHIBIT A-1
To Asset Purchase Agreement

List of Stores

| Store No. | Street Address | City | County | State |
|-----------|----------------|------|--------|-------|
| #603 | 2514 McMullen Booth | Clearwater | Pinellas | Florida |
| #2724 | 1591 Ga. Hwy. 20 North | Conyers | Rockdale | Georgia |
| #2726 | 2020 Howell Mill Road | Atlanta | Fulton | Georgia |

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES AND RELATED LAND</u>

## WINN-DIXIE STORE # **603**
Clearwater, Florida

Lease:          Amended and Restated Lease dated July 9, 1998 between John Hancock
Mutual, as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

as evidenced by Short Form Lease dated July 9, 1998, recorded in Book 10204,
Page 298, of the public records of Pinellas County, Florida

Amendments/
Guaranty:     Supplemental Lease Agreement dated March 25, 1999

Premises:       That certain store building and related improvements located at 2514
McMullen Booth, Clearwater, Pinellas County, Florida

Legal Description:   The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

EXHIBIT "B"
LEGAL DESCRIPTION

# *O V E R A L L        D E S C R I P T I O N*

COMMENCE AT THE SOUTHWEST CORNER OF SECTION 28, TOWNSHIP 28 SOUTH, RANGE 16 EAST, PINELLAS COUNTY, FLORIDA AND GO S.89°30'48"E. 378.82 FEET ALONG THE CENTERLINE OF COUNTY ROAD NO. 102; THENCE N.00°13'00"E. 50.00 FEET TO THE POINT OF BEGINNING; THENCE N.00°13'05"E. 513.88 FEET; THENCE S.89°30'48"E. 118.00 FEET; THENCE N.45°28'02"E. 303.95 FEET; THENCE N.00°13'05"E. 235.00 FEET TO THE SOUTH RIGHT-OF-WAY OF EASTLAND BLVD.; THENCE S.89°30'48"E. 370.00 FEET ALONG AFORESAID SOUTH RIGHT-OF-WAY OF EASTLAND BLVD.; THENCE S.00°13'05"W. 200.00 FEET; THENCE S.89°30'48"E. 200.00 FEET TO THE WEST RIGHT-OF-WAY OF STATE ROAD NO. 593 (McMULLEN BOOTH ROAD); THENCE S.00°13'05"W. 563.88 FEET ALONG AFORESAID WEST RIGHT-OF-WAY OF STATE ROAD NO. 593 (McMULLEN BOOTH ROAD); THENCE N.89°30'48"W. 300.00 FEET; THENCE S.00°13'05"W. 200.00 FEET TO THE NORTH RIGHT-OF-WAY OF COUNTY ROAD NO. 102; THENCE N.89°30'48"W. 603.86 FEET ALONG AFORESAID NORTH RIGHT-OF-WAY OF COUNTY ROAD NO. 102 TO THE POINT OF BEGINNING.

LESS THE FOLLOWING:

A PORTION OF THE CERTAIN TRACT CONVEYED TO THE GRANTOR, AS DESCRIBED IN O.R. BOOK 6911, PAGE 1580, PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA, IN THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 28, TOWNSHIP 28 SOUTH, RANGE 16 EAST, PINELLAS COUNTY, FLORIDA, DESCRIBED AS FOLLOWS:

FROM THE SOUTHEAST CORNER OF THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SAID SECTION 28, RUN THENCE N.89°28'01"W. 50.00 FEET ALONG THE SOUTH BOUNDARY OF THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SAID SECTION 28; THENCE N.00°14'52"E. 250.00 FEET ALONG THE WEST RIGHT-OF-WAY LINE OF McMULLEN BOOTH ROAD AND A SOUTHERLY EXTENSION THEREOF TO THE POINT OF BEGINNING; THENCE N.89°28'01"W. 35.00 FEET ALONG THE SOUTH BOUNDARY OF SAID GRANTORS' TRACT; THENCE N.00°14'52"E. 563.87 FEET TO THE NORTH BOUNDARY OF SAID GRANTORS' TRACT; THENCE S.89°29'01"E. 35.00 ALONG SAID NORTH BOUNDARY; THENCE S.00°14'52W."., 563.88 FEET ALONG THE WEST RIGHT-OF-WAY LINE OF McMULLEN BOOTH ROAD TO THE POINT OF BEGINNING.

CONTAINING 22.51 NET ACRES, MORE OR LESS.

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

WINN-DIXIE STORE # **2724**
Conyers, Georgia


Lease:                  Lease dated October 29, 1997 between AFDC, LLC, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

                                as evidenced by Short Form Lease dated October 29, 1997, recorded in Book 1438, Page 212, of the public records of Rockdale County, Georgia

Amendments/
Guaranty:           Corporate Guaranty of Lease Obligations dated October 28, 1997

                                Supplemental Lease Agreement dated December 3, 1998

                                Assignment and Assumption of Lease Agreement dated February 17, 2002


Premises:           That certain store building and related improvements located at 1591 GA. Highway 20 North, Conyers, Rockdale County, Georgia

Legal Description:     The real property as more particularly described as follows:


SEE ATTACHED LEGAL DESCRIPTION



BOOK 1438 PAGE 214

EXHIBIT "B"

BOOK **1438** PAGE **215**

LEGAL DESCRIPTION
( Winn Dixie Tract)

All that tract or parcel or land lying in Land Lots 302, 317 and 318 of the 16th District of Rockdale County, Georgia and being more particularly described as follows:

