<u>LIST OF EXHIBITS</u>

Exhibit A-1   -   List of Stores
Exhibit A-2   -   Description of Leases and Leased Premises
Exhibit B     -   Form of Bill of Sale
Exhibit C-1   -   Form of Closing Statement
Exhibit C-2   -   Form of Inventory Closing Statement
Exhibit D     -   Schedule of Certain Excluded Personal Property
Exhibit E     -   Allocation Schedule
Exhibit F     -   Permitted Encumbrances
Exhibit G     -   Form of Conveyance Instrument
Exhibit H     -   Form of Inventory Certificate

Store Numbers
133
2038
2040
2056
2068
2076

## LIST OF EXHIBITS

| | | |
|---|---|---|
| Exhibit A-1 | - | List of Stores |
| Exhibit A-2 | - | Description of Leases and Leased Premises |
| Exhibit B | - | Form of Bill of Sale |
| Exhibit C-1 | - | Form of Closing Statement |
| Exhibit C-2 | - | Form of Inventory Closing Statement |
| Exhibit D | - | Schedule of Certain Excluded Personal Property |
| Exhibit E | - | Base Purchase Price Allocation; Deposits |
| Exhibit F | - | Permitted Encumbrances |
| Exhibit G | - | Form of Conveyance Instrument |
| Exhibit H | - | Form of Inventory Certificate |

EXHIBIT A-1
To Asset Purchase Agreement

List of Stores

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 133 | BAXLEY SHOPPING CENTER 106 EAST PARKER ST | Baxley | Appling | GA |
| 2038 | 1460 SOUTH MAIN ST. | China Grove | Rowan | NC |
| 2040 | FOREST OAKS SHOPPING CENTER 5322 LIBERTY ROAD | Greensboro | Guilford | NC |
| 2056 | WINDSOR CENTER 3146 DALLAS HIGHWAY | Dallas | | NC |
| 2068 | 668 SOUTH BRAODWAY | Forest City | Rutherford | NC |
| 2076 | HILDEBRAN SHOPPING CNTR US HWY 70/MAIN ST. | Hildebran | | NC |

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

# WINN-DIXIE STORE # 133
Baxley, Georgia

Lease:

Lease dated August 27, 1971 between Baxley Zamagias Limited Partnership, as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

as evidenced by Short Form Lease dated August 27, 1971, recorded in Book 148, Folio 282, of the public records of Appling County, Georgia

Amendments/
Guaranty:

Letter Agreement dated June 16, 1972

First Amendment to Lease dated March 16, 1973

First Amendment to Short Form Lease dated March 16, 1973

Letter Agreement April 9, 1973

Letter Agreement dated May 11, 1973

Second Amendment to Lease dated October 1, 1973

Second Amendment to Short Form Lease dated October 1, 1973, recorded in Book 157, Folio 207, of the public records of Appling County, Georgia

Third Amendment to Lease and Third Amendment to Short Form Lease dated February 13, 1978, recorded in Book 180, Folio 214, of the public records of Appling County, Georgia

Fourth Amendment to Lease dated February 5, 1980, recorded in Book 189, Folio 2190, of the public records of Appling County, Georgia

Letter Agreement dated January 20, 1981

Fifth Amendment to Lease dated January 9, 1984

Supplemental Lease Agreement dated September 27, 1984

Sixth Amendment to Lease dated January 10, 1992

Seventh Amendment to Lease dated February 23, 2000

Premises:                   That certain store building and related improvements located at 106 East
                            Parker Street, Baxley, Appling County, Georgia

Legal Description:          The real property as more particularly described as follows:


                            SEE ATTACHED LEGAL DESCRIPTION

LEGAL DESCRIPTION

BAXLEY SHOPPING CENTER

Southwest Corner of Parker Street and Comas Street
Baxley, Georgia

That certain plot and parcel of land located in the city of Baxley,
County of Appling, State of Georgia, commencing at the Northwest
corner of Parcel #4 as designated on the Washington Street Urban
Renewal Area Plat, which plat is recorded in Platbook 5 page 171
and Platbook 6 page 84 of records in the office of the Clerk of the
Superior Court, Appling County, Georgia; thence running South 76
degrees 21 minutes East a distance of 87.2 feet to a point; thence
along a concave curve to the South an arc distance of 141.5 feet to the
POINT OF BEGINNING; thence continue along a concave curve to the
South an arc distance of 318.4 feet to a point; thence South 67
degrees 00 minutes East 123.5 feet to a point; thence South 23
degrees 14 minutes West 194 feet to a point; thence South 67 degrees
00 minutes East 170.7 feet to a point; thence South 23 degrees 14
minutes West 383.8 feet to a point; thence North 67 degrees 01 minutes
West 629.3 feet to a point; thence North 25 degrees 10 minutes East
187.2 feet to a point; thence North 68 degrees 18 minutes West 124.0
feet to a point; thence North 22 degrees 42 minutes East 16.0 feet
to a point; thence North 68 degrees 39 minutes West 87.0 feet to
a point; thence North 22 degrees 42 minutes East 35.04 feet to a point;
thence South 68 degrees 39 minutes East 213.39 feet to a point; thence
North 25 degrees 10 mintues East 319.31 feet to the POINT OF BEGINNING.

Prepared by Charles W. DeGrove, Jr., registered land surveyor #971-
Florida.

133
106 East Parker Street
Baxley, GA

EXHIBIT "B-3"

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

## WINN-DIXIE STORE # 2038
China Grove, North Carolina

Lease:             Lease dated October 4, 1993 between Richmond Mill, Inc., as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

as evidenced by Short Form Lease dated October 4, 1993, recorded in Book 719, Page 413, of the public records of Rowan County, North Carolina

Amendments/
Guaranty:     Guaranty dated October 12, 1993

Supplemental Lease Agreement dated July 8, 1994

Premises:       That certain store building and related improvements located at 1460 South Main Street, China Grove, Rowan County, North Carolina

Legal Description:   The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

Exhibit "B"

Legal Description

A certain tract or parcel of land containing 7.28 acres, lying and being in China Grove Township, Rowan County, North Carolina, approximately 100 feet northeast of Kimball Road at US Hwy 29A. Bounded on the north by Bostian, on the west by Bivens, Garver, and Kimball, on the south by US Hwy 29A and on the east by Mt. Zion Church, Walker, and Reid, and being more particularly described as follows:

COMMENCING on an existing flat iron in the northeastern margin of the Old Stagecoach Road and running South 31 degrees 50 minutes 30 seconds East 249.83 feet to an existing 1-1/4" solid iron, the southern corner of that certain parcel conveyed by deed to Ned R. Bivens & wife Peggy Ruth Bivens recorded in Deed Book 677 Page 379; Map Book 1049), Rowan County Registry - all deed references hence are of said registry), and being the POINT OF BEGINNING; and running thence with the line of Bivens the following three (3) courses and distances: (1) North 34 degrees 39 minutes 50 seconds East 122.71 feet to an existing 1-1/4" iron pipe, (2) North 38 degrees 56 minutes 15 seconds East 282.27 feet to an existing 1" iron pipe, and (3) North 20 degrees 26 minutes 10 seconds West 270.48 feet to an existing 1-1/2" iron pipe, a common corner with Ethel Rudy Bostian (Deed Book 430 Page 603); thence with the line of Bostian North 81 degrees 00 minutes 55 seconds East 263.62 feet to an existing 1-1/4" solid iron rod, a common corner with Walter H. Reid and wife Annie R. Reid (Deed Book 657 Page 932), also said iron being South 12 degrees 23 minutes 10 seconds East 134.96 feet from an existing 1" iron pipe in the eastern line of Bostian; thence with the line of Reid South 13 degrees 19 minutes 40 seconds East 261.18 feet to an existing 2-1/2" iron pipe, a common corner with James Clay Walker and wife Lois B. Walker (Deed Book 581 Page 47); thence with the line of Walker South 13 degrees 18 minutes 00 seconds East 100.05 feet to an existing axle, a common corner with James Clay Walker and wife Lois Brewer Walker (Deed Book 378 Page 175); thence continuing with the line of Walker South 12 degrees 25 minutes 15 seconds East 199.89 feet to an existing 1" angle iron in the line of Mt. Zion Church; thence with the line of Mt Zion Church South 84 degrees 10 minutes 10 seconds West 33.03 feet to an existing 1-1/4" iron pipe; thence continuing with the line of Mt. Zion Church South 23 degrees 17 minutes 35 seconds East 330.62 feet to an existing 1" solid iron in the northern margin of US Hwy 29A; thence along said margin South 60 degrees 30 minutes 00 seconds West 311.08 feet to an existing 3/4" iron pipe, a common corner with the Charlie W. Kimball heirs; thence with the line of Kimball North 30 degrees 01 minutes 50 seconds West 214.93 feet to an existing 1" square iron, a common corner with Alberta K. Carver (Deed Book 434 Page 83); thence with the line of Carver the following three (3) courses and distances: (1) North 30 degrees 04 minutes 05 seconds West 232.50 feet to an existing 1-3/4" iron pipe, (2) South 66 degrees 53 minutes 30 seconds West 74.30 feet to an existing 1-1/2" iron pipe, and (3) the same course South 66 degrees 53 minutes 30 seconds West 35.70 feet to a P-K nail set in the center of Kimball Road; thence North 40 degrees 52 minutes 00 seconds West 63.02 feet to the POINT OF BEGINNING containing 7.28 acres according to that certain survey by Robert J. Wilkins, Registered Land Surveyor, (L-3393), dated 25 January 1993, (File No. 930150), to which reference is hereby made for a more detailed description, and being all of that parcel conveyed to Charles R. Ellis and wife Audrey H. Ellis by deed recorded in Deed Book 647 Page 774.

