Case 3:05-bk-03817-JAF   Doc 2634-2   Filed 07/29/05   Page 1 of 3

LAW OFFICES

# CHURCH, SEAY & MINOR, P.C.
1609 COGSWELL AVENUE
PELL CITY, ALABAMA 35125

BILLY L. CHURCH
PHILIP K. SEAY
ROBERT L. MINOR
MATT ABBOTT*

TELEPHONE (205)338-2295
FACSIMILE  (205)338-4930
churchandseay@churchfirm.com

*also member Mississippi Bar

October 26, 2004

Todd N. Hamilton, Esq.
Steven M. Brom Esquire
Smith, Spires & Peddy, P.C.
2015 Second Ave. North, Suite 200
Birmingham, Alabama 35203

RE: *Betty Terrell, an individual, vs. Winn-Dixie Montgomery, Inc., et al.*
In the Circuit Court of St. Clair County, Alabama
Civil Action No.: CV 03 -309

Gentlemen:

As a follow up to Plaintiff's Responses to Defendant's First Interrogatories and Requests for Production, and in response to your client's request for the same, I provide this letter as a formal, written demand for settlement, enclosing a "portfolio of medical specials," including the medical bills and records plaintiff argues are directly related to this case.

As you know, on October 18, 2001, Mrs. Terrell fell over some type of protruding drain cover and/or electrical outlet cover in the floor of the frozen food aisle of the Pell City Winn-Dixie. Immediately after falling, she was taken by her son to the St. Clair Regional Hospital Emergency Room. Mrs. Terrell was treated at the Emergency Room by Drs. Cranford and Tuck. It was noted initially that she had complaints of pain in the left shoulder, left arm and left rib area and had contusions to both knees. X-rays were taken which revealed an avulsion fracture of the greater tuberosity (left). The left arm/shoulder was placed in a sling and prescriptions for pain medications were issued. She was instructed to follow up with orthopedic surgeon Carter E. Slappey, M.D.

On October 22, 2001, Mrs. Terrell sought treatment from Dr. Slappey at the St. Clair Regional Hospital Orthopedic Surgery Clinic. Dr. Slappey confirmed the diagnosis of a fracture to the greater tuberosity (left), and placed her in a shoulder immobilizer, prescribing Percoset for pain and scheduling her for a return visit in one week. Mrs. Terrell saw Dr. Slappey for follow-up on October 29, 2001. She was x-rayed again, and due to symptoms of nausea, her prescription for Percoset was changed to Wygesic. Mrs. Terrell saw Dr. Slappey again on


PLAINTIFF'S EXHIBIT B

Demand Letter to Hamilton
and Brom
October 26, 2004
Page Two

---

November 15, 2001, approximately four (4) weeks post-fall. At that time, the shoulder immobilizer was removed and the arm/shoulder was placed in a sling. X-rays were again taken and physical therapy was prescribed. Between November 15, 2001, and January 2, 2002, Mrs. Terrell attended 15 physical therapy sessions at the St. Clair Regional Hospital Department of Physical Therapy. Two additional follow-up visits were scheduled with Dr. Slappey. Her final visit with Dr. Slappey was on January 3, 2002. At that time, Dr. Slappey expressed concerns and noted that she was still having marked pain and weakness in her left arm. Dr. Slappey ordered an MRI which revealed a full-thickness rotator cuff tear (left). He recommended surgery to repair the torn rotator cuff.

On October 24, 2001, and November 5, 2001, Mrs. Terrell saw Barry G. Collins, M.D. of Northside Medical Associates, Inc., her primary care physician, for evaluation/monitoring of the fractured left shoulder. Dr. Collins also ordered x-rays of Mrs. Terrell's knees and ribs which were painful after the fall.

