# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

## ORDER APPROVING DEBTORS' (A) SALE OF ASSETS FREE AND CLEAR OF LIENS, (B) ASSUMPTION AND ASSIGNMENT OF LEASES AND (C) RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 (a) authorizing the Debtors to sell leasehold interests, equipment, inventory and if the respective store contains a pharmacy, the pharmacy scrips, including the assets described in the asset purchase agreement attached as Exhibit A for Store Number 2731 (the "Purchase Agreement"), free and clear of liens, claims, interests and encumbrances to Y.M. Lee, Inc. (the "Purchaser"), (b) determining that the sale is exempt from any stamp, transfer, recording or similar tax, (c) authorizing the Debtors to assume and assign all unexpired leases identified in the Purchase Agreement in connection with the sale, (d) fixing cure amounts for the Lease, and (e) granting related relief (the "Motion"). By the Motion, the Debtors assert that the only cure required for Store No. 2731 (the "Lease") is the payment of $19,367.38 (the "Cure Amount"). The affected landlords were given until July 14, 2005 to object to the

Debtors' Cure Amount. The affected landlords failed to file an objection. The Court held a hearing on the Motion on July 28, 2005 to approve the sale (the "Sale Hearing"). The Court has reviewed the Motion and heard the representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact.

      A.     This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

      B.     The Debtors solicited the highest or otherwise best offer for the assets described in the Purchase Agreement (the "Assets"), in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures"). A competing bid was received for the Assets and the Debtors conducted an auction for the Assets on July 18, 2005 (the "Auction"). At the Auction, the Purchaser submitted the final bid of $50,000, plus supplies (at $2,500 per store) and inventory at a percentage of retail, representing the highest or otherwise best offer received for the Assets.

      C.     The Debtors have provided interested parties (including all parties asserting claims or interests in the Assets, if any) with proper notice of the Motion, the Sale Hearing,[1] the Auction, the assumption and assignment of the Lease, and the fixing of any cure amounts, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

---

[1]    All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion.

D.      The Debtors marketed the Assets and conducted the sale process in compliance with the Order approving the Bidding Procedures, the Bidding Procedures, the Bankruptcy Code and all other Orders entered in these cases.  The bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets.  In their sound business judgment, the Debtors determined that the bid submitted by the Purchaser at the Auction represented the highest or otherwise best offer for the Assets.

E.      The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A, the Assumption and Assignment Agreement attached as Exhibit G to the Purchase Agreement, and all related documents, and the sale of the Assets and the assumption and assignment of the Lease has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii)  no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

F.      The Debtors have good business reasons to sell the Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

G.      Neither the Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

H.      The Debtors and the Purchaser proposed, negotiated and entered into the Purchase Agreement, without collusion, in good faith and at arms'-length bargaining positions.  Neither the Debtors nor the Purchaser have engaged in any conduct

3

that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

I.      The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the protections afforded by that section.

J.      The consideration the Purchaser is providing to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value.

K.      The Debtors' sale of the Assets and the assumption and assignment of the Lease will facilitate the formulation and confirmation of a plan of reorganization. For this reason, the Debtors' sale of the Assets and the assumption and assignment of the Lease constitute transfers to which 11 U.S.C. § 1146(c) applies.

L.      The Debtors' transfer of the Assets to the Purchaser pursuant to the Purchase Agreement and the Assumption and Assignment Agreement, attached to the Purchase Agreement, will be a legal, valid, and effective transfer of the Assets.  The Debtors' transfer of the Assets to the Purchaser vests the Purchaser with good and valid title in and to the Assets free and clear of any liens, claims, encumbrances, pledges, mortgages, security interests, charges, options or other interests of any kind or nature (collectively, the "Claims and/or Interests"), with the exception of the Permitted Encumbrances and the Assumed Liabilities, if any, as defined in the Purchase Agreement.  Any non-assumed Claim and/or Interest will attach to the proceeds of the sale with the same validity, enforceability and priority they now have as against the Assets, subject to any rights, claims, defenses and objections of the Debtors, Wachovia Bank National Association, as Administrative Agent and Collateral Agent for itself

4

("Agent") and the other financial institutions from time to time parties to the Credit Agreement dated as of February 23, 2005, as may be amended or modified (collectively, "Lenders" and together with Agent, collectively, the "DIP Lender") and all other interested parties with respect to such Claims and/or Interests.

