208 BI-LO Blvd.
Greenville, SC  29607
Attn: Chief Executive Officer
Facsimile:  (864) 234-6999

and

Southern Family Markets Acquisition LLC
7 Corporate Drive
Keene, NH  03431
Attn: Chief Executive Officer
Facsimile: (603) 354-4692

With copies to (which shall not constitute notice):

BI-LO, LLC
208 BI-LO Blvd.
Greenville, SC  29607
Attn:  Chief Financial Officer
Facsimile:  (864) 234-6999


BI-LO, LLC
208 BI-LO Blvd.
Greenville, SC  29607
Attn: General Counsel
Facsimile:  (864) 283-3610

and

Kilpatrick Stockton LLP
1100 Peachtree Street N.E.
Suite 2800
Atlanta, GA 30309
Attn:  Gregory K. Cinnamon
Facsimile: (404) 541-3157
e-mail:  gcinnamon@kilpatrickstockton.com

and

Southern Family Markets Acquisition LLC
7 Corporate Drive
Keene, NH  03431
Attn: Chief Financial Officer
Facsimile: (603) 354-4692
e-mail:  mgross@cswg.com

Southern Family Markets Acquisition LLC
7 Corporate Drive
Keene, NH 03431
Attn: Legal and Business Affairs
Facsimile: (603) 354-4694
e-mail: cwistrei@cswg.com

or such other address as any party may from time to time specify by notice to the other.

18.3    Notice of Certain Inquiries.    If any party is contacted, whether before or after any Closing and whether orally or in writing, by the United States Department of Justice or the Federal Trade Commission, or any similar state governmental authority, with respect to any transactions contemplated by this Agreement, such party will promptly notify the other party of such contact and describe the facts and circumstances thereof.

18.4    Brokers and Finders.    The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Agreement other than that due by Seller to Seller's Brokers and that due by Buyer to William Blair & Company, L.L.C.    Seller agrees to pay all fees and commissions claimed by Seller's Brokers as a result of the transaction contemplated by this Agreement, which fees and commissions will be considered payable with respect to a Store only if, as and when the relevant Closing contemplated by this Agreement occurs.    Except for Seller's Brokers, neither Seller nor Buyer has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with the sale of the Assets or this Agreement.    Seller and Buyer hereby indemnify and agree to hold harmless each other from and against any claims by any other Person for brokerage fees, commissions or other similar costs related to the purchase of the Assets and this Agreement by reason of Seller's or Buyer's own acts, said indemnifications by Seller and Buyer to survive the Closings or earlier termination of this Agreement.

18.5    Successors and Assigns.    This Agreement will be binding upon, and inure to the benefit of, the parties hereto and their respective successors, and permitted assigns.

18.6    Assignment.    Neither Seller nor Buyer may assign or delegate any duties or obligations under this Agreement without the prior written consent of the other, which consent may be granted or withheld in the sole discretion of the party whose consent is so required; provided, however, Seller acknowledges and agrees that either BI-LO or SFM may assign rights and obligations hereunder with respect to one or more Stores, in whole or in part, to any of their respective Affiliates. No such assignment by either of BI-LO or SFM shall release or relieve

Buyer of its liabilities and obligations hereunder, which shall remain in full force and effect notwithstanding any such assignment.

18.7    Amendments.  Except as otherwise provided herein, this Agreement may be amended or modified by, and only by, a written instrument executed by Seller and Buyer (and delivered physically or by facsimile transmission from any party or its counsel to the other party or its counsel) and subject to Bankruptcy Court Approval, if applicable.

18.8    Tax Deferred Exchange.  Notwithstanding anything to the contrary set forth in this Agreement, Seller expressly acknowledges that Buyer (or any Affiliate of Buyer to whom this Agreement may have been assigned) may elect to acquire the Assets or any portion thereof as replacement or exchange property in a transaction that will qualify as a tax deferred exchange of like-kind property under Section 1031 of the Internal Revenue Code of 1986, as amended; and, in such event, Buyer's rights under this Agreement with respect to such Assets will be assigned to a qualified intermediary, and such assignment may be made without any further consent of Seller.  Seller hereby expressly covenants and agrees to cooperate with Buyer or its affiliate, as shall be reasonably requested in consummating the acquisition of the Assets in a manner that will qualify as a tax deferred exchange of like-kind property as and when requested and conveying the Assets in accordance with instructions provided in connection therewith.  Seller shall not be obligated to bear any cost or expense in connection with such exchange.  In no event shall Buyer be relieved of any obligation or liability under this Agreement in connection with such exchange whether arising before or after such assignment or Closing.

18.9    Governing Law.  The application and effect of this Agreement as to any particular Store or Stores will be governed by and construed in accordance with the laws of the State in which such Store or Stores is located; the application and effect of this Agreement as to any matter of the rights and obligations of the parties generally will be governed by and construed in accordance with the laws of the State of Florida.

18.10   Merger of Prior Agreements.  This Agreement supersedes all prior agreements and understandings between the parties hereto, other than the Confidentiality Agreement, and (except for the Confidentiality Agreement) constitutes the entire agreement of the parties with respect to the matters contained herein.  **BUYER ACKNOWLEDGES ITS OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT CONTINUE AFTER THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT OR IN RESPECT OF CONFIDENTIAL INFORMATION THAT BECOMES THE PROPERTY OF BUYER AS A CONSEQUENCE OF CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.**

42

18.11 <u>Survival</u>.  Acceptance by Buyer of the Conveyance Instrument with respect to any Store shall constitute an acknowledgement by Buyer that all of Seller's representations, covenants and obligations under this Agreement with respect to such Store and all conditions to Buyer's obligations to close under this Agreement with respect to such Store have been performed, satisfied and/or waived.  Seller's and Buyer's representations, warranties, covenants and obligations under this Agreement shall not survive the Closing for such Store (but Seller's and Buyer's representations, warranties, covenants and obligations shall merge into the Conveyance Instrument for such Store), and shall have no further force or effect after the Closing for such Store, except that those covenants of Seller and Buyer under <u>paragraphs 3.3.4, 3.3.5, 17.5 and 18.4</u> of this Agreement with respect to any Store that are expressly provided to be performed after the Closing for such Store shall survive.

18.12 <u>Time is of the Essence</u>.  Time is of the essence of this Agreement.

18.13 <u>No Recordation</u>.  This Agreement will not be recorded in any public office or court other than as part of the Bankruptcy Court Approval process except that upon default it may be presented to a court of competent jurisdiction.

## 19.0  <u>Escrow Agent</u>.

19.1 <u>Duties</u>.  By signing a copy of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent.  Upon its receipt of funds from Buyer, Escrow Agent will receive and hold such funds, and interest, if any, accrued thereon, in trust to be disposed of in accordance with the provisions of this Agreement.

19.2 <u>Indemnity</u>.  Escrow Agent will not be liable to any party except for claims resulting from the negligence or willful misconduct of Escrow Agent. If the escrowed funds or interest, if any, accrued thereon is involved in any controversy or litigation, the parties hereto will jointly and severally indemnify and hold Escrow Agent free and harmless from and against any and all loss, cost, damage, liability or expense, including costs of reasonable attorneys' fees to which Escrow Agent may be put or which may incur by reason of or in connection with such controversy or litigation, except to the extent it is finally determined that such controversy or litigation resulted from Escrow Agent's negligence or willful misconduct.  If the indemnity amounts payable hereunder result from the fault of Buyer or Seller (or their respective agents), the party at fault will pay, and hold the other party harmless against, such amounts.  Otherwise, Buyer and Seller each will be responsible for one-half of such amounts.

19.3 <u>Dispute</u>.  If a written objection is filed within the time allowed or if Escrow Agent is in doubt as to its duties, Escrow Agent may continue to hold the escrowed funds and interest, if any, accrued thereon until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court, or Escrow Agent may interplead the same in such court and be relieved of any and

all liability therefor.  In any action or proceeding regarding the escrowed funds or interest, if any, accrued thereon brought by Escrow Agent or to which Escrow Agent is made a party, the Escrow Agent will be entitled to recover its reasonable costs and attorneys' fees (through appeal) from whichever of Seller or Buyer is not the prevailing party in such action or proceeding.  If there is no prevailing party, Seller and Buyer each shall be responsible for one-half of such costs and fees.

19.4    <u>Execution by Escrow Agent</u>.  Escrow Agent has executed this Agreement solely for the purpose of acknowledging and agreeing to the provisions of this <u>paragraph 19.</u>  Escrow Agent's consent to and execution of any modification or amendment of this Agreement other than this <u>paragraph 19</u> shall not be required.

20.0    **Waiver of Jury Trial.**  Buyer and Seller each acknowledge and agree that the nature of this Agreement makes a jury determination of any dispute arising out of this Agreement or relating to the transactions contemplated herein undesirable. Accordingly, Buyer and Seller each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Agreement or the transactions contemplated herein.

21.0    **Consent to Jurisdiction. THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.**

Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in <u>paragraph 18.2</u> of this Agreement shall be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum. If a court finds that subject-matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Middle District of Florida, Jacksonville Division, or if such court shall not have jurisdiction, then to the appropriate courts of the State of Florida sitting in Duval County, Florida.

22.0    **HSR Filings.**  The parties anticipate that the transactions contemplated hereby are exempt from review and filing under the HSR Act.  However, if such is not the case, Seller and Buyer shall each seek regulatory approval or HSR clearance

and prepare and submit, in a timely manner, all necessary filings for Seller and Buyer in connection with this Agreement under the HSR Act and the rules and regulations thereunder. Seller and Buyer shall request expedited treatment of such HSR Filing by the Federal Trade Commission, shall make promptly any appropriate or necessary subsequent or supplemental filings, and shall furnish to each other copies of all HSR Filings at the same time as they are filed with the appropriate governmental authority except to the extent such party is legally restricted from providing or believes, based where appropriate on the advice of counsel, that it should not provide such copies.

23.0    **Disclaimers and Waivers.**

23.1    NO RELIANCE ON DOCUMENTS. EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN PARAGRAPHS 5 AND 6 HEREOF (THE "CONTRACT WARRANTIES"), SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE TRUTH, ACCURACY OR COMPLETENESS OF ANY MATERIALS, DATA OR INFORMATION DELIVERED BY OR ON BEHALF OF SELLER TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY. BUYER ACKNOWLEDGES AND AGREES THAT ALL MATERIALS, DATA AND INFORMATION DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY OTHER THAN LEASES AND SUBLEASES (WHETHER DELIVERED OR MADE AVAILABLE ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE) ARE PROVIDED TO BUYER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF SUCH MATERIALS, DATA OR INFORMATION BY BUYER SHALL BE AT THE SOLE RISK OF BUYER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BUYER ACKNOWLEDGES AND AGREES THAT (A) ANY TITLE, ENVIRONMENTAL, ENGINEERING, SALES, FINANCIAL OR OTHER REPORT WITH RESPECT TO THE ASSETS WHICH IS DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER SHALL BE FOR GENERAL INFORMATIONAL PURPOSES ONLY, (B) BUYER SHALL NOT HAVE ANY RIGHT TO RELY ON ANY SUCH REPORT DELIVERED BY SELLER OR ANY AFFILIATE TO BUYER, BUT RATHER WILL RELY ON ITS OWN INVESTIGATIONS AND ANY REPORTS COMMISSIONED BY BUYER WITH RESPECT THERETO, AND (C) NEITHER SELLER, ANY AFFILIATE OF SELLER NOR THE PERSON WHICH PREPARED ANY SUCH REPORT DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER SHALL HAVE ANY LIABILITY TO BUYER FOR ANY INACCURACY IN OR OMISSION FROM ANY SUCH REPORT.

23.2    Disclaimers. EXCEPT FOR THE CONTRACT WARRANTIES, BUYER UNDERSTANDS AND AGREES THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESSED OR IMPLIED, WITH RESPECT TO THE ASSETS, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR

REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ASSETS WITH LAWS, THE ABSENCE OR PRESENCE OF HAZARDOUS MATERIALS OR OTHER TOXIC SUBSTANCES (INCLUDING WITHOUT LIMITATION MOLD OR ANY MOLD CONDITION), COMPLIANCE WITH ENVIRONMENTAL LAWS, THE TRUTH, ACCURACY OR COMPLETENESS OF ANY DOCUMENTS, MATERIALS, REPORTS OR OTHER INFORMATION PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE TO BUYER, OR ANY OTHER MATTER OR THING REGARDING THE ASSETS. EXCEPT AS EXPRESSLY PROVIDED TO THE CONTRARY IN THIS AGREEMENT, BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE ASSETS "AS IS, WHERE IS, WITH ALL FAULTS". EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT, BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND NEITHER SELLER NOR ANY AFFILIATE IS LIABLE FOR OR BOUND BY, ANY EXPRESSED OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE ASSETS OR RELATING THERETO PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER OR ANY AFFILIATE, OTHER THAN LEASES AND SUBLEASES TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE, OTHER THAN THE CONTRACT WARRANTIES.

BUYER ACKNOWLEDGES THAT BUYER'S ACCESS AND INSPECTION RIGHTS HAVE BEEN LIMITED AS SET FORTH IN THIS AGREEMENT AND THAT BUYER UNDERSTANDS THE RISKS ASSOCIATED WITH PURCHASING THE ASSETS ON THE BASIS OF SUCH LIMITED INVESTIGATIONS. UPON CLOSING, BUYER SHALL ASSUME THE RISK THAT ADVERSE MATTERS, INCLUDING BUT NOT LIMITED TO, CONSTRUCTION DEFECTS AND ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY BUYER'S INVESTIGATIONS.

BUYER FURTHER ACKNOWLEDGES THAT (1) THE CONTRACT WARRANTIES AS TO ANY STORE SHALL NOT SURVIVE THE CLOSING FOR SUCH STORE BUT SHALL MERGE INTO THE CONVEYANCE INSTRUMENT FOR SUCH STORE, AND SHALL HAVE NO FURTHER FORCE OR EFFECT AFTER THE CLOSING FOR SUCH STORE AND (2) THE LIABILITY OF SELLER UNDER OR WITH RESPECT TO THE CONTRACT WARRANTIES SHALL BE LIMITED TO

THE EXPRESS REMEDIES OF BUYER SET FORTH IN THIS
AGREEMENT.

BUYER REPRESENTS AND WARRANTS THAT THE TERMS OF
THE DISCLAIMERS, WAIVERS AND RELEASES CONTAINED HEREIN
AND THEIR CONSEQUENCES HAVE BEEN COMPLETELY READ
AND UNDERSTOOD BY BUYER, AND BUYER HAS HAD THE
OPPORTUNITY TO CONSULT WITH, AND HAS CONSULTED WITH,
LEGAL COUNSEL OF BUYER'S CHOICE WITH REGARD TO THE
TERMS OF SUCH DISCLAIMERS, WAIVERS AND RELEASES.
BUYER ACKNOWLEDGES AND WARRANTS THAT BUYER'S
EXECUTION OF THESE DISCLAIMERS, WAIVERS AND RELEASES IS
FREE AND VOLUNTARY.

23.3    Effect and Survival of Disclaimers.  Seller and Buyer acknowledge that the
provisions of this paragraph 23 are an integral part of the transactions
contemplated in this Agreement and a material inducement to Seller to enter into
this Agreement and that Seller would not enter into this Agreement but for the
provisions of this paragraph 23.  Seller and Buyer agree that the provisions of
this paragraph 23 shall survive Closing or any termination of this Agreement.

[Signature page follows]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**SELLER:**

**WINN-DIXIE    STORES,    INC.,** a    Florida corporation

By:_____

Name:____Bennett L. Nussbaum_____

Title:  SENIOR VICE PRESIDENT

**BUYER:**

**BI-LO, LLC,** a    Delaware    limited    liability company

By:_____  ✓

Name:_____

Title: _____

**SOUTHERN    FAMILY    MARKETS ACQUISITION LLC,** a Delaware limited liability company

By:_____  √

Name:_____

Title: _____

6033544694    C&S WHOLESALE GROCER                    218 P01/01 JUN 29 '05  2

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**SELLER:**

**WINN-DIXIE STORES, INC.,** a Florida corporation

By:_____
Name:_____
Title: Vice President

**BUYER:**

**BI-LO, LLC,** a Delaware limited liability company

By:_____
Name:_____
Title:_____

**SOUTHERN FAMILY MARKETS ACQUISITION LLC,** a Delaware limited liability company

By:_____
Name:  _Mark   Gross_
Title:  _President_

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**SELLER:**

**WINN-DIXIE STORES, INC.**, a Florida corporation

By:_____
    Name:_____
    Title: Vice President


**BUYER:**

**BI-LO, LLC,** a Delaware limited liability company


By: _____
    Name: _STEVEN L. ORTEGA_
    Title: _CHIEF FINANCIAL OFFICER-_
        _EXECUTIVE VICE PRESIDENT_

**SOUTHERN FAMILY MARKETS ACQUISITION LLC,** a Delaware limited liability company


By:_____
    Name:_____
    Title: _____

Acknowledged and agreed this ___ day of _____, 2005 for the limited purposes set forth in paragraph 19 of this Agreement:

**ESCROW AGENT:**

**NEAR NORTH NATIONAL TITLE LLC**

By: _____

Name: _____

Title: _____

## LIST OF EXHIBITS

| | | |
|---|---|---|
| Exhibit A-1 | - | List of Stores |
| Exhibit A-2 | - | Description of Leases and Leased Premises |
| Exhibit A-3 | - | Closed Stores |
| Exhibit A-4 | | Closing Schedule |
| Exhibit B | - | Form of Bill of Sale |
| Exhibit C-1 | - | Form of Closing Statement |
| Exhibit C-2 | - | Form of Inventory Closing Statement |
| Exhibit D | - | Schedule of Certain Excluded Personal Property |
| Exhibit E | - | Take Down Allocation |
| Exhibit F | - | Permitted Encumbrances |
| Exhibit G | - | Form of Conveyance Instrument |
| Exhibit H | - | Form of Inventory Certificate |
| Exhibit I | - | Form of Sale Approved Order |
| Exhibit J | - | Form of Landlord Estoppel Certificate |
| Exhibit K | - | Form of Subordination, Non-Disturbance and Attornment Agreement |
| Exhibit L | - | List of Current Title Reports |
| Exhibit M | - | List of Environmental Reports |
| Exhibit N | | List of Employees |

EXHIBIT A-1
To Asset Purchase Agreement

List of Stores

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 1004 | 512 Robertson Blvd. | Walterboro | Colleton | SC |
| 1010 | 1419 Chapin Road | Chapin | Lexington | SC |
| 1234 | 300 Knox Abbott Drive | Cayce | Lexington | SC |
| 1242 | 500-1 Old Greenville Hwy | Clemson | Pickens | SC |
| 1248 | 1703 Elm Street W | Hampton | Hampton | SC |
| 1938 | 3801 Tennessee Avenue | Chattanooga | Hamilton | TN |
| 1942 | 8530 Hixon Pike | Hixson | Hamilton | TN |
| 1944 | 8634 Hwy 58 | Harrison | Calumet | TN |
| 2004 | 525 Little Rock Road | Charlotte | Mecklenburg | NC |
| 2051 | 742 West Highway 27 | Lincolnton | Lincoln | NC |
| 2150 | 1329 West Highway 160 | Fort Mill | York | SC |
| 2151 | 1401 E. Main Street | Rock Hill | York | SC |
| 2156 | 158 Highway 274 | Lake Wylie | York | SC |
| 2160 | 1131 North Highway 321 | York | York | SC |
| 524 | 939 Alabama Street | Columbus | Lowndes | MS |
| 576 | 2312 Us Highway 45N | Columbus | Lowndes | MS |
| 1906 | 990 Cox Creek Parkway | Florence | Lauderdale | AL |
| 1913 | 100 Suite H Hwy 31 North | Athens | Limestone | AL |
| 1915 | 12290 Us Highway 231/431 | Meridianville | Madison | AL |
| 911 | 1805 Wayne Memorial Drive | Goldsboro | Wayne | NC |

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

## WINN-DIXIE STORE # 1004
Walterboro, South Carolina

Lease:              Lease dated June 17, 1983 between Small Properties, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

                    as evidenced by Short Form Lease dated June 17, 1983, recorded in Book 270, Page 41, of the public records of Colleton County, South Carolina.

Amendments/
Guaranty:

                    Supplemental Lease Agreement dated September 23, 1983

                    Assignment of Lease dated November 29, 1984

                    First Amendment to Lease dated August 17, 1994

                    Second Supplemental Lease Agreement dated November 13, 1995, recorded in Book 698, Page 255, of the public records of Colleton County, South Carolina

                    Notice of Transfer of Tenant's Interest in Lease dated June 29, 2000, recorded in Book 908, Page 124, of the public records of Colleton County, South Carolina

Premises:           That certain store building and related improvements located at 512 Robertson Boulevard, Walterboro, Colleton County, South Carolina

Legal Description:  The real property as more particularly described as follows:

                    SEE ATTACHED LEGAL DESCRIPTION

LEGAL DESCRIPTION

ALL that certain piece, parcel or tract of land, located lying and being in the County of Colleton, State of South Carolina, identified as Parcel "A", containing 4.17 acres, more or less, as shown on survey entitled "Survey for Small & Associates", prepared by W. Gene Whetsell, R.L.S., dated May 28, 1983 and having, according to said survey, the following metes and bounds, to-wit:

BEGINNING at an iron pin on the western edge of the right-of-way of U. S. Route #15, at the joint corner of the within tract and property belonging now or formerly to First National Bank, and running thence, along the joint line of said tracts, N. 79-44 W. 172.0 feet to a point; thence N. 10-17 E. 245 feet to an iron pin on the southern edge of the right-of-way of Robertson Boulevard; thence, along the edge of said right-of-way N. 79-41 W. 141.19 feet to a point; thence, N. 84-05 W. 33.55 feet to a point and N. 83-12 W. 181.0 feet to an old iron pin in the line of property now or formerly of Edith Black Brown; thence, running along the joint line of said tracts S. 10-24 W. 485.10 feet to an iron pin on the northern edge of the right-of-way of a 50 foot unnamed street; thence, along said right-of-way N. 79-42 E. 356.51 feet to a point in the line of a tract containing 0.80 acre, identified as Parcel "B" on said plat; thence, along the joint line of said parcel, N. 10-17 E. 222.56 feet to a point; thence, S. 79-44 E. 172.0 feet to a point on the western edge of the right-of-way of U. S. Route #15; thence, along said right-of-way N. 10-17 E. 32.0 feet to an iron pin in the line of property belonging now or formerly to First National Bank, the point and place of beginning.

EXHIBIT "B"

1004
512 Robertson Boulevard
Walterboro, South Carolina

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

## WINN-DIXIE STORE # 1010
Chapin, South Carolina

| | |
|---|---|
| Lease: | Lease dated November 5, 1990 between Chapin Development Company, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant; |
| | as evidenced by Short Form Lease dated March 22, 1991, recorded in Book 1800, Page 194, of the public records of Lexington County, South Carolina |
| Amendments/ Guaranty: | First Amendment to Lease dated March 22, 1991 |
| | Second Amendment to Lease dated December 8, 1995 |
| | Supplemental Lease Agreement dated January 31, 1997 |
| | Notice of Transfer of Tenant's Interest in Lease dated June 29, 2000, recorded in Book 5915, Page 72, of the public records of Lexington County, South Carolina |
| Premises: | That certain store building and related improvements located at 1419 Chapin Road, Chapin, Lexington County, South Carolina |
| Legal Description: | The real property as more particularly described as follows: |

SEE ATTACHED LEGAL DESCRIPTION

BK1800PG200

EXHIBIT "B"
LEGAL DESCRIPTION
OF
SHOPPING CENTER

That certain piece, parcel or tract of land situate lying and being in the City of Chapin, Lexington County, South Carolina more particularly described as follows:

ALL THAT CERTAIN piece parcel or lot of land with improvements thereon, situate, lying and being in the Town of Chapin, County of Lexington, State of South Carolina, consisting of approximately 7.167 acres and being shown and delineated as Parcel 1A and 1B on a plat prepared for Chapin Development Company by Baxter Land Surveying Company, Inc. dated January 28, 1991, revised February 12, 1991 and recorded in the Office of the RMC for Lexington County in Plat Book 242 page 148 and being more particularly described by reference to said plat as follows:

BEGINNING at an iron located approximately 428.36 feet from the intersection of St. Peter's Church Road and U.S. Highway No. 76, said iron being the POINT OF BEGINNING; thence running along the right-of-way of U.S. Highway No. 76 S 60° 03'08" E, 60.02 feet to an iron; thence turning and running along property N/F Johnny White S 12° 56'00" W 212.18 feet to an iron; thence turning and running along the same property S 70° 28'00" E, 99.27 feet to an iron; thence turning and running along property N/F Plaza Partnership S 10° 33'00" W, 28.28 feet to an iron; thence turning and running along property N/F Anne C. Eleazer S 80° 23'00" W, 81.71 feet to an iron; thence turning and running along the same property S 09° 38'00" E, 30.44 feet to an iron; thence turning and running along property N/F Chapin Development Company S 21° 51'43" W, 210.02 feet to an iron; thence turning and running along the same property along a curve having a chord bearing of S 51° 27'17" E and a chord distance of 22.97 feet and an arc distance of 23.29 feet to an iron; thence continuing S 68° 08'17" E, 87.48 feet to an iron; thence running along a curve having a chord bearing of S 81° 34'09" E and a chord distance of 126.82 feet and an arc distance of 127.99 feet to an iron; thence continuing N 85° 00'00" E, 48.90 feet to an iron; thence turning and running S 05° 00'00" E, 24.00 feet to an iron; thence turning and running along property N/F Chapin Development Company S 85° 00'00" W, for 48.90 feet to an iron; thence continuing along the same property along a curve having a chord bearing of N 81° 34'09" W and a chord distance of 137.97 feet and an arc distance of 139124 feet to an iron; thence continuing along a curve having a chord bearing of S 69° 19'01" W, and a chord distance of 73.95 feet and an arc distance of 83.23 feet to an iron; thence continuing along property N/F Chapin Development Company S 21° 51'43" W, 127.81 feet to an iron; thence turning and running along a curve with a chord bearing of S 66° 34'31" W and a chord distance of 98.50 feet and an arc distance of 109.26 feet to an iron; thence running N 68° 42'40" W for 417.12 feet to an iron; thence running along a curve with a chord bearing N 23° 38'42" W and a chord distance of 99.11 feet and an arc distance of 110.12 feet to an iron; thence continuing along the same property N 21° 25'16" E, 177.82 feet to an iron; thence running along a curve with a chord bearing of N 05° 54'08" E

(1805-K)92                                                          Page 1

BK1800PG201

with a chord distance of 53.51 feet and an arc distance of 54.17 feet to an iron; thence turning and running S 68° 08'17" E for a distance of 112.18 feet to an iron; thence turning and running N 21° 51'43" E for a distance of 84.95 feet to an iron; thence continuing N 21° 51'43" E, 265.84 feet to an iron; thence turning and running S 57° 42'55" E, 291.24 feet to an iron; thence turning and running N 12° 56'00" E, 210.29 feet to an iron, said iron being the POINT OF BEGINNING, be all said measurements a little more or less.

(1805-K)92

Page 2

1010
1419 Chapin Road
Chapin, South Carolina

