EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

WINN-DIXIE STORE # 1915
Meridianville, Alabama

Lease: Lease dated December 27, 1994 between Flint Crossing, L.L.C., as Landlord, and Winn-Dixie Montgomery, Inc., as Tenant;

as evidenced by Short Form Lease dated December 27, 1994, recorded in Book 848, Page 858, of the public records of Madison County, Alabama

Amendments/
Guaranty:

Supplemental Lease Agreement dated January 16, 1996

Premises: That certain store building and related improvements located at 12290 US Highway 231/431, Meridianville, Madison County, Alabama

Legal Description: The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

**LEGAL DESCRIPTION**

That part of the Northwest Quarter of Section 18, Township 2 South, Range 1 East, of the Huntsville Meridian, Madison County, Alabama, being more particularly described as follows:

Beginning at a point located North 90 degrees 0 minutes 0 seconds East, 101.81 feet; South 00 degrees 0 minutes 0 seconds East, 489.69 feet and South 01 degrees 06 minutes 29 seconds East, 174.01 feet from the Northwest corner of said Section 18, said point being located on the Easterly Right-of-Way margin of U.S. Highway 231/431; thence along said Right-of-Way, South 01 degrees 06 minutes 29 seconds East, 335.12 feet to a point; thence leaving said Right-of-Way, North 88 degrees 53 minutes 31 seconds East, 220.00 feet to a point; thence South 01 degrees 06 minutes 29 seconds East, 190.25 feet to a point on the proposed Right-of-Way of an unnamed road; thence along said Right-of-Way, South 87 degrees 37 minutes 30 seconds East, 177.21 feet to the Point of Curvature of a curve to the left having a central angle of 3 degree 29 minutes 00 seconds and a radius of 1750.00 feet; thence along said curve for an arc distance of 106.39 feet to the Point of Tangency; thence North 88 degrees 53 minutes 31 seconds East, 193.27 feet to the Point of Curvature of a curve to the left having a central angle of 00 degrees 49 minutes 26 seconds and a radius of 940.00 feet; thence along said curve for an arc distance of 13.52 feet to a point; thence leaving said Right-of-Way, North 01 degrees 06 minutes 29 seconds West, 579.66 feet to a point; thence North 25 degrees 16 minutes 18 seconds East, 222.16 feet to a point; thence North 56 degrees 28 minutes 42 seconds East, 456.32 feet to a point; thence North 39 degrees 31 minutes 13 seconds East, 142.00 feet to a point; thence North 55 degrees 45 minutes 37 seconds West, 84.69 feet to a point; thence South 89 degrees 55 minutes 00 seconds West, 564.05 feet to a point; thence South 01 degrees 06 minutes 29 seconds East, 521.75 feet to a point; thence South 88 degrees 53 minutes 31 seconds West, 431.34 feet to a point; thence South 89 degrees 47 minutes 57 seconds West, 3.66 feet to a point; thence South 01 degrees 06 minutes 29 seconds East, 130.51 feet to a point; thence South 88 degrees 53 minutes 31 seconds West, 220.00 feet to the Point of Beginning and containing 13.70 acres, more or less.

SUBJECT TO: all easements and Right-of-Ways which may or may not be of record.

1915
12290 US Highway 231/431
Meridianville, AL

**EXHIBIT "B"**

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

WINN-DIXIE STORE # 911
Goldsboro, North Carolina

Lease: Lease dated November 11, 1992 between K-2 Properties, LLC, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

as evidenced by Short Form Lease dated ____________, 1992, recorded in Book 1359, Page 226, of the public records of Wayne County, North Carolina

Amendments/ Guaranty:

Supplemental Lease Agreement dated July 22, 1994

Assignment of Leases dated June 30, 1995, as evidenced by Memorandum of Assignment of Leases dated June 30, 1995, recorded in Book 1481, Page 730, of the public records of Wayne County, North Carolina

Assignment of Lease dated January 2, 1997

Amendment to Lease dated February 12, 1997

Second Amendment to Lease dated May 22, 1998

Amended and Restated Short Form Lease dated May 22, 1998, recorded in Book 1651, Page 620, of the public records of Wayne County, North Carolina

Third Amendment to Lease and Amendment to Short Form Lease dated October 24, 2000, recorded in Book 1815, Page 485, of the public records of Wayne County, North Carolina

Premises: That certain store building and related improvements located at 1805 Wayne Memorial Drive, Goldsboro, Wayne County, North Carolina

Legal Description: The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION



BOOK 1651 PAGE 623

MARKET SQUARE SHOPPING CENTER
THIS MAP IS NOT A CERTIFIED SURVEY AND NO RELIANCE MAY BE PLACED IN ITS ACCURACY.
G.S. 47-30 M

911

1805 Wayne Memorial Drive
Goldsboro, North Carolina

EXHIBIT "B"
Legal Description of Shopping Center

PROPERTY DESCRIPTION: ALL THAT TRACT CONTAINING 303.007 SQUARE FEET (6.95 AC.), LOCATED IN GOLDSBORO TOWNSHIP, WAYNE COUNTY, N.C. AND DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON STAKE ON THE NORTHERN RIGHT-OF-WAY OF GIBSON STREET, THE SOUTHEASTERN MOST CORNER OF TRACT NO. 5, SUBDIVISION OF WAYNE COMMUNITY COLLEGE, PLAT CABINET "J", SLIDE 14; THENCE FROM SAID BEGINNING LEAVING SAID RIGHT-OF-WAY WITH THE EASTERN LINE OF TRACT NO. 5 N 31° 52' 13" W 228.20 FEET TO AN IRON STAKE; THENCE LEAVING THE LINE OF TRACT NO. 5 N 29° 05' 36" E 544.42 FEET TO AN IRON STAKE ON THE SOUTHERN RIGHT-OF-WAY OF U.S. HIGHWAY NO. 70 SERVICE ROAD; THENCE WITH SAID RIGHT-OF-WAY S 60° 04' 12" E 40.01 FEET TO AN IRON STAKE; THENCE LEAVING SAID RIGHT-OF-WAY S 29° 05' 36" W 179.72 FEET TO AN IRON STAKE; THENCE S 60° 04' 12" E 222.01 FEET TO AN IRON STAKE; THENCE N 29° 05' 36" E 171.72 FEET TO AN IRON STAKE ON SAID RIGHT-OF-WAY; THENCE WITH SAID RIGHT-OF-WAY AS IT CURVES TO THE RIGHT, HAVING A RADIUS OF 686.20 FEET, A CHORD OF S 37° 41' 28" E 323.21 FEET TO AN IRON STAKE; THENCE CONTINUED WITH SAID RIGHT-OF-WAY S 24° 04' 11" E 130.83 FEET TO AN IRON STAKE; THENCE LEAVING SAID RIGHT-OF-WAY S 56° 13'39" W 247.86 FEET TO AN IRON STAKE; THENCE S 31° 52' 13" E 180.00 FEET TO AN IRON STAKE ON THE NORTHERN RIGHT-OF-WAY OF WAYNE MEMORIAL DRIVE; THENCE WITH SAID RIGHT-OF-WAY S 56° 13' 39" W 58.04 FEET TO AN IRON STAKE; THENCE LEAVING SAID RIGHT-OF-WAY N 31° 52' 13" W 180.00 FEET TO AN IRON STAKE; THENCE S 56° 13' 39" W 210.64 FEET TO AN IRON STAKE ON THE EASTERN RIGHT-OF-WAY OF NINTH STREET; THENCE WITH SAID RIGHT-OF-WAY N 33° 46' 49" W 136.30 FEET TO AN IRON STAKE; THENCE N 60° 04' 12" W 84.44 FEET TO AN IRON STAKE; THENCE S 58° 07' 47" W 47.14 FEET TO THE POINT OF BEGINNING.

911
1805 Wayne Memorial Drive
Goldsboro, North Carolina

EXHIBIT A-3
To Asset Purchase Agreement

SEE ATTACHED LEGAL DESCRIPTION

Closed Stores

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 1004 | 512 Robertson Blvd. | Walterboro | Colleton | SC |
| 1242 | 500-1 Old Greenville Hwy | Clemson | Pickens | SC |
| 1942 | 8530 Hixon Pike | Hixson | Hamilton | TN |
| 2151 | 1401 E. Main Street | Rock Hill | York | SC |

**EXHIBIT A-4**
To Asset Purchase Agreement

To be mutually agreed upon by Seller and Buyer.

EXHIBIT B
To Asset Purchase Agreement

Form of Bill of Sale

**BILL OF SALE**

**WINN-DIXIE ________, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective ___________, 200___, among _________________, a _______, ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the leases and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of ___________, 200___.

"SELLER"

**WINN-DIXIE ________, INC.**, a Florida corporation

By: ________________________________
Name: ______________________________
Title: _______________________________

**[To be conformed to paragraph 3]**

**EXHIBIT C-1**
**To**
**Asset Purchase Agreement**
**FORM OF CLOSING STATEMENT**

**CLOSING STATEMENT SUMMARY**

**BUYER:** ____________________, a ____________________

**SELLER:** Winn-Dixie ____________, Inc., a Florida corporation

**ESCROW AGENT and SETTLEMENT AGENT:** ____________________

**PROPERTIES[1]:**
Store No. _____, ________, _______, __________
Store No. _____, ________, _______, __________
Store No. _____, ________, _______, __________
Store No. _____, ________, _______, __________

**CLOSING DATE:** ___________, 2005

---

**SELLER'S STATEMENT**

| | | | |
|---|---|---|---|
| **I.** | **BASE PURCHASE PRICE:** | | **$________** |
| **II.** | **SUPPLIES PRICE:** | | **$________** |
| **III.** | **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE** | | **$________** |
| **A.** | **NET CREDIT/DEBIT TO SELLER:** | **($________)** | **or $________** |
| **B.** | **TOTAL CLOSING COSTS PAYABLE BY SELLER:** | **($________)** | |
| **AMOUNT DUE SELLER** | | **($________)** | **or $________** |

**BUYER'S STATEMENT**

| | | |
|---|---|---|
| **I.** | **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE** | **$________** |

[1] Itemized individual Closing Statements for each Property are attached

| | | | |
|---|---|---|---|
| **A.** | **NET CREDIT/DEBIT TO BUYER:** | **($_______)** | **or $________** |
| **B.** | **TOTAL CLOSING COSTS PAYABLE BY BUYER:** | **($_______)** | |
| **C** | **BASE DEPOSIT** | **($_______)** | |
| **AMOUNT DUE FROM BUYER** | | **($_______)** | **or $_______** |

**TOTAL DISBURSEMENTS**[2]

| | | |
|---|---|---|
| 1. | Base Deposit from Escrow Agent | $________ |
| 2. | Amount Due From Buyer | $________ |
| **TOTAL RECEIPTS:** | | $________ |
| 1. | Seller's Brokers Fees | ($________) |
| 2. | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($________) |
| 3. | Inventory Service Fees | |
| 4. | Seller's Cure Costs | ($________) |
| 5. | Seller's Proceeds | ________ |
| [6.] | [Other] | ($________) |
| **TOTAL DISBURSEMENTS:** | | |

**STIPULATIONS**

1. Purchase Agreement. This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of ____________, 2005 (the "Purchase Agreement"). Attached hereto are individual itemized closing statements for each of the Properties covered by the Purchase Agreement.

2. Authorization to Disburse. By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

________________________
________________________
________________________
________________________

3. Counterparts. This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature

[2] Refer to Individual Property Closing Statement for Itemization.

pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. Adjustments. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____________, 2005, and hereby authorize _____________ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

| **SELLER:** | **BUYER:** |
|---|---|
| **WINN-DIXIE** _______________, | _______________________, |
| a Florida corporation | a Delaware limited liability company |
| By: ___________________________ | By: ___________________________ |
| Name: _________________________ | Name: _________________________ |
| Title: Vice President | Title: _________________________ |

**INDIVIDUAL PROPERTY CLOSING STATEMENT**

**BUYER:** ____________________, a ________________

**SELLER:** Winn-Dixie ___________, Inc., a Florida corporation

**ESCROW AGENT and SETTLEMENT AGENT:** ____________________

**Property:** Store No. _____, ________, _______, ___________

**CLOSING DATE:** ___________, 2005

**SELLER'S STATEMENT**

**ALLOCATED BASE PURCHASE PRICE:**

| | | |
|---|---|---|
| Leasehold: | | $________ |
| FF&E: | | $________ |
| TOTAL BASE PURCHASE PRICE: | | $________ |
| **SUPPLIES PRICE:** | | $________ |
| **TOTAL ALLOCATED BASE PURCHASE PRICE AND SUPPLIES PRICE:** | | $________ |
| **Less Adjustments (Debit):** | | |
| Seller's Prorated Share of Taxes and Other Charges Payable Under Leases (1) | $________ | |
| Buyer's Prorated Share of Rents Paid in Advance **[Under Subleases (2)]** | $________ | |
| **Total Debit Adjustments:** | $________ | |
| **Plus Adjustments (Credit):** | | $________ |
| Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Leases (3) | | $________ |
| Environmental Assessment Costs Paid by Seller | | $________ |
| [Other] | | $________ |

**Total Credit Adjustments:** $________

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs $________

Seller's Brokerage Fees $________

Cure Costs $________

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER** ($________) or $________

**BUYER'S STATEMENT**

**ALLOCATED BASE PURCHASE PRICE:** $________

**SUPPLIES PRICE:** $________

**TOTAL ALLOCATED BASE PURCHASE PRICE AND SUPPLIES PRICE:** $________

**Less Adjustments (Credit):**

Allocated Amount of Base Deposit $________

Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Leases (1) $________

[Other] $________

**Total Debit Adjustments:**

**Plus Adjustments (Debit):** $________

Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Leases (3) $________

Environmental Assessment Costs Paid by Seller $________

[Other] $________

**Total Credit Adjustments:** $________

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

| | | |
|---|---|---|
| Buyer's Attorneys' Fees & Costs | $________ | |
| Title Insurance Premiums(4) | $________ | |
| Title Examination Fees | $________ | |
| Transfer/Documentary Taxes | $________ | |
| Buyer's Brokerage Fees | $________ | |
| Closing Escrow Fees | $________ | |
| Inventory Service Fees(8) | $________ | |
| **Total Buyer's Closing Costs:** | $________ | |
| **TOTAL AMOUNT DUE FROM BUYER AT CLOSING** | ($________) | or $________ |

**SCHEDULE OF DISBURSEMENTS**

| | | |
|---|---|---|
| 1. | Amount Due From Buyer | $________ |
| **TOTAL RECEIPTS:** | | $________ |
| 1. | The Blackstone Group L.P. (Seller's Brokers Fees) | ($________) |
| 2. | The Food Partners, LLC (Seller's Brokers Fees) | ($________) |
| 3. | DJM Asset Management, LLC (Seller's Brokers Fees) | ($________) |
| 4. | ____________ Title Insurance Company Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($________) |
| 5. | ________________ Transfer/Documentary Taxes | |
| 6. | **[Name of Inventory Service]** (Inventory Service Fees) | ($________) |
| 7. | ________________ (Lease Cure Costs, if any) | ($________) |
| 8. | ________________ (Sublease Cure Costs, if any) | ($________) |
| 9. | Seller | ($________) |

**Total Amount of Seller's Prorated Share of 2005 Prorations:** ______

(2) __________, 2005 Sublease Prorations - Amounts Previously Received by Seller. Prorations are based on __________, 2005 rents previously paid to Seller in accordance with applicable subleases. Buyer will be responsible for the collection of such charges that become due and payable for ________, 2005 and thereafter. Prorations are as follows:

Store # ________
- Total __________, 2005 rent paid: $
- Per diem rent: $
- Buyer's prorated share (_/_/_ - _/_/05) (____ days) $ ____________

**Total Amount of Seller's Prorated Share of ______ Prorations:**

(3) __________, 2005 Prorations - Amounts Previously Paid by Seller. Prorations are based on __________, 2005 rents, common area maintenance assessments and other charges previously paid by Seller in accordance with applicable leases. Buyer will be responsible for the payment of such charges that become due and payable for __________, 2005 and thereafter. Prorations are as follows:

**Rent**

Store # ________
- Total __________, 2005 rent paid: $
- Per diem rent: $
- Buyer's prorated share (_/_/_ - _/_/05) (____ days) $ ____________
- Per diem rent: $
- Buyer's prorated share (_/_/_ - _/_/05) (____ days) $ ____________ ______

**Total Amount of Buyer's Prorated Share of ______ Prorations:**

(4) Title Premiums and Expenses. Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

Store # ________
- Title Search Fees and Costs $ -
- Title Premium $ ____________ -

**Total Amount of Title Fees and Expenses:**

(5) Utility Deposits and Charges. All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof. The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor. Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6) Adjustments. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7) Inventory Purchase Price and Adjustments. To the extent Buyer has acquired Inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement between Seller and Buyer dated as of even date herewith. Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

(8) Inventory Service Fees. Seller and Buyer acknowledge and agree that Buyer and Seller will be responsible for payment of one-half of the fees and costs of the Inventory Service that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices. Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for its portion of such costs. In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9) Capitalized Terms. Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

**[To be conformed to paragraph 3]**

Exhibit C-2

To Asset Purchase Agreement

Form of Inventory Closing Statement

**INVENTORY CLOSING STATEMENT**

**SELLER** Winn-Dixie ______, Inc., a Florida corporation

**BUYER:** ____________________ a ____________________

**TRANSACTION:** Acquisition of Leasehold Interest in Store ______, ______, ______

**BASE PURCHASE PRICE:** Under Separate Closing Statement

**INVENTORY PRICE (2):**

| | |
|---|---|
| Store _____ | $ |
| Store _____ | $ |
| Store _____ | $ |
| Store _____ | $ |
| **Total Aggregate Inventory Price:** | $ |

**CLOSING DATE:** ______, 2005

**SELLER'S STATEMENT**

| | | | |
|---|---|---|---|
| **Inventory Price** | | | $ |
| **Less Adjustments:** | | | |
| 1. | Any Closing Statement adjustment | $ | |
| 2. | 1/2 of Inventory Service Fee | $ | |
| 3. | Ten Percent of Inventory Price Retained by Escrow Agent | $ | |
| | **Total Adjustments:** | $ | $ ( ) |
| **TOTAL AMOUNT DUE TO SELLER:** | | | $ |

**BUYER'S STATEMENT**

**Aggregate Inventory Price** $

**Plus Closing Costs to be Paid by Buyer:**

| | | | |
|---|---|---|---|
| 1. | Any Closing Statement adjustment | $ ______ | |
| 2. | 1/2 of Inventory Service Fees (3) (Direct Payment or Reimbursement to Seller) | $ ______ | |
| | **Total Buyer's Inventory Closing Costs:** | $ | $ ______ |

**AMOUNT DUE FROM BUYER:** $ ______

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this day of July, 2004, and hereby authorize **[Title Insurer]**, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**WINN-DIXIE** , **INC.**, a Florida corporation

By:______________________

Name:______________________

Title: ____________ President

**BUYER:**

____________., a ____________

By:______________________

Name:______________________

Title: ______________________

**Notes:**

(1) Adjustments. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(2) Inventory Price Adjustments. The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of ___________, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement. The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period. To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

(3) Inventory Service Fees. The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same. Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4) Capitalized Terms. Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

RECEIPTS:

| | | | |
|---|---|---|---|
| 1. | Total Amount Due From Buyer | $ ____________ | |
| TOTAL CASH RECEIVED: | | $ | $ ____________ |

DISBURSEMENTS:

| | | |
|---|---|---|
| 1. | Winn-Dixie _________, Inc. (Seller's Proceeds and Reimbursement of Inventory Service Fee) | $ ____________ |
| TOTAL DISBURSEMENTS: | | $ ____________ |
| BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT PURSUANT TO PURCHASE AGREEMENT: | | $ |