| | | | | |
|---|---|---|---|---|
| 29528 | $36.60 | 48 | 7/31/2005 | POS |
| 29528 | $36.60 | 48 | 7/31/2005 | POS |
| 29528 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| 29528 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 31749 | $181.37 | 36 | 5/31/2005 | Servers |
| 31749 | $68.44 | 36 | 5/31/2005 | Servers |
| 31749 | $0.00 | 36 | 5/31/2005 | Personal Computers |

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records.  Prepared by management.

| | | | | | Qty | Serial | Proj | Date | | Amount | Term | In Service / Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2150 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M1711 | 28157 | 4/15/2001 | CLC | $36.60 | 48 | 5/31/2005 POS |
| 2150 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M1875 | 28157 | 4/15/2001 | CLC | $36.60 | 48 | 5/31/2005 POS |
| 2150 | IBM | 6331 | B2N | IBM BLACK E54 15i | 1 | XDZV2 | 28157 | 4/15/2001 | CLC | $5.27 | 48 | 5/31/2005 Personal Computers |
| 2150 | IBM | 6331 | B2N | IBM BLACK E54 15i | 1 | XDZW1 | 28157 | 4/15/2001 | CLC | $5.27 | 48 | 5/31/2005 Personal Computers |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | TZC10 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | TZC27 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VAT78 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VAT82 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VAT88 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VAV38 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VAV51 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VAX16 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VBK35 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VGW98 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VGX10 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 4694 | S45 | POS REGISTER | 1 | VGY79 | 22980 | 7/1/2001 | ICC | $51.00 | 48 | 6/30/2005 POS |
| 2150 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC310 | 22991 | 7/1/2001 | ICC | $5.25 | 48 | 6/30/2005 Personal Computers |
| 2150 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC965 | 22991 | 7/1/2001 | ICC | $5.25 | 48 | 6/30/2005 Personal Computers |
| 2150 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC966 | 22991 | 7/1/2001 | ICC | $5.25 | 48 | 6/30/2005 Personal Computers |
| 2150 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC970 | 22991 | 7/1/2001 | ICC | $5.25 | 48 | 6/30/2005 Personal Computers |
| 2150 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WN099 | 22991 | 7/1/2001 | ICC | $5.25 | 48 | 6/30/2005 Personal Computers |
| 2150 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WN498 | 22991 | 7/1/2001 | ICC | $5.25 | 48 | 6/30/2005 Personal Computers |
| 2150 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WN502 | 22991 | 7/1/2001 | ICC | $5.25 | 48 | 6/30/2005 Personal Computers |
| 2150 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WN508 | 22991 | 7/1/2001 | ICC | $5.25 | 48 | 6/30/2005 Personal Computers |
| 2150 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 23001 | 7/1/2001 | ICC | $99.96 | 48 | 6/30/2005 Software |
| 2150 | IBM | SAV2 | SVC3 | SAV2 SERVICES | 1 | | 23001 | 7/1/2001 | ICC | $31.74 | 48 | 6/30/2005 Software |
| 2150 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | U2G11 | 32011 | 6/17/2002 | CLC | $181.37 | 36 | 6/30/2005 Servers |
| 2150 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | CWRB11 | 32011 | 6/17/2002 | CLC | $68.44 | 36 | 6/30/2005 Servers |
| 2150 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 32011 | 6/17/2002 | CLC | $0.00 | 36 | 6/30/2005 Personal Computers |

**Other Leased Equipment**
Health Resource Computer System
Health Clinic Blood Pressure Machine
IVR Equipment

Privileged and Confidential

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records.  Prepared by management.

| 2151 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M2135 | 4/15/2001 | CLC | 28158 | $36.60 | 48 | 5/31/2005 | POS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2151 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M1775 | 4/15/2001 | CLC | 28158 | $36.60 | 48 | 5/31/2005 | POS |
| 2151 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XCZZ6 | 4/15/2001 | CLC | 28158 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 2151 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDAA2 | 4/15/2001 | CLC | 28158 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 2151 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 2151 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 2151 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | 1J2H11 | 6/17/2002 | CLC | 32012 | $181.37 | 36 | 6/30/2005 | Servers |
| 2151 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | CWRB11 | 6/17/2002 | CLC | 32012 | $68.44 | 36 | 6/30/2005 | Servers |
| 2151 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 6/17/2002 | CLC | 32012 | $0.00 | 36 | 6/30/2005 | Personal Computers |

**Other Leased Equipment**
Health Resource Computer System
Health Clinic Blood Pressur Machine
IVR Equipment

Privileged and Confidential

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records.  Prepared by management.

| 2156 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0833 | 3/15/2001 | CLC | 27866 | $36.60 | 48 | 11/11/1911 | POS |
|------|-----|------|-----|-------------------|---|-------|-----------|-----|-------|--------|----|------------|-----|
| 2156 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M2133 | 3/15/2001 | CLC | 27866 | $36.60 | 48 | 11/11/1911 | POS |
| 2156 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | ZAYG0 | 3/15/2001 | CLC | 27866 | $5.27 | 48 | 11/11/1911 | Personal Computers |
| 2156 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | ZAYG9 | 3/15/2001 | CLC | 27866 | $5.27 | 48 | 11/11/1911 | Personal Computers |
| 2156 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 2156 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 2156 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | JM2H11 | 6/17/2002 | CLC | 32014 | $181.37 | 36 | 6/30/2005 | Servers |
| 2156 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | JWRB11 | 6/17/2002 | CLC | 32014 | $68.44 | 36 | 6/30/2005 | Servers |
| 2156 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 6/17/2002 | CLC | 32014 | $0.00 | 36 | 6/30/2005 | Personal Computers |

**Other Leased Equipment**
Health Resource Computer System
Health Clinic Blood Pressur Machine
IVR Equipment
Konica    725.31

Privileged and Confidential

Source: Jaguar internal accounting records.    Prepared by management.

Project Jaguar
Leased Equipment List

| | | | | Description | Qty Model | Date | Account | Amount | Months | Date | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2160 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 M1276 | 4/15/2001 CLC | 28160 | $36.60 | 48 | 5/31/2005 | POS |
| 2160 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 M1315 | 4/15/2001 CLC | 28160 | $36.60 | 48 | 5/31/2005 | POS |
| 2160 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 XDZV8 | 4/15/2001 CLC | 28160 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 2160 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 XDZV4 | 4/15/2001 CLC | 28160 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 2160 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | 7/1/2001 ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 2160 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | 7/1/2001 ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 2160 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 PM2H11 | 6/17/2002 CLC | 32018 | $181.37 | 36 | 6/30/2005 | Servers |
| 2160 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 HWRB11 | 6/17/2002 CLC | 32018 | $88.44 | 36 | 6/30/2005 | Servers |
| 2160 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | 6/17/2002 CLC | 32018 | $0.00 | 36 | 6/30/2005 | Personal Computers |

Other Leased Equipment
Health Resource Computer System
Health Clinic Blood Pressur Machine
IVR Equipment
Konica    725.31

Privileged and Confidential

EXHIBIT E
To Asset Purchase Agreement

Take Down Allocation

| Store No. | Attributed Base Purchase Price | Attributed Base Deposit |
|---|---|---|
| 1004 | $ 450,000.00 | $ 45,000.00 |
| 1010 | $ 450,000.00 | $ 45,000.00 |
| 1234 | $ 450,000.00 | $ 45,000.00 |
| 1242 | $ 450,000.00 | $ 45,000.00 |
| 1248 | $ 450,000.00 | $ 45,000.00 |
| 1938 | $ 450,000.00 | $ 45,000.00 |
| 1942 | $ 450,000.00 | $ 45,000.00 |
| 1944 | $ 450,000.00 | $ 45,000.00 |
| 2004 | $ 450,000.00 | $ 45,000.00 |
| 2051 | $ 450,000.00 | $ 45,000.00 |
| 2150 | $ 450,000.00 | $ 45,000.00 |
| 2151 | $ 450,000.00 | $ 45,000.00 |
| 2156 | $ 450,000.00 | $ 45,000.00 |
| 2160 | $ 450,000.00 | $ 45,000.00 |
| 524 | $ 450,000.00 | $ 45,000.00 |
| 576 | $ 450,000.00 | $ 45,000.00 |
| 1906 | $ 450,000.00 | $ 45,000.00 |
| 1913 | $ 450,000.00 | $ 45,000.00 |
| 1915 | $ 450,000.00 | $ 45,000.00 |
| 911 | $ 450,000.00 | $ 45,000.00 |

EXHIBIT F
To Asset Purchase Agreement

Permitted Encumbrances

1. Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2005 and subsequent years.

2. Boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey or site plan, other than matters objected to by Buyer pursuant to paragraph 5.2 if Buyer obtains a current survey of the affected Real Property or if shown on a prior survey of the affected Real Property.

3. Rights of Landlords under the Leases, including the rights of any Landlord's mortgagee.

4. Rights of Subtenants under the Subleases.

5. All matters set forth as exceptions in the Initial Title Reports or the site plans, other than Monetary Liens.

EXHIBIT G
To Asset Purchase Agreement

<u>Form of</u>
<u>Lease Assignment</u>

<u>**ASSIGNMENT AND ASSUMPTION OF LEASE**</u>
[Store #_____, _____, _____]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 200___ (the "Effective Date"), by and between **WINN-DIXIE** _____, **INC.** a Florida corporation (hereinafter referred to as "Assignor"), and _____, a _____ (hereinafter referred to as "Assignee");

**R E C I T A L S :**

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached <u>Exhibit A</u> (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective _____, 2005 by and among Assignor, as seller, Assignee, as buyer, as amended from time to time (the "Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee (i) all of the right, title and interest of the tenant or lessee in and to the lease, together with any and all amendments thereto, as described on the attached <u>Exhibit A</u> (the "Lease"), all of the right, title and interest of the the sublandlord or sublessor, in and to the subleases, together with all amendments thereto, described on <u>Exhibit A</u> (the "Subleases"); and, if applicable, all of the right, title and interest of the tenant or lessee in and to the subordination, non-disturbance and attornment agreement, together with all amendments thereto, described on <u>Exhibit A</u> (the "SNDA"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease, the Subleases and, if applicable, the SNDA after the Effective Date, all subject to and in accordance with the terms of the Lease, the Subleases, the SNDA (if applicable), the Agreement and this Assignment;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    <u>**EFFECTIVE DATE**</u>.  This Assignment shall be effective as of the Effective Date.

2.    <u>**ASSIGNMENT**</u>.

(a)    Assignor hereby assigns, transfers, and conveys unto Assignee all of the right, title, interest and obligation of the tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee

thereunder.

(b)    Assignor hereby assigns, transfers and conveys unto Assignee all of the right, title, interest and obligation of the sublandlord or sublessor in and to the Subleases and all the rights, benefits and privileges of the sublandlord or sublessor thereunder.

(c)    If applicable, Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant in and to the SNDA and all the rights, benefits and privileges of the tenant thereunder.

3.    **ASSUMPTION; ACCEPTANCE OF PREMISES**.

(a)    Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that arise under the Lease from and after the Effective Date based on circumstances arising after the Effective Date, and Assignee hereby indemnifies, and agrees to save, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that arise under the Lease on or after the Effective Date based on circumstances arising after the Effective Date.

(b)    Assignee hereby accepts the aforesaid assignment of the Subleases and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that arise under the Subleases from and after the Effective Date based on circumstances arising after the Effective Date, and Assignee hereby indemnifies, and agrees to save, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that arise under the Subleases on or after the Effective Date based on circumstances arising after the Effective Date.

(c)    If applicable, Assignee hereby accepts the aforesaid assignment of the SNDA and assumes and agrees to pay and perform all liabilities and obligations of the tenant that arise under the SNDA from and after the Effective Date based on circumstances arising after the Effective Date, and Assignee hereby indemnifies, and agrees to save, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant that arise under the SNDA on or after the Effective Date based on circumstances arising after the Effective Date.

(d)    Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate. Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the

Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations. Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor other than those in the Agreement (which Assignee acknowledges do not survive the Closing). Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4.    **NOTICES.** All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

|  |  |
|---|---|
| If to Assignor: | Winn-Dixie _____, Inc.; Re: Store #_____<br>5050 Edgewood Court<br>Jacksonville, FL 32254-3699<br>Attn: Chief Financial Officer<br>Telefax No.: 904/783-5646 |
| With a copy to: | Winn-Dixie Stores, Inc.<br>5050 Edgewood Court<br>Jacksonville, FL 32254-3699<br>Attn: Office of General Counsel<br>Telefax No.: 904/783-5641 |

or to such other address or telefax number as Assignor may direct from time to time.

If to Assignee, to each of:

> BI-LO, LLC
> 208 BI-LO Blvd.
> Greenville, SC 29607
> Attn: Chief Executive Officer
> Facsimile: (864) 234-6999
>
> and
>
> Southern Family Markets Acquisition LLC
> 7 Corporate Drive
> Keene, NH 03431
> Attn: Chief Executive Officer
> Facsimile: (603) 354-4692

With a copy to:

> BI-LO, LLC
> 208 BI-LO Blvd.
> Greenville, SC 29607
> Attn: Chief Financial Officer
> Facsimile: (864) 234-6999
>
> BI-LO, LLC
> 208 BI-LO Blvd.
> Greenville, SC 29607
> Attn: General Counsel
> Facsimile: (864) 283-3610
>
> Kilpatrick Stockton LLP
> 1100 Peachtree Street N.E.
> Suite 2800
> Atlanta, GA 30309
> Attn: Gregory K. Cinnamon
> Facsimile: (404) 541-3157
> e-mail: gcinnamon@kilpatrickstockton.com
>
> Southern Family Markets Acquisition LLC
> 7 Corporate Drive
> Keene, NH 03431
> Attn: Chief Financial Officer
> Facsimile: (603) 354-4692
> e-mail: mgross@cswg.com
>
> and

Southern Family Markets Acquisition LLC
7 Corporate Drive
Keene, NH 03431
Attn: Legal and Business Affairs
Facsimile: (603) 354-4694
e-mail: cwistrei@cswg.com

or to such other address or Telefax number as Assignee may direct from time to time.

5.   **NOTICE OF ASSIGNMENT**.  On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease.

6.   **BINDING EFFECT**.  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7.   **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor or Assignee be required to undertake any liability not expressly provided in this Agreement.

8.   **NO BROKERS**.  The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B.  Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment.    Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises.  Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

9.   **WAIVER OF JURY TRIAL**.  Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Subleases makes a jury determination of any dispute arising out of this

Assignment, the Premises, the Lease or the Subleases undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive to the extent permitted by law any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Subleases.

**IN WITNESS WHEREOF,** Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE** _____, **INC.,** a
Florida corporation

_____
Name:_____

By:_____
Name: _____
Title: Vice President

_____
Name:_____

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

_____, a
_____

By:_____

Name:_____

Name:_____

Name:_____

Title:_____

[SEAL]

Name:_____

**[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]**

Exhibit A

<u>Description of Premises and Lease</u>

<u>STORE #</u>:

<u>STREET ADDRESS</u>:

<u>SHOPPING CENTER</u>:

<u>LEASE</u>:

<u>AMENDMENTS TO LEASE</u>:

<u>SUBLEASES</u>:

<u>AMENDMENTS TO SUBLEASES</u>:

Exhibit B

Schedule of Brokers

## EXHIBIT B-1

## ASSIGNOR'S BROKERS:[3]

The Blackstone Group L.P.
345 Park Avenue
New York, New York  10154

The Food Partners, LLC
1250 Eye Street, N.W.
Suite 850
Washington, D.C.  20005

DJM Asset Management, LLC
445 Broad Hollow Road
Suite 417
Melville, New York  11747

## EXHIBIT B-2

## ASSIGNEE'S BROKERS:

William Blair & Company, L.L.C.

---

[3]  Modify for particular transaction to reflect the area more listed brokers which is acting as Seller's Broker for the transaction.

**EXHIBIT H**
**to Asset Purchase Agreement**

Form of Inventory Certificate

**INVENTORY CERTIFICATE**

| Store #: _____ | Date: _____/_____/ |
|---|---|
| Store Address: | Time: _____ : _____ AM  PM |

|  | Inventory Taken<br>@ Retail[1] | Valuation<br>Percentage | Inventory<br>@ Cost |
|---|---|---|---|
| Grocery (food and non-food) Taken | $ | x 72.00% | $ |
| Frozen Grocery Taken | $ | x 61.00% | $ |
| Frozen Meat and Seafood Taken | $ | x 61.00% | $ |
| Dairy Taken | $ | x 70.00% | $ |
| Tobacco Taken | $. | x 78.00% | $ |
| Beer and Wine Taken | $ | x 78.00% | $ |
| Packaged Lunch Meats Taken | $ | x 68.00% | $ |
| Produce Taken | $ | x 60.00% | $ |
| Deli Taken | $ | x 60.00% | $ |
| In-Store Bakery Taken | $ | x 55.00% | $ |
| Fresh Meat Taken | $ | x 60.00% | $ |
| Fresh Seafood Taken | $ | x 60.00% | $ |
| Floral Taken | $ | x 50.00% | $ |
| General Merchandise & HBC Taken | $ | x 65.00% | $ |
| Total Inventory | | | $ |

_____    ___/___/___
Seller's Authorized Agent                          Date

_____    ___/___/___
Buyer's Authorized Agent                          Date

[1] As calculated pursuant to Section 3.4.3 of the Agreement.

EXHIBIT I
to Asset Purchase Agreement

Form of Sale Approval Order

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

ORDER APPROVING DEBTORS' (A) SALE OF ASSETS
FREE AND CLEAR OF LIENS, (B) ASSUMPTION AND
ASSIGNMENT OF LEASES AND (C) RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and

twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively,

the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr.

P. 6004 and 6006 (a) authorizing the Debtors to sell leasehold interests, equipment, inventory

and if the respective store contains a pharmacy, the pharmacy scrips, including the assets

described in the asset purchase agreement (the "Purchase Agreement") attached as Exhibit A

(collectively, the "Assets"), free and clear of liens, claims, interests and encumbrances to

_____(the "Purchaser"),  (b) determining that the sale is exempt from any stamp,

transfer, recording or similar tax, (c) authorizing the Debtors to assume and assign all unexpired

leases and executory contracts identified in the Purchase Agreement in connection with the sale

(collectively, the "Leases"), (d) fixing cure amounts for the Leases, and (e) granting related relief

(the "Motion"). [The Court held a hearing on the Motion on _____, to determine any cure

amounts for the leases (the "Cure Hearing").] The Court held a hearing on the Motion on [_____], 2005 to approve the sale (the "Sale Hearing"). **Alternatives, depending on the circumstance:** [The Court has reviewed the Motion and heard the representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:] **or** [The Court has reviewed the Motion, considered the evidence and heard argument of counsel. After due deliberation and good and sufficient cause existing, the Court makes the following findings of fact:]

A. This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B. The Debtors solicited the highest or otherwise best offer for the Assets in accordance with bidding procedures (the "Bidding Procedures") and bid protections (the "Bid Protections") approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures Order"). **Alternatives, depending on circumstance:** [A competing bid was received for the Assets and the Debtors conducted an auction for the Assets on _____ (the "Auction"). At the Auction, _____ submitted the final bid of _____, representing the highest or otherwise best offer received for the Assets.] **or** [No competing bid was received and the Debtors believe the purchase price provided in the Purchase Agreement for the Assets which was attached to the Sale Motion represents the highest or otherwise best offer for the Assets].

C. The Debtors have provided interested parties (including all Landlords under the Leases and all parties asserting claims or interests in the Assets, if any, and all local, state and

federal taxing authorities and environmental authorities having jurisdiction over any Assets) with proper notice of the Motion, the Sale Hearing,[4] the Auction, the assumption and assignment of the Leases, and the fixing of any cure amounts, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

        D. The Debtors marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Bidding Procedures, the Bid Protections, the Bankruptcy Code and all other orders entered in these cases. Bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets. In their sound business judgment, the Debtors determined that: **alternatives depending on the circumstance:** [the purchase price provided in the Purchase Agreement attached to the Sale Motion was the highest or otherwise best offer] **or** [the bid submitted by the Purchaser at the Auction represented the highest or otherwise best offer] for the Assets.

        E. The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A, the Assumption and Assignment Agreement attached as Exhibit B, and all related documents, and the sale of the Assets and assumption and assignment of the Leases has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

---

[4]    All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion.