F. The Debtors have good business reasons to sell the Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

G. Neither the Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

H. The Debtors and the Purchaser proposed, negotiated and entered into the Purchase Agreement, without collusion, in good faith and at arms'-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

I. The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the protections afforded by that section.

J. The consideration the Purchaser is providing the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value.

K. The Debtors' sale of the Assets and the assumption and assignment of the Leases will facilitate the formulation and confirmation of a plan of reorganization. For this reason, the sale of the Assets and the assumption and assignment of the Leases constitute transfers to which 11 U.S.C. § 1146(c) applies.

L. The Debtors' transfer of the Assets to the Purchaser pursuant to the Purchase Agreement and the Assumption and Assignment Agreement will be a legal, valid, and effective transfer of the Assets. The Debtors' transfer of the Assets to the Purchaser vests the Purchaser with good and valid title in and to the Assets free and clear of any Liens, as defined in the Purchase Agreement, including but not limited to any claims, encumbrances, pledges, mortgages, security interests, charges, options or other interests of any kind or nature (collectively, the

"Claims and/or Interests"), with the exception of the Permitted Encumbrances and the Assumed Liabilities, if any, as defined in the Purchase Agreement. Any non-assumed Claim and/or Interest will attach to the proceeds of the sale with the same validity, enforceability and priority they now have as against the Assets, subject to any rights, claims, defenses and objections of the Debtors, Wachovia Bank National Association, as Administrative Agent and Collateral Agent for itself ("Agent") and the other financial institutions from time to time parties to the Credit Agreement dated as of February 23, 2005, as may be amended or modified (collectively, "Lenders" and together with Agent, collectively, the "DIP Lender"), and all other interested parties with respect to such Claims and/or Interests.

M. The Debtors may sell and transfer the Assets in accordance with the terms and conditions of the Purchase Agreement free and clear of all Claims and/or Interests (except the Permitted Encumbrances and the Assumed Liabilities) because any entity with any Claims and/or Interests in the Assets to be transferred (i) has consented to the Sale (including the assumption and assignment of the Leases) or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claims and/or Interests; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Holders of Claims and/or Interests, if any, who did not object, or who withdrew their objections to the Sale Motion are deemed to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2).

N. The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming

Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

O. The Debtors' assumption and assignment of the Leases in connection with the Sale is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

P. The Debtors have provided the landlords of the Leases with adequate assurance that they will promptly cure any defaults under the Leases pursuant to 11 U.S.C. §§ 365(b)(1).

Q. Pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006, the amounts set forth on Exhibit B, if any, constitute all amounts due and owing under the Leases in connection with the assumption of the Leases and will be fixed and allowed for the Leases (the "Cure Amounts"). No other amounts are due and owing by the Debtors under the Leases. The Debtors will pay the Cure Amounts, if any, in accordance with the terms and provisions of the Purchase Agreement. Upon payment of the Cure Amounts, all defaults whether monetary or non-monetary, if any, under the Leases will be deemed cured.

R. The Purchaser has provided the landlords for the Leases with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B).

S. No default of the type described in 11 U.S.C. § 365(b)(2)(D) exists under the Leases.

T. Except as expressly set forth in the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Assets or the Leases by virtue of the transfer of the Assets and the assumption and assignment of the Leases to the Purchaser. The Purchaser will not be deemed, as a result of any action taken in connection with the purchase of the Assets or the assumption and assignment of the Leases to (i) be a successor to the Debtors (other than with respect to the Assumed Liabilities and any obligations arising under the assigned Leases from and after the closing); or (ii) have, *de facto* or otherwise, merged with or into the Debtors. The Purchaser is not acquiring or assuming any liability, warranty, or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement or in any assigned Leases.

U. The Court's approval of the Purchase Agreement and the Assumption and Assignment Agreement is in the best interests of the Debtors, their estates and their creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

2. All objections to the entry of this Order or to the relief granted and requested in the Motion, including any objection to any proposed Cure Amounts, that has not been withdrawn, waived or settled at or before the Sale Hearing, are denied and overruled on the merits.

3. The Purchase Agreement and the Assignment and Assumption Agreement are each approved in all respects. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized (subject to applicable Closing conditions set forth in the Purchase Agreement), to consummate the Sale including transferring and conveying the Assets to

the Purchaser, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

4. Upon Closing, the Debtors are authorized, in accordance with 11 U.S.C. §§ 105(a), 363 and 365, to assume and assign the Leases to Purchaser.

5. The Debtors have satisfied the requirements of 11 U.S.C. §§ 365(b)(1), (3) and 365(f)(2).

6. The description of the Leases (as set forth in the Purchase Agreement) is true and correct in all material respects and reflects all material written modifications or amendments thereto.

7. The Leases will be assumed and assigned to the Purchaser, in accordance with their respective terms. The assigned Leases will remain in full force and effect notwithstanding any provision in the Leases to the contrary (including provisions of the type described in 11 U.S.C. §§ 365(b)(2), (e)(1) and (f)(1)) which prohibit, restrict or condition such assignment or transfer). The DIP Lender and all non-debtor parties who have been provided notice are deemed to have consented to the assignment of the Leases, if consent was not otherwise obtained in accordance with the Purchase Agreement or otherwise. Pursuant to 11 U.S.C. § 365(e), any provision in a Lease or in applicable law authorizing the termination of any Lease based upon the insolvency or financial condition of the Debtors at any time before the Closing, the commencement of the Debtors' bankruptcy cases, or as otherwise set forth in 11 U.S.C. § 365(e), are null and void and shall not be used to terminate or modify any such Lease.

8. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Purchase Agreement and the

Assignment and Assumption Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement. The Debtors are authorized to take all actions necessary or desirable for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Leases to Purchaser.

9. Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Purchase Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

10. The Debtors will transfer the Assets to the Purchaser upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f) (except for the Permitted Encumbrances and Assumed Liabilities). All non-assumed Claims and/or Interests, if any, will attach to the proceeds of the Sale, with the same validity, enforceability, priority, force and effect they now have as against the Assets, subject to any rights, claims, defenses and objections of the Debtors and all interested parties with respect to such Claims and Interests.

11. Except for the liabilities expressly assumed under the Purchase Agreement or hereunder (the "Assumed Liabilities"), the Purchaser shall not be liable for any Claims and/or Interests against the Debtors or the Assets, and the Purchaser shall have no successor, common control or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising,

whether fixed or contingent, with respect to the Debtors under or by reason of any theory at law or equity, including (but not limited to) any liability within the meaning of Section 4001 of the Employee Retirement Security Act of 1974, as amended. Except for the Assumed Liabilities, under no circumstance will the Purchaser be deemed a successor of or to the Debtors for any Claim and/or Interest against the Debtors or the Assets, and the Purchaser shall have no liability as a successor to the Debtors. The sale, transfer, assignment and delivery of the Assets shall not be subject to any such Claims and/or Interests, except for the Permitted Liens and Assumed Liabilities as expressly provided under the Purchase Agreement, including but not limited to the Debtors' obligations under the Leases to the extent such obligations arise before the Closing Date or as otherwise provided in the Purchase Agreement. All non-debtor parties to the Leases, shall have no recourse against Purchaser or the Assets to satisfy any default by Debtors; instead such counterparties shall look solely to Debtors or to the proceeds of sale.

12. The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

13. The Debtors' transfer of the Assets pursuant to the terms of the Purchase Agreement is a transfer pursuant to 11 U.S.C. § 1146(c). Accordingly, the making, delivery, filing or recording of any deeds, assignments or other transfer documents in connection with the sale (the "Transfer Instruments"), will not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax (including without limitation, any transfer or recordation tax applicable to deeds and/or security interests). All filing and recording officers are directed to accept for filing or recording,

and to file or record the Transfer Instruments immediately upon presentation without payment of any such taxes.

14. The Purchaser provided the Debtors with reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and applicable non-bankruptcy law, and acted in a non-collusive, fair and good faith manner. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

15. The Cure Amounts for the Leases are fixed in the respective amounts set forth on Exhibit B. All defaults, claims or other obligations of the Debtors arising or accruing under each of the Leases, if any, prior to assumption, or that could have been raised prior to assumption (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) will be cured or deemed cured by the Debtors in accordance with the Purchase Agreement, by paying the Cure Amounts. No other or further monetary amounts or obligations are due or existing under the Leases by the Debtors, whether pursuant to 11 U.S.C. § 365(b)(1) or otherwise. The Debtors will pay any Cure Amounts in accordance with the terms and provisions set forth in the Purchase Agreement.

16. The Break-up Fee contained in the Purchase Agreement is valid and fully enforceable as set forth in the Purchase Agreement.

17. Pursuant to 11 U.S.C. § 365(k), upon the assignment of the Leases to the Purchaser, (a) the Debtors and their estates are relieved from any and all liability for any breach of the Leases occurring after assignment to the Purchaser, and (b) the Purchaser is responsible for any and all claims and obligations under the Leases occurring or arising after the assignment.

18. Subject to the terms of this Order, the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser assumes all rights and obligations of the Debtors under the Leases.

19. All non-Debtor parties to the Leases are forever enjoined and estopped from contesting the Cure Amounts and from asserting any default against the Purchaser which existed or could have been asserted as of the date of the Sale Hearing.

20. Upon the Debtors' assignment of the Leases to the Purchaser, no default, whether monetary or non-monetary, will exist under the Leases. Upon entry of this Order and the assumption and assignment of the Leases, the Purchaser is deemed to be in compliance with all terms and provisions of the Leases.

21. All entities that are presently, or upon Closing may be, in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors. Prior to or upon the closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims and/or Interests in the Assets (except for the Permitted Encumbrances and Assumed Liabilities), if any. In the event any creditor fails to release its Claims and/or Interests in the Assets, the Debtors are authorized to take any action necessary to do so including, to execute and file any statements, instruments, releases and other documents on such creditor's behalf. The Purchaser is also authorized to file, register or otherwise record a certified copy of this Order at any time from and after the Closing. Once this Order is so filed, registered or otherwise recorded, the Order constitutes conclusive evidence of the release of all Claims and/or Interests against the Assets as of the Closing (except for the Permitted Encumbrances and Assumed Liabilities).

22. The Purchaser acted in good faith in purchasing the Assets and Leases under the Purchase Agreement as that term is used in 11 U.S.C § 363(m) and shall be entitled to the protections afforded a good faith purchaser pursuant to such section. The Purchaser has acted in "good faith" and the Purchase Agreement was negotiated from arms-length bargaining positions. For that reason, any reversal or modification of the Order on appeal will not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

23. The Debtors' transfer of the Assets to Purchaser will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

24. The Purchaser (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets, including the Leases (other than the Permitted Encumbrances and the Assumed Liabilities as set forth in the Purchase Agreement). The Debtors' transfer of the Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors, any affiliates of any of the Debtors or any insider of any Debtors, or the Assets by reason of such transfer under the laws of the United States or any state or territory.

25. Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets and the Leases and a bill of sale

transferring good and marketable title in the Assets to Purchaser. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

26. This Order is effective as a determination that upon Closing any and all Claims and/or Interests (except for the Permitted Encumbrances and Assumed Liabilities), if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

27. This Order is binding upon all entities who may be required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Assets.

28. This Court retains exclusive jurisdiction to (a) enforce and implement the Purchase Agreement, the Assumption and Assignment Agreement, and any other agreements and instruments executed in connection with the Purchase Agreement, (b) compel delivery of possession of the Assets to Purchaser, (c) resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, and (d) interpret, implement and enforce the provisions of this Order.

29. The terms and provisions of the Purchase Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

30. Except as contemplated by the Purchase Agreement, upon Closing, all persons who hold Claims and/or Interests against the Debtors are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

31. Upon entry of this Order and the assignment and assumption of the Leases, all non-debtor parties to the Leases are forever enjoined and estopped from contesting that the Leases and the modifications, amendments, and supplements thereto, as described in the Purchase Agreement, constitute, in all material respects, the full and complete Leases being assigned to Purchaser.

32. After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Claims and/or Interests, or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

33. Nothing in this Order is intended to or shall be deemed to modify the terms of the Purchase Agreement except as expressly provided herein. To the

extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement or contained in any chapter 11 plan of one or more Debtors and this Order, the provisions contained in this Order will control.

34. Notwithstanding Fed. R. Bankr. P. 6004(g) and 6006(d), this Order will take effect immediately upon entry.

Dated this _____ day of July, 2005 in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to
serve a copy of this Order on all
parties who received copies of the
Motion.

EXHIBIT J
to Asset Purchase Agreement

Form of Landlord Estoppel Certificate

_____
_____
_____
_____
Attention: _____

RE: Lease Agreement dated as of _____ (as amended) (the "Lease") by and between _____ ("Tenant"), and _____ ("Landlord"), with respect to that certain premises located in _____, _____ (the "Premises").

Ladies and Gentlemen:

In order to induce _____ ("Buyer"), to enter into certain purchase arrangements and lease assignments with Tenant, Landlord hereby certifies as follows:

(a) The Lease is in full force and effect on the date hereof. There are no other agreements or understandings, whether written, oral or otherwise, between Landlord and Tenant with respect to the Lease or the Premises except as follows: _____.
Landlord is the current holder of the lessor's interest in the Lease. A correct copy of the Lease, including all amendments, modifications, and side agreements to it are attached hereto as Exhibit A.

(b) To Landlord's knowledge, (i) Tenant has not assigned, transferred or hypothecated the Lease or any interest therein or sublet all or a portion of the Premises, and (ii) Tenant is the current holder of the lessee's interest in the Lease.

(c) The term of the Lease commenced _____, _____ and the current term of the Lease is scheduled to expire on _____, _____. The Lease contains the following options to extend the term beyond such expiration date: _____
_____.

(d) The Premises consist of approximately _____ net rentable square feet of space.

(e) Current annual base rent (not including any percentage or additional rent) is $_____. There are no rent concessions, free rent, rent holidays or other rent relief not set forth in full in the Lease.

Exhibit J
Page 1 of 3

(f) The percentage rent payable under the terms of the Lease is ___% of gross sales over $_____ per year.

(g) All rent, real estate taxes, charges and assessments, common area maintenance charges, operating expenses, insurance and other costs and payments due the Landlord under the Lease prior to the date hereof have been paid by Tenant as of the date of this certification, except as follows: _____. Tenant has not paid any of the rents, charges or other payments due under the Lease more than one (1) month in advance as of the date of this certification.

(h) The Landlord is holding a security deposit of $_____ under the Lease and no amount thereof has been drawn down by Landlord for rent due or for any other reason.

(i) To Landlord's knowledge, (i) there are no existing defaults by Tenant under the Lease and no state of facts exists that with the giving of notice or the passage of time, or both, could result in any default by the Tenant under the Lease, and (ii) no offsets, counterclaims, claims or defenses to the Lease exist in favor of Landlord against Tenant, except as follows: ___ _____

(j) To Landlord's knowledge, there are no existing defaults by Landlord under the Lease and no state of facts exists that with the giving of notice or the passage of time, or both, could result in any default by the Landlord under the Lease.

(k) To Landlord's knowledge, there are no existing defaults by Landlord under any loan secured by in whole or part by the Premises and no state of facts exists that with the giving of notice or the passage of time, or both, could result in any default by the Landlord under any such loan.

(l) No notice to terminate the Lease has been given or received by Landlord.

(m) Landlord is not currently subject to any bankruptcy proceedings.

(n) This Estoppel Certificate is executed and delivered by Landlord with the understanding that it will be relied upon by Tenant and Buyer in connection with their purchase arrangements and lease assignments with respect to the Lease.

(o) The information herein set forth herein is correct, or exceptions have been marked and initialed. The contents of this certificate shall be binding upon the party who executes it. This certificate may be relied on by the person to whom this certificate is addressed, by the assignee or designee of such person, and by Tenant.

Very truly yours,

LANDLORD:

_____

By:_____

Title:_____

Dated:_____

EXHIBIT K
to Asset Purchase Agreement

Form of Subordination, Non-Disturbance and Attornment Agreement

*This instrument prepared by:*




Telephone:

---

### SUBORDINATION, NON-DISTURBANCE, AND ATTORNMENT AGREEMENT

**THIS AGREEMENT** is made and entered into as of the ___ day of _____, 200_ by and between _____, a _____ ("Tenant"), and _____, a _____ ("Lender").

### Recitals:

Reference is made to that certain Lease Agreement dated _____ (as the same might have heretofore been amended or might hereafter be amended, extended, supplemented, or restated, the "Lease") between _____ ("Original Tenant") and _____, a _____ ("Landlord"), with respect to the real property located in _____, _____ (the "Property"), more particularly described in **Exhibit A** attached hereto and made a part hereof as now or hereafter assigned by Original Tenant to Tenant.

Lender holds a mortgage/deed to secure debt/deed of trust covering the Property and an assignment of all leases relating thereto, including the Lease (said mortgage/deed to secure debt/deed of trust and assignment of leases, as the same may hereafter be amended, increased, renewed, extended, spread, consolidated, severed, restated, or otherwise changed from time to time (the consent of Tenant to which shall not be required), are referred to herein as the "Security Documents"). Tenant and Lender desire to execute this Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants hereinafter set forth, the parties hereto do mutually covenant and agree as follows:

1. **Subordination.** Subject to the terms of this Agreement, Tenant hereby agrees and covenants that the Lease, all of Tenant's rights thereunder, Tenant's leasehold estate created thereby, all of Tenant's right, title and interest in and to the

Property, and any lease hereafter executed by Tenant covering any part of the Property, are and shall be completely subject, subordinate, and inferior to (a) the Security Documents and the rights of Lender thereunder, and all right, title and interest of Lender in the Property, and (b) all other Security Documents now or hereafter securing payment of any indebtedness of Landlord (or any prior landlord) to Lender which cover or affect the Property; provided, however, that notwithstanding anything to the contrary contained herein or the Security Documents, Lender hereby agrees that any Award and Proceeds shall be applied as provided for in the Lease, unless the Lease is terminated pursuant to the terms thereof. This Agreement is not intended and shall not be construed to subordinate the Lease to any mortgage, deed to secure debt, or other security document other than those referred to in the preceding sentence securing indebtedness to Lender. Without limitation of any other provisions hereof, Lender may at its option and without joinder or further consent of Tenant, Landlord, or anyone else, at any time after the date hereof subordinate the lien of the Security Documents (or any other lien or security interest held by Lender which covers or affects the Property) to the Lease by executing an instrument which is intended for that purpose and which specifies such subordination, and in the event of any such election by Lender to subordinate, Tenant will execute any documents required to evidence such subordination.

2. **Lender's Right to Cure.** Notwithstanding anything to the contrary in the Lease or this Agreement, prior to Lender acquiring the interest of Landlord in and to the Property and so long as the Security Documents are in full force and effect, Tenant shall give prompt written notice to Lender of any default or breach by Landlord under the Lease that are of such a nature as to give Tenant a right to terminate or cancel the Lease, to reduce rent, or to credit or offset any amounts against future rents. After Lender receives such notice, Lender shall have a period of thirty (30) days beyond the time available to Landlord under the Lease in which to cure the breach or default by Landlord, provided that if the default or breach does not arise solely from the nonpayment of money and cannot reasonably be cured within the time period set forth above, then Lender will have such additional time as is necessary to cure the default so long as Lender commences the cure thereof within original time period set forth above and diligently and in good faith pursues same to completion. Lender shall have no obligation to cure (and shall have no liability or obligation for not curing) any breach or default by Landlord. If, in curing any such default, Lender requires access to the Property to effect such cure, Tenant shall furnish access to the Property to Lender as required by Lender to effect such cure at all reasonable times, provided that Tenant's occupancy, use and enjoyment of the Property is not unreasonably disrupted thereby. Notwithstanding anything to the contrary contained in this Agreement, any such payment or performance by Lender beyond Landlord's cure period shall only serve to prevent the existence of a default by Landlord under the Lease permitting Tenant to terminate or cancel the Lease, and, without limiting the generality of the foregoing, such payment or performance shall not, to the extent such default or breach has not been cured by Lender, diminish, affect, impede or impair any other rights or remedies of Tenant against Landlord.

3.    **Non-Disturbance.** So long as an Event of Default has not occurred and is subsisting under the Lease, Tenant shall not be disturbed by Lender in Tenant's possession, enjoyment, use, and occupancy of the Property during the original or any extensions of the term of the Lease or any renewals or modifications thereof. Nothing contained herein shall prevent Lender from naming or joining Tenant in any foreclosure or other action or proceeding initiated by Lender pursuant to the Security Documents to the extent necessary under applicable law in order for Lender to avail itself of and complete the foreclosure or other remedy, but such naming or joinder shall not be in derogation of the rights of Tenant as set forth in this Agreement.

4.    **Payment of Rents to Lender.** Upon Tenant's receipt of Lender's written request, Tenant agrees that it will make the payments to be made by Tenant under the Lease directly to Lender, which payments shall be credited against the payments due under the Lease. Prior to the time that a Successor Landlord succeeds to the interest of Landlord in the Property as described in Section 5 below, receipt of such payments by Lender shall not relieve Landlord of its obligations under the Lease nor operate to make Lender responsible for the performance thereof, and Tenant shall continue to look solely to Landlord for performance of such obligations.

5.    **Attornment.** If, at any time, Lender or any person or entity or any of their successors or assigns shall acquire the interest of Landlord in and to the Property (each, including without limitation Lender, a "Successor Landlord") through foreclosure, deed-in-lieu of foreclosure, assignment-in-lieu of foreclosure, or any other method (a "Foreclosure"), then so long as the Lease is then in full force and effect, Tenant complies with this Agreement, and no Event of Default shall have occurred and be subsisting under the Lease, the Lease shall continue in full force and effect and shall not be terminated or disturbed except in accordance with the terms thereof. Tenant shall thereupon be bound to Successor Landlord, and Successor Landlord shall be bound to Tenant, under all the terms, covenants, and conditions of the Lease and for the balance of the term thereof remaining, and any extensions or renewals thereof, with the same force and effect as if Successor Landlord was the original landlord under the Lease. Tenant does hereby attorn to Successor Landlord as its landlord, said attornment to be effective and self-operative without the execution of any additional documents by the parties hereto immediately upon Successor Landlord's succeeding to the interest of Landlord under the Lease. Tenant agrees, however, to execute and deliver at any time and from time to time, upon the request of Landlord or of any holder(s) of any of the indebtedness or other obligations secured by the Security Documents any instrument or certificate which, in the reasonable judgment of such holder(s), may be necessary or appropriate in any such foreclosure proceeding or otherwise to evidence such attornment, including, if requested, a new lease of the Property on the same terms and conditions as the Lease for the then unexpired term of the Lease, together with such renewals, extensions and right of first refusal and other rights contained in the Lease.

6. **Protection of Successor Landlord.** Notwithstanding anything to the contrary in the Lease or the Security Documents, Successor Landlord shall not be liable for or bound by any of the following matters:

(a) Except for any default or breach of which Lender has been notified pursuant to Section 2 hereof but has failed to cure, any default or breach in Landlord's obligations under the Lease occurring prior to the time Successor Landlord succeeds to the interest of Landlord in the Property (provided, however, that this provision shall not relieve Successor Landlord from any obligations under the Lease from and after the date such party acquires title to the Property, with respect to matters which are ongoing in nature, and which are the obligation of Landlord under the Lease);

(b) Any payment of rent (including fixed rent, percentage rent, or additional rent) that Tenant might have made to Landlord more than thirty (30) days before the date such rent was first due and payable under the Lease with respect to any period after the time Successor Landlord succeeds to the interest of Landlord in the Property;

(c) Any deposit or security which was delivered to Landlord but which was not subsequently delivered to Successor Landlord;

(d) Any modification or amendment to the Lease, or any waiver of any terms of the Lease, made without Lender's prior written consent; and

(e) Any consensual or negotiated surrender, cancellation, or termination of the Lease, in whole or in part, agreed upon between Landlord and Tenant without the consent of Lender.

7. **Exculpation of Successor Landlord.** Notwithstanding anything to the contrary in the Lease, upon any attornment pursuant to this Agreement the Lease shall be deemed to have been automatically amended to provide that Successor Landlord's obligations and liability under the Lease shall never extend beyond Successor Landlord's (or its successors' or assigns') interest, if any, in the Property from time to time, Successor Landlord's interest in the Lease, the rents therefrom, and the proceeds from any loan or sale or other disposition of the Property by Successor Landlord (collectively, the "Successor Landlord's Interest"). Tenant shall look exclusively to Successor Landlord's Interest for payment or discharge of any obligations of Successor Landlord under the Lease as affected by this Agreement. Tenant shall not collect or attempt to collect any such obligations out of any other assets of Successor Landlord.

8. **Notices.** Any notice, election, communication, request or other document or demand required or permitted under this Agreement shall be in writing and shall be deemed delivered on the earlier to occur of (i) receipt or (ii) the date of delivery, refusal, or nondelivery indicated on the return receipt, if deposited in a United States Postal Service Depository, postage prepaid, sent certified or registered mail, return receipt