### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

### AMENDED
### MOTION OF THE DEBTORS FOR ORDER AUTHORIZING THE DEBTORS (I) TO SELL LEASEHOLD INTERESTS IN TARGETED STORES FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND EXEMPT FROM TAXES, (II) TO ASSUME AND ASSIGN LEASES (III) TO REJECT TARGETED LEASES THE DEBTORS ARE UNABLE TO SELL, AND (IV) GRANTING RELATED RELIEF

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), move the Court for entry of one or more orders pursuant to 11 U.S.C. §§ 363, 365, 1146(c) and Rules 6005 and 6006, Federal Rules of Bankruptcy Procedure, authorizing the Debtors (i) to assume and assign leases and sell their leasehold interests in Targeted Stores (defined below) which were not sold at the auction held on July 18, 2005, free and clear of liens, claims and encumbrances and exempt from taxes, (ii) in their sole discretion, to reject leases for the Targeted Stores the Debtors are unable to sell, and (iii) granting related relief (the "Motion"). In support of the Motion, the Debtors respectfully represent:

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

## Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the Bankruptcy Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "New York Court").  By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.

## Strategic Plan

4.      Prior to the Petition Date, the Debtors and their financial advisors began a comprehensive analysis of the Debtors' businesses to determine how best to maximize their value. In connection with this analysis, the Debtors announced a series of actions to improve their competitive position, which the Debtors refer to as their Strategic Plan.

5.      In connection with the Strategic Plan, the Debtors and their financial advisors analyzed the Debtors' market areas and determined that some of these markets are noncore, with limited opportunities for the Debtors and unprofitable operations in the aggregate.  Prepetition, the Debtors sold or closed 111 stores in these noncore areas and another 45 unprofitable stores located in core market areas.  Postpetition, the Debtors have determined that all stores in the noncore areas should be sold or closed.

6.      Since the Petition Date, the Debtors and their financial advisors have continued to analyze all of Debtors' stores, including each store's market share, cash flow, profitability, real estate quality and financial outlook.  Based upon this analysis, the Debtors identified additional stores which are located in core market areas but remain unprofitable and should be sold or closed (collectively, the "Targeted Stores").  The Debtors marketed the Targeted Stores extensively and received a number of bids for the stores.  On July 18, 2005, the Debtors held an auction for the Targeted Stores (the "July Auction").  The Debtors received bids on a number of the Targeted Stores (principally by other grocers) and sold 84 of the Targeted Stores at hearings held on July 27, 28 and 29, 2005.  Since the July Auction, the Debtors have continued to market the remaining Targeted Stores to nongrocers through DJM Asset Management.  Attached as Exhibit A is a schedule identifying each of these remaining Targeted Stores together with a summary description of the relevant lease, the lease term and the identity of the landlord (collectively, the "Targeted Leases").

## Relief Requested

7.      By this Motion, the Debtors now seek to (i) assume and assign the Targeted Leases and sell their leasehold interests in those Targeted Stores not sold at the July Auction, free and clear of liens, claims and interests and exempt from stamp or similar taxes, and (ii) (in their sole discretion after consultation with the Creditors' Committee and representatives of and counsel for

Wachovia Bank, N.A., as agent for itself and the Debtors' secured post-petition lenders (the "DIP Lender Agent Representatives"), reject any Targeted Leases which the Debtors are not ultimately able to sell.  The Debtors will hold an auction for the highest or best offers for the Targeted Leases on Tuesday, August 9, 2005 at 10:00 a.m. E.T. at the offices at Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (the "August Auction").

8.    In conducting the August Auction, the Debtors will comply with the bidding procedures approved by the Court by Order dated June 21, 2005 (Docket No. 1801) (the "Bidding Procedures").  A copy of the Bidding Procedures is attached as Exhibit B.  Any bidder who desires to submit a bid on any Targeted Lease must do so by 5:00 p.m. E.T. on **August 2, 2005**.  The bidder must submit an original copy of the bid to Winn-Dixie Stores, Inc., c/o DJM Asset Management, LLC 445 Broad Hollow Road, Suite 417, Melville, New York, 11747, with a copy to Cynthia C. Jackson, Esq. at Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202; Brian Walsh, Esq. at King & Spalding, LLP, 191 Peachtree Street, Atlanta, Georgia 30303; Matthew S. Barr, Esq. at Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, New York 10005-1413; Jonathan N. Helfat, Esq. at Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169.  To qualify, the bidder must also execute an agreement substantially in the form attached as Exhibit C (the "Agreement"), marked to show any changes sought by the bidder.

9.    At the conclusion of the August Auction, the Debtors will determine, after consultation with the DIP Lender Agent Representatives and the Committee's Professionals (as defined in the Bidding Procedures), which, if any, is the highest or best offer for any particular Targeted Lease or group of Targeted Leases (a "Successful Bid").  The Debtors will file the proposed Agreement for each Successful Bid and serve within two business days of the conclusion of the August Auction, by overnight or hand delivery, a copy of the proposed agreement and a

declaration regarding adequate assurance of future performance on (i) the affected landlord, (ii) the Committee's Professionals, (iii) the U.S. Trustee, and (iv) the DIP Lender Agent Representatives.  A hearing to approve each Successful Bid will be held on August 26, 2005 (or such other later date as the Debtors designate) (the "August Hearing").

10.    At the August Hearing, the Debtors will request entry of orders authorizing the Debtors to sell and assume and assign the Targeted Leases free and clear of liens, claims and interests to the proponent of the Successful Bid (the "Successful Bidder").  In addition, the Debtors will request entry of an order for authority to reject (in their sole discretion, after consultation with the Creditors' Committee and the DIP Lender Agent Representatives) any Targeted Leases the Debtors are unable to sell prior to the August hearing with such rejection to be effective ten days after the Debtors deliver a termination notice to the affected landlord.[2]

11.    To the extent the Debtors enter into an Agreement approved by the Court, the Debtors will pay any undisputed cure amount due under the Targeted Lease at closing (provided however, that the Debtors have a right to terminate the Agreement to the extent the cure amount is excessive).  Any disputed cure issues that are not resolved by the Debtors and the relevant landlord will be adjudicated at a later hearing after notice to the landlord of the affected Targeted Lease.

### Notice

12.    The Debtors will serve this Motion, together with a notice of hearing upon all landlords of the Targeted Leases and the Master Service List.  **Objection Deadline:**  Only objections filed and served on D. J. Baker at djbaker@skadden.com, Skadden, Arps, Slate, Meagher, & Flom, LLP, Four Times Square, New York, New York 10036 and on Cynthia C. Jackson at cjackson@smithhulsey.com, Smith Hulsey & Busey, 225 Water Street, Suite 1800,

---

[2] The Debtors may, in their sole discretion, after consultation with the Creditors' Committee and the DIP Lender Agent Representatives, decide to continue to market any Targeted Lease not sold at the August Auction.

Jacksonville, Florida 32202, and Jonathan N. Helfat at Jhelfat@oshr.com, Otterbourg, Steindler,

Houston & Rosen, P.C., 230 Park Avenue, 29th Floor, New York, New York 10169, and Matthew

S. Barr at Mbarr@milbank.com, Milbank, Tweed, Hadly & McCloy, LLP, 1 Chase Manhattan

Plaza, New York, New York 10005-1413 so as to be received by **August 22, 2005** will be

considered by the Bankruptcy Court at the Sale Hearing.

<u>**Applicable Authority**</u>

**A.      Authority to Sell Leasehold Interests.**

13.     Bankruptcy Code Section 363(b)(1) provides:  "The trustee, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate."  11 U.S.C. § 363(b)(1).  Bankruptcy Code Section 1107(a) gives the Debtors, as debtors-

in-possession, the same authority as a trustee to use, sell or lease property under Section 363(b)(1).

14.     A debtor's sale under Section 363(b)(1) should be approved when supported by a

sound business reason.  *See In re BDK Health Mgmt., Inc.,* Case Nos. 98-00609-6B1, 1998 WL

34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where

sale serves a sound business purpose); *see also Official Comm. of Unsecured Creditors of LTV

Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143-45 (2d Cir.

1992) (holding that a judge determining a Section 363(b) application must find from the evidence

presented before him a good business reason to grant such application); *Fulton State Bank v.

Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (holding that a debtor in possession

may sell assets of his estate outside the ordinary course of business if he has an articulated

business justification); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986)

(holding that "a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under

§ 363(b)(1) when a sound business purpose dictates such action"); *Comm. of Equity Sec. Holders

v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that the business

judgment test is the proper standard to apply when considering a debtor's motion to sell assets outside the ordinary course of business); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (holding that a trustee must show that "there is a sound business purpose for conducting the sale prior to confirmation of a plan"); *In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) ("[T]he Trustee has the burden to establish sound business reasons for the terms of the proposed sale").

15.     Once a court is satisfied that a sound business reason for the sale exists, the court must also consider whether (a) the sale price is fair and reasonable, (b) the purchaser is proceeding in good faith, and (c) the debtor has provided interested parties with adequate and reasonable notice. *Delaware & Hudson*, 124 B.R. at 175-76.

16.     The Debtors have a sound business reason for pursuing this sales process in the manner set forth in this Motion.  To the extent the Debtors receive a Successful Bid for any of the Targeted Leases, the Debtors need to consummate the sale as quickly as possible to avoid additional administrative liability.

**B.     The Sale Free and Clear of All Liens and Encumbrances**

17.     The Debtors request that the sale of any of the Targeted Leases be approved free and clear of any lien, claim, or interest.  This relief is consistent with the provisions of Bankruptcy Code Section 363(f) in these cases.

18.     Pursuant to Section 363(f) of the Bankruptcy Code, a debtor may sell property of the estate free and clear of all liens and encumbrances, after notice and a hearing.  *See In re Parrish*, 171 B.R. 138, 140 (Bankr. M.D. Fla. 1994) (noting that compliance with the requirements of Section 363(f) is a prerequisite to a sale free and clear of liens).

19.     The Debtors believe that there are no interests in or claims against the Targeted Leases, other than those of Wachovia Bank, National Association, as Administrative Agent and

Collateral Agent (collectively, the "DIP Lender") for itself and the Debtors' other senior secured lenders, and the nondebtor parties to the leases and subleases.  Any undisputed claims of the landlord will be paid by the Debtors upon closing, in accordance with the terms and conditions of the Agreement and Bankruptcy Code Section 365.  Any disputed cure will be satisfied upon adjudication by the Bankruptcy Court at the Cure Hearing or by resolution of the Debtors and the affected landlord.  The interests of the DIP Lender will be satisfied because the Debtors will cause the net proceeds from any of these sales to be paid to the DIP Lender to the extent required in accordance with the terms and conditions of the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-Petition Secured Lenders dated March 23, 2005 (Docket No. 501) (the "Final Financing Order") and the Loan Documents (as defined in the Final Financing Order).

20.    To the extent that any other interests in or claims against the Targeted Leases exist, the Debtors will satisfy Bankruptcy Code Section 363(f).  Moreover, any holder of any interests or claims will be adequately protected because interests and claims, if any, will attach to the proceeds of the sale, with the same validity, enforceability, priority, force and effect they now have as against the Targeted Assets, subject to any rights, claims, defenses and objections of the Debtors and all interested parties.  Accordingly, the requirements of Bankruptcy Code Section 363(f) will be satisfied, and the sale of the Targeted Leases free and clear of any lien, claim, or interest is appropriate.  Thus, the proposed sale process satisfies section 363(f) of the Bankruptcy Code.

C.      **Good Faith Purchaser**

21.     Bankruptcy Code Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

22.     The Bankruptcy Code does not define the term "good faith".  Courts, however, have held that a party would have to show fraud or collusion between the purchaser and other bidders or the Debtors to demonstrate a lack of good faith.

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchasers' good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988).

*Accord Kabro Assoc. of W. Islip, LLC v. Colony Hill Assoc. (In re Colony Hill Assoc.)*, 111 F.3d 269, 276 (2d Cir. 1997).

23.     The Debtors submit that: (a) the Targeted Leases were marketed extensively; and (b) the marketing process that occurred and the notice of the August Hearing ensure that the Successful Bidder has not exerted undue influence over the Debtors.  If a landlord objects to any proposed sale, the Debtors will also offer additional evidence of the purchaser's good faith. Accordingly, at the August Hearing the Debtors will request that the Court find that the respective Successful Bidder acted in good faith within the meaning of Bankruptcy Code Section 363(m). *See BDK Health Mgmt.*, 1998 WL 34188241 at *4 (finding that the purchaser is entitled to the

protections of Bankruptcy Code Section 363(m) because the sale was negotiated at arms-length, proposed in good faith and the consideration for the assets was fair and reasonable).

**D.      Authority to Assume and Assign the Leases**

24.      Bankruptcy Code Section 365(a) authorizes a debtor to assume and assign or to reject an unexpired lease, subject to the Court's approval.

25.      The standard that is applied in determining whether an unexpired lease should be assumed and assigned or rejected is the debtor's "business judgment" that the assumption or rejection is in the debtors' economic best interest. *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984).  The Debtors' assumption and assignment of the Targeted Leases subject to a Successful Bid is an integral part of the Debtors' reorganization efforts and, therefore, within the Debtors' sound business judgment.  Additionally, the Debtors rejection of unsold Targeted Leases is necessary to eliminate liability and related obligations under such Targeted Leases. Accordingly, rejection of the unsold Targeted Leases is also within the Debtors' sound business judgment.

26.      Bankruptcy Code Section 365(b)(1) codifies the requirements for assuming an unexpired lease of a debtor:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee:
>
> (A)      cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B)      compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

27.     The Debtors have agreed to comply with Bankruptcy Code Section 365(b)(1)(A) and (B) by curing any defaults under any Targeted Leases to be assumed and assigned.

28.     At the August Hearing, the Debtors will satisfy Bankruptcy Code Section 365(b)(1)(C) for any Targeted Leases to be assumed and assigned, by demonstrating adequate assurance of future performance by the proposed assignee.  Bankruptcy Code Section 365(f)(2) provides:

The trustee may assign an executory contract or unexpired lease of the debtor only if:

(A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

29.     The meaning of "adequate assurance" depends on the facts and circumstances of each case, but should "be given a practical pragmatic construction".  *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992) (citation omitted), *aff'd*, 993 F.2d 300 (2d Cir. 1993).  The assurance that rent will be paid is a chief determinant in assessing adequate assurance of future performance.  *Id*.

30.     Adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

(A)     of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor

and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B)     that any percentage rent due under such lease will not decline substantially;

(C)     that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D)     that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

Thus, adequate assurance includes demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance was present when prospective assignee of lease from debtor had the financial resources, and an expressed willingness, to devote sufficient funding to business in order to give it strong likelihood of succeeding).

31.     If a landlord of any affected Targeted Lease objects to an assumption and assignment, the Debtors will offer evidence at the August Hearing to demonstrate the financial wherewithal of the relevant assignee.  At the August Hearing, the Court and interested parties will have the opportunity to evaluate and, if necessary, challenge the ability of the assignee to provide adequate assurance of future performance under the particular lease to be assumed and assigned. The Court will therefore have sufficient bases to find that adequate assurance of future performance exists.

32.     Bankruptcy Code Section 1146(c) provides that "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax

or similar tax." 11 U.S.C. § 1146(c). This language has been construed to include transfers pursuant to a sale outside of, but in furtherance of effectuating, a reorganization plan. *Webster Classic Auctions, Inc*., 318 B.R. 216, 218 (Bankr. M.D. Fla. 2004) (adopting rationale that purpose of Bankruptcy Code Section 1146(c) is to facilitate reorganizations and that transfers need not be postconfirmation); *BDK Health Mgmt.*, 1998 WL 34188241, at \*8 (granting Bankruptcy Code Section 1146(c) relief outside of confirmed plan); *see also In re T.H. Orlando Ltd.*, 391 F.3d 1287, 1291 (11th Cir. 2004) (exemption applies where transfer is necessary to the consummation of a plan.); *City of New York v. Jacoby-Bender, Inc. (In re Jacoby-Bender, Inc.)*, 758 F.2d 840, 841-42 (2d Cir. 1985) (holding that where a transfer is necessary to the consummation of a plan, the transfer is "under a plan" within meaning of Bankruptcy Code section 1146(c)); *City of New York v. Smoss Enters. Corp. (In re Smoss Enters. Corp.)*, 54 B.R. 950, 951 (E.D.N.Y. 1985) (stating that Section 1146(c) was designed to reach transfers on which "the plan hinged and which the court had to approve prior to the confirmation"), *aff'd mem.*, No. 85-5106, 1986 U.S. App. LEXIS 28677 (2d Cir. Mar. 31, 1986); *In re United Press Int'l, Inc.*, Case No. 91 B 13955 (FGC), 1992 Bankr. LEXIS 842, at \*4, \*6-7 (Bankr. S.D.N.Y. May 18, 1992) (holding that Bankruptcy Code Section 1146(c) exemption applied to Section 363 sale where it found "the value of the Debtor's assets is likely to deteriorate [during the] time necessary to . . . confirm a plan"); *In re Permar Provisions, Inc.*, 79 B.R. 530, 533-34 (Bankr. E.D.N.Y. 1987) (stating that determination of applicability of Bankruptcy Code Section 1146(c) exemption is same for pre- and post-confirmation dispositions of property, namely "whether the sale of 'property is essential to confirmation of the plan'") (citation omitted).

33. Although the Debtors have not yet filed a Chapter 11 plan of reorganization, an integral part of any plan will be the Debtors' ability to divest themselves of the Targeted Leases. In light of the foregoing, the Debtors respectfully submit that the sale of the Targeted Leases is an

integral part of, and a necessary predicate toward, the Debtors' Chapter 11 reorganization plan. Accordingly, the sales should be exempt under Bankruptcy Code Section 1146(c) from any stamp, transfer, sales, recording or similar taxes.

### Elimination of 10-Day Stay Under Rule 6006(d)

34.    Pursuant to Rule 6006(d), Federal Rules of Bankruptcy Procedure, unless the Court orders otherwise, all orders authorizing assumption and assignments of Targeted Leases are automatically stayed for ten days after entry of the order.    Because of the Debtors' need to promptly assume and assign the Targeted Leases, the Debtors request a waiver of the ten day stay period.

## Conclusion

For the foregoing reasons, the Debtors respectfully request that the Court enter orders (a) substantially in the form attached as Exhibit D, authorizing the Debtors to sell their leasehold interests in Targeted Stores free and clear of liens, claims and interests and exempt from stamp or similar taxes, and assume and assign any particular Targeted Lease to any Successful Bidder at the conclusion of the August Auction, (b) authorizing the Debtors to reject (in their sole discretion) any of the Targeted Leases the Debtors are ultimately unable to sell, and (c) granting such other and further relief as the Court deems just and proper.

Dated: August 1, 2005

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By    */s/ D. J. Baker*
     D. J. Baker
     Sally McDonald Henry
     Rosalie W. Gray
     Eric M. Davis

Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Attorneys for Debtors

SMITH HULSEY & BUSEY

By    */s/ Cynthia C. Jackson*
     Stephen D. Busey
     James H. Post
     Cynthia C. Jackson  (F.B.N. 498882)

225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Attorneys for Debtors

501253.7

15