**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

**DEBTORS' RESPONSE IN OPPOSITION TO**
**WAH HONG GO'S MOTION FOR RELIEF FROM STAY**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), file this response in opposition to Wah Hong Go's Motion for Relief from Stay (Docket No. 1524). As discussed below, the motion should be denied because the movant will suffer no prejudice if he is temporarily precluded from prosecuting his claim in a different forum while the Debtors are afforded the opportunity to resolve this and thousands of other litigation claims through the Debtors' proposed claims resolution procedure.

**The Debtors' Claims Resolution Procedure**

1.    On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the Bankruptcy Code, as

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "New York Court").  By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court.

2. As of the Petition Date, more than 2,800 claimants, including Wah Hong Go, had commenced (or threatened to commence) litigation against the Debtors.  The aggregate amount of these litigation claims presently exceeds $44 million.  Although these litigation claims run the gamut in terms of asserted liability, many seek relatively small amounts.

3. Upon the commencement of these Chapter 11 cases, all actions by the claimants to collect or recover on the litigation claims were stayed under Section 362(a) of the Bankruptcy Code.  Accordingly, the litigation claims remain contingent, disputed and unliquidated.  In many cases, the Debtors believe that they have no liability on these claims or the Debtors dispute the amounts of such claims.  Pursuant to an order entered by this Court on April 28, 2005 (Docket No. 932), the deadline for filing proofs of claim for claims against the Debtors was set for August 1, 2005 (the "Bar Date").  The Debtors expect to file objections to a majority of the proofs of claim filed with respect to the litigation claims in order to contest the validity or amount of such claims.

4. On or before August 11, 2005, the Debtors will file a motion with this Court seeking authorization to establish procedures for liquidating and settling litigation claims through direct negotiation or alternative dispute resolution (the "Claims Resolution Procedure").  The Claims Resolution Procedure will promote the cost

effective and timely liquidation and settlement of all Litigation Claims.[2]  The establishment of a Claims Resolution Procedure will be in the best interests of the Debtors, their estates and all persons asserting Litigation Claims (the "Claimants") because:

      a.    It is in the best interests of the Debtors to determine the claims against them as efficiently as possible to reduce costs and maximize the value of their estates.  It would be time consuming, unduly burdensome and expensive for the Debtors to have to defend against and liquidate thousands of Litigation Claims in forums other than this Court.[3]

      b.    The legal fees and expenses of litigating thousands of Litigation Claims in multiple forums would be substantial for the Debtors and their estates.  Likewise, the expense of litigation may prohibit many Claimants from fully litigating their claims, particularly in light of the uncertainty of the percentage recovery that will be available on allowed unsecured claims in these Chapter 11 cases.[4]

---

[2] "Litigation Claim" will be defined in the Claims Resolution Procedure to include every claim against any of the Debtors, their employees or others which the Debtors are contractually or legally obligated to defend or indemnify, which arose on or before the Petition Date for (i) personal injury or property damage, including, but not limited to, claims alleging bodily injury, false arrest, false imprisonment, slip and fall, libel, slander, mental suffering, emotional distress, loss of consortium, pain and suffering and any tort relating to the operation of a motor vehicle, (ii) wrongful death, (iii) products liability, (iv) consumer complaints, or (v) employment law disputes (but excluding claims arising under workers' compensation laws).

[3] The Debtors acknowledge that certain Claimants ultimately may seek to have their personal injury claims liquidated outside of this Court, because this Court may not liquidate personal injury tort claims.  See 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5).

[4] The Debtors have not yet filed a proposed plan of reorganization or disclosure statement and therefore no percentage distribution for unsecured creditors has been established.

c. The Claims Resolution Procedure will facilitate the consensual liquidation of many Litigation Claims in a manner that is most efficient for both the Debtors and the Claimants.

d. The rationale for the Claims Resolution Procedure is based, in part, on the practical consideration that most litigation is settled prior to trial, but only after each side has had an opportunity to analyze the merits of its and its opponent's case. By requiring Claimants to comply with the Claims Resolution Procedure, each Claimant will be required to analyze, present and document the Litigation Claim in an informal, inexpensive way that should result in a large percentage of such Litigation Claims being resolved without the need of further litigation. In addition, settlement considerations change in bankruptcy because the ultimate potential recovery for plaintiffs, and the ultimate cost to the Debtors, can be significantly lower than outside of bankruptcy. The Chapter 11 case therefore encourages all parties to settle claims and avoid unwarranted expense.

e. The Claims Resolution Procedure will treat the Claimants fairly. The Claims Resolution Procedure is a non-judicial procedure for liquidating Litigation Claims more quickly than full trial litigation in state, federal or bankruptcy court. The parties will have sufficient opportunity to reach consensual settlements through direct negotiation and alternative dispute resolution. During the suspension of litigation there is limited delay, but the Claimant's substantive rights are not abridged in any way.

f. Further, there will be no requirement that a Claimant settle its Litigation Claim pursuant to the Claims Resolution Procedure. Rather, the

Debtors will propose only that a Claimant be required to comply, in good faith, with the Claims Resolution Procedure before being entitled to seek relief from the automatic stay to litigate its Litigation Claim.

  g. Finally, the Claims Resolution Procedure will ultimately provide that the Claimants retain whatever rights they have to liquidate their Litigation Claims through litigation in an appropriate forum if the parties cannot resolve the Litigation Claim by the less expensive and less time-consuming process of direct negotiation or alternative dispute resolution.

  5. In sum, the Claims Resolution Procedure will provide a process for the cost effective settlement and liquidation of many Litigation Claims and represents the best and most efficient method of maximizing the value of the Debtors' estates.

### Go's Motion for Relief from the Automatic Stay Should Be Denied

  6. Under section 362(a)(1) of the Bankruptcy Code, the filing of a petition under Chapter 11 operates as a stay of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case.

  7. Section 362(d) of the Bankruptcy Code provides that a court may terminate the automatic stay for "cause". In determining whether cause exists, several courts have held that the following three factors should be considered:

> (a) whether any "great prejudice" to either the estate or debtor will result from continuation of the civil suit;

> (b) whether the hardship to movant resulting from maintaining the stay considerably outweighs the hardship of the debtor; and
>
> (c) whether the movant has a probability of prevailing on the merits of its case.
>
> *Matter of Video Cassette Games, Inc.*, 108 B.R. 347, 349 (Bankr. N.D. Ga. 1989).

*See also, In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D. Ill. 1986); *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984); *In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990).

8. In his motion, Go seeks relief from the automatic stay to file and prosecute a lawsuit against the Debtors pursuant to a Notice of Right to Sue issued to Go by the United States Equal Employment Opportunity Commission (the "EEOC"). Go states that the EEOC issued the Notice of Right to Sue on March 10, 2005, and that the deadline to file suit pursuant to the notice expired on June 10, 2005. Apparently, Go assumes (incorrectly) that, to preserve his right to sue, he needs stay relief which authorizes him to file a lawsuit in Federal Court, to file a case retroactive to June 8, 2005, and to prosecute that lawsuit through judgment.

9. Go's belief that his right to sue will be lost absent retroactive stay relief is misguided because section 108(c) of the Bankruptcy Code protects Go's right to file such litigation for 30 days after the automatic stay terminates with respect to Go's claim. Section 108(c) provides:

> (c) [I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not

6

> expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

*See also, In re Page-Wilson Corp.,* 37 B.R. 527 (Bankr. D. Conn. 1984) (holding that period for institution of employee's age discrimination suit against debtor was tolled during period in which automatic stay was in effect). Thus, Go will suffer no prejudice if his request is denied.

10. Conversely, the Debtors will suffer substantial prejudice if Go's claim is allowed to go forward. Specifically, the Debtors have no applicable insurance for employment-related claims such as Go's. Thus, the cost of defending Go's claim will drain the Debtors' estates of resources to the detriment of other creditors.

11. More importantly, lifting the automatic stay will be prejudicial to the Debtors because it would impede their ability to implement a comprehensive plan for the resolution of Litigation Claims. Because it is in the best interests of the Debtors to determine the claims against them as efficiently as possible to reduce costs and maximize the value of their estates, the Debtors submit that it would be time consuming, unduly burdensome and expensive to defend against and liquidate Litigation Claims in forums other than this Court. The Debtors should be afforded a breathing spell from creditor claims to implement procedures for the resolution of the Litigation Claims. If the Court lifts the automatic stay with respect to Go's claim, then large numbers of other claimants

will likely seek similar relief, which would interfere with the Debtors current reorganization efforts. Where a case will interfere with a pending bankruptcy proceeding, the stay should not be lifted:

> Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited. In short, the Debtor should not be required to devote energy to this collateral matter at this juncture.
>
> *In re Penn-Dixie Indus.*, 6 B.R. 832, 835 (Bankr. S.D.N.Y. 1980).

Even slight interference with the administration of a bankruptcy case may be sufficient to preclude relief from the automatic stay. *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984). Accordingly, grounds do not exist for lifting the automatic stay.

12. The burden forced upon the Debtors by the prosecution of Go's claim outweigh any harm to Go. As an unsecured creditor, Go bears the burden of proving that the balance of hardships tips significantly in his favor of granting relief as against the hardships to the Debtor in denying relief. *See In re Ward*, 837 F.2d 124, 128 (3d Cir. 1988); *In re FRG, Inc.*, 114 B.R. 75, 80 (E.D. Pa. 1990); *In re Metro Transportation Co.*, 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988); and *In re Ronald Perlstein Enterprises, Inc.*, 70 B.R. 1005, 1009-10 (Bankr. E.D. Pa. 1987). Go has not made nor can he make such showing.

13. There has been no demonstration by Go of any real injury which would result from a denial of the relief sought. Go admits that his primary purpose in seeking the requested relief is because if he does not file his lawsuit against the Debtors by June

10, 2005, his right to sue will be lost.  Go's premise for relief is unsupportable, however, because pursuant to section 108 of the Bankruptcy Code, Go's claim will be preserved while the automatic stay remains in effect with respect to Go's claim.  Thus, Go suffers no prejudice if he is required to file suit at a later date.  If unsecured creditors could easily obtain relief from the stay to pursue their claims against debtors in other forums, rather than in the bankruptcy claims process, much of the purpose for bankruptcy filings, featuring a summary process for resolving claims, would be undermined.

14. Finally, Go has not demonstrated a likelihood of success on the merits of his claim.  *See In re Ward*, 837 F.2d 124, 128 (3d. Cir. 1988).

## Conclusion

For the foregoing reasons, the Debtors respectfully request the Court to deny the Motion and grant such other and further relief as it deems just and proper.

Dated: August 2, 2005

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By   */s/ D. J. Baker*<br>    D. J. Baker<br>    Sally McDonald Henry<br>    Rosalie W. Gray | By   */s/ James H. Post*<br>    Stephen D. Busey<br>    James H. Post (F.B.N. 175460)<br>    Eric N. McKay |
| Four Times Square<br>New York, New York  10036<br>(212) 735-3000<br>(212) 735-2000 (facsimile)<br>djbaker@skadden.com | 225 Water Street, Suite 1800<br>Jacksonville, Florida  32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>jpost@smithhulsey.com |
| Co-Attorneys for Debtors | Co-Attorneys for Debtors |

<u>Certificate of Service</u>

I certify that a copy of the foregoing has been furnished electronically and/or by mail to Anthony F. Sanchez, Esq., 169 E. Flagler Street, Suite 1500, Miami, Florida 33131; Matthew Barr, Esq., Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, New York 10005; John B. MacDonald, Esq., Akerman Senterfitt, 50 N. Laura Street, Jacksonville, Florida 32202; and Elena L. Escamilla, Esq., 135 W. Central Boulevard, Suite 620, Orlando, Florida 32806, this 2nd day of August, 2005.



                                                        *s/James H. Post*
                                                            Attorney

503895