EXHIBIT A-3
TO ASSET PURCHASE AGREEMENT

EXCLUSIVE USE CLAUSES

(see attached)

| | | | | | |
|---|---|---|---|---|---|
| 4 | COCONUTS #751 | 8/11/1994 | RESTRIC | floor area in SC which is being used for retail sales, and LL is collecting rent for same. LL not to permit any jewelry retailer at premises. | |
| 5 | SERVICE MERCHANDISE #331 | 3/10/1994 | EXCLUSI | EXCLUSIVE: A leading showroom, a jewelry store, or principal business of the sale of jewelry and/or watches. N/A Ross stores, Winn-Dixie, but shall apply to successors & assigns. No assignee or sublessee of tenant. No continuous operating covenant. | 0 |
| 5 | SERVICE MERCHANDISE #331 | 3/10/1994 | RESTRIC | RESTRICTIONS: See Article a/Section 1 for restrictions on bldgs, common areas & outlots in SC. See article B for restrictions of LL for used in SC and outlots. No kiosks, carnivals, sales by transient merchants permitted in common areas. Tenant permitted to display merchandise on sidewalk. What about Circuit City restriction. No land adjacent to SC shall be integrated w/SC. | 0 |
| 3 | ROSS DRESS FOR LESS #305 | 4/28/1994 | EXCLUSI | EXCLUSIVE: LL agrees that T shall have exclusive right to operate an apparel store in excess of 18,000 SF in the SC and in the event LL breaches agreement, parties agree that T may pursue any other remedies available at law or in equity including termination of lease. T is entitled to reduction in rent in the amount of 50% payable under the lease. | 0 |
| | ROSS DRESS FOR LESS #305 | 4/28/1994 | RESTRIC | No part of SC shall be used for office use of more than 5,000 sf in aggregate, residential, theater, auditorium, etc. see 3.1 of lease. Omb, The Battery & accessory store (lbs) may be operated on one of the outparcels, no restaurant permitted w/in 200sf of any part of the store. See Sect 3.3 for Bldg Restrictions. There shall be no change, alteration or addition to the protected area on site plan, nor any changes in ingress & egress, nor to pylon sign w/o tenant's approval. See First Amendment. | 0 |
| | CIRCUIT CITY #3205 | 5/12/1994 | EXCLUSI | EXCLUSIVE: No other tenant shall be entitled to use more than 1,000 SF or 10% of floor area, whichever is less, for sale of audio and video | 0 |

EXHIBIT A-4
TO ASSET PURCHASE AGREEMENT

LIST OF DOCUMENTS BINDING ON BUYER

Lease dated June 23, 1993 between Homart Community Centers, Inc., as Landlord, and Winn-Dixie Stores, Inc., as Tenant; as evidenced by Short Form Lease dated June 23, 1993, recorded in Book 001871, Page 000117, of the public records of Collier County, Florida; as amended by Supplemental Lease Agreement dated August 10, 1994 between Homart Development Co., as Landlord and Winn-Dixie Stores, Inc. as Tenant

EXHIBIT A-5
TO ASSET PURCHASE AGREEMENT

<u>SUBLEASE</u>

Lease dated January 15, 1995 between Winn-Dixie Stores, Inc., as Lessor, and First National Bank of Florida, as Lessee

Commencement Date Agreement dated January 28, 1995 between Winn-Dixie Stores, Inc., as Lessor, and First National Bank of Florida, as Lessee

Agreement for Assignment of a Lease dated March 11, 1999 between Colonial Bank and Atlantic States Bank

First Amendment to Lease dated March 12, 1999 between Winn-Dixie Stores, Inc. and Atlantic States Bank

Second Amendment to Lease dated October 15, 2004 between Winn-Dixie Stores, Inc. and Ironstone Bank

EXHIBIT B
To Asset Purchase Agreement

Form of Bill of Sale

**BILL OF SALE**

**WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2005, among **WAL-MART STORES, INC.** a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of the Agreement (hereinafter defined) ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Lease or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store location as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed by the undersigned as of this day of , 2005.

"SELLER"

**WINN-DIXIE STORES, INC.**, a Florida corporation

By:_____
   Name:_____
   Title:_____

EXHIBIT C
To
Asset Purchase Agreement

FORM OF CLOSING STATEMENT

CLOSING STATEMENT SUMMARY

| | |
|---|---|
| **BUYER:** | Wal-Mart Stores, Inc., a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of this Agreement |
| **SELLER:** | Winn-Dixie Stores, Inc., a Florida corporation |
| **ESCROW AGENT and SETTLEMENT AGENT:** | _____ |
| **PROPERTIES[1]:** | Store No. 739, |
| **CLOSING DATE:** | _____, 2005 |

---

SELLER'S STATEMENT

I. PURCHASE PRICE:

| | | |
|---|---|---|
| Leasehold and Improvements and Florida Quota Liquor License | | $ 1,200,000 |
| TOTAL PURCHASE PRICE: | | $_____ |
| II. | | $_____ |
| III. | | $_____ |
| A. NET CREDIT/DEBIT TO SELLER: | ($_____) | or $_____ |
| B. TOTAL CLOSING COSTS PAYABLE BY SELLER: | ($_____) | |
| AMOUNT DUE SELLER | | $_____ |

---

[1] Itemized individual Closing Statements for each Property are attached.

## BUYER'S STATEMENT

| | | | | |
|---|---|---|---|---|
| I. | TOTAL PURCHASE PRICE: | | | $_____ |
| A. | NET CREDIT/DEBIT TO SELLER: | ($_____) | or | $_____ |
| B. | TOTAL CLOSING COSTS PAYABLE BY SELLER: | ($_____) | | |
| C. | DEPOSIT | | ($120,000) | |

**AMOUNT DUE FROM BUYER**       $_____

## TOTAL DISBURSEMENTS[2]

| | | |
|---|---|---|
| 1. | Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | Seller's Brokers Fees | $_____ |
| 2. | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | $_____ |
| 3. | Seller's Cure Costs | $_____ |
| 4. | Seller's Proceeds | $_____ |
| 5. | [Other] | |

**TOTAL DISBURSEMENTS:**

## STIPULATIONS

1. <u>Purchase Agreement</u>. This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"). Attached hereto is an individual itemized closing statement for the Property covered by the Purchase Agreement.

2. <u>Authorization to Disburse</u>. By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

   _____

   _____

---

[2]  Refer to Individual Property Closing Statement for Itemization.

3. <u>Counterparts</u>. This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

The undersigned parties acknowledge and agree to the this Closing Statement as of this_____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

| SELLER: | BUYER: |
|---|---|
| **WINN-DIXIE STORES, INC.,** a Florida corporation | **WAL-MART STORES, INC.,** a Delaware corporation |
| By:_____ Name:_____ Title: Vice President | By:_____ Name: Title: |

## INDIVIDUAL PROPERTY CLOSING STATEMENT

| | |
|---|---|
| **BUYER:** | Wal-Mart Stores, Inc., a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of this Agreement |
| **SELLER:** | Winn-Dixie Stores, Inc., a Florida corporation |
| **ESCROW AGENT and SETTLEMENT AGENT:** | _____ |
| **Property:** | Store No. 739 |
| **CLOSING DATE:** | _____, 2005 |

### SELLER'S STATEMENT

| | | |
|---|---|---|
| **ALLOCATED PURCHASE PRICE:** | $ | $ |
| Leasehold and Improvements and Florida Quota Liquor License: | | $ 1,200,000 |
| TOTAL PURCHASE PRICE: | | $_____ |

**Less Adjustments (Debit):**

| | | |
|---|---|---|
| Seller's Prorated Share of Taxes and Other Charges Payable Under Leases (1) | $_____ | |
| Buyer's Prorated Share of Rents Paid in Advance [Under Subleases (2)] | $_____ | |
| **Total Debit Adjustments:** | $_____ | |
| **Plus Adjustments (Credit):** | | $_____ |
| Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Leases (3) | | $_____ |
| Environmental Assessment Costs Paid by Seller | | $_____ |
| [Other] | | $_____ |
| Total Credit Adjustments: | | $_____ |

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

| | |
|---|---|
| Seller's Attorneys' Fees & Costs | $_____ |
| Seller's Brokerage Fees | $_____ |
| Cure Costs | $_____ |

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER** $_____

## BUYER'S STATEMENT

**ALLOCATED PURCHASE PRICE:**   $_____   $1,200,000.00

**Less Adjustments (Credit):**

| | | |
|---|---|---|
| Allocated Amount of Deposit | | $ 120,000.00 |
| Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Leases (1) | | |
| [Other] | | |

**Total Debit Adjustments:**

**Plus Adjustments (Debit):**

| | |
|---|---|
| Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Leases (3) | $_____ |
| Environmental Assessment Costs Paid by Seller | $_____ |
| [Other] | $_____ |

Total Credit Adjustments:   $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

| | |
|---|---|
| Buyer's Attorneys' Fees & Costs | $_____ |
| Title Insurance Premiums(4) | $_____ |

| | |
|---|---|
| Title Examination Fees | $_____ |
| Transfer/Documentary Taxes | $_____ |
| Buyer's Brokerage Fees | $_____ |
| Closing Escrow Fees | $_____ |

**Total Buyer's Closing Costs:**  $_____

**AMOUNT DUE FROM BUYER**  $_____

**ALLOCATED AMOUNT OF DEPOSIT**  $_____

**TOTAL AMOUNT DUE AT CLOSING**  $_____

## SCHEDULE OF DISBURSEMENTS

1. Allocated Amount of Deposit from Escrow Agent    $_____

2. Amount Due From Buyer    $_____

**TOTAL RECEIPTS:**

1. The Blackstone Group L.P. (Seller's Brokers Fees)    $_____

2. The Food Partners, LLC (Seller's Brokers Fees)    ($_____)

3. DJM Asset Management, LLC (Seller's Brokers Fees)    ($_____)

4. Title Insurance Company Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees    ($_____)

5. _____
   Transfer/Documentary Taxes    ($_____)

6.     ($_____)

| | | |
|---|---|---|
| 7. | _____<br>(Lease Cure Costs, if any) | ($_____) |
| 8. | Florida Quota Liquor License<br>(Cure Costs, if any) | ($_____) |
| 9. | Seller<br>(seller Proceeds) | ($_____) |
| [10.] | [Other] | ($_____) |
| **TOTAL DISBURSEMENTS:** | | ($_____) |

Notes:

(1) <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>. Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with applicable leases. Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

<u>**Real Estate Taxes**</u>
<u>Store # 739</u>
- 2005 Real Estate Taxes           $
- Per Diem Tax Amount              $
- Seller's Share of 2005 Taxes
    (1/1/05 - __/__/05) (_____ days)    $_____   _____
**Total Real Estate Taxes:**

<u>**Personal Property Taxes**</u>
<u>Store # 739</u>
- 2005 Personal Property Taxes     $
- Per Diem Tax Amount              $
- Seller's Share of 2005 Taxes
    (1/1/05 - __/__/05) (_____ days)    $_____   _____
**Total Personal Property Taxes:**

<u>**CAM Charges**</u>
<u>Store # 739</u>
- 2005 CAM Charges                 $
- Per Diem Amount                  $
- Seller's Share of 2005 Taxes
    (1/1/05 - __/__/05) (_____ days)    $_____   _____
**Total Personal Property Taxes:**

**Insurance**
Store # 739
- 2005 Insurance                                             $
- Per Diem Amount                                            $
- Seller's Share of 2005 Taxes
  (1/1/05 - __/__/05) (_____ days)                           $_____   _____
**Total Insurance:**
**Total Amount of Seller's Prorated**
**Share of 2005 Prorations:**                                              _____

(2)  _____, 2005 Sublease Prorations - Amounts Previously Received by Seller. Prorations are based on _____ 2005 rents previously paid to Seller in accordance with applicable subleases. Buyer will be responsible for the collection of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

Store # 739
- Total _____, 2005 rent paid:                          $
- Per diem rent:                                             $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)                         $_____   _____
**Total Amount of Seller's Prorated Shares of _____ Prorations:**     _____

(3)  _____, 2005 Prorations - Amounts Previously Paid by Seller. Prorations are based on _____, 2005 rents, common area maintenance assessments and other charges previously paid by Seller in accordance with applicable leases. Buyer will be responsible for the payment of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

**Rent**
Store # 739
- Total _____, 2005 rent paid:                          $
- Per diem rent:                                             $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)                         $_____
- Total _____, 2005 rent paid:                          $
- Per diem rent:                                             $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)                         $_____   _____
**Total Amount of Seller's Prorated Shares of _____ Prorations:**     _____

(4) <u>Title Premiums and Expenses</u>. Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

<u>Store # 739</u>
- Title Search Fees and Costs              $     -
-                                          $
- Title Premium                            $
**Total Amount of Title Fees and Expenses:**

(5) <u>Utility Deposits and Charges</u>. All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof. The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor. Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6) <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7) <u>Capitalized Terms</u>. Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

EXHIBIT D
To Asset Purchase Agreement

Permitted Encumbrances

1. Taxes and assessments of any taxing authority that are attributable to any period following Closing.

2. All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3. Rights of Landlord under the Lease, including the rights of the Landlord's mortgagee.

4. All matters set forth as exceptions in the Initial Title Report or that certain Site Plan dated March 1992 prepared by Wilson, Miller Barton & Peek, Inc., other than Monetary Liens.

5. All other matters set forth as exceptions in those Title Report other than the Initial Title Report, other than Monetary Liens.

EXHIBIT E

FORM OF SALE ORDER

UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ORDER APPROVING DEBTORS' (A) SALE OF ASSETS FREE AND CLEAR OF LIENS, (B) ASSUMPTION AND ASSIGNMENT OF LEASE AND (C) RELATED RELIEF**

This matter came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 (a) authorizing the Debtors to sell leasehold interests, equipment, inventory and if the respective store contains a pharmacy, the pharmacy scrips, including the assets described in the asset purchase agreement attached hereto as Exhibit A (the "Purchase

Agreement") between Winn-Dixie Stores, Inc. and Wal-Mart Stores, Inc. (the "Purchaser"), free and clear of liens, claims, interests and encumbrances, (b) determining that any such sale is exempt from any stamp, transfer, recording or similar tax, (c) authorizing the Debtors to assume and assign various unexpired leases, including the lease identified in the Purchase Agreement (the "Lease") in connection with such sales, (d) fixing cure amounts and (e) granting related relief (the "Motion"). [The Court held a hearing on the Motion on _____, to determine any cure amounts for the Lease (the "Cure Hearing").] The Court held a hearing on the Motion on [_____], 2005 to approve the sale (the "Sale Hearing"). **Alternatives, depending on the circumstance:** [The Court has reviewed the Motion and heard the representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:] **or** [The Court has reviewed the Motion, considered the evidence and heard argument of counsel. After due deliberation and good and sufficient cause existing, the Court makes the following findings of fact:]

A. This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B. The Debtors solicited the highest or otherwise best offer for the assets described in the Purchase Agreement (the "Assets"), in accordance with bidding procedures (the "Bidding Procedures") approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures Order"). Competing bids were received for the Assets, and the Debtors conducted an auction for the Assets on _____ (the "Auction"). At the

Auction, the Purchaser submitted the final bid of _____, representing the highest or otherwise best offer received for the Assets.

C. The Debtors have provided interested parties (including all parties asserting claims or interests in the Assets, if any) with proper notice of the Motion, the Sale Hearing, the Auction, the assumption and assignment of the Lease, and the fixing of any cure amount, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order entered by the Court in these cases and the Bidding Procedures Order. Such notice was good and sufficient, appropriate under the circumstances and no other or further notice of the Motion, the Sale Hearing, the Auction, the assumption and assignment of the Lease, or the fixing of any cure amount is or shall be required. A reasonable opportunity to object or be heard on the relief requested was afforded to all parties in interest.

D. The Debtors marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Bidding Procedures, the Bankruptcy Code and all other applicable Orders entered in these cases. The bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets. In their sound business judgment, the Debtors determined that the purchase price provided in the Purchase Agreement was the highest or otherwise best offer for the Assets.

E. Following the Auction, in accordance with the Bidding Procedures, the Debtors provided notice of the Successful Bid (as defined in the Bidding Procedures), the Purchase Agreement, and the proposed terms of this Order to (i) the Committee's Professionals, (ii) the DIP Lender Agent Representatives, (iii) the U.S. Trustee, (iv) all applicable taxing

authorities and other governmental agencies and (v) all non-debtor parties to the Lease. Such notice was good and sufficient, appropriate under the circumstances and no other or further notice of the Successful Bid, the Purchase Agreement, or this Order is or shall be required. A reasonable opportunity to object or be heard on the relief requested was afforded to all parties in interest.

F.  The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A, the assumption and assignment agreement attached as Exhibit B (the "Assumption and Assignment Agreement"), and all related documents, and the sale of the Assets and the assumption and assignment of the Lease, as described in the Purchase Agreement, has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

G.  The Debtors have good business reasons to sell the Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

H.  Neither the Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

I.  The Debtors and the Purchaser proposed, negotiated and entered into the Purchase Agreement, without collusion, in good faith and at arms'-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

J.  The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the benefits and protections afforded by that section.