## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

## ORDER APPROVING DEBTORS' (A) SALE OF ASSETS FREE AND CLEAR OF LIENS, (B) ASSUMPTION AND ASSIGNMENT OF LEASES AND (C) RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 (a) authorizing the Debtors to sell leasehold interests, equipment, inventory and if the respective store contains a pharmacy, the pharmacy scrips, including the assets described in the asset purchase agreement attached as Exhibit A (collectively, the "Assets"), free and clear of liens, claims, interests and encumbrances (1) relating to Store Numbers 1004, 1010, 1234, 1242, 1248, 1938, 1942, 1944, 2004, 2051, 2150, 2151, 2156, and 2160 to BI-LO, LLC, and (2) relating to Store Numbers 524, 576, 1906, 1913, 1915, 911, and 2073 to Southern Family Markets Acquisition, LLC (each, a "Purchaser"; collectively, the "Purchasers"),  (b) determining that the sale is exempt from any stamp, transfer, recording or similar tax, (c) authorizing the Debtors to assume and assign all unexpired leases and executory contracts identified in the Purchase Agreement in connection with the sale (collectively, the "Leases"),

1

(d) fixing cure amounts for the Leases, and (e) granting related relief (the "Motion"). By the Motion, Debtors assert that no cure is required for Store Numbers 1242 and 1248 and that the only cure necessary for Store 1004 is payment of $12,806.56; Store 1010 is payment of $18,156.44; Store 1938 is payment of $109,042.57; Store 1942 is payment of $81,137.34; Store 2004 is payment of $72,759.28; Store 2151 is payment of $38,945.49; Store 2160 is payment of $2,026.78; Store 576 is payment of $40,681.79; and Store 1906 is payment of $20,553.18. By the Motion, the affected Landlords had until July 14, 2005 to object to the cure amounts. Only the Landlords for Store Numbers 1010, 1242, 1938, 2051, 2151, 2156, 2160, 1906, 1913, 1915 and 2056 filed cure objections. The Court held a hearing on the Motion on July 28, 2005 to approve the sale (the "Sale Hearing"). The Court has reviewed the Motion and heard the representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:

        A.      This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

        B.      The Debtors solicited the highest or otherwise best offer for the Assets in accordance with bidding procedures (the "Bidding Procedures") and bid protections (the "Bid Protections") approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures Order"). A competing bid was received for the Assets and the Debtors conducted an auction for the Assets on July 18, 2005 (the "Auction"). At the Auction, the Purchasers jointly submitted the final bid of Nine

Million Fifty Thousand Dollars ($9,050,000), representing the highest or otherwise best offer received for the Assets.

C.    The Debtors have provided interested parties (including all Landlords under the Leases and all parties asserting claims or interests in the Assets, if any, and all local, state and federal taxing authorities having jurisdiction over any Assets) with proper notice of the Motion, the Sale Hearing, the Auction, the assumption and assignment of the Leases, and the fixing of any cure amounts, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

D.    The Debtors marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Bidding Procedures, the Bid Protections, the Bankruptcy Code and all other orders entered in these cases. Bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets. In their sound business judgment, the Debtors determined that the bid submitted by the Purchasers at the Auction represented the highest or otherwise best offer for the Assets.

E.    The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A, the Assumption and Assignment Agreement attached as Exhibit G to the Purchase Agreement, and all related documents, and the sale of the Assets and assumption and assignment of the Leases has

3

been duly and validly authorized by all necessary corporate action of the applicable

Debtors; and (ii) no consents or approvals, other than those expressly provided for in the

Purchase Agreement, are required to consummate the transactions contemplated by the

Purchase Agreement.

F.      The Debtors have good business reasons to sell the Assets prior to

filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

G.      Neither of the Purchasers nor any of their affiliates are an "insider"

of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

H.      The Debtors and the Purchasers proposed, negotiated and entered

into the Purchase Agreement, without collusion, in good faith and at arms-length

bargaining positions.  Neither the Debtors nor the Purchasers have engaged in any

conduct that would cause or permit the Purchase Agreement to be voided under 11 U.S.C.

§ 363(n).

I.      The Purchasers are both good faith purchasers within the meaning

of 11 U.S.C. § 363(m) and, as such, are entitled to the protections afforded by that

section.

J.      The consideration the Purchasers are providing the Debtors for the

Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets;

and (iii) constitutes reasonably equivalent value.

K.      The Debtors' sale of the Assets and the assumption and assignment

of the Leases will facilitate the formulation and confirmation of a plan of reorganization.

For this reason, the sale of the Assets and the assumption and assignment of the Leases

4

constitute transfers to which 11 U.S.C. § 1146(c) applies.

L.      The Debtors' transfer of the Assets to the Purchasers pursuant to the Purchase Agreement and the Assumption and Assignment Agreement will be a legal, valid, and effective transfer of the Assets.  The Debtors' transfer of the Assets to the Purchasers vests the Purchasers with good and valid title in and to the Assets free and clear of any Liens, as defined in the Purchase Agreement, including but not limited to any claims, encumbrances, pledges, mortgages, security interests, charges, options or other interests of any kind or nature (collectively, the "Claims and/or Interests"), with the exception of the Permitted Encumbrances and the Assumed Liabilities, if any, as defined in the Purchase Agreement.  Any non-assumed Claim and/or Interest will attach to the proceeds of the sale with the same validity, enforceability and priority they now have as against the Assets, subject to any rights, claims, defenses and objections of the Debtors and all interested parties with respect to such Claims and/or Interests.

M.      The Debtors may sell and transfer the Assets in accordance with the terms and conditions of the Purchase Agreement free and clear of all Claims and/or Interests (except the Permitted Encumbrances and the Assumed Liabilities) because any entity with any Claims and/or Interests in the Assets to be transferred (i) has consented to the Sale (including the assumption and assignment of the Leases) or is deemed to have consented to the Sale; provided, however, that the landlords for Store Numbers 2160, 1906 and 1938 shall not be deemed to have consented to any additional material modifications of their relevant leases which may result from any changes or modifications to the relevant Assumption and Assignment Agreements referred to in this Order;

Order; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claims and/or Interests; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  Holders of Claims and/or Interests, if any, who did not object, or who withdrew their objections to the Sale Motion are deemed to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2).

N.      The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

O.      The Debtors' assumption and assignment of the Leases in connection with the Sale is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

P.      The Debtors have provided the landlords of the Leases with adequate assurance that they will promptly cure any defaults under the Leases pursuant to 11 U.S.C. § 365(b)(1).

Q.    The Court will determine the appropriate cure amount, if any, for Store Numbers 1010, 1242, 1938, 2051, 2151, 2156, 2160, 1906, 1913, or 1915 (the "Cure Amounts").   No Cure Amounts are due for Store Numbers 1242 and 1248. Pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006, the Cure Amounts, if any, constitute all amounts due and owing under the Leases and will be fixed and allowed for the Leases.  No other amounts are due and owing by the Debtors under the Leases.  The Debtors will pay the Cure Amounts, if any, in accordance with the terms and provisions of the Purchase Agreement.  Upon payment of the Cure Amounts, all defaults, if any, under the Leases will be deemed cured.

R.    The Purchasers have provided the landlords for the Leases with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(c), 365(b)(3) and 365(f)(2)(B).

S.    No default of the type described in 11 U.S.C. § 365(b)(2)(D) exists under the Leases.

T.    Except as expressly set forth in the Purchase Agreement, in this Order and the Assumption and Assignment Agreement, the Purchasers will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Assets or the Leases by virtue of the transfer of the Assets and the assumption and assignment of the Leases to the Purchasers. The Purchasers will, neither individually nor jointly, be deemed, as a result of any action taken in connection with the purchase of the Assets or the assumption and assignment of the Leases to (i) be a successor to the Debtors (other than with respect to the Assumed Liabilities and any obligations arising under the

7

assigned Leases from and after the closing); or (ii) have, *de facto* or otherwise, merged

with or into the Debtors. Neither Purchaser is acquiring or assuming any liability,

warranty, or other obligation of the Debtors, except as expressly set forth in the Purchase

Agreement, in this Order, or in any assigned Leases.

U.      The Court's approval of the Purchase Agreement and the

Assumption and Assignment Agreement is in the best interests of the Debtors, their

estates and their creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.      The Motion is granted.

2.      All objections to the entry of this order or to the relief

granted and requested in the Motion other than as to the proposed Cure Amount

for Stores that have not been withdrawn, waived or settled at or before the Sale

Hearing, are denied and overruled on the merits.

3.      The Purchase Agreement and the Assignment and

Assumption Agreements are each approved in all respects. Pursuant to 11 U.S.C.

§ 363(b), the Debtors are authorized (subject to applicable Closing conditions set

forth in the Purchase Agreement), to consummate the Sale including transferring

and conveying the Assets to the Purchasers, pursuant to and in accordance with

the terms and conditions of the Purchase Agreement.

4.      Upon Closing, the Debtors are authorized, in

accordance with 11 U.S.C. §§ 105(a), 363 and 365, to assume and assign the

Leases to Purchasers.

5.       The Debtors have satisfied the requirements of 11 U.S.C. §§ 365(b)(1), (3) and 365(f)(2).

6.       The Leases will be assumed and assigned to the appropriate Purchaser, in accordance with their respective terms. The description of the Leases (as set forth in the Purchase Agreement) is true and correct in all material respects and reflects the full and complete Leases and all material written modifications or amendments thereto, and all non-debtor parties to the Leases are forever enjoined and estopped from asserting otherwise. The assigned Leases will remain in full force and effect notwithstanding any provision in the Leases to the contrary (including provisions of the type described in 11 U.S.C. §§ 365(b)(2), (e)(1) and (f)(1)) which prohibit, restrict or condition such assignment or transfer). The DIP Lender and all non-debtor parties are deemed to have consented to the assignment of the Leases, if consent was not otherwise obtained in accordance with the Purchase Agreement or otherwise. Pursuant to 11 U.S.C. § 365(e), any provision in a Lease or in applicable law authorizing the termination of any Lease based upon the insolvency or financial condition of the Debtors at any time before the Closing, the commencement of the Debtors' bankruptcy cases, or as otherwise set forth in 11 U.S.C. § 365(e), are null and void and shall not be used to terminate or modify any such Lease.

7.       Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Purchase Agreement and the Assignment and Assumption Agreement, together with all

9

additional instruments and documents that may be necessary to implement the Purchase Agreement. The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Leases to Purchasers.

8.      Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Purchase Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

9.      The Debtors will transfer the Assets to the Purchasers upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f) (except for the Permitted Encumbrances and Assumed Liabilities). All non-assumed Claims and/or Interests, if any, will attach to the proceeds of the Sale, with the same validity, enforceability, priority, force and effect they now have as against the Assets, subject to any rights, claims, defenses and objections of the Landlords and Debtors and all interested parties with respect to such Claims and Interests.

10.      Except for the liabilities expressly assumed under the Purchase Agreement or this Order (the "Assumed Liabilities") neither Purchaser shall be liable for any Claims and/or Interests against the Debtors or the Assets,

and neither Purchaser shall have any successor, common control or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, existing now or after entry of the Order, whether fixed or contingent, with respect to the Debtors under or by reason of any theory at law or equity, including but not limited to any liability within the meaning of Section 4001 of the Employee Retirement Security Act of 1974, as amended. Except for the Assumed Liabilities under the Purchase Agreement, under no circumstance will a Purchaser be deemed a successor of or to the Debtors for any Claim and/or Interest against the Debtors or the Assets, and neither Purchaser shall have any liability as a successor to the Debtors. The sale, transfer, assignment and delivery of the Assets shall not be subject to any such Claims and/or Interests, except for the Permitted Liens and Assumed Liabilities as expressly provided under the Purchase Agreement, including but not limited to the Debtors' obligations under the Assumed Contracts to the extent such obligations arise after the Closing Date or as otherwise provided in the Purchase Agreement. All counterparties to Assumed Contracts shall have no recourse against either Purchaser or the Assets to satisfy any default by Debtors; instead such counterparties shall look solely to Debtors or to the proceeds of sale. Debtors and Purchasers expressly agree that the Assumed Liabilities shall include those liabilities assumed by Purchasers in Article 3.3.4 of the Purchase Agreement and shall be paid by the Purchasers pursuant to the terms of the Leases. Debtors and Purchasers further agree that any adjustment to be paid pursuant to Article 3.3.4 of the Purchase Agreement shall not be subject to any

11

administrative claim bar date and shall survive the confirmation of any Chapter 11 plan of the Debtors.

11.     The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

12.     The Debtors' transfer of the Assets pursuant to the terms of the Purchase Agreement is a transfer pursuant to 11 U.S.C. § 1146(c). Accordingly, the making, delivery, filing or recording of any deeds, assignments or other transfer documents in connection with the sale (the "Transfer Instruments"), will not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax (including without limitation, any transfer or recordation tax applicable to deeds and/or security interests). All filing and recording officers are directed to accept for filing or recording, and to file or record the Transfer Instruments immediately upon presentation without payment of any such taxes.

13.     The Purchasers provided the Debtors with reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and applicable non-bankruptcy law, and acted in a non-collusive, fair and good faith manner. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

14.     All defaults, claims or other obligations of the Debtors arising or accruing under each of the Leases, if any, prior to assumption (without

giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) will be cured by the Debtors in accordance with the Purchase Agreement, by paying the Cure Amount, if any.  No other or further monetary amounts or obligations are due or existing under the Leases by the Debtors, whether pursuant to 11 U.S.C. § 365(b)(1) or otherwise.  The Debtors will pay any Cure Amount, in accordance with the terms and provisions of the Purchase Agreement.

15.      Pursuant to 11 U.S.C. § 365(k), upon the assignment of the Leases to the Purchasers, (a) the Debtors and their estates are relieved from any and all liability for any breach of the Leases occurring after assignment to the Purchasers, and (b) each the Purchaser is responsible for any and all claims and obligations under the Leases assigned to it and assumed by it hereunder, occurring or arising after the assignment.

16.      Subject to the terms of this Order, the Purchase Agreement and the Assumption and Assignment Agreements, the respective Purchasers assume all rights and obligations of the Debtors under the Leases.

17.      All non-Debtor parties to the Leases are forever enjoined and estopped from contesting the Cure Amounts and from asserting any default against the Purchasers which existed as of the date of the Sale Hearing.

18.      Effective as of the Closing Date, Debtors and their estates shall be deemed (without further actions or order of the Court) to have released and discharged all of their right, title and interest in and to all claims,

13

causes of action, choses in action, rights of recovery or setoff of any kind (including any preference or other avoidance claim) against any Person (i) who is a counterparty to a Lease, (ii) who holds an Assumed Liability, or (iii) who is an officer, director, employee or agent of any Debtor and who is employed by either Purchaser or any subsidiary of either Purchaser immediately after the Closing; provided, however, that clauses (i) and (ii) shall not include any claims, causes of action, choses in action, rights of recovery or setoff of any kind (including any preference or other avoidance claim under the Bankruptcy Code) that are unrelated to the applicable Lease or Assumed Liability.

19.     Upon the Debtors' assignment of the Leases to the Purchasers, and payment of any Cure Amounts, no default will exist under the Leases. Upon entry of this Order and the assumption and assignment of the Leases, each the Purchaser is deemed to be in compliance with all terms and provisions of the respective Leases, and such assumption and assignment shall not trigger any default rights in any third party agreement based solely upon such assumption and assignment.

20.     All entities that are presently, or upon Closing may be, in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors. Prior to or upon the closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims and/or Interests in the Assets (except for the Permitted Encumbrances and Assumed Liabilities), if any. In the

14

event any creditor fails to release its Claims and/or Interests in the Assets, the Debtors are authorized to take any action necessary to do so including, to execute and file any statements, instruments, releases and other documents on such creditor's behalf. The Purchasers are also authorized to file, register or otherwise record a certified copy of this Order. Once this Order is so filed, registered or otherwise recorded, the Order constitutes conclusive evidence of the release of all Claims and/or Interests against the Assets as of the Closing (except for the Permitted Encumbrances and Assumed Liabilities).

21.     The Purchasers acted in good faith in purchasing the Assets and Leases under the Purchase Agreement as that term is used in 11 U.S.C § 363(m) and shall be entitled to the protections afforded a good faith purchaser pursuant to such section. The Purchasers have acted in "good faith" and the Purchase Agreement was negotiated from arms-length bargaining positions. For that reason, any reversal or modification of the Order on appeal will not affect the validity of the Sale to the Purchasers, unless such authorization is duly stayed pending such appeal.

22.     The Debtors' transfer of the Assets to Purchasers will not result in (a) either Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) either Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

23.     The Purchasers (and their affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets, including, the Leases (other than the Permitted Encumbrances and the Assumed Liabilities as set forth in the Purchase Agreement). The Debtors' transfer of the Assets to the Purchasers does not and will not subject the Purchasers or their affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors, any affiliates of any of the Debtors or any insider of any Debtors, or the Assets by reason of such transfer under the laws of the United States or any state or territory.

24.     Upon closing, this Order constitutes a complete general assignment, conveyance and transfer of the Assets and the Leases and a bill of sale transferring good and marketable title in the Assets to the respective Purchaser. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

25.     This Order is effective as a determination that any and all Claims and/or Interests (except for the Permitted Encumbrances and Assumed Liabilities), if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

26.     This Order is binding upon all entities who may be

16

required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Assets.

27.    This Court retains exclusive jurisdiction to (a) enforce and implement the Purchase Agreement, the Assumption and Assignment Agreement, and any other agreements and instruments executed in connection with the Purchase Agreement, (b) compel delivery of possession of the Assets to Purchasers, (c) resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, and (d) interpret, implement and enforce the provisions of this Order.

28.    The terms and provisions of the Purchase Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchasers and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

29.    All persons who hold Claims and/or Interests against the Debtors are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchasers, their affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

30.    After the Closing, no person or entity, including,

17

without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchasers or any of their affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Claims and/or Interests, or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

31.    Notwithstanding any provision of this Order to the contrary, Debtors shall remain obligated to Landlords for Store Numbers 2160, 1906 and 1938 for indemnity obligations provided in any Lease to the extent not obviated by 11 U.S.C. § 365(k).

32.    Nothing in this Order is intended to or shall be deemed to modify the terms of the Purchase Agreement except as expressly provided herein.  To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement or contained in any chapter 11 plan, and this Order, the provisions contained in the Purchase Agreement will control.

33.     Notwithstanding Fed. R. Bankr. P. 6004(g) and 6006(d), this Order will take effect immediately upon entry.

Dated this ___ day of July, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to
serve a copy of this Order on all
parties who received copies of the
Motion.

00503554

19

**BAE SYSTEMS**

**Enterprise Systems Incorporated**
**11487 Sunset Hills Road**
**Reston, Virginia 20190-5234**

# CERTIFICATE  OF  SERVICE

```
District/off: 113A-3        User: cartes           Page 1 of 1              Date Rcvd: Aug 01, 2005
Case: 05-03817             Form ID: pdfdoc         Total Served: 1
```

```
The following entities were served by first class mail on Aug 03, 2005.
aty       +Cynthia C. Jackson,   Smith Hulsey & Busey,   225 Water Street, Suite 1800,
           Jacksonville, FL 32202-4494

The following entities were served by electronic transmission.
NONE.                                                                      TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                      TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.**

**First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Aug 03, 2005**            **Signature:**    _Joseph Speetjens_