# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER CORRECTING ORDER DATED JULY 29, 2005 (DOCKET NO. 2680) TO ATTACH STIPULATION BETWEEN DEBTORS AND CERTAIN TRADE VENDORS REGARDING RECONCILIATION AND TREATMENT OF TRADE VENDORS' RECLAMATION CLAIMS AND ESTABLISHING POST-PETITION TRADE LIEN PROGRAM**

These matters came before the Court for hearing on July 29, 2005, upon the motion of Winn-Dixie Stores, Inc. and certain of its subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order approving a settlement between the Vendors[1] and the Debtors on the terms set forth in the Stipulation attached as Exhibit A hereto (the "Stipulation"). The Court has reviewed the Motion and the Stipulation and considered the representations of counsel. Based upon the representations of counsel and without objection by the United States Trustee or any other interested parties, and after due deliberation and finding proper notice has been given, the Court determines that good cause exists to grant the relief and that granting the relief is in the best interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted.

2.     The settlement described in the Stipulation is approved.

---

[1]     Capitalized terms not defined herein shall have the meaning ascribed to such term in the Motion.

3.      The Debtors are authorized to take any and all actions that may be required to implement the settlement described in the Stipulation.

4.      Neither the Debtors nor any Participating Vendor shall be required to file any financing statement, continuation statement, notice of lien or similar instrument in any jurisdiction or take any other action to comply with the perfection requirements of the Uniform Commercial Code or other requirements of law that may be applicable to the perfection of security interests granted hereunder, all of such requirements are hereby deemed satisfied.

5.      The provisions of this Order and any actions taken pursuant hereto or pursuant to the Stipulation shall survive entry of an order (a) confirming any plan of reorganization in any of the Chapter 11 cases, (b) the conversion of any of these Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code, (c); the appointment of a trustee or examiner in any of the Chapter 11 cases, or (d) the dismissal of any of the Chapter 11 cases.

6.      The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated August 2 , 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 05-03817-3F1 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## STIPULATION BETWEEN DEBTORS AND CERTAIN TRADE VENDORS REGARDING RECONCILIATION AND TREATMENT OF TRADE VENDORS' RECLAMATION CLAIMS AND ESTABLISHING POST-PETITION TRADE LIEN PROGRAM

This Stipulation (the "Stipulation") is entered into by and among (i) Winn-Dixie Stores, Inc. and its affiliated debtors and debtors in possession in the above-captioned case ("Winn-Dixie" or the "Debtors"), and certain trade vendors (each as set forth on the signature page) (the "Vendors[1]" and, together with Winn-Dixie or the Debtors, the "Parties").

## RECITALS

**WHEREAS**, on February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"); and

**WHEREAS**, on the Petition Date, the Debtors filed a Motion for Order (A) Authorizing Return of Goods Pursuant to 11 U.S.C. § 546 (g), (B) Establishing Procedures

---

[1] Vendors are The Clorox Sales Co., ConAgra Foods, Inc., Conopco, Inc., Frito Lay, Inc., General Mills Inc., Kraft Foods Global, Inc., Masterfoods USA, a division of Mars, Inc., Nestle USA, Inc., Pepsi Bottling Group, The Procter & Gamble Distribution Co., Quaker Sales & Distribution, Inc., Sara Lee Corporation, and S.C. Johnson & Son, Inc.

for Treatment of Reclamation Clams, And (C) Prohibiting Third Parties From Interfering with Delivery of Goods (Dkt. No. 21).

WHEREAS, on March 1, 2005, the United States Trustee for the Southern District of New York duly appointed the Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc. et al. (the "Creditors' Committee").

WHEREAS, on April 4, 2005, the New York Court entered the Final Order (A) Establishing Procedures for Treatment of Reclamation Claims and (B) Prohibiting Third Parties from Interfering with Delivery of Goods (Dkt. No. 626, the "Reclamation Order").

WHEREAS, on April 13, 2005, the New York Court entered an order (Dkt. No. 731) transferring venue of the Debtors' chapter 11 cases to the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court").

WHEREAS, by order dated May 19, 2005 (Dkt. No. 1329), the Bankruptcy Court extended to June 30, 2005 the Debtors' time to file, as required by the Reclamation Order, among other things, a statement of reclamation ("Statement of Reclamation") for each trade vendor asserting a reclamation claim.

WHEREAS, the Parties have contemplated, inter alia, that an agreement regarding the treatment of trade vendors' reclamation claims will reduce the likelihood of potential litigation and provide other benefits to the Debtors.

WHEREAS, the Parties entered into discussions which have resulted in, among other things, agreements for (i) the establishment of a trade vendor lien program, (ii) procedures for the calculation and treatment of the trade vendors' reclamation claims for those trade vendors that participate in the trade vendor lien program; and (iii) other provisions of this Stipulation.

2

**WHEREAS**, the Debtors have agreed, once the consent of the Vendors has been obtained, expeditiously to seek Bankruptcy Court approval of this Stipulation and all of its terms in their entirety as an integrated arrangement negotiated by the Debtors and the Vendors, inclusive of the trade vendor lien program as set forth herein and the procedures for the calculation and treatment of reclamation claims asserted by trade vendors that participate in the trade vendor lien program, all as further set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth in this Stipulation, in an effort to avoid unnecessary expenses and litigation, and to establish a post-petition trade vendor lien program and procedures for calculation and treatment of reclamation claims which are intended to (i) further reorganization efforts and (ii) foster improved relations with the Debtors' trade vendors and minimize disputes with trade vendors, consistent with the Debtors' overall efforts to operate more efficiently, and with the intent to be legally bound, it is agreed among the Parties as follows:

## AGREEMENT

1. **Terms**.  The following terms have the meanings set forth below.

   (a) "Allowed Reclamation Claim" means the Net Reclamation Claim minus the Consumption Rate.

   (b) "Consumption Rate" means four percent or such other rate prescribed in paragraph 6 below.

   (c) "Demand Date" means the date a Reclamation Demand is dispatched, as reasonably verified by the trade vendor, regardless of the manner of transmission.

   (d) "DIP Agent" means Wachovia Bank National Association.

   (e) "DIP Agreements" shall mean, collectively, the DIP Credit Agreement and all other agreements, documents and instruments now or at any time hereafter executed and/or delivered by Debtors in connection with the DIP Facility.

(f)     DIP Credit Agreement" shall mean the Credit Agreement, dated February 23, 2005, among Debtors, DIP Agent and DIP Lenders, as heretofore amended, as the same now exists and may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(g)     "DIP Facility" means the debtor in possession senior secured financing facility provided pursuant to the DIP Agreements.

(h)     "DIP Lenders" means the lenders under the DIP Facility.

(i)     "DIP Obligations" means all loans, letters of credit, other financial accommodations and all other obligations, liabilities and indebtedness of every kind, nature and description owing by the Debtors to DIP Agent and DIP Lenders under the DIP Facility.

(j)     "DIP Order" means the Final Order Pursuant to Sections 105, 361, 362, 363, 364(C) And 364(D) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment In Full of all Claims of Debtors' Pre-Petition Secured Lenders entered by the Bankruptcy Court on March 23, 2005.

(k)     "Final Order" means an order as to which the time for instituting or filing an appeal, motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending; provided, however, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure, Rule 9023 or 9024 of the Federal Rules of Bankruptcy Procedure or any analogous rule may be filed with respect to such order shall not preclude such order from being a Final Order.

(l)     "Floral Vendor" means those Reclamation Vendors listed on Exhibit B.

(m)     "Ingredient Vendor" means those Reclamation Vendors listed on Exhibit C.

(n)     "Junior Security Agreement" means a security agreement executed by the Debtors, the form and substance of which is satisfactory to the DIP Lenders, the Vendors and the Creditors' Committee.

(o)     "Net Reclamation Claim" means an amount equal to the invoiced price for the goods the Debtors received (as defined herein) from a Reclamation Vendor during the Reclamation Window, less any payments the Reclamation Vendor received for those goods.

(p)     "Non-Participating Vendor" means a trade vendor that does not elect to participate in the Reclamation/Trade Lien Program.

4

(q)    "Non-Participating Reclamation Vendor" means a Reclamation Vendor that does not elect to participate in the Reclamation/Trade Lien Program.

(r)    "Participating Vendor" means a trade vendor that elects to participate in the Reclamation/Trade Lien Program, which shall include Participating Reclamation Vendors.

(s)    "Participating Reclamation Vendor" means a Reclamation Vendor that elects to participate in the Reclamation/Trade Lien Program.

(t)    "Plan Effective Date" means the effective date of any Reorganization Plan for any or all of the Debtors.

(u)    "Post-Effective Date Secured Lender Obligations" means all loans, letters of credit, other financial accommodations and all other obligations, liabilities and indebtedness of every kind, nature and description owing by the Debtors to DIP Agent and DIP Lenders outstanding as of the Plan Effective Date.

(v)    "Preference Claims" means claims arising under Section 547 of the Bankruptcy Code.

(w)    "Reclamation Claim" means a reclamation claim as described in paragraph 4 below.

(x)    "Reclamation Demand" consists of a demand by a trade vendor seeking reclamation of, or a return of, goods sold to the Debtors.

(y)    "Reclamation Invoices" means those invoices which relate to goods sold by a Reclamation Vendor that were received by the Debtors during the Reclamation Window.

(z)    "Reclamation/Trade Lien Approval Motion" means the motion seeking approval of this Stipulation and the Reclamation/Trade Lien Program.

(aa)   "Reclamation/Trade Lien Program" means the program established pursuant to this Stipulation that (i) establishes a post-petition credit program for Participating Vendors and (ii) procedures for calculation and treatment of a Reclamation Claim asserted by a Participating Reclamation Vendor.

(bb)   "Reclamation Vendor" means a trade vendor who has asserted a Reclamation Claim and also means a division, subsidiary and/or affiliate of a trade vendor who has also asserted a Reclamation Claim.

(cc)   "Reclamation Window" means the period of time as later defined herein during which goods sold by a Reclamation Vendor are received by the Debtors and are subject to inclusion in the Net Reclamation Claim of a Reclamation Vendor.

(dd)  "Reorganization Plan" means a chapter 11 reorganization plan for any or all of the Debtors.

(ee)  "Sample Group" means the group of 22 trade vendors as to which the Debtors and the Vendors have worked to reconcile and establish their Net Reclamation Claim which are identified on Exhibit D.

(ff)  "Specific Reclamation Defenses" means the Specific Reclamation Defenses as defined in the Reclamation Order.

(gg)  "Trade Credit Claims" means the post-petition claims of Participating Vendors arising in the ordinary course of the Debtors' business in connection with the Postpetition Trade Credit program.

(hh)  "Vendor Receivables" and "Allowances" refer to those programs described in Exhibit A and paragraph 7 hereto.

2.  **Effectiveness of Reclamation/Trade Lien Program**.  The Reclamation/Trade Lien Program shall be effective, with respect to each Participating Vendor, upon the later to occur of (i) Bankruptcy Court approval of the Reclamation/Trade Lien Program and (ii) for each Participating Reclamation Vendor, the completion of the reconciliation process for that Participating Reclamation Vendor's Reclamation Claim and any adjustments asserted by the Debtors to any specific invoice which forms part of the Reclamation Claim.  The completion of the reconciliation process shall result in the Net Reclamation Claim for each Participating Reclamation Vendor. Each Reclamation Vendor shall be entitled to recognition of only one Reclamation Demand.

3.  **Reconciliation Process**.  The Reclamation Claim reconciliation process shall consist of the following elements:

(a)  Winn-Dixie shall provide each Reclamation Vendor with a detailed comparison of the Reclamation Vendor's asserted Reclamation Invoices and any adjustments asserted by the Debtors to any specific invoice which forms part of the Reclamation Claim.  For each Reclamation Vendor that is part of

6

the Sample Group, the detailed comparison shall have been provided prior to the filing of the Reclamation/Trade Lien Approval Motion. For each Reclamation Vendor that is not part of the Sample Group, the detailed comparison shall be provided by the Debtors by August 10, 2005. The reconciliation process shall determine (i) goods received by the Debtors during the Reclamation Window and (ii) the extent to which the Reclamation Invoices remain unpaid. The result shall be the Net Reclamation Claim of the Reclamation Vendor which, as reduced by the Consumption Rate, shall be the Allowed Reclamation Claim for the Reclamation Vendor without the requirement of any Bankruptcy Court approval other than approval of the Reclamation/Trade Lien Approval Motion.

(b)    To the extent the Reclamation Claim of any Reclamation Vendor has not been reconciled by September 30, 2005, the Debtors shall file a formal objection to any amount of that Reclamation Claim to which an objection by the Debtors remains. The Reclamation Vendor shall have the right to a hearing to resolve the objection and outstanding reconciliation issues related to the Reclamation Claim on such schedule as the Bankruptcy Court determines appropriate. The issues to be resolved at such hearing shall be confined solely to the disputed portion of the Reclamation Claim as asserted in the objection and (as to such disputed portion) (i) whether the goods represented thereby were received by the Debtors within the Reclamation Window and (ii) whether the Reclamation Invoices remain unpaid. The hearing shall thereby resolve the Net Reclamation Claim of the Reclamation Vendor which, as reduced by the

7

Consumption Rate, shall be the Allowed Reclamation Claim for the Reclamation Vendor.

4.    **Reclamation Demand and Reclamation Window.**  With respect to the sufficiency of a Reclamation Demand and the determination of the Reclamation Window:

(a)    A Reclamation Demand is deemed sufficient if it was sent in a writing that indicates the assertion of reclamation or return of goods (without any further detail required).  A Reclamation Demand will be deemed to have been received by the Debtors on the Demand Date.

(b)    The Reclamation Window for a Reclamation Demand made on or prior to the Petition Date shall be the 10-day period beginning on the 10th day prior to the Demand Date and ending on the day immediately preceding the Demand Date.

(c)    The Reclamation Window for a Reclamation Demand made after the Petition Date but on or prior to March 4, 2005, shall be the 10-day period beginning on February 12, 2005 and ending on the Petition Date.

(d)    The Reclamation Window for a Reclamation Demand made after March 4, 2005, shall be the period beginning on the 20th day prior to the Demand Date and ending on the Petition Date.

(e)    If a Reclamation Vendor has made more than one Reclamation Demand, the Reclamation Window in respect of that Reclamation Vendor shall be based upon the date that the first Reclamation Demand was made by that Reclamation Vendor.

5.    **The Receipt of Goods by Debtors**.  With respect to receipt of goods:

    (a)    The date that the Debtors are deemed to have received goods sold by a Participating Reclamation Vendor is the date the Debtors took possession of such goods, determined as follows:  (i) for goods picked up by the Debtors or by the Debtors' carrier, possession occurs on such date and (ii) for goods shipped by a Participating Reclamation Vendor or its carrier, possession occurs upon delivery to the Debtors (whether to a distribution center, retail store or manufacturing facility).

    (b)    Issues relating to the date on which the Debtors received goods from a Participating Reclamation Vendor shall be resolved through the reconciliation process heretofore described under the heading "Reconciliation Process." Proof of delivery or pick-up of goods signed by the Debtors or their carrier and provided to the Participating Reclamation Vendor shall be conclusive.

6.    **Consumption**.  For purposes of computing an Allowed Reclamation Claim, consumption for all Participating Reclamation Vendors other than Floral Vendors and Ingredient Vendors shall be set at 4.0% and the Net Reclamation Claim shall be reduced by that amount.  Consumption rates shall be 22 percent for Floral Vendors and as set forth on Exhibit C for Ingredient Vendors.  Three percentage points (3%) out of the respective consumption rates as described above shall not be part of the Participating Reclamation Vendor's general unsecured claims.

7.    **Vendor Receivables and Allowances Owed to Debtors**.  Vendor Receivables and Allowances consist of claims of the Debtors against the Participating Reclamation Vendors for credits and/or deductions due from Participating Reclamation Vendors

9

determined in accordance with ordinary pre-petition practices and procedures applicable between the Participating Reclamation Vendors and the Debtors.  Exhibit A hereto specifies the framework through which such Vendor Receivables and Allowances will be determined to be either pre-petition or post-petition claims.  Pre-petition Vendor Receivables and Allowances shall be applied as a set off against Allowed Reclamation Claims but only to the extent they are attributable directly to Reclamation Invoices ("Attributable Set Off"); provided, however, that if pre-petition amounts due to or from the Debtors and the Participating Reclamation Vendor have been fully reconciled before satisfaction of the Reclamation Claim and there is a net balance due from the Participating Reclamation Vendor to the Debtors, then such balance will reduce the outstanding Allowed Reclamation Claim.  Post-petition Vendor Receivables and Allowances, when reconciled by agreement between the Debtors and the Participating Reclamation Vendor, in accordance with the Post-Petition Trade Credit as later defined herein, shall be promptly paid by the Participating Reclamation Vendor or credited by the Debtors in accordance with past practice.

8.    **Treatment of Allowed Reclamation Claims**.  Allowed Reclamation Claims of Participating Reclamation Vendors shall be treated as follows:

(a)    The Allowed Reclamation Claim (less the Attributable Set Off) of a Participating Reclamation Vendor shall be paid by the Debtors in cash in nine (9) equal monthly installments beginning the later of (i) September 30, 2005, and (ii) the last day of the month in which a Reclamation Vendor becomes a Participating Reclamation Vendor.  Upon confirmation of a Reorganization Plan, any unpaid balance of an Allowed Reclamation Claim (less the

Attributable Set Off) of a Participating Reclamation Vendor shall be paid in cash within 30 days after the Plan Effective Date. The unpaid balances of the Allowed Reclamation Claims of Participating Reclamation Vendors shall be secured by the Junior Lien (as described below).

(b)      The Debtors shall not pay any Reclamation Vendor its Allowed Reclamation Claim (i) on better terms and conditions than provided herein to Participating Vendors or (ii) conditioned upon less beneficial post-petition trade terms to the Debtors than provided for in this Reclamation/Trade Lien Program, unless such terms are also offered to all Participating Reclamation Vendors; provided that this paragraph shall not apply to any payments sought by motion by any third party and otherwise ordered by the Bankruptcy Court.

9.      **Provision of Post-Petition Trade Credit**.  A Participating Vendor must provide Post-Petition Trade Credit as follows:

(a)      A Participating Vendor must provide the Debtors with Post-Petition Trade Credit terms ("Post-Petition Trade Credit") commencing on the effective date of the Reclamation/Trade Lien Program and equal to the lesser of (i) 20 days or (ii) the average days provided by such Participating Vendor during the one year period ending 90 days prior to the Petition Date. Such Post-Petition Trade Credit shall be subject to a credit limit ceiling (absent Participating Vendor consent to a higher amount) based upon the average amount of outstanding trade credit provided by the Participating Vendor to the Debtors during the one year period ending 90 days before the Petition Date.

11

(b)    The Post-Petition Trade Credit must continue to be provided by the

Participating Vendor to the Debtors until the earlier of any of the following

(each a "Termination Event"):

(i)    One year following the effective date (for each Participating Vendor) of the Reclamation/Trade Lien Program for the Participating Vendor;

(ii)    The Plan Effective Date;

(iii)    The conversion of the Debtors' Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code or the appointment of a trustee;

(iv)    The occurrence of a default under the DIP Facility that results in the DIP Lenders ceasing funding;

(v)    An increase in the amount of the Debtors' senior secured indebtedness above the original commitment amount of the Debtor's DIP Facility; and

(vi)    The failure of the Debtors to pay invoices for the purchase of goods and/or to otherwise perform under their obligations to Participating Vendors in accordance with the Post-Petition Trade Credit after the Vendors have provided seven days' notice in writing, served by hand or facsimile, upon the Debtors (Attn: General Counsel); provided that the Vendors may suspend post-petition trade credit after they have given notice until such time as the Debtors have cured or otherwise resolved such default before seven days has elapsed.

(c)    To the extent a Participating Reclamation Vendor fails to provide Post-

Petition Trade Credit as provided above, such Participating Reclamation

Vendor shall (i) be immediately liable to the Debtors for all payments

received on account of any Allowed Reclamation Claim, (ii) promptly repay

to the Debtors in cash all payments it has received on account of its

Reclamation Claim and (iii) be treated as provided in a Reorganization Plan

consistent with the treatment of Reclamation Claims of Non-Participating

Reclamation Vendors.  If any such Participating Reclamation Vendor fails to

repay promptly to the Debtors the amounts received on account of its Allowed

12

Reclamation Claim, the Debtors may setoff such amount against amounts the Debtors may owe such Participating Reclamation Vendor. Notwithstanding any of the foregoing, the obligation of any such Participating Reclamation Vendor to repay amounts received on account of its Allowed Reclamation Claim and the Debtors' rights to offset amounts owed to such Participating Reclamation Vendor is conditioned upon the right of such Participating Reclamation Vendor to dispute that it has failed to provide required Post-Petition Trade Credit or to assert that it has post-petition set off rights against the Debtors, which are herein preserved. Any such dispute shall be determined by the Bankruptcy Court.

(d)     Notwithstanding anything to the contrary contained herein, to the extent a Participating Vendor fails to provide Post-Petition Trade Credit to the Debtors at any time after the date of this Stipulation and prior to the Plan Effective Date, the Junior Lien of such Participating Vendor shall be terminated and released automatically and without further action by the Parties or the Bankruptcy Court.

(e)     In the event of a Termination Event as set forth in subparagraph (b) above, Participating Vendors are entitled to all of the rights and benefits accorded to them under the Reclamation/Trade Lien Program. The Termination Events set forth in subparagraph (b)(i) – (v) shall be automatic. The Termination Event set forth in subparagraph (b)(vi) shall require notice from a Participating Vendor to the Debtors.

(f)     Each Participating Vendor shall be entitled to have any of its post-petition invoices treated as administrative expenses and paid in the ordinary course of business, provided, however, the payment of any such amounts shall be junior and subordinate in all respects to all claims, interests and other rights of DIP Agent and DIP Lenders set forth in the DIP Agreements, and the DIP Order.

10.    **Junior Lien**.

(a)     Trade Credit Claims and Allowed Reclamation Claims of Participating Reclamation Vendors shall be secured by a junior lien in favor of such Participating Vendors and Participating Reclamation Vendors (the "Junior Lien").

(b)     The Junior Lien shall be junior and subordinate in all respects to all liens, security interests, encumbrances, claims and other rights of DIP Agent and DIP Lenders granted pursuant to the DIP Agreements, the DIP Order or otherwise.

(c)     The Junior Lien shall attach to the collateral (whatever its residual value, if any) securing the DIP Facility as shall be provided for in the Junior Security Agreement.

(d)     Except (i) as permitted by Subparagraph 8(a) hereof and (ii) payments with respect to the Trade Credit Claims arising from invoices issued by Participating Vendors, made in the ordinary course of the Debtors' business, the Debtors shall not make to Participating Vendors any payments in respect of indebtedness secured by the Junior Lien until and unless all DIP

Obligations and all Post-Effective Date Secured Lender Obligations (if any) have been indefeasibly paid and satisfied in full in cash and DIP Agent and DIP Lenders shall have no commitment to provide the Debtors with any loan, letter of credit or other financial accommodation in the bankruptcy case or after the Plan Effective Date.  In the event of any distribution, division, or application, partial or complete, voluntary or involuntary, of all or any part of the assets of Debtors or the proceeds thereof to the creditors of Debtors or readjustment of the obligations and indebtedness of Debtors pursuant to a Reorganization Plan or otherwise, or upon the sale of all or substantially all of Debtors' assets and properties in the bankruptcy case or otherwise, then, and in any such event, DIP Agent and DIP Lenders shall first receive indefeasible payment in full in cash of all of the DIP Obligations and all Post-Effective Date Secured Lender Obligations (if any) prior to the payment of all or any part of the indebtedness secured by the Junior Lien, except (i) as provided in Subparagraph 8(a) hereof, and (ii) payments with respect to the Trade Credit Claims arising from invoices issued by Participating Vendors made in the ordinary course of the Debtors' business.

(e)     Until and unless all DIP Obligations and all Post-Effective Date Secured Lender Obligations (if any) have been indefeasibly paid and satisfied in full in cash and DIP Agent and DIP Lenders shall have no commitment to provide the Debtors with any loan, letter of credit or other financial accommodation in the bankruptcy case or after the Plan Effective Date, neither any agent for the holder of the Junior Lien nor any Participating Vendor in respect to any claim secured by the Junior Lien shall be permitted or have any right to:

15

(i)    exercise any rights or remedies with respect to the collateral, whether arising under the Junior Security Agreement or otherwise, including any right to vote in the bankruptcy case with respect to any interest in the collateral, or any right to foreclose or otherwise move or take action against the collateral;

(ii)    seek any adequate protection or relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code or any other stay in the Debtors' Chapter 11 Cases with respect to any portion of the collateral in any bankruptcy or similar proceeding in respect of the Debtors; or

(iii)    direct the DIP Agent, any DIP Lender or any holder of any of the DIP Obligations (or any representative thereof) with respect to any matters in connection with the foregoing.

(f)    Until and unless all DIP Obligations and all Post-Effective Date Secured Lender Obligations (if any) have been indefeasibly paid and satisfied in full in cash and DIP Agent and DIP Lenders shall have no commitment to provide the Debtors with any loan, letter of credit or other financial accommodation in the bankruptcy case or after the Plan Effective Date, neither any agent for the holder of the Junior Lien nor any Participating Vendor solely in respect of its capacity as a holder of a Junior Lien shall be permitted or have any right to:

(i)    object to the use of cash collateral with respect to the collateral in any bankruptcy or similar proceeding in respect of the Debtors;

(ii)    object to the DIP Agent or the holders of the DIP Obligations seeking any adequate protection or relief from the automatic stay with respect to their collateral;

(iii)    object to the sale or other disposition of any assets or properties of the Debtors, including without limitation any of the collateral;

(iv)    take any action or vote in any way so as to directly or indirectly challenge or contest (A) the validity or the enforceability of any of the DIP Agreements or the liens and security interests granted to DIP Agent or any DIP Lender, (B) the rights and duties of DIP Agent or any DIP Lender established in the DIP Agreements, or (C) the validity or enforceability of this Stipulation;

16

(v)    seek, or acquiesce in any request, to dismiss the bankruptcy case or to convert the Debtors' Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code;

(vi)    seek, or acquiesce in any request for, the appointment of a trustee or examiner with expanded powers for Debtors;

(vii)    propose, vote in favor of or otherwise approve a Reorganization Plan or plan of arrangement or liquidation, or file any motion or pleading in support of any Reorganization Plan or plan of arrangement or liquidation, unless it provides for the payment in full of the DIP Obligations or unless DIP Lenders have approved of the treatment of their claims with respect to the DIP Facility under such plan;

(viii)    object to the treatment under a Reorganization Plan of the claims of DIP Agent or any DIP Lender with respect to the DIP Facility;

(ix)    directly or indirectly oppose any relief requested or supported by DIP Agent or DIP Lenders, including any sale or other disposition of property free and clear of the liens and security interests of Participating Vendors under Section 363(f) of the Bankruptcy Code or any other similar provision of applicable law; or

(x)    direct the DIP Agent, any DIP Lender or any holder of any of the DIP Obligations (or any representative thereof) with respect to any matters in connection with the foregoing.

(g)    The Junior Lien, as shall be provided for in the Junior Lien Security Agreement, shall (i) permit Winn-Dixie to incur senior secured indebtedness to DIP Agent and DIP Lenders under the DIP Facility in the aggregate principal amount of up to $800 million, plus all accrued, accruing or chargeable interest, fees, costs, expenses and other amounts owing to DIP Agent and DIP Lenders under the DIP Agreements, (ii) accrue no interest, and (iii) terminate upon the Plan Effective Date, provided the Allowed Reclamation Claims of Participating Reclamation Vendors are paid in full.

(h)    Participating Vendors, as holders of the Junior Lien, waive any and all rights to have any collateral or any part thereof granted to or held by DIP Agent marshaled upon any foreclosure or other disposition of such collateral by DIP

17

Agent or any disposition of such collateral by Debtors with the consent of DIP

Agent and DIP Lenders.

(i)    Participating Vendors, as holders of the Junior Lien, waive notice of, and

hereby acknowledge their consent is not required to, (i) any amendment,

modification, supplement, renewal, restatement or extensions of time of

payment of or increase or decrease in the amount of any of the DIP

Obligations or to the DIP Agreements or any collateral at any time granted to

or held by DIP Agent provided that the amount of the senior secured

indebtedness to DIP Agent and DIP Lenders under the DIP Facility does not

exceed the aggregate principal amount of $800 million, plus all accrued,

accruing or chargeable interest, fees, costs, expenses and other amounts owing

to DIP Agent and DIP Lenders under the DIP Agreements, (ii) the taking,

exchange, surrender and releasing of collateral at any time granted to or held

by DIP Agent or guarantees now or at any time held by or available to DIP

Agent for the DIP Obligations or any other person at any time liable for or in

respect of the DIP Obligations, (iii) the exercise of, or refraining from the

exercise of any rights against Debtors or any other obligor or any collateral at

any time granted to or held by DIP Agent, (iv) the settlement, compromise or

release of, or the waiver of any default with respect to, any of the DIP

Obligations, and/or (v) the election of DIP Agent and DIP Lenders of the

application of Section 1111(b)(2) of the Bankruptcy Code.

11.    **Preference Claims**.  With respect to Preference Claims against Participating Vendors:

(a)    Preference Claims arising from transfers made prior to February 10, 2005 shall be waived against Participating Reclamation Vendors.

(b)    Preference Claims arising from transfers made on or after February 10, 2005 shall be preserved, to the extent that the Debtors identify any such Preference Claims to the applicable Participating Reclamation Vendors on or before July 20, 2005.  The Debtors shall have the right, with the consent of the Creditors' Committee, to waive or otherwise resolve any such Preference Claims arising from transfers made on or after February 10, 2005 with the applicable Participating Reclamation Vendors pursuant to approval of the Reclamation/Trade Lien Approval Motion without the requirement of any further Bankruptcy Court order.

(c)    The Debtors shall have the right, with the consent of the Creditors' Committee to waive or otherwise resolve Preference Claims against Participating Vendors who are not Participating Reclamation Vendors, but without the requirement of any further Bankruptcy Court order.

12.    **Reorganization Plan**.  The Vendors shall not object to any Debtor-proposed treatment of the Reclamation Claims of Non-Participating Reclamation Vendors in any Reorganization Plan.

13.    **Vendor Support**.  The Vendors will endeavor to determine the acceptance and support of the Reclamation/Trade Lien Program and shall consult with the Debtors

regarding the degree of support for the Reclamation/Trade Lien Program among Reclamation Vendors.

14.     **Waiver of Specific Reclamation Defenses**.  As of the date the order approving the Reclamation/Trade Lien Approval Motion becomes a Final Order, the Debtors waive the Specific Reclamation Defenses, as defined in the Reclamation Order, including the "valueless" defense, for all Reclamation Claims, including those of Non-Participating Reclamation Vendors.

15.     **Payment of Legal Fees of Vendors**.  Upon the approval of the Reclamation/Trade Lien Approval Motion, the Debtors shall reimburse the Vendors for their reasonable legal fees incurred in connection with the negotiation and development of the Reclamation/Trade Lien Program up to an aggregate of $300,000 to be made to counsel for the Vendors.  Any objection to these legal fees shall be made within ten (10) days prior to the hearing on the motion to approve this agreement, provided that the statements with appropriate detail shall be provided to the Debtors, the Creditors' Committee and the DIP Agent ten (10) days prior to such deadline.

16.     **Participation in Reclamation/Trade Lien Program**.  All trade vendors, including Reclamation Vendors, may elect to become a Participating Vendor upon the effective date of the Reclamation/Trade Lien Program for such Participating Vendor, by execution of the Agreement to Be Bound By Stipulation (attached hereto as Exhibit E), which shall be returned fully executed Exhibit E to Sally McDonald Henry, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 with a copy to Janice L. Duban, DLA Piper Rudnick Gray Cary US LLP, 203 North LaSalle Street, Suite 1900, Chicago, Illinois 60601-1293.

17.    **Construction of this Stipulation**. The Parties additionally represent and agree that the terms and provisions of this Stipulation are the product of arm's length negotiation and equal input by the Parties such that they shall not be construed against any party as the drafter of this Stipulation.

18.    **Entire Agreement**. This Stipulation constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior agreement and understandings, written and oral, between the Parties with respect to the subject matter hereof. All representations, warranties, promises, inducements, or statements of intention made by the Parties are embodied in this Stipulation, and no Party shall be bound by, or liable for, any alleged representation, warranty, inducement, or statement of intention that is not expressly embodied herein.

19.    **Bankruptcy Court Approval**. This entire Stipulation is expressly subject to and contingent upon approval by the Bankruptcy Court. If this Stipulation, or any portion of this Stipulation, is not approved by the Bankruptcy Court, or if such approval is granted but is subsequently overturned or modified on appeal, this Stipulation shall be of no further force and effect and, in such event, neither this Stipulation nor any negotiations and writings in connection with this Stipulation shall in any way be construed as or deemed to be evidence of or an admission on behalf of the Parties regarding any claim or right that such party may have against any other party to this Stipulation.

20.    **Effective Date**. This Stipulation may be executed in one or more counterparts and delivered by facsimile, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by

each of the Parties and delivered to all Parties, and upon entry of an order in form and substance acceptable to the Parties hereto, approving this Stipulation and such order becoming a Final Order (the "Effective Date").

21.    **Non-Severability**.  The provisions of this Stipulation are mutually interdependent, indivisible, and non-severable.

22.    **Amendments**.  This Stipulation may not be modified or amended (i) except by a writing signed by all Parties, and (ii) if agreed to by the Committee and approved by the Bankruptcy Court.

23.    **Binding Effect**.  This Stipulation (i) shall inure to the benefit of and be enforceable by the Parties and their respective successors and permitted assigns and (ii) shall be binding upon and enforceable against the Parties and their respective successors and assigns upon the Bankruptcy Court's approval of this Stipulation.

24.    **Costs**.  Except as provided with respect to the payment amount for the Vendors' legal fees, each of the Parties shall bear its own expenses incurred in connection with the negotiation, execution, and Bankruptcy Court approval of this Stipulation.

25.    **Cooperation and Further Assurances**.  The Debtors and the Vendors agree to use reasonable best efforts to cooperate in the implementation of the Reclamation/Trade Lien Program and in the execution of any documents which may be required or are appropriate in connection therewith.

26.    **Governing Law**.  This Stipulation shall be governed by and construed in accordance with, the Bankruptcy Code and the laws of the State of Florida, without regard to any principles of choice of law thereof, which would require the application of the law of any other jurisdiction.

27.     **Jurisdiction**.  Each of the Parties herby consents to the exclusive jurisdiction of the Bankruptcy Court to interpret, implement and enforce the provisions of this Stipulation.

        **Headings**.  Section headings used in this Stipulation are for convenience only and are not to affect the construction of, or be taken into consideration in interpreting, this Stipulation.

**IN WITNESS WHEREOF**, each of the Parties below has caused a counterpart of this Stipulation to be executed and delivered by its duly authorized signatory as of the date written below.

Dated: July 28, 2005

SMITH HULSEY & BUSEY

By: /s/ Cynthia C. Jackson
Cynthia C. Jackson, Esq.
Florida Bar No. 0498882
cjackson@smithhulsey.com
225 Water Street,
1800 Wachovia Tower
Jacksonville, Florida 32202
Phone: (904) 359-7700
Fax:    (904) 359-7708

-and-

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
D. Jan Baker, Esq.
Sally McDonald Henry, Esq.
Rosalie Walker Gray, Esq.
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax:    (212) 735-2000

Co-Counsel to Winn-Dixie Stores, Inc., et al.

DLA PIPER RUDNICK GRAY CARY US LLP

/s/ Mark J. Friedman
Mark J. Friedman
6225 Smith Avenue
Baltimore, Maryland  21209-3600
Phone: (410) 580-4153
Fax:    (410) 580-3001

24

Daniel J. Carrigan
1200 Nineteeth Street, N.W.
7th Floor
Washington, D.C.  20036-2412
Phone: (202) 861-3900
Fax:    (202) 223-2085

Janice L. Duban
203 North LaSalle Street
Suite 1900
Chicago, Illinois  60601-1293
Phone: (312) 368-4000
Fax:    (312) 236-7516

Counsel to the Vendors, consisting of The
Clorox Sales Co.; ConAgra Foods, Inc.;
Conopco, Inc.; Frito-Lay, Inc.; General Mills
Inc.; Kraft Foods Global, Inc.; Masterfoods
USA, a division of Mars, Inc.; Nestle USA, Inc.;
Pepsi Bottling Group; The Procter & Gamble
Distributing Co.; Quaker Sales & Distribution,
Inc.; Sara Lee Corporation; and S. C. Johnson &
Son, Inc.

Winn-Dixie Stores, Inc.

Exhibit A

Reclamation Vendor Proposal For
Treatment of Accounts Receivable Due from Vendors and AP Credits

| AR Category | Sub-category | Description | Proposed Methodology to Identify Pre- and Post-Petition Treatment |
|---|---|---|---|
| Debit Memos | | | |
| | Slotting Allowance | A contract for slotting allowances has a specific term. Historically, Winn-Dixie billed the vendor in advance for the entire term of the contract once it was negotiated by procurement. The vendor either paid Winn-Dixie on normal terms (30 days max) or the vendor allowed Winn-Dixie to offset against its next payment as a Debit Memo. | Pro-rate the cost over the entire term of the contract to determine pre- and post-petition amounts due. For example, a six month contract dated 1/21/05 would have one month of the cost identified as pre-petition and the remaining 5 months as post-petition. If the agreement has no term, the treatment shall assume a term of six months. |
| | Distribution Allowances | A contract for distribution allowances has a specific term. Historically, Winn-Dixie billed the vendor in advance for the entire term of the contract once it was negotiated by procurement. The vendor either paid Winn-Dixie on normal terms (30 days max) or the vendor allowed Winn-Dixie to offset against its next payment as a Debit Memo. | Pro-rate the cost over the entire term of the contract to determine pre- and post-petition amounts due. For example, a six month contract dated 1/21/05 would have one month of the cost identified as pre-petition and the remaining 5 months as post-petition. If the agreement has no term, the treatment shall assume a term of six months.<br><br>Any change in contract terms based on meeting volume milestones, would be deemed earned on the date the milestone is reached. |
| | Advertising Allowances | Advertising allowances are ad campaigns sponsored by a vendor or group of vendors. Historically, Winn-Dixie pays for the advertising spots, and then bills the vendor for its portion in the form of a debit memo. | Winn-Dixie to bill the vendor based on when the ads are run. If the ads ran pre-petition, then it will be considered a pre-petition invoice. If the ads ran post-petition, then it is considered a post-petition receivable. If the ad campaign covered both a pre- and post-petition period, the cost will be pro-rated. |

Exhibit A-1

| AR Category | Sub-category | Description | Proposed Methodology to Identify Pre- and Post-Petition Treatment |
|---|---|---|---|
| | Vendor Bill Backs | Vendor bill backs occur when merchandise is shipped back to the vendor from the warehouse. This is merchandise that has never reached the store. Winn-Dixie would normally obtain a "return merchandise authorization" from the vendor and then return the merchandise to the vendor for a credit. | Treatment would be based on the date merchandise was returned to the vendor. For non-reclamation verifiable goods and for reclamation verifiable goods as an adjustment to reclamation claim. |
| Scan Downs | | Credit earned by Winn-Dixie when product is purchased from one of its stores and scanned across the register. | Use the transaction date when the item was scanned to determine pre- and post-petition treatment. |
| Coupons | | Coupons are earned when negotiated by the customer at the register. The coupons are then remitted electronically by Winn-Dixie to the processing center in Mexico. Processing center has 7 to 10 days to bill the vendor. Vendor pays the processing center, which remits money to Winn-Dixie. If money is not remitted within 42 days, Winn-Dixie can bill the vendor directly. | Coupon is earned when it is negotiated by the customer at the register. All coupons negotiated pre-petition, regardless of when vendor is billed, will be considered pre-petition. All coupons negotiated post-petition will be considered post-petition. |
| Unsaleable Merchandise Shipped to Reclamation Center | | When merchandise cannot be sold in the stores, either because of damage or stale date, it is shipped to a reclamation center and then vendor is billed by Winn-Dixie for the cost of the product. | Regardless of billing date, credit for goods sent to the reclamation center will be based on return date. All goods shipped to the reclamation center are considered pre-petition if shipped to the reclamation center on or before 2/21/05. If shipped on 2/22/05 or after, it will be considered post-petition. |
| Shortages and Other | | Short shipments, pricing differences and bill backs (another pricing deduction) and other adjustments are deducted from the specific vendor invoice or a prompt deduction memo is put in AP. | Shortages, pricing differences and bill backs should be tied to a specific shipment to determine pre- or post-petition treatment. |

Exhibit A-2

EXHIBIT B

Floral Vendors

| **Floral Vendor** | **Type of Goods** |
|---|---|
| Falcon Farms | Floral only |

EXHIBIT C

Ingredient Vendors

The consumption rates set forth below for the Ingredient Vendors apply to such vendors only to the extent that such vendors provided ingredients to the Debtors.  To the extent that the vendors below provided other than pure ingredients, then the consumption rate set forth in the Stipulation shall apply.

| Name of Claimant/Creditor | Amount Filed by Claimant | Estimated % Consumed |
|---|---|---|
| Allen Flavors, Inc | 313,126.56 | 30% |
| Barber Milk, Inc, A Dean's Foods Company | 107,700.48 | 90% |
| Bemis Company, Inc | 34,910.96 | 0% |
| Berry Plastics Corporation | 49,726.47 | 50% |
| Bunge North America, Inc | 147,011.82 | 70% |
| C.F. Sauer Co | 160,582.10 | 30% |
| Cargill Inc.'s Sweetners | 117,850.07 | 80% |
| Cargill Meat Solutions Corporation | 730,839.30 | 50% |
| Chevron Phillips Chemical Company, LP | 179,292.00 | 0% |
| Crown Cork and Seal USA, Inc | 57,883.91 | 50% |
| Dairy Farmers of America | 434,572.50 | 90% |
| Dairy Farmers of America | 344,333.66 | 50% |
| Degussa Flavors & Fruit Systems, LLC | 86,180.00 | 50% |
| ExxonMobil Chemical Company | 125,758.50 | 0% |
| Hornell Brewing Co, Inc | 273,956.56 | 30% |
| Huhtamaki Americas, Inc. | 108,715.12 | 50% |
| John B. Stanfilippo & Son, Inc. | 42,651.44 | 50% |
| Kleinpeter Farms Dairy, LLC | 30,236.70 | 90% |
| Mt Olive Pickle Company, Inc | 232,274.75 | 30% |
| Peace River Citrus Products, Inc | 227,281.63 | 70% |
| Pinnacle Foods Corp | 25,834.90 | 0% |
| Rexam Beverage Can Company | 444,686.18 | 90% |
| Southeast Milk Inc | 806,721.37 | 90% |
| United Sugars Corporation | 160,004.06 | 50% |
| Univar USA Inc | 21,630.00 | 0% |
| Welch Foods, Inc | 399,083.45 | 50% |
| Maryland & Virginia Milk Producers Cooperative Association, Inc. | 1538826.84 | 90% |
| **Total** | **7,201,671.33** | |

Exhibit C-1

EXHIBIT D

**Sample Group**

The Sample Group consists of the following 22 trade vendors:

| | |
|---|---|
| 1 | Bottling Group, LLC d/b/a The Pepsi Bottling Group |
| 2 | The Clorox Sales Company |
| 3 | ConAgra Foods |
| 4 | Conopco: Good Humor - Breyers Ice Cream<br>        Unilever Foods/Slimfast<br>        Unilever HPC |
| 5 | Ferrero USA, Inc. |
| 6 | Frito-Lay, Inc. |
| 7 | General Mills Finance |
| 8 | Gerber Products Company |
| 9 | Kraft Foods Global Inc. |
| 10 | Masterfoods USA, a Division of Mars, Incorporated |
| 11 | McCormick & Company, Incorporated |
| 12 | Morton Salt |
| 13 | Nestle Purina PetCare |
| 14 | Nestle USA |
| 15 | Nestle USA - Prepared Foods Division, Inc. |
| 16 | Nestle Waters North America, Inc. |
| 17 | Novartis Consumer Health, Inc. |
| 18 | Proctor & Gamble Distributing Company |
| 19 | Quaker Sales & Distribution Inc. |
| 20 | Sara Lee Corporation |
| 21 | S.C. Johnson & Sons, Inc. |
| 22 | Zatarain's Partnership, L.P. |

EXHIBIT E

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 05-03817-3F1 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### AGREEMENT TO BE BOUND BY STIPULATION

I have read the Stipulation Between Debtors And Certain Trade Vendors Regarding Reconciliation and Treatment Of Trade Vendors' Reclamation Claims  and establishing Post-Petition Trade Lien Program (the "Stipulation") in the above-captioned case.  I understand the terms of the Stipulation and agree to be fully bound by the terms as those terms relate to a Participating Vendor (as defined in the Stipulation) and agree to have any issues relating to the Stipulation determined by the United States Bankruptcy Court for the Middle District of Florida for purposes of enforcement of the Stipulation.

Dated: _____

Signature: _____

Exhibit E-1

542678.12-New York Server 6A - MSW

**BAE SYSTEMS**

**Enterprise Systems Incorporated**
**11487 Sunset Hills Road**
**Reston, Virginia 20190-5234**

# CERTIFICATE OF SERVICE

District/off: 113A-3          User: cartes            Page 1 of 1                    Date Rcvd: Aug 02, 2005
Case: 05-03817               Form ID: pdfdoc          Total Served: 1

The following entities were served by first class mail on Aug 04, 2005.
aty        +Cynthia C. Jackson,   Smith Hulsey & Busey,   225 Water Street, Suite 1800,
            Jacksonville, FL 32202-4494

The following entities were served by electronic transmission.
NONE.                                                                    TOTAL: 0

            ***** BYPASSED RECIPIENTS *****
NONE.                                                                    TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.**

**First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Aug 04, 2005**                    **Signature:**    _Joseph Speetjens_