or such other address as any party may from time to time specify by notice to the other.

17.2   <u>Notice of Certain Inquiries</u>.  If any party is contacted, whether before or after any Closing and whether orally or in writing, by the United States Department of Justice or the Federal Trade Commission, or any similar state governmental authority, with respect to any transactions contemplated by this Agreement, such party will promptly notify the other party of such contact and describe the facts and circumstances thereof.

17.3   <u>Brokers and Finders</u>.   The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Agreement other than that due by Seller to Seller's Brokers.  Seller agrees to pay all fees and commissions claimed of either party by Seller's Brokers as a result of the transaction contemplated by this Agreement, which fees and commissions will be considered payable only if, as and when the Closing contemplated by this Agreement occurs.  Except for Seller's Brokers, neither Seller nor Buyer has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with the sale of the Assets or this Agreement.  Seller and Buyer hereby indemnify and agree to hold harmless each other from and against any claims by any other Person for brokerage fees, commissions or other similar costs related to the purchase of the Assets and this Agreement by reason of Seller's or Buyer's own acts, said indemnifications by Seller and Buyer to survive the Closings or earlier termination of this Agreement.

17.4   <u>Successors and Assigns</u>.  This Agreement will be binding upon, and inure to the benefit of, the parties hereto and their respective successors, and permitted assigns.

17.5   <u>Assignment</u>.  Neither Seller nor Buyer may assign or delegate any duties or obligations under this Agreement without the prior written consent of the other, which consent may be granted or withheld in the sole discretion of the party whose consent is so required. The foregoing notwithstanding, Buyer may, without consent, assign its rights and obligations under this Agreement to any of its wholly-owned subsidiaries provided that such subsidiary assumes in writing all of the duties and obligations of Buyer with respect to the Store.  No assignment by Buyer shall release or relieve Buyer of its liabilities and obligations hereunder, which shall remain in full force and effect notwithstanding any such assignment.

17.6   <u>Amendments</u>.  Except as otherwise provided herein, this Agreement may be amended or modified by, and only by, a written instrument executed by

\\COR\433614.5

Seller and Buyer (and delivered physically or by facsimile transmission from any party or its counsel to the other party or its counsel) and subject to Bankruptcy Court Approval, if applicable.

17.7    <u>Governing Law</u>.    The application and effect of this Agreement will be governed by and construed in accordance with the laws of the State of North Carolina.

17.8    <u>Merger of Prior Agreements</u>.    This Agreement supersedes all prior agreements and understandings between the parties hereto, other than the Confidentiality Agreement, and (except for the Confidentiality Agreement) constitutes the entire agreement of the parties with respect to the matters contained herein.    **BUYER ACKNOWLEDGES ITS OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT CONTINUE AFTER THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT**.

17.9    <u>Survival</u>.    Acceptance by Buyer of the Conveyance Instrument shall constitute an acknowledgement by Buyer that all of Seller's representations, covenants and obligations under this Agreement and all conditions to Buyer's obligations to close under this Agreement have been performed, satisfied and/or waived. Seller's representations, warranties, covenants and obligations under this Agreement shall not survive the Closing but shall merge into the Conveyance Instrument, and shall have no further force or effect after the Closing, except that those covenants of Seller under <u>paragraphs 3.3.2, 3.3.3, 3.3.4 and 17.3</u> of this Agreement that are expressly provided to be performed after the Closing shall survive. All representations, warranties, covenants of obligations of Buyer under this Agreement shall survive the Closing.  In addition, all representations, covenants and obligations of Buyer under the Confidentiality Agreement and the obligations of both parties under <u>paragraph 18</u> of this Agreement shall survive the termination or consummation of this Agreement.

17.10   <u>Time is of the Essence</u>.  Time is of the essence of this Agreement.

17.11   <u>No Recordation</u>.  This Agreement will not be recorded in any public office or court other than as part of the Bankruptcy Court Approval process except that upon default it may be presented to a court of competent jurisdiction.

18.0    **<u>Escrow Agent</u>**.

18.1    <u>Duties</u>.  By signing a copy of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Upon its receipt of funds from Buyer, Escrow Agent will receive and hold

such funds, and interest, if any, accrued thereon, in trust to be disposed of in accordance with the provisions of this Agreement.

18.2 <u>Indemnity</u>. Escrow Agent will not be liable to any party except for claims resulting from the negligence or willful misconduct of Escrow Agent. If the escrowed funds or interest, if any, accrued thereon is involved in any controversy or litigation, the parties hereto will jointly and severally indemnify and hold Escrow Agent free and harmless from and against any and all loss, cost, damage, liability or expense, including costs of reasonable attorneys' fees to which Escrow Agent may be put or which may incur by reason of or in connection with such controversy or litigation, except to the extent it is finally determined that such controversy or litigation resulted from Escrow Agent's negligence or willful misconduct. If the indemnity amounts payable hereunder result from the fault of Buyer or Seller (or their respective agents), the party at fault will pay, and hold the other party harmless against, such amounts. Otherwise, Buyer and Seller each will be responsible for one-half of such amounts.

18.3 <u>Dispute</u>. If a written objection is filed within the time allowed or if Escrow Agent is in doubt as to its duties, Escrow Agent may continue to hold the escrowed funds and interest, if any, accrued thereon until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court, or Escrow Agent may interplead the same in such court and be relieved of any and all liability therefor. In any action or proceeding regarding the escrowed funds or interest, if any, accrued thereon brought by Escrow Agent or to which Escrow Agent is made a party, the Escrow Agent will be entitled to recover its reasonable costs and attorneys' fees (through appeal) from whichever of Seller or Buyer is not the prevailing party in such action or proceeding. If there is no prevailing party, Seller and Buyer each shall be responsible for one-half of such costs and fees.

18.4 <u>Execution by Escrow Agent</u>. Escrow Agent has executed this Agreement solely for the purpose of acknowledging and agreeing to the provisions of this <u>paragraph 18.</u>  Escrow Agent's consent to and execution of any modification or amendment of this Agreement other than this <u>paragraph 18</u> shall not be required.

19.0 **Waiver of Jury Trial**. Buyer and Seller each acknowledge and agree that the nature of this Agreement makes a jury determination of any dispute arising out of this Agreement or relating to the transactions contemplated herein undesirable. Accordingly, Buyer and Seller each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Agreement or the transactions contemplated herein.

20.0 **Consent to Jurisdiction.** **THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS**

**AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.**

Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in paragraph 17.1 of this Agreement shall be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum. If a court finds that subject-matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Middle District of Florida, Jacksonville Division, or if such court shall not have jurisdiction, then to the appropriate courts of the State of Florida sitting in Duval County, Florida.

21.0 **HSR Filings.** The parties anticipate that the transactions contemplated hereby are exempt from review and filing under the HSR Act. However, if such is not the case, Seller and Buyer shall each seek regulatory approval or HSR clearance and prepare and submit, in a timely manner, all necessary filings for Seller and Buyer in connection with this Agreement under the HSR Act and the rules and regulations thereunder. Seller and Buyer shall request expedited treatment of such HSR Filing by the Federal Trade Commission, shall make promptly any appropriate or necessary subsequent or supplemental filings, and shall furnish to each other copies of all HSR Filings at the same time as they are filed with the appropriate governmental authority except to the extent such party is legally restricted from providing or believes, based where appropriate on the advice of counsel, that it should not provide such copies.

22.0 **Disclaimers and Waivers.**

22.1 **NO RELIANCE ON DOCUMENTS.** EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN PARAGRAPHS 5 AND 6 HEREOF (THE "CONTRACT WARRANTIES"), (A) SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE TRUTH, ACCURACY OR COMPLETENESS OF ANY MATERIALS, DATA OR INFORMATION DELIVERED BY OR ON BEHALF OF SELLER TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY AND (B) BUYER ACKNOWLEDGES AND AGREES THAT ALL MATERIALS, DATA AND INFORMATION DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER IN CONNECTION WITH THE TRANSACTION

-43-

CONTEMPLATED HEREBY (WHETHER DELIVERED OR MADE AVAILABLE ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE) ARE PROVIDED TO BUYER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF SUCH MATERIALS, DATA OR INFORMATION BY BUYER SHALL BE AT THE SOLE RISK OF BUYER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BUYER ACKNOWLEDGES AND AGREES THAT (A) ANY TITLE, ENVIRONMENTAL, ENGINEERING, SALES, FINANCIAL OR OTHER REPORT WITH RESPECT TO THE ASSETS WHICH IS DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER SHALL BE FOR GENERAL INFORMATIONAL PURPOSES ONLY, (B) BUYER SHALL NOT HAVE ANY RIGHT TO RELY ON ANY SUCH REPORT DELIVERED BY SELLER OR ANY AFFILIATE TO BUYER, BUT RATHER WILL RELY ON ITS OWN INVESTIGATIONS AND ANY REPORTS COMMISSIONED BY BUYER WITH RESPECT THERETO, AND (C) NEITHER SELLER, NOR ANY AFFILIATE OF SELLER SHALL HAVE ANY LIABILITY TO BUYER FOR ANY INACCURACY IN OR OMISSION FROM ANY SUCH REPORT.

22.2    <u>Disclaimers</u>. EXCEPT FOR THE CONTRACT WARRANTIES, BUYER UNDERSTANDS AND AGREES THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESSED OR IMPLIED, WITH RESPECT TO THE ASSETS, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ASSETS WITH LAWS, THE ABSENCE OR PRESENCE OF HAZARDOUS MATERIALS OR OTHER TOXIC SUBSTANCES (INCLUDING WITHOUT LIMITATION MOLD OR ANY MOLD CONDITION), COMPLIANCE WITH ENVIRONMENTAL LAWS, THE TRUTH, ACCURACY OR COMPLETENESS OF ANY DOCUMENTS, MATERIALS, REPORTS OR OTHER INFORMATION PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE TO BUYER, OR ANY OTHER MATTER OR THING REGARDING THE ASSETS. BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE ASSETS "<u>AS IS, WHERE IS, WITH ALL FAULTS</u>". BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND NEITHER SELLER NOR ANY AFFILIATE IS LIABLE FOR OR BOUND BY, ANY EXPRESSED OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE

-44-

ASSETS OR RELATING THERETO PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER OR ANY AFFILIATE, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE, OTHER THAN THE CONTRACT WARRANTIES.

BUYER ACKNOWLEDGES THAT BUYER'S ACCESS AND INSPECTION RIGHTS HAVE BEEN LIMITED AS SET FORTH IN THIS AGREEMENT AND THAT BUYER UNDERSTANDS THE RISKS ASSOCIATED WITH PURCHASING THE ASSETS ON THE BASIS OF SUCH LIMITED INVESTIGATIONS. BUYER REPRESENTS TO SELLER THAT NOTWITHSTANDING SUCH LIMITATIONS BUYER WILL HAVE CONDUCTED SUCH INVESTIGATIONS AS BUYER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE ASSETS AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS MATERIALS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE ASSETS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION), AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AFFILIATES, AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN THE CONTRACT WARRANTIES. UPON CLOSING, BUYER SHALL ASSUME THE RISK THAT ADVERSE MATTERS, INCLUDING BUT NOT LIMITED TO, CONSTRUCTION DEFECTS AND ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY BUYER'S INVESTIGATIONS, AND BUYER, UPON CLOSING, SHALL BE DEEMED TO HAVE WAIVED, RELINQUISHED AND RELEASED SELLER AND SELLER'S AFFILIATES (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS) FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING CAUSES OF ACTION IN TORT OR UNDER ANY ENVIRONMENTAL LAW), LOSSES, DAMAGES, LIABILITIES (WHETHER BASED ON STRICT LIABILITY OR OTHERWISE), LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS) OF ANY AND EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, WHICH BUYER MIGHT HAVE ASSERTED OR ALLEGED AGAINST SELLER AND SELLER'S AFFILIATE'S (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS) AT ANY TIME BY REASON OF OR ARISING OUT OF ANY LATENT OR PATENT CONSTRUCTION DEFECTS OR PHYSICAL CONDITIONS, VIOLATIONS OF ANY APPLICABLE LAWS (INCLUDING, WITHOUT LIMITATION, ANY ENVIRONMENTAL LAWS) REGARDING THE ASSETS AND ANY AND ALL OTHER ACTS, OMISSIONS, EVENTS, CIRCUMSTANCES OR MATTERS REGARDING THE ASSETS.

\\COR\433614.5

BUYER AGREES THAT SHOULD ANY INVESTIGATION, CLEANUP, REMEDIATION OR REMOVAL OF HAZARDOUS SUBSTANCES OR OTHER ENVIRONMENTAL CONDITIONS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION) ON OR RELATED TO THE ASSETS BE REQUIRED AFTER THE DATE OF CLOSING, NEITHER SELLER NOR ANY AFFILIATE SHALL HAVE ANY LIABILITY TO BUYER TO PERFORM OR PAY FOR SUCH INVESTIGATION, CLEAN-UP, REMOVAL OR REMEDIATION, AND BUYER EXPRESSLY WAIVES AND RELEASES ANY CLAIM TO THE CONTRARY.

BUYER FURTHER ACKNOWLEDGES THAT (1) THE CONTRACT WARRANTIES SHALL NOT SURVIVE THE CLOSING BUT SHALL MERGE INTO THE CONVEYANCE INSTRUMENT, AND SHALL HAVE NO FURTHER FORCE OR EFFECT AFTER THE CLOSING AND (2) THE LIABILITY OF SELLER UNDER OR WITH RESPECT TO THE CONTRACT WARRANTIES SHALL BE LIMITED TO THE EXPRESS REMEDIES OF BUYER SET FORTH IN THIS AGREEMENT.

BUYER REPRESENTS AND WARRANTS THAT THE TERMS OF THE DISCLAIMERS, WAIVERS AND RELEASES CONTAINED HEREIN AND THEIR CONSEQUENCES HAVE BEEN COMPLETELY READ AND UNDERSTOOD BY BUYER, AND BUYER HAS HAD THE OPPORTUNITY TO CONSULT WITH, AND HAS CONSULTED WITH, LEGAL COUNSEL OF BUYER'S CHOICE WITH REGARD TO THE TERMS OF SUCH DISCLAIMERS, WAIVERS AND RELEASES.  BUYER ACKNOWLEDGES AND WARRANTS THAT BUYER'S EXECUTION OF THESE DISCLAIMERS, WAIVERS AND RELEASES IS FREE AND VOLUNTARY.

22.3    <u>Effect and Survival of Disclaimers</u>.  Seller and Buyer acknowledge that the provisions of this <u>paragraph 22</u> are an integral part of the transactions contemplated in this Agreement and a material inducement to Seller to enter into this Agreement and that Seller would not enter into this Agreement but for the provisions of this <u>paragraph 22</u>.  Seller and Buyer agree that the provisions of this <u>paragraph 22</u> shall survive Closing or any termination of this Agreement.

[Signature page follows]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

SELLER:

**WINN-DIXIE RALEIGH, INC.,**
a Florida corporation

By: _____
Name: _____
Title: _____

BUYER:

**ALEX LEE, INC.,**
a North Carolina corporation

By: _____
Name: _____
Title: _____

-47-

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

SELLER:

**WINN-DIXIE RALEIGH, INC.,**
a Florida corporation

By: _____
Name: _____
Title: _____

BUYER:

**ALEX LEE, INC.,**
a North Carolina corporation

By: _____
Name: _Boyd L. George_____
Title: _Chairman + CEO_____

-47-

**Schedule 1**

**DOCUMENTS POSTED ON MERRILL WEBSITE FOR STORE 805**

| Store | Tear Sheet? | Documents in Lease and Lease Amendments Folder | Site Plan? | Fixture Plan? | Documents in Historic Title Folder | Documents in Current Title Commitment Folder | Documents in Environmental Site Assessments Folder | Documents in Equipment Lists Folder | Exhibit A-2? | Sub-tenant Chart? |
|---|---|---|---|---|---|---|---|---|---|---|
| 805 | Yes, dated 4/20/05 | Deed of Lease dated January 14, 2002, by and between WD Development, LLC, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant<br><br>Corporate Guaranty of Lease Obligations dated January 14, 2002, by Winn-Dixie Stores, Inc. to WD Development, LLC<br><br>Short Form Deed of Lease dated January 14, 2002, by and between WD Development, LLC, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant, recorded in Book 9253, Page 1613, of the public records of Wake County, North Carolina<br><br>Supplemental Lease Agreement dated May 15, 2003, by and between WD Development, LLC, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant | Yes, by BBM Associates, Inc., dated 3/25/02 | Yes, dated 5/20/02 | Policy dated 1/17/02, issued by Lawyer's Title Insurance Corporation | Commitment dated 5/31/05, issued by Lawyer's Title Insurance Corporation (with exception documents) | Phase I Environmental Site Assessment prepared by LFR Levine Fricke for Winn-Dixie Stores, Inc., dated June 3, 2005<br><br>Phase I (Level 2) Environmental Site Assessment prepared by LFR Levine Fricke for Winn-Dixie Stores, Inc., dated June 27, 2005 | Owned Equipment List<br><br>Leased Equipment List | Yes | No |

LIST OF EXHIBITS
TO
ASSET PURCHASE AGREEMENT
BY AND BETWEEN WINN-DIXIE RALEIGH, INC. AND ALEX LEE, INC.


| | | |
|---|---|---|
| Exhibit A-1 | - | Store |
| Exhibit A-2 | - | Description of Lease, Subleases and Leased Premises |
| Exhibit A-3 | - | Shopping Center |
| Exhibit B | - | Form of Bill of Sale |
| Exhibit C-1 | - | Form of Closing Statement |
| Exhibit C-2 | - | Form of Inventory Closing Statement |
| Exhibit D | - | Schedule of Certain Excluded Personal Property |
| Exhibit E | - | [Intentionally Omitted] |
| Exhibit F | - | Permitted Encumbrances |
| Exhibit G | - | Form of Conveyance Instrument |
| Exhibit H | - | Form of Inventory Certificate |
| Exhibit I | - | Exceptions to Representations and Warranties of Seller |
| Exhibit J | - | List of Known Roof Warranties and Guaranties |
| Exhibit K | - | Form of Landlord's Estoppel Certificate |
| Exhibit L | - | Warranties and Guaranties Assignment |

\\COR\433684.3

EXHIBIT A-1
To Asset Purchase Agreement

Store

| Store No. | Street Address | City | County | State |
|-----------|----------------|------|--------|-------|
| 805 | 8100 Brier Creek Parkway | Raleigh | Wake | North Carolina |

EXHIBIT A-2
To Asset Purchase Agreement

DESCRIPTION OF LEASES SUBLEASES AND LEASED PREMISES

WINN-DIXIE STORE # 805
Raleigh, North Carolina

Lease:       Deed of Lease dated January 14, 2002 between WD Development, LLC,
             as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant, including Exhibits A
             through M, Short Form of Lease/Memo of Lease (including Exhibit A and
             B)

             As evidenced by Short Form Deed of Lease dated January 14, 2002,
             recorded in Book 9253, Page 1613, of the public records of Wake County,
             North Carolina.

Amendments:

Supplemental Lease Agreement dated May 15, 2003 between WD Development, LLC,
as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant

Premises:    That certain store building and related improvements located at 8100 Brier
             Creek Parkway, Raleigh, North Carolina, Wake County.

Legal Description:   The Shopping Center in which the Premises is located is more
particularly described as follows:

             SEE ATTACHED LEGAL DESCRIPTION

Sublease(s):

       None

Amendments to Sublease(s):

       None

EXHIBIT A-2
Page 1 of 9

## Legal Description

That certain parcel of land lying in the Cedar Fork Township, City of Raleigh, Wake County, North Carolina and being more particularly described as follows:

Beginning at a point in the Southern right of-way line of Little Brier Creek Lane (variable width Public right of way), said point being North 47 degrees 08 minutes 43 seconds West a distance of 153.93 feet from a new 3/4" Outside Diameter (O.D.) iron pipe set in the said Southern right of way line of Little Brier Creek Lane at its intersection with the sight distance right of way line for Brier Creek Parkway; thence from said beginning point leaving said Southern right of way line Little Brier Creek Lane along a new 50-foot private access easement, 32.40 feet along a curve to the left having a radius of 20.00 feet, chord bearing of South 86 degrees 25 minutes 44 seconds West and a chord distance of 28.97 feet to a point; thence along said 50-foot private access easement line South 40 degrees 02 minutes 10 seconds West a distance of 393.76 feet to a point; thence along said 50-foot private access easement line 16.49 feet along a curve to the left having a radius of 10.50 feet, chord bearing of South 04 degrees 57 minutes 50 seconds East and a chord distance of 14.85 feet to a point; thence leaving said 50-foot private access easement line South 49 degrees 57 minutes 50 seconds East and chord distance of 173.30 feet to a point; thence South 50 degrees 48 minutes 53 seconds East a distance of 28.96 feet to a point; thence along a curve to the left having a radius of 39.51 feet, chord bearing of South 82 degrees 15 minutes 04 seconds East and chord distance of 41.21 feet to a point in the Northern right of way line of Brier Creek Parkway (variable width Public right of way); thence along said Northern right of way line Brier Creek Parkway South 31 degrees 27 minutes 11 seconds West a distance of 207.41 feet to a point; thence leaving said Northern right of way line Brier Creek Parkway along a sight distance right of way line South 60 degrees 25 minutes 03 seconds West a distance of 136.13 feet to a point in the Northern right of way line of Brier Leaf Lane (variable width public right of way); thence along said Northern right of way line Brier Leaf Lane North 74 degrees 10 minutes 52 seconds West a distance of 97.20 feet to a point; thence along said Northern right of way line Brier Leaf Lane 119.35 feet along a curve to the right having a radius of 375.00 feet, chord bearing of North 65 degrees 03 minutes 53 seconds West and chord distance of 118.85 feet to an existing 1" (O.D.) iron pipe found; thence along said Northern right of way line becoming the Eastern right of way line of said Brier Leaf Lane, 637.02 feet along a curve to the right having a radius of 365.00 feet, chord bearing of North 00 degrees 15 minutes 03 seconds West and chord distance of 559.20 feet to a 1" (O.D.) iron pipe found; thence along said Eastern right of way line Brier Leaf Lane North 49 degrees 44 minutes 46 seconds East a distance of 186.35 feet to a point; thence leaving said Eastern right of way line Brier Leaf Lane South 40 degrees 15 minutes 14 seconds East a distance of 49.15 feet to a point; thence South 49 degrees 57 minutes 50 seconds East a distance of 173.71 feet to a point in a 60-foot private access easement; thence along said 50-foot private access easement 16.49 feet along a curve to the left having a radius of 10.50 feet, chord bearing of North 85 degrees 02 minutes 10 seconds east and chord distance of 14.85 feet to a point; thence along said 50-foot private access easement North 40 degrees 02 minutes 10 seconds East a distance of 393.19 feet to a point; thence along said 50-foot private access easement 31.04 feet along a curve to the left having a radius of 20.01 feet, chord bearing of North 04 degrees 23 minutes 53 seconds West and a chord distance of 28.02 feet to a new 3/4" (O.D.) iron pipe set in the said Southern right of way line of Little Brier Creek Lane South 47 degrees 08 minutes 49 seconds East a distance of 90.71 feet to a point, the Point of Beginning.

Said parcel contains 7,752 Acres and is shown and delineated as "WD Parcel" on this map entitled "ALTA/ACSM LAND TITLE SURVEY FOR WD DEVELOPMENT, LLC — PARCEL "E" LOT 4 BRIER CREEK" (Sheets 1 and 2) prepared by BBM Associates, Inc. and dated December 21, 2001.

EXHIBIT A-2
Page 2 of 9

EXHIBIT A-3
To Asset Purchase Agreement

SHOPPING CENTER

| Store No. | Name of Shopping Center |
|-----------|------------------------|
| 805 | Brier Creek Parkway |

EXHIBIT B
To Asset Purchase Agreement

<u>Form of Bill of Sale</u>

## BILL OF SALE

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("<u>Seller</u>"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 200___, between Alex Lee, Inc., a North Carolina corporation, ("<u>Buyer</u>") and Seller (the "<u>Agreement</u>"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Leases and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached <u>Schedule A</u>.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 200____.

"SELLER"

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

By: _____
Name: _____
Title: _____

<u>EXHIBIT C-1</u>
To  Asset Purchase Agreement

<u>FORM OF CLOSING STATEMENT</u>

**<u>CLOSING STATEMENT SUMMARY</u>**

**BUYER:**               Alex Lee, Inc., a North Carolina corporation

**SELLER:**              Winn-Dixie Raleigh, Inc., a Florida corporation

**ESCROW AGENT and**     Near North National Title, LLC
**SETTLEMENT AGENT:**

**PROPERTIES:**          Store No. 805

**CLOSING DATE:**        _____, 2005

_____

**<u>SELLER'S STATEMENT</u>**

I.      **BASE PURCHASE PRICE:**                          $_____

II.     **SUPPLIES PRICE:**                               $_____

III.    **TOTAL BASE PURCHASE PRICE AND**                 $_____
        **SUPPLIES PRICE:**

A.      **NET CREDIT/DEBIT TO SELLER:**      ($_____)    or $_____

B.      **TOTAL CLOSING COSTS PAYABLE BY**   ($_____)
        **SELLER:**

**AMOUNT DUE SELLER**                        $_____

**<u>BUYER'S STATEMENT</u>**

I.      **TOTAL BASE PURCHASE PRICE AND**                 $_____
        **SUPPLIES PRICE:**

A.      **NET CREDIT/DEBIT TO BUYER:**       ($_____)    or $_____

B.      **TOTAL CLOSING COSTS PAYABLE BY**   ($_____)
        **BUYER:**

Exhibit C-1
Page 1 of 10

C      **BASE DEPOSIT**                    ($_____)

**AMOUNT DUE FROM BUYER**                $_____

## TOTAL DISBURSEMENTS[1]

| | | |
|---|---|---|
| 1. | Base Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | Seller's Brokers Fees | ($_____) |
| 2. | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($_____) |
| 3. | Inventory Service Fees | |
| 4. | Seller's Cure Costs | ($_____) |
| 5. | Seller's Proceeds | _____ |
| [6.] | [Other] | ($_____) |
| **TOTAL DISBURSEMENTS:** | | |

## STIPULATIONS

1. <u>Purchase Agreement</u>.  This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").  Attached hereto are individual itemized closing statements for each of the Properties covered by the Purchase Agreement.

2. <u>Authorization to Disburse</u>.  By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____
_____
_____
_____

3. <u>Counterparts</u>.  This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.  To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. <u>Adjustments</u>.    Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on

---

[1] Refer to Individual Property Closing Statement for Itemization.

Exhibit C-1
Page 2 of 10