**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ORDER APPROVING DEBTORS' (A) SALE OF ASSETS**
**FREE AND CLEAR OF LIENS, (B) ASSUMPTION AND**
**ASSIGNMENT OF LEASE AND (C) RELATED RELIEF**

This matter came before the Court on July 27, 2005 on the motion of

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and

debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C.

§§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 (a) authorizing the

Debtors to sell leasehold interests, equipment, inventory and if the respective store

contains a pharmacy, the pharmacy scrips, including the assets described in the asset

purchase agreement attached as Exhibit A (the "Purchase Agreement") between Winn-

Dixie Stores, Inc. and Wal-Mart Stores, Inc. (the "Purchaser"), free and clear of liens,

claims, interests and encumbrances, (b) determining that any such sale is exempt from

any stamp, transfer, recording or similar tax, (c) authorizing the Debtors to assume and

assign various unexpired leases, including the lease identified in the Purchase Agreement

(the "Lease") in connection with such sales, (d) fixing cure amounts and (e) granting

related relief (the "Motion"). The Court held a hearing on the Motion on July 27, 2005 to

approve the sale (the "Sale Hearing"). The Court has reviewed the Motion, considered

the evidence and heard argument of counsel. After due deliberation and good and sufficient cause existing, the Court makes the following findings of fact:

A.    This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B.    The Debtors solicited the highest or otherwise best offer for the assets described in the Purchase Agreement (the "Assets"), in accordance with bidding procedures (the "Bidding Procedures") approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures Order"). Competing bids were received for the Assets, and the Debtors conducted an auction for the Assets on July 18, 2005 (the "Auction"). At the Auction, the Purchaser submitted the final bid of $2,050,000, representing the highest or otherwise best offer received for the Assets.

C.    The Debtors have provided interested parties (including all parties asserting claims or interests in the Assets, if any) with proper notice of the Motion, the Sale Hearing, the Auction, the assumption and assignment of the Lease, and the fixing of any cure amount, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order entered by the Court in these cases and the Bidding Procedures Order. Such notice was good and sufficient, appropriate under the circumstances and no other or further notice of the Motion, the Sale Hearing, the Auction, the assumption and assignment of the Lease, or the fixing of any cure amount is or shall be required. A reasonable opportunity to object or be heard on the relief requested was afforded to all parties in interest.

2

D.    The Debtors marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Bidding Procedures, the Bankruptcy Code and all other applicable Orders entered in these cases.  The bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner.  The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets.  In their sound business judgment, the Debtors determined that the purchase price provided in the Purchase Agreement was the highest or otherwise best offer for the Assets.

E.    Following the Auction, in accordance with the Bidding Procedures, the Debtors provided notice of the Successful Bid (as defined in the Bidding Procedures), the Purchase Agreement, and the proposed terms of this Order to (i) the Committee's Professionals, (ii) the DIP Lender Agent Representatives, (iii) the U.S. Trustee, (iv) all applicable taxing authorities and other governmental agencies, (v) all non-debtor parties to the Lease and (vi) all other relevant parties.  Such notice was good and sufficient, appropriate under the circumstances and no other or further notice of the Successful Bid, the Purchase Agreement, or this Order is or shall be required.  A reasonable opportunity to object or be heard on the relief requested was afforded to all parties in interest.

F.    The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A, the assumption and assignment agreement attached as Exhibit F to the Purchase Agreement (the "Assumption and Assignment Agreement"), and all related documents, and the sale of the Assets and the assumption and assignment of the Lease, as described in the Purchase Agreement, has been duly and validly authorized by all necessary corporate action of the applicable

3

Debtors; and (ii)  no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

G.    The Debtors have good business reasons to sell the Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

H.    Neither the Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

I.    The Debtors and the Purchaser proposed, negotiated and entered into the Purchase Agreement, without collusion, in good faith and at arms'-length bargaining positions.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

J.    The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the benefits and protections afforded by that section.

K.    The consideration the Purchaser is providing to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

L.    The Debtors' sale of the Assets and the assumption and assignment of the Lease will facilitate the formulation and confirmation of a plan of reorganization.

4

For this reason, the Debtors' sale of the Assets and the assumption and assignment of the Lease constitute transfers to which 11 U.S.C. § 1146(c) applies.

   M. The Debtors' transfer of the Assets to the Purchaser pursuant to the Purchase Agreement, any related bills of sale or other applicable transfer agreements, including the Assumption and Assignment Agreement, will be a legal, valid, and effective transfer of the Assets. The Debtors' transfer of the Assets to the Purchaser vests the Purchaser with good and valid title in and to the Assets free and clear of any and all liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, judgments or other interests of any kind or nature (collectively, the "Claims and/or Interests"), with the exception of the Permitted Encumbrances,[1] if any, as defined in the Purchase Agreement. Any non-assumed Claims and/or Interests will attach to the proceeds of the sale with the same validity, enforceability and priority they now have as against the Assets, subject to any rights, claims, defenses and objections of the Debtors, Wachovia Bank National Association, as Administrative Agent and Collateral Agent for itself ("Agent") and the other financial institutions from time to time parties to the Credit Agreement dated as of February 23, 2005, as may be amended or modified (collectively, "Lenders" and together with Agent, collectively, the "DIP Lender") and all other interested parties with respect to such Claims and/or Interests.

   N. The Debtors may sell and transfer the Assets in accordance with the terms and conditions of the Purchase Agreement free and clear of all Claims and/or Interests (except the Permitted Encumbrances) because any entity with any Claims and/or

---

[1] All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion or the Purchase Agreement, as applicable.

Interests in the Assets to be transferred (i) has consented to the Sale (including the assumption and assignment of the Lease) or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claims and/or Interests; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Holders of Claims and/or Interests, if any, who did not object, or who withdrew their objections to the Sale Motion are deemed to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2).

        O.     The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

        P.     The Debtors' assumption and assignment of the Lease in connection with the Sale is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

Q.   The Debtors have provided the landlord under the Lease with adequate assurance that they will promptly cure any defaults under the Lease pursuant to 11 U.S.C. § 365(b)(1).

R.   The Court will determine at a later hearing whether any amounts are due by the Debtors under the Lease (if any, the "Cure Amount"). The Debtors will pay the Cure Amount, if any, upon entry of a final order of the Court establishing any such Cure Amount. Upon payment of the Cure Amount, all defaults, if any, under the Lease will be deemed cured.

S.   The Purchaser has provided the landlord under the Lease with adequate assurance of its future performance under the Lease, and the assumption, assignment and sale of the Lease satisfy the requirements of 11 U.S.C. §§ 363, 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B), as applicable.

T.   No default of the type described in 11 U.S.C. § 365(b)(2)(D) exists under the Lease.

U.   Except as expressly set forth in the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Assets or the Lease by virtue of the transfer of the Assets and the assumption and assignment of the Lease to the Purchaser. The Purchaser will not be deemed, as a result of any action taken in connection with the purchase of the Assets or the assumption and assignment of the Lease, to (i) be a successor to the Debtors (other than with respect to any obligations arising under the Lease from and after the Closing); or (ii) have, *de facto* or otherwise, merged with or into the Debtors. The Purchaser is not acquiring or assuming any

7

liability, warranty, or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement.

V.     The Court's approval of the Purchase Agreement and the Assumption and Assignment Agreement is in the best interests of the Debtors, their estates and their creditors.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted to the extent set forth in this Order.

2.     Except for the objection dated July 14, 2005 to the proposed Cure Amount filed by the lessor under the Lease, all objections to the entry of this order or to the relief granted and requested in the Motion with respect to the Purchase Agreement, the Lease, the Lease, the sale of the Assets to the Purchaser or any related matter addressed in this Order, including the objection, dated July 20, 2005, filed on behalf of the Collier County Tax Collector and the objection dated July 25, 2005, filed by Developers Diversified Realty Corporation, that have not been withdrawn, waived or settled at or before the Sale Hearing, are denied and overruled on the merits.  Such objection to the proposed Cure Amount shall be resolved in the manner described in paragraph R of this Order.

3.     The Purchase Agreement and the Assignment and Assumption Agreement are each approved in all respects.  Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized (subject to applicable Closing conditions set forth in the Purchase Agreement), to consummate the Sale, including transferring

8

and conveying the Assets to the Purchaser, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

4.      The Debtors are authorized, in accordance with 11 U.S.C. §§ 105(a), 363 and 365, to assume and assign the Lease to Purchaser.

5.      The Debtors and the Purchaser have satisfied the requirements of 11 U.S.C. §§ 365(b)(1), (3) and 365(f)(2), including the provision of adequate assurance of future performance.  In particular, while the Court does not expressly decide the issue of whether the real property that is the subject of the Lease (the "Property") is part of a "shopping center" within the meaning of 11 U.S.C. § 365, all of the so-called "shopping center provisions" of the Bankruptcy Code with respect to the assumption of a shopping center lease have been satisfied in connection with the assumption and assignment of the Lease and the Purchaser's use of the premises in a manner consistent with its typical retail operations, as described in the Purchase Agreement.

6.      The Lease will be assumed and assigned to the Purchaser, in accordance with its terms.  The assigned Lease will remain in full force and effect notwithstanding any provision therein to the contrary (including provisions of the type described in 11 U.S.C. §§ 365(b)(2), (e)(1) and (f)(1)) which prohibit, restrict or condition such assignment or transfer).  The DIP Lender and all non-debtor parties to the Lease are deemed to have consented to the assignment, if consent was not otherwise obtained in accordance with the Purchase Agreement.

7.       Any rights contained in the Lease which purport to be personal only to the Debtors or to be exercisable only by the Debtors constitute unenforceable restrictions on assignment and may be freely exercised by the Purchaser, following Closing, to their full extent.

8.       Notwithstanding any provision in any lease, contract, reciprocal easement agreement ("REA") or applicable law, the Purchaser is authorized to allow the Property to remain dark for up to eighteen (18) months after Closing, notwithstanding any subsequent assignment or disposition of the Property in accordance with the terms of the Lease (unless the Lease or such contract, REA or local law would allow the Property to remain dark for a period in excess of eighteen (18) months following Closing, in which case such longer period shall apply). The fact that the Property remains dark for up to eighteen (18) months after Closing shall not result in the termination or forfeiture of any restrictions encumbering other parcels which benefit the Property.

9.       In connection with the opening and operating of a retail store at the Property, the Purchaser is authorized to perform alterations and remodeling to the extent necessary to conduct its typical retail operations and to replace and modify existing signage, notwithstanding any provision in the Lease to the contrary.

10.       Provisions contained in the Lease affecting the Property which are or could have the effect of being provisions which restrict "going dark," alteration and recapture provisions contained in the Lease, or clauses which impose a fee or a penalty or a profit sharing upon assignment or limit or condition

extension or renewal options, clauses which seek to reduce or increase the rent or impose a penalty or to modify or terminate the Lease or any lease relating to the affected shopping center or referring to Winn Dixie, as a result of going dark or upon assignment, provisions which directly or indirectly limit or condition or prohibit assignment, continuous operating covenants, covenants that any user of the Debtors' premises operate under the name of "Winn-Dixie," and/or operate with a use similar to a "Winn-Dixie," and similar provisions contained in any other documents with respect to the Property or the affected shopping center, or relating or referring to the shopping center shall not restrict, limit, or prohibit the sale or assumption and assignment of the Property to the Purchaser and such clauses are hereby deemed and found to be unenforceable anti-assignment clauses within the meaning of 11 U.S.C. § 365(f).

11.     Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Purchase Agreement and the Assignment and Assumption Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement. The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Lease to the Purchaser.

12.     Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Purchase Agreement without further order of the Court, provided that (i) the Debtors first

11

obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

> 13.    The Debtors will transfer the Assets to the Purchaser upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f) (except for the Permitted Encumbrances). The only known Claims and/or Interests in the Assets are those of the landlord with respect to the Lease, the senior liens and superpriority administrative claims of the DIP Lender and any liens of the Collier County Tax Collector for unpaid taxes. The Claims and/or Interests of the landlord will be satisfied upon Closing by the Debtors' payment of the Cure Amount, if any, and the Debtors' and the Purchasers' demonstration of adequate assurance of future performance under 11 U.S.C. § 365. The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender, and any other liens, claims or interests with respect to the Assets, will attach to the proceeds of the Sale, in the case of the DIP Lender in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order). The liens, if any, of the Collier County Tax Collector on the Debtors' interest in the Property shall attach to the proceeds of the sale of the Lease to the Purchaser, and the claims, if any, related to such liens, shall be treated and resolved in these cases.

14. The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

15. The Debtors' transfer of the Assets pursuant to the terms of the Purchase Agreement is a transfer subject to 11 U.S.C. § 1146(c). Accordingly, the making, delivery, filing or recording of any deeds, assignments or other transfer documents in connection with the sale (the "Transfer Instruments"), will not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax (including without limitation, any transfer or recordation tax applicable to deeds and/or security interests or any recording fee applicable to this Order or any memorandum or instrument of transfer regarding the Lease). All filing and recording officers are directed to accept for filing or recording, and to file or record in the appropriate public records a certified copy of this Order along with any Transfer Instruments immediately upon presentation and without payment of any such taxes or fees.

16. The Purchaser provided the Debtors with reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia, without collusion. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

17. All defaults, claims or other obligations of the Debtors arising or accruing under the Lease, if any, prior to assumption (without giving effect to any acceleration clauses or any default provisions of the kind specified in

11 U.S.C. § 365(b)(2)) will be cured by the Debtors by paying the Cure Amount, if any. No other or further monetary amounts or obligations are due or existing under the Lease or any other Assigned Agreement by the Debtors, whether pursuant to 11 U.S.C. § 365(b)(1) or otherwise.

18.     An objection regarding a "cure issue" to the assumption and assignment of the Lease timely made and filed with the Court prior to the expiration of the applicable objection deadline shall not affect the assumption and assignment of the Lease. The Debtors will hold the Purchaser harmless from any failure by the Debtors to pay the applicable Cure Amount.

19.     The failure of any party to: (a) allege in these proceedings any pre-assumption and assignment default under the Lease, other than the Cure Amount; (b) identify any amendment, modification, sublease or other agreement relating to or affecting the Property, other than those listed on Exhibit A-4 to the Purchase Agreement; (c) assert any material waiver, failure to act, or act or statement contrary to that presented in the Motion by the Debtors or (d) assert any objection or defense to the entry of this Order, shall forever bar and estop said party, its heirs, successors and assigns, and any predecessor in interest, of itself and anyone claiming by, through or under it or them, from asserting any claims or attempting to enforce any rights based thereon in any subsequent cases, proceedings, or actions against the Debtors or the Purchaser (or parties claiming through the Purchaser), in law or in equity in this or before any other court or tribunal, and any such claim(s) shall be and are terminated, exonerated, barred and adjudicated against such person. No party shall be entitled to enforce against

14

the Purchaser any pre-closing document, instrument or agreement with respect to the Property other than a document, instrument or agreement listed on Exhibit A-4 to the Purchase Agreement, and all parties shall be enjoined from attempting to enforce any such document, instrument or agreement against Purchaser or any of its affiliates, related parties, successors or assigns.

20.    Pursuant to 11 U.S.C. § 365(k), upon the assignment of the Lease to the Purchaser, (a) the Debtors and their estates are relieved from any and all liability for any breach of the Lease occurring after assignment to the Purchaser, and (b) subject to the terms of this Order, the Purchaser is responsible for any and all claims and obligations under the Lease occurring or arising after the assignment.

21.    Subject to the terms of this Order, the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser assumes all rights and obligations of the Debtors under the Lease on and after the Closing Date.

22.    All non-Debtor parties to the Lease are forever enjoined and estopped from contesting the Cure Amounts and from asserting any default against the Purchaser which existed prior to the Closing Date.

23.    Upon the Debtors' assignment of the Lease to the Purchaser, no default will exist under the Lease. Upon entry of this Order and the assumption and assignment of the Lease, the Purchaser is deemed to be in compliance with all terms and provisions of the Lease.

24.     Subject to the terms and conditions of this Order, all entities that are presently, or upon Closing may be, in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors. Prior to or upon the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims and/or Interests in the Assets (except for the Permitted Encumbrances), if any. In the event any creditor fails to release its Claims and/or Interests in the Assets upon Closing, the Debtors are authorized to take any action necessary to do so including, to execute and file any statements, instruments, releases and other documents on such creditor's behalf. The Purchaser is also authorized to file, register or otherwise record a certified copy of this Order upon Closing. Once this Order is so filed, registered or otherwise recorded, the Order constitutes conclusive evidence of the release of all Claims and/or Interests against the Assets as of the Closing (except for the Permitted Encumbrances).

25.     The Purchaser acted in good faith, as that term is used in 11 U.S.C. § 363(m), in purchasing the Assets and Lease under the Purchase Agreement. For that reason, any reversal or modification of this Order on appeal will not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

26.     The Debtors' transfer of the Assets to the Purchaser will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances) against the Debtors or against

an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

27.     Other than the Permitted Encumbrances and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets, including, the Lease. The Debtors' transfer of the Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state or territory.

28.     Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets and the Lease and a bill of sale transferring good and marketable title in the Assets to Purchaser. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

29.     This Order is effective as a determination that upon Closing any and all Claims and/or Interests (except for the Permitted Encumbrances), if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

17

30.     This Order is binding upon all entities who may be required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Assets.

31.     The landlord under the Lease is directed to sign any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for purposes of obtaining any permits, approvals or other necessary documentation and/or action required for the alterations and remodeling permitted under this Order.

32.     This Court retains exclusive jurisdiction to (a) enforce and implement the Purchase Agreement, the Assumption and Assignment Agreement, and any other agreements and instruments executed in connection with the Purchase Agreement, (b) compel delivery of possession of the Assets to Purchaser, (c) resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement or the Assumption and Assignment Agreement, and (d) interpret, implement and enforce the provisions of this Order.

33.     The terms and provisions of the Purchase Agreement, the Assumption and Assignment Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

18

34.     Except with respect to Permitted Encumbrances, all persons who hold Claims and/or Interests against the Debtors are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

35.     After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Claims and/or Interests or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

36.     To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the Purchase Agreement will control.

37.    Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f) of the Federal Rules of Bankruptcy Procedure.

38.    ~~Notwithstanding Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d), this Order will take effect immediately upon entry.~~

Dated this _2_ day of ~~July~~ August, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve a copy of this Order on counsel for the Purchaser and all parties who received copies of the Motion.

# EXHIBIT A

**BAE SYSTEMS**

# CERTIFICATE OF SERVICE

**Enterprise Systems Incorporated**
**11487 Sunset Hills Road**
**Reston, Virginia 20190-5234**

```
District/off: 113A-3          User: cartes           Page 1 of 1               Date Rcvd: Aug 03, 2005
Case: 05-03817               Form ID: pdfdoc         Total Served: 1
```

The following entities were served by first class mail on Aug 05, 2005.
aty        +Cynthia C. Jackson,   Smith Hulsey & Busey,   225 Water Street, Suite 1800,
            Jacksonville, FL 32202-4494

The following entities were served by electronic transmission.
NONE.                                                                           TOTAL: 0

            ***** BYPASSED RECIPIENTS *****
NONE.                                                                           TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.**

**First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Aug 05, 2005**                    **Signature:**