UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: ) | Case No. 05-03817-3F1 |
| ) | |
| WINN-DIXIE STORES, INC., et al., ) | *Chapter 11* |
| ) | |
| Debtors. ) | Jointly Administered |

**ORDER APPROVING DEBTORS' LEASE TERMINATION
AGREEMENTS AND GRANTING RELATED RELIEF**

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006(a), authorizing the Debtors to sell leasehold interests, equipment and inventory, and if the respective store contains a pharmacy, the pharmacy scrips, free and clear of liens, claims, interests and encumbrances, (b) determining that the sale is exempt from any stamp, transfer, recording or similar tax, (c) authorizing the Debtors to assume and assign all unexpired leases identified in the Purchase Agreement in connection with the sale, (d) fixing cure amounts for the Lease, and (e) granting related relief (the "Motion"). By the Motion, the Debtors assert that no cure is required under the lease (and any amendments) for Store No. 2282 (the "Lease"). By the Motion, the affected landlord, Southchase Investors, LLC (the "Landlord") had until July 14, 2005 to object to the proposed cure amount. No objection was filed. The Court held a hearing on the Motion on July 27, 2005. The Court has reviewed the Motion and heard the representations of counsel. Upon the

representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:

A. This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B. The Debtors solicited the highest or otherwise best offer for the Lease in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 16, 2005 (the "Bidding Procedures"). A competing bid was received for the Lease and related assets and the Debtors conducted an auction for the Assets on July 18, 2005 (the "Auction"). At the Auction, the Landlord submitted the final bid for termination of the Lease in the amount of $580,000, plus a waiver of all claims arising pre-petition and post-termination, representing the highest or otherwise best offer received for the Lease.

C. The Debtors have provided interested parties (including all parties asserting claims or interests in the Lease, if any) with proper notice of the Motion, the hearing, Auction[1], the termination of the Lease, and the fixing of any cure amount, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

D. The Debtors marketed the Lease and conducted the sale process in compliance with the Order approving the Bidding Procedures, the Bidding Procedures, the Bankruptcy Code and all other Orders entered in these cases. The bidding on the

---

[1] All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion.

Lease and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets. In their sound business judgment, the Debtors determined that the bid submitted by the Landlord for termination of the Lease represented the highest or otherwise best offer for the Lease.

E. The Debtors (i) have full corporate power and authority to execute and consummate the Lease Termination Agreement attached as Exhibit A (the "Termination Agreement") and all related documents, and the termination of the Lease has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Termination Agreement, are required to consummate the transactions contemplated by the agreement.

F. The consideration the Landlord is providing to the Debtors for termination of the Lease (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value.

G. The Debtors' termination of the Lease pursuant to the Termination Agreement will be a legal, valid, and effective termination of the Lease.

H. Notwithstanding the Termination Agreement or the Lease terms, the Debtors will have the right to remain in the premises up to the Termination Date (as defined in the Agreement) to discontinue its operations and to conduct a store closing sale in accordance with the Court's Order of July 27, 2005 (Docket No. 2537) (the "Store Closing Order").

I. Until the Termination Date, the Debtors will pay all amounts and perform all obligations under the Lease in accordance with 11 U.S.C. §365(d)(3).

J.      The Debtors will cause the proceeds received in consideration for the Termination Agreement to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

K.      The Debtors' entry into the Termination Agreement is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

L.      The Court's approval of the Termination Agreement is in the best interests of the Debtors, their estates and their creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.      The Motion is granted.

2.      All objections to the entry of this order or to the relief granted and requested in the Motion, that have not been withdrawn, waived or settled at or before the hearing, are denied and overruled on the merits.

3.      The Termination Agreement is approved in all respects. The Lease is terminated effective on the Termination Date, as defined in the Termination Agreement.

4. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Termination Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement. The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Lease to Purchaser.

5. Notwithstanding the terms of the Lease, the Debtors are authorized to remain on the premises up to the Termination Date, to discontinue operations and to conduct store closing sales on the premises pursuant to the Store Closing Order.

6. Any agreements, documents, or other instruments executed in connection with the Termination Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Termination Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

7. The Debtors will cause the net proceeds from the Termination Agreement to be paid in accordance with the terms of the Final Financing Order and the Loan Documents.

8. This Court retains exclusive jurisdiction to (a) enforce and implement the Termination Agreement and any other agreements and instruments

executed in connection with the Termination Agreement, and (b) interpret, implement and enforce the provisions of this Order.

9. The terms and provisions of the Termination Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Landlord and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

10. Effective on the Termination Date, the Debtors and the Landlord waive any and all claims each has or may have against the other, except as provided by the Termination Agreement.

11. Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f), Federal Rules of Bankruptcy Procedure.

Dated this 5th day of August, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to
serve a copy of this Order on all parties
who received copies of the Motion.

# **EXHIBIT A**

## LEASE TERMINATION AGREEMENT

THIS LEASE TERMINATION AGREEMENT (the "Agreement") is made this 19th day of July, 2005 by and between SOUTHCHASE INVESTORS, LLC, a Florida limited liability company having an address at 770 Township Line Road, Suite 150, Yardley, PA 19067 ("Landlord"), and WINN-DIXIE STORES, INC, a Florida corporation having an address at 5050 Edgewood Court, PO Box B, Jacksonville, FL 32203 ("Tenant").

### BACKGROUND

A. Landlord and Tenant are parties to that certain Lease described on Exhibit A attached hereto and made a part hereof (the "Lease").

B. Winn-Dixie, Inc., and its subsidiaries and affiliates, including Tenant (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et. seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005. Venue of the Debtors' case was transferred to the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") on April 13, 2005.

C. On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures"). The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D. On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E. On July 18, 2005, pursuant to the Bidding Procedures, the Debtors conducted an auction for the sale of assets, including the Lease, and the Landlord was the successful bidder for the Lease.

F. Landlord and Tenant desire to terminate the Lease and end the Lease term effective as of the later of: (i) the date of Bankruptcy Court approval of the sale of the Lease; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale at the Premises (the "Termination Date").

NOW THEREFORE in consideration of the mutual covenants contained herein and intending to be legally bound hereby, Landlord and Tenant agree as follows:

1. **Termination Date**. Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will be

terminated and of no further force and effect. Tenant will continue to pay and remain liable for all rent and additional rent, if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Termination Date. After the Termination Date, neither party will have any further rights or obligations under the Lease.

2. **Surrender of Premises.** Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in "broom clean" condition. Except as set forth in the immediately preceding sentence, Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises. Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises. This provision will survive the termination of the Lease. Notwithstanding the foregoing, the Tenant has the right, but not the obligation, to remove by sale or otherwise prior to the Termination Date any trade fixtures, signs and other personal property of Tenant including lighting systems, counters, modular wall units, shelving and other movable personal property, external signage and any other items that Tenant is permitted to remove under the Lease. Upon surrender, all obligations of Landlord and Tenant will cease as of the date hereof, including without limitation the obligation to pay rent and other charges under the Lease.

3. **Right to "Go Dark" and Conduct Store Closing Sale.** Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date. Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Debtors' Motion for Order (A) Authorizing the Debtors to Retain Liquidating Agent and Approving Agency Agreement, (B) Authorizing the Debtors to Sell Merchandise Free and Clear of Liens Through Store Closing Sales in Accordance with Attached Guidelines and (C) Granting Related Relief filed on July 1, 2005.

4. **Consideration.** Landlord shall pay to Tenant on or before the Termination Date hereof the sum of five hundred eighty thousand dollars ($580,000) in consideration of the foregoing termination and entering into this Agreement.

5. **Reimbursement of Prepaid Expenses.** Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease.

6. **Irrevocable Bid.** Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord. Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures. In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7. **Representations.** Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement. Tenant has not assigned, transferred, encumbered or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

8. **Release.** As of the Termination Date, except as to the obligations of the Tenant pursuant to this Agreement, the Landlord waives, releases and discharges Tenant, its successors and assigns, its estate, and the Debtors from lease rejection damages claims under Section 502 of the Bankruptcy Code. As of the Termination Date, except as to the obligations of the Landlord pursuant to this Agreement, the Tenant waives, releases and discharges Landlord and its successors and assigns from preferential transfer claims under Section 547 of the Bankruptcy Code.

9. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

10. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

11. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

12. **Miscellaneous.** This Lease Termination Agreement may not be modified or amended except in writing signed by Landlord and Tenant. This Lease Termination Agreement is to be governed by Florida law, and is binding on Landlord, Tenant and their respective successors and assigns.

13. **Discharge of Memorandum.** If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

14. **Jurisdiction.** The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

15. **Bankruptcy Court Approval.** This Lease Termination Agreement is subject to the approval of the Bankruptcy Court.

*Signatures appear on the next page.*

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease Termination Agreement to be executed by their duly authorized officers as of the day and year first above written.

SOUTHCHASE INVESTORS, LLC

By: _____
John J. Braithwaite
Vice President

WINN-DIXIE STORES, INC.

By: _____
Name:
Title:

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease Termination Agreement to be executed by their duly authorized officers as of the day and year first above written.

SOUTHCHASE INVESTORS, LLC

By:_____
Elizabeth A. Owens
Senior Vice President

WINN-DIXIE STORES, INC.

By:_____
Name:
Title:

EXHIBIT A

LEASE
WINN-DIXIE STORE #2282
Orlando, Florida

Lease: Lease dated December 22, 1988 between Socha Property Investments, Inc., as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

as evidenced by Short Form Lease dated December 20, 1988, recorded in Book 4065, Page 1581, of the public records of Orange County, Florida

Amendments/
Guaranty: Letter Agreement dated February 27, 1989

Assignment of Lease dated May 31, 1989

Supplemental Lease Agreement dated October 29, 1990

First Amendment to Short Form Lease dated October 25, 1995

Second Supplemental Lease Agreement dated July 15, 1996

Premises: That certain store building and related improvements located at 12351 S. Orange Blossom Trail, Orlando, Orange County, Florida

**BAE SYSTEMS**
**Enterprise Systems Incorporated**
11487 Sunset Hills Road
Reston, Virginia 20190-5234

# CERTIFICATE OF SERVICE

```
District/off: 113A-3         User: cartes           Page 1 of 1              Date Rcvd: Aug 05, 2005
Case: 05-03817               Form ID: pdfdoc        Total Served: 1

The following entities were served by first class mail on Aug 07, 2005.
aty        +Cynthia C. Jackson,    Smith Hulsey & Busey,    225 Water Street, Suite 1800,
             Jacksonville, FL 32202-4494
The following entities were served by electronic transmission.
NONE.                                                                                  TOTAL: 0
             ***** BYPASSED RECIPIENTS *****
NONE.                                                                                  TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.**

**First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Aug 07, 2005**                    Signature:    *Joseph Speetjens*