**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                                  )          Case No.  05-03817-3F1
                                                        )
WINN-DIXIE STORES, INC., et al.,                        )          *Chapter 11*
                                                        )
Debtors.                                                )          Jointly Administered

**ORDER APPROVING DEBTORS' (A) SALE OF ASSETS**
**FREE AND CLEAR OF LIENS, (B) ASSUMPTION AND**
**ASSIGNMENT OF LEASES AND (C) RELATED RELIEF**
(Associated Whole Grocers, Inc. + Alex Lee, Inc.)

These cases came before the Court on the motion of Winn-Dixie

Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and

debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C.

§§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 (a)

authorizing the Debtors to sell those certain "Assets" as more specifically defined

in that certain Asset Purchase Agreement attached as Exhibit A after giving

effect to the various permitted terminations by Buyer as to certain stores (the

"APA") related to those certain stores listed on attached Exhibit B ("Stores"), free

and clear of liens, claims, interests and encumbrances to Associated Wholesale

Grocers, Inc. and Alex Lee, Inc. (collectively, the "Purchaser") or its designees

(the "Third Party Purchasers") as identified at or before Closing (as defined in the

APA), (b) determining that the sale is exempt from any stamp, transfer, recording

or similar tax, (c) authorizing the Debtors to assume and assign all unexpired

leases and executory contracts identified in the APA in connection with the sale

(collectively, the "Contracts and Leases"), (d) fixing cure amounts for the

Contracts and Leases, and (e) granting related relief (the "Motion"). The Court held a hearing on the Motion on July 29, 2005 to approve the sale (the "Sale Hearing"). The Court has reviewed the Motion, considered the evidence and heard argument of counsel. After due deliberation and good and sufficient cause existing, the Court makes the following findings of fact:

A.     This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B.     The Debtors solicited highest or otherwise best offer for the Assets in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures"). A competing bid was received for the Assets and the Debtors conducted an auction for the Assets on July 18, 2005 (the "Auction"). At the Auction, Purchaser submitted the final bid of Four Million Thirty-Seven Thousand Two Hundred Thirty-Six Dollars ($4,037,236)[1], representing the highest or otherwise best offer received for the Assets.

C.     The Debtors have provided interested parties (including all parties asserting claims or interests in the Assets, if any) with proper notice of the Motion, the Sale Hearing,[2] the Auction, the assumption and assignment of the Contracts and Leases, and the fixing of any cure amounts, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a)

---

[1]     The Purchase Price has since been reduced pursuant to the APA to reflect assets relating to Stores which have been removed from the transaction pursuant to the terms of the APA.

[2]     All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion.

and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order. By the Motion, the affected landlords had until July 14, 2005 to object to the cure amounts. Objections to the Cure Amounts were filed only with regard to stores 1362, 2008 and 2063. A hearing will be held as to the cure amounts, if any, with regard to stores 1362, 2008 and 2063. Notice of the Sale Hearing has been provided by the Debtors to all employees of the Debtors' stores which comprise the Assets. The notice provided by the Debtors is and was due, proper and sufficient notice to provide affected parties adequate opportunity to determine that their rights are to be affected and afforded such parties an opportunity to object to the sale of the Assets at the Sale Hearing.

D.    The Debtors marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Bidding Procedures, the Bankruptcy Code and all other orders entered in these cases. Bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets. In their sound business judgment, the Debtors determined that the bid submitted by the Purchaser at the Auction represented the highest or otherwise best offer for the Assets.

E.    The Debtors (i) have full corporate power and authority to execute and consummate the APA, and all related documents, and the sale of the Assets and assumption and assignment of the Contracts and Leases has been duly and validly authorized by all necessary corporate action of the

3

applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the APA, are required to consummate the transactions contemplated by the APA.

F.    The Debtors have the ability to convey the Assets to Purchaser and, as applicable, Third Party Purchasers on the terms and conditions of this Order and the APA.

G.    The Debtors have good business reasons to sell the Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

H.    Neither the Purchaser, any of its affiliates, the Third Party Purchasers nor their affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

I.    The Debtors and the Purchaser, and applicable Third Party Purchasers proposed, negotiated and entered into the APA, without collusion, in good faith and at arms'-length bargaining positions. Neither the Debtors, the Purchaser, nor the Third Party Purchasers have engaged in any conduct that would cause or permit the APA to be avoided under 11 U.S.C. § 363(n).

J.    The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the protections afforded by that section.

K.    The consideration the Purchaser gave the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value.

4

L.     The Debtors' sale of the Assets and the assumption and assignment of the Contracts and Leases will facilitate the formulation and confirmation of a plan of reorganization. For this reason, the sale of the Assets and the assumption and assignment of the Contracts and Leases constitute transfers to which 11 U.S.C. § 1146(c) applies.

M.     The Debtors' transfer of the Assets to the Purchaser or Third Party Purchaser, as applicable, pursuant to the APA will be a legal, valid, and effective transfer of the Assets. The Debtors' transfer of the Assets and the Contracts and Leases to the Purchaser or Third Party Purchaser, as applicable, indefeasibly vests the Purchaser or Third Party Purchaser, as applicable, with good and valid title in and to the Assets free and clear of any Claims (as defined below) except the Permitted Encumbrances (as such terms are defined in the APA) and the liabilities expressly assumed in the APA ("Assumed Liabilities"), if any, as defined in the APA. Any Claim that is not one of the Permitted Encumbrance or Assumed Liabilities, in or against the Debtors, their insiders, the Assets, or the Contracts and Leases will attach to the net proceeds of the sale with the same effect, validity, enforceability and priority of such Claims, if any, as such Claims had against the Assets or Contracts and Leases prior to the sale contemplated hereby, subject to any rights, claims, defenses and objections of the Debtors and all interested parties with respect to such Claims.

N.     The Debtors may sell and transfer the Assets in accordance with the terms and conditions of the APA free and clear of all Claims (except the Permitted Encumbrances and the Assumed Liabilities) because any entity with

5

any Claims in the Assets to be transferred (i) has consented to the sale (including the assumption and assignment of the Contracts and Leases) or is deemed to have consented to the sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claims; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Holders of Claims, if any, who did not object, or who withdrew their objections to the Sale Motion are deemed to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2).

O.    The Debtors will cause the proceeds from the sale to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

P.    The Debtors' assumption and assignment of the Contracts and Leases in connection with the sale is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

Q.     The Debtors have provided the counter-party to the Contracts and Leases with adequate assurance that they will promptly cure any defaults under the Contracts and Leases pursuant to 11 U.S.C. §§ 365(b)(1).

R.     Pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006, the amounts set forth on Exhibit C, if any, constitute all amounts due and owing under the Contracts and Leases and will be fixed and allowed for the Contracts and Leases, except that the Court will determine the amounts due for stores 1362, 2008 and 2063 (the "Cure Amount"). No other amounts are due and owing by the Debtors under the Contracts and Leases. The Debtors will pay the Cure Amount, if any, in accordance with the terms and provisions of the APA. Upon payment of the Cure Amount, all defaults, if any, under the Contracts and Leases will be deemed cured.

S.     The Purchaser or Third Party Purchaser, as applicable, has provided the counter-party to each of the Contracts and Leases with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B).

T.     No default of the type described in 11 U.S.C. § 365(b)(2)(D) exists under the Contracts and Leases.

U.     Except as expressly set forth in the APA, the Purchaser and any Third Party Purchaser will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Assets or the Contracts and Leases by virtue of the transfer of the Assets and the assumption and assignment of the Contracts and Leases to the Purchaser. The Purchaser and

applicable Third Party Purchaser will not be deemed, as a result of any action taken in connection with the purchase of the Assets or the assumption and assignment of the Contracts and Leases to (i) be a successor to the Debtors (other than with respect to the Assumed Liabilities and any obligations arising under the assigned Contracts and Leases from and after the Closing); or (ii) have, *de facto* or otherwise, merged with or into the Debtors. Neither the Purchaser nor any Third Party Purchaser is acquiring or assuming any liability, warranty, or other obligation of the Debtors, except as expressly set forth in the APA or in any of the assigned Contracts and Leases.

V. A sale on the terms and conditions of the APA, including without limitation, entry of an order providing a sale free and clear of Claims and providing that the Purchaser and any applicable Third Party Purchaser are not successors of the Debtors, is consistent with the Bankruptcy Code and promotes the policies of the Bankruptcy Code to maximize value. Absent such finding, the Purchaser and/or Third Party Purchasers would be unwilling to pay the price for the Assets and Contracts and Leases as provided for in the APA.

W. The Court's approval of the APA is in the best interests of the Debtors, their estates and their creditors.

X. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

2. All objections to the entry of this order or to the relief granted and requested in the Motion, including any objection to the proposed Cure Amount, that has not been withdrawn, waived or settled at or before the Sale

8

Hearing, are denied and overruled on the merits, except that the Court reserves for future determination the Cure Amounts for stores 1362, 2008 and 2063.

3.    The APA is approved in all respects.  Pursuant to 11 U.S.C. §§ 105(a) and 363(b), the Debtors are authorized and directed (subject to applicable Closing conditions set forth in the APA), to consummate the sale approved in this order, including transferring and conveying the Assets to the Purchaser or Third Party Purchaser, as applicable, pursuant to and in accordance with the terms and conditions of the APA.

4.    Upon Closing, the Debtors are authorized and directed, in accordance with 11 U.S.C. §§ 105(a), 363 and 365, to assume and assign the Contracts and Leases to Purchaser or Third Party Purchaser, as applicable.

5.    The Debtors have satisfied the requirements of 11 U.S.C. §§ 365(b)(1), (3) and 365(f)(2).

6.    The Contracts and Leases will be assumed and assigned to the Purchaser or Third Party Purchaser, as applicable, in accordance with their respective terms.  The assigned Contracts and Leases will remain in full force and effect notwithstanding any provision in any such Contracts and Leases to the contrary (including provisions of the type described in 11 U.S.C. §§ 365(b)(2), (e)(1) and (f)(1)) which prohibit, restrict or condition such assignment or transfer). The DIP Lender and all non-debtor parties to the Leases are deemed to have consented to the assignment, if consent was not otherwise obtained in accordance with the APA.

7.     Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized, directed and empowered to consummate and implement fully the APA, together with all additional instruments and documents that may be necessary to implement the APA.  The Debtors are authorized and directed to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Contracts and Leases to Purchaser or, as applicable, a Third Party Purchaser.

8.     Any agreements, documents, or other instruments executed in connection with the APA may be modified, amended, or supplemented by the parties in accordance with the terms of the APA without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

9.     The Debtors will transfer the Assets to the Purchaser or applicable Third Party Purchaser upon Closing of the sale free and clear of all Claims pursuant to 11 U.S.C. §§ 105(a) and 363(f) (except for the Permitted Encumbrances and Assumed Liabilities).  All non-assumed Claims, if any, will attach to the proceeds of the sale, with the same validity, enforceability, priority, force and effect they now have as against the Assets, subject to any rights, claims, defenses and objections of the Debtors and all interested parties with respect to such Claims and Interests.

10. The Debtors will cause the proceeds from the sale to be paid in accordance with the terms of the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

11. The Debtors' transfer of the Assets pursuant to the terms of the APA is a transfer pursuant to 11 U.S.C. § 1146(c). Accordingly, the making, delivery, filing or recording of any deeds, assignments or other transfer documents in connection with the sale (the "Transfer Instruments"), will not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax (including without limitation, any transfer or recordation tax applicable to deeds and/or security interests). All filing and recording officers are directed to accept for filing or recording, and to file or record the Transfer Instruments immediately upon presentation without payment of any such taxes.

12. The Purchaser or applicable Third Party Purchaser provided the Debtors with reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and applicable non-bankruptcy law. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

13. Except as provided above for stores 1362, 2008 and 2063, the Cure Amount for the Contracts and Leases is fixed in the respective amounts set forth on Exhibit C. All defaults, claims or other obligations of the Debtors arising or accruing under each of the Contracts and Leases, if any, prior to assumption (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) will be cured by the Debtors in accordance with the APA, by paying the Cure Amount. No other or

further monetary amounts or obligations are due or existing under the Contracts and Leases by the Debtors, whether pursuant to 11 U.S.C. § 365(b)(1) or otherwise. The Debtors will pay any Cure Amount in accordance with the terms and provisions set forth in Exhibit C, and as further ordered by the Court in regard to stores 1362, 2008 and 2063.

14.    Pursuant to 11 U.S.C. § 365(k), upon the assignment of the Contracts and Leases to the Purchaser or applicable Third Party Purchaser, (a) the Debtors and their estates are relieved from any and all liability for any breach of the Contracts and Leases occurring after assignment to the Purchaser or applicable Third Party Purchaser, and (b) the Purchaser or applicable Third Party Purchaser is responsible for any and all claims and obligations under the Contracts and Leases occurring or arising after the assignment. The Purchaser shall not be responsible for such Contracts and Leases assigned to a Third Party Purchaser, nor shall a Third Party Purchaser be responsible for such Contracts and Leases assigned to Purchaser or another Third Party Purchaser.

15.    Subject to the terms of this Order, the APA, the Purchaser or Third Party Purchaser, as applicable, assumes all rights and obligations of the Debtors under the Contracts and Leases.

16.    All non-Debtor parties to the Contracts and Leases are forever enjoined and estopped from contesting the Cure Amounts and from asserting any default against the Purchaser or applicable Third Party Purchaser which existed as of the date of the Sale Hearing.

17.    Upon the Debtors assignment of the Contracts and Leases to the Purchaser or applicable Third Party Purchaser, no default will exist under the Contracts and Leases. Upon entry of this Order and the assumption and assignment of the Contracts and Leases, the Purchaser or Third Party Purchaser, as applicable, is deemed to be in compliance with all terms and provisions of the Contracts and Leases.

18.    All entities that are presently, or upon Closing may be, in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors. Prior to or upon the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims in the Assets (except for the Permitted Encumbrances and Assumed Liabilities), if any. In the event any creditor fails to release its Claims in the Assets, the Debtors and the Purchaser are each authorized to take any action necessary to do so including, to execute and file any statements, instruments, releases and other documents on such creditor's behalf. The Purchaser or applicable Third Party Purchaser is also authorized to file, register or otherwise record a certified copy of this Order. Once this Order is so filed, registered or otherwise recorded, the Order constitutes conclusive evidence of the release of all Claims against the Assets as of the Closing (except for the Assumed Liabilities).

19.    The Purchaser and Third Party Purchasers acted in good faith in purchasing the Assets and Contracts and Leases under APA as that term is used in 11 U.S.C § 363(m). For that reason, any reversal or modification of

the Order on appeal will not affect the validity of the sale to the Purchaser or applicable Third Party Purchaser, unless such authorization is duly stayed pending such appeal.

20.    The Debtors' transfer of the Assets to Purchaser or applicable Third Party Purchaser and performance under the Contracts and Leases will not result in (a) the Purchaser having any liability for any Claim (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) the Purchaser or applicable Third Party Purchaser having any liability to the Debtors except as expressly stated in the APA and this Order.

21.    The Purchaser (and its affiliates, successors or assigns) and the Third Party Purchasers (and their respective affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets, including, the Contracts and Leases (other than the Permitted Encumbrances and the Assumed Liabilities as set forth in the APA).

22.    Except as to the Assumed Liabilities as more fully set forth in the APA, the transfer of the Assets to, and the assumption of the Contracts and Leases by, Purchaser or Third Party Purchaser, as applicable, on the Closing Date shall be free and clear of any and all liens, encumbrances, claims, charges, defenses, off-sets, recoupments and interests thereon and there against of whatever type or description, including, without limitation, restrictions on or conditions to transfer or assignment, liens, mortgages, security interests, pledges, hypothecations, control agreements, equities and other claims and

interests (all such claims and interests described in this paragraph shall hereafter be referred to as the "Claim" or "Claims"), having arisen, existed or accrued prior to and through the Closing Date, whether direct or indirect, monetary or non-monetary, arising at law or in equity, contract or tort, absolute or contingent, matured or unmatured, voluntary or involuntary, liquidated or unliquidated, of, by or against Debtors, insiders of the Debtors, the Assets or the Contracts and Leases and further including, without limitation, the following:

a.    Claims arising through the Closing Date (as defined in the APA), if any, of any governmental unit for taxes; any Claim arising through the Closing Date relating to any executory contract or lease (whether of personal or real property, or otherwise) affecting or in any way related to the Assets, without limitation, Claims of Debtors' vendors, suppliers and/or customers arising from Debtors' failure to perform its obligations to said parties whether such failure occurred prior to or on the Closing Date or whether such failure arose as a result of a Purchaser's or Third Party Purchaser's election or before the Closing Date not to accept and/or perform such vendors', suppliers' or customers' account and/or orders subsequent to the Closing Date;

b.    Any Claim arising through the Closing Date relating to work performed by any contractor or materialman that would give rise to a mechanic's lien, or similar Claim, against the Assets;

c.    Any Claim arising through the Closing Date for attorney's fees or other costs or expenses claimed by lessors, lessees, licensees or any other non-debtor parties to executory contracts or any lease;

d.    Any Claim arising through the Closing Date based on acts or omissions of the Debtors arising in tort, contract or otherwise, including, without limitation, Claims for successor liability; and

e.    Any Claim arising through the Closing Date relating to liability arising under federal, state or local revenue, tax, products liability, labor, employment, worker compensation or environmental laws, rules or regulations or with respect to Debtor's liability as distributor or a retailer.

f.    Any claim by any person or entity relating to any health or welfare benefit for the benefit of any current or former employee of Debtors or their dependents or beneficiaries.

In addition, Purchaser and its affiliates, successors or assigns or their respective properties (including the Assets), and the Third Party Purchasers, as applicable, or their respective affiliates, successors or assigns or their respective properties (including the Assets) shall not be liable, by operation of law or otherwise, for any Claim by virtue of Purchaser's or Third Party Purchaser's purchase or subsequent operation of the Assets or performance of the Contracts and Leases including, without limitation, claims of the type set forth in subparagraphs (a)-(f) above.

23. Neither the purchase of the Assets by Purchaser or applicable Third Party Purchaser, nor the subsequent operation of the Assets as grocery stores by Purchaser or applicable Third Party Purchaser shall cause Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), or the Third Party Purchasers, as applicable, or their respective affiliates, successors or assigns or their respective properties (including the Assets) to be deemed a successor in any respect of the Debtors' business within the meaning of any laws, rules or regulations relating to any tax, revenue, pension, benefit, ERISA, environmental, labor, employment, products liability or other law, rule or regulation of any federal, state or local government.

24. Upon closing, this Order constitutes a full and complete general assignment, conveyance and transfer of the Assets and the Contracts and Leases and/or a deed or a bill of sale transferring good and marketable title in the Assets to Purchaser or Third Party Purchasers as applicable on the Closing Date free and clear of all Claims except for Permitted Encumbrances and

Assumed Liabilities. Each and every federal, state, and local governmental agency or department is directed to accept this Order as such an assignment, deed and/or bill of sale or any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA. If necessary, this Order shall be accepted for recordation on or after the Closing Date as conclusive evidence of the free and clear, unencumbered transfer of title to the Assets to Purchaser or applicable Ultimate Purchaser.

25. This Order is effective as a determination that any and all Claims (except for the Permitted Encumbrances and Assumed Liabilities), if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets and Contracts and Leases.

26. This Order is binding upon all entities that may be required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Assets.

27. This Court retains exclusive jurisdiction to (a) enforce and implement the APA and any other agreements and instruments executed in connection with the APA, (b) compel delivery of possession of the Assets to Purchaser, (c) resolve any disputes, controversies or claims arising out of or relating to the APA, and (d) interpret, implement and enforce the provisions of this Order.

28.     The terms and provisions of the APA and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, the Third Party Purchasers, as applicable, and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

29.     All persons who hold Claims against the Debtors, insiders of the Debtors, or the Assets are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, any applicable Third Party Purchasers, and their respective affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale.

30.     After the Closing Date, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser, any of its affiliates, Third Party Purchasers, or any of their respective affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Claims or (ii) for any period commencing before and concluding prior to or on the Closing Date or any pre-Closing portion of any period commencing before the Closing Date and

18

concluding after the Closing, or (iii) assessed prior to and payable after the Closing Date, except as otherwise provided in the APA. For purposes of this paragraph, any employee terminated as of the Closing Date will deemed to have been terminated prior to the Closing Date and any claims related to such termination, if any, are Claims against the Debtors and their respective estates. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the APA.

31. The Debtors are authorized and directed to take such actions as are necessary and appropriate to terminate the employment by the Debtors of those employees affected by the sale.

32. All amounts payable by the Debtors to the Purchaser or any Third Party Purchaser under the APA and/or this order shall be administrative expenses entitled to priority under § § 503(b) and 507(a)(1) of the Bankruptcy Code.

33. To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the APA and this Order, the provisions contained in the APA will control.

34. Notwithstanding Fed. R. Bankr. P. 6004(g) and 6006(d), this Order will take effect immediately upon entry.

35. To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

36.    Debtors are directed to serve on or before the Closing Date a full and complete copy of this Order by First Class U.S. Mail upon all employees of any Store comprising the Assets. Debtors are further authorized and directed to post on or before the Closing Date a full and complete copy of this Order on any employee bulletin board or like display area where employee notices are regularly displayed in each of the Stores comprising the Assets. Debtors shall and promptly file a written certification of compliance with this provision.

## SPECIAL NOTICE TO EMPLOYEES OF THE STORES SUBJECT TO THIS SALE

Unless you have been notified by the Debtors otherwise, on the Closing Date your employment with the Debtors will be terminated. While it is the Debtors' belief that the Purchaser or Third Party Purchaser, as applicable, will extend offers of employment to a substantial number of the employees at each store, the Purchaser or Third Party Purchaser is under no obligation to do so. If you are subsequently hired by Purchaser or Third Party Purchaser, as applicable, your employment date will commence upon the Closing Date of the sale or on such other date as you and the Purchaser or Third Party Purchaser, as applicable, may agree. Pursuant to this Order, any claims you may have arising from or relating to your employment relationship through and including your termination are claims against the Debtors. The Purchaser or Third Party Purchaser, as applicable, is not a successor employer, and unless the Purchaser or Third Party Purchaser elects to hire you as of the Closing Date or thereafter, neither the Purchaser nor Third Party Purchaser shall be deemed to be your employer for purposes of any labor or employment law. Employees who are not hired by Purchaser or a Third Party Purchaser, as applicable, should contact the Debtors' Human Resources Department to obtain information regarding employee benefits, if any, including COBRA.

Dated this __5__ day of August, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve a copy of this Order on all parties who received copies of the Motion.

**BAE SYSTEMS**

Enterprise Systems Incorporated
11487 Sunset Hills Road
Reston, Virginia 20190-5234

# CERTIFICATE OF SERVICE

```
District/off: 113A-3        User: cartes            Page 1 of 1              Date Rcvd: Aug 05, 2005
Case: 05-03817             Form ID: pdfdoc          Total Served: 1
```

```
The following entities were served by first class mail on Aug 07, 2005.
aty      +Cynthia C. Jackson,   Smith Hulsey & Busey,   225 Water Street, Suite 1800,
           Jacksonville, FL 32202-4494

The following entities were served by electronic transmission.
NONE.                                                                       TOTAL: 0

         ***** BYPASSED RECIPIENTS *****
NONE.                                                                       TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.**

**First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Aug 07, 2005**                    **Signature:**    _Joseph Speetjens_