Hearing Date August 18, 2005

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re

|  |  |
|---|---|
| WINN-DIXIE STORES, INC., et al, | ) Case No. 05-03817-3F1 |
|  | ) Chapter 11 |
| Debtors. | ) Jointly Administered |

---

### MEMORANDUM OF LAW OF OLD DIXIE PRODUCE & PACKAGING, INC. IN RESPONSE TO DEBTORS' MOTION FOR DETERMINATION OF CLAIM UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT

Old Dixie Produce & Packaging, Inc., formerly known as Dixie Produce & Packaging, Inc. ("Old Dixie"), submits this response to Debtor's Motion for Determination of Old Dixie's claim under the Perishable Agricultural Commodities Act ("PACA"). The Debtors unilaterally determined and reported that "approximately $169,000" of Old Dixie's claim was not PACA eligible because Old Dixie's invoices extended the time for payment beyond 30 days (Debtors Report Regarding Claims Under PACA dated March 22, 2005).

Debtors' counsel appears to concede that Old Dixie preserved its PACA trust claims, and instead argues that Old Dixie somehow waived a right that it had preserved. That argument is logically inconsistent. The only issue before the Court is whether Old Dixie preserved its PACA trust claims, and there is no factual dispute that all PACA claims and rights were preserved.

The Debtors' argument is based on an incorrect interpretation of PACA's statutory and regulatory framework under 7 U.S.C. § 499e. Under PACA, if the parties elect to use a different time for payment period beyond the ten day period established by the federal regulations, they must enter a written agreement **before entering into the transaction** to do so, among other requirements. Only where a pre-transaction written agreement exists does the 30 day limit cited

by the Debtors apply.  No such agreement exists here, and Winn Dixie's baseless attempt to substitute the Old Dixie invoices for the required pre-transaction written agreement respectfully must be disregarded.  The invoices alone cannot and did not effectuate a valid extension of the applicable ten day payment period.  Absent a pre-transaction written agreement, the payment terms automatically default to the ten day period established by the federal regulations, as a matter of law. Accordingly, Old Dixie is entitled to payment in full of these invoices because it properly preserved its PACA trust benefits in its invoices.

FACTUAL SUMMARY

The Court is respectfully referred to Old Dixie's Objection dated May 13, 2005 for the pertinent facts.  Old Dixie is a PACA licensee which supplied fresh produce to the Debtors as set forth in the unpaid invoices supporting Old Dixie's claim (See Exhibit 2 to Old Dixie's Objection). Relying on C.F.R. §46.46(e)(2), the Debtors determined that approximately $169,000 of Old Dixie's claim is not PACA eligible because Old Dixie's invoices state "payment due in 45 days." According to the Debtors' Report, this exceeds the 30 days allowed by the PACA regulations and such credit terms extinguish Old Dixie's PACA trust rights. (See Exhibit 1 to Old Dixie's Objection, final page, fn 2).

ARGUMENT

**I.    OLD DIXIE PRESERVED ITS PACA TRUST CLAIMS**

This dispute can be resolved based on a single statement by the Third Circuit in *Idahoan Fresh v. Advantage Produce*, 157 F.3d 197 (3rd Cir. 1998).  In that case, the Court recognized, "Prompt payment is defined by regulations which apply unless the parties agree otherwise in writing prior to the transaction." *Id. at 199.*    A careful reading of the PACA statute and regulations supports this conclusion, and demonstrates that Old Dixie is entitled to full payment of the disputed invoices.

**A.    PACA – Overview and Prompt Payment Requirements**

The Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.*, is a remedial statute which should be given a liberal construction to effectuate its statutory purpose. *Hull & Co. v. Hauser's Foods, Inc.*, 924 S. 2d 777, 782 (8th Cir. 1991). "The principal justifications Congress has given for granting such generous protection for sellers of produce are (1) the need to protect small dealers who require prompt payment to survive, and (2) the importance of insuring the financial stability of the entire produce industry." *Patterson Frozen Foods, Inc. v. Crown Foods International, Inc.*, 307 F. 3rd 666 (7th Cir. 2002); *In re: Richman Produce Co.*, 112 B.R. 364, 370 (Bkrtcy. N.D. Cal. 1990) (liberally construing timing requirements for filing PACA notices). PACA impresses a "non-segregated floating trust" on perishable agricultural commodities and their derivatives and permits the commingling of trust assets without defeating the trust. 7 U.S.C. § 499e(c)(2), 7 C.F.R. § 46.46(c). Produce sellers maintain a right to recover against the purchasers through this trust, superior to all creditors. 7 U.S.C. § 499e(c)(1).

Under PACA, buyers of produce must make "full payment promptly." 7 U.S.C. § 499(b)(4). "Prompt payment" is defined in the regulations promulgated by the Secretary of the United States Department of Agriculture, which prescribe a ten day payment period from the date of receipt of the goods for buyers such as the Debtors. 7 C.F.R. §46.2(aa)(5), *see*, 7 C.F.R. § 46.46(e)(1). "Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction." 7 C.F.R. § 46.46(e)(1). "The maximum time for payment to which a seller, supplier or agent can agree and still qualify for coverage under the trust is 30

days after receipt and acceptance of the commodities..." 7 C.F.R. § 46.46(e)(2).[1] Thus, a buyer must pay the seller within ten days after produce has been accepted unless the parties enter a written agreement prior to the transaction for other payment terms that do not exceed the 30 day limit.

**B.    Qualifying for Trust Protection Under PACA.**

To recover through the PACA trust, a produce supplier must preserve the protections of the statutory trust by giving notice of its intent to preserve trust benefits "within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in the regulations issued by the Secretary [ten days as stated], (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing <u>before</u> entering into the transaction. 7 U.S.C. § 499e(c)(3). That section further provides, "[w]hen the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed in invoices, accountings and other documents relating to the transaction." *Id.*

Alternatively, a PACA licensee such as Old Dixie may also preserve trust benefits via ordinary and usual billing or invoice statements which include the information required by the last sentence of section 7 U.S.C. § 499e(c)(3) and contain on the face of the statement the following language:

> The perishable agricultural commodities listed on this invoice are
> sold subject to the statutory trust authorized by section 5(c) of the

---

[1]    The requirement for a pre-transaction written agreement is also found in 7 C.F.R. §46.2(aa)(11), which provides, " ... parties who elect to use different times of payment than those set forth in paragraphs (aa)(1) through (10) of this section must reduce their agreement to writing **before entering into the transaction** and maintain a copy of the agreement in their record...the party claiming the existence of such an agreement for time of payment shall have the burden of proving it." (Emphasis added).

Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

## C. Old Dixie Qualified for Trust Protection and is Entitled to Full Payment.

Old Dixie preserved its PACA trust rights by including the statutory language of 7 U.S.C. § 499e(c)(3) on each of its invoices (See Exhibit 2 to Old Dixie's Objection). The only issue is whether the invoice payment terms calling for payment in 45 days forfeited Old Dixie's PACA trust rights, even though there was no pre-transaction written agreement as required by the statute.

Under the clear language of PACA, invoice payment terms beyond the ten day period established by the regulations have no legal effect without a prior written agreement extending payment terms. 7 C.F.R. § 46.46(e)(1); *Idahoan Fresh, supra.*

In a decision just this past week by the United States Bankruptcy Court for the Northern District of Oklahoma, *In re Hale-Halsell Company, Case No. 04-1167-R,* decided on August 4, 2005 (**Exhibit "A"** hereto), the Court was faced with and rejected the same argument made by Debtors in this case. In *Hale-Halsell,* the Debtor asserted that numerous PACA claims were forfeited by reason of invoices which had payment terms of 30, 21 and 15 days. The Court disagreed, stating, "Because the parties did not agree in writing prior to the transaction to extend payment terms, the payment terms listed on their invoices had no legal effect, and the payment terms of ten days supplied by the Secretary of Agriculture were applicable."

The Debtors would have this Court read the 30 day period of 7 C.F.R. § 46.46e(2) in isolation, without resort to subsection (e)(1) or the statute. On this basis, the Debtors narrowly conclude that any invoice terms beyond 30 days result in a waiver of trust benefits regardless of whether there is a prior written agreement (Debtors' Motion, p. 2, ¶2). That limited

interpretation of the regulation would remove the prior written agreement requirement from the statute and regulations entirely, and cut against the liberal construction of PACA routinely applied by the courts. *See, Hull & Co., supra.* Plainly, the term "agree" in subsection (e)(2) refers to the written agreement referenced in subsection (e)(1); and, the 30 day time limit in (e)(2) applies only in situations where there is a prior written agreement, not here where there is none. Moreover, the language employed in the statute and regulations import a clear distinction between a prior written agreement and an invoice, to wit, the terms of the prior written agreement must be disclosed in the invoices. Old Dixie's invoices cannot be construed to satisfy the specific statutory requirement of a prior written agreement to extend payment terms, as the Debtors suggest (Debtors' Motion, p. 3, ¶ 5). *See, C.H. Robinson Company v. B.H. Produce Company, Inc.*, 723 F.Supp. 785 (N.D. Ga. 1989)(invoices did not constitute express written agreement under the statute; trust benefits denied on other grounds); *see also,Hale-Halsell, supra.*

Applying these principles here, the 45 day payment terms in Old Dixie's invoices are insufficient to extend the time for payment beyond the ten day prompt payment period. The statute and regulations speak unequivocally in terms of "must" and "shall" in mandating a prior written agreement. Since there is no prior written agreement, the payment terms for Old Dixie's invoices automatically default to the ten day period in the regulations, and the unenforceable due dates in the invoices are irrelevant and of no legal effect. *Idahoan Fresh v. Advantage Produce, Hale-Halsell, supra. See, Stowe Potato Sales, Inc. v. Terry's Inc.*, 224 B.R. 329 (W.D. Va. 1998)(PACA requires that the invoice set forth payment terms only if there is a pre-transaction written agreement; payment terms can be extended beyond those established by regulation only by written agreement); *Hull Company v. Hauser's Food's, Inc.*, 924 F.2d 777 (8th Cir. 1991)(logical reading of the regulation is that in order to have effect, agreements for payment

beyond the 10 day limit set by 7 C.F.R. § 46.2(aa)(5) must be in writing and that 7 C.F.R. §

46.46.(f)(2) bars trust only where there is a written agreement in excess of thirty days).[2]

Since Old Dixie complied with the PACA notice requirements set forth in 7 U.S.C. §

499e(c)(4) and 7 C.F.R. § 46.46(f) by including the required statutory language on each of its

invoices, Old Dixie properly preserved its benefits under the trust. *Stowe, supra.* The claim

should be paid in full.

## II. DEBTORS HAVE OFFERED NO EVIDENCE OF WAIVER

Under Florida law, waiver is the intentional or voluntary relinquishment of a known

right, or conduct which infers the relinquishment of a known right. *Thomas N. Carlton Estate v.*

*Keller,* 52 So.2d 131 (Fla.1951); *Enfinger v. Order of United Commercial Travelers,* 156 So.2d

38 (Fla. 1st DCA 1963); *Fireman's Fund Insurance Company v. Vogel,* 195 So.2d 20 (Fla. 2d

DCA 1967). The essential elements of waiver are (1) the existence at the time of the waiver of a

right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive

knowledge of the right; and (3) the intention to relinquish the right. *Gulf Life Insurance*

*Company v. Green,* 80 So.2d 321 (Fla.1955); *Gilman v. Butzloff,* 155 Fla. 888, 22 So.2d 263

(1945); *Wilds v. Permenter,* 228 So.2d 408 (Fla. 4th DCA 1969). Waiver may be express, or

implied from conduct or acts that lead a party to believe a right has been waived. *Thomas N.*

*Carlton Estate, supra; Davis v. Davis,* 123 So.2d 377 (Fla. 1st DCA 1960). However, when

---

[2] The Debtors' reliance on *Overton Distributor's Inc. v. Heritage Bank,* 340 F.3d 361(6th Cir. 2003) is entirely misplaced. **In *Overton,* there was a pre-transaction written agreement between the parties,** and the Court determined that the produce supplier was not PACA eligible because the supplier failed to comply with PACA's additional requirement that the terms of the agreement be disclosed on the invoices. Since Old Dixie and the Debtors had no pre-transaction written agreement in the first instance, *Overton* does not apply. Similarly, there is no indication in *Logan v. Oregon Potato Company,* 2004 WL 2851949 (D. Or. 2004), that the parties there entered a prior written agreement. Despite its heavy reliance on *Overton,* the *Logan* court analyzed only the invoices at issue, and, in an opinion that has never been followed by other courts, appeared to overlook the statutory framework concerning the required prior written agreement.

waiver is to be implied from conduct, "the acts, conduct, or circumstances relied upon to show waiver must make out a clear case." *Fireman's Fund Insurance Co., supra,* at 24, citing *Gilman v. Butzloff, supra.*

In this case, the only evidence offered by Debtors as to waiver is the language in Old Dixie's invoices as to what happens if Debtors fail to pay within 45 days, even though payment is required within 10 days. There is absolutely no evidence that Old Dixie knowingly, intentionally, voluntarily relinquished any of its claims or rights under PACA. To the contrary, as shown above, Old Dixie made every effort to preserve its PACA trust claims as expressly stated in its invoices.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court sustain Old Dixie's objection to the Report as to its claim, and that the entire disputed sum of Old Dixie's pre-petition unpaid invoices, be deemed an Allowed PACA Claim pursuant to the PACA Order and payable thereunder, together with such other and further relief that this Court deems just and proper.

Respectfully submitted on August 10, 2005.

MARKS GRAY, P.A.

   /s/   **Nicholas V. Pulignano, Jr.**
Nicholas V. Pulignano, Jr.
Florida Bar No.: 0319181
1200 Riverplace Blvd., Suite 800,
Jacksonville, Florida 32207
npulignano@marksgray.com
P: (904) 398-0900
F: (904) 399-8440
Attorneys for Old Dixie Produce & Packaging, Inc.

DWYER & CAMBRE
MARK G. DUNCAN
Louisiana Bar #29161
3421 N. Causeway Blvd., Suite 601
Metairie, Louisiana 70002
Telephone: (504) 838-9090
Facsimile: (504) 838-9187
mduncan@dwyercambre.com
Co-counsel for Old Dixie Produce & Packaging,
Inc.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served on this 10th day of August, 2005 either by electronic transmission or by United States first class mail postage prepaid to the persons listed on the attached service list.

MARKS GRAY, P.A.

 /s/    **Nicholas V. Pulignano, Jr.**
Nicholas V. Pulignano, Jr.
Florida Bar No.: 0319181
1200 Riverplace Blvd., Suite 800,
Jacksonville, Florida  32207
npulignano@marksgray.com
P: (904) 398-0900
F: (904) 399-8440
Attorneys for Old Dixie Produce & Packaging, Inc.

## SERVICE LIST

**Winn-Dixie Stores, Inc**
5050 Edgewood Court
Jacksonville, FL 32254-3699
Tax id: 59-0514290
*Debtor*

represented
by

**Adam Ravin**
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036
(212) 735-3000
Email: aravin@skadden.com

**Cynthia C. Jackson**
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32201
904-359-7700
Email: cjackson@smithhulsey.com

**United States Trustee - JAX**
135 W. Central Blvd., Suite 620
Orlando, FL 32801
407-648-6301
*U.S. Trustee*

**Official Committee of
Unsecured Creditors of Winn-
Dixie Stores, Inc., et al. ,**
*Creditor Committee*

represented
by

**Dennis F. Dunne**
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000
Fax : (212) 530-5219
Email: ddunne@milbank.com

**Robert K. Scheinbaum**
**Thomas Aljian**
Podvey, Sachs, Meanor, Catenacci,
Hildner & Cocoziello
One Riverfront Plaza
Newark, NJ 07102
(973) 623-1000
Fax : (973) 623-913
Email: rscheinbaum@podveysachs.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE:

HALE-HALSELL COMPANY,

             Debtor.

Case No. 04-11677-R
Chapter 11



### ORDER GRANTING IN PART HALE-HALSELL COMPANY'S MOTION TO DETERMINE THE VALIDITY OF CERTAIN DISPUTED PACA TRUST CLAIMS

Before the Court is Hale-Halsell Company's Motion to Determine the Validity of Certain Disputed PACA Trust Claims, filed on March 4, 2005 (Doc. 880) (the "Motion"); F&M's Objection to Hale-Halsell Company's Motion to Determine the Validity of Certain Disputed PACA Trust Claims, filed on March 21, 2005 (Doc. 897) (the "F&M Objection"); Stipulations Concerning Hale-Halsell Company's Motion to Determine the Validity of Certain Disputed PACA Trust Claims (Bolthouse Farms Group), filed on May 9, 2005 (Doc. 967) (the "Stipulations"); Brief in Support of F&M's Objection to Hale-Halsell Company's Motion to Determine the Validity of Certain Disputed PACA Trust Claims, filed on May 12, 2005 (Doc. 970) (the "F&M Brief"); and Wm. Bolthouse Group's Brief in Response to F&M Bank and Trust Company's Objection to Hale-Halsell's Motion to Determine the Validity of Certain Disputed PACA Trust Claims, filed on May 20, 2005 (Doc. 983).

A hearing to consider the Motion and the F&M Objection was held on April 27, 2005, at which the Debtor, Hale-Halsell Company ("Hale-Halsell"), appeared through its counsel, Scott Kirtley; The F&M Bank and Trust Company ("F&M") appeared through its counsel, J Schaad Titus and Kelly Loud; and Dole Fresh Fruit Company ("Dole"), Golman-Hayden Co., Inc. ("Golman"), Grimmway Enterprises, Inc. d/b/a Grimmway Farms ("Grimmway"), Liberty Fruit Co., Inc.

EXHIBIT A

("Liberty"), Produce Brokers & Distributors, Inc. ("Produce Brokers"), and Sun Pacific Marketing Cooperative, Inc. ("Sun Pacific") (collectively, the "Bolthouse Group"), appeared telephonically through their counsel, Lawrence Meuers.

Upon consideration of the pleadings, the testimony of witnesses, documentary evidence admitted at the hearing, arguments of counsel, and applicable law, the Court finds and concludes as follows:

**I.    Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(A), (B), and (O); Miscellaneous Order No. 128 of the United States District Court for the Northern District of Oklahoma: Order of Referral of Bankruptcy Cases effective July 10, 1984, as amended (effective prior to March 2, 2005); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma (effective as of March 2, 2005).

**II.    Contentions of the parties**

F & M contends that Golman, Liberty and Produce Brokers failed to preserve their respective trust claims under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. § 499, *et seq.* ("PACA"), because the payment terms included on the invoices issued by such claimants exceeded the statutory PACA payment terms and such claimants failed to reduce the extended payment terms to writing. Golman, Liberty and Produce Brokers argue that in the absence of a written agreement extending the statutory payment terms, the statutory ten-day payment term applies, and inclusion of the extended payment terms on their invoices did not invalidate their rights under PACA.

2

EXHIBIT A

F&M also contends that Dole, Golman, Grimmway, Liberty, and Sun Pacific are not entitled to recover their respective contractual attorneys' fees, costs and interest under PACA. These claimants argue that such amounts are recoverable under PACA.

Finally, F&M asserts that Dole is not entitled to recover its "Charges" in the amount of $14,484.64 listed on Dole's invoices because the "charges" are not for perishable agricultural commodities and are not recoverable under PACA. Dole contends that such "charges" are for freight, container, handling and fuel charges and constitute valid PACA claims. Although the issue of Dole's "charges" was discussed during the hearing, F&M did not specifically object to the "charges" in the F&M Objection.[1] In order to afford the parties an opportunity to offer evidence in support of their respective positions regarding the validity of the "charges," the Court will schedule an evidentiary hearing on that issue upon request.[2]

III.    Findings of Fact

On March 22, 2004, Hale-Halsell filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On June 18, 2004, the Court entered its Order (1) Setting Procedure for Determination and Payment of Claims Under the Perishable Agricultural Commodities Act and (2) Assessing 11 U.S.C. Section 506(c) Costs (the "Order"). On July 6, 2004, each of the members of the Bolthouse Group timely filed a Special PACA Proof of Claim in accordance with the terms of the Order.

---

[1] F&M objected to the "charges" in its objection to Hale-Halsell's initial PACA Report filed on August 25, 2004 (Doc. 448).

[2] F&M also argued that the claims of the members of the Bolthouse Group should not be allowed because the objection by the Bolthouse Group to Hale-Halsell's initial PACA Report was not timely. The Court overruled this objection at the hearing for the reasons stated.

3


EXHIBIT A

On January 27, 2004, Produce Brokers sent Hale-Halsell written notice of its intention to preserve trust benefits in accordance with Section 499e(c)(3) of PACA. The notice was sent within thirty days after the payment due date of five of Produce Broker's invoices.

The invoices issued by Dole, Golman, Grimmway, and Liberty to Hale-Halsell included a statement that such claimants intended to preserve their PACA trust benefits in accordance with Section 499e(c)(4) of PACA. Each of the invoices also included a provision that required the purchaser, Hale-Halsell, to pay attorneys' fees, costs and interest incurred by the sellers in collecting overdue payments.

The invoices issued by Sun Pacific to Hale-Halsell also included a statement that Sun Pacific intended to preserve its PACA trust benefits in accordance with Section 499e(c)(4) and a provision that required the purchaser to pay all reasonable attorneys' fees and all costs incident to collection efforts.

The invoices issued by Golman, Liberty and Produce Brokers that remain unpaid provided that payment is due within 30, 21 and 15 days, respectively, after Hale-Halsell received the commodities. None of these claimants, however, reduced their agreements regarding the payment terms to writing prior to entering into their respective transactions.

**IV.    Stipulations**

F&M, Hale-Halsell and the Bolthouse Group stipulated that if the Court concludes that Golman, Liberty, and Produce Brokers properly preserved their PACA trust rights, then the principal amounts of such parties' claims are $23,835.85, $45,165.85, and $76,281.60, respectively. See Stipulation at 3 (Doc. 967).

4

EXHIBIT A

F&M, Hale-Halsell and the Bolthouse Group further stipulated that if the Court concludes that Dole, Golman, Grimmway, Liberty, and Sun Pacific are entitled to receive contractual attorneys' fees, costs and interest, then the Stipulated Maximum Claim Amount for such claimants are as follows: Dole's claim is $52,693.27, Golman's claim is $32,677.08, Grimmway's claim is $22,744.16, Liberty's claim is $62,061.16, and Sun Pacific's claim is $11,324.57. See Stipulation at 1-2 (Doc. 967).

## V. Conclusions of law

### A. Golman, Liberty, and Produce Brokers Preserved Their PACA Trust Claims

PACA was enacted by Congress to regulate the sale of perishable agricultural commodities and provide protection for sellers of such commodities. In 1984, Congress amended PACA to provide that the inventories of commodities, the products derived therefrom, and the proceeds of sale of such commodities and products are impressed with a trust in favor of the unpaid sellers of such commodities until the sellers have been paid in full. See 7 U.S.C. § 499e(c)(2). Thus, the sellers of commodities maintain a right to recover against the purchasers that is superior to all creditors, including secured creditors. See 7 U.S.C. § 499e(c)(1).

Under PACA, buyers are required to make "full payment promptly." 7 U.S.C. § 499b(4). Congress left the definition of prompt payment to the regulatory discretion of the Secretary of the United States Department of Agriculture. See 7 U.S.C. § 499e(c)(3). The PACA regulations provide in pertinent part that:

> (1) The times for . . . prompt payment are set out in § 46.2 . . . (aa). Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

5



EXHIBIT A

(2) The <u>maximum</u> time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is <u>30 days after</u> receipt and acceptance of the commodities as defined in § 46.2(dd) and paragraph (a)(1) of this section.

7 C.F.R. § 46.46(e)(emphasis added).  Section 46.2(aa) provides:

(aa)  Full payment promptly is the term used in the act in specifying the period of time for making payment without committing a violation of the act. "Full payment promptly," for the purpose of determining violation of the act, means:

\*   \*   \*

(5) Payment for produce purchased by a buyer, within <u>10 days</u> after the day on which the produce is accepted;

\*   \*   \*

(11) Parties who elect to use different times of payment than those set forth in paragraphs (aa)(1) through (10) of this section must reduce their agreement to writing before entering into the transaction and maintain a copy of the agreement in their records. If they have so agreed, then payment within the agreed upon time shall constitute "full payment promptly": Provided, That the party claiming the existence of such an agreement for time of payment shall have the burden of proving it.

7 C.F.R. § 46.2(aa)(emphasis added).  Thus, a buyer must pay the seller within ten days after the produce has been accepted, unless the parties enter into a written agreement for other payment terms (that do not exceed the thirty-day limit) prior to entering into the transaction.

In order to preserve the protection offered by the statutory trust, a seller must send the purchaser written notice of its intent to preserve trust benefits (the "trust notice") within thirty days after (i) the payment due date supplied by the Secretary of Agriculture; or (ii) the payment due date the parties have expressly agreed to in writing prior to the transaction.  See 7 U.S.C. §499e(c)(3). "When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction

6

EXHIBIT A

and the terms of payment shall be disclosed on invoices, accountings, and other documents relating

to the transaction." Id. Alternatively, the seller may preserve its trust benefits by including on each

invoice covering the commodities it seeks to protect, the information required by the last sentence

of 7 U.S.C.§ 499e(c)(3)[3] and the following statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4) (the "invoice notice").

It is undisputed that Produce Brokers timely provided the trust notice required by 7 U.S.C.

§ 499e(c)(3) to preserve its trust benefits for amounts due for five invoices. It is also undisputed that

Golman and Liberty gave adequate notice of their intentions to preserve trust benefits as required

by 7 U.S.C. § 499e(c)(4) by providing the invoice notice. However, F&M contends that Golman,

Liberty and Produce Brokers failed to preserve their trust claims because the invoices issued by such

claimants included payment terms that exceeded the ten-day statutory period established by the

Secretary of Agriculture, and such claimants failed to reduce the extended payment terms to writing

prior to entering into the transactions evidenced by the invoices. The Court is not persuaded by

F&M's argument. Absent a written agreement extending the payment terms, "payment for produce

purchased by a buyer [is due] within 10 days after the day on which the produce is accepted." 7

---

[3]The last sentence of Section 499e(c)(3) states, "When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction."

EXHIBIT A

C.F.R. § 46.2(aa)(5). Because Golman, Liberty and Produce Brokers failed to reduce their agreement to extend the payment due date to writing, the statutory ten-day payment due date is applicable; the inclusion of unenforceable due dates in their invoices is not fatal to the rights of such claimants under PACA.

A decision from the Third Circuit Court of Appeals supports the Court's conclusion. In Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197 (3rd Cir. 1998), the issue on appeal was "whether an agreement to extend the payment term beyond the time defined by the regulations as prompt must be in writing in order for the seller to qualify for the benefits of the PACA trust." Id. at 202. PACA provides that an unpaid seller "shall lose the benefits of such trust unless *such person has given written notice of intent to preserve the benefits of such trust.*" Id. at 203, *quoting* 7 U.S.C. § 499e(c)(3)(emphasis in original). Written notice of intent to preserve trust benefits under PACA must be given within "thirty calendar days (i) after the expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary; [or] (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction. . . ." Id. at 203, *quoting* 7 U.S.C. § 499e(c)(3)(footnote omitted). Although the statute also requires that a copy of the written agreement extending the payment term be maintained in the parties' records and disclosed on their invoices and other documents, the "plain and unambiguous language of [Section 499d(c)(3)] does not provide, however, that a written agreement is a precondition of being entitled to the statutory trust benefits." Id. The Third Circuit noted that a seller loses its right to PACA trust benefits: "if (1) it does not timely notify the buyer of its intent to preserve that right or (2) it agrees to a payment period beyond 30 days," and concluded that failure to reduce an oral agreement with respect to payment terms does

8

EXHIBIT A

not disqualify a party from PACA trust benefits. Id. at 204-05. The writing requirement included in Section 499e(c)(3) "relates to the enforceability of an agreement to extend a payment term, but does not disqualify an unpaid seller from receiving trust benefits." Id. at 204.

The Third Circuit joined the United States Court of Appeals for the Eight Circuit which also concluded that "failure to reduce to writing an agreement to extend the payment term does not disqualify that supplier as a PACA trust beneficiary." Id., citing Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 780 (8th Cir. 1991). See also Stowe Potato Sales, Inc. v. Terry's Inc., 224 B.R. 329, 332 (W.D. Va. 1998) (finding no provision in the statute or regulations that would invalidate notice due to lack of written agreement); In re Atlanta Egg & Produce, Inc., 321 B.R. 746 (N.D. Ga. 2005) (holding that in the absence of a written agreement to extend payment terms beyond the standard 10 days, the inclusion of payment terms other than 10 days, which did not exceed 30 days, had no legal relevance and the statutory notice of intent printed on each invoice was sufficient to preserve PACA trust benefits).

In considering a motion for a preliminary injunction, the District Court in Kansas concluded that the Tenth Circuit Court of Appeals would not attach fatal significance to payment due dates that exceeded the statutory date on invoices in the absence of a written agreement that violated PACA. See Valley Chip Sales, Inc. v. New Arts Tater Chip Co., L.L.C., 1996 WL 707028, at *5 (D. Kan. 1996).

F&M urges the Court to consider the reasoning of the Court of Appeals for the Second Circuit in American Banana v. Republic Nat'l Bank of New York, 362 F.3d 33, 46 (2nd Cir. 2004), that PACA should not be interpreted "to mean that buyers and sellers are free to enter into agreements which violate PACA's prompt payment requirements, so long as it is not reduced to

9

EXHIBIT A

writing." F&M Brief at 8. In American Banana, the sellers entered into a post-default agreement with the purchaser that extended the payment period well beyond the 30-day maximum allowed under PACA. Id. at 43, citing 7 C.F.R. § 46.46(e)(2). The holding in American Banana is quite narrow: "we hold that where, as here, a seller agrees –orally or in writing–to a payment period exceeding thirty days, it forfeits trust protection." 362 F.3d at 47. None of the payment due dates on the invoices issued by Golman, Liberty or Produce Brokers exceeded the maximum 30-day period permitted under PACA.

F&M also cites Bowlin & Son, Inc. v. San Joaquin Food Serv., Inc., 958 F.2d 938 (9th Cir. 1992) in support of its position. See F&M Brief at 6. In San Joaquin, the issue was whether a supplier forfeited its PACA trust benefits because the parties agreed to extended payment terms in writing prior to the transaction but the supplier failed to include the extended payment terms on its invoices. The Ninth Circuit Court of Appeals held that the supplier was not entitled to PACA trust benefits. The last sentence of Section 499e(c)(3) requires that when the parties have expressly agreed to a payment time period different from that established by the Secretary, "the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction." 7 U.S.C. § 499e(c)(3). San Joaquin is distinguishable because the parties in this case did not agree in writing to extend the payment terms prior to their transactions.

Golman, Liberty, and Produce Brokers preserved valid trust claims under PACA when each gave Hale-Halsell adequate notice of intent to preserve their PACA claims. Because the parties did not agree in writing prior to the transaction to extend the payment terms, the payment terms listed on their invoices had no legal effect, and the payment terms of ten days supplied by the Secretary of Agriculture were applicable.

10

EXHIBIT A

B.   **Dole, Golman, Grimmway and Liberty are Entitled to Recover Contractual Attorneys' Fees, Costs and Prejudgment Interest, and Sun Pacific is Entitled to Recover Attorneys' Fees and Costs**

The invoices issued by Dole, Golman, Grimmway and Liberty included a provision that required Hale-Halsell to pay attorneys' fees and interest in the event collection efforts were needed to recover amounts due.  The invoices issued by Sun Pacific required Hale-Halsell to pay attorneys' fees and all costs.  Although PACA provides that trust benefits exist until "full payment of the sums owing in connection with such transactions has been received by unpaid suppliers, sellers or agents. . .," 7 U.S.C. § 499e(c)(2) (emphasis added), F&M contends that such claimants are not entitled to recover their contractual attorneys' fees, costs or interest under PACA.

The Circuit Courts of Appeal for the Eleventh Circuit and the Ninth Circuit have concluded that the "in connection with" language "unambiguously encompasses not only the price of commodities but also additional related expenses [such as] attorney fees and interest that buyers and seller have bargained for in their contracts." Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 632 (11th Cir. 2004), *citing* Middle Mountain Land & Produce Inc. v. Sound Commodities Inc., 307 F.3d 1220, 1223 (9th Cir. 2002)(other citations omitted).  "[S]ellers and buyers remain free to negotiate and enforce contract terms and to enforce those terms within the context of the trust established by PACA." Country Best, 361 F.3d at 633; see also Weis-Buy Serv., Inc. v. Paglia, 307 F. Supp. 2d 682, 695 (W.D. Pa. 2004), *rev'd on other grounds*, 411 F.3d 415 (3rd Cir. 2005). This Court is inclined to believe that the Tenth Circuit Court of Appeals would agree with the decisions of the Ninth and Eleventh Circuits.[4]

---

[4]In Hereford Haven, Inc. v. Stevens, one of the cases cited by F&M, the court noted that "[a]ttorney's fees are properly granted . . . if an independent basis exists for the award." 1999 WL 155707, at fn. 9 (N.D. Tex. 1999), *citing* Alyeska Pipeline Service Co. v. Wilderness Society, 421

11

EXHIBIT A

The Oklahoma Uniform Commercial Code provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." 12A O.S. § 2-204(1). If after a contract is formed, additional terms are proposed by one of the parties, "[t]he additional terms are to be construed as proposals for addition to the contract." 12A O.S. § 2-207(2). If both parties to the contract are merchants, Section 2-207(2) provides that "the additional terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." Id.

It is undisputed that the members of the Bolthouse Group are merchants. Hale-Halsell has not argued that the additional terms in the invoices materially altered the agreement between the parties or that it objected to the terms within a reasonable time after receiving notice of the terms. "As between merchants, inclusion of terms in the seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of the contract." Top Banana, L.L.C. v. Dom's Wholesale & Retail Center, Inc., 2005 WL 1149774 at *3 (S.D.N.Y. 2005)(Report and Recommendation)(citations omitted); 12A O.S. § 2-207(2)(a) and (b); see also Movsovitz & Sons of Florida, Inc. v. Axel Gonzalez, Inc., 367 F. Supp. 2d. 207, 215 (D. P.R. 2005)("Attorney's fees included on invoices gives a PACA trust beneficiary a contractual right to such an award."); Cavendish Farms v. Fleming Companies, Inc. (In re Fleming), 316 B.R. 809, 816 (D. Del. 2004)(holding that to the extent that contracts between merchants required buyers to pay attorney

---

U.S. 240, 257-59 (1975). One of the exceptions to the "American rule" that a prevailing party is not entitled to attorney's fees is if an enforceable contract exists. See id.

EXHIBIT A

fees incurred by sellers in collecting overdue payments, the sellers could recover such fees from the PACA trust, and sellers could recover prejudgment interest on sums owing).

V.    **Conclusion**

Golman, Liberty, and Produce Brokers preserved valid PACA trust claims; Dole, Golman, Grimmway and Liberty are entitled to an award of attorneys' fees, costs and interest; and Sun Pacific is entitled to an award of attorneys' fees and costs. A judgment that the members of the Bolthouse Group have valid claims in the following amounts shall be entered contemporaneously herewith.

| | |
|---|---|
| Sun Pacific | $11,324.57 |
| Golman | $32,677.08 |
| Dole | $38,208.63[5] |
| Grimmway | $22,744.16 |
| Liberty | $62,061.16 |
| Produce Brokers | $76,281.60 |

Upon a request, the Court will schedule an evidentiary hearing to determine the validity of Dole's "Charges."

**SO ORDERED** this 4th day of August, 2005.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[5]This amount is the Stipulated Maximum Claim Amount of $52,693.27 less $14,484.64 in "Charges."

13

EXHIBIT A