# WINN DIXIE STORES INC (WIN)

5050 EDGEWOOD CT
JACKSONVILLE, FL 32224
904. 783.5000

# EX-4

**INDENTURE**
**S-3 Filed on 12/28/2000**
File Number 333-52874



LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154&nbsp
www.gsionline.com

[EXHIBIT 4.1]

---

WINN-DIXIE STORES, INC.,

Issuer

and

THE GUARANTORS NAMED HEREIN,

Guarantors

to

FIRST UNION NATIONAL BANK,

Trustee


------------------
INDENTURE
------------------


Dated as of December 26, 2000


Debt Securities

---

Reconciliation and tie between
Trust Indenture Act of 1939 (the "Trust Indenture Act")
and Indenture

| Trust Indenture Act Section | | Indenture Section |
|---|---|---|
| ss.310(a)(1) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 607 |
| (a)(2) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 607 |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 608 |
| ss.312(a) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 701 |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 702 |
| (c) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 702 |
| ss.313(a) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 703 |
| (b)(2) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 703 |
| (c) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 703 |
| (d) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 703 |
| ss.314(a) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 704 |
| (c)(1) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 102 |
| (c)(2) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 102 |
| (e) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 102 |
| (f) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 102 |
| ss.316(a) (last sentence) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 101 |
| (a)(1)(A) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 502, 512 |
| (a)(1)(B) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 513 |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 508 |
| ss.317(a)(1) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 503 |
| (a)(2) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 504 |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1003 |
| ss.318(a) | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 108 |

------------------------

Note:This reconciliation and tie shall not, for any purpose, be deemed to be
     part of the Indenture.

Table of Contents

Page

ARTICLE I

DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

Section 101.    Definitions....................................................1
Section 102.    Compliance Certificates and Opinions.........................12
Section 103.    Form of Documents Delivered to Trustee.......................12
Section 104.    Acts of Holders..............................................13
Section 105.    Notices, etc. to Trustee and Company.........................15
Section 106.    Notice to Holders of Securities; Waiver......................15
Section 107.    Language of Notices..........................................16
Section 108.    Conflict with Trust Indenture Act............................16
Section 109.    Effect of Headings and Table of Contents.....................16
Section 110.    Successors and Assigns.......................................16
Section 111.    Separability Clause..........................................17
Section 112.    Benefits of Indenture........................................17
Section 113.    Governing Law................................................17
Section 114.    Legal Holidays...............................................17
Section 115.    Counterparts.................................................17
Section 116.    Judgment Currency............................................18
Section 117.    Immunity to Holders of Stockholders, Directors, Officers
                and Agents of the Company....................................18
Section 118.    Rules of Construction........................................18

ARTICLE II

SECURITIES FORMS

Section 201.    Forms Generally..............................................19
Section 202.    Form of Trustee's Certificate of Authentication..............19
Section 203.    Securities in Global Form....................................20
Section 204.    Form of Subsidiary Guarantee.................................21

ARTICLE III

THE SECURITIES

Section 301.    Amount Unlimited; Issuable in Series.........................21
Section 302.    Currency; Denominations......................................26
Section 303.    Execution, Authentication, Delivery and Dating...............26
Section 304.    Temporary Securities.........................................27
Section 305.    Registration, Transfer and Exchange..........................28
Section 306.    Mutilated, Destroyed, Lost and Stolen Securities.............32

i

Section 307.    Payment of Interest and Certain Additional Amounts; Rights
                to Interest and Certain Additional Amounts Preserved........33
Section 308.    Persons Deemed Owners......................................35
Section 309.    Cancellation...............................................35
Section 310.    Computation of Interest....................................36

## ARTICLE IV

### SATISFACTION AND DISCHARGE OF INDENTURE

Section 401.    Satisfaction and Discharge.................................36
Section 402.    Defeasance and Covenant Defeasance..........................38
Section 403.    Application of Trust Money.................................42
Section 404.    Reinstatement..............................................42

## ARTICLE V

### REMEDIES

Section 501.    Events of Default..........................................42
Section 502.    Acceleration of Maturity; Rescission and Annulment..........44
Section 503.    Collection of Indebtedness and Suits for Enforcement
                by Trustee.................................................46
Section 504.    Trustee May File Proofs of Claim............................47
Section 505.    Trustee May Enforce Claims without Possession of
                Securities or Coupons......................................47
Section 506.    Application of Money Collected.............................48
Section 507.    Limitations on Suits.......................................48
Section 508.    Unconditional Right of Holders to Receive Principal and
                any Premium, Interest and Additional Amounts................49
Section 509.    Restoration of Rights and Remedies.........................49
Section 510.    Rights and Remedies Cumulative.............................49
Section 511.    Delay or Omission Not Waiver...............................49
Section 512.    Control by Holders of Securities...........................50
Section 513.    Waiver of Past Defaults....................................50
Section 514.    Waiver of Stay or Extension Laws...........................50
Section 515.    Undertaking for Costs......................................51

## ARTICLE VI

### THE TRUSTEE

Section 601.    Certain Rights of Trustee..................................51
Section 602.    Notice of Defaults.........................................52
Section 603.    Not Responsible for Recitals or Issuance of Securities......53
Section 604.    May Hold Securities........................................53
Section 605.    Money Held in Trust........................................53
Section 606.    Compensation and Reimbursement.............................53

ii

Section 607.    Corporate Trustee Required; Eligibility.....................54
Section 608.    Resignation and Removal; Appointment of Successor...........54
Section 609.    Acceptance of Appointment by Successor......................56
Section 610.    Merger, Conversion, Consolidation or Succession to Business.57
Section 611.    Appointment of Authenticating Agent.........................57

ARTICLE VII

HOLDERS LISTS AND REPORTS BY TRUSTEE AND COMPANY

Section 701.    Company to Furnish Trustee Names and Addresses of Holders...59
Section 702.    Preservation of Information; Communications to Holders......60
Section 703.    Reports by Trustee..........................................60
Section 704.    Reports by Company and Guarantors...........................60

ARTICLE VIII

CONSOLIDATION, MERGER AND SALES

Section 801.    Company May Consolidate, Etc., Only on Certain Terms........61
Section 802.    Successor Person Substituted for Company....................63

ARTICLE IX

SUPPLEMENTAL INDENTURES

Section 901.    Supplemental Indentures without Consent of Holders..........63
Section 902.    Supplemental Indentures with Consent of Holders.............64
Section 903.    Execution of Supplemental Indentures........................66
Section 904.    Effect of Supplemental Indentures...........................66
Section 905.    Reference in Securities to Supplemental Indentures..........66
Section 906.    Conformity with Trust Indenture Act.........................66
Section 907.    Notice of Supplemental Indenture ...........................66

ARTICLE X

COVENANTS

Section 1001.   Payment of Principal, Premium, Interest and Additional
                Amounts.....................................................66
Section 1002.   Maintenance of Office or Agency.............................67
Section 1003.   Money for Securities Payments to Be Held in Trust...........68
Section 1004.   Additional Amounts..........................................69
Section 1005.   Corporate Existence.........................................70
Section 1006.   Limitation on Liens.........................................70
Section 1007.   Limitation on Sale and Leaseback Transactions...............73
Section 1008.   Maintenance of Properties...................................74

iii

Section 1009.    Payment of Taxes and Other Claims..........................74
Section 1010.    Waiver of Certain Covenants................................75
Section 1011.    Company Statement as to Compliance.........................75
Section 1012.    Calculation of Original Issue Discount.....................75


ARTICLE XI
REDEMPTION OF SECURITIES

Section 1101.    Applicability of Article...................................75
Section 1102.    Election to Redeem; Notice to Trustee......................76
Section 1103.    Selection by Trustee of Securities to be Redeemed..........76
Section 1104.    Notice of Redemption.......................................76
Section 1105.    Deposit of Redemption Price................................78
Section 1106.    Securities Payable on Redemption Date......................78
Section 1107.    Securities Redeemed in Part................................79


ARTICLE XII
SINKING FUNDS

Section 1201.    Applicability of Article...................................79
Section 1202.    Satisfaction of Sinking Fund Payments with Securities......80
Section 1203.    Redemption of Securities for Sinking Fund..................80


ARTICLE XIII
REPAYMENT AT THE OPTION OF HOLDERS
Section 1301.    Applicability of Article...................................81


ARTICLE XIV
SECURITIES IN FOREIGN CURRENCIES

Section 1401.    Applicability of Article...................................81


ARTICLE XV
MEETINGS OF HOLDERS OF SECURITIES

Section 1501.    Purposes for Which Meetings May Be Called..................82
Section 1502.    Call, Notice and Place of Meetings.........................82
Section 1503.    Persons Entitled to Vote at Meetings.......................82
Section 1504.    Quorum; Action.............................................83
Section 1505.    Determination of Voting Rights; Conduct and Adjournment
                 of Meetings................................................83
Section 1506.    Counting Votes and Recording Action of Meetings............84

iv

ARTICLE XVI
SUBSIDIARY GUARANTEE

Section 1601.   Applicability of Article....................................85
Section 1602.   Subsidiary Guarantee......................................85
Section 1603.   Execution and Delivery of Subsidiary Guarantees.............88
Section 1604.   Release of Guarantors....................................88
Section 1605.   Additional Guarantors....................................88

v

INDENTURE, dated as of December 26, 2000 (the "Indenture"), among Winn-Dixie Stores, Inc., a corporation duly organized and existing under the laws of the State of Florida (hereinafter called the "Company"), having its principal executive office located at Jacksonville, Florida, each of the Guarantors (as hereinafter defined) and First Union National Bank, a national banking association, duly organized and existing under the laws of the United States of America (hereinafter called the "Trustee").

## RECITALS

The Company has duly authorized the execution and delivery of this Indenture to provide for the issuance from time to time of its senior unsecured debentures, notes or other evidences of indebtedness (hereinafter called the "Securities"), unlimited as to principal amount, to bear such rates of interest, to mature at such time or times, to be issued in one or more series and to have such other provisions as shall be fixed as hereinafter provided.

The Company has duly authorized the execution and delivery of this Indenture. All things necessary to make this Indenture a valid agreement of the Company, in accordance with its terms, have been done.

Each Guarantor has duly authorized the issuance of a guarantee of the Securities, and to provide therefore, each Guarantor has duly authorized the execution and delivery of this Indenture to provided for its guarantee of the Securities to the extent provided in or pursuant to this Indenture.

This Indenture is subject to the provisions of the Trust Indenture Act of 1939, as amended, and the rules and regulations of the Securities and Exchange Commission promulgated thereunder that are required to be part of this Indenture and, to the extent applicable, shall be governed by such provisions.

NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the Securities by the Holders (as herein defined) thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Securities or of any series thereof and any Coupons (as herein defined) as follows:

## ARTICLE I

### DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

Section 101.    Definitions.

Except as otherwise expressly provided in or pursuant to this Indenture or unless the context otherwise requires, for all purposes of this Indenture:

(1) the terms defined in this Article have the meanings assigned to them in this Article, and include the plural as well as the singular;

1

(2) all other terms used herein which are defined in the Trust Indenture Act either directly or by reference therein, have the meanings assigned to them therein;

(3) all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles and, except as otherwise herein expressly provided, the terms "generally accepted accounting principles" or "GAAP" with respect to any computation required or permitted hereunder shall mean such accounting principles as are generally accepted at the date of such computation;

(4) the words "herein", "hereof", "hereto" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision; and

(5) the word "or" is always used inclusively (for example, the phrase "A or B" means "A or B or both", not "either A or B but not both").

Certain terms used principally in certain Articles hereof are defined in those Articles.

"Act", when used with respect to any Holders, has the meaning specified in Section 104.

"Additional Amounts" means any additional amounts which are required hereby or by any Security, under circumstances specified herein or therein, to be paid by the Company in respect of certain taxes, assessments or other governmental charges imposed on Holders specified therein and which are owing to such Holders.

"Affiliate" means, with respect to any specified Person, any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control", when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Attributable Debt" in respect of a Sale and Leaseback Transaction means, as of the time of determination, the present value (discounted at the rate per annum equal to the rate of interest implicit in the lease involved in such Sale and Leaseback Transaction, as determined in good faith by the Board of Directors and set forth in a Board Resolution) of the obligation of the lessee thereunder for rental payments (excluding, however, any amounts required to be paid by such lessee, whether or not designated as rent or additional rent, on account of maintenance and repairs, insurance, taxes, assessments, water rates or similar charges or any amounts required to be paid by such lessee thereunder contingent upon the amount of sales or similar contingent amounts) during the remaining term of such lease (including any period for which such lease has been extended or may, at the option of the lessor, be extended). In the case of any lease which is terminable by the lessee upon the payment of a penalty, such rental payments shall also include the amount of such penalty, but no rental payments shall be considered as required to be paid under such lease subsequent to the first date upon which it may be so terminated.

"Authenticating Agent" means any Person authorized by the Trustee pursuant to Section 611 to act on behalf of the Trustee to authenticate Securities of one or more series.

"Authorized Newspaper" means a newspaper, in an official language of the place of publication or in the English language, customarily published on each day that is a Business Day in the place of publication, whether or not published on days that are Legal Holidays in the place of publication, and of general circulation in each place in connection with which the term is used or in the financial community of each such place. Where successive publications are required to be made in Authorized Newspapers, the successive publications may be made in the same or in different newspapers in the same city meeting the foregoing requirements and in each case on any day that is a Business Day in the place of publication.

"Bearer Security" means any Security in the form established pursuant to Section 201 which is payable to bearer.

"Board of Directors" means with respect to the Company, the board of directors of the Company and with respect to a Guarantor, the board of directors of such Guarantor or any committee of the respective board duly authorized to act generally or in any particular respect for the Company or such Guarantor, as the case may be, under the Indenture.

"Board Resolution" means a copy of one or more resolutions, certified by the Secretary or an Assistant Secretary of the Company or a Guarantor, as the case may be, to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, delivered to the Trustee.

"Business Day" means, with respect to the Securities of any series unless otherwise specified pursuant to Section 301 with respect to such Securities, any day other than a Saturday, Sunday or other day on which banking institutions in The City of New York are authorized or obligated by law, regulation or executive order to close; provided that such term shall mean, when used with respect to any payment of principal of or premium, if any, or interest, if any, on the Securities of any series to be made at any Place of Payment for such Securities, unless otherwise specified pursuant to Section 301 with respect to such Securities, any day other than a Saturday, Sunday or other day on which banking institutions in such Place of Payment are authorized or obligated by law, regulation or executive order to close.

"Commission" means the Securities and Exchange Commission, as from time to time constituted, or, if at any time after the execution of this Indenture such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties at such time.

"Common Stock" includes any stock of any class of the Company which has no preference in respect of dividends or of amounts payable in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Company and which is not subject to redemption by the Company.

"Company" means the Person named as the "Company" in the first paragraph of this instrument until a successor Person shall have become such pursuant to the applicable provisions of

3

this Indenture, and thereafter "Company" shall mean such successor Person, and any other obligor upon the Securities.

"Company Request" and "Company Order" mean, respectively, a written request or order, as the case may be, signed in the name of the Company by the Chairman of the Board of Directors, the President or a Vice President, and by the Treasurer, an Assistant Treasurer, the Secretary or an Assistant Secretary, of the Company, and delivered to the Trustee.

"Consolidated Net Tangible Assets" means, with respect to the Company and as of any date of determination, the Company's total assets and of the Company's consolidated Subsidiaries determined in accordance with GAAP as they appear on the Company's then most recently prepared consolidated balance sheet as of the end of a fiscal quarter, less (1) all liabilities shown on such consolidated balance sheet that are classified and accounted for as current liabilities or that otherwise would be considered current liabilities under GAAP and (2) all assets shown on such consolidated balance sheet that are classified and accounted for as intangible assets or that otherwise would be considered intangible assets under GAAP, including, without limitation, franchises, patents and patent applications, trademarks, brand names and goodwill.

"Conversion Event" means the cessation of use of (i) a Foreign Currency both by the government of the country or the confederation which issued such Foreign Currency and for the settlement of transactions by a central bank or other public institutions of or within the international banking community, or (ii) any currency unit or composite currency other than the ECU for the purposes for which it was established.

"Corporate Trust Office" means either (A) the designated corporate trust office of the Trustee at which at any particular time its corporate trust business for this Indenture shall be administered, which office at the date of original execution of this Indenture is located at 225 Water Street, Third Floor, Jacksonville, Florida 32202, Attention: Corporate Trust Department, or (B) for purposes of Sections 301(9) and 1002 (unless otherwise specified pursuant to Section 301), the corporate trust office of the Trustee in the Borough of Manhattan, The City of New York at which at any particular time its corporate trust business shall be administered in The City of New York, which office at the date of original execution of this Indenture is located at 40 Broad Street, Suite 550, New York, New York, 10004.

"Corporation" includes corporations and limited liability companies and, except for purposes of Article Eight, associations, companies and business trusts.

"Coupon" means any interest coupon appertaining to a Bearer Security.

"Currency", with respect to any payment, deposit or other transfer in respect of the principal of or any premium or interest on or any Additional Amounts with respect to any Security, means Dollars or the Foreign Currency, as the case may be, in which such payment, deposit or other transfer is required to be made by or pursuant to the terms hereof or such Security and, with respect to any other payment, deposit or transfer pursuant to or contemplated by the terms hereof or such Security, means Dollars.

4

"CUSIP number" means the alphanumeric designation assigned to a Security by Standard & Poor's Corporation, CUSIP Service Bureau.

"Debt" means indebtedness of the Company or any of its Subsidiaries for borrowed money or evidenced by bonds, notes, debentures or other similar instruments issued by the Company or by any of its Subsidiaries.

"Defaulted Interest" has the meaning specified in Section 307.

"Depository" means, with respect to any Security issuable or issued in the form of one or more global Securities, the Person designated as depository by the Company in or pursuant to this Indenture, and, unless otherwise provided with respect to any Security, any successor to such Person. If at any time there is more than one such Person, "Depository" shall mean, with respect to any Securities, the depository which has been appointed with respect to such Securities.

"Dollars" or "$" means a dollar or other equivalent unit of legal tender for payment of public or private debts in the United States of America.

"Event of Default" has the meaning specified in Section 501.

"Excluded Debt" has the meaning specified in Section 1006.

"Excluded Sale or Leaseback" has the meaning specified in Section 1007.

"Foreign Currency" means any currency, currency unit or composite currency, including, without limitation, the Euro, issued by the government of one or more countries other than the United States of America or by any recognized confederation or association of such government.

"Fraudulent Transfer Laws" has the meaning specified in Section 1602.

"Funded Debt" means, as of any date of determination, any Debt of the Company or any of its Subsidiaries which, under GAAP, would appear as indebtedness on a consolidated balance sheet of the Company as of such date and which matures by its terms (or by its terms is extendible or renewable at the option of the Company or such Subsidiary, as the case may be, for a period ending) more than 12 months from such date.

"GAAP" means generally accepted accounting principles in the United States as in effect on the date of application thereof.

"Government Obligations" means securities which are (i) direct obligations of the United States of America or the other government or governments in the confederation which issued the Foreign Currency in which the principal of or any premium or interest on the relevant Security or any Additional Amounts in respect thereof shall be payable, in each case where the payment or payments thereunder are supported by the full faith and credit of such government or governments or (ii) obligations of a Person controlled or supervised by and acting as an agency or instrumentality of the United States of America or such other government or governments, in each case where the

5

timely payment or payments thereunder are unconditionally guaranteed as a full faith and credit obligation by the United States of America or such other government or governments, and which, in the case of (i) or (ii), are not callable or redeemable at the option of the issuer or issuers thereof, and shall also include a depository receipt issued by a bank or trust company as custodian with respect to any such Government Obligation or a specific payment of interest on or principal of or other amount with respect to any such Government Obligation held by such custodian for the account of the holder of a depository receipt, provided that (except as required by law) such custodian is not authorized to make any deduction from the amount payable to the holder of such depository receipt from any amount received by the custodian in respect of the Government Obligation or the specific payment of interest on or principal of or other amount with respect to the Government Obligation evidenced by such depository receipt.

        "Guaranteed Obligations" has the meaning specified in Section 1602.

        "Guarantors" means (i) the subsidiaries listed in Schedule I hereto; (ii) any successor of the foregoing; and (iii) each other subsidiary of the Company that becomes a Guarantor in accordance with Section 1605 hereof; in each case (i), (ii), and (iii) until such Guarantor ceases to be such in accordance with Section 1604 hereof.

        "Holder", in the case of any Registered Security, means the Person in whose name such Security is registered in the Security Register and, in the case of any Bearer Security, means the bearer thereof and, in the case of any Coupon, means the bearer thereof.

        "Indenture" means this instrument as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof and, with respect to any Security, by the terms and provisions of such Security and any Coupon appertaining thereto established pursuant to Section 301 (as such terms and provisions may be amended pursuant to the applicable provisions hereof).

        "Independent Public Accountants" means accountants or a firm of accountants that, with respect to the Company and any other obligor under the Securities or the Coupons, are independent public accountants within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated by the Commission thereunder, who may be the independent public accountants regularly retained by the Company or who may be other independent public accountants. Such accountants or firm shall be entitled to rely upon any Opinion of Counsel as to the interpretation of any legal matters relating to this Indenture or certificates required to be provided hereunder.

        "Indexed Security" means a Security the terms of which provide that the principal amount thereof payable at Stated Maturity, and premium, if any, interest, if any, or Additional Amounts thereon may be determined with reference to an index, formula or other method or methods.

        "Interest", with respect to any Original Issue Discount Security which by its terms bears interest only after Maturity, means interest payable after Maturity and, when used with respect to a Security which provides for the payment of Additional Amounts pursuant to Section 1004, include such Additional Amounts.

"Interest Payment Date", with respect to any Security, means the Stated Maturity of an installment of interest on such Security.

"Judgment Currency" has the meaning specified in Section 116.

"Legal Holidays" means, with respect to any Place of Payment or other location, a Saturday, Sunday or other day on which banking institutions in such Place of Payment or other location are authorized or obligated by law, regulation or executive order to close.

"Lien" means any mortgage, pledge, lien, charge, security interest, conditional sale or other title retention agreement or other encumbrance of any nature whatsoever.

"Maturity", with respect to any Security, means the date on which the principal of such Security or an installment of principal becomes due and payable as provided in or pursuant to this Indenture, whether at the Stated Maturity or by declaration of acceleration, notice of redemption or repurchase, notice of option to elect repayment or otherwise, and includes a Redemption Date for such Security.

"New York Banking Day" has the meaning specified in Section 116.

"Office" or "Agency", with respect to any Securities, means an office or agency of the Company maintained or designated in a Place of Payment for such Securities pursuant to Section 1002 or any other office or agency of the Company maintained or designated for such Securities pursuant to Section 1002 or, to the extent designated or required by Section 1002 in lieu of such office or agency, the Corporate Trust Office of the Trustee.

"Officers' Certificate" means a certificate signed by the Chairman of the Board of Directors, the President or a Vice President, and by the Treasurer, an Assistant Treasurer, the Secretary or an Assistant Secretary, of the Company or a Guarantor, as the case may be, that complies with the requirements of Section 314(e) of the Trust Indenture Act and is delivered to the Trustee.

"Opinion of Counsel" means, as to the Company or a Guarantor, a written opinion of counsel, who may be an employee of or counsel for the Company or such Guarantor, as the case may be, or other counsel who shall be reasonably acceptable to the Trustee, that, if required by the Trust Indenture Act, complies with the requirements of Section 314(e) of the Trust Indenture Act.

"Original Issue Discount Security" means a Security issued pursuant to this Indenture which provides for declaration of an amount less than the principal face amount thereof to be due and payable upon acceleration pursuant to Section 502.

"Outstanding", when used with respect to any Securities, means, as of the date of determination, all such Securities theretofore authenticated and delivered under this Indenture, except:

    (a)  any such Security theretofore cancelled by the Trustee or the Security Registrar or delivered to the Trustee or the Security Registrar for cancellation;

7

(b)    any such Security for whose  payment at the Maturity  thereof money in
the necessary  amount has been theretofore  deposited  pursuant hereto
(other than  pursuant  to Section  402) with the Trustee or any Paying
Agent (other than the Company) in trust or set aside and segregated in
trust by the  Company  (if the  Company  shall  act as its own  Paying
Agent) for the Holders of such Securities and any Coupons appertaining
thereto,  provided that, if such Securities are to be redeemed,  notice
of such  redemption  has been duly given pursuant to this Indenture or
provision therefor satisfactory to the Trustee has been made;

(c)    any such Security with  respect to which the  Company has  effected
defeasance or covenant  defeasance  pursuant to Section 402, except to
the extent provided in Section 402;

(d)    any such Security which has been paid  pursuant to Section 306 or in
exchange  for or  in  lieu  of  which  other  Securities  have  been
authenticated and delivered  pursuant to this Indenture,  unless there
shall have been presented to the Trustee proof satisfactory to it that
such  Security  is held by a bona fide  purchaser  in whose hands such
Security is a valid obligation of the Company; and

(e)    any such  Security converted  or exchanged  as  contemplated  by this
Indenture into Common Stock or other securities,  if the terms of such
Security  provide for such conversion or exchange  pursuant to Section
301;

provided,  however,  that in  determining  whether the Holders of the  requisite
principal  amount of  Outstanding  Securities  have given any  request,  demand,
authorization,  direction, notice, consent or waiver hereunder or are present at
a meeting of Holders of Securities for quorum purposes, (i) the principal amount
of an  Original  Issue  Discount  Security  that may be counted  in making  such
determination and that shall be deemed to be Outstanding for such purposes shall
be equal to the amount of the  principal  thereof that  pursuant to the terms of
such  Original  Issue  Discount  Security  would be declared  (or shall have been
declared to be) due and  payable  upon a  declaration  of  acceleration  thereof
pursuant  to Section  502 at the  time of such  determination,  and  (ii)  the
principal  amount of any  Indexed  Security  that may be counted  in making  such
determination  and that shall be deemed  outstanding  for such purpose  shall be
equal  to the  principal  face  amount  of such  Indexed  Security  at  original
issuance,  unless otherwise provided in or pursuant to this Indenture, and (iii)
the principal  amount of a Security  denominated in a Foreign  Currency shall be
the Dollar  equivalent,  determined  on the date of  original  issuance  of such
Security, of the principal amount (or, in the case of an Original Issue Discount
Security,  the Dollar  equivalent  on the date of  original  issuance  of such
Security of the amount  determined  as provided in (i) above) of such  Security,
and (iv)  Securities  owned by the Company,  any  Guarantor or any other obligor
upon the  Securities or any Affiliate of the Company or such other obligor shall
be  disregarded  and deemed not to be  Outstanding,  except that, in determining
whether the  Trustee  shall be  protected  in making any such  determination  or
relying upon any such request, demand, authorization, direction, notice, consent
or waiver,  only Securities which a Responsible  Officer of the Trustee knows to
be so owned shall be so  disregarded.  Securities so owned which shall have been
pledged in good faith may be regarded as Outstanding if the pledgee  establishes
to the  satisfaction  of the  Trustee  (A) the  pledgee's right  so to act with
respect

8

to such Securities and (B) that the pledgee is not the Company, a Guarantor or any other obligor upon the Securities or any Coupons appertaining thereto or an Affiliate of the Company, a Guarantor or such other obligor.

"Paying Agent" means any Person authorized by the Company to pay the principal of, or any premium or interest on, or any Additional Amounts with respect to, any Security or any Coupon on behalf of the Company.

"Person" and "person" mean any individual, corporation, business trust, partnership, joint venture, joint-stock company, limited liability company, association, company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"Place of Payment", with respect to any Security, means the place or places where the principal of, or any premium or interest on, or any Additional Amounts with respect to such Security are payable as provided in or pursuant to this Indenture or such Security.

"Predecessor Security" of any particular Security means every previous Security evidencing all or a portion of the same indebtedness as that evidenced by such particular Security; and, for the purposes of this definition, any Security authenticated and delivered under Section 306 in exchange for or in lieu of a lost, destroyed, mutilated or stolen Security or any Security to which a mutilated, destroyed, lost or stolen Coupon appertains shall be deemed to evidence the same indebtedness as the lost, destroyed, mutilated or stolen Security or the Security to which a mutilated, destroyed, lost or stolen Coupon appertains.

"Principal Property" means any store, supermarket, shopping center, service center or manufacturing, processing, distribution, research, research and development, warehousing or administration facility (in each case including, without limitation, land, leasehold interests, improvements, and fixtures) and any equipment (other than trucks and truck trailers) owned by the Company or any Subsidiary (including any of the foregoing acquired after the date of the indenture) and located within the United States of America, other than any of the foregoing which the Company's Board of Directors by Board Resolution and in good faith declares, together with all other stores, supermarkets, shopping centers, service centers and manufacturing, processing, distribution, research, research and development, warehousing and administration facilities (in each case including, without limitation, land, leasehold interests, improvements and fixtures) and equipment (other than trucks and truck trailers) previously so determined, are not of material importance to the business conducted by the Company and the Company's Subsidiaries taken as an entirety.

"Redemption Date", with respect to any Security or portion thereof to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture or such Security.

"Redemption Price", with respect to any Security or portion thereof to be redeemed, means the price at which it is to be redeemed as determined by or pursuant to this Indenture or such Security.

"Registered Security" means any Security established pursuant to Section 201 which is registered in the Security Register.

9

"Regular Record Date" for the interest payable on any Registered Security on any Interest Payment Date therefor means the date, if any, specified in or pursuant to this Indenture or such Security as the "Regular Record Date".

"Required Currency" has the meaning specified in Section 116.

"Responsible Officer" means any officer of the Trustee in its Corporate Trust Office and also means, with respect to a particular corporate trust matter, any other officer or employee of the Trustee to whom such matter is referred because of his knowledge of and familiarity with the particular subject.

"Restricted Subsidiary" means any Subsidiary of The Company which (1) owns or leases a Principal Property (or portion thereof) and (2) (A) substantially all of the property of which is located, or substantially all of the business of which is carried on, within the United States of America or (B) which is incorporated or organized under the laws of the United States of America, any state thereof or the District of Columbia.

"Sale and Leaseback Transaction" means any direct or indirect arrangement, in one transaction or a series of related transactions, with any person providing for the leasing to the Company or a Subsidiary of any Principal Property (or portion thereof), whether owned at the date of the indenture or thereafter acquired, which has been or is to be sold or transferred by the Company or such Subsidiary to such person (or to any other person designated by such person) with the intention of taking back a lease of such Principal Property (or portion thereof).

"Secured Debt" means any Debt secured by a Lien on any Principal Property or by a Lien on any Debt or shares of capital stock of, or other ownership interests in, any Restricted Subsidiary, whether such Principal Property, Debt, shares of capital stock or ownership interests are owned or outstanding at the date of the indenture or thereafter acquired or issued, as the case may be.

"Security" or "Securities" means any note or notes, bond or bonds, debenture or debentures, or any other evidences of indebtedness, as the case may be, authenticated and delivered under this Indenture; provided, however, that, if at any time there is more than one Person acting as Trustee under this Indenture, "Securities", with respect to any such Person, shall mean Securities authenticated and delivered under this Indenture, exclusive, however, of Securities of any series as to which such Person is not Trustee.

"Security Register" and "Security Registrar" have the respective meanings specified in Section 305.

"Significant Subsidiary" means, with respect to any Person, any Subsidiary of such Person (i) the consolidated net revenues of which for the most recent period of four fiscal quarters of the Company for which quarterly and annual reports were required to be filed with the SEC under the Securities Exchange Act of 1934 were greater than $250,000,000 or (ii) the consolidated tangible assets of which as of the end of such period were greater than $50,000,000; provided that, if at any time the aggregate amount of the consolidated net revenues or consolidated tangible assets of all Subsidiaries that are not Significant Subsidiaries of the Company exceeds 10% of the Company's

10

revenues for any such period or 10% of the Company's consolidated tangible assets as of the end of any such period, the Company (or, in the event the Company has failed to do so within 10 days, the Trustee) shall designate sufficient Subsidiaries as "Significant Subsidiaries" of the Company to eliminate such excess, and such designated Subsidiaries shall for all purposes of this Indenture constitute Significant Subsidiaries of the Company. For purposes of making the determinations required in this definition, revenues and assets of any foreign Subsidiaries shall be converted into dollars at the rates used in preparing the consolidated balance sheet of the Company included in the applicable reports.

"Special Record Date" for the payment of any Defaulted Interest on any Registered Security means a date fixed by the Trustee pursuant to Section 307.

"Stated Maturity", with respect to any Security or any installment of principal thereof or interest thereon or any Additional Amounts with respect thereto, means the date established by or pursuant to this Indenture or such Security as the fixed date on which the principal of such Security or such installment of principal or interest is, or such Additional Amounts are, due and payable.

"Subsidiary" means (1) any corporation at least a majority of the total voting power of whose outstanding Voting Stock is owned, directly or indirectly, at the date of determination by the Company and/or one or more other Subsidiaries, and (2) any other person in which the Company and/or one or more other Subsidiaries, directly or indirectly, at the date of determination, (x) own at least a majority of the outstanding ownership interests or (y) have the power to elect or direct the election of at least a majority of the directors, trustees or members of any other governing body of such person.

"Subsidiary Guarantee" means the guarantee by any Guarantor of the Company's obligations under this Indenture or any other obligor under this Indenture or under the Securities, including any other Guarantor to pay principal of, premium, if any, and interest when due and payable, and all other amounts due or to become due under or in connection with this Indenture, the Securities of any series and the performance of all other obligations to the Trustee and the Holders under this Indenture and the Securities of any series, according to the respective terms hereof and thereof.

"Trust Indenture Act" means the Trust Indenture Act of 1939, as amended, and any reference herein to the Trust Indenture Act or a particular provision thereof shall mean such Act or provision, as the case may be, as amended or replaced from time to time or as supplemented from time to time by rules or regulations adopted by the Commission under or in furtherance of the purposes of such Act or provision, as the case may be.

"Trustee" means the Person named as the "Trustee" in the first paragraph of this instrument until a successor Trustee shall have become such with respect to one or more series of Securities pursuant to the applicable provisions of this Indenture, and thereafter "Trustee" shall mean each Person who is then a Trustee hereunder; provided, however, that if at any time there is more than one such Person, "Trustee" shall mean each such Person and as used with respect to the Securities of any series shall mean the Trustee with respect to the Securities of such series.

11

"United States" means the United States of America (including the states thereof and the District of Columbia), its territories, its possessions and other areas subject to its jurisdiction; and the term "United States of America" means the United States of America.

"United States Alien", except as otherwise provided in or pursuant to this Indenture or any Security, means any Person who, for United States Federal income tax purposes, is a foreign corporation, a non-resident alien individual, a non-resident alien fiduciary of a foreign estate or trust, or a foreign partnership one or more of the members of which is, for United States Federal income tax purposes, a foreign corporation, a non-resident alien individual or a non-resident alien fiduciary of a foreign estate or trust.

"Vice President", when used with respect to the Company or the Trustee, means any vice president, whether or not designated by a number or a word or words added before or after the title "Vice President".

"Voting Stock" means, with respect to any corporation, securities of any class or series of such corporation, the holders of which are ordinarily, in the absence of contingencies, entitled to vote for the election of directors of the corporation.

Section 102.    Compliance Certificates and Opinions.

Except as otherwise expressly provided in or pursuant to this Indenture, upon any application or request by the Company or Guarantor to the Trustee to take any action under any provision of this Indenture, the Company and any Guarantor shall furnish to the Trustee an Officers' Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that, in the opinion of such counsel, all such conditions precedent, if any, have been complied with, except that in the case of any such application or request as to which the furnishing of such documents or any of them is specifically required by any provision of this Indenture relating to such particular application or request, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(1) a statement that each individual signing such a certificate or opinion has read such condition or covenant and the definitions herein relating thereto;

(2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(3) a statement that, in the opinion of each such individual, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such condition or covenant has been complied with; and

(4) a statement as to whether, in the opinion of each such individual, such condition or covenant has been complied with.

Section 103.     Form of Documents Delivered to Trustee.

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an officer of the Company or any Guarantor may be based, insofar as it relates to legal matters, upon an Opinion of Counsel, unless such officer knows, or in the exercise of reasonable care should know, that the opinion with respect to the matters upon which his certificate or opinion is based are erroneous. Any such Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Company or any Guarantor stating that the information with respect to such factual matters is in the possession of the Company or any Guarantor unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture or any Security, they may, but need not, be consolidated and form one instrument.

Section 104.     Acts of Holders.

(1) Any request, demand, authorization, direction, notice, consent, waiver or other action provided by or pursuant to this Indenture to be made, given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by an agent duly appointed in writing. If, but only if, Securities of a series are issuable as Bearer Securities, any request, demand, authorization, direction, notice, consent, waiver or other action provided in or pursuant to this Indenture to be made, given or taken by Holders of Securities of such series may, alternatively, be embodied in and evidenced by the record of Holders of Securities of such series voting in favor thereof, either in person or by proxies duly appointed in writing, at any meeting of Holders of Securities of such series duly called and held in accordance with the provisions of Article Fifteen, or a combination of such instruments and any such record. Except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments or record or both are delivered to the Trustee and, where it is hereby expressly required, to the Company. Such instrument or instruments and any such record (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Holders signing such instrument or instruments or so voting at any such meeting. Proof of execution of any such instrument or of a writing appointing any such agent, or of the holding by any Person of a Security, shall be sufficient for any purpose of this Indenture and (subject to Section 315 of the Trust Indenture Act) conclusive in favor of the Trustee and the Company and any agent of the Trustee or the Company, if made in the manner provided in this Section. The record of any meeting of Holders of Securities shall be proved in the manner provided in Section 1506.

Without limiting the generality of this Section 104, unless otherwise provided in or pursuant to this Indenture, a Holder, including a Depository that is a Holder of a global Security, may make, give or take, by a proxy, or proxies, duly appointed in writing, any request, demand, authorization, direction, notice, consent, waiver or other Act provided in or pursuant to this Indenture or the Securities to be made, given or taken by Holders, and a Depository that is a Holder of a global Security may provide its proxy or proxies to the beneficial owners of interests in any such global Security through such Depository's standing instructions and customary practices.

The Company shall fix a record date for the purpose of determining the Persons who are beneficial owners of interest in any permanent global Security held by a Depository entitled under the procedures of such Depository to make, give or take, by a proxy or proxies duly appointed in writing, any request, demand, authorization, direction, notice, consent, waiver or other Act provided in or pursuant to this Indenture to be made, given or taken by Holders. If such a record date is fixed, the Holders on such record date or their duly appointed proxy or proxies, and only such Persons, shall be entitled to make, give or take such request, demand, authorization, direction, notice, consent, waiver or other Act, whether or not such Holders remain Holders after such record date. No such request, demand, authorization, direction, notice, consent, waiver or other Act shall be valid or effective if made, given or taken more than 90 days after such record date.

(2) The fact and date of the execution by any Person of any such instrument or writing may be proved in any reasonable manner which the Trustee deems sufficient and in accordance with such reasonable rules as the Trustee may determine; and the Trustee may in any instance require further proof with respect to any of the matters referred to in this Section.

(3) The ownership, principal amount and serial numbers of Registered Securities held by any Person, and the date of the commencement and the date of the termination of holding the same, shall be proved by the Security Register.

(4) The ownership, principal amount and serial numbers of Bearer Securities held by any Person, and the date of the commencement and the date of the termination of holding the same, may be proved by the production of such Bearer Securities or by a certificate executed, as depositary, by any trust company, bank, banker or other depositary reasonably acceptable to the Company, wherever situated, if such certificate shall be deemed by the Company and the Trustee to be satisfactory, showing that at the date therein mentioned such Person had on deposit with such depositary, or exhibited to it, the Bearer Securities therein described; or such facts may be proved by the certificate or affidavit of the Person holding such Bearer Securities, if such certificate or affidavit is deemed by the Company and the Trustee to be satisfactory. The Trustee and the Company may assume that such ownership of any Bearer Security continues until (1) another certificate or affidavit bearing a later date issued in respect of the same Bearer Security is produced, or (2) such Bearer Security is produced to the Trustee by some other Person, or (3) such Bearer Security is surrendered in exchange for a Registered Security, or (4) such Bearer Security is no longer Outstanding. The ownership, principal amount and serial numbers of Bearer Securities held by the Person so executing such instrument or writing and the date of the commencement and the date of the termination of holding the same may also be proved in any other manner which the Company and the Trustee deem sufficient.

14

(5) If the Company shall solicit from the Holders of any Registered Securities any request, demand, authorization, direction, notice, consent, waiver or other Act, the Company may at its option (but is not obligated to), by Board Resolution, fix in advance a record date for the determination of Holders of Registered Securities entitled to give such request, demand, authorization, direction, notice, consent, waiver or other Act. If such a record date is fixed, such request, demand, authorization, direction, notice, consent, waiver or other Act may be given before or after such record date, but only the Holders of Registered Securities of record at the close of business on such record date shall be deemed to be Holders for the purpose of determining whether Holders of the requisite proportion of Outstanding Securities have authorized or agreed or consented to such request, demand, authorization, direction, notice, consent, waiver or other Act, and for that purpose the Outstanding Securities shall be computed as of such record date; provided that no such authorization, agreement or consent by the Holders of Registered Securities shall be deemed effective unless it shall become effective pursuant to the provisions of this Indenture not later than six months after the record date.

(6) Any request, demand, authorization, direction, notice, consent, waiver or other Act by the Holder of any Security shall bind every future Holder of the same Security and the Holder of every Security issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done or suffered to be done by the Trustee, any Security Registrar, any Paying Agent or the Company in reliance thereon, whether or not notation of such Act is made upon such Security.

Section 105.    Notices, etc. to Trustee and Company.

Any request, demand, authorization, direction, notice, consent, waiver or other Act of Holders or other document provided or permitted by this Indenture to be made upon, given or furnished to, or filed with,

(1) the Trustee by any Holder, the Company or any Guarantor shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Trustee at its Corporate Trust Office, or

(2) the Company or any Guarantor by the Trustee or any Holder shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, to the Company addressed to the attention of its Treasurer at the address of its principal office at Winn-Dixie Stores, Inc., 5050 Edgewood Court, Jacksonville, Florida 32254 or at any other address previously furnished in writing to the Trustee by the Company or such Guarantor.

Section 106.    Notice to Holders of Securities; Waiver.

Except as otherwise expressly provided in or pursuant to this Indenture, where this Indenture provides for notice to Holders of Securities of any event,

(1) such notice shall be sufficiently given to Holders of Registered Securities if in writing and mailed, first-class postage prepaid, to each Holder of a Registered Security

15

affected by such event, at his address as it appears in the Security Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice; and

(2) such notice shall be sufficiently given to Holders of Bearer Securities, if any, if published in an Authorized Newspaper in The City of New York and, if such Securities are then listed on any stock exchange outside the United States, in an Authorized Newspaper in such city as the Company shall advise the Trustee that such stock exchange so requires, on a Business Day at least twice, the first such publication to be not earlier than the earliest date and the second such publication not later than the latest date prescribed for the giving of such notice.

In any case where notice to Holders of Registered Securities is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder of a Registered Security shall affect the sufficiency of such notice with respect to other Holders of Registered Securities or the sufficiency of any notice to Holders of Bearer Securities given as provided herein. Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given or provided. In the case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice by mail, then such notification as shall be made with the approval of the Trustee shall constitute a sufficient notification for every purpose hereunder.

In case by reason of the suspension of publication of any Authorized Newspaper or Authorized Newspapers or by reason of any other cause it shall be impracticable to publish any notice to Holders of Bearer Securities as provided above, then such notification to Holders of Bearer Securities as shall be given with the approval of the Trustee shall constitute sufficient notice to such Holders for every purpose hereunder. Neither failure to give notice by publication to Holders of Bearer Securities as provided above, nor any defect in any notice so published, shall affect the sufficiency of any notice mailed to Holders of Registered Securities as provided above.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Holders of Securities shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

Section 107.        Language of Notices.

Any request, demand, authorization, direction, notice, consent, election or waiver required or permitted under this Indenture shall be in the English language, except that, if the Company so elects, any published notice may be in an official language of the country of publication, in which case the Company shall provide the Trustee with the text of such notice in such language.

16

Section 108.    Conflict with Trust Indenture Act.

If any provision hereof limits,  qualifies or conflicts with any duties under any  required  provision of the Trust  Indenture Act  imposed  hereon by Section 318(c) thereof, such required provision shall control.

Section 109.    Effect of Headings and Table of Contents.

The Article and Section  headings  herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

Section 110.    Successors and Assigns.

All covenants and  agreements in this  Indenture by the Company and any Guarantor shall bind its successors and assigns, whether so expressed or not.

Section 111.    Separability Clause.

In case any provision in this Indenture,  any Security,  any Subsidiary Guarantee or any  Coupon shall be  invalid,  illegal  or  unenforceable,  the validity,  legality and enforceability of the remaining  provisions shall not in any way be affected or impaired thereby.

Section 112.    Benefits of Indenture.

Nothing in this Indenture,  any Security,  any Subsidiary  Guarantee or any Coupon, express or implied, shall give to any Person, other than the parties hereto, any Security Registrar,  any Paying Agent and their successors hereunder and the Holders of Securities or Coupons,  any benefit or any legal or equitable right, remedy or claim under this Indenture.

Section 113.    Governing Law.

This  Indenture,  the Securities,  the  Subsidiary  Guarantees and any Coupons shall be governed by and  construed in  accordance  with the laws of the State of New York applicable to agreements made or instruments entered into and, in each case, performed in said State.

Section 114.    Legal Holidays.

Unless  otherwise  specified  in or pursuant to this  Indenture  or any Securities,  in any case where any Interest  Payment Date,  Stated  Maturity or Maturity of any  Security,  or the last date on which a Holder has the right to convert or exchange Securities of a series that are convertible or exchangeable, shall  be a day  that  is not a  Business  Day at any  Place  of  Payment,  then (notwithstanding  any other  provision  of this  Indenture,  any Security or any Coupon other than a provision in any Security or Coupon that specifically states that such provision shall apply in lieu hereof) payment need not be made at such Place of Payment on such date,  and such  Securities  need not be  converted  or exchanged on such date but such payment may be made, and such  Securities may be converted or  exchanged,  on the next  succeeding  day that is a Business Day at such Place of

17

Payment with the same force and effect as if made on the Interest Payment Date or at the Stated Maturity or Maturity or on such last day for conversion or exchange, and no interest shall accrue on the amount payable on such date or at such time for the period from and after such Interest Payment Date, Stated Maturity, or Maturity or last day for conversion or exchange, as the case may be, to such next succeeding Business Day.

Section 115.    Counterparts.

This Indenture may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

Section 116.    Judgment Currency.

The Company agrees, to the fullest extent that it may effectively do so under applicable law, that (a) if for the purpose of obtaining judgment in any court it is necessary to convert the sum due in respect of the principal of, or premium or interest, if any, or Additional Amounts on the Securities of any series (the "Required Currency") into a Currency in which a judgment will be rendered (the "Judgment Currency"), the rate of exchange used shall be the rate at which in accordance with normal banking procedures the Trustee could purchase in The City of New York the Required Currency with the Judgment Currency on the New York Banking Day preceding that on which a final unappealable judgment is given and (b) its obligations under this Indenture to make payments in the Required Currency (i) shall not be discharged or satisfied by any tender, or any recovery pursuant to any judgment (whether or not entered in accordance with clause (a)), in any currency other than the Required Currency, except to the extent that such tender or recovery shall result in the actual receipt, by the payee, of the full amount of the Required Currency expressed to be payable in respect of such payments, (ii) shall be enforceable as an alternative or additional cause of action for the purpose of recovering in the Required Currency the amount, if any, by which such actual receipt shall fall short of the full amount of the Required Currency so expressed to be payable and (iii) shall not be affected by judgment being obtained for any other sum due under this Indenture. For purposes of the foregoing, "New York Banking Day" means any day except a Saturday, Sunday or a legal holiday in The City of New York or a day on which banking institutions in The City of New York are authorized or obligated by law, regulation or executive order to be closed. The provisions of this Section 116 shall not be applicable with respect to any payment due on a Security which is payable in Dollars.

Section 117. Immunity of Stockholders, Directors, Officers and Agents of the Company.

No recourse under or upon any obligation, covenant or agreement contained in this Indenture, or in any Security, or because of any indebtedness evidenced thereby, shall be had against any past, present or future stockholder, employee, officer or director, as such, of the Company or of any predecessor or successor, either directly or through the Company or any predecessor or successor, under any rule of law, statute or constitutional provision or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being expressly waived and released by the acceptance of the Securities by the Holders and as part of the consideration for the issue of the Securities.

18

Section 118.        Rules of Construction.

Unless the context otherwise requires:

(1) a term has the meaning assigned to it;

(2) an accounting term not otherwise defined has the meaning assigned to it in accordance with GAAP;

(3) words in the singular include the plural, and words in the plural include the singular;

(4) provisions apply to successive events and transactions;

(5) the term "merger" includes a statutory share exchange and the term "merged" has a correlating meaning;

(6) the masculine gender includes the feminine and the neuter;

(7) references to agreements and other instruments include subsequent amendments thereto; and

(8) "herein," "hereof" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

ARTICLE II

SECURITIES FORMS

Section 201.        Forms Generally.

Each Registered Security, Bearer Security, Coupon and temporary or permanent global Security issued pursuant to this Indenture shall be in substantially the form established by or pursuant to a Board Resolution and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto, in each case, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by or pursuant to this Indenture or any indenture supplemental hereto and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may, consistently herewith, be determined by the officer of the Company executing such Security or Coupon as evidenced by the execution of such Security or Coupon.

Unless otherwise provided in or pursuant to this Indenture or any Securities, the Securities shall be issuable in registered form without Coupons.

19

Definitive Securities and definitive Coupons shall be printed, lithographed or engraved or produced by any combination of these methods on a steel engraved border or steel engraved borders or may be produced in any other manner, all as determined by the officer of the Company executing such Securities or Coupons, as evidenced by the execution of such Securities or Coupons.

Each Security, if applicable, shall have a Subsidiary Guarantee endorsed thereon in substantially the form set forth in this Article II.

Section 202.      Form of Trustee's Certificate of Authentication.

Subject to Section 611, the Trustee's certificate of authentication shall be in substantially the following form:

This is one of the Securities of the series designated therein referred to in the within- mentioned Indenture.

FIRST UNION  NATIONAL BANK, as Trustee

By:
Authorized Signatory

Section 203.      Securities in Global Form.

Unless otherwise provided in or pursuant to this Indenture or any Securities, the Securities shall not be issuable in global form. If Securities of a series shall be issuable in temporary or permanent global form, any such Security may provide that it or any number of such Securities shall represent the aggregate amount of all Outstanding Securities of such series (or such lesser amount as is permitted by the terms thereof) from time to time endorsed thereon and may also provide that the aggregate amount of Outstanding Securities represented thereby may from time to time be increased or reduced to reflect exchanges. Any endorsement of any Security in global form to reflect the amount, or any increase or decrease in the amount, or changes in the rights of Holders, of Outstanding Securities represented thereby shall be made in such manner and by such Person or Persons as shall be specified therein or in the Company Order to be delivered pursuant to Section 303 or 304 with respect thereto.  Subject to the provisions of Section 303 and, if applicable, Section 304, the Trustee shall deliver and redeliver any Security in permanent global form in the manner and upon instructions given by the Person or Persons specified therein or in the applicable Company Order. If a Company Order pursuant to Section 303 or 304 has been, or simultaneously is, delivered, any instructions by the Company with respect to a Security in global form shall be in writing but need not be accompanied by or contained in an Officers' Certificate and need not be accompanied by an Opinion of Counsel.

Notwithstanding the provisions of Section 307, unless otherwise specified in or pursuant to this Indenture or any Securities, payment of principal of, any premium and interest on, and any

20

Additional Amounts in respect of any Security in temporary or permanent global form shall be made to the Person or Persons specified therein.

Notwithstanding the provisions of Section 308 and except as provided in the preceding paragraph, the Company, the Trustee and any agent of the Company and the Trustee shall treat as the Holder of such principal amount of Outstanding Securities represented by a global Security (i) in the case of a global Security in registered form, the Holder of such global Security in registered form, or (ii) in the case of a global Security in bearer form, the Person or Persons specified pursuant to Section 301.

Section 204.    Form of Subsidiary Guarantee.

The form of Subsidiary Guarantee shall be set forth on the Securities substantially as follows:

SUBSIDIARY GUARANTEE

For value received, each of the Guarantors named (or deemed herein to be named) below hereby absolutely, fully and unconditionally and irrevocably guarantees, jointly and severally with each other Guarantor, to the Holder of this Security the payment of principal of, and premium, if any, and interest on this Security upon which these Subsidiary Guarantees are endorsed in the amounts and at the time when due and payable, whether by declaration thereof, or otherwise, and interest on the overdue principal and interest, if any, of this Security, if lawful, and the payment or performance of all other obligations of the Company under the Indenture or the Securities, to the Holder of this Security and the Trustee, all in accordance with and subject to the terms and limitations of this Security and the Indenture. This Subsidiary Guarantee will not become effective until the Trustee duly executes the certificate of authentication on this Security. This Subsidiary Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles thereof.

IN WITNESS WHEREOF, each of the Guarantors has caused this Subsidiary Guarantee to be duly executed.

[Insert Names of Guarantors]

By:
Title:

Attest:

21

ARTICLE III

THE SECURITIES

Section 301.        Amount Unlimited; Issuable in Series.

The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited. The Securities may be issued in one or more series.

With respect to any Securities to be authenticated and delivered hereunder, there shall be established in or pursuant to a Board Resolution and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto prior to the issuance of any Securities of a series,

(1) the title of such Securities and the series in which such Securities shall be included;

(2) if the Securities of the series will not have the benefit of the Subsidiary Guarantees of the Guarantors;

(3) any limit upon the aggregate principal amount of the Securities of such title or the Securities of such series which may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such series pursuant to Section 304, 305, 306, 905 or 1107, upon repayment in part of any Security of such series pursuant to Article Thirteen or upon surrender in part of any Security for conversion or exchange into Common Stock or other securities pursuant to its terms);

(4) if such Securities are to be issuable as Registered Securities, as Bearer Securities or alternatively as Bearer Securities and Registered Securities, and whether the Bearer Securities are to be issuable with Coupons, without Coupons or both, and any restrictions applicable to the offer, sale or delivery of the Bearer Securities and the terms, if any, upon which Bearer Securities may be exchanged for Registered Securities and vice versa;

(5) if any of such Securities are to be issuable in global form, when any of such Securities are to be issuable in global form and (i) whether such Securities are to be issued in temporary or permanent global form or both, (ii) whether beneficial owners of interests in any such global Security may exchange such interests for Securities of the same series and of like tenor and of any authorized form and denomination, and the circumstances under which any such exchanges may occur, if other than in the manner specified in Section 305, and (iii) the name of the Depository with respect to any global Security;

(6) if any of such Securities are to be issuable as Bearer Securities, the date as of which any such Bearer Security shall be dated (if other than the date of original issuance of the first of such Securities to be issued);

22

(7) if any of such Securities are to be issuable as Bearer Securities, whether interest in respect of any portion of a temporary Bearer Security in global form payable in respect of an Interest Payment Date therefor prior to the exchange, if any, of such temporary Bearer Security for definitive Securities shall be paid to any clearing organization with respect to the portion of such temporary Bearer Security held for its account and, in such event, the terms and conditions (including any certification requirements) upon which any such interest payment received by a clearing organization will be credited to the Persons entitled to interest payable on such Interest Payment Date;

(8) the date or dates, or the method or methods, if any, by which such date or dates shall be determined, on which the principal and premium, if any, of such Securities is payable;

(9) the rate or rates at which such Securities shall bear interest, if any, or the method or methods, if any, by which such rate or rates are to be determined, the date or dates, if any, from which such interest shall accrue or the method or methods, if any, by which such date or dates are to be determined, the Interest Payment Dates, if any, on which such interest shall be payable and the Regular Record Date, if any, for the interest payable on Registered Securities on any Interest Payment Date, whether and under what circumstances Additional Amounts on such Securities or any of them shall be payable, the notice, if any, to Holders regarding the determination of interest on a floating rate Security and the manner of giving such notice, and the basis upon which interest shall be calculated if other than that of a 360-day year of twelve 30-day months;

(10) if in addition to or other than the Borough of Manhattan, The City of New York, the place or places where the principal of, any premium and interest on or any Additional Amounts with respect to such Securities shall be payable, any of such Securities that are Registered Securities may be surrendered for registration of transfer or exchange, any of such Securities may be surrendered for conversion or exchange and notices or demands to or upon the Company in respect of such Securities and this Indenture may be served, the extent to which, or the manner in which, any interest payment or Additional Amounts on a global Security on an Interest Payment Date, will be paid and the manner in which any principal of or premium, if any, on any global Security will be paid;

(11) whether any of such Securities are to be redeemable at the option of the Company and, if so, the date or dates on which, the period or periods within which, the price or prices at which and the other terms and conditions upon which such Securities may be redeemed, in whole or in part, at the option of the Company;

(12) if the Company is obligated to redeem or purchase any of such Securities pursuant to any sinking fund or analogous provision or at the option of any Holder thereof and, if so, the date or dates on which, the period or periods within which, the price or prices at which and the other terms and conditions upon which such Securities shall be redeemed or purchased, in whole or in part, pursuant to such obligation, and any provisions for the remarketing of such Securities so redeemed or purchased;

23

(13) the denominations in which any of such Securities that are Registered Securities shall be issuable if other than denominations of $1,000 and any integral multiple thereof, and the denominations in which any of such Securities that are Bearer Securities shall be issuable if other than the denomination of $5,000;

(14) whether the Securities of the series will be convertible into shares of Common Stock and/or exchangeable for other securities, and if so, the terms and conditions upon which such Securities will be so convertible or exchangeable, and any deletions from or modifications or additions to this Indenture to permit or to facilitate the issuance of such convertible or exchangeable Securities or the administration thereof;

(15) if other than the principal amount thereof, the portion of the principal amount of any of such Securities that shall be payable upon declaration of acceleration of the Maturity thereof pursuant to Section 502 or the method by which such portion is to be determined;

(16) if other than Dollars, the Foreign Currency in which payment of the principal of, any premium or interest on or any Additional Amounts with respect to any of such Securities shall be payable;

(17) if the principal of, any premium or interest on or any Additional Amounts with respect to any of such Securities are to be payable, at the election of the Company or a Holder thereof or otherwise, in Dollars or in a Foreign Currency other than that in which such Securities are stated to be payable, the date or dates on which, the period or periods within which, and the other terms and conditions upon which, such election may be made, and the time and manner of determining the exchange rate between the Currency in which such Securities are stated to be payable and the Currency in which such Securities or any of them are to be paid pursuant to such election, and any deletions from or modifications of or additions to the terms of this Indenture to provide for or to facilitate the issuance of Securities denominated or payable, at the election of the Company or a Holder thereof or otherwise, in a Foreign Currency;

(18) whether the amount of payments of principal of, any premium or interest on or any Additional Amounts with respect to such Securities may be determined with reference to an index, formula or other method or methods (which index, formula or method or methods may be based, without limitation, on one or more Currencies, commodities, equity securities, equity indices or other indices), and, if so, the terms and conditions upon which and the manner in which such amounts shall be determined and paid or payable;

(19) any deletions from, modifications of or additions to the Events of Default or covenants of the Company with respect to any of such Securities (whether or not such Events of Default or covenants are consistent with the Events of Default or covenants set forth herein), and whether Section 1010 shall be applicable with respect to any such additional covenants;

(20) if either or both of Section 402(2) relating to defeasance or Section 402(3) relating to covenant defeasance shall not be applicable to the Securities of such series, or any

24

covenants in addition to those specified in Section 402(3) relating to the Securities of such series which shall be subject to covenant defeasance, and, if the Securities of such series are subject to repurchase or repayment at the option of the Holders thereof, whether the Company's obligation to repurchase or repay such Securities will be subject to defeasance or covenant defeasance, and any deletions from, or modifications or additions to, the provisions of Article Four in respect of the Securities of such series;

(21) if any of such Securities are to be issuable upon the exercise of warrants, and the time, manner and place for such Securities to be authenticated and delivered;

(22) if any of such Securities are to be issuable in global form and are to be issuable in definitive form (whether upon original issue or upon exchange of a temporary Security) only upon receipt of certain certificates or other documents or satisfaction of other conditions, then the form and terms of such certificates, documents or conditions;

(23) whether and under what circumstances the Company will pay Additional Amounts on such Securities to any holder who is a United States Alien in respect of any tax, assessment or other governmental charge and, if so, whether the Company will have the option to redeem such Securities rather than pay such Additional Amounts;

(24) if there is more than one Trustee, the identity of the Trustee and, if not the Trustee, the identity of each Security Registrar, Paying Agent or Authenticating Agent with respect to such Securities;

(25) the Person to whom any interest on any Registered Security of such series shall be payable, if other than the Person in whose name the Registered Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest, the manner in which, or the Person to whom, any interest on any Bearer Security of such series shall be payable, if other than upon presentation and surrender of the Coupons appertaining thereto as they severally mature, and the extent to which, or the manner in which, any interest payable on a temporary global Security will be paid if other than in the manner provided in this Indenture; and

(26) any other terms of such Securities and any deletions from or modifications or additions to this Indenture in respect of such Securities.

All Securities of any one series and all Coupons, if any, appertaining to Bearer Securities of such series shall be substantially identical except as to Currency of payments due thereunder, denomination and the rate of interest, or method of determining the rate of interest, if any, Maturity, and the date from which interest, if any, shall accrue and except as may otherwise be provided by the Company in or pursuant to the Board Resolution and set forth in the Officers' Certificate or in any indenture or indentures supplemental hereto pertaining to such series of Securities. The terms of the Securities of any series may provide, without limitation, that the Securities shall be authenticated and delivered by the Trustee on original issue from time to time upon telephonic or written order of persons designated in the Officers' Certificate or supplemental indenture (telephonic instructions to be promptly confirmed in writing by such person) and that such persons are authorized to determine,

25

consistent with such Officers' Certificate or any applicable supplemental indenture, such terms and conditions of the Securities of such series as are specified in such Officers' Certificate or supplemental indenture. All Securities of any one series need not be issued at the same time and, unless otherwise so provided by the Company as contemplated by this Section 301, a series may be reopened for issuances of additional Securities of such series or to establish additional terms of such series of Securities.

If any of the terms of the Securities of any series shall be established by action taken by or pursuant to a Board Resolution, the Board Resolution shall be delivered to the Trustee at or prior to the delivery of the Officers' Certificate setting forth the terms of such series.

The Securities of each series shall have the benefit of the Subsidiary Guarantees unless the Company elects otherwise upon the establishment of a series pursuant to this Section 301.

Section 302.        Currency; Denominations.

Unless otherwise provided in or pursuant to this Indenture, the principal of, any premium and interest on and any Additional Amounts with respect to the Securities shall be payable in Dollars. Unless otherwise provided in or pursuant to this Indenture, Registered Securities denominated in Dollars shall be issuable in registered form without Coupons in denominations of $1,000 and any integral multiple thereof, and the Bearer Securities denominated in Dollars shall be issuable in the denomination of $5,000. Securities not denominated in Dollars shall be issuable in such denominations as are established with respect to such Securities in or pursuant to this Indenture.

Section 303.        Execution, Authentication, Delivery and Dating.

Securities shall be executed on behalf of the Company by its Chairman, its President or one of its Vice Presidents under its corporate seal reproduced thereon and attested by its Treasurer, one of its Assistant Treasurers, its Secretary or one of its Assistant Secretaries. Coupons shall be executed on behalf of the Company by the Chairman, the President or any Vice President of the Company. The signature of any of these officers on the Securities or any Coupons appertaining thereto may be manual or facsimile.

Securities and any Coupons appertaining thereto bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the Company shall bind the Company, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Securities or did not hold such offices at the date of such Securities or Coupons.

At any time and from time to time after the execution and delivery of this Indenture, the Company may deliver Securities, together with any Coupons appertaining thereto, executed by the Company, and, if applicable, having endorsed thereon the Subsidiary Guarantees executed as provided in Section 1603 by Guarantors to the Trustee for authentication and, provided that the Board Resolution and Officers' Certificate or supplemental indenture or indentures with respect to such Securities referred to in Section 301 and a Company Order for the authentication and delivery of such Securities have been delivered to the Trustee, the Trustee in accordance with the Company

26

Order and subject to the provisions hereof and of such Securities shall authenticate and deliver such Securities. In authenticating such Securities, and accepting the additional responsibilities under this Indenture in relation to such Securities and any Coupons appertaining thereto, the Trustee shall be entitled to receive, and (subject to Sections 315(a) through 315(d) of the Trust Indenture Act) shall be fully protected in relying upon, an Opinion of Counsel to the effect that:

        (a) the form or forms and terms of such Securities and Coupons, if any, have been established in conformity with Sections 201 and 301 of this Indenture;

        (b) all conditions precedent set forth in Sections 201, 301 and 303 of this Indenture to the authentication and delivery of such Securities and Coupons, if any, appertaining thereto have been complied with and that such Securities, and Coupons, when completed by appropriate insertions (if applicable), executed and attested under the Company's corporate seal by duly authorized officers of the Company, delivered by duly authorized officers of the Company to the Trustee for authentication pursuant to this Indenture, and authenticated and delivered by the Trustee and issued by the Company in the manner and subject to any conditions specified in such Opinion of Counsel, will constitute valid and binding obligations of the Company, and, if applicable, the Subsidiary Guarantees endorsed thereon will constitute valid and legally binding obligations of the Guarantors, enforceable against the Company or the Guarantors, as the case may be, in accordance with their terms, except as enforcement thereof may be subject to or limited by bankruptcy, insolvency, reorganization, moratorium, arrangement, fraudulent conveyance, fraudulent transfer or other similar laws relating to or affecting creditors' rights generally, and subject to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

If all the Securities of any series are not to be issued at one time, it shall not be necessary to deliver an Opinion of Counsel at the time of issuance of each Security, but such opinion, with such modifications as counsel shall deem appropriate, shall be delivered at or before the time of issuance of the first Security of such series. After any such first delivery, any separate request by the Company that the Trustee authenticate Securities of such series for original issue will be deemed to be a certification by the Company that all conditions precedent provided for in this Indenture relating to authentication and delivery of such Securities continue to have been complied with.

The Trustee shall not be required to authenticate or to cause an Authenticating Agent to authenticate any Securities if the issue of such Securities pursuant to this Indenture will affect the Trustee's own rights, duties or immunities under the Securities and this Indenture or otherwise in a manner which is not reasonably acceptable to the Trustee or if the Trustee, being advised by counsel, determines that such action may not lawfully be taken.

Each Registered Security shall be dated the date of its authentication. Each Bearer Security and any Bearer Security in global form shall be dated as of the date specified in or pursuant to this Indenture.

No Security or Coupon appertaining thereto or Subsidiary Guarantee shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such

27

Security a certificate of authentication substantially in the form provided for in Section 202 or 611 executed by or on behalf of the Trustee or by the Authenticating Agent by the manual signature of one of its authorized officers. Such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder. Except as permitted by Section 306 or 307 or as may otherwise be provided in or pursuant to this Indenture, the Trustee shall not authenticate and deliver any Bearer Security unless all Coupons appertaining thereto then matured have been detached and cancelled.

Section 304.    Temporary Securities.

Pending the preparation of definitive Securities, the Company may execute and deliver to the Trustee and, upon Company Order, the Trustee shall authenticate and deliver, in the manner provided in Section 303, temporary Securities in lieu thereof which are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the definitive Securities and, if applicable, having endorsed thereon the Subsidiary Guarantees in lieu of which they are issued, in registered form or, if authorized in or pursuant to this Indenture, in bearer form with one or more Coupons or without Coupons and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Securities and, if applicable, Subsidiary Guarantees may determine, as conclusively evidenced by their execution of such Securities and Subsidiary Guarantees. Such temporary Securities may be in global form.

Except in the case of temporary Securities in global form, which shall be exchanged in accordance with the provisions thereof, if temporary Securities are issued, the Company shall cause definitive Securities to be prepared without unreasonable delay. After the preparation of definitive Securities of the same series and containing terms and provisions that are identical to those of any temporary Securities, such temporary Securities shall be exchangeable for such definitive Securities upon surrender of such temporary Securities at an Office or Agency for such Securities, without charge to any Holder thereof. Upon surrender for cancellation of any one or more temporary Securities (accompanied by any unmatured Coupons appertaining thereto), the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a like principal amount of definitive Securities of authorized denominations of the same series and containing identical terms and provisions and, if applicable, having endorsed thereon Subsidiary Guarantees executed by the Guarantors; provided, however, that no definitive Bearer Security, except as provided in or pursuant to this Indenture, shall be delivered in exchange for a temporary Registered Security; and provided, further, that a definitive Bearer Security shall be delivered in exchange for a temporary Bearer Security only in compliance with the conditions set forth in or pursuant to this Indenture. Unless otherwise provided in or pursuant to this Indenture with respect to a temporary global Security, until so exchanged the temporary Securities of any series shall in all respects be entitled to the same benefits under this Indenture as definitive Securities of such series.

Section 305.    Registration, Transfer and Exchange.

With respect to the Registered Securities of each series, if any, the Company shall cause to be kept a register (each such register being herein sometimes referred to as the "Security Register") at an Office or Agency for such series in which, subject to such reasonable regulations as it may prescribe, the Company shall provide for the registration of the Registered Securities of such series

and of transfers of the Registered Securities of such series. Such Office or Agency shall be the "Security Registrar" for that series of Securities. Unless otherwise specified in or pursuant to this Indenture or the Securities, the Trustee shall be the initial Security Registrar for each series of Securities. The Company shall have the right to remove and replace from time to time the Security Registrar for any series of Securities; provided that no such removal or replacement shall be effective until a successor Security Registrar with respect to such series of Securities shall have been appointed by the Company and shall have accepted such appointment. In the event that the Trustee shall not be or shall cease to be Security Registrar with respect to a series of Securities, it shall have the right to examine the Security Register for such series at all reasonable times. There shall be only one Security Register for each series of Securities.

Upon surrender for registration of transfer of any Registered Security of any series at any Office or Agency for such series, the Company shall execute, if applicable, the Guarantors shall execute the Subsidiary Guarantees endorsed thereon and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Registered Securities of the same series denominated as authorized in or pursuant to this Indenture, of a like aggregate principal amount bearing a number not contemporaneously outstanding and containing identical terms and provisions.

At the option of the Holder, Registered Securities of any series may be exchanged for other Registered Securities of the same series containing identical terms and provisions, in any authorized denominations, and of a like aggregate principal amount, upon surrender of the Securities to be exchanged at any Office or Agency for such series. Whenever any Registered Securities are so surrendered for exchange, the Company shall execute, if applicable, the Guarantors shall execute the Subsidiary Guarantees endorsed thereon, and the Trustee shall authenticate and deliver, the Registered Securities which the Holder making the exchange is entitled to receive.

If provided in or pursuant to this Indenture, with respect to Securities of any series, at the option of the Holder, Bearer Securities of such series may be exchanged for Registered Securities of such series containing identical terms, denominated as authorized in or pursuant to this Indenture and in the same aggregate principal amount, upon surrender of the Bearer Securities to be exchanged at any Office or Agency for such series, with all unmatured Coupons and all matured Coupons in default thereto appertaining. If the Holder of a Bearer Security is unable to produce any such unmatured Coupon or Coupons or matured Coupon or Coupons in default, such exchange may be effected if the Bearer Securities are accompanied by payment in funds acceptable to the Company and the Trustee in an amount equal to the face amount of such missing Coupon or Coupons, or the surrender of such missing Coupon or Coupons may be waived by the Company and the Trustee if there is furnished to them such security or indemnity as they may require to save each of them and any Paying Agent harmless. If thereafter the Holder of such Bearer Security shall surrender to any Paying Agent any such missing Coupon in respect of which such a payment shall have been made, such Holder shall be entitled to receive the amount of such payment; provided, however, that, except as otherwise provided in Section 1002, interest represented by Coupons shall be payable only upon presentation and surrender of those Coupons at an Office or Agency for such series located outside the United States. Notwithstanding the foregoing, in case a Bearer Security of any series is surrendered at any such Office or Agency for such series in exchange for a Registered Security of such series and like tenor after the close of business at such Office or Agency on (i) any Regular Record Date and before

29

the opening of business at such Office or Agency on the relevant Interest Payment Date, or (ii) any Special Record Date and before the opening of business at such Office or Agency on the related date for payment of Defaulted Interest, such Bearer Security shall be surrendered without the Coupon relating to such Interest Payment Date or proposed date of payment, as the case may be (or, if such Coupon is so surrendered with such Bearer Security, such Coupon shall be returned to the Person so surrendering the Bearer Security), and interest or Defaulted Interest, as the case may be, shall not be payable on such Interest Payment Date or proposed date for payment, as the case may be, in respect of the Registered Security issued in exchange for such Bearer Security, but shall be payable only to the Holder of such Coupon when due in accordance with the provisions of this Indenture.

If provided in or pursuant to this Indenture with respect to Securities of any series, at the option of the Holder, Registered Securities of such series may be exchanged for Bearer Securities upon such terms and conditions as may be provided in or pursuant to this Indenture with respect to such series.

Whenever any Securities are surrendered for exchange as contemplated by the immediately preceding two paragraphs, the Company shall execute, if applicable, the Guarantors shall execute the Subsidiary Guarantees endorsed thereon and the Trustee shall authenticate and deliver, the Securities which the Holder making the exchange is entitled to receive.

Notwithstanding the foregoing, except as otherwise provided in or pursuant to this Indenture, any global Security shall be exchangeable for definitive certificated Securities only if (i) the Depository for such Securities notifies the Company that it is unwilling or unable to continue as a Depository for the global Security or at any time the Depository for such Securities ceases to be a clearing agency registered as such under the Securities Exchange Act of 1934, as amended, if so required by applicable law or regulation, and no successor Depository for such Securities shall have been appointed within 90 days of such notification or of the Company becoming aware of the Depository's ceasing to be so registered, as the case may be, (ii) the Company, in its sole discretion, executes and delivers to the Trustee a Company Order to the effect that such global Security shall be so exchangeable, or (iii) an Event of Default has occurred and is continuing with respect to such Securities. If the beneficial owners of interests in a global Security are entitled to exchange such interests for definitive Securities as the result of an event described in clause (i), (ii) or (iii) of the preceding sentence, then without unnecessary delay but in any event not later than the earliest date on which such interests may be so exchanged, the Company shall deliver to the Trustee definitive Securities in such form and denominations as are required by or pursuant to this Indenture, and of the same series, containing identical terms and in aggregate principal amount equal to the principal amount of such global Security, executed by the Company. On or after the earliest date on which such interests may be so exchanged, such global Security shall be surrendered from time to time by the Depository as shall be specified in the Company Order with respect thereto (which the Company agrees to deliver), and in accordance with instructions given to the Trustee and the Depository (which instructions shall be in writing but need not be contained in or accompanied by an Officers' Certificate or be accompanied by an Opinion of Counsel), as shall be specified in the Company Order with respect thereto to the Trustee, as the Company's agent for such purpose, to be exchanged, in whole or in part, for definitive Securities as described above without charge. The Trustee shall authenticate and make available for delivery, in exchange for each portion of such surrendered global Security, a like aggregate principal amount of definitive Securities of the same series of authorized denominations

30

and of like tenor as the portion of such global Security to be exchanged,  which (unless  such  Securities  are  not  issuable  both  as Bearer  Securities  and as Registered Securities, in which case the definitive Securities exchanged for the global  Security  shall be issuable only in the form in which the Securities are issuable,  as provided in or pursuant to this Indenture) shall be in the form of Bearer Securities or Registered Securities, or any combination thereof, as shall be  specified  by  the  Depository,  but  subject  to  the  satisfaction  of  any certification  or other  requirements  to  the  issuance  of  Bearer  Securities; provided, however, that no such exchanges may occur during a period beginning at the opening of business 15 days before any  selection of  Securities of the same series to be redeemed and ending on the relevant  Redemption Date; and provided, further,  that (unless  otherwise  provided in or pursuant to this Indenture) no Bearer  Security  delivered in exchange for a portion of a global Security shall be mailed or otherwise delivered to any location in the United States.  Promptly following any such exchange in part,  such global  Security shall be returned by the Trustee to such  Depository  or such other  Depository  referred to above in accordance  with  the  instructions  of  the  Company  referred  to  above.  If a Registered  Security is issued in exchange for any portion of a global  Security after the close of business at the Office or Agency for such Security where such exchange  occurs on or after (i) any Regular  Record Date for such  Security and before the opening of  business  at such  Office or Agency on the next  Interest Payment Date,  or (ii) any Special  Record Date for such Security and before the opening of business at such  Office or Agency on the related  proposed  date for payment of interest or Defaulted  Interest,  as the case may be,  interest shall not be payable on such Interest  Payment Date or proposed  date for payment,  as the case may be, in respect of such Registered Security, but shall be payable on such  Interest  Payment Date or proposed  date for payment,  as the case may be, only to the Person to whom  interest  in respect of such  portion of such global Security shall be payable in accordance with the provisions of this Indenture.

All Securities and, if applicable,  the Subsidiary  Guarantees endorsed thereon issued upon any registration of transfer or exchange of Securities shall be the valid obligations of the Company and the respective Guarantors evidencing the same debt and entitling the Holders  thereof to the same benefits under this Indenture as the Securities and  Subsidiaries  Guarantees  surrendered upon such registration of transfer or exchange.

Every Registered  Security presented or surrendered for registration of transfer or for exchange or  redemption  shall  (if so required by the Company or the Security Registrar for such Security) be duly endorsed,  or be accompanied by a written  instrument  of transfer in form  satisfactory  to the Company and the Security  Registrar for such Security duly executed by the Holder thereof or his attorney duly authorized in writing.

No service  charge  shall be made for any  registration  of transfer or exchange,  or  redemption  of  Securities  or repayment  of  Securities,  but the Company  may  require  payment  of a sum  sufficient  to cover  any tax or other governmental  charge that may be imposed in connection with any  registration of transfer or exchange of  Securities,  other than  exchanges  pursuant to Section 304,  905 or  1107,  upon  repayment  or  repurchase  in part of any  Registered Security pursuant  to Article Thirteen,  or  upon  surrender  in  part of any Registered  Security  for  conversion  or exchange  into  Common  Stock or other securities pursuant to its terms, in each case not involving any transfer.

Except as  otherwise  provided in or pursuant  to this  Indenture,  the Company shall not be required (i) to issue, register the transfer of or exchange any Securities during a period beginning at

31

the opening of business 15 days before the day of the selection for redemption of Securities of like tenor and the same series under Section 1103 and ending at the close of business on the day of such selection, (ii) to register the transfer of or exchange any Registered Security, or portion thereof, so selected for redemption, except in the case of any Registered Security to be redeemed in part, the portion thereof not to be redeemed, (iii) to exchange any Bearer Security so selected for redemption except, to the extent provided with respect to such Bearer Security, that such Bearer Security may be exchanged for a Registered Security of like tenor and the same series, provided that such Registered Security shall be simultaneously surrendered for redemption with written instruction for payment consistent with the provisions of this Indenture or (iv) to issue, register the transfer of or exchange any Security which, in accordance with its terms, has been surrendered for repayment at the option of the Holder, except the portion, if any, of such Security not to be so repaid.

Section 306.     Mutilated, Destroyed, Lost and Stolen Securities.

If any mutilated Security or a Security with a mutilated Coupon appertaining to it is surrendered to the Trustee, subject to the provisions of this Section 306, the Company shall execute, if applicable, the Guarantors shall execute the Subsidiary Guarantees endorsed thereon and the Trustee shall authenticate and deliver in exchange therefor a new Security of the same series containing identical terms and of like principal amount and bearing a number not contemporaneously outstanding, with Coupons appertaining thereto corresponding to the Coupons, if any, appertaining to the surrendered Security.

If there be delivered to the Company and to the Trustee (i) evidence to their satisfaction of the destruction, loss or theft of any Security or Coupon, and (ii) such security or indemnity as may be required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Company or the Trustee that such Security or Coupon has been acquired by a bona fide purchaser, the Company shall execute and, upon the Company's request the Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Security or in exchange for the Security to which a destroyed, lost or stolen Coupon appertains with all appurtenant Coupons not destroyed, lost or stolen, a new Security of the same series containing identical terms and of like principal amount and bearing a number not contemporaneously outstanding, with Coupons corresponding to the Coupons, if any, appertaining to such destroyed, lost or stolen Security or to the Security to which such destroyed, lost or stolen Coupon appertains and, if applicable, each Guarantor shall execute a replacement Subsidiary Guarantee.

Notwithstanding the foregoing provisions of this Section 306, in case any mutilated, destroyed, lost or stolen Security or Coupon has become or is about to become due and payable, the Company in its discretion may, instead of issuing a new Security, pay such Security or Coupon; provided, however, that payment of principal of, any premium or interest on or any Additional Amounts with respect to any Bearer Securities shall, except as otherwise provided in Section 1002, be payable only at an Office or Agency for such Securities located outside the United States and, unless otherwise provided in or pursuant to this Indenture, any interest on Bearer Securities and any Additional Amounts with respect to such interest shall be payable only upon presentation and surrender of the Coupons appertaining thereto.

32

Upon the issuance of any new Security under this Section, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Security, with any Coupons appertaining thereto issued pursuant to this Section in lieu of any destroyed, lost or stolen Security, or in exchange for a Security to which a destroyed, lost or stolen Coupon appertains, and, if applicable, the Subsidiary Guarantees endorsed thereon shall constitute a separate obligation of the Company and, if applicable, the respective Guarantees, whether or not the destroyed, lost or stolen Security and Coupons appertaining thereto or the destroyed, lost or stolen Coupon shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of such series and any Coupons, if any, duly issued hereunder.

The provisions of this Section, as amended or supplemented pursuant to this Indenture with respect to particular Securities or generally, shall (to the extent lawful) be exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities or Coupons.

Section 307. Payment of Interest and Certain Additional Amounts; Rights to Interest and Certain Additional Amounts Preserved.

Unless otherwise provided in or pursuant to this Indenture, any interest on and any Additional Amounts with respect to any Registered Security which shall be payable, and are punctually paid or duly provided for, on any Interest Payment Date shall be paid to the Person in whose name such Security (or one or more Predecessor Securities) is registered as of the close of business on the Regular Record Date for such interest. Unless otherwise provided in or pursuant to this Indenture, in case a Bearer Security is surrendered in exchange for a Registered Security after the close of business at an Office or Agency for such Security on any Regular Record Date therefor and before the opening of business at such Office or Agency on the next succeeding Interest Payment Date therefor, such Bearer Security shall be surrendered without the Coupon relating to such Interest Payment Date and interest shall not be payable on such Interest Payment Date in respect of the Registered Security issued in exchange for such Bearer Security, but shall be payable only to the Holder of such Coupon when due in accordance with the provisions of this Indenture.

Unless otherwise provided in or pursuant to this Indenture, any interest on and any Additional Amounts with respect to any Registered Security which shall be payable, but shall not be punctually paid or duly provided for, on any Interest Payment Date for such Registered Security (herein called "Defaulted Interest") shall forthwith cease to be payable to the Holder thereof on the relevant Regular Record Date by virtue of having been such Holder; and such Defaulted Interest may be paid by the Company, at its election in each case, as provided in Clause (1) or (2) below:

(1) The Company may elect to make payment of any Defaulted Interest to the Person in whose name such Registered Security (or a Predecessor Security thereof) shall be registered at the close of business on a Special Record Date for the payment of such Defaulted Interest, which shall be fixed in the following manner. The Company shall notify

33

the Trustee in writing of the amount of Defaulted Interest proposed to be paid on such Registered Security and the date of the proposed payment, and at the same time the Company shall deposit with the Trustee an amount of money equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit on or prior to the date of the proposed payment, such money when so deposited to be held in trust for the benefit of the Person entitled to such Defaulted Interest as in this Clause provided. Thereupon, the Trustee shall fix a Special Record Date for the payment of such Defaulted Interest which shall be not more than 15 days and not less than 10 days prior to the date of the proposed payment and not less than 10 days after the receipt by the Trustee of the notice of the proposed payment. The Trustee shall promptly notify the Company of such Special Record Date and, in the name and at the expense of the Company shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class postage prepaid, to the Holder of such Registered Security (or a Predecessor Security thereof) at his address as it appears in the Security Register not less than 10 days prior to such Special Record Date. The Trustee may, in its discretion, in the name and at the expense of the Company cause a similar notice to be published at least once in an Authorized Newspaper of general circulation in the Borough of Manhattan, The City of New York, but such publication shall not be a condition precedent to the establishment of such Special Record Date. Notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor having been mailed as aforesaid, such Defaulted Interest shall be paid to the Person in whose name such Registered Security (or a Predecessor Security thereof) shall be registered at the close of business on such Special Record Date and shall no longer be payable pursuant to the following clause (2). In case a Bearer Security is surrendered at the Office or Agency for such Security in exchange for a Registered Security after the close of business at such Office or Agency on any Special Record Date and before the opening of business at such Office or Agency on the related proposed date for payment of Defaulted Interest, such Bearer Security shall be surrendered without the Coupon relating to such Defaulted Interest and Defaulted Interest shall not be payable on such proposed date of payment in respect of the Registered Security issued in exchange for such Bearer Security, but shall be payable only to the Holder of such Coupon when due in accordance with the provisions of this Indenture.

(2) The Company may make payment of any Defaulted Interest in any other lawful manner not inconsistent with the requirements of any securities exchange on which such Security may be listed, and upon such notice as may be required by such exchange, if, after notice given by the Company to the Trustee of the proposed payment pursuant to this Clause, such payment shall be deemed practicable by the Trustee.

Unless otherwise provided in or pursuant to this Indenture or the Securities of any particular series, at the option of the Company, interest on Registered Securities that bear interest may be paid by mailing a check to the address of the Person entitled thereto as such address shall appear in the Security Register or by transfer to an account maintained by the payee with a bank located in the United States.

Subject to the foregoing provisions of this Section and Section 305, each Security delivered under this Indenture upon registration of transfer of or in exchange for or in lieu of any other Security

34

shall carry the rights to interest accrued and unpaid, and to accrue, which were carried by such other Security.

In the case of any Registered Security of any series that is convertible into shares of Common Stock or exchangeable for other securities, which Registered Security is converted or exchanged after any Regular Record Date and on or prior to the next succeeding Interest Payment Date (other than any Registered Security with respect to which the Stated Maturity is prior to such Interest Payment Date), interest with respect to which the Stated Maturity is on such Interest Payment Date shall be payable on such Interest Payment Date notwithstanding such conversion or exchange, and such interest (whether or not punctually paid or duly provided for) shall be paid to the Person in whose name that Registered Security (or one or more predecessor Registered Securities) is registered at the close of business on such Regular Record Date. Except as otherwise expressly provided in the immediately preceding sentence, in the case of any Registered Security which is converted or exchanged, interest with respect to which the Stated Maturity is after the date of conversion or exchange of such Registered Security shall not be payable.

Section 308.    Persons Deemed Owners.

Prior to due presentment of a Registered Security for registration of transfer, the Company, the Guarantors, the Trustee and any agent of the Company, the Guarantors or the Trustee may treat the Person in whose name such Registered Security is registered in the Security Register as the owner of such Registered Security for the purpose of receiving payment of principal of, any premium and (subject to Sections 305 and 307) interest on and any Additional Amounts with respect to such Registered Security and for all other purposes whatsoever, whether or not any payment with respect to such Registered Security shall be overdue, and neither the Company, the Guarantors, the Trustee or any agent of the Company, the Guarantors or the Trustee shall be affected by notice to the contrary.

The Company, the Guarantors, the Trustee and any agent of the Company, the Guarantors or the Trustee may treat the bearer of any Bearer Security or the bearer of any Coupon as the absolute owner of such Security or Coupon for the purpose of receiving payment thereof or on account thereof and for all other purposes whatsoever, whether or not any payment with respect to such Security or Coupon shall be overdue, and none of the Company, the Guarantors, the Trustee or any agent of the Company, the Guarantors or the Trustee shall be affected by notice to the contrary.

No holder of any beneficial interest in any global Security held on its behalf by a Depository shall have any rights under this Indenture with respect to such global Security, and such Depository may be treated by the Company, the Guarantors, the Trustee, and any agent of the Company, the Guarantors or the Trustee as the owner of such global Security for all purposes whatsoever. None of the Company, the Guarantors, the Trustee, any Paying Agent or the Security Registrar will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial ownership interests of a global Security or for maintaining, supervising or reviewing any records relating to such beneficial ownership interests.

35

Section 309.        Cancellation.

All  Securities  and  Coupons  surrendered  for  payment,    redemption,
registration  of  transfer,  exchange  or  conversion  or for credit  against any
sinking fund payment shall, if surrendered to any Person other than the Trustee,
be delivered to the Trustee,  and any such  Securities  and Coupons,  as well as
Securities and Coupons surrendered directly to the Trustee for any such purpose,
shall be cancelled promptly by the Trustee.  The Company may at any time deliver
to the Trustee for  cancellation  any Securities  previously  authenticated  and
delivered   hereunder   which   the  Company  may  have  acquired  in  any  manner
whatsoever,   and all Securities so delivered shall be cancelled  promptly by the
Trustee.  No Securities shall be authenticated in lieu of or in exchange for any
Securities cancelled as provided in this Section,   except as expressly permitted
by or pursuant to this Indenture.  All cancelled  Securities and Coupons held by
the Trustee  shall be destroyed by the  Trustee,  unless by a Company  Order the
Company directs their return to it.

Section 310.        Computation of Interest.

Except as otherwise provided in or pursuant to this Indenture or in the
Securities of any series,  interest on the  Securities  shall be computed on the
basis of a 360-day year of twelve 30-day months.

ARTICLE IV

SATISFACTION AND DISCHARGE OF INDENTURE

Section 401.        Satisfaction and Discharge.

Upon the direction of the Company by a Company  Order,  this  Indenture
shall  cease to be of further  effect  with  respect to any series of  Securities
specified in such Company Order, any Coupons appertaining thereto and, if
applicable,  any Subsidiary  Guarantees endorsed thereon,  and the Trustee,  on
receipt of a Company Order, at the expense of the Company,  shall execute proper
instruments  acknowledging  satisfaction and discharge of this  Indenture as to
such series, when

        (1)    either

                (a)   all   Securities  of  such  series   theretofore
authenticated  and  delivered  and  all  Coupons  appertaining
thereto  (other  than  (i)  Coupons  appertaining  to  Bearer
Securities  of  such  series   surrendered   in  exchange  for
Registered  Securities  of such series and maturing  after such
exchange whose surrender is not required or has been waived as
provided in Section 305, (ii)  Securities  and Coupons of such
series  which  have been  destroyed,  lost or stolen and which
have been  replaced or paid as provided in Section 306,  (iii)
Coupons  appertaining  to Securities of such series called for
redemption  and maturing  after the relevant  Redemption  Date
whose  surrender  has been waived as provided in Section 1107,
and (iv)  Securities  and  Coupons  of such  series  for whose
payment  money  has  theretofore  been  deposited  in trust or
segregated  and held in trust by the  Company  and  thereafter
repaid to the Company or discharged

36

from such trust, as provided in Section 1003) have been delivered to the Trustee for cancellation; or

(b) all Securities of such series and, in the case of (i) or (ii) below, if applicable, any Coupons appertaining thereto not theretofore delivered to the Trustee for cancellation

(i) have become due and payable, or

(ii) will become due and payable at their Stated Maturity within one year, or

(iii) if redeemable at the option of the Company, are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Company,

and the Company or, if applicable, a Guarantor, in the case of (i), (ii) or (iii) above, has deposited or caused to be deposited with the Trustee as trust funds in trust for such purpose, money in the Currency in which such Securities are payable in an amount sufficient to pay and discharge the entire indebtedness on such Securities and any Coupons appertaining thereto not theretofore delivered to the Trustee for cancellation, including the principal of, any premium and interest on, and, to the extent that the Securities of such series provide for the payment of Additional Amounts thereon and the amount of any such Additional Amounts which are or will be payable with respect to the Securities of such series is at the time of deposit reasonably determinable by the Company (in the exercise by the Company of its sole and absolute discretion), any Additional Amounts with respect to, such Securities and any Coupons appertaining thereto, to the date of such deposit (in the case of Securities which have become due and payable) or to the Maturity thereof, as the case may be;

(2) the Company or a Guarantor has paid or caused to be paid all other sums payable hereunder by the Company and the Guarantors with respect to the Outstanding Securities of such series and any Coupons appertaining thereto; and

(3) the Company has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture as to such series have been complied with.

In the event there are Securities of two or more series hereunder, the Trustee shall be required to execute an instrument acknowledging satisfaction and discharge of this Indenture only if requested to do so with respect to Securities of such series as to which it is Trustee and if the other conditions thereto are met.

37

Notwithstanding the satisfaction and discharge of this Indenture with respect to any series of Securities, the obligations of the Company to the Trustee under Section 606 and, if money shall have been deposited with the Trustee pursuant to subclause (b) of clause (1) of this Section, the obligations of the Company and the Trustee with respect to the Securities of such series under Sections 305, 306, 403, 1002 and 1003, with respect to the payment of Additional Amounts, if any, with respect to such Securities as contemplated by Section 1004 (but only to the extent that the Additional Amounts payable with respect to such Securities exceed the amount deposited in respect of such Additional Amounts pursuant to Section 401 (1)(b)), and with respect to any rights to convert or exchange such Securities into Common Stock or other securities, and the provisions of this Section 401 and Sections 403 and 404 shall survive.

Section 402.    Defeasance and Covenant Defeasance.

(1) Unless, pursuant to Section 301, either or both of (i) defeasance of the Securities of or within a series under clause (2) of this Section 402 or (ii) covenant defeasance of the Securities of or within a series under clause (3) of this Section 402 shall not be applicable with respect to the Securities of such series, then such provisions, together with the other provisions of this Section 402 (with such modifications thereto as may be specified pursuant to Section 301 with respect to any Securities), shall be applicable to such Securities and any Coupons appertaining thereto, and the Company may at its option by Board Resolution, at any time, with respect to such Securities and any Coupons appertaining thereto, elect to have Section 402(2) or Section 402(3) be applied to such Outstanding Securities and any Coupons appertaining thereto upon compliance with the conditions set forth below in this Section 402.

(2) Upon the Company's exercise of the above option applicable to this Section 402(2) with respect to any Securities of or within a series, the Company and each Guarantor shall be deemed to have been discharged from its obligations with respect to such Outstanding Securities and any Coupons appertaining thereto on the date the conditions set forth in clause (4) of this Section 402 are satisfied (hereinafter, "defeasance"). For this purpose, such defeasance means that the Company and each Guarantor shall be deemed to have paid and discharged the entire indebtedness represented by such Outstanding Securities and any Coupons appertaining thereto, which shall thereafter be deemed to be "Outstanding" only for the purposes of clause (5) of this Section 402 and the other Sections of this Indenture referred to in clauses (i) and (ii) of this paragraph, and to have satisfied all of its other obligations under such Securities and any Coupons appertaining thereto and this Indenture insofar as such Securities and any Coupons appertaining thereto are concerned (and the Trustee, at the expense of the Company, shall execute proper instruments acknowledging the same), except for the following which shall survive until otherwise terminated or discharged hereunder: (i) the rights of Holders of such Outstanding Securities and any Coupons appertaining thereto to receive, solely from the trust fund described in clause (4) of this Section 402 and as more fully set forth in such Section, payments in respect of the principal of (and premium, if any) and interest, if any, on, and Additional Amounts, if any, with respect to, such Securities and any Coupons appertaining thereto when such payments are due, and any rights of such Holder to convert or exchange such Securities into Common Stock or other securities, (ii) the obligations of the Company and the Trustee with respect to such Securities under Sections 305, 306, 1002 and 1003, with respect to the payment of Additional Amounts, if any, on such Securities as contemplated by Section 1004 (but only to the extent that the Additional Amounts payable with respect to such Securities exceed the amount

38

deposited in respect of such Additional Amounts pursuant to Section 401(4)(a) below), and with respect to any rights to convert or exchange such Securities into Common Stock or other securities, (iii) the rights, powers, trusts, duties and immunities of the Trustee hereunder and (iv) this Section 402 and Section 403. The Company may exercise its option under this Section 402(2) notwithstanding the prior exercise of its option under Section 402(3) with respect to such Securities and any Coupons appertaining thereto.

(3) Upon the Company's exercise of the above option applicable to this Section 402(3) with respect to any Securities of or within a series, the Company and each Guarantor shall be released from its obligations under clauses (ii) and (iii) of Section 1005 and under Sections 1006, 1007, 1008 and 1009 and, to the extent specified pursuant to Section 301, any other covenant applicable to such Securities, with respect to such Outstanding Securities and any Coupons appertaining thereto on and after the date the conditions set forth in clause (4) of this Section 402 are satisfied (hereinafter, "covenant defeasance"), and such Securities and any Coupons appertaining thereto shall thereafter be deemed to be not "Outstanding" for the purposes of any direction, waiver, consent or declaration or Act of Holders (and the consequences of any thereof) in connection with any such covenant, but shall continue to be deemed "Outstanding" for all other purposes hereunder. For this purpose, such covenant defeasance means that, with respect to such Outstanding Securities and any Coupons appertaining thereto, the Company and each Guarantor may omit to comply with, and shall have no liability in respect of, any term, condition or limitation set forth in any such Section or such other covenant, whether directly or indirectly, by reason of any reference elsewhere herein to any such Section or such other covenant or by reason of reference in any such Section or such other covenant to any other provision herein or in any other document and such omission to comply shall not constitute a default or an Event of Default under Section 501(4) or 501(9) or otherwise, as the case may be, but, except as specified above, the remainder of this Indenture and such Securities and Coupons appertaining thereto shall be unaffected thereby.

(4) The following shall be the conditions to application of clause (2) or (3) of this Section 402 to any Outstanding Securities of or within a series and any Coupons appertaining thereto:

(a) The Company shall irrevocably have deposited or caused to be deposited with the Trustee (or another trustee satisfying the requirements of Section 607 who shall agree to comply with the provisions of this Section 402 applicable to it) as trust funds in trust for the purpose of making the following payments, specifically pledged as security for, and dedicated solely to, the benefit of the Holders of such Securities and any Coupons appertaining thereto, (1) an amount in Dollars or in such Foreign Currency in which such Securities and any Coupons appertaining thereto are then specified as payable at Stated Maturity, or (2) Government Obligations applicable to such Securities and Coupons appertaining thereto (determined on the basis of the Currency in which such Securities and Coupons appertaining thereto are then specified as payable at Stated Maturity or, if such defeasance or covenant defeasance is to be effected in compliance with subsection (f) below, on the relevant Redemption Date, as the case may be) which through the scheduled payment of principal and interest in respect thereof in accordance with their terms will provide, not later than one day before the due date of any payment of principal of (and premium, if any) and interest, if any, on such Securities and any Coupons appertaining thereto, money in an amount, or (3) a combination thereof, in any case, in an amount, sufficient, without consideration of any

39

reinvestment of such principal and interest, in the opinion of a nationally recognized firm of independent public accountants expressed in a written certification thereof delivered to the Trustee, to pay and discharge, and which shall be applied by the Trustee (or other qualifying trustee) to pay and discharge, (y) the principal of (and premium, if any) and interest, if any, on, and, to the extent that such Securities provide for the payment of Additional Amounts thereon and the amount of any such Additional Amounts which are or will be payable with respect to the Securities of such series is at the time of deposit reasonably determinable by the Company (in the exercise by the Company of its sole and absolute discretion), any Additional Amounts with respect to, such Outstanding Securities and any Coupons appertaining thereto on the Stated Maturity of such principal or installment of principal or interest or the applicable Redemption Date, as the case may be, and (z) any mandatory sinking fund payments or analogous payments applicable to such Outstanding Securities and any Coupons appertaining thereto on the day on which such payments are due and payable in accordance with the terms of this Indenture and of such Securities and any Coupons appertaining thereto.

(b) Such defeasance or covenant defeasance shall not result in a breach or violation of, or constitute a default under, this Indenture or any other material agreement or instrument to which the Company or any Guarantor is a party or by which it is bound.

(c) No Event of Default or event which with notice or lapse of time or both would become an Event of Default with respect to such Securities and any Coupons appertaining thereto shall have occurred and be continuing on the date of such deposit, and, solely in the case of defeasance under Section 402(2), no Event of Default with respect to such Securities and any Coupons appertaining thereto under clause (7) or (8) of Section 501 or event which with notice or lapse of time or both would become an Event of Default with respect to such Securities and any Coupons appertaining thereto under clause (7) or (8) of Section 501 shall have occurred and be continuing at any time during the period ending on the 91st day after the date of such deposit (it being understood that this condition to defeasance under Section 402(2) shall not be deemed satisfied until the expiration of such period).

(d) In the case of defeasance pursuant to Section 402(2), the Company shall have delivered to the Trustee an Opinion of Counsel from independent legal counsel stating that (x) the Company has received from, or there has been published by, the Internal Revenue Service a ruling, or (y) since the date of this Indenture there has been a change in applicable federal income tax law, in either case to the effect that, and based thereon such Opinion of Counsel shall confirm that, the Holders of such Outstanding Securities and any Coupons appertaining thereto will not recognize income, gain or loss for federal income tax purposes as a result of such defeasance and will be subject to federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such defeasance had not occurred; or, in the case of covenant defeasance pursuant to Section 402(3), the Company shall have delivered to the Trustee an Opinion of Counsel of independent legal counsel to the effect that the Holders of such Outstanding Securities and any Coupons appertaining thereto will not recognize income, gain or loss for federal income tax purposes as a result of such covenant defeasance and will be subject to federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such covenant defeasance had not occurred.

40

(e) The Company shall have delivered to the Trustee an Opinion of Counsel to the effect that, after the 123rd day after the date of deposit, all money and Government Obligations (or other property as may be provided pursuant to Section 3.1) (including the proceeds thereof) deposited or caused to be deposited with the Trustee (or other qualifying trustee) pursuant to this clause (4) to be held in trust will not be subject to any case or proceeding (whether voluntary or involuntary) in respect of the Company under any Federal or State bankruptcy, insolvency, reorganization or other similar law, or any decree or order for relief in respect of the Company issued in connection therewith.

(f) The Company shall have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent to the defeasance or covenant defeasance, as the case may be, under this Indenture have been complied with.

(g) If the monies or Government Obligations or combination thereof, as the case may be, deposited under clause (a) above are sufficient to pay the principal of, and premium, if any, and interest, if any, on and, to the extent provided in such clause (a), Additional Amounts with respect to, such Securities provided such Securities are redeemed on a particular Redemption Date, the Company shall have given the Trustee irrevocable instructions to redeem such Securities on such date and to provide notice of such redemption to Holders as provided in or pursuant to this Indenture.

(h) Notwithstanding any other provisions of this Section 402(4), such defeasance or covenant defeasance shall be effected in compliance with any additional or substitute terms, conditions or limitations which may be imposed on the Company in connection therewith pursuant to Section 301.

(5) Subject to the provisions of the last paragraph of Section 1003, all money and Government Obligations (or other property as may be provided pursuant to Section 301) (including the proceeds thereof) deposited with the Trustee (or other qualifying trustee -- collectively for purposes of this Section 402(5), Section 403 and 404, the "Trustee") pursuant to clause (4) of Section 402 in respect of any Outstanding Securities of any series and any Coupons appertaining thereto shall be held in trust and applied by the Trustee as provided in Section 403.

Unless otherwise specified in or pursuant to this Indenture or any Securities, if, after a deposit referred to in Section 402(4)(a) has been made, (a) the Holder of a Security in respect of which such deposit was made is entitled to, and does, elect pursuant to Section 301 or the terms of such Security to receive payment in a Currency other than that in which the deposit pursuant to Section 402(4)(a) has been made in respect of such Security, or (b) a Conversion Event occurs in respect of the Foreign Currency in which the deposit pursuant to Section 402(4)(a) has been made, the indebtedness represented by such Security and any Coupons appertaining thereto shall be deemed to have been, and will be, fully discharged and satisfied through the payment of the principal of (and premium, if any), and interest, if any, on, and Additional Amounts, if any, with respect to, such Security as the same becomes due out of the proceeds yielded by converting (from time to time as specified below in the case of any such election) the amount or other property deposited in respect of such Security into the Currency in which such Security becomes payable as a result of such election or Conversion Event based on (x) in the case of payments made pursuant to clause (a) above, the applicable market

41

exchange rate for such Currency in effect on the second Business Day prior to each payment date, or (y) with respect to a Conversion Event, the applicable market exchange rate for such Foreign Currency in effect (as nearly as feasible) at the time of the Conversion Event.

The Company shall pay and indemnify the Trustee against any tax, fee or other charge, imposed on or assessed against the Government Obligations deposited pursuant to this Section 402 or the principal or interest received in respect thereof other than any such tax, fee or other charge which by law is for the account of the Holders of such Outstanding Securities and any Coupons appertaining thereto.

Anything in this Section 402 to the contrary notwithstanding, the Trustee shall deliver or pay to the Company from time to time upon Company Request any money or Government Obligations (or other property and any proceeds therefrom) held by it as provided in clause (4) of this Section 402 which, in the opinion of a nationally recognized firm of independent public accountants expressed in a written certification thereof delivered to the Trustee, are in excess of the amount thereof which would then be required to be deposited to effect a defeasance or covenant defeasance, as applicable, in accordance with this Section 402.

Section 403.    Application of Trust Money.

Subject to the provisions of the last paragraph of Section 1003, all money and Government Obligations deposited with the Trustee pursuant to Section 401 or 402 shall be held in trust and applied by it, in accordance with the provisions of the Securities, the Coupons and this Indenture, to the payment, either directly or through any Paying Agent (other than the Company acting as its own Paying Agent) as the Trustee may determine, to the Persons entitled thereto, of the principal, premium, interest and Additional Amounts for whose payment such money has or Government Obligations have been deposited with or received by the Trustee; but such money and Government Obligations need not be segregated from other funds except to the extent required by law.

Section 404.    Reinstatement.

If the Trustee or Paying Agent is unable to apply any cash or Government Obligations deposited pursuant to Section 401 or 402 in accordance with this Indenture or the Debt Securities of the applicable series by reason of any legal proceeding or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, then the Company's obligations under this Indenture and the Debt Securities of such series and any Guarantor's obligations under any Subsidiary Guarantee shall be revived and reinstated as though no deposit had occurred pursuant to Section 401 or 402, as the case may be, until such time as the Trustee or Paying Agent is permitted to apply such money in accordance with this Indenture and the Debt Securities of such series; provided, however, that if the Company makes any payment of principal of, premium, if any, or interest, if any, on any Debt Security of such series following the reinstatement of its obligations, the Company shall be subrogated to the rights of the Holders of such Debt Securities to receive such payment from the cash and Government Obligations held by the Trustee or Paying Agent.

42

ARTICLE V

REMEDIES

Section 501.        Events of Default.

"Event of Default", wherever used herein with respect to Securities of
any series, means any one of the following events (whatever the reason for such
Event of Default and whether it shall be voluntary or involuntary or be effected
by operation of law or pursuant to any judgment, decree or order of any court or
any order, rule or regulation of any administrative or governmental body) unless
such event is specifically deleted or modified in or pursuant to the
supplemental indenture, Board Resolution or Officers' Certificate establishing
the terms of such series pursuant to this Indenture:

(1) default in the payment of any interest on, or any Additional
Amounts payable in respect of any interest on, any Security of such
series or any Coupon appertaining thereto when such interest or such
Additional Amounts, as the case may be, become due and payable, and
continuance of such default for a period of 30 days;

(2) default in the payment of any principal of or premium, if
any, on, or any Additional Amounts payable in respect of any principal
of or premium, if any, on, any Security of such series when due upon
Maturity;

(3) default in the deposit of any sinking fund payment or
analogous payment when due with respect to any Security of such
series;

(4) default in the performance, or breach, of any covenant or
warranty of the Company in this Indenture or any Security of such
series (other than a covenant or warranty for which the consequences
of breach or nonperformance are addressed elsewhere in this Section
501 or a covenant or warranty which has expressly been included in
this Indenture, whether or not by means of a supplemental indenture,
solely for the benefit of Securities of a series other than such
series), and continuance of such default or breach for a period of 60
days after there has been given, by registered or certified mail, to
the Company by the Trustee or to the Company and the Trustee by the
Holders of at least 25% in principal amount of the Outstanding
Securities of such series a written notice specifying such default or
breach and requiring it to be remedied and stating that such notice is
a "Notice of Default" hereunder;

(5) default in payment of any indebtedness for borrowed money of
the Company or any Subsidiary of the Company in an aggregate principal
amount in excess of $25,000,000, including such a default hereunder
with respect to Debt Securities of any other series, which default (i)
is not cured or (ii) shall have resulted in acceleration of the
maturity of such indebtedness, in either case, without such
indebtedness having been discharged, or such declaration of
acceleration having been rescinded or annulled, within a period of 10
days after there shall have been given to the Company by the Trustee,
or to the Company and the Trustee by the Holders of not less than 25%
in aggregate principal amount of the Debt Securities of that series
then outstanding, a written notice specifying such default and
requiring the Company or such Subsidiary to cause such indebtedness to
be discharged or

43

cause such acceleration to be rescinded or annulled and stating that such notice is a "Notice of Default" hereunder;

(6) the entry by a court having jurisdiction in the premises of (A) a decree or order for relief in respect of the Company, or any Significant Subsidiary of the Company in an involuntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law or (B) a decree or order adjudging the Company, or any Significant Subsidiary of the Company a bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Company, or any Significant Subsidiary of the Company under any applicable Federal or State law, or appointing a custodian, receiver, conservator, liquidator, assignee, trustee, sequestrator or other similar official of the Company, or any Significant Subsidiary of the Company or of any substantial part of the property of the Company, or any Significant Subsidiary of the Company, or ordering the winding up or liquidation of the affairs of the Company, or any Significant Subsidiary of the Company, and the continuance of any such decree or order for relief unstayed and in effect for a period of 60 consecutive days;

(7) the commencement by the Company, or any Significant Subsidiary of the Company of a voluntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law or of any other case or proceeding to be adjudicated a bankrupt or insolvent, or the consent by the Company, or any Significant Subsidiary of the Company to the entry of a decree or order for relief in respect of the Company, or any Significant Subsidiary of the Company in an involuntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law or to the commencement of any bankruptcy or insolvency case or proceeding against the Company, or any Significant Subsidiary of the Company, or the filing by the Company or any Significant Subsidiary of the Company of a petition or answer or consent seeking reorganization or relief under any applicable Federal or State law, or the consent by the Company, or any Significant Subsidiary of the Company to the filing of such petition or to the appointment of or taking possession by a custodian, receiver, conservator, liquidator, assignee, trustee, sequestrator or similar official of the Company, or any Significant Subsidiary of the Company or of any substantial part of the property of the Company, or any Significant Subsidiary of the Company, or the making by the Company, any Guarantor or any Significant Subsidiary of the Company of an assignment for the benefit of creditors, or the taking of corporate action by the Company, or any Significant Subsidiary of the Company in furtherance of any such action;

(8) in the event the Guarantors have issued Subsidiary Guarantees with respect to the Securities of such series, any Subsidiary Guarantee shall for any reason cease to be, or shall for any reason be asserted in writing by any Guarantor or the Company not to be, in full force and effect and enforceable in accordance with its terms, except to the extent contemplated by this Indenture and any such Subsidiary Guarantee; or

(9) any other Event of Default provided in or pursuant to this Indenture with respect to Securities of such series.

44

Section 502.      Acceleration of Maturity; Rescission and Annulment.

If an Event of Default with respect to Securities of any series at the time Outstanding (other than an Event of Default with respect to the Company specified in clause (7) or (8) of Section 501) occurs and is continuing, then either the Trustee or the Holders of not less than 25% in principal amount of the Outstanding Securities of such series may declare the principal of all the Securities of such series, or such lesser amount as may be provided for in the Securities of such series, and accrued and unpaid interest, if any, thereon to be due and payable immediately, by a notice in writing to the Company (and to the Trustee if given by the Holders), and upon any such declaration such principal or such lesser amount, as the case may be, and such accrued and unpaid interest shall become immediately due and payable.

If an Event of Default with respect to the Company specified in clause (7) or (8) of Section 501 occurs, all unpaid principal of and accrued interest on and any Additional Amounts payable in respect of the Outstanding Securities of that series (or such lesser amount as may be provided for in the Securities of such series) shall ipso facto become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Holder of any Security of that series.

At any time after Securities of any series have been accelerated and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter in this Article provided, the Holders of not less than a majority in principal amount of the Outstanding Securities of such series, by written notice to the Company and the Trustee, may rescind and annul such declaration and its consequences if

(1) the Company or, if applicable, any Guarantor has paid or deposited with the Trustee a sum of money sufficient to pay

(a) all overdue installments of any interest on any Securities of such series and any Coupons appertaining thereto which have become due otherwise then by such declaration of acceleration and any Additional Amounts with respect thereto,

(b) the principal of and any premium on any Securities of such series which have become due otherwise than by such declaration of acceleration and any Additional Amounts with respect thereto and, to the extent permitted by applicable law, interest thereon at the rate or respective rates, as the case may be, provided for in or with respect to such Securities, or, if no such rate or rates are so provided, at the rate or respective rates, as the case may be, of interest borne by such Securities,

(c) to the extent permitted by applicable law, interest upon installments of any interest, if any, which have become due otherwise then by such declaration of acceleration and any Additional Amounts with respect thereto at the rate or respective rates, as the case may be, provided for in or with respect to such Securities, or, if no such rate or rates are so provided, at the rate or respective rates, as the case may be, of interest borne by such Securities, and

45

(d) all sums paid or advanced by the Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel and all other amounts due the Trustee under Section 606; and

(2) all Events of Default with respect to Securities of such series other than the non-payment of the principal of, any premium and interest on, and any Additional Amounts with respect to Securities of such series which shall have become due solely by such declaration of acceleration, shall have been cured or waived as provided in Section 513.

No such rescission shall affect any subsequent default or impair any right consequent thereon.

Section 503. Collection of Indebtedness and Suits for Enforcement by Trustee.

The Company and, if applicable, each Guarantor covenants that if

(1) default is made in the payment of interest on, or any Additional Amounts payable in respect of any interest on, any Security or any Coupon appertaining thereto when such interest or Additional Amounts, as the case may be, shall have become due and payable and such default continues for a period of 30 days, or

(2) default is made in the payment of any principal of or premium, if any, on, or any Additional Amounts payable in respect of any principal of or premium, if any, on, any Security at its Maturity, or

(3) default is made in the deposit of any sinking fund payment when due,

the Company and each Guarantor, if applicable, shall, upon demand of the Trustee, pay to the Trustee, for the benefit of the Holders of such Securities and any Coupons appertaining thereto, the whole amount of money then due and payable with respect to such Securities and any Coupons appertaining thereto, with interest upon the overdue principal, any premium and, to the extent permitted by applicable law, upon any overdue installments of interest and Additional Amounts at the rate or respective rates, as the case may be, provided for in or with respect to such Securities or, if no such rate or rates are so provided, at the rate or respective rates, as the case may be, of interest borne by such Securities, and, in addition thereto, such further amount of money as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel and all other amounts due to the Trustee under Section 606.

If the Company or any Guarantor, as the case may be, fails to pay the money it is required to pay the Trustee pursuant to the preceding paragraph forthwith upon the demand of the Trustee, the Trustee, in its own name and as trustee of an express trust, may institute a judicial proceeding for the collection of the money so due and unpaid, and may prosecute such proceeding to judgment or final decree, and may enforce the same against the Company, any Guarantor or any other obligor upon such Securities and any Coupons appertaining thereto and collect the monies adjudged or decreed to be payable in the manner provided by law out of the property of the Company, [any Guarantor] or any other obligor upon such Securities and any Coupons appertaining thereto, wherever situated.

46

If an Event of Default with respect to Securities of any series occurs and is continuing, the Trustee may in its discretion proceed to protect and enforce its rights and the rights of the Holders of Securities of such series and any Coupons appertaining thereto by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or such Securities or in aid of the exercise of any power granted herein or therein, or to enforce any other proper remedy.

Section 504.    Trustee May File Proofs of Claim.

In case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceeding relative to the Company, any Guarantor or any other obligor upon the Securities or the property of the Company, any Guarantor or such other obligor or their creditors, the Trustee (irrespective of whether the principal of the Securities shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand on the Company for the payment of any overdue principal, premium, interest or Additional Amounts) shall be entitled and empowered, by intervention in such proceeding or otherwise,

(1) to file and prove a claim for the whole amount, or such lesser amount as may be provided for in the Securities of such series, of the principal and any premium, interest and Additional Amounts owing and unpaid in respect of the Securities and any Coupons appertaining thereto and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents or counsel) and of the Holders of Securities or any Coupons allowed in such judicial proceeding, and

(2) to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same;

and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Holder of Securities or any Coupons to make such payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders of Securities or any Coupons, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel and any other amounts due the Trustee under Section 606.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder of a Security or any Coupon any plan of reorganization, arrangement, adjustment or composition affecting the Securities, any Subsidiary Guarantee or Coupons or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Holder of a Security or any Coupon in any such proceeding.

47

Section 505. Trustee May Enforce Claims without Possession of
Securities or Coupons.

All rights of action and claims under this Indenture, any of the
Securities, any Subsidiary Guarantee or Coupons may be prosecuted and enforced
by the Trustee without the possession of any of the Securities or Coupons or the
production thereof in any proceeding relating thereto, and any such proceeding
instituted by the Trustee shall be brought in its own name as trustee of an
express trust, and any recovery or judgment, after provision for the payment of
the reasonable compensation, expenses, disbursements and advances of the
Trustee, its agents and counsel, shall be for the ratable benefit of each and
every Holder of a Security or Coupon in respect of which such judgment has been
recovered.

Section 506.    Application of Money Collected.

Any money collected by the Trustee pursuant to this Article shall be
applied in the following order, at the date or dates fixed by the Trustee and,
in case of the distribution of such money on account of principal, or any
premium, interest or Additional Amounts, upon presentation of the Securities or
Coupons, or both, as the case may be, and the notation thereon of the payment if
only partially paid and upon surrender thereof if fully paid:

FIRST:  To the payment of all amounts due the Trustee and any
predecessor Trustee under Section 606;

SECOND: To the payment of the amounts then due and unpaid upon
the Securities and any Coupons for principal and any premium, interest
and Additional Amounts in respect of which or for the benefit of which
such money has been collected, ratably, without preference or priority
of any kind, according to the aggregate amounts due and payable on
such Securities and Coupons for principal and any premium, interest
and Additional Amounts, respectively;

THIRD: The balance, if any, to the Person or Persons entitled
thereto.

Section 507.    Limitations on Suits.

No Holder of any Security of any series or any Coupons appertaining
thereto shall have any right to institute any proceeding, judicial or otherwise,
with respect to this Indenture, or for the appointment of a receiver or trustee,
or for any other remedy hereunder, unless

(1) such Holder has previously given written notice to the
Trustee of a continuing Event of Default with respect to the
Securities of such series;

(2) the Holders of not less than 25% in principal amount of the
Outstanding Securities of such series shall have made written request
to the Trustee to institute proceedings in respect of such Event of
Default in its own name as Trustee hereunder;

(3) such Holder or Holders have offered to the Trustee reasonable
indemnity against the costs, expenses and liabilities to be incurred
in compliance with such request;

48

(4) the Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute any such proceeding; and

(5) no direction inconsistent with such written request has been given to the Trustee during such 60-day period by the Holders of a majority in principal amount of the Outstanding Securities of such series;

it being understood and intended that no one or more of such Holders shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture, any Security or any Subsidiary Guarantee, if any, to affect, disturb or prejudice the rights of any other such Holders or Holders of Securities of any other series, or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under this Indenture, except in the manner herein provided and for the equal and ratable benefit of all such Holders.

Section 508.    Unconditional Right of Holders to Receive Principal and any Premium, Interest and Additional Amounts.

Notwithstanding any other provision in this Indenture, the Holder of any Security or Coupon shall have the right, which is absolute and unconditional, to receive payment of the principal of, any premium, if any, and (subject to Sections 305 and 307) interest, if any, on and any Additional Amounts with respect to such Security or such Coupon, as the case may be, on the respective Stated Maturity or Maturities therefor specified in such Security or Coupon (or, in the case of redemption, on the Redemption Date or, in the case of repayment at the option of such Holder if provided in or pursuant to this Indenture, on the date such repayment is due) and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

Section 509.    Restoration of Rights and Remedies.

If the Trustee or any Holder of a Security or a Coupon has instituted any proceeding to enforce any right or remedy under this Indenture and such proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Trustee or to such Holder, then and in every such case the Company, the Guarantors, the Trustee and each such Holder shall, subject to any determination in such proceeding, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Trustee and each such Holder shall continue as though no such proceeding had been instituted.

Section 510.    Rights and Remedies Cumulative.

Except as otherwise provided with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities or Coupons in the last paragraph of Section 306, no right or remedy herein conferred upon or reserved to the Trustee or to each and every Holder of a Security or a Coupon is intended to be exclusive of any other right or remedy, and every right and remedy, to the extent permitted by law, shall be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or

49

employment of any right or remedy hereunder, or otherwise, shall not, to the extent permitted by law, prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 511.    Delay or Omission Not Waiver.

No delay or omission of the Trustee or of any Holder of any Security or Coupon to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article or by law to the Trustee or to any Holder of a Security or a Coupon may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by such Holder, as the case may be.

Section 512.    Control by Holders of Securities.

The Holders of a majority in principal amount of the Outstanding Securities of any series shall have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on the Trustee with respect to the Securities of such series and any Coupons appertaining thereto, provided that

(1) such direction shall not be in conflict with any rule of law or with this Indenture or with the Securities of any series,

(2) the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such direction, and

(3) such direction is not unduly prejudicial to the rights of the other Holders of Securities of such series not joining in such action.

Section 513.    Waiver of Past Defaults.

The Holders of not less than a majority in principal amount of the Outstanding Securities of any series on behalf of the Holders of all the Securities of such series and any Coupons appertaining thereto may waive any past default hereunder with respect to such series and its consequences, except a default

(1) in the payment of the principal of, any premium or interest on, or any Additional Amounts with respect to, any Security of such series or any Coupons appertaining thereto, or

(2) in respect of a covenant or provision hereof which under Article Nine cannot be modified or amended without the consent of the Holder of each Outstanding Security of such series affected.

Upon any such waiver, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

50