Section 514.        Waiver of Stay or Extension Laws.

Each of the Company and the Guarantors covenants that (to the extent that it may lawfully do so) it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, which may affect the covenants or the performance of this Indenture; and each of the Company and the Guarantors expressly waives (to the extent that it may lawfully do so) all benefit or advantage of any such law and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

Section 515.        Undertaking for Costs.

All parties to this Indenture agree, and each Holder of any Security by his acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of any undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees and expenses, against any party litigant in such suit having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 515 shall not apply to any suit instituted by the Trustee, to any suit instituted by any Holder, or group of Holders, holding in the aggregate more than 10% in principal amount of Outstanding Securities of any series, or to any suit instituted by any Holder for the enforcement of the payment of the principal of (or premium, if any) or interest, if any, on or Additional Amounts, if any, with respect to any Security on or after the respective Stated Maturities expressed in such Security (or, in the case of redemption, on or after the Redemption Date, and, in the case of repayment, on or after the date for repayment) or for the enforcement of the right, if any, to convert or exchange any Security into Common Stock or other securities in accordance with its terms.

ARTICLE VI

THE TRUSTEE

Section 601.        Certain Rights of Trustee.

Subject to Sections 315(a) through 315(d) of the Trust Indenture Act:

(1) the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, coupon or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties;

51

(2) any request or direction of the Company mentioned herein shall be sufficiently evidenced by a Company Request or a Company Order (in each case, other than delivery of any Security, together with any Coupons appertaining thereto, to the Trustee for authentication and delivery pursuant to Section 303 which shall be sufficiently evidenced as provided therein) and any resolution of the Board of Directors may be sufficiently evidenced by a Board Resolution;

(3) whenever in the administration of this Indenture the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other evidence shall be herein specifically prescribed) may, in the absence of bad faith on its part, rely upon an Officers' Certificate;

(4) the Trustee may consult with counsel and the written advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon;

(5) the Trustee shall be under no obligation to exercise any of the rights or powers vested in it by or pursuant to this Indenture at the request or direction of any of the Holders of Securities of any series or any Coupons appertaining thereto pursuant to this Indenture, unless such Holders shall have offered to the Trustee security or indemnity reasonably acceptable to the Trustee against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction;

(6) the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, coupon or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine, during business hours and upon reasonable notice, the books, records and premises of the Company, personally or by agent or attorney; and

(7) the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

Section 602.      Notice of Defaults.

Within 90 days after the occurrence of any default hereunder with respect to the Securities of any series, the Trustee shall transmit by mail to all Holders of Securities of such series entitled to receive reports pursuant to Section 703(3), notice of such default hereunder known to the Trustee, unless such default shall have been cured or waived; provided, however, that, except in the case of a default in the payment of the principal of (or premium, if any), or interest, if any, on, or Additional Amounts or any sinking fund installment with respect to, any Security of such series, the Trustee shall be protected in withholding such notice if and so long as the board of directors, the executive

committee or a trust committee of directors and/or Responsible Officers of the Trustee in good faith determine that the withholding of such notice is in the best interest of the Holders of Securities and Coupons of such series; and provided, further, that in the case of any default of the character specified in Section 501(4) - 501(9) with respect to Securities of such series, no such notice to Holders shall be given until at least 30 days after the occurrence thereof. For the purpose of this Section, the term "default" means any event which is, or after notice or lapse of time or both would become, an Event of Default with respect to Securities of such series.

Section 603.    Not Responsible for Recitals or Issuance of Securities.

The recitals contained herein and in the Securities, except the Trustee's certificate of authentication, and in any Coupons shall be taken as the statements of the Company or the Guarantor, as the case may be, and neither the Trustee nor any Authenticating Agent assumes any responsibility for their correctness. The Trustee makes no representations as to the validity or sufficiency of this Indenture or of the Securities or the Coupons, except that the Trustee represents that it is duly authorized to execute and deliver this Indenture, authenticate the Securities and perform its obligations hereunder and that the statements made by it in a Statement of Eligibility on Form T-1 supplied to the Company are true and accurate, subject to the qualifications set forth therein. Neither the Trustee nor any Authenticating Agent shall be accountable for the use or application by the Company of the Securities or the proceeds thereof.

Section 604.    May Hold Securities.

The Trustee, any Authenticating Agent, any Paying Agent, any Security Registrar or any other Person that may be an agent of the Trustee or the Company or any Guarantor, in its individual or any other capacity, may become the owner or pledgee of Securities or Coupons and, subject to Sections 310(b) and 311 of the Trust Indenture Act, may otherwise deal with the Company or any Guarantor with the same rights it would have if it were not Trustee, Authenticating Agent, Paying Agent, Security Registrar or such other Person.

Section 605.    Money Held in Trust.

Except as provided in Section 403 and Section 1003, money held by the Trustee in trust hereunder need not be segregated from other funds except to the extent required by law and shall be held uninvested. The Trustee shall be under no liability for interest on any money received by it hereunder except as otherwise agreed in writing with the Company.

Section 606.    Compensation and Reimbursement.

The Company agrees:

(1) to pay to the Trustee from time to time reasonable compensation for all services rendered by the Trustee hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust);

53

(2) except as otherwise expressly provided herein, to reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to the Trustee's negligence or bad faith; and

(3) to indemnify the Trustee and its agents for, and to hold them harmless against, any loss, liability or expense incurred without negligence or bad faith on their part, arising out of or in connection with the acceptance or administration of the trust or trusts hereunder, including the costs and expenses of defending themselves against any claim or liability in connection with the exercise or performance of any of their powers or duties hereunder, except to the extent that any such loss, liability or expense was due to the Trustee's negligence or bad faith.

As security for the performance of the obligations of the Company under this Section, the Trustee shall have a lien prior to the Securities of any series upon all property and funds held or collected by the Trustee as such, except funds held in trust for the payment of principal of, or premium or interest on or any Additional Amounts with respect to Securities or any Coupons appertaining thereto.

Any compensation or expense incurred by the Trustee after a default specified by Section 501(7) or (8) is intended to constitute an expense of administration under any then applicable bankruptcy or insolvency law. "Trustee" for purposes of this Section 606 shall include any predecessor Trustee but the negligence or bad faith of any Trustee shall not affect the rights of any other Trustee under this Section 606.

Section 607.    Corporate Trustee Required; Eligibility.

(1) There shall at all times be a Trustee hereunder that is a Corporation, organized and doing business under the laws of the United States of America, any state thereof or the District of Columbia, eligible under Section 310(a)(1) of the Trust Indenture Act to act as trustee under an indenture qualified under the Trust Indenture Act and that has a combined capital and surplus (computed in accordance with Section 310(a)(2) of the Trust Indenture Act) of at least $50,000,000 subject to supervision or examination by Federal or state authority. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect hereinafter specified in this Article.

Section 608.    Resignation and Removal; Appointment of Successor.

(1) No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor Trustee pursuant to Section 609.

(2) The Trustee may resign at any time with respect to the Securities of one or more series by giving written notice thereof to the Company. If the instrument of acceptance by a successor

54

Trustee required by Section 609 shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to such series.

(3)    The Trustee may be removed at any time with respect to the Securities of any series by Act of the Holders of a majority in principal amount of the Outstanding Securities of such series, delivered to the Trustee and the Company.

(4)    If at any time:

(a) the Trustee shall fail to comply with the obligations imposed upon it under Section 310(b) of the Trust Indenture Act with respect to Securities of any series after written request therefor by the Company or any Holder of a Security of such series who has been a bona fide Holder of a Security of such series for at least six months, or

(b) the Trustee shall cease to be eligible under Section 607 and shall fail to resign after written request therefor by the Company or any such Holder, or

(c) the Trustee shall become incapable of acting or shall be adjudged a bankrupt or insolvent or a receiver of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case, (i) the Company, by or pursuant to a Board Resolution, may remove the Trustee with respect to all Securities or the Securities of such series, or (ii) subject to Section 315(e) of the Trust Indenture Act, any Holder of a Security who has been a bona fide Holder of a Security of such series for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee with respect to all Securities of such series and the appointment of a successor Trustee or Trustees.

(5)    If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of Trustee for any cause, with respect to the Securities of one or more series, the Company, by or pursuant to a Board Resolution, shall promptly appoint a successor Trustee or Trustees with respect to the Securities of that or those series (it being understood that any such successor Trustee may be appointed with respect to the Securities of one or more or all of such series and that at any time there shall be only one Trustee with respect to the Securities of any particular series) and shall comply with the applicable requirements of Section 609. If, within one year after such resignation, removal or incapability, or the occurrence of such vacancy, a successor Trustee with respect to the Securities of any series shall be appointed by Act of the Holders of a majority in principal amount of the Outstanding Securities of such series delivered to the Company and the retiring Trustee, the successor Trustee so appointed shall, forthwith upon its acceptance of such appointment in accordance with the applicable requirements of Section 609, become the successor Trustee with respect to the Securities of such series and to that extent supersede the successor Trustee appointed by the Company. If no successor Trustee with respect to the Securities of any series shall have been so appointed by the Company or the Holders of Securities and accepted appointment in the manner required by Section 609, any Holder of a Security who has been a bona

55

fide Holder of a Security of such series for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Securities of such series.

(6) The Company shall give notice of each resignation and each removal of the Trustee with respect to the Securities of any series and each appointment of a successor Trustee with respect to the Securities of any series by mailing written notice of such event by first-class mail, postage prepaid, to the Holders of Registered Securities, if any, of such series as their names and addresses appear in the Security Register and, if Securities of such series are issued as Bearer Securities, by publishing notice of such event once in an Authorized Newspaper in each Place of Payment located outside the United States. Each notice shall include the name of the successor Trustee with respect to the Securities of such series and the address of its Corporate Trust Office.

Section 609.      Acceptance of Appointment by Successor.

(1) Upon the appointment hereunder of any successor Trustee with respect to all Securities, such successor Trustee so appointed shall execute, acknowledge and deliver to the Company, the Guarantors and the retiring Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties hereunder of the retiring Trustee; but, on the request of the Company or such successor Trustee, such retiring Trustee, upon payment of its charges, shall execute and deliver an instrument transferring to such successor Trustee all the rights, powers and trusts of the retiring Trustee and, subject to Section 1003, shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder, subject nevertheless to its claim, if any, provided for in Section 606.

(2) Upon the appointment hereunder of any successor Trustee with respect to the Securities of one or more (but not all) series, the Company, the retiring Trustee and such successor Trustee shall execute and deliver an indenture supplemental hereto wherein each successor Trustee shall accept such appointment and which (1) shall contain such provisions as shall be necessary or desirable to transfer and confirm to, and to vest in, such successor Trustee all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series to which the appointment of such successor Trustee relates, (2) if the retiring Trustee is not retiring with respect to all Securities, shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series as to which the retiring Trustee is not retiring shall continue to be vested in the retiring Trustee, and (3) shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such Trustees co-trustees of the same trust, that each such Trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such Trustee and that no Trustee shall be responsible for any notice given to, or received by, or any act or failure to act on the part of any other Trustee hereunder, and, upon the execution and delivery of such supplemental indenture, the resignation or removal of the retiring Trustee shall become effective to the extent provided therein, such retiring Trustee shall have no further

56

responsibility for the exercise of rights and powers or for the performance of the duties and obligations vested in the Trustee under this Indenture with respect to the Securities of that or those series to which the appointment of such successor Trustee relates other than as hereinafter expressly set forth, and such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series to which the appointment of such successor Trustee relates; but, on request of the Company or such retiring Trustee, such retiring Trustee, upon payment of its charges with respect to the Securities of that or those series to which the appointment of such successor relates and subject to Section 1003 shall duly assign, transfer and deliver to such successor Trustee, to the extent contemplated by such supplemental indenture, the property and money held by such retiring Trustee hereunder with respect to the Securities of that or those series to which the appointment of such successor Trustee relates, subject to its claim, if any, provided for in Section 606.

(3) Upon request of any Person appointed hereunder as a successor Trustee, the Company shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers and trusts referred to in paragraph (1) or (2) of this Section, as the case may be.

(4) No Person shall accept its appointment hereunder as a successor Trustee unless at the time of such acceptance such successor Person shall be qualified and eligible under this Article.

Section 610.    Merger, Conversion, Consolidation or Succession to Business.

Any Corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any Corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any Corporation succeeding to all or substantially all of the bond administration portion of the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto. In case any Securities shall have been authenticated but not delivered by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may adopt such authentication and deliver the Securities so authenticated with the same effect as if such successor Trustee had itself authenticated such Securities.

Section 611.    Appointment of Authenticating Agent.

The Trustee may appoint one or more Authenticating Agents acceptable to the Company with respect to one or more series of Securities which shall be authorized to act on behalf of the Trustee to authenticate Securities of that or those series issued upon original issue, exchange, registration of transfer, partial redemption or partial repayment, or pursuant to Section 306, and Securities so authenticated shall be entitled to the benefits of this Indenture and shall be valid and obligatory for all purposes as if authenticated by the Trustee hereunder. Wherever reference is made in this Indenture to the authentication and delivery of Securities by the Trustee or the Trustee's certificate of authentication, such reference shall be deemed to include authentication and delivery on behalf of the Trustee by an Authenticating Agent and a certificate of authentication executed on behalf of the Trustee by an Authenticating Agent.

57

Each Authenticating Agent shall be acceptable to the Company and, except as provided in or pursuant to this Indenture, shall at all times be a Corporation that would be permitted by the Trust Indenture Act to act as trustee under an indenture qualified under the Trust Indenture Act, is authorized under applicable law and by its charter to act as an Authenticating Agent and has a combined capital and surplus (computed in accordance with Section 310(a)(2) of the Trust Indenture Act) of at least $50,000,000. If at any time an Authenticating Agent shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect specified in this Section.

Any Corporation into which an Authenticating Agent may be merged or converted or with which it may be consolidated, or any Corporation resulting from any merger, conversion or consolidation to which such Authenticating Agent shall be a party, or any Corporation succeeding to all or substantially all of the corporate agency or corporate trust business of an Authenticating Agent, shall be the successor of such Authenticating Agent hereunder, provided such Corporation shall be otherwise eligible under this Section, without the execution or filing of any paper or any further act on the part of the Trustee or the Authenticating Agent.

An Authenticating Agent may resign at any time by giving written notice thereof to the Trustee and the Company. The Trustee may at any time terminate the agency of an Authenticating Agent by giving written notice thereof to such Authenticating Agent and the Company. Upon receiving such a notice of resignation or upon such a termination, or in case at any time such Authenticating Agent shall cease to be eligible in accordance with the provisions of this Section, the Trustee may appoint a successor Authenticating Agent which shall be acceptable to the Company and shall (i) mail written notice of such appointment by first-class mail, postage prepaid, to all Holders of Registered Securities, if any, of the series with respect to which such Authenticating Agent shall serve, as their names and addresses appear in the Security Register, and (ii) if Securities of the series are issued as Bearer Securities, publish notice of such appointment at least once in an Authorized Newspaper in the place where such successor Authenticating Agent has its principal office if such office is located outside the United States. Any successor Authenticating Agent, upon acceptance of its appointment hereunder, shall become vested with all the rights, powers and duties of its predecessor hereunder, with like effect as if originally named as an Authenticating Agent. No successor Authenticating Agent shall be appointed unless eligible under the provisions of this Section.

The Company agrees to pay each Authenticating Agent from time to time reasonable compensation for its services under this Section. If the Trustee makes such payments, it shall be entitled to be reimbursed for such payments, subject to the provisions of Section 606.

The provisions of Sections 308, 603 and 604 shall be applicable to each Authenticating Agent.

If an Authenticating Agent is appointed with respect to one or more series of Securities pursuant to this Section, the Securities of such series may have endorsed thereon, in addition to or in lieu of the Trustee's certificate of authentication, an alternate certificate of authentication in substantially the following form:

This is one of the Securities of the series  designated herein referred
to in the within-mentioned Indenture.

FIRST UNION NATIONAL BANK,
As Trustee

By:
As Authenticating Agent

By:
Authorized Signatory

If all of the Securities of any series may not be originally  issued at
one time, and if the Trustee does not have an office  capable of  authenticating
Securities  upon  original  issuance  located  in a Place of  Payment  where the
Company  wishes to have  Securities of such series  authenticated  upon original
issuance,  the Trustee,  if so requested in writing  (which  writing need not be
accompanied by or contained in an Officers'  Certificate by the Company),  shall
appoint in accordance with this Section an Authenticating Agent having an office
in a Place of Payment  designated  by the Company with respect to such series of
Securities.

## ARTICLE VII

### HOLDERS LISTS AND REPORTS BY TRUSTEE AND COMPANY

Section 701.        Company to Furnish Trustee Names and Addresses of
                    Holders.

In  accordance  with  Section  312(a) of the  Trust  Indenture  Act, the
Company shall furnish or cause to be furnished to the Trustee

(1)  semi-annually  with respect to Securities of each series,
at least seven  Business Days prior to each  Interest  Payment Date and
the Stated Maturity Date of such  Securities,  or upon such other dates
as are set forth in or pursuant to the Board  Resolution  or  indenture
supplemental  hereto  authorizing  such series, a list, in each case in
such  form as the  Trustee  may  reasonably  require,  of the names and
addresses of Holders as of the applicable date, and

(2) at such other times as the Trustee may request in writing,
within 30 days after the receipt by the Company of any such request,  a
list of  similar  form and  content  as of a date not more than 15 days
prior to the time such list is furnished,

59

provided, however, that so long as the Trustee is the Security Registrar no such list shall be required to be furnished.

Section 702.    Preservation of Information; Communications to Holders.

The Trustee shall comply with the obligations  imposed upon it pursuant to Section 312 of the Trust Indenture Act.

Every Holder of  Securities  or Coupons,  by receiving  and holding the same,  agrees with the Company and the Trustee  that  neither the  Company,  the Trustee, any Paying Agent or any Security Registrar shall be held accountable by reason of the  disclosure of any such  information as to the names and addresses of the Holders of  Securities  in accordance  with Section  312(c) of the Trust Indenture Act, regardless of the source from which such information was derived, and that the  Trustee  shall not be held  accountable  by reason of mailing  any material  pursuant to a request made under Section 312(b) of the Trust Indenture Act.

Section 703.     Reports by Trustee.

(1) Within 60 days after May 15 of each year  commencing with the first May 15 following the first  issuance of  Securities pursuant to Section 301, if required  by  Section  313(a) of the Trust  Indenture Act,  the  Trustee  shall transmit,  pursuant to Section 313(c) of the Trust Indenture Act, a brief report dated as of such May 15 with  respect  to any of the  events  specified  in said Sections  313(a) and 313(b)(2)  which may have  occurred  since the later of the immediately preceding May 15 and the date of this Indenture.

(2) The Trustee shall  transmit the reports  required by Section 313(a) of the Trust Indenture Act at the times specified therein.

(3) Reports pursuant to this Section shall be transmitted in the manner and to the Persons required by Sections 313(c) and 313(d) of the Trust Indenture Act.

Section 704.     Reports by Company and Guarantors.

The Company and each Guarantor, as the case may be, pursuant to Section 314(a) of the Trust Indenture Act, shall:

(1) file with the Trustee, within 15 days after the Company or any  Guarantor,  as the case may be, is  required to file the same with the  Commission,  copies of the annual reports and of the  information, documents  and other  reports (or copies of such portions of any of the foregoing  as the  Commission  may from  time to time by  rules  and regulations  prescribe)  which  the  Company  or any  Guarantor  may be required to file with the Commission  pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934; or, if the Company or any Guarantor,  as the case may be, is not  required  to file  information, documents or reports pursuant to either of said Sections, then it shall file with the Trustee and the Commission,  in accordance with rules and regulations prescribed from time to time by the Commission, such of the supplementary and periodic information, documents and reports

60

which may be required pursuant to Section 13 of the Securities Exchange Act of 1934 in respect of a security listed and registered on a national securities exchange as may be prescribed from time to time in such rules and regulations;

(2) file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such additional information, documents and reports with respect to compliance by the Company or any Guarantor, as the case may be, with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

(3) transmit within 30 days after the filing thereof with the Trustee, in the manner and to the extent provided in Section 313(c) of the Trust Indenture Act, such summaries of any information, documents and reports required to be filed by the Company or any Guarantor, as the case may be, pursuant to paragraphs (1) and (2) of this Section as may be required by rules and regulations prescribed from time to time by the Commission.

## ARTICLE VIII

### CONSOLIDATION, MERGER AND SALES

Section 801.        Company May Consolidate, Etc., Only on Certain Terms.

The Company shall not, in any transaction or series of related transactions, consolidate with or merge into any Person or sell, assign, transfer, lease or otherwise convey all or substantially all its properties and assets to any Person, unless:

(1) either (A) the Company shall be the continuing Person (in the case of a merger), or (B) the successor Person (if other than the Company) formed by such consolidation or into which the Company is merged or which acquires by sale, assignment, transfer, lease or other conveyance all or substantially all the properties and assets of the Company shall be a Corporation organized and existing under the laws of the United States of America, any state thereof or the District of Columbia and shall expressly assume, by an indenture (or indentures, if at such time there is more than one Trustee) supplemental hereto, executed by such successor Corporation and delivered to the Trustee, in form satisfactory to the Trustee, the due and punctual payment of the principal of, any premium and interest on, and any Additional Amounts with respect to, all the Outstanding Securities and the due and punctual performance and observance of every obligation in this Indenture and the Outstanding Securities on the part of the Company to be performed or observed and shall provide for conversion or exchange rights in accordance with the provisions of the Securities of any series that are convertible or exchangeable into Common Stock or other securities;

(2) immediately after giving effect to such transaction, no Event of Default, and no event which, after notice or lapse of time, or both, would become an Event of Default, shall have occurred and be continuing; and

(3) either the Company or the successor Person shall have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that such consolidation, merger, sale, assignment, transfer, lease or other conveyance and, if a supplemental indenture is required in connection with such transaction, such supplemental indenture comply with this Article and that all conditions precedent herein provided for relating to such transaction have been complied with.

Section 802.    Successor Person Substituted for Company.

Upon any consolidation by the Company with or merger of the Company into any other Person or any sale, assignment, transfer, lease or conveyance of all or substantially all of the properties and assets of the Company to any Person in accordance with Section 801, the successor Person formed by such consolidation or into which the Company is merged or to which such sale, assignment, transfer, lease or other conveyance is made shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture with the same effect as if such successor Person had been named as the Company herein; and thereafter, except in the case of a lease, the predecessor Person shall be released from all obligations and covenants under this Indenture, the Securities and the Coupons.

ARTICLE IX

SUPPLEMENTAL INDENTURES

Section 901.    Supplemental Indentures without Consent of Holders.

Without the consent of any Holders of Securities or Coupons, the Company, the Guarantors (when authorized by or pursuant to their respective Board Resolutions) and the Trustee, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Trustee, for any of the following purposes:

(1) to evidence the succession of another Person to the Company or any Guarantor, and the assumption by any such successor of the covenants of the Company or any Guarantor contained herein and in the Securities;

(2) to add to the covenants of the Company for the benefit of the Holders of all or any series of Securities (as shall be specified in such supplemental indenture or indentures) or to surrender any right or power herein conferred upon the Company;

(3) to add to or change any of the provisions of this Indenture to provide that Bearer Securities may be registrable as to principal, to change or eliminate any restrictions on the payment of principal of, any premium or interest on or any Additional Amounts with respect to Securities, to permit Bearer Securities to be issued in exchange for Registered Securities, to permit Bearer Securities to be exchanged for Bearer Securities of other authorized denominations or to permit or facilitate the issuance of Securities in uncertificated

62

form, provided any such action shall not adversely affect the interests of the Holders of Securities of any series or any Coupons appertaining thereto;

(4) to establish the form or terms of Securities of any series and any Coupons appertaining thereto as permitted by Sections 201 and 301;

(5) to evidence and provide for the acceptance of appointment hereunder by a successor Trustee with respect to the Securities of one or more series and to add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, pursuant to the requirements of Section 609;

(6) to cure any ambiguity or to correct or supplement any provision herein which may be defective or which may be inconsistent with any other provision herein, or to make any other provisions with respect to matters or questions arising under this Indenture which shall not adversely affect the interests of the Holders of Securities of any series then Outstanding or any Coupons appertaining thereto in any material respect;

(7) to add to, delete from or revise the conditions, limitations and restrictions on the authorized amount, terms or purposes of issue, authentication and delivery of Securities, as herein set forth;

(8) to add any additional Events of Default with respect to all or any series of Securities (as shall be specified in such supplemental indenture);

(9) to supplement any of the provisions of this Indenture to such extent as shall be necessary to permit or facilitate the defeasance and discharge of any series of Securities pursuant to Article Four, provided that any such action shall not adversely affect the interests of any Holder of a Security of such series and any Coupons appertaining thereto or any other Security or Coupon in any material respect;

(10) to secure the Securities pursuant to Section 1006 or otherwise;

(11) to make provisions with respect to conversion or exchange rights of Holders of Securities of any series;

(12) to amend or supplement any provision contained herein or in any supplemental indenture or in any Securities (which amendment or supplement may apply to one or more series of Securities or to one or more Securities within any series as specified in such supplemental indenture or indentures), provided that such amendment or supplement does not apply to any Outstanding Security issued prior to the date of such supplemental indenture and entitled to the benefits of such provision; or

(13) to add new Guarantors.

63

Section 902.        Supplemental Indentures with Consent of Holders.

With the consent of the Holders of not less than a majority in principal amount of the Outstanding Securities of each series affected by such supplemental indenture, by Act of said Holders delivered to the Company, the Guarantors, if any, and the Trustee, the Company and the Guarantors (when authorized by or pursuant to their respective Board Resolutions), and the Trustee may enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of the Securities of such series or of modifying in any manner the rights of the Holders of Securities of such series under this Indenture; provided, that no such supplemental indenture, without the consent of the Holder of each Outstanding Security affected thereby, shall

(1) change the Stated Maturity of the principal of, or premium, if any, or any installment of interest, if any, on or any Additional Amounts, if any, with respect to, any Security, or reduce the principal amount thereof or the rate (or modify the calculation of such rate) of interest thereon or any Additional Amounts with respect thereto, or any premium payable upon the redemption thereof or otherwise, or change the obligation of the Company to pay Additional Amounts pursuant to Section 1004, or reduce the amount of the principal of any Original Issue Discount Security that would be due and payable upon a declaration of acceleration of the Maturity thereof pursuant to Section 502 or the amount thereof provable in bankruptcy pursuant to Section 504, adversely affect the right of repayment at the option of any Holder as contemplated by Article Thirteen, or change the Place of Payment where or the Currency in which the principal of, any premium or interest on, or any Additional Amounts with respect to any Security is payable, or impair the right to institute suit for the enforcement of any such payment on or after the Stated Maturity thereof (or, in the case of redemption, on or after the Redemption Date or, in the case of repayment at the option of the Holder, on or after the date for repayment), or

(2) reduce the percentage in principal amount of the Outstanding Securities of any series, the consent of whose Holders is required for any such supplemental indenture, or the consent of whose Holders is required for any waiver (of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences) provided for in this Indenture, or reduce the requirements of Section 1504 for quorum or voting, or

(3) modify any of the provisions of this Section, Section 513 or Section 1010, except to increase any such percentage or to provide that certain other provisions of this Indenture cannot be modified or waived without the consent of the Holder of each Outstanding Security affected thereby, or

(4) make any change that adversely affects the right, if any, to convert or exchange any Security for Common Stock or other securities in accordance with its terms.

A supplemental indenture which changes or eliminates any covenant or other provision of this Indenture which shall have been included expressly and solely for the benefit of one or more particular series of Securities, or which modifies the rights of the Holders of Securities of such series with

respect to such covenant or other provision, shall be deemed not to affect the rights under this Indenture of the Holders of Securities of any other series.

It shall not be necessary for any Act of Holders of Securities under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof

Section 903.    Execution of Supplemental Indentures.

As a condition to executing, or accepting the additional trusts created by, any supplemental indenture permitted by this Article or the modifications thereby of the trust created by this Indenture, the Trustee shall be entitled to receive, and (subject to Sections 315(a) through 315(d) of the Trust Indenture Act) shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture which affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Section 904.    Effect of Supplemental Indentures.

Upon the execution of any supplemental indenture under this Article, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of a Security theretofore or thereafter authenticated and delivered hereunder and of any Coupon appertaining thereto shall be bound thereby.

Section 905.    Reference in Securities to Supplemental Indentures.

Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to this Article may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Company shall so determine, new Securities of any series so modified as to conform, in the opinion of the Trustee and the Company, to any such supplemental indenture may be prepared and executed by the Company and authenticated and delivered by the Trustee in exchange for Outstanding Securities of such series.

Section 906.    Conformity with Trust Indenture Act.

Every supplemental indenture executed pursuant to this Article shall conform to the requirements of the Trust Indenture Act as then in effect.

Section 907.    Notice of Supplemental Indenture .

Promptly after the execution by the Company and the Trustee of any supplemental indenture pursuant to Section 902, the Company shall transmit to the Holders of Outstanding Securities of any series affected thereby a notice setting forth the substance of such supplemental indenture.

ARTICLE X

COVENANTS

Section 1001. Payment of Principal, Premium, Interest and Additional Amounts.

The Company covenants and agrees for the benefit of the Holders of the Securities of each series that it will duly and punctually pay the principal of, any premium and interest on and any Additional Amounts with respect to the Securities of such series in accordance with the terms thereof, any Coupons appertaining thereto and this Indenture. Any interest due on any Bearer Security on or before the Maturity thereof, and any Additional Amounts payable with respect to such interest, shall be payable only upon presentation and surrender of the Coupons appertaining thereto for such interest as they severally mature.

Section 1002.    Maintenance of Office or Agency.

The Company shall maintain in each Place of Payment for any series of Securities an Office or Agency where Securities of such series (but not Bearer Securities, except as otherwise provided below, unless such Place of Payment is located outside the United States) may be presented or surrendered for payment, where Securities of such series may be surrendered for registration of transfer or exchange, where Securities of such series that are convertible or exchangeable may be surrendered for conversion or exchange, and where notices and demands to or upon the Company or Guarantor in respect of the Securities of such series or any Subsidiary Guarantee relating thereto and this Indenture may be served. If Securities of a series are issuable as Bearer Securities, the Company shall maintain, subject to any laws or regulations applicable thereto, an Office or Agency in a Place of Payment for such series which is located outside the United States where Securities of such series and any Coupons appertaining thereto may be presented and surrendered for payment; provided, however, that if the Securities of such series are listed on the London Stock Exchange or the Luxembourg Stock Exchange or any other stock exchange located outside the United States and such stock exchange shall so require, the Company shall maintain a Paying Agent in London, Luxembourg or any other required city located outside the United States, as the case may be, so long as the Securities of such series are listed on such exchange. The Company will give prompt written notice to the Trustee of the location, and any change in the location, of such Office or Agency. If at any time the Company shall fail to maintain any such required Office or Agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the Corporate Trust Office of the Trustee, except that Bearer Securities of such series and any Coupons appertaining thereto may be presented and surrendered for payment at the place specified for the purpose with respect to such Securities as provided in or pursuant to this Indenture, and the Company and each Guarantor hereby appoints the Trustee as its agent to receive all such presentations, surrenders, notices and demands.

Except as otherwise provided in or pursuant to this Indenture, no payment of principal, premium, interest or Additional Amounts with respect to Bearer Securities shall be made at any Office or Agency in the United States or by check mailed to any address in the United States or by transfer to an account maintained with a bank located in the United States; provided, however, if amounts owing with respect to any Bearer Securities shall be payable in Dollars, payment of principal

66

of, any premium or interest on and any Additional Amounts with respect to any such Security may be made at the Corporate Trust Office of the Trustee or any Office or Agency designated by the Company in the Borough of Manhattan, The City of New York, if (but only if) payment of the full amount of such principal, premium, interest or Additional Amounts at all offices outside the United States maintained for such purpose by the Company in accordance with this Indenture is illegal or effectively precluded by exchange controls or other similar restrictions.

The Company may also from time to time designate one or more other Offices or Agencies where the Securities of one or more series may be presented or surrendered for any or all such purposes and may from time to time rescind such designations; provided, however, that no such designation or rescission shall in any manner relieve the Company of its obligation to maintain an Office or Agency in each Place of Payment for Securities of any series for such purposes. The Company shall give prompt written notice to the Trustee of any such designation or rescission and of any change in the location of any such other Office or Agency. Unless otherwise provided in or pursuant to this Indenture, the Company hereby designates as the Place of Payment for each series of Securities the Borough of Manhattan, The City of New York, and initially appoints the Corporate Trust Office of the Trustee as the Company's Office or Agency in the Borough of Manhattan, The City of New York as the Company's Office or Agency in the Borough of Manhattan, The City of New York for such purpose and as Security Registrar. The Company may subsequently appoint a different Office or Agency in the Borough of Manhattan, The City of New York and a different Security Registrar for the Securities of any series.

Unless otherwise specified with respect to any Securities pursuant to Section 301, if and so long as the Securities of any series (i) are denominated in a Foreign Currency or (ii) may be payable in a Foreign Currency, or so long as it is required under any other provision of this Indenture, then the Company will maintain with respect to each such series of Securities, or as so required, at least one exchange rate agent.

Section 1003.    Money for Securities Payments to Be Held in Trust.

If the Company shall at any time act as its own Paying Agent with respect to any series of Securities, it shall, on or before each due date of the principal of, any premium or interest on, or any Additional Amounts with respect to any of the Securities of such series, segregate and hold in trust for the benefit of the Persons entitled thereto a sum in the Currency or Currencies in which the Securities of such series are payable (except as otherwise specified pursuant to Section 301 for the Securities of such series) sufficient to pay the principal or any premium, interest or Additional Amounts so becoming due until such sums shall be paid to such Persons or otherwise disposed of as herein provided, and shall promptly notify the Trustee of its action or failure so to act.

Whenever the Company shall have one or more Paying Agents for any series of Securities, it shall, on or prior to each due date of the principal of, or any premium or interest on or any Additional Amounts with respect to any Securities of such series, deposit with any Paying Agent a sum (in the Currency or Currencies described in the preceding paragraph) sufficient to pay the principal or any premium, interest or Additional Amounts so becoming due, such sum to be held in trust for the benefit of the Persons entitled thereto, and (unless such Paying Agent is the Trustee) the Company will promptly notify the Trustee of its action or failure so to act.

67

The Company shall cause each Paying Agent for any series of Securities other than the Trustee to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee, subject to the provisions of this Section, that such Paying Agent shall:

(1) hold all sums held by it for the payment of the principal of, any premium or interest on or any Additional Amounts with respect to Securities of such series in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as provided in or pursuant to this Indenture;

(2) give the Trustee notice of any default by the Company or any Guarantor, if any, (or any other obligor upon the Securities of such series) in the making of any payment of principal, any premium or interest on or any Additional Amounts with respect to the Securities of such series; and

(3) at any time during the continuance of any such default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such Paying Agent.

The Company may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, pay, or by Company Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Company or such Paying Agent, such sums to be held by the Trustee upon the same terms as those upon which such sums were held by the Company or such Paying Agent; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such sums.

Except as otherwise provided herein or pursuant hereto, any money deposited with the Trustee or any Paying Agent, or then held by the Company, in trust for the payment of the principal of, any premium or interest on or any Additional Amounts with respect to any Security of any series or any Coupon appertaining thereto and remaining unclaimed for two years after such principal or such premium or interest or Additional Amount shall have become due and payable shall be paid to the Company on Company Request, or (if then held by the Company) shall be discharged from such trust; and the Holder of such Security or any Coupon appertaining thereto shall thereafter, as an unsecured general creditor, look only to the Company for payment thereof, and all liability of the Trustee or such Paying Agent with respect to such trust money, and all liability of the Company as trustee thereof, shall thereupon cease; provided, however, that the Trustee or such Paying Agent, before being required to make any such repayment, may, not later than 60 days after the Company's request for such repayment, at the expense of the Company cause to be published once, in an Authorized Newspaper in each Place of Payment for such series or to be mailed to Holders of Registered Securities of such series, or both, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication or mailing nor shall it be later than two years after such principal and any premium or interest or Additional Amounts shall have become due and payable, any unclaimed balance of such money then remaining will be repaid to the Company.

68

Section 1004.    Additional Amounts.

If any  Securities  of a series  provide for the payment of  Additional
Amounts,  the  Company  agrees to pay to the Holder of any such  Security or any
Coupon  appertaining  thereto  Additional  Amounts as provided in or pursuant to
this  Indenture  or  such  Securities.  Whenever  in  this  Indenture  there  is
mentioned,  in any  context,  the payment of the  principal of or any premium or
interest  on, or in respect of, any  Security of any  series or any Coupon or the
net  proceeds  received on the sale or  exchange of any  Security of any  series,
such  mention  shall be deemed to include mention of the payment of  Additional
Amounts  provided  by the terms of such  series  established  hereby or pursuant
hereto to the extent that,  in such  context,  Additional  Amounts are,  were or
would be payable in respect thereof  pursuant to such terms, and express mention
of the payment of Additional  Amounts (if  applicable)  in any provision  hereof
shall not be  construed  as  excluding  Additional  Amounts in those  provisions
hereof where such express mention is not made.

Except as  otherwise  provided in or pursuant to this  Indenture or the
Securities of any series,  if the Securities of a series provide for the payment
of Additional Amounts, at least 10 days prior to the first Interest Payment Date
with respect to such Securities  (or if the  Securities of such series
shall not bear interest  prior to Maturity,  the first day on which a payment of
principal  is  made),  and at least 10 days  prior to each  date of  payment  of
principal  or interest if there has been any  change with  respect to the matters
set  forth in the  below-mentioned  Officers'  Certificate,  the  Company  shall
furnish to the Trustee and the principal Paying Agent or Paying Agents, if other
than the Trustee,  an  Officers'  Certificate  instructing  the Trustee and such
Paying Agent or Paying Agents  whether such payment of principal of and premium,
if any, or interest,  if any, on the  Securities of such series shall be made to
Holders of Securities of such series or the Coupons appertaining thereto who are
United  States  Aliens  without  withholding  for or on  account  of  any  tax,
assessment  or other  governmental  charge  described in the  Securities of such
series.  If  any  such  withholding  shall  be  required,  then  such  Officers'
Certificate shall specify by country the amount, if any, required to be withheld
on such  payments to such  Holders of  Securities  or  Coupons,  and the Company
agrees  to pay to the  Trustee or such  Paying  Agent the  Additional  Amounts
required by the terms of such Securities. The Company covenants to indemnify the
Trustee and any Paying Agent for, and to hold them harmless  against,  any loss,
liability or expense  reasonably  incurred  without  negligence  or bad faith on
their part arising out of or in connection  with actions taken or omitted by any
of them in  reliance on any  Officers'  Certificate  furnished  pursuant to this
Section.

Section 1005.    Corporate Existence.

Subject to Article Eight,  the Company shall do or cause to be done all
things necessary to preserve and keep in full force and effect (i) the corporate
existence of the Company,  (ii) the existence (corporate or other) of Subsidiary
of the  Company  and (iii) the  rights  (charter  and  statutory),  licenses  and
franchises of the Company and each of its Subsidiaries;  provided,  however, that
the Company shall not be required to preserve the existence (corporate or other)
of any of its  Subsidiaries  or any such  right,  license  or  franchise  of the
Company  or of its  Subsidiaries  if  the  Board  of  Directors  of  the  Company
determines that the  preservation  thereof is no longer desirable in the conduct
of the  business of the Company and its  Subsidiaries  taken as a whole and that
the loss thereof is not disadvantageous in any material respect to the Holders.

69

Section 1006.    Limitation on Liens.

The Company will not, and will not permit any Restricted Subsidiary to, directly or indirectly create, incur, assume, guarantee or otherwise become liable for any Debt secured by a Lien on any Principal Property or by a Lien on any Debt or shares of capital stock of, or other ownership interests in, any Restricted Subsidiary ("Secured Debt") (whether such Principal Property, Debt, shares of capital stock or ownership interests are owned or outstanding at the date of the indenture or thereafter acquired or issued, as the case may be) if, immediately after giving effect thereto, the sum, without duplication, of (a) the aggregate principal amount of all Secured Debt (other than Excluded Debt (as defined below)) and (b) the aggregate amount of all Attributable Debt in respect of Sale and Leaseback Transactions (other than Excluded Transactions (as defined below)) would exceed 10% of the Company's Consolidated Net Tangible Assets as of the date of determination, unless the Company provides, concurrently with or prior to the creation, incurrence, assumption or guarantee of such Secured Debt, that the securities, including the notes, shall be secured equally and ratably with (or, at the option of the Company, prior to) such Secured Debt (but only for so long as such Secured Debt is so secured).

The provisions set forth in the immediately preceding paragraph shall not apply to Debt secured by the following Liens ("Excluded Debt"):

(1)    Liens existing as of the date of the indenture;

(2) Liens on any Principal Property, Debt, shares of capital stock or other ownership interests existing at the time of acquisition thereof (whether by merger, consolidation, acquisition of stock or assets or otherwise) by the Company or any of the Company's Subsidiaries;

(3) Liens upon or with respect to any Principal Property acquired, constructed or improved by the Company or any of the Company's Subsidiaries after the date of the indenture which (A) are created, incurred or assumed contemporaneously with, or within 360 days after, the latest to occur of the acquisition (whether by merger, consolidation, acquisition of stock or assets or otherwise), or the completion of construction or improvement, as the case may be, of such Principal Property, and (B) secure Debt incurred or assumed to finance all or any part of the purchase price of such Principal Property or the cost of such construction or improvement, as the case may be, provided that such Liens are limited to the Principal Property so acquired, constructed or improved and the amount of such Debt does not exceed the purchase price of such acquisition (determined as of the date of such acquisition) or the cost of such construction or improvement (determined as of the date of completion of such construction or improvement), as the case may be, and provided, further, that for purposes of this clause (3), the date of acquisition of any Principal Property acquired by merger, consolidation or acquisition of stock shall be the effective date of such merger or consolidation or the date such stock acquisition is completed, as the case may be;

(4) Liens originally entered into by a Person other than the Company or one of the Company's Subsidiaries and existing at the time such Person was acquired by the Company

70

or any of the Company's Subsidiaries (whether by merger, consolidation, acquisition of stock or otherwise);

(5) Liens on the property of any Subsidiary securing Debt owing by such Subsidiary to the Company or to any other Subsidiary;

(6) Liens in favor of governmental bodies to secure advance or progress payments pursuant to any contract or statute and Liens in favor of governmental bodies incurred in connection with industrial revenue, pollution control, private activity bond or similar financing;

(7) Liens or deposits in connection with workers' compensation, unemployment insurance and other social security legislation and deposits securing liability to insurance carriers under insurance or self-insurance arrangements;

(8) Liens for taxes, governmental assessments or similar governmental charges or levies not yet due or delinquent, or which can thereafter be paid without penalty or which are being contested by the Company in good faith and by appropriate action;

(9) statutory liens and landlords', carriers', workers', warehousemen's, mechanics', suppliers', materialmen's, repairmen's and other similar Liens arising by operation of law in the ordinary course of business and with respect to amounts not yet delinquent or which are being contested by the Company in good faith and by appropriate action;

(10) Liens or deposits to secure (a) performance in connection with bids, tenders, contracts or leases to which the Company or a Subsidiary is a party and which Liens and deposits do not secure Debt or (b) surety, stay, appeal, indemnity, customs or performance bonds which do not involve Debt;

(11) easements, exceptions, reservations or similar encumbrances on real property that do not materially interfere with the operation of such property or impair the value of such property for the purposes for which such property is or may reasonably be expected to be used by the Company or the Company's Subsidiaries;

(12) Liens created in connection with a project financed with, and created to secure indebtedness or lease obligations substantially related to (a) the acquisition of assets not previously owned by the Company or any Subsidiary, or (b) the financing of a project involving the development or expansion of the Company's properties or properties of any Subsidiary, as to which the obligee with respect to such indebtedness or obligation has no recourse to the Company or any Subsidiary or any of the Company's assets or any assets of any Subsidiary other than the assets which were acquired with the proceeds of such transaction or the project financed with the proceeds of such transaction (and the proceeds thereof); and

(13) Liens for the sole purpose of extending, renewing or replacing in whole or in part the Debt secured thereby referred to in the foregoing clauses (1) through (12), inclusive,

71

or in this clause (13); provided, however, that the Debt excluded pursuant to this clause (13) shall be excluded only in an amount not to exceed the principal amount of Debt so secured at the time of such extension, renewal or replacement (together with any premium, fees or expenses (other than interest) payable in connection with any such replacement, extension or renewal), and that such extension, renewal or replacement shall be limited to all or a part of the Principal Property, Debt, shares of capital stock or other ownership interests, as the case may be, subject to the Lien so extended, renewed or replaced.

Section 1007.    Limitation on Sale and Leaseback Transactions.

The Company will not, and will not permit any of the Company's Restricted Subsidiaries to directly or indirectly, enter into, assume, guarantee or otherwise become liable with respect to any Sale and Leaseback Transaction involving any Principal Property or portion thereof (whether such Principal Property is owned at the date of the indenture or thereafter acquired), if, immediately after giving effect thereto, the sum, without duplication, of (a) the aggregate principal amount of all Secured Debt (other than Excluded Debt) and (b) the aggregate amount of all Attributable Debt in respect of Sale and Leaseback Transactions (other than Excluded Transactions) would exceed 10% of the Company's Consolidated Net Tangible Assets as of the date of determination.

The provisions set forth in the immediately preceding paragraph shall not apply to any Sale and Leaseback Transaction (an "Excluded Transaction") if:

(1) within 180 days from the date of the sale of the Principal Property (or portion thereof) involved in such Sale and Leaseback Transaction, the Company or such Subsidiary applies an amount not less than the net proceeds of the sale of the Principal Property (or portion thereof) sold pursuant to such Sale and Leaseback Transaction and to retire (other than pursuant to a payment at maturity, a mandatory sinking fund payment or any other mandatory repurchase, redemption, prepayment or retirement) Funded Debt of the Company or any Subsidiary (other than Funded Debt held by the Company or any Subsidiary of the Company and Funded Debt of the Company which is subordinate in right of payment to the securities), or to purchase other property having a fair value (as determined by the Board of Directors by Board Resolution) at least equal to the net proceeds of the sale (as determined by the Board of Directors by Board Resolution) of the Principal Property (or portion thereof) sold in such Sale and Leaseback Transaction and which other property constitutes a Principal Property (or portion thereof);

(2) such Sale and Leaseback Transaction occurs within 360 days after the latest to occur of the date of acquisition (whether by merger, consolidation, acquisition of stock or assets or otherwise) by the Company or such Subsidiary or the completion of construction of the Principal Property (or portion thereof) sold pursuant to such transaction;

(3) such Sale and Leaseback Transaction is between the Company and any Subsidiary or between any Subsidiaries;

(4) at the time such Sale and Leaseback Transaction is entered into, the term of the related lease (including any renewals thereof as the option of the lessor or the lessee) to

72

the Company or such Subsidiary of the Principal Property (or portion thereof) sold pursuant to such transaction is three years or less;

(5) such Sale and Leaseback Transaction is a transaction in which the relevant Principal Property (or portion thereof) is sold to and leased back from a government or governmental body in connection with industrial revenue, pollution control, private activity bond or similar financing;

(6) such Sale and Leaseback Transaction was entered into by the Company or one of the Company's Subsidiaries prior to the date of the indenture;

(7) in the case of a Sale and Leaseback Transaction originally entered into by a Person other than the Company or one of the Company's Subsidiaries, such Sale and Leaseback Transaction was existing at the time such Person was acquired by the Company or any of the Company's Subsidiaries (whether by merger, consolidation, acquisition of stock or otherwise); or

(8) such Sale and Leaseback Transaction is for the sole purpose of extending, renewing or replacing in whole or in part the Liens referred to in the clauses (1), (2) and (3) under "Covenants of the Company -- Limitations on Liens" provided, however, that the net proceeds of the sale of the Principal Property sold pursuant to such Sale and Leaseback Transaction excluded pursuant to this clause (10) shall be excluded only in an amount not to exceed the principal amount of Debt so secured by such Liens at the time of such extension, renewal or replacement (together with any premium, fee or expenses (other than interest) payable in connection with any such replacement, extension or renewal), and that such extension, renewal or replacement shall be limited to all or a part of the Principal Property, Debt, shares of capital stock or other ownership interests, as the case may be, subject to the Liens so extended, renewed or replaced.

Section 1008.       Maintenance of Properties.

The Company will, and will cause each Restricted Subsidiary to, cause all its properties used or useful in the conduct of its business to be maintained and kept in good condition, repair and working order and supplied with all necessary equipment and will cause to be made all necessary repairs, renewals, replacements, betterments and improvements thereof, all as in the judgment of the Company may be necessary so that the business carried on in connection therewith may be properly and advantageously conducted at all times; provided, however, that nothing in this Section shall prevent the Company or any Restricted Subsidiary from discontinuing the operation and maintenance of any of their respective properties if such discontinuance is, in the judgment of the Board of Directors of the Company or of any Restricted Subsidiary, as the case may be, desirable in the conduct of its business.

Section 1009.       Payment of Taxes and Other Claims.

The Company will, and will cause each Restricted Subsidiary to, pay or discharge or cause to be paid or discharged, before the same shall become delinquent, (1) all material taxes, assessments and governmental charges levied or imposed upon it or upon its income, profits or property, and

73

(2) all lawful claims for labor, materials and supplies which, if unpaid, might by law become a lien upon its property; provided, however, that neither the Company nor any Restricted Subsidiary shall be required to pay or discharge or cause to be paid or discharged any such material tax, assessment, charge or claim whose amount, applicability or validity is being contested in good faith by appropriate action.

Section 1010.    Waiver of Certain Covenants.

The Company may omit in any particular instance to comply with any term, provision or condition set forth in Sections 1002 to 1009, inclusive, with respect to the Securities of any series and, if expressly provided pursuant to Section 301(18), any additional covenants applicable to the Securities of such series if before the time for such compliance the Holders of at least a majority in principal amount of the Outstanding Securities of such series, by Act of such Holders, either shall waive such compliance in such instance or generally shall have waived compliance with such term, provision or condition, but no such waiver shall extend to or affect such term, provision or condition except to the extent so expressly waived, and, until such waiver shall become effective, the obligations of the Company and the duties of the Trustee in respect of any such term, provision or condition shall remain in full force and effect.

Section 1011.    Company Statement as to Compliance.

The Company shall deliver to the Trustee, within 120 days after the end of each fiscal year, a written statement (which need not be contained in or accompanied by an Officers' Certificate) signed by the principal executive officer, the principal financial officer or the principal accounting officer of the Company and the Guarantors, stating whether or not, to the best of his or her knowledge, the Company and each of the Guarantors are in default in the performance and observance of any of the terms, provisions and conditions of this Indenture and if the Company and each of the Guarantors shall be in default, specifying all such defaults and the nature and status thereof of which he or she may have knowledge.

Section 1012.    Calculation of Original Issue Discount.

The Company shall file with the Trustee promptly at the end of each calendar year (i) a written notice specifying the amount of original issue discount (including daily rates and accrual periods) accrued on Outstanding Securities as of the end of such year and (ii) such other specific information relating to such original issue discount as may then be relevant under the Internal Revenue Code of 1986, as amended from time to time.

ARTICLE XI

REDEMPTION OF SECURITIES

Section 1101.    Applicability of Article.

74

Redemption of Securities of any series at the option of the Company as permitted or required by the terms of such Securities shall be made in accordance with the terms of such Securities and (except as otherwise provided herein or pursuant hereto) this Article.

Section 1102.    Election to Redeem; Notice to Trustee.

The election of the Company to redeem any Securities shall be evidenced by or pursuant to a Board Resolution. In case of any redemption at the election of the Company of less than all of the Securities of any series, the Company shall, at least 60 days prior to the Redemption Date fixed by the Company (unless a shorter notice shall be satisfactory to the Trustee), notify the Trustee of such Redemption Date and of the principal amount of Securities of such series to be redeemed and, in the event that the Company shall determine that the Securities of any series to be redeemed shall be selected from Securities of such series having the same issue date, interest rate or interest rate formula, Stated Maturity and other terms (the "Equivalent Terms"), the Company shall notify the Trustee of such Equivalent Terms.

Section 1103.    Selection by Trustee of Securities to be Redeemed.

If less than all of the Securities of any series are to be redeemed or if less than all of the Securities of any series with Equivalent Terms are to be redeemed, the particular Securities to be redeemed shall be selected not more than 60 days prior to the Redemption Date by the Trustee from the Outstanding Securities of such series or from the Outstanding Securities of such series with Equivalent Terms, as the case may be, not previously called for redemption, by such method as the Trustee shall deem fair and appropriate and which may provide for the selection for redemption of portions of the principal amount of Registered Securities of such series; provided, however, that no such partial redemption shall reduce the portion of the principal amount of a Security of such series not redeemed to less than the minimum denomination for a Security of such series established herein or pursuant hereto.

The Trustee shall promptly notify the Company and the Security Registrar (if other than itself) in writing of the Securities selected for redemption and, in the case of any Securities selected for partial redemption, the principal amount thereof to be redeemed.

For all purposes of this Indenture, unless the context otherwise requires, all provisions relating to the redemption of Securities shall relate, in the case of any Securities redeemed or to be redeemed only in part, to the portion of the principal of such Securities which has been or is to be redeemed.

Unless otherwise specified in or pursuant to this Indenture or the Securities of any series, if any Security selected for partial redemption is converted or exchanged for Common Stock or other securities in part before termination of the conversion or exchange right with respect to the portion of the Security so selected, the converted or exchanged portion of such Security shall be deemed (so far as may be) to be the portion selected for redemption. Securities which have been converted or exchanged during a selection of Securities to be redeemed shall be treated by the Trustee as Outstanding for the purpose of such selection.

75

Section 1104.    Notice of Redemption.

Notice of redemption shall be given in the manner provided in Section 106, not less than 30 nor more than 60 days prior to the Redemption Date, unless a shorter period is specified in the Securities to be redeemed, to the Holders of Securities to be redeemed. Failure to give notice by mailing in the manner herein provided to the Holder of any Registered Securities designated for redemption as a whole or in part, or any defect in the notice to any such Holder, shall not affect the validity of the proceedings for the redemption of any other Securities or portion thereof.

Any notice that is mailed to the Holder of any Registered Securities in the manner herein provided shall be conclusively presumed to have been duly given, whether or not such Holder receives the notice.

All notices of redemption shall state:

(1) the Redemption Date,

(2) the Redemption Price,

(3) if less than all Outstanding Securities of any series are to be redeemed, the identification (and, in the case of partial redemption, the principal amount) of the particular Security or Securities to be redeemed,

(4) in case any Security is to be redeemed in part only, the notice which relates to such Security shall state that on and after the Redemption Date, upon surrender of such Security, the Holder of such Security will receive, without charge, a new Security or Securities of authorized denominations for the principal amount thereof remaining unredeemed,

(5) that, on the Redemption Date, the Redemption Price shall become due and payable upon each such Security or portion thereof to be redeemed, and, if applicable, that interest thereon shall cease to accrue on and after said date,

(6) the place or places where such Securities, together (in the case of Bearer Securities) with all Coupons appertaining thereto, if any, maturing after the Redemption Date, are to be surrendered for payment of the Redemption Price and any accrued interest and Additional Amounts pertaining thereto,

(7) that the redemption is for a sinking fund, if such is the case,

(8) that, unless otherwise specified, in such notice, Bearer Securities of any series, if any, surrendered for redemption must be accompanied by all Coupons maturing subsequent to the date fixed for redemption or the amount of any such missing Coupon or Coupons will be deducted from the Redemption Price, unless security or indemnity satisfactory to the Company, the Trustee and any Paying Agent is furnished,

(9) if Bearer Securities of any series are to be redeemed and any Registered Securities of such series are not to be redeemed, and if such Bearer Securities may be

76

exchanged for Registered Securities not subject to redemption on the Redemption Date pursuant to Section 305 or otherwise, the last date, as determined by the Company, on which such exchanges may be made,

(10) in the case of Securities of any series that are convertible or exchangeable into Common Stock or other securities, the conversion or exchange price or rate, the date or dates on which the right to convert or exchange the principal of the Securities of such series to be redeemed will commence or terminate, as applicable, and the place or places where such Securities may be surrendered for conversion or exchange, and

(11) the CUSIP number or the Euroclear or the Cedel reference numbers of such Securities, if any (or any other numbers used by a Depository to identify such Securities).

A notice of redemption published as contemplated by Section 106 need not identify particular Registered Securities to be redeemed.

Notice of redemption of Securities to be redeemed at the election of the Company shall be given by the Company or, at the Company's request, by the Trustee in the name and at the expense of the Company.

Section 1105.   Deposit of Redemption Price.

On or prior to any Redemption Date, the Company shall deposit, with respect to the Securities of any series called for redemption pursuant to Section 1104, with the Trustee or with a Paying Agent (or, if the Company is acting as its own Paying Agent, segregate and hold in trust as provided in Section 1003) an amount of money in the applicable Currency sufficient to pay the Redemption Price of, and (except if the Redemption Date shall be an Interest Payment Date, unless otherwise specified pursuant to Section 301 for or in the Securities of such series) any accrued interest on and Additional Amounts with respect thereto, all such Securities or portions thereof which are to be redeemed on that date.

Section 1106.   Securities Payable on Redemption Date.

Notice of redemption having been given as aforesaid, the Securities so to be redeemed shall, on the Redemption Date, become due and payable at the Redemption Price therein specified, and from and after such date (unless the Company shall default in the payment of the Redemption Price and accrued interest, if any) such Securities shall cease to bear interest and the Coupons for such interest appertaining to any Bearer Securities so to be redeemed, except to the extent provided below, shall be void. Upon surrender of any such Security for redemption in accordance with said notice, together with all Coupons, if any, appertaining thereto maturing after the Redemption Date, such Security shall be paid by the Company at the Redemption Price, together with, unless otherwise provided in or pursuant to this Indenture, any accrued and unpaid interest thereon and Additional Amounts with respect thereto to but excluding the Redemption Date; provided, however, that, except as otherwise provided in or pursuant to this Indenture or the Bearer Securities of such series, installments of interest on Bearer Securities whose Stated Maturity is on or prior to the Redemption Date shall be payable only upon presentation and surrender of Coupons for such interest (at an Office or Agency located outside the United States except as otherwise provided in Section 1002), and

provided, further, that, except as otherwise specified in or pursuant to this Indenture or the Registered Securities of such series, installments of interest on Registered Securities whose Stated Maturity is on or prior to the Redemption Date shall be payable to the Holders of such Securities, or one or more Predecessor Securities, registered as such at the close of business on the Regular Record Dates therefor according to their terms and the provisions of Section 307.

If any Bearer Security surrendered for redemption shall not be accompanied by all appurtenant Coupons maturing after the Redemption Date, such Security may be paid after deducting from the Redemption Price or, at the option of the Company, after payment to the Trustee for the benefit of the Company of, an amount equal to the face amount of all such missing Coupons, or the surrender of such missing Coupon or Coupons may be waived by the Company and the Trustee if there be furnished to them such security or indemnity as they may require to save each of them and any Paying Agent harmless. If thereafter the Holder of such Security shall surrender to the Trustee or any Paying Agent any such missing Coupon in respect of which a deduction shall have been made from the Redemption Price, such Holder shall be entitled to receive the amount so deducted; provided, however, that any interest or Additional Amounts represented by Coupons shall be payable only upon presentation and surrender of those Coupons at an Office or Agency for such Security located outside of the United States except as otherwise provided in Section 1002.

If any Security called for redemption shall not be so paid upon surrender thereof for redemption, the principal and any premium, until paid, shall bear interest from the Redemption Date at the rate prescribed therefor in the Security or, if no rate is prescribed therefor in the Security, at the rate of interest, if any, borne by such Security.

Section 1107.    Securities Redeemed in Part.

Any Registered Security which is to be redeemed only in part shall be surrendered at any Office or Agency for such Security (with, if the Company or the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Company and the Trustee duly executed by, the Holder thereof or his attorney duly authorized in writing) and the Company shall execute, if applicable, the Guarantors shall execute the Subsidiary Guarantee endorsed thereon and the Trustee shall authenticate and deliver to the Holder of such Security without service charge, a new Registered Security or Securities of the same series, containing identical terms and provisions, of any authorized denomination as requested by such Holder in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Security so surrendered. If a Security in global form is so surrendered, the Company shall execute, and the Trustee shall authenticate and deliver to the Depository for such Security in global form as shall be specified in the Company Order with respect thereto to the Trustee, without service charge, a new Security in global form in a denomination equal to and in exchange for the unredeemed portion of the principal of the Security in global form so surrendered.

78

ARTICLE XII

SINKING FUNDS

Section 1201.    Applicability of Article.

The provisions of this Article shall be applicable to any sinking fund for the retirement of Securities of a series, except as otherwise permitted or required in or pursuant to this Indenture or any Security of such series issued pursuant to this Indenture.

The minimum amount of any sinking fund payment provided for by the terms of Securities of any series is herein referred to as a "mandatory sinking fund payment", and any payment in excess of such minimum amount provided for by the terms of Securities of such series is herein referred to as an "optional sinking fund payment". If provided for by the terms of Securities of any series, the cash amount of any sinking fund payment may be subject to reduction as provided in Section 1202. Each sinking fund payment shall be applied to the redemption of Securities of any series as provided for by the terms of Securities of such series and this Indenture.

Section 1202.    Satisfaction of Sinking Fund Payments with Securities.

The Company may, in satisfaction of all or any part of any sinking fund payment with respect to the Securities of any series to be made pursuant to the terms of such Securities (1) deliver Outstanding Securities of such series (other than any of such Securities previously called for redemption or any of such Securities in respect of which cash shall have been released to the Company), together in the case of any Bearer Securities of such series with all unmatured Coupons appertaining thereto, and (2) apply as a credit Securities of such series which have been redeemed either at the election of the Company pursuant to the terms of such series of Securities or through the application of permitted optional sinking fund payments pursuant to the terms of such Securities, provided that such Securities have not been previously so credited. Such Securities shall be received and credited for such purpose by the Trustee at the Redemption Price specified in such Securities for redemption through operation of the sinking fund and the amount of such sinking fund payment shall be reduced accordingly. If as a result of the delivery or credit of Securities of any series in lieu of cash payments pursuant to this Section 1202, the principal amount of Securities of such series to be redeemed in order to exhaust the aforesaid cash payment shall be less than $100,000, the Trustee need not call Securities of such series for redemption, except upon Company Request, and such cash payment shall be held by the Trustee or a Paying Agent and applied to the next succeeding sinking fund payment, provided, however, that the Trustee or such Paying Agent shall at the request of the Company from time to time pay over and deliver to the Company any cash payment so being held by the Trustee or such Paying Agent upon delivery by the Company to the Trustee of Securities of that series purchased by the Company having an unpaid principal amount equal to the cash payment requested to be released to the Company.

Section 1203.    Redemption of Securities for Sinking Fund.

Not less than 75 days prior to each sinking fund payment date for any series of Securities, the Company shall deliver to the Trustee an Officers' Certificate specifying the amount of the next ensuing mandatory sinking fund payment for that series pursuant to the terms of that series, the

79

portion thereof, if any, which is to be satisfied by payment of cash and the portion thereof, if any, which is to be satisfied by delivering and crediting of Securities of that series pursuant to Section 1202, and the optional amount, if any, to be added in cash to the next ensuing mandatory sinking fund payment, and will also deliver to the Trustee any Securities to be so credited and not theretofore delivered. If such Officers' Certificate shall specify an optional amount to be added in cash to the next ensuing mandatory sinking fund payment, the Company shall thereupon be obligated to pay the amount therein specified. Not less than 60 days before each such sinking fund payment date the Trustee shall select the Securities to be redeemed upon such sinking fund payment date in the manner specified in Section 1103 and cause notice of the redemption thereof to be given in the name of and at the expense of the Company in the manner provided in Section 1104. Such notice having been duly given, the redemption of such Securities shall be made upon the terms and in the manner stated in Sections 1106 and 1107.

ARTICLE XIII

REPAYMENT AT THE OPTION OF HOLDERS

Section 1301.    Applicability of Article.

Securities of any series which are repayable at the option of the Holders thereof before their Stated Maturity shall be repaid in accordance with the terms of the Securities of such series. The repayment of any principal amount of Securities pursuant to such option of the Holder to require repayment of Securities before their Stated Maturity, for purposes of Section 309, shall not operate as a payment, redemption or satisfaction of the indebtedness represented by such Securities unless and until the Company, at its option, shall deliver or surrender the same to the Trustee with a directive that such Securities be cancelled. Notwithstanding anything to the contrary contained in this Section 1301, in connection with any repayment of Securities, the Company may arrange for the purchase of any Securities by an agreement with one or more investment bankers or other purchasers to purchase such Securities by paying to the Holders of such Securities on or before the close of business on the repayment date an amount not less than the repayment price payable by the Company on repayment of such Securities, and the obligation of the Company to pay the repayment price of such Securities shall be satisfied and discharged to the extent such payment is so paid by such purchasers.

ARTICLE XIV

SECURITIES IN FOREIGN CURRENCIES

Section 1401.    Applicability of Article.

Whenever this Indenture provides for any distribution to Holders of Securities of any series in which not all of such Securities are denominated in the same Currency, in the absence of any provision to the contrary in or pursuant to this Indenture or the Securities of such series, any amount

80

in respect of any Security denominated in a Currency other than Dollars shall be treated for any such distribution as that amount of Dollars that could be obtained for such amount on such reasonable basis of exchange and as of the record date with respect to Registered Securities of such series (if any) for such distribution (or, if there shall be no applicable record date, such other date reasonably proximate to the date of such distribution) as the Company may specify in a written notice to the Trustee or, in the absence of such written notice, as the Trustee may determine.

ARTICLE XV

MEETINGS OF HOLDERS OF SECURITIES

Section 1501.    Purposes for Which Meetings May Be Called.

A meeting of Holders of Securities of any series may be called at any time and from time to time pursuant to this Article to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other Act provided by this Indenture to be made, given or taken by Holders of Securities of such series.

Section 1502.    Call, Notice and Place of Meetings.

(1) The Trustee may at any time call a meeting of Holders of Securities of any series for any purpose specified in Section 1501, to be held at such time and at such place in the Borough of Manhattan, The City of New York, or, if Securities of such series have been issued in whole or in part as Bearer Securities, in London or in such place outside the United States as the Trustee shall determine. Notice of every meeting of Holders of Securities of any series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given, in the manner provided in Section 106, not less than 21 nor more than 180 days prior to the date fixed for the meeting.

(2) In case at any time the Company (by or pursuant to a Board Resolution) or the Holders of at least 10% in principal amount of the Outstanding Securities of any series shall have requested the Trustee to call a meeting of the Holders of Securities of such series for any purpose specified in Section 1501, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, and the Trustee shall not have mailed notice of or made the first publication of the notice of such meeting within 21 days after receipt of such request (whichever shall be required pursuant to Section 106) or shall not thereafter proceed to cause the meeting to be held as provided herein, then the Company or the Holders of Securities of such series in the amount above specified, as the case may be, may determine the time and the place in the Borough of Manhattan, The City of New York, or, if Securities of such series are to be issued as Bearer Securities, in London for such meeting and may call such meeting for such purposes by giving notice thereof as provided in clause (1) of this Section.

81

Section 1503.    Persons Entitled to Vote at Meetings.

To be entitled to vote at any meeting of Holders of  Securities  of any series, a Person shall be (1) a Holder of one or more Outstanding  Securities of such series,  or (2) a Person appointed by an instrument in writing as proxy for a Holder or Holders of one or more Outstanding Securities of such series by such Holder or  Holders.  The only  Persons who shall be entitled to be present or to speak at any meeting of Holders of Securities of any series shall be the Persons entitled to vote at such meeting and their counsel,  any  representatives of the Trustee and its counsel and any representatives of the Company and its counsel.

Section 1504.    Quorum; Action.

The  Persons  entitled to vote a majority  in principal  amount of the Outstanding  Securities  of a series shall  constitute a quorum for a meeting of Holders of Securities of such series;  provided,  however, that if any action is to be taken at such meeting with respect  to a consent or waiver  which this Indenture  expressly provides may be given by the Holders of at least 66-2/3% in principal amount of the Outstanding Securities of a series, the Persons entitled to vote 66-2/3% in principal amount of the Outstanding Securities of such series shall  constitute a quorum.  In the absence of a quorum  within 30 minutes after the time appointed for any such meeting,  the meeting shall,  if convened at the request of Holders of Securities of such series, be dissolved. In any other case the meeting may be adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment of such meeting.   In the absence of a quorum at any such adjourned meeting, such adjourned meeting may be further  adjourned  for a period of not less than 10 days as  determined  by the chairman of the meeting  prior to the  adjournment  of such  adjourned  meeting. Notice of the reconvening of any adjourned meeting shall be given as provided in Section  1502(1),  except that such notice need be given only once not less than five days prior to the date on which the meeting is scheduled to be  reconvened. Notice of the  reconvening  of an adjourned  meeting  shall state  expressly the percentage,  as provided  above,  of the  principal  amount of the  Outstanding Securities of such series which shall constitute a quorum.

Except as  limited  by the  proviso  to  Section  902,  any  resolution presented to a meeting or adjourned meeting duly reconvened at which a quorum is present as aforesaid may be adopted only by the affirmative  vote of the Holders of a majority in principal amount of the Outstanding  Securities of that series; provided,  however,  that,  except as limited by the proviso to Section 902, any resolution with respect to any consent or waiver which this Indenture  expressly provides may be given by the Holders of at least 66-2/3% in principal  amount of the  Outstanding  Securities  of a series  may be  adopted  at a  meeting  or an adjourned  meeting  duly  convened and at which a quorum is present as aforesaid only by the  affirmative  vote of the Holders of at least  66-2/3% in  principal amount of the  Outstanding  Securities of that series;  and provided,  further, that,  except as limited  by the  proviso to Section  902,  any  resolution  with respect to any  request,  demand,  authorization,  direction,  notice,  consent, waiver or other Act which this Indenture  expressly provides may be made,  given or  taken  by the  Holders  of a  specified  percentage,  which  is less  than a majority,  in principal amount of the Outstanding  Securities of a series may be adopted at a meeting or an  adjourned  meeting  duly  reconvened  and at which a quorum is present as  aforesaid by the  affirmative  vote of the Holders of such specified  percentage in principal amount of the Outstanding  Securities of such series.

82

Any resolution passed or decision taken at any meeting of Holders of Securities of any series duly held in accordance with this Section shall be binding on all the Holders of Securities of such series and the Coupons appertaining thereto, whether or not such Holders were present or represented at the meeting.

Section 1505.   Determination of Voting Rights;   Conduct and Adjournment of Meetings.

(1) Notwithstanding any other provisions of this Indenture, the Trustee may make such reasonable regulations as it may deem advisable for any meeting of Holders of Securities of such series in regard to proof of the holding of Securities of such series and of the appointment of proxies and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate. Except as otherwise permitted or required by any such regulations, the holding of Securities shall be proved in the manner specified in Section 104 and the appointment of any proxy shall be proved in the manner specified in Section 104 or by having the signature of the person executing the proxy witnessed or guaranteed by any trust company, bank or banker authorized by Section 104 to certify to the holding of Bearer Securities. Such regulations may provide that written instruments appointing proxies, regular on their face, may be presumed valid and genuine without the proof specified in Section 104 or other proof.

(2) The Trustee shall, by an instrument in writing, appoint a temporary chairman of the meeting, unless the meeting shall have been called by the Company or by Holders of Securities as provided in Section 1502(2), in which case the Company or the Holders of Securities of the series calling the meeting, as the case may be, shall in like manner appoint a temporary chairman. A permanent chairman and a permanent secretary of the meeting shall be elected by vote of the Persons entitled to vote a majority in principal amount of the Outstanding Securities of such series represented at the meeting.

(3) At any meeting, each Holder of a Security of such series or proxy shall be entitled to one vote for each $1,000 principal amount of Securities of such series held or represented by him; provided, however, that no vote shall be cast or counted at any meeting in respect of any Security challenged as not Outstanding and ruled by the chairman of the meeting to be not Outstanding. If the Securities of such series are issuable in minimum denominations of less than $1,000, then a Holder of such a Security in a principal amount of less than $1,000 shall be entitled to a fraction of one vote which is equal to the fraction that the principal amount of such Security bears to $1,000. The chairman of the meeting shall have no right to vote, except as a Holder of a Security of such series or proxy.

(4) Any meeting of Holders of Securities of any series duly called pursuant to Section 1502 at which a quorum is present may be adjourned from time to time by Persons entitled to vote a majority in principal amount of the Outstanding Securities of such series represented at the meeting; and the meeting may be held as so adjourned without further notice.

83

Section 1506.    Counting Votes and Recording Action of Meetings.

The vote upon any  resolution  submitted  to any  meeting of Holders of Securities  of any  series  shall  be by  written  ballots  on  which  shall  be subscribed  the  signatures  of the Holders of  Securities  of such series or of their  representatives  by proxy and the principal amounts and serial numbers of the  Outstanding  Securities  of such series held or  represented  by them.   The permanent  chairman of the meeting  shall  appoint two  inspectors  of votes who shall count all votes cast at the meeting for or against any  resolution and who shall make and file with the  secretary of the meeting  their  verified  written reports in  triplicate of all votes cast at the meeting.  A record,  at least in triplicate,  of the  proceedings of each meeting of Holders of Securities of any series  shall be  prepared  by the  secretary  of the meeting and there shall be attached to said record the original  reports of the  inspectors of votes on any vote by ballot  taken  thereat  and  affidavits  by one or more  persons  having knowledge  of the facts  setting  forth a copy of the notice of the  meeting and showing  that said notice  was  given as  provided  in Section 1502 and,  if applicable,  Section  1504. Each  copy  shall  be  signed  and  verified  by the affidavits of the  permanent  chairman and secretary of the meeting and one such copy  shall be  delivered  to the  Company,  and another to the  Trustee to be preserved by the Trustee,  the latter to have attached thereto the ballots voted at the meeting.  Any record so signed and verified shall be conclusive  evidence of the matters therein stated.

## ARTICLE XVI

### SUBSIDIARY GUARANTEE

Section 1601.    Applicability of Article.

Unless the Company elects to issue any series of Securities without the benefit of the  Subsidiary  Guarantees,  which election shall be evidenced in or pursuant to the Board  Resolution or supplemental  indenture  establishing  such series of  Securities  pursuant to Section 301, the  provisions  of this Article shall be applicable to each series of Securities  except as otherwise  specified in or pursuant to the Board  Resolution or supplemental  indenture  establishing such series pursuant to Section 301.

Section 1602.    Subsidiary Guarantee.

Subject to Section 1601,  each  Guarantor  unconditionally  guarantees, jointly with the other  Guarantors and severally,  as a primary  obligor and not merely as a surety,  to each Holder of a Security  authenticated and delivered by the Trustees and to the Trustee (a) the due and punctual  payment by the Company of (i) the principal of and premium,  if any, and interest  (including  interest accruing  during the pendency of any  bankruptcy,  insolvency,  receivership  or other  similar  proceeding,  regardless  of whether such  interest is allowed or allowable  as a claim in  such  proceeding)  on such  Security,  when and as due, whether at Maturity, by acceleration,  upon one or more dates set for prepayment or otherwise and (ii) all other monetary  obligations,  including  fees,  costs, expenses and indemnities,  whether primary,  secondary,  direct, contingent, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency,  receivership or other similar proceeding, regardless of whether such monetary obligations are allowed or allowable as a claim in

84

such proceeding), of the Company to the Holders or the Trustee under this Indenture and the Securities, (b) the due and punctual performance of all covenants, agreements, obligations and liabilities of the Company under or pursuant to this Indenture and the Securities and (c) the due and punctual payment and performance of all the covenants, agreements, obligations and liabilities of each other Guarantor under or pursuant to this Indenture and the Securities (all the monetary and other obligations described in the preceding clauses (a) through (c) being collectively called the "Guaranteed Obligations"). Each Guarantor further agrees that the Guaranteed Obligations may be extended or renewed, in whole or in part, without notice to or further assent from it, and that it will remain bound upon the Subsidiary Guarantee notwithstanding any extension or renewal of any obligation.

Anything contained in this Indenture to the contrary notwithstanding, the obligations of each Guarantor under this Indenture, the Securities and any Subsidiary Guarantees shall be limited to a maximum aggregate amount equal to the greatest amount that would not render such Guarantor's obligations hereunder subject to avoidance as a fraudulent transfer or conveyance under Section 548 or Title 11 of the United States Code or any provisions of applicable state law (collectively, the "Fraudulent Transfer Laws"), in each case after giving effect to all other liabilities of such Guarantor, contingent or otherwise, that are relevant under the Fraudulent Transfer Laws (specifically excluding, however, any liabilities of such Guarantor (a) in respect of intercompany indebtedness to the Company or Affiliates of the Company to the extent that such indebtedness would be discharged in an amount equal to the amount paid by such Guarantor hereunder and (b) under any guarantee of senior unsecured indebtedness or indebtedness subordinated in right of payment to the Guaranteed Obligations, which guarantee contains a limitation as to maximum amount similar to that set forth in this paragraph, pursuant to which the liability of such Guarantor hereunder is included in the liabilities taken into account in determining such maximum amount) and after giving effect as assets to the value (as determined under the applicable provisions of the Fraudulent Transfer Laws) of any rights to subrogation, contribution, reimbursement, indemnity or similar rights of such Guarantor pursuant to (i) applicable law or (ii) any agreement providing for an equitable allocation among such Guarantor and other Affiliates of the Company of obligations arising under the Subsidiary Guarantees by such parties.

To the fullest extent permitted by applicable law, each Guarantor waives presentment to, demand of payment from and protest to the Company of any of the Guaranteed Obligations, and also waives notice of acceptance of the Subsidiary Guarantee and notice of protest for nonpayment. To the fullest extent permitted by applicable law and except as otherwise contemplated herein, the obligations of each Guarantor under this Indenture, the Securities and any Subsidiary Guarantees shall not be affected by (a) the failure of the Trustee or the Holders to assert any claim or demand or to enforce or exercise any right or remedy against the Company or any other Guarantor under this Indenture, the Securities, any Subsidiary Guarantees or otherwise or (b) any rescission, waiver, amendment or modification of, or any release from any of the terms or provisions of this Indenture, the Securities, any Subsidiary Guarantees or any other agreement, including with respect to any other Guarantor under this Indenture.

Each Guarantor further agrees that the Subsidiary Guarantee constitutes a guarantee of payment when due and not of collection, and waives any right to require that any resort be had by the Trustee or the Holders to any of the security held for payment of the Guaranteed Obligations or to

85

any balance of any deposit account or credit on the books of the Trustee or the Holders in favor of the Company or any other Person.

The obligations of each Guarantor shall not be subject to any reduction, limitation, impairment or termination for any reason (other than the indefeasible payment in full in cash of the Guaranteed Obligations), including any claim or waiver, release, surrender, alteration or compromise of any of the Guaranteed Obligations, and shall not be subject to any defense or set-off, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Guaranteed Obligations or otherwise. Without limiting the generality of the foregoing, the obligations of each Guarantor shall not be discharged or impaired or otherwise affected by the failure of the Trustee or the Holders to assert any claim or demand or to enforce any remedy under this Indenture, the Securities or any other agreement, by any waiver or modification of any provision of any thereof, by any default, failure or delay, willful or otherwise, in the performance of the Guaranteed Obligations, or by any other act or omission that may or might in any manner or to any extent vary the risk of any Guarantor or that would otherwise operate as a discharge of each Guarantor as a matter of law or equity (other than the indefeasible payment in full in cash of all the Guaranteed Obligations) or which would impair or eliminate any right of such Guarantor to subrogation.

To the fullest extent permitted by applicable law, each of the Guarantors waives any defense based on or arising out of any defense of the Company or the unenforceability of the Guaranteed Obligations or any part thereof from any cause, or the cessation from any cause of the liability of the Company, other than the indefeasible payment in full in cash of all the Guaranteed Obligations. The Trustee and the Holders may, at their election, compromise or adjust any part of the Guaranteed Obligations, make any other accommodation with the Company or any other Guarantor or exercise any other right or remedy available to them against the Company or any other Guarantor, without affecting or impairing in any way the liability of any Guarantor hereunder except to the extent that all the Guaranteed Obligations have been indefeasibly paid in full in cash. Pursuant to applicable law, each of the Guarantors waives any defense arising out of any such election even though such election operates, pursuant to applicable law, to impair or to extinguish any right of reimbursement or subrogation or other right or remedy of such Guarantor against the Company or any other Guarantor.

In furtherance of the foregoing and not in limitation of any other right that the Trustee or any of the Holders has at law or in equity against any Guarantor by virtue hereof, upon the failure of the Company or any other Guarantor to pay any Guaranteed Obligation when and as the same shall become due, whether at Maturity, by acceleration, after notice of prepayment or otherwise, each Guarantor hereby promises to and will forthwith pay, or cause to be paid, to the Trustee or the Holders, as the case may be, in cash the amount of such unpaid Guaranteed Obligations. Upon payment by any Guarantor of any sums to the Trustee or any Holder, as the case may be, as provided above, all rights of such Guarantor against the Company arising as a result thereof by way of right of subrogation, contribution, reimbursement, indemnity or otherwise shall in all respect be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all the Guaranteed Obligations. In addition, any indebtedness of the Company now or hereafter held by any Guarantor is hereby subordinated in right of payment to the prior payment in full in cash of the Guaranteed Obligations. If any amount shall erroneously be paid to any Guarantor on account of (a) such subrogation, contribution, reimbursement, indemnity or similar right or (b) any such indebtedness of

86

the Company, such amount shall be held in trust for the benefit of the Holders and shall forthwith be paid to the Trustee or the Holders, as the case may be, to be credited against the payment of the Guaranteed Obligations, whether matured or unmatured, in accordance with the terms of this Indenture and the Securities.

Each of the Guarantors assumes all responsibility for being and keeping itself informed of the Company's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the Guaranteed Obligations and the nature, scope and extent of the risks that such Guarantor assumes and incurs, and agrees that neither the Trustee nor the Holders will have any duty to advise any of the Guarantors of information known to it or any of them regarding such circumstances or risks.

Each Guarantor that makes or is required to make any payment in respect of its Subsidiary Guarantee shall be entitled to seek contribution from the other Guarantors to the extent permitted by applicable law and as determined otherwise.

Section 1603.    Execution and Delivery of Subsidiary Guarantees.

The Subsidiary Guarantees to be endorsed on the Securities shall include the terms of the Subsidiary Guarantee set forth in Section 1602 and any other terms that may be set forth in the form established pursuant to Section 204. Subject to Section 1601, each of the Guarantors hereby agrees to execute its Subsidiary Guarantee, in a form established pursuant to Section 204, to be endorsed on each Security authenticated and delivered by the Trustee.

The delivery of any Security by the Trustee, after the authentication thereof hereunder, shall constitute due delivery of the Subsidiary Guarantee endorsed thereon on behalf of the Guarantors and shall bind each Guarantor notwithstanding the fact that Subsidiary Guarantee does not bear the signature of such Guarantor. Each of the Guarantors hereby jointly and severally agrees that its Subsidiary Guarantee set forth in Section 1602 and in the form of Subsidiary Guarantee established pursuant to Section 204 shall remain in full force and effect notwithstanding any failure to endorse a Subsidiary Guarantee on any Security.

Section 1604.    Release of Guarantors.

Unless otherwise specified pursuant to Section 301 with respect to a series of Securities, each Subsidiary Guarantee will remain in effect with respect to the respective Guarantor until the entire principal of, premium, if any, and interest on the Securities to which such Subsidiary Guarantee relates shall have been paid in full or otherwise discharged in accordance with the provisions of such Securities and this Indenture and all amounts owing to the Trustee hereunder have been paid; provided, however, that if (i) the Company or any Subsidiary conveys, sells, assigns, transfers o otherwise disposes of all or substantially all the capital stock or assets of any Subsidiary that is a Guarantor to one or more Persons other than Affiliates of the Company in a transaction complying with the requirements of this Indenture, or (ii) the Securities are defeased and discharged in pursuant to Article Four hereof, then, in each case of (i) or (ii), upon delivery by the Company of an Officers' Certificate and an Opinion of Counsel stating that all conditions precedent herein provided for relating to the release of such Guarantor from its obligations under its Subsidiary Guarantee and this Article Sixteen have been complied with, such Guarantor or the Person acquiring such assets (in the event

87

of a sale or other disposition of all or substantially all assets or capital stock of such Guarantor) shall be released and discharged of its obligations under its Subsidiary Guarantee and under this Article Sixteen without any action on the part of the Trustee or any Holder, and the Trustee shall execute any documents reasonably required in order to acknowledge the release of such Guarantor from its obligations under its Subsidiary Guarantee endorsed on the Securities of a series and under this Article Sixteen.

In the event of any consolidation by the Company with or merger of the Company into any other Person or an sale, assignment, transfer, lease or conveyance of all or substantially all of the properties and assets of the Company to any Person in accordance with this Indenture, no subsidiary of the successor Person formed by such consolidation or into which the Company is merged or to which such sale, assignment, transfer, lease or other conveyance is made will be required to assume any obligations of the Guarantors under this Indenture, the Securities or the Subsidiary Guarantees if such successor Person (i) has, at the time of such transaction, a long- term unsecured debt rating from both Moody's Investors Services, Inc. and Standard & Poor's Rating Services no lower than the lowest rating than assigned by either such rating agency to such indebtedness of the Company and (ii) any long-term unsecured debt of the successor person generally does not have the benefit of any guarantees similar to the Subsidiary Guarantees of the Guarantors.

Section 1605.     Additional Guarantors.

Unless otherwise specified pursuant to Section 301 with respect to a series of Securities, each Significant Subsidiary that was not in existence (or not a Significant Subsidiary) on the date the Securities of a series are first issued hereunder shall become a Guarantor promptly upon becoming such a Significant Subsidiary. The Company shall cause any such Significant Subsidiary to become a Guarantor with respect to the Securities by executing and delivering to the Trustee (i) a supplemental indenture, in form and substance satisfactory to the Trustee, which subjects such Person to the provisions (including the representations and warranties) of this Indenture as a Guarantor and (ii) an Opinion of Counsel to the effect that such supplemental indenture has been duly authorized and executed by such Person and such supplemental indenture and such Person's obligations under its Subsidiary Guarantee and this Indenture constitute the legal, valid, binding and enforceable obligations of such Person (subject to such customary exceptions concerning creditors' rights and equitable principles as may be acceptable to the Trustee in its discretion).

*     *     *     *     *

This instrument may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

88

        IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be
duly executed, and the Company has caused its corporate seal to be hereunto
affixed, all as of the day and year first above written.

                                        WINN-DIXIE STORES, INC.
                                        as Issuer


                                        By:
                                                Name:
                                                Title:


[SEAL]

Attest:


Name:
Title:


                                        ASTOR PRODUCTS, INC.
                                        as Guarantor


                                        By:
                                                Name:
                                                Title:


                                        CRACKIN' GOOD, INC.
                                        as Guarantor

                                        By:
                                                Name:
                                                Title:


                                89

DEEP SOUTH PRODUCTS, INC.
as Guarantor

By:
        Name:
        Title:


DIXIE PACKERS, INC.
as Guarantor

By:
        Name:
        Title:


MONTEREY CANNING CO.
as Guarantor

By:
        Name:
        Title:


WINN-DIXIE CHARLOTTE, INC.
as Guarantor

By:
        Name:
        Title:


WINN-DIXIE LOGISTICS, INC.
as Guarantor

By:
        Name:
        Title:

90

WINN-DIXIE LOUISIANA, INC.
as Guarantor

By:
        Name:
        Title:


WINN-DIXIE MONTGOMERY, INC.
as Guarantor

By:
        Name:
        Title:


WINN-DIXIE PROCUREMENT, INC.
as Guarantor

By:
        Name:
        Title:


WINN-DIXIE RALEIGH, INC.
as Guarantor

By:
        Name:
        Title:

91

FIRST UNION NATIONAL BANK,
as Trustee


By: 

        Name:
        Title:

92

SCHEDULE 1
Guarantors

| SUBSIDIARY | STATE OF ORGANIZATION |
| --- | --- |
| Astor Products, Inc. | Florida |
| Crackin' Good, Inc. | Florida |
| Deep South Products, Inc. | Florida |
| Dixie Packers, Inc. | Florida |
| Monterey Canning Co. | California |
| Winn-Dixie Charlotte, Inc. | Florida |
| Winn-Dixie Logistics, Inc. | Florida |
| Winn-Dixie Louisiana, Inc. | Florida |
| Winn-Dixie Montgomery, Inc. | Florida |
| Winn-Dixie Procurement, Inc. | Florida |
| Winn-Dixie Raleigh, Inc. | Florida |

93