50

Offer is less than the Security Amount relating thereto or the aggregate amount of Pari Passu Indebtedness that is purchased in a Pari Passu Offer is less than the Pari Passu Debt Amount, the Company may use any remaining Excess Proceeds for general corporate purposes. If the aggregate principal amount of Securities and Pari Passu Indebtedness surrendered by holders thereof exceeds the amount of Excess Proceeds, the Trustee shall select the Securities to be purchased on a pro rata basis, with such Securities being purchased only in denominations of $1,000 or multiples thereof. Upon the completion of the purchase of all the Securities tendered pursuant to an Offer and the completion of a Pari Passu Offer, the amount of Excess Proceeds, if any, shall be reset at zero.

(d) If the Company becomes obligated to make an Offer pursuant to clause (c) above, the Securities and the Pari Passu Indebtedness shall be purchased by the Company, at the option of the holders thereof, in whole or in part in integral multiples of $1,000, on a date that is not earlier than 30 days and not later than 60 days from the date the notice of the Offer is given to holders, or such later date as may be necessary for the Company to comply with the requirements under the Exchange Act.

(e) The Company will comply with the applicable tender offer rules, including Rule 14e-1 under the Exchange Act, and any other applicable securities laws or regulations in connection with an Offer.

(f) Subject to paragraph (e) above, within 30 days after the date on which the amount of Excess Proceeds equals or exceeds $20 million, the Company shall send or cause to be sent by first-class mail, postage prepaid, to the Trustee and to each Holder, at his address appearing in the Security Register, a notice stating or including:

> (1) that the Holder has the right to require the Company to repurchase, subject to proration, such Holder's Securities at the Offered Price;
>
> (2) the Offer Date;
>
> (3) the instructions a Holder must follow in order to have his Securities purchased in accordance with paragraph (c) of this Section;
>
> (4) (i) the most recently filed Annual Report on Form 10-K (including audited consolidated financial statements) of the Company, the most recent subsequently filed Quarterly Report on Form 10-Q, as applicable, and any Current Report on Form 8-K of the Company filed subsequent to such Quarterly Report, other than Current Reports describing Asset Sales otherwise described in the offering materials (or

-49-

51

corresponding successor reports) (or in the event the Company is not required to prepare any of the foregoing Forms, the comparable information required pursuant to Section 1022), (ii) a description of material developments, if any, in the Company's business subsequent to the date of the latest of such Reports, (iii) if material, appropriate pro forma financial information, and (iv) such other information, if any, concerning the business of the Company which the Company in good faith believes will enable such Holders to make an informed investment decision regarding the Offer;

(5) the Offered Price;

(6) the names and addresses of the Paying Agent and the offices or agencies referred to in Section 1002;

(7) that Securities must be surrendered prior to the Offer Date to the Paying Agent at the office of the Paying Agent or to an office or agency referred to in Section 1002 to collect payment;

(8) that any Securities not tendered will continue to accrue interest and that unless the Company defaults in the payment of the Offered Price, any Security accepted for payment pursuant to the Offer shall cease to accrue interest on and after the Offer Date;

(9) the procedures for withdrawing a tender; and

(10) that the Offered Price for any Security which has been properly tendered and not withdrawn and which has been accepted for payment pursuant to the Offer will be paid promptly following the Offered Date.

(g) Holders electing to have Securities purchased hereunder will be required to surrender such Securities at the address specified in the notice on or prior to the Offer Date. Holders will be entitled to withdraw their election to have their Securities purchased pursuant to this Section 1017 if the Company receives, not later than the Offer Date, a telegram, telex, facsimile transmission or letter setting forth (1) the name of the Holder, (2) the certificate number of the Security in respect of which such notice of withdrawal is being submitted, (3) the principal amount of the Security (which shall be $1,000 or an integral multiple thereof) delivered for purchase by the Holder as to which his election is to be withdrawn, (4) a statement that such Holder is withdrawing his election to have such principal amount of such Security purchased, and (5) the principal amount, if any, of such Security (which shall be $1,000 or an integral multiple thereof) that remains

52

subject to the original notice of the Offer and that has been or will be delivered for purchase by the Company.

(h) The Company shall (i) not later than the Offer Date, accept for payment Securities or portions thereof tendered pursuant to the Offer, (ii) not later than 10:00 a.m. (New York time) on the Business Day following the Offer Date, deposit with the Trustee or with a Paying Agent an amount of money in same day funds (or next day funds if such deposit is made by 9:00 a.m. (New York time) on the date prior to the Offer Date) sufficient to pay the aggregate Offered Price of all the Securities or portions thereof which are to be purchased on that date and (iii) not later than 10:00 a.m. (New York time) on the Business Day following the Offer Date, deliver to the Paying Agent an Officers' Certificate stating the Securities or portions thereof accepted for payment by the Company. The Paying Agent shall promptly mail or deliver to Holders of Securities so accepted payment in an amount equal to the Offered Price of the Securities purchased from each such Holder, and the Company shall execute and the Trustee shall promptly authenticate and mail or deliver to such Holders a new Security equal in principal amount to any unpurchased portion of the Security surrendered. Any Securities not so accepted shall be promptly mailed or delivered by the Paying Agent at the Company's expense to the Holder thereof. For purposes of this Section 1017, the Company shall choose a Paying Agent which shall not be the Company.

Subject to applicable escheat laws, the Trustee and the Paying Agent shall return to the Company any cash that remains unclaimed, together with interest, if any, thereon, held by them for the payment of the Offered Price; provided, however, that (x) to the extent that the aggregate amount of cash deposited by the Company with the Trustee in respect of an Offer exceeds the aggregate Offered Price of the Securities or portions thereof to be purchased, then the Trustee shall hold such excess for the Company and (y) unless otherwise directed by the Company in writing, no later than the second Business Day following the Offer Date the Trustee shall return any such excess (including, without limitation, monies deposited with respect to an election which has been withdrawn in accordance with paragraph (h)) to the Company together with interest or dividends, if any, thereon.

(i) Securities to be purchased shall, on the Offer Date, become due and payable at the Offered Price and from and after such date (unless the Company shall default in the payment of the Offered Price) such Securities shall cease to bear interest. Upon surrender of any such Security for purchase in accordance with the foregoing provisions, such Security shall be paid by the Company at the Offered Price; provided, however, that installments of interest whose Stated Maturity is on or prior to the Offer Date shall be payable to the Person in whose name the Securities (or any Predecessor Securities) is registered as such on the relevant Regular Record Dates according to the terms and the provisions of Section 307.

53

(j) If any Security tendered for purchase shall not be so paid upon surrender thereof by deposit of funds with the Trustee or a Paying Agent in accordance with paragraph (h) above, the principal thereof (and premium, if any, thereon) shall, until paid, bear interest from the Offer Date at the rate borne by such Security.

(k) Any Security that is to be purchased only in part shall be surrendered to a Paying Agent at the office of such Paying Agent (with, if the Company, the Security Registrar or the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Company and the Security Registrar or the Trustee duly executed by, the Holder thereof or such Holder's attorney duly authorized in writing), and the Company shall execute and the Trustee shall authenticate and deliver to the Holder of such Security, without service charge, one or more new Securities of any authorized denomination as requested by such Holder in an aggregate principal amount equal to, and in exchange for, the portion of the principal amount of the Security so surrendered that is not purchased.

(l) The Company shall publicly announce the results of the Offer on or as soon as practicable after the Offer Date.

Section 1018. Limitation on Issuances of Guarantees of Indebtedness.

(a) The Company will not cause or permit any Restricted Subsidiary (which is not a Guarantor), directly or indirectly, to guarantee, assume or in any other manner become liable with respect to any Indebtedness of the Company or any Restricted Subsidiary unless such Restricted Subsidiary simultaneously executes and delivers a supplemental indenture to this Indenture providing for a Guarantee of the Securities on the same terms as the guarantee of such Indebtedness except that (A) such guarantee need not be secured unless required pursuant to Section 1006 and (B) if such Indebtedness is by its terms expressly subordinated to the Securities, any such assumption, guarantee or other liability of such Restricted Subsidiary with respect to such Indebtedness shall be subordinated to such Restricted Subsidiary's Guarantee of the Securities at least to the same extent as such Indebtedness is subordinated to the Securities. Notwithstanding the foregoing, a Subsidiary (which is not a Guarantor) whether or not existing as of the date of the First Supplemental Indenture, shall not have any obligation to provide a Guarantee of the Securities or securities of any series issued under this Indenture, except as set forth in this Section 1018.

(b) Notwithstanding the foregoing, any Guarantee by a Restricted Subsidiary of the Securities shall provide by its terms that it (and all Liens securing the same) shall be automatically and unconditionally released and discharged upon any conveyance, sale, exchange or transfer, to any Person not an Affiliate of the Company, of all of the Company's Capital Stock in, or all or

substantially all the assets of, such Restricted Subsidiary, which transaction is in compliance with the terms of this Indenture and such Restricted Subsidiary is released from all guarantees, if any, by it of other Indebtedness of the Company or any Restricted Subsidiaries and, with respect to any Guarantees created after the date of the First Supplemental Indenture, the release by the holders of the Indebtedness of the Company described in clause (a) above of their security interest or their guarantee by such Restricted Subsidiary (including any deemed release upon payment in full of all obligations under such Indebtedness), at such time as (A) no other Indebtedness of the Company has been secured or guaranteed by such Restricted Subsidiary, as the case may be, or (B) the holders of all such other Indebtedness which is secured or guaranteed by such Restricted Subsidiary also release their security interest in or guarantee by such Restricted Subsidiary (including any deemed release upon payment in full of all obligations under such Indebtedness).

Section 1019. Limitation on Subsidiary Preferred Stock.

(a) The Company will not permit any Restricted Subsidiary of the Company to issue, sell or transfer any Preferred Stock, except for (1) Preferred Stock issued or sold to, held by or transferred to the Company or a Restricted Subsidiary, and (2) Preferred Stock issued by a Person prior to the time (A) such Person becomes a Restricted Subsidiary, (B) such Person merges with or into a Restricted Subsidiary or (C) a Restricted Subsidiary merges with or into such Person; provided that such Preferred Stock was not issued or incurred by such Person in anticipation of the type of transaction contemplated by subclause (A), (B) or (C). This clause (a) shall not apply upon the acquisition of all the outstanding Preferred Stock of such Restricted Subsidiary in accordance with the terms of this Indenture.

(b) The Company will not permit any Person (other than the Company or a Restricted Subsidiary) to acquire Preferred Stock of any Restricted Subsidiary from the Company or any Restricted Subsidiary, except upon the acquisition of all the outstanding Preferred Stock of such Restricted Subsidiary in accordance with the terms of this Indenture.

Section 1020. Limitation on Dividend and Other Payment Restrictions Affecting Subsidiaries.

The Company will not, and will not cause or permit any of its Restricted Subsidiaries to, directly or indirectly, create or otherwise cause to exist or become effective any consensual encumbrance or restriction on the ability of any Restricted Subsidiary to

(1) pay dividends or make any other distribution on its Capital Stock or any other interest or participation in or measured by its profits,

-53-

    (2)  pay any Indebtedness owed to the Company or any other Restricted Subsidiary,

    (3)  make any Investment in the Company or any other Wholly Owned Restricted Subsidiary or

    (4)  transfer any of its properties or assets to the Company or any other Wholly Owned Restricted Subsidiary.

However, this covenant will not prohibit any encumbrance or restriction (1) pursuant to an agreement in effect on the date of the First Supplemental Indenture; (2) with respect to a Restricted Subsidiary that is not a Restricted Subsidiary of the Company on the date of the First Supplemental Indenture, in existence at the time such Person becomes a Restricted Subsidiary of the Company and not incurred in connection with, or in contemplation of, such Person becoming a Restricted Subsidiary, provided that such encumbrances and restrictions are not applicable to the Company or any Restricted Subsidiary or the properties or assets of the Company or any Restricted Subsidiary other than such Subsidiary which is becoming a Restricted Subsidiary; (3) under the Credit Facility; (4) pursuant to any agreement governing any Indebtedness permitted by clause (8) of the definition of Permitted Indebtedness as to the assets financed with the proceeds of such Indebtedness; (5) pursuant to any agreement permitted under clause (i) of the definition of Permitted Lien as to the assets securing the Permitted Lien; (6) pursuant to intercompany indebtedness incurred by a foreign Subsidiary owing to the Company or a Restricted Subsidiary which Indebtedness does not exceed $10 million; (7) contained in any Acquired Indebtedness or other agreement of an entity or related to assets acquired by or merged into or consolidated with the Company or any Restricted Subsidiaries so long as such encumbrance or restriction was not entered into in contemplation of the acquisition, merger or consolidation transaction; (8) under any agreement that extends, renews, refinances or replaces the agreements containing the encumbrances or restrictions in the foregoing clauses (1) through (7) or in this clause (8), provided that the terms and conditions of any such encumbrances or restrictions are no more restrictive in any material respect than those under or pursuant to the agreement evidencing the Indebtedness so extended, renewed, refinanced or replaced.

Section 1021. Limitation on Unrestricted Subsidiaries.

The Company may designate after the Issue Date any Subsidiary as an "Unrestricted Subsidiary" under this Indenture (a "Designation") only if:

    (a)  no Default shall have occurred and be continuing at the time of or after giving effect to such Designation;

(b)  the Company would be permitted to make an Investment (other than a Permitted Investment) at the time of Designation (assuming the effectiveness of such Designation) pursuant to the first paragraph of Section 1015 in an amount (the "Designation Amount") equal to the greater of (1) the net book value of the Company's interest in such Subsidiary calculated in accordance with GAAP or (2) the Fair Market Value of the Company's interest in such Subsidiary as determined in good faith by the Company's Board of Directors;

(c)  the Company would be permitted under this Indenture to incur $1.00 of additional Indebtedness (other than Permitted Indebtedness) pursuant to the covenant described under Section 1014 at the time of such Designation (assuming the effectiveness of such Designation);

(d)  such Unrestricted Subsidiary does not own any Capital Stock in any Restricted Subsidiary of the Company which is not simultaneously being designated an Unrestricted Subsidiary;

(e)  such Unrestricted Subsidiary is not liable, directly or indirectly, with respect to any Indebtedness other than Unrestricted Subsidiary Indebtedness, provided that an Unrestricted Subsidiary may provide a Guarantee for the Securities; and

(f)  such Unrestricted Subsidiary is not a party to any agreement, contract, arrangement or understanding at such time with the Company or any Restricted Subsidiary unless the terms of any such agreement, contract, arrangement or understanding are no less favorable to the Company or such Restricted Subsidiary than those that might be obtained at the time from Persons who are not Affiliates of the Company or, in the event such condition is not satisfied, the value of such agreement, contract, arrangement or understanding to such Unrestricted Subsidiary shall be deemed a Restricted Payment.

In the event of any such Designation, the Company shall be deemed to have made an Investment constituting a Restricted Payment pursuant to Section 1015 for all purposes of this Indenture in the Designation Amount.

The Company shall not and shall not cause or permit any Restricted Subsidiary to at any time

(a)  provide credit support for, guarantee or subject any of its property or assets (other than the Capital Stock of any Unrestricted

-55-

57

Subsidiary) to the satisfaction of, any Indebtedness of any Unrestricted Subsidiary (including any undertaking, agreement or instrument evidencing such Indebtedness), other than Permitted Investments in Unrestricted Subsidiaries, or

(b)   be directly or indirectly liable for any Indebtedness of any Unrestricted Subsidiary. For purposes of the foregoing, the Designation of a Subsidiary of the Company as an Unrestricted Subsidiary shall be deemed to be the Designation of all of the Subsidiaries of such Subsidiary as Unrestricted Subsidiaries.

The Company may revoke any Designation of a Subsidiary as an Unrestricted Subsidiary (a "Revocation") if:

(a)   no Default shall have occurred and be continuing at the time of and after giving effect to such Revocation;

(b)   all Liens and Indebtedness of such Unrestricted Subsidiary outstanding immediately following such Revocation would, if incurred at such time, have been permitted to be incurred for all purposes of this Indenture; and

(c)   unless such redesignated Subsidiary shall not have any Indebtedness outstanding (other than Indebtedness that would be Permitted Indebtedness), immediately after giving effect to such proposed Revocation, and after giving pro forma effect to the incurrence of any such Indebtedness of such redesignated Subsidiary as if such Indebtedness was incurred on the date of the Revocation, the Company could incur $1.00 of additional Indebtedness (other than Permitted Indebtedness) pursuant to the covenant described under Section 1014.

All Designations and Revocations must be evidenced by a resolution of the Board of Directors of the Company delivered to the Trustee certifying compliance with the foregoing provisions.

Section 1022. Provision of Financial Statements.

Whether or not the Company is subject to Section 13(a) or 15(d) of the Exchange Act, the Company will, to the extent permitted under the Exchange Act, file with the Commission the annual reports, quarterly reports and other documents which the Company would have been required to file with the Commission pursuant to Section 13(a) or 15(d) if the Company were so subject, such documents to be filed with the Commission on or prior to the date (the "Required Filing Date") by which the Company would have been required so to file such documents if the Company were so subject.

-56-

58

The Company will also in any event (a) within 15 days of each Required Filing Date (1) transmit by mail to all Holders, as their names and addresses appear in the Security Register, without cost to such Holders and (2) file with the Trustee copies of the annual reports, quarterly reports and other documents which the Company would have been required to file with the Commission pursuant to Sections 13(a) or 15(d) of the Exchange Act if the Company were subject to either of such Sections and (b) if filing such documents by the Company with the Commission is not permitted under the Exchange Act, promptly upon written request and payment of the reasonable cost of duplication and delivery, supply copies of such documents to any prospective holder at the Company's cost.

If any Guarantor's financial statements would be required to be included in the financial statements filed or delivered pursuant to this Indenture if the Company were subject to Section 13(a) or 15(d) of the Exchange Act, the Company shall include such Guarantor's financial statements in any filing or delivery pursuant to this Indenture.

Section 1023. Insurance.

The Company will, and will cause each of its Restricted Subsidiaries to:

(a) maintain insurance on its property with financially sound and reputable insurance companies against loss and damage in at least the amounts (and with only those deductibles and self-insurance amounts) customarily maintained, and against such risks as are typically insured against in the same general area, by Persons of comparable size engaged in the same or similar business as the Company and its Restricted Subsidiaries, it being understood that the Company and its Restricted Subsidiaries are self-insured in substantial amounts with respect to various insurable risks; and

(b) maintain all worker's compensation, employer's liability insurance or similar insurance as may be required under the laws of any state or jurisdiction in which it may be engaged in business.

Section 1024. Fall Away Event.

In the event of the occurrence of a Fall Away Event, the covenants and provisions described above under Section 1013, Section 1014, Section 1015, Section 1016, Section 1017, Section 1019, Section 1020, Section 1021 and Section 1022, the additional provisions described under Article VIII, paragraphs (4) and (10) of Section 501 and provisions relevant thereto (including any definitions) shall each no longer be in effect for the remaining term of the Securities; provided that the covenant described within the last paragraph of Section 1006 and the definitions relevant thereto shall thereafter become in effect; provided that any Liens incurred prior to the Fall Away Event shall be deemed

-57-

59

permitted under such covenant whether or not such Liens would otherwise be permitted.

As a result, upon the occurrence of a Fall Away Event, the Holders of Securities will be entitled to substantially reduced covenant protection, even if the Securities do not continue to be rated at the Investment Grade level.

(P)  By adding the following Section to Article XI:

Section 1108. Optional Redemption.

After April 1, 2005, the Company may redeem all or a portion of the Securities, on not less than 30 nor more than 60 days' prior notice, in amounts of $1,000 or an integral multiple thereof at the following redemption prices (expressed as percentages of the principal amount), if redeemed during the 12-month period beginning April 1 of the years indicated below:

| YEAR | PRICE |
| ---- | -------- |
| 2005.............................................. | 104.438% |
| 2006.............................................. | 102.219% |

and thereafter at 100% of the principal amount, in each case, together with accrued and unpaid interest, if any, to the redemption date (subject to the rights of holders of record on relevant record dates to receive interest due on an interest payment date).

In addition, at any time prior to April 1, 2004, the Company, at its option, may use the net proceeds of one or more Public Equity Offerings to redeem up to an aggregate of 35% of the aggregate principal amount of Securities originally issued under this Indenture at a redemption price equal to 108.875% of the aggregate principal amount of the Securities redeemed, plus accrued and unpaid interest, if any, to the redemption date (subject to the rights of holders of record on relevant record dates to receive interest due on an interest payment date). At least 65% of the initial aggregate principal amount of Securities must remain outstanding immediately after the occurrence of such redemption. In order to effect this redemption, the Company must mail a notice of redemption no later than 30 days after the closing of the related Public Equity Offering and must complete such redemption within 60 days of the closing of the Public Equity Offering.

If less than all of the Securities are to be redeemed, the Trustee shall select the notes to be redeemed in compliance with the requirements of the principal national security exchange, if any, on which the Securities are listed, or if the Securities are not listed by such method the Trustee shall deem fair and

-58-

60

reasonable. Securities redeemed in part must be redeemed only in integral multiples of $1,000. Redemption pursuant to the provisions relating to a Public Equity Offering must be made on a pro rata basis or on as nearly a pro rata basis as practicable (subject to the procedures of The Depository Trust Company or any other depositary).

(Q)   By amending Article XVI:

    (a)   by deleting Section 1604 (Release of Guarantors) in its entirety; and

    (b)   by deleting Section 1605 (Additional Guarantors) in its entirety.

(R)   By amending the entire Base Indenture by deleting, in all instances, the phrase "date of the indenture" and replacing it, in all instances, with the phrase "date of the First Supplemental Indenture"

SECTION 2. Attached as Exhibit A is the form of Security for the Securities to be issued under this Indenture.

SECTION 3. The Base Indenture, as supplemented and amended by this First Supplemental Indenture, is in all respects ratified and confirmed, and the Base Indenture and this First Supplemental Indenture shall be read, taken and construed as one and the same instrument. All provisions included in this First Supplemental Indenture supersede any similar provisions included in the Base Indenture unless not permitted by law.

SECTION 4. If any provision hereof limits, qualifies or conflicts with another provision hereof which is required to be included in this First Supplemental Indenture by any of the provisions of the Trust Indenture Act, such required provision shall control.

SECTION 5. All covenants and agreements in this First Supplemental Indenture by the Company shall bind its successors and assigns, whether so expressed or not.

SECTION 6. In case any provision in this First Supplemental Indenture or in the Securities shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions (or of the other series of Securities) shall not in any way be affected or impaired thereby.

SECTION 7. Nothing in this First Supplemental Indenture, expressed or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Holders of the Securities any benefit or any legal or equitable right, remedy or claim under this First Supplemental Indenture.

-59-

61

SECTION 8. This First Supplemental Indenture and each Security shall be deemed to a contract made under the laws of the State of New York and this First Supplemental Indenture and each such Security shall be governed by and construed in accordance with the laws of the State of New York.

SECTION 9. All terms used in this First Supplemental Indenture not otherwise defined herein that are defined in the Base Indenture shall have the meanings set forth therein.

SECTION 10. This First Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

-60-

62

       IN WITNESS WHEREOF, the parties hereto have caused this First Supplemental Indenture to be duly executed and attested, all as of the day and year first above written.

WINN-DIXIE STORES, INC.
as Issuer

By: _____
      Name:
      Title:

Attest:

_____
Name:
Title:

ASTOR PRODUCTS, INC.
as Guarantor

By: _____
      Name:
      Title:

Attest:

_____
Name:
Title:

CRACKIN' GOOD, INC.
as Guarantor

By: _____
      Name:
      Title:

63

Attest:

_____
Name:
Title:

                                        DEEP SOUTH PRODUCTS, INC.
                                        as Guarantor


                                        By: _____
                                            Name:
                                            Title:

Attest:

_____
Name:
Title:

                                        DIXIE PACKERS, INC.
                                        as Guarantor


                                        By: _____
                                            Name:
                                            Title:

Attest:

_____
Name:
Title:

64

MONTEREY CANNING CO.
as Guarantor

By: _____
          Name:
          Title:

Attest:

_____
Name:
Title:

WINN-DIXIE CHARLOTTE, INC.
as Guarantor

By: _____
          Name:
          Title:

Attest:

_____
Name:
Title:

WINN-DIXIE LOGISTICS, INC.
as Guarantor

By: _____
          Name:
          Title:

Attest:

_____
Name:
Title:

65

                                        WINN-DIXIE LOUISIANA, INC.
                                        as Guarantor


                                        By: _____
                                             Name:
                                             Title:

Attest:


_____
Name:
Title:

                                        WINN-DIXIE MONTGOMERY, INC.
                                        as Guarantor


                                        By: _____
                                             Name:
                                             Title:

Attest:


_____
Name:
Title:

                                        WINN-DIXIE PROCUREMENT, INC.
                                        as Guarantor


                                        By: _____
                                             Name:
                                             Title:

Attest:


_____
Name:
Title:

66

WINN-DIXIE RALEIGH, INC.
as Guarantor

By: _____
     Name:
     Title:

Attest:

_____
Name:
Title:

WILMINGTON TRUST COMPANY,
as Trustee,

By: _____
     Name:
     Title:

Attest:

_____
Name:
Title:

67

STATE OF                     )
                                )   ss.:
COUNTY OF               )

         On the _____ day of _____, 2001, before me personally came
_____, to me known, who, being by me duly sworn, did
depose and say that he is _____ of WINN-DIXIE STORES, INC., ASTOR
PRODUCTS, INC., CRACKIN' GOOD, INC., DEEP SOUTH PRODUCTS, INC., DIXIE PACKERS,
INC., MONTEREY CANNING CO., WINN-DIXIE CHARLOTTE, INC., WINN-DIXIE LOGISTICS,
INC., WINN-DIXIE LOUISIANA, INC., WINN-DIXIE MONTGOMERY, INC., WINN-DIXIE
PROCUREMENT, INC., WINN-DIXIE RALEIGH, INC. each of which are corporations
described in and which executed the foregoing instrument; that he knows the seal
of said corporation; that the seal affixed to said instrument is such corporate
seal; that it was so affixed by authority of the Board of Directors of said
corporation; and that he signed his name thereto by like authority.

                                       _____
                                       Name:

Notary Public
State of
My Commission expires on

68

STATE OF _____ )
                         ) ss.:
COUNTY OF _____ )

On the _____ day of _____, 2001, before me personally came
_____, to me known, who, being by me duly sworn, did
depose and say that he/she is _____ of WILMINGTON TRUST COMPANY,
one of the corporations described in and which executed the foregoing
instrument; that he/she knows the seal of said corporation; that the seal
affixed to said instrument is such corporate seal; that it was so affixed by
authority of the Board of Directors of said corporation; and that he/she signed
his/her name thereto by like authority.

                                       _____
                                       Name:

Notary Public
State of
My Commission expires on

69

EXHIBIT A: FORM OF SECURITY

THIS SECURITY IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITARY OR A NOMINEE OF A DEPOSITARY OR A SUCCESSOR DEPOSITARY. TRANSFERS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS IN WHOLE, BUT NOT IN PART, TO NOMINEES OF CEDE & CO. OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE.

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE COMPANY OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT AND ANY SUCH CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

[Face of the Note]

WINN-DIXIE STORES, INC.
-------------------

8 7/8% SENIOR NOTE DUE 2008

CUSIP NO. 974280 AB 5

No. _____                                    $300,000,000

        Winn-Dixie Stores, Inc., a Florida corporation (herein called the "Company," which term includes any successor Person under the Indenture hereinafter referred to), for value received, hereby promises to pay to _____ or registered assigns, the principal sum of $300,000,000 United States dollars on April 1, 2008, at the office or agency of the Company referred to below, and to pay interest thereon from March 29, 2001, or from the most recent Interest Payment Date to which interest has been paid or duly provided for, semiannually on April 1 and October 1 in each year, commencing October 1, 2001 at the rate of 8-3/8% per annum, subject to adjustments as described in the second following paragraph, in

70

United States dollars, until the principal hereof is paid or duly provided for. Interest shall be computed on the basis of a 360-day year comprised of twelve 30-day months.

The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in such Indenture, be paid to the Person in whose name this Security (or any Predecessor Security) is registered at the close of business on the Regular Record Date for such interest, which shall be the March 15 or September 15 (whether or not a Business Day), as the case may be, next preceding such Interest Payment Date. Any such interest not so punctually paid, or duly provided for, and interest on such defaulted interest at the interest rate borne by the Securities, to the extent lawful, shall forthwith cease to be payable to the Holder on such Regular Record Date, and may either be paid to the Person in whose name this Security (or any Predecessor Security) is registered at the close of business on a Special Record Date for the payment of such defaulted interest to be fixed by the Trustee, notice whereof shall be given to Holders of Securities not less than 10 days prior to such Special Record Date, or be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Securities may be listed, and upon such notice as may be required by such exchange, all as more fully provided in this Indenture.

Payment of the principal of, or any premium or interest on, this Security, and exchange or transfer of the Security, will be made at the office or agency of the Company in The City of New York maintained for that purpose, or at such other office or agency as may be maintained for such purpose, in dollars or other equivalent units of legal tender for payment of public or private debts in the United States of America; provided, however, that payment of interest may be made at the option of the Company by check mailed to the address of the Person entitled thereto as such address shall appear on the Security Register.

Reference is hereby made to the further provisions of this Security set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

This Security is entitled to the benefits of Guarantees by each of the Guarantors of the due and punctual payment and performance of the Guaranteed Obligations made in favor of the Trustee for the benefit of the Holders. Reference is hereby made to Article XVI of the Indenture for a statement of the respective rights, limitations of rights, duties and obligations under the Guarantees of each of the Guarantors.

Unless the certificate of authentication hereon has been duly executed by the Trustee referred to on the reverse hereof or by the authenticating agent appointed as provided in the Indenture by manual signature of an authorized officer, this Security shall not be entitled to any benefit under the Indenture, or be valid or obligatory for any purpose.

71

        IN WITNESS WHEREOF, the Company has caused this instrument to be duly
executed by the manual or facsimile signature of its authorized officers.

Dated:                                  WINN-DIXIE STORES, INC.

                                        By: _____

                                        Title: _____

Attest:

_____
Authorized Officer

                    TRUSTEE'S CERTIFICATE OF AUTHENTICATION

This Security is one of the 8 7/8% Senior Notes due 2008 referred to in the
within-mentioned Indenture.

                                        WILMINGTON TRUST COMPANY,
                                        as Trustee

                                        By: _____
                                             Authorized Signatory

72

[Reverse of the Note]

WINN-DIXIE STORES, INC.
8 7/8% Senior Note due 2008

This Security is one of a duly authorized issue of Securities of the Company designated as its 8 7/8% Senior Notes due 2008 (herein called the "Securities"), limited (except as otherwise provided in the Indenture referred to below) in aggregate principal amount to $300,000,000, issued under and subject to the terms of both an indenture, dated as of December 26, 2000 (herein called the "Base Indenture") and a First Supplemental Indenture, dated as of March 29, 2001 (herein called the "First Supplemental Indenture" and collectively with the Base Indenture, the "Indenture") among the Company, the Guarantors and Wilmington Trust Company, as trustee (herein called the "Trustee," which term includes any successor trustee under the Indenture), to which the Base Indenture, First Supplemental Indenture and all other indentures supplemental thereto reference is hereby made for a statement of the respective rights, limitations of rights, duties, obligations and immunities thereunder of the Company, the Guarantors, the Trustee and the Holders of the Securities, and of the terms upon which the Securities are, and are to be, authenticated and delivered.

The Indenture contains provisions for defeasance at any time of (a) the entire Indebtedness on the Securities and (b) certain restrictive covenants and related Defaults and Events of Default, in each case upon compliance with certain conditions set forth therein.

The Securities are subject to redemption at any time on or after April 1, 2005, at the option of the Company, in whole or in part, on not less than 30 nor more than 60 days' prior notice to the Holders by first-class mail, in amounts of $1,000 or an integral multiple thereof, at the following redemption prices (expressed as percentages of the principal amount), if redeemed during the 12-month period beginning April 1 of the years indicated below:

| YEAR | REDEMPTION PRICE |
|------|------------------|
| 2005 | 104.438% |
| 2006 | 102.219% |

and thereafter at 100% of the principal amount, in each case, together with accrued and unpaid interest, if any, to the Redemption Date (subject to the rights of Holders of record on relevant Regular Record Dates or Special Record Dates to receive interest due on an Interest Payment Date).

In addition, at any time prior to April 1, 2004, the Company, at its option, may use the net proceeds of one or more Public Equity Offerings to redeem up to an aggregate of 35% of the aggregate principal amount of Securities originally issued under the Indenture at a redemption price equal to 108.875% of the aggregate principal amount of the Securities redeemed, plus accrued and unpaid interest, if any, to the redemption date (subject to the rights of holders of record on relevant record dates to receive interest due on an interest payment date). At least 65% of the initial aggregate principal amount of Securities must remain outstanding immediately after the occurrence of such redemption. In order to effect this redemption, the Company must mail a

73

notice of redemption no later than 30 days after the closing of the related
Public Equity Offering and must complete such redemption within 60 days of the
closing of the Public Equity Offering.

        If less than all of the Securities are to be redeemed, the Trustee
shall select the Securities to be redeemed by such method as the Trustee shall
deem fair and appropriate and which may provide for the selection for redemption
of portions of the principal amount of Securities. Securities redeemed in part
must be redeemed only in integral multiples of $1,000. Redemption pursuant to
the provisions relating to a Public Equity Offering must be made on a pro rata
basis or on as nearly a pro rata basis as practicable (subject to the procedures
of DTC or any other depositary).

        Upon the occurrence of a Change of Control Event, each Holder may
require the Company to purchase such Holder's Securities in whole or in part in
integral multiples of $1,000, at a purchase price in cash in an amount equal to
101% of the principal amount thereof, plus accrued and unpaid interest, if any,
to the date of purchase, pursuant to a Change of Control Offer in accordance
with the procedures set forth in the Indenture.

        Under certain circumstances, in the event the Net Cash Proceeds
received by the Company from any Asset Sale, which proceeds are not used to
repay any Indebtedness under the Credit Facility then outstanding or invested in
properties or other assets that replace the properties and assets that were the
subject of the Asset Sale or which will be used in the business of the Company
or its Restricted Subsidiaries existing on the date of the First Supplemental
Indenture or in businesses reasonably related or reasonably incidental thereto,
exceeds a specified amount the Company will be required to apply such proceeds
to the repayment of the Securities and certain Indebtedness ranking pari passu
in right of payment to the Securities which Securities and Indebtedness are
purchased at the option of the Holder as described in this Indenture.

        In the case of any redemption or repurchase of Securities in accordance
with the Indenture, interest installments whose Stated Maturity is on or prior
to the Redemption Date will be payable to the Holders of such Securities of
record as of the close of business on the Regular Record Date or Special Record
Date referred to on the face hereof. Securities (or portions thereof) for whose
redemption and payment provision is made in accordance with the Indenture shall
cease to bear interest from and after the Redemption Date.

        In the event of redemption or repurchase of this Security in accordance
with the Indenture in part only, a new Security or Securities for the unredeemed
portion hereof shall be issued in the name of the Holder hereof upon the
cancellation hereof.

        If an Event of Default shall occur and be continuing, the principal
amount of all the Securities may be declared due and payable in the manner and
with the effect provided in the Indenture.

        The Indenture permits, with certain exceptions (including certain
amendments permitted without the consent of any Holders or with the consent of
the Holders of 75% of the Securities) as therein provided, the amendment thereof
and the modification of the rights and

74

obligations of the Company and the Guarantors and the rights of the Holders under the Indenture and the Securities and the Guarantees at any time by the Company and the Trustee with the consent of the Holders of a specified percentage in aggregate principal amount of the Securities at the time Outstanding. The Indenture also contains provisions permitting the Holders of specified percentages in aggregate principal amount of the Securities at the time Outstanding, on behalf of the Holders of all the Securities, to waive compliance by the Company and the Guarantors with certain provisions of the Indenture and the Securities and the Guarantees and certain past Defaults under the Indenture and the Securities and the Guarantees and their consequences. Any such consent or waiver by or on behalf of the Holder of this Security shall be conclusive and binding upon such Holder and upon all future Holders of this Security and of any Security issued upon the registration of transfer hereof or in exchange herefor or in lieu hereof whether or not notation of such consent or waiver is made upon this Security.

The Securities are subject to defeasance or covenant defeasance in accordance with the Indenture.

No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Company, any Guarantor or any other obligor on the Securities (in the event such Guarantor or such other obligor is obligated to make payments in respect of the Securities), which is absolute and unconditional, to pay the principal of, premium, if any, and interest on, this Security at the times, place, and rate, and in the coin or currency, herein prescribed, subject to the subordination provisions of the Indenture.

This Security is a global Security and is exchangeable for a definitive certificated Security only if (x) the Depositary notifies the Company that it is unwilling or unable to continue as depository for the global Security and no successor depositary is appointed by the Company within 90 days, (y) the Company, in its sole discretion, executes and delivers to the Trustee a Company Order to the effect that such global Security shall be so exchangeable, or (z) there shall have occurred and be continuing an Event of Default with respect to such Securities. Upon any such occurrence, if the beneficial owners of interests in a global Security are entitled to exchange such interests for definitive Securities, the Company shall deliver to the Trustee definitive securities and the Trustee is then required to authenticate and make available for delivery, in exchange for each portion of such surrendered global Security, a like aggregate principal amount of definitive Securities.

No service charge shall be made for any registration of transfer or exchange of Securities, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

Prior to due presentment of this Security for registration of transfer, the Company, any Guarantor, the Trustee and any agent of the Company, any Guarantor or the Trustee may treat the Person in whose name this Security is registered as the owner hereof for all purposes, whether or not this Security is overdue, and neither the Company, any Guarantor, the Trustee nor any such agent shall be affected by notice to the contrary.

75

THIS SECURITY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES THEREOF.

All terms used in this Security which are defined in the Indenture and not otherwise defined herein shall have the meanings assigned to them in the Indenture.

76

SUBSIDIARY GUARANTEE

For value received, each of the Guarantors named (or deemed herein to be named) below hereby absolutely, fully and unconditionally and irrevocably guarantees, jointly and severally with each other Guarantor, to the Holder of this Security the payment of principal of, and premium, if any, and interest on this Security upon which these Subsidiary Guarantees are endorsed in the amounts and at the time when due and payable, whether by declaration thereof, or otherwise, and interest on the overdue principal and interest, if any, of this Security, if lawful, and the payment or performance of all other obligations of the Company under the Indenture or the Securities, to the Holder of this Security and the Trustee, all in accordance with and subject to the terms and limitations of this Security and the Indenture. This Subsidiary Guarantee will not become effective until the Trustee duly executes the certificate of authentication on this Security. This Subsidiary Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles thereof.

IN WITNESS WHEREOF, each of the Guarantors has caused this Subsidiary Guarantee to be duly executed.

Dated:

ASTOR PRODUCTS, INC.
as Guarantor

By: _____

Title: _____


CRACKIN' GOOD, INC.
as Guarantor

By: _____

Title: _____


DEEP SOUTH PRODUCTS, INC.
as Guarantor

By: _____

Title: _____

DIXIE PACKERS, INC.
as Guarantor

By: _____

Title: _____


MONTEREY CANNING CO.
as Guarantor

By: _____

Title: _____


WINN-DIXIE CHARLOTTE, INC.
as Guarantor

By: _____

Title: _____


WINN-DIXIE LOGISTICS, INC.
as Guarantor

By: _____

Title: _____


WINN-DIXIE LOUISIANA, INC.
as Guarantor

By: _____

Title: _____

78

WINN-DIXIE MONTGOMERY, INC.
as Guarantor

By: _____

Title: _____


WINN-DIXIE PROCUREMENT, INC.
as Guarantor

By: _____

Title: _____


WINN-DIXIE RALEIGH, INC.
as Guarantor

By: _____

Title: _____

Attest:

_____