Hearing Date: August 18, 2005, 1:00 p.m.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: ) | Case No. 05-03817-3F1 |
| ) | |
| WINN-DIXIE STORES, INC., et al., ) | Chapter 11 |
| ) | |
| Debtors.[1] ) | Jointly Administered |
| ) | |

**DEBTORS' OBJECTION TO PENMAN PLAZA ASSOCIATES, LTD.'s MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), submit this objection (the "Objection") in response to the Motion to Compel Assumption or Rejection of Unexpired Lease Filed by Penman Plaza, Ltd. (the "Motion") (Docket No. 1790). In opposition to the Motion, the Debtors respectfully represent as follows:

**Background**

1.   Winn Dixie Montgomery, Inc. (as successor in interest to Winn-Dixie Atlanta, Inc.) ("Winn-Dixie"), is a party to a lease dated October 7, 1994, of a store located in Neptune Beach, Florida (as amended, the "Lease"). Penman Plaza Associates, Ltd. ("Penman Plaza") is the lessor under the Lease.

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2. On May 6, 2005, the Court entered an Order Under 11 U.S.C. § 365(d)(4) Granting Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Order") (Docket No. 1070). By the Order, the Court extended to September 19, 2005, the Debtors' time to assume or reject all but two of the Debtors' nine hundred unexpired leases of non-residential real property.

3. To date, the Debtors have rejected 180 leases and sold or are in the process of selling over 100 leases. The Debtors have not decided whether to assume or reject the Lease for Penman Plaza. The Penman Plaza store is presently not operating up to the Debtors' standards, however, the Debtors believe it is in their interest to analyze the store's performance for some time after the new footprint is implemented to decide whether the Debtors should keep the store open or close it.

4. By the Motion, Penman Plaza asks the Court to compel the Debtors to assume or reject the Penman Lease early on the grounds that (i) Winn-Dixie has failed "to pay amounts owed by it prepetition" and payable under the Lease postpetition, and (ii) any delay "disrupts the proper business operations" of the landlord.

5. The Motion should be denied for the reasons that Winn-Dixie (i) needs additional time to decide whether to assume or reject the Lease, (ii) is current on all of its postpetition obligations under the Lease, and (iii) Penman has failed to show cause to compel Winn-Dixie to assume or reject the Lease early.

**Argument**

6. By the Order, the Debtors have until September 19 within which to assume or reject the Lease. Courts generally do not compel debtors to assume or reject a contract early:

> Courts rarely force a debtor into assuming or rejecting a contract. *See Id.* at 1216 (to rush the debtor into what may be an improvident decision "to assume or reject an executory contract does not further the purposes of the reorganization provisions."). The reason for the reluctance is that the "interests of the creditors collectively and the bankruptcy estate as a whole will not yield easily to the convenience or advantage of one creditor out of many." *See In re Public Service Co. of New Hampshire,* 884 F.2d 11, 14-15 (1st Cir.1989), *Wheeling-Pittsburgh,* 54 B.R. at 388, *see also In re Physician Health Corporation,* 262 B.R. 290 (Bankr.D.Del.2001) (denying motion compelling assumption or rejection of executory contract when bankruptcy case was only five months old) and *In re St. Mary Hosp.,* 89 B.R. 503, 513-14 (Bankr.E.D.Pa.1988) ("the interests of the Debtor here in denying a precipitous assumption or rejection appear to us much greater than the interests of HHS in forcing a prompt resolution.").
>
> *In re Kmart Corp.*, 290 B.R. 614

Courts recognize the debtors' need to analyze its leases and to "intelligently decide whether assumption or rejection is in the best interest of the estate." *See, e.g., In re Service Merchandise Co.*, 256 B.R. 744 (Bankr. M.D. Tenn. 2000).

7. A landlord may move to shorten this period "for cause." *See, e.g., In re Service Merchandise Co., Inc.,* 256 B.R. 744 (Bankr. M.D. Tenn. 2000). Although "cause" has not been well defined, courts consider whether debtors continue to timely meet all post-petition obligations under a lease pursuant to 11 U.S.C. § 365(d)(3). *In re Service Merchandise* at 749.

8. Penman Plaza argues that Winn-Dixie is in violation of §365(d)(3) because it owes common area maintenance ("CAM") charges in the amount of $26,665.81. Under the terms of the Lease, the Debtors pay a fixed amount for CAM each month (currently $3,445.48) representing the estimated monthly amounts owed on account of CAM charges. As the payment history attached as Exhibit A reflects, the

Debtors have timely paid their estimated CAM charges each month. Under the terms of the Lease, at the end of each calendar year, Penman Plaza performs a reconciliation and either Penman Plaza or the Debtors are required to reimburse the other to the extent that the estimated CAM charges paid over the course of the year differ from the actual amounts that are owed. The CAM charges Penman Plaza asserts are due are attributable to 2004 amounts that Penman Plaza claims are due because of a post-petition reconciliation. It is without dispute that the amount Penman Plaza claims is due *accrued prepetition*. Penman Plaza argues that the CAM is payable under §365(d)(3) however, because it is *payable* under the Lease postpetition.

9. 11 U.S.C. §365(d)(3) provides in part:

> The Trustee shall timely perform all obligations of the debtor, except those specified in section 365(b)(2) arising from and *after the order for relief* under any unexpired lease of nonresidential real property until such lease is assumed or rejected...

(Emphasis added).

10. Under the "accrual" approach adopted by the Seventh Circuit in 1998, these CAM charges are not due and payable under §365(d)(3). Courts adopting the accrual approach interpret §365(d) consistently with the pre-1984 practice under section 503(b)(1) of the Bankruptcy Code, which required the debtor to timely pay only the pro rata amount of rent, taxes and other obligations *accruing* during the post-petition, pre-rejection period. *See In re Handy Andy Home Improvement Ctrs., Inc.*, 144 F.3d 1125, 1126-28 (7th Cir. 1998); *See, also, Newman v. McCrory Corp.* (In re McCrory Corp.), 210 B.R. 934, 936-40 (S.D.N.Y. 1997); *Schneider & Reiff v. William Schneider, Inc.* (In re William Schneider, Inc.), 175 B.R. 769, 771-73 (S.D. Fla. 1994); *Child World, Inc. v.*

*Campbell/ Mass. Trust* (In re Child World, Inc.), 161 B.R. 571, 573-77 (S.D.N.Y. 1993); *Heathcon Holdings, LLC v. Dunn Indus., LLC* (In re Dunn Indus., LLC), 320 B.R. 86, 92-93 (Bankr. D. Md. 2005); *In re Phar-Mor, Inc.*, 290 B.R. 319, 322-28 (Bankr. N.D. Ohio 2003); *In re Travel 2000, Inc.*, 264 B.R. 444, 450-51 (Bankr. W.D. Mich. 2001); *In re Oscar Hornsby, Inc.*, No. 00-61313, 2001 Bankr. LEXIS 1062, at *4-6 (Bankr. E.D. Ky. Jan. 26, 2001); *In re All for A Dollar, Inc.*, 174 B.R. 358, 361-62 (Bankr. D. Mass. 1994); *In re Ames Dep't Stores, Inc.*, 150 B.R. 107, 108-09 (Bankr. S.D.N.Y. 1993); *In re Warehouse Club, Inc.*, 184 B.R. 316, 317-18 (Bankr. N.D. Ill. 1995); *Daugherty v. Kenerco Leasing, Inc.* (*In re Swanton Corp.*), 58 B.R. 474, 475 (Bankr. S.D.N.Y. 1986). The holdings of these courts support the view "that Congress did not intend § 365(d)(3) to include debtor-tenants' rental obligations arising prepetition, but billed postpetition." *Child World*, 161 B.R. at 574. *See also Handy Andy*, 144 F.3d at 1128 (discussing Congressional intent); *William Schneider*, 175 B.R. at 772-73 (discussing legislative history).

11. These holdings are consistent with the language of the statute itself, as section 365(d)(3) of the Bankruptcy Code requires the debtor to "timely perform all the obligations of the debtor . . . *arising from and after* the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected." 11 U.S.C. § 365(d)(3) (emphasis added). *See In re Furr's Supermarkets, Inc.*, 283 B.R. at 66 ("Under the proration rule, lessors are entitled to lease payments under [section] 365(d)(3) arising during and attributable to the period after the order for relief. . . .").

12. Under the contrary "billing date approach" adopted by the Third Circuit in 2001, however, these CAM charges would be due and payable under §365(d)(3) because

5

the obligation "first become due and enforceable after the order [for relief] under the terms of the lease." *Centerpoint Props. v. Montgomery Ward Holding Corp.* (In re Montgomery Ward Holding Corp.), 268 F.3d 205, 209 (3d Cir. 2001). *See also Koenig Sporting Goods, Inc. v. Morse Road Co.* (*In re Koenig Sporting Goods, Inc.*), 203 F.3d 986, 989-90 (6th Cir. 2000); *Inland's Monthly Income Fund, L.P. v. Duckwall-ALCO Stores, Inc.* (*In re Duckwall-ALCO Stores, Inc.*), 150 B.R. 965, 974-76 & n.23 (D. Kan. 1993); *In re R.H. Macy & Co.*, 152 B.R. 869, 873-74 (Bankr. S.D.N.Y. 1993), *aff'd sub nom. Bullock's Inc. v. Lakewood Mall Shopping Ctr.* (*In re R.H. Macy & Co.*), No. 93 Civ. 4414 (SS), 1994 WL 482948 (S.D.N.Y. Feb. 23, 1994); *In re Appletree Mkts. Inc.*, 139 B.R. 417, 418-21 (Bankr. S.D. Tex. 1992).

13. In 2002, the Bankruptcy Appellate Panel for the Tenth Circuit recognized this split of authority, considered both the Seventh Circuit approach of *Handy Andy,* and the Third Circuit approach of *Montgomery Ward* and decided the accrual approach was the better reasoned:

> [W]e conclude that the proration rule as explained by Judge Posner's formulation in *Handy Andy* is the better-reasoned approach and is more consistent with the legislative purposes underlying §365(d)(3)'s enactment--the provision of current relief for lessors who find themselves as 'involuntary creditors.'
>
> *Furr*, 283 B.R. at 68.

14. *Furr* recognized that the accrual approach is more consistent with the Bankruptcy Code as a whole and that in contrast, the billable approach would turn the priority scheme of the Code on its head:

> To hold otherwise would elevate prepetition and preconversion rents and expenses above other similarly situated trade creditors....

6

> The Appellants have given an unwarranted expansion to the meaning and purpose of §365(d)(3)--a meaning that transfers pre-petition claims into post-petition claims and results in lessors leap-frogging over other unsecured creditors.

*Furr*, 283 B.R. at 68.

15. Under the better reasoned accrual approach, the CAM charges at issue are not payable under §365(d)(3) because the charges *accrued prepetition*. For this reason, the Debtors are not in violation of §365(d)(3).

16. Penman Plaza also contends that the Debtors should be compelled to assume or reject the Lease early because the delay "creates a level of uncertainty" and if the Debtors ultimately reject the Lease, Penman Plaza will have lost its ability to market the Lease "during the peak time of year for negotiating leases." Even if true, these allegations fall short of "cause." In *In re Service Merchandise*, the landlords argued that they were prejudiced by the continued state of uncertainty by the debtors' indecision. The Court agreed with the debtors that the prejudice to the landlords was not outweighed by the needs of the debtors to fully evaluate a chapter 11 exit strategy before deciding whether to assume or reject the leases:

> The debtors recognize the potential for inconvenience to the landlords in having to wait for a decision on assumption or rejection, but argue that this is no different from the inconvenience suffered by every landlord with a chapter 11 tenant. This is a large and complex case. The court agrees with the debtors
>
> ….
>
> These leases are absolutely essential assets of the estate, and requiring the debtors to make a decision on assumption or rejection before a clear chapter 11 exit strategy is fully developed would not be in the best interest of the estate.

*Id.* at 749.

**Conclusion**

The Motion should be denied. The Debtors are current on all postpetition obligations under the Lease and Penman Plaza has failed to show cause to require the Debtors to assume or reject the Leases early.

Dated: August 12, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By  /s/ D. J. Baker | By  /s/ Cynthia C. Jackson |
|     D. J. Baker |     Stephen D. Busey |
|     Sally McDonald Henry |     James H. Post |
|     Adam S. Ravin |     Cynthia C. Jackson, |
|     Denise Kaloudis |     Florida Bar Number 498882 |
| Four Times Square | 225 Water Street, Suite 1800 |
| New York, New York 10036 | Jacksonville, Florida 32202 |
| (212) 735-3000 | (904) 359-7700 |
| (212) 735-2000 (facsimile) | (904) 359-7708 (facsimile) |
| djbaker@skadden.com | cjackson@smithhulsey.com |
| | |
| Co-Attorneys for Debtors | Co-Attorneys for Debtors |

00504664