Hearing Date: September 1, 2005, 1:00 p.m.
Objection Deadline: August 25, 2005, 4:00 p.m.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

### DEBTORS' MOTION FOR ORDER FURTHER EXTENDING
### EXCLUSIVE PERIODS FOR FILING CHAPTER 11 PLANS AND
### OBTAINING ACCEPTANCES OF SUCH PLANS

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move for entry of an order under 11 U.S.C. § 1121(d) granting an additional extension of their exclusive periods for proposing and obtaining acceptances of one or more plans of reorganization (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

### Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2.    The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, an official committee of unsecured creditors (the "Creditors Committee") was appointed to serve in these cases pursuant to section 1103 of the Bankruptcy Code.

3.    The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  As of the Petition Date, the Debtors were considered to be the eighth-largest food retailer in the United States and one of the largest in the Southeast, with more than 900 stores in the United States.  The Debtors have announced and are engaged in a footprint reduction that is expected to result in the sale or closure of 326 stores.

4.    This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.    The statutory predicates for the relief requested in the Motion are sections 105(a) and 1121(d) of the Bankruptcy Code.

**Exclusive Periods**

6.    Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose a plan of reorganization (the "Exclusive Proposal Period").  In addition, section 1121(c)(3) of the Bankruptcy Code provides that if a debtor proposes a plan within the Exclusive Proposal Period, it has the balance of 180 days after the commencement of the chapter 11 case to

2

solicit acceptances of such plan (the "Exclusive Solicitation Period").  During the Exclusive

Proposal Period and the Exclusive Solicitation Period (together, the "Exclusive Periods"), plans

may not be proposed by any party in interest other than the debtor.

7.      Under section 1121(d) of the Bankruptcy Code, the Exclusive Periods may be

extended for cause.  Pursuant to the Order Extending Exclusive Periods for Filing Chapter 11

Plans and Obtaining Acceptances of Such Plans dated June 16, 2005 (Docket No. 1747), this

Court has previously extended the Debtors' Exclusive Periods to September 19, 2005 in the case

of the Exclusive Proposal Period and to November 21, 2005 in the case of the Exclusive

Solicitation Period.

## Relief Requested

8.      By this Motion, the Debtors request entry of an order further extending their

Exclusive Proposal Period for approximately 90 days, to and including December 19, 2005, and

extending their Exclusive Solicitation Period also for approximately 90 days, to and including

February 20, 2006.  The Debtors further request that their right to seek additional extensions of

one or both of the Exclusive Periods be preserved, without prejudice to the rights of other parties

in interest to object to any additional extensions or to seek a reduction of the Exclusive Periods as

previously extended.

## Basis for Relief

9.      The Exclusive Periods are intended to afford the Debtors a full and fair

opportunity to rehabilitate their businesses and to negotiate and propose one or more

reorganization plans without the disruption and deterioration of their businesses that might be

caused by the filing of competing plans of reorganization by nondebtor parties.

10.    The Debtors have made significant progress towards rehabilitation since the Petition Date.  The Debtors are seeking to further extend each of their Exclusive Periods by approximately 90 days in order to afford the Debtors the time necessary to commence the process of negotiating a plan of reorganization.  Because of the size and complexity of these cases, the Debtors believe that, even if they continue to make substantial progress in these cases, it is likely that they will need to request a further extension of the Exclusive Periods.

**Applicable Authority**

11.    Section 1121(d) of the Bankruptcy Code provides that this Court may extend the Exclusive Periods for cause:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

12.    The factors which Bankruptcy Courts examine in determining whether or not cause exists to extend the Exclusive Periods include: (i) the size and complexity of the case; (ii) the debtor's progress in resolving issues facing the estate; and (iii) whether an extension of time will harm the debtor's creditors.  See, e.g., In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re Truck Extrusion Corp., 844 F.2d 1142, 1161 (5th Cir. 1988); In re Homestead Partners, Ltd., 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996) (among other factors, "sufficient 'cause' may exist when … the presence of complex legal issues has occupied much of the debtor's plan-making opportunity") (citations omitted).

13.    In evaluating these factors, the courts are given maximum flexibility to review the particular facts and circumstances presented in the cases before them.  See In re Public Serv. Co.

4

of N.H., 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent ... [is] to promote

maximum flexibility . . . ."); First Am. Bank of N.Y. v. SW. Gloves & Safety Equip., Inc., 64 B.R.

963, 965 (D. Del. 1986) (acknowledging flexibility that section 1121(d) provides); H.R. Rep. No.

95-595, at 232 (1978) ("[T]he bill allows the flexibility for individual cases that is unavailable

today.") as reprinted in 1978 U.S.C.C.A.N. 5963, 6191; In re Hoffinger Indus., Inc., 292 B.R.

639, 644 (B.A.P. 8th Cir. 2003) (stating that not all factors "are relevant in every case" and court

has discretion to "decide which factors are relevant and give the appropriate weight to each").

     14.    In the Debtors' cases, the 90-day extensions of each of the Exclusive Periods are

fully justified for the reasons set forth below:

> (a)   The Debtors' cases are large and complex;
>
> (b)   The Debtors have made good-faith progress in positioning themselves to move forward with the negotiation of a plan; and
>
> (c)   This requested extension will not prejudice the rights of creditors.

A.     The Debtors' cases are complex.

     15.    Courts frequently grant an extension of the exclusive periods based upon the size

and complexity of a chapter 11 case.  See In re Texaco, Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y.

1987); McLean, 87 B.R. at 834; Homestead 197 B.R. at 720 (recognizing the presence of

complex legal issues as one of the bases for cause pursuant to 11 U.S.C. § 1121(d)) ; see also

Gaines v. Perkins (In re Perkins), 71 B.R. 294, 296-97 (W.D. Tenn. 1987) (in case involving 100

creditors holding approximately 225 claims aggregating $10 million against estate valued at $13

million, district court affirmed bankruptcy court's enlargement of the exclusivity period and held

that cause may exist if the case is unusually large).

     16.    Here, the Debtors' chapter 11 cases are large and complex.  Their financial

structure consists of  (a) an $800 million debtor-in-possession secured financing facility, (b) other

prepetition secured obligations, (c) publicly-traded senior unsecured notes, with a remaining principal amount of approximately $300 million (due 2008), (d) trade, litigation and other general unsecured liabilities and (e) publicly-held equity securities at the parent level.  There are thousands of creditors and other parties in interest in these cases --  claim bar date notices were sent to in excess of 290,000 parties in interest.

17.    The size and complexity of the Debtors' cases is further highlighted by considering their corporate structure and workforce.  Specifically, Winn-Dixie, a publicly-owned Florida corporation, is the ultimate parent of a group of companies that includes the twenty-four Debtors in these cases.  The Debtors conduct business through their corporate headquarters in Jacksonville, Florida and operate grocery stores and other facilities throughout the Southeast United States.  The Debtors also have affiliates in the Bahamas, which are not involved in these cases.

18.    In sum, the sheer size and complexity of the Debtors' businesses and chapter 11 cases constitute cause to extend the Exclusive Periods.  Although the Debtors have previously been granted one extension of the Exclusive Periods, the Debtors submit that the further extension now being sought is reasonable and appropriate given the complexity and size of these cases, and is not larger than extensions granted by many other courts in cases of similar, and even lesser, size.

B.    The Debtors have made good faith progress toward proposing a plan.

19.    Since the Petition Date, the Debtors have made significant progress in their chapter 11 cases, including the following:

(a)    Early on, the Debtors' management focused on stabilizing the Debtors' businesses and responding to the many time-consuming demands that inevitably accompany the commencement of a chapter 11 case,

6

including responding to myriad inquiries from vendors, utilities, taxing authorities, concerned employees and other parties in interest.

(b)  The Debtors obtained approval of the various first day motions filed in this case and have taken necessary steps to implement the authorizations granted by such orders.

(c)  The Debtors obtained final approval and implemented the closing of an $800 million debtor-in-possession financing facility.

(d)  The Debtors received over 485 reclamation demands asserting aggregate claims of approximately $125 million.  The Debtors reached a consensual resolution of reclamation procedures to be applied in these cases, which is reflected in the final reclamation order, dated April 4, 2005 (the "Final Reclamation Order") (Docket No. 626).  Pursuant to the Final Reclamation Order, as modified by order dated May 19, 2005, extending the Debtors' time to file statements of reclamation until June 30, 2005, the Debtors subsequently served over 485 statements of reclamation.  Thereafter, the Debtors and certain reclamation trade vendors entered into discussions which resulted in an agreement for (i) the establishment of a trade vendor lien program (ii) procedures for the calculation and treatment of trade vendors' reclamation and general trade claims and for those trade vendors that participate in the trade vendor lien program (the "Reclamation/Trade Lien Program Stipulation").  On July 29, 2005, the Court approved the Reclamation/Trade Lien Program Stipulation.

(e)  The Debtors resolved the vast majority of the approximately 140 "PACA" claims totaling approximately $30 million, with less than 8 claims to be reconciled with the vendors.  The Debtors filed a report with the Court (Docket No. 1079) in which they (i) detailed the "Allowed PACA Claims," (ii) set forth whether such claims were paid or scheduled to be paid, and (iii) identified the PACA Claims that the Debtors believed to be invalid. One objection to the PACA report remains unresolved and a hearing before the Court is scheduled for August 18, 2005 to determine such matter.

(f)  The Debtors have complied with the various reporting requirements imposed by the United States Trustee, including the submission of initial and monthly reports.

(g)  The Debtors have prepared and filed statements of financial affairs and schedules of assets, liabilities and contracts (and certain amendments to such schedules) consistent with the Bankruptcy Code and Bankruptcy Rules.

(h)   The Debtors have complied with due diligence requests from the Creditors' Committee, turning over documents for review by advisors to the Creditors' Committee.

(i)   The Debtors obtained court approval under section 365 of the Bankruptcy Code to extend the time period (to September 19, 2005) for assuming or rejecting unexpired leases of non-residential real property.  Contemporaneous with the filing of this Motion the Debtors have filed a motion seeking to further extend such time period by approximately 90 days.  Additionally, through the filing of three motions, the Debtors obtained Court approval to reject approximately 180 unexpired leases of non-residential real property.  A fourth motion seeking to reject four leases was filed on August 12, 2005 and is scheduled to be heard by the Court on September 1, 2005.  The Debtors have continued reviewing their hundreds of remaining unexpired non-residential real property leases to determine whether rejection, assumption or assignment of such leases is in the best interests of their estates.

(j)   The Debtors have sought authority to reject approximately 82 unexpired executory contracts and unexpired leases relating to personal property and services.  On July 29, 2005, the Debtors filed a Motion seeking to reject two additional executory contracts, the hearing on which is scheduled for August 18, 2005.  The Debtors are continuing to analyze their hundreds of remaining executory contracts and unexpired leases in order to determine whether rejection, assumption or assignment of such leases is in the best interests of their estates.

(k)   The Debtors have obtained an order of the Court establishing an August 1, 2005 bar date for filing proofs of claim and approving procedures for providing mail and publication notice of the bar date, and they have taken the necessary steps to implement the bar date by complying with the mail and publication notice procedures.  As of August 1, 2005, the Debtors' claims agent had received approximately 10,500 proofs of claim.

(l)   The Debtors are preparing to commence the process of reconciling claims and, as part of that process, will be asking the Court to approve settlement procedures for personal injury and other litigation claims.

(m)   The Debtors have obtained approval, pursuant to section 363 of the Bankruptcy Code, to sell several assets including (i) two company airplanes for a total of $32 million; (ii) the pharmaceutical prescriptions and related inventory at approximately 140 stores that were targeted for closure; and (iii) leases, equipment and inventory

from three previously closed stores to Food Lion, LLC. Additionally, the Debtors have sought authority to sell certain de minimis assets, such as vehicles, equipment, store displays and machinery.

(n) The Debtors, who depend upon approximately 800 utility companies, have negotiated resolutions with certain utility companies that made adequate assurance requests or made demands on bonds which secured the payment of prepetition utility services to the Debtors. The Debtors are continuing to negotiate or litigate with other utility companies as to adequate assurance issues. In addition, the Debtors have resolved all but one objection to the motion for an order prohibiting the discontinuation of utility services and establishing a procedure under which utility companies could seek additional adequate assurance of payment. The Debtors are continuing to negotiate the remaining objection to that motion.

20. Additionally, and perhaps most significantly, the Debtors, in consultation with their major creditor constituencies, have focused substantial attention on the formulation and implementation of a market area reduction program that is expected to result in the sale or closure of 326 stores (the "Footprint Process"). The purpose of the Footprint Process is to enable the Debtors to focus on their strongest markets where they have a significant market share position, significantly reducing the number of stores and other facilities in which they operated as of the Petition Date.

21. The Footprint Process is now well underway. On July 1, 2005, the Debtors filed the Motion for Order (A) Authorizing the Sale of Assets Free and Clear of Liens, Claims and Interest and Exempt from Taxes, (B) Authorizing the Assumption and Assignment of Leases and Contracts and (C) Granting Related Relief (Docket No. 1961), pursuant to which they sought, among other things, authority to sell 79 stores. An auction was held on July 18, 2005 at which bids were accepted on 102 stores. Following the closing of certain contingency periods, on July 27, 28 and 29, 2005, the Debtors obtained Court approval for the sale of 84 stores. Closings on these stores are expected to occur no later than September 30, 2005.

22.     The Debtors have obtained Court approval of procedures for conducting going-out-of-business sales (the "GOB Sales") at certain of the stores that are being exited.  Such sales are currently underway at approximately 240 stores and are scheduled to be completed by the end of September, 2005.

23.     The Footprint Process represents a major step toward achieving the proper business foundation for a consensual plan of reorganization.  Any serious discussions regarding the plan of reorganization process are dependent upon the development of a business plan that reflects the major changes that the Footprint Process entails.  Before a realistic business plan can be developed it is necessary to, among other things, conclude the store sales and GOB Sales, monitor marginal stores in the existing footprint, and assess the effectiveness of the marketing and merchandising turnaround initiatives that the Debtors put in place.

24.     Based upon the reorganization progress demonstrated to date, this second requested extension of the Exclusive Periods is fully justified on the particular facts of these cases.  Moreover, under the circumstances, a premature termination of the Exclusive Periods would deny the Debtors a meaningful opportunity to negotiate and propose a confirmable plan, and would be antithetical to the paramount reorganization objective of chapter 11.  A termination of the Debtors' Exclusive Periods at this time would encourage the development of competing multiple plans that could lead to unwarranted confrontations, litigation and increased administrative costs.

C.      Creditors will not be prejudiced by an extension.

25.     The requested extension of the Exclusive Periods will not prejudice the legitimate interests of any creditor or other party in interest.  To the contrary, the proposed extension will advance the Debtors' efforts to preserve value and avoid unnecessary and wasteful motion practice.

10

26.     Moreover, given the current posture of these cases, it would be premature and counter-productive for any non-Debtor party in interest to initiate the plan proposal process. Instead, the requested extension will increase the likelihood of a consensual resolution of these cases that preserves reorganization value much more than any plan that the Debtors might file at this time simply to preserve their exclusive rights -- or any creditor initiated plan process that lacks necessary foundation and support.

D.      Conclusion.

27.     In short, the Debtors deserve and should be afforded a full and fair opportunity to commence the process of negotiating a chapter 11 plan that builds on the significant reorganization progress made to date and benefit from the undertakings planned for the next several months.  Accordingly, the requested extension is entirely warranted under the circumstances.

28.     Courts in various jurisdictions have been willing to grant subsequent extensions of exclusivity periods.   In re Ames Dep't Stores, Inc., No. 01-42217 (REG) (Bankr. S.D.N.Y. Dec. 18, 2001) (Gerber, J.) (granting subsequent extension of exclusive period for approximately 165 days); In re Safety-Kleen Corp., No. 00-2303 (PJW) (Bankr. D. Del. Apr. 13, 2001) (Walsh. J.) (granting subsequent extension of exclusive period for approximately 135 days); In re Caldor Corp., No. 95-44080 (JLG) (Bankr. S.D.N.Y. Aug. 12, 1998) (Garrity, J.) (granting subsequent extension of exclusive period for approximately 180 days); In re Kmart, No. 02-02474  (SPS) (Bankr. N.D. Ill. Feb. 25, 2003) (Sonderby, S.) (granting a subsequent extension for approximately 122 days).

**Notice**

29.    Notice of the Motion has been provided to (a) counsel to the Office of the United

States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the

Creditors' Committee, and (d) the other parties in interest named on the Master Service List

maintained in these cases.  No other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order

substantially in the form attached as Exhibit A, extending their Exclusive Proposal Period to

December 19, 2005, and extending their Exclusive Solicitation Period to and including February

20, 2006, without prejudice to the Debtors' rights to seek further extensions, and (ii) grant the

Debtors such other and further relief as is just and proper.


Dated: August 12, 2005

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By ____*s/ D. J. Baker*_____          By ____*s/ Cynthia C. Jackson*_____
      D. J. Baker                              Stephen D. Busey
      Sally McDonald Henry                     James H. Post
      Rosalie Walker Gray                      Cynthia C. Jackson,
      Adam S. Ravin                            Florida Bar Number 498882
Four Times Square                        225 Water Street, Suite 1800
New York, New York 10036                 Jacksonville, Florida  32202
(212) 735-3000                           (904) 359-7700
(212) 735-2000 (facsimile)               (904) 359-7708 (facsimile)
djbaker@skadden.com                      cjackson@smithhulsey.com

Co-Attorneys for Debtors                 Co-Attorneys for Debtors

# **EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER FURTHER EXTENDING EXCLUSIVE PERIODS FOR FILING CHAPTER 11 PLANS AND OBTAINING ACCEPTANCES OF SUCH PLANS

These cases came before the Court for hearing on September 1, 2005, upon the motion of Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned cases, as debtors and debtors-in-possession (the "Debtors"), for entry of an order under 11 U.S.C. §1121(d) further extending their exclusive periods for proposing and obtaining acceptances of one or more plans of reorganization for an additional 90 days (the "Motion"). The Court has read the Motion and considered the representations of counsel. Based upon the representations of counsel and without objection by the United States Trustee or any other interested parties, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is GRANTED as provided in this Order.

2. The Debtors' Exclusive Proposal Period is extended to and including Decemer 19, 2005.

3. The Debtors' Exclusive Solicitation Period is extended to and including February 20, 2006.

4.    Entry of this Order is without prejudice to (a) the Debtors' right to seek from this Court other or further extensions of the Exclusive Periods, or (b) any party in interest's right to seek to reduce the Exclusive Periods for cause.

Dated September ___, 2005 in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

2