## BILL OF SALE, ASSIGNMENT AND ASSUMPTION OF LEASE AND SUBLEASE
### [Store #2708, Smyrna, Georgia]

**THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Agreement") is made as of August 9, 2005, by and between **WINN-DIXIE RALEIGH, INC.**, a Florida corporation (hereinafter referred to as "Assignor"), and **C.Y. YU, INC.**, a Georgia corporation (hereinafter referred to as "Assignee");

### RECITALS:

A. Assignor is the tenant of the store (the "Store"), listed on Exhibit A to this Agreement by Assignor's designated Store number, under the lease, including amendments thereto (the "Lease") described on Exhibit A to this Agreement. The Store occupies the leased premises as described in the Lease (the "Premises"). The landlord or lessor under the Lease is referred to herein as the "Landlord".

B. Assignor filed a voluntary petition (the "Petition") for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "Filing Date") and has operated its business as a debtor-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date. By order entered on April 13, 2005, the Chapter 11 bankruptcy case of Assignor was transferred to the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") where it is being administered under case no. 05-03817-3F1 (the "Bankruptcy Case").

C. Assignor has agreed to sell and assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the Lease, (ii) all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, if any, together with all amendments thereto, described on Exhibit A (collectively, whether one or more, the "Sublease"), and (iii) Assignor's interest in all fixtures and all equipment owned by Assignor and located in the store building or buildings now existing on the Premises (the "Building"), including but not limited to Assignor's interest in (i) heating and air conditioning systems, facilities used to provide any utility services, or other similar services to the Building, elevators, docks, lifts, doors, storefronts, ceilings, walls, partitions, lighting fixtures, and flooring (collectively, the "Improvements"), and (ii) except for the items identified on Schedule 1 to this Agreement, the trade fixtures and equipment owned by Assignor and located in the Building (the "Equipment"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Sublease after the Closing Date, all subject to and in accordance with the terms of the

Lease, the Sublease, and this Agreement. The subtenant or sublessee under the Sublease is referred to herein as the "<u>Subtenant</u>".

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1. **<u>SALE AND ASSIGNMENT</u>**.

    (a) Subject to the terms and conditions of this Agreement and for the consideration set forth below, Assignor hereby sells, assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

    (b) Subject to the terms and conditions of this Agreement and for the consideration set forth below, Assignor hereby sells, assigns, transfers, conveys, and delivers to Assignee the Improvements and Equipment, free and clear of any and all liens or other encumbrances, to the extent permitted under the Bankruptcy Code.

    (c) Subject to the terms and conditions of this Agreement and for the consideration set forth below, Assignor hereby sells, assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to the Sublease and all the rights, benefits and privileges of the landlord or lessor thereunder.

    (d) The sale and assignments described in this <u>Section 1</u> are referred to, collectively and individually, as the "<u>Assignment</u>". The Assignment shall be effective as of the Closing Date (as defined herein).

    (e) Assignee acknowledges and agrees that Assignor's obligations under this Agreement are subject to higher or otherwise better offers and conditioned upon the entry of an order of the Bankruptcy Court approving this Agreement and the sale, assignment and assumption of the Lease pursuant to the terms and conditions of this Agreement.

2. **<u>ASSUMPTION; ACCEPTANCE OF PREMISES</u>**.

    (a) Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Closing Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Closing Date.

(b) Assignee hereby accepts the aforesaid assignment of the Sublease and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Sublease from and after the Closing Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Sublease on or after the Closing Date.

(c) Assignee hereby accepts the aforesaid conveyance of the Improvements and Equipment on an "as is, where is" basis without any representation or warranty on the part of Seller as to fitness, merchantability or otherwise.

(d) Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate, including without limitation the Due Diligence Material (as defined below). Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition (without representation, warranty, or recourse), and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations. Taking the foregoing into consideration, Assignee has determined, in its sole discretion, that the Lease, the Sublease and the Premises and Equipment are satisfactory to Assignee in all respects, and has agreed to accept the Lease, the Sublease and the Premises and Equipment in accordance with the terms and conditions of this Agreement. In making such determination, Assignee has relied and will rely solely on Assignee's own independent examinations, inspections and investigations of the Lease, the Sublease and the Premises and Equipment and has not relied and will not rely on any representations or warranties of Assignor. Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Lease, the Sublease, the Premises, the Equipment, or the Improvements located on the Premises, including, but not limited to, representations concerning the condition of the Premises, Equipment, or Improvements or their fitness for Assignee's intended use, except as otherwise expressly set forth in this Agreement. "<u>Due Diligence Material</u>" means, collectively, (i) the Lease and the Sublease, (ii) the title reports and environmental reports (if any) and all other documents and materials provided or made available to Assignee for review in hard copy, in electronic format, at the Store, on the internet website maintained by Merrill Corporation on behalf of Assignor and certain affiliates of Assignor under the name "Project Jaguar" with respect to the disposition of the Store and other properties, or otherwise and (iii) all documents and materials prepared by or for Assignee in connection with Assignee's investigations with respect to the Lease, the Sublease and the Premises

and Equipment.

(e) Assignee hereby recognizes and acknowledges that Landlord's and Subtenant's rights to full performance of all terms, conditions and covenants of the Lease and Sublease, respectively, remain in effect on and after the effective date of the Assignment. Further, pursuant to section 365(k) of the Bankruptcy Code, on and after the effective date of the Assignment, Assignor and its estate shall be relieved from any liability for any breach of the Lease or Sublease occurring after the Closing Date.

3. **CONSIDERATION**. The total consideration to be paid by Assignee to Assignor (the "Purchase Price") is One Hundred Thousand Dollars ($100,000), payable at the Closing (as defined herein). Upon execution of this Agreement, Assignee shall pay to Assignor or its designated agent a deposit equal to twenty percent (20%) of the Purchase Price (the "Deposit"). At the Closing, Assignee shall pay the balance of the Purchase Price to Assignor, as adjusted for the prorations set forth in Section 10 hereof. Said Deposit and the balance of the Purchase Price shall be paid by certified or bank check made payable to Assignor, or by wire transfer to the account of Assignor, pursuant to written wire instructions to be provided by Assignor.

4. **CLOSING AND EFFECTIVE DATE OF ASSIGNMENT**. The closing of the Assignment (the "Closing") shall take place on a date (the "Closing Date") designated by Assignor in writing that is between one day and 30 days following the later of (i) approval by the Bankruptcy Court and the entry of the order approving the sale, assignment and assumption of the Lease as provided in this Agreement, or (ii) the completion of Assignor's planned store closing sale at the Store; provided, however that in no event will the Closing Date be later than October 31, 2005. The Closing will be conducted directly between Assignor and Assignee provided that, at Assignor's election, the Closing may be conducted by use of an escrow administered by Assignor or its designated agent.

5. **COURT APPROVAL; BIDDING PROCEDURES**.

(a) The Closing is contingent upon Assignor obtaining an order of the Bankruptcy Court authorizing: (1) Assignor to enter into the Agreement and (2) the sale, assignment and assumption of the Lease and Sublease pursuant hereto. Assignor shall have until September 30, 2005, subject to a Bankruptcy Court ordered extension, to obtain such order from the Bankruptcy Court. If such order is not obtained within such time period, and provided there is no material breach of this Agreement by Assignee at any time, then the Deposit shall be released to Assignee and Assignee and Assignor shall have no further claims against one another.

(b) This Agreement is subject to the bidding procedures approved by the Bankruptcy Court by order dated June 21, 2005 (the "Bidding Procedures"). If this Agreement is not the successful bid for the Store, as

determined by Assignor in accordance with the Bidding Procedures, and provided there is no material breach of this Agreement by Assignee at any time, than the Deposit shall be released to Assignee and Assignee and Assignor shall have no further claims against one another.

6. **ADEQUATE ASSURANCE DATA.** As a condition of the Bidding Procedures and in compliance with such Bidding Procedures, Assignee shall supply Assignor with such financial and other information as may be requested by Assignor to demonstrate to the Bankruptcy Court that Landlord and Subtenant are adequately assured of Assignee's future performance under the Lease, as required by Section 365(f) of the Bankruptcy Code, including if appropriate, a guaranty of Assignee's obligations under the Lease and (where applicable) the Sublease by an Affiliate of Assignee with sufficient assets to provide adequate assurance of future performance.

7. **USE.** Assignee shall use the Premises for such purposes as are authorized under the Lease or applicable law. More specifically, Assignee's intended use is: Grocery Store.

8. **POSSESSION.** Assignor agrees to provide Assignee with possession of the Premises at the Closing, subject only to an extension of such delivery approved or ordered by the Bankruptcy Court.

9. **INITIAL RENT AND OTHER LEASE CHARGES.** Upon the Closing, Assignee shall be responsible for, and shall pay, rent, percentage rent, common area maintenance charges, real estate taxes and all other obligations and charges due under the Lease to Landlord in accordance with the terms of the Lease from and after the Closing.

10. **PRORATIONS.** All relevant rent, common area maintenance charges, real estate and personal property taxes, utilities and other obligations and charges under the Lease, the Sublease or otherwise relating to the Premises will be prorated (based on actual days within the relevant annual, quarterly or monthly period, as appropriate) between the parties as of 12:01 a.m. on the Closing Date and will be a credit or debit, as the case may be, against the Purchase Price. Any amounts not determinable as of the Closing Date or reflected on any closing statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Assignee and Assignor as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination and notice to such party that such amount is due.

11. **ASSIGNEE'S CLOSING COSTS.** Assignee agrees to pay (or, where applicable, reimburse Assignor for) the following costs: (a) fees and costs of Assignee's counsel relating to this transaction; (b) fees and costs incurred by Assignee to conduct Assignee's due diligence investigations of the Lease, the Sublease, the Premises and Equipment; (c) fees and costs of title reports provided by Assignor,

title examination fees and title insurance premiums (and the cost of any simultaneous issue mortgagee title insurance policy and any loan-related title insurance endorsements thereon); (d) documentary stamp tax or transfer tax, if any, payable in connection with the execution and delivery of this Agreement; (e) recording fees payable in connection with recording this Agreement or any notice of assignment in the appropriate public records; (f) cost of the environmental reports provided by Assignor, including any supplements or updates; (g) any loan closing costs incurred by Assignee; and (h) the fees and costs of any escrow agent.

12. **ASSIGNOR'S CLOSING COSTS**. Assignor will pay the following costs: (a) fees and costs of Assignor's counsel relating to this transaction; (b) commissions payable to Assignor's Brokers as provided in Section 14 of this Agreement; and (c) those cure costs (if any) payable pursuant to Section 365(b) of the Bankruptcy Code upon the assumption of the Lease and the Sublease.

13. **[INTENTIONALLY OMITTED]**.

14. **NO BROKERS**. The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Agreement other than that due by Assignor to Assignor's Brokers, if any, as described on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B. Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Agreement, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Agreement. Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Agreement, the Lease or the Premises. Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Agreement, the Lease, the Sublease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Agreement.

15. **NOTICES**. All notices, requests, demands, and other communications required or permitted to be given under this Agreement will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during

normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

    If to Assignor:    Winn-Dixie Raleigh, Inc.; Re: Store #2702
                              5050 Edgewood Court
                              Jacksonville, FL 32254-3699
                              Attn: Chief Financial Officer
                              Telefax No.: 904/783-5646

    With a copy to:    Winn-Dixie Stores, Inc.
                              5050 Edgewood Court
                              Jacksonville, FL 32254-3699
                              Attn: Office of General Counsel
                              Telefax No.: 904/783-5641

or to such other address or telefax number as Assignor may direct from time to time.

    If to Assignee:    C.Y. Yu, Inc.
                              d/b/a Bubba's Supermarket
                              1823 Hollywood Rd.
                              Atlanta, GA  30318
                              Telefax No.: (404) 799-8252

or to such other address or Telefax number as Assignee may direct from time to time.

16. **NOTICE OF ASSIGNMENT**. On the effective date of the Assignment, at the request of either party, this Agreement may be recorded in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Agreement.

17. **BINDING EFFECT**. This Agreement shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns, except that this Agreement shall not be binding upon Assignor prior to Bankruptcy Court approval of this Agreement.

18. **FURTHER ASSURANCES**. Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

7

**Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 2708**

19. **ASSIGNMENT**. Assignee may not assign or delegate any duties or obligations under this Agreement without the prior written consent of Assignor, which consent may be granted or withheld in Assignor's sole discretion. No assignment by Assignee shall release or relieve Assignee of its liabilities and obligations hereunder, which shall remain in full force and effect notwithstanding any such assignment.

20. **MERGER OF PRIOR AGREEMENTS**. This Agreement supersedes all prior agreements and understandings between the parties hereto, other than the confidentiality agreement between Winn-Dixie Stores, Inc. ("Winn-Dixie") and Assignee, regarding, among other things, confidentiality relating to the subject matter of this Agreement (the "Confidentiality Agreement") and any access or inspection agreement between Assignor or Winn-Dixie and Assignee (the "Access Agreement", if any) and, except for the Confidentiality Agreement and any Access Agreement, constitutes the entire agreement of the parties with respect to the matters contained herein. **ASSIGNEE ACKNOWLEDGES ITS OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT AND THE ACCESS AGREEMENT CONTINUE AFTER THE EXECUTION AND DELIVERY OF THIS AGREEMENT.**

21. **[INTENTIONALLY OMITTED]**.

22. **ATTORNEYS' FEES**. If Assignor becomes a party to any suit or proceeding affecting the Lease, the Sublease, the Premises or involving this Agreement or Assignee's interest under this Agreement, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Agreement, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Agreement, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand. All references in this Agreement to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment and appellate levels and in connection with the Bankruptcy Case and related proceedings.

23. **WAIVER OF JURY TRIAL**. Assignor and Assignee each acknowledge and agree that the nature of this Agreement, the Premises, the Lease and the Sublease makes a jury determination of any dispute arising out of this Agreement, the Premises, the Lease or the Sublease undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Agreement, the Premises, the Lease or the Sublease.

Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 2708

24. **DEFAULT AND REMEDIES.**

   (a) **Assignee's Default.** If the Closing as contemplated under this Agreement is not consummated due to Assignee's breach of this Agreement, then Assignor shall be entitled to retain or receive the Deposit as partial damages and to exercise any and all other remedies available under this Agreement, at law or in equity, including but not limited to the right to terminate this Agreement, the right to sue Assignee for specific performance, and the right, with or without terminating this Agreement, to sue Assignee for damages.

   (b) **Default by Assignor.** If the sale, assignment and assumption as contemplated under this Agreement is not consummated due to Assignor's breach of this Agreement, or if this Agreement is terminated due to Assignor's breach of this Agreement, then Assignee shall be entitled, as its sole and exclusive remedy for such breach, to receive the return of the Deposit, which return shall operate to terminate this Agreement and release Assignor from any and all liability under this Agreement. Assignee expressly waives and releases (i) any right to seek specific performance of Assignor's obligations under this Agreement and (ii) any right to seek or collect any damages, including any actual, consequential, speculative, remote or punitive damages.

25. **ASSIGNEE INDEMNIFICATION OF ASSIGNOR.** Assignee shall indemnify and save and hold harmless Assignor and its Affiliates and representatives, from and against any and all costs, losses liabilities, damages, lawsuits, deficiencies, claims and expenses (whether or not arising out of third-party claims) including, without limitation, interest, penalties, reasonable attorneys' fees and all amounts paid in investigation, defense or settlement for any of the foregoing (herein, the "Damages") incurred in connection with or arising out of or resulting from (a) any breach of any covenant or warranty by Assignee (including any payment obligation), or the inaccuracy of any representation made by Assignee in or pursuant to this Agreement or other transaction documents, (b) any liability, obligation or commitment of any nature (absolute, accrued, contingent or otherwise) of Assignee that is due to or arises in connection with Assignee's acts or omissions prior to, on or after the Closing Date, including any claim, liability, or obligation that is assumed by Assignee pursuant to this Agreement or in any transaction documents signed by Assignee, and (c) without limitation on the foregoing, any liability or obligation that accrues under the Lease or the Sublease or relating to the Equipment from and after the Closing Date. Notwithstanding the foregoing, Assignee shall not be liable for any matter (i) with respect to which Assignor has not given Assignee written notice within a reasonable period of time following Assignor's receiving written notice of such matter, specifying the claim and the basis for the claim in reasonable detail (unless the failure to provide such information did not have a material adverse effect on Assignee), or (ii) that is due

to Assignor's acts or omissions. The provisions of this <u>Section 25</u> shall cover all obligations and liabilities of whatsoever kind, nature or description relating, directly or indirectly, to product liability, third party litigation or third party claims against Assignee or Assignor in connection with, arising out of, or relating to the Lease, the Sublease and the Premises. This <u>Section 25</u> shall survive the Closing or earlier termination of this Agreement.

[SIGNATURES ON THE FOLLOWING PAGES]

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Agreement as of the date first set forth above.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

_____
Name:_____

By:_____
Name: _____
Title: _____

_____
Name:_____

[CORPORATE SEAL]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

**Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 2708**

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

**C.Y. YU, INC.**, a Georgia corporation

By: _____
Name: _Charles C. Yu_____
Title: _President_____

_____
Name:_____

[SEAL]

_____
Name:_____

**Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 2708**

## SCHEDULE 1

Schedule of Excluded Equipment

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records. Prepared by management.

| Center | Mfg | Type | Model | Description | Quantity | Serial | Install Date | Lessor | Lease | Rent Amo | Lease Ter | Expire Dat | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2708 | IBM | 8477 | 42Y | NETFINITY | 1 | M0574 | 6/15/2001 | CLC | 29435 | $36.60 | 48 | 7/31/2005 | POS |
| 2708 | IBM | 8477 | 42Y | NETFINITY | 1 | M1882 | 6/15/2001 | CLC | 29435 | $36.60 | 48 | 7/31/2005 | POS |
| 2708 | IBM | 6331 | B2N | IBM BLAC | 1 | XDDN7 | 6/15/2001 | CLC | 29435 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| 2708 | IBM | 6331 | B2N | IBM BLAC | 1 | XDDN8 | 6/15/2001 | CLC | 29435 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTG12 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTG13 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTN36 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTP49 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTP86 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTR08 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV02 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV14 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV15 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV19 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV21 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV24 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | TPT98 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | TPV62 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | TPX78 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | TPX94 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKM01 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKP38 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKV46 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKV60 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKV61 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VMN24 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VNX15 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNN72 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNN73 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNN79 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNP23 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNP24 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNP30 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNP31 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | SAV2 | SFTW | IBM SAV2 | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 2708 | IBM | SAV2 | SVCS | SAV2 SER | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 2708 | DCC | 2500 | P3 | POWERE! | 1 | G02F11 | 5/17/2002 | CLC | 31733 | $181.37 | 36 | 5/31/2005 | Servers |
| 2708 | DCC | PV715N | 1U | DELL NAS | 1 | N0N111 | 5/17/2002 | CLC | 31733 | $68.44 | 36 | 5/31/2005 | Servers |
| 2708 | DCC | E551 | 15MO | DELL E55 | 1 | | 5/17/2002 | CLC | 31733 | $0.00 | 36 | 5/31/2005 | Personal Computers |

**Other Leased Equipment**
Health Resource Computer System
Health Clinic Blood Pressur Machine
IVR Equipment

Privileged and Confidential

Exhibit A
to Bill of Sale, Assignment and Assumption of Lease and Sublease

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

# WINN-DIXIE STORE # 2708
Smyrna, Georgia

Lease: Lease dated October 8, 1987 between E&A Southeast, Limited Partnership, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

as evidenced by Short Form Lease dated October 8, 1987, recorded in Book 4678, Page 331, of the public records of Cobb County, Georgia

Amendments/
Guaranty: Guaranty dated October 12, 1987

Supplemental Lease Agreement dated December 9, 1988

First Amendment to Lease dated March 7, 1989

Assignment and Assumption of Lease Agreement dated February 3, 2002

Premises: That certain store building and related improvements located at 2350 Spring Road, Smyrna, Cobb County, Georgia

Legal Description: The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

**Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 2702**

Exhibit B

to Bill of Sale, Assignment and Assumption of Lease and Sublease

Schedule of Brokers

ASSIGNOR'S BROKERS:

DJM Asset Management, LLC
445 Broad Hollow Road
Suite 417
Melville, New York 11747

The Food Partners, LLC
1250 Eye Street, N.W.
Suite 850
Washington, D.C. 20005

ASSIGNEE'S BROKERS:

[None]

EXHIBIT "B"

LEGAL DESCRIPTION

All that tract or parcel of land lying and being in Land Lot 775 of the 17th District of Cobb County, Georgia, containing 6.38 acres and being more particularly described as follows:

To arrive at the **TRUE POINT OF BEGINNING**, commence at a right-of-way line intersection of the southerly right-of-way line of Spring Road and the westerly right-of-way line of Campbell Road (said right-of-way line of Campbell Road being a mitre); thence along said right-of-way line of Spring Road South 88 degrees 55' 05" West a distance of 73.99 feet to a point; thence along the arc of a curve to the left a distance of 193.13 feet (chord bearing South 89 Degrees 18' 09" West, chord distance 193.12 feet, radius 14,373.94 feet) to a point being the intersection of the proposed Easterly right-of-way line of relocated Campbell Road and southerly right-of-way line of Spring Road; thence running along said Spring Road right-of-way along the arc of a curve to the left a distance of 50.00 feet (chord bearing South 89 degrees 47' 14" West; Chord distance 50.00 feet; Radius 14,373.94 feet) to a point being the intersection of the proposed westerly right-of-way of relocated Campbell Road and southerly right-of-way of Spring Road: said point also being the **TRUE POINT OF BEGINNING**; thence leaving said right-of-way line of Spring Road and continuing along the proposed westerly right-of-way line of Campbell Road South 00 degrees 07' 30" East a distance of 200.72 feet to a point; thence along the arc of a curve to the right a distance of 141.92 feet (chord bearing South 26 degrees 58' 45" West, chord distance 136.68 feet radius 150.00 feet) to a point being on the existing northerly right-of-way line of Campbell Road; thence continuing along the existing northerly right-of-way line South 54 degrees 05' 00" West a distance of 194.69 feet; thence along the arc of a curve to the right a distance of 445.31 feet (chord bearing South 48 minutes 20 seconds 25" West, chord distance 444.58 feet, radius 2,245.86') to a point; thence leaving said right-of-way line North 01 degrees 15' 50" West a distance of 741.06 feet to a point being on the southerly right-of-way line of Spring Road; thence along said right-of-way line South 88 degrees 40' 05" East a distance of 205.20 feet to a point; thence along the arc of a curve to the right a distance of 362.61 feet (chord bearing South 89 degrees 23' 25" East, chord distance 362.58 feet, radius 14,373.94 feet) to a point being on the proposed westerly right-of-way line of Campbell Road and the **TRUE POINT OF BEGINNING**.

2708
2350 Spring Road
Smyrna, GA