EXHIBIT B-1
To Asset Purchase Agreement

Equipment List

**STORE NO. 452**
**100 JOHNSON AVENUE, N. UNIT 102, TALLADEGA, ALABAMA**
**DESCRIPTION OF OWNED EQUIPMENT**

| ITEM DESCRIPTION | ITEM DESCRIPTON |
|---|---|
| BACKROOM SUPPLIES | PRICE CAKE CASE C059L |
| SHOPPING CARTS | PRICE CAKE CASE C059L |
| OPTIPLEX SX260 | PRICE DONUT CASE C5059L |
| OPTIPLEX SX260 | PRICE DONUT CASE C5059L |
| OPTIPLEX SX260 | PRICE CAKE DECORATOR CASE CDC7 |
| OPTIPLEX SX260 | BBQ KING STEAM TABLE HCG-5 |
| OPTIPLEX SX260 | WARREN DELI CASE S39VJ12 |
| POS 4690 OSV3 SWARE | WARREN DELI CASE S39VJ8 |
| LEXMARK T630N | WARREN CHEESE CASE M1A8 |
| ENTERASYS ETHERNET SWITCH | WARREN CHEESE CASE M1A12 |
| ENTERASYS ETHERNET SWITCH | WARREN CHEESE CASE M1A8 |
| ENTERASYS ETHERNET SWITCH | WARREN CHEESE CASE M1A8 |
| GXT2-700 UPS HARDWARE | KOPYKAKE PROJECTOR K1000 |
| REFURB/REMODEL IR | DONUT GLAZE UNIT |
| CHECKPOINT SYSTEM | HOBART MIXER A200 |
| BALER BV6036WL | ADAMATIC RACK OVEN DR02E |
| TRANSLIFT COMPACTOR TL235SC | ADAMATIC PROOF BOX AHP1S |
| WD CIP WALL DECOR PACKAGE | ADAMATIC PROOF BOX AHP1S |
| BOHN COIL HGT1200 | EQUIPMENT GUARDS |
| BOHN COIL HGT1200 | BUGGY CORRAL |
| BOHN COIL HGT1200 | EQUIPMENT GUARDS |
| BOHN COIL ADT1300 | WARREN CASE BUMPERS |
| BOHN COIL ADT1300 | AIR SYSTEM - EXHAUST FANS |
| BOHN COIL ADT1300 | EXHAUST FAN VVBB12P6 |
| BOHN COIL ADT1300 | WARREN FROZEN FOOD CASE LV5H15 |
| BOHN COIL LOH700 | WARREN FROZEN FOOD CASE LV5H15 |
| WARREN CONDENSING UNIT EC36010 | WARREN FROZEN FOOD CASE LV5H15 |
| WARREN CONDENSING UNIT EC44010 | WARREN FROZEN FOOD CASE LV5H15 |
| WARREN CONDENSER DD1010 | WARREN FROZEN FOOD CASE LV5H14 |
| WARREN CONDENSER DD1150 | WARREN FROZEN FOOD CASE LV5H14 |
| IBM STORE CONTROLLER 8550 | WARREN FROZEN FOOD CASE LV5H13 |
| CUSTOMER SERVICE CENTER | WARREN FROZEN FOOD CASE WTLA12 |
| AM WDWKS SERVICE CENTER | WARREN FROZEN FOOD CASE WTLA12 |
| HOBART TENDERIZER 403 | WARREN FROZEN FOOD CASE WTLA12 |
| WARREN DAIRY CASE D618 | WARREN FROZEN FOOD CASE WTLA12 |
| WARREN DAIRY CASE D6112 | WARREN FROZEN FOOD CASE WTLA12 |
| WARREN BEER CASE D618 | WARREN FROZEN FOOD CASE EWTLA |
| WARREN BEER CASE D6112 | WARREN FROZEN FOOD CASE LV5H13 |
| WARREN DAIRY CASE D6112 | WARREN FROZEN FOOD CASE LV5H14 |
| WARREN DAIRY CASE D6112 | WARREN FROZEN FOOD CASE LV5H14 |
| WARREN DAIRY CASE D6112 | WARREN FROZEN FOOD CASE LV5H15 |
| WARREN DAIRY CASE D6112 | WARREN FROZEN FOOD CASE LV5H15 |
| WARREN DAIRY CASE D6112 | WARREN FROZEN FOOD CASE LV5H15 |
| WARREN DAIRY CASE D6112 | WARREN FROZEN FOOD CASE LV5H15 |

| ITEM DESCRIPTION | ITEM DESCRIPTON |
|---|---|
| WARREN EGG CASE D6L18 | WARREN FROZEN FOOD CASE LV5H15 |
| OLIVER BREAD SLICER 709 | WARREN FROZEN FOOD CASE LV5H15 |
| FRIEDRICH SMOKER FMP400 | FLORAL MERCHANDISER |
| DELI SINK | AM WDWKS FLORAL DISPLAYS |
| PRICE CAKE CASE C059L | AM WDWKS FLORAL WORK STATION |
| PLANT DISPLAY CART | SOUND SYSTEM |
| MEAT SINK | BLUE GIANT PALLET TRUCK ROI55S |
| PRODUCE SINK | BLUE GIANT PALLET TRUCK ROI55S |
| GENERATOR 35SJBL | BLUE GIANT PALLET TRUCK ROI27 |
| HOBART MIXER GRINDER 4246 | BATTERY PALLET JACK |
| HOT WATER RECLAIM HEATER TC110 | 28 PREP TABLES |
| WARREN ICE CREAM CASE EWTLA | WARREN JUICE CASE D6L12 |
| WARREN ICE CREAM CASE WTLA12 | WARREN PRODUCE CASE HZV12 |
| WARREN ICE CREAM CASE WTLA12 | WARREN PRODUCE CASE HZV12 |
| WARREN ICE CREAM SHELVING | WARREN PRODUCE CASE HZV12 |
| INSTALL EQUIPMENT | WARREN PRODUCE CASE HZV12 |
| INSTALL EQUIPMENT | WARREN PRODUCE CASE SHELVING |
| INSTALL EQUIPMENT | PRODUCE MISTING SYSTEM |
| INSTALL EQUIPMENT | PRODUCE FENCING |
| DOCK LEVELERS | 12' MULTI PRODUCE CASE |
| MECHANICAL DOCK LEVELER | 12' MULTI DECK PRODUCE CASE |
| WARREN LUNCH MEAT CASE D6112 | WINN DIXIE PRODUCE BASKET KIT |
| WARREN LUNCH MEAT CASE D6112 | EXHAUST FAN WDUD4815 |
| WARREN LUNCH MEAT CASE D6112 | IBM RISC 6000 REGISTER UPGRADE |
| WARREN POULTRY CASE M4A12 | IBM RISC 6000 REGISTER UPGRADE |
| WARREN MEAT CASE M1A12 | STOCKROOM DOORS |
| WARREN MEAT CASE M1A12 | TRAFFIC DOOR |
| WARREN MEAT CASE M1A12 | GARY SAFE R3028/G7E |
| WARREN MEAT CASE M1A12 | TOLEDO SCALE 8422 |
| WARREN MEAT CASE M1A12 | TOLEDO SCALE/PRINTER |
| WARREN POULTRY CASE M4A-12 | TOLEDO SCALE/PRINTER |
| HOBART MEAT SAW 5801 | TOLEDO SCALE/PRINTER |
| STAR ICE MERCHANDISER IS67UAGW | NCR SCANNER SCALE 7870 |
| MIRRORS | NCR SCANNER SCALE 7870 |
| PANASONIC VIDEO PLAYER | NCR SCANNER SCALE 7870 |
| WALL DECOR | NCR SCANNER SCALE 7870 |
| EQUIPMENT GUARDS | NCR SCANNER SCALE 7870 |
| 8 LOCKERS | NCR SCANNER SCALE 7870 |
| MOBILE CLOTHES LOCKER | FISH SINK |
| HANDICAP SHOPPING CART | WARREN SEAFOOD CASE S39V8 |
| WALL DECOR | WARREN SEAFOOD CASE S39V8 |
| PRODUCE TRELLIS | SONOZAIRE UNIT 330A |
| ADC ROOM CABINET | SEAFOOD MISTING SYSTEM |
| DESKS | ICELESS SEAFOOD CONVERSION 16' |
| WALL DECOR | SHELVING |
| ALUMINUM CANOPY | SHELVING |
| HANDICAP SHOPPING CART LARK EZ | SHELVING |
| CIP WALL DECOR | SHELVING |
| NOBLE INTERIOR NEON | SHELVING |
| AM WDWKS OAK BENCHES | SHELVING |
| THERMA-STOR HEAT RECVRY SYS | SHELVING |
| WESTERN UNION SKIRT & INSTALL | MADIX SHELVING |
| 16 CHANNEL SWEATMISER | AM WDWKS SHELVING |
| CMI TIMECLOCKS | WD PRODUCE SIGN KIT |
| CMI TIMECLOCKS | NOBLE SIGN |

EXHIBIT B-1
PAGE 2 OF 3

| ITEM DESCRIPTION | ITEM DESCRIPTON |
| --- | --- |
| ENVIRONMENTAL CONTROL PANEL XP | KNIGHT PYLON SIGN |
| SOUND SYSTEM | BIZERBA MARKET SLICER VF8S |
| HOBART SLICER | WALK IN MEAT COOLER DOOR |
| NCR SOFTWARE | WALK IN PRODUCE COOLER DOOR |
| NCR SOFTWARE | WALK IN FROZEN FOOD FREEZER DO |
| IBM SOFTWARE | HANDWRAP STATION W/ SCALE |
| IBM SOFTWARE | CEILINGS AND WALL |
| BRANDT FOOD STAMP COUNTER 8610 | ELECTRICAL WIRING |
| 192 UNICARTS | LIGHTING FIXTURES |
| PENN WALK IN DAIRY COOLER | ELECTRICAL |
| PENN WALK IN FROZEN FOOD FREEZ | CEILING LIGHTING |
| PENN WALK IN ICE CREAM FREEZER | TILE FOR DELI |
| PENN WALK IN PRODUCE COOLER | FLOOR |
| PENN WALK IN MEAT COMBO | GENERAL REMODEL CONTRACT |
| PENN WALK IN DELI FREEZER | RESTROOM IR |
| PENN WALK IN DELI COOLER | PAINTING |
| WALK IN DAIRY COOLER DOOR | PAINTING |

**EXHIBIT C-1**
To
Asset Purchase Agreement

**INDIVIDUAL STORE CLOSING STATEMENT**

| | |
|---|---|
| **BUYER:** | Baker Foods, Inc., an Alabama corporation |
| **SELLER:** | Winn-Dixie Montgomery, Inc., a Florida corporation |
| **ESCROW AGENT and SETTLEMENT AGENT:** | _____ |
| **Property:** | Store No. 452 |
| **CLOSING DATE:** | _____, 2005 |

**SELLER'S STATEMENT**

**BASE PURCHASE PRICE:**

Leasehold:                                              $_____

FF&E:                                                   $_____

BASE PURCHASE PRICE:                                    $_____

SUPPLIES PRICE:                                         $_____

**TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:**
                                                        $_____

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and            $_____
Other Charges Payable Under Lease (1)

Buyer's Prorated Share of Rents Paid in         $_____
Advance **[Under Sublease (2)]**

**Total Debit Adjustments:**                    $_____

**Plus Adjustments (Credit):**                                    $_____

Seller's Prorated Share of Rents and
Other Charges Paid in Advance Under
Lease (3)                                                         $_____

Exhibit C-1
Page 1 of 8

| | |
|---|---|
| Environmental Assessment Costs Paid by Seller | $_____ |
| [Other] | $_____ |
| **Total Credit Adjustments:** | $_____ |

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

| | |
|---|---|
| Seller's Attorneys' Fees & Costs | $_____ |
| Seller's Brokerage Fees | $_____ |
| Cure Costs | $_____ |

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER**                                                      $_____

### BUYER'S STATEMENT

| | |
|---|---|
| **ALLOCATED BASE PURCHASE PRICE:** | $_____ |
| **SUPPLIES PRICE:** | $_____ |
| **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | $_____ |

**Less Adjustments (Credit):**

| | |
|---|---|
| Allocated Amount of Base Deposit | $_____ |
| Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Lease (1) | $_____ |
| [Other] | $_____ |

**Total Debit Adjustments:**

**Plus Adjustments (Debit):**                                                  $_____

Exhibit C-1
Page 2 of 8

| | | |
|---|---|---|
| Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Lease (3) | $_____ | |
| Environmental Assessment Costs Paid by Seller | $_____ | |
| [Other] | $_____ | |
| **Total Credit Adjustments:** | | $_____ |

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

| | |
|---|---|
| Buyer's Attorneys' Fees & Costs | $_____ |
| Title Insurance Premiums(4) | $_____ |
| Title Examination Fees | $_____ |
| Transfer/Documentary Taxes | $_____ |
| Buyer's Brokerage Fees | $_____ |
| Closing Escrow Fees | $_____ |
| Inventory Service Fees(8) | $_____ |
| **Total Buyer's Closing Costs:** | $_____ |

| | |
|---|---|
| **AMOUNT DUE FROM BUYER** | $_____ |
| **ALLOCATED AMOUNT OF BASE DEPOSIT** | $_____ |
| **TOTAL AMOUNT DUE AT CLOSING** | $_____ |

### SCHEDULE OF DISBURSEMENTS

| | | |
|---|---|---|
| 1. | Allocated Amount of Base Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | The Blackstone Group L.P. (Seller's Brokers Fees) | ($_____) |
| 2. | The Food Partners, LLC (Seller's Brokers Fees) | ($_____) |

Exhibit C-1
Page 3 of 8

| | | |
|---|---|---|
| 3. | DJM Asset Management, LLC<br>(Seller's Brokers Fees) | ($_____) |
| 4. | _____ Title Insurance Company<br>Title Premiums, Title Examination Fees and related<br>Costs, Recording and Escrow Fees | ($_____) |
| 5. | _____<br>Transfer/Documentary Taxes | |
| 6. | **[Name of Inventory Service]**<br>(Inventory Service Fees) | ($_____) |
| 7. | _____<br>(Lease Cure Costs, if any) | ($_____) |
| 8. | _____<br>(Sublease Cure Costs, if any) | ($_____) |
| 9. | Seller<br>(Seller's Proceeds) | ($_____) |
| [10.] | [Other] | ($_____) |

**TOTAL DISBURSEMENTS:**

**Notes:**

(1) <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>. Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease. Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store # _____
- 2005 Real Estate Taxes            $
- Per Diem Tax Amount               $
- Seller's Share of 2005 Taxes
  (1/1/05 - __/__/05) (_____ days)  $_____

**Total Real Estate Taxes:**

**Personal Property Taxes**

Store # _____
- 2005 Personal Property Taxes      $
- Per Diem Tax Amount               $
- Seller's Share of 2005 Taxes
  (1/1/05 - __/__/05) (_____ days)  $_____

**Total Personal Property Taxes:**

**CAM Charges**

Exhibit C-1
Page 4 of 8

<u>Store #</u> _____
- 2005 CAM Charges                               $
- Per Diem Amount                                $
- Seller's Share of 2005 CAM Charges
  (__/__/__ - __/__/05) (_____ days)             $ _____
**Total CAM Charges:**

**Insurance**

<u>Store #</u> _____
- 2005 Insurance                                 $
- Per Diem Amount                                $
- Seller's Share of 2005 Insurance
  (__/__/__ - __/__/05) (_____ days)             $ _____
**Total Insurance:**
**Total Amount of Seller's Prorated Share of 2005 Prorations:**                                                                _____

(2) _____, **2005 Sublease Prorations - Amounts Previously Received by Seller.** Prorations are based on _____, 2005 rents previously paid to Seller in accordance with Sublease. Buyer will be responsible for the collection of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

<u>Store #</u> _____
- Total _____, 2005 rent paid:             $
- Per diem rent:                                 $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)             $ _____

**Total Amount of Seller's Prorated Share of _____ Prorations:**

(3) _____, **2005 Prorations - Amounts Previously Paid by Seller.** Prorations are based on _____, 2005 rents, common area maintenance assessments and other charges previously paid by Seller in accordance with applicable Lease. Buyer will be responsible for the payment of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

**Rent**

<u>Store #</u> _____
- Total _____, 2005 rent paid:             $
- Per diem rent:                                 $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)             $ _____
- Per diem rent:                                 $

Exhibit C-1
Page 5 of 8

    - Buyer's prorated share
    (__/__/__ - __/__/05) (_____ days)    $ _____ _____
**Total Amount of Buyer's Prorated Share of _____ Prorations:**

(4)     <u>Title Premiums and Expenses</u>. Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

    <u>Store # _____</u>
    - Title Search Fees and Costs    $ _____ -
    - Title Premium    $ _____ -
    **Total Amount of Title Fees and Expenses:**

(5)     <u>Utility Deposits and Charges</u>. All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof. The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor. Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6)     <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(7)     <u>Inventory Purchase Price and Adjustments</u>. To the extent Inventory has acquired inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement between Seller and Buyer dated as of even date herewith. Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

Exhibit C-1
Page 6 of 8

(8)   **Inventory Service Fees.** Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices. Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges is not available at the time of closing, the inventory service fee will be estimated at $800 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

(9)   **Capitalized Terms.** Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

## STIPULATIONS

1. **Purchase Agreement.** This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").

2. **Authorization to Disburse.** By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

    _____
    _____
    _____
    _____

3. **Counterparts.** This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. **Adjustments.** Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

Exhibit C-1
Page 7 of 8

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**WINN-DIXIE MONTGOMERY, INC.,**
a Florida corporation

By: _____
Name:_____
Title: Vice President

**BUYER:**

**BAKER FOODS, INC.,**
an Alabama corporation

By: _____
Name: Ronald Baker
Title: President

Exhibit C-1
Page 8 of 8

(Direct Payment or Reimbursement to Seller)
**Total Buyer's Inventory Closing Costs:**                $              $ _____

**AMOUNT DUE FROM BUYER:**                                                  $ _____

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this ___ day of July, 2004, and hereby authorize **[Title Insurer]**, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**WINN-DIXIE MONTGOMERY, INC.**, a Florida corporation

By: _____
Name: _____
Title: _____ President

**BUYER:**

**BAKER FOODS, INC.**, an Alabama corporation

By: _____
Name: Ronald Baker
Title: President

**Notes:**

(1) <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(2) <u>Inventory Price Adjustments</u>. The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be reconciled as set forth in the Purchase Agreement. The balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days after Buyer and Seller receive the final recapitulation sheet for the Inventory, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period. To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

Exhibit C-2
Page 2 of 3

(3) <u>Inventory Service Fees</u>. The recipient of any invoices for such charges agrees that it will promptly provide the other party with a copy of such invoices upon receipt of same. Buyer will pay such invoices upon receipt, subject to adjustments as set forth in Note 1 above in the event of any discrepancy between the amount of the invoices and the amount for such services set forth in this Inventory Closing Statement.

(4) <u>Capitalized Terms</u>. Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

RECEIPTS:

1. Total Amount Due From Buyer         $ _____

TOTAL CASH RECEIVED:                   $                        $ _____

DISBURSEMENTS:

1. Winn-Dixie _____, Inc.          $ _____
   (Seller's Proceeds and Reimbursement of Inventory Service Fee)

TOTAL DISBURSEMENTS:                                            $ _____

BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT
PURSUANT TO PURCHASE AGREEMENT:                                 $

Exhibit C-2
Page 3 of 3