EXHIBIT D
To Asset Purchase Agreement

Schedule of Certain Excluded Personal Property

[see attached schedules]

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records. Prepared by Management.

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 0452 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M4632 | 4/15/2001 | CLC | 28482 | $36.60 | 48 | 5/31/2005 | POS |
| 0452 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M4837 | 4/15/2001 | CLC | 28482 | $36.60 | 48 | 5/31/2005 | POS |
| 0452 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDFW8 | 4/15/2001 | CLC | 28482 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 0452 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDFM9 | 4/15/2001 | CLC | 28482 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VMX05 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VMY72 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VMY87 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VMY89 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VMY90 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VMY93 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VMY94 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VPM24 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VPM26 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 4694 | S45 | POS REGISTER | 1 | VPM29 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 0452 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC908 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0452 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC909 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0452 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC910 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0452 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC911 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0452 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC914 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0452 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC926 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0452 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC927 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0452 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | WC928 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 0452 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 0452 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 0452 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | 863L11 | 7/17/2002 | CLC | 32517 | $181.37 | 36 | 7/31/2005 | Servers |
| 0452 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | 3YRB11 | 7/17/2002 | CLC | 32517 | $68.44 | 36 | 7/31/2005 | Servers |
| 0452 | TEL | 960BULK | XDS | 900MHZ(093RADIO), | 1 | 662687 | 11/16/2002 | CLC | 34098 | $16.36 | 36 | 11/30/2005 | Radio Frequency |
| 0452 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 7/17/2002 | CLC | 32517 | $0.00 | 36 | 7/31/2005 | Personal Computers |

**Other Leased Equipment**
Imagistics Copier

Privileged and Confidential

# EXHIBIT E

[intentionally omitted]

EXHIBIT F
To Asset Purchase Agreement

**Permitted Encumbrances**

1. Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2005 and subsequent years.

2. All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3. Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4. Rights of Landlord under the Lease, including the rights of any Landlord's mortgagee.

5. Rights of Subtenant under the Sublease.

6. All matters set forth as exceptions in the Initial Title Reports or the site plans, other than Monetary Liens.

7. All other matters set forth as exceptions in those Title Reports other than the Initial Title Reports, other than Monetary Liens.

8. All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

EXHIBIT G
To Asset Purchase Agreement

Form of
Lease Assignment

**ASSIGNMENT AND ASSUMPTION OF LEASE**
[Store # 452, Talladega, Alabama]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 200\_\_\_ (the "Effective Date"), by and between **WINN-DIXIE MONTGOMERY, INC.** a Florida corporation (hereinafter referred to as "Assignor"), and **BAKER FOODS, INC.**, an Alabama corporation (hereinafter referred to as "Assignee");

**RECITALS:**

A. Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached Exhibit A (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective _____, 2005 by and among Assignor, as seller, Assignee, as buyer, as amended from time to time (the "Agreement").

B. As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on the attached Exhibit A (the "Lease"), and all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, together with all amendments thereto, described on Exhibit A (collectively, whether one or more, the "Sublease"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Sublease after the Effective Date, all subject to and in accordance with the terms of the Lease, the Sublease, the Agreement and this Assignment;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1. **EFFECTIVE DATE**. This Assignment shall be effective as of the Effective Date.

2. **ASSIGNMENT**.

   (a) Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

(b) Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to the Sublease and all the rights, benefits and privileges of the landlord or lessor thereunder.

3. **ASSUMPTION; ACCEPTANCE OF PREMISES.**

(a) Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b) Assignee hereby accepts the aforesaid assignment of the Sublease and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Sublease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Sublease on or after the Effective Date.

(c) Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate. Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations. Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor. Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4. **NOTICES.** All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after

receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

>  If to Assignor:    Winn-Dixie Montgomery, Inc.; Re: Store # 452
>                     5050 Edgewood Court
>                     Jacksonville, FL 32254-3699
>                     Attn: Chief Financial Officer
>                     Telefax No.: 904/783-5646
>
>  With a copy to:    Winn-Dixie Stores, Inc.
>                     5050 Edgewood Court
>                     Jacksonville, FL 32254-3699
>                     Attn: Office of General Counsel
>                     Telefax No.: 904/783-5641

or to such other address or telefax number as Assignor may direct from time to time.

>  If to Assignee:    Ronald Baker
>                     Baker Foods, Inc.
>                     P.O. Box 55
>                     Talladega, Alabama 35161
>                     Telefax No.: _____

or to such other address or Telefax number as Assignee may direct from time to time.

5. **NOTICE OF ASSIGNMENT.** On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Assignment.

6. **BINDING EFFECT.** This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7. **FURTHER ASSURANCES.** Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

8. **NO BROKERS.** The parties agree that there is no brokerage commission due in

connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B. Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment. Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises. Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

9. **ATTORNEYS' FEES**. If Assignor becomes a party to any suit or proceeding affecting the Premises or involving this Assignment or Assignee's interest under this Assignment, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Assignment, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Assignment, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand. All references in this Assignment to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment and appellate levels and in connection with bankruptcy proceedings.

10. **WAIVER OF JURY TRIAL**. Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Sublease makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease or the Sublease undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Sublease.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE MONTGOMERY, INC.,** a Florida corporation

By:_____

Name:_____

Name:_____
Title: Vice President

Name:_____

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

**BAKER FOODS, INC.,** an Alabama corporation

Name:_____

By:_____
Name: Ronald Baker
Title: President

Name:_____

[SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

Exhibit A

Description of Premises and Lease

STORE #:

STREET ADDRESS:

SHOPPING CENTER:

LEASE:

AMENDMENTS TO LEASE:

SUBLEASE(S):

AMENDMENTS TO SUBLEASE(S):

Exhibit B

Schedule of Brokers

## EXHIBIT B-1

ASSIGNOR'S BROKERS:

> The Food Partners, LLC
> 1250 Eye Street, N.W.
> Suite 850
> Washington, D.C. 20005

## EXHIBIT B-2

ASSIGNEE'S BROKERS:

EXHIBIT H
to Asset Purchase Agreement

Form of Inventory Certificate

**INVENTORY CERTIFICATE**

| Store # 452 | Date: ___/___/___ |
| Store Address: | Time: ___:___ AM PM |

|  | Inventory Taken @ Retail | Valuation Percentage | Inventory @ Cost |
|---|---|---|---|
| Dry Grocery Taken @ Retail | $ | x 70.00% | $ |
| Pharmaceutical Taken @ Cost |  |  | $ |
| Gasoline Taken @ Cost |  |  | $ |
|  | $ | x ___% | $ |
|  | $ | x ___% | $ |
|  | $ | x ___% | $ |
| Total Inventory |  |  | $ |

_____   ___/___/___
Seller's Authorized Agent        Date

_____   ___/___/___
Buyer's Authorized Agent        Date