UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ORDER APPROVING DEBTORS' (A) SALE OF
PHARMACEUTICAL ASSETS FREE AND CLEAR
OF LIENS, AND (B) GRANTING RELATED RELIEF**

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 363 and 1146, and Fed. R. Bankr. P. 6004(a), authorizing the Debtors to sell pharmaceutical assets, including the assets described in the Amendment to Purchase and Sale Agreement attached to this Order as Exhibit A (the "Purchase Agreement"), free and clear of liens, claims, interests and encumbrances to Fred's Stores of Tennessee, Inc. (the "Purchaser"), and (b) granting related relief (Docket No. 1963) (the "Motion"). The Court held a hearing on the Motion on August 18, 2005 to approve the sale (the "Sale Hearing"). The Court has reviewed the Motion and heard the representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:

    A.    This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B. The Debtors solicited the highest or otherwise best offer for the assets described in the Purchase Agreement (the "Pharmaceutical Assets"), in accordance with bidding procedures approved by the Court by order (Docket No. 1825) dated June 21, 2005 (the "Bidding Procedures"). A competing bid was received for the Pharmaceutical Assets and the Debtors conducted an auction for the Pharmaceutical Assets on August 9, 2005 (the "Auction"). At the Auction, Fred's Stores of Tennessee, Inc., submitted the final bid of $5,000.00, plus the cost of the pharmaceutical inventory to be determined, representing the highest or otherwise best offer received for the Pharmaceutical Assets.

C. The Debtors have provided interested parties (including all parties asserting claims or interests in the Pharmaceutical Assets, if any) with proper notice of the Motion, the Sale Hearing,[1] the Auction, in accordance with 11 U.S.C. §§ 102(1), 105(a) and 363, Fed. R. Bankr. P. 2002(a) and 6004(a) and Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

D. The Debtors marketed the Pharmaceutical Assets and conducted the sale process in compliance with the Order approving the Bidding Procedures, the Bidding Procedures, the Bankruptcy Code and all other Orders entered in these cases. The bidding on the Pharmaceutical Assets and the Auction was conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make the highest or otherwise best offer for the Pharmaceutical Assets. In their sound business judgment, the Debtors determined that the bid submitted

---

[1] All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion.

00505035.DOC

by the Purchaser at the Auction represented the highest or otherwise best offer for the Pharmaceutical Assets.

E. The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A, and all related documents, and the sale of the Pharmaceutical Assets has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

F. The Debtors have good business reasons to sell the Pharmaceutical Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

G. Neither the Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

H. The Debtors and the Purchaser proposed, negotiated and entered into the Purchase Agreement, without collusion, in good faith and at arms'-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

I. The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the protections afforded by that section.

J. The consideration the Purchaser is providing to the Debtors for the Pharmaceutical Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Pharmaceutical Assets; and (iii) constitutes reasonably equivalent value.

00505035.DOC

K.  The Debtors have provided notice of this transfer of the Pharmaceutical Assets, as required by applicable state and federal law.

L.  The Debtors' sale of the Pharmaceutical Assets will facilitate the formulation and confirmation of a plan of reorganization. For this reason, the Debtors' sale of the Pharmaceutical Assets constitutes transfers to which 11 U.S.C. § 1146(c) applies.

M.  The Debtors' transfer of the Pharmaceutical Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Pharmaceutical Assets. The Debtors' transfer of the Pharmaceutical Assets to the Purchaser vests the Purchaser with good and valid title in and to the Pharmaceutical Assets, free and clear of any liens, claims, encumbrances, pledges, mortgages, security interests, charges, options or other interests of any kind or nature (collectively, the "Claims and/or Interests").

N.  The only claim or interest in the Pharmaceutical Assets (other than the Debtors) is that of Wachovia Bank, National Association, as Administrative Agent and Collateral Agent for itself ("Agent") and the other financial institutions from time to time parties to the Credit Agreement dated as of February 23, 2005, as may be amended or modified (collectively, "Lenders" and together with Agent, collectively, the "DIP Lender") and all other interested parties with respect to such Claims and/or Interests.

O.  The DIP Lender is adequately protected because the Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

00505035.DOC

(I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

P.   The Court's approval of the Purchase Agreement is in the best interests of the Debtors, their estates and their creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.   The Motion is granted.

2.   The Debtors provided adequate notice of the Motion and the Sale Hearing and complied with any applicable state and federal law regarding notice of their transfer of the Pharmaceutical Assets.

3.   All objections to the entry of this order or to the relief granted and requested in the Motion, that have not been withdrawn, waived or settled at or before the Sale Hearing, are denied and overruled on the merits.

4.   The Purchase Agreement is approved in all respects. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized (subject to applicable closing conditions set forth in the Purchase Agreement), to consummate the Sale including transferring and conveying the Pharmaceutical Assets to the Purchaser, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

5. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Purchase Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement. The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Pharmaceutical Assets to Purchaser.

6. Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Purchase Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

7. The Debtors will transfer the Pharmaceutical Assets to the Purchaser upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f). The only Claims and/or Interests are those of the senior liens and superpriority administrative claims of the DIP Lender. The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender will attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

8. The Debtors shall cause the net proceeds from the Sale to be paid to the DIP Lender to the extent required in accordance with the terms and conditions of the Final Financing Order and the Loan Documents.

9. The Debtors' transfer of the Pharmaceutical Assets pursuant to the terms of the Purchase Agreement is a transfer pursuant to 11 U.S.C. § 1146(c). Accordingly, the making, delivery, filing or recording of any deeds, assignments or other transfer documents in connection with the sale (the "Transfer Instruments"), will not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax (including without limitation, any transfer or recordation tax applicable to deeds and/or security interests). All filing and recording officers are directed to accept for filing or recording, and to file or record the Transfer Instruments immediately upon presentation without payment of any such taxes.

10. The Purchaser provided the Debtors with reasonably equivalent value and fair consideration for the Pharmaceutical Assets under the Bankruptcy Code and applicable non-bankruptcy law. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

11. Upon Closing of the Sale of Pharmaceutical Assets in accordance with the Purchase Agreement and this Order, the Purchaser will be deemed to have acted in good faith in purchasing the Pharmaceutical Assets and Leases under the Purchase Agreement as that term is used in 11 U.S.C § 363(m). For that reason, any reversal or modification of the Order on appeal will not affect

the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

12. The Debtors' transfer of the Pharmaceutical Assets to the Purchaser will not result in (a) the Purchaser having any liability for any Claim and/or Interest against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

13. Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Pharmaceutical Assets and a bill of sale transferring good and marketable title in the Pharmaceutical Assets to Purchaser. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

14. This Order is effective as a determination that upon Closing any and all Claims and/or Interests (except for the Permitted Encumbrances and Assumed Liabilities), if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Pharmaceutical Assets.

15. This Order is binding upon all entities who may be required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Pharmaceutical Assets.

16. This Court retains exclusive jurisdiction to (a) enforce and implement the Purchase Agreement and any other agreements and instruments executed in connection with the Purchase Agreement, (b) resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, and (d) interpret, implement and enforce the provisions of this Order.

17. The terms and provisions of the Purchase Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

18. Except as may otherwise be provided for in the Purchase Agreement and/or all related documents, including, without limitation, claims arising from the Purchaser's performance and obligations under the Purchase Agreement, all related documents and this Order, upon Closing, all persons who hold Claims and/or Interests against the Debtors are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

19. To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in

connection with the Purchase Agreement and this Order, the provisions contained in this Order will control.

20.     Notwithstanding Fed. R. Bankr. P. 6004(g), this Order will take effect immediately upon entry.

Dated this __18__ day of August, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to
serve a copy of this Order on all
parties who received copies of the
Motion.

00505035.DOC

AUG-17-2005 WED 08:02 AM WINN DIXIE　　　　FAX NO. 8043706838　　　　P. 02
　　　　　　　　　　　　　　　　　　　　　　　　FRED'S PHARMACY CORP　　　　PAGE 02/02

## SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT

THIS SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT (the "Amendment") is entered into as of August ___, 2005 (the "Effective Date") by and between WINN-DIXIE STORES, INC., a Florida corporation (hereinafter "Seller"), and FRED'S STORES OF TENNESSEE, INC., a Tennessee corporation (hereinafter "Buyer").

### RECITALS:

A. Seller and Buyer entered into that certain Purchase and Sale Agreement on July 19, 2005, as amended by that Amendment to Purchase and Sale Agreement dated August ___, 2005 (collectively, the "Agreement") with regard to the sale and purchase of pharmacies business located within Seller's supermarket locations as identified on Exhibit A of the Agreement (the "Property").

B. Seller and Buyer wish to amend the Agreement as hereinafter provided.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and in the Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

1. Capitalized terms not defined in this Amendment will have the same meanings given to them in the Agreement.

2. Exhibit A of the Agreement is hereby modified to include the following pharmacy ("Pharmacy Number 42"):

| Store | Address | City | ZIP | ST | Closing Inventory | RX Weekly Average |
|---|---|---|---|---|---|---|
| 42 | 830 Oak Street | McRae | 31055 | GA | $109,194 | 317 |

3. Buyer and Seller have agreed that the Records for Pharmacy Number 42 shall be valued at Five Thousand Dollars ($5,000.00). Accordingly, that portion of the Purchase Price identified in paragraph 3a. of the Agreement shall be adjusted to include the transfer of the Records associated with Pharmacy Number 42 from One Million One Hundred Twenty-Five Thousand Dollars ($1,125,000.00) to One Million One Hundred Thirty Thousand Dollars ($1,130,000.00).

4. Neither party has any knowledge of any default of any covenants of the Agreement and the Agreement is unmodified, except as expressly set forth in this Amendment. This Amendment may be executed in counterpart each of which, when so executed, will be deemed an original. Any signature delivered by facsimile will be deemed to be an original signature.

SELLER:　　　　　　　　　　　　　　　　　　　　BUYER:

WINN-DIXIE STORES, INC.,　　　　　　　　　　　FRED'S STORES OF TENNESSEE, INC.,
a Florida corporation　　　　　　　　　　　　　a Tennessee corporation

By: _____　　　　　　　　By: _____
Name: RICHARD C. JUDD　　　　　　　　　　　　Name: JOHN REIER
Title: Senior Vice President　　　　　　　　Title: _____

LEGAL APPROVED
ATTY: ___
DATE: 8/17/05

Reviewed By
___
8/17/05
Date: 8/17/05