This document is deemed filed on
8-22-05
pursuant to ~ ~ ~istrative Order FLMB-2003-2
governing after-hours filing.

F I L E D
JACKSONVILLE, FLORIDA

AUG 2 3 2005

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

## UNITED STATES BANKRUTPCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
|  | ) |  |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

---

**LIMITED OBJECTION OF LASSITER PROPERTIES, INC. (WAYCROSS, GEORGIA LEASE) TO "AMENDED MOTION OF THE DEBTORS FOR ORDER AUTHORIZING THE DEBTORS (I) TO SELL LEASEHOLD INTERESTS IN TARGETED STORES FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND EXEMPT FROM TAXES, (II) TO ASSUME AND ASSIGN LEASES, (III) TO REJECT TARGETED LEASES THE DEBTORS ARE UNABLE TO SELL, AND (IV) GRANTING RELATED RELIEF**

Lassiter Properties, Inc. (hereinafter "Lassiter") hereby files its limited objection to "Amended Motion of the Debtors for Order Authorizing the Debtors (I) To Sell Leasehold Interests in Targeted Stores Free and Clear of Liens, Claims and Interests and Exempt from Taxes, (II) To Assume and Assign Leases, (III) To Reject Targeted Leases the Debtors are Unable to Sell, and (IV) Granting Related Relief" (hereinafter the "Sale Motion"), and shows the Court as follows:

I.      **Factual and Procedural Background.**

1.      On February 21, 2005 (hereinafter the "Petition Date"), Winn-Dixie Stores, Inc. and twenty-three (23) of its subsidiaries and affiliates (hereinafter collectively the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      On or about August 1, 2005, the Debtors filed the Sale Motion seeking, among other relief, an order authorizing the Debtors to sell certain of their assets and to assume and assign certain unexpired leases.

3.      Specifically, by the Sale Motion the Debtors request:

(A)     Authority to sell certain Targeted Stores, each for the highest and best offer which the Debtors receive through the auction;

(B)     Authority to assume and assign certain unexpired leases in conjunction with the Debtors' sale of Targeted Stores; and

(C)     An Order fixing the "Cure Amount" for each unexpired lease to be assumed and assigned.

4.      Lassiter, as assignee of Peregrine Properties Limited Partnership (hereinafter "Peregrine"), is the Landlord under that certain Lease Agreement (hereinafter the "Waycross Lease") dated as of August 25, 1994 between Peregrine and Winn-Dixie Atlanta, Inc. (hereinafter "Tenant Winn-Dixie") as Tenant.

5.      Pursuant to the Waycross Lease, Tenant Winn-Dixie agreed to lease from Lassiter certain real property identified by Debtors in the Sale Motion as Winn-Dixie Store No. 188, located at 1912 Memorial Dr., Waycross, Georgia (hereinafter the "Premises").  A true and correct copy of the Waycross Lease is attached hereto as **Exhibit "A"** and is incorporated herein by reference.

6.      Pursuant to the Waycross Lease, Tenant Winn-Dixie agreed to undertake certain obligations, including without limitation obligations to pay Basic Rent and Additional Rent; maintain and repair the Premises; maintain insurance against loss or damage to the Premises and to Lassiter's equipment located on the Premises; maintain general public liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises; maintain workers compensation insurance; and pay certain "Impositions", including without limitation all taxes, assessments, levies, fees, water and sewer rents and charges, utilities

and communications, taxes and charges and all other governmental charges, imposed upon or assessed against the Premises. [Waycross Lease, Sections 6(a) and (b), 7(a), (b), (c) and (d), 8(a) and (b), 11(a), (b), (c), (d) and (e), 14(a), (b), (c), (d), (e), (f), and (g)].

7.    In conjunction with its acquisition of the Premises and the Waycross Lease, Lassiter, as assignee of Peregrine, became the "Maker" under that certain "Real Estate Note" (hereinafter the "Waycross Note") dated as of August 25, 1994 between Peregrine and Principal Mutual Life Insurance Company (hereinafter "Principal Mutual"), and became the "Grantor" under that certain "Deed to Secure Debt and Security Agreement" (hereinafter the "Waycross Security Deed") dated as of August 25, 1994 between Peregrine and Principal Mutual.  True and correct copies of the Waycross Note and the Waycross Security Deed are attached hereto as **Exhibits "B" and "C"** and are incorporated herein by reference.

8.    The Waycross Note provides in part:

> Notwithstanding anything to the contrary in the Loan Documents, the limitation on liability contained in subparagraph (a) above SHALL BECOME NULL AND VOID and shall be of no further force and effect in the event:
>
> > (i)    Of any breach or violation of paragraph 1.17(due on sale or encumbrance) of a Security Instrument;

[Waycross Note, p. 7, Section (c)].

9.    Paragraph 1.17 of the Waycross Security Deed provides in part:

> Grantor therefore covenants and agrees with Grantee, as part of the consideration for the extending to Grantor of the indebtedness evidenced by the Note, *that Grantor shall not, directly or indirectly, encumber, pledge, convey, transfer, or assign any or all of its interest in the Premises without the prior, written consent of Grantee*.  Grantee's ability to consent to any sale, transfer, conveyance or encumbrance and waive this provision implies no standard of reasonableness in determining whether or not such consent shall be granted in the same may be based upon what Grantee solely deems to be in its best interest; without limiting Grantee's right to withhold its consent and waiver entirely, such consent and waiver may be conditioned upon an increase in the rate of interest under the Note and the imposition of other terms and conditions thereunder or

hereunder; any sale, transfer, conveyance or encumbrance made, created or permitted in violation of this provision shall be null and void and in addition to the other rights and remedies available to Grantee, hereunder, *Grantee shall have the option of declaring the unpaid principle balance of the Note, together with all accrued and unpaid interest, premium, if any and all other sums and charges evidenced thereby or owned hereunder, immediately due and payable.*

[Waycross Security Deed, Paragraph 1.17] (emphasis supplied).

10.    Section 1.16 of the Lease entitled "Use and Management of the Premises",

requires that:

Grantor shall at all times operate the Premises as a retail supermarket facility. *Grantor shall not be permitted to alter or change the use of the Premises or to abandon the Premises without the prior, written consent of Grantee.*

[Waycross Security Deed, Paragraph 1.16] (emphasis supplied).

11.    Section 1.07 of the Waycross Security Deed entitled "Leases and Other

Agreements Affecting Property" states in pertinent part:

Grantor *will not, without the express written consent of Grantee, modify, surrender, or terminate*, either orally or in writing, any lease now existing or hereafter created upon the Premises or any part thereof, *nor will Grantor permit any assignment or a subletting by any Tenant without the prior express written consent of Grantee.*

[Waycross Security Deed, Paragraph 1.07] (emphasis supplied).

12.    The Sale Motion does not include a Stalking Horse Bid for the Premises or the

Waycross Lease.

13.    Rather, the Sale Motion indicates that Debtors will notify the affected landlords of

the highest and best offer, if any, for the purchase of each store received prior to the "August

Hearing" on August 26, 2005.

14.    The Sale Motion identifies the Cure Amount (the "Cure Amount") under the

Waycross Lease as $0.00.

- 4 -

## II.     LIMITED OBJECTION TO SALE MOTION

### A.     Debtors Have Not Identified A Potential Assignee of the Waycross Lease.

15.     The Sale Motion does not identify a party to whom Debtors will assign the Waycross Lease.

16.     Pursuant to the Bankruptcy Code, Tenant Winn-Dixie may not assume and assign the Waycross Lease unless, at the time of assumption, Tenant Winn-Dixie cures, or provides adequate assurance that it will cure, any existing default under the Waycross Lease and provides adequate assurance to Lassiter of the future performance under the Waycross Lease. *See* 11 U.S.C. § 365(b)(1).

17.     According to the Sale Motion, the Debtors and will notify affected landlords of the highest and best offer, if any, of the purchase of each store received prior to the "August Hearing" on August 26, 2005. Such notification will likely come on or after the deadline to file objections to the Sale Motion.

18.     As such, Lassiter is unable to assess the financial condition of any potential assignee of the Waycross Lease, and, consequently, no adequate assurance of said assignee's future performance under the Waycross Lease can be given.

19.     Accordingly, Lassiter requests and reserves the right to amend this objection once Debtors identify a potential assignee of the Waycross Lease to object to any aspect of the assignment of the Waycross Lease that is contrary to 11 U.S.C. 365(b) or other applicable law.

### B.     Rent Under the Waycross Lease.

20.     Payments of Basic Rent under the Waycross Lease are due on the first day of each March, June, September and December. Tenant Winn-Dixie has made the June 2005 payment and the next payment is not due until September 1, 2005. Tenant Winn-Dixie, therefore, is not in

default of its obligation to pay Basic Rent and its representation that the Cure Amount is $0.00 is accurate.

21.     Basic Rent under the Waycross Lease, however, is payable in arrears every three months.  Basic Rent on and after June 1, 2005 is therefore accruing, though it will not be payable until September 1, 2005.

22.     Lassiter objects to the Sale Motion to the extent that it fails to allocate between Tenant Winn-Dixie and the eventual assignee of the Waycross Lease the obligation to pay any and all Basic Rent accruing on or after June 1, 2005 through the "Effective Date" of Tenant Winn-Dixie's assignment of the Waycross Lease.  Any order allowing assignment and assumption of the Waycross Lease should allocate responsibility for the payment due September 1, 2005, as a part of adequate assurance of performance to which Lassiter is entitled.

**C.      Taxes Under the Waycross Lease.**

23.     The Waycross Lease requires Tenant Winn-Dixie to pay all property taxes.

24.     Property taxes for the tax year 2005 have not been billed and are not yet payable, and Tenant Winn-Dixie, therefore, has nothing to "cure" with regard to property taxes.  Property taxes for tax year 2005, however, have been accruing since January 1, 2005.

25.     Lassiter objects to the Sale Motion to the extent that it fails to allocate between Tenant Winn-Dixie and the eventual assignee of the Waycross Lease the obligation to pay any and all property taxes accruing after January 1, 2005 through the Effective Date.   Any Order allowing assignment and assumption of the Waycross Lease should allocate responsibility for 2005 ad valorem taxes which have been accruing as a part of the adequate assurance of performance to which Lassiter is entitled.

U:\Bkry\Winn-Dixie\Lassiter\Pldg\Limited Objection (Waycross) 8-22-05.doc

**D.**    **Maintenance of the Premises.**

26.    The Waycross Lease obligates Tenant Winn-Dixie to maintain the Premises.

27.    Furthermore, 11 U.S.C. § 365(b) requires Tenant Winn-Dixie, as a condition

precedent to assumption and assignment of the Waycross Lease, to provide Lassiter with

adequate assurance that the proposed assignee of the Waycross Lease can perform all obligations

thereunder, including without limitation the obligation to maintain and repair the Premises.

28.    Lassiter objects to the Sale Motion to the extent that Tenant Winn-Dixie fails to

provide Lassiter adequate assurance that the proposed assignee of the Waycross Lease can

perform all obligations thereunder, including without limitation the obligation to maintain and

repair the Premises.

**E.**    **Insurance Under the Waycross Lease.**

29.    The Waycross Lease obligates Tenant Winn-Dixie to maintain various types of

insurance coverage relating to the Premises and to activity on and around the Premises.

30.    11 U.S.C. § 365(b) requires Tenant Winn-Dixie, as a condition precedent to

assumption and assignment of the Waycross Lease, to provide Lassiter with adequate assurance

that the proposed assignee of the Waycross Lease can secure and maintain insurance coverage

sufficient to satisfy the obligations under the Waycross Lease.

31.    Lassiter objects to the Sale Motion to the extent that Tenant Winn-Dixie fails to

provide Lassiter adequate assurance that the proposed assignee of the Waycross Lease can secure

and maintain insurance coverage sufficient to satisfy the obligations under the Waycross Lease.

**F.**    **Anti-assignment Clauses in Waycross Note and Waycross Security Deed.**

32.    As discussed in greater detail above, the Waycross Note and the Waycross

Security Deed prohibit Lassiter from transferring or assigning any interest in the Premises or

U:\Bkry\Winn-Dixie\Lassiter\Pldg\Limited Objection (Waycross) 8-22-05.doc

permitting any assignment of the Waycross Lease absent the written consent of the Lender under the Waycross Note and the Waycross Lease.

33.    At this time, Lassiter is unable to determine whether the Lender under the Waycross Note and the Waycross Security Deed will consent to Tenant Winn-Dixie's assumption and assignment of the Waycross Lease.

34.    To the extent that Tenant Winn Dixie's assumption and assignment of the Waycross Lease may be construed as a transfer, assignment, conveyance or encumbrance of the Premises, or may be construed as Lassiter's permitting an assignment of the Waycross Lease, and thus a violation of the Waycross Note and/or the Waycross Security Deed, Lassiter objects to the Sale Motion. Lassiter requests that the Court enter such Order as is necessary to protect Lassiter from increased risk or liability under the Waycross Note and the Waycross Security Deed resulting from any assignment, or alternatively, require other action to eliminate Lassiter from being subjected to increased risk of liability or payment terms on the Waycross Note or Waycross Security Deed.

**WHEREFORE**, Lassiter respectfully requests that the Court sustain the objections raised herein and grant Lassiter such other relief as is just and proper under the circumstances.

Dated this 22nd day of August 2005.

/s/ R. Scott Shuker
R. Scott Shuker
Florida Bar No. 984469
**GRONEK & LATHAM, LLP**
390 N. Orange Avenue, Suite 600
P. O. Box 3353 (32802-3353)
Orlando, Florida  32801
Telephone:  407-481-5800
Facsimile:  407-481-5801
Attorneys Lassiter

- 8 -

JAMES L. PAUL
*Georgia State Bar No. 567600*
JOHN K. REZAC
*Georgia State Bar No. 601935*
Chamberlain, Hrdlicka, White, Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
(404) 659-1410
(404) 659-1852 (Facsimile)
*Co-counsel for Creditor Lassiter Properties, LP*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by either electronic transmission and/or U.S. First Class mail to: DJ Baker, Skadden Arps Slate Meagher & Form, LLP, Four Times Square, New York, NY 10036; Cynthia Jackson, Smith Hulsey & Busey, 225 Water Street, Ste. 1800, Jacksonville, FL 32202; Winn-Dixie Stores, Inc., 5050 Edgewood Court, Jacksonville, FL 32254-3699; Adam Ravin, Esq., Skadden Arps Slate Meagher & Form, LLP, Four Times Square, New York, NY 10036; James H. Post, Esq., Smith Hulsey & Busey, 225 Water Street, Ste. 1800, Jacksonville, FL 32202; Dennis F. Dunne, Esq., Milbank, Twee Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, NY 10005; John B. Macdonald, Esq., Akerman Senterfitt, 50 North Laura St., Ste. 2500, Jacksonville, FL 32202; Patrick P. Patangan, Esq., Akerman Senterfitt, 50 North Laura St., Ste. 2500, Jacksonville, FL 32202; Elena L. Escamilla, Esq., Office of the U.S. Trustee, 135 W. Central Blvd., Ste. 620, Orlando, FL 32806; VOW, LLC, c/o Edward J. Ashton, Esq., Walston Wells Anderson & Bains LLP, One Federal Place/1819 Fifth Ave. North, Birmingham, AL 35203; and C Ellis Brazeal, III, Walston Wells Anderson & Bains LLP, One Federal Place/1819 Fifth Ave. North, Birmingham, AL 35203, this 22nd day of August 2005.

/s/ R. Scott Shuker
R. Scott Shuker, Esquire

06720/40153
LP I.D. No. 8

750407
Waycross, GA

# LEASE AGREEMENT

**Peregrine Properties Limited Partnership,
an Iowa limited partnership authorized to
transact business in Georgia as Peregrine
Ownership and Leasing Limited Partnership,
as Landlord**

to

**Winn-Dixie Stores, Inc.,
as Tenant**

**Dated as of August 25, 1994**

Exhibit A

TABLE OF CONTENTS

                                                              Page

1.  Demise of Premises; Priority of Lease . . . . . . . . .    1
    (a)  The Leased Premises . . . . . . . . . . . . . . .     1
    (b)  Priority of Lease . . . . . . . . . . . . . . . .     1

2.  Definitions  . . . . . . . . . . . . . . . . . . . . .     1

3.  Title and Condition  . . . . . . . . . . . . . . . . .     4
    (a)  Title . . . . . . . . . . . . . . . . . . . . . .     4
    (b)  Condition of Leased Premises  . . . . . . . . . .     4
    (c)  Assignment of Warranties, Guaranties, Indemnities .   5
    (d)  Granting of Easements . . . . . . . . . . . . . .     5
    (e)  Conveyances for Public Purposes . . . . . . . . .     6
    (f)  Completion of Construction  . . . . . . . . . . .     8

4.  Use of Leased Premises; Quiet Enjoyment  . . . . . . .     8
    (a)  Use . . . . . . . . . . . . . . . . . . . . . . .     8
    (b)  Landlord's Covenant of Quiet Enjoyment  . . . . .     9

5.  Term . . . . . . . . . . . . . . . . . . . . . . . . .     9

6.  Rent . . . . . . . . . . . . . . . . . . . . . . . . .     9
    (a)  Basic Rent  . . . . . . . . . . . . . . . . . . .     9
    (b)  Additional Rent . . . . . . . . . . . . . . . . .    10

7.  Net Lease; Non-Terminability . . . . . . . . . . . . .    10
    (a)  No Abatement of Basic Rent  . . . . . . . . . . .    10
    (b)  No Termination of Lease; No Defense to Tenant's
         Obligations . . . . . . . . . . . . . . . . . . .    10
    (c)  Continuing Obligations of Tenant  . . . . . . . .    11
    (d)  Tenant's Waivers  . . . . . . . . . . . . . . . .    11

8.  Payment of Impositions; Compliance with Law  . . . . .    11
    (a)  Impositions . . . . . . . . . . . . . . . . . . .    11
    (b)  Compliance with Law . . . . . . . . . . . . . . .    12

9.  Liens; Recording and Title . . . . . . . . . . . . . .    12

10. Indemnification  . . . . . . . . . . . . . . . . . . .    13

11. Maintenance and Repair . . . . . . . . . . . . . . . .    13
    (a)  Maintenance . . . . . . . . . . . . . . . . . . .    13
    (b)  Encroachments . . . . . . . . . . . . . . . . . .    13
    (c)  Landlord's Right of Entry . . . . . . . . . . . .    14
    (d)  Replacement Equipment . . . . . . . . . . . . . .    14
    (e)  Hazardous Waste . . . . . . . . . . . . . . . . .    14

12. Alterations  . . . . . . . . . . . . . . . . . . . . .    15

13. Condemnation . . . . . . . . . . . . . . . . . . . . .    16

i

Exhibit A

|  | (a) | Assignment of Condemnation Award . . . . . . . . . | 16 |
|  | (b) | Total or Substantial Condemnation . . . . . . . . . | 16 |
|  | (c) | Partial Condemnation . . . . . . . . . . . . . . . | 18 |
|  | (d) | Landlord's Equipment Condemnation . . . . . . . . . | 19 |
|  | (e) | Proceedings . . . . . . . . . . . . . . . . . . . . | 19 |
| 14. | Insurance . . . . . . . . . . . . . . . . . . . . | 19 |
|  | (a) | Type of Insurance . . . . . . . . . . . . . . . . . | 19 |
|  | (b) | Insurance Requirements; Self-Insurance . . . . . . | 20 |
|  | (c) | Mortgagee Loss Payable Clauses; Cancellation of Insurance . . . . . . . . . . . . . . . . . . . . . | 20 |
|  | (d) | Payment of Premiums; Policy Replacements . . . . . | 21 |
|  | (e) | Blanket Policies . . . . . . . . . . . . . . . . . | 21 |
|  | (f) | Casualty Loss Claims . . . . . . . . . . . . . . . | 21 |
|  | (g) | Termination Upon Casualty . . . . . . . . . . . . . | 22 |
| 15. | Restoration . . . . . . . . . . . . . . . . . . . . | 23 |
| 16. | Economic Abandonment . . . . . . . . . . . . . . . . | 24 |
| 17. | Substitution of Property . . . . . . . . . . . . . . | 25 |
| 18. | Procedure Upon Purchase . . . . . . . . . . . . . . | 27 |
|  | (a) | Title to be Conveyed . . . . . . . . . . . . . . . | 27 |
|  | (b) | Payment of Purchase Price; Conveyance Documents; Other Costs . . . . . . . . . . . . . . . . . . . . | 27 |
|  | (c) | Assumption of Note and Mortgage . . . . . . . . . . | 28 |
| 19. | Assignment and Subleasing . . . . . . . . . . . . . | 28 |
| 20. | Permitted Contests . . . . . . . . . . . . . . . . . | 29 |
| 21. | Conditional Limitations; Default Provision . . . . . | 30 |
|  | (a) | Events of Default . . . . . . . . . . . . . . . . . | 30 |
|  | (b) | Landlord's Remedies Upon Default . . . . . . . . . | 31 |
|  | (c) | No Relief of Obligations . . . . . . . . . . . . . | 32 |
|  | (d) | Current Damages . . . . . . . . . . . . . . . . . . | 32 |
|  | (e) | Liquidated Final Damages . . . . . . . . . . . . . | 33 |
| 22. | Additional Rights of Landlord . . . . . . . . . . . | 33 |
|  | (a) | Non-Exclusive, Cumulative Remedies . . . . . . . . | 33 |
|  | (b) | Tenant's Waiver of Redemption . . . . . . . . . . . | 33 |
|  | (c) | Costs Upon Default and Litigation . . . . . . . . . | 34 |
| 23. | Notices . . . . . . . . . . . . . . . . . . . . . . | 34 |
| 24. | Estoppel Certificate . . . . . . . . . . . . . . . . | 35 |
| 25. | Surrender and Holding Over . . . . . . . . . . . . . | 35 |
| 26. | No Merger of Title . . . . . . . . . . . . . . . . . | 36 |
| 27. | Expansion . . . . . . . . . . . . . . . . . . . . . | 36 |

ii

Exhibit A

28.   Right of First Refusal . . . . . . . . . . . . . . . . . 36

29.   Change of Control  . . . . . . . . . . . . . . . . . . . 37

30.   Miscellaneous  . . . . . . . . . . . . . . . . . . . . . 38

31.   Incorporation by Reference . . . . . . . . . . . . . . . 38

     Exhibit "A" - Description of Leased Premises
     Exhibit "B" - Landlord's Equipment
     Exhibit "C" - Tenant's Equipment
     Exhibit "D" - Form of Completion Certificate
     Exhibit "E" - Basic Rent Payments
     Exhibit "F" - Purchase Prices
     Exhibit "G" - Estoppel Certificate

Location of Definitions (by paragraph numbers):

     Additional Rent - 6(b)
     Alterations - 2
     Assignment - 2
     Basic Rent - 6(a)
     Basic Rent Payment Dates - 6(a)
     Commencement Date - 5
     Completion Date - 3(f)
     Condemnation - 2
     Cost - 2
     Change of Control - 29
     Default Rate - 6(b)
     Event of Default - 21(a)
     Extended Term - 5
     Impositions - 8(a)
     Improvements - 1(a)
     Initial Term - 5
     Land - 1(a)
     Landlord - introductory paragraph
     Landlord's Equipment - 1(a)
     Leased Premises - 1(a)
     Legal Requirements - 2
     Lien - 2
     Mortgage - 2
     Mortgagee - 2
     Net Award - 2
     Net Proceeds - 2
     Note - 2
     Permitted Encumbrances - 2
     Purchase and Sale Agreement - 2
     Replaced Equipment - 11(d)
     Replacement Equipment - 11(d)
     Requisition - 2
     State - 1(a)
     Substitute Assignment - 17(e)

Exhibit A

Substitute Lease - 17(e)
Substitute Mortgage - 17(e)
Substitute Note - 17(e)
Substitute Property - 17
Substitution Date - 17
Taking - 2
Tenant - introductory paragraph
Tenant's Equipment - 1(a)
Term - 2
Termination Date - 3(f), 13(b), 14(g), 16 and 29

iv

Exhibit A

THIS LEASE AGREEMENT (this "**Lease**"), made as of this 25th day of August, 1994, by and between PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Georgia as Peregrine Ownership and Leasing Limited Partnership ("**Landlord**"), with an address of 711 High Street, Des Moines, Iowa 50392, Attn: Commercial Real Estate Loan Administration, Reference No. 750024 and WINN-DIXIE STORES, INC., a Florida corporation (together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety, called "**Tenant**"), with an address of 5050 Edgewood Court, P.O. Box B, Jacksonville, Florida 32203.

In consideration of the rents and agreements herein stipulated to be paid and performed, Landlord and Tenant hereby covenant and agree as follows:

1.    <u>Demise of Premises; Priority of Lease</u>.

(a)    <u>The Leased Premises</u>.  Landlord hereby demises and lets to Tenant, and Tenant hereby takes and leases from Landlord, for the term or terms and upon the provisions hereinafter specified, the following described property (collectively, the "**Leased Premises**"):   (i) the premises described in <u>Exhibit "A"</u> hereto, together with all easements, rights and appurtenances thereunto belonging or appertaining (collectively, the "**Land**"); (ii) the buildings, structures and other improvements constructed and to be constructed on the Land (collectively, the "**Improvements**"); and (iii) the machinery and equipment described in <u>Exhibit "B"</u> hereto and installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease (collectively, the "**Landlord's Equipment**").  The machinery, equipment and fixtures described in <u>Exhibit "C"</u> hereto and the Tenant's trade fixtures and equipment are and remain the property of Tenant whether the same constitute real or personal property under the law of the state in which the Leased Premises are located (the "**State**"); such machinery, equipment, fixtures and trade fixtures, together with all additions and accessions thereto, substitutions therefor and replacements thereof are herein collectively called "**Tenant's Equipment**").

(b)    <u>Priority of Lease</u>.  This Lease is prior to the lien of any Mortgage, and is made subject to the Permitted Encumbrances.

2.    **Definitions**.  For the convenience of the parties, the table of contents to this Lease contains a list of the paragraphs of this Lease in which certain terms used in this Lease are defined.  Unless the context otherwise specifies or requires the following terms used in this Lease have the following meanings:

- 1 -

<u>LEASE AGREEMENT</u>

06720/40153
LP I.D. No. 8

Exhibit A

"**Alterations**" means all changes, additions, improvements or repairs to, all alterations, reconstructions, renewals or removals of, and all substitutions or replacements for, any of the Improvements or Landlord's Equipment, whether interior or exterior, structural or non-structural, or ordinary or extraordinary.

"**Assignment**" means an assignment of this Lease executed by Landlord in favor of a Mortgagee.

"**Condemnation**" means a Taking or a Requisition.

"**Cost**" means, without duplication, the aggregate actual cost paid by or on behalf of Tenant in connection with the construction and acquisition of the Leased Premises for the following items: (i) the Land and Improvements, including site improvements, obtaining necessary easements, storm drainage, off-site road construction and utilities (including adjacent land for, and costs related to roads and utilities subsequently dedicated to municipalities) and equipment incorporated in the Improvements or constituting a functional part thereof including, without limitation, heating and air conditioning systems, plumbing and wiring, (ii) the Landlord's Equipment, including the cost of installation thereof, (iii) all fees and expenses in connection with the placement, issuance and sale of the Note and any interim financing of the Leased Premises, (iv) title transfer fees, title insurance premiums and recording expenses and taxes (including transfer taxes), (v) indirect construction costs such as capitalized interest, taxes and insurance and other allocable costs during construction and (vi) fees to and disbursements of professionals such as attorneys, architects, engineers and surveyors.

"**Leased Premises**" means the Leased Premises described in paragraph 1 and includes any part thereof.

"**Legal Requirements**" means all present and future laws, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every duly constituted governmental authority or agency (but excluding those by their terms not applicable to Tenant or the Leased Premises as a result of some grandfather clause or similar provision), and all covenants, restrictions and conditions now or hereafter of record which may be applicable to Tenant or to the Leased Premises, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of the Leased Premises, even if compliance therewith necessitates structural changes or improvements or results in interference with the use or enjoyment of the Leased Premises.

- 2 -

06720/40153
LP I.D. No. 8

Exhibit A

"**Lien**" means charge, encumbrance, title retention agreement, pledge, lien, security interest, mortgage and/or deed of trust.

"**Mortgage**" means a mortgage, deed of trust, deed to secure debt or similar security instrument creating a Lien on the Leased Premises in favor of a Mortgagee.

"**Mortgagee**" means a person or entity which is the holder of a Note of Landlord, secured by a Mortgage and an Assignment.

"**Net Award**" means the entire award payable by reason of a Condemnation, less any expenses incurred by Landlord, Tenant or a Mortgagee in collecting such award, and less any portion of such award retained by Tenant pursuant to paragraph 13(a)(i).

"**Net Proceeds**" means the entire proceeds of any insurance required under paragraph 14(a), together with any self-insurance payment required of Tenant, less any expenses incurred by Landlord, Tenant or a Mortgagee in collecting such proceeds or payment.

"**Note**" means a secured note or promissory note executed by Landlord in favor of Mortgagee secured by a Mortgage and an Assignment.

"**Permitted Encumbrances**" means:

(i)  easements, rights-of-way, servitudes, other similar reservations, rights and restrictions and other defects and irregularities in the title to the Leased Premises, none of which materially lessens the value of the Leased Premises or materially impairs the use of the Leased Premises for the purposes held by Tenant;

(ii) matters identified as exceptions to title in the mortgagee title insurance policy delivered to and accepted by any Mortgagee on the Commencement Date;

(iii) any condemnation right reserved to or vested in any municipality or public authority with respect to the Leased Premises; and

(iv) any Liens for Impositions not then delinquent and any Liens of mechanics, materialmen and laborers for work or services performed or materials furnished in connection with the Leased Premises which are not then overdue or the amount or validity of which is being

- 3 -

Exhibit A

contested by Tenant pursuant to, and as permitted by, paragraph 20.

"**Purchase and Sale Agreement**" means the Real Estate Purchase and Sale Agreement, dated June 8, 1994, between Principal Mutual Life Insurance Company and Winn-Dixie Stores, Inc.

"**Requisition**" means any temporary requisition or confiscation of the use or occupancy of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

"**Taking**" means any taking of the Leased Premises in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of any agreement with any condemnor in settlement of or under threat of any such condemnation or other eminent domain proceeding or by any other means, or any de facto condemnation.

"**Term**" means the Initial Term, any Extended Term or the Initial Term together with any Extended Term.

3.   <u>Title and Condition</u>.

(a)   <u>Title</u>.   The Leased Premises are demised and let subject to (i) the rights of parties in possession, (ii) the existing state of title as of the Commencement Date (including, without limitation, the Permitted Encumbrances), (iii) any state of facts which an accurate survey or physical inspection of the Leased Premises might show, (iv) all Legal Requirements, and (v) the condition of the Leased Premises as of the Commencement Date, all without representation or warranty by Landlord.   Tenant has examined the title to the Leased Premises on and as of the Commencement Date and has found the same to be satisfactory for all purposes.

(b)   <u>Condition of Leased Premises</u>.   Tenant acknowledges that it has received the Leased Premises in good condition and repair on the Commencement Date.   LANDLORD HAS NOT MADE, AND WILL NOT MAKE, ANY INSPECTION OF THE LEASED PREMISES, AND LANDLORD LEASES, AND TENANT TAKES, THE LEASED PREMISES "AS-IS".   TENANT ACKNOWLEDGES THAT LANDLORD HAS NOT MADE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE LEASED PREMISES, ITS FITNESS FOR ANY USE OR PURPOSE, ITS DESIGN OR CONDITION FOR ANY USE OR PURPOSE, THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, ITS VALUE, COMPLIANCE WITH SPECIFICATIONS, LOCATION, USE, CONDITION, MERCHANTABILITY,

- 4 -

06720/40153
LP I.D. No. 8

Exhibit A

QUALITY, DESCRIPTION, DURABILITY OR OPERATION OR LANDLORD'S TITLE THERETO; IT BEING AGREED THAT ALL RISKS INCIDENT TO ALL OF THESE MATTERS ARE TO BE BORNE BY TENANT.    TENANT ACKNOWLEDGES THAT THE LEASED PREMISES ARE OF ITS SELECTION AND HAVE BEEN CONSTRUCTED TO ITS SPECIFICATIONS.    TENANT HAS INSPECTED THE LEASED PREMISES AND THEY ARE SATISFACTORY TO TENANT.    IN THE EVENT OF ANY DEFECT OR DEFICIENCY OF ANY NATURE IN THE LEASED PREMISES, WHETHER PATENT OR LATENT, LANDLORD SHALL HAVE NO RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING THEREFROM (INCLUDING STRICT LIABILITY IN TORT).    THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN NEGOTIATED AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY REPRESENTATIONS OR WARRANTIES BY LANDLORD, EXPRESS OR IMPLIED, WITH RESPECT TO THE LEASED PREMISES, ARISING PURSUANT TO ANY LAW NOW OR HEREAFTER IN EFFECT OR OTHERWISE.

(c)    <u>Assignment of Warranties, Guaranties, Indemnities</u>. Landlord hereby assigns, without recourse or warranty whatsoever, to Tenant, for the duration of this Lease, all Landlord's interest in all warranties (except warranties of title to the Leased Premises), guaranties and indemnities, express or implied, and similar rights which Landlord may have against any manufacturer, seller, engineer, contractor or builder in respect of the Leased Premises, including, any rights and remedies existing by contract or pursuant to the Uniform Commercial Code.  So long as no default has occurred and is continuing hereunder and until the expiration or termination of this Lease, Tenant shall have the right (at its sole cost and expense) to enforce any such warranty, guaranty or indemnity in the name of Landlord or Tenant.    Landlord hereby agrees to execute and deliver, at Tenant's expense, such further documents (including powers of attorney) as Tenant may reasonably request, in order that Tenant may have the full benefit of the assignment effected or intended to be effected by this paragraph and the ability to enforce such warranties, guaranties and indemnities.

(d)    <u>Granting of Easements</u>.  So long as no default has occurred and is continuing hereunder, Landlord, at the request of Tenant, will (i) grant easements and other rights in the nature of easements, (ii) release existing easements or other rights in the nature of easements which are for the benefit of the Leased Premises, (iii) execute amendments to any covenants and restrictions affecting the Leased Premises, (iv) grant party wall rights for the benefit of any land adjoining the Land, and (v) execute and deliver to any person any instrument appropriate to confirm or effect such grant, release or amendment, upon receipt by Landlord of a certificate of Tenant, signed by the President or a Vice President of Tenant stating:

- 5 -

Exhibit A

    (A)   that the Leased Premises (including all related easements), following such grant, release or amendment, (1) constitutes an integrated economic unit for use as a retail grocery facility, including sufficient parking and all necessary and required utilities, (2) is a contiguous parcel of land, without gap or hiatus, (3) has adequate access to and from public highways, and (4) is not in violation of any Legal Requirement or any restrictive covenant or other agreement applicable thereto;

    (B)   that such grant, release or amendment will not materially lessen the value of the Leased Premises;

    (C)   the consideration to be received in connection with such grant, release or amendment; and

    (D)   that upon such grant, release or amendment, this Lease shall remain in full force and effect and Tenant shall remain obligated under this Lease without any reduction of Basic Rent, Additional Rent or any other sums payable under this Lease to the same extent as if such conveyance or transfer had not been made, such easement, license, other right or privilege had not been granted, such easement or appurtenance had not been released, such party wall rights had not been granted, such release had not been granted, and such instrument had not been executed and delivered; and

    (E)   that Tenant will perform all of the obligations under such instrument of grant, release or amendment.

Tenant may retain any consideration up to $5,000 payable for such grant, release or amendment. Any consideration in excess of $5,000 shall be paid to Landlord.

    (e)   <u>Conveyances for Public Purposes</u>.  So long as no default has occurred and is continuing hereunder, Landlord will, at Tenant's request, (i) sell, assign, convey or otherwise transfer an interest in the Leased Premises to any person legally empowered to take such interest by Condemnation, (ii) execute petitions to have the Leased Premises annexed to any municipal corporation or utility district, (iii) dedicate, transfer or release portions of the Leased Premises for road, highway or other public purposes, and (iv) execute and deliver to any person any instrument appropriate to confirm or effect such sale, transfer,

- 6 -

06720/40153
LP I.D. No. 8

Exhibit A