subject only to Permitted Encumbrances and that all appropriate recordings, registrations and filings with respect to the Substitute Lease, Substitute Mortgage and Substitute Assignment have been made.  The Mortgagee shall have received a survey and a loan policy of title insurance in the form and with the endorsements which would have been required by the Purchase and Sale Agreement had the Substitute Property been one of the properties identified in the Purchase and Sale Agreement.

(g)  All necessary approvals, authorizations and consents of all governmental bodies (including courts) having jurisdiction with respect to the transactions contemplated by this paragraph 17 shall have been obtained and all taxes, fees and other charges payable in connection therewith shall have been paid.

(h)  Landlord and Mortgagee shall have received all other documentation required to be furnished by Tenant under the Purchase and Sale Agreement to the same extent, with the same effect and subject to the same approvals as if the Substitute Property had been one of the properties identified in the Purchase and Sale Agreement.  Tenant shall be obligated to pay all costs and expenses incurred by it, Landlord or Mortgagee in connection with the transaction contemplated by this paragraph 17, including the reasonable fees and expenses of counsel to Landlord and Mortgagee.

18.  <u>Procedure Upon Purchase</u>.

(a)  <u>Title to be Conveyed</u>.  In the event of the purchase of the Leased Premises or any part thereof by Tenant or its designee pursuant to any provision of this Lease, Landlord need not transfer and convey to Tenant or its designee any better title thereto than Landlord received, and Tenant shall accept such title, subject, however, to all Liens, exceptions and restrictions on, against or relating to the Leased Premises and to all applicable Legal Requirements, but (except in the case of a purchase in which Tenant assumes or takes subject to the Note and Mortgage), free of the Lien of the Mortgage and Liens, exceptions and restrictions which have been created by or resulted from acts of Landlord taken without the consent of Tenant.

(b)  <u>Payment of Purchase Price; Conveyance Documents; Other Costs</u>.  Upon the date fixed for any such purchase of the Leased Premises pursuant to any provision of this Lease, Tenant shall pay to Landlord at its address set forth above, or at any other place designated by Landlord, the purchase price therefor specified herein (including, if applicable, the assumption documents referred to below), and Landlord shall

- 27 -

06720/40153
LP I.D. No. 8

Exhibit A

thereafter deliver to Tenant a deed which describes the Leased Premises then being sold to Tenant, and conveys and transfers the title thereto which is described in paragraph 18(a), together with such other instruments as shall be necessary to transfer or assign to Tenant or its designee any other property then required to be sold by Landlord pursuant to this Lease.  Tenant shall pay all charges incident to such conveyance and transfer (including, without limitation, reasonable attorneys' fees, escrow fees, recording fees, title insurance premiums and all applicable federal, state and local taxes (other than any net income tax or franchise tax levied upon or assessed against Landlord)) which may be incurred or imposed by reason of such conveyance and transfer and other instruments.  Upon the completion of such purchase (other than a purchase pursuant to paragraph 28), but not prior thereto (whether or not any delay in the completion of or the failure to complete such purchase shall be the fault of Landlord), this Lease and all obligations hereunder (including the obligations to pay Basic Rent and Additional Rent) shall terminate, except with respect to obligations and liabilities of Tenant, actual or contingent, under this Lease which arose on or prior to such date of purchase.

(c)  Assumption of Note and Mortgage.  If Tenant's offer to purchase the Leased Premises pursuant to paragraph 13(b), 14(g) or 16 includes the assumption of the Note and Mortgage, Tenant shall execute and deliver to Landlord and Mortgagee all such documents (including assumption agreements and opinions of counsel) as Landlord or Mortgagee shall reasonably require to effect such assumption, in form and substance satisfactory to Landlord and Mortgagee.  The agreement of Tenant assuming the Note and Mortgage shall provide that Tenant shall be personally liable on a full-recourse basis for the payment and performance of all of the obligations of the borrower under the Note and Mortgage and shall contain a "change of control" provision substantially to the effect of paragraph 29 hereof except that the obligation of Tenant shall be to prepay the Note at the price and as otherwise provided in the Mortgage.

19.  Assignment and Subleasing.  This Lease may be assigned and the Leased Premises may be sublet in whole or in part without the consent of Landlord.  Each sublease of the Leased Premises shall be subject and subordinate to the provisions of this Lease. No assignment or sublease made as permitted by this paragraph 19 shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no assignment or sublease had been made.  No assignment or sublease shall impose any obligations on Landlord under this Lease. Tenant shall, within 10 days after the execution and delivery of

- 28 -

06720/40153
LP I.D. No. 8

Exhibit A

any such assignment or sublease, deliver a duplicate original copy thereof to Landlord.

Tenant hereby irrevocably and unconditionally assigns to Landlord all rents and other sums payable under any sublease of the Leased Premises; provided, however, that Landlord hereby grants Tenant a license to collect all such rents and other sums so long as no Event of Default has occurred and is continuing. Tenant shall not mortgage or pledge this Lease or the leasehold estate created hereby, and any such mortgage or pledge made in violation of this paragraph 19 shall be void.

20. **Permitted Contests.**  Tenant shall not be required to (i) pay any Imposition, (ii) comply with any Legal Requirement, (iii) discharge or remove any Lien referred to in paragraphs 9 or 12, or (iv) take any action with respect to any encroachment, violation, hindrance, obstruction or impairment referred to in paragraph 11(b) so long as Tenant shall contest, in good faith and at its expense, the existence, the amount or the validity thereof, the amount of the damages caused thereby, or the extent of its or Landlord's liability therefor, by appropriate proceedings which shall operate during the pendency thereof to prevent (A) the collection of, or other realization upon, the Imposition or Lien so contested, (B) the sale, forfeiture or loss of any of the Leased Premises, any Basic Rent or any Additional Rent to satisfy the same or to pay any damages caused by the violation of any such Legal Requirement or by any such encroachment, violation, hindrance, obstruction or impairment, (C) any interference with the use or occupancy of the Leased Premises, (D) any interference with the payment of any Basic Rent, any Additional Rent or any other sum payable hereunder, and (E) the cancellation of any fire or other insurance policy.  If Tenant's tangible net worth (determined in accordance with generally accepted accounting principles in effect on the Commencement Date) shall be less than $500,000,000 at the time of commencement of any such contest, Tenant shall provide to Landlord and Mortgagee a bond of a surety acceptable to Landlord and Mortgagee in an amount satisfactory to Landlord and Mortgagee. While any such proceedings are pending, neither Landlord nor Mortgagee shall have the right to pay, remove or cause to be discharged the Imposition or Lien thereby being contested.  Tenant agrees that each such contest shall be promptly and diligently prosecuted to a final conclusion, except that Tenant shall, so long as the conditions of the first sentence of this paragraph 20 are at all times complied with, have the right to attempt to settle or compromise such contest through negotiations. Tenant shall pay and save Landlord and Mortgagee harmless against any and all losses, judgments, decrees and costs (including all reasonable attorneys' fees and expenses) in connection with any such contest and shall, promptly after the final determination of such contest, fully pay and discharge the amounts which shall be levied, assessed, charged or imposed or be determined to be payable therein or in connection

- 29 -

Exhibit A

therewith, together with all penalties, fines, interest, costs and expenses thereof or in connection therewith, and perform all acts the performance of which shall be ordered or decreed as a result thereof. No such contest shall subject Landlord or Mortgagee to the risk of any material civil liability or any criminal liability.

21. **Conditional Limitations; Default Provision.**

(a) **Events of Default.** The occurrence of any one or more of the following shall constitute an event of default (an **"Event of Default"**) under this Lease: (i) a failure by Tenant to make any payment of Basic Rent, Additional Rent or other sum herein required to be paid by Tenant for a period of 10 days after notice to Tenant of such failure; (ii) a failure by Tenant to duly perform and observe, or a violation or breach of, any other provision hereof which failure, violation or breach shall continue for a period of 30 days after notice to Tenant thereof; provided that if such failure, violation or breach cannot be cured by mere payment of money and cannot with diligence be cured within such 30-day period, the period to cure such failure, violation or breach shall be extended for such longer period of time as is reasonably necessary to cure such failure, violation or breach so long as Tenant shall commence to cure such failure, violation or breach within said 30-day period and actively, diligently and in good faith proceed with continued curing thereof until it shall be fully cured; (iii) any material representation or warranty made by Tenant in this Lease or any other document delivered in connection with the execution and delivery of this Lease proves to be incorrect in any material respect; (iv) Tenant shall (A) voluntarily be adjudicated a bankrupt or insolvent, (B) seek or consent to the appointment of a receiver or trustee for Tenant or the Leased Premises, (C) file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, (D) make a general assignment for the benefit of creditors, or (E) admit in writing its inability to pay its debts as they mature; (v) a court shall enter an order, judgment or decree appointing a receiver or trustee for Tenant or the Leased Premises or approving a petition filed against Tenant which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and such order, judgment or decree shall remain in force, undischarged or unstayed, 60 days after it is entered; (vi) the Leased Premises shall have been left unattended and without security for a period of 30 consecutive days; (vii) Tenant shall be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution; or (viii) the estate or interest of Tenant in the Leased Premises shall be levied upon or attached in any proceeding and such proceeding shall not be

- 30 -

06720/40153
LP I.D. No. 8

Exhibit A

vacated or discharged within sixty 60 days after such levy or attachment.

(b) <u>Landlord's Remedies Upon Default</u>.   If an Event of Default shall have occurred, Landlord shall have the right at its option, then or at any time thereafter during the continuance of such Event of Default, to do any one or more of the following without demand upon or notice to Tenant:

(i)  Landlord may give Tenant notice of Landlord's intention to terminate this Lease on a date specified in such notice.  Upon the date therein specified, the Term and the estate hereby granted and all rights of Tenant hereunder shall expire and terminate as if such date were the date hereinbefore fixed for the expiration of the Term, but Tenant shall remain liable for all its obligations hereunder, including its liability for Basic Rent, Additional Rent or any other sums payable under this Lease, as hereinafter provided.

(ii) Landlord may, whether or not the Term of this Lease shall have been terminated pursuant to clause (i) above, (x) give Tenant notice to surrender the Leased Premises to Landlord immediately or on a date specified in such notice, at which time Tenant shall surrender and deliver possession of the Leased Premises to Landlord, or (y) reenter and repossess the Leased Premises by summary proceedings, ejectment or any other means or procedure. Upon or at any time after taking possession of the Leased Premises, Landlord may remove any persons or property therefrom.  Landlord shall be under no liability for, or by reason of, any such entry, repossession or removal. No such entry or repossession shall be construed as an election by Landlord to terminate this Lease unless Landlord gives a written notice of such intention to Tenant pursuant to clause (i) above.

(iii) After repossession of the Leased Premises pursuant to clause (ii) above, whether or not this Lease shall have been terminated pursuant to clause (i) above, Landlord shall have the right (but shall be under no obligation) to relet the Leased Premises or any part thereof to such tenant or tenants for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) for such rent, on such conditions (which may include concessions or free rent) and for such uses as Landlord, in its absolute discretion, may determine; and Landlord may collect and receive any rents payable by reason of such reletting.  Landlord shall not be responsible or liable for any failure to relet the Leased Premises or

- 31 -

06720/40153
LP I.D. No. 8

Exhibit A

any part thereof or for any failure to collect any rent due upon any such reletting. Landlord may make such Alterations as Landlord in its sole discretion may deem advisable. Tenant agrees to pay Landlord, as Additional Rent, immediately upon demand, all reasonable expenses incurred by Landlord in obtaining possession, in performing Alterations and in reletting the Leased Premises, including fees and commissions of attorneys, architects, agents and brokers.

(iv) Landlord may exercise any other right or remedy now or hereafter existing by law or in equity.

(c) <u>No Relief of Obligations</u>. No expiration or termination of this Lease pursuant to paragraph 21(b)(i) or any other provision of this Lease, by operation of law, repossession of the Leased Premises pursuant to paragraph 21(b)(ii) or otherwise, or reletting of any of the Leased Premises pursuant to paragraph 21(b)(iii), shall relieve Tenant of any of its liabilities and obligations hereunder, including the liability for payment of Basic Rent, Additional Rent and all other sums payable hereunder, all of which shall survive such expiration, termination, repossession or reletting.

(d) <u>Current Damages</u>. In the event of any expiration or termination of this Lease or repossession of the Leased Premises by reason of the occurrence of an Event of Default, Tenant shall pay to Landlord all Basic Rent, all Additional Rent and all other sums required to be paid by Tenant to and including the date of such expiration, termination or repossession and, thereafter, Tenant shall, until the end of what would have been the Term in the absence of such expiration, termination or repossession, and whether or not the Leased Premises shall have been relet, be liable to Landlord for and shall pay to Landlord as liquidated and agreed current damages (i) all Basic Rent, all Additional Rent and all other sums which would be payable under this Lease by Tenant in the absence of such expiration, termination or repossession, less (ii) the net proceeds, if any, of any reletting pursuant to paragraph 21(b)(iii), after deducting from such proceeds all of Landlord's expenses in connection with such reletting (including all repossession costs, brokerage commissions, legal expenses, attorneys' fees, employees' expenses, costs of Alterations and expenses of preparation for reletting). Tenant hereby agrees to be and remain liable for all sums aforesaid, and Landlord may recover such damages from Tenant and institute and maintain successive actions or legal proceedings against Tenant for the recovery of such damages. Nothing herein contained shall be deemed to require Landlord to wait to begin such action or other legal

- 32 -

06720/40153
LP I.D. No. 8

Exhibit A

proceedings until the date when the Term would have expired by limitation had there been no such Event of Default.

(e) <u>Liquidated Final Damages</u>. At any time after any such expiration or termination of the Term or repossession of the Leased Premises by reason of the occurrence of an Event of Default, whether or not Landlord shall have collected any current damages pursuant to paragraph 21(d), Landlord shall be entitled to recover from Tenant, and Tenant will pay to Landlord on demand, as and for liquidated and agreed final damages for Tenant's default and in lieu of all current damages beyond the date of such demand (it being agreed that it would be impracticable or extremely difficult to fix the actual damages and it being further agreed that the amount herein described is a reasonable pre-estimate of the amount of Landlord's probable damages), an amount equal to the excess, if any, of (i) the Basic Rent, Additional Rent and other sums which would be payable under this Lease from the date of such demand (or, if it be earlier, the date to which Tenant shall have satisfied in full its obligations under paragraph 21(d) to pay current damages) for what would be the then unexpired term of this Lease in the absence of such expiration, termination or repossession, discounted at the rate of 4% per annum over (ii) the then fair net rental value of the Leased Premises for the same period. The discount rate to be used in determining such fair rental value shall be 4% per annum. If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, Landlord shall be entitled to the maximum amount allowable under such statute or rule of law.

22. <u>Additional Rights of Landlord</u>.

(a) <u>Non-Exclusive, Cumulative Remedies</u>. No right or remedy herein conferred upon or reserved to Landlord is intended to be exclusive of any other right or remedy and each and every right and remedy shall be cumulative and in addition to any other right or remedy contained in this Lease. No delay or failure by Landlord to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof. In addition to the other remedies provided in this Lease, Landlord shall be entitled, to the extent permitted by applicable law, to injunctive relief in case of the violation or attempted or threatened violation of any of the provisions of this Lease, or to specific performance of any of the provisions of this Lease.

(b) <u>Tenant's Waiver of Redemption</u>. Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have under any present or future

- 33 -

Exhibit A

law to redeem any of the Leased Premises or to have a continuance of this Lease after termination of this Lease or of Tenant's right of occupancy or possession pursuant to any court order or any provision hereof, and (ii) the benefits of any present or future law which exempts property from liability for debt or for distress for rent.

(c) <u>Costs Upon Default and Litigation</u>. Tenant shall pay to Landlord and Mortgagee as Additional Rent all the expenses incurred by Landlord or Mortgagee in connection with any default or Event of Default or the exercise of any remedy by reason of any default or Event of Default, including reasonable attorneys' fees and expenses.  If Landlord or Mortgagee shall be made a party to any litigation commenced against Tenant or any litigation pertaining to this Lease or the Leased Premises, at the option of Landlord and Mortgagee, Tenant, at its expense, shall provide Landlord or Mortgagee with counsel approved by Landlord and Mortgagee and shall pay all costs incurred or paid by Landlord and Mortgagee in connection with such litigation.

23. <u>Notices</u>.  All notices, demands, requests, consents, approvals, offers, statements and other instruments or communications required or permitted to be given pursuant to this Lease shall be in writing and shall be deemed to have been given for all purposes when delivered in person or one day after given to an overnight courier which guaranties overnight delivery or three days after being deposited in the United States mail, by registered or certified mail, return receipt requested, postage prepaid, addressed to Landlord or Tenant at its address stated above or addressed to Mortgagee at its address listed below:

If to Mortgagee:     Principal Mutual Life Insurance Company
                     711 High Street
                     Des Moines, Iowa 50392
                     Attn:Commercial Real Estate
                          Loan Administration
                          Loan No. 750407

For the purposes of this paragraph, any person may substitute its address by giving fifteen days' notice to the other persons in the manner provided above.

24. <u>Estoppel Certificate</u>.  Landlord and Tenant shall, at any time and from time to time, upon not less than 20 days' prior request by the other, execute, acknowledge and deliver to the other a statement in writing, executed by an authorized officer certifying (i) that this Lease is unmodified and in full effect (or, if there have been modifications, that this Lease is in full effect as modified, setting forth such modifications), (ii) the dates to which Basic Rent, Additional Rent and all other sums payable

- 34 -

Exhibit A

hereunder have been paid, (iii) that to the knowledge of the signer of such certificate no default by either Landlord or Tenant exists hereunder or specifying each such default of which the signer may have knowledge, (iv) with respect to a certificate signed on behalf of Tenant, that to the knowledge of the signer of such certificate, there are no proceedings pending or threatened against Tenant before or by any court or administrative agency which if adversely decided would materially and adversely affect the financial condition and operations of Tenant, or if any such proceedings are pending or threatened to said signer's knowledge, specifying and describing the same, and (v) with respect to the certificate signed on behalf of Tenant, if requested by Landlord, to the further effect set forth in <u>Exhibit "G"</u> hereto.  It is intended that any such statements may be relied upon by Mortgagee, the recipient of such statements or their assignees, or by any prospective purchaser or mortgagee of the Leased Premises.

     25.  <u>Surrender and Holding Over</u>.   Upon the expiration or earlier termination of this Lease, Tenant shall peaceably leave and surrender the Leased Premises (except for any portion thereof with respect to which this Lease has previously terminated) to Landlord in the same condition in which the Leased Premises were originally received from Landlord on the Commencement Date, except as repaired, rebuilt, restored, altered, replaced or added to as permitted or required by any provision of this Lease, and except for ordinary wear and tear.  Tenant shall remove from the Land and Improvements on or prior to such expiration or earlier termination all property situated thereon which is owned by Tenant or third parties other than Landlord, and Tenant at its expense shall, on or prior to such expiration or earlier termination, repair any damage caused by such removal.  Property not so removed at the end of the Term or within 30 days after the earlier termination of the Term for any reason whatsoever shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises.  The cost of removing and disposing of such property and repairing any damage to the Leased Premises caused by such removal shall be borne by Tenant.  Landlord shall not in any manner or to any extent be obligated to reimburse Tenant for any property which becomes the property of Landlord as a result of such expiration or earlier termination.

     Any holding over by Tenant of the Leased Premises after the expiration or earlier termination of the term of this Lease or any extensions thereof shall operate and be construed as a tenancy from month to month only, at double the Basic Rent reserved herein and upon the same terms and conditions as contained in this Lease.  Notwithstanding the foregoing, any holding over shall entitle Landlord, in addition to collecting double rentals, to exercise all rights and remedies provided by law or in equity, including the remedies of paragraph 21(b).

Exhibit A

26. <u>No Merger of Title</u>.  There shall be no merger of this
Lease nor of the leasehold estate created by this Lease with the
fee estate in or ownership of the Leased Premises by reason of the
fact that the same person, corporation, firm or other entity may
acquire or hold or own, directly or indirectly, (i) this Lease or
the leasehold estate created by this Lease or any interest in this
Lease or in such leasehold estate, and (ii) the fee estate or
ownership of the Leased Premises or any interest in such fee estate
or ownership.  No such merger shall occur unless and until all
persons, corporations, firms and other entities (including any
Mortgagee) having any interest in (x) this Lease or the leasehold
estate created by this Lease, and (y) the fee estate in or owner-
ship of the Leased Premises sought to be merged shall join in a
written instrument effecting such merger and shall duly record the
same.

27. <u>Expansion</u>.  It is understood that Tenant may at future
times during the Term of this Lease wish to enlarge the
Improvements by constructing Alterations and additions thereto and
that such enlarging may require purchase of additional land.
Tenant shall have the sole responsibility for negotiating and
providing for the purchase, renovation and construction of such
Alterations and additions and of such land as is necessary for its
expansion plans.  If Tenant is able to obtain agreements for the
purchase of such additional land and contracts for the Alterations
and additions at a cost satisfactory to it, Tenant may then request
that Landlord purchase such Alterations, additions and land and
incorporate the same into this Lease upon terms and conditions
negotiated by the parties.

In the event the parties are unable to agree, Tenant shall
have the right to construct Alterations and additions at its own
expense and to make such changes as are necessary to make the
entire enlarged building suitable for use and occupancy by Tenant
in the conduct of its business; but Tenant shall not have the right
to mortgage or pledge this Lease or the leasehold estate created
hereby or its interest in such Alterations to finance such
Alterations.  At end of the Term of this Lease, title to the
Alterations, additions and land as necessary to meet any Legal
Requirements shall pass to Landlord and Tenant shall execute
additional documents as necessary to complete such transfer.

28. <u>Right of First Refusal</u>.  Tenant shall have the right of
first refusal to purchase the Leased Premises as hereinafter set
forth.  If at any time during the Term Landlord shall receive a
bona fide offer (other than at public auction) from a third person
(except in lieu of exercise of the power of eminent domain) for the
purchase of the Leased Premises, which offer Landlord shall desire
to accept, Landlord shall promptly deliver to Tenant a copy of such
offer, and Tenant may within 15 days thereafter elect to purchase
the Leased Premises on the same terms and conditions as those set

- 36 -

06720/40153
LP I.D. No. 8

Exhibit A

forth in such offer.  If Tenant shall not accept such offer within
the time herein specified the aforesaid right of first refusal
shall terminate but the Term of this Lease shall otherwise
continue.  The right of first refusal in this paragraph shall be
inapplicable to a transfer upon foreclosure of the Mortgage,
including the giving by Landlord of a deed in lieu of foreclosure
or to any subsequent transfer to a third person.

29.  **Change of Control**.  In the event that, at any time during
the Initial Term, a Change of Control (as hereinafter defined)
shall occur, Tenant shall, not later than 30 days after such Change
of Control, give to Landlord an irrevocable offer to purchase the
Leased Premises on a date (also, a **"Termination Date"**) specified in
such notice, which shall be not less than 120 nor more than 240
days after the date of such notice, at a price determined in
accordance with **Exhibit "F"** hereto.  If Landlord shall reject such
offer to purchase by notice to Tenant (accompanied by the written
consent of Mortgagee thereto) given not later than the tenth day
prior to the Termination Date, this Lease shall remain in full
force in effect.  Unless Landlord shall have rejected such offer to
purchase by notice to Lessee given not later than the tenth day
prior to the Termination Date, or if Landlord shall make such
rejection without the written consent of Mortgagee, then Landlord
shall be conclusively presumed to have accepted such offer to
purchase, and Landlord shall transfer and convey the Leased
Premises to Tenant or its designee upon the terms and provisions
set forth in paragraph 18, against payment by Tenant of all
installments of Basic Rent, all Additional Rent and all other sums
then due and payable under this Lease to and including such
Termination Date.

As used in this paragraph 29, **"Change of Control"** means the
acquisition by any person or Group, together with any Affiliates
thereof, of (i) 50% or more of the beneficial interest in the
voting capital stock of Tenant or (ii) the control of a majority of
Tenant's Board of Directors, provided that such acquisition or
control, directly or indirectly, by the Davis Family or Affiliates
thereof shall not constitute a Change of Control.  **"Group"** means
more than one person, acting in concert, to achieve control of
Tenant.  **"Affiliate"** of any specified person means any other person
directly or indirectly controlling or controlled by or under direct
or indirect common control with such specified person.  For the
purposes of this definition, "control" when used with respect to
any specified person means the power to direct the management and
policies of such person, directly or indirectly, whether through
the ownership of voting securities, by contract or otherwise, and
the terms "controlling" and "controlled" have the meanings
correlative to the foregoing. **"Davis Family"** means Mr. A.D. Davis,
relatives (by birth or marriage) and descendants of Mr. A.D. Davis,
Mr. James E. Davis, Mr. M. Austin Davis and Tine W. Davis, trusts,
estates, corporations and other entities involving any of them and

- 37 -

Exhibit A

their associates whether now living or existing or hereafter coming into existence.

Tenant shall immediately notify Landlord and Mortgagee of the occurrence of a Change of Control.

30.  **Miscellaneous**.  The paragraph headings in this Lease and the Table of Contents preceding this Lease are for convenience only and are not part of this Lease or to be used in determining the intent of the parties or otherwise interpreting this Lease.  As used in this Lease the singular shall include the plural as the context requires, and the following words and phrases shall have the following meanings: (i) "including" shall mean "including but not limited to"; (ii) "provisions" shall mean "provisions, terms, agreements, covenants and/or conditions"; and (iii) "obligation" shall mean "obligation, duty, agreement, liability, covenant or condition".  Any act which Tenant is required to perform under this Lease shall be performed at Tenant's sole cost and expense.  This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought.  The covenants of this Lease shall run with the land and bind Tenant and all successors and assigns of Tenant and shall inure to the benefit of and bind Landlord, its successors and assigns.  In the event any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Lease but this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.  This Lease may be simultaneously executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.  This Lease shall be governed by and construed according to the laws of the state in which the Leased Premises are located.

31.  Incorporation by Reference.  Attached to this Lease are Exhibits "A", "B", "C", "D", "E", "F" and "G" all of which are incorporated by this reference in, and form a part of, this Lease.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

- 38 -

LEASE AGREEMENT

06720/40153
LP I.D. No. 8

Exhibit A

IN WITNESS WHEREOF, Landlord and Tenant have caused this instrument to be executed and sealed as of the day and year first above written.

PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Georgia as Peregrine Ownership and Leasing Limited Partnership

By: Equity FC, Ltd., an Iowa corporation, its general partner

By: _Karen A Pearston_
Name: Karen A. Pearston
Title: Counsel

By: _Leann M Swen_
Name: LEANNE M. SWENSON
Title: Counsel

"Landlord"

[CORPORATE SEAL]

- 39 -

WINN-DIXIE STORES, INC.,
a Florida corporation

By: _____
Name: _____Wayne E. Ripley, Jr.___
Title: _____Vice President_____

"Tenant"

[CORPORATE SEAL]

- 40 -

06720/40153
LP I.D. No. 8

Exhibit A

06720/40153
L.P. I.D. No. 8

### EXHIBIT "A"

### LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 204 of the 8th Land District of Ware County, Georgia containing 7.1323 acres and more particularly described as follows:

BEGINNING at a concrete marker on the East Right-of-way line of Palmetto Street, which point is 210.00 feet Southerly from the Southernmost right-of-way of Memorial Drive and is the point or place of beginning; thence proceeding South 32°31'39" West along the East right-of-way line of Palmetto Street a distance of 113.60 feet to a nail and cap set in the asphalt; thence proceeding South 05°37'00" West along said right-of-way a distance of 395.94 feet to a concrete marker; thence proceeding South 84°23'00" East long the Northern right-of-way of Marion Street a distance of 594.47 feet to a concrete marker; thence North 09°30'53" East a distance of 495.19 feet to an "X" cut in concrete on the right-of-way of Memorial Drive; thence along said right-of-way North 64°08'20" West a distance of 82.40 feet to an iron pin ~~marker~~; thence South 25°51'40" West a distance of 8.00 feet to an "X" cut in the concrete; thence North 64°08'20" West a distance of 10.00 feet to an "X" cut in concrete; thence North 25°51'40" East a distance of 8.00 feet to an iron pin; thence proceeding North 64°08'20" West a distance of 225.42 feet to an iron pin; thence proceeding South 32°37'38" West a distance of 210.00 feet to a concrete marker; thence proceeding North 60°42'19" West a distance of 200.00 feet to a concrete marker, THE POINT OR PLACE OF BEGINNING.

06720\40153
LP ID No. 8

EXHIBIT "B"
TO LEASE

LANDLORD'S EQUIPMENT

All machinery, apparatus, equipment, fittings, appliances and fixtures of every kind and nature whatsoever including all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air conditioning, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatus, equipment, fittings, appliances, engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switch-boards, and all storm doors and windows, dishwashers, attached cabinets and partitions and all articles of personal property of every kind and nature whatsoever now or hereafter affixed to, attached to, placed upon, used or usable in any way in connection with the use, enjoyment, occupancy or operation of the Leased Premises and Improvements but excluding coolers, trade fixtures, inventory, furniture and other personalty constituting Tenant's Equipment.

Exhibit B - Page 1

Exhibit A

06720\40153
LP ID No. 8

EXHIBIT "C"
TO LEASE

TENANT'S EQUIPMENT

All coolers, freezers, trade fixtures, inventory, furniture and other personalty belonging to Tenant, including the items listed on Schedule C-1.

Exhibit C - Page 1

Exhibit A

SCHEDULE C-1

ASSET DESCRIPTION

IBM POS 2 POS TERMINAL
IBM POS 2 POS TERMINAL
IBM POS 2 POS TERMINAL
IBM POS 2 POS TERMINAL
IBM POS 2 POS TERMINAL
IBM POS 2 POS TERMINAL
IBM POS 1 POS TERMINAL
IBM POS 1 POS TERMINAL
IBM POS 1 POS TERMINAL
IBM POS 1 POS TERMINAL
GEM POS 1 POS TERMINAL
GEM POS 1 POS TERMINAL
IBM POS 1 POS TERMINAL
IBM POS 1 POS TERMINAL
IBM POS 1 POS TERMINAL

IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE
IBM POS SCANNER SCALE

ENCODER
BATCH ENCODER
STANDARD REGISTER BATCH ENCODER

ASSET DESCRIPTION

LOAD KING COMPLETE CHECKOUT LANE

CUSTOMER SERVICE COUNTER

SOFTWARE
IBM 4690 REMOTE OPERATING SOFTWARE
IBM OPERATING SOFTWARE

HOBART 5801-2 MEAT SAW
HOBART MEAT SAW

SAFE W/THERMAL RELOCKERS
HOBART P650-2 W/CHART
HOBART P650-2 W/CHART
HOBART P650-2 W/CHART
HOBART P650-1 W/PAN & CHAIN
HOBART P650-2 W/CHART
HOBART SF500Y-2 POINT OF SALE SCALE
HOBART SP21500 PRINTER
HOBART SF1500-2 SCALE
HOBART SF1500-2 SCALE
HOBART SF1500-2 SCALE
HOBART SF1500-2 SCALE
HOBART SF1300-2 SCALE
HOBART SF1500-2 SCALE W/FISH PAN
HOBART SF1500-2 SCALE
HOBART SF1500-2 SCALE
HOBART SF7 SCALE

SURGE SUPPRESSOR
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE
LOAD KING COMPLETE CHECKOUT LANE

ASSET DESCRIPTION

HOBART SCALEMASTER CONV MODULE

HOBART CHOPPER
HOBART 4246-2 MIXER/GRINDER

HOBART 403 IONIZER

SLICER STAND
SLICER STAND
HOBART 1612E-1 ENHANCED SLICER
HOBART 1612E-1 ENHANCED SLICER
HOBART 1612E-1 ENHANCED SLICER
HOBART 1612E-1 ENHANCED SLICER
HOBART 17323-1 ENHANCED SLICER
BAND SLICER W/STAND

EVAPORATOR COIL FOR DAIRY COOLER
EVAPORATOR COIL FOR MEAT FREEZER
EVAPORATOR COIL FOR MEAT COOLER
EVAPORATOR COIL FOR BAKERY COOLER
EVAPORATOR COIL FOR SEAFOOD COOLER
EVAPORATOR COIL FOR PRODUCE COOLER
EVAPORATOR COIL FOR MEAT PREP
EVAPORATOR COIL FOR SALES COOLER
EVAPORATOR COIL FOR DELI COOLER
EVAPORATOR COIL FOR FLORAL COOLER
EVAPORATOR COIL FOR DAIRY COOLER
EVAPORATOR COIL FOR BAKERY FREEZER
EVAPORATOR COIL FOR FF FREEZER

SCHEDULE C-1

Exhibit A

ASSET DESCRIPTION
-----------------
EVAPORATION COIL FOR IC FREEZER

CONDENSER
CONDENSER
CONDENSER

PPRT/HVAC REFRIG COMPUTER
LOW TEMP CMP COOL SYSTEM - RACK A
LOW TEMP CMP COOL SYSTEM - RACK B
MED TEMP CMP COOL SYSTEM - RACK C
MED TEMP CMP COOL SYSTEM - RACK D
RUSSMAN TAC CONDENSING UNIT

PENN DAIRY COOLER
PENN FREEZER
PENN ICE CREAM FREEZER
PENN PRODUCE COOLER
PENN HEAT COOLER
PENN SEAFOOD FREEZER
PENN SEAFOOD COOLER
PENN FREEZER
PENN DELI COOLER
PENN BELI COOLER
PENN BAKERY COOLER
PENN FLORAL COOLER
PENN ICE CREAM FREEZER

SPECIAL CABINET - BEER CASE
RUSSMAN SELF-CONTAINED WINE CASE
RUSSMAN 8' BEER & JUICE CASE
RUSSMAN 8' BEER & JUICE CASE
RUSSMAN 8' BEER & JUICE CASE
RUSSMAN 8' SOLID BACK DAIRY CASE
RUSSMAN 8' SOLID BACK DAIRY CASE
RUSSMAN 8' SOLID BACK DAIRY CASE
RUSSMAN 8' BEER & JUICE CASE
RUSSMAN 12' BEER & JUICE CASE
RUSSMAN 12' SOLID BACK DAIRY CASE
RUSSMAN 12' SOLID BACK DAIRY CASE
RUSSMAN 12' SOLID BACK DAIRY CASE
RUSSMAN 12' SOLID BACK DAIRY CASE
RUSSMAN 12' SOLID BACK DAIRY CASE
RUSSMAN 12' SOLID BACK DAIRY CASE
RUSSMAN 12' SOLID BACK DAIRY CASE

ASSET DESCRIPTION
-----------------
RUSSMAN 12' SOLID BACK DAIRY CASE

5/5 4-DR REFRIG CABINET - SALAD BAR
FOOD PROCESSOR
LETTUCE CUTTER
TOMLINSON SOUP KETTLE
TOMLINSON SOUP KETTLE

FROZEN FOOD ENDS - 4
FROZEN FOOD ENDS - 4
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE
RUSSMAN REACH-IN FROZEN FOOD CASE

RUSSMAN REACH-IN ICE CREAM CASE
RUSSMAN REACH-IN ICE CREAM CASE
RUSSMAN REACH-IN ICE CREAM CASE
RUSSMAN REACH-IN ICE CREAM CASE
RUSSMAN REACH-IN ICE CREAM CASE
RUSSMAN REACH-IN ICE CREAM CASE

SERVICE FRESH MEAT CASE
RUSSMAN DUAL-TEMP FROZEN MEAT CASE
RUSSMAN DUAL-TEMP FROZEN MEAT CASE
RUSSMAN DUAL-TEMP FROZEN MEAT CASE
RUSSMAN DUAL-TEMP FROZEN MEAT CASE
RUSSMAN DUAL-TEMP FROZEN MEAT CASE
RUSSMAN DUAL-TEMP FROZEN MEAT CASE
RUSSMAN DUAL-TEMP FROZEN MEAT CASE
RUSSMAN 12'MULTI-DECK FROZEN MEAT

ASSET DESCRIPTION
-----------------
RUSSMAN 8' MULTI-DECK LUNCH MEAT
RUSSMAN 8' MULTI-DECK LUNCH MEAT
RUSSMAN 8' MULTI-DECK LUNCH MEAT
RUSSMAN 8' MULTI-DECK LUNCH MEAT
RUSSMAN 12'MULTI-DECK LUNCH MEAT
RUSSMAN 12'MULTI-DECK RED TEMP MEAT
RUSSMAN 12'MULTI-DECK RED TEMP MEAT
RUSSMAN 12'MULTI-DECK RED TEMP MEAT
RUSSMAN 12'MULTI-DECK RED TEMP MEAT
RUSSMAN 12'MULTI-DECK RED TEMP MEAT
RUSSMAN 12'MULTI-DECK POULTRY CASE
RUSSMAN 12'MULTI-DECK POULTRY CASE
RUSSMAN EMD ISLAND REFRIG MEAT
RUSSMAN EMD ISLAND REFRIG MEAT
RUSSMAN 8' MULTI-DECK LUNCH MEAT
RUSSMAN WIDE ISLAND REFRIG MEAT

FLORAL WALL
FOCAL POINT MERCHANDISER
3-TIER CIRCULAR FLORAL DISPLAY
3-TIER CIRCULAR FLORAL DISPLAY
3-TIER CIRCULAR FLORAL DISPLAY
SERVICE COOLER
MULTIPLE GLASS CUBE CONFIGURATION
FLORAL SINK STATION
3-TIER RADIUS BUNKER
3-TIER RADIUS BUNKER
WORK COUNTER
XL ISLAND TOP FLORAL DEPT
OPEN FLORAL MERCHANDISER - MARK II
OPEN FLORAL MERCHANDISER - MARK II

RUSSMAN BANANA ENDS - 8
RUSSMAN MULTI-DECK FRESH PREPACK
RUSSMAN 8' MULTI-DECK REFRIG PROD
RUSSMAN 8' MULTI-DECK REFRIG PROD
RUSSMAN 8' MULTI-DECK REFRIG PROD
RUSSMAN 8' MULTI-DECK REFRIG PROD
RUSSMAN EMD ISLAND NON-REFRIG PROD
RUSSMAN EMD ISLAND NON-REFRIG PROD
RUSSMAN EMD ISLAND NON-REFRIG PROD
RUSSMAN 12'MULTI-DECK REFRIG PROD
RUSSMAN 12'MULTI-DECK REFRIG PROD
RUSSMAN EMD ISLAND NON-REFRIG PROD
RUSSMAN EMD ISLAND NON-REFRIG PROD
RUSSMAN EMD ISLAND NON-REFRIG PROD
RUSSMAN EMD ISLAND NON-REFRIG PROD
RUSSMAN EMD ISLAND NON-REFRIG PROD
RUSSMAN WIDE ISLAND REFRIG PRODUCE

Exhibit A

ASSET DESCRIPTION

HUSSMAN WIDE ISLAND REFRIG PRODUCE
HUSSMAN WIDE ISLAND REFRIG PRODUCE
HUSSMAN WIDE ISLAND REFRIG PRODUCE

PHARMACY WEDGE
PYX NEW STORE SYSTEM FILE
PHARMACY CREDIT TERMINAL

MAGHA TWIN VACUUM CLEANER
FLOORKEEPER

CLEAVER-BROOKS FILTER
FOLLETT BIN
TIE COMPLETE HOME ICE MACHINE W/BIN
TIE COMPLETE HOME ICE MACHINE W/BIN
HOSHIZAKI URC - 24 C
HOSHIZAKI REMOTE ICE CUBER

PYLON SIGN
EXTERIOR SIGNS

MIRROR PANEL

PHOTO LAB COMPLETE
FILM POWER BOX W/DISPLAYWALL RACK
PHOTO LAB LIGHTED SHOWCASE
XL TERMINAL - FILM PROCESSING DEPT

INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR
INSECT-O-CUTOR

ASSET DESCRIPTION

INSECT-O-CUTOR

SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
SANISEALER WRAPPER W/WINGS
3 ROLL FLOOR WRAPPER
SANISEALER WRAPPER CONSOLE
SANISEALER WRAPPER CONSOLE
SANISEALER WRAPPER CONSOLE
MANUAL HEAT SEALER
HOBART AUTOMATIC STRETCH WRAPPER

POPCORN MACHINE
SERVICE DELI & CHEESE CASE
SERVICE HOT TABLE
F-TRA CASE W/AREA STORAGE
ICE CREAM DIPPING CABINET
LOAD KING PORTABLE DESK FOR BAKERY
LOAD KING LOCKER FOR BAKERY
LOAD KING DONUT GLAZE TABLE
LOAD KING DONUT FRYER
LOAD KING PIZZA PREP UNIT REFRIG
CUSTOM BUILT JUICE DISPLAY
CUSTOM-BUILT FOOD COUNT
CVAP V/O TD20 DELI CHEF OVEN
CUSTOM 6' RACK UNITS - 3
CUSTOM INO-LAYER BOX BINS - 3
CUSTOM MERCHANDISERS - 6
ORAL COFFEE BREWER
COFFEE/TEA SERVERS/DISPENSERS
CUP DISPENSERS
ICE & BEVERAGE DISPENSER
HOBART 34 STAND-HSFOD
DELI WALL-MOUNT SHELF
DELI MICROWAVE TABLE
CHEESE DISPLAY CASE
JUICE DISPENSER
CROWMELIN TUMBLER - MARKWATER
RADIO CHEESE WARMER
NACHO CHIP WARMER
COUNTER CONV PIZZA OVEN W/STAND
SPEED GRILL
TOASTMASTER 4-SL TOASTER
COUNTER HOT GRIDDLE
FRESH N SQUEEZE JUICER

ASSET DESCRIPTION

JUPITER 4 SEATER ISLAND - 2
COUNTER TOP CUP DISPENSER
STAINLESS STEEL BOAT RACKS - 4
SS WALL MOUNT DELI STORAGE RACKS-6
HOBART PRESSURE FRYER W/FILTER
HOBART PRESSURE FRYER W/FILTER
HOBART MICROWAVE OVEN
HOBART MICROWAVE OVEN
HOBART MIXER
HOBART MIXER
ORANGE JUICER MACHINE
BAKER'S AID DECK OVEN
BAKER'S AID ELECTRIC RACK OVEN
SAVORY BUN WARMER
DONUT DROPPER
MODEL 150E POPCORN POPPER
HOBART ENHANCEMENT
HOBART ELECTRIC EXPANDO RANGE
HOT DOG GRILL
FRP 400 SMOKEHOUSE
SHARP MICROWAVE OVEN
HOBART FOOD PROCESSOR
HOBART ELECTRIC FROOZER
REFRIGERATED SERVICE W/WEDGE
REFRIGERATED SERVICE W/WEDGE
ADREERA SVCE WALL DISPLAY CASE
CONTEMPRA NONREFRIG SERVICE
CONTEMPRA CASH STAND
CONTEMPRA REFRIG SVCE
CONTEMPRA NONREFRIG SVCE
CONTEMPRA SERVICE W/WEDGE DISPLAY
ADREERA HARD ROLL/FULL SHELV
CONTEMPRA NONREFRIG SVCE W/WEDGE
ADREERA NONREFRIG SVCE W/WEDGE
CONTEMPRA REFRIG SELF SERVICE
CONTEMPRA OUTSIDE WEDGE
CONTEMPRA SHELF FREEZER UNIT
PATTIMACHINE
FULLY AUTO 2 RACK ROLL IN PROOF BOX
FULLY AUTO 1 RACK ROLL IN PROOF BOX
HUSSMAN WIDE ISLAND DELI CASE
HUSSMAN WIDE ISLAND CHEESE CASE
HUSSMAN WIDE ISLAND DELI SANDWICH
HUSSMAN WIDE ISLAND AND DELI CASE
HUSSMAN WIDE ISLAND CHEESE CASE
HUSSMAN WIDE ISLAND DELI SANDWICH

SERVICE FISH CASE
LOBSTER TANK
LOAD KING PORTABLE DESK FOR SEAFOOD
STAINLESS STEEL CABINET W/SINK
BOX RACK

Exhibit A