BOK 27 V PAGE 004
06720/40153
LP I.D. No. 8

GEORGIA INTANGIBLE TAX PAID
$ 8,619.00
9-8- 19 94
Faye Booth
Tax Collector/Commissioner
Ware County

After recording, please return to:

Jonetta Brooks, Esq.
Locke Purnell Rain Harrell
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

August 25, 1994

between

**PEREGRINE PROPERTIES LIMITED PARTNERSHIP,**
an Iowa limited partnership authorized to
transact business in Georgia as Peregrine
Ownership and Leasing Limited Partnership
("Grantor")

and

**PRINCIPAL MUTUAL LIFE INSURANCE COMPANY,**
an Iowa corporation
("Grantee")

### Location of Premises
SEC Memorial Drive & Palmetto Street
Waycross, Ware County, Georgia

This instrument was prepared by the above-named attorney.

THIS INSTRUMENT IS ALSO TO BE INDEXED IN THE INDEX OF FINANCING STATEMENTS.

THE NAMES OF THE DEBTOR AND THE SECURED PARTY, THE MAILING ADDRESS OF THE SECURED PARTY FROM WHICH INFORMATION CONCERNING THE SECURITY INTEREST MAY BE OBTAINED, THE MAILING ADDRESS OF THE DEBTOR, AND A STATEMENT INDICATING THE TYPES OR DESCRIBING THE ITEMS OF COLLATERAL ARE AS DESCRIBED IN PARAGRAPH 1.08(c) HEREOF, IN COMPLIANCE WITH THE REQUIREMENTS OF ARTICLE 9, SECTION 402 OF THE UNIFORM COMMERCIAL CODE, TITLE 11 OF THE OFFICIAL CODE OF GEORGIA ANNOTATED.

RECORDED Sept 8, 94

8/29/94

Exhibit C

BK 27 V PAGE 005

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT (hereinafter referred to as this "**Deed**") is made and entered into as of this 25th day of August, 1994, by and between PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Georgia as Peregrine Ownership and Leasing Limited Partnership, having a mailing address at 711 High Street, Des Moines, Iowa 50392-1450, Attn: Commercial Real Estate Loan Administration, Reference No. 750407, party of the first part (hereinafter referred to as "**Grantor**"), and PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, an Iowa corporation, having as a mailing address 711 High Street, Des Moines, Iowa, 50392-1450, Attn: Commercial Real Estate Loan Administration, Loan No. 750407, party of the second part (hereinafter referred to as "**Grantee**"),

### W I T N E S S E T H:

That for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell, convey, assign, transfer, and set over unto Grantee and the successors and assigns of Grantee all of the following described land and interests in land, estates, easements, rights, improvements, property, fixtures, equipment, furniture, furnishings, appliances, and appurtenances (hereinafter collectively referred to as the "**Premises**"):

(a) All that certain tract, piece, or parcel of land more particularly described in Exhibit A attached hereto and by this reference made a part hereof (hereinafter referred to as the "**Land**").

(b) All of the right, title, and interest of Grantor in, to, and under all buildings, structures, and improvements of every nature whatsoever now or hereafter situated on the Land and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes which are or shall be attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles (other than personal vehicles of Grantor), and personal property of every kind and nature whatsoever now or hereafter owned by Grantor and located in, on, or about or used or intended to be used with or in connection with the use, operation, or enjoyment of the Premises, including all extensions, additions, improvements, betterments, renewals, and replacements of any of the foregoing and all the right, title, and interest of Grantor in any such furnishings, furniture fixtures, machinery, equipment, appliances, vehicles, and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage, or similar lien or claim, together with the benefit of any deposits or

BOOK 27 V PAGE 006

-2-

payments now or hereafter made by Grantor or on behalf of Grantor, all of which are hereby declared and shall be deemed to be fixtures and accessions to the freehold and a part of the Premises as between the parties hereto and all persons claiming by, through, or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed.

(c) All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber, and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating, or appertaining to the Premises or any part thereof, or which hereafter shall in any way belong, relate, or be appurtenant thereto, whether now owned or hereafter acquired by Grantor.

(d) All income, rents, issues, profits, and revenues of the Premises from time to time accruing (including, without limitation, all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all estate, right, title, interest, property, possession, claim, and demand whatsoever at law, as well as in equity, of Grantor of, in, and to the same; reserving only the license to Grantor to collect the same so long as Grantor is not in Default hereunder.

(e) The proceeds of the foregoing.

TO HAVE AND TO HOLD the Premises and all parts, rights, members, and appurtenances thereof, to the use, benefit, and behoof of Grantee and the successors and assigns of Grantee, IN FEE SIMPLE forever; and Grantor represents that Grantor is lawfully seized and possessed of the Premises as aforesaid, and has good right to convey the same, that the same is unencumbered except for those matters expressly set forth in Exhibit B attached hereto and by this reference made a part hereof, and that Grantor does warrant and will forever defend the title thereto against the claims of all persons whomsoever, except as to those matters set forth in said Exhibit B attached hereto.

Grantor further represents that: (i) the Premises is not subject to any casualty damage; (ii) there is no Hazardous Material (as hereinafter defined) on the Premises, nor has any Hazardous Material been discharged from the Premises or penetrated any surface or subsurface rivers or streams crossing or adjoining the Premises or the aquifer underlying the Premises; (iii) Grantor has complied and shall continue to comply with all statutes, laws, ordinances, rules and regulations of all local, state or federal authorities having jurisdiction over the Premises or its use relative to any Hazardous Material; and (iv) there is no other property presently owned or used by Grantor from which the existence or discharge of Hazardous Material would result in any charge or lien upon the Premises. Hazardous Material as used in this Deed means any hazardous or toxic material, substance or waste which is defined by those or similar terms or is regulated as such under any statute, law,

BOOK 27 V PAGE 007

-3-

ordinance, rule or regulation of any local, state or federal authority having jurisdiction over the Premises or its use, including but not limited to any material, substance or waste which is: (a) defined as a hazardous substance under Section 311 of the Federal Water Pollution Control Act (33 U.S.C. §1317) as amended; (b) defined as a hazardous waste under Section 1004 of the Resource Conservation and Recovery Act (42 U.S.C. §6901 et. seq.) as amended; or (c) defined as a hazardous waste substance under Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, (42 U.S.C. §9601 et. seq.) as amended.

This conveyance is intended to operate and is to be construed as a deed passing the title to the Premises to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the following:

(a) The debt evidenced by that certain Real Estate Note (hereinafter referred to as the "Note" and to which Note reference is hereby made for all purposes) dated of even date herewith, made by Grantor, payable to the order of Grantee in the principal face amount of Two Million Eight Hundred Seventy-Two Thousand Nine Hundred Thirty-One and 50/100 Dollars ($2,872,931.50), with the final payment being due not later than August 31, 2014 (the "Maturity Date"); together with any and all renewals, modifications, consolidations, and extensions of the indebtedness evidenced by the Note;

(b) Any and all additional advances made by Grantee to protect or preserve the Premises of the security title hereof on the Premises or for taxes, assessments, or insurance premiums as hereinafter provided (whether or not the original Grantor remains the owner of the Premises at the time of such advances);

(c) Performance in all covenants herein contained in any other agreement given or made as additional security for the Note;

Should the debt secured by this Deed be paid according to the tenor and effect thereof when the same shall become due and payable and should Grantor perform all the aforementioned covenants in a timely manner, then this Deed shall be cancelled and surrendered.

Grantor hereby covenants and agrees with Grantee as follows:

## ARTICLE I

1.01 <u>Payment of Indebtedness</u>.

(a) Grantor will pay the Note according to the tenor thereof and all other sums now or hereafter secured hereby promptly as the same shall become due.

<u>DEED TO SECURE DEBT AND SECURITY AGREEMENT</u>

06720/40153
LP I.D. No. 8

Exhibit C

BOOK 27 V PAGE 008

-4-

(b) If no Event of Default has occurred and is continuing under this Deed, Grantor shall have the privilege of making prepayments on the principal of the Note (in addition to the required payments) if and only to the extent and upon the terms and conditions, if any, expressly set forth in the Note; and, if not expressly so set forth, the Note is not subject to such prepayment.

1.02 Taxes, Liens, and Other Charges.

(a) In the event of the passage of any state, federal, municipal, or other governmental law, order, rule, or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to affect adversely Grantee, Grantor will promptly pay any such tax. If Grantor fails to make such prompt payment or if, in the opinion of Grantee, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Grantee if Grantor makes such payment or if, in the opinion of Grantee, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire balance of the principal sum secured by this Deed and all interest accrued thereon shall, at the option of Grantee, become immediately due and payable.

(b) Grantor will pay (to the extent same are not paid from the escrowed funds provided for in Paragraph 1.04), before the same become delinquent, all taxes, liens, assessments, and charges of every character including all utility charges, whether public or private, already levied or assessed or that may hereafter be levied or assessed upon or against the Premises; and upon demand Grantor will furnish Grantee receipted bills evidencing such payment.

(c) Grantor will not suffer any mechanic's, materialman's, laborer's, statutory, or other lien to be created and to remain outstanding upon all or any part of the Premises.

1.03 Insurance.

(a) Grantor shall procure for, deliver to, and maintain for the benefit of Grantee during the term of this Deed original paid up insurance policies of insurance companies in amounts, in form and substance, and with expiration dates acceptable to Grantee and containing non-contributory standard mortgagee clauses, their equivalent, or a satisfactory mortgagee endorsement in favor of Grantee, providing the following types of insurance on the Premises:

(i) insurance against loss or damage by fire, lightning, vandalism and malicious mischief, and against such other hazards as are presently included in so-called "extended coverage," and against such other insurable hazards as, under good insurance practices, from time to time are insured against for properties of similar character and location, the amount of which insurance shall be not less than the

-5-

BK 27 V PAGE 009

balance of the indebtedness evidenced by the Note nor less than one hundred percent (100%) of the full replacement cost of the Premises without deduction for depreciation, and which policies of insurance shall contain satisfactory replacement cost and agreed amount endorsements;

(ii) rent insurance against loss of income arising out of damage or destruction by fire, lightning, vandalism and malicious mischief, and such other hazards as are presently included in so-called "extended coverage" in an amount not less than one hundred percent (100%) of six (6) months gross rental income from the Premises; and

(iii) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Grantee against other insurable casualties which at the time are commonly insured against in the case of Premises similarly situated, due regard being given to the height and type of the improvements, their construction, location, use, and occupancy, or any replacements or substitutions therefor.

(b) Grantee is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant to this Paragraph 1.03, and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Grantee, instead of to Grantor and Grantee jointly. In the event any insurance company fails to disburse directly and solely to Grantee, but disburses instead either solely to Grantor or to Grantor and Grantee jointly, Grantor agrees immediately to endorse and transfer such proceeds to Grantee. Upon the failure of Grantor to endorse and transfer such proceeds as aforesaid, Grantee may execute such endorsements or transfers for and in the name of Grantor, and Grantor hereby irrevocably appoints Grantee as Grantor's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees and costs, Grantee may apply the net proceeds or any part thereof, at its option, (i) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Grantee elects provided however, that if no Event of Default has occurred and Grantee has not otherwise accelerated the whole or any part of the indebtedness secured hereby, such reduction shall be without premium, (ii) to the repair and restoration of the Premises, or (iii) for any other purposes or objects for which Grantee is entitled to advance funds under this Deed; all without affecting the lien of this Deed. Grantee shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure.

(c) At least thirty (30) days prior to the expiration date of each policy maintained pursuant to this Paragraph 1.03, a renewal or replacement thereof satisfactory to Grantee shall be delivered to Grantee. Grantor shall deliver to Grantee receipts evidencing the payment for all such insurance policies and renewals or replacements. The delivery of any insurance policies hereunder shall constitute an assignment of all unearned premiums as further security hereunder. In the event of the foreclosure of this Deed or any other

<u>DEED TO SECURE DEBT AND SECURITY AGREEMENT</u>  06720/40153
LP I.D. No. 8

Exhibit C

BOOK 27V PAGE 010

-6-

transfer of title to the Premises in extinguishment of the indebtedness secured hereby, all right, title, and interest of Grantor in and to all insurance policies then in force shall pass to the purchaser or grantee.

1.04 **Monthly Deposits.** At the option of Grantee and to secure further the payment of the taxes and assessments referred to in Paragraph 1.02 and the premiums on the insurance referred to in Paragraph 1.03, Grantor will deposit with Grantee on the due date of each monthly installment under the Note a sum which, in the estimation of Grantee, shall be equal to: (1) the taxes and assessments assessed or levied against and next due on the Premises divided by the number of payments that will become due and payable under the Note before the date when such taxes and assessments will become due and payable, **plus** (2) the premiums that will next become due and payable for insurance required by this Deed to be furnished by Grantor divided by the number of payments that will become due and payable under the Note before the date when such premiums will become due and payable, said deposits to be held by Grantee, free of interest and free of any liens or claims on the part of creditors of Grantor and as part of the security of Grantee, and to be used by Grantee to pay current taxes and assessments and insurance premiums on the Premises as the same accrue and are payable. Said deposits shall not be nor be deemed to be trust funds but may be commingled with the general funds of Grantee. If said deposits are insufficient to pay the taxes and assessments and insurance premiums in full as the same become payable, Grantor will deposit with Grantee such additional sum or sums as may be required in order for Grantee to pay such taxes and assessments and insurance premiums in full. Upon any default in the provisions of this Deed or the Note, Grantee may, at its option, apply any money in the fund resulting from said deposits to the payment of the indebtedness secured hereby in such manner as it may elect.

1.05 **Condemnation.** If all or any portion of the Premises shall be damaged or taken through condemnation (which term when used in this Deed shall include any damage or taking by any governmental authority and any transfer by private sale in lieu thereof), either temporarily or permanently, then the entire indebtedness secured hereby shall, at the option of Grantee, become immediately due and payable. Grantee shall be entitled to receive all compensation, awards, and other payments or relief thereof. Grantee is hereby authorized, at its option, to commence, appear in, and prosecute, in its own or in Grantor's name, any action or proceeding relating to any condemnation and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action, and proceeds and the right thereto are hereby assigned by Grantor to Grantee. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees and costs, Grantee may apply the net proceeds or any part thereof, at its option, (a) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Grantee elects, (b) to the repair and restoration of the Premises, or (c) for any other purposes or objects for which Grantee is entitled to advance funds under this Deed, all without affecting the lien of this Deed; and any balance of such moneys then remaining shall be paid to Grantor. Grantor agrees to execute such further assignment of any compensation, awards, damages, claims, rights or action, and proceeds as Grantee may require.

DEED TO SECURE DEBT AND SECURITY AGREEMENT                              06720/40153
                                                                         LP I.D. No. 8

Exhibit C

1.06 <u>Care of Premises</u>.

(a)   Grantor will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping, and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, will not commit or suffer any waste, and will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Premises or any part thereof.

(b)   Grantor will not remove or demolish nor alter the structural character of any improvement located on the Land without the written consent of Grantee.

(c)   If the Premises or any part thereof is damaged by fire or any other cause, Grantor will give immediate written notice thereof to Grantee.

(d)   Grantee or its representative is hereby authorized to enter upon and inspect the Premises at any time during normal business hours. Grantor hereby grants to Grantee and its respective agents, attorneys, employees, consultants and contractors, an irrevocable license and authorization to enter upon and inspect the Premises and all facilities located thereon, and to perform such tasks, including without limitation, subsurface testing, soil and ground water testing, and other tests which may physically invade the Premises or facilities, as Grantee, in its sole discretion, determines as necessary to (i) investigate the condition of the Premises, (ii) protect the security interests created under this Deed, or (iii) determine compliance with all laws relating to Hazardous Materials, the provisions of this Deed and other matters relating thereto.

(e)   Grantor will promptly comply with all present and future laws, ordinances, rules, and regulations of any governmental authority affecting the Premises or any part thereof.

(f)   If all or any part of the Premises shall be damaged by fire or other casualty, Grantor will promptly restore the Premises to the equivalent of its original condition; and if a part of the Premises shall be damaged through condemnation, Grantor will promptly restore, repair or alter the remaining portions of the Premises in a manner satisfactory to Grantee. Notwithstanding the aforegoing, Grantor shall not be obligated so to restore unless in each instance, Grantee agrees to make available to Grantor (pursuant to a procedure satisfactory to Grantee) any net insurance or condemnation proceeds actually received by Grantee hereunder in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expense of such restoration; provided, however, that the insufficiency of any such insurance or condemnation proceeds to defray the entire expense of restoration shall in no way relieve Grantor of its obligation to restore. In the event all or any portion of the Premises shall be damaged or destroyed by fire or other casualty or by condemnation, Grantor shall promptly deposit with Grantee a sum equal to the amount by which the estimated cost of the restoration of the Premises (as determined by Grantee in its good faith judgment) exceeds the actual net insurance or condemnation proceeds received by Grantee in connection with such damage or destruction.

<u>DEED TO SECURE DEBT AND SECURITY AGREEMENT</u>

06720/40153
LP I.D. No. 8

Exhibit C

BOOK 27V PAGE 012

-8-

(g) Grantor will promptly: (i) pay any claim against Grantor or the Premises, (ii) remove any charge or lien upon the Premises, and (iii) indemnify and hold Grantee harmless from any and all loss or damage, resulting from any Hazardous Material that exists on or is discharged from the Premises.

(h) Grantor will not cause or permit the release of any Hazardous Material on any property owned or used by the Grantor or permit Hazardous Material on any property owned or used by Grantor in quantities that would result in any charge or lien on the Premises.

(i) Grantor will notify Grantee of any Hazardous Material that exists on or is discharged from the Premises within ten (10) days after Grantor first has knowledge of such existence or discharge.

(j) Grantor will deliver to Grantee within thirty (30) days after such coverage becomes available from an ALTA member title insurance company doing business in the state where the Premises is located a new title policy, endorsement or amendment in form and substance acceptable to Grantee which provides Grantee with affirmative coverage against loss of priority of the lien of this Deed resulting from the existence of any Hazardous Material on the Premises.

(k) Grantor will do all things necessary to preserve and keep in full force and effect Grantee's title insurance coverage insuring the lien of this Deed as a first and prior security title, subject only to the exceptions stated in Exhibit B, including without limitation, delivering to Grantee not less than 30 days prior to the effective date of any rate adjustment, modification or extension of the Note any new policy or endorsement which may be required to assure Grantee of such continuing coverage.

1.07 Leases and Other Agreements Affecting Property. Grantor will duly and punctually perform all terms, covenants, conditions, and agreements binding upon it under any lease or any other agreement of any nature whatsoever which involves or affects the Premises or any part thereof. Grantor will, at the request of Grantee, furnish Grantee with executed copies of all leases now or hereafter created upon the Premises or any part thereof, and all leases now or hereafter entered into will be in the form and substance subject to the prior, written approval of Grantee. Grantor will not, without the express written consent of Grantee, modify, surrender, or terminate, either orally or in writing, any lease now existing or hereafter created upon the Premises or any part thereof, nor will Grantor permit an assignment or a subletting by any tenant without the prior express written consent of Grantee. Grantor will not accept payment of rent more than one (1) month in advance without the prior express written consent of Grantee. In order further to secure payment of the Note and the observance, performance, and discharge of Grantor's obligations, Grantor hereby assigns, transfers, and sets over unto Grantee all of Grantor's right, title, and interest in, to, and under all leases affecting the Premises or any part thereof and in and to all of the rents now or hereafter arising from the use and enjoyment of the Premises or any part thereof; provided, however, that Grantor shall have the license to

DEED TO SECURE DEBT AND SECURITY AGREEMENT

06720/40153
LP I.D. No. 8

Exhibit C

BOOK 27V PAGE 013

-9-

collect rents prior to the occurrence of an Event of Default hereunder, but not more than one (1) month in advance.

1.08 Security Agreement.

(a) Insofar as the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, and articles of personal property either referred to or described in this Deed or in any way connected with the use and enjoyment of the Premises is concerned, this Deed is hereby made and declared to be a security agreement, encumbering each and every item of personal property included herein, in compliance with the provisions of the Uniform Commercial Code as enacted in the state wherein the Land is situated. A financing statement or statements reciting this Deed to be a security agreement affecting all of said personal property aforementioned shall at the request of Grantee be executed by Grantor and Grantee and appropriately filed. The remedies for any violation of the covenants, terms, and conditions of the security agreement herein contained shall be (i) as prescribed herein or (ii) as prescribed by general law or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Grantee's sole election. Grantor and Grantee agree that the filing of such financing statement(s) in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and hereby stated intention of Grantor and Grantee that everything used in connection with the production of income from the Premises and/or adapted for use therein and/or which is described or reflected in this Deed, is, and at all times and for all purposes and in all proceedings both legal or equitable shall be, regarded as part of the real estate irrespective of whether (a) any such item is physically attached to the improvements, (b) serial numbers are used for the better identification of certain items capable of being thus identified in a recital contained herein, or (c) any such item is referred to or reflected in any such financing statement(s) so filed at any time. Similarly, the mention in any such financing statement(s) of the rights in and to (aa) the proceeds of any fire and/or hazard insurance policy, or (bb) any award in eminent domain proceedings for a taking or for a loss of value, or (cc) Grantor's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Premises, whether pursuant to lease or otherwise, shall never be construed as in anywise altering any of the rights of Grantee as determined by this instrument or impugning the priority of Grantee's lien granted hereby or by any other recorded document, but such mention in such financing statement(s) is declared to be for the protection of Grantee in the event any court shall at any time hold with respect to the aforegoing (aa), (bb), or (cc), that notice of Grantee's priority of interest, to be effective against a particular class of persons, must be filed in the Uniform Commercial Code records.

(b) Grantor warrants that (i) Grantor's (that is "Debtor's") name, identity, partnership or corporate structure and residence or principal place of business are as set forth in Subparagraph 1.08(c) hereof; (ii) Grantor (that is, "Debtor") has been using or operating under said name, identity, partnership or corporate structure without change for the time period set forth in Subparagraph 1.08(c) hereof; and (iii) the location of the collateral is upon the Land. Grantor covenants and agrees that Grantor will furnish Grantee

DEED TO SECURE DEBT AND SECURITY AGREEMENT

06720/40153
LP I.D. No. 8

Exhibit C

-10-

BOOK 27 V PAGE 014

with notice of any change in the matters addressed by clauses (i) or (iii) of this Subparagraph 1.08(b) within thirty (30) days of the effective date of any such change and Grantor will promptly execute any financing statements or other instruments deemed necessary by Grantee to prevent any filed financing statement from becoming misleading or losing its perfected status.

(c)  The information contained in this Subparagraph 1.08(c) is provided in order that this Deed shall comply with the requirements of the Uniform Commercial Code, as enacted in the State of Georgia, for instruments to be filed as financing statements. The names of the "Debtor" and the "Secured Party," the identity or corporate structure and residence or principal place of business of "Debtor," and the time period for which "Debtor" has been using or operating under said name and identity, partnership or corporate structure without change, as are set forth in Schedule 1 of Exhibit C attached hereto and by this reference made a part hereof; the mailing address of the "Secured Party" from which information concerning the security interest may be obtained and the mailing address of "Debtor" are as set forth in Schedule 2 of said Exhibit C attached hereto; and a statement indicating the types or describing the items of collateral is set forth hereinabove.

1.09  Further Assurances; After Acquired Property.  At any time and from time to time upon request by Grantee, Grantor will make, execute, and deliver or cause to be made, executed, and delivered to Grantee and, where appropriate, cause to be recorded and filed and from time to time thereafter to be re-recorded and refiled at such time and in such offices and places as shall be deemed desirable by Grantee, any and all such other and further deeds to secure debt, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the opinion of Grantee, be necessary or desirable in order to effectuate, complete, or perfect, or to continue and preserve (a) the obligation of Grantor under the Note and under this Deed and (b) the security title of this Deed as a first and prior security title in and to all of the Premises, whether now owned or hereafter acquired by Grantor. Upon any failure by Grantor so to do, Grantee may make, execute, record, file, re-record and refile any and all such deeds to secure debt, security agreements, financing statements, continuation statements, instruments, certificates, and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Grantee the agent and attorney-in-fact of Grantor so to do. The security title hereof will automatically attach, without further act, to all after acquired property attached to and used in the operation of the Premises or any part thereof.

1.10  Expenses.  Grantor will pay or reimburse Grantee, upon demand, therefor, for all attorneys' fees, costs, and expenses incurred by Grantee in any suit, action, legal proceedings, or dispute of any kind in which Grantee is made a party or appears as party plaintiff or defendant, affecting the indebtedness secured hereby, this Deed or the interest created herein, or the Premises, including, but not limited to, the exercise of the power of sale contained in this Deed, any condemnation action involving the Premises or any action to protect the security hereof; and any such amounts paid by Grantee shall be added to the indebtedness secured by the lien of this Deed.

1.11 <u>Estoppel Affidavits</u>. Grantor, upon ten (10) days' prior written notice shall furnish Grantee a written statement, duly acknowledged, setting forth the unpaid principal of and interest on the indebtedness secured hereby, whether or not any offsets or defenses exist against such principal and interest.

1.12 <u>Subrogation</u>. Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the indebtedness secured hereby.

1.13 <u>Books, Records, Bank Accounts and Annual Reports</u>. Grantor will keep and maintain or will cause to be kept and maintained separate, proper and accurate books, records, and bank accounts reflecting all items of income and expense in connection with the operation of the Premises or in connection with any services, equipment, or furnishings provided in connection with the operation of the Premises. Grantee shall have the right from time to time at all times during normal business hours to examine such books, records, and bank accounts at the office of Grantor or such other person or entity maintaining such books, records, and bank accounts and to make copies or extracts thereof as Grantee shall desire. Such examinations shall be made at the expense of Grantee; provided, however, that if errors are discovered during any such examination, the cost of such examination shall be paid by Grantor. Grantor shall furnish to Grantee within 90 days after the end of each fiscal year of Grantor a detailed and analytical financial report in form and substance acceptable to Grantee covering the full and complete operation of the Premises, including without limitation: (i) income and expense statements with a listing of sales volumes attained by lessees of the Premises under percentage leases, if any, for the immediately preceding year and, (ii) a report of the leasing status of the Premises as of the end of such year, identifying the lessee, square footage leased, rental amount, rental concessions and/or rental deferments, if any, and expectation date under each lease of the Premises. Such reports shall be prepared by an accountant who may be an employee of Grantor, or of an affiliate of Grantor, acceptable to Grantee. Grantor shall also deliver to Grantee the financial statements of Winn-Dixie Stores, Inc. required to be delivered to Grantor as landlord under the terms of the Winn-Dixie Lease (defined in Section 2.01) and any other financial statements of Winn-Dixie Stores, Inc. which Grantor may receive.

1.14 <u>Limit of Validity</u>. If from any circumstances whatsoever fulfillment of any provision of this Deed or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law with regard to obligations of like character and amount, then <u>ipso facto</u> the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Deed or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph 1.14 shall control every other provision of this Deed and of the Note.

1.15 <u>No Default Affidavits</u>. At Grantee's request, all payments made under the Note or hereunder shall be accompanied by the affidavit of Grantor dated within five (5) days of

-12-

the delivery of such payment to Grantee, swearing that he knows of no Default (as hereinafter defined), nor of any circumstances which after notice or lapse of time or both would constitute a Default, which has occurred and is continuing or, if any such Default has occurred and is continuing, specifying the nature and period of existence thereof and the action Grantor has taken or proposes to take with respect thereto and, except as otherwise specified, stating that Grantor has fulfilled all of Grantor's obligations under this Deed which are required to be fulfilled on or prior to the date of such affidavit.

1.16 **Use and Management of Premises**. Grantor shall at all times operate the Premises as a retail supermarket facility. Grantor shall not be permitted to alter or change the use of the Premises or to abandon the Premises without the prior, written consent of Grantee.

1.17 **Conveyance of Premises**. Grantor hereby acknowledges to Grantee that (i) the identity and expertise of Grantor were and continue to be material circumstances upon which Grantee has relied in connection with, and which constitute valuable consideration to Grantee for, the extending to Grantor of the indebtedness evidenced by the Note and (ii) any change in such identity or expertise could materially impair or jeopardize both the security for the payment of the Note granted to Grantee by this Deed and Grantee's other rights in the Premises, as hereinbelow described. Grantor therefore covenants and agrees with Grantee, as part of the consideration for the extending to Grantor of the indebtedness evidenced by the Note, that Grantor shall not, directly or indirectly, encumber, pledge, convey, transfer, or assign any or all of its interest in the Premises without the prior, written consent of Grantee. Grantee's ability to consent to any sale, transfer, conveyance or encumbrance and waive this provision implies no standard of reasonableness in determining whether or not such consent shall be granted and the same may be based upon what Grantee solely deems to be in its best interest; without limiting Grantee's right to withhold its consent and waiver entirely, such consent and waiver may be conditioned upon an increase in the rate of interest under the Note and the imposition of other terms and conditions thereunder or hereunder; any sale, transfer, conveyance or encumbrance made, created or permitted in violation of this provision shall be null and void and in addition to the other rights and remedies available to Grantee, hereunder, Grantee shall have the option of declaring the unpaid principal balance of the Note, together with all accrued and unpaid interest, premium, if any and all other sums and charges evidenced thereby or owing hereunder, immediately due and payable.

1.18 **Acquisition of Collateral**. Grantor shall not acquire any portion of the personal property covered by this Deed subject to any security interest, conditional sales contract, title retention arrangement, or other charge or lien taking precedence over the security title and lien of this Deed.

1.19 **Identity**. Grantor will if other than a natural person, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and, if other than its state of formation, the state where the Premises is located.

-13-

BOOK 27V PAGE 017

## ARTICLE II

2.01 <u>Events of Default</u>. The terms "Default," "Defaults," "Event of Default," or "Events of Default," wherever used in this Deed, shall mean any one or more of the following events:

(a) Default shall be made in the payment of any principal, interest, payments due pursuant to Article 1.01(b), or premium, taxes or assessments referred to in this Deed or insurance premiums for the insurance required pursuant to this Deed when due under the Note or this Deed, and such default shall have continued for 10 days; or

(b) Failure by Grantor duly to observe or perform within thirty (30) days after notice any other term, covenant, condition, or agreement of this Deed; or

(c) Failure by Grantor duly to observe or perform within thirty (30) days after notice any term, covenant, condition or agreement in any assignment of lease(s) or any other agreement given or made as additional security for the performance of the Note or this Deed; or

(d) Any warranty of Grantor contained in this Deed or in any other instrument, document, transfer, conveyance, assignment, or loan agreement given by Grantor with respect to the indebtedness secured hereby proves to be untrue or misleading in any material respect; or

(e) The filing by Grantor of a voluntary petition in bankruptcy or Grantor's adjudication as a bankrupt or insolvent of the filing by Grantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for itself under any present or future federal, state, or other law or regulation relating to bankruptcy, insolvency, or other relief for debtors or Grantor's seeking or consenting to or acquiescing in the appointment of any trustee, receiver, or liquidator of Grantor or of all or any substantial part of the Premises or of any or all of the rents, issues, profits, or revenues thereof or the making by Grantor of any general assignment for the benefit of creditors or the admission in writing by Grantor of its inability to pay its debts generally as they become due; or

(f) The entry by a court or competent jurisdiction of an order, judgment, or decree approving a petition filed against Grantor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal, state, or other law or regulation relating to bankruptcy, insolvency, or other relief for debtors, which order, judgment, or decree remains unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive) from the date of entry thereof, or the appointment of any trustee, receiver, or liquidator of Grantor or of all or any substantial part of the Premises or of any or all of the rents, issues, profits, or revenues thereof without the consent of acquiescence of Grantor, which appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive); or

<u>DEED TO SECURE DEBT AND SECURITY AGREEMENT</u>

06720/40153
LP I.D. No. 8

Exhibit C

-14-

(g)  The failure of the Grantor to give notice in the manner provided in this Deed for the giving of notices within 10 days after the death of any individual who is personally liable for the payment of the indebtedness secured hereby or any part thereof, as Grantor, indemnitor, or guarantor, whether or not such persons have executed the Note or this Deed. The term "Grantor" as used herein shall be as defined in this Deed; or

(h)  The death of any natural person who is personally liable for the payment of the indebtedness secured hereby or any part thereof whether such person is the Grantor or any indemnitor or guarantor and whether or not such person has executed the Note or this Deed; or

(i)  The occurrence of any "Event of Default" as defined in that certain Lease Agreement dated as of even date herewith, executed between Grantor, as landlord, and Winn-Dixie Stores, Inc., as tenant, pertaining to the Premises (the "Winn-Dixie Lease").

If any Event of Default under "(b)" or "(c)" above shall be of such nature that it cannot be cured or remedied within thirty (30) days, Grantor shall be entitled to a reasonable period of time to cure or remedy such Event of Default, provided Grantor commences the cure or remedy thereof within the thirty (30) day period following the giving of notice and thereafter proceeds with diligence to complete such cure or remedy.

2.02 Acceleration of Maturity. If an Event of Default shall have occurred and be continuing, then the entire indebtedness secured hereby shall, at the option of Grantee, immediately become due and payable without notice or demand, time being of the essence of this Deed; and no omission on the part of Grantee to exercise such option when entitled to do so shall be construed as a waiver of such right.

2.03 Acceleration Premium. Grantor agrees that if Grantee accelerates the whole or any part of the principal sum evidenced by the Note, or applies any proceeds as if such application had been made as a result of such acceleration, pursuant to the provisions of the Note, Grantor waives any right to prepay the principal hereby secured in whole or in part without premium and agrees to pay, as yield maintenance protection and not as a penalty, a "Make Whole Premium." Grantor and Grantee acknowledge and agree that the actual loss of Grantee in the event of any payment after acceleration, as herein provided, is impossible to ascertain as of the date of this Deed and that the Make Whole Premium is a reasonable estimate of such loss. The Make Whole Premium shall be the greater of (a) one percent (1%) of the principal amount to be prepaid, or (b) the excess, if any, of

(i)  the aggregate present value as of the date of payment or prepayment (hereinafter, the "Payment Date") of each dollar of principal being paid or prepaid (taking into account the application of such prepayment as set forth herein) and the amount of interest (exclusive of interest accrued to the Payment Date) that would have been payable in respect of such dollar of principal being paid or prepaid if such payment or prepayment had not been made, determined

by discounting such amounts monthly at a rate which is equal to the "Treasury Rate" from the due date of the Note, <u>over</u>

 (ii) 100% of the principal amount being paid or prepaid.

The "Treasury Rate" will be equal to the arithmetic mean of the yields to maturity converted to a monthly equivalent of United States Treasury obligations with a constant maturity (as compiled by and published in the United States Federal Reserve Bulletin [H.R. 15] (hereinafter "H.R. 15") or its successor publication for each of the two weeks immediately preceding the Payment Date) most nearly equal to the remaining "Weighted Average Life to Maturity" of the Note as of the Payment Date. If the yields referred to in the preceding sentence shall not have been so published, the yields corresponding to the Payment Date shall be calculated on the basis of the arithmetic mean of the arithmetic means of the secondary market ask rates, as of approximately 3:30 P.M., New York City time, on the last business days of each of the two weeks preceding the Payment Date, for the actively traded U.S. Treasury security or securities with a maturity or maturities most closely corresponding to the "Weighted Average Life to Maturity", as reported by three primary United States Government securities dealers in New York City of national standing selected in good faith by the holder of the Note. If no maturity exactly corresponding to such remaining "Weighted Average Life to Maturity" should appear therein, yields for the next longer and the next shorter published maturities shall be calculated pursuant to the foregoing sentence and the Treasury Rate shall be interpolated from such yields on a straight-line basis (rounding to the nearest month).

The "Weighted Average Life to Maturity" with respect to the Note means, at the Payment Date, the number of years obtained by dividing the "Remaining Dollar-years" of the Note by the outstanding principal amount thereof. "Remaining Dollar-years" means the sum of the product obtained by multiplying (A) the amount of each then remaining required principal repayment (including repayment of any principal at the due date of the Note) by (B) the number of years (rounded to the nearest one-twelfth) which will elapse between the Payment Date and the date such required payment is due.

 2.04 <u>Grantee's Right to Enter and Take Possession, Operate, and Apply Revenues.</u>

 (a) If an Event of Default shall have occurred and be continuing, Grantor, upon demand of Grantee, shall forthwith surrender to Grantee the actual possession of the Premises and if, and to the extent, permitted by law, Grantee itself, or by such officers or agents as it may appoint, may enter and take possession of all of the Premises without the appointment of a receiver or an application therefor and may exclude Grantor and its agents and employees wholly therefrom and may have joint access with Grantor to the books, papers, and accounts of Grantor.

 (b) If Grantor shall for any reason fail to surrender or deliver the Premises or any part thereof after such demand by Grantee, Grantee may obtain a judgment or decree conferring upon Grantee the right to immediate possession or requiring Grantor to deliver

-16-

immediate possession of the Premises to Grantee, to the entry of which judgment or decree Grantor hereby specifically consents. Grantor will pay to Grantee, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Grantee, its attorneys, and agents; and all such expenses and compensation shall, until paid, be secured by the security title of this Deed.

(c) Upon every such entering upon or taking of possession, Grantee may hold, store, use, operate, manage, and control the Premises and conduct the business thereof and, from time to time, (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments, and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personally, and other property; (ii) insure or keep the Premises insured; (iii) manage and operate the Premises and exercise all the rights and powers of Grantor to the same extent as Grantor could in its own name or otherwise with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Grantee, all as Grantee from time to time may determine to be in its best interest. Grantee may collect and receive all the rents, issues, profits, and revenues from the Premises, including those past due as well as those accruing thereafter, and, after deducting (aa) all expenses of taking, holding, managing, and operating the Premises (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases, and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments, and other similar charges as Grantee may at its option pay; (ee) other proper charges upon the Premises or any part thereof; and (ff) the reasonable compensation, expenses, and disbursements of the attorneys and agents of Grantee, Grantee shall apply the remainder of the moneys and proceeds so received by Grantee: first, to the payment of accrued interest; second, to the payment of deposits required in Paragraph 1.04; and third, to the payment of overdue installments of principal.

(d) Whenever all that is due upon such interest, deposits, and principal installments and under any of the terms, covenants, conditions, and agreements of this Deed shall have been paid and all Events of Default made good, Grantee shall surrender possession of the Premises to Grantor, its successors, or assigns. The same right of taking possession, however, shall exist if any subsequent Event of Default shall occur and be continuing.

2.05 <u>Performance by Grantee of Defaults by Grantor</u>. If Grantor shall default in the payment, performance or observance of any term, covenant, or condition of this Deed, whether the same constitutes an Event of Default, or whether such event, the occurrence of which would, with the lapse of time or the giving of notice or both, constitute an Event of Default, Grantee may, at its option, pay, perform, or observe the same, and all payments made or costs or expenses incurred by Grantee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Grantee with interest thereon at the default rate provided in the Note. Grantee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Grantee is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted term, covenant, or condition

<u>DEED TO SECURE DEBT AND SECURITY AGREEMENT</u>                                    06720/40153
                                                                                    LP I.D. No. 6

Exhibit C

without thereby becoming liable to Grantor or any person in possession holding under Grantor.

2.06 Receiver. If an Event of Default shall have occurred and be continuing, Grantee, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the rents, issues, profits, and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the state wherein the Land is situated. Grantor will pay to Grantee upon demand all expenses, including receiver's fees, attorneys' fees and costs, costs, and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.06; and all such expenses shall be secured by this Deed.

2.07 Enforcement.

(a) If an Event of Default shall have occurred and be continuing, Grantee, at its option, may sell the Premises or any part of the Premises at public sale or sales before the door of the courthouse of the county in which the Premises or any part of the Premises is situated, to the highest bidder for cash, in order to pay the indebtedness secured hereby and accrued interest thereon and insurance premiums, liens, assessments, taxes, and charges, including utility charges, if any, with accrued interest thereon, and all expenses of the sale and of all proceedings in connection therewith, including reasonable attorneys' fees, if incurred, after advertising the time, place, and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriff's sales are advertised in said county. At any such public sale Grantee may execute and deliver to the purchaser a conveyance of the Premises or any part of the Premises in fee simple, with full warranties of title and, to this end, Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Premises and to vest the same in the purchaser or purchasers at such sale or sales; and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed, and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the indebtednesses secured hereby and shall not be exhausted by one exercise thereof, but may be exercised until full payment of all indebtedness secured hereby.

2.08 Purchase by Grantee. Upon any foreclosure sale, Grantee may bid for and purchase the Premises and shall be entitled to apply all or any part of the indebtedness secured hereby as a credit to the purchase price.

2.09 Application of Proceeds of Sale. In the event of a foreclosure sale of the Premises, the proceeds of said sale shall be applied first, to the expenses of such sale and

of all proceedings in connection therewith, including attorneys' and trustees' fees, then to insurance premiums, liens, assessments, taxes, and charges, including utility charges, advanced by Grantee, then to payment of the outstanding principal balance of the indebtedness secured hereby, then to the accrued interest on all of the foregoing, and finally the remainder, if any, shall be paid to the person or party legally entitled to the same.

2.10 <u>Grantor as Tenant Holding Over</u>. In the event of any such foreclosure sale by Grantee, Grantor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to the provisions of law applicable to tenants holding over.

2.11 <u>Waiver of Appraisement, Valuation Stay, Extension, and Redemption Laws</u>. Grantor agrees to the full extent permitted by law that, in case of a default on the part of Grantor hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, homestead, exemption, or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed or the absolute sale of the Premises or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat; and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have assets comprised in the security intended to be created hereby marshalled upon any foreclosure of the security title hereof.

2.12 <u>Leases</u>. Grantee, at its option, is authorized to foreclose this Deed subject to the rights of any tenants of the Premises, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Grantor, a defense to any proceedings instituted by Grantee to collect the sums secured hereby.

2.13 <u>Discontinuance of Proceedings and Restoration of the Parties</u>. In case Grantee shall have proceeded to enforce any right, power, or remedy under this Deed by foreclosure, entry, or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Grantee, then and in every such case Grantor and Grantee shall be restored to their former positions and rights hereunder, and all rights, powers, and remedies of Grantee shall continue as if no such proceeding had been taken.

2.14 <u>Remedies Cumulative</u>. No right, power, or remedy conferred upon or reserved to Grantee by this Deed is intended to be exclusive of any other right, power, or remedy, but each and every such right, power, and remedy shall be cumulative and concurrent and shall be in addition to any other right, power, and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

-19-

BOOK 27 V PAGE 023

2.15 Waiver.

(a)   No delay or omission of Grantee or of any holder of the Note to exercise any right, power, or remedy accruing upon any Default shall exhaust or impair any such right, power, or remedy or shall be construed to be a waiver of any such default, or acquiescence therein; and every right, power, and remedy given by this Deed to Grantee may be exercised from time to time and as often as may be deemed expedient by Grantee. No consent or waiver, expressed or implied, by Grantee to or of any breach or default by Grantor in the performance of the obligations thereof hereunder shall be deemed or construed to be a consent or waiver to or of any breach or Default in the performance of the same or any other obligations of Grantor hereunder. Failure on the part of Grantee to complain of any act or failure to act or to declare an Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Grantee of its rights hereunder or impair any rights, powers, or remedies consequent on any breach or Default by Grantor.

(b)   If Grantee (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Premises from the lien of this Deed or otherwise changes any of the terms, covenants, conditions, or agreements of the Note or this Deed; (v) consents to the filing of any map, plat, or replat affecting the Premises; (vi) consents to the granting of any easement or other right affecting the Premises; or (vii) makes or consents to any agreement subordinating the security title hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed or any other obligation of Grantor or any subsequent purchaser of the Premises or any part thereof, or any maker, co-signer, endorser, surety, or guarantor; nor shall any such act or omission preclude Grantee from exercising any right, power, or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Default; nor, except as otherwise expressly provided in an instrument or instruments executed by Grantee, shall the lien of this Deed be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Premises, Grantee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Premises or the indebtedness secured hereby, or with reference to any of the terms, covenants, conditions, or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations, or undertakings.

2.16 Suits to Protect the Premises.   Grantee shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Premises by any acts which may be unlawful or any violation of this Deed, (b) to preserve or protect its interest in the Premises and in the rents, issues, profits, and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule, or order would impair the security hereunder or be prejudicial to the interest of Grantee.