-19-

entry, or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Grantee, then and in every such case Grantor and Grantee shall be restored to their former positions and rights hereunder, and all rights, powers, and remedies of Grantee shall continue as if no such proceeding had been taken.

2.14 Remedies Cumulative. No right, power, or remedy conferred upon or reserved to Grantee by this Deed is intended to be exclusive of any other right, power, or remedy, but each and every such right, power, and remedy shall be cumulative and concurrent and shall be in addition to any other right, power, and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.15 Waiver.

(a) No delay or omission of Grantee or of any holder of the Note to exercise any right, power, or remedy accruing upon any Default shall exhaust or impair any such right, power, or remedy or shall be construed to be a waiver of any such default, or acquiescence therein; and every right, power, and remedy given by this Deed to Grantee may be exercised from time to time and as often as may be deemed expedient by Grantee. No consent or waiver, expressed or implied, by Grantee to or of any breach or default by Grantor in the performance of the obligations thereof hereunder shall be deemed or construed to be a consent or waiver to or of any breach or Default in the performance of the same or any other obligations of Grantor hereunder. Failure on the part of Grantee to complain of any act or failure to act or to declare an Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Grantee of its rights hereunder or impair any rights, powers, or remedies consequent on any breach or Default by Grantor.

(b) If Grantee (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Premises from the lien of this Deed or otherwise changes any of the terms, covenants, conditions, or agreements of the Note or this Deed; (v) consents to the filing of any map, plat, or replat affecting the Premises; (vi) consents to the granting of any easement or other right affecting the Premises; or (vii) makes or consents to any agreement subordinating the security title hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed or any other obligation of Grantor or any subsequent purchaser of the Premises or any part thereof, or any maker, co-signer, endorser, surety, or guarantor; nor shall any such act or omission preclude Grantee from exercising any right, power, or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Default; nor, except as otherwise expressly provided in an instrument or instruments executed by Grantee, shall the lien of this Deed be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Premises, Grantee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Premises or the indebtedness secured hereby, or with reference to any of the terms,

DEED TO SECURE DEBT AND SECURITY AGREEMENT                    06720/40153
                                                              LP I.D. No. 3

Exhibit C

-20-

covenants, conditions, or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations, or undertakings.

2.16 <u>Suits to Protect the Premises</u>. Grantee shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Premises by any acts which may be unlawful or any violation of this Deed, (b) to preserve or protect its interest in the Premises and in the rents, issues, profits, and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule, or order would impair the security hereunder or be prejudicial to the interest of Grantee.

2.17 <u>Grantee May File Proofs of Claim</u>. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition, or other proceedings affecting Grantor, its creditors, or its property, Grantee to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Grantee allowed in such proceedings for the entire amount due and payable by Grantor under this Deed at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

2.18 <u>WAIVER OF GRANTOR'S RIGHTS</u>. BY EXECUTION OF THIS DEED AND BY INITIALING THIS PARAGRAPH 2.18, GRANTOR EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED; (C) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND ANY AND ALL ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR, AND GRANTOR HAS CONSULTED WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED: AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY, AND WILLINGLY BY THE GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION:

Initialed by Grantor: _KAP JHB_

-21-

## ARTICLE III

3.01 <u>Successors and Assigns</u>. This Deed shall inure to the benefit of and be binding upon Grantor and Grantee and their respective heirs, executors, legal representatives, successors, and assigns. Whenever a reference is made in this Deed to Grantor or Grantee, such reference shall be deemed to include a reference to the heirs, executors, legal representatives, successors, and assigns of Grantor or Grantee.

3.02 <u>Terminology</u>. All personal pronouns used in this Deed whether used in the masculine, feminine, or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles and Articles are for convenience only and neither limit nor amplify the provisions of this Deed itself, and all references herein to Articles, Paragraphs, or Subparagraphs thereof, shall refer to the corresponding Articles, Paragraphs, or Subparagraphs thereof of this Deed, unless specific reference is made to such Articles, Paragraphs, or Subparagraphs thereof of another document or instrument.

3.03 <u>Severability</u>. If any provision of this Deed or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

3.04 <u>Applicable Law</u>. This Deed shall be interpreted, construed, and enforced according to the laws of the state wherein the Premises is situated.

3.05 <u>Notices, Demands and Requests</u>. All notices, demands, or requests provided for or permitted to be given pursuant to this Deed shall be deemed to be an adequate and sufficient notice if given in writing and service is made by registered or certified mail or nationally recognized overnight air courier, next day delivery addressed to the addresses set forth on the first page hereof. All notices, demands, and requests shall be effective upon being deposited in the United States Mail or sent by nationally recognized overnight air courier. However, the time period in which a response to any notice, demand, or request must be given, if any, shall commence to and run three (3) business days following deposit in the United States mail or one (1) business day following delivery to a nationally recognized overnight air carrier. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice, demand, or request sent. By giving at least thirty (30) days written notice hereof, Grantor or Grantee shall have the right from time to time and at any time during the term of this Deed to change their respective addresses, and each shall have the right to specify as its address any other address within the United States of America.

3.06 <u>Limitation of Liability</u>.

(a) Notwithstanding any provision to the contrary in the Note, this Deed or any other instrument or agreement by which the Note is secured (collectively referred to herein as the "Loan Documents"), and except as otherwise provided in this paragraph, the liability

<u>DEED TO SECURE DEBT AND SECURITY AGREEMENT</u>

06720/40153
LP I.D. No. 3

Exhibit C

-22-

of Grantor under the Loan Documents shall be limited to the interest of Grantor in the Premises and the rents, issues, proceeds and profits thereof. In the event of foreclosure of the liens evidenced by the Loan Documents, no judgment for any deficiency upon the indebtedness evidenced by the Loan Documents shall be sought or obtained by Grantee against Grantor. Nothing contained in this paragraph shall:

(i) prevent the failure of Grantor to make any payment or to perform any obligation under any of the Loan Documents within the time periods provided therein from being an Event of Default thereunder;

(ii) be construed as limiting the obligations of Grantor to any tenant under any lease of the Premises;

(iii) in any way limit or impair the lien or enforcement of the Loan Documents pursuant to the terms thereof; or

(iv) limit the obligations of any indemnitor or guarantor, if any, of Grantor's obligations under the Loan Documents.

(b) Notwithstanding subparagraph (a) above, Grantor shall be personally liable to Grantee for:

(i) Grantor's failure to comply with paragraphs 1.02 (taxes) and 1.03 (insurance) of this Deed;

(ii) any event or circumstance for which Grantor indemnifies Grantee under paragraph 1.06(g) (environmental indemnity);

(iii) Grantor's failure to pay utilities on or before the date such payments are due;

(iv) operation and maintenance of the Premises;

(v) any sums expended by Grantee in fulfilling the obligations of Grantor as lessor under any lease of the Premises prior to a sale of the Premises pursuant to foreclosure or power of sale, a bona fide sale (permitted by the terms of this Deed or consented to in writing by Grantee) to an unrelated third party or upon conveyance to Grantee of the Premises by a deed acceptable to Grantee in form and content (each of which shall be referred to as a "Sale" for purposes of this paragraph) or expended by Grantee after a Sale of the Premises for obligations of Grantor which arose prior to a Sale of the Premises;

(vi) any rents or other income regardless of type or source of payment (including, but not limited to, CAM charges, lease termination payments, refunds of any type, prepayment of rents, settlements of litigation, or settlements of past due rents) from the Premises, which Grantor has received or has a right to receive after an Event of

-23-

Default under the Loan Documents or an event which, with the passage of time, the giving of notice, or both, would constitute an Event of Default, either or both of which has occurred and is continuing, and which are not applied to (A) expenses of operation and maintenance of the Premises and the taxes, assessments, charges and insurance of the Premises, taking into account sufficient reserves for the same and for replacements and recurring items, and (B) payment of principal, interest and other charges when due under the Loan Documents; provided that any payments to parties related to Grantor shall be considered expenses of operation only if they are at market rates or fees consistent with market rates or fees for the same or similar services;

(vii) any security deposits of tenants not turned over to Grantee upon conveyance of the Premises to Grantee pursuant to foreclosure or power of sale or by a deed acceptable to Grantee in form and content;

(viii) misapplication or misappropriation of tax reserve accounts, tenant improvement reserve accounts, security deposits, prepaid rents or other similar sums paid to or held by Grantor or any other entity or person in connection with the operation of the Premises;

(ix) any waste committed or allowed by Grantor with respect to the Premises; and

(ix) any insurance or condemnation proceeds or other similar funds or payments applied by Grantor in a manner other than as expressly provided in the Loan Documents.

(c) Notwithstanding anything to the contrary in the Loan Documents, the limitation on liability contained in subparagraph (a) above SHALL BECOME NULL AND VOID and shall be of no further force and effect in the event:

(i) of any breach or violation of paragraph 1.17 (due on sale or encumbrance) of this Deed; or

(ii) of any fraud or willful misrepresentation by Grantor regarding the Premises, the making or delivery of any of the Loan Documents or in any materials or information provided by Grantor in connection with the loan.

3.07 <u>Superior Winn-Dixie Lease</u>. It is intended by Grantor and Grantee that the Winn-Dixie Lease be superior in priority to the priority of this Deed and that any foreclosure under this Deed shall not terminate, extinguish or impair the Winn-Dixie Lease, the tenant's rights or obligations thereunder, or the obligations or liabilities of any guarantor with respect to the Winn-Dixie Lease. Notwithstanding anything in this Deed to the contrary, so long as (i) the Winn-Dixie Lease and any guaranties of the Winn-Dixie Lease remain in full force and effect, and no default has occurred under either, and (ii) no default or Event of Default has occurred under this Deed or any other instrument or agreement evidencing or securing the indebtedness secured by this Deed, any inability of Grantor to

-24-

comply with the provisions of Section 1.03 or Section 1.05 of this Deed due solely to any inconsistency of any such provisions with the provisions of the Winn-Dixie Lease shall not create an Event of Default under this Deed.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

-25-

IN WITNESS WHEREOF, Grantor has hereunto set its hand and seal as of the day, month, and year first above written.

PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Georgia as Peregrine Ownership and Leasing Limited Partnership

By: Equity FC, Ltd., an Iowa corporation, its general partner

By: _Karen A. Pearson_____
Name: Karen A. Pearson
Title: Counsel

Signed, sealed, and delivered
in the presence of:

By: _Leann M Swen_____
Name: LEANNE M. SWENSON
Title: Counsel

_____
Unofficial Witness

[CORPORATE SEAL]

_____
Notary Public

My Commission Expires:  KATHLEEN K. KOLKA
MY COMMISSION EXPIRES
July 8, 1996

[NOTARIAL SEAL]

GEORGIA INTANGIBLE TAX PAID
DATE _Sept. 08_ 19 94  $ 7,812.00
_Harrell Freeman_ BALDWIN CO., GA
HARRELL FREEMAN TAX COMMISSIONER

DEED TO SECURE DEBT AND SECURITY AGREEMENT

06720/40153
LP I.D. No. 3

Exhibit C

06720/40153
L.P. I.D. No. 3

## EXHIBIT "A"

LEGAL DESCRIPTION

TRACT 1

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 296 of the 1st District, City of Milledgeville, Baldwin County, Georgia and being more particularly described as follows:

TO FIND A POINT OF BEGINNING begin at a concrete monument located at the intersection of northwest right-of-way line of Hammock Street (which right-of-way is 54 feet at this point) with the southwest right-of-way line of U.S. Highway No. 441 (which right-of-way is 150 feet at this point); thence run North 38°15' 43" West, along the southwest right-of-way line of U.S. Highway No. 441, a distance of 220.87 feet to an iron pin and the POINT OF BEGINNING and from said Point of Beginning; thence leave said right-of-way line and run South 62°34'22" West, along property now or formerly owned by Merchants & Farmers Bank of Milledgeville and Raymond M. Pittman, a distance of 322.41 feet to an iron pin; thence run South 66°00'00" West, along property now or formerly owned by Raymond M. Pittman, a distance of 424.70 feet to an iron pin; thence run South 23°39'49" East, along property now or formerly owned by Raymond M. Pittman, a distance of 120.11 feet to an iron pin; thence run South 44°46'42" West, along property now or formerly owned by L.D. Hammock, a distance of 121.29 feet to an iron pin; thence run North 36°38'13" West, along property now or formerly owned by Rheem Manufacturing Company, a distance of 425.21 feet to a point; thence run North 51°43' 13" East, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 372.89 feet to a point; thence run North 29°44'56" West, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 65.81 feet to a point; thence run North 51°43'13" East, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 205.41 feet to a point; thence run South 38°16'47" East, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 13.71 feet to a point; thence run North 51°43'13" East, along property now or formerly owned by Bright-Meyers Milledgeville Associates, L.P., a distance of 43.27 feet to a point; thence run South 38°21'39" East, along property now or formerly owned by Georgia Power Company and Business Associates, a distance of 219.11 feet to an iron pin; thence run South 59°49'29" East, along property now or formerly owned by Business Associates, a distance of 94.43 feet to an iron pin; thence run South 38°37'54" East, along property now or formerly owned by Quadvest, Inc., a distance of 115.03 feet to an iron pin; thence run North 62°08'21" East, along property now or formerly owned by Quadvest, Inc., a distance of 154.38 feet to an iron pin; thence run North 41°13'36" East, along property now or formerly owned by Quadvest, Inc., a distance of 48.71 feet to an iron pin located on the southwest right-of-way line of U.S. Highway No. 441; thence run South 38°15'42" East, along the southwest right-of-way line of U.S. Highway No. 441, a distance of 70.00 feet to an iron pin and the POINT OF BEGINNING. Said tract containing 6.153 acres more or less as shown on survey for Principal Mutual Life Insurance Company and Lawyers Title Insurance Corporation by Freeland-Clinkscales and Associates, Inc., James R. Freeland, Georgia Registered Land Surveyor No. 2221, dated May 20, 1994.

Exhibit C

TRACT 2

TOGETHER WITH all of the easements, rights and benefits which constitute appurtenances running with title to the insured property under the following instruments: (i) Reciprocal Easement Agreement by and between Bright-Meyers Milledgeville Associates, L.P. and Sunbelt-Dix, Inc., dated October 21, 1992, recorded in Deed Book 320, Page 628, aforesaid records; (ii) Easement Agreement by and between Century Bank and Trust and Bright-Meyers Milledgeville Associates, L.P., dated August 17, 1992, recorded in Deed Book 316, Page 450, aforesaid records; (iii) Warranty Deed from Bright-Meyers Milledgeville Associates, L.P. and Henry G. Andrews, dated February 5, 1992, recorded in Deed Book 305, Page 27, aforesaid records; and (iv) Easement Agreement (Second Easement Tract and Shopping Center) by and between Bright-Meyers Milledgeville Associates, L.P., Sunbelt-Dix, Inc. and Georgia Power Company, dated December 22, 1992, recorded in Deed Book 324, Page 365, aforesaid records.

Exhibit C

06720/40153
LP I.D. No. 3

## EXHIBIT "B"

    The title matters listed as exceptions in the Mortgagee Policy of Title Insurance issued by First American Title Insurance Company and delivered to Grantee in connection with this transaction.

Exhibit B - Page 1

J:\RE\06720\40153\lp3\DTSD&SA3.189

August 30, 1994

Exhibit C

06720/40153
LP I.D. No. 3

## EXHIBIT "C"

### Schedule 1

(Description of "Debtor" and "Secured Party")

A.        Debtor:

1. Name and Identity: Peregrine Properties Limited Partnership, an Iowa limited partnership authorized to transact business in Georgia as Peregrine Ownership and Leasing Limited Partnership.

2. The residence of Debtor in the State of Georgia is located at CT Corporation Systems, 1201 Peachtree Street N.E., Atlanta, Georgia 30361.

3. If Debtor has more than one place of business in the State of Georgia, Debtor's chief executive office in the State of Georgia is located at: CT Corporation Systems, 1201 Peachtree Street N.E., Atlanta, Georgia 30361.

4. Debtor has been using or operating under said name and identity without change since commencing business in the State of Georgia.

B.        Secured Party: Principal Mutual Life Insurance Company, an Iowa corporation.

---

### Schedule 2

(Notice of Mailing Address of "Debtor" and "Secured Party")

The mailing address of Debtor is 711 High Street, Des Moines, Iowa 50392-1450, Attention: Commercial Real Estate Loan Administration, Reference No. 750402.

The mailing address of Secured Party is Principal Mutual Life Insurance Company, 711 High Street, Des Moines, Iowa 50392-1450, Attention: Commercial Real Estate Loan Administration, Loan No. 750402.

J:\RE\06720\40153\lp3\DTSD&SA3.189          Exhibit C - Page 1

Exhibit C