2949827.2

18.2.  <u>Indemnity</u>. Escrow Agent will not be liable to any party except for claims resulting from the negligence or willful misconduct of Escrow Agent. If the escrowed funds or interest accrued thereon is involved in any controversy or litigation, the parties hereto will jointly and severally indemnify and hold Escrow Agent free and harmless from and against any and all loss, cost, damage, liability or expense, including costs of reasonable attorneys' fees to which Escrow Agent may be put or which may incur by reason of or in connection with such controversy or litigation, except to the extent it is finally determined that such controversy or litigation resulted from Escrow Agent's negligence or willful misconduct. If the indemnity amounts payable hereunder result from the fault of Buyer or Seller (or their respective agents), the party at fault will pay, and hold the other party harmless against, such amounts. Otherwise, Buyer and Seller each will be responsible for one-half of such amounts.

18.3.  <u>Dispute</u>. If a written objection is filed within the time allowed or if Escrow Agent is in doubt as to its duties, Escrow Agent may continue to hold the escrowed funds and interest accrued thereon until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court, or Escrow Agent may interplead the same in such court and be relieved of any and all liability therefor. In any action or proceeding regarding the escrowed funds or interest accrued thereon brought by Escrow Agent or to which Escrow Agent is made a party, the Escrow Agent will be entitled to recover its reasonable costs and attorneys' fees (through appeal) from whichever of Seller or Buyer is not the prevailing party in such action or proceeding. If there is no prevailing party, Seller and Buyer each shall be responsible for one-half of such costs and fees.

18.4.  <u>Execution by Escrow Agent</u>. Escrow Agent has executed this Agreement solely for the purpose of acknowledging and agreeing to the provisions of this <u>paragraph 18</u>. Escrow Agent's consent to and execution of any modification or amendment of this Agreement other than this <u>paragraph 18</u> shall not be required.

19.0  **Waiver of Jury Trial.** Buyer and Seller each acknowledge and agree that the nature of this Agreement makes a jury determination of any dispute arising out of this Agreement or relating to the transactions contemplated herein undesirable. Accordingly, Buyer and Seller each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Agreement or the transactions contemplated herein.

20.0  **Consent to Jurisdiction. THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.**

2949827.2

Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in paragraph 17.1 of this Agreement shall be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum. If a court finds that subject-matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Middle District of Florida, Jacksonville Division, or if such court shall not have jurisdiction, then to the appropriate courts of the State of Florida sitting in Duval County, Florida.

21.0 **HSR Filings.** The parties anticipate that the transactions contemplated hereby are exempt from review and filing under the HSR Act. However, if such is not the case, Seller and Buyer shall each seek regulatory approval or HSR clearance and prepare and submit, in a timely manner, all necessary filings for Seller and Buyer in connection with this Agreement under the HSR Act and the rules and regulations thereunder. Seller and Buyer shall request expedited treatment of such HSR Filing by the Federal Trade Commission, shall make promptly any appropriate or necessary subsequent or supplemental filings, and shall furnish to each other copies of all HSR Filings at the same time as they are filed with the appropriate governmental authority except to the extent such party is legally restricted from providing or believes, based where appropriate on the advice of counsel, that it should not provide such copies.

22.0 **Disclaimers and Waivers.**

22.1. **NO RELIANCE ON DOCUMENTS. EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH HEREIN (THE "CONTRACT WARRANTIES"), SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE TRUTH, ACCURACY OR COMPLETENESS OF ANY MATERIALS, DATA OR INFORMATION DELIVERED BY OR ON BEHALF OF SELLER TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY. BUYER ACKNOWLEDGES AND AGREES THAT ALL MATERIALS, DATA AND INFORMATION DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY (WHETHER DELIVERED OR MADE AVAILABLE ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE) ARE PROVIDED TO BUYER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF SUCH MATERIALS, DATA OR INFORMATION BY BUYER SHALL BE AT THE SOLE RISK OF BUYER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BUYER ACKNOWLEDGES AND AGREES THAT,**

-29-

2949827.2

EXCEPT AS PROVIDED HEREIN, (A) ANY TITLE, ENVIRONMENTAL, ENGINEERING, SALES, FINANCIAL OR OTHER REPORT WITH RESPECT TO THE ASSETS WHICH IS DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER SHALL BE FOR GENERAL INFORMATIONAL PURPOSES ONLY, (B) EXCEPT WITH RESPECT TO THE "RELIANCE LETTER" REFERRED TO IN SECTION 1.16, BUYER SHALL NOT HAVE ANY RIGHT TO RELY ON ANY SUCH REPORT DELIVERED BY SELLER OR ANY AFFILIATE TO BUYER, BUT RATHER WILL RELY ON ITS OWN INVESTIGATIONS AND ANY REPORTS COMMISSIONED BY BUYER WITH RESPECT THERETO, AND (C) EXCEPT WITH RESPECT TO THE "RELIANCE LETTER" REFERRED TO IN SECTION 1.15, NEITHER SELLER, ANY AFFILIATE OF SELLER NOR THE PERSON WHICH PREPARED ANY SUCH REPORT DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER SHALL HAVE ANY LIABILITY TO BUYER FOR ANY INACCURACY IN OR OMISSION FROM ANY SUCH REPORT.

22.2. **DISCLAIMERS.** EXCEPT FOR THE CONTRACT WARRANTIES, BUYER UNDERSTANDS AND AGREES THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESSED OR IMPLIED, WITH RESPECT TO THE ASSETS, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ASSETS WITH LAWS, THE ABSENCE OR PRESENCE OF HAZARDOUS MATERIALS OR OTHER TOXIC SUBSTANCES (INCLUDING WITHOUT LIMITATION MOLD OR ANY MOLD CONDITION), COMPLIANCE WITH ENVIRONMENTAL LAWS, THE TRUTH, ACCURACY OR COMPLETENESS OF ANY DOCUMENTS, MATERIALS, REPORTS OR OTHER INFORMATION PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE TO BUYER, OR ANY OTHER MATTER OR THING REGARDING THE ASSETS. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE ASSETS "<u>AS IS, WHERE IS, WITH ALL FAULTS</u>". BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND NEITHER SELLER NOR ANY AFFILIATE IS LIABLE FOR OR BOUND BY, ANY EXPRESSED OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE ASSETS OR RELATING THERETO PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF

2949827.2

SELLER OR ANY AFFILIATE, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER OR ANY AFFILIATE, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE, OTHER THAN THE CONTRACT WARRANTIES.

BUYER ACKNOWLEDGES THAT BUYER'S ACCESS AND INSPECTION RIGHTS HAVE BEEN LIMITED AS SET FORTH IN THIS AGREEMENT AND THAT BUYER UNDERSTANDS THE RISKS ASSOCIATED WITH PURCHASING THE ASSETS ON THE BASIS OF SUCH LIMITED INVESTIGATIONS. BUYER REPRESENTS TO SELLER THAT NOTWITHSTANDING SUCH LIMITATIONS BUYER HAS CONDUCTED SUCH INVESTIGATIONS AS BUYER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE ASSETS AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS MATERIALS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE ASSETS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION), AND, EXCEPT AS PROVIDED HEREIN, WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AFFILIATES, AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN THE CONTRACT WARRANTIES. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, UPON CLOSING, BUYER SHALL ASSUME THE RISK THAT ADVERSE MATTERS, INCLUDING BUT NOT LIMITED TO, CONSTRUCTION DEFECTS AND ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY BUYER'S INVESTIGATIONS, AND BUYER, UPON CLOSING, SHALL BE DEEMED TO HAVE WAIVED, RELINQUISHED AND RELEASED SELLER AND SELLER'S AFFILIATES (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS AND EMPLOYEES) FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING CAUSES OF ACTION IN TORT OR UNDER ANY ENVIRONMENTAL LAW), LOSSES, DAMAGES, LIABILITIES (WHETHER BASED ON STRICT LIABILITY OR OTHERWISE), LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS) OF ANY AND EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, WHICH BUYER MIGHT HAVE ASSERTED OR ALLEGED AGAINST SELLER AND SELLER'S AFFILIATES (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS AND EMPLOYEES) AT ANY TIME BY REASON OF OR ARISING OUT OF ANY LATENT OR PATENT CONSTRUCTION DEFECTS OR PHYSICAL CONDITIONS, VIOLATIONS OF ANY APPLICABLE LAWS (INCLUDING, WITHOUT LIMITATION, ANY ENVIRONMENTAL

2949827.2

LAWS) AND ANY AND ALL OTHER ACTS, OMISSIONS, EVENTS, CIRCUMSTANCES OR MATTERS REGARDING THE ASSETS.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, BUYER FURTHER ACKNOWLEDGES THAT (1) THE CONTRACT WARRANTIES SHALL NOT SURVIVE CLOSING BUT SHALL MERGE INTO THE CONVEYANCE INSTRUMENT, AND SHALL HAVE NO FURTHER FORCE OR EFFECT AFTER CLOSING AND (2) THE LIABILITY OF SELLER UNDER OR WITH RESPECT TO THE CONTRACT WARRANTIES SHALL BE LIMITED TO THE EXPRESS REMEDIES OF BUYER SET FORTH IN THIS AGREEMENT.

BUYER REPRESENTS AND WARRANTS THAT THE TERMS OF THE DISCLAIMERS, WAIVERS AND RELEASES CONTAINED HEREIN AND THEIR CONSEQUENCES HAVE BEEN COMPLETELY READ AND UNDERSTOOD BY BUYER, AND BUYER HAS HAD THE OPPORTUNITY TO CONSULT WITH, AND HAS CONSULTED WITH, LEGAL COUNSEL OF BUYER'S CHOICE WITH REGARD TO THE TERMS OF SUCH DISCLAIMERS, WAIVERS AND RELEASES. BUYER ACKNOWLEDGES AND WARRANTS THAT BUYER'S EXECUTION OF THESE DISCLAIMERS, WAIVERS AND RELEASES IS FREE AND VOLUNTARY.

22.3.  Effect and Survival of Disclaimers. Seller and Buyer acknowledge that the provisions of this paragraph 22 are an integral part of the transactions contemplated in this Agreement and a material inducement to Seller to enter into this Agreement and that Seller would not enter into this Agreement but for the provisions of this paragraph 22. Seller and Buyer agree that the provisions of this paragraph 22 shall survive Closing or any termination of this Agreement.

[Signature page follows]

-32-

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**SELLER:**

**WINN-DIXIE STORES, INC.**, a Florida corporation

By:_____
    Name:_____
    Title:_____


**BUYER:**

**WAL-MART STORES, INC.**, a Delaware corporation

By:_____
    Name: Robert Bray
    Title:  Vice President, Real Estate


STATE OF FLORIDA            )
                            )
COUNTY OF DUVAL             )

      The foregoing instrument was acknowledged before me by _____ of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation, who is personally known to me and who did not take an oath.

      Given under my hand and official seal this ___ day of _____, 2005.


_____
Notary Public

My commission expires:_____


Approved as to legal terms only
by _____
WAL-MART LEGAL DEPT.
Date: 8-1-05

-33-

STATE OF ARKANSAS            )
                             )
COUNTY OF BENTON             )

      The foregoing instrument was acknowledged before me by _Robert Bray_, _____ _Vice President_ of WAL-MART STORES, INC., a Delaware corporation, on behalf of the corporation, who is personally known to me and who did not take an oath.

      Given under my hand and official seal this 2nd day of _August_, 2005.

         _____
         Notary Public

My commission expires: _01/01/10_

DARRELL D. BARNES
NOTARY PUBLIC
BENTON COUNTY
My Comm. Exp. 01-01-10
STATE OF ARKANSAS

-34-

2949827.2

Acknowledged and agreed this ___ day of_____, 2005 for the limited purposes set forth in paragraph 18 of this Agreement:

**ESCROW AGENT:**

_____

By:_____
Name:_____
Title:_____

Store Number
206

## LIST OF EXHIBITS

Exhibit A-1    -    List of Stores

Exhibit A-2    -    Description of Lease and Leased Premises

Exhibit A-3    -    List of Documents Binding on Buyer

Exhibit B    -    Form of Bill of Sale

Exhibit C    -    Form of Closing Statement

Exhibit D    -    Permitted Encumbrances

Exhibit E    -    Form of Sale Order

Exhibit F    -    Form of Conveyance Instrument

EXHIBIT A-1

To Asset Purchase Agreement

List of Stores

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 206 | 10635 West Atlantic Boulevard | Coral Springs | Broward | FL |

EXHIBIT A-2

TO ASSET PURCHASE AGREEMENT

<u>DESCRIPTION OF LEASES AND RELATED LAND</u>

## WINN-DIXIE STORE # **206** - Coral Springs, Florida

Lease:         Lease dated February 18, 1988 between National RE/Sources Cypress Run, L.P. (successor in interest to Florida National Properties, Inc.), as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

as evidenced by Memorandum of Lease dated May 9, 1988, recorded in Book 15632, Page 0100, of the public records of Broward County, Florida, amended and restated by Amended and Restated Short Form Lease, dated November 15, 1999, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc., recorded in Book 30139, Page 1306, further amended and restated by Second Amended and Restated Short Form Lease, dated August 20, 2001, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Amendments    Assignment of Lease dated June 20, 1988, from Florida National Properties, Inc. to Cypress Run Square, Inc. recorded in Book 15680, Page 0151, of the public records of Broward County, Florida

Supplemental Lease Agreement, dated August 22, 1989, between Cypress Run Square, Inc. and Winn-Dixie Stores, Inc.

Letter Agreement, dated September 1, 1992, between Cypress Run Square, Inc. and Winn-Dixie Stores, Inc.

First Amendment to Lease, dated November 15, 1999 between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Second Amendment to Lease, dated February 2, 2001, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Third Amendment to Lease, dated August 20, 2001, Amended and Restated Short Form Lease, dated November 15, 1999, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Termination of Declaration of Restrictions and Protective Covenants for Cypress Run Square, dated March 31, 2003, by Sansone-Scenic & Republic, LLC

Premises:    That certain store building and related improvements located at 10635 W. Atlantic Boulevard, Coral Springs, Broward County, Florida

Legal Description:       The real property as more particularly described as follows:
                         SEE ATTACHED LEGAL DESCRIPTION

Exhibit "A"

The South 65.00 feet of Parcel "LL" and all of Parcel "MM" of CYPRESS RUN, according to the Plat thereof recorded in Plat Book 93, Page 16 of the Public Records of Broward County, Florida.

LESS that portion of said Parcel "MM" described in Official Records Book 9361, Page 948, of said Public Records.

ALSO LESS that portion of said Parcel "MM" described in Official Records Book 9070, Page 477, of said Public Records.

ALSO LESS those portions of said Parcel "MM" and that portion of said Parcel "LL" described in Official Records Book 18157, Page 470, of said Public Records.

EXHIBIT A-3
TO ASSET PURCHASE AGREEMENT

LIST OF DOCUMENTS BINDING ON BUYER

WINN-DIXIE STORE # **206**
Coral Springs, Florida

Lease:            Lease dated February 18, 1988 between National RE/Sources Cypress Run, L.P. (successor in interest to Florida National Properties, Inc.), as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

                  as evidenced by Memorandum of Lease dated May 9, 1988, recorded in Book 15632, Page 0100, of the public records of Broward County, Florida, amended and restated by Amended and Restated Short Form Lease, dated November 15, 1999, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc., recorded in Book 30139, Page 1306, further amended and restated by Second Amended and Restated Short Form Lease, dated August 20, 2001, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Amendments   Assignment of Lease dated June 20, 1988, from Florida National Properties, Inc. to Cypress Run Square, Inc. recorded in Book 15680, Page 0151, of the public records of Broward County, Florida

                  Supplemental Lease Agreement, dated August 22, 1989, between Cypress Run Square, Inc. and Winn-Dixie Stores, Inc.

                  Letter Agreement, dated September 1, 1992, between Cypress Run Square, Inc. and Winn-Dixie Stores, Inc.

                  First Amendment to Lease, dated November 15, 1999 between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

                  Second Amendment to Lease, dated February 2, 2001, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

                  Third Amendment to Lease, dated August 20, 2001, Amended and Restated Short Form Lease, dated November 15, 1999, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

                  Termination of Declaration of Restrictions and Protective Covenants for Cypress Run Square, dated March 31, 2003, by Sansone-Scenic & Republic, LLC

EXHIBIT B

To Asset Purchase Agreement

Form of Bill of Sale

## BILL OF SALE

**WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2005, among **WAL-MART STORES, INC.** a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of the Agreement (hereinafter defined) ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Lease or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store location as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2005.

"SELLER"

**WINN-DIXIE STORES, INC.**, a Florida corporation

By:

Name:_____

Title: _____

<u>**EXHIBIT C**</u>

**To**

**Asset Purchase Agreement**

<u>**FORM OF CLOSING STATEMENT**</u>

<u>**CLOSING STATEMENT SUMMARY**</u>

| | |
|---|---|
| **BUYER:** | Wal-Mart Stores, Inc., a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of this Agreement |
| **SELLER:** | Winn-Dixie Stores, Inc., a Florida corporation |
| **ESCROW AGENT and SETTLEMENT AGENT:** | _____ |
| **PROPERTY** | Store No. 206 |
| **CLOSING DATE:** | _____, 2005 |

<u>**SELLER'S STATEMENT**</u>

**I.    PURCHASE PRICE:**

      Leasehold:                                                                      $_____

      FF&E:                                                                             $_____

      TOTAL PURCHASE PRICE:                                      $_____

**II.**                                                                                              $_____

**III.**                                                                                             $_____

**A.    NET CREDIT/DEBIT TO SELLER:**       ($_____)       or $_____

**B.    TOTAL CLOSING COSTS PAYABLE       ($_____)
       BY SELLER:**

**AMOUNT DUE SELLER**                                                        $_____

## BUYER'S STATEMENT

| | | | | |
|---|---|---|---|---|
| **I.** | **TOTAL PURCHASE PRICE:** | | $ _____ | |
| **A.** | **NET CREDIT/DEBIT TO BUYER:** | ($ _____) | or $ _____ | |
| **B.** | **TOTAL CLOSING COSTS PAYABLE BY BUYER:** | ($ _____) | | |
| **C** | **DEPOSIT** | ($ _____) | | |
| | **AMOUNT DUE FROM BUYER** | | $ _____ | |

### TOTAL DISBURSEMENTS[1]

| | | |
|---|---|---|
| 1. | Deposit from Escrow Agent | $ _____ |
| 2. | Amount Due From Buyer | $ _____ |
| **TOTAL RECEIPTS:** | | $ _____ |
| 1. | Seller's Brokers Fees | ($ _____) |
| 2. | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($ _____) |
| 3. | Seller's Cure Costs | ($ _____) |
| 4. | Seller's Proceeds | _____ |
| [5.] | [Other] | ($ _____) |
| **TOTAL DISBURSEMENTS:** | | |

### STIPULATIONS

1. <u>Purchase Agreement</u>.  This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement").  Attached hereto is an individual itemized closing statement for the Property covered by the Purchase Agreement.

2. <u>Authorization to Disburse</u>.  By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____
_____
_____
_____

_____

[1] Refer to Individual Property Closing Statement for Itemization.

3. <u>Counterparts</u>. This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                             **BUYER:**

**WINN-DIXIE STORES, INC.,**              **WAL-MART STORES, INC.,** a Delaware
a Florida corporation                              corporation

By: _____        By:_____
Name: _____      Name:
Title: Vice President                              Title:

## INDIVIDUAL PROPERTY CLOSING STATEMENT

| | |
|---|---|
| **BUYER:** | Wal-Mart Stores, Inc., a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of this Agreement |
| **SELLER:** | Winn-Dixie Stores, Inc., a Florida corporation |
| **ESCROW AGENT and** | _____ |
| **SETTLEMENT AGENT:** | |
| **Property:** | Store No. 206 |
| **CLOSING DATE:** | _____, 2005 |

### SELLER'S STATEMENT

**ALLOCATED BASE PURCHASE PRICE:**

$_____

Leasehold and Improvements:

$_____

TOTAL PURCHASE PRICE:

**Less Adjustments (Debit):**

$_____

Seller's Prorated Share of Taxes and
Other Charges Payable Under Lease (1)

$_____

Buyer's Prorated Share of Rents Paid in
Advance

$_____

**Total Debit Adjustments:**

$_____

**Plus Adjustments (Credit):**

$_____

Seller's Prorated Share of Rents and Other
Charges Paid in Advance Under Lease (3)

$_____

Environmental Assessment Costs Paid by
Seller

$_____

[Other]

$_____

**Total Credit Adjustments:**

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs                    $_____

Seller's Brokerage Fees                             $_____

Cure Costs                                          $_____

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER**                                                 $_____

## BUYER'S STATEMENT

**ALLOCATED PURCHASE PRICE:**         $_____

**Less Adjustments (Credit):**

Allocated Amount of Deposit                                              $_____

Seller's Prorated Share of Rents and Other
Charges Paid in Advance Under Lease (1)                                  $_____

[Other]                                                                  $_____

**Total Debit Adjustments:**

                                                                         $_____

**Plus Adjustments (Debit):**
Seller's Prorated Share of Rents and Other         $_____
Charges Paid in Advance Under Lease (3)

Environmental Assessment Costs Paid by             $_____
Seller

[Other]                                            $_____

                                                                         $_____
**Total Credit Adjustments:**

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs                    $_____

Title Insurance Premiums(4)                        $_____

Title Examination Fees                         $_____

Transfer/Documentary Taxes                     $_____

Buyer's Brokerage Fees                         $_____

Closing Escrow Fees                            $_____

**Total Buyer's Closing Costs:**               $_____

**AMOUNT DUE FROM BUYER**                                    $_____

**ALLOCATED AMOUNT OF BASE
DEPOSIT**                                                    $_____

**TOTAL AMOUNT DUE AT
CLOSING**                                                    $_____

## SCHEDULE OF DISBURSEMENTS

| | | |
|---|---|---|
| 1. | Allocated Amount of Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | The Blackstone Group L.P. (Seller's Brokers Fees) | ($_____) |
| 2. | The Food Partners, LLC (Seller's Brokers Fees) | ($_____) |
| 3. | DJM Asset Management, LLC (Seller's Brokers Fees) | ($_____) |
| 4. | Title Insurance Company Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($_____) |
| 5. | _____ Transfer/Documentary Taxes | |
| 6. | **[Name of Inventory Service]** (Inventory Service Fees) | ($_____) |
| 7. | _____ (Lease Cure Costs, if any) | ($_____) |

9.  Seller                                           ($_____)  _____
    (Seller's Proceeds)                                          _____
[10.]  [Other]                                       ($_____)

**TOTAL DISBURSEMENTS:**
**Notes:**

(1)  <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>.  Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease.  Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

Store #206
- 2005 Real Estate Taxes                             $
- Per Diem Tax Amount                                $
- Seller's Share of 2005 Taxes
   (1/1/05 - __/__/05) (_____ days)                  $_____          _____
**Total Real Estate Taxes:**

**Personal Property Taxes**

Store #206
- 2005 Personal Property Taxes                       $
- Per Diem Tax Amount                                $
- Seller's Share of 2005 Taxes
   (1/1/05 - __/__/05) (_____ days)                  $_____          _____
**Total Personal Property Taxes:**

**CAM Charges**

Store #206
- 2005 CAM Charges                                   $
- Per Diem Amount                                    $
- Seller's Share of 2005 CAM Charges
   (__/__/__ - __/__/05) (_____ days)                $_____          _____
**Total CAM Charges:**

**Insurance**

Store #206
- 2005 Insurance                                     $
- Per Diem Amount                                    $
- Seller's Share of 2005 Insurance
   (__/__/__ - __/__/05) (_____ days)                $_____          _____
**Total Insurance:**

**Total Amount of Seller's Prorated Share of 2005 Prorations:** _____

Store #206
- Total _____, 2005 rent paid:                    $
- Per diem rent:                                        $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)                   $ _____

**Total Amount of Seller's Prorated Share of _____ Prorations:**

(2)      _____, 2005 Prorations - Amounts Previously Paid by Seller.  Prorations
         are based on _____, 2005 rents, common area maintenance assessments
         and other charges previously paid by Seller in accordance with Lease.  Buyer
         will be responsible for the payment of such charges that become due and
         payable for _____, 2005 and thereafter.  Prorations are as follows:

**Rent**

Store #206
- Total _____, 2005 rent paid:                    $
- Per diem rent:                                        $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)                   $ _____
- Per diem rent:                                        $
- Buyer's prorated share
  (__/__/__ - __/__/05) (_____ days)                   $ _____   _____

**Total Amount of Buyer's Prorated Share of _____ Prorations:**

(4)      Title Premiums and Expenses.  Title insurance fees and costs, including title
         examination fees and title insurance premiums, are as follows:

Store #206
- Title Search Fees and Costs                           $              -
- Title Premium                                         $ _____ -

   **Total Amount of Title Fees and Expenses:**

(5)    Utility Deposits and Charges. All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof. The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor. Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6)    Adjustments. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(9)    Capitalized Terms.  Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

EXHIBIT D

To Asset Purchase Agreement

**Permitted Encumbrances**

1. Taxes and assessments of any taxing authority that are attributable to any period following Closing.

2. All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3. Rights of Landlord under the Lease, including the rights of the Landlord's mortgagee.

4. All matters set forth as exceptions in the Initial Title Report or that certain site plan, dated May 13, 1988, prepared by Vander Ploeg & Associates, Inc., other than Monetary Liens.

5. All other matters set forth as exceptions in those Title Reports other than the Initial Title Report, other than Monetary Liens.

EXHIBIT E

FORM OF SALE ORDER

**UNITED STATES BANKRUPTCY COURT**

**MIDDLE DISTRICT OF FLORIDA**

**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ORDER APPROVING DEBTORS' (A) SALE OF ASSETS**

**FREE AND CLEAR OF LIENS, (B) ASSUMPTION AND**

**ASSIGNMENT OF LEASE AND (C) RELATED RELIEF**

This matter came before the Court on August 26, 2005 on the motion, dated August 1, 2005, of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C.

§§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 (a) authorizing the Debtors to sell certain leasehold interests, including the assets described in the asset purchase agreement attached as Exhibit A (the "Purchase Agreement") between Winn-Dixie Stores, Inc. and Wal-Mart Stores, Inc. (the "Purchaser"), free and clear of liens, claims, interests and encumbrances, (b) determining that any such sale is exempt from any stamp, transfer, recording or similar tax, (c) authorizing the Debtors to assume and assign various unexpired leases, including the lease identified in the Purchase Agreement (the "Lease") in connection with such sale, (d) fixing cure amounts and (e) granting related relief (the "Motion").  The Court held a hearing on the Motion on August 26, 2005 to approve the Sale (the "Sale Hearing").  **Alternatives, depending on the circumstance:** [The Court has reviewed the Motion and heard the representations of counsel.  Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:] **or** [The Court has reviewed the Motion, [considered the evidence] and heard argument of counsel.  After due deliberation and good and sufficient cause existing, the Court makes the following findings of fact:]

A.    This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B.    The Debtors solicited the highest or otherwise best offer for the assets described in the Purchase Agreement (the "Assets"), in accordance with bidding procedures (the "Bidding Procedures") approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures Order").  Competing bids were received for the Assets, and the Debtors conducted an auction for the Assets on August 9, 2005 (the "Auction").  At the Auction,