[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 11 2002
THOMAS K. KAHN
CLERK

No. 02-11045
Non-Argument Calendar

D.C. Docket Nos. 01-00496-CV-1-WDO-5
01-52544-BKC-RF

In Re: THOMASTON MILLS, INC.,

　　　　　　　　　　　　　　　　　　　　　　　　　　Debtor.

---

TRIZECHAHN 1065 AVENUE OF THE AMERICAS, LLC,

　　　　　　　　　　　　　　　　　　　　　　　　　　Plaintiff-Appellant,

versus

THOMASTON MILLS, INC.,

　　　　　　　　　　　　　　　　　　　　　　　　　　Defendant-Appellee.

---

Appeal from the United States District Court
for the Middle District of Georgia

---

(July 11, 2002)

Before CARNES, HULL, and MARCUS, Circuit Judges.

PER CURIAM:

EXHIBIT "A"

Appellant, Trizechahn 1065 Avenue of the Americas, LLC ("Trizechahn"), challenges the district court's order reversing the bankruptcy court's denial of Trizechahn's request for payment of post-petition rent as an administrative expense in this Chapter 11 bankruptcy action. Trizechahn argues that the bankruptcy court correctly found that the debtor, Thomaston Mills, Inc. ("Thomaston"), was required to pay, as an administrative expense, post-petition rent for the use and occupation of non-residential property through the date the debtor surrendered possession of the premises.

Because the district court in reviewing the decision of a bankruptcy court functions as an appellate court, we are the second appellate court to consider this case. As a general rule, "[t]his Court's standard of review with regard to determinations of law, whether made by the bankruptcy court or by the district court, is de novo." Equitable Life Assurance Soc'y v. Sublett (In re Sublett), 895 F.2d 1381, 1383 (11th Cir. 1990). Because the district court, acting as an appellate court, makes no factual findings, our review of its decision is entirely de novo. See id. at 1384. We review the bankruptcy court's factual determinations for clear error. See In re Fretz, 244 F.3d 1323, 1326 (11th Cir. 2001).

Upon thorough review of the record, as well as careful consideration of the parties' briefs, we affirm in part and reverse in part the district court's decision.

2

The relevant facts are undisputed. On June 19, 2001, Thomaston filed its Chapter 11 bankruptcy petition. At that time, Thomaston was a party to a lease with Trizechahn for 24,216 square feet of commercial space located at 111 West 40th Street a/k/a 1065 Avenue of the Americas, Suite 700, New York, New York. Thomaston's monthly rent on the space was $63,358.23, which included an electricity charge and an operating expense installment. On July 31, 2001, Thomaston filed a Motion for an Order Authorizing Rejection of the Lease, which was granted on August 22, 2001. Thereafter, Thomaston pro-rated its rent for August, paying rent and real estate taxes through only August 22, 2001. Notably, Thomaston did not vacate the premises and turn over the keys until approximately September 25, 2001.

Prior to Thomaston's surrender of the premises, on September 25, 2001, Trizechahn filed a Motion for Allowance of Chapter 11 Administrative Expenses and a Proof of Claim, arguing that Thomaston was obligated to pay rent for the period of time between the rejection of the lease on August 22, 2001 and the date of Trizechahn's motion. Trizechahn highlighted that Thomaston remained in possession of the premises. On that same day, Tom Lester, a Thomaston employee, surrendered the premises and turned in the keys to Trizechahn.

Thereafter, on October 24, 2001, the bankruptcy court conducted a hearing on Trizechahn's motion. The bankruptcy court denied the motion, holding that § 365(d)

3

of the Bankruptcy Code did not apply where the Debtor's lease was rejected by court order. The bankruptcy court determined that Thomaston's continued use of the premises was for the sole purpose of winding up its affairs and it accordingly did not receive any benefit from maintaining the premises.

On appeal, the district court reversed the bankruptcy court's order, concluding that, as a matter of law, the plain language of § 365(d)(3) obligated Thomaston to pay its full rent obligations for the months of August and September. This appeal followed.

Pursuant to 11 U.S.C. § 365, which concerns a bankruptcy trustee's administrative powers as to executory contracts and unexpired leases,

> (2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.
>
> (3) The trustee shall timely perform all the obligations of the debtor, . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, <u>until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title</u>. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. . . .

4

11 U.S.C. § 365(d) (emphasis added). Section 503(b) provides the following, in pertinent part:

> After notice and a hearing, there shall be allowed, administrative expenses . . . including--
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b)(1)(A). Section 503(b) further provides that the administrative expenses that shall be allowed include "any tax . . . incurred by the estate." Id. at § 503(b)(1)(B)(i).

The district court noted that § 503(b)(1)'s "actual and necessary" requirement for administrative expenses did not apply in this case since, pursuant to the plain language of § 365(d)(3), the Trustee's obligation to pay § 365(d) expenses specifically encompasses the obligation to pay § 503(b)(1) expenses. The district court's plain language interpretation comports with the interpretations of every circuit to have considered the issue. See, e.g., In re Koenig Sporting Goods, Inc., 203 F.3d 986, 989 n.2 (6th Cir. 2000) ("A debtor's obligation under § 365(d)(3) should not be analyzed by reference to the principles governing administrative claims under § 503(b)(1)."); In re Handy Andy Home Improvement Ctrs., Inc., 144 F.3d 1125, 1128 (7th Cir. 1998) ("To give relief to landlords, Congress passed section 365(d)(3), which takes them out from under the 'actual, necessary' provision of 503(b)(1).").

Moreover, since the lease was not rejected as of August 1, 2001, we agree with the district court's conclusion that Thomaston cannot prorate its rent for the month of August. Thomaston's obligation to pay monthly rent arose on the first of the month, when its rent was due to Trizechahn. See 11 U.S.C. § 365(d)(3); Koenig Sporting Goods, 203 F.3d at 988 ("[S]ection 365(d)(3) was, at the least, intended to assure the landlord payment of ordinary monthly rent payments which become due during the postpetition prerejection period. Since Congress was no doubt well aware that rent[ ] is usually paid monthly in advance, it is not really possible to reconcile section 365(d)(3) with according the Debtor the option not to pay its monthly rent when due, even though payment would impinge to some extent upon normal bankruptcy principles and priorities."). Because Thomaston's obligation to pay the August rent <u>preceded</u> the rejection of the lease, we can find no error in the district court's decision on Thomaston's August rent liability under § 365(d)(3).

We reach a different conclusion as to the post-rejection holdover rent due for September. Because, as the bankruptcy court found, Thomaston effectively rejected Trizechahn's lease on August 22, 2001, § 365(d)(3) does not control the issue of rent due to Trizechahn for the post-rejection period during which Thomaston continued to occupy the premises. By its plain language, § 365(d)(3) does not apply post-rejection. "Once the lease is rejected, the contractual terms of the lease no

longer obligate a debtor. . . . [Instead,] § 503(b)(1)(A) governs the determination of post-petition rent owed to a lessor for the period after rejection of the lease until the property is vacated." In re Roberds, Inc., 270 B.R. 702, 704, 706 (Bankr. S.D. Ohio 2001) (citing Koenig Sporting Goods, 203 F.3d at 989). Accordingly, Trizechahn is entitled to only an administrative rent claim under § 503(b)(1)(A) for the 25-day period of September 2001, during which period, as Thomaston concedes, the debtor continued to occupy the premises. We remand to the district court for a calculation, pursuant to § 503(b), of the amount due for this period in September.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**