**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

**MOTION FOR AN ORDER (I) AUTHORIZING THE
DEBTORS (A) TO RETAIN LIQUIDATING AGENT AND
APPROVING AGENCY AGREEMENTS SUBJECT TO HIGHER
AND BETTER OFFERS, AND (B) TO SELL FURNITURE, FIXTURES
AND EQUIPMENT LOCATED AT THE FITZGERALD AND ASTOR
FACILITIES FREE AND CLEAR OF LIENS, CLAIMS AND
INTERESTS AND EXEMPT FROM STAMP OR SIMILAR
TAXES AND (II) GRANTING RELATED RELIEF**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), file this motion for entry of an order pursuant to 11 U.S.C. §§ 105, 363, and 1146 and 6004 of the Federal Rules of Bankruptcy Procedure (i) authorizing the Debtors (A)  to retain liquidating agent and approving agency agreements, subject to higher or better offers and (B) to sell furniture, fixtures and equipment used in the production of a condiment line at their facility in Fitzgerald, Georgia and in their production of a spice and coffee line at their facility in Jacksonville, Florida (collectively, the "Equipment"), free and clear of liens, claims and interests

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are Debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

and exempt from any stamp or similar tax, and (ii) granting related relief (the "Motion").  In support of the Motion, the Debtors respectfully represent:

**Background**

1.     On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Court").  By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.

2.     The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") to serve in these cases pursuant to Bankruptcy Code Sections 1102 and 1103.

3.     The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.

4.     The Debtors operate a facility in Fitzgerald, Georgia that produces (through Deep South Products, Inc.) their "Chek" brand of carbonated sodas and their "Arizona Tea" line, as well as a line of condiments such as peanut butter, mayonnaise, syrup, ketchup and jelly, which the Debtors sell in their stores (the "Fitzgerald Facility").  The Debtors also operate a facility in

Jacksonville, Florida which produces (through Astor Products, Inc.) a line of spices and coffee products the Debtors sell in their stores (the "Astor Facility," and together with the Fitzgerald Facility, the "Facilities"). The Astor Facility is physically connected to the Debtors' headquarters. The Debtors lease the Fitzgerald Facility from ZSF/WD Fitzgerald, LLC. The Debtors lease the Astor Facility from ZSF/WD Jacksonville, LLC.

5.     Prior to the Petition Date, the Debtors and their financial advisors began a comprehensive analysis of the Debtors' businesses to determine how best to maximize their value and to compete in today's marketplace. In connection with this analysis, the Debtors announced a series of actions designed to improve their competitive position, which the Debtors refer to as their Strategic Plan. The Strategic Plan includes an effort to reduce the Debtors' annual expenses by over $100 million.

6.     In connection with the Strategic Plan, the Debtors have decided to sell their leasehold interests in the Fitzgerald Facility as well as their beverage production operations. The Debtors have also decided to cease production of their condiment line at the Fitzgerald Facility and their spice and coffee line at the Astor Facility because the Debtors are able to purchase these products from third parties for less than what it costs the Debtors to produce the products. Because the Debtors have decided to cease production of their condiment, spice and coffee lines, the Debtors no longer need the Equipment. The Debtors need to sell the Equipment to maximize value for their estates and with respect to the Equipment in the Fitzgerald Facility, they need to do so promptly so that any purchaser of the beverage operations and leasehold interests may begin their own operations.

7.     The Debtors have marketed the Equipment and believe they may sell it either through a liquidator, who will conduct liquidation and auction sales at one or both of the

Facilities, or directly to a strategic purchaser who will buy all of the Equipment at one or both of the Facilities and remove the Equipment promptly.  The Debtors have entered into stalking horse agreements (subject to higher or better bids) with a liquidating agent—a joint venture group consisting of The Gordon Company, Inc., NREL, Inc., Bradford Industrial Group, LLC, Vision Equipment and Auction Company, Inc. and Rabin Worldwide, Inc. (collectively, the "Gordon Group"), who will sell the Equipment under the attached agency agreements--one for the Fitzgerald Facility and one for the Astor Facility (collectively, the "Agency Agreements")[2] which are attached as Exhibit A and B, respectively.  The Debtors will conduct an auction on September 20, 2005 in Jacksonville, Florida, at the offices of Smith Hulsey & Busey (the "Auction") pursuant to the auction procedures approved by the Court on June 20, 2005 (Docket No. 1801) (the "Bidding Order").  At the conclusion of the Auction and after consulting with counsel for the Creditors' Committee and counsel for the DIP Lender, the Debtors and their financial advisors will choose the highest or best bid for each or both Facilities (the "Successful Bid").  If the Successful Bid for either or both Facilities is that of the Gordon Group or another liquidating agent, the Debtors will seek an order of the Court approving the attached Agency Agreements, amended as necessary to reflect the terms of the Successful Bid.  In the event a strategic purchaser submits the Successful Bid for either or both Facilities, the Debtors will seek authority to sell the Equipment directly to the purchaser.

        8.      Pursuant to and in accordance with the Bidding Order, the Debtors have agreed to pay the Gordon Group a termination fee in the amount of $15,000 in the event the Gordon Group is not the successful bidder at the Auction for the Equipment at the Astor Facility and $25,000 in

---

[2] Capitalized terms used but not defined in this Motion shall have the meanings ascribed to such terms in the Agency Agreements.

the event the Gordon Group is not the successful bidder at the Auction for the Equipment at the Fitzgerald Facility.

## **Relief Requested**

9.      By this Motion, the Debtors seek authority to sell the Equipment either through the Gordon Group (or another liquidating agent) or directly to a strategic purchaser who will buy all of the Equipment at one or both of the Facilities.  In either event, the Debtors seek to sell the Equipment free and clear of liens, claims and interests pursuant to section 363 of the Bankruptcy Code and exempt from stamp or similar tax pursuant to section 1146(c) of the Bankruptcy Code.

10.     In the event the Gordon Group or another liquidating agent submits the Successful Bid, the Debtors seek to retain the Gordon Group or such other liquidating agent under the Agency Agreements (revised as necessary to reflect the Successful Bid).   The Agency Agreements relating to the Fitzgerald Facility and Astor Facility are substantially similar except for their monetary terms.  The following is a summary of the material terms of the Agency Agreements: [3]

A.      Payments to the Debtors and Agent – Fitzgerald Facility.  The Agent guarantees and pays up front a minimum amount to Winn-Dixie Stores, Inc. ("Winn-Dixie") of $900,000 for the Equipment at the Fitzgerald Facility (the "Fitzgerald Equipment").  The Proceeds (as defined in the Agency Agreement) generated by the sales of the Fitzgerald Equipment shall be paid as follows:  (i) the Proceeds up to and including $900,000 shall be paid to the Agent; (ii) the next $50,000 of Proceeds shall be paid to Winn-Dixie; (iii) the next $50,000 of Proceeds shall be shared 75% by Winn-Dixie and 25% by the Agent; (iv) the next $50,000 of Proceeds shall be shared 65% to Winn-Dixie and 35% to the Agent; (v) the next $50,000 of Proceeds shall be shared 55% to Winn-Dixie and 45% to the Agent and (vi) all Proceeds in excess of $1,100,000 shall be shared 50% by Winn-Dixie and 50% by the Agent.

B.      Payments to Debtors and Agent – Astor Facility.  The Agent guarantees and pays up front a minimum amount to Winn-Dixie of $575,000 for the Equipment at

---

[3] This summary of the Agency Agreements is provided as a convenience only.  To the extent that this summary differs in any way from the terms of the Agency Agreements, the terms of the Agency Agreements control.

the Astor Facility (the "Astor Equipment").  The Proceeds generated by sales of the Astor Equipment shall be paid as follows:  (i) the Proceeds up to and including $575,000 shall be paid to the Agent; (ii) the next $50,000 of Proceeds shall be paid to Winn-Dixie; (iii) the next $50,000 of Proceeds shall be shared 75% by Winn-Dixie and 25% by the Agent; (iv) the next $50,000 of Proceeds shall be shared 65% to Winn-Dixie and 35% to the Agent; (v) the next $50,000 of Proceeds shall be shared 55% to Winn-Dixie and 45% to the Agent; and (vi) all Proceeds in excess of $775,000 shall be shared 50% by  Winn-Dixie and 50% by the Agent.

C.    Buyer's Premium.  The Agent shall retain the entire amount of any premium added to the successful bid received from purchasers of Equipment in an amount not to exceed ten percent (10%) of such successful bid and which shall be paid by the purchasers of the Equipment.  This buyer's premium is not included in determining Proceeds to be distributed to Winn-Dixie under subparagraphs A and B above.

D.    Final Reconciliation.  Within thirty days after the Sale Termination Date, the Agent and Winn-Dixie will jointly prepare a final reconciliation including, without limitation, a summary of Proceeds, Additional Return (as defined in the Agency Agreements) and any other accountings required (the "Final Reconciliation").  Within five days of completion of the Final Reconciliation, any undisputed and unpaid Additional Return will be paid by the Agent to Winn-Dixie.

E.    Expenses of the Sale.  All Expenses will be borne by the Agent as set forth in Section 4.1 of the Agency Agreements.  All Company Expenses shall be borne by Winn-Dixie as set forth in Section 4.2 of the Agency Agreements.

F.    Equipment Subject to the Agency Agreements.  The Equipment includes, without limitation, everything identified on Exhibit 1 to each of the Agency Agreements.

G.    Vacating the Facilities.  The liquidation sales under the Agency Agreements will commence immediately after entry of an order of this Court approving the Agency Agreements and continue until on or before November 30, 2005 (the "Sale Termination Date").  On the Sale Termination Date, the Agent, at its own expense, must vacate, remove any remaining Equipment (the "Remaining Equipment") and leave the Facilities in "broom clean" condition (ordinary wear and tear excepted).  Any proceeds realized upon a sale or disposition of the Remaining Equipment shall constitute Proceeds for the purpose of, *inter alia*, calculating the Additional Return due to Winn-Dixie and Residual Proceeds (as defined in the Agency Agreements) due to the Agent.

11.    In the event a strategic purchaser submits the Successful Bid, the Debtors will execute a bill of sale.

12.    The Debtors seek authority to sell the Equipment either through an agent or directly to a strategic purchaser without complying with any applicable state and local statutes,

rules or ordinances governing liquidation or "going-out-of-business" sales, including laws governing (i) bulk sales, (ii) advertising, (iii) licensing requirements and procedures, (iv) waiting periods or time limits, and (v) inventory increases (collectively, the "Local Laws"). Notwithstanding the foregoing, however, the Debtors and their agents will comply with all state and local public health and safety laws (the "Safety Laws"), as well as tax, labor, employment, environmental laws (collectively, the "General Laws"), to the extent applicable.

13.     The Debtors also seek to liquidate the Equipment without complying with any provisions of a lease, contract or other agreement of the Debtors that would otherwise prevent or impair the Debtors' conduct of the sales, including any "going dark provisions."

14.     The Debtors' prompt sale of the Equipment is in the best interest of the Debtors' respective estates and creditors.

## <u>Applicable Authority</u>

A.     <u>The Debtors' decision to sell the Equipment is supported by a sound business reason.</u>

15.     Bankruptcy Code Section 363(b)(1) provides:  "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Bankruptcy Code Section 1107 (a) gives the Debtors, as debtors-in-possession, the same authority as a trustee to use, sell or lease property under Section 363(b)(1).

16.     Courts have held that transactions under Section 363(b)(1) should be approved when they are supported by a sound business reason.  *See In re BDK Health Mgmt., Inc.,* Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); *see also Official*

*Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a Section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (holding that a debtor in possession can sell assets of his estate outside the ordinary course of business if he has an articulated business justification); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that the business judgment test is the proper standard to apply when considering a debtor's motion to sell assets outside the ordinary course of business); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (holding that a trustee must show that "there is a sound business purpose for conducting the sale prior to confirmation of a plan"); *In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) ("[T]he Trustee has the burden to establish sound business reasons for the terms of the proposed sale").

17.     If a sound business reason exists, the law vests a debtor's decision to use property out of the ordinary course of business with a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *Official Comm. Of Subordinated Bondholders v. Integrated Resources, Inc. (*In re Integrated Resources, Inc.*)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

Accordingly, parties challenging a debtor's decision must make a showing of "bad faith, self-interest, or gross negligence." *Id.*

18.     The Debtors have a sound business reason to sell the Equipment.  The Debtors' sale of the Equipment will bring substantial value to the estates and the Equipment is no longer needed because the Debtors are ceasing production of their condiment, spice and coffee lines.

19.     Liquidation sales are a routine part of chapter 11 cases involving retail debtors. *See, e.g., In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (holding that "going-out-of-business" sales are an important part of "overriding federal policy requiring Debtor to maximize estate assets").  Bankruptcy courts have granted similar relief in other cases involving retailers.  *See, e.g., In re Breuners Home Furnishings Corp.*, Case No. 04-12030 (Bankr. D. Del. July 30, 2004); *In re Mansour's, Inc.*, Case No. 04-10979 (Bankr. N.D. Ga. Apr. 20, 2004); *In re Heilig-Meyers Co.*, Case No. 00-34533 (Bankr. E.D. Va. Sept. 13, 2000); *In re London Fog, Inc.*, Case No. 99-3446 (Bankr. D. Del. Oct 7, 1999); *In re Starter Corp.*, Case No. 99-906 (Bankr. D. Del. July 2, 1999); *In re WSR Corp.*, Case No. 98-1241 (Bankr. D. Del. Oct. 28, 1998); *In re Montgomery Ward Holding Corp.*, Case No 97-1409 (Bankr. D. Del. Nov 7, 1997).

**B.     The Debtors should be permitted to sell the Equipment free and clear of all liens and encumbrances.**

20.     The Debtors request that the sale and transfer of the Equipment be approved free and clear of liens, interest and encumbrances.  This relief is consistent with the provisions of 11 U.S.C. § 363(f).

21.     Pursuant to Section 363(f) of the Bankruptcy Code, after notice and a hearing, a debtor may sell property of the estate free and clear of all liens, interests and encumbrances.  *See*

*In re Parrish*, 171 B.R. 138, 140 (Bankr. M.D. Fla. 1994) (noting that compliance with the requirements of Section 363(f) is a prerequisite to a sale free and clear of liens).

22.     The Debtors believe that there are no interests or claims in the Equipment other than potential statutory liens and the senior liens and superpriority administrative claims of the DIP Lender, which will attach to that portion of the Proceeds that is the Guaranteed Amount and the Additional Return.  The interests of the DIP Lender will be satisfied because the Debtors will cause that portion of the Proceeds that is the Guaranteed Amount, the Additional Return and any other amounts payable to the Debtor pursuant to the Agency Agreements, to be paid to the DIP Lenders to the extent required in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Lien Bases and Modify the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-Petition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

**C.      Leasehold provisions restricting liquidation sales are unenforceable in Chapter 11.**

23.     The leases governing the Facilities may contain provisions restricting or prohibiting the Debtors from conducting a going-out-of-business sale, liquidations, auctions or similar sales.  These provisions are unenforceable in chapter 11 because they impermissibly restrain the debtors' ability to maximize the value of their assets under 11 U.S.C. § 363.  *See, e.g., In re Tobago Bay Trading Co.*, 112 B.R. 463, 467 (Bankr. N.D. Ga. 1990) (finding that the debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if

lease provisions prohibiting the debtor from liquidating its inventory were enforced); *In re R.H. Macy & Co., Inc.*, 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994) (holding that restrictive lease provisions are unenforceable in a chapter 11 case when the debtor sought to conduct going-out-of-business sale); *In re Ames Dep't Stores Inc.*, 136 B.R. at 359 ("[T]o enforce the anti-[going-out-of-business] sale clause of the Lease would contravene overriding federal policy requiring the Debtor to maximize estate assets by imposing additional constraints never envisioned by Congress."); *In re Libson Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding that restrictive lease provisions are unenforceable in chapter 11 cases when the debtor sought to conduct going-out-of-business sale).

24.    Bankruptcy courts have permitted debtors to bypass such restrictive lease provisions in numerous chapter 11 cases. *See, e.g., In re Breuners Home Furnishings Corp.*, Case No. 04-12030 (Bankr. D. Del. July 30, 2004); *In re WSR Corp.*, Case No. 98-1241 (Bankr. D. Del. Oct. 28, 1998); *In re Montgomery Ward Holding Corp.*, Case No 97-1409 (Bankr. D. Del. Nov 7, 1997); *In re Edison Bros. Stores, Inc.*, Case No. 95-1354 (Bankr. D. Del. June 25, 1997); *In re County Seat Inc.*, Case No. 96-1637 (Bankr. D. Del. Nov. 14, 1996); *In re Pic 'N Pay Stores Inc.*, Case No. 96-182 (Bankr. D. Del March 29, 1996).

**D.**    **The Court should waive any state or local laws or ordinances restricting the sales.**

25.    Florida and Georgia each have Local Laws restricting the conduct of liquidation sales. Each of these states also, however, has statutes and regulations which generally except going-out-of-business and auction sales which are authorized by bankruptcy court order from the Local Laws. *See*, Fl. St. §559.25 and Ga. St. §10-1-396. To the extent these sales are not already excepted from the Local Laws, the Debtors seek authority to conduct the sales without complying with the Local Laws; provided, however, that the Debtors, and their agents, will

continue to be bound by and comply with Safety Laws and General Laws, to the extent applicable.

26.    As a general matter, under 28 U.S.C. § 959(b), a debtor-in-possession must "manage and operate the property . . . according to the requirements of the valid laws of the state in which such property is situated."  The Eleventh Circuit and other courts, however, have held that a debtor-in-possession liquidating estate property does not "manage and operate" the property for purposes of Section 959(b).  *See In re N.P. Mining Co., Inc.*, 963 F.2d 1449, 1460-61 (11th Cir. 1992) (holding that Section 959(b) does not apply when a debtor-in-possession is liquidating property as opposed to operating a business); State of *Missouri v. U.S. Bankr. Court for E.D. of Arkansas*, 647 F.2d 768, 778 n.18 (8th Cir. 1981) (same); Missouri Dep't. of Natural Resources v. Valley Steel Prods. Co., Inc. (*In re Valley Steel Prods. Co., Inc.)*, 157 B.R. 442, 447-48 (Bankr. E.D. Mo. 1993) (same); *In re Corona Plastics, Inc.*, 99 B.R. 231, 235-36 (Bankr. D.N.J. 1989) (same).  Because the Debtors seek to sell the Equipment and cease operations at the Facilities, Section 959(b) does not require compliance with the Local Laws.

27.    In any event, federal bankruptcy law preempts state and local laws which conflict with the bankruptcy code or its underlying policies.  *See In re Shenango Group, Inc.*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("[T]rustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code . . . [A] state statute cannot place burdens on them where the result would contradict the priorities established by the federal bankruptcy code."), aff'd 112 F.3d 633 (3d Cir. 1997).  Preemption is appropriate when, as here, the Local Laws at issue concern economic regulation rather than the health and safety regulations.  *See Baker & Drake, Inc. v. Public Svc. Comm. Of Nev. (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1353 (9th Cir. 1994) (finding that "federal bankruptcy preemption is more likely . . . where a state

statute is concerned with economic regulation rather than with protecting the public health and safety."); *see also Walker v. Maury County ( In re Scott Housing Sys., Inc.)*, 91 B.R. 190, 196-97 (Bankr. S.D. Ga. 1988) (holding that automatic stay under Section 362 is broad and preempts state law except for those laws designed to protect public health and safety).

28.     If applied, the Local Laws will undermine the fundamental purpose of 11 U.S.C. § 363(b) by placing constraints on the Debtors' ability to marshal and maximize estate assets for the benefit of their respective creditors.  The Debtors request that the Court waive any Local Laws requiring creditor notification because creditors and lienholders are protected by the notice provisions of the federal bankruptcy laws.  The Debtors further request that the Court prohibit any federal, state, or local governmental agency or entity from preventing or interfering with the proposed liquidation sales.  *See State of Missouri v. U.S. Bankr. Court for E.D. of Arkansas*, 647 F.2d at 776 (holding that an attempt to enforce state regulation governing liquidation of grain warehouses directly conflicted with bankruptcy court's control over property of the estate and thus violated the automatic stay).

29.     The Debtors' requested waiver of the Local Laws is narrowly tailored to facilitate the successful consummation of the Equipment sales.  The Debtors are not seeking a waiver of all state and local laws, but only those that apply specifically to liquidation, going-out-of-business, and auction sales.  The Debtors and their agents will comply with all Safety Laws and General Laws.

30.     Under these circumstances, bankruptcy courts have permitted debtors to bypass such Local Laws in numerous chapter 11 cases.  *See, e.g., In re Breuners Home Furnishings Corp.*, Case No. 04-12030 (Bankr. D. Del. July 30, 2004); *In re WSR Corp.*, Case No. 98-1241 (Bankr. D. Del. Oct. 28, 1998); *In re Montgomery Ward Holding Corp.*, Case No 97-1409

(Bankr. D. Del. Nov 7, 1997); *In re Edison Bros. Stores, Inc.*, Case No. 95-1354 (Bankr. D. Del. June 25, 1997).

31.     In order to proceed with the sales, the Debtors further request that the Court restrain and enjoin all parties and persons of every nature and description, including but not limited to landlords, utility companies, governmental agencies, sheriffs, marshals or other public officers, creditors, newspapers, other advertising mediums, and all those acting for or on their behalf, from (a) charging advertising rates in excess of the rates charged pursuant to the Debtors' prepetition advertising agreements or, if no such agreements exist, charging advertising rates in excess of rates regularly charged to non-bankrupt customers in the ordinary course, (b) in any way interfering with or otherwise impeding the conduct of the Equipment sales, or the Debtors' or Agent's right to use the Facilities, and all services, furniture, fixtures, equipment and other assets of the Debtors which the Agent is granted the right to use in the Agency Agreements, or (c) instituting any action or proceeding in any court (other than this Court) or other administrative body having as its objective the obtaining of an order or judgment that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the sales, the operation of the Facilities, or the performance by the Debtors of their obligations under the Agency Agreements, or other purchase agreement; provided, however, that notwithstanding the authority granted to the Debtors and the Agent to conduct sales, this Order does not exempt the Debtor or the Agent or any other purchaser or their assigns from complying with the Safety Laws.

**E.      The sales should be exempt from taxes.**

33.     Bankruptcy Code Section 1146(c) provides that "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan

confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax."  11 U.S.C. § 1146(c).  This language has been construed to include transfers pursuant to a sale outside of, but in furtherance of effectuating, a reorganization plan.  *Webster Classic Auctions, Inc.*, 318 B.R. 216, 218 (Bankr. M.D. Fla. 2004) (adopting rationale that purpose of Bankruptcy Code Section 1146(c) is to facilitate reorganizations and that transfers need not be postconfirmation); *BDK Health Mgmt.*, 1998 WL 34188241, at *8 (granting Bankruptcy Code Section 1146(c) relief outside of confirmed plan); *see also In re T.H. Orlando Ltd.*, 391 F.3d 1287, 1291 (11th Cir. 2004) (exemption applies where transfer is necessary to the consummation of a plan); *City of New York v. Jacoby-Bender, Inc.* (*In re Jacoby-Bender, Inc.*), 758 F.2d 840, 841-42 (2d Cir. 1985) (holding that where a transfer is necessary to the consummation of a plan, the transfer is "under a plan" within meaning of Bankruptcy Code section 1146(c)); *City of New York v. Smoss Enters. Corp.* (*In re Smoss Enters. Corp.*), 54 B.R. 950, 951 (E.D.N.Y. 1985) (stating that Section 1146(c) was designed to reach transfers on which "the plan hinged and which the court had to approve prior to the confirmation"), *aff'd mem.*, No. 85-5106, 1986 U.S. App. LEXIS 28677 (2d Cir. Mar. 31, 1986); *In re United Press Int'l, Inc.*, Case No. 91 B 13955 (FGC), 1992 Bankr. LEXIS 842, at *4, *6-7 (Bankr. S.D.N.Y. May 18, 1992) (holding that Bankruptcy Code Section 1146(c) exemption applied to Section 363 sale where it found "the value of the Debtor's assets is likely to deteriorate [during the] time necessary to . . . confirm a plan"); *In re Permar Provisions, Inc.*, 79 B.R. 530, 533-34 (Bankr. E.D.N.Y. 1987) (stating that determination of applicability of Bankruptcy Code Section 1146(c) exemption is same for pre- and post-confirmation dispositions of property, namely "whether the sale of 'property is essential to confirmation of the plan'") (citation omitted).

34.     Although the Debtors have not yet filed a Chapter 11 plan of reorganization, an integral part of any plan will be the Debtors' ability to liquidate the Equipment.  In light of the foregoing, the Debtors respectfully submit that the sale of the Equipment is an integral part of, and a necessary predicate toward, the Debtors' Chapter 11 reorganization plan.  Accordingly, the sales should be exempt under Bankruptcy Code Section 1146(c) from any stamp, transfer, sales, recording or similar taxes.

## Notice

36.     Notice of this Motion has been given to: (a) counsel to the Creditors' Committee; (b) counsel to the DIP Lender; (c) all entities known to assert a lien, claim or interest in or on the Equipment; (d) all non-debtor parties to the leases of the Facilities; (e) the Office of the United States Trustee; (f) the Attorneys General for the States of Florida and Georgia; and (g) all entities having requested notices pursuant to Rule 2002; and (h) all parties on the Master Service List.

**Objection Deadline:**   Only objections filed and served on Sally MacDonald Henry at shenry@skadden.com, Skadden, Arps, Slate, Meagher, & Flom, LLP, Four Times Square, New York, New York 10036, Cynthia C. Jackson at cjackson@smithhulsey.com, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202, and Robert A. Boghosian at rboghosian@ctswlaw.com, Cohen Tauber Spievack & Wagner, LLP, 420 Lexington Avenue, Suite 2400, New York, New York 10170, so as to be received by September 16, 2005, will be considered by the Bankruptcy Court at the hearing on this Motion.

## Conclusion

For the foregoing reasons, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit C (if to a liquidating agent) or Exhibit D (if directly to a strategic purchaser): (a) authorizing the Debtors to sell the Equipment free and clear of liens, claims and interests and exempt from stamp or similar taxes, and (b) granting such other and further relief as the Court deems just and proper.

Dated: August 25, 2005

SKADDEN, ARPS, SLATE, MEAGHER                SMITH HULSEY & BUSEY
& FLOM LLP

By ____/s/ D. J. Baker_____              By ____/s/ Cynthia C. Jackson_____
      D. J. Baker                                  Stephen D. Busey
      Sally McDonald Henry                         James H. Post
      Rosalie Gray                                 Cynthia C. Jackson. (F.B.N. 498882)

Four Times Square                           225 Water Street, Suite 1800
New York, New York 10036                    Jacksonville, Florida  32202
(212) 735-3000                              (904) 359-7700
(212) 735-2000 (facsimile)                  (904) 359-7708 (facsimile)
djbaker@skadden.com                         cjackson@smithhulsey.com

Co-Attorneys for Debtors                    Co-Attorneys for Debtors

00505513.5