# EXHIBIT A

COPY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 399-02649 |
| SERVICE MERCHANDISE COMPANY, | ) |
| INC., et al., | ) Chapter 11 |
| | ) |
| | ) Judge Paine |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |

ORDER APPROVING (A) UNIFORM PERSONAL INJURY
CLAIMS RESOLUTION PROCEDURES, (B) MODIFICATION OF THE
AUTOMATIC STAY WITH RESPECT TO SUCH PERSONAL INJURY
CLAIMS, (C) THE FORM OF NOTICE OF THE PROCEDURES,
AND (D) THE APPOINTMENT OF A MEDIATOR

Upon the motion, dated July 23, 2001 (the "Motion"),[1]

of Service Merchandise Company, Inc. ("Service Merchandise") and

31 of its affiliates (the "Affiliate Debtors"), debtors and

debtors-in-possession in the above-captioned cases (Service

Merchandise and the Affiliate Debtors, collectively, the

"Debtors"), for entry of an order (the "Order"), (a) approving

uniform claims resolution procedures for liquidating prepetition

Personal Injury Claims, (b) modifying the automatic stay

applicable in these cases pursuant to 11 U.S.C. § 362 (the

"Automatic Stay") to permit such liquidation of Personal Injury

Claims, (c) approving the form of notice to Claimants of any

approved claims resolution procedures, and (d) approving the

---

[1]    Capitalized terms used herein and not otherwise defined
shall have the meanings ascribed to them in the Motion.

Re: 5071

5179

appointment of Dispute Resolution Professionals, Inc. as mediator (the "Mediator"), as more fully described in the Motion; and all parties in interest having been heard or having had the opportunity to be heard; and upon the entire record herein; and good and sufficient cause appearing therefor, the Court hereby

FINDS, ADJUDGES AND DECREES:

A.    Good and sufficient notice of the Motion has been given under the circumstances, and a reasonable opportunity to object to, or be heard regarding, the relief requested in the Motion has been afforded to all interested persons or entities, and no other or further notice of the Motion or of the entry of this Order need be provided.

B.    The Debtors have exercised sound business judgment in deciding to utilize the Claims Resolution Procedures to liquidate prepetition Personal Injury Claims through settlement, mediation and/or litigation.

C.    The Debtors have exercised sound business judgment in retaining the authority to refer certain Bankruptcy Claims on a case-by-case basis to Mediation to be resolved pursuant to the Mediation Procedures.

D.    The Debtors have exercised sound business judgment in retaining the Mediator to administer the mediation of certain Personal Injury Claims.

E.    Based on the Affidavit of John Zodrow, one of the principals of DRP, filed in support of the Motion, all of DRP's

2

affiliated Neutrals comply with the Model Standards of Conduct for Mediators as adopted by the Association for Conflict Resolution, the American Arbitration Association and certain sections of the American Bar Association. In addition, each of the Neutrals subscribe to and are bound by the codes of professional conduct that pertain to such Neutral's profession.

     F.    Based on the Affidavit of John Zodrow, none of DRP's affiliated Neutrals have any affiliation with the Debtors, the Debtors' counsel, the Debtors' financial advisors, the Committee, the Committee's counsel or the Committee's financial advisors. Nor do any of DRP's affiliated Neutrals have any connection with or any interest adverse to the Debtors, their estates, their creditors, the Office of the United States Trustee, any other party in interest or their professionals. Accordingly, DRP is disinterested, as defined in 11 U.S.C. § 101(14).

     G.    The Claims Resolution Procedures are in the best interests of the Claimants, the Debtors, their estates and all parties in interest. The Claims Resolution Procedures will facilitate the consensual liquidation of most Personal Injury Claims in a manner that is most efficient for both the Debtors and the Claimants.

     H.    The Claims Resolution Procedure will treat Claimants fairly.

I.    The settlement authority and approval procedures requested in the Motion and granted herein will streamline the Claims Resolution Procedures and reduce the administrative burdens on the Debtors' estates as well as the Court because the sums at issue are not great enough to prejudice any parties in interest.

J.    To implement the Claims Resolution Procedures, the Automatic Stay must remain in effect against commencement or continuation of all prepetition Personal Injury Claims against the Debtors, except to the extent necessary to implement the Claims Resolution Procedures.  If relief from the Automatic Stay were granted to Claimants on an ad hoc basis before such Claimants had complied with the Claims Resolution Procedures, the Debtors would be forced to expend valuable resources and time in the defense of prepetition lawsuits in other fora.

K.    The relief requested in the Motion is necessary and appropriate to assist the reorganization of the Debtors' businesses and is in the best interests of the Debtors, their estates and their creditors.

L.    Any findings of facts contained in the foregoing paragraphs which may be construed as matters of law, shall be treated as conclusions of law as if set forth below.

THEREFORE IT IS ORDERED, ADJUDGED AND DECREED:

1.    The Motion is granted in its entirety.

4

2.    The Debtors are hereby authorized to utilize the Claims Resolution Procedures to liquidate prepetition Personal Injury Claims through settlement, mediation and/or litigation.

3.    The Claims Resolution Procedures attached hereto as Exhibit 1 are approved.

4.    The form of notice to the Claimants of this Order and the approved Claims Resolution Procedures attached hereto as Exhibit 2 is approved.

5.    The Debtors are hereby authorized to refer certain Bankruptcy Claims on a case-by-case basis to Mediation to be resolved pursuant to the Mediation Procedures.

6.    The form of Referral Notice attached hereto as Exhibit 3 is approved.

7.    The Mediation Procedures attached hereto as Exhibit 4 are approved.

8.    The form of Mediation Notice attached hereto as Exhibit 5 is approved.

9.    The form of Mediation Agreement attached hereto as Exhibit 6 is approved.

10.    The Debtors are authorized to retain the Mediator, pursuant to the terms and conditions set forth in the form of Engagement Letter attached hereto as Exhibit 7, to administer the mediation of certain Personal Injury Claims and Bankruptcy Claims

5

with certain costs of such appointment to be an administrative expense of the Debtors' estates.

11.    The form of Agreed Order of Resolution attached hereto as Exhibit 8 is approved.

12.    Subject to the provisions of this Order and the Claims Resolution Procedures, the Debtors are authorized to settle and compromise Personal Injury Claims in their discretion upon the notice procedures set forth in the Motion and the Claims Resolution Procedures.

13.    The Automatic Stay will remain in effect against commencement or continuation of all prepetition Personal Injury Claims against the Debtors, except to the extent necessary to implement the Claims Resolution Procedures, and the Automatic Stay is hereby modified only to the extent necessary to implement and accommodate the Claims Resolution Procedures.

14.    The form of Stay Relief Order attached hereto as Exhibit 9 is approved.

15.    The form of Opt-Out Order attached hereto as Exhibit 10 is approved.

16.    Upon the failure of a Claimant to comply with the Claims Resolution Procedures and/or the Mediation Procedures, and until such default is cured, the Claimant shall not have an allowed claim for purposes of voting on any proposed plan of reorganization and for purposes of any distribution under any

6

confirmed plan of reorganization. Further, upon such failure, and until such default is cured, the Claimant shall not be entitled to relief from the Automatic Stay to establish, liquidate or otherwise engage in any collection of the Personal Injury Claim from the Debtors and/or any Third Party Indemnitor.

17.   The Debtors and their respective officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of this Order and the Claims Resolution Procedures.

18.   This Order shall survive and remain in full force and effect notwithstanding the appointment of a trustee or confirmation of a plan of reorganization of or in these chapter 11 cases.   The Court shall retain jurisdiction to enforce the terms of this Order.

19.   Nothing in this Order is intended to, nor will this Order be deemed to, alter any requirements under the Debtors' Insurance Policies or to limit or otherwise prejudice any Insurers' rights or defenses under such Insurance Policies, all of which are expressly reserved. Without limiting the generality of the foregoing, in all instances where this Order or the Claims Resolution Procedures state that the Debtors may take an action or make a decision in their "sole discretion," to the same extent that the Debtors would be required under the applicable Insurance Policy in the absence of this Order or

7

Procedures, the Debtors shall remain obligated to defer such discretion to the Insurers, to allow such Insurers to be involved with the defense and/or approval of insurer claims.    In accordance with the terms of the applicable Insurance Policy, and if required with respect to any aspect of the Claims Resolution Procedures, the Debtors shall not settle, mediate or arbitrate any claim that involves an Insurer, without notice to the Insurer, without providing an opportunity for such Insurer to be involved in the settlement discussions and providing the Insurer with the opportunity to approve such settlement in accordance with the terms of the applicable Insurance Policy.    Nothing in this Order shall constitute a finding that any Insurance Coverage exists for, or is applicable, to any Personal Injury Claim; nor shall the provisions of this Order dealing with any Insurer expand any otherwise existing Insurance Coverage.    Nothing in this Order shall affect the rights or obligations of either the Debtors or their Insurers under the applicable Insurance Policies; provided that nothing in this Order, the implementation of the Claims Resolution Procedures or the Debtors' compliance with the Claims Resolution Procedures shall be deemed a failure of the Debtors to cooperate with an Insurer under any applicable Insurance Policy.

8

20.    Any conclusions of law contained in the foregoing paragraphs which may be construed as findings of fact, shall be treated as findings of fact as if set forth above.

ENTER this _____ day of July, 2001.

Judge George C. Paine II
United States Bankruptcy Judge

APPROVED FOR ENTRY:

Paul G. Jennings
Beth A. Dunning
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238-2700
Tel: (615) 742-6200
Fax: (615) 742-6293

and

John Wm. Butler, Jr.
George N. Panagakis
SKADDEN, ARPS, SLATE,
    MEAGHER  & FLOM (ILLINOIS)
333 West Wacker Drive
Chicago, IL 60606-1285
Tel: (312) 407-0700
Fax: (312) 407-0411

Attorneys for Debtors and
Debtors-in-Possession

A copy of this order shall be mailed in accordance with
Fed. R. Bankr. P. 2002, LBR 9013-1 and 9013-3 by:

[ ] Debtor or Dr's Atty        [ ] Atty for Movant
[ ] Trustee or Tr's Atty       [ ] _____

[ ] Clerk's Office only
[ ] Chief Deputy               [ ] debtor and Dr's Atty
[ ] Financial Clerk            [ ] Trustee or Tr's Atty
[ ] Judgment Book              [ ] _____
[ ] Adversary Case             [ ] _____
[ ] UST                        [ ] all creditors
[ ] _____

2056205.8                           9

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

In re:                           )
                                 )
                                 )  Case No. 399-02649
SERVICE MERCHANDISE COMPANY,     )
     INC., et al.,               )  Chapter 11
                                 )
                                 )  Judge Paine
     Debtors.                    )
                                 )  Jointly Administered
                                 )

**UNIFORM PERSONAL INJURY CLAIMS RESOLUTION PROCEDURES**

If you have a Personal Injury Claim[1] against one or more of the Debtors listed on the attached Exhibit A, it is very important that you read and comply with the procedures set forth below. The Claims Resolution Procedures described below are intended to speed the settlement and/or liquidation of Personal Injury Claims against the Debtors. **Your failure to comply with these Procedures may result in the disallowance of your Personal Injury Claim. You may wish to consult with a lawyer concerning your obligations under these Procedures.**

1.  **Compliance with Procedures**

If you are an Eligible Claimant holding a Personal Injury Claim, and only if you are an Eligible Claimant, you must comply with these Procedures in order to have an allowed Personal Injury Claim against the Debtors in the Bankruptcy Cases. Compliance with these procedures has been ordered by the Bankruptcy Court in the Procedures Order (found at Docket No. _____), entered _____.

---

[1]  The meanings of capitalized terms used in these Procedures are set forth in the "Definitions" attached hereto as Exhibit B.

**EXHIBIT**

1

## 2.   Notices

Whenever notice is required to be given under these procedures, it shall be given by first-class, U.S. Mail, postage prepaid unless otherwise provided in the relevant section, and shall addressed as follows:

| | |
|---|---|
| If to the Debtors: | Karrén Prasifka<br>Service Merchandise Company, Inc.<br>7100 Service Merchandise Blvd.<br>Brentwood, Tennessee 37027<br>Fax: (615) 660-3934 |
| If to Counsel for the Debtors: | Paul G. Jennings<br>Beth A. Dunning<br>BASS, BERRY & SIMS PLC<br>315 Deaderick St., Ste. 2700<br>Nashville, Tennessee 37238-0002<br>Fax: (615) 742-6293 |
| with a copy to: | Charles F. Smith<br>SKADDEN, ARPS, SLATE,<br>  MEAGHER & FLOM (ILLINOIS)<br>333 West Wacker Drive<br>Chicago, IL 60606-1285<br>Fax: (312) 407-0411 |
| If to Counsel for the Committee: | Glenn B. Rice<br>OTTERBOURG, STEINDLER, HOUSTON<br>  & ROSEN PC<br>230 Park Avenue<br>29th Floor<br>New York, NY 10169 |
| If to Counsel for the Debtors' Postpetition Lenders: | Kevin J. Simard<br>David S. Berman<br>REIMER & BRAUNSTEIN LLP<br>Three Center Plaza<br>Boston, MA  02108 |
| If to the United States Trustee: | Beth R. Derrick<br>Assistant U.S. Trustee<br>Office of the U.S. Trustee<br>Customs House, Room 318<br>701 Broadway<br>Nashville, TN 37203 |

2

<u>If to be filed with the</u>                Clerk of Court
<u>Bankruptcy Court</u>:                       United States Bankruptcy Court
                                                for the Middle District of
                                                Tennessee
                                           Customs House
                                           701 Broadway
                                           Nashville, TN 37203

<u>If to the Claimant</u>:                     The person and address for
                                           notices set forth in the Proof of
                                           Claim reflecting the Personal
                                           Injury Claim and/or in any motion
                                           for relief from the Automatic
                                           Stay filed with respect to the
                                           Personal Injury Claim

<u>If to an Insurer</u>:                       The person, address and manner
                                           for notices set forth in the
                                           relevant Insurance Policy.

3.   **<u>Objection of Debtors to Personal Injury Claim</u>.**

   If the Debtors have any dispute with respect to a
   particular Personal Injury Claim, whether such claim was
   asserted in a filed proof of claim or in a motion or other
   paper seeking relief from the Automatic Stay, the Debtors
   will file with the Bankruptcy Court a written Objection.

   a.   <u>Service of Objection</u>.  The Debtors shall serve a copy
        of the Objection on the Claimant, counsel for the
        Committee and any applicable Insurer to the extent
        notice of such an action is required under the
        applicable Insurance Policy.

   b.   <u>Contents of Objection</u>.  The Objection may state the
        particular grounds for the dispute or may incorporate
        by reference the Debtors' contentions raised in any
        applicable Non-Bankruptcy Litigation.[2]

---

[2]   The Debtors' failure to assert a particular ground for
      objecting to a Personal Injury Claim shall not bar the
      Debtors from asserting any additional grounds, by filing and
      serving a supplemental Objection at a later time,
      notwithstanding that such Personal Injury Claim is also the
      subject of a pending or previously resolved Objection.

c.  Use of Omnibus Objections.  The Debtors may assert
    any particular dispute as part of an omnibus
    objection to multiple Personal Injury Claims, which
    omnibus objection shall serve as the Objection for
    the purposes contemplated herein.

d.  Proposed Allowed Claim.  Notwithstanding the Debtors'
    denial of liability in an Objection, the Debtors may,
    but are not required to, include in any Objection a
    compromised Proposed Allowed Claim for purposes of
    effecting a prompt and efficient settlement of the
    Personal Injury Claim.

## 4.  Automatic Allowance/Disallowance of Personal Injury Claim.

If any Claimant fails timely to file and serve a Response
by the Response Deadline, the Personal Injury Claim shall
be disallowed, reduced, or reclassified, all as set forth
in the Objection, without further notice or hearing,
*unless* the Objection contained a Proposed Allowed Claim,
in which case, the Personal Injury Claimant shall have an
allowed general, unsecured, non-priority claim in the
amount of such Proposed Allowed Claim.

a.  Allowance/Disallowance Order.  The Debtors will
    prepare and submit to the Court for entry an
    Allowance/Disallowance Order, allowing or disallowing
    the Personal Injury Claim on the terms set forth in
    the Objection *unless* the Objection contained a
    Proposed Allowed Claim, in which case, it shall
    reflect that the Personal Injury Claimant has an
    allowed general, unsecured non-priority claim in the
    amount of such Proposed Allowed Claim.

b.  Notice of Automatic Allowance/Disallowance.  The
    Debtors may, but are not required to, send with the
    Objection a copy of the proposed
    Allowance/Disallowance Order and a notice that such
    proposed Order will be submitted and entered by the
    Court without further notice or hearing if the
    Claimant fails to timely respond to the Objection.

## 5.  Response of Personal Injury Claimant to Objection.

In order to dispute any denial of liability and/or to
reject any Proposed Allowed Claim set forth in the
Objection, the Claimant must file with the Bankruptcy
Court and serve, on the Debtors and the Committee, a

4

written Response to the Objection <u>by the Response
Deadline, which is 30 days after the mailing of the
Objection by the Debtors</u>.

a.   <u>Service of the Respose</u>   The Claimant shall serve the
     Response on the Debtors, counsel for the Debtors and
     counsel for the Committee.

b.   <u>Content of Response</u>.   The Response must provide a
     concise statement of the legal and factual support
     for allowance of the Personal Injury Claim as filed.

c.   <u>Alternative Proposed Allowed Claim</u>.   The Response
     may, but is not required to, include a compromised
     Alternative Proposed Allowed Claim for purposes of
     making a counter-offer of settlement of the Persoanl
     Injury Claim.   Any such proposal for an Alternative
     Proposed Allowed Claim shall remain open to
     acceptance by the Debtors for not less than 30 days.
     The Debtors shall be deemed to reject such counter-
     offer in the absence of any express written
     acceptance of the Alternative Proposed Allowed Claim.

6.   **Mediation of Personal Injury Claims**.

     If the Objection to the Personal Injury Claim is not
     otherwise resolved sooner, the Debtors may, but are not
     required to, refer the Personal Injury Claim to Mediation
     with the Mediator.

a.   <u>Service of Referral Notice</u>.   In order to refer a
     Personal Injury Claim to mediation, the Debtors shall
     serve a copy of a Referral Notice on the Mediator,
     the Claimant and any applicable Insurer to the extent
     notice of such an action is required under the
     applicable Insurance Policy.

b.   <u>Form of Referral Notice</u>.   The Referral Notice shall
     be substantially in the form attached to the
     Procedures Order as Exhibit 3.   A referral Notice
     may, but is not required to, refer multiple Personal
     Injury Claims to Mediation.

c.   <u>Mediation/Arbitration</u>.   The Referral Notice shall
     state whether the Debtors, and whether any Insurer,
     to the extent permitted under the applicable
     Insurance Policy, consent to Mediation/Arbitration

5

with respect to the Personal Injury Claim; provided that such consent may be withdrawn by notice in writing sent to the Mediator and the Claimant at any time prior to service on the Debtors and the Mediator of written consent by the Claimant to Mediation/Arbitration.

d.    Mediation Procedures.   The Mediation Procedures, as approved by the Procedures Order, will apply to any Referred Claims.

e.    Resolution by Mediation or Mediation/Arbitration.   If the Personal Injury Claim is resolved through Mediation or Mediation/Arbitration, the Debtors will prepare and submit to the Court an Agreed Order of Resolution setting the agreed amount for the Personal Injury Claim.   Such Agreed Order of Resoultion shall be subject to the procedures for notice and approval of settlements set forth below.

7.   **Compromise and Settlement.**

Nothing in the Claims Resolution Procedures shall prevent the parties from, at any time, informally compromising and/or settling any Personal Injury Claim for a liquidated amount agreeable to the Debtors and the Personal Injury Claimant.

a.    Approval of Settlement.   Every compromise and settlement will be conditioned upon acceptance and approval by the Bankruptcy Court and any applicable Insurer that is entitled to notice under the applicable Insurance Policy.

b.    Agreed Order of Resolution.   If the Personal Injury Claim is resolved by acceptance of the Debtors of an Alternative Proposed Allowed Claim, through Mediation, or by any other settlement, such resolution shall be memorialized in an Agreed Order of Resolution.   The Agreed Order of Resolution shall set forth the amount of the allowed Personal Injury Claim and shall be substantially in the form approved by the Court in the Procedures Order.

c.    Notice of and Opportunity to Object to Settlement.   The Agreed Order of Resolution shall provide a 20 day period in which a party in interest may object to the resolution approved in the Agreed Order of

6

Resolution.  The Debtors shall be required to serve such Agreed Order only on the Personal Injury Claimant, any applicable Insurer to the extent notice of such an action is required under the applicable Insurance Policy, counsel for the Committee, counsel for the Debtors' postpetition lenders, the United States Trustee and any other party that has filed and served on the Debtors a specific request for notices with respect to the Personal Injury Claim being settled.

d.   Objection to Settlement.  Any objection to an Agreed Order of Resolution must comply with the applicable Bankruptcy Rules.  In addition to any other validly interposed objection under applicable law, any Insurer shall also have the right to object to a proposed resolution to the extent such Insurer has the right to object or withhold consent to the proposed resolution under the applicable Insurance Policy; provided that nothing in these Procedures shall expand in any way the rights of any Insurer under the applicable Insurance Policy.  In the event an Insurer objects, or fails to affirmatively consent where such right exists under the applicable Insurance Policy, a proposed resolution shall not be approved, and any objection shall be sustained, to the extent the Insurer has a valid and enforceable approval or consent right under the applicable Insurance Policy.  In the absence of a timely and sustained objection, the Agreed Order of Resolution shall be approved.

e.   Hearing on Objections.  Any objection to an Agreed Order of Resolution that is timely filed and served shall be set by the Bankruptcy Court for hearing in the ordinary course of the Court's business and the Debtors shall have until 3 business days prior to such hearing to file any response to the objection.

f.   Discovery of Settlement Discussions.  Any settlement offers or proposals, including the inclusion of a Proposed Allowed Claim in an Objection or the inclusion of an Alternative Proposed Allowed Claim in a Response, and any discussions concerning any such settlement offers or proposals shall not be subject to later discovery and shall not be admissible as evidence in any later litigation concerning the Personal Injury Claim.

7

8.  **Stay Relief**.

To the extent a Personal Injury Claim is not sooner resolved by entry of an Allowance/Disallowance Order or by entry of an Agreed Order of Resolution, the Claimant will be granted relief from the Automatic Stay to pursue litigation of the Personal Injury Claim in an appropriate forum, on the conditions and upon the timing set forth below.

a.   Timing of Stay Relief.  Subject to the additional conditions set forth below, the Claimant shall be granted stay relief upon the filing of a motion for such relief if:

  i.    the Debtors do not refer the Personal Injury Claim to Mediation within 90 days after the Claimant files and serves a Response to the Objection; or

  ii.   if the Personal Injury Claim has been referred to Mediation and the Claimant has participated in the Mediation in good faith and to completion.

b.   Service of a Stay Relief Motion.  A motion for relief from the Automatic Stay upon good faith compliance with the Claims Resolution Procedures set forth herein shall be served by the Claimant on the Debtors and counsel for the Debtors.

c.   Exhaustion of Claims Resolution Procedures.  No motion seeking relief from the Automatic Stay with respect to a Personal Injury Claim will be granted unless the Personal Injury Claimant has first exhausted, in good faith, the Claims Resolution Procedures.  To the extent a motion is filed prior to the Debtors' filing and serving an Objection to the relevant Personal Injury Claim, the Debtors may file as their response to such motion an Objection to the Personal Injury Claim, in which case the Claims Resolution Procedures and deadlines set forth herein shall apply, and the Claimant shall be required to exhaust the Claims Resolution Procedures before being granted stay relief.

d.   Order Granting Stay Relief.  Upon the representation by the Claimant in such motion that the foregoing

8

conditions have been met and if the Debtors do not timely object on appropriate grounds, the Debtors shall submit, and the Bankruptcy Court shall enter, a Stay Relief Order, substantially in the form approved by the Procedures Order.

e.   Objection by the Debtors.   The Debtors shall have the opportunity to object to any such motion only on the grounds that the Claimant has failed to comply with the foregoing conditions or Claims Resolutions Procedures.   Any other party in interest with standing, including an Insurer, shall have the right to object; provided that nothing in these Procedures shall be deemed to grant them standing.

9.   **Third Party Indemnitors.**

To the extent the Debtors are, or may be entitled to, indemnity for a particular Personal Injury Claim from a Third Party Indemnitor, including an Insurer, the Debtors may, in their sole discretion, invite such Third Party Indemnitor to participate in the liquidation of the Personal Injury Claim, including participating in any Mediation, and the Debtors shall invite such Third Party Indemnitor to the extent the Third Party is entitled to participate under the applicable agreement or Insurance Policy.   Notwithstanding this authority, the Debtors shall owe no duty to a Claimant to invite a Third Party Indemnitor to participate.   Except for the manner of notice and approval of an Agreed Order of Resolution, to which a Third Party Indemnitor shall be bound if such party fails to sustain a timely objection to such Agreed Order of Resolution, nothing in these Procedures shall in any way limit or affect any defenses to indemnity held by any Third Party Indemnitor, including under any applicable agreement with the Debtors, under any applicable non-bankruptcy law, nor shall these Procedures or actions taken under these Procedures be deemed to adjudicate a Third Party Indemnitor's rights under any applicable non-bankruptcy law or agreement with the Debtors, including any Insurance Policy.

10.   **Election to Opt Out.**
At any time, by executing and delivering to the Debtors an Opt-Out Order, as approved in the Procedures Order, a Claimant may opt out of the Claims Resolution Procedures and obtain relief from the Automatic Stay by agreeing to waive any right to have an allowed claim against the

9

Debtors' estates or any Related Non-Debtor Party and/or any right to participate in any distribution in these cases.   The Debtors will promptly execute and file with the Court any Opt-Out Orders received.   The Debtors will serve a copy of any Opt-Out Order on any applicable Insurer to the extent notice of such an action is required under the applicable Insurance Policy.

## 11.  **Waiver of Claims Resolution Procedure**

The Debtors, in their sole discretion, may agree to waive some or all of the procedures set forth herein and/or to extend any deadlines set forth herein.

## INDEX OF DEBTORS AND CORRESPONDING CASE NUMBERS

1.  Service Merchandise Company, Inc.  . . . . . . . . 399-02649
2.  SMC-HC, Inc. . . . . . . . . . . . . . . . . . . . 399-02650
3.  SMC-SPE-1, Inc. . . . . . . . . . . . . . . . . . 399-02651
4.  SMC-SPE-2, Inc.  . . . . . . . . . . . . . . . . . 399-02652
5.  Service Merchandise Company of Tennessee,
    Limited Partnership . . . . . . . . . . . . . . . 399-02653
6.  Service Merchandise Company of Texas, Limited
    Partnership . . . . . . . . . . . . . . . . . . . 399-02654
7.  A.F.S. Marketing Services, Inc. . . . . . . . . . 399-02655
8.  B.A. Pargh Company, Inc. . . . . . . . . . . . . . 399-02656
9.  Service Merchandise RM, Inc. . . . . . . . . . . . 399-02657
10. McNally Supply Company . . . . . . . . . . . . . . 399-02658
11. Promotables, Inc. . . . . . . . . . . . . . . . . 399-02659
12. Service Merchandise Financial Company, Inc.  . . 399-02660
13. Service Merchandise Company Broad, Inc.  . . . . 399-02661
14. Service Merchandise Company No. 30, Inc. . . . . 399-02662
15. Service Merchandise Company No. 34, Inc. . . . . 399-02663
16. Service Merchandise Company No. 35, Inc. . . . . 399-02664
17. Service Merchandise Company No. 93, Inc. . . . . 399-02665
18. Service Merchandise Company of Iowa, Inc. . . . 399-02666
19. Service Merchandise Company of Kansas, Inc. . . 399-02667
20. Service Merchandise Company of New York, Inc. . 399-02668
21. Service Merchandise Office Supply, Inc. . . . . 399-02669
22. Service Merchandise Showrooms, Inc. . . . . . . 399-02670
23. The Toy Store, Inc.  . . . . . . . . . . . . . . 399-02671
24. Travel Management Consultants, Inc. . . . . . . 399-02672
25. Wholesale Supply Company, Inc. . . . . . . . . . 399-02673
26. SMC Aviation, Inc. . . . . . . . . . . . . . . . 399-02674
27. Homeowners Warehouse, Inc. . . . . . . . . . . . 399-02675
28. Service Merchandise Company No. 51, Inc. . . . . 399-02676
29. Service Merchandise Indiana Partners . . . . . . 399-02677
30. H.J. Wilson Company, Inc. . . . . . . . . . . . . 399-02678
31. H.J. Wilson Company Realty, Inc. . . . . . . . . 399-02679
32. Service Merchandise Company No. 99, Inc. . . . . 399-02680

EXHIBIT A-1

## DEFINITIONS FOR CLAIMS RESOLUTION PROCEDURES

"Agreed Order of Resolution" means the form of Agreed Order attached as Exhibit 8 to, and approved by, the Procedures Order, which is to be executed by counsel for the relevant Debtor, the Claimant and counsel for the Claimant and which will set forth an agreed resolution or settlement of the disputes between the parties concerning a Personal Injury Claim.

"Allowance/Disallowance Order" means the form of order to be submitted by the Debtors in the event a Claimant fails to timely file and serve a Response to an Objection to such Claimant's Personal Injury Claim, which order will allow or disallow the Personal Injury Claim in the terms set forth in the Objection or, if applicable, the terms of any Proposed Allowed Claim.

"Alternative Proposed Allowed Claim" means a proposed alternative compromised allowed claim in the relevant Bankruptcy Case which is proposed by a Claimant for the purpose of making a counter-offer of settlement of the Personal Injury Claim in response to an offer by the Debtors for a Proposed Allowed Claim.

"Automatic Stay" means the stay of certain actions taken against the Debtors or the Debtors' property, which stay is automatically imposed by and defined in 11 U.S.C. § 362(a).

"Bankruptcy Cases" means the bankruptcy cases of the Debtors listed on Exhibit A to the Claims Resolution Procedures, which cases are pending under chapter 11 of the Bankruptcy Code and that are being jointly administered by the Bankruptcy Court under Case No. 399-02649.

"Bankruptcy Code" means the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended from time to time.

"Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Tennessee.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and official forms, and the Local Rules of the United States Bankruptcy Court for the Middle District of Tennessee, including amendments in effect from time to time.

"Bar Date" means May 15, 2000, which was the last date by which Proofs of Claim evidencing Personal Injury Claims

were required to be filed with the Bankruptcy Court pursuant to the Order (found at Docket No. 2129) entered by the Bankruptcy Court on January 26, 2000.

"Claimant" means an Eligible Claimant who has asserted a Personal Injury Claim.

"Claims Resolution Procedures" means the Uniform Personal Injury Claims Resolutions Procedures, to which these definitions are attached and which have been approved by Procedures Order.

"Committee" means the official committee of unsecured creditors appointed in the Bankruptcy Cases by the United States Trustee on April 8, 1999, as reorganized from time to time by the United States Trustee.

"Debtor" or "Debtors" means the entities listed on Exhibit A attached to the Claims Resolution Procedures, as debtors and debtors-in-possession in the Bankruptcy Cases.

"Eligible Claimant" means a Claimant who filed a Proof of Claim evidencing a Personal Injury Claim by the Bar Date or who obtains an order authorizing a late-filed Personal Injury Claim.

"Insurance Policy" means an insurance policy between an Insurer and a Debtor which provides coverage for a particular Personal Injury Claim.

"Insurer" means the liable party under an Insurance Policy.

"Lien-Holder" means a person or entity that has a valid and enforceable lien under applicable non-bankruptcy law against a Claimant's rights in the Personal Injury Claim.

"Mediation" means the mediation of a Referred Claim under the Mediation Procedures.

"Mediation/Arbitration" means the additional procedures that will be used in those cases (and only in those cases) where all parties consent to such procedures in writing prior to a Mediation, whereby, if the parties reach and remain at an impasse during a Mediation, the Mediator will make a final determination of liability and damages with respect to the Personal Injury Claims, which determination is binding on all parties to the Mediation/Arbitration.

EXHIBIT B-2

"<u>Mediation Procedures</u>" means the procedures attached as Exhibit 4 to, and approved by, the Procedures Order, which govern the Mediation of Referred Claims..

"<u>Mediator</u>" means Dispute Resolution Professionals, Inc., which is the firm approved under the Procedures Order to conduct the Mediations pursuant to the Mediation Procedures and other provisions of the Procedures Order.

"<u>Non-Bankruptcy Litigation</u>" means any litigation currently pending in any court other than the Bankruptcy Court concerning a Personal Injury Claim.

"<u>Objection</u>" means the document evidencing the Debtors' disputes with a Personal Injury Claim and includes any omnibus objection that sets forth the Debtors' disputes with multiple Personal Injury Claims.

"<u>Opt-Out Order</u>" means the form of order attached as Exhibit 10 to, and approved by, the Procedures Order, which modifies the Automatic Stay consistent with the Opt-Out Procedure.

"<u>Opt-Out Procedures</u>" means the procedures by which, and conditions under which, a Claimant may voluntarily opt-out of the Claims Resolution Procedures, including the condition that the Claimant waive any claim against the Debtors in these Bankruptcy Cases.

"<u>Personal Injury Claim</u>" means any personal injury tort claim or wrongful death claim within the meaning of 28 U.S.C. § 157(b)(5), asserted against any of the Debtors and/or a Related Non-Debtor Party that arose prior to March 27, 1999, but not including claims for benefits under any applicable worker's compensation laws.

"<u>Procedures Order</u>" means the Order Approving (A) Uniform Personal Injury Claims Resolution Procedure, (B) Modification of the Automatic Stay with Respect to Such Personal Injury Claims, (C) the form of Notice of Personal Injury Claims, and (D) the Appointment of a Mediator, which was entered by the Bankruptcy Court on _____, which approved, among other things, the Uniform Personal Injury Claims Resolutions Procedures to which these definitions are attached.

"<u>Proof of Claim</u>" means the document evidencing a Personal Injury Claim, completed and filed by a Claimant on the

form required by and in compliance with the Order (found at Docket No. 2129) entered on January 26, 2000, pursuant to which the Bankruptcy Court set the Bar Date.

"Proposed Allowed Claim" means a proposed compromised allowed claim in the relevant Bankruptcy Cases in favor of a Claimant, which is proposed by the Debtors in connection with an Objection for the purpose of effecting a prompt and efficient settlement of a Personal Injury Claim.

"Referred Claim" means a Personal Injury Claim referred by the Debtors to Mediation pursuant to a Referral Notice.

"Referral Notice" means the form of notice attached as Exhibit 3 to, and approved by, the Procedures Order, which is to be filed and served by the Debtors in order to refer a particular Personal Injury Claim to Mediation.

"Related Non-Debtor Party" means any current or former agent, representative or employee of a Debtor.

"Response" means the document evidencing a Claimant's responses to the disputes to a Personal Injury Claim raised by the Debtors in an Objection, which Response shall include the legal and factual support for allowance of the Personal Injury Claim as asserted.

"Response Deadline" means the deadline for a Claimant to file and serve a Response to an Objection and is calculated as 30 days after the Debtors mailed the Objection by the Claimant.

"Stay Relief Order" means the form of order attached as Exhibit 9 to, and approved by, the Procedures Order, which grant a Claimant relief from the automatic stay to pursue Non-Bankruptcy Litigation after having complied with the Claims Resolution Procedures.

"Third-Party Indemnitors" means a person or entity that is liable under applicable non-bankruptcy law to indemnify the Debtors for the Personal Injury Claim, including an Insurer under an Insurance Policy.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| In re: | ) |
| | ) Case No. 399-02649 |
| | ) |
| | ) Chapter 11 |
| Service Merchandise Company, | ) |
| Inc., et al., | ) Judge Paine |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) |

NOTICE OF ENTRY OF ORDER AND APPROVAL
OF UNIFORM PERSONAL INJURY CLAIMS RESOLUTION PROCEDURES

PLEASE TAKE NOTICE that on _____, the Court entered an ORDER APPROVING (A) UNIFORM PERSONAL INJURY CLAIMS RESOLUTION PROCEDURES, (B) MODIFICATION OF THE AUTOMATIC STAY WITH RESPECT TO SUCH PERSONAL INJURY CLAIMS, (C) THE FORM OF NOTICE OF THE PROCEDURES, AND (D) THE APPOINTMENT OF A MEDIATOR (the "Order").

Pursuant to the Order, among other things, the Court approved the Uniform Personal Injury Claims Resolution Procedures and Mediation Procedures, which are attached hereto as Exhibits A and B respectively. The Order also modified the automatic stay applicable in these cases pursuant to 11 U.S.C. § 362 (the "Automatic Stay") to the extent necessary to implement the approved procedures, approved this form of notice of the approved procedures, and approved the appointment of Dispute Resolution Professionals, Inc. as the mediator to be used pursuant to the approved procedures.

EXHIBIT 2

PLEASE TAKE FURTHER NOTICE that copies of the entire Order and all exhibits may be obtained for cost directly from Professional Reprographics, P.O. Box 198666, Nashville, Tennessee 37219 (TEL: (615) 777-6099 and FAX: (615) 255-6092) or on the Bankruptcy Court's web site at www.tnmb.uscourts.gov.

Dated:    Nashville, Tennessee
          July 23, 2001

RESPECTFULLY SUBMITTED:

Paul G. Jennings
Beth A. Dunning
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238-0002
Tel: (615) 742-6200
Fax: (615) 742-6293

and

John Wm. Butler, Jr.
George N. Panagakis
SKADDEN, ARPS, SLATE,
  MEAGHER  & FLOM (ILLINOIS)
333 West Wacker Drive
Chicago, IL 60606-1285
Tel: (312) 407-0700
Fax: (312) 407-0411

Attorneys for Debtors and
Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| In re:<br><br>Service Merchandise Company,<br>Inc., et al.,<br><br>      Debtors. | )<br>) Case No. 399-02649<br>)<br>) Chapter 11<br>)<br>) Judge Paine<br>)<br>) Jointly Administered<br>)<br>) |

## NOTICE OF REFERRAL OF PERSONAL INJURY CLAIM TO MEDIATION

PLEASE TAKE NOTICE that Service Merchandise Company, Inc. and 31 of its affiliates (the "Debtors") hereby refers the following claim[s] (the "Claim[s]") filed in these cases to mediation, as provided for in the ORDER APPROVING (A) UNIFORM PERSONAL INJURY CLAIMS RESOLUTION PROCEDURES, (B) MODIFICATION OF THE AUTOMATIC STAY WITH RESPECT TO SUCH PERSONAL INJURY CLAIMS, (C) THE FORM OF NOTICE OF THE PROCEDURES, AND (D) THE APPOINTMENT OF A MEDIATOR (the "Order"):

[CLAIMANT NAME, AS REFLECTED ON PROOF OF CLAIM]

[PROOF OF CLAIM NUMBER]

The Debtors [do/do not] consent to Mediation/Arbitration of the Claim[s] in accordance with the Mediation Procedures approved by the Order.

Dated:    Nashville, Tennessee
        July 23, 2001

EXHIBIT 3

RESPECTFULLY SUBMITTED:

---

Paul G. Jennings
Beth A. Dunning
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238-0002
Tel: (615) 742-6200
Fax: (615) 742-6293

and

John Wm. Butler, Jr.
George N. Panagakis
SKADDEN, ARPS, SLATE,
  MEAGHER  & FLOM (ILLINOIS)
333 West Wacker Drive
Chicago, IL 60606-1285
Tel: (312) 407-0700
Fax: (312) 407-0411

Attorneys for Debtors and
Debtors-in-Possession

2214689.2

MEDIATION PROCEDURES[1]

1.  The Neutral.

        The Mediator shall select a qualified individual to act
as the mediator (the "Neutral") for each Referred Claim.   The
qualifications of the Neutral shall, at a minimum, comply with
all the requirements set forth in Local Rule 21 for the United
States District Court for the Middle District of Tennessee.   The
Neutral shall not have acted as mediator, or party arbitrator for
the Debtors at any time within the 2 years prior to the filing of
these Bankruptcy Cases.   The same Neutral may act as the mediator
for one or more Referred Claims.   The costs of retaining the
Neutral for any particular Mediation or binding
Mediation/Arbitration shall be divided between the Debtors and
the Claimant as set forth in these procedures.

2.  Mediation Notice

        Within 30 days of receiving a Referral Notice, the
Mediator shall serve a Mediation Notice, substantially in the
form attached to the Order as Exhibit 5, on the Debtors, counsel
for the Debtors, the Claimant and counsel for the Committee.   The
Mediation Notice shall (i) identify the Neutral for the mediation
of the Referred Claim, (ii) schedule the mediation, (iii) set the
deadlines for the exchange of Mediation Statements (defined
below), (iv) describe who should attend, (v) describe the fee
structure and the timing of the payment of any fees and the
effect of non-payment of fees, (vi) describe the effect of a
mediated settlement, (vii) describe the consequences of the
failure of a Claimant to attend and participate, (viii) include a
copy of the Mediation Procedures, and (ix) include, and require
participants to sign, a Mediation Agreement (as defined below),
which may offer participation in, and request an election whether
to participate in, Mediation/Arbitration.

---

[1]Capitalized terms used herein and not otherwise defined
shall have the meanings ascribed to them in the Uniform Personal
Injury Claims Resolution Procedures attached as Exhibit A to, and
approved by, the Order Approving (a) Uniform Personal Injury
Claims Resolution Procedures, (b) Modification of the Automatic
Stay with Respect to Certain Personal Injury Claims, (c) the Form
of Notice of the Procedures, and (d) the Appointment of a
Mediator (the "Procedures Order") (found at Docket No. ___)
entered by the Court on _____.

EXHIBIT 4

3.    Mediation Scheduling

    a.    Mediation Session.  The Mediation will be scheduled by the Mediator to occur no sooner than 30 days and not more than 90 days from the date of the Mediation Notice.

    b.    Location of Mediation.  The Mediation will be conducted at the offices of Bass, Berry & Sims PLC, 315 Deaderick Street, Suite 2700, Nashville, Tennessee.

    c.    Mediation Cancellation.  Either party may cancel the Mediation for good cause in accordance with the following procedures:

        i.    A request to cancel or reschedule a Mediation session must be made in writing and served, so as to be received by the Cancellation Deadline, on the Neutral and counsel for the opposing party.

        ii.   The Cancellation Deadline is set as 7 days prior to the scheduled mediation session.

        iii.  The Mediator shall thereafter reschedule the Mediation and serve a new Notice of Mediation.

4.    Mediation Statements

Seven (7) business days prior to the date set for the Mediation, the Claimant and the Debtors will serve confidential mediation statements (the "Mediation Statements") upon the Neutral.  The Mediation Statement shall be no longer than ten pages and shall contain:  (a) a concise statement of the party's theories for each claim or defense at issue; (b) factors, if any, compelling or blocking settlement; (c) identification of any essential or concerned parties; and (d) a detailed explanation of damages claimed in the case and/or defenses to damages.  The parties may, but need not, append documents in support of their Mediation Statements.  The Mediation Statements will not be disclosed by the Neutral except upon authorization by the party submitting the statement.

5.   Notice to Third Party Indemnitors and Lien-Holders

        The Claimant and the Debtors are each responsible for giving any necessary notice of any event or deadline in connection with the Mediation to their respective Insurers, Third Party Indemnitors or third party Lien-Holders.

6.   The Mediation Session

        The procedures to be employed by the Neutral at the Mediation are as follows:

   a.   In addition to the Neutral, the Mediation shall be attended only by the Claimant, the Debtors, any Third Party Indemnitor, if invited to participate in accordance with the Claims Resolution Procedures, and counsel for all such parties.

   b.   the Neutral shall establish the starting time and the ending time of the Mediation;

   c.   at the start of the Mediation, the Neutral will explain the process to be utilized and will establish the "ground rules" at the Mediation concerning (a) the presentation format to be followed during the mediation, (b) the manner in which the Neutral shall conduct negotiations with and amongst the parties; (c) the confidentiality of private communications with the Neutral and (d) all further procedural matters necessary and proper to the conduct of the mediation;

   d.   the Claimant and the Debtors shall execute a mediation agreement (the "Mediation Agreement"), substantially in the form attached to the Order as Exhibit 6, which contains a provision which forbids the Claimant from subpoenaing mediation materials, the Mediator or the Neutral in any subsequent litigation proceedings, and which requires the Claimant to hold the Mediator and the Neutral harmless from any act or omission in connection with the Mediation except for fraud or intentional misconduct; and

   e.   during the Mediation, the Neutral may meet together with both parties and or separately with each party individually to conduct the negotiations, and the negotiations will continue until the parties reach an agreement or terminate the negotiations due to an impasse; and

3

f.    if the Neutral meets privately with one party and its counsel, any information shared with the Neutral in such private meeting shall be confidential and not disclosed to the opposing party without authorization; and

g.    following the commencement of the Mediation, the Mediation may be terminated at any time by either party.

7.    Mediation/Arbitration

a.    Prior to the Mediation, the parties may jointly agree in writing (and only in such instance) to submit the Referred Claim to binding arbitration (the "Mediation/Arbitration") in which, if the parties reach an impasse during the Mediation and remain at impasse at the end of the Mediation, the Neutral shall make the final determination of liability and damages.

b.    The Neutral shall immediately provide the parties with the Neutral's decision.  Under such circumstances, the Neutral's decision on liability and damages is final and binding upon the parties.

c.    The procedures to be employed by the Neutral at the Mediation/Arbitration will be the same as those for the Mediation except that prior to the beginning of the scheduled mediation session, the parties shall execute the Mediation/Arbitration Rider to the Mediation Agreement, which contains additional provisions evidencing the parties' agreement that: (i) participation in the procedure is totally voluntary; (ii) the decision of the Neutral shall be final and binding; and (iii) there shall be no appeal of the Neutral's decision unless the Claimant can demonstrate undue bias, collusion or clear disregard for the law.

8.    Resolution of Personal Injury Claim

If a Referred Claim is resolved by Mediation or Mediation/Arbitration, the Debtors will send to the Claimant, within 15 days after the conclusion of the Mediation or Mediation/Arbitration, an Agreed Order of Resolution, fixing the allowed amount of the Personal Injury Claim, which Agreed Order shall be subject to the notice and Bankruptcy Court approval procedures set forth in the Claims Resolution Procedures.

4

9.   Claimant's Participation and Attendance at Mediation

The Claimant shall attend the Mediation or
Mediation/Arbitration through a representative with complete
authority to compromise, settle or otherwise resolve the matter
during the session.   In addition, any counsel of record for the
Claimant shall also attend the Mediation or
Mediation/Arbitration.

10.  Costs of Mediation

   a.   Mediator Fees.   The Debtors shall be primarily
        responsible for the $1,500 Daily Fee and any other fees
        and costs for the Mediator, as set forth in the
        Mediator Engagement Letter, except that the Claimant
        shall be required to pay to the Mediator $300 and any
        unpaid cancellation fees for which the Claimant is
        responsible under these Procedures, which payment(s)
        shall be credited against amounts due by the Debtors
        for fees and costs of the Mediator.   The Claimant shall
        pay its portion of the Mediator's Daily Fee no later
        than 5 days prior to the scheduled Mediation or
        Mediation/Arbitration.

   b.   Fees and Expenses of Parties.   Except as otherwise set
        forth herein, each party shall be responsible for their
        own fees and expenses, including without limitation
        attorneys fees, for the Mediation or
        Mediation/Arbitration.

11.  Mediation Default

In the event a Claimant (i) fails to timely submit its
Mediation Statement, (ii) fails to timely pay the required
portion of the Mediator Daily Fee or any other fees or expenses
required under these Procedures, (iii) fails to appear at the
scheduled Mediation or Mediation/Arbitration session, or (iv)
fails to timely reschedule an alternative time acceptable to the
Mediator and the Debtors, the Claimant shall be in Default of
these Mediation Procedures

   a.   Notice of Default.   Upon the Default of the Claimant,
        the Mediator shall notify the Debtors and the Claimant
        in writing of the default(the "Default Statement").
        The Debtors shall then file a Notice (the "Default
        Notice") with the Court, setting forth the
        circumstances of the default.   The Default Notice shall

5

attach the Default Statement and be served upon the
Committee and the Claimant.

b.   Voting, Distribution and Stay Relief.  Upon the Default
     of the Claimant, and until the Claimant cures the
     Default, the Claimant shall not have an allowed claim
     for purposes of voting on any proposed plan of
     reorganization and for purposes of any distribution
     under any confirmed plan of reorganization.  Further,
     upon the Default of the Claimant and until the Claimant
     cures the Default, the Claimant shall not be entitled
     to relief from the Automatic Stay in order to
     establish, liquidate or otherwise engage in any
     collection of the Personal Injury Claim from the
     Debtors and/or any Third Party Indemnitor.

c.   Termination Fees and Costs.  Any cancellation after the
     Cancellation Deadline, any termination or any default
     by either the Debtors or the Claimant may result in the
     imposition of termination fees and/or costs in
     accordance with the Mediator Engagement Letter, which
     fees and/or costs shall be paid in full by the party
     cancelling, terminating or defaulting.

12.  Alteration of Mediation Procedures

     Any of these Mediation Procedures may be varied by
agreement of the parties and the Neutral.

2214455.5                        6

Mediation Notice
Page 1

## [DRP LETTERHEAD]

Date

Party's Name
Party's Address
Party's City, state, zip

Re:  <u>In re Service Merchandise Company, Inc., et al.</u>, No. 399-0264 (Bankr.
     M.D. Tenn.)
     [<u>Party v. Party</u>, No. _____ (Court)]

## MEDIATION NOTICE1

Month- Date, Year - Time of Mediation

<u>PLEASE READ THIS NOTICE CAREFULLY BECAUSE YOUR LEGAL
RIGHTS MAY BE AFFECTED BY YOUR FAILURE TO APPEAR AT THE
SCHEDULED MEDIATION CONFERENC OR BY YOUR FAILURE TO
COMPLY WITH THE PROCEDURES DESCRIBED IN THIS NOTICE.  YOU
MAY WISH TO CONTACT AN ATTORNEY CONCERNING YOUR
OBLIGATIONS UNDER THIS NOTICE.</u>

This notice confirms that the Debtors (as defined below) have referred your Personal
Injury Claim against them to mediation.  A mediation conference with [MEDIATOR'S
NAME], Dispute Resolution Professionals (the "Mediator"), has been scheduled for
[date & time].  The mediation will be held at the offices of Bass, Berry & Sims PLC,
315 Deaderick Street, Suite 2700, Nashville, Tennessee.

The parties are must submit to the Mediator at [DRP's address] <u>no later than 7 days
prior to the scheduled Mediation,</u> the following documents:

1.   A signed copy of the Mediation Agreement enclosed with this Notice, along with
     any fees due thereunder.  You may, but are not required to, sign and return a copy
     of the Mediation/Arbitration Rider to the Mediation Agreement, if you consent to

---

1    The form of this notice and procedures referred to herein, have been approved Order entered
     _____ (found at Docket No. _____) (the "Procedures Order") of the United States Bankruptcy Court
for the Middle District of Tennessee in the bankruptcy cases filed by Service Merchandise Company, Inc.
and 31 of its affiliates (collectively, the "Debtors"), debtors and debtors-in-possession in such cases
pending under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, and jointly
administered under the style <u>In re: Service Merchandise Company, Inc.</u> and case no. 399-02649 (the
"Bankruptcy Cases") .

## EXHIBIT 5

Mediation Notice
Page 2

the additional procedures for the issuance of a binding decision by the Mediator if the parties cannot come to an agreed settlement pursuant to the Mediation. You will be subject to such procedures only if both you and the Debtors consent by signing and returning the Mediation/Arbitration Rider.

2.    A confidential memorandum setting forth the factual and legal position of each claim or defense asserted, factors compelling or blocking settlement, the identification of any essential or concerned parties, and a detailed explanation of damages claimed in the case and or defense to damages. **The Confidential Memorandum should be no more than 10 pages long.**

3.    The parties may, but need not, append documents in support of the Confidential Memorandum, such as basic pleadings, contracts and documents relevant to contested issues.

All documentation submitted and discussions occurring during mediation are
**STRICTLY CONFIDENTIAL PURSUANT TO THE ENCLOSED MEDIATION
AGREEMENT AND THE PROCEDURES ORDER.**

In addition, you are bound to comply with the procedures set forth in the Mediation Procedures enclosed with this notice, which have been approved by the Bankruptcy Court. Please note that the enclosed Mediation Procedures set forth additional requirements with respect to the payment of fees, cancellation and rescheduling the Mediation, and other procedures that will be used during the Mediation.

Please carefully read the enclosed Mediation Procedures, the Information Sheet Concerning Mediation Program and the Agreement to Mediate. Parties are requested to contact the Mediator with any questions regarding either attached document.

In addition to the Mediator, the following parties will be attending the mediation:

Litigation Claimant's Representative_____
Debtor_____
Debtor's Representative_____
Debtor_____
Debtor's Representative_____
Any Third Party Indemnitors invited pursuant to the Mediation and Claims Resolution Procedures.

Yours truly,

# AGREEMENT TO MEDIATE

This is Agreement between Dispute Resolution Professionals ("DRP" or "the Mediator") as represented by _____ and _____ (the "Claimant") Service Merchandise Company, Inc. ("Service Merchandise") and 31 of its affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the cases pending under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court") and jointly administered under the style In re: Service Merchandise Company, Inc. and case no. 399-02649 (the "Bankruptcy Cases") (Service Merchandise and the Affiliate Debtors collectively, the "Debtors") (hereafter the Claimant and the Debtors may be referred to as the parties). This Agreement is entered into pursuant to the Order Approving (A) Uniform Personal Injury Claims Resolution Procedures, (B) Modification of the Automatic Stay with Respect to Certain Personal Injury Claims, (C) Form of Notice of the Procedures, and (D) Appointment of a Mediator (the "Procedures Order"), entered by the Bankruptcy Court on _____.  The mediation with DRP involves a Personal Injury Claim[1], which is the subject of a case styled_____, case no _____ now pending in_____

The provisions of this agreement are as follows:

1.      The Mediator is a neutral facilitator who will assist the parties to reach their own settlement.  Unless both parties consensually execute the Mediation/Arbitration Rider attached hereto, the Mediator will not make decisions about "right" or "wrong" or tell the parties what to do.

2.      The Mediator will not offer legal advice nor will the Mediator provide legal counsel. Each party is advised to retain his/her own attorney in order to be properly counseled about his/her legal interests, rights and obligations.

3.      It is understood that in order for mediation to work, open and honest communications are essential.  Accordingly, all written and oral communications, negotiations and statements made in the course of the Mediation will be treated as privileged settlement discussions and are absolutely confidential. Therefore:

    a.      The Mediator will not reveal the names of the parties or anything discussed in the mediation, unless expressly allowed to do so by all parties.

    b.      The parties agree that they will not at any time, before, during, or after the Mediation, call the Mediator or anyone associated with DRP as witnesses in any legal or administrative proceeding concerning this dispute. To the extent that they may have a right to call the Mediator or anyone associated with DRP as witnesses,

---

[1]Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Claims Resolution Procedures attached as Exhibit 1 to, and approved by, the Procedures Order.

EXHIBIT 6

DRP Mediation Agreement
Page 2

   that right is hereby waived.

 c. The parties agree not to subpoena or demand the production of any records, notes, work product or the like of the Mediator in any legal or administrative proceedings concerning this dispute. To the extent that they may have a right to demand these documents, that right is hereby waived.

 d. If, at a later time, either party decides to subpoena the Mediator, the Mediator will move to quash the subpoena. The party agrees to reimburse the Mediator for whatever expenses he/she incurs in such an action (including attorneys fees) plus $200 per hour for all the time that is taken by the Mediator by this matter.

 e. The exceptions to the above are: this agreement to mediate and any written agreement made and signed by the parties as a result of the mediation may be used in any relevant proceeding, unless the parties make a written agreement no to do so.

 f. The parties agree to hold the Mediator an any employee or agent of the Mediator harmless from any act or omission in connection with the mediation except for fraud or intentional misconduct.

4. It is understood that full disclosure of all relevant and pertinent information is essential to the mediation process. Accordingly, there will be a complete and honest disclosure by each of the parties to the other and to the Mediator of all relevant information and documents. This includes providing each other and the Mediator with all information and documentation that usually would be available through the discovery process in a legal proceeding. If either party fails to make such full disclosure, then the agreement reached in the Mediation may be set aside.

5. Neither the parties nor the Mediator will make any audio or video record of the Mediation or any communications related to it (e.g., telephone calls between a Mediator and a party), unless all individuals involved in that communication have previously agreed to said audio or video recordings. No such records will be made by anyone connected with the Mediation without full disclosure.

6. While both parties intend to continue with the Mediation until a settlement agreement is reached, it is understood that either or both parties may withdraw from the Mediation at any time. It is agreed that if one of parties decide to withdraw from the Mediation, that the party wishing to withdraw will inform the Mediator of their desire to withdraw and permit the Mediator to communicate the party's desire to terminate the Mediation to the other party.

7. If an agreement is reached, the Debtors will prepare the Agreed Order of Resolution

DRP Mediation Agreement
Page 3

reflecting the agreed amount of the allowed unsecured claim. The parties agree that the Agreed Order will be filed with, and is subject to approval by, the Bankruptcy Court and will be binding on both parties.

8.      In the event that a Claimant is not resolved by the parties through the Mediation, or if elected by both parties Mediation/Arbitration, as set forth in the Mediation/Arbitration Rider attached hereto, upon a motion by the Claimant and on the terms set forth in the Claims Resolution Procedures, the Debtors will submit an order modifying the Automatic Stay to permit the parties to litigate the dispute in the appropriate non-bankruptcy forum.

9.      The parties agree to share the cost of the Mediation as set forth herein. However, the cost of retaining the Mediator shall be the primary responsibility of the Debtors and the Claimant shall be obligated to pay to the Mediator, on or before 7 days before the scheduled Mediation, $300, which payment shall be credited toward any fees and costs incurred by the Debtors under the Engagement Letter with the Mediator. In addition the Claimant shall be obligated to pay to the Mediator any cancellation fees for which the Claimant is responsible under the Mediation Procedures, which payment shall be made within 10 days after such cancellation fees are incurred, and which payment shall be credited toward any fees and costs incurred by the Debtors under the Engagement Letter with the Mediator. Should the Claimant fail to timely pay the fees and costs as required under this agreement and the Mediation Procedures, and until such fees and costs are paid, the Claimant shall not have an allowed claim for purposes of voting on any proposed plan of reorganization or for purposes of distribution under any confirmed plan of reorganization. Further, until such payment is made, the Claimant shall not be entitled to any relief from the Automatic Stay.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

DRP Mediation Agreement
Page 4

<table>
<tr><td align="center">Parties:</td><td align="center">Mediator:</td></tr>
<tr><td>I have read, understand and agree to each of the provisions of this agreement and have received a copy of it.</td><td>I have read, understand and agree to each of the provisions of this agreement.</td></tr>
</table>

_____   Date
Signature
Debtor's Representative

_____   Date
Signature
Debtor's Representative

_____   Date
Signature
Claimant's Representative

_____   Date
Signature

_____   Date
Signature

_____   Date
Signature

## MEDIATION/ARBITRATION RIDER
## TO AGREEMENT TO MEDIATE

As signified by the signatures to this Rider below, the parties to the Agreement to Mediate agree to the following provisions, in addition to the provisions of such Mediation Agreement to Mediate.  To the extent any provisions in this Rider conflict with any provisions in the Agreement to Mediate, the provisions of this Rider shall control.

1.    The Neutral while serving as a mediator will act as a facilitator to assist the parties in reaching their own settlement.  As a mediator, the Neutral will not make decisions about "right" or "wrong" or tell the parties what to do.

2.    In the event that this Personal Injury Claim is not resolved by the parties through initial Mediation, the parties **voluntarily** agree to have the Neutral serve as an Arbitrator. The Neutral shall immediately make a final and binding determination of liability and damages. The Neutral will immediately provide the parties with the decision. The parties further agree that there shall be no appeal of the Neutral's decision, unless the Claimant can demonstrate undue bias, collusion or clear disregard for the law.

| Parties: | Mediator: |
|---|---|
| I have read, understand and agree to each of the provisions of this agreement and have received a copy of it. | I have read, understand and agree to each of the provisions of this agreement. |

_____    Date _____          _____    Date _____
Signature                                                                           Signature
Debtor's Representative

_____    Date _____          _____    Date _____
Signature                                                                           Signature
Debtor's Representative

_____    Date _____
Signature
Claimant's Representative

_____    Date _____
Signature

2214110.3

[DRP LETTERHEAD]

July 19, 2001

Ms. Karren Prasifka, Esq.
Service Merchandise Company, Inc.
7100 Service Merchandise Boulevard
Brentwood, Tennessee 37027

        Re:    Engagement Agreement with
               Service Merchandise Company, Inc.

Dear Ms. Prasifka:

We are pleased to offer the alternative dispute resolution services (the "Services") described in this letter to Service Merchandise Company, Inc. (the "Company"). In connection with this proposed engagement (the "Project"), I am writing to provide you with information regarding various aspects of the Company's proposed engagement of Dispute Resolution Professionals, Inc. ("DRP"), including staffing and fees. If the matters set forth in this letter are satisfactory, this letter will form the basis of the Firm's engagement for the Project.

Scope of Services. DRP will provide the following types of Services:

(a)    Mediation: DRP will contract third party neutrals (each, a "Neutral") to assist the parties through a facilitative process to reach agreement on disputed issues (the "Mediation"). Prior to the commencement of the Mediation, each party to the Mediation will be required to execute an agreement in the form attached hereto as Exhibit A.

(b)    Mediation/Arbitration: DRP will contract Neutrals to assist the parties through a Mediation. Any unresolved issues will be submitted to the same Neutral who conducted the Mediation for a decision that will be binding on the parties (the "Mediation/Arbitration"). Prior to the commencement of the Mediation, each party to the Mediation/Arbitration will be required to execute the Mediation/Arbitration Rider attached to the Mediation Agreement attached hereto as Exhibit A.

(c)    General. DRP will perform the Services with respect to litigation claims identified by the Company. DRP understands that the Company will seek approval of a mediation program and related procedures from the United States Bankruptcy Court for the Middle District of Tennessee (the "Court"), and that such program will be subject to the terms of the Court's approval. DRP also understands that the Company may later add certain bankruptcy claims to the Project. Specifically, DRP will be responsible for (i) serving written notice of a

EXHIBIT 7

Ms. Karren Prasifka, Esq.
July 3, 2001
Page 2

mediation session; (ii) identifying the Neutral for such session; (iii) receiving and reviewing mediation statements supplied by the parties; (iv) preparing for each mediation session as appropriate; (v) scheduling mediation sessions as appropriate; and (vi) conducting the mediation sessions. We will review documents, consult with you concerning claims and defenses, engage in negotiations in an effort to resolve the litigation matters without litigation, and, if successful, participate in the preparation of a settlement agreement. If settlement is not achieved, we will review and prepare pleadings and other court papers, make court appearances, and take such other actions as we deem necessary and consistent with the representation of the Company.

Staffing. Neutrals with expertise appropriate to the Project and qualifications sufficient to meet the requirements of the Court's local rules and orders will be chosen by DRP from DRP's network of alternative dispute resolution professionals. These professionals include the principals of DRP, affiliates of DRP and other professionals chosen by DRP based on their qualifications. DRP will be responsible for contracting with and paying the Neutrals.

Fee and Expenses. DRP will submit statements for the Services for payment on a monthly basis, and the Company promises to pay such statements within thirty days of the such statements. DRP's fee will be $1,500 per eight-hour day of mediations, regardless of the number of mediations conducted during such day except that DRP will schedule at least 2-3 mediations per day of sessions. Preparation time is included in this fee at no additional charge. DRP will also include in its statements reimbursement for any reasonable and necessary travel and lodging expenses. In addition, in the event that a mediation session is cancelled on less than seven days notice to DRP, a cancellation fee will remain payable in the amount of any unused or unrefunded out-of-pocket travel and lodging expense incurred prior to the cancellation, plus a fee in the amount of $750.[1] To the extent a payment is made to the Mediator in accordance with the requirements of the Mediation Procedures approved by the Court, such payment shall be credited toward the fees and expenses incurred by the Debtors and for which the Debtors are primarily responsible hereunder.

If this letter is satisfactory, please sign a copy and return it to me after reviewing it with your counsel. Obviously, if you want to discuss any aspect of this letter further, please call me. Again, we very much appreciate the opportunity to work with the Company and look forward to doing so.

---

[1]     In the event that DRP travels for at least one mediation session that actually takes place per day of scheduled mediations, among a group of other sessions that are untimely cancelled, there will be no cancellation fee.

Ms. Karren Prasifka, Esq.
July 3, 2001
Page 3


With best regards.

Sincerely,


_____


Agreed: July ___, 1999

SERVICE MERCHANDISE COMPANY, INC.


By: _____
Name: _____
Title: _____

Attachments

Ms. Karren Prasifka, Esq.
July 3, 2001
Page 4

2214108.2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| In re:<br><br>Service Merchandise Company, Inc., et al.,<br><br>      Debtors. | Case No. 399-02649<br><br>Chapter 11<br><br>Judge Paine<br><br>Jointly Administered |

NOTICE AND AGREED ORDER OF RESOLUTION OF PERSONAL INJURY CLAIM
OF _____ (CLAIM NO. _____ )

### NOTICE

Notice is hereby given that Service Merchandise Company, Inc. ("Service Merchandise") and 31 of its affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (Service Merchandise and the Affiliated Debtors, collectively, the "Debtors") have agreed to a resolution of a Personal Injury Claim filed by _____. Please be advised that the agreement has been approved in the Agreed Order set forth below. Unless a written objection is timely filed and served, the Order below will be deemed final and effective as of the date of entry by the Court, without further notice or hearing. If a timely objection is filed, the Motion will be heard at the next scheduled Omnibus hearing in these cases.

Objections to the agreement granted in the Agreed Order below must be made in writing and filed with the United States Bankruptcy Court and served on the undersigned counsel and counsel for the Committee on or before twenty (20) days after the date of mailing of this Notice and Order. Any objection filed must conform to the Federal Rules of Bankruptcy Procedure, Rule 9004-1 of the Local Rules for the United States Bankruptcy Court for the Middle District of Tennessee (the "Local Rules") and the Order of this Court establishing case management and administrative procedures (Docket No. 79) (the "Case Management Order").

EXHIBIT 8

AGREED ORDER OF RESOLUTION OF PERSONAL INJURY CLAIM OF
(CLAIM NO.          )

This Agreed Order is entered into and submitted to the Court
in accordance with, and in implementation of, the procedures
approved by the Court in the Order Approving (A) Uniform Personal
Injury Claims Resolution Procedures, (B) Modification of the
Automatic Stay with Respect to Such Personal Injury Claims, (C)
the Form of Notice of the Procedures, and (D) the Appointment of
a Mediator (the "Procedures Order") and upon the Objection to the
personal injury claims asserted by _____ (the "Claimant") in
these cases; and the Claimant and Service Merchandise Company,
Inc. ("Service Merchandise") and 31 of its affiliates (the
"Affiliate Debtors"), debtors and debtors-in-possession in the
above-captioned cases (Service Merchandise and the Affiliate
Debtors collectively, the "Debtors") of the Debtors having
agreed, as signified by the signatures of counsel below, to a
resolution of the disputed Claims as set forth in this Agreed
Order; and the Court being otherwise sufficiently advised, it is
hereby

ORDERED, ADJUDGED AND DECREED:

1.    The Claimant shall have an allowed general prepetition
unsecured claim in the amount of $_____ against [Relevant
Debtor] in Case No. _____ and a copy of this Order shall be
docketed by the clerk of the Court in such case.

2

2.   The automatic stay imposed by 11 U.S.C. § 362(a) remains in effect with respect to any and all actions to collect or enforce the claim allowed in this Order and/or any other claims against the Debtors or against the assets of the Debtors or any affiliate or insider of the Debtors.

ENTER this _____ day of July, 2001.

_____
Judge George C. Paine II
United States Bankruptcy Judge

3

AGREED TO AND
APPROVED FOR ENTRY:


_____
Paul G. Jennings
Beth A. Dunning
BASS, BERRY & SIMS PLC               Attorney for the Movant
315 Deaderick St., Ste. 2700
Nashville, TN 37238-0002
Tel: (615) 742-6200
Fax: (615) 742-6293

        and

John Wm. Butler, Jr.
George N. Panagakis
SKADDEN, ARPS, SLATE,
    MEAGHER  & FLOM (ILLINOIS)
333 West Wacker Drive
Chicago, IL 60606-1285
Tel: (312) 407-0700
Fax: (312) 407-0411

Attorneys for Debtors and
Debtors-in-Possession



                                    AGREED TO AND ACCEPTED:


                                    _____
                                    Claimant

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| In re: | ) Case No. 399-02649 |
| | ) |
| Service Merchandise Company, | ) Chapter 11 |
| Inc., et al., | ) Judge Paine |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

### ORDER GRANTING STAY RELIEF WITH RESPECT TO PENDING LITIGATION WITH _____

This Agreed Order is entered into and submitted to the Court in accordance with, and in implementation of, the procedures approved by the Court in the Order Approving (A) Uniform Personal Injury Claims Resolution Procedures, (B) Modification of the Automatic Stay with Respect to Such Personal Injury Claims, (C) the Form of Notice of the Procedures, and (D) the Appointment of a Mediator (the "Procedures Order"); and _____ (the "Claimant") and Service Merchandise Company, Inc. ("Service Merchandise") and 31 of its affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (Service Merchandise and the Affiliate Debtors collectively, the "Debtors") having agreed, as signified by the signatures of counsel below, to the express findings set forth below and to a modification of the automatic stay, as set forth herein; and the Court being otherwise sufficiently advised,

EXHIBIT 9

IT IS HEREBY ORDERED:

1.    The automatic stay imposed by 11 U.S.C. § 362 with respect to the litigation against the Debtors (the "Personal Injury Litigation"), styled _____, currently pending in _____, under Case No. _____ is hereby modified in accordance with the terms set forth in this Order.

2.    The automatic stay imposed by 11 U.S.C. § 362 is partially lifted to permit the Claimant to proceed with and continue to a final conclusion the Personal Injury Litigation, including without limitation, any and all appeals; provided that no proceedings in the Personal Injury Litigation, including without limitation mediation, oral argument or discovery, shall be scheduled for any date prior to thirty (30) days after entry of this order; and provided that the Claimant shall use best efforts in proceeding with the litigation, including without limitation scheduling discovery or other proceedings, so as not to interfere with the Debtors' businesses and/or the administration of these cases.

3.    Notwithstanding the partial lifting of the stay as set forth herein, the automatic stay remains in effect with respect to any and all actions to collect or enforce any final judgment or claim against the Debtors or against the assets of the Debtors or any affiliate or insider of the Debtors.

2

4.   Any enforceable claim against the Debtors or any
affiliate of the Debtors, arising out of the Personal Injury
Litigation, whether asserted in these cases by the Claimant
and/or by any third party that may satisfy any judgment on behalf
of the Debtors, shall be treated in these cases as a general
prepetition unsecured claim; provided that nothing in this order
shall limit the Debtors' right to object to any proof of claim,
filed in these cases, arising out of the Personal Injury
Litigation, on the basis that such claim has been partially or
fully satisfied by setoff or other payment to the Claimant or on
the basis that the Claimant fails to timely file a Proof of Claim
in these cases pursuant to any order establishing a bar date or
other procedures for filing proofs of claim in these cases.

ENTER this _____ day of _____.


_____
Judge George C. Paine II
United States Bankruptcy Judge

APPROVED FOR ENTRY:


_____
Paul G. Jennings
Beth A. Dunning
BASS, BERRY & SIMS PLC
315 Deaderick St., Ste. 2700
Nashville, TN 37238-0002
Tel: (615) 742-6200
Fax: (615) 742-6293

        and

3

John Wm. Butler, Jr.
George N. Panagakis
SKADDEN, ARPS, SLATE,
    MEAGHER  & FLOM (ILLINOIS)
333 West Wacker Drive
Chicago, IL 60606-1285
Tel: (312) 407-0700
Fax: (312) 407-0411

Attorneys for Debtors and
Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| In re: | Case No. 399-02649 |
| Service Merchandise Company, Inc., et al., | Chapter 11 |
|  | Judge Paine |
| Debtors. | Jointly Administered |

## AGREED ORDER BETWEEN DEBTORS AND
## TO MODIFY AUTOMATIC STAY

This Agreed Order is entered into and submitted to the Court
in accordance with, and in implementation of, the procedures
approved by the Court in the Order Approving (A) Uniform Personal
Injury Claims Resolution Procedures, (B) Modification of the
Automatic Stay with Respect to Such Personal Injury Claims, (C)
the Form of Notice of the Procedures, and (D) the Appointment of
a Mediator (the "Procedures Order"); and _____ (the
"Claimant") and Service Merchandise Company, Inc. ("Service
Merchandise") and 31 of its affiliates (the "Affiliate Debtors"),
debtors and debtors-in-possession in the above-captioned cases
(Service Merchandise and the Affiliate Debtors collectively, the
"Debtors") having agreed, as signified by the signatures of
counsel below, to the express findings set forth below and to a
modification of the automatic stay, as set forth herein and upon
the condition that the Claimant waive any claims against the

EXHIBIT 10

Debtors in these cases; and the Court being otherwise
sufficiently advised,

IT IS HEREBY FOUND:

(a)  On March 27, 1999 (the "Petition Date"), each of the
Debtors filed voluntary petitions in this Court for
reorganization relief under chapter 11 of title 11 of the United
States Code, 11 U.S.C. § 101, et seq., as amended (the
"Bankruptcy Code").  The Debtors continue to operate their
businesses and manage their properties as debtors-in-possession
pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

(b)  As of the Petition Date, Service Merchandise was a
named defendant in certain litigation (the "Litigation"), styled
_____, pending in _____, under Case
No. _____, in which the Claimant seeks to establish and
liquidate certain personal injury claims of liability (the
"Claims") against the Debtors.

(c)  On the Petition Date, all acts to proceed with and
continue the Litigation were automatically stayed under 11 U.S.C.
§ 362(a) (the "Automatic Stay").

(d)  The Claimant desires to pursue recovery of any
liquidated, final judgment or settlement (an "Established Claim")
on the Claims from any insurance coverage (the "Insurance
Coverage") that is available to satisfy such an Established Claim
under any valid insurance policy (an "Insurance Policy") insuring

2

the Debtors excluding any self-insured retention of liability by the Debtors under such Insurance Policy.

(e)   The Claimant, on behalf of himself, his heirs, representatives and assigns, has agreed, notwithstanding any proof of claim filed by him or on his behalf in these cases, and notwithstanding any self-insured retention of liability by the Debtors under any applicable Insurance Policy, to waive any and all claims he may have against the Debtors.  The Claimant expressly understands that he, his heirs, representatives and assigns, may seek satisfaction of any Established Claim only as set forth in this Order and that, in no event, will the Debtors, their assets or their estates be liable in any other way whatsoever with respect to the Claims, any Established Claim or any proof of claim filed by or on behalf of the Claimant in these cases.

(f)   The Claimant acknowledges that he has had an opportunity to consult with counsel concerning the waiver as expressly provided in this Order and acknowledges that, in agreeing to such waiver, he has not relied on any promises or representations by the Debtors or any party acting on behalf of the Debtors concerning the existence, limits or availability of Insurance Coverage, or concerning the existence or non-existence of any defenses that any insurance company may raise to its liability for any Established Claim.

3

(g)   The Claimant, on behalf of himself, his heirs,
representatives and assigns, and the Debtors have agreed to
modify the Automatic Stay solely on the terms set forth herein.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1.   The Automatic Stay with respect to the Litigation is
hereby modified in accordance with the terms set forth in this
Agreed Order.

2.   The Automatic Stay is partially lifted (1) to permit
the Litigation to proceed and continue to a final judgment or
settlement and (2) to permit the Claimant to attempt to recover
any Established Claim from the Insurance Coverage; provided that
no proceedings in the Litigation, including, without limitation,
oral argument or discovery, shall be scheduled for any date prior
to thirty (30) days after entry of this order; and provided that
the Claimant and all persons acting on behalf of the Claimant
shall use best efforts in proceeding with the Litigation,
including, without limitation, scheduling discovery or other
proceedings, so as not to interfere with the Debtors' business
and/or the administration of these cases.

3.   Notwithstanding the partial lifting of the stay as set
forth herein, the automatic stay remains in effect with respect
to any and all actions to collect or enforce any claims against
the Debtors or the Debtors' estates, and any Established Claim in

4

the Litigation shall be enforceable and collectable, if at all, only from any Insurance Coverage.

4.    Notwithstanding any proof of claim filed by or on behalf of the Claimant in these cases, the Claimant, on behalf of himself, his heirs, representatives and assigns, shall be and is hereby deemed to have waived, and the Debtors, their estates, successors, assigns, affiliates, officers, directors and employees are hereby released from, any and other rights, claims, actions, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses or demands whatsoever, known or unknown, of any nature that could be asserted by or on behalf of the Claimant, and any and all claims asserted by or on behalf of the Claimant in these cases is hereby disallowed.

5.    Nothing in this Order shall be deemed an admission of fact on the part of the Debtors with respect to the Claims or any facts alleged in the Motion or in the Litigation.

6.    Nothing in this Order shall be deemed an agreement, admission or acknowledgment by the Debtors of the existence or availability of any Insurance Coverage or the non-existence of any defenses by any insurance company to liability for any Insurance Coverage,

7.    Nothing in this Order shall be deemed an agreement or acknowledgment by the Debtors to provide assistance or to cooperate with the Claimant, any insurance company or any other

5

party in the efforts to prosecute or defend against the Claims asserted in the Litigation.

8.   This Court shall retain jurisdiction to hear any matters or disputes arising from or relating to this Order.

ENTER this _____ day of _____.

_____
Judge George C. Paine II
United States Bankruptcy Judge

AGREED TO AND
APPROVED FOR ENTRY:

_____

Paul G. Jennings
Beth A. Dunning
BASS, BERRY & SIMS PLC
315 Deaderick St., Ste. 2700
Nashville, TN 37238-0002                Attorney for the Claimant
Tel: (615) 742-6200
Fax: (615) 742-6293

    and

John Wm. Butler, Jr.
George N. Panagakis
SKADDEN, ARPS, SLATE,
   MEAGHER  & FLOM (ILLINOIS)
333 West Wacker Drive
Chicago, IL 60606-1285
Tel: (312) 407-0700
Fax: (312) 407-0411

Attorneys for Debtors and
Debtors-in-Possession


                       AGREED TO AND ACCEPTED:


                       _____

                       Claimant

MASTER SERVICE LIST
(Updated through Docket No. 5166)
*IN RE SERVICE MERCHANDISE COMPANY, INC., et al.*
*U.S. Bankruptcy Court for the Middle District of Tennessee*
*Case No. 399-02649*

70. **Counsel for R.R. Donnelley &**
    **Sons Company**
    George B. McGugin
    Watkins, McGugin, McNeilly &
    Rowan, PLLC
    214 Second Ave North, Ste 300
    Nashville, TN 37201
    (615) 255-2191
    (615) 242-0238

ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| HARNISCHFEGER INDUSTRIES, | ) | |
| INC., et al.[1], | ) | Case No. 99-2171 (PJW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**ORDER AUTHORIZING AND APPROVING
OMNIBUS PROCEDURE FOR SETTLING CLAIMS AND
CAUSES OF ACTION BROUGHT BY OR AGAINST THE
DEBTORS IN A JUDICIAL, ADMINISTRATIVE,
ARBITRAL OR OTHER ACTION OR PROCEEDING**

Upon the motion, dated July 1999 (the "Motion"), of the above-captioned

debtors and debtors in possession (collectively, the "Debtors"), for an order approving

and authorizing the omnibus procedure for settling claims and causes of action brought

by or against one or more of the Debtors in a judicial, administrative, arbitral or other

action or proceeding pursuant to section 363(b) of title 11 of the United States Code (the

"Bankruptcy Code"), all as more fully set forth in the Motion; and it appearing that the

Court has jurisdiction to consider the Motion and the relief requested therein in

---

[1] The Debtors are the following entities: Harnischfeger Industries, Inc.; American Alloy Company; American Longwall Face Conveyors, Inc.; American Longwall, Inc.; American Longwall Mexico, Inc.; American Longwall Rebuild, Inc.; American Longwall Roof Supports, Inc.; Beloit Corporation; Beloit Holdings, Inc.; Beloit International Services, Inc.; Beloit Iron Works, Inc.; Beloit Pulping Group, Inc.; Beloit Technologies, Inc.; Benefit, Inc.; BWRC Dutch Holdings, Inc.; BWRC, Inc.; Dobson Management Services, Inc.; Dobson Park Industries, Inc.; Ecolaire Export FSC, Inc.; Ecolaire Incorporated; Field Repair Services LLC; Fitchburg Corporation; Gullick Dobson Inc.; Harnischfeger Corporation a/k/a P&H Mining and a/k/a Hamco; Harnischfeger Credit Corporation; Harnischfeger Overseas, Inc.; Harnischfeger Technologies, Inc.; Harnischfeger World Services Corporation; HCHC, Inc.; HCHC UK Holdings, Inc.; HIHC, Inc.; The Horsburgh & Scott Company; Industrial Clean Air, Inc.; J.P.D., Inc.; Joy MM Delaware, Inc.; Joy Energy Systems, Inc.; Joy Environmental Technologies, Inc.; Joy International Sales Corporation, Inc.; Joy Power Products, Inc.; Joy Technologies Inc.; Joy Technologies Delaware, Inc.; JTI UK Holdings, Inc.; Mining Services, Inc.; MIP Products, Inc.; New Ecolaire, Inc.; Optical Alignment Systems and Inspection Services, Inc.; Peabody & Wind Engineering Corporation; PEAC, Inc.; PEOC, Inc.; PMAC, Inc.; Princeton Paper Company LLC a/k/a Fitchburg; P.W.E.C., Inc.; Rader Resource Recovery; RCHH, Inc.; RYL, LLC; Smith Machine Works, Inc.; SMK Company; South Shore Corporation; and South Shore Development LLC.

55646.1001

accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Motion having been

provided to the United States trustee, Chase,[2] the Committee and all parties who have

filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure,

and it appearing that no other or further notice need be provided; and it further appearing

that the relief requested in the Motion is the best interests of the Debtors and their estates

and creditors; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor, it is

       ORDERED, that the Motion is granted; and it is further

       ORDERED, that the Debtors are authorized to settle claims and causes of

action filed in a judicial, administrative, arbitral or other action or proceeding by (i) any

of them against non-insider third parties (the "Settling Parties") or (ii) any of the Settling

Parties against the Debtors as well any cross-claims and counter-claims asserted against

any of the Debtors by Settling Parties (or against the Settling Parties by any of the

Debtors) in connection with such claims and causes of action, without obtaining a

specific Order from this Court authorizing the settlement, in accordance with the

following procedure:

    a.    For purposes hereof, a non-insider will mean any Settling Party that is not an "insider", as such term is defined in section 101(31) of the Bankruptcy Code;

    b.    In no event will the settlement provide for any monetary payment to be made by the Debtors from property of their estates to or on behalf of the Settling Parties on account of any claims arising prior to the Petition Date; provided, however, with respect to cross-claims and counter-claims, that the settlement may provide for offsets in favor of the Settling Parties against, and up to but not exceeding the amount of, any monetary payments otherwise due;

---

[2]  Any term not defined herein shall have the meaning ascribed to it in the Motion.

c.    Cash settlements of post-petition claims may be paid in the ordinary course of business;

d.    No settlement will be agreed to unless it is reasonable in the judgment of the Debtors upon consideration of (i) the probability of success it the claim is litigated or arbitrated, (ii) the complexity, expense and likely duration of any litigation with respect to the claim, (iii) other factors relevant to assessing the wisdom of the settlement, and (iv) the fairness of the settlement vis-a-vis the Debtors' estates, creditors and shareholders;

e.    No settlement will be effective unless it is executed by the General Counsel or an Associate General Counsel of one of the Debtors or by the Debtors' chapter 11 counsel;

f.    Subject to subparagraphs (a) through (e) above, with respect to any claim or cause of action held by any of the Debtors against any Settling Party or any Settling Party against any of the Debtors for which the settlement does not exceed $100,000, the Debtors, in their discretion, may agree to settle such claim or cause of action on any reasonable terms, and may enter into, execute and consummate a written agreement of settlement that will be binding on them and their estates without further notice or action by this Court;

g.    Subject to subparagraphs (a) through (e) above, with respect to any claim or cause of action held by any of the Debtors against any Settling Party or any Settling Party against any of the Debtors for which the settlement exceeds $100,000 but does not exceed $1,000,000, the Debtors, in their discretion, may agree to settle such claim or cause of action only if they provide written notice to the U.S. Trustee, the Committee and the DIP Lender of the terms of the settlement, and such terms are not objected to in writing by either the U.S. Trustee, the Committee, or the DIP Lender within ten (10) days after the date of such written notice; and in the absence of any such objection, the Debtors may enter into, execute and consummate a written agreement of settlement that will bind them and their estates without further notice or action by this Court;

h.    After the date of entry of this Order, for each subsequent calendar month (or partial calendar month) during the pendency of these Chapter 11 cases, the Debtors shall prepare a written report and send such report to the Committee on or before the last day of the immediately succeeding calendar month concerning all settlements made during such period pursuant hereto, including the names and addresses of the Settling Parties, the types and amounts of claims

subject to the settlements and the nature of the settlements, including the amount of any monetary payments received by the Debtors; and

i.     The Debtors will notify Diamond Power International, Inc., The Babcock & Wilcox Company and McDermott International, Inc. prior to the finalization of any settlement pursuant to paragraphs (f) and (g) of this Order involving Allen-Sherman-Hoff Company or A-S-H Company, provided, however, that no notice under this paragraph (i) is necessary if such settlement provides for a full release of liability for Allen-Sherman-Hoff Company, A-S-H Company and their respective successors in interest; and it is further

ORDERED, that nothing in paragraphs (f) and (g) of this Order is intended to alter any requirements under the Debtors' insurance policies; and

ORDERED, that any settlement that is not authorized pursuant to the foregoing procedure, or pursuant to any other Order heretofore entered by this Court, will be authorized only upon separate Order of this Court upon a motion of the Debtors served upon necessary parties in interest.

Dated: Wilmington, Delaware
    _Aug 25_, 1999

_____
UNITED STATES BANKRUPTCY JUDGE

1491

ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - x
                      :
In re                 :     Chapter 11
                      :
FPA MEDICAL MANAGEMENT, :    Case No. 98-1596 (PJW)
INC., et al.,         :
                      :
        Debtors.      :     Jointly Administered
                      :
- - - - - - - - - - - x
```

ORDER APPROVING AMENDED PROCEDURES
FOR (A) LIQUIDATING AND SETTLING
PREPETITION MEDICAL MALPRACTICE
CLAIMS; (B) MODIFYING THE AUTOMATIC STAY
TO PERMIT CERTAIN PREPETITION LITIGATION
WITH RESPECT TO SUCH CLAIMS TO PROCEED AND
(C) AUTHORIZING AMENDMENT TO INSURANCE POLICIES
COVERING SUCH CLAIMS TO IMPLEMENT PROCEDURES

Upon the amended motion dated February 12, 1999

(the "Motion") of FPA Medical Management, Inc. and those

of its direct and indirect subsidiaries and related

professional corporations which are also debtors and

debtors-in-possession in the above-captioned cases (col-

lectively, the "Debtors"), for an order (the "Order")

approving procedures for (a) liquidating and settling

Medical Malpractice Claims; (b) modifying the automatic

stay to permit certain medical malpractice claimants (the

---

All capitalized terms used but not otherwise defined
herein shall have the meanings ascribed to such
terms in the Motion.

1717

"Claimants") to proceed with litigation with respect to the Medical Malpractice Claims and (c) authorizing an amendment to certain insurance policies covering the Medical Malpractice Claims in order to implement such procedures; and it appearing that granting the Motion is in the best interests of the Debtors, their estates, creditors and interest holders; and it appearing that due and proper notice of the Motion having been provided as set forth in the Motion and that no other or further notice is necessary; and upon the record on the Motion and in these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.   The Motion is approved in all respects.

2.   The Claims Resolution Procedure is approved in all respects.  No later than twenty days after a Claimant serves a written request for relief from the Automatic Stay (the "Stay Relief Request") on the Debtors' counsel, the Debtors shall submit a consent order lifting the Automatic Stay for the purposes described in the Motion, substantially in the form attached hereto as Exhibit A (the "Consent Order"), unless the Debtors object to the request in writing.  Stay Relief Requests shall not be filed with the Court.  Consent Orders shall

2

be deemed effective upon filing, and, if Steadfast Insur-
ance Company is the applicable Insurance Company, the
Consent Order shall be served on the Customer Service
Manager, Steadfast Insurance Company, 9330 LBJ Freeway,
Suite 1300, Dallas, Texas 75243. If the Debtors object
to the Stay Relief Request, then the Claimant serving the
Stay Relief Request may file a motion for relief from the
Automatic Stay with the Court. The automatic stay is
hereby modified to the full extent necessary to permit
the implementation of the foregoing procedure.

       3.   Subject to (a) through (d) below, the
Debtors, at their discretion, are authorized to settle
Medical Malpractice Claims at an agreed amount of not
more than $500,000 (the "Agreed Amount") such that a
Claimant will hold an allowed, prepetition general unse-
cured nonpriority claim against the applicable Debtor in
the Agreed Amount to be paid in accordance with a con-
firmed plan of reorganization:

       a.   in each such case the Debtors and the
Claimant shall execute a Stipulation evidencing the
Agreed Amount and any other material terms of the settle-
ment;

       b.   such Stipulation shall be filed with
this Court and served upon BankBoston, N.A., as Adminis-

3

trative Agent to the Prepetition Bank Group and DIP
Lenders, the Official Committee of Unsecured Creditors
and the United States Trustee; and

       c.   such Stipulation shall be entered by
this Court without further notice or hearing only if no
objection is filed within ten (10) days of the date of
the service of the Stipulation; and

       d.   if an objection to the Stipulation is
timely filed, the automatic stay of section 362 of the
Bankruptcy Code shall not be deemed modified until after
the Court hears the objection or it is otherwise re-
solved.

       4.   No Claimant shall be entitled to assert,
and every Claimant is hereby barred from asserting, any
Medical Malpractice Claim against the Debtors, or any
insurance policy or carrier providing coverage for the
Debtors, unless such Claimant shall have first complied
fully, and in good faith, with the Claims Resolution
Procedure.

       5.   Any motion seeking relief from the auto-
matic stay with respect to a Medical Malpractice Claim
that is pending on the date of the entry of this Order or
filed thereafter (a "Post-Procedure Lift Stay Motion") is

hereby denied for the reasons set forth in paragraph 12
of the Claims Resolution Procedure.

6.    The Debtors do not, by this Order or in
connection with the procedures established hereby, ac-
knowledge the validity of any Medical Malpractice Claim,
make any admission of liability or waive any of their
employees' rights or remedies.

7.    The Debtors are authorized to modify the
Insurance Policies in the manner described in the Motion.
Specifically, the Debtors are authorized to make the
payments on the Modified Insurance Policies described in
the Motion both with respect to the Sterling Policies and
with respect to the FPA Policies and TDMC Policy, includ-
ing, but not limited to, the payments under the FPA
Policies and TDMC Policy listed on Exhibit B attached
hereto (the "Policy Payments"). The Policy Payments are
deemed administrative expenses of the Debtors' estates
entitled to priority within the meaning of 11 U.S.C.
§ 503(b)(1)(A).

8.    Within five days of the entry of this
Order, the Debtors shall serve a copy of this Order on
all Claimants whom the Debtors are reasonably able to
identify and locate. Additionally, the Debtors shall
serve a copy of this Order on any Claimant filing a Post-

5

Procedure Lift Stay Motion within five days after the
Debtors' receipt of a Post-Procedure Lift Stay Motion.
To the extent that the Debtors identify and locate addi-
tional Claimants after the entry of this Order, the
Debtors shall serve a copy of this Order on such Claim-
ants within five days of the identification and location
of such Claimants.

   9. Nothing herein shall preclude the Debtors
from submitting a stipulation agreeing to lift, modify or
annul the Automatic Stay on any terms, including, but not
limited to, terms different from those required by the
Claims Resolution Procedure; provided, however, that any
such stipulation must be approved in accordance with this
Order and the Claims Resolution Procedure.

   10. Nothing herein shall have the effect of
reinstating the Automatic Stay with respect to a Medical
Malpractice Claim, to the extent that the Court has
already entered an order, prior to the date hereof,
modifying the Automatic Stay (a "Prior Lift Stay Order")

with respect to such Medical Malpractice Claim.   Notwith-
standing the foregoing, the Claims Resolution Procedure
shall otherwise apply to a Medical Malpractice Claim that
is the subject of a Prior Lift Stay Order.


_____
The Honorable Peter J. Walsh
Chief United States Bankruptcy Judge


Dated:   Wilmington, Delaware
         March 25, 1999


7

Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - -  x
In re                       :
                            :  Chapter 11
FPA MEDICAL MANAGEMENT,      :
INC., et al.,               :  Case No. 98-1596 (PJW)
                            :
        Debtors.            :  Jointly Administered
                            :
- - - - - - - - - - - - -  x
```

STIPULATION LIFTING AUTOMATIC STAY BETWEEN
DEBTORS AND **[NAME TO COME]**

WHEREAS, on July 19, 1998 (and on various dates thereafter, through and including August 7, 1998, as to each of the above-referenced debtors, the "Petition Date"), FPA Medical Management, Inc. and those of its direct and indirect subsidiaries and related professional corporations which are also debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), each filed with this Court its respective voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 100-1330, et seq. (as amended, the "Bankruptcy Code");

WHEREAS, prior to the Petition Date, **[NAME OF CLAIMANT TO COME]** (the "Claimant") commenced a civil action against, among others, **[NAME OF DOCTOR, IF ANY, TO**

COME] and [NAME OF DEBTOR] (the "FPA Defendants"), in the [TO COME] Court for [COUNTY TO COME] County, [STATE TO COME] (the "State Court"), captioned [CAPTION TO COME], Case No. [CASE NO. TO COME] (the "Action"), seeking damages for claims for, among other things, liability against the FPA Defendants for [TO COME], including, but not limited to, causes of action under tort, negligence or arising under other State law theories of recovery, which claims arise from or relate to services rendered to [NAME OF CLAIMANT TO COME] (the "Claim");

WHEREAS, on the Petition Date, the Action was automatically stayed under 11 U.S.C. § 362(a) (the "Automatic Stay");

WHEREAS, the Claimant is willing to waive any claims against the Debtors, except to the extent of (i) the amount of insurance coverage, if any, under an insurance policy insuring the Debtors, that is available to satisfy the Claim (the "Available Coverage") and (ii) a general prepetition, unsecured claim, as reflected in a timely filed proof of claim, for that amount, if any, which exceeds the Available Coverage and is necessary to satisfy the final judgment or settlement on the Claim;

2

WHEREAS, the parties to this stipulation and order (the "Stipulation and Order") have agreed to modify the Automatic Stay on the terms and conditions set forth herein;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the parties, subject to Bankruptcy Court approval as follows:

1.    The Automatic Stay is hereby modified to the limited extent necessary to enable (a) the Action to proceed to final judgment or settlement and (b) the Claimant to attempt to recover any liquidated final judgment or settlement on the Claim from Available Coverage, if any.

2.    To the extent the Claimant timely filed a proof of claim regarding or evidencing the Claim, the Claimant may assert a general, prepetition, unsecured claim for that amount, if any, which exceeds the Available Coverage and is necessary to satisfy the final judgment or settlement on the Claim.

3.    It is expressly understood by the Claimant that the Claimant may seek satisfaction of the Claim only as set forth herein, and that in no event will the Debtors or their estates be liable in any other way whatsoever with respect to the Claim.

3

4.   In connection with this modification of the Automatic Stay, the Claimant, on behalf of himself, his heirs, representatives and assigns, does hereby waive and/or release the Debtors and their estates, and their respective heirs, successors, assigns, affiliates, offi- cers, directors and employees, from any and all claims, actions, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses or demands whatsoever, known or unknown, of any nature, except for his claim (i) to the Available Coverage and (ii) as reflected in a timely filed proof of claim, for that amount, if any, which exceeds the Available Coverage and is necessary to satisfy the final judgment or settlement on the Claim.

5.   The agreement by the Debtors to the modi- fication of the Automatic Stay on the terms and condi- tions set forth herein shall not be deemed an agreement by the Debtors to provide assistance or to cooperate with the Claimant in any way in the efforts of the Claimant to prosecute the Claim or secure payment on the Claim under the Available Coverage.

6.   Nothing contained herein shall be deemed an admission of liability on the part of the Debtors with respect to the Claim.

4

7.    The Bankruptcy Court shall retain juris-diction to hear any matters or disputes arising from or relating to this Stipulation and Order.

8.    This Stipulation and Order is subject to the approval of the Bankruptcy Court.

9.    This Stipulation and Order may be signed in counterpart originals, which, when fully executed, shall constitute a single original.

Dated:    Wilmington, Delaware
          **[DATE TO COME]**, 1999

                    ·John Wm. Butler, Jr.
                    J. Eric Ivester
                    J. Gregory St. Clair
                    SKADDEN, ARPS, SLATE,
                      MEAGHER & FLOM (ILLINOIS)
                    333 West Wacker Drive
                    Chicago, Illinois  60606
                    (312) 407-0700

                         - and -


                    _____
                    Gregg M. Galardi (I.D. No. 2991)
                    Karen M. Bab (I.D. No. 3272)
                    SKADDEN, ARPS, SLATE,
                      MEAGHER & FLOM LLP
                    One Rodney Square
                    P.O. Box 636
                    Wilmington, Delaware  19899-0636
                    (302) 651-3000

                    Attorneys for FPA Medical Management,
                      Inc., et al., Debtors and
    -[and]-            Debtors-in-Possession

                              5

[NAME OF CLAIMANT'S COUNSEL TO COME]
[FIRM NAME TO COME]
[MAILING ADDRESS TO COME]
[TELEPHONE NUMBER TO COME]

Attorneys for the Claimants


SO ORDERED this _____
day of [MONTH TO COME], 1999.



Honorable Peter J. Walsh
Chief United States Bankruptcy Judge

EXHIBIT B

F:\USERS\CLM\IT ABLE.WPD

| Installment Effective Date | Main & Excess Policies | | | Deductible Buyback | | | Grand Total |
|---|---|---|---|---|---|---|---|
| | Premium | Load | Total | Premium | Load | Total | |
| 1/1/99 | $267,812 | $8,034 | $275,846 | $96,351 | - | $96,351 | $372,197 |
| 2/1/99 | $232,188 | $6,966 | $239,154 | $96,351 | $2,891 | $99,242 | $338,396 |
| 3/1/99 | $250,000 | $7,500 | $257,500 | $96,351 | $2,891 | $99,242 | $356,742 |
| 4/1/99 | $250,000 | $7,500 | $257,500 | $96,351 | $2,891 | $99,242 | $356,742 |
| 5/1/99 | $250,000 | $7,500 | $257,500 | $96,351 | $2,891 | $99,242 | $356,742 |
| 6/1/99 | $250,000 | $7,500 | $257,500 | $96,351 | $2,891 | $99,242 | $356,742 |
| 7/1/99 | $250,000 | $7,500 | $257,500 | $96,351 | $2,891 | $99,242 | $356,742 |
| 8/1/99 | $250,000 | $7,500 | $257,500 | $96,351 | $2,891 | $99,242 | $356,742 |
| Totals | $2,000,000 | $60,000 | $2,060,000 | $770,808 | $20,237 | $791,045 | $2,851,045 |

TOTAL P.03