# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

## ORDER AUTHORIZING THE DEBTORS (I) TO SELL LEASEHOLD INTERESTS IN TARGETED STORES FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND EXEMPT FROM TAXES, (II) TO ASSUME AND ASSIGN LEASES, (III) TO REJECT LEASES THE DEBTORS ARE UNABLE TO SELL, AND (IV) GRANTING RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 authorizing the Debtors (i) to assume and assign leases and sell their leasehold interests in the Targeted Stores free and clear of liens, claims and encumbrances and exempt from taxes, (ii) in their sole discretion after consultation with the DIP Lender Agent Representatives and the Committee's Professionals, to reject leases for Targeted Stores the Debtors are unable to sell, and (iii) granting related relief (the "Motion"). [1]   The Court has reviewed the Motion and heard the representations of counsel.   Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:

---

[1]      All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion.

A.    This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B.    The Debtors solicited the highest or otherwise best offer for the Targeted Leases in accordance with the bidding procedures approved by the Court by order (Docket No. 1801) dated June 21, 2005 (the "Bidding Procedures"). The Debtors held an auction for the Targeted Leases on August 9, 2005 (the "Auction"). Greg Adams Enterprises, Inc. (d/b/a Piggly Wiggly) submitted the final bid of $43,000.00 (the "Purchaser"), representing the highest or otherwise best offer received for the leasehold interest in Store No. 827 (the "Targeted Lease") as well as the equipment and improvements located in the Store (the "FF&E").

C.    The Debtors have provided interested parties (including all parties asserting claims or interests in the Targeted Lease, if any) with proper notice of the Motion, the sale hearing, the Auction and the assumption and assignment of the Targeted Lease, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

D.    The Debtors marketed the Targeted Lease and conducted the sale process in compliance with the Order approving the Bidding Procedures, the Bidding Procedures, the Bankruptcy Code and all other Orders entered in these cases. The bidding on the Targeted Lease and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Targeted Lease. In their

2

sound business judgment, the Debtors determined that the bid submitted by the Purchaser represented the highest or otherwise best offer for the Targeted Lease.

E.    The Debtors (i) have full corporate power and authority to execute and consummate the agreement attached as Exhibit A and all related documents, and the sale of the Targeted Lease and the FF&E (collectively, the "Assets") and the assumption and assignment of the Targeted Lease has been duly and validly authorized by all necessary corporate action of all applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Agreement, are required to consummate the transactions contemplated by the Agreement.

F.    The Debtors have good business reasons to sell the Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

G.    Neither the Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

H.    The Debtors and the Purchaser proposed, negotiated and entered into the Agreement, without collusion, in good faith and at arms'-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided under 11 U.S.C. § 363(n).

I.    The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the protections afforded by that section.

J.    The consideration the Purchaser is providing to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value.

3

00506214.DOC

K.     The Debtors' sale of the Assets and assumption and assignment of the Targeted Lease will facilitate the formulation and confirmation of a plan of reorganization.  For this reason, the Debtors' sale and assumption and assignment of the Targeted Lease constitutes a transfer to which 11 U.S.C. § 1146(c) applies.

L.     The Debtors' transfer of the Assets to the Purchaser pursuant to the Agreement will be a legal, valid, and effective transfer of the Targeted Lease.  The Debtors' transfer of the Assets to the Purchaser vests the Purchaser with good and valid title in and to the Assets free and clear of any liens, claims, encumbrances, pledges, mortgages, security interests, charges, options or other interests of any kind or nature.

M.     The Debtors will cause the net proceeds from the sale to be paid to the DIP Lender to the extent required in accordance with the terms and conditions of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

N.     The Debtors' sale of the Assets and assumption and assignment of the Targeted Lease is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

4

00506214.DOC

O.    The Debtors have provided the landlord of the Targeted Lease to be sold and assumed and assigned with adequate assurance that they will promptly cure any defaults under the Targeted Lease pursuant to 11 U.S.C. §§ 365(b)(1).

P.    Pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006, the Debtors assert that only $3,104.21 is due as a cure under the Targeted Lease. The affected landlord filed a timely objection to the Debtors' proposed cure. The Debtors will pay any disputed cure amount or perform any disputed cure obligation, if any, upon entry of an order of the Court adjudicating such cure dispute (the "Cure Amount"). Upon payment of the Cure Amount, all defaults, if any, under the Targeted Lease will be deemed cured.

Q.    The Purchaser has provided the landlord for the Targeted Lease to be sold and assumed and assigned with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) (to the extent the Targeted Store is located within a shopping center) and 365(f)(2)(B).

R.    No default of the type described in 11 U.S.C. § 365(b)(2)(D) exists under the Targeted Lease.

S.    Except as expressly set forth in the Agreement, the Purchaser will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Assets by virtue of the assumption, assignment and transfer of the Targeted Lease to the Purchaser. The Purchaser will not be deemed, as a result of any action taken in connection with the sale of the Assets and the assumption and assignment of the Targeted Lease to (i) be a successor to the Debtors (other than with respect to any obligations arising under the assigned Targeted Lease from and after the closing); or

00506214.DOC

(ii) have, *de facto* or otherwise, merged with or into the Debtors. The Purchaser is not acquiring or assuming any liability, warranty, or other obligation of the Debtors, except as expressly set forth in the Agreement or in any assigned Targeted Lease.

   T. The Court's approval of the Agreement is in the best interests of the Debtors, their estates and their creditors. Accordingly, it is

   ORDERED AND ADJUDGED THAT:

   1. The Motion is granted to the extent set forth in this Order.

   2. All objections to the entry of this Order or to the relief granted by the Order which have not been withdrawn, waived or settled at or before the Sale Hearing are deemed and overruled on the merits.

   3. Nothing in this Order constitutes a waiver of any claims the Debtors may have against any of the non-debtor parties to the Targeted Lease, whether or not related to the lease.

   4. The Agreement is approved in all respects. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized (subject to applicable Closing conditions set forth in the Agreement), to consummate the sale including transferring and conveying the Assets to the Purchaser, pursuant to and in accordance with the terms and conditions of the Agreement.

   5. Upon Closing, the Debtors are authorized, in accordance with 11 U.S.C. §§ 105(a), 363 and 365 and this Order, to assume and assign the Targeted Lease to Purchaser.

   6. The Debtors have satisfied the requirements of 11 U.S.C. §§ 365(b)(1), 365(b)(3) (to the extent necessary) and 365(f)(2).

6

00506214.DOC

7.     The Targeted Lease will be assumed and assigned to the Purchaser, in accordance with its terms.  The assigned Targeted Lease will remain in full force and effect notwithstanding any provision in the Targeted Lease to the contrary (including provisions of the type described in 11 U.S.C. §§ 365(b)(2), (e)(1) and (f)(1)) which prohibit, restrict or condition such assignment or transfer).  All non-debtor parties to the Targeted Lease are deemed to have consented to the assignment, if consent was not otherwise obtained in accordance with the Agreement.

8.     Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Agreement, together with all additional instruments and documents to the extent necessary to implement the Agreement.  The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets to the Purchaser.

9.     Any agreements, documents, or other instruments executed in connection with the Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the  Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender, and (b) the Creditors' Committee, which consent will not be unreasonably withheld, and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

10.     The Debtors will transfer the Assets to the Purchaser upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f).  The only Claims and/or Interests in the Assets are those of the landlord with respect to the applicable Targeted Lease being sold and assigned pursuant to the Agreement and the

7

senior liens and superpriority administrative claims of the DIP Lender. The Claims and/or Interests of such landlord will be satisfied by the Debtors' cure of any defaults under the respective Targeted Lease and the Debtors and the Purchasers demonstration of adequate assurance of future performance under 11 U.S.C. §365. The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender will attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

11.    The Debtors will cause the net proceeds from the sale to be paid to the DIP Lender to the extent required in accordance with the terms and conditions of the Final Financing Order and the Loan Documents.

12.    The Debtors' transfer of the Assets pursuant to the terms of the Agreement is a transfer pursuant to 11 U.S.C. § 1146(c). Accordingly, the making, delivery, filing or recording of any deeds, assignments or other transfer documents in connection with the sale (the "Transfer Instruments"), will not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax (including without limitation, any transfer or recordation tax applicable to deeds and/or security interests).

13.    The Purchaser provided the Debtors with reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and applicable non-bankruptcy law. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

14.    Unless agreed to by the parties, the Cure Amount for the Targeted Lease will be adjudicated by the Court. All defaults, claims or other obligations of the Debtors arising or accruing under the Targeted Lease, if any, prior to assumption

8

(without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) will be cured by the Debtors in accordance with the Agreement, by paying the Cure Amount, if any. No other or further monetary amounts or obligations are due or existing under the Targeted Lease by the Debtors, whether pursuant to 11 U.S.C. § 365(b)(1) or otherwise.

15.    Pursuant to 11 U.S.C. § 365(k), upon the assignment of the Targeted Lease to the Purchaser, (a) the Debtors and their estates are relieved from any and all liability for any breach of the Targeted Lease occurring after assignment to the Purchaser, and (b) the Purchaser is responsible for any and all claims and obligations under the Targeted Lease occurring or arising on and after the Assignment (as defined in the Agreement).

16.    Subject to the terms of this Order and the Agreement, the Purchaser assumes all rights and obligations of the Debtors under the Targeted Lease.

17.    All non-Debtor parties to the Targeted Lease are forever enjoined and estopped from contesting the Cure Amount (other than those asserted in connection with the sale) and from asserting any default against the Purchaser which existed as of the date of the sale hearing.

18.    Upon the Debtors' assignment of the Targeted Lease to the Purchaser, no default will exist under the Targeted Lease. Upon entry of this Order and the assumption and assignment of the Targeted Lease, the Purchaser is deemed to be in compliance with all terms and provisions of the Targeted Lease.

19.    Upon Closing of the sale of the Assets in accordance with the Agreement and this Order, the Purchaser will be deemed to have acted in good faith in

9

purchasing the Assets under the Agreement as that term is used in 11 U.S.C § 363(m). For that reason, any reversal or modification of the Order on appeal will not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

20.    This Court retains exclusive jurisdiction to (a) enforce and implement the Agreement, and any other agreements and instruments executed in connection with the Agreement, (b) compel delivery of possession of the Assets to the Purchaser, (c) resolve any disputes, controversies or claims arising out of or relating to the Agreement, and (d) interpret, implement and enforce the provisions of this Order.

21.    The terms and provisions of the Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

22.    To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Agreement and this Order, the provisions contained in this Order will control.

00506214.DOC

23.    Notwithstanding Fed. R. Bankr. P. 6004(g) and 6006(d), this Order will take effect immediately upon entry.

Dated this _____ day of August 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve a copy of this Order on all parties who received copies of the Motion.

11

00506214.DOC

# EXHIBIT A

## BILL OF SALE, ASSIGNMENT AND ASSUMPTION OF LEASE AND SUBLEASE
### [Store #827, Sanford, North Carolina]
2412 S. Horner Boulevard

**THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Agreement") is made as of August 9, 2005, by and between **WINN-DIXIE RALEIGH, INC.**, a Florida corporation (hereinafter referred to as "Assignor"), and **GREG ADAMS ENTERPRISES, INC. (d/b/a Piggly Wiggly)**, a North Carolina corporation (hereinafter referred to as "Assignee");

## R E C I T A L S :

A.    Assignor is the tenant of the store (the "Store"), listed on Exhibit A to this Agreement by Assignor's designated Store number, under the lease, including amendments thereto (the "Lease") described on Exhibit A to this Agreement. The Store occupies the leased premises as described in the Lease (the "Premises"). The landlord or lessor under the Lease is referred to herein as the "Landlord".

B.    Assignor filed a voluntary petition (the "Petition") for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "Filing Date") and has operated its business as a debtor-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date. By order entered on April 13, 2005, the Chapter 11 bankruptcy case of Assignor was transferred to the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") where it is being administered under case no. 05-03817-3F1 (the "Bankruptcy Case").

C.    Assignor has agreed to sell and assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the Lease, (ii) all of Assignor's right, title and interest, as landlord or lessor, in and to the subleases, if any, together with all amendments thereto, described on Exhibit A (collectively, whether one or more, the "Sublease"), and (iii) Assignor's interest in all fixtures and all equipment owned by Assignor and located in the store building or buildings now existing on the Premises (the "Building"), including but not limited to Assignor's interest in (i) heating and air conditioning systems, facilities used to provide any utility services, or other similar services to the Building, elevators, docks, lifts, doors, storefronts, ceilings, walls, partitions, lighting fixtures, and flooring (collectively, the "Improvements"), and (ii) except for the items identified on Schedule 1 to this Agreement, the trade fixtures and equipment owned by Assignor and located in the Building (the "Equipment"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Sublease after the Closing Date, all subject to and in accordance with the terms of the

Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 827

Lease, the Sublease, and this Agreement.  The subtenant or sublessee under the Sublease is referred to herein as the "Subtenant".

**NOW, THEREFORE,** in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **SALE AND ASSIGNMENT**.

    (a)    Subject to the terms and conditions of this Agreement and for the consideration set forth below, Assignor hereby sells, assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

    (b)    Subject to the terms and conditions of this Agreement and for the consideration set forth below, Assignor hereby sells, assigns, transfers, conveys, and delivers to Assignee the Improvements and Equipment, free and clear of any and all liens or other encumbrances, to the extent permitted under the Bankruptcy Code.

    (c)    Subject to the terms and conditions of this Agreement and for the consideration set forth below, Assignor hereby sells, assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to the Sublease and all the rights, benefits and privileges of the landlord or lessor thereunder.

    (d)    The sale and assignments described in this Section 1 are referred to, collectively and individually, as the "Assignment".  The Assignment shall be effective as of the Closing Date (as defined herein).

    (e)    Assignee acknowledges and agrees that Assignor's obligations under this Agreement are subject to higher or otherwise better offers and conditioned upon the entry of an order of the Bankruptcy Court approving this Agreement and the sale, assignment and assumption of the Lease pursuant to the terms and conditions of this Agreement.

2.    **ASSUMPTION; ACCEPTANCE OF PREMISES**.

    (a)    Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Closing Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Closing Date.

2

(b)    Assignee hereby accepts the aforesaid assignment of the Sublease and
assumes and agrees to pay and perform all liabilities and obligations of
the landlord or lessor that accrue under the Sublease from and after the
Closing Date, and Assignee hereby indemnifies, and agrees to save,
insure, defend and hold harmless Assignor from and against all liabilities
and obligations of the landlord or lessor that accrue under the Sublease
on or after the Closing Date.

(c)    Assignee hereby accepts the aforesaid conveyance of the Improvements
and Equipment on an "as is, where is" basis without any representation or
warranty on the part of Seller as to fitness, merchantability or otherwise.

(d)    Assignee acknowledges that it has had opportunity to make such
environmental, physical, zoning, topographical, land use, survey, title and
other examinations, inspections and investigations of the Premises as
Assignee has determined, in its sole discretion, to be necessary and
appropriate, including without limitation the Due Diligence Material (as
defined below).   Assignee acknowledges that the Premises is being
assigned to Assignee in its "AS-IS" condition (without representation,
warranty, or recourse), and that possession and use of the Premises is
subject to the terms of the Lease and to applicable legal requirements, title
matters and rules and regulations.    Taking the foregoing into
consideration, Assignee has determined, in its sole discretion, that the
Lease, the Sublease and the Premises and Equipment are satisfactory to
Assignee in all respects, and has agreed to accept the Lease, the
Sublease and the Premises and Equipment in accordance with the terms
and conditions of this Agreement.    In making such determination,
Assignee has relied and will rely solely on Assignee's own independent
examinations, inspections and investigations of the Lease, the Sublease
and the Premises and Equipment and has not relied and will not rely on
any representations or warranties of Assignor. Assignee acknowledges
and agrees that neither Assignor nor any of Assignor's agents,
representatives or employees have made any representations to Assignee
with regard to the Lease, the Sublease, the Premises, the Equipment, or
the Improvements located on the Premises, including, but not limited to,
representations concerning the condition of the Premises, Equipment, or
Improvements or their fitness for Assignee's intended use, except as
otherwise expressly set forth in this Agreement. "Due Diligence Material"
means, collectively, (i) the Lease and the Sublease, (ii) the title reports
and environmental reports (if any) and all other documents and materials
provided or made available to Assignee for review in hard copy, in
electronic format, at the Store, on the Internet website maintained by
Merrill Corporation on behalf of Assignor and certain affiliates of Assignor
under the name "Project Jaguar" with respect to the disposition of the
Store and other properties, or otherwise and (iii) all documents and
materials prepared by or for Assignee in connection with Assignee's
investigations with respect to the Lease, the Sublease and the Premises

3
Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 827

and Equipment.

(e)    Assignee hereby recognizes and acknowledges that Landlord's and Subtenant's rights to full performance of all terms, conditions and covenants of the Lease and Sublease, respectively, remain in effect on and after the effective date of the Assignment.  Further, pursuant to section 365(k) of the Bankruptcy Code, on and after the effective date of the Assignment, Assignor and its estate shall be relieved from any liability for any breach of the Lease or Sublease occurring after the Closing Date.

3.    **CONSIDERATION**.   The total consideration to be paid by Assignee to Assignor (the "<u>Purchase Price</u>") is Forty Three Thousand Dollars ($43,000), payable at the Closing (as defined herein). Upon execution of this Agreement, Assignee shall pay to Assignor or its designated agent a deposit equal to twenty percent (20%) of the Purchase Price (the "<u>Deposit</u>"). At the Closing, Assignee shall pay the balance of the Purchase Price to Assignor, as adjusted for the prorations set forth in <u>Section 10</u> hereof. Said Deposit and the balance of the Purchase Price shall be paid by certified or bank check made payable to Assignor, or by wire transfer to the account of Assignor, pursuant to written wire instructions to be provided by Assignor.

4.    **CLOSING AND EFFECTIVE DATE OF ASSIGNMENT**.  The closing of the Assignment (the "<u>Closing</u>") shall take place on a date (the "<u>Closing Date</u>") designated by Assignor in writing that is between one day and 30 days following the later of (i) approval by the Bankruptcy Court and the entry of the order approving the sale, assignment and assumption of the Lease as provided in this Agreement, or (ii) the completion of Assignor's planned store closing sale at the Store; provided, however that in no event will the Closing Date be later than October 31, 2005. The Closing will be conducted directly between Assignor and Assignee provided that, at Assignor's election, the Closing may be conducted by use of an escrow administered by Assignor or its designated agent.

5.    **COURT APPROVAL; BIDDING PROCEDURES**.

(a)    The Closing is contingent upon Assignor obtaining an order of the Bankruptcy Court authorizing: (1) Assignor to enter into the Agreement and (2) the sale, assignment and assumption of the Lease and Sublease pursuant hereto.  Assignor shall have until September 30, 2005, subject to a Bankruptcy Court ordered extension, to obtain such order from the Bankruptcy Court. If such order is not obtained within such time period, and provided there is no material breach of this Agreement by Assignee at any time, then the Deposit shall be released to Assignee and Assignee and Assignor shall have no further claims against one another.

(b)    This Agreement is subject to the bidding procedures approved by the Bankruptcy Court by order dated June 21, 2005 (the "<u>Bidding Procedures</u>"). If this Agreement is not the successful bid for the Store, as

determined by Assignor in accordance with the Bidding Procedures, and provided there is no material breach of this Agreement by Assignee at any time, than the Deposit shall be released to Assignee and Assignee and Assignor shall have no further claims against one another.

6. **ADEQUATE ASSURANCE DATA.**  As a condition of the Bidding Procedures and in compliance with such Bidding Procedures, Assignee shall supply Assignor with such financial and other information as may be requested by Assignor to demonstrate to the Bankruptcy Court that Landlord and Subtenant are adequately assured of Assignee's future performance under the Lease, as required by Section 365(f) of the Bankruptcy Code, including if appropriate, a guaranty of Assignee's obligations under the Lease and (where applicable) the Sublease by an Affiliate of Assignee with sufficient assets to provide adequate assurance of future performance.

7. **USE.**  Assignee shall use the Premises for such purposes as are authorized under the Lease or applicable law. More specifically, Assignee's intended use is: Grocery Store.

8. **POSSESSION.**  Assignor agrees to provide Assignee with possession of the Premises at the Closing, subject only to an extension of such delivery approved or ordered by the Bankruptcy Court.

9. **INITIAL RENT AND OTHER LEASE CHARGES.**  Upon the Closing, Assignee shall be responsible for, and shall pay, rent, percentage rent, common area maintenance charges, real estate taxes and all other obligations and charges due under the Lease to Landlord in accordance with the terms of the Lease from and after the Closing.

10. **PRORATIONS.**  All relevant rent, common area maintenance charges, real estate and personal property taxes, utilities and other obligations and charges under the Lease, the Sublease or otherwise relating to the Premises will be prorated (based on actual days within the relevant annual, quarterly or monthly period, as appropriate) between the parties as of 12:01 a.m. on the Closing Date and will be a credit or debit, as the case may be, against the Purchase Price. Any amounts not determinable as of the Closing Date or reflected on any closing statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Assignee and Assignor as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination and notice to such party that such amount is due.

11. **ASSIGNEE'S CLOSING COSTS.**  Assignee agrees to pay (or, where applicable, reimburse Assignor for) the following costs: (a) fees and costs of Assignee's counsel relating to this transaction; (b) fees and costs incurred by Assignee to conduct Assignee's due diligence investigations of the Lease, the Sublease, the Premises and Equipment; (c) fees and costs of title reports provided by Assignor,

title examination fees and title insurance premiums (and the cost of any simultaneous issue mortgagee title insurance policy and any loan-related title insurance endorsements thereon); (d) documentary stamp tax or transfer tax, if any, payable in connection with the execution and delivery of this Agreement; (e) recording fees payable in connection with recording this Agreement or any notice of assignment in the appropriate public records; (f) cost of the environmental reports provided by Assignor, including any supplements or updates; (g) any loan closing costs incurred by Assignee; and (h) the fees and costs of any escrow agent.

12.    **ASSIGNOR'S CLOSING COSTS**. Assignor will pay the following costs: (a) fees and costs of Assignor's counsel relating to this transaction; (b) commissions payable to Assignor's Brokers as provided in Section 14 of this Agreement; and (c) those cure costs (if any) payable pursuant to Section 365(b) of the Bankruptcy Code upon the assumption of the Lease and the Sublease.

13.    **[INTENTIONALLY OMITTED]**.

14.    **NO BROKERS**.  The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Agreement other than that due by Assignor to Assignor's Brokers, if any, as described on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B.  Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Agreement, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Agreement. Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Agreement, the Lease or the Premises. Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Agreement, the Lease, the Sublease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Agreement.

15.    **NOTICES**. All notices, requests, demands, and other communications required or permitted to be given under this Agreement will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during

6

Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 827

normal business hours for the recipient, or the next business day after confirmation is received  by the transmitting party if not during normal business hours for the recipient.

      If to Assignor:      Winn-Dixie Raleigh, Inc.; Re: Store #827
                           5050 Edgewood Court
                           Jacksonville, FL 32254-3699
                           Attn: Chief Financial Officer
                           Telefax No.: 904/~~783-5646~~ 370-5551

      With a copy to:     Winn-Dixie Stores, Inc.
                           5050 Edgewood Court
                           Jacksonville, FL 32254-3699
                           Attn: Office of General Counsel
                           Telefax No.: 904/~~783-5641~~ 783-5651

or to such other address or telefax number as Assignor may direct from time to time.

      If to Assignee:     Greg Adams Enterprises, Inc.
                           dba Piggly Wiggly
                           300 North Main Street
                           Broadway, North Carolina
                           Telefax No.: (919) 258-3531

or to such other address or Telefax number as Assignee may direct from time to time.

16.   **NOTICE OF ASSIGNMENT**.  On the effective date of the Assignment, at the request of either party, this Agreement may be recorded in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Agreement.

17.   **BINDING EFFECT**.  This Agreement shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns, except that this Agreement shall not be binding upon Assignor prior to Bankruptcy Court approval of this Agreement.

18.   **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

7

19.  **ASSIGNMENT**.  Assignee may not assign or delegate any duties or obligations under this Agreement without the prior written consent of Assignor, which consent may be granted or withheld in Assignor's sole discretion.  No assignment by Assignee shall release or relieve Assignee of its liabilities and obligations hereunder, which shall remain in full force and effect notwithstanding any such assignment.

20.  **MERGER OF PRIOR AGREEMENTS**.  This Agreement supersedes all prior agreements and understandings between the parties hereto, other than the confidentiality agreement between Winn-Dixie Stores, Inc. ("Winn-Dixie") and Assignee, regarding, among other things, confidentiality relating to the subject matter of this Agreement (the "Confidentiality Agreement") and any access or inspection agreement between Assignor or Winn-Dixie and Assignee (the "Access Agreement", if any) and, except for the Confidentiality Agreement and any Access Agreement, constitutes the entire agreement of the parties with respect to the matters contained herein.  **ASSIGNEE ACKNOWLEDGES ITS OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT AND THE ACCESS AGREEMENT CONTINUE AFTER THE EXECUTION AND DELIVERY OF THIS AGREEMENT.**

21.  **INTENTIONALLY OMITTED**.

22.  **ATTORNEYS' FEES**.  If Assignor becomes a party to any suit or proceeding affecting the Lease, the Sublease, the Premises or involving this Agreement or Assignee's interest under this Agreement, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Agreement, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Agreement, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand. All references in this Agreement to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment and appellate levels and in connection with the Bankruptcy Case and related proceedings.

23.  **WAIVER OF JURY TRIAL**.  Assignor and Assignee each acknowledge and agree that the nature of this Agreement, the Premises, the Lease and the Sublease makes a jury determination of any dispute arising out of this Agreement, the Premises, the Lease or the Sublease undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Agreement, the Premises, the Lease or the Sublease.

24. **DEFAULT AND REMEDIES**.

(a) **Assignee's Default**.   If the Closing as contemplated under this Agreement is not consummated due to Assignee's breach of this Agreement, then Assignor shall be entitled to retain or receive the Deposit as partial damages and to exercise any and all other remedies available under this Agreement, at law or in equity, including but not limited to the right to terminate this Agreement, the right to sue Assignee for specific performance, and the right, with or without terminating this Agreement, to sue Assignee for damages.

(b) **Default by Assignor**.   If the sale, assignment and assumption as contemplated under this Agreement is not consummated due to Assignor's breach of this Agreement, or if this Agreement is terminated due to Assignor's breach of this Agreement, then Assignee shall be entitled, as its sole and exclusive remedy for such breach, to receive the return of the Deposit, which return shall operate to terminate this Agreement and release Assignor from any and all liability under this Agreement.  Assignee expressly waives and releases (i) any right to seek specific performance of Assignor's obligations under this Agreement and (ii) any right to seek or collect any damages, including any actual, consequential, speculative, remote or punitive damages.

25. **ASSIGNEE INDEMNIFICATION OF ASSIGNOR**.  Assignee shall indemnify and save and hold harmless Assignor and its Affiliates and representatives, from and against any and all costs, losses liabilities, damages, lawsuits, deficiencies, claims and expenses (whether or not arising out of third-party claims) including, without limitation, interest, penalties, reasonable attorneys' fees and all amounts paid in investigation, defense or settlement for any of the foregoing (herein, the "Damages") incurred in connection with or arising out of or resulting from (a) any breach of any covenant or warranty by Assignee (including any payment obligation), or the inaccuracy of any representation made by Assignee in or pursuant to this Agreement or other transaction documents, (b) any liability, obligation or commitment of any nature (absolute, accrued, contingent or otherwise) of Assignee that is due to or arises in connection with Assignee's acts or omissions prior to, on or after the Closing Date, including any claim, liability, or obligation that is assumed by Assignee pursuant to this Agreement or in any transaction documents signed by Assignee, and (c) without limitation on the foregoing, any liability or obligation that accrues under the Lease or the Sublease or relating to the Equipment from and after the Closing Date.  Notwithstanding the foregoing, Assignee shall not be liable for any matter (i) with respect to which Assignor has not given Assignee written notice within a reasonable period of time following Assignor's receiving written notice of such matter, specifying the claim and the basis for the claim in reasonable detail (unless the failure to provide such information did not have a material adverse effect on Assignee), or (ii) that is due

9

to Assignor's acts or omissions. The provisions of this <u>Section 25</u> shall cover all obligations and liabilities of whatsoever kind, nature or description relating, directly or indirectly, to product liability, third party litigation or third party claims against Assignee or Assignor in connection with, arising out of, or relating to the Lease, the Sublease and the Premises. This <u>Section 25</u> shall survive the Closing or earlier termination of this Agreement.

[SIGNATURES ON THE FOLLOWING PAGES]

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Agreement as of the date first set forth above.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

Name: ~~REBECCA L. SAWYER~~

By: _____
Name: Bennett L. Nussbaum
Title: VICE PRESIDENT

Name: ~~ANDREW KEITH DAW~~

[CORPORATE SEAL]

Reviewed By
XRoads
Date: _____

LEGAL APPROVED
ATTY: _____
DATE: 8-23-05

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

Name: _Tina Gable_

Name: _Rebecca A. Buck_

**ASSIGNEE:**

**GREG ADAMS ENTERPRISES, INC.**
**(d/b/a Piggly Wiggly),** a North Carolina
corporation

By: _Nancy Adams_
Name: Nancy Adams
Title: Vice President / Corporate Secretary

[SEAL]

Sworn to and subscribed before me
this _24th_ day of _August_,
20_05_.
Witness my hand and official seal.

_____
Notary Public

My Commission Expires _12-24-2007_

12

<u>SCHEDULE 1</u>

Schedule of Excluded Equipment

**Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 827**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0827 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 M1367 | 5/15/2001 CLC | 29072 | $36.60 | 48 | 6/30/2005 | POS |
| 0827 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 M4617 | 5/15/2001 CLC | 29072 | $36.60 | 48 | 6/30/2005 | POS |
| 0827 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 XFAH9 | 5/15/2001 CLC | 29072 | $5.27 | 48 | 6/30/2005 | Personal Computers |
| 0827 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 XFAK0 | 5/15/2001 CLC | 29072 | $5.27 | 48 | 6/30/2005 | Personal Computers |
| 0827 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | 7/1/2001 ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 0827 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | 7/1/2001 ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 0827 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 NCKL11 | 7/17/2002 CLC | 32852 | $181.37 | 36 | 7/31/2005 | Servers |
| 0827 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 26CK11 | 7/17/2002 CLC | 32852 | $68.44 | 36 | 7/31/2005 | Servers |
| 0827 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | 7/17/2002 CLC | 32852 | $0.00 | 36 | 7/31/2005 | Personal Computers |

**Exhibit A**
**to Bill of Sale, Assignment and Assumption of Lease and Sublease**

<u>DESCRIPTION OF LEASES AND RELATED LAND</u>

**WINN-DIXIE STORE # 827**
Sanford, North Carolina

Lease:              Lease dated November 16, 1983 between The Cameron Company, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

as evidenced by Short Form Lease dated November 16, 1983, recorded in Book 352, Page 549, of the public records of Lee County, North Carolina

Amendments/
Guaranty:          Guaranty dated December 14, 1983

Supplemental Lease Agreement dated December 27, 1984

Letter Agreement dated June 10, 1986

Second Amendment to Lease dated August 15, 1991

Consent and Indemnification Agreement dated September 12, 1991

Third Amendment to Lease and First Amendment to Short Form Lease dated July 1, 1992, recorded in Book 484, Page 740, of the public records of Lee County, North Carolina

Premises:          That certain store building and related improvements located at 2412 S. Horner Boulevard, Sanford, Lee County, North Carolina

Legal Description:   The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

**Bill of Sale, Assignment and Assumption of Lease and Sublease for Store Number 827**

EXHIBIT "A"
## LEGAL DESCRIPTION OF SHOPPING CENTER

Beginning at a stake, said stake being located at the intersection of the Northern Right of way of Main Street (Hwy 78) and the Western Right of way of Horner Blvd. (Hwy 421, 87) thence as the Right of way of Main Street S69 18 41W - 291.26 feet to a stake, thence continuing as the Right of way of Main Street, S57 30 22W - 151.63 feet to an iron pipe, thence leaving the Right of way of Main Street, N19 37 46W - 423.84 feet to an iron pipe, thence, N65 07 57E - 240.17 feet to an iron pipe, thence, N20 22 03W - 96.30 feet to an iron pipe, said iron pipe lying on the Southern Right of way of East Globe Street, thence as the southern right of way of Globe Street, N54 41 41E - 121.23 feet to an iron pipe said iron pipe lying on the Western Right of way of Horner Blvd., thence as the western right of way of Horner Blvd., the following calls, S30 31 46E - 94.36 feet, S35 03 52E - 104.40 feet, S33 41 19E - 26.67 feet, S37 38 12E - 160.10 feet, S41 56 45E - 93.59 feet, S12 55 41W - 98.57 feet to the point of beginning containing 4.54 acres. Above description being a survey of that property described in the following deeds, Book 47, Page 532; Book 114, Page 112; Book 102, Page 372; Book 77, Page 335 & Book 353, Page 791; Lee County Registry. See also Plat recorded in Plat Cabinet 4, Slide 264.

Note: Property described above is situated in Jonesboro Township, Lee County, North Carolina.

827
2412 S. Horner Boulevard
Sanford, North Carolina

**Exhibit B**

to Bill of Sale, Assignment and Assumption of Lease and Sublease

<u>Schedule of Brokers</u>

<u>ASSIGNOR'S BROKERS</u>:

DJM Asset Management, LLC
445 Broad Hollow Road
Suite 417
Melville, New York  11747

The Food Partners, LLC
1250 Eye Street, N.W.
Suite 850
Washington, D.C.  20005

<u>ASSIGNEE'S BROKERS</u>:

[None]