UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

### ORDER APPROVING DEBTORS' LEASE TERMINATION
### AGREEMENT FOR STORE 360 AND GRANTING RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006(a), authorizing the Debtors to sell leasehold interests, equipment and inventory, and if the respective store contains a pharmacy, the pharmacy scrips, free and clear of liens, claims, interests and encumbrances, (b) determining that the sale is exempt from any stamp, transfer, recording or similar tax, (c) authorizing the Debtors to assume and assign all unexpired leases identified in the Purchase Agreement in connection with the sale, (d) fixing cure amounts for the Lease, and (e) granting related relief (the "Motion"). By the Motion, the Debtors assert that no cure is required under the lease (and any amendments) for Debtors Store No. 360, Boca Raton, Florida (the "Lease"). By the Motion, the affected landlord, Four Florida Shopping Centers, LLC (the "Landlord") had until July 14, 2005 to object to the proposed cure amount. An objection was filed. The Court held a hearing on the Motion on July 27, 2005. At the hearing, the Debtor asked the Court to approve the termination of the Lease. The Court has reviewed the Motion and heard the

NY01/LEHAR/1037429.4

representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:

A. This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B. The Debtors solicited the highest or otherwise best offer for the Lease in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 16, 2005 (the "Bidding Procedures"). A competing bid was received for the Lease and related assets and the Debtors conducted an auction for the Assets on July 18, 2005 (the "Auction"). At the Auction, the Landlord submitted a final bid for termination of the Lease in the amount of $200,000, plus a waiver of all claims for rejection damages and claims arising pre-petition under the Lease, representing the highest or otherwise best offer received for the Lease.

C. The Debtors have provided interested parties (including all parties asserting claims or interests in the Lease, if any) with proper notice of the Motion, the hearing, Auction[1], the termination of the Lease, and the fixing of any cure amount, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

D. The Debtors marketed the Lease and conducted the sale process in compliance with the Order approving the Bidding Procedures, the Bidding Procedures,

---

[1] All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion.

the Bankruptcy Code and all other Orders entered in these cases. The bidding on the Lease and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets. In their sound business judgment, the Debtors determined that the bid submitted by the Landlord for termination of the Lease represented the highest or otherwise best offer for the Lease.

E. The Debtors (i) have full corporate power and authority to execute and consummate the Lease Termination Agreement attached as Exhibit A (the "Termination Agreement") and all related documents, and the termination of the Lease has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Termination Agreement, are required to consummate the transactions contemplated by the agreement.

F. The consideration the Landlord is providing to the Debtors for termination of the Lease (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value.

G. The Debtors' termination of the Lease pursuant to the Termination Agreement will be a legal, valid, and effective termination of the Lease.

H. Notwithstanding the Termination Agreement or the Lease terms, the Debtors will have the right to remain in the premises up to the Termination Date (as defined in the Agreement) to discontinue its operations and to conduct a store closing sale in accordance with the Court's Order of July 27, 2005 (Docket No. 2537) (the "Store Closing Order").

I.  The Debtors will pay all amounts arising or accruing under the Lease between the petition date and the Termination Date, notwithstanding the date that that such amount is billed, and will perform all obligations arising under the Lease in accordance with 11 U.S.C. §365(d)(3) until the Termination Date.

J.  The Debtors will cause the proceeds received in consideration for the Termination Agreement to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

K.  The Debtors' entry into the Termination Agreement is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

L.  The Court's approval of the Termination Agreement is in the best interests of the Debtors, their estates and their creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.  The Motion is granted.

2.  All objections to the entry of this order or to the relief granted and requested in the Motion, that have not been withdrawn, waived or settled at or before the hearing, are denied and overruled on the merits.

3.  The Termination Agreement is approved in all respects. The Lease is terminated effective on the Termination Date, as defined in the Termination Agreement.

4.  Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Termination Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement. The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Lease to Purchaser.

5.  Notwithstanding the terms of the Lease, the Debtors are authorized to remain on the premises up to the Termination Date, to discontinue operations and to conduct store closing sales on the premises pursuant to the Store Closing Order.

6.  Any agreements, documents, or other instruments executed in connection with the Termination Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Termination Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

7. The Debtors will cause the net proceeds from the Termination Agreement to be paid in accordance with the terms of the Final Financing Order and the Loan Documents.

8. This Court retains exclusive jurisdiction to (a) enforce and implement the Termination Agreement and any other agreements and instruments executed in connection with the Termination Agreement, and (b) interpret, implement and enforce the provisions of this Order.

9. The terms and provisions of the Termination Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Landlord and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

10. Except for any unpaid amounts due and owing to the Landlord arising or accruing under the Lease between the petition date and the Termination Date, notwithstanding the date that such amount is billed, and except as provided for by the Termination Agreement, as of the Termination Date, the Landlord waives any and all claims it may have against the Debtors.

11. Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f), Federal Rules of Bankruptcy Procedure.

Dated this 26 day of August, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to
serve a copy of this Order on all parties
who received copies of the Motion.

# **EXHIBIT A**

## **LEASE TERMINATION AGREEMENT**

**THIS LEASE TERMINATION AGREEMENT** (the "Agreement") made as of the 19th day of July, 2005, by and between **Four Florida Shopping Centers, L.P., a Florida limited partnership** ("Landlord"), and **Winn-Dixie Stores, Inc., a Florida Corporation** ("Tenant").

### Recitals

A. Landlord and Tenant entered into a lease dated August 22, 1983 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 360, located at 23072 Sandalfoot Plaza Drive, Boca Raton, Palm Beach County, Florida, more fully described in the Lease (the "Premises").

B. On February 21, 2005, Winn-Dixie, Inc., and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C. On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures"). The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D. On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E. On July 18, 2005, pursuant to the Bidding Procedures, the Debtors conducted an auction for the sale of assets, including the Lease. Thereafter, the Debtors selected the Landlord as the party submitting the highest or best offer for the Lease (the "Successful Bidder").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. **Termination Date.** The parties desire to terminate the Lease and end the Lease term effective as of the later of: (i) the date of Bankruptcy Court approval for the sale of the Lease; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale at the Premises (the "Termination Date"). Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will end and terminate. Tenant will continue to pay and remain liable for all rent and additional rent, if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Termination Date in accordance with Section 365(d)(3) of the Bankruptcy Code After the Termination Date, neither party will have any further rights or obligations under the Lease.

2. **Surrender of Premises**. As of the Termination Date, Tenant hereby surrenders the Premises to Landlord and does hereby give, grant and surrender unto Landlord all of Tenant's right, title and interest in and to the Premises, including, without limitation, all of Tenant's right, title and interest in, to and under the Lease, and Landlord hereby accepts such surrender with the Premises in a broom clean, but in an otherwise "AS IS, WHERE IS" condition. Except as otherwise provided herein, each of the parties hereto acknowledge performance of all obligations of the other party under this Lease or otherwise in connection with the Premises through and including the date of this Agreement, and agree that, from and after the Termination Date, the Lease and all rights and obligations of the parties thereunder, shall be deemed to have expired and terminated as fully and completely and with the same force and effect as if such date were the termination date set forth in the Lease, and that the Lease is hereby agreed to be null and void and of no further force and effect as of that date. In addition, any and all rights and obligations of the parties which may have arisen in connection with the Premises shall be deemed to have expired and terminated as of the Termination Date.

3. **Right to "Go Dark" and Conduct Store Closing Sale.** Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date. Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Debtors' Motion for Order (A) Authorizing the Debtors to Retain Liquidating Agent and Approving Agency Agreement, (B) Authorizing the Debtors to Sell Merchandise Free and Clear of Liens Through Store Closing Sales in Accordance with Attached Guidelines and (C) Granting Related Relief filed on July 1, 2005.

4. **Termination Fee.** On or before the Termination Date, the Landlord will pay the Tenant a fee of $200,000 as consideration for entering into this Agreement.

5. **Reimbursement of Prepaid Expenses.** Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease.

6. **Irrevocable Bid.** Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord. Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures. In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7. **Representations.** Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement. Tenant has not assigned, transferred, encumbered or otherwise disposed of Tenant's rights under the Lease

or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

      8. **Release.** As of the Termination Date, except as to the obligations of Tenant pursuant to this Agreement, Landlord waives, releases and discharges Tenant, its successors and assigns, its estate, affiliates and the Debtors from all manner of actions or claims in law or in equity that Landlord ever had, currently has, or may have against Tenant or its successors and assigns relating to or arising out of the Lease, this Agreement or the Premises, including lease rejection claims under Section 502 of the Bankruptcy Code, administrative expense claims under Section 503 of the Bankruptcy Code or any other claims relating to the Tenant's use and occupancy of the Premises. To the extent Landlord has filed, or files, a proof claim with respect to the Lease and/or Premises, Landlord consents to the disallowance and expungement of such claim, with prejudice, provided, however, such releases and discharges shall not include (i) administrative expenses, including post-petition rent and related charges, and (ii) the Landlord's right to proceed against the Tenant and Tenant's insurance with respect to third party or environmental claims against the Landlord for which Tenant maintained insurance; provided, further, however, that in no event shall the Landlord seek to recover from the Tenant any amounts other than those specifically recoverable from the Tenant's insurers.

      9. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

      10. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

      11. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

      12. **Bankruptcy Court Approval.** The Tenant's obligations are subject to approval by the Bankruptcy Court, and Landlord and Tenant agree to cooperate in obtaining such approval.

      13. **Discharge of Memorandum.** If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

      14. **Jurisdiction.** The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

15. **Governing Law**. This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

**IN WITNESS WHEREOF,** the Landlord and Tenant have executed this Agreement as of the day and year first above written.

Tenant:  
Winn-Dixie Stores, Inc

Landlord:  
Four Florida Shopping Centers, L.P

By:_____  
Name:_____  
Title:_____

By: _____  
Name: _____  
Title: _____

4

15. **Governing Law**. This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

**IN WITNESS WHEREOF**, the Landlord and Tenant have executed this Agreement as of the day and year first above written.

Tenant:
Winn-Dixie Stores, Inc

By: _____
Name: _____
Title: _____

Landlord:
Four Florida Shopping Centers, L.P

By: _[signature]_
Name: _DAVID FEINBERG_
Title: _GENERAL COUNSEL_

NY01/LEHAR/1035335.2                           4

**IN WITNESS WHEREOF,** the Landlord and Tenant have executed this Agreement as of the day and year first above written.

Tenant:
Winn-Dixie Stores, Inc

By: [signature]

Name: _____

Title: _____

Landlord:
Four Florida Shopping Centers, L.P

By: _____

Name: _____

Title: _____

5