# ASSET PURCHASE AND LEASE TERMINATION AGREEMENT

**THIS ASSET PURCHASE AND LEASE TERMINATION AGREEMENT** (the "Agreement") made as of the 9th day of August, 2005, by and between Tunica Village Partnership (as successor in interest to Charles M. Gremillion) ("Landlord"), Big Star of Farmerville, Inc. ("Big Star"), Winn-Dixie Montgomery, Inc., a Florida Corporation ("Tenant"), and Winn-Dixie, Stores, Inc., a Florida corporation ("Guarantor").

## Recitals

A. Landlord and Tenant entered into a lease dated February 3, 1983 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 1541, located at 241 Tunica Village, Marksville, Louisiana more fully described in the Lease (the "Premises"). Guarantor executed a guaranty dated February 3, 1983 (as the same may have been amended supplemented or modified from time to time, the "Guaranty") by which Guarantor guaranteed the obligations of Tenant under the Lease.

B. On February 21, 2005, Guarantor, Tenant, and twenty-two of their affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C. On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures"). The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D. On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E. Pursuant to the Bidding Procedures, Tenant has solicited offers for the Lease and certain related assets, which resulted in Big Star submitting a bid (the "Big Star Bid") for Tenant's interest in (i) all fixtures in the store buildings now existing on the Leased Premises (the

"Buildings"), including but not limited to Tenant's interest in heating and air conditioning systems (including all refrigerants and gases), facilities used to provide any utility services, or other similar services to the Buildings, elevators, docks, lifts, doors, storefronts, ceilings, walls, partitions, lighting fixtures, and flooring (collectively, the "Improvements"), and (ii) trade fixtures, furniture and equipment now existing and located in the Buildings, including shopping carts, which are owned by Tenant and used in connection with the operation of Tenant's business at the Premises (the "Equipment" and, collectively with the Improvements, the "Store 1541 FF&E"), other than the items identified on Schedule 1 to this Agreement (the "Excluded Property"), pursuant to the terms and conditions contained in this Agreement. Big Star acknowledges and agrees that all materials, data and information delivered and made available by Tenant or any affiliate of Tenant to Big Star in connection with the transaction contemplated hereby (whether delivered or made orally, in writing, in electronic format or on the Merrill website) are provided to Big Star as a convenience only. No representation or warranty as to accuracy, completeness, or any other issue has been provided by Tenant or any affiliate of Tenant.

F.   Tenant has not received any other offers for the Lease or the Store 1541 FF&E other than the Big Star Bid. Big Star has tendered a deposit (the "Deposit") of ten thousand dollars ($10,000) to the Tenant in connection with the Big Star Bid.

G.   The Tenant desires to convey the Store 1541 FF&E to Big Star and the parties desire to terminate the Lease and the Guaranty and end the Lease term both effective as of the later of: (i) the date of entry of an order of the Bankruptcy Court, in a form drafted by Tenant and reasonably acceptable to Big Star, approving termination of the Lease and conveyance of the Store 1541 FF&E to Big Star free and clear of any and all liens, claims or encumbrances to the maximum extent permitted under the Bankruptcy Code; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale at the Premises (the "Termination Date").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. **Termination Date.**  Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will end and terminate.  Tenant will continue to pay and remain liable for all rent and additional rent, if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Termination Date.  The Tenant shall remove all Excluded Property from the Premises on or before the Termination Date.  After the Termination Date, neither Tenant nor Landlord will have any further rights or obligations under the Lease. Within ninety-six (96) hours of the Termination Date, Big Star shall, at its sole cost and expense, either (a) remove from the Premises and lawfully dispose of all branded shopping carts or (b) remove all trademarks, trade names, logos and designs of Tenant, Winn-Dixie or their Affiliates from all shopping carts and destroy and lawfully dispose of all such trademarks, trade names, logos and designs.  Subject to the provisions of this Agreement, at 11:59 p.m., E.T., on the Termination Date, the Guaranty will terminate.

2. **Surrender of Premises and Sale of Store 1541 FF&E.**  Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in its "As Is" condition with all Store 1541 FF&E to remain on the Premises.  Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises.  Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises. This provision will survive the termination of the Lease. Tenant acknowledges and agrees that in consideration of the FF&E Fee (defined hereafter), Tenant will convey the Store 1541 FF&E to Big Star by bill of sale (without warranty or representations as to merchantability or fitness for a particular purpose) free and clear of any and all liens, claims or encumbrances to the maximum extent permitted under the Bankruptcy Code.

3. **Right to "Go Dark" and Conduct Store Closing Sale.** Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date. Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Bankruptcy Court's Orders approving store closing sales entered July 27, 2005 (docket no. 2537) and August 5, 2005 (docket no. 2830). The foregoing notwithstanding, Tenant shall not, on or before the Termination Date, remove any Store 1541 FF&E from the Premises, other than in the ordinary course of business, or cause utility service to the Premises to be discontinued or render any of the Store 1541 FF&E inoperable, including, but not limited to, by draining freon from refrigeration equipment. Tenant shall permit Big Star access to the Premises on a date and time selected by Big Star and reasonably acceptable to Tenant for the purpose of inspecting and inventorying the Store 1541 FF&E. Tenant may observe any such inspection and inventorying process.

4. **Termination Fee.** On the Termination Date, Big Star will (a) direct the escrow agent or other person then in possession of the Deposit to transfer the Deposit to the Tenant and will pay an additional one hundred seventeen thousand dollars ($117,000) directly to the Tenant (collectively, the "FF&E Fee"), and (b) pay twenty-six thousand dollars ($26,000) to Landlord (the "Termination Fee"), all as consideration for entering into this Agreement.

5. **Reimbursement of Prepaid Expenses.** Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease. On or before the Termination Date, the Tenant will pay, or reimburse to Big Star, all personal property taxes related to Tenant's ownership of the Store 1541 FF&E prior to the Termination Date (calculated on an accrual basis).

6. **Irrevocable Bid.** Big Star and Landlord acknowledge that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale or (ii) closing of the sale with another party. Big Star and Landlord acknowledges that they are bound by the terms and conditions of the Bidding Procedures. In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern. The foregoing notwithstanding, any party hereto may terminate this Agreement by written notice to the other parties delivered on or before October 7, 2005 in the event the Termination Date has not occurred by September 30, 2005.

7. **Representations.** Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement. Tenant has not assigned, transferred, encumbered or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement. Big Star and Tenant each represent that (a) it is a corporation duly organized, validly existing and in good standing under the laws of its organization, and has the power and authority to consummate the transactions contemplated hereunder, and (b) this Agreement and each of the closing documents to which Big Star or Tenant is or is to become a party, and the transactions contemplated by this Agreement and such closing documents, have been duly authorized by all required corporate action on behalf of such party.

8. **Release.** As of the Termination Date, except as to the obligations of Tenant pursuant to this Agreement, Landlord waives, releases and discharges Tenant, Guarantor, their successors and assigns, their estates, their affiliates and the Debtors from all manner of actions or claims in law or in equity that Landlord ever had, currently has, or may have against Tenant, Guarantor or their successors and assigns relating to or arising out of the Lease, the Guaranty, this Agreement or the Premises, including lease rejection claims under Section 502 of the Bankruptcy Code, administrative expense claims under Section 503 of the Bankruptcy Code or any other claims

5

relating to the Tenant's use and occupancy of the Premises. To the extent Landlord has filed, or files, a proof of claim with respect to the claims released in this Agreement, Landlord consents to the disallowance and expungement of such claim, with prejudice.

9. **Loss by Fire or Other Casualty; Condemnation**. In the event that, prior to the Termination Date, the Store 1541 FF&E, or any material part thereof, is destroyed or materially damaged, or if condemnation proceedings are commenced against any material part of the Store 1541 FF&E or the Premises, Big Star will have the right, exercisable by giving notice of such decision to the other parties within 10 days after receiving written notice of such damage, destruction or condemnation proceedings, to terminate this Agreement, and thereafter none of the parties will have any further rights or obligations hereunder and Big Star will be entitled to the return of the Deposit. If Big Star doe not exercise its right of termination and the Store 1541 FF&E is sold to Big Star pursuant to the terms of this Agreement, as Big Star's sole remedy, Tenant will assign to Big Star any rights it may have, and is entitled to assign, to recover insurance proceeds or to receive condemnation compensation and will promptly pay over and deliver to Big Star any such proceeds or compensation received by it.

10. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof and is binding upon and will inure to the benefit of the Landlord, Big Star and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease and the Guaranty that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

11. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

12. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

13. **Bankruptcy Court Approval.**  This Agreement is subject to approval by the Bankruptcy Court, and Landlord, Big Star, Tenant and Guarantor agree to cooperate in obtaining such approval.

14. **Discharge of Memorandum.**  If Landlord and Tenant have executed and recorded a memorandum of the Lease, on the Termination Date, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease and Landlord, at its sole cost and expense, will file or record the discharge of memorandum in the applicable recorder's office.

15. **Jurisdiction.**  The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement, and Landlord and Big Star consent to such exclusive jurisdiction.

16. **Governing Law.**  This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

IN WITNESS WHEREOF, the Landlord, Tenant and Big Star have executed this Agreement as of the day and year first above written.

**Landlord: Tunica Village Partnership**

By: _____

Name: _____

Title: _____

**Big Star of Farmerville, Inc.**

By:

Name: _____

Title: _____

7

13. **Bankruptcy Court Approval.** This Agreement is subject to approval by the Bankruptcy Court, and Landlord, Big Star, Tenant and Guarantor agree to cooperate in obtaining such approval.

14. **Discharge of Memorandum.** If Landlord and Tenant have executed and recorded a memorandum of the Lease, on the Termination Date, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease and Landlord, at its sole cost and expense, will file or record the discharge of memorandum in the applicable recorder's office.

15. **Jurisdiction.** The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement, and Landlord and Big Star consent to such exclusive jurisdiction.

16. **Governing Law.** This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

**IN WITNESS WHEREOF,** the Landlord, Tenant and Big Star have executed this Agreement as of the day and year first above written.

Landlord: Tunica Village Partnership

By: _____

Name: RALPH E. HOOD

Title: PARTNER

**Big Star of Farmerville, Inc.**

By:

Name: _____

Title: _____

7

13. **Bankruptcy Court Approval.** This Agreement is subject to approval by the Bankruptcy Court, and Landlord, Big Star, Tenant and Guarantor agree to cooperate in obtaining such approval.

14. **Discharge of Memorandum.** If Landlord and Tenant have executed and recorded a memorandum of the Lease, on the Termination Date, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease and Landlord, at its sole cost and expense, will file or record the discharge of memorandum in the applicable recorder's office.

15. **Jurisdiction.** The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement, and Landlord and Big Star consent to such exclusive jurisdiction.

16. **Governing Law.** This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

**IN WITNESS WHEREOF**, the Landlord, Tenant and Big Star have executed this Agreement as of the day and year first above written.

**Landlord: Tunica Village Partnership**

By:_____

Name:_____

Title:_____

**Big Star of Farmerville, Inc.**

By:

Name: _____

Title: _PRESIDENT_____

7

**Tenant: Winn-Dixie Montgomery, Inc.**

By:_____

Name:_____

Title:_____



**Guarantor: Winn-Dixie Stores, Inc.**

By:_____

Name:_____

Title:_____

**SCHEDULE 1**

**Schedule of Excluded Equipment**