## LEASE TERMINATION AGREEMENT

THIS LEASE TERMINATION AGREEMENT (the "Agreement") made as of the 9th day of August, 2005, by and between **KAOLIN PLAZA LLC**, a Georgia limited liability company ("Landlord"), and **WINN-DIXIE RALEIGH, INC.**, a Florida Corporation ("Tenant"), and **WINN-DIXIE STORES, INC.**, a Florida Corporation ("Guarantor").

### Recitals

A.   Landlord and Tenant entered into a lease dated January 17, 1978 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 408, located at 648 South Harris Street, Sandersville, Georgia 31082, more fully described in the Lease (the "Premises"). Guarantor executed a guaranty dated January 31, 1978 (as the same may have been amended supplemented or modified from time to time, the "Guaranty") by which Guarantor guaranteed the obligations of Tenant under the Lease.

B.   On February 21, 2005, Guarantor, Tenant, and twenty-two of their affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C.   On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures"). The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D.   On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E.   On August 9, 2005, pursuant to the Bidding Procedures, the Debtors conducted an auction for the sale of assets, including the Lease, and the Landlord was the successful bidder for the Lease.

F.   The parties desire to terminate the Lease and the Guaranty, and end the Lease term effective as of the later of: (i) the date of Bankruptcy Court approval of the sale of the Lease; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale at the Premises, which date shall not be later than September 30, 2005 (the "Termination Date").

NOW, THEREFORE, in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.   **Termination Date.** Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will end and terminate. Tenant will continue to pay and remain liable for all rent and additional rent, if any, due and owing

under the Lease accruing after February 21, 2005, up to and including the Termination Date. After the Termination Date, neither party will have any further rights or obligations under the Lease, other than Tenant's obligation to pay any rent accruing after February 21, 2005 and prior to the Termination Date. Subject to the provisions of this Agreement, at 11:59 p.m., E.T., on the Termination Date, the Guaranty will terminate.

2. **Surrender of Premises.** Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in substantially the same condition as exists on the date of this Agreement. Tenant shall use commercially reasonable efforts to minimize any damage to the Premises and the FF&E (as hereinafter defined) on account of Tenant's vacating the Premises. Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises or the FF&E. Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease or to remove any additions or alterations to the Premises. This provision will survive the termination of the Lease. Notwithstanding anything to the contrary contained within the Lease or any right Tenant otherwise may have at law or in equity, the Tenant shall not have the right and shall not remove, or allow the removal of, whether by sale or otherwise, any items of furniture, fixtures, trade fixtures or equipment located at the Premises which are owned by Tenant and used in connection with the operation of Tenant's business at the Premises, (collectively, the "FF&E") other than those items identified on Schedule 1 of this Agreement and/or any components of the FF&E which become inoperable and are removed from the Premises in the ordinary course of Tenant's business (it being acknowledged that after the date hereof, Tenant shall not have the right to sell or transfer any of its right, title or interest in or to the FF&E to any third party). Tenant acknowledges and agrees that in consideration of the Termination Fee, Tenant will convey the FF&E to Landlord on the Termination Date by bill of sale (without warranty or representations as to merchantability or fitness for a particular purpose) free and clear of any and all liens or other encumbrances to the extent permitted under the Bankruptcy Code.

3. **Right to "Go Dark" and Conduct Store Closing Sale.** Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date. Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Bankruptcy Court's Orders approving store closing sales entered July 27, 2005 (docket no. 2537) and August 5, 2005 (docket no. 2830).

4. **Termination Fee.** On or before the Termination Date and as consideration for Landlord entering into this Agreement and conveying the FF&E to Landlord in accordance with the provisions of this Agreement, the Landlord will (i) pay the Tenant a fee of $25,000.00, (ii) waive any claims it may have with respect to rents and additional rent accruing prior to February 21, 2005 (the "Pre-Petition Claims"), and (iii) waive any claims it may have against Tenant resulting from the termination of the Lease, as described in Section 502(b)(6) of the Bankruptcy Code (the "502(b)(6) Claims").

2

Lease Termination Agreement for store number 408

5. **Reimbursement of Prepaid Expenses.** Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease.

6. **Irrevocable Bid.** Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord. Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures. In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7. **Representations.** Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement. Tenant has not assigned, transferred, conveyed or disposed of (i) Tenant's rights under the Lease or any sublease or (ii) Tenant's right, title and interest in and to the FF&E, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

8. **Release.** As of the Termination Date, except as to the obligations of Tenant pursuant to this Agreement, Landlord waives, releases and discharges Tenant, Guarantor, their successors and assigns, their estates, their affiliates and the Debtors from all manner of actions or claims in law or in equity that Landlord ever had, currently has, or may have against Tenant, Guarantor or their successors and assigns relating to or arising out of (i) the Pre-Petition Claims, (ii) the 502(b)(6) Claims, (iii) administrative expense claims under Section 503 of the Bankruptcy Code or any other claims relating to the Tenant's use and occupancy of the Premises. To the extent Landlord has filed, or files, a proof of claim with respect to claims released in this Agreement, Landlord consents to the disallowance and expungement of such claim, with prejudice.

9. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease and the Guaranty that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

10. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

11. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

12. **Bankruptcy Court Approval.** Tenant's and Guarantor's obligations are subject to approval by the Bankruptcy Court, and Landlord, Tenant, and Guarantor agree to cooperate in obtaining such approval.

13. **Discharge of Memorandum.** If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

14. **Jurisdiction.** The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

15. **Governing Law.** This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

IN WITNESS WHEREOF, the Landlord, Tenant, and Guarantor have executed this Agreement as of the day and year first above written.

Tenant:

By:_____
Name:_____
Its:_____

Landlord:

KAOLIN PLAZA LLC, a Georgia limited liability company

By: *Benjamin R. Tarbutt*
Name: Benjamin R. Tarbutt
Its: Managing Member

Guarantor:

By:_____
Name:_____
Its _____

Lease Termination Agreement for store number 408

4

# SCHEDULE 1

## Schedule of Excluded Equipment

Leased Equipment Register

| Center | Mfg | Type | Model | Description | Quantity | Serial | Install Date | Lessor | Lease # | Rent Amt | Lease Ter | Expire Date | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0408 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | 863L11 | 7/17/2002 | CLC | 32510 | $181.37 | 36 | 7/31/2005 | Servers |
| 0408 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | 6YRB11 | 7/17/2002 | CLC | 32510 | $68.44 | 36 | 7/31/2005 | Servers |
| 0408 | TEL | 960BULK | XDS | 900MHZ(093RADIO), | 1 | 002052 | 11/16/2002 | CLC | 34098 | $16.36 | 36 | 11/30/2005 | Radio Frequency |
| 0408 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 7/17/2002 | CLC | 32510 | $0.00 | 36 | 7/31/2005 | Personal Computers |

Privileged and Confidential