# LEASE TERMINATION AGREEMENT

**THIS LEASE TERMINATION AGREEMENT** (the "Agreement") made as of the 9th day of August, 2005, by and between EBR Limited Liability Company, a Louisiana limited liability company (formerly EBR Partnership) ("Landlord"), Winn-Dixie Montgomery, Inc., a Florida Corporation (successor in interest to Winn-Dixie Louisiana, Inc.) ("Tenant"), and Winn-Dixie Stores, Inc. ("Guarantor").

## Recitals

A. Landlord and Tenant entered into a lease originally executed on November 11, 1982 between EBR Partnership and Winn-Dixie Louisiana, Inc., recorded in the Parish of East Baton Rouge at Original 567, Bundle. 9543; amended by that certain "Amendment of Lease" dated November 8, 1993 between EBR Partnership and Winn-Dixie Louisiana, Inc. and amended by that certain "Second Amendment of Lease" dated January 13, 1995 between EBR Partnership and Winn-Dixie Louisiana, Inc. (collectively the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 1446, located at Baker Regional Shopping Center, Baker, Louisiana, and more fully described in the Lease (the "Premises"). Guarantor executed a guaranty dated November 30, 1982 (as the same may have been amended, supplemented or modified from time to time, the "Guaranty") by which Guarantor guaranteed the obligations of Tenant under the Lease.

B. On February 21, 2005, Guarantor, Tenant and twenty-two of their affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C. On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures"). The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D. On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E. On August 9, 2005, pursuant to the Bidding Procedures, the Debtors conducted an auction for the sale of assets, including the Lease, and the Landlord was the successful bidder for the Lease.

F. The parties desire to terminate the Lease and the Guaranty and end the Lease term effective as of the later of: (i) the date of Bankruptcy Court approval of the sale of the Lease; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale at the Premises (the "Termination Date").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

BR.424743.5

1. **Termination Date.** Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will end and terminate. Tenant will continue to pay and remain liable for all rent and additional rent (including ad valorem taxes, common area maintenance fees and insurance), if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Termination Date. After the Termination Date, neither party will have any further rights or obligations under the Lease. Subject to the provisions of this Agreement, at 11:59 p.m., E.T., on the Termination Date, the Guaranty will terminate.

2. **Surrender of Premises.** Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in its "As Is" condition; provided, however, if the Termination Date extends beyond October 1, 2005, the Tenant will leave the Premises in its "As Is" condition as of October 1, 2005. Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises. Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises. This provision will survive the termination of the Lease.

3. **Right to "Go Dark" and Conduct Store Closing Sale.** Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date. Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Bankruptcy Court's Orders approving store closing sales entered July 27, 2005 (docket no. 2537) and August 5, 2005 (docket no. 2830).

4. **Termination and FF & E Fee.** On or before the Termination Date, as further consideration for entering into this Agreement, the Landlord will pay the Tenant a fee of Seventy-Five Thousand Dollars ($75,000) for all trade fixtures, furniture, equipment, signs and other personal property owned by Tenant and used in connection with Tenant's business at the Premises including lighting systems, counters, modular wall units, shelving and other movable personal property, external signage and any other items that Tenant is permitted to remove under the Lease ("FF&E"), other than items described on Schedule 1. Notwithstanding anything to the contrary, Tenant shall have the right to remove all portions of signs installed on the Premises bearing the Winn-Dixie trademark, service mark, or trade name. Tenant will convey all FF&E to the Landlord on the Termination Date by bill of sale (without any warranty or representations as to merchantability or fitness for a particular purpose) free and clear of any and all liens or other encumbrances to the extent permitted under the Bankruptcy Code.

5. **Reimbursement of Prepaid Expenses.** Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease.

6. **Irrevocable Bid.** Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord. Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures. In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7. **Representations.** Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement. Tenant has not assigned, transferred, encumbered or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

8. **Release.** As of the Termination Date, Landlord waives, releases and discharges Tenant, Guarantor, their successors and assigns, their estate, their affiliates and the Debtors from all manner of actions or claims in law or in equity that Landlord ever had, currently has, or may have against Tenant, Guarantor or their successors and assigns relating to or arising out of the Lease, the Guaranty, this Agreement or the Premises, including lease rejection claims under Section 502 of the Bankruptcy Code, administrative expense claims under Section 503 of the Bankruptcy Code or any other claims relating to the Tenant's use and occupancy of the Premises. To the extent Landlord has filed, or files, a proof of claim with respect to the claims released in this Agreement, Landlord consents to the disallowance and expungement of such claim, with prejudice. Notwithstanding the foregoing, this release does not include third party claims, actions, or suits related to the Lease or Premises that occurred prior to the Termination Date which would entitle Landlord to indemnity under Article 15 of the Lease.

9. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease and Guaranty that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

10. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

11. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

12. **Bankruptcy Court Approval.** The Tenant's and Guarantor's obligations are subject to approval by the Bankruptcy Court, and Landlord, Tenant and Guarantor agree to cooperate in obtaining such approval.

13. **Discharge of Memorandum.** If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

14. **Jurisdiction.** The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

15. **Governing Law.** This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this Agreement as of the day and year first above written.

**Tenant:**

**Winn-Dixie Montgomery, Inc.**

By: _____

Name: _____

Its _____

**Landlord:**

**EBR Limited Liability Company**

By: /s/ Walter V. Tullos, III

Walter V. Tullos, III, Member

**Guarantor:**

**Winn-Dixie Stores, Inc.**

By: _____

Name: _____

Its _____

BR.424743.5

4

## Schedule 1

1. All leased equipment described on Exhibit A;

2. All leased photo lab equipment;

3. Any goods and merchandise that are damaged, spoiled or distressed;

4. All owned computer and related equipment that contains software subject to a license that restricts its transfer or imbedded data files that in either case is/are not easily and effectively deleted or removed;

5. All payphones, vending machines, kiosks, blood pressure machines, sanitation chemical mixing equipment, copiers, Western Union equipment, money order equipment, coin rolling, sorting or counting equipment, ATM's, rug cleaners and equipment owned by product vendors;

6. All branded shopping carts;

7. All over-the-road motor vehicles;

8. All computer software subject to a license that restricts its transfer or that resides on excluded equipment;

9. All data files other than customer lists, prescription files, prescription registers, and operating and maintenance logs owned by Tenant that relate to the pharmacy operated in the Premises;

10. All lottery equipment and tickets;

11. All accounts receivable, bank accounts, cash and cash equivalents;

12. All trademarks, trade names, private labels, logos and designs of Tenant and Guarantor;

13. All intellectual property and rights (customer lists, prescription files, prescription registers, and operating and maintenance logs owned by Tenant that relate to the pharmacy operated in the Premises); and

14. All service agreements, contracts and warranties relating to Tenant's possession and operation of the Premises.

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records. Prepared by management.

| Center | Mfg | Type | Model | Description | Quantity | Serial | Install Date | Lessor | Lease | Rent Amol | Lease Ter | Expire Dat | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1466 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0729 | 5/15/2001 | CLC | 28874 | $35.17 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0907 | 5/15/2001 | CLC | 28874 | $35.18 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDAY8 | 5/15/2001 | CLC | 28874 | $6.69 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDBA7 | 5/15/2001 | CLC | 28874 | $6.70 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | TPT89 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | TPV02 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | VMT42 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | VMX73 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | VMX85 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | VMX86 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | VMZ88 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | VMZ91 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | VMZ94 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | VNA06 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 4694 | S45 | POS REGISTER | 1 | VNX44 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 1466 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CPM68 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 1466 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRA58 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 1466 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRA59 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 1466 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRA66 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 1466 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRA67 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 1466 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRB38 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 1466 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRB40 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 1466 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRB48 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 1466 | IBM | 6331 | M2N | WHITER MONITOR 15 | 1 | CRB49 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 1466 | IBM | 4694 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 1466 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 1466 | TEL | PTC960 | XDS | RF RE-MANUFACTURE | 1 | 784484 | 6/16/2002 | CLC | 32187 | $19.93 | 36 | 6/30/2005 | Radio Frequency |
| 1466 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | VPGL11 | 7/17/2002 | CLC | 32656 | $181.37 | 36 | 7/31/2005 | Servers |
| 1466 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | SZRB11 | 7/17/2002 | CLC | 32656 | $68.44 | 36 | 7/31/2005 | Servers |
| 1466 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 7/17/2002 | CLC | 32656 | $0.00 | 36 | 7/31/2005 | Personal Computers |


EXHIBIT A

Privileged and Confidential