## LEASE TERMINATION AGREEMENT

**THIS LEASE TERMINATION AGREEMENT** (the "Agreement") made as of the 30th day of August, 2005, by and between **E&A Southeast Limited Partnership,** a Georgia limited partnership ("Landlord"), and **Winn-Dixie Raleigh, Inc.,** a Florida corporation ("Tenant") and **Winn-Dixie Stores, Inc.,** a Florida Corporation ("Guarantor").

## Recitals

A.      Landlord and Tenant entered into a lease dated October 8, 1987 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 2708, located at 2350 Spring Road, Smyrna, Cobb County, Georgia, more fully described in the Lease (the "Premises").  Guarantor executed a guaranty dated October 12, 1985 (as the same may have been amended supplemented or modified from time to time, the "Guaranty") by which Guarantor guaranteed the obligations of Tenant under the Lease.

B.      On February 21, 2005, Guarantor, Tenant, and twenty-two of their affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C.      On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures").  The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D.      On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E.      Pursuant to the Bidding Procedures, Tenant has solicited offers for the Lease and certain related assets, which resulted in the Landlord submitting the highest or best bid for the purchase of the FF&E (as defined below) and for the termination of the Lease.

F.      The parties desire to terminate the Lease and the Guaranty, and end the Lease term effective as of the later of: (i) the date of Bankruptcy Court approval of the sale of the Lease; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale at the Premises (the "Termination Date").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.      **Termination Date.**  Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will end and terminate.  Tenant will continue to pay and remain liable for all rent and additional rent, if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Termination Date. After the Termination Date, neither party will have any further rights or obligations under the

Lease.  Subject to the provisions of this Agreement, at 11:59 p.m., E.T., on the Termination Date, the Guaranty will terminate.

2.  **Surrender of Premises**.  Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in its "As Is" condition.  Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises.  Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises.  This provision will survive the termination of the Lease.  Notwithstanding anything to the contrary in the Lease, the Tenant shall not have the right and shall not remove, or allow the removal, whether by sale or otherwise, of any items of furniture, fixtures, trade fixtures or equipment located at the Premises which are owned by Tenant and used in connection with the operation of Tenant's business at the Premises (collectively, the "FF&E") other than those items identified on Schedule 1 of this Agreement and other than items removed from the Premises in the ordinary course of business.  Tenant acknowledges and agrees that in consideration of the Termination Fee, Tenant will convey the FF&E to Landlord on the Termination Date by bill of sale (without warranty or representations as to merchantability or fitness for a particular purpose) free and clear of any and all liens or other encumbrances to the extent permitted under the Bankruptcy Code.

3.  **Right to "Go Dark" and Conduct Store Closing Sale.**  Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date.  Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Bankruptcy Court's Orders approving store closing sales entered July 27, 2005 (docket no. 2537) and August 5, 2005 (docket no. 2830).

4.  **Termination Fee.**  On or before the Termination Date, the Landlord will pay the Tenant a fee of $17,000 (the "Termination Fee") as consideration for entering into this Agreement.

5.  **Reimbursement of Prepaid Expenses.**  Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease.

6.  **Irrevocable Bid.**  Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord.  Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures.  In the event of any conflict or inconsistency between the

2

**Lease Termination Agreement for store number 2708**

provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7. **Representations.**  Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement.  Tenant has not assigned, transferred, or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

8. **Release.**  As of the Termination Date, except as to the obligations of Tenant pursuant to this Agreement, Landlord waives, releases and discharges Tenant, Guarantor, their successors and assigns, their estates, their affiliates and the Debtors from all manner of actions or claims in law or in equity that Landlord ever had, currently has, or may have against Tenant, Guarantor or its successors and assigns relating to or arising out of the Lease, the Guaranty, this Agreement or the Premises, including lease rejection claims under Section 502 of the Bankruptcy Code, administrative expense claims under Section 503 of the Bankruptcy Code or any other claims relating to the Tenant's use and occupancy of the Premises.  To the extent Landlord has filed, or files, a proof of claim with respect to the Lease, the Guaranty, and/or the Premises, Landlord consents to the disallowance and expungement of such claim, with prejudice.

9. **Entire Agreement.**  This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns.  The provisions of this Agreement supersede all provisions of the Lease and the Guaranty that are inconsistent.  No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

10. **Counterparts.**  This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

11. **Severability.**  Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

12. **Bankruptcy Court Approval.**  The Tenant's and Guarantor's obligations are subject to approval by the Bankruptcy Court, and Landlord, Tenant, and Guarantor agree to cooperate in obtaining such approval.

13. **Discharge of Memorandum.**  If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

14. **Jurisdiction.**  The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

15. **Governing Law**.  This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

**IN WITNESS WHEREOF,** the Landlord, Tenant, and Guarantor have executed this Agreement as of the day and year first above written.

Tenant:  **Winn-Dixie Raleigh, Inc.**                Landlord:    **E&A   Southeast   Limited Partnership**

By: _____                By: _____

Name: _____            Name: _____

Its _____                Its: _____


Guarantor: **Winn-Dixie Stores, Inc.**

By: _____

Name: _____

Its _____

**Lease Termination Agreement for store number 2708**

## <u>SCHEDULE 1</u>

**Schedule of Excluded Equipment**

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records. Prepared by management.

| Center | Mfg | Type | Model | Description | Quantity | Serial . | Install Date | Lessor | Lease . | Rent Amount | Lease Term | Expire Date | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2708 | IBM | 8477 | 42Y | NETFINITY | 1 | M0574 | 6/15/2001 | CLC | 29435 | $36.60 | 48 | 7/31/2005 | POS |
| 2708 | IBM | 8477 | 42Y | NETFINITY | 1 | M1882 | 6/15/2001 | CLC | 29435 | $36.60 | 48 | 7/31/2005 | POS |
| 2708 | IBM | 6331 | B2N | IBM BLACK | 1 | XDDN7 | 6/15/2001 | CLC | 29435 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| 2708 | IBM | 6331 | B2N | IBM BLACK | 1 | XDDN8 | 6/15/2001 | CLC | 29435 | $5.27 | 48 | 7/31/2005 | Personal Computers |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTG12 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTG13 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTN36 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTP49 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTP86 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTR08 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV02 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV14 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV15 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV19 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV21 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4610 | TS4 | THERMAL | 1 | HTV24 | 7/1/2001 | ICC | 22986 | $19.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | TPT98 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | TPV62 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | TPX78 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | TPX94 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKM01 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKP38 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKV46 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKV60 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VKV61 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VMN24 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 4694 | S45 | POS REGI | 1 | VNX15 | 7/1/2001 | ICC | 22980 | $51.00 | 48 | 6/30/2005 | POS |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNN72 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNN73 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNN79 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNP23 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNP24 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNP30 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | 6331 | M2N | WHITER M | 1 | CNP31 | 7/1/2001 | ICC | 22991 | $5.25 | 48 | 6/30/2005 | Personal Computers |
| 2708 | IBM | SAV2 | SFTW | IBM SAV2 | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 2708 | IBM | SAV2 | SVCS | SAV2 SER | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 2708 | DCC | 2500 | P3 | POWERED | 1 | G02F11 | 5/17/2002 | CLC | 31733 | $181.37 | 36 | 5/31/2005 | Servers |
| 2708 | DCC | PV715N | 1U | DELL NAS | 1 | N0N111 | 5/17/2002 | CLC | 31733 | $68.44 | 36 | 5/31/2005 | Servers |
| 2708 | DCC | E551 | 15MO | DELL E551 | 1 | | 5/17/2002 | CLC | 31733 | $0.00 | 36 | 5/31/2005 | Personal Computers |

**Other Leased Equipment**
Health Resource Computer System
Health Clinic Blood Pressur Machine
IVR Equipment

Privileged and Confidential