Exhibit "A"

The South 65.00 feet of Parcel "LL" and all of Parcel "MM" of CYPRESS RUN, according to the Plat thereof recorded in Plat Book 93, Page 16 of the Public Records of Broward County, Florida.

LESS that portion of said Parcel "MM" described in Official Records Book 9361, Page 948, of said Public Records.

ALSO LESS that portion of said Parcel "MM" described in Official Records Book 9070, Page 477, of said Public Records.

ALSO LESS those portions of said Parcel "MM" and that portion of said Parcel "LL" described in Official Records Book 18157, Page 470, of said Public Records.

EXHIBIT A-3
TO ASSET PURCHASE AGREEMENT

LIST OF DOCUMENTS BINDING ON BUYER

WINN-DIXIE STORE # 206
Coral Springs, Florida

Lease: Lease dated February 18, 1988 between National RE/Sources Cypress Run, L.P. (successor in interest to Florida National Properties, Inc.), as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

as evidenced by Memorandum of Lease dated May 9, 1988, recorded in Book 15632, Page 0100, of the public records of Broward County, Florida, amended and restated by Amended and Restated Short Form Lease, dated November 15, 1999, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc., recorded in Book 30139, Page 1306, further amended and restated by Second Amended and Restated Short Form Lease, dated August 20, 2001, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Amendments  Assignment of Lease dated June 20, 1988, from Florida National Properties, Inc. to Cypress Run Square, Inc. recorded in Book 15680, Page 0151, of the public records of Broward County, Florida

Supplemental Lease Agreement, dated August 22, 1989, between Cypress Run Square, Inc. and Winn-Dixie Stores, Inc.

Letter Agreement, dated September 1, 1992, between Cypress Run Square, Inc. and Winn-Dixie Stores, Inc.

First Amendment to Lease, dated November 15, 1999 between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Second Amendment to Lease, dated February 2, 2001, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Third Amendment to Lease, dated August 20, 2001, Amended and Restated Short Form Lease, dated November 15, 1999, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Termination of Declaration of Restrictions and Protective Covenants for Cypress Run Square, dated March 31, 2003, by Sansone-Scenic & Republic, LLC

EXHIBIT B

To Asset Purchase Agreement

Form of Bill of Sale

**BILL OF SALE**

**WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2005, among **WAL-MART STORES, INC.** a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of the Agreement (hereinafter defined) ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Lease or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store location as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

[SIGNATURES ON FOLLOWING PAGE]

Case 3:05-bk-03817-JAF    Doc 3418-3    Filed 09/08/05    Page 4 of 20

**IN WITNESS WHEREOF,** Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2005.

"SELLER"

**WINN-DIXIE STORES, INC.**, a Florida corporation

By: _____
Name: _____
Title: _____

# EXHIBIT C

## To

### Asset Purchase Agreement

### FORM OF CLOSING STATEMENT

### CLOSING STATEMENT SUMMARY

| | |
|---|---|
| BUYER: | Wal-Mart Stores, Inc., a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of this Agreement |
| SELLER: | Winn-Dixie Stores, Inc., a Florida corporation |
| ESCROW AGENT and SETTLEMENT AGENT: | _____ |
| PROPERTY | Store No. 206 |
| CLOSING DATE: | _____, 2005 |

### SELLER'S STATEMENT

I. PURCHASE PRICE:

    Leasehold:　　　　　　　　　　　　　　　　　　　$_____

    FF&E:　　　　　　　　　　　　　　　　　　　　　$_____

    TOTAL PURCHASE PRICE:　　　　　　　　　　　　$_____

II.　　　　　　　　　　　　　　　　　　　　　　　　　$_____

III.　　　　　　　　　　　　　　　　　　　　　　　　　$_____

A.　NET CREDIT/DEBIT TO SELLER:　($_____)　or $_____

B.　TOTAL CLOSING COSTS PAYABLE　($_____)
    BY SELLER:

AMOUNT DUE SELLER　　　　　　　　　　　　　　　$_____

## BUYER'S STATEMENT

| | | | |
|---|---|---|---|
| I. | TOTAL PURCHASE PRICE: | | $_____ |
| A. | NET CREDIT/DEBIT TO BUYER: | ($_____) | or $_____ |
| B. | TOTAL CLOSING COSTS PAYABLE BY BUYER: | ($_____) | |
| C | DEPOSIT | ($_____) | |
| | AMOUNT DUE FROM BUYER | | $_____ |

## TOTAL DISBURSEMENTS[1]

| | | |
|---|---|---|
| 1. | Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| | **TOTAL RECEIPTS:** | $_____ |
| 1. | Seller's Brokers Fees | ($_____) |
| 2. | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($_____) |
| 3. | Seller's Cure Costs | ($_____) |
| 4. | Seller's Proceeds | |
| [5.] | [Other] | ($_____) |
| | **TOTAL DISBURSEMENTS:** | |

## STIPULATIONS

1. <u>Purchase Agreement</u>. This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of _____, 2005 (the "Purchase Agreement"). Attached hereto is an individual itemized closing statement for the Property covered by the Purchase Agreement.

2. <u>Authorization to Disburse</u>. By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____
_____
_____
_____

---

[1] Refer to Individual Property Closing Statement for Itemization.

3. <u>Counterparts</u>. This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

The undersigned parties acknowledge and agree to the this Closing Statement as of this _____ day of _____, 2005, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

By: _____
Name: _____
Title: Vice President

**BUYER:**

**WAL-MART STORES, INC.,** a Delaware corporation

By: _____
Name: _____
Title: _____

## INDIVIDUAL PROPERTY CLOSING STATEMENT

**BUYER:** Wal-Mart Stores, Inc., a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of this Agreement

**SELLER:** Winn-Dixie Stores, Inc., a Florida corporation

**ESCROW AGENT and SETTLEMENT AGENT:** _____

**Property:** Store No. 206

**CLOSING DATE:** _____, 2005

### SELLER'S STATEMENT

ALLOCATED BASE PURCHASE PRICE:                                $_____

Leasehold and Improvements:                                    $_____

TOTAL PURCHASE PRICE:

**Less Adjustments (Debit):**

Seller's Prorated Share of Taxes and Other Charges Payable Under Lease (1)    $_____

Buyer's Prorated Share of Rents Paid in Advance                                $_____

**Total Debit Adjustments:**                                                   $_____

**Plus Adjustments (Credit):**                                                 $_____

Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Lease (3)    $_____

Environmental Assessment Costs Paid by Seller                                  $_____

[Other]                                                                        $_____

**Total Credit Adjustments:**

**NET DEBIT/CREDIT TO SELLER**

**Less Closing Costs Payable by Seller:**

Seller's Attorneys' Fees & Costs $_____

Seller's Brokerage Fees $_____

Cure Costs $_____

**Total Seller's Closing Costs:**

**AMOUNT DUE TO SELLER** $_____

## BUYER'S STATEMENT

**ALLOCATED PURCHASE PRICE:** $_____

**Less Adjustments (Credit):**

Allocated Amount of Deposit $_____

Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Lease (1) $_____

[Other] $_____

**Total Debit Adjustments:** $_____

**Plus Adjustments (Debit):**
Seller's Prorated Share of Rents and Other Charges Paid in Advance Under Lease (3) $_____

Environmental Assessment Costs Paid by Seller $_____

[Other] $_____

**Total Credit Adjustments:** $_____

**NET DEBIT/CREDIT TO BUYER**

**Less Closing Costs Payable by Buyer:**

Buyer's Attorneys' Fees & Costs $_____

Title Insurance Premiums(4) $_____

| | |
|---|---|
| Title Examination Fees | $_____ |
| Transfer/Documentary Taxes | $_____ |
| Buyer's Brokerage Fees | $_____ |
| Closing Escrow Fees | $_____ |
| **Total Buyer's Closing Costs:** | $_____ |
| **AMOUNT DUE FROM BUYER** | $_____ |
| **ALLOCATED AMOUNT OF BASE DEPOSIT** | $_____ |
| **TOTAL AMOUNT DUE AT CLOSING** | |

## SCHEDULE OF DISBURSEMENTS

| | | |
|---|---|---|
| 1. | Allocated Amount of Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |
| **TOTAL RECEIPTS:** | | $_____ |
| 1. | The Blackstone Group L.P. (Seller's Brokers Fees) | ($_____) |
| 2. | The Food Partners, LLC (Seller's Brokers Fees) | ($_____) |
| 3. | DJM Asset Management, LLC (Seller's Brokers Fees) | ($_____) |
| 4. | Title Insurance Company Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($_____) |
| 5. | _____ Transfer/Documentary Taxes | |
| 6. | [Name of Inventory Service] (Inventory Service Fees) | ($_____) |
| 7. | _____ (Lease Cure Costs, if any) | ($_____) |

9.    Seller                                                        ($_____)
     (Seller's Proceeds)

[10.]  [Other]                                                 ($_____)

**TOTAL DISBURSEMENTS:**

**Notes:**

(1)     <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>. Prorations are based on (i) estimate of 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease; and (ii) estimate of 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with Lease. Buyer will be responsible for the payment of such charges for 2005 and subsequent years.

**Real Estate Taxes**

<u>Store #206</u>
- 2005 Real Estate Taxes            $
- Per Diem Tax Amount             $
- Seller's Share of 2005 Taxes
   (1/1/05 - __/__/05) (_____ days)   $ _____

**Total Real Estate Taxes:**

**Personal Property Taxes**

<u>Store #206</u>
- 2005 Personal Property Taxes     $
- Per Diem Tax Amount             $
- Seller's Share of 2005 Taxes
   (1/1/05 - __/__/05) (_____ days)   $ _____

**Total Personal Property Taxes:**

**CAM Charges**

<u>Store #206</u>
- 2005 CAM Charges               $
- Per Diem Amount                $
- Seller's Share of 2005 CAM Charges
   (__/__/__ - __/__/05) (_____ days)   $ _____

**Total CAM Charges:**

**Insurance**

<u>Store #206</u>
- 2005 Insurance                  $
- Per Diem Amount                $
- Seller's Share of 2005 Insurance
   (__/__/__ - __/__/05) (_____ days)   $ _____

**Total Insurance:**

        **Total Amount of Seller's Prorated Share of 2005 Prorations:** _____

<u>Store #206</u>
- Total _____, 2005 rent paid:   $
- Per diem rent:   $
- Buyer's prorated share
    (__/__/__ - __/__/05) (____ days)   $ _____

**Total Amount of Seller's Prorated Share of _____ Prorations:**

(2) _____, <u>2005 Prorations - Amounts Previously Paid by Seller</u>. Prorations are based on _____, 2005 rents, common area maintenance assessments and other charges previously paid by Seller in accordance with Lease. Buyer will be responsible for the payment of such charges that become due and payable for _____, 2005 and thereafter. Prorations are as follows:

**Rent**

<u>Store #206</u>
- Total _____, 2005 rent paid:   $
- Per diem rent:   $
- Buyer's prorated share
    (__/__/__ - __/__/05) (____ days)   $ _____
- Per diem rent:   $
- Buyer's prorated share
    (__/__/__ - __/__/05) (____ days)   $ _____

**Total Amount of Buyer's Prorated Share of _____ Prorations:**

(4) <u>Title Premiums and Expenses</u>. Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

<u>Store #206</u>
- Title Search Fees and Costs   $     -
- Title Premium   $ _____  -

**Total Amount of Title Fees and Expenses:**

(5) Utility Deposits and Charges. All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof. The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor. Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6) Adjustments. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

(9) Capitalized Terms. Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

EXHIBIT D

To Asset Purchase Agreement

**Permitted Encumbrances**

1. Taxes and assessments of any taxing authority that are attributable to any period following Closing.

2. All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3. Rights of Landlord under the Lease, including the rights of the Landlord's mortgagee.

4. All matters set forth as exceptions in the Initial Title Report or that certain site plan, dated May 13, 1988, prepared by Vander Ploeg & Associates, Inc., other than Monetary Liens.

5. All other matters set forth as exceptions in those Title Reports other than the Initial Title Report, other than Monetary Liens.

EXHIBIT E

FORM OF SALE ORDER

UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ORDER APPROVING DEBTORS' (A) SALE OF ASSETS FREE AND CLEAR OF LIENS, (B) ASSUMPTION AND ASSIGNMENT OF LEASE AND (C) RELATED RELIEF**

This matter came before the Court on August 26, 2005 on the motion, dated August 1, 2005, of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C.

§§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 (a) authorizing the Debtors to sell certain leasehold interests, including the assets described in the asset purchase agreement attached as Exhibit A (the "Purchase Agreement") between Winn-Dixie Stores, Inc. and Wal-Mart Stores, Inc. (the "Purchaser"), free and clear of liens, claims, interests and encumbrances, (b) determining that any such sale is exempt from any stamp, transfer, recording or similar tax, (c) authorizing the Debtors to assume and assign various unexpired leases, including the lease identified in the Purchase Agreement (the "Lease") in connection with such sale, (d) fixing cure amounts and (e) granting related relief (the "Motion"). The Court held a hearing on the Motion on August 26, 2005 to approve the Sale (the "Sale Hearing"). **Alternatives, depending on the circumstance:** [The Court has reviewed the Motion and heard the representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:] or [The Court has reviewed the Motion, [considered the evidence] and heard argument of counsel. After due deliberation and good and sufficient cause existing, the Court makes the following findings of fact:]

    A.    This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

    B.    The Debtors solicited the highest or otherwise best offer for the assets described in the Purchase Agreement (the "Assets"), in accordance with bidding procedures (the "Bidding Procedures") approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures Order"). Competing bids were received for the Assets, and the Debtors conducted an auction for the Assets on August 9, 2005 (the "Auction"). At the Auction,

the Purchaser submitted the final bid of _____ representing the highest or otherwise best offer received for the Assets.

C.  The Debtors have provided interested parties (including all parties asserting claims or interests in the Assets, if any) with proper notice of the Motion, the Sale Hearing, the Auction, the assumption and assignment of the Lease, and the fixing of any cure amount, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order entered by the Court in these cases and the Bidding Procedures Order. Such notice was good and sufficient, appropriate under the circumstances and no other or further notice of the Motion, the Sale Hearing, the Auction, the assumption and assignment of the Lease, or the fixing of any cure amount is or shall be required. A reasonable opportunity to object or be heard on the relief requested was afforded to all parties in interest.

D.  The Debtors marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Bidding Procedures, the Bankruptcy Code and all other applicable Orders entered in these cases. The bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets. In their sound business judgment, the Debtors determined that the purchase price provided in the Purchase Agreement was the highest or otherwise best offer for the Assets.

E.  Following the Auction, in accordance with the Bidding Procedures, the Debtors provided notice of the Successful Bid (as defined in the Bidding Procedures), the Purchase Agreement, and the proposed terms of this Order to (i) the Committee's Professionals, (ii) the DIP Lender Agent Representatives, (iii) the U.S. Trustee, (iv) all applicable taxing

authorities and other governmental agencies, (v) all non-debtor parties to the Lease and (vi) all other relevant parties. Such notice was good and sufficient, appropriate under the circumstances and no other or further notice of the Successful Bid, the Purchase Agreement, or this Order is or shall be required. A reasonable opportunity to object or be heard on the relief requested was afforded to all parties in interest.

F. The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A, the assumption and assignment agreement attached as Exhibit F to the Purchase Agreement (the "Assumption and Assignment Agreement"), and all related documents, and the sale of the Assets (the "Sale") and the assumption and assignment of the Lease, as described in the Purchase Agreement, has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

G. The Debtors have good business reasons to sell the Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

H. Neither the Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

I. The Debtors and the Purchaser proposed, negotiated and entered into the Purchase Agreement, without collusion, in good faith and at arms'-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

J. The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the benefits and protections afforded by that section.

K. The consideration the Purchaser is providing to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

L. The Debtors' sale of the Assets and the assumption and assignment of the Lease will facilitate the formulation and confirmation of a plan of reorganization. For this reason, the Debtors' sale of the Assets and the assumption and assignment of the Lease constitute transfers to which 11 U.S.C. § 1146(c) applies.

M. The Debtors' transfer of the Assets to the Purchaser pursuant to the Purchase Agreement, any related bills of sale or other applicable transfer agreements, including the Assumption and Assignment Agreement, will be a legal, valid, and effective transfer of the Assets. The Debtors' transfer of the Assets to the Purchaser vests the Purchaser with good and valid title in and to the Assets free and clear of any and all liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, judgments or other interests of any kind or nature (collectively, the "Claims and/or Interests"), with the exception of the Permitted Encumbrances,[2] if any, as defined in the Purchase Agreement. Any non-assumed Claims and/or Interests will attach to the proceeds of the Sale with the same validity, enforceability and priority they now have as against the Assets, subject to any rights, claims, defenses and objections of the Debtors, Wachovia Bank National Association, as Administrative Agent and Collateral Agent for itself ("Agent") and the other financial institutions from time to time parties to the Credit Agreement

---

[2] All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion or the Purchase Agreement, as applicable.

dated as of February 23, 2005, as may be amended or modified (collectively, "Lenders" and together with Agent, collectively, the "DIP Lender") and all other interested parties with respect to such Claims and/or Interests.

N. The Debtors may sell and transfer the Assets in accordance with the terms and conditions of the Purchase Agreement free and clear of all Claims and/or Interests (except the Permitted Encumbrances) because any entity with any Claims and/or Interests in the Assets to be transferred (i) has consented to the Sale (including the assumption and assignment of the Lease) or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claims and/or Interests; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Holders of Claims and/or Interests, if any, who did not object, or who withdrew their objections to the Motion are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2).

O. The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).