P.  The Debtors' assumption and assignment of the Lease in connection with the Sale is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

Q.  The Debtors have provided the landlord under the Lease with adequate assurance that they will promptly cure any defaults under the Lease pursuant to 11 U.S.C. § 365(b)(1).

R.  The Court will determine at a later hearing whether any amounts are due by the Debtors under the Lease (if any, the "Cure Amount"). The Debtors will pay the Cure Amount, if any, upon entry of a final order of the Court establishing any such Cure Amount. Upon payment of the Cure Amount, all defaults, if any, under the Lease will be deemed cured.

S.  The Purchaser has provided the landlord under the Lease with adequate assurance of its future performance under the Lease, and the assumption, assignment and sale of the Lease satisfy the requirements of 11 U.S.C. §§ 363, 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B), as applicable.

T.  No default of the type described in 11 U.S.C. § 365(b)(2)(D) exists under the Lease.

U.  Except as expressly set forth in the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Assets or the Lease by virtue of the transfer of the Assets and the assumption and assignment of the Lease to the Purchaser. The Purchaser will not be deemed, as a result of any action taken in connection with the purchase of the Assets or the assumption and assignment of the Lease, to (i) be a successor to the Debtors (other than with respect to any obligations arising under the Lease from and after the

Closing); or (ii) have, *de facto* or otherwise, merged with or into the Debtors. The Purchaser is not acquiring or assuming any liability, warranty, or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement.

V.  The Court's approval of the Purchase Agreement and the Assumption and Assignment Agreement is in the best interests of the Debtors, their estates and their creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted to the extent set forth in this Order.

2. All objections to the entry of this order or to the relief granted and requested in the Motion with respect to the Purchase Agreement, the Lease, the sale of the Assets to the Purchaser or any related matter addressed in this Order, including the objection, dated July 20, 2005, filed on behalf of the Broward County Tax Collector, that have not been withdrawn, waived or settled at or before the Sale Hearing, are denied and overruled on the merits.

3. The Purchase Agreement and the Assignment and Assumption Agreement are each approved in all respects. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized (subject to applicable Closing conditions set forth in the Purchase Agreement), to consummate the Sale, including transferring and conveying the Assets to the Purchaser, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

4. The Debtors are authorized, in accordance with 11 U.S.C. §§ 105(a), 363 and 365, to assume and assign the Lease to the Purchaser.

5. The Debtors and the Purchaser have satisfied the requirements of 11 U.S.C. §§ 365(b)(1), (3) and 365(f)(2), including the provision of adequate assurance of future performance. In particular, while the Court does not expressly decide the issue of whether the real property that is the subject of the Lease (the "Property") is part of a "shopping center" within the meaning of 11 U.S.C. § 365, all of the so-called "shopping center provisions" of the Bankruptcy Code with respect to the assumption of a shopping center lease have been satisfied in connection with the assumption and assignment of the Lease and the Purchaser's use of the premises in a manner consistent with its typical retail operations (including the operation of a pharmacy), as described in the Purchase Agreement.

6. The Lease will be assumed and assigned to the Purchaser, in accordance with its terms. The assigned Lease will remain in full force and effect notwithstanding any provision therein to the contrary (including provisions of the type described in 11 U.S.C. §§ 365(b)(2), (e)(1) and (f)(1)) which prohibit, restrict or condition such assignment or transfer). The DIP Lender and all non-debtor parties to the Lease are deemed to have consented to the assignment, if consent was not otherwise obtained in accordance with the Purchase Agreement.

7. Any rights contained in the Lease which purport to be personal only to the Debtors or to be exercisable only by the Debtors constitute unenforceable restrictions on assignment and may be freely exercised by the Purchaser, following Closing, to their full extent.

8. Notwithstanding any provision in any lease, contract, reciprocal easement agreement ("REA") or applicable law, the Purchaser is authorized to

allow the Property to remain dark for up to eighteen (18) months after Closing, notwithstanding any subsequent assignment or disposition of the Property in accordance with the terms of the Lease (unless the Lease or such contract, REA or local law would allow the Property to remain dark for a period in excess of eighteen (18) months following Closing, in which case such longer period shall apply). The fact that the Property remains dark for up to eighteen (18) months after Closing shall not result in the termination or forfeiture of any restrictions encumbering other parcels which benefit the Property.

9. In connection with the opening and operating of a retail store at the Property, the Purchaser is authorized to perform alterations and remodeling to the extent necessary to conduct its typical retail operations and to replace and modify existing signage, notwithstanding any provision to the contrary in the Lease or any related document, including any provision requiring the consent of any non-Debtor party for such work.

10. Provisions contained in the Lease affecting the Property which are or could have the effect of being provisions which restrict "going dark," alteration and recapture provisions contained in the Lease, provisions requiring consent or otherwise restricting the rights provided for herein (including "go-dark," alteration and remodeling rights), or clauses which impose a fee or a penalty or a profit sharing upon assignment or limit or condition extension or renewal options, clauses which seek to increase the rent or impose a penalty or to modify or terminate the Lease or terminate or otherwise impair any exclusive rights of the tenant under the Lease as a result of going dark or upon assignment, provisions which directly or indirectly limit or condition or

prohibit assignment, continuous operating covenants, covenants that any user of the Debtors' premises operate under the name of "Winn-Dixie," and/or operate with a use similar to a "Winn-Dixie," and similar provisions contained in any other documents with respect to the Property shall not restrict, limit, or prohibit the sale or assumption and assignment of the Property to the Purchaser and such clauses are hereby deemed and found to be unenforceable anti-assignment clauses within the meaning of 11 U.S.C. § 365(f).

11.  Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Purchase Agreement and the Assignment and Assumption Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement. The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Lease to the Purchaser.

12.  Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Purchase Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

13.  The Debtors will transfer the Assets to the Purchaser upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f) (except for the Permitted Encumbrances). The only known Claims and/or

Interests in the Assets are those of the landlord with respect to the Lease, the senior liens and superpriority administrative claims of the DIP Lender and any liens of the Broward County Tax Collector for unpaid taxes. The Claims and/or Interests of the landlord will be satisfied upon Closing by the Debtors' payment of the Cure Amount, if any, and the Debtors' and the Purchasers' demonstration of adequate assurance of future performance under 11 U.S.C. § 365. The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender, and any other liens, claims or interests with respect to the Assets, will attach to the proceeds of the Sale, in the case of the DIP Lender in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order). The liens, if any, of the Broward County Tax Collector on the Debtors' interest in the Property shall attach to the proceeds of the sale of the Lease to the Purchaser, and the claims, if any, related to such liens shall be treated and resolved in these cases.

14. The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

15. The Debtors' transfer of the Assets pursuant to the terms of the Purchase Agreement is a transfer subject to 11 U.S.C. § 1146(c). Accordingly, the making, delivery, filing or recording of any deeds, assignments or other transfer documents in connection with the Sale (the "Transfer Instruments"), will not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax (including without limitation, any transfer or recordation tax applicable to deeds and/or security interests or any recording fee applicable to this Order or any memorandum or instrument

of transfer regarding the Lease). All filing and recording officers are directed to accept for filing or recording, and to file or record in the appropriate public records a certified copy of this Order along with any Transfer Instruments immediately upon presentation and without payment of any such taxes or fees.

16. The Purchaser provided the Debtors with reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia, without collusion. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

17. All defaults, claims or other obligations of the Debtors arising or accruing under the Lease, if any, prior to assumption (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) will be cured by the Debtors by paying the Cure Amount, if any. No other or further monetary amounts or obligations are due or existing under the Lease or any other Assigned Agreement by the Debtors, whether pursuant to 11 U.S.C. § 365(b)(1) or otherwise.

18. An objection regarding a "cure issue" to the assumption and assignment of the Lease timely made and filed with the Court prior to the expiration of the applicable objection deadline shall not affect the assumption and assignment of the Lease. The Debtors will hold the Purchaser harmless from any failure by the Debtors to pay the applicable Cure Amount.

19. The failure of any party to: (a) allege in these proceedings any pre-assumption and assignment default under the Lease, other than the Cure Amount; (b) identify any amendment, modification, sublease or other agreement relating to or

affecting the Property, other than those listed on Exhibit A-3 to the Purchase Agreement, (c) assert any material waiver, failure to act, or act or statement contrary to that presented in the Motion by the Debtors or (d) assert any objection or defense to the entry of this Order, shall forever bar and estop said party, its heirs, successors and assigns, and any predecessor in interest, of itself and anyone claiming by, through or under it or them, from asserting any claims or attempting to enforce any rights based thereon in any subsequent cases, proceedings, or actions against the Debtors or the Purchaser (or parties claiming through the Purchaser), in law or in equity in this or before any other court or tribunal, and any such claim(s) shall be and are terminated, exonerated, barred and adjudicated against such person. No party shall be entitled to enforce against the Purchaser any pre-closing document, instrument or agreement with respect to the Property other than a document, instrument or agreement listed on Exhibit A-3 to the Purchase Agreement, and all parties shall be enjoined from attempting to enforce any such document, instrument or agreement against Purchaser or any of its affiliates, related parties, successors or assigns.

20. Pursuant to 11 U.S.C. § 365(k), upon the assignment of the Lease to the Purchaser, (a) the Debtors and their estates are relieved from any and all liability for any breach of the Lease occurring after assignment to the Purchaser, and (b) subject to the terms of this Order, the Purchaser is responsible for any and all claims and obligations under the Lease occurring or arising after the assignment.

21. Subject to the terms of this Order, the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser assumes all rights and obligations of the Debtors under the Lease on and after the Closing Date.

22. All non-Debtor parties to the Lease are forever enjoined and estopped from contesting the Cure Amounts (except as may be permitted by the Court) and from asserting any default against the Purchaser which existed prior to the Closing Date.

23. Upon the Debtors' assignment of the Lease to the Purchaser, no default will exist under the Lease. Upon entry of this Order and the assumption and assignment of the Lease, the Purchaser is deemed to be in compliance with all terms and provisions of the Lease.

24. Subject to the terms and conditions of this Order, all entities that are presently, or upon Closing may be, in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors. Prior to or upon the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims and/or Interests in the Assets (except for the Permitted Encumbrances), if any. In the event any creditor fails to release its Claims and/or Interests in the Assets upon Closing, the Debtors are authorized to take any action necessary to do so including, to execute and file any statements, instruments, releases and other documents on such creditor's behalf. The Purchaser is also authorized to file, register or otherwise record a certified copy of this Order upon Closing. Once this Order is so filed, registered or otherwise recorded, the Order constitutes conclusive evidence of the release of all Claims and/or Interests against the Assets as of the Closing (except for the Permitted Encumbrances).

25. The Purchaser acted in good faith, as that term is used in 11 U.S.C. § 363(m), in purchasing the Assets and Lease under the Purchase Agreement. For

that reason, any reversal or modification of this Order on appeal will not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

26. The Debtors' transfer of the Assets to the Purchaser will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

27. Other than the Permitted Encumbrances and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets, including, the Lease. The Debtors' transfer of the Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state or territory.

28. Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets and the Lease and a bill of sale transferring good and marketable title in the Assets to Purchaser. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

29. This Order is effective as a determination that upon Closing any and all Claims and/or Interests (except for the Permitted Encumbrances), if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

30. This Order is binding upon all entities who may be required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Assets.

31. The landlord under the Lease is directed to sign any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for purposes of obtaining any permits, approvals or other necessary documentation and/or action required for the alterations and remodeling permitted under this Order.

32. This Court retains exclusive jurisdiction to (a) enforce and implement the Purchase Agreement, the Assumption and Assignment Agreement, and any other agreements and instruments executed in connection with the Purchase Agreement, (b) compel delivery of possession of the Assets to Purchaser, (c) resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement or the Assumption and Assignment Agreement, and (d) interpret, implement and enforce the provisions of this Order.

33. The terms and provisions of the Purchase Agreement, the Assumption and Assignment Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties,

notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

34. Except with respect to Permitted Encumbrances, all persons who hold Claims and/or Interests against the Debtors are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

35. After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Claims and/or Interests or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

36. To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the Purchase Agreement will control.

37.     Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f) of the Federal Rules of Bankruptcy Procedure.

38.     Notwithstanding Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d), this Order will take effect immediately upon entry.

Dated this _____ day of August, 2005 in Jacksonville, Florida.


                                        _____
                                        Jerry A. Funk
                                        United States Bankruptcy Judge


Cynthia C. Jackson is directed to serve
a copy of this Order on counsel for the
Purchaser and all parties who received
copies of the Motion.

EXHIBIT F
To Asset Purchase Agreement

Form of
Assignment

ASSIGNMENT AND ASSUMPTION OF LEASE
[Store #206]

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (this "Assignment") is made as of _____, 200\_\_\_ (the "Effective Date"), by and between WINN-DIXIE STORES, INC. a Florida corporation (hereinafter referred to as "Assignor"), and WAL-MART STORES, INC., a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of the Agreement (hereinafter defined) (hereinafter referred to as "Assignee");

R E C I T A L S:

A. Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached Exhibit A (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective August 2, 2005 by and among Assignor, as seller, Assignee, as buyer, as amended from time to time (the "Agreement").

B. As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the lease, together with any and all amendments thereto, as described on the attached Exhibit A (the "Lease"), and all of Assignor's right, title and interest, as licensee, in and to the Florida quota liquor license, if any (the "License"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease after the Effective Date, all subject to and in accordance with the terms of the Lease, the Agreement and this Assignment;

NOW, THEREFORE, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1. **EFFECTIVE DATE**. This Assignment shall be effective as of the Effective Date.

2. ASSIGNMENT.

   (a) Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

(b) Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as licensee in and to the License and all the rights, benefits and privileges of the licensee thereunder.

3. ASSUMPTION; ACCEPTANCE OF PREMISES.

(a) Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b) Assignee hereby accepts the aforesaid assignment of the License and assumes and agrees to pay and perform all liabilities and obligations of the licensee that accrue under the License from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the License on or after the Effective Date.

4. **NOTICES**. All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

If to Assignor:   Winn-Dixie Stores, Inc.; Re: Store #206
                  5050 Edgewood Court
                  Jacksonville, FL 32254-3699
                  Attn: Chief Financial Officer
                  Telefax No.: 904/783-5646

With a copy to:   Winn-Dixie Stores, Inc.
                  5050 Edgewood Court
                  Jacksonville, FL 32254-3699
                  Attn: Office of General Counsel
                  Telefax No.: 904/783-5641

or to such other address or telefax number as Assignor may direct from time to time.

| | |
|---|---|
| If to Assignee: | Wal-Mart Stores, Inc. 2001 S.E. Tenth Street<br>Bentonville, Arkansas 72712<br>Attn: Karen Roberts<br>Telefax No.: 479-277-5991<br>e-mail: *karen.roberts@walmartlegal.com* |
| With a copy to: | Willkie Farr & Gallagher LLP 787 Seventh Avenue<br>New York, New York 10019<br>Attn: John C. Longmire, Esq.<br>Telefax No.: 212-728-8111<br>e-mail: *jlongmire@willkie.com* |

or to such other address or Telefax number as Assignee may direct from time to time.

5. **NOTICE OF ASSIGNMENT.** On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease.

6. **BINDING EFFECT.** This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7. **FURTHER ASSURANCES.** Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder.

8. **NO BROKERS.** The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B. Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment. Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises. Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

9. **WAIVER OF JURY TRIAL**. Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the License makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease or the License undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the License.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered
in the presence of:

ASSIGNOR:

WINN-DIXIE STORES, INC., a Florida corporation

Name:_____

Name:_____

By:_____
Name:
Title:

[CORPORATE SEAL]

STATE OF FLORIDA    )
                    )
COUNTY OF DUVAL     )

The foregoing instrument was acknowledged before me by _____ of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation, who is personally known to me and who did not take an oath.

Given under my hand and official seal this \_\_ day of _____, 2005.

_____
Notary Public

My commission expires:_____

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

Name:_____
Name:_____

ASSIGNEE:

**WAL-MART STORES, INC.**, a Delaware corporation

By:_____
Name:
Title:
[CORPORATE SEAL]

STATE OF ARKANSAS )
                  )
COUNTY OF BENTON  )

The foregoing instrument was acknowledged before me by _____, _____ of WAL-MART STORES, INC., a Delaware corporation, on behalf of the corporation, who is personally known to me and who did not take an oath.

Given under my hand and official seal this ___ day of _____, 2005.

_____
Notary Public

My commission expires:_____

Exhibit A

Description of Premises and Lease

WINN-DIXIE STORE # 206

Coral Springs, Florida

Lease: Lease dated February 18, 1988 between National RE/Sources Cypress Run, L.P. (successor in interest to Florida National Properties, Inc.), as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

as evidenced by Memorandum of Lease dated May 9, 1988, recorded in Book 15632, Page 0100, of the public records of Broward County, Florida, amended and restated by Amended and Restated Short Form Lease, dated November 15, 1999, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc., recorded in Book 30139, Page 1306, further amended and restated by Second Amended and Restated Short Form Lease, dated August 20, 2001, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Amendments Assignment of Lease dated June 20, 1988, from Florida National Properties, Inc. to Cypress Run Square, Inc. recorded in Book 15680, Page 0151, of the public records of Broward County, Florida

Supplemental Lease Agreement, dated August 22, 1989, between Cypress Run Square, Inc. and Winn-Dixie Stores, Inc.

Letter Agreement, dated September 1, 1992, between Cypress Run Square, Inc. and Winn-Dixie Stores, Inc.

First Amendment to Lease, dated November 15, 1999 between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Second Amendment to Lease, dated February 2, 2001, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Third Amendment to Lease, dated August 20, 2001, Amended and Restated Short Form Lease, dated November 15, 1999, between National RE/Sources Cypress Run, L.P. and Winn-Dixie Stores, Inc.

Termination of Declaration of Restrictions and Protective Covenants for Cypress Run Square, dated March 31, 2003, by Sansone-Scenic & Republic, LLC

Premises: That certain store building and related improvements located at 10635 W. Atlantic Boulevard, Coral Springs, Broward County, Florida