**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**NOTICE OF HEARING AND FILING**

1. Pursuant to the Amended Motion for Order (I) to Sell Leasehold Interests in Targeted Stores Free and Clear of Liens, Claims and Interest and Exempt from Taxes, (II) to Assume and Assign Leases, (III) to Reject Targeted Leases the Debtors are unable to Sell, and (IV) Granting Related Relief, filed with the Court on August 1, 2005 (the "Motion") (Docket No. 2707), Winn-Dixie, Inc. and its subsidiaries and affiliates as debtors and debtors-in-possession (collectively, the "Debtors"), provide notice of their intent to enter into the attached termination agreement with A.A.C., Inc. for the Debtors' lease of store number 158 located in Brandon, Mississippi for $60,000.00 (the "Sale").

**Notice of Hearing**

2. A hearing to approve the Sale is scheduled for **September 22, 2005 at 1:00 p.m. E.T.** before the Honorable Jerry A. Funk, United States Bankruptcy Judge for the Middle District of Florida, 300 North Hogan Street, Courtroom 4D, Jacksonville, Florida 32202.

Dated: September 14, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By   *s/ D. J. Baker*  <br>     D. J. Baker <br>     Sally McDonald Henry <br>     Rosalie Gray | By   *s/ Cynthia C. Jackson*  <br>     Stephen D. Busey <br>     James H. Post <br>     Cynthia C. Jackson (FBN 498882) |
| Four Times Square <br> New York, New York 10036 <br> (212) 735-3000 <br> (917) 777-2150 (facsimile) <br> djbaker@skadden.com | 225 Water Street, Suite 1800 <br> Jacksonville, Florida  32202 <br> (904) 359-7700 <br> (904) 359-7708 (facsimile) <br> cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

00507639.DOC

# LEASE TERMINATION AGREEMENT

**THIS LEASE TERMINATION AGREEMENT** (the "Agreement") made as of the _____ day of September, 2005, by and between **A.A.C., Inc.** ("Landlord"), and **Winn-Dixie Stores, Inc.**, a Florida corporation ("Tenant").

## Recitals

A.   Landlord and Tenant entered into a lease dated August 26, 1975 (as the same may have been amended, assigned, supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 158, located in Hinesville, Georgia, more fully described in the Lease (the "Premises").

B.   On February 21, 2005, Tenant and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C.   On August 1, 2005, the Debtors filed an Amended Motion for an order authorizing the Debtors to sell leasehold interests free and clear of liens and exempt from stamp or similar tax, assume and assign leases and reject leases the Debtors are unable to sell (Docket No. 2707) (the "Motion").

D.   The Debtors were unable to sell the Lease. The Lease expires by its own terms on June 6, 2006. The Landlord has expressed an interest in terminating the Lease early and purchasing the furniture, fixtures and equipment at the Leased Premises (the "FF&E") other than the equipment listed on the attached Schedule 1.

E.   The parties desire to terminate the Lease effective August 31, 2005 (the "Termination Date").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.   **Termination Date.**  Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will end and terminate. After the Termination Date, neither party will have any further rights or obligations under the Lease.

2.   **Surrender of Premises**.  Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in its "As Is" condition. Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises. Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises.

This provision will survive the termination of the Lease. Notwithstanding anything to the contrary in the Lease, the Tenant shall not have the right and shall not remove, or allow the removal, whether by sale or otherwise, of any items of furniture, fixtures, trade fixtures or equipment located at the Premises which are owned by Tenant and used in connection with the operation of Tenant's business at the Premises (collectively, the "FF&E"). Tenant acknowledges and agrees that in consideration of the Termination Fee, Tenant will convey the FF&E to Landlord on the Termination Date by bill of sale (without warranty or representations as to merchantability or fitness for a particular purpose) free and clear of any and all liens or other encumbrances to the extent permitted under the Bankruptcy Code.

3. **Purchase of FF&E.** The Landlord will purchase the FF&E described on the attached invoice for $60,000.00 (the "Purchase Price") plus applicable sales tax. On or before the Termination Date, the Landlord will pay the Tenant $63,600.00, by wire transfer to the account of the Tenant, representing the Purchase Price, plus applicable sales taxes.

4. **Representations.** Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement. Tenant has not assigned, transferred or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

5. **Release.** As of the Termination Date, except as to the obligations of Tenant pursuant to this Agreement, Landlord waives, releases and discharges Tenant, its successors and assigns, its estate, affiliates and the Debtors from all manner of actions or claims in law or in equity that Landlord ever had, currently has, or may have against Tenant or its successors and assigns relating to or arising out of the Lease, this Agreement or the Premises, including lease rejection claims under Section 502 of the Bankruptcy Code, administrative expense claims under Section 503 of the Bankruptcy Code or any other claims relating to the Tenant's use and occupancy of the Premises. To the extent Landlord has filed, or files, a proof claim with respect to the Lease and/or Premises, Landlord consents to the disallowance and expungement of such claim, with prejudice.

6. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

7. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

8. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

2

9. **Bankruptcy Court Approval.**  The Tenant's obligations are subject to approval by the Bankruptcy Court, and Landlord and Tenant agree to cooperate in obtaining such approval.

10. **Discharge of Memorandum.**  If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

11. **Jurisdiction.**  The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

12. **Governing Law**.  This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

**IN WITNESS WHEREOF,** the Landlord and Tenant have executed this Agreement as of the day and year first above written.

| **Tenant:** | **Landlord:** |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Its _____ | Its _____ |

3

**Lease Termination Agreement for store number 42**
AAC Lease Termination Agt (00508059) (2).DOC