**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

**DEBTORS' OBJECTION TO REQUEST FOR PAYMENT OF**
**ADMINISTRATIVE EXPENSE AND COUNTERCLAIM**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), object to the Request for Payment of Administrative Expense filed by Computer Leasing Company of Michigan, Inc. ("CLC"), (Docket Number 3169) and in support state:

1.  On August 24, 2005, CLC filed in this Court its Request for Payment of Administrative Expense ("Request") (Doc. No. 3169). Contemporaneous with the Request, CLC filed its Motion to Compel Debtors to Assume or Reject Lease of Personal Property ("Motion to Compel") (Doc. No. 3168). The Debtors have also filed an objection to CLC's Motion to Compel.

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2. CLC's Request is scheduled for hearing September 22, 2005.

3. The Debtors object to CLC's request for payment of an administrative expense and in response make the counterclaim below with three demands for relief.

4. Pursuant to Federal Rule of Bankruptcy Procedure 3007, "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding."

5. The relief sought by the Debtors in this objection and counterclaim is (i) the denial of the motion, (ii) the avoidance and recovery of fraudulent post-petition transfers pursuant to 11 U.S.C. §§544(b), 550 and §726.105(1)(b), Florida Statutes, and (iii) the recoupment of damages resulting from CLC's aiding and abetting a breach of fiduciary duty.

6. This Court has jurisdiction over this subject matter pursuant to 28 U.S.C. §§ 157 and 1334(b).

7. This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §157(b)(2)(C), (E), (H) and (O).

8. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") The Debtors' cases are being jointly administered for procedural purposes only.

9. Prior to the Petition Date, Computer Leasing Company ("CLC") and the Debtors entered into a master lease agreement dated as of April 22, 1982 (the "Master Lease"), for the lease of information technology equipment and related peripheral equipment. The Debtors leased equipment under the Master Lease from CLC pursuant to separate equipment schedules. On November 1, 2003, the parties executed an amendment to the original lease. (the April 22, 1982 lease and the November 1, 2003 amendment are collectively referred to as the "Master Lease").

10. The Debtors lease over 38,000 individual pieces of equipment from CLC pursuant to approximately 6,000 equipment schedules, which date back to 1996 (the "Equipment"). The Equipment includes printers, servers, desktop PC's, monitors, laptops, cash registers and other point of sale equipment.

11. Neither the Master Lease nor the separate equipment schedules entitle the Debtors to purchase the equipment at its fair market value at the expiration of the original lease period, which is a standard term for such equipment leases. The Debtors continue to use, and until recently, pay for, the equipment now under lease by the Debtors. Most of the equipment is now beyond the original lease period, is aging and is of nominal value.

12. The total cost of all the Equipment used by the Debtors, calculated as of the time the Equipment was purchased by CLC, is approximately $64.3 million. The total of the monthly rental payments made by Debtors to CLC for that Equipment through July 31, 2005 is approximately *$93 million.*

13. CLC's monthly lease bill to the Debtors on August 1, 2005 was $1,227,787. Of this amount, CLC requested the Debtors to pay $231,859 to CLC bank lenders, and pay the remaining $1,000,000 *directly to CLC*.

14. Although CLC's monthly lease statement is more than $1.2 million, the monthly rental *value* of the Equipment, most of which is well beyond its original lease term, is approximately $100,000.

15. Moreover, the $1.2 million monthly lease billing includes charges for equipment which the Debtors have returned to CLC and do not have.

16. As of the date of the Debtors' bankruptcy petitions, the Debtors were current on all monthly rental payments due to CLC.

17. The Debtors continued to make post-petition monthly rental payments billed by CLC through July, 2005. The amount of post-petition monthly rental payments made by the Debtors to CLC through July is $6,712,846.41. The reasonable rental value of the Equipment for that period was approximately $500,000.

18. By its Request, CLC seeks entry of an order requiring the Debtors to pay, as an administrative expense, $1,231,432.48 for the month of August, 2005. CLC's request that the Debtors be immediately ordered to pay CLC's administrative expense at this stage of the case should be denied because the Debtors dispute CLC's claim, for the reasons stated in the Counterclaim below, and believe CLC has been substantially overpaid for the Debtors' post-petition use of the Equipment.

19. The timing of payment of an administrative expense is within the discretion of the bankruptcy court. In re Colortex Industries, Inc., 19 F.3d 1371, 1384 (11th Cir. 1994). Administrative claims are required to be paid in cash on the effective date of the plan. See Bankruptcy Code § 1129(a)(9)(A). Rather than dealing with administrative claims on a piecemeal basis, the Debtors request that they be permitted to address the payment, if any, of CLC's Request through the administrative claims process set forth in a plan of reorganization to be proposed in this case in order to conserve estate resources and deal with all administrative claims at one time.

20. Requiring the Debtors to immediately pay CLC's administrative expense claim at this time would be premature, and not in the best interests of the Debtors' estates and creditors.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court deny CLC's Request.

## COUNTERCLAIM

### Count One
### Fraudulent Transfer

21. The Debtors re-allege paragraphs 1 – 20 as if fully set forth herein.

22. Pursuant to 11 U.S.C. §544(b), the Debtors may avoid any transfer of an interest of the Debtors' property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that

is allowable under §502 of this title or that is not allowable only under §502(e) of this title.

23. Section 726.105(1)(b), Florida Statutes, makes any transfer by a debtor fraudulent as to other creditors if it is made without receiving reasonably equivalent value in exchange, and the debtor is not paying its debts as they come due.

24. The post-petition transfers of $6,712,846.41 in monthly rental payments to CLC, to the extent those payments were in excess of the $500,000 fair market rental value of the Equipment, were made without the Debtors receiving reasonably equivalent value.

25. In addition, to the extent that the Debtors paid lease charges for equipment the Debtors no longer used or possessed, the Debtors received no value for such payment.

26. As a result of Debtors' chapter 11 filing, and the prohibition against paying pre-petition debt, the Debtors are not paying their debts as they come due.

27. As a result of the post petition transfers to CLC, the Debtors and the Debtors' estates have been damaged to the extent the monthly rental payments exceed the fair market rental value of the Equipment.

28. CLC was the initial transferee or the entity for whose benefit the transfers were made, and pursuant to 11 U.S.C. §550(a)(1), the Debtors are entitled to recover the transfers from CLC.

WHEREFORE, the Debtors respectfully request that the Court enter judgment against CLC (i) setting aside and avoiding the fraudulent transfers, (ii) awarding damages to the Debtors in an amount equal to the portion of the post-petition monthly rental payments that exceeded the fair market rental value of the Equipment, and (iii) declaring that any further payments by the Debtors to CLC for the Equipment would be fraudulent as to the creditors of this estate.

### Count Two
### Aiding And Abetting Breach Of Fiduciary Duty

29.   The Debtors re-allege paragraphs 1 – 22 as if fully set forth herein.

30.   The vice president of Winn-Dixie Stores, Inc., responsible for information technology (the "IT Officer") executed the original April 22, 1982 lease and schedules pursuant to the original lease knowing they were not in the best interest of the Debtors, because the lease did not entitle Debtors to buy the leased equipment at the termination of the original lease schedules at its fair market value.  Debtors therefore had (i) to continue to pay the original monthly lease rate for aging and out-of-date equipment in order to continue its use or (ii) return the equipment at a substantial cost and interruption of the business operations of the Debtors.

31.   The IT Officer breached his fiduciary duty to Debtors in doing business with CLC on these terms.

32.   CLC is a small company with nominal personnel and the Debtors are CLC's only or substantially only leasing customer.  CLC knew that the IT Officer

breached his fiduciary duties in doing business with CLC on these terms, and nevertheless substantially assisted or encouraged the IT Officer's breach of that duty.

33. As a result of the IT Officer's breach of his fiduciary duty to the Debtors, and CLC's assistance in and encouragement of that breach, the Debtors have been damaged to the extent that the monthly rental payments made by the Debtors exceed the fair market rental value of the Equipment.

WHEREFORE, the Debtors request that the Court enter judgment (i) awarding damages to the Debtors in an amount equal to the portion of the monthly rental payments made by the Debtors that exceed the fair market rental value of the Equipment, (ii) determining the Master Lease to be void and unenforceable, and (iii) granting any further relief as justice so requires.

Dated: September 15, 2005

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By  */s/ D. J. Baker*  <br>    D. J. Baker <br>    Sally McDonald Henry <br>    Rosalie Gray <br>    Jane Leamy <br><br>Four Times Square <br>New York, New York 10036 <br>(212) 735-3000 <br>(212) 735-2000 (facsimile) <br>djbaker@skadden.com <br><br>Co-Counsel for Debtors | By  */s/ Cynthia C. Jackson*  <br>    Stephen D. Busey <br>    Cynthia C. Jackson. F.B.N. 498882 <br>    Beau Bowin <br><br>225 Water Street, Suite 1800 <br>Jacksonville, Florida  32202 <br>(904) 359-7700 <br>(904) 359-7708 (facsimile) <br>cjackson@smithhulsey.com <br><br>Co-Counsel for Debtors |

00508242