### LEASE AGREEMENT

1. This Lease Agreement, made and entered into as of the 11th day of February, 1982
2. by and between Larry B. Tiffee, an individual, d/b/a Southwest Development Company Lessor
3. (hereinafter called Landlord, and Jitney-Jungle Stores of America, Inc., Lessee (hereinafter called Tenant),
   a Mississippi corporation
4. WITNESSETH:
5. That Landlord and Tenant have entered into a Lease of even date herewith demising unto Tenant a storeroom and
6. its appurtenances, located in the    College Park    Shopping Center,
7. all of which is more particularly described in said Lease, located in the City of    Meridian
8. County of  Lauderdale  , and State of  Mississippi  , for a term of  20  years beginning on
9. the first day of  March  , 19 83 , and ending on the last day of    February    2003 , upon
10. certain terms, covenants, and agreements contained in such Lease and upon covenants and agreements and in reliance upon
11. representations and warranties set forth in a Lease Agreement of even date referred to in said Lease.
12. THEREFORE, in consideration of the execution and delivery of said Lease and of One Dollar ($1.00) in hand each
13. paid to the other, the receipt and sufficiency of all of which is hereby acknowledged, the parties hereto do covenant and
14. agree as follows:
15. 1. This instrument is the Lease Agreement referred to in the above-mentioned Lease and is made for the purpose
16. of supplementing and completing such Lease and is to be deemed a material part thereof for all purposes and to the same
17. extent as if actually set forth therein. Any reference to the word "Lease" herein shall include the provisions of this Lease
18. Agreement as though fully contained therein.
19. 2. Landlord, at its own cost, agrees to prepare the described land and construct a complete Shopping Center
20. as shown on the plot plan attached hereto, including the storeroom for Tenant. Tenant's storeroom shall be constructed
21. according to plans and specifications to be prepared by Landlord's architect. Tenant shall have the right to approve such
22. plans and specifications xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx but approval thereof shall not
23. imply its approval of structural or engineering design or the quality of fitness of any material or device used. Xxxxx
24. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
25. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
26. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
27. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx SEE ADDENDUM 1
28. 3. The entire tract of land on which the Landlord is to construct said Shopping Center is shown on the plot plan
29. attached to and made a part hereof. Such plot plan designates the location and size of all buildings to be constructed,
30. store sizes, parking area, which shall be sufficient for 4 cars per 1000 customer parcel pickup facilities, and tenant's
31. delivery service areas. All that portion of the tract of land not covered by buildings is to be Common Area for the joint
32. use of all tenants, customers, invitees, and employees. No part of the Common Area may be improved with additional
33. buildings, nor may the parking lot layout, including parking spaces, aisles, driveways (and walkways) be altered or
34. removed without the prior written consent of Tenant. Xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
35. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
36. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
37. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
38. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
39. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx SEE ADDENDUM 2
40. 4. Landlord represents and warrants that the demised premises, and the entire Shopping Center, are, or will be,
41. well built, properly constructed, structurally safe and sound, suitable and fit, and that during the term of this Lease, or any
42. renewals hereof, it will so maintain them.
43. 5. Landlord will, at its own expense, have a topographical survey of the site, including boundary line measurements,
44. conforming to the legal description set forth in the Lease prepared by a licensed surveyor within  30  days of receipt
45. of the Lease, fully executed, and will promptly supply three copies of such survey to Tenant at the expense to Tenant. If
46. the dimensions shown by such survey vary materially, in Tenant's sole judgment, with reasonable discretion, from those
47. shown on the attached plot plan or from the description set forth in the Lease, Tenant may, within thirty (30) days of
48. receipt of such survey, cancel this lease. Thereupon the Lease shall end, and neither of the parties shall have any further
49. obligation hereunder to the other.
    hundred eighty (180)
50. 6. If the premises are not ready for occupancy within one / days after the commencement date, as stated
51. above, Tenant may cancel the Lease, and the obligations of the parties thereunder shall thereupon end. The words "ready
52. for occupancy" shall mean that the premises are fully completed in accordance with the plans and specifications, and
53. that all tools, scaffolding, surplus building materials, waste, debris, and rubbish of every sort in or about the demised
54. premises have been removed, certificates of inspection or similar approvals required in the community have been delivered
55. to Tenant, and exclusive possession of the demised premises is delivered to Tenant.
56. 7. Prior to completion of improvements to be made by Landlord, Tenant shall have the right and privilege to
57. receive, store, and install its trade fixtures in or on the demised premises, provided, however, that receiving, storing,
58. and installing shall be in a manner that will not interfere with Landlord's work. It is expressly agreed that such action
59. by Tenant shall not constitute acceptance of such premises as being required herein.
60. 8. Tenant shall pay to the Landlord rental for the demised premises of FIFTEEN THOUSAND AND NO/100
61. DOLLARS --------------------------------------------------------- ($ 15,000.00 ) Dollars
62. per month payable monthly in advance. Rental hereunder shall commence on the day Tenant opens its store on the
63. demised premises for business, or thirty (30) days after the demised premises are ready for occupancy, as hereinabove
64. defined, whichever shall be earlier, provided, however, that the Tenant may withhold opening its store for business without
65. incurring any rental obligation, notwithstanding more than thirty (30) days from the date the store is completed and
66. delivered to Tenant shall have elapsed, until each of the tenants mentioned in paragraph 22 hereof, xxxxxxxxxxxxxxxxxxx
67. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx are
68. open, xxxxxxxxxxxx for business. Landlord shall give Tenant notice in writing specifying the date on which the demised
69. premises shall be ready for occupancy at least seven (7) days in advance thereof. If at any time rent should become due
70. for a part of a month, such rent shall be prorated and paid on or before the tenth day of the following month.
71. 9. It is agreed that if any rents shall be in default or if Tenant shall default in any of the covenants herein
72. contained, and should such default continue for thirty (30) days after receipt by Tenant of written notice thereof, it shall
73. be lawful for Landlord to re-enter the demised premises and again have and enjoy the same.
74. 10. Tenant may use the demised premises in any lawful manner. Landlord shall supply any apparatus, appliance or
75. material and will cause any work to be done in and about the demised premises which may be required or ordered by any
76. lawful authority unless such requirement is brought about specifically by Tenant's particular type of business operation,
77. in which case Tenant shall supply and install the same.
78. 11. Landlord agrees to furnish heating and air cooling equipment. Xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
79. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
80. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
81. xxxxxxxxxxxxxxxxxxxxxxxxxx Tenant shall pay all charges for utilities and services used by it in the demised premises.
82. Any damage to Tenant's property occuring by reason of Landlord's failure to maintain and repair the demised premises as
83. set forth in this paragraph shall be borne by the Landlord. Xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
    SEE ADDENDUM 3

84.     12. Landlord has both the right and the responsibility to enter the demised premises periodically, at any reasonable
85. time, to inspect the condition of said premises and to make repairs. All repairs, restorations, alterations, additions, or
86. payments which are obligations of Landlord, shall be completed or made within reasonable time; should Landlord neglect
87. or refuse to make such repairs, restorations, alterations, additions, or payments after notice, Tenant, without liability or
88. forfeiture of its term or terms herein, may make such repairs, restorations, alterations, additions, or payments, and deduct
89. the cost thereof from the rent thereafter payable. Any repairs or other work done by Landlord shall be performed so as
90. to cause the least possible interference with Tenant's operation.

91.     13. Landlord agrees that it will not use or permit to be used for advertising purposes any part of the Shopping
92. Center, but it will permit Tenant and other occupants thereof to place their names or signs on the exterior of their
93. respective portions of such Shopping Center, provided that such signs are harmonious in size and style. Landlord will
94. not permit occupants of the Shopping Center to paint their names or any advertisement directly on any part of the
95. buildings of the Shopping Center, however Tenant may from time to time display paste-on signs inside the store window
96. as long as the same remains new and neat in appearance.

97.     14. Any remodeling, alterations, and additions to demised premises which Tenant may deem necessary during the
98. term hereof or of any renewals hereof shall be made at Tenant's expense, and Landlord hereby consents thereto. Major
99. structural changes to such premises shall be made only with Landlord's written consent, which consent shall not be
100. unreasonably withheld. Tenant shall be under no obligation to restore or remove any such change at the expiration
101. hereof.

102.     15. All fixtures and equipment, of whatsoever nature, placed or installed in or upon the premises by Tenant shall
103. remain its property, and it shall have the right to remove the same at any time.

104.     16. If the demised premises shall be damaged by fire, casualty, or other causes, they shall be promptly restored
105. by Landlord, and, until restored, there shall be an abatement or a proportionate reduction of the rent. If such premises
106. shall be condemned by lawful authority as unsafe or unfit for use, or if they shall become partially or wholly destroyed
107. by fire or other causes, so as to render them untenantable for a period in excess of ninety (90) days, the Lease shall
108. terminate, provided, however, that if Landlord commences restoration of the premises within three years of the date on
109. which the premises were rendered untenantable, it shall give notice of such fact to Tenant and Tenant shall have sixty
110. (60) days after receipt thereof to elect whether or not to take a new lease thereon commencing upon the completion of
111. such restoration for a term equal to the balance of the term remaining under the Lease at the time the premises became
112. untenantable. All other conditions of such lease, including renewal terms, shall be the same as are contained herein and
113. in the Lease. Any rental paid in advance and at the time unearned shall be refunded.

114.     17. If any street, adjoining right of way, or all or any part of the Common Area is obstructed or blocked for
115. repairs, reconstruction or otherwise, to the extent the operation of Tenant's business is adversely affected, in proportionate
116. reduction of rent shall be made. If customer access to Tenant's store is blocked for at least ten (10) consecutive days
117.

118.     18. Tenant assumes the liability for plate glass breakage during term of this Lease unless caused by Landlord, its
119. agents or employees, other tenants sharing the Shopping Center, other tenant's employees or agents, or structural defect.

120.     19. Except as otherwise provided herein, Landlord shall not be liable for any damage to fixtures or merchandise
121. of Tenant caused by fire or other hazards normally covered by fire and extended coverage insurance, regardless of the
122. cause thereof, and Tenant does hereby expressly release Landlord of and from all liability for such damages. Tenant
123. shall not be liable for any damages to the demised premises, or any part thereof, caused by fire or other insurable hazards,
124. regardless of the cause thereof, and Landlord does hereby expressly release Tenant of and from all liability for such
125. damages. Landlord agrees to keep the demised premises insured for fire and extended coverage insurance business in the state
126. thereof in responsible insurance companies authorized to do fire and extended coverage insurance business in the state
127. where demised premises are located. Landlord agrees that all insurance policies shall include a clause waiving rights of
128. subrogation against the Tenant.

129.     20. Landlord agrees to hold Tenant harmless from any and all claims which may arise from, on, in or about the
130. demised premises when such claims arise out of or are caused in whole or in part by a defective, dangerous, or unsafe
131. condition of the premises, equipment, fixtures, or appurtenances required by law or the terms hereof to be maintained in
132. good repair by Landlord.

133.     21. In the event the premises hereby leased, or any part thereof, are taken in condemnation proceedings, Tenant
134. may cancel this Lease. In the event any part of the buildings of the Shopping Center, or Common Area, or rights-of-way
135. adjoining, or approaches to the Shopping Center are taken in condemnation proceedings so that in the judgment of the
136. Tenant the premises remaining would be unsatisfactory for Tenant's business operation, Tenant may cancel this Lease,
137. or at its option, retain the premises, in which event Landlord will restore the entire remaining Shopping Center to proper
138. tenantable condition forthwith. Until the Shopping Center is restored to proper tenantable condition, rental shall abate.
139. Thereafter rental shall be reduced in proportion to the amount of land and/or building area lost, or if Tenant shall elect,
140. in proportion to the effect of the loss of such area on Tenant's business. For the purpose of this paragraph, the term
141. "condemnation proceedings" shall include conveyances and grants made in anticipation or in lieu of condemnation proceedings.
142. Nothing herein contained shall constitute a waiver of Tenant's right to compensation for damages. Tenant agrees to     SEE ADDENDUM 4
143. exercise its judgment reasonably.

144.     22. Landlord represents and warrants to Tenant; and this Lease has been entered into by Tenant in reliance upon
145. the representation and warranty of Landlord, that such Shopping Center will contain at least the following tenants with
146. store sizes set opposite their names under leases for terms not less than   15   years which are non-cancellable during
147. such time, to wit:

        Revco Drugs                         8,450 square feet

147.     23. Landlord agrees that he has or will acquire lawful title and right to make this Lease for the term aforesaid
148. and that he will provide Tenant with evidence thereof prior to the time at which Tenant takes possession of the premises,
149. and that he will put the Tenant into complete and exclusive possession of the premises, including joint use of the Common
150. Area, free from all orders, restrictions and notices of any public or quasi-public authority, and that if the Tenant shall
151. pay the rental and perform all the covenants and provisions of this Lease to be performed by the Tenant, the Tenant shall
152. during the term demised, freely peaceably and quietly occupy and enjoy the full possession of the premises hereby leased,
153. including the joint use of the Common Area, and the tenements, hereditaments and appurtenances thereunto belonging
154. and the rights and privileges herein granted without molestation or hindrance, lawful or otherwise, and that if at any
155. time during the term hereby demised the title of the Landlord shall fail or be discovered not to enable Landlord to grant
156. the term hereby demised the Tenant shall have the option, at the Landlord's expense, to correct any default, or annul
157. and void this Lease.

158.     24. Landlord represents and warrants that the demised premises and the entire Shopping Center are free and
159. clear of any and all encumbrances excepting real estate taxes and assessments for the current year and thereafter which
160. are assumed and will be paid by Landlord as they become due and payable, and except:

None

Tenant agrees that the Lease may be made subject and subordinate to the lien of any first mortgage or deed of trust that may be placed on the demised premises by Landlord, provided, however, as a condition to such subordination, Landlord shall obtain from any such mortgagee or trustee a subordination, non-disturbance and attornment agreement in a form acceptable to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of the Lease, its tenancy shall be and remain undisturbed, that the Lease shall not be effected by any default under any such mortgage or deed of trust, and that in the event of foreclosure or any enforcement of any such mortgage or deed of trust, the rights of Tenant hereunder shall expressly survive, and the Lease shall in all respects continue in full force and effect. Landlord and Tenant agree that this Lease Agreement shall not be recorded.

165.  25. If at any time Tenant shall desire to sublet or assign the demised premises, it shall notify Landlord of the
166.  name of the proposed subtenant or assignee and of the general nature of the business which such subtenant or assignee
167.  proposes to conduct. If the business which such subtenant or assignee proposes to conduct would conflict with exclusive
168.  right granted in leases to other tenants, Landlord may, within ten (10) days of receipt of such notice, refuse to approve
169.  such sublease or assignment. If Landlord fails to approve such subtenant or assignee within ten (10) days after receipt
170.  of such notice, or if Landlord refuses to approve such subtenant or assignee for any other reason than that permitted
171.  above, Tenant may terminate the Lease. Landlord shall at any time Tenant may request, supply to Tenant copies from
172.  leases to other tenants of all clauses granting exclusive rights to conduct various businesses in the Shopping Center.
173.      26. All notices required under this Lease shall be deemed to be properly served if delivered in writing personally
174.  or sent by certified or registered mail with return receipt requested, to Landlord at the last address where rent was paid
175.  or to Tenant at its Office at 453 North Mill Street/Jackson, Mississippi 39207 or to any subsequent address which either
176.  may designate for such purpose. Date of service of a notice served by mail shall be the date on which such notice is de-
177.  posited in a post office of the United States Post Office Department.
178.      27. No waiver of any condition or covenant of this Lease by either party shall be deemed to imply or constitute a
179.  further waiver of the same or any other condition or covenant of said Lease. No obligation not stated herein shall be
180.  imposed on either party hereto.
181.      28. The provisions of this Lease shall bind and inure to the benefit of the parties hereto, their heirs, executors,
182.  administrators, successors and assigns.


183.  29. Make rent checks payable to    Larry B. Tiffee
184.  
185.  and mail them to the following address: 1214-23rd Avenue, Meridian, MS 39301

186.

30. Tenant shall pay to Landlord during the term hereof, Tenant's pro rata share of Landlord's expense in maintaining, repairing, cleaning, lighting, striping, and insuring the Common Area in accordance with paragraph 2 hereof; provided, however, Tenant shall not be obligated to pay to Landlord any share of any such expense arising from repair and/or maintenance due to structural defects or failure, defective materials or work of Landlord, or to negligence of Landlord, its employees or agents. Further, if Landlord, after receipt of written notice from Tenant, shall fail to perform any of the services set forth in paragraph 2 within a reasonable time, Tenant shall have the right to perform same for Landlord's account and deduct the cost thereof from Tenant's pro rata share hereinabove set forth which may be due or become due in addition to any other remedies available to Tenant. Tenant's obligation to pay the aforesaid pro rata share shall cease in the event Landlord fails to provide such services.

Landlord shall, within ninety (90) days following the end of each lease year, furnish Tenant copies of paid invoices for such Common Area maintenance expenses for the preceding lease year and all facts, data and information needed to calculate Tenant's share of such expense as provided in this paragraph, and payment from Tenant shall be due within thirty (30) days thereafter. Should Landlord fail to present such paid invoices within such ninety (90) day period, Tenant shall be relieved of the obligation to pay Landlord its share of such expenses for such period.

31. Tenant agrees to pay all ad valorem taxes on Tenant's stock, trade fixtures and equipment located in the demised premises. Tenant further agrees, subject to the terms and conditions herein contained, to pay to Landlord during the term hereof, Tenant's pro rata share of real estate ad valorem taxes assessed against the Shopping Center, computed by multiplying the total amount of such taxes by a fraction, the denominator of which shall be the aggregate square feet of gross leasable area in the Shopping Center and the numerator of which shall be the total number of square feet in the demised premises (30,000 square feet).

Landlord shall, within ninety (90) days following the end of each tax year, furnish Tenant copies of the paid tax bills for such tax year and copies of the assessments on which such tax bills are based and all facts, data and information needed to calculate Tenant's share of such taxes as provided in this paragraph, and payment from Tenant shall be due within thirty (30) days thereafter. Should Landlord fail to present such paid tax bills and other information within such ninety (90) day period, Tenant shall be relieved of the obligation to pay Landlord its share of such taxes included in that payment.

Tenant shall have the right in the name of Landlord, but at Tenant's expense, to take whatever action (including litigation) Tenant deems necessary to contest the validity or amount of the assessed valuation of the demised premises or of the Shopping Center or of the ad valorem tax for any tax year, and Tenant, at its cost and expense, may undertake by appropriate proceedings in the name of Landlord, or Tenant, to contest or effect a review of the validity or amount of the assessed valuation of the ad valorem tax for any tax year; provided, however, that Tenant provides adequate security to prevent the foreclosure of any tax lien during the course of or upon the conclusion of any such contest or review.

If there is any remission or refund of all or any part of Tenant's tax payment for any tax year for which Tenant's tax payment has been paid, Tenant shall be entitled, without demand, to an appropriate refund for such taxes.

32. Tenant shall pay to Landlord during the term hereof, Tenant's pro rata share of the annual premium paid by Landlord for the fire and extended coverage insurance carried by Landlord covering the buildings in the Shopping Center. Landlord shall furnish Tenant with duplicate copies or certificates of said insurance policies. Landlord will endeavor to obtain separate coverage for Tenant's building (in which event Tenant shall pay the full amount of such insurance), provided such separate coverage does not result in a greater premium cost than would be the case if all buildings in the Shopping Center were included in a single coverage.

Landlord shall furnish Tenant, within ninety (90) days of payment of such annual insurance premiums, copies of the premium notices and all facts, data and information needed to calculate Tenant's share of such insurance premiums as provided in this paragraph, and payment from Tenant shall be due within thirty (30) days thereafter. Should Landlord fail to present such premium notices and other information within such ninety (90) day period, Tenant shall be relieved of the obligation to pay Landlord its share of such insurance premiums for such period. Upon the cancellation or termination hereof, Landlord shall pay to Tenant the amount of any unearned premium for which Tenant has reimbursed Landlord pursuant to the provisions hereof. Tenant's pro rata share of such insurance shall be determined in the same manner as its share for ad valorem taxes.

33. Tenant agrees to make as additional payment to Landlord a sum of money computed and payable as follows: within sixty (60) days of the end of each lease year, and also within sixty (60) days of the termination of the Lease, Tenant agrees to deliver to the Landlord a full, true and correct statement certified to by one of its officers, showing the gross sales (as herein defined) made in or from the demised premises during the preceding lease year. Tenant shall pay to Landlord, at the time such statement is delivered, an amount, if any, by which the following percentages of gross sales made by Tenant during the preceding lease year exceed the annual rent and any contributions for real estate taxes, Common Area maintenance, and/or insurance paid by Tenant under paragraphs 30, 31 and 32 hereof for such period:

(a) One percent (.01) of gross sales from $18,000,000.00 to $19,999,999.99;
(b) One-half percent (.005) of gross sales from $20,000,000.00 to $21,999,999.00;
(c) One-quarter percent (.0025) of gross sales in excess of $22,000,000.00.

The term "gross sales" as used herein, shall mean the total amount of all sales made in or from the demised premises after deducting therefrom rebates; refunds; allowances to customers; sales taxes imposed by any governmental authority; cash discounts; sales of cigarettes and other tobacco products; sales of alcoholic beverages; cost of trading stamps; postal services; receipt from sales of money orders or U. S. Postage Stamps; income from check cashing or banking activities; or sales of lottery tickets, insurance, or from vending machines or similar receipts, income or sales; or any excise tax. The words "lease year" shall mean a period of twelve (12) successive months. The first lease year shall begin on the commencement date of the Lease, provided, however, that it shall include any period of time preceding the defined lease year during which Tenant is open for business prior to the commencement date.

In the event the premises are ever occupied under a month-to-month tenancy, the percentage payment hereunder shall either be calculated on an annual basis, if the premises are occupied for a full year, or if not occupied for a full year, shall be calculated on the basis of the sales made in or from the demised premises during the proportionate part of the year in which rent is paid for the premises by Tenant. Payment in such case shall be made within sixty (60) days after the end of each year of such tenancy or other earlier termination of such tenancy.

Nothing herein contained shall be construed to indicate that percentage payments are rentals and Tenant shall at no time be liable for any percentage payments except those specified herein resulting from actual sales (as herein described) by Tenant.

34. If after diligent effort, Landlord is unable to procure acceptable permanent financing for the Shopping Center, on or before June 1, 1982, Landlord may, thereupon, cancel the Lease by Notice to Tenant and, thereafter, all parties shall be relieved of their obligations hereunder; except that if Landlord shall procure such zoning and/or financing at any time within three (3) years of the date of such termination, Landlord shall be required to give Tenant the first right of refusal to lease a storeroom in the Shopping Center upon terms and conditions substantially similar to those contained herein.

IN WITNESS WHEREOF, this Lease Agreement has been duly executed as of the day and year first above written.

Landlord:

*Larry B. Tiffee*

Larry B. Tiffee, an individual, d/b/a
Southwest Development Company

Tenant:

Jitney Jungle Stores of America, Inc.

By: *W. H. Holman*

Its:  President

STATE OF MISSISSIPPI

COUNTY OF ___Hinds___

Personally appeared before me, the undersigned authority in and for the above jurisdiction, the within named Larry B. Tiffee, an individual, d/b/a Southwest Development Company, and that he signed, executed and delivered the foregoing instrument as his voluntary act and deed.

Given under my hand and seal this 11th day of February, 1982.

My Commission Expires:

My Commission Expires August 25, 1985

_____
NOTARY PUBLIC


STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me the undersigned authority in and for the above jurisdiction, the within named W. H. Holman, Jr., who acknowledged that he is the President of Jitney Jungle Stores of America, Inc., a corporation, and that for and on behalf of said corporation and as its act and deed, he signed, executed and delivered the foregoing instrument, having first been duly authorized so to do.

Given under my hand and seal this 12th day of February, 1982.

My Commission Expires:

___8/25/84___

_____
NOTARY PUBLIC

ADDENDUM

to LEASE AGREEMENT dated February 11, 1982
by and between Larry B. Tiffee, an individual, d/b/a
Southwest Development Company, as Landlord, and Jitney
Jungle Stores of America, Inc., as Tenant

1.  The last two sentences of paragraph 2 are hereby deleted and the
following substituted in lieu thereof:

"Said plans and specifications must be approved by
Tenant prior to commencement of construction.  Tenant
will furnish Landlord guide plans and specifications
specifying Tenant's requirements for its storeroom.
It shall be the responsibility of Landlord to insure
that Tenant's storeroom, when completed, satisfies
the requirements set forth in said guide plan and
specifications furnished by Tenant, and is complete
and ready for installation of all Tenant's fixtures
and equipment."

2.  The last sentence of paragraph 3 is hereby deleted and the following
substituted in lieu thereof:

"Landlord agrees, at its own expense, to maintain all
Common Area in good repair (which shall include, but not
be limited to, keeping the surface of the parking lot
smooth and free of pot holes, to keep such area clean,
to remove snow and ice therefrom, to keep such area
lighted during hours of darkness when stores are open
for business, to keep the parking area properly striped
to assist in the orderly parking of cars, and to carry
ample Public Liability and Property Damage Insurance to
protect Landlord and Tenant properly and adequately
against claims for damage to property and against claims
arising from or out of the injury or death of any person
while on the Common Area."

3.  The second and third sentences of paragraph 11 are hereby deleted and
the following substituted in lieu thereof:

"Landlord shall maintain the structure and the exterior of the
premises, including, but without limitation, all paved areas,
loading docks, sidewalks, exterior walls (including painting),
canopies, gutters, downspouts, the roof, and all structural
portions of the building.  Tenant shall maintain the interior
of the building, including but without limitation, floor
coverings, doors and door mechanisms, plumbing, HVAC,
electrical and sprinkler systems, and shall re-decorate
the interior of the premises from time to time as necessary.
Tenant's obligation of repair and maintenance shall not extend
to repair or maintenance due to structural defects, or to
defective materials or work of Landlord."

4.  The second sentence of paragraph 21 is hereby amended by changing
the final period to a semi-colon and adding the following additional
language:

"provided, however, Tenant shall not have the right to cancel
this Lease if the total of all condemnations along MS 19 and
or Old US 80 are less than twenty-five (25) feet from the
existing right-of-way of said highways."

Form SC-1

# L E A S E

1.    WITNESSETH:

2.    This lease made as of the 11th day of February, 1982, by and between

Larry B. Tiffee, an individual, d/b/a Southwest Development Company , Lessor

3. (hereinafter called Landlord), and Jitney-Jungle Stores of America, Inc., / Lessee (hereinafter called Tenant).

                                                     a Mississippi corporation

4.      For and in consideration of a rental of One Dollar ($1.00) and other good and valuable considerations, the receipt and sufficiency

5. of which are hereby acknowledged, the Landlord does hereby lease and demise unto Tenant, upon and subject to each of the covenants

6. and undertakings hereinafter set forth as well as each and every covenant, agreement, and undertaking set forth in a certain lease agree-

7. ment between Landlord and Tenant and bearing even date herewith (hereinafter called Lease Agreement and which is hereby incorporated

8. herein for all purposes), a storeroom, which is or shall be 200' × 150' , dimensions, (hereinafter called the

9. "demised premises"), being located in and a part of College Park Shopping Center, which entire

10. Shopping Center is shown on the plot plan attached to Lease Agreement, and made a part hereof, with the demised premises being outlined

11. in red thereon, together with each and every appurtenance thereto, which Shopping Center is located at Ms. Hwy. 19 and Old

12. Hwy. 80 in the City of Meridian , County of Lauderdale , and State of Mississippi

13.      Together with the right, privilege and easement to use, in common with other tenants, all of the Shopping Center not occupied

14. by store buildings, or shown on the plot plan to be delivery or loading area. Tenant shall have uninterrupted access to its loading area

15. and docks at all times. Such parts of the Shopping Center as are not covered by store buildings according to the attached plot plan shall

16. be called the "common area." The common area shall be maintained for unobstructed pedestrian traffic and for the parking of auto-

17. mobiles and other passenger vehicles of the Tenant and all persons trading with or doing business with Tenant and other occupants of

18. premises located in the said Shopping Center.

19.      The Shopping Center premises in which the demised premises are located are more particularly described as follows:

( See EXHIBIT A Attached)

20.      To have and to hold the same for a term beginning on the 1st day of March , 1983

21. and ending on the 28th day of February , 2003 , at midnight unless sooner terminated as in the

22. Lease Agreement provided or permitted.

23.    Tenant shall be entitled to four (4) successive renewals hereof, each for a term of five (5)

24. years, upon the same terms and conditions as herein set forth, except as to term and number of renewals, and unless Tenant shall

25. notify Landlord not less than thirty days prior to the expiration of the original term, or of any renewal thereof, of its intention to

26. terminate this lease, it shall be deemed to have exercised its option to renew this lease for the next ensuing term and shall not be

27. required to give any further notice of its intention to avail itself of such renewal term. In the event Tenant should give notice of its

28. intention not to exercise its right to renew this lease, all succeeding renewals shall thereupon terminate.

29.      Should Tenant remain in possession of the demised premises after termination of this lease or of any renewal term of which

30. Tenant shall have availed itself or after any earlier termination provided or permitted herein or by the Lease Agreement, it shall be a

31. tenant from month to month at the same rental and on the same conditions, except as to term, as herein provided.

32.      Landlord covenants and agrees, from and after the date hereof and so long as this lease shall be in effect, not to lease, rent,

33. occupy, or suffer or permit to be occupied, any part of the Shopping Center premises or any other premises owned or controlled, directly

34. or indirectly, either by Landlord, its successors, heirs, or assigns, or Landlord's principal owners, stockholders, directors, or officers, or

35. their assignees (hereinafter called Owners), which are within 3 miles of the Shopping Center premises for the purpose of conducting

36. therein or for use as, a food store or a food department or for the storage or sale for off-premises consumption of groceries, meats,

37. produce, dairy products, or bakery products, or any of them; and further, that if Landlord or owners own any land, or hereinafter during

38. the term of this lease Landlord or Owners acquire any land within such distance of the Shopping Center, neither will convey the same

39. without imposing thereon a restriction to secure compliance with the terms of this lease; provided, however, that nothing contained

40. herein shall prevent any tenant in the Shopping Center from storing and selling such products as an incidental part of its other and

41. principal business so long as the total number of square feet devoted by such tenant to the storage and display for sale of such products

42. does not exceed 10% or the total number of square feet of building area leased by such tenant in the Shopping Center, or 1000 square feet

43. (including, in either such case, 1/2 of the aisle space adjacent to any storage or display area), whichever is the smaller. Further provided,

44. however, that if the initial first Mortgagee shall become the owner of the Shopping Center, this paragraph shall not be applicable to any

45. property, other than the Shopping Center, which such Mortgagee may then or thereafter own. If Tenant shall have received notice of

46. assignment of its lease to the Mortgagee, Tenant shall notify both Landlord and Mortgagee in writing of any current violation hereof, and

47. shall allow sixty days after the date of such notice for rectification of such violation prior to exercising other rights provided hereunder.

48. This covenant shall run with the land. Landlord acknowledges that in the event of any breach hereof Tenant's remedies at law would be

49. inadequate and therefore, in such event, Tenant shall be entitled to cancel this lease or to relief by injunction, or otherwise, at Tenant's

50. option, and Tenant's remedies shall be cumulative rather than exclusive.

51.      IN WITNESS WHEREOF, this lease has been duly executed as of the day and year first above written.

STATE OF MISSISSIPPI

COUNTY OF _Hinds_

    Personally appeared before me, the undersigned authority in and for the above jurisdiction, the within named Larry B. Tiffee, an individual, d/b/a Southwest Development Company, and that he signed, executed and delivered the foregoing instrument as his voluntary act and deed.

    Given under my hand and seal this 11th day of _February_, 1982.

My Commission Expires:

My Commission Expires August 25, 1984

                                     _Dew Garrett_
                                      NOTARY PUBLIC


STATE OF MISSISSIPPI

COUNTY OF HINDS

    Personally appeared before me the undersigned authority in and for the above jurisdiction, the within named W. H. Holman, Jr., who acknowledged that he is the President of Jitney Jungle Stores of America, Inc., a corporation, and that for and on behalf of said corporation and as its act and deed, he signed, executed and delivered the foregoing instrument, having first been duly authorized so to do.

    Given under my hand and seal this 12th day of _February_, 1982.

My Commission Expires:

_3/25/84_

                                        _Dew Garrett_
                                      NOTARY PUBLIC

EXHIBIT A

Beginning at the Northeast corner of Lot 12, Block 1 of Lakeland Acres, Meridian, Lauderdale County, Mississippi; thence South 24 degrees 05 minutes East, 228.20 feet along the East line of Lots 12 and 14 to the Southeast corner of Lot 14 and the North right-of-way line of Old U. S. Highway No. 80; thence in a Southwesterly direction along the North right-of-way line of Old U. S. Highway No. 80, said right-of-way being a curve with a radius of 1,959.86 feet a distance of 281.20 feet to a point that is South 71 degrees 00 minutes West a distance of 280.83 feet from the last mentioned point; thence North 23 degrees 47 minutes 55 seconds West along the West line of Lot 17 a distance of 74.32 feet; thence South 65 degrees 03 minutes 47 seconds West to a point on the West line of Lot 18 a distance of 70.04 feet; thence North 23 degrees 46 minutes 20 seconds West 27.80 feet to the Northwest corner of Lot 18, thence South 64 degrees 43 minutes 44 seconds West along the South line of Lot 7 a distance of 70.05 feet; thence South 62 degrees 41 minutes 36 seconds West along the South line of Lot 6 to the Southwest corner of said lot a distance of 70.00 feet; thence North 23 degrees 40 minutes 36 seconds West along the West line of Lot 6 a distance of 140.40 feet to the Northwest corner of said Lot and the South right-of-way line of Ann Avenue; thence North 21 degrees 38 minutes West, 50.00 feet to the Southeast corner of Lot 18, Block 2 and the North right-of-way line of Ann Avenue; thence South 67 degrees 25 minutes 51 seconds West along the South line of Lot 18 to the Southwest corner of said lot, 70.00 feet; thence North 40 degrees 26 minutes 40 seconds West along the West line of Lots 18, 15 and 14 a distance of 240.04 feet; thence North 58 degrees 34 minutes 16 seconds West, 60.12 feet to the Southwest corner of Lot 14; thence North 8 degrees 00 minutes West, along West line of Lot 14, a distance of 6.20 feet to a point on the South line of Old 8th Street road; or the present Highway 19 new right-of-way; thence South 64 degrees 25 minutes East along said right-of-way 23.54 feet; thence North 60 degrees 23 minutes East along said right-of-way line 195.19 feet; thence North 83 degrees 44 minutes 20 seconds East along South right-of-way line of Old 8th Street road and Highway 19 intersected a distance of 151.47 feet; thence South 61 degrees 56 minutes 27 seconds East along the South right-of-way line of Highway 19, 204.71 feet; thence South 71 degrees 57 minutes 35 seconds East along said right-of-way 102.39 feet; thence South 81 degrees 49 minutes 20 seconds East along said right-of-way line a distance of 117.15 feet; thence South 24 degrees 05 minutes East, 31.38 feet to the point of beginning, being a part of Blocks 1 and 2 of Lakeland Acres, Meridian, Lauderdale County, Mississippi.

## AGREEMENT SUPPLEMENTING AND AMENDING LEASE

THIS IS AN AGREEMENT dated November 17, 1983 by and between the ESTATE OF LARRY B. TIFFEE (Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation ("Jitney");

SUPPLEMENTING AND AMENDING the Lease dated February 11, 1982 between Larry B. Tiffee, an individual, Landlord's prececessor, and Jitney, covering a Storeroom and its appurtenances located in College Park Shopping Center (now Greenwood Plaza Shopping Center), MS Hwy 19 and Old Hwy 80 in the City of Meridian, County of Lauderdale, State of Mississippi.

1. Construction of the Storeroom on the premises, as contemplated by the Lease, was completed on September 19, 1983.

2. The intial term of the Lease began on September 19, 1983, and shall end on September 30, 2003 (subject to any rights of termination or extension provided in the Lease).

3. Rent commenced to accrue under the Lease on September 19, 1983.

4. Effective as of the date hereof, the incorrect references to "paragraph 2" in lines 3 and 6 of the first paragraph of paragraph 30 of the Lease Agreement are hereby amended to correctly read "paragraph 3".

5. The Lease, as hereby supplemented and amended, is ratified and continued.

6. This Agreement shall bind and benefit Landlord's heirs, administrators, executors, successors and assigns, and Jitney's successors and assigns.

EXECUTED as of the date first herein specified.

ESTATE OF LARRY B. TIFFEE

By: _____
Hazel Tiffee, Executrix

JITNEY- JUNGLE STORES OF AMERICA, INC.

By: _____
W. H. Holman, Jr., President

<u>AGREEMENT AMENDING LEASE</u>

THIS IS AN AGREEMENT dated _SEPTEMBER 4_ , 1985 between THE ESTATE OF LARRY B. TIFFEE ("Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC.("Tenant");

AMENDING the Lease dated February 11, 1982 between Larry B. Tiffee, an individual, Landlord's predecessor, and Tenant, covering a storeroom and its appurtenances located in College Park Shopping Center (now Greenwood Plaza Shopping Center), MS 19 and Old Hwy 80 in the City of Meridian, County of Lauderdale, State of Mississippi.

EFFECTIVE as of the date hereof:

1.  The second paragraph of Paragraph 30 of the Lease Agreement is hereby deleted and the following substituted in lieu thereof:

"Landlord shall, on or before April 30th of each year, furnish Tenant copies of paid invoices for such Common Area maintenance expenses for the preceding calendar year and all facts, data and information needed to calculate Tenant's share of such expense as provided in this paragraph, and payment from Tenant shall be due on or before May 30th . Should Landlord fail to present such paid invoices on or before the aforesaid date, Tenant shall be relieved of the obligation to pay Landlord its share of such expenses for such period. Tenant's pro rata share of such Common Area maintenance expenses shall be determined in the same manner as its share for ad valorem taxes."

2.  The second paragraph of Paragraph 31 of the Lease Agreement is hereby deleted and the following substituted in lieu thereof:

"Landlord shall, on or before April 30th of each year, furnish Tenant copies of the paid tax bills for the preceding tax year and copies of the assessments on which such tax bills are based and all facts, data and information needed to calculate Tenant's share of such taxes as provided in this paragraph, and payment from Tenant shall be due on or before May 30th. Should Landlord fail to present such paid tax bills and other information on or before the aforesaid date, Tenant shall be relieved of the obligation to pay Landlord its share of such taxes included in that payment."

3.  The second paragraph of Paragraph 32 of the Lease Agreement is hereby deleted and the following substituted in lieu thereof:

"Landlord shall, on or before April 30th of each year, furnish Tenant copies of the paid premium notices for such insurance purchased during the preceding calendar year and all facts, data and information needed to calculate Tenant's share of such insurance premiums as provided in this paragraph, and payment from Tenant shall be due on or before May 30th. Should Landlord fail to present such premium notices and other information on or before the aforesaid date, Tenant shall be relieved of the obligation to pay Landlord its share of such insurance premiums for such period. Upon the cancellation or termination hereof, Landlord shall pay to Tenant the amount of any unearned premium for which Tenant has reimbursed Landlord pursuant to the provisions hereof. Tenant's pro rata share of such insurance shall be determined in the same manner as its share for ad valorem taxes".

4.  The Lease, as heretofore and hereby supplemented and amended, is ratified and continued.

5.  This Agreement shall bind and benefit Landlord's heirs, administrators, executors, successors and assigns, and Tenant's successors and assigns.

EXECUTED as of the date first herein specified.

Landlord:

THE ESTATE OF LARRY B. TIFFEE

By: _Harold C. Tiffee - Executrix_
Hazel C. Tiffee, Executrix

Tenant:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _W. H. Holman, Jr._
W. H. Holman, Jr., President

By: _Roger P. Friou_
Roger P. Friou, Secretary

STATE OF _Arkansas_
COUNTY OF _Jackson_

Personally appeared before me, the undersigned authority, in and for the jurisdiction aforesaid, the within named Hazel E. Tiffee, who acknowledged that she is the duly constituted and acting Executrix of the Estate of Larry B. Tiffee, and who acknowledged further that in such capacity she signed, executed and delivered the above and foregoing instrument for and on behalf of said Estate.

Given under my hand and seal of office this the _4_ day of _Sept_, 1985.

_Jim Bryant_
NOTARY PUBLIC

My commission expires:
_2-1-90_

STATE OF MISSISSIPPI
COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. H. Holman, Jr. and Roger P. Friou, who acknowledged that they are the duly constituted and acting President and Secretary, respectively, of Jitney Jungle Stores of America, Inc., a Mississippi corporation, and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said Corporation, having first been duly authorized so to do.

Given under my hand and seal of office, this the _27th_ day of _September_, 1985.

_Clyde W. Stateg_
NOTARY PUBLIC

My commission expires:

My Commission Expires Sept. 2, 1987

AGREEMENT AMENDING AND EXTENDING LEASE

THIS IS AN AGREEMENT ("Agreement") dated AUGUST 30, 1993, by and between WASHINGTON NATIONAL INSURANCE COMPANY, an Illinois corporation with offices at 300 Tower Parkway, Lincolnshire, IL 60069, Attn: Mortgage and Real Estate Division ("Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation with offices at (P. O. Box 3607, ZIP: 39207), 453 North Mill Street, Jackson, MS 3920, ("Tenant").

WHEREAS, on February 11, 1982, Larry Tiffee, an individual, Landlord's predecessor in title to the Shopping Center (as hereinafter defined), entered into a lease and lease agreement ("Lease") with Tenant covering that certain store building and its appurtenances known as Jitney Jungle 668, 5605 NE Hwy 15 North ("Premises"), which is located in Greenwood Plaza Shopping Center in the City of Meridian, County of Lauderdale, and State of Mississippi ("Shopping Center"); and

WHEREAS, said Lease was subsequently supplemented and amended by that certain Agreement Supplementing and Amending Lease dated November 17, 1983, and amended by that certain Agreement Amending Lease dated September 4, 1985; and

WHEREAS, Tenant desires to enlarge the Premises by incorporating therein the premises adjacent thereto on the North ("Adjoining Premises"), which Adjoining Premises are outlined in red and designated "Proposed Addition" on EXHIBIT A attached hereto and made a part hereof; and

WHEREAS, Landlord desires to assist Tenant in making the Adjoining Premises available to Tenant for the purpose of enlarging the Premises by incorporating the Adjoining Premises therein to create the enlarged premises outlined in red on EXHIBIT B attached hereto and made a part hereof ("Enlarged Premises").

NOW THEREFORE, for and in consideration of the terms, covenants, conditions and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of all of which is hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows:

1. Tenant has heretofore delivered to Landlord the plans and specifications for the construction of the Enlarged Premises ("Plans and Specifications"), which Plans and Specifications Landlord hereby approves.

2. Within ten (10) days after the date this Agreement is fully executed by Landlord and Tenant, Landlord shall deliver possession of the Adjoining Premises to Tenant free of all leases and tenants-in-possession and, with respect to said Adjoining Premises, Landlord represents and warrants:

A. that Tenant shall be entitled to the exclusive and undisturbed possession thereof during the term of the Lease and that no other party is entitled to any possessory rights therein pursuant to any lease, rental agreement, license and/or other agreement, subject, however, to the terms and provisions of the Lease and this Agreement; and

B. that, except for matters of record, there are no liens and/or encumbrances affecting the Adjoining premises which impair, diminish, prevent or restrict Tenant's right to lease, possess and/or use the Adjoining Premises as contemplated by this Agreement; and

3. Immediately upon delivery of possession of the Adjoining Premises by Landlord, Tenant shall, at Tenant's sole cost and expense, make all necessary alterations, additions, and improvements thereto to construct the Enlarged Premises based on, and in accordance with, the Plans and Specifications (the "Work"). The obligations of Landlord and Tenant with respect to the Work are set forth in EXHIBIT C attached hereto and made a part hereof. It shall be the responsibility of Tenant to insure that the Enlarged Premises, when completed, satisfy the requirements set forth in the Plans and Specifications. With reference to the Work, Tenant shall promptly commence construction thereof and shall pursue completion of same with all due diligence, and indemnify and hold Landlord harmless against any damage, loss or expense on account of injury or death of persons or damage to property arising from Tenant's prosecution thereof.

4. Effective on the date Tenant opens for business in the Enlarged Premises:

A. for the purposes of the Lease, unless the context requires otherwise, the term "demised premises" as used therein shall be deemed to mean and refer to the Enlarged Premises,

B. the demised premises shall be considered to be 46,500 square feet in lieu of the size set forth in the Lease.

C. the plot plan attached to the Lease shall be deleted and the attached hereto as EXHIBIT B shall be substituted in lieu thereof.

5. Effective as of the date Landlord pays to Tenant Landlord's Contribution as provided in EXHIBIT C hereof:

A. the initial term of the Lease shall be extended for a period ending on the last day of the month following the fifteenth (15th) anniversary of the date Landlord pays to Tenant Landlord's Contribution.

B. Tenant shall pay to Landlord as rent for the Enlarged Premises, the sum of Twenty Five Thousand and 00/100 Dollars ($25,000.00) per month in lieu of the rent set forth in Paragraph 8 of the Lease agreement.

C. the references to "April 30th of each year" and "on or before May 30th" in Paragraphs 30, 31 and 32 of the lease agreement, as heretofore amended, shall be amended to read "June 30th of each year" and "on or before July 30th", respectively.

D. the basis for computation of percentage payments shall be:

"(a) one percent (.01) of gross sales from $30,000,000.00 to $32,000,000.00;
(b) one-half percent (.005) of gross sales from $32,000,000.00 to $34,000,000.00; and
(c) one-quarter percent (.0025) of gross sales in excess of $34,000,000.00"

In lieu of the amounts set forth in Paragraph 33 of the lease agreement.

E. Should Landlord fail to pay to Tenant Landlord's Contribution as provided in this Agreement then, in that event, this Paragraph 5 shall be null and void and of no further force or effect.

1

6. Landlord and Tenant shall execute a supplemental agreement setting forth the beginning and ending dates of the extended term as provided herein within thirty (30) days after the date Landlord pays to Tenant Landlord's Contribution.

7. It is understood and agreed that nothing contained herein shall alter or modify, in any way, the continuing obligations of Landlord and Tenant to maintain the Enlarged Premises and, with respect only to Landlord, to maintain the Shopping Center of which the Enlarged Premises are a part pursuant to the terms of the Lease. Tenant hereby assigns to Landlord any and all warranties and other rights Tenant may have against third parties arising from the work and shall execute any other documents reasonably required to evidence such assignment.

8. [...] neither shall be deemed in default with respect to the performance of any of the terms, conditions or covenants of this agreement to be performed by either of them if such failure or performance shall be due to any strike, labor dispute, picketing, inability to obtain necessary materials, Act of God, or due to any other similar cause whatsoever beyond the control of either party, and the time for performing by Landlord and/or Tenant shall be extended by the period of delay resulting from or due to any of said causes.

9. The Lease, as heretofore supplemented and amended, and hereby amended and extended, is ratified, confirmed and continued.

10. This Agreement shall bind and benefit Landlord and Tenant, their successors and assigns.

11. This Agreement, including all Exhibits hereto, merges and supersedes all prior representations and agreements, and constitutes the entire contract between Landlord and Tenant concerning the enlargement of the Premises and the consideration therefor.

12. Each party executing this Agreement represents and warrants that they are a party hereto, or an agent of a party hereto, duly authorized to execute this Agreement on behalf of such party and to bind that party to the performance of such party's obligation hereunder.

EXECUTED as of the date first herein specified.

LANDLORD:

WASHINGTON NATIONAL INSURANCE COMPANY

By: _____

Its: _____

Attest: _____

Its: _____

TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
W. H. Holman, Jr., President

Attest: _____
Roger P. Friou, Secretary

TEL:                                    Uct 01 93   16:46 No.001 P.(

EXHIBIT A



TEL:

Oct.01 93   16:46 No.001 P

**EXHIBIT B**





EXHIBIT C

CONSTRUCTION AGREEMENT

1. **CONSTRUCTION:** The Work of Tenant shall include, but not be limited to, supplying and installing all necessary mechanical and electrical equipment and other improvements described in, and in accordance with, the Plans and Specifications.

2. **COMPLIANCE:** Tenant shall be solely responsible for the timely completion of the Work in accordance with the Plans and Specifications, and all applicable federal, state and local laws, regulations and ordinances.

3. **DOCUMENTATION:**

A. **PRIOR TO COMMENCEMENT OF CONSTRUCTION OF THE WORK, TENANT SHALL DELIVER TO LANDLORD:**

(1) A photocopy of the building permit for the Work;

(2) Photocopies of executed performance and payment bonds in an amount equal to one hundred percent (100%) of the total cost of the Work;

(3) Photocopies of executed construction contracts to which Tenant is a party with respect to the Work, which shall provide for recognition that any mechanics', materialmen's, or contractors' statutory liens shall not attach to the Premises;

(4) Certificates of insurance reflecting the coverage set forth in Paragraph 7 below; and

(5) A statement from a licensed architect certifying that the Plans and Specifications are in compliance with all applicable laws, ordinances and regulations; and

(6) A photocopy of a schedule of values on AIA Form G703 and estimated construction schedule with respect to the Work.

B. **WITHIN NINETY (90) DAYS AFTER COMPLETION OF THE WORK, TENANT SHALL DELIVER TO LANDLORD:**

(1) A photocopy of the final Application and Certificate for Payment (AIA Document G702) submitted by Tenant's contractor and approved by Tenant;

(2) A photocopy of the Certificate of Substantial Completion (AIA Document G704) submitted by Tenant's contractor and accepted by a licensed architect or engineer and by Tenant;

(3) A photocopy of the Contractor's Affidavit of Payment of Debts and Claims (AIA Document G706) submitted by Tenant's contractor which Affidavit shall include a Contractor's Affidavit of Release of Liens (AIA Document G706A) and a Consent of Surety (AIA Document G707);

(4) Assignments of applicable warranties covering all new construction including a one (1) year warranty from Tenant's contractor, and standard one (1) and five (5) year warranties on the HVAC system.

(5) A statement from a licensed architect or engineer certifying that the Work has been completed in a good and workmanlike manner and in accordance with the Plans and Specifications; and

(6) A statement from Tenant certifying that the Work has been completed in accordance with the Plans and Specifications and has been accepted by Tenant.

(7) A photocopy of a new Certificate of Occupancy, if available.

(8) An Estoppel Certificate in form mutually acceptable to Landlord and Tenant certifying that the Lease is in full force and effect; the dates to which the rent and any other payments payable by Tenant under the Lease have been paid in advance; that, to Tenant's knowledge, Landlord is not in default in the performance of any of the terms, covenants or conditions of the Lease, and if so, specifying the nature of each such default or which the signer may have knowledge; whether or not there are any then-existing setoffs or defenses against the enforcement of any of the terms, covenants and conditions of the Lease, and if so, specifying the nature of same; and to such other statements of fact relating to the Lease as may be reasonably requested.

4. **LANDLORD'S CONTRIBUTION:** Within ten (10) days after delivery by Tenant to Landlord of all of the documentation set forth in Paragraph 3.B above, Landlord shall pay to Tenant the sum of Seven Hundred Sixty Two Thousand Four Hundred Fifty and 00/100 Dollars ($762,450) as Landlord's contribution to the cost of the Work ("Landlord's Contribution").

5. **PERMITS AND APPROVALS:** Tenant shall promptly apply for all necessary approvals and permits from all state and local governmental agencies having authority over the construction of the Work and the installation of Tenant's fixtures and equipment.

6. **WORKMANSHIP:** All Work of Tenant shall be completed in a good and workmanlike manner using materials and equipment of quality at least equivalent to that used in the original construction of the Premises and in accordance with the Plans and Specifications.

7. **INSURANCE:** Tenant shall maintain during the course of construction "ALL RISK" fire and extended coverage insurance on all portions of the Work naming Landlord as an additional insured. In addition, Tenant shall maintain, and shall cause each of its contractors to maintain, comprehensive general liability and worker's compensation insurance.

8. **LIENS:** Tenant shall not encumber or subject the interest of Landlord in the Enlarged Premises and/or the Adjacent Area to any mechanics' materialmen's or other liens of any nature whatsoever, shall promptly discharge any such liens which are filed as a result of the Work, and shall hold Landlord harmless against any such liens.

### FOURTH AGREEMENT AMENDING LEASE

THIS IS AN AGREEMENT ("Agreement") dated _NOVEMBER 25_, 1993, by and between WASHINGTON NATIONAL INSURANCE COMPANY, an Illinois corporation with offices at 300 Tower Parkway, Lincolnshire, IL 60069, Attn: Mortgage and Real Estate Division ("Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation with offices at (P. O. Box 3409, ZIP: 39207), 453 North Mill Street, Jackson, MS 39202 ("Tenant").

WHEREAS, on February 11, 1982, Larry Tiffee, an individual, Landlord's predecessor in title to the Shopping Center (as hereinafter defined), entered into a lease and lease agreement ("Lease") with Tenant covering that certain store building and its appurtenances known as Jitney Jungle #48, 5605 MS Hwy 15 North ("Premises"), which is located in Greenwood Plaza Shopping Center in the City of Meridian, County of Lauderdale, and State of Mississippi ("Shopping Center"); and

WHEREAS, said Lease was subsequently supplemented and amended by that certain Agreement Supplementing and Amending Lease dated November 17, 1983, and amended by that certain Agreement Amending Lease dated September 4, 1985; and amended and extended by that certain Agreement Amending and Extending Lease dated August 30, 1993; and

WHEREAS, Tenant desires to lease from Landlord the store building adjacent to the Premises on the South ("Adjacent Premises"), which Adjacent Premises are outlined in red and designated "Lease Space" on EXHIBIT A attached hereto and made a part hereof; and

WHEREAS, Landlord desires to lease the Adjacent Premises to Tenant.

NOW THEREFORE, for and in consideration of the terms, covenants, conditions and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of all of which is hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows:

1. Effective as of the date hereof, Landlord hereby delivers possession of the Adjacent Premises to Tenant free of all leases and tenants-in-possession and, with respect to said Adjacent Premises, Landlord represents and warrants:

A. That Tenant shall be entitled to the exclusive and undisturbed possession thereof during the term of the Lease and that no other party is entitled to any possessory rights therein pursuant to any lease, rental agreement, license and/or other agreement, subject, however, to the terms and provisions of the Lease and this Agreement; and

B. That, except for matters of record, there are no liens and/or encumbrances affecting the Adjacent Premises which impair, diminish, prevent or restrict Tenant's right to lease, possess and/or use the Adjacent Premises as contemplated by this Agreement; and

2. Effective as of the date Tenant opens for business in the Enlarged Premises (as that term is defined in the Agreement Amending and Extending Lease dated August 30, 1993):

A. For the purposes of the Lease, unless the context requires otherwise, the term "demised premises" as used therein shall be deemed to include the Adjacent Premises.

B. For the purposes of the Lease, the Premises shall be considered to be 49,400 square feet in lieu of the size set forth in the Lease.

C. The last sentence of Paragraph 3 of the Lease as set forth in Paragraph 2 of the addendum to the lease agreement shall be deleted and the following substituted in lieu thereof:

" Tenant shall, at Tenant's expense maintain the Common Area in good condition and repair which shall include, but not be limited to, keeping all paved areas smooth and free of potholes, keeping the parking area properly striped to assist in the orderly parking of cars, keeping the Common Area lighted during hours of darkness when the Premises is open for business and keeping all of the Common Area clean including removing snow and ice therefrom; provided, however, Tenant's obligation of repair and maintenance of the Common area shall not extend to repair or maintenance due to structural defects or failure or to defective materials or work of Landlord."

D. Paragraph 16 of the lease agreement shall be deleted and the following substituted in lieu thereof:

"In the event the Premises shall be damaged or destroyed, in whole or in part, by fire or other casualty, Tenant shall promptly restore the Premises to substantially the same condition as they were immediately prior to such damage or destruction and, until restored, there shall be an abatement or a proportionate reduction of the rent, and all proceeds of insurance required to be carried and maintained by Tenant hereunder, including any amounts paid to Landlord for its interest therein, shall be applied to such restoration, provided that, during the last two (2) years of the initial term and during any extended term, said proceeds may, at the option of Tenant, in lieu of restoring the Premises, be applied as follows: (a) to the satisfaction in full of any first mortgage or deed of trust on the Premises; and (b) to Landlord; whereupon this Lease shall terminate and all obligations of the parties hereunder shall cease. Said option shall be exercised by Tenant by giving Landlord notice within thirty (30) days of such damage or destruction."

E. The last two (2) sentences of Paragraph 19 of the lease agreement shall be deleted and the following substituted in lieu thereof:

"Tenant shall, during the term of this Lease, carry and maintain (a) "All Risk" fire and extended coverage insurance covering the Premises in an amount equal to at least eighty percent (80%) of the insurable value thereof; and (b) Public Liability and Property Damage Insurance covering the Premises and the Common Area with limits of not less than $1,000,000 Combined Single Limit Bodily Injury and Property Damage for a single accident or occurrence. All such insurance shall name Landlord as an additional insured. Blanket policies maintained by Tenant for not less than the amounts set forth above shall be sufficient to comply with the provisions hereof. If the Premises are at any time subject to the lien of a first mortgage, deed of trust or other similar security instrument ("mortgage") and each lienholder so requires, then each hazard insurance policy shall be endorsed with a standard mortgagee rider, or contain a standard mortgagee provision, in favor of such lienholder, but only if the mortgage provides by its terms, or such holder agrees by separate written instrument, that so long as this Lease remains in effect such lienholder shall, upon written request of Landlord or Tenant, release insurance proceeds for repair or restoration of the Premises as provided herein. Tenant agrees that the term "insurable value" as used herein

1

shall mean "actual replacement cost". Such lienholder shall be furnished with certificates of each insurance policy upon request."

F.  The last three (3) sentences of Paragraph 25 of the lease agreement shall be deleted and the following substituted in lieu thereof:

"If Landlord fails to approve such subtenant or assignee within ten (10) days after receipt of such notice, or if Landlord refuses to approve such subtenant or assignee for any reason whatsoever, Tenant may terminate this Lease. In the event of any such subletting or assignment, however, Tenant shall remain liable to Landlord for the performance of all of the terms and conditions of this Lease."

G.  Paragraph 30 of the lease agreement shall be deleted and shall have no further force or effect.

H.  Paragraph 31 of the lease agreement shall be deleted and the following substituted in lieu thereof:

"Except as otherwise provided elsewhere in this Lease, it is understood and agreed that Tenant shall, during the term of this Lease, pay all costs of any kind and description levied against the Premises or the uses Tenant makes of it including, but not limited to, all real estate, personal property and other taxes and assessments, utility bills and governmental charges; provided, however, Tenant shall not be required to pay any income, gift or capital levy or excess profits tax that may be payable by Landlord. Landlord agrees to participate with Tenant in seeking adjustments in real estate tax increases during the term of this Lease or any renewal thereof. Real estate taxes, whether or not then due or payable, shall be prorated at the end of the term hereof. At the close of each tax year, Tenant agrees to furnish Landlord, upon request, copies of paid receipts reflecting the payment of all real estate taxes and assessments, or other appropriate evidence of payment."

I.  Paragraph 32 of the lease agreement shall be deleted and shall have no further force or effect.

J.  The reference to "...any contributions for real estate taxes, Common Area maintenance, and/or insurance paid by Tenant under paragraphs 30, 31 and 32 hereof..." in Paragraph 33 of the lease agreement shall be deleted and "...any and all payments made by Tenant for maintenance of the Common Area, insurance and real estate taxes pursuant to Paragraphs 3, 19 and 31 hereof..." substituted in lieu thereof.

K.  The plot plan attached to the lease agreement shall be deleted and that attached hereto as EXHIBIT B shall be substituted in lieu thereof.

3.  The Lease, as heretofore supplemented, amended and extended, and hereby amended, is ratified, confirmed and continued.

4.  This Agreement shall bind and benefit Landlord and Tenant, their successors and assigns.

5.  This Agreement, including all Exhibits hereto, merges and supersedes all prior representations and agreements, and constitutes the entire contract between Landlord and Tenant concerning the leasing of the Adjacent Premises and the consideration therefor.

6.  Each party executing this Agreement represents and warrants that they are a party hereto, or an agent of a party hereto, duly authorized to execute this Agreement on behalf of such party and to bind that party to the performance of such party's obligation hereunder.

EXECUTED as of the date first herein specified.

LANDLORD:

WASHINGTON NATIONAL INSURANCE COMPANY

By: _____

Its: Vice President

Attest: _____

Its: _____

TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
W. H. Holman, Jr., President

Attest: _____
Roger P. Friou, Secretary

2

EXHIBIT A



**EXHIBIT B**



## AGREEMENT SUPPLEMENTING LEASE

THIS IS AN AGREEMENT ("Agreement") dated February 4, 1994, by and between WASHINGTON NATIONAL INSURANCE COMPANY, an Illinois corporation with offices at 300 Tower Parkway, Lincolnshire, IL 60069, Attn: Mortgage and Real Estate Division ("Current Landlord"); Jack Fiorella III, an individual having an address at Two Riverchase Office Plaza, Suite 206, Birmingham, AL 35244 ("Successor Landlord"); and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation with offices at (P. O. Box 3409, ZIP: 39207), 453 North Mill Street, Jackson, MS 39202 ("Tenant").

SUPPLEMENTING the Agreement Amending and Extending Lease dated August 30, 1993 ("Extension"), and the Fourth Agreement Amending Lease dated November 23, 1993 ("Amendment"), between Current Landlord and Tenant, covering that certain store building and its appurtenances known as Sack and Save #68, 5605 MS Hwy 15 North ("Premises"), which is located in Greenwood Plaza Shopping Center in the City of Meridian, County of Lauderdale, and State of Mississippi ("Shopping Center").

THE PARTIES HERETO hereby confirm and agree that:

1.   Effective as of January 1, 1994:

   A.   Tenant opened its storeroom for business in the Enlarged Premises, as contemplated by the Extension and the Amendment.

   B.   The term "Enlarged Premises" shall be as defined in the Amendment.

   C.   The Premises shall be considered to be 49,400 square feet as contemplated in the Amendment.

   D.   All of the modifications to the Lease contemplated in subparagraphs C through K of Paragraph 2 of the Amendment shall be in full force and effect.

2.   Effective as of the date hereof:

   A.   Tenant acknowledges receipt from Current Landlord of Landlord's Contribution of $762,450.00, as contemplated by the Extension, together with the sum of $7,136.00 for certain structural repairs to the Premises which were undertaken by Tenant for Current Landlord's account, and the sum of $2,267.00 as advance payment for replacement certain sections of concrete to be promptly hereafter completed by Tenant in a driveway entrance and in the service area at the rear of the Premises which replacement was the responsibility of Current Landlord prior to the effective date of the Amendment.

   B.   The extended initial term of the Lease, as contemplated by the Extension, began on the date hereof, and shall end on February 28, 2009 (subject to any rights of termination or extension provided in the Lease).

   C.   All right, title and interest of Current Landlord in and to the Shopping Center of which the Premises is a part was conveyed to Successor Landlord.

   D.   Tenant shall pay to Successor Landlord, at the address first herein specified, as rent for the Enlarged Premises, the sum of Twenty Five Thousand and 00/100 Dollars ($25,000.00) per month, as contemplated by the Extension.

   E.   The basis for computation of percentage payments shall be:

   "one percent (.01) of gross sales from $30,000,00.00 to $32,000,000.00;
   one-half percent (.005) of gross sales from $32,000,000.00 to $34,000,000.00; and
   one-quarter percent (.0025) of gross sales in excess of $34,000,000.00"

as contemplated by the Extension.

3.   Any capitalized terms not defined herein shall have the meanings assigned to them in the Extension and/or the Amendment.

4.   The Extension and the Amendment, as hereby supplemented, are ratified, confirmed and continued.

5.   This Agreement shall bind and benefit Current Landlord and Tenant, their successors and assigns, and Successor Landlord, his heirs, administrators, executors, successors and assigns.

6.   Each party executing this Agreement represents and warrants that they are a party hereto, or an agent of a party hereto, duly authorized to execute this Agreement on behalf of such party and to bind that party to the performance of such party's obligation hereunder.

EXECUTED as of the date first herein specified.

CURRENT LANDLORD:

WASHINGTON NATIONAL INSURANCE COMPANY

By: _____
                        President

Its: _____Vice President_____

Attest: _____

Its: _____J. W. Craig_____
        Assistant Secretary

SUCCESSOR LANDLORD:

_____
Jack Fiorella III

TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
        W. H. Holman, Jr., President

Attest: _____
        Roger P. Friou, Secretary

<u>FIFTH AGREEMENT AMENDING LEASE</u>

THIS IS AN AGREEMENT ("Agreement") dated January __11__, 1995, by and between JACK FIORELLA III, an individual ("Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation ("Tenant").

AMENDING the lease and lease agreement dated February 11, 1982, between Larry Tiffee, an individual, Landlord's predecessor, and Tenant, as heretofore supplemented, amended and extended ("Lease"), covering that certain store building and its appurtenances known as Sack and Save #68, 5605 HS Hwy 15 North ("Premises"), which Premises are located in Greenwood Plaza Shopping Center in the City of Meridian, County of Lauderdale, and State of Mississippi ("Shopping Center").

WHEREAS, Tenant desires to secure the right to sublease a portion of the common area of the Shopping Center for the construction and operation of a gas center on the terms, covenants, conditions and agreements hereinafter set forth; and

WHEREAS, Landlord is willing to grant to Tenant the right to sublease a portion of the common area of the Shopping Center for the construction and operation of a gas center on the terms, covenants, conditions and agreements hereinafter set forth.

NOW THEREFORE, for and in consideration of the terms, covenants, conditions and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of all of which is hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows:

1. Effective as of the date hereof:

    A.  Paragraph 34 of the Lease shall be deleted and the following substituted in lieu thereof:

        "Tenant shall have the right to sublet that portion of the common area of the Shopping Center outlined in green on EXHIBIT A attached hereto and made a part hereof ("Land") to Pump and Save, Inc., a Mississippi corporation ("Pump and Save"), for the construction of a gas center for the sale of motor vehicle fuels in accordance with the plans attached hereto as EXHIBIT B and made a part hereof ("Gas Center",) and Landlord hereby consents thereto. The Gas Center shall be constructed and maintained by Pump and Save, at its sole cost and expense. All improvements, trade fixtures, equipment, signs and accessories related to the Gas Center, regardless of how same are affixed to the Land, shall remain the property of Pump and Save, may be removed by Pump and Save at any time, and shall never become part of the realty; provided, however, Pump and Save shall repair any damage caused by such removal and restore the Land to substantially the condition in which the same was immediately prior to the erection of the Gas Center. Tenant represents and warrants to Landlord that Pump and Save: (i) shall pay all costs of any kind and description levied against the Gas Center including, but not limited to, all real estate, personal property and other taxes and assessments, utility bills, and other governmental charges; (ii) shall remove all improvements, trade fixtures, equipment, signs and accessories related to the Gas Center upon any termination of this Lease or if the Gas Center is "permanently closed" (as that term is defined in Section 280.71 of the State of Mississippi Underground Storage Tank Regulations adopted March 22, 1989), and shall repair any damage caused by such removal and restore the Land to substantially the condition in which the same was immediately prior to the erection of the Gas Center; (iii) shall comply with all laws, ordinances, orders, rules, regulations, and other governmental requirements relating to the erection, operation and removal of the Gas Center by Pump and Save including those relating to public health and safety and protection of the environment, and all rules, orders, regulations, and requirements of the National Board of Fire Underwriters or any similar body having jurisdiction over such use and occupancy; and (iv) shall indemnify and hold harmless Landlord from and against any and all losses, claims, damages, penalties, and liability, including court costs and reasonable attorney's fees, arising, directly or indirectly, out of the use, generation, storage, release, or disposal of hazardous materials by Pump and Save including, but not limited to, leakage from underground storage tanks and spills of hazardous materials, and from and against the cost of any required repair, cleanup, or detoxification and any closure or other required plans to the full extent that such action is attributable, directly or indirectly, to the presence or use, generation, storage, release, threatened release, or disposal of hazardous materials by Pump and Save. The term "hazardous materials" as used in this paragraph shall include, but is not limited to, substances defined as "hazardous substances", "hazardous materials" or "toxic substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. # 9601, et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. # 1801, et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. # 6901, et seq.; and those substances defined as hazardous, toxic, hazardous wastes, toxic wastes, or as hazardous or toxic substances by any law or statute now or after this date in effect in the State of Mississippi; and in the regulations adopted and publications promulgated pursuant to those laws. Landlord and Tenant hereby agree that sales made from the Gas Center shall not be included in gross receipts for the purposes of computing the additional percentage payment, if any, payable by Tenant pursuant to the terms of this Lease. It is further understood and agreed that, notwithstanding anything contained hereinabove to the contrary, Tenant shall indemnify and hold Landlord harmless from any and all claims, losses, damages, penalties and liabilities, including court costs and reasonable attorneys' fees arising, directly or indirectly, out of, or in connection with, any failure of Pump and Save to perform any of its obligations hereunder."

    B.  The plot plan attached to the Lease, as heretofore amended, shall be deleted and that attached hereto as EXHIBIT A shall be substituted in lieu thereof.

    C.  The plans for the Gas Center attached hereto as EXHIBIT B shall be added to the Lease as EXHIBIT B.

2. Effective as of April 1, 1995:

    A.  The initial term of the Lease shall be further extended for an additional period of thirteen (13) months, and shall end on March 31, 2110.

1

B.   Tenant shall pay to Landlord as rent for the Premises, the sum of Twenty Six Thousand and 00/100 Dollars ($26,000.00) per month in lieu of the rent set forth in Paragraph 8 of the lease agreement, as heretofore amended.

3.   Within thirty (30) days after the date hereof, Tenant shall cause Pump and Save to apply for all necessary approvals and permits for the construction and operation of the gas center contemplated herein. In the event Pump and Save is unable to secure all such approvals and permits on or before January 31, 1995, then, in that event, this Agreement shall terminate forthwith and the terms, covenants, conditions and agreements set forth herein shall be null and void and shall have no further force or effect.

4.   The Lease, as heretofore supplemented, amended and extended, and hereby amended and extended, is ratified, confirmed and continued.

5.   This Agreement shall bind and benefit Landlord, his heirs, executors, administrators, successors and assigns, and Tenant, its successors and assigns.

6.   This Agreement, including all Exhibits hereto, merges and supersedes all prior representations and agreements, and constitutes the entire contract between Landlord and Tenant concerning the subleasing of a portion of the common area of the Shopping Center for the construction and operation of a gas center and the consideration therefor.

7.   Each party executing this Agreement represents and warrants that they are a party hereto, or an agent of a party hereto, duly authorized to execute this Agreement on behalf of such party and to bind that party to the performance of such party's obligation hereunder.

EXECUTED as of the date first herein specified.

LANDLORD:

Jack Fiorella III

TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
    W. H. Holman, Jr., President

Attest: _____
        Roger P. Friou, Secretary

LENDER'S CONSENT AND AGREEMENT

THE UNDERSIGNED, Protective Life Insurance Company ("Lender"), being the owner and holder of a Deed of Trust and Security Agreement which encumbers the Premises and Shopping Center described in the foregoing Agreement, hereby: (1) consents to said Agreement; and (2) agrees to be bound by the provisions thereof; all in accordance with the provisions of Paragraph 5(e) of that certain Subordination, Attornment and Nondisturbance Agreement between Lender and Tenant dated February 3, 1994.

IN WITNESS WHEREOF, Lender has executed this Consent and Agreement this 20th day of January, 1995.

LENDER:

PROTECTIVE LIFE INSURANCE COMPANY

By: _____
    A. S. Williams, III, Treasurer

Attest: _____
        Richard C. Fruechtenicht,
        Assistant Secretary

2



PROPOSED SITE PLAN

SACK AND SAVE
STORE NO. 60
MERIDIAN, MISSISSIPPI

JITNEY JUNGLE
STORES OF AMERICA
ENGINEERING SERVICES

**EXHIBIT A**



EXHIBIT B





PUMP AND SAVE
STORE NO. 68
MERIDIAN, MISSISSIPPI

JITNEY JUNGLE
STORES OF AMERICA
ENGINEERING SERVICES



## ASSIGNMENT AND ASSUMPTION OF LEASE
### (Store with Gas Station)
### (Mississippi)

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (this "Agreement") is made and entered into this 11th day of January, 2001, by and among JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation, and PUMP AND SAVE, INC., a Mississippi corporation, (collectively, the "Assignor"), and WINN-DIXIE MONTGOMERY, INC., a Florida corporation (the "Assignee").

### WITNESSETH:

WHEREAS, the Assignor is the tenant or subtenant, as applicable, under those certain lease documents listed on Exhibit A attached hereto (the "Lease"), covering those certain premises known as Store #J68 located in the City of Meridian, Lauderdale County, State of Mississippi and having the following address:915 Hwy 19 N., Meridian, MS 39307 and Gas Station #J20068 located in the City of Meridian, Lauderdale County, State of Mississippi and having the following address:915 Hwy 19 N., Meridian, MS 39307; and

WHEREAS, the Assignor currently has its case under chapter 11 of the Bankruptcy Code pending before the United States Bankruptcy Court for the Eastern District of Louisiana and the case number for such proceeding is 99-17191; and

WHEREAS, the Assignor desires to sell, transfer and assign to the Assignee all of the Assignor's right, title and interest in and to the Lease; and

WHEREAS, the Assignee desires to accept the sale, assignment and transfer of all the Assignor's right, title and interest in and to the Lease upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants set forth herein and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

ARTICLE 1. Assignment. The Assignor hereby sells, assigns and transfers to the Assignee all of the Assignor's right, title and interest in and to the Lease.

ARTICLE 2. Assumption of Obligation. The Assignee hereby accepts the sale, assignment and transfer of the Assignor's right, title and interest in and to the Lease, and agrees and assumes to pay all rent and other obligations of the Assignor due under the Lease and to faithfully perform all other covenants, stipulations, agreements and obligations of the Assignor under the Lease accruing on and after January 11, 2001 (the "Transfer Date"), or otherwise attributable to the period commencing on the Transfer Date and continuing thereafter. The Assignor shall be responsible for all such obligations under the Lease accruing prior to the Transfer Date.

ARTICLE 3. Binding Effect. This Agreement shall be binding upon the successors and assigns of the parties. The parties shall execute and deliver such further and additional instruments, agreements and other documents as may be necessary to evidence or carry out the provisions of this Agreement.

ARTICLE 4. Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the State of Mississippi.

ARTICLE 5. Headings. The headings of the sections of this Agreement, where employed, are for the convenience of reference only and do not form a part hereof and in no way modify, interpret or construe the meanings of the parties.

ARTICLE 6. Authority. Each party executing this Agreement represents and warrants that he or she is a proper party hereto, or an agent of a party hereto duly authorized to execute this Agreement on behalf of such party and to bind that party to the performance of such party's obligations hereunder.

ARTICLE 7. Jurisdiction. This Agreement and all matters relating thereto are subject to the exclusive jurisdiction of the U.S. Bankruptcy Court for the Eastern District of Louisiana.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the dates of the acknowledgments below but effective as of the Transfer Date.

ASSIGNOR -

JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation

By: _____
Name: _Michael A. Feder_____
Title: _Chief Restructuring Officer____

PUMP AND SAVE, INC., a Mississippi corporation

By: _____
Name: _Michael A. Feder_____
Title: _Chief Restructuring Officer____

**ASSIGNEE** -

**WINN-DIXIE MONTGOMERY, INC.**, a Florida corporation

By: _Dennis M. Sheehan_ (signature)
Name: _Dennis M. Sheehan_
Title: _VICE_ President

STATE OF ___IL___ )

COUNTY OF ___COOK___ )

    Personally appeared before me, the undersigned authority in and for said County and State, within my jurisdiction, the within named _Michael A. Fetal_, duly identified before me, who acknowledged that he or she is _Chief Restructuring Officer_ of **JITNEY-JUNGLE STORES OF AMERICA, INC.**, a Mississippi corporation corporation, and that for and on behalf of said corporation, and as its act and deed, he or she executed the above and foregoing instrument after having been duly authorized by said corporation so to do.

    Given under my hand and official seal on this _10TH_ day of _January_, 2001.

                                 _____
                               NOTARY PUBLIC

MY COMMISSION EXPIRES:

_8/1/2003_

> "OFFICIAL SEAL"
> Michael West
> Notary Public, State of Illinois
> My Commission Expires Aug. 1, 2003

**[NOTARY ACKNOWLEDGMENTS CONTINUED ON NEXT PAGE]**

APR-26-2001 THU 11:37 AM WINN DIXIE          FAX NO. 9047835646          P. 05

STATE OF ___IL___ )

COUNTY OF ___COOK___ )

Personally appeared before me, the undersigned authority in and for said County and State, within my jurisdiction, the within named _Michael A. Ferro_, duly identified before me, who acknowledged that he or she is _Chief Administrative Officer_ of **PUMP AND SAVE, INC.**, a Mississippi corporation, and that for and on behalf of said corporation, and as its act and deed, he or she executed the above and foregoing instrument after having been duly authorized by said corporation so to do.

Given under my hand and official seal on this _10th_ day of _January_, 2001.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

___8/1/2003___

> **OFFICIAL SEAL**
> Michael West
> Notary Public, State of Illinois
> My Commission Expires Aug. 1, 2003



STATE OF ___IL___ )

COUNTY OF ___COOK___ )

Personally appeared before me, the undersigned authority in and for said County and State, within my jurisdiction, the within named Dennis M. Sheehan, duly identified before me, who acknowledged that he is the ___Vice___ President of **WINN-DIXIE MONTGOMERY, INC.**, a Florida corporation, and that for and on behalf of said corporation, and as its act and deed, he executed the above and foregoing instrument after having been duly authorized by said corporation so to do.

Given under my hand and official seal on this _10th_ day of _January_, 2001.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

___8/1/2003___

> **OFFICIAL SEAL**
> Michael West
> Notary Public, State of Illinois
> My Commission Expires Aug. 1, 2003

Exhibit A

Store No. 68 Lease
915 Highway 19 North
Meridian, Mississippi 39307

    Recorded Lease dated February 11, 1982
    Lease Agreement dated February 11, 1982
    Agreement Supplementing and Amending Lease dated November 17, 1983
    Agreement Amending Lease dated September 4, 1985
    Agreement Amending and Extending Lease dated August 30, 1993
    Fourth Agreement Amending Lease dated November 23, 1993
    Subordination, Non-Disturbance and Attornment Agreement dated February 3, 1994
    Agreement Supplementing Lease dated February 4, 1994
    Fifth Agreement Amending Lease dated January 11, 1995
    Landlord's Subordination and Consent, dated February 29, 1996

Store No. 68 Gas Station
915 Highway 19 North
Meridian, Mississippi 39307

    Sublease dated September 25, 1989
    Assignment dated December 10, 1989
    Agreement Extending Sublease dated September 13, 1993
    Agreement Extending Sublease dated November 9, 1998

**EXHIBIT C**

## State of Mississippi

Real Property
Tax Year 2004

LAUDERDALE
STANLEY SHANNON/TAX COLLECTOR
MERIDIAN         MS 39302
Paid by: JACK FIORELLA 107

Drawer: 9
User: TLW
Paid: Check
NCO: 53

LAKELAND ACRES BLOCK 1
LOTS 6 TO 12 & 14 TO 17 INCL &
PT LOT 18 BLOCK 2 LOTS 21 TO
24 INCL & PT VACATED AVE LESS
PT LOT 24, DESC DB
LAKELAND ACS
DEED BK-1522 PG-604   DT-04/03/1998

| PPIN: 10886 | Receipt #44,78-1 | Date: 05/13/2005 | 050513 1150 TLW ETHTLW |
| --- | --- | --- | --- |
| Tax District | Total Acres | | |
| 5110 | | | |
| Parcel Number 07614118100001 | Forest Acres | Sec. Twn. Rng. 14  06  15 | |

| True Assessed 216,000 32,400 | Class 1 Value | Class 2 Value | Total Value 218,000 32,400 | | |
| --- | --- | --- | --- | --- | --- |

| Type of Tax | Millage | Gross Tax Amount | Regular Homestead | Special Exemption | Net Tax |
| --- | --- | --- | --- | --- | --- |
| COUNTY | 44.7800 | 1,657.60 | | | 1,657.60 |
| CITY | 50.0800 | 1,622.59 | | | 1,622.59 |
| SCHOOL | 64.3700 | 2,085.59 | | | 2,085.59 |

**ACCOUNT PAID IN FULL**

GREENWOOD PLAZA LTD
C/O FELLERS SCHEWE SCOTT & ROBERTS
P O BOX 450233
ATLANTA, GA 31145

| Total Tax Due | Tax Amount Paid | |
| --- | --- | --- |
| | Penalty Paid | $5,159.38 |
| | Printer Fee Paid | |
| | Excess Bid Paid | 5,206.37 |
| | Total Paid this Receipt | |
| | Other Tax Payments | |
| | *Grand Total Paid* | 5,365.75 |

Received by: ___



State of Mississippi

LAUDERDALE
STANLEY SHANNON/TAX COLLECTOR
MERIDIAN            MS 39302
Paid by: JACK FIORELLA 107

Real Property
Tax Year 2004

Drawer: 9
User: TLW
Paid: Check
MCO: 53.

LAKELAND ACRES BLOCK 2  LRNMODP  38-0
PT LOTS 14,15,16,18,19 & 20
DESC DB 1328 P.642
LAKELAND ACS
DEED BK-1522 PG-604 DT-04/03/1998

| PPIN: 11063 | Receipt # 14479-1 | Date: 05/13/2005 | 656515 1148 TLW C1M1TLW |

| Parcel Number | | Sec. Twn. Rng. |
| 07614218100021303 | | 14   06   15 |
| PROP ADDR: 915 HWY 19 N | | |

| Tax District | | | | | Regular Homestead | Special Exemption | |
| 5110 | Total Acres | Forest Acres | Total Value | Gross Tax Amount | | | Net Tax |

| True Assessed | Class 1 Value | Class 2 Value | | | Tax Amount Paid | | |
| 66,000 9,900 | 990,000 148,500 | 1,056,000 168,400 | | | | | $25,223.62 |

| Type of Tax | | | Millage | | Penalty Paid | | 25,223.62 |
| COUNTY | | | 44.7900 | 7,094.74 | Printer Fee Paid | | 1,008.95 |
| CITY | | | 50.0800 | 7,932.67 | Excess Bid Paid | | |
| SCHOOL | | | 64.3700 | 10,196.21 | Total Paid this Receipt | | 7,094.74 |
| | | | | | | | 7,932.67 |
| | | | | | | | 10,196.21 |
| | | | | | Other Tax Payments | | 26,232.57 |
| | | | | | *Grand Total Paid* | | 26,232.57 |

| | | | Total Tax Due ............. | | | | 26,232.57 |

**ACCOUNT PAID IN FULL**

GREENWOOD PLAZA LTD
C/O FELLERS SCHEWE SCOTT & ROBERTS
P O BOX 450233
ATLANTA, GA 31145

FOLD

Received by: _____