**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

### NOTICE OF HEARING AND FILING

1. Pursuant to the Amended Motion for Order (I) to Sell Leasehold Interests in Targeted Stores Free and Clear of Liens, Claims and Interest and Exempt from Taxes, (II) to Assume and Assign Leases, (III) to Reject Targeted Leases the Debtors are unable to Sell, and (IV) Granting Related Relief, filed with the Court on August 1, 2005 (the "Motion") (Docket No. 2707), Winn-Dixie, Inc. and its subsidiaries and affiliates as debtors and debtors-in-possession (collectively, the "Debtors"), provide notice of their intent to enter into the attached rejection agreement with WD Tampa Trust for the Debtors' lease of store number 636 located in Tampa, Florida for $150,000.00 (the "Sale").

### Notice of Hearing

2. A hearing to approve the Sale is scheduled for **September 22, 2005 at 1:00 p.m. E.T.** before the Honorable Jerry A. Funk, United States Bankruptcy Judge for the Middle District of Florida, 300 North Hogan Street, Courtroom 4D, Jacksonville, Florida 32202.

Dated:  September 16, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By   *s/ D. J. Baker* | By   *s/ Cynthia C. Jackson* |
|        D. J. Baker |        Stephen D. Busey |
|        Sally McDonald Henry |        James H. Post |
|        Rosalie Gray |        Cynthia C. Jackson (FBN 498882) |
| Four Times Square | 225 Water Street, Suite 1800 |
| New York, New York 10036 | Jacksonville, Florida  32202 |
| (212) 735-3000 | (904) 359-7700 |
| (917) 777-2150 (facsimile) | (904) 359-7708 (facsimile) |
| djbaker@skadden.com | cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

00508486

## LEASE REJECTION AGREEMENT

**THIS LEASE REJECTION AGREEMENT** (the "Agreement") made as of the 9th day of August, 2005, by and between **WD TAMPA TRUST,** a Delaware business trust ("Landlord"), and **Winn-Dixie Stores, Inc., a Florida Corporation** ("Tenant").

### Recitals

A. Landlord and Tenant entered into a lease dated December 2, 1996 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 636, located at 8702 Hunter Lake Drive, Tampa, Hillsborough County, Florida, more fully described in the Lease (the "Premises").

B. On February 21, 2005, Winn-Dixie, Inc., and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C. On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures"). The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D. On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E. On August 1, 2005, Tenant filed a motion seeking, *inter alia*, authority to assume or reject certain leases (as subsequently amended, the "Sale Motion") pursuant to the procedures described therein.

F. On August 9, 2005, pursuant to the Bidding Procedures, the Debtors conducted an auction for the sale of assets, including the Lease, and the Landlord was the successful bidder for the Lease.

G. Tenant desires to reject the Lease and end the Lease term effective as of the later of: (i) the date of Bankruptcy Court approval of the rejection of the Lease; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale (the "Sale Termination Date") at the Premises (the "Rejection Date").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. **Rejection Date.** Subject to the provisions of this Agreement and as contemplated by the Sale Motion, the Debtors shall reject the Lease by delivering to Landlord a notice of termination within ten days after the Sale Termination Date (the "Termination Notice"). The Termination Notice shall provide, *inter alia*, that the effective date and time of rejection of the

Lease and tenancy created by the Lease will be 11:59 p.m., E.T., on the Rejection Date, at which time the Lease and the Lease term will have ended and terminated. Tenant will continue to pay and remain liable for all rent, additional rent, and any and all other obligations, if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Rejection Date. After the Rejection Date, neither party will have any further rights or obligations under the Lease.

2. **Surrender of Premises**. Tenant will vacate and surrender the Premises on or before the Rejection Date and leave it in its "As Is" condition. Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises. Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises. This provision will survive the termination of the Lease. Notwithstanding anything to the contrary in the Lease, the Tenant shall not have the right and shall not remove, or allow the removal, whether by sale or otherwise, of any items of furniture, fixtures, trade fixtures or equipment located at the Premises which are owned by Tenant and used in connection with the operation of Tenant's business at the Premises (collectively, the "FF&E") other than those items identified on Schedule 1 of this Agreement and other than items removed from the Premises in the ordinary course of business. Tenant acknowledges and agrees that in consideration of the Rejection Fee, Tenant will convey the FF&E to Landlord on the Rejection Date by bill of sale (without warranty or representations as to merchantability or fitness for a particular purpose) free and clear of any and all liens or other encumbrances to the extent permitted under the Bankruptcy Code.

3. **Right to "Go Dark" and Conduct Store Closing Sale.** Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Rejection Date. Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Rejection Date in accordance with the Bankruptcy Court's Orders approving store closing sales entered July 27, 2005 (docket no. 2537) and August 5, 2005 (docket no. 2830).

4. **Rejection Fee.** Within three days after the Landlord's receipt of the Rejection Notice, the Landlord will pay the Tenant a fee of $150,000 (the "Rejection Fee") by check, payable to Tenant, as consideration for entering into this Agreement. The Landlord shall be entitled to credit (the "Rejection Fee Credit") against the Rejection Fee an amount equal to $83,987.06, which consists of (i) a pro-rated portion of an assessment owed by Tenant pursuant to the Lease to the Hunter's Green Community Association in the amount of $9,280.44, and (ii) a pro-rated portion of the 2005 real property taxes in the amount of $69,509.86 (collectively, the "2005 Obligations"). The parties acknowledge that the Rejection Fee Credit is calculated through September 22, 2005. To the extent the Rejection Date occurs on a different date, the parties agree that an adjustment to the Rejection Fee Credit shall be made, and either Landlord will owe Tenant monies (if the Rejection Date occurs before September 22, 2005) or Landlord will be entitled to an administrative claim under Section 503(b) of the Bankruptcy Code (if the Rejection Date occurs after September 22, 2005) (the "Rejection Fee Credit Adjustment").

**Lease rejection agreement for store 636**

5. **Reimbursement of Prepaid Expenses.** Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Rejection Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Rejection Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease.

6. **Irrevocable Bid.** Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord. Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures. In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7. **Representations.** Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement. Tenant has not assigned, transferred, or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

8. **Release.** As of the Rejection Date, except as to the obligations of Tenant pursuant to this Agreement and as to the Rejection Fee Credit set forth in this Agreement, Landlord waives, releases and discharges Tenant, its successors and assigns, its estate, affiliates and the Debtors from (i) any claims arising from the 2005 Obligations, except for any Rejection Fee Credit Adjustment, and (ii) all lease rejection damage claims under Section 502 of the Bankruptcy Code. To the extent Landlord has filed, or files, a proof claim with respect to the 2005 Obligations or to the lease rejection damage claims, Landlord consents to the disallowance and expungement of such claim, with prejudice, except that any claim reflecting any Rejection Fee Credit Adjustment shall not be expunged.

9. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

10. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

11. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

Lease rejection agreement for store 636

12. **Bankruptcy Court Approval.** The Tenant's and Landlord's obligations are subject to approval by the Bankruptcy Court, and Landlord and Tenant agree to cooperate in obtaining such approval.

13. **Discharge of Memorandum.** If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

14. **Jurisdiction.** The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

15. **Governing Law**. This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

**IN WITNESS WHEREOF,** the Landlord and Tenant have executed this Agreement as of the day and year first above written.

Tenant:                                                         Landlord:

Tenant: **Winn-Dixie Stores, Inc.**                             Landlord: **WD Tampa Trust**

By: _____                                      By: Paragon Affiliates, Inc.
Name: _____                                      Its: _PRESIDENT_
Its _____

                                                                By: [signature]
                                                                Name: Robert Heller
                                                                Its: President

Lease rejection agreement for store 636

# SCHEDULE 1

## Schedule of Excluded Equipment

# SCHEDULE 1

## Schedule of Excluded Equipment

Leased Equipment Register

| Center | Mfg | Type | Model | Description | Quantity | Serial. | Install Date | Lessor | Lease . | Rent Amo | Lease Ter | Expire Date | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0636 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0855 | 4/15/2001 | CLC | 28093 | $36.60 | 48 | 5/31/2005 | POS |
| 0636 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0687 | 4/15/2001 | CLC | 28093 | $36.60 | 48 | 5/31/2005 | POS |
| 0636 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDLH6 | 4/15/2001 | CLC | 28093 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 0636 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDLL3 | 4/15/2001 | CLC | 28093 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 0636 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 0636 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 0636 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | GLJL11 | 7/17/2002 | CLC | 32873 | $181.37 | 36 | 7/31/2005 | Servers |
| 0636 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | 47CK11 | 7/17/2002 | CLC | 32873 | $68.44 | 36 | 7/31/2005 | Servers |
| 0636 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 7/17/2002 | CLC | 32873 | $0.00 | 36 | 7/31/2005 | Personal Computers |