# EXHIBIT 1



# LEASE

STORE #811

## US Highway #1 and Highway #98
# WAKE FOREST, WAKE COUNTY, NORTH CAROLINA

# TABLE OF CONTENTS

Page No.

1.    DEFINED TERMS ................................................. 1

2.    DEMISE OF LEASED PREMISES; PRIORITY OF LEASE ...................... 1

3.    TENANT'S EQUIPMENT ............................................. 1

4.    TERM ....................................................... 1

5.    RENT ....................................................... 2
      (a)    Basic Rent ............................................. 2
             (c)    Additional Rent ................................. 3
             (d)    ....................................................... 3
Net Lease; No Setoff or Counterclaim Against Rent ...................... 3

6.    UNCONDITIONAL PAYMENT OBLIGATION; NON-TERMINABILITY ............. 3
      (a)    No Termination of Lease; No Defense to Tenant's Obligations ....... 3
      (b)    Continuing Obligations of Tenant ............................ 3
      (c)    Tenant's Waivers ......................................... 3

7.    TITLE; SURVEY; ENVIRONMENTAL AUDIT ............................. 4
      (a)    ....................................................... 4
      (a)    Liens ................................................. 6
      (c)    Encroachments .......................................... 6
      (d)    Condition of Leased Premises ............................... 6
      (e)    Assignment of Warranties, Guaranties, Indemnities ............. 7
      (f)    Granting of Easements .................................... 7
      (g)    Conveyances for Public Purposes ........................... 8

8.    USE AND MAINTENANCE OF PREMISES; QUIET ENJOYMENT ............... 10
      (a)    Use ................................................. 10
      (b)    Maintenance ........................................... 10
      (c)    Replacement Equipment ................................... 11
      (d)    Landlord's Covenant of Quiet Enjoyment ...................... 11
      (e)    Landlord's Right of Entry ................................. 11
      (f)    Subordination, Nondisturbance and Attornment ................ 11

9.    SIGNS. ..................................................... 12

10.   PURCHASE OFFER; PROCEDURE ON PURCHASE ....................... 12
      (a)    Title to be Conveyed ..................................... 12
      (b)    Payment of Purchase Price; Conveyance Documents; Other Costs ... 12

11.   TENANT'S SUBSTITUTION OPTION ................................. 12

12.   PAYMENT OF IMPOSITIONS AND ADDITIONAL OBLIGATIONS;  COMPLIANCE WITH
LAW ......................................................... 14
      (b)    Compliance with Law ..................................... 15

13.   INSURANCE .................................................. 15
      (a)    Type of Insurance ....................................... 15
      (b)    Insurance Requirements; "Self-Insurance" .................... 15

o:\transfer\raleigh\0811\freebond.is6
August 7, 1997                                      i

|  | (c) | Mortgagee Loss Payable Clauses; Cancellation of Insurance | 16 |
|  | (d) | Payment of Premiums; Policy Replacements | 16 |
|  | (e) | Blanket Policies | 16 |
| 14. | | PROPERTY LOSS | 16 |
|  | (a) | Property Loss Claims | 16 |
|  | (b) | Termination Upon Loss | 17 |
| 15. | | CONDEMNATION | 17 |
|  | (a) | Assignment of Condemnation Award | 17 |
|  | (b) | Total or Substantial Condemnation | 17 |
|  | (c) | Partial Condemnation | 18 |
|  | (d) | Landlord's Equipment Condemnation | 18 |
|  | (e) | Proceedings | 18 |
| 16. | | ECONOMIC ABANDONMENT | 18 |
| 17. | | RESTORATION | 19 |
| 18. | | ASSIGNMENT AND SUBLEASING; VACATION OF LEASED PREMISES | 19 |
| 19. | | PERMITTED CONTESTS | 19 |
| 20. | | ENVIRONMENTAL COVENANTS | 20 |
| 21. | | INDEMNIFICATION | 21 |
| 22. | | DEFAULT PROVISIONS | 21 |
| (a) | | Events of Default | 21 |
| (b) | | Landlord's Remedies Upon Tenant Default | 23 |
| (c) | | No Relief of Obligations | 23 |
| (d) | | Measure of Damages | 24 |
| 23. | | ADDITIONAL RIGHTS OF LANDLORD | 24 |
| (a) | | Non-Exclusive, Cumulative Remedies | 24 |
| (b) | | Tenant's Waiver of Redemption | 24 |
| (c) | | Costs Upon Event of Default and Litigation | 24 |
| 24. | | NOTICES | 24 |
| 25. | | ESTOPPEL CERTIFICATE | 26 |
| 26. | | SURRENDER AND HOLDING OVER | 26 |
| 27. | | NO MERGER OF TITLE | 26 |
| 28. | | ALTERATION AND EXPANSION | 26 |
| (a) | | Alterations Generally | 26 |
| (b) | | Alterations Involving Expansion of Improvements | 27 |
| 29. | | CHANGE OF CONTROL | 28 |
| 30. | | MISCELLANEOUS | 28 |

## LEASE AGREEMENT

**THIS LEASE AGREEMENT** (this "Lease") is made this September 4, 1997, between **STATE PROPERTIES, LLC**, a North Carolina limited liability company ("Landlord") and **WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("Tenant"). "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors, and assigns of the respective parties.

**IN CONSIDERATION** of the rents and mutual covenants herein contained to be paid and performed, Landlord and Tenant agree as follows:

1.     **DEFINED TERMS.** Capitalized terms as used in this Lease will have the meanings assigned to such terms as set forth on attached Exhibit "A".

2.     **DEMISE OF LEASED PREMISES; PRIORITY OF LEASE.** Effective on the Commencement Date, Landlord hereby demises and lets unto Tenant, and Tenant hereby takes and leases from Landlord, for the term or terms and upon the provisions hereinafter specified the following described property (collectively, the "Leased Premises"): (i) real property more particularly described on attached Exhibit "B", together with all easements, rights and appurtenances thereunto belonging or appertaining (the "Land"), (ii) the store building approximately 222 feet in width by 231 feet in depth, together with a front vestibule, rear receiving room(s), exterior pads at the rear for installation of freezers and coolers (collectively, the "Store")and all other structures and other improvements now located or hereafter constructed on the Land as more particularly shown on the attached Site Plan prepared by Rice & Associates dated July 14, 1997 (collectively, the "Improvements"), and (iii) the machinery, equipment and fixtures described on attached Exhibit "C", and additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease ("Landlord's Equipment"). This Lease is subject to the Permitted Encumbrances and, except to the extent that Landlord, Tenant and Mortgagee enter into a subordination agreement pursuant to paragraph 8(f) below, is prior to the Lien of any Mortgage.

3.     **TENANT'S EQUIPMENT.** The machinery, equipment and fixtures described on attached Exhibit "D", and additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease, and Tenant's trade fixtures and equipment ("Tenant's Equipment") are and will remain the property of Tenant, and are intended by Landlord and Tenant to constitute personal property of Tenant, and not fixtures, attachments or Improvements or other interest in real property, whether or not the same are attached or affixed to the Leased Premises and whether or not the same are deemed to constitute real property under State law.

4.     **TERM.** Subject to the provisions of this Lease, Tenant shall have and hold the Leased Premises for an initial term (the "Initial Term") commencing on the Commencement Date and ending on the date which is exactly twenty (20) years following the Commencement Date. As long as no Event of Default then exists, Tenant shall have the option, exercisable in accordance with the following provisions, to extend the Term for five (5) additional terms (each an "Extended Term") of five (5) years each by giving notice to Landlord not less than 90 days prior to the expiration of the then current Term. If Tenant does not give any such notice to extend to Landlord in a timely fashion, the Term shall automatically terminate at the end of the then current Term. Any such Extended Term shall be subject to all of the provisions of this Lease, all of which shall continue in full force and effect. If Tenant does not exercise an option for an Extended Term, Landlord shall have the right during the remainder of the then current Term (i) to advertise the availability of the Leased Premises for sale or for reletting, and to erect upon the Leased Premises signs indicating such availability (provided that such signs do not unreasonably interfere with the use of the Leased Premises by Tenant), and (ii) to show the Leased Premises to prospective purchasers or tenants at reasonable times during normal business hours upon reasonable notice to Tenant. If Tenant

o:\transfer\raleigh\0811\freebond.fr6

fails to timely exercise its right to extend the Term for any Extended Term, then Tenant's right to extend the Term for any further Extended Terms shall terminate and be null and void.

5.  **RENT.** (a)  <u>Basic Rent</u>.  Tenant shall pay to Landlord, as rent for the Leased Premises during the Term, the amounts (the "Basic Rent") set forth in attached Exhibit "E", commencing on the Commencement Date, and continuing on the first day of each calendar month thereafter during the Term (said days being referred to as the "Basic Rent Payment Dates").  Basic Rent for fractional years and fractional months occurring at the beginning and end of the Term shall be pro-rated based upon a 365 day year.

(b)  <u>Percentage Rent</u>.  In addition, beginning on the Commencement Date, as hereinafter defined, Tenant shall pay Landlord percentage rent equal to the amount, if any, by which one percent (1%) of Gross Sales (as hereinafter defined) exceeds Basic Rent ("Percentage Rent").  Any Percentage Rent which may become due shall be payable within sixty (60) days after the expiration of each Fiscal Year, as hereinafter defined.  However, upon final termination of the Term, any Percentage Rent due shall be payable within sixty (60) days after such termination or expiration of the Term.  The Percentage Rent for each Fiscal Year shall be calculated separately and without reference to any other Fiscal Year.  For purposes of calculation the Percentage Rent due hereunder, Tenant's fiscal year shall be approximately July 1st to June 30th of each year (the "Fiscal Year").

"Gross Sales" shall mean the aggregate sales price of all merchandise sold in or from the Store by Tenant during each fiscal year of the Term, both for cash and on credit (less customary reserves for bad debts).  Gross Sales shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by Tenant from the Leased Premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines, banks, automatic teller machines and public telephones; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, lottery entries, money orders, government bonds, savings stamps, or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts, or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program.  Tenant makes no representation or warranty as to the amount of Gross Sales it expects to make in or from the Leased Premises.  Landlord shall not release and shall keep confidential all information disclosed to or discovered by it concerning Gross Sales, and shall require Landlord's Auditor to keep the same confidential.  Landlord may, however, disclose Gross Sales to lenders, prospective lenders, and to prospective purchasers of the Leased Premises (collectively, "Interested Parties") provided that such Interested Parties agree in writing to keep Gross Sales information confidential.

Tenant shall keep complete and accurate books and records of its Gross Sales.  At the end of each Fiscal Year, or at the end of the Term, if it sooner occurs, Tenant shall submit to Landlord a written statement of Gross Sales for the preceding Fiscal Year.  Such statement of Gross Sales shall be treated as confidential by Landlord and shall be conclusive unless Landlord, within ninety (90) days after receipt thereof, shall give written notice to Tenant of its intent to audit Tenant's Gross Sales figures for the prior year.  The Landlord may then, at its cost and expense, cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant contracted for and paid by Landlord (the "Landlord's Auditor").  Landlord's Auditor shall provide a copy of its findings and report of audit to Tenant.  If Landlord's Auditor finds that Tenant has underpaid Percentage Rent due under this Lease, the Tenant shall pay to Landlord the amount of such underpayment within thirty (30) days of receipt of satisfactory documentation thereof from Landlord's Auditor.  Additionally, if the audit discloses that Tenant has under reported its Gross Sales by more

2

than three percent (3%), Tenant shall pay the reasonable cost of the audit. If Landlord's Auditor finds that Tenant has overpaid Percentage Rent due under this Lease, then Landlord shall promptly pay the amount of any such overpayment to Tenant.  If Landlord fails to pay promptly the amount of any such overpayment to Tenant, Tenant may deduct the same from the next succeeding payments of Basic Rent, Percentage Rent, or Additional Rent, as hereinafter defined, due under this Lease.

If the Commencement Date or the final date of the Term is other than on a regularly scheduled Rent payment date, the Rent shall be prorated to pay for the actual number of days that Rent is due.  Tenant shall pay the Basic Rent to Landlord at Landlord's address set forth above, or at such other place or to such other person as Landlord from time to time may designate to Tenant in writing, in funds which at the time of such payment shall be legal tender for the payment of public or private debts in the United States of America.

(c)    Additional Rent.  Tenant shall pay and discharge when the same shall become due, as additional rental (the "Additional Rent"), all other amounts and obligations which Tenant assumes or agrees to pay or discharge pursuant to this Lease, together with every fine, penalty, interest and cost which may be added for nonpayment or late payment thereof.  In the event of any failure by Tenant to pay or discharge any of the foregoing, Landlord shall have all rights, powers and remedies provided by law in the even of nonpayment of Basic Rent.

(d)    Net Lease: No Setoff or Counterclaim Against Rent.  This Lease is an absolutely net lease and Basic Rent, Additional Rent and all other sums payable hereunder by Tenant shall be paid without notice or demand, and without setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense.

6.    UNCONDITIONAL PAYMENT OBLIGATION; NON-TERMINABILITY.

(a)    No Termination of Lease: No Defense to Tenant's Obligations.    Except as otherwise expressly provided in this Lease, this Lease shall not terminate nor shall Tenant have any right to terminate this Lease, nor shall Tenant be entitled to any setoff, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease, nor shall the obligations of Tenant under this Lease be affected, any present or future law to the contrary notwithstanding, by reason of: (i) any damage to or destruction of the Leased Premises by any cause whatsoever, (ii) any Condemnation, (iii) the prohibition, limitation or restriction of Tenant's use of the Leased Premises, (iv) any eviction by paramount title or otherwise, (v) Tenant's acquisition of ownership of the Leased Premises other than pursuant to paragraphs 10 or 11, (vi) any Default on the part of Landlord hereunder or under any other agreement, (vii) any latent or other defect in, or any theft or loss of, the Leased Premises, (viii) the breach of any warranty of any seller or manufacturer of any of the Landlord's Equipment, or (ix) any other cause whether similar or dissimilar to the foregoing.  It is the intention of the parties hereto that the obligations of Tenant hereunder shall be separate and independent covenants and agreements, and that Basic Rent, Additional Rent and all other sums payable by Tenant hereunder shall continue to be payable in all events and that the obligations of Tenant hereunder shall continue unaffected for any reason, unless the requirement to pay or perform the same shall have been terminated pursuant to an express provision of this Lease.

(b)    Continuing Obligations of Tenant.  Tenant agrees that it shall remain obligated under this Lease in accordance with its provisions and that, except as otherwise expressly provided in this Lease, it shall not take any action to terminate, rescind or avoid this Lease, notwithstanding (i) the bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding-up or other proceeding affecting Landlord, or (ii) any action with respect to this Lease (including the disaffirmance hereof) which may be taken by Landlord in any proceeding under the Federal Bankruptcy Act or any similar federal or state law, or by any trustee, receiver or liquidator of Landlord or by any court in any such proceeding.

3

(c)     Tenant's Waivers.  Tenant waives all rights which may now or hereafter be conferred by law (i) to quit, terminate or surrender this Lease or the Leased Premises, and (ii) to any setoff, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease, except as otherwise expressly provided herein.

7.     TITLE; SURVEY; ENVIRONMENTAL AUDIT

(a)     The Leased Premises are demised and let subject to (i) the rights of parties in possession, (ii) the existing state of title as of the Commencement Date (including, without limitation, the Permitted Encumbrances), (iii) any state of facts which an accurate survey or physical inspection of the Leased Premises might show, (iv) all Legal Requirements, and (v) the condition of the Leased Premises as of the Commencement Date, all without representation or warranty by Landlord. Notwithstanding the foregoing, however,

(i)     Title.   On or before fifteen (15) days after the date on which the last of both Landlord and Tenant shall have executed this Lease (the "Execution Date"), Landlord shall order from a title insurance company reasonably acceptable to Tenant (the "Title Company") and deliver to Tenant's counsel at the address provided hereunder for copies of notices, a signed title insurance commitment dated no earlier than the Execution Date naming Tenant as the proposed insured and committing to insure Tenant's leasehold and any easement rights granted to Tenant in connection therewith and shall provide Tenant with copies of all title exceptions (the "Commitment"). It shall be a condition to Tenant's obligation to pay rent under this Lease that title to Tenant's leasehold and the related easements, if any, be subject only to those exceptions that are acceptable to Tenant or to which Tenant fails to timely object (collectively, the "Permitted Exceptions"). Landlord shall deliver the Commitment to Tenant on or before sixty (60) days after the Execution Date (the "Delivery Deadline"), and Tenant shall have twenty (20) days after receiving both the Commitment and the Survey, as hereinafter defined (the "Title/Survey Review Deadline") to examine the Commitment. Tenant shall, on or before the Title/Survey Review Deadline, provide written objections, if any, to Landlord as to exceptions listed in the Commitment. If title is found to be objectionable to Tenant, Tenant shall notify Landlord in writing on or before the Title/Survey Review Deadline as to those matters to which it objects ("Tenant's Title Objection Notice"). If Tenant timely sends to Landlord Tenant's Title Objection Notice, Landlord shall have ten (10) days after the date of receipt of such Tenant's Title Objection Notice to notify Tenant in writing whether Landlord is willing, in its reasonable judgment, or able to cure the objections before the Closing ("Landlord's Title Objection Response"). If Landlord states in Landlord's Title Objection Response that it is unable or unwilling to cure such objections, then Tenant shall have thirty (30) days to elect by written notice to Landlord whether to (1) waive the unsatisfied objections and occupy the Leased Premises subject to such title defects, or (2) terminate this Lease. If Landlord states in Landlord's Title Objection Response that Landlord is willing to cure the objections stated in Tenant's Title Objection Notice, then Landlord shall use reasonable efforts to cure such objections on or before the Commencement Date. If Landlord fails to so cure such objections, then Tenant may, at its sole option, either (1) waive its objections and proceed to occupy the Leased Premises subject to the title defects; or (2) terminate this Lease. On or before the Commencement Date, Landlord, at Landlord's sole expense, shall cause the Title Company to issue to Tenant a leasehold title policy showing Landlord as the owner of the Leased Premises and insuring Tenant's leasehold and the Cross Easement subject only to the Permitted Exceptions in the amount of $500,000.00 (the "Title Policy"). If Landlord fails to timely provide the Commitment or the Title Policy, Tenant may terminate this Lease; and

4

(ii)    Survey        On or before fifteen (15) days after the Execution Date, Landlord shall order from a surveyor licensed in the state in which the Leased Premises is located and deliver to Tenant's counsel at the address provided hereunder for copies of notices, six (6) sealed copies of an actual survey of the real property comprising the Leased Premises conducted or updated within ninety (90) days of the date of the Commitment, showing all improvements currently located thereon and the projected location of the Store and the Common Areas (the "Survey"). Landlord shall deliver the Survey to Tenant on or before the Delivery Deadline. The Survey shall show the metes and bounds or plat legal description of the Leased Premises as shown on the Commitment, shall locate all exceptions shown in the Commitment that are capable of being so located, and shall bear the certificate attached hereto as Exhibit "J", and shall be otherwise sufficient to permit deletion of the survey exception from the Commitment and the Title Policy. Tenant shall have until the Title/Survey Review Deadline to review the Survey. If the Survey is found to be objectionable to Tenant, Tenant shall notify Landlord in writing on or before the Title/Survey Review Deadline as to those matters to which it objects ("Tenant's Survey Objection Notice"). If Tenant timely sends to Landlord Tenant's Survey Objection Notice, Landlord shall have ten (10) days after the date of receipt of such Tenant's Survey Objection Notice to notify Tenant in writing whether Landlord is willing, in its reasonable judgment, or able to cure the objections before the Closing ("Landlord's Survey Objection Response"). If Landlord states in Landlord's Survey Objection Response that it is unable or unwilling to cure such objections, then Tenant shall have thirty (30) days to elect by written notice to Landlord whether to (1) waive the unsatisfied objections and occupy the Leased Premises subject to such Survey defects, or (2) terminate this Lease. If Landlord states in Landlord's Survey Objection Response that Landlord is willing to cure the objections stated in Tenant's Survey Objection Notice, then Landlord shall use reasonable efforts to cure such objections on or before the Commencement Date. If Landlord fails to so cure such objections, then Tenant may, at its sole option, either (1) waive its objections and proceed to occupy the Leased Premises subject to the Survey defects; or (2) terminate this Lease. On or before the Commencement Date, as defined in this Lease, Landlord shall provide to Tenant six (6) sealed copies of the Survey revised to show the Store "as built".

(iii)    Environmental Audit.        On or before fifteen (15) days after the Execution Date, Landlord shall order and shall deliver within sixty (60) days to Tenant's counsel at the address provided hereunder for copies of notices on or before the Delivery Deadline, from an environmental consultant reasonably satisfactory to Tenant, an environmental audit of the Leased Premises addressed to Tenant, which audit analyzes, addresses, investigates, and/or reports as to those matters recommended to be included in a Phase I environmental site assessment pursuant to current ASTM standards (an "Audit"). Instead of providing the Audit, Landlord may provide a copy of an Audit issued to Landlord within the three (3) month period immediately prior to the Execution Date together with a letter from the environmental consultant which prepared such Audit stating that Tenant may rely thereon (the "Prior Audit"). Tenant shall have until the Title/Survey Review Deadline to review either the Audit or the Prior Audit. If either reveals any environmental condition not acceptable to Tenant, in its sole judgment, Tenant shall notify Landlord in writing ("Tenant's Audit Objection Notice"). Landlord shall have ten (10) days after the date of receipt of such Tenant's Audit Objection Notice to notify Tenant in writing whether Landlord is willing, in its reasonable judgment, or able to cure the objections before the Closing ("Landlord's Audit Objection Response"). If Landlord states in Landlord's Audit Objection Response that it is unable or unwilling to cure such objections, then Tenant shall have thirty (30) days to elect by written notice to Landlord whether to (1) waive the unsatisfied objections and occupy the Leased Premises subject to such Audit defects, or (2) terminate this Lease. If Landlord states in Landlord's Audit Objection Response that Landlord is willing to cure the objections stated in Tenant's Audit Objection Notice, then Landlord shall use reasonable efforts to cure such

objections on or before the Commencement Date. If Landlord fails to so cure such objections, then Tenant may, at its sole option, either (1) waive its objections and proceed to occupy the Premises subject to the Audit defects; or (2) terminate this Lease.

## 7A.    LIENS; CONDITION OF PREMISES.

(a)    Liens. TENANT SHALL NOT, DIRECTLY OR INDIRECTLY, CREATE OR PERMIT TO BE CREATED OR TO REMAIN, AND SHALL PROMPTLY DISCHARGE, ANY LIEN (OTHER THAN THE MORTGAGE, THE ASSIGNMENT, ANY PERMITTED ENCUMBRANCE, OR ANY LIEN CREATED BY OR RESULTING FROM ANY ACTION BY LANDLORD NOT CONSENTED TO BY TENANT IN ADVANCE AND IN WRITING), WHETHER CREATED OR ARISING BEFORE, ON OR AFTER THE COMMENCEMENT DATE, ON THE LEASED PREMISES OR ANY BASIC RENT, ADDITIONAL RENT OR ANY OTHER SUMS PAYABLE BY TENANT UNDER THIS LEASE. NOTICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE LIABLE FOR ANY LABOR, SERVICES OR MATERIAL FURNISHED OR TO BE FURNISHED TO TENANT, OR TO ANYONE HOLDING THE LEASED PREMISES THROUGH OR UNDER TENANT, OTHER THAN LABOR, SERVICES OR MATERIAL FURNISHED IN CONNECTION WITH CONSTRUCTION OF THE LEASED PREMISES DESCRIBED IN ARTICLE 7B OF THIS LEASE, AND THAT NO MECHANICS' OR OTHER LIENS FOR ANY SUCH LABOR, SERVICES OR MATERIALS SHALL ATTACH TO OR AFFECT THE INTEREST OF LANDLORD IN THE LEASED PREMISES.

(c)    Encroachments. In the event that, following the Commencement Date and Tenant's acceptance and written approval of Landlord's construction, any Improvement shall (i) encroach upon any property, street or right-of-way on or adjoining the Leased Premises, (ii) violate the provisions of any restrictive covenant affecting the Leased Premises, (iii) hinder or obstruct any easement or right-of-way to which the Leased Premises is subject, or (iv) impair the rights of others in, to or under any of the foregoing, then, promptly after written request of Landlord, Tenant shall either (v) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation, hindrance, obstruction or impairment, whether the same shall affect Landlord, Tenant or both, or (vi) take such action as shall be necessary to remove such encroachment, hindrance or obstruction and to end such violation or impairment. If such action is in the form of an Alteration, such Alteration shall conform to the provisions of paragraph 28.

(d)    Condition of Leased Premises. Following Tenant's acceptance and written approval of the construction described in Article 7B of this Lease, Tenant will, upon Landlord's request, acknowledge in writing that it has received the Leased Premises in good condition and repair on the Commencement Date. IT IS AGREED THAT UPON TENANT'S ACCEPTANCE AND WRITTEN APPROVAL OF LANDLORD'S CONSTRUCTION, LANDLORD LEASES, AND TENANT TAKES, THE LEASED PREMISES "AS-IS". TENANT ACKNOWLEDGES THAT LANDLORD HAS NOT MADE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE LEASED PREMISES, ITS FITNESS FOR ANY USE OR PURPOSE, ITS DESIGN OR CONDITION FOR ANY USE OR PURPOSE, THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, ITS VALUE, COMPLIANCE WITH SPECIFICATIONS, ITS LOCATION, USE, CONDITION, MERCHANTABILITY, QUALITY, DESCRIPTION, DURABILITY OR OPERATION OR LANDLORD'S TITLE THERETO; IT BEING AGREED THAT ALL RISKS INCIDENT TO ALL OF THESE MATTERS ARE TO BE  BORNE BY TENANT.  TENANT ACKNOWLEDGES THAT THE LEASED PREMISES ARE OF ITS SELECTION AND HAVE BEEN OR WILL BE CONSTRUCTED TO ITS SPECIFICATIONS. TENANT'S WRITTEN APPROVAL OF LANDLORD'S CONSTRUCTION SHALL BE DEEMED EVIDENCE THAT TENANT HAS INSPECTED THE LEASED PREMISES AND THEY ARE SATISFACTORY TO TENANT.  UPON SUCH WRITTEN APPROVAL, IN THE EVENT OF ANY DEFECT OR DEFICIENCY OF ANY NATURE IN THE LEASED PREMISES, WHETHER PATENT OR

6

LATENT, LANDLORD SHALL HAVE NO RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING THEREFROM (INCLUDING STRICT LIABILITY IN TORT). NOTHING HEREIN SHALL BE DEEMED TO RESTRICT TENANT'S RIGHTS AND REMEDIES UNDER ANY WARRANTY, GUARANTY OR INDEMNITY, AS HEREINAFTER PROVIDED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN NEGOTIATED AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY REPRESENTATIONS OR WARRANTIES BY LANDLORD, EXPRESS OR IMPLIED, WITH RESPECT TO THE LEASED PREMISES, ARISING PURSUANT TO ANY LAW NOW OR HEREAFTER IN EFFECT OR OTHERWISE.

(e)    <u>Assignment of Warranties, Guaranties, Indemnities</u>. Landlord hereby assigns, without recourse or warranty whatsoever, to Tenant, for the duration of this Lease, all of Landlord's interest in all warranties (except warranties of title to the Leased Premises), guaranties and indemnities, express or implied, and similar rights which Landlord may have against any manufacturer, seller, engineer, contractor or builder in respect of the Leased Premises, including, any rights and remedies existing by contract or pursuant to the Uniform Commercial Code in effect in the State. As long as no Default has occurred and is continuing hereunder and until the expiration or termination of this Lease, Tenant shall have the right (at its sole cost and expense) to enforce any such warranty, guaranty or indemnity in the name of Landlord or Tenant. Landlord hereby agrees to execute and deliver, at Tenant's expense, such further documents (including powers of attorney) as Tenant reasonably may request, to allow Tenant the full benefit of the assignment effected or intended to be effected by this paragraph and the ability to enforce such warranties, guaranties and indemnities.

(f)    <u>Granting of Easements</u>. Landlord shall not grant any easements or other rights in the nature of easements in the Leased Premises without the prior written consent of Tenant, which consent shall not be delayed, withheld, or conditioned unreasonably. As long as no Default has occurred and is continuing hereunder, Landlord, at the request of Tenant, will grant or declare, amend or release easements, covenants, or restrictions for utilities, parking, or other matters as necessary or desirable for operation of the Leased Premises in Tenant's Business, subject to Landlord's approval, not to be unreasonably delayed, conditioned, or withheld, and execute and deliver to any person any instrument appropriate to confirm or effect such grant, declaration, release or amendment, upon receipt by Landlord of a certificate of Tenant and Guarantor, signed by the President or a Vice President of Tenant and Guarantor stating:

(1)    that the Leased Premises (including all related easements), following such grant, declaration, release, or amendment, (i) constitutes an integrated economic unit for use in Tenant's Business, including sufficient parking and all necessary and required utilities, (ii) is a contiguous parcel of land, without gap or hiatus, (iii) has adequate access to and from public highways, and (iv) is not in violation of any Legal Requirement or any restrictive covenant or other agreement applicable thereto;

(2)    that, in the judgment of Tenant and Guarantor, such grant, declaration, release or amendment will not materially lessen the value of the Leased Premises;

(3)    the consideration, if any, to be received in connection with such grant, declaration, release or amendment;

(4)    that upon such grant, declaration, release or amendment, this Lease and the Guaranty shall remain in full force and effect and

7

Tenant and Guarantor shall remain fully obligated under this Lease and the Guaranty without any reduction of Basic Rent, Additional Rent or any other sums payable under this Lease or the Guaranty; and

(5)    that Tenant will perform all of the obligations under such instrument of grant, declaration, release or amendment.

To the extent that consideration is received in connection with any such grant, declaration, release or amendment, Tenant may retain such consideration up to the amount of Tenant's professional fees and out-of-pocket expenses relating to such grant, declaration, release or amendment, or $5,000.00, whichever is greater, and the balance, if any, of such consideration, shall be paid to Landlord.

(g)    Conveyances for Public Purposes. As long as no Default has occurred and is continuing hereunder, Landlord will, at Tenant's request, (i) execute petitions to have the Leased Premises annexed to any municipal corporation or utility district, (ii) dedicate, transfer or release portions of the Leased Premises for road, highway or other public purposes, and (iii) execute and deliver to any person any instrument, containing special or limited warranties if applicable, appropriate to confirm or effect such sale, transfer, annexation or dedication, upon receipt by Landlord of a certificate of Tenant and Guarantor, signed by the President or a Vice President of Tenant and Guarantor stating:

(1)    with respect to any action taken pursuant to clause (3) above, (i) the consideration being paid for such interest, (ii) that such consideration is not less than the fair market value of such interest, as determined by Tenant and Guarantor, and (iii) such action is being taken in anticipation that such interest would otherwise be taken by Condemnation;

(2)    that the Leased Premises (including all related easements), following such sale, transfer, annexation or dedication, (i) constitutes an integrated economic unit for use in Tenant's Business, including sufficient parking and all necessary and required utilities, (ii) is a contiguous parcel of land, without gap or hiatus, (iii) has adequate access to and from public highways, and (iv) is not in violation of any Legal Requirement or any restrictive covenant or other agreement applicable thereto;

(3)    that, in the judgment of Tenant and Guarantor, such sale, transfer, annexation or dedication will not materially lessen the value of the Leased Premises;

(4)    the consideration to be received in connection with such sale, transfer, annexation or dedication;

(5)    that upon such sale, transfer, annexation or dedication, this Lease and the Guaranty shall remain in full force and effect and Tenant and Guarantor shall remain fully obligated under this Lease and the Guaranty without any reduction of Basic Rent, Additional Rent or other sums payable under this Lease or the Guaranty; and

8

(6)      that Tenant will perform all of the obligations under any instrument to be executed and delivered pursuant to clause (3) above or under such petition.

Tenant may retain any consideration received in connection with such sale, transfer, annexation or dedication, up to the amount of Tenant's professional fees and out-of-pocket expenses relating to such sale, transfer, annexation or dedication, or $5,000.00, whichever is greater, and the balance, if any, of such consideration, shall be paid to Landlord. If such sale, transfer, annexation or dedication, occurs during the Initial Term, then, to the extent that any portion of such consideration is retained by Landlord, each installment of Basic Rent, payable thereafter during the Initial Term commencing with the second Basic Rent Payment Date subsequent to the date of such sale, transfer, annexation or dedication, shall be reduced by an amount equivalent to the product resulting from an equation, the numerator of which is the amount of such consideration retained by Landlord, and the denominator of which is the number of Basic Rent Payment Dates remaining in the Initial Term.

7B.      **CONSTRUCTION OF PREMISES.**   Landlord agrees, at its sole cost and expense, to construct the Leased Premises in accordance with Tenant's Plans, as hereinafter defined, which shall be drawn based on guidelines submitted by Tenant to Landlord's architect (the "Guideplans"), and with the final plans and specifications to be approved by both Landlord and Tenant, which shall include complete civil engineering drawings for the Store and Leased Premises showing, among other things, the location of all buildings, finished grade elevations, the location of all utility lines, stormwater drainage facilities, and parking spaces (including handicap spaces) ("Tenant's Plans"). Minor deviations in Tenant's Plans which do not materially affect Tenant will not be deemed violations of Tenant's Plans. Tenant's Plans shall be approved when initialed by both parties, and when initialed shall constitute a part of this Lease; provided, however, that in the event of a conflict between the Guideplans and Tenant's Plans, Tenant's Plans shall control. Tenant's Plans shall provide for a completed store building, commonly referred to as a "lock and key job". Tenant shall furnish, install and connect its own trade fixtures, and its own compactor (or baler) on concrete pads to be installed by Landlord. This Lease shall not be effective or enforceable against Tenant or Landlord unless and until Landlord and Tenant have so approved Tenant's Plans. Nothing herein shall be construed to prevent Tenant's modification or amendment of Guideplans at any time prior to approval by both Landlord and Tenant of Tenant's Plans.

7C.      **COMPLETION DATE.**   Construction of the Store shall begin not later than March 31, 1998 (the "Construction Start Date") and shall be completed not later than August 31, 1999 (the "Initial Deadline"); and if not begun or completed by the Construction Start Date and the Initial Deadline, respectively, then Tenant may terminate this Lease or may extend Landlord additional time for the beginning or completion of construction; provided, however, that if, after the beginning of construction, Landlord's failure to complete the Store by the Initial Deadline shall be due to Force Majeure, as hereinafter defined, and provided further that construction shall be completed with all due diligence and, notwithstanding anything to the contrary in this Lease, in any event not later than June 30, 1999 (the "Outside Completion Date"), this option to terminate shall not arise. The Construction Start Date shall be the date as of which (1) Landlord shall have obtained an unrestricted building permit issued by the appropriate governmental authorities, (2) the first concrete footings have been poured. If, pursuant to this paragraph, Tenant shall terminate this Lease, then Landlord agrees to give Tenant the first right of refusal on the same terms and conditions as Landlord is willing to grant to a bona fide third party, to be exercised within sixty (60) days of receipt of written notice of the terms and conditions thereof from Landlord, to occupy any portion of the Premises which Landlord may offer for use as a food supermarket. This first right of refusal shall be operative and effective for a period of three (3) years from the date of such cancellation. However, if offered to Tenant within six (6) months after cancellation of this Lease, the lease term provisions shall be the same as those contained in this Lease.

7D.      **COMMENCEMENT DATE.**      Basic Rent and, if applicable, Additional Rent and Percentage Rent shall begin to accrue hereunder upon the date Tenant opens the Store for business, or upon the expiration of sixty (60) days following the performance of all the requirements listed below (collectively, the "Conditions"), whichever date shall sooner occur (the "Commencement Date").

(a)    The Leased Premises shall have been delivered to Tenant and Landlord shall have completed construction of the Leased Premises in accordance with Tenant's Plans and Tenant shall have given its written approval of Landlord's construction, and Landlord shall have delivered to Tenant, at Landlord's expense, (1) the Title Policy, (2) the Survey, and (3) the Audit (each as defined in this Lease);

(b)    Tenant shall have received a Certificate of Occupancy or equivalent document for the Store;

(c)    Tenant shall have received a letter, substantially in the form attached hereto as Exhibit "K", from appropriate governmental authorities regarding the zoning and comprehensive plan regulations, if any, applicable to the Leased Premises.

(d)    Landlord shall have recorded in the public records of Wake County, North Carolina, declaration(s) of covenants and restrictions substantially in the form attached hereto as Exhibit "I" (collectively, the "Declaration") as a primary encumbrance(s) and so as not be subject to foreclosure or removal without the express written permission of Tenant, providing that:

(i)    no portion of the Leased Premises nor any portion of the tracts of land designated on the Site Plan as "FUTURE DEVELOPMENT- Lot 2" or "FUTURE DEVELOPMENT- Lot 3" shall be used for any of the activities or uses prohibited by this Lease;

(ii)    no structure constructed  on the tracts of land designated on the Site Plan as "FUTURE DEVELOPMENT- Lot 2" or "FUTURE DEVELOPMENT- Lot 3" shall exceed a maximum building area of twenty-five percent (25%) of the ground area thereof or exceed a maximum vertical height of 25 feet as measured from ground level.

Landlord and Tenant shall execute a supplemental document establishing and confirming the Commencement Date in the form attached hereto as Exhibit "L" .  No acceptance of possession of the Premises, opening for business by Tenant, nor payment of rent under this Lease shall constitute a waiver of any of the Conditions.

If, for any reason, the Conditions are met on or after December 1st of any year and on or before January 31st of the succeeding year, rent shall not begin to accrue until the later of February 1st of the succeeding year, or thirty (30) days after the Conditions are met, unless Tenant actually opens the Store for business sooner.

8.    **USE AND MAINTENANCE OF PREMISES; QUIET ENJOYMENT.**

(a)    <u>Use</u>.  The Leased Premises may be used as a retail facility in Tenant's Business or for any other lawful purpose, except that the Leased Premises shall not be used for any purpose which shall violate any Legal Requirement, any insurance policy in effect with respect to the Leased Premises, or any covenants, restrictions or agreements applicable to the Leased Premises or constitute a public or private nuisance or waste.

(b)    <u>Maintenance</u>.  Tenant shall at all times maintain the Leased Premises in safe condition, and in good repair and appearance, except for ordinary wear and tear.  Landlord shall not be required to maintain, repair or rebuild the Leased Premises in any way, and Tenant hereby expressly waives the right to make repairs or Alterations at the expense of Landlord pursuant to any Legal Requirement now or hereafter in effect.  All such repairs or Alterations by Tenant shall be done in a good and workmanlike manner.

10

unforeseen, which are, at any time, prior to or during the Term, imposed upon or assessed against (i) the Leased Premises, (ii) any Basic Rent, Additional Rent or other sum payable hereunder, (iii) this Lease, the leasehold estate created hereby, or (iv) the acquisition, occupancy, leasing, use, possession or operation of the Leased Premises (including without limitation, any taxes on revenues, rents, income, awards, proceeds, capital gains, profits, excess profits, gross receipts, sales, use, excise and other taxes, duties or imports whether similar or not in nature, assessed, levied or imposed against Tenant, Landlord or the Leased Premises by any governmental authority, subject, however, to the next sentence). Notwithstanding the foregoing, Tenant shall have no obligation to pay federal, state or local (v) franchise, capital stock or similar taxes, of Landlord, (vi) income, capital gains, excess profits, or other taxes, of Landlord, determine on the basis of its net income or (vii) any estate, inheritance, succession, gift, capital levy or similar tax, unless such taxes referred to in clauses (vi) and (vii) above are in lieu of, or a substitute for, any tax, assessment, levy or charge which, if it were in effect on the Commencement Date, would be payable by Tenant. If any assessment may be paid in installments, Tenant shall have the option to pay such assessment in installments; in such event, Tenant shall be liable only for those installments which become due and payable during the Term. Tenant shall prepare and file all tax reports required by governmental authorities which relate to the Impositions. Landlord shall either request the applicable taxing authority to deliver tax notices or tax bills directly to Tenant, or provide Tenant with complete and correct copies of such tax notices or tax bills promptly upon Landlord's receipt thereof, and Tenant shall not be deemed in Default under this paragraph 12(a) for failure to pay or discharge any Imposition, the notice or bill for which Tenant failed to receive due to Landlord's failure to take such action.

(b)     Compliance with Law. Subject to the provisions of paragraph 19, Tenant shall at all times comply with and cause the Leased Premises to comply with and conform to all Legal Requirements applicable to the Leased Premises.

13.    **INSURANCE.**

(a)     Type of Insurance. Tenant shall maintain at its sole cost and expense the following insurance on the Leased Premises:

(1)     Insurance against all risk of direct physical loss or damage to the Improvements and Landlord's Equipment in amounts not less than the full replacement cost of the Improvements and Landlord's Equipment, if the same are actually replaced or actual cash value (replacement cost minus depreciation) if the same are not replaced, excluding footings and foundations and other parts of the Improvements which are not insurable.

(2)     General public liability insurance against claims for bodily injury, death or property damage occurring on, in, or about the Leased Premises with combined single limit coverage of not less than $5,000,000.00. Policies for such insurance shall be for the mutual benefit of Landlord, Tenant and any Mortgagee.

(3)     Workers' compensation insurance covering all persons employed in connection with any work done on or about the Leased Premises for which claims for death or bodily injury could be asserted against Landlord, Tenant or the Leased Premises, or in lieu of such workers' compensation insurance, a program of self-insurance complying with the rules, regulations and requirements of the appropriate agency of the State.

13

(4)    Such other insurance as is customarily carried by owners or tenants of similar properties in the same geographic area and engaged in businesses similar to Tenant's Business.

(b)    **Insurance Requirements; "Self-Insurance".**    Except as provided in the second paragraph of this subparagraph (b) the insurance required by paragraph 13(a) shall be written by companies of recognized financial standing which are rated A-1 or better by Standard & Poors corporation or A-3 or better by Moody's Investor Service with asset size rating of "X" or better by Best's Rating Service. The insurance (i) shall be for a term of not less than six (6) months, (ii) shall be in amounts sufficient at all times to satisfy any coinsurance requirements thereof, and (iii) shall (except for the workers' compensation insurance referred to in subparagraph (a)(3) above) name Landlord, Tenant and any Mortgagee as insured parties, as their respective interests may appear. If said insurance or any part thereof shall expire, be withdrawn, become void by breach of any condition thereof by Tenant, or become void or unsafe by reason of the failure or impairment of the capital of any insurer, or if for any other reasonable cause said insurance shall become unsatisfactory to Landlord or Mortgagee, Tenant shall promptly obtain new or additional insurance satisfactory to Landlord and mortgagee. Tenant shall provide Landlord with a copy of all such insurance policies.

Notwithstanding the above, as long as Tenant is not in Default hereunder and Winn-Dixie has both (i) a net worth determined in accordance with generally accepted accounting principles in excess of $100,000,000.00, and (ii) an investment grade ranking by either Standard & Poors Corporation or Moody's Investor Service, Tenant may "self-insure" each of the coverage described in paragraph 13(a). Upon request, Tenant will furnish to Landlord not more than once annually Winn-Dixie's annual report disclosing Winn-Dixie's net worth. If Tenant has "self-insured" and a claim is made or a loss incurred which would be covered by the insurance described in paragraph 13(a) above, then Tenant shall be liable to and shall indemnify and hold harmless Landlord and/or a Mortgagee (as their interests may appear) against any such claim or loss and shall pay any settlement or judgment resulting therefrom. As to Property Losses, Tenant shall pay the full replacement cost thereof. Sums due from Tenant in lieu of insurance proceeds because of such "self-insurance" shall be treated as insurance proceeds for all purposes under this Lease.

(c)    **Mortgagee Loss Payable Clauses; Cancellation of Insurance.**    Each insurance policy referred to in clause (1) of subparagraph (a) above shall contain a mortgagee loss payable clause in favor of any Mortgagee. Each policy shall provide that it may not be canceled except after thirty (30) days prior notice to Landlord and any Mortgagee. Each such policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forfeiture of all or a part of such insurance payment, (ii) the occupation or use of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Mortgagee pursuant to any provision of the Mortgage upon the happening of an event of default thereunder, or (iv) any change in title or ownership of the Leased Premises.

(d)    **Payment of Premiums; Policy Replacements.**    Tenant shall pay as they become due all premiums for the insurance required by this paragraph 13, shall renew or replace each policy at least thirty (30) days prior to the expiration of such policy, and shall deliver to Landlord such renewal certificate within ten (10) days following inception. Tenant shall provide Landlord with reasonable proof of payment of such premiums promptly following Tenant's payment of such premiums. In the event of Tenant's failure to comply with any of the foregoing requirements within thirty (30) days after notice to Tenant thereof, Landlord shall be entitled to procure such insurance. Any sums expended by Landlord in procuring such insurance shall be Additional Rent and shall be repaid by Tenant immediately upon demand therefor by Landlord, together with interest thereon at the Default Rate, from and including the date of payment by Landlord to and including the date such sums are fully paid by Tenant.

14

(e)    Blanket Policies.  Any insurance which Tenant is required to obtain pursuant to paragraph 13(a) may be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant or Guarantor, provided that such "blanket" policy or policies otherwise comply with the provisions of this paragraph 13.  Upon the request of Landlord or Mortgagee, Tenant will provide a specific allocation of coverage among the various properties covered by such blanket policy.

14.    **PROPERTY LOSS.**

(a)    Property Loss Claims.  In the event of any Property Loss, Tenant shall give Landlord and Mortgagee immediate notice thereof.  Tenant, and Mortgagee by its acceptance of this Lease, hereby authorize Landlord, subject to Tenant's and any Mortgagee's approval of any proposed terms, to negotiate, in its name or in Tenant's or Mortgagee's name, the adjustment, collection, settlement, compromise or payment of all Property Loss claims under any of the insurance policies required by paragraph 13 and to execute and deliver on behalf of Tenant and Mortgagee all necessary proofs of loss, receipts, vouchers and releases required by the insurers in connection with a Property Loss. Tenant and Mortgagee agree to sign, upon request of Landlord, all such proofs of loss, receipts, vouchers and releases. Tenant and Mortgagee may elect, at the sole cost and expense of Tenant and Mortgagee, respectively, to monitor or participate in the adjustment, collection, settlement, compromise or claims payment process.

Except as provided in subparagraph (b) below, in the event of any Property Loss (whether or not insured against), this Lease shall continue in full force and effect without abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder.

Any Net Proceeds received for any Property Loss shall be payable to, and held by Mortgagee, subject to the provisions of this paragraph 14.  Each insurer is hereby authorized and directed to make payment under said policies, including return of unearned premiums, directly to Mortgagee instead of to Landlord and Tenant jointly; and Landlord and Tenant hereby appoint Mortgagee as attorney-in-fact to endorse any draft therefor.

Promptly after any Property Loss, Landlord shall commence and diligently continue to restore the Leased Premises as nearly as possible to its value, condition and character immediately prior to such Property Loss, or as otherwise reasonably acceptable to Landlord, whether or not the Net Proceeds are sufficient to cover the cost of restoration, and Mortgagee shall make available to Landlord any Net Proceeds for such Property Loss received by Mortgagee, subject to the terms and conditions set forth in paragraph 17.

(b)    Termination Upon Loss.  If, during the last three years of either the Initial Term or any Extended Term, a substantial portion of the Leased Premises suffers a Property Loss such that it would be uneconomic in Tenant's judgment for Landlord to restore the Leased Premises to its condition prior to such Property Loss for use in Tenant's Business, then Tenant may, not later than sixty (60) days after such Property Loss, give to Landlord notice of its intention to terminate this Lease on a Termination Date specified in such notice, and Landlord shall thereupon have no obligation to restore the Leased Premises.  Such notice shall be accompanied by a certificate of Tenant and Guarantor, signed by the President or any Vice President of Tenant and Guarantor, stating that, in the judgment of the Executive Committee of the Board of Directors of Tenant and Guarantor, rebuilding, restoring or repairing the Leased Premises for continued use and occupancy in the business carried on by Tenant on the Leased Premises immediately prior to such Property Loss would be uneconomic in Tenant's judgment.  As used in this subparagraph (b), "substantial portion" means fifty percent (50%) or more of the replacement cost of the Improvements.  The effect of Tenant's notice shall be that the Net Proceeds shall belong to Landlord and this Lease shall terminate on the Termination Date upon the payment by Tenant of all installments of Basic Rent, all Additional Rent and all other sums then due and payable under this Lease to and including the Termination Date.

15

15. **CONDEMNATION.**

(a) <u>Assignment of Condemnation Award</u>. Subject to the provisions of this paragraph 15 and paragraph 17, Tenant hereby irrevocably assigns to Landlord any award or payment to which Tenant is or may be entitled by reason of any Condemnation, whether the same shall be paid or payable for Tenant's leasehold interest hereunder or otherwise; but nothing in this Lease shall be deemed to (i) assign to Landlord any award or payment on account of Tenant's Equipment or other tangible property, moving expenses, loss of business, and similar claims to the extent Tenant shall have a right to make a separate claim therefor against the condemnor, or (ii) impair Tenant's right to any award or payment resulting from such separate claim. If Landlord receives notice of any proposed Condemnation from any person having the power of eminent domain, Landlord shall promptly give Tenant notice of such proposed Condemnation; the failure of Landlord to give such notice to Tenant shall not affect Tenant's obligations under this paragraph 15 or any other provision of this Lease.

(b) <u>Total or Substantial Condemnation</u>. If (i) the entire Leased Premises, or (ii) at Tenant's election, any substantial portion of the Leased Premises, shall be subject to a Taking, then Tenant shall, not later than sixty (60) days after notice of such Taking, give notice to Landlord of its intention to terminate this Lease on a Termination Date specified in such notice. Such notice shall be accompanied by a certificate of Tenant and Guarantor, signed by the President or any Vice President of Tenant and Guarantor, stating that, in the judgment of the Executive Committee of the Board of Directors of Tenant and Guarantor: (ii) the conditions referred to in clause (1) or (2) above exist with respect to the Leased Premises by reason of such Taking, and (ii) continued use and occupancy of the Tenant's Business after restoration would be uneconomic. As used in this subparagraph (ii), "substantial portion" means (i) five percent (5%) or more of the building space contained in the Improvements, (ii) ten percent (10%) or more of the parking area, (iii) fifteen percent (15%) or more of the building space and parking area in any combination, (iv) taking (other than a temporary taking that, in the judgment of the Executive Committee of the Board of Directors of Tenant, does not cause the continued use and occupancy of the Leased Premises in Tenant's Business to be uneconomic) of any material access to the Leased Premises for which no reasonable alternative is available at a reasonable cost, or (v) any taking that would cause the remainder of the Leased Premises to be in material non-compliance with Applicable Laws, including, without limitation, minimum parking requirements or minimum access requirements. The effect of Tenant's notice shall be that the Net Award for such Taking shall belong to Landlord and this Lease shall terminate on the Termination Date upon the payment by Tenant of all installments of Basic Rent, all Additional Rent and all other sums then due and payable under this Lease to and including the Termination Date.

(c) <u>Partial Condemnation</u>. In the event of any Taking of the Land or Improvements which does not result in a termination of this Lease pursuant to subparagraph (b) above, the Term shall nevertheless continue and there shall be no abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder, except as specifically provided in paragraph 17. Any Net Award for such Taking shall be retained by Mortgagee, subject to the provisions of this subparagraph (c). Promptly after such Taking, Tenant shall commence and diligently continue to restore the Leased Premises as nearly as possible to their value, condition and character immediately prior to such Taking, whether or not the Net Award is sufficient therefor, and Mortgagee shall make available to Tenant any Net Award received by Mortgagee, subject to the terms and conditions set forth in paragraph 17.

In the event of a Requisition of the Leased Premises, the Net Award for such Requisition allocable to the Term shall be paid to Tenant and this Lease shall continue in full force and effect without any abatement or reduction of the Basic Rent, Additional Rent or other sums payable by

Tenant hereunder. Any portion of such Net Award allocable to any period after the expiration or termination of the Term shall belong to Landlord.

(d) <u>Landlord's Equipment Condemnation</u>. In the event of any Taking of Landlord's Equipment which does not fall within the provisions of subparagraph (b) above, this Lease shall continue in full force and effect and without any abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder. Tenant shall, whether or not the Net Award is sufficient for the purpose, promptly replace Landlord's Equipment so taken, in accordance with the provisions of paragraphs 8(c) and 17, and the Net Award for such a Condemnation shall thereupon be payable to Tenant.

(e) <u>Proceedings</u>. Tenant shall take all appropriate actions with respect to each Condemnation proceeding, action, negotiation, prosecution and adjustment and shall pay all cost and expenses thereof, including the reasonable cost of Landlord's and Mortgagee's participation therein, provided that Landlord's and Mortgagee's consents shall be required to any settlement or agreement with the condemning authority (except one involving solely an award or payment to which Tenant is entitled under subparagraph (a) above), such consent not to be unreasonably withheld or delayed.

16.   **ECONOMIC ABANDONMENT.**   Intentionally deleted.

17.   **RESTORATION.** In the event of any Property Loss referred to in paragraph 14(a) or Taking referred to in paragraph 15(c), Tenant shall be entitled to receive from Mortgagee periodic disbursements of the Net Proceeds payable in connection with such loss and the Net Award payable in connection with such Taking, but only on the basis of certificates of Tenant, signed by the President or any Vice President of Tenant, delivered to Mortgagee from time to time as such rebuilding, restoration and repair progresses or is completed. Each such certificate shall describe the work for which Tenant is requesting payment, the cost incurred by Tenant in connection therewith, and shall state that such work has been performed in conformity with the requirements of paragraphs 7(b), 7(c), 8(b), 8(c), and 28, the estimated cost of completing such work, and that Tenant has not theretofore received payment for such work. Upon completion of the work described in this paragraph 17, if any Net Proceeds or Net Award remaining after the final payment has been made for such work is less than $100,000.00, such remaining Net Proceeds or Net Award shall be paid to Tenant. If such remaining Net Proceeds or Net Award is $100,000.00, or greater than $100,000.00, such remaining Net Proceeds or Net Award shall, at Landlord's option, be paid to Tenant or retained by Landlord; if retained by Landlord then each installment of Basic Rent, payable thereafter during the Initial Term commencing with the second Basic Rent Payment Date subsequent to the final payment to Tenant for such work, shall be reduced by ten percent (10%) of such remaining Net Proceeds or Net Award retained by Landlord. If not retained by Landlord, such remaining Net Proceeds or Net Award shall be paid to Tenant. If the cost of any such work required to be done by Tenant pursuant to this paragraph shall exceed the amount of such Net Proceeds or Net Award, the deficiency shall be paid by Tenant. No payments shall be made to Tenant pursuant to this paragraph 17 if any Default exists under this Lease unless and until such Default shall have been cured or removed.

18.   **ASSIGNMENT AND SUBLEASING; VACATION OF LEASED PREMISES.** This Lease may be assigned and the Leased Premises may be sublet in whole or in part without the consent of Landlord, (i) as long as the Guaranty and the liability of Guarantor thereunder shall not be reduced thereby, or (ii) if Winn-Dixie is Tenant under this Lease. Additionally, Tenant may vacate the Leased Premises, provided that the same is made reasonably secure from unauthorized entry during periods of vacancy. Each sublease of the Leased Premises shall be subject and subordinate to the provisions of this Lease. No assignment or sublease, or vacation of the Leased Premises as permitted by this paragraph 18 shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no assignment or sublease or vacancy had occurred. No assignment or sublease or vacation of the Leased Premises shall impose any

17

obligations on Landlord under this Lease. Tenant shall, within ten (10) days after the execution and delivery of any such assignment or sublease, deliver a duplicate original copy thereof.

19.    **PERMITTED CONTESTS.** Tenant shall not be required to (i) pay any Imposition, (ii) comply with any Legal Requirement, (iii) discharge or remove any Lien referred to in paragraphs 7(b) or 28, or (iv) take any action with respect to any encroachment, violation, hindrance, obstruction or impairment referred to in paragraph 7(c) so long as Tenant shall contest, in good faith and at its expense, the existence, the amount or the validity thereof, the amount of the damages caused thereby, or the extent of its or Landlord's liability therefor, by appropriate proceedings which shall operate during the pendency thereof to prevent (i) the collection of, or other realization upon, the Imposition or Lien so contested, (ii) the sale, forfeiture or loss of any of the Leased Premises, any interest therein, any Basic Rent or any Additional Rent to satisfy the same or to pay any damages caused by the violation of any such Legal Requirement or by any such encroachment, violation, hindrance, obstruction or impairment, (iii) any interference with the Use or occupancy of the Leased Premises, (iv) any interference with the payment of any Basic Rent, any Additional Rent or any other sum payable hereunder, and (v) the cancellation of any fire or other insurance policy. If Winn-Dixie's net worth determined in accordance with generally accepted accounting principles shall be less than $100,000,000.00 at the time of commencement of any such contest, Tenant shall provide to Landlord and Mortgagee a bond of a surety acceptable to Landlord and Mortgagee in an amount satisfactory to Landlord and Mortgagee. While any such proceedings are pending, neither Landlord nor Mortgagee shall have the right to pay, remove or cause to be discharged the Imposition or Lien thereby being contested. Tenant agrees that each such contest shall be promptly and diligently prosecuted to a final conclusion, except that Tenant shall, so long as the conditions of the first sentence of this paragraph 19 are at all times complied with, have the right to attempt to settle or compromise such contest through negotiations. Tenant shall pay and save Landlord and Mortgagee harmless against any and all losses, judgments, decrees and costs (including all reasonable attorneys' fees and expenses) in connection with any such contest and shall, promptly after the final determination of such contest, fully pay and discharge the amounts which shall be levied, assessed, charged or imposed or be determined to be payable therein or in connection therewith, together with all penalties, fines, interest, costs and expenses thereof or in connection therewith, and perform all acts the performance of which shall be ordered or decreed as a result thereof. No such contest shall subject Landlord or Mortgagee to the risk of any material civil liability or any criminal liability.

20.    **ENVIRONMENTAL COVENANTS.** Except as set forth in the second sentence of this paragraph 20, Tenant hereby represents, warrants, covenants and agrees to and with Landlord and Mortgagee that all operations or activities upon, or any use or occupancy of the Leased Premises by Tenant, or to Tenant's knowledge any other tenant or other occupant, is presently and will at all times be in compliance with all Environmental Laws; that Tenant has not at any time engaged in or permitted, nor to Tenant's knowledge has any existing or previous tenant or occupant of the Leased Premises engaged in or permitted the occurrence of any Hazardous Condition; and that to Tenant's knowledge, there does not now exist nor is there suspected to exist any Hazardous Condition on or about the Leased Premises. Tenant discloses to Landlord that Tenant does, or intends to, store, use or sell in Tenant's Business certain products or substances that may be considered Hazardous Substances, and Landlord acknowledges Tenant's right to do so, provided, however, that any such storage, use or sale of such products or substances shall at all times be in compliance with all Environmental Laws.

In the event that any Remedial Work with respect to any Hazardous Conditions that could result in a Claim is required under any Environmental Laws by any judicial order, or by any governmental entity, or in order to comply with the terms, covenants and conditions of this Lease or of any other agreements affecting the Leased Premises, Tenant will perform or cause to be performed the Remedial Work in compliance with such law, regulation, order or agreement. All Remedial Work will be performed by one or more contractors, selected by Tenant and under the supervision of a consulting environmental engineer selected by Tenant. All costs and expenses of such Remedial Work will be paid by Tenant including without limitation the charges of such contractor(s) and the consulting environmental engineer, and

18

Landlord's and Mortgagee's reasonable attorneys' fees and costs incurred in connection with monitoring or review of such Remedial Work. In the event that Tenant fails to timely commence, or cause to be commenced, or fails to diligently prosecute to completion, such Remedial Work, Landlord or Mortgagee may, but will not be required or have any obligation to, cause such Remedial Work to be performed, and all costs and expenses thereof, or incurred in connection therewith, will thereupon constitute Claims. All such Claims will be due and payable by Tenant upon demand therefor by Landlord or Mortgagee.

Notwithstanding any provision of this Lease to the contrary, provided that (i) no Default has occurred and is continuing under this Lease, (ii) neither Landlord nor Mortgagee will be exposed or subjected to civil or criminal liability, and (iii) the respective interests of Landlord and Mortgagee in the Leased Premises is not jeopardized or in any way adversely affected, Tenant may contest or cause to be contested, by appropriate action, the application, interpretation or validity of any Environmental Laws or any agreement requiring any Remedial Work pursuant to a good faith dispute regarding such application, interpretation or validity of such Environmental Laws or agreement requiring such Remedial Work. During the pendency of any such permitted contest, Tenant may delay performance of Remedial Work or compliance with the Environmental Laws or agreement requiring such Remedial Work, provided that (i) Tenant actually contests and prosecutes such contest by appropriate proceedings conducted in good faith and with due diligence to resolution, (ii) prior to any such delay in compliance with any Environmental Laws or any Remedial Work requirement on the basis of a good faith contest of such requirement, Tenant will have given Landlord and Mortgagee written notice that Tenant intends to contest or will contest or cause to be contested the same, and will have given such security or assurances as Landlord or Mortgagee reasonably may request to ensure compliance with the Legal Requirements pertaining to the Remedial Work (and payment of all costs, expenses, interest and penalties in connection therewith) and to prevent any sale, forfeiture or loss of all or any part of the Leased Premises by reason of such noncompliance, delay or contest, and (iii) prior to any such delay in compliance with any Environmental Laws or any Remedial Work requirement on the basis of a good faith contest of such requirement, Tenant will have taken such steps as may necessary to prevent or mitigate any continuing occurrence of any existing or suspected Hazardous Condition giving rise to the contested Remedial Work requirement. Subject to the terms and conditions set forth above, during the pendency of any such permitted contest resulting in a delay of performance of any required Remedial Work, Landlord agrees that it will not perform such Remedial Work requirement on behalf of Tenant.

The foregoing provisions shall survive the expiration or earlier termination of this Lease, but shall finally terminate and cease upon the expiration of any applicable statute of limitation of actions as to any potential and unasserted Claim.

21.   **INDEMNIFICATION.** Tenant agrees, at its sole cost and expense, to pay, protect, indemnify, save and hold harmless Landlord and Mortgagee from and against any and all liabilities, losses, damages, penalties, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature whatsoever, howsoever caused, arising in or about the Leased Premises during the Term or Extended Term, whether or not arising from (i) any injury to, or death of, any person, or any loss of, or damage to, any property on the Leased Premises, or on adjoining sidewalks, streets or ways, or connected with the use, condition or occupancy thereof (unless caused by the negligence or improper conduct of Landlord or Mortgagee), whether or not Landlord or Mortgagee has or should have knowledge or notice of the defect or conditions causing or contributing to such injury, death, loss or damage, (ii) any Claims, (iii) any Default under this Lease, or any violation by Tenant of any provision of any contract or agreement to which Tenant is a party or by which it is bound, affecting this Lease or the Leased Premises, or (iv) any contest referred to in paragraph 19 or 20. The obligations of Tenant under this paragraph 21 shall survive the expiration or termination of this Lease until the expiration of the applicable statute of limitations for such action.

22.   **DEFAULT PROVISIONS.**

(a)    Events of Default.  The occurrence of any one or more of the following shall constitute an Event of Default under this Lease:

(1)    if any installment of Basic Rent or any payment of Additional Rent due from Tenant is an Overdue Payment; or

(2)    if Winn-Dixie's net worth determined in accordance with generally accepted accounting principles shall be less than $100,000,000.00 and any one or more of the following events shall have occurred:

(A)    a failure by Tenant to duly perform and observe, or a violation or breach of, any other provision hereof which failure, violation or breach shall continue for a period of thirty (30) days after notice to Tenant thereof; provided that if such failure, violation or breach cannot be cured by mere payment of money and cannot with diligence be cured within such thirty (30) day period, the period to cure such failure, violation or breach shall be extended for such longer period of time, as is reasonably necessary to cure such failure, violation or breach so long as Tenant shall commence to cure such failure, violation or breach within said thirty (30) day period and actively, diligently and in good faith proceed with continued curing thereof until it shall be fully cured;

(B)    any representation or warranty made by Tenant or Guarantor in this Lease, the Guaranty or any other document delivered in connection with the execution and delivery of this Lease or the Guaranty proves to be incorrect in any material respect;

(C)    Tenant or Guarantor shall voluntarily be adjudicated a bankrupt or insolvent, seek or consent to the appointment of a receiver or trustee for Tenant, Guarantor or the Leased Premises, file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, make a general assignment for the benefit of creditors, or admit in writing its inability to pay its debts as they mature;

(D)    a court shall enter an order, judgment or decree appointing a receiver or trustee for Tenant, Guarantor or the Leased Premises or approving a petition filed against Tenant or Guarantor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and such order, judgment or decree shall remain in force, undischarged or unstayed, sixty (60) days after it is entered;

(E)    Tenant or Guarantor shall be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution;

20

(F)     the estate or interest of Tenant in the Leased Premises shall be levied upon or attached in any proceeding and such proceeding shall not be vacated or discharged within sixty sixty (60) days after such levy or attachment; or

(G)     Guarantor shall default under the Guaranty.

(b)     <u>Landlord's Remedies Upon Tenant Default</u>.  If an Event of Default shall have occurred, Landlord shall have the right at its option, then or at any time thereafter during the continuance of such Event of Default, to do any one or more of the following without demand upon or notice to Tenant:

(1)     Landlord may give Tenant notice of Landlord's intention to terminate this Lease on a date specified in such notice.  Upon the date therein specified, the Term and the estate hereby granted and all rights of Tenant hereunder shall expire and terminate as if such date were the date hereinbefore fixed for the expiration of the Term, but Tenant shall remain liable for all its obligations hereunder, including its liability for Basic Rent, Additional Rent or any other sums payable under this Lease, as hereinafter provided.

(2)     Landlord may, whether or not the Term of this Lease shall have been terminated pursuant to clause (1) above, (i) give Tenant notice to surrender the Leased Premises to Landlord immediately or on a date specified in such notice, at which time Tenant shall surrender and deliver possession of the Leased Premises to Landlord, or (ii) reenter and repossess the Leased Premises by summary proceedings, ejectment or any other means or procedure.  Upon or at any time after taking possession of the Leased Premises, Landlord may remove any persons or property therefrom.  Landlord shall be under no liability for, or by reason of, any such entry, repossession or removal.  No such entry or repossession shall be construed as an election by Landlord to terminate this Lease unless Landlord gives a written notice of such intention to Tenant pursuant to clause (1) above.

(3)     After repossession of the Leased Premises pursuant to clause (2) above, whether or not this Lease shall have been terminated pursuant to clause (1) above, Landlord shall have the right to relet the Leased Premises or any part thereof to such tenant or tenants for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) for such rent, on such conditions (which may include concessions or free rent) and for such uses as Landlord, in its absolute discretion, may determine; and Landlord may collect and receive any rents payable by reason of such reletting. Landlord shall not be responsible or liable for any failure to relet the Leased Premises or any part thereof or for any failure to collect any rent due upon any such reletting.  Landlord may make such Alterations as Landlord in its sole discretion may deem advisable.  Tenant agrees to pay Landlord, as Additional Rent, immediately upon demand, all reasonable expenses incurred by Landlord in obtaining possession, in performing Alterations and in reletting the Leased Premises, including reasonable fees and commissions of attorneys, architects, agents and brokers.

21

(4)    Landlord may exercise any other right or remedy now or hereafter existing by law or in equity.

(c)    <u>No Relief of Obligations</u>.  No expiration or termination of this Lease, or repossession or reletting of the Leased Premises pursuant to this paragraph 22 or any other provision of this Lease, by operation of law or otherwise, shall relieve Tenant of any of its liabilities and obligations hereunder, including the liability for payment of Basic Rent, Additional Rent and all other sums payable hereunder, all of which shall survive such expiration, termination, repossession or reletting.

(d)    <u>Measure of Damages</u>.  In the event of any expiration or termination of this Lease or repossession of the Leased Premises by reason of the occurrence of an Event of Default, Tenant shall pay to Landlord all Basic Rent, all Additional Rent and all other sums required to be paid by Tenant to and including the date of such expiration, termination or repossession and, thereafter, Tenant shall, until the end of what would have been the Term in the absence of such expiration, termination or repossession, and whether or not the Leased Premises shall have been relet, be liable to Landlord for and shall pay to Landlord as liquidated and agreed current damages (i) all Basic Rent, all Additional Rent and all other sums which would be payable under this Lease by Tenant in the absence of such expiration, termination or repossession, less (ii) the net proceeds, if any, of any reletting pursuant to this paragraph 22, after deducting from such proceeds all of Landlord's expenses in connection with such reletting (including all reasonable repossession costs, brokerage commissions, legal expenses, attorneys' fees, employees' expenses, costs of Alterations and expenses of preparation for reletting).  Tenant hereby agrees to be and remain liable for all sums aforesaid, and Landlord may recover such damages from Tenant and institute and maintain successive actions or legal proceedings against Tenant for the recovery of such damages.  Nothing herein contained shall be deemed to require Landlord to wait to begin such action or other legal proceedings until the date when the Term would have expired by limitation had there been no such Event of Default.

23.    **ADDITIONAL RIGHTS OF LANDLORD.**

(a)    <u>Non-Exclusive, Cumulative Remedies</u>.  No right or remedy herein conferred upon or reserved to Landlord is intended to be exclusive of any other right or remedy and each and every right and remedy shall be cumulative and in addition to any other right or remedy contained in this Lease.  No delay or failure by Landlord to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof.  In addition to the other remedies provided in this Lease, Landlord shall be entitled, to the extent permitted by applicable law, to injunctive relief in case of the violation or attempted or threatened violation of any of the provisions of this Lease, or to specific performance of any of the provisions of this Lease.

(b)    <u>Tenant's Waiver of Redemption</u>.  Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have under any present or future law to redeem any of the Leased Premises or to have a continuance of this Lease after termination of this Lease or of Tenant's right of occupancy or possession pursuant to any court order or any provision hereof, and (ii) the benefits of any present or future law which exempts property from liability for debt or for distress for rent.

(c)    <u>Costs Upon Event of Default and Litigation</u>.  Tenant shall pay to Landlord and Mortgagee as Additional Rent all expenses incurred by Landlord or Mortgagee in connection with any Event of Default or the exercise of any remedy by reason of any Event of Default, including reasonable attorneys' fees and expenses.  If Landlord or Mortgagee shall be made a party to any litigation commenced against Tenant or any litigation pertaining to this Lease or the Leased Premises, at the option of Landlord and Mortgagee, Tenant, at its expense, shall provide Landlord

22

or Mortgagee with counsel approved by Landlord and Mortgagee and shall pay all reasonable costs incurred or paid by Landlord and Mortgagee in connection with such litigation.

24.    **NOTICES.**  All notices, requests, consents, demands, offers and other communications required or permitted to be given pursuant to this Lease shall be in writing and shall be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered with a receipted copy; (ii) if given by telefax, the day when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party prior to or during normal business hours for the recipient, or the day after confirmation is received by the transmitting party if after normal business hours for the recipient; (iii) if delivered by United States Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (iv) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same, addressed to Landlord, Tenant, Mortgagee, or Guarantor at their respective addresses stated below:

Landlord :  STATE PROPERTIES, LLC
Post Office Box 51507
Durham, North Carolina 27717-1507
Attention: Ted Royall
Telecopy: (919) 821-5601

With a copy to:  William A. Mann, Esquire
CrossPointe Plaza
2840 Plaza Place, Suite 400
Raleigh, North Carolina 27612
Telecopy: (919) 783-8991

or such other address as Landlord may direct from time to time.

Tenant:  Winn-Dixie Raleigh, Inc.    (Re: Store #811)
2201 South Wilmington Street
Raleigh, NC 27603

With a copy to:  Winn-Dixie Stores, Inc.
Attn: General Counsel
5050 Edgewood Court
P.O. Box B
Jacksonville, FL 32203-0297
Telecopy: (904) 783-5138

or to such other address as Tenant may direct from time to time.

If to Mortgagee:  _____
_____
_____
_____

23

<div style="text-align:center">

If to Guarantor:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254
Attention: General Counsel
Telefax No. 904-783-5138

</div>

For the purposes of this paragraph 24, any person may substitute its address by giving fifteen (15) days notice to the other persons in the manner provided above.

25.    **ESTOPPEL CERTIFICATE**. Landlord and Tenant shall, at any time and from time to time, upon not less than twenty (20) days prior request by the other, execute, acknowledge and deliver to the other, an estoppel certificate substantially in the form attached as Exhibit "G". It is intended that any such statements may be relied upon by Mortgagee, the recipient of such statements or their assignees, or by any prospective purchaser or mortgagee of the Leased Premises.

26.    **SURRENDER AND HOLDING OVER**. Upon the expiration or earlier termination of this Lease, Tenant shall peaceably leave and surrender the Leased Premises (except for any portion thereof with respect to which this Lease has previously terminated) to Landlord in broom clean condition, and otherwise in the same condition in which the Leased Premises were originally received from Landlord on the Commencement Date, except as repaired, rebuilt, restored, altered, replaced or added to as permitted or required by any provision of this Lease, and except for ordinary wear and tear. Tenant shall remove from the Leased Premises on or prior to such expiration or earlier termination all property situated thereon which is owned by Tenant or third parties other than Landlord, and Tenant at its expense shall, on or prior to such expiration or earlier termination, repair any damage caused by such removal. Property not so removed at the end of the Term or within thirty (30) days after the earlier termination of the Term for any reason whatsoever shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises. The cost of removing and disposing of such property and repairing any damage to the Leased Premises caused by such removal shall be borne by Tenant. Landlord shall not in any manner or to any extent be obligated to reimburse Tenant for any property which becomes the property of Landlord as a result of such expiration or earlier termination.

Any holding over by Tenant of the Leased Premises after the expiration or earlier termination of the term of this Lease or any extensions thereof shall operate and be construed as a tenancy from month to month only, at double the Basic Rent reserved herein and upon the same terms and conditions as contained in this Lease. Notwithstanding the foregoing, any holding over shall entitle Landlord, in addition to collecting double rentals, to exercise all rights and remedies provided by law or in equity, including the remedies of paragraph 22(b).

27.    **NO MERGER OF TITLE**. There shall be no merger of this Lease nor of the leasehold estate created by this Lease with the fee estate in or ownership of the Leased Premises by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, (i) this Lease or the leasehold estate created by this Lease or any interest in this Lease or in such leasehold estate, and (ii) the fee estate or ownership of the Leased Premises or any interest in such fee estate or ownership. No such merger shall occur unless and until all persons, corporations, firms and other entities (including any Mortgagee) having any interest in (i) this Lease or the leasehold estate created by this Lease, and (ii) the fee estate in or ownership of the Leased Premises sought to be merged shall join in a written instrument effecting such merger and shall duly record the same.

28.    **ALTERATION AND EXPANSION**.

(a)    <u>Alterations Generally</u>. Tenant may, at its expense make any Alterations, construct upon the Land any additions to the Improvements or install equipment in the Improvements or

<div style="text-align:center">24</div>

accessions to the Landlord's Equipment without Landlord's consent, provided that (i) the character of the Leased Premises shall not be materially changed and the market value of the Leased Premises shall not be materially lessened by any such Alteration, construction or installation (it being agreed that any expansion or enlargement referred to in subparagraph (b) below shall not be deemed to constitute a material change in the character of the Leased Premises), nor shall the usefulness or structural integrity of the Leased Premises be impaired thereby, (ii) all such work of Alteration, construction and installation shall be performed in a good and workmanlike manner, (iii) all such Alterations, construction and installation shall be expeditiously completed in compliance with all Legal Requirements, (iv) all work done in connection with any such Alteration, construction or installation shall comply with the requirements of any insurance policy required to be maintained by Tenant hereunder, (v) Tenant shall promptly pay all costs and expenses of any such Alteration, construction or installation, and Tenant shall discharge all Liens filed against the Leased Premises arising out of the same, and (vi) Tenant shall procure and pay for all permits and licenses required in connection with any such Alteration, construction or installation. In the case of any other proposed Alteration, construction or installation, Tenant shall first obtain Landlord's and Mortgagee's consents, which consents may be withheld in Landlord's or Mortgagee's sole discretion. All such Alterations, construction and installations (except Tenant's Equipment) shall be the property of Landlord and shall be subject to this Lease.

(b) <u>Alterations Involving Expansion of Improvements</u>. It is understood that Tenant may at future times during the Term wish to enlarge the Improvements by constructing Alterations and additions thereto and that such enlarging may require purchase of additional land. Tenant shall have the sole responsibility for negotiating and providing for the purchase, renovation and construction of such Alterations and additions and of such land as is necessary for its expansion plans. If Tenant is able to obtain agreements for the purchase of such additional land and contracts for the Alterations and additions at a cost satisfactory to it, Tenant may then request that Landlord purchase such Alterations, additions and land and incorporate the same into this Lease upon terms and conditions negotiated by the parties; provided, however, that Landlord shall have no obligation to purchase such Alterations, additions and land. If the parties are unable to agree, then Tenant shall have the right to construct Alterations and additions at its own expense and to make such changes as are necessary to make the entire enlarged building suitable for use and occupancy by Tenant in the conduct of its business; but Tenant shall not have the right to mortgage or pledge this Lease or the leasehold estate created hereby or its interest in such Alterations to finance such Alterations. Prior to commencement of construction of such Alterations, Tenant shall provide Landlord and Mortgagee with a set of plans and specifications for such Alterations. Following substantial completion of such Alterations, Tenant shall provide Landlord and Mortgagee with (i) copies of certificates of occupancy or completion, if required by Legal Requirements, and (ii) an as-built survey of the Alterations and additional land demonstrating that the Alterations do not encroach upon or violate any easements, covenants, conditions or restrictions affecting the Leased Premises or the additional land. Subject to the following sentence, all such Alterations and additions and such land shall be subject to the terms of this Lease to the same extent as if owned by Landlord and leased under this Lease. With respect to Alterations constructed on land other than the Land, if Tenant can demonstrate, to the reasonable satisfaction of Landlord and Mortgagee, that the original Leased Premises, prior to any such Alterations, reasonably can be operated as an economic unit separate and apart from such Alterations in compliance with Legal Requirements and with relatively minor modifications to permit such separate operation, then such separate Alterations and land shall not be considered part of or subject to this Lease. Except as provided in the preceding sentence, at the end of the Term of this Lease, title to such Alterations, additions and land as necessary to meet any Legal Requirements shall pass to Landlord without cost or expense to Landlord, Tenant shall execute additional documents as necessary to complete such transfer, and Tenant shall provide a title insurance policy insuring Landlord's fee simple title interest in such additional land. If title to such Alterations, additions and land is to be retained by Tenant at the end of the Term of this Lease,

25

then, not earlier than two hundred forty (240) days, and not later than sixty (60) days, prior to the end of the Term of this Lease, Tenant shall make such alterations, or construct or erect such improvements, as may be necessary to divide the Leased Premises and such Alterations and land into separate units in compliance with the requirements set forth above and Legal Requirements. Following substantial completion of such dividing improvements, Tenant shall provide Landlord and Mortgagee with (i) a copy of a new certificate of occupancy or completion for the Leased Premises, if required by Legal Requirements, and (ii) an as-built survey of the dividing improvements demonstrating that the centerline of the dividing improvements is constructed on the common boundary of the Leased Premises and additional land owned by Tenant.

29.    **CHANGE OF CONTROL.**  In the event that, at any time during the Initial Term, a Change of Control shall occur, Tenant shall, not later than thirty (30) days after such Change of Control, give to Landlord a Purchase Offer, at a price determined in accordance with Exhibit "F". Unless Landlord shall accept such Purchase Offer by notice to Tenant given not later than the tenth day prior to the Termination Date specified in such Purchase Offer, this Lease shall remain in full force and effect. Unless Landlord shall have accepted such Purchase Offer by notice to Tenant given not later than the tenth day prior to the Termination Date, Landlord shall be conclusively presumed to have rejected such Purchase Offer. If Landlord shall so accept such Purchase Offer, Landlord shall transfer and convey the Leased Premises to Tenant or its designee upon the terms and provisions set forth in paragraph 10, against payment by Tenant of the purchase price therefor and all installments of Basic Rent, all Additional Rent and all other sums then due and payable under this Lease to and including such Termination Date.

30.    **MISCELLANEOUS.**  The paragraph headings in this Lease and the Table of Contents preceding this Lease are for convenience only and are not to be used in determining the intent of the parties or otherwise interpreting this Lease. As used in this Lease, the singular shall include the plural as the context requires, and the following words and phrases shall have the following meanings:  (i) "including" shall mean "including but not limited to"; (ii) "provisions" shall mean "provisions, terms, agreements, covenants and/or conditions"; and (iii) "obligation" shall mean "obligation, duty, agreement, liability, covenant or condition". Any act which Tenant is required to perform under this Lease shall be performed at Tenant's sole cost and expense. This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought. The covenants of this Lease shall run with the land and bind Tenant and all successors and assigns of Tenant and shall inure to the benefit of and bind Landlord, its successors and assigns. If any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Lease but this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. This Lease may be simultaneously executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes. This Lease shall be governed by and construed according to the laws of the State. All Exhibits and attachments to this Lease are by reference incorporated into, and form a part of, this Lease. A memorandum of this Lease substantially in the form attached as Exhibit "H" shall be recorded in the records of the appropriate public office having custody of the real property records of the county in which the Leased Premises is located.

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this instrument to be executed under seal as of the day and year first above written.

Witnesses:

Print name: _William A. Mann_

Print name: _Sallie T. Overman_

**STATE PROPERTIES, LLC**, a North Carolina limited liability company

By: _Theodore S. Royer, Jr._
    Theodore S. Royal, Jr.
Its: _Member_

Print name: **Cynthia N. Crossland**

Printed Name: _Rebecca L. Sawyer_

**WINN-DIXIE RALEIGH, INC.,**

By: _James Kufeldt_
    James Kufeldt
Its: Vice President

Attest: _____
    Its: Assistant Secretary

27

STATE OF North Carolina )
COUNTY OF Wake )

I, William A. Mann, a Notary Public, State and County aforesaid, do hereby certify that Theodore Bazall personally appeared before me this day and acknowledged that he/she is a Member of STATE PROPERTIES, LLC., a North Carolina limited liability company, and that, by authority duly given and as the act of the company, the foregoing instrument was signed in its name by Theodore S. Bazall, its Member, with full authority.

Witness my hand and official seal, this the 19th day of August, 1997.

William A. Mann
Printed Name:
Notary Public, State and County aforesaid
My commission expires: 12-14-99
(NOTARIAL SEAL)

WILLIAM A. MANN
NOTARY PUBLIC
WAKE COUNTY, N.C.
My Commission Expires 12-14-99

STATE OF FLORIDA )
COUNTY OF DUVAL )

I, __________, a Notary Public, State and County aforesaid, do hereby certify that Mallory Gayle Holm personally appeared before me this day and acknowledged that he/she is ASST. Secretary of Winn-Dixie Raleigh, Inc., a Florida corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its Vice President, sealed with its corporate seal, and attested by her/himself as its ASST. Secretary.

Witness my hand and official seal, this the 4 day of September, 1997.

Rebecca L. Sawyer
Printed Name: Rebecca L. Sawyer
Notary Public, State and County aforesaid
My commission expires:
(NOTARIAL SEAL)

NOTARY PUBLIC STATE OF FLORIDA

REBECCA L. SAWYER
My Comm. Exp. June 2, 1998
Comm. No. CC 372310