1                UNITED STATES BANKRUPTCY COURT
                   MIDDLE DISTRICT OF FLORIDA
2                   JACKSONVILLE DIVISION

3

4   IN RE:

5

    WINN-DIXIE STORES, INC.,        CASE NO.: 05-3817-3F1
6   et al.

7            Debtors.
                              /
8

9
                  TRANSCRIPT OF PROCEEDINGS
10

11          Hearing on Motion for Order Further Extending

12   Exclusive Periods for Filing Chapter 11 Plans and

13   Obtaining Acceptances of Such Plans Filed by Debtor,

14   Motion Regarding Filing Under Seal of Pleadings Related

15   to Appointment of Equity Committee Filed by Debtor,

16   before the Honorable Jerry A. Funk, U.S. Bankruptcy

17   Judge, to commence at approximately 1:00 p.m., on

18   Thursday, September 8, 2005, at the United States

19   Courthouse, Courtroom 4D, 300 North Hogan Street,

20   Jacksonville, Florida, before Elizabeth M. Masters,

21   RPR, and a Notary Public in and for the State of

22   Florida at Large.

23

24               STATEWIDE REPORTING SERVICE
                    606 BLACKSTONE BUILDING
25               JACKSONVILLE, FLORIDA  32202
                      (904) 353-7706

```
 1                    A P P E A R A N C E S

 2

 3

 4

 5        STEPHEN D. BUSEY, ESQUIRE
          CYNTHIA C. JACKSON, ESQUIRE
 6        D. J. BAKER, ESQUIRE

 7        Attorneys for Debtors

 8

          KEN MEEKER, ESQUIRE
 9
          Attorney for the U. S. Trustee
10

11        JOHN MACDONALD, ESQUIRE
          MATTHEW BARR, ESQUIRE
12
          Attorneys for the Unsecured Creditors'
13        Committee

14

          JERRETT McCONNELL, ESQUIRE
15
          Attorney for the Ad Hoc Committee
16

17        CAROL DENNISTON, ESQUIRE

18        Attorney for the proposed Equity Committee

19

20

21

22

23

24

25
```

1                   T A B L E   O F   C O N T E N T S

2

3    WITNESS                                        PAGE

4
     LARRY APPEL
5

6    Re:  Motion Regarding Filing Under
     Seal of Pleadings Related to Appointment
7    of Equity Committee Filed by Debtor

8

9
         Direct Examination
10            by Mr. Busey                          14

11
         Cross-Examination
12            by Mr. Meeker                         21

13
         Redirect Examination
14            by Mr. Busey                          23
15

16

17

18

19

20

21

22

23

24

25

```
 1              P R O C E E D I N G S
 2  September 8, 2005                    1:00 p.m.
 3                    - - -                       .
 4          THE COURT:  Good afternoon.  We're here today
 5      on the case of Winn-Dixie Stores.  The Court will
 6      follow the final agenda that has been filed.
 7          The first matter is a Motion for Order
 8      Further Extending Exclusive Periods.
 9          MR. BUSEY:  Your Honor, Steve Busey on behalf
10      of the Debtors.
11          By this motion, the Debtors seek an order
12      from the Court further extending the period in
13      which the Debtors have the exclusive right to file
14      a plan of reorganization under Section 1121 of the
15      Bankruptcy Code.
16          That section gives the Debtors the exclusive
17      right to file a plan for a period of 120 days
18      after the petition date.  And on the Debtors'
19      motion, you have already extended that period
20      once, for 90 days.  And by this motion, we seek a
21      second extension for another 90 days.
22          You've heard what we have done early in the
23      case when we asked for the first extension, and I
24      want to briefly give the Court some summary, most
25      of which you've seen in this courtroom, of what
```

1    we've done during the last 90 days towards

2    achieving the successful reorganization of

3    Winn-Dixie.

4         Now, you're aware that the Court has approved

5    the Debtors' resolution of, or procedures for the

6    resolution of, reclamation claims, perishable

7    agriculture commodity act claims and general

8    prepetition litigation claims, totaling some $200

9    million.

10        The Court has seen that the Debtors have

11   redefined their marketing footprint.  And they

12   have decided, and are in the process of

13   implementing, a change from approximately 913

14   stores to 587 stores.

15        You've seen, pursuant to that, that we have

16   sold approximately, in this courtroom, a hundred

17   stores and store leases.  We've rejected

18   approximately 180 store leases to date.  We're

19   conducting, the company is conducting, 240

20   going-out-of-business sales this month, in

21   September, in the remaining stores.

22        And in the process of doing all that, the

23   company is in the process of, at this moment,

24   implementing approximately a 30-percent reduction

25   in its general administrative expenses and its

1    overhead here in Jacksonville.

2        In addition to all of this, in the remaining

3    core stores, the company has implemented

4    substantial merchandising initiatives to increase

5    sales and margins in the surviving stores.

6        The company has, having accomplished all of

7    that, promised the Creditors' Committees that we

8    will deliver to the Creditors' Committee, by the

9    end of October, a business plan which will

10    incorporate the results of operations as a result

11    of the new footprint and including numbers for

12    August and September.

13        After delivering that business plan, we're

14    going to talk to the Creditors' Committee about it

15    and hope to achieve a consensus about what the

16    future business plan of the company will be.

17        And based upon that business plan, once

18    there's a consensus about it, propose to the

19    Creditors' Committee a plan of reorganization,

20    negotiate that plan of reorganization, and then

21    hopefully, with the consent of the Creditors'

22    Committee and other interested parties, bring that

23    plan to this Court.

24        The 90 days we've asked for, which will take

25    us through December 19th, with the corresponding

1    60 days for solicitation after that to February

2    20th, was agreed to with the Committee.  And they

3    do not object to the relief that we're asking for

4    in this regard.

5        Our motion said that we may not well, within

6    that time period, complete the process that I have

7    described and actually achieve a consensus on a

8    business plan and a plan of reorganization and

9    file that plan by December 19th.

10       In fact, the company's motion said that we

11   don't expect we really will do that in that time

12   period.  But this gives us a period by which we

13   can come back and measure how we're doing, and, if

14   we need more time, talk to the Court about it.

15       And, obviously, that process has not been and

16   that timeline has not been enhanced by what

17   happened in New Orleans last week.  The company

18   has approximately 28 stores that are still closed,

19   20 of its most profitable stores which are still

20   closed, a number of which are still underwater.

21       The Committee has filed a statement, not an

22   objection to this, saying they don't object to the

23   relief that we've asked, but have expressed their

24   concerns about the timing and expressed their

25   concerns about any further extension.

1          For the reasons I've stated, we think we may

2     want a further extension.  But none of that is

3     before the Court today.  If we do, we will come

4     back to the Court in December and, if we need more

5     time, we'll put on a case showing why we need more

6     time and we can consider that at the time.

7          But for today, and in the absence of

8     objection, the company asks that the Court extend

9     the exclusive period until December 19th and the

10    solicitation period until February 20th.

11         THE COURT:  Objections or comments?

12         MR. BARR:  Thank you, Your Honor.  Matthew

13    Barr, Milbank, Tweed, Hadley & McCloy, on behalf

14    of the official Committee of Unsecured Creditors.

15         As Mr. Busey outlined, we did file a

16    statement, Your Honor.  We do not oppose the

17    extension, but we did outline what the Creditors'

18    Committee's expectations are based upon meetings

19    and other items in the case to date.

20         Your Honor, we're here prepared to answer any

21    questions you may have with respect to that.  I

22    can walk through it, Your Honor, if you haven't

23    had a chance to look at it or if you would like me

24    to for the record.

25         But our expectations are set forth in the

1    statement that we filed.

2         THE COURT:  I have read your statement.

3    You're free to articulate on it if you would

4    like --

5         MR. BARR:  Thank you.

6         THE COURT: -- for whatever reasons you may

7    deem appropriate.

8         MR. BARR:  Thank you, Your Honor.

9         Again, we don't oppose the entry of the order

10   extending it.  We do expect, as Mr. Busey stated

11   today, to receive a business plan, hopefully by

12   the end of October, and to meet with the Debtors

13   and to try to come up with a consensual plan.

14        Which we do believe and we will endeavor,

15   Your Honor, and put up all of our resources to the

16   task of trying to get it filed before the next

17   extension.

18        But we understand that that's not in front of

19   you, Your Honor.  And if there is another motion

20   filed, we will, of course, be here expressing

21   concerns, if we have any, or a short adjournment

22   of that date, if that is appropriate under the

23   circumstances.

24        But as we stand today, Your Honor, we think

25   that we should be in a position December 19th to

1     have a consensual plan on file.

2         And, again, the Committee is committed to

3     endeavor to do that.

4         THE COURT:  Thank you.

5         MS. DENNISTON:  Good afternoon, Your Honor.

6     Carol Denniston, on behalf of the Equity

7     Committee, of Paul, Hastings, Janofsky & Walker.

8         We would note for the record, consistent with

9     the Court's directive, we now have access to

10    electronic filing.  Our limited objection was

11    refiled electronically yesterday.

12        The Committee has spoken with the Debtors'

13    counsel, and the request for information that the

14    Equity Committee had sought in its limited

15    objection has now been addressed.  So the Equity

16    Committee, at this point, does not have any

17    further objection to the Debtors' motion.

18        THE COURT:  Thank you.

19        That being said, the Court finds that it

20    would be appropriate to grant the motion extending

21    the exclusive periods for an additional 90 days.

22        This case, obviously, is very complex.  It's

23    a big case.  It's probably even more complex than

24    cases that are even larger, based on the various

25    entities involved, the number of stores,

1    manufacturing and retail, the gigantic number of

2    leases, the total amount of the claims and the

3    diversity of the type of those claims.

4        All that being taken into hand, and,

5    furthermore, it appears that the Debtor is working

6    diligently toward that point of reorganizing.

7    They have settled numerous matters and seem to be

8    on top of the case.

9        It's not a situation where nothing has been

10   done for six months and now they're here waving

11   something in front of the Court.  The Creditors'

12   Committee has also pointed out to me that

13   everything has been done.

14       And being no other objections, the Court once

15   again grants the motion.

16       Do you have an appropriate order?

17       MR. BUSEY:  We do, Your Honor.  (Tenders

18   order.)

19       THE COURT:  Order is signed, hearing

20   concluded.

21   ...

22       THE COURT:  And I believe the last matter on

23   the agenda is a Motion Regarding Filing Under Seal

24   of Pleadings Related to the Appointment of the

25   Equity Committee; is that correct?

1          MR. BUSEY:  It is, Your Honor.

2          THE COURT:  On the motion.

3          MR. BUSEY:  Your Honor, by this motion, the

4     Debtors are aware that the U.S. Trustee has

5     appointed an Equity Committee in this case.  And

6     that the Creditors' Committee has filed a motion

7     now under seal, pursuant to your authority, asking

8     the Court to disband the Equity Committee on the

9     grounds that there is no prospect for distribution

10    in this case to the former shareholders of

11    Winn-Dixie, or the shareholders of Winn-Dixie as

12    of the petition date.

13         The dispute regarding -- that's framed by

14    that motion, and the responses to it, will relate

15    to whether or not what the value of the company is

16    and whether or not there will be a return for the

17    former shareholders, or the shareholders as of the

18    petition date.

19         The company believes that the argument and

20    the evidence relevant to that dispute will involve

21    the Court hearing confidential commercial

22    information related to the company.  And that's a

23    term of art that is used in Section 107 of the

24    Bankruptcy Code.

25         In Section 107 of the Bankruptcy Code, it

1       says that the Court has authority to enter orders

2       to protect confidential commercial information.

3           And so by this motion, the Debtors are

4       seeking an order asking the Court to hear that

5       contested matter in camera and to receive

6       pleadings relating to it, memoranda relating to

7       it and evidence relating to it and hearing the

8       argument relating to it in camera and under seal.

9           For the purpose of the Court's consideration

10      of this motion, we would like to call the general

11      counsel of Winn-Dixie, Larry Appel, to the stand.

12          THE COURT:  Very well.

13          COURTROOM ADMINISTRATOR:  If you would be

14      seated in the witness stand, please.  Raise your

15      right hand.

16  WHEREUPON,

17                      LARRY APPEL,

18  having been produced and first duly sworn as a witness

19  by the courtroom administrator, was examined and

20  testified as follows:

21          COURTROOM ADMINISTRATOR:  Will you state your

22      name and current home or business address, and

23      include the city and state.

24          THE WITNESS:  Larry Appel, 5550 Edgewood

25      Court, Jacksonville, Florida 32254.  It's a

1        business address.

2                        DIRECT EXAMINATION

3   BY MR. BUSEY:

4        Q    Mr. Appel, you're employed by Winn-Dixie?

5        A    Yes, I am.

6        Q    The Debtors in this case?

7        A    Yes.

8        Q    What is your position with Winn-Dixie?

9        A    Senior vice president and general counsel.

10       Q    And how long have you held that position?

11       A    It will be three years at the end of

12  September.

13       Q    Are you having fun so far?

14       A    So far.

15            (Laughter.)

16       Q    What are your responsibilities as senior vice

17  president and general counsel and corporate secretary?

18       A    As general counsel, I'm responsible for the

19  legal function, both the oversight of internal and

20  external counsel.

21            As corporate secretary, I'm responsible for

22  corporate governance and relationship between

23  management and the board.

24            And I also oversee our compliance department

25  and our loss prevention and security functions.

 1        Q      And in that regard, what are your

 2   responsibilities in connection with these Chapter 11

 3   cases?

 4        A      I'm the responsible person within company

 5   management for case management generally and for

 6   oversight of our outside counsel, Smith, Hulsey,

 7   Skadden, Arps, and other outside counsel.

 8        Q      Are you aware that the United States Trustee

 9   has appointed an Equity Committee to serve in this

10   case?

11        A      Yes.

12        Q      Are you aware that the official Committee of

13   Unsecured Creditors has filed a motion asking the Court

14   to disband the Equity Committee?

15        A      Yes, I am.

16        Q      Have you read that motion?

17        A      I have.

18        Q      It was filed under seal?

19        A      Yes, it was.

20        Q      Are you aware that the Creditors' Committee

21   has also promulgated, pursuant to that motion, requests

22   for production of documents to the Debtors?

23        A      I am aware of that.

24        Q      Have you read it?

25        A      Yes, I have.

1    Q    And, generally, what's the type of

2  information that the Creditors' Committee is requesting

3  from the Debtor pursuant to that discovery request in

4  this contested matter?

5    A    The Creditors' Committee is looking for

6  communications between the company and the Equity

7  Committee, and then the Creditors' Committee is looking

8  for a large volume of financial information, financial

9  data, current financial information projections, which

10  I assume they're looking to towards value discussions.

11    Q    Does the company have an agreement with the

12  Creditors' Committee and its members regarding

13  confidentiality of information the Committee obtains

14  from the company?

15    A    Yes, we do.  At the very inception of the

16  case, we worked diligently with the Creditor Committee

17  professionals, both their financial advisors and their

18  lawyers, to have all the professionals execute

19  confidentiality agreements and for the bylaws of the

20  Committee to appropriately protect the confidentiality

21  of our information.

22    Q    Does the company have a concern that

23  information requested by the Creditors' Committee, if

24  it becomes public through filings in this Court or

25  hearings in this Court or service among interested

1   parties could be damaging to the company?

2       A    Yes, we do.

3       Q    Tell us what those concerns are, please.

4       A    Well, broadly speaking, there are two

5   categories of information that are concerning to us.

6   One is financial information.  There is a great deal of

7   financial data that would not -- that is not public and

8   is confidential to the company, both in the form of

9   historic financial data, whether it's by geographic

10  region or by department, bakery, deli, grocery, et

11  cetera, as well as forward looking information, cash

12  flow projections and other forward looking

13  information.  So one set of information that we worry

14  about is just the financial data.

15          The second set I would more describe as

16  strategic.  And whether it's the assumptions underlying

17  the financial data or the explicitly stated strategic

18  goals of the company, there is a great deal of

19  information that would undoubtedly be a part of this

20  that speaks to the strategies the company will employ

21  or deploy to drive the business results that we desire,

22  and both of those are very troubling to us in terms of

23  those type strategic and financial information becoming

24  public.

25      Q    Tell me the prejudices that you perceive the

1  company would suffer if the information you just

2  described would become public.

3      A    I guess the easiest way to do that is to talk

4  about two or three sets of concerns in terms of what --

5  that we would have.

6          The first one I would describe as competitive

7  impact.  We do worry about the impact to the business

8  and our ability to be successful in the future to our

9  competitors having public availability to some of the

10  data.

11          For instance, if there are projections and

12  they -- both in the assumptions and -- and, again, just

13  implicitly in the numbers, direct departments or areas

14  of the country in which we're going to be looking to

15  drive sales, other areas of the business perhaps where

16  we think we can get margin dollars, the amount of

17  advertising dollars that we're going to spend and how

18  we're going to spend it, all of those things, if we

19  could have access to our competitors' similar

20  strategies, we would love to have it.  And we think it

21  could be damaging to the business if they had access to

22  ours.  So one concern, if you will, is competitive

23  impact.

24          The second, I guess, I would describe as

25  commercial dealings.  We have dealings with a lot of

1   third parties.  And we worry about the ability to

2   successfully complete some of those dealings if the

3   information were public.

4           For instance, in our projections and many of

5   our forward looking statements, we would have

6   assumptions about lease negotiations with landlords and

7   lease concessions we might obtain.  We might have

8   projections about vendor financing and vendor credit.

9           And to have the company's projections and

10  assumptions about where we'll end up or anywhere on

11  that scale known publicly would necessarily, I think,

12  impact our ability to reach the same conclusion in

13  those negotiations as we would reach if that were still

14  private.  So that's a second set of concerns.

15          And then the third set of concerns really

16  goes to being a public company and trading a public

17  company's securities.  As I said, a lot of the

18  information that we're talking about and that I think

19  would inevitably have to come up in this discussion is

20  of the type that's not publicly disclosed.  As such,

21  disclosure of it could and undoubtedly would impact

22  trading in our securities.

23          And that concern is somewhat exacerbated,

24  because in many cases, the information would be used in

25  the hearings and in a different context than it was

1  prepared.

2          For instance, we have a bank plan which was

3  prepared in order to establish covenants for compliance

4  levels with the bank, but it would be referred to in

5  hearings for basis evaluation, which, of course, is

6  very important to folks buying and selling securities.

7          So, you know, anytime you have information

8  that's been prepared for one purpose and is being

9  utilized for another purpose and being relied on in the

10  public securities markets, or at least available to the

11  public securities markets, you know, that's another

12  concern.

13          And I would say that, you know, if the

14  hearings were public, I would think to satisfy -- well,

15  not even to satisfy -- to try to manage through that

16  concern, we'd have a securities lawyer sitting in every

17  aspect of every meeting and every deposition to make

18  sure that we weren't selectively disclosing

19  information.

20          And we would put ourselves in a position

21  where if we said something to one person, we might feel

22  compelled to disclose it more broadly to make sure that

23  anything we're doing is consistent with the securities

24  laws concern.  That would add cost and burden as well.

25          So those, I think, would be the three primary

1    areas that I would -- that I worry about.

2            MR. BUSEY:  We have no further questions of

3        the witness, Your Honor.

4            THE COURT:  Cross-examination of the witness.

5            Mr. Meeker.

6            MR. MEEKER:  I haven't entered an appearance

7        yet today, Your Honor.  Ken Meeker for the U.S.

8        Trustee.

9                        CROSS-EXAMINATION

10   BY MR. MEEKER:

11       Q    Mr. Appel, the commercial impact, the

12   commercial dealings, those particular issues, are they

13   going to come up between now and December 19th?

14       A    I'm sorry, Ken --

15       Q    Well --

16       A    -- I'm not sure I understand.

17       Q    -- as I listened to your comments, it sounded

18   as if you were talking about competitive issues that

19   are ongoing out into the future.

20       A    They exist today and they would be ongoing

21   into the future, sure.

22       Q    And the commercial dealings, I mean, are you

23   talking about things that are going to take place

24   between now and December 19th?

25       A    I'm not sure.  There are a lot of commercial

1   dealings.  But, for instance, the two I mentioned, I

2   think they would take place between now and December

3   19th substantially.

4        Q    All right.  And in the body of the motion

5   itself, which I have not seen, is there a recitation of

6   some of these issues in specific fact nature?

7        A    Are you asking me whether the Creditor

8   Committee motion speaks to the issues which I've

9   expressed concern to in terms of the actual company

10  data?

11       Q    And sets forth that data in such a way that

12  you think shouldn't be made public.

13       A    Yes, yes.  My review of the motion is that --

14  I'm sorry -- of the Creditor Committee motion is that

15  it contains the kind of data that I have expressed

16  concern about.

17       Q    Okay.  And whether or not there is equity for

18  the shareholders that were in place at the time of

19  filing will largely be determined at the time you file

20  your plan.  At least it will be projected.

21       A    I assume that's true.  Sure, the plan of

22  reorganization would -- would settle that.

23            MR. MEEKER:  Okay.  That's all I have, Your

24       Honor.

25            THE COURT:  Does anybody else have any

1      questions of the witness?

2          Redirect?

3          MR. BUSEY:  Yes, Your Honor.

4                  REDIRECT EXAMINATION

5  BY MR. BUSEY:

6      Q    Does the Creditors' Committee motion, which

7  was filed under seal, actually have the bank plan

8  attached to it?

9      A    Yes.

10     Q    And the Creditors' Committee was in

11 possession of the bank plan because they have signed a

12 confidentiality agreement?

13     A    Correct.

14     Q    And the bank has signed a confidentiality

15 agreement?

16     A    Absolutely.

17     Q    And does the bank plan contain assumptions,

18 for example, that you mentioned about projected lease

19 concessions?

20     A    I am almost certain that it does.

21     Q    And results from reclamation claims?

22     A    Yes.

23     Q    And trade credit terms?

24     A    Yes.

25     Q    The restoration of trade credit?

1       A    Yes.

2       Q    Assumptions about all of those things?

3       A    Yes.

4       Q    Would you be at a disadvantage if that

5  information was made public?

6       A    Yes.

7       Q    Why?

8       A    Again, because -- well, because if -- I'd

9  love to enter into a negotiation knowing what the other

10  side hopes to take out of it.  I mean, it would have

11  impact us in those third-party dealings.

12      Q    Is the bank plan that's attached to the

13  motion a good example of your concerns?

14      A    Yes.

15           MR. BUSEY:  No further questions, Your Honor.

16           THE COURT:  Anything further, Mr. Meeker?

17           MR. MEEKER:  No.

18           THE COURT:  Thank you very much, sir.  You

19      may step down.

20           THE WITNESS:  Thank you.

21                          (Witness excused.)

22           THE COURT:  Anything further, Mr. Busey?

23           MR. BUSEY:  No further evidence, Your Honor.

24           THE COURT:  Does anybody else wish to offer

25      any evidence?

```
 1           MR. MEEKER:  Your Honor, could we be heard to
 2      comment on this, argument?
 3           THE COURT:  Yes.  I'm just waiting to see if
 4      anybody else wanted to comment.
 5           MR. MEEKER:  Oh, okay.
 6           THE COURT:  There were some issues raised,
 7      Mr. Busey, by the Ad Hoc Committee.  Have you
 8      discussed this with them?
 9           MR. BUSEY:  Yes.
10           THE COURT:  We have sort of two issues here.
11      Number one, do I make everything under seal or
12      not.  That's the first issue.  And the second, if
13      I do put it under seal, does the Ad Hoc
14      Committee --
15           MR. BUSEY:  Yes, Your Honor, we have
16      discussed it with them, and we have reached a
17      resolution of their concern.
18           We've agreed to permit the Ad Hoc Committee's
19      counsel to receive -- to participate in the
20      proceedings and receive the information on the
21      condition that counsel signs a confidentiality
22      agreement.
23           And the counsel has also requested us to
24      permit two individual members, two named
25      individual members, of the Committee to also
```

```
 1    receive it, subject to a confidentiality

 2    agreement.  And that request is pending with the

 3    company.

 4         THE COURT:  Very well.

 5         MR. McCONNELL:  That's correct, Your Honor.

 6         THE COURT:  I'm sorry, identify yourself.

 7         MR. McCONNELL:  Your Honor, Jerrett

 8    McConnell, appearing on behalf of the Ad Hoc

 9    Committee of Winn-Dixie retirees.

10         That is our outstanding, Your Honor.  And

11    based on that agreement, we are willing to

12    withdraw our limited objection to the motion.

13         THE COURT:  Okay.  Mr. Meeker.

14         MR. BUSEY:  Your Honor, are we going to hear

15    argument?  Is that what we're going to do?

16         THE COURT:  Yes.  I'm going to let Mr. Meeker

17    argue, and then you can come back after him,

18    rather than you going first.  I find it's easier

19    that way.

20         MR. MEEKER:  I'd be happy to defer.

21         Well, Your Honor, we filed an objection.  We

22    find this to be a rather convoluted procedural

23    matter as it is now structured.

24         But, in general, we think that the openness

25    and the accountability in the bankruptcy process
```

1    is more important than the issues that have been

2    raised seeking the seal.

3        When one looks at the cases that have to do

4    with 107 and the commercial information, it goes

5    to things such as lists of doctors who subscribe

6    to a software seller's particular product for

7    medical offices, which is, in essence, a client

8    list, so that must be secret or under seal.

9        But most of the things that we're talking

10    about here are simply the finances of this

11    company, which are the whole gist of this case.

12        We already know what the footprint is.  I

13    don't think that's a secret from anybody.  The

14    reclamation matters have generally been taken care

15    of.  The lease assumptions and those sort of

16    things are well underway.  And I don't think

17    there's any secrets lurking out there in that

18    area.

19        Public disclosure, I don't know enough about

20    what Mr. Appel was referring to to comment

21    directly on that.

22        But the -- it seems to me there are other

23    ways, if there are specific protections that are

24    needed, to handle it as opposed to making this a

25    secret proceeding, a sealed proceeding.

1          If there are in fact items that should not be

2     brought forward, they could be dealt with in a

3     motion in limine.  Discreet items of commercial

4     impact or commercial dealings, if they should not

5     be brought forward, the Debtor can bring those

6     motions.

7          The other thing that is important to keep in

8     mind is that -- well, let me comment on that

9     attachment.  I don't think our objection would go

10    to redacting certain items in the attachment, if

11    it's appropriate, before the motion is made

12    public.

13         But for the whole proceeding, that is our

14    concern, that the whole motion, the whole

15    proceeding, becomes a sealed item, which the

16    general public, which the creditors in general,

17    which any number of people who have an interest in

18    this case would not be privy to or have knowledge

19    of.

20         But then the bottom line becomes, I think for

21    us, at least, is that we don't think the Committee

22    has standing to bring this motion to the Court.

23    We don't think the Court has authority to disband

24    this Committee.

25         And I think that at best the Courts have

```
1    ruled, when faced with this issue, that the Court

2    can take certain action if they find that the U.S.

3    Trustee abused discretion in the appointment of a

4    committee.

5         And we have the rather unique argument that I

6    assume will be made -- as I said, I have not seen

7    this -- that we abused our discretion because we

8    didn't consider something that was secret.

9         So all of this comes down to, bottom line,

10   does the Court have authority to entertain this

11   motion.  And I'm not sure how it's couched.  Is it

12   an abuse of discretion by the U.S. Trustee, or

13   that there's no equity, or -- you know, I don't

14   know.

15        THE COURT:  And I don't either.  I haven't

16   read it.  It was sealed.  I haven't given myself

17   permission to open it yet.

18        MR. MEEKER:  So you and I are on equal

19   footing, in the dark here.

20        But the bottom line is, I think there are a

21   number of things that could be done if the Court

22   and the parties want to do it preliminarily to an

23   ultimate resolution of this seal issue.

24        And one would be for somehow us to be given

25   the grounds that the Unsecured Creditors'
```

1      Committee is asserting or relying on for this

2      motion and let us bring our motion forward about

3      the Court's authority to disband and maybe the

4      whole issue goes away.

5           THE COURT:  Right.  Now, it's procedural

6      things.  I'm not ruling whether they can or can't

7      or the motion has merit.  We haven't dealt with

8      that.

9           For some reason, I thought that the U.S.

10     Trustee had been furnished with a copy of the

11     motion.  Maybe I was --

12          MR. MACDONALD:  Your Honor, we --

13          THE COURT:  Was I mistaken, Mr. Macdonald?

14          MR. MACDONALD:  We have --

15          THE COURT:  They could have responded to the

16     motion.  They appointed the committee.

17          MR. MACDONALD:  Your Honor, it's available,

18     but they have chosen not to take a copy of it at

19     this point.

20          But Mr. Meeker can expand on that.

21          MR. MEEKER:  Well, it's not available, it's

22     available with conditions.  And I'm not sure that

23     we can agree to those conditions because of FOIA

24     requirements, Your Honor.

25          THE COURT:  Okay.

1          Mr. Busey.

2          MR. BUSEY:  Your Honor, we realize that this

3      is an extraordinary request for relief.

4          Let me say first, in response to what

5      Mr. Meeker said, that we are not addressing today

6      the merits of the Committee's motion.  This is the

7      company's motion, asking that that contested

8      matter be heard in camera.

9          And I'm about to show you ample authority for

10     why, on the record we have just made, it should be

11     granted.

12         Fundamentally what we're talking about at

13     issue, as framed by the motion which has been

14     filed under seal, is what's the value of the

15     company?  And when you talk about what the value

16     of the company is, you're going to get into

17     evidence on all sorts of assumptions and

18     projections.

19         And those assumptions and projections, on

20     every aspect of the company's business, relate to

21     the things that you have heard Mr. Appel testify

22     about.  And, that is, disadvantage with

23     competitors, a disadvantage in transactional

24     matters in dealing with third parties, and with

25     the impact of the selective disclosure of

1    nonpublic information on publicly traded

2    securities as well as the trade-in claims in his

3    case.  All of that will be impacted by this

4    information, which is confidential.

5        And so the question is, if it is confidential

6    and it is sensitive and it would be injurious to

7    the estate for this stuff to be heard in the

8    public domain, what authority does the Court have

9    for hearing it in camera?

10       And the authority is in Section 107 of the

11   Bankruptcy Code, because Congress specifically

12   addressed this issue.

13       Section 107 of the Bankruptcy Code says that

14   "Except as provided in subsection (b) of this

15   section, papers filed in a bankruptcy case will be

16   public and available to the public except as

17   provided in subjection (b)."

18       And you go to subsection (b), and it says --

19   and this is Congress' mandate -- "on the request

20   of a party in interest, the Bankruptcy Court

21   shall" -- shall -- "and on the Bankruptcy Court's

22   own motion may protect an entity with respect to a

23   trade secret or confidential research, development

24   or commercial information."

25       And Rule 9018 of the bankruptcy rules adopts

1      that and reiterates it in the same language.

2          And so I want to refer the Court just to a

3      handful of cases that elaborate on that, in the

4      context just like we're describing here, and show

5      the application of the section.

6          And the first case I want to refer to is

7      Farmland Industries.  And all of these are in

8      Winn-Dixie's motion, the citations are all in

9      Winn-Dixie's motion.

10         In Farmland, which is a Bankruptcy Court

11     decision in Missouri, the Court said, "Likewise

12     this Court recognizes" -- just like Mr. Meeker

13     argued -- "that public access to trials is woven

14     deep in the fabric of the American system of

15     government and the heritage of the United States.

16     Every school child in this country is taught that

17     courts are open to the public.  And this Court

18     recognizes that the papers and processes of the

19     courts should be closed from public view only in

20     very limited and exceptional circumstances."

21         However, having said that, we must also

22     recognize, as Congress and the writers of the

23     Federal Rules of Bankruptcy Procedure have, that

24     there are times and circumstances when otherwise

25     public documents should be kept from public view

1       and otherwise public hearings should be closed to

2       the public.  That's cited in Section 107 of the

3       Bankruptcy Code.

4            And then the Court cited from the 2nd

5       Circuit's decision in Oregon, according to the 2nd

6       Circuit, once it's established that the

7       information sought to be protected fits within the

8       categories of definitions of Section 107(b), "The

9       Court is required to protect a requesting

10      interested party and has no discretion to deny the

11      application."

12           And the Court went on to say, "For a

13      retailer" -- like the Debtors here --

14      "confidential commercial information may include

15      short- and long-term marketing strategies."

16           Similarly, the disclosure of information

17      concerning the Debtors' liquidity, or lack of

18      liquidity, would place the Debtors at a serious

19      disadvantage in the marketing and sale of their

20      assets.

21           Once again, the knowledge of liquidity

22      problems in the hands of potential buyers of the

23      Debtors' assets would give those potential buyers

24      substantial leverage over the Debtors.  That's the

25      very concern that Mr. Appel testified to.

1          The Farmland Court went on to say, "The

2     paramount goal in the sale of assets in a

3     bankruptcy proceeding is to obtain the best price

4     possible for the ultimate benefit of the unsecured

5     creditors of the bankruptcy estate.  Disclosure of

6     the information discussed hereinabove would not

7     further that goal, rather, it would hinder and

8     defeat that goal.  An order prohibiting these

9     disclosures is necessary to protect the bankruptcy

10     state, as authorized by Rule 9018."  That was the

11     Farmland case.

12          In the Global Crossing case, the Court said

13     that "In-camera proceedings may encompass trials,

14     hearings, portions of trails or hearings as well

15     as general matters.  They may take place in the

16     chambers or in the courtroom, with spectators

17     excluded."

18          And Global Crossing said, "The teaching of

19     Farmland Industries is that the commercial

20     information that is entitled to protection under

21     Code Section 107(b) and Rule 9018 must be viewed

22     from the practical perspective of damage to the

23     estate or its creditors, and squarely includes

24     information that could prejudice either of them in

25     the sale of assets."

1        And then the Lomas Financial case, which was

2    a decision of the Southern District of New York,

3    District Court, dealt with the securities aspects

4    of 107.

5        And it says, "The Debtors sought an order

6    sealing the response asserting that disclosing the

7    confidential information would affect trading in

8    the Debtors' listed securities and trading in

9    claims against the Debtors.  The Creditors'

10   Committee opposed the sealing, and it urges that

11   the Bankruptcy Court lacked authority to seal the

12   response.  The Creditors' Committee argues that

13   the term 'commercial information,' in Section

14   107(b), protects only information that may give

15   the Debtors' competitors an unfair advantage."

16       That interpretation is too narrow.  The same

17   words appear, "commercial information," in Federal

18   Rule 26(c)(7), and as used there include

19   information relating to the buying and selling of

20   securities in the open market.

21       So Lomas discussed the insensitivity not only

22   to competitive disadvantage but to securities.

23       And then in the Frontier Group, which is a

24   decision of the Bankruptcy Court in Tennessee, the

25   Court observed that "As trade secrets and

1    confidential information are separately enumerated

2    in Section 107(b), confidential commercial

3    information need not rise to the level of a trade

4    secret before it is protected by 107(b)."

5        And then finally -- and this is just a

6    selection of cases that we cited in our brief --

7    in the Northstar Energy Case, which was a decision

8    of the Bankruptcy Court in Texas, the United

9    States Trustee objects to the adoption of the

10    confidentiality proposal, making the same argument

11    in this case as you heard Mr. Meeker make this

12    morning.

13        And the Court addressed the Trustee's

14    objection in the following language.  "In fact,

15    Section 107 mandates the protection of certain

16    types of information, including confidential

17    commercial information.  Such commercial

18    information is defined as that information which

19    would cause an unfair advantage to competitors by

20    providing them information as to the commercial

21    operations of the Debtor.

22        Citing Orion, "It is designed to protect

23    business entities from disclosure of information

24    that could reasonably be expected to cause the

25    entity commercial injury."

1          And the Court said -- and this, I think, is

2     helpful in terms of the argument that you've heard

3     this morning -- "Section 107(b) offers its

4     protections for this very circumstance in order

5     that such situated Debtors need not face the

6     Hobson's choice between involuntary disclosure of

7     vital business information as the quid pro quo of

8     obtaining bankruptcy relief or exposure to

9     economic hardships without the availability of

10    bankruptcy relief in order to preserve the

11    proprietary information upon which its business is

12    based."

13         And speaking directly to the fact that

14    Congress' intent in 107, in saying that it will be

15    open except where necessary to protect

16    confidential business information, is so that

17    Debtors can bring proprietary information into the

18    Bankruptcy Court and have the protection of

19    in-camera proceedings for confidential commercial

20    information, and that being defined as something

21    less than a trade secret.

22         And you've heard Mr. Appel's testimony here

23    that what we're talking about with valuation

24    evidence is projections and assumptions and

25    competing projections and competing assumptions,

1    and the assumptions based upon things like how

2    we're going to do on lease negotiations, which are

3    continuing, and how we're going to do on

4    restoration of trade credit.

5        All of that stuff is very sensitive.  It's

6    going to hurt us in terms of competitor, it's

7    going to hurt us in terms of transactions with

8    third parties, and it's going to affect publicly

9    traded securities.

10        And for all those reasons, we believe that

11    the Debtor is an entity that is entitled to

12    protection under 107.  It is confidential

13    commercial information.  The evidence you receive

14    has not been rebutted.  And for those reasons, as

15    stated by these Courts, it is mandatory that it be

16    protected.

17        And so we ask the Court to enter the relief

18    requested by the motion.

19        THE COURT:  Anything else, Mr. Meeker?

20        MR. MEEKER:  No, Your Honor.

21        THE COURT:  The Court finds that the

22    information that the Debtor wants to protect

23    should be protected.

24        I think, looking at the totality of this

25    particular issue, which is strictly an issue

1      relating to the appointment of an Equity

2      Committee, I think it's best to keep these items

3      under seal and accessible only to the parties

4      particularly affected by that proceeding.

5          It seems that every constituency is involved

6      in the proceeding and has representation both by

7      counsel and individual members who can participate

8      in the proceeding.

9          If this were part of the confirmation

10     process, or if this was something that related to

11     the ultimate disposition of the case, I would

12     probably think differently and have to come up

13     with some kind of procedure just to have certain

14     documents either redacted or sealed and filed in

15     camera.  But I think to try to do that in this

16     type of proceeding would just protract it.

17         And to the extent that maybe your

18     interpretation is correct, I would rather err on

19     the side of caution than to rule in such a

20     situation that hurts the Debtor or creates a

21     situation where we have to start spending a lot of

22     money disseminating information to everybody in

23     the country for fear of some other securities

24     violation.

25         That being said, the objection is overruled

1    and the motion is granted.

2         I'm not sure if I particularly talked about

3    sealed documents.  I think the order ought to

4    spell out how any motion is to be filed in this

5    Court or any responses or objections only relating

6    to this particular matter.

7         They will not be filed electronically.  They

8    will be hand delivered in an envelope, within an

9    envelope, addressed to the deputy in charge, Mike

10   Shadburn.  A cover letter will be attached to the

11   inside envelope identifying it as one of these

12   sealed items and to be held under seal, pursuant

13   to this order.  And then he will deal with it in

14   accordance with our normal procedures.  And it

15   will be maintained under seal, not to be released

16   to anybody except upon order of the Court.

17        Copies to the parties that you're dealing

18   with should be addressed to the particular

19   individual involved and hand delivered to that

20   individual in the same situation so that there

21   won't be any erroneous disclosures, or any other

22   procedure that you may find appropriate.

23        And you will prepare that order.  Pass it by

24   Mr. Meeker and the other parties involved prior to

25   submitting it to me.

1          MR. BUSEY:  Yes, Your Honor.

2          THE COURT:  That concludes the calendar for

3      today as far as I'm aware.

4          MR. BUSEY:  Yes, Your Honor.

5          THE COURT:  Now, do you want to have a

6      hearing on this motion?  Is there discovery that

7      has to be done; is that correct?

8          MR. BUSEY:  Yes, Your Honor.

9          THE COURT:  What's the time frame?

10         MR. BARR:  Thank you, Your Honor.  Matthew

11     Barr, from Milbank, Tweed, again on behalf of the

12     Committee.

13         There is discovery, as Mr. Busey had alluded

14     to.  We have served some document productions, are

15     also going to notice some depositions.

16         We were hopeful that we would be able to have

17     the motion heard on October 14th, if Your Honor

18     would calendar it for that omnibus hearing date.

19     That is one of the Thursday omnibus hearing

20     dates.

21         THE COURT:  I don't know if I would want to

22     do it on an omnibus date.  I've got everybody

23     here, I would have to clear the courtroom.  That

24     doesn't sound like a good way to do it.

25         MR. BARR:  That would be fine, Your Honor.

1     THE COURT:  I think I need to pick a secret

2     date and I'll let everybody know what it is.

3         MR. BUSEY:  Your Honor, if I --

4         THE COURT:  And we won't invite everybody to

5     the courthouse that day.

6         Yes, sir.

7         MR. BUSEY:  I'm going to be in a three-week

8     jury trial in October in this building and,

9     therefore, if we could set that hearing in

10    November, I would appreciate it.

11        THE COURT:  Mrs. Jackson and I will get a

12    date out.  We'll look at our calendars.  I've got

13    a bunch of things going, too.

14        Yes.

15        MR. BARR:  Your Honor, obviously, we would

16    like it heard as soon as possible.

17        THE COURT:  In other words, you can get your

18    discovery done real quickly; is that what you feel

19    like?  I didn't want to end up --

20        MR. BARR:  Your Honor, there are two ways to

21    handle this.  We were going to go by the rules to

22    the T and not ask for the Court to shorten any

23    periods of time for people to respond to

24    discovery.

25        Your Honor, we've tried to have a 26(d)

1      conference.  We haven't been successful to get all

2      the parties on board.  Obviously, some people

3      didn't want to deal with the issue to date.

4          If we can come up with a tighter time frame,

5      Your Honor, or if Your Honor -- we can come back

6      to you with a scheduling order to have a tight

7      time frame for discovery, we should be in a

8      position to go forward very quickly.

9          MR. BUSEY:  It may make sense to let us talk

10     first and see if we can't reach an agreement on

11     this.

12         THE COURT:  See what you can do.

13         And let me know how long you think the

14     hearing will be.  If it's going to be a one-hour

15     hearing or an hour-and-a-half hearing, I can

16     squeeze that in a lot quicker than I can a two-day

17     hearing.

18         MR. BUSEY:  Sure.

19         THE COURT:  Yes.  Do you need to be heard?

20         MS. DENNISTON:    Thank you, Your Honor.

21     Carol Denniston, proposed counsel to the Equity

22     Committee.

23         I concur with the Debtors' counsel's request.

24     I, too, am set for trial in October, Your Honor,

25     during those same weeks, and I will be the counsel

1        primarily responsible for this motion.

2             Also, I wanted to advise the Court that the

3        Equity Committee's response to this motion,

4        although we have not seen it yet, will be to deal

5        with the legal issues first.

6             And we will be requesting a separate date to

7        deal with this on possible summary judgment

8        grounds, in coordination with the comments that

9        the U.S. Trustee has already made to the Court.

10            We believe it may be more effective to deal

11       with legal issues, and then reserve an evidentiary

12       hearing after we have an initial determination

13       from the Court.

14            That being said, Your Honor, the last thing

15       that the Committee is requesting, while we have

16       just retained financial advisors and will be

17       submitting their employment application, the

18       Committee is going to need some time to get up to

19       speed, as the Court can appreciate, having been

20       newly constituted and now dealing with this level

21       of attack on the formation of the Committee.

22            We will need some time to deal with discovery

23       and to deal with the Committee's counsel as well

24       as the Debtors' counsel in terms of reviewing the

25       information that these parties have already

 1    availed.

 2        We intend to move as expeditiously as

 3    possible, but I think that a November hearing date

 4    is probably much more realistic than sometime in

 5    October.

 6        MR. BUSEY:  And, Your Honor, let me offer

 7    this nuance, too, if I may.  I hear what

 8    Mr. Meeker said and Ms. Denniston.

 9        If there is a dispositive legal issue

10    regarding the Court's ability to hear this matter,

11    I would surely ask the Court to hear that issue

12    and resolve it before this estate expends an

13    extraordinary amount of money that it's going to

14    spend on the professionals for those two

15    committees and the Debtors and all of their

16    financial advisers taking depositions about the

17    valuation of this company following all of the

18    document discovery we have got to do.  That's

19    going to impose a huge expense on this estate, the

20    fight itself.

21        And if there is an issue that may resolve it

22    and avoid that fight, at least if we could hear it

23    on an expeditious basis, that would be very

24    helpful.

25        THE COURT:  Now, here's what I prefer.  You

1        guys sit down and work out your time frames.  Set

2        a deadline for anybody to file a dispositive

3        motion, allow the responding parties so many days

4        to file a written response, and then I'll rule on

5        it.

6            I don't need to have oral argument.  If I

7        think so, I'll set a hearing for oral argument.

8        Chances are, I'm going to be able to read your

9        briefs and make that determination based on the

10       law.  The facts aren't in any dispute to any great

11       extent.

12           Mr. Meeker.

13           MR. MEEKER:  Your Honor, an issue that

14       relates to what Mr. Busey has just mentioned that

15       I wanted to raise, we have not had extensive

16       back-and-forth negotiations on our getting access

17       at this point.  But, from the initial discussion,

18       we don't have an agreement.  And it revolves

19       around FOIA and what the terms and conditions are

20       and how we're bound by that, et cetera, and what

21       we can or can't do.

22           If we run into an impasse and we otherwise

23       don't have access to things, can we secure a

24       hearing for the Court to rule on how that matter

25       is to be resolved?  That was my primary item.

1          But in line with what Mr. Busey said, is it

2      possible for us to simply get enough of the motion

3      to see what the Committee's legal theory is?  And

4      we don't need the detail, we don't need the detail

5      that Mr. Appel referred to, but just --

6          THE COURT:  Well, I --

7          MR. MEEKER:  -- enough for us to do this

8      dispositive motion.

9          THE COURT:  I haven't let myself look at the

10     motion yet, so I don't know.

11         Mr. Busey, I'm sure, can answer that.  Maybe

12     they can give you the motion with certain things

13     redacted from it and you can still get the legal

14     basis.  I don't know.  I can't answer everything

15     today.  I know you wish I could.

16         Come up with the order, your time frame.  I

17     would like to expedite this.  We need this case to

18     move forward and get this matter resolved.

19         Obviously, if you're just going to make a

20     motion without -- if it's going to be a summary

21     judgment, you have got to go through all the

22     depositions and everything, and that doesn't make

23     a lot of sense.

24         If you think there's no right or standing or

25     something to raise it, then get those motions

1    filed right away.

2         Work that out and see what you can do.  I'm

3    here to adjudicate disputes.  I'm glad to do it.

4         Hearing concluded.

5         ALL COUNSEL:  Thank you, Your Honor.

6         COURTROOM ADMINISTRATOR:  All rise.  Court is

7    in recess.

8         (Whereupon, the hearings were concluded at

9    2:20 p.m.)

10                    - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                C E R T I F I C A T E

 2  STATE OF FLORIDA )

 3  COUNTY OF DUVAL  )

 4          I, Elizabeth M. Masters, RPR, and Notary

 5  Public, State of Florida at Large, do hereby certify

 6  that the attached material represents the proceedings

 7  before the United States Bankruptcy Court, Middle

 8  District of Florida, Jacksonville Division, before the

 9  Honorable Jerry A. Funk, Bankruptcy Judge, in the

10  matter of In Re:  Winn-Dixie Stores, Inc., et al.; such

11  transcript is an accurate recordation of the

12  proceedings which took place.  A transcript of this

13  proceeding has been produced on September 15, 2005 and

14  filed with the Bankruptcy Court Clerk.

15

16

17

18                        STATEWIDE REPORTING SERVICE

19

20

21

22                        ELIZABETH M. MASTERS, RPR

23

24

25
```