1                UNITED STATES BANKRUPTCY COURT
                  MIDDLE DISTRICT OF FLORIDA
2                    JACKSONVILLE DIVISION

3

4    IN RE:

5    WINN-DIXIE STORES, INC.,      CASE NO.: 05-3817-3F1

6              Debtors.
                                /
7

8

9              TRANSCRIPT OF PROCEEDINGS

10

11

12          Hearing re: Motion for Determination of Old

13   Dixie Produce & Packaging, Inc.'s Claim Under the

14   Perishable Agricultural Commodities Act Filed by

15   Debtor, before the Honorable Jerry A. Funk, U. S.

16   Bankruptcy Judge, commencing at approximately 1:15

17   p.m., on Thursday, August 18, 2005, at the United

18   States Courthouse, Room 4-D, 300 North Hogan Street,

19   Jacksonville, Florida, as reported by Cindy Danese,

20   Notary Public in and for the State of Florida at

21   Large.

22                    - - -

23

24

25

```
 1                    A P P E A R A N C E S

 2

 3

 4

 5        STEPHEN D. BUSEY, ESQUIRE

 6              Smith, Hulsey & Busey
                225 Water Street, Suite 1800
 7              Jacksonville, Florida  32202

 8              Attorneys for Debtors.

 9

10

11

12

13        NICHOLAS V. PULIGNANO, JR., ESQUIRE

14              Marks, Gray, Conroy & Gibbs
                P. O. Box 447
15              Jacksonville, Florida  32201-0447

16              Attorneys for Old Dixie.

17

18

19

20

21

22

23

24

25
```

3

```
 1                   P R O C E E D I N G S
 2   August 18, 2005                        1:15 p.m.
 3                       - - -
 4          THE COURT:  A Motion for Determination of
 5   Old Dixie Produce and Packaging, Inc.'s Claim
 6   under the Perishable Agricultural Commodities Act
 7   Filed by the Debtor.
 8          Yes, sir.
 9          MR. PULIGNANO:  Afternoon, Your Honor.  Nick
10   Pulignano on behalf of Old Dixie.
11          THE COURT:  Mr. Busey, actually we're here
12   on your motion.
13          MR. BUSEY:  That's correct, Your Honor.
14          THE COURT:  So you go first.
15          MR. BUSEY:  Your Honor, before this case was
16   transferred to you from New York, Judge Drain
17   entered an order on the Debtors' motion to
18   provide a process for the resolution and payment,
19   if appropriate, of claims filed by produce
20   suppliers of the Debtors under the, as you so
21   carefully said, the Perishable Agricultural
22   Commodity Act, which we refer to as PACA, because
23   those claims, if they qualify for the eligibility
24   requirements under the Act, are entitled to a
25   superpriority status and get paid right away even
```

1   over secured creditors by reason of that act of

2   Congress.

3        Among the requirements, the Act is there to

4   favor those produce suppliers if those produce

5   suppliers are in the business of and periodically

6   typically do provide short credit terms to

7   debtors and thus are taken advantage of or

8   injured or prejudiced by a bankruptcy.

9        Pursuant to that order by Judge Drain, the

10  Debtors undertook to examine and resolve 127 PACA

11  claims filed in the case totalling some $44

12  million.  And there was one claim we couldn't

13  reach agreement with, and that was Old Dixie,

14  which is the subject of this motion.

15       The dispute between the Debtors and Old

16  Dixie is whether or not Old Dixie qualifies or is

17  eligible for PACA treatment for approximately

18  $165,000 worth of its claims.

19       They filed a PACA claim for $240,000.  These

20  numbers are in the motion and the papers that

21  have been filed, so I'm just going to give you

22  the approximate number.

23       Old Dixie filed PACA claims for about

24  $240,000.  The Debtors determined $53,000 of

25  those were truly postpetition provisions to the

1    Debtors and thus deserved to be paid in the

2    ordinary course and were paid.

3         We determined about $14,000 of them were

4    proper prepetition PACA claims, and that

5    approximately $165,000 of the $240,000 should be

6    disallowed as PACA claims because they weren't

7    eligible.

8         And we made that report, as the Debtors are

9    obligated to file a report with the Court

10   pursuant to the terms of Judge Drain's order.

11        Old Dixie filed an objection to the report,

12   saying Old Dixie thought that all of its claims

13   were entitled to PACA protection.  That objection

14   is Docket Number 1345.  And then the Debtors

15   filed this motion asking the Court to resolve

16   that objection.  And that's how we're here today

17   procedurally.

18        The issue raised by the objection and by the

19   Debtors' motion is a pretty narrow one, and it's

20   a legal issue, and what you're going to hear

21   today is legal argument on it.

22        The invoices themselves and a schedule

23   summarizing those invoices are attached to Old

24   Dixie's objection, and so we don't need to put

25   any evidence in at this point.  Those documents

1    are already in evidence and the numbers are

2    there.

3        But what the issue is that we need to talk

4    about and we need a ruling from the Court on is

5    whether or not those invoices, those $165,000

6    worth of invoices, are eligible for PACA

7    treatment.

8        And the real issue there is that the

9    Congressional purpose in PACA was to provide PACA

10    protection, they call it trust fund protection,

11    because what the Act does, by the Act and by the

12    Code of Federal Regulations adopted by the

13    Secretary of Agriculture pursuant to the Act, is

14    it provides a floating lien on all of the

15    Debtors' inventory for the purpose of protecting

16    the supplying produce dealer.

17        And the produce dealer is supposed to get

18    paid out of the proceeds of those goods, and thus

19    the superpriority protection, but it's only for

20    produce people who provide credit on a short-term

21    basis to sellers.

22        "Short term" is a statutory term.  "Short

23    term" is defined in the Code of Federal

24    Regulations by the Secretary of Agriculture as

25    being 10 days.  And then there's a provision in

1        the regulations which says that you can agree to

2        more than 10 days if there's a writing between

3        the seller and the purchaser, but, in any event,

4        it can't be more than 30 days.  If it's more than

5        30 days, then you're not eligible.

6            And the invoices which are in question here

7        are, on their face, terms that are more than 30

8        days and, therefore, they're not eligible.

9            And the invoices, you will see them there,

10       but they'll have an invoice date.  And the

11       eligibility is not more than 30 days from the

12       date of shipment and receipt of the goods.  And

13       if the invoice and the term of the invoice calls

14       for payment at a point in time more than 30 days

15       after the shipment and the receipt of the goods,

16       then on its face it's not PACA eligible.  And

17       those are the invoices that we're talking about

18       here.

19           Now, we have a dispute of law about this, so

20       I want to walk through the law with you and show

21       you the law that says what I just said is the

22       case and that you should use that as your

23       guidance in resolving this issue.

24           THE COURT:  One question before we get

25       started so I get the facts right.

1          All of the disputed invoices have the PACA

2     language pretyped on there; is that correct?

3          MR. BUSEY:  Yes.

4          THE COURT:  And all of the disputed invoices

5     show that they're payable either 45 days from

6     date of delivery or a specific date which is

7     close to 45 days.

8          MR. BUSEY:  Which is more than 30 days.

9          THE COURT:  More than 30, and usually right

10     at 44 or 45.

11          MR. BUSEY:  Yes.  A subset of that -- yes,

12     to answer your question.  A subset of that is

13     there are some invoices which on the top of the

14     invoice says "Reprint" or "Duplicate," and if you

15     look at that invoice, the payment term, the date

16     of the invoice to the date of payment or call for

17     payment is less than 30 days.

18          But we can show in each instance that that

19     is an invoice that was generated in January or

20     February of this year that restated an invoice

21     that had been previously sent with more than 30

22     days.

23          And what Old Dixie realized is that

24     Winn-Dixie was on the verge of a filing, and so

25     they reinvoiced the same invoice stating a

1    shorter term.  I forget the number.  That's

2    approximately 17,000.  But every one of those

3    invoices, we can go back and show the original

4    invoice which was more than 30 days.

5         That's just a subset issue we'll get to.

6         THE COURT:  I don't remember that issue

7    being spelled out in the motion.

8         MR. BUSEY:  It wasn't.  We realized it when

9    we went back and looked at each individual

10   invoice.

11        Your Honor, the law that I'd like to show

12   you I've collected in terms of the regulation and

13   some case law, and I have a notebook for Mr.

14   Pulignano and for the Court and for the Court's

15   clerk, if I may hand them out.

16        THE COURT:  Certainly.

17        MR. PULIGNANO:  Can I sit down for a minute?

18        THE COURT:  Make yourself comfortable, Mr.

19   Pulignano.

20        MR. PULIGNANO:  I was going to offer to

21   submit --

22        THE COURT:  He may or may not sit down while

23   you're talking.

24        MR. PULIGNANO:  I think he's going to go for

25   a speech, so I'm going to sit down.  Thank you,

1       Your Honor.

2           MR. BUSEY:  Your Honor, under the first tab

3       in this notebook we have the applicable Code of

4       Federal Regulation which describes the

5       eligibility requirements, and you will see that

6       I've highlighted the pertinent sections on the

7       first page.

8           This is Section 46.46 of the Code of Federal

9       Regulations; Title 7 - Agricultural, Subtitle B -

10      Regulations of the Department of Agriculture,

11      Chapter 1 - Agricultural Marketing Services,

12      Subchapter B - Marketing of Perishable

13      Agricultural Commodities, Part 46 - Regulations.

14          I can't imagine making a living doing this.

15          Under "Trust benefits" it says, "When a

16      seller, supplier or agent who has met the

17      eligibility requirements of paragraphs (e)(1) and

18      (e)(2) of this section, transfers ownership,

19      possession or control of goods to a commission

20      merchant, dealer or broker, it automatically

21      becomes eligible to participate in the trust."

22          So the first requirement is, in order to be

23      eligible you have to meet the eligibility

24      requirements of Section (e)(1) and (e)(2).  So

25      then we turn to (e)(1) and (e)(2).

1          (e) is entitled, "Prompt payment and

2     eligibility for trust benefits."  (e)(1) says,

3     "The times for prompt accounting and prompt

4     payment are set out in 46.2 (z) and (aa)," and

5     that is 10 days.  That's the 10-day rule.

6          "Parties who elect to use different times

7     for payment must reduce their agreement to

8     writing before entering into the transaction and

9     maintain a copy of their agreement in their

10    records, and the times of payment must be

11    disclosed on invoices, accountings and other

12    documents relating to the transaction."

13         So what (1) says, if you're going to do

14    other than 10 days, you've got to reduce it to

15    writing and show it on the invoice.

16         (2) says, "The maximum time for payment of a

17    shipment to which a seller, supplier or agent can

18    agree and still qualify for coverage under the

19    trust is 30 days after receipt and acceptance of

20    the commodities as defined in 46.2."

21         So Section (1) says it's 10 days unless you

22    agree in writing to something else, and Section

23    (2) says in any event it can't be more than 30

24    days.

25         So how is this applied?  I have four cases I

1       wanted to visit with the Court that are fairly

2       authoritative on this.

3           The first one is under Tab 2, which is

4       Overton Distributors, a decision of the Sixth

5       Circuit Court of Appeals in 2003.  If I can

6       invite Your Honor to turn to the fourth page of

7       that decision where we've highlighted a couple of

8       paragraphs that I think elucidate on this.

9           "If the seller and the buyer use the

10      default payment terms provided in the

11      regulations" -- that's within 10 days -- "this

12      notice of intent to preserve benefits is all that

13      is necessary.  On the other hand, if the parties

14      agree to payment terms greater than 10 days after

15      acceptance, but in no event more than 30 days

16      after acceptance, this agreement must be in

17      writing."

18          So that language right there tells you that

19      that's what Section (e)(1) and (e)(2) means, it's

20      either 10 days or in it's writing, but in no

21      event can it be more than 30 days.

22          And I'll continue reading, "Thirty days is

23      the maximum allowable payment term under PACA

24      Regulation 46.46, which provides as follows," and

25      then it quotes the regulation again.   "This

1    limitation exists because the statute is intended

2    to protect only those produce sellers making

3    short term credit arrangements."  So that's the

4    reason for it.

5        If you turn the page, it asserts what's the

6    facts were in this case, that on the invoices,

7    the payment terms on the invoices from 1998

8    forward were 10 days EOM, "establishing that the

9    payment was due within 10 days after the end of

10   each calendar month in which the produce was

11   delivered.  Because the payments for produce

12   delivered on the first of the month could be made

13   as late as 40 days after acceptance, the invoices

14   indicated that Overton was agreeable to a payment

15   schedule outside of PACA's protection."

16       So because the invoice said that it could be

17   paid in as much as 40 days, the Sixth Circuit

18   ruled that the produce seller was not entitled to

19   PACA protection.

20       It says on the last page of the decision on

21   Page 6, "Because Overton's 40-day maximum payment

22   term failed to preserve its trust benefits under

23   PACA, it is not entitled to assert priority over

24   Quality's accounts receivable that arose from the

25   sale of Overton's produce."

1          And the point of that case, Your Honor, is

2      that the invoice terms showed that it could be

3      done in as much as 40 days, and that on its face

4      disqualified the invoice from PACA protection.

5          And in the next case under Tab 3, which is

6      American Banana Company, which is a Second

7      Circuit Court of Appeals decision last year,

8      again on PACA -- and you will see how extensive

9      these written opinions are on PACA.  This is

10     really a fertile opportunity for Your Honor --

11     turn to Page 5 of the American Banana decision,

12     "The sellers' prompt resort to administrative

13     remedies was intended" -- it's on Page 5 -- "was

14     intended to isolate and put pressure on

15     financially insecure buyers to meet their

16     obligations or to be forced from business.  The

17     sellers who complied were, in turn, afforded a

18     highly unusual trust beneficiary status that

19     permitted them in the case of defaults, to trump

20     the buyers' other creditors, including secured

21     ones.  But nothing in the text of PACA, in its

22     legislative history, or in its implementing

23     regulations indicates that PACA's superpriority

24     was intended to benefit sellers who dealt in

25     other than short-term credit in accordance with

1    PACA's regulations."  Again, that's the 10- to
2    30-day rule.
3         And if you turn to Page 8 where I've
4    highlighted, "Strict eligibility requirements
5    accompany the extraordinary protection afforded
6    by PACA's trust provision.  One such requirement
7    is that a seller seeking PACA trust protection
8    must be selling produce on a cash or short-term
9    credit basis."
10        And if you turn the page to Page 9 of the
11    decision, "In summary, these regulations require
12    a buyer to pay the seller within 10 days after
13    the buyer has accepted the produce, but permit
14    the parties to agree in writing before the
15    transaction to other payment periods that do not
16    exceed 30 days.  Sellers who offer payment
17    periods of longer than 30 days are not entitled
18    to PACA trust protection."
19        And you will see from the invoices, that's
20    exactly what Old Dixie provided, was payment
21    terms longer than 30 days.
22        On Page 12 of that decision, "Accordingly,
23    we hold that where, as here, a seller agrees,
24    orally or in writing, to a payment period
25    exceeding 30 days, it forfeits trust protection."

1        Orally or in writing, it doesn't matter.

2            If you turn the tab to Tab 4, which is an

3    Eighth Circuit decision, in re: Lombardo Fruit

4    and Produce Company, decided in 1993, you turn to

5    Page 2, it gives the facts.

6            "In January 1988, the parties entered a

7    written agreement stating that the credit terms

8    for all transactions were net 30 days from the

9    date of shipment.  However, all of the invoices

10    stated that the invoices were considered overdue

11    if not paid within 45 days.  Lange sent Lumbardo

12    statements for account 143 on a weekly basis; the

13    statements, like the invoices, reflected that

14    payment was due within 45 days."

15            If you turn to Page 4 of the decision, "The

16    Secretary's regulations require payment be made

17    within 10 days after the produce is accepted, but

18    permit the parties to agree to a longer term

19    provided that term is no longer than 30 days.  We

20    affirm the district court's conclusion that the

21    parties' agreement to extend the payment terms

22    for account 143 beyond the 30-day maximum allowed

23    by the regulations deprives Lange of trust

24    protection."

25            And one more decision to the same effect,

1      Your Honor, was a decision of the United States

2      District Court in Oregon, Logan, in December of

3      2004.  You will see that this is a 29-page

4      decision.  I don't think you will need 29 pages.

5          But if you turn to Page 27 where it gets to

6      the PACA issue, and I've tried to get right to

7      the heart of it, "On the other hand, OPC's

8      invoices" -- the invoices -- "provided for

9      payment '30 days after date of invoice.'  OPC

10     acknowledges that some invoices were not

11     delivered immediately, and, accordingly, those

12     invoices were insufficient to preserve PACA trust

13     benefits for the related potato deliveries."

14         The point there, Your Honor, was the

15     invoices provided for 30 days, but the invoices

16     were after the date of shipment and delivery, and

17     so you had more than 30 days after the shipment

18     date and delivery and, therefore, you don't get

19     PACA protection.

20         If you read lower on that page, "The court

21     found because payments for produce delivered on

22     the first of the month could be made as late as

23     40 days after the date of acceptance, the

24     invoices indicated Overton was agreeable to a

25     payment schedule outside of PACA's protection.

1       The court held the seller thereby waived the

2       benefits of the PACA trust."

3            That was discussing the Overton case.  And

4       then if you turn the page to Page 28, you will

5       that see this court agrees with Overton.

6            "This court finds Overton persuasive.  PACA

7       provides valuable trust benefits to sellers of

8       commodities who seek prompt payment from their

9       buyers.  It is not too onerous to require that

10      sellers strictly comply with the notice deadline

11      set forth in PACA and in the regulations

12      implementing PACA in exchange for those valuable

13      benefits.  Accordingly, the court concludes the

14      record reflects OPC and Baker failed to comply

15      with the notice deadline in order to preserve

16      their entitlement to PACA trust benefits."

17           Your Honor, that's just a sampling of the

18      case law.  The bottom line is, in order to be

19      entitled to PACA benefits, the invoice must

20      require payment in 10 days, or there be a written

21      agreement saying it's between 10 and 30 days, but

22      in no event can there be a requirement that

23      payment be more than 30 days.  And these invoices

24      provided for payment for more than 30 days, and

25      therefore they're not eligible -- remember that

1   language in the CFR -- they're not eligible for

2   PACA protection, and that's why we brought the

3   motion asking for a determination of the

4   objection of Old Dixie as to the $165,000 and

5   change of invoices.

6        THE COURT:  Thank you.

7        Mr. Pulignano.

8        MR. PULIGNANO:  Thank you, Your Honor.

9        THE COURT:  Do you have a notebook for me?

10       MR. PULIGNANO:  I do, Your Honor.

11       THE COURT:  Oh, you don't have one for me?

12       MR. PULIGNANO:  I don't have one for you,

13   no, Your Honor.  I submitted my case attached to

14   the memorandum of law which was filed

15   electronically, and I'm surprised Mr. Busey

16   didn't put that in his notebook, but that's the

17   more persuasive case that's issued by a

18   bankruptcy court judge just about two weeks ago

19   on this identical issue, and the court ruled that

20   there is no waiver, there's no loss of

21   eligibility, just by simply putting on an invoice

22   a 45-day payment term.

23       All the Court has to do is really just look

24   at the statute.  And I didn't hear any argument

25   about the terms of the statute.

1          The statute says payment is due in 10 days,

2     and the only way you get out of the 10 days is to

3     have a prior written agreement.  That's the end

4     of the case.

5          No such prior written agreement exists in

6     this case.  And that's what the bankruptcy court

7     ruled in Oklahoma.

8          The only court that ruled differently, it

9     looks like, is this Oregon court, which is the

10    one at Tab 5.  That's the district court out in

11    Oregon which I think misinterpreted Overton.  It

12    relied on that Overton case, but the Overton case

13    was a pretransaction written agreement to extend

14    the payment terms, and that court said that was

15    persuasive.

16         Well, you can't tell from this Oregon case

17    whether or not there was a pretransaction or

18    posttransaction written agreement, but in our

19    case there is no written agreement to extend

20    payment terms.  The payment terms were always set

21    by the statute, 10 days.

22         Your Honor, we've submitted memoranda.  It's

23    been fairly thoroughly briefed.  We'd be happy to

24    submit proposed findings of fact and conclusions

25    of law, because I think this is one that's going

1      to be in the case books at some point.  This is

2      kind of a unique issue.

3          The case law really predominately is in

4      favor of protecting the produce supplier.  And

5      that's the purpose of the statute, is to protect

6      the perishable produce supplier when they're not

7      paid once the goods are -- they can't go

8      repossess these vegetables.

9          So, Your Honor, I ask the Court to protect

10     the rights of Old Dixie.  This is the largest

11     unpaid claim that Old Dixie has.  Incidentally,

12     Old Dixie is in receivership now.  I don't know

13     if it's because of this case, but they're no

14     longer supplying produce to Winn-Dixie.

15         THE COURT:  That's it?

16         MR. PULIGNANO:  That's it.  Thank you, Your

17     Honor.

18         THE COURT:  Any response, Mr. Busey?

19         MR. BUSEY:  Yes, Your Honor.

20         The distinction of the cases cited by Old

21     Dixie are that not one of them, not one of them,

22     enforced the PACA protection when there was an

23     invoice date on the invoices allowing payment for

24     more than 30 days away from the receipt and the

25     delivery of the goods.

1          And the August 2005 decision attached to Old

2    Dixie's memorandum to which Mr. Pulignano

3    referred, I'll read a sentence from Page 10 of

4    that decision.

5          "None of the payment due dates on the

6    invoices issued by Goldman Liberty or Produce

7    Brokers exceeded the maximum 30-day period

8    permitted under PACA."

9          You cannot enforce an agreement or an

10   invoice that says more than 30 days because of

11   (e)(2).  It's not an eligible invoice.

12        THE COURT:  All right.  The problem with the

13   cases that you both submitted is that they're

14   really not on all fours of the case we got here.

15   Both of them are very persuasive.

16        Under PACA, you have to have a pre-

17   transaction written agreement if you want to vary

18   from the 10 days but not to exceed 30 days of

19   your payments.  Furthermore, then if you have

20   that agreement, then you have to reflect the

21   terms of that agreement in every invoice and

22   other memorandum of sale giving the due dates on

23   the invoices.

24        The district court case -- and I can't

25   remember all the names like you guys do -- where

1    they disallowed the PACA protection is because he

2    had the prewritten agreement, but changed the

3    terms later on.  For whatever reason, they all of

4    a sudden said 40 days, or something like that, so

5    that the payments would be current -- I forget

6    the story -- and the court properly held, I

7    think, that obviously it's not qualified because

8    the later invoices didn't reflect the agreement.

9        Then you have the last case, the bankruptcy

10    court case, and it's like Mr. Busey said, well,

11    they were than within 30 days anyway, and I don't

12    think there was a preexisting agreement, but it

13    doesn't matter because they were within the 30

14    days and, since they didn't have a preexisting

15    agreement, it doesn't matter.

16        But we don't have a case where there was no

17    prewritten agreement, and the invoices gave more

18    than 45 days and has the PACA language in it,

19    which all these apparently do.  That's where I

20    am.

21        This is the last PACA claim we got in this

22    case, according to Mr. Busey.  Everybody else has

23    settled.  It seems to me, in my interpretation of

24    PACA, that it's got to be strictly construed

25    that, since there was no pretransaction written

1        agreement between the parties and the agreement

2        contained the PACA warning or claim, that the

3        creditor is entitled to PACA protection.  He has

4        not waived it.

5            I don't think that, by putting that on

6        there, that would constitute a waiver under the

7        present state of the law.  There was no evidence

8        of any intention to waive their PACA protection,

9        at least no evidence of that has been presented,

10       and so I would find that they did not waive PACA

11       protection and they're entitled to the

12       preferential treatment under the law.

13           Anything on the invoice, that just means

14       we're not going to sue you for 45 days, but it

15       doesn't mean the payment is due -- I mean, I

16       guess it could be interpreted that way.

17           PACA is there to protect people, and I think

18       the protected party is Mr. Pulignano's client.

19           Accordingly, Mr. Pulignano, since you

20       offered, I'll have you prepare a detailed

21       findings of fact and conclusions of law and an

22       order so that this matter can be reviewed if

23       somebody wants to look at it, take it up.

24           MR. PULIGNANO:  I'll do that, Your Honor.

25       I'll submit it to Mr. Busey.  Do you want time

1       limits, or just --

2            THE COURT:  There's no rush on it.  They're

3       not going to pay you until the order is signed,

4       for sure.

5            Hearing is concluded.

6            Thank you for your submissions.  It helps a

7       lot when most of it comes beforehand and I get

8       the time to look at it.  I think it saves

9       everybody some time.

10           (Thereupon, the hearing was concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2    STATE OF FLORIDA )

3    COUNTY OF DUVAL  )

4              I, Cindy Danese, Notary Public, State of

5    Florida at Large, do hereby certify that the attached

6    represents the proceedings before the United States

7    Bankruptcy Court, Middle District of Florida,

8    Jacksonville Division, before the Honorable Jerry A.

9    Funk, Bankruptcy Judge, in the matter of In Re:

10   Winn-Dixie Stores, Inc.; such transcript is an

11   accurate recordation of the proceedings which took

12   place.  A transcript of this proceeding has been

13   produced on September 8, 2005.

14

15

16

17                          STATEWIDE REPORTING SERVICE

18

19

20

21                          CINDY DANESE

22

23

24

25