**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**NOTICE OF HEARING AND FILING**

**1.** Pursuant to the Amended Motion for Order (I) to Sell Leasehold Interests in Targeted Stores Free and Clear of Liens, Claims and Interest and Exempt from Taxes, (II) to Assume and Assign Leases, (III) to Reject Targeted Leases the Debtors are unable to Sell, and (IV) Granting Related Relief, filed with the Court on August 1, 2005 (the "Motion") (Docket No. 2707), Winn-Dixie, Inc. and its subsidiaries and affiliates as debtors and debtors-in-possession (collectively, the "Debtors"), provide notice of their intent to enter into the attached agreement with, and to assume and assign the Debtors' lease of store number 1851 located in North Cornelia, Georgia to Rockdale Grocery, Inc. for $20,000.00 (the "Sale").

**Notice of Hearing**

2. A hearing to approve the Sale is scheduled for **September 22, 2005 at 1:00 p.m. E.T.** before the Honorable Jerry A. Funk, United States Bankruptcy Judge for the Middle District of Florida, 300 North Hogan Street, Courtroom 4D, Jacksonville, Florida 32202.

Dated: September 21, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By  *s/ D. J. Baker*  <br>    D. J. Baker<br>    Sally McDonald Henry<br>    Rosalie Gray | By  *s/ Cynthia C. Jackson*  <br>    Stephen D. Busey<br>    James H. Post<br>    Cynthia C. Jackson (FBN 498882) |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(917) 777-2150 (facsimile)<br>djbaker@skadden.com | 225 Water Street, Suite 1800<br>Jacksonville, Florida 32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

00508848.DOC

# ASSET PURCHASE AND LEASE TERMINATION AGREEMENT

**THIS ASSET PURCHASE AND LEASE TERMINATION AGREEMENT** (the "Agreement") made as of the 20th day of September, 2005, by and among New Plan Excel Realty Trust, Inc. a Maryland corporation ("Landlord"), Rockdale Grocery, Inc. ("Rockdale"), Winn-Dixie Raleigh, Inc., a Florida Corporation ("Tenant"), and Winn-Dixie Stores, Inc., a Florida corporation ("Guarantor").

## Recitals

A.  Landlord and Tenant, or their respective predecessors in interest, entered into a lease dated January 29, 1985 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 1851, located at 1145 Highway 441 North, Cornelia, Habersham County, Georgia more fully described in the Lease (the "Premises").  Guarantor executed a guaranty dated January 31, 1985 (as the same may have been amended supplemented or modified from time to time, the "Guaranty") by which Guarantor guaranteed the obligations of Tenant under the Lease.

B.  On February 21, 2005, Guarantor, Tenant, and twenty-two of their affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C.  On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures").  The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D.  On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E.  Pursuant to the Bidding Procedures, Tenant has solicited offers for the Lease and certain related assets, which resulted in Rockdale submitting a bid (the "Rockdale Bid") for

1

Tenant's interest in (i) all fixtures in the store buildings now existing on the Leased Premises (the "Buildings"), including but not limited to Tenant's interest in heating and air conditioning systems (including all refrigerants and gases), facilities used to provide any utility services, or other similar services to the Buildings, elevators, docks, lifts, doors, storefronts, ceilings, walls, partitions, lighting fixtures, and flooring (collectively, the "Improvements"), and (ii) trade fixtures, furniture and equipment now existing and located in the Buildings, which are owned by Tenant and used in connection with the operation of Tenant's business at the Premises (the "Equipment" and, collectively with the Improvements, the "Store 1851 FF&E"), other than the items identified on Schedule 1 to this Agreement (the "Excluded Property"), pursuant to the terms and conditions contained in this Agreement. Rockdale acknowledges and agrees that all materials, data and information delivered and made available by Tenant or any affiliate of Tenant to Rockdale in connection with the transaction contemplated hereby (whether delivered or made orally, in writing, in electronic format or on the Merrill website) are provided to Rockdale as a convenience only. No representation or warranty as to accuracy, completeness, or any other issue has been provided by Tenant or any affiliate of Tenant.

F.  Tenant has not received any other offers for the Lease or the Store 1851 FF&E other than the Rockdale Bid. Rockdale has tendered a deposit (the "Deposit") of five thousand dollars ($5,000) to the Tenant in connection with the Rockdale Bid.

G.  The Tenant desires to convey the Store 1851 FF&E to Rockdale and the parties desire to terminate the Lease and the Guaranty and end the Lease term both effective as of the later of: (i) the date of entry of an order of the Bankruptcy Court approving termination of the Lease and conveyance of the Store 1851 FF&E to Rockdale free and clear of any and all liens, claims or encumbrances to the maximum extent permitted under the Bankruptcy Code; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale at the Premises (the "Termination Date").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. **<u>Termination Date</u>.**  Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will end and terminate.  Tenant will continue to pay and remain liable for all rent and additional rent, if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Termination Date.  After the Termination Date, neither Tenant nor Landlord will have any further rights or obligations under the Lease.  Subject to the provisions of this Agreement, at 11:59 p.m., E.T., on the Termination Date, the Guaranty will terminate.

2. **<u>Surrender of Premises and Sale of Store 1851 FF&E</u>.**  Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in its "As Is" condition with all Store 1851 FF&E to remain on the Premises.  Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises.  Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises.  This provision will survive the termination of the Lease. Tenant acknowledges and agrees that in consideration of the FF&E Fee (defined hereafter), Tenant will convey the Store 1851 FF&E to Rockdale by bill of sale (without warranty or representations as to merchantability or fitness for a particular purpose) free and clear of any and all liens, claims or encumbrances to the maximum extent permitted under the Bankruptcy Code.

3. **<u>Right to "Go Dark" and Conduct Store Closing Sale</u>.**  Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date.  Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Bankruptcy Court's Orders approving store closing sales entered July 27, 2005 (docket no. 2537) and August 5, 2005 (docket no. 2830).  The foregoing notwithstanding, Tenant shall not, on or before the Termination Date, remove any Store 1851 FF&E from the

Premises, other than in the ordinary course of business, or cause utility service to the Premises to be discontinued or render any of the Store 1851 FF&E inoperable.

4. **Termination Fee.**  On the Termination Date, Rockdale will direct the escrow agent or other person then in possession of the Deposit to transfer the Deposit to the Tenant and will pay an additional Twenty Thousand Dollars ($20,000) directly to the Tenant (the "FF&E Fee").

5. **Reimbursement of Prepaid Expenses.**  Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and within thirty (30) days following the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date.  The Landlord will also return to the Tenant any security deposit made in connection with the Lease subject, however, to receipt or offset of amounts owed by the Tenant as described in this Agreement.

6. **Irrevocable Bid.**  Rockdale and Landlord acknowledge that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale or (ii) closing of the sale with another party.  Rockdale and Landlord acknowledges that they are bound by the terms and conditions of the Bidding Procedures.  In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7.  **Representations.**  Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement.  Tenant has not assigned, transferred, or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.   Rockdale represents that no consent to this

Agreement is required for Rockdale to execute, deliver and fully perform its obligations under this Agreement. Rockdale and Tenant each represent that (a) it is a corporation duly organized, validly existing and in good standing under the laws of its organization, and has the power and authority to consummate the transactions contemplated hereunder, and (b) this Agreement and each of the closing documents to which Rockdale or Tenant is or is to become a party, and the transactions contemplated by this Agreement and such closing documents, have been duly authorized by all required corporate action on behalf of such party.

8. **Release.**  As of the Termination Date, except as to the obligations of the Tenant pursuant to this Agreement, the Landlord waives, releases and discharges Tenant, Guarantor, their successors and assigns, their estates, their affiliates, and the Debtors from all manner of actions or claims in law or in equity that Landlord ever had, currently has, or may have against Tenant, Guarantor or their successors and assigns relating to or arising out of the Lease, the Guaranty, this Agreement or the Premises, including lease rejection claims under Section 502 of the Bankruptcy Code, or any other prepetition claims relating to the Tenant's use and occupancy of the Premises; provided, however, (x) Landlord does not release, and Debtors shall remain liable with regard to, all post-petition obligations from and after the Petition Date through and including the Termination Date, including accrued but unbilled amounts, and (y) Landlord does not release or waive any claims against Tenant, or Tenant's insurer(s), for which Tenant has maintained insurance coverage, with respect to third party claims against Landlord where Tenant was required to indemnify and hold harmless Landlord, limited, however, to the insured amount.  To the extent Landlord has filed, or files, a proof of claim with respect to the claims released in this Agreement, Landlord consents to the disallowance and expungement of such claim, with prejudice.  As of the Termination Date, except as to the obligations of the Landlord pursuant to this Agreement, the Tenant waives, releases and discharges Landlord and its successors and assigns from preferential transfer claims under Section 547 of the Bankruptcy Code.

9. **Entire Agreement.**  This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof and is binding upon and will inure to the benefit of the Landlord, Rockdale, Tenant, and Guarantor and their respective heirs, executors,

Case 3:05-bk-03817-JAF    Doc 3549    Filed 09/21/05    Page 7 of 10

EXECUTION COPY

administrators successors and assigns.  The provisions of this Agreement supersede all provisions of the Lease, the Guaranty, and the Bill of Sale, Assignment and Assumption of Lease and Sublease that are inconsistent.  No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

10. **Counterparts.**  This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

11. **Severability.**  Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

12. **Bankruptcy Court Approval.**  This Agreement is subject to approval by the Bankruptcy Court, and Landlord, Rockdale, Tenant and Guarantor agree to cooperate in obtaining such approval.

13. **Discharge of Memorandum.**  If Landlord and Tenant have executed and recorded a memorandum of the Lease, on the Termination Date, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease and Landlord, at its sole cost and expense, will file or record the discharge of memorandum in the applicable recorder's office.

14. **Jurisdiction.**  The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement, and Landlord and Rockdale consent to such exclusive jurisdiction.

15. **Governing Law.**  This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

**IN WITNESS WHEREOF,** the Landlord , Guarantor, Tenant and Rockdale have executed this Agreement as of the day and year first above written.

                                        **Landlord: New Plan Excel Realty Trust, Inc.**

                                        By:_____

                                        Name:_____

                                        Title:_____

                                        **Rockdale Grocery, Inc.**

                                        By:_____

                                        Name:_____

                                        Title:_____

                                        **Tenant: Winn-Dixie Raleigh, Inc.**

                                        By:_____

                                        Name:_____

                                        Title:_____

                                        **Guarantor: Winn-Dixie Stores, Inc.**

                                        By:_____

                                        Name:_____

                                        Title:_____

**Signature Page to Asset Purchase and Lease Termination Agreement by and among NEW PLAN EXCEL REALTY TRUST, ROCKDALE GROCERY, INC., WINN-DIXIE RALEIGH, INC., and WINN-DIXIE STORES, INC. dated September 20, 2005**

# SCHEDULE 1

## Schedule of Excluded Equipment

# SCHEDULE 1

## Schedule of Excluded Equipment

Project Jaguar
Leased Equipment List

Source: Jaguar internal accounting records.  Prepared by management.

| Center | Mfg | Type | Model | Description | Quantity | Serial . | Install Date | Lessor | Lease . | Rent Amo | Lease Ter | Expire Date | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1851 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M1686 | 4/15/2001 | CLC | 28501 | $36.60 | 48 | 5/31/2005 | POS |
| 1851 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M5033 | 4/15/2001 | CLC | 28501 | $36.60 | 48 | 5/31/2005 | POS |
| 1851 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDGK5 | 4/15/2001 | CLC | 28501 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 1851 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDGL7 | 4/15/2001 | CLC | 28501 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 1851 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 1851 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 1851 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | T51L11 | 7/17/2002 | CLC | 32526 | $181.37 | 36 | 7/31/2005 | Servers |
| 1851 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | 2YRB11 | 7/17/2002 | CLC | 32526 | $68.44 | 36 | 7/31/2005 | Servers |
| 1851 | TEL | 960BULK | XDS | 900MHZ(093RADIO), | 1 | 744073 | 11/16/2002 | CLC | 34098 | $16.36 | 36 | 11/30/2005 | Radio Frequency |
| 1851 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 7/17/2002 | CLC | 32526 | $0.00 | 36 | 7/31/2005 | Personal Computers |

Privileged and Confidential