---

After recording, please return to:

Megan Allen Toborg
Near North National Title LLC
222 N. LaSalle
Chicago, Illinois 60601

## ASSIGNMENT AND ASSUMPTION OF LEASE

Store # 1906, 990 Cox Creek Parkway, Florence, Lauderdale County, Alabama

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (this "Assignment") is made as of *August 29*, 2005 (the "Effective Date"), by and between **WINN-DIXIE RALEIGH, INC.**, a Florida corporation, and **WINN-DIXIE STORES, INC.**, a Florida corporation (hereinafter collectively referred to as "Assignor"), and **SOUTHERN FAMILY MARKETS OF FLORENCE COX CREEK PARKWAY LLC,** a Delaware limited liability company (hereinafter referred to as "Assignee");

### R E C I T A L S :

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail supermarket store location described on attached Exhibit A (the "Premises") as more particularly described in the Asset Purchase Agreement dated effective June 30, 2005 by and among Assignor, as seller, and Southern Family Markets Acquisition LLC, as buyer, as assigned to Assignee and as amended from time to time (the "Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed to assign to Assignee all of the right, title and interest of the tenant or lessee in and to the lease, together with any and all amendments thereto, as described on the attached Exhibit A (the "Lease"), all of the right, title and interest, of the sublandlord or sublessor, in and to the subleases, if any, together with all amendments thereto, described on Exhibit A (the "Subleases"); and, if applicable, all of the right, title and interest of the tenant or lessee, in and

to the subordination, non-disturbance and attornment agreement, if any, together with all amendments thereto, described on Exhibit A (the "SNDA"); and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease, and, if applicable, the Subleases and the SNDA after the Effective Date, all subject to and in accordance with the terms of the Lease, the Subleases (if applicable), the SNDA (if applicable), the Agreement and this Assignment;

NOW, THEREFORE, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **EFFECTIVE DATE**.  This Assignment shall be effective as of the Effective Date.

2.    **ASSIGNMENT**.

    (a)    Assignor hereby assigns, transfers, and conveys unto Assignee all of the right, title, interest and obligations of the tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

    (b)    If applicable, Assignor hereby assigns, transfers and conveys unto Assignee all of the right, title, interest and obligations of the sublandlord or sublessor in and to the Subleases and all the rights, benefits and privileges of the sublandlord or sublessor thereunder.

    (c)    If applicable, Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant in and to the SNDA and all the rights, benefits and privileges of the tenant thereunder.

3.    **ASSUMPTION; ACCEPTANCE OF PREMISES**.

    (a)    Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that arise under the Lease from and after the Effective Date based on circumstances arising after the Effective Date, and Assignee hereby indemnifies, and agrees to save, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that arise under the Lease on or after the Effective Date based on circumstances arising after the Effective Date.

    (b)    If applicable, Assignee hereby accepts the aforesaid assignment of the Subleases and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that arise under the Subleases from and after the Effective Date based on circumstances arising after the Effective Date, and Assignee hereby indemnifies, and agrees to save,

2

defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that arise under the Subleases on or after the Effective Date based on circumstances arising after the Effective Date.

(c)     If applicable, Assignee hereby accepts the aforesaid assignment of the SNDA and assumes and agrees to pay and perform all liabilities and obligations of the tenant that accrue under the SNDA from and after the Effective Date based on circumstances arising after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant that accrue under the SNDA on or after the Effective Date based on circumstances arising after the Effective Date.

(d)     Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate. Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations. Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor. Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4.     **NOTICES**. All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after

confirmation is received  by the transmitting party if not during normal business hours for the recipient.

| If to Assignor: | Winn-Dixie Raleigh, Inc.; Re: Store #1906<br>5050 Edgewood Court<br>Jacksonville, FL 32254-3699<br>Attn: Chief Financial Officer<br>Telefax No.: 904/370-5551 |

| With a copy to: | Winn-Dixie Stores, Inc.<br>5050 Edgewood Court<br>Jacksonville, FL 32254-3699<br>Attn: Office of General Counsel<br>Telefax No.: 904/783-5651 |

or to such other address or telefax number as Assignor may direct from time to time.

| If to Assignee: | Southern Family Markets of Florence<br>    Cox Creek Parkway LLC<br>7 Corporate Drive<br>Keene, NH  03431<br>Attn: Chief Executive Officer<br>Telefax No.: (603) 354-469 |

| With a copy to: | Kilpatrick Stockton LLP<br>1100 Peachtree Street N.E.<br>Suite 2800<br>Atlanta, GA 30309<br>Attn:  Gregory K. Cinnamon<br>Telefax No.: (404) 541-3157 |

or to such other address or telefax number as Assignee may direct from time to time.

5.  **BINDING EFFECT**.  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

6.  **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor or Assignee be required to undertake any liability not expressly provided in this Agreement.

7.  **NO BROKERS**.  The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit

4

B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B. Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment.    Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises.    Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

8.    **WAIVER OF JURY TRIAL**.    Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Subleases, if any, makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease or the Subleases undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive to the extent permitted by law any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Subleases, if any.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

ASSIGNOR:

WINN-DIXIE RALEIGH, INC., a Florida corporation

By:_____
Name: LAURENCE B. APPEL
Title: VICE PRESIDENT

[CORPORATE SEAL]

LEGAL APPROVED
ATTY:_____
DATE: 8-23-05

Reviewed By
XRoads
Date:_____

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

5

STATE OF *Florida*

COUNTY OF *Duval*

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that LAURENCE B. APPEL, VICE PRESIDENT of Winn-Dixie Raleigh, Inc., a Florida corporation, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he is such an officer of the corporation and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and seal this *23* day of *August,* 2005.

*Rebecca L. Sawyer*

NOTARY PUBLIC

My Commission Expires:

_____

[NOTARIAL SEAL]

REBECCA L. SAWYER
Notary Public, State of Florida
My comm. expires June 2, 2006
Comm. No. DD 114255

(Signature page to Assignment and Assumption of Lease among Winn-Dixie Raleigh, Inc., Winn-Dixie Stores, Inc., and Southern Family Markets of Florence Cox Creek Parkway LLC, dated August 2005 regarding store 1906.)

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

**WINN-DIXIE STORES, INC.**, a Florida corporation

By: _____

Name: LAURENCE B. APPEL

Title: Senior Vice-President

[CORPORATE SEAL]

LEGAL APPROVED
ATTY: _____    Reviewed By
DATE: 8-23-05    XRoads
Date: _____

STATE OF _Florida_

COUNTY OF _Duval_

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that LAURENCE B. APPEL    Senior Vice-President of Winn-Dixie Stores, Inc., a Florida corporation, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he is such an officer of the corporation and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and seal this 23 day of August 2005.

_____
NOTARY PUBLIC

My Commission Expires: _____

REBECCA L. SAWYER
Notary Public, State of Florida
My comm. expires June 2, 2006
Comm. No. DD 114255

[NOTARIAL SEAL]

(Signature page to Assignment and Assumption of Lease among Winn-Dixie Raleigh, Inc., Winn-Dixie Stores, Inc., and Southern Family Markets of Florence Cox Creek Parkway LLC, dated August 2005 regarding store 1906.)

**[SIGNATURES CONTINUED ON FOLLOWING PAGE]**

ASSIGNEE:

**SOUTHERN FAMILY MARKETS OF FLORENCE COX CREEK PARKWAY LLC, a Delaware limited liability company**

By: _William C. Hamlin_

Name: _William C. Hamlin_

Title: _SVP + Treasurer_

[SEAL]

STATE OF NH

COUNTY OF CHESHIRE

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that _William C. Hamlin   SVP + Treasurer_ of Southern Family Markets of Florence Cox Creek Parkway LLC, a Delaware limited liability company, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he is such an officer of the company and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and seal this _24_ day of August, 2005.

_Clara Pettitt_

NOTARY PUBLIC

My Commission Expires:

May 9, 2010
[NOTARIAL SEAL]

(Signature page to Assignment and Assumption of Lease among Winn-Dixie Raleigh, Inc., Winn-Dixie Stores, Inc., and Southern Family Markets of Florence Cox Creek Parkway LLC, dated August 2005 regarding store 1906.)

## Exhibit A

### Description of Premises and Lease

### WINN-DIXIE STORE # 1906
### Florence, Alabama

Lease:         Lease dated June 28, 1984 between Columbia Properties, Incorporated, as Landlord, and Winn-Dixie Raleigh, Inc., as Tenant;

as evidenced by Short Form Lease dated June 28, 1984, recorded in Book 1259, Page 315, of the public records of Lauderdale County, Alabama

Amendments/
Guaranty:

First Lease Amendment dated January 24, 1986

First Short Form Lease Amendment dated January 24, 1986

Supplemental Lease Agreement dated February 11, 1986

Second Amendment to Lease dated July 27, 1994

Third Amendment to Lease dated September 26, 1994

Premises:     That certain store building and related improvements located at 990 Cox Creek Parkway, Florence, Lauderdale County, Alabama

Legal Description:    The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

EXHIBIT "B"

LEGAL DESCRIPTION

A tract or parcel of land lying and being in the Northwest ¼ of Section 34, Township 2 South, Range 11 West, Lauderdale County, Alabama, more particularly described as beginning at a point on the present Eastwardly right-of-way line of Cloverdale Road, said point being 91 feet North and 17.5 feet West from the Southeast corner of the Northwest ¼ of the Northwest ¼ of said Section 34; thence North 85 degrees 10 minutes East and along an old fence and its extension for a distance of 459.1 feet to a point in the center of a drainage ditch; thence leaving said ditch, South 9 degrees 07 minutes East for a distance of 93.19 feet; thence South for a distance of 155.48 feet; thence South 13 degrees 36 minutes East for a distance of 185.00 feet; thence South 35 degrees 52 minutes East for a distance of 57.87 feet to a point in the center of said drainage ditch; thence generally along the center of said ditch, South 48 degrees 58 minutes East for a distance of 76.4 feet; thence leaving said ditch, South 8 degrees 05 minutes West for a distance of 76.7 feet to a point on the North right-of-way line of Cox Creek Parkway; thence along said North line, North 81 degrees 55 minutes West 189.79 feet, North 8 degrees 23 minutes East 25 feet, North 81 degrees 46 minutes West 319.24 feet, and North 44 degrees 40 minutes West 69.2 feet to the intersection with the present Eastwardly line of Cloverdale Road; thence along said Eastwardly line and around a curve to the left having a fixed radius of 3919.72 feet for a distance of 296.23 feet (chord bearing North 4 degrees 02 minutes West, chord distance 296.16 feet); thence continue along said Eastwardly line, North 12 degrees 36 minutes 30 seconds West for a distance of 122.82 feet to the point of beginning and containing 5.6 acres, more or less.

1906

990 Cox Creek Parkway
Florence, AL

## **Exhibit B**

<u>Schedule of Brokers</u>

<u>ASSIGNOR'S BROKER</u>:

     The Blackstone Group L.P.
     345 Park Avenue
     New York, New York  10154

<u>ASSIGNEE'S BROKERS</u>:

     None.

## INDIVIDUAL STORE CLOSING STATEMENT

**BUYER:**                    Southern Family Markets of Florence Cox Creek Parkway LLC,
                             a Delaware limited liability company

**SELLER:**                   Winn-Dixie Raleigh, Inc., a Florida corporation

**ESCROW AGENT and**
**SETTLEMENT AGENT:**         Near North National Title LLC

**PROPERTY:**                 Store No. 1906, 990 Cox Creek Parkway, Florence, Alabama

**CLOSING DATE:**             August 29, 2005

### SELLER'S STATEMENT

**BASE PURCHASE PRICE:**

| | | |
|---|---|---|
| Leasehold: | $ | - |
| FF&E: | $ | - |
| BASE PURCHASE PRICE: | | **$450,000.00** |
| SUPPLIES PRICE: | | **$2,500.00** |
| TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE: | | **$452,500.00** |

**Less Adjustments (Debit):**

| | |
|---|---|
| Seller's Prorated Share of Taxes and Other Charges Payable Under Lease (1) | ($43,771.16) |
| Buyer's Prorated Share of Rents Paid in Advance Under Sublease (2) | $0.00 |
| **Total Debits to Seller:** | **($43,771.16)** |

**Plus Adjustments (Credit):**

| | |
|---|---|
| Seller's Share of Amounts Paid in Advance Under Lease (3) | $0.00 |
| Buyer's Share of Environmental Assessment Costs | $2,500.00 |
| Total Credits to Seller: | $2,500.00 |
| NET DEBIT/CREDIT TO SELLER | ($41,271.16) |

1906 (SFM of Florence)

**Less Closing Costs Payable by Seller:**

| | |
|---|---:|
| Seller's Attorneys' Fees and Costs | P.O.C. |
| Seller's Brokerage Fees | P.O.C. |
| Undisputed Cure Costs (See 7-12, Schedule of Disbursements) | ($20,533.18) |
| Disputed Cure Costs (escrowed) (9) | ($17,613.02) |
| Transfer Taxes | $0.00 |
| Seller's Share of Closing Escrow Fees | $0.00 |
| Seller's Share of Inventory Service Fees (8) (estimated) | ($1,000.00) |
| **Total Seller's Closing Costs:** | ($39,146.20) |

**AMOUNT DUE TO SELLER**                         $372,082.64

### BUYER'S STATEMENT

| | | |
|---|---:|---:|
| **ALLOCATED BASE PURCHASE PRICE:** | $ 450,000.00 | |
| **SUPPLIES PRICE:** | $2,500.00 | |
| **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | | $ 452,500.00 |
| **Less Adjustments (Credit):** | | |
| Allocated Amount of Base Deposit | $0.00 | |
| Seller's Prorated Share of Rents and Other Charges Payable Under Lease (1) | ($43,771.16) | |
| Buyer's Prorated Share of Rents Paid in Advance under Sublease (2) | $0.00 | |
| **Total Credits to Buyer:** | ($43,771.16) | |
| **Plus Adjustments (Debit):** | | |
| Seller's Share of Amounts Paid in Advance Under Lease (3) | | $0.00 |
| Buyer's Share of Environmental Assessment Costs | | $2,500.00 |
| **Total Debits to Buyer:** | | $2,500.00 |
| **NET DEBIT/CREDIT TO BUYER** | | ($41,271.16) |

2                                      **1906 (SFM of Florence)**

**Plus Closing Costs Payable by Buyer:**

| | |
|---|---|
| Buyer's Attorneys' Fees & Costs | P.O.C. |
| Title Insurance Premiums (4) | $0.00 |
| Title Insurance Cancellation Fees (4) | $0.00 |
| Title Examination Fees | $1,750.00 |
| Buyer's Brokerage Fees | $0.00 |
| Buyer's Share of Closing Escrow Fees | $1,600.00 |
| Buyer's Share of Inventory Service Fees (8) (estimated) | $1,000.00 |
| Recording Fees (estimated) | $750.00 |
| **Total Buyer's Closings Costs:** | **$5,100.00** |
| August Rent and CAM payable by Buyer | $22,416.78 |
| **AMOUNT DUE FROM BUYER AT CLOSING** | **$ 438,745.62** |
| **ALLOCATED AMOUNT OF BASE DEPOSIT** | **$0.00** |
| **TOTAL AMOUNT DUE FROM ALL SOURCES AT CLOSING** | **$ 438,745.62** |

## SCHEDULE OF DISBURSEMENTS

| | |
|---|---|
| 1.  Allocated Amount of Base Deposit from Escrow Agent | $0.00 |
| 2.  Amount Due From Buyer (credited against APA Section 3.3.1(a) Base Purchase Price Deposit) | $438,745.62 |
| **TOTAL RECEIPTS:** | $438,745.62 |

| | | |
|---|---|---|
| 1.  The Blackstone Group L.P. (Seller's Brokers Fees) | P.O.C. | |
| 2.  The Food Partners, LLC (Seller's Brokers Fees) | $0.00 | |
| 3.  DJM Asset Management, LLC (Seller's Brokers Fees) | $0.00 | |
| 4.  First American Title Insurance Company (Title Premiums, Title Examinations Fees and and Costs) | ($1,750.00) | |



| | | |
|---|---|---|
| 5. Near North National Title LLC<br>(Transfer Taxes, Recording and Escrow Fees) | ($2,350.00) | |
| 6. Accurate Inventory and Calculating Service<br>(Inventory Service Fees) | ($2,000.00) | |
| 7. New Plan Realty of Alabama, Inc.<br>(Rent Cure Costs, if any) | $0.00 | |
| 8. New Plan Realty of Alabama, Inc.<br>(Real Estate Tax Cure Costs, if any) | ($20,533.18) | |
| 9. New Plan Realty of Alabama, Inc.<br>(Personal Property Tax Cure Costs, if any) | $0.00 | |
| 10. New Plan Realty of Alabama, Inc.<br>(Insurance Cure Costs, if any) | $0.00 | |
| 11. New Plan Realty of Alabama, Inc.<br>(CAM Cure Costs, if any) | $0.00 | |
| 12. N/A<br>(Sublease Cure Costs, if any) | $0.00 | |
| 13. Seller<br>(Seller's Proceeds) | ($372,082.64) | |
| 14. New Plan Realty of Alabama, Inc.<br>(August Rent and CAM) | ($22,416.78) | |
| **TOTAL DISBURSEMENTS** | **($421,132.60)** | |
| **BALANCE AFTER DISBURSEMENTS (See Note 9):** | | $17,613.02 |

**Notes:**

1. <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>. Tax prorations are based on estimated 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with the Lease. Buyer will be responsible for the payment of taxes for 2005 and subsequent years. Insurance prorations are based on amounts due under the Lease for 2005. Buyer will be responsible for the payment of insurance charges for 2005 and subsequent years. Rent and CAM prorations are based on amounts due under the Lease for August 2005. Buyer will be responsible for August 29, 2005 and thereafter. Prorations are as follows:

<u>Real Estate Taxes</u>

| | | |
|---|---|---|
| <u>Store No. 1906</u> | | |
| 2004 Real Estate Taxes | $20,533.18 | |
| Per Diem Tax Amount | $56.26 | |
| Seller's Share of Estimated 2005 Taxes | | |
| (10/1/04 - 8/28/05) (332 days) | $18,678.32 | |
| **TOTAL REAL ESTATE TAXES** | | $18,678.32 |

**1906 (SFM of Florence)**



<u>**Personal Property Taxes**</u>

<u>**Store No.  1906**</u>

| | | |
|---|---|---|
| 2004 Personal Property Taxes | $4,258.10 | |
| Per Diem Tax Amount | $11.67 | |
| Seller's Share of 2005 Taxes | | |
| (10/1/04 - 8/28/05) (332 days) | $3,874.44 | |
| **TOTAL PERSONAL PROPERTY TAXES** | | $3,874.44 |

<u>**Insurance**</u>

<u>**Store No.  1906**</u>

| | | |
|---|---|---|
| 2005 Insurance (8/1/05 - 7/31/06) | $12,657.65 | |
| Per Diem Insurance Amount | $34.68 | |
| Seller's Share of 2005 Insurance | | |
| (8/1/05 - 8/28/05) (28 days) | $971.04 | |
| **TOTAL INSURANCE** | | $971.04 |

<u>**RENT**</u>

<u>**Store No.  1906**</u>

| | | |
|---|---|---|
| Total August 2005 Rent | $20,541.67 | |
| Per Diem Rent | $662.63 | |
| Seller's Prorated Share | | |
| (8/1/05-8/28/05) (28 days) | $18,553.64 | $18,553.64 |

<u>**CAM**</u>

<u>**Store No.  1906**</u>

| | | |
|---|---|---|
| Total August 2005 CAM | $1,875.11 | |
| Per Diem CAM | $60.49 | |
| Seller's Prorated Share | | |
| (8/1/05-8/28/05) (28 days) | $1,693.72 | $1,693.72 |

| | | |
|---|---|---|
| **Total Amount of Seller's Prorated** | | |
| **Share of 2005 Prorations:** | | $43,771.16 |

2.  <u>August 2005 Sublease Prorations - Amounts Previously Received by Seller</u>.  Prorations are based on August 2005 rents previously paid to Seller in accordance with the applicable Sublease.  Buyer will be responsible for the collection of such charges that become due and payable for September 2005 and thereafter.  Prorations are as follows:

None

**Total Amount of Buyer's Prorated Share of Sublease Prorations:**                    $0.00



3.   August 2005 Prorations - Amounts Previously Paid by Seller.  Prorations are based on charges previously paid by Seller in accordance with the applicable Lease.  Buyer will be responsible for the payment of such charges that become due and payable for August 27, 2005 and thereafter.  Prorations are as follows:

None

**Total Amount of Buyer's Prorated Share of August Prorations**                          $0.00

4.   Title Premiums and Expenses.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

**Store No.  1906**
Title Search Fees and Costs                                                   $1,750.00
Title Premium                                                                      $0.00
Title Insurance Cancellation Fees                                                  $0.00
**Total Amount of Title Fees and Expenses**                                    **$1,750.00**

5.  Utility Deposits and Charges.  All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof.  Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

6.  Adjustments.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

7.  **INTENTIONALLY OMITTED**

8.  Inventory Service Fees.  Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of one-half (1/2) of the fees and costs of the inventory services company that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices.  Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for one-half of such costs.

9.  Cure Costs.  Seller has agreed to disburse to the landlord of the Property the amount of $20,533.18, which constitutes undisputed cure costs payable to the landlord.  The amount of $17,613.02 (the "Cure Costs Escrow") shall be held in escrow by Escrow Agent until such time as the amount of disputed cure costs payable to the landlord has finally been resolved either by written agreement by Seller, Buyer and the landlord or by order of the Bankruptcy Court. Cure Costs are subject to final court approval.  At such time as the dispute cure costs have been so resolved, the parties agree that Escrow Agent shall promptly disburse to the landlord from the Cure Cost Escrow the amount of such cure costs as so finally determined and shall disburse to the landlord from the Cure Cost Escrow the amount of such cure costs as so finally determined and shall disburse to Seller any remaining portions of Cure Cost Escrow.

6                                                    1906 (SFM of Florence)



10.    Capitalized Terms.  Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

The undersigned parties acknowledge and agree to this Closing Statement as of this ___ day of August, 2005, and hereby authorize Near North National Title LLC, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**Winn-Dixie Raleigh, Inc.,**
a Florida corporation


By:_____
Name:    LAURENCE B. APPEL
Title    VICE PRESIDENT

**BUYER:**

**Southern Family Markets of Florence Cox Creek Parkway LLC,** a Delaware limited liability company


By:_____
Name:_____
Title:_____

Reviewed By
_SK_
XRoads
Date:_____

LEGAL APPROVED
ATTY: _CAz_
DATE: _8/30/05_

7

1906 (SFM of Florence)



10. Capitalized Terms. Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

The undersigned parties acknowledge and agree to this Closing Statement as of this ___ day of August, 2005, and hereby authorize Near North National Title LLC, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**Winn-Dixie Raleigh, Inc.,**
a Florida corporation

By:_____
Name:_____
Title_____

**BUYER:**

**Southern Family Markets of Florence Cox Creek Parkway LLC, a Delaware** limited liability company

By: _____
Name: _William C. Hamlin_
Title: _SVP + Treasurer_

7                                                    1906 (SFM of Florence)

## INVENTORY CLOSING STATEMENT

**SELLER:**              Winn-Dixie Raleigh, Inc., a Florida corporation

**BUYER:**               Southern Family Markets Acquisition, LLC,
                         a Delaware limited liability company

**TRANSACTION:**         Acquisition of Leasehold Interest in
                         Store 1906, 990 Cox Creek Parkway, Florence, Alabama

**BASE PURCHASE PRICE:** Under Separate Closing Statement

**INVENTORY PRICE (2):**    $306,998.64

**CLOSING DATE:**        August 29, 2005

---

### SELLER'S STATEMENT

Inventory Price                                                          $306,998.64

**TOTAL AMOUNT DUE TO/FROM SELLER:**                                    **$306,998.64**

### BUYER'S STATEMENT

Inventory Price                                                          $306,998.64

**Less:**
    Inventory Deposit Applied
    to Inventory Price                      ($350,000.00)

**Plus Closing Costs to be Paid by Buyer:**

    **Total Buyer's Inventory
    Closing Costs:**                                                    $0.00

**AMOUNT DUE TO/FROM BUYER**                                            **($43,001.36)**

**INVENTORY DEPOSIT AMOUNT**                                           **$350,000.00**



The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this _____ day of August, 2005, and hereby authorize Near North National Title LLC, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                                      **BUYER:**

**Winn-Dixie Raleigh, Inc.,**                          **Southern Family Markets Acquisition, LLC,**
a Florida corporation                                    a Delaware limited liability company

By:_____          By:_____
Name:  LAURENCE B. APPEL             Name:_____
Title   VICE PRESIDENT                       Title:_____

**Notes:**

1.  Adjustments.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

2.  Inventory Price Adjustments.  The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of June 30, 2005 (as amended, the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be resolved as set forth in the Purchase Agreement.  In the event of any such dispute, upon the resolution thereof, the balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days of such resolution as set forth in the Purchase Agreement, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period.  To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

3.  Capitalized Terms.  Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

Reviewed By
XRoads
Date: 8/30/05

LEGAL APPROVED
ATTY: OSP
DATE: 8/30/05

2                                                          1906 (Southern Family)

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this _____ day of August, 2005, and hereby authorize Near North National Title LLC, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                                          **BUYER:**

**Winn-Dixie Raleigh, Inc.,**                                        **Southern Family Markets Acquisition, LLC,**
a Florida corporation                                               a Delaware limited liability company

By:_____                                          By:_____
Name:_____                                          Name: _William C. Hamlin_
Title_____                                          Title: _SVP + Treasurer_

**Notes:**

1. _Adjustments._ Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

2. _Inventory Price Adjustments._ The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of June 30, 2005 (as amended, the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be resolved as set forth in the Purchase Agreement. In the event of any such dispute, upon the resolution thereof, the balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days of such resolution as set forth in the Purchase Agreement, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period. To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

3. _Capitalized Terms._ Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

1906 (Southern Family)

## DISBURSEMENT SCHEDULE

DISBURSEMENTS:

| | |
|---|---|
| Winn-Dixie Raleigh,<br>(Seller's Proceeds) | $306,998.64 |
| Southern Family Markets Acquisition, LLC,<br>(Buyer's Proceeds) | $43,001.36 |
| **TOTAL DISBURSEMENTS** | **$350,000.00** |
| **BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT PENDING DISPUTE RESOLUTION:** | **$0.00** |

