**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

### NOTICE OF FILING

Pursuant to Rule 6004(f), Federal Rules of Bankruptcy Procedure, Winn-Dixie Stores, Inc. and its subsidiaries and affiliates as debtors and debtors-in-possession (collectively, the "Debtors"), provide notice of the closing and consummation of the assignment and assumption of lease with Lowe's Food Stores, Inc. for store number 805 located in Raleigh, North Carolina. A copy of the closing statement is attached.

Dated: September 22, 2005

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By ___s/ D. J. Baker___<br>    D. J. Baker<br>    Sally McDonald Henry<br>    Rosalie Gray | By ___s/ Cynthia C. Jackson___<br>    Stephen D. Busey<br>    James H. Post<br>    Cynthia C. Jackson (FBN 498882) |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(917) 777-2150 (facsimile)<br>djbaker@skadden.com | 225 Water Street, Suite 1800<br>Jacksonville, Florida 32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

00509066.DOC

## INDIVIDUAL STORE CLOSING STATEMENT

| | |
|---|---|
| BUYER: | Lowe's Food Stores, Inc., a North Carolina corporation |
| SELLER: | Winn-Dixie Raleigh, Inc., a Florida corporation |
| ESCROW AGENT and SETTLEMENT AGENT: | Near North National Title LLC |
| PROPERTY: | Store No. 805, 8100 Brier Creek Parkway, Raleigh, North Carolina |
| CLOSING DATE: | August 16, 2005 |

### SELLER'S STATEMENT

**BASE PURCHASE PRICE:**

| | | |
|---|---|---|
| Leasehold: | | $ - |
| FF&E: | | $ - |
| BASE PURCHASE PRICE: | | $2,025,000.00 |
| SUPPLIES PRICE: | | $ 2,500.00 |
| TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE: | | $2,027,500.00 |

**Less Adjustments (Debit):**

| | | |
|---|---|---|
| Seller's Prorated Share of Taxes and Other Charges Payable Under Lease (1) | ($74,821.91) | |
| Buyer's Prorated Share of Rents Paid in Advance Under Sublease (2) | $0.00 | |
| Total Debits to Seller: | ($74,821.91) | |

**Plus Adjustments (Credit):**

| | | |
|---|---|---|
| Seller's Prorated Share of Amounts Paid in Advance Under Lease (3) | | $0.00 |
| Buyer's Share of Environmental Assessment Costs | | $2,500.00 |
| Total Credits to Seller: | | $2,500.00 |
| NET DEBIT/CREDIT TO SELLER | | ($72,321.91) |

| | | |
|---|---|---|
| **Less Closing Costs Payable by Seller:** | | |
| Seller's Attorneys' Fees and Costs | P.O.C. | |
| Seller's Brokerage Fees | P.O.C. | |
| Cure Costs (See 7-12, Schedule of Disbursements) | $0.00 | |
| Total Seller's Closing Costs: | $0.00 | |
| **AMOUNT DUE TO SELLER** | | $1,955,178.09 |

**BUYER'S STATEMENT**

| | | |
|---|---|---|
| **ALLOCATED BASE PURCHASE PRICE:** | $ 2,025,000.00 | |
| **SUPPLIES PRICE:** | $ 2,500.00 | |
| **TOTAL BASE PURCHASE PRICE AND SUPPLIES PRICE:** | | $ 2,027,500.00 |
| **Less Adjustments (Credit):** | | |
| Allocated Amount of Base Deposit | ($202,500.00) | |
| Seller's Prorated Share of Rents and Other Charges Payable Under Lease (1) | ($74,821.91) | |
| Buyer's Prorated Share of Rents Paid in Advance under Sublease (2) | $0.00 | |
| Total Credits to Buyer: | ($277,321.91) | |
| **Plus Adjustments (Debit):** | | |
| Seller's Share of Amounts Paid in Advance Under Lease (3) | | $0.00 |
| Buyer's Share of Environmental Assessment Costs | | $2,500.00 |
| Total Debits to Buyer: | | $2,500.00 |
| **NET DEBIT/CREDIT TO BUYER** | | ($274,821.91) |

**Plus Closing Costs Payable by Buyer:**

| | |
|---|---|
| Buyer's Attorneys' Fees & Costs | $0.00 |
| Title Insurance Premiums(4) | $655.00 |
| Title Insurance Cancellation Fees (4) | $0.00 |
| Title Examination Fees | $1,350.00 |
| Transfer Taxes | $0.00 |
| Buyer's Brokerage Fees | $0.00 |
| Closing Escrow Fees | $1,100.00 |
| Inventory Service Fees (8) (estimated) | $2,000.00 |
| Recording Fees (estimated) | $300.00 |
| **Total Buyer's Closings Costs:** | **$5,405.00** |
| **AMOUNT DUE FROM BUYER AT CLOSING** | **$ 1,758,083.09** |
| **ALLOCATED AMOUNT OF BASE DEPOSIT** | **$202,500.00** |
| **TOTAL AMOUNT DUE FROM ALL SOURCES AT CLOSING** | **$ 1,960,583.09** |

### SCHEDULE OF DISBURSEMENTS

| | |
|---|---|
| 1. Allocated Amount of Base Deposit from Escrow Agent | $202,500.00 |
| 2. Amount Due From Buyer | $1,758,083.09 |
| **TOTAL RECEIPTS:** | **$1,960,583.09** |
| 1. The Blackstone Group L.P. (Seller's Brokers Fees) | P.O.C. |
| 2. The Food Partners, LLC (Seller's Brokers Fees) | $0.00 |
| 3. DJM Asset Management, LLC (Seller's Brokers Fees) | $0.00 |
| 4. Near North National Title LLC (Title Premiums, Title Examinations Fees and and Costs) | ($2,005.00) |
| 5. Near North National Title LLC Transfer Taxes, Recording and Escrow Fees | ($1,400.00) |
| 6. Accurate Inventory and Calculating Service (Inventory Service Fees) | ($2,000.00) |
| 7. WD Development, LLC (Rent Cure Costs, if any) | $0.00 |

|     |                                                                    |               |
| --- | ------------------------------------------------------------------ | ------------- |
| 8.  | WD Development, LLC<br>(Real Estate Tax Cure Costs, if any)        | $0.00         |
| 9.  | WD Development, LLC<br>(Personal Property Tax Cure Costs, if any)  | $0.00         |
| 10. | WD Development, LLC<br>(Insurance Cure Costs, if any)              | $0.00         |
| 11. | WD Development, LLC<br>(CAM Cure Costs, if any)                    | $0.00         |
| 12. | N/A<br>(Sublease Cure Costs, if any)                               | $0.00         |
| 13. | Seller<br>(Seller's Proceeds)                                      | ($1,936,073.45) |

**TOTAL DISBURSEMENTS**                                                  ($1,941,478.45)

**BALANCE AFTER DISBURSEMENTS (See Note 9):**                                                  $19,104.64

**Notes:**

1. <u>2005 Prorations - Amounts Not Yet Paid and Payable</u>. Tax and insurance prorations are based on (i) estimated 2005 real estate taxes derived from actual 2004 amounts paid by Seller in arrears in accordance with the Lease; and (ii) estimated 2005 insurance charges derived from actual 2004 amounts paid by Seller in arrears in accordance with the Lease. Buyer will be responsible for the payment of taxes for 2005 and subsequent years. Rent and CAM prorations are based on amounts due under the Lease for August 2005. Buyer will be responsible for August 16, 2005 and thereafter. Prorations are as follows:

**Real Estate Taxes**

**Store No. 805**
| | | |
|---|---|---|
| 2004 Real Estate Taxes | $56,090.47 | |
| Per Diem Tax Amount | $153.67 | |
| Seller's Share of Estimated 2005 Taxes<br>(1/1/05 - 8/15/05) (227 days) | $34,883.09 | |
| **TOTAL REAL ESTATE TAXES** | | $34,883.09 |

**Personal Property Taxes**

**Store No. 805**
| | | |
|---|---|---|
| 2004 Personal Property Taxes | $12,451.91 | |
| Per Diem Tax Amount | $34.12 | |
| Seller's Share of 2005 Taxes<br>(1/1/05 - 8/15/05) (227 days) | $7,745.24 | |
| **TOTAL PERSONAL PROPERTY TAXES** | | $7,745.24 |

**Insurance**

**Store No. 805**
| | | |
|---|---|---|
| 2004 Insurance | $4,103.33 | |
| Per Diem Insurance Amount | $11.24 | |
| Buyer's Share of 2005 Insurance<br>(1/01/05 - 8/15/05) (227 days) | $2,551.48 | |
| **TOTAL INSURANCE** | | $2,551.48 |

**RENT**

| | | |
|---|---|---|
| **Store No. 805** | | |
| Total August 2005 Rent | $59,160.92 | |
| Per Diem Rent | $1,908.42 | |
| Seller's Prorated Share (8/1/05-8/15/05) (15 days) | $28,626.30 | $28,626.30 |

**CAM**

| | | |
|---|---|---|
| **Store No. 805** | | |
| Total August 2005 CAM | $2,099.26 | |
| Per Diem CAM | $67.72 | |
| Seller's Prorated Share (8/1/05-8/15/05) (15 days) | $1,015.80 | $1,015.80 |
| **Total Amount of Seller's Prorated Share of 2005 Prorations:** | | **$74,821.91** |

2. August 2005 Sublease Prorations - Amounts Previously Received by Seller. Prorations are based on August 2005 rents previously paid to Seller in accordance with the applicable Sublease. Buyer will be responsible for the collection of such charges that become due and payable for September 2005 and thereafter. Prorations are as follows:

None

**Total Amount of Buyer's Prorated Share of Insurance Prorations:** $0.00

3. August 2005 Prorations - Amounts Previously Paid by Seller. Prorations are based on charges previously paid by Seller in accordance with the applicable Lease. Buyer will be responsible for the payment of such charges that become due and payable for August 16, 2005 and thereafter. Prorations are as follows:

None

**Total Amount of Buyer's Prorated Share of August Prorations** $0.00

4. Title Premiums and Expenses. Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

**Store No. 805**

| | |
|---|---|
| Title Search Fees and Costs | $1,350.00 |
| Title Premium | $655.00 |
| Title Insurance Cancellation Fees | $0.00 |
| **Total Amount of Title Fees and Expenses** | **$2,005.00** |

5. Utility Deposits and Charges. All utility deposits will be returned to Seller directly by the respective utility companies. Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof. Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof. The party responsible for each share of such utility charges will pay such charges promptly and without demand therefor. Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

6. **Adjustments.** Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

7. **Inventory Purchase Price and Adjustments.** To the extent Buyer has acquired inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement between Seller and Buyer dated as of even date herewith. Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

8. **Inventory Service Fees.** Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the Inventory services company that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices. Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges are not available at the time of closing, the inventory service fee will be estimated at $2000 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

9. See buyer signature page for Security Escrow.

10. **Capitalized Terms.** Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

The undersigned parties acknowledge and agree to this Closing Statement as of this ___ day of August, 2005, and hereby authorize Near North National Title LLC, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

Winn-Dixie Raleigh, Inc.,
a Florida corporation

By: _____
Name: LAURENCE B. APPEL
Title: VICE PRESIDENT

**BUYER:**

Lowe's Food Stores, Inc.,
a North Carolina corporation

By: _____
Name: _____
Title: _____

Reviewed By:
XRoads
Date: _____

LEGAL APPROVED
ATTY: OBS
DATE: 4/6/05

6

805 (Lowe's)

6. <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

7. <u>Inventory Purchase Price and Adjustments</u>. To the extent Buyer has acquired Inventory pursuant to the Purchase Agreement, the Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in the Purchase Agreement and is set forth in a separate Inventory Closing Statement between Seller and Buyer dated as of even date herewith. Seller and Buyer acknowledge and agree that if any dispute should arise as to the Inventory Price with respect to any item or items of Inventory, Seller and Buyer will resolve the dispute in accordance with the terms and provisions of the Purchase Agreement.

8. <u>Inventory Service Fees</u>. Seller and Buyer acknowledge and agree that Buyer will be responsible for payment of the fees and costs of the inventory services company that conducts the Inventory Count, as such term is defined in the Purchase Agreement, upon receipt of the final invoices. Seller may pay the inventory service fee outside of closing, and Buyer will reimburse Seller for such costs. In the event the final invoices for such inventory charges are not available at the time of closing, the inventory service fee will be estimated at $2000 per store. Upon receipt of final invoices for such services, if the inventory service cost differs by more than 10% from the estimated amount, then Buyer and Seller will reconcile such difference by payment to, or reimbursement from, Seller to account for the difference.

9. <u>Security Escrow</u>. Seller and Buyer acknowledge and agree that at Closing, Escrow Agent shall hold in escrow the sum of $19,104.64 (the "Security Escrow"), such sum representing the full value of the CCTV security system which was removed from the Property. Seller has provided to Buyer a written commitment from the security company to reinstall the CCTV security system. Upon reinstallation of the CCTV security system and written notice from Buyer evidencing Buyer's approval of such reinstallation, which approval shall be provided to Escrow Agent within one business day after reinstallation and not unreasonably conditioned, withheld or delayed, Escrow Agent shall pay the Security Escrow to Seller. In the event the CCTV security system has not been reinstalled by August 26, 2005, then Escrow Agent shall pay the Security Escrow to Buyer. The payment of such sum to Buyer shall represent the full value of the CCTV security system, and Buyer shall have no further remedy against Seller for the removal of the CCTV system from the Property.

10. <u>Capitalized Terms</u>. Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

The undersigned parties acknowledge and agree to this Closing Statement as of this ___ day of August, 2005, and hereby authorize Near North National Title LLC, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

Winn-Dixie Raleigh, Inc.,
a Florida corporation

By:_____
Name:_____
Title_____

**BUYER:**

Lowe's Food Stores, Inc.,
a North Carolina corporation

By: *John B. Organ*
Name: John B. Organ
Title: General Counsel

## INVENTORY CLOSING STATEMENT

| | |
|---|---|
| **SELLER:** | Winn-Dixie Raleigh, Inc., a Florida corporation |
| **BUYER:** | Lowe's Food Stores, Inc., a North Carolina corporation |
| **TRANSACTION:** | Acquisition of Leasehold Interest in Store 805, 8100 Brier Creek Parkway, Raleigh, North Carolina |
| **BASE PURCHASE PRICE:** | Under Separate Closing Statement |
| **INVENTORY PRICE (2):** | $614,558.12 |
| **CLOSING DATE:** | August 16, 2005 |

### SELLER'S STATEMENT

| | |
|---|---:|
| Inventory Price | $614,558.12 |
| **TOTAL AMOUNT DUE TO/FROM SELLER:** | **$614,558.12** |

### BUYER'S STATEMENT

| | | |
|---|---:|---:|
| Inventory Price | | $614,558.12 |
| Less: | | |
|    Inventory Deposit Applied to Inventory Price | ($660,000.00) | |
| Plus Closing Costs to be Paid by Buyer: | | |
|    Total Buyer's Inventory Closing Costs: | | $0.00 |
| **AMOUNT DUE TO/FROM BUYER AT CLOSING** | | **($45,441.88)** |
| **INVENTORY DEPOSIT AMOUNT** | | **$660,000.00** |

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this _____ day of August, 2005, and hereby authorize Near North National Title LLC, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**

**Winn-Dixie Raleigh, Inc.,**
a Florida corporation

By: _____
Name: __LAURENCE B. APPEL__
Title: __VICE PRESIDENT__

**BUYER:**

**Lowe's Food Stores, Inc.,**
a North Carolina corporation

By: _____
Name: _____
Title: _____

**Notes:**

1. **Adjustments.** Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

2. **Inventory Price Adjustments.** The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of July 18, 2005 (as amended, the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be resolved as set forth in the Purchase Agreement. In the event of any such dispute, upon the resolution thereof, the balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days of such resolution as set forth in the Purchase Agreement, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period. To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

3. **Capitalized Terms.** Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

LEGAL APPROVED
ATTY: _____
DATE: 8/18/05

Reviewed By
XRoads
Date: 8/19/05

2

805 (Lowe's)

The undersigned parties acknowledge and agree to the foregoing Inventory Closing Statement as of this _____ day of August, 2005, and hereby authorize Near North National Title LLC, as closing agent, to disburse the sums set forth herein in accordance herewith.

| | |
|---|---|
| **SELLER:** | **BUYER:** |
| Winn-Dixie Raleigh, Inc., a Florida corporation | Lowe's Food Stores, Inc., a North Carolina corporation |
| By: _____<br>Name: _____<br>Title: _____ | By: *[signature]*<br>Name: Boyd L. George<br>Title: Chairman + CEO |

**Notes:**

1. <u>Adjustments</u>. Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Inventory Closing Statement will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination. Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in this Inventory Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination. Buyer agrees that it will timely make all required notifications to appropriate taxing authorities to effect the change in party responsible for taxes.

2. <u>Inventory Price Adjustments</u>. The Inventory Price has been determined in good faith by the parties in accordance with the provisions set forth in that certain Asset Purchase Agreement among Seller and Buyer, dated effective as of July 18, 2005 (as amended, the "Purchase Agreement"), and shall be payable in accordance with the Purchase Agreement. Seller and Buyer agree that any disputes shall be resolved as set forth in the Purchase Agreement. In the event of any such dispute, upon the resolution thereof, the balance of the Inventory Price, if any, shall be paid by Escrow Agent to Seller within five (5) Business Days of such resolution as set forth in the Purchase Agreement, and any excess payment held by Escrow Agent shall be refunded to Buyer within such five (5) Business Day period. To the extent that the Inventory Price is in excess of the amount stated herein, Buyer shall pay over to Seller the amount of such excess within such five (5) Business Day period.

3. <u>Capitalized Terms</u>. Capitalized terms used herein will have the meanings ascribed to them in the Purchase Agreement.

805 (Lowe's)

## DISBURSEMENT SCHEDULE

**DISBURSEMENTS:**

| | |
|---|---:|
| Winn-Dixie Raleigh, Inc. (Seller's Proceeds) | $614,558.12 |
| Lowe's Food Stores, Inc. (Buyer's Proceeds) | $45,441.88 |
| **TOTAL DISBURSEMENTS** | **$660,000.00** |
| **BALANCE OF INVENTORY PRICE HELD IN ESCROW BY TITLE AGENT PENDING DISPUTE RESOLUTION:** | **$0.00** |

3