## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

### ORDER APPROVING DEBTORS' LEASE REJECTION AGREEMENT AND GRANTING RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 authorizing the Debtors (i) to assume and assign leases and sell their leasehold interests in the Targeted Stores free and clear of liens, claims and encumbrances and exempt from taxes, (ii) in their sole discretion after consultation with the DIP Lender Agent Representatives and the Committee's Professionals, to reject leases for Targeted Stores the Debtors are unable to sell, and (iii) granting related relief (the "Motion"). [1]   The Court has reviewed the Motion and heard the representations of counsel.   Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:

---

[1]   All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion.

A.     This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B.     The Debtors solicited the highest or otherwise best offer for the Targeted Lease in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 16, 2005 (the "Bidding Procedures"). The Debtors held an auction for the Targeted Leases on August 9, 2005 (the "Auction"). WD Tampa Trust (the "Landlord") submitted the final bid for rejection of the lease for Store 636 and purchase of the equipment and improvements at the Store, as more particularly described in the Lease Rejection Agreement (the "Rejection Agreement") attached to this Order as Exhibit A (the "Targeted Lease") in the amount of $150,000.00 (the "Rejection Fee"), plus a waiver of all claims arising pre-petition and post-termination, representing the highest or otherwise best offer received for the Targeted Lease.

C.     The Landlord is entitled to a credit (the "Rejection Fee Credit") against the Rejection Fee in the amount of $83,987.06, which consists of (i) a pro-rated portion of an assessment owed by the Debtors pursuant to the Targeted Lease to the Hunter's Green Community Association in the amount of $9,280.44, and (ii) a pro-rated portion of the 2005 real property taxes in the amount of $69,509.86.

D.     The Debtors agree to convey to the Landlord on the Rejection Date by bill of sale, any furniture, fixtures, trade fixtures or equipment located in the Targeted Store (collectively, the "FF&E"), other than those items identified on Schedule 1 of the Rejection Agreement. The Debtors' transfer of the FF&E to the Landlord pursuant to the Rejection Agreement will be a legal, valid, and effective transfer of the FF&E. The

Debtors' transfer of the FF&E to the Landlord vests the Landlord with good and valid title in and to the FF&E free and clear of any liens, claims, encumbrances, pledges, mortgages, security interests, charges, options or other interests of any kind or nature.

E.   Except as expressly set forth in the Rejection Agreement, the Landlord will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Lease and the FF&E by virtue of the rejection of the Lease and the transfer of the FF&E to the Landlord.  The Landlord will not be deemed as a result of any action taken in connection with the rejection of the Lease and transfer of the FF&E or consummation of the transaction contemplated by the Rejection Agreement to (i) be a successor to the Debtors (other than with respect to any obligations arising under the assigned Targeted Lease from and after the closing); or (ii) have, *de facto* or otherwise, merged with or into the Debtors.  The Landlord is not acquiring or assuming any liability, warranty, or other obligation of the Debtors, except as expressly set forth in the Rejection Agreement.

F.   The Debtors have provided interested parties (including all parties asserting claims or interests in the Targeted Lease, if any) with proper notice of the Motion, the sale hearing, Auction, the sale of the FF&E and the rejection of the Targeted Lease, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

G.   The Debtors marketed the Targeted Lease and the FF&E and conducted the sale process in compliance with the Order approving the Bidding Procedures, the Bidding Procedures, the Bankruptcy Code and all other Orders entered in

00508989                                3

these cases. The bidding on the Targeted Lease and the FF&E and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Targeted Lease and FF&E. In their sound business judgment, the Debtors determined that the bid submitted by the Landlord represented the highest or otherwise best offer for the FF&E and Lease rejection.

H.      The Debtors (i) have full corporate power and authority to execute and consummate the Rejection Agreement and all related documents, and the termination of the Targeted Lease and the sale of the FF&E has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Rejection Agreement, are required to consummate the transactions contemplated by the Rejection Agreement.

I.      The consideration the Landlord is providing to the Debtors for sale of the FF&E and rejection of the Lease (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value.

J.      The Debtors' rejection of the Targeted Lease pursuant to the Rejection Agreement will be a legal, valid, and effective termination of the Targeted Lease.

K.      Notwithstanding the Rejection Agreement or the Targeted Lease terms, the Debtors will have the right to remain in the premises up to the Rejection Date (as defined in the Rejection Agreement) to discontinue its operations and to conduct a store closing sale in accordance with the Court's Order of July 27, 2005 (Docket No. 2537) (the "Store Closing Order").

L.    The Debtors will cause the net proceeds from the Rejection Agreement and the sale of the FF&E to be paid to the DIP Lender to the extent required in accordance with the terms and conditions of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

M.    The Debtors' entry into the Rejection Agreement is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

N.    The Court's approval of the Rejection Agreement is in the best interests of the Debtors, their estates and their creditors.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.    The Motion is granted.

2.    All objections to the entry of this order or to the relief granted and requested in the Motion, that have not been withdrawn, waived or settled at or before the hearing, are denied and overruled on the merits.

3.    The Rejection Agreement is approved in all respects. The Targeted Lease is rejected effective on the Rejection Date.

00508989                              5

4.      Notwithstanding the terms of the Lease, the Debtors are authorized to remain on the premises up to the Rejection Date, to discontinue operations and to conduct store closing sales on the premises pursuant to the Store Closing Order.

5.      Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Rejection Agreement, together with all additional instruments and documents to the extent necessary to implement the Rejection Agreement. The Debtors are authorized to take all actions necessary for the purpose of terminating the Targeted Lease and transferring the FF&E to the Landlord.

6.      The Debtors will transfer the FF&E to the Landlord upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f). The only Claims and/or Interests in the FF&E are those of the Landlord and the senior liens and superpriority administrative claims of the DIP Lender. The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender will attach to the net proceeds from the Rejection Agreement in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

7.      Any agreements, documents, or other instruments executed in connection with the Rejection Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Rejection Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

8.     The Debtors will cause the net proceeds from the Rejection Agreement to be paid in accordance with the terms of the Final Financing Order and the Loan Documents.

9.     The Debtors' rejection of the Targeted Lease and sale of the FF&E pursuant to the terms of the Rejection Agreement are transfers pursuant to 11 U.S.C. § 1146(c).  Accordingly, the making, delivery, filing or recording of any deeds, assignments or other transfer documents in connection with the sale (the "Transfer Instruments"), will not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax (including without limitation, any transfer or recordation tax applicable to deeds and/or security interests).

10.     The Landlord provided the Debtors with reasonably equivalent value and fair consideration for the Rejection Agreement and the transfer of the FF&E under the Bankruptcy Code and applicable non-bankruptcy law.  For that reason, the transfers may not be avoided under 11 U.S.C. § 363(n).

11.     The Landlord will be deemed to have acted in good faith in entering into the Rejection Agreement and purchasing the FF&E as that term is used in 11 U.S.C § 363(m).  For that reason, any reversal or modification of the Order on appeal will not affect the validity of the Rejection Agreement, unless such authorization is duly stayed pending such appeal.

12.     This Court retains exclusive jurisdiction to (a) enforce and implement the Rejection Agreement and any other agreements and instruments executed in connection with the Rejection Agreement, and (b) interpret, implement and enforce the provisions of this Order.

13.     The terms and provisions of the Rejection Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Landlord and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

14.     Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f), Federal Rules of Bankruptcy Procedure.

Dated this  22  day of September, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to
serve a copy of this Order on all parties
who received copies of the Motion.

00508989

8

## LEASE REJECTION AGREEMENT

**THIS LEASE REJECTION AGREEMENT** (the "Agreement") made as of the 9th day of August, 2005, by and between **WD TAMPA TRUST**, a Delaware business trust ("Landlord"), and **Winn-Dixie Stores, Inc., a Florida Corporation** ("Tenant").

### Recitals

A.    Landlord and Tenant entered into a lease dated December 2, 1996 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 636, located at 8702 Hunter Lake Drive, Tampa, Hillsborough County, Florida, more fully described in the Lease (the "Premises").

B.    On February 21, 2005, Winn-Dixie, Inc., and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C.    On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures"). The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D.    On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E.    On August 1, 2005, Tenant filed a motion seeking, *inter alia*, authority to assume or reject certain leases (as subsequently amended, the "Sale Motion") pursuant to the procedures described therein.

F.    On August 9, 2005, pursuant to the Bidding Procedures, the Debtors conducted an auction for the sale of assets, including the Lease, and the Landlord was the successful bidder for the Lease.

G.    Tenant desires to reject the Lease and end the Lease term effective as of the later of: (i) the date of Bankruptcy Court approval of the rejection of the Lease; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale (the "Sale Termination Date") at the Premises (the "Rejection Date").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.    **Rejection Date.** Subject to the provisions of this Agreement and as contemplated by the Sale Motion, the Debtors shall reject the Lease by delivering to Landlord a notice of termination within ten days after the Sale Termination Date (the "Termination Notice"). The Termination Notice shall provide, *inter alia*, that the effective date and time of rejection of the

Lease and tenancy created by the Lease will be 11:59 p.m., E.T., on the Rejection Date, at which time the Lease and the Lease term will have ended and terminated. Tenant will continue to pay and remain liable for all rent, additional rent, and any and all other obligations, if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Rejection Date. After the Rejection Date, neither party will have any further rights or obligations under the Lease.

2. **Surrender of Premises**. Tenant will vacate and surrender the Premises on or before the Rejection Date and leave it in its "As Is" condition. Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises. Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises. This provision will survive the termination of the Lease. Notwithstanding anything to the contrary in the Lease, the Tenant shall not have the right and shall not remove, or allow the removal, whether by sale or otherwise, of any items of furniture, fixtures, trade fixtures or equipment located at the Premises which are owned by Tenant and used in connection with the operation of Tenant's business at the Premises (collectively, the "FF&E") other than those items identified on Schedule 1 of this Agreement and other than items removed from the Premises in the ordinary course of business. Tenant acknowledges and agrees that in consideration of the Rejection Fee, Tenant will convey the FF&E to Landlord on the Rejection Date by bill of sale (without warranty or representations as to merchantability or fitness for a particular purpose) free and clear of any and all liens or other encumbrances to the extent permitted under the Bankruptcy Code.

3. **Right to "Go Dark" and Conduct Store Closing Sale.** Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Rejection Date. Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Rejection Date in accordance with the Bankruptcy Court's Orders approving store closing sales entered July 27, 2005 (docket no. 2537) and August 5, 2005 (docket no. 2830).

4. **Rejection Fee.** Within three days after the Landlord's receipt of the Rejection Notice, the Landlord will pay the Tenant a fee of $150,000 (the "Rejection Fee") by check, payable to Tenant, as consideration for entering into this Agreement. The Landlord shall be entitled to credit (the "Rejection Fee Credit") against the Rejection Fee an amount equal to $83,987.06, which consists of (i) a pro-rated portion of an assessment owed by Tenant pursuant to the Lease to the Hunter's Green Community Association in the amount of $9,280.44, and (ii) a pro-rated portion of the 2005 real property taxes in the amount of $69,509.86 (collectively, the "2005 Obligations"). The parties acknowledge that the Rejection Fee Credit is calculated through September 22, 2005. To the extent the Rejection Date occurs on a different date, the parties agree that an adjustment to the Rejection Fee Credit shall be made, and either Landlord will owe Tenant monies (if the Rejection Date occurs before September 22, 2005) or Landlord will be entitled to an administrative claim under Section 503(b) of the Bankruptcy Code (if the Rejection Date occurs after September 22, 2005) (the "Rejection Fee Credit Adjustment").

**Lease rejection agreement for store 636**

5. **Reimbursement of Prepaid Expenses.** Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Rejection Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Rejection Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease.

6. **Irrevocable Bid.** Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord. Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures. In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7. **Representations.** Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement. Tenant has not assigned, transferred, or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

8. **Release.** As of the Rejection Date, except as to the obligations of Tenant pursuant to this Agreement and as to the Rejection Fee Credit set forth in this Agreement, Landlord waives, releases and discharges Tenant, its successors and assigns, its estate, affiliates and the Debtors from (i) any claims arising from the 2005 Obligations, except for any Rejection Fee Credit Adjustment, and (ii) all lease rejection damage claims under Section 502 of the Bankruptcy Code. To the extent Landlord has filed, or files, a proof claim with respect to the 2005 Obligations or to the lease rejection damage claims, Landlord consents to the disallowance and expungement of such claim, with prejudice, except that any claim reflecting any Rejection Fee Credit Adjustment shall not be expunged.

9. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

10. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

11. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

Lease rejection agreement for store 636

12. **Bankruptcy Court Approval.**  The Tenant's and Landlord's obligations are subject to approval by the Bankruptcy Court, and Landlord and Tenant agree to cooperate in obtaining such approval.

13. **Discharge of Memorandum.**  If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

14. **Jurisdiction.**  The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

15. **Governing Law.**  This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

**IN WITNESS WHEREOF,** the Landlord and Tenant have executed this Agreement as of the day and year first above written.

Tenant:                                      Landlord:

Tenant: **Winn-Dixie Stores, Inc.**          Landlord: **WD Tampa Trust**

By: _____               By: Paragon Affiliates, Inc.

Name: _____               Its: *PRESIDENT*

Its _____              By: _____

                                         Name: Robert Heller

                                         Its: President

**Lease rejection agreement for store 636**

## SCHEDULE 1

**Schedule of Excluded Equipment**

Leased Equipment Register

| Center | Mfg | Type | Model | Description | Quantity | Serial | Install Date | Lessor | Lease # | Rent Amt | Lease Ter | Expire Date | Category |
|--------|-----|------|-------|-------------|----------|--------|--------------|--------|---------|----------|-----------|-------------|----------|
| 0636 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0855 | 4/15/2001 | CLC | 28093 | $36.60 | 48 | 5/31/2005 | POS |
| 0636 | IBM | 8477 | 42Y | NETFINITY 1000 PI | 1 | M0687 | 4/15/2001 | CLC | 28093 | $36.60 | 48 | 5/31/2005 | POS |
| 0636 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDLH6 | 4/15/2001 | CLC | 28093 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 0636 | IBM | 6331 | B2N | IBM BLACK E54 15I | 1 | XDLL3 | 4/15/2001 | CLC | 28093 | $5.27 | 48 | 5/31/2005 | Personal Computers |
| 0636 | IBM | SAV2 | SFTW | IBM SAV2 SOFTWARE | 1 | | 7/1/2001 | ICC | 23001 | $99.96 | 48 | 6/30/2005 | Software |
| 0636 | IBM | SAV2 | SVCS | SAV2 SERVICES | 1 | | 7/1/2001 | ICC | 23001 | $31.74 | 48 | 6/30/2005 | Software |
| 0636 | DCC | 2500 | P3 | POWEREDGE 2500 P3 | 1 | GLJL11 | 7/17/2002 | CLC | 32873 | $181.37 | 36 | 7/31/2005 | Servers |
| 0636 | DCC | PV715N | 1U | DELL NAS PV715N W | 1 | 47CK11 | 7/17/2002 | CLC | 32873 | $68.44 | 36 | 7/31/2005 | Servers |
| 0636 | DCC | E551 | 15MO | DELL E551 15INCH | 1 | | 7/17/2002 | CLC | 32873 | $0.00 | 36 | 7/31/2005 | Personal Computers |

Privileged and Confidential