06720\40153
LP ID No. 19

750412
Mansfield, TX

LEASE AGREEMENT

Peregrine Properties Limited Partnership,
as Landlord

to

Winn-Dixie Texas, Inc.,
as Tenant

Dated as of August 25, 1994



**EXHIBIT**

A

04/29/94

THIS INSTRUMENT CONTAINS
INDEMNIFICATION PROVISIONS

## TABLE OF CONTENTS

Page

1.  Demise of Premises; Priority of Lease . . . . . . . . . . . 1
    (a)  The Leased Premises . . . . . . . . . . . . . . . . . 1
    (b)  Priority of Lease . . . . . . . . . . . . . . . . . . 1

2.  Definitions . . . . . . . . . . . . . . . . . . . . . . . . 1

3.  Title and Condition . . . . . . . . . . . . . . . . . . . . 4
    (a)  Title . . . . . . . . . . . . . . . . . . . . . . . . 4
    (b)  Condition of Leased Premises . . . . . . . . . . . . 4
    (c)  Assignment of Warranties, Guaranties, Indemnities . 5
    (d)  Granting of Easements . . . . . . . . . . . . . . . . 5
    (e)  Conveyances for Public Purposes . . . . . . . . . . . 6

4.  Use of Leased Premises; Quiet Enjoyment . . . . . . . . . . 8
    (a)  Use . . . . . . . . . . . . . . . . . . . . . . . . . 8
    (b)  Landlord's Covenant of Quiet Enjoyment . . . . . . . 8

5.  Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6.  Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    (a)  Basic Rent . . . . . . . . . . . . . . . . . . . . . 9
    (b)  Additional Rent . . . . . . . . . . . . . . . . . . . 9

7.  Net Lease; Non-Terminability . . . . . . . . . . . . . . . . 10
    (a)  No Abatement of Basic Rent . . . . . . . . . . . . . 10
    (b)  No Termination of Lease; No Defense to
         Tenant's Obligations . . . . . . . . . . . . . . . . 10
    (c)  Continuing Obligations of Tenant . . . . . . . . . . 10
    (d)  Tenant's Waivers . . . . . . . . . . . . . . . . . . 11

8.  Payment of Impositions; Compliance with Law . . . . . . . . 11
    (a)  Impositions . . . . . . . . . . . . . . . . . . . . . 11
    (b)  Compliance with Law . . . . . . . . . . . . . . . . . 12

9.  LIENS; RECORDING AND TITLE . . . . . . . . . . . . . . . . . 12

10. INDEMNIFICATION . . . . . . . . . . . . . . . . . . . . . . 12

11. Maintenance and Repair . . . . . . . . . . . . . . . . . . . 12
    (a)  Maintenance . . . . . . . . . . . . . . . . . . . . . 12
    (b)  Encroachments . . . . . . . . . . . . . . . . . . . . 13
    (c)  Landlord's Right of Entry . . . . . . . . . . . . . . 13
    (d)  Replacement Equipment . . . . . . . . . . . . . . . . 13
    (e)  Hazardous Waste . . . . . . . . . . . . . . . . . . . 14

12. Alterations . . . . . . . . . . . . . . . . . . . . . . . . 15

-i-

06720/40153
LF I.D. No. 19

13. Condemnation . . . . . . . . . . . . . . . . . . . . . 15
    (a)  Assignment of Condemnation Award . . . . . . . . 15
    (b)  Total or Substantial Condemnation . . . . . . . 16
    (c)  Partial Condemnation . . . . . . . . . . . . . . 17
    (d)  Landlord's Equipment Condemnation . . . . . . . 18
    (e)  Proceedings . . . . . . . . . . . . . . . . . . 18

14. Insurance . . . . . . . . . . . . . . . . . . . . . . 18
    (a)  Type of Insurance . . . . . . . . . . . . . . . 18
    (b)  Insurance Requirements; Self-Insurance . . . . . 19
    (c)  Mortgagee Loss Payable Clauses; Cancellation
         of Insurance . . . . . . . . . . . . . . . . . . 20
    (d)  Payment of Premiums; Policy Replacements . . . . 20
    (e)  Blanket Policies . . . . . . . . . . . . . . . . 20
    (f)  Casualty Loss Claims . . . . . . . . . . . . . . 21
    (g)  Termination Upon Casualty . . . . . . . . . . . 21

15. Restoration . . . . . . . . . . . . . . . . . . . . . 23

16. Economic Abandonment . . . . . . . . . . . . . . . . . 24

17. Substitution of Property . . . . . . . . . . . . . . . 25

18. Procedure Upon Purchase . . . . . . . . . . . . . . . 27
    (a)  Title to be Conveyed . . . . . . . . . . . . . . 27
    (b)  Payment of Purchase Price; Conveyance Documents;
         Other Costs . . . . . . . . . . . . . . . . . . 27
    (c)  Assumption of Note and Mortgage . . . . . . . . 27

19. Assignment and Subleasing . . . . . . . . . . . . . . 28

20. Permitted Contests . . . . . . . . . . . . . . . . . . 28

21. Conditional Limitations; Default Provision . . . . . . 29
    (a)  Events of Default . . . . . . . . . . . . . . . 29
    (b)  Landlord's Remedies Upon Default . . . . . . . . 30
    (c)  No Relief of Obligations . . . . . . . . . . . . 32
    (d)  Current Damages . . . . . . . . . . . . . . . . 32
    (e)  Liquidated Final Damages . . . . . . . . . . . . 32

22. Additional Rights of Landlord . . . . . . . . . . . . 33
    (a)  Non-Exclusive, Cumulative Remedies . . . . . . . 33
    (b)  Tenant's Waiver of Redemption . . . . . . . . . 33
    (c)  Costs Upon Default and Litigation . . . . . . . 33

23. Notices . . . . . . . . . . . . . . . . . . . . . . . 34

24. Estoppel Certificate . . . . . . . . . . . . . . . . . 34

25. Surrender and Holding Over . . . . . . . . . . . . . . 35

-ii-

26.  No Merger of Title . . . . . . . . . . . . . . . . . .  35

27.  Expansion  . . . . . . . . . . . . . . . . . . . . .  36

28.  Right of First Refusal . . . . . . . . . . . . . . .  36

29.  Change of Control  . . . . . . . . . . . . . . . . .  37

30.  Miscellaneous  . . . . . . . . . . . . . . . . . . .  38

31.  Incorporation by Reference . . . . . . . . . . . . .  38

Exhibit "A" - Description of Leased Premises
Exhibit "B" - Landlord's Equipment
Exhibit "C" - Tenant's Equipment
Exhibit "D" - (Reserved)
Exhibit "E" - Basic Rent Payments
Exhibit "F" - Purchase Prices
Exhibit "G" - Estoppel Certificate

Location of Definitions (by paragraph numbers):

Additional Rent - 6(b)
Alterations - 2
Assignment - 2
Basic Rent - 6(a)
Basic Rent Payment Dates - 6(a)
Commencement Date - 5
Condemnation - 2
Cost - 2
Change of Control - 29
Default Rate - 6(b)
Event of Default - 21(a)
Extended Term - 5
Guarantor - 2
Guaranty - 2
Impositions - 8(a)
Improvements - 1(a)
Initial Term - 5
Land - 1(a)
Landlord - introductory paragraph
Landlord's Equipment - 1(a)
Leased Premises - 1(a)
Legal Requirements - 2
Lien - 2
Mortgage - 2
Mortgagee - 2
Net Award - 2
Net Proceeds - 2
Note - 2

· iii ·

Permitted Encumbrances - 2
Purchase and Sale Agreement - 2
Replaced Equipment - 11(d)
Replacement Equipment - 11(d)
Requisition - 2
State - 1(a)
Substitute Assignment - 17(e)
Substitute Guaranty - 17(e)
Substitute Lease - 17(e)
Substitute Mortgage - 17(e)
Substitute Note - 17(e)
Substitute Property - 17
Substitution Date - 17
Taking - 2
Tenant - introductory paragraph
Tenant's Equipment - 1(a)
Term - 2
Termination Date - 13(b), 14(g), 16 and 29

LEASE AGREEMENT

06720/40153
LP I.D. No. 19

THIS LEASE AGREEMENT (this "Lease"), made as of this 25th day of August, 1994, by and between PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership ("Landlord"), with an address of 711 High Street, Des Moines, Iowa 50392, Attn: Commercial Real Estate Loan Administration, Reference No. 750418 and WINN-DIXIE TEXAS, INC., a Texas corporation (together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety, called "Tenant"), with an address of Post Office Box 1540, Fort Worth, Texas 76101-1540.

In consideration of the rents and agreements herein stipulated to be paid and performed, Landlord and Tenant hereby covenant and agree as follows:

1. **Demise of Premises; Priority of Lease**.

(a) **The Leased Premises**. Landlord hereby demises and lets to Tenant, and Tenant hereby takes and leases from Landlord, for the term or terms and upon the provisions hereinafter specified, the following described property (collectively, the "Leased Premises"): (i) the premises described in **Exhibit "A"** hereto, together with all easements, rights and appurtenances thereunto belonging or appertaining (collectively, the "Land"); (ii) the buildings, structures and other improvements constructed and to be constructed on the Land (collectively, the "Improvements"); and (iii) the machinery and equipment described in **Exhibit "B"** hereto and installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease (collectively, the "Landlord's Equipment"). The machinery, equipment and fixtures described in **Exhibit "C"** hereto and the Tenant's trade fixtures and equipment are and remain the property of Tenant whether the same constitute real or personal property under the law of the state in which the Leased Premises are located (the "State"); such machinery, equipment, fixtures and trade fixtures, together with all additions and accessions thereto, substitutions therefor and replacements thereof are herein collectively called "Tenant's Equipment").

(b) **Priority of Lease**. This Lease is prior to the lien of any Mortgage, and is made subject to the Permitted Encumbrances.

2. **Definitions**. For the convenience of the parties, the table of contents to this Lease contains a list of the paragraphs of this Lease in which certain terms used in this Lease are defined. Unless the context otherwise specifies or requires the following terms used in this Lease have the following meanings:

· 1 ·

0672X/4015S
LP I.D. No. 19

"Alterations" means all changes, additions, improvements or repairs to, all alterations, reconstructions, renewals or removals of, and all substitutions or replacements for, any of the Improvements or Landlord's Equipment, whether interior or exterior, structural or non-structural, or ordinary or extraordinary.

"Assignment" means an assignment of this Lease and the Guaranty executed by Landlord in favor of a Mortgagee.

"Condemnation" means a Taking or a Requisition.

"Cost" means, without duplication, the aggregate actual cost paid by or on behalf of Tenant in connection with the construction and acquisition of the Leased Premises for the following items:   (i) the Land and Improvements, including site improvements, obtaining necessary easements, storm drainage, off-site road construction and utilities (including adjacent land for, and costs related to roads and utilities subsequently dedicated to municipalities) and equipment incorporated in the Improvements or constituting a functional part thereof including, without limitation, heating and air conditioning systems, plumbing and wiring, (ii) the Landlord's Equipment, including the cost of installation thereof, (iii) all fees and expenses in connection with the placement, issuance and sale of the Note and any interim financing of the Leased Premises, (iv) title transfer fees, title insurance premiums and recording expenses and taxes (including transfer taxes), (v) indirect construction costs such as capitalized interest, taxes and insurance and other allocable costs during construction and (vi) fees to and disbursements of professionals such as attorneys, architects, engineers and surveyors.

"Guarantor" means Winn-Dixie Stores, Inc., a Florida corporation.

"Guaranty" means the guaranty of this Lease, dated as of the date hereof, executed by Guarantor in favor of Landlord.

"Leased Premises" means the Leased Premises described in paragraph 1 and includes any part thereof.

"Legal Requirements" means all present and future laws, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every duly constituted governmental authority or agency (but excluding those by their terms not applicable to Tenant or the Leased Premises as a result of some grandfather clause or similar provision), and all covenants, restrictions and conditions now or hereafter of

-2-

record which may be applicable to Tenant or to the Leased Premises, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of the Leased Premises, even if compliance therewith necessitates structural changes or improvements or results in interference with the use or enjoyment of the Leased Premises.

"Lien" means charge, encumbrance, title retention agreement, pledge, lien, security interest, mortgage and/or deed of trust.

"Mortgage" means a mortgage, deed of trust, deed to secure debt or similar security instrument creating a Lien on the Leased Premises in favor of a Mortgagee.

"Mortgagee" means a person or entity which is the holder of a Note of Landlord, secured by a Mortgage and an Assignment.

"Net Award" means the entire award payable by reason of a Condemnation, less any expenses incurred by Landlord, Tenant or a Mortgagee in collecting such award, and less any portion of such award retained by Tenant pursuant to paragraph 13(a)(i).

"Net Proceeds" means the entire proceeds of any insurance required under paragraph 14(a), together with any self-insurance payment required of Tenant, less any expenses incurred by Landlord, Tenant or a Mortgagee in collecting such proceeds or payment.

"Note" means a secured note or promissory note executed by Landlord in favor of Mortgagee secured by a Mortgage and an Assignment.

"Permitted Encumbrances" means:

(i) easements, rights-of-way, servitudes, other similar reservations, rights and restrictions and other defects and irregularities in the title to the Leased Premises, none of which materially lessens the value of the Leased Premises or materially impairs the use of the Leased Premises for the purposes held by Tenant;

(ii) matters identified as exceptions to title in the mortgage title insurance policy delivered to and accepted by any Mortgagee on the Commencement Date;

(iii) any condemnation right reserved to or vested in any municipality or public authority with respect to the Leased Premises; and

-3-

(iv) any Liens for Impositions not then delinquent and any Liens of mechanics, materialmen and laborers for work or services performed or materials furnished in connection with the Leased Premises which are not then overdue or the amount or validity of which is being contested by Tenant pursuant to, and as permitted by, paragraph 20.

"Purchase and Sale Agreement" means the Real Estate Purchase and Sale Agreement, dated June 8, 1994, between Principal Mutual Life Insurance Company and Winn-Dixie Stores, Inc.

"Requisition" means any temporary requisition or confiscation of the use or occupancy of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

"Taking" means any taking of the Leased Premises in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of any agreement with any condemnor in settlement of or under threat of any such condemnation or other eminent domain proceeding or by any other means, or any de facto condemnation.

"Term" means the Initial Term, any Extended Term or the Initial Term together with any Extended Term.

3.    Title and Condition.

(a)    Title.    The Leased Premises are demised and let subject to (i) the rights of parties in possession, (ii) the existing state of title as of the Commencement Date (including, without limitation, the Permitted Encumbrances, (iii) any state of facts which an accurate survey or physical inspection of the Leased Premises might show, (iv) all Legal Requirements, and (v) the condition of the Leased Premises as of the Commencement Date, all without representation or warranty by Landlord.  Tenant has examined the title to the Leased Premises on and as of the Commencement Date and has found the same to be satisfactory for all purposes.

(b)    Condition of Leased Premises.    Tenant acknowledges that it has received the Leased Premises in good condition and repair on the Commencement Date.  LANDLORD HAS NOT MADE, AND WILL NOT MAKE, ANY INSPECTION OF THE LEASED PREMISES, AND LANDLORD LEASES, AND TENANT TAKES, THE LEASED PREMISES "AS-IS".  TENANT ACKNOWLEDGES THAT LANDLORD HAS NOT MADE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY WARRANTY OR

-4-

REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE LEASED PREMISES, ITS FITNESS FOR ANY USE OR PURPOSE, ITS DESIGN OR CONDITION FOR ANY USE OR PURPOSE, THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, ITS VALUE, COMPLIANCE WITH SPECIFICATIONS, LOCATION, USE, CONDITION, MERCHANTABILITY, QUALITY, DESCRIPTION, DURABILITY OR OPERATION OR LANDLORD'S TITLE THERETO; IT BEING AGREED THAT ALL RISKS INCIDENT TO ALL OF THESE MATTERS ARE TO BE BORNE BY TENANT. TENANT ACKNOWLEDGES THAT THE LEASED PREMISES ARE OF ITS SELECTION AND HAVE BEEN CONSTRUCTED TO ITS SPECIFICATIONS. TENANT HAS INSPECTED THE LEASED PREMISES AND THEY ARE SATISFACTORY TO TENANT. IN THE EVENT OF ANY DEFECT OR DEFICIENCY OF ANY NATURE IN THE LEASED PREMISES, WHETHER PATENT OR LATENT, LANDLORD SHALL HAVE NO RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING THEREFROM (INCLUDING STRICT LIABILITY IN TORT). THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN NEGOTIATED AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY REPRESENTATIONS OR WARRANTIES BY LANDLORD, EXPRESS OR IMPLIED, WITH RESPECT TO THE LEASED PREMISES, ARISING PURSUANT TO ANY LAW NOW OR HEREAFTER IN EFFECT OR OTHERWISE.

(c) _Assignment of Warranties, Guaranties, Indemnities._ Landlord hereby assigns, without recourse or warranty whatsoever, to Tenant, for the duration of this Lease, all Landlord's interest in all warranties (except warranties of title to the Leased Premises), guaranties and indemnities, express or implied, and similar rights which Landlord may have against any manufacturer, seller, engineer, contractor or builder in respect of the Leased Premises, including, any rights and remedies existing by contract or pursuant to the Uniform Commercial Code. So long as no default has occurred and is continuing hereunder and until the expiration or termination of this Lease, Tenant shall have the right (at its sole cost and expense) to enforce any such warranty, guaranty or indemnity in the name of Landlord or Tenant. Landlord hereby agrees to execute and deliver, at Tenant's expense, such further documents (including powers of attorney) as Tenant may reasonably request, in order that Tenant may have the full benefit of the assignment effected or intended to be effected by this paragraph and the ability to enforce such warranties, guaranties and indemnities.

(d) _Granting of Easements._ So long as no default has occurred and is continuing hereunder, Landlord, at the request of Tenant, will (i) grant easements and other rights in the nature of easements, (ii) release existing easements or other rights in the nature of easements which are for the benefit of the Leased Premises, (iii) execute amendments to any covenants and restrictions affecting the Leased Premises, (iv) grant party wall rights for the benefit of any land adjoining the

-5-

Land, and (v) execute and deliver to any person any instrument appropriate to confirm or effect such grant, release or amendment, upon receipt by Landlord of a certificate of Tenant and Guarantor, signed by the President or a Vice President of Tenant and Guarantor stating:

(A) that the Leased Premises (including all related easements), following such grant, release or amendment, (1) constitutes an integrated economic unit for use as a retail grocery facility, including sufficient parking and all necessary and required utilities, (2) is a contiguous parcel of land, without gap or hiatus, (3) has adequate access to and from public highways, and (4) is not in violation of any Legal Requirement or any restrictive covenant or other agreement applicable thereto;

(B) that such grant, release or amendment will not materially lessen the value of the Leased Premises;

(C) the consideration to be received in connection with such grant, release or amendment; and

(D) that upon such grant, release or amendment, this Lease and the Guaranty shall remain in full force and effect and Tenant and Guarantor shall remain obligated under this Lease and the Guaranty without any reduction of Basic Rent, Additional Rent or any other sums payable under this Lease or the Guaranty to the same extent as if such conveyance or transfer had not been made, such easement, license, other right or privilege had not been granted, such easement or appurtenance had not been released, such party wall rights had not been granted, such release had not been granted, and such instrument had not been executed and delivered; and

(E) that Tenant will perform all of the obligations under such instrument of grant, release or amendment.

Tenant may retain any consideration up to $5,000 payable for such grant, release or amendment. Any consideration in excess of $5,000 shall be paid to Landlord.

(e) Conveyances for Public Purposes. So long as no default has occurred and is continuing hereunder, Landlord will, at Tenant's request, (i) sell, assign, convey or otherwise transfer an interest in the Leased Premises to any person legally empowered to take such interest by

·6·

Condemnation, (ii) execute petitions to have the Leased Premises annexed to any municipal corporation or utility district, (iii) dedicate, transfer or release portions of the Leased Premises for road, highway or other public purposes, and (iv) execute and deliver to any person any instrument appropriate to confirm or effect such sale, transfer, annexation or dedication, upon receipt by Landlord of a certificate of Tenant and Guarantor, signed by the President or a Vice President of Tenant and Guarantor stating:

(A)   with respect to any sale, assignment, conveyance or other transfer pursuant to clause (i) above, (1) the consideration being paid for such interest, (2) that such consideration is not less than the fair market value of such interest, as determined by Tenant and Guarantor, and (3) such sale, assignment, conveyance or transfer is being made in anticipation that such interest would otherwise be taken by Condemnation;

(B)   that the Leased Premises (including all related easements), following such sale, assignment, transfer, conveyance, annexation or dedication, (1) constitutes an integrated economic unit for use as a retail grocery facility including sufficient parking and all necessary and required utilities, (2) is a contiguous parcel of land, without gap or hiatus, (3) has adequate access to and from public highways, and (4) is not in violation of any Legal Requirement or any restrictive covenant or other agreement applicable thereto;

(C)   that such sale, assignment, transfer, conveyance, annexation or dedication will not materially lessen the value of the Leased Premises;

(D)   the consideration to be received in connection with such sale, assignment, transfer, conveyance, annexation or dedication;

(E)   that upon such sale, assignment, transfer, conveyance, annexation or dedication, this Lease and the Guaranty shall remain in full force and effect and Tenant and Guarantor shall remain obligated under this Lease and the Guaranty without any reduction of Basic Rent, Additional Rent or other sums payable under this Lease or the Guaranty to the same extent as if such sale, assignment, conveyance or transfer had not been made, such petition had not been made or granted, such right-of-way, dedication, other right or privilege had

· 7 ·

not been granted, and such instrument had not been executed and delivered; and

(F) that Tenant will perform all of the obligations under such instrument of sale, assignment, conveyance or transfer or under such petition.

Tenant may retain any consideration up to $5,000 payable for such sale, assignment, conveyance, transfer, dedication or annexation. Any consideration in excess of $5,000 shall be paid to Landlord.

4. **Use of Leased Premises; Quiet Enjoyment.**

(a) **Use.** The Leased Premises may be used as a retail facility in the business of Tenant or for any other lawful purpose, except that the Leased Premises shall not be used for any purpose which shall violate any Legal Requirement, any insurance policy in effect with respect to the Leased Premises, or any covenants, restrictions or agreements applicable to the Leased Premises or constitute a public or private nuisance or waste.

(b) **Landlord's Covenant of Quiet Enjoyment.** So long as no Event of Default exists hereunder, Landlord covenants to do no act to disturb the peaceful and quiet occupation and enjoyment of the Leased Premises by Tenant, provided that Landlord or any Mortgagee may enter upon and examine the Leased Premises at reasonable times and upon reasonable notice to Tenant.

5. **Term.** Subject to the provisions hereof, Tenant shall have and hold the Leased Premises for an initial term (the "Initial Term") commencing on September 2, 1994 (the "Commencement Date"), and ending on August 31, 2014. So long as no Event of Default then exists hereunder, Tenant shall have the option to extend the Term as provided below for 6 additional terms (each an "Extended Term") of 5 years each by giving notice to Landlord not less than 6 months prior to the expiration of the then current Term. If Tenant does not give any such notice to extend to Landlord in a timely fashion, the Term shall automatically terminate at the end of the then current Term. Any such Extended Term shall be subject to all of the provisions of this Lease, all of which shall continue in full force and effect. If Tenant does not exercise an option for an Extended Term, Landlord shall have the right during the remainder of the then current Term (i) to advertise the availability of the Leased Premises for sale or for reletting, and to erect upon the Leased Premises signs indicating such availability (provided that such signs do not unreasonably interfere with the use of the Leased Premises by Tenant), and (ii) to show the Leased Premises to prospective purchasers or tenants at reasonable times during normal

-8-

06720/40153
LF I.D. No. 19

business hours upon reasonable notice to Tenant. If Tenant shall fail to timely exercise its right to extend the Term for any Extended Term, then Tenant's right to extend the Term for any further Extended Terms shall terminate and be null and void.

6.    Rent.

(a)  **Basic Rent**.  Tenant shall pay to Landlord, as rent for the Leased Premises during the Term, except that the last payment of the Initial Term (if there is no Extended Term) or the last payment of the final Extended Term shall be made on the last August 31 occuring during such Term, the amounts (the "Basic Rent") determined in accordance with the schedule set forth in **Exhibit "B"** hereto, commencing on December 1, 1994, and continuing on the first day of each March, June, September and December thereafter during the Term (the said days being herein called the "Basic Rent Payment Dates"). Tenant shall pay the Basic Rent to Landlord at Landlord's address set forth above, or at such other place or to such other person as Landlord from time to time may designate to Tenant in writing, in funds which at the time of such payment shall be legal tender for the payment of public or private debts in the United States of America. Basic Rent for the period from the Commencement Date through November 30, 1994, shall be in the amount of $74,554.06 and shall be paid December 1, 1994.

(b)  **Additional Rent**.  Tenant shall pay and discharge when the same shall become due, as additional rental (the "Additional Rent"), all other amounts and obligations which Tenant assumes or agrees to pay or discharge pursuant to this Lease, together with every fine, penalty, interest and cost which may be added for nonpayment or late payment thereof. In the event of any failure by Tenant to pay or discharge any of the foregoing, Landlord shall have all rights, powers and remedies provided herein, by law or otherwise, in the event of nonpayment of Basic Rent. If any installment of Basic Rent is not paid within 5 business days after the due date thereof, Tenant shall pay to Landlord, as a late charge and as Additional Rent, an amount equal to 2% of the amount of such installment. Tenant shall also pay to Landlord on demand, as Additional Rent, interest at 9.91% per annum (the "Default Rate") (i) on all overdue installments of Basic Rent from (x) 5 days after the due date thereof with respect to the first such overdue installment in any 12-month period and (y) the due date thereof with respect to any subsequent overdue installment in such 12-month period, in each case until paid in full, and (ii) on all overdue amounts of Additional Rent which Landlord or Mortgagee shall have paid on behalf of Tenant, from the date of payment thereof by Landlord or Mortgagee, until paid in full.

-9-

06720/40153
LP I.D. No. 19

## 7. Net Lease; Non-Terminability.

(a) No Abatement of Basic Rent. This Lease is a net lease, and Basic Rent, Additional Rent and all other sums payable hereunder by Tenant shall be paid without notice or demand, and without setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense.

(b) No Termination of Lease; No Defense to Tenant's Obligations. This Lease shall not terminate nor shall Tenant have any right to terminate this Lease (except as expressly provided in paragraphs 13(b), 14(g), 16 and 17) nor shall Tenant be entitled to any setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease (except as expressly provided in paragraph 15), nor shall the obligations of Tenant under this Lease be affected, any present or future law to the contrary notwithstanding, by reason of: (i) any damage to or destruction of the Leased Premises by any cause whatsoever, (ii) any Condemnation, (iii) the prohibition, limitation or restriction of Tenant's use of the Leased Premises, (iv) any eviction by paramount title or otherwise, (v) Tenant's acquisition of ownership of the Leased Premises other than pursuant to paragraphs 13(b), 14(g), 16 or 17, (vi) any default on the part of Landlord hereunder or under any other agreement, (vii) any latent or other defect in, or any theft or loss of, the Leased Premises, (viii) the breach of any warranty of any seller or manufacturer of any of the Landlord's Equipment, or (ix) any other cause whether similar or dissimilar to the foregoing. It is the intention of the parties hereto that the obligations of Tenant hereunder shall be separate and independent covenants and agreements, and that Basic Rent, Additional Rent and all other sums payable by Tenant hereunder shall continue to be payable in all events and that the obligations of Tenant hereunder shall continue unaffected for any reason, unless the requirement to pay or perform the same shall have been terminated pursuant to an express provision of this Lease.

(c) Continuing Obligations of Tenant. Tenant agrees that it shall remain obligated under this Lease in accordance with its provisions and that (except as otherwise expressly provided in paragraphs 13(b), 14(g), 16 and 17), it shall not take any action to terminate, rescind or avoid this Lease, notwithstanding (i) the bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding-up or other proceeding affecting Landlord, or (ii) any action with respect to this Lease (including the disaffirmance hereof) which may be taken by

-16-

Landlord in any proceeding under the Federal Bankruptcy Act or any similar federal or state law, or by any trustee, receiver or liquidator of Landlord or by any court in any such proceeding.

(d) __Tenant's Waivers__. Tenant waives all rights which may now or hereafter be conferred by law (i) to quit, terminate or surrender this Lease or the Leased Premises, and (ii) to any setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease, except as otherwise expressly provided herein.

8.  __Payment of Impositions; Compliance with Law__.

(a) __Impositions__. Subject to the provisions of paragraph 20, Tenant shall, before interest or penalties are due thereon, pay and discharge the following whether the same became due and payable before, on or after the Commencement Date (collectively, the "Impositions"): all taxes (including gross rental taxes), assessments, levies, fees, water and sewer rents and charges, utilities and communications taxes and charges and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are, at any time, prior to or during the Term, imposed upon or assessed against (i) the Leased Premises, (ii) any Basic Rent, Additional Rent or other sum payable hereunder, (iii) this Lease, the leasehold estate created hereby, or (iv) the acquisition, occupancy, leasing, use or possession of the Leased Premises (including without limitation, any gross income tax, gross rental tax, sales tax, use tax or excise tax). Tenant shall have no obligation to pay federal, state or local (x) franchise, capital stock or similar taxes, of Landlord, (y) net income, net rental, excess profits or other taxes, of Landlord, or (z) any estate, inheritance, succession, gift, capital levy or similar tax unless such taxes referred to in clauses (x) and (y) above, are in lieu of, or a substitute for, any tax, assessment, levy or charge which, if it were in effect on the Commencement Date, would be payable by Tenant. If any assessment may be paid in installments, Tenant shall have the option to pay such assessment in installments; in such event, Tenant shall be liable only for those installments which become due and payable during the Term. Tenant shall prepare and file all tax reports required by governmental authorities which relate to the Impositions. Tenant shall, within 90 days after payment thereof, deliver to Landlord copies of all receipts for payment of Impositions.

(b) <u>Compliance with Law</u>. Subject to the provisions of paragraph 20, Tenant shall at all times comply with and cause the Leased Premises to comply with and conform to all Legal Requirements, all contracts (including insurance policies), agreements and restrictions applicable to the Leased Premises or its ownership, occupancy or use, including those which require structural, unforeseen or extraordinary changes to the Leased Premises.

9. <u>LIENS; RECORDING AND TITLE</u>. TENANT SHALL NOT, DIRECTLY OR INDIRECTLY, CREATE OR PERMIT TO BE CREATED OR TO REMAIN, AND SHALL PROMPTLY DISCHARGE, ANY LIEN (WHETHER CREATED OR ARISING BEFORE, ON OR AFTER THE COMMENCEMENT DATE) ON THE LEASED PREMISES OR ANY BASIC RENT, ADDITIONAL RENT OR ANY OTHER SUMS PAYABLE BY TENANT UNDER THIS LEASE, WHICH ARISES OR EXISTS FOR ANY REASON, OTHER THAN THE MORTGAGE, THE ASSIGNMENT, PERMITTED ENCUMBRANCES AND ANY LIEN CREATED BY OR RESULTING FROM ANY ACT BY LANDLORD NOT CONSENTED TO BY TENANT. NOTICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE LIABLE FOR ANY LABOR, SERVICES OR MATERIALS FURNISHED OR TO BE FURNISHED TO TENANT, OR TO ANYONE HOLDING THE LEASED PREMISES THROUGH OR UNDER TENANT, AND THAT NO MECHANICS' OR OTHER LIENS FOR ANY SUCH LABOR, SERVICES OR MATERIALS SHALL ATTACH TO OR AFFECT THE INTEREST OF LANDLORD IN THE LEASED PREMISES.

10. <u>INDEMNIFICATION</u>. TENANT AGREES, AT ITS SOLE COST AND EXPENSE, TO PAY, PROTECT, INDEMNIFY, SAVE AND HOLD HARMLESS LANDLORD AND MORTGAGEE FROM AND AGAINST ANY AND ALL LIABILITIES, LOSSES, DAMAGES, PENALTIES, COSTS, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND EXPENSES), CAUSES OF ACTION, SUITS, CLAIMS, DEMANDS OR JUDGMENTS OF ANY NATURE WHATSOEVER, HOWSOEVER CAUSED, ARISING FROM (I) ANY INJURY TO, OR DEATH OF, ANY PERSON, OR ANY LOSS OF, OR DAMAGE TO, ANY PROPERTY ON THE LEASED PREMISES, OR ON ADJOINING SIDEWALKS, STREETS OR WAYS, OR CONNECTED WITH THE USE, CONDITION OR OCCUPANCY THEREOF (UNLESS CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LANDLORD OR MORTGAGEE), WHETHER OR NOT LANDLORD OR MORTGAGEE HAS OR SHOULD HAVE KNOWLEDGE OR NOTICE OF THE DEFECT OR CONDITIONS CAUSING OR CONTRIBUTING TO SUCH INJURY, DEATH, LOSS OR DAMAGE, (II) ANY VIOLATION BY TENANT OF ANY PROVISION OF THIS LEASE, OR ANY CONTRACT OR AGREEMENT TO WHICH TENANT IS A PARTY OR BY WHICH IT IS BOUND, AFFECTING THIS LEASE OR THE LEASED PREMISES, OR (III) ANY CONTEST REFERRED TO IN PARAGRAPH 20. THE OBLIGATIONS OF TENANT UNDER THIS PARAGRAPH SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THIS LEASE.

11. <u>Maintenance and Repair</u>.

(a) <u>Maintenance</u>. Tenant shall at all times (i) maintain the Leased Premises and adjoining sidewalks, streets and ways in safe condition, and in good repair and appearance (except for ordinary wear and tear), (ii) maintain the Landlord's Equipment in good mechanical condition, and (iii) promptly

-12-

make all structural changes and repairs to the Leased Premises (including shoring of walls and foundations to insure safe condition) of every kind and nature, whether foreseen or unforeseen, which may be required by any Legal Requirement or for the safety of the Leased Premises, and (iv) keep and maintain the Land, Improvements and Landlord's Equipment in such good repair and appearance as they were on the Commencement Date (except for ordinary wear and tear). Landlord shall not be required to maintain, repair or rebuild the Leased Premises in any way, and Tenant hereby expressly waives the right to make repairs or alterations at the expense of Landlord pursuant to any Legal Requirement now or hereafter in effect. All such work of repair or rebuilding by Tenant shall be done in a good and workmanlike manner.

(b) **Encroachments.** In the event that any Improvement now or hereafter constructed shall (i) encroach upon any property, street or right-of-way adjoining the Leased Premises, (ii) violate the provisions of any restrictive covenant affecting the Leased Premises, (iii) hinder or obstruct any easement or right-of-way to which the Leased Premises is subject, or (iv) impair the rights of others in, to or under any of the foregoing, then, promptly after written request of Landlord, Tenant shall either (x) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation, hindrance, obstruction or impairment, whether the same shall affect Landlord, Tenant or both, or (y) take such action as shall be necessary to remove such encroachment, hindrance or obstruction and to end such violation or impairment. If such action is in the form of an Alteration, such Alteration shall conform to the provisions of paragraph 12.

(c) **Landlord's Right of Entry.** Landlord and any Mortgagee shall have the right, upon reasonable notice to Tenant (or without notice in case of emergency), to enter upon the Leased Premises for the purpose of making any repairs or rebuilding which may be necessary by reason of Tenant's failure to comply with the provisions of subparagraphs (a) and (b) of this paragraph 11. Except in case of emergency, the right of entry shall be exercised at reasonable times and at reasonable hours. The cost of all such work shall be Additional Rent, and Tenant shall pay the same to Landlord (or Mortgagee), together with interest thereon at the Default Rate from the time of demand for payment by Landlord (or Mortgagee) to Tenant, until paid by Tenant, immediately upon written demand therefor and upon submission to Tenant of evidence of Landlord's (or Mortgagee's) payment of such costs.

(d) **Replacement Equipment.** Tenant shall from time to time replace with other operational equipment or parts (the

- 13 -

06720/40153
LP I.D. No. 19

"Replacement Equipment") any of the Landlord's Equipment (the "Replaced Equipment") which shall have become worn out, obsolete or unusable for the purpose for which it is intended, been taken by a Condemnation, or been lost, stolen, damaged or destroyed. Tenant shall repair, at its sole cost and expense, all damage to the Leased Premises caused by the removal of the Replaced Equipment or of Tenant's Equipment, or the installation of the Replacement Equipment. All Replacement Equipment shall become the property of Landlord, shall be free and clear of all Liens and rights of others, and shall become a part of the Landlord's Equipment to the same extent as the Replaced Equipment was part of the Landlord's Equipment.

(e) Hazardous Waste. If any activity has been, was, or in the future will be, conducted at the Leased Premises, or any past, present or future use of the Leased Premises in any manner or any event occurs whether on or off the Leased Premises, (i) which would cause the Leased Premises to become a hazardous waste treatment storage or disposal facility within the meaning of, or otherwise bring the Leased Premises within the ambit of, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901 et seq., or any other federal, state or local law or regulation relating to Hazardous Materials, (ii) so as to cause the release or threatened release of Hazardous Materials from the Leased Premises within the meaning of, or otherwise bring the Leased Premises within the ambit of, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601-9657, or any other federal, state or local law or regulation relating to Hazardous Materials, (iii) so as to cause the discharge of pollutants or effluents into any water source or system, or the discharge into the air of any emissions, which would require a permit under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq., or the Clean Air Act, 42 U.S.C. §§ 7401 et seq., or any other federal, state or local law or regulation relating to Hazardous Materials, or (iv) so as to create a condition on the Leased Premises which is in violation of any federal, state or local law or regulation relating to Hazardous Materials, Tenant agrees to promptly notify Landlord and Mortgagee, if any, of any claim made in respect thereof. If Tenant discovers that Hazardous Materials exist on the Leased Premises in violation of any applicable law (whether or not disclosed in any environmental report issued on or prior to the Commencement Date), Tenant shall promptly notify Landlord of such condition, and shall, with all due diligence, take every remedial, removal and other actions necessary to remediate, remove, contain or clean up such Hazardous Materials in a manner and to the extent required by applicable law. Tenant agrees to comply with each of the recommendations contained in all environmental reports issued relating to the Leased Premises if such recommendations

- 14 -

are deemed necessary by Tenant, Landlord or Mortgagee, in each case in the exercise of prudent business judgment, for the protection, operation and maintenance of the Leased Premises. TENANT FURTHER AGREES TO PROTECT, INDEMNIFY, SAVE HARMLESS AND DEFEND LANDLORD AND MORTGAGEE, IF ANY, FROM AND AGAINST ALL LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES) IMPOSED UPON OR INCURRED BY ANY OF THEM, WHICH ARISE, DIRECTLY OR INDIRECTLY, OUT OF (X) THE EXISTENCE OF HAZARDOUS MATERIALS ON THE LEASED PREMISES, OR (Y) ANY ACTION OR OMISSION OF TENANT, ITS AGENTS OR EMPLOYEES, WHICH CONSTITUTES A VIOLATION OF, OR CREATES A CONDITION ON THE LEASED PREMISES WHICH IS IN VIOLATION OF, ANY LEGAL REQUIREMENT RELATING TO HAZARDOUS MATERIALS.    THE INDEMNITY SET FORTH IN THE PRECEDING SENTENCE SHALL SURVIVE THE EXPIRATION OR EARLIER TERMINATION OF THIS LEASE.

12.    _Alterations_.    Tenant may, at its expense make any Alterations, construct upon the Land any additional Improvements or install equipment in the Improvements or accessions to the Landlord's Equipment without Landlord's consent, provided that (i) the character of the Leased Premises shall not be materially changed and the market value of the Leased Premises shall not be materially lessened by any such Alteration, construction or installation (it being agreed that any expansion or enlargement referred to in paragraph 27 shall not be deemed to constitute a material change in the character of the Leased Premises), nor shall the usefulness or structural integrity of the Leased Premises be impaired thereby, (ii) all such work of Alteration, construction and installation shall be performed in a good and workmanlike manner, (iii) all such Alterations, construction and installation shall be expeditiously completed in compliance with all Legal Requirements, (iv) all work done in connection with any such Alteration, construction or installation shall comply with the requirements of any insurance policy required to be maintained by Tenant hereunder, (v) Tenant shall promptly pay all costs and expenses of any such Alteration, construction or installation, and Tenant shall discharge all Liens filed against the Leased Premises arising out of the same, and (vi) Tenant shall procure and pay for all permits and licenses required in connection with any such Alteration, construction or installation. In the case of any other proposed Alteration, construction or installation, Tenant shall first obtain Landlord's and Mortgagee's consents, which consents may be withheld in Landlord's or Mortgagee's sole discretion. All such Alterations, construction and installations shall be the property of Landlord and shall be subject to this Lease.

13.    _Condemnation_.

(a)    _Assignment of Condemnation Award_.    Subject to the provisions of this paragraph 13 and paragraph 15, Tenant

- 15 -

hereby irrevocably assigns to Landlord any award or payment to which Tenant is or may be entitled by reason of any Condemnation, whether the same shall be paid or payable for Tenant's leasehold interest hereunder or otherwise; but nothing in this Lease shall be deemed to (i) assign to Landlord any award or payment on account of Tenant's Equipment or other tangible property, moving expenses, loss of business, and similar claims to the extent Tenant shall have a right to make a separate claim therefor against the condemnor, or (ii) impair Tenant's right to any award or payment resulting from such separate claim.  If Landlord receives notice of any proposed Condemnation from any person having the power of eminent domain, Landlord shall promptly give Tenant notice of such proposed Condemnation; the failure of Landlord to give such notice to Tenant shall not affect Tenant's obligations under this paragraph 13 or any other provision of this Lease.

(b)  _Total or Substantial Condemnation_.  If (i) the entire Leased Premises, or (ii) any substantial portion of the Leased Premises, the loss of which even after restoration would be substantially and materially adverse to the business operations of Tenant on the Leased Premises, shall be subject to a Taking, then Tenant shall, not later than 60 days after notice of such Taking, give notice to Landlord of its intention to terminate this Lease on any Basic Rent Payment Date specified in such notice (the "Termination Date") which shall be not less than 120 days nor more than 240 days after such notice to Landlord.  Such notice shall be accompanied by a certificate of Tenant and Guarantor, signed by the President or any Vice President of Tenant and Guarantor, stating that, in the judgment of the Executive Committee of the Board of Directors of Tenant and Guarantor, the conditions referred to in clause (i) or (ii) above exist with respect to the Leased Premises by reason of such Taking.  As used in this paragraph 13(b), "substantial portion" means (a) 5% or more of the building space contained in the Improvements, (b) 10% or more of the parking area, (c) 15% or more of the building space and parking area in any combination, or (d) taking of any material access to the Leased Premises for which no reasonable alternative is available at a reasonable cost.  If the Termination Date occurs during the Initial Term, as part of such notice, Tenant shall, at its election:  (x) give to Landlord its irrevocable offer to purchase the Leased Premises, or the portion of the Leased Premised remaining after such Taking, if any, and to purchase the Net Award payable to Landlord in connection with such Taking, at a price which, at Tenant's election, shall be either (1) the amount determined in accordance with Exhibit "F" hereto, or (2) such amount determined in accordance with Exhibit "F" hereto minus the then unpaid principal amount of the Note (in which case Tenant shall assume all of the obligations under the Note and

- 16 -

06720/40153
LP I.D. No. 19

Mortgage pursuant to paragraph 18(c)) or (y) notify Landlord and any Mortgagee that it will effect a substitution of property for the Leased Premises pursuant to paragraph 17 within 180 days after such notice.    If    (A) Tenant's termination notice is accompanied by Tenant's irrevocable offer to purchase the Leased Premises (and Net Award) as set forth in clause (x) of the immediately preceding sentence, and if Landlord shall reject such offer by notice to Tenant (accompanied by the written consent of Mortgagee to such rejection) given not later than the tenth day prior to the Termination Date, or (B) the Termination Date shall occur during an Extended Term, then the Net Award for such Taking shall belong to Landlord and this Lease shall terminate on the Termination Date upon the payment by Tenant of all installments of Basic Rent, all Additional Rent and all other sums then due and payable under this Lease to and including the Termination Date.    Unless Landlord shall have rejected such offer to purchase the Leased Premises by notice to Tenant (accompanied by Mortgagee's written consent) given not later than the tenth day prior to the Termination Date, or if Landlord shall make such rejection without the written consent of Mortgagee, then Landlord shall be conclusively presumed to have accepted such offer to purchase, and Landlord shall (1) transfer and convey the Leased Premises, or remaining portion thereof, if any, to Tenant or its designee upon the terms and provisions set forth in paragraph 18, and (2) assign to Tenant or its designee all of Landlord's right, title and interest in and to the Net Award for such Taking. against payment by Tenant of the purchase price therefor (including any assumption of the Note pursuant to paragraph 18(c)), together with all installments of Basic Rent, all Additional Rent, and all other sums then due and payable under this Lease to and including the Termination Date.    In the event of the termination of this Lease pursuant to this paragraph, and if Tenant or its designee shall have purchased the Leased Premises pursuant to this paragraph, Tenant or its designee shall be entitled to the Net Award for such Taking.

If Tenant elects to substitute a Substitute Property for the Leased Premises in accordance with the provisions of paragraph 17, Tenant or its designee shall be entitled to the Net Award for the Taking of the Leased Premises upon completion of such substitution pursuant to paragraph 17, provided no Event of Default has then occurred or is continuing hereunder.

(c)  **Partial Condemnation.**  In the event of any Taking of the Land or Improvements which does not result in a termination of this Lease pursuant to paragraph 13(a), the Term shall nevertheless continue and there shall be no abatement or reduction of Basic Rent, Additional Rent or any

·17·

other sums payable by Tenant hereunder, except as specifically provided in paragraph 15. Subject to the requirements of paragraph 15, the Net Award for such Taking shall be retained by Landlord and, promptly after such Taking, Tenant shall commence the restoration of, and diligently continue to restore, the Land and Improvements as nearly as possible to their value, condition and character immediately prior to such Taking, in accordance with the provisions of paragraph 15.

Upon the final payment to Landlord of the Net Award for a Taking which falls within the provisions of this paragraph 13(c), Landlord shall make the Net Award available to Tenant for such restoration, in accordance with the provisions of paragraph 15.

In the event of a Requisition of the Leased Premises, the Net Award for such Requisition allocable to the Term shall be paid to Tenant and this Lease shall continue in full force and effect without any abatement or reduction of the Basic Rent, Additional Rent or other sums payable by Tenant hereunder. Any portion of such Net Award allocable to any period after the expiration or termination of the Term shall belong to Landlord.

(d) **Landlord's Equipment Condemnation**. In the event of any Taking of Landlord's Equipment which does not fall within the provisions of paragraph 13(b), this Lease shall continue in full force and effect and without any abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder. Tenant shall, whether or not the Net Award is sufficient for the purpose, promptly replace Landlord's Equipment so taken, in accordance with the provisions of paragraphs 11(d) and 15, and the Net Award for such a Condemnation shall thereupon be payable to Tenant.

(e) **Proceedings**. Tenant shall take all appropriate actions with respect to each Condemnation proceeding, action, negotiation, prosecution and adjustment and shall pay all cost and expenses thereof, including the cost of Landlord's and Mortgagee's participation therein, provided that Landlord's and Mortgagee's consents shall be required to any settlement or agreement with the condemning authority (except one involving solely an award or payment to which Tenant is entitled under paragraph 13(a)), such consent not to be unreasonably withheld or delayed.

14. **Insurance**.

(a) **Type of Insurance**. Tenant shall maintain at its sole cost and expense the following insurance on the Leased Premises:

(i)   Insurance against loss or damage to the Improvements and Landlord's Equipment by fire and other risks from time to time included under standard extended and additional extended coverage, vandalism and malicious mischief policies, in amounts not less than the actual replacement value of the Improvements and Landlord's Equipment, excluding footings and foundations and other parts of the Improvements which are not insurable.  Such policies may be subject to a deductible amount not in excess of $50,000.

(ii) General public liability insurance against claims for bodily injury, death or property damage occurring on, in, or about the Leased Premises or adjoining sidewalks, streets or ways, in an amount not less than $1,000,000 for bodily injury or death to any one person, not less than $5,000,000 for any one accident, and not less than $1,000,000 for property damage.    Policies for such insurance shall be for the mutual benefit of Landlord, Tenant and any Mortgagee.

(iii) Workers' compensation insurance covering all persons employed in connection with any work done on or about the Leased Premises for which claims for death or bodily injury could be asserted against Landlord, Tenant or the Leased Premises, or in lieu of such workers' compensation insurance, a program of self-insurance complying with the rules, regulations and requirements of the appropriate agency of the State.

(b)   Insurance Requirements: Self-Insurance.    The insurance required by paragraph 14(a) shall be written by companies of recognized financial standing which are approved by Landlord and any Mortgagee and are authorized to do an insurance business in the State.   In the event that at any time Guarantor's senior debt shall be rated below BBB- by Standard & Poor's Corporation and below baa3 by Moody's Investors Services, Inc., such insurance shall be written by insurers rated A or better by Best's with a claims paying rating of "X" or better.  Notwithstanding the above, so long as Tenant is not in default hereunder and Guarantor's tangible net worth (as determined under generally accepted accounting principles in effect on the Commencement Date)   exceeds $500,000,000, Tenant may self-insure each of the coverages described in paragraph 14(a).  Sums due from Tenant in lieu of insurance proceeds because of such self-insurance shall be treated as insurance proceeds for all purposes under this Lease.  The insurance (i) shall be for a term of not less than 6 months, (ii) shall be in amounts sufficient at all times to satisfy any coinsurance requirements thereof, and (iii) shall (except for the workers' compensation insurance referred to in

·19·

paragraph 14(a)(iii)) name Landlord, Tenant and any Mortgagee as insured parties, as their respective interests may appear. If said insurance or any part thereof shall expire, be withdrawn, become void by breach of any condition thereof by Tenant, or become void or unsafe by reason of the failure or impairment of the capital of any insurer, or if for any other reasonable cause said insurance shall become unsatisfactory to Landlord or Mortgagee, Tenant shall promptly obtain new or additional insurance satisfactory to Landlord and Mortgagee.

(c) **Mortgagee Loss Payable Clauses; Cancellation of Insurance**. Each insurance policy referred to in clause (i) of paragraph 14(a) shall contain a mortgagee loss payable clause in favor of any Mortgagee. Each policy shall provide that it may not be canceled except after 30 days prior notice to Landlord and any Mortgagee. Each such policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forfeiture of all or a part of such insurance payment, (ii) the occupation or use of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Mortgagee pursuant to any provision of the Mortgage upon the happening of an event of default thereunder, or (iv) any change in title or ownership of the Leased Premises.

(d) **Payment of Premiums; Policy Replacements**. Tenant shall pay as they become due all premiums for the insurance required by this paragraph 14, shall renew or replace each policy, and shall deliver to Landlord such renewal or replacement policy and evidence of the payment of the full premium therefor at least 15 days prior to the expiration date of each policy. In the event of Tenant's failure to comply with any of the foregoing requirements, Landlord shall be entitled to procure such insurance. Any sums expended by Landlord in procuring such insurance shall be Additional Rent and shall be repaid by Tenant immediately upon demand therefor by Landlord, together with interest thereon at the Default Rate, from the time of payment by Landlord until fully paid by Tenant.

(e) **Blanket Policies**. Any insurance which Tenant is required to obtain pursuant to paragraph 14(a) may be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant or Guarantor, provided that such "blanket" policy or policies otherwise comply with the provisions of this paragraph 14.

-20-

06720/40151
LP I.D. No. 19

(f) **Casualty Loss Claims**.  In the event of any casualty loss, Tenant shall give Landlord and Mortgagee immediate notice thereof.  Tenant is hereby authorized to adjust, collect and compromise, in its name or in Landlord's name, all claims under any of the insurance policies required by paragraph 14(a)(i) and to execute and deliver on behalf of Landlord all necessary proofs of loss, receipts, vouchers and releases required by the insurers.  Landlord agrees to sign, upon request of Tenant, all such proofs of loss, receipts, vouchers and releases.  Landlord and Mortgagee shall have the right to join in any such adjustment, claim or compromise and any adjustment, settlement or compromise of any such claim shall be subject to the prior written approval of Landlord and any Mortgagee.  All proceeds of any insurance required under clause (i) of paragraph 14(a) shall be payable to Mortgagee.  Each insurer is hereby authorized and directed to make payment under said policies, including return of unearned premiums, directly to Mortgagee instead of to Landlord and Tenant jointly; and Landlord and Tenant hereby appoint Mortgagee as attorney-in-fact to endorse any draft therefor.

Except as provided in paragraph 14(g), in the event of any casualty (whether or not insured against) resulting in damage to the Leased Premises, this Lease shall continue in full force and effect without abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder.  The Net Proceeds of such casualty shall be retained by Mortgagee subject to paragraph 15 and, promptly after such casualty, Tenant shall commence and diligently continue to restore the Leased Premises as nearly as possible to their value, condition and character immediately prior to such damage, in accordance with the provisions of paragraph 15.

Upon the final payment to Mortgagee of such Net Proceeds, Mortgagee shall make the Net Proceeds available to Tenant for restoration, in accordance with the provisions of paragraph 15.

(g) **Termination Upon Casualty**.  If any substantial portion of the Leased Premises is damaged or destroyed in any casualty such that it would be uneconomic for Tenant to restore the Leased Premises to their condition prior to such damage or destruction for use in the business operations of Tenant, then Tenant may, not later than 60 days after such casualty, give to Landlord notice of its intention to terminate this Lease on any Basic Rent Payment Date specified in such notice (also, a "Termination Date") which shall not be less than 120 days nor more than 240 days after such notice to Landlord, and Tenant shall thereupon have no obligation to restore the Leased Premises.  Such notice shall be accompanied

- 21 -

by a certificate of Tenant and Guarantor, signed by the
President or any Vice President of Tenant and Guarantor,
stating that, in the judgment of the Executive Committee of
the Board of Directors of Guarantor, rebuilding, restoring or
repairing the Leased Premises for continued use and occupancy
in the business carried on by Tenant on the Leased Premises
immediately prior to such casualty would be uneconomic.  As
used in this paragraph 14(g), "substantial portion" means 50%
or more of the replacement cost of the Improvements.  If the
Termination Date occurs during the Initial Term, as part of
such notice Tenant shall at its election:    (x) give to
Landlord its irrevocable offer to purchase the Leased
Premises, or the portion of the Leased Premised remaining
after such casualty, and to purchase the Net Proceeds payable
to Landlord in connection with such casualty, at a price
which, at Tenant's election, shall be either (1) the amount
determined in accordance with Exhibit "F" hereto, or (2) such
amount determined in accordance with Exhibit "F" hereto minus
the then unpaid principal amount of the Note (in which case
Tenant shall assume all of the obligations under the Note and
Mortgage pursuant to paragraph 18(c)) or (y) notify Landlord
and any Mortgagee that it will effect a substitution of
property for the Leased Premises pursuant to paragraph 17
within 180 days after such notice.  If (A) Tenant's
termination notice is accompanied by Tenant's irrevocable
offer to purchase the Leased Premises (and Net Proceeds) as
forth in clause (x) of the immediately preceding sentence, and
if Landlord shall reject such offer by notice to Tenant
(accompanied by the written consent of Mortgagee to such
rejection) given not later than the tenth day prior to the
Termination Date, or (B) the Termination Date shall occur
during an Extended Term, then the Net Proceeds for such
casualty shall belong to Landlord and this Lease shall
terminate on the Termination Date upon the payment by Tenant
of all installments of Basic Rent, all Additional Rent and all
other sums then due and payable under this Lease to and
including the Termination Date.  Unless Landlord shall have
rejected such offer to purchase the Leased Premises by notice
to Tenant (accompanied by Mortgagee's written consent) given
not later than the tenth day prior to the Termination Date, or
if Landlord shall make such rejection without the written
consent of Mortgagee, then Landlord shall be conclusively
presumed to have accepted such offer to purchase, and Landlord
shall (1) transfer and convey the Leased Premises, or
remaining portion thereof, if any, to Tenant or its designee
upon the terms and provisions set forth in paragraph 18, and
(2) assign to Tenant or its designee all of Landlord's right,
title and interest in and to the Net Proceeds for such
casualty, against payment by Tenant of the purchase price
therefor (including any assumption of the Note pursuant to
paragraph 18(c)), together with all installments of Basic

- 22 -

Rent, all Additional Rent and all other sums then due and payable under this Lease to and including the Termination Date.  In the event of the termination of this Lease pursuant to this paragraph 14(g), and if Tenant or its designee shall have purchased the Leased Premises pursuant to this paragraph, Tenant or its designee shall be entitled to the Net Proceeds for such casualty.

If Tenant elects to substitute a Substitute Property for the Leased Premises in accordance with the provisions of paragraph 17, Tenant or its designee shall be entitled to the Net Proceeds for such casualty upon completion of such substitution pursuant to paragraph 17, provided no Event of Default has then occurred or is continuing hereunder.

15.   _Restoration_.  In the event of any casualty referred to in paragraph 14(f) or Taking referred to in paragraph 13(c), Tenant shall be entitled to receive the Net Proceeds payable in connection with such casualty and the Net Award payable in connection with such Taking, but only on the basis of certificates of Tenant, signed by the President or any Vice President of Tenant, delivered to Mortgagee from time to time as such rebuilding, restoration and repair progresses or is completed.  Each such certificate shall describe the work for which Tenant is requesting payment, the cost incurred by Tenant in connection therewith, and shall state that such work has been performed in conformity with the requirements of paragraphs 11 and 12, the estimated cost of completing such work, and that Tenant has not theretofore received payment for such work.  Upon completion of the work described in this paragraph 15, if any Net Proceeds or Net Award remaining after the final payment has been made for such work is less than $100,000, such remaining Net Proceeds or Net Award shall be paid to Tenant.  If such remaining Net Proceeds or Net Award is $100,000, or greater than $100,000, such remaining Net Proceeds or Net Award shall, at Landlord's option, be retained by Landlord; if retained by Landlord then (i) Cost as set forth in Exhibit "F" hereto shall be reduced by the amount of such remaining Net Proceeds or Net Award so retained by Landlord, and (ii) each installment of Basic Rent, payable thereafter during the Initial Term commencing with the second Basic Rent Payment Date subsequent to the final payment to Tenant for such work, shall be reduced by 2.499325% of such remaining Net Proceeds or Net Award retained by Landlord.  If not retained by Landlord, such remaining Net Proceeds or Net Award shall be paid to Tenant.  If the cost of any such work required to be done by Tenant pursuant to this paragraph shall exceed the amount of such Net Proceeds or Net Award, the deficiency shall be paid by Tenant.  No payments shall be made to Tenant pursuant to this paragraph 15 if any default exists under this Lease unless and until such default shall have been cured or removed.