## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | CASE NO. 3-05-bk-03817-JAF |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | CHAPTER 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 328 AND 1103(a)
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014
AUTHORIZING THE *NUNC PRO TUNC* EMPLOYMENT AND RETENTION
OF JEFFERIES & COMPANY, INC. AS FINANCIAL ADVISOR
TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

The official committee of equity security holders (the "Equity Committee")

appointed in the above-captioned bankruptcy cases of Winn-Dixie Stores, Inc. and its affiliated

debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), hereby applies (the

"Application") to the Court for entry of an order authorizing it to employ and retain Jefferies &

Company, Inc. ("Jefferies") as its financial advisor in these cases.  In support hereof, the Equity

Committee relies on the affidavit of William Q. Derrough (the "Derrough Affidavit"), sworn to

on September 23, 2005, and respectfully represents as follows:

### SUMMARY OF RELIEF REQUESTED

1.      By this Application, the Equity Committee requests that this Court enter

an order pursuant to 11 U.S.C. §§ 328 and 1103(a) and Rule 2014 of the Federal Rules of

Bankruptcy Procedure authorizing the Equity Committee's *nunc pro tunc* employment and

retention of Jefferies as its financial advisor in these chapter 11 proceedings effective as of

September 1, 2005, pursuant to the terms and conditions set forth in the letter agreement

(together with all related attachments, the "Letter Agreement"), dated September 15, 2005, by

and between the Equity Committee and Jefferies.  A true and correct copy of the Letter

Agreement is attached hereto as Exhibit A, and is incorporated herein by reference.

## JURISDICTION

2.      This Court has jurisdiction to consider this Application pursuant to 28

U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On February 21, 2005 (the "Petition Date"), each of the Debtors filed a

voluntary petition for relief under chapter 11, title 11, of the United States Code, 11 U.S.C. §§

101, et seq. (the "Bankruptcy Code").  Each Debtor is continuing to operate its business and

manage its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the

Bankruptcy Code.

4.      The Debtors are grocery and pharmaceutical retailers operating in the

southeastern United States, primarily under the names "Winn-Dixie" and "Winn-Dixie

Marketplace."  According to published reports, the Debtors are the eighth largest food retailer in

the United States and one of the largest in the Southeast.  The Debtors' business was founded in

1925 with a single store and has grown, through acquisitions and internal expansions, to

encompass over 1,000 stores.

5.      On August 17, 2005, pursuant to Section 1102 of the Bankruptcy Code,

the United States Trustee appointed the Equity Committee and designated the following five

members to serve: (a) Brandes Investment Partners, L.P., (b) Houston N. Maddox, (c) Poul

Madsen, (d) Michael Nakonechny, and (e) Kenneth M. Thomas.  Subsequent to such

appointment, the Equity Committee duly selected Jefferies as financial advisor to represent it during these chapter 11 cases.

6.      The Equity Committee's primary duty is to assure adequate representation of equity security holders in these chapter 11 cases.  Pursuant to Section 1102 of the Bankruptcy Code, the Equity Committee may:

A.      consult with the trustee or debtor-in-possession concerning the administration of the case;

B.      investigate the acts, conduct, assets, liabilities and financial condition of the Debtors, the operations of the Debtors and the desirability of the continuance of such business and any other matter relevant to the case or to the formulation of a plan;

C.      participate in the formulation of a plan, advise those represented by such committee of the committee's determination as to any plan formulated, and collect and file with the court acceptances or rejections of a plan; and

D.      perform such other services as are in the interest of those represented.

7.      In sum, the Equity Committee has the power to engage in any of the above-listed acts in furtherance of representing the equity security holders in these chapter 11 cases.

## RETENTION OF JEFFERIES & COMPANY, INC.

8.      The Equity Committee requests that the Court approve the employment of Jefferies in accordance with the terms and conditions set forth in this Application, the Letter Agreement, and the Derrough Affidavit.

9.      The Equity Committee respectfully submits that the services of a financial advisor are necessary and appropriate to enable it to evaluate the complex financial and economic issues raised by the Debtors' reorganization proceedings and to effectively fulfill its statutory duties, and that Jefferies is best suited to provide such expert advice and guidance.  The

Equity Committee seeks to retain Jefferies as financial advisor pursuant to Bankruptcy Code sections 328 and 1103(a) to perform the following services (collectively, the "Financial Services"):

A.   become familiar, to the extent Jefferies deems appropriate, with and analyze the business, operations, assets, financial condition and prospects of the Debtors;

B.   advise the Equity Committee on the current state of the "restructuring market";

C.   assist and advise the Equity Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, a sale of assets or equity under Section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "Restructuring"), including, where appropriate, assisting the Equity Committee in developing its own strategy for accomplishing a Restructuring;

D.   assist and advise the Equity Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization; and

E.   render such other financial advisory services as may from time to time be agreed upon by the Equity Committee and Jefferies, including but not limited to providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation.  It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

10.    The services described in the above nonexclusive listing are essential to the Equity Committee's successful representation in these cases.  The Equity Committee may, from time to time, request that Jefferies undertake specific matters beyond the scope of its agreed-upon duties as financial advisor.  Should Jefferies agree in its discretion to undertake any such specific matters, the Equity Committee seeks authority herein to employ Jefferies for such matters, in addition to those set forth above without further order of this Court.

11.    Jefferies' proposed representation of the Equity Committee does not extend to the representation of any equity security holder on an individual basis or to the representation of any Equity Committee member on an individual basis.

12.    Jefferies was one of several firms interviewed by the Equity Committee. Jefferies' selection was based on the established experience in representing secured and unsecured creditors, equity constituencies, acquirers and other parties in interest in contentious and consensual chapter 11 cases, workouts and restructurings, and other matters relating to financially distressed companies.

13.    Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 proceedings. The employees of Jefferies have advised debtors, creditors, equity constituencies, and purchasers in many reorganizations. Since 1990, these professionals have been involved in over 100 restructurings representing over $75 billion in restructured debt. Jefferies has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors, creditors and creditors' committees throughout the United States in cases such as: In re Adelphia Business Solutions, Inc., In re AmeriServe Food Distribution, Inc., In re Ames Department Stores, Inc., In re Cybercash, Inc., In re Diamond Brands Operating Corp., In re Federal Mogul Corporation, In re Heartland Wireless Communications, In re ICO Global Communications Services Inc., et. al., In re International Wireless Communications, Inc., et. al., In re Kaiser Group International, Inc., In re Loral Space & Communications Ltd., In re MobilMedia Communications, In re Net2000 Communications, Inc., In re Silver Cinemas, Inc., In re Sunterra Corporation, et al, and In re VF Brands International.

14.     To the best of the Equity Committees' knowledge, Jefferies is qualified to serve as financial advisor to the Equity Committee pursuant to sections 328 and 1103(a) of the Bankruptcy Code.

15.     Accordingly, the Equity Committee believes that Jefferies is both well qualified and uniquely able to represent the Equity Committee in these chapter 11 cases in an efficient and timely manner, and such representation will be in the best interests of the equity security holders, these estates, their creditors and other parties in interest.

## NO ADVERSE INTEREST

16.     To check and clear potential conflicts of interest in these cases, Jefferies has researched its client database to determine whether Jefferies had any connection with, among others, the following entities:

A.     The Debtors and their affiliates;

B.     The Debtors' officers, directors and principal shareholders;

C.     The Debtors' secured lenders;

D.     The Debtors' largest unsecured creditors as identified by the Debtors in their voluntary petitions filed on February 21, 2005 and any other parties in interest Jefferies could readily identify as clients of the firm;

E.     The Debtors' professionals; and

F.     The Official Committee of Equity Holders.

17.     As a result of such search, Jefferies has determined that, from time to time, it has provided investment banking, financial advisory and/or consulting services to certain creditors and other parties in interest in these cases in matters unrelated to these cases. A list of parties identified as a result of the above search is attached to the Derrough Affidavit as Schedule 1. Jefferies has informed the Equity Committee that during its retention by the Equity Committee in these cases it will not provide services to any other party, including, without

limitation, those listed in the Derrough Affidavit, in connection with any matters relating to these cases. However, given its diverse practice and client base, Jefferies may provide services to clients in matters unrelated to these chapter 11 cases, who are or become creditors of the Debtors or who may have interests adverse to such entities in unrelated matters.

18.     Further, Jefferies is a global investment banking firm with broad activities covering trading in equities, convertible securities and corporate bonds in addition to its investment banking and financial advisory practice. With more than 80,000 customer accounts around the world, it is possible that one of its clients or a counter-party to a security transaction may hold a claim against or equity interest in the Debtors, or otherwise be a party-in-interest in these chapter 11 cases. Furthermore, as a major market maker in equity securities as well as a major trader of corporate bonds and convertible securities, Jefferies regularly enters into securities transactions with other registered broker-dealers as a part of its daily activities. Some of these counter-parties may be creditors of the Debtors, and some of these trades may result in Jefferies holding a non-material equity position in the Debtors overnight. Jefferies believes none of these business relationships constitute interests materially adverse to the Equity Committee herein in matters upon which Jefferies is to be employed, and none are in connection with these cases.

19.     In addition, Jefferies Group, Inc. (the parent of Jefferies) and its subsidiaries, and affiliates (collectively, the "Jefferies Group") are involved in a wide range of investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research). Jefferies has in place internal procedures created to prevent the transfer of material non-public information between its investment banking department and its research and trading departments. Neither Jefferies nor any other part of the

Jefferies Group will disclose to any other party or utilize for any other party's benefit any non-public information acquired in the course of the engagement contemplated hereby. Finally, from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may relate directly or indirectly to these cases. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

## COMPENSATION AND REIMBURSEMENT

20.     As set forth in the Letter Agreement, Jefferies will be compensated, subject to Court approval, in the following manner:

(a)     The Debtors shall pay to Jefferies a monthly fee (the "Monthly Fee") equal to $125,000.00 per month until Jefferies has been paid $375,000 in such Monthly Fees, and $100,000.00 per month thereafter. If the Letter Agreement becomes effective on a day other than the first day of the month, Jefferies will be paid a Monthly Fee pro rated from the Effective Date of the Letter Agreement to the end of the first month. Each Monthly Fee will be fully accrued, due and payable in advance on the first day of each month.

(b)     In addition, in consideration of the services rendered by Jefferies hereunder, the Debtors will pay or cause to be paid to Jefferies (contingent on a minimum recovery to Equity (as defined below) of $50,000,000.00) a success fee in an amount equal to (i) 1.00% of any recoveries by the holders of the Debtors' equity securities (the "Equity") in an aggregate amount up to and including $150,000,000.00; (ii) 1.25% of any recoveries by Equity in any aggregate amount between $150,000,00.01 up to and including $300,000,000.00; and (iii) 1.50% of any recoveries by Equity in an aggregate amount in excess of $300,000,000.00 (the "Success Fee"). For the purposes of this subsection (b), "recoveries" includes but is not limited to the fair market value of any cash, cash equivalents, securities, trust, sale or litigation interests, or other consideration, whether immediately realized or not. A credit equal to 50% of all Monthly Fees paid to Jefferies in excess of $375,000 will be applicable against the Success Fee (if any). Fees payable pursuant to this subsection (b) are fully earned and accrued upon approval of this Agreement by the Bankruptcy Court, and are due and payable simultaneously with receipt of recoveries (or interests therein) by Equity.

(c)     In addition to any fees that may be paid to Jefferies hereunder, whether or not any Restructuring occurs, the Debtors shall reimburse Jefferies for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

21.     As set forth more fully in the Letter Agreement, the Debtors and their estates are obligated to indemnify and hold harmless Jefferies and certain other "Indemnified Parties" (as defined in the Letter Agreement) for any and all claims, damages, liabilities and expenses to which such parties may have been subject to as a result of their involvement with this engagement, except to the extent that such claims, damages, liabilities and expenses resulted, in whole or in part, from gross negligence or willful misconduct.

22.     It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys.  For Jefferies to recreate the time entries for its restructuring personnel and require its non-restructuring personnel to record their time as prescribed by the  Guidelines for Reviewing Applications for Compensation& Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "UST Guidelines") would be, in each case, unduly burdensome and time-consuming.  As a result of this practice (which Jefferies believes is common within the investment banking industry), and because the fees which Jefferies will be entitled to hereunder (following approval by this Court) are not based on hours worked or tasks accomplished, the terms and conditions of the retention proposed hereby contemplate that Jefferies will seek approval by this Court of its fees and expenses in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and rules and orders of this Court, but that such fee requests will not include detailed time records or narrative descriptions of work done in the relevant time period.

23.    Finally, as set forth in the Letter Agreement, and as a critical component of such retention, the Letter Agreement contemplates that any fees which Jefferies applies for will be subject to review under the standard for compensation under Section 328 of the Bankruptcy Code, not Section 330.

24.    In light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the Equity Committee believes that the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.

## NUNC PRO TUNC RETENTION

25.    The Equity Committee officially voted to retain Jefferies on September 1, 2005. At the request of the Equity Committee, Jefferies has rendered services from such date to the date hereof. The Equity Committee has requested that Jefferies continue to render such services and other financial advisory services pending approval of the Application by the Court. Accordingly, the Equity Committee requests that the retention of Jefferies be authorized effective as of September 1, 2005.

## NOTICE

26.    Notice of this Application has been provided to (i) counsel for the Debtors, (ii) counsel to the Official Committee of Unsecured Creditors, (iii) counsel to the United States Trustee, (iv) counsel for the Debtors' postpetition secured lenders, and (v) the other parties in interest named on the Master Service List maintained in these cases. In light of

the nature of the relief requested, the Equity Committee submits that no further notice need be given.

## NO PRIOR MOTION

27.    No previous motion for the relief sought herein has been made to this or to any other court.

WHEREFORE, the Equity Committee requests entry of the attached order granting the relief requested herein and such other and further relief as is just.

[signature on next page]

-11-

Dated: September 30, 2005.

PAUL, HASTINGS, JANOFSKY & WALKER LLP
Karol K. Denniston
Ga. Bar No. 218333
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400
karolkdenniston@paulhastings.com

and

PAUL, HASTINGS, JANOFSKY & WALKER LLP
James D. Wareham
875 15th Street
Washington, DC  20005
Telephone: (202) 551-17000
jameswareham@paulhastings.com

and

JENNIS & BOWEN, P.L.

/s/ David Jennis_____
David Jennis
Fla. Bar No. 775940
400 North Ashley Drive
Suite 2540
Tampa, FL 33602
Telephone: (813) 229-1700
djennis@jennisbowen.com

***Proposed Co-Counsel for the Official Committee of
Equity Holders***

# EXHIBIT A

Strictly Confidential

**Engagement Letter**

September 15, 2005

**Official Committee of Equity Security Holders**
**of Winn-Dixie Stores, Inc. et al**
1017 Topsail Drive
Vallejo, CA 94591

Attention: Kenneth M. Thomas, Chairman

Re: Advisory Services

This agreement (the "Agreement") will confirm the arrangements under which Jefferies & Company, Inc. ("Jefferies") has been engaged by the Official Committee of Equity Security Holders (the "Committee"), appointed in the bankruptcy cases (the "Cases") of Winn-Dixie Stores, Inc., and its debtor affiliates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the Middle District of Florida, to act as exclusive financial advisor to the Committee in the Cases.

1.    Services.  In connection with the Cases, Jefferies will perform the following financial advisory services, among others, for the Committee: (a) become familiar, to the extent Jefferies deems appropriate, with and analyze the business, operations, assets, financial condition and prospects of the Debtors; (b) advise the Committee on the current state of the "restructuring market"; (c) assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, a sale of assets or equity under Section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "Restructuring"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring; (d) assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization; and (e) render such other financial advisory services as may from time to time be agreed upon by the Committee and Jefferies, including but not limited to providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation.  It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2.    Cooperation.

        (a)    The Committee will furnish or cause the Debtors to furnish Jefferies with all materials and information regarding the business and financial condition of the Debtors which the Committee and/or the Debtors believe are relevant to any Restructuring or which Jefferies requests (all such information gathered or furnished being the "Information").  The Committee and the Debtors shall advise Jefferies promptly of the occurrence of any event or any other change in fact or circumstance prior

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 2

to the closing of any Restructuring upon which Jefferies formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

(b)    Jefferies (i) will be relying on the Information and on information available from generally recognized public sources, without having independently verified the accuracy or completeness of the same, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) will not make an appraisal of any assets or liabilities of the Debtors, and (iv) retains the right to perform due diligence during the course of this engagement.

3.    Use of Advice, etc.

(a)    Jefferies' advice is solely for the use and information of the Committee, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person including, but not limited to, any member of the Committee in its individual capacity, any other security holder, or employee or creditor of the Debtors and may not be used or relied upon for any other purpose.

(b)    The Committee and the Debtors agree that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its sole discretion and which approval, if given, will expire immediately upon the termination of Jefferies' service hereunder. No statements made or advice rendered by Jefferies in connection with the services performed by Jefferies pursuant to this Agreement will be quoted by, nor will any such statements or advice be referred to in, any communication, whether written or oral, prepared, issued or transmitted, directly or indirectly, by the Committee or the Debtors without the prior written authorization of Jefferies, which may be given or withheld in its sole discretion, except to the extent required by law (in which case the appropriate party shall so advise Jefferies in writing prior to such use and shall consult with Jefferies with respect to the form and timing of disclosure).

(c)    The Committee acknowledges that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Committee is solely contractual in nature and that Jefferies does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise.    Jefferies and the Indemnified Persons shall not be deemed agents or fiduciaries of the Committee, any of its members, or the Debtors, and will not have the authority to legally bind any of the foregoing.

4.    Compensation. The Debtors agree to pay Jefferies the following:

(a)    The Debtors shall pay to Jefferies a monthly fee (the "Monthly Fee") equal to $125,000.00 per month until Jefferies has been paid $375,000 in such Monthly

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 3

Fees, and $100,000.00 per month thereafter.  If this Agreement becomes effective on a day other than the first day of the month, Jefferies will be paid a Monthly Fee pro rated from the Effective Date (as defined below) of this Agreement to the end of the first month.  Each Monthly Fee will be fully accrued, due and payable in advance on the first day of each month.

(b)     In addition, in consideration of the services rendered by Jefferies hereunder, the Debtors will pay or cause to be paid to Jefferies (contingent on a minimum recovery to Equity (as defined below) of $50,000,000.00) a success fee in an amount equal to (i) 1.00% of any recoveries by the holders of the Debtors' equity securities (the "Equity") in an aggregate amount up to and including $150,000,000.00; (ii) 1.25% of any recoveries by Equity in any aggregate amount between $150,000,00.01 up to and including $300,000,000.00; and (iii) 1.50% of any recoveries by Equity in an aggregate amount in excess of $300,000,000.00 (the "Success Fee").  For the purposes of this Section 4(b), "recoveries" includes but is not limited to the fair market value of any cash, cash equivalents, securities, trust, sale or litigation interests, or other consideration, whether immediately realized or not.  A credit equal to 50% of all Monthly Fees paid to Jefferies in excess of $375,000 will be applicable against the Success Fee (if any).  Fees payable pursuant to this Section 4(b) are fully earned and accrued upon approval of this Agreement by the Bankruptcy Court in accordance with Paragraph 8 below, and are due and payable simultaneously with receipt of recoveries (or interests therein) by Equity.

(c)     The Debtors and the Committee acknowledge that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.

5.     Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Restructuring occurs, the Debtors shall reimburse Jefferies for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

6.     Termination.  Jefferies' engagement hereunder will run from the effective date of this Agreement as approved by a final order of the Bankruptcy Court that is acceptable to Jefferies in its sole and absolute discretion (the "Effective Date") to the earlier of the date on which (A) each of these Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and has become effective, or (B) Jefferies' services hereunder are terminated by written notice by either Jefferies or the Committee on fifteen days' notice to the other.  Upon any termination of this Agreement, the Debtors shall pay

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 4

Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. Upon termination of this Agreement for any reason, Schedule A to this Agreement, including the indemnity and contribution provisions therein, and the provisions of Sections 3-7, 10, and 13-16 of this Agreement shall remain operative and in full force and effect, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Debtors, the Committee, Jefferies, and the Indemnified Persons, and any chapter 7 Trustee appointed in the Cases.

7.      Indemnification, etc. As further consideration under this Agreement, the Debtors shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A. The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.

8.      Bankruptcy Court Approval. The Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 327 and 1103 of the Bankruptcy Code, from the bankruptcy court or district court having jurisdiction and presiding over the Cases (the "Bankruptcy Court"). Such approval shall provide for retention of Jefferies *nunc pro tunc* to August 25, 2005, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the Debtors' acknowledgements and obligations set forth in Sections 2-8, 12-16, and Schedule A), shall bind the Debtors to such terms and conditions as if the Debtors were a signatory hereto, and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the Committee's obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless a final order, no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which is acceptable to Jefferies in its sole and absolute discretion, is entered by the Bankruptcy Court.

Notwithstanding the Debtors' obligations hereunder to pay the fees and expenses of Jefferies, to indemnify Jefferies and to provide Jefferies with information, it is understood and agreed that Jefferies' sole and exclusive client is the Committee and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9.      Exclusivity. The Committee agrees that it will not engage any other person to perform any financial or similar consulting services with respect to any potential Restructuring. If the Committee is contacted by any person concerning a potential Restructuring, the Committee will inform Jefferies of such inquiry, and all relevant details thereof.

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 5

10.    <u>No Assurances; Other Transactions; Disclaimer.</u>

(a)    This Agreement does not constitute a commitment or obligation by Jefferies or any of its affiliates to provide any financing which may be required or advisable in connection with any Restructuring, and the Debtors are not obligated by the terms hereof to seek such financing from Jefferies or any of its affiliates.  By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors will be able to implement or consummate any Restructuring or achieve any other result.

(b)    Jefferies Group, Inc. (the parent of Jefferies) and its subsidiaries, and affiliates (collectively, the "<u>Jefferies Group</u>") are involved in a wide range of investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research) from which conflicting interests, or duties, may arise.  Information that is held elsewhere within Jefferies or within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement.  Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Committee or any other party or utilize for the Committee's benefit any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business.  In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Debtors and members of the Committee, and of potential participants in any Restructuring for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities.  Further, the Committee acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Restructuring or otherwise.  Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

11.    <u>Construction and Governing Law.</u>  This Agreement, together with Schedule A attached hereto and made part hereof, incorporates the entire understanding of the parties and supersedes all previous agreements relating to the subject matter hereof should they exist.  This Agreement and any issue arising out of or relating to the parties' relationship hereunder shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

12.    <u>Arbitration.</u>  Any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity hereof, any alleged breach of this Agreement or the engagement contemplated hereby (any of the foregoing, a "<u>Claim</u>")

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 6

shall be brought in the Bankruptcy Court. If the Bankruptcy Court declines jurisdiction over any such matter, the parties agree that any Claim shall be submitted to JAMS/ENDISPUTE, or its successor, in New York, New York, for mediation; and if the matter is not resolved through mediation, then it shall be submitted for final and binding arbitration in front of a panel of three arbitrators with JAMS/ENDISPUTE in New York, New York under the JAMS/ENDISPUTE Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the plaintiff choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Debtors and the Committee agree and consent to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

13.    Payments. All payments to be made to Jefferies hereunder shall be the joint and several liability of each of the Debtors in these Cases, and, unless otherwise agreed by Jefferies in its sole and absolute discretion, shall be made in cash by wire transfer of immediately available U.S. funds without deduction for any tax, provided, that the Committee may opt to pay Jefferies the Success Fee in kind; provided, that Jefferies agrees that it will accept the Success Fee paid in kind (i.e., with the same securities as received by members of the Committee in connection with the Restructuring) at the suggestion of the Committee, subject to the approval of the Bankruptcy Court. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. Subject to Bankruptcy Court approval, the Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

14.    Announcements. The Committee and the Debtors agree that Jefferies may, following any Restructuring, place an announcement in such newspapers, electronic media and periodicals as it may choose, stating Jefferies' role and other material terms of the Restructuring. Jefferies shall be entitled to identify the Committee and use the Debtors' name and logo, if any, in connection therewith. The Committee and the Debtors agree that any press release it may issue announcing the Restructuring will, at Jefferies' request, contain a reference to Jefferies' role in the Restructuring.

15.    Miscellaneous. This Agreement incorporates the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. If any provision hereof shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect nor any other provision hereof. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in one or more facsimile counterparts,

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 7

each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.

16.    Patriot Act.    Jefferies hereby notifies the Debtors, the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Act (the "Patriot Act"), Jefferies may be required to obtain, verify and record information that identifies the Debtors, the Committee and the members of the Committee in a manner that satisfies the requirements of the Patriot Act.  This notice is given in accordance with the requirements of the Patriot Act.

Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al
September 14, 2005
Page 8

Please sign and return an original and one copy of this letter to the undersigned to
indicate your acceptance of the terms set forth herein.

Sincerely,

JEFFERIES & COMPANY, INC.

By _____
    Name:  William Q. Derrough
    Title:   Managing Director

Accepted and Agreed:

OFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS OF WINN-DIXIE STORES, INC. ET AL

By _____
   Name:  Kenneth M. Thomas
   Title:   Chairman

## SCHEDULE A

Reference is hereby made to the engagement letter attached hereto (as amended from time to time in accordance with the terms thereof, the "Agreement") between Jefferies & Company, Inc. ("Jefferies") and the Official Committee of Equity Security Holders (the "Committee") appointed in the bankruptcy cases (the "Cases") of Winn-Dixie Stores, Inc., and its debtor affiliates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the Middle District of Florida.  Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates and any chapter 7 trustee appointed in the Debtors' bankruptcy Cases.

As further consideration under the Agreement, the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, counsel, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against, and the Debtors agree that no Indemnified Persons shall have any liability to the Debtors or any of its owners, parents, affiliates, securityholders or creditors for, any claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred ("Losses"), related to or arising out of or in connection with Jefferies' services under the Agreement, a Restructuring or any proposed transaction contemplated by the Agreement, or any Indemnified Person's role in connection therewith, provided, however, that the Debtors shall not be responsible for any Losses of any Indemnified Person that are determined, by a final, non-appealable judgment by a court, or arbitral tribunal, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct.

Neither the Debtors not the Committee shall settle or compromise, or consent to the entry of any judgment in, or otherwise seek to terminate any pending or threatened action, claim, suit or proceeding in which any Indemnified Person is or may be a party unless such Indemnified Person has given its prior written consent, or the settlement, compromise, consent or termination includes an express unconditional release of such Indemnified Person from all Losses arising out of such action, claim, suit or proceeding.

If for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is unavailable to an Indemnified Person or insufficient to hold an Indemnified Person harmless, then the Debtors, to the fullest extent permitted by law, shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses in such proportion as is appropriate to reflect the relative fault of the Debtors and the Committee, as applicable, on the one hand, and the relative fault of Jefferies on the other, as well as any relevant equitable considerations.  Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement.  Relative benefits to the Debtors and the Committee, as applicable, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as the total transaction value of any Restructuring (or the total transaction value of any proposed Restructuring) to all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel) as they are incurred in connection with investigating, preparing, defending or settling any action or claim for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party.  If any of Jefferies' personnel appear as witnesses, are deposed or are otherwise involved in the defense of any action against Jefferies, the Committee, the Debtors or the Debtors' affiliates, officers, managers, directors or employees, the Debtors will pay Jefferies (i) with respect to each day or part thereof that one of Jefferies' professional personnel appears as a witness or is deposed and/or (ii) with respect to each day or part thereof that one of Jefferies' professional personnel is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such action, including but not limited to $400 per hour per person with respect to each hour of time spent responding to or relating to any other or further discovery requests.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or Jefferies' services thereunder, (iii) shall apply to any modification of

**SCHEDULE A**

Jefferies' engagement, and shall remain in full force and effect following the completion or termination of the Agreement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors, including any chapter 7 trustee appointed in the Debtors' Cases, the Committee and each of its members, and to any successors or assigns to the Debtors' business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.