UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | CASE NO. 3-05-bk-03817-JAF |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | CHAPTER 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

### AFFIDAVIT OF WILLIAM Q. DERROUGH

I, William Q. Derrough, being duly sworn, hereby deposes and says:

1. I am a managing director of Jefferies & Company, Inc. ("Jefferies"), an investment banking firm with its principal office located at 520 Madison Avenue, New York, New York 10022, and other offices located throughout the world. I am duly authorized to make this affidavit (the "Affidavit") on behalf of Jefferies and submit this Affidavit in accordance with section 329 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a), 2016(b) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and in connection with the application (the "Application") of the official committee of equity security holders (the "Equity Committee") in the bankruptcy cases of the above-captioned debtors and debtors-in-possession (the "Debtors") for an order pursuant to sections 328 and 1103(a) of the Bankruptcy Code authorizing them to retain and employ Jefferies as financial advisors.

2. Jefferies' retention in these cases will be pursuant to that certain letter agreement (together with all related attachments, the "Letter Agreement"), dated September 15, 2005, by and between the Equity Committee and Jefferies, a true and correct copy of which is attached to the Application as an exhibit, and which will be approved in connection therewith. Jefferies' retention in these cases is contingent upon the entry of an order acceptable to Jefferies

in its sole discretion, and the approval of each and every term and condition set forth in the Letter Agreement.

3. Unless otherwise stated in this Affidavit, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto. Capitalized terms and phrases not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

4. I believe that Jefferies and the professionals it employs are uniquely qualified to advise the Equity Committee in the matters for which Jefferies is proposed to be employed.

5. In its capacity as the Equity Committee's financial advisor and as outlined in the Letter Agreement, Jefferies is prepared to perform certain postpetition services, including, without limitation, the following:

    A. become familiar, to the extent Jefferies deems appropriate, with and analyze the business, operations, assets, financial condition and prospects of the Debtors;

    B. advise the Equity Committee on the current state of the "restructuring market";

    C. assist and advise the Equity Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, a sale of assets or equity under Section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "Restructuring"), including, where appropriate, assisting the Equity Committee in developing its own strategy for accomplishing a Restructuring;

    D. assist and advise the Equity Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization; and

   E. render such other financial advisory services as may from time to time be agreed upon by the Equity Committee and Jefferies, including but not limited to providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation. It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

  6. In connection with its retention by the Equity Committee, Jefferies researched its client database to determine whether it had any relationships with the following entities (the "Potential Parties in Interest"):

   A. The Debtors and their affiliates;

   B. The Debtors' officers, directors and its principal shareholders;

   C. The Debtors' secured lenders;

   D. The Debtors' largest unsecured creditors as identified by the Debtors' in their voluntary petitions, filed on February 21, 2005 and any other parties in interest Jefferies could readily identify as clients of the firm;

   E. The Debtors' professionals; and

   F. The Official Committee of Equity Holders.

As part of this inquiry, Jefferies entered the names of Potential Parties in Interest into a computer database containing the names of all clients and conflict information concerning the clients of Jefferies. This inquiry revealed that certain of the Potential Parties in Interest had former or current connections to Jefferies, including some that were current or former clients of Jefferies (the list of such parties is referred to herein as the "Match List"). Through the information generated from the above-mentioned computer inquiry, and through follow-up inquiries with Jefferies professionals responsible for certain clients listed on the Match List, Jefferies determined that the representation of the parties on the Match List concerned matters unrelated to the Debtors.

7. In particular, to the best of my knowledge, information and belief, Jefferies has past or on-going relationships with certain parties, including as adverse parties in litigation or as part of current or former representations. Specifically, Jefferies has a former or current relationship with the entities identified on the schedule annexed hereto as Schedule 1 on matters unrelated to these cases.

8. In addition, as part of its diverse global activities, Jefferies is involved in numerous cases, proceedings and transactions involving many different professionals, including attorneys, accountants and financial consultants, some of which may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. Further, Jefferies has in the past, and may in the future, be represented by several attorneys and law firms in the legal community, some of whom may be involved in these cases. In addition, Jefferies has in the past, and may in the future, be working with or against other professionals involved in these cases in matters wholly unrelated to these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relationships constitute interests materially adverse to the Equity Committee herein in matters upon which Jefferies is to be employed, and none are in connection with these cases.

9. Further, Jefferies is a global investment banking firm with broad activities covering trading in equities, convertible securities and corporate bonds in addition to its investment banking and financial advisory practice. With more than 80,000 customer accounts around the world, it is possible that one of its clients or a counter-party to a security transaction may hold a claim against or equity interest in the Debtors, or otherwise be a party-in-interest in these chapter 11 cases. Furthermore, as a major market maker in equity securities as well as a major trader of corporate bonds and convertible securities, Jefferies regularly enters into

securities transactions with other registered broker-dealers as a part of its daily activities. Some of these counter-parties may be creditors of the Debtors, and some of these trades may result in Jefferies holding a non-material equity position in the Debtors for a short period. Jefferies believes that none of these business relationships constitute interests materially adverse to the Equity Committee in matters upon which Jefferies is to be employed, and none are in connection with these cases.

10. In addition, Jefferies Group, Inc. (the parent of Jefferies) and its subsidiaries, and affiliates (collectively, the "Jefferies Group") are involved in a wide range of investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research). Jefferies has in place internal procedures created to prevent the transfer of material non-public information between its investment banking department and its research and trading departments. Neither Jefferies nor any other part of the Jefferies Group will disclose to any other party or utilize for any other party's benefit any non-public information acquired in the course of the engagement contemplated hereby. Finally, from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may relate directly or indirectly to these cases. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

11. The Debtors have numerous creditors and relationships with various individuals and entities that may be parties in interest in these cases. Consequently, although every reasonable effort has been made to discover and eliminate the possibility of any conflict, including the efforts outlined above, Jefferies is unable to state with certainty whether one of its clients or an affiliated entity holds a claim or otherwise is a party in interest in these chapter 11

cases. If Jefferies discovers any information that is contrary to or pertinent to the statements made herein, Jefferies will disclose such information to the Court on notice to creditors and the United States Trustee promptly. Jefferies does not advise, has not advised, and will not advise any entity, other than the Equity Committee, in matters related to these chapter 11 cases.

12. As to the remainder of the individuals and entities set forth in paragraph 6 above and not listed on the Match List, to the best of my knowledge Jefferies has not been employed by or rendered advisory services to any of them within the past five years.

13. Except as described below, neither Jefferies nor to the best of my knowledge, any employee of Jefferies is or was a creditor or equity holder of the Debtors.

14. Neither Jefferies, nor to the best of my knowledge, any employee of Jefferies is or was an investment banker for any outstanding security of the Debtors.

15. Neither Jefferies, nor to the best of my knowledge, any employee of Jefferies is or was, within three years before the commencement of these cases, an investment banker for the Debtors, in connection with the offer, sale or issuance of a security of the Debtors.

16. Neither Jefferies, nor to the best of my knowledge, any employee of Jefferies is or was within two years before the commencement of these cases, a director, officer or employee of the Debtors. Except as may be otherwise set forth herein, to the best of my knowledge, Jefferies, its principals and professionals (i) do not have any connection with the Debtors or their affiliates, their creditors, or any other party in interests, (ii) are "disinterested persons" under section 101(14) of the Bankruptcy Code, as modified by section 1107(b), and (iii) do not hold or represent any interest adverse to the Debtors' estates. Jefferies does not and has not represented any entity, other than the Equity Committee, in matters related to these chapter 11 cases. The proposed employment of Jefferies is not prohibited or improper under Bankruptcy

Rule 5002. Accordingly, I believe that Jefferies is eligible for retention by the Equity Committee under the Bankruptcy Code.

17. The fee structure set forth in the Letter Agreement and the Application (the "Fee Structure") is consistent with Jefferies' typical fee for work of this nature. The fees are set at a level designed to compensate Jefferies fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. It is Jefferies' policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

18. The Fee Structure includes a Success Fee (as defined in the Letter Agreement), which provides for a fee for Jefferies equal to a percentage of the recovery for Equity (as defined in the Letter Agreement) in these cases (contingent on a minimum recovery of at least $50 million). This Success Fee will be deemed fully earned and accrued upon approval of the Application.

19. The Letter agreement also includes significant indemnity obligations for the Debtors (the "Indemnity"). The Indemnity is a reasonable term and condition of the Jefferies engagement. Unlike the market for other professionals that a debtor or committee may retain, indemnification is a standard term of the market for investment bankers and financial advisors. In fact, the Indemnity is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court.

20. Finally, the Letter Agreement includes the following language regarding the resolution of disputes:

> Any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity hereof, any alleged breach of this Agreement or the engagement contemplated hereby (any of the foregoing, a "Claim") shall be brought in the Bankruptcy

Court. If the Bankruptcy Court declines jurisdiction over any such matter, the parties agree that any Claim shall be submitted to JAMS/ENDISPUTE, or its successor, in New York, New York, for mediation; and if the matter is not resolved through mediation, then it shall be submitted for final and binding arbitration in front of a panel of three arbitrators with JAMS/ENDISPUTE in New York, New York under the JAMS/ENDISPUTE Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the plaintiff choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Debtors and the Committee agree and consent to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

21. I believe that the Fee Structure (and other provisions within the Letter Agreement) is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of the transactions contemplated in the Letter Agreement.

22. It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. I believe that for Jefferies to recreate the time entries for its restructuring personnel and require its non-restructuring personnel to record their time as prescribed by the Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "UST Guidelines") would be, in each case, unduly burdensome and time-consuming. As a result of this practice (which I believe is common within the investment banking industry), and because the fees which Jefferies will be entitled to pursuant to the Application and Letter Agreement (following approval by this Court)

are not based on hours worked or tasks accomplished, the terms and conditions of the retention proposed contemplate that Jefferies will seek approval by this Court of its fees and expenses in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and rules and orders of this Court, but that such fee requests will not include detailed time records or narrative descriptions of work done in the relevant time period.

23. I believe that the proposed retention is reasonable and based on the customary compensation charged by Jefferies and comparably skilled practitioners in matters outside and other than chapter 11 cases, as well as cases under chapter 11, and has been approved and implemented in not just this jurisdiction but also in chapter 11 cases elsewhere. Indeed, the entire engagement as set forth in the Letter Agreement and the Application is common within the industry and reflects what is considered to be "market" both in and out of chapter 11 proceedings, in each case, in light of Jefferies' experience in reorganizations and the scope of work to be performed pursuant to its retention.

24. At the Equity Committee's request, Jefferies has been working on this matter, pursuant to the terms and conditions of the Letter Agreement, since September 1, 2005. As a such, Jefferies requests that it's retention be authorized effective as of September 1, 2005.

25. Other than as set forth above, no other arrangement is proposed between the Equity Committee and Jefferies for compensation to be paid in these cases.

26. The foregoing constitutes the statement of Jefferies pursuant to sections 329 and 504 of the Bankruptcy Code, and Bankruptcy Rules 2014(a), 2016(b) and 5002.

I declare that the foregoing is true and correct to the best of my knowledge. Executed this 23rd day of September, 2005 in New York, NY.

                                                William Q. Derrough
                                                Managing Director

SWORN TO AND SUBSCRIBED before
me this 23rd day of September 2005.

Notary Public

                                **CAITLIN DONOHUE**
                     NOTARY PUBLIC, STATE OF NEW YORK
                             No. 01DO8115750
                        QUALIFIED IN NEW YORK COUNTY
                MY COMMISSION EXPIRES SEPT. 13, 2008

# SCHEDULE 1

Disclosure of Jefferies & Company, Inc.
Results of Conflicts Search – Current and Former Clients and/or Representations

| Party | Relationship |
|---|---|
| US Bank Corporation | Client in past or present restructuring assignments |
| R2 Investments LDC | Jefferies is engaged in litigation with R2 Investments |
| Deutsche | Jefferies is engaged in stock loan with Deutsche |
| Fortis Benefits Insurance Company | Jefferies is engaged in stock loan with Deutsche |
| Oaktree Capital Management | Client in past or present restructuring assignments |
| Nestle S.A. | Client in past or present restructuring assignments |
| Unilever PLC | Client in past or present restructuring assignments |
| Kimberly Clark De Mexico S.A. | Client in past or present restructuring assignments |
| New Plan Excel Realty Trust | Client in past or present restructuring assignments |
| Kenneth M. Thomas | Previous employee of Jefferies & Company, Inc. |
| | |
| | |
| | |
| | |