UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 05-03817-3F1 |
| | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

MOTION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES
AND FOR EXPEDITED HEARING
(WINN-DIXIE STORE #1917),
KILLEN MARKETPLACE,
(KILLEN, ALABAMA)
FILED BY KILLEN MARKETPLACE, LLC

The creditor, **Killen Marketplace, LLC** (the "Creditor"), by its undersigned attorneys, moves for an order allowing and directing the immediate payment of administrative expenses, as more fully appears below:

1. The Creditor owns the property (the "Leased Premises") that the debtors operated as Winn-Dixie Store #1917, at Killen Marketplace, in Killen, Alabama. Winn-Dixie Montgomery, Inc. (as successor to Winn-Dixie Atlanta, Inc.) ("Tenant") is the tenant and Creditor is the landlord under the Lease dated September 17, 1998 ("Lease"). Winn-Dixie Stores, Inc. (collectively with the Tenant, the "Debtors"), is the guarantor of the obligations of the Tenant under the Lease pursuant to the terms of the Corporate Guaranty of Lease Obligations dated September 21, 1998 ("Guaranty"). The Debtors are debtors in these jointly administered cases and this Request is made as to both Debtors, jointly and severally.

2. Debtors filed these cases under Chapter 11 of the Bankruptcy Code on February 21, 2005, in the United States Bankruptcy Court for Southern District of New York. On April 13, 2005, that court transferred the venue of the cases to this Court.

3. In the Order Under 11 U.S.C. § 365(d)(4) Granting Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property entered on May 6, 2005 (Docket No. 1070) this Court directed the Debtors to honor all Postpetition Rental Obligations arising under the Lease. In the Order Under 11 U.S.C. § 365(d)(4) Granting Further Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property entered on September 12, 2005 (Docket No. 3434), this Court directed the Debtors to honor all Postpetition Rental Obligations arising under the Lease, and set out the Debtors' agreement that lessors may file a motion seeking to compel the Debtors to honor Postpetition Rental Obligations and that Debtors shall not oppose a lessor's request for an expedited hearing on such a motion.

4. Pursuant to Notice of Rejection of Unexpired Lease dated September 14, 2005, Tenant rejected the Lease. The Rejection Date is September 30, 2005.

5. Under §§ 3(c) and 15 of the Lease, Debtors are obligated to pay for Common Area Maintenance Expenses, Real Estate Taxes, and Shopping Center Insurance ("Additional Rent"). Tenant paid part of the Additional Rent in monthly installments of $2,170.30 each. After the end of each year, Creditor billed Tenant for the balance of Additional Rent owed by Tenant for such year.

6. Debtors owe Creditor the following amounts for unpaid Additional Rent.

(a) The total Additional Rent owed by Debtors for the calendar year 2004 was $65,428.89. The amount paid monthly totaled $27,263.13, so Debtors owe $38,165.76 for unpaid Additional Rent for the year 2004. On February 27, 2005, Creditor submitted its itemized invoice, a copy of which is attached hereto as Exhibit A, in the amount of $38,165.76, which amount then became due and payable.

(b) As shown on the attached <u>Exhibit B</u>, Debtors' prorata share of the total Additional Rent from January 1, 2005 through February 20, 2005 is $9,173.52. Of that amount, Tenant has made monthly payments during 2005 totaling $3,720.51, leaving $5,453.01 due.

(c) As shown on the attached <u>Exhibit C</u>, Debtors' prorata share of the total Additional Rent from February 21, 2005 through September 30, 2005 (the Rejection Date of the Lease) is $33,807.77. Of that amount, Tenant has made payments totaling $15,812.19, leaving $17,995.58 due.

7. Under § 40-11-4 Ala. Code (1975), a copy of which is attached, Real Estate Taxes "become due and payable on October 1 in each year . . . except in cases when parties are closing out or going out of business . . . and except in cases where goods, wares, and merchandise are advertised for sale at auction, bankrupt, insolvent, assignment, or fire sales, or where said goods, wares, and merchandise are advertised for sale . . . as closing out or going out of business sales . . . in which cases, such taxes shall become due and payable at once." Tenant advertised and conducted a going out of business sale in the Leased Premises prior to the Rejection Date. Debtors' prorata share of 2005 Real Estate Taxes became due and payable when Tenant advertised and conducted its going out of business sale prior to the Rejection Date. Tenant's prorata share of real estate taxes for the entire 2005 tax year is $29,729.91. Debtors' prorata share of 2005 real estate taxes that accrued postpetition is $18,082.30

8. Pursuant to TransAmerica Life Insurance Company's Application for Payment of Administrative Expenses (Winn-Dixie Store #1908, the Village on Whitesburg, Huntsville, Alabama), this Court has under submission the issue of whether a creditor's claim, a portion of which accrues pre-petition and a portion of which accrues post-petition, but the entire amount of which first comes due post-petition, is an administrative expense claim for the entire amount of

the claim or only that portion that accrued post-petition. The issue has been ably briefed and argued. Instead of taking the Court's time with additional argument, Creditor requests relief alternatively in an amount determined according to the "due date" method and in an amount determined according to the "accrual" method.

WHEREFORE, Creditor prays:

1. (a) that the court will grant its Application and allow Creditor an Administrative Expense Claim in the total amount of Additional Rent that came due post-petition, *viz:*

>    $38,165.76 – 2004 Additional Rent invoiced 2/27/05;
>    $ 5,453.01 - Additional Rent from 1/1/05 through 2/20/05;
>    $17,995.58 – Additional Rent from 2/21/05 through 9/30/05;
>    $ 7,493.57 – Real Estate Taxes accrued from 10/1/04 through 12/31/04 but due at the time of Tenant's going out of business sale prior to the Rejection Date; or

(b) in the alternative, if the Court holds that only the portion of a claim that accrues post-petition is an administrative expense claim, Creditor prays that the court will grant its application and allow Creditor an administrative expense claim in the amount of $17,995.58, the amount of Additional Rent that accrued post-petition (see, Exhibit C);

2. that the Court will set a hearing on this Motion on an expedited basis; and

3. that the Court will order Debtors, jointly and severally, to pay immediately the amount of Creditor's administrative expense claim as determined by the Court pursuant to this Motion.

>    Respectively Submitted,
>
>    s/C. Ellis Brazeal
>    C. Ellis Brazeal

OF COUNSEL
Walston, Wells & Birchall, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone: (205) 244-5200
Telecopier: (205) 244-5400

S:\010076\00001\Documents\Adm. Expense Application.doc

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of Motion for Allowance and Payment of Administrative Expenses and for Expedited Hearing by Killen Marketplace, LLC, by placing same either in first class postage prepaid envelopes, and/or by electronic filing purposes to the following:

D.J. Baker
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, New York 10036

Cynthia C. Jackson
Smith, Hulsey & Busey
225 Water Street
Suite 1800
Jacksonville, Florida 32202

This the \21st\ day of October, 2005

                \s\ C. Ellis Brazeal III
                OF COUNSEL

EXHIBIT A

# Killen Marketplace, L.L.C.
P.O. Box 644
Florence, Alabama 35631
Telephone (256) 764-8682, Ext. 107 --- Fax (256) 764-5660
email: arogers@rogerscarlton.com

## -Invoice-

Date: February 27, 2005

Winn-Dixie
600 Edwards Avenue
Harahan, LA  70123

Attn:  JAY ARCHAMBAULT

Re: Store #1917, located in Killen Marketplace Shopping Center, Killen, AL

Description of charges:

Common Area Maintenance Billing for year
ending 12/31/04 (please see attached worksheets & receipts)

    Balance due:      $ 38,165.76

Thank you very much!

**Killen Marketplace, LLC**
**Reconciliation Billing Worksheet**
**Period Ending December 31, 2004**

Location: *Killen Marketplace Shopping Center*
*Highway 72, Killen, AL*

Tenant: *Winn-Dixie - Store #1917*         Lease Start Date:   11/04/99
                                            Termination Date:

| | |
|---|---|
| Unit Gross Rentable Area (sq. ft.) Per Lease: | 47,192 |
| Total Property Gross Leasable Area | 67,992 |
| Tenant Percentage of Total | 69.41% |

| | |
|---|---|
| Total Expenses (per attached) | $ 94,264.36 |
| Tenant's Percentage | 69.41% |
| Tenant's Share of Expenses | $ 65,428.89 |
| Less Payments for Period | $ 27,263.13 |
| **Total Amount Now Due** | $ 38,165.76 |

# Killen Marketplace, LLC
## Common Area Expenses - 2004

| | |
|---|---:|
| Utilities (Electricity & Water) | $ 21,852.14 |
| Insurance (01/01/04 - 12/31/04) | $ 14,011.00 |
| Landscaping Maintenance | $ 11,556.39 |
| Parking Lot & Lighting Maintenance | $ 7,581.94 |
| Sewer System & Septic Tank Maintenance | $ 9,007.97 |
| Property Taxes (year 2004) | $ 29,729.92 |
| Sprinkler System Maintenance | $ 525.00 |
| | |
| Total Expenses for Entire Shopping Center | $ 94,264.36 |

Location: **Killen Marketplace Shopping Center**
**Highway 72, Killen, AL**

Tenant: **Winn-Dixie - Store #1917**

Calculation Period: 01/01/05 - 02/20/05

| | |
|---|---|
| Unit Gross Rentable Area (sq. ft.) Per Lease: | 47,192 |
| Total Property Gross Leasable Area | 67,992 |
| Tenant Percentage of Total | 69.41% |
| | |
| Total Expenses (per attached) | $ 13,216.42 |
| Tenant's Percentage | 69.41% |
| Tenant's Share of Expenses | $ 9,173.52 |
| Less Payments for Period: 01/01/05 - 02/20/05 | $ 3,720.51 |
| Total Amount Now Due | $ 5,453.01 |

## Killen Marketplace, LLC
### CAM Expense from 01/01/05 - 02/20/05

**Utilities**
| | |
|---|---|
| 1/1/05-2/20/05 | $3,129.03 |

**Parking Lot**
| | |
|---|---|
| 1/1/05-1/31/05 | $290.00 |
| 2/1/05-2/20/05 | $2,213.19 |
| | **$2,503.19** |

**Landscaping**
| | |
|---|---|
| 1/1/05-1/31/05 | $715.22 |
| 2/1/05-2/20/05 | $510.87 |
| | **$1,226.09** |

**Septic System**
| | |
|---|---|
| White/Lynn | $17.50 |

**Insurance**
| | |
|---|---|
| 1/1/05-2/20/05 | $2,186.57 |

**Prop. Tax**
| | |
|---|---|
| 1/1/05-2/20/05 | $4,154.04 |

**Grand Total CAM Expense:** $13,216.42

EXHIBIT C

Location: *Killen Marketplace Shopping Center*
*Highway 72, Killen, AL*

Tenant: *Winn-Dixie - Store #1917*

Calculation Period: 02/21/05 - 09/30/05

| | |
|---|---:|
| Unit Gross Rentable Area (sq. ft.) Per Lease: | 47,192 |
| Total Property Gross Leasable Area | 67,992 |
| Tenant Percentage of Total | 69.41% |
| | |
| Total Expenses (per attached) | $ 48,707.35 |
| Tenant's Percentage | 69.41% |
| | |
| Tenant's Share of Expenses | $ 33,807.77 |
| | |
| Less Payments for Period: 02/21/05 - 09/30/05 | $ 15,812.19 |
| | |
| Total Amount Now Due | $ 17,995.58 |

## Killen Marketplace, LLC
## CAM Expense from 2/21/05 to 9/30/05

| Utilities | | Parking Lot | | Landscaping | | Septic System | | Insurance | | Prop. Tax | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/14/05-9/30/05 | $674.39 | 9/30/05 | $270.00 | 8/05 & 9/05 | $1,430.44 | TTL-7/11/05 | $24.00 | 2/21/05-9/30/05 | $9,518.80 | 2/21/05-9/30/05 | $18,082.39 |
| 8/9/05-9/14/05 | $471.16 | 8/31/05 | $270.00 | 6/05 & 7/05 | $1,430.44 | TTL-7/12/05 | $105.00 | | | | |
| | $782.61 | 7/30/05 | $270.00 | 5/30/05 | $2,231.72 | White/Lynn | $120.00 | | | | |
| | $298.25 | 6/30/05 | $270.00 | 3/05 & 4/05 | $1,430.44 | White/Lynn | $35.00 | | | | |
| 7/8/05-8/9/05 | $469.10 | 5/31/05 | $270.00 | 2/5 | $204.35 | TTL-4/19/05 | $24.00 | | | | |
| | $641.98 | 4/5/05 | $270.00 | | $6,727.39 | White/Lynn | $132.50 | | | | |
| 6/10/05-7/09/05 | $537.12 | 3/31/05 | $270.00 | | | White/Lynn | $52.50 | | | | |
| | $472.42 | 2/28/05 | $78.00 | | | | $493.00 | | | | |
| | $536.97 | | $1,968.00 | | | | | | | | |
| 5/10/05-6/10/05 | $498.68 | | | | | | | | | | |
| | $526.14 | | | | | | | | | | |
| | $500.47 | | | | | | | | | | |
| 4/13/05-5/10/05 | $610.29 | | | | | | | | | | |
| | $450.91 | | | | | | | | | | |
| | $462.22 | | | | | | | | | | |
| 3/15/05-4/13/05 | $563.26 | | | | | | | | | | |
| | $520.58 | | | | | | | | | | |
| | $740.30 | | | | | | | | | | |
| 2/21/05-3/15/05 | $621.50 | | | | | | | | | | |
| | $1,460.31 | | | | | | | | | | |
| | $11,918.66 | | | | | | | | | | |

**Grand Total CAM Expense:   $48,707.35**

§ 40-11-2                          REVENUE AND TAXATION                           § 40-11-4

by the city of Birmingham and leased to the corporation under terms of a lease having 22½ more years to run, were not taxable for ad valorem tax purposes. State v. West Point Development Corp., 280 Ala. 100, 190 So.2d 535 (Ala.1966).

Corporation was subject to ad valorem tax on houses erected and rented on land leased from the government, though upon termination of lease all improvements remained the property of the government without consideration, since for tax purposes the corporation was the owner of the houses. Brookley Manor, Inc. v. State, 265 Ala. 141, 90 So.2d 161 (Ala.1956).

Where turpentine lease gave the lessee only the right to go upon the land and box pine trees thereon and remove crude turpentine, the lessee's interest was not a "separate and special interest" in land. Ashe Carson Co. v. State, 138 Ala. 108, 35 So. 38 (Ala.1903).

The fact that a tugboat was a seagoing vessel propelled by steam and registered at the port of the owner's domicile did not prevent its taxation in this state when its business was wholly within the state and it was there indefinitely. National Dredging Co. v. State, 99 Ala. 462, 12 So. 720 (Ala.1893). Taxation ⇐ 98

Cited in Dorlan v. Morrill-Doyle Realty & Ins. Co., 21 Ala.App. 119, 106 So. 61 (1925); Lee v. State Tax Comm'n, 219 Ala. 513, 123 So. 6 (1929); Thomason v. Mullinax, 403 So.2d 883 (Ala.1981); Regency Dev. Co. v. Jefferson County Bd. of Equalization & Adjustment, 437 So.2d 560 (Ala.Civ.App.1983).

§ 40-11-2. Property and activities of United States and its agencies.

Property and activities of the United States and its agencies shall be taxable as other property and activities, except where the State of Alabama is without constitutional authority to impose such taxes. (Acts 1939, No. 65, p. 95; Code 1940, T. 51, § 22.)

| LIBRARY REFERENCES | Corpus Juris Secundum: |
|---|---|
| American Digest System: | C.J.S. Indians §§ 131-133; Taxation §§ 9, 242-243, 250, 252-255, 299, 1094. |
| Taxation ⇐5-9. | |

§ 40-11-3. Taxation of federal property where immunity waived, etc.

The property of the United States, its agencies, instrumentalities, or corporations organized under the laws of Congress, including any buildings which have or may hereafter be erected on the land of another and for which reason may be considered by the laws of the state to be personal property for taxation purposes, the immunity from taxation of which said property has been or may hereafter be waived by the laws of Congress and which said property has been or may hereafter be made subject to state, county, municipal, or local taxation by the laws of Congress, shall be assessed for taxation by the state, county, municipality, or local taxing unit and the taxes collected thereon to the same extent according to its value as other like or similar property is assessed for taxation by the state, county, municipality, or local taxing unit. (Acts 1945, No. 485, p. 722.)

| LIBRARY REFERENCES | Corpus Juris Secundum: |
|---|---|
| American Digest System: | C.J.S. Indians §§ 131-133; Taxation §§ 9, 242-243, 250, 252-255, 299, 1094. |
| Taxation ⇐5-9. | |

§ 40-11-4. When taxes become due and payable.

All taxes, unless otherwise provided by law, shall become due and payable on October 1 in each year, and shall become delinquent if not paid before January 1 succeeding, except in cases when parties have moved or are about to move from the county, and except in cases when parties are closing out or

going out of business, and except in cases where insolvency is impending, and except in cases where goods, wares, and merchandise are advertised for sale at auction, bankrupt, insolvent, assignment, or fire sales, or where said goods, wares, and merchandise are advertised for sale for the satisfaction of creditors, or as closing out or going out of business sales, or in any way where a person is disposing of substantially all of his taxable property in the county, in which cases such taxes shall become due and payable at once. Advertisements in the newspapers or otherwise of a sale of any personal property as a closing out sale, fire sale, bankrupt sale, or any sale of like character shall be prima facie evidence that the collection of taxes due on such property or any other property so advertised is endangered within the meaning of this section. Notice to any tax collector by the Department of Revenue, a tax assessor, deputy tax assessor, tax agent, license inspector, or any other official of this state or any county thereof that any person is about to move a whole or any part of his personal property from this state shall be prima facie evidence that the collection of the taxes due or to become due by said person on such property or other property is endangered; and, upon failure of the tax collector to act as provided in Section 40-5-31, he shall be liable on his bond for any neglect to immediately collect the taxes due, by levy and sale or otherwise. (Acts 1935, No. 194, p. 256; Code 1940, T. 51, § 23.)

**LIBRARY REFERENCES**

American Digest System:
Taxation ⟺526.

Corpus Juris Secundum:
C.J.S. Taxation §§ 883-884.

### § 40-11-5. Taxes on dog race tracks; not retroactive; validity of prior exemptions; sales tax exemption for admission and handle.

(a) Effective September 25, 1986, in addition to all other taxes heretofore or hereafter levied by local or general law, all licensees or operators of dog race tracks within this state are hereby required to pay, (1) income taxes levied by the state, (2) occupational taxes levied on wages by a municipality or county, (3) ad valorem taxes levied on any racing facility by the state, county, or other local subdivision at the same rates as are applicable to other commercial property having comparable market value, (4) state and local sales taxes on merchandise, food, or beverage, sold by operators or their concessionaires at racing events, and (5) all taxes and license fees imposed or related to the sale of alcoholic beverages.

(b) This section shall not apply retroactively nor shall any provision of this section be construed as affecting the local distribution of taxes of any existing dog race track.

(c) The Legislature affirms and declares the exemptions heretofore granted by local act and expressly declares that the intention of this legislation is that such exemptions were heretofore valid and remain valid until September 25, 1986.

(d) There is no intent by this legislation to impose a general sales tax on admission to the track or to the handle and an exemption is hereby granted for such taxes. (Acts 1986, Ex. Sess., No. 86-647, p. 29.)