

## DIRECT ASSIGNMENT OF RENTS

  KNOW ALL MEN BY THESE PRESENTS, THAT WHEREAS, SAM GENIRBERG and ROSE GENIRBERG, and whose mailing address is 1707 Arlington Avenue, El Cerrito, California 94530 (hereinafter collectively called the "Undersigned") has executed a Mortgage and Security Agreement (hereinafter called the "Mortgage") of even date herewith to STATE FARM LIFE INSURANCE COMPANY, an Illinois corporation having its principal place of business at One State Farm Plaza, Bloomington, Illinois 61701, as Mortgagee, conveying the real estate legally described in <u>Exhibit "A"</u> attached hereto and incorporated herein by reference and being hereinafter referred to as the "Premises", and given to secure a note or notes (hereinafter referred to as the "Note") of the Undersigned in the principal sum of TWO MILLION TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($<u>2,200,000.00</u>) and said STATE FARM LIFE INSURANCE COMPANY (hereinafter called the "Mortgagee") is a legal owner and holder of the Note and said Mortgage; and

  WHEREAS, the Undersigned is desirous of further securing (i) the payment of principal, interest and all other sums now due or hereafter to become due under the Note, including any extensions or renewals thereof, and under the Mortgage, this Assignment and any other document evidencing, securing or relating to the indebtedness evidenced by the Note, and (ii) the performance of each and every obligation, covenant and agreement of the undersigned contained in this Assignment, the Note, the Mortgage and in any other document evidencing, securing or relating to the indebtedness evidenced by the Note.

  NOW, THEREFORE, the Undersigned, for and in consideration of these presents and the mutual agreements herein contained and as further and additional security as aforesaid to the Mortgagee, and in consideration of the sum of ONE DOLLAR ($1.00) to the Undersigned in hand paid, the receipt whereof is hereby acknowledged, does hereby sell, assign and transfer unto the Mortgagee all the rents, issues and profits now due and which may hereafter become due under or by virtue of any lease, whether written or verbal, or any letting of, or of any agreement for the use or occupancy of the Premises above-described or any part thereof, which may have been heretofore or may be hereafter made or agreed to or which may be made or agreed to by the Mortgagee under the powers herein granted, it being the intention of the parties to hereby establish an absolute transfer and assignment of all the said leases and agreements, and all the avails thereto, to the Mortgagee, and the Undersigned does hereby appoint irrevocably the Mortgagee its true and lawful attorney in its name and stead (with or without taking possession of the aforesaid Premises as hereinafter provided), to rent, lease or let all or any portion of said Premises to any party or parties at such rental and upon such term, in its discretion as it may determine, and to collect all of said avails, rents, issues and profits arising from or accruing at any time hereafter, and all now due, or that may hereafter become due under each and all of the leases and agreements, written or verbal, or other tenancy existing or which may hereafter exist on said Premises, with the same rights and powers and subject to the same immunities, exoneration of liability and rights of recourse and indemnity as the Mortgagee would have upon taking possession of the said Premises pursuant to the provisions hereinafter set forth.

  The Undersigned represents and agrees that no rent has been or will be paid by any person in possession of any portion of the above described Premises for more than one installment in advance and that the payment of none of the rents to accrue for any portion of said Premises has been or will be waived, released, reduced, or discounted, or otherwise discharged or compromised by the Undersigned. Undersigned waives any right of set-off against any person in possession of any portion of the above-described Premises. Undersigned agrees that it will not assign any of the rents or profits except to the purchaser or grantee of the Premises.



Nothing herein contained shall be construed as constituting the Mortgagee a "mortgagee in possession" in the absence of the taking of actual possession of the said Premises by the Mortgagee pursuant to the provisions hereinafter contained. In the exercise of the powers herein granted the Mortgagee, no liability shall be asserted or enforced against the Mortgagee, all such liability being expressly waived and released by the Undersigned.

The Undersigned further agrees to assign and transfer to the Mortgagee all future leases upon all or any part of the above described Premises and to execute and deliver, immediately upon the request of the Mortgagee, all such further assurances and assignment in the Premises as the Mortgagee shall from time to time require.

In any case in which under the provisions of the above-described Mortgage the Mortgagee has a right to institute foreclosure proceedings, whether before or after the entire principal sum secured thereby is declared to be immediately due, or whether before or after institution of legal proceedings or any other action to foreclose the lien thereof or before or after sale thereunder, forthwith, upon demand of the Mortgagee and if and to the extent permitted by law, the Undersigned agrees to surrender to the Mortgagee, and the Mortgagee shall be entitled to take actual possession of, the Premises or any part thereof personally, or by its agents or attorneys, and Mortgagee in its discretion may, if and to the extent permitted by law as aforesaid, enter upon and take and maintain possession of all or any part of said Premises, together with all the documents, books, records, papers and accounts of the Undersigned or then owner of the Premises relating thereto, and may exclude the Undersigned, its agents or servants, wholly therefrom and may as attorney in fact or agent of the undersigned, or in its own name as Mortgagee and under the powers herein granted, hold, operate, manage and control the Premises and conduct the business, if any, thereof either personally or by its agents, with full power to use such measures, legal or equitable, as in its discretion or in the discretion of its successors or assigns may be deemed proper or necessary to enforce the payment of security of the avails, rents, issues and profits of the Premises, including legal actions for the recovery of rent, legal dispossessory actions against tenants holding over and legal actions in distress of rent, hereby granting full power and authority to exercise each and every of the rights, privileges and powers herein granted at any and all times hereafter, without notice to the Undersigned except as otherwise required by applicable law, and with full power to cancel or terminate any lease or sublease for any cause or on any ground which would entitle Undersigned to cancel the same, to elect to disaffirm any lease or sublease made subsequent to the aforesaid Mortgage or subordinated to the lien thereof, to make all necessary or proper repairs, decorating, renewals, replacements, alterations, additions, betterments and improvements to the above-described Premises that may seem judicious in its discretion, to insure and reinsure the same for all risks incidental to Mortgagee's possession, operation and management thereof and to receive all such avails, rents, issues and profits.

The Mortgagee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under any leases or rental agreements relating to said Premises, and the Undersigned shall and does hereby agree to indemnify and hold the Mortgagee harmless of and from any and all liability, loss or damage which it may or might incur under any leases or under or by reason of the assignment thereof and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in said leases. Should the Mortgagee incur any such liability, loss or damage, under said leases or under or by reason of the assignment thereof,



or in the defense of any claims or demands, the Undersigned agrees to reimburse the Mortgagee for the amount thereof, including costs, expenses and a reasonable attorney's fee immediately upon demand.

The Mortgagee in the exercise of the rights and powers conferred upon it by this Assignment of Rents shall have full power to use and apply the avails, rents, issues and profits of the Premises to the payment of or on account of the following, in such order as the Mortgagee may determine:

(a) After the occurrence of an event of default under the Loan Documents (as that term is hereinafter defined), to the payment of the operating expenses of said Premises, including cost of management and leasing thereof (which shall include reasonable compensation to the Mortgagee and its agent or agents, if management be delegated to an agent or agents, and it shall also include lease commissions and other compensation and expenses of seeking and procuring tenants and entering into leases), established claims for damages, if any, and premiums on insurance hereinabove authorized;

(b) After the occurrence of an event of default under the Loan Documents, to the payment of taxes and special assessments now due or which may hereafter become due on said Premises;

(c) After the occurrence of an event of default under the Loan Documents, to the payment of all repairs, decorating, renewals, replacements, alterations, additions, or betterments, and improvements of said Premises, including the cost from time to time of installing, repairing and replacing refrigeration appliances and gas or electric stoves therein, and of placing said Premises in such condition as will, in the judgment of the Mortgagee, make it readily rentable;

(d) To the payment of any indebtedness secured by the described Mortgage or any deficiency which may result from any foreclosure sale.

The excess amount of rental, if any, shall be transferred to a pre-arranged account of the Undersigned within ten (10) business days following receipt thereof by the Mortgagee from tenant.

The Undersigned does further specifically authorize and instruct each and every present and future lessee or tenant of the whole or any part of the above-described Premises to pay all unpaid rental agreed upon in any lease or tenancy to the Mortgagee upon receipt of demand from said Mortgagee to pay the same.

It is understood and agreed that the provisions set forth in this Assignment shall be deemed as a special remedy given to the Mortgagee, and shall not be deemed exclusive of any of the remedies granted in the above-described Mortgage, but shall be deemed an additional remedy and shall be cumulative with the remedies therein granted.

Mortgagee agrees that in the event of any default in the payment when due of any sums owing under the terms of the Note, this Assignment, the Mortgage or any other instruments now or hereafter evidencing or securing or in any way relating to the obligations set forth in this Assignment (the Note, this Assignment and the Mortgage, together with all of such other instruments, being hereinafter collectively referred to as the "Loan Documents"), Mortgagee shall neither seek nor take any deficiency or monetary judgment against the Undersigned or against any property of the Undersigned other than the property encumbered by the Loan Documents. It is further understood and agreed however, that nothing contained in this paragraph shall in any manner or way release, affect or impair:

a. the existence of the debt evidenced by the Note or the other Loan Documents;

b. the enforceability of the liens and security interests created by the Mortgage and the other Loan Documents;

c. the right of Mortgagee after an occurrence of an event of default under any of the Loan Documents to receive from the Undersigned any rents or other income received by the Undersigned from and after said event of default from tenants of the Premises; or

d. the right of Mortgagee after the occurrence of such an event of default to recover from the Undersigned an amount necessary to repair any damage to the Premises which is caused by the wanton or willful act or omission of the Undersigned; or

e. the right of the Mortgagee to recover from Undersigned any sums (i) expended by the Mortgagee in performance of or compliance with all covenants, agreements, and provisions of any lease which is now or hereafter assigned to Mortgagee as security for the payment and performance of the obligations of Undersigned under the Loan Documents and (ii) which are so expended by reason of Undersigned's neglect or refusal to so perform said obligations, nor shall such provisions prevent the Mortgagee from recovering any rentals lost as a result of Undersigned's failure to perform said obligations; or

f. the right of the Mortgagee to collect from the Undersigned any and all of the Mortgagee's costs, expenses, damages, or liabilities, including, without limitation, all reasonable attorney's fees, directly or indirectly arising out of or attributable to the use, generation, storage, release, threatened release, discharge, disposal, or present on, under, or about the Premises of any materials, wastes, or substances defined or classified as hazardous or toxic under applicable Federal, State or Local laws or regulations.

Whenever the word "Undersigned" is mentioned herein, it is hereby understood that the same includes both the singular and plural in number and the masculine, feminine or neuter gender, as the context hereof shall require, and shall include and be binding upon successors and assigns (including successors by consolidation) of the Undersigned, and any party or parties holding title to the above-described Premises by, through or under the Undersigned. All of the rights, powers, privileges and immunities herein granted and assigned to the Mortgagee shall also inure to its successors and assigns, including all holders, from time to time, of the above described Note.

It is expressly understood that no judgment or decree which may be entered on any debt secured or intended to be secured by the above-described Mortgage shall operate to abrogate or lessen the effect of this instrument, but that the same shall continue in full force and effect until the payment and discharge of any and all indebtedness secured by said Mortgage, in whatever form the said indebtedness may be and until the indebtedness secured by said Mortgage shall have been paid in full and all bills incurred by virtue of the authority herein contained have been fully paid out of rents, issues and profits of the Premises, or by the Undersigned, or until such time as this instrument may be voluntarily released. This instrument shall also remain in full

BOOK 134 PAGE 216

## ACKNOWLEDGEMENT

STATE OF <u>California</u> Contra Costa County ss:

On this <u>6th</u> day of <u>May</u>, 1994, I <u>Shirley A. Cundiff</u>, a Notary Public in and for said county and in said state, hereby certify that SAM GENIRBERG and ROSE GENIRBERG signed the foregoing conveyance, and who are known to me, acknowledged before me that, being informed of the contents of the conveyance, he and she, with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand and seal of office.

My Commission Expires:
<u>May 6, 1994</u>

_____
Notary Public

11-T-81620\030\Mortgage
3-23-94

OFFICIAL SEAL
SHIRLEY A. CUNDIFF
Notary Public-California
CONTRA COSTA COUNTY
My Comm. Exp. May 6, 1994

6

EXHIBIT "A"
(Ozark)

Parcel "A":

Commence at the intersection of the south right-of-way line of State Road No. 249 (80-foot right-of-way, Andrews Avenue East) with the southwest right-of-way flare of U.S. Highway 231 north (210-foot right-of-way) in Section 32, Township 6 North, Range 24 East, Dale County, Alabama; thence go south 83 degrees 51 minutes 01 second east along the aforesaid U.S. Highway 231 right-of-way flare a distance of 276.16 feet to an intersection with the curved southerly right-of-way line of U.S. Highway 231 (210-foot right-of-way), said curve being concave northeasterly and having a radius of 11,459.20 feet (Delta = 02 degrees 06 minutes 20 seconds, chord bearing = south 47 degrees 04 minutes 37 seconds east, chord = 421.09 feet); thence go along the arc of said curved southerly right-of-way line of the aforesaid U.S. Highway 231 a distance of 421.12 feet to the easternmost corner of a parcel of land recorded in Deed Book 139, Page 621 in the public records of the Probate Office of Dale County, Alabama, said point also being the POINT OF BEGINNING. Thence continue along the aforesaid curved southerly right-of-way line, said curve being concave northeasterly and having a radius of 11,459.20 feet (Delta = 02 degrees 00 minutes 07 seconds, chord bearing = south 49 degrees 07 minutes 50 seconds east, chord = 400.38 feet) along the arc of said curved southerly right-of-way line a distance of 400.40 feet; thence departing the aforesaid curved southerly right-of-way line of the aforesaid U.S Highway 231 (210-foot right-of-way) go south 43 degrees 22 minutes 23 seconds west a distance of 587.49 feet; thence go north 46 degrees 37 minutes 37 seconds west a distance of 400.00 feet; thence go north 43 degrees 22 minutes 23 seconds east a distance of 570.00 feet to the POINT OF BEGINNING. The above-described parcel of land is situated in Section 32, Township 6 North, Range 24 East in the City of Ozark, Dale County, Alabama, and contains 5.32 acres.

LESS AND EXCEPT:

Commence at the intersection of the south right-of-way line of State Road No. 249 (80' R/W, Andrews Avenue East) and with the southwest right-of-way flare of U.S. Hwy. 231 North (210' R/W) in Section 32, Township 6 North, Range 24 East, Dale County, Alabama; thence go South 83 degrees 51 minutes 01 seconds East along the aforesaid U.S. Highway 231 right-of-way flare a distance of 276.16 feet to an intersection with the curved southerly right-of-way line of U.S. Hwy. 231 (210' R/W), said curve being concave northeasterly and having a radius of 11459.20 feet (Delta = 02 degrees 06 minutes 20 seconds, chord bearing = South 47 degrees 04 minutes 37 seconds East, chord = 421.09 feet); thence go along the arc of said curved southerly right-of-way line of the aforesaid U.S. Highway 231 a distance of 421.12 feet to the easternmost corner of a parcel of

land recorded in Deed Book 139 at Page 621 of the Public Records of the Probate Office of Dale County, Alabama; thence departing the aforesaid right-of-way line go South 43 degrees 22 minutes 23 seconds West a distance of 300.23 feet; thence go South 46 degrees 39 minutes 22 seconds East a distance of 37.85 feet to the POINT OF BEGINNING; thence continue South 46 degrees 39 minutes 22 seconds East a distance of 60.01 feet; thence go South 43 degrees 22 minutes 42 seconds West a distance of 189.96 feet; thence go North 46 degrees 37 minutes 18 seconds West a distance of 59.90 feet; thence go North 43 degrees 20 minutes 38 seconds East a distance of 189.92 feet to the POINT OF BEGINNING. The above described parcel of land is situated in Section 32, Township 6 North, Range 24 East, in the City of Ozark, Dale County, Alabama, and contains 11387.93 square feet or 0.26 acres.

**AND LESS AND EXCEPT**:

Commence at the intersection of the south right-of-way line of State Road No. 249 (80' R/W, Andrews Avenue East) and with the southwest right-of-way flare of U.S. Hwy. 231 North (210' R/W) in Section 32, Township 6 North, Range 24 East, Dale County, Alabama; thence go South 83 degrees 51 minutes 01 seconds East along the aforesaid U.S. Highway 231 right-of-way flare a distance of 276.16 feet to an intersection with the curved southerly right-of-way line of U.S. Hwy. 231 (210' R/W), said curve being concave northeasterly and having a radius of 11459.20 feet (Delta = 02 degrees 06 minutes 20 seconds, chord bearing = South 47 degrees 04 minutes 37 seconds East, chord = 421.09 feet); thence go along the arc of said curved southerly right-of-way line of the aforesaid U.S. Highway 231 a distance of 421.12 feet to the easternmost corner of a parcel of land recorded in Deed Book 139 at Page 621 of the Public Records of the Probate Office of Dale County, Alabama; thence continue along the aforesaid curve southerly right-of-way line, said curve being concave northeasterly and having a radius of 11459.20 feet (Delta = 02 degrees 00 minutes 07 seconds, chord bearing = South 49 degrees 07 minutes 50 seconds East, chord = 400.38 feet); thence go along the arc of said curved southerly right-of-way line a distance of 400.40 feet; thence departing the aforesaid curved southerly right-of-way line go South 43 degrees 22 minutes 23 seconds West a distance of 317.59 feet; thence go North 46 degrees 36 minutes 24 seconds West a distance of 42.17 feet to the POINT OF BEGINNING; thence go South 43 degrees 23 minutes 36 seconds West a distance of 79.52 feet; thence go North 46 degrees 36 minutes 24 seconds West a distance of 59.88 feet; thence go North 43 degrees 22 minutes 42 seconds East a distance of 79.52 feet; thence go South 46 degrees 36 minutes 24 seconds East a distance of 59.90 feet to the POINT OF BEGINNING. The above described parcel of land is situated in Section 32, Township 6 North, Range 24 East, Dale County, Alabama, and contains 4762.43 square feet or 0.11 acres.

2

Parcel "B":

Commence at the intersection of the south right-of-way line of State Road No. 249 (80-foot right-of-way, Andrews Avenue East) and the southwest right-of-way flare of U.S. Highway 231 north (210-foot right-of-way) in Section 32, Township 6 North, Range 24 East, Dale County, Alabama; thence go south 83 degrees 51 minutes 01 seconds east along the aforesaid U.S. Highway 231 right-of-way flare a distance of 276.16 feet to an intersection with the curved southerly right-of-way line of U.S. Highway 231 (210-foot right-of-way), said curve being concave northeasterly and having a radius of 11,459.20 feet (Delta = 02 degrees 06 minutes 20 seconds, chord = 421.09 feet, chord bearing = south 47 degrees 04 minutes 37 seconds east); thence go along the arc of said curved southerly right-of-way line of the aforesaid U.S. Highway 231 a distance of 421.12 feet to the easternmost corner of a parcel of land recorded in Deed Book 139, Page 621 in the public records of the Probate Office of Dale County, Alabama; thence departing the aforesaid curved southerly right-of-way line of the aforesaid U.S. Highway 231 (210-foot right-of-way), go south 43 degrees 22 minutes 23 seconds west a distance of 221.12 feet to the POINT OF BEGINNING. Thence continue south 43 degrees 22 minutes 23 seconds west a distance of 121.64 feet; thence go north 01 degree 48 minutes 19 seconds west a distance of 79.85 feet; thence go north 46 degrees 59 minutes 01 second west a distance of 189.01 feet; thence go south 83 degrees 27 minutes 26 seconds west a distance of 111.65 feet; thence go south 82 degrees 52 minutes 21 seconds west a distance of 203.13 feet to the easterly right-of-way line of Meadowlake Drive (60-foot right-of-way); thence go north 00 degrees 20 minutes 39 seconds west along the aforesaid right-of-way line a distance of 60.42 feet; thence departing the aforesaid right-of-way line go north 82 degrees 52 minutes 21 seconds east a distance of 196.30 feet; thence go north 83 degrees 27 minutes 26 seconds east a distance of 146.23 feet; thence go south 46 degrees 59 minutes 01 second east a distance of 269.49 feet to the POINT OF BEGINNING. The above-described parcel of land is situated in Section 32, Township 6 North, Range 24 East in the City of Ozark, Dale County, Alabama, and contains 0.87 acres.

TOGETHER WITH all appurtenant easements in favor of the Winn-Dixie Parcel pursuant to that certain Declaration of Restrictive Covenants and Grant of Easements dated _May 17_, 1994, by Winn-Dixie Montgomery, Inc., recorded in Deed Book _181_, Page _156_, in the Office of the Judge of Probate of Dale County, Alabama.

2-N\dorothy\81620\030\exhibit.a

3

State of Alabama  
Dale County

hereby certify that the within instrument was filed in this office for record _May 12_ 19_94_ at _4:39_ o'clock _P_ M. and recorded _Misc_ Record _134_ Page _211_ and examined.

_Curt Head_
JUDGE OF PROBATE

BOOK 134 PAGE 219

Corbitt