**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

**MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT AND**
**RELEASE OF CLAIMS WITH DEBTORS' PROPERTY INSURERS**

Winn-Dixie Stores, Inc. ("WDSI") and twenty-three of its subsidiaries and affiliates,

as debtors and debtors-in-possession (collectively with WDSI, the "Debtors"), move for

entry of an order under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019 authorizing and

approving a settlement agreement and release of claims by WDSI on behalf of itself and its

affiliated companies in favor of three of its property insurers.  In support of the Motion, the

Debtors respectfully represent as follows:

**Background**

1.     On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary

petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11

U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors' cases are being

jointly administered for procedural purposes only.

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor
Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie
Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores,
Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc.,
Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores
Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc.,
Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and
Winn-Dixie Supermarkets, Inc.

2.      The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, an official committee of unsecured creditors (the "Creditors Committee") was appointed to serve in these cases pursuant to section 1103 of the Bankruptcy Code.

3.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  As of the Petition Date, the Debtors were considered to be the eighth-largest food retailer in the United States and one of the largest in the Southeast, with more than 900 stores in the United States.  The Debtors are engaged in a footprint reduction that is expected to result in the sale or closure of 326 stores.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested in the Motion are section 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

### Relief Requested

6.      By this Motion, the Debtors seek an order of the Court authorizing and approving the Settlement Agreement and Release of All Claims, substantially in the form attached as Exhibit A (the "Settlement Agreement and Release"), by WDSI on behalf of itself and its affiliated companies in favor of Zurich American Insurance Company; ACE

2

American Insurance Company; and Underwriters at Lloyds London, FR White Syndicate

Number No. 0190 and Wellington Syndicate No. 2020 c/o Marsh Limited (collectively, the

"Settling Insurers").  The Settlement Agreement and Release contain the following general

terms:

> (a)     The Settling Insurers will make a final and net payment of
> $14.49 million payable to WDSI on account of the Debtors'
> windstorm and flood claims against the Settling Insurers arising
> during the 2004 Hurricane Season (defined below).
>
> (b)     In exchange for such payment, the Debtors will release the Settling
> Insurers from all claims, damages, losses, causes of action, costs and
> expenses arising from windstorms and flood during the 2004
> Hurricane Season.

## Basis for Relief

7.     The 2004 hurricane season, which included Hurricanes Charley, Frances,

Ivan, and Jeanne (the "2004 Hurricane Season"), caused significant windstorm and flood

damage to numerous facilities of the Debtors, including retail stores and manufacturing

facilities located in Alabama, Florida, Georgia, Mississippi, South Carolina, North

Carolina, Virginia, and the Bahamas.

8.     With respect to such occurrences, the Debtors maintain property insurance

coverage with several insurers (the "Property Insurers") under various policies, which

include a $200 million limit for losses resulting from named windstorms, with a deductible

of $10.3 million. [2]

---

[2]     The Debtors maintain primary and excess property insurance coverage: (i) the primary insurance
covers losses of up to $25 million, (ii) the first tier of excess insurance covers losses of up $25
million over the first $25 million of losses, (iii) the second tier of excess insurance covers losses of
up $50 million over $50 million of losses, and (iv) the third tier of excess insurance covers losses of
up $100 million over $100 million of losses.

9.      From October 2004 through September 2005, the Debtors submitted to the Property Insurers supporting documentation, schedules and other materials pertaining to their claims for the losses they suffered as a result of the 2004 Hurricane Season (the "2004 Hurricane Claims").  The Debtors' 2004 Hurricane Claims included claims for loss of inventory,[3] extra expense, payroll, water contamination, mold, real property damage, reconstruction costs, business interruption, and accounting costs.

10.     To date, the Property Insurers have made interim payments on the 2004 Hurricane Claims, aggregating up to $50 million.[4]

11.     The Settling Insurers and the Debtors have agreed to settle the Debtors' 2004 Hurricane Claims for a total amount of $81 million.[5]

12.     After deducting from the settlement amount (i) the Debtors' $10.3 million deductible, (ii) the $50 million interim payments previously paid to the Debtors and (iii) XL Insurance's disputed share of $6.21 million, the Settling Insurers will be obligated to pay the Debtors under the Settlement Agreement and Release a final and net payment of $14.49 million (the "Final Payment").

---

[3]     The inventory is valued at retail, which compensates the Debtors for their lost profits.

[4]     XL Insurance America, Inc.("XL Insurance") is also one of the Debtors' Property Insurers.  The Debtors have commenced litigation against XL Insurance because it has disclaimed liability for the 2004 Hurricane Claims.

[5]     Together with XL Insurance, the Settling Insurers form the second tier of excess insurance and cover the Debtors' losses of up to $50 million over $50 million of losses.  The Settling Insurers and XL Insurance share payment responsibility for such losses as follows:  (i) ACE American Insurance Co. - 40%; (ii) Zurich American Insurance Co. - 20%; (iii) Underwriters at Lloyd's London - 10%; and (iv) XL Insurance - 30%.

13.    The Settling Insurers will not make the Final Payment, unless WDSI on behalf of itself and its affiliated companies enters into the Settlement Agreement and Release following authorization by this Court.

## Applicable Authority

14.    Bankruptcy Code Rule 9019 sets forth the standard for bankruptcy court approval of compromises of controversies, providing that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

15.    Compromises are generally favored in bankruptcy because they minimize litigation and expedite the administration of a bankruptcy estate. *See  Munford v. Munford, Inc.* (In re Munford Inc.), 97 F.3d 449, 455 (11th Cir. 1996) ("public policy strongly favors pretrial settlement in all types of litigation because such cases, depending on their complexity, 'can occupy a court's docket for years on end, depleting the resources of parties and the taxpayers while rendering meaningful relief increasingly elusive.'  Second, litigation costs are particularly burdensome on a bankruptcy estate given the financial instability of the estate") (citation omitted) (quoting *Wald v. Wolfson* (In re U.S. Oil & Gas Litig.), 967 F.2d 489, 493 (11th Cir. 1992)).

16.    To approve a settlement under Bankruptcy Rule 9019, a bankruptcy court must determine that the settlement is supported by adequate assurance and that it is fair, equitable, and in the best interest of the debtor's estate.  In doing so, bankruptcy courts consider a variety of factors including (a) the probability of success in the litigation; (b) the difficulties associated with collection; (c) the complexity of the litigation and the attendant expense, inconvenience and delay; and (d) the paramount interests of, and deference to the

views of, the creditors.  *See In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.

1990)

17.     The Debtors submit that the terms of the Settlement Agreement and Release

satisfy the standards set forth above.  The Settlement Agreement and Release resolve

actual disputes that, if permitted to continue, undoubtedly would involve time-consuming

and expensive legal proceedings, expose the Debtors to significant litigation costs and

delay payment to the Debtors' estates of any further insurance proceeds.

18.     The Debtors' believe that the terms of the Settlement Agreement and

Release are fair and equitable and in the best interest of the Debtors' estates.  The

Settlement Agreement and Release permits the Debtors to finally resolve the 2004

Hurricane Claims against the Settling Insurers while permitting the Debtors to continue to

pursue litigation of such claims against XL Insurance.  In addition, the Settlement

Agreement and Release allows the Debtors to recover a substantial sum under the Settling

Insurers' policies, under terms favorable to the Debtors, and without the need for further

expenditure of unnecessary administrative expenses, thereby preserving the resources of

the Debtors' estates.

19.      In sum, WDSI's entry into the Settlement Agreement and Release on behalf

of itself and its affiliated companies meets the standards for approval of a compromise in

this Court.  Accordingly, the Court should approve the Settlement Agreement and Release.

## **Notice**

20.     Notice of the Motion has been provided to (a) counsel to the Office of the

United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel

for the Creditors' Committee, (d) counsel for the Equity Committee, (e) the other parties in

interest named on the Master Service List maintained in these cases, and (f) counsel for the

Settling Insurers.  No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the

Court enters an order substantially in the form attached as Exhibit B (a) approving the

Settlement Agreement and Release and (ii) grant such other further relief as the Court

deems just and proper.

Dated: October 28, 2005

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By ____s/ D. J. Baker_____          By ____s/ Cynthia C. Jackson_____
      D. J. Baker                          Stephen D. Busey
      Sally McDonald Henry                 James H. Post
      Rosalie Walker Gray                  Cynthia C. Jackson,
                                             Florida Bar Number 498882
Four Times Square                    225 Water Street, Suite 1800
New York, New York 10036             Jacksonville, Florida  32202
(212) 735-3000                       (904) 359-7700
(212) 735-2000 (facsimile)           (904) 359-7708 (facsimile)
djbaker@skadden.com                  cjackson@smithhulsey.com

Co-Counsel for Debtors               Co-Counsel for Debtors

**Exhibit A**

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

THIS INDENTURE WITNESSETH that we, Winn-Dixie Stores, Inc., AND ALL OF ITS AFFILIATED OR SUBSIDIARY COMPANIES, CORPORATIONS, JOINT VENTURES AND OTHER OWNED OR CONTROLLED COMPANIES IN WHICH IT MAINTAINS AN INTEREST OR IS REQUIRED TO PROVIDE INSURANCE AS NOW EXIST OR MAY BE ACQUIRED, in consideration of and return for payment of a net payment of $14,490,000.00 payable to Winn-Dixie Stores, Inc. do hereby waive, release, and forever discharge: Zurich American Insurance Company (policy #XPP273387607; ACE American Insurance Company (policy #CRXD35647788); Underwriters at Lloyds London, FR White Syndicate Number No. 0190 and Wellington Syndicate No.2020 (policy #DP315204), c/o Marsh Limited; their parent companies, subsidiaries, officers, directors, employees, adjusters, attorneys, claim representatives, agents, heirs, representatives, predecessors, successors and assigns from any and all claims, demands, damages, costs, expenses, attorneys fees, loss of services, loss of use, loss of income, business interruption, actions and causes of actions arising, up to and including the present time, from any act or occurrence relating to the windstorm and flood claims occurring during the 2004 Hurricane Season and covered by the above insurance policies, and particularly on account of all personal injury, disability, property damage, loss or other damages of any kind sustained or that may hereafter be sustained as a consequence of windstorm and flood claims occurring during the 2004 Hurricane Season and covered by the above insurance policies.  This release also encompasses any and all claims for contractual damages, extra contractual damages, "bad faith" claims (whether common law or statutory), compensatory, punitive, exemplary, or special damages, tort claims, any claims of improper claim handling, attorneys fees, interest, costs or other expenses relating to the claim investigation and presentation which may be alleged to have occurred as a consequence of the windstorm and flood claimed losses covered by the above insurance policies.

The undersigned hereby declare that the undersigned are more than eighteen (18) years of age; that no representations about the nature and extent of said losses made by any attorney or agent of any party hereby released, nor any representations regarding the nature and extent of legal liability or financial responsibility of any of the parties hereby released, have induced this settlement or consideration; that in determining said consideration there has been taken into consideration not only the ascertained damages, but also the possibility that the damages may be permanent, so that consequences not now anticipated may result from the said incidents.

The undersigned agree, as a further consideration and inducement for this compromise, that this compromise shall apply

to all unknown and unanticipated losses and damages resulting from said losses, casualties or events, as well as to those now disclosed, or that might be presently occurring or that might occur or arise at any time in the future, resulting from the windstorm and flood claimed losses covered by the above insurance policies.

The undersigned hereby agree, represent and warrant that none of them have assigned this claim or any portion of this claim to any other person, entity or organization, including bankruptcy court committees, or creditors, nor have said undersigned parties consented or agreed to any assignment of any such rights under the policy or policies of insurance. Furthermore, said undersigned parties represent and warrant that they are the sole entities entitled to receive the funds and present the claim which is the subject of this settlement.  Said undersigned parties agree and warrant that they will satisfy any claims of their attorneys and/or public adjusters and/or experts and/or claim preparation companies, if any, from the funds received as a part of said settlement agreement.  By executing this agreement, the undersigned hereby agrees that they will be responsible for and hold the parties hereby released harmless from, and indemnify and defend from, any further claims by said public adjusters, attorneys, claim preparation companies or similar related or situated persons, including corporate entities, arising out of or in any way connected with the incidents described herein.  The undersigned parties further agree and warrant that they will defend and indemnify and hold harmless the parties hereby released against any claims pursued against them by such attorneys, public adjusters, claim preparation companies, experts, other insurance companies, contractors, loss payees, mortgagees or other lien holders.

The undersigned understand that the parties hereby released admit no liability of any sort by reason of said incidents and that said settlement in compromise is made to terminate further controversy respecting all claims for losses or damages that the undersigned  have heretofore asserted or that the undersigned or its personal representatives might hereinafter assert because of said losses or damages.  Said compromise settlement is intended to resolve all controversies among the undersigned and the parties hereby released and avoid the burden, expense and annoyance of litigation.  Said compromise settlement is not intended to resolve any claims the undersigned  may have against XL Insurance America, Inc and its subsidiaries and affiliates, and the undersigned  expressly reserve any and all such claims the undersigned  may have against XL Insurance America, Inc and its subsidiaries and affiliates.

In the event that any one or more of the provisions contained in this Settlement Agreement and Release of All Claims

shall, for any reason, be held to be invalid, void, illegal, or unenforceable in any respect, such invalidity, voidness, illegality or unenforceability shall not affect any other provision of this Settlement Agreement and Release of All Claims, and the remaining portions shall remain in full force.

This Settlement Agreement and Release of All Claims contains the entire agreement between the parties hereby released hereto with respect to the subject matter hereof, supersedes all prior agreements, negotiations, and oral understandings, if any, and may not be amended, supplemented, or discharged, except by an instrument in writing signed by each of the parties hereby released.  The parties hereby released acknowledge that, except as expressly set forth herein, no representations of any kind or character have been made to them by any of the other parties hereby released to induce the execution of this Settlement Agreement and Release of All Claims.

THE UNDERSIGNED HEREBY RESPECTIVELY ACKNOWLEDGE(S) THAT SHE/HE/THEY HAS/HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE, AND ITS TERMS HAVE BEEN THOROUGHLY EXPLAINED TO HIM/HER/THEM. THE UNDERSIGNED UNDERSTAND(S) ITS TERMS AND FREELY AND VOLUNTARILY SIGN(S) AND ENTER(S) INTO THIS AGREEMENT.  THE UNDERSIGNED FURTHER ACKNOWLEDGE(S) THAT, IN ENTERING INTO THIS AGREEMENT, SHE/HE/THEY HAS/HAVE NOT RELIED UPON ANY STATEMENTS OR REPRESENTATIONS BY OR ON BEHALF OF ANY PARTIES HEREBY RELEASED, MARKET PARTICIPANTS OR THEIR RESPECTIVE AUTHORIZED REPRESENTATIVES OR ATTORNEYS EXCEPT AS STATED HEREIN AND DO VOLUNTARILY AND FREELY AGREE(S) TO EXECUTE SAME.

SIGNED and SEALED this ___ day of ____, 2005 in the presence of:


_____          _____
Witness                         Individually and as authorized
                                representative of Winn-Dixie
                                Stores, Inc.
_____          Print Name: _____
Witness                         Print Title: _____

STATE OF FLORIDA
COUNTY OF _____

     Sworn to and subscribed before me this ___ day of _____,
2005 by _____, who is personally known to
me or who has produced a Florida Driver's License as
identification.


                        _____
                        Notary Public

                        _____
(SEAL)           Print Notary Name Here

     SIGNED and SEALED this ____ day of _____, 2005 in the
presence of:


_____


1450291/1
0772-59336

**Exhibit B**

9

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

### ORDER APPROVING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS WITH CERTAIN OF DEBTORS' PROPERTY INSURERS

These cases came before the Court for hearing on November 18, 2005, upon the motion of Winn-Dixie Stores, Inc. ("WDSI") and certain of its subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order authorizing and approving a Settlement Agreement and Release,[1] by WDSI on behalf of itself and its affiliated companies in favor of Zurich American Insurance Company; ACE American Insurance Company; and Underwriters at Lloyds London, FR White Syndicate Number No. 0190 and Wellington Syndicate No. 2020 c/o Marsh Limited (the "Motion"). The Court has reviewed the Motion and considered the representations of counsel. Based upon the representations of counsel and without objection by the United States Trustee or any other interested parties, and after due deliberation and finding proper notice has been given, the Court determines that good cause exists to grant the relief and that granting the relief is in the best interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.      The Motion is granted.

2.      The Settlement Agreement and Release is approved.

---

[1]      All capitalized terms not otherwise defined in this order shall have the meaning ascribed to them in the Motion.

3.      The Debtors are authorized to take any and all actions that may be

required to implement the settlement described in the Settlement Agreement and Release.

4.      The Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

Dated _____, 2005 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.