**Hearing Date: November 17, 2005, 1:00 p.m.**
**Objection Deadline: November 10, 2005, 4:00 p.m.**

### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) | *Chapter 11* |
| Debtors.[1] | ) | Jointly Administered |

### DEBTORS' MOTION FOR ORDER
### (I) AUTHORIZING AND APPROVING POST-PETITION
### PREMIUM FINANCE AGREEMENT BETWEEN DEBTORS
### <u>AND AFCO PREMIUM CREDIT LLC AND (II) GRANTING RELATED RELIEF</u>

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and

debtors-in-possession  (collectively, the "Debtors"), move for entry of an order under 11 U.S.C.

§§ 105, 363 and 364 authorizing and approving the Debtors' entry into a post-petition

commercial premium finance agreement (the "Premium Finance Agreement") with AFCO

Premium Credit LLC ("AFCO").  In support of this Motion, the Debtors respectfully represent as

follows:

### <u>Background</u>

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions

for reorganization relief under chapter 11 of title 11 the United States Code, 11 U.S.C. §§ 101-

1330 as amended (the "Bankruptcy Code").

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2.      The Debtors operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases.  Subsequently, on August 17, 2005, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee").

3.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.   As of the Petition Date, the Debtors were considered to be the eighth-largest food retailer in the United States and one of the largest in the Southeast, with more than 900 stores in the United States.  Since the Petition Date, the Debtors have been engaged in a footprint reduction program to sell or close 326 of their stores.  To date, the Debtors have sold or closed over 300 stores.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested are sections 105, 363 and 364 of the Bankruptcy Code.

### Relief Requested

6.      On May 19, 2005, the Bankruptcy Court entered an Order Under 11 U.S.C. §§ 105, 363 and 364 (i) Authorizing and Approving Post-Petition Premium Finance Agreement Between Debtors and AFCO Premium Credit LLC and (ii) Granting Related Relief (Docket No.

1320) (the "Initial AFCO Order"), which order (a) approved the Debtors' entry into a premium finance agreement with AFCO for property insurance and (b) authorized the Debtors' entry into future "substantially similar" premium finance agreements with AFCO without obtaining separate Court approval, provided that the Debtors complied with certain notice procedures designed to afford the Debtors' key creditor constituents and the U.S. Trustee with an opportunity to object.  Although the Premium Finance Agreement which is the subject of this Motion is similar in many respects to the premium finance agreement that was the subject of the Initial AFCO Order, some aspects of the payment terms are different, and  the Debtors have filed this Motion in order to provide full notice to all interested parties.

7.      Accordingly, by this Motion, the Debtors request that the Court authorize and approve the Debtors' entry into the Premium Finance Agreement with AFCO, a copy of which is attached as Exhibit A.  As set forth in the Premium Finance Agreement, the Debtors seek to finance approximately $2.3 million in premiums for fiduciary liability insurance, fidelity coverage insurance and employment practices liability insurance.  The insurance coverage was obtained from a number of insurers and varies in several respects, including its duration.  Although all of the insurance coverage begins on November 1, 2005, the fiduciary liability policies will provide coverage for a nine-month period, and the fidelity coverage and employment practices liability policies will provide coverage for a one-year period.  In accordance with the Premium Finance Agreement, the Debtors will be required to make a down payment in the amount of approximately $800,000.  Thereafter, the Debtors will be required to make 7 monthly payments of approximately $216,000 each.

8.      As a condition to entering into the Premium Finance Agreement, AFCO requires the Debtors to obtain an order of this Court specifically providing many of the following terms:

(a)     Pursuant to 11 U.S.C. § 364(c)(2), the Debtors are authorized to enter into the Premium Finance Agreement with AFCO.

(b)     AFCO is granted a first and only priority security interest in (i) any and all unearned premiums and dividends (the "Unearned Premiums") which may become payable under those policies set forth in the "Schedule of Policies" annexed to the Premium Finance Agreement (the "Policies"); and (ii) loss payments which reduce the Unearned Premiums, subject to any beneficiary, mortgagee, landlord or loss payee interests and subject and subordinate to the senior rights of the Debtors' postpetition secured lender.

(c)     The Debtors are authorized to pay AFCO all sums due pursuant to the Premium Finance Agreement with respect to the Policies.

(d)     The full rights of AFCO pursuant to the Premium Finance Agreement and controlling state law are fully preserved and protected, and will remain unimpaired by the pendency of the bankruptcy case or any subsequent conversion of this proceeding to chapter 7 or any subsequent appointment of a trustee.  Except as set forth in the Order, the Debtors' rights are not waived, prejudiced, or forfeited in any manner, and are hereby reserved for the benefit of the estates.

(e)     In the event that the Debtors default upon any of the terms of the Premium Finance Agreement, then, upon no less than ten days' written notice to the Debtors and its counsel, counsel for the Creditors' Committee, and to counsel for the Debtors' postpetition secured lender, the automatic stay shall be modified without further application to (or order by) the Court unless the Debtors cure the default within such ten-day period, and AFCO may exercise such rights as it may otherwise have under state law, but for the pendency of the Debtors' bankruptcy cases, and, without the necessity of further application to this Court, cancel all Policies listed on the Premium Finance Agreement or any amendment thereto, and receive and apply all Unearned Premiums to the account of the Debtors.  In the event that, after such application of unearned premiums, any sums still remain due to AFCO pursuant to the Premium Finance Agreement, such deficiency shall be deemed an administrative expense of the Debtors' estates.  In the event that, after such application of unearned premiums, there are any funds in excess of the sum then due that are obtained by AFCO, AFCO shall pay to the Debtors such excess amount.

9.      In addition to entering an order containing the foregoing terms, the Debtors request that the Court authorize them, without further order, to enter into additional premium finance agreements having substantially similar terms to the Premium Finance Agreement, as necessary during the remaining pendency of these cases in connection with the renewal or replacement of these Policies or other commercial insurance policies of the Debtors.  The Debtors recognize that the type and duration of coverage as well as the premium payable and repayment terms of any such additional agreements may vary.  Nevertheless, the Debtors wish to ensure that, to the extent they may wish to finance other insurance policies through AFCO or another comparable premium financing source during the pendency of these cases (and to the extent that any such future premium financing agreement is not "substantially similar" to the financing agreement that was the subject of the Initial AFCO Order and, thus, not covered by such order), they will be able to do so as efficiently as possible.

10.      Accordingly, the Debtors request that the Court provide them with the authority to enter into additional substantially similar premium finance agreements with AFCO or another source of premium financing, for the renewal or replacement of these Policies or other commercial insurance policies of the Debtors.  The Debtors' request is subject to the condition that (a) the Debtors provide notice to the U.S. Trustee, counsel for the Creditors Committee, counsel for the Equity Committee and counsel for the Debtors' post-petition secured lenders, and (b) such notice parties indicate their approval of the new agreements by not objecting within ten (10) business days of receipt of the notice.  In the event of any objection from the notice parties, the Debtors will proceed with the new agreements only if approved by subsequent order of this Court.

**Basis for Relief**

11.    The Debtors' entry into the Premium Finance Agreement is an ordinary course of business transaction that they may undertake under section 363(c) of the Bankruptcy Code but for the limitations contained in section 364(c)(2) of the Bankruptcy Code.  Section 364(c)(2) governs secured post-petition financings.  It provides that a debtor unable to obtain post-petition financing on an unsecured basis may obtain financing secured by a lien on property not otherwise secured in favor of any party.  The security interests to be granted to AFCO in Unearned Premiums under any financed insurance policy require Court approval of the Premium Finance Agreement as a secured financing under 364(c)(2).  Section 364(c)(2) is satisfied in these cases because the Debtors are not able to obtain unsecured credit to finance the insurance premiums.  Moreover, the Debtors believe that the financing offered under the Premium Finance Agreement is more favorable to the Debtors' estates than would be a draw under the Debtors' post-petition financing facility and is well suited to facilitate the Debtors' cash flow management practices.

12.    To the extent that the Debtors' entry into the Premium Finance Agreement is considered to be a transaction outside the ordinary course and requiring prior approval on that basis, the Debtors assert that the necessary approval may be granted under section 363(b) of the Bankruptcy Code.  Section 363(b) permits a debtor to use property of the estate "other than in the ordinary course of business," after notice and a hearing.  Approval under section 363(b) is appropriate where the debtor demonstrates a sound business justification for seeking such relief.  In these cases, the Debtors have determined that entry into the Premium Finance Agreement is not only a valid, but also a necessary exercise of their business judgment.  The Debtors require the Policies to (a) protect the trustees of the Debtors' pension and benefit plans from liability

arising out of their management of such plans, (b) protect the Debtors from liability arising from

employee dishonesty, and (c) protect the Debtors from claims asserted by employees alleging

injury based upon the Debtors' employment practices.  The maintenance of these Policies is

imperative to the Debtors' business and the Policies are substantially similar to the types of

policies obtained by other companies.  The Debtors' decision to finance the premiums rather than

pay them in full at the commencement of the policy period is consistent with the Debtors' cash

flow management practices.  Moreover, the financing offered under the Premium Finance

Agreement is more favorable to the Debtors' estates than would be a draw under the Debtors'

post-petition financing facility.

13.      In view of the importance of maintaining insurance coverage with respect to the

activities covered by the Policies and preserving the Debtors' cash flow by financing the

premiums due on the Policies, it would be in the best interests of the Debtors' estates and

creditors to enter into the Premium Finance Agreement both with respect to the Policies and any

renewal or replacement policies required during the remaining pendency of these cases.  As set

forth above, AFCO will only finance premiums on the terms set forth in the Premium Finance

Agreement, including the security interest in Unearned Premiums, and with the protections

described.  Lastly, the Debtors have concluded that they would be unable to obtain unsecured

credit in connection with the financing of the Policies.

## **Notice**

14.      Notice of this Motion has been provided to (a) counsel to the Office of the United

States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the

Creditors' Committee, (d) counsel to the Equity Committee, (e) the other parties in interest

named on the Master Service List maintained in these cases, and (f) AFCO.  The Debtors submit

that no other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court

(i) enter an order substantially in the form attached as Exhibit B (a) authorizing and approving

the Debtors' entry into the Premium Finance Agreement with AFCO with respect to premiums

for the Policies, and (b) consistent with the procedures outlined in this Motion, authorizing the

Debtors upon notice but without further order to enter into substantially similar post-petition

premium finance agreements with respect to the renewal or replacement of these Policies or

other commercial insurance policies of the Debtors as necessary during the remainder of these

cases, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: October 28, 2005


SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By    _s/ D. J. Baker_                          By    _s/ Cynthia C. Jackson_
        D. J. Baker                                     Stephen D. Busey
        Sally McDonald Henry                            James H. Post
        Rosalie Walker Gray                             Cynthia C. Jackson,
        Adam S. Ravin                                   Florida Bar Number 498882
Four Times Square                              225 Water Street, Suite 1800
New York, New York 10036                       Jacksonville, Florida  32202
(212) 735-3000                                 (904) 359-7700
(212) 735-2000 (facsimile)                     (904) 359-7708 (facsimile)
djbaker@skadden.com                            cjackson@smithhulsey.com

Co-Counsel for Debtors                         Co-Counsel for Debtors

**Exhibit A**

# Premium Finance Agreement
## AFCO PREMIUM  CREDIT LLC
A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.
2951 FLOWERS ROAD SOUTH, SUITE #132,  ATLANTA, GA 30341
TEL. NOS. (770) 455-4850  (800) 288-5410

(CHECK APPROPRIATE BOX)
☐ PERSONAL
☒ COMMERCIAL

| | | | | |
|---|---|---|---|---|
| **A** | **TOTAL PREMIUMS** $ 2,293,407.00 | **AGENT** (NAME & PLACE OF BUSINESS) | **PRODUCER CODE NO.** 63-10-01006-0 | **INSURED** (NAME & RESIDENCE OR BUSINESS ADDRESS) |
| **B** | **DOWN PAYMENT** $ 802,692.00 | MARSH USA INC Attn: KAY HOEY 3475 PIEDMONT ROAD STE 1200 ATLANTA, GA ZIP CODE 30305___ (404) 760-0112 | | WINN-DIXIE STORES, INC.  (Debtor in Possession Attn: DALE BITTER  Case No. 05-03817-3F1) 5050 EDGEWOOD COURT JACKSONVILLE, FL ZIP CODE 32254__ |

| | | | | | |
|---|---|---|---|---|---|
| **C** | **AMOUNT FINANCED** (A Minus B) $ 1,490,715.00 | **PAYMENT SCHEDULE** | | | |
| | | **NUMBER OF PAYMENTS** 7(Monthly) | **AMOUNT OF PAYMENTS** 216,667.97 | **WHEN PAYMENTS ARE DUE*** | |
| | | | | FIRST INSTALLMENT DUE 12/01/2005 | INSTALLMENT DUE DATES 1st |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **D** | **FINANCE CHARGE** $ 25,960.79 | **SCHEDULE OF POLICIES** | | | | | |
| | | POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY/ ANNUAL INSTALLMENT | NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL OR POLICY ISSUING AGENT | TYPE OF COVER | MONTHS COVERED BY PREMIUM | PREMIUM $ |
| **E** | DOCUMENTARY STAMP TAX $ | | 11/01/2005 | SEE ATTACHED ADDENDA A&B  The terms of this Agreement are continued on Addenda A & B, annexed hereto and made a part hereof.  Insured`s Initials    X------------------ | MISC | 12 | 2,293,407.00 |
| **F** | TOTAL OF PAYMENTS (C + D + E) $ 1,516,675.79 | | | | | | |
| **G** | **ANNUAL PERCENTAGE RATE** 5.202% | LBM | | | | | |
| | | **TOTAL PREMIUMS must agree with Block "A" Above ---> TOTAL $** | | | | | 2,293,407.00 |

## SECURITY AGREEMENT

**1. DEFINITIONS:**     The above named insured ("the insured") is  the debtor. AFCO Premium Credit LLC ("AFCO"), a joint venture of AFCO Credit Corporation and Marsh USA Inc., is the lender to whom the debt is owed. Singular words shall mean plural and vice versa as may be required in order to give the Agreement  meaning.  "Insurance company or company", "insurance policy or policy" and "premium" refer to those items listed under "Schedule of Policies".

**NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW,  YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

**THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT**
X_____

Date _____

_____
**SIGNATURE OF INSURED(S) OR DULY AUTHORIZED AGENT OF INSURED(S)**

## PRODUCER'S REPRESENTATIONS

The undersigned warrants and agrees:
(1) the insured has received a copy of this Agreement, and the Required Federal Truth-in-Lending Disclosures for Personal Lines Insurance, if applicable, (2) the policies are in full force and effect and the information in the schedule of policies and the premiums are correct, (3) the insured has authorized this transaction and recognizes the security interest assigned herein, (4) to hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly, indirectly, actually or constructively by any of the insurance companies and to pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured and that any lien the undersigned now has or hereafter may acquire on any return premium arising out of the above listed insurance policies is subordinated to AFCO's lien or security interest therein, (5) there are no exceptions to the policies financed other than those indicated and the policies comply with AFCO's eligibility requirements, (6) no Audit or Reporting Form Policies, policies subject to Retrospective  Rating or to minimum earned premiums are included except as indicated and that the Deposit or Provisional Premiums are not less than anticipated premiums to be **Indicate Policy & Prefix** earned for the full term of the policies, if policy is subject to minimum earned premium, it is $_____, **Number of Exceptions**
 (7) the policies can be cancelled by the insured or the company on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (8) the undersigned represents that a proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the named insured or if the named insured is the subject of such a proceeding, it is noted on the Premium Finance Agreement in the space in which the insured's name and address is placed.

Date _____    X_____
**SIGNATURE OF AGENT OR BROKER**

Page 1 of 2

## REMAINING PROVISIONS OF SECURITY AGREEMENT

**2. ASSIGNMENT OF AGREEMENT:** This agreement will be assigned and transferred to and serviced by AFCO Credit Corporation.

**3. PROMISE OF REPAYMENT:** The insured requests AFCO to pay the premiums on the policies shown above. The insured promises to pay to AFCO at its office the amount stated in Block F above, according to the Payment Schedule shown above subject to the rest of this contract.

**4. SECURITY INTEREST:** See "**" below.

**5. DEFAULT CHARGES:** If the insured is more than 5 days late in making an installment payment to AFCO, then the insured will pay to AFCO, in addition to the delinquent installment, a default charge of 5% of the unpaid balance of the delinquent installment or $10, whichever is greater.  If the loan is primarily for personal, family or household purposes, the default charge shall not exceed $10.

**6. FINANCE CHARGE:** The finance charge shown in Box D begins to accrue as of the earliest policy effective date.

**7. THIS AGREEMENT BECOMES A CONTRACT:** This Agreement becomes a binding contract when AFCO mails a written acceptance to the insured.

**8. WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees.

**9. CANCELLATION:** AFCO may cancel the insurance policies financed herein and the unpaid balance due to AFCO shall be immediately payable by the insured if, upon 10 days written notice to the insured, the insured does not pay any installment according to the terms of this Agreement.  AFCO, at its option, may enforce payment of this debt without recourse to the security given to AFCO.

**10. POWER OF ATTORNEY:** The insured appoints AFCO its Attorney-in-Fact with full authority to cancel the insurance policies financed herein for nonpayment of premium.

**11. MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's Notice of Cancellation of the insurance policies has been mailed may be credited to the insured's account without affecting the acceleration of this Agreement and without any liability or obligation on AFCO's part to request the reinstatement of the cancelled insurance polices.  Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to the insured or the insured's agent for the benefit of the insured.  No refund of less than $1.00 shall be made.  If there is a balance due after AFCO receives the unearned premiums, dividends or loss payments from the insurance company then the insured will pay the balance to AFCO with interest at the rate shown in this contract.

**12. REFUNDS:** The insured will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to the Rule of 78s subject to a $20 nonrefundable charge.  If the refund is less than $1, no refund shall be made.

**13. INSURANCE AGENT OR BROKER:** AFCO makes no warrantees or representations concerning the financed insurance coverage nor has it played any part in the selection, structuring or acquisition of such coverage.  This Agreement represents the entire understanding of the parties.  AFCO has not authorized any party whatsoever to make any representations, commitments or promises or to play any role with respect to this premium finance transaction other than completing this contract on behalf of the insured.

**14. SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or subject to retrospective rating, then the insured promises to pay the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

**15. CANCELLATION CHARGES:** If AFCO cancels the insurance policies, then the insured will pay AFCO a cancellation charge equal to the difference between $10 and the default charge.

**16. ATTORNEY FEES:** If, for collection, this Agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay the attorney fees but no more than 20% of the amount due and payable under this Agreement.

**17. SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured agrees not to assign the policy without AFCO's written consent except for the interest of mortgagees and loss payees.

**18. MISSING INFORMATION:** If the policy has not been issued at the time of signing this Agreement, then the insured agrees the name of the insurance company, and the policy numbers of the insurance policies may be left blank and may be subsequently inserted in this Agreement.  AFCO will notify the insured of this information on its written Notice of Acceptance.

**19. ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. AFCO's payment shall not be applied by the insurance company to pay for any additional premiums owed by the insured as a result of any type of misclassification of the risk.  The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign to the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.

**20. AGENT'S WARRANTIES:** To convince AFCO to enter this Agreement and accept the security underlying this Agreement, the person executing this Agreement, if not the insured, warrants severally and as the duly authorized agent of the insured:  that he is the duly authorized agent of the insured appointed specifically to enter into this transaction on the insured's behalf; that he can perform any act the insured could or should perform with respect to this transaction; that he will hold in trust for AFCO any payments made or credited to the insured through the undersigned or to the undersigned, directly, indirectly, actually or constructively, by any of the insurance companies and that he will pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured.

**21. LAW GOVERNING THIS AGREEMENT:** The insured agrees that this Agreement shall be governed by the laws of the State of Florida.

**22. DISHONORED CHECK:** If an insured's check is returned because of insufficient funds to pay it, AFCO may impose a charge of $10.

**23. ENDORSEMENTS:** The insured agrees that AFCO may endorse his or her name on any check or draft for all monies that may become due from the insuring company and apply the same as payment of this Agreement returning any excess to his or her agent, provided that if such excess is in an amount less than $1 no refund shall be made.

** The insured assigns to AFCO as security for the total amount payable in this Agreement (a) any and all unearned premiums and dividends which may become payable under the insurance policies; and (b) loss payments which reduce the unearned premiums, subject and subordinate to  (i) any beneficiary, mortgagee, landlord or loss payee interests and (ii) the senior rights of the insured's postpetition secured lender.

Insured's Initials

**ADDENDUM  A**                          **WINN DIXIE STORES INC**


The policies set forth below were placed by Marsh USA Inc. on behalf of the insured.
Marsh USA Inc. makes the Broker Representations set forth on the facing page of the Premium Finance Agreement to which this Attachment A is attached, as the same may have been modified or amended by agreement between Marsh USA Inc. and AFCO Credit Corporation, only with respect to the policies listed below.


**SCHEDULE OF POLICIES**

| EFF. DATE | INSURANCE CO. | POLICY NUMBER | COVERAGE | TERM | PREMIUM |
|---|---|---|---|---|---|
| 11/1/05 | National Union Fire Ins Co | | XSFiduciary | 9 | 187,500 |
| 11/1/05 | RLI Ins Co | | XSFiduciary | 9 | 165,084 |
| 11/1/05 | Federal Ins Co | | Fiduciary | 9 | 213,180 |
| 11/1/05 | Federal Ins Co | | Crime | 12 | 60,000 |
| 11/1/05 | Illinois National Ins Co | | EPL | 12 | 639,000 |
| 11/1/05 | Zurich American | | XSEPL | 12 | 470,475 |
| 11/1/05 | National Union Fire | | XSCrime | 12 | 38,948 |
| | **TOTAL** | | | | **$1,774,187** |


**MARSH USA INC.**

SIGNATURE: _____

TITLE:_____

DATE:_____

**ADDENDUM  B**                    **WINN DIXIE STORES INC**

The policies set forth below were placed by Marsh Global Markets (Bermuda) Ltd. on behalf of the insured.  By its signature below, Marsh Global Markets (Bermuda) Ltd. makes the Agent or Broker Representations set forth on the facing page of the Commercial Premium Finance Agreement to which this Attachment B is attached, as the same may have been modified or amended by agreement between Marsh USA Inc. and AFCO Credit Corporation, only with respect to the policies listed below.

**SCHEDULE OF POLICIES**

| EFF. DATE | INSURANCE CO. | POLICY NUMBER | COVERAGE | TERM | PREMIUM |
|-----------|---------------|---------------|----------|------|---------|
| 11/1/05 | XL Ins Co Ltd | | XSEPL | 12 | 391,500 |
| 11/1/05 | Hanseatic Ins Co | | XSEPL | 12 | 47,048 |
| 11/1/05 | Starr Excess Liab Ins | | XSEPL | 12 | 80,672 |
| | | | | | |
| | **TOTAL** | | | | **$519,220** |

# MARSH GLOBAL MARKETS (BERMUDA) LTD

SIGNATURE:_____

TITLE:_____

DATE:_____

**ADDENDUM C**            **WINN DIXIE STORES INC**

The Insured and twenty-three of its subsidiaries (collectively, the "Debtors") are debtors-in-possession in a bankruptcy case pending in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") bearing Case Number 05-03817-3F1 (the "Bankruptcy Case"). Notwithstanding the payment schedule set forth herein, and unless otherwise agreed by the parties in a signed writing, the Insured shall remit to AFCO any then-outstanding loan balance under this Premium Financing Agreement upon the earliest to occur of (a) the date upon which the final installment payment is scheduled to be made under this Premium Finance Agreement; (b) the twenty-fifth day after the Bankruptcy Court's approval, pursuant to section 1125(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), of a disclosure statement in the Bankruptcy Case; (c) the tenth day after the filing of a motion under section 1104 of the Bankruptcy Code seeking the appointment of a trustee in the Bankruptcy Case; (d) the tenth day after the filing of a motion under section 1112 of the Bankruptcy Code seeking the conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; or (e) the tenth day after the filing by the Debtors of a motion seeking to sell outstanding securities or voting rights which result in ownership or voting control by the purchaser of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or managers of the Insured.  The Insured shall promptly notify AFCO of (a) the Bankruptcy Court's approval of the Disclosure Statement or (b) the filing of any of the motions referenced in this paragraph.

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
|  | ) |  |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) | *Chapter 11* |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

**ORDER (I) AUTHORIZING AND APPROVING POST-PETITION**
**PREMIUM FINANCE AGREEMENT BETWEEN DEBTORS**
<u>**AND AFCO PREMIUM CREDIT LLC AND (II) GRANTING RELATED RELIEF**</u>

These cases came before the Court for hearing on November 17, 2005, upon the

motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries, debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors")[1], for entry of an order under

11 U.S.C. §§ 105, 363 and 364 authorizing and approving the Debtors' entry into a post-petition

commercial premium finance agreement attached as Exhibit A (the "Agreement") with AFCO

Premium Credit LLC ("AFCO") and granting related relief (the "Motion").  The Court has read

the Motion and considered the representations of counsel.  Based upon the representations of

counsel and without objection by the United States Trustee or any other interested parties, it is

ORDERED AND ADJUDGED THAT:

1.    The Motion is granted to the extent provided by this Order.

2.    Pursuant to section 364(c)(2) of the Bankruptcy Code, the Debtors are

authorized to enter into the Agreement.

3.    AFCO is granted a first and only priority security interest in:

(a)    any and all unearned premiums and dividends which may become payable
under the Policies for whatever reason; and

---

[1]      All capitalized terms not otherwise defined shall have the meaning ascribed to them in the Motion.

     (b)     loss payments which reduce the unearned premiums, subject and subordinate to (i) any beneficiary, mortgagee, landlord or loss payee interests and (ii) the senior rights of the Debtors' postpetition secured lender.

4.     The Debtors are authorized to pay AFCO all sums due pursuant to the Agreement with respect to the Policies.

5.     The complete rights of AFCO pursuant to the Agreement and controlling state law are fully preserved and protected and are and shall remain unimpaired by the pendency of the Debtors' bankruptcy cases or any subsequent conversion of the cases to a Chapter 7 or any subsequent appointment of a trustee.  Except as set forth in this Order, the Debtors' rights are not waived, prejudiced, or forfeited in any manner, and are reserved for the benefit of the estates.

6.     In the event that the Debtors default upon any of the terms of the Agreement, then, upon not less than ten days' written notice to (a) the Debtors and its counsel, (b) counsel for the Creditors' Committee (via facsimile c/o Matthew Barr, Milbank, Tweed, Hadley & McCloy LLP (212) 822-5194), (c) counsel to the Debtors' post-petition secured lender (via facsimile c/o Jonathan N. Helfat, Otterbourg, Steindler, Houston & Rosen, P.C., (212) 682-6104), (d) counsel to the Equity Committee (via facsimile c/o Karol K. Denniston, Paul Hastings, (404) 685-5347) and (e) the U.S. Trustee (via facsimile c/o Elena Escamilla, (407) 648-6323), the automatic stay shall be modified without further application to (or order by) the Court unless the Debtors cure the default within such ten-day period.  In addition, in that event, AFCO may exercise such rights as it may otherwise have under state law, but for the pendency of the Debtors' bankruptcy cases and, without the necessity of further application to the Bankruptcy Court.  These rights include the right to cancel all Policies listed on the Agreement or any amendment to the Agreement, and receive and apply all unearned insurance premiums to the account of the Debtors.  In the event that, after such application of unearned premiums, any sums

still remain due to AFCO pursuant to the Agreement, such deficiency shall be deemed an administrative expense of the Debtors' estates under 11 U.S.C. § 503(b). In the event that, after such application of unearned premiums, there are any funds in excess of the sum then due that are obtained by AFCO, AFCO shall pay to the Debtors such excess amount.

7.      The Debtors are authorized, without further order, to enter into additional premium finance agreements with AFCO, or another premium financing source, having substantially similar terms to the Agreement as necessary during the remaining pendency of these cases, on the condition that (a) the Debtors provide notice thereof to the U.S. Trustee (via facsimile c/o Elena Escamilla, (407) 648-6323), counsel for the Creditors' Committee counsel for the Debtors' post-petition secured lender, and counsel to Equity Committee and (b) such notice parties indicate their approval of the new agreements by not objecting thereto within ten business days of receipt of the notice. In the event of any objection from the notice parties, the Debtors shall proceed with the new agreements only if approved by subsequent order of this Court. It should be recognized that an additional premium finance agreement sought to be approved under this provision may satisfy the "substantially similar" test outlined in the Motion, notwithstanding that the type and duration of coverage as well as the premium payable and repayment terms contained in any such additional agreements vary from the Agreement. To the extent that the Debtors, pursuant to the procedure described in this paragraph, obtain authorization to secure premium financing from a financing source other than AFCO, all of the protections afforded to AFCO under this Order will apply with equal force and effect to such financing source.

8.      Notwithstanding anything to the contrary contained in the Agreement, AFCO shall only have a first priority lien in and upon the unearned premiums arising under the insurance policies financed by AFCO as authorized by this Order and the dividends relating

exclusively to such unearned premiums.  Except as set forth in the preceding sentence, nothing contained in this Order or otherwise, including, without limitation, the Agreement, shall, or shall be construed to, limit, subordinate or adversely affect in any way any of the liens, rights, claims and/or priorities granted to Wachovia Bank, N.A., as agent ("Agent") for the Debtors' secured post-petition lenders (collectively, "Lenders"), under (a) the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral, and Granting Adequate Protection, (III) Authorizing Debtors to Pay In Full all Claims of Debtors' Pre-Petition Secured Lenders, and (IV) Prescribing Form and Manner of Notice and Time for Final Hearing, dated March 23, 2005 (Docket No. 501) (as the same may hereafter be amended, modified or extended, the "Financing Order"), the Loan Documents (as defined in the Financing Order) and (b) any applicable law or otherwise.

9.     The costs underlying the payments made under the Agreement will be reconciled and allocated internally amongst the Debtors and their other subsidiaries based on the coverage provided under the underlying insurance policies.  To the extent that any such reconciliation reveals that a non-debtor subsidiary has been provided with coverage under the underlying insurance policies, the Debtors shall be required to obtain payment from such non-debtor in an amount equal to the non-debtor's proportionate share of the premiums paid under the policies.

10.     The Court retains jurisdiction to (i) enforce and implement the terms and provisions of the Agreement, (ii) resolve any disputes arising under or in connection with the

Agreement and related documents, and (iii) interpret, implement, and enforce the provisions of this Order.

11.    Notwithstanding Bankruptcy Rule 4001 and 6004(g), the parties may consummate the transactions contemplated by the Agreement immediately upon entry of this Order.

Dated            _____, 2005 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge


Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

**<u>Exhibit A</u>**

# Premium Finance Agreement
## AFCO PREMIUM CREDIT LLC
A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.

2951 FLOWERS ROAD SOUTH, SUITE #132, ATLANTA, GA 30341
TEL. NOS. (770) 455-4850  (800) 288-5410

(CHECK APPROPRIATE BOX)
☐ PERSONAL
☒ COMMERCIAL

| | | | | | | |
|---|---|---|---|---|---|---|
| **A** | TOTAL PREMIUMS<br>$ 2,293,407.00 | AGENT<br>(NAME & PLACE OF BUSINESS) | PRODUCER CODE NO.<br>63-10-01006-0 | INSURED<br>(NAME & RESIDENCE OR BUSINESS ADDRESS) | | |
| **B** | DOWN PAYMENT<br>$ 802,692.00 | MARSH USA INC<br>Attn: KAY HOEY<br>3475 PIEDMONT ROAD STE 1200<br>ATLANTA, GA<br>ZIP CODE 30305 __ (404) 760-0112 | | WINN-DIXIE STORES, INC. (Debtor in Possession<br>Attn: DALE BITTER  Case No. 05-03817-3F1)<br>5050 EDGEWOOD COURT<br>JACKSONVILLE, FL<br>ZIP CODE 32254 __ | | |

| | AMOUNT FINANCED (A Minus B) | PAYMENT SCHEDULE | | |
|---|---|---|---|---|
| **C** | $ 1,490,715.00 | **NUMBER OF PAYMENTS**<br>7(Monthly) | **AMOUNT OF PAYMENTS**<br>216,667.97 | **WHEN PAYMENTS ARE DUE***<br>FIRST INSTALLMENT DUE: 12/01/2005 / INSTALLMENT DUE DATES: 1st |

| | | SCHEDULE OF POLICIES | | | | | |
|---|---|---|---|---|---|---|---|
| **D** | FINANCE CHARGE<br>$ 25,960.79 | POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY/ ANNUAL INSTALLMENT | NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL OR POLICY ISSUING AGENT | TYPE OF COVER | MONTHS COVERED BY PREMIUM | PREMIUM $ |
| **E** | DOCUMENTARY STAMP TAX<br>$ | | 11/01/2005 | SEE ATTACHED ADDENDA A&B<br><br>The terms of this Agreement are continued on Addenda A & B, annexed hereto and made a part hereof.<br><br>Insured`s Initials   X------------------ | MISC | 12 | 2,293,407.00 |
| **F** | TOTAL OF PAYMENTS (C + D + E)<br>$ 1,516,675.79 | | | | | | |
| **G** | ANNUAL PERCENTAGE RATE<br>5.202% | | LBM | | | | |
| | | **TOTAL PREMIUMS must agree with Block "A" Above ---> TOTAL $** | | | | | 2,293,407.00 |

## SECURITY AGREEMENT

**1. DEFINITIONS:**   The above named insured ("the insured") is the debtor. AFCO Premium Credit LLC ("AFCO"), a joint venture of AFCO Credit Corporation and Marsh USA Inc., is the lender to whom the debt is owed. Singular words shall mean plural and vice versa as may be required in order to give the Agreement meaning. "Insurance company or company", "insurance policy or policy" and "premium" refer to those items listed under "Schedule of Policies".

**NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

**THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT**
X_____

Date _____   _____
**SIGNATURE OF INSURED(S)
OR DULY AUTHORIZED AGENT OF INSURED(S)**

## PRODUCER'S REPRESENTATIONS

The undersigned warrants and agrees:
(1) the insured has received a copy of this Agreement, and the Required Federal Truth-in-Lending Disclosures for Personal Lines Insurance, if applicable, (2) the policies are in full force and effect and the information in the schedule of policies and the premiums are correct, (3) the insured has authorized this transaction and recognizes the security interest assigned herein, (4) to hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly, indirectly, actually or constructively by any of the insurance companies and to pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured and that any lien the undersigned now has or hereafter may acquire on any return premium arising out of the above listed insurance policies is subordinated to AFCO's lien or security interest therein, (5) there are no exceptions to the policies financed other than those indicated and the policies comply with AFCO's eligibility requirements, (6) no Audit or Reporting Form Policies, policies subject to Retrospective Rating or to minimum earned premiums are included except as indicated and that the Deposit or Provisional Premiums are not less than anticipated premiums to be **Indicate Policy & Prefix** earned for the full term of the policies, if policy is subject to minimum earned premium, it is $_____, **Number of Exceptions** (7) the policies can be cancelled by the insured or the company on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (8) the undersigned represents that a proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the named insured or if the named insured is the subject of such a proceeding, it is noted on the Premium Finance Agreement in the space in which the insured's name and address is placed.

Date _____   X_____
**SIGNATURE OF AGENT OR BROKER**

**REMAINING PROVISIONS OF SECURITY AGREEMENT**

**2. ASSIGNMENT OF AGREEMENT:** This agreement will be assigned and transferred to and serviced by AFCO Credit Corporation.

**3. PROMISE OF REPAYMENT:** The insured requests AFCO to pay the premiums on the policies shown above. The insured promises to pay to AFCO at its office the amount stated in Block F above, according to the Payment Schedule shown above subject to the rest of the terms of this contract.

**4. SECURITY INTEREST:** See "**" below.

**5. DEFAULT CHARGES:** If the insured is more than 5 days late in making an installment payment to AFCO, then the insured will pay to AFCO, in addition to the delinquent installment, a default charge of 5% of the unpaid balance of the delinquent installment or $10, whichever is greater. If the loan is primarily for personal, family or household purposes, the default charge shall not exceed $10.

**6. FINANCE CHARGE:** The finance charge shown in Box D begins to accrue as of the earliest policy effective date.

**7. THIS AGREEMENT BECOMES A CONTRACT:** This Agreement becomes a binding contract when AFCO mails a written acceptance to the insured.

**8. WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees.

**9. CANCELLATION:** AFCO may cancel the insurance policies financed herein and the unpaid balance due to AFCO shall be immediately payable by the insured if, upon 10 days written notice to the insured, the insured does not pay any installment according to the terms of this Agreement. AFCO, at its option, may enforce payment of this debt without recourse to the security given to AFCO.

**10. POWER OF ATTORNEY:** The insured appoints AFCO its Attorney-in-Fact with full authority to cancel the insurance policies financed herein for nonpayment of premium.

**11. MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's Notice of Cancellation of the insurance policies has been mailed may be credited to the insured's account without affecting the acceleration of this Agreement and without any liability or obligation on AFCO's part to request the reinstatement of the cancelled insurance polices. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to the insured or the insured's agent for the benefit of the insured. No refund of less than $1.00 shall be made. If there is a balance due after AFCO receives the unearned premiums, dividends or loss payments from the insurance company then the insured will pay the balance to AFCO with interest at the rate shown in this contract.

**12. REFUNDS:** The insured will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to the Rule of 78s subject to a $20 nonrefundable charge. If the refund is less than $1, no refund shall be made.

**13. INSURANCE AGENT OR BROKER:** AFCO makes no warrantees or representations concerning the financed insurance coverage nor has it played any part in the selection, structuring or acquisition of such coverage. This Agreement represents the entire understanding of the parties. AFCO has not authorized any party whatsoever to make any representations, commitments or promises or to play any role with respect to this premium finance transaction other than completing this contract on behalf of the insured.

**14. SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or subject to retrospective rating, then the insured promises to pay the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

**15. CANCELLATION CHARGES:** If AFCO cancels the insurance policies, then the insured will pay AFCO a cancellation charge equal to the difference between $10 and the default charge.

**16. ATTORNEY FEES:** If, for collection, this Agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay the attorney fees but no more than 20% of the amount due and payable under this Agreement.

**17. SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured agrees not to assign the policy without AFCO's written consent except for the interest of mortgagees and loss payees.

**18. MISSING INFORMATION:** If the policy has not been issued at the time of signing this Agreement, then the insured agrees the name of the insurance company, and the policy numbers of the insurance policies may be left blank and may be subsequently inserted in this Agreement. AFCO will notify the insured of this information on its written Notice of Acceptance.

**19. ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. AFCO's payment shall not be applied by the insurance company to pay for any additional premiums owed by the insured as a result of any type of misclassification of the risk. The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign to the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.

**20. AGENT'S WARRANTIES:** To convince AFCO to enter this Agreement and accept the security underlying this Agreement, the person executing this Agreement, if not the insured, warrants severally and as the duly authorized agent of the insured: that he is the duly authorized agent of the insured appointed specifically to enter into this transaction on the insured's behalf; that he can perform any act the insured could or should perform with respect to this transaction; that he will hold in trust for AFCO any payments made or credited to the insured through the undersigned or to the undersigned, directly, indirectly, actually or constructively, by any of the insurance companies and that he will pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured.

**21. LAW GOVERNING THIS AGREEMENT:** The insured agrees that this Agreement shall be governed by the laws of the State of Florida.

**22. DISHONORED CHECK:** If an insured's check is returned because of insufficient funds to pay it, AFCO may impose a charge of $10.

**23. ENDORSEMENTS:** The insured agrees that AFCO may endorse his or her name on any check or draft for all monies that may become due from the insuring company and apply the same as payment of this Agreement returning any excess to his or her agent, provided that if such excess is in an amount less than $1 no refund shall be made.

\*\* The insured assigns to AFCO as security for the total amount payable in this Agreement (a) any and all unearned premiums and dividends which may become payable under the insurance policies; and (b) loss payments which reduce the unearned premiums, subject and subordinate to  (i) any beneficiary, mortgagee, landlord or loss payee interests and (ii) the senior rights of the insured's postpetition secured lender.

Insured's Initials

**ADDENDUM  A**                          **WINN DIXIE STORES INC**


The policies set forth below were placed by Marsh USA Inc. on behalf of the insured.
Marsh USA Inc. makes the Broker Representations set forth on the facing page of the Premium Finance
Agreement to which this Attachment A is attached, as the same may have been modified or amended by
agreement between Marsh USA Inc. and AFCO Credit Corporation, only with respect to the policies
listed below.


**SCHEDULE OF POLICIES**

| EFF. DATE | INSURANCE CO. | POLICY NUMBER | COVERAGE | TERM | PREMIUM |
|---|---|---|---|---|---|
| 11/1/05 | National Union Fire Ins Co | | XSFiduciary | 9 | 187,500 |
| 11/1/05 | RLI Ins Co | | XSFiduciary | 9 | 165,084 |
| 11/1/05 | Federal Ins Co | | Fiduciary | 9 | 213,180 |
| 11/1/05 | Federal Ins Co | | Crime | 12 | 60,000 |
| 11/1/05 | Illinois National Ins Co | | EPL | 12 | 639,000 |
| 11/1/05 | Zurich American | | XSEPL | 12 | 470,475 |
| 11/1/05 | National Union Fire | | XSCrime | 12 | 38,948 |
| | **TOTAL** | | | | **$1,774,187** |


**MARSH USA INC.**

SIGNATURE: _____

TITLE:_____

DATE:_____

**ADDENDUM  B**                        **WINN DIXIE STORES INC**


The policies set forth below were placed by Marsh Global Markets (Bermuda) Ltd. on behalf of the insured.  By its signature below, Marsh Global Markets (Bermuda) Ltd. makes the Agent or Broker Representations set forth on the facing page of the Commercial Premium Finance Agreement to which this Attachment B is attached, as the same may have been modified or amended by agreement between Marsh USA Inc. and AFCO Credit Corporation, only with respect to the policies listed below.


**SCHEDULE OF POLICIES**

| EFF. DATE | INSURANCE CO. | POLICY NUMBER | COVERAGE | TERM | PREMIUM |
|---|---|---|---|---|---|
| 11/1/05 | XL Ins Co Ltd | | XSEPL | 12 | 391,500 |
| 11/1/05 | Hanseatic Ins Co | | XSEPL | 12 | 47,048 |
| 11/1/05 | Starr Excess Liab Ins | | XSEPL | 12 | 80,672 |
| | | | | | |
| | **TOTAL** | | | | **$519,220** |


# MARSH GLOBAL MARKETS (BERMUDA) LTD


SIGNATURE:_____

TITLE:_____

DATE:_____

**ADDENDUM C**                    **WINN DIXIE STORES INC**

The Insured and twenty-three of its subsidiaries (collectively, the "Debtors") are debtors-in-possession in a bankruptcy case pending in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") bearing Case Number 05-03817-3F1 (the "Bankruptcy Case"). Notwithstanding the payment schedule set forth herein, and unless otherwise agreed by the parties in a signed writing, the Insured shall remit to AFCO any then-outstanding loan balance under this Premium Financing Agreement upon the earliest to occur of (a) the date upon which the final installment payment is scheduled to be made under this Premium Finance Agreement; (b) the twenty-fifth day after the Bankruptcy Court's approval, pursuant to section 1125(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), of a disclosure statement in the Bankruptcy Case; (c) the tenth day after the filing of a motion under section 1104 of the Bankruptcy Code seeking the appointment of a trustee in the Bankruptcy Case; (d) the tenth day after the filing of a motion under section 1112 of the Bankruptcy Code seeking the conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; or (e) the tenth day after the filing by the Debtors of a motion seeking to sell outstanding securities or voting rights which result in ownership or voting control by the purchaser of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or managers of the Insured.  The Insured shall promptly notify AFCO of (a) the Bankruptcy Court's approval of the Disclosure Statement or (b) the filing of any of the motions referenced in this paragraph.