UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**MOTION OF DDI, INC. TO QUASH SUBPOENA
DUCES TECUM AND FOR PROTECTIVE ORDER**

D.D.I., Inc. ("DDI"), an equity holder of Winn-Dixie Stores, Inc. ("Winn-Dixie" and together with its affiliated debtors and debtors in possession herein, the "Debtors"), by this motion (the "Motion"), pursuant to Rules 26(b) and (c), 37(a)(4)(A) and 45(c) of the Federal Rules of Civil Procedure, respectfully requests that this Court (i) quash the subpoena duces tecum (the "Subpoena") issued by the Creditors' Committee (as defined below) on DDI in connection with the so-called Disbandment Motion[1] (as defined below), (ii) enter a protective order enjoining the further pursuit of discovery from DDI and (iii) compensating DDI to the extent appropriate based on the Creditors' Committee's actions. In support of the Motion, DDI respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is Rules 26(b) and (c), 37(a)(4)(A) and 45(c) of

---

[1] Because DDI has not signed a confidentiality agreement, it has not been provided with the Disbandment Motion.

Doc #31168307.WPD

the Federal Rules of Civil Procedure, applicable to this Court pursuant Rules 7026, 7037, 9014(c) and 9016 of the Federal Rules of Bankruptcy Procedure.

**A.     Introduction**

2.     On February 21, 2005, (the "Filing Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases over the objection of the Creditors' Committee to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

3.     The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107 and 1008 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases. On March 1, 2005, the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") comprised of two landlords, two large vendors and three distressed investors.

**B.     Request and Formation of the Equity Committee**

4.     On March 11, 2005, DDI requested that the United States Trustee for the Southern District of New York appoint an official committee of equity security holders (the "Equity Committee"). After venue of these cases was transferred to this Court, DDI submitted a similar request on May 5, 2005 to the United States Trustee for the Middle District of Florida. DDI's request for an Equity Committee was solely based on information available to the public, including the Debtors' public pleadings, securities filings and recent published financial statements. DDI also referred to publicly available information relating to the trends in the supermarket sector, and referenced other large bankruptcy cases where equity committees were

appointed by the United States Trustee. The Debtors, Brandes Investment Partners, L.P. ("Brandes") and Mr. Kenneth M. Thomas ("Mr. Thomas") joined in DDI's request for the appointment of an Equity Committee. DDI's request also had the recommendation of the United States Securities and Exchange Commission (the "SEC").

5. Copies of the letters written by DDI to the United States Trustee were provided to the Creditors' Committee at the time of their submission, and the Creditors' Committee had an opportunity to, and did respond to the DDI letters, before the United States Trustee rendered her decision to appoint the Equity Committee.

6. On August 17, 2005, the United States Trustee appointed an Equity Committee comprised of Brandes, Mr. Thomas and three other individuals. DDI was not appointed as a member of the Equity Committee even though it is the largest equity holder in these cases by a wide margin.

## C. The Creditors' Committee's Request to Disband the Equity Committee

7. On September 2, 2005, the Creditors' Committee filed a motion with this Court seeking an order directing the United States Trustee to disband the Equity Committee (the "Disbandment Motion"). All pleadings related to the Disbandment Motion have been filed under seal and have not been disclosed to DDI.

## D. The Creditors' Committee's Subpoena of DDI

8. On or about September 9, 2005, DDI was served with the Subpoena requesting the production of documents and a deposition of an officer of DDI. The Subpoena demanded that DDI produce broad categories of documents including correspondence and documents relating to communications by or between DDI and any equity holder, any Equity Committee member, the Debtors and their counsel and financial advisors, the Office of the

United States Trustee, the SEC and any other person, in each case relating to the investigation and appointment of the Equity Committee or the operation of, decisions made by, or positions taken by the Equity Committee.

9. By letter dated September 21, 2005, Arthur Steinberg, Esq. of Kaye Scholer LLP, counsel for DDI, contacted John B. Macdonald, Esq. of Akerman Senterfitt, P.A., co-counsel for the Creditors' Committee, and advised Mr. Macdonald that DDI would not be responding to the Subpoena because all discovery related to the Disbandment Motion was stayed pursuant to order of this Court dated September 19, 2005 (the "September 19 Order"). Mr. Steinberg also advised Mr. Macdonald that it appeared the purpose of the Subpoena was to harass DDI and that it called for irrelevant information and was overbroad. Mr. Steinberg also complained that after there was a stay of discovery, the Creditors' Committee somehow never notified DDI or its counsel of that important fact -- which was highly "unusual." See Certification of Arthur Steinberg, Esq., annexed as Exhibit A hereto and made a part hereof (the "Steinberg Certification"). DDI had to find out about the stay from monitoring the proceedings.

10. As noted, although DDI has not seen the Disbandment Motion, if the issue is that the Debtors are hopelessly insolvent and the expense of the Equity Committee outweighs its benefits, then DDI has no relevant information on this issue. The appropriate inquiry is an objective test regarding the Debtors' financial condition, and DDI's subjective view is besides the point. If, as the Court properly noted in its October 14 Letter (as defined below), the relevant inquiry is whether the United States Trustee's decision was arbitrary and capricious based on the information before her at the time the decision to appoint the Equity Committee was made, DDI's deposition on this point is also irrelevant.

11. There is an irony in that the Creditors' Committee is apparently complaining about the costs of an Equity Committee, yet is has been "running up the bill" in pursuing the Disbandment Motion in the aggressive way that it has.

12. On or about October 14, 2005 (the "<u>October 14 Letter</u>"), this Court issued a letter determining that it had the authority to review the United States Trustee's decision to appoint the Equity Committee, but that the proper standard of review was "whether the appointment of the Equity Committee was arbitrary, capricious, or otherwise an abuse of discretion <u>based on the information the United States Trustee had before her at the time she made the decision to appoint the Equity Committee</u>." (emphasis supplied). Pursuant to the October 14 Letter, the Court granted summary judgment in favor of the Debtors and the Equity Committee for the reasons stated above. The October 14 Letter was also designed to enable the parties to proceed with discovery "to the extent necessary."

13. On or about October 25, 2005, the Creditors' Committee filed an amended notice of deposition pursuant to the Subpoena (i) requesting the production of documents identified in the discovery demand on October 31, 2005 and (ii) scheduling a deposition of a designated representative of DDI for November 7, 2005 at 10:00 a.m.

14. Prior to that date, the parties to the Disbandment Motion apparently requested that the Court clarify its October 14 Letter.

15. At an October 24th hearing, the Court apparently addressed its ruling. As noted, after that hearing, the amended notice of deposition was served. Although DDI was not present at the October 24th hearing, in part because it would not sign a confidentiality agreement, it is hard to conceive what the Court could have said which would have necessitated DDI's deposition for the Disbandment Motion.

16. DDI understands that the Debtors, who were present at the October 24th hearing, will be filing a similar motion to quash subpoenas served on their board of directors.

**RELIEF REQUESTED**

17. By this Motion, pursuant to Rules 26(b) and (c), 37(a)(4)(A) and 45(c) of the Federal Rules of Civil Procedure, DDI respectfully requests that this Court (i) quash the Subpoena issued by the Creditors' Committee on DDI, (ii) enter a protective order enjoining the further pursuit of discovery from DDI and (iii) compensating DDI to the extent appropriate based on the Creditors' Committee's actions.

**I.   THE CREDITORS' COMMITTEE'S SUBPOENA DUCES TECUM SHOULD BE QUASHED**

18. Pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, a subpoena may be challenged on the grounds that it is overbroad, burdensome or oppressive. See Fed. R. Civ. Proc. 45(c)(3)(A)(iv). Subpoenas are patently overbroad, burdensome and oppressive, and thereby unenforceable, when they seek a broad range of documents covering an expansive range of topics or time.

19. More specifically, non-party subpoenas are not the appropriate manner in which parties can conduct "fishing expeditions" seeking general discovery. See Delfrate v. Letts, Case No. 95-185, 1996 WL 420880, at *8 (M.D. Fla. March 25, 1996) (noting that discovery under the Federal Rules of Civil Procedure is not a "fishing expedition"). Rather, the purpose of discovery is to compel the production of specific documents that are relevant and material to facts at issue in a pending judicial proceeding. See id.; Fed. R. Civ. Proc. 26. Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure. See Cytodyne Tech., Inc. v. Biogenic Tech., Inc., 216 F.R.D. 533 (M.D. Fla. 2003);

American Elec. Power Co., Inc. v. United States, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (holding that status as a non-party is a factor that weighs against disclosure). A party seeking discovery bears the burden of demonstrating the relevance of the request. See American Elec. Power Co., 191 F.R.D. at 136 (citations omitted).

20. The Subpoena at issue here is a classic example of a fishing expedition proscribed by precedent as to non-parties. For example, the Subpoena makes nine distinct demands for "all documents" covering a wide range of topics. This type of request is expansive and overly broad.

21. More specifically, Federal Rule of Civil Procedure 26(b), relating to the general scope and limits of discovery, expressly acknowledges that a court may limit discovery if it determines that the discovery sought "is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. Proc. 26(b). Thus, the need for discovery from a non-party is diminished when the information is available elsewhere. See Nicholas v. Wyndham Int'l., Inc., 373 F.3d 537, 542 (4th Cir. 2004) (holding district court was well within its discretion to conclude that the additional discovery sought against a non-party was cumulative and duplicative, unduly burdensome and harassing); Haworth, Inc. v. Herman Miller, Inc., 998 F.2d 975, 978 (Fed. Cir. 1993) (determining that district court properly required party to seek discovery from its party opponent before burdening the non-party). In addition, there has been no showing by the Creditors' Committee that any of the requested documents are material and necessary. Based on the October 14 Letter, the Court determined that its review of the United States Trustee's decision to appoint the Equity Committee would be limited to a review of the information the United States Trustee had before her at the time she made the decision to appoint the Equity Committee. Therefore, the Creditors' Committee's discovery

should be limited to the United States Trustee. DDI's view of whether it was appropriate to appoint the Equity Committee is irrelevant to the Court's determination of the Disbandment Motion.

22. Moreover, even if the requested documents were "material and necessary" -- which, as explained, they are not -- the Creditors' Committee can in no way plausibly contend that it cannot be discovered from other sources. The document requests simply do not call for material peculiar to DDI; indeed, category no. 1 of the document requests asks for "all documents concerning any communication between (i) DDI, its agents advisors, representatives, officers, directors, employees, attorneys, or experts, (ii) any Equity Holder, (iii) any Equity Committee Member, (iv) the Debtors, (v) Skadden, Arps, Slate, Meagher & Flom LLP, (vi) the Blackstone Group, (vii) XRoads Solutions Group, (viii) the Office of the United States Trustee, (ix) the U.S. Securities and Exchange Commission, and (x) any other person, in each case relating to (a) the investigation and appointment of an official committee of equity security holders in the Chapter 11 Cases, or (b) the operation of, decisions made by, or positions taken by the Equity Committee."

23. Request 1 is the most obvious example of a request in which others, including parties to the Disbandment Motion, have the information already: each and every document requested in the Subpoena can be satisfied by discovery from other sources; most namely, from the Office of the United States Trustee, the Debtors and the Equity Committee. When a party to an action seeks disclosure from non-party witnesses, but fails to demonstrate that the information sought to be discovered cannot be obtained from other sources, it is proper to grant a motion to quash or for protective order. See Nicholas, 373 F.3d at 542; Haworth, Inc., 998 F.2d at 978; Fed. R. Civ. Proc. 26(b)(2).

24.     In this case, the Subpoena is overbroad and burdensome, and accordingly should be quashed. Moreover, there has been no showing that DDI possesses specifically relevant material, nor any showing that no other means exist to obtain the information. For these reasons, the Subpoena should be quashed.

## II.     A PROTECTIVE ORDER ENJOINING FURTHER ATTEMPTS AT DISCOVERY FROM DDI SHOULD BE GRANTED

25.     Pursuant to Federal Rule of Civil Procedure 26(c), the Court is authorized to issue a protective order in order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . . " Fed. R. Civ. Proc. 26(c). An overly broad request for discovery will not be allowed. See Auto Owners Ins. Co. v. Southeast Floating Docks, Inc., No. 6:05-CV-334-ORL-31JGG, 2005 WL 2375215, at *4 (M.D. Fla. Sept. 28, 2005) (determining that discovery of certain financial records of non-party was grossly overbroad and irrelevant). Clearly, the Subpoena issued to DDI is overbroad, will not uncover any documents that cannot be obtained from parties in the Disbandment Motion, and will impose a substantial burden and unreasonable expense on DDI.

26.     The Subpoena issued to DDI is intended to harass DDI, and is not based on any real need for specific documents possessed by DDI. The Subpoena's broad range, as detailed above, mandates that a protective order should be granted as against the virtually limitless nature of the request. See Auto Owners Ins. Co., 2005 WL 2375215, at *4 (preventing the overbroad discovery of the non-parties' finances through protective order with respect to information sought by the subpoenas and deposition notices). It is quite clear that such requests as "all documents concerning any communication between (i) DDI, its agents advisors, representatives, officers, directors, employees, attorneys, or experts, (ii) any Equity Holder, (iii) any Equity Committee Member, (iv) the Debtors, (v) Skadden, Arps, Slate, Meagher & Flom

LLP, (vi) the Blackstone Group, (vii) XRoads Solutions Group, (viii) the Office of the United States Trustee, (ix) the U.S. Securities and Exchange Commission, and (x) any other person, in each case relating to (a) the investigation and appointment of an official committee of equity security holders in the Chapter 11 Cases, or (b) the operation of, decisions made by, or positions taken by the Equity Committee," is a classic example of the Creditors' Committee's failure to specifically identify relevant documents. Accordingly, DDI is entitled to a protective order precluding the Creditors' Committee from taking discovery of DDI, a non-party, with respect to any matters related to the Disbandment Motion.

### III. DDI SHOULD BE AWARDED COSTS, INCLUDING REASONABLE ATTORNEYS FEES, FOR THE NECESSITY OF FILING THIS MOTION

27. Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure, made applicable to the Motion pursuant to Rule 26(c), provides that if the Motion is granted, "the court . . . shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred . . . including attorney's fees . . ." Fed. R. Civ. Proc. 37(a)(4)(A).

28. DDI requests that the Court grant the Motion and, according to Federal Rule of Civil Procedure 37(a)(4)(A), impose appropriate sanctions for the necessity of filing the Motion, including, but not limited to, attorneys' fees associated therewith.

### REQUEST TO APPEAR TELEPHONICALLY

29. In order to minimize expense, DDI respectfully requests that the Court allow it to appear telephonically at any hearing scheduled on this Motion and that any such hearing be held shortly after the Debtors' motion to quash is heard. Because of confidentiality, DDI assumes that it will not be able to attend the hearing on the Debtors' motion to quash.

## NOTICE

30. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Middle District of Florida; (ii) counsel for the Debtors; (iii) counsel for the Creditors' Committee; and (iv) counsel for the Equity Committee.

31. In light of the nature of the relief requested herein, DDI submits that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, DDI requests entry of an order granting the relief requested herein and such other and further relief that this Court deems just and appropriate.

Dated:  New York, New York
        October 31, 2005

                        Respectfully submitted,

                        KAYE SCHOLER LLP

                          /s/Steven R. Wirth
                        Arthur Steinberg, Esq.
                        Steven R. Wirth, Esq.[2]
                        425 Park Avenue
                        New York, New York 10022
                        (212) 836-8000

                        *Counsel to D.D.I., Inc.*

---

[2] Mr. Wirth is admitted and a member in good standing of the bar of the State of Florida and the United States District Court for the Middle District of Florida.