# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

### CERTIFICATION OF ARTHUR STEINBERG, ESQ. IN SUPPORT OF MOTION OF D.D.I., INC. TO QUASH SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER

ARTHUR STEINBERG, Esq., being duly sworn, deposes and says:

1.      I am a member of the law firm Kaye Scholer LLP located at 425 Park Avenue, New York, New York 10022. I am a member in good standing of the bar of the State of New York, the United States Court of Appeals for the Second Circuit and the United States District Court for the Southern District of New York.

2.      I am counsel to D.D.I., Inc. ("DDI") in connection with the *Motion of D.D.I., Inc. to Quash Subpoena Duces Tecum and for Protective Order* (the "Motion") and submit this certification in support thereof. The Subpoena[1] is attached herein as Exhibit A.

3.      Among other things, the Subpoena at issue in this Motion requests that DDI review and produce broad categories of documents including correspondence and documents relating to communications by or between DDI and any equity holder, any Equity Committee member, the Debtors and their counsel and financial advisors, the Office of the United States Trustee, the SEC and any other person, in each case relating to the investigation and appointment of the Equity Committee or the operation of, decisions made by, or positions

---

[1]      Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Motion.

taken by the Equity Committee. The Subpoena is irrelevant, overbroad, burdensome, and unnecessary.

       4.     DDI is not privy to any of the Disbandment Motion pleadings, which have been filed under seal with this Court, and hence, is not a party therein.

       5.     I have made a good faith effort to resolve this dispute without having to resort to court intervention, as described herein. On September 21, 2005, I wrote to Mr. John B. Macdonald, Esq., co-counsel to the Creditors' Committee, indicating that I was in receipt of the Subpoena at issue, and advised him that DDI would not be responding to the Subpoena because it was stayed pursuant to the September 19 Order. I also advised the Mr. Macdonald that it appeared that the purpose of the Subpoena was to harass DDI and that it called for irrelevant information and was overbroad. A true and correct copy of this letter is attached herein as Exhibit B.

       6.     On September 22, 2005, Mr. Macdonald responded that my letter and, by implication, refused my requests concerning withdrawing the Subpoena. A true and correct copy of this letter is attached herein as Exhibit C.

7.      On October 23, 2005, I wrote Mr. Luc Despins, Esq., co-counsel to the Creditors' Committee, in response to Mr. Despins' October 19th telephone message to me, inquiring as to why no one had contacted me to discuss the purpose of conducting a deposition of DDI relating to the subject matter of the Disbandment Motion.  I also complained to Mr. Despins that after there was a stay of discovery, the Creditors' Committee never notified DDI or its counsel, which was highly unusual and misleading.  A true and correct copy of this letter is attached herein as Exhibit D.

Further affiant sayeth naught.


_____/s/Arthur Steinberg_____
Arthur Steinberg, Esq.

# EXHIBIT  A

Rec'd 9/12/05
11 AM

B 256 (11/91)

# United States Bankruptcy Court
## Middle District Of Florida

In re        Winn-Dixie Stores, Inc., et al.

Debtor

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE**

Case No.¹        3:05-bk-03817-JAF

To:        D.D.I., Inc.        Chapter        11

c/o its Registered Agent, E. Ellis Zahra, Jr.
4310 Pablo Oaks Court
Jacksonville, FL 32224

YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

✔ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case on the topics identified on Schedule A attached hereto

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Offices of Akerman Senterfitt; 50 North Laura Street, Suite 2500, Jacksonville, FL 32202 | September 27, 2005 at 10:00 a.m. |

✔ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

All documents identified on Schedule B attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Offices of Akerman Senterfitt; 50 North Laura Street, Suite 2500, Jacksonville, FL 32202 | September 22, 2005 at 10:00 a.m. |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed. R. Civ. P. 30(b)(6) made applicable in proceedings by Rule 7030, Fed. R. Bankr. P. See Rules 1018 and 9014, Fed. R. Bankr. P.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
|  | September 9, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

John A. McDonald, Esq. ; 50 North Laura Street, Suite 2500, Jacksonville, FL 32202        (904) 798-3700

¹ If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B 256 (11/91) (cont.)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

---

Rule 45, Fed. R. Civ. P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed. R. Bankr. P.

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except

that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more that 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DEFINITIONS

1.    The term "affiliate" shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

2.    The term "any" shall mean "each and every" as well as "any one."

3.    The term "Bankruptcy Code" shall mean title 11 of the United States Code, 11 U.S.C. §101 et seq., as amended.

4.    The term "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

5.    The term "Chapter 11 Cases" shall mean In re Winn-Dixie Stores, Inc., et al., Case No. 05-03817-3Fl (Jointly Administered), pending in the United States Bankruptcy Court for the Middle District of Florida.

6.    The term "copy" shall mean a photocopy, or any other tangible or electronic form of true and accurate duplication of a document.

7.    The term "communication" shall mean any correspondence, contact, discussion, or exchange between any two or more persons, whether written or oral.  Without limiting the foregoing, the term "communication" shall include all documents, telephone conversations, face-to-face conversations, meetings or conferences, and any other means of transmitting a message.

8.    The term "concerning" shall mean pertaining to, relating to, referring to, setting forth, describing, showing,

disclosing, explaining, enumerating, listing, summarizing, reflecting, evidencing, or constituting.

9.    The term "Committee" shall mean the Official Committee of Unsecured Creditors in the Chapter 11 Cases.

10.    The term "Davis Family" shall mean the "founding family of Winn-Dixie Stores, Inc.", as such term is used in Winn-Dixie Stores, Inc.'s Proxy Statement For Annual Meeting Of Shareholders To Be Held October 20, 2004.

11.    The term "Debtors" shall mean Winn-Dixie Stores, Inc. and its affiliated debtors and debtors in possession, collectively, in the Chapter 11 Cases and shall also include each of their agents, advisors, representatives, officers, directors, employees, attorneys, experts, investigators, insurers, or anyone acting on behalf of the foregoing.

12.    The term "DDI" shall mean D.D.I., Inc. and shall include its agents, advisors, representatives, officers, directors, employees, attorneys, experts, investigators, insurers, or anyone acting on behalf of the foregoing.

13.    The term "Disbandment Motion" shall mean the motion of the Committee, made pursuant to Federal Rules of Bankruptcy Procedure 2020, 7030 and 9014, for an order directing the United States Trustee to disband the Equity Committee appointed in the Chapter 11 Cases.

2

14.  The term "document" shall mean any thing discoverable
under Rule 34 of the Federal Rules.  Further, the term
"document" shall be used in the broad and liberal sense and
shall mean written, typed, printed, recorded or graphic matter,
however produced or reproduced, of any kind and description and
whether an original, master, duplicate or copy, including
papers, notes of conversations, contracts, agreements, purchase
orders, invoices, payment vouchers, credit memos, credit
policies, payment receipts, bills of lading, delivery receipts,
service tickets, field service reports, drawings, telegrams,
tape recordings, communications (including inter-office and
intra-office memoranda), analytical reports, studies, UCC search
reports, security agreements, working papers, corporate records,
minutes of meetings, notebooks, wire transfers, bank deposit
slips, bank checks, cancelled checks, diaries, diary entries,
appointment books, desk calendars, photographs, transcriptions
or sound recordings of any type of personal or telephone
conversations, negotiations, meetings, conferences, or things
similar to any of the foregoing, and data, information or
statistics contained within any data storage module, tape, disc
or other memory device or other information retrievable from
storage systems including computer generated reports and print-
outs and electronic communications, including e-mail and
facsimile transmissions.  The term "document" shall also include

3

data compilations from which information can be obtained and translated, if necessary, through detection devices in a reasonably usable form. The term "document" shall also mean any English translation of a document in another language. If any document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies that are not identical, each modified copy or non-identical copy is a separate "document."

15. The term "Document Requests" shall mean the requests for production of documents listed herein.

16. The term "Equity Committee" shall mean the official committee of Equity Holders appointed by the Office of the U.S. Trustee in the Chapter 11 Cases and shall include such committee's agents, advisors, representatives, officers, directors, employees, attorneys, experts, investigators, insurers, or anyone acting on behalf of the foregoing.

17. The term "Equity Committee Member" shall mean any person appointed to the Equity Committee, or such person's affiliates, agents, advisors, representatives, officers, directors, employees, attorneys, experts, investigators, insurers, or anyone acting on behalf of the foregoing.

18. The term "Equity Holder" shall mean a person holding any equity security of the Debtors and any of such person's directors, officers, employees and individuals retained or

4

otherwise engaged as independent contractor, advisor, agent and/or consultant, including but not limited to Brandes Investment Partners, L.P. and DDI and any member of the Davis Family who was the beneficial owner of equity securities of either the Debtors or of DDI.

19.   The term "evidencing" shall mean tending to show, in whole or in part, in any probative manner, the existence or nonexistence of any matter.

20.   The term "Federal Rules" shall mean the Federal Rules of Civil Procedure.

21.   The term "including" shall mean including without limitation.

22.   The term "person" shall mean individual persons, firms, associations, partnerships, corporations or other entities.

23.   The term "persons with knowledge of facts" shall mean, without limitation, any person who, at any time relevant to these proceedings, had involvement with the subject matter of the specific Document Requests at issue.

24.   The term "Petition Date" shall mean February 21, 2005.

25.   The term "relating to" shall mean constituting, defining, containing, embodying, reflecting, identifying, stating, concerning, referring to, dealing with, or in any way pertaining to.

26.  The term "<u>you</u>" or "<u>your</u>" shall mean the party to whom this discovery is directed, his, her or its affiliates, agents, representatives, officers, directors, employees, attorneys, experts, investigators, insurers, or anyone acting on behalf of the foregoing.

27.  As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Document Requests all responses that might otherwise be construed to be outside of their scope.

28.  As used herein, the connectives "<u>and</u>" and "<u>or</u>" as used in the term "<u>and/or</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Document Requests all responses that might otherwise be construed to be outside of their scope.

## SCHEDULE A

## TOPICS ON WHICH EXAMINATION IS REQUIRED

1) Any investigations, communications or analyses that relate to or underlie the decision of DDI to request, or to join in any request seeking, the appointment of an official committee of equity security holders in the Chapter 11 Cases.

2) Any investigations or analyses performed or relied upon by DDI to determine if Equity Holders were adequately represented in the above-captioned cases, within the meaning of section 1102 of the Bankruptcy Code, prior to the formation of the Equity Committee.

3) Any investigations or analyses performed or relied upon by DDI to (i) determine the financial condition of any Debtor, including, but not limited to, whether such Debtor was insolvent as such term is defined in section 101(32) of the Bankruptcy Code, or (ii) evaluate the financial performance and projections of future financial performance for the Debtors.

4) Any communication with parties in interest in the Chapter 11 Cases or any other person, including but not limited to (a) the Debtors, (b) the Equity Committee, (c) any Equity Committee Member, (d) any Equity Holder or such Equity Holder's counsel, (e) the Office of the United States Trustee, (f) the United States Securities and Exchange Commission, (g) Skadden,

Arps, Slate, Meagher & Flom LLP, (h) the Blackstone Group, or (i) XRoads Solutions Group, relating to (i) the issues raised in topics 1-3 of this Schedule; or (ii) the operation of, decisions made by, or positions taken by the Equity Committee.

    5)   The relationship between DDI and the Equity Committee.

    6)   The relationship between DDI and any officers or directors of Winn-Dixie Stores, Inc.

2

## SCHEDULE B

## INSTRUCTIONS RELATING TO DOCUMENT PRODUCTION

1.    This Subpoena covers all information known or
available to you and covers all documents in your possession,
custody or control, including, without limitation, documents in
storage and documents held by agents, attorney or other persons
on your behalf and subject to your control.  Should you be
unable to respond to any individual category, please identify
each person whom you know to have information regarding the
subject of the category.

2.    Whenever a document has not been produced in full,
identify with particularity the reason or reasons it has not
been produced in full and describe to the best of your knowledge
and/or information and belief and with as much particularity as
possible those portions of the documents that have not been
produced.

3.    If a document called for by this Subpoena is known to
have existed but cannot be located now, identify the document
and state: (a) whether the missing document has been in your
possession, custody or control; (b) where the missing document
was last known to be and the date when the document was last
known to be in such location; and (c) in whose possession,
custody or control the document may be found; or (d), where
applicable, whether the document has been destroyed.  If any

such document was but is no longer in your possession or subject
to your control, state what disposition was made of it.

4.     If you consider any document called for in the
Subpoena to be privileged or otherwise immune from production,
please include in your response to the Subpoena a list of
documents withheld from production, identifying each document by
date, addressee(s), author, title, and subject matter, as
provided for in the Federal Rules.  In addition, identify those
people who have seen the document or who were sent copies.
Finally, state the ground(s) upon which you consider each such
document to be privileged or otherwise immune from production.

5.     This Subpoena shall be deemed continuing so as to
require supplemental responses and/or production if you or your
attorneys obtain further information between the time responses
and/or production is made and the time of trial.

2

## DOCUMENTS TO BE PRODUCED

1.   Category No. 1.  Please produce all documents concerning any communication between (i) DDI, its agents, advisors, representatives, officers, directors, employees, attorneys, or experts, (ii) any Equity Holder, (iii) any Equity Committee Member, (iv) the Debtors, (v) Skadden, Arps, Slate, Meagher & Flom LLP, (vi) the Blackstone Group, (vii) XRoads Solutions Group, (viii) the Office of the U.S. Trustee, (ix) the U.S. Securities and Exchange Commission, and (x) any other person, in each case relating to (a) the investigation and appointment of an official committee of equity security holders in the Chapter 11 Cases, or (b) the operation of, decisions made by, or positions taken by the Equity Committee.

2.   Category No. 2. Please produce all documents, including but not limited to meeting minutes and board resolutions, concerning DDI's decision to advocate for and pursue the appointment of an official committee of equity security holders in the Chapter 11 Cases.

3.   Category No. 3. Please produce all documents concerning investigations, communications or analyses that DDI performed or relied upon in connection with evaluating the financial condition of the Debtors since January 1, 2004, including any determination of whether any Debtor is insolvent within the meaning of section 101(32) of the Bankruptcy Code.

3

4.    Category No. 4.    Please produce all documents concerning investigations, communications or analyses that DDI performed, caused to be performed or relied upon in connection with evaluating the financial performance and projections of future financial performance for the Debtors since January 1, 2004.

5.    Category No. 5.    Please produce all documents concerning investigations, communications or analyses that DDI performed, caused to be performed or relied upon in connection with evaluating whether Equity Holders were adequately represented, within the meaning of section 1102 of the Bankruptcy Code, prior to the appointment of the Equity Committee.

6.    Category No. 6.    Please produce all documents concerning any relationship between DDI and any officers or directors of Winn-Dixie Stores, Inc.

7.    Category No. 7.    Please produce documents evidencing the current officers and directors of DDI as well as those who served during the past five (5) years.

8.    Category No. 8.    Please produce all documents, including any expert report, that DDI plans to or may offer or rely upon at any hearing on the Disbandment Motion.

4

9.  Category No. 9.  Please produce a list identifying all witnesses, if any, DDI plans to or may call at any hearing on the Disbandment Motion and the matters as to which each such witness shall testify.

5

# EXHIBIT  B

# KAYE SCHOLER LLP

Arthur Steinberg
212 836-8564
Fax 212 836-6157/7157
asteinberg@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

September 21, 2005

## BY TELECOPY AND FIRST CLASS MAIL

John B. Macdonald, Esq.
Akerman Senterfitt
50 North Laura Street, Suite 2500
Jacksonville, FL 32202

      Re:    Winn-Dixie Stores, Inc., et al. ("Company")

Dear John:

      I am counsel for DDI, Inc. ("DDI") I am in receipt of (a) a subpoena served by the Creditors Committee on DDI dated September 9, 2005 and received on September 12, 2005, purportedly relating to the so-called Disbandment Motion, and (b) a subsequent Order of the Bankruptcy Court dated September 19, 2005 ("Order") staying discovery relating to the Disbandment Motion.

      The Order appears to stay the discovery requested by the Subpoena. Accordingly, we will not be responding to the Subpoena. Further, I believe that all or a substantial portion of the Subpoena calls for irrelevant information and is overbroad. Moreover, it appears that the overall intention of the Subpoena is to harass DDI. Generally speaking, your co-counsel received copies of the letters written to the U.S. Trustee by or on behalf of DDI relating to the appointment of an Equity Committee. The decision to appoint an Equity Committee was made by the U.S. Trustee. If you do not agree with the decision, your dispute is with the U.S. Trustee, not DDI. Indeed, DDI is not even on the Equity Committee. And, DDI's view of whether the Company appears to be "hopelessly insolvent" is irrelevant to the Court's determination of your Disbandment Motion. If, at some point in time, the Order staying discovery is dissolved, and the

# KAYE SCHOLER LLP

John B. Macdonald, Esq.                             2                             September 21, 2005

DDI discovery is still "required" by the Creditors Committee, we will need to "meet and confer" as to the requests contained in the Subpoena. If no understanding is reached, the issue will require motion practice before the Bankruptcy Judge.

Very truly yours,

Arthur Steinberg

AS:jc

cc:    Mr. E. Ellis Zahra, Jr.
       D. J. Baker, Esq.
       Karol K. Denniston, Esq.

# EXHIBIT  C



**Akerman** Senterfitt
ATTORNEYS AT LAW

Fort Lauderdale
Jacksonville
Miami
New York, NY
Orlando
Tallahassee
Tampa
Washington, DC
West Palm Beach

50 North Laura Street
Suite 2500
Jacksonville, Florida 32202-3646
www.akerman.com

904 798 3700 *tel*    904 798 3730 *fax*
904 634 1690 *31ˢᵗ floor fax*

September 22, 2005

John B. Macdonald
904 598 8640
john.macdonald@akerman.com

**Via Facsimile Transmission and**
**First Class U.S. Mail – (212) 836-6157**

Arthur Steinberg, Esq.
Kaye Scholer, LLP
425 Park Avenue
New York, NY 10022-3598

      Re:    DDI, Inc. Subpoena

Dear Arthur:

      Thank you for your letter of September 21, 2005. You are correct that Judge Funk's Order of September 19, 2005 ("Judge Funk's Order"), stays all discovery with respect to the Disbandment Motion unless and until the Court enters an order denying the anticipated Dispositive Motions, in whole or in part. We concur that as a consequence the return required under the Subpoena served on DDI, Inc. ("DDI") on September 12, 2005, is now stayed.

      At this point we are awaiting the submission and ultimately the determination by the Court of the Dispositive Motions. Recognizing that the Subpoena served on DDI has not been released but merely stayed, if the Dispositive Motions should be denied, as we anticipate, we will require a return of the Subpoena and production of the documents thereunder no later than October 31, 2005. This deadline corresponds with the deadlines for responses to document requests established within Judge Funk's Order. We anticipate meeting and conferring with the parties to the Disbandment Motion to establish a deposition schedule, and subject to those discussions it is our intention to schedule the deposition of DDI for November 7, 2005, at the same time and location as set forth in the Subpoena. Please advise us of any objection to that date for such a deposition.

      We appreciate DDI's displeasure in being the subject of discovery. However, we assure you that the Creditors Committee intends no harassment but is only pursuing inquiries and discovery which it views as relevant to the matters raised by the Disbandment Motion. If DDI has objections to the scope of the Subpoena, we request that you provide to us the substance of

Arthur Steinberg, Esq.
September 22, 2005
Page 2

_____

those objections in detail such that we may review them and attempt to accommodate your concerns.  Moreover, while DDI is not a "party" to the Disbandment Motion, we are certainly willing to meet and confer with you to resolve any discovery questions or disputes as expeditiously as possible.  We look forward to working with you on these matters.

Very truly yours,

John B. Macdonald

JBM:dcd
cc:     D.J. Baker, Esq. (by facsimile and U.S. Mail)
        Karol K. Denniston, Esq. (by facsimile and U.S. Mail)
        Stephen D. Busey, Esq. (by facsimile and U.S. Mail)
        Luc A Despins, Esq. (by facsimile and U.S. Mail)

# EXHIBIT  D

# KAYE SCHOLER LLP

Arthur Steinberg
212 836-8564
Fax 212 836-6157/7157
asteinberg@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

October 23, 2005

Luc Despins, Esq.
Milbank Tweed Hadley & McCloy, LLP
One Chase Manhattan Plaza
New York, N.Y.

      Re:    <u>DDI, Inc. Subpoena</u>

Dear Luc:

      Thank you for your phone message of late October 19 informing me of a court hearing on October 24, 2005 relating to the scope of discovery, if any, pertaining to the Creditors Committee's Disbandment Motion. Just to be clear, I never told anyone that I was disinterested in reviewing your Disbandment Motion. Rather, I told Debtor's Counsel that since there was a stay of discovery in place, there was no present need for me to review these papers. Moreover, I do not think you have offered a good explanation as to why the Creditors Committee served the Subpoena, agreed to a consensual stay of discovery, and then never informed me of that fact. In this context, a confidentiality arrangement is irrelevant. In addition, I believe that your co-counsel's letter to me, which does not include the Court's ruling and omits any reference that the Court granted summary judgment in favor of the Equity Committee and Debtor, is misleading to me. Finally, no one has called me to discuss the purpose of conducting a deposition of my client relating to the subject matter of the Disbandment Motion. Frankly, I am not sure what is the legitimate motive of the Creditors Committee action in this regard.

      We do not plan on attending the October 24, 2005 hearing because we have not signed a confidentiality arrangement. I trust, however, that the Creditors Committee will not seek to take advantage of my non-appearance by attempting to argue in favor of the Subpoena, and any motion I would make to quash the Subpoena.

      Sincerely,

      Arthur Steinberg

AS:jc
cc:    D. J. Baker, Esq.
      Stephen D. Busey, Esq.
      Karol K. Denniston, Esq.
      John B. Macdonald, Esq.

31164830.WPD

NEW YORK   CHICAGO   LOS ANGELES   WASHINGTON, D.C.   WEST PALM BEACH   FRANKFURT   LONDON   SHANGHAI