EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAUREEN FITZGERALD-MARHOLD,

    Plaintiff,

v.                                                              Case No.

WINN-DIXIE STORES, INC.,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, MAUREEN FITZGERALD-MARHOLD (hereinafter referred to as "MARHOLD" or "Plaintiff"), by and through his undersigned counsel, and files this, her action for damages against Defendant, WINN-DIXIE STORES, INC., (hereinafter referred to as "WINN-DIXIE" or "Defendant"), and as grounds therefore, alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction on the basis of Title VII, Civil Rights Act of 1964, as amended, and is an action for damages in excess of $75,000.00, exclusive of costs, interest, and attorney's fees.

2. At all times material to this action, MARHOLD was employed by Defendant and performed his various duties for said employer in _____ County, state of Florida, within the limits of the Middle District of Florida.

3. MARHOLD further invokes this Court's pendent jurisdiction to determine her claims under Florida Statute, Chapters 760 and 440, and common law claim of negligent supervision/ training/retention.

## PARTIES

4. MARHOLD is a citizen of the United States and resident of Manatee County, Florida. MARHOLD is female.

5. WINN-DIXIE is a Florida corporation doing business in Florida, and is engaged in an industry affecting commerce and employs in excess of 15 employees.

## PROCEDURAL BACKGROUND

6. MARHOLD complied with the administrative prerequisites by filing a charge of discrimination based on race with the Equal Employment Opportunity Commission (EEOC) and Florida Commission on Human Relations on or about October 20, 2004.

7. On June 8, 2005, the EEOC issued a determination in MARHOLD's favor, finding reasonable cause that WINN-DIXIE engaged in unlawful discriminatory conduct. The determination is attached hereto and incorporated by reference as **Exhibit "A"**.

8. A Notice of Right to Sue was issued and mailed on or about July 12, 2005. A copy of the Dismissal and Notice of Rights is attached hereto and incorporated by reference as **Exhibit "B"**.

9. MARHOLD filed her Complaint within ninety (90) days of receipt of the Notice of Rights.

## FACTS

10. MARHOLD was employed by WINN-DIXIE between approximately January 2003 through her date of termination on or about August 3, 2004. MARHOLD started employment with Winn-Dixie Risk Management at the Plant City Dairy, and was the Safety and Environmental Manager at the Plant City Dairy and Retail Compliance Officer (food and associate safety) at approximately 40 retail WINN-DIXIE stores.

2

11. WINN-DIXIE sent MARHOLD to five out-of-state facilities to conduct their annual auditing, which was more than all the other like-positioned personnel. MARHOLD was advised she was the most qualified and detailed inspector, and retail was WINN-DIXIE's "number one priority".

12. In September 2003 Mike Brewster (position) had approached MARHOLD and asked her if she would consider taking over the then vacant Plant Engineer's position due to her "proven abilities and past maintenance background". She decided to accept and was directed to speak to managers Pat Ross and Dwight Moore. Pat Ross attempted to dissuade MARHOLD from taking the position. The transfer did not occur until December 2003 when Mike Brewster finally went to senior management to have the position transfer completed. Pat Ross committed to Mike Brewster at that time that he would back fill the now vacant Safety and Environmental position "ASAP", and until then "Maureen would just have to suck it up if she wants to play with the big boys".

13. MARHOLD was sent to Miami in October 2003 to train a fellow risk-management employee (male) who had worked for the company for years. MARHOLD trained him by conducting retail store audits for two weeks at which time she contracted a staph infection (MRSA) and reported it through proper WINN-DIXIE procedure.

14. In December 2003, MARHOLD assumed the position of Plant Engineer. At this time, MARHOLD was by default forced into working three positions because risk management had still not filled the Safety and Environmental Manager position at Plant City and she was short three maintenance supervisors. Whenever her male counterparts at Plant City were short a supervisor they received temporary help. In comparison, MARHOLD requested and

rarely received any support. Rather, she was told to find and hire her own supervisors. When MARHOLD did find one (Bill Williams in January 2004) it took WINN-DIXIE three months to process him, as compared to three weeks when MARHOLD's male counter-parts hired a new supervisor.

15. On Christmas day 2003, MARHOLD was rushed to Blake Hospital in Bradenton due to a massive flare up of the staph infection. She had to pay for treatment out of pocket because she did not receive prior approval from the company. MARHOLD thereafter sought compensation from WINN-DIXIE.

16. MARHOLD was also short two to three maintenance technicians at any given time as required due to all of the needs of the two plants within the Plant City Dairy, as well as for compliance program adherence. To cover all the work, MARHOLD worked seven days a week, often at 80 to 100 hours per week.

17. Throughout the next few months in 2004 Mike Brewster continuously praised MARHOLD on her "get it done attitude", and how she had earned the respect of all her associates and was "running a tight ship". MARHOLD increased the preventative maintenance completion rate to 85% (first time ever done), a major accomplishment especially considering the lack of staff.

18. In April 2004, the company announced a down-sizing of a couple of its manufacturing, distribution and retail locations. Plant City was not one of them. Not only was Plant City not one of them, but Plant City was going to take the volume from the Miami dairy and the Greenville dairy. Miami was to close within 30 days.

19. Upon information and belief, WINN-DIXIE offered the affected staff positions that were

vacant throughout the company or a minimum severance package of 11 weeks pay. At about this time, Dwight Moore had been relieved of his duties just prior to the down-sizing, and Geoff Maffett, the senior director of manufacturing, took over all of Moore's direct reports.

20. In late April 2004, Geoff Maffett and Mike Brewster offered MARHOLD the assistance of Percy "Buck" Bankston (former Miami plant manager). She was told by Maffet and Brewster that the arrangement would be temporary, and that they had plans to place Buck up in one of the company's other facilities due to a Facilities Manager retiring in the next few months. MARHOLD accepted, and was completely relieved that Winn-Dixie saw fit to alleviate her tremendous workload. Mike Brewster volunteered to MARHOLD that WINN-DIXIE was not trying to take her position or move her out. Brewster further advised MARHOLD that "this is just temporary and Buck will report to you".

21. In the middle of May 2004, an initial meeting was convened with Mike Brewster, Geoff Maffett, Buck Bankston, and MARHOLD. Buck was informed of his new duties and responsibilities, including having to report directly to MARHOLD. Buck acknowledged these new duties verbally.

22. Among Buck's duties were that he had to report to MARHOLD daily upon his arrival at the Plant City Dairy and for every thing he needed, to be approved by her and that he would conduct a weekly closing meeting on Thursday afternoon. Buck was to arrive at Plant City each Tuesday and stay through Thursday of each week. At the meeting, Buck said "Great", and turned to MARHOLD and said "when do you want me here tomorrow?". That was the last time he spoke to her in a civil manner, if at all.

23. At that same meeting Geoff Maffett expressed to MARHOLD that he wanted Buck to work

on two specific projects and those only: the transfer of the Greenville Ice Cream sandwich line and to bring the company's Blow mold room up to where it will need to be for the increased volume, both operational and mechanically. MARHOLD had several phases of these projects already in motion and tried to no avail to transfer these to Buck, but he would avoid her at all cost.

24. MARHOLD expressed her concerns to Mike Brewster several times and requested clarification meetings. Brewster sent an email to Buck reminding him of his expectations and to approve everything through MARHOLD. The email proved to have the effect of worsening Buck's conduct. He refused to be seen with MARHOLD. He became very rude and cursed at her on several occasions.

25. Throughout June 2004, MARHOLD's staff repeatedly came to her with comments and concerns about Buck. MARHOLD was advised that Buck was telling others, "I will not report to a woman" and "she [MARHOLD] thinks she is the only one who knows what's going on". MARHOLD's staff grew increasingly concerned and MARHOLD again went to Mike Brewster. Instead of taking action against Buck for his gender-based attitude, MARHOLD was advised to just let Buck do what he wants on those projects and let him fail...that MARHOLD just keep up the great work with the rest of her duties.

26. Buck continued to confuse MARHOLD's staff with re-directions and rude outbursts, so much so that Bill Williams pulled him aside had a discussion on the chain of command. However, it was Buck that told Bill Williams that things will be done his way and that she [MARHOLD] will see [it his way] soon enough". Buck continued to undermine MARHOLD's authority -- he would disappear form the facility continuously whenever she

would try to meet with him, and he would just send her emails of things she should fix, which was not company procedure. Although Brewster explained this to Buck on several occasions, no action was taken against Buck for continually manifesting a gender-based attitude against MARHOLD.

27. MARHOLD and her staff installed the IC sandwich line. Buck was not involved, MARHOLD and her staff worked straight through a weekend 32 hours. During this entire time, Buck did not answer my MARHOLD's calls.

28. In July 2004, company contractors came forward and told MARHOLD that Buck was saying discriminating comments to them about her. In a final effort to put Buck's gender discriminatory behavior to an end, MARHOLD sent an email requesting a meeting to Mike Brewster, copying Geoff Maffett and Buck Bankston. A meeting was scheduled for the 27th of July, but which was postponed to the 28th by Brewster. However, on the 28th Buck had to leave and go out of town on family business and said he would be back and meet on Tuesday the 3rd of August (2004).

29. Brewster, Bruce Manning and MARHOLD met on July 28, 2004, and came up with a written action plan to solve these issues and needs. Brewster developed a punch list delegating items to Bruce, Buck and MARHOLD and emailed it to Geoff Maffett.

30. MARHOLD worked all week and weekend as usual and came in Monday morning August 2, 2004 at 4:00 a.m. She went to Brewster's office at approximately 8:30 a.m. and requested a meeting on the potential supervisor interviewee. The management staff met at 9:00 a.m. and agreed to extend an offer to MARHOLD's prospective supervisor if his references were verified.

31. At approximately 10:00 a.m., Brewster came in to MARHOLD's office, while several other business activities were being conducted and asked if she was available at 11:00 a.m. for a meeting. When MARHOLD arrived to meet with Brewster, he told her to meet in Jenny Hough's office (Human Resources). They both went in and Brewster said, as Ms. Hough slid a packet of paper across her desk toward MARHOLD, "I do not know what to say but your position has been eliminated [effective immediately]. I'm so sorry, I love you like a sister, and after all your dedication and hard work, you are by far the most dedicated person we have here and I just do not know what to say, if there is any thing I can do please just ask".

32. MARHOLD then asked if she could bid for any open positions, but was told she was over qualified for any thing they had open, including the positions she was currently interviewing candidates for.

33. Buck arrived on the premises 15 minutes after MARHOLD left and moved into her old office with in the hour. He was given a temporary administrative associate and additional help from corporate engineering, and twice the salary.

34. MARHOLD had always performed her job in a competent manner or better.

35. MARHOLD's gender was the determinative factor in WINN-DIXIE, via their agents, representatives, and employees' decision to terminate her.

36. WINN-DIXIE also retaliated against MARHOLD for complaining about gender discrimination and disparate treatment and for pursuing her workers' compensation claim for the MRSA infection.

37. MARHOLD suffered trauma as a result of being retaliation against and being exposed to a gender discrimination environment.

38. MARHOLD performed or satisfied all conditions precedent to the filing of this action, or said conditions have occurred or been waived.

39. MARHOLD retained the services of the undersigned counsel and is obligated to pay him a reasonable attorney's fee. HERNANDEZ seeks an award of attorney's fees, pursuant to Florida Statute, § 760.11, Title VII of the Civil Rights Act of 1964 as amended, and all applicable statutes set forth herein.

### DEMAND FOR TRIAL BY JURY

40. MARHOLD respectfully demands a trial by jury for all issues so triable.

### COUNT I - FCRA (Discrimination)

41. MARHOLD realleges and incorporates by reference Paragraphs 1 through 40, as though set forth herein verbatim.

42. This action is based on a violation of the Florida Statute, Chapter 760, Florida Civil Rights Act.

43. WINN-DIXIE, via its agents, representatives, and employees, discriminated against MARHOLD because of her gender.

44. As a result of WINN-DIXIE's unlawful employment practices, MARHOLD has been damaged.

WHEREFORE, the Plaintiff, MAUREEN FITZGERALD-MARHOLD respectfully prays that this Honorable Court take jurisdiction of the subject matter and parties hereto, and grant his request for trial by jury, declare that WINN-DIXIE violated the rights of Plaintiff as protected by the laws of the State of Florida, and award back pay, front pay, prejudgment interest, compensatory damages for mental anguish, emotional distress, embarrassment, humiliation, loss of enjoyment of

life, loss of dignity, impairment of working ability and earning capacity and loss of reputation, reasonable attorney's fees pursuant to Florida Statute, § 760.11 and costs, and such other relief as deemed appropriate by this Court.

## COUNT II - Whistle-blower Retaliation

45. MARHOLD realleges and incorporates by reference Paragraphs 1 through 40, as though set forth herein verbatim.

46. This action is based on a violation of the Florida Statute, Chapter 760, Florida Civil Rights Act.

47. WINN-DIXIE, via its agents, representatives, and employees, retaliated against MARHOLD because of her complaints of gender discrimination.

48. As a result of WINN-DIXIE's unlawful employment practices, MARHOLD has been damaged.

WHEREFORE, the Plaintiff, MAUREEN FITZGERALD-MARHOLD respectfully prays that this Honorable Court take jurisdiction of the subject matter and parties hereto, and grant his request for trial by jury, declare that WINN-DIXIE violated the rights of Plaintiff as protected by the laws of the State of Florida, and award back pay, front pay, prejudgment interest, compensatory damages for mental anguish, emotional distress, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, impairment of working ability and earning capacity and loss of reputation, reasonable attorney's fees pursuant to Florida Statute, § 760.11 and costs, and such other relief as deemed appropriate by this Court.

## COUNT III - Negligent Supervision/Training/Retention

49. MARHOLD realleges and incorporates by reference Paragraphs 1 through 40, as though set forth herein verbatim.

50. This is a common law action of negligent supervision/training/retention.

51. During the course of MARHOLD's employment, WINN-DIXIE, via its agents, representatives, and employees in supervisory or management positions, had a duty to MARHOLD to properly supervise, train and discipline her supervisors regarding the legal responsibilities of an employer under Florida law regarding gender discrimination and disparate treatment.

52. During the course of MARHOLD's employment, WINN-DIXIE, via its agents, representatives, and employees in supervisory or management positions, failed in its duty to properly supervise, train and discipline MARHOLD's supervisors regarding the legal responsibilities of an employer under Florida law regarding gender discrimination and disparate treatment.

53. As a direct and proximate result of WINN-DIXIE's negligent breach of duty, MARHOLD suffered permanent and/or continuing injuries and sustained the following past and future damages:

   A. Mental pain;

   B. Severe emotional distress in the form of fear, nervousness, anxiety, worry and indignity;

   C. Embarrassment;

   D. Humiliation;

11

E.  Loss of enjoyment of life;

F.  Impairment of working ability and earning capacity;

G.  Loss of dignity; and

H.  Future pay.

WHEREFORE, the Plaintiff, MAUREEN FITZGERALD-MARHOLD respectfully prays that this Honorable Court take jurisdiction of the subject matter and parties hereto, grant her request for trial by jury, enter judgment against WINN-DIXIE and award compensatory damages, consequential damages, costs, interest and such other relief as deemed appropriate by this Court.

## COUNT IV– TITLE VII, CIVIL RIGHTS ACT OF 1964

54. MARHOLD realleges and incorporates by reference Paragraphs 1 through 40, as though set forth herein verbatim.

55. This action is based on a violation of Title VII, Civil Rights Act of 1964, as amended.

56. WINN-DIXIE, via its agents, representatives, and employees, discriminated against MARHOLD because of her gender, and retaliated against her for objecting to it.

57. As a result of WINN-DIXIE's unlawful employment practices, MARHOLD has been damaged.

WHEREFORE, MAUREEN FITZGERALD-MARHOLD respectfully prays that this Honorable Court take jurisdiction of the subject matter and parties hereto, and grant his request for trial by jury, declare that WINN-DIXIE violated the rights of Plaintiff, and award back pay, front pay, prejudgment interest, compensatory damages for mental anguish, emotional distress, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, impairment of working ability and earning capacity and loss of reputation, and reasonable attorney's fees and costs, and such other

relief as deemed appropriate by this Court.

## COUNT V - Fla. Stat. §440.205

58. MARHOLD realleges and incorporates by reference Paragraphs 1 through 40, as though set forth herein verbatim.

59. WINN-DIXIE is a corporation doing business within the State of Florida and is an employer as defined by Florida Statute sec. 440.02(14).

60. MARHOLD suffered an infection on the job while working in the course and scope of her employment.

61. WINN-DIXIE, via its employees, agents, representatives or servants, fired MARHOLD, at least in part, for pursuing her worker's compensation claim.

62. The above described conduct engaged in by WINN-DIXIE, via its employees, agents, representatives or servants, was willful and with substantial disregard for Plaintiff's rights. Such conduct is prescribed by Florida Statute sec. 440.205.

63. As a result of WINN-DIXIE's wrongful retaliation, MARHOLD suffered and continues to suffer lost wages, embarrassment, mental anguish, emotional distress and other tangible and intangible damages.

WHEREFORE, Plaintiff, MAUREEN FITZGERALD-MARHOLD, respectfully prays that this Honorable Court take jurisdiction of the subject matter and parties hereto, and grant her request for trial by jury, declare that WINN-DIXIE, violated the rights of Plaintiff as protected by the laws of the State of Florida, and award back pay, front pay and/or reinstatement, prejudgment interest, compensatory damages for mental anguish, emotional distress, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, impairment of working stability and earning capacity and loss of

reputation, and such other relief as deemed appropriate by this Court.

      Respectfully submitted, this _____ day of _____, 2005.

                                    THE MEYERS FIRM, P.A.

                                    /s/ Richard F. Meyers
                                    Richard F. Meyers, Esquire
                                    9340 North 56th Street
                                    Suite 220-A
                                    Temple Terrace, Florida 33617
                                    (813)985-6550
                                    (813)985-5282 (fax)
                                    Fla. Bar No. 0893315
                                    Attorney for Plaintiff