Am hom

Recording Requested by and
when recorded return to:
ARTESIA MEDICAL DEVELOPMENT COMPANY
C/O Myron Meyers, Esq.
1100 E. Tahquitz Canyon Way
Palm Springs, California 92262

INSTR # 2005021560
O BK 14598 PG 0992
Pgs 0992 - 997; (6pgs)
RECORDED 01/14/2005 03:07:01 PM
CLERK OF COURT
HILLSBOROUGH COUNTY
DEPUTY CLERK P Beckham

## ASSIGNMENT OF LEASE

For valuable consideration receipt of which is hereby acknowledged GRANADA VILLAGE, LTD., a California limited partnership ("Assignor") does hereby assign, sell, transfer and convey to ARTESIA MEDICAL DEVELOPMENT COMPANY, a California limited partnership ("Assignee") all of the Assignor's right, title and interest in and to that certain Lease dated February 14, 1996 entered into originally by and between Grand Central Plaza Partnership, a Florida general partnership as Landlord and Winn-Dixie Stores, Inc., a Florida corporation as Tenant including all amendments and additions thereto (collectively the "Lease"). Said Lease relates to real property in the City of Tampa, County of Hillsborough, State of Florida described in Exhibit "A" attached hereto and made a part hereof.

DATED: JANUARY 10, 2005

GRANADA VILLAGE, LTD., a California
limited partnership
By: Orchard Properties, Ltd., an Idaho
   limited partnership, its General Partner

By: _Craig Phelan_
   Craig Phelan, General Partner

## ASSUMPTION OF LEASE

For valuable consideration receipt of which is hereby acknowledged ARTESIA MEDICAL DEVELOPMENT COMPANY, a California limited partnership as Assignee of the above referenced Lease does hereby expressly assume the Lease and all of Assignor's right, title and interest therein and agrees to hereafter perform all of the obligations of the Landlord thereunder.

DATED: JANUARY 10, 2005

ARTESIA MEDICAL DEVELOPMENT
COMPANY, a California limited
partnership
By: AMDC, INC., a California corporation
   Its General Partner

By:_____
   Irving Moskowitz, President

ARTESIA MEDICAL DEVELOPMENT COMPANY\GRANADA - WINN DIXIE PROPERTY
Page 1 of 2

Book14598/Page992

EXHIBIT A

STATE OF IDAHO        )
                      )
COUNTY OF BLAINE      )

Personally appeared before me, the undersigned authority in and for the said County and State, on this 10th day of January, 2005, within my jurisdiction, the within named Craig W. Phelan, who acknowledged that he is the sole General Partner of Orchard Properties, Ltd., which is a General Partner of Granada Village, LTD, and that for and on behalf of said Granada Village, LTD, and as the act and deed of said Granada Village, LTD, he executed the foregoing instrument, after first having been authorized by all of the general partners of said Granada Village, LTD to do so.

PAMELA S. ELLSWORTH
Notary Public
State of Idaho

_Pamela S. Ellsworth_
NOTARY PUBLIC
My Commission Expires: 01/24/06

[AFFIX NOTARIAL SEAL]

Residing at: Gannett


STATE OF          )
SS:               )
COUNTY OF         )

The foregoing instrument was acknowledged before me this _____ day of _____, 2005 by Irving Moskowitz as President of Artesia Medical Development Company, a California Limited Partnership, on behalf of the corporation.

Personally Known _____ OR Produced Identification _____

Type of Identification Produced _____


_____
Print or Stamp Name: _____
Notary Public, State of Florida at Large
Commission No.:
My Commission Expires:


ARTESIA MEDICAL DEVELOPMENT COMPANY\GRANADA - WINN DIXIE PROPERTY
Page 2 of 2

Book14598/Page993

STATE OF _Florida_ )
                    ) ss.
COUNTY OF _Dade_ )

On _January 6_, 200_5_ before me, the undersigned notary public, personally appeared _Chrissy Mastowski_ [X] personally known to me [ ] proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[Notary Seal: Devoney Smith, Commission # DD 072836, Expires May 22, 2005, Bonded Thru Atlantic Bonding Co., Inc.]

_____
Signature of Notary

**CAPACITY CLAIMED BY SIGNER:**

[ ] Individual(s)
[ ] Partner(s)
[ ] Trustee(s)
[ ] Corporate _____
    Officer(s)_____

[ ] Attorney-In-Fact
[ ] Subscribing Witness
[ ] Guardian/Conservator
[ ] Other:_____

_____
Title(s)

**SIGNER IS REPRESENTING**

Name of Person (s) or Entity(ies):_____

Book14598/Page996

Recording Requested by and
when recorded return to:
ARTESIA MEDICAL DEVELOPMENT COMPANY
C/O Myron Meyers, Esq.
1800 E. Tahquitz Canyon Way
Palm Springs, California 92262

## ASSIGNMENT OF LEASE

For valuable consideration receipt of which is hereby acknowledged GRANADA VILLAGE, LTD., a California limited partnership ("Assignor") does hereby assign, sell, transfer and convey to ARTESIA MEDICAL DEVELOPMENT COMPANY, a California limited partnership ("Assignee") all of the Assignor's right, title and interest in and to that certain Lease dated February 14, 1996 entered into originally by and between Grand Central Plaza Partnership, a Florida general partnership as Landlord and Winn-Dixie Stores, Inc., a Florida corporation as Tenant including all amendments and additions thereto (collectively the "Lease"). Said Lease relates to real property in the City of Tampa, County of Hillsborough, State of Florida described in Exhibit "A" attached hereto and made a part hereof.

DATED: JANUARY 6, 2005



GRANADA VILLAGE, LTD., a
California limited partnership
By: Orchard Properties, Ltd., an Idaho
    limited partnership, its General Partner

By: _____
    Craig Phelan, General Partner

## ASSUMPTION OF LEASE

For valuable consideration receipt of which is hereby acknowledged ARTESIA MEDICAL DEVELOPMENT COMPANY, a California limited partnership as Assignee of the above referenced Lease does hereby expressly assume the Lease and all of Assignor's right, title

1

Book14598/Page994

and interest therein and agrees to hereafter perform all of the obligations of the Landlord thereunder.

DATED: JANUARY 6, 2005

ARTESIA MEDICAL DEVELOPMENT
COMPANY, a California limited
partnership
By: AMDC, INC., a California corporation
    Its General Partner

By: _____ mb Pres.
    Irving Moskowitz, President

*This is not a certified copy*

# EXHIBIT "A" - LEGAL DESCRIPTION

A parcel of land being a portion of Block 10, including a portion of the 10 foot alley lying within, Fuller's Subdivision, according to the map or plat thereof as recorded in Plat Book 1, Page 68, of the Public Records of Hillsborough County, Florida, and together with, all of Lots 1 through 24, inclusive, Block 7, including the vacated alley lying within said Block 7, of said Fuller's Subdivision, and together with all that portion of Fuller Street lying North of and abutting Block 10 and lying South of and abutting Block 7, all lying in Fuller' Subdivision, as recorded in Plat Book 1, Page 68 of the Public Records of Hillsborough County, Florida and being more particularly described as follows:

From the Southwest corner of Block 10, Fuller's Subdivision, according to the map or plat thereof as recorded in Plat Book 1, Page 68, of the Public Records of Hillsborough County, Florida, and run thence N 00 deg., 17 min., 47 sec., W., 112.99 feet along the West boundary of said Block 10 (East right of way line of North Rome Avenue) to the point of beginning; thence continue N 00 deg., 17 min., 47 sec., W., 334.01 feet along said West boundary of Block 10 and the West boundary of said Block 7 to the Northwest corner of said Block 7; thence S 89 deg., 56 min., 09 sec., E., 604.52 feet along the North boundary of said Block 7 (South right of way line of North "A" Street) to the Northeast corner of said Block 7; thence S 00 deg., 18 min., 41 sec., E., 334.01 feet along the East boundaries of said Block 7 and 10 (West right of way line of North Oregon Street); thence N 89 deg., 56 min., 09 sec., W., 292.94 feet; thence S 00 deg., 03 min., 51 sec., W., 82.99 feet; thence S 89 deg., 56 min., 09 sec., E., 16.50 feet; thence S 00 deg., 03 min., 51 sec., W., 30.00 feet to a point on the South boundary of said Block 10 (North right of way line of Kennedy Boulevard); thence N 89 deg., 56 min., 09 sec., W., 53.50 feet along said South boundary of Block 10; thence N 00 deg., 03 min., 51 sec., E., 112.99 feet; thence N 89 deg., 56 min., 09 sec., W., 274.67 feet to the point of beginning.

Book14598/Page997

M-1
10/23/95
rev. 11/17/95
rev. 1/11/96

# LEASE

THIS LEASE, made this _14th_ day of _February_, 1996, between GRAND CENTRAL PLAZA PARTNERSHIP, a Florida general partnership, _____ (hereinafter called "Landlord"),

and   WINN-DIXIE STORES, INC., a Florida corporation, _____ (hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## WITNESSETH:

**PREMISES**

That the Landlord, in consideration of the rents herein reserved and of the covenants of the Tenant, does hereby lease and demise unto the Tenant, for the term hereinafter specified, the following described land and improvements thereon:

That certain piece, parcel or tract of land located _northeasterly of the corner of the intersection of North Rome Avenue and Kennedy Boulevard_, in the City of _Tampa_, County of _Hillsborough_, State of _Florida_, more particularly described as:

See Exhibit "B" attached hereto and by this reference made a part hereof for legal description of demised premises.

Together with a store building, approximately 230 feet in width by 260 feet in depth, containing approximately 60,187 square feet, and pads for Tenant's mounted cooler and freezer annexes on the rear thereof, parking area, sidewalks, service areas and other improvements to be constructed thereon by Landlord according to plans and specifications to be approved by the parties as herein provided, such improvements being more particularly shown on Plot Plan last revised December 7, 1995, by Heidt & Associates, Inc., Tampa Florida, entitled "Winn-Dixie on Kennedy Boulevard", attached hereto marked Exhibit "A" and by this reference made a part hereof.

**TERM**

1. FOR THE TENANT TO HAVE AND TO HOLD from the date when the Tenant opens said premises for the transaction of business as hereinafter provided, for an initial term of _twenty (20)_ years from said commencement date. Landlord and Tenant agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

**RENTAL**

2. The Tenant agrees to pay to the Landlord as minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of _FIVE HUNDRED EIGHTY-NINE THOUSAND and 00/100------------------------------_ Dollars ($_589,000.00_) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of _FORTY-NINE THOUSAND EIGHTY-THREE and 33/100-- ---------------------------------------------------------_ Dollars ($_49,083.33_) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof.

In addition, the Tenant agrees to pay the Landlord a percentage rental equal to the amount, if any, by which _---one---_ per cent (_--------1 %_) of Tenant's gross sales made from the demised premises in each fiscal year of Tenant during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental.

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of the percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculation of the percentage rental due hereunder, the Tenant's fiscal year shall be approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental. Tenant shall also pay all sales, use or other taxes on rentals levied by law on lessees.

**DEFINITION OF "GROSS SALES"**

2a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold in or from the demised premises, both for cash and on credit. Such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines, banks and public telephones; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, lottery entries, money orders, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

2

**RECORD OF SALES**

2b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

**CONSTRUCTION OF IMPROVEMENTS**

3. The Landlord, at its sole cost and expense, shall diligently proceed to construct a store building, parking area, sidewalks, service area and other improvements for use and occupancy by Tenant in conformity with the plans and specifications to be approved by both Landlord and Tenant. Said plans and specifications will be initialled by the parties hereto and when initialled shall constitute a part of this lease. Said plans and specifications shall provide for a complete store building, commonly referred to as a "lock and key job". Tenant at its own expense shall furnish and install its own trade fixtures, compactor and/or baler on concrete pads erected by Landlord. Said trade fixtures, equipment and compactor furnished by the Tenant shall remain the property of Tenant and may be removed by Tenant from the demised premises at any time. Any damage to the store building as result of Tenant's removal of such fixtures or equipment shall be repaired by the Tenant.

The Landlord, at its sole cost and expense, shall grade and pave the parking areas, together with the sidewalks, driveways and service area, and shall provide proper and adequate water drainage and lighting system.

**CONSTRUCTION PERIOD**

4. The final plans and specifications for construction of Tenant's store building and other improvements provided for herein shall be approved by both parties on or before __March 1, 1996__ and in the event the parties shall not approve the final plans and specifications to be evidenced by their initials thereon within said period, this lease shall be and become null and void and of no further force and effect unless the parties hereto shall mutually agree in writing to extend the period for approval of said plans and specifications.

The Landlord covenants and agrees that the construction of the store building, parking area and other improvements shall begin on or before __April 1, 1996__ after the approval of the plans and specifications by the parties hereto and shall be completed and tendered to the Tenant ready for occupancy on or before __November 1, 1996__ from such date; that failing therein, the Tenant may, at its option, cancel and terminate this lease by delivering to the Landlord a writing evidencing its election to so terminate and the Tenant shall thereupon be relieved of and from all liability hereunder; provided, however, that if the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events ~~on or before~~ December 31, 1996, said option to terminate shall not arise.

or labor       —3—       government action or inaction,

**COMMENCEMENT DATE**

5. The Tenant shall open its store for business within thirty (30) days following completion by the Landlord of the construction of the store building, parking area and other improvements and delivery of same to the Tenant as herein provided; and rent shall begin to accrue hereunder upon the date that the Tenant opens its store for business, or upon the expiration of thirty (30) days following completion by the Landlord of the construction of the improvements and delivery of same to the Tenant, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications.

Tenant shall have one (1) year after the delivery of the demised premises by Landlord to Tenant to make written demand upon Landlord of any deficiencies in the work. After the expiration of said one (1) year period, Tenant shall be deemed to have unconditionally accepted such work; provided, however, that Landlord shall assign to Tenant the benefit of any applicable manufacturer's or contractor's warranties which extend beyond said one (1) year period.

**UTILITIES**

6. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities and services used by Tenant at the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities. Tenant shall not be responsible for any charges for the fire alarm system, static or flowing water to supply the fire sprinkler system, or any "hook up" fees or other charges incident to providing access to any utility.

**REPAIRS**

7. Upon completion of construction of the improvements upon the demised premises in accordance with the plans and specifications, Tenant agrees, at its sole cost and expense, to maintain the building and appurtenances and other improvements on the demised premises and the sidewalks, parking and service areas, in good and tenantable condition and repair throughout the term of this lease, and any extensions thereof; and to make all repairs to the improvements, structural and otherwise, both interior and exterior, necessary to preserve the same in good order and condition; and to repair, at or before the end of the term of this lease, or any extensions thereof, all injury done by the installation or removal of furniture, fixtures and property.

**TAXES AND INSURANCE**

8. During the term of this lease, and any extensions thereof, Tenant agrees to pay and reimburse to Landlord as additional rental the amount of the annual ad valorem real estate taxes levied against the demised premises, and also the annual premium cost of public liability and fire and extended coverage insurance with an earthquake endorsement on the building on the demised premises. The amount of taxes attributable to the demised premises and for which Tenant is to reimburse Landlord shall be less the maximum amount of any abatements, discounts or refunds permitted by law thereon; provided, however, any additional rental payable hereunder by the Tenant may be credited on a non-cumulative basis against any and all percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit. Tenant shall be responsible only for its pro rata share of such taxes for fractional years occurring at the beginning and expiration of the term of this lease, and any extensions thereof.

Notwithstanding the foregoing, Landlord, at Landlord's option, may submit the unpaid bill for ad valorem real estate taxes to the Tenant (for the November discounted amount), and upon receipt of such statement, Tenant agrees to pay the bill within thirty (30) days after receipt thereof and provide, upon Landlord's request, written evidence of such payment to Landlord.

Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements and insurance premium statements as evidence of the taxes and insurance premiums chargeable to Tenant, and such additional rental shall be payable by Tenant within thirty (30) days after tender by Landlord to Tenant of such paid tax and insurance statements. Any payments made by Tenant to Landlord under the provisions of this Article shall be prorated for fractional years occurring at the beginning and expiration of the term of this lease, or any extensions thereof. Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of the

-4-

Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to Landlord. Any special assessments, improvement liens and the like (other than ad valorem real estate taxes) which are assessed during the term of this lease, or any exercised option extensions hereof, but which are payable in whole or in installments after the expiration or termination of this lease, shall be adjusted and prorated and Landlord shall pay the prorated share thereof for the period subsequent to such expiration or termination, and Tenant shall pay the prorated share thereof prior to such expiration or termination, it being intended that Tenant shall be obligated to reimburse Landlord only for such installments as may become due during the term of this lease, or any exercised option extensions thereunder.

Before any billing for such insurance contribution shall be due, Landlord shall furnish to Tenant the policy Declarations pages, or such additional information as necessary, indicating the schedule of insured property, schedule of coverages, basis of the premium, and premium of the insured property, together with the calculation of the insurance premium prorated to Tenant. Tenant's reimbursement for insurance coverages, whether under Article 11 or otherwise, shall not include loss of rents, liability within the demised premises or other coverages not within those required hereunder.

Notwithstanding the above, it is agreed that Tenant's obligation to make the payments herein described is expressly conditioned upon receipt from Landlord of a written statement for such ad valorem real estate tax contributions (as well as the other documents described herein if requested by Tenant) no later than December 31 of the calendar year following the year in which the taxes were due.

Notwithstanding the above, so long as Tenant is not in default hereunder and the stockholders' equity exceeds $100,000,000, Tenant may elect to self-insure each of the insurance coverages described hereinabove and in Article 11. Sums due from Tenant in lieu of insurance proceeds because of such self-insurance shall be treated as insurance proceeds for all purposes under this lease. The insurance policies shall be for a term of not less than six months and shall name Landlord, Tenant and any lender of Landlord as insured parties, as their interests may appear. Any insurance which Tenant is permitted to obtain pursuant to this Article may be the subject of self-insurance or be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant.

Notwithstanding anything contained in this lease to the contrary, if (i) a fire or casualty to be insured (or self-insured) under this lease results in any damage or destruction to Tenant's store building or any other improvements located on the demised premises described in this lease; and (ii) Tenant has chosen to self-insure with respect to all or any portion of the casualty insurance coverages described in this lease, then, promptly upon Landlord providing Tenant with documentation of the loss, Tenant shall pay (from the proceeds of insurance or otherwise) to Landlord (or any mortgagee or assignee of Landlord) an amount equal to the full replacement cost (including any costs necessary to comply with any applicable building codes) of those portions of the building and/or improvements which were damaged or destroyed as a result of such fire or casualty. The foregoing sentence shall not be deemed a waiver of Tenant's right to terminate this lease under Article 11 hereof should Landlord fail or refuse to complete the repairs and restoration required under the second paragraph of Article 11 within the time specified therein. However, Tenant's obligation to pay to Landlord (or any mortgagee or assignee of Landlord) the sums described above shall survive any early termination of the lease pursuant to the provisions of Article 11.

**FIXTURES AND ALTERATIONS**

9. The Tenant, at its own expense, may from time to time during the term of this lease make any alterations, additions and improvements in, on and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

If any mechanics' or other liens, or order for the payment of money, shall be filed against the demised premises, or any building or improvements thereon, by reason of change or alteration or addition made or alleged to have been made by or for the Tenant, or the cost or expense thereof, or any contract relating thereto, the Tenant shall cause the same to be cancelled and discharged of record, by bond or otherwise, at the election and expense of the Tenant, and shall also defend on behalf of the Landlord, at the Tenant's sole cost and expense, any action, suit or proceeding which may be brought thereon for the enforcement of such lien, liens or orders, and the Tenant will pay any damage and satisfactorily discharge any judgment entered therein, and save harmless the Landlord from any claim, attorney fees or damage therefrom.

5

If any mechanics' or other liens, or order for payment of money shall be filed against the demised premises, or on any building or improvements thereon, for any of the reasons provided in this section, and shall not be removed by the Tenant within thirty (30) days after notice given by the Landlord, the Landlord shall have the right to remove same by payment or otherwise, and all sums expensed by the Landlord for such removal, including counsel fees, shall be paid by the Tenant unto the Landlord upon demand, and shall be deemed to be additional rent due under this lease.

This lease expressly provides, pursuant to Section 713.10 Florida Statutes that the interest of the Landlord shall not be subject to liens for improvements made by Tenant. The Tenant shall notify the contractor making any such improvements of such provision in the lease, and the knowing or willful failure of Tenant to provide such notice to the contractor shall render the contract between the Tenant and the contractor voidable at the option of the contractor.

Tenant may construct and build or install on and in said premises any and all signs, racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which signs, racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

**INDEMNIFICATION** 10. The Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of accident or damage to any person or property happening on or about the demised premises, except in case of accident or damage caused by the fault or negligence of Landlord, its servants, agents or employees.

**FIRE** 11. In the event that Tenant's building shall be totally destroyed or damaged to any extent by fire or other casualty Landlord agrees to proceed promptly and without expense to Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored, provided, however, if such damage to Tenant's building to the extent of fifty percent (50%) or more occurs within the last three (3) years of the lease term hereof (whether the original lease term or an extension thereof, if then or theretofore this lease has been extended pursuant to the term hereof), then in such event Landlord shall have no obligation to restore Tenant's building unless Tenant agrees to extend the lease term hereof on the same conditions and for the same rentals so as to expire ten (10) years from date of completion of such restoration by Landlord, such extension to be in addition to and not in lieu of any renewal privileges then remaining available to Tenant, which renewal options shall not thereby be exercised. Failing such notice to extend, Landlord at its option shall have the right to terminate this lease or to restore the premises and the lease shall continue for the remainder of the then unexpired term.

In the event that Landlord shall fail within a reasonable time, not to exceed thirty (30) days following such damage (except as in this paragraph provided), to proceed with and within a reasonable time commensurate with the amount of damage, not to exceed six (6) months following such damage, to complete any repairs and restoration of the demised premises as herein required Tenant may, at its option, in either of such events, terminate this lease by giving to Landlord written notice thereof. If Landlord's failure to commence or complete said repairs within the stipulated times shall be due to strikes, war, material or labor shortages, weather conditions, government action or inaction, or similar happenings beyond its control, and provided further the repairs are completed with all due diligence commensurate with such delay, such option to terminate shall not arise. If the lease shall terminate as aforesaid and any rent shall have been paid by Tenant in advance, Landlord agrees to refund to Tenant all rent so paid applicable to the period subsequent to such damage or destruction.

Landlord shall carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees; and Tenant hereby expressly waives any and all claims against the Landlord for loss or damage to Tenant's merchandise, fixtures and equipment due to fire, explosion, windstorms or other casualties, regardless of the cause of such damage, including without limitation, damages resulting from the negligence of the Landlord, its agents, servants, or employees.

6

**QUIET ENJOYMENT**

12. The Landlord covenants, warrants, and represents that upon commencement of the lease term, the demised premises will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business, including parking in conjunction therewith, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting the Tenant from conducting a general mercantile business, including parking in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

**TAXES AND LIENS**

13. All taxes, assessments, and charges on land or improvements and obligations secured by mortgage or other lien upon the premises shall be promptly paid by Landlord when due. The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at six per cent (6%) per annum.

**CONDEMNATION**

14. If any part of the store building located on the demised premises be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, or in the event ~~that any portion of the parking area of the shopping center~~ that such portion of the overall parking area be taken so that the shopping center no longer conforms with applicable code regarding minimum parking requirements, ~~the parking area of the shopping center be so taken so as to interfere materially or substantially with the~~ or in the event that any portion of the demised premises (including parking area) be so taken so as to interfere materially or substantially with the conduct of Tenant's business in the demised premises, then in any such event, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as above provided, or in the event of any taking which does not permit a termination by the Tenant, the Landlord shall promptly restore the premises to a condition comparable to the condition at the time of taking, and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances.

Notwithstanding the foregoing, however, Tenant shall not be entitled to any award for the loss of or loss in value of leasehold, but only to an award for loss of or damage to its trade fixtures and for the unamortized cost of any improvements made by Tenant, and moving expenses if allowable, and such awards as are provided to Tenant under law.

**DEFAULT**

15. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but the Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default.

7

**BANKRUPTCY** 16. The Tenant further covenants and agrees that if, at any time, the Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease at an end and shall forthwith be entitled to immediate possession of the premises.

**CONSTRUCTION RISKS** 17. It is understood and agreed that nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing said improvements, and that the Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the premises for the causes herein stated. The Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their subcontractors, employees, agents or servants by reason of Landlord constructing said improvements pursuant to the terms of this lease. Landlord shall indemnify and save Tenant harmless from and against all claims and suits for damages to persons or property from defects in material or from the use of unskilled labor or from any negligence caused by Landlord, Landlord's contractors or by any of their employees, agents or servants during the progress of the work in constructing said improvements, or from any faulty construction thereof.

**EXCLUSIVE SUPERMARKET** 18. The Landlord agrees that, if it owns or controls any property located within the property described on Exhibit C and incorporated by reference herein (the "Restricted Property"), it will not, without the written permission of the Tenant, directly or indirectly, lease or rent such Restricted Property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any staple or fancy groceries, meats, fish, fruits, vegetables, dairy products, bakery goods, or frozen foods; nor will the Landlord permit any tenant of any such Restricted Property to sublet in any manner, directly or indirectly, any such Restricted Property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any of the above listed items.

Notwithstanding the foregoing, the foregoing restrictions shall not prohibit use of or operation on the Restricted Property by any of the following:

(a) a gasoline station with an associated convenience store, provided the square footage of any area within such associated convenience store devoted to the sale of groceries does not exceed 1,200 square feet;

(b) a drug store or pharmacy, provided that the area within such drug store or pharmacy devoted to the sale of groceries does not exceed 2,000 square feet;

(c) a restaurant (including, but not limited to any fast-food or delicatessen restaurant) which sells prepared, ready-to-eat food, including, but not limited to food for off premises consumption.

**NUISANCES** 19. The Tenant agrees that the leased demised premises or any portion thereof shall not be used for any illegal or unlawful purpose, and that the Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon.

**EXTENSIONS** 20. It is further agreed that Tenant, at its option, shall be entitled to the privilege of ___five___ ( 5 ) successive extensions of this lease, each extension to be for a period of ___five___ ( 5 ) years and on the same terms and conditions and at the same rental as provided herein for the initial lease term.

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least __six (6) months__ before the expiration of the initial term, and if extended, at least __six (6) months__ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

**NOTICES**

21. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail or delivery service with receipt to, and all rent payments shall be made to Landlord at _____

    1307 West Kennedy

    Tampa, Florida  33606

    Attention:  Steven A. Uiterwyk

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail or delivery service with receipt.

All notices required to be given to Tenant shall be sent by registered or certified mail to Tenant at

    P. O. Box 440

    Tampa, Florida  33601

or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail or delivery service with receipt.

**END OF TENANCY**

22. The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct.

**ARBITRATION**

23. In the event there should arise any misunderstanding between the parties hereto as to the compliance with the terms and conditions of this lease upon the part of either of the parties hereto, or as to whether the premises tendered by the Landlord have been improved in substantial conformity with the plans and specifications approved by the parties, or as to whether either party has ground hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties hereto agree upon one; otherwise, to a board of three arbitrators, of whom one shall be selected by each party within ten (10) days after such 30-day period, and a third person shall be selected by these two; and the decision and award of such single arbitrator if only one is used, or any two of such board, if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively, and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction. Each of the parties hereto covenants to abide by any such arbitration decision.

9

ASSIGNMENT 24. The Tenant may without the consent of the Landlord assign or sublease or vacate the demised premises in whole or in part, provided, the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease.

In the event Tenant shall voluntarily vacate the entire demised premises or cease selling merchandise therein for in excess of a period of six (6) months while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant, Landlord shall have the continuing option thereafter (unless Tenant shall have reoccupied the premises and recommenced selling merchandise) to terminate and cancel this lease upon fifteen (15) days' written notice to Tenant of its election so to do, unless within such fifteen (15) day period Tenant shall advise Landlord that Tenant had prior to receipt of such notice in good faith committed to assign this lease or sublease the demised premises to a third party, for occupancy within two (2) months.

SUBORDINATE 25. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

BENEFIT 26. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties.

SHORT FORM LEASE 27. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

MARGINAL TITLES 28. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

COMPLETE AGREEMENT 29. This written lease contains the complete agreement of the parties with reference to the leasing of said property, except plans and specifications of said building and improvements to be approved formally by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

NOTICE TO LENDER 30. Tenant agrees that it will give notice to any holder of a first mortgage encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate the lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate the lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period.

TRANSFER BY LANDLORD 31. In the event Landlord transfers Landlord's interest in this lease, Landlord agrees to promptly provide Tenant with documentary evidence, satisfactory to Tenant, of such transfer of Landlord's interest in this lease.

SELF-HELP  32. If Landlord shall default in the performance or observance of any agreement or condition in this lease contained on its part to be performed or observed, and if Landlord shall not cure such default within thirty (30) days after notice from Tenant specifying the default (or shall not within said period commence to cure such default and thereafter prosecute the curing of such default to completion with due diligence), Tenant may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of the Landlord, and any amount paid or any contractual liability incurred by Tenant in so doing shall be deemed paid or incurred for the account of Landlord and the Landlord agrees to reimburse Tenant therefor or save Tenant harmless therefrom; provided that Tenant may cure any such default as aforesaid prior to the expiration of said waiting period, but after said notice to Landlord, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the real estate or Tenant's interest therein or to prevent injury or damage to persons or property. If Landlord shall fail to reimburse Tenant upon demand for any amount paid for the account of Landlord hereunder, said amount may be deducted by Tenant from the next or any succeeding payments of rent due hereunder.

LIMITATION OF LIABILITY  33. The Tenant shall look solely to the Landlord's interest in the demised premises and in the Landlord's personal property used in connection with the demised premises for the satisfaction of any judgment or decree requiring the payment of money by the Landlord, based upon any default hereunder, and no other property or asset of the Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of such judgment or decree.

HAZARDOUS SUBSTANCES  34. Tenant shall indemnify and hold Landlord harmless from any and all claims, actions, judgments, criminal penalties, costs, liabilities, or losses (including, without limitation, any and all sums paid for settlement of claims, attorneys', consultant, and expert fees), and rulings of regulatory agencies in anywise resulting out of Tenant's having stored, used or sold hazardous substances (as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same) in the demised premises.

Similarly, Landlord shall indemnify and hold Tenant harmless from any and all claims, actions, judgments, criminal penalties, costs, liabilities, or losses (including, without limitation, any and all sums paid for settlement of claims, attorneys', consultant, and expert fees), and rulings of regulatory agencies in anywise resulting out of the fact that the demised premises were erected on ground that was or is polluted with hazardous substances as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same. Landlord additionally warrants and represents to the Tenant that the demised premises shall be free of hazardous substances (including asbestos) as of the date Tenant is tendered possession thereof.

ESTOPPEL CERTIFICATE  35. Recognizing that Landlord may find it necessary to establish to third parties, such as accountants, bank, mortgagees or prospective purchasers, the then current status of performance hereunder, Tenant, on the written request of Landlord made from time to time, and within twenty days of the request, will furnish a written certification to the third parties specified by Landlord, consisting of statements in a form satisfactory to Tenant's attorney:

(i) that this lease is in full force and effect and has not been assigned, modified, supplemented or amended (except as may be stated);

(ii) of the date through which rentals have been paid;

(iii) of the dates of the commencement and termination of this lease;

(iv) that no default, or state of facts, which, with the passage of time or notice, would constitute a default, exists on the part of either party (except as may be stated);

(v) that there are no defenses or offsets against the enforcement of this lease by the Landlord (except as may be stated); or

-11-

(vi) concerning any other information that may be reasonably requested by the third party.

Any such certification as may be requested above shall also include a reciprocal provision whereby the Landlord affirms and certifies to the Tenant that the above statements are true and correct as of said date.

**RADON GAS**

36. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

Printed Name: _____

Printed Name: Valencia Gower

As to Landlord

By: _____

GRAND CENTRAL PLAZA PARTNERSHIP
A Florida General Partnership
ISLAND CENTER CORPORATION, INC.
A Florida corporation, Its General Partner

By: _____
Its President
Printed Name: James L. Ferman Jr.
Address: P.O. Box 1321
         Tampa FL 33601

Attest: _____
Its Secretary
Address: P.O. Box 1321
         Tampa FL 33601

(CORPORATE SEAL)
LANDLORD

Printed Name: Jane Elizabeth DeWitte

Printed Name: Laura E. Baughman

As to Tenant

WINN-DIXIE STORES, INC.

By: _____
Its President
Printed Name: James _____
Address: P.O. Box B
Jacksonville, FL 32203-0297

Attest: _____
Its Secretary
Printed Name: W. _____
Address: P.O. Box B
Jacksonville, FL 32203-0297

(CORPORATE SEAL)
TENANT

12

STATE OF _Florida_ )
COUNTY OF _Hillsborough_ )

The foregoing instrument was acknowledged before me by _____
_____ President and by _____ Secretary of ISLAND CENTER CORPORATION, INC., a Florida corporation, on behalf of the corporation, as general partner of GRAND CENTRAL PLAZA PARTNERSHIP, a Florida general partnership who are: (check one)

1. __X__ personally known to me   OR

2. _____ who have produced _____
_____ as identification.

Given under my hand and official seal this __14th__ day of __February__, 1996.

_____
Printed Name: _____
Notary Public,
State and County aforesaid.
My Commission Expires: _____
Notary ID No.: _____

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me by __James Kufeldt__, President and by __W. O. Scaife, Jr.__, Assistant Secretary, of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation, who are personally known to me.

Given under my hand and official seal this __27th__ day of __February__, 1996.

_____
Printed Name: Laura E. Baughman
Notary Public,
State and County aforesaid.
My Commission Expires: _____
Notary ID No.: _____

M.  ... ..ly 17, 1998
... No. CC 356239