**Hearing Date: December 1, 2005, 1:00 p.m.**
**Objection Deadline: November 24, 2005, 4:00 p.m.**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
|  | ) |  |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
|  | ) |  |
| Debtors.[1] | ) | Jointly Administered |
|  | ) |  |

## DEBTORS' APPLICATION FOR ORDER UNDER 11 U.S.C. § 327(a) AUTHORIZING EMPLOYMENT AND RETENTION OF STUART, MAUE, MITCHELL & JAMES, LTD. AS FEE EXAMINER

Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), apply to this Court for entry of an order under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) authorizing the employment and retention of Stuart, Maue, Mitchell & James, Ltd. ("Stuart Maue") as the fee examiner in these cases (the "Application"). In support of this Application, the Debtors respectfully represent as follows:

BACKGROUND

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code").  The Debtors' cases are being jointly

administered for procedural purposes only.

2.      The Debtors are operating their businesses and managing their properties

as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No

request has been made for the appointment of a trustee or examiner.  On March 1, 2005, pursuant

to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S.

Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to

serve in these cases.  Subsequently, on August 17, 2005, the U.S. Trustee appointed an official

committee of equity security holders (the "Equity Committee").

3.      The Debtors are grocery and pharmaceutical retailers operating in the

southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace"

banners.   The Debtors' business was founded in 1925 with a single grocery store and has grown

through acquisitions and internal expansion.  As of the Petition Date, the Debtors were

considered to be the eighth-largest food retailer in the United States and one of the largest in the

Southeast with more than 900 stores in the United States.  Since the Petition Date, the Debtors

have been engaged in a footprint reduction program to sell or close 326 of their stores.

4.      This Court has jurisdiction over the Application under 28 U.S.C. § 1334.

Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicate for the relief requested by this Application is

section 327(a) of the Bankruptcy Code and such relief is subject to Rule 2014(a) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

6.      On August 10, 2005, this Court signed the order granting the motion of Wachovia Bank, National Association, in its capacity as agent for itself and certain other post-petition lenders (the "Agent"), to appoint a fee examiner (the "Fee Order").  By this Application, the Debtors request entry of an order pursuant to section 327(a) of the Bankruptcy Code to employ and retain Stuart Maue as fee examiner to review and analyze the fee applications filed by the professionals retained in these cases on the terms provided in this Application and in the letter agreement between the Debtors and Stuart Maue, dated November 10, 2005 (the "Engagement Letter").  A copy of the Engagement Letter is attached as Exhibit A to this Application.

## BASIS FOR RELIEF

7.      The Fee Order provides that a fee examiner will be selected by the Debtors, in consultation with the Creditors Committee, the Agent, and the U.S. Trustee on specific terms that will be set forth in a subsequent court order.  In connection with the implementation of the Fee Order, the Debtors requested recommendations for a fee examiner from various parties.  Several proposals were submitted to the Debtors.  The Debtors reviewed the proposals and interviewed potential fee examiners for the purpose of determining which was best suited for these cases.  Based on the recommendations received, the Debtors' interview with the potential fee examiners, and a review of the fee examiners' experience, the Debtors, in consultation with the Creditors Committee, the Agent, and the U.S. Trustee, determined that Stuart Maue is best suited to assist the Debtors in evaluating the fee applications submitted in these Chapter 11 cases.

8.      Stuart Maue is a St. Louis, Missouri company engaged in the business of legal auditing.  For approximately twenty years, Stuart Maue has performed thousands of legal

audits throughout the United States involving hundreds of millions of dollars in legal fees and expenses.  Stuart Maue has provided services similar to the services that will be provided to the Debtors, as described herein, in a number of Chapter 11 bankruptcy cases.

9.     Stuart Maue's methodology for analyzing professional fees submitted in bankruptcy fee applications involves several integrated steps.  Initially, the fee applications are reviewed for any apparent irregularities such as billings to the wrong case, missing task descriptions, and double billings.  The billing entries are scrutinized from several perspectives including chronologically, by individual, and by professional activity.  Chronological review of the fee applications permits an overview of case activity.  Examination of each individual's billing entries provides information about the participation of various staff in the proceeding.  It also highlights any irregular patterns (e.g., repetitive entries, excessive daily hours). Examination of the billing statements by professional activity supplements the chronological review and the review by individual.  For certain categories of activity engaged in by the professional firm, Stuart Maue's auditors attempt to identify the billed hours, the number of persons involved in the activity, and the specific tasks performed by each person.

<u>SERVICES TO BE RENDERED</u>

10.     Stuart Maue will review and analyze the professionals' fee applications using its standard methodology, as described above, which includes the following services:

- Reconciliation of the hours/fees and expenses set forth in the fee applications (i.e., recalculation of the billing statements and expenses).

- Review and analysis of the professional fee activities set forth in the fee applications for compliance with rules and guidelines of the Court and the billing guidelines of the Office of the U.S. Trustee.

- Review and analysis of the expenses requested in the fee applications for compliance with rules and guidelines of the Court and the billing guidelines of the

Office of the U.S. Trustee.  If receipts are provided, Stuart Maue will reconcile the outside charges with the vendor receipts.

- Review of the complete fee applications, including the narrative portion and all attachments, review of the pleadings and other documents to the extent necessary to review and analyze the professional fees and expenses.

- Schedule, convene, and moderate periodic meetings with the case professionals to discuss preliminary results of the review and analysis and to provide the case professionals with an opportunity to explain or correct invoice entries.

- Preparation of written reports of the review and analysis of the fee applications.

11.    Subject to the Court's approval of this Application, Stuart Maue has indicated its willingness to review the fee application of the Debtors' professionals in these cases.

### DISINTERESTEDNESS OF PROFESSIONALS

12.    To the best of the Debtors' knowledge, except as set forth in the affidavit of James P. Quinn (the "Quinn Affidavit") attached hereto and incorporated herein as Exhibit B, Stuart Maue (a) neither holds nor represents any interest adverse to the Debtors' estates; (b) is not a creditor, equity security holder or an insider of the Debtors; (c) does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or an investment banker for a security of the Debtors, or for any other reason; (d) has had no affiliation with the Debtors or their affiliates, their creditors or any party in interest, or their respective attorneys and accountants; and (e) is a "disinterested person" within the meaning of sections 101(14) and 327(a) of the Bankruptcy Code.

### PROFESSIONAL COMPENSATION

13.    Consistent with the Engagement Letter and as described in the Quinn Affidavit, the Debtors have agreed to pay Stuart Maue reasonable sums in accordance with hourly rates that are consistent with rates charged by Stuart Maue for similar services and to

5

compensate Stuart Maue for reasonable and necessary expenses incurred.  Stuart Maue will be

compensated for its services at its current hourly rates of $275 per hour for legal auditors, $175

per hour for systems personnel (computer programmers/consultants), $150 per hour for assistant

legal auditors, and $65 per hour for data entry personnel.  In addition, Stuart Maue will be

reimbursed for its expenses on a direct-cost basis, including express delivery service (on a direct-

cost basis), photocopying ($0.15 per page) and out-of-town travel costs, if required.  Stuart Maue

will not require a retainer and will submit its own fee applications in accordance with the

applicable administrative orders entered in these cases.

       14.    Stuart Maue will file fee applications with the court in accordance with

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy

Rules, and orders of this Court.

NOTICE

       15.    Notice of this Application has been provided to (a) counsel to the U.S.

Trustee, (b) counsel for the Agent, (c) counsel for the Creditors Committee, (d) counsel for the

Equity Committee, (e) the other parties in interest named on the Master Service List maintained

in these cases, and (f) Stuart Maue.  No other or further notice need be given.

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court (a) enter an order in the form of Exhibit C authorizing the Debtors to employ and retain Stuart Maue as fee examiner and (b) grant such other and further relief as the court deems just and proper.

Dated:  November 10, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By s/D.J. Baker
      D. J. Baker
      Sally McDonald Henry
      Rosalie Walker Gray
      Steven B. Eichel
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for the Debtors

SMITH HULSEY & BUSEY

By s/Cynthia C. Jackson
      Stephen D. Busey
      James H. Post
      Cynthia C. Jackson,
      Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for the Debtors

**EXHIBIT A**

# STUART MAUE
LEGAL COST MANAGEMENT    3840 McKELVEY ROAD, ST. LOUIS, MO 63044   **VOICE** 314.291.3030   **FAX** 314.291.6546
www.stuartmaue.com

Via E-Mail and Federal Express

November 10, 2005

Jay Frank Castle, Esq.
Group Leader - Litigation
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL  32254-3699

Re:  Engagement Proposal for Fee Examiner in Winn-Dixie Stores, Inc. Chapter 11 Bankruptcy
     Case No. 05-03817-JAF

Dear Mr. Castle:

Thank you for engaging Stuart, Maue, Mitchell & James, Ltd. (Stuart Maue) as fee examiner in the Winn-Dixie Stores, Inc. Chapter 11 filed in the United States Bankruptcy Court for the Middle District of Florida (Jacksonville).  As you requested, we are submitting the following engagement proposal:

As directed by the Court's order appointing the fee examiner, Stuart Maue will review and analyze the fee applications of the case professionals using our standard methodology which includes the following related activities:

- Reconciliation of the hours/fees and expenses set forth in the fee applications (i.e., recalculation of the billing statements and expenses).

- Review and analysis of the professional fee activities set forth in the fee applications for compliance with rules and guidelines of the Court and the billing guidelines of the Office of the United States Trustee.

- Review and analysis of the expenses requested in the fee applications for compliance with rules and guidelines of the Court, and the billing guidelines of the Office of the United States Trustee.  If receipts are provided, Stuart Maue will reconcile the outside charges with the vendor receipts.

- Review of the complete fee applications, including the narrative portion and all attachments, and review of pleadings and other documents to the extent necessary to review and analyze the professional fees and expenses.

- Schedule, convene, and moderate periodic meetings with the case professionals to discuss preliminary results of the review and analysis and to the extent necessary, provide the case professionals with an opportunity to explain or correct any noted deficiencies.

- Preparation of written reports of the review and analysis of the fee applications.

Jay Frank Castle, Esq.
Page Two
November 10, 2005

**A.**    **Reconciliation of Hours/Fees and Expenses**

For each fee application submitted for review, Stuart Maue will create a computer database of all time entries and expense charges shown in the fee application. Stuart Maue will ascertain the arithmetic accuracy of the hours and fees through manual and computerized recomputation using the hourly rates provided by the firms. Discrepancies between the amount billed and the amount computed, if any, will be reconciled whenever possible. The discrepancies that cannot be reconciled will be itemized and included in the written report. Similarly, the expenses submitted on the fee applications will be recomputed and the discrepancies, if any, itemized and displayed in the written report.

**B.**    **Analysis of Professional Fee Activities**

Stuart Maue will review the fee applications for fee activities that conflict with the rules and guidelines of the Court and the billing guidelines of the Office of the United States Trustee. Stuart Maue will also identify fees that the Court may wish to examine for necessity, relevance, and reasonableness.

The methodology used by Stuart Maue for analysis of fee applications involves several integrated steps. Initially, the fee applications are reviewed for any apparent irregularities such as billings to the wrong case, missing task descriptions, and double billings. The billing entries are scrutinized from several perspectives including chronologically, by individual, and by professional activity. Chronological review of the fee applications permits an overview of case activity. Examination of each individual's billing entries provides information about the participation of various staff in the proceeding. It also highlights any irregular patterns (e.g., repetitive entries, excessive daily hours). Examination of the billing statements by professional activity supplements the chronological review and the review by individual. For certain categories of activity engaged in by the professional firm, Stuart Maue identifies the billed hours, the number of persons involved in the activity, and the specific tasks performed by each person.

Professional activities often fall into more than one category. For example, efforts by attorneys to prosecute an adversary proceeding for recovery of a preferential payment may require research, drafting motions, taking depositions, and appearance at hearings or trial. To the extent possible, Stuart Maue may segregate and organize the professional activities and the time charged into various categories and subcategories, depending on the circumstances of the proceedings and the billing entries.

Jay Frank Castle, Esq.
Page Three
November 10, 2005

**C.    Analysis of Expenses**

Stuart Maue will review the requests for expense reimbursement for charges that appear to conflict with the rules and guidelines the Court, and the billing guidelines of the Office of the United States Trustee. Stuart Maue will also identify expense charges, if any, that the Court may wish to examine for necessity, relevance, and reasonableness. When provided with underlying documentation, such as expense receipts, Stuart Maue will reconcile this documentation to the requested charges in the fee applications.

**D.    Meetings With Case Professionals**

The purpose of meeting periodically with the case professionals is to manage case expenses proactively. The initial results of the review and analysis of the interim and final fee applications will be shared with the case professionals and the United States Trustee. Questioned entries, as well as review of the professional's cost containment measures and possible improvements in efficiencies, may be discussed. The professionals will be provided an opportunity to explain or correct any noted deficiencies before preparation of the final written report for the interim and final fee applications.

**E.    Written Reports**

Upon completion of the review and analysis of the interim and final fee applications, Stuart Maue shall prepare written reports. The reports are designed to quantify and present factual data and will include exhibits that display the findings of Stuart Maue. The scope of the review performed by Stuart Maue, the frequency of the written reports, the billing periods for which they are prepared, and to whom the reports are submitted shall be as directed by the Court. The purpose of the written report is to provide information regarding the fee and expense entries but is not intended to make any determinations or recommendations as to (i) the reasonableness or necessity of the requested fees and expenses or (ii) the amount of any fees or expenses to be allowed or disallowed.

Stuart Maue requests that the fee applications subject to review be submitted to Stuart Maue in both a hard copy with the attached exhibits, and that the fee and expense entries be submitted in an electronic copy in the LEDES 1998B format or any other delimited ASCII electronic format acceptable to Stuart Maue.

Jay Frank Castle, Esq.
Page Four
November 10, 2005

## Costs

Stuart Maue proposes to be paid for its services as fee examiner in this matter on an hourly basis according to its current hourly rate structure as follows:

| | |
|---|---|
| Legal Auditors | $275.00 |
| Assistant Legal Auditors | $150.00 |
| Computer Programmers/Consultants | $175.00 |
| Data Entry Personnel | $65.00 |

Stuart Maue will also charge for the following expenses on a direct-cost basis:

A. Express delivery service (on a direct-cost basis).

B. Photocopying ($0.15 per page).

C. Out-of-town travel costs (e.g., air fare, meals, lodging) on a direct-cost basis.

The fee structure described above is consistent with the normal billing practices of Stuart Maue, and these fees are consistent with fees charged in comparable engagements in other chapter 11 cases.

Attached and marked as "Appendix A" to this engagement proposal are the proposed procedures for the submission of the interim and final fee applications to Stuart Maue, the review and analysis of the fee applications, and the preparation and filing of the written reports.

If you have any questions regarding our engagement proposal, the appendix, or wish to discuss its terms, please do not hesitate to call me, John L. Decker, or Linda K. Cooper. We look forward to this engagement and working with you, other counsel representing the parties in interest, and the Court.

Sincerely yours,

STUART MAUE

James P. Quinn
Executive Vice President, Chief Operating Officer

JPQ/cjs

Enclosure

# Appendix A

All case professionals, except (i) the ordinary course professionals, and (ii) the professionals not required to file interim or final fee applications shall provide to the Fee Examiner within thirty (30) days of the entry of the Order appointing the Fee Examiner, a copy of their retention order and copies of the interim and final fee applications for the period from February 2005, through September 2005, in the following format:

  a. A complete hard copy, including all attachments and fee and expense detail.

  b. An electronic copy of the fee and expense detail in the LEDES 1998B format or any other delimited ASCII electronic format.  In the event a case professional is not familiar with the LEDES 1998B format, the Fee Examiner will work with the case professional to find an appropriate electronic format.

Commencing the date the Bankruptcy Court enters an order approving the appointment of Stuart Maue as Fee Examiner, the following procedures shall be followed for submitting monthly statements, and interim and final fee applications, to the Fee Examiner:

  a. A professional who seeks monthly compensation shall serve a monthly statement (the "Monthly Statement") by overnight delivery to Linda K. Cooper, Stuart Maue, 3840 McKelvey Road, St. Louis, Missouri 63044 on or about the twentieth (20th) day after the end of a month for which compensation is sought.  Such service shall be in addition to, and not in lieu of, service upon those persons named in paragraph (a) of the Order Approving Interim Compensation Procedures for Professionals.

  b. Each Monthly Statement submitted to the Debtors by a case professional shall also be submitted to the Fee Examiner in a hard copy, and in an electronic copy in the LEDES 1998B format or any other delimited ASCII electronic format.  In the event a case professional is not familiar

**APPENDIX A**
(Continued)

with the LEDES 1998B format, the Fee Examiner will work with the case professional to find an appropriate electronic format.

c.      The interim and final fee applications for allowance of compensation and reimbursement of expenses, including compensation previously paid by the Debtors on the basis of a Monthly Statement, shall be served on the Fee Examiner. To the extent that a professional has not previously served on the Fee Examiner the fee and expense detail in an electronic format, an electronic copy in the LEDES 1998B format or any other delimited ASCII electronic format shall also be served on the Fee Examiner.

d.      The Fee Examiner shall review the interim and final fee applications submitted by each case professional for the period from February 2005, through September 2005, and within one hundred twenty (120) days of receipt of the hard copy and electronic copy of the fee and expense detail, shall provide an initial report regarding such review to the case professional and the United States Trustee. The initial report will not be filed with the Court.

e.      The Fee Examiner shall review the subsequent interim and final fee applications submitted by each case professional and, within thirty (30) days of receipt of the hard copy and electronic copy of the fee and expense detail (if not previously submitted), shall provide an initial report regarding such review to the case professional and the United States Trustee. The initial report will not be filed with the Court.

f.      If the case professional so elects, the case professional shall thereafter have thirty (30) days to respond to the initial report and to provide additional information or comments in response to that report. The response to the initial report shall be in writing and forwarded to the Fee Examiner and United States Trustee by e-mail or overnight delivery.

g.      Periodic meetings between the case professional and Fee Examiner may also be scheduled to discuss the initial reports and any responses thereto. Such meetings may be held in person or telephonically as agreed between the case professional and Fee Examiner.

h.      Within sixty (60) days after the date of the initial report, the Fee Examiner shall file with the Court a final report with respect to each Fee Application. This period may be extended by mutual consent of the Fee Examiner, the case professional, and the United States Trustee.

## APPENDIX A
#### (Continued)

i.          Within thirty (30) days after the date of the Final Report, the professional may file with the Court a response to such Final Report.

The Fee Examiner shall be deemed to have filed a request for notice of papers filed in these cases under Bankruptcy Rule 2002.   Accordingly, the Fee Examiner shall be served with all such papers.

**EXHIBIT B**

Hearing Date: December 1, 2005, 1:00 p.m.
Objection Deadline: November 24, 2005, 4:00 p.m.

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
|  | ) |  |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
|  | ) |  |
| Debtors.[1] | ) | Jointly Administered |
|  | ) |  |

## AFFIDAVIT AND STATEMENT OF JAMES P. QUINN IN SUPPORT OF DEBTORS' APPLICATION FOR ORDER UNDER 11 U.S.C. § 327(a) AUTHORIZING EMPLOYMENT AND RETENTION OF STUART, MAUE, MITCHELL & JAMES, LTD. AS FEE EXAMINER

| | |
|---|---|
| STATE OF MISSOURI ) | |
| ) | ss.: |
| COUNTY OF ST. LOUIS ) | |

Mr. James P. Quinn being duly sworn, deposes and says:

1.      The undersigned, James P. Quinn, is an Executive Vice President and Chief Operating Officer of Stuart, Maue, Mitchell & James, Ltd. ("Stuart Maue"). The legal auditing firm of Stuart Maue has been selected to provide assistance to the Debtors in the above-captioned jointly administered cases. Pursuant to Bankruptcy Rule 2014, James P. Quinn sets forth herein Stuart Maue's connections with Winn-Dixie Stores, Inc.

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

and certain of its subsidiaries and affiliates (collectively, the "Debtors"),

creditors, other parties in interest, the professionals retained in these cases,

the United States Trustee, and any person employed in the Office of the

United States Trustee.

QUALIFICATIONS OF PROFESSIONALS

2.    Stuart Maue is a St. Louis, Missouri company engaged in the business of

legal auditing.  For approximately twenty years, Stuart Maue has

performed thousands of legal audits throughout the United States

involving hundreds of millions of dollars in legal fees and expenses.

3.    Stuart Maue has provided services similar to the services that will be

provided to the Debtors in a number of Chapter 11 bankruptcy cases.

4.    Stuart Maue employs a staff of legal auditors, computer professionals, and

other personnel to perform its legal audits.  Stuart Maue has made a

significant investment in its computer system and has designed its auditing

methodology to utilize its computer capabilities.

5.    Stuart Maue's methodology for analyzing professional fees submitted in

bankruptcy fee applications involves several integrated steps.  Initially, the

fee applications are reviewed for any apparent irregularities such as

billings to the wrong case, missing task descriptions, and double billings.

The billing entries are scrutinized from several perspectives including

chronologically, by individual, and by professional activity.

Chronological review of the fee applications permits an overview of case

activity.  Examination of each individual's billing entries provides

information about the participation of various staff in the proceeding.  It

2

also highlights any irregular patterns (e.g., repetitive entries, excessive daily hours). Examination of the billing statements by professional activity supplements the chronological review and the review by individual. For certain categories of activity engaged in by the professional firm, Stuart Maue's auditors attempt to identify the billed hours, the number of persons involved in the activity, and the specific tasks performed by each person.

<u>SERVICES TO BE RENDERED</u>

6.    Stuart Maue will review and analyze the fee applications of the case professionals using our standard methodology as described above, which includes the following related activities:

- Reconciliation of the hours/fees and expenses set forth in the fee applications (i.e., recalculation of the billing statements and expenses.

- Review and analysis of the professional fee activities set forth in the fee applications for compliance with rules and guidelines of the Court and the billing guidelines of the Office of the United States Trustee.

- Review and analysis of the expenses requested in the fee applications for compliance with rules and guidelines of the Court and the billing guidelines of the Office of the United States Trustee. If receipts are provided, Stuart Maue will reconcile the outside charges with the vendor receipts.

- Review of the complete fee applications, including the narrative portion and all attachments and review of pleadings and other documents to the extent necessary to review and analyze the professional fees and expenses.

- Schedule, convene, and moderate periodic meetings with the case professionals to discuss preliminary results of the review and analysis and to provide the case professionals with an opportunity to explain or correct invoice entries.

- Preparation of written reports of the review and analysis of the fee applications.

## DISINTERESTEDNESS OF PROFESSIONALS

7.     Stuart Maue is not related to or connected to, and, to the best of the undersigned's knowledge, no other employee of Stuart Maue is related to or connected to, any judge of the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, or the United States Trustee for the Middle District of Florida or to any employee in the office thereof.

8.     Stuart Maue has audited the bills of numerous law firms and accounting firms throughout the country involving numerous matters unrelated to the Debtors.  Some of these law firms and accounting firms are included among the professionals retained in these cases, whose fees will be subject to review by Stuart Maue.  Others of these firms are listed on the Debtors' master service list and participate on behalf of parties in interest in these cases.

9.     Except as set forth herein, Stuart Maue and its professionals (i) do not have any connection with the Debtors or their affiliates, their creditors, or any other party in interest, or their respective attorneys and accountants, including in particular the professionals whose fees will be subject to review by Stuart Maue, (ii) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code (as that term is modified by section 1107(b) of the Bankruptcy Code), and (iii) do not hold or represent any interest adverse to the estates.

10.     Neither Stuart Maue nor any professional at Stuart Maue holds or represents any interest adverse to the Debtors' bankruptcy estates.

11.    Neither Stuart Maue nor any professional at Stuart Maue is or was a creditor, an equity security holder or an insider of the Debtors.

12.    Neither Stuart Maue nor any professional at Stuart Maue is or was an investment banker for any outstanding security of the Debtors.

13.    Neither Stuart Maue nor any professional at Stuart Maue is or was within three years before the Petition Date, an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of a security of the Debtors.

14.    Neither Stuart Maue nor any professional at Stuart Maue is or was within two years before the Petition Date, a director, officer or employee of the Debtors or of an investment banker engaged by the Debtors.

15.    Neither Stuart Maue nor any professional at Stuart Maue has an interest materially adverse to the interest of the Debtors' bankruptcy estates, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker specified in the foregoing paragraphs, or for any other reason.

16.    If the undersigned discovers any matter which creates a conflict of interest, or any information contrary to or in addition to that set forth herein, the undersigned will disclose such information to the Court and all parties in interest.

17.    Accordingly, the undersigned believes that Stuart Maue is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

<u>PROFESSIONAL COMPENSATION</u>

18.    Stuart Maue will charge for the above-described services at its current

hourly rates.  The hourly rates of Stuart Maue's personnel are as follows:

   a.     Legal Auditors, $275.00
   b.     Systems Personnel (Computer Programmers/Consultants), $175.00
   c.     Assistant Legal Auditors, $150.00
   d.     Data Entry Personnel, $65.00

19.    In addition, Stuart Maue shall charge for expenses on a direct-cost basis,

including express delivery service (on a direct-cost basis), photocopying

($0.15 per page) and out-of-town travel costs, if required.  Stuart Maue

will not require a retainer and will submit its own fee applications in

accordance with the applicable administrative orders entered in this case.

20.    Stuart Maue intends to use its personnel in the most efficient and cost-

effective manner in performing the services required.

21.    Stuart Maue has no agreement with any other entity to share any

compensation received, nor will any be made, except as permitted under

section 504(b)(1) of the Bankruptcy Code.

_James P. Quinn_

James P. Quinn

Sworn to before me this 10th
day of November 2005

_Beverly A. Moore_
Notary Public

" NOTARY  SEAL "
Beverly A. Moore , Notary Public
Jefferson County, State of Missouri
My Commission Expires 10/24/2008
Commission Number 04409154

7

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN**
**STUART, MAUE, MITCHELL & JAMES LTD. AS FEE EXAMINER**

These cases came before the Court for hearing on December 1, 2005, upon the application of Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned jointly-administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) authorizing the employment and retention of Stuart, Maue, Mitchell & James Ltd. ("Stuart Maue") as a fee examiner in these cases (the "Application").[1]  The Court has reviewed the Application and the supporting affidavit of James P. Quinn (the "Quinn Affidavit") and considered the representations of counsel.  Based upon the representations of counsel and without objection by the United States Trustee or any other interested parties, after due deliberation and finding proper notice has been given, the Court determines that good cause exists to grant the relief requested in the Application as provided in this Order and that granting such relief is in the best interest of these estates and creditors.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.    The Application is granted as provided in this Order.

---

[1]    All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Application.

2.      The Debtors are authorized to employ and retain Stuart Maue to serve as fee examiner in these cases.  Stuart Maue is authorized and directed to review all fee applications filed in these cases in accordance with the Application (and the exhibits thereto) and this Order.

3.      The Order applies to all professionals in these cases who are currently employed or to be employed by court order pursuant to sections 327 or 328 of the Bankruptcy Code, except (i) professionals retained by the Debtors as ordinary course professionals, or (ii) professionals who are not required to file fee applications (the "Professionals").

4.      Notwithstanding anything herein to the contrary, the terms of the Final Order Approving Interim Compensation Procedures for Professionals entered on March 15, 2005 (the "Interim Compensation Order"), including the provisions for interim monthly payment of Professionals' fees and expenses, shall remain in effect.

5.      Except as set forth in this Order, Stuart Maue's duties and related review procedures shall be those set forth in the Engagement Letter and the Appendix thereto (collectively, the "Engagement Letter") attached as Exhibit A to the Application.

6.      Stuart Maue shall review in detail all interim (past and present) and final fee applications, except as otherwise set forth in this Order, filed by Professionals in these cases pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with procedures set forth in the Engagement Letter.

7.      Stuart Maue shall prepare reports in a format agreed to by the Debtors, the Agent, the Creditors Committee and the Equity Committee designed to quantify and present factual data potentially relevant to a determination of whether the requested fees and expenses meet the applicable standards of section 330 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the local rules of this Court (the "Local Rules"), the United

States Trustee Guidelines for Reviewing Applications for the Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "Guidelines") and the applicable requirements set forth therein.   Unless requested otherwise by the Court, Stuart Maue's only role shall be to provide such factual data to the Court in the agreed format in accordance with the terms of this Order.   Stuart Maue shall not make any determinations or recommendations as to either (i) the reasonableness or necessity of the requested fees and expenses or (ii) the amount of any fees or expenses to be allowed or disallowed.

8.    Stuart Maue shall prepare an initial report and a final report in accordance with the guidelines set forth in the Engagement Letter.   Notwithstanding the guidelines set forth in the Engagement Letter, a Professional and Stuart Maue may file any additional or supplemental papers necessary or appropriate to memorialize or implement the resolution of issues relating to a Professional's underlying fee application.   Additionally, other parties in interest may supplement any timely objections to a fee application within fifteen (15) days after the filing of a final report by Stuart Maue.

9.    Stuart Maue shall be compensated on the terms described in the Application (and the exhibit thereto) upon appropriate application in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Compensation Order, the Guidelines, any other applicable orders issued by the Court, and shall be subject to the same procedures, requirements and standards for the allowance and payment of its fees and expenses as the Professionals.

10.    This Order does not limit the statutory rights and obligations of interested parties.

11.    Stuart Maue shall be added to the master service list in these cases and accordingly, shall be served with all papers filed in these cases.

12.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

Dated December ___, 2005 in Jacksonville, Florida.


_____

Jerry A. Funk
United States Bankruptcy Judge


Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.

4

554834.07-New York Server 6A - MSW