Hearing Date:   December 1, 2005
Hearing Time:   1:00 PM (EST)

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

------------------------------------------------------------------x
:
In re:                                                 :   Case No. 05-03817-3F1
:
WINN-DIXIE STORES, INC., *et al.*,                     :   Chapter 11
:
    Debtors.                                           :   Jointly Administered
:
------------------------------------------------------------------x

TO THE HONORABLE JERRY A. FUNK,
UNITED STATES BANKRUPTCY JUDGE:

**SECOND INTERIM APPLICATION OF
TOGUT, SEGAL & SEGAL LLP PURSUANT TO
ORDER DATED MAY 19, 2005 FOR SERVICES
RENDERED FOR REIMBURSEMENT OF EXPENSES**

Togut, Segal & Segal LLP ("TS&S"), as conflicts counsel for Winn-Dixie Stores, Inc. and the other above-captioned debtors and debtors in possession (collectively, "Winn-Dixie" or the "Debtors"), respectfully submits this application (the "Application") for reimbursement of expenses incurred in connection with services rendered pursuant to pursuant to the May 19, 2005 Order authorizing the Debtors' retention of TS&S on a final basis (the "May 19 Order"). In support of this Application, TS&S states:

I.   **FEES AND EXPENSES FOR WHICH ALLOWANCE IS SOUGHT**

    1.    This Application is made pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") and the May 19 Order for allowance of compensation for services rendered to the Debtors in the amount of $15,190, and for reimbursement of expenses in the amount of $1,307.54.  A copy of the May 19 Order is attached hereto as Exhibit "1".

2. TS&S seeks compensation and reimbursement of expenses for the period of July 12, 2005 through September 30, 2005 (the "Fee Period") incurred in connection with the First Interim Application that was prepared and filed by TS&S ("The First Interim Fee Application") pursuant to the May 19 Order which provided:

> TS&S shall be entitled to seek compensation for services provided between February 28, 2005 and April 13, 2005, and reimbursement for associated expenses, *together with any fees and expenses incurred in connection with seeking such compensation and reimbursement,* under appropriate appropriate application in accordance with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, and orders of this Court.

(Emphasis supplied).

3. TS&S attorneys and paraprofessionals expended a total of 25.7 hours during the Fee Period rendering services in connection with the First Interim Fee Application for which compensation is sought.  A schedule setting forth the number of hours expended by the firm's partners, counsel, associates and paraprofessionals during the Fee Period, their respective hourly rates, and the year in which each attorney was admitted to practice is attached as Exhibit

4. "2."  A schedule specifying the type of expenses for which TS&S is seeking reimbursement during the Fee Period and the total amount of each category is attached as Exhibit "3."  To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Fee Period, but are not processed until

after the date of this Application, TS&S reserves the right to request additional compensation and reimbursement in a future application.

5.  TS&S maintains computerized records of the daily time slips completed by all attorneys and paraprofessionals. Preceding the time entries is a chart listing the names, billing rates and time spent by each of the attorneys and paraprofessionals rendering services on behalf of the Debtors. In support of this Application, copies of these computerized records, together with a computer-generated detailed itemization of the expenses incurred, have been filed electronically with the Court as a supplement to this Application and furnished to the Debtors, the Court, the United States Trustee, the Debtors' secured lenders, and counsel for the official statutory committee of unsecured creditors appointed in these cases (the "Committee").

6.  As confirmed by the Certification of Neil Berger, a member of TS&S, attached as Exhibit "4," all of the services rendered by TS&S during the Fee Period for which compensation is sought were rendered pursuant to the May 19 Fee Order.

## II.   BACKGROUND

7.  The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, as of the Petition Date the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and grew through acquisitions and internal expansion. As of the Petition Date, the Debtors operated more than 900 stores in the United States with nearly 79,000 employees. Substantially all of the Debtors' store locations are leased rather than owned.

8.   On February 21, 2005 (the "Petition Date"), the Debtors each filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

9.   On March 2, 2005, the Committee was appointed to serve in these cases pursuant to section 1103 of the Bankruptcy Code.  The Committee retained Milbank, Tweed, Hadley & McCloy LLP as its counsel.

10.   On March 3, 2005, the New York Bankruptcy Court entered an Order authorizing the Debtors' retention of TS&S on an interim basis, *nunc pro tunc* to February 28, 2005, to perform services for the Debtors on the matters for which Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") could not represent the Debtors' due to conflicts, and to perform other discrete duties as would be assigned to TS&S by Skadden (the "TS&S Interim Order").

11.   The Debtors' cases are being jointly administered for procedural purposes only.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No request has been made for the appointment of a trustee or examiner.

12.   By an Order of the New York Bankruptcy Court entered on April 13, 2005, as amended on April 14, 2005, (the "Venue Transfer Date") the Debtors' cases were transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1).

13.   This Court has jurisdiction over this Application under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## III.   RETENTION OF TS&S

14.     The TS&S Interim Order was entered by the New York Bankruptcy Court on March 30, 2005.  Pursuant to the May 19 Order, TS&S is "entitled to seek compensation for services provided between February 28, 2005 and April 13, 2005, and reimbursement for associated expenses, together with any fees and expenses incurred in connection with seeking such compensation and reimbursement."

15.     On July 12, 2005, TS&S filed with the Court the First Interim Fee Application for compensation and reimbursement of expenses for the periods of February 28, 2005 to April 13, 2005;  and June 21, 2005 to July 11, 2005.  The Order approving the First Interim Fee Application was entered by the Court on August 4, 2005.

16.     TS&S is a highly specialized "boutique".  For more than 25 years, the firm's practice has been limited, almost exclusively, to insolvency and bankruptcy matters.  TS&S has considerable experience in representing high profile chapter 11 debtors, and has acted in a professional capacity in hundreds of cases representing the interests of debtors, creditors' committees, secured creditors and trustees.

17.     Some of the chapter 11 debtors TS&S has represented include: (i) Enron Corp. and certain of its affiliates, which are primarily engaged in energy trading and operating gas transmission systems and which filed the second largest chapter 11 cases in U.S. history (TS&S is bankruptcy co-counsel for the Enron debtors);  (ii) Delphi Corporation and certain of its affiliated, which are primarily engaged in the manufacture and sale of components for the auto industry;  (iii) Allegiance Telecom, Inc. and its related debtor entities, which was a facilities-based national local exchange carrier that provided integrated telecommunications products and services;  (iv) Ames Department Stores, Inc., the largest regional discount retailer in the United States (where

TS&S is co-counsel);  (v) the operating subsidiaries of Loews Cineplex Entertainment Corporation, which involved the restructuring of the second largest movie theatre exhibitors in the U.S. with over $1.5 billion of debt (where TS&S is co-counsel);  (vi) Daewoo International (America) Corp., an international trading company;  (vii) ContiMortgage Corporation and certain of its affiliates, which were engaged in the consumer finance business and which filed chapter 11 cases to restructure more than $1 billion of debt;  (viii) OnSite Access, Inc. and certain of its subsidiaries, which provided voice and data communication services to tenants in commercial buildings located throughout the United States and which filed chapter 11 cases to restructure more than $100 million in debt;  (ix) Rockefeller Center, which involved the restructuring of more than $1.3 billion of debt and 12 historic landmarked buildings in the heart of Manhattan;  (x) the Olympia & York Tower B Company's World Financial Center, which concerned the restructuring of more than $1 billion of debt;  (x) Guilford Mills, Inc. and its subsidiaries, one of the largest automotive textile producers in the country, which restructured over $300 million of secured debt and paid all creditors in full under a confirmed plan;  and (xii) Clift Holdings LLC, which restructured nearly $100 million of debt and recently confirmed a plan which will pay all creditors in full, plus interest.

18. The work encompassed by this Application for which TS&S seeks compensation was performed efficiently and at the lowest cost to the Debtors' estates.

### IV.   SERVICES RENDERED BY TS&S DURING THE FEE PERIOD

19. The following is a summary description of the services performed by TS&S during the Fee Period.  All of the professional services provided by TS&S are set forth in TS&S' computerized time records, and this Court is respectfully referred to those records for the details of all of the work performed.

20.     During the Fee Period, TS&S rendered services in connection with the preparation and prosecution of the First Interim Fee Application. TS&S prepared the First Interim Fee Application and filed it with the Court on July 12, 2005. Subsequent to the filing of the First Interim Fee Application, Wachovia Bank field a Motion to Appoint a Fee Examiner in the Debtors cases' (the "Fee Examiner Motion"), which TS&S reviewed and was consulted by the Debtors. In connection therewith, TS&S responded to inquiries regarding the Fee Examiner Motion and to objections filed by the United States Trustee regarding the proposed order approving the First Interim Fee Application.

21.     TS&S prepared for and attended the August 4, 2005 hearing to consider the First Interim Fee Application and the applications of other professionals in the Debtors' cases, and communicated with parties-in-interest in preparation for that hearing. As confirmed by the attached time records, TS&S has billed all travel time at one-half rate.

## VI.     THE COMPENSATION REQUESTED

22.     The compensation and reimbursement of expenses sought by this Application were contemplated and authorized by the May 19 Order, and they were necessary and appropriate.

23.     TS&S respectfully submits that the compensation requested by this Application is consistent with the May 19 Order and satisfies the criteria that are considered by Bankruptcy Courts in determining allowances of compensation. *See, e.g., In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883 (11th Cir. 1990); *In re Beverly Mfg. Corp.*, 841 F.2d 365 (11th Cir. 1988); *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.), *cert. denied*, 431 U.S. 904 (1977); *Johnson v. Georgia Highway Express, Inc.*, 488

F.2d 714 (5th Cir. 1974); *In re Drexel Burnham Lambert Group Inc.*, 133 B.R. 13 (Bankr. S.D.N.Y. 1991).

24. Additionally, the Application requests that TS&S be paid according to the prevailing market rates in New York, New York for services that were provided pursuant to the May 19 Order. Bankruptcy Code section 330 dictates whether professional fees are unreasonable, and requires a market analysis of those fees in determining their reasonableness. Such a market analysis confirms that the rates charged by TS&S are neither excessive nor unreasonable.

25. *In re Farley*, 156 B.R. 203, 204 (Bankr. N.D.Ill. 1993), is instructive: there the Pension Benefit Guaranty Corporation ("PBGC") objected to the hourly rates charged by the Debtor's attorneys, Kaye, Scholer, Fierman, Hays & Handler ("Kaye Scholer"), a New York law firm, because the bankruptcy case was not filed in New York. *Id.* at 209. PBGC objected because Kaye Scholer's rates were higher than the average hourly rates charged by non-New York firms involved in the case. *Id.* at 206. Rejecting that objection, Judge Schmetterer held that attorneys could charge the rates prevailing in the areas where their offices were located, and that those rates would not be dictated by the venue. *Id.* at 213. TS&S's office is located in Manhattan. As a result, it is appropriate for TS&S to charge prevailing New York City rates.

26. In addition, the *Farley* Court utilized a market analysis in evaluating Kaye Scholer's fees. The Court held that a "reasonable rate" in the market was one that an attorney "could have been collecting directly from paying clients for comparable work." *Id.* at 211. The Court determined that Kaye Scholer charged, and collected, its fees from paying clients on similar engagements, therefore rendering the fees reasonable. *Id.* at 212. Additionally, the Court determined that the debtors had their choice of attorneys and bargained at arms length with Kaye Scholer for its services, once again

8

indicating that a market existed for services at Kaye Scholer's prevailing rates. *Id.* The compensation that TS&S seeks herein is measured upon the rates that it changes all of its other clients. See Neil Berger Certification attached as Exhibit "4,". After careful consideration, TS&S was chosen as conflicts counsel by the Debtors.

27. TS&S respectfully submits that application of the foregoing criteria more than justifies the compensation requested in this Application.

28. TS&S has devoted 25.7 hours of actual recorded time during the Fee Period incurred in connection with the First Interim Fee Application resulting in time charges of $15,190.00. Throughout the Fee Period, TS&S sought to assign projects in this case to associates, law clerks, and paraprofessionals who could most efficiently and expeditiously handle them. In addition to the fees sought, TS&S has incurred $1,037.54 in out-of-pocket expenses during the Fee Period. TS&S respectfully submits that the fees and expenses in the annexed time slip entries are fair and reasonable.

29. No part of the compensation to be received pursuant to this Application will be shared with any other person or firm, and no other agreements, either express or implied, to share any compensation received as attorneys for the Debtors has been, or will be, made by TS&S.

30. Copies of this Application have been given to: (i) the Debtors; (ii) co-counsel for the Debtors; (iii) counsel for the Committee; (iv) the United States Trustee; and (v) counsel for the Debtors' secured lenders.

**WHEREFORE**, TS&S respectfully requests that this Application be granted and that it be awarded an allowance of $15,190 for legal services rendered to the Debtors during the Fee Period, and $1,037.54 for reimbursement of expenses,

and that the Debtors be directed to pay such amounts to the extent not previously paid, together with such other and further relief be granted as may be just and proper.

Dated:   New York, New York
         November 10, 2005

WINN-DIXIE, *et al.*
Debtors and Debtors in Possession,
By their Conflicts Counsel,
TOGUT, SEGAL & SEGAL LLP
By:

/s/Neil Berger
ALBERT TOGUT (AT-9759)
NEIL BERGER (NB-3599)
Members of the Firm
One Penn Plaza, Suite 3335
New York, New York  10119
(212) 594-5000