UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,

    Debtors.

_____/

Case No.: 3:05-bk-03817-JAF

Chapter 11

Jointly Administered

**FIRST APPLICATION OF AKERMAN SENTERFITT, CO-COUNSEL
TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
FOR INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND FOR REIMBURSEMENT OF EXPENSES
INCURRED DURING PERIOD FROM APRIL 22, 2005,
THROUGH AND INCLUDING SEPTEMBER 30, 2005**

| | |
|---|---|
| Name of Applicant: | Akerman Senterfitt |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | April 22, 2005 |
| Period for which compensation and reimbursement is sought: | April 22, 2005 - September 30, 2005 |
| Amount of Compensation requested: | $156,171.50 |
| Amount of Expense Reimbursement requested: | $ 19,547.28 |

This is a(n): __X__ interim  _____ final application.

{JA255383;2}

This is the first interim fee application filed by Akerman Senterfitt in these cases.

Prior Applications:

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| | N/A | N/A | N/A | N/A |

**First Interim Fee Application of Akerman Senterfitt:**
**As Co-Counsel to Official Committee of Unsecured**
**Creditors of Winn-Dixie Stores, Inc., et al.**
**(April 22, 2005 – September 30, 2005)**

| Name | Position; Experience | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|
| John B. Macdonald | Shareholder; admitted in 1977 | $285.00 | 289.20 | $82,422.00 |
| David E. Otero | Shareholder; admitted in 1987 | $350.00 | 11.70 | $4,095.00 |
| Terry A. Moore | Shareholder; admitted in 1976 | $295.00 | 1.40 | $413.00 |
| Cynthia M. Montgomery | Of Counsel; admitted in 1993 | $220.00 | 2.50 | $550.00 |
| R. Raye Curry | Of Counsel; admitted in 1994 | $245.00 | 102.90 | $25,210.50 |
| Erik P. Kimball | Of Counsel; admitted in 1997 | $400.00 | 1.20 | $480.00 |
| Jacob A. Brown | Associate; admitted in 1998 | $200.00 | 11.80 | $2,360.00 |
| Patrick P. Patangan | Associate; admitted in 1998 | $190.00 | 95.30 | $18,107.00 |
| Crystal C. Ganpath | Associate; admitted in 2003 | $155.00 | 8.00 | $1,240.00 |
| Emily Romberg | Associate; admitted in 2004 | $180.00 | 25.10 | $4,518.00 |
| Jennifer S. Meehan | Paralegal | $120.00 | 139.40 | $16,728.00 |
| Roseanne M. Norwood | Paralegal | $120.00 | .40 | $48.00 |
| **TOTAL** | | $226.69[1] | 688.90 hours | $156,171.50 |

---

[1] The blended rate <u>excluding</u> paraprofessionals is $253.86.

{JA255383;2}                                    3

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,　　　　　Case No.: 3:05-bk-03817-JAF

　　　　Debtors.　　　　　　　　　　　　　Chapter 11

　　　　　　　　　　　　　　　　　　　　　Jointly Administered

_____/

FIRST APPLICATION OF AKERMAN SENTERFITT, CO-COUNSEL
TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR
INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM
APRIL 22, 2005, THROUGH AND INCLUDING SEPTEMBER 30, 2005

Akerman Senterfitt ("Akerman"), co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Winn-Dixie Stores, Inc., and its affiliated debtors and debtors-in-possession appointed in the above-captioned cases (collectively, "Winn-Dixie" or the "Debtors"), submits its application (the "Application"), pursuant to Sections 330 and 331 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under Section 330 of the Bankruptcy Code effective January 30, 1996 (the "U.S. Trustee Guidelines"), and the Final Order Approving Interim Compensation Procedures for Professionals, dated March 15, 2005 (Docket No. 434) (the "Interim Compensation Order"), for the allowance of interim compensation for professional services rendered from April 22, 2005, through and including September 30, 2005 (the "First Interim Compensation Period"), and for reimbursement of

{JA255398;4}

expenses incurred in connection with such services, and in support thereof respectfully represents as follows:

## I. INTRODUCTION

### A. Background

1. On February 21, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. On March 1, 2005, the United States Trustee appointed the Committee and designated the following seven members to serve: (i) Capital Research & Management Company; (ii) Deutsche Bank Trust Company Americas; (iii) Kraft Foods Global, Inc., (iv) New Plan Excel Realty Trust, Inc., (v) OCM Opportunities Fund V, L.P.; (vi) Pepsico & Subsidiaries; and (vii) R2 Investments, LDC. At its organizational meeting, the Committee selected the law firm Milbank, Tweed, Hadley & McCloy, LLP ("Milbank") as counsel to represent it during the pendency of Winn-Dixie's Chapter 11 cases. By Order of the New York Bankruptcy Court dated April 12, 2005, the Committee was authorized to retain and employ Milbank.

3. Pursuant to the United States Trustee's Amended Notice of Appointment of Committee Holding Unsecured Claims dated August 29, 2005, OCM Opportunities Fund V, L.P. was removed from the Committee by virtue of its voluntary resignation, and Wilmington Trust Company, as Indenture Trustee, was appointed to serve as an additional member of the Committee.

4. By Order entered on April 13, as amended on April 14, 2005, the Debtors' cases were transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. §1412 and Rule 1014(a)(1), Federal Rules of Bankruptcy Procedure.

5. Pursuant to this Court's Amended Order Upon Transfer of Venue dated April 19, 2005, Orders entered by the New York Bankruptcy Court within the Debtors' Chapter 11 cases remain in full force and effect before this Court unless otherwise ordered by this Court consistent with the powers inherent in any bankruptcy court. The Order requires out-of-state attorneys to comply with Local Bankruptcy Rule 2090-1, which requires, *inter alia*, a member of the bar of the Middle District of Florida, resident in Florida, to be responsible for the progress of the case.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. The statutory predicates for the relief sought herein are Section 1103(a) and (b) of the Bankruptcy Code and Bankruptcy Rules 2014 and 5002.

B.   **Retention of Akerman and Billing History**

7. On June 13, 2005, pursuant to the Order Under 11 U.S.C. §1103 and Fed. R. Bankr. P. 2014 and 5002, Authorizing Retention and Employment of Akerman Senterfitt as Co-Counsel to Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al. (Docket No. 1684) (the "Retention Order"), the Committee's retention of Akerman in these cases was authorized effective *nunc pro tunc* to April 22, 2005.

8. This Application is Akerman's first interim application for approval and allowance of compensation and reimbursement of expenses. Akerman makes this interim

application pursuant to Sections 330 and 331 of the Bankruptcy Code. No prior application has been made to this or any other court for the relief requested herein.

9. In accordance with the Interim Compensation Order, Akerman submitted monthly fee statements to, among others, the Debtors seeking interim compensation and reimbursement of expenses. During the First Interim Compensation Period, Akerman submitted the following fee statements:

(a) On July 20, 2005, pursuant to the Interim Compensation Order, Akerman served its first fee statement for the period from April 22, 2005, through and including June 30, 2005 (the "First Fee Statement"). The First Fee Statement sought an allowance of $61,639.00 as compensation for services rendered and the reimbursement of $416.67 in expenses.

(b) On August 18, 2005, pursuant to the Interim Compensation Order, Akerman served its second fee statement for the period from July 1, 2005, through July 31, 2005 (the "Second Fee Statement"). The Second Fee Statement sought an allowance of $37,876.50 as compensation for services rendered and the reimbursement of $10,370.98 in expenses.

(c) On September 13, 2005, pursuant to the Interim Compensation Order, Akerman served its third fee statement for the period from August 1, 2005, through August 31, 2005 (the "Third Fee Statement"). The Third Fee Statement sought an allowance of $39,616.50 as compensation for services rendered and the reimbursement of $8,032.81 in expenses.

(d) On October 14, 2005, pursuant to the Interim Compensation Order, Akerman served its fourth fee statement for the period from September 1, 2005, through September 30, 2005 (the "Fourth Fee Statement" and together with the First Fee Statement, Second Fee Statement, and Third Fee Statement, collectively, the "First Interim Fee Statements"). The Fourth Fee Statement sought an allowance of $17,039.50 as compensation for services rendered and the reimbursement of $726.82 in expenses.

10. As of the filing of this Application, Akerman has received one payment during the First Interim Compensation Period totaling $130,126.06 with respect to the First Interim Fee

Statements. Akerman has applied this payment to the First Interim Fee Statements.[1] There is an unpaid balance of $45,592.72 for the First Interim Compensation Period.

11.     Akerman has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

12.     No promises have been received by Akerman or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## II.     CASE STATUS

13.     The Debtors have not filed a disclosure statement or a plan of reorganization in these cases.

## III.     APPLICATION

14.     By this Application, Akerman is seeking full allowance of (a) compensation for professional services rendered by Akerman, as co-counsel for the Committee, during the First Interim Compensation Period, and (b) reimbursement of expenses incurred by Akerman in connection with such services during the First Interim Compensation Period.

15.     In this Application, Akerman seeks approval of the amount of $156,171.50 for legal services rendered on behalf of the Committee during the First Interim Compensation Period and the amount of $19,547.28 for reimbursement of expenses incurred in connection with the rendition of such services, for a total award of $175,718.78.

16.     Pursuant to the Interim Compensation Order and subject to its terms, Akerman, together with all other retained professionals, is entitled upon submission of its monthly

---

[1] The payment received by Akerman from the Debtors correlates to 80% of the fees and 100% of the expenses set forth the First, Second and Third Fee Statements.

statements to the Debtors to eighty percent (80%) of its fees sought in each of Akerman's First Interim Fee Statements and reimbursement of one hundred percent (100%) of Akerman's expenses. As noted above, as of the date of this Application Akerman has received one payment of $130,126.06 from the Debtors. Therefore, by this Application Akerman is seeking approval of all fees and expenses included within the First Interim Fee Statements in the amount of $175,718.78, and the authorization and direction of an additional payment by the Debtors of $45,592.72 such that the First Interim Fee Statements are paid in full.

17. The fees sought by this Application reflect an aggregate of 688.90 hours of attorney and paraprofessional time spent and recorded in performing services for the Committee during the First Interim Compensation Period, at a blended average hourly rate of $226.69 for both professionals and paraprofessionals.

18. Akerman rendered to the Committee all services for which compensation is sought solely in connection with these cases in furtherance of the duties and functions of the Committee.

19. Akerman maintains computerized records of the time expended in the rendering of the professional services required by the Committee. These records are maintained in the ordinary course of Akerman's business. For the convenience of the Court and parties in interest, a billing summary for the First Interim Compensation Period is attached as part of the cover sheet, setting forth the name of each attorney and paraprofessional for whose work on these cases compensation is sought, each attorney's year of bar admission, the aggregate amount of time expended by each such attorney or paraprofessional, the hourly billing rate for each such attorney or paraprofessional at Akerman's current billing rates and an indication of the individual amounts requested as part of the total amount of compensation requested. In

addition, set forth in the billing summary is additional information indicating whether each attorney is a partner or associate, the number of years each attorney has held such position, and each attorney's area of concentration. The compensation requested by Akerman is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

20. Attached hereto as Exhibit "A" are time entry records broken down in tenths of an hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description of services performed by each attorney and paraprofessional on behalf of the Committee for the First Interim Compensation Period.

21. Akerman also maintains computerized records of all expenses incurred in connection with the performance of professional services. A summary of the amounts and categories of expenses for which reimbursement is sought for the First Interim Compensation Period is attached hereto as Exhibit "B."

IV. **SUMMARY OF PROFESSIONAL SERVICES RENDERED**

22. To provide an orderly summary of the services rendered on behalf of the Committee by Akerman, and in accordance with the U.S. Trustee Guidelines, Akerman has established the following separate project billing categories in connection with these cases:

(a) Case Administration
(b) Wachovia Lien Investigation
(c) Reclamation Claims
(d) Sale of Assets
(e) Equity Committee Issues

23. The following summary is intended to highlight a number of the services rendered by Akerman in the separate project billing categories where Akerman has expended a considerable number of hours on behalf of the Committee, and it is not meant to be a detailed

description of all of the work performed. Detailed descriptions of the day-to-day services provided by Akerman during the First Interim Compensation Period and the time expended performing such services in each project billing category are fully set forth in Exhibit "A" hereto.

### A.   Case Administration

24.   During the First Interim Compensation Period, Akerman worked with Milbank as co-counsel on behalf of the Committee to monitor the Debtors' bankruptcy cases, including communication with the Debtors, their professionals, and other interested parties on numerous matters involving administration of the estates, attendance of hearings on numerous motions and matters, provision of insight to the Committee and Milbank regarding local practices, communications with the case manager and the Court's staff with regards to logistics, calendaring issues, and other administrative details, and coordination of all filings on behalf of the Committee and its professionals in the case.

### B.   Wachovia Lien Investigation

25.   During the First Interim Compensation Period, Akerman attorneys performed an extensive review of the pre-petition credit facility with Wachovia entered into by Winn-Dixie and certain of it subsidiaries. Akerman reviewed an extensive documentary base, including title searches and loan documents, to determine and make a recommendation to the Committee as to whether liens in favor of Wachovia under the credit facility were properly perfected, whether the indebtedness secured by the liens was fully secured, and whether there were any claims to be made against Wachovia relative to the extent and perfection of the liens of the pre-petition credit facility.

C.  **Reclamation Claims**

26.  During the First Interim Compensation Period, Akerman reviewed and analyzed certain reclamation claim issues on behalf of the Committee.

D.  **Sale of Assets**

27.  During the First Interim Compensation Period, Akerman reviewed various drafts of the proposed asset purchase agreement between the Debtors and Bi-Lo, LLC, and Southern Family Markets Acquisition, LLC, to ensure that the proposed agreement was structured as favorably as possible for the Debtors and Committee. Akerman provided comments and proposed revisions to the Committee and the Debtor regarding the various drafts of the proposed agreement. Akerman attorneys also attended the various sale hearings on all of the Debtor's proposed asset purchase agreements and with primary responsibility for the hearing on the Bi-Lo agreement.

E.  **Equity Committee Issues**

28.  During the First Interim Compensation Period, Akerman reviewed and analyzed, in conjunction with Milbank, the U.S. Trustee's formation of an equity committee. Akerman attorneys assisted with preparation of various motions and other filings with respect to the Committee's motion to disband the equity committee, which pursuant to the Bankruptcy Court's Order, are under seal. Akerman assisted Milbank in the preparation and coordination of discovery directed to the equity committee disbandment issues. Akerman communicated with the various interested parties, in connection with the disbandment proceedings, attended hearings, and arranged for all filings and service of papers under seal on behalf of the Committee.

29. The professional fees rendered and expenses incurred by Akerman during the First Interim Compensation period by project billing categories are as follows:

| Project Billing Category | Fees | Expenses | Total |
| --- | --- | --- | --- |
| Case Administration | $63,449.00 | $2,384.49 | $65,833.49 |
| Equity Committee Issues | 9,586.50 | 104.58 | 9,691.08 |
| Wachovia Lien Investigation | 51,393.00 | 17,042.61 | 68,435.61 |
| Reclamation Claims | 1,563.00 | 15.60 | 1,578.60 |
| Sale of Assets | 30,180.00 | - | 30,180.00 |
| Total | $ 156,171.50 | $19,547.28 | $ 175,718.78 |

## VI.   ALLOWANCE OF COMPENSATION

30. The professional services rendered by Akerman have required a high degree of professional competence and expertise to address, with skill and dispatch, the numerous issues requiring evaluation and action by the Committee. Akerman respectfully submits that the services rendered to the Committee were performed efficiently, effectively and economically, and that the results obtained to-date have benefited not only the members of the Committee, but also the unsecured creditors as a whole and the Debtors' estates.

31. The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in Section 331 of the Bankruptcy Code:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under Section 330 of this Title.

11 U.S.C. §331.

32. With respect to the level of compensation, Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person,

"reasonable compensation for actual, necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3)(A).

33. The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. In re Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("Congress determined, it appears, that on average the gain to the estate of employing able, experienced, expert counsel would outweigh the expense to the estate of doing so, and that unless the estate paid competitive [market] sums it could not retain such counsel on a regular basis.") (citations and quotations omitted).

34. The total time spent by Akerman attorneys and paraprofessionals during the First Interim Compensation Period was 688.90 hours and has a fair market value of $156,171.50. As

shown by this Application and supporting exhibits, Akerman's services were rendered economically and without unnecessary duplication of efforts. In addition, the work involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.

## VII. EXPENSES

35. Akerman has incurred a total of $19,547.28 in expenses in connection with representing the Committee during the First Interim Compensation Period. Akerman records all expenses incurred in connection with the performance of professional services.

36. In connection with the reimbursement of expenses, Akerman's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients. The expenses charged to Akerman's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, expenses for working meals, computerized research and transcription costs.

37. Akerman charges the Committee for these expenses at rates consistent with those charged to Akerman's other bankruptcy clients, which rates are equal to or less than the rates charged by Akerman to its non-bankruptcy clients.

38. In providing or obtaining from third parties services which are reimbursable by clients, Akerman does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

39. Attorneys at Akerman have not incurred expenses for luxury accommodations or deluxe meals. The Application does not seek reimbursement of any air travel expenses.

Throughout the First Interim Compensation Period, Akerman has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII. NOTICE

40. Pursuant to the Interim Compensation Order, notice of this Motion has been given to bankruptcy counsel to the Debtors, corporate counsel to the Debtors, counsel to the agent for the Debtor's post-petition secured lender, the United States Trustee, the chair of the Committee, all other parties on the Debtors' Master Service List, and all other parties not otherwise listed that have requested receipt of notices in these cases. In light of the nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.

## IX. CONCLUSION

WHEREFORE, Akerman respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit "C," (a) allowing Akerman (i) interim compensation for professional services rendered as co-counsel for the Committee during the First Interim Compensation Period in the amount of $156,171.50, and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $19,547.28, for a total award of $175,718.78; (b) authorizing and directing the Debtors to pay to Akerman $45,592.72, which is an amount equal to the difference between (i) the $175,718.78 award, and (ii) $130,126.06, the aggregate amount that the Debtors have paid to Akerman pursuant to the Interim Compensation Order for services rendered and expenses incurred during the First Interim Compensation Period; and (c) granting such further relief as is just.

Dated: November 11, 2005.

                      AKERMAN SENTERFITT

                      By: */s/ John B. Macdonald*
                          John B. Macdonald
                          Florida Bar No. 230340
                          Email: john.macdonald@akerman.com
                          Patrick P. Patangan
                          Florida Bar No. 348340
                          Email: patrick.patangan@akerman.com
                          50 North Laura Street, Suite 2500
                          Jacksonville, Florida  32202
                          Telephone: (904) 798-3700
                          Facsimile: (904) 798-3730

                      Co-counsel for the Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc. et al.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the forgoing was furnished by Email and Federal Express overnight delivery, this 11th day of November, 2005 to:

Elena L. Escamilla
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801
Email: Elena.L.Escamilla@usdoj.gov

Kenneth C. Meeker
Assistant U.S. Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801
Email: ken.meeker@usdoj.gov

Winn-Dixie Stores, Inc.
Attn: Laurence B. Appel
5050 Edgewood Court
Jacksonville, FL 32254-3699
Email: LarryAppel@winn-dixie.com

King & Spalding LLP
Attn: Sarah Robinson Borders
191 Peachtree Street
Atlanta, GA 30303
Email: sborders@kslaw.com

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: D. J. Baker
Four Times Square
New York, New York 10036
Email: djbaker@skadden.com

Otterbourg, Steindler, Houston & Rosen, P.C.
Attn: Jonathan N. Helfat
230 Park Avenue, 29th Floor
New York, NY 10169
Email: Jhelfat@oshr.com

Milbank, Tweed, Hadley & McCloy LLP
Attn: Matthew Barr
1 Chase Manhattan Plaza
New York, NY 10005
Email: Mbarr@milbank.com

/s/ John B. Macdonald
Attorney