**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | Case No. 3:05-bk-03817-JAF |
| WINN-DIXIE STORES, INC., et al., | Chapter 11 |
| Debtors. | Jointly Administered |

_____/

**SECOND APPLICATION OF MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP,**
**COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR**
**INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR**
**REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM**
**JUNE 1, 2005 THROUGH AND INCLUDING SEPTEMBER 30, 2005**

| | |
|---|---|
| Name of Applicant: | Milbank, Tweed, Hadley & M<sup>C</sup>Cloy LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention (Final Approval): | April 12, 2005 (effective as of March 1, 2005) |
| Period for which compensation and reimbursement is sought: | June 1, 2005 – September 30, 2005 |
| Amount of Compensation requested: | $1,283,088 |
| Amount of Expense Reimbursement requested: | $101,383.95 |

This is a(n): ___X___ interim _____ final application.

This is the second interim fee application filed by Milbank,
Tweed, Hadley & McCloy LLP in these cases.

Prior Applications:

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| March 1, 2005 –<br>May 31, 2005 | 1,194,617.50 | 108,654.51 | 1,194,617.50 | 108,654.51 |

SECOND INTERIM FEE APPLICATION OF MILBANK, TWEED,
HADLEY & McCLOY LLP: AS COUNSEL TO OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF WINN DIXIE STORES, INC., ET AL.
(JUNE 1, 2005 – SEPTEMBER 30, 2005)

| Name | Position; Experience | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|
| Luc Despins | Financial Restructuring Partner for 11 years; admitted in 1986. | $790 | 14.70 | $11,613 |
| Dennis Dunne | Financial Restructuring Partner for 8 years; admitted in 1991. | $790 | 271.80 | $214,722 |
| Alexander Kaye | Global Corporate Partner for 5 years; admitted in 1992. | $700 | 5.10 | $3,570 |
| Matthew Barr | Financial Restructuring Partner for 1 year; admitted in 1997. | $550 | 252.30 | $138,765 |
| Risa Rosenberg | Financial Restructuring of Counsel for 4 years; admitted in 1984. | $630 | 13.40 | $8,442 |
| Robert Winter | Financial Restructuring Associate for 9 years; admitted in 1997. | $525 | 131.40 | $68,985 |
| Lena Mandel | Financial Restructuring Associate for 15 years; admitted in 1990. | $505 | 167.70 | $84,688.50 |
| Dennis O'Donnell | Financial Restructuring Associate for 12 years; admitted in 1992. | $495 | 60.60 | $29,997 |
| Paul Malek | Financial Restructuring Associate for 12 years; admitted in 1994. | $495 | 6.50 | $3,217.50 |

| | | | | |
|---|---|---|---|---|
| Abhilash Raval | Financial Restructuring Associate for 8 years; admitted in 1997. | $495 | 190.70 | $94,396.50 |
| James MacInnis | Financial Restructuring Associate for 5 years; admitted in 2001. | $475 | 230.20 | $109,345 |
| Jeffrey Milton | Financial Restructuring Associate for 4 years; admitted in 1999. | $475 | 135.10 | $64,172.50 |
| Michael Comerford | Financial Restructuring Associate for 3 years; admitted in 2003. | $400 | 439.90 | $175,960 |
| Irene Bogdashevsky | Financial Restructuring Associate for 2 years; admitted in 2004. | $375 | 41.80 | $15,675 |
| Brian Kinney | Financial Restructuring Associate for 2 years; admitted in 2004. | $375 | 131.20 | $49,200 |
| Soham Naik | Financial Restructuring Associate for 2 years; admitted in 2004. | $375 | 376.60 | $141,225 |
| Rena Ceron | Legal Assistant | $170 | 108.20 | $18,394 |
| Alessandra Bulow | Legal Assistant | $155 | 60.20 | $9,331 |
| Holly Erick | Legal Assistant | $150 | 139.90 | $20,985 |
| Scott McCabe | Legal Assistant | $140 | 7.40 | $1,036 |

| Jacqueline Clark | Managing Attorney Clerk | $135 | 124.40 | $16,794 |
|---|---|---|---|---|
| Joshua Wallach | File Clerk | $110 | 23.40 | $2,574 |
| **Total** | | **$437.54**[1] | **2,932.50 hours** | **$1,283,088** |

---

[1] The blended rate <u>excluding</u> paraprofessionals is $491.69 per hour.

SUMMARY TABLE OF SERVICES RENDERED DURING
MILBANK, TWEED, HADLEY & MᶜCLOY LLP'S
SECOND INTERIM COMPENSATION PERIOD
(JUNE 1, 2005 – SEPTEMBER 30, 2005)

| ACTIVITY | HOURS | FEES |
|---|---|---|
| Asset Sales | 667.30 | 268,686 |
| Automatic Stay Enforcement | 133.60 | 55,968 |
| Business Plan Review and Analysis | 12.00 | 6,863.50 |
| Claims Analysis and Estimation | 107.60 | 47,497 |
| Committee Administration | 280.70 | 126,687 |
| Committee Meetings | 91.50 | 47,542 |
| Court Hearings | 98.60 | 43,288.50 |
| Customer Contracts & Programs | .50 | 200 |
| Debtor-In-Possession Meetings | 3.30 | 2,607 |
| DIP and Exit Financing | 36.80 | 16,944 |
| Employee Issues | 135.20 | 65,654 |
| Equipment/Personal Property Leases | 10.80 | 4,565 |
| Exclusivity Issues | 23.20 | 12,071 |
| Executory Contracts | 20.50 | 10,224.50 |
| Fee Applications: Other Professionals | 45.70 | 17,508 |
| File, Docket & Calendar Maintenance | 163.60 | 22,049 |
| General Communications with Creditors | 23.90 | 11,811.50 |
| Insurance Matters | 14.20 | 7,036 |
| PACA | 2.80 | 1,204.50 |
| Preparation of Milbank Fee Application | 126.50 | 48,654 |
| Real Property Leases | 52.90 | 22,319.50 |
| Reclamation Issues | 107.60 | 66,020.50 |

6

| | | |
|---|---:|---:|
| Reorganization Plan | 1.20 | 660 |
| Retention of Professionals | 59.60 | 26,305 |
| Secured Transactions | 4.30 | 2,207.50 |
| Substantive Consolidation | 103.80 | 56,485.50 |
| Tax Issues | .50 | 395 |
| Travel Time | 138.20 | 74,132 |
| Utilities Advice | 34.70 | 14,567.50 |
| Voidable Transfers | 11.50 | 5,807.50 |
| Equity Committee Issues | 419.90 | 197,127.50 |
| **Total** | **2,932.50** | **$1,283,088** |

SUMMARY TABLE OF DISBURSEMENTS BILLED DURING
MILBANK, TWEED, HADLEY & McCLOY LLP'S
SECOND INTERIM COMPENSATION PERIOD
(JUNE 1, 2005 – SEPTEMBER 30, 2005)

| DISBURSEMENTS | AMOUNT |
|---|---|
| Airfreight | 899.52 |
| Computer Database Research | 32,477.64 |
| Document Processing/Overtime | 17,161.50 |
| Fax | 387.00 |
| Local Transportation | 8,170.11 |
| Mail | .60 |
| Meals | 4,811.52 |
| Messenger | 85.95 |
| Photocopies/Printing | 15,835.15 |
| Telephone | 1,455.86 |
| Transcript | 1,362.75 |
| Travel | 18,736.35 |
| **TOTAL DISBURSEMENTS** | **$101,383.95** |

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                    Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., <u>et al.</u>,        Chapter 11

          Debtors.                        Jointly Administered

_____/

**SECOND APPLICATION OF MILBANK, TWEED, HADLEY & M<u>c</u>CLOY LLP,
COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR
INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD
FROM JUNE 1, 2005 THROUGH AND INCLUDING SEPTEMBER 30, 2005**

Milbank, Tweed, Hadley & M<u>c</u>Cloy LLP ("<u>Milbank</u>"),
counsel to the official committee of unsecured creditors (the
"<u>Committee</u>") of Winn-Dixie Stores, Inc. and its affiliated
debtors and debtors-in-possession appointed in the above-
captioned cases (collectively, "<u>Winn-Dixie</u>" or the "<u>Debtors</u>"),
submits its application (the "<u>Application</u>"), pursuant to
sections 330 and 331 of title 11 of the United States Code, 11
U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"), rule
2016 of the Federal Rules of Bankruptcy Procedure (the
"<u>Bankruptcy Rules</u>"), the United States Trustee Guidelines for
Reviewing Applications for Compensation and Reimbursement of
Expenses Filed Under Section 330 of the Bankruptcy Code
effective January 30, 1996 (the "<u>U.S. Trustee Guidelines</u>"), and
the Final Order Approving Interim Compensation Procedures for

Professionals, dated March 15, 2005 (Docket No. 434) (the

"Interim Compensation Order"), for the allowance of interim

compensation for professional services rendered from June 1,

2005 through and including September 30, 2005 (the "Second

Interim Compensation Period"), and for reimbursement of expenses

incurred in connection with such services, and in support

thereof respectfully represents as follows:

## I. INTRODUCTION

### A. Background

1.   Bankruptcy Filing.  On February 21, 2005 (the

"Petition Date"), the Debtors each filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the Southern District of New York

(the "New York Bankruptcy Court").

2.   Statutory Committees.  On March 1, 2005, the

United States Trustee duly appointed the Committee (see Docket

No. 176).  On August 17, 2005, the United States Trustee

appointed the Equity Security Holders Committee (see Docket No.

3027).

3.   Venue Transfer.  By order dated April 13, 2005,

the New York Bankruptcy Court transferred venue of these cases

to this Court.  The Debtors' cases are being jointly

administered for procedural purposes only.  The Debtors continue

to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.  No trustee or examiner has been appointed

in these cases.

    4.    <u>Fee Examiner</u>.  On August 10, 2005, this Court

ordered the appointment of a fee examiner, pursuant to the Order

Granting Motion To Appoint Fee Examiner (Docket No. 2933).

    5.    <u>Jurisdiction</u>.  This Court has jurisdiction over

this Application pursuant to 28 U.S.C. § 1334.  This matter is a

core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

Venue of the Debtors' chapter 11 cases and this Application is

proper under 28 U.S.C. §§ 1408 and 1409.  The statutory

predicates for the relief sought herein are sections 330 and 331

of the Bankruptcy Code.

## B.    <u>Retention of Milbank and Billing History</u>

    6.    <u>Authorization for Milbank's Retention</u>.  On April

12, 2005, pursuant to the Order Under 11 U.S.C. § 1103 And Fed.

R. Bankr. P. 2014 And 5002, Authorizing Retention And Employment

Of Milbank, Tweed, Hadley & McCloy LLP As Counsel To Official

Committee Of Unsecured Creditors Of Winn-Dixie Stores, Inc., <u>et

al.</u> (Docket No. 702) (the "<u>Retention Order</u>"), the Committee's

retention of Milbank in these cases was authorized effective as of March 1, 2005.[1]

7.   <u>First Interim Fee Application</u>.  On July 15, 2005, Milbank submitted the First Application Of Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, Counsel To Official Committee Of Unsecured Creditors, For Interim Allowance Of Compensation For Services Rendered And For Reimbursement Of Expenses Incurred During Period From March 1, 2005 Through And Including May 31, 2005 (such period being the "<u>First Interim Compensation Period</u>," and such interim fee application being the "<u>First Interim Fee Application</u>") (Docket No. 2242).

8.   In accordance with the Interim Compensation Order, Milbank submitted monthly fee statements to, among others, the Debtors seeking interim compensation and reimbursement of expenses.  During the First Interim Compensation Period, Milbank submitted the following fee statements:

---

[1]      On March 30, 2005, the New York Bankruptcy Court entered an order (Docket No. 607) approving Milbank's retention on an interim basis subject to final approval, which occurred pursuant to the Retention Order.

(a) On May 4, 2005, pursuant to the Interim Compensation Order, Milbank served its first fee statement for the period from March 1, 2005 through and including March 31, 2005 (the "First Fee Statement").  The First Fee Statement sought an allowance of $447,752 as compensation for services rendered and the reimbursement of $35,345.75 in expenses.

(b) On May 25, 2005, pursuant to the Interim Compensation Order, Milbank served its second fee statement for the period from April 1, 2005 through and including April 30, 2005 (the "Second Fee Statement").  The Second Fee Statement sought an allowance of $362,756 as compensation for services rendered and the reimbursement of $37,266.13 in expenses.

(c) On June 30, 2005, pursuant to the Interim Compensation Order, Milbank served its third fee statement for the period from May 1, 2005 through and including May 31, 2005 (the "Third Fee Statement" and together with the First Fee Statement and the Second Fee Statement, collectively the "First Interim Fee Statements").  The Third Fee Statement sought an allowance of $384,109.50 as compensation for services rendered and the reimbursement of $36,042.63 in expenses.

9.    On August 5, 2005, this Court granted the First Interim Fee Application and allowed Milbank's request for $1,194,617.50 in fees and $108,654.51 in expenses, for a total award of $1,303,272.01 (Docket No. 2811).

10.    Second Interim Fee Application.  This Application is Milbank's second interim application for approval and allowance of compensation and reimbursement of expenses. Milbank makes this interim application pursuant to sections 330 and 331 of the Bankruptcy Code.  No prior application has been made to this or any other court for the relief requested herein.

11.   During the Second Interim Compensation Period, Milbank submitted the following fee statements:

(a)   On August 10, 2005, pursuant to the Interim Compensation Order, Milbank served its fourth fee statement for the period from June 1, 2005 through and including June 30, 2005 (the "Fourth Fee Statement"). The Fourth Fee Statement sought an allowance of $441,629 as compensation for services rendered and the reimbursement of $36,978.62 in expenses.

(b)   On October 25, 2005, pursuant to the Interim Compensation Order, Milbank served its fifth fee statement for the period from July 1, 2005 through and including July 31, 2005 (the "Fifth Fee Statement"). The Fifth Fee Statement sought an allowance of $340,372 as compensation for services rendered and the reimbursement of $27,457.91 in expenses.

(c)   On November 3, 2005, pursuant to the Interim Compensation Order, Milbank served its sixth fee statement for the period from August 1, 2005 through and including August 31, 2005 (the "Sixth Fee Statement").  The Sixth Fee Statement sought an allowance of $300,627.50 as compensation for services rendered and the reimbursement of $19,618.06 in expenses.

(d)   On November 4, 2005, pursuant to the Interim Compensation Order, Milbank served its seventh fee statement for the period from September 1, 2005 through and including September 30, 2005 (the "Seventh Fee Statement" and together with the Fourth Fee Statement, the Fifth Fee Statement and the Sixth Fee Statement, collectively the "Second Interim Fee Statements").  The Seventh Fee Statement sought an allowance of $200,459.50 as compensation for services rendered and the reimbursement of $17,329.36 in expenses.

12.  As of the filing of this Application, Milbank has not received any payments during the Second Interim Compensation Period with respect to the Second Interim Fee Statements.

13.   Milbank has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

14.   No promises have been received by Milbank or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## II.   CASE STATUS

15.   The Debtors have not filed a disclosure statement or a plan of reorganization in these cases.

## III. APPLICATION

16.   By this Application, Milbank is seeking full allowance of (a) compensation for professional services rendered by Milbank, as counsel for the Committee, during the Second Interim Compensation Period and (b) reimbursement of expenses incurred by Milbank in connection with such services during the Second Interim Compensation Period.

17.   In this Application, Milbank seeks approval of the amount of $1,283,088 for legal services rendered on behalf of the Committee during the Second Interim Compensation Period and the amount of $101,383.95 for reimbursement of expenses incurred in connection with the rendition of such services, for a total award of $1,384,471.95.

7

18.   Pursuant to the Interim Compensation Order, Milbank, together with all other retained professionals, is entitled to eighty percent (80%) of its fees sought in each of Milbank's Second Interim Fee Statements and reimbursement of one hundred percent (100%) of Milbank's expenses prior to Court approval of such fees and expenses in a fee application. However, as noted above, Milbank has not received any payments to date during the Second Interim Compensation Period with respect to the Second Interim Fee Statements.  Milbank is, therefore, seeking a total payment of $1,384,471.95 pursuant to this Application, representing the unpaid balance of 100% of fees and 100% of expenses for the Second Interim Compensation Period.[2]

19.   The fees sought by this Application reflect an aggregate of 2,932.50 hours of attorney and paraprofessional time spent and recorded in performing services for the Committee during the Second Interim Compensation Period, at a blended average hourly rate of $437.54 for both professionals and paraprofessionals.

---

[2]      To the extent Milbank receives any payment for the Fourth Fee Statement, Fifth Fee Statement, Sixth Fee Statement and/or the Seventh Fee Statement prior to the hearing on this Application, Milbank will advise the Court and amend its request accordingly.

20.   Milbank rendered to the Committee all services for which compensation is sought solely in connection with these cases in furtherance of the duties and functions of the Committee.

21.   Milbank maintains computerized records of the time expended in the rendering of the professional services required by the Committee.  These records are maintained in the ordinary course of Milbank's business.  For the convenience of the Court and parties in interest, a billing summary for the Second Interim Compensation Period is attached as part of the cover sheet, setting forth the name of each attorney and paraprofessional for whose work on these cases compensation is sought, each attorney's year of bar admission, the aggregate amount of time expended by each such attorney or paraprofessional, the hourly billing rate for each such attorney or paraprofessional at Milbank's current billing rates and an indication of the individual amounts requested as part of the total amount of compensation requested.  In addition, set forth in the billing summary is additional information indicating whether each attorney is a partner or associate, the number of years each attorney has held such position, and each attorney's area of concentration.  The compensation requested by Milbank is based on the customary compensation charged by comparably

skilled practitioners in cases other than cases under the
Bankruptcy Code.

22.   Attached hereto as <u>Exhibit A</u> are time entry
records broken down in tenths of an hour by project category,
based on the U.S. Trustee Guidelines, setting forth a detailed
description of services performed by each attorney and
paraprofessional on behalf of the Committee for the Second
Interim Compensation Period.

23.   Milbank also maintains computerized records of
all expenses incurred in connection with the performance of
professional services.   A summary of the amounts and categories
of expenses for which reimbursement is sought for the Second
Interim Compensation Period, as well as a breakdown of expenses
by project category and detailed descriptions of these expenses,
are attached hereto as <u>Exhibit B</u>.

## IV.   <u>SUMMARY OF PROFESSIONAL SERVICES RENDERED</u>

24.   To provide an orderly summary of the services
rendered on behalf of the Committee by Milbank, and in
accordance with the U.S. Trustee Guidelines, Milbank has
established the following separate project billing categories in
connection with these cases:

    (a) Adequate Protection Issues and Litigation
    (b) Asset Sales
    (c) Automatic Stay Enforcement & Litigation
    (d) Business Plan Review and Analysis
    (e) Change of Control Transactions

10

```
 (f) Claims Analysis and Estimation
 (g) Committee Administration
 (h) Committee Meetings
 (i) Court Hearings
 (j) Customer Contracts & Programs
 (k) Debtor-in-Possession Meetings and Communications
 (l) DIP and Exit Financing
 (m) Disclosure Statement
 (n) Employee Issues
 (o) Environmental Issues
 (p) Equipment/Personal Property Leases
 (q) Exclusivity Issues
 (r) Executory Contracts
 (s) Fee Applications - Other
 (t) File, Docket and Calendar Maintenance
 (u) General Communications with Creditors
 (v) Insurance Matters
 (w) PACA
 (x) Pension Issues
 (y) Preparation of Milbank Fee Applications
 (z) Real Property Leases
(aa) Reclamation Issues
(bb) Regulatory Issues
(cc) Reorganization Plan
(dd) Reporting Requirements
(ee) Retention of Professionals
(ff) Rule 2004 Examinations
(gg) Secured Transactions
(hh) Substantive Consolidation
(ii) Tax Issues
(jj) Travel Time
(kk) Union Issues
(ll) Utilities Advice
(mm) Vendor Issues
(nn) Voidable Transfers and other potential claims
(oo) Venue Issues
(pp) Equity Committee
```

25.   The following summary is intended to highlight a number of the services rendered by Milbank in the separate project billing categories where Milbank has expended a considerable number of hours on behalf of the Committee, and it is not meant to be a detailed description of all of the work

performed.  Detailed descriptions of the day-to-day services provided by Milbank during the Second Interim Compensation Period and the time expended performing such services in each project billing category are fully set forth in Exhibit A hereto.  Such detailed descriptions show that Milbank was heavily involved in the performance of services for the Committee on a daily basis, including night and weekend work, often under extreme time constraints to meet the needs of the Committee in these cases.

## A.   Asset Sales

26.  During the Second Interim Compensation Period, on behalf of the Committee, Milbank attorneys worked closely with the Committee's financial advisors and the Debtors' legal and financial advisors to negotiate enhanced asset sale values and transaction terms for the Debtors' estates in connection with such sales.  Milbank attorneys (i) reviewed and analyzed numerous transactions proposed by the Debtors during the Second Interim Compensation Period, (ii) engaged in continual interaction with the Debtors regarding discrete asset sale issues that arose throughout the Second Interim Compensation Period through numerous conference calls and other correspondence, and (iii) regularly informed the Committee of pending asset sales, analyzing the proposed transactions and recommending courses of action for the Committee.  These

12

transactions involved, among other things, (i) the proposed sale of approximately 326 store leases and, for certain of these stores, related inventory, (ii) the proposed sale of equipment and personal property leases, (iii) the proposed sale of certain of the Debtors' distribution centers and production facilities, and (iv) the sale of store pharmacy prescriptions.

27.    In connection with the sale of assets during the Second Interim Compensation Period, Milbank attorneys (i) negotiated several asset purchase agreements with bidders and the Debtors and their advisors, (ii) reviewed and commented on the preparation of form asset purchase agreements and bidding procedures, (iii) reviewed and negotiated liquidator agreements in connection with the Debtors' going out of business sales, (iv) conferred with the Debtors on an optimal structure for auctions and methods for maximizing value received from the sale of store leases through stalking horse auctions and (v) attended several auctions in connection with the same.

**B.    Automatic Stay Enforcement & Litigation**

28.    During the Second Interim Compensation Period, Milbank attorneys reviewed and analyzed numerous motions to obtain relief from the automatic stay.  Milbank attorneys worked closely with the Debtors' legal counsel regarding the strategy with respect to dealing with the relief from stay motions.

C.    **Claims Analysis & Estimation**

29.   During the Second Interim Compensation Period, Milbank attorneys reviewed, analyzed and negotiated, with the Debtors, procedures for the resolution of thousands of prepetition litigation claims.  After extensive discussions, the Debtors filed a motion incorporating many of Milbank's recommendations.  At the request of the Committee, however, Milbank drafted and filed a limited objection with respect to the resolution procedures for a subset of the litigation claims. Milbank continued its efforts to negotiate a consensual resolution of the Committee's objection and eventually reached an agreement on revised procedures that were approved by the Court.  Milbank appeared on behalf of the Committee at the hearing for approval of the claims procedures in support of the Debtors' motion.

D.    **Committee Administration**

30.   Milbank's attention to the Committee's organizational needs enabled the Committee to promptly complete the administrative matters that were necessary to the Committee's effective participation in these cases.  Throughout the Second Interim Compensation Period, Milbank attorneys counseled and advised the Committee regarding its statutory and fiduciary duties to the unsecured creditor body and the

fiduciary obligations of the other parties in interest in
general.

31.  Milbank prepared memoranda, and provided advice
orally when time constraints so required, on the various pending
issues arising in these cases.  Milbank analyzed issues and
motions filed in the Debtors' cases and recommended action.

32.  Due to Milbank attorneys' experience in
counseling various parties in interest in restructurings and
bankruptcy cases, Milbank believes it provided and will continue
to provide to the Committee a unique perspective and
sophisticated understanding of all issues relating to the
administration of the Debtors' cases.

**E.    Committee Meetings**

33.  Numerous issues arose during the Second Interim
Compensation Period requiring meetings of the Committee.
Committee meetings generally occur weekly via teleconference.
Prior to such meetings Milbank organized the Committee meetings
by drafting agendas that included topics from all of the
Committee's professionals and by distributing certain other
materials for Committee members to review.  Milbank discussed
with the Committee all significant matters arising in these
cases during the Second Interim Compensation Period and assisted
the Committee in formulating positions on issues as they arose.

34.   Through Committee meetings and conference calls, and numerous other communications with members of the Committee, Milbank has assisted the Committee in (i) fulfilling its obligations to unsecured creditors and (ii) making informed decisions regarding the numerous issues that have arisen in these cases.

**F.**   **Court Hearings**

35.   Throughout the Second Interim Compensation Period, Milbank attorneys, on behalf of the Committee, prepared for and attended numerous court hearings.  To prepare for these hearings, Milbank attorneys expended considerable time reviewing and analyzing pleadings filed by the Debtors and third parties and conducted independent legal and factual research as necessary.  In addition, Milbank attorneys drafted and argued numerous pleadings on behalf of the Committee.  Milbank attorneys were often called upon to present oral argument in court not only with respect to the Committee's own pleadings, but also with respect to various forms of relief sought by the Debtors or other interested parties.

**G.**   **Employee Issues**

36.   During the Second Interim Compensation Period, Milbank attorneys reviewed, analyzed and negotiated the Debtors' proposed terms for a key employee retention plan and severance program (the "KERP").  In consultation with the Committee and

16

the Committees' financial advisors, Milbank submitted numerous
comments to the Debtors regarding the KERP.  Additionally,
Milbank attorneys and other Committee professionals engaged in
extensive negotiations with counsel to the Debtors' and the
Debtors' other professionals over the terms and conditions of
the KERP.  The Debtors eventually incorporated a majority of the
Committee's KERP comments resulting in a consensual resolution
of disputes regarding the KERP between the Committee and
Debtors.  Additionally, Milbank attorneys commented on certain
documents generated by the Debtors to implement the KERP in
order to ensure such documents complied with the Bankruptcy
Court approved KERP.

## H.   **File, Docket & Calendar Maintenance**

        37.   Milbank's paraprofessionals maintained a filing
and record-keeping system as well as monitored the docket in
these cases.  To ensure that the Committee was apprised of
filings as they occurred, Milbank paraprofessionals routinely
reviewed the docket and obtained any necessary papers or
exhibits on an ongoing basis.

        38.   In addition, Milbank paraprofessionals created a
calendar tracking system to alert the Committee of deadlines in
the Debtors' cases.  As needed, Milbank also circulated
pleadings and other documents to, and discussed upcoming
hearings and motions with, the Committee.

17

I.   **Reclamation Issues**

39.   During the Second Monthly Interim Compensation Period, Milbank attorneys spent time monitoring (i) the trade lien program developed consensually by the Committee, the Debtors and the Ad Hoc Committee of Reclamation Creditors (the "Ad Hoc Committee"), and (ii) the resolution of reclamation claims in the framework of such program.   In addition, Milbank attorneys participated in the resolution of issues raised by the Ad Hoc Committee in connection with the Debtors' motion seeking to establish a process for resolving reclamation claims that had not yet been reconciled under the trade lien program.   Milbank attorneys reviewed various correspondence and participated in conference calls with the Debtors and the Ad Hoc Committee to ensure that the Debtors' motion complied with the Bankruptcy Court's prior orders in connection with the reclamation reconciliation process and trade lien program.

J.   **Substantive Consolidation**

40.   During the Second Interim Compensation Period, Milbank attorneys regularly conferred with the Debtors' legal and financial advisors and the Committee's financial advisors regarding issues surrounding substantive consolidation.   In cooperation with the other professionals, Milbank attorneys researched issues relating to substantive consolidation, developed substantive consolidation diligence questions to

submit to the Debtors and their professionals and analyzed and researched various other issues concerning the analysis necessary to determine matters relating to substantively consolidating the Debtors' estates.

**K.   Equity Committee**

41.   During the Second Interim Compensation Period Milbank reviewed the facts underlying the decision of the United States Trustee to appoint the Official Committee of Equity Holders (the "Equity Committee") and researched various issues concerning such decision.  At the request of the Committee, Milbank prepared a motion seeking to disband the Equity Committee (the "Disbandment Motion") and, in connection with such motion, researched disbandment issues and consulted with the various advisors in these cases.  Milbank also reviewed certain confidentiality issues surrounding the public disclosure of information contained within the Disbandment Motion, and, after discussion with the Debtors and their advisors, drafted and filed a related motion to file the Disbandment Motion under seal (the "Sealing Motion").  The Sealing Motion was considered with the Debtors own motion to seal all pleadings and hearings related to the Disbandment Motion.  Milbank also prepared and served discovery requests on various parties in interest and negotiated, drafted and obtained approval of a consent order

regarding scheduling and discovery issues, which established a round of dispositive pleadings and subsequent discovery.

### V.    FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

42. The factors to be considered in awarding attorneys fees as enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most courts.[3]  Milbank respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

> (A)  The Time and Labor Required.  The professional services rendered by Milbank on behalf of the Committee have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

---

[3]    Grant v. Florida Power Corp. (In re American Fabricators, Inc.), 197 B.R. 987, 993-94 (Bankr. M.D. Fla. 1996) (adopting the First Colonial factors and noting that Fifth Circuit decisions before 1981 are binding precedent in the Eleventh Circuit).  The factors embraced by the Fifth Circuit in First Colonial were adopted by the Fifth Circuit's decision in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), except that First Colonial also included the "spirit of economy" as a factor which was expressly rejected by Congress in enacting section 330 of the Bankruptcy Code.  Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1403 (11th Cir. 1997).  The remaining First Colonial factors continue to apply to determine the reasonableness of fees awarded under the Bankruptcy Code.  3 Collier on Bankruptcy ¶ 330.04[3][c] (Lawrence P. King, et al., eds., 15th ed. 1997).  In addition, a majority of the First Colonial factors are now codified in section 330(a)(3).  Id.

(B)  The Novelty and Difficulty of Questions.  Novel and
complex issues have arisen in the course of these
chapter 11 cases, and it can be anticipated that other
such issues will be encountered.  In these cases, as
in many others in which the firm is involved,
Milbank's effective advocacy and creative approach to
problem solving have helped clarify and resolve
difficult issues and will continue to prove
beneficial.

(C)  The Skill Requisite to Perform the Legal Services
Properly.  Milbank believes that its recognized
expertise in the area of financial restructuring, its
ability to draw from highly experienced professionals
in other areas of its practice such as structured
finance, mergers and acquisitions, litigation,
environmental and regulatory law and its practical
approach to the resolution of issues help maximize the
distributions to the Debtors' unsecured creditors.

(D)  The Preclusion of Other Employment by Applicant Due to
Acceptance of the Case.  Due to the size of Milbank's
financial restructuring department and the firm as a
whole, Milbank's representation of the Committee has
not precluded the acceptance of new clients.  However,
the number of matters needing attention on a
continuous basis has required several of Milbank's
attorneys to commit significant portions of their time
to these cases.

(E)  The Customary Fee.  The compensation sought herein is
based upon Milbank's normal hourly rates for services
of this kind.  Milbank respectfully submits that the
compensation sought herein is not unusual given the
magnitude and complexity of these cases and the time
dedicated to the representation of the Committee.
Such compensation is commensurate with fees Milbank
has been awarded in other cases, as well as with fees
charged by other attorneys of comparable experience.

(F)  Whether the Fee is Fixed or Contingent.  Milbank
charges customary hourly rates for the time expended
by its attorneys and paraprofessionals in representing
the Committee, and Milbank's fee is not outcome
dependent.

(G)   Time Limitations Imposed by Client or Other
      Circumstances.  As stated above, Milbank has been
      required to attend to various issues as they have
      arisen in these cases.  Often, Milbank has had to
      perform these services under significant time
      constraints requiring attorneys and paraprofessionals
      assigned to these cases to work evenings and on
      weekends.

(H)   The Amount Involved and Results Obtained.  The
      Committee represents the interests of unsecured
      creditors holding unsecured claims estimated at well
      over $500 million dollars.  Through Milbank's efforts,
      the Committee has been an active participant in these
      chapter 11 cases.  The Committee's participation, with
      Milbank's counsel and guidance, has greatly
      contributed to the efficient administration and
      prospects for reorganization of these cases.

(I)   The Experience, Reputation and Ability of the
      Attorneys.  Milbank has a sophisticated and nationally
      recognized corporate reorganization and financial
      restructuring practice, and Milbank attorneys involved
      in this representation have played a major role in
      numerous complex restructurings including, for
      example, the chapter 11 cases of Enron Corp., Refco
      Inc., RCN Corp., Intermet Corp., Fruit of the Loom
      Inc., Adelphia Communications Corp., US Airways Group,
      Inc., Global Crossing Ltd., Fleming Companies, Inc.,
      Dairy Mart Convenience Stores, Inc., Lernout & Hauspie
      Speech Products N.V., Teligent, Inc., World Access,
      Inc., ORBCOMM Global, L.P., ICO Global Communications
      Inc., Safety-Kleen Corp., HomePlace Stores, Inc.,
      Hvide Marine, Inc., Sun TV and Appliances, Inc.,
      Seven-Up/RC Bottling Company of Southern California,
      Inc. and Ames Department Stores, Inc.  Milbank's
      experience enables it to perform the services
      described herein competently and expeditiously.

(J)   The "Undesirability" of the Case.  These cases are not
      undesirable but, as already indicated, have required a
      significant commitment of time from many of Milbank's
      attorneys.

(K)   Nature and Length of Professional Relationship.
      Milbank was selected as the Committee's counsel
      shortly after the Committee's formation, on March 1,
      2005, and was retained effective as of that date

pursuant to an order of the Court dated April 12, 2005.  Milbank has been rendering services continuously to the Committee since the Committee was formed, and Milbank has rendered such services in a necessary and appropriate manner.

## VI.  <u>ALLOWANCE OF COMPENSATION</u>

43.   The professional services rendered by Milbank have required a high degree of professional competence and expertise to address, with skill and dispatch, the numerous issues requiring evaluation and action by the Committee. Milbank respectfully submits that the services rendered to the Committee were performed efficiently, effectively and economically, and that the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditors as a whole and the Debtors' estates.

44.   The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

45.   With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in

pertinent part, that the Court may award to a professional

person, "reasonable compensation for actual, necessary services

rendered."  Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable
> compensation to be awarded, the court shall
> consider the nature, the extent, and the value of
> such services, taking into account all relevant
> factors, including –
>
> (A)   the time spent on such services;
> (B)   the rates charged for such services;
> (C)   whether the services were necessary to
>       the administration of, or beneficial at
>       the time at which the service was
>       rendered toward the completion of, a
>       case under this title;
> (D)   whether the services were performed
>       within a reasonable amount of time
>       commensurate with the complexity,
>       importance, and nature of the problem,
>       issue, or task addressed; and
> (E)   whether the compensation is reasonable
>       based on the customary compensation
>       charged by comparably skilled
>       practitioners in cases other than cases
>       under this title.

11 U.S.C. § 330(a)(3)(A).

46.   The congressional policy expressed above provides

for adequate compensation in order to continue to attract

qualified and competent professionals to bankruptcy cases.   In

re Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("Congress

determined, it appears, that on average the gain to the estate

of employing able, experienced, expert counsel would outweigh

the expense to the estate of doing so, and that unless the

estate paid competitive [market] sums it could not retain such

counsel on a regular basis.") (citations and quotations
omitted).

47.   The total time spent by Milbank attorneys and
paraprofessionals during the Second Interim Compensation Period
was 2,932.50 hours and has a fair market value of
$1,283,088.  As shown by this Application and supporting
exhibits, Milbank's services were rendered economically and
without unnecessary duplication of efforts.  In addition, the
work involved, and thus the time expended, was carefully
assigned in consideration of the experience and expertise
required for each particular task.

## VII. **EXPENSES**

48.   Milbank has incurred a total of $101,383.95 in
expenses in connection with representing the Committee during
the Second Interim Compensation Period.  Milbank records all
expenses incurred in connection with the performance of
professional services.

49.   In connection with the reimbursement of expenses,
Milbank's policy is to charge its clients in all areas of
practice for expenses, other than fixed and routine overhead
expenses, incurred in connection with representing its clients.
The expenses charged to Milbank's clients include, among other
things, telephone and telecopy toll and other charges, mail and
express mail charges, special or hand delivery charges,

photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

50.   Milbank charges the Committee for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients.

51.   In providing or obtaining from third parties services which are reimbursable by clients, Milbank does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

52.   Milbank regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.

53.   Attorneys at Milbank have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of any air travel expenses in excess of coach fares.  Throughout the Second Interim Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII. __NOTICE__

54. Pursuant to the Interim Compensation Order, notice of this Motion has been given to bankruptcy counsel to the Debtors, corporate counsel to the Debtors, counsel to the agent for the Debtor's post-petition secured lender, the United States Trustee, the chair of the Committee, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases. In light of the nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.

## IX. __CONCLUSION__

WHEREFORE, Milbank respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit C, (a) allowing Milbank (i) interim compensation for professional services rendered as counsel for the Committee during the Second Interim Compensation Period in the amount of $1,283,088 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $101,383.95, for a total award of $1,384,471.95; (b) authorizing and directing the Debtors to pay to Milbank $1,384,471.95, which is an amount equal to the unpaid balance of fees and expenses incurred during the Second Interim

27

Compensation Period; and (c) granting such further relief as is just.

Dated: November 11, 2005

**MILBANK, TWEED, HADLEY & MᶜCLOY** LLP

By: /s/ Matthew S. Barr ____
    Dennis F. Dunne (DD 7543)
    Matthew S. Barr (MB 9170)
    1 Chase Manhattan Plaza
    New York, New York 10005
    (212) 530-5000

    Counsel for Official Committee
    of Unsecured Creditors of Winn-
    Dixie Stores, Inc., et al.