**<u>EXHIBIT "2"</u>**

Application to Employ

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
```

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., <u>et al.</u>,** | : | **Case No. 05-11063** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

```
-------------------------------------------------------------x
```

## APPLICATION FOR AUTHORITY TO EMPLOY
## XROADS SOLUTIONS GROUP, LLC AS FINANCIAL AND
## <u>OPERATIONS RESTRUCTURING CONSULTANTS</u>

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie

**Background**

**A.    Chapter 11 Filings.**

1.    The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.    The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.    No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.    This Court has jurisdiction over this Application under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.    Company Background.**

5.    The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors currently operate more than 900 stores in the United States. Substantially all of the Debtors' store locations are leased rather than owned.

6.    The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie

7.     The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**C.     Capital Structure.**

8.     The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.     The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.     The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the

_____

Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations under the Credit Agreement in the aggregate amount of approximately $427 million.  The Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.     Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture").  Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes.  The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity.  The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12.     Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN.  All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**D.     Events Leading to the Debtors' Chapter 11 Cases.**

13.     In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan").  The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core, and evaluated for sale or closure, (d) an image makeover program targeting approximately 700

stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States.  The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations.  Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.     Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses.  The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate.  The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November.  When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock.  The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press coverage, led a number of the Debtors' trade creditors to demand shorter payment terms.  Since the announcement of the Debtors' financial results on February 10, 2005, the Debtors have experienced a reduction in vendor and other credit by more than $130 million.  As a result, the Debtors have been forced to conclude, after consultation with their advisors, that their interests and the interests of their creditors, employees, and customers will be best served by a reorganization under Chapter 11 of the Bankruptcy Code.

19.     As part of their restructuring under Chapter 11, the Debtors, led by a chief executive officer hired in December 2004, intend to implement further asset rationalization and expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image and competitive position, with the goal of improving their operations and financial performance and strengthening their business for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

## Relief Requested

20.     By this Application, the Debtors request entry of an order, pursuant to Section 327(a) of the Bankruptcy Code, approving the employment of XRoads Solutions Group, LLC ("XRoads") as financial and operations restructuring consultants to the Debtors during these cases.  The Debtors request that XRoads be retained to perform the services and on the terms as detailed in this Application.

**Basis for Relief**

21.     Pursuant to Section 327(a) of the Bankruptcy Code, the Debtors request that the Court approve their retention of XRoads to provide certain financial and operations restructuring consulting services during their Chapter 11 cases.

22.     The Debtors request that the retention of XRoads be on the terms and conditions detailed in the letter agreement between the Debtors and XRoads (the "Agreement"), dated February 16, 2005 and attached to this Application as Exhibit A.

23.     The Debtors have selected XRoads as their financial and operations restructuring consultants because of XRoads's general experience and knowledge and its recognized expertise in the fields of, among other things, real estate planning and management, vendor management, cash management, contingency planning, and extensive experience advising companies in Chapter 11 cases.  The Debtors believe that XRoads is both well qualified and uniquely able to represent them in these cases and in other matters in a most efficient and timely manner.

24.     XRoads has worked on numerous Chapter 11 cases during its eight years in business, and its senior professionals providing services to the Debtors each have over twenty years' experience in restructuring cases.  XRoads has been retained as consultants in large Chapter 11 cases, such as Impath, Inc., Intrepid USA, Inc., Ormet Primary Aluminum Corp., and Farmland Industries, Inc., all cases in which XRoads advised or continues to advise the debtors.

25.     The employment of XRoads is appropriate and necessary to enable the Debtors to successfully reorganize their operations and emerge from these Chapter 11 cases as a profitable enterprise.  Subject to further order of this Court, it is proposed that XRoads be employed for the following purposes:

**Real Estate Planning and Management:**

- Perform assessments of marketability versus holding costs of excess real estate;
- Assist the Debtors in their selection and management of third parties to evaluate, market, and sell leases associated with stores and facilities to be closed;
- Assist the Debtors in the valuation of potential lease reductions for continuing stores and facilities;
- Assist in the renegotiation of existing real estate leases;
- Assist in the disposition of non-essential real estate;

**Vendor Management:**

- Assist the Debtors in their communications, negotiations with, and presentations to vendors, trade creditors, and holders of such debt;

**Cash Management:**

- Analyze and redesign the Debtors' cash management and all related activities;
- Advise the Debtors on their cash forecasting process, including reviewing cash flow projection models previously prepared by the Debtors, and redesigning the Debtors' cash forecasting processes;
- Assist the Debtors in redesigning and implementing new effective management and financial reporting methodologies for the Debtors' business;
- Assist the Debtors in the development of a reliable long-term liquidity forecast;
- Assist with developing a more detailed financial reporting package with commentary, including an analysis of monthly performance, an outlook to the next period based on current trends and backlogs, and a comparison to budget so that deviations therefrom, if any, can be tracked and explained along with providing a view toward any changes to the budget model which may become necessary as a result;

**Lender Management:**

- Assist with communication with lenders;
- Validate reports;

**Strategic Advisory:**

- Evaluate the Debtors' strategic alternatives; and
- Evaluate the Debtors' business plan, including the level of execution of said plans, plans for business closings, shut downs or other improvements or changes, and advising on same and integrating the same into the Debtors' reorganization and restructuring plans;

**Case Management Services:**

- If requested by the Debtors, provide certain bankruptcy support services.

26.     XRoads has stated its desire and willingness to act in these cases and to render the services detailed in the preceding paragraph for the Debtors.

27.     To the best of the Debtors' knowledge: (a) XRoads neither holds nor represents any interest adverse to the Debtors' estates; (b) XRoads has had no affiliation with the Debtors, their creditors or any party in interest, or their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or the Bankruptcy Judge presiding over these cases; and (c) XRoads is a "disinterested person" within the meaning of Sections 101(14) and 327(a) of the Bankruptcy Code, except as specifically disclosed more fully in the Declaration of Dennis I. Simon, the Managing Principal of XRoads (the "Simon Declaration"), attached hereto as Exhibit B.

28.     The Debtors and XRoads have agreed that XRoads will be compensated as set forth in the Agreement.  Specifically, the Debtors will pay XRoads a fixed minimum fee of $200,000 per month.  If XRoads's professionals spend more than 400 hours in any calendar month on the engagement, the Debtors will pay XRoads for any additional hours at the rate of $400 per hour.  The Debtors will compensate XRoads for the time spent by XRoads's personnel who perform administrative services under the terms of the Agreement at a rate of $85-$160 per hour, and such administrative services will not be applied toward the 400-hour threshold described above.  Non-working travel time to and from the Debtors' designated workplace will not be billed to the Debtors nor will such time be applied toward the 400-hour threshold described above.  The Debtors also will reimburse XRoads for its actual and necessary expenses. In addition, XRoads will be entitled to receive a performance fee in the amount of $1,250,000, which will be paid under certain circumstances, as outlined in the Agreement, and which may be

increased up to a maximum performance fee amount of $5,000,000 if approved by this Court and in accordance with the procedures outlined in the Agreement.

29.     XRoads will file fee applications with the Court in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and orders of this Court.

30.     The Agreement provides for the Debtors' indemnification of XRoads for certain claims or losses.  Notwithstanding the Agreement, the Debtors do not seek approval of any indemnification provision, and XRoads has agreed that it will not seek to enforce any indemnification provision.

31.     Prior to the Petition Date, XRoads received from the Debtors a retainer in the amount of $500,000, which continues to be held by XRoads as a "last bill" retainer subject to the future direction and orders of the Court.

32.     Prior to the Petition Date, XRoads received certain amounts (as set forth in the Simon Declaration) from the Debtors as compensation for professional services performed, and additional amounts (as set forth in the Simon Declaration) for the reimbursement of reasonable and necessary expenses incurred in connection therewith.

## Notice

33.     Notice of this Application has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## **Waiver of Memorandum of Law**

34.     Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Application.

WHEREFORE, the Debtors respectfully request that this Court:

(a)     enter an order pursuant to Section 327(a) of the Bankruptcy Code authorizing the Debtors to employ XRoads Solutions Group, LLC as financial and operations restructuring consultants in these cases; and

(b)     grant the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
          New York, New York

/s/      D. J. Baker
D. J. Baker (DB 0085)
Sally McDonald Henry (SH 0839)
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:   (917) 777-2150

-and-

Sarah Robinson Borders
Brian C. Walsh
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

PROPOSED ATTORNEYS FOR THE DEBTORS

**EXHIBIT A**

**AGREEMENT**



400 Madison Avenue, 3rd Floor
New York, NY 10017
main  212.610.5600
fax    212.610.5601
www.xroadsllc.com

February 16, 2004

H. Jay Skelton
Chairman of the Board
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254

Re:    Winn-Dixie Stores, Inc. / XRoads Solutions Group, LLC

Dear Mr. Skelton:

This letter agreement ("Agreement") sets forth the services to be provided by XRoads Solutions Group, LLC and its affiliates (collectively, "XRoads") to Winn-Dixie Stores, Inc. and its affiliates and subsidiaries (collectively, the "Company") and the terms and conditions under which such services will be performed (the "Engagement"). All references in this Agreement to XRoads shall include officers, agents, and employees of XRoads.

1.  **Scope of Services and Fees: Pre-Petition.**

   a.  <u>Pre-Petition Services</u>.  From February 15, 2005 through February 21, 2005 (the "Pre-Petition Period"), the Company shall employ XRoads to assist the Company and its bankruptcy counsel in preparations for a possible filing of a petition for protection under the United States Bankruptcy Code, which assistance shall include without limitation, assisting in the preparation of schedules of assets and statements of financial affairs, financial and cash flow forecasting, review of contracts (including executory contracts), review of accounts payable, coordination with investor and public relations professionals, analysis of the Company's largest unsecured creditors, real estate analysis, business plan review, and assistance in arranging for Debtor-in-Possession ("DIP") financing, as may be requested.

   b.  <u>Pre-Petition Fees</u>.  The Company shall pay XRoads a fixed flat fee of $300,000 ("Pre-Petition Fee") for XRoads' pre-petition services during the Pre-Petition Period, which Pre-Petition Fee shall include payment for all of XRoads personnel's time spent performing the services set forth in Section 1.a. above during the Pre-Petition period and all of XRoads' anticipated out-of-pocket expenses for travel, meals and living expenses incurred during the Pre-Petition Period.  The Company shall pay the Pre-Petition Fee to XRoads on or before 12:00 noon EST on February 18, 2005.

_____ Initial

_____ Here



Winn-Dixie Stores, Inc.
February 16, 2005
Page 2 of 12

2.  **Scope of Services: Post-Petition**.

   a.  Within three (3) days after the Company has filed its petition for bankruptcy protection under the United States Bankruptcy Code, the Company shall seek bankruptcy court approval of XRoads' Engagement as provided for in this Agreement, pursuant to 11 U.S.C. § 328 or such other appropriate code section as determined by the parties and the Company's counsel. During the Company's bankruptcy ("Post-Petition Period"), XRoads shall be engaged to advise the Company in connection with various debtor, financial and operations restructuring advisory matters, including but not limited to:

   i.  **Real Estate Planning and Management**

   - Assessments of marketability versus holding costs of excess real estate

   - Assisting the Company in its selection and management of third parties to evaluate, market and sell leases associated with stores and facilities to be closed

   - Assisting the Company in the valuation of potential lease reductions for continuing stores and facilities

   - Assist with renegotiation of existing real estate leases

   - Assist with disposition of non-essential real estate

   ii.  **Vendor Management**

   - Assisting the Company in its communications, negotiations with, and presentations to vendors, trade creditors and holders of such debt

   iii.  **Cash Management and Financial Reporting**

   - Analyzing and redesigning the Company's cash management and all related activities

   - Advising the Company on its cash forecasting process, including reviewing cash flow projection models previously prepared by the Company, and redesigning the Company's cash forecasting processes

   - Assisting the Company in redesigning and implementation of new effective management and financial reporting methodologies for the Company's business

   - Assisting the Company in the development of a reliable long-term liquidity forecast

_____ Initial
_____ Here



Winn-Dixie Stores, Inc.
February 16, 2005
Page 3 of 12

    - Assisting the Company in developing a more detailed financial reporting package with commentary, including an analysis of monthly performance, an outlook to the next period based on current trends and backlogs, and a comparison to budget so that deviations therefrom, if any, can be tracked and explained along with providing a view toward any changes to the budget model which may become necessary

### iv. Lender Management

    - Communication

    - Validate reports

### v. Strategic Advisory

    - Evaluating and advising the Company on its Company's strategic alternatives

    - Evaluating the Company's business plan, including the level of execution of said plans, plans for business closings, shut downs or other improvements or changes, and advising on same; assisting the Company in the integration of same into the Company's reorganization and restructuring plans

### vi. Case Management Services

    - XRoads understands that the Company has retained Logan & Company, Inc. to provide the Company with bankruptcy management and analysis work in connection with claims filed by the Company's creditors, including analysis of claims, reconciliations, litigation / objection support functions, and exhibit preparation. XRoads shall not duplicate such services but may provide supplementary services if requested to do so by the Company and its bankruptcy counsel. XRoads shall provide the Company with such other selected bankruptcy support services and bankruptcy administrative services as the Company in consultation with its bankruptcy counsel elects from the list of such services set forth on Schedule A attached hereto, which Schedule A is incorporated herein by this reference, all at the rates set forth on Schedule A attached hereto (the "BK Admin Charges"). BK Admin Charges shall be paid in accordance with the payment procedures approved by the Bankruptcy Court overseeing the Company's bankruptcy case.

    b. <u>Expansion of Services</u>. The scope of XRoads' post-petition services may be expanded from time to time, provided that XRoads and the Company mutually agree in writing to any such expansion and any corresponding increase in fees.

_____ Initial

_____ Here



    c. <u>Post-Petition Monthly Fees & Hourly Fees</u>. XRoads will charge the Company a fixed minimum fee of $200,000 per month during the Post-Petition Period (the "Monthly Fees") for XRoads services set forth in Sections 2.a. and b. above, provided that if XRoads' personnel's time spent "performing the Services" (as defined below) total more than 400 hours in any calendar month during the Post-Petition Period, then the Company shall pay XRoads for such additional hours at the rate of rate of $400 per hour ("Hourly Fees"). The Company shall pay XRoads the Monthly Fees in advance on the first day of each month, subject to the bankruptcy court's authorized procedures for payments to professionals. The Monthly Fee for February 2005 and the final month of this Engagement shall be prorated, as will the 400 hour threshold provided for above. "Performing the Services" shall include time spent by XRoads professional personnel performing the services provided for in Sections 2.a. and b. above, and shall exclude non-working time spent traveling to, from and for the Company to perform such services.

    d. <u>Payment of Hourly and Admin Fees</u>. XRoads will submit monthly invoices for any Hourly Fees hereunder, which invoices shall be due and payable in accordance with the bankruptcy court's payment procedures for the Company's bankruptcy case. XRoads' administrative non-professional services performed in connection with this Engagement shall be charged at rates of $85 - $160 per hour ("Admin Fees") and such administrative services shall not be applied towards the 400 hour threshold provided for above. Administrative services includes paralegal, technical support and document management services. Administrative services do not include clerical or secretarial services. Admin Fees shall be included in XRoads monthly invoices for Hourly Fees and shall be payable therewith.

    e. <u>Travel Time</u>. The Company shall not pay XRoads for the travel time spent by XRoads personnel while traveling to and from the Company's designated workplace ("Travel Time"). Travel Time will be non-working commuting time measured from the time XRoads personnel leave the location from which he or she departs until arrival at the Company designated workplace, including commuting time while XRoads personnel are temporarily living near the Company's designated workplace.

    f. <u>Expenses</u>. XRoads shall be entitled to reimbursement of its expenses reasonably incurred in connection with this Engagement (e.g., actual out of pocket expenses such as communications, travel, meals and living expenses incurred in connection with the Engagement). The Company shall only be charged for coach class airline travel during this Engagement. XRoads will submit periodic invoices for these expenses, which invoices shall be due and payable in accordance with the bankruptcy court's payment procedures for the Company's bankruptcy case.

    g. <u>Retainer</u>. The Company shall pay to XRoads $500,000 as a retainer due on or before 12:00 noon EST on February 18, 2005. The retainer is a "security retainer" to secure payment to XRoads for services to be rendered and expenses to be incurred by XRoads

_____ Initial

_____ Here



during the Pre-Petition Period and Post-Petition Period.  The retainer is not to be applied or credited to amounts due from the Company as they come due, but will be returned to the Company once all amounts due hereunder are paid in full. The Company hereby grants a security interest in the retainer to XRoads to secure payment of all amounts due hereunder and expressly authorizes XRoads to pay itself any amounts past due from the retainer. The Company acknowledges and agrees that this security interest is perfected by virtue of XRoads' possession of the retainer.  Interest earned on the retainer is the property of the Company and shall be periodically delivered to the Company.

h.  <u>Performance Fee</u>. In addition to the Monthly Fees and Hourly Fees provided for above, XRoads shall be entitled to a performance fee for this Engagement in the amount of $1,250,000 (the "Performance Fee"), which shall be paid by the Company to XRoads upon the consummation of a Qualifying Transaction.  "Qualifying Transaction" shall mean the earlier of (i) the sale or monetization of all or substantially all of the assets or equity of the Company in one or more transactions; (ii) the merger or consolidation of the Company with or into any other entity in one or more transactions; (iii) the substantial consummation of a plan of reorganization for the Company; or (iv) the liquidation of the Company. At the sole discretion of the Board of Directors of the Company, the Performance Fee payable to XRoads may be increased, provided that the maximum Performance Fee payable hereunder shall not exceed $5,000,000.  Any increase in the Performance Fee over the $1,250,000 amount shall be subject to the approval of the bankruptcy court after due notice and opportunity for hearing given to the U.S. Trustee, the unsecured creditors committee and any secured lenders of the Company.

k.  <u>Wire Transfer</u>.  All payments required hereunder shall be paid by wire transfer unless otherwise permitted by XRoads. Set forth below are XRoads' wire transfer instructions:

> Bank Name:  Comerica Bank
> Bank Address:  611 Anton Blvd; Costa Mesa, CA  92626
> Bank Phone:  Phone (800) 888-3595
> ABA Routing:  ABA: 121137522
> Account Name:  XRoads Solutions Group, LLC
> Account No:  189-262-1549
> Contact Person:  J.Simon / E.Lyons

Payments made by mail should be sent to XRoads Solutions Group, LLC, Attention: Edward Lyons, Controller, 9 Executive Circle, Suite 190, Irvine, California 92614.

l.  <u>Right to Terminate Services</u>.  Failure of the Company to promptly pay amounts due for services rendered or for reimbursement of expenses shall constitute justification for XRoads to terminate this Agreement upon three (3) days written notice and XRoads shall have the right to recover from the Company (i) all unpaid amounts owed, (ii) the $1,250,000 minimum amount Performance Fee, and (iii) any Performance Fee amount in excess of

_____ Initial

_____ Here





Winn-Dixie Stores, Inc.
February 16, 2005
Page 6 of 12

₣ 1,250,000

·$2,000,000 as determined appropriate by the Company's Board of Directors or the bankruptcy court overseeing the Company's bankruptcy, as applicable, based on XRoads services performed.

3. **Term of Engagement**.

The term of the Engagement shall commence as of February 15, 2005. Either the Company or XRoads may terminate this Agreement upon thirty (30) days' advance written notice, with payment due to XRoads for fees through the termination date (including Monthly Fees, Hourly Fees, Admin Fees and the minimum Performance Fee) and expenses incurred through the termination date. Notwithstanding the preceding, in the event the Company terminates this Agreement for good cause, the Company shall not be obligated to pay XRoads the Performance Fee, provided that XRoads shall have the right to have any such termination for cause ruled upon by the bankruptcy court overseeing the Company's bankruptcy case. XRoads may withdraw for good cause without the Company's consent. Good cause includes a party's breach of this Agreement (including the Company's failure to pay any appropriate invoice when due), the Company's or XRoads' failure or refusal to cooperate with the other, or any fact or circumstance that would render XRoads' continuing representation unlawful or unethical. In such withdrawal event, the Company shall pay to XRoads all fees through the withdrawal date (including Monthly Fees, Hourly Fees, Admin Fees and the minimum Performance Fee) and expenses incurred through the withdrawal date.

4. **Work Performed**.

XRoads work for the Company will be performed on a "level-of-effort" basis; that is, the depth of our analyses and extent of our authentication of the information on which our advice to the Company will be predicated, may be limited in some respects due to the extent and sufficiency of available information, time constraints dictated by the circumstances of our engagement, and other factors. Moreover, we do not contemplate examining any such information in accordance with generally accepted auditing or attestation standards. Rather, it is understood that, in general, we are to rely on information disclosed or supplied to us by employees and representatives of the Company without audit or other detailed verification of its accuracy and validity.

5. **Reports**.

XRoads will submit oral and/or written reports, at the request of the Company, summarizing our evaluations and analyses based on our work pursuant to this Agreement. Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objective of our Engagement. However, because of the time and scope limitations implicit in our Engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their significance. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to the Company may be based. In addition, we

Initial
Here



have no obligation to and will not update our reports or extend our activities beyond the scope set forth herein unless the Company requests and we agree to do so.

6.  **Disclosures**.

XRoads has represented, and will in the future represent, many different clients with various business interests in numerous industries. These clients are often referred to XRoads by intermediaries such as lawyers, investment bankers, lenders and accountants ("Referral Sources"). In undertaking the Engagement on behalf of the Company, XRoads' objective is to provide services for the Company to the best of its ability, but without precluding XRoads from representation of other clients or from accepting referrals from or making referrals to Referral Sources. We have undertaken a reasonable review of our records to determine XRoads' professional relationships with the persons or entities the Company has identified. We are not aware of any conflicts of interest or relationships that would preclude us from performing the above work for the Company. XRoads agrees to update its disclosure information from time to time if and when additional parties with an interest in or a relationship with the Company are identified by the Company, in writing, to XRoads.

7.  **Entire Agreement, Waiver, Modification, and Notices**.

This Agreement, including any Exhibits, constitutes the final and complete expression of the parties with respect to its subject matter and supersedes and replaces any other written or oral agreement or understanding between the parties. This Agreement may be amended, modified, supplemented or waived only by a written instrument signed by both parties. No waiver of a breach hereof shall be deemed to constitute a waiver of a future breach, whether of a similar or a dissimilar nature. All notices, demands or other communications which are required or are permitted to be given in this Agreement shall be in writing and shall be deemed to have been sufficiently given (i) upon personal delivery, (ii) the third business day following due deposit in the United States mail, postage prepaid, and sent certified mail, return receipt requested, correctly addressed or (iii) when receipt is acknowledged if sent via facsimile transmission. Notices to you shall be sent to the address set forth on page one of this Agreement. Notices to XRoads shall be sent to the address set forth below:

> XRoads Solutions Group, LLC
> Attn: General Counsel
> 9 Executive Circle, Suite 190
> Irvine, CA 92614
> Fax (949) 567-1702

Either party may give written notice of a change of address by certified mail, return receipt requested, and after notice of such change has been received, any notice shall be given to such party in the manner above described at such new address.



_____ Initial

_____ Here



Winn-Dixie Stores, Inc.
February 16, 2005
Page 8 of 12

8. **Authority**.

The Company has all requisite corporate power and authority to enter into this Agreement. The Company and XRoads have fully reviewed this Agreement, have obtained counsel on its terms, and have participated in the drafting of this Agreement such that it shall not be construed against any one party. This Agreement has been duly and validly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

9. **Expiration of Offer**.

If this Agreement is not executed within seven days from its issue date, XRoads reserves the right to amend or revoke the terms after such date.

**THE ADDITIONAL TERMS AND CONDITIONS ATTACHED TO THIS AGREEMENT ARE HEREBY MADE PART OF THIS AGREEMENT AS THOUGH FULLY SET FORTH HEREIN.**

If you agree to the terms and conditions set forth above, please indicate your acceptance and approval by signing this letter in the space provided below and on the duplicate copy attached. Please return one fully executed original to the undersigned for our files.

XRoads looks forward to serving you in this important matter.

Very truly yours,

**XRoads Solutions Group, LLC**

Dennis I. Simon
Managing Principal

**AGREED AND ACCEPTED**:

**Winn-Dixie Stores, Inc.**

By: _____    Date:_____

H. Jay Skelton
Chairman of the Board

_____ Initial

_____ Here



## ADDITIONAL TERMS AND CONDITIONS

**Amounts Not Paid**. All amounts not paid when due will bear interest at an annual rate of 12% or the maximum rate allowed by law, whichever is greater.

**Agreement Not to Employ**. XRoads' business is in part centered on its ability to identify and secure the services of talented personnel for its client companies. Absent an agreement with XRoads providing it fair compensation, XRoads would suffer serious economic harm were its client companies to hire directly or through other companies XRoads' employees. The Company agrees that during the term of this Agreement and for twelve months thereafter it shall not, directly or indirectly, knowingly solicit, offer employment to or hire any employee or independent contractor of XRoads with whom the Company has had contact as a result of this Engagement. If the Company and XRoads agree that the Company may hire a XRoads' employee or independent contractor, notwithstanding the prohibition in the immediately preceding sentence, and such hiring occurs within twelve months after the termination of this Agreement, the Company shall pay XRoads an amount equal to the particular individual's standard hourly rate at XRoads multiplied by an assumed annual billing of 2,000 hours as liquidated damages. Any such payment shall be made on the date the XRoads' employee or independent contractor begins work for the Company. This paragraph shall not preclude the Company from making general employment solicitations not specifically aimed at XRoads' employees or independent contractors.

**Warranties and Indemnification**. XRoads neither expresses nor implies any warranties of its work nor predicts results of the Engagement. XRoads has not offered any assurances that the efforts to resolve the financial, structural or management issues facing the Company can or will be successful.

XRoads shall not be subject to any liability to the Company for any act or omission relating to, in connection with or arising out of services rendered hereunder, unless XRoads' acts or omissions constitute willful malfeasance, gross negligence or the reckless disregard of XRoads' obligations or duties hereunder. In furtherance of the foregoing, the Company agrees and covenants that it will not initiate any legal or administrative proceedings whatsoever against XRoads relating to, in connection with or arising from the services rendered hereunder seeking more than the amount of the fees actually paid to XRoads for the Engagement. The Company acknowledges and agrees that the allocation of risk provided by this paragraph is fair and reasonable.

The Company releases, indemnifies and holds XRoads harmless from and against any losses, claims, damages or liabilities ("Losses") to which XRoads may become subject and shall promptly reimburse XRoads for any legal or other expenses (including the cost of any investigations and the hiring of any accountant or other experts) reasonably incurred by XRoads relating to, in connection with or arising from the services rendered hereunder, whether or not resulting in any liability, unless such Losses resulted from XRoads' willful malfeasance, gross negligence or the reckless disregard of its obligations or duties hereunder.

In the event of a bankruptcy involving the Company, XRoads understands that the foregoing provisions may be modified by the order of the bankruptcy court approving the engagement of XRoads.

_____ Initial
_____ Here



**Legal Proceedings**.  If after the termination of the Engagement XRoads is requested and agrees or is required to participate in any manner in legal or administrative proceedings regarding the Company, compensation shall be paid to XRoads for time spent in preparation, travel, attendance at and work related thereto, all at XRoads' then current hourly rates for the relevant personnel involved, unless XRoads is a party litigant. XRoads shall be further entitled to such compensation in the event XRoads is required to participate in any manner in legal or administrative proceedings concerning the Company during the Engagement, if such participation requires work outside the scope of services to be performed under this Engagement. For individuals no longer employed by XRoads, at the time of such participation, payment shall be made to such individuals directly or to their employers, as applicable.

**Accuracy of Information**. The Company will use reasonable efforts to assure that all information, financial or otherwise, provided by or on behalf of the Company with respect to the Engagement (the "Information") to XRoads will, as of its respective dates, be accurate and complete in all its material respects. The Company understands that XRoads will not be responsible for independently verifying the accuracy of the Information. The Company assumes full responsibility for inaccuracies in any Information provided by or on behalf of the Company to XRoads or any third party. The Company will reasonably cooperate with XRoads in all phases of XRoads' services under the Engagement.  Specifically, without limiting the generality of the foregoing, if at any time during the Engagement, the Company discovers that any of the Information is inaccurate in any material respect it will immediately notify XRoads.

**Work Output**. XRoads' work processes used, prepared or assembled by XRoads during the Engagement, including XRoads' proprietary methodology, know-how and computer models ("Work Processes") shall be the exclusive property of XRoads. The Company shall not be entitled to the Work Processes.  XRoads shall retain copies of the Work Processes pursuant to its document retention policy as in effect from time to time. Upon the conclusion of the Engagement, XRoads shall deliver to the Company any data, reports, or runs assembled or prepared by XRoads for the Engagement specifically and for the benefit of the Company.  The data, reports and runs shall be the property of the Company.

**Future Engagements**. XRoads has offices throughout the United States.  XRoads is or expects to be engaged by other clients from time to time and cannot assure that, following the Engagement, an engagement will not be accepted elsewhere for an interested party.

**Independent Contractor**.  The Company acknowledges that XRoads is being retained as an independent contractor to the Company and no employment relationship, partnership, joint venture or other association shall be deemed created by this Agreement.

**Confidentiality**. During the term of the Engagement and thereafter, XRoads shall keep secret and retain in strictest confidence, any and all confidential information relating to the Company or which XRoads shall obtain knowledge of by reason of the Engagement, including, without limitation, trade secrets, customer lists, financial plans or projections, pricing policies, marketing plans or strategies, business acquisition or divestiture plans, new personnel acquisition plans, technical processes and other research projects. XRoads shall not, except in connection with the performance of its duties hereunder, disclose any such information to anyone outside the Company, other than to XRoads' legal counsel, as required by applicable law (provided prior written notice thereof is given by XRoads to the Company) or with the

_____ Initial
_____ Here



Winn-Dixie Stores, Inc.
February 16, 2005
Page 11 of 12

Company's prior written consent, which shall not be unreasonably withheld or delayed. The obligations of XRoads in this paragraph shall not apply to information which is (i) known generally to the public; (ii) known to XRoads prior to the date of this Agreement; (iii) lawfully disclosed to XRoads by a third party; (iv) generally known in the industry in which the Company is engaged; or (v) required by law to be disclosed by XRoads, in which event XRoads shall provide the Company with prompt notice thereof.

The Company shall not, except as required in the conduct of its business, disclose any Work Processes to any third party other than the Company's lenders, attorneys and advisors or as otherwise required by law, without the prior written consent of XRoads, which consent shall not be unreasonably withheld or delayed.

**Engagement of Legal Counsel**. XRoads will have the right to retain independent legal counsel to obtain advice with respect to its services under the Engagement. The Company will reimburse XRoads upon demand for the reasonable fees and expenses of such independent legal counsel incurred as an expense by XRoads on behalf of the Company up to $37,500 per calendar quarter, on a cumulative basis. Nothing in this Section limits the rights of XRoads to employ counsel and to pay legal expenses, and any obligation of the Company or any other party to indemnify XRoads for such expenses, in the event any claim is asserted against XRoads or any litigation is commenced in connection with the Engagement.

**Agreement to Mediate/Arbitrate:**

a.      **Mediation.**  The parties shall mediate all disputes and claims between them arising out of or related to the Engagement or any resulting transaction (a "Dispute") before resorting to arbitration.  Selection of a mediator shall occur within ten days of a demand for mediation.  If the parties cannot agree on the selection of a mediator within ten days, either or both party shall request the American Arbitration Association (AAA) to appoint one for them within fifteen days.  The mediation shall take place within ten days of the date of the selection or appointment of the mediator and shall take place in New York City, New York.  Mediation fees, if any, shall be divided equally among the parties involved and prepaid.  If any party commences an arbitration based on a Dispute without first attempting to resolve the matter through mediation or initiates an unauthorized court action, then that party shall be required to pay the other party's attorneys' fees, expert costs and other expenses in connection with the arbitration or unauthorized court action.  The parties agree that any Dispute which is not settled through mediation shall be decided by neutral, binding arbitration and not by court action, except as provided by law for judicial review and enforcement of arbitration proceedings and awards and as provided in subsection c. below.

b.      **Arbitration.**  The arbitration shall be conducted in accordance with AAA's Expedited Procedures for arbitration (unless the parties agree in writing to use AAA's Commercial Arbitration Rules) and shall be conducted in New York City, New York. The parties have no right to discovery and the arbitrator(s) shall have no power to allow discovery unless the parties agree in writing to modify this limitation.  Except as provided above, each party shall be responsible for its own attorneys' fees and costs. The arbitrator shall apply New York law as the applicable state law governing the Dispute, without reference to choice of law principles, applying New York rules of

Initial
Here



Winn-Dixie Stores, Inc.
February 16, 2005
Page 12 of 12

evidence as applicable in a court of law. The award of the arbitrator shall be final and binding upon the parties without right of appeal or judicial review. Application may be had by any party to any court of general jurisdiction for entry and enforcement of judgment based on said award. Such judgment shall be binding, final and nonappealable.

c.      **Provisional Remedies**. Notwithstanding the above, either party may, without waiving any remedy under this Agreement, seek from any court having jurisdiction, any interim or provisional relief available under applicable law that is necessary to protect the rights, property or remedies of that party, pending the outcome of the mediation and/or arbitration, including but not limited to, applications for injunctive relief, writs of attachment or possession.

d.      **Bankruptcy Court**. Notwithstanding the foregoing, in the event of a bankruptcy filing by the Company, the Company shall have the right to seek a determination of any Disputes by the bankruptcy court having jurisdiction over the Company's case.

**Use of Name**. The Company agrees that XRoads shall have the right to use the Company's name and logo in a description of the services provided by XRoads under the Agreement.

**Applicable Law; Headings**. The Agreement shall be governed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws. The paragraph headings in the Agreement and the Additional Terms and Conditions are for informational purposes only.

END OF DOCUMENT



Initial
Here

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                  :
                                       :        **Chapter 11**
                                       :
**WINN-DIXIE STORES, INC., et al.,**    :        **Case No. 05-11063**
                                       :
                Debtors.               :        **(Jointly Administered)**
                                       :
------------------------------------------------------------x

## DECLARATION OF DENNIS I. SIMON
## AND DISCLOSURE OF COMPENSATION

I, Dennis I. Simon hereby state and declare as follows:

1.      I am the Managing Principal of XRoads Solutions Group, LLC ("XRoads") and work from the firm's office located at 400 Madison Avenue, Third Floor, New York, New York 10017.  I am duly authorized to make this Declaration on behalf of XRoads, and I make this Declaration in support of the application of Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for the approval of their engagement of XRoads to provide financial and operations restructuring consulting services (the "Application").  The facts set forth in this Declaration are personally known to me, and, if called as a witness, I could and would testify thereto.  Unless otherwise defined, all capitalized terms used herein have the meanings given to them in the Application.

2.      Neither I, XRoads, nor any professional associated with XRoads has been engaged by any entity other than the Debtors in connection with the Debtors' Chapter 11 cases.

3.      XRoads is a "disinterested person," as that term is defined in Section 101(14) of the Bankruptcy Code, in that, except as otherwise disclosed herein, XRoads, its members and professionals:

(a)     are not creditors, equity holders, or insiders of the Debtors;

(b)     are not and were not investment bankers for any outstanding security of the Debtors;

(c)     have not been, within three years before the Petition Date, (i) investment bankers for a security of the Debtors, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors;

(d)     are not and were not, within two years before the Petition Date, a director, officer, or employee of the Debtors or of an investment banker specified in subparagraph (b) or (c) of this paragraph; and

(e)     have not represented any party in connection with matters relating to the Debtors (although XRoads has in the past represented and currently represents various of the Debtors' creditors and parties in interest in matters unrelated to the Debtors or their Chapter 11 bankruptcy cases).

4.      XRoads is not a creditor of the Debtors.  Since January 1, 2005, the Debtors have paid XRoads approximately $800,000.  Of that amount, approximately $300,000 was for services rendered and disbursements, and $500,000 was for a retainer (the "Retainer"), to be held as security during these cases.

5.      To the best of my knowledge, information, and belief formed after reasonable inquiry, other than in connection with these cases, neither XRoads nor I have any affiliation with the Debtors, their creditors, the United States Trustee, any person employed by the office of the United States Trustee, the Bankruptcy Judge presiding over these cases, or any other party with an actual or potential interest in these Chapter 11 cases, or their respective attorneys or accountants, except that (a) XRoads may have been engaged from time to time in the past, and may be engaged in the future, in other cases where one or more of such parties may have been or may be involved, and (b) XRoads may have been engaged by certain creditors and other parties in interest or their attorneys, accountants, or professionals in other cases unrelated to the Debtors' Chapter 11 cases.

6.      XRoads has researched its client databases to determine whether it has any

relationship with the following entities (collectively, the "Interested Parties"):

(a)      the Debtors;

(b)      the agents for and lenders in the Debtors' senior secured credit facility;

(c)      the indenture trustee for the Debtors' noteholders;

(d)      the Debtors' fifty (50) largest unsecured trade creditors on a consolidated

basis as of February 18, 2005;

(e)      the Debtors' non-debtor affiliates;

(f)      the Debtors' current officers and directors and former officers and

directors during the prior (4) four years;

(g)      the Debtors' accountants for the prior (3) three years; and

(h)      those other creditors and parties in interest listed on <u>Attachment 1</u> hereto.

7.      My review of the results of the search of our client database with regard to the

Interested Parties indicates that XRoads currently is engaged and was previously engaged by the

following entities or one or more of their parent companies, subsidiaries, or affiliates in

connection with matters totally unrelated to the Debtors or their Chapter 11 cases:

**Aegon USA, Inc. (Transamerica Financial Life Insurance Company)**  has previously
been an adverse and a non-adverse party to XRoads' clients in unrelated matters.

**Allied Capital Corporation** was previously an adverse party to a XRoads' client in an
unrelated matter.

**American International Group, Inc.** ("AIG") was previously a member of a note holder
group of an unrelated entity to which XRoads is currently the Responsible Officer.  AIG
was also previously an adverse and a non-adverse party to XRoads' clients in unrelated
matters.

**Arlington, LLC** was previously a non-adverse party to XRoads' client in an unrelated
matter.

The **Bank of New York** is an affiliate of a current XRoads' client in an unrelated matter and was previously a non-adverse and an adverse party to XRoads' clients in other unrelated matters.

**Bank One Corporation** is a referral source for XRoads and XRoads refers business to Bank One. Bank One is currently a non-adverse party to a XRoads' client and was previously an adverse and a non-adverse party to XRoads' clients in unrelated matters. Also, Bank One has previously been a client of XRoads in an unrelated matter.

The **Blackstone Group** previously represented adverse parties to XRoads' clients in unrelated matters.

**CIT Group** ("CIT") is a referral source for XRoads and XRoads refers business to CIT. CIT is currently a member of a bank group that XRoads advises in an unrelated matter and is an adverse party to XRoads' clients in other unrelated matters. CIT has previously been a non-adverse and an adverse party to XRoads' clients in unrelated matters. Also, CIT Retail Finance Group was previously a XRoads' client on an unrelated matter.

**Collins & Aikman Floor Coverings** was previously an adverse party to a XRoads' client in an unrelated matter.

**Congra Foods** is currently a non-adverse party in a current, unrelated XRoads engagement.

**Congress Financial Corporation** has previously been an adverse and a non-adverse party to XRoads' clients in unrelated matters.

**Equity One, Inc.** formerly known as **IRT Property Company** is currently an adverse party to a XRoads' client in an unrelated matter.

**Fleet Boston Financial Corporation** and its affiliated entities ("Fleet Boston") is a referral source for XRoads and XRoads refers business to Fleet Boston. Currently, Fleet Boston is an adverse party to XRoads' clients in unrelated matters. Fleet Boston was previously an adverse and a non-adverse party to XRoads' clients in other unrelated matters. In addition, Fleet Boston was previously a client of XRoads, as a member of a bank group, in an unrelated matter.

**GE Capital Corporation** ("GECC") is a referral source for XRoads and XRoads refers business to GECC. GECC is currently a XRoads' client in an unrelated matter and is an adverse and a non-adverse party to XRoads' clients in other unrelated matters. GECC was previously a non-adverse and an adverse party to XRoads' clients in other unrelated matters.

**General Electric Company** is currently an adverse party to XRoads' clients in unrelated matters.

**General Mills** is currently a non-adverse party to a XRoads' client in an unrelated matter.

**GMAC** is currently a member of a bank group that XRoads advises in an unrelated matter and was previously an adverse party to XRoads' clients in other unrelated matters.

The **Hartford Insurance Company** was previously an adverse party to a XRoads' client in an unrelated matter and was previously a member of a note holder group that XRoads advised in another unrelated matter.

**Kimberly Clark** was previously an adverse party to XRoads' client in an unrelated matter.

**KPMG, LLP** is currently a non-adverse party to XRoads' clients in unrelated matters and has previously been an adverse and a non-adverse party to XRoads' clients in unrelated matters. KPMG is a referral source for XRoads and XRoads refers business to KPMG.

**Lafayette Insurance Company** was previously an adverse party to XRoads' client in an unrelated matter.

**Liberty Mutual Insurance Company** was previously an adverse party to a XRoads' client in an unrelated matter.

**Mellon Financial Corporation** was previously an adverse party to XRoads' clients in unrelated matters.

**Merrill Lynch & Co., Inc.** is currently an adverse and a non-adverse party to XRoads' clients in unrelated matters and was previously an adverse and a non-adverse party to XRoads' clients in other unrelated matters.

**National City Bank** ("National City") and its affiliates have referred business to XRoads. National City is currently an adverse party to XRoads' clients in unrelated matters and has previously been an adverse and a non-adverse party to XRoads' clients in other unrelated matters.

**Orix Corporation** and its affiliated entities were previously adverse and non-adverse parties to XRoads' clients in unrelated matters.

**Parkland Mall Associates** was previously an adverse party to a XRoads' client in an unrelated matter.

**Pepsi Cola Company** is currently an adverse party to XRoads' client in an unrelated matter and was previously a non-adverse party in other unrelated XRoads engagements.

**PNC Bank, N.A.** is currently an adverse and non-adverse party to XRoads' clients and is a member of a bank group that XRoads' currently represents, all in unrelated matters. Previously, PNC Bank, N.A. was an adverse party to XRoads' clients in other unrelated matters.

**Principal Life Insurance Company** was previously an adverse and a non-adverse party to XRoads' clients in unrelated matters.

**RZB Finance, LLC** was previously an adverse party to a XRoads' client in an unrelated matter.

**Skadden, Arps, Slate, Meagher & Flom, LLP** ("Skadden") is a referral source for XRoads, and XRoads refers business to Skadden. Skadden currently is an adverse party to a XRoads' client in an unrelated matter and previously represented adverse as well as non-adverse parties to XRoads' clients in other unrelated matters. Skadden was previously a XRoads' client (on behalf of a Skadden client) in an unrelated matter and in another unrelated matter was counsel to a XRoads' client.

**St. Paul International Insurance Company, Ltd. (Travelers Insurance Company)** was previously an adverse party to a XRoads' client in an unrelated matter.

**Sun Trust Bank** was previously a secured lender to a XRoads' client in an unrelated matter.

**Swiss Reinsurance Company** was previously a bondholder to a former XRoads' client in an unrelated matter.

**UBS** is currently an adverse and a non-adverse party to XRoads' clients in unrelated matters and was previously an adverse and a non-adverse party to XRoads' clients in other unrelated matters.

**US Bank** is a referral source for XRoads, and XRoads refers business to US Bank. US Bank is currently an adverse party to XRoads' clients in unrelated matters. US Bank has previously been an adverse and non-adverse party to XRoads' clients in other unrelated matters. US Bank has also previously been a part of various bank groups that XRoads advised in unrelated matters.

**Wachovia Bank,** successor by merger to First Union National Bank ("First Union") is currently an adverse party to XRoads' clients in unrelated matters and has previously been a non-adverse and an adverse party to XRoads' clients in other unrelated matters. First Union has referred business to XRoads. In addition, First Union was previously a client of XRoads, as a member of a bank group, in an unrelated matter.

**Wells Fargo** refers business to XRoads, and XRoads refers business to Wells Fargo. Wells Fargo is currently a non-adverse and an adverse party to XRoads' clients in unrelated matters and has previously been an adverse and a non-adverse party to XRoads' clients in other unrelated matters. In addition, Wells Fargo has been both an agent bank and a member of bank groups that XRoads advised in previous unrelated matters.

**Wilmington Trust Company** was previously a member of a group of bondholders that XRoads advised in an unrelated matter.

**XL America, Inc.** and its affiliates are currently adverse and non-adverse parties to XRoads' clients in unrelated matters.

8.      XRoads is engaged by many clients in locations throughout the world on matters involving many different attorneys, accountants, financial consultants, and investment bankers, including other professionals representing the Debtors.  In certain instances, such professionals may be the client of XRoads.  All of the other cases, proceedings and transactions in which XRoads is involved and professionals representing the Debtors or other parties in interest are also involved are totally unrelated to the Debtors and these Chapter 11 cases.

9.      There are thousands of creditors and parties in interest in the Debtors' Chapter 11 bankruptcy cases.  I anticipate that a review of XRoads's client database with regard to all of the Debtors' creditors and parties in interest would disclose that XRoads previously was engaged by or is currently engaged by one or more creditors or parties in interest (or one or more of their respective parent companies, subsidiaries, and affiliates) in addition to those of the Interested Parties who are specifically identified in paragraph 7 of this Declaration.  My review of the results of the search of our client database indicates, however, that any and all such other engagement(s) of a creditor or party in interest would have been or would be in connection with matters totally unrelated to the Debtors or their Chapter 11 cases.

10.     To the best of my knowledge, information, and belief formed after reasonable inquiry, neither I nor XRoads holds or represents any interest adverse to the Debtors' estates.

11.     In addition, and based upon inquiries made in connection with the preparation of this Declaration, I have reason to believe that one or more members or employees of XRoads (a) owns publicly issued debt or equity securities issued by one or more of the Interested Parties (other than the Debtors); (b) was formerly an employee of, or has a relative who is or was an employee of, one or more of the Interested Parties (other than the Debtors); or (c) maintains a

bank account, brokerage account, credit card account, or loan or mortgage relationship with, or is insured by, one or more of the Interested Parties (other than the Debtors).

12.     The Debtors have consented to the continued and future engagement of XRoads by persons and entities who are creditors or parties in interest in these Chapter 11 cases on matters unrelated to the Debtors and these Chapter 11 cases, and have waived any conflict that might otherwise exist as a result of such other unrelated engagements.

13.     Prior to the filing of these Chapter 11 cases, the Debtors caused to be paid to XRoads the Retainer, in the amount of $500,000, which continues to be held by XRoads as a "last bill" retainer subject to the future direction and orders of the Court.

14.     The Debtors and XRoads have agreed that XRoads will be compensated, subject to Court approval, as set forth in the Agreement.  Specifically, the Debtors will pay XRoads a fixed minimum fee of $200,000 per month.  If XRoads's professionals spend more than 400 hours in any calendar month on the engagement, the Debtors will pay XRoads for any additional hours at the rate of $400 per hour.  The Debtors will compensate XRoads for the time spent by XRoads's personnel who perform administrative services under the terms of the Agreement at a rate of $85-$160 per hour, and such administrative services will not be applied toward the 400-hour threshold described above.  Non-working travel time to and from the Debtors' designated workplace will not be billed to the Debtors nor will such time be applied toward the 400-hour threshold described above.  The Debtors also will reimburse XRoads for its actual and necessary expenses.  In addition, XRoads will receive a performance fee in the amount of $1,250,000, which will be paid under certain circumstances, as outlined in the Agreement and which may be increased up to a maximum performance fee amount of $5,000,000 if approved by this Court and in accordance with the procedures outlined in the Agreement.

15.     The Agreement provides for the Debtors' indemnification of XRoads for certain claims or losses.  Notwithstanding the Agreement, XRoads understands that the Application does not seek approval of an indemnification provision, and XRoads will not seek to enforce any indemnification provision.

16.     No agreement or understanding in any form or guise exists between XRoads and any other person for a division of compensation for services rendered in or in connection with these cases, and no such division of compensation prohibited by Section 504 of the Bankruptcy Code will be made, except among members of XRoads.  XRoads has not shared or agreed to share any compensation received in these cases with any entity other than its members.

17.     Accordingly, I believe the proposed employment of XRoads is appropriate under Section 327(a) of the Bankruptcy Code and is not prohibited by or improper under Federal Rule of Bankruptcy Procedure 5002.  XRoads and the professionals it employs are qualified to be engaged by the Debtors in the matters for which XRoads is proposed to be employed.

18.     To the extent any information disclosed herein requires amendment or modification upon XRoads's completion of further review or as additional party-in-interest information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on February 21, 2005, at Jacksonville, FL.


                                        */s/    Dennis I. Simon*
                                        Dennis I. Simon

**Attachment 1**

**List of Interested Parties**

**Debtors**
Astor Products, Inc.
Crackin' Good, Inc.
Deep South Distributors, Inc.
Deep South Products, Inc.
Dixie Darling Bakers, Inc.
Dixie-Home Stores, Inc.
Dixie Packers, Inc.
Dixie Spirits, Inc.
Dixie Stores, Inc.
Economy Wholesale Distributors, Inc.
Foodway Stores, Inc.
Kwik Chek Supermarkets, Inc.
Sunbelt Products, Inc.
Superior Food Company
Table Supply Food Stores Co., Inc.
WD Brand Prestige Steaks, Inc.
Winn-Dixie Handyman, Inc.
Winn-Dixie Logistics, Inc.
Winn-Dixie Montgomery, Inc.
Winn-Dixie Procurement, Inc.
Winn-Dixie Raleigh, Inc.
Winn-Dixie Stores, Inc.
Winn-Dixie Supermarkets, Inc.

**Non-Debtor Affiliates**
Bahamas Supermarkets Limited
The City Meat Markets Limited
W-D (Bahamas) Limited
WIN General Insurance, Inc.

**Current Officers and  Directors**
John E. Anderson
Laurence B. Appel
J. R. Brogan
D. Michael Byrum
K. B. Cherry
John H. Dasburg
G. L. Estill
T. Wayne Davis
Tillie K. Fowler
Kellie D. Hardee
David F. Henry
H. I. Hopkins, Jr.
Michael J. Istre
J. J. James
Richard C. Judd
P. J. Kennedy
D. G. Lafever
Peter L. Lynch
Richard P. McCook
D. J. Maroney
Mark W. Matta
J. P. Medina
Edward W. Mehrer, Jr.
D. A. Moore, Jr.
Julia B. North
Paul Novak
Bennett L. Nussbaum
E. L. Rainwater
Carleton T. Rider
J. J. Roy
C. S. Rubio
Mark A. Sellers

Dennis M. Sheehan

H. Jay Skelton
Charles P. Stephens
P. L. Tiberio
Ronald Townsend
H. S. Wadford
D. M. Young

**Former Officers and Directors**
Keva M. Bethel
D. H. Bitter
A. Dano Davis
Judith W. Dixon
L. B. Johnson
Bryan C. S. Knowles
Frank Lazaran
Barry J. Rassin
K. A. Romeo
Allen R. Rowland
Karen E. Salem
Hugh G. Sands
John R. Sheehan
Bruce R. Souder

**Senior Secured Lenders**
Amsouth Bank
Bank One
Congress Financial Corporation (Florida),
n/k/a Wachovia National Bank, N.A.
Fleet Retail Group, Inc.
General Electric Capital Corporation
GMAC Commercial Finance LLC
Israel Discount Bank
Merrill Lynch Capital
National City Business Credit, Inc.
PNC Business Credit
RZB Finance LLC
Siemens Financial Services, Inc.
SunTrust Bank
The CIT Group/Business Credit, Inc.
UBS AG, Stamford Branch
Wachovia Bank, National Association
Webster Business Credit Corp
Wells Fargo Foothill LLC

**Mortgage Holders**
Lutheran Brotherhood

**Top 50 Unsecured Trade Creditors on a Consolidated Basis as of February 18, 2005**
Alberto Culver USA, Inc.
Anderson News LLC
Bayer Corp
Campbell Soup Co.
CH Robinson Worldwide Inc
Clorox Sales Co - KPD
Coca Cola Bottling Co
Coca Cola Bottling Works
Conagra Grocery Products Co.
Del Monte Foods USA
DLJ Produce Inc
Edy's Grand Ice Cream

Fin Tech
Florida Coca Cola
Front End Services Corp.
General Electric Company
General Mills Inc.
Georgia Pacific Corp.
Gerber Products Company
Gillette Company
Good Humor Breyers Ice Cream
Gourmet Award Foods Mid Atlantic
Gulf Coast Coca-Cola Bottling Co.
Hershey Chocolate USA
Johnson & Johnson
Keebler Company
Kellogg Sales Company
Kimberly Clark
Konica Photo Imaging
Kraft (Kraft Foods, Kraft Pizza, Nabisco)
Louisiana Coca Cola
McKee Foods Corporation
Nestle (Nestle Usa, Nestle Purina, Nestle Water)
Pepperidge Farm Inc-Cookies
Pepsico. & Affiliates
Powerhouse Produce LLC
Procter & Gamble Dist Co.
Riverdale Farms
Ross Laboratories
Safe Harbor Seafood
Sanderson Farms
Sara Lee Foods
Schering Plough Health Care
Schreiber Foods Inc.
Smith Kline Beecham
Unilever (Hpc Usa & Best Foods)
US Bank Corporation
Warner Lambert Consumer Group
Wyeth Consumer Healthcare

**Parties with Filed UCC Financing Statements**
Bennett's Leasing Incorporated
Cargill, Incorporated
Cisco Systems Capital Corporation
Computer Leasing Company of Michigan, Inc.
EMC Corporation
Fidelity Leasing, Inc.
Fleet Capital Leasing - Technology Finance
Fleet Leasing Corporation
GATX Technology Services Corporation
Healthguard Finance Corporation
Healthguard International, Inc.
IBM Credit Corporation
IBM Credit LLC
Ikon Office Solutions Inc.
Konica Photo Imaging
Konica USA Inc.
National City Bank of MI/IL
NCR Corporation
Norse Dairy Systems
Storagetek Financial Services Corporation
US Bancorp
Xpedex - Division of International Paper

**Indenture Trustee**
Wilmington Trust Company

**Senior Unsecured Noteholders and Related Funds and Administrators**
American Bond Fund of America
American Capital World Bond Fund
American Funds
American Funds High Income Trust
American Funds Insurance – Asset Allocation
American Funds Insurance
American Funds Smallcap World Fund
American Memorial Life Insurance Co.
Amerihealth Insurance Company of New Jersey
Ameriprime Funds
ANIA High Yield Bond Portfolio
Arnhold & S Bleichroeder Advisers, LLC
Assurant Inc.
Austin Investment Management Co.
Aviva Life Insurance Company
Capital Research and Management Company
Clariden US High Yield Bond Fund
Colonial Intermarket Income Trust
Columbia Management Advisors
CGU Insurance Group
Credit Suisse Asset Management Ltd.
Credit Suisse FS High Yield Bond
Credit Suisse High Yield Bond Fund
Delphi Financial Group
Denver Investment Advisors Inc.
DLJ Investment Management Corp.
Dynamic American Value
Dynamic American Value Fund
First Eagle Funds
First Eagle US Value Fund
First Fortis Life Insurance Company
Fortis Benefits Insurance Company
Fortis Group
Fortis Insurance Company
Fringe Benefit Life Insurance Company
Goodman & Co. Investment Counsel
High Yield Plus Fund
IMS Capital Management
IMS Strategic Income Fund
Independence Blue Cross
John Alden Life Insurance Company
Julius Meinl Investment Gmbh
Liberty Funds Distributor, Inc.
Meinl Capitol
PHUP Training
Prudential Investments Fund Management LLC
QCC Insurance Company
Regence Blue Shield
Regence BlueCross BlueShield of Oregon
Regence BlueCross BlueShield of Utah
Reliance Standard Life Insurance Company
Securities Management and Research, Inc.
The Vanguard Group
Vanguard Group Incorporated
Vanguard High-Yield Corporate Bond Portfolio
Vanguard VVIF HighYield Bond Fund
Wellington Management Co. LLP
Westcore Flexible Income Fund

Westcore Funds

**Lessors of Real Property**
100 Executive Drive LP
11010 Seventh Ave Investments
145 Associates Ltd
17161 N W 27th Avenue LLC
1954 Unionport Associates LLC
1980 Unionport Associates LLC
1997 Properties
2525 East Hillsborough Ave LLC
40/86 Mortgage Capital Inc
440 Group Ltd
4JS Family LLLC
5 Points West Shopping Center
51st Street & 8th Ave Corp
7595 Centurion Parkway LLC
9 SC Associates
98 Palms Ltd
99 Eglin Ltd
A F I Management
A G Edwards
A J & C Garfunkel
A L S Telfair Plaza
Ackerberg Group
Ackerman-Midtown Assoc
Acorn Assoc Ltd
Acron USA Fonds Winn Dixie LP
Adams Realty
Aegis Waterford LLC
Aegon USA Realty Advisors Inc
AEI Income & Growth Fund XXI L
AEI Net Lease Income & Growth
AEM Stiftung LLC
Agree Limited Partnership
Aintsar Realty Corp
Airkaman Of Jacksonville Inc
Al Bellotto Inc
Alabama '83 Center Associates
Albert J Cirignano Sr
Albion Pacific Prop Resources
Alfa Mutual Fire Ins Co
Allard LLC
Allied Capital Corporation
Allied Capital REIT Inc
Altamonte SSG Inc
Alvin B Chan Family LP
Alvin B Chan Inc
Alvyn L Woods
Amelia Plaza Shopping Center
American Commercial Realty
American Federal Properties
American Mortgage & Realty Cor
American Paper Box Company Inc
American Plaza Ltd Partnership
American United Life Ins Co
Americana East Investments Inc
Ansel Properties Inc
Applewood Shopping Center
Arcadia FL Diversey West
Arco Realty Company
Arlington Properties Inc
ARS Investment Corporation
Asbury Commons Ltd
Ashy-Brown Gonzales
August Urbanek Investments
Avon Square Ltd
Avondale Square Limited
Azalea Management And Leasing

Azalea Shopping Center
B V Belk Jr
Bainbridge Associates
Baker & Baker
Bakersmith Corners LLC
Banc One
Bank Midwest
Bank Of New York
Bardstown SC LLC
Barlind Enterprises
Barrett Crossing Shopping Cent
Baumgardner-Hogan I LLC
Baxley Zamagias Lp
Baylanding Inc
Bayview Loan Servicing LLC
Beachwalk Centre II LLC
Bedford Avenue Realty Inc
Beer Wells Real Estate Service
Belco Enterprises
Belk Investments
Belleview Square Corp
Belmart Inc
Benderson 85-1 Trust And Wayne
Benderson Trust & Wayne Ruben
Benjamin Adam Setzer As Truste
Bennett V York
BEP II Limited Partnership
Bergeron WD Palmetto LLC
BG Highlands LLC
BG Turfway LLC
BHBS Inc
BHR LLC
Big Pine Shopping Center LLC
Bill Agapion
Bird Square Plaza Management I
Birmingham Realty Co
Blaine Lake LLC
Blanchard and Calhoun Real Est
Blue Angel Crossings
Bob Neill & Associates
Bogalusa Shopping Center Co
Bonners Point LLC
Bordeaux Center Inc
Bowdoin Square LLC
Boyd L Hyder
Boynton Lakes Plaza
Brandon Centre South
Brandywine Plaza Ltd
Brent Lance Trager
Brierwood Village Plaza
Bright-Meyers Dublin Assoc
Broad Street Station S.C.,LLC
Broadmoor Development Co
Brookhaven Retail LLC
Brookwood Flamingo Partners Lp
Brookwood LLC
Brown Investment Properties
Brown Noltemeyer Company
BT Marietta LLC
Bundy New Orleans Co LLC
Bunkie Investment Co LLC
Burlington Associates Ltd Prt
BW Dix Inc
BW Treasure Inc
Byars & Co Inc
C & A Ltd, Lc
C C Altamonte Joint Venture
Ca New Fixed Rate Partnership
Ca New Plan Venture Fund Louis

Cadillac Partnership
Caffery Center LLC
Caldwell Realty & Investment C
California Club Mall
Callahan Plaza Shopping Center
Cameron Edenton Co
Cameron Sanford Company LLC
Camilla Marketplace Associates
Cane River Shopping Cen
Capco 1998 D-7 Arlington Cente
Capital Advisors Inc
Capital Development Company
Capital Properties Associates
Capmark Services LP
Cardinal Entities Company LLC
Carl Dupuis
Carolina Enterprises Inc
Casselsquare LLC
Casto Investments Co Ltd
Cayce Marketplace LP
CC Realty Intermediate Fund I
CDC Paying Agent LLC
Cedar Creek Crossing Associate
Cedar Mountain Village
Cedar Springs Ctr Assocs
Central Progressive Bank
Central Texas Shopping
Centrex Properties Inc
Century Management And
CFG Limited
Chambers Square LLC
Chapel Trail Associates Ltd
Chapin Development Co
Charles Simon Trustee Of Same
Charleston Square Inc Bank Of
CHK & Associates
Cityview LLC
Civic Center Station Ltd
Clayton Crossings LLC
Clearlake Square
Cleveland Marketplace Ltd
Cliffdale Corner Inc
Clinton House Company
CMC Real Estate Program
Collett Management LLC
Collins & Aikman
Collins Pointe Shopping Center
Colonial Development Co LLC
Colonial Properties Services
Colonial Properties Trust
Columbia Marketplace LLC
Columbus Life Insurance Co
Comke Inc
Commercial Leasing One
Commercial Leasing Two
Commercial Net Lease Realty Inc.
Commodore Realty Inc
Concire Centers Inc
Concord Advantage Ii LP
Conseco Mortgage Capital Inc
Constellation Apartments
Cooper Smolen Joint Venture
Coralwood Shopping Center
Cordova Collection Lp
Country Club Centre LLC
CPG Finance I LLC
CPM Associates LP
Crawford Norwood Realtors Inc
Crenshaw-Singleton Properties

Crescent Investment Corp
Crest Haven LLC
Crestview Marketplace LLC
Cross County Associates LP
Crossing Of Orlando Ltd
Crowder Family Joint Venture
Crown Liquors Broward In
Crump Investments Ltd
Crystal Beach Acquistion LP
Crystal Lake At Orlando
Curry Ford LP
Cypress Run LLC
D R Plaza Ltd
Dahlem Enterprises Inc
Dairy Plaza Associates Ltd
Dalraida Proprieties Inc
Daniel G Kamin
Daniel H Case And
Dauksch Family Partnership
Davie Plaza Limited Partnership
Davis Mill Station
Day Properties LLC
DDR Downreit LLC
DDR MDT Carillon Place LLC
Debary Common Shopping Center
Decatur Realty LLC
Deerfield Company Inc
Deerfoot Marketplace LLC
Defuniak Square Partners Ltd
Del Fair Inc
Del Mar Shopping Center
Delnice Corp N.V.
Delta Interest LLC
Delta Plaza LLC
Deltona Assoc Ltd
DEM Partnership
Dept of Finance State of Alabama
Deutsche Bank f/k/a Bankers Trust
Company
Devcon Enterprises Inc
Dickinson Logan Todd & Barber
Dixon Realty Trust 1999-1
DMI Agent For IDR Jr LLR Jr &
Downtown Destin S/C
Downtown Two LLC
DPJ Company Limited
Dr Ralph Dayan
Drake Rental Account
Drinkard Development
Duckworth Morris Realty
Durham Plaza Associates
E & A Southeast LP
E and A Aquisition Two LP
East Partners Ltd
Eastdale Square LLC
Eastern Retail Holdings Lp
Eastgate Center LLC
Eastgate Investors LLC
Ebinport Assoc
EBR Partnership
Eckstein Properties LLC
Ed Street Dev Co
Eden Meadow Greens Associates
Edens & Avant Inc
Edens & Avant Properties LP
EIG Gordon Village LLC
EIG Hampton Square LLC
Elfers Square Center Inc
Eliot Properties

Elkmont Associates
Elston/Leetsdale LLC
Englewood Village LLC
English Village LLC
Equity Assoc
Equity One (Delta) Inc
Equity One (Hunters Creek)Inc
Equity One (Lantana) Inc
Equity One (Pointe Royale) Inc
Equity One (Summerlin) Inc
Equity One (West Lake) Inc
Equity One Alpha Inc
Equity One Commonwealth Inc
Equity One Inc
Equity One Monument Pointe Inc
Ernst Properties, Inc
Ervin & Susanne Bard
Euclid Warehouses, Inc.
Eugene M Mclain
Eupora Shopping Center
Eutis Mortgage Corporation
Evangeline Life Insurance Co
Excel Realty Partners LP
F R O LLC VII
Fairfield Partners LP
Fairway Food Stores
First National Bank
First Republic Corp of America
First Security Bank
First Security Bank Natl Assoc
First Union National Bank
First Union Wholesale Lockbox
First Westgate Mall LP
Flag Bank
Flagler Retail Associates Ltd
Flamingo East Ltd
Flint Crossing LLC
Florida Dickens Associates Ltd
FMV Associates
Folmar & Associates
Foothills Partnership
Fountain Columbus Assoc LLC
Four Florida Shopping Centers
Francine Trager Kempner
Francis Carrington
Frank D Boren And Gail F Boren
Frank W Guilford Jr Trustee
FRO LLC VIII
FU/WD Opa Locka, LLC
FU/WD Atlanta, LLC
Fury's Ferry Shoppes
FWI 16 LLC
FWI 20 LLC
FWI 23 LLC
FWI 5 LLC
G H I of West Palm Beach LLC
Gad & Asher Realty Ltd
Galileo Cmb T1 Hl TX LP
Galt Ocean Marketplace
Gardens Park Plaza  219
Gates Of St Johns LLC
Gator Carriage Partners Ltd
Gator Jacaranda Ltd
Gator Linton Partners Ltd
Gehr Development Florida LLC
Gem Warwick LLC
General Electric Business Asse
General Electric Capital Business
Genoa Associates LLC

Gentilly Square
George B Nalley Jr
George C Walker
George Chen
George Chen Formosa Developers
George D Zamias
George Dewrell
GLA LLC
Glenwood Midway Co LLC
Glimcher Properties Limited
Glynn Enterprises LLC
Goodings Supermarkets Inc
Gordon K Konrad
Gottlieb Family Trust Houma Ll
Graham And Company
Gray - White LLC
GRE Coralwodd LP
GRE Properties L L C
Great Oak LLC
Great South Mgmt LLC
Greenville Associates
Greenville Compress Co
Greenville Compress Co
Greenville Grocery LLC
Greenwood Commons Assoc
Greer Plaza Inc
GS II Brook Highland LLC
GS II Jacksonville Regional LL
Gulf Coast Properties
Gulfport Plaza Center Inc
H C Plunkett
H R Orlando LLC
H V McCoy & Company Inc
Haddco Properties Ltd Partners
Hall Properties
Hall Properties Inc
Halpern Enterprises
Halpern Enterprises Inc
Hamilton Square LLC
Hammerdale Inc
Hammonton Partners
Harold G  Bagwell
Harvey Lindsay Commercial Real
Hasco Properties
Hayday Inc
Haydel Realty Company Inc
Heathrow Square LLC
Helena Marketplace LLC
Henderson Corporation
Herbert Singer
Heritage Community Bank
Heritage Crossing Associates
Heritage Prop Investment Ltd
Heritage SPE LLC
Heritage Square Assoc
Herman Maisel & Co Inc
Hialeah Fee Commons Ltd
Hialeah Promenade Limited Part
Highland Associates Lp
Highland Commons Boone LLC
Highland Lakes Associates
Highland Sq Shop Center
Hildebran Associates
Hillcrest Shopping Center
Hillsboro-Lyons Investors Ltd
Hilyard Manor Associates LLP
Hobe Sound S C Company Ltd
Holbrook Heritage Hills LP
Homestead Plaza

Homewood Associates Inc
Homosassa Assoc
Houston Centre LLC
Howell Mill Vlge Shpg Ct
HPC Wade Green LLC
Hudson Square Center Inc
Hurtak Family Partnership Ltd
I Reiss & Company
I Reiss and Co as Agent For
ICOS LLC
III T West LLC Marco Island Ma
Imperial Christina Shopping Ct
Independence Square
Indian Creek Crossing E&A LLC
Indian Village Group Inc
Indianapolis Life Ins Co
Indianapolis Life Insurance Co
Indrio Crossings Inc
Inland Southeast Property Mgmt
Interchange Associates Inc
Interwest Capital Corporation
Intracoastal Mall LLC
Invesco Lp
IPF Heights Limited Partnership
IPF/Capital Limited Partnership
IRT Partners LP
IRT Partners LP Equity One Rea
IRT Property Company
Island Plaza LLC
Isram Realty & Management Inc
Ivey Electric Company
J B Levert Land Co Inc
Jack Fiorella Iii
Jamerson Investments
James And Carolyn Sell
JDN Realty Corporation
Jefferson-Pilot Life
JEM Investments Ltd
Jerome H And Faith Pearlman Tr
JKA Enterprises LLC
JNB Company of Virginia LLC
John Benetti Associates
John C Eyster and E Lee Barran
John T Henley et al
JRT Realty Group - TIAA
Jula Trust
Jupiter Palm Assoc
JWV (La) LLC dba Sunshine Sq
K B Properties Inc
Keller Crossing Texas Lp
Kemor Properties Inc
Kenneth City Partners
Kerbby Partnership
Killen Marteplace LLC
Kimco Development Corp
Kimco University Co Inc
Kingfisher Inc
Kir Augusta 1 044 LLC
Kir Colerain 017 LLC
Kirk Meraux Winn-Dixie LLC
Kite Eagle Creek LLC
KJump Inc
Kmart Corporation
Knightdale Crossing LLC
Koger Equity
Kotis Properties
KPT Communities LLC
KRG Waterford Lakes LLC
L J Melody & Company

L O L LLC
L W Smith Jr Trust
La Petite Roche Center General
Lafayette Life Insurance Co
Lagrange Marketplace LLC
Lake Jackson Tradng Post
Lake Mary Limited Partnership
Lake Sun Properties LLC
Lakeland Partners
Lakewood Associates Ltd
Lancaster Community Investors
Land Dade Inc
Landing Station
Landmark Enterprises
Landsouth Partners
Langdale Tire Co
Langston Place
Lapalco Village Shop Cen
Laramie River Bay Limited Part
Larissa Lake June Limited Ptnr
Lasala Pinebrook Associates LP
Lasco Realty LLC
Lauderhill Mall
Laureate Capital
Lawrence M Heard
Leatherman Assoc
Leesburg Bansal LLC
Lehmberg Crossing LLC
Leonard R Setzer
LF Limited Lp & Walnut Street
Libby Cross Station Enterprise
LIF Realty Trust
Life Insurance Co Of George
Lincoln Square Partners LP
Lincoln Trust Company
Linpro Investments Inc
Lisette Stanish as Trustee
Litchfield Investments Riverwo
LN Piedmont Village LLC
Lockwood Assoc of GA Ltd Ptr
London Associates Ltd
LPI Key West Associates Ltd
LRS General Partnership
Lucy Company Of South Carolina
LW Jog S C Ltd
M & P Shopping Center
Macon Gravlee
Madison Mall Shopping Ctr Inc
Madison Station Properties LLC
Magnolia Park Shopping Center
Main Street Marketplace LLC
Manatee Village Investments Inc.
Mandarin Loretto Development
Mar Bay Investments LLC
Marions Hope LLC
Market Place Partners
Market Square Inc
Marketown Investors Inc
Marketplace of Americus LLC
Marketplace of Delray Ltd
Marketplace Shopping Center
Mason Shopping Center Partnership
McComb Associates
McDonough Marketplace Partners
McDuffie Square L P
McNab Plaza Inc
MCW Development Inc
MCW RC FL Highlands LLC
MDC South Wind Ltd

MDC Westgate Ltd
Melbourne Beach LLC
Mellon Trust Of California
Merchants Square Investments L
Meridian Supermarket LLC
Metro International Property
Miami Gardens Acquisition LLC
Michael & Irene Simon
Mid American Management Corp
Mid South Yazoo Lp
Midland Loan Services
Midland Loan Services Inc
Midwest Centers
Milford Station Ltd
Miller Group Properties Corp
Miramar Parkway Plaza LLC
Mitchell Co
Mitchell Mortgage Company LLC
Modern Woodman
Modern Woodmen Of America
Mohatra Inc
Monroeville Center Partners
Moorings of Manatee Inc
Morgran Co
Morris Track Corp & Williston
Morro Palms Shopping Center
Moulton Properties
Mount Castle Properties
Mr E M Arnovitz & Mr M Plasker
Mr Hugh M Tarbutton
Mr Malcolm Rosenberg
Mrs Mildred V Gray
Mt Dora Marketplace Ltd
Museum Associates
N K C Properties
N O M Properties Inc
Nalley Construction Co Inc
Naples South Realty Associates
Naranja Lakes Joint Ventures
National Western Insurance Co
National Western Life Insurance
Navarre Square
NB/85 Associates Wayne M Ruben
NDC Asset Management
New Bay Minette LLC
New England Realty Resources
New Plan Excel Realty Trust
New Plan Excel Realty Trust In
New Plan Realty Trust
Newberry Square Shopping Center
Newton Associates
NMB Partners L P
Noble Management Company
Normandy Equities Ltd
North & South Station
North Columbus Crossing Shoppi
North Hixson Marketplace LLC
North Madison Associates Ltd
North Port Village Shopping
Northcross Land & Development
Northeast Plaza Associates
Northern Funds FBO Urbanek Inv
Northside Development Group
Northside Shopping Center
Northway Investments LLC
Northwest Junction Partners
Northwood Oaks LLC Providence
Northwood Plaza LLC
Oakdale Investors Lp

Oaks Shopping Center Inc
Oakwood Village Associates
O'Brien Kiernan Investment Co
Oceanway Plaza Assoc Ltd
Old 97 Inc
Old Kings Highway Assoc
Opal Lee Smith & Sara N Jordan
Orange Grove Shopping Ce
Orix Capital Markets LLC
Orix Real Estate Capital Marke
Orlando Marketplace Limited Pa
PAJ
Palisades Investors LLC
Palm Aire Marketplace LL
Palm Bay West
Palm Beach 2000 Inc
Palm Coast Corners Assoc Lp
Palm Trails Plaza
Palmetto Place Center LLC
Paradise Isle LLC
Park Plaza LLC
Park Plaza Shopping Ctr LLC
Parkland Partnership Lp
Parkview Square Owner Corp
Parkwood Plaza Shopping Center
Parkwood Village Joint Venture
Pass Christian Village
Patricia Or Marshall Weigel
Patton Plaza LLC
Paw Creek Crossing
Peach Orchard Center
Peachtree Parkway Plaza
Pearl Brittain Inc
Pelican Associates
Pell City Marketplace Partners
Peninsula Utilities Inc
Penman Plaza Associates Ltd
Peregine Properties LP
Perimeter Place Associates
Peripety Group Inc c/o Comm P
Phoenix Jr Inc
Pinar Assoc Sc Co Ltd
Pine Island Shopping Center
Pine Plaza
Pinel LP
Pineroots LLC
Pines/Carter
Pinetree Partners Ltd
Pinewood Plaza Associates
Pinson Valley Ltd
Plaza West 15190117351
Pmt Partners V LLC
Pnc Bank Philadelphia
Ponce Realty Company
Ponderosa Center Inc
Popps Ferry Ms Dev
Potter Square Associates
PRB Investments LLC
Premier Plaza Associates LLC
Prestonburg Village Shop Cente
Primax Properties LLC
Prime Shoppes Partners
Primo Justice Properties LLC
Principal Capital Management L
Principal Life Insurance Co
Procacci Commerical Realty Inc
Professional Mortgage Co Inc
Promenades Mall (E&A), LLC
Promventure Limited Partnership

PSI of Louisiana Inc
PSMA Ltd AP FHA FP FLA TIC
Quail Roost Associates
Quail Run Village
Quincy Associates Ltd
R & G Associates
R P Barren River LLC
Rab Land & Development Inc
Rainbow Marketplace LLC
Rainbow Springs Ventures Lc
Ralph Meitin Family
Ramco USA Development Inc
Randall Benderson 1993-1 Trust
Randy Roark
Rappaport Management Co
Rayne Plaza Shopping Center
Red Oak Shopping Center LLC
Reef Associates Ltd
Regency Centers Inc
Regency Saving Bank FSB
Regent Investment Corporation
Retail Center Hampton LLC
Retail Management Group Inc
Retreat Village Management Co
Rial Corporation
Richard Ball & Associates
Ridgeview Inc
Riley Place LLC
River Oaks
Riverwalk Plaza Joint Venture
RK Associates
Robert D Powers
Robert G  Horsman
Robert H Palmer Jr
Robert N Rizika
Robertsdale Dev LLC
Rockbridge Place
Roebuck Ventures Ltd
Ronald Benderson 1995 Trust
Rosemyr Corp
Roxborough Associates LLC
Royal & Son
Royal Companies
Royal Homes Inc
Royal Oaks Brandon Partners
Royal Oaks Plaza Inc
Royals O K Lunch Inc
RSSC LLC
Rudco Properties Inc
Rushmore Friendship LLC
Ruth Guest House Inc
Ruth S Smith Snodgrass Aires
S & C Properties
Salem Crossing Shopping Center
Salemo Village Shopping Center
Sam Development Associates LLC
Samuel Oschin Trustee Michael
Sandefur Investments Inc
Sandifer Partnership Ltd
Sandra Mackey
Sarria Enterprises Inc
Sarria Holdings II Inc
Sarria Holdings Inc
Satterfield Plaza T I C
Saufley Field Partners Ltd
Savitar A/M/A SRA/American LLC
Sawicki Realty Co
SCG Management Inc
Schilleci Millbrook SC LLC

School St Crossing LP
Schwartz Family Trust
Scotland Mall Inc
SCP Winter Garden Fl LLC
Scribe Riviera JV
Sea Pea Inc
Sebring Square Ltd
Selig Enterprises Inc
Sendero Commercial Investments
Seven  Springs Plaza LLC
Shades Creek Partners
Shadrall Associates
Shannon Village Shopping Cente
Shepherdsville Mall Assoc Lp
Sherffield Estates Inc
Sheri Trager Weiss
Shields Plaza
Shoals Marketplace LLC
Shoppes @ 104
Shoppes At 18th & Commercial
Shoppes At Lake Avenue Inc
Shoppes Of Liberty Cit LLC
Sidney Kohl Company
Sidney Lefcourt
Simmons & Harris Inc
Situs Servicing Inc
Sizeler Companies
SJS-Woodlake Plaza LP
Skinners Of Jacksonville Inc
SKS Properties LC
Small Properties
Smith Barney Fbo Weinacker's
Snellville Plaza Ltd
Sormi Inc
South Broadway Corp
South Monroe Commons LLC
South Plaza Associates LLC
South Rockdale Shopping Center
South Square Marketplace
South Win Limited Partnership
Southbrook Partners LLC
Southchase Investors LLC
Southeast US Retail Fund LP
Southern Boulevard Corp
Southern Farm Bureau
Southern Farm Bureau Life Ins
Southern Partners
Southern Stores II LLC
Southgate Associates II LP
Southgate Plaza 93 Ltd
Southgate Plaza Associates LLC
Southmark Properties LLC
Southtrust Bank
Southview Square LLC
SPCP Group LLC
Spectrum Walker
Spectrum/Grandview Pines
Spiller Investment Inc
Spishores LLC
Spring Hill Assoc Ltd
Spring Plaza Limited Prtnrshp
Springdale Station Ltd
Springfield Crossing LLC
Springhill Associates LLC
Springland Associates LLC
Springs Corners LLC
SR JLP JAP LLC
SR TCS LLC
SRT Acquistion Corporation

SSKIB Corporation
St Charles Partners
St Johns Commons Owner Corp
St. Stephens Partners
Staunton Plaza Associate
Stiles West Associates Ltd
Stockman & Nalley Partnership
Stonebridge Village
Structured Product Servicing
STW Holdings LLC
Sugarland Shopping Center
Sulphur Springs Partners LLLP
Sumter Crossing Properties Inc
Sun Lake Plaza Inc
Sun West NC III Ptn Lim
Sunburst Properties Corp
Sunset Centres Ltd
Sunset Centres Ltd Partnership
Sunset Station Partners LLC
Sunset West Shopping Plaza
Sunwest NC III Partnerships
Suwanee County Investors LLC
Swiss Re Investors Inc
T K Harris Comm Re Ser
T S Margate Co Ltd
TA/Western LLC (Pom. Mktplce)
Talladega Community Builders
Tappen Properties LP
Tatone Properties Fla Inc
Tavares Assoc Ltd
Taylor Square Venture
Teachers Retirement System
Ted Glasrud Associates Inc
Terra Nova The Realty Assoc Fu
THC LLC
The Market at Byram LLC
The Marketplace LLC
The Schreiber Co Belleview Ass
The Sembler Company
Tifton Mall Inc
Timberlake Station LLC
TL Nguyen LLC
Toulouse Village Associates
Tower Associates Ltd
Town & Country Shopping Center
Town Square Development
Town'n Country Realty
Trail Plaza
Triangle IV LLLP
Tri-State Commercial Asc
TRL Properties LLC
Troy Marketplace LLC
Trustee Of Trust B
Trustees Of Trust A/C -1
Trustmark National Bank
TS Pierce Sc Co Ltd
TSO Volusia LLC
Tunica Village Partnership
Twelth Street & Washington
Tyrone Gardens LLC
U P SC Ltd
Ullmann Company
United Commercial Mortgage Cor
United Investors Realty
University Crossing
University Tenancy In Common
UrbanAmerica
US Bank Trust Na Corp Trust TF
USPG Portfolio Two LLC

USRP I LLC Glen Lea Shopping C
USRP I LLC Shoppes Of Kildaire
Vachlia Inc
Valrico Square
Venetia Village Center
Ventures LLC
Victoria Square Partners LLC
Victory Berryland LLC
Victory Investments Inc
Victory Kenner LLC
Vigouroux Development LLC
Villa Rica Retail Properties L
Village Marketplace Of
Village Plaza Inc
Village Royale Properties LLC
Vogel & Vogel Partnership
W D Route 3 Limited
W T H II LLC
Wachovia Securities
Walker LA Commercial
Watch Omega Holdings Lp
Waters & Armenia Plaza
Waters Inc S C Mgmt Trust Acct
Watkins Investment
Wayne Ruben
Waynesville Shopping
WBFV Inc
WCL Five LLC
WD Development LLC
WD Jacksonville Fl LLC
WD Marianna Portfolio LP
WD Milton Portfolio L P
W-D Shelby Partnership
Weavers Corner Jt Venture
Webb/Lexington Ventures #108
Webber Commercial Properties L
Weeki Wachee Village Shop Cntr
Weingarten Realty Investors
Wesley Chapel Sc Co Ltd
West Eck Partners LP
West Napoleon Joint Venture
Westfork Plaza
Westgate LLC
Westland Shopping Center LP
Weston Road Shopping Center LL
Westside City Inc
Westwood Shopping Center
WIAB Properties LLC Operating
Wiedemann Square Ltd
Wiedmann Square LLC
Wiggs Realty Co
William H Hall
Willowood Partners Ltd
Winbrook Management Inc
Windsor Place
Windsor Station LC
Windward Partners IV LP
Winyah Village Shopping Ctr
Wiregrass Plaza LLC
Wolfchase Assoc LLC North Palm
Woodberry Plaza E&A LLC
Woodland Village Partnership
WRI/Texla LLC
Xarla Realty LLC
YBD Three Lakes LC
ZSF/WD Bartow, LLC
ZSF/WD Charlotte, LLC
ZSF/WD Clayton, LLC
ZSF/WD Fitzgerald, LLC

ZSF/WD Greenville, LLC
ZSF/WD Hammond, LLC
ZSF/WD High Point, LLC
ZSF/WD Jacksonville, LLC
ZSF/WD Montgomery-31, LLC
ZSF/WD Montgomery-Gunter, LLC
ZSF/WD Opa Locka, LLC
ZSF/WD Orlando, LLC
ZSF/WD Sarasota, LLC
Zuppardo Properties LLC
Zuppardo Real Estate Co
Zurich Structured Finance, Inc.

**Insurance Companies**
ACE American Insurance Co.
ACE Bermuda Insurance, Ltd.
ACE (Illinois Union)
AIG Aviation, Inc.
American Casualty Company of Reading PA
American Guarantee Liability (Zurich)
Arch Insurance Co.
AWAC - Side A DIC (Bermuda)
AWAC (Bermuda)
AXIS (Bermuda)
Axis Surplus Insurance Co.
AXIS US
CNA
Commonwealth Ins. Co.
Employers Ins. Co. of Wausau
Federal Insurance Co.
Great American Assurance Company
Hanseatic Ins. Co. (Bermuda)
Houston Casualty Company
Illinois National Insurance Co.
Illinois Union Ins. Co.
Lexington Insurance Co.
Liberty Ins. Underwriters, Inc.
Liberty Mutual
Liberty Mutual Insurance Company
Liberty Mutual Insurance Europe Ltd.
Lloyd's of London
Magna Carta Insurance Ltd.
Max Re - Side-A DIC (Bermuda)
Max Re (Bermuda)
Max Re (Bermuda) Ltd.
National Union
National Union Fire Insurance Co.
National Union Fire Insurance Co.
Pittsburgh, PA
Quanta Specialty Lines Insurance Company
RLI Insurance Co.
SR Int'l Business Ins. Co. Ltd.
St. Paul Re (Bermuda) Ltd.
St. Paul Fire & Marine Ins. Co.
St. Paul Mercury Insurance Co.
Starr Excess (Bermuda)
Starr Excess Liability Ins. Int'l Ltd. (Bermuda)
Starr Excess Liability Insurance International Ltd. (Ireland)
Travelers Indemnity Co. of Illinois
Twin City Fire Insurance Company
WIN General Ins., Inc.
XL Insurance America, Inc.
XL Insurance Ltd. (Bermuda)
XL Specialty Insurance Company
Zurich
Zurich American Ins. Co.

**Publicly Identified Shareholders**
Brandes Investment Partners L.P.
Brandes Investment Partners, Inc.
Brandes Worldwide Holdings, L.P.
Charles H. Brandes
Jeffrey A. Busby
Glenn R. Carlson
A. Dano Davis
Robert D. Davis
T. Wayne Davis
Davis Family Special Trust 2004
Davis Family Irrevocable Term Trust
DAVFAM Ltd.
DAVFAM II, Ltd.
D.D.I., Inc.
Scott A. Oko, Trustee, Davis Family Special Trust 2004
SIVAD Investors, LLC
SIVAD Investors II, LLC
Charles P. Stephens

**Accountants**
KPMG LLP

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                  :
                                       :      **Chapter 11**
                                       :
**WINN-DIXIE STORES, INC., et al.,**   :      **Case No. 05-11063**
                                       :
          **Debtors.**                 :      **(Jointly Administered)**
                                       :
-----------------------------------------------------------------x

### INTERIM ORDER AUTHORIZING DEBTORS
### TO EMPLOY XROADS SOLUTIONS GROUP, LLC AS
### FINANCIAL AND OPERATIONS RESTRUCTURING CONSULTANTS

   Upon the application dated February 21, 2005 (the "Application") of Winn-Dixie

Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order pursuant to Section

327(a) of the Bankruptcy Code for authority to employ XRoads Solutions Group, LLC

("XRoads") as financial and operations restructuring consultants, all as more fully set forth in the

Application; and upon consideration of the declaration of Dennis I. Simon (the "Simon"

Declaration"); and upon consideration of the Declaration of Bennett L. Nussbaum pursuant to

Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and

Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to

consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334

and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for

the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration

of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Application having been provided to (i) the Office of the United

States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders,

(iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and the relief requested in the Application being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted on an interim basis until such time as the Court conducts a final hearing on this matter (the "Final Hearing Date"); and it is further

ORDERED that the Final Hearing Date shall be _____, 2005, at _____ _.m.; and it is further

ORDERED that any objection to the relief requested by the Application on a final basis must be filed with the Court and be served upon (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (ii) D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; (iii) Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia  30303; and (iv) Dennis I. Simon, XRoads Solutions Group, LLC, 400 Madison Avenue, Third Floor, New York, New York 10017, so as to be received by _____, 2005 at 5:00 p.m.; and it is further

ORDERED that the Debtors are authorized to retain XRoads as their financial and operations restructuring consultants, pursuant to Section 327(a) of the Bankruptcy Code, as of February 21, 2005 (the "Petition Date") on the terms set forth in the Application, the Agreement (as defined in the Application), and the Simon Declaration; and it is further

ORDERED that if any supplemental declarations are filed and served after the entry of this Order, absent any objections filed within twenty (20) days after the filing and service of such supplemental declarations, XRoads's employment shall continue as authorized pursuant to this Order; and it is further

ORDERED that XRoads shall be compensated upon appropriate application in accordance with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, and orders of this Court; and it is further

ORDERED that XRoads shall contemporaneously maintain time entries in half-hour increments for each individual working on the engagement; and it is further

ORDERED that XRoads is authorized to apply the retainer received from the Debtors to pay any fees, charges, costs, or expenses relating to services rendered to the Debtors prior to the Petition Date that remain unpaid and to hold any remaining portion of the retainer for application to allowed amounts owed pursuant to XRoads's final application in these cases; provided, however, that XRoads shall hold the retainer as funds clearly designated for the account of the Debtors; and provided, further, however, that any party in interest may at any time challenge the use and application of the retainer by XRoads; and it is further

ORDERED that within five (5) days of the entry of this Order, the Debtors shall serve a copy of this Order on the Office of the United States Trustee, counsel for the Debtors' pre-petition secured lenders, the indenture trustee for the Debtors' senior note holders, counsel to the Agent for the Debtors' proposed debtor-in-possession lenders, the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, and any counsel or party that has filed a notice of appearance or request for notice within such time; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Application is hereby waived.

Dated:  February ___, 2005
   New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                              :
                                                   :        **Chapter 11**
                                                   :
**WINN-DIXIE STORES, INC., et al.,**               :        **Case No. 05-11063**
                                                   :
          **Debtors.**                             :        **(Jointly Administered)**
                                                   :
----------------------------------------------------------------x

## FINAL ORDER AUTHORIZING DEBTORS
## TO EMPLOY XROADS SOLUTIONS GROUP, LLC AS
## <u>FINANCIAL AND OPERATIONS RESTRUCTURING CONSULTANTS</u>

Upon the application dated February 21, 2005 (the "Application") of Winn-Dixie

Stores, Inc. and its debtor affiliates (collectively, the "Debtors") for an order pursuant to Section

327(a) of the Bankruptcy Code for authority to employ XRoads Solutions Group, LLC

("XRoads") as financial and operations restructuring consultants, all as more fully set forth in the

Application; and upon consideration of the declaration of Dennis I. Simon (the "Simon

Declaration"); and upon consideration of the Declaration of Bennett L. Nussbaum pursuant to

Local Bankruptcy Rule 1007-2 (the "Local Rules") in Support of First-Day Motions and

Applications sworn to on the 21st day of February, 2005; and the Court having jurisdiction to

consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334

and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for

the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration

of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Application having been provided to (i) the Office of the United

States Trustee, (ii) counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders,

(iii) the indenture trustee for the Debtors' noteholders, and (iv) the Debtors' fifty (50) largest unsecured creditors, and no other or further notice being required; and the relief requested in the Application being in the best interests of the Debtors, their estates, and creditors; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted; and it is further

ORDERED that the Debtors are authorized to retain XRoads as their financial and operations restructuring consultants, pursuant to Section 327(a) of the Bankruptcy Code, as of February 21, 2005 (the "Petition Date") on the terms set forth in the Application, the Agreement (as defined in the Application), and the Simon Declaration; and it is further

ORDERED that if any supplemental declarations are filed and served after the entry of this Order, absent any objections filed within twenty (20) days after the filing and service of such supplemental declarations, XRoads's employment shall continue as authorized pursuant to this Order; and it is further

ORDERED that XRoads shall be compensated upon appropriate application in accordance with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, and orders of this Court; and it is further

ORDERED that XRoads shall contemporaneously maintain time entries in half-hour increments for each individual working on the engagement; and it is further

ORDERED that XRoads is authorized to apply the retainer received from the Debtors to pay any fees, charges, costs, or expenses relating to services rendered to the Debtors

prior to the Petition Date that remain unpaid and to hold any remaining portion of the retainer for application to allowed amounts owed pursuant to XRoads's final application in these cases; provided, however, that XRoads shall hold the retainer as funds clearly designated for the account of the Debtors; and provided, further, however, that any party in interest may at any time challenge the use and application of the retainer by XRoads; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Application is hereby waived.

Dated: _____ ___, 2005
         New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE