## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 3:05-bk-03817-JAF |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | **Time Requested: 1 Hour** |
| | ) | |

## JEA'S RENEWED MOTION FOR ADDITIONAL
## ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES

JEA, a utility, renews its request for the entry of an order requiring the debtors to provide JEA with a postpetition security deposit as additional adequate of future payment, and in support of the motion states:

1.      These consolidated Chapter 11 cases were commenced on February 21, 2005 (the "Petition Date").

2.      The debtors, Winn-Dixie Stores, Inc. and its debtor affiliates (collectively, "Winn-Dixie"), own and operate a chain of retail grocery stores located throughout the Southeast, includung Jacksonville, Florida.

3.      JEA, which is formerly known as the Jacksonville Electric Authority, is the local utility provider for Northeast Florida. Winn-Dixie maintains approximately 40 electric service accounts with JEA which consumed, on average, $650,000 per month in utility services prepetition. Winn-Dixie's average monthly utility bills with JEA have increased postpetition primarily as a result of two recent rate increases. Winn-Dixie's utility bills with JEA now average over $700,000 per month.

4.      Pursuant to 11 U.S.C. § 366(b), a debtor in possession is required to furnish each utility providing services to the debtor with adequate assurance of future payment. Such assurance is to be provided within 20 days of the petition date to avoid an interruption in service and typically involves the posting of a bond or similar security.

5.      On the Petition Date, Winn-Dixie filed a motion (Docket No. 23) requesting a determination that Winn-Dixie's utility providers will be adequately assured of future payment through the granting of an administrative expense priority for any unpaid postpetition invoices. The motion, and the order conditionally approving same (Docket No. 360), permitted affected utilities to object to the proposed form of adequate assurance and to request a hearing on the adequacy of the proposed security. JEA filed such an objection (Docket No. 229) and also requested a postpetition deposit in addition to the treatment being proposed by the debtors. A hearing on JEA's objection was held May 19, 2005.

6.      At the May 19th hearing, JEA presented evidence that Winn-Dixie had suffered losses of over $566 million in the 40 weeks ending April 6, 2005, and that Winn-Dixie was continuing to suffer losses postpetition. The evidence of postpetition losses included Winn-Dixie's monthly operating statements for the period April 7, 2005 to May 4, 2005 which showed that Winn-Dixie sustained operating losses of over $44 million in the preceding four weeks (JEA Ex. 7). Michael Byrum, Winn-Dixie's Chief Accounting Officer, testified however that the debtors had nearly $424 million in credit available under a postpetition credit facility with Wachovia Bank (the "Wachovia DIP Facility") and that he expected Winn-Dixie to "break even" financially by the end of July, 2005 (T 32 ).[1] Based

_____

[1] Referring to the May 19th hearing transcript.

on Mr. Byrums' testimony, and the fact that JEA had not requested a prepetition security deposit, the Court overruled JEA's objection and denied its request for a postpetition security deposit (Docket No. 1546).

7.      The landscape of this reorganization has changed dramatically since the May19, 2005 hearing.  Contrary to Mr. Byrums' testimony, Winn-Dixie has not turned the corner financially and continues to lose money at an astonishing rate.  According to the most recent operating statement, Winn-Dixie suffered losses of over $164 million for the 4 week period ending August 24, 2005.  Shareholder equity had fallen from a positive $298 million in May to a negative $117 million by August 25, 2005.  Winn-Dixie's borrowing capacity under the Wachovia DIP Facility has also fallen from the $424 million available in May of 2005 to less than $240 million in August of 2004.  Current financial information is not available since Winn-Dixie is unexplainedly delinquent in the filing of its monthly operating reports, but a comparison of the May and August financial reports suggests that Winn-Dixie has lost over $381 million in value since the cases were filed.

8.      As a utility provider, JEA is inherently at risk in the Chapter 11 case since it is statutorily compelled by § 366 to continue providing post-petition service to Winn-Dixie on an around-the-clock basis. Its invoices are payable only after services have been delivered and irreversibly consumed by Winn-Dixie. No creditors in this bankruptcy case, other than utilities, are required to take such a risk.

9.      JEA's practice is to read the service meters of Winn-Dixie on a monthly basis. On the date that a meter is read, JEA has already delivered approximately 30 days of electric service for which no payment bas been received (Day 30).  As a general rule, approximately

two days after a meter is read, JEA issues a bill to the Winn-Dixie (Day 32). Payment of the bill is due upon receipt, but is not delinquent until 20 days after receipt (Day 52). Additional time invariably passes between the customer's account becoming delinquent and the date upon which electric service is actually terminated. Therefore, JEA customarily provides businesses such as Winn-Dixie with approximately 73 days of utility service at a particular location before it can and does terminate electric service.

10.    The grant of a mere administrative expense priority in this case is not enough to protect JEA for the 73 days' exposure it faces in this case.  According to Winn-Dixie's financial statements, the company already has a negative net worth.  The company appears to be losing somewhere around $45 million per month.  JEA's administrative expense claim is presently subordinate to Wachovia's blanket lien on Winn-Dixie's assets and to a superpriority administrative expense priority in each of the Chapter 11 cases for any unpaid advances under the Wachovia DIP Facility.  There is no guarantee that Wachovia or any of the debtors' other lenders will "step up to the plate" in the event of Winn-Dixie's default, particularly if the remaining stores are sold for less than the outstanding secured indebtedness.

11.    In this case, a cash deposit of $1,300,000 is necessary to provide adequate assurance of future payment to JEA.  This deposit is equal to approximately two times the average monthly billings by JEA to Winn-Dixie and is in an amount that is consistent with the anticipated water and electricity consumption by Winn-Dixie and the minimum period of time that Winn-Dixie could continue to receive electricity and water from JEA before service could be terminated for non-payment of postpetition bills.

12.     The deposit requested by JEA is for the amount JEA would require from other customers with questionable or unknown credit and it is within the range approved by case law. *See Matter of Houdashell*, 7 B.R. 901, 903 (Bankr. W.D. Mo. 1981) (approving deposit equal to twice customer's highest monthly electric and natural gas service bill); *In re Stagecoach Enterprises, Inc.*, 1 B.R. 732 (Bankr. M.D. Fla. 1979) (approving deposit equal to amount charged for two natural gas utility billing periods). *See also, Lloyd v. Champaign Telephone Co.*, 52 B.R. 653, 656-57 (Bankr. S.D. Ohio 1985) (approving deposit equal to 2.3 times average monthly telephone billing); *In re Smith, Richardson & Conroy*, 50 B.R. 5, 5-6 (Bankr. S.D. Fla. 1985) (approving deposit equal to three months' approximated electric usage). The fact that JEA did not request a prepetition retainer is irrelevant given Winn-Dixie's current financial condition.

13.     On the Petition Date, JEA was owed $606,537.84 for utility services provided to Winn-Dixie in the month preceding the bankruptcy filing. The Winn-Dixie claim is already the largest write-off in JEA's history. Unless Winn-Dixie provides JEA with a postpetition security deposit to protect it for the approximate 73 days it is at risk, JEA stands to lose an additional $1,300,000. The risk of nonpayment falls disproportionately hard on JEA. This balance of potential harm can be eliminated by the posting of a deposit as requested herein.

**WHEREFORE,** JEA respectfully requests that the Court enter an order: (a) compelling Winn-Dixie to provide to JEA a postpetition security deposit in the amount of $1,300,000 as adequate assurance of payment under 11 U.S.C. § 366; and (b) granting to JEA such further relief as this Court deems appropriate.

**STUTSMAN & THAMES, P.A.**

By
Richard R. Thames

Florida Bar Number 0718459
121 W. Forsyth Street, Suite 600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)
E-mail: rrthames@stutsman-thames.com

Attorneys for JEA

-6-

## Certificate of Service

I certify that, on November _/4_, 2005, a copy of the foregoing was furnished electronically and by mail to: **Stephen D. Busey, Esq.**, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202, sbusey@smithhulsey.com; **D.J. Baker, Esq.**, Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square, New York, New York 10036, djbaker@skadden.com; **John B. Macdonald, Esq.**, Akerman, Senterfitt & Eidson, P.A., 50 North Laura Street, Suite 2500, Jacksonville, Florida 32202, john.macdonald@akerman.com; **Elana L. Escamilla, Esq.**, Assistant United States Trustee, 135 West Central Boulevard, Room 620, Orlando, Florida 32801, elana.l.escamilla@usdoj.gov; **Cynthia C. Jackson, Esq.**, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202, cjackson@smithhulsey.com; **Adam Ravin, Esq.**, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, aravin@skadden.com; **Patrick P. Patangan, Esq.**, Akerman, Senterfitt & Eidson, P.A., 50 North Laura Street, Suite 2500, Jacksonville, Florida 32202, patrick.patangan@akerman.com; **Dennis F. Dunne, Esq.**, Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Plaza, New York, New York 10005, ddunne@milbank.com; and by mail to **David Jennis Esq.**, Jennis & Bowen, P.L., 400 North Ashley Drive, Suite 2540, Tampa, Florida 33602, and to **Karol K. Denniston, Esq.**, Paul, Hastings, Janofsky & Walker, LLP, 600 Peachtree Street, Suite 2400, Atlanta, Georgia 30308.

                                                    _____
57662                                                        Attorney