**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**SUMMARY OF SECOND INTERIM APPLICATION**
**FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**
**(SMITH HULSEY & BUSEY)**

1. Name of Applicant:  **Smith Hulsey & Busey**

2. Role of Applicant:  **Co-Counsel to the Debtors**

3. Date Case Filed: **February 21, 2005**

5. Date of Application for Employment:  **April 18, 2005**

6. Date of Order Approving Employment:  **April 20, 2005**

7. Date of this Application:  **November 15, 2005**

8. Dates Covered by Application:  **May 1, 2005 through September 30, 2005**

    **FEES**

9. Total Fees Requested for Application Period               $1,428,768.50

10. Balance Remaining in Fee Retainer Account, Not Yet Received            N/A

11. Fees Paid or Advanced for this Period                    $ 659,069.60

12. **NET AMOUNT OF FEES**
    **REQUESTED FOR THIS PERIOD**                          **$ 769, 698.90**

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**EXPENSES**

| | | |
|---|---|---:|
| 13. | Total Expense Reimbursement Requested for Application Period | $ 59,029.21 |
| 14. | Balance Remaining in Expense Retainer Account, Not Yet Received | N/A |
| 15. | Expenses Paid or Advanced for this Period | $ 29,796.18 |
| **16.** | **NET AMOUNT OF EXPENSE REIMBURSEMENT REQUESTED FOR THIS PERIOD** | **$  29,233.03** |
| **17.** | **TOTAL AWARD REQUESTED BY THIS APPLICATION** | **$1,487,797.71** |

**HISTORY OF FEES AND EXPENSES**

| | | |
|---|---|---:|
| 1. | Dates, sources, and amounts of retainers received: | N/A |
| 2. | Dates, sources and amounts of third-party payments received: | N/A |
| 3. | Prior fee and expense awards: | $ 128,262.50 |

**First Interim Application for Compensation and Reimbursement of Expenses**

| | |
|---|---:|
| Dates covered by First Interim Application: | March 28, 2005 through May 31, 2005 |
| Amount of fees requested: | $ 124, 944.50 |
| Amount of expenses requested: | 3,318.02 |
| Amounts of fees awarded: | 124,944.50 |
| Amount of expenses awarded: | 3,318.02 |
| Amount of fee retainer authorized to be used: | N/A |
| Amount of expense retainer authorized to be used: | N/A |
| Fee award, net of retainer: | 124,944.50 |
| Expense award, net of retainer: | 3,318.02 |
| Date of First Interim Application award: | August 4, 2005 |
| Amount of fees actually paid: | 124,944.50 |
| Amount of expenses actually paid: | 3,318.02 |
| Portion of fees requested but not awarded: | 0 |
| Portion of expenses requested but not awarded: | 0 |

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

**SECOND INTERIM APPLICATION OF SMITH HULSEY & BUSEY
FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF COSTS ADVANCED
(May 1, 2005 through September 30, 2005)**

Pursuant to Section 331 of the Bankruptcy Code (the "Code"), Smith Hulsey & Busey applies for entry of an order allowing interim compensation to the firm for services rendered and costs advanced as bankruptcy co-counsel for Winn-Dixie Stores, Inc. and its subsidiaries and affiliates (collectively, the "Debtors"). By this application, Smith Hulsey is seeking interim compensation for the period from May 1, 2005 through September 30, 2005, for services rendered during the period in the amount of $1,428,768.50 and reimbursement for costs advanced in the amount of $59,029.21.

**Legal Services Rendered by Smith Hulsey & Busey**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

2. On April 20, 2005, the Court authorized the Debtors to retain Smith Hulsey as co-counsel in this case *nunc pro tunc* to March 28, 2005.

3.In accordance with Final Order Approving Interim Compensation Procedures for Professionals entered by the New York Court on March 15, 2005 (Docket No. 434) (the "Fee Order"), Smith Hulsey has been paid $ 688,865.78 by the Debtors, which represents 80% of the fees ($ 659,069.60) and 100% of the costs ($ 29,796.18) actually incurred by Smith Hulsey for the period of May 1 through July 31, 2005. The total amount of fees sought by this application include $164,767.40 (representing the holdback for May through July) and $634,164.53 representing all fees and costs for August and September).

4.Smith Hulsey seeks allowance of fees for services provided to the Debtors during this period in the following areas of its representation:

| Areas of Representation | Total Fees | Total Hours |
|---|---|---|
| Asset Disposition | $ 477,756.00 | 2108.70 |
| Automatic Stay (Relief Actions) | 208,410.00 | 754.4 |
| Business Operations/Strategic Planning | 12,381.50 | 35.7 |
| Case Administration | 90,083.00 | 511.6 |
| Claim Admin. (General) | 133,917.00 | 460.80 |
| Claims Litigation | 390.50 | 1.1 |
| Claims Admin. (Reclamation/Trust Funds) | 51,446.50 | 215.8 |
| Claims Admin. (PACA) | 16,490.00 | 65.1 |
| Creditor Meetings/Statutory Committees | 43,845.00 | 129.3 |
| Disclosure Statement/Plan Issues | 1,067.00 | 4.6 |
| Employee Matters (General) | 24,190.50 | 76.8 |
| Environmental Matters | 12,069.00 | 36.3 |
| Executory Contracts | 53,184.50 | 210.0 |
| Financing | 2,756.50 | 9.2 |

| | | |
|---|---:|---:|
| General Corporate Advice | 5,857.00 | 17.4 |
| Insurance | 4,328.50 | 15.1 |
| Leases (Real Property) | 116,488.00 | 519.1 |
| Litigation (General) | 54,919.50 | 188.4 |
| Regulatory and SEC Matters | 1,449.50 | 3.7 |
| Reports and Schedules | 1,098.00 | 7.4 |
| Reorganization Plan/Plan Sponsors | 10,107.00 | 32.20 |
| Retention/Fee Matters (Smith Hulsey) | 6,598.50 | 29.9 |
| Retention/Fee Matters (Others) | 46,948.00 | 207.7 |
| Tax Matters | 10,036.50 | 44.6 |
| U.S. Trustee Matters | 7,483.00 | 25.4 |
| Utilities | 35,468.00 | 125.7 |
| Totals | $1,428,768.50 | 5,836.00 |

5. The services rendered by Smith Hulsey in connection with these matters included:

(a) **Asset Disposition.**[2]  Smith Hulsey assisted the Debtors and their advisors in connection with the marketing of the Debtors' leaseholds interests in over 300 stores, including developing bid procedures and protections, and communicating and negotiating with the Creditors' Committee, the DIP Lender and landlords of the stores regarding the sale process and the form of bid procedures, bid protections, sale documents, motions and orders for the proposed sales.  Smith Hulsey represented the Debtors (i) in four days of evidentiary hearings and extensive negotiations with the proposed purchasers and affected landlords for the sale of leasehold interests in 108 stores for approximately $45 million, (ii) with motions to authorize the Debtors to close over 200 stores without complying with local regulatory procedures and lease prohibitions, to retain liquidating agents and to conduct going out-of-business sales resulting in the sale of grocery inventory from closed stores for over $27 million (including extensive negotiations with Committees, DIP Lender, landlords, liquidating agents, and State Attorney General for Tennessee regarding these procedures), (iii) with motions to sell pharmaceutical inventories for over $16.5 million, (iv) with motions to sell the Debtors' airplanes for more than $16.4 million, and (v) with the motion to sell assets with a value of under $150,000 without court approval.

---

[2] For purposes of this fee application, Smith Hulsey has combined its billing categories of "Asset Dispositions (General)," "Asset Dispositions (Inventory)" and "Asset Dispositions (Real Property)."

(b) **Automatic Stay (Relief and Enforcement Actions).** Smith Hulsey represented the Debtors in defense of 35 motions for relief from the automatic stay filed by creditors asserting personal injury, employee, reclamation, landlord, secured and contract claims. The defense of these actions included the negotiation of settlement agreements, the negotiation of standstill agreements and the successful defense of contested evidentiary hearings. In addition, Smith Hulsey responded almost daily to communications from attorneys representing creditors demanding or seeking stay relief and, in most instances, persuaded these prospective movants not to seek such relief. Smith Hulsey also coordinated the enforcement of the automatic stay on behalf of the Debtors in more than 19 state and federal court actions which were commenced or prosecuted in violation of 11 U.S.C. 362, including the commencement and prosecution of an adversary proceeding seeking sanctions against one creditor for violating the automatic stay. In addition, Smith Hulsey coordinated with local counsel for the Debtors on issues and strategy necessary to enforce the automatic stay provisions in the multitude of lawsuits pending as of the petition date.

(c) **Business Operations/Strategic Planning.** Smith Hulsey participated in weekly conferences with the Debtors' senior management and their advisors to strategize business operations, coordinate the restructuring and prepare for hearings in the bankruptcy proceedings.

(d) **Case Administration.** Smith Hulsey has (i) responded daily to requests for information from interested parties made in correspondence, telephone calls, pleadings and other papers, monitored filings and communicated with the Debtors regarding these matters, and (ii) coordinated the Debtors' restructuring and provided information regarding hearings (including preparing weekly agendas) for the Bankruptcy

Court, the Clerk of the Bankruptcy Court, the Creditors' Committee, the United States Trustee and the DIP Lender.

**(e)** **Claims Administration.**[3] Smith Hulsey assisted the Debtors in the establishment of a litigation claims resolution procedure designed to facilitate liquidation of 3800 litigation claims alleging an aggregate liability in excess of $44 million. Smith Hulsey negotiated those procedures with the Creditors' Committee and United States Trustee and successfully prosecuted a motion to approve these procedures. Smith Hulsey also assisted the Debtors in the implementation of these procedures which were commenced on September 30, 2005. Notably, a significant issue requiring much attention was the treatment of Medicare liens and claims in connection with the resolution of personal injury claims, and Smith Hulsey provided legal analysis and counseling to the Debtors necessary to address these unique issues. As part of the claims administration in this case, Smith Hulsey also negotiated consent orders for the extension of time to file proofs of claims for the Internal Revenue Service and the Florida Tax Collectors.

**(f)** **Claims Administration (Reclamation/Trust Funds).** Smith Hulsey (i) performed legal research on reclamation issues, (ii) prepared a complaint for declaratory judgment on the valueless defense, (iii) communicated with creditors regarding their reclamation claims and (iv) represented the Debtors in connection with the Debtors' motion to approve a global reclamation settlement on July 29, 2005.

**(g)** **Claims Administration (PACA).** Smith Hulsey assisted the Debtors in preparing the Perishable Agricultural Commodities Act ("PACA") report required by order of the Court dated March 22, 2005, defended the Debtors with regard to

---

[3] For purposes of this fee application, Smith Hulsey has combined its billing categories for "Claims Administration (General)" and "Claims Litigation."

6

objections filed by PACA claimants and represented the Debtors in connection with the motion for determination of its PACA claim by Old Dixie Produce Packaging, Inc.

**(h)** **Creditor Meetings/Statutory Committees.**  Smith Hulsey assisted the Debtors in connection with the first meeting of creditors and coordinated with and assisted the United States Trustee in connection with the meeting, counseled the Debtors regarding the appointment of an Equity Committee and represented the Debtors in response to the Creditor's Committees' motion to disband the Equity Committee.

**(i)** **Disclosure Statement/Plan Issues.**[4]  Smith Hulsey represented the Debtors in connection with their motion to extend the time in which the Debtors have the exclusive right to file a plan of reorganization and consulted the Debtors regarding the development of a business plan.

**(j)** **Employee Matters (General).**  Smith Hulsey assisted the Debtors in obtaining court authorization to establish a key employee retention plan, and in defense of the motion to appoint a retiree's committee, including responding to extensive discovery requests from the proposed committee.

**(k)** **Environmental Matters.**  Smith Hulsey counseled the Debtors and their advisors regarding environmental issues relating to asset sales, lease rejections and abandonment.

**(l)** **Executory Contracts.**  Smith Hulsey assisted the Debtors in their rejection of over 90 contracts resulting in savings of over $1.5 million a year for the Debtors. Smith Hulsey defended and ultimately resolved Computer Leasing Company's motion to compel the Debtors to assume or reject equipment leases for over 38,000

---

[4] For purposes of this fee application, Smith Hulsey has combined the categories of "Disclosure Statement/Voting Issues" and "Reorganization/Plan Sponsors."

pieces of equipment, including preparing a counterclaim against Computer Leasing for fraudulent conveyances, resulting in savings of over $1 million a month to these estates.

(m) **Financing.**  Smith Hulsey assisted the Debtors in obtaining an order authorizing case management for these cases and in prosecuting the Debtors' successful motion to approve a finance program for insurance premiums.

(n) **General Corporate Advice.**  Smith Hulsey attended the Debtors' meetings and provided advice to the Board on the bankruptcy issues and responded to the Debtors' audit opinion requests.

(o) **Insurance.**  Smith Hulsey assisted the Debtors in their successful prosecution of a motion to renew the Debtors' workers compensation, casualty and automobile liability insurance policies and their motion to pay prepetition auto insurance liability claims.

(p) **Leases (Real Property).**  Smith Hulsey represented the Debtors in connection with (i) their motion to extend the time to assume or reject leases, (ii) the rejection of over 300 leases of stores, distribution centers and manufacturing facilities, (iii) the assumption and assignment of over 100 leases, and (iv) the defense of landlord motions to shorten the time in which the Debtors must decide whether to assume or reject leases.  Smith Hulsey performed extensive legal research on issues regarding proration of rent, rejection of sandwich leases, adequate assurance of future performance, the affect of use restrictions on proposed assignees, cause to compel an early assumption or rejection of a lease and the affect of rejection on the validity of the underlying lease.  Smith Hulsey also communicated and negotiated with landlords' counsel in establishing rejection procedures, obtaining lease termination agreements, and resolving disputes over cure,

rejection post-petition rent payments, abandonment of personal property, hurricane damages and surrendering of leased premises.

**(q) Litigation (General).** Smith Hulsey represented the Debtors in their defense of administrative claims, motions to compel the assumption or rejection of executory contracts, motions to extend the deadline for proofs of claim, and the mediation of outstanding disputes. Matters in this category to which Smith Hulsey devoted significant time included the defense of Transamerica's application for the payment of administrative expense, the mediation of the Stokes and Reddick $1.4 million claim and an analysis of ERISA and SEC issues.

**(r) Regulatory and SEC Matters.** Smith Hulsey assisted the Debtors in connection with requests by the United States Trustee and the Securities and Exchange Commission for information regarding equity security holders.

**(s) Reports and Schedules.** Smith Hulsey assisted the Debtors in (i) filing monthly operating reports and amendments to schedules of assets and liabilities, (ii) payment of quarterly fees to the Office of the United States Trustee, and (iii) communications with the United States Trustee.

**(t) Retention/Fee Matters (Smith Hulsey).** Smith Hulsey represented the Debtors in response to the United States Trustee's motion for reconsideration of Smith Hulsey's retention, prepared supplemental declarations regarding case connections, and prepared and presented Smith Hulsey's first interim fee application.

**(u) Retention/Fee Matters (Others).** Smith Hulsey (i) counseled the Debtors regarding retention issues under section 328 of the Bankruptcy Code, (ii) assisted the Debtors in connection with their retention of KPMG, DJM Asset Management, the

Food Partners, Xroads, Carlton Fields, Blackstone, Price Waterhouse, Deloitte Consulting and Bain & Company, (and the United States Trustee's objections to these applications), (iii) assisted and consulted the Debtors' professionals in filing and hearings on their first interim applications, (iv) advised the Debtors regarding their ability to retain brokers *nunc pro tunc*, and (v) counseled the Debtors and communicated with the United States Trustee regarding professional fees and Wachovia's motion to appoint a fee examiner.

**(v)** **Taxes.**  Smith Hulsey advised the Debtors regarding their ability to obtain an exemption from payment of documentary stamp taxes under section 1146 of the Bankruptcy Code, their ability to have the Bankruptcy Court review tax liability under section 505 of the Bankruptcy Code and Florida sales tax issues relating to inventory sales and lease assignments.

**(w)** **U.S. Trustee Matters.**  Smith Hulsey communicated with the Office of the United States Trustee on a continuous basis and represented the Debtors at the Initial Interview meeting with the United States Trustee.

**(x)** **Utilities.**  Smith Hulsey represented the Debtors at several evidentiary hearings in their successful defense of requests by fifteen utilities to require the Debtors to deposit millions of dollars with the utilities as additional security for continuing utility services.

**Compensation and Reimbursement Requested by Smith Hulsey**

5.     By this application, Smith Hulsey requests interim compensation for services rendered of $1,428,768.50 (less $688,865.78 previously paid by the Debtors) and reimbursement of expenses of $59,029.21 (less $29,796.18 previously paid by the

10

Debtors) incurred in connection with this case from the May 1, 2005 through September 30, 2005.

6. During the period from May 1, 2005 through September 30, 2005, Smith Hulsey devoted 4,528.1 hours of attorney time, 187.4 hours of law clerk time, and 1,120.5 hours of legal assistant time to the representation of the Debtors, resulting in an average hourly rate of $243.56. Attached as Schedule A is a daily summary of Smith Hulsey's services rendered for this period in its representation of the Debtors, including time devoted each day by individual attorneys and legal assistants. This daily summary is condensed from individual time slips, completed as services were rendered, which contain a description of those services.

7. Attached as Schedule B is a summary of the total time devoted by each attorney and legal assistant during the period between May 1, 2005 through September 30, 2005, together with a computation of the value of that time at the ordinary hourly rates of Smith Hulsey that were in effect during the time the services were rendered. The fees requested by this application were determined by the computation of the total time at those ordinary hourly rates.

8. In connection with the rendering of these services, Smith Hulsey advanced expenses on behalf of the Debtors in the amount of $59,029.21 for long distance toll charges, duplicating expenses, postage, express delivery, travel expense and other items, on which Smith Hulsey seeks approval for the Debtors' reimbursement in the amount of $59,029.21. These expenses are described more particularly in Schedule A and are summarized in Schedule C.

**Application of Legal Standards to the Services of Smith Hulsey**

9. In considering the criteria of Bankruptcy Code section 330 and <u>In the Matter of First Colonial Corp. of America</u>, 544 F.2d 1291 (5th Cir. 1977), for the determination of a reasonable attorney's fee, the following considerations justify the allowance of a fee to Smith Hulsey in the amount of its hourly rates, in addition to those matters which are otherwise apparent to the Court from its familiarity with this case:

    a. Apparent from the time frame of this case and Smith Hulsey's application, the time and labor required by the representation was significant. A material demand was placed upon the available services of Smith Hulsey, which demand precluded employment of Smith Hulsey on other matters.

    b. Because the volume of services required of Smith Hulsey, the demand placed on its resources was intense and extraordinary, resulting in its lawyers and staff working nights and weekends on a regular basis for the benefit of the estate. Included in this demand was the need to investigate, research, respond to discovery, prepare and resolve the dozens of matters scheduled for hearing almost every week before the Court.

    c. The requested fee is Smith Hulsey's customary fee in commercial bankruptcy matters of this kind and there exists no reason in the circumstances of this case to award a lesser fee for the services rendered.

    d. Additionally, consideration of the difficulty and intensity of the case, the skill of Smith Hulsey in performing its legal services, and the experience, reputation and ability of Smith Hulsey, all support an award of a fee to Smith Hulsey in an amount equivalent to its hourly rates for the time devoted to the case.

10. Smith Hulsey has made no arrangement regarding the sharing of compensation for services rendered in connection with this Chapter 11 case.

**Coordination With Co-Counsel**

11.     The Debtors have directed a division of responsibilities between Smith Hulsey and its bankruptcy co-counsel, Skadden, Arps, Slate, Meagher & Flom LLP, to ensure the most efficient rendition of bankruptcy services with a minimum of overlap of effort.  In that regard, during this period, the Debtors assigned Smith Hulsey primary responsibility to sale of estate assets.  Smith Hulsey and Skadden Arps have worked diligently to avoid duplication of efforts and to assure the timely accomplishment of the Debtors' objectives.  Mindful of Smith Hulsey's lower rates, the Debtors have asked Smith Hulsey to assume principal responsibility for court approval of asset sales and communications with the United States Trustee, and significant responsibility for reclamation and stay litigation.  Because of the sheer volume of work, Smith Hulsey from time to time has drawn upon the resources of Skadden Arps, obtaining assistance when necessary to timely accomplish the Debtors' objectives.  The close coordination between Smith Hulsey and Skadden Arps, coupled with Smith Hulsey's geographical proximity to the Court and more advantageous rates and the experience of Skadden Arps, have together served the best interests of the Debtors by providing the best of services at a reasonable cost.

WHEREFORE, Smith Hulsey respectfully requests the Court to (i) approve all previously authorized compensation of Smith Hulsey and reimbursement of its expenses and (ii) allow as interim compensation in the amount of $1,428,768.50 for professional services rendered and reimbursement for costs advanced in the amount of $59,029.21.

Dated:  November 15, 2005.

SMITH HULSEY & BUSEY

By     *s/ Cynthia C. Jackson*
         Stephen D. Busey
         James H. Post
         Cynthia C. Jackson

Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)

Co-Counsel for the Debtors