**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

WINN-DIXIE STORES, INC., et al.,

Debtors.[1]

Case No.: 3:05-bk-03817-JAF

Chapter 11

Jointly Administered

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

These cases came before the Court upon Application for Payment of Administrative Expenses filed by Transamerica Life Insurance Company (the "Application"). The Debtors filed an objection to the Application. The Court conducted a hearing on the matter on August 4, 2005 and elected to take the matter under advisement. Upon review of the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Winn Dixie Montgomery, Inc., ("Winn-Dixie Montgomery") as successor in interest to Winn Dixie Atlanta, Inc., is party to a lease dated September 4, 1986 governing Store #1908 located in Huntsville, Alabama (as Amended, the "Lease"). (Ex.

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

1.) Winn Dixie Stores, Inc. is the guarantor of the Lease. Transamerica Life Insurance Company ("Transamerica") was at all relevant times the lessor under the Lease.

On February 21, 2005 (the "Petition Date") the Debtors filed these Chapter 11 cases. Transamerica's agent mailed to the Debtors by certified mail, return receipt requested, a statement dated February 16, 2005 (the "Pre-petition Invoice") for the following expenses under the Lease totaling $76,222.25: 1) 2004 Common Area Maintenance Expenses -$36,777.35; 2) 2004 Insurance Expenses-$2,532.52; and 3) 2004 Property Tax Expenses-$36,912.38. (Ex. 1.) The Debtors received the Pre-Petition Invoice on March 3, 2005. (Id.)

The expenses claimed in the Pre-Petition Invoice are required to be paid by Winn-Dixie Montgomery to Transamerica as additional rent under Paragraphs 17, 31 and 37 of the Lease.[2] (Ex. 1.) Paragraph 17 of the Lease deals with fire and provides in pertinent part: "[Transamerica] shall carry fire and extended coverage insurance on [Winn-Dixie Montgomery]'s building ... During the term of this lease and any extensions thereof, [Winn-Dixie Montgomery] agrees to pay to [Transamerica] as additional rental the amount of the premium for [Transamerica]'s fire and extended coverage insurance allocable to the demised premises ..." Paragraph 31 of the Lease deals with common area maintenance and provides in pertinent part: "[Transamerica] agrees to operate and maintain in good condition and repair all the common areas ...For such services, [Winn-Dixie Montgomery] shall pay to [Transamerica] at the end of each lease year, as additional rent hereunder and as reimbursement for the annual cost thereof... Such amount shall be payable on a non-cumulative basis at the end of each lease year for the

---

[2] In the Application and at the hearing on the Application, Transamerica contended that paragraphs 31 and 37 are the provisions that call for the payment of the amounts claimed in the Pre-Petition Invoice. However, neither paragraph 31 nor paragraph 37 refers to insurance expenses.

2

expenses of the year and within fifteen (15) days following the furnishing by [Transamerica] to [Winn-Dixie Montgomery] to of a detailed statement of such costs." Paragraph 37 of the Lease deals with taxes and provides in pertinent part: "During the term of this lease and any extensions thereof, [Winn-Dixie Montgomery] agrees to pay to [Transamerica] as additional rental the amount of [Transamerica]'s ad valorem real estate taxes levied against the demised premises."

On May 6, 2005 the Court entered Order Under 11 U.S.C. § 365(d)(4) Granting Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Order"). The Order extended to September 19, 2005 the time for the Debtors to assume or reject the Lease. The Order also required the Debtors to continue to honor their post-petition obligations arising under the Lease. On August 26, 2005 the Court entered Order Approving Debtors' Lease Termination Agreement and Granting Related Relief (the "Termination Order"). The Termination Order terminated the Lease.

## CONCLUSIONS OF LAW

Section 365(d)(3) of the Bankruptcy Code provides in relevant part that "the trustee shall timely perform all obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." The issue before the Court is whether Transamerica is entitled to payment under § 365(d)(3) for the amounts set forth in the Pre-Petition Invoice. Transamerica asserts that the amounts set forth in the Pre-Petition Invoice are administrative expenses required to be paid under § 365(d)(3) because they are "obligations ... arising from and after the order for relief under [the] unexpired lease."

3

Transamerica contends that under the plain language of the Lease, the additional rental obligations arose and became due and payable 15 days after they were billed, a date after the Petition Date. The Debtors contend that notwithstanding the fact that the rental obligations "became due" after the Petition Date, they accrued prior thereto and are therefore not required to be paid under § 365(d)(3).

As the Eleventh Circuit Court of Appeals has not had occasion to address the issue, there is no controlling authority before the Court. There is a split of authority among the courts which have addressed the issue. A number of courts, including the Seventh Circuit Court of Appeals and the Tenth Circuit Bankruptcy Appellate Panel, have adopted the "accrual" or "pro-ration" approach. In re Handy Andy Home Improvement Centers, Inc., 144 F.3d 1125, 1126-28 (7th Cir. 1998); El Paso Props. Corp. v. Gonzales (In re Furr's Supermarkets, Inc.), 283 B.R. 60, 68-70 (B.A.P. 10th Cir. 2002); Newman v. McCrory Corp., (In re McCrory Corp.), 210 B.R. 934, 936-40 (S.D.N.Y. 1997); Schneider & Reiff v. William Schneider, Inc., (In re William Schneider, Inc.), 175 B.R. 769, 771-73 (S.D. Fla. 1994). The accrual approach interprets § 365(d)(3) as requiring that rent, taxes, and other payments under a lease which come due after the petition date be pro-rated between the pre-petition and post-petition periods. The trustee (or debtor-in-possession) is required to pay as an administrative expense only those amounts which accrue after the petition date.

Handy Andy dealt with real estate taxes for a pre-petition tax period. The court framed the issue as whether the "obligation" under the lease could arise before the debtor was contractually obligated to reimburse the landlord for the taxes it had paid. The Court noted that "[i]t is true that [the debtor's] obligation to [the landlord] to pay (or reimburse

4

[the landlord] for paying) the real estate taxes did not crystallize until the rental due date after the taxes were paid. But since death and taxes are inevitable and [the debtor's] obligation under the leases to pay the taxes was clear, that obligation could realistically be said to have arisen piecemeal every day of 1994 and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force. Had the lease been terminated for one reason or another on January 1, 1995, [the debtor] would have had a definite obligation to reimburse [the landlord] for the 1994 real estate taxes when those taxes were billed to [the landlord]. The obligation thus arose, in a perfectly good sense, before the bankruptcy." Id. at 1127.

Other courts, including the Third Circuit Court of Appeals, have adopted the "billing date" approach which interprets § 365(d)(3) as requiring the payment of all rental obligations which come due during the post-petition, pre-rejection period regardless of whether some of the charges accrued pre-petition. Centerpoint Properties v. Montgomery Ward Holding Corp (In re Montgomery Ward Holding Corp.), 268 F.3d 205 (3d Cir. 2001); In re DeCicco of Montvale, Inc., 239 B.R. 475 (Bankr.D.N.J. 1999); In re R.H. Macy & Co., 152 B.R. 869 (Bankr. S.D.N.Y. 1993). Those courts conclude that for purposes of § 365(d)(3) an obligation arises under a lease when the legally enforceable duty to perform arises under that lease.

Upon a thorough review of the cases, the Court concludes that the accrual approach is the better reasoned one. The accrual approach best protects the interests of landlords, debtor-tenants and other creditors in a manner consistent with the Bankruptcy Code's broader purposes of reorganization and equality among similarly situated creditors. Specifically, the accrual approach best implements § 365(d)(3)'s goal of

5

protecting landlords during the period between the bankruptcy filing and acceptance or rejection of a lease by making the debtor fully responsible for liabilities relating to its post-petition use of the property. At the same time the accrual approach furthers the Code's overarching policies of equality among creditors and a fresh start for the debtor because landlords are fairly compensated for post-petition services provided to the debtor without imposing "sunk costs" on otherwise viable enterprises. See Handy Andy, 144 F.3d at 1127-28. Further, the accrual approach protects the interests of other similarly situated creditors by protecting landlords only to the extent of a debtor's post-petition use of the landlord's property. The Court holds that the amounts set forth in the Pre-petition Invoice arose when they accrued. Because the Pre-petition Invoice relates entirely to amounts that accrued prior to the Petition Date, they are not obligations which fall within the purview of § 365(d)(3). The Court will enter a separate order denying Transamerica's Application for Payment of Administrative Expenses.

**DATED** this 15 day of November, 2005 in Jacksonville, Florida.

JERRY A. FUNK
United States Bankruptcy Judge