**<u>EXHIBIT "B" PART 1</u>**

# LEASE AGREEMENT

**ORLANDO 99-FL, LLC,**
as Landlord

to

**WINN-DIXIE STORES, INC.,**
as Tenant

Dated as of August 26 , 1999

Store #2294
Orlando, Seminole County, Florida

JK 128865.1 80130 02051
8/1/99 10:35 AM

# TABLE OF CONTENTS

Page No.

1.  DEFINED TERMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.  DEMISE OF LEASED PREMISES; PRIORITY OF LEASE . . . . . . . . . . . . . 1

3.  TENANT'S EQUIPMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4.  TERM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5.  RENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    (a)  Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    (b)  Additional Monetary Obligations . . . . . . . . . . . . . . . . . . 2
    (c)  Effect of Nonpayment of Rent . . . . . . . . . . . . . . . . . . . . . . . 3

6.  UNCONDITIONAL PAYMENT OBLIGATION; NON-TERMINABILITY; TRUE
    LEASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    (a)  Net Lease; No Setoff or Counterclaim Against Rent . . . . . . . . . . . . . . . 3
    (b)  No Termination of Lease; No Defense to Tenant's Obligations . . . . . . . 3
    (c)  Continuing Obligations of Tenant . . . . . . . . . . . . . . . . . . . 3
    (d)  Tenant's Waivers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    (e)  True Lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7.  TITLE; LIENS; CONDITION OF PREMISES . . . . . . . . . . . . . . . . . . . . . 4
    (a)  Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    (b)  Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    (c)  Encroachments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    (d)  Condition of Leased Premises . . . . . . . . . . . . . . . . . . . . . . 5
    (e)  Assignment of Warranties, Guaranties, Indemnities . . . . . . . . . . . . . . 6
    (f)  Granting of Easements . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    (g)  Conveyances for Public Purposes . . . . . . . . . . . . . . . . . . . . 7

8.  USE AND MAINTENANCE OF PREMISES; QUIET ENJOYMENT . . . . . . . . 9
    (a)  Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    (b)  Maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    (c)  Replacement Equipment . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    (d)  Landlord's Covenant of Quiet Enjoyment . . . . . . . . . . . . . . . 9
    (e)  Landlord's Right of Entry . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    (f)  Subordination, Nondisturbance and Attornment . . . . . . . . . . . 10
    (g)  Utilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9.  TENANT'S RIGHT OF FIRST REFUSAL . . . . . . . . . . . . . . . . . . . . . . . 11

10.  PURCHASE OFFER; PROCEDURE ON PURCHASE . . . . . . . . . . . . . . . 11

      (a)    Title to be Conveyed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      (b)    Payment of Purchase Price; Conveyance Documents; Other Costs . . . 12

11.     TENANT'S SUBSTITUTION OPTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12.     PAYMENT OF IMPOSITIONS AND ADDITIONAL OBLIGATIONS;
        COMPLIANCE WITH LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      (a)    Impositions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      (b)    Compliance with Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      (c)    Additional Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      (d)    Year 2000 Compliance . . . . . . . . . . . . . . . . . . . . . . : . . . . . 15

13.     INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      (a)    Type of Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      (b)    Insurance Requirements; "Self-Insurance" . . . . . . . . . . . . . . . . 16
      (c)    Mortgagee Loss Payable Clauses; Cancellation of Insurance . . . . . . 17
      (d)    Payment of Premiums; Policy Replacements . . . . . . . . . . . . . . 17
      (e)    Blanket Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

14.     PROPERTY LOSS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      (a)    Property Loss Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      (b)    Termination Upon Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15.     CONDEMNATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      (a)    Assignment of Condemnation Award . . . . . . . . . . . . . . . . . . . 19
      (b)    Total or Substantial Condemnation . . . . . . . . . . . . . . . . . . . . 20
      (c)    Partial Condemnation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
      (d)    Landlord's Equipment Condemnation . . . . . . . . . . . . . . . . . . 21
      (e)    Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

16.     ECONOMIC ABANDONMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

17.     RESTORATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18.     ASSIGNMENT AND SUBLEASING; VACATION OF LEASED PREMISES . 23
      (a)    Assignment and Subleasing . . . . . . . . . . . . . . . . . . . . . . . . . 23
      (b)    Vacation of Leased Premises . . . . . . . . . . . . . . . . . . . . . . . . 23

19.     PERMITTED CONTESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20.     ENVIRONMENTAL COVENANTS; INDEMNITY . . . . . . . . . . . . . . . . . . 25

21.     GENERAL INDEMNIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

22.   DEFAULT PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28
      (a)   Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28
      (b)   Landlord's Remedies Upon Tenant Default  . . . . . . . . . . . . . . . . .  29
      (c)   No Relief of Obligations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
      (d)   Current Damages  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
      (e)   Liquidated Final Damages  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32
      (f)   Alternative Liquidated Final Damages . . . . . . . . . . . . . . . . . . . . . . . .  32

23.   ADDITIONAL RIGHTS OF LANDLORD . . . . . . . . . . . . . . . . . . . . . . . . . . .  33
      (a)   Non-Exclusive, Cumulative Remedies  . . . . . . . . . . . . . . . . . . . . . .  33
      (b)   Tenant's Waiver of Redemption  . . . . . . . . . . . . . . . . . . . . . . . . . .  33
      (c)   Costs Upon Default and Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

24.   NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

25.   ESTOPPEL CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

26.   SURRENDER AND HOLDING OVER . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

27.   NO MERGER OF TITLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

28.   ALTERATION AND EXPANSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35
      (a)   Alterations Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35
      (b)   Alterations Involving Expansion of Improvements . . . . . . . . . . . . . . .  36
      (c)   Mortgagee's Financing of Alterations Involving Expansion . . . . . . . . . .  36
      (d)   Third Party Financing of Alterations Involving Expansion . . . . . . . . . .  38
      (e)   Tenant's Self-Funding of Alterations Involving Expansion  . . . . . . . . .  38
      (f)   New Store Construction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

29.   MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

EXHIBIT A - SCHEDULE OF DEFINED TERMS
EXHIBIT B-1 - LEGAL DESCRIPTION OF LAND
EXHIBIT B-2 - SITE PLAN
EXHIBIT C - LANDLORD'S EQUIPMENT
EXHIBIT D - TENANT'S EQUIPMENT
EXHIBIT E - SCHEDULE OF RENT
EXHIBIT F - PURCHASE PRICE
EXHIBIT G - FORM OF ESTOPPEL CERTIFICATE
EXHIBIT H - FORM OF MEMORANDUM OF LEASE
EXHIBIT I - FORM OF COMPLETION CERTIFICATE

## LEASE AGREEMENT

THIS LEASE AGREEMENT (this "Lease") is made as of August 2*6* , 1999, between

**ORLANDO 99-FL, LLC,** a Delaware limited liability company ("Landlord"), whose address is c/o Principal Net Lease Investors, L.L.C., 711 High Street, Des Moines, Iowa 50392-0301 Attention: Gary Lines, Telefax No. 515 248 8090;

and

**WINN-DIXIE STORES, INC.,** a Florida corporation ("Tenant"), whose address is 5050 Edgewood Court, Jacksonville, Florida 32254 Attention: Chief Financial Officer, Telefax No. 904 783 5294.

IN CONSIDERATION of the rents and mutual covenants herein contained to be paid and performed, Landlord and Tenant agree as follows:

1.     **DEFINED TERMS**. Capitalized terms as used in this Lease will have the meanings assigned to such terms as set forth on attached Exhibit A.

2.     **DEMISE OF LEASED PREMISES; PRIORITY OF LEASE**. Effective on the Commencement Date, Landlord hereby demises and lets unto Tenant, and Tenant hereby takes and leases from Landlord, for the term or terms and upon the provisions hereinafter specified, the following described property (collectively, the "Leased Premises"): (i) real property more particularly described on attached Exhibit B-1, together with all easements, rights and appurtenances thereunto belonging or appertaining (the "Land"), (ii) the buildings, structures and other improvements now located or hereafter constructed on the Land (collectively, the "Improvements"), as generally depicted on the Site Plan attached as Exhibit B-2 (the "Site Plan"), and (iii) the machinery, equipment and fixtures described on attached Exhibit C, and additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease ("Landlord's Equipment"). This Lease is subject to the Permitted Encumbrances and, except to the extent that Landlord, Tenant and Mortgagee enter into a subordination agreement pursuant to paragraph 8(f) below, is prior to the Lien of any Mortgage.

3.     **TENANT'S EQUIPMENT**. The machinery, equipment and fixtures described on attached Exhibit D, and additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease, and Tenant's trade fixtures and equipment ("Tenant's Equipment") are and will remain the property of Tenant, and are intended by Landlord and Tenant to constitute personal property of Tenant, and not fixtures, attachments or Improvements or other interest in real property, whether or not the same

are attached or affixed to the Leased Premises and whether or not the same are deemed to constitute real property under State law.

4.     **TERM.** Subject to the provisions of this Lease, Tenant shall have and hold the Leased Premises for an initial term (the "Initial Term") commencing on August 26, 1999 (the "Commencement Date"), and ending on August 31, 2019. As long as no Event of Default then exists, Tenant shall have the option, exercisable in accordance with the following provisions, to extend the Term for 6 additional terms (each an "Extended Term") of 5 years each by giving notice to Landlord not less than 6 months prior to the expiration of the then current Term. If Tenant does not give any such notice to extend to Landlord in a timely fashion, the Term shall automatically terminate at the end of the then current Term. Any such Extended Term shall be subject to all of the provisions of this Lease, all of which shall continue in full force and effect. If Tenant does not exercise an option for an Extended Term, Landlord shall have the right during the remainder of the then current Term (i) to advertise the availability of the Leased Premises for sale or for reletting, and to erect upon the Leased Premises signs indicating such availability (provided that such signs do not unreasonably interfere with the use of the Leased Premises by Tenant), and (ii) to show the Leased Premises to prospective purchasers or tenants at reasonable times during normal business hours upon reasonable notice to Tenant. If Tenant fails to timely exercise its right to extend the Term for any Extended Term, then Tenant's right to extend the Term for any further Extended Terms shall terminate and be null and void.

5.     **RENT.**

(a)     Rent. Tenant shall pay to Landlord, as rent for the Leased Premises during the Term, the amounts (the "Rent") set forth in attached Exhibit E. Rent (other than the prorated Rent provided in Exhibit E) shall be due and payable in advance commencing on September 1, 1999, and continuing on the 1st day of each December, March, June and September thereafter during the Term (said payment days being referred to as the "Rent Payment Dates"). Tenant shall pay the Rent to Landlord at Landlord's address set forth above, or at such other place or to such other person as Landlord from time to time may designate to Tenant in writing, in funds which at the time of such payment shall be legal tender for the payment of public or private debts in the United States of America.

(b)     Additional Monetary Obligations. In addition to Rent, Tenant shall pay and discharge when the same shall become due all other costs, fees, charges or expenses that Tenant is obligated to pay or discharge pursuant to this Lease or the Assignment, and every fine, penalty, interest and cost which may be added pursuant to this Lease, the Assignment, or Legal Requirements for nonpayment or late payment thereof (any such amounts being referred to herein as the "Additional Monetary Obligations"). In the event of any failure by Tenant to pay or discharge the Additional Monetary Obligations, Landlord shall have the same rights, powers and remedies provided by law as available to Landlord in the event of nonpayment of Rent.

(c)    Effect of Nonpayment of Rent. In addition to Landlord's remedies in an Event of Default, if any installment of Rent or any amount due as Additional Monetary Obligations is an Overdue Payment, then, in addition to Tenant's obligation to pay such Rent or Additional Monetary Obligations, Tenant shall pay to Landlord, on demand, as Additional Monetary Obligations, interest at the Default Rate on each such Overdue Payment from and including the due date thereof to and including the date of such payment in full; provided, however, that the Default Rate shall be payable on all overdue amounts of Additional Monetary Obligations which Landlord or Mortgagee shall have paid on behalf of Tenant only from and including the date of payment thereof by Landlord or Mortgagee, to and including the date of such payment in full.

6.    **UNCONDITIONAL PAYMENT OBLIGATION; NON-TERMINABILITY; TRUE LEASE.**

(a)    Net Lease; No Setoff or Counterclaim Against Rent. This Lease is an absolutely net lease and Tenant shall have an unconditional obligation to pay Rent, Additional Monetary Obligations and all other sums payable hereunder by Tenant, without notice or demand, and without setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense. It is the intention of the parties hereto that the obligations of Tenant hereunder shall be separate and independent covenants and agreements, and that Rent, Additional Monetary Obligations and all other sums payable by Tenant hereunder shall continue to be payable in all events and that the obligations of Tenant hereunder shall continue unaffected for any reason, unless the requirement to pay or perform the same shall have been terminated pursuant to an express provision of this Lease.

(b)    No Termination of Lease; No Defense to Tenant's Obligations. Except as otherwise expressly provided in this Lease, this Lease shall not terminate nor shall Tenant have any right to terminate this Lease, nor shall the obligations of Tenant under this Lease be affected, any present or future law to the contrary notwithstanding, by reason of: (i) any damage to or destruction of the Leased Premises by any cause whatsoever, (ii) any Condemnation, (iii) the prohibition, limitation or restriction of Tenant's use of the Leased Premises, (iv) any eviction by paramount title or otherwise, (v) Tenant's acquisition of ownership of the Leased Premises other than pursuant to paragraphs 10 or 11, (vi) any Default on the part of Landlord hereunder or under any other agreement, (vii) any latent or other defect in, or any theft or loss of, the Leased Premises, (viii) the breach of any warranty of any seller or manufacturer of any of the Landlord's Equipment, or (ix) any other cause whether similar or dissimilar to the foregoing.

(c)    Continuing Obligations of Tenant. Tenant agrees that it shall remain obligated under this Lease in accordance with its provisions and that,

except as otherwise expressly provided in this Lease, it shall not take any action to terminate, rescind or avoid this Lease, notwithstanding (i) the bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding-up or other proceeding affecting Landlord, or (ii) any action with respect to this Lease (including the disaffirmance hereof) which may be taken by Landlord in any proceeding under the Federal Bankruptcy Act or any similar federal or state law, or by any trustee, receiver or liquidator of Landlord or by any court in any such proceeding.

(d)     Tenant's Waivers.   Tenant waives all rights which may now or hereafter be conferred by law (i) to quit, terminate or surrender this Lease or the Leased Premises, and (ii) to any setoff, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Rent, Additional Monetary Obligations or any other sums payable under this Lease, except as otherwise expressly provided herein.

(e)     True Lease.   Landlord and Tenant agree that this Lease is a true lease and does not represent a financing arrangement.   Each party shall reflect the transaction represented hereby in all applicable books, records and reports (including income tax filings) in a manner consistent with "true lease" treatment rather than "financial" treatment.

7.     TITLE; LIENS; CONDITION OF PREMISES.

(a)     Title.   The Leased Premises are demised and let subject to (i) the rights of parties in possession, (ii) the existing state of title as of the Commencement Date (including, without limitation, the Permitted Encumbrances and such other matters as may be set forth in Schedule B, Part I of the owner's title insurance policy relating to the Leased Premises issued to Landlord in connection with Landlord's acquisition of the Leased Premises, (iii) any state of facts which an accurate survey or physical inspection of the Leased Premises might show, (iv) all Legal Requirements, and (v) the condition of the Leased Premises as of the Commencement Date, all without representation or warranty by Landlord.   Tenant has examined the title to the Leased Premises on and as of the Commencement Date and has found the same to be satisfactory for all purposes.

(b)     Liens.   TENANT SHALL NOT, DIRECTLY OR INDIRECTLY, CREATE OR PERMIT TO BE CREATED OR TO REMAIN, AND SHALL PROMPTLY DISCHARGE, ANY LIEN (OTHER THAN THE MORTGAGE, THE ASSIGNMENT, ANY PERMITTED ENCUMBRANCE, OR ANY LIEN CREATED BY OR RESULTING FROM ANY ACTION BY LANDLORD NOT CONSENTED TO BY TENANT IN ADVANCE AND IN WRITING), WHETHER CREATED OR ARISING BEFORE, ON OR AFTER THE COMMENCEMENT DATE, ON THE LEASED PREMISES OR ANY RENT, ADDITIONAL MONETARY

OBLIGATIONS OR ANY OTHER SUMS PAYABLE BY TENANT UNDER THIS LEASE. NOTICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE LIABLE FOR ANY LABOR, SERVICES OR MATERIAL FURNISHED OR TO BE FURNISHED TO TENANT, OR TO ANYONE HOLDING THE LEASED PREMISES THROUGH OR UNDER TENANT, AND THAT NO MECHANICS' OR OTHER LIENS FOR ANY SUCH LABOR, SERVICES OR MATERIALS SHALL ATTACH TO OR AFFECT THE INTEREST OF LANDLORD IN THE LEASED PREMISES.

(c)    Encroachments.    In the event that any Improvement now or hereafter constructed shall (i) encroach upon any property, street or right-of-way on or adjoining the Leased Premises, (ii) violate the provisions of any restrictive covenant affecting the Leased Premises, (iii) hinder or obstruct any easement or right-of-way to which the Leased Premises is subject, or (iv) impair the rights of others in, to or under any of the foregoing, then, promptly after written request of Landlord, Tenant shall either (x) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation, hindrance, obstruction or impairment, whether the same shall affect Landlord, Tenant or both, or (y) take such action as shall be necessary to remove such encroachment, hindrance or obstruction and to end such violation or impairment.  If such action is in the form of an Alteration, such Alteration shall conform to the provisions of paragraph 28.

(d)    Condition of Leased Premises. Tenant acknowledges that it has received the Leased Premises in good condition and repair on the Commencement Date. LANDLORD HAS NOT MADE, AND WILL NOT MAKE, ANY INSPECTION OF THE LEASED PREMISES, AND LANDLORD LEASES, AND TENANT TAKES, THE LEASED PREMISES "AS-IS".    TENANT ACKNOWLEDGES THAT LANDLORD HAS NOT MADE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE LEASED PREMISES, ITS FITNESS FOR ANY USE OR PURPOSE, ITS DESIGN OR CONDITION FOR ANY USE OR PURPOSE, THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, ITS VALUE, COMPLIANCE WITH SPECIFICATIONS, ITS LOCATION, USE, CONDITION, MERCHANTABILITY, QUALITY, DESCRIPTION, DURABILITY OR OPERATION OR LANDLORD'S TITLE THERETO; IT BEING AGREED THAT ALL RISKS INCIDENT TO ALL OF THESE MATTERS ARE TO BE BORNE BY TENANT.    TENANT ACKNOWLEDGES THAT THE LEASED PREMISES ARE OF ITS SELECTION AND HAVE BEEN OR WILL BE CONSTRUCTED TO ITS SPECIFICATIONS. TENANT HAS INSPECTED THE LEASED PREMISES AND THEY ARE SATISFACTORY TO TENANT.   IN THE EVENT OF ANY DEFECT OR DEFICIENCY OF ANY NATURE IN THE LEASED PREMISES, WHETHER PATENT OR LATENT, LANDLORD SHALL HAVE NO RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR

CONSEQUENTIAL DAMAGES ARISING THEREFROM (INCLUDING STRICT LIABILITY IN TORT). THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN NEGOTIATED AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY REPRESENTATIONS OR WARRANTIES BY LANDLORD, EXPRESS OR IMPLIED, WITH RESPECT TO THE LEASED PREMISES, ARISING PURSUANT TO ANY LAW NOW OR HEREAFTER IN EFFECT OR OTHERWISE.

(e)   <u>Assignment of Warranties, Guaranties, Indemnities</u>. Landlord hereby assigns, without recourse or warranty whatsoever, to Tenant, for the duration of this Lease, all of Landlord's interest in all warranties (except warranties of title to the Leased Premises), guaranties and indemnities, express or implied, and similar rights which Landlord may have against any manufacturer, seller, engineer, contractor or builder in respect of the Leased Premises, including, any rights and remedies existing by contract or pursuant to the Uniform Commercial Code in effect in the State. As long as no Default has occurred and is continuing hereunder and until the expiration or termination of this Lease, Tenant shall have the right (at its sole cost and expense) to enforce any such warranty, guaranty or indemnity in the name of Landlord or Tenant. Upon the occurrence of an Event of Default, all such rights shall be vested solely in Landlord, and any money received by Tenant during the continuance of any Event of Default shall be held in Trust by Tenant for the benefit of Landlord, and shall promptly be paid over to Landlord. Landlord hereby agrees to execute and deliver, at Tenant's expense, such further documents (including powers of attorney) as Tenant reasonably may request, to allow Tenant the full benefit of the assignment effected or intended to be effected by this paragraph and the ability to enforce such warranties, guaranties and indemnities.

(f)   <u>Granting of Easements</u>. Landlord shall not grant any easements or other rights in the nature of easements in the Leased Premises without the prior written consent of Tenant, which consent shall not be delayed, withheld, or conditioned unreasonably. As long as no Default has occurred and is continuing hereunder, Landlord, at the request of Tenant: (i) will grant, amend or release easements for public utilities servicing the Leased Premises (e.g., electricity, natural gas, water and sewer, telephone and telecommunications and cable communications), (ii) subject to Landlord's approval, not to be unreasonably delayed, conditioned, or withheld, will grant or declare, amend or release easements (other than those described in <u>subparagraph (i)</u> above), covenants, or restrictions for ingress and egress, parking, or other matters as necessary or desirable for operation of the Leased Premises in Tenant's Business, (iii) will exercise a diligent and good faith effort to obtain the consent and joinder of Mortgagee to any such grant or declaration, amendment or release of easements, covenants or restrictions, and (iv) will execute and deliver to any person any instrument appropriate to confirm or effect such grant, declaration, release or amendment, upon receipt by Landlord of a certificate of Tenant and

Guarantor, signed by the President or a Vice President of Tenant and Guarantor stating:

      (A)    that the Leased Premises (including all related easements), following such grant, declaration, release, or amendment, (1) constitutes an integrated economic unit for use in Tenant's Business, including sufficient parking and all necessary and required utilities, (2) is a contiguous parcel of land, without gap or hiatus, (3) has adequate access to and from public highways, and (4) is not in violation of any Legal Requirement or any restrictive covenant or other agreement applicable thereto;

      (B)    that, in the judgment of Tenant and Guarantor, such grant, declaration, release or amendment will not lessen the value of the Leased Premises beyond a *de minimus* reduction, and does not require any payment or performance by Landlord (unless Tenant pays or performs any such Landlord obligations in full);

      (C)    the consideration, if any, to be received in connection with such grant, declaration, release or amendment;

      (D)    that upon such grant, declaration, release or amendment, this Lease and the Guaranty shall remain in full force and effect and Tenant and Guarantor shall remain fully obligated under this Lease and the Guaranty without any reduction of Rent, Additional Monetary Obligations or any other sums payable under this Lease or the Guaranty; and

      (E)    that Tenant will perform all of the obligations under such instrument of grant, declaration, release or amendment.

To the extent that consideration is received in connection with any such grant, declaration, release or amendment, Tenant may retain such consideration up to the amount of $100,000, plus Tenant's professional fees and out-of-pocket expenses relating to such grant, declaration, release or amendment, and the balance, if any, of such consideration, shall be paid to Landlord.

      (g)    Conveyances for Public Purposes.  As long as no Default has occurred and is continuing hereunder, Landlord will, at Tenant's request, (i) execute petitions to have the Leased Premises annexed to any municipal corporation or utility district, (ii) dedicate, transfer or release portions of the Leased Premises for road, highway or other public purposes, and (iii) execute and deliver to any person any instrument, containing special or limited warranties if applicable, appropriate to confirm or effect such sale, transfer, annexation or

dedication, upon receipt by Landlord of a certificate of Tenant and Guarantor, signed by the President or a Vice President of Tenant and Guarantor stating:

(A)     with respect to any action taken pursuant to clause (iii) above, (1) the consideration being paid for such interest, (2) that such consideration is not less than the fair market value of such interest, as determined by Tenant and Guarantor, and (3) such action is being taken in anticipation that such interest would otherwise be taken by Condemnation;

(B)     that the Leased Premises (including all related easements), following such sale, transfer, annexation or dedication, (1) constitutes an integrated economic unit for use in Tenant's Business, including sufficient parking and all necessary and required utilities, (2) is a contiguous parcel of land, without gap or hiatus, (3) has adequate access to and from public highways, and (4) is not in violation of any Legal Requirement or any restrictive covenant or other agreement applicable thereto;

(C)     that, in the judgment of Tenant and Guarantor, such sale, transfer, annexation or dedication will not lessen the value of the Leased Premises beyond a *de minimus* reduction;

(D)     the consideration to be received in connection with such sale, transfer, annexation or dedication;

(E)     that upon such sale, transfer, annexation or dedication, this Lease and the Guaranty shall remain in full force and effect and Tenant and Guarantor shall remain fully obligated under this Lease and the Guaranty without any reduction of Rent, Additional Monetary Obligations or other sums payable under this Lease or the Guaranty; and

(F)     that Tenant will perform all of the obligations under any instrument to be executed and delivered pursuant to clause (iii) above or under such petition.

Tenant may retain any consideration received in connection with such sale, transfer, annexation or dedication, up to the amount of $100,000, plus Tenant's professional fees and out-of-pocket expenses relating to such sale, transfer, annexation or dedication, and the balance, if any, of such consideration, shall be paid to Landlord. If such sale, transfer, annexation or dedication occurs during the Initial Term, then, to the extent that any portion of such consideration is retained by Landlord, (i) Cost as set forth in Exhibit I hereto shall be reduced by the amount of such consideration retained by Landlord, and (ii) each installment of Rent, payable thereafter during the Initial Term commencing with the second Rent Payment Date subsequent to the date of such sale, transfer, annexation or dedication, shall be reduced by an amount

equivalent to the product resulting from an equation, the numerator of which is the amount of such consideration retained by Landlord, and the denominator of which is the number of Rent Payment Dates remaining in the Initial Term.

8.    **USE AND MAINTENANCE OF PREMISES; QUIET ENJOYMENT.**

    (a)    Use. The Leased Premises may be used as a retail supermarket store in Tenant's Business or for any other lawful purpose, except that the Leased Premises shall not be used for any purpose which shall (i) violate any Legal Requirement or any insurance policy in effect with respect to the Leased Premises, or any covenants, restrictions or agreements applicable to the Leased Premises; or (ii) constitute a public or private nuisance or waste. The foregoing use limitations shall not be construed to limit Tenant's ability to vacate the Leased Premises pursuant to paragraph 18(b).

    (b)    Maintenance. Tenant shall at all times maintain the Leased Premises in safe condition, and shall provide normal and customary maintenance and repair (which shall include structural or non-structural and foreseen or unforeseen repairs) of the Leased Premises consistent with good property management practices, ordinary wear and tear excepted. Landlord shall not be required to maintain, repair or rebuild the Leased Premises in any way, and Tenant hereby expressly waives the right to make repairs or Alterations at the expense of Landlord pursuant to any Legal Requirement now or hereafter in effect. All such repairs or Alterations by Tenant shall be done in a good and workmanlike manner.

    (c)    Replacement Equipment. Tenant shall from time to time replace with other operational equipment or parts (the "Replacement Equipment") any of Landlord's Equipment (the "Replaced Equipment" ) which shall have become worn out, obsolete or unusable for the purpose for which it is intended, been taken by a Condemnation, or been lost, stolen, damaged or destroyed. Tenant shall repair, at its sole cost and expense, all damage to the Leased Premises caused by the removal of the Replaced Equipment or of Tenant's Equipment, or the installation of the Replacement Equipment. All Replacement Equipment shall become the property of Landlord, shall be free and clear of all Liens and rights of others, and shall become a part of the Landlord's Equipment to the same extent as the Replaced Equipment was part of the Landlord's Equipment.

    (d)    Landlord's Covenant of Quiet Enjoyment. As long as no Event of Default exists hereunder, Landlord covenants to do no act nor to authorize any act to disturb the peaceful and quiet occupation and enjoyment of the Leased Premises by Tenant.

    (e)    Landlord's Right of Entry. Landlord and any Mortgagee shall have the right (but not the obligation) to enter upon the Leased Premises for the purpose of inspection and/or making any repairs or Alterations which may be necessary by

reason of Tenant's failure to comply with the provisions of subparagraphs (b) or (c) above or in paragraphs 14 or 15 below. Except in case of emergency, the right of entry shall be exercised at reasonable times, at reasonable hours and upon reasonable prior notice to Tenant. In case of emergency, Landlord shall not be obligated to provide prior notice of entry upon the Leased Premises; however, as soon as reasonably practical following such entry, Landlord shall notify Tenant of such entry, the nature of the emergency, and the action taken. Except as provided in the next sentence, all costs and expenses relating to Landlord's or Mortgagee's inspections shall be borne by Landlord and Mortgagee, respectively. Tenant agrees to pay all reasonable costs and expenses of inspections by Landlord or Mortgagee if Tenant is in monetary Default or Landlord or Mortgagee have reason to believe that Tenant is in material non-monetary Default and as a result of any such inspection, the Leased Premises is determined or confirmed to be in material non-compliance with applicable requirements set forth in this Lease. If as a result of any inspection by Landlord or Mortgagee it is determined that repairs or Alterations are necessary, the cost of all such work, if not paid by Tenant in accordance with this Lease, shall be Additional Monetary Obligations, and Tenant shall pay the same to Landlord (or Mortgagee), together with interest thereon at the Default Rate from the time of demand for payment by Landlord (or Mortgagee) to Tenant, until paid by Tenant, immediately upon written demand therefor and upon submission to Tenant of evidence of Landlord's (or Mortgagee's) payment of such costs. Landlord also shall have the right to conduct, at is sole cost and expense, such environmental audits or assessments of the Leased Premises as Landlord may elect, and if such audit or assessment discloses any Hazardous Condition, then Tenant's obligations with respect thereto shall be governed by paragraph 20. Any such audits or assessments conducted by Landlord shall not unreasonably interfere with the continuing operation of Tenant's Business on the Leased Premises, and the written report of such audit or assessment shall name Tenant as an intended beneficiary of such report.

(f)    Subordination, Nondisturbance and Attornment. Upon the request of Mortgagee, Landlord, Tenant and Mortgagee shall enter into a "subordination, nondisturbance and attornment" agreement in form and content reasonably acceptable to Landlord, Tenant and Mortgagee, pursuant to which Tenant shall subordinate its leasehold interest in the Leased Premises to the lien of the Mortgage, and shall agree to attorn to Mortgagee, as successor landlord, if Mortgagee succeeds to Landlord's interest in the Leased Premises, provided that Tenant's tenancy will not be disturbed as long as Tenant is performing its obligations under this Lease.

(g)    Utilities. Tenant shall, at Tenant's sole expense, supply, the Leased Premises with electricity, water, sewer, heating, ventilating and air conditioning, telephone and other communication services, and pay the cost thereof as Additional Monetary Obligations.

9.    **TENANT'S RIGHT OF FIRST REFUSAL.**  Tenant shall have the right of first refusal to purchase the Leased Premises as hereinafter set forth.  If at any time during the Term Landlord shall receive a bona fide offer (other than at public auction) from a third person (except in lieu of exercise of the power of eminent domain) for the purchase of the Leased Premises, which offer Landlord desires to accept, Landlord shall promptly deliver to Tenant a copy of such offer.  Within 5 Business Days after Tenant's receipt of a copy of such offer delivered to Tenant prior to the second anniversary of the Commencement Date, or within 15 days after Tenant's receipt of a copy of such offer delivered to Tenant on or after the second anniversary of the Commencement Date, Tenant may elect to purchase the Leased Premises on the same terms and conditions as those set forth in such offer.  The foregoing right of first refusal shall not apply to an offer incidental to the enforcement of a Mortgage.  If Tenant does not accept such offer within the time herein specified, then Tenant's right of first refusal shall be considered waived as to such purchase offer; provided, however, that Tenant's right of first refusal shall be a continuing right as to any subsequent purchase offer subject to this <u>paragraph 9</u>.  The right of first refusal in this <u>paragraph 9</u> shall be inapplicable to a transfer upon foreclosure of the Mortgage, including the giving by Landlord of a deed in lieu of foreclosure or to any subsequent transfer by Mortgagee to a third person.  In the event that Tenant elects to exercise such right of first refusal, then Landlord shall be obligated to sell to Tenant, and Tenant shall be obligated to purchase from Landlord, the Leased Premises, in accordance with the terms, covenants and conditions set forth in such bona fide offer.

10.    **PURCHASE OFFER; PROCEDURE ON PURCHASE.**  If Tenant elects or is required to make a Purchase Offer pursuant to <u>paragraphs 14, 15 or 16</u> of this Lease, then Tenant shall be deemed to have made such Purchase Offer in accordance with the terms of this <u>paragraph 10</u>, at a price equal to the amount determined in accordance with attached <u>Exhibit F</u>.  Unless Landlord shall have rejected such Purchase Offer by notice to Tenant given not later than the 10th day prior to the Termination Date, Landlord shall be conclusively presumed to have accepted such Purchase Offer.  Upon acceptance of such Purchase Offer, Landlord shall transfer the Leased Premises to Tenant or Tenant's designee by special or limited warranty deed, and assign to Tenant or Tenant's designee, without recourse, Landlord's interest in any Net Award or Net Proceeds, if applicable, on the Termination Date upon payment by Tenant of the purchase price therefor, together with all installments of Rent, all Additional Monetary Obligations, and all other sums due and payable under this Lease through and including the Termination Date (however, no Rent will be payable on the Rent Payment Date that is the Termination Date).

(a)    <u>Title to be Conveyed</u>.  Upon any such purchase of the Leased Premises by Tenant or its nominee (excluding any purchase pursuant to <u>paragraph 9</u>), Landlord need not transfer and convey to Tenant or its nominee any better title thereto than Landlord received, and Tenant shall accept such title, subject, however, to all Liens, exceptions and restrictions on, against or relating to the Leased Premises and to all applicable Legal Requirements, but free of the

Lien of the Mortgage and free of any Liens, exceptions and restrictions which have been created by or resulted from acts of Landlord taken without the consent of Tenant.

(b)    Payment of Purchase Price; Conveyance Documents; Other Costs. On the date fixed for Tenant's purchase of the Leased Premises (other than pursuant to paragraph 9), Tenant shall pay to Landlord at its address set forth above, or at any other place designated by Landlord, the purchase price therefor specified herein, in immediately available funds and Landlord shall thereafter deliver to Tenant or Tenant's nominee a special or limited warranty deed which describes the Leased Premises then being sold to Tenant, and conveys and transfers the title thereto which is described in subparagraph (a) above, together with such other instruments as shall be necessary to transfer or assign to Tenant or its designee (without recourse) any other property then required to be sold by Landlord pursuant to this Lease. Tenant shall pay all charges incident to such conveyance and transfer (including, without limitation, reasonable attorneys' fees, escrow fees, recording fees, title insurance premiums and all applicable federal, state and local taxes (other than any net income tax, capital gains tax, or franchise tax levied upon or assessed against Landlord)) which may be incurred or imposed by reason of such conveyance and transfer and other instruments.  Upon the completion of such purchase, this Lease and all obligations hereunder (including the obligations to pay Rent and Additional Monetary Obligations) shall terminate, except with respect to obligations and liabilities of Tenant, actual or contingent, under this Lease which arose on or prior to such date of purchase.

11.    **TENANT'S SUBSTITUTION OPTION.**  Tenant's election of the Substitution Option pursuant to paragraph 14, 15 or 16 of this Lease will be subject to the prior written approval of Mortgagee, which approval shall not be unreasonably withheld, conditioned or delayed.  If Tenant elects to exercise the Substitution Option pursuant to paragraph 14, 15 or 16 of this Lease, and Mortgagee has approved the same, then, on the date for substitution set forth in Tenant's notice of such election, Landlord shall transfer the Leased Premises to Tenant or Tenant's nominee by special or limited warranty deed, and assign to Tenant or Tenant's nominee, without recourse, Landlord's interest in any Net Award or Net Proceeds, if applicable, and Tenant shall transfer or cause to be transferred to Landlord, by special or limited warranty deed, other real property and Improvements thereon and equipment therein (other than Tenant's Equipment) used or to be used in Tenant's Business (the "Substitute Property"), provided that all of the following conditions shall have been satisfied:

(a)    No Event of Default has occurred and is continuing under this Lease.

(b)    The Substitute Property is, or will be at the time of Tenant's occupancy thereof, operated in Tenant's Business.

(c)     The lower of Cost or fair market value of the Substitute Property, as indicated in the appraisal provided pursuant to subparagraph (e) below, shall equal or exceed the higher of: (i) the original Cost of the Leased Premises (plus the Expansion Cost, if applicable), and (ii) the then appraised value of the Leased Premises based on land value and building replacement cost.

(d)     With respect to any Substitute Property on which construction of the Improvements was completed within 2 years of the Substitution Date, Landlord and Mortgagee shall have received a certificate of Tenant and Guarantor, signed by the President or a Vice President of Tenant and Guarantor, setting forth the cost to Tenant of acquiring the land portion of such Substitute Property, of construction of the Improvements thereon, and of acquisition and installation of the landlord's equipment therein, if any, which may include such items as are included in the definition of Cost with respect to the Leased Premises.

(e)     With respect to any Substitute Property on which construction of the Improvements was completed more than 2 years prior to the Substitution Date, Landlord and Mortgagee shall have received an appraisal, made by an independent appraiser at Tenant's expense selected by Tenant and approved by Landlord and Mortgagee, meeting standards generally accepted at the time by institutional mortgage lenders, of the fair market value of such Substitute Property based on land value and building replacement cost as of a date within 90 days prior to the Substitution Date.

(f)     With respect to the Leased Premises, Landlord and Mortgagee shall have received an appraisal, made by an independent appraiser at Tenant's expense selected by Tenant and approved by Landlord and Mortgagee, meeting standards generally accepted at the time by institutional mortgage lenders, of the fair market value of the Leased Premises based on land value and building replacement cost as of a date within 90 days prior to the Substitution Date.

(g)     With respect to the Substitute Property, Landlord shall have received, in the form of this Lease and the Guaranty, a substitute lease (the "Substitute Lease") and a substitute guaranty (the "Substitute Guaranty") duly authorized, executed and delivered by Tenant and Guarantor, and Mortgagee shall have received, in the form of the Loan Documents, substitute Loan Documents (the "Substitute Loan Documents") duly authorized, executed and delivered by Landlord, creating a first lien on the Substitute Property, and which shall otherwise be in form and substance satisfactory to Mortgagee.

(h)     Landlord and Mortgagee shall have received evidence that, on the Substitution Date, Landlord has good and marketable and indefeasible fee simple title to the Substitute Property, subject only to Permitted Encumbrances (other than matters described in clause (ii) of the defined term "Permitted Encumbrances") and that all appropriate recordings, registrations and filings with

respect to the Substitute Lease and Substitute Loan Documents have been made.  A title insurance policy evidencing such marketable and indefeasible fee simple title and the priority of Mortgagee's lien, together with an ALTA "as built" survey, shall be provided by Tenant, at its expense.  Landlord and Mortgagee each shall have received an as-built survey and an owners and loan policy of title insurance, respectively, in the forms and with the endorsements required with respect to the Leased Premises on the Commencement Date.

(i)     Landlord and Mortgagee shall have received an ASTM standard "phase I" environmental assessment of the Substitute Property, prepared by an environmental engineering firm selected by Tenant and reasonably acceptable to Landlord and Mortgagee, and engaged at Tenant's expense, showing that the Substitute Property is free of Hazardous Substances, except as may be permitted pursuant to the provisions of paragraph 20 below.

(j)     All necessary approvals, authorizations and consents of all governmental bodies (including courts) having jurisdiction with respect to the transactions contemplated by this paragraph 11 shall have been obtained and all taxes, fees and other charges payable in connection therewith shall have been paid.

(k)   Landlord and Mortgagee shall have received all other documentation, including opinions and evidence of corporate authorizations, required to be furnished by Tenant and Guarantor with respect to the Leased Premises, this Lease and the Guaranty on the Commencement Date to the same extent, with the same effect and subject to the same approvals as if the Substitute Property had been the Leased Premises and such other documents and evidence of facts relevant to underwriting decisions as they may reasonably request. Tenant shall be obligated to pay all costs and expenses incurred by it, Landlord or Mortgagee in connection with the transaction contemplated by this paragraph 11, including the reasonable fees and expenses of counsel to Landlord and Mortgagee.

12.   **PAYMENT OF IMPOSITIONS AND ADDITIONAL OBLIGATIONS; COMPLIANCE WITH LAW**.

(a)     Impositions.  Subject to the provisions of paragraph 19, and except as otherwise provided in this paragraph 12(a), Tenant shall, before delinquency thereof, pay and discharge the following whether the same became due and payable before, on or after the Commencement Date (collectively, the "Impositions"):    all taxes (including sales, use, and gross rental taxes), assessments, levies, fees, water and sewer rents and charges, utilities and communications taxes and charges and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are, at any time, prior to or during the Term, imposed upon or assessed against (i) the

Leased Premises, (ii) any Rent, Additional Monetary Obligations or other sum payable hereunder, (iii) this Lease, the leasehold estate created hereby, or (iv) the acquisition, occupancy, leasing, use, possession or operation of the Leased Premises (including without limitation, any taxes on revenues, rents, income, awards, proceeds, capital gains, profits, excess profits, gross receipts, sales, use, excise and other taxes, duties or imports whether similar or not in nature, assessed, levied or imposed against Tenant, Landlord or the Leased Premises by any governmental authority). If any assessment may be paid in installments, Tenant shall have the option to pay such assessment in installments; in such event, Tenant shall be liable only for those installments which become due and payable during the Term. Tenant shall prepare and file all tax reports required by governmental authorities which relate to the Impositions. Tenant shall deliver to Landlord copies of all receipts for payment of ad valorem real and personal property taxes that are Impositions, and upon Landlord's request, shall deliver to Landlord copies of receipts for payment of any other Imposition. Landlord shall either request the applicable taxing authority to deliver tax notices or tax bills directly to Tenant, or provide Tenant with complete and correct copies of such tax notices or tax bills promptly upon Landlord's receipt thereof. Notwithstanding the foregoing, Impositions will not include federal, state or local (i) franchise, capital stock or similar taxes, of Landlord, (ii) net income, net rental, excess profits or other taxes, of Landlord, or (iii) any estate, inheritance, succession, gift, capital levy or similar tax, unless such taxes referred to in clauses (i) and (ii) above are in lieu of, or a substitute for, any tax, assessment, levy or charge which, if it were in effect on the Commencement Date, would be payable by Tenant under this Lease.

(b)   <u>Compliance with Law</u>. Subject to the provisions of <u>paragraph 19</u>, Tenant shall at all times comply with and cause the Leased Premises to comply with and conform to all Legal Requirements applicable to the Leased Premises or its ownership, occupancy or use, including those which require structural, unforeseen or extraordinary changes to the Leased Premises.

(c)   <u>Additional Obligations</u>. Subject to the provisions of <u>paragraph 5(b)</u>, <u>paragraph 7</u> and <u>paragraph 12(a)</u> above, Tenant shall pay and perform all obligations of Landlord, as the owner of the Leased Premises, that may now or hereafter exist under any Permitted Encumbrances or any other matter that would be a Permitted Encumbrance created by or with the consent of Tenant.

(d)   <u>Year 2000 Compliance</u>. Tenant shall take all action necessary to assure that, on or before October 1, 1999, its material computer based systems are Year 2000 Compliant and Ready, except to the extent that non-compliance with this covenant will not have and could not reasonably be expected to have a Material Adverse Effect. Upon Landlord's request, Tenant shall provide Landlord with commercially reasonable assurance of Tenant's Year 2000 compatibility consistent with the requirements of this <u>paragraph 12(d)</u>.

13.   **INSURANCE.**

(a)   Type of Insurance.  Tenant shall maintain at its sole cost and expense the following insurance on the Leased Premises:

(i)   Insurance (including flood insurance) against all risk of direct physical loss or damage to the Improvements and Landlord's Equipment in amounts not less than the full replacement cost of the Improvements and Landlord's Equipment, if the same are actually replaced or actual cash value (replacement cost minus depreciation) if the same are not replaced, excluding footings and foundations and other parts of the Improvements which are not insurable.

(ii)   General public liability insurance against claims for bodily injury, death or property damage occurring on, in, or about the Leased Premises with combined single limit coverage of not less than $10,000,000.  Policies for such insurance shall be for the mutual benefit of Landlord, Tenant and any Mortgagee.

(iii)   Workers' compensation insurance covering all persons employed in connection with any work done on or about the Leased Premises for which claims for death or bodily injury could be asserted against Landlord, Tenant or the Leased Premises, or in lieu of such workers' compensation insurance, a program of self-insurance complying with the rules, regulations and requirements of the appropriate agency of the State.

(iv)   Any other insurance coverage that is customarily carried by owners or tenants of similar properties in the same geographic area and engaged in businesses similar to Tenant's Business.

(b)   Insurance Requirements; "Self-Insurance".  Except as provided in the second paragraph of this subparagraph (b) the insurance required by paragraph 13(a) shall be written by companies of recognized financial standing which are rated A- or better by A.M Best Company or A3 or better by Moody's Investors Services, in either case with asset size rating of "VIII" or better by A.M. Best Company.  The insurance (i) shall be for a term of not less than 12 months, (ii) shall be in amounts sufficient at all times to satisfy any coinsurance requirements thereof, and (iii) shall (except for the workers' compensation insurance referred to in subparagraph (a)(iii) above) name Landlord, Tenant and any Mortgagee as insured parties, as their respective interests may appear.  If said insurance or any part thereof shall expire, be withdrawn, become void by breach of any condition thereof by Tenant, or become void or unsafe by reason of the failure or impairment of the capital of any insurer, or if for any other

reasonable cause said insurance shall become unsatisfactory to Landlord or Mortgagee, Tenant shall promptly obtain new or additional insurance satisfactory to Landlord and Mortgagee.  Tenant shall provide Landlord with a copy of all such insurance policies.

Notwithstanding the above, as long as Tenant is not in Default hereunder and Winn-Dixie's Consolidated Tangible Net Worth exceeds $500,000,000, Tenant may "self-insure" each of the coverages described in paragraph 13(a).  If Tenant has "self-insured" and a claim is made or a loss incurred which would be covered by the insurance described in paragraph 13(a) above, then Tenant shall be liable to and shall indemnify and hold harmless Landlord and/or a Mortgagee (as their interests may appear) against any such claim or loss and shall pay any settlement or judgment resulting therefrom.  As to Property Losses, Tenant shall pay the full replacement cost thereof, if the same are actually replaced or actual cash value (replacement cost minus depreciation) if the same are not replaced.  Sums due from Tenant in lieu of insurance proceeds because of such "self-insurance" shall be treated as insurance proceeds for all purposes under this Lease.

(c)     Mortgagee Loss Payable Clauses; Cancellation of Insurance.  Each insurance policy referred to in clause (i) of subparagraph (a) above shall contain a mortgagee loss payable clause in favor of any Mortgagee.  Each policy shall provide that it may not be canceled except after 30 days prior notice to Landlord and any Mortgagee.  Each such policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forfeiture of all or a part of such insurance payment, (ii) the occupation or use of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Mortgagee pursuant to any provision of the Mortgage upon the happening of an event of default thereunder, or (iv) any change in title or ownership of the Leased Premises.

(d)     Payment of Premiums; Policy Replacements.  Tenant shall pay as they become due all premiums for the insurance required by this paragraph 13, shall renew or replace each policy at least 40 days prior to the expiration of such policy, and shall deliver to Landlord a renewal certificate on ACORD-27 Form or its equivalent at least 30 days prior to the expiration of the preceding policy.  Tenant shall provide Landlord with reasonable proof of payment of such premiums promptly following Tenant's payment of such premiums.  In the event of Tenant's failure to comply with any of the foregoing requirements within 15 business days after notice to Tenant thereof, Landlord shall be entitled to procure such insurance.  Any sums expended by Landlord in procuring such insurance shall be Additional Monetary Obligations and shall be repaid by Tenant immediately upon demand therefor by Landlord, together with interest thereon

at the Default Rate, from and including the date of payment by Landlord to and including the date such sums are fully paid by Tenant.

(e)    Blanket Policies.  Any insurance which Tenant is required to obtain pursuant to paragraph 13(a) may be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant or Guarantor, provided that such "blanket" policy or policies otherwise comply with the provisions of this paragraph 13.  If any such blanket policy contains an aggregate limits clause, then Tenant will provide Landlord and Mortgagee a reserved amount endorsement to such policy that provides an allocation of blanket coverage on a per location or per project basis.

14.    **PROPERTY LOSS.**

(a)    Property Loss Claims.  In the event of any Property Loss, Tenant shall give Landlord and Mortgagee immediate notice thereof.  Landlord, and Mortgagee by its acceptance of this Lease, hereby authorize Tenant, subject to Landlord's and any Mortgagee's approval of any proposed terms, to negotiate, in its name or in Landlord's or Mortgagee's name, the adjustment, collection, settlement, compromise or payment of all Property Loss claims under any of the insurance policies required by paragraph 13 and to execute and deliver on behalf of Landlord and Mortgagee all necessary proofs of loss, receipts, vouchers and releases required by the insurers in connection with a Property Loss.  Landlord and Mortgagee agree to sign, upon request of Tenant, all such proofs of loss, receipts, vouchers and releases.  Landlord and Mortgagee may elect to monitor or participate in the adjustment, collection, settlement, compromise or claims payment process, and the reasonable costs and expenses thereof, including Landlord's and Mortgagee's reasonable attorneys' fees and costs, shall be chargeable to and paid by Tenant.

Except as provided in subparagraph (b) below, in the event of any Property Loss (whether or not insured against), this Lease shall continue in full force and effect without abatement or reduction of Rent, Additional Monetary Obligations or any other sums payable by Tenant hereunder.

Any Net Proceeds received for any Property Loss shall be payable to, and held by Mortgagee, subject to the provisions of this paragraph 14.  Each insurer is hereby authorized and directed to make payment under said policies, including return of unearned premiums, directly to Mortgagee instead of to Landlord and Tenant jointly; and Landlord and Tenant hereby appoint Mortgagee as attorney-in-fact to endorse any draft therefor.

Promptly after any Property Loss, Tenant shall commence and diligently continue to restore the Leased Premises as nearly as possible to its value, condition and character immediately prior to such Property Loss, or as otherwise

reasonably acceptable to Landlord and otherwise in accordance with all Insurance Requirements and legal requirements and the provisions of this Lease, whether or not the Net Proceeds are sufficient to cover the cost of restoration, and Mortgagee shall make available to Tenant any Net Proceeds for such Property Loss received by Mortgagee, subject to the terms and conditions set forth in paragraph 17.

(b)    Termination Upon Loss.  If a substantial portion of the Leased Premises suffers a Property Loss such that it would be uneconomic for Tenant to restore the Leased Premises to its condition prior to such Property Loss for use in Tenant's Business, then Tenant may, not later than 60 days after such Property Loss, give to Landlord notice of its intention to terminate this Lease on a Termination Date specified in such notice, and Tenant shall thereupon have no obligation to restore the Leased Premises.  Such notice shall be accompanied by a certificate of Tenant and Guarantor, signed by the President or any Vice President of Tenant and Guarantor, stating that, in the judgment of the Executive Committee of the Board of Directors of Tenant and Guarantor, rebuilding, restoring or repairing the Leased Premises for continued use and occupancy in the business carried on by Tenant on the Leased Premises immediately prior to such Property Loss would be uneconomic.  As used in this subparagraph (b), "substantial portion" means 50% or more of the replacement cost of the Improvements.  If the Termination Date occurs during the Initial Term, as part of such notice, Tenant shall elect to either (x) give to Landlord a Purchase Offer, (y) exercise its Substitution Option with respect to the Leased Premises pursuant to paragraph 11, or (z) elect to make a termination payment on the Termination Date equal to the purchase price which Tenant would be obligated to pay as the purchase price for the Leased Premises pursuant to attached Exhibit F had Tenant made a Purchase Offer pursuant to clause (x) above (the "Property Loss Termination Payment").  In the event that (1) the Termination Date occurs during an Extended Term, or if Landlord rejects such Purchase Offer pursuant to paragraph 10, then the Net Proceeds shall belong to Landlord, or (2) Tenant elects to make the Property Loss Termination Payment as provided in clause (z) above, then the Net Proceeds shall belong to Tenant and Landlord shall assign any and all rights of Landlord therein to Tenant, and in either event this Lease shall terminate on the Termination Date upon the payment by Tenant of all installments of Rent, all Additional Monetary Obligations and all other sums then due and payable under this Lease through and including the Termination Date (however, no Rent will be payable on the Rent Payment Date that is the Termination Date).

15.    **CONDEMNATION**.

(a)    Assignment of Condemnation Award.  Tenant shall notify Landlord and Mortgagee promptly upon Tenant's receipt of notice served by a condemning authority of a condemnation proceeding affecting the Lease Premises, but Tenant's failure to give such notice shall not constitute an Event of Default hereunder.  Subject to the provisions of this paragraph 15 and

paragraph 17, Tenant hereby irrevocably assigns to Landlord any award or payment to which Tenant is or may be entitled by reason of any Condemnation, whether the same shall be paid or payable for Tenant's leasehold interest hereunder or otherwise; but nothing in this Lease shall be deemed to (i) assign to Landlord any award or payment on account of Tenant's Equipment or other tangible property, moving expenses, loss of business, and similar claims to the extent Tenant shall have a right to make a separate claim therefor against the condemnor, or (ii) impair Tenant's right to any award or payment resulting from such separate claim. If Landlord receives notice of any proposed Condemnation from any person having the power of eminent domain, Landlord shall promptly give Tenant notice of such proposed Condemnation; the failure of Landlord to give such notice to Tenant shall not affect Tenant's obligations under this paragraph 15 or any other provision of this Lease.

(b)    Total or Substantial Condemnation.    If (i) the entire Leased Premises, or (ii) at Tenant's election, any substantial portion of the Leased Premises, shall be subject to a Taking, then Tenant shall, not later than 60 days after notice of such Taking, give notice to Landlord of its intention to terminate this Lease on a Termination Date specified in such notice and after such Termination Date shall not use the Leased Premises in its business. Such notice shall be accompanied by a certificate of Tenant and Guarantor, signed by the President or any Vice President of Tenant and Guarantor, stating that, in the judgment of the Executive Committee of the Board of Directors of Tenant and Guarantor: (A) the conditions referred to in clause (i) or (ii) above exist with respect to the Leased Premises by reason of such Taking, and (B) continued use and occupancy in the Tenant's Business after restoration would be uneconomic. As used in this subparagraph (b), "substantial portion" means (a) 5% or more of the building space contained in the Improvements, (b) 10% or more of the parking area, (c) 15% or more of the building space and parking area in any combination, (d) taking (other than a temporary taking that, in the judgment of the Executive Committee of the Board of Directors of Tenant, does not cause the continued use and occupancy of the Leased Premises in Tenant's Business to be uneconomic) of any material access to the Leased Premises for which no reasonable alternative is available at a reasonable cost, (e) any Taking that would cause the remainder of the Leased Premises to be in material non-compliance with Applicable Laws, including, without limitation, minimum parking requirements or minimum access requirements, or (f) any Taking following which the Leased Premises cannot reasonably be restored due to the nature of such Taking. If the Termination Date occurs during the Initial Term, as part of such notice, Tenant shall elect to either (x) give to Landlord a Purchase Offer, (y) exercise its Substitution Option with respect to the Leased Premises pursuant to paragraph 11, or (z) elect to make a termination payment on the Termination Date equal to the purchase price for the Leased Premises pursuant to attached Exhibit F had Tenant made a Purchase Offer pursuant to clause (x) above (the "Condemnation Termination Payment"). In the event that (1) the Termination Date occurs during an Extended Term, or if Landlord rejects such Purchase Offer pursuant to paragraph 10, then the Net Award for such Taking shall belong

to Landlord, or (2) Tenant elects to make the Condemnation Termination Payment as provided in clause (z) above, then the Net Award shall belong to Tenant and Landlord shall assign any and all rights of Landlord therein to Tenant, and in either event this Lease shall terminate on the Termination Date upon the payment by Tenant of all installments of Rent, all Additional Monetary Obligations and all other sums then due and payable under this Lease through and including the Termination Date (however, no Rent will be payable on the Rent Payment Date that is the Termination Date).

(c)     Partial Condemnation.  In the event of any Taking of the Land or Improvements which does not result in a termination of this Lease pursuant to subparagraph (b) above, the Term shall nevertheless continue and there shall be no abatement or reduction of Rent, Additional Monetary Obligations or any other sums payable by Tenant hereunder, except as specifically provided in paragraph 17.  Any Net Award for such Taking shall be retained by Mortgagee, subject to the provisions of this subparagraph (c).  Promptly after such Taking, Tenant shall commence and diligently continue to restore the Leased Premises as nearly as possible to their value, condition and character immediately prior to such Taking, whether or not the Net Award is sufficient therefor, and Mortgagee shall make available to Tenant any Net Award received by Mortgagee, subject to the terms and conditions set forth in paragraph 17.

In the event of a Requisition of the Leased Premises, the Net Award for such Requisition allocable to the Term shall be paid to Tenant and this Lease shall continue in full force and effect without any abatement or reduction of the Rent, Additional Monetary Obligations or other sums payable by Tenant hereunder.  Any portion of such Net Award allocable to any period after the expiration or termination of the Term shall belong to Landlord.

(d)     Landlord's Equipment Condemnation.  In the event of any Taking of Landlord's Equipment which does not fall within the provisions of subparagraph (b) above, this Lease shall continue in full force and effect and without any abatement or reduction of Rent, Additional Monetary Obligations or any other sums payable by Tenant hereunder.  Tenant shall, whether or not the Net Award is sufficient for the purpose, promptly replace Landlord's Equipment so taken, in accordance with the provisions of paragraphs 8(c) and 17, and the Net Award for such a Condemnation shall thereupon be payable to Tenant.

(e)     Proceedings.  Tenant shall take all appropriate actions with respect to each Condemnation proceeding, action, negotiation, prosecution and adjustment and shall pay all cost and expenses thereof, including the reasonable cost of Landlord's and Mortgagee's participation therein, provided that Landlord's and Mortgagee's consents shall be required to any settlement or agreement with the condemning authority (except one involving solely an award or payment to which Tenant is entitled under subparagraph (a) above), such consent not to be unreasonably withheld or delayed.

16.   **ECONOMIC ABANDONMENT.** As long as no Default then exists hereunder, if the Leased Premises shall have become uneconomic or unsuitable for continued use and occupancy in the business operations of Tenant or in the business operations of any Affiliate of Tenant, and if the Executive Committee of the Board of Directors of Tenant and Guarantor have decided to and agree to discontinue the use of the Leased Premises in its business operations within one year or less after the date of the delivery of the notice hereinafter referred to in this paragraph 16, or if Tenant, on or before such date of delivery, has already discontinued such use, then Tenant may notify Landlord of its intention to terminate this Lease on a Termination Date specified in such notice. As part of such notice, Tenant shall elect to either (x) give to Landlord a Purchase Offer pursuant to paragraph 10, or (y) exercise its Substitution Option with respect to the Leased Premises pursuant to paragraph 11. If Landlord rejects such Purchase Offer pursuant to paragraph 10, then this Lease shall terminate on the Termination Date upon the payment by Tenant of all installments of Rent, all Additional Monetary Obligations and all other sums then due and payable under this Lease through and including the Termination Date (however, no Rent will be payable on the Rent Payment Date that is the Termination Date).

17.   **RESTORATION.** In the event of any Property Loss referred to in paragraph 14(a) or Taking referred to in paragraph 15(c), Tenant shall, so long as no Event of Default shall have occurred and be continuing, be entitled to receive from Mortgagee periodic disbursements of the Net Proceeds payable in connection with such loss and the Net Award payable in connection with such Taking, but only on the basis of certificates of Tenant, signed by the President or any Vice President of Tenant, delivered to Mortgagee from time to time as such rebuilding, restoration and repair progresses or is completed. Each such certificate shall describe the work for which Tenant is requesting payment, the cost incurred by Tenant in connection therewith, and shall state that such work has been performed in conformity with the requirements of paragraphs 7(b), 7(c), 8(b), 8(c), and 28, the estimated cost of completing such work, and that Tenant has not theretofore received payment for such work. Upon completion of the work described in this paragraph 17, if any Net Proceeds or Net Award remaining after the final payment has been made for such work is less than $100,000, such remaining Net Proceeds or Net Award shall be paid to Tenant. If such remaining Net Proceeds or Net Award is $100,000, or greater than $100,000, such remaining Net Proceeds or Net Award shall, at Landlord's option, be paid to Tenant or retained by Landlord; if retained by Landlord then (i) Cost as set forth in Exhibit I hereto shall be reduced by the amount of such remaining Net Proceeds or Net Award so retained by Landlord, and (ii) each installment of Rent, payable thereafter during the Initial Term commencing with the second Rent Payment Date subsequent to the final payment to Tenant for such work, shall be reduced by 2.1305468500% of such remaining Net Proceeds or Net Award retained by Landlord. If not retained by Landlord, such remaining Net Proceeds or Net Award shall be paid to Tenant. If the cost of any such work required to be done by Tenant pursuant to this paragraph shall exceed the amount of such Net Proceeds or Net Award, the deficiency shall be paid by Tenant. No payments shall be made to Tenant pursuant to this paragraph 17 if any Default

exists under this Lease unless and until such Default shall have been cured or removed.

18.    **ASSIGNMENT AND SUBLEASING; VACATION OF LEASED PREMISES.**

(a)    <u>Assignment and Subleasing.</u> This Lease may be assigned and the Leased Premises may be sublet in whole or in part without the consent of Landlord, (i) as long as the Guaranty and the liability of Guarantor thereunder shall not be reduced thereby, or (ii) if Winn-Dixie is Tenant under this Lease. Each sublease of the Leased Premises shall be subject and subordinate to the provisions of this Lease; provided, however, that furniture, fixtures and equipment installed or provided by any sublessee under such sublease shall be the property of such sublessee and shall not be subject to this Lease. No assignment or sublease of the Leased Premises as permitted by this <u>paragraph 18</u> shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no assignment or sublease or vacancy had occurred. No assignment or sublease of the Leased Premises shall impose any obligations on Landlord under this Lease. In the event of an assignment of the Lease, or "material sublease" of the Leased Premises, Tenant shall deliver to Landlord a copy of such assignment or material sublease, but Tenant's failure to deliver such copy shall not constitute an Event of Default hereunder. In the event of a sublease of the Leased Premises that is not a "material sublease", Tenant shall provide written notice to Landlord of such sublease, but shall not be required to provide a copy of such sublease unless an Event of Default exists. At any time during an Event of Default, full copies of all subleases will be delivered to Landlord upon request. For purposes of the foregoing, the term "material sublease" will mean a sublease or subleases that, either alone or in the aggregate with all other subleases, occupies more than 25% of the Leased Premises; provided, however, that an in-store branch banking facility sublease that occupies less than 10% of the Leased Premises will not constitute a "material sublease".

Tenant hereby irrevocably and unconditionally assigns to Landlord all rents and other sums payable under any sublease of the Leased Premises as additional security for the payment and performance of Tenant's obligations under this Lease; provided, however, that Landlord hereby grants Tenant a license to collect all such rents and other sums solely for Tenant's account so long as no Event of Default has occurred and is continuing. Except as may be permitted under <u>paragraph 28(e)</u> below, Tenant shall not mortgage or pledge this Lease or the leasehold estate created hereby, and any such mortgage or pledge made in violation of this <u>paragraph 18</u> shall be void.

(b)    <u>Vacation of Leased Premises.</u> Subject to the provisions of this <u>subparagraph (b)</u>, Tenant may vacate the Leased Premises without exercising its rights under <u>paragraph 16</u>, provided that the same is made reasonably secure from unauthorized entry during periods of vacancy and the other terms of this Lease (specifically including <u>paragraph 8(b)</u>) are observed and performed. For purposes of this paragraph, the term "vacation" or "vacancy" will mean a partial or complete

termination or cessation of physical occupancy of the Leased Premises. No vacation of the Leased Premises as permitted by this <u>paragraph 18</u> shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no vacancy had occurred. No vacation of the Leased Premises shall impose any obligations on Landlord under this Lease.

19.    **PERMITTED CONTESTS.**  After prior written notice to Landlord and Mortgagee, Tenant shall not be required to (i) pay any Imposition, (ii) comply with any Legal Requirement, (iii) discharge or remove any Lien referred to in <u>paragraphs 7(b) or 28</u>, or (iv) take any action with respect to any encroachment, violation, hindrance, obstruction or impairment referred to in <u>paragraph 7(c)</u> so long as Tenant shall contest, in good faith and at its expense, the existence, the amount or the validity thereof, the amount of the damages caused thereby, or the extent of its or Landlord's liability therefor, by appropriate proceedings which shall operate during the pendency thereof to prevent (A) the collection of, or other realization upon, the Imposition or Lien so contested, (B) the sale, forfeiture or loss of any of the Leased Premises, any interest therein, any Rent or any Additional Monetary Obligations to satisfy the same or to pay any damages caused by the violation of any such Legal Requirement or by any such encroachment, violation, hindrance, obstruction or impairment, (C) any interference with the use or occupancy of the Leased Premises, (D) any interference with the payment of any Rent, any Additional Monetary Obligations or any other sum payable hereunder, and (E) the cancellation of any fire or other insurance policy. If Winn-Dixie's Consolidated Tangible Net Worth shall be less than $500,000,000 at the time of commencement of any such contest, Tenant shall provide to Landlord and Mortgagee a bond of a surety acceptable to Landlord and Mortgagee in an amount satisfactory to Landlord and Mortgagee. While any such proceedings are pending, neither Landlord nor Mortgagee shall have the right to pay, remove or cause to be discharged the Imposition or Lien thereby being contested. Tenant agrees that each such contest shall be promptly and diligently prosecuted to a final conclusion, except that Tenant shall, so long as the conditions of the first sentence of this <u>paragraph 19</u> are at all times complied with, have the right to attempt to settle or compromise such contest through negotiations. Tenant shall pay and save Landlord and Mortgagee harmless against any and all losses, judgments, decrees and costs (including all reasonable attorneys' fees and expenses) in connection with any such contest and shall, promptly after the final determination of such contest, fully pay and discharge the amounts which shall be levied, assessed, charged or imposed or be determined to be payable therein or in connection therewith, together with all penalties, fines, interest, costs and expenses thereof or in connection therewith, and perform all acts the performance of which shall be ordered or decreed as a result thereof. No such contest shall subject Landlord or Mortgagee to the risk of any material civil liability or any criminal liability, penalty or sanction.

20. **ENVIRONMENTAL COVENANTS; INDEMNITY**. Except as set forth in the second sentence of this paragraph 20, and except as disclosed to Landlord and the Mortgagee in writing prior to the Commencement Date, Tenant hereby represents, warrants, covenants and agrees to and with Landlord and the Mortgagee that all operations or activities upon, or any use or occupancy of the Leased Premises by Tenant, or to Tenant's knowledge any other tenant or occupant, is presently and will at all times be in compliance with all Environmental Laws; that Tenant has not at any time engaged in or permitted, and will not engage in or permit, nor to Tenant's knowledge has any existing or previous tenant or occupant of the Leased Premises engaged in or permitted, the occurrence of any Hazardous Condition; and that, to Tenant's knowledge, there does not now exist nor is there suspected to exist any Hazardous Condition on or about the Leased Premises. Tenant discloses to Landlord that Tenant does, or intends to, store, use and sell in Tenant's Business certain products or substances that may be considered Hazardous Substances, and Landlord acknowledges Tenant's right to do so, provided, however, that any such storage, use or sale of such products or substances shall at all times be in compliance with all Environmental Laws. If any past, present or future activity conducted at the Leased Premises, any past, present or future use of the Leased Premises, or any occurrence whether on or off the Leased Premises, (i) causes the Leased Premises to become a hazardous waste treatment storage or disposal facility within the meaning of, or otherwise bring the Leased Premises within the ambit of, any Environmental Laws, (ii) causes the release or threatened release of Hazardous Substances from the Leased Premises within the meaning of, or otherwise bring the Leased Premises within the ambit of, any Environmental Laws, (iii) causes the discharge into any water source or system or the air of any Hazardous Substances which would require a permit under the any Environmental Laws or which would otherwise be a violation of any Environmental Laws, or (iv) creates a Hazardous Condition on the Leased Premises which is in violation of any Environmental Laws, Tenant agrees to promptly notify Landlord and Mortgagee, if any, of any claim made in respect thereof. If Tenant discovers that any Hazardous Condition exists on the Leased Premises in violation of any applicable law (whether or not disclosed in any environmental report issued on or prior to the Commencement Date), Tenant shall promptly notify Landlord and Mortgagee of such condition, and shall with all due diligence, take all remedial, removal and other actions necessary to remediate, remove, contain or clean up such Hazardous Condition in a manner and to the extent required by the applicable Environmental Laws. Tenant agrees to comply with each of the recommendations contained in all environmental reports issued relating to the Leased Premises if such recommendations are necessary to comply with applicable Environmental Laws. Notwithstanding the foregoing, if any Hazardous Condition is or becomes the subject matter of a federal or state "no-action letter," then Tenant shall not be obligated to undertake Remedial Action with respect to, or to investigate further, such known Hazardous Condition, unless subsequently directed by the federal or state agency having jurisdiction over such known Hazardous Condition. TENANT FURTHER AGREES TO PROTECT, INDEMNIFY, SAVE HARMLESS AND

DEFEND LANDLORD AND MORTGAGEE AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS AND EMPLOYEES, IF ANY, FROM AND AGAINST ALL LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES) IMPOSED UPON OR ARISING OUT OF (X) THE EXISTENCE OF HAZARDOUS SUBSTANCES OR HAZARDOUS CONDITIONS ON THE LEASED PREMISES, OR (Y) ANY ACTION OR OMISSION OF TENANT, ITS AGENTS OR EMPLOYEES, WHICH CONSTITUTES A VIOLATION OF, OR CREATES A CONDITION ON THE LEASED PREMISES WHICH IS IN VIOLATION OF, ANY ENVIRONMENTAL LAWS; provided, however, that the foregoing indemnification shall not be deemed to include claims, actions, administrative proceedings, judgments, punitive damages, penalties, fines, costs, liabilities, sums paid in settlement, interest, losses or expenses, that arise in connection with (i) any Hazardous Condition that is determined by proper judicial or administrative procedure to have been introduced to the Leased Premises during any period while Landlord or Mortgagee is in possession of the Leased Premises to the exclusion of Tenant after an Event of Default has occurred or after expiration of the Term or earlier termination of this Lease, or (ii) solely as to Tenant's indemnification of Landlord (and with no effect whatsoever on that indemnification of Mortgagee) as provided above, any Hazardous Condition that is determined by proper judicial or administrative procedure to have been introduced to the Leased Premises by Landlord during the Term.

In the event that any Remedial Action with respect to any Hazardous Conditions that could result in a Claim is required under any Environmental Laws by any judicial order, or by any governmental entity, or in order to comply with the terms, covenants and conditions of this Lease or of any other agreements affecting the Leased Premises, Tenant will perform or cause to be performed the Remedial Action in compliance with such law, regulation, order or agreement. All Remedial Action (other than payment of money) will be performed by one or more contractors, selected by Tenant and under the supervision of a consulting environmental engineer selected by Tenant. All costs and expenses of such Remedial Action will be paid by Tenant including without limitation the charges of such contractor(s) and the consulting environmental engineer, and Landlord's and Mortgagee's reasonable attorneys' fees and costs incurred in connection with monitoring or review of such Remedial Action. If Tenant fails to timely commence, or cause to be commenced, or fails to diligently prosecute to completion, such Remedial Action, then, but not before, Landlord or Mortgagee may, but will not be required or have any obligation to, cause such Remedial Action to be performed, and all costs and expenses thereof, or incurred in connection therewith, will thereupon constitute Claims. All such Claims will be due and payable by Tenant upon demand therefor by Landlord or Mortgagee.

Notwithstanding any provision of this Lease to the contrary, provided that (i) no Default has occurred and is continuing under this Lease, (ii) neither Landlord nor Mortgagee will be exposed or subjected to civil or criminal liability, and (iii) the respective interests of Landlord and Mortgagee in the Leased Premises are not jeopardized or in any way adversely affected, Tenant may contest or cause to be contested, by appropriate action, the application, interpretation or validity of any Environmental Laws or any agreement requiring any Remedial Action pursuant to a good faith dispute regarding such application, interpretation or validity of such Environmental Laws or agreement requiring such Remedial Action. During the pendency of any such permitted contest, Tenant may delay performance of Remedial Action or compliance with the Environmental Laws or agreement requiring such Remedial Action, provided that (i) Tenant actually contests and prosecutes such contest by appropriate proceedings conducted in good faith and with due diligence to resolution, (ii) prior to any such delay in compliance with any Environmental Laws or any Remedial Action requirement on the basis of a good faith contest of such requirement, Tenant will have given Landlord and Mortgagee written notice that Tenant intends to contest or will contest or cause to be contested the same, and will have given such security or assurances as Landlord or Mortgagee reasonably may request to ensure compliance with the Legal Requirements pertaining to the Remedial Action (and payment of all costs, expenses, interest and penalties in connection therewith) and to prevent any sale, forfeiture or loss of all or any part of the Leased Premises by reason of such noncompliance, delay or contest, and (iii) prior to any such delay in compliance with any Environmental Laws or any Remedial Action requirement on the basis of a good faith contest of such requirement, Tenant will have taken such steps as may necessary to prevent or mitigate any continuing occurrence of any existing or suspected Hazardous Condition giving rise to the contested Remedial Action requirement. Subject to the terms and conditions set forth above, during the pendency of any such permitted contest resulting in a delay of performance of any required Remedial Action, Landlord agrees that it will not perform such Remedial Action requirement on behalf of Tenant.

The foregoing provisions shall survive the expiration or earlier termination of this Lease, but shall finally terminate and cease upon the expiration of any applicable statute of limitation of actions which has not been waived by Tenant as to any potential and unasserted Claim.

21.    **GENERAL INDEMNIFICATION.**    Tenant agrees, at its sole cost and expense, to defend, pay, protect, indemnify, save and hold harmless Landlord and Mortgagee from and against any and all liabilities, losses, damages, penalties, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature whatsoever, howsoever caused, arising in or about the Leased Premises during the Term or Extended Term, whether or not arising from (i) any injury to, or death of, any person, or any loss of, or damage to, any property on the Leased Premises, or on adjoining

sidewalks, streets or ways, or connected with the use, condition or occupancy thereof (unless caused by the negligent acts or improper conduct of Landlord or Mortgagee), whether or not Landlord or Mortgagee has or should have knowledge or notice of the defect or conditions causing or contributing to such injury, death, loss or damage, (ii) any Claims, (iii) any Default under this Lease, or any violation by Tenant of any provision of any contract or agreement to which Tenant is a party or by which it is bound, affecting this Lease or the Leased Premises, or (iv) any contest referred to in <u>paragraph 19 or 20</u>. The obligations of Tenant under this <u>paragraph 21</u> shall survive the expiration or termination of this Lease until the expiration of the applicable statute of limitations which has not been waived by Tenant for such action.

22.    **DEFAULT PROVISIONS.**

    (a)    <u>Events of Default</u>. The occurrence of any one or more of the following shall constitute an Event of Default under this Lease:

        (i)    if any installment of Rent or any payment of Additional Monetary Obligations due from Tenant is an Overdue Payment that is not paid within 10 days following the due date thereof; or

        (ii)    a failure by Tenant to duly perform and observe, or a violation or breach of, any other material provision hereof which failure, violation or breach shall continue for a period of 30 days after notice to Tenant thereof; provided that if such failure, violation or breach cannot be cured by mere payment of money and cannot with diligence be cured within such 30-day period, the period to cure such failure, violation or breach shall be extended for such longer period of time not to exceed 12 months from the date of such failure, violation or breach, as is reasonably necessary to cure such failure, violation or breach so long as Tenant shall commence to cure such failure, violation or breach within said 30-day period and actively, diligently and in good faith proceed with continued curing thereof until it shall be fully cured;

        (iii)    any representation or warranty made by Tenant or Guarantor in this Lease, the Guaranty or any other document delivered in connection with the execution and delivery of this Lease or the Guaranty or pursuant to this Lease or the Guaranty proves to be incorrect in any material respect;

        (iv)    Tenant or Guarantor shall voluntarily be adjudicated a bankrupt or insolvent, seek or consent to the appointment of a receiver or trustee for Tenant, Guarantor or the Leased Premises, file a petition seeking relief under the bankruptcy or other similar laws of the United

States, any state or any jurisdiction, make a general assignment for the benefit of creditors, or admit in writing its inability to pay its debts as they mature;

(v)     a court shall enter an order, judgment or decree appointing a receiver or trustee for Tenant, Guarantor or the Leased Premises or approving a petition filed against Tenant or Guarantor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and such order, judgment or decree shall remain in force, undischarged or unstayed, 60 days after it is entered;

(vi)     Tenant or Guarantor shall be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution, or shall, in any manner, permit the divestiture of all or substantially all of its assets other than in connection with a merger or consolidation of Tenant into, or a sale of all or substantially all of Tenant's assets to, another corporation provided that the survivor of such merger or consolidation, or the purchaser of such assets, shall assume all of Tenant's obligations under this Lease by a written instrument, in form and substance satisfactory to Landlord and Mortgagee, accompanied by an opinion of counsel, satisfactory to Landlord and Mortgagee, stating that such instrument of assumption is valid, binding and enforceable against the parties thereto in accordance with its terms, and provided further that, immediately after giving effect to any such merger or consolidation or sale of such assets, the survivor of such merger or consolidation, or the purchaser of such assets, as the case may be, shall have a Consolidated Tangible Net Worth of not less than $1 billion;

(vii)     the estate or interest of Tenant in the Leased Premises shall be levied upon or attached in any proceeding and such proceeding shall not be vacated or discharged within sixty 60 days after such levy or attachment; or

(viii)     Guarantor shall default under the Guaranty.

(b)     Landlord's Remedies Upon Tenant Default.  If an Event of Default shall have occurred, Landlord shall have the right at its option, then or at any time thereafter during the continuance of such Event of Default, to do any one or more of the following without demand upon or notice to Tenant:

(i)     Landlord may give Tenant notice of Landlord's intention to terminate this Lease on a date specified in such notice.  Upon the date therein specified, the Term and the estate hereby granted and all rights of Tenant hereunder shall expire and terminate as if such

date were the date hereinbefore fixed for the expiration of the Term, but Tenant shall remain liable for all its obligations hereunder, including its liability for Rent, Additional Monetary Obligations or any other sums payable under this Lease, as hereinafter provided.

(ii)     Landlord may, whether or not the Term of this Lease shall have been terminated pursuant to clause (i) above, (x) give Tenant notice to surrender the Leased Premises to Landlord immediately or on a date specified in such notice, at which time Tenant shall surrender and deliver possession of the Leased Premises to Landlord, or (y) reenter and repossess the Leased Premises by summary proceedings, ejectment or any other means or procedure. Upon or at any time after taking possession of the Leased Premises, Landlord may remove any persons or property therefrom. Landlord shall be under no liability for, or by reason of, any such entry, repossession or removal.   No such entry or repossession shall be construed as an election by Landlord to terminate this Lease unless Landlord gives a written notice of such intention to Tenant pursuant to clause (i) above.

(iii)     After repossession of the Leased Premises pursuant to clause (ii) above, whether or not this Lease shall have been terminated pursuant to clause (i) above, Landlord shall have the right to relet the Leased Premises or any part thereof to such tenant or tenants for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) for such rent, on such conditions (which may include concessions or free rent) and for such uses as Landlord, in its absolute discretion, may determine; and Landlord may collect and receive any rents payable by reason of such reletting. Landlord shall not be responsible or liable for any failure to relet the Leased Premises or any part thereof or for any failure to collect any rent due upon any such reletting.   Landlord may make such Alterations as Landlord in its sole discretion may deem advisable. Tenant agrees to pay Landlord, as Additional Monetary Obligations, immediately upon demand, all reasonable expenses incurred by Landlord in obtaining possession, in performing Alterations and in reletting the Leased Premises, including reasonable fees and commissions of attorneys, architects, agents and brokers.

(iv)     After repossession of the Leased Premises pursuant to clause (ii) above, whether or not this Lease shall have been terminated pursuant to clause (i) above, Landlord shall have the right to sell the Leased Premises at public or private sale, as

Landlord may determine, or otherwise dispose of, use, operate, lease to others, or keep idle, all or any part of the Leased Premises, as Landlord may determine, all free and clear of any rights of Tenant except as hereinafter set forth in this paragraph 22 and without any duty to account to Tenant with respect to such action or inaction or any proceeds with respect thereto; provided, however, that any such sale or other disposition shall be made in compliance with any mandatory provisions of applicable law which may not be waived.

(v)    Landlord may exercise any other right or remedy now or hereafter existing by law or in equity.

(c)    No Relief of Obligations. No expiration or termination of this Lease, or repossession or reletting of the Leased Premises pursuant to this paragraph 22 or any other provision of this Lease, by operation of law or otherwise, shall relieve Tenant of any of its liabilities and obligations hereunder, including the liability for payment of Rent, Additional Monetary Obligations and all other sums payable hereunder, all of which shall survive such expiration, termination, repossession or reletting.

(d)    Current Damages. In the event of any expiration or termination of this Lease or repossession of the Leased Premises by reason of the occurrence of an Event of Default, Tenant shall pay to Landlord all Rent, all Additional Monetary Obligations and all other sums required to be paid by Tenant to and including the date of such expiration, termination or repossession and, thereafter, Tenant shall, until the end of what would have been the Term in the absence of such expiration, termination or repossession, and whether or not the Leased Premises shall have been relet, be liable to Landlord for and shall pay to Landlord as liquidated and agreed current damages (i) all Rent, all Additional Monetary Obligations and all other sums which would be payable under this Lease by Tenant in the absence of such expiration, termination or repossession, less (ii) the amount Tenant can prove to be net proceeds, if any, of any reletting pursuant to this paragraph 22, after deducting from such proceeds all of Landlord's expenses in connection with such reletting (including all reasonable repossession costs, brokerage commissions, legal expenses, attorneys' fees, employees' expenses, costs of Alterations and expenses of preparation for reletting). Tenant hereby agrees to be and remain liable for all sums aforesaid, and Landlord may recover such damages from Tenant and institute and maintain successive actions or legal proceedings against Tenant for the recovery of such damages. Nothing herein contained shall be deemed to require Landlord to wait to begin such action or other legal proceedings until the date when the Term would have expired by limitation had there been no such Event of Default.

(e)   <u>Liquidated Final Damages</u>.  At any time after any such expiration or termination of the Term or repossession of the Leased Premises by reason of the occurrence of an Event of Default, whether or not Landlord shall have collected any current damages pursuant to this <u>paragraph 22</u>, Landlord shall be entitled to recover from Tenant, and Tenant will pay to Landlord on demand, as and for liquidated and agreed final damages for Tenant's Default and in lieu of all current damages beyond the date of such demand (it being agreed that it would be impracticable or extremely difficult to fix the actual damages and it being further agreed that the amount herein described is a reasonable estimate of the amount of Landlord's probable damages), an amount equal to the excess, if any, of (i) the Rent, Additional Monetary Obligations and other sums which would be payable under this Lease from the date of such demand (or, if it be earlier, the date to which Tenant shall have satisfied in full its obligations under this <u>paragraph 22</u> to pay current damages) for what would be the then unexpired term of this Lease in the absence of such expiration, termination or repossession, discounted at the rate of 5% per annum over (ii) the then fair net rental value of the Leased Premises for the same period and (y) an amount equal to the then applicable Make-Whole Amount, if any, payable to the Mortgagee.  The discount rate to be used in determining such fair rental value shall be 5% per annum.  If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, Landlord shall be entitled to the maximum amount allowable under such statute or rule of law.

(f)   <u>Alternative Liquidated Final Damages</u>.  At any time after any such expiration or termination of the Term or repossession of the Leased Premises by reason of the occurrence of an Event of Default, whether or not Landlord shall have collected any current damages pursuant to this <u>paragraph 22</u>, if Landlord shall have sold the Leased Premises pursuant to <u>paragraph 22(b)(iv)</u>, then Landlord, as an alterative to <u>paragraph 22(e)</u>, shall be entitled to recover from Tenant, and Tenant will pay to Landlord on the date of such sale, as and for liquidated and agreed final damages for Tenant's Default and in lieu of all current damages beyond the date of such sale (it being agreed that it would be impracticable or extremely difficult to fix the actual damages and it being further agreed that the amount herein described is a reasonable estimate of the amount of Landlord's probable damages), any unpaid installments of Rent for the Leased Premises up to and including the Rent Payment Date occurring immediately prior to the date of such sale, plus the amount of any deficiency between (x) the proceeds of such sale and (y) an amount equal to the purchase price for the Leased Premises pursuant to attached <u>Exhibit F</u> had Tenant made a Purchase Offer pursuant to <u>paragraph 16</u> to purchase the Leased Premises on the date of such sale and such Purchase Offer had been accepted. If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, then Landlord shall be entitled to the maximum amount allowable under such statute or rule of law.

23.    **ADDITIONAL RIGHTS OF LANDLORD.**

(a)    Non-Exclusive, Cumulative Remedies.  No right or remedy herein conferred upon or reserved to Landlord is intended to be exclusive of any other right or remedy and each and every right and remedy shall be cumulative and in addition to any other right or remedy contained in this Lease. No delay or failure by Landlord to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof.  In addition to the other remedies provided in this Lease, Landlord shall be entitled, to the extent permitted by applicable law, to injunctive relief in case of the violation or attempted or threatened violation of any of the provisions of this Lease, or to specific performance of any of the provisions of this Lease.

(b)    Tenant's Waiver of Redemption.  . Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have under any present or future law to redeem any of the Leased Premises or to have a continuance of this Lease after termination of this Lease or of Tenant's right of occupancy or possession pursuant to any court order or any provision hereof, and (ii) the benefits of any present or future law which exempts property from liability for debt or for distress for rent.

(c)    Costs Upon Default and Litigation. Tenant shall pay to Landlord and Mortgagee as Additional Monetary Obligations all expenses incurred by Landlord or Mortgagee in connection with any Default or Event of Default or the exercise of any remedy by reason of any Default or Event of Default, including reasonable attorneys' fees and expenses. If Landlord or Mortgagee shall be made a party to any litigation commenced against Tenant or any litigation pertaining to this Lease or the Leased Premises, at the option of Landlord and Mortgagee, Tenant, at its expense, shall provide Landlord or Mortgagee with counsel approved by Landlord and Mortgagee and shall pay all reasonable costs incurred or paid by Landlord and Mortgagee in connection with such litigation.

24.    **NOTICES.**  All notices, requests, consents, demands, offers and other communications required or permitted to be given pursuant to this Lease shall be in writing and shall be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered with a receipted copy; (ii) if given by telefax, the day when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party prior to or during normal business hours for the recipient, or the day after confirmation is received by the transmitting party if after normal business hours for the recipient; (iii) if delivered by United States Mail, 3 days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (iv) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same, addressed to Landlord or Tenant at their