UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                              )          Chapter 11
                                                    )          CASE NO. 05-03817-3F1
WINN-DIXIE STORES, INC., *et al.* )          (Jointly Administered)
                                                    )          Judge Jerry A. Funk
          Debtors.                          )
                                                    )
_____)

## FLORIDA TAX COLLECTORS' MOTION FOR LEAVE TO FILE PROOFS OF CLAIM WITHOUT PREJUDICE

COMES NOW the Tax Collectors for Alachua County, Baker County, Bay County, Bradford County, Brevard County, Broward County, Charlotte County, Citrus County, Clay County, Collier County, Columbia County, DeSoto County, Duval County, Escambia County, Flagler County, Gadsden County, Hardee County, Hendry County, Hernando County, Highlands County, Hillsborough County, Indian River County, Jackson County, Jefferson County, Lake County, Lee County, Leon County, Levy County, Madison County, Manatee County, Marion County, Martin County, Miami-Dade County, Monroe County, Nassau County, Okaloosa County, Okeechobee County, Orange County, Osceola County, Palm Beach County, Pasco County, Pinellas County, Polk County, Putnam County, Santa Rosa County, Sarasota County, Seminole County, St. Johns County, St. Lucie County, Sumter County, Suwannee County, Taylor County, Volusia County, Wakulla County, Walton County and Washington County (collectively known as "Florida Tax Collectors"), by and through their undersigned counsel, and file this Motion for leave to file proofs of claim without prejudice, based on the following:

1

## BACKGROUND

1.     Florida Tax Collectors are charged with the duty to collect property taxes before they become delinquent. See Fla. Stat. Ch. 197.332. The Debtors maintain store locations throughout the state of Florida which have been assessed for both tangible personal property and real estate taxes. The Debtors and Florida Tax Collectors have been exchanging information in an attempt to identify and quantify the ad valorem taxes due for tax year 2005. Although tax information has been exchanged, all issues relative to identifying outstanding property tax obligations of the Debtors are not yet resolved.

2.     Notwithstanding the fact that among their first day motions, the Debtors sought and obtained approval to pay ad valorem real estate and tangible personal property taxes, Florida Tax Collectors, upon information and belief, believes Debtors intend to contest all tangible personal property and real estate taxes in the state of Florida. In this regard, Florida Tax Collectors refers to a letter sent by a company known as Assessment Technologies to various Value Adjustment Boards within the state of Florida. (A representative copy of the Assessment Technologies letter which was sent to the Value Adjustment Board of Hillsborough County is attached hereto as Exhibit "A").

3.     The tangible personal property and real estate assessed for ad valorem tax purposes includes both property owned by and leased by Debtors. Unknown to Florida Tax Collectors at this time, there may be arrangements by Debtors with other third parties relative to payment of the 2005 property taxes. Florida Tax Collectors recognize that some tax payments may be made, however, the Florida Tax Collectors' extension for filing of a claim is only until November 23, 2005. Additionally, all Florida Tax Collectors taxes are fully secured by statutory first liens pursuant to Fla. Stat., ch.

PMTI\WinnDixieTC\Matter#05-001638\MotionLeaveFileProofs

197.122(1) and 192.053.  Thus, it is not necessary to file a claim but for the Court-ordered extended claims bar date, the Assessment Technologies letters and the provisions of Bankruptcy Rule 3003(c)(2).

## RELIEF REQUESTED

4.     Florida Tax Collectors request an order allowing Florida Tax Collectors' claim to be filed without prejudice to any and all further amendments, modifications, and/or adjustments of any type relative to the amounts due as those amounts are determined pursuant to Florida law and contained within the tax rolls of the respective counties involved.  Further, Florida Tax Collectors request an order that the filing of the Florida Tax Collectors' proof of claim shall be without prejudice and shall not be considered a waiver of any defenses whatsoever, including state, federal, procedural, jurisdictional or substantive defenses including, but not limited, to, abstention, sovereign immunity, lack of jurisdiction, and that such filing is without prejudice notwithstanding the provisions of §106 of the Bankruptcy Code, including but not limited to §106(b) of the Bankruptcy Code.

## BASIS FOR THE RELIEF REQUESTED
### A. EFFICIENT ADMINISTRATION OF THE ESTATE

5.     Florida Tax Collectors have contacted Debtors and have been proactive in identifying and liquidating outstanding tax obligations due pursuant to Florida law.  This process, if allowed to continue, pursuant to this Court's order and supervision, will greatly reduce the amount of unnecessary "Omnibus Claim Objections" which burden the Court and create excessive administrative professional fee expenses for the Debtors.  Debtors have acknowledged this fact in their motion seeking Court approval to pay the ad

3

valorem real estate and tangible personal property taxes.  (See Docket No.18, paragraphs 21 through 33.)

## B. FLORIDA TAX COLLECTORS REQUESTS THE SAME RELIEF PREVIOUSLY AWARDED THE DEBTORS

6.      The Court entered its Final Order Authorizing Debtors to Pay Pre-Petition Taxes and Other Ordinary Course Governmental Obligations on March 15, 2005 (Docket No. 435), wherein the Court authorized the Debtors to pay the pre-petition Governmental Obligations, but did not direct the taxes be paid.  This Order was entered "…without prejudice to the right of the Debtors to contest the amount or basis of any of the Governmental Obligations, whether or not paid pursuant to this Order, or to seek a refund of the same…".  Florida Tax Collectors request that the Court maintain the status quo relative to any contest of Florida ad valorem taxes.  Upon information and belief, Assessment Technologies contests the mass appraisal techniques used by the applicable valuation/assessment authority involved.  Florida Tax Collectors refers the Court to Exhibit "A" of an application to retain Assessment Technologies as a Property Tax Consultant in the Interstate Bakeries Corporation bankruptcy, Case No. 04-45814 (JWV), filed in the United States Bankruptcy Court, Western District of Missouri, Kansas City Division (see Docket No. 3190 in that case).  A copy of the agreement, without the 25 pages identifying locations, is attached hereto as Exhibit "B".  In the state of Florida, property assessment and valuation is determined by the various county Property Appraisers under the guidance of the Florida Department of Revenue.

7.      The Debtors sought and were granted relief to contest taxes.  It appears that some form of "contingent fee" arrangement may be forthcoming relative to

Assessment Technologies in the instant case. Florida Tax Collectors, as well as the various Florida Property Appraisers and the Florida Department of Revenue, should not be prejudiced in any way from asserting any and all defenses by the filing of a claim.

### C. EFFICIENT MANAGEMENT OF JUDICIAL RESOURCES

8.      Florida Tax Collectors are constitutional officers and in that capacity are "arms of the state of Florida" for sovereign immunity purposes. The same holds true for Florida Property Appraisers. The Florida Department of Revenue is clearly a representative of the state of Florida. The Eleventh Circuit has found that Congress lacks the authority pursuant to its Article I powers to abrogate sovereign immunity. See In Re Crow, 394 F.3d 918(11th Cir. 2004). This issue is currently under consideration by the United States Supreme Court in the case of Central Virginia Community College, et al. v. Bernard Katz (Docket #04-885, argued October 31, 2005). Preserving Florida Tax Collectors' defenses by allowing the filing of Florida Tax Collectors' proof of claim without prejudice will further the efficient administration of this case.

WHEREFORE, premises considered, Florida Tax Collectors request this Court enter an order allowing the filing of the Florida Tax Collectors' proof of claim to be without prejudice to any and all defenses of any kind whatsoever; requiring the Debtors to continue working directly with the Florida Tax Collectors in identifying and otherwise adding, amending, deleting or withdrawing any further property tax amounts that may be due and owing any Florida Tax Collectors within the state of Florida in accordance with the schedule and upon the terms which this Court may order; allowing the Florida Tax Collectors' proof of claim to be filed without prejudice to any such further amendments, modifications, and/or adjustments as to property tax amounts due; and for other relief in

law or equity to which the Florida Tax Collectors may show themselves justly entitled.

Respectfully submitted,

Florida Tax Collectors

By: _____
Brian T. FitzGerald
Senior Assistant County Attorney
Florida Bar No. 484067
Post Office Box 1110
Tampa, Florida 33601-1110
Ph: 813-272-5670
Fx: 813-272-5231
fitzgeraldb@hillsboroughcounty.org

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by *Notice of Electronic Filing* this 21st day of November, 2005 to D.J. Baker, Skadden Arps Slate Meagher & Flom, LLP, Four Times Square, New York, NY 10036 (djbaker@skadden.com); Cynthia C. Jackson, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, FL 32201 (cjackson@smithhulsey.com); Elena L. Escamilla, U.S. Trustee's Office, 135 W. Central Blvd., Suite 620, Orlando, FL 32806 (elena.l.escamilla@usdoj.gov); Dennis F. Dunne, Milbank Tweed Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (ddunne@milbank.com); John B. MacDonald, Akerman Senterfitt, 50 North Laura Street, Suite 2500, Jacksonville, FL 32202 (john.macdonald@akerman.com); and to all other participants using the CM/ECF system who have appeared in this matter.

_____
Brian T. FitzGerald, Esq.

6



**ASSESSMENT**
*Technologies*

Reducing Taxes On Large Commercial & Industrial Property

September 7, 2005

Value Adjustment Board
601 E. Kennedy, 12th Floor
Tampa, FL 33602

       Re: Any and all real or business personal properties owned or occupied by Winn-Dixie Stores, Inc. in Hillsborough County, Florida, including but not limited to the tax account numbers shown on the attached list.

Dear Sir or Madam:

       In connection with the Truth in Millage notice recently delivered to Winn Dixie by the office of the Hillsborough County Appraiser concerning the referenced property, please be advised of the following:

       Winn Dixie and its valuation consultants have conducted a preliminary review of the values set forth in the subject Trim notice(s), and have determined that those value(s), from our analysis and in our opinion, exceed the correct taxable value of the subject asset(s) as required under substantive Florida law. In some instances, the Trim notice value may have been based upon, or derived from, form-driven value opinions set forth in Winn Dixie's original return filings.

       Those filings were completed on an expedited basis to comply with Florida return filing deadlines, shortly after Winn Dixie's filing for bankruptcy reorganization (see further information below) and before further analysis of the company's assets and operational details permitted formation of more accurate conclusions as to the indicated just valuation of the assets in question. Those amounts should not, therefore, be relied upon as the actual market value or just valuation of those assets.

       Further, as referenced above, Winn Dixie Stores filed for protection under Chapter 11 of the U.S. Bankruptcy Code on February 21, 2005. That proceeding is currently pending in the U.S. Bankruptcy Court for the Middle District of Florida, under case number 05-3817. Pursuant to that filing, 11 U.S.C. 108 provides for an extension of up to two years from the date of that February bankruptcy of non-bankruptcy law deadlines for commencing an action, including a petition to the Value Adjustment Board concerning the referenced assets. Therefore, Winn Dixie would have up until February 21, 2007, to submit a Petition to the Value Adjustment Board concerning the subject assets.

       Although we do not anticipate a delay of anywhere near that length in pursuing these matters with the VAB, this letter is intended, given what would otherwise have been the imminent statutory deadline for filing of such a Petition, that Winn Dixie does

**EXHIBIT**

tabbies®

*A*

intend to file a Petition to the Value Adjustment Board on the valuation of the assets in question, and that the company invokes the above-referenced provisions of 11 U.S.C. 108 to extend that deadline. In addition, we welcome the opportunity for an informal conference with the property appraiser at the appropriate time, but for the present, pending filing of the Petition, would request that the appraiser **take no further action to finalize the subject values**.

Feel free to contact Kristen Goree at Assessment Technologies, Ltd., 1-800-914-2732 with any questions concerning the above.

Sincerely,

Cheri M. Gilbert,
In-House Counsel

cc.    Hillsborough County Appraiser



| Assessor: | Hillsborough County Taxing Authorities | | County & State: | HILLSBOROUGH, FL | | | |
|---|---|---|---|---|---|---|---|
| Tax Account Number | Winn Dixie Store Number | Winn Dixie Location ID | Property Type ( Real or Personal) | Taxing Authoity's Market Value | Taxing Authority's Assessed Value | Taxing Authoity's Estimated 2005 Tax |
| 016626001 | 0637 | 637 | PERSONAL | $433,980 | $433,980 | $9,896.47 |
| 2032711000 | TPA MF DA 1 OF 3 | 0 | REAL | $5,500,388 | $5,500,388 | $116,133.53 |
| 2032480720 | TPA MF DA 2 OF 3 | 0 | REAL | $161,172 | $161,172 | $3,402.93 |
| 016625000 | 0611 | 611 | PERSONAL | $391,610 | $391,610 | $8,930.28 |
| 016631000 | 0619 | 619 | PERSONAL | $591,840 | $591,840 | $13,469.70 |
| 016631010 | 0627 | 627 | PERSONAL | $551,480 | $551,480 | $12,575.93 |
| 016626300 | 0697 | 697 | PERSONAL | $391,500 | $391,500 | $8,921.10 |
| 059403098 | 0636R | 636 | REAL | $3,965,210 | $3,965,210 | $95,740.00 |
| 014561000 | TPA MF DA | 0 | PERSONAL | $8,025,660 | $8,025,660 | $169,451.37 |
| 042004481 | 2662 | 2662 | PERSONAL | $22,100 | $22,100 | $533.62 |
| 042003173 | 2661 | 2661 | PERSONAL | $699,190 | $699,190 | $16,881.94 |
| 016631004 | 0679 | 679 | PERSONAL | $519,380 | $519,380 | $12,540.44 |
| 020302000 | 0777 | 777 | PERSONAL | $472,310 | $472,310 | $10,762.54 |
| 047460000 | 0634 | 634 | PERSONAL | $430,250 | $430,250 | $9,804.12 |
| 016631009 | 0716 | 716 | PERSONAL | $424,570 | $424,570 | $9,662.79 |
| 041996282 | 0636 | 636 | PERSONAL | $470,410 | $470,410 | $11,358.05 |
| 016626200 | 0678 | 678 | PERSONAL | $665,370 | $665,370 | $15,143.18 |
| 037661000 | 0676 | 676 | PERSONAL | $501,970 | $501,970 | $11,424.34 |
| 041990383 | 0673 | 673 | PERSONAL | $825,590 | $825,590 | $18,789.62 |
| 016631007 | 0647 | 647 | PERSONAL | $432,940 | $432,940 | $9,872.75 |

Page 1

| Assessor: | Hillsborough County Taxing Authorities | | County & State: | HILLSBOROUGH, FL. | | |
|---|---|---|---|---|---|---|

| Tax Account Number | Winn Dixie Store Number | Winn Dixie Location ID | Property Type (Real or Personal) | Taxing Authoity's Market Value | Taxing Authoity's Assessed Value | Taxing Authoity's Estimated 2005 Tax |
|---|---|---|---|---|---|---|
| 041997010 4 | 0643 | 643 | PERSONAL | $702,840 | $702,840 | $16,958.14 |
| 016630000 0 | 0639 | 639 | PERSONAL | $660,370 | $660,370 | $15,047.86 |
| 203268010 0 | TPA MF DA 3 OF 3 | 0 | REAL | $52,978 | $52,978 | $1,118.57 |
| 016631001 2 | 0734 | 734 | PERSONAL | $527,850 | $527,850 | $12,013.34 |
| 042001224 2 | 0615 | 615 | PERSONAL | $796,970 | $796,970 | $18,138.25 |

# Service Agreement

This agreement is made between Interstate Brands Corporation, a Delaware corporation, and its related entities ("Client") and Assessment Technologies, Ltd., a Texas Limited Partnership ("Consultant").

1.  Client hereby engages Consultant and Consultant agrees to provide property tax consulting services with respect to appealing tax assessments and/or challenging tax claim amounts only for the property ("Property") owned, managed or leased by Client listed on the attached listing of locations ("Location(s)" or "Exhibit A"), as amended by Client from time to time. Tax years and claims included in this Service Agreement are 2004, 2005 and all prior years that Consultant remains able to adjust either by state administrative or judicial proceedings or by remedies made available within the Bankruptcy Code.

2.  This agreement concerns property tax consulting services ("Basic Services") provided by Consultant, which relates solely to the pursuit of Tax Savings (as hereinafter defined) on behalf of the Client. Such services include the following:

    > Review targeted tax assessments on the Property(s) including supporting data, calculations and assumptions produced by the appropriate appraisal/assessing authority, together with information provided by the Client. If Consultant determines that it is possible and economically feasible to attain a reduced assessment/tax and upon prior approval of Client, Consultant will represent the Client before the appropriate tax assessing/collecting and/or court authorities using all reasonable, appropriate and available means provided by statute or within the Bankruptcy Code to adjust the assessment, unclaimed tax or claimed tax amount. Consultant is authorized to make use of any local, state or federal remedy Consultant deems appropriate, subject to approval of Client to proceed. Consultant will be responsible for collection of all data related to the Basic Services contemplated herein. Client will assist Consultant in providing access to such data, including, but not limited to, third-party appraisals, tax bills, renditions, sales contracts, listings for sale, etc. All data collected will be in Client's offices in Kansas City, Missouri, or at the Locations contained on Exhibit A. Consultant may also collect data from the various tax jurisdictions in which Client's assets are located. Client shall have access to data collected by Consultant and to all third-party reports conducted on Client's assets as a result of this Service Agreement, including copies in electronic format to the extent available.

3.  This agreement does not provide for general tax compliance services outside of the Basic Services scope of work Consultant deems necessary to pursue Tax Savings on Client's behalf described in Paragraph #2 above. These other, 'compliance' services are generally administrative or research-intensive in nature and relate to the production of statutorily required tax returns/renditions and the collection, verification and payment of tax bills and collection of fully paid tax receipts or other collection or verification of tax office information. Any request for general tax compliance work outside the scope contemplated herein will be addressed as a separate service agreement for that specific task.

4.  In consideration of the services to be performed by the Consultant, Client shall pay the following fees for each tax year:

    a.  **35% of all Net Tax Savings**. Consultant shall be paid 35% of all Net Tax Savings (as hereinafter defined) received by Client for each tax year.

    b.  If Tax Savings is in the form of a refund to Client, actual receipt date ("Receipt Date") shall be defined as the date on which Tax Savings funds are received by Client and available for deposit into Client's bank account.

    c.  If Tax Savings is in any form other than a refund to Client, such as a reduction in claims or an offset to other taxes, Receipt Date shall be defined as the date the Tax Savings is created, either by posted notification of a reduced liability, passing of tax office response/audit deadlines, the tax office execution of a stipulation or other agreement to accept a lesser tax or other offset, or entry date of an order of the Court adjusting a tax liability.

    d.  Expenses - Consultant is responsible for and fronts all reasonable and customary special property tax counsel legal fees, third party appraisal fees, travel expenses and any other fees and expenses incurred by

Client Initials: _RBH_

Consultant Initials: _SMJK_

IBC Service Agreement – Basic Services

Page 1 of 4



EXHIBIT

tabbies®

_B_

Consultant in pursuing Tax Savings under this agreement. Consultant is reimbursed these expenses at cost ("Reimbursable Expenses") out of the first dollars of Tax Savings. Client authorizes an initial budget of $250,000 ("Initial Budget") for Reimbursable Expenses as attached in "Exhibit B". Client accepts that it is Consultant's expectation for budgeted line item amounts to vary as Consultant's scope of work progresses. Consultant will notify Client of any material change in the running budget for Reimbursable Expenses that will cause the total to exceed the Initial Budget. Client must approve any budget increase for Reimbursable Expenses above the Initial Budget amount, which will not be unreasonably withheld. Consultant will provide Client with regular reports, either monthly or quarterly as requested by Client in a form agreeable by both parties, of expenditures made that qualify as Reimbursable Expenses.

Client shall have approval rights over the selection of any special property tax counsel utilized on Client's behalf and Consultant will coordinate the use of such special counsel with Client's counsel. Such approval shall not be unreasonably withheld. Consultant's professional fees are calculated on the net of Tax Savings less Reimbursable Expenses ("Net Tax Savings"). Client remains responsible for fees of its counsel and any other fees Client incurs as part of this process.

5. The calculation of Tax Savings shall mean, to the extent secured through Basic Services conducted by Consultant, the aggregate of:

   a. (i) The positive difference between the last recorded assessed valuation ("Recorded Valuation") for the appropriate tax year and the final assessed valuation ("Final Valuation") for the corresponding tax year for the Property, multiplied by that year's tax rate, or (ii) in the event a tax is reduced without adjustment of the corresponding assessed valuation, the positive difference between the beginning tax and the reduced tax;

   b. Refunds, credits, interest credited to Client, reductions in claims and other tax offsets, to the extent not captured under subparagraph (a) above;

   c. Reduction in taxes arising from correction of errors in the tax roll for prior tax years, to the extent not captured under subparagraph (a) above;

   d. One-half of any reduction of statutory penalties, interest or collection fees payable. {Penalties, interest or collection fees that accrue statutorily post-filing on claimed pre-petition tax liabilities on property of the estate AND which are procedurally barred by the Bankruptcy Code do not enter into the calculation of Tax Savings.};

   e. In the event a Final Valuation is negotiated in advance of the formal posting of an assessed valuation, the Recorded Valuation for purposes of calculating Tax Savings will be the property tax account's last Recorded Valuation (pre-adjustment) for the prior tax year, less one year's depreciation using the assessor's historical schedule, less disposals for the year at the assessor's depreciated value, plus the assessor's depreciated cost of capital additions for the year;

   f. Penalties, interest and collection fees payable to a taxing authority do not reduce Tax Savings, unless such penalties, interest and collection fees result from a situation discovered by Consultant and not promptly reported to the Client for correction;

   g. Duplicate claims or otherwise invalid claims shall be excluded from the calculation of Tax Savings. Further, to the extent Consultant's Basic Services are not undertaken in the generation of the reduction in assessed valuation or taxes, such amounts will not be included in the calculation of Tax Savings;

   h. From time to time, audits are conducted on Client's tax assessments to ensure compliance with statutory tax codes. Client agrees to notify Consultant immediately of any pending audits and both Client and Consultant agree to confer prior to Consultant commencing services on tax accounts with pending audits to determine which category the audit belongs and whether or not any reductions will constitute Tax Savings, for which both parties must agree. To the extent Consultant is required to participate in the audit process, those

Client Initials: _RBH_                              Consultant Initials: _SPKPL_

IBC Service Agreement – Basic Services                              Page 2 of 4

services will be treated as outside the scope of Basic Services and will be addressed in a separate service agreement for that specific task.

Tax Savings shall be reduced by an amount equal to any increase in tax liability arising from any formalized protest, appeal or objection hearings conducted on Client's Locations by Consultant AFTER Consultant has been provided access to Client's records and information as outlined in Section 2 of this Agreement. However, Tax Savings will not be reduced in the event that a tax liability increase is a result of any physical equipment item not previously identified on a rendition submitted by Client.

6.  Consultant agrees to use all reasonable efforts to obtain a reduction in assessments, but does not promise or represent any reduction will be obtained.

7.  Client agrees to facilitate Consultant's approval by the Bankruptcy Court in such capacity as it deems appropriate and will permit Consultant to receive payment on a timely basis for all professional services rendered, and with the same priority treatment afforded other administrative claimants. Fees are earned and invoiced at the time that the service is rendered and written confirmation and approval of a Tax Savings is received. Fees payable hereunder shall be due within forty-five (45) days of the later of (i) the invoice date, (ii) Bankruptcy Court approval of the fees, or (iii) the date Client realizes the cash equivalent receipt of sufficient Tax Savings to satisfy, in whole or part, the amount invoiced ("Realized Date") as hereinafter defined. The Realized Date is equal to the Receipt Date for cash refunds. Net Tax Savings obtained through written stipulations or other written agreements negotiated with taxing jurisdictions are realized as of the date of final approval of the stipulation or agreement by both parties. For all other forms of Tax Savings, the Realized Date is the date any pending tax liability is paid or satisfied (such as through a credit) in an amount that is less than the claimed, scheduled or historical amount, not to exceed the date a plan of reorganization is confirmed (date of "Confirmation"). For purposes of this agreement, Consultant agrees to delay the Realized Date for claims adjustments on unpaid pre-petition taxes as adjusted by an order of the court until September 1, 2005, or the next available delinquency date, whichever is the later. Exhibit C attached to this Agreement contains working examples of how this Section 7 is intended to apply. Consultant will periodically provide schedules of the amounts and dates Tax Savings are realized by Client according to this payment mechanism. Actual tax rates will be used for the calculation of fees unless current year rates have not been set at the time the service is rendered. In that instance, the prior year's rate will be used as an estimator for the purposes of calculating a fee. All past due sums for Reimbursable Expenses beyond 45 days shall bear interest from the date of invoicing at a rate equal to the prime rate publicly announced by JPMorgan Chase Bank as its prime rate plus two percent (2.00%)                    per                    annum,                    compounded                    weekly.

Inasmuch as the Client's plan of reorganization provides for other than a 100% payout of claims, Consultant's fee for reducing any such claim amount will be modified and calculated in accordance with the final payout percentage for each such claims class. {As an example, Consultant's fee on tax accounts with a first-priority tax lien is afforded the same percentage of payout as the plan may provide for the corresponding taxes (at the terms above). Likewise, Consultant's fee on unsecured Priority Tax accounts will be afforded the same treatment as the percentage of payments made to the 507(a)(8)B Priority Taxes. Fees invoiced prior to the approval of a Confirmation plan are not subject to adjustment from the terms of this agreement.} In the event that any amount of tax savings received as a result of Consultant's review is later repaid to a jurisdiction or third party because of a final determination that the basis of the original tax savings was in error, a proportional fee adjustment will be made. However, Consultant reserves the right to defend the issues related to any fee adjustments. Any required fee adjustment will be paid to Client within 45 days of receipt of final determination.

8.  Client agrees to make reasonable efforts to confer with Consultant and seek Consultant's guidance and direction prior to (1) payment of any property tax, (2) payment of any cure claim relating to a property tax from a landlord or other party, and/or (3) payment of any property taxes connected with the sale of any real or personal property owned or leased by the estate.

9.  The continuing obligations, responsibilities and undertakings of the parties contained in this agreement shall survive the expiration or termination of this agreement.

10. To the extent that, in connection with this agreement, Consultant comes into possession of any proprietary or confidential information, collectively ("Confidential Information") of the Client, Consultant will not disclose such information to any third

Client Initials: _RBH_                                    Consultant Initials: _JFHR_

IBC Service Agreement – Basic Services                                    Page 3 of 4

party without the Client's consent, except (a) as may be required by law, regulation, judicial or administrative process, or (b) in accordance with applicable professional standards, or (c) in connection with litigation pertaining hereto. Confidential Information shall not include any information to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Consultant in breach hereof, (ii) becomes available to Consultant on a non-confidential basis from a source other than the Client, or (iii) is developed by Consultant independently of any disclosures made by the Client to Consultant of such information.

11. Neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other party.

12. These terms, the engagement letter to which these terms are attached, including exhibits, and all matters relating to this engagement (whether in contract, statute, tort (such as negligence), or otherwise), shall be governed by, and construed in accordance with, the laws of the State of Missouri (without giving effect to the choice of law principles thereof). The United States Bankruptcy Court for the Western District of Missouri shall have exclusive jurisdiction over matters between the parties with respect to this engagement and the terms of this agreement.

13. This Agreement is hereby entered into and deemed effective for all purposes as of ___2/25/05___ and Client shall, to the extent necessary, take any and all actions, including filing of necessary motions with the Bankruptcy Court to secure Court approval of the effectiveness of this agreement nunc pro tunc to the date the application for retention of Consultant is filed with the Bankruptcy Court.


**CLIENT**                                           **CONSULTANT**

**Interstate Brands Corporation, Debtor**            **Assessment Technologies, Ltd.**

By: _____                       By: _____

Date: _2-23-05_  Title: _FVP $ CFO_                  Date: _2/25/05_  Title: _PRES._
                                                     **ATECH Management, LLC, General Partner**


Client Initials: _____            Consultant Initials: _____

IBC Service Agreement – Basic Services            Page 4 of 4