Hearing Date: December 15, 2005, 1:00 p.m.
Objection Deadline: December 8, 2005, 4:00 p.m.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |

## DEBTORS' MOTION FOR ORDER GRANTING THIRD EXTENSION OF EXCLUSIVE PERIODS FOR FILING CHAPTER 11 PLANS AND OBTAINING ACCEPTANCES OF SUCH PLANS

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move for entry of an order under 11 U.S.C. § 1121(d) granting an additional extension of their exclusive periods for proposing and obtaining acceptances of one or more plans of reorganization (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

### Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2.      The Debtors operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. Subsequently, on August 17, 2005, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee").

3.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  As of the Petition Date, the Debtors were considered to be the eighth-largest food retailer in the United States and one of the largest in the Southeast, with more than 900 stores in the United States.  Since the Petition Date, the Debtors have been engaged in a footprint reduction program to sell or close 326 of their stores.  To date, the Debtors have sold or closed over 300 stores.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested in the Motion are sections 105(a) and 1121(d) of the Bankruptcy Code.

**Exclusive Periods**

6.      Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose a plan of reorganization (the "Exclusive Proposal Period").  In addition, section

2

1121(c)(3) of the Bankruptcy Code provides that if a debtor proposes a plan within the Exclusive Proposal Period, it has the balance of 180 days after the commencement of the chapter 11 case to solicit acceptances of such plan (the "Exclusive Solicitation Period").  During the Exclusive Proposal Period and the Exclusive Solicitation Period (together, the "Exclusive Periods"), plans may not be proposed by any party in interest other than the debtor.

7.      Under section 1121(d) of the Bankruptcy Code, the Exclusive Periods may be extended for cause.  Pursuant to the Order Further Extending Exclusive Periods for Filing Chapter 11 Plans and Obtaining Acceptances of Such Plans dated September 8, 2005, this Court most recently extended the Debtors' Exclusive Periods, for the second time, to December 19, 2005 in the case of the Exclusive Proposal Period and to February 20, 2006 in the case of the Exclusive Solicitation Period.

**Relief Requested**

8.      By this Motion, the Debtors request entry of an order further extending their Exclusive Proposal Period for approximately 90 days, to and including March 20, 2006, and extending their Exclusive Solicitation Period also for approximately 90 days, to and including May 22, 2006.  The Debtors further request that their right to seek additional extensions of one or both of the Exclusive Periods be preserved, without prejudice to the rights of other parties in interest to object to any additional extensions or to seek a reduction of the Exclusive Periods as previously extended.

**Basis for Relief**

9.      The Exclusive Periods are intended to afford the Debtors a full and fair opportunity to rehabilitate their businesses and to negotiate and propose one or more

reorganization plans without the disruption and deterioration of their businesses that might be caused by the filing of competing plans of reorganization by nondebtor parties.

10.    The Debtors have made significant progress towards reorganization since the Petition Date.  Having accomplished a significant restructuring of their businesses, the Debtors seek to further extend each of their Exclusive Periods by approximately 90 days in order to afford the Debtors the opportunity now to negotiate and propose a plan of reorganization.

### Applicable Authority

11.    Section 1121(d) of the Bankruptcy Code provides that this Court may extend the Exclusive Periods for cause:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

12.    The factors which Bankruptcy Courts examine in determining whether or not cause exists to extend the Exclusive Periods include: (a) the size and complexity of the case; (b) the debtor's progress in resolving issues facing the estate; and (c) whether an extension of time will harm the debtor's creditors.  See, e.g., In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re Truck Extrusion Corp., 844 F.2d 1142, 1161 (5th Cir. 1988); In re Homestead Partners, Ltd., 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996) (among other factors, "sufficient 'cause' may exist when … the presence of complex legal issues has occupied much of the debtor's plan-making opportunity") (citations omitted).

13.    In evaluating these factors, the courts are given maximum flexibility to review the particular facts and circumstances presented in the cases before them.  See In re Public Serv. Co.

of N.H., 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent ... [is] to promote

maximum flexibility . . . ."); First Am. Bank of N.Y. v. SW. Gloves & Safety Equip., Inc., 64

B.R. 963, 965 (D. Del. 1986) (acknowledging flexibility that section 1121(d) provides); H.R.

Rep. No. 95-595, at 232 (1978) ("[T]he bill allows the flexibility for individual cases that is

unavailable today.") as reprinted in 1978 U.S.C.C.A.N. 5963, 6191; In re Hoffinger Indus., Inc.,

292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) (stating that not all factors "are relevant in every case"

and court has discretion to "decide which factors are relevant and give the appropriate weight to

each").

        14.     In the Debtors' cases, the 90-day extensions of each of the Exclusive Periods are

fully justified for the reasons set forth below:

            (a)  The Debtors' cases are large and complex;

            (b)  The Debtors have made good-faith progress toward proposing a plan; and

            (c)  This requested extension will not prejudice the rights of creditors.

A.      The Debtors' cases are complex.

        15.     Courts frequently grant an extension of the exclusive periods based upon the size

and complexity of a chapter 11 case.  See In re Texaco, Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y.

1987); McLean, 87 B.R. at 834; Homestead 197 B.R. at 720 (recognizing the presence of

complex legal issues as one of the bases for cause pursuant to 11 U.S.C. § 1121(d)) ; see also

Gaines v. Perkins (In re Perkins), 71 B.R. 294, 296-97 (W.D. Tenn. 1987) (in case involving 100

creditors holding approximately 225 claims aggregating $10 million against estate valued at $13

million, district court affirmed bankruptcy court's enlargement of the exclusivity period and held

that cause may exist if the case is unusually large).

16.     The Debtors' chapter 11 cases are large and complex.  Their financial structure consists of (a) an $800 million debtor-in-possession secured financing facility, (b) other prepetition secured obligations, (c) publicly-traded senior unsecured notes, with a remaining principal amount of approximately $300 million (due 2008), (d) trade, litigation and other general unsecured liabilities and (e) publicly-held equity securities at the parent level.  There are thousands of creditors and other parties in interest in these cases -- claim bar date notices were sent to in excess of 290,000 parties in interest.

17.     Winn-Dixie, a publicly-owned Florida corporation, is the ultimate parent of a group of companies that includes the twenty-four Debtors in these cases.  The Debtors conduct business through their corporate headquarters in Jacksonville, Florida and operate grocery stores and other facilities throughout the Southeast United States.  The Debtors also have affiliates in the Bahamas, which are not involved in these cases.

18.     In sum, the sheer size and complexity of the Debtors' businesses and chapter 11 cases constitute cause to extend the Exclusive Periods.  Although the Debtors have previously been granted two extensions of the Exclusive Periods, the Debtors submit that the further extension now being sought is reasonable and appropriate given the complexity and size of these cases, and is not larger than extensions granted by many other courts in cases of similar, and even lesser, size.

B.     The Debtors have made good faith progress toward proposing a plan.

19.     Since the Petition Date, the Debtors have, as noted in the two prior motions to extend the Exclusive Periods that were filed in these cases (the "Prior Exclusivity Motions"), made significant progress in their chapter 11 cases.[2]

---

[2]     The progress described in the Prior Exclusivity Motions is incorporated by reference.

20.     Most significantly, the Debtors have now implemented a market area reduction program (the "Footprint Process") pursuant to which the Debtors have closed or sold 326 stores (the "Targeted Stores").  As has been explained in prior filings with this Court, the purpose of the Footprint Process is to enable the Debtors to focus on their strongest markets where they have a significant market share position, significantly reducing the number of stores and other facilities in which they operated as of the Petition Date.

21.     To date, the Debtors have completed the sale of 81 stores.  Gross proceeds from completed sales exceeded $40 million, exclusive of consideration paid for inventory.  The Targeted Stores that were not sold have now been rejected pursuant to a streamlined rejection procedure approved by the Court by Order dated September 8, 2005.  Liquidations have been conducted at approximately 245 stores, producing net proceeds to the estates of approximately $136 million, including inventory.  The Footprint Process is now largely completed.

22.     Additionally, since the Petition Date, the Debtors have implemented a variety of operational initiatives designed to cut costs and improve performance (collectively, the "Operational Initiatives").  These Operational Initiatives have included such things as (a) the implementation of a sustainable strategic sourcing program, (b) a significant reduction in corporate overhead costs, (c) the reorganization of the Debtors' "field team" by reducing the number of district managers from 96 to 30, (d) the establishment of several merchandising and marketing programs designed to improve product offerings, (e) the rolling out of several customer service initiatives, (f) the investment in capital to refresh the appearance of many stores, and (g) the realignment of the overhead structure to reflect the new footprint.

23.     Hurricanes Katrina and Wilma placed additional operational challenges upon the Company.  Through quick reaction and focus, the Debtors were able to weather the effects of

these disasters.  Indeed, but for many of the Operational Initiatives, these storms might have taken a substantial toll on the Company and its reorganization process.

24.     Following the substantial completion of the Footprint Process and the implementation of the Operational Initiatives, the Debtors have in recent weeks developed a comprehensive business plan (the "Business Plan").  The Debtors presented the Business Plan to the Creditors Committee and the Equity Committee during the week of November 7, 2005 and have been working since then to assist the committees with informational needs and issues arising from the Business Plan.

25.     In addition to the substantial progress that has been made with respect to the Footprint Process and the Operational Initiatives, the Debtors have, since the filing of the Prior Exclusivity Motion in August 2005, made substantial progress in these cases in the following areas:

    (a)  The Debtors have continued to make progress in addressing the issues presented by the approximately 480 reclamation demands asserting aggregate claims of approximately $125 million.  Pursuant to the final reclamation order dated April 4, 2005, the Debtors reviewed, analyzed, reconciled, from the Debtors' perspective, each vendor's reclamation claim (including asserting appropriate defenses with respect to each reclamation claim) and served statements of reclamation upon each of the reclamation vendors.  While the Debtors were preparing the statements of reclamation, the Debtors and certain reclamation trade vendors entered into discussions which resulted in an agreement for, among other things, (i) the establishment of a trade vendor lien program, and (ii) procedures for the calculation and treatment of trade vendors' reclamation and general trade claims for those trade vendors that participate in the trade vendor lien program (the "Reclamation Trade Lien Stipulation").  By order dated August 5, 2005, this Court granted the motion approving the Reclamation Trade Lien Stipulation.  With respect to the reclamation vendors whose statements of reclamation have not yet been reconciled, on September 30, 2005, the Debtors filed a Motion for Determination of Unresolved Reclamation Claims (the "Reclamation Determination Motion").  On November 4, 2005, the Court granted the Reclamation Determination Motion.

(b)   The Debtors have continued to comply with the various reporting requirements imposed by the United States Trustee, including the submission of initial and monthly reports.

(c)   The Debtors have complied with the continuing due diligence requests from the Creditors' Committee and more recently the Equity Committee, turning over documents for review by the respective advisors to each committee.

(d)   The Debtors obtained Court approval under section 365 of the Bankruptcy Code to extend the time period (most recently to December 19, 2005) for assuming or rejecting unexpired leases of non-residential real property.  Contemporaneous with the filing of this Motion, the Debtors have filed a motion seeking to further extend such time period by approximately 90 days.  Additionally, the Debtors have, to date, obtained Court approval to reject approximately 210 unexpired leases (and subleases) of non-residential real property, separate and apart from rejections of certain of the Targeted Stores (discussed above).  A motion seeking to reject another 21 leases (including subleases) was filed on November 11, 2005 and is scheduled to be heard by the Court on December 1, 2005. The Debtors have continued to review their hundreds of remaining unexpired non-residential real property leases to determine whether rejection, assumption or assignment of such leases is in the best interests of their estates.

(e)   The Debtors have, to date, sought authority to reject approximately 90 unexpired executory contracts and unexpired leases relating to personal property and services.  The Debtors are continuing to analyze their hundreds of remaining executory contracts and unexpired leases in order to determine whether rejection, assumption or assignment of such contracts and leases is in the best interests of their estates.

(f)   Having established and noticed the general bar date of September 1, 2005, the Debtors have received, through their claims agent, approximately 12,500 proofs of claims, and have begun the long and laborious process of reviewing and reconciling the proofs of claims to their books and records.  To facilitate the objection process, the Debtors obtained Court approval for the establishment of omnibus claims objection and schedule amendment procedures.  The first omnibus claims objection was filed on November 15, 2005.

(g)   With respect to personal injury and other litigation claims, on September 1, 2005, the Debtors obtained Court approval of certain settlement procedures.  In connection with these settlement procedures, on September 30, 2005, questionnaires were sent to the

Debtors' several thousand litigation claimants.  The Debtors have already presented approximately 56 settlement agreements to the Court for approval.  If these presented settlements are approved, the Debtors will have successfully reduced the dollar amount of the claims underlying such settlements from approximately $1,541,858 to $624,691, only a portion of which settlements will be payable in cash (the remainder being treated as allowed general unsecured claims).

(h)    The Debtors have continued to monitor their scheduling and bar date noticing responsibilities to ensure that all known claims are ultimately discharged.  In that regard, the Debtors prepared and filed on November 3, 2005 a second set of amended schedules of assets and liabilities and executory contracts and unexpired leases.  In addition, on November 4, 2005, the Debtors filed a Notice of Establishment of Special Bar Date Applicable to Certain Subsequently Identified Claimants and therein established November 30, 2005 as a special bar date for (i) parties who were listed in the second amended schedules; (ii) parties who were mailed the initial bar date notice but as to which a remailing is necessary; and (iii) certain subsequently identified potential claimants who were not identified in time to receive notice of the original bar date established in these cases.

(i)    The Debtors have continued to obtain approval, pursuant to section 363 of the Bankruptcy Code, to sell several assets including (i) pursuant to order dated August 25, 2005, the liquidation of two manufacturing facilities, and (ii) pursuant to order dated September 8, 2005, the liquidation of several distribution centers and dairies.  Thereafter, by order dated November 18, 2005, the Debtors obtained court approval to sell a reclamation center and related assets located in Miami, Florida.

(j)    Since the filing date of the last Prior Exclusivity Motion, the Debtors resolved all remaining objections to the motion for an order prohibiting the discontinuation of utility services and establishing a procedure under which utility companies could seek additional adequate assurance of payment.  During that period, the Debtors, which depended upon approximately 800 utility companies as of the Petition Date, have negotiated, documented and, in certain instances, implemented, resolutions with various utility companies that made adequate assurance requests or made demands on bonds which secured the payment of prepetition utility services to the Debtors.

(k)    The Debtors have various forms of insurance that were and are essential to the Debtors' business.  The Debtors have historically financed the insurance premiums under many of these policies

through AFCO, as opposed to paying them in full. Consistent with this practice, by order dated November 17, 2005, the Debtors obtained authority to finance through AFCO approximately $2.3 million in insurance premiums for other insurance policies that were up for renewal.

26.     Notwithstanding the significant reorganization progress demonstrated to date, this third requested extension of the Exclusive Periods is necessary as more must be accomplished before a plan of reorganization can be proposed. As part of the bankruptcy process, a substantial amount of review, reconciliation and objection work remains to be done with respect to the more than 12,500 proofs of claim on file, before the Debtors or any other party are in a position to present credible estimates of maximum claim amounts per class in a disclosure statement, particularly given the number of proofs of claim that were filed in unliquidated amounts. In addition, significant time will be required to complete the process of analyzing hundreds of executory contracts and personal property leases, in addition to the Debtors' remaining real property leases, and to make final decisions with respect to assumption or rejection, the results of which must be factored into a disclosure statement.

27.     On the business level, the Debtors are now monitoring their marginal stores in the existing footprint, and assessing the effectiveness of the Operational Initiatives that the Debtors have put in place. The Debtors believe that once they are able to further analyze the results produced by these initiatives, the Debtors will be able to streamline and finalize their Business Plan and establish the foundation for a plan of reorganization. The Debtors believe that no party in interest would benefit from the premature filing of a plan of reorganization.

28.     Moreover, under the circumstances, a premature termination of the Exclusive Periods would deny the Debtors a meaningful opportunity to negotiate and propose a confirmable plan, and would be antithetical to the paramount reorganization objective of chapter

11.  A termination of the Debtors' Exclusive Periods at this time would encourage the development of competing multiple plans that could lead to unwarranted confrontations, litigation and increased administrative costs.

C.      Creditors will not be prejudiced by an extension.

29.     The requested extension of the Exclusive Periods will not prejudice the legitimate interests of any creditor or other party in interest.  To the contrary, the proposed extension will advance the Debtors' efforts to preserve value and avoid unnecessary and wasteful motion practice.

30.     Moreover, given the current posture of these cases, it would be premature and counter-productive for any non-Debtor party in interest to initiate the plan proposal process. Instead, the requested extension will increase the likelihood of a consensual resolution of these cases that preserves reorganization value much more than any plan that the Debtors might file at this time simply to preserve their exclusive rights -- or any creditor initiated plan process that lacks necessary foundation and support.

D.      Conclusion.

31.     In short, the Debtors deserve and should be afforded a full and fair opportunity to negotiate and propose a chapter 11 plan that builds on the significant reorganization progress made to date and benefit from the undertakings planned for the next several months. Accordingly, the requested extension is entirely warranted under the circumstances.

32.     Courts in various jurisdictions have been willing to grant subsequent extensions of exclusivity periods that result in a total extension of exclusivity that is of a similar or greater length than the sum of the number of days that exclusivity in these cases will have been extended if the relief requested by this Motion is granted.  See, e.g., In re TL Administration Corp., Case

No. 03-15564 (Bankr. S.D.N.Y. Mar. 23, 2005) (five extensions granted, cumulatively extending the exclusive periods by approximately 16 months); In re Global Crossing Ltd., Case No. 02-40188 (Bankr. S.D.N.Y. Dec. 4, 2003) (multiple extensions granted, cumulatively extending the exclusive periods by approximately 18 months); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. June 30, 2003) (multiple extensions granted, cumulatively extending the exclusive periods by approximately 15 months); In re Casual Male Corp., Case No. 01-41404 (Bankr. S.D.N.Y. May 12, 2003) (multiple extensions granted, cumulatively extending the exclusive periods by almost two years); In re UAL Corporation, Case No. 02-48191 (Bankr. N.D. Ill. 2002) (aggregate exclusivity extended for approximately 32 months); In re Kaiser Aluminum Corp., Case No. 02-10429 (Bankr. D. Del. 2002) (aggregate exclusivity extended for more than 42 months); In re Bethlehem Steel Corp., Case No. 01-15288 (Bankr. S.D.N.Y. 2002) (aggregate exclusivity extension of more than 17 months); In re Safety-Kleen, Corp., Case No. 00-02303 (Bankr. D. Del. 2000) (aggregate exclusivity extended for more than 30 months); In re Service Merchandise Company, Case. No. 99-02649 (Bankr. M.D. Tenn. 1999) (aggregate exclusivity granted for more than 47 months); Gaines v. Perkins, 71 B.R. 294, 296 (W.D. Tenn. 1987) (exclusivity extended for over two years). Consistent with these cases, sufficient cause exists for the extension of the Exclusive Periods as requested by the Debtors in this Motion.

## Notice

33.     Notice of the Motion has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, (d) counsel for the Equity Committee, and (e) the other parties in interest named on the Master Service List maintained in these cases.  No other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached as Exhibit A, extending their Exclusive Proposal Period to March 20, 2006, and extending their Exclusive Solicitation Period to and including May 22, 2006, without prejudice to the Debtors' rights to seek further extensions, and (ii) grant the Debtors such other and further relief as is just and proper.

Dated: November 23, 2005

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By   *s/ D. J. Baker* | By   *s/ Cynthia C. Jackson* |
|     D. J. Baker |     Stephen D. Busey |
|     Sally McDonald Henry |     James H. Post |
|     Rosalie Walker Gray |     Cynthia C. Jackson, |
|     Adam S. Ravin |     Florida Bar Number 498882 |
| Four Times Square | 225 Water Street, Suite 1800 |
| New York, New York 10036 | Jacksonville, Florida  32202 |
| (212) 735-3000 | (904) 359-7700 |
| (212) 735-2000 (facsimile) | (904) 359-7708 (facsimile) |
| djbaker@skadden.com | cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

**<u>EXHIBIT A</u>**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER GRANTING THIRD EXTENSION OF EXCLUSIVE PERIODS
## FOR FILING CHAPTER 11 PLANS AND OBTAINING
## <u>ACCEPTANCES OF SUCH PLANS</u>

These cases came before the Court for hearing on December 15, 2005,

upon the motion of Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the

above-captioned cases, as debtors and debtors-in-possession (the "Debtors"), for entry of

an order under 11 U.S.C. §1121(d) further extending their exclusive periods for

proposing and obtaining acceptances of one or more plans of reorganization for an

additional 90 days (the "Motion").  The Court has read the Motion and considered the

representations of counsel.  Based upon the representations of counsel and without

objection by the United States Trustee or any other interested parties, it is

ORDERED AND ADJUDGED THAT:

1.    The Motion is granted.

2.    The Debtors' Exclusive Proposal Period is extended to and including

March 20, 2006.

3.    The Debtors' Exclusive Solicitation Period is extended to and

including May 22, 2006.

4.    Entry of this Order is without prejudice to (a) the Debtors' right to seek from this Court other or further extensions of the Exclusive Periods, or (b) any party in interest's right to seek to reduce the Exclusive Periods for cause.

Dated December ___, 2005 in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

2