**Hearing Date:  December 15, 2005**
**Objection Deadline:  December 5, 2005**
**at 4:00 p.m. (E.T.)**

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors.[1] | ) | Jointly Administered |

# DEBTORS' MOTION FOR ORDER
# (A) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF
# LIENS, CLAIMS AND INTERESTS AND EXEMPT FROM TAXES,
# (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT
# OF LEASES AND (C) GRANTING RELATED RELIEF

Winn-Dixie Stores, Inc. ("WD Stores") and twenty-three of its

subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the

"Debtors"), move the Court for entry of an order pursuant to 11 U.S.C. §§ 105(a),

363, 365 and 1146 and Fed. R. Bankr. P. 6004(g): (a) authorizing Winn-Dixie

Logistics, Inc. ("WD Logistics") to sell their leasehold interests in a dairy plant

located in Miami, Florida (the "Miami Dairy Plant") and authorizing WD Stores to

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

sell its equipment located at the Miami Dairy Plant, to Southeast Milk, Inc. (the "Purchaser"), subject to higher or better offers, free and clear of liens, claims and interests and exempt from stamp, transfer, recording, sales or similar tax, (b) authorizing the assumption and assignment of WD Logistics' lease of the Miami Dairy Plant, (c) determining that there is no requisite cure required, and (d) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

## **Background**

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of the Bankruptcy Code.  The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.  On August 17, 2005, an equity committee was appointed.

3.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-

Dixie Marketplace" banners.  As of the Petition Date, the Debtors were considered the eighth-largest food retailer in the United States and one of the largest in the Southeast with more than 900 stores.

4.      The Debtors have announced and are engaged in a footprint reduction that is expected to result in the sale or closure of 326 stores and related facilities (the "Targeted Stores").  To date, the Debtors have sold more than 100 Targeted Stores and sent rejection notices for another 300 Targeted Stores.

5.      WD Logistics, a wholly owned subsidiary of Winn-Dixie Stores, Inc. leases the Miami Dairy Plant under a lease agreement dated August 10, 1999 (the "Lease), with ZSF/WD Opa Locka, LLC (the "Landlord"). The Lease was assigned to WD Logistics by Winn-Dixie Stores in June, 2000.  The Debtors no longer use the Miami Dairy Plant because they have sufficient production capacity in their other dairies.

6.      The Debtors have marketed the Miami Dairy Plant extensively through The Blackstone Group, L.P. ("Blackstone").  Blackstone contacted over fifty potential purchasers.  Through Blackstone's efforts, the Debtors received two final proposals for the Miami Dairy Plant, including the offer by the Purchaser of $5,256,000.  After reviewing all offers, including all terms of all offers, the Debtors have determined that the Purchaser's offer is the highest and best offer for the Miami Dairy Plant.

**Relief Requested**

7.    By this Motion, the Debtors request (a) authority to sell WD Logistics' interests in the Lease and WD Stores' interest in all of the equipment located at the Miami Dairy Plant, as more particularly described on "Exhibit A" (collectively, the "Assets"), free and clear of liens, claims and interests and exempt from stamp, transfer, sales, recording or similar tax, subject to higher or better offers, (b) authority to assume and assign the Lease in connection with the sale (c) determining that there is no cure required, (d) releasing WD Logistics and WD Stores from any further liability under the Lease, and (e) granting related relief.

**The Asset Purchase Agreement**

8.    On November 17, 2005, WD Logistics, WD Stores and the Purchaser entered into the Asset Purchase Agreement attached to this Motion as Exhibit A (the "Purchase Agreement").

9.    A summary of the material terms of the transaction with the Purchaser, subject to this Court's approval, are as follows:[2]

> (a)    Assets.  The assets to be sold and transferred to the Purchaser include:
>
> > (i)    WD Stores' equipment located at the Miami Dairy Plant; and
> >
> > (ii)    WD Logistics' leasehold interest in the Premises (as defined in the Asset Purchase Agreement).

---

[2]    This summary of the Purchase Agreement is provided as a convenience only.  To the extent that this summary differs in any way from the terms of the Purchase Agreement, the terms of the Purchase Agreement control.

4

(b)    <u>Purchase Price</u>.  On the terms and subject to the conditions set forth in the Purchase Agreement, the net aggregate purchase price for the Assets is $5,256,000 (the "Purchase Price"). The Purchaser has deposited the sum of $525,600.

(c)    <u>Sale Free and Clear</u>.  The Purchase Agreement provides that the Assets are to be transferred free and clear of any liens, claims, interests and encumbrances other than the Permitted Encumbrances, as defined in the Purchase Agreement.

10.    The Purchase Agreement provides for the assumption and assignment of the Lease to the Purchaser.  The Debtors do not believe there are any existing defaults under the lease and as such, that no cure is required under Bankruptcy Code section 365.  If the Landlord asserts that a cure is required, the Landlord must first file a timely objection to the Motion on or before December 5, 2005.  If the Landlord fails to file a timely objection, the Landlord will be deemed to have consented to the Motion and will be barred from asserting any cure amount is due.

11.    The Debtors now move for authority to consummate the sale of the Assets with the Purchaser or, alternatively, to the party submitting a higher or better offer for the Assets.

<u>**Solicitation of Higher and Better Offers**</u>

12.    Notwithstanding that the Assets have been sufficiently marketed, the Debtors are soliciting higher and better bids for the Assets.  Any person or entity interested in submitting a higher and better bid for the Assets must submit such bid so that it is received by Paul Schlaack at Blackstone, 345 Park Avenue, Floor 29, New York, NY 10154, mailto: with a copy to undersigned counsel for the

Debtors no later than 4:00 p.m. (prevailing Eastern Time) on December 5, 2005. All bids must comply with the bidding procedures approved by order of the Bankruptcy Court dated June 21, 2005 (Docket No. 1801). To qualify as a competing bid, the offer must net the Debtors' estates at least $5,550,000 and be accompanied by a certified check made out to Winn-Dixie Stores, Inc. in an amount equal to 10% of the competing bid.

13.     If the Debtors receive a higher or better offer for the Assets, they will conduct an auction (the "Auction") for the Assets in accordance with the Bidding Procedures Order. The Auction will take place at 10:00 a.m. (prevailing Eastern Time) at the offices of Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida, on Tuesday, December 13, 2005, two days prior to the hearing on the Motion (the "Sale Hearing"). The Debtors will conduct the Auction in consultation with the Creditors' Committee and the DIP Lender and on terms the Debtors determine to be in the best interests of their estates and creditors.

## **Applicable Authority**

### A.    **Authority to Sell Assets**

14.     Bankruptcy Code section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 1107(a) gives the Debtors, as debtors-in-possession, the same authority as

a trustee to use, sell or lease property under section 363(b)(1).  See 11 U.S.C.

§ 1107(a).

15.     A Debtors' sale under section 363(b)(1) should be approved when

supported by a sound business reason.   See *In re B.D.K. Health Mgmt., Inc.*

("B.D.K. Health Mgmt."), Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5

(Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where

sale serves a sound business purpose); *see also Official Comm. of Unsecured*

*Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.),*

973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a § 363(b)

application must find from the evidence presented before him a good business

reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp.*

*(In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Fulton State Bank v.*

*Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus., Inc.*

*v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court

can authorize a sale of all a chapter 11 debtor's assets under § 363(b)(1) when a

sound business purpose dictates such action"); *In re Del. & Hudson Ry. Co.*, 124

B.R. 169, 175-76 (D. Del. 1991).

16.     Once a court is satisfied that a sound business reason for the sale

exists, the Court must also consider whether (a) the sale price is fair and

reasonable, (b) the purchaser is proceeding in good faith, and (c) the Debtor has

provided interested parties with adequate and reasonable notice. *Delaware & Hudson*, 124 B.R. at 175-176.

17.    The Debtors have a sound business reason for the sale of the Assets.  The Debtors no longer use the Miami Dairy Plant and remain liable for the costs associated with the Miami Dairy Plant (at over $4,752,000, annually).

18.    The Debtors' sale of the Assets to the Purchaser is subject to competing bids, ensuring that the Debtors will receive the highest or best value for the Assets.  Thus, the fairness and reasonableness of the consideration to be received for the Assets ultimately will be demonstrated by a "market check" and auction process -- the best means for establishing whether a fair and reasonable price is being paid.

19.    In accordance with Local Rule 2002-1, the Debtors will serve notice of the Motion on the following parties: (a) each taxing authority known to the Debtors to have a potential interest in the Assets, (b) all parties that expressed interest in purchasing the Assets; (c) the Purchaser; (d) counsel for the DIP Lenders; (e) counsel for the Creditors' Committee; (f) counsel for the Equity Committee; (g) all known holders of Interests and Claims (as defined below) in the Assets; (h) the Landlord; (i) all entities having requested notices pursuant to Fed. R. Bankr. P. 2002; and (j) the Office of United States Trustee.

**B.      Bankruptcy Code Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims.**

20.      The Debtors request that their sale of the Assets be approved free and clear of any liens, claims or interests.  Pursuant to Bankruptcy Code section 363(f), a debtor may sell property of the estate free and clear of all liens, claims and interests after notice and hearing.  *See In re Parrish*, 171 B.R. 138 (Bankr. M.D. Fla. 1994).

21.      The Debtors believe that with the exception of the Permitted Encumbrances (as defined in the Purchase Agreement), there are no interests in or claims against the Assets other than the interest of Wachovia Bank, National Association, as Administrative Agent and Collateral Agent (collectively, the "DIP Lender").  The interest of the DIP Lender will be satisfied because the Debtors will cause the proceeds from the sale to be paid in accordance with the terms of the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-Petition Secured Lenders dated March 23, 2005 (Docket No. 501) (the "Final Financing Order") and the Loan Documents (as defined in the Final Financing Order).

C.      **Good Faith Purchaser**

22.      The Debtors request that the Court find that the Purchaser, or the

party who ultimately submits the highest or best offer for the Assets, acted in good

faith within the meaning of Bankruptcy Code section 363(m).

23.      Bankruptcy Code section 363(m) provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does
> not affect the validity of a sale or lease under such authorization to
> an entity that purchased or leased such property in good faith,
> whether or not such entity knew of the pendency of the appeal,
> unless such authorization and such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m)

24.      The Bankruptcy Code does not define the term "good faith."

Courts, however, indicate that a party would have to show fraud or collusion

between the purchaser and the debtor-in-possession or trustee in order to

demonstrate a lack of good faith.

> The requirement that a purchaser act in good faith . . . speaks to the
> integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a purchaser's good
> faith status at a judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

*In re Apex Oil Co.,* 92 B.R. 847, 865
(Bankr. E.D. Mo. 1988)

*Accord Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs. (In re Colony Hill*

*Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997).  No such facts exist here.

10

25.    The Debtors assert that:  (a) the proposed sale is the subject of arm's length negotiations with the Purchaser and is made in good faith; (b) the Purchaser has no affiliation with the Debtors; (c) the Assets were marketed extensively and the purchase price is fair and reasonable; (d) to the best of the Debtors' knowledge, the Purchaser has taken no action to chill or otherwise collude with any other party to restrict bidding on the Assets; and (e) the marketing process that occurred and the notice of the Sale Hearing ensure that the Purchaser has not exerted undue influence over the Debtors.  Accordingly, the Debtors request that the Court find that the Purchaser, or the party submitting a higher or better offer, acted in good faith within the meaning of Bankruptcy Code section 363(m).  *See B.D.K. Health Mgmt.,* 1998 WL 34188241, at *4 (finding that the purchaser is entitled to the protections of Bankruptcy Code section 363(m) because the sale was negotiated at arms-length, proposed in good faith and the consideration for the assets was fair and reasonable).  The Debtors' proposed sale of the Assets is the product of arm's length negotiations with the Purchaser and was made in good faith.  The Purchaser has no affiliation with the Debtors, and the ability of third parties to make higher or better bids ensures that the Purchaser has not exerted any undue influence over the Debtors.

**D.    The Sale Should be Exempt from Taxes**

26.    Bankruptcy Code section 1146(c) provides that "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of

transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(c). This language has been construed to include transfers pursuant to a sale outside of, but in furtherance of effectuating, a reorganization plan. *Webster Classic Auctions, Inc.,* 318 B.R. 216, 218 (Bankr. M.D. Fla. 2004) (adopting rationale that purpose of Bankruptcy Code section 1146(c) is to facilitate reorganizations and that transfers need not be postconfirmation); *BDK Health Mgmt.,* 1998 WL 34188241, at *8 (granting Bankruptcy Code section 1146(c) relief outside of confirmed plan); *see also In re T.H. Orlando Ltd.,* 391 F.3d 1287, 1291 (11th Cir. 2004) (exemption applies where transfer is necessary to the consummation of a plan.); *City of New York v. Jacoby-Bender, Inc. (In re Jacoby-Bender, Inc.),* 758 F.2d 840, 841-42 (2d Cir. 1985) (holding that where a transfer is necessary to the consummation of a plan, the transfer is "under a plan" within the meaning of Bankruptcy Code section 1146(c)); *City of New York v. Smoss Enters. Corp. (In re Smoss Enters. Corp.)*, 54 B.R. 950, 951 (E.D.N.Y. 1985) (stating that section 1146(c) was designed to reach transfers on which "the plan hinged and which the court had to approve prior to the confirmation"), *aff'd mem.*, No. 85-5106, 1986 U.S. App. LEXIS 28677 (2d Cir. Mar. 31, 1986); *In re United Press Int'l, Inc.,* Case No. 91 B 13955 (FGC), 1992 Bankr. LEXIS 842, at *4, *6-7 (Bankr. S.D.N.Y. May 18, 1992) (holding that Bankruptcy Code section 1146(c) exemption applied to Section 363 sale where it found "the value of the Debtor's

assets is likely to deteriorate [during the] time necessary to . . . confirm a plan"); *In re Permar Provisions, Inc.*, 79 B.R. 530, 533-34 (Bankr. E.D.N.Y. 1987) (stating that determination of applicability of Bankruptcy Code section 1146(c) exemption is same for pre- and post-confirmation dispositions of property, namely "whether the sale of 'property is essential to confirmation of the plan'") (citation omitted).

27.     Although the Debtors have not yet filed a Chapter 11 plan of reorganization, an integral part of any plan will be the Debtors' ability to divest themselves of the Assets.   In light of the foregoing, the Debtors respectfully submit that the sale of the Assets is an integral part of, and a necessary predicate toward, the Debtors' Chapter 11 reorganization plan.  Accordingly, the sale should be exempt under Bankruptcy Code section 1146(c) from any stamp, transfer, sales, recording or similar taxes.

**E.     Authority to Assume and Assign the Leases**

28.     Bankruptcy Code Section 365(a) authorizes a debtor to assume and assign or to reject an unexpired lease, subject to the Court's approval.   Once assigned, the Debtors are released of any further liability under the Lease pursuant to Bankruptcy Code section 365(k).

29.     The standard that is applied in determining whether an unexpired lease should be assumed and assigned or rejected is the debtors' "business judgment" that the assumption or rejection is in the debtors' economic best interest.  *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp*., 872 F.2d 36, 40

13

(3d Cir. 1989); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984).

WD Logistics' assumption and assignment of the Lease, subject to a Successful

Bid, is an integral part of the Debtors' reorganization efforts and, therefore, within

the Debtors' sound business judgment.

30.    Bankruptcy Code Section 365(b)(1) codifies the requirements for

assuming an unexpired lease of a debtor:

> If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or lease
> unless, at the time of assumption of such contract or lease, the
> trustee:
>
> (A)    cures, or provides adequate assurance that the trustee will
>        promptly cure, such default;
>
> (B)    compensates, or provides adequate assurance that the trustee
>        will promptly compensate, a party other than the debtor to
>        such contract or lease, for any actual pecuniary loss to such
>        party resulting from such default; and
>
> (C)    provides adequate assurance of future performance under
>        such contract or lease.
>
> 11 U.S.C. § 365(b)(1).

31.    Because WD Logistics is not in default under the Lease, no cure is

required.  At the Sale Hearing, the Debtors will satisfy Bankruptcy Code Section

365(b)(1)(C), by demonstrating adequate assurance of future performance by the

Purchaser.  Bankruptcy Code Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the
> debtor only if:
>
> (A)    the trustee assumes such contract or lease in accordance with
>        the provisions of this section; and

14

(B)     adequate assurance of future performance by the assignee of
        such contract or lease is provided, whether or not there has
        been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

32.     The meaning of "adequate assurance" depends on the facts and
circumstances of each case, but should "be given a practical pragmatic
construction". *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re
Sanshoe Worldwide Corp.),* 139 B.R. 585, 592 (S.D.N.Y. 1992) (citation omitted),
*aff'd,* 993 F.2d 300 (2d Cir. 1993).  The assurance that rent will be paid is a chief
determinant in assessing adequate assurance of future performance.  *Id*.

33.     Thus, adequate assurance includes demonstrating the assignee's
financial health and experience in managing the type of enterprise or property
assigned.  *See, e.g., In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y.
1986) (adequate assurance of future performance was present when prospective
assignee of lease from debtor had the financial resources, and an expressed
willingness, to devote sufficient funding to business in order to give it strong
likelihood of succeeding).

34.     If the Landlord objects to the proposed sale, the Debtors will offer
evidence at the Sale Hearing to demonstrate the financial wherewithal of the
Purchaser including, its experience in the industry and its willingness and ability
to perform.   At the Sale Hearing, the Court and the Landlord will have the
opportunity to evaluate and, if necessary, challenge the ability of the Purchaser to

15

provide adequate assurance of future performance under the Lease.  The Court will therefore have a sufficient basis to find that adequate assurance of future performance exists.

**F.        Elimination of 10-Day Stay Under Rules 6004(g)**

35.        Pursuant to Rule 6004(g), Fed.R. Bankr. P., unless the Court orders otherwise, all orders authorizing the sale of property outside of the ordinary course of business pursuant to Bankruptcy Code section 363 are automatically stayed for ten days after entry of the order.  Given the requirements of the Purchase Agreement and the need to close the sale as promptly as possible, the Debtors request that the Court waive the 10-day stay period.

**G.        Objection Deadline**

36.        Only objections filed and served on Sally McDonald Henry at shenry@skadden.com, Skadden, Arps, Slate, Meagher, & Flom, LLP, Four Times Square, New York, New York 10036 and on Cynthia C. Jackson at cjackson@smithhulsey.com, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 so as to be received by December 5, 2005 at 4:00 p.m. (E.T.) will be considered by the Bankruptcy Court at the Hearing.

## Conclusion

For the foregoing reasons, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit B (a) granting the Motion and authorizing the sale of the Assets to the Purchaser in accordance with the Purchase Agreement, or to the party submitting a higher or otherwise better offer for the Assets; (b) authorizing WD Logistics to assume and assign the Lease; (c) releasing WD Logistics and WD Stores from any further liability under the Lease; (c) authorizing WD Stores and WD Logistics to take all actions reasonably necessary to effectuate the sale of the Assets in accordance with the Purchase Agreement; and (d) granting such other and further relief as the Court deems just and proper.

Dated: November 23, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By    */s/ D. J. Baker*
     D. J. Baker
     Sally McDonald Henry
     Rosalie W. Gray

Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for Debtors

SMITH HULSEY & BUSEY

By    */s/ Cynthia C. Jackson*
     Stephen D. Busey
     James H. Post
     Cynthia C. Jackson  (F.B.N. 498882)

225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Debtors