UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

### DEBTORS' OBJECTION TO EQUITY COMMITTEE'S APPLICATION FOR NUNC PRO TUNC RETENTION OF JEFFERIES & COMPANY, INC. AS FINANCIAL ADVISOR

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), object to the Application for an Order Pursuant to Sections 328 and 1103(a) of the Bankruptcy Code and Bankruptcy Rule 2014 Authorizing the Nunc Pro Tunc Employment and Retention of Jefferies & Company, Inc. as Financial Advisor to the Official Committee of Equity Security Holders (Docket No. 3719) (the "Application") on the following grounds:

1.    The Official Committee of Equity Security Holders (the "Equity Committee") seeks to retain Jefferies & Company, Inc. ("Jefferies) on the terms set forth in the engagement letter attached to the Application (the "Letter Agreement"). The Debtors have requested that the Equity Committee and Jefferies revise the Letter Agreement to remove provisions that purport to bind the Debtors, who are not signatories to the agreement. Upon information and belief, Jefferies has agreed to make the modifications as reflected in the attached revised Letter Agreement. To the extent the Court determines to approve the engagement of

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie

Jefferies, such approval should be on the terms reflected in the revised Letter Agreement, subject to the additional objections set forth below.

2. With respect to the economic terms of Jefferies' retention, the Debtors do not object to the monthly fee amount or to the formula for determining the amount of a success fee. The Debtors, however, do object to the payment of any success fee in a form other than the form in which distributions, if any, are made to the Debtors' stockholders under the plan of reorganization. For example, if stockholders receive only warrants under the plan, Jefferies should receive the success fee in warrants. The Letter Agreement contemplates that the Equity Committee may request that Jefferies receive the success fee in the form of stockholder distributions, in which case Jefferies must agree. Whether Jefferies, as a professional for stockholders, should be entitled to a success fee in an enhanced form that operates to diminish the value available for higher priority creditors is an important issue that should not be left solely in the hands of the Equity Committee. Therefore, the Debtors request either that the Court approve a success bonus component for Jefferies only if it is payable in the form of stockholder distributions or that the Court permit payment in cash or any other form only with the consent of the Debtors and the Official Committee of Unsecured Creditors (the "Creditors Committee").

3. The Letter Agreement seeks indemnification protections for Jefferies. The Debtors have advised the Equity Committee that such protections must be limited and made consistent with the protections granted to the financial advisors for the Debtors and the Creditors Committee by orders of this Court, which include expanded exclusions and a court application requirement. The Debtors understand that the Equity Committee has agreed to such limitations,

---

Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

but in the event the proposed retention order submitted by the Equity Committee does not contain the necessary language, the Debtors object to the granting of indemnification to Jefferies.

4. The Application seeks to retain Jefferies under 11 U.S.C. § 328. The Office of the United States Trustee has opposed retentions under § 328 for other financial advisors in these cases unless the rights of the United States Trustee to object on all grounds are preserved and unless notice and an opportunity to object is provided to all parties in interest. Although the Debtors understand that the Equity Committee has agreed to accept for Jefferies the restrictions applicable to other financial advisor retentions under § 328, in the event the proposed retention order submitted by the Equity Committee does not contain the necessary language, the Debtors object to the granting of § 328 protections to Jefferies. The Debtors also object to the incurrence of noticing costs and the granting of § 328 protections until there is a final resolution of the pending issue of disbanding the Equity Committee.

5. This objection is without prejudice to the disbandment issue. If the Court determines to approve the retention of Jefferies before the disbandment issue is determined, the Debtors request that the approval be on conditional terms -- particularly including a limitation of § 328 protections with respect to any success fee -- that will not unfairly bind their estates in the event the Equity Committee is disbanded.

WHEREFORE, the Debtors respectfully request that the Court (i) deny the retention of Jefferies except on terms consistent with the foregoing and (ii) grant the Debtors such other and further relief as the Court deems just and proper.

Dated: November 29, 2005

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By  *s/ D. J. Baker*  <br> D. J. Baker <br> Sally McDonald Henry <br> Rosalie Walker Gray <br> Four Times Square <br> New York, New York 10036 <br> (212) 735-3000 <br> (212) 735-2000 (facsimile) <br> djbaker@skadden.com | By  *s/ Cynthia C. Jackson*  <br> Stephen D. Busey <br> James H. Post <br> Cynthia C. Jackson (Bar No. 498882) <br> 225 Water Street, Suite 1800 <br> Jacksonville, Florida  32202 <br> (904) 359-7700 <br> (904) 359-7708 (facsimile) <br> cjackson@smithhulsey.com |
| Co-Counsel for the Debtors | Co-Counsel for the Debtors |

**ATTACHMENT**

**REVISED LETTER AGREEMENT**

1058776.02-New York Server 7A - MSW

**Strictly Confidential**

**Engagement Letter**

September 15, 2005

**Official Committee of Equity Security Holders
of Winn-Dixie Stores, Inc. et al**
1017 Topsail Drive
Vallejo, CA 94591

Attention: Kenneth M. Thomas, Chairman

Re: Advisory Services

This agreement (the "Agreement") will confirm the arrangements under which Jefferies & Company, Inc. ("Jefferies") has been engaged by the Official Committee of Equity Security Holders (the "Committee"), appointed in the bankruptcy cases (the "Cases") of Winn-Dixie Stores, Inc., and its debtor affiliates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the Middle District of Florida, to act as exclusive financial advisor to the Committee in the Cases.

1. Services. In connection with the Cases, Jefferies will perform the following financial advisory services, among others, for the Committee: (a) become familiar, to the extent Jefferies deems appropriate, with and analyze the business, operations, assets, financial condition and prospects of the Debtors; (b) advise the Committee on the current state of the "restructuring market"; (c) assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, a sale of assets or equity under Section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "Restructuring"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring; (d) assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization; and (e) render such other financial advisory services as may from time to time be agreed upon by the Committee and Jefferies, including but not limited to providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation. It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2. Cooperation.

(a) The Committee will furnish or cause the Debtors to furnish Jefferies with all materials and information regarding the business and financial condition of the Debtors which the Committee and/or the Debtors believe are relevant to any Restructuring or which Jefferies requests (all such information gathered or furnished being the "Information"). The Committee shall advise, and shall request the Debtor's advise, Jefferies promptly of the occurrence of any event or any other change in fact or

**Deleted:** and the Debtors

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 2

circumstance prior to the closing of any Restructuring upon which Jefferies formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

(b) Jefferies (i) will be relying on the Information and on information available from generally recognized public sources, without having independently verified the accuracy or completeness of the same, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) will not make an appraisal of any assets or liabilities of the Debtors, and (iv) retains the right to perform due diligence during the course of this engagement.

3. <u>Use of Advice, etc.</u>

(a) Jefferies' advice is solely for the use and information of the Committee, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person including, but not limited to, any member of the Committee in its individual capacity, any other security holder, or employee or creditor of the Debtors and may not be used or relied upon for any other purpose.

(b) The Committee agrees that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its sole discretion and which approval, if given, will expire immediately upon the termination of Jefferies' service hereunder.  No statements made or advice rendered by Jefferies in connection with the services performed by Jefferies pursuant to this Agreement will be quoted by, nor will any such statements or advice be referred to in, any communication, whether written or oral, prepared, issued or transmitted, directly or indirectly, by the Committee without the prior written authorization of Jefferies, which may be given or withheld in its sole discretion, except to the extent required by law (in which case the appropriate party shall so advise Jefferies in writing prior to such use and shall consult with Jefferies with respect to the form and timing of disclosure). [margin: **Deleted:** and the Debtors] [margin: **Deleted:** or the Debtors]

(c) The Committee acknowledges that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Committee is solely contractual in nature and that Jefferies does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise.  Jefferies and the Indemnified Persons shall not be deemed agents or fiduciaries of the Committee, any of its members, or the Debtors, and will not have the authority to legally bind any of the foregoing.

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 3

4.    Compensation.  The Committee shall obtain an order of the Bankruptcy Court obligating the Debtors to pay Jefferies the following:

    (a)    Subject to approval by the Bankruptcy Court, the Debtors shall pay to Jefferies a monthly fee (the "Monthly Fee") equal to $125,000.00 per month until Jefferies has been paid $375,000 in such Monthly Fees, and $100,000.00 per month thereafter.  If this Agreement becomes effective on a day other than the first day of the month, Jefferies will be paid a Monthly Fee pro rated from the Effective Date (as defined below) of this Agreement to the end of the first month.  Each Monthly Fee will be fully accrued, due and payable in advance on the first day of each month.

    (b)    In addition, in consideration of the services rendered by Jefferies hereunder,  upon approval of the Bankruptcy Court the Debtors will pay or cause to be paid to Jefferies (contingent on a minimum recovery to Equity (as defined below) of $50,000,000.00) a success fee in an amount equal to (i) 1.00% of any recoveries by the holders of the Debtors' equity securities (the "Equity") in an aggregate amount up to and including $150,000,000.00; (ii) 1.25% of any recoveries by Equity in any aggregate amount between $150,000,00.01 up to and including $300,000,000.00; and (iii) 1.50% of any recoveries by Equity in an aggregate amount in excess of $300,000,000.00 (the "Success Fee").  For the purposes of this Section 4(b), "recoveries" includes but is not limited to the fair market value of any cash, cash equivalents, securities, trust, sale or litigation interests, or other consideration, whether immediately realized or not.  A credit equal to 50% of all Monthly Fees paid to Jefferies in excess of $375,000 will be applicable against the Success Fee (if any).  Fees payable pursuant to this Section 4(b) are fully earned and accrued upon approval of this Agreement by the Bankruptcy Court in accordance with Paragraph 8 below, and are due and payable simultaneously with receipt of recoveries (or interests therein) by Equity.

    (c)    The Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.

5.    Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Restructuring occurs, subject to approval by the Bankruptcy Court the Debtors shall reimburse Jefferies for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

6.    Termination.  Jefferies' engagement hereunder will run from the effective date of this Agreement as approved by a final order of the Bankruptcy Court that is acceptable to

[Margin comments:
Deleted: The Debtors agree
Deleted: T
Deleted: The Debtors and
Deleted: t]

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 4

Jefferies in its sole and absolute discretion (the "Effective Date") to the earlier of the date on which (A) each of these Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and has become effective, or (B) Jefferies' services hereunder are terminated by written notice by either Jefferies or the Committee on fifteen days' notice to the other. Upon any termination of this Agreement, and upon order of the Bankruptcy Court the Debtors shall pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. Upon termination of this Agreement for any reason, Schedule A to this Agreement, including the indemnity and contribution provisions therein, and the provisions of Sections 3-7, 10, and 13-16 of this Agreement shall remain operative and in full force and effect, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Debtors, the Committee, Jefferies, and the Indemnified Persons, and any chapter 7 Trustee appointed in the Cases.

7. Indemnification, etc. As further consideration under this Agreement, the Debtors shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A. The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.

8. Bankruptcy Court Approval. The Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 328 and 1103(a) of the Bankruptcy Code, from the bankruptcy court or district court having jurisdiction and presiding over the Cases (the "Bankruptcy Court"). Such approval shall provide for retention of Jefferies *nunc pro tunc* to September 1, 2005, shall incorporate all of the terms and conditions herein (explicitly including but not limited to the Debtors' obligations related hereto), shall bind the Debtors to such terms and conditions as if the Debtors were a signatory hereto, and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the Committee's obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless a final order, no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which is acceptable to Jefferies in its sole and absolute discretion, is entered by the Bankruptcy Court.

**Deleted:** (explicitly including, but not limited to, the Debtors' acknowledgements and obligations set forth in Sections 2-8, 12-16, and Schedule A)

Notwithstanding the Debtors' obligations hereunder to pay the fees and expenses of Jefferies, to indemnify Jefferies and to provide Jefferies with information, it is understood and agreed that Jefferies' sole and exclusive client is the Committee and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 5

9.	Exclusivity.  The Committee agrees that it will not engage any other person to perform any financial or similar consulting services with respect to any potential Restructuring.  If the Committee is contacted by any person concerning a potential Restructuring, the Committee will inform Jefferies of such inquiry, and all relevant details thereof.

10.	No Assurances; Other Transactions; Disclaimer.

	(a)	This Agreement does not constitute a commitment or obligation by Jefferies or any of its affiliates to provide any financing which may be required or advisable in connection with any Restructuring, and the Debtors are not obligated by the terms hereof to seek such financing from Jefferies or any of its affiliates.  By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors will be able to implement or consummate any Restructuring or achieve any other result.

	(b)	Jefferies Group, Inc. (the parent of Jefferies) and its subsidiaries, and affiliates (collectively, the "Jefferies Group") are involved in a wide range of investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research) from which conflicting interests, or duties, may arise.  Information that is held elsewhere within Jefferies or within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement.  Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Committee or any other party or utilize for the Committee's benefit any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business.  In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Debtors and members of the Committee, and of potential participants in any Restructuring for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities; provided, however, that persons within the Jefferies Group making such trades shall not have access to non-public information concerning the Debtor.  Further, the Committee acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Restructuring or otherwise.  Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

11.	Construction and Governing Law.  This Agreement, together with Schedule A attached hereto and made part hereof, incorporates the entire understanding of the parties

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 6

and supersedes all previous agreements relating to the subject matter hereof should they exist. This Agreement and any issue arising out of or relating to the parties' relationship hereunder shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

12. <u>Arbitration</u>. Any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity hereof, any alleged breach of this Agreement or the engagement contemplated hereby (any of the foregoing, a "<u>Claim</u>") shall be brought in the Bankruptcy Court. If the Bankruptcy Court declines jurisdiction over any such matter, the parties agree that any Claim shall be submitted to JAMS/ENDISPUTE, or its successor, in New York, New York, for mediation; and if the matter is not resolved through mediation, then it shall be submitted for final and binding arbitration in front of a panel of three arbitrators with JAMS/ENDISPUTE in New York, New York under the JAMS/ENDISPUTE Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the plaintiff choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Committee agrees and consents to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

> **Deleted:** The Debtors and
> **Deleted:** t

13. <u>Payments</u>. All payments to be made to Jefferies hereunder shall be, unless otherwise agreed by Jefferies in its sole and absolute discretion, made in cash by wire transfer of immediately available U.S. funds without deduction for any tax, provided, that the Committee may opt to pay Jefferies the Success Fee in kind; provided, that Jefferies agrees that it will accept the Success Fee paid in kind (i.e., with the same securities as received by members of the Committee in connection with the Restructuring) at the suggestion of the Committee, subject to the approval of the Bankruptcy Court. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. Subject to Bankruptcy Court approval, the Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

> **Deleted:** the joint and several liability of each of the Debtors in these Cases, and,
> **Deleted:** shall be

14. <u>Announcements</u>. The Committee agrees that Jefferies may, following any Restructuring, place an announcement in such newspapers, electronic media and periodicals as it may choose, stating Jefferies' role and other material terms of the Restructuring, and identify the Committee in connection therewith. The Committee agrees that any press release it may issue announcing the Restructuring will, at Jefferies' request, contain a reference to Jefferies' role in the Restructuring.

> **Deleted:** and the Debtors
> **Deleted:** .
> **Deleted:** Jefferies shall be entitled to
> **Deleted:** and use the Debtors' name and logo, if any,
> **Deleted:** and the Debtors

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 7

15.     <u>Miscellaneous</u>.  This Agreement incorporates the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. If any provision hereof shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect nor any other provision hereof.  Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.  This Agreement may be executed in one or more facsimile counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.

16.     <u>Patriot Act</u>.  Jefferies hereby notifies the Debtors, the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Act (the "<u>Patriot Act</u>"), Jefferies may be required to obtain, verify and record information that identifies the Debtors, the Committee and the members of the Committee in a manner that satisfies the requirements of the Patriot Act.  This notice is given in accordance with the requirements of the Patriot Act.

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 8

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein.

        Sincerely,

        **JEFFERIES & COMPANY, INC.**

        By _____
            Name:  William Q. Derrough
            Title:   Managing Director

Accepted and Agreed:

**OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF WINN-DIXIE STORES, INC. ET AL**

By _____
    Name:  Kenneth M. Thomas
    Title:   Chairman

**SCHEDULE A**

Reference is hereby made to the engagement letter attached hereto (as amended from time to time in accordance with the terms thereof, the "Agreement") between Jefferies & Company, Inc. ("Jefferies") and the Official Committee of Equity Security Holders (the "Committee") appointed in the bankruptcy cases (the "Cases") of Winn-Dixie Stores, Inc., and its debtor affiliates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the Middle District of Florida. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates and any chapter 7 trustee appointed in the Debtors' bankruptcy Cases.

As further consideration under the Agreement, the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, counsel, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against, and the Debtors agree that no Indemnified Persons shall have any liability to the Debtors or any of its owners, parents, affiliates, securityholders or creditors for, any claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred ("Losses"), related to or arising out of or in connection with Jefferies' services under the Agreement, a Restructuring or any proposed transaction contemplated by the Agreement, or any Indemnified Person's role in connection therewith, provided, however, that the Debtors shall not be responsible for any Losses of any Indemnified Person that are determined, by a final, non-appealable judgment by a court, or arbitral tribunal, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct.

Neither the Debtors not the Committee shall settle or compromise, or consent to the entry of any judgment in, or otherwise seek to terminate any pending or threatened action, claim, suit or proceeding in which any Indemnified Person is or may be a party unless such Indemnified Person has given its prior written consent, or the settlement, compromise, consent or termination includes an express unconditional release of such Indemnified Person from all Losses arising out of such action, claim, suit or proceeding.

If for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is unavailable to an Indemnified Person or insufficient to hold an Indemnified Person harmless, then the Debtors, to the fullest extent permitted by law, shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses in such proportion as is appropriate to reflect the relative fault of the Debtors and the Committee, as applicable, on the one hand, and the relative fault of Jefferies on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors and the Committee, as applicable, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as the total transaction value of any Restructuring (or the total transaction value of any proposed Restructuring) to all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel) as they are incurred in connection with investigating, preparing, defending or settling any action or claim for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party. If any of Jefferies' personnel appear as witnesses, are deposed or are otherwise involved in the defense of any action against Jefferies, the Committee, the Debtors or the Debtors' affiliates, officers, managers, directors or employees, the Debtors will pay Jefferies (i) with respect to each day or part thereof that one of Jefferies' professional personnel appears as a witness or is deposed and/or (ii) with respect to each day or part thereof that one of Jefferies' professional personnel is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such action, including but not limited to $400 per hour per person with respect to each hour of time spent responding to or relating to any other or further discovery requests.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or Jefferies' services thereunder, (iii) shall apply to any modification of

**SCHEDULE A**

Jefferies' engagement, and shall remain in full force and effect following the completion or termination of the Agreement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors, including any chapter 7 trustee appointed in the Debtors' Cases, the Committee and each of its members, and to any successors or assigns to the Debtors' business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.