UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | NO. 3-05-bk-3817 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtor. | ) | Jointly Administered |
| | ) | |
| | ) | |

**BY-PASS PARTNERSHIP'S OBJECTION TO DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. § 365(d)(4) GRANTING THIRD EXTENSION OF TIME WITHIN WHICH DEBTORS MAY ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**

By-Pass Partnership ("By-Pass") objects to the Debtors' Motion For Order Under 11 U.S.C. § 365(d)(4) Granting Third Extension of Time Within Which Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Debtor's Motion").[1]  Since June, 2005, By-Pass has repeatedly requested that the Debtor assume or reject a lease entered into by and between the two entities on property located at 2210-2240 Veterans Memorial Drive,

---

[1] The Debtor has requested numerous extensions to assume or reject nonresidential real property leases. On March 17, 2005, Debtor filed a motion for an order pursuant to §365(d)(4) authorizing an extension of the time to reject or assume nonresidential real property leases. On April 12, 2005, Debtor obtained a bridge order providing an interim extension pending the outcome of the pending motion to transfer the case from the Southern District of New York to the Middle District of Florida.  On May 6, 2005 this Court issued an order pursuant to §365(d)(4) authorizing an extension until September 19, 2005. Most recently, on September 12, 2005, this Court again granted the Debtor's motion to extend the time in which to accept or reject its leases until December 19, 2005. The Debtor is now requesting an extension until March 20, 2006.

-2-

Abbeville, Louisiana (hereinafter referred to as the "Lease" and/or the "Leased Premises").[2]

By-Pass had repeatedly requested that Winn Dixie act on the Lease because it may be subjected to involuntary termination. On June 16, 2005, Central Progressive Bank ("Central Progressive") filed a Petition for Executory Process in the Fifteenth Judicial District for Parish of Vermillion, State of Louisiana, Case No. 83524 (the "State Court Action") claiming that Winn Dixie's filing under Title 11 constitutes a default under the Mortgage.[3] Central Progressive's Petition demands that the Leased Premises be seized and sold by executory proceedings—a Louisiana foreclosure device which permits judicial sale without court hearing. By Order dated June 17, 2005, the Sheriff of

---

[2] See, Motion to Compel Debtor to Assume or Reject Lease and accompanying Memorandum in Support of Motion to Compel Debtor to Assume or Reject Lease filed and served on the Debtor on November 17, 1005 attached as Exhibit "A." Despite several requests that Motion has not been set for hearing despite the time sensitive nature of the matter.

[3] On September 1, 1994, By-Pass executed and delivered to United of Omaha Life Insurance Company ("United of Omaha") a certain Mortgage Note in the original and principal amount of $3,125,000 secured by a mortgage encumbering the Leased Premises pursuant to an Act of Mortgage and Security Agreement by By-Pass to United of Omaha dated as of August 30, 1994 and recorded in the Mortgage Records of Vermilion Parish, Louisiana on August 31, 1994 (the "Mortgage"). Central Progressive acquired the Mortgage Note from United of Omaha by Bill of Sale, dated May 14, 2004. In connection with the Mortgage, Winn-Dixie of Louisiana, Inc. and United of Omaha entered into a Subordination, Non-Disturbance and Attornment Agreement with respect to the Leased Premises.

Vermillion Parish was directed to sell the Leased Premises at public auction. The auction was scheduled for August 24, 2005. Notably, there has never been a monetary default under the mortgage or the lease. Indeed, the sole and exclusive default under both is the Debtor's filing for relief under Chapter 11.

Under Louisiana law, a sheriff's sale extinguishes all lien and encumbrances, including recorded leases, which are subordinate to the lien of the seizing creditor. The Lease here is recorded, but subordinate to the Mortgage. Given that foreclosure would directly impact (and arguably extinguish) the Debtor's rights as lessee, By-Pass removed the State Court Action to the United States Bankruptcy Court of the Western District of Louisiana. By-Pass then requested that court to transfer the State Court Action to this Court. Central Progressive promptly filed a motion to remand and also opposed transfer of venue. The Debtor then intervened and both opposed remand and endorsed the venue motion.

While these proceedings were pending in Louisiana, the Debtor filed an adversary proceeding and named both By-Pass and Central Progressive as defendants (the "Adversary Proceeding"). In substance, the Adversary Proceeding seeks damages for Central Progressive's violation of the automatic stay, a declaratory judgment that the Debtor's rights as lessee cannot be impaired and injunction barring further action by Central Progressive. A status conference is not scheduled in that matter until mid-January, 2006.

NO.99570301.2

A hearing on the Motion to Remand was conducted on October 25, 2005. At that time, it became obvious that practical resolution of the litigation turns entirely on the Debtor's decision to assume or reject. All of the parties appear to be in agreement that there is substantial equity in the property, and that By-Pass should be able to substitute a lender if it can confirm the identity of its tenant. Obviously, that can only occur once the Debtor accepts or rejects.[4] Further, should the Debtor accept, it shall effectively eliminate Central Progressive's claimed default under the Mortgage. Recognizing these practical realities, the Louisiana Bankruptcy Court ordered that the Motion to Remand be held over until December 20—one day after the Debtor's current deadline to accept or reject.

Counsel for By-Pass have had discussions with the Debtor concerning its intentions with respect to the Lease. Based on those discussions, By-Pass understood that that the Debtor would announce its decision regarding the Lease no later than December 19, 2005. However, the Debtor has made no attempt to assume or reject the Lease and now seeks an additional four months to accept or reject nearly 800 leases, including the By-Pass Lease. When the matter was not resolved by the middle of November, By-Pass was forced to file a Motion to Compel Debtor to Assume or Reject Lease ( the "By-Pass Motion") requesting

---

[4]   By-Pass anticipates it will be able to obtain an alternate tenant promptly should the Debtor's elect to reject. By-Pass believes, and a recent appraisal appears to confirm, that the property is located in the most desirable area of

the Court compel the Debtor to accept or reject the Lease no later than December 19, 2005. Despite the time sensitive nature of the By-Pass Motion, the matter has not been set for hearing.

Were this Court to grant the Debtor's Motion without compelling Winn Dixie to assume or reject the Lease on or before December 19, 2005, By-Pass may suffer irreversible economic harm. Accordingly, By-Pass requests this Court deny the Debtor's Motion , or in the alternative, compel Winn Dixie to assume or reject the Lease subject to the By-Pass Motion no later than December 19, 2005 as any further extensions will deny By-Pass the protection afforded it under 11 U.S.C. §365(d)(4).

## LEGAL ANALYSIS

The language, legislative history, and case law interpreting §365(d)(4) demonstrate an intent to protect lessors such as By-Pass from a protracted limbo regarding the acceptance or rejection of their leases. The Debtor has now had over nine months to decide whether to assume or reject the nonresidential real property leases, including, but not limited to, the Lease. But most importantly, the Debtor's failure to assume or reject the Lease is uniquely prejudicial to By-Pass.

---

Abbeville. This is particularly true at this time because Hurricane Rita damaged much of the competitor's commercial properties.

A. **Section 365(d) is intended to protect lessors—particularly lessors such as By-Pass.**

The plain language of the Code, the legislative history, and the relevant case law all demonstrate that the foremost purpose of §365(d) is to protect lessors such as By-Pass from being placed in limbo with regards to their leases. Pursuant to the provisions of 11 U.S.C. §365(d)(4) debtors have 60 days to assume or reject leases of nonresidential real property.[5] A lease which is not assumed or rejected within that period is deemed rejected, unless the debtor can show good cause for an extension. 11 U.S.C. §365(d)(4). Even if an extension is granted, a party to any affected lease may request that the court order the debtor to determine whether to reject or assume a particular lease. 11 U.S.C. §365(d)(2), §365(d)(4).

The legislative history behind §365(d) confirms the Bankruptcy Code's concern for the plight of lessors such as By-Pass. Prior to the addition of §365(d)(4) to the Code in 1984, §365(d)(2) governed all lease considerations and provided debtors with an opened-ended right to assume or reject at any time prior to confirmation. *Norton Bankr. Law & Practice 2d* §39:41. However, legislative

---

[5]  11 U.S.C. §365(d)(4) states, in part:

> [I]f a trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected and the trustee shall immediately surrender such nonresidential real property to the lessor.

changes in 1984 were intended to provide concrete protection to landlords, like By-Pass, for a quick determination of whether to accept or reject nonresidential real property leases. Senator Hatch noted: "In all but the most complicated reorganization cases, sixty (60) days should be sufficient period to make this determination [to assume or reject]. *Even in large reorganization cases*, the Debtor presumably knows his own business and understands the value of his assets well enough to make such decisions in sixty (60) days." 130 Cong. Rec. S8894-95 (daily ed. June 29, 1984) (emphasis added).

Furthermore, this Court has confirmed that the purpose of the 1984 legislation was to protect lessors. *In re J. Woodson Hays, Inc.*, 69 B.R. 303, 308 (Bankr. M.D. Fla. 1987). In *Hays* this Court specifically stated that §365(d)(4) was enacted "for the sole benefit of owners of nonresidential properties, *primarily for the benefit of owners of shopping centers.*" *Id.* at 309 (emphasis added).[6] Other courts have made similar observations, at times making particular mention of shopping centers.[7]

---

[6] The specific and unique provisions defining "adequate future performance" in the case of shopping center leases, §365(b)(3), also demonstrates the particular concern for this type of lessor.

[7] *See Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989) (stating that §365(d) was intended "to protect lessors—*particularly shopping center operators*—from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases.") (emphasis added); *Matter of American Healthcare Management, Inc.*, 900 F.2d

NO.99570301.2

By-Pass is plainly a lessor within the contemplation of the amendments to §365. By-Pass owns and operates a shopping mall, of which Winn Dixie's Leased Premises are a substantial part. Further, By-Pass is suffering economic harm from long term uncertainty regarding the Lease. This uncertainty prevents resolution of the dispute with Central Progressive, and leaves By-Pass in the untenable position that the Leased Premises may be foreclosed simply due to the fact that Winn Dixie filed for bankruptcy protection. Clearly, §365(d)(4) was meant to prevent this type of harm and uncertainty.

**B.   The Debtor has had sufficient time to analyze the bankruptcy estate and make a determination with regard to the Lease.**

Courts examine whether a debtor has had reasonable time to determine the value of the leases to the reorganization plan. *In re Physician Health Corp.*, 262 B.R. 290, 294-95 (Bankr. D. Del. 2001); *In re Wedtech Corp.*, 72 B.R. 464, 471

---

827, 831 (5th Cir. 1990) (stating that it is "well-established" that the purpose of 365(d)(4) is to force debtors to quickly decide whether to assume unexpired leases); *In re Channel Home Centers, Inc.*, 989 F.2d 682, 686 (3d Cir. 1993) (discussing how the plain language, legislative history, and case law demonstrate that the purpose of changing 365(d) was to force debtors to make a quick decision regarding the assumption or rejection of leases); *In re Wedtech Corp.*, 72 B.R. 464, 469 (Bankr. S.D.N.Y. 1987) (stating that Congress "carved out commercial leases from the provisions of 11 U.S.C. § 365(d)(2) and added § 365(d)(4). It thereby placed the burden of debtors-in-possession to show cause why the time to determine whether to assume or reject should be extended.").

Prominent Treatises have expressed the same understanding of the revisions to 365(d). *Colliers Bankr. Practice* ¶ 68.06[1] (discussing the lessor-protecting bent of §365(d)); *Norton Bankr. Law & Practice 2d* §39:41 (opining

-8-

NO.99570301.2

(S.D.N.Y. 1987); *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D. N.J. 1986). In this case, the Debtor has had a reasonable and sufficient time to make that determination.

While the Bankruptcy Code provides no express guidance as to how much additional time is reasonable, the 60-day limit given in §365(d)(4) must be the touchstone for any analysis. While the Debtor's reorganization is complex, and By-Pass is by no means insensitive of the need for and the value of formulating a workable plan, it is unreasonable to permit the Debtor to extend the time to make a decision with regards to the Lease Premises especially in light of the fact that Winn Dixie has been aware of the legal issues facing By-Pass for almost six months.

In deciding whether to extend the time to approve or reject nonresidential real property leases, courts are principally concerned with whether the debtor has had sufficient time to make a "reasoned analysis" regarding a lease. *In re Physician Health Corp.*, 262 B.R. at 294. In making that determination the Court must have before it evidence that the Debtor is acting expeditiously regarding the examination and assumption or rejection of the leases. For example, in the *Wedtech* case, the court stated that that Congress intended §365(d)(4) to place the burden on debtors to show cause why the time to determine whether to assume or

---

that Congress intended to prevent delay that "leaves the other contracting party in a state of uncertainty for an indefinite period").

NO.99570301.2

reject should be extended. 72 B.R. at 469. As of December, the Debtor will have enjoyed more than 9 months—4 times the amount of time specified by Congress as appropriate—in which to make this determination. The Debtor has been aware of Central Progressive's Petition for almost six months, and has had over nine months to assume or reject the Lease. If the Debtor's Motion is granted, By-Pass will suffer great prejudice as it will be left in its current state of limbo in violation of §365 and may possibly lose its Leased Premises in a foreclosure sale.

### C. By-Pass is prejudiced by the failure of the Debtor to make a determination with regard to the Lease.

Indeed, this Objection presents a classic illustration of why Congress insisted that debtors' need for breathing space be balanced against the prejudice to lessors. By-Pass' dispute with Central Progressive will be resolved once it can be certain of its tenant. But that can only occur once the Debtor accepts or rejects the Lease.

### CONCLUSION

The 1984 revisions to §365(d)(4) addressed the problem currently facing By-Pass as suggested by the plain language of §365(d), the legislative history, and the case law. The Debtor has had more than sufficient time to evaluate whether to assume or reject the Lease.

Time is of the essence. Central Progressive's Motion for Remand is due to be heard on December 20, 2005. Should the Debtor fail to assume or reject by

December 19, 2005, the Motion to Remand may be granted, thus subjecting the Leased Premises to a foreclosure sale.

In order to prevent any further economic harm to By-Pass, By-Pass respectfully requests this Court deny the Debtor's Motion for Order Under 11 U.S.C. §365(d)(4) Granting Third Extension of Time Within Which Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property, or in the alternative, require the Debtor to either assume or reject the Lease between the Debtor and By-Pass no later than December 19, 2005.

                                               Respectfully submitted,

                                             **PHELPS DUNBAR LLP**

By:    /s/ Timothy P. Shusta
      Timothy P. Shusta (Fl. Bar No. 442305)
      shustat@phelps.com
      100 South Ashley Drive, Suite 1900
      Tampa, FL 33602-5311
      Telephone: (813) 472-7550
      Facsimile: (813) 472-7570

- and -

NO.99570301.2

By: /s/ Katherine M. Determan
Brent B. Barriere (Bar No. 02818)
barrierb@phelps.com
Susie Morgan (Bar No. 9715)
morgans@phelps.com
Katherine M. Determan (No. 25381)
determank@phelps.com
365 Canal Street • Suite 2000
New Orleans, LA 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130 or 9007

**ATTORNEYS FOR BY-PASS PARTNERSHIP**

## CERTIFICATE OF SERVICE

I certify that I have on this 6th day of December, 2005, served a copy of the foregoing by electronic mail and United States Mail, properly addressed, postage pre-paid, and/or by telecopy, to:

Cynthia C. Jackson
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32201
904-359-7700

Adam Ravin
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036
(212) 735-3000

/s/ Katherine M. Determan

NO.99570301.2