UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | NO. 3-05-bk-3817 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtor. | ) | Jointly Administered |
| | ) | |
| | ) | |

## MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT LEASE

NOW INTO COURT, though undersigned counsel, comes By-Pass Partnership, a Louisiana general partnership ("By-Pass"), who, pursuant to 11 U.S.C. §365(d)(4) and Fed. Bankr. P. 6006(b) & 9014, respectfully moves this Court for an Order to compel the debtor, Winn Dixie Stores, Inc, et al. (collectively the "Debtor") to assume or reject on or before December 19, 2005 that certain lease between the Debtor and By-Pass, of property located at 2210-2240 Veterans Memorial Drive, Abbeville, Louisiana and entered into on June 8, 1993, all for the reasons set forth in the accompanying memorandum submitted in support of this motion.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By: /s/ Timothy P. Shusta
Timothy P. Shusta (Fl. Bar No. 442305)
shustat@phelps.com
100 South Ashley Drive, Suite 1900
Tampa, FL  33602-5311
Telephone:  (813) 472-7550
Facsimile:  (813) 472-7570

- and –


EXHIBIT A

/s/ Brent B. Barriere
Brent B. Barriere (Bar No. 02818)
barrierb@phelps.com
Susie Morgan (Bar No. 9715)
morgans@phelps.com
Katherine M. Determan (Bar No.25381)
dtermak@phelps.com
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130 or 9007

**ATTORNEYS FOR
BY-PASS PARTNERSHIP**

## CERTIFICATE OF SERVICE

I certify that I have on this 17th day of November, 2005, served a copy of the foregoing Motion to Compel Debtor to Assume or Reject Lease by electronic mail and United States Mail, properly addressed, postage pre-paid, and/or by telecopy, to:

Cynthia C. Jackson
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32201
(904) 359-7700

Adam Ravin
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036
(212) 735-3000

/s/ Timothy P. Shusta

-2-

TA.114787.1

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | NO. 3-05-bk-3817 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtor. | ) | Jointly Administered |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
DEBTOR TO ASSUME OR REJECT LEASE**

This memorandum is submitted on behalf of By-Pass Partnership ("By-Pass") in support of its Motion to Compel Debtor to Assume or Reject Lease.

### I. BACKGROUND

A.  **The Winn-Dixie Chapter 11 Case.**

On February 21, 2005, Winn Dixie Stores, Inc. and certain of its subsidiaries (collectively the "Debtor") including Winn-Dixie Louisiana, Inc., filed Voluntary Petitions for Relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. The cases were consolidated for administrative purposes and on April 12, 2005, the consolidated case was transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

At the time of filing the Debtor had a number of unexpired leases of non-residential real property, including a lease of a portion of the property owned by By-Pass and located in Abbeville, Louisiana (the "Lease"). Under §365(d)(4) of the United

TA.114797.1

States Bankruptcy Code, the Debtor had 60 days within which to assume or reject its leases. That date has been extended repeatedly.

On March 17, 2005, Debtor filed a motion for an order pursuant to §365(d)(4) authorizing an extension of the time to reject or assume nonresidential real property leases. On April 12, 2005, Debtor obtained a bridge order providing an interim extension pending the outcome of the pending motion to transfer the case from the Southern District of New York to the Middle District of Florida. On May 6, 2005 this Court issued an order pursuant to §365(d)(4) authorizing an extension until September 19, 2005. Most recently, on September 12, 2005, this Court again granted the Debtor's motion to extend the time in which to accept or reject its leases until December 19, 2005. As of yet, the Debtor has not assumed or rejected the Lease.

B.  **The By-Pass and Central Progressive Dispute.**

Twelve years prior to Winn Dixie's bankruptcy filing, on June 8, 1993, By-Pass entered into the Lease with Winn-Dixie Louisiana, Inc., a Florida corporation, pursuant to which, Winn-Dixie Louisiana, Inc. leased from By-Pass an approximately 5.976 acre parcel, part of a larger shopping center owned by By-Pass and located at 2210-2240 Veterans Memorial Drive, Abbeville, Louisiana, and all improvements thereon. The Lease is for a term of twenty (20) years, it remains in effect, and Winn-Dixie of Louisiana, Inc. continues to occupy the Leased Premises in its ongoing operations.

On September 1, 1994, By-Pass executed and delivered to United of Omaha Life Insurance Company ("United of Omaha") a certain Mortgage Note in the original and principal amount of $3,125,000 secured by a mortgage encumbering the Leased Premises

pursuant to an Act of Mortgage and Security Agreement by By-Pass to United of Omaha dated as of August 30, 1994 and recorded in the Mortgage Records of Vermilion Parish, Louisiana on August 31, 1994 (the "Mortgage"). Central Progressive Bank ("Central Progressive") acquired the Mortgage Note from United of Omaha by Bill of Sale, dated May 14, 2004. In connection with the Mortgage, Winn-Dixie of Louisiana, Inc. and United of Omaha entered into a Subordination, Non-Disturbance and Attornment Agreement with respect to the Leased Premises.

On June 16, 2005, Central Progressive filed a Petition for Executory Process in the Fifteenth Judicial District for Parish of Vermilion, State of Louisiana, Case No. 83524 (the "State Court Action"), served upon By-Pass on June 27, 2005, in which it claimed that Winn Dixie's filing under Title 11 constitutes a default under the Mortgage. Central Progressive requested that the Leased Premises be seized and sold by executory proceedings—a Louisiana foreclosure device which permits judicial sale without court hearing. By Order dated June 17, 2005, the Sheriff of Vermillion Parish was directed to sell the Leased Premises at public auction. The auction was scheduled for August 24, 2005. Notably, there has never been a monetary default under the mortgage nor the lease. Indeed, the sale and exclusive default under both is the Debtor's filing for relief under Chapter 11.

Under Louisiana law, a sheriff's sale extinguishes all lien and encumbrances, including recorded leases, which are subordinate to the lien of the seizing creditor. The Lease here is recorded, but subordinate to the Mortgage. Given that foreclosure would directly impact (and arguably extinguish) the Debtor's rights as lessee, By-Pass remanded

the State Court Action to the United States Bankruptcy Court of the Western District of Louisiana. By-Pass then requested that court to transfer the State Court Action to this Court. Central Progressive promptly filed a motion to remand and also opposed transfer of venue. The Debtor then intervened and both opposed remand and endorsed the venue motion.

While these proceedings were pending in Louisiana, the Debtor filed an adversary proceeding and named both By-Pass and Central Progressive as defendants. In substance, the action seeks damages for Central Progressive's violation of the automatic stay, a declaratory judgment that the Debtor's rights as lessee cannot be impaired and injunction barring further action by Central Progressive. A status conference is scheduled for mid-January, 2006.

A hearing on the Motion to Remand was conducted on October 25, 2005. At that time, it became obvious that practical resolution of the litigation turns entirely on the Debtor's decision to assume or reject. All of the parties appear to be in agreement that there is substantial equity in the property, and that By-Pass should be able to secure a lender if it can confirm the identity of its tenant. Obviously, that can only occur once the Debtor accepts or rejects.[1]  Further, should the Debtor accept, it shall effectively eliminate Central Progressive's claimed default under the mortgage.

---

[1] By-Pass anticipates it will be able to obtain an alternate tenant promptly should the Debtor's elect to reject. By-Pass believes, and a recent appraisal appears to confirm, that the property is located in the most desirable area of Abbeville. This is particularly true at this time because Hurricane Rita damaged much of the competitor's commercial properties.

Recognizing these practical realities, the Louisiana Bankruptcy Court ordered that the Motion to Remand be held over until December 20—one day after the Debtor's current deadline to accept or reject.

Representatives of By-Pass have had discussions with Debtor concerning their intentions with respect to the Lease. Based on those discussions, By-Pass understands that (i) no decision has been made as to whether to accept or reject and (ii) the Debtor anticipates announcing that decision by December 19. However, as the Debtor is party to nearly 800 leases, no assurance can be given that the Debtor will not seek a further extension of the deadline to accept or reject. By-Pass brings this Motion to insure that the Debtor will act with respect to the Lease in advance of the rescheduled hearing on the Motion to Remand.

## II. LEGAL ANALYSIS

The language, legislative history, and case law interpreting §365(d)(4) demonstrate an intent to protect lessors such as By-Pass. The Debtor has had a reasonable time in which to decide whether to assume or reject the Lease. Lastly, and most critically, the Debtor's lack of decision with regard to the Lease is uniquely prejudicial to By-Pass.

A. **Section 365(d) is intended to protect lessors—particularly lessors such as By-Pass.**

The plain language of the Code, the legislative history, and the relevant case law all demonstrate that the foremost purpose of §365(d) is to protect lessors such as By-Pass. It should applied to do so here.

The provisions of 11 U.S.C. §365(d) evince a broad intent to protect lessors faced with the limbo into which the bankruptcy of their lessees thrusts them. Section 365(d)(4) indicates that debtors have 60 days to assume or rejecting leases of nonresidential real property.[2] Unless a debtor can show cause sufficient for an extension, a lease not assumed or rejected within the 60-day period is deemed rejected. 11 U.S.C. §365(d)(4). Even if an extension if granted, a party to any affected lease may request that the court order the debtor to determine whether to reject or assume a particular lease. 11 U.S.C. §365(d)(2), §365(d)(4).

Legislative history behind §365(d) confirms the Bankruptcy Code's concern for the plight of lessors. Prior to the addition of §365(d)(4) to the Code in 1984, §365(d)(2) governed all lease considerations and provided debtors with an opened-ended right to assume or reject at any time before confirmation. *Norton Bankr. Law & Practice 2d* §39:41. Congress meant for §365(d)(4) to change this, providing concrete protection to nonresidential landlords. For example, Senator Hatch noted the imperative nature of a quick determination regarding the rejection or assumption of leases: "In all but the most complicated reorganization cases, sixty (60) days should be sufficient period to make this determination [to assume or reject]. *Even in large reorganization cases*, the Debtor presumably knows his own business and understands the value of his assets well enough

---

[2] 11 U.S.C. §365(d)(4) states, in part:

> [I]f a trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected and the trustee shall immediately surrender such nonresidential real property to the lessor.

to make such decisions in sixty (60) days." 130 Cong. Rec. S8894-95 (daily ed. June 29, 1984) (emphasis added).

Furthermore, this Court has acknowledged that the purpose of the 1984 legislation was to protect lessors. *In re J. Woodson Hays, Inc.*, 69 B.R. 303, 308 (Bankr. M.D. Fla. 1987). In *Hays* this Court specifically stated that §365(d)(4) was enacted "for the sole benefit of owners of nonresidential properties, *primarily for the benefit of owners of shopping centers.*" *Id.* at 309 (emphasis added).[3] Other courts have made similar observations, at times making particular mention of shopping centers.[4]

By-Pass is plainly a lessor within the contemplation of Congress when the Bankruptcy Code was amended in 1984. By-Pass owns and operates a shopping mall, of which the Winn Dixie store and Leased Premises are a substantial part. Likewise, By-Pass is now suffering from long term uncertainty regarding the Lease. This uncertainty prevents resolution of the dispute with Central Progressive, and leaves By-Pass with the

---

[3] The specific and unique provisions defining "adequate future performance" in the case of shopping center leases, §365(b)(3), also demonstrates the particular concern for this type of lessor.

[4] *See Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989) (stating that §365(d) was intended "to protect lessors—*particularly shopping center operators*—from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases.") (emphasis added); *Matter of American Healthcare Management, Inc.*, 900 F.2d 827, 831 (5th Cir. 1990) (stating that was "well-established" that the purpose of 365(d)(4) was to force debtors to quickly decide whether to assume unexpired leases); *In re Channel Home Centers, Inc.*, 989 F.2d 682, 686 (3d Cir. 1993) (discussing how the plain language, legislative history, and case law demonstrate that the purpose of changing 365(d) was to force debtors to make a quick decision regarding the assumption or rejection of leases); *In re Wedtech Corp.*, 72 B.R. 464, 469 (Bankr. S.D.N.Y. 1987) (stating that Congress "carved out commercial leases from the provisions of 11 U.S.C. § 365(d)(2) and added § 365(d)(4). It thereby placed the burden of debtors-in-possession to show cause why the time to determine whether to assume or reject should be extended.").
  Prominent Treatises have expressed the same understanding of the revisions to 365(d). *Colliers Bankr. Practice* ¶ 68.06[1] (discussing the lessor-protecting bent of §365(d)); *Norton Bankr. Law & Practice 2d* §39:41 (opining that Congress intended to prevent delay that "leaves the other contracting party in a state of uncertainty for an indefinite period").

TA.114797.1

ultimate possibility of foreclosure on the Lease Premises. This is uncertainty that §365(d)(4) was meant to prevent.

### B. The Debtor has had sufficient time to analyze the bankruptcy estate and make a determination with regard to the Lease.

Courts examine whether a debtor has had reasonable time determine the value of the leases to the reorganization plan. *In re Physician Health Corp.*, 262 B.R. 290, 294-95 (Bankr. D. Del. 2001); *In re Wedtech Corp.*, 72 B.R. 464, 471 (S.D.N.Y. 1987); *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D. N.J. 1986). In this case, the Debtor has had a reasonable and sufficient time to make that determination.

The Bankruptcy Code provides no express guidance as to how much additional time is reasonable. However, the 60-day limit given in §365(d)(4) must be the touchstone for any analysis. While the Debtor's reorganization is certainly more complex than many and By-Pass is by no means insensitive of the need for and value of formulating a workable plan, it is not unreasonable to expect the Debtor to make a decision as to this property some nine months after it filed for Chapter 11.

Courts are principally concerned with whether the debtor has had sufficient time to make a "reasoned analysis" regarding a lease. *In re Physician Health Corp.*, 262 B.R. at 294. There must be evidence that the Debtor is acting expeditiously regarding the examination and assumption or rejection of the leases. For example, in the *Wedtech* case, the court stated that that Congress intended §365(d)(4) to place the burden on debtors to show cause why the time to determine whether to assume or reject should be extended. 72 B.R. at 469. As of December, the Debtor will enjoy more than 9 months—4 times the amount of time specified by Congress as appropriate—in which to make this

-8-

TA.114797.1

determination. However, By-Pass is still left in a state of uncertainty regarding the status of the Lease and Lease Premises.

### C. By-Pass is prejudiced by the failure of the Debtor to make a determination with regard to the Lease.

Indeed, this Motion presents a classic illustration of why Congress insisted that debtors' need for breathing space be balanced against the prejudice to lessors. By-Pass' dispute will be resolved once it can be certain of its tenant. But that can only occur once the Debtor accepts or rejects. By-Pass respectfully requests that at least with respect to this Lease, the Court hold the Debtor to the current deadline of December 19.

### III. CONCLUSION

Section 365(d)(4) was meant to solve a problem. It was intended to provide relief to landlords placed in the untenable position of being left with months of uncertainty regarding the status of their leases. The problem addressed in §365(d)(4) is the problem facing By-Pass—that of unnecessary and prejudicial uncertainty. The plain language of §365(d), legislative history, and case law indicates that it was meant to protect Lessors such as By-Pass. Further, the Debtor has had sufficient time to make a determination regarding whether to reject or assume the Lease. Lastly, the failure of the Debtor to act regarding the Lease is causing, and will continue to cause, great prejudice to By-Pass. For these reasons, By-Pass prays that this Court grant its Motion to Compel Debtor to Assume or Reject Lease and require the Debtor either assume or reject the lease between the Debtor and By-Pass by no later than December 19, 2005.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By: /s/ Timothy P. Shusta
Timothy P. Shusta (Fl. Bar No. 442305)
shustat@phelps.com
100 South Ashley Drive, Suite 1900
Tampa, FL 33602-5311
Telephone: (813) 472-7550
Facsimile: (813) 472-7570

- and –

By: /s/ Brent B. Barriere
Brent B. Barriere (Bar No. 02818)
barrierb@phelps.com
Susie Morgan (Bar No. 9715)
morgans@phelps.com
Katherine M. Determan (No. 25381)
determank@phelps.com
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130 or 9007

**ATTORNEYS FOR
BY-PASS PARTNERSHIP**

-10-
TA.114797.1

## CERTIFICATE OF SERVICE

I certify that I have on this 17th day of November, 2005, served a copy of the foregoing Motion to Compel Debtor to Assume or Reject Lease by electronic mail and United States Mail, properly addressed, postage pre-paid, and/or by telecopy, to:

Cynthia C. Jackson
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32201
904-359-7700

Adam Ravin
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036
(212) 735-3000

/s/ Timothy P. Shusta