**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                                          Case No. 3-05-bk-3817

**WINN DIXIE STORES, INC., et. al.**        Chapter 11

    Debtor.                                               Jointly Administered
_____/

### THE BALZEBRES' OBJECTION TO DEBTORS' MOTION FOR ORDER UNDER 11 USC § 365(d)(4) GRANTING THIRD EXTENSION OF TIME WITHIN WHICH DEBTORS MAY ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

Anthony and Dorothy Balzebre (the "Balzebres") through undersigned counsel file this objection to Debtor's Motion for Order under 11 USC § 365 Granting Third Extension of Time within which Debtors may Assume or Reject Unexpired Leases of Nonresidential Real Property, and as grounds, asserts as follows:

### INTRODUCTION

The Debtor is an anchor tenant in a shopping center owned by the Balzebres located in Miami-Dade County Florida. The Debtor sought protection under Chapter 11 of the United States Bankruptcy Code on February 21, 2005. This operated as an automatic stay of any collection efforts by creditors, and excused the Debtor from having to pay any rent under a commercial lease that accrued pre-petition unless and until it assumed the lease. Under 11 USC § 365, Debtor has 60 days from the order of relief within which to assume or reject unexpired commercial leases. Debtor has already received two prior extensions within which to assume or reject unexpired leases, the most recent granting up to December 19, 2005 to assume or reject leases. In that time Debtor has exited, by assignment or rejection, over 500 store locations.

In each prior motion seeking an extension to assume or reject, Debtor asserted that it had good cause to seek an extension to evaluate leases as part of its business plan to develop and negotiate a plan for reorganization, and represented that the deadline requested in the motion was sufficient to enable it to determine which of its remaining leases it would assume or reject. On September 1, 2005, Debtor had indicated its intention to renew the subject lease by sending written notice that it was exercising its option to extend the lease for 5 more years. A copy of Debtor's notice is attached as Exhibit "A". Although Debtor purported to reserve its rights to reject the lease, which was scheduled to expire on its terms on December 31, 2005, it was clear to the Balzebres that their lease would likely be assumed, because if Debtor had intended to reject or assign the Balzebres' lease it would have made it one of the Targeted Stores slated for sale or rejection, or would have simply allowed the lease to expire and would not have exercised its renewal option.

The Balzebres were mindful of the size and complexity of this reorganization, and based on the representations made by Debtor in its motion, Balzebre did not object to the first extension of time requested to assume or reject leases, which was granted up to September 12, 2005. The Balzebres also believed that as a practical matter, since the Debtor was required to assume by September 12, 2005, they would soon receive all cure amounts for accrued but unpaid rent, including substantial sums owed for percentage rent attributable to Debtor's prepetition occupancy. For these same reasons, when Debtor filed another motion to extend the assumption/rejection period to December 19, 2005, Balzebre did not object to the extension requested.

Debtor has now filed yet another motion to extend the time to assume or reject its unexpired commercial leases. For the following reasons, the Balzebres object to the

extension sought in Debtor's motion and to any further extensions to assume or reject the Balzebres' lease.

## LEGAL ARGUMENT

1. **Legal Standard for Determining Whether Cause Exists to Grant an Extension to Assume or Reject nonresidential Leases.**

"It is now well-established that the primary purpose of section 365(d)(4) is 'to protect lessors … from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases.' " *In re American Healthcare Management, Inc.,* 900 F.2d 827 (5th Cir.1990) (quoting *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir.1989). Only when the debtor establishes cause should the court extend the time provided in section 365(d)(4). A number of factors should be taken into account in determining whether or not cause exists for extending the 60-day period in subsection (d)(4): (a) Is the Lease a primary asset central to the reorganization? (b) Does the Debtor need additional time to act intelligently in making the judgment to assume or reject? (c) Is the lease in question one of a number of business properties whose acceptance or rejection requires additional time for study and determination? (d) Has the Debtor complied with its post petition obligations under the Lease pursuant to section 365(d)(3)? (e) How will the Debtor's continued possession of the premises affect the Lessor? *In re Perfectlite Co.* 116 B.R. 84 (Bankr. N.D. Ohio 1990).

2. **Debtor Fails to Meet the Standards to Warrant a Further Extension**

   a. **Debtor seeks an across the board extension to avoid cure amounts to the detriment of landlords**

Although Debtor purports to demonstrate that good cause exists to grant yet another extension, Debtor's motion fails to take into consideration the considerable

financial strain that each extension places on a landlord like Balzebre. Specifically, Balzebre is entitled to percentage rents under its lease with the Debtor after Debtor meets a certain threshold of gross sales. Balzebre relies heavily on these percentage rents, but as a result of the prior extensions granted by the Court to assume the lease, Debtor has only paid prorated percentage rents solely attributable to Debtor's occupancy post petition, and has thereby been permitted to avoid paying tens of thousands of dollars of percentage rents attributable to pre-petition occupancy owed to Balzebre under the Lease. The same is true of real estate taxes attributable to Debtor's location, which are also defined under the lease as an element of rent. The Debtor is being permitted to avoid paying the prorated portion of the taxes attributable to any pre-petition occupancy.

Balzabre has been denied over $61,781.76 in percentage rents, which Debtor has indicated it will not pay unless and until it formally assumes the lease. A copy of the remittance of the prorated percentage rent is attached as Exhibit "B". Furthermore, Balzebre has received its 2005 tax bill for the entire shopping center, and in November, remitted a bill for payment of Debtor's portion of these real estate taxes. A copy of the real estate tax invoice is attached hereto as Exhibit "C", these sums have not yet been paid. Balzebre has been informed that when Debtor finally does pay the taxes, it intends to pay only the portion of the taxes attributable to it possession of the premises post petition. Debtor intends to withhold $6,830.70 in real estate taxes that is otherwise payable under the lease.

It appears that through its Motion, Debtor is poised to seek an across the board extension to assume or reject its remaining leases without having indicated to the Court that it has even undertaken an analysis, after over 9 months in bankruptcy, of which

leases it will assume as part of its reorganization. Surely after being in bankruptcy for over 9 months, the Debtor must have by now identified and confirmed at least some of the store locations that it intends to keep as part of its reorganization. Instead of assuming leases it knows it will assume as part of it reorganization plan, Debtor appears to have chosen to seek an across the board extension of all of its remaining leases in order to avail itself of the bankruptcy protections afforded under sec. 365 to avoid paying cure amounts on leases it may have already determined it intends to keep. This tactic severely burdens the landlords and flies in the face of what this Court has recognized to be the statute's clear legislative purpose – to protect lessors, and in particular shopping center owners. *In re J. Woodson Hays, Inc.* 69 B.R. 303,308 (Bankr. M.D. Fla. 1987).

   The Balzebres' lease with Debtor was set to expire during the course of this bankruptcy, but Debtor chose to exercise its option to extend the lease for another five years. Despite reserving its rights in the notice to reject the lease, the assumption of the lease is indicative of Debtors intent to keep this Lease as part of its reorganization. It is inequitable and contrary to the purpose of sec. 365(d)(4) to allow the Debtor to again extend the time to assume a lease it knows it will assume, solely for the purpose of delaying the payment of cure amounts. It is well established that the purpose of sec. 365(d)(4) is to force debtors to quickly decide whether to assume unexpired leases. *Matter of American Healthcare Mgt., Inc.* at 831 (5th Cir. 1990); see also *In re Channel Home Centers, Inc.* 989 F. 2d 682, 686 (3d Cir. 1993)(legislative history and case law demonstrate that the purpose of 365(d)(4) is to force debtors to make quick decisions concerning whther to assume or reject commercial leases).

### b. Debtor has failed to keep its post-petition rent obligations current.

The Balzebres also note that although Debtor asserts that it has remained current on its rent, as of the date of filing this motion, Debtor has failed to pay the full amount of monthly rent for November 2005, and was over a month late in paying the November rent. The monthly rent including CAM for the store is $6,191.63, but Debtor only paid $5,592.44. Debtor has unilaterally deducted a portion of the rent based on claims of interruption of its operation caused by Hurricane Wilma, even though there is no basis in the lease to take such a deduction. A copy of the remittance notice explaining its unjustified unilateral deduction is attached as Exhibit "D".

It appears that Debtor purports to rely on a provision in the lease that grants an abatement of rent in the event of casualty, but this provision is part of a section of the lease that addresses damage or destruction by fire or casualty that "shall be so extensive that the cost of repair or restoration would be in excess of 75% of the value of the demised store building (exclusive of land) when restored..." In this context, the lease provides that "rent shall be abated in an amount corresponding with the time during which and to the extent that the premises ***have been untenantable***." A copy of the relevant portion of the lease is attached as Exhibit "E".

Winn Dixie's remittance explains that it merely had to suspend operations for three (3) days due to the hurricane. Certainly the store was not damaged so extensively that the cost to repair it would be in excess of 75% of the value of the store building. Nor were the premises rendered untenantable, which coupled with the damage requirement is an absolute condition to entitlement to any abatement. There was no basis for the

unilateral abatement taken by the Debtor, and as a consequence, its payment of less than the full amount of the November rent is a breach of its rent obligations.

Debtor has also failed to pay the prorated post petition portion of the real estate taxes despite demand therefor. The failure to timely pay the rental obligations under the lease is another factor militating against granting another extension of time to assume the Balzebres' lease.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Balzebres respectfully request that their objection be sustained, that Debtor's Motion for Extension of Time to Assume or Reject Balzebre's lease be denied, that Debtor be compelled to assume or reject Balzebre's lease by December 19, 2005, and that that the Court grant all other relief it deems appropriate.

Respectfully submitted,

BLAXBERG, GRAYSON, KUKOFF
& SEGAL, P.A.
Counsel for the Balzebres
Suite 730, Ingraham Building
25 Southeast Second Avenue
Miami, Florida  33131
Phone: (305) 381-7979
Facsimile: (305) 371-6816

 /s/ Ian J. Kukoff
Ian J. Kukoff, Esq.
Florida Bar No.: 827126

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served via facsimile

U.S. Mail and e-mail to the following:

Cynthia Jackson, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
904-359-7700
cjackson@smithhulsey.com

DJ Baker, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036
212-735-3000
djbaker@skadden.com

     /s/ Ian J. Kukoff