LEGAL DESCRIPTION OF SHOPPING CENTER

Begin at the intersection of the South boundary
of Government Lot 1, Section 9, Township 31 South,
Range 15 East, and the Centerline of State Road
No. 699 and run North 12°36'30" West, 395.88 feet
for the POINT OF BEGINNING; thence run North 48°
41'30" West, 199.82 feet; thence run South 41°35'
40" West, 89.56 feet; thence run North 48°44'00"
West, 99.74 feet; thence run North 41°23'20" East,
20.0 feet; thence run North 48°44'00" West, 80.0
feet; thence run South 41°23'20" West, 5.00 feet;
thence run North 48°44'00" West, 158.40 feet;
thence run North 41°23'20" East, 448.97 feet to a
point of curvature; thence by a curve to the right,
radius 70.0 feet, a chord bearing of North 86°24'
02" East, 99.02 feet, arc 109.98 feet; thence run
South 48°35'17" East, 152.75 feet to a point of
curvature; thence by a curve to the right, radius
185.0 feet, a chord bearing South 25°15'43" East,
146.50 feet, arc 150.63 feet; thence run South 1°
56'12" East, 263.43 feet; thence run South 41°19'
00" West, 193.65 feet to the POINT OF BEGINNING.


Said parcel of land is shown on that certain survey
revised November 24, 1973, by Nolan J. Blue, Florida
Regular Surveyor #1428, Clearwater, Florida.

EXHIBIT "B"

SHORT FORM LEASE

THIS SHORT FORM LEASE, made this 25th day of _March_ ,

19 74, between _ESKRAUGH CORPORATION, a Florida corporation_ ____

_____

(hereinafter called "Landlord") and ___ _WINN-DIXIE STORES, INC.,_ ____

___ _a Florida corporation,_ _____

_____(hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the

context admits or requires, singular or plural, and the heirs, legal

representatives, successors and assigns of the respective parties;

WITNESSETH:

That the Landlord, in consideration of the covenants of

the Tenant, does hereby lease and demise unto said Tenant and the

Tenant hereby agrees to take and lease from the Landlord, for the

term hereinafter specified, the following described premises:

That certain store building, approximately __160__ feet in
width by __142__ feet in depth, together with annex
_____, and the land on which
the same shall stand, (hereinafter collectively called
"demised premises"), which store building and related im-
provements are to be constructed by Landlord according to
plans and specifications to be approved by the parties here-
to and shall be in the location and of the dimensions as
outlined in red on the Plot Plan last revised December 4, 1973,
by Mudano Associates, Architects, Inc., Clearwater, Florida, en-
titled "Madeira Beach Shopping Ctr., Madeira Beach, Florida",
attached as Exhibit "A" to a certain collateral lease agree-
ment executed by the parties hereto and of even date herewith.

The demised premises are located in a shopping center develop-
ment known as _____(hereinafter
called "shopping center"), located at the northeast corner of
the intersection of Madeira Way and 151st Avenue
in the City of __Madeira Beach__ , County of __Pinellas__ ,
State of _____Florida_____ , the legal description of the
shopping center being attached hereto as Exhibit "B" and by
this reference made a part hereof.

FOR THE TENANT TO HAVE AND TO HOLD from the date when

Tenant opens said premises for the transaction of its business for

an initial term of _____twenty_____ ( _20_ ) years.

It is further agreed that Tenant, at its option, shall be

entitled to the privilege of _five_ ( _5_ ) successive extensions of

this lease, each extension to be for a period of _five_ ( _5_ ) years.



APPROVED
AS TO FORM
Division Manager

Legal Dept.
Winn-Dixie Stores,
Inc.

This Instrument was prepared by
Charles P. Gilford, Jr., Attorney-
at-law, whose address is 5050
Edgewood Court, Jacksonville,
Florida 32205

Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof.  Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods or frozen foods without written permission of the Tenant, provided, however, that the provisions of this paragraph are expressly subject to and conditioned upon certain modifications thereof as particularly set forth in the collateral lease agreement of even date herewith below mentioned.

IT IS UNDERSTOOD AND AGREED that this is a Short Form Lease which is for the rents and upon the terms, covenants and conditions contained in the aforesaid collateral lease agreement executed by the parties hereto and bearing even date herewith, which collateral lease agreement is and shall be a part of this instrument as fully and completely as if the same were set forth herein.

IN WITNESS WHEREOF, the Landlord and Tenant have executed



-2-

this instrument the day and year first above written.

Signed, sealed and delivered                    ESKRAUGH CORPORATION
in the presence of:

By _____
                                                      Its _____ President

_____              Attest _____
As to Landlord                                          Its _____ Secretary

                                                              LANDLORD

                                                          (CORPORATE SEAL)


                                                WINN-DIXIE STORES, INC.

                                                By _____
                                                      Its  Exec. Vice President

_____              Attest _____
As to Tenant                                            Its _____ Secretary

                                                              TENANT

                                                          (CORPORATE SEAL)


-3-

MAR-21-2002 THU 09:04 AM                FAX NO.                    P. 01/04

SUPPLEMENTAL LEASE AGREEMENT

THIS SUPPLEMENTAL LEASE AGREEMENT, made this __16th__ day of
_____July_____, 1975____, between __CHESTER W. MOORE, JIM BROWN__
__and HERBERT McNAIRY_____, hereinafter
called "Landlord", and __WINN-DIXIE STORES, INC., a Florida corporation__
_____,
hereinafter called "Tenant", which terms "Landlord" and "Tenant"
shall include, wherever the context admits or requires, singular or
plural, and the heirs, legal representatives, successors and assigns
of the respective parties,

W I T N E S S E T H :

WHEREAS, by lease dated __March 25, 1974, Eskraugh Corporation__
Landlord did lease and demise unto Tenant certain premises located
__at the northwest corner of the intersection of Madeira Way and 151st__
__Avenue_____

_____

in the City of __Madeira Beach_____, County of __Pinellas_____,
State of ___Florida_____, reference being made to said
lease for a more detailed description of the demised premises, for a
term of ___twenty (20)_____ years commencing upon a
date dependent upon the completion of certain construction, and upon
such other terms and conditions as are set forth therein, and

WHEREAS, the interest of Eskraugh Corporation, as Landlord
in said Lease was assigned to Landlord herein by Assignment of Lease
dated January 12, 1975; and

WHEREAS, Tenant has now opened for business in the demised
premises and the parties desire to fix the commencement date of said
lease as hereinafter set forth.

NOW THEREFORE, in consideration of the sum of Ten and
00/100 Dollars ($10.00) and other good and valuable considerations

paid by Tenant to Landlord, the receipt and sufficiency whereof are hereby acknowledged, it is mutually agreed:

    1.  The commencement date of the above-described lease dated ___March 25, 1974___ is fixed at ___January 12, 1975___ _____, and the expiration of the initial term of _____twenty_____ (__20__) years demised therein shall be at midnight on ___January 11, 1995___.

    2.  All covenants, terms and conditions of the above-described lease not modified or amended by this supplemental lease agreement are hereby ratified and confirmed.

    IN WITNESS WHEREOF, Landlord and Tenant have executed this supplemental lease agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____    _____ (SE
                                                CHESTER W. MOORE
As to Chester W. Moore

_____    _____ (SI
                                                JIM BROWN
As to Jim Brown

_____    _____ (S)
                                                HERBERT McNAIRY
As to Herbert McNairy

                                              LANDLORD

_____    WINN-DIXIE STORES, INC.

By _____
    Its _____ Exec. Vice-President

Attest _____
       Its _____ Secretary
As to Winn-Dixie Stores, Inc.

                                                TENANT

                                      (CORPORATE SEAL)

-2-

Florida-- individual and corporate

STATE OF *Florida*        )
                          )
COUNTY OF *Pinellas*      )

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, an officer duly authorized to take acknowledgments, personally appeared   CHESTER W. MOORE, JIM BROWN and HERBERT McNAIRY

personally known to me and known by me to be the person described in and who executed the foregoing instrument, and he acknowledged before me that he executed the same for the uses and purposes in said instrument set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, this *16th* day of *July*, 19 *75*, at *Clearwater*, in said State and County aforesaid.

                                    _Chesa C. Thompson_
                                    Notary Public, State and County
                                    aforesaid

                                    NOTARY PUBLIC, STATE of FLORIDA at LARGE
My commission expires: MY COMMISSION EXPIRES JAN. 21, 1977
                       Bonded by American Bankers Insurance Co.

                                    (Notarial Seal)


STATE OF       FLORIDA    )
                          )
COUNTY OF      DUVAL      )

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, an officer duly authorized to take acknowledgments, personally appeared *Joe H. Edgas* and *J.S. Bryan Jr.* to me known to be the persons described in and who respectively as Exec. Vice. President and _____ Secretary of   WINN-DIXIE STORES, INC. , a   Florida   corporation, executed on behalf of said corporation; and they severally acknowledged before me that they executed said instrument as such officers of said corporation in name of and on behalf of said corporation; that said Secretary affixed and attested the seal of said corporation to said instrument; that such acts were done by authority of said corporation for the uses and purposes in said instrument set forth; and that the foregoing instrument is the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, this *28th* day of *July*, 19 *75*, at *Jacksonville*, in said State and County.

                                    _Nancy B. Peckham_
                                    Notary Public, State and County
                                    aforesaid

My commission expires: _____
                       Notary Public State of Florida at Large.
                       My commission expires June 24, 1977.

                                    (Notarial Seal)

SECOND AMENDMENT TO LEASE

THIS SECOND AMENDMENT TO LEASE, made this 15th
day of _FEBRUARY_, 1983, by and between THE PINES
GROUP, INC., a Florida corporation (hereinafter called
"Landlord"), and WINN-DIXIE STORES, INC., a Florida corpora-
tion, (hereinafter called "Tenant"), which terms "Landlord"
and "Tenant" shall include, wherever the context admits, or
requires, singular or plural, and the successors and assigns
of the respective parties;

W I T N E S S E T H:

WHEREAS, by Lease dated March 25, 1974, as amended,
Eskraugh Corporation, a Florida corporation, as Landlord,
did lease and demise unto Tenant those certain premises,
therein more particularly described, located in a shopping
center development now known as "Carter Plaza", situated
at the northwest corner of the intersection of Madeira Way
and 151st Avenue, in the City of Madeira Beach, County of
Pinellas, State of Florida, for an initial term of twenty
(20) years, commencing upon the date established by that
certain Supplemental Lease Agreement dated July 16, 1975, as
January 12, 1975, and expiring at midnight on January 11,
1995, and for such rentals and upon such terms and condi-
tions as more particularly set forth therein, a short form
of said Lease being recorded in Official Records Book 4157,
page 246 of the Current Public Records of Pinellas County,
Florida; and

WHEREAS, all rights, title and interest of said
Eskraugh Corporation, as Landlord under said Lease, have
been assigned and transferred over absolutely by mesne
conveyances unto Landlord herein; and

WHEREAS, the parties hereto have agreed that Tenant



This instrument was prepared by
William O. Cofie, Jr., Attorney-
at-law whose address is 5050
Edgewood Court, Jacksonville,

may at its expense enlarge Tenant's present store building
by constructing a vestibule on the northeasterly side
thereof, and the parties desire to make certain modifica-
tions and amendments to said Lease and to increase the
rentals thereunder, all as hereinafter set forth;

NOW THEREFORE, in consideration of the premises
and the sum of Ten and 00/100 Dollars ($10.00) and other
good and valuable considerations in hand paid by the Tenant
to the Landlord, the receipt and sufficiency of which are
hereby acknowledged, it is mutually agreed as follows:

1.  Tenant, with the approval and consent of Landlord
hereby evidenced, covenants and agrees to proceed at its own
cost and expense with due diligence to erect or cause to be
erected a permanent vestibule measuring approximately one
hundred twenty (120') feet in width by approximately eleven
(11') feet in depth on the northeasterly side of Tenant's
existing store building, together with such renovations,
alterations and remodeling of the existing building as is
necessary to make the entire enlarged building suitable for
use by Tenant in the conduct of its business.  The new
vestibule, together with the other alterations, renovations
and related improvements as herein contemplated, shall be
constructed in accordance with plans and specifications
therefor to be prepared at the instance of Tenant and to
be approved by both the Landlord and Tenant initialling
the same, it being contemplated that such plans shall be
approved by both parties on or before sixty (60) days after
said plans and specifications are exhibited to Landlord by
Tenant.  Should Landlord fail to deliver objections thereto
or fail to return the same approved within such sixty (60)
day period, the plans and specifications shall be deemed
approved.  Tenant agrees to indemnify and hold harmless the
Landlord from any mechanics', materialmen's, or laborer's
liens or encumbrances arising out of such construction work

and to cause such liens, if any, to be promptly discharged.

2.  Upon the date of completion of the building vesti-
bule and incorporation of the said additional space into
Tenant's store building, the following further modifications
of said Lease shall become effective:

(a)  All such additional space and improvements
herein contemplated shall be and become a part of the
demised premises, it being hereby acknowledged that Tenant's
enlarged store building shall then contain a total gross
floor area of approximately twenty-nine thousand seven
hundred twenty (29,720) square feet.

(b)  The annual minimum guaranteed rental under
said Lease shall be increased to the total sum of Eighty-
Nine Thousand One Hundred and 00/100 ($89,100.00), due and
payable in advance in twelve (12) equal monthly install-
ments of Seven Thousand Four Hundred Twenty-Five and 00/100
Dollars ($7,425.00) on the first day of each and every
calendar month of the lease term and any extensions thereof,
and in lieu of the percentage rental provision contained
in Article 1 appearing on Page 2 of said Lease dated March
25, 1974, as amended, Tenant agrees to pay to Landlord a
percentage rental equal to the amount, if any, by which one
percent (1%) of Tenant's gross sales made from the said
enlarged demised premises in each fiscal year of Tenant
ending approximately June 30 during the term of said Lease
and any extensions thereof exceeds Eighty-Nine Thousand
One Hundred and 00/100 Dollars ($89,100.00).  Rent shall be
calculated and paid under the applicable rates of the
present Lease until rents begin to accrue under the substi-
tuted provision herein, and the rents for the calendar month
during which the change of rates occurs shall be prorated
between the applicable rates under the present lease and the
rates under the said substituted provision.

3.  It is mutually agreed that the aforesaid Lease

dated March 25, 1974, as heretofore amended, shall be and remain in full force and effect except only as the same is specfically modified hereby.  All covenants, obligations, terms and conditions of said Lease, as amended, not changed by the within Second Amendment to Lease are hereby ratified and confirmed.

    IN WITNESS WHEREOF, Landlord and Tenant have caused this Second Amendment to Lease to be executed in their corporate names and their corporate seals to be hereunto affixed by their officers thereunto duly authorized the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____          THE PINES GROUP, INC.

_____          By_____
As to Landlord                     Its           President

                                 Attest_____
                                    Its ASS  Secretary.

                                   (Corporate Seal)

                                     LANDLORD


                                 WINN-DIXIE STORES, INC.

_____          By_____
                                   Its           President

_____          Attest_____
As to Tenant                       Its           Secretary

                                   (Corporate Seal)

                                      TENANT

STATE OF *FLORIDA*          )

COUNTY OF *DADE*           )

    The foregoing instrument was acknowledged before me this
*FEBRUARY* __16__ , 19 _83_ by _DR. RICARDO PINES_____ and
_RICARDO PINES JR._____ , _____ President and _ASSISTANT___
Secretary, respectively, of _THE PINES GROUP, INC._____
_____ , a _____ Florida _____
corporation, on behalf of the corporation.

              _____
              Notary Public, State and County aforesaid

(NOTARIAL SEAL)

My commission expires: NOTARY PUBLIC STATE OF FLORIDA
                  MY COMMISSION EXPIRES AUG 11 1986
                  BONDED THRU GENERAL INS . UNDERWRITERS

 

STATE OF FLORIDA          )

COUNTY OF DUVAL          )

    The foregoing instrument was acknowledged before me this
*March* _1_ , 19 _83_ by _E. Dand Davis_____ and
_J. S. Bryan, Jr._____ , _____ President and _____
Secretary, respectively, of _WINN-DIXIE STORES, INC._____
_____ , a _Florida_____
corporation, on behalf of the corporation.

              _____
(NOTARIAL SEAL)          Notary Public, State and County aforesaid

My commission expires:
            NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
            MY COMMISSION EXPIRES JULY 17, 1986

## THIRD AMENDMENT OF LEASE

THIS THIRD AMENDMENT OF LEASE, made this _____6th_____ day of
____June____, 1994 between **RICARDO PINES** (hereinafter called "Landlord"),
and **WINN-DIXIE STORES, INC.**, a Florida corporation (hereinafter called "Tenant"); which
terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular
or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

### W I T N E S S E T H:

WHEREAS, by Lease dated March 25, 1974, as amended, Eskraugh Corporation,
a Florida corporation, as Landlord, did lease and demise unto Tenant certain premises, therein
more particularly described, located in a shopping center development now known as "Carter
Plaza", situated at the northwest corner of the intersection of Madeira Way and 151st Avenue,
in the City of Madeira Beach, County of Pinellas and State of Florida, for an initial term of
twenty (20) years, commencing upon the date established by that certain Supplemental Lease
Agreement dated July 16, 1975, as January 12, 1975, and expiring at midnight on January 11,
1995, and for such rentals and upon such terms and conditions as more particularly set forth
therein, a short form thereof appearing of record in Official Records Book 4157, at Page 246,
Public Records of Pinellas County, Florida; and

WHEREAS, all rights, title and interest of the said Eskraugh Corporation, as
Landlord under said lease, have been duly transferred to and are presently vested absolutely in
Landlord herein, and

WHEREAS, the parties hereto have agreed to enlarge the Tenant's present store
building by constructing an addition thereto and to make other related renovations, alterations
and improvements to the existing building as necessary to make the entire enlarged building
suitable for use by Tenant in the conduct of its business, and the parties desire to make certain
modifications and amendments to said lease, as previously amended, and to increase the rentals
thereunder, all as hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the sum of Ten and
00/100 Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to
the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed
as follows:

1.    Tenant, with the approval and consent of Landlord hereby evidenced,

APPROVED
AS TO FORM
_____
Division Mgr.
_____
Legal Dept.
Winn-Dixie Stores,
Inc.

This instrument was prepared by
William O. Scaife, Jr., Attorney-
at Law, whose address is 5050
Edgewood Court, Jacksonville,
Florida 32205

covenants and agrees to proceed at its own cost and expense (Tenant to be reimbursed by Landlord as hereinafter set forth) with due diligence to erect or cause to be erected permanent additions on the westerly and southerly sides of Tenant's existing store building and vestibule measuring 70 feet in width by 12 feet in depth, together with such renovations, alterations and remodeling of the existing building and vestibule as is necessary to make the entire enlarged building suitable for use by Tenant in the conduct of its business.

The new additions, together with the other alterations, renovations and related improvements as herein contemplated, shall be constructed in accordance with plans and specifications therefor which have already been prepared at the instance of Tenant and approved by both the Landlord and Tenant. Tenant agrees to indemnify and hold harmless the Landlord from any mechanics', materialmen's, or laborers' liens or encumbrances arising out of such construction work and to cause such liens, if any, to be promptly discharged.

Upon completion, the aggregate cost of the construction of the building additions and the other related improvements, alterations and renovations herein contemplated, shall be certified to by the general contractor performing the work; provided however, there shall be expressly excluded from such construction cost (for the purpose of Landlord's reimbursement) the expense of any and all of Tenant's racks, counters, shelves, and other merchandising fixtures and equipment.

2.  It is understood that in order to permit Tenant to utilize the adjoining building spaces on the southerly side of Tenant's building to effect the enlargement, the Landlord agrees to cause the tenant presently occupying such adjoining spaces to remove therefrom, which removal Landlord agrees to effect on or before June 1, 1994. In the event Landlord fails for any reason to deliver possession to Tenant of all the space contemplated for the enlargement by the stipulated date, Tenant may at its option and election cancel and terminate this lease amendment whereby the said lease dated March 25, 1974, as amended, shall continue in full force and effect as if this amendment had not been executed. At such time as Landlord delivers possession of such space to Tenant, Tenant agrees to pay to Landlord as minimum guaranteed rental for the entire demised premises (that is the enlargement areas and the present store premises), the sum of One Hundred Twenty-Nine Thousand Two Hundred Fifteen and 04/100 Dollars ($129,215.04) per year. Such annual minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of Ten Thousand Seven Hundred Sixty-Seven and 92/100 Dollars ($10,767.92) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term until the date of the increase in rentals required under Article 4(c) hereinbelow.

3.  Upon completion of the additions and related improvements and commencement of doing business therein by Tenant and the delivery to Landlord by Tenant of a certificate of occupancy, the total cost of the construction work of the additions and all related improvements contemplated hereunder, certified to by the general contractor performing the

2

same, shall be repaid forthwith by Landlord to Tenant. However, in no event will Landlord's reimbursement to Tenant for such cost of construction work exceed $1,000,000.00.

The reimbursement payment shall be made by cashier's or certified check, or wire transfer. Should Landlord not make full reimbursement to Tenant of the amount of such certified construction costs up to the sum of $1,000,000.00 within thirty (30) days after completion of the addition and occupancy thereof by Tenant (such date of completion and occupancy to be established by Tenant giving to Landlord written notice thereof), Tenant shall have the right to deduct from all rentals or other sums due under said Lease, then due or thereafter to become due, such portion of the sum not reimbursed by Landlord to Tenant with interest thereon at the highest rate permitted under the laws of the State of Florida.

4.   Upon completion of the building addition for Tenant and occupancy thereof by Tenant, the following further modifications  to said lease, as previously amended, shall become effective:

(a)   The addition to Tenant's building, together with all related improvements to the building made hereunder shall be and become a part of the demised premises and all references in the lease shall be construed to apply to the enlarged building and the land on which it stands. All improvements to the common areas made hereunder shall be and become a part of the common areas, and all references in the Lease shall be construed to apply to common areas as so modified.

(b)   The initial term of said lease shall be extended so as to expire twenty (20) years from such date during which extended period the same covenants and conditions as provided in said lease, shall remain in full force and effect except as herein modified. Such extension shall be in addition to and not in lieu of the five (5) extension options remaining available to Tenant under the provisions of said lease, which renewal options are not hereby exercised, it being further agreed, however, that during said option extension periods rentals due hereunder shall be the increased rentals specified in sub-paragraph (c) below.

(c)   The annual minimum guaranteed rental under said lease shall be increased to the total sum of Two Hundred Forty-Nine Thousand Two Hundred Fifteen and 00/100 Dollars ($249,215.00), due and payable in advance in twelve (12) equal monthly installments of Twenty Thousand Seven Hundred Sixty-Seven and 92/100 Dollars ($20,767.92) on the first day of each and every calendar month of the initial lease term, and any extensions thereof.   However, such rental increase will not take effect until Tenant has received Landlord's reimbursement funds as described in Article 3 hereinabove. In addition, instead of the percentage rentals currently required under said lease, as amended, Tenant agrees to pay to Landlord a percentage rental equal to the amount, if any,  by which one percent (1%) of Tenant's gross sales made from the said enlarged demised premises in each fiscal year of Tenant ending approximately June 30 during the term of said lease, and any extensions thereof, exceeds Two Hundred Forty-Nine Thousand Two Hundred Fifteen and 00/100 Dollars ($249,215.00).

(d)    The parties hereto agree to execute a further supplement to the Lease for the purpose of fixing the commencement date for the new rentals and further amendments

3

as herein provided. Rentals shall be calculated and paid under the present applicable rates of the original Lease, as previously amended, until the rentals begin to accrue under the above substituted provisions, and the rentals for any month in which a change of rate occurs shall be prorated between the previously effective rates and the rates effective after the date of rental adjustment.

(e)  It is agreed that Tenant's obligation to indemnify and save harmless Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises, as stipulated in Article 14 appearing on Page 8 of said lease, as amended, shall extend and apply to the building addition herein described, and further agreed that Landlord's obligation to carry fire and extended coverage insurance on Tenant's building as stipulated in that portion of Article 16 appearing on Page 9 of said lease shall extend and apply to the building addition herein described;

(f)  The respective repair responsibilities of the parties as stipulated in Articles 10 and 11 appearing on Pages 6 and 7 of said lease, as amended, shall apply and extend to the additional store building area herein required.

(g)  Article 36 ("COMMON AREA MAINTENANCE") appearing on page 15 of said lease is hereby deleted in its entirety. In lieu thereof, the following provision is hereby substituted:

"Landlord agrees to operate and maintain in good condition and repair all the common areas, as herein defined, and provide therefor all such services as are reasonably required, including, but without limitation, safe-guarding, cleaning and sweeping, lighting, snow and ice removal if necessary, general repair and maintenance of all paved surfaces, repainting of parking area striping, and watering and maintenance of landscaped area. If the Landlord, after fifteen (15) days following receipt of written notice from Tenant to do so, shall fail to make the repairs or perform the services described in this Article, the Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred therein.

For such services, Tenant shall pay to Landlord at the end of each calendar month, as additional rental hereunder and as reimbursement for the monthly cost thereof, the amount of Tenant's prorata share thereof, computed in the proportion which the square footage of Tenant's store building bears to the total square footage of all buildings (including additional floor levels) existing in the shopping center from time to time. Such amount shall be payable on a non-cumulative basis at the end of each calendar month for the expenses of the prior month and within fifteen (15) days following the furnishing by Landlord to Tenant of a detailed statement of such costs, and Tenant shall have the right to audit at its own expense any such costs and expenses within six (6) months following submission of such statement. Tenant shall not reimburse Landlord for any expense not reasonably connected with the necessary maintenance and repair of the shopping center common areas. Examples of expenses for which Tenant shall not make reimbursement are rental insurance premiums and shopping center management fees and administrative costs. Notwithstanding the above, it is agreed that Tenant's obligation to make the payments herein described is expressly conditioned upon receipt from Landlord of such detailed statement of costs no later than six (6) months following the end of the calendar year for which such payments were due.

Notwithstanding Tenant's obligation to pay a portion of Landlord's common area maintenance expenses hereunder, Tenant shall in no way be responsible for cost of testing, removing, abating, or otherwise dealing with hazardous substances or other violations of environmental laws, ordinances, rules, regulations or written policies now or hereafter existing, including, but not limited to, the Toxic Substances Control Act, Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Clean Water Act, Rivers and Harbors Acts of 1899 and 1910, Clean Air Act or the like, as amended and as now existing or hereinafter adopted or

amended, except for those caused by the intentional or negligent activities of Tenant, its employees, officers and agents."

(h)   Article 34 ("TAXES") appearing on pages 13 and 14 of said lease is hereby deleted in its entirety.  In lieu thereof the following is hereby substituted:

"TAXES AND INSURANCE    34.   During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of the annual ad valorem real estate taxes levied against the demised premises and also the annual premium cost of liability insurance covering the common areas and of fire and extended coverage insurance on the building on the demised premises as required under Article 16 hereof.  Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements and insurance premium statements as evidence  of the taxes and insurance premiums chargeable to Tenant, and such additional rentals shall be payable by Tenant with the next installment of rental due hereunder not less than fifteen (15) days after receipt of such paid tax and insurance statements.  Any payments due by Tenant to Landlord under the provisions of this Article 34 shall be prorated for fractional years occurring at the beginning and expiration of the term of this lease, or any extension thereof.  Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions and to institute such proceedings in the name of Landlord as Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to Landlord.  Tenant shall also be responsible for and pay promptly when due any sales or other tax imposed upon the rent payable pursuant to this lease.  All taxes (other than ad valorem real estate taxes and such sales taxes), including special assessments, improvement liens and the like, shall remain the sole responsibility of Landlord.  Tenant shall have the right to credit such payments against percentage rentals on a non-cumulative basis.

If such taxes shall not be assessed separately, but included within an assessment of the demised premises and others, or if such insurance premiums are included within the premium cost of others within the shopping center, the assessments or insurance bill shall be fairly apportioned to determine Tenant's share thereof.  Such apportionment shall be made in the ratio which the square footage of Tenant's store building bears to the total square footage of all store buildings (including additional floor levels, if any) from time to time existing in the shopping center, as determined from an as built survey, a copy of which shall be furnished to Tenant.  Tenant shall have the option to furnish such insurance coverage on its demised premises separately if, in its reasonable judgment, the premium determined by proration or obtained by Landlord is excessive.

Notwithstanding the above, it is agreed that Tenant's obligation to make the payments herein described in expressly conditioned upon receipt from Landlord of a written statement for such ad valorem real estate tax contributions (as well as the other documents described herein if requested by Tenant) no later than December 31 of the calendar year following the year in which the taxes were due."

5.   It is mutually agreed that the said lease dated March 25, 1974, as previously amended, shall be and remain in full force and effect except only as the same is specifically modified hereby.  All covenants, terms, obligations and conditions of said lease, as previously amended, not changed by the within Third Amendment of Lease, are hereby ratified and confirmed.  TENANT recognizes that there are the following leases coverin stores at Carter Plaza: Eckards, Martin Young, Inc.;Michael J.O'Brier Michael Beale (Rip-Tide);Roy D. Quinn/Busy B's Coin Laundry; Rich J. Carlos/Carvel Ice Cream; Judy Fish/Books to the Ceiling; Lind₂

**IN WITNESS WHEREOF**, the Landlord has hereunto set his hand and seal, and Tenant (*) Linda Okrasinski/Beach Waves, Inc. and as per provisions of Claus 2. USE of the Lease dated 3/25/1974 has taken notice of same.

5

has caused this Third Amendment of Lease to be executed in its corporate name and its corporate

seal to be hereunto affixed and attested by its officers thereunto duly authorized the day and year

first above written.

Signed, sealed and delivered
in the presence of:

Printed Name: _Geotico Pines_

Printed Name: _Edward Pine_

As to Landlord

_____ (SEAL)
RICARDO PINES
Address: 333 PONCE DE LION BLV
CORAL GABLES FL. 33134

**LANDLORD**

**WINN-DIXIE STORES, INC.**

Printed Name: _CYNTHIA N. CROSSLAND_

By: _____
Its                        President
Printed Name: James Kufeldt
Address: P. O. Box B
Jacksonville, FL 32203-0297

Printed Name: Laura E. Baughman

As to Tenant

Attest: _____
Its                        Secretary
Printed Name: Wayne E. Ripley, Jr.
Address: P. O. Box B
Jacksonville, FL 32203-0297

(CORPORATE SEAL)

**TENANT**

6

STATE OF _Florida_ )

COUNTY OF _Dade_ )

 

    The foregoing instrument was acknowledged before me by RICARDO PINES who is: (check one)

1.    ✓    personally known to me   **OR**

2.    _____   who has produced _____

_____ as identification.

Given under my hand and official seal this ___6ᵗʰ___ day of _June_ , 1994.

                 _Carol Hutcheson_
Printed Name: CAROL HUTCHESON
Notary Public,
State and County aforesaid.
My Commission Expires:_____
Notary ID No.:_____

 

 

STATE OF FLORIDA )

COUNTY OF DUVAL )

 

    The foregoing instrument was acknowledged before me by James Kufeldt _____, _____ President and by Wayne E. Ripley, Jr. _____,

_____ Secretary, of **WINN-DIXIE STORES, INC.**, a Florida corporation, on behalf of the corporation, who are personally known to me.

Given under my hand and official seal this _23ʳᵈ_ day of _June_ , 1994.

                 _Laura E. Baughman_
Printed Name: Laura E. Baughman
Notary Public,
State and County aforesaid.
My Commission Expires:_____
Notary ID No.:_____

LAURA E. BAUGHMAN
My Comm. Exp. July 17, 1994
Comm. No. CC 021236

## FOURTH AMENDMENT OF LEASE

THIS FOURTH AMENDMENT OF LEASE (the "Fourth Amendment"), made this _30th_ day of _August_, 1994 between RICARDO PINES (hereinafter called "Landlord"), and WINN-DIXIE STORES, INC., a Florida corporation (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties.

## W I T N E S S E T H :

WHEREAS, by Lease dated March 25, 1974, as amended, Eskraugh Corporation, a Florida corporation, as Landlord, did lease and demise unto Tenant certain premises, therein more particularly described, located in a shopping center development now known as "...ter Plaza", situated at the northwest corner of ... intersection of Madeira Way and 151st Avenue, in the City of Madeira Beach, County of Pinellas and State of Florida, for initial term of twenty (20) years, commencing upon ... established by that certain Supplemental Lease Agreement dated July 16, 1975, as January 12, 1975, and expiring at midnight January 11, 1995, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form thereof appearing of record in Official Records Book 4157, at Page 46, Public Records of Pinellas County, Florida; and

WHEREAS, all rights, title and interest of the said Eskraugh Corporation, as Landlord under said lease, have been duly transferred to and are presently vested absolutely in Landlord herein, and

WHEREAS, the parties hereto have agreed to enlarge Tenant's present store building by constructing an addition thereto and to make other related renovations, alterations and improvements to the existing building as necessary to make the entire enlarged building suitable for use by Tenant in the conduct of its business; and

WHEREAS, Landlord has agreed to reimburse Tenant for the costs of such renovations, alterations and improvements up to a maximum amount of One Million and 00/100 Dollars ($1,000,000) (the "Reimbursement Allowance"); and

WHEREAS, in consideration of the payment of the Reimbursement Allowance, the parties desire to make certain modifications and amendments to said lease, as previously amended, to increase the rentals and the term of lease thereunder, all as hereinafter set forth, which modifications shall be effective upon the payment of the Reimbursement Allowance;

NOW THEREFORE, in consideration of the premises and the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to Landlord, the receipt and

-2-

sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1.    The parties agree that the Recitals to this Fourth Amendment are true and correct and are incorporated herein by reference.

2.    Upon the payment to Tenant of the Reimbursement Allowance, the following further modifications to said lease, as previously amended, shall become effective:

a.    The initial term of said lease shall be extended so as to expire on January 12, 2015, during which extended period the same covenants and conditions as provided in said lease, shall remain in full force and effect except as herein modified. Such extension shall be in addition to and not in lieu of the five (5) extension options remaining available to Tenant under the provisions of said lease, which renewal options are not hereby exercised, it being further agreed, however, that during said option extension periods rentals due hereunder shall be the increased rentals specified in sub-paragraph (b) below.

b.    The annual minimum guaranteed rental under said lease shall be increased to the total sum of Two Hundred Forty-Nine Thousand Two Hundred Fifteen and 00/100 Dollars ($249,215.00) annually, due and payable in advance in twelve (12) equal monthly installments of Twenty Thousand Seven Hundred Sixty-Seven and 92/100 Dollars ($20,767.92) on the first day of each and every calendar month of the initial lease term as extended as set forth

-3-

in subsection (a) above, and any extensions thereof. Additionally, instead of the percentage rentals currently required under said lease, as amended, Tenant agrees to pay to Landlord a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from the said enlarged demised premises in each fiscal year of Tenant ending approximately June 30 during the term of said lease as extended as set forth in subsection (a) above, and any extensions thereof, exceeds Two Hundred Forty-Nine Thousand Two Hundred Fifteen and 00/100 Dollars ($249,215.00).

LANDLORD

Printed Name: _____

RICARDO PINES   individually

Printed Name: _____

Printed Name: Cynthia N. Crossland

Printed Name: Laura E. Baughman

TENANT

WINN-DIXIE   STORES,   INC.,   a Florida corporation

By: _____
Name: _____James Kufeldt_____
Title: _____President_____

Printed Name: Cynthia N. Crossland

Printed Name: Laura E. Baughman

By: _____
Name: _Wayne E. Ripley, Jr._
Title: _____Secretary_____

(CORPORATE SEAL)

1322JED/21987/94003/AMNDMNT.LSE

-4-

## FIFTH AMENDMENT OF LEASE

THIS FIFTH AMENDMENT OF LEASE, made this _28_ day of _April_ , 1997 between **PINES-CARTER OF FLORIDA, INC.**, a Florida corporation (hereinafter called "Landlord") and **WINN-DIXIE STORES, INC.**, a Florida corporation (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

### W I T N E S S E T H:

WHEREAS, by Lease dated March 25, 1974, as amended, Eskraugh Corporation, a Florida corporation, as Landlord, did lease and demise unto Tenant certain premises, therein more particularly described, located in a shopping center development now known as "Carter Plaza", situated at the northwest corner of the intersection of Madeira Way and 151st Avenue, in the City of Madeira Beach, County of Pinellas and State of Florida, for an initial term of twenty (20) years, commencing upon the date established by that certain Supplemental Lease Agreement dated July 16, 1975, as January 12, 1975, and expiring at midnight on January 11, 1995, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form thereof appearing of record in Official Records Book 4157, at Page 246, Public Records of Pinellas County, Florida; and

WHEREAS, all rights, title and interest of the said Eskraugh Corporation, as Landlord under said lease, have been duly transferred to and are presently vested absolutely in Landlord herein, and

WHEREAS, by Third Amendment of Lease between the parties hereto dated June 6, 1994, the said Lease dated March 25, 1974 was modified in contemplation of construction by Tenant of an addition to Tenant's building, and such construction now having been completed and Tenant having accepted and occupied the building addition, the parties now desire to fix and establish the date for certain modification of said Lease.

NOW THEREFORE, in consideration of the premises and the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1.      In accordance with Articles 3 and 4 of said Third Amendment of Lease dated June 6, 1994, the lease modifications numbered 4(a) through 4(h) of said Third Amendment of Lease shall take effect as of September 7, 1995.

2.      It is mutually agreed that the said Lease dated March 25, 1974, as previously amended, shall be and remain in full force and effect except only as the same is specifically modified hereby. All covenants, terms, obligations and conditions of said Lease, as previously amended, not changed by the within Fifth Amendment of Lease, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord has hereunto set his hand and seal, and Tenant has caused this Fifth Amendment of Lease to be executed in its corporate name and its corporate seal to be hereunto affixed and attested by its officers thereunto duly authorized the day and year first above written.

Signed, sealed and delivered
in the presence of:

Print name: _Cesar Opfos_

Print name: _Elizabeth Pines-Carta_

**PINES-CARTER OF FLORIDA, INC.**

By: _____

Its: _President_

Date: _5/11/97_

DR. RICARDO PINES

*Rebecca L. Sawyer*

Print name: **Rebecca L. Sawyer**

WINN-DIXIE STORES, INC.

*Cynthia N. Crossland*

Print name: **Cynthia N. Crossland**

By: _James Kufeldt_

James Kufeldt

Its: President

Date: 4/28/97

STATE OF _FLORIDA_ )
COUNTY OF _DADE_ )

The foregoing instrument was acknowledged before me this APRIL 22, 1997, by DR RICARDO PINES, as President of Pines-Carter of Florida, Inc., a Florida corporation, on behalf of the corporation, who **[PLEASE CHECK ONE]** ✓ is personally known to me or _____ has produced _____ as identification.

Printed Name: ANTONIO N ARROYO

Notary Public, State and County aforesaid.

My Commission Expires: _____

Notary ID No.: _____

(NOTARIAL SEAL)

Antonio N. Arroyo
Notary Public, State of Florida
Commission No. CC 302568
My Commission Expires 8/14/97
Bonded Through Fla. Notary Service & Bonding Co.

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this April 28, 1997, by James Kufeldt, as _____ President of Winn-Dixie Stores, Inc., a Florida corporation, on behalf of the corporation, who is personally known to me.

*Rebecca L. Sawyer*

Printed Name: Rebecca L. Sawyer

Notary Public, State and County aforesaid.

My Commission Expires: _____

Notary ID No.: _____

(NOTARIAL SEAL)

REBECCA L. SAWYER
My Comm. Exp. June 2, 1998
Comm. No. CC 372310

**CONSENT**

Allstate Life Insurance Company, an Illinois corporation, as the owner and holder of a mortgage upon the Shopping Center or the Premises, hereby consents to the terms and conditions of this Amendment.

_Bridget K. Messino_
Print name: _Bridget Messino_          **ALLSTATE LIFE INSURANCE COMPANY**

_Dawn Mannarino_
Print name: _Dawn Mannarino_           By: _Louise J. Walton_
                                       Its: _Regional Manager_
                                       Date: _5-16-97_

STATE OF _ILLINOIS_ )
COUNTY OF _COOK_ )

. The foregoing instrument was acknowledged before me this _MAY_ _16_, 1997, by _LOUISE J. WALTON_, as ~~A&TE~~ ~~President~~ of Allstate Life Insurance Company, an Illinois corporation, on behalf of the corporation, who **[PLEASE CHECK ONE]** _✓_ is personally known to me or _____ has produced _____ as identification.

_Janice Gregory_
Printed Name: _JANICE GREGORY_
Notary Public, State and County aforesaid.
My Commission Expires: _1-5-2001_
Notary ID No.: _195286_
(NOTARIAL SEAL)

```
"OFFICIAL SEAL"
JANICE GREGORY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 01/05/01
```

O:\TRANSFER\TAMPA\0658\AMEND.5TH



AUGUST 17, 2004

PINES/CARTER
C/O PINES GROUP INC
3301 PONCE DELEON BLVD
CORAL GABLES, FL 33134


WINN-DIXIE LOCATION NO.  658
CARTER PLAZA
15200 MUNICIPAL DRIVE
MADERIA BEACH, FL 33708


DEAR LANDLORD,

IN ACCORDANCE WITH THE TERMS OF THE LEASE AGREEMENT COVERING THE
ABOVE MENTIONED LOCATION, WE ADVISE THAT OUR SALES FOR THE FISCAL
YEAR ENDED JUNE 30, 2004 AMOUNTED TO $13,292,493.70.

WE SUBMIT THESE SALES FIGURES WITH THE UNDERSTANDING THAT THEY
WILL BE KEPT IN STRICT CONFIDENCE BY YOU.


                                    RESPECTFULLY YOURS,
                                    LEASE ACCOUNTING DEPARTMENT


Composite
**EXHIBIT "B"**

VD 22-21 (08/04)



AUGUST 17, 2005

PINES/CARTER
C/O PINES GROUP INC
3301 PONCE DELEON BLVD
CORAL GABLES, FL 33134

WINN-DIXIE LOCATION NO.  658
CARTER PLAZA
15200 MUNICIPAL DRIVE
MADERIA BEACH, FL 33708

DEAR LANDLORD,

IN ACCORDANCE WITH THE TERMS OF THE LEASE AGREEMENT COVERING THE
ABOVE MENTIONED LOCATION, WE ADVISE THAT OUR SALES FOR THE FISCAL
YEAR ENDED JUNE 29, 2005 AMOUNTED TO $12,939,722.46.

WE SUBMIT THESE SALES FIGURES WITH THE UNDERSTANDING THAT THEY
WILL BE KEPT IN STRICT CONFIDENCE BY YOU.

RESPECTFULLY YOURS,
LEASE ACCOUNTING DEPARTMENT

**Thomas H. Davidson**
**DJM Asset Management, LLC**
**32 Hitching Post Drive**
**Southington, CT 06489**
**Tel: 860-621-7109**
**Fax: 860-621-7109**
**E-mail: t.davidson@djmasset.com**

**CONFIDENTIAL**

VIA Fax 305-529-0002

August 1, 2005  First Draft Confidential

Ricardo Pines
Pines-Carter of Florida, Inc.

RE:   **Winn Dixie #658**
      **15200 Municipal Drive**
      **Maderia Beach, FL 33708**
      **Winn-Dixie Stores, Inc. ("Debtor")**

Dear Mr. Pines,

DJM Asset Management, LLC has been retained to handle negotiations with respect to lease modifications and other necessary concessions with the Debtor's subject Landlords.

As you are aware, Winn-Dixie Stores, Inc. ("Debtor") is currently the debtor in a case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") currently pending before the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division. The Debtor is a party to a lease with you, as landlord (the "Landlord"), or the Landlord on whose behalf you are acting as its agent, with respect to the store premises referenced above (the "Lease"). The Debtor is currently evaluating each of its real property Leases in order to determine which Leases should be accepted (assumed) in its chapter 11 bankruptcy case. Any Leases that are not ultimately assumed by the Debtor will be rejected.

Per our telephone conversation, the following are the necessary concessions and other leasehold modifications that are requested by the Debtor with respect to the above referenced property:

1. The Landlord hereby waives all defaults that would or might otherwise have to be cured pursuant to section 365(b)(1) of the Bankruptcy Code in connection with the assumption of the Lease, and release the Debtor from any and all claims that the Landlord has or might have relating to any defaults, including any claims for actual pecuniary loss relating to such defaults (the "Prepetition Cure"); provided, however, that the Landlord does not waive any claims under the Lease for rent, common area maintenance and taxes that cover the period from February 22, 2005 to the effective date of the assumption of the Lease and that constitutes "obligations" under section 365 (d)(3) of the Bankruptcy Code.

2. The Landlord agrees to modify the Lease under the following terms and conditions:

**EXHIBIT "C"**

a) Effective September 1, 2005 through September 6, 2015 ("the rent relief period ") the annual base rent will be reduced from $249,215/yr, payable at the rate of $20,768 monthly to $199,215/yr, payable at the rate of $16,601.25 monthly..

b) The percentage rent breakpoint will be calculated as per the existing lease provision.

c) All other terms and conditions of the Lease shall remain in full force and effect.

d) The Debtor reserves all of its rights under Section 365 of the Bankruptcy Code as debtor-in-possession. The execution of this document shall not be, or be deemed or construed as an assumption of the Lease or a waiver of any of Debtor's rights.

e) However, if the Lease is rejected in connection with Debtor's Bankruptcy case, then Landlord's general unsecured claim for Debtor's Bankruptcy case shall be based on the original terms of the Lease and not as amended herein.

This Letter Agreement is not binding on either party until the Landlord and the Debtor execute it. Landlord acknowledges and agrees that it is solely responsible for obtaining any and all approvals of this letter agreement by any third party and that it's performance hereunder is not contingent on action or approval of any third party.

If you agree to the terms of this Letter Agreement, kindly sign where indicated below and we will then forward to the Debtor for their counter signature and return a copy to you.

Landlord and Debtor agree that a fully executed facsimile copy of this Agreement shall be deemed as good as an original.

Should you have any questions or comments, please feel free to call me at the number indicated above.

Very truly yours,

**DJM Asset Management, LLC**

Thomas H Davidson

CONFIDENTIAL

**Agreed to and Accepted**

This _____ day of____, 2005

Debtor:_____

BY: _____

ITS: _____

**Agreed to and Accepted**

This _____ day of _____, 2005

Landlord: _____

BY: _____

ITS: _____

 PINES GROUP, inc.

August 10, 2005

Mr. Thomas H. Davidson
DJM Asset Management, LLC
32 Hitching Post Drive
Southington, CT 06489

RE: Lease Agreement for Store # 658, located at 15200
    Municipal Drive, Madeira Beach, Pinellas County,
    Florida, with Winn-Dixie Stores, Inc.

Dear Mr. Davidson:

We have received and reviewed your confidential draft letter
dated August 1, 2005, requesting certain concessions and other
modifications to the above referenced Lease, copy of your
communication is enclosed for your convenient reference.

After due consideration, your request is hereby rejected. If Winn-
Dixie Stores, Inc., as Debtor, assumes the Lease in its Chapter 11
Bankruptcy proceedings, Landlord will insist on strict compliance
with the terms of the existing Lease and will further demand that
all defaults of the tenant be cured (to the extent that such defaults
are curable) in accordance with Section 365(b) of the Bankruptcy
Code. We trust your firm will notify Debtor in Possession
accordingly.

Nothing in this letter shall be deemed a waiver of any existing
default of the Lease or an acknowledgement by Landlord that such

**EXHIBIT "D"**

Mr. Thomas H. Davidson
DJM Asset Management, LLC
August 10, 2005
Page Two (2)

defaults are curable. Moreover, the enumeration herein of
particular rights and remedies does not constitute a waiver or
relinquishment of any other rights or remedies. All rights and
remedies are hereby reserved.

Very truly yours,


PINES CARTER OF FLORIDA, Inc.



By Dr. Ricardo Pines
President

RP/mb

Enclosures

Original via US mail, copy via fax 860-621-7109