UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

------------------------------------------------------------x
                                                             :
In re                                                        :   Case No. 05-03817-3F1
                                                             :
WINN-DIXIE INC., et al.,                                     :   Chapter 11
                                                             :
         Debtors.                                            :   Jointly Administered
                                                             :
------------------------------------------------------------x

------------------------------------------------------------x
In re                                                        :   Case No. 05-03837-3F1
WINN-DIXIE MONTEGOMERY, INC.                                 :   Chapter 11
         Debtors.                                            :
------------------------------------------------------------x

------------------------------------------------------------x
In re                                                        :   Case No. 05-03839-3F1
WINN-DIXIE RALEIGH, INC.                                     :   Chapter 11
         Debtors.                                            :
------------------------------------------------------------

------------------------------------------------------------x
In re                                                        :   Case No. 05-038369-3F1
WINN-DIXIE LOGISTICS, INC.                                   :   Chapter 11
         Debtors.                                            :
------------------------------------------------------------

## LIMITED OBJECTION OF DEUTSCHE BANK TRUST COMPANY AMERICAS, PASS-THROUGH TRUSTEE TO DEBTORS' MOTION TO SELL THE ASSETS AND ASSUME AND ASSIGN THE LEASE WITH REGARD TO THE MIAMI DIARY PLANT

1.      Deutsche Bank Trust Company Americas (formerly known as Bankers Trust Company, hereinafter, "Deutsche Bank"), is acting as (i) Pass-Through Trustee under the Amended and Restated Pass-Through Trust Agreement (Winn-Dixie Pass-Through Certificates, Series 1999-1), dated as of February 1, 2001, among Deutsche Bank, as Indenture Trustee, First Union National Bank (now known as Wachovia Bank, N.A.), as Servicer, and Deutsche Bank, as

N257352.2

Pass-Through Trustee (the "Pass-Through Trust Agreement") and (ii) Indenture Trustee under fifteen Indentures ("Indenture", as that term is defined in the Pass-Through Trust Agreement) pursuant to which the secured notes described in paragraph 2 were issued.

2. In the transaction contemplated by the Pass-Through Trust Agreement, certain of the Debtors in this proceeding sponsored the issuance of over $402 million in securities denominated "Winn-Dixie Pass-Through Certificates, Series 1999-1" (the "Certificates") of which $378.8 million remains outstanding. The Certificates represent undivided interests in a pool of notes issued pursuant to the Indentures which are secured, *inter alia*, by (a) mortgages on fifteen manufacturing, warehouse and office properties each owned by a special purpose entity and leased, under fifteen separate leases (the "Leases"), to Winn-Dixie Stores, Inc. or a wholly-owned subsidiary thereof and fully guaranteed by the parent corporation under a guaranty agreement (the "WD Stores Guaranty"), (b) assignments of such leases and (c) a Residual Value Surety Bond (the "Residual Value Surety Bond") issued by Centre Reinsurance (U.S.) Limited (the "Surety") to assure the residual value of the leased premises at the end of the Lease terms. The Offering Memorandum for the Certificates, dated August 16, 1999, states that the leased facilities then had an aggregate appraised value of over $421 million. One of the leases described above was for the Miami Dairy Facility which is the subject of the present motion.

3. In essence, this limited objection has been interposed because Debtors Winn-Dixie Stores, Inc. ("WD Stores") and WP Logistics (collectively "Debtors") have failed to meet their burden in at least two critical areas: namely they impermissibly seek to release the independent guarantee of the lease of obligations executed by WD Stores, the corporate parent of WD Logistics, but a separate debtor in these administratively consolidated cases. Importantly, there has been no substantive consolidation of the debtors in this case. Secondly Debtors have

N257352.2

failed to provide the information necessary to ascertain whether the proposed assignee of the lease, Southeast Milk, Inc., can provide adequate assurance of future performance as required by §365 (f). It is simply not enough to say, as the Debtors do, that such information will be provided on the morning of the hearing. Elemental fairness requires that we be given due opportunity to assess the information provided and ascertain its accuracy sometime prior to the hearing, at the very minimum 3 business days.

A. **The Debtor Has Failed to Meet its Burden of Providing Adequate Assurance of Future Performance.**

4. Section 365(f)(2)(B) of the Bankruptcy Code requires that as a prerequisite to the proposed assignment, the Trustee must provide adequate assurance of future performance by the assignee. "Before the Court will sanction an assignment…the trustee must provide 'adequate assurance' that the assignee will satisfactorily perform under the contract." In re Food Barn Stores, Inc., 107 F.3d 558, 562 (8th Cir. 1997). The Debtors have failed to meet their burden in this regard, having failed to provide any evidence whatsoever that proposed assignee will be able to perform its obligations under the Lease. Accordingly, the Motion fails on this basis alone.

5. While Deutsche Bank does not seek to delay this proceeding, it requests that Debtors be directed to provide such information as they believe will satisfy the statutorily mandated burden to demonstrate "adequate insurance of future proformance at least 3 business days before any hearing on this motion. This proceeding should not be a game of hide and seek and the parties hereto should not have to wait to the very moment testimony is given to receive the required information. Due process requires more than what Debtors have proposed.

B. **The Invalidation of the Guarantee Provisions of the Motion Violate Applicable Law**

N257352.2

6.      Congress never intended for §365(f) to allow a debtor to benefit from the advantages of an assumed lease while evading the corresponding responsibilities provided for in the proposed transaction. In particular, the legislature sought to insure that the other contracting party not find itself unduly disadvantaged by the assumption or assignment of a lease. Thus one Court cautioned, citing legislative history, that "[t]he unenforceability of ipso facto or bankruptcy clauses proposed under this Section will require the courts to be sensitive to the rights of the non-debtor party to executory contracts and unexpired leases. If the trustee is to assume a contract or a lease, the Court will have to insure that the trustee's performance under the contract or lease gives the other party the full benefit of his bargain." In ere Pin Oaks Apartments, 7 B.R. 364, 367 (S.D. Tex. 1980) (citing U.S. Code Cong. And Admin. News, 95th Cong, Second Sess., S. Rep. No. 95-989, 5789, 5845 and H.R. Rep. No. 95-595, 6304-6305). Had Congress intended to allow for assumption "[t]o abrogate any contractual rights between a debtor and a non-debtor contracting party other than anti-assignment and 'ipso facto' clauses, it would have expressly done so." *Id.*

7.      Courts have remained vigilant to prevent debtors and assignees from abusing §365 and using the section to enable them to write out obligation that they find onerous. "An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them I full force and effect as to the party charged...Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor." Citibank, N.A. v. Tele/Resources, Inc., 724 F.2d 266, 269 (2nd Cir. 1983); see also In re Jamesway Corp., 201 B.R. 73 (S.D.N.Y. 1996) ("Except as otherwise

N257352.2

provided in the Bankrutpcy Code, an executory contract or unexpired lease is assumed *cum onere*").

8. As such any ruling permitting the assumption and assignment should not, in any way affect, the WD Stores Guaranty of the lease obligations. The WD Stores Guaranty was a separately bargained for protection which should not be "washed away" in the assumption/assignment process. Yet this is precisely what Debtors seek to do here. Indeed invalidating the guarantee obligations would severely prejudice Deutsche Bank and the Certificate Investors since, as Debtors are well aware, such a result would place the continued viability of a Residual Value Surety Bond obtained as part of the transaction and as further security protection to the Certificate Investors as described below.

9. The direct effect of voiding the WD Stores Guaranty may have the collateral effect of depriving Certificate investors of the benefit of the Residual Value Surety Bond, for which a premium of over $1.3 million was paid. Under Section 3(b) of the Residual Value Surety Bond, one condition to payment by the Surety is that "neither the Lease Guaranty [i.e., the WD Stores Guaranty] nor any comparable guaranty, if any, relating to any replacement lease shall have been amended such that the enforceability of the guarator's obligations relating to the rent payment to be come due under the Lease on the Secured Note Final Maturity Date shall have been amended or waived." While Deutsche Bank naturally would contend, in any dispute with the surety, that the discharge of WD Stores' obligations on the WD Stores Guaranty is not

- 6 -

such an amendment or waiver, investors should not be subjected to this risk, particularly when the relief sought is not necessary to effect the assignment and assumption.[1]

10.  Thus, any ultimate order approving the Assumption and Assignment must provide that the WD Stores Guaranty obligations of WD Stores be unaffected.

### CONCLUSION

For each of the foregoing reasons, Deutsche Bank respectfully requests that this Court sustain the instant Limited Objection and award such other and further relief as this Court deems appropriate under these circumstances.

Dated: December 5, 2004

Deutsche Bank Trust Company, Americas

By: /s/ Richard Bernard
Dennis J. Drebsky
Richard Bernard
NIXON PEABODY, LLP
437 Madison Avenue
New York, NY 10022
Tel: 212-940-3000

---

[1] Even if the extinguishment of WD Stores' liability on the WD Stores Guaranty were necessary, this could be accomplished without subjecting Deutsche Bank or Certificate Investors to undue risk of loss of coverage under the Residual Value Surety Bond. Any release of liability under the WD Stores Guaranty could be conditioned on the Debtors obtaining either (a) the consent of the Surety to the release of liability on the WD Stores' Guaranty coupled with confirmation that such release does not constitute a failure of any condition or a defense to payment on the Residual Value Surety Bond or (b) the Debtors could, upon due notice to the Surety, seek a hearing before this court or another court of competent jurisdiction seeking such an interpretation of the Residual Value Surety Bond.

N257352.2