O.R. 6316 PAGE 510

86214632

## DECLARATION OF RESTRICTIONS
## AND
## GRANT OF EASEMENTS

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, MORRIS DEVELOPMENTS OF FLORIDA, INC., a Florida corporation (hereinafter called "Morris"), and WINN-DIXIE STORES, INC., a Florida corporation (hereinafter called "Winn-Dixie"), (hereinafter jointly called "Declarant") are the owners of parcels totalling approximately 4.7 acres of land located on Third Avenue, between Ninth and Eighth Streets, in St. Petersburg, Pinellas County, Florida, the parcels being Lots 1 and 3 owned by Morris and Lot 2 owned by Winn-Dixie, as more particularly described on Exhibit "A" hereto and by this reference made a part hereof; and

WHEREAS, Declarant plans to construct or to be permitted to be constructed on the parcels various commercial store buildings and improvements, which together are to constitute a shopping center; and

WHEREAS, Declarant desires to declare, establish, grant and provide for the benefit of: (1) Declarant and any subsequent owners now or hereafter of all or any portion of each of said parcels and the respective heirs, legal representatives, successors and assigns of all of them and any successors entitled to all or any portions of each of the parcels (hereinafter collectively called "Owners"); and also for the benefit of: (2) the holder or holders of any first mortgage or similar security instrument hereafter constituting a lien against all or any portion of each of the parcels (hereinafter collectively called "Lenders"); and (3) the tenants and occupants from time to time of any of the commercial buildings constructed within the building areas on both such parcels, their employees, successors and assigns, customers, invitees (hereinafter collectively called "Beneficiaries"); certain restrictions, rights, obligations, easements and licenses to run with the title to the said parcels to the end that a mutually beneficial building plan, automobile parking plan and a compatible plan for the arrangement and design of the improvements and permitted uses thereof in the shopping center will be established covering the composite parcels hereinabove described; and

WHEREAS, The establishment of the restrictions, rights, privileges and

Prepared By:
WAYNE E. Ripley, Jr., Esquire
5050 Edgewood Court
Jacksonville, FL. 32203-0897

O.R. 6316 PAGE 511

easements hereby created is a material inducement to Declarant and each of them to purchase and develop the three parcels.

NOW, THEREFORE, in consideration of the premises and the mutual benefits to the Declarant and to the Beneficiaries hereunder, the Declarant, for itself, its heirs, representatives, successors, grantees and assigns, does hereby declare and provide as follows:

1. No above-ground buildings or structures of any kind shall be erected within the parcels described on Exhibit "A" hereto except within the building areas designated on that certain two page plot plan entitled "Site Plan" and "Construction Details" prepared by King Engineering Associates, Inc., Engineers - Planners - Surveyors, Clearwater, Florida, undated, initialled and attached hereto, as the same may be amended from time to time with the consent of Owners, Winn-Dixie, and Lenders.

The remainder of land in the parcels described on Exhibit "A" hereto not used for building construction shall be reserved for use as common facilities, and no buildings or structures of any kind shall be constructed within the areas reserved for the common facilities, which may be used only as vehicular parking areas, roadways, service areas, drives, entranceways and exits and sidewalks, and other pedestrian ways and as landscaped and planting areas, but permitting those necessary appurtenances for such use including, without limitation, paving, light standards, curbings, directional signs, drainage facilities and underground facilities and pylon signs advertising the shopping center and the business or businesses conducted by the occupants of commercial buildings on the respective parcels.

2. Declarant does hereby establish and create for Declarant, Owners and Beneficiaries hereunder and does hereby give, grant and convey to each and every of said Declarant, Owners and Beneficiaries, and to their respective employees, servants, agents, suppliers, customers and invitees, a mutual, reciprocal and non-exclusive easement, right, license and privilege of passage and use, both pedestrian and automotive, over, across and upon any and all portions of the said common facilities for the purposes of ingress, egress and parking, and all said common facilities from time to time existing upon the parcels described on Exhibit "A" hereto are hereby expressly reserved and set apart for such purposes, respectively. Nothing herein is intended to nor shall be construed to create any rights

-2-

O.R. 6316 PAGE 512

whatsoever for the benefit of the general public in the said parcels or the improvements constructed thereon.

3. Declarant does hereby establish and create for the benefit of the building areas and for the benefit of Declarant, Owners and Beneficiaries hereunder and does hereby give, grant and convey to each and every Declarant, Owner and Beneficiary a mutual reciprocal and non-exclusive right and easement in, under, over, across, upon and through any and all portions of the common facilities for the installation, use, maintenance, repair and replacement of all utility lines, wires, pipes, conduits, sewers, drainage lines and other utilities necessary to serve the building areas; provided, however, that no pipes, conduits, sewers, drainage lines or other utility apparatus shall be placed above the surface of the common facilities without the prior consent of Declarant, Owners and Beneficiaries, which said consent shall not be unreasonably withheld; and provided further, that any and all damage to the common facilities or building areas occasioned by such work shall be promptly repaired and restored at the sole cost and expense of the party causing such work to be performed. In the event that any of the buildings now or hereafter constructed on the parcels described on Exhibit "A" hereto are damaged or destroyed, the Owner of the affected parcel shall promptly restore the damage with a building of similar quality or demolish the damaged or destroyed building and level, grade and landscape or pave the area previously occupied by such building.

The buildings constructed on the parcels described on Exhibit "A" hereto may have their outer edges of foundations, walls and other structural components in common or abutting each other at the boundary lines of buildings, which may be sold to different owners, and there is hereby granted a mutual support and construction easement between the parcels whereby each parcel shall have an easement for lateral support from the other parcels. Activities shall not be undertaken on any parcel which would in any way diminish, alter or impair the structural integrity of improvements on the other parcels, and the owner of each parcel shall have an easement to come upon the other when necessary to construct, maintain or repair, reconstruct or restore the improvements, but all such activities shall be undertaken and completed in such a way as to not unreasonably interrupt or interfere or detract from the use, operation or quiet enjoyment of the burdened parcel. Also, such buildings abutting each other at property lines

O.R. 6316 PAGE 513

shall be provided with fire walls from foundation to roof line meeting at least the minimum fire code requirements, not less than four (4) hour-rated.

4. For and during the term of this Agreement, Winn-Dixie shall have the exclusive right to operate a supermarket within the parcels described on Exhibit "A" hereto, and no other portion or portions thereof or of the parcels described on Exhibit "A" hereto shall be permitted to be occupied or be leased or rented, directly or indirectly, for occupancy as a supermarket, grocery store, meat, fish, fruit, vegetable, dairy products or frozen food market, nor keep in stock or sell for off-premises consumption any staple or fancy groceries except the sale of such items not to exceed the lesser of 200 square feet of sales area or 10% of the square foot area of any storeroom located thereon as an incidental only to the conduct of another business, nor shall any tenant or occupant of any portion of said parcel be permitted to sublet in any manner, directly or indirectly, all or any part thereof to any person, firm or corporation engaged in such business without the prior written consent of Winn-Dixie. Notwithstanding the foregoing, the provisions hereof shall not restrict a restaurant as provided below.

The buildings constructed on Lots 1 and 3 described on Exhibit "A" hereto shall be used only for retail and service stores, it being the intent hereof that no spa, bowling alley, skating rink, bingo parlor, theatre (either motion picture or legitimate), sales of automobiles, or health, recreational and entertainment-type activities or non-retail or non-service type activities shall be permitted therein; provided, however, that business and professional offices of a type typically found in shopping center developments (it being presumed that those with more than five employees or owners using the space at a time are restricted hereunder) may be located in up to one-half of the buildings located on Lots 1 and 3. None of such space shall be used for a bar, tavern, or "disco" or similar dancing or entertainment-type business, but a package store may be located in Lot 3. A restaurant of not to exceed 4,000 square feet may be located in Lot 3, provided that it shall not be of a Fridays or Bennigans-type, and shall not have a dance floor and its seating capacity shall not exceed 100 people. The restaurant may serve alcoholic beverages as an incidental to its business.

The Owner of each building within the parcel described on Exhibit "A" hereto shall repair and maintain the exterior of its building so as to maintain

-4-

O.R. 6316 PAGE 514

a first-class appearance of the overall shopping center, substantially as initially constructed. The Owner from time to time of Lot 3 described on Exhibit "A" hereto hereto shall operate and maintain all of the common areas within the overall parcels described on Exhibit "A" hereto, including all the ramps, sidewalks, streets, entranceways, malls, parkings areas, service areas, driveways and related improvements outside of the building areas, provided therefor all such services as are reasonably required, including, but without limitation, cleaning and sweeping, lighting, policing if necessary, general repair and maintenance of all paved surfaces, repainting and restriping of the parking area, watering and maintenance of the landscaped areas and repair and replacement of such common area facilities as necessary to maintain the first-class image of the shopping center. Within such common area maintenance shall be included the cost of public liability insurance on all of the common facilities with a company qualified to transact business in Florida with limits of not less than $1,000,000.00 for an accident affecting any one person, not less than $1,000,000.00 for accidents affecting more than one person, and $100,000.00 for property damage. The premiums for such insurance policy shall be included within the common area expenses.

For the services of the owner of Lot 3 in maintaining the common areas, the owner of each other parcel so affected shall pay to such owner its prorata share of the cost thereof as documented to such owner, based upon the common area operating cost as actually paid (excluding overhead and similar administrative charges but including reasonable and bona fide management fees as standard in the industry if a management firm is used), prorated upon the ratio that the square footage of the building of each subparcel bears to the total building square footage within the overall parcel described on Exhibit "A" hereto. The prorata share for Lot 1 shall be 15.7%, for Lot 2 shall be 72%, and for Lot 3 shall be 12.3%.

The owner of Lot 3 may bill the other owners on an estimated basis for their prorata share of such expenses, based upon the expenses for the prior year, and adjusted not less than annually, with such annual adjustment billing made not later than June 1 of each year and supported by and accompanied with appropriate documentation. All amounts due, whether the estimated payments or adjusted payments, shall be due and payable within thirty (30) days from receipt of the billings and supporting documentation as reasonably requested. The owner

-5-

O.R. 6316 PAGE 515

shall have the right to inspect through their designated agents all receipts, cancelled checks and other records of the payments and charges reflected in the billings with such records to be maintained for a period of not less than one (1) year after each billing, but with such audit to be conducted in a manner not to unreasonably interfere with the business of the owner of Parcel 2 and at the expense of the inquiring owner. The premiums for the public liability insurance required above shall be included within the billings. In the event that such insurance is carried under an "umbrella" or "master" policy, the premium for the coverage of the center shall be separately stated if available, or shall be based upon a good faith estimate by the procurring broker.

5. All such common area maintenance expenses shall be secured by a lien, and shall bear interest at the rate of eighteen percent (18%) per annum, but not in excess of the highest rate allowed by law, until paid. The lien may be filed for record by the party entitled thereto as a claim of lien against the defaulting owner in the county records, signed and verified, containing at least a statement of the unpaid amount of the cost and expenses, a description sufficient for identification of the portion of the property of the defaulting owner which is the subject of the lien, and the name of the owner or reputed owner of the property which is the subject of the lien. Such lien once so filed against the real property shall be prior and superior to any right, title, interest, lien, or claim which may be or has been acquired or attached after the date hereof, and shall be for the use and benefit of the person filing the same. Such lien may be enforced and foreclosed in a suit or action brought in any court of competent jurisdiction, and shall also secure defaults and reasonable attorney's fees incurred in collecting sums due or enforcing the lien.

6. The terms, covenants, conditions and provisions of these restrictions may be extended, abrogated, modified, rescinded or amended in whole or in part only with the consent of Declarant, Owners, the Lenders, and their successors and assigns but subject to such consent, Declarant, or its successor or successors in title, expressly reserve the right to extend, abrogate, modify, rescind or amend the covenants and restrictions herein by an instrument in writing duly executed by the appropriate parties in interest and duly recorded.

7. These easements and restrictions shall become effective on the date

-6-

O.R. 6316 PAGE 516

hereof and shall be binding upon all parties or persons claiming under them. The restrictions on use contained herein shall continue and run with the land for a period ending one (1) year after all of the buildings on the parcels described on Exhibit "A" hereto all have ceased (other than temporary cessation for repairs, reconstruction or other reasons beyond the control of the Owner) to be used for commercial purposes. Notwithstanding termination of the restrictions and covenants herein, the easements provided herein shall survive and be perpetual as to the common areas as long as reasonably necessary or useful to the parcels affected thereby. The easements, rights, privileges, restrictions and benefits created or granted under these restrictions and each provision hereof shall be enforceable by Declarant, Owners, and Lenders, their successors and assigns by injunction or by specific performance and shall be deemed covenants running with the title to the said parcels so long as these restrictions (as the same may be amended from time to time) shall be in effect, as above provided. This instrument shall be binding upon and inure to the benefit of the respective heirs, legal representatives, successors and assigns of Declarant as herein provided.

IN WITNESS WHEREOF, Declarant has executed these presents this 4th day of June, 1986.

Signed, sealed and delivered
in the presence of:

_[signature]_
_[signature]_
As to Morris Developments of
Florida, Inc.

MORRIS DEVELOPMENTS OF FLORIDA, INC.

By: _[signature]_
Its    Chairman    President

Attest: _[signature]_
Its    Secretary

(Corporate Seal)

_[signature] Betty L. Robinson_
_[signature] Rebecca L. Sawyer_
As to Winn-Dixie Stores, Inc.

WINN-DIXIE STORES, INC.

By: _[signature]_
Its    President

Attest: _[signature]_
Its    Secretary

(Corporate Seal)

DECLARANT

-7-

a - 2. Corporate

STATE OF Florida )
COUNTY OF Pinellas )

O.R. 6316 PAGE 517

The foregoing instrument was acknowledged before me this 11 day of June, 19 86, by Audie L Morris and Wade W Cullis, Chairman President and — Secretary, respectively, of MORRIS DEVELOPMENTS OF FLORIDA, INC., a Florida corporation, on behalf of the corporation.

(NOTARIAL SEAL)

Maureen N Krueger
NOTARY PUBLIC, State and County aforesaid

My Commission Expires:

NOTARY PUBLIC STATE OF FLORIDA
MY COMMISSION EXPIRES AUG 17 1986
BONDED THRU GENERAL INS UNDERWRITERS

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this 4th day of June, 19 86, by A. Dano Davis and JS Bryan Jr., ___ President and ___ Secretary, respectively, of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation.

(NOTARIAL SEAL)

Michael G Mills
NOTARY PUBLIC, State and County aforesaid

My Commission Expires:

MICHAEL A. MILLS
Notary Public, State of Florida
My Commission Expires July 20, 1989

O.R. 6316 PAGE 518

EXHIBIT "A"

Lot 1:

    Lot 1, Block 1, Webb City Replat First Edition, as recorded in Plat Book _94_, Page _40_, Public Records of Hillsborough County, Florida.

Lot 2:

    Lot 2, Block 1, Webb City Replat First Edition, as recorded in Plat Book _94_, Page _40_, Public Records of Hillsborough County, Florida.

Lot 3:

    Lot 3, Block 1, Webb City Replat First Edition, as recorded in Plat Book _94_, Page _40_, Public Records of Hillsborough County, Florida.