Return To:

This Instrument was prepared by
Patrick G. Emmanuel, Jr., Attorney-at-Law
whose address is P. O. Box B
Jacksonville, Florida 32203

(Reserved for Clerk)

## SUBORDINATION, NONDISTURBANCE, AND ATTORNMENT AGREEMENT

THIS SUBORDINATION, NONDISTURBANCE, AND ATTORNMENT AGREEMENT (this "Agreement"), made February 20, 2004, between **Colonial Bank, N.A.**, a national banking association, whose address is 5858 Central Avenue, At. Petersburg, Florida 33707 (together with its successors, assigns, and transferees, "Lender") and **Winn-Dixie Stores, Inc.**, a Florida corporation, whose address is 3015 Coastline Drive, Orlando, Florida 32808 Attention: Asset/Property Management (together with its successors and assigns, "Winn-Dixie");

### RECITALS:

1.  Lender has made or is about to make a loan to Allard, LLC, a Florida limited liability company ("Landlord"), secured by a mortgage, deed of trust, security deed, or other financing instrument recorded or to be recorded in the Official Records of Pinellas County, Florida (together with any modifications, consolidations, extensions, replacements, or renewals thereof, the "Mortgage"), encumbering the real estate known as "Webb Plaza" shopping center at the 850 3rd Avenue South, in St. Petersburg, Pinellas County, Florida, and more particularly described in the Mortgage and on Exhibit "A" attached hereto and incorporated herein (the "Shopping Center"); and

2.  By Lease dated July 16, 1997 (as amended or is evidenced only by Short Form Lease dated July 16, 1997, recorded in Official Records Volume 9775, page 1266 of the public records of Pinellas County, Florida, and as otherwise to be amended from time to time, the "Lease"), Landlord did lease unto Winn-Dixie,

as tenant, those certain premises which constitute a portion of the Shopping Center and are more particularly described in the Lease (the "Premises"); and

3. Lender and Winn-Dixie desire that the Lease shall not terminate but rather shall remain in full force and effect in accordance with its terms if the Mortgage is foreclosed or any transfer of the Premises is made in lieu thereof.

NOW THEREFORE, for valuable consideration the receipt and sufficiency of which is hereby acknowledged, Lender and Winn-Dixie agree as follows:

1. Provided Winn-Dixie is not in material default under the terms of the Lease, then in the course of or following any exercise of any remedy under the Mortgage, any foreclosure sale of the Shopping Center or the Premises, or any transfer of the Shopping Center or the Premises thereafter or in lieu of foreclosure (together with any similar events, a "Foreclosure Event"):

   (a) The right of possession of Winn-Dixie to the Premises and Winn-Dixie's rights arising out of the Lease shall not be affected or disturbed by Lender.

   (b) Winn-Dixie shall not be named as a party defendant unless required by law.

   (c) The Lease shall not be terminated or affected by any Foreclosure Event.

2. Following a Foreclosure Event, Winn-Dixie shall attorn to Lender as its new landlord and the Lease shall continue in full force and effect as a direct lease between Winn-Dixie and Lender. Notwithstanding the foregoing, Lender shall not be:

   (a) liable for any act or omission of any prior landlord (including Landlord), unless such action was taken at the direction of or with the approval of Lender; or

   (b) subject to any offsets or defenses which Winn-Dixie might have against any prior landlord (including Landlord) except those which arose out of such landlord's default under the Lease and accrued after Winn-Dixie has notified Lender and given Lender an opportunity to cure as provided in the Lease; or

   (c) bound by any rent Winn-Dixie paid for more than the then current month to any prior landlord (including Landlord); or

   (d) bound by any modification of the Lease made after the date hereof without Lender's consent.

3. Following a Foreclosure Event, Lender promptly shall give notice thereof to Winn-Dixie, stating its current address and providing evidence of Lender's title to the Premises.

4. The Lease is subject and subordinate to the lien of the Mortgage and to all advances made or to be made thereunder as though the Mortgage had been executed and recorded prior in point of time to

2

the execution of the Lease. Notwithstanding the foregoing, subordination of the Lease to the Mortgage should not be construed to constitute Winn-Dixie's consent or agreement to any term, condition, or provision of the Mortgage or any related loan document which is inconsistent with or purports to modify, alter, or amend the Lease.

5. The foregoing provisions shall be self-operative and effective without the execution of any further instrument on the part of either party hereto. However, Winn-Dixie agrees to execute and deliver to Lender such other instrument as Lender shall reasonably request to evidence such provisions.

6. Winn-Dixie agrees it will not, without the prior written consent of Lender (i) modify the Lease or any extensions or renewals thereof in such a way as to reduce rent, accelerate rent payment, shorten the original term, or change any renewal option; (ii) terminate the Lease, except as provided by its terms; (iii) tender or accept a surrender of the Lease or make a prepayment in excess of one (1) month of any rent thereunder; or (iv) subordinate or knowingly permit subordination of the Lease to any lien subordinate to the Mortgage, except for those liens that are superior to the Mortgage by law, if any. Any such purported action without such consent shall be void as against Lender.

7. Winn-Dixie will give notices to Lender in accordance with paragraph 32 of the Lease at the address set forth in the first paragraph of this Agreement or at such other address as Lender may advise from time to time. Lender shall be entitled to the cure periods provided in paragraph 32 under the Lease.

8. If Lender, or its assignee, obtains Landlord's interest in the Shopping Center, Lender agrees to promptly provide or cause to be provided to Winn-Dixie (a) a copy of any current marked title commitment or title policy showing any new landlord as the owner thereof, (b) a W-9 form or its equivalent setting forth the name and tax identification number of the party collecting rent, signed by an authorized person, (c) a letter of instruction on the letterhead of Landlord (or new landlord in the case of a sale or other transfer) stating (i) the name, address, phone number, and contact person of the entity collecting rent under the Lease, and (ii) the names, addresses, and telecopy numbers of all persons to be provided notices from Winn-Dixie under the Lease, (collectively, the "Transfer Requirements") and/or (d) such other information as Winn-Dixie may reasonably require. Following receipt of the foregoing, as of the date of any such transfer, the transferring landlord shall be released from any obligations accruing after the date of the transfer except as otherwise expressly provided in the Lease. The Transfer Requirements must be met to ensure that Winn-Dixie is paying rent to the proper, entitled party and Winn-Dixie shall have the right to <u>temporarily</u> withhold rent in trust pending receipt of Transfer Requirements.

9. If Lender enforces any right under the Mortgage to collect rent under the Lease, without obtaining title to the Premises, Lender shall provide to Winn-Dixie a W-9 form or its equivalent setting forth its proper name and tax identification number, signed by an authorized person, and/or such other information as Winn-Dixie may reasonably require (collectively, the "Tax Data"). The Tax Data must be obtained by Winn-

3

Dixie to ensure that Winn-Dixie is paying rent to the proper, entitled party and Winn-Dixie shall have the right to <u>temporarily</u> withhold rent in trust pending receipt of the Tax Data.

**IN WITNESS WHEREOF**, Lender and Winn-Dixie have executed this Agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

*Davina G. Carroll*
Print name: DAVINA G. CARROLL

*[signature]*
Print name: KENNETH E. THORNTON

**Colonial Bank, N.A.**

By: *Donna K. Lawrence*
Its: Senior Vice President
Date: February 25, 2004

*Sheila P. DeShong*
Print name: SHEILA P. DESHONG

*Laura E. Baughman*
Print name: Laura E. Baughman

**Winn-Dixie Stores, Inc.**

By: *Dennis M. Sheehan*
DENNIS M. SHEEHAN
Its: VICE PRESIDENT
Date: February 20, 2004

UNOFFICIAL COPY

4

STATE OF Florida )
COUNTY OF Pinellas )

The foregoing instrument was acknowledged before me this February 25, 2004, by Donna K. Lawrence, as Sr. Vice President of Colonial Bank, N.A., a national banking association, on behalf of the association, who [PLEASE CHECK ONE] ✓ is personally known to me or ___ has produced _____ as identification.

Davina G. Carroll
Printed Name: _____
Notary Public, State and County aforesaid.
My Commission Expires: _____
Notary ID No.: _____
(NOTARIAL SEAL)

Davina G. Carroll
MY COMMISSION # DD133698 EXPIRES
August 18, 2006
BONDED THRU TROY FAIN INSURANCE, INC.

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this February 20, 2004, by DENNIS M. SHEEHAN, as Senior Vice President of Winn-Dixie Stores, Inc., a Florida corporation, on behalf of the corporation, who is personally known to me.

Laura E. Baughman
Printed Name: Laura E. Baughman
Notary Public, State and County aforesaid.
My Commission Expires: _____
Notary ID No.: _____
(NOTARIAL SEAL)

LAURA E. BAUGHMAN
Notary Public, State of Florida
My comm. expires July 17, 2006
Comm. No. DD 114250

O:\TRANSFER\TAMPA\0620ORL\SNDA.WPD

5

**EXHIBIT "A"**

LEGAL DESCRIPTION

Lot 2, Block 1, WEBB CITY REPLAT FIRST ADDITION, according to the Plat thereof, as recorded in Plat Book 94, Page 40 of the Public Records of Pinellas County, Florida, together with easement rights created by virtue of declaration recorded in Official Records Book 6316, Page 510 of the Public Records of Pinellas County, Florida.

6