Hearing Date: December 15, 2005

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC. et al. | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**RESPONSE OF WACHOVIA BANK, NATIONAL ASSOCIATION
IN SUPPORT OF DEBTORS' MOTION FOR ORDER GRANTING THIRD
EXTENSION OF EXCLUSIVE PERIODS FOR FILING CHAPTER
11 PLANS AND OBTAINING ACCEPTANCES OF SUCH PLANS**

Wachovia Bank, National Association, in its capacity as agent for itself and certain other post-petition lenders ("Wachovia") of Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), respectfully submits this response in support of the Debtors' motion for entry of an order pursuant to 11 U.S.C. § 1121(d) granting an extension of their exclusive periods for proposing and obtaining acceptances of one or more plans of reorganization (the "Motion"). (All terms not defined herein shall have the meaning set forth in the Motion.)

1.  Wachovia supports the Debtors' Motion to extend the "Exclusive Proposal Period," during which the Debtors have the exclusive right to propose a reorganization plan, for approximately ninety (90) days to and including March 20, 2006, and the "Exclusive Solicitation Period," during which the Debtors have the exclusive right to solicit acceptances of such plan, to and including May 22, 2006 because such an extension

-2-

is necessary to afford the Debtors a full and fair opportunity to rehabilitate their businesses and negotiate and solicit approval of their plans, and is consistent with the exercise of the business judgment of the Debtors.

2.  Since the Petition Date, the Debtors have been actively engaged in moving toward reorganization of these large, complex cases. The Motion should be granted, particularly here, where there has been no allegation of bad faith or wrongdoing. Indeed, the limited objections to the Motion each recognize that an extension is warranted.

3.  It cannot be disputed -- and indeed, neither the Creditors' Committee nor the Equity Committee has disputed -- that the Debtors have made significant progress toward reorganization. They have, among other things:

- implemented Operational Initiatives
- closed or sold hundreds of stores and conducted liquidations as part of the Footprint Process
- implemented an $800 million debtor-in-possession financing facility with Wachovia
- resolved a substantial number and amount of the reclamation and PACA claims
- implemented a KERP
- formulated a Business Plan.

This is not a case where the Debtors abdicated their duties for months on end only to suddenly appear at the eleventh-hour for an extension of time to finally carry out statutory duties.

4.      There is simply no reason to interfere now with the Debtors' progress toward reorganization.  The artificial deadline of thirty days proposed by the Creditors' Committee, as opposed to the ninety days sought by the Debtors, is not equitable, practical or realistic.  The Debtors' business judgment that ninety additional days are required to formulate a workable reorganization plan should be afforded proper deference.  An extension of only thirty days makes no sense in light of the size and complexity of the Debtors' businesses, the financial structure of the businesses and the numerous constituencies in these cases.  Thirty days is particularly inadequate given the approaching holiday season, during which Christmas, New Year's, Chanukah and Kwanzaa fall.  (While we have no doubt that the Committee's counsel will work tirelessly throughout the holiday season, it should be noted that the holiday season is a busy time of year for businesses such as the Debtors' as well as for their suppliers, employees, and others, and the practical reality is that plan negotiations will take more than thirty days.)

5.      It has long been held that a debtor's business judgment should be afforded deference.  See, e.g., In re Prime Motor Inns, 124 B.R. 378, 382 (Bankr. S.D. Fla. 1991) (debtors are afforded latitude to exercise business judgment).  The Debtors are in the best position to determine how much time will be needed to formulate a plan of reorganization that both is workable and can be confirmed.  To prematurely cut short the time the Debtors believe is needed to negotiate and prepare a plan will only result in the premature submission of a rushed or non-consensual plan or -- even worse for the Debtors, their thousands of employees and creditors -- competing plans by nondebtor parties, which would create diversion and havoc.  In the likely event that the Debtors are unable to

complete a reorganization plan within the thirty days now proposed by the Creditors' Committee, all that will occur is another round of motion practice regarding exclusivity, which will serve only to add to the expense of administering the case and to divert the Debtors and their management from more pressing needs.

6.      Moreover, the Debtors have shown that cause exists to grant the requested extension of ninety days.   First, as discussed above, the Debtors have made good faith progress toward proposing a plan.  Indeed, the Creditors' Committee admits as much at page 2 of its limited objection.  The substantial progress made thus far by the Debtors is even more significant in view of the operational challenges placed upon the Debtors by Hurricanes Katrina and Wilma.  In light of the flexibility provided to Debtors under 11 U.S.C. § 1121(d) (see, e.g., First American Bank of New York v. Southwest Gloves and Safety Equipment, Inc., 64 B.R. 963, 965 (D. Del 1986)), the Debtors' good faith progress alone provides a sufficient basis to grant the Motion.  Indeed, neither of the limited objections even suggests that the Debtors have not been acting in good faith. This militates in favor of the Debtors being permitted to continue to exercise their business judgment, including estimating how long they will need to draft their reorganization plan.

7.      The Debtors' judgment that they will require more than the "few days" suggested by the Creditors' Committee at page 3 of its limited objection is supported by the fact that the Business Plan submitted by the Debtors to the committees during the week of November 7, 2005 is far from final; in fact, the Debtors have been working since then to discuss issues and answer questions raised by the committees.  The Debtors are also currently collecting information about the effectiveness of the Operational Initiatives that

have been implemented to date. Such information will permit the Debtors to arrive at a more streamlined final Business Plan. In addition to the issues covered by the Business Plan, much work remains to be done with respect to the administration of the case, including, among other things, reconciliation and objection to claims work, and analysis and subsequent assumption or rejection of personal property leases and executory contracts.

   8. Courts have also considered the size and complexity of the case "sufficient cause" to grant an extension under § 1121(d). See, e.g., In re Homestead Partners, Ltd., 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996). The Debtors' cases are both large and complex. The number of Debtors (twenty four) and parties in interest (in the thousands) in these cases supports granting an extension to the Debtors. This is especially true under the reasoning of Homestead, which held that "the presence of complex legal issues [having] occupied much of the debtor's plan-making opportunity" was sufficient cause to grant an extension. 197 B.R. at 720. As acknowledged by the Creditors' Committee at page 2 of its limited objection, the Debtors could not prepare a reorganization plan without first implementing Operational Initiatives to cut costs and improve performance. To this end, the Debtors have undertaken several initiatives, including the sale or closure of 326 stores and liquidations at approximately 245 stores. Among the complexities are the items listed above in paragraph 3. In addition to operational issues and the numerous typical issues that arise in a bankruptcy, the Debtors have also been forced to focus on "various disputes," which, as the Creditors' Committee acknowledges, include the most recent litigation regarding whether there is sufficient equity in the estates to justify the existence

of an equity security holders committee. The Debtors should not be punished for skirmishes; to the contrary, cases such as Homestead hold that disputes that prevent a debtor from focusing on a plan of reorganization are a reason to grant an extension.

9. Yet another reason gives further support to the need for a ninety-day extension. In its limited objection, the Equity Committee states in the very first paragraph: "No request has been made for the appointment of a trustee or examiner." While those words may have been true at the time they were written, the Equity Committee itself moved for appointment of an examiner later that same day-- December 8, 2005. [Compare docket no. 4524 (limited objection) with docket no. 4536 (examiner motion).] We do not know when the examiner will be appointed, who he or she may be, what professionals will be retained by the examiner, how much it will cost, or, more critically, what the role of the examiner will be and how long the investigation will take. We suspect, however, that the appointment of an examiner may at a minimum impact the timing of plan negotiations, which is all the more reason to grant the extension of exclusivity.

10. Finally, the requested extension will not prejudice the legitimate interests of any creditor or other party in interest. Indeed, neither committee even raises a prejudice argument. The creditors and parties in interest will instead benefit from the extension, because it is much more efficient to permit the Debtors to continue making progress uninterrupted by competing plans or more exclusivity litigation.

11.     For the foregoing reasons, Wachovia respectfully requests that the Motion be granted in its entirety.

DATED: December 14, 2005

                           ROGERS TOWERS, P.A.

                           By: /s/ Betsy C. Cox
                               Betsy C. Cox
                           Florida Bar No. 307033
                           1301 Riverplace Blvd., Suite 1500
                           Jacksonville, Florida 32207
                           (904) 398-3911 (telephone)
                           (904) 396-0663 (facsimile)
                           bcox@rtlaw.com (email)

                           - and -

                           OTTERBOURG, STEINDLER,
                             HOUSTON & ROSEN, P.C.
                           Jonathan N. Helfat (JNH 9484)
                           230 Park Avenue, 29th Floor
                           New York, NY 10169
                           (212) 661-9100 (telephone)
                           (212) 682-6104 (facsimile)
                           jhelfat@oshr.com (email)

                           ATTORNEYS FOR WACHOVIA BANK,
                           NATIONAL ASSOCIATION, IN ITS
                           CAPACITY AS AGENT FOR ITSELF AND
                           CERTAIN OTHER POST-PETITION
                           LENDERS