(c) Upon any termination of this Agreement with respect to the Miami Plant pursuant to paragraphs 15.1(a)(ii) through (viii) of this Agreement, each party will retain those rights (if any) it may have under paragraph 16 of this Agreement against any other party for breach by such other party prior to such termination of any of its covenants or other obligations under or relative to this Agreement.

16.0 **Default and Remedies**.

16.1 Buyer's Default. If the Closing as contemplated under this Agreement is not consummated due to Buyer's breach of this Agreement, or if this Agreement is terminated due to Buyer's breach of this Agreement, then Seller shall be entitled, as its sole and exclusive remedy for such breach, (A) to terminate this Agreement, and (B) to receive the Deposit (the "Liquidated Deposit") as liquidated damages for the breach of this Agreement and not as a penalty, it being agreed between the parties hereto that the actual damages to Seller in the event of such a breach are impractical to ascertain and the amount of the Liquidated Deposit is a reasonable estimate thereof. Seller hereby expressly waives and relinquishes any and all other remedies at law or in equity. Seller's right to receive the Liquidated Deposit is intended not as a penalty, but as full-liquidated damages. The right to receive the Liquidated Deposit as full liquidated damages is Seller's only remedy in the event of breach of this Agreement by Buyer, and Seller hereby waives and releases any right to (and Seller hereby covenants that it shall not) sue Buyer: (a) for specific performance of this Agreement, or (b) to recover any damages of any nature or description other than or in excess of the Liquidated Deposit. Buyer hereby waives and releases any right to (and hereby covenants that it shall not) seek or claim a refund of the Liquidated Deposit (or any part thereof) on the grounds that the Liquidated Deposit is unreasonable in amount and exceeds Seller's actual damages or that its retention by Seller constitutes a penalty and not agreed upon and reasonable liquidated damages. This paragraph 16.1 is subject to paragraph 16.4 of this Agreement.

16.2 Seller's Default. If the Closing as contemplated under this Agreement is not consummated due to Seller's breach of this Agreement, or if this Agreement is terminated due to Seller's breach of this Agreement, then Buyer shall be entitled, as its only remedies for such breach, to either (a) receive the return of the Deposit, which return shall operate to terminate this Agreement and release Seller from any and all liability under this Agreement, or (b) seek specific performance of Seller's obligations under this Agreement. Buyer expressly waives any right to seek or collect any damages, including any actual, consequential, speculative, remote or punitive damages with respect to such breach. This paragraph 16.2 is subject to paragraph 16.4 of this Agreement.

16.3 Notice of Default; Opportunity to Cure. Neither Seller nor Buyer shall be deemed to be in default hereunder until and unless such party has been given written notice of its failure to comply with the terms hereof and thereafter does not cure such failure within 5 Business Days after receipt of such notice; provided, however, that this paragraph 16.3 (i) shall not be applicable to Buyer's failure to deliver the Deposit or any portion thereof on the date required under this Agreement or to a party's failure to make any deliveries required of such party on the Escrow Date or the Closing Date and, accordingly, (ii) shall not have the effect of extending the Closing Date or the due date of the Deposit.

16.4 Recoverable Damages. In no event shall the provisions of paragraphs 16.1 and 16.2 of this Agreement limit (i) either Buyer's or Seller's obligation to indemnify the other party, or the damages recoverable by the indemnified party against the indemnifying party due to, a party's express obligation to indemnify the other party in accordance with the Confidentiality Agreement and this Agreement, or (ii) either Buyer's or Seller's obligation to pay costs, fees or expenses under the Confidentiality Agreement and this Agreement, or the damages recoverable by any party against any other party due to a party's failure to pay such costs. In addition, if this Agreement is terminated for any reason, and Buyer or any Affiliate of Buyer asserts any claim or right to any Asset that would otherwise delay or prevent Seller from having clear, indefeasible, and marketable title to any Asset, then Seller shall have all rights and remedies available at law or in equity with respect to such assertion by Buyer and any loss, damage or other consequence suffered by Seller as a result of such assertion.

16.5 Buyer Indemnification of Seller. Buyer shall indemnify and save and hold harmless Seller and its Affiliates and representatives from and against any and all costs, losses, liabilities, damages, lawsuits, deficiencies, claims and expenses (whether or not arising out of third-party claims) including, without limitation, interest, penalties, reasonable attorneys' fees and all amounts paid in investigation, defense or settlement for any of the foregoing (herein, the "Damages") to the extent incurred in connection with or arising out of or resulting from (a) any breach of any covenant or warranty by Buyer (including any payment obligation herein), or the inaccuracy of any representation made by Buyer in or pursuant to this Agreement or other transaction documents, or (b) any liability, obligation or commitment of any nature (absolute, accrued, contingent or otherwise) of Buyer that is due to or arises in connection with Buyer's acts or omissions prior to, on or after the Closing Date related to the Miami Plant, including any claim, liability, or obligation that is assumed by Buyer pursuant to this Agreement or in any transaction documents signed by Buyer. Notwithstanding the foregoing, Buyer shall not be liable for any matter (i) with respect to which Seller has not given Buyer written notice within a reasonable period of time following Seller's receiving written

notice of such matter, specifying the claim and the basis for the claim in reasonable detail (unless the failure to provide such information did not have a material adverse effect on Buyer), or (ii) to the extent that it relates to Seller's acts or omissions. This paragraph 16.5 shall survive the Closing or earlier termination of this Agreement.

17.0 **Miscellaneous.**

17.1 Notices. All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this Agreement will conform to the requirements of this paragraph 17.1 and will be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number or by attachment to an e-mail transmission to the recipient's e-mail address and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next Business Day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if given by e-mail transmission when confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next Business Day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iv) if delivered by United States Mail, three days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (v) if given by nationally recognized or reputable overnight delivery service, on the next Business Day after receipted deposit with same, addressed to Seller or Buyer at their respective addresses stated below:

If to Seller:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn: Chief Financial Officer
Telefax No. 904 783 5646
e-mail: *bennettnussbaum@winn-dixie.com*

With a copy to:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn: Office of General Counsel
Telefax No. 904 783 5651
e-mail: *larryappel@winn-dixie.com*

and

Smith, Gambrell & Russell, LLP
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Attn: Douglas G. Stanford
Telefax No. 904-598-6226
e-mail: *dgstanford@sgrlaw.com*

If to Buyer:

McArthur Dairy, Inc.
c/o Dean Foods Company
2515 McKinney Avenue, Suite 1200
Dallas, Texas 75201
Attn: General Counsel
Telefax No. 214-303-3851
e-mail: *nancy_duessel@deanfoods.com*

With copy to:

Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Attn: Glen J. Hettinger
Telefax No. 214-855-8200
e-mail: *ghettinger@fulbright.com*

or such other address as any party may from time to time specify by notice to the other pursuant to this provision.

17.2 Notice of Certain Inquiries. If any party is contacted, whether before or after the Closing and whether orally or in writing, by the United States Department of Justice or the Federal Trade Commission, or any similar state governmental authority, with respect to any transactions contemplated by this Agreement, such party will (to the extent allowed by law) promptly notify the other party of such contact and describe the facts and circumstances thereof.

17.3 Brokers and Finders. Buyer represents and warrants that, except for Buyer's agreement with Southern Assets Service Corporation, it has no agreement with any broker, finder, investment banker or similar agent with respect to the transactions contemplated by this Agreement. Seller represents and warrants that, except for Seller's agreement with Seller's Broker, it has no agreement with any broker, finder, investment banker or similar agent with respect to the transactions contemplated by this Agreement. Buyer agrees to pay all fees and commissions claimed by

Southern Assets Service Corporation as a result of the transaction contemplated by this Agreement. Seller agrees to pay all fees and commissions claimed by Seller's Broker as a result of the transaction contemplated by this Agreement, which fees and commissions will be considered payable only if, as and when the Closing occurs. Seller and Buyer hereby indemnify and agree to hold harmless each other from and against any claims by any other Person for brokerage fees, commissions or other similar costs related to the purchase of the Assets and this Agreement by reason of Seller's or Buyer's own acts, said indemnifications by Seller and Buyer to survive the Closings or earlier termination of this Agreement.

17.4 Successors and Assigns. This Agreement will be binding upon, and inure to the benefit of, the parties hereto and their respective successors, and permitted assigns.

17.5 Assignment. Except for an assignment to an Affiliate of Buyer, wherein Buyer continues to be liable for the Buyer's obligations, Buyer may not assign or delegate any duties or obligations under this Agreement without the prior written consent of Seller, which consent may be granted or withheld in the sole discretion of Seller. No assignment by Buyer in accordance with this provision shall release or relieve Buyer of its liabilities and obligations hereunder, which shall remain in full force and effect notwithstanding any such assignment.

17.6 Amendments. Except as otherwise provided herein, this Agreement may be amended or modified by, and only by, a written Instruments executed by Seller and Buyer (and delivered physically or by facsimile transmission from any party or its counsel to the other party or its counsel) and subject to Bankruptcy Court Approval, if applicable.

17.7 Governing Law. The application and effect of this Agreement will be governed by and construed in accordance with the laws of the State of Florida; the application and effect of this Agreement as to any matter of the rights and obligations of the parties generally will be governed by and construed in accordance with the laws of the State of Florida.

17.8 Entire Agreement. This Agreement supersedes all prior written and prior or contemporaneous oral agreements and understandings between the parties hereto, other than the Confidentiality Agreement, and (except for the Confidentiality Agreement) constitutes the entire agreement of the parties with respect to the subject matter hereof. **BUYER ACKNOWLEDGES ITS OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT CONTINUE AFTER THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT**.

17.9 Survival. Seller's representations, warranties, covenants and obligations under this Agreement shall not survive the Closing and shall have no further force or effect after the Closing, except that those covenants of Seller under paragraphs 3.5 and 17.3 of this Agreement that are to be performed after the Closing shall survive the Closing. All representations, warranties, covenants of obligations of Buyer under this Agreement shall survive the Closing. In addition, all representations, covenants and obligations of Buyer under the Confidentiality Agreement shall survive the termination or consummation of this Agreement.

17.10 Time is of the Essence. Time is of the essence of this Agreement.

17.11 No Recordation. This Agreement will not be recorded in any public office or court other than as part of the Bankruptcy Court Approval process except that upon default it may be presented to a court of competent jurisdiction.

17.12 Radon Gas. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from any Florida county health department.

18.0 **Escrow Agent**.

18.1 Duties. By signing a copy of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Upon its receipt of funds from Buyer, Escrow Agent will receive and hold such funds, and interest, if any, accrued thereon, in trust to be disposed of in accordance with the provisions of this Agreement.

18.2 Indemnity. Escrow Agent will not be liable to any party except for claims resulting from the negligence or willful misconduct of Escrow Agent. If the escrowed funds or interest, if any, accrued thereon is involved in any controversy or litigation, the parties hereto will jointly and severally indemnify and hold Escrow Agent free and harmless from and against any and all loss, cost, damage, liability or expense, including costs of reasonable attorneys' fees to which Escrow Agent may be put or which may incur by reason of or in connection with such controversy or litigation, except to the extent it is finally determined in a judgment by a court of competent jurisdiction that such controversy or litigation resulted from Escrow Agent's negligence or willful misconduct. If the indemnity amounts payable hereunder result from the fault of Buyer or Seller (or their respective agents), the party at fault will pay, and hold the other party harmless against, such amounts. Otherwise, Buyer and Seller each will be responsible for one-half of such amounts.

18.3 Dispute. If a written objection is filed within the time allowed or if Escrow Agent is in doubt as to its duties, Escrow Agent may continue to hold the escrowed funds and interest, if any, accrued thereon until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court, or Escrow Agent may interplead the same in such court and be relieved of any and all liability therefor. In any action or proceeding regarding the escrowed funds or interest, if any, accrued thereon brought by Escrow Agent or to which Escrow Agent is made a party, the Escrow Agent will be entitled to recover its reasonable costs and attorneys' fees (through appeal) from whichever of Seller or Buyer is not the prevailing party in such action or proceeding. If there is no prevailing party, Seller and Buyer each shall be responsible for one-half of such costs and fees.

18.4 Execution by Escrow Agent. Escrow Agent has executed this Agreement solely for the purpose of acknowledging and agreeing to the provisions of this paragraph 18. Escrow Agent's consent to and execution of any modification or amendment of this Agreement other than this paragraph 18 shall not be required.

18.5 Role as Counsel. The parties acknowledge that Escrow Agent also serves as special real estate counsel to Seller. In the event of a dispute between Seller and Buyer concerning this Agreement or the Assets, Escrow Agent may continue to serve both in its capacity as counsel to Seller and in its capacity as Escrow Agent, it being understood that Escrow Agent's duties and obligations as Escrow Agent are purely ministerial in nature.

19.0 **Waiver of Jury Trial**. Buyer and Seller each acknowledge and agree that the nature of this Agreement makes a jury determination of any dispute arising out of this Agreement or relating to the transactions contemplated herein undesirable. Accordingly, Buyer and Seller each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Agreement or the transactions contemplated herein.

20.0 **Consent to Jurisdiction. THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.**

21.0 Service of Process; Venue; Subject-Matter Jurisdiction. Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in paragraph 17.1 of this Agreement shall be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Seller irrevocably and unconditionally waives

any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum. If a court finds that subject-matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Middle District of Florida, Jacksonville Division, or if such court shall not have jurisdiction, then to the appropriate courts of the State of Florida sitting in Duval County, Florida.

22.0 **Disclaimers and Waivers.**

22.1 **NO RELIANCE ON DOCUMENTS. EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN PARAGRAPHS 5 AND 6 HEREOF (THE "CONTRACT WARRANTIES"), SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE TRUTH, ACCURACY OR COMPLETENESS OF ANY MATERIALS, DATA OR INFORMATION DELIVERED BY OR ON BEHALF OF SELLER TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY. BUYER ACKNOWLEDGES AND AGREES THAT ALL MATERIALS, DATA AND INFORMATION DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY (WHETHER DELIVERED OR MADE AVAILABLE ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE) ARE PROVIDED TO BUYER AS A CONVENIENCE ONLY AND THAT NEITHER SELLER NOR ANY AFFILIATE OF SELLER SHALL BE LIABLE FOR ANY RELIANCE ON OR USE OF SUCH MATERIALS, DATA OR INFORMATION BY BUYER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BUYER ACKNOWLEDGES AND AGREES THAT (A) EXCEPT TO THE EXTENT OF ANY RIGHTS THAT MAY EXIST AGAINST GOLDER ASSOCIATES, INC. ("GOLDER") IN RESPECT OF SUCH FIRM'S PHASE I REPORT DATED SEPTEMBER 14, 2005 (THE "GOLDER REPORT"), ANY TITLE, ENVIRONMENTAL, ENGINEERING, SALES, FINANCIAL OR OTHER REPORT WITH RESPECT TO THE ASSETS WHICH IS DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER SHALL BE FOR GENERAL INFORMATIONAL PURPOSES ONLY, (B) EXCEPT TO THE EXTENT OF ANY RIGHTS THAT MAY EXIST AGAINST GOLDER IN RESPECT OF THE GOLDER REPORT, BUYER SHALL NOT HAVE ANY RIGHT TO RELY ON ANY SUCH REPORT DELIVERED BY SELLER OR ANY AFFILIATE TO BUYER, BUT RATHER WILL RELY ON ITS OWN INSPECTIONS AND INVESTIGATIONS OF THE ASSETS AND ANY REPORTS COMMISSIONED BY BUYER WITH RESPECT THERETO, AND (C)**

**NEITHER SELLER, ANY AFFILIATE OF SELLER NOR (EXCEPT TO THE EXTENT OF ANY RIGHTS THAT MAY EXIST AGAINST GOLDER IN RESPECT OF THE GOLDER REPORT) THE PERSON WHICH PREPARED ANY SUCH REPORT DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER SHALL HAVE ANY LIABILITY TO BUYER FOR ANY INACCURACY IN OR OMISSION FROM ANY SUCH REPORT.**

22.2 **Disclaimers. EXCEPT FOR THE CONTRACT WARRANTIES, BUYER UNDERSTANDS AND AGREES THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESSED OR IMPLIED, WITH RESPECT TO THE ASSETS, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ASSETS WITH LAWS, THE ABSENCE OR PRESENCE OF HAZARDOUS MATERIALS OR OTHER TOXIC SUBSTANCES (INCLUDING WITHOUT LIMITATION MOLD OR ANY MOLD CONDITION), COMPLIANCE WITH ENVIRONMENTAL LAWS, THE TRUTH, ACCURACY OR COMPLETENESS OF ANY DOCUMENTS, MATERIALS, REPORTS OR OTHER INFORMATION PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE TO BUYER, OR ANY OTHER MATTER OR THING REGARDING THE ASSETS. BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE ASSETS "AS IS, WHERE IS, WITH ALL FAULTS". NEITHER SELLER NOR ANY AFFILIATE IS LIABLE FOR OR BOUND BY, ANY EXPRESSED OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE ASSETS OR RELATING THERETO PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER OR ANY AFFILIATE, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE, OTHER THAN THE CONTRACT WARRANTIES.**

**BUYER ACKNOWLEDGES AND AGREES THAT IT WILL NOT RELY UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AGENTS OR EMPLOYEES WITH RESPECT TO THE ASSETS, INCLUDING BUT NOT LIMITED TO THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, THE CONDITION OF THE ASSETS AND THE**

**EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS MATERIALS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE ASSETS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION), OTHER THAN THE CONTRACT WARRANTIES AND, WITH RESPECT TO ANY RIGHTS THAT MAY EXIST AGAINST GOLDER, THE GOLDER REPORT.**

**BUYER FURTHER ACKNOWLEDGES THAT (1) THE CONTRACT WARRANTIES AS TO THE MIAMI PLANT SHALL NOT SURVIVE THE CLOSING FOR THE MIAMI PLANT, AND SHALL HAVE NO FURTHER FORCE OR EFFECT AFTER THE CLOSING FOR THE MIAMI PLANT AND (2) THE LIABILITY OF SELLER UNDER OR WITH RESPECT TO THE CONTRACT WARRANTIES SHALL BE LIMITED TO THE EXPRESS REMEDIES OF BUYER SET FORTH IN THIS AGREEMENT.**

**BUYER REPRESENTS AND WARRANTS THAT THE TERMS OF THE DISCLAIMERS, WAIVERS AND RELEASES CONTAINED HEREIN AND THEIR CONSEQUENCES HAVE BEEN COMPLETELY READ AND UNDERSTOOD BY BUYER, AND BUYER HAS HAD THE OPPORTUNITY TO CONSULT WITH, AND HAS CONSULTED WITH, LEGAL COUNSEL OF BUYER'S CHOICE WITH REGARD TO THE TERMS OF SUCH DISCLAIMERS, WAIVERS AND RELEASES. BUYER ACKNOWLEDGES AND WARRANTS THAT BUYER'S EXECUTION OF THESE DISCLAIMERS, WAIVERS AND RELEASES IS FREE AND VOLUNTARY.**

22.3 Effect and Survival of Disclaimers. Seller and Buyer acknowledge that the provisions of paragraph 22 are an integral part of the transactions contemplated in this Agreement and a material inducement to Seller to enter into this Agreement and that Seller would not enter into this Agreement but for the provisions of paragraph 22. Seller and Buyer agree that the provisions of paragraph 22 shall survive Closing or any termination of this Agreement.

22.4 Obligations Several and Not Joint. All representations, warranties, covenants and agreements of Seller hereunder are several and not joint.

[Signature page follows]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**SELLER:**

**WINN-DIXIE STORES, INC.,** a Florida corporation

By:____________________________________
Name:
Title: Vice President

**WINN-DIXIE LOGISTICS, INC.,** a Florida corporation:

By:____________________________________
Name:
Title: Vice President

**BUYER:**

**MCARTHUR DAIRY, INC.,**
a Florida corporation:

By:____________________________________
Edward F. Fugger,
Authorized Representative

Acknowledged and agreed this ___ day of _______, 2005 for the limited purposes set forth in paragraph 18 of this Agreement:

**ESCROW AGENT:**

Smith, Gambrell & Russell, LLP

By: ______________________________
Name: Douglas G. Stanford
Title: Partner

Acknowledged and agreed this 14th day of December, 2005 for the sole purpose set forth in the final sentence of paragraph 3.1 of this Agreement:

**DEAN FOODS COMPANY,**
a Delaware corporation

By: ______________________________
Name: Edward F. Fugger
Title: Vice President – Corporate Development

Acknowledged and agreed this 14th day of December, 2005 for the sole purpose set forth in the final sentence of paragraph 14.3(i) and (v) of this Agreement:

**DEAN DAIRY HOLDINGS, LLC,**
a Delaware limited liability company

By: ______________________________
Name: Edward F. Fugger
Title: Authorized Signatory

**SUIZA DAIRY GROUP, INC.,**
a Delaware corporation

By: ______________________________
Name: Edward F. Fugger
Title: Authorized Signatory

**Exhibits**

| | |
|---|---|
| Exhibit A-1 | Form of Lease Assignment |
| Exhibit A-2 | Form of Contract Assignment |
| Exhibit A-3 | Form of SNDA Assignment |
| Exhibit B | [Intentionally Omitted] |
| Exhibit C | Allocation Schedule |
| Exhibit D | Assumed Contracts |
| Exhibit E | Form of Bill of Sale |
| Exhibit F-1 | Form of Closing Statement—Winn-Dixie Stores |
| Exhibit F-2 | Form of Closing Statement—W-D Logistics |
| Exhibit G-1 | Excluded Equipment |
| Exhibit G-2 | List of Equipment |
| Exhibit H | Leased Real Estate |
| Exhibit I | Permitted Encumbrances |
| Exhibit J | Form of Sale Order |
| Exhibit K | Form of Declaration |
| Exhibit L | Form of Title Affidavit |

**Miami Dairy Facility Purchase Agreement**

LIST OF EXHIBITS


| | |
|---|---|
| Exhibit A-1 | Form of Lease Assignment |
| Exhibit A-2 | Form of Assignment and Assumption Agreement |
| Exhibit A-3 | Form of SNDA Assignment |
| Exhibit B | [Intentionally Omitted] |
| Exhibit C | Allocation Schedule |
| Exhibit D | Assumed Contracts |
| Exhibit E | Form of Bill of Sale |
| Exhibit F-1 | Closing Statement – Winn-Dixie Stores |
| Exhibit F-2 | Closing Statement – Winn-Dixie Logistics |
| Exhibit G-1 | Excluded Equipment |
| Exhibit G-2 | List of Equipment |
| Exhibit H | Leased Real Estate |
| Exhibit I | Permitted Encumbrances |
| Exhibit J | Form of Sale Order |
| Exhibit K | Declaration |
| Exhibit L | Title Affidavit |

**EXHIBIT A-1**
**to Asset Purchase Agreement**

Form of Lease Assignment

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of this _____ day of ________, 2005 (the "Effective Date"), by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Winn-Dixie Stores"), and **WINN DIXIE LOGISTICS, INC.**, a Florida corporation and wholly owned subsidiary of Winn-Dixie Stores ("W-D Logistics", and, together with Winn-Dixie Stores, "Assignor"), and **DEAN DAIRY HOLDINGS, LLC**, a Delaware limited liability company ("Dean Dairy Holdings"), and **SUIZA DAIRY GROUP, INC.**, a Delaware corporation ("Suiza Dairy Group", and together with Dean Dairy Holdings, "Assignee").

**R E C I T A L S:**

A. Winn-Dixie Stores is the original Lessee and W-D Logistics is the successor Lessee, and current owner and holder, of a leasehold interest in and to the premises described on attached Exhibit A (the "Premises") under that certain Lease Agreement dated as of August 10, 1999, by and between ZSF/WD Opa Locka, LLC, a Delaware limited liability company, as Lessor ("Landlord"), and Winn-Dixie Stores, as Lessee, a memorandum of which is recorded in Official Records Book 18796, Page 547; re-recorded in Official Records Book 18943, Page 1161; and Official Records Book 19015, Page 4148; as affected by Subordination, Non-Disturbance and Attornment Agreement, recorded in Official Records Book 18796, Page 600; re-recorded in Official Records Book 18943, Page 1214; and Official Records Book 19015, Page 4196 (the "SNDA"), and as assigned to W-D Logistics by Assignment of Lease dated ___________ , and evidenced by Notice of Assignment of Lease recorded in Official Records Book____, page _____, all of the public records of Miami-Dade County, Florida (collectively, the "Lease"), a true and complete copy of which is attached hereto as Exhibit B.

B. Assignor and McArthur Dairy, Inc., a Florida corporation and affiliate of Assignee, have entered into a certain Asset Purchase Agreement dated as of _______________, 2005 (the "Purchase Agreement"), providing for the purchase and sale of certain assets of Assignor.

C. Pursuant to the Purchase Agreement, Assignor has agreed to assign to Assignee, and Assignee has agreed to assume from Assignor, all of Assignor's right, title and interest as tenant under the Lease and in the Premises, all subject to and in accordance with the terms of the Lease, the Purchase Agreement and this Assignment.

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1. **RECITALS; DEFINITIONS; EFFECTIVE DATE**. The foregoing Recitals are true and correct and are a material part of this Assignment. Capitalized terms not otherwise defined in this Assignment will have the meanings assigned to such terms in the Lease. This Assignment will be effective as of the Effective Date.

2. **ASSIGNMENT**. Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder, subject only to certain reserved rights and obligations as otherwise set forth in this Assignment.

3. **ASSUMPTION**. Assignee hereby accepts the aforesaid assignment and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that arise under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that arise under the Lease on or after the Effective Date.

4. **ACKNOWLEDGMENT OF LEASE TERMS; RELEASE OF ASSIGNOR**.

   a. Assignee acknowledges the specific terms, covenants and conditions of the Lease, and agrees to be bound thereby to the same extent as if Assignee was an original party tenant to the Lease; provided, however, that the Assignee shall be responsible only for the obligations under the Lease that arise after the date of this Assignment and that this Lease Assignment is subject to the terms of that certain Order Approving Debtors' (A) Sale Of Assets Free And Clear Of Liens, (B) Assumption And Assignment Of Lease And (C) Related Relief, dated ________, 2005, issued by the United States Bankruptcy Court for the Middle District of Florida under case no. 05-03817 (the "Order"), including, without limitation, that Assignor and Winn-Dixie Stores, as predecessor lessee under the Lease, are released and discharged from all obligations and liabilities that may arise or accrue under the Lease from and after the Effective Date. In furtherance of the foregoing, except as otherwise provided herein, from and after the Effective Date, the term "Lessee" as defined in the Lease will mean and refer solely to Assignee.

   b. Assignee acknowledges that the Lease, the leasehold estate, and all rights of Assignee, as Lessee thereunder, are and will be subject and subordinate to the Mortgage and to all renewals, modifications, consolidations, replacements and extensions of the Mortgage. Assignor and Assignee agree to execute an assignment of the SNDA to Assignee.

5. **REPRESENTATION OF ASSIGNOR**. A true and complete copy of the Lease is attached hereto as Exhibit B.

6. **REPRESENTATION OF ASSIGNEE**.

Assignee is not (i) a tax-exempt entity (within the meaning of Section 168(h) of the Code) or (ii) a debtor or debtor-in-possession in a voluntary or involuntary bankruptcy proceeding at the commencement of this Assignment.

7. **NOTICES**. All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (a) as of the date and time the same is personally delivered with a receipted copy; (b) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (c) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same; or (d) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

If to Assignor: Winn-Dixie Logistics, Inc.; Re: Miami Dairy Facility
5050 Edgewood Court
Jacksonville, Florida 32254
Attention: ____________________
Telefax No.: 904 ______________

With a copy to: Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254
Attention: General Counsel
Telefax No.: 904 783 5138

or to such other address or telefax number as Assignor may direct from time to time.

If to Assignee: Dean Dairy Holdings, LLC
Suiza Dairy Group, Inc.
c/o Dean Foods Company
2515 McKinney Avenue, Suite 1200
Dallas, Texas 75201
Attn: General Counsel
Telefax No. 214-303-3851

With a copy to: Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Attn: Glen J. Hettinger
Telefax No. 214-855-8200

or to such other address or telefax number as Assignee may direct from time to time.

8. **NOTICE OF ASSIGNMENT**. On the Effective Date, Assignor and Assignee will execute and deliver a Notice of Assignment of Lease (in a mutually acceptable form) and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease.

9. **FURTHER ASSURANCES**. Assignee and Assignor agree to execute such instruments and other documents and provide such further assurances as Lessor and Indenture Trustee reasonably may request to ensure that this Assignment and Assignee's leasehold interest in the Premises pursuant to this Assignment and the Lease is and remains subject to the Assignment of Lease and the other Debt Documents and is enforceable.

10. **RADON DISCLOSURE**. Assignee acknowledges the following Radon Gas disclosures required by Florida Statute 404.056, Subsection 8:

11. **RADON GAS**: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding Radon and Radon testing may be obtained from county public health units.

[END OF PAGE]

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

**ASSIGNOR:**

Signed, sealed and delivered in the presence of:

_________________________
Name:____________________

_________________________
Name:____________________

**WINN-DIXIE STORES, INC.**, a Florida corporation

By:_____________________________
Name: ___________________________
Title: Vice President

[CORPORATE SEAL]

Signed, sealed and delivered in the presence of:

_________________________
Name:____________________

_________________________
Name:____________________

**WINN-DIXIE LOGISTICS, INC.**, a Florida corporation

By:_____________________________
Name: ___________________________
Title: Vice President

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER FLORIDA REQUIREMENTS]

Signed, sealed and delivered
in the presence of:

______________________________
Name:_________________________

______________________________
Name:_________________________

**ASSIGNEE:**

**SUIZA DAIRY GROUP, INC.**, a Delaware corporation

By:_____________________________
Name: Edward F. Fugger
Title: Authorized Representative

[SEAL]

Signed, sealed and delivered
in the presence of:

______________________________
Name:_________________________

______________________________
Name:_________________________

**DEAN DAIRY HOLDINGS, LLC**, a Delaware limited liability company

By:_____________________________
Name: Edward F. Fugger
Title: Authorized Representative

[SEAL]

[ADD ACKNOWLEDGMENT PER FLORIDA REQUIREMENTS]

Schedule of Exhibits

Exhibit A – Legal Description of Premises
Exhibit B – Lease Agreement

**Exhibit A-2**
**to Asset Purchase Agreement**

**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "Agreement") is made and entered into effective as of _______, 2005 by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Winn-Dixie Stores"), **WINN-DIXIE LOGISTICS, INC.**, ("Logistics", and together with Winn-Dixie Stores, "Assignor"), and **MCARTHUR DAIRY, INC.**, a Florida corporation ("Assignee"). Capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to them in the Purchase Agreement (as defined below).

**WITNESSETH**:

**WHEREAS**, Assignor and Assignee are parties to that certain Asset Purchase Agreement, dated as of _______ 2005, (the "Purchase Agreement"); and

**WHEREAS**, pursuant to and as a condition of the transactions contemplated by the Purchase Agreement, Assignor desires, by this instrument, to assign and transfer all of its rights, title and interest in and to the Assets (other than the Leased Real Estate) to Assignee, pursuant to the Purchase Agreement and Assignee desires to assume the Assumed Liabilities (other than the Lease).

**NOW, THEREFORE**, in consideration of the mutual promises, covenants and conditions set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.1 Assignment of Assets. Subject to the terms of the Purchase Agreement, Assignor hereby sells, assigns, transfers, conveys and delivers to Assignee, its successors and assigns, forever, of all of its rights, title and interest in, to and under all of the Assets (other than the Leased Real Estate, which will be assigned to the Buyer under that certain Assignment and Assumption of Lease, dated _____, 2005), and Assignee hereby accepts the sale, assignment, transfer, conveyance and delivery of such Assets. Notwithstanding anything to the contrary contained herein, the Assets transferred hereby shall not include the Excluded Assets.

1.2 Assumption. Subject to the terms of the Purchase Agreement, Buyer hereby assumes and agrees to pay, perform and discharge as and when they become due, the Assumed Liabilities. Notwithstanding anything to the contrary contained herein, the Assumed Liabilities shall not include the Excluded Liabilities.

1.3 Relationship to the Purchase Agreement. This Agreement is in all respects subject to the Purchase Agreement and is not intended in any way to supersede, limit, qualify, enlarge or modify any provision thereof. To the extent any

conflict or inconsistency exists between the provisions of this Agreement and the Purchase Agreement, the provisions of the Purchase Agreement shall control.

1.4 Benefits and Binding Effect. This Agreement will be binding upon and will inure to the benefit of the parties hereto and their successors and assigns. This Agreement shall not confer any rights or benefits upon any person or entity other than the parties hereto and their respective successors and assigns.

1.5 Enforcement of Certain Rights. Nothing expressed or implied herein is intended, or shall be construed, to confer upon or give any Person other than the parties hereto, and their successors or permitted assigns, any right, remedy, obligation or liability under or by reason of this Agreement, or result in such Person being deemed a third-party beneficiary hereof.

1.6 Amendment. This Agreement shall not be modified or amended except by written instrument executed by each party hereto.

1.7 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida (regardless of the laws that might otherwise govern under applicable principles of conflicts laws thereof), as to all matters, including matters of validity, construction, effect, performance and remedies

1.8 Counterpart Execution. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

ASSIGNOR:

WINN-DIXIE LOGISTICS, INC., a Florida corporation

By: ______________________________
Name:
Title:

WINN-DIXIE STORES, INC., a Florida corporation

By: ______________________________
Name:
Title:

ASSIGNEE:

MCARTHUR DAIRY, INC., a Florida corporation

By: ______________________________
Name:
Title:

**EXHIBIT A-3**
**to Asset Purchase Agreement**

Form of SNDA Assignment

**THIS ASSIGNMENT AND ASSUMPTION OF SNDA** (this "Assignment") is made as of this _____ day of ________, 2005 (the "Effective Date"), by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Winn-Dixie Stores"), and **WINN DIXIE LOGISTICS, INC.**, a Florida corporation and wholly owned subsidiary of Winn-Dixie Stores ("W-D Logistics", and, together with Winn-Dixie Stores, "Assignor"), and **DEAN DAIRY HOLDINGS, LLC**, a Delaware limited liability company ("Dean Dairy Holdings"), and **SUIZA DAIRY GROUP, INC.**, a Delaware corporation ("Suiza Dairy Group", and together with Dean Dairy Holdings, "Assignee").

**R E C I T A L S:**

A. Winn-Dixie Stores is the original Lessee and W-D Logistics is the successor Lessee, and current owner and holder, of a leasehold interest in and to the premises described on attached Exhibit A (the "Premises") under that certain Lease Agreement dated as of August 10, 1999, by and between ZSF/WD Opa Locka, LLC, a Delaware limited liability company, as Lessor ("Landlord"), and Winn-Dixie Stores, as Lessee, a memorandum of which is recorded in Official Records Book 18796, Page 547; re-recorded in Official Records Book 18943, Page 1161 (the "Lease"), a true and complete copy of which is attached hereto as Exhibit B; and Official Records Book 19015, Page 4148; as affected by Subordination, Non-Disturbance and Attornment Agreement, recorded in Official Records Book 18796, Page 600; re-recorded in Official Records Book 18943, Page 1214; and Official Records Book 19015, Page 4196 (the "SNDA"), a true and complete copy of which is attached hereto as Exhibit C, and as assigned to W-D Logistics by Assignment of Lease dated ____________ , and evidenced by Notice of Assignment of Lease recorded in Official Records Book____, page _____, all of the public records of Miami-Dade County, Florida.

B. Assignor and McArthur Dairy, Inc., a Florida corporation and affiliate of Assignee, have entered into a certain Asset Purchase Agreement dated as of _______________, 2005 (the "Purchase Agreement"), providing for the purchase and sale of certain assets of Assignor.

C. Pursuant to the Purchase Agreement, Assignor has agreed to assign to Assignee, and Assignee has agreed to assume from Assignor, all of Assignor's right, title and interest as tenant under the SNDA, all subject to and in accordance with the terms of the SNDA, the Purchase Agreement and this Assignment.

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1. **RECITALS; DEFINITIONS; EFFECTIVE DATE**. The foregoing Recitals are true and correct and are a material part of this Assignment. Capitalized terms not otherwise defined in this Assignment will have the meanings assigned to such terms in the SNDA. This Assignment will be effective as of the Effective Date.

2. **ASSIGNMENT**. Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the SNDA and all of the rights, benefits and privileges of the tenant or lessee thereunder, subject only to certain reserved rights and obligations as otherwise set forth in this Assignment.

3. **ASSUMPTION**. Assignee hereby accepts the aforesaid assignment and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that arise under the SNDA from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that arise under the SNDA on or after the Effective Date.

4. **ACKNOWLEDGMENT OF SNDA TERMS; RELEASE OF ASSIGNOR**.

   Assignee acknowledges the specific terms, covenants and conditions of the SNDA, and agrees to be bound thereby to the same extent as if Assignee was an original party tenant to the SNDA; provided, however, that the Assignee shall be responsible only for the obligations under the SNDA that, by the terms of the SNDA, arise after the date of this Assignment and that this Assignment is subject to the terms of that certain Order Approving Debtors' (A) Sale Of Assets Free And Clear Of Liens, (B) Assumption And Assignment Of Lease And (C) Related Relief, dated ________, 2005, issued by the United States Bankruptcy Court for the Middle District of Florida under case no. 05-03817 (the "Order"), including, without limitation, that Assignor and Winn-Dixie Stores, Inc., as predecessor lessee under the SNDA, are released and discharged from all obligations and liabilities that may arise or accrue under the SNDA from and after the Effective Date. In furtherance of the foregoing, except as otherwise provided herein, from and after the Effective Date, the term "Lessee" as defined in the SNDA will mean and refer solely to Assignee.

5. **REPRESENTATION OF ASSIGNOR**. A true and complete copy of the Lease and the SNDA are attached hereto as Exhibit B and Exhibit C, respectively.

6. **REPRESENTATION OF ASSIGNEE**.

Assignee is not (i) a tax-exempt entity (within the meaning of Section 168(h) of the Code) or (ii) a debtor or debtor-in-possession in a voluntary or involuntary bankruptcy proceeding at the commencement of this Assignment.

7. **NOTICES**. All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (a) as of the date and time the same is personally delivered with a receipted copy; (b) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (c) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same; or (d) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

If to Assignor: Winn-Dixie Logistics, Inc.; Re: Miami Dairy Facility
5050 Edgewood Court
Jacksonville, Florida 32254
Attention: ____________________
Telefax No.: 904 ______________

With a copy to: Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254
Attention: General Counsel
Telefax No.: 904 783 5138

or to such other address or telefax number as Assignor may direct from time to time.

If to Assignee: Suiza Dairy Group, Inc.
Dean Dairy Holdings, LLC
c/o Dean Foods Company
2515 McKinney Avenue, Suite 1200
Dallas, Texas 75201
Attn: General Counsel
Telefax No.: 214-303-3851

With a copy to: Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Attn: Glen J. Hettinger

Telefax No. 214-855-8200

or to such other address or telefax number as Assignee may direct from time to time.

8. **NOTICE OF ASSIGNMENT**. On the Effective Date, Assignor and Assignee will execute and deliver a Notice of Assignment of SNDA (in a mutually acceptable form) and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the SNDA.

9. **FURTHER ASSURANCES**. Assignee and Assignor agree to execute such instruments and other documents and provide such further assurances as Lessor and Indenture Trustee reasonably may request to ensure that this Assignment and Assignee's leasehold interest in the Premises pursuant to the Lease is and remains subject to the Assignment of Lease and the other Debt Documents and is enforceable.

10. **RADON DISCLOSURE**. Assignee acknowledges the following Radon Gas disclosures required by Florida Statute 404.056, Subsection 8:

11. **RADON GAS**: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding Radon and Radon testing may be obtained from county public health units.

[END OF PAGE]

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

**ASSIGNOR:**

Signed, sealed and delivered in the presence of:

______________________________
Name:_________________________

______________________________
Name:_________________________

**WINN-DIXIE STORES, INC.**, a Florida corporation

By:_______________________________
Name: ____________________________
Title: Vice President

[CORPORATE SEAL]

Signed, sealed and delivered in the presence of:

______________________________
Name:_________________________

______________________________
Name:_________________________

**WINN-DIXIE LOGISTICS, INC.**, a Florida corporation

By:_______________________________
Name: ____________________________
Title: Vice President

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER FLORIDA REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

______________________________
Name:_________________________

______________________________
Name:_________________________

**ASSIGNEE:**

**SUIZA DAIRY GROUP, INC.**, a Delaware corporation

By:_______________________________
Name: Edward F. Fugger
Title: Authorized Representative

[SEAL]

Signed, sealed and delivered
in the presence of:

______________________________
Name:_________________________

______________________________
Name:_________________________

**DEAN DAIRY HOLDINGS, LLC**, a Delaware limited liability company

By:_______________________________
Name: Edward F. Fugger
Title: Authorized Representative

[SEAL]

[ADD ACKNOWLEDGMENT PER FLORIDA REQUIREMENTS]

Schedule of Exhibits

Exhibit A – Premises
Exhibit B – Lease Agreement
Exhibit C – Subordination, Non-Disturbance and Attornment Agreement

**Exhibit B**
**to Asset Purchase Agreement**

[Intentionally Omitted]

**Exhibit C**
**to Asset Purchase Agreement**

Allocation Schedule

Winn-Dixie Stores, Inc. $__________________

Winn-Dixie Logistics, Inc. $______________

[ALLOCATION AMOUNTS TO BE UPDATED DUE TO INCREASE IN PURCHASE PRICE]