# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| In re: ) | CASE NO. 3-05-bk-03817-JAF |
| ) | |
| WINN-DIXIE STORES, INC., et al., ) | CHAPTER 11 |
| ) | |
| Debtors. ) | Jointly Administered |

**ORDER PURSUANT TO SECTIONS 328 AND 1103(a) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 APPROVING
THE *NUNC PRO TUNC* EMPLOYMENT AND RETENTION
OF JEFFERIES & COMPANY, INC. AS FINANCIAL ADVISOR
TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

Upon the Application (the "Application") of the official committee of equity security holders (the "Equity Committee") appointed in the above-captioned bankruptcy cases of Winn-Dixie Stores, Inc. and its affiliated debtors in possession (each, a "Debtor" and collectively, the "Debtors") for an Order pursuant to sections 328 and 1103(a) of Title 11 of the United States Code (the "Bankruptcy Code") approving the employment of Jefferies & Company, Inc. ("Jefferies") as the Equity Committee's financial advisor; and upon the Affidavit of William Q. Derrough in support of the Application; and notice having been given to the Office of the United States Trustee for the Middle District of Florida (the "U.S. Trustee" or the "United States Trustee"), the Debtors, the entities appearing on the consolidated list of creditors holding the twenty largest unsecured claims against the Debtors and all parties that have appeared and requested service of papers in these cases and, therefore, it appearing that good and sufficient notice having been given; and this Court finding, further, that Jefferies does not hold or represent any interest adverse to the Debtors or their estates in the matters on which it is to be retained, that Jefferies is a "disinterested" person as that term is defined in section 101(14) of the Bankruptcy Code, that the terms and conditions of Jefferies' employment as set forth in the

Application and the Letter Agreement attached hereto as Exhibit A (the "Letter Agreement") are reasonable including, without limitation, the Fee Structure and Indemnity (in each case as defined in the Application and modified herein) and that its employment as a financial advisor to the Equity Committee and the terms thereof are in the best interests of the Equity Committee and the Debtors' estates, and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED, that pursuant sections 328 and 1103(a) of the Bankruptcy Code, the Application is hereby granted and the Equity Committee is authorized to retain and employ Jefferies as its financial advisor *nunc pro tunc* to September 1, 2005, on the terms and conditions set forth in the Letter Agreement; and it is hereby further

ORDERED that, to the extent not previously withdrawn, any and all objections to the Application are overruled in their entirety; and it is hereby further

ORDERED that the terms and conditions of Jefferies' retention, including, without limitation, the Fee Structure and the Indemnity are approved as set forth herein pursuant to section 328(a) of the Bankruptcy Code, subject only to the following decretal paragraphs; and it is hereby further

ORDERED that, Jefferies shall be compensated and reimbursed in accordance with the terms of the Letter Agreement, pursuant to the standard of review under section 328(a) of the Bankruptcy Code (except as set forth in the next decretal paragraph and the second to last decretal paragraph), subject to the approval of this Court and the procedures set forth in the Administrative Order (the "Interim Compensation Order") Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Committee Members (the "Compensation Procedures"), the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure,

the Local Rules of the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), and the further orders of this Court; and it is further

ORDERED that notwithstanding anything else herein or in the Letter Agreement to the contrary, all compensation and reimbursement of expenses to be paid to Jefferies shall be subject to prior approval of this Court pursuant to the terms of the Interim Compensation Order and in accordance with the standards and requirements of Section 328(a) of the Bankruptcy Code; provided however that the United States Trustee and the Fee Examiner appointed in these cases shall have and retain the right to review and object to Jefferies' interim and final fee applications (including expense reimbursement) according to the standards provided in section 330 of the Bankruptcy Code; provided further however, that while Jefferies' professionals shall not be required to keep detailed time records in one-tenth of hour increments, Jefferies' professionals shall keep daily time records describing generally the services rendered, the name of the individuals rendering such services and the time such individuals expended each day in rendering such services in half-hour increments; and it is further

ORDERED that subject to the next two decretal paragraphs, the Debtors and their estates are authorized and directed to indemnify and hold harmless Jefferies and the other Indemnified Persons (as defined in the Letter Agreement) pursuant to the indemnification provisions of the Letter Agreement and this Order; and it is further

ORDERED that all requests of Jefferies for payment of indemnity pursuant to the Letter Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Letter Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no

event shall Jefferies be indemnified in the case of its own willful misconduct, gross negligence, bad faith or self-dealing; and it is further

ORDERED that in no event shall Jefferies be indemnified if a Debtor or a representative of the estate asserts a claim for, and a court determines by final order that such claim arose out of, Jefferies' own willful misconduct, gross negligence, bad faith or self-dealing; and it is further

ORDERED that in the event Jefferies seeks reimbursement for attorneys' fees from the Debtors pursuant to the Letter Agreement, the invoices and supporting time records from such attorneys shall be included in Jefferies' own applications (both interim and final), and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Court without regard to whether such attorney has been retained under any provision of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED, that Jefferies shall be entitled to a monthly cash fee as set forth in Paragraph 4(a) of the Letter Agreement, a Success Fee as set forth in Paragraph 4(b) of the Letter Agreement, subject to the next decretal paragraph, and all other compensation as set forth the Letter Agreement and herein; and it is hereby further

ORDERED notwithstanding anything herein to the contrary, consideration of the form of payment of any Success Fee is hereby adjourned until the first omnibus hearing date noticed by the Equity Committee that follows final resolution of currently pending issues surrounding the formation of the Equity Committee ("Final Resolution"), it being understood

that (1) for the purposes of this Order, Final Resolution means (i) the entry of an order of this Court granting or denying the motion of the Official Committee of Unsecured Creditors to disband the Equity Committee, (ii) the formal dissolution of the Equity Committee, and, if one is filed, the entry of an order of this Court granting or denying any motion challenging such dissolution, or (iii) the withdrawal or indefinite adjournment of consideration of either such motion, and (2) nothing herein shall affect the Equity Committee's right to move the Court for consideration of this issue at an earlier date, or of the Debtors or the Official Committee of Unsecured Creditors (the "Creditors Committee") to object to such motion; and it is further

ORDERED that, to the extent that this Order is inconsistent with any prior order, pleading, or Letter Agreement with respect to Jefferies, the terms of this Order shall govern; and it is further

ORDERED that following Final Resolution of issues surrounding the formation of the Equity Committee, the Equity Committee shall serve upon all creditors of the Debtors a notice in a form approved by the United States Trustee that provides thirty (30) days from service of such notice in which any objections to the standard of review for fees and expenses sought by Jefferies in these cases must be filed with the Court and served upon Jefferies (the "Notice Deadline"); provided, however, that parties in interest who previously received notice of the Application (the "Previously Noticed Creditors") shall not be entitled to file and serve objections or to have their objections heard; provided further that the Court shall consider any objections (other than objections filed by Previously Noticed Creditors, which shall be denied) at the next omnibus hearing following the expiration of the Notice Deadline; and provided further that the Equity Committee shall have the right to move this Court for an order approving service

{00044811.DOC;1}

of such notice prior to Final Resolution as set forth above, and the Debtors and the Creditors Committee shall have the right to object to such motion; and it is further

ORDERED that Jefferies is authorized to provide services to the Equity Committee as set forth in the Application and the Letter Agreement.

Dated: Jacksonville, Florida December 29, 2005

_____
Jerry A. Funk
UNITED STATES BANKRUPTCY JUDGE

Copies to:

**David S. Jennis**, Local Counsel for Equity Committee, 400 N. Ashley Drive, Suite 2540, Tampa FL 33602

**United States Trustee**, Elena L. Escamilla, and Kenneth C. Meeker, 135 W. Central Blvd., Suite 620, Orlando, FL. 32806

**James D. Wareham and Carolyn (Keri) Chayavadhanangkur**, Counsel for the Equity Committee, Paul, Hastings, Janofsky & Walker, LLP, 875 15th Street, N.W., Washington, D.C. 20005,

**Stephen D. Busey**, Counsel for Debtors, Smith, Hulsey, & Busey, 225 Water Street, Suite 1800, Jacksonville, FL. 32202

**Adam Ravin**, of Skadden, Arps, Slate, Meagher & Flom, LLP, Four Time Square, New York, NY. 10036

**Dennis F. Dunne**, of Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, NY. 10005,

**John B. Macdonald**, of Akermann Senterfitt, 50 North Laura Street, Suite 2500, Jacksonville, FL. 32202

{00044811.DOC;1}

# Exhibit A

<u>Strictly Confidential</u>

**Engagement Letter**

September 15, 2005

**Official Committee of Equity Security Holders
of Winn-Dixie Stores, Inc. et al**
1017 Topsail Drive
Vallejo, CA 94591

Attention: Kenneth M. Thomas, Chairman

Re: <u>Advisory Services</u>

   This agreement (the "<u>Agreement</u>") will confirm the arrangements under which Jefferies & Company, Inc. ("<u>Jefferies</u>") has been engaged by the Official Committee of Equity Security Holders (the "<u>Committee</u>"), appointed in the bankruptcy cases (the "<u>Cases</u>") of Winn-Dixie Stores, Inc., and its debtor affiliates (collectively, the "<u>Debtors</u>"), which are now pending in the United States Bankruptcy Court for the Middle District of Florida, to act as exclusive financial advisor to the Committee in the Cases.

1.  <u>Services</u>. In connection with the Cases, Jefferies will perform the following financial advisory services, among others, for the Committee: (a) become familiar, to the extent Jefferies deems appropriate, with and analyze the business, operations, assets, financial condition and prospects of the Debtors; (b) advise the Committee on the current state of the "restructuring market"; (c) assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, a sale of assets or equity under Section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "<u>Restructuring</u>"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring; (d) assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization; and (e) render such other financial advisory services as may from time to time be agreed upon by the Committee and Jefferies, including but not limited to providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation. It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2.  <u>Cooperation</u>.

  (a)  The Committee will furnish or cause the Debtors to furnish Jefferies with all materials and information regarding the business and financial condition of the Debtors which the Committee and/or the Debtors believe are relevant to any Restructuring or which Jefferies requests (all such information gathered or furnished being the "<u>Information</u>"). The Committee shall advise, and shall request the Debtor's advise, Jefferies promptly of the occurrence of any event or any other change in fact or

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 2

circumstance prior to the closing of any Restructuring upon which Jefferies formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

(b) Jefferies (i) will be relying on the Information and on information available from generally recognized public sources, without having independently verified the accuracy or completeness of the same, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) will not make an appraisal of any assets or liabilities of the Debtors, and (iv) retains the right to perform due diligence during the course of this engagement.

3. <u>Use of Advice, etc.</u>

(a) Jefferies' advice is solely for the use and information of the Committee, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person including, but not limited to, any member of the Committee in its individual capacity, any other security holder, or employee or creditor of the Debtors and may not be used or relied upon for any other purpose.

(b) The Committee agrees that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its sole discretion and which approval, if given, will expire immediately upon the termination of Jefferies' service hereunder. No statements made or advice rendered by Jefferies in connection with the services performed by Jefferies pursuant to this Agreement will be quoted by, nor will any such statements or advice be referred to in, any communication, whether written or oral, prepared, issued or transmitted, directly or indirectly, by the Committee without the prior written authorization of Jefferies, which may be given or withheld in its sole discretion, except to the extent required by law (in which case the appropriate party shall so advise Jefferies in writing prior to such use and shall consult with Jefferies with respect to the form and timing of disclosure).

(c) The Committee acknowledges that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Committee is solely contractual in nature and that Jefferies does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise. Jefferies and the Indemnified Persons shall not be deemed agents or fiduciaries of the Committee, any of its members, or the Debtors, and will not have the authority to legally bind any of the foregoing.

Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al
September 15, 2005
Page 3

4. <u>Compensation</u>. The Committee shall obtain an order of the Bankruptcy Court obligating the Debtors to pay Jefferies the following:

(a) Subject to approval by the Bankruptcy Court, the Debtors shall pay to Jefferies a monthly fee (the "<u>Monthly Fee</u>") equal to $125,000.00 per month until Jefferies has been paid $375,000 in such Monthly Fees, and $100,000.00 per month thereafter. If this Agreement becomes effective on a day other than the first day of the month, Jefferies will be paid a Monthly Fee pro rated from the Effective Date (as defined below) of this Agreement to the end of the first month. Each Monthly Fee will be fully accrued, due and payable in advance on the first day of each month.

(b) In addition, in consideration of the services rendered by Jefferies hereunder, upon approval of the Bankruptcy Court the Debtors will pay or cause to be paid to Jefferies (contingent on a minimum recovery to Equity (as defined below) of $50,000,000.00) a success fee in an amount equal to (i) 1.00% of any recoveries by the holders of the Debtors' equity securities (the "<u>Equity</u>") in an aggregate amount up to and including $150,000,000.00; (ii) 1.25% of any recoveries by Equity in any aggregate amount between $150,000,00.01 up to and including $300,000,000.00; and (iii) 1.50% of any recoveries by Equity in an aggregate amount in excess of $300,000,000.00 (the "<u>Success Fee</u>"). For the purposes of this Section 4(b), "recoveries" includes but is not limited to the fair market value of any cash, cash equivalents, securities, trust, sale or litigation interests, or other consideration, whether immediately realized or not. A credit equal to 50% of all Monthly Fees paid to Jefferies in excess of $375,000 will be applicable against the Success Fee (if any). Fees payable pursuant to this Section 4(b) are fully earned and accrued upon approval of this Agreement by the Bankruptcy Court in accordance with Paragraph 8 below, and are due and payable simultaneously with receipt of recoveries (or interests therein) by Equity.

(c) The Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.

5. <u>Expenses</u>. In addition to any fees that may be paid to Jefferies hereunder, whether or not any Restructuring occurs, subject to approval by the Bankruptcy Court the Debtors shall reimburse Jefferies for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

6. <u>Termination</u>. Jefferies' engagement hereunder will run from the effective date of this Agreement as approved by a final order of the Bankruptcy Court that is acceptable to

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 4

Jefferies in its sole and absolute discretion (the "Effective Date") to the earlier of the date on which (A) each of these Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and has become effective, or (B) Jefferies' services hereunder are terminated by written notice by either Jefferies or the Committee on fifteen days' notice to the other. Upon any termination of this Agreement, and upon order of the Bankruptcy Court the Debtors shall pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. Upon termination of this Agreement for any reason, Schedule A to this Agreement, including the indemnity and contribution provisions therein, and the provisions of Sections 3-7, 10, and 13-16 of this Agreement shall remain operative and in full force and effect, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Debtors, the Committee, Jefferies, and the Indemnified Persons, and any chapter 7 Trustee appointed in the Cases.

7.    Indemnification, etc. As further consideration under this Agreement, the Debtors shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A. The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.

8.    Bankruptcy Court Approval. The Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 328 and 1103(a) of the Bankruptcy Code, from the bankruptcy court or district court having jurisdiction and presiding over the Cases (the "Bankruptcy Court"). Such approval shall provide for retention of Jefferies *nunc pro tunc* to September 1, 2005, shall incorporate all of the terms and conditions herein (explicitly including but not limited to the Debtors' obligations related hereto), shall bind the Debtors to such terms and conditions as if the Debtors were a signatory hereto, and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the Committee's obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless a final order, no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which is acceptable to Jefferies in its sole and absolute discretion, is entered by the Bankruptcy Court.

Notwithstanding the Debtors' obligations hereunder to pay the fees and expenses of Jefferies, to indemnify Jefferies and to provide Jefferies with information, it is understood and agreed that Jefferies' sole and exclusive client is the Committee and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al
September 15, 2005
Page 5

9.  **Exclusivity.** The Committee agrees that it will not engage any other person to perform any financial or similar consulting services with respect to any potential Restructuring. If the Committee is contacted by any person concerning a potential Restructuring, the Committee will inform Jefferies of such inquiry, and all relevant details thereof.

10. **No Assurances; Other Transactions; Disclaimer.**

    (a)  This Agreement does not constitute a commitment or obligation by Jefferies or any of its affiliates to provide any financing which may be required or advisable in connection with any Restructuring, and the Debtors are not obligated by the terms hereof to seek such financing from Jefferies or any of its affiliates. By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors will be able to implement or consummate any Restructuring or achieve any other result.

    (b)  Jefferies Group, Inc. (the parent of Jefferies) and its subsidiaries, and affiliates (collectively, the "Jefferies Group") are involved in a wide range of investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research) from which conflicting interests, or duties, may arise. Information that is held elsewhere within Jefferies or within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement. Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Committee or any other party or utilize for the Committee's benefit any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Debtors and members of the Committee, and of potential participants in any Restructuring for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities; provided, however, that persons within the Jefferies Group making such trades shall not have access to non-public information concerning the Debtor. Further, the Committee acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Restructuring or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

11. **Construction and Governing Law.** This Agreement, together with Schedule A attached hereto and made part hereof, incorporates the entire understanding of the parties

**Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al**
September 15, 2005
Page 6

and supersedes all previous agreements relating to the subject matter hereof should they exist. This Agreement and any issue arising out of or relating to the parties' relationship hereunder shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

12. <u>Arbitration</u>. Any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity hereof, any alleged breach of this Agreement or the engagement contemplated hereby (any of the foregoing, a "<u>Claim</u>") shall be brought in the Bankruptcy Court. If the Bankruptcy Court declines jurisdiction over any such matter, the parties agree that any Claim shall be submitted to JAMS/ENDISPUTE, or its successor, in New York, New York, for mediation; and if the matter is not resolved through mediation, then it shall be submitted for final and binding arbitration in front of a panel of three arbitrators with JAMS/ENDISPUTE in New York, New York under the JAMS/ENDISPUTE Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the plaintiff choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Committee agrees and consents to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

13. <u>Payments</u>. All payments to be made to Jefferies hereunder shall be, unless otherwise agreed by Jefferies in its sole and absolute discretion, made in cash by wire transfer of immediately available U.S. funds without deduction for any tax, provided, that the Committee may opt to pay Jefferies the Success Fee in kind; provided, that Jefferies agrees that it will accept the Success Fee paid in kind (i.e., with the same securities as received by members of the Committee in connection with the Restructuring) at the suggestion of the Committee, subject to the approval of the Bankruptcy Court. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. Subject to Bankruptcy Court approval, the Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

14. <u>Announcements</u>. The Committee agrees that Jefferies may, following any Restructuring, place an announcement in such newspapers, electronic media and periodicals as it may choose, stating Jefferies' role and other material terms of the Restructuring, and identify the Committee in connection therewith. The Committee agrees that any press release it may issue announcing the Restructuring will, at Jefferies' request, contain a reference to Jefferies' role in the Restructuring.

Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al
September 15, 2005
Page 7

15. **Miscellaneous**. This Agreement incorporates the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. If any provision hereof shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect nor any other provision hereof. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in one or more facsimile counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.

16. **Patriot Act**. Jefferies hereby notifies the Debtors, the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Act (the "Patriot Act"), Jefferies may be required to obtain, verify and record information that identifies the Debtors, the Committee and the members of the Committee in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

Official Committee of Equity Security Holders of Winn Dixie Stores, Inc. et al
September 15, 2005
Page 8

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein.

                Sincerely,

                **JEFFERIES & COMPANY, INC.**

                By _____
                     Name: William Q. Derrough
                     Title: Managing Director

Accepted and Agreed:

**OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF WINN-DIXIE STORES, INC. ET AL**

By _____
    Name: Kenneth M. Thomas
    Title: Chairman

## SCHEDULE A

Reference is hereby made to the engagement letter attached hereto (as amended from time to time in accordance with the terms thereof, the "Agreement") between Jefferies & Company, Inc. ("Jefferies") and the Official Committee of Equity Security Holders (the "Committee") appointed in the bankruptcy cases (the "Cases") of Winn-Dixie Stores, Inc., and its debtor affiliates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the Middle District of Florida. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates and any chapter 7 trustee appointed in the Debtors' bankruptcy Cases.

As further consideration under the Agreement, the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, counsel, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against, and the Debtors agree that no Indemnified Persons shall have any liability to the Debtors or any of its owners, parents, affiliates, securityholders or creditors for, any claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred ("Losses"), related to or arising out of or in connection with Jefferies' services under the Agreement, a Restructuring or any proposed transaction contemplated by the Agreement, or any Indemnified Person's role in connection therewith, provided, however, that the Debtors shall not be responsible for any Losses of any Indemnified Person that are determined, by a final, non-appealable judgment by a court, or arbitral tribunal, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct.

Neither the Debtors not the Committee shall settle or compromise, or consent to the entry of any judgment in, or otherwise seek to terminate any pending or threatened action, claim, suit or proceeding in which any Indemnified Person is or may be a party unless such Indemnified Person has given its prior written consent, or the settlement, compromise, consent or termination includes an express unconditional release of such Indemnified Person from all Losses arising out of such action, claim, suit or proceeding.

If for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is unavailable to an Indemnified Person or insufficient to hold an Indemnified Person harmless, then the Debtors, to the fullest extent permitted by law, shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses in such proportion as is appropriate to reflect the relative fault of the Debtors and the Committee, as applicable, on the one hand, and the relative fault of Jefferies on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors and the Committee, as applicable, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as the total transaction value of any Restructuring (or the total transaction value of any proposed Restructuring) to all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel) as they are incurred in connection with investigating, preparing, defending or settling any action or claim for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party. If any of Jefferies' personnel appear as witnesses, are deposed or are otherwise involved in the defense of any action against Jefferies, the Committee, the Debtors or the Debtors' affiliates, officers, managers, directors or employees, the Debtors will pay Jefferies (i) with respect to each day or part thereof that one of Jefferies' professional personnel appears as a witness or is deposed and/or (ii) with respect to each day or part thereof that one of Jefferies' professional personnel is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such action, including but not limited to $400 per hour per person with respect to each hour of time spent responding to or relating to any other or further discovery requests.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or Jefferies' services thereunder, (iii) shall apply to any modification of

## SCHEDULE A

Jefferies' engagement, and shall remain in full force and effect following the completion or termination of the Agreement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors, including any chapter 7 trustee appointed in the Debtors' Cases, the Committee and each of its members, and to any successors or assigns to the Debtors' business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.

**BAE SYSTEMS**
**Enterprise Systems Incorporated**
11487 Sunset Hills Road
Reston, Virginia 20190-5234

# CERTIFICATE OF SERVICE

```
District/off: 113A-3       User: cartes             Page 1 of 1              Date Rcvd: Dec 28, 2005
Case: 05-03817             Form ID: pdfdoc          Total Served: 2

The following entities were served by first class mail on Dec 30, 2005.
aty         +David S Jennis,   Jennis & Bowen PL,   400 N Ashley Drive, Suite 2540,   Tampa, FL 33602-4317
            +James D. Wareham and Carolyn Chayavadhanangkur,   Paul, Hastings, Janofsky & Walker, LLP,
              875 15th Street, N.W.,   Washington, DC 20005-2221
The following entities were served by electronic transmission.
NONE.                                                                                          TOTAL: 0
             ***** BYPASSED RECIPIENTS *****
NONE.                                                                                          TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.**

**First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Dec 30, 2005**                    Signature: _Joseph Speetjens_