UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

**DEBTORS' RESPONSE TO MOTION OF THE EQUITY
COMMITTEE FOR THE APPOINTMENT OF AN EXAMINER**

Winn-Dixie Stores, Inc. ("Winn-Dixie") and its subsidiaries and affiliates in the above captioned cases, as debtors and debtors-in-possession (collectively, the "Debtors"), respond as follows (the "Response") to the Motion of the Official Committee of Equity Security Holders for Order Appointing an Examiner Pursuant to Section 1104 of the Bankruptcy Code dated December 8, 2005 (Docket Nos. 4536, 4537) (the "Examiner Motion"):

**Background**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

"Creditors Committee") to serve in these cases. Subsequently, on August 17, 2005, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee").

3. On September 2, 2005, the Creditors Committee filed under seal a motion seeking the disbandment of the Equity Committee (the "Disbandment Motion"; Docket No. 3363). The Disbandment Motion was opposed by the Debtors, the U.S. Trustee, and the Equity Committee in pleadings filed under seal with the Court.[2] An evidentiary hearing to consider the Disbandment Motion was scheduled for November 16, 2005.

4. On November 2, 2005, the Creditors Committee filed a motion for an order abating proceedings relating to the Disbandment Motion and to adjourn the hearing scheduled for November 16, 2005 (the "Abatement Motion"; Docket No. 4013). In bringing the Abatement Motion, the Creditors Committee explained that the U.S. Trustee had requested that the Creditors Committee abate all proceedings related to the Disbandment Motion so that the U.S. Trustee could request additional information from the Debtors and review whether the Equity Committee should be disbanded. An order granting the Abatement Motion was entered on November 4, 2005 (Docket No. 4049).

5. On October 27, 2005, Winn-Dixie filed with the Securities and Exchange Commission (the "SEC") a proxy statement pursuant to section 14(a) of the Securities Exchange Act of 1934 (the "Proxy Statement") providing notice that the annual meeting of Winn-Dixie shareholders would take place on December 8, 2005 (the "Annual Meeting") and recommending that shareholders vote to (a) reelect directors John E. Anderson, Julia B. North, and Carlton T.

---

[2] See United States Trustee's Objection to Motion of Official Committee of Unsecured Creditors for Entry of Order, Under 11 U.S.C. §§ 105 and 1102, Disbanding Official Committee of Unsecured Creditors (Sept. 28, 2005) (filed under seal at Docket No. 3710); Motion of the Official Committee of Equity Security Holders for Summary Judgment (Sept. 28, 2005) (filed under seal at Docket No. 3707); Memorandum of Law of the Official Committee of Equity Security Holders in Support of Summary Judgment (Sept. 28, 2005) (filed under seal at Docket No. 3708); Debtors' Motion for Summary Judgment Denying Creditors Committee Motion to Disband Equity Committee (Sept. 29, 2005) (filed under seal at Docket No. 3711); United States Trustee's Second Objection to Motion of Official Committee of Unsecured Creditors for Entry of Order, Under 11 U.S.C. §§ 105 and 1102, Disbanding Official Committee of Unsecured Creditors (Nov. 1, 2005) (filed under seal at Docket No. 4000).

Rider for terms expiring in 2008 and (b) ratify the appointment of KPMG, LLP ("KPMG") as the Debtors' independent registered public accounting firm for the fiscal year 2006.  Although some chapter 11 debtors suspend annual shareholder meetings during the pendency of their chapter 11 cases, the Debtors intended to hold the Annual Meeting for the benefit of Winn-Dixie's shareholders.

6. In early November 2005, counsel to the Equity Committee sent counsel to the Debtors a letter asking (i) the Debtors disclose any investigations regarding claims the Debtors might have against the Class III Directors and KPMG and (ii) that Winn-Dixie's Board of Directors form an independent committee to investigate the potential for such claims (the "November 2 Letter").[3]  The November 2 Letter further indicated that the Equity Committee's inquiries arose "[i]n light of the United States Trustee's recent statements regarding the need to conduct further due diligence of the Debtors and her possible reconsideration of the appointment of the Equity Committee …."

7. Following the November 2 Letter, the Equity Committee's Counsel and the Debtors' Counsel engaged in discussions to resolve the issues raised by the Equity Committee. During those discussions, the Debtors' Counsel told the Equity Committee's Counsel that the Debtors were aware of no facts that suggested that the Debtors' financial downturn was the result of any actionable conduct by the Debtors' prepetition directors, officers, senior management, or professionals.  The Debtors' Counsel also said that, while the Debtors had not yet conducted any investigation into potential causes of action that might be brought on behalf of the Debtors against prepetition directors, officers, senior management, or professionals, the Debtors intended to conduct such an investigation in connection with determining the

---

[3] Letter from Karol K. Denniston, Esq. to D. J. Baker, Esq. (Nov. 2, 2005).  A copy of the November 2 Letter is attached as Exhibit C to the Examiner Motion.

appropriateness of granting releases to those parties as part of a plan of reorganization. In an effort to resolve the issues raised by the Equity Committee, the Debtors agreed to postpone the Annual Meeting and proposed to retain an independent person to proceed with an investigation, following the framework of § 607.07401(3), Florida Statutes.

8.   On December 8, 2005, the Equity Committee abruptly terminated its discussions with the Debtors, and filed the Examiner Motion seeking the appointment of an examiner to investigate whether Winn-Dixie may assert claims against its pre-petition directors, officers, senior management, and professionals for actions or inaction that contributed to the filing of these chapter 11 cases, and ten other related matters identified in the motion (the "Investigation Topics").

## Analysis

9.   In the Examiner Motion, the Equity Committee has raised questions about the Debtors' prepetition management in order to justify the Equity Committee's continued existence. Although the Examiner Motion is over 25 pages in length and its allegations cover a wide variety of the Debtors' business activities, it alleges no facts—nor are the Debtors aware of any—that suggest any actionable conduct by the Debtors' prepetition directors, officers, senior managers, or professionals. The arguments advanced in the Examiner Motion are no more than unsubstantiated speculation flowing from the Debtors' public filings.

10.   The Examiner Motion also raises questions regarding deficiencies in the documents Winn-Dixie filed with the SEC. The Debtors Proxy Statement and related public filings are in full compliance with applicable state and federal law. Although alleging that there are deficiencies, the Examiner Motion actually recounts *disclosures* contained in those filings for the purpose of suggesting improper conduct by the Debtors' prepetition directors, officers, senior managers, and professionals. In fact, all of Winn-Dixie's Form 10-Qs and Form 10-Ks during

4

the period addressed by the Examiner Motion make full and complete disclosure of the Debtors' declining performance. The innuendo and questions raised by the motion are merely red herrings raised by a committee whose need to exist is the subject of current inquiry and imminent decision by the United States Trustee.

11. In sum, the Equity Committee's arguments do not establish the *need* for an examiner in these cases.

12. Notwithstanding the foregoing, because the Debtors' liquidated unsecured debts exceed $5 million, §1104(c)(2) of the Bankruptcy Code *requires* the Court to grant the Equity Committee's request for an examiner. Accordingly, the Debtors do not object to the appointment of an examiner, but suggest the parameters described below.

A. Legal Analysis

13. The appointment of an examiner is governed by §1104(c), which provides:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if –
>
> > (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate;  or
> >
> > (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

14.     Consistent with the language of §1104(c)(2), prevailing case law establishes that where, as here, the debtor's liquidated unsecured debts exceed $5,000,000, the Court is without discretion to deny a request for an examiner by a party in interest.[4]

15.     Even though the appointment of an examiner therefore is mandatory in these circumstances, case law shows that the Court has wide latitude in fashioning the *scope* of the examiner's investigation. Section 1104(c) explicitly provides that "the court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate* ….(emphasis added)"  As one court said, "[t]here would be substantial potential for abuse and waste of estate assets if … any party in interest in a case exceeding the debt threshold could obtain appointment of an examiner to investigate whatever matters that party specified."[5] Accordingly, it is uniformly acknowledged that the "court retains broad discretion to direct the examiner's investigation, *including its nature, extent, and duration* (emphasis added)."[6]  Indeed, it is the "court's *duty* to fashion the role of an examiner to avoid substantial interference with the ongoing bankruptcy proceedings.  To that end, the Bankruptcy Court may exercise its discretion to limit the scope of the examiner's investigation *and the compensation and expenses available to the examiner*."[7]

16.     Given the dictates of section 1104(c), the Debtors do not object to the appointment of an examiner.  Furthermore, the Debtors have no objection to the Investigation Topics proposed in the Examiner Motion.  Nevertheless, it is of paramount importance to the

---

[4]     See In re Revco D.S., Inc., 898 F.2d 498, 500-501 (6th Cir. 1990); In re Loral Space & Communications, Ltd., 2004 WL 2979785 (S.D.N.Y. Dec. 23, 2004); In re Schepps Food Stores, Inc., 148 B.R. 27, 29-30 (S.D. Tex. 1992); In re UAL Corp., 307 B.R. 80, 84-86 (Bankr. N.D. Ill. 2004); In re The Bible Speaks, 74 B.R. 511, 514 (Bankr. D. Mass. 1987).

[5]     In re UAL Corp., 307 B.R. at 86.

[6]     In re Revco D.S., Inc., 898 F.2d at 501.  See also In re Parmalat USA Corp., 04-11139 (RDD), Hr'g Tr. at 98-100 (Bankr. S.D.N.Y. May 19, 2004) (the relevant pages of which are attached as Exhibit **[A]** to this Response).

[7]     In re Loral Space & Communications, Ltd., 2004 WL 2979785, at *5 (emphasis added).

Debtors that the examiner's investigation not delay the Debtors' efforts in timely emerging from chapter 11.  The court has entered an order extending to March 20, 2006, and May 22, 2006, respectively, the Debtors' exclusive periods to propose and solicit votes on a plan of reorganization.[8]  In obtaining that relief the Debtors stated their intent to confirm their plan of reorganization by June of 2006.  The examiner's investigation should not delay the Debtors' proposed timetable.[9]  Accordingly, the Debtors propose that the examiner be required to complete his or her investigation and file a report by March 20, 2006, the date by which the Debtors' exclusive right to file a plan of reorganization presently ends.

17.    The Debtors also request the Court to establish, in advance, reasonable limitations on the compensation and expenses available to the examiner.  There is ample authority that the Court has discretion to limit compensation and expenses available to an examiner appointed under § 1104(c):

> The Bankruptcy Court accurately stated that it is "well established that the bankruptcy court has considerable discretion in designing an examiner's role." *In re Loral,* 313 B.R. at 585 (citations omitted).  Indeed, it is that court's duty to fashion the role of an examiner to avoid substantial interference with the ongoing bankruptcy proceedings.  To that end, the Bankruptcy Court may exercise its discretion to limit the scope of the examiner's investigation *and the compensation and expenses available to the examiner.  See* In re Revco, 898 F.2d at 501 (noting that "the bankruptcy court retains broad discretion to direct the examiner's investigation, including its nature, extent and duration");
>
> *In re Loral Space & Communications, Ltd.*,
> 2004 WL 2979785, at *5 (S.D.N.Y, Dec. 23, 2004).

---

[8]    See Order Granting Third Extension of Exclusive Periods for Filing Chapter 11 Plans and Obtaining Acceptances to Such Plans (Dec. 19, 2005) (Docket No. 4683).

[9]    See In re Loral Space & Communications, Ltd., 2004 WL 2979785, at *5 (noting that it is the "court's duty to fashion the role of an examiner to avoid substantial interference with the ongoing bankruptcy proceedings").

According to *Collier on Bankruptcy*:

> [a] court might grant the request of an examiner but so limit the role assigned to the examiner that substantial interference will be prevented. Section 1104(c) states that the "court shall order the appointment of an examiner to *conduct such an investigation of the debtor as is appropriate*." The limitations and proscriptions regarding the scope of the investigation are subject only to the sound discretion of the bankruptcy judge. In addition (or as an alternative), *the court can limit in advance the compensation to be awarded to the examiner and limit the expense as well.*
>
> 7 *Collier*, para. 1104.03[2][b] at 1104-39 (emphasis added).

18.     As an example of a Bankruptcy Court providing parameters in the time (two months) and fees and expenses ($200,000) available to an examiner, in its order appointing an examiner, attached as Exhibit A is an order entered earlier this year by the United States Bankruptcy Court in the District of Vermont, in the case of *Fibermark, Inc.*, et al., Case No. 04-10463.

19.     The Debtors suggest that the time and expense limitations provided by the Court be subject to expansion upon the examiner requesting more time, or expense, for cause shown.

20.     The Debtors further request that, consistent with section 1104(d) of the Bankruptcy Code, the U.S. Trustee be directed to consult with the following parties in selecting the examiner to serve in these cases: (a) the Debtors, (b) the Debtors' post petition secured lenders and (c) all official committees. See 11 U.S.C. § 1104(d) (providing that the U.S. Trustee must consult with parties in interest before appointing a disinterested person to serve as examiner).

WHEREFORE, based upon the foregoing, the Debtors do not object to an order directing the appointment of an examiner, but request the provision of the parameters indicated in this Response.

Dated:  January 5, 2006.

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By   *s/ D. J. Baker*  <br>     D. J. Baker <br>     Sally McDonald Henry <br>     Rosalie Walker Gray <br>     David M. Turetsky <br> Four Times Square <br> New York, New York 10036 <br> (212) 735-3000 <br> (212) 735-2000 (facsimile) | By   *s/ Cynthia C. Jackson* <br>     Stephen D. Busey <br>     James H. Post <br>     Cynthia C. Jackson, <br>     Florida Bar Number 498882 <br> 225 Water Street, Suite 1800 <br> Jacksonville, Florida  32202 <br> (904) 359-7700 <br> (904) 359-7708 (facsimile) |
| Co-Attorneys for Debtors <br> 00517744.5 | Co-Attorneys for Debtors |

**<u>Exhibit A</u>**

*Formatted for Electronic Distribution*                                        *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

In re:
FIBERMARK, INC.,
FIBERMARK NORTH AMERICA, INC., and
FIBERMARK INTERNATIONAL HOLDINGS, INC.,
Debtors.

Chapter 11 Case
# 04-10463
Jointly Administered

## ORDER
### DIRECTING THE APPOINTMENT OF AN EXAMINER AND SPECIFYING EXAMINER'S DUTIES PURSUANT TO § 1104(c) and § 1106(b) OF THE BANKRUPTCY CODE

UPON the hearing scheduled by the Court's Order to Show Cause Why an Examiner Should not be Appointed dated March 30, 2005 and the Court's Case Management Order dated April 13, 2005 (doc. # 1402) and heard April 19, 2005, and further

UPON the appearances of Kevin Purcell, Esq. and Kim F. Lefebvre, Esq., for the United States Trustee, and all other appearances as stated on the record of the hearing held April 19, 2005, and further

UPON the Parties' consent, and further

UPON consideration of the entire record before the Court, and after oral argument, THE COURT FINDS that it is in the best interest of the estate for the Court to appoint an examiner.

The Court FURTHER FINDS that pursuant to 11 U.S.C. § 1106(a)(4), as incorporated by reference in 11 U.S.C. § 1106(b), is appropriate under 11 U.S.C. § 1104(c), and

**THEREFORE, IT IS HEREBY ORDERED,**

1. The United States Trustee's Office is directed to appoint an independent examiner to conduct an investigation into the following matters:

   a. the transfer of the Debtors' executives' claims, including but not limited to, the claims of Alex Kwader, and other persons who were employees of the Debtors at the time of the transfer of their claim(s), to Silver Point Capital, L.P. ("Silver Point"), the nature and extent of the disclosure of those transfers and whether breach(es) of fiduciary duties to the estate resulted;

   b. the transfer of the claim of former committee member Solutions Dispersions, Inc. to Silver Point;

   c. the quality of the "screening wall" Silver Point, and the other members of the Creditors' Committee, established in accordance with this Court's Order Approving Specified Information Blocking Procedures and Permitting Trading in Securities of the Debtors Upon Establishment of a Screening Wall (doc. # 684) (the "Trading Order"), whether it was breached, and whether the Trading Order was violated;

    d. the dispute among Committee members regarding corporate governance issues and whether any Committee member breached its fiduciary duty to act in the best interest of all creditors; and

    e. any other matter the Examiner deems necessary and relevant to the complete and full investigation of the four enumerated areas included herein.

2. In order to meet his or her responsibilities, the Examiner has the authority to retain counsel, to issue subpoenas, and to require document production and conduct examinations under FED. R. BANKR. P. 2004, provided the Examiner exercises this authority in a manner which is consistent with the Examiner's obligation to complete the investigation in a prompt and cost-effective fashion.

3. The Official Committee of Unsecured Creditors and its members, Alex Kwader and other individuals who were employed by the Debtors when his or her individual claims were transferred to Silver Point, representatives of Solutions Dispersions, Inc. and all other parties in interest who have information that the Examiner deems relevant to this investigation shall cooperate fully with the Examiner.

4. The Examiner shall commence his or her investigation immediately upon the Court's approval of the United States Trustee's appointment of the Examiner.

5. The Examiner shall be compensated at ordinary hourly rates, with compensation to be paid in accordance with 11 U.S.C. § 330(a)(1), the Federal Rules of Bankruptcy Procedure, the District of Vermont Local Rules and the United States Trustee Fee Guidelines.

6. The compensation of the Examiner, including the compensation of his or her professionals' and the expenses of both, are limited and shall not exceed $200,000. Application and allowance of said fees will be paid under 11 U.S.C. § 330 as set forth in ¶ 5, supra. This limitation may be modified upon motion of the Examiner and for good cause shown. No compensation shall be paid to the Examiner or the Examiner's professionals without prior approval of the Court.

7. In the event that the Examiner finds that a Committee member or any other party has violated the Trading Order, has breached fiduciary duties, or has acted to intentionally thwart the plan confirmation process in these cases, the Examiner shall include in the report recommendations regarding (a) how the culpable conduct should affect the allocation of the cost of the Examiner; (b) whether such conduct warrants the imposition of sanctions against any such party, including without limitation, the avoidance of claims transfers or subordination of claims; and (c) any such other recommendations the Examiner has based upon the totality of his or her findings.

8. As set forth in its Exclusivity Order of even date, no proposed plans or disclosure statements may be filed by any party during the Examiner's forty-five (45) day investigation period, except that the Debtors may file a consensual plan during this time (with consensual defined to include the unanimous consent of all members of the Official Committee of Unsecured Creditors).

9. The Examiner shall file his or her report with the Court by **4:00 P.M. on June 8, 2005.**

2

10. The Court will hold a § 105(d) status conference on the status of the case and the Examiner's report and recommendations on <u>June 15, 2005 at 11:00 a.m.</u> at the Federal Building, 11 Elmwood Avenue, Burlington, Vermont.

**SO ORDERED.**

April 19, 2005
Burlington, Vermont

_____
Colleen A. Brown
United States Bankruptcy Judge

3