Hearing Date:  January 12, 2006, 1:00 p.m.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | )   Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | )   *Chapter 11* |
| | ) |
| Debtors. [1] | )   Jointly Administered |
| | ) |

### DEBTORS' OBJECTION TO NATIONAL IN STORE MARKETING, LLC'S MOTION TO ALLOW CLAIM AS AMENDED CLAIM OR TO ALLOW LATE FILED CLAIM

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), object to National In Store Marketing LLC's Motion to Allow Claim as Amended Claim or to Allow Late Filed Claim (Docket No. 4316) (the "Motion").  In support of this objection, the Debtors respectfully represent as follows:

### Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors' cases are being jointly administered for procedural purposes only.

2.      On April 7, 2005, the Debtors filed their schedules of assets and liabilities (the "Schedules").  Debtor Winn-Dixie Procurement, Inc. scheduled an unsecured claim of $135,721.00 due to National In Store Marketing ("NISM").

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

3.      By Order dated April 28, 2005 (the "Claims Bar Date Order"), this Court set August 1, 2005 as the last date for all parties who have or assert (or believe they may have or assert) prepetition claims against one or more of the Debtors to file and serve a written proof of claim with respect to any such claim (the "August 1 Bar Date").

4.      Consistent with the Claims Bar Date Order, the Debtors provided a notice by mail of the August 1 Bar Date (the "Bar Date Notice") to all scheduled creditors, including NISM, along with a tailored proof of claim form that provided scheduled claim information to each creditor.

5.      NISM does not dispute timely receipt of the Bar Date Notice and scheduled claim information.  In fact, NISM states that the information was forwarded to NISM's counsel in June 2005, well in advance of the August 1 Bar Date.

6.      NISM learned that it had not filed a proof of claim within approximately one week after the August 1 Bar Date.  Nevertheless, NISM waited until November 3, 2005, over three months later, to place on file a proof of claim in the amount of $557,243.01 (the "NISM Late Claim").[2]

## Argument

7.      By its Motion, NISM seeks an order allowing the NISM Late Claim as an amended claim, or in the alternative, allowing the NISM Late Claim as timely filed.  NISM's request to allow the NISM Late Claim as an amended claim should be denied because NISM cannot amend its scheduled claim.  Even if a proof of claim may amend a scheduled claim, the

---

[2]      NISM also filed a second claim in the same amount with the Court.  NISM acknowledges in its Motion that the second claim is a duplicate claim.  The Debtors reserve all rights to object to the allowance of the NISM Late Claim, as well as any other claims filed by NISM, on any grounds, procedural or otherwise.

NISM Late Claim should not be allowed because it constitutes a new claim, rather than an

amended claim.  Likewise, NISM's alternative request to allow the NISM Late Claim as timely

filed should also be denied because NISM has failed to demonstrate excusable neglect justifying

the allowance of its claim as timely.

I.    **NISM'S REQUEST TO ALLOW ITS LATE FILED PROOF OF CLAIM AS AN AMENDED CLAIM SHOULD BE DENIED.**

**The NISM Late Claim Cannot Amend NISM's Scheduled Liability.**

8.    NISM contends that its late filed proof of claim should be allowed as an amended

claim pursuant to Bankruptcy Code section 1111(a), which provides that "a proof of claim or

interest is deemed filed under section 501 of this title for any claim or interest that appears in the

schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is

scheduled as disputed, contingent or unliquidated."

9.    Because NISM did not file any proof of claim before it filed the NISM Late

Claim, the NISM Late Claim cannot constitute an amended claim.  "In order to constitute an

amendment, an informal proof of claim must have already been filed with the court."  In re

Analytical Systems, Inc., 113 B.R. 91, 95 (N.D. Ga. 1990), rev'd on other grounds, 933 F.2d 939

(11th Cir. 1991).  The District Court for the Northern District of Georgia rejected the proposition

that a creditor can amend a scheduled liability by filing a proof of claim after the bar date, stating

that "[t]hough a literal reading of § 1111 and Bankruptcy Rule 3003 may lead to this conclusion,

upholding [the creditor's] claim on this ground would set a bad precedent.  Any scheduled

creditor could then plead equity to the bankruptcy court to allow a greater claim than that which

is scheduled.  The finality of setting a bar date in this situation would be undermined."  If the

NISM Late Claim is allowed to stand as an amendment to NISM's scheduled liability, such

allowance may trigger similar "amended" claims from other creditors in this case, thus eroding

the "finality" of the bar date.  Id.

10.     As provided by the Claims Bar Date Order and as set forth in the Bar Date Notice,

it was necessary for a claimant to file a proof of claim if, inter alia, its liability was listed in the

Schedules as disputed, contingent or unliquidated, or if the claimant disputed the amount, nature

and priority of the liability set forth in the Schedules.  Paragraph 4 of the Bar Date Notice

provided that, "You MUST file a proof of claim if you have a claim that arose on or prior to the

filing of the chapter 11 petitions on February 21, 2005, and it is not one of the types of claims

described in section 5 below. "  Paragraph 5 of the Bar Date Notice advised creditors, in

pertinent part, that the filing of a proof of claim was unnecessary only if:

> B. Your claim is listed on the Debtors' Schedules (as
> defined below) and you do not dispute the amount or nature
> of your claim as set forth in the Debtors' Schedules or that
> the claim is an obligation of the specific Debtor against
> which the claim is listed in the Debtors' Schedules;

11.     "It is the creditor's responsibility to verify the accuracy of this claim as listed on

the debtor's schedules, Advisory Committee Note to Bankruptcy Rule 3003, and a creditor

whose claim is not scheduled, scheduled improperly or scheduled as disputed, contingent or

unliquidated must file a proof of claim with the bankruptcy court within the time fixed by that

court." In re Analytical Systems, Inc., 933 F.2d 939, 941-942 (11th Cir. 1991) (emphasis added).

NISM was provided with a tailored proof of claim form with its scheduled liability information,

along with the Bar Date Notice that clearly stated that creditors were required to file a proof of

claim if they disputed the amount of their scheduled liability as set forth in the Schedules or the

Debtor against whom the liability was scheduled.  NISM's Motion should be denied since NISM

was required by the terms of the Bar Date Notice to file a timely proof of claim if it disputed the

amount of its liability as scheduled by the Debtors.  Because NISM did not file any proof of claim prior to the NISM Late Claim, the NISM Late Claim cannot constitute an amended claim.

**Even if a Proof of Claim Can Amend a Scheduled Liability, the NISM
Late Claim Should Not Be Allowed Because it Constitutes a New Claim.**

12.     Even if a proof of claim may amend a scheduled liability, the NISM Late Claim should not be allowed as an amended claim because it is a new claim, rather than an amendment. As this Court has noted, "the Eleventh Circuit has mandated that courts carefully scrutinize post-bar date amendments to ensure that the amendment is genuine rather than an assertion of an entirely new claim." In re Marineland Ocean Resorts, Inc., 242 B.R. 748, 753 (Bankr. M.D. Fla. 1999).  "To be within the scope of a permissible amendment, the amended claim should not only be of the same nature as the original, but also reasonably within the amount to which the original claim provided notice." Id. at 754 (emphasis added).

13.     The NISM Late Claim differs in several material respects from its scheduled liability and is therefore a new claim, rather than an amendment to its scheduled liability.  First, the NISM Late Claim was filed against Winn-Dixie Stores, Inc., while NISM's scheduled liability was listed under the Schedules filed byWinn-Dixie Procurement, Inc.  Secondly, the NISM Late Claim includes invoices for transactions separate and distinct from the transaction upon which NISM's scheduled liability was based.  See Wayne H. Coloney Co. Inc. v. United States of America, 89 B.R. 924 (Bankr. N.D. Fla. 1988) (stating that if consideration was separate and obligations were not interrelated, the contracts were "separate and distinct").  Finally, the NISM Late Claim is over four times the amount of the claim scheduled by the Debtors and therefore is not reasonably within the range of the amount of the scheduled claim.  Thus, the NISM Late Claim falls outside the scope of what is generally considered to be a permissible amendment and therefore constitutes a new claim.

II.    **NISM'S REQUEST TO ALLOW ITS LATE FILED CLAIM AS TIMELY
       SHOULD BE DENIED.**

14.    NISM's alternative request for relief to deem the NISM Late Claim as filed timely

should also be denied because NISM has not demonstrated excusable neglect justifying its three

month delay in filing the claim, contrary to the terms of the Bar Date Order.  Bankruptcy courts

have the discretion to allow a late filed claim if the creditor demonstrates that its failure to file a

timely proof of claim was the result of excusable neglect.  See Pioneer Investment Services Co.

v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 388 (1993).  As this Court has stated,

"[t]he determination is an equitable one, taking into account all relevant circumstances, including

(i) the danger of prejudice to the debtor, (ii) the length of the delay and its potential impact on

the judicial proceedings, (iii) the reason for the delay, including whether it was in the reasonable

control of the movant, and (iv) whether the movant acted in good faith."  In re Harrell, 325 B.R.

643, 649 (Bankr. M.D. Fla. 2005) (listing factors from Pioneer that courts may consider in

determining whether excusable neglect exists).

15.    "The relative weight to be accorded to the factors identified in Pioneer requires

recognizing that not all factors need to favor the moving party.  As one bankruptcy court

concluded, '[n]o single circumstance controls, nor is a court to simply proceed down a checklist

ticking off traits.  Instead courts are to look for a synergy of several factors that conspire to push

the analysis one way or the other.'"  In re Enron Corp., 2003 WL 1889042 * 4 (Bankr. S.D.N.Y.

April 8, 2003) (quoting In re 50-Off Stores, Inc., 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998)).

16.    A review of the Pioneer factors reveals that NISM has not met its burden of

demonstrating excusable neglect that would warrant allowing the NISM Late Claim to be

deemed timely filed.  First, the reason for the delay appears to have been entirely within NISM's

control.  NISM admits that it received the Bar Date Notice well in advance of the August 1 Bar

Date and does not raise any concerns in the Motion regarding its ability to understand the Bar

Date Notice.  See In re Enron at *4 (stating that sufficiency of bar date notice is part of

consideration of the reason for delay factor).

17.     However, NISM contends that it did not timely file the NISM Late Claim because

it mailed the Bar Date Notice to its outside law firm in June 2005, and the law firm apparently

never received the Bar Date Notice (Motion, para. 6-7).   Failure to appropriately distribute a

notice does not support a finding of excusable neglect.  See In re Harrell, 325 B.R. at 649 (noting

that "failure to appropriately internally distribute notices is not a circumstance beyond [a

creditor's] reasonable control").  Further, NISM does not adequately explain in the Motion the

particulars of how the Bar Date Notice was transmitted to the law firm and why NISM did not

follow up with the law firm regarding the necessity to file a proof of claim by the August 1 Bar

Date.  Instead, it appears from the Motion that NISM chose to remain ignorant regarding the

status of its proof of claim, and apparently had no contact with the law firm until a week after the

August 1 Bar Date, when its representative "was having a conversation with one of the attorneys

[at the law firm], at which time NISM first learned that the law firm had never received the Bar

Date Notice" (Motion, para. 7).  Thus, the failure to timely file the NISM Late Claim was clearly

within NISM's control.

18.     The prejudice to the Debtors would be substantial if the NISM Late Claim were

allowed as timely filed in the absence of excusable neglect.  Such allowance might (and very

possibly will) trigger similar motions by other claimants.[3]  Motions to allow substantially late

claims, like the NISM Late Claim, will cause prejudice to the Debtors' reorganization process

despite the fact that the Debtors have not yet proposed a plan of reorganization.  See In re Enron,

2003 WL 1889042 at * 5 (finding that "any deluge of motions seeking similar relief would prejudice the Debtors' reorganization process" and that "[t]he Court would reach the same conclusion even if the Court considered the fact that [the] claim is relatively small and that the Debtors have not filed and/or confirmed a plan of reorganization").

19.    The length of the delay by NISM in filing its claim has an impact on this case which weighs in favor of denying the Motion.  The Debtors began the process of reconciling claims shortly after the August 1 Bar Date.  The claims have been distributed to various teams within the Debtors' organization, each of whom is responsible for reconciling different categories of claims.  As of this date, the reconciliation process is well on its way to being completed.  The Debtors are now formulating a reorganization plan strategy, which is based in part upon their estimate of claims that will be allowed.  The allowance of additional claims at this time would therefore be prejudicial to the Debtors.

20.    NISM's three month delay in filing its proof of claim does not demonstrate the good faith required to demonstrate excusable neglect.   See In re Harrell, 325 B.R. at 650 (finding that a 90 day delay in filing claim once creditor became aware of bankruptcy case did not demonstrate good faith).  Here, NISM was aware that no proof of claim was filed since approximately one week after the August 1 Bar Date (Motion, para. 7).  Instead of immediately filing its claim, which NISM could have done without the agreement of the Debtors, NISM inexplicably waited three more months to file its claim.  Contrary to NISM's allegations, the Debtors are aware of no "settlement discussions" regarding the Debtors' ability to consent to a late filed claim.  Whether or not NISM requested the Debtors' consent to allow the NISM Late

---

[3] In fact, several motions to allow late filed claims have already been filed in this case.  Many of such motions relate to claims filed only a few days late and were filed shortly after the August 1 Bar Date.  NISM's Motion, however, seeks to allow a claim filed three months after the Bar Date.

Claim, it has given no credible explanation for why it did not immediately put a claim on file, thereby mitigating any prejudice to the Debtors.  It instead aggravated the issue by waiting three months to file its claim.  NISM's delay in filing its claim weighs in favor of disallowing the NISM Late Claim.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (i) deny NISM's Motion and (ii) grant such other and further relief as the Court deems just and proper.

Dated: January 5, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By ____*s/ D. J. Baker*____
      D. J. Baker
      Sally McDonald Henry
      Rosalie Walker Gray
      Jane M. Leamy
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Attorneys for Debtors

SMITH HULSEY & BUSEY

By ____*s/ James H. Post*____
      Stephen D. Busey
      James H. Post
      Cynthia C. Jackson,
      Florida Bar Number 175460
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com

Co-Attorneys for Debtors

00518497