UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                )
                                                      )
WINN-DIXIE STORES, INC., et al.,                      )    Case No. 3:05-bk-03817-JAF
                                                      )    Chapter 11
                                                      )    Jointly Administered
        Debtors.                                      )

**AFFIDAVIT OF MARK W. McCORMACK IN SUPPORT OF
SCHOOL STREET, SCHOOL STREET CROSSING L.P.'S OBJECTION TO
DEBTORS' MOTION FOR ORDER AUTHORIZING SALE OF ASSETS AND
ASSUMPTION AND ASSIGNMENT OF LEASES AND CONTRACTS (DOC. NO. 1961)**

STATE OF MISSISSIPPI
COUNTY OF HINDS

BEFORE ME, the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared MARK W. McCORMACK, who, being first duly sworn, deposes and says:

**Background**

1. I am *sui juris* and otherwise competent to testify as to the matters set forth in this affidavit.

2. School Street Crossing, L.P. ("School Street") owns a shopping center located at 398 Hwy. 51 N., Ridgeland, Mississippi ("Shopping Center").

3. Until August 15, 2005, Winn-Dixie Stores, Inc. et al. ("Debtors") operated Store 1362 at the Shopping Center pursuant to that lease dated January 7, 1993 between Jitney Jungle Stores of America, Inc. and Mattiace Properties, Inc. ("Lease"). A true and correct copy of the Lease is attached hereto as Exhibit "A".

4. School Street is a successor in interest to Mattiace Properties, Inc.

5. Debtors are the successors in interest to Jitney Jungles Stores of America, Inc.

6. I am Senior Vice President of the Mattiace Company, a commercial real estate firm contracted by School Street to provide property management services to the Shopping Center, including Winn-Dixie Store 1362.

7. In my capacity as Senior Vice President, I have personal knowledge of the events giving rise to School Street's claim for cure amounts due under the Lease, and the billing and payment history between the parties thereto.

**The Lease**

8. ¶ 27 of the Lease, concerning insurance, provides in pertinent part that:

> School Street shall furnish Tenant, within ninety (90) days of payment of such annual insurance premiums, copies of the premium notices and all facts, date and information needed to calculate Tenant's share of such insurance premiums as provided in this paragraph…Any excess paid by Tenant by means of said monthly payments shall be promptly refunded by Landlord to Tenant therewith, and any deficiency shall be paid by Tenant to Landlord within thirty (30) days thereafter.

9. ¶ 25 of the Lease, concerning taxes, provides in pertinent part that:

> School Street shall, within ninety (90) days following receipt of the tax bills for each tax year, furnish Tenant copies of said tax bills for such tax year and copies of the assessments on which such tax bills are based and all facts, data and information needed to calculate Tenant's share of such taxes as provided in this paragraph, and payment from Tenant shall be due within thirty (30) days thereafter.

10. ¶ 26 of the Lease, concerning CAM, provides in pertinent part that:

> School Street shall, within ninety (90) days following the end of each calendar year, furnish information needed to calculate Tenant's share of such expenses as provided in this paragraph…Any excess paid by Tenant by means of said monthly payments shall be promptly refunded by Landlord to Tenant therewith, and any deficiency shall be paid by Tenant to Landlord within thirty (30) days thereafter.

**2002 CAM, taxes and insurance**

11. Pursuant to the terms of the Lease, on March 31, 2003, School Street billed the

2

Debtors for Common Area Maintenance ("CAM") charges, taxes and insurance due under the terms of the Lease for 2002. A true and correct copy of the billings sent on March 31, 2003 are attached hereto as Composite Exhibit "B".

12. Pursuant to ¶¶ 26 and 27 of the Lease, the Debtors were required to pay the CAM charges and insurance no later than March 2, 2003.

13. Despite the requirements for payment set forth in the Lease, the Debtors paid all 2002 CAM charges and insurance due under the Lease on August 4, 2003. A true and correct copy of School Street's accounting records, showing the date of receipt of this payment, is attached hereto as Exhibit "C".

14. Pursuant to ¶ 25, of the Lease, the Debtors were required to pay its pro rata share of taxes no later than March 2, 2003.

15. Again, despite the requirements for payment set forth in the Lease, the Debtors paid their pro-rata share of 2002 taxes on August 8, 2003 (six [6] months after they were billed). A true and correct copy of School Street's accounting records, showing the date of receipt of this payment, is attached hereto as Exhibit "D".

**2003 CAM, taxes and insurance**

16. Pursuant to the terms of the Lease, on March 16, 2004, School Street billed the Debtors for CAM charges, taxes and insurance due under the terms of the Lease for 2003. A true and correct copy of the billing sent on March 16, 2004 is attached hereto as Exhibit "E."

17. On March 30, 2004, the Debtors requested additional information regarding the amounts due for insurance. A true and correct copy of the letter from the Debtors is attached hereto as Exhibit "F".

18. I responded by indicating that School Street had provided all information required

under the Lease for the Debtors to determine their liability to School Street for their share of CAM, taxes and insurance, and did not furnish the Debtors with any of the additional documentation that they requested. A true and correct copy of my response letter to the Debtors is attached hereto as Exhibit "G".

19. Pursuant to ¶¶ 26 and 27 of the Lease, the Debtors were required to pay the CAM charges and insurance no later than April 30, 2004.

20. Despite the requirements for payment set forth in the Lease, the Debtors paid all 2003 CAM charges and insurance due under the Lease on May 25, 2004. A true and correct copy of School Street's accounting records, showing the date of receipt of this payment, is attached hereto as Exhibit "H".

21. Pursuant to ¶ 25 of the Lease, the Debtors were required to pay its pro rata share of taxes no later than March 2, 2003.

22. Despite the requirements for payment set forth in the Lease, the Debtors paid their pro-rata share of 2003 taxes on June 7, 2004. A true and correct copy of School Street's accounting records, showing the date of receipt of this payment, is attached hereto as Exhibit "H".

**2004 CAM, taxes and insurance**

23. On February 22, 2005, I contacted the Debtors and requested instructions as to how CAM, taxes and insurance were to be billed in light of the recently filed bankruptcy proceedings. A true and correct copy of the email correspondence is attached hereto as Exhibit "I".

24. The Debtors responded and indicated that all billing was to be processed as usual. *See* Exhibit "I" attached hereto.

25. Shortly thereafter, pursuant to the February 22, 2005 email from the Debtors to School Street, School Street billed the Debtors for CAM charges, taxes and insurance due under the terms of the Lease for 2004, and provided to Debtors the "2004 CAM, Tax & Insurance Reconciliation" as to Store 1362 and "2004 CAM, Tax and Reconciliation" as to the Shopping Center as a whole. True and correct copies of the reconciliations are attached hereto as Composite Exhibit "J".

26. As reflected in Exhibits "A", "I" and "J" attached hereto, the amounts due for 2004 CAM charges, insurance and taxes are as follows:

| | |
|---|---|
| 2004 CAM | 16,935.87 |
| 2004 Insurance | 2,717.64 |
| 2004 Taxes | 26,526.43 |
| **2004 Total** | **46,179.94** |

27. On April 4, 2005, the Debtors requested additional information regarding the amounts due for insurance for 2004, stating that:

> Under the provisions of our lease covering the above retail store location, School Street is required to remit an Insurance Bill along with Statements, Certificate of Insurance and Declaration Pages. This is now required in order to set up for payment.

A true and correct copy of the request for additional information as to insurance is attached hereto as Exhibit "K".

28. By its terms, however, ¶ 27 does not require the School Street to remit to the Debtors "Statements, Certificate of Insurance and Declaration Pages" as a condition precedent to payment of insurance.

29. Rather, pursuant to the Lease and prior to March 31, 2005, School Street provided to Debtor the "2004 Insurance Invoice" setting forth the carrier identity, the dates of coverage,

policy numbers, and a breakdown of coverage, as well as the total amount due for 2004. A true and correct copy of the "2004 Insurance Invoice" is attached hereto as Exhibit "L".

30. On April 4, 2005, the Debtors requested additional information regarding 2004 CAM billings and taxes, stating that:

> Under the provisions of our lease covering the above retail store location, School Street is required to remit copies of all invoices with your CAM Billing. This is now required in order to set up for payment.

A true and correct copy of the request for additional information is attached hereto as Exhibit "M".

31. In response to the request of the Debtors, prior to April 30, 2005, School Street promptly furnished the Debtors with all of the paid CAM invoices so that the Debtors had received all "information needed to calculate Tenant's share of such expenses as provided in this paragraph," as required under the terms of the Lease by April 30, 2005. Copies of the CAM invoices are attached hereto as Composite Exhibit "N."

32. On May 25, 2005, the Debtors again requested additional information regarding the amounts due for insurance for 2004. A true and correct copy of the request for additional information as to insurance is attached hereto as Exhibit "O".

33. Also on May 25, 2005, the Debtors again requested additional information regarding the amounts due for 2004 CAM and property taxes. A true and correct copy of the request for additional information as to CAM and property taxes is attached hereto as Exhibit "P".

34. As indicated above, however, School Street had already provided to Debtors a breakdown of the CAM charges, the CAM invoices and the Debtors' proportionate share, as required under the terms of the Lease.

35. Further, School Street had previously provided the "2004 Real Property Tax Bill" as to the Shopping Center, a true and correct copy of which is attached hereto as Exhibit "Q".

36. Despite the fact that all information required under the Lease had already been furnished, on June 27, 2005, the Debtors yet again requested additional information regarding 2004 CAM and property taxes, denoting that the correspondence was "Final". A true and correct copy of the request for additional information as to insurance is attached hereto as Exhibit "R".

37. As of June 27, 2005, however, School Street had already furnished all documentation and information due under the Lease. School Street School Street was not required, pursuant to any provision of the Lease, to produce any additional information sought by the Debtors' Exhibit "R."

38. Rather, pursuant to the terms of the Lease, School Street has provided all information needed to calculate the Debtors' share of insurance, CAM and taxes; however, School Street still has not received payment for outstanding CAM changes, taxes and insurance for 2004.

**2005 CAM, taxes and insurance**

39. School Street has now received its 2005 tax bill. There have been no changes in the amount of the Debtor's tax liability, as no re-assessment of the property has been made.

40. The Debtors' portion of 2005 taxes is $16,497.26, representing its pro rata portion of the 2005 taxes due through August 15, 2005, when the Debtors assigned the Lease.

41. School Street has not received its 2005 insurance invoice, but does not expect any significant change in the total premium amount.

42. School Street anticipates the Debtors' portion of 2005 insurance to be $2,163.18, representing its pro rata portion of the 2005 taxes due through August 15, 2005, when the

Debtors assigned the Lease.

43. The Debtors currently owe $13,193.57 for CAM charges through August 15, 2005.

44. School Street has provided to the Debtors its "2005 CAM, Tax & Insurance Reconciliation" as to Store 1362 and "2005 CAM, Tax and Reconciliation" as to the Shopping Center as a whole. True and correct copies of the reconciliations are attached hereto as Composite Exhibit "S".

**Conclusion**

45. The Debtors have filed their Motion for Order Authorizing Sale of Assets and Assumption and Assignment of Leases and Contracts which incorrectly sets forth a cure amount to School Street of $0.00.

46. The Debtors now currently owe $46,179.94 for CAM charges, taxes and insurance for 2004.

47. The Debtors now currently owe $31,854.01 for CAM charges, taxes and insurance for 2005 (through August 15, 2005).

48. In addition, the Debtors have not paid their portion of the August rent through August 15, 2005, and $9,266.63 is currently due and owing.

49. The total cure amount now due and owing by the Debtors to School Street is **$87,300.58**.

50. Although the Debtors now appear to claim that School Street did not timely furnish the necessary information for payment of CAM, insurance and taxes for the tax year 2004 (and perhaps also for the tax year 2005), these claims are simply not correct. To the contrary, School Street furnished all information to the Debtors required under paragraphs 25-27

of the Lease in a timely fashion, prior to March 31, 2005.

51. Moreover, even if the Debtors assert that the information was not furnished within the time periods set forth in paragraphs 25-27 of the Lease, it is clear from the parties' prior course of dealing, set forth above, that neither School Street nor the Debtors adheared strictly to the time periods set forth in paragraphs 25-27 of the Lease, and School Street provided all required information within the time periods established by the parties' prior course of conduct.

FURTHER AFFIANT SAYETH NAUGHT.

_____
MARK W. McCORMACK
As Vice President
The Mattiace Company

STATE OF MISSISSIPPI
COUNTY OF HINDS

The foregoing instrument was acknowledged before me this 6 day of January, 2006, by Mark W. McCormack who ☒ is personally known to me or ☐ produced _____ (type of identification) as identification.

_____
Notary Public, State of Mississippi

Martha F. Denny
(Print Name)

(notarial seal)

My Commission Expires:
NOTARY PUBLIC STATE OF MISSISSIPPI AT LARGE
MY COMMISSION EXPIRES: Sep 19, 2007
BONDED THRU NOTARY PUBLIC UNDERWRITERS

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via electronic filing or by regular U. S. Mail on this 6th day of January, 2006, to the following:

D. J. Baker
Skadden, Arps, Slate, Meacher & Flom LLP
Four Times Square
New York, New York 10036

Cynthia C. Jackson
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL  32202

/s/ Jon E. Kane
JON E. KANE
Florida Bar Number 814202
DAVID M. LANDIS
Florida Bar Number 193094
Mateer & Harbert, P.A.
225 East Robinson Street, Suite 600
Post Office Box 2854
Orlando, Florida  32802-2854
Telephone: (407) 425-9044
Facsimile: (407) 423-2016
Attorneys for Plaintiff