**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | Case No.: 3:05-bk-03817-JAF |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |
| _____/ | |

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
REQUEST FOR SCHEDULING CONFERENCE WITH RESPECT
TO MOTION OF OFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS FOR ORDER APPOINTING AN EXAMINER PURSUANT TO
<u>SECTION 1104 OF BANKRUPTCY CODE</u>**

The official committee of unsecured creditors (the "<u>Committee</u>") appointed in the above-captioned chapter 11 cases of Winn-Dixie Stores, Inc. ("<u>Winn-Dixie</u>") and its affiliated debtors and debtors in possession (together with Winn-Dixie, the "<u>Debtors</u>") hereby files this response (the "<u>Response</u>") to the request of the Official Committee of Equity Security Holders (the "<u>Equity Committee</u>"), dated December 21, 2005, for a scheduling conference (Docket No. 4735, the "<u>Scheduling Conference Request</u>") with respect to the Equity Committee's motion, dated December 8, 2005, to appoint an examiner pursuant to section 1104 of the Bankruptcy Code, and represents as follows:

**PRELIMINARY STATEMENT**

1.    Neither the Debtors nor the Committee believes that the appointment of an examiner is in the best interests of the estate.  The Equity Committee litters its

pleadings with contentions to the contrary. Further discovery, briefing, argument and resolution of these issues are irrelevant: appointment of an examiner is mandatory under section 1104(c)(2). Tellingly, the Equity Committee never expressly states as much in its pleadings. Instead, it seeks to draw the other parties in this case into needless litigation. As much as the Equity Committee may wish to spend days deposing management, such discovery is neither productive nor essential to the resolution of the Motion. An examiner, unfortunately, must be appointed in these cases.

    2. The Committee is intensely focused on the costs associated with such examiner. The fees and expenses of an examiner will be borne by the estate and, as a result, reduce the recoveries to unsecured creditors. The Equity Committee is immune to such concerns because its constituents are not entitled to any recovery and thus are indifferent to additional administrative expenses. Indeed, many of the areas the Equity Committee seeks to have an examiner investigate are already the subject of non-bankruptcy lawsuits. Similarly, a lengthy investigation could delay emergence from chapter 11, leading to a concomitant deterioration of value. Accordingly, the Court should charge the examiner with a tightly controlled and highly limited mandate. If the examiner uncovers

potentially fruitful areas of inquiry, it can always petition this Court to broaden its mandate.

3. The Court should deny the request for discovery and a briefing schedule in connection with whether appointment of an examiner is appropriate. Additionally, the Committee proposes that the parties reconvene in two weeks to (i) consider the identity and qualifications of the examiner to be appointed and (ii) determine the appropriate scope of the examiner's investigation.

## BACKGROUND

4. **Petition Date.** On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

5. **Committee Appointed.** On March 1, 2005, the United States Trustee duly appointed the Committee, which appointment was amended on August 29, 2005.

6. **Examiner Motion.** On December 8, 2005, the Equity Committee filed the motion (Docket Nos. 4536 and 4537, the "Motion") seeking appointment of an examiner to investigate whether there are any claims or causes of

action Winn-Dixie may assert against its prepetition directors, officers, senior management and third party professionals for actions or inactions that caused or contributed to the bankruptcy filing, including, among other things, (a) the decline of Winn-Dixie's financial condition and events leading up to the chapter 11 filings, (b) class action lawsuits filed in the United States District Court for the Middle District of Florida against Winn-Dixie and certain present and former executive officers alleging claims under federal securities laws, (c) class action lawsuits filed in the United States District Court for the Middle District of Florida against Winn-Dixie and certain present and former executive officers alleging claims under ERISA relating to Winn-Dixie's Profit Sharing/401(k) plan and (d) a federal grand jury investigation of possible violations of federal criminal law arising out of activities relating to illegal importation, possession, transportation and sale of undersized lobsters.[1]

---

[1] Although currently not before the Court in connection with the Scheduling Conference Request, the Committee believes that the Equity Committee's requested scope of investigation for the examiner is overly broad and not likely to benefit the Winn-Dixie estate. There is no need for the estates to bear the expense of providing discovery in aid of non-bankruptcy lawsuits nor bear the costs of an investigation of topics irrelevant to these cases. The scope of an examiner's investigation is a matter that is within the Bankruptcy Court's discretion and the Committee believes that a short two week briefing schedule should be set on this issue. In connection with such briefing

7.      **Equity Committee's Discovery Requests.**  On January 4, 2006, the Equity Committee served the Debtors with wide-ranging discovery requests, including (i) interrogatories requesting disclosure of experts and witnesses that the Debtors intend to designate in connection with the Motion; (ii) extremely broad production requests for documents relating to or created in the years 2000 through 2005 and (iii) a Fed. R. Civ. P. 30(b)(6) deposition notice.

8.      **Extended Response Date.**  The Equity Committee extended the Committee's deadline to file a response to the Scheduling Conference Request through and including Monday, January 9, 2006.

**RESPONSE**

**I.   NO DISCOVERY IS WARRANTED BECAUSE APPOINTMENT OF EXAMINER IS REQUIRED PURSUANT TO SECTION 1104(c)(2) OF BANKRUPTCY CODE**

9.      No need for discovery or further briefing exists.  Given the level of debt for borrowed money in these case, the appointment of an examiner is mandatory under section 1104(c)(2) of the Bankruptcy Code.  The "appointment of an examiner [under section 1104(c) of the Bankruptcy Code] always has four requirements: first, the debtor must still be in possession of the estate; second, a

---

   schedule, the Committee intends to object to the requested
   scope of the investigation and seek appropriate
   limitations.

plan must not have been confirmed; third, a party in interest must request the appointment; fourth, one of the conditions set out in the numbered paragraphs of subsection (c) must be satisfied -- either (1) appointment of the examiner must be in the interests of the estate, or (2) specific unsecured debts must exceed $5 million." In re UAL Corp., 307 B.R. 80, 84 (Bankr. N.D. Ill. 2004).

      10.    As this Court is aware, (1) Winn-Dixie remains in possession of its estate, (2) a plan of reorganization has not yet been confirmed, (3) at the time of the request, the Equity Committee was purportedly (and may shortly cease to be) a party in interest in these cases and (4) Winn-Dixie has bond debt in excess of $300 million and thus satisfies the criteria that its fixed, liquidated, unsecured debts, excluding debts for goods, services or taxes or those owing to an insider, exceed $5,000,000. Accordingly, appointment of an examiner appears to be required under section 1104(c)(2) of the Bankruptcy Code. Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.), 898 F.2d 498, 501 (6th Cir. 1990) (holding that when "total 'fixed, liquidated, unsecured' debt is greater than $5 million" an examiner must be appointed under section 1104(c)(2) of the Bankruptcy Code.); Loral Stockholders Protective Committee v. Loral Space & Communications Ltd. (In re Loral Space & Communications, Ltd.), 204 WL 2979785

\*4 (S.D.N.Y. Dec. 23, 2004) ("On its face, [Bankruptcy Code] [s]ection 1104(c)(2) mandates the appointment of an examiner where a party in interest moves for an examiner and the debtor has $5,000,000 of qualifying debt.").

11.     Since appointment of an examiner is mandatory under section 1104(c)(2) of the Bankruptcy Code, no genuine controversy exists.[2]

## II. APPOINTMENT OF EXAMINER CAN AND SHOULD BE PROMPTLY CONSIDERED

12.     As the Court is aware, the Debtors were recently granted a further period of exclusivity to file a plan of reorganization (i.e., through March 20, 2006). Over the next approximately 70 days it is imperative that the Debtors focus on the plan process and not be distracted by extraneous matters (many of which are subject to litigation before other tribunals) raised in its Motion. A swift and consensual resolution of these cases is in all parties' best interest.

---

[2] Furthermore, it would be inappropriate under the circumstances to allow the Equity Committee to conduct the requested discovery in connection with the Motion. Once appointed, it would be the examiner's duty to investigate the matters within his/her scope and to seek appropriate discovery. Additionally, the examiner would be free to seek leave of this Court to expand its investigation, if appropriate. This, however, is not an opportunity for the Equity Committee to take free discovery that likely would only benefit individual stakeholders.

**RESERVATION OF RIGHTS**

13.   The Committee expressly reserves the right to amend or supplement this Response in connection with the Scheduling Conference Request or Motion including, without limitation, with respect to the scope of the examiner's investigation and any matters relating to the examiner's compensation and length of appointment, to seek discovery in aid of the prosecution of the Response or its objection to the requested scope of investigation, to introduce evidence supporting same at any hearing in connection with the Motion, and to seek any alternative or incremental relief.

**CONCLUSION**

For the foregoing reasons, the Committee requests that the Court (1) deny the Equity Committee's request for discovery in connection with its request for the appointment of an examiner, (2) set a hearing in approximately two weeks to consider the (x) identity and qualifications of the examiner suggested by the United States Trustee after consulting with counsel for the Debtors, the Committee, DIP lender, and the Equity Committee and (y) determine the proper, limited scope of

8

the examiner's investigation, and (3) grant such other relief as it deems just and proper.

Dated:   January 9, 2006

        AKERMAN SENTERFITT

        By: /s/ John B. Macdonald
        John Macdonald
        Florida Bar No. 230340
        E-mail:john.macdonald@akerman.com
        Patrick P. Patangan
        Florida Bar No. 348340
        E-mail: patrick.patangan@akerman.com
        50 North Laura Street, Suite 2500
        Jacksonville, Florida  32202
        Telephone: (904) 798-3700
        Facsimile: (904) 798-3730

        Co-counsel for the Official
        Committee of Unsecured Creditors of
        Winn-Dixie Stores, Inc., et al.

        And

        MILBANK, TWEED, HADLEY & McCLOY LLP
        Matthew S. Barr (MB 9170)
        Robert E. Winter (RW 9937)
        Michael E. Comerford (MC 7049)
        1 Chase Manhattan Plaza
        New York, NY 10005
        (212) 530-5000

        Co-counsel for the Official
        Committee of Unsecured Creditors of
        Winn-Dixie Stores, Inc., et al.