To find the POINT OF BEGINNING, commence at an iron pin point at the intersection of the southerly right-of-way of Broad Street (50 foot wide right-of-way) and the easterly right-of-way of Georgia Route 20 (100 foot wide right-of-way) and run along the easterly right-of-way of Georgia Route 20 and along a curve to the right having a radius of 2341.94 feet and an arc length of 746.,58 feet, being subtended by a chord of South 25 degrees 16 minutes 25 seconds West for a distance of 743.42 feet to an iron pin;  Thence continuing along the easterly right-of-way of Georgia Route 20, run along a curve to the right having a radius of 2341.94 feet and an arc length of 4.87 feet, being subtended by a chord of South 34 degrees 27 minutes 56 seconds West for a distance of 4.87 feet to a point;  Thence continuing along the easterly right-of-way of Georgia Route 20, run South 34 degrees 31 minutes 31 seconds West for a distance of 31.13 feet to an iron rod;  Thence continuing along the easterly right-of-way of Georgia Route 20, run South 34 degrees 31 minutes 31 seconds West for a distance of 69.66 feet to the POINT OF BEGINNING; Thence from the POINT OF BEGINNING thus established and leaving the right-of-way of Georgia Route 20, run South 55 degrees 30 minutes 13 seconds East for a distance of 109.97 feet to a point;  Thence run South 66 degrees 18 minutes 05 seconds East for a distance of 366.48 feet to a point;  Thence South 66 degrees 18 minutes 05 seconds East for a distance of 201.64 feet to a point, on the centerline of a creek;  Thence along the centerline of a creek, run South 16 degrees 08 minutes 48 seconds West for a distance of 280.99 feet to a point;  Thence along the centerline of a creek, run South 08 degrees 04 minutes 51 seconds West for a distance of 135.40 feet to a point;  Thence along the centerline of a creek, run North 88 degrees 28 minutes 49 seconds West for a distance of 102.45 feet to a point;  Thence along the centerline of a creek, run South 21 degrees 35 minutes 45 seconds West for a distance of 88.65 feet to a point;  Thence along the centerline of a creek, run South 34 degrees 56 minutes 50 seconds West for a distance of 20.66 feet to a point;  Thence leaving the centerline of a creek, run North 66 degrees 18 minutes 05 seconds West for a distance of 122.62 feet to a point;  Thence run South 71 degrees 15 minutes 04 seconds West for a distance of 169.05 feet to a point;  Thence run North 65 degrees 58 minutes 29 seconds West for a distance of 64.63 feet to a point;  Thence run South 69 degrees 01 minutes 31 seconds West for a distance of 30.67 feet to a point;  Thence run South 24 degrees 01 minutes 31 seconds West for a distance of 55.20 feet to a point;  Thence run South 42 degrees 19 minutes 35 seconds East for a distance of 72.03 feet to a point;  Thence run South 23 degrees 08 minutes 04 seconds East for a distance of 52.49 feet to a point;  Thence run South 18 degrees 46 minutes 28 seconds West for a distance of 53.69 feet to a point;  Thence run South 05 degrees 32 minutes 19 seconds East for a distance of 37.05 feet to a point on northerly line of Sigman Road (Georgia Route 20);  Thence, along the northerly right-of-way of Sigman Road, run North 72 degrees 45 minutes 18 seconds West for a distance of 134.19 feet to a point;  Thence, along the northerly right-of-way of Sigman Road, run along a curve to the right having a radius of 2805.18 feet and an arc length of 80.52

EXHIBIT "B"
Page 1 of 2

BOOK **1438** PAGE **216**

feet, being subtended by a chord of North 71 degrees 55 minutes 58 seconds West for a distance of 80.51 feet to a point; Thence leaving the northerly right-of-way of Sigman Road, run North 34 degrees 09 minutes 28 seconds East for a distance of 151.42 feet to a point; Thence run North 55 degrees 29 minutes 54 seconds West for a distance of 149.57 feet to a point; Thence run North 24 degrees 01 minutes 31 seconds East for a distance of 250.16 feet to a point; Thence run North 65 degrees 58 minutes 29 seconds West for a distance of 213.25 feet to a point of the easterly right-of-way of Georgia Route 20 (100 feet wide right-of-way); Thence run North 34 degrees 31 minutes 31 seconds East for a distance of 522.54 feet to the POINT OF BEGINNING.

Said property containing 11.2707 acres and being more particularly shown on that certain Boundary Survey for Ackerman & Co., ADF Limited Liability Company and Chicago Title Insurance Company, dated October 10, 1997, and last revised October 16, 1997, prepared by Daniel S. Mahan of W.L. Jorden & Co., Inc., G.R.L.S. No. 2275.

Together with easements and rights under that certain Cross Easement Agreement between Landlord and ADFC II, LLC dated November __25__, 1997 to be recorded in Rockdale County, Georgia records.

EXHIBIT "B"
Page 2 of 2

2

2724
1591 GA. Highway 20 North
Conyers, Georgia

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

WINN-DIXIE STORE # 2726
Atlanta, Georgia

Lease:                  Lease dated February 16, 1978 between Branch Capital Partners, L.P., as
                        Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

                        as evidenced by Short Form Lease dated February 16, 1978, recorded in Book
                        7099, Page 313, of the public records of Fulton County, Georgia

Amendments/
Guaranty:               Guaranty dated March 2, 1978

                        First Amendment to Lease dated November 8, 1978, recorded in Book 7401,
                        Page 459, of the public records of Fulton County, Georgia

                        Supplemental Lease Agreement dated January 2, 1980

                        Blanket Transfer and Assignment dated January 3, 1980, recorded in Book
                        7451, Page 44, of the public records of Fulton County, Georgia

                        Letter Agreement dated February 18, 1980

                        Letter Agreement dated March 8, 1982

                        Second Amendment to Lease dated June 9, 1984

                        Assignment and Assumption of Lease Agreement dated February 24, 2002

Premises:               That certain store building and related improvements located at 2020
                        Howell Mill Road, Atlanta, Fulton County, Georgia

Legal Description:      The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

EXHIBIT A-2
Page 3 of 3

EXHIBIT A

ADDITIONAL PROPERTY

All that tract or parcel of land lying and being in Land Lot 153 of the 17th District, Fulton County, Georgia, as shown on that certain Plat of Survey prepared for Three Kings, Ltd. by Chester M. Smith (Georgia Registered Land Surveyor No. 1445) of Metro Engineering and Surveying Co., Inc., dated May 25, 1983, and last revised June 7, 1983, and being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, commence at a chiseled point in the sidewalk located at the intersection of the westerly right-of-way line of Howell Mill Road (a 50 foot right-of-way) and the northerly right-of-way line of Collier Road (a 50 foot right-of-way); thence running along said northerly right-of-way line north 88 degrees 44 minutes 39 seconds west a distance of 386.18 feet to a point; thence running along an arc of a curve to the right with a radius of 222.75 feet (said arc being subtended by a chord bearing north 68 degrees 00 minutes 40 seconds west a chord distance of 157.59 feet) an arc distance of 161.08 feet to a point; thence continuing along said northerly right-of-way line along an arc of a curve to the left with a radius of 274.98 feet (said arc being subtended by a chord bearing north 64 degrees 26 minutes 43 seconds west a chord distance of 114.89 feet) an arc distance of 115.74 feet to a point and THE TRUE POINT OF BEGINNING; from said TRUE POINT OF BEGINNING, thence running north 00 degrees 34 minutes 22 seconds west a distance of 280.43 feet to a point; thence running south 89 degrees 34 minutes 16 seconds east a distance of 70.00 feet to a one-inch pipe found; thence running south 02 degrees 03 minutes 00 seconds west a distance of 99.35 feet to a point; thence continuing south 02 degrees 44 minutes 09 seconds west a distance of 199.98 feet to a point located on the northerly right-of-way line of Collier Road; thence running along an arc of a curve to the left with a radius of 274.98 feet (said arc being subtended by a chord bearing north 70 degrees 30 minutes 48 seconds west a chord distance of 57.38 feet) an arc distance of 57.48 feet to a point and THE TRUE POINT OF BEGINNING.

Said tract or parcel of land contains 0.4153 acres, according to the above-referenced survey.

EXHIBIT E

SHOPPING CENTER
(Page 1)

All that tract or parcel of land lying and being
located in Land Lot 153 of the 17th District of Fulton
County, Georgia, of which Landlord is the fee title
owner, being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, commence at a point located at
the intersection of the westernmost right of way margin of Howell Mill
Road (50 foot right of way at this point) and the northernmost right
of way margin of Collier Road (50 foot right of way at this point);
thence running along said westernmost right of way margin of Howell
Mill Road north 11°34'49" east, a distance of 149.96 feet to an iron
pin set on said westernmost right of way margin of Howell Mill Road;
thence leaving said westernmost right of way margin of Howell Mill
Road north 89°10'51" west, a distance of 258.24 feet to an iron pin
found; thence south 07°04'21" west, a distance of 146.32 feet to an
iron pin set on said northernmost right of way margin of Collier Road;
thence running along said northernmost right of way margin of Collier
Road north 88°44'39" west, a distance of 140.00 feet to an iron pin
found; and the TRUE POINT OF BEGINNING; thence running along said
northernmost right of way margin of Collier Road and following the
curvature thereof in a westerly direction along a curve to the right
an arc distance of 161.08 feet to an iron pin found (said arc being
subtended by a chord bearing north 68°00'40" west and having a length
of 157.59 feet); thence continuing along said northernmost right of
way margin of Collier Road and following the curvature thereof in a
westerly direction along the curve to the left an arc distance of 58.52
feet to an iron pin set (said arc being subtended by a chord bearing
north 58°27'18" west and having a length of 58.15 feet); thence
leaving said northernmost right of way margin of Collier Road north
02°44'09" east, a distance of 199.98 feet to an iron pin found; thence
north 02°03'00" east, a distance of 99.35 feet to an iron pin found;
thence south 89°01'59" east, a distance of 200.70 feet to an iron pin
set; thence south 02°41'21" west, a distance of 385.50 feet to an iron
pin found; and the TRUE POINT OF BEGINNING; according to that certain
plat of survey entitled "Boundary Survey for King Three, Inc."
prepared by Samuel G. Evans, Jr., a Georgia Registered Land Surveyor
No. 1159, dated February 13, 1978.

Also together with all that tract or parcel of
land lying and being located in Land Lot 153 of the 17th
District of Fulton County, Georgia, over which Landlord
has the interest of a ground lessee, being more particularly
described as follows:

TO FIND THE TRUE POINT OF BEGINNING, commence at a point located at
the intersection of the westernmost right of way margin of Howell Mill
Road (50 foot right of way at this point) and the northernmost right
of way margin of Collier Road (50 foot right of way at this point);
thence running along said westernmost right of way margin of Howell
Mill Road north 11°34'49" east, a distance of 149.96 feet to an iron
pin set on said westernmost right of way margin of Howell Mill Road
and the TRUE POINT OF BEGINNING; thence leaving said westernmost right
of way margin of Howell Mill Road north 89°10'51" west, a distance of
258.24 feet to an iron pin found; thence south 07°04'21" west, a
distance of 146.32 feet to an iron pin set on said northernmost right
of way margin of Collier Road; thence running along said northernmost
right of way margin of Collier Road north 88°44'39" west, a distance
of 140.00 feet to an iron pin found; thence leaving said northernmost
right of way margin of Collier Road north 02°41'21" east, a distance
of 284.50 feet to an iron pin set; thence north 89°51'08" east, a
distance of 432.94 feet to an iron pin set on said westernmost right
of way margin of Howell Mill Road; thence running along said westernmost
right of way margin of Howell Mill Road, south 11°34'49" west, a
distance of 149.91 feet to an iron pin set and the TRUE POINT OF
BEGINNING; according to that certain plat of survey entitled "Boundary
Survey for King Three, Inc." prepared by Samuel G. Evans, Jr., a
Georgia Registered Land Surveyor No. 1159, dated February 13, 1978.

EXHIBIT B
To Asset Purchase Agreement

Form of Bill of Sale

## BILL OF SALE

**WINN-DIXIE _____, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2005, among **PUBLIX SUPER MARKETS, INC.**, a Florida corporation, ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer, free and clear of all Liens, claims and interests, all of Seller's right, title and interest in the Assets described in the Agreement (other than the Leases and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2005.

"SELLER"

**WINN-DIXIE _____, INC.**, a Florida corporation


By: _____

Name: _____

Title: _____

**EXHIBIT C-1**
**To**
**Asset Purchase Agreement**
**FORM OF CLOSING STATEMENT**

**CLOSING STATEMENT SUMMARY**

**BUYER:**                    Publix Super Markets, Inc., a Florida corporation

**SELLER:**                   Winn-Dixie _____, Inc., a Florida corporation

**ESCROW AGENT and**         _____
**SETTLEMENT AGENT:**

**PROPERTIES[1]:**           Store No. 603, Clearwater, Pinellas Co., Florida
                             Store No. 2724, Conyers, Rockdale Co., Georgia
                             Store No. 2726, Atlanta, Fulton Co., Georgia

**CLOSING DATE:**            _____, 2005

---

**SELLER'S STATEMENT**

| | | |
|---|---|---|
| **I.** | **BASE PURCHASE PRICE:** | |
| | Leasehold: | $_____ |
| | FF&E: | $_____ |
| | TOTAL BASE PURCHASE PRICE: | $_____ |
| **II.** | **SUPPLIES PRICE:** | $_____ |
| **III.** | **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | $_____ |
| **A.** | **NET CREDIT/DEBIT TO SELLER:** | ($_____)    or $_____ |
| **B.** | **TOTAL CLOSING COSTS PAYABLE BY SELLER:** | ($_____) |
| | **AMOUNT DUE SELLER** | $_____ |

---

[1] Itemized individual Closing Statements for each Property are attached

Exhibit C-1
Page 1 of 10

## BUYER'S STATEMENT

| | | | |
|---|---|---|---|
| I. | **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | | $_____ |
| A. | **NET CREDIT/DEBIT TO BUYER:** | ($_____) | or $_____ |
| B. | **TOTAL CLOSING COSTS PAYABLE BY BUYER:** | ($_____) | |
| C | **BASE DEPOSIT** | ($_____) | |
| | **AMOUNT DUE FROM BUYER** | | $_____ |

## TOTAL DISBURSEMENTS[2]

| | | |
|---|---|---|
| 1. | Base Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| | **TOTAL RECEIPTS:** | $_____ |
| 1. | Seller's Brokers Fees | ($_____) |
| 2. | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($_____) |
| 3. | Inventory Service Fees | |
| 4. | Seller's Cure Costs | ($_____) |
| 5. | Seller's Proceeds | |
| [6.] | [Other] | ($_____) |
| | **TOTAL DISBURSEMENTS:** | |

## STIPULATIONS

1. <u>Purchase Agreement</u>. This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"). Attached hereto are individual itemized closing statements for each of the Properties covered by the Purchase Agreement.

2. <u>Authorization to Disburse</u>. By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____
_____
_____
_____

---

[2] Refer to Individual Property Closing Statement for Itemization.

Exhibit C-1
Page 2 of 10

3. <u>Counterparts</u>. This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. <u>Adjustments</u>.    Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                    **BUYER:**

**WINN-DIXIE** _____,       **PUBLIX SUPER MARKETS, INC.,**
a Florida corporation                        a Florida corporation


By: _____    By: _____
Name: _____    Name: _____
Title: Vice President                        Title: _____

Exhibit C-1
Page 3 of 10

## INDIVIDUAL PROPERTY CLOSING STATEMENT

**BUYER:** _____, a _____

**SELLER:** Winn-Dixie _____, Inc., a Florida corporation

**ESCROW AGENT and SETTLEMENT AGENT:** _____

**Property:** Store No. _____, _____, _____, _____

**CLOSING DATE:** _____, 2005

## SELLER'S STATEMENT

**ALLOCATED BASE PURCHASE PRICE:**

Leasehold:                                                     $_____

FF&E:                                                          $_____

TOTAL BASE PURCHASE PRICE:                                     $_____

**SUPPLIES PRICE:**                                           $_____

**TOTAL ALLOCATED BASE PURCHASE PRICE AND SUPPLIES PRICE:**    $_____

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and Other Charges Payable Under Leases (1)    $_____

Buyer's Prorated Share of Rents Paid in Advance **[Under Subleases (2)]**    $_____

**Total Debit Adjustments:**    $_____

**Plus Adjustments (Credit):**                                $_____

Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Leases (3)    $_____

Environmental Assessment Costs Paid by Seller    $_____

Exhibit C-1
Page 4 of 10

[Other]                                                    $_____

  **Total Credit Adjustments:**                   $_____

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs          $_____

Seller's Brokerage Fees                   $_____

Cure Costs                                $_____

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER**                                   $_____


## BUYER'S STATEMENT

**ALLOCATED BASE PURCHASE PRICE:**         $_____

**SUPPLIES PRICE:**                        $_____

**TOTAL ALLOCATED BASE PURCHASE PRICE AND SUPPLIES PRICE:**                                $_____

**Less Adjustments (Credit):**

Allocated Amount of Base Deposit                           $_____

Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Leases (1)                                 $_____

[Other]                                                    $_____

**Total Debit Adjustments:**

**Plus Adjustments (Debit):**                              $_____

Seller's Prorated Share of Rents and      $_____
Other Charges Paid in Advance Under
Leases (3)

Exhibit C-1
Page 5 of 10

Environmental Assessment Costs Paid by Seller                $_____

[Other]                                                      $_____

   **Total Credit Adjustments:**                                          $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs                              $_____

Title Insurance Premiums(4)                                  $_____

Title Examination Fees                                       $_____

Transfer/Documentary Taxes                                   $_____

Buyer's Brokerage Fees                                       $_____

Closing Escrow Fees                                          $_____

Inventory Service Fees(8)                                    $_____

**Total Buyer's Closing Costs:**                             $_____

**AMOUNT DUE FROM BUYER**                                                 $_____

**ALLOCATED AMOUNT OF BASE DEPOSIT**                                      $_____

**TOTAL AMOUNT DUE AT CLOSING**                                           $_____

<u>**SCHEDULE OF DISBURSEMENTS**</u>

| | | |
|---|---|---|
| 1. | Allocated Amount of Base Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | The Blackstone Group L.P. (Seller's Brokers Fees) | ($_____) |
| 2. | The Food Partners, LLC (Seller's Brokers Fees) | ($_____) |
| 3. | DJM Asset Management, LLC (Seller's Brokers Fees) | ($_____) |
| 4. | _____ Title Insurance Company Title Premiums, Title Examination Fees and related | ($_____) |

Exhibit C-1
Page 6 of 10

Costs, Recording and Escrow Fees

5. _____
   Transfer/Documentary Taxes

6. **[Name of Inventory Service]**                    ($_____)
   (Inventory Service Fees)

7. _____                                ($_____)
   (Lease Cure Costs, if any)

8. _____                                ($_____)
   (Sublease Cure Costs, if any)

9. Seller                                             ($_____)
   (Seller's Proceeds)

[10.] [Other]                                         ($_____)

**TOTAL DISBURSEMENTS:**

**Notes:**

(1)   2005 Prorations - Amounts Not Yet Paid and Payable.  Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with applicable leases.  Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store #_____
- 2005 Real Estate Taxes                   $
- Per Diem Tax Amount                      $
- Seller's Share of 2005 Taxes
   (1/1/05 - __/__/05) (_____ days)       $_____       _____

**Total Real Estate Taxes:**

**Personal Property Taxes**

Store #_____
- 2005 Personal Property Taxes             $
- Per Diem Tax Amount                      $
- Seller's Share of 2005 Taxes
   (1/1/05 - __/__/05) (_____ days)       $_____       _____

**Total Personal Property Taxes:**

**CAM Charges**

Store #_____
- 2005 CAM Charges                         $
- Per Diem Amount                          $
- Seller's Share of 2005 CAM Charges

Exhibit C-1
Page 7 of 10

(__/__/__ - __/__/05) (_____ days)      $_____                     _____
**Total CAM Charges:**

**<u>Insurance</u>**

Store #_____
- 2005 Insurance                        $
- Per Diem Amount                       $
- Seller's Share of 2005 Insurance
  (__/__/__ - __/__/05) (_____ days)    $_____
**Total Insurance:**
**Total Amount of Seller's Prorated**
**Share of 2005 Prorations:**                                            _____

(2)      _____, 2005 Sublease Prorations - Amounts Previously Received by
         Seller. Prorations are based on _____, 2005 rents previously paid to
         Seller in accordance with applicable subleases. Buyer will be responsible for
         the collection of such charges that become due and payable for _____,
         2005 and thereafter. Prorations are as follows:

Store #_____
- Total _____, 2005 rent paid:          $
- Per diem rent:                              $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)          $_____

**Total Amount of Seller's Prorated Share of _____ Prorations:**

(3)      _____, 2005 Prorations - Amounts Previously Paid by Seller. Prorations
         are based on _____, 2005 rents, common area maintenance
         assessments and other charges previously paid by Seller in accordance with
         applicable leases. Buyer will be responsible for the payment of such charges
         that become due and payable for _____, 2005 and thereafter.
         Prorations are as follows:

**<u>Rent</u>**

Store #_____
- Total _____, 2005 rent paid:          $
- Per diem rent:                              $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)          $_____
- Per diem rent:                              $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)          $_____         _____

**Total Amount of Buyer's Prorated Share of _____ Prorations:**

Exhibit C-1
Page 8 of 10

(4)     <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

<u>Store #</u>
- Title Search Fees and Costs              $                     -
- Title Premium                            $                     -

   **Total Amount of Title Fees and Expenses:**

(5)     <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the respective utility companies.  Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6)     <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7)     <u>Inventory Purchase Price and Adjustments</u>.  To the extent Inventory has acquired inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement  between Seller and Buyer dated as of even date herewith.  Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

Exhibit C-1
Page 9 of 10

(8)     <u>Inventory Service Fees</u>. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices.  Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)     <u>Capitalized Terms</u>.  Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

Exhibit C-1
Page 10 of 10

EXHIBIT D
To Asset Purchase Agreement

<u>Schedule of Certain Excluded Personal Property</u>

Leased Equipment List
Store 603

| ID | Mfg | Type | Model | lexmark | Qty | Serial # | Install Date | Lessor | Lease # | Category | Sub-Category | Rent | Term | Expire Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 784 | CIS | 2651 | XM | 2651XM HIGH IBM BLACK | 1 | | 01-Jul-04 | CIS | 04574 | Personal Computers | | $110.99 | 48 | 30-Jun-08 |
| 6011 | IBM | 6331 | B2N | E54 15I IBM BLACK | 1 | XDKD8 | 15-Apr-01 | CLC | 28413 | Personal Computers | Monitors | $5.27 | 48 | 31-May-05 |
| 6012 | IBM | 6331 | B2N | E54 15I NETFINITY | 1 | XDKF1 | 15-Apr-01 | CLC | 28413 | Personal Computers | Monitors | $5.27 | 48 | 31-May-05 |
| 6009 | IBM | 8477 | 42Y | 1000 PI NETFINITY | 1 | M1810 | 15-Apr-01 | CLC | 28413 | POS | POS Controllers | $36.60 | 48 | 31-May-05 |
| 6010 | IBM | 8477 | 42Y | 1000 PI DELL E551 | 1 | M2841 | 15-Apr-01 | CLC | 28413 | POS | POS Controllers | $36.60 | 48 | 31-May-05 |
| 14581 | DCC | E551 | 15MO | 15INCH DELL NAS | 1 | KWRB1 | 17-Jun-02 | CLC | 32043 | Personal Computers | Monitors / NAS Devices | $0.00 | 36 | 30-Jun-05 |
| 14582 | DCC | PV715N | 1U | PV715N W POWEREDGE | 1 | LM2H1 | 17-Jun-02 | CLC | 32043 | Servers | Storage | $68.44 | 36 | 30-Jun-05 |
| 14580 | DCC | 2500 SCANNER | P3 | 2500 P3 7837-1000- | 1 | | 17-Jun-02 | CLC | 32043 | Servers | NT Servers | $181.37 | 36 | 30-Jun-05 |
| 40103 | NCR | ER | 7837 | 9090 H/ | 1 | 653624 | 16-Sep-01 | CLC1 | 30117 | POS | POS Hand Held Scanners | $3.41 | | |
| 27056 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 042306 | 01-May-96 | CLC1 | 03311 | POS | Scales / POS Scanner | $11.18 | | |
| 27057 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 042307 | 01-May-96 | CLC1 | 03311 | POS | Scales / POS Scanner | $11.18 | | |
| 27058 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 042308 | 01-May-96 | CLC1 | 03311 | POS | Scales / POS Scanner | $11.18 | | |
| 28801 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 040871 | 01-Apr-96 | CLC1 | 07319 | POS | Scales / POS Scanner | $12.54 | | |
| 28802 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 040872 | 01-Apr-96 | CLC1 | 07319 | POS | Scales / POS Scanner | $12.54 | | |
| 28803 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 040873 | 01-Apr-96 | CLC1 | 07319 | POS | Scales / POS Scanner | $12.54 | | |
| 28804 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 040874 | 01-Apr-96 | CLC1 | 07319 | POS | Scales / POS Scanner | $12.54 | | |
| 28805 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 040875 | 01-Apr-96 | CLC1 | 07319 | POS | Scales / POS Scanner | $12.54 | | |
| 28806 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 040876 | 01-Apr-96 | CLC1 | 07319 | POS | Scales / POS Scanner | $12.54 | | |

Leased Equipment List
Store 603

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 28807 SPI | 244030 | 010 | MAGELLAN SCANNER MAGELLAN SCANNER | 1 040877 | 01-Apr-96 CLC1 | 07319 POS | POS Scanner Scales POS Scanner | $12.54 | | |
| 28808 SPI | 244030 | 010 | SCANNER | 1 040878 | 01-Apr-96 CLC1 | 07319 POS | Scales | $12.56 | | |
| 25817 IBM | 4693 | 3S1I | POS | 1 92529 | 01-Apr-96 CLC1 | 03307 POS | POS Registers | $14.65 | | |
| 25818 IBM | 4693 | 3S1D | POS | 1 92506 | 01-Apr-96 CLC1 | 03307 POS | POS Registers | $14.65 | | |
| 25819 IBM | 4693 | 3S1D | POS | 1 92508 | 01-Apr-96 CLC1 | 03307 POS | POS Registers | $14.65 | | |
| 25820 IBM | 4693 | 3S1D | POS | 1 92509 | 01-Apr-96 CLC1 | 03307 POS | POS Registers | $14.65 | | |
| 25821 IBM | 4693 | 3S1D | POS | 1 92510 | 01-Apr-96 CLC1 | 03307 POS | POS Registers | $14.65 | | |
| 25822 IBM | 4693 | 3S1D | POS | 1 92511 | 01-Apr-96 CLC1 | 03307 POS | POS Registers | $14.65 | | |
| 30098 IBM | 4693 | 2S2D | DISTRIBUTED | 1 AG508 | 01-Apr-96 CLC1 | 07641 POS | POS Registers | $16.22 | | |
| 30099 IBM | 4693 | 2S2D | DISTRIBUTED | 1 AG510 | 01-Apr-96 CLC1 | 07641 POS | POS Registers | $16.22 | | |
| 30100 IBM | 4693 | 3S1I | POS | 1 90336 | 01-Apr-96 CLC1 | 07641 POS | POS Registers | $17.88 | | |
| 30095 IBM | 4693 | 3S1D | POS | 1 90340 | 01-Apr-96 CLC1 | 07641 POS | POS Registers | $19.54 | | |
| 30096 IBM | 4693 | 3S1D | POS | 1 90334 | 01-Apr-96 CLC1 | 07641 POS | POS Registers | $19.54 | | |
| 30097 IBM | 4693 | 3S1D | POS | 1 90337 | 01-Apr-96 CLC1 | 07641 POS | POS Registers | $19.55 | | |
| 52264 IBM | SAV2 | SVCS | SAV2 | 1 | 01-Jul-01 ICC | 23001 Software | POS | $31.74 | 48 | 30-Jun-05 |
| 51224 IBM | SAV2 | SFTW | IBM SAV2 | 1 | 01-Jul-01 ICC | 23001 Software | POS | $99.96 | 48 | 30-Jun-05 |
| 53689 PCG | ROI | SFTW | FIELDS | 1 | 01-Jun-93 PCG | 00000 Software | POS | $0.00 | 60 | 31-May-98 |

**Other Leased Equipment**
TRM Copier

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records.  Prepared by management.

| Center | Mfg | Type | Model | Descriptio | Quantity | Serial . | Install Dat | Lessor | Lease . | Rent Amo | Lease Ter | Expire Dat | Category |
|--------|-----|------|-------|-----------|----------|----------|-------------|--------|---------|----------|-----------|-----------|----------|
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALN88 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALN91 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALN92 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALN97 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALP12 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALR60 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALR51 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALR53 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALR54 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALR63 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALR64 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALR70 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | 4610 | TS4 | THERMAL | 1 | ALY03 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2724 | IBM | SAV2 | SFTW | IBM SAV2 | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 2724 | IBM | SAV2 | SVCS | SAV2 SER | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 2724 | DCC | 2500 | P3 | POWEREI | 1 | RGMJ11 | 6/17/2002 | CLC | 32171 | $181.37 | 36 | 6/30/2005 | Servers |
| 2724 | DCC | PV715N | 1U | DELL NAS | 1 | JXRB11 | 6/17/2002 | CLC | 32171 | $68.44 | 36 | 6/30/2005 | Servers |
| 2724 | DCC | E551 | 15MO | DELL E55' | 1 | | 6/17/2002 | CLC | 32171 | $0.00 | 36 | 6/30/2005 | Personal Computers |

**Other Leased Equipment**
Health Resource Computer System
Health Clinic Blood Pressur Machine
IVR Equipment

Privileged and Confidential

Leased Equipment List
Store 2726

| ID | Mfg | Type | Model | Description | Qty | Serial # | Install Date | Lessor | Lease # | Category | Sub-Category | Rent | Term | Expire Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8501 | IBM | 6331 | B2N | lexmark IBM BLACK E54 15I | 1 | XDMB1 | 15-Jun-01 | CLC | 29438 | Personal Computers | Monitors | $5.27 | 48 | 31-Jul-05 |
| 8502 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDMK0 | 15-Jun-01 | CLC | 29438 | Personal Computers | Monitors | $5.27 | 48 | 31-Jul-05 |
| 8499 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M1047 | 15-Jun-01 | CLC | 29438 | POS | POS Controllers | $36.60 | 48 | 31-Jul-05 |
| 8500 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M1894 | 15-Jun-01 | CLC | 29438 | POS | POS Controllers | $36.60 | 48 | 31-Jul-05 |
| 12393 | TEL | PTC960 | XDS | RF RE-MANUFACTURE | 1 | 874853 | 16-Feb-02 | CLC | 31066 | Radio Frequency | RF Handhelds | $19.87 | 36 | 11-Nov-11 |
| 13733 | DCC | E551 | 15MO | DELL E551 15INCH | 1 |  | 17-May-02 | CLC | 31729 | Personal Computers | Monitors | $0.00 | 36 | 31-May-05 |
| 13734 | DCC | PV715N | 1U | DELL NAS PV715N W POWEREDGE | 1 | N0N111 | 17-May-02 | CLC | 31729 | Servers | NAS Devices Storage | $68.44 | 36 | 31-May-05 |
| 13732 | DCC | 2500 | P3 | 2500 P3 | 1 | 6H2F11 | 17-May-02 | CLC | 31729 | Servers | NT Servers | ###### | 36 | 31-May-05 |
| 37849 | IBM | 3920 | FC | IBM 9IN SVGA MONI | 1 |  | 01-Jan-99 | CLC1 | 18478 |  | ACM Paystation Monitors | $4.26 |  |  |
| 28206 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 038596 | 01-Mar-96 | CLC1 | 06575 | POS | Scales / POS Scanner | $12.56 |  |  |
| 28207 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 038597 | 01-Mar-96 | CLC1 | 06575 | POS | Scales / POS Scanner | $12.56 |  |  |
| 28208 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 038598 | 01-Mar-96 | CLC1 | 06575 | POS | Scales / POS Scanner | $12.56 |  |  |
| 28209 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 038599 | 01-Mar-96 | CLC1 | 06575 | POS | Scales / POS Scanner | $12.56 |  |  |
| 28210 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 038601 | 01-Mar-96 | CLC1 | 06575 | POS | Scales / POS Scanner | $12.56 |  |  |
| 28211 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 038602 | 01-Mar-96 | CLC1 | 06575 | POS | Scales / POS Scanner | $12.56 |  |  |
| 28212 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 038603 | 01-Mar-96 | CLC1 | 06575 | POS | Scales / POS Scanner | $12.56 |  |  |
| 28213 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 038604 | 01-Mar-96 | CLC1 | 06575 | POS | Scales | $12.59 |  |  |
| 25550 | IBM | 4693 | 3S1I | POS TERMAINAL | 1 | 88853 | 01-Mar-96 | CLC1 | 03307 | POS | POS Registers | $14.65 |  |  |

Leased Equipment List
Store 2726

| ID | Mfr | Model | Code | Description | Qty | Serial | Date | Loc | Num | Category | Equipment | Price | Months | End Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25547 | IBM | 4693 | 3S1D | POS TERMINAL-SUPM | 1 | 88846 | 01-Mar-96 | CLC1 | 03307 | POS | POS Registers | $14.65 | | |
| 25548 | IBM | 4693 | 3S1D | POS TERMINAL-SUPM | 1 | 88847 | 01-Mar-96 | CLC1 | 03307 | POS | POS Registers | $14.65 | | |
| 25549 | IBM | 4693 | 3S1D | POS TERMINAL-SUPM | 1 | 88849 | 01-Mar-96 | CLC1 | 03307 | POS | POS Registers | $14.65 | | |
| 38817 | SPI | 541140 | RS23 | 541140-21150-011 | 1 | 73988 | 01-Jul-99 | CLC1 | 22105 | POS | POS Scanner Scales | $24.86 | | |
| 38818 | SPI | 541140 | RS23 | 541140-21150-011 | 1 | 73840 | 01-Jul-99 | CLC1 | 22105 | POS | POS Scanner Scales | $24.86 | | |
| 37822 | IBM | 4693 | 3S1I | POS TERMINAL | 1 | N1106 | 01-Jan-99 | CLC1 | 18473 | POS | POS Registers | $40.36 | | |
| 37823 | IBM | 4693 | 3S1I | POS TERMINAL | 1 | N1107 | 01-Jan-99 | CLC1 | 18473 | POS | POS Registers | $40.36 | | |
| 37824 | IBM | 4693 | 3S1I | POS TERMINAL | 1 | N1108 | 01-Jan-99 | CLC1 | 18473 | POS | POS Registers | $40.36 | | |
| 37825 | IBM | 4693 | 3S1I | POS TERMINAL | 1 | N1109 | 01-Jan-99 | CLC1 | 18473 | POS | POS Registers | $40.36 | | |
| 37826 | IBM | 4693 | 3S1I | POS TERMINAL IBM POS | 1 | N1110 | 01-Jan-99 | CLC1 | 18473 | POS | POS Registers | $40.36 | | |
| 37848 | IBM | 4693 | 3S1 | TERMINAL | 1 | N1069 | 01-Jan-99 | CLC1 | 18478 | POS | POS Registers | $40.36 | | |
| 47213 | IBM | 4610 | TS4 | THERMAL PRINTER | 1 | ALV44 | 01-Jul-01 | ICC | 22986 | POS | Thermal Printers | $19.00 | 48 | 30-Jun-05 |
| 52693 | IBM | SAV2 | SVCS | SAV2 SERVICES IBM SAV2 | 1 | | 01-Jul-01 | ICC | 23001 | Software | POS | $31.74 | 48 | 30-Jun-05 |
| 51654 | IBM | SAV2 | SFTW | SOFTWARE FIELDS | 1 | | 01-Jul-01 | ICC | 23001 | Software | POS | $99.96 | 48 | 30-Jun-05 |
| 54008 | PCG | ROI | SFTW | SOFTWARE ( | 1 | | 01-Feb-93 | PCG | 00000 | Software | POS | $0.00 | 60 | 31-Jan-98 |

**Other Leased Equipment**
Health Resource Computer System
Health Clinic Blood Pressure Machine
IVR Equipment
Imagistics Machine

EXHIBIT E
To Asset Purchase Agreement

Base Purchase Price Allocation; Base Deposit; Inventory Deposit

| Store No. | Base Purchase Price | Base Deposit | Inventory Deposit |
|---|---|---|---|
| #603 | $ 100,000.00 | $ 10,000.00 | $   N/A |
| #2724 | $ 100,000.00 | $ 10,000.00 | $   N/A |
| #2726 | $ 100,000.00 | $ 10,000.00 | $   N/A |
| TOTAL | $300,000.00 | $30,000.00 | $ 0 |

EXHIBIT F
To Asset Purchase Agreement

<u>Permitted Encumbrances</u>

1.    Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2005 and subsequent years.

2.    All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.    Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.    Rights of Landlords under the Leases, including the rights of any Landlord's mortgagee.

5.    Rights of Subtenants under the Subleases.

6.    All matters set forth as exceptions in the Initial Title Reports or the site plans, other than Monetary Liens.

7.    All other matters set forth as exceptions in those Title Reports other than the Initial Title Reports, other than Monetary Liens.

8.    All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

EXHIBIT G
To Asset Purchase Agreement

Form of
Lease Assignment

**ASSIGNMENT AND ASSUMPTION OF LEASE**

[Store #_____, _____, _____]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 200___ (the "Effective Date"), by and between **WINN-DIXIE _____, INC.** a Florida corporation (hereinafter referred to as "Assignor"), and _____, a _____ (hereinafter referred to as "Assignee");

R E C I T A L S :

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached Exhibit A (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective _____, 2005 by and among Assignor, as seller, Assignee, as buyer, as amended from time to time (the "Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on the attached Exhibit A (the "Lease"), and all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, together with all amendments thereto, described on Exhibit A (the "Subleases"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Subleases after the Effective Date, all subject to and in accordance with the terms of the Lease, the Subleases, the Agreement and this Assignment;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **EFFECTIVE DATE.**  This Assignment shall be effective as of the Effective Date.

2.    **ASSIGNMENT.**

(a)    Assignor hereby assigns, transfers, and conveys unto Assignee, free and clear of all Liens, claims and interests, all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder, and Assignor hereby indemnifies, and agrees to save, insure, defend and hold harmless

Assignee from and against all liabilities and obligations of the tenant or lessee that have accrued under the Lease prior to the Effective Date.

(b)     Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to the Subleases and all the rights, benefits and privileges of the landlord or lessor thereunder.

3.     **ASSUMPTION; ACCEPTANCE OF PREMISES**.

(a)     Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b)     Assignee hereby accepts the aforesaid assignment of the Subleases and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Subleases from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Subleases on or after the Effective Date.

(c)     Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate.  Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations.   Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor.  Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this

Assignment.

4.    **NOTICES**. All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

        If to Assignor:      Winn-Dixie _____, Inc.; Re: Store #_____
                                 5050 Edgewood Court
                                 Jacksonville, FL 32254-3699
                                 Attn: Chief Financial Officer
                                 Telefax No.: 904/783-5646

        With a copy to:    Winn-Dixie Stores, Inc.
                                 5050 Edgewood Court
                                 Jacksonville, FL 32254-3699
                                 Attn: Office of General Counsel
                                 Telefax No.: 904/783-5641

or to such other address or telefax number as Assignor may direct from time to time.

        If to Assignee:      _____
                                 _____
                                 _____
                                 _____
                               Telefax No.: _____

or to such other address or Telefax number as Assignee may direct from time to time.

5.    **NOTICE OF ASSIGNMENT**. On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth

in this Assignment.

6.   **BINDING EFFECT**.  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7.   **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

8.   **NO BROKERS**.  The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B.  Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment.    Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises.  Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

9.   **ATTORNEYS' FEES**.  If Assignor becomes a party to any suit or proceeding affecting the Premises or involving this Assignment or Assignee's interest under this Assignment, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Assignment, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Assignment, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand. All references in this Assignment to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment and appellate levels and in connection with bankruptcy proceedings.

10.   **WAIVER OF JURY TRIAL**.  Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Subleases makes a jury determination of any dispute arising out of this

Assignment, the Premises, the Lease or the Subleases undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Subleases.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

**ASSIGNOR:**

Signed, sealed and delivered
in the presence of:

**WINN-DIXIE** _____, **INC.**, a
Florida corporation

_____
Name:_____

By:_____
Name: _____
Title: Vice President

_____
Name:_____

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

**PUBLIX SUPER MARKETS, INC.,** a
Florida corporation

_____

Name:_____

_____

Name:_____

By:_____

Name:_____

Title:_____

[SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

Exhibit A

<u>Description of Premises and Lease</u>

<u>STORE #</u>:

<u>STREET ADDRESS</u>:

<u>SHOPPING CENTER</u>:

<u>LEASE</u>:

<u>AMENDMENTS TO LEASE</u>:

<u>SUBLEASES</u>:

<u>AMENDMENTS TO SUBLEASES</u>:

Exhibit B

<u>Schedule of Brokers</u>

<u>EXHIBIT B-1</u>

<u>ASSIGNOR'S BROKERS</u>:

      The Blackstone Group L.P.
      345 Park Avenue
      New York, New York  10154

<u>EXHIBIT B-2</u>

<u>ASSIGNEE'S BROKERS</u>:

None