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

## WINN-DIXIE STORE # 2040
Greensboro, North Carolina

Lease:

Lease dated September 29, 1976 between Bill Agapion, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

as evidenced by Short Form Lease dated September 29, 1976, recorded in Book 2844, Page 801, of the public records of Guilford County, North Carolina

Amendments/
Guaranty:

Guaranty dated October 12, 1976

Assignment of Lease(s) dated June 25, 1977

Supplemental Lease Agreement dated March 10, 1978

Letter Agreement dated December 16, 1986

First Amendment to Lease dated February 26, 1987

Agreement dated May 6, 1987

Second Amendment to Lease dated June 27, 1988

Assignment of Lease dated June 25, 1998, recorded in Book 4770, Page 555, of the public records of Guilford County, North Carolina

Letter Agreement dated August 8, 2002

Premises:

That certain store building and related improvements located at 5322 Liberty Road, Greensboro, Guilford County, North Carolina

Legal Description:

The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

EXHIBIT "B"

FOREST OAKS SHOPPING CENTER

Southwesterly Corner of the Intersection of
Liberty Road (Old U. S. Highway No. 421) and
North Carolina State Road No. 3411
Guilford County, North Carolina

All that certain piece, parcel or tract of land lying and
being situated in Fentress Township, in the County of Guilford,
State of North Carolina, together with all improvements thereon
or to be constructed thereon and all appurtenances thereto
belonging or in anywise appertaining, particularly described
as follows, to wit:

BEGINNING in the south right-of-way line of Old U. S.
Highway No. 421 (Liberty Road) and in the west right-of-way
line of North Carolina State Road No. 3411 (Hagan Stone Road),
run thence with the west margin of said North Carolina State
Road No. 3411 South 1 degree 2 minutes 50 seconds East 163.04
feet, South 0 degree 15 minutes 20 seconds East 169.24 feet,
South 2 degrees 26 minutes 40 seconds West 198.44 feet and
South 5 degrees 0 minute 40 seconds West 77.75 feet to Parker's
original southeast corner; thence with Parker's original line
North 85 degrees 5 minutes 55 seconds West 1,034.21 feet to
Kirkman's corner; thence with Kirkman's line N 7° 14' 40" E
254.63 feet and N 7° 4' 10" E. 149.04 feet to Lippard's corner;
thence with Lippard's line N 4° 40' 30" E. 95.86 feet to Greeson's
corner; thence with Greeson's line N 83° 26' 50" E 173.3 feet
to Greeson's corner with Barker; thence with Barker's line
N 83° 46' 50" E 258.62 feet to Garner's original corner; thence
with Garner's new line South 30 degrees 29 minutes 30 seconds
West 20 feet to Garner's new corner; thence with Garner's new
line North 81 degrees 24 minutes 50 seconds East 305.63 feet
to Garner's new corner; thence with Garner's line North 34 degrees
47 minutes 55 seconds East 113.75 feet to the south right-of-way
line of Old U. S. Highway No. 421, Parker's and Garner's original
common corner; thence with the south right-of-way line of said
Highway South 53 degrees 30 minutes 50 seconds East 50 feet to
the northwest corner of Ann Reynolds; thence with Reynolds' line
South 36 degrees 29 minutes 10 seconds West 205 feet to Reynolds'
corner; thence with Reynolds' line South 53 degrees 30 minutes
50 seconds East 151.41 feet to Reynolds' corner; thence with
Reynolds' line North 67 degrees 1 minute 5 seconds East 46.44
feet to Reynolds' corner; thence with Reynolds' line North
36 degrees 29 minutes 10 seconds East 165 feet to the south
right-of-way line of Old U. S. Highway No. 421; thence with
the south right-of-way line of said Highway South 53 degrees
30 minutes 50 seconds East 20 feet to the POINT OF BEGINNING,
containing 12.99 acres, more or less, as shown on survey dated
August 1976, prepared by Hugh M. Creed, North Carolina Registered
Engineer No. 3387, Greensboro, North Carolina, entitled "Grading
and Utility Plan of Forest Oaks Shopping Center, Fentress Town-
ship, Guilford County, North Carolina", which survey is by this
reference made a part hereof.

BOOK 2844 PAGE 805

2040
5322 Liberty Road
Greensboro, North Carolina

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

## WINN-DIXIE STORE # 2056
Dallas, North Carolina

Lease:          Lease dated December 13, 1995 between Windsor Station Limited Liability Company, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

as evidenced by Short Form Lease dated December 13, 1995, recorded in Book 2667, Page 776, of the public records of Gaston County, North Carolina, and Book 2510, Page 803, of the public records of Gaston County, North Carolina

Amendments/
Guaranty:     Guaranty dated December 13, 1995

Supplemental Lease Agreement dated May 15, 1997

Premises:     That certain store building and related improvements located at 3146 Dallas Highway, Dallas, Gaston County, North Carolina

Legal Description:     The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

BK2667PG781

TO ARRIVE AT THE POINT OF BEGINNING, COMMENCE AT USGS MONUMENT "GAS 4" HAVING NC GRID COORDINATES (NAD 83) OF X=1,347,087.32 FEET AND Y=576,899.11 FEET; THENCE A GRID TIE OF NORTH 24° 56' 55" WEST, A HORIZONTAL GROUND DISTANCE OF 636.39 FEET TO THE POINT OF BEGINNING; SAID POINT BEING AN EXISTING RAILROAD SPIKE IN THE CENTERLINE OF THE PAVEMENT OF OLD US HIGHWAY #321 HAVING NC GRID COORDINATES (NAD 83) OF X=1,346,818.93 FEET AND Y=577,476.03 FEET; THENCE WITH THE CENTERLINE OF OLD US HIGHWAY #321 NORTH 32° 31' 33" WEST, A DISTANCE OF 576.71 FEET TO AN EXISTING NAIL; THENCE LEAVING SAID HIGHWAY AND COURSING WITH THE EASTERLY LINE OF WEB-WOOD,INC. PROPERTY AS DESCRIBED IN DEED BOOK 1925-PAGE 745 AND THE PITSIKOULIS PROPERTY AS DESCRIBED IN DEED BOOK 1902-PAGE 919 THE FOLLOWING TWO (2) COURSES:  (1) NORTH 17° 23' 08" EAST, A DISTANCE OF 431.83 FEET TO AN EXISTING IRON PIN; (2) NORTH 17° 33' 37" EAST, A DISTANCE OF 26.18 FEET TO AN EXISTING IRON PIN; THENCE WITH THE SOUTHERLY LINE OF THE HENRY M. WHITESIDES PROPERTY AS DESCRIBED IN DEED BOOK 1278-PAGE 301 THE FOLLOWING TWO (2) COURSES:  (1) NORTH 75° 59' 09" EAST, A DISTANCE OF 160.72 FEET TO AN IRON PIN SET; (2) NORTH 78° 01' 56" EAST A DISTANCE OF 357.99 FEET TO AN EXISTING IRON PIN; THENCE WITH THE WESTERLY LINE OF THE RHYNE PROPERTY AS DESCRIBED IN DEED BOOK 1130-PAGE 445 AND THE GREEN PROPERTY AS DESCRIBED IN DEED BOOK 2352-PAGE 847, SOUTH 17° 48' 56", A DISTANCE OF 1088.65 FEET TO THE BEGINNING; CONTAINING 7.933 ACRES.


TOGETHER WITH THE FOLLOWING DESCRIBED PARCEL:


TO ARRIVE AT THE POINT OF BEGINNING, COMMENCE AT USGS MONUMENT "GAS 4" HAVING NC GRID COORDINATES (NAD 83) OF X=1,347,087.32 FEET AND Y=576,899.11 FEET; THENCE A GRID TIE OF NORTH 29° 28' 17" WEST, A HORIZONTAL GROUND DISTANCE OF 1575.85 FEET TO THE POINT OF BEGINNING; SAID POINT BEING SITUATED IN THE CENTERLINE OF OLD US HIGHWAY #321 AND HAVING NC GRID COORDINATES (NAD 83) OF X=1,346,312.22 FEET BEING THE SOUTHWESTERNMOST CORNER OF THE WEB-WOOD,INC. PROPERTY AS DESCRIBED IN DEED BOOK 1925-PAGE 745; THENCE WITH THE CENTERLINE OF SAID HIGHWAY, NORTH 32° 20' 03" WEST, A DISTANCE OF 41.18 FEET TO A POINT; THENCE LEAVING SAID HIGHWAY NORTH 47° 28' 48" EAST, A DISTANCE OF 518.61 FEET TO AN EXISTING IRON PIN SITUATED ON THE SOUTHERLY LINE OF THE RHYNE PROPERTY AS DESCRIBED IN DEED BOOK 478-PAGE 133; THENCE WITH THE SAID RHYNE LINE SOUTH 22° 20' 09" EAST, A DISTANCE OF 124.23 FEET TO AN IRON PIN SET IN THE LINE OF THE WHITESIDES PROPERTY AS DESCRIBED IN DEED BOOK 1278-PAGE 301; THENCE WITH SAID WHITESIDES LINE SOUTH 40° 12'33" WEST, A DISTANCE OF 170.92 FEET TO AN IRON PIN SET IN THE NORTHERLY LINE OF THE PITSIKOULIS PROPERTY AS DESCRIBED IN DEED BOOK 1902-PAGE 919; THENCE WITH THE PITSIKOULIS PROPERTY THE FOLLOWING TWO (2) COURSES:  (1) NORTH 72° 36' 16" WEST, A DISTANCE OF 86.61 FEET TO AN IRON PIN SET; (2) SOUTH 52° 40' 14" WEST, A DISTANCE OF 114.88 FEET TO AN IRON PIN SET; SAID IRON PIN ALSO BEING THE NORTHEASTERN MOST CORNER OF THE WEB-WOOD, INC. PROPERTY AS DESCRIBED IN DEED BOOK 1925-PAGE 745; THENCE WITH THE NORTHERLY LINE OF SAID WEB-WOOD,INC. PROPERTY SOUTH 52° 01' 11" WEST, A DISTANCE OF 156.16 FEET TO THE BEGINNING; CONTAINING 0.9698 ACRE.

EXHIBIT  "B"
PAGE 1 of 2

BK2667PG782

TOGETHER WITH THE FOLLOWING DESCRIBED PARCEL:

TO ARRIVE AT THE POINT OF BEGINNING, COMMENCE AT USGS MONUMENT "GAS 4" HAVING NC GRID COORDINATES (NAD 83) OF X=1,347,087.32 FEET AND Y=576,899.11 FEET; THENCE A GRID TIE OF NORTH 24° 56' 55" WEST, A HORIZONTAL GROUND DISTANCE OF 636.39 FEET TO AN EXISTING RAILROAD SPIKE SITUATED IN THE CENTERLINE OF OLD US HIGHWAY #321; SAID RAILROAD SPIKE HAVING NC GRID COORDINATES (NAD 83) OF X=1,346,818.93 FEET AND Y=577,476.03 FEET; SAID RAILROAD SPIKE ALSO BEING THE SOUTHEASTERN MOST CORNER OF THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY PROPERTY AS DESCRIBED IN DEED BOOK 1966-PAGE 344, AND DEED BOOK 2144-PAGE 807; THENCE WITH THE EASTERNMOST LINE OF SAID CONNECTICUT MUTUAL LIFE INSURANCE COMPANY PROPERTY, NORTH 17° 48' 56" EAST, A DISTANCE OF 1088.65 FEET TO AN EXISTING IRON PIN, SAID, IRON PIN BEING THE POINT OF BEGINNING; THENCE WITH THE NORTHERLY LINE OF THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY PROPERTY AS DESCRIBED IN DEED 2144-PAGE 807 THE FOLLOWING TWO (2) COURSES: (1) SOUTH 78° 01' 56" WEST, A DISTANCE OF 357.99 FEET TO A POINT; (2) SOUTH 75° 59' 09" WEST, A DISTANCE OF 160.72 FEET TO AN EXISTING IRON PIN, SAID IRON PIN BEING THE NORTHEASTERN MOST CORNER OF THE PITSIKOULIS PROPERTY AS DESCRIBED IN DEED BOOK 1902-PAGE 919; THENCE WITH THE NORTHERLY LINE OF THE PITSIKOULIS PROPERTY NORTH 72° 36' 16" WEST, A DISTANCE OF 38.39 FEET TO AN IRON PIN SET; THENCE WITH THE EASTERLY LINE OF THE WHITESIDES PROPERTY AS DESCRIBED IN DEED BOOK 1130-PAGE 132 AND THE RHYNE PROPERTY AS DESCRIBED IN DEED BOOK 478-PAGE 133 NORTH 40° 12' 33" EAST, A DISTANCE OF 208.41 FEET TO AN EXISTING IRON PIN; THENCE THE FOLLOWING TWO (2) COURSES WITH THE AFORESAID RHYNE PROPERTY: (1) NORTH 16° 06' 18" EAST, A DISTANCE OF 225.79 FEET TO AN EXISTING IRON PIN; (2) SOUTH 82° 56' 13" EAST, A DISTANCE OF 420.35 FEET TO AN EXISTING IRON PIN; THENCE WITH THE WESTERLY LINE OF THE RHYNE PROPERTY AS DESCRIBED IN DEED BOOK 1130-PAGE 445 SOUTH 17° 48' 56" WEST, A DISTANCE OF 233.94 FEET TO THE BEGINNING; CONTAINING 3.0920 ACRES.

EXHIBIT "B"
PAGE 2 of 2

2056
3146 Dallas Highway
Dallas, North Carolina

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

WINN-DIXIE STORE # **2068**
Forest City, North Carolina

Lease:   Lease dated November 9, 1974 between South Broadway Corporation, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

as evidenced by Short Form Lease dated November 9, 1974, recorded in Book 363, Page 383, of the public records of Rutherford County, North Carolina

Amendments/
Guaranty:   Guaranty dated November 21, 1974

Amendment of Lease dated January 11, 1975

Second Amendment of Lease dated January 24, 1975

Supplemental Lease Agreement dated October 7, 1975

Third Amendment to Lease dated July 6, 1990

Agreement dated August 9, 1990, recorded in Book 565, Page 812, of the public records of Rutherford County, North Carolina

Agreement dated February 22, 1991

Fifth Amendment to Lease dated July 11, 1991, recorded in Book 581. Page 45, of the public records of Rutherford County, North Carolina

Premises:   That certain store building and related improvements located at 668 South Broadway, Forest City, Rutherford County, North Carolina

Legal Description:   The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

BOOK 363 PAGE 388

EXHIBIT "B"

SHOPPING CENTER DEVELOPMENT

Northwesterly Corner of the Intersection
of Wells Drive and South Broadway Street,
Forest City, Rutherford County, North Carolina

All that certain piece, parcel or tract of land, lying
and being situated in Forest City, in the County of Rutherford,
State of North Carolina, together with all improvements thereon or
to be constructed thereon and all appurtenances thereto belonging
or in anywise appertaining, more particularly described as follows,
to wit:

BEGINNING at an iron pin in the northerly margin of
Wells Drive in the east line of Lot #32, said point of beginning
being 436.15 feet measured along the north line of Wells Drive from
the center line of South Broadway Street and running thence with
the east line of Lot #32 North 0 degrees 05 minutes west 125.95
feet to an iron; thence North 19 degrees 08 minutes west 17.24
feet to an old iron at north east corner of Lot #32; thence North
13 degrees 38 minutes 51 seconds west distance of 126.83 feet to
a Cherry tree; thence North 2 degrees 12 minutes 25 seconds west
a distance of 217.10 feet to an old iron; thence North 74 degrees
00 minutes east a distance of 92.18 feet to an old iron; thence
South 18 degrees 00 minutes east a distance of 82.11 feet to an
old iron; thence North 74 degrees 22 minutes east a distance of
177.52 feet to an old iron in the west line of South Broadway
Street; thence with the west line of South Broadway Street the
following three (3) courses and distances: (1)-South 18 degrees
00 minutes east a distance of 95.5 feet to an iron, (2) South 72
degrees 00 minutes west 4.47 feet to an iron, (3) South 19 degrees
22 minutes east 267.86 feet to an iron; thence with the sight
distance right-of-way line South 19 degrees 22 minutes west a
distance of 72.76 feet to an iron in the north right-of-way of
Wells Drive; thence with the north right-of-way line of Wells
Drive the following three (3) courses and distances: (1) South
71 degrees 06 minutes west a distance of 142.96 feet to an iron,
(2) with the arc of a circular curve having a radius of 347.66
feet to the right and in a westerly direction a distance of 118.83
feet to an iron,(3) North 89 degrees 19 minutes west a distance of
78.83 feet to the POINT OF BEGINNING. Containing 3.417 acres,
more or less.

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

## WINN-DIXIE STORE # 2076
Hildebran, North Carolina

Lease:              Lease dated August 25, 1983 between Hildebran Associates, as Landlord, and
                    Winn-Dixie Raleigh, Inc., as Tenant;

                    as evidenced by Short Form Lease dated August 25, 1983, recorded in Book
                    643, Page 345, of the public records of Burke County, North Carolina

Amendments/
Guaranty:           Guaranty dated September 19, 1983

                    Letter Agreement dated November 8, 1983

                    Letter Agreement dated August 2, 1984

                    Supplemental Lease Agreement dated October 29, 1984

                    First Amendment to Lease dated February 20, 2004

Premises:           That certain store building and related improvements located at US
                    Highway 70/Main Street, Hildebran, Burke County, North Carolina

Legal Description:  The real property as more particularly described as follows:


SEE ATTACHED LEGAL DESCRIPTION

EXHIBIT "A"

LEGAL DESCRIPTION

All that certain piece, parcel or tract of land lying and being in Burke County, North Carolina, and being more particularly described as follows:

LYING AND BEING in Burke County and being more particularly described as follows:

BEGINNING at a new iron pin situated on the southernmost right of way line of U.S. Highway 64 and 70, said new iron pin being on a common line of Rudisill, now or formerly; thence continuing along the southernmost margin of U.S. Highway 64 and 70, North 87 degrees 11 minutes West 581.10 feet to a new iron pin; thence leaving said Highway and running South 01 degrees 26 minutes West 391.71 feet to an iron on the property of the Town of Hilderbran, now or formerly; thence with the common line of the property of the Town of Hilderbran, the following two courses and distances to a new iron pin in the northernmost right of way of State Road 1776: (1) South 88 degrees 37 minutes East 100.0 feet to a new iron pin; (2) South 01 degrees 26 minutes West 150.0 feet to a new iron pin; thence along the northernmost right of way of SR 1776, South 89 degrees 10 minutes East 145.40 feet to a point; thence South 84 degrees 26 minutes East 100.0 feet to a point; thence South 75 degrees 30 minutes East 140.05 feet to an iron pin on the line of the property of Lindslay; thence with the common line of the property of Lindslay, North 19 degrees 33 minutes 30 seconds East 325.45 feet to a new iron pin; thence North 00 degrees 10 minutes West 104.55 feet to a new iron pin on the line of property of Rudisill, now or formerly, thence with the common line of Rudisill, North 01 degrees 50 minutes East 151.16 feet to the point of Beginning.

Together with an easement for pedestrian and automotive ingress and egress connecting the shopping center with Main Street across the tract or parcel of land more particularly described as follows:

LYING AND BEING in Incard Towhship, Burke County, North Carolina and being more particularly described as follows:

BEGINNING at an iron pin in the easternmost margin of S.R. 1002 which is also known as Main Street, said iron pin being 71.0 feet measured along the easternmost margin of S.R. 1002 in a southerly direction from that point where the easternmost margin of S.R. 1002 intersects the southernmost margin of U.S. Highway 64 & 70; thence leaving S.R. 1002, and running a line through the property of Cline Realty Company Inc., and following the northernmost margin of the 40 foot drive or road, South 88 degrees 00 minutes East 274.10 feet to a new iron pin, said new iron pin further being South 01 degrees 26 minutes West 65.0 feet from a new iron pin on the southernmost right of way of U.S. Highway 64 & 70; thence South 01 degrees 26 minutes West 40.0 feet to a new iron pin in the southernmost margin of said 40 foot drive or easement thence along the southernmost margin of said drive or easement and along the northernmost line of parcel no. 2 of the property of Cline Realty Company, Inc., as shown and described on that certain unrecorded map or plat made by Preston R. Taylor, Registered Surveyor, dated June 22, 1983, and revised and entitled "Proposed Shopping Center for Winn-Dixie and Others," North 88 degrees 00 minutes West 273.08 feet to a new iron pin in the easternmost margin of S.R. 1002; thence along the easternmost margin of S.R. 1002 North 00 degrees 02 minutes West 40.02 feet to the point of Beginning.

2076
US Highway 70/Main Street
Hildebran, North Carolina

EXHIBIT B
To Asset Purchase Agreement

Form of Bill of Sale

**BILL OF SALE**

**WINN-DIXIE _____, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 200___, among Food Lion, LLC, a North Carolina limited liability company, ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Leases and any subleases(s) , which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. In the event of any conflict or inconsistency between the terms of the Agreement and the terms of this instrument, the terms of the Agreement will govern. Nothing herein contained will itself change, amend, extend, or alter (nor should it be deemed to construed as changing, amending, extending, or altering) the terms or conditions of the Agreement in any manner whatsoever. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 200____.

"SELLER"

**WINN-DIXIE _____, INC.**, a Florida corporation

By: _____

Name: _____

Title: _____

**EXHIBIT C-1**
**To**
**Asset Purchase Agreement**
**FORM OF CLOSING STATEMENT**

**CLOSING STATEMENT SUMMARY**

**BUYER:**                    _____, a _____

**SELLER:**                   Winn-Dixie _____, Inc., a Florida corporation

**ESCROW AGENT and**          _____
**SETTLEMENT AGENT:**

**PROPERTIES[1]:**            Store No. _____, _____, _____, _____
                              Store No. _____, _____, _____, _____
                              Store No. _____, _____, _____, _____
                              Store No. _____, _____, _____, _____

**CLOSING DATE:**             _____, 2005

---

**SELLER'S STATEMENT**

| | | |
|---|---|---|
| **I.** | **BASE PURCHASE PRICE:** | |
| | Leasehold: | $_____ |
| | FF&E: | $_____ |
| | TOTAL BASE PURCHASE PRICE: | $_____ |
| **II.** | **SUPPLIES PRICE:** | $_____ |
| **III.** | **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | $_____ |
| **A.** | **NET CREDIT/DEBIT TO SELLER:** | ($_____)   or $_____ |
| **B.** | **TOTAL CLOSING COSTS PAYABLE BY SELLER:** | ($_____) |
| | **AMOUNT DUE SELLER** | $_____. |

---

[1] Itemized individual Closing Statements for each Property are attached

Exhibit C-1
Page 1 of 10

## BUYER'S STATEMENT

| | | | | |
|---|---|---|---|---|
| I. | TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE: | | | $_____ |
| A. | NET CREDIT/DEBIT TO BUYER: | ($_____) | or $_____ | |
| B. | TOTAL CLOSING COSTS PAYABLE BY BUYER: | ($_____) | | |
| C | BASE DEPOSIT | ($_____) | | |
| | **AMOUNT DUE FROM BUYER** | | | $_____ |

## TOTAL DISBURSEMENTS[2]

| | | |
|---|---|---|
| 1. | Base Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | Seller's Brokers Fees | ($_____) |
| 2. | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($_____) |
| 3. | Inventory Service Fees | |
| 4. | Seller's Cure Costs | ($_____) |
| 5. | Seller's Proceeds | |
| [6.] | [Other] | ($_____) |
| **TOTAL DISBURSEMENTS:** | | |

## STIPULATIONS

1. <u>Purchase Agreement</u>.  This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").  Attached hereto are individual itemized closing statements for each of the Properties covered by the Purchase Agreement.

2. <u>Authorization to Disburse</u>.  By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____
_____
_____
_____

---

[2] Refer to Individual Property Closing Statement for Itemization.

Exhibit C-1
Page 2 of 10

3.  <u>Counterparts</u>.  This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.  To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4.  <u>Adjustments</u>.    Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                       **BUYER:**

**WINN-DIXIE** _____,        _____,
a Florida corporation                          a _____

By:                                                    By:
_____        _____

Name: _____        Name: _____

Title: Vice President                         Title: _____

Exhibit C-1
Page 3 of 10

## INDIVIDUAL PROPERTY CLOSING STATEMENT

**BUYER:** _____, a _____

**SELLER:** Winn-Dixie _____, Inc., a Florida corporation

**ESCROW AGENT and
SETTLEMENT AGENT:** _____

**Property:** Store No. _____, _____, _____, _____

**CLOSING DATE:** _____, 2005

### SELLER'S STATEMENT

**ALLOCATED BASE PURCHASE
PRICE:**

Leasehold: $_____

FF&E: $_____

TOTAL BASE PURCHASE PRICE: $_____

**SUPPLIES PRICE:** $_____

**TOTAL ALLOCATED  BASE
PURCHASE PRICE AND SUPPLIES
PRICE:** $_____

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and
Other Charges Payable Under Leases (1)   $_____

Buyer's Prorated Share of Rents Paid in
Advance **[Under Subleases (2)]**   $_____

**Total Debit Adjustments:**   $_____

**Plus Adjustments (Credit):** $_____

Seller's Prorated Share of Rents and
Other Charges Paid in Advance Under
Leases (3)   $_____

Environmental Assessment Costs Paid by   $_____
Seller

Exhibit C-1
Page 4 of 10

[Other]                                                    $_____

  **Total Credit Adjustments:**                  $_____

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs          $_____

Seller's Brokerage Fees                   $_____

Cure Costs                                $_____

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER**                                   $_____


## BUYER'S STATEMENT

**ALLOCATED BASE PURCHASE PRICE:**        $_____

**SUPPLIES PRICE:**                       $_____

**TOTAL ALLOCATED  BASE PURCHASE PRICE AND SUPPLIES PRICE:**                                        $_____

**Less Adjustments (Credit):**

Allocated Amount of Base Deposit                           $_____

Seller's Prorated Share of Rents and                       $_____
Other Charges Paid in Advance Under
Leases (1)

[Other]                                                    $_____

**Total Debit Adjustments:**

**Plus Adjustments (Debit):**                              $_____

Seller's Prorated Share of Rents and      $_____
Other Charges Paid in Advance Under
Leases (3)

Exhibit C-1
Page 5 of 10

Environmental Assessment Costs Paid by Seller     $_____

[Other]     $_____

**Total Credit Adjustments:**        $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs     $_____

Title Insurance Premiums(4)     $_____

Title Examination Fees     $_____

Transfer/Documentary Taxes     $_____

Buyer's Brokerage Fees     $_____

Closing Escrow Fees     $_____

Inventory Service Fees(8)     $_____

**Total Buyer's Closing Costs:**     $_____

**AMOUNT DUE FROM BUYER**        $_____

**ALLOCATED AMOUNT OF BASE DEPOSIT**        $_____

**TOTAL AMOUNT DUE AT CLOSING**        $_____

**SCHEDULE OF DISBURSEMENTS**

| | | |
|---|---|---|
| 1. | Allocated Amount of Base Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | _____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | The Blackstone Group L.P. (Seller's Brokers Fees) | ($_____) |
| 2. | The Food Partners, LLC (Seller's Brokers Fees) | ($_____) |
| 3. | DJM Asset Management, LLC (Seller's Brokers Fees) | ($_____) |
| 4. | _____ Title Insurance Company Title Premiums, Title Examination Fees and related | ($_____) |

Exhibit C-1
Page 6 of 10

Costs, Recording and Escrow Fees

5.    _____
       Transfer/Documentary Taxes
6.    **[Name of Inventory Service]**                    ($_____)
       (Inventory Service Fees)
7.    _____                                ($_____)
       (Lease Cure Costs, if any)
8.    _____                                ($_____)
       (Sublease Cure Costs, if any)
9.    Seller                                             ($_____)
       (Seller's Proceeds)
[10.] [Other]                                            ($_____)

**TOTAL DISBURSEMENTS:**

**Notes:**

(1)    <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>.  Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with applicable leases.  Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store # _____
- 2005 Real Estate Taxes                    $
- Per Diem Tax Amount                        $
- Seller's Share of 2005 Taxes
   (1/1/05 - __/__/05) (_____ days)          $_____          _____
**Total Real Estate Taxes:**

**Personal Property Taxes**

Store # _____
- 2005 Personal Property Taxes              $
- Per Diem Tax Amount                        $
- Seller's Share of 2005 Taxes
   (1/1/05 - __/__/05) (_____ days)          $_____          _____
**Total Personal Property Taxes:**

**CAM Charges**

Store # _____
- 2005 CAM Charges                           $
- Per Diem Amount                            $
- Seller's Share of 2005 CAM Charges

Exhibit C-1
Page 7 of 10

(__/__/__ - __/__/05) (_____ days)        $ _____        _____
**Total CAM Charges:**

**Insurance**

Store # _____
- 2005 Insurance                          $
- Per Diem Amount                         $
- Seller's Share of 2005 Insurance
   (__/__/__ - __/__/05) (_____ days)     $ _____
**Total Insurance:**
**Total Amount¹ of Seller's Prorated
Share  of 2005 Prorations:**                              _____

(2)    _____, 2005 Sublease Prorations - Amounts Previously Received by
Seller.  Prorations are based on _____, 2005 rents previously paid to
Seller in accordance with applicable subleases.  Buyer will be responsible for
the collection of such charges that become due and payable for _____,
2005 and thereafter.  Prorations are as follows:

Store # _____
- Total _____, 2005 rent paid:     $
- Per diem rent:                          $
- Buyer's prorated share
   (__/__/__ - __/__/05) (_____ days)     $ _____
**Total Amount of Seller's Prorated Share of _____  Prorations:**

(3)    _____, 2005 Prorations - Amounts Previously Paid by Seller.  Prorations
are based on _____, 2005 rents, common area maintenance
assessments and other charges previously paid by Seller in accordance with
applicable leases.  Buyer will be responsible for the payment of such charges
that become due and payable for _____, 2005 and thereafter.
Prorations are as follows:

**Rent**

Store # _____
- Total _____, 2005 rent paid:      $
- Per diem rent:                          $
- Buyer's prorated share
   (__/__/__ - __/__/05) (_____ days)     $ _____
- Per diem rent:                          $
- Buyer's prorated share
   (__/__/__ - __/__/05) (_____ days)     $ _____        _____
**Total Amount of Buyer's Prorated Share of _____  Prorations:**

Exhibit C-1
Page 8 of 10

(4)    <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

Store # _____
- Title Search Fees and Costs          $          -
- Title Premium                        $          -

**Total Amount of Title Fees and Expenses:**

(5)    <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the respective utility companies.  Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6)    <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7)    <u>Inventory Purchase Price and Adjustments</u>.  To the extent Inventory has acquired inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement  between Seller and Buyer dated as of even date herewith.  Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

Exhibit C-1
Page 9 of 10

(8)     <u>Inventory Service Fees</u>. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices.  Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)     <u>Capitalized Terms</u>.  Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

Exhibit C-1
Page 10 of 10

Exhibit C-2

To Asset Purchase Agreement

Form of Inventory Closing Statement

**INVENTORY CLOSING STATEMENT**

**SELLER**                          Winn-Dixie _____, Inc., a Florida corporation

**BUYER:**                          _____ a _____

**TRANSACTION:**                    Acquisition of Leasehold Interest  in Store _____, _____,
                                    _____

**BASE PURCHASE PRICE:**            Under Separate Closing Statement

**INVENTORY PRICE (2):**

| | |
|---|---|
| Store _____ | $ |
| Store _____ | $ |
| Store _____ | $ |
| Store _____ | $ _____ |

**Total Aggregate Inventory Price:**    $

CLOSING DATE:                    _____, 2005

**SELLER'S STATEMENT**

**Inventory Price**                                                      $

**Less Adjustments:**

   1.        Ten Percent of Inventory Price

      Retained by Escrow Agent        $ _____

      **Total Adjustments:**        $                    $    ( _____ )

TOTAL AMOUNT DUE TO SELLER:                                              $

**BUYER'S STATEMENT**

**Aggregate Inventory Price**                                           $

**Plus Closing Costs to be Paid by Buyer:**
   1.        Inventory Service Fees (3)        _____ $

Exhibit C-2
Page 1 of 3

(Direct Payment or Reimbursement
to Seller)
   **Total Buyer's Inventory Closing
Costs:**            $ _____     $ _____

**AMOUNT DUE FROM BUYER:**          $ _____

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this day of July, 2004, and hereby authorize **[Title Insurer]**, as closing agent, to disburse the sums set forth herein in accordance herewith.

| **SELLER:** | **BUYER:** |
|---|---|
| | |
| **WINN-DIXIE** _____, **INC.**, a Florida corporation | _____., a _____ |
| | |
| By:_____ | By:_____ |
| Name:_____ | Name:_____ |
| Title: _____ President | Title: _____ |

**Notes:**

(1)    <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(2)    <u>Inventory Price Adjustments</u>.  The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement.  Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement.  The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period.  To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

Exhibit C-2
Page 2 of 3

(3)    <u>Inventory Service Fees</u>. The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same. Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4)    <u>Capitalized Terms</u>. Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

### **<u>DISBURSEMENT SCHEDULE</u>**

<u>RECEIPTS</u>:

1.    Total Amount Due From Buyer    $ _____

TOTAL CASH RECEIVED:    $          $ _____

<u>DISBURSEMENTS</u>:

1.    Winn-Dixie _____, Inc.    $ _____
(Seller's Proceeds and Reimbursement of Inventory Service Fee)

TOTAL DISBURSEMENTS:    $ _____
BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT
PURSUANT TO PURCHASE AGREEMENT:    $

Exhibit C-2
Page 3 of 3

EXHIBIT D
To Asset Purchase Agreement

<u>Schedule of Certain Excluded Personal Property</u>

[see attached schedules]

Source Jaguar internal accounting records    Prepared by management

Project Jaguar - Store 133
Leased Equipment List

| Center | Mfg | Type | Model | Descriptic | Quantity | Serial.. | Install Da | Lessor | Lease.. | Rent Amo | Lease Ter | Expire Da | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0133 | IBM | 8477 | 42Y | NETFINIT\ | 1 | M1941 | 5/15/2001 | CLC | 28649 | $35.17 | 48 | 6/30/2005 | POS |
| 0133 | IBM | 8477 | 42Y | NETFINIT\ | 1 | M4679 | 5/15/2001 | CLC | 28649 | $35.18 | 48 | 6/30/2005 | POS |
| 0133 | IBM | 6331 | B2N | IBM BLACI | 1 | XDCD0 | 5/15/2001 | CLC | 28649 | $6.69 | 48 | 6/30/2005 | Personal Computers |
| 0133 | IBM | 6331 | B2N | IBM BLACI | 1 | XDCF5 | 5/15/2001 | CLC | 28649 | $6.70 | 48 | 6/30/2005 | Personal Computers |
| 0133 | IBM | SAV2 | SFTW | IBM SAV2 | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 0133 | IBM | SAV2 | SVCS | SAV2 SER | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 0133 | DCC | 2500 | P3 | POWEREl | 1 | NSQJ11 | 6/17/2002 | CLC | 32361 | $181.37 | 36 | 6/30/2005 | Servers |
| 0133 | DCC | PV715N | 1U | DELL NAS | 1 | 22RB11 | 6/17/2002 | CLC | 32361 | $68.44 | 36 | 6/30/2005 | Servers |
| 0133 | DCC | E551 | 15MO | DELL E55` | 1 | | 6/17/2002 | CLC | 32361 | $0.00 | 36 | 6/30/2005 | Personal Computers |

Privileged and Confidential

Leased Equipment List
Store 2038

| Cen-ter | Mfg | Type | Model | Description | Qty | Serial | Install Date | Lessor | Lease | Rent | Term | Expires | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2038 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M1903 | 4/15/2001 | CLC | 28468 | $36.60 | 48 | 5/31/2005 | POS |
| 2038 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M4947 | 4/15/2001 | CLC | 28468 | $36.60 | 48 | 5/31/2005 | POS |
| 2038 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDFX0 | 4/15/2001 | CLC | 28468 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 2038 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDFX2 | 4/15/2001 | CLC | 28468 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VNT39 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VPK67 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VPL14 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VPL18 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VPL53 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VPN57 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VPP44 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VPP46 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC610 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2038 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC615 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2038 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC616 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2038 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC623 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2038 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC624 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2038 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC625 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2038 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC753 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VHA11 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | 4694 | S45 | POS REGISTER | 1 | VAX18 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2038 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 2038 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 2038 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | KM2H11 | 6/17/2002 | CLC | 32019 | $181.37 | 36 | 6/30/2005 | Servers |
| 2038 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | 3WRB11 | 6/17/2002 | CLC | 32019 | $68.44 | 36 | 6/30/2005 | Servers |
| 2038 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 6/17/2002 | CLC | 32019 | $0.00 | 36 | 6/30/2005 | Personal Computers |

**Other Leased Equipment**
Health Resource Computer System
Health Clinic Blood Pressur Machine
IVR Equipment

Leased Equipment List
Store 2040

| Mfg | Type | Model | Description | Qty | Serial | Install Date | Les-sor | Lease | Rent Amount | Term | Expires | Category |
|-----|------|-------|-------------|-----|--------|--------------|---------|-------|-------------|------|---------|----------|
| IBM | 6275 | D2U | C3333,32MB,3.2 GB | 1 | | 6/15/1999 | CLC | 21747 | $14.77 | 36 | 11/11/1911 | Personal Computers |
| IBM | 6275 | D2U | C3333,32MB,3.2 GB | 1 | | 6/15/1999 | CLC | 21747 | $14.77 | 36 | 11/11/1911 | Personal Computers |
| IBM | 6275 | D2U | C3333,32MB,3.2 GB | 1 | | 6/15/1999 | CLC | 21747 | $14.78 | 36 | 11/11/1911 | Personal Computers |
| IBM | 6546 | 0ANT | IBM G54 15 IN. CO | 1 | | 6/15/1999 | CLC | 21747 | $3.00 | 36 | 11/11/1911 | Personal Computers |
| IBM | 6546 | 0ANT | IBM G54 15 IN. CO | 1 | | 6/15/1999 | CLC | 21747 | $3.00 | 36 | 11/11/1911 | Personal Computers |
| IBM | 6546 | 0ANT | IBM G54 15 IN. CO | 1 | | 6/15/1999 | CLC | 21747 | $3.01 | 36 | 11/11/1911 | Personal Computers |
| LEX | 1255N | OPTS | LEX OPTRA S 1255N | 1 | | 6/15/1999 | CLC | 21747 | $16.90 | 36 | 11/11/1911 | Printers |
| IBM | 6275 | KXX | IBM KIOSK/TYPE AN | 1 | VDGTH | 5/20/2000 | CLM | 24694 | $15.05 | 36 | 11/11/1911 | Personal Computers |
| IBM | 6331 | KXX | IBM KIOSK 15IN MO | 1 | HXFR2 | 5/20/2000 | CLM | 24694 | $0.00 | 36 | 11/11/1911 | Personal Computers |
| IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0525 | 4/15/2001 | CLC | 28453 | $36.60 | 48 | 5/31/2005 | POS |
| IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M4740 | 4/15/2001 | CLC | 28453 | $36.60 | 48 | 5/31/2005 | POS |
| IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDKT2 | 4/15/2001 | CLC | 28453 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDKV8 | 4/15/2001 | CLC | 28453 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| CAP | GXT700 | | LIEBERT GXT700 | 1 | 1AF1T1 | 6/16/2001 | CLC | 29319 | $22.79 | 36 | 11/11/1911 | UPS |
| IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | W1VN11 | 8/17/2002 | CLC | 33300 | $181.37 | 36 | 8/31/2005 | Servers |
| DCC | PV715N | 1U | DELL NAS PV715N W | 1 | M8CK11 | 8/17/2002 | CLC | 33300 | $68.44 | 36 | 8/31/2005 | Servers |
| CAP | GXT2-150 | UPS | LIEBERT GXT2-1500 | 1 | | 12/16/2002 | CLC | 34512 | $27.09 | 36 | 12/31/2005 | UPS |
| DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 8/17/2002 | CLC | 33300 | $0.00 | 36 | 8/31/2005 | Personal Computers |

Leased Equipment List
Store 2056

| ID | Mfg | Type | Model | | Qty | Serial # | Install Date | Les-sor | Lease # | Category | Sub-Category | Rent | Lease Term | Expire Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 581 | CIS | 2651 | XM | lexmark 2651XM HIGH PERFO | 1 | | 01-Jul-04 | CIS | 04574 | | | $110.99 | 48 | 30-Jun-08 |
| 6658 | IBM | 6331 | B2N | IBM BLACK E54 15i | 1 | XDGH8 | 15-May-01 | CLC | 28699 | Personal Computers | Monitors | $6.69 | 48 | 30-Jun-05 |
| 6659 | IBM | 6331 | B2N | IBM BLACK E54 15i | 1 | XDGM0 | 15-May-01 | CLC | 28699 | Personal Computers | Monitors | $6.70 | 48 | 30-Jun-05 |
| 6656 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0818 | 15-May-01 | CLC | 28699 | POS | POS Controllers | $35.17 | 48 | 30-Jun-05 |
| 6657 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M1995 | 15-May-01 | CLC | 28699 | POS | POS Controllers | $35.18 | 48 | 30-Jun-05 |
| 14527 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 17-Jun-02 | CLC | 32025 | Personal Computers | Monitors | $0.00 | 36 | 30-Jun-05 |
| 14528 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | CWRB11 | 17-Jun-02 | CLC | 32025 | Servers | NAS Devices Storage | $68.44 | 36 | 30-Jun-05 |
| 14526 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | KM2H11 | 17-Jun-02 | CLC | 32025 | Servers | NT Servers | $181.37 | 36 | 30-Jun-05 |
| 28863 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 041090 | 01-Apr-96 | CLC1 | 07328 | POS | POS Scanner Scales | $12.54 | | |
| 28864 | SPI | 244030 | 010 | MAGELLAN SCANNER | 1 | 041091 | 01-Apr-96 | CLC1 | 07328 | POS | Scales | $12.54 | | |
| 34220 | SPI | 244030 | 010 | MAGELLAN SPI- MAGELLAN | 1 | 070458 | 01-Feb-97 | CLC1 | 12665 | POS | Scanner POS Scanner | $17.05 | | |
| 34221 | SPI | 244030 | 010 | SC SPI- MAGELLAN | 1 | 070459 | 01-Feb-97 | CLC1 | 12665 | POS | Scales POS Scanner | $17.05 | | |
| 34222 | SPI | 244030 | 010 | SC | 1 | 070460 | 01-Feb-97 | CLC1 | 12665 | POS | Scales | $17.05 | | |

Leased Equipment List
Store 2056

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 34223 | SPI | 244030 | 010 | SPI-MAGELLAN SC | 1 070461 | 01-Feb-97 | CLC1 | 12665 | POS | POS Scanner Scales | $17.05 |
| 34224 | SPI | 244030 | 010 | SPI-MAGELLAN SC | 1 070462 | 01-Feb-97 | CLC1 | 12665 | POS | POS Scanner Scales | $17.05 |
| 34225 | SPI | 244030 | 010 | SPI-MAGELLAN SC | 1 070463 | 01-Feb-97 | CLC1 | 12665 | POS | POS Scanner Scales | $17.05 |
| 34226 | SPI | 244030 | 010 | SPI-MAGELLAN SC | 1 070464 | 01-Feb-97 | CLC1 | 12665 | POS | POS Scanner Scales | $17.05 |
| 34227 | SPI | 244030 | 010 | SPI-MAGELLAN SC | 1 070483 | 01-Feb-97 | CLC1 | 12665 | POS | POS Scanner Scales | $17.05 |
| 34228 | SPI | 244030 | 010 | SPI-MAGELLAN SC | 1 070485 | 01-Feb-97 | CLC1 | 12665 | POS | POS Scanner Scales | $17.09 |
| 34399 | IBM | 4693 | 2S2D | DISTRIBUTED PO RE | 1 AR709 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $23.90 |
| 34400 | IBM | 4693 | 2S2D | DISTRIBUTED PO RE | 1 AR710 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $23.90 |
| 34401 | IBM | 4693 | 2S2D | DISTRIBUTED PO RE | 1 AR711 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $23.90 |
| 34402 | IBM | 4693 | 2S2D | DISTRIBUTED PO RE | 1 AR712 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $23.91 |
| 34392 | IBM | 4693 | 3S1I | TERMAINAL POS | 1 C9820 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $25.17 |
| 34393 | IBM | 4693 | 3S1I | TERMINAL POS | 1 C9823 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $26.91 |
| 34394 | IBM | 4693 | 3S1D | TERMINAL-SUPM POS | 1 C9824 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $28.20 |
| 34395 | IBM | 4693 | 3S1D | TERMINAL-SUPM | 1 C9825 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $28.20 |

Leased Equipment List
Store 2056

| 34396 | IBM | 4693 | 3S1D | POS TERMINAL-SUPM SAV2 | 1 | C9826 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $28.20 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 34397 | IBM | 4693 | 3S1D | POS TERMINAL-SUPM SAV2 | 1 | C9827 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $28.20 | | |
| 34398 | IBM | 4693 | 3S1D | POS TERMINAL-SUPM SAV2 | 1 | C9821 | 01-May-97 | CLC1 | 12839 | POS | POS Registers | $28.21 | | |
| 52760 | IBM | SAV2 | SVCS | SERVICES IBM SAV2 | 1 | | 01-Jul-01 | ICC | 23001 | Software | POS | $31.74 | 48 | 30-Jun-05 |
| 51721 | IBM | SAV2 | SFTW | SOFTWARE FIELDS | 1 | | 01-Jul-01 | ICC | 23001 | Software | POS | $99.96 | 48 | 30-Jun-05 |
| 54316 | PCG | ROI | SFTW | SOFTWARE | 1 | | 01-May-97 | PCG | 00000 | Software | POS | $0.00 | 60 | 30-Apr-02 |

**Other Leased Equipment**
Health Resource Computer System
Health Clinic Blood Pressur Machine
IVR Equipment

Leased Equipment List
Store 2068

| Mfg | Type | Model | Description | Qty | Serial . | Install Date | Les-sor | Lease . | Rent Amount | Term | Expire Date | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0633 | 6/15/2001 | CLC | 29529 | $36.60 | 48 | 7/31/2005 | POS |
| IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M2300 | 6/15/2001 | CLC | 29529 | $36.60 | 48 | 7/31/2005 | POS |
| IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XCWT9 | 6/15/2001 | CLC | 29529 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDMX0 | 6/15/2001 | CLC | 29529 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| IBM | 4610 | TS4 | THERMAL PRINTER | 1 | KAF00 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| IBM | 4610 | TS4 | THERMAL PRINTER | 1 | KAK30 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| IBM | 4610 | TS4 | THERMAL PRINTER | 1 | KAP83 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| IBM | 4610 | TS4 | THERMAL PRINTER | 1 | KAR42 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| IBM | 4610 | TS4 | THERMAL PRINTER | 1 | KAV05 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| IBM | 4610 | TS4 | THERMAL PRINTER | 1 | KAV13 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| IBM | 4610 | TS4 | THERMAL PRINTER | 1 | KAV15 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| IBM | 4610 | TS4 | THERMAL PRINTER | 1 | KAV31 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| IBM | 4610 | TS4 | THERMAL PRINTER | 1 | KBC43 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| IBM | 4694 | S45 | POS REGISTER | 1 | VGZ69 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| IBM | 4694 | S45 | POS REGISTER | 1 | VNT73 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| IBM | 4694 | S45 | POS REGISTER | 1 | VNW38 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| IBM | 4694 | S45 | POS REGISTER | 1 | VNW49 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| IBM | 4694 | S45 | POS REGISTER | 1 | VPN71 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| IBM | 4694 | S45 | POS REGISTER | 1 | VPN88 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| IBM | 4694 | S45 | POS REGISTER | 1 | VPP18 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | HTD83 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | HTD84 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | HTD87 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | HTD88 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | HTD89 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | HTD91 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | HTD93 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | HTD95 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | | | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | | | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | VBGL11 | 7/17/2002 | CLC | 32736 | $181.37 | 36 | 7/31/2005 | Servers |
| DCC | PV715I | 1U | DELL NAS PV715N W | 1 | P6CK11 | 7/17/2002 | CLC | 32736 | $68.44 | 36 | 7/31/2005 | Servers |
| DCC | E551 | 15MO | DELL E551 15INCH | | | 7/17/2002 | CLC | 32736 | $0.00 | 36 | 7/31/2005 | Personal Computers |

Leased Equipment List
Store 2076

| ID | Mfg | Type | Model | | Qty | Serial # | Install Date | Lessor | Lease # | Category | Sub-Category | Rent | Term | Expire Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 340 | CIS | 2651 | XM | lexmark 2651XM HIGH PERFO | 1 | | 01-Jul-04 | CIS | 04574 | Personal Computers | | $110.98 | 48 | 30-Jun-08 |
| 6666 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDGX2 | 15-May-01 | CLC | 28701 | Personal Computers | Monitors | $6.69 | 48 | 30-Jun-05 |
| 6667 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDGX4 | 15-May-01 | CLC | 28701 | Personal Computers | Monitors | $6.70 | 48 | 30-Jun-05 |
| 6664 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0840 | 15-May-01 | CLC | 28701 | POS | POS Controllers | $35.17 | 48 | 30-Jun-05 |
| 6665 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M1298 | 15-May-01 | CLC | 28701 | POS | POS Controllers | $35.18 | 48 | 30-Jun-05 |
| 14548 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 17-Jun-02 | CLC | 32032 | Personal Computers | Monitors | $0.00 | 36 | 30-Jun-05 |
| 14549 | DCC | PV715 | 1U | DELL NAS PV715N W | 1 | 3WRB11 | 17-Jun-02 | CLC | 32032 | Servers | NAS Devices Storage | $68.44 | 36 | 30-Jun-05 |
| 14547 | DCC | 2500 | P3 | POWEREDGE 2500 P3 7837-1000-9090 H/ | 1 | KM2H11 | 17-Jun-02 | CLC | 32032 | Servers | NT Servers | $181.37 | 36 | 30-Jun-05 |
| 39947 | NCR | SCANNER | 7837 | | 1 | 653613 | 16-Sep-01 | CLC1 | 30114 | POS | POS Hand Held Scanners | $3.41 | 48 | 30-Jun-05 |
| 50455 | IBM | 6331 | M2N | MONITOR 15 | 1 | WN939 | 01-Jul-01 | ICC | 22991 | Personal Computers | Monitors | $5.25 | 48 | 30-Jun-05 |
| 50456 | IBM | 6331 | M2N | MONITOR 15 | 1 | WN943 | 01-Jul-01 | ICC | 22991 | Computers | Monitors | $5.25 | 48 | 30-Jun-05 |
| 50457 | IBM | 6331 | M2N | MONITOR 15 | 1 | WN944 | 01-Jul-01 | ICC | 22991 | Computers | Monitors | $5.25 | 48 | 30-Jun-05 |
| 50459 | IBM | 6331 | M2N | MONITOR 15 WHITER | 1 | WN949 | 01-Jul-01 | ICC | 22991 | Personal Computers | Monitors | $5.25 | 48 | 30-Jun-05 |
| 50460 | IBM | 6331 | M2N | MONITOR 15 WHITER | 1 | WN950 | 01-Jul-01 | ICC | 22991 | Personal Computers | Monitors | $5.25 | 48 | 30-Jun-05 |
| 50461 | IBM | 6331 | M2N | MONITOR 15 WHITER THERMAL | 1 | WN955 | 01-Jul-01 | ICC | 22991 | Computers | Monitors | $5.25 | 48 | 30-Jun-05 |
| 47678 | IBM | 4610 | TS4 | PRINTER | 1 | KAV87 | 01-Jul-01 | ICC | 22986 | POS | Thermal Printers | $19.00 | 48 | 30-Jun-05 |
| 47679 | IBM | 4610 | TS4 | PRINTER | 1 | KAW21 | 01-Jul-01 | ICC | 22986 | POS | Thermal Printers | $19.00 | 48 | 30-Jun-05 |
| 47680 | IBM | 4610 | TS4 | PRINTER | 1 | KAW24 | 01-Jul-01 | ICC | 22986 | POS | Thermal Printers | $19.00 | 48 | 30-Jun-05 |
| 47681 | IBM | 4610 | TS4 | PRINTER | 1 | KAX05 | 01-Jul-01 | ICC | 22986 | POS | Thermal Printers | $19.00 | 48 | 30-Jun-05 |
| 47682 | IBM | 4610 | TS4 | PRINTER | 1 | KAX11 | 01-Jul-01 | ICC | 22986 | POS | Thermal Printers | $19.00 | 48 | 30-Jun-05 |
| 47683 | IBM | 4610 | TS4 | PRINTER | 1 | KAX15 | 01-Jul-01 | ICC | 22986 | POS | Thermal Printers | $19.00 | 48 | 30-Jun-05 |
| 47684 | IBM | 4610 | TS4 | PRINTER | 1 | KAX24 | 01-Jul-01 | ICC | 22986 | POS | Thermal Printers | $19.00 | 48 | 30-Jun-05 |
| 52770 | IBM | SAV2 | SVCS | SERVICES | 1 | | 01-Jul-01 | ICC | 23001 | Software | POS | $31.74 | 48 | 30-Jun-05 |

Leased Equipment List
Store 2076

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 44303 IBM | S45 | POS REGISTER | 1 TXC43 | 01-Jul-01 ICC | 22980 | POS | POS Registers | $51.00 | 48 | 30-Jun-05 |
| 44304 IBM | S45 | POS REGISTER | 1 VHA77 | 01-Jul-01 ICC | 22980 | POS | POS Registers | $51.00 | 48 | 30-Jun-05 |
| 44305 IBM | S45 | POS REGISTER | 1 VKH48 | 01-Jul-01 ICC | 22980 | POS | POS Registers | $51.00 | 48 | 30-Jun-05 |
| 44307 IBM | S45 | POS REGISTER | 1 VKM18 | 01-Jul-01 ICC | 22980 | POS | POS Registers | $51.00 | 48 | 30-Jun-05 |
| 44308 IBM | S45 | POS REGISTER | 1 VMP62 | 01-Jul-01 ICC | 22980 | POS | POS Registers | $51.00 | 48 | 30-Jun-05 |
| 44309 IBM | S45 | POS REGISTER | 1 VNW37 | 01-Jul-01 ICC | 22980 | POS | POS Registers | $51.00 | 48 | 30-Jun-05 |
| 44310 IBM | S45 | POS REGISTER IBM SAV2 | 1 VPN54 | 01-Jul-01 ICC | 22980 | POS | POS Registers | $51.00 | 48 | 30-Jun-05 |
| 51731 IBM | SFTW | SOFTWARE FIELDS | 1 | 01-Jul-01 ICC | 23001 | Software | POS | $99.96 | 48 | 30-Jun-05 |
| 54040 PCG | SFTW | SOFTWARE ( | 1 | 01-Jun-93 PCG | 00000 | Software | POS | $0.00 | 60 | 31-May-98 |

**Other Leased Equipment**
TRM Copier

EXHIBIT E
To Asset Purchase Agreement

Base Purchase Price Allocation; Base Deposit

| Store No. | Base Purchase Price | Base Deposit |
|---|---|---|
| 133 | $150,000 | $15,000 |
| 2038 | $25,000 | $10,000 |
| 2040 | $800,000 | $80,000 |
| 2056 | $400,000 | $40,000 |
| 2068 | $25,000 | $10,000 |
| 2076 | $25,000 | $10,000 |
| TOTAL | $1,425,000 | $165,000 |

EXHIBIT F
To Asset Purchase Agreement

Permitted Encumbrances

1.    Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2005 and subsequent years.

2.    All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.    Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.    Rights of Landlords under the Leases, including the rights of any Landlord's mortgagee (provided that the foregoing is not intended to modify the definition of Assumed Liabilities in this Agreement).

5.    Rights of Subtenants under the Subleases (provided that the foregoing is not intended to modify the definition of Assumed Liabilities in this Agreement).

6.    All matters set forth as exceptions in the Initial Title Reports or the site plans, other than Monetary Liens.

7.    All other matters set forth as exceptions in those Title Reports other than the Initial Title Reports, other than Monetary Liens and other than easements, covenants, conditions or restrictions created or permitted by Seller in violation of Section 8.1 of the Asset Purchase Agreement.

8.    All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens and other than easements, covenants, conditions or restrictions created or permitted by Seller in violation of Section 8.1 of the Asset Purchase Agreement.

EXHIBIT G
To Asset Purchase Agreement

<u>Form of</u>
<u>Lease Assignment</u>

## ASSIGNMENT AND ASSUMPTION OF LEASE

[Store #_____, _____, _____]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 200__ (the "Effective Date"), by and between **WINN-DIXIE** _____, **INC.** a Florida corporation (hereinafter referred to as "Assignor"), and **FOOD LION, LLC,** a North Carolina limited liability company (hereinafter referred to as "Assignee");

### RECITALS:

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached <u>Exhibit A</u> (the "Premises") as more particularly described in the Asset Purchase Agreement dated _____, 2005 by and among Assignor, as seller, Assignee, as buyer, and Winn-Dixie Stores, Inc., as amended from time to time (the "Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on attached <u>Exhibit A</u> (the "Lease"), and all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, together with all amendments thereto, described on <u>Exhibit A</u> (the "Subleases"); and Assignee has agreed to assume and perform certain of Assignor's liabilities and obligations arising under the Lease and the Subleases after the Effective Date, all subject to and in accordance with the terms of the Lease, the Subleases, the Agreement and this Assignment;;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **RECITALS; DEFINITIONS; EFFECTIVE DATE**.  The foregoing Recitals are true and correct and are a material part of this Assignment.  Capitalized terms not otherwise defined in this Assignment will have the meanings assigned to such terms in the Agreement. This Assignment will be effective as of the Effective Date.

2.    **ASSIGNMENT**.  Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.  Assignor hereby agrees that it will remain, and will be, responsible for all liabilities and obligations of the tenant or lessee that have accrued under the Lease prior to the Effective Date, and Assignor hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignee from and against all liabilities and obligations of the tenant or lessee that have accrued under the Lease prior to the Effective Date.

3.    **ASSUMPTION**.    Assignee hereby accepts the aforesaid assignment and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

4.    **Intentionally Omitted**.

5.    **NOTICES**.  All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below.  Each communication will be deemed duly given and received: (a) as of the date and time the same is personally delivered with a receipted copy; (b) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (c) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (d) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received  by the transmitting party if not during normal business hours for the recipient.

|  |  |
|---|---|
| If to Assignor: | Winn-Dixie _____, Inc.; Re: Store #_____<br>Attn: Chief Development Officer<br>5050 Edgewood Court<br>P.O. Box B<br>Jacksonville, FL 32203-0297<br>Telefax No.: 904 370 6748 |
| With a copy to: | Winn-Dixie Stores, Inc.<br>Attn: General Counsel<br>5050 Edgewood Court<br>P.O. Box B<br>Jacksonville, FL 32203-0297<br>Telefax No.: 904 783 5138 |

or to such other address or telefax number as Assignor may direct from time to time.

|  |  |
|---|---|
| If to Assignee: | Food Lion, LLC<br>P.O. Box 1330<br>2110 Executive Drive<br>Salisbury, NC  28145-1330<br>Attn:  Real Estate Department<br>Telefax No.  704-636-4940 |
| With a copy to: | Food Lion, LLC<br>P.O. Box 1330<br>2110 Executive Drive<br>Salisbury, NC  28145-1330<br>Attn:  Legal Department<br>Telefax:  704-639-1353 |

or to such other address or telefax number as Assignee may direct from time to time.

6.    **NOTICE OF ASSIGNMENT**.  On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease (in a mutually agreeably form) and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Assignment.

7.    **BINDING EFFECT**.  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

8.    **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no

circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

9.    **NO BROKERS**. The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached <u>Exhibit B</u>, and that due by Assignee to Assignee's Brokers, if any, as described on the attached <u>Exhibit B</u>. Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment.    Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises.    Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

10.    **ATTORNEYS' FEES**.  If Assignor becomes a party to any suit or proceeding affecting the Premises or involving this Assignment or Assignee's interest under this Assignment, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Assignment, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Assignment, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand. All references in this Assignment to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment and appellate levels and in connection with bankruptcy proceedings.

11.    **WAIVER OF JURY TRIAL**.  Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Subleases makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease or the Subleases undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Subleases.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE** _____, **INC.,** a
Florida corporation

_____
Name:_____

By:_____
Name: _____
Title: Vice President

_____
Name:_____

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

_____, a

_____

By:_____

Name:_____

_____    Title:_____

Name:_____

_____        [SEAL]

Name:_____

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

Exhibit A

Description of Premises and Lease

STORE #:

STREET ADDRESS:

SHOPPING CENTER:

LEASE:

AMENDMENTS TO LEASE:

SUBLEASES:

AMENDMENTS TO SUBLEASES:

Exhibit B

<u>Schedule of Brokers</u>

<u>EXHIBIT B-1</u>

<u>ASSIGNOR'S BROKERS</u>:[3]

> The Blackstone Group L.P.
> 345 Park Avenue
> New York, New York  10154
>
> The Food Partners, LLC
> 1250 Eye Street, N.W.
> Suite 850
> Washington, D.C.  20005
>
> DJM Asset Management, LLC
> 445 Broad Hollow Road
> Suite 417
> Melville, New York  11747

<u>EXHIBIT B-2</u>

<u>ASSIGNEE'S BROKERS</u>:

---

[3] Modify for particular transaction to reflect the area more listed brokers which is acting as Seller's Broker for the transaction.

EXHIBIT H
to Asset Purchase Agreement

Form of Inventory Certificate

**INVENTORY CERTIFICATE**

| Store #: _____ | Date: _____/_____/ |
|---|---|
| Store Address: | Time: _____ : _____ AM  PM |

|  | Inventory Taken @ Retail | Valuation Percentage | Inventory @ Cost |
|---|---|---|---|
| Dry Grocery Taken @ Retail | $ | x  77.00% | $ |
| Frozen Grocery Taken @ Retail | $ | x  65.00% | $ |
| Dairy Taken @ Retail | $ | x  86.00% | $ |
| Tobacco Taken @ Retail | $ | x  82.00% | $ |
| Alcohol Taken @ Retail | $ | x  85.00% | $ |
| Packaged Lunch Meats Taken @ Retail | $ | x  68.00% | $ |
| Pharmaceutical Taken @ Cost | | | $ |
| Gasoline Taken @ Cost | | | $ |
|  | $ | x _____% | $ |
|  | $ | x _____% | $ |
|  | $ | x _____% | $ |
| Total Inventory | | | $ |

_____  ___/___/___
Seller's Authorized Agent                    Date

_____  ___/___/___
Buyer's Authorized Agent                    Date