Mrs. Terrell was concerned over Dr. Slappey's recommendation of surgery to repair of the shoulder and requested a referral for a second opinion from Dr. Hrynkiw, a neurosurgeon who treated her in the past for back problems. Dr. Hrynkiw referred Mrs. Terrell to Stephen P. Cowley, M.D., of Montclair Orthopedic Surgeons for a second opinion on January 22, 2002. After evaluating Mrs. Terrell and reviewing her MRI, Dr. Cowley felt she had adhesive capsulitis in addition to the rotator cuff tear. He recommended that Mrs. Terrell have a manipulation under anesthesia and arthroscopic repair of the torn rotator cuff. He felt that due to the adhesive capsilitis, her postoperative recovery would be somewhat complicated.

Greatly concerned over the surgical prognosis, Mrs. Terrell sought a third opinion/evaluation from E. Lyle Cain, M.D., of the Alabama Sports Medicine and Orthopedic Center on October 28, 2002. Dr. Cain was recommended by a friend of Mrs. Terrell who was also a nurse. Dr. Cain, after reviewing the diagnostics, noted a nonunion of the large greater tuberosity fragment and rotator cuff tear. He felt that the repair of the rotator cuff would be an extensive procedure. Because of Mrs. Terrell's age, the extensiveness of the procedure and the fact that there was no certainty that even with good surgical outcome Mrs. Terrell would regain strength in her shoulder because of rotator atrophy and length of nonuse, Dr. Cain did not recommend surgery so long as Mrs. Terrell could tolerate the pain.

Presently, Mrs. Terrell participates in a pain management program with Dr. Collins, her family doctor, in Pell City. The pain management program relates to treatment for her left arm/shoulder, back and other arthritic issues. Mrs. Terrell is presently under a prescription for MS Contin to control her pain. The medical records and bills for Dr. Collins and this pain management program are produced in response to your client's discovery requests. However,

Demand Letter to Hamilton
and Brom
October 26, 2004
Page Three

---

and as a good faith effort toward settlement, Plaintiff will agree to make no claim in this demand for medical bills associated with the pain management program, reserving the right to make such claim at a later date should settlement negotiations prove unsuccessful.

Accordingly, medical records and bills totaling $6,701.00 from the following health care providers are enclosed herein:  (1) St. Clair Regional Hospital ($1,239.00); (2) Birmingham Radiological Group, P.C. ($41.00); (3) Carter E. Slappey, M.D. ($440.00); (4) Open MRI of Oxford ($1,199.00); (5) St. Clair Regional Hospital Department of Physical Therapy ($3,219.00); (6) Barry G. Collins, M.D. ($264.00); (7) Stephen P. Cowley, M.D. ($129.00); and (8) Edward L. Cain, M.D. ($170.00).

The medical records clearly indicate that Mrs. Terrell sustained a fractured left shoulder and left rotator cuff tear on October 18, 2001, directly related to her fall at Winn-Dixie, and that she has continued to suffer from symptoms including pain and limited range of motion secondary to that fall.  The diagnoses reported by her healthcare providers are medically consistent with the well-documented mechanism of injury.  Mrs. Terrell sought medical care in a timely and conservative fashion, choosing not to have surgery rather than enduring the pain and suffering associated with a highly extensive surgical procedure and recovery.  Mrs. Terrell, though improved, continues to suffer and may require future treatment, including surgery should the pain become unbearable.

Liability in this case is predicated on a "defective premises" theory, and as such, it is not necessary to prove notice and/or knowledge of the defective, dangerous condition. Accordingly, summary judgment is highly unlikely in this case.  However, and in an effort to avoid the extended time and expense associated with continued litigation, Mrs. Terrell has given me the authority to accept **One Hundred Thousand Dollars ($100,000.00)** in exchange for a full and final settlement of any and all claims she may have against your client.  Please let me know your client's position on settlement once you have had an opportunity to review the enclosed information. I look forward to hearing from you soon.

With highest personal regards, I remain,

Very truly yours,

Matt Abbott

MA/eb
Enclosures
cc:    Mrs. Betty Terrell