M.      The Debtors may sell and transfer the Assets in accordance with the terms and conditions of the Purchase Agreement free and clear of all Claims and/or Interests (except the Permitted Encumbrances and the Assumed Liabilities) because any entity with any Claims and/or Interests in the Assets to be transferred (i) has consented to the Sale (including the assumption and assignment of the Lease) or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claims and/or Interests; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.   Holders of Claims and/or Interests, if any, who did not object, or who withdrew their objections to the Sale Motion are deemed to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2).

N.      The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing

Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

O.    The Debtors' assumption and assignment of the Lease in connection with the Sale is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

P.    The Debtors have provided the landlord of the Lease with adequate assurance that they will promptly cure any defaults under the Lease pursuant to 11 U.S.C. §§ 365(b)(1).

Q.    Pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006, the Cure Amount constitutes all amounts due and owing under the Lease and will be fixed and allowed for the Lease. No other amounts are due and owing by the Debtors under the Lease. The Debtors will pay the Cure Amount in accordance with the terms and provisions of the Purchase Agreement. Upon payment of the Cure Amount, all defaults, if any, under the Lease will be deemed cured.

R.    The Purchaser has provided the landlord for the Lease with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B).

S.    No default of the type described in 11 U.S.C. § 365(b)(2)(D) exists under the Lease.

T.    Except as expressly set forth in the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Assets or the Lease by virtue of the transfer of the Assets and the assumption and assignment of the

6

Lease to the Purchaser. The Purchaser will not be deemed, as a result of any action taken in connection with the purchase of the Assets or the assumption and assignment of the Lease to (i) be a successor to the Debtors (other than with respect to the Assumed Liabilities and any obligations arising under the assigned Lease from and after the closing); or (ii) have, *de facto* or otherwise, merged with or into the Debtors. The Purchaser is not acquiring or assuming any liability, warranty, or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement or in any assigned Lease.

U.     The Court's approval of the Purchase Agreement and the Assumption and Assignment Agreement is in the best interests of the Debtors, their estates and their creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted.

2.     All objections to the entry of this order or to the relief granted and requested in the Motion, including any objection to the proposed Cure Amount, that has not been withdrawn, waived or settled at or before the Sale Hearing, are denied and overruled on the merits.

3.     The Purchase Agreement and the Assignment and Assumption Agreement are each approved in all respects. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized (subject to applicable Closing conditions set forth in the Purchase Agreement), to consummate the Sale including transferring and conveying the Assets to the Purchaser, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

7

4.       Upon Closing, the Debtors are authorized, in accordance with 11 U.S.C. §§ 105(a), 363 and 365, to assume and assign the Lease to Purchaser.

5.       The Debtors have satisfied the requirements of 11 U.S.C. §§ 365(b)(1), (3) and 365(f)(2).

6.       The Lease will be assumed and assigned to the Purchaser, in accordance with their respective terms.   The assigned Lease will remain in full force and effect notwithstanding any provision in the Lease to the contrary (including provisions of the type described in 11 U.S.C. §§ 365(b)(2), (e)(1) and (f)(1)) which prohibit, restrict or condition such assignment or transfer).  All non-debtor parties to the Lease are deemed to have consented to the assignment, if consent was not otherwise obtained in accordance with the Purchase Agreement.

7.       Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Purchase Agreement and the Assignment and Assumption Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement.  The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Lease to Purchaser.

8.       Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Purchase

8

Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

9.       The Debtors will transfer the Assets to the Purchaser upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f) (except for the Permitted Encumbrances and Assumed Liabilities). The only Claims and/or Interests in the Assets are those of the landlord with respect to the applicable Lease being sold and assigned pursuant to the Purchase Agreement and the senior liens and superpriority administrative claims of the DIP Lender. The Claims and/or Interests of such landlord will be satisfied upon Closing by the Debtors' cure of any defaults under the respective Lease and the Debtors and the Purchasers demonstration of adequate assurance of future performance under 11 U.S.C. §365. The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender will attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

10.      The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Financing Order and the Loan Documents.

11.      The Debtors' transfer of the Assets pursuant to the terms of the Purchase Agreement is a transfer pursuant to 11 U.S.C. § 1146(c).

9

Accordingly, the making, delivery, filing or recording of any deeds, assignments or other transfer documents in connection with the sale (the "Transfer Instruments"), will not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax (including without limitation, any transfer or recordation tax applicable to deeds and/or security interests). All filing and recording officers are directed to accept for filing or recording, and to file or record the Transfer Instruments immediately upon presentation without payment of any such taxes.

12.    The Purchaser provided the Debtors with reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and applicable non-bankruptcy law. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

13.    All defaults, claims or other obligations of the Debtors arising or accruing under the Lease, if any, prior to assumption (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) will be cured by the Debtors in accordance with the Purchase Agreement, by paying the Cure Amount. No other or further monetary amounts or obligations are due or existing under the Lease by the Debtors, whether pursuant to 11 U.S.C. § 365(b)(1) or otherwise. The Debtors will pay any Cure Amount in accordance with the terms and provisions set forth in the Purchase Agreement.

14.    Pursuant to 11 U.S.C. § 365(k), upon the assignment of the Lease to the Purchaser, (a) the Debtors and their estates are relieved from any

10

and all liability for any breach of the Lease occurring after assignment to the Purchaser, and (b) the Purchaser is responsible for any and all claims and obligations under the Lease occurring or arising after the assignment.

15.     Subject to the terms of this Order, the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser assumes all rights and obligations of the Debtors under the Lease.

16.     All non-Debtor parties to the Lease are forever enjoined and estopped from contesting the Cure Amount and from asserting any default against the Purchaser which existed as of the date of the Sale Hearing.

17.     Upon the Debtors assignment of the Lease to the Purchaser, no default will exist under the Lease.  Upon entry of this Order and the assumption and assignment of the Lease, the Purchaser is deemed to be in compliance with all terms and provisions of the Lease.

18.     Subject to the terms and conditions of this Order, all entities that are presently, or upon Closing may be, in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors.  Prior to or upon the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims and/or Interests in the Assets (except for the Permitted Encumbrances and Assumed Liabilities), if any.  In the event any creditor fails to release its Claims and/or Interests in the Assets upon Closing, the Debtors are authorized to take any action necessary to do so including, to execute and file any statements, instruments, releases and other documents on such creditor's behalf.    The

11

Purchaser is also authorized to file, register or otherwise record a certified copy of this Order upon Closing in accordance with the terms of the Purchase Agreement and this Order. Once this Order is so filed, registered or otherwise recorded in accordance with the provisions of this Order, the Order constitutes conclusive evidence of the release of all Claims and/or Interests against the Assets as of the Closing (except for the Permitted Encumbrances and Assumed Liabilities).

19.    Upon Closing of the Sale of Assets in accordance with the Purchase Agreement and this Order, the Purchaser will be deemed to have acted in good faith in purchasing the Assets and Lease under the Purchase Agreement as that term is used in 11 U.S.C § 363(m). For that reason, any reversal or modification of the Order on appeal will not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

20.    The Debtors' transfer of the Assets to the Purchaser will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

21.    Other than the Permitted Encumbrances, the Assumed Liabilities and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related

00503096

to the Assets, including, the Lease. The Debtors' transfer of the Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state or territory.

22.     Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets and the Lease and a bill of sale transferring good and marketable title in the Assets to Purchaser. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

23.     This Order is effective as a determination that upon Closing any and all Claims and/or Interests (except for the Permitted Encumbrances and Assumed Liabilities), if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

24.     This Order is binding upon all entities who may be required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Assets.

25.     This Court retains exclusive jurisdiction to (a) enforce and implement the Purchase Agreement, the Assumption and Assignment Agreement, and any other agreements and instruments executed in connection

13

with the Purchase Agreement, (b) compel delivery of possession of the Assets to Purchaser, (c) resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement or Assignment Agreement, and (d) interpret, implement and enforce the provisions of this Order.

26.      The terms and provisions of the Purchase Agreement, the Assignment Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

27.      Except as may otherwise be provided for in the Purchase Agreement and/or all related documents, including, without limitation, claims arising from the Purchaser's performance and obligations under the Purchase Agreement, all related documents and this Order, upon Closing, all persons who hold Claims and/or Interests against the Debtors are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

28.      After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or

14

attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Interests or Claims or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

29.     To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in this Order will control.

30.     Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f), Federal Rules of Bankruptcy Procedure.

31.     Notwithstanding Fed. R. Bankr. P. 6004(g) and 6006(d), this Order will take effect immediately upon entry.

Dated this 26 day of July, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve a copy of this Order on all parties who received copies of the Motion.

15

00503096

# **EXHIBIT A**

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** is made effective as of JULY 18, 2005 (the "Effective Date"), by and among

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("Seller"), and **Y.M. LEE, INC.**, a Georgia corporation, or its permitted assignee pursuant to paragraph 17.5 of this Agreement ("Buyer").

### R E C I T A L S :

A.    Seller is the tenant of the supermarket store (the "Store"), listed on Exhibit A-1 to this Agreement by Seller's designated Store number, under the lease, including amendments thereto (the "Lease") described on Exhibit A-2 to this Agreement. The Store occupies the leased premises as described in the Lease (the "Leased Premises"), within the parcel or parcels of real property described on Exhibit A-2 to this Agreement associated with the Lease. Seller's leasehold interest in the Leased Premises pursuant to the Lease, together with those additional items described in paragraph 2.0 of this Agreement relating to the Leased Premises, hereinafter collectively are referred to as the "Assets."

B.    Seller desires to transfer and sell and Buyer has agreed to acquire and purchase the Assets, subject to the terms and conditions contained in this Agreement.

C.    Seller filed a voluntary petition (the "Petition") for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "Filing Date") and has operated its business as a debtor-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date. By order entered on April 13, 2005, the Chapter 11 bankruptcy case of Seller was transferred to the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") where it is being administered under case no. 05-03817-3F1 (the "Bankruptcy Case").

**IN CONSIDERATION OF $10.00 AND OTHER GOOD AND VALUABLE CONSIDERATION AND OF THE MUTUAL UNDERTAKINGS** of the parties hereto, it is agreed as follows:

1.0    **Defined Terms.**    Capitalized terms as used in this Agreement will have the following meanings when used herein.

    1.1    "Adequate Assurance Information" will mean financial and other information as may be requested by Seller to demonstrate to the Bankruptcy Court that Landlord and Subtenant are adequately assured of Buyer's future performance under the Lease, as required by Section 365(f) of the Bankruptcy Code, including if appropriate, a guaranty of Buyer's

obligations under the Lease and (where applicable) the Sublease by an Affiliate of Buyer with sufficient assets to provide adequate assurance of future performance.

1.2     "Affiliate" will have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.3     "Agreement" will mean this Asset Purchase Agreement dated as of the Effective Date including all Exhibits hereto.

1.4     "Approval Hearing" will mean one or more hearings held by the Bankruptcy Court to consider entry of the Sale Order relating to a Successful Bid.

1.5     "Assets" will have the meaning assigned in paragraph A of the Recitals to this Agreement.

1.6      "Bankruptcy Code" will have the meaning assigned in paragraph C of the Recitals to this Agreement.

1.7     "Bankruptcy Court" will have the meaning assigned in paragraph C of the Recitals to this Agreement.

1.8     "Bankruptcy Court Approval" will mean the entry of a Sale Order with respect to the Store by the Bankruptcy Court.

1.9     "Bankruptcy Case" will have the meaning assigned in paragraph C of the Recitals to this Agreement.

1.10    "Base Deposit" will have the meaning assigned in paragraph 3.2 of this Agreement.

1.11    "Base Purchase Price" will mean the amount set forth in paragraph 3.1 of this Agreement.

1.12    "Bidding Procedures" will mean the procedures approved by the Bankruptcy Court that will govern the selection by Seller of the Successful Bid for the Store.

1.13    "Bill of Sale" will mean a bill of sale substantially in the form of Exhibit B to this Agreement, pursuant to which Seller will sell and convey to Buyer at the Closing the Inventory, the Supplies, the Equipment and other tangible and intangible personal property constituting a portion of the Assets relating to the Store.

1.14    "Building" will have the meaning assigned in paragraph 2.2 of this Agreement.

1.15 "<u>Business Day</u>" will mean any day, other than Saturday, Sunday or any federal holiday recognized by businesses generally in Jacksonville, Florida.

1.16 "<u>Buyer</u>" will have the meaning assigned in the initial paragraph of this Agreement.

1.17 "<u>Buyer Inventory Representative</u>" will mean a person designated in writing by Buyer to act in such capacity.

1.18 "<u>Buyer's Closing Costs</u>" will mean: (a) fees and costs of Buyer's counsel relating to this transaction; (b) fees and costs incurred by Buyer to conduct Buyer's due diligence investigations of the Assets; (c) title insurance fees and costs, including title examination fees and title insurance premiums for the Title Policy (and the cost of any simultaneous issue mortgagee title insurance policy and any loan-related title insurance endorsements thereon); (d) documentary stamp tax or transfer tax, if any, payable in connection with the execution and delivery of the Conveyance Instrument; (e) recording fees payable in connection with recording the Conveyance Instrument in the appropriate public records; (f) cost of the Environmental Report, including any supplements or updates; (g) any loan closing costs incurred by Buyer, including costs of the lender's legal counsel, loan commitment fees, documentary stamp tax and intangible tax on the note and mortgage; (h) sales taxes, if any, payable in connection with the purchase and sale of the Equipment, Supplies and Inventory; (i) the fees and costs of the Closing Escrow Agent; and (j) the fees and costs of the Inventory Service.

1.19 "<u>Buyer's Escrowed Items</u>" will have the meaning assigned in <u>paragraph 14.3</u> of this Agreement.

1.20 "<u>Closing</u>" will mean the consummation of the assignment, assumption, sale and purchase of the Assets pursuant to this Agreement as indicated by delivery of the Conveyance Instrument and other documents contemplated by <u>paragraph 14</u> of this Agreement and the Purchase Price as contemplated in this Agreement, which will be deemed to occur at 12:01 a.m. on the Closing Date.

1.21 "<u>Closing Date</u>" will mean the date designated by Seller in writing, and reasonably acceptable to Buyer, that is between one day and 30 days following the Bankruptcy Court Approval.

1.22 "<u>Closing Statement</u>" will mean a statement in the form of <u>Exhibit C-1</u> to this Agreement (or in such other form as is prepared by Seller and reasonable acceptable to Buyer) reflecting the net amount due Seller at the Closing (other than in respect of the Inventory Price), after making the

adjustments described in <u>paragraph 3.3.3</u> of this Agreement and in other provisions of this Agreement.

1.23 "<u>Confidentiality Agreement</u>" will mean the existing letter agreement between Winn-Dixie and Buyer, regarding, among other things, confidentiality relating to the subject matter of this Agreement.  Buyer acknowledges and agrees that Seller is a beneficiary of the Confidentiality Agreement and is entitled to enforce all obligations of Buyer and exercise all rights and remedies of Winn-Dixie under such agreement, acting alone or acting jointly with Winn-Dixie.

1.24 "<u>Conveyance Instrument</u>" will have the meaning assigned in <u>paragraph 14.2</u> of this Agreement.

1.25 "<u>Credit Agreement Liens</u>" will mean liens and encumbrances created by Seller or Winn-Dixie pursuant to (i) the Credit Agreement, dated February 23, 2005, as amended, between Winn-Dixie and certain banks and financial institutions, as the same has been or may hereafter be amended, and (ii) documents executed by Winn-Dixie or Seller in connection with such Credit Agreement.

1.26 "<u>Cure Costs</u>" will mean amounts (if any) payable pursuant to Section 365(b) of the Bankruptcy Code upon the assumption of the Lease and the Sublease.

1.27 "<u>Damages</u>" will have the meaning assigned in <u>paragraph 16.5</u> of this Agreement.

1.28 "<u>Deposit</u>" will have the meaning assigned in <u>paragraph 3.3</u> of this Agreement.

1.29 "<u>Due Diligence Materials</u>" will mean, collectively, (i) the Lease, the Sublease (if any), the Title Reports and the Environmental Report, (ii) all other documents and materials provided or made available to Buyer for review (pursuant to the Confidentiality Agreement or otherwise) in hard copy, in electronic format, at the Store, on the Merrill Website, or otherwise and (iii) all documents and materials prepared by or for Buyer in connection with Buyer's investigations with respect to the Assets.

1.30 "<u>Effective Date</u>" will have the meaning assigned in the initial paragraph of this Agreement.

1.31 "<u>Environmental Report</u>" will have the meaning assigned in <u>paragraph 4.3</u> of this Agreement.

-4-

# CERTIFICATE OF SERVICE

**BAE SYSTEMS**

**Enterprise Systems Incorporated**
**11487 Sunset Hills Road**
**Reston, Virginia 20190-5234**

```
District/off: 113A-3        User: cartes           Page 1 of 1              Date Rcvd: Jul 29, 2005
Case: 05-03817             Form ID: pdfdoc         Total Served: 1


The following entities were served by first class mail on Jul 31, 2005.
aty        +Cynthia C. Jackson,   Smith Hulsey & Busey,   225 Water Street, Suite 1800,
             Jacksonville, FL 32202-4494

The following entities were served by electronic transmission.
NONE.                                                                      TOTAL: 0

           ***** BYPASSED RECIPIENTS *****
NONE.                                                                      TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.**

**First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jul 31, 2005**                    **Signature:** *Joseph Speetjens*