REDACTED VERSION

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | : |
| | : Case No.: 3-05-bk-03817-JAF |
| WINN-DIXIE STORES, INC., et al., | : Chapter 11 |
| | : JOINTLY ADMINISTERED |
| Debtor(s). | : |
| | : |

**OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS' (I) OBJECTION AND
MOTION TO SET ASIDE THE UNITED STATES TRUSTEE'S NOTICE OF
DISBANDMENT OF EQUITY SECURITY HOLDERS COMMITTEE AND (II) MOTION
FOR APPOINTMENT OF EQUITY SECURITY HOLDERS COMMITTEE NUNC PRO
TUNC TO JANUARY 11, 2006**
**(EMERGENCY HEARING REQUESTED)**

The Official Committee of Equity Security Holders (the "Equity Committee") initially

appointed in the above-referenced proceedings by the United States Trustee (the "U.S. Trustee") on

August 17, 2005, by and through its undersigned counsel, hereby files its Objection and Motion to

Set Aside the United States Trustee's Notice of Disbandment of Equity Security Holders Committee

and Motion for Appointment of Equity Security Holders Committee Nunc Pro Tunc to January 11,

2006 and respectfully represents as follows:

## INTRODUCTION

1.     By this motion the Equity Committee seeks to set aside the U.S. Trustee's January

11, 2006 Notice of Disbandment of Equity Security Holders Committee [Docket No. 5098] (the

"Notice of Disbandment"). The issuance of the unilateral notice constitutes an abuse of discretion

designed to deprive this Court of jurisdiction over the pending, but abated, Disbandment Motion (as

defined below). The U.S. Trustee sought abatement of the Disbandment Motion to conduct an

additional review under the Seal Order entered in connection with the Disbandment Motion.

Having reached conclusions that have caused the U.S. Trustee to reverse its initial appointment

decision, and which are inconsistent with the U.S. Trustee's two (2) objections to the Disbandment

Motion filed in support of the Equity Committee, the U.S. Trustee cannot now be permitted to side step the Disbandment Motion and unilaterally disband the Equity Committee.[1] Because of the Disbandment Motion, this Court continues to have jurisdiction over the disbandment and the U.S. Trustee must comply with the rules of bankruptcy procedures and provide all interested parties with notice and an opportunity to be heard at a hearing before this Court. Until a hearing before this Court can take place, the Equity Committee asks this Court to immediately set aside the Notice of Disbandment so that the Equity Committee's ability to represent its constituency is not irreparably harmed while the Disbandment Motion is considered and determined by this Court.

2.      The Equity Committee is necessary in these cases to ensure that the interests of all equity holders are protected. Indeed, in the Debtors' Motion for Summary Judgment (as defined below), the Debtors supported the appointment of the Equity Committee. It was not until the Equity Committee requested an independent investigation and raised concerns over the actions of the Debtors' pre-petition directors, officers, senior management and third party professionals that the Debtors began to reconsider their support for the Equity Committee. The Debtors' recent change in position highlights the need for an equity committee to protect the interests of the equity holders and the bankruptcy estates.

3.      The Equity Committee seeks reappointment nunc pro tunc to January 11, 2006 so that it can continue to represent its constituency in connection with its Motion to Appoint an Examiner (as defined below) and in plan negotiations as the Debtors and Creditors Committee move forward with the confirmation process. Absent the Equity Committee's involvement in the

---

[1] On or about September 29, 2005, the U.S. Trustee filed its Objection to Motion of Official Committee of Unsecured Creditors for Entry of Order, Under 11 U.S.C. §§ 105 and 1102 Disbanding Official Committee of Equity Security Holders [filed under seal at Docket No. 3710] (the "U.S. Trustee's Initial Objection"). On or about November 1, 2005, the U.S. Trustee filed its Second Objection to Motion of Official Committee of Unsecured Creditors for Entry of Order, Under 11 U.S.C. §§ 105 and 1102, Disbanding Official Committee of Equity Security Holders [filed under seal at Docket No. 4000] (the "U.S. Trustee's Second Objection," collectively with the U.S. Trustee's Initial Objection, the "U.S. Trustee's Objections").

Motion to Appoint an Examiner, it is likely that the scope of the investigation will be reduced as a result of the Debtors' and Creditors Committee's asserted positions rendering the investigation much less meaningful. Moreover, without an Equity Committee, there is no hope of any return to equity holders.

4.    The facts in this case provide strong support for the continued existence of an official equity committee and include, as discussed in greater detail below, the following:

- The Debtors have not investigated potential claims against their pre-petition directors, officers, senior management and professionals who continue to provide services to Winn-Dixie Stores, Inc. ("Winn-Dixie") and the other Debtors. Such claims are assets of the bankruptcy estates, and as such, must be independently investigated. Absent the report of an independent examiner, the materiality and value of the potential claims is unknown and unquantified and cannot be valued or addressed in connection with any plan of reorganization the Debtors may propose. Indeed, without an investigation, any determination of value of the Debtors' estate is premature.

- Since the formation of the Equity Committee, the Creditors Committee has focused on eliminating its existence so there is no independent party to challenge its and the Debtors' valuation and proposed plan terms. Absent the continued existence of the Equity Committee, it is a foregone conclusion that the plan of reorganization will not provide any recovery to equity holders. By their own admissions, the Debtors are not hopelessly insolvent. They are reorganizing and preparing to file their disclosure statement and plan of reorganization consistent with the expiration of their exclusivity period on March 20, 2006.[2]

- The Equity Committee's request for the appointment of an examiner, despite the lack of objection thereto, has been delayed and its scope thwarted by the Notice of Disbandment and there is no party to represent the equity holders' interests in connection with the appointment and investigation.[3]

- The Debtors are not able to independently and adequately represent the equity holders because members of Winn-Dixie's board of directors owe

---

[2] In re Exide Technologies, 2002 U.S. Dist. LEXIS 27210, *6 (D. Del. December 23, 2002) ("appellee presented expert evidence consistent with the expectation that debtors intend to reorganize and not liquidate . . . . Thus, . . . there is evidence of record that the debtor is not hopelessly insolvent").

[3] While the Debtors have acknowledged that an independent examination is necessary prior to confirmation of a plan of reorganization, the Debtors have failed to initiate any investigation. Worst yet, the Debtors proposed ridiculous limitations on the scope and budget for the investigation by the examiner. Until an investigation is completed, parties-in-interest cannot determine the true value of the Debtors' estates.

fiduciary duties to parties other than the Debtors and the shareholders. The Debtors have acknowledged Winn-Dixie's board of directors is not independent. Yet, this is the board of directors that will have a major role in approving any plan of reorganization that is to be proposed by the Debtors, including any releases of pre-petition directors, officers, senior management and professionals that are commonly included in plans of reorganization.[4]

- The Debtors and Creditors Committee are negotiating the plan of reorganization as these pleadings are being filed. Absent an official equity committee, the plan will no doubt fail to provide any recovery to the equity holders. Each day an official equity committee is not in place jeopardizes the equity holders' rights and abilities to pursue a plan distribution and other appropriate remedies.

- These cases are large and complex involving twenty-four (24) debtors with a complex financial structure including an $800 million debtor-in-possession secured financing and over 10,000 creditors and approximately 36,000 beneficial equity holders at the parent level.

- Winn-Dixie has approximately 36,000 beneficial holders of publicly traded common stock, the bulk of which are small institutions and individual investors, including many retirees. Absent the existence of an official equity committee, these individuals will not be represented.

- The need for adequate representation in this case outweighs the concern about the cost of an additional committee because (i) absent the continued appointment of an official equity committee, claims against the estate may not be thoroughly investigated and subsequently prosecuted because of conflicts of interest and (ii) no other party is willing or able to represent the interests of the equity holders.

5.    As discussed in greater detail below, the facts support the continued existence or appointment nunc pro tunc to January 11, 2006 of an official equity committee. As a result, the Equity Committee hereby respectfully requests that this Court enter an order:

- immediately setting aside the Notice of Disbandment and reinstating the Equity Committee because the U.S. Trustee abused its discretion in issuing the Notice of Disbandment which improperly attempts to deprive this Court of jurisdiction over the pending, but abated, Disbandment Motion pursuant to which the U.S. Trustee conducted under seal a review of its initial appointment;

---

[4] It is clear that the Debtors' have no incentive, and indeed, have taken no steps, to investigate their pre-petition directors who still oversee the Debtors' management. The Equity Committee is necessary to serve as a watchdog and ensure that the estates are protected.

4

- • requiring the U.S. Trustee, to the extent the U.S. Trustee believes that disbandment is appropriate, to file appropriate pleadings with the Court seeking to disband the Equity Committee so that all interested parties will receive notice, opportunity to conduct discovery and be heard at a hearing before this Court; and

- • appoint the Equity Committee nunc pro tunc to January 11, 2006 under Section 1102(a)(2).

## JURISDICTION AND VENUE

6.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7.     On February 21, 2005 (the "Petition Date"), Winn-Dixie Stores, Inc., et al. (the

"Debtors") filed their petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the

"Bankruptcy Cases"). The Debtors continue to manage and operate their businesses as debtors-in-

possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

8.     The Debtors are grocery and pharmaceutical retailers operating in the southeastern

United States, primarily under the names "Winn-Dixie" and "Winn-Dixie Marketplace." According

to published reports, the Debtors are the eighth largest food retailer in the United States and one of

the largest in the Southeast.

A.     **Appointment of the Equity Committee**

9.     Upon consideration of requests and information submitted to the U.S. Trustee, on or

about June 28, 2005, the U.S. Trustee concluded that the appointment of an equity committee was

necessary in these bankruptcy cases.

10.     On August 17, 2005, pursuant to Section 1102 of the Bankruptcy Code, the U.S.

Trustee appointed the Equity Committee and designated the following five (5) equity security

holders to serve as members of the Equity Committee in these cases: (i) Mr. Houston Maddox; (ii)

Mr. Greg Rippel on behalf of the Brandes Investment Partners, L.P. Profit Sharing Plan; (iii) Mr. Paul Madsen;[5] (iv) Mr. Michael Nakonechny; and (v) Mr. Kenneth Thomas.

**B.      Creditors Committee Sealed Motion to Disband the Equity Committee**

11.      On or about August 31, 2005, the Official Committee of Unsecured Creditors (the "Creditors Committee") filed its Motion for Permission to File Motion Seeking Disbandment of Equity Committee Under Seal [Docket No. 3297].

12.      On or about August 31, 2005, the Debtors filed their Motion Regarding Filing Under Seal of Pleadings Related to Appointment of Equity Committee [Docket No. 3309].

13.      On or about September 2, 2005, the Creditors Committee filed its Motion of the Official Committee of Unsecured Creditors for Entry of Order, Under 11 U.S.C. §§ 105 and 1102, Disbanding Official Committee of Equity Security Holders [filed under seal at Docket No. 3363] (the "Disbandment Motion") seeking an order disbanding the Equity Committee.

14.      On or about September 2, 2005, the Ad Hoc Committee of Winn-Dixie Retirees filed their Limited Objection to Debtors' Motion Regarding Filing Under Seal of Pleadings Related to Appointment of Equity Committee [Docket No. 3352].

15.      On or about September 6, 2005, the U.S. Trustee filed its Objection to Motion of Official Committee of Unsecured Creditors for Permission to File Motion Seeking Disbandment of Equity Committee Under Seal [Docket No. 3365] and its Objection to Debtors' Motion Regarding Filing Under Seal of Pleadings Related to Appointment of Equity Committee [Docket No. 3366].

16.      On or about September 12, 2005, the Court entered its Order Requiring Filing Under Seal of Pleadings Related to Appointment of Equity Committee [Docket No. 3436] (the "Seal Order"). Pursuant to the Seal Order the Court required the pleadings related to the Disbandment

---

[5] On or about September 23, 2005, Mr. Madsen resigned from the Equity Committee.

Motion to be filed under seal in accordance with Local Rule 5005-4. The Court held that the pleadings shall remain under seal and confidentially and shall not be made available to anyone other than (a) the Court and (b) on the condition that they maintain the confidentiality of the confidential information, the Limited Recipients (as defined in the Seal Order).[6]

17.     On or about September 19, 2005, the Court entered its Consent Order Regarding Scheduling and Discovery Issues Related to Motion of Official Committee of Unsecured Creditors Seeking Disbandment of Equity Committee [Docket No. 3509] (the "Consent Order"). Pursuant to the Consent Order, the Court requested that all dispositive pleadings to dismiss the Disbandment Motion be filed no later than September 26, 2005, at 5:00 p.m. Pursuant to agreement between and among the parties to the Consent Order the September 26, 2005 deadline was extended to September 29, 2005 at 5:00 p.m.

**C.     Dispositive Motions**

18.     On or about September 29, 2005, the Equity Committee filed its Motion for Summary Judgment [filed under seal at Docket No. 3343] and Memorandum of Law of the Official Committee of Equity Security Holders in Support of Summary Judgment [filed under seal at Docket No. 3708].

19.     On or about September 29, 2005, the Debtors filed their Motion for Summary Judgment Denying Creditors Committee's Motion to Disband Equity Committee [filed under seal at Docket No. 3711] ("Debtors' Motion for Summary Judgment") stating as follows:



---

[6] The Equity Committee is contemporaneously filing its Motion for Order Unsealing the Pleadings and Proceedings Related to the Motion of Official Committee of Unsecured Creditors for Entry of Order, Under 11 U.S.C. §§ 105 and 1102, Disbanding Official Committee of Equity Security Holders (the "Motion to Unseal") seeking an order unsealing all pleadings and proceedings related to the Disbandment Motion.



Debtors' Motion for Summary Judgment, ¶ 42 (emphasis added).

20.    On or about September 29, 2005, the U.S. Trustee filed the U.S. Trustee's Initial Objection in support of its appointment of the Equity Committee.

21.    On October 14, 2005, the Court issued a letter ruling announcing its ruling on the dispositive motions (the "Letter Ruling"). On October 18, 2005, the Court entered its Order Denying Motion for Summary Judgment Denying Creditors' Committee's Motion to Disband Equity Committee [filed under seal at Docket No. 3895] (the "Summary Judgment Order"). The Court found that it has authority to review the U.S. Trustee's decision to appoint an equity committee and that "the proper standard of review is whether appointment of the Equity Committee was arbitrary, capricious, or otherwise an abuse of discretion based on the information that the United States Trustee had before her at the time she made the decision to appoint the Equity Committee." Summary Judgment Order, p. 6.

**D.    Clarification Motion**

22.    On October 19, 2005, the Creditors Committee filed its Motion of Official Committee of Unsecured Creditors for Clarification of Letter Ruling Dated October 14, 2005 [filed under seal at Docket No. 3893] (the "Clarification Motion").

23.    On or about October 20, 2005, the U.S. Trustee filed its Response and Objection to Motion of Official Committee of Unsecured Creditors for Clarification of Letter Ruling Dated October 14, 2005 [filed under seal at Docket No. 3903], objecting to the Clarification Motion and

seeking to limit the scope of discovery to the information and materials considered by the U.S.
Trustee in making the decision to appoint the Equity Committee.

24.    On October 20, 2005, the Debtors filed their Response and Objection to Creditors
Committee's Motion for Clarification of Letter Ruling Dated October 14, 2005 [filed under seal at
Docket No. 3902] objecting to the Clarification Motion and seeking to limit the scope of discovery
to the information and materials considered by the U.S. Trustee in making the decision to appoint
the Equity Committee.

25.    On or about October 21, 2005, the Equity Committee filed its Joinder of the Official
Committee of Equity Security Holders to (I) the Debtors' Response and Objection to Creditors
Committee's Motion for Clarification of Letter Ruling Dated October 14, 2005 and (II) United
States Trustee's Response and Objection to Motion of Official Committee of Unsecured Creditors
for Clarification of Letter Ruling Dated October 14, 2005 [filed under seal at Docket No. 3916].

26.    On or about October 27, 2005, the Court entered its Order Denying Motion of
Official Committee of Unsecured Creditors for Clarification Ruling Dated October 14, 2005 [filed
under seal at Docket No. 3952].

**E.    Motions for Protective Order**

27.    On or about November 1, 2005, the Debtors' filed their Motion for Protective Order
in Connection with Discovery Related to Creditors Committee's Motion to Disband Equity
Committee [filed under seal at Docket No. 3991].

28.    On or about November 1, 2005, the Equity Committee filed its Motion for (I) Order
Enlarging Time Within Which to Comply with Discovery Deadlines; and (II) Protective Order in
Connection with Discovery Requests [filed under seal at Docket No. 3999].

29.    The hearing on the motions for protective order were originally scheduled for
November 4, 2005.  The motions were adjourned in light of the abatement of the proceedings

related to the Disbandment Motion as described below. As a result of the bilateral agreement to

abate the Disbandment Motion between the U.S. Trustee and the Creditors Committee, the Equity

Committee did not have the opportunity to conduct any discovery in connection with the

Disbandment Motion and was denied the opportunity to be heard by this Court.

**F.      Agreement Between the U.S. Trustee and Creditors Committee to Abate Proceedings
          Related to the Disbandment Motion**

30.     On or about November 1, 2005, the U.S. Trustee via email advised the Equity

Committee's counsel that it had reached an agreement with the Creditors Committee to abate the

Disbandment Motion. Prior to the making of the abatement agreement, there was no notice or

discussion with counsel for the Equity Committee. The email circulated by the U.S. Trustee also

attached the U.S. Trustee's Second Objection supporting its decision to appoint the Equity

Committee.

31.     On or about November 2, 2005, the Creditors Committee filed its Motion to Abate

Proceedings on Disbandment Motion and to Adjourn Evidentiary Hearing Scheduled for November

16, 2005 [Docket No. 4013] (the "Motion to Abate") seeking, at the request of the U.S. Trustee to

abate all proceedings regarding the Disbandment Motion, including all pending discovery and

related motions, to adjourn the hearing on the Disbandment Motion for three weeks **to allow the

U.S. Trustee to review her decision to appoint the Equity Committee.**

32.     The Court held a hearing on the Motion to Abate on November 4, 2005 and

following the hearing entered its Order Granting Motion of Official Committee of Unsecured

Creditors to Abate Proceedings on Disbandment Motion and to Adjourn Evidentiary Hearing

Scheduled for November 16, 2005 [Docket No. 4049] (the "Abatement Order"). As a result of the

Abatement Order, the Equity Committee has been unable to conduct any discovery in connection

with the Disbandment Motion and no hearing was ever held on the Disbandment Motion.

**G.      The U.S. Trustee's Information Request in Connection with the Pending Disbandment Motion**

33.      On or about November 3, 2005, the U.S. Trustee sent an information request (the

"U.S. Trustee's Information Request") to all of the parties to the Disbandment Motion requesting

detailed information ███████████████████████████████████████████████████████

██████████████████████████████████████████████[7]  In its letter the U.S.

Trustee states without any advance notice to the Equity Committee or any of the notice parties to

the Disbandment Motion that:



U.S. Trustee's Information Request, p. 2 (emphasis added).  A copy of the U.S. Trustee's

Information Request is attached hereto as Exhibit A.[8]

34.      Because the U.S. Trustee conducted the review in connection with the Disbandment

Motion and under the Seal Order issued in connection with the Disbandment Motion, the U.S.

Trustee cannot now unilaterally disband the Equity Committee.  The U.S. Trustee did not provide

parties who were not subject to the Seal Order notice and opportunity to provide information to the

U.S. Trustee or allow them to participate in the U.S. Trustee's review process.  Indeed, no one

knows what process was conducted or what procedures were used by the U.S. Trustee in conducting

its review of its appointment decision.[9]

---

[7] This portion of the pleading is subject to the Seal Order and has been redacted accordingly.  The Equity Committee is contemporaneously filing its Motion to Unseal seeking an order to unseal the pleadings and proceedings related to the Disbandment Motion, specifically including the redacted information.

[8] This portion of the pleading is subject to the Seal Order and has been redacted accordingly. See fn. 6, supra.

[9] As a result of the Abatement Order, the Equity Committee was unable to conduct any discovery of the Debtors which seriously harmed its ability to participate fully in the U.S. Trustee's review process.

35.     In response to the U.S. Trustee's Information Request, the United States Securities

and Exchange Commission (the "SEC"), in a letter dated November 9, 2005 (the "SEC Letter"),

stated that it believed the U.S. Trustee appropriately exercised her discretion in appointing the

Equity Committee.  The SEC also states:



SEC Letter, p.1.  Moreover, the SEC urged the U.S. Trustee to allow the Equity Committee to

remain in place:



SEC Letter, p. 3.  A copy of the SEC Letter is attached hereto as Exhibit B. [10]

36.     At the December 1, 2005 hearing, the U.S. Trustee requested additional time to

review the Debtors' monthly operating reports and Form 10-K filed with the SEC.[11]  By the U.S.

Trustee's own admission, the U.S. Trustee's Information Request and review of the appointment of

---

[10] This portion of the pleading is subject to the Seal Order and has been redacted accordingly. See fn. 6, supra.

[11] In conducting its review, the U.S. Trustee appears to have relied heavily on the monthly operating reports and SEC filings prepared by the Debtors.  The filings were approved by the very same board of directors that would be the subject of an independent investigation to determine whether, and what, claims Winn-Dixie may assert against its pre-petition directors, officers, senior management and third party professionals for actions, or inactions, causing or contributing to the bankruptcy filings.  Moreover, as set forth in the Motion to Appoint an Examiner, the SEC filings are deficient and materially misleading.

the Equity Committee was conducted under seal in connection with the pending, but abated,

Disbandment Motion.

**H.      The Equity Committee's Activities and Motion to Appoint an Examiner**

Activities of the Equity Committee Since Appointment

37.      Since appointment, the Equity Committee has actively pursued activities designed to

ensure and increase return to all equity holders in this case including reviewing the Debtors'

finances, business plans and claims.  On October 6, 2005, the Equity Committee's professionals met

with the Debtors for an initial due diligence meeting.

38.      On or about November 10, 2005, the Equity Committee's professionals met with the

Debtors for an initial presentation on the Debtors' business plan.  Following each of the meetings

Jefferies & Company, Inc. ("Jefferies"), the Equity Committee's financial advisors, provided the

Debtors' professionals with information requests regarding the Debtors' business plan, finances,

accounting procedures and taxes.

39.      While the Debtors responded to certain due diligence requests, the Debtors failed to

respond completely to Jefferies' due diligence requests or to provide reasons for not responding.

On or about November 21, 2005, counsel for the Equity Committee followed up on information

requests made by Jefferies with counsel for the Debtors.  Counsel for the Debtors indicated that the

information would be forthcoming.  Despite counsel for the Debtors' assurances, the Equity

Committee's professionals have not received much of the information requested.

40.      At the December 15, 2005 hearing, counsel for the Equity Committee became aware

that the Debtors' professionals testified on the record that they were actively discussing with the

Creditors Committee the structure of a plan of reorganization, including substantive consolidation.

Debtors' counsel indicated that such information would be provided to the Equity Committee.  In a

letter dated December 22, 2005, counsel for the Equity Committee reiterated its request made at the

December 15, 2005 hearing to be provided with information regarding substantive consolidation and any proposed plan of reorganization on the same terms and timing as the Creditors Committee. To date, the Debtors have not provided the Equity Committee with any information regarding substantive consolidation or a proposed plan of reorganization.

The Equity Committee's Motion to Appoint an Examiner

41.     The Equity Committee has sought appointment of an examiner because the Debtors have failed to investigate potential claims against pre-petition directors, officers, senior management and professionals to determine whether any such parties' actions or inactions caused or contributed to the bankruptcy filings. This motion has now been delayed and continued by the U.S. Trustee's unilateral issuance of the Notice of Disbandment. Counsel for the Equity Committee has continued to follow up with the U.S. Trustee and remains focused on the critical need for an independent examination and appointment of an examiner. Attached hereto as Exhibit C is counsel for the Equity Committee's January 17, 2006 letter to the U.S. Trustee.

42.     On or about October 25, 2005, Winn-Dixie filed its Form 10-K for the fiscal year ending June 29, 2005 (the "Winn-Dixie 10-K") with the SEC. On or about October 27, 2005, Winn-Dixie filed its Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "Proxy Statement") seeking (i) election of the Class III directors, John E. Anderson, Julia B. North, and Carleton T. Rider (collectively, the "Class II Directors"); and (ii) ratification of the appointment of KPMG LLP ("KPMG") as independent registered public accounting firm for the fiscal year 2006 (the "KPMG Ratification").

43.     Following receipt and review of the Winn-Dixie 10-K and Proxy Statement, on November 2, 2005, counsel for the Equity Committee sent counsel for the Debtors a letter requesting that Winn-Dixie's board of directors form an independent committee with independent counsel to investigate potential pre-petition claims the estate may have against pre-petition officers,

directors, senior management and professionals whose actions, or inactions, led to Winn-Dixie's deteriorated financial condition and the chapter 11 bankruptcy filings.

44.    The Equity Committee requested confirmation of the investigation prior to the annual shareholder meeting scheduled for December 8, 2005 (the "Annual Meeting") at which Winn-Dixie sought to re-elect the Class III Directors and ratify KPMG's appointment as independent accountants.  The re-election of the Class III Directors and ratification of KPMG's appointment proposed by Winn-Dixie could either intentionally or unintentionally waive possible claims against the Class III Directors and KPMG without even conducting an investigation or otherwise disclosing to shareholders that Winn-Dixie had no basis for its recommendations. Moreover, Winn-Dixie's recommendations have the effect of entrenching members of the board of directors who should be the subject of an investigation to determine whether their actions, or inactions, caused or contributed to the bankruptcy filings of the Debtors.

45.    On November 9, 2005, counsel for the Debtors responded stating Winn-Dixie's board of directors would consider the Equity Committee's November 2, 2005 letter at the next board meeting scheduled for December 8, 2005.

46.    Following receipt of the November 9, 2005 letter, counsel for the Equity Committee requested in a letter dated November 15, 2005 that Winn-Dixie delay the proposed re-election of the Class III Directors and ratification of KPMG's appointment until the requested independent investigation into the actions or inactions of the directors, officers, senior management and professionals could be conducted and completed.

47.    Counsel for the Equity Committee continued to pursue discussions with the Debtors' counsel regarding the postponement of the Annual Meeting because of the need for an independent investigation.  During these discussions, the Debtors' counsel acknowledged that the Debtors had

not conducted any investigation, independent or otherwise, regarding the actions or inactions of

Winn-Dixie's pre-petition board of directors, senior management and professional advisors.

48.    As a result of the Equity Committee's discussions with the Debtors, Winn-Dixie

postponed its Annual Meeting scheduled for December 8, 2005 issuing a press release to this effect

on December 1, 2005. During these discussions, Winn-Dixie also agreed to file a Form 8-K

regarding the postponement of its Annual Meeting.

49.    Since November 15, 2005, counsel for the Debtors and the Equity Committee have

engaged in discussions regarding the Debtors' acknowledgement of the need for an independent

investigation, the scope of the investigation, and how such investigation should be conducted and

by whom.

50.    On December 7, 2005, Debtors' counsel proposed proceeding with an investigation

under FLA. STAT. ANN. § 607.07401. The Debtors acknowledged the board of directors was not

independent and proposed an independent entity be retained to conduct the investigation. The

Debtors were unwilling to stipulate to the appointment of an examiner under Section 1104 of the

Bankruptcy Code and expressed their desire to retain additional professionals to conduct the

investigation under FLA. STAT. ANN. § 607.07401.

51.    The Debtors' proposal failed to provide the estates the same protections that can be

provided by appointment of an examiner, namely clear bankruptcy court jurisdiction and

supervision of the examiner and the examination process, including established procedures for

dealing with the disclosure and filing of the examiner's report and implementation of the findings.

The Equity Committee remained focused on providing all interested parties with notice of the issues

creating the need for an independent investigation, and the need for the appointment of an examiner

and the transparency provided by the conduct of an investigation under Section 1104 of the

Bankruptcy Code.

52.    Accordingly, on or about December 8, 2005, the Equity Committee filed its Motion for Order Appointing an Examiner Pursuant to Section 1104 of the Bankruptcy Code [Docket No. 4536] (the "Motion to Appoint an Examiner") seeking the appointment of an examiner to independently investigate whether, and what, claims or causes of action Winn-Dixie may assert against pre-petition directors, officers, senior management and third party professionals for actions or inactions that caused or contributed to the bankruptcy filings.

53.    The Equity Committee filed the Motion to Appoint an Examiner not to extend its life as the Debtors suggest but to establish the true value of the bankruptcy estates by determining whether, and what, claims may be asserted against Winn-Dixie's pre-petition directors, officers, senior management and third party professions.  Moreover, an examiner is necessary to address the total lack of independence of Winn-Dixie's board of directors and the complete absence of any investigation into the actions which caused or contributed to the bankruptcy filing and ultimately led to serious and significant shareholder losses.

54.    The areas of investigation (the "Areas of Investigation") include, but are not limited to, the following:

- The decline of Winn-Dixie's financial condition and events leading up to the Chapter 11 filings.

- The Internal Revenue Service (the "IRS") audit for fiscal years 2000 through 2002, including, but not limited to, Winn-Dixie's appeal of the IRS' decisions.

- The issuance of dividends from 2000 through 2004 and whether Winn-Dixie complied with corporate governance requirements in issuing the dividends.

- Winn-Dixie's company-owned life insurance policies and any IRS investigation of such policies.

- Class action lawsuits filed in the United States District Court for the Middle District of Florida against Winn-Dixie and certain present and former executive officers alleging claims under federal securities laws.

- Class Action lawsuits filed in the United States District Court for the Middle District of Florida against Winn-Dixie and certain present and former executive officers alleging claims under ERISA relating to Winn-Dixie's Profit Sharing/401(k) plan.

- Shareholder demand requesting that a derivative proceeding be commenced against the Board of Directors and officers and directors who served from May 6, 2002 through July 23, 2004 asserting that such parties violated their fiduciary duties to Winn-Dixie.

- Any and all matters identified in any filing made by Winn-Dixie in the bankruptcy case or with the SEC.

- Such other matters as the examiner deems appropriate.

55.    On or about December 21, 2005, the Equity Committee filed its Request for Scheduling Conference with Respect to the Motion of the Official Committee of Equity Security Holders for Order Appointing an Examiner Pursuant to Section 1104 of the Bankruptcy Code [Docket No. 4735] requesting an order setting a scheduling conference on January 12, 2006 with respect to the Motion to Appoint an Examiner. Despite numerous requests from counsel for the Equity Committee, it was not until January 10, 2006 that the Debtors confirmed that the request for a scheduling conference would be included on the agenda.

56.    On or about January 5, 2006, the Debtors filed their Response to Motion of the Equity Committee for the Appointment of an Examiner [Docket No. 5003] (the "Debtors' Response to the Motion to Appoint an Examiner"). As set forth in the Debtors' Response to the Motion to Appoint an Examiner, the Debtors do not object to an order appointing an examiner but requested that the Court enter an order limiting the scope and time of the investigation as well as the compensation to be paid to the independent examiner. The Debtors requested that the investigation be completed before March 20, 2006, the date which the Debtors' exclusive period to file a plan of reorganization ends. The Debtors also requested that the examiner's compensation be limited to $200,000. The limitations underscore the Debtors' lack of commitment to undertake a full and fair investigation that will protect the interests of the bankruptcy estates. The Equity Committee

believes these limitations are improper, untimely and a blatant effort to manipulate the examiner

before the examiner is even appointed. Moreover, it was not until the Equity Committee requested

an independent investigation that the Debtors withdrew their support of the Equity Committee.

57.    On or about January 10, 2006, the Creditors Committee filed its Response to Request

for Scheduling Conference with Respect to Motion of Official Committee of Equity Security

Holders for Order Appointing an Examiner Pursuant to Section 1104 of Bankruptcy Code [Docket

No. 5071] and Wachovia Bank, National Association filed its Response to Motion of the Equity

Committee for the Appointment of an Examiner [Docket No. 5090]. Both parties conceded that

upon a request of a party-in-interest appointment of an examiner pursuant to Section 1104 of the

Bankruptcy Code was mandatory.

58.    At the January 12, 2006 hearing, the Court continued the Motion to Appoint an

Examiner pending the determination of the status of the Equity Committee. The intervening Notice

of Disbandment has not only delayed the appointment of an examiner but has jeopardized the

independence and scope of the examination as the Debtors and Creditors Committee seek to control

the examination by restricting costs and timing before the examiner is even appointed. Because the

matters addressed in the Motion to Appoint an Examiner are time critical and one of the principal

bases for the determination of the value of the Debtors' estate, the U.S. Trustee's unilateral Notice

of Disbandment should be set aside.[12]

I.    **The Notice of Disbandment**

59.    One (1) day prior to the scheduling conference on the Motion to Appoint an

Examiner, January 11, 2006, the U.S. Trustee filed its Notice of Disbandment. The U.S. Trustee

contacted counsel for the Equity Committee on January 11, 2006 to indicate the U.S. Trustee's

---

[12] The Equity Committee has been the only party pursuing the investigation and prosecution of claims against Winn-Dixie's pre-petition directors, officers, senior management and third party professionals which may add substantial value to the Debtors' estate.

intent to file the Notice of Disbandment that afternoon. As the U.S. Trustee conducted its entire

review under seal in connection with the Disbandment Motion, the notice is procedurally improper

under the circumstances and violates all concepts of fundamental due process and fair play.

## ARGUMENT

60.    While Section 1102 of the Bankruptcy Code authorizes the U.S. Trustee to appoint

additional committees of equity security holders as the U.S. Trustee deems necessary, the U.S.

Trustee's decisions are subject to review by the bankruptcy court. Moreover, as set forth herein, the

U.S. Trustee conducted its review of its initial appointment of the Equity Committee under seal in

connection with the pending Disbandment Motion. The U.S. Trustee's unilateral disbandment of

the Equity Committee absent any motion to this Court is procedurally improper and a clear abuse of

the U.S. Trustee's discretion. In fact, the filing of the Notice of Disbandment after conducting a

review of the initial appointment under seal in connection with the Disbandment Motion precluded

any third party equity holders and all other interested parties from being heard and from

participating in whatever process the U.S. Trustee conducted. The Court can draw no other

inferences but that the U.S. Trustee abused her discretion as there is no basis for her determination

to disband the Equity Committee.

61.    The Disbandment Motion and related pleadings remain under seal and pending

before this Court. Because the Disbandment Motion was abated at the U.S. Trustee's request so the

review could be conducted in connection with the Disbandment Motion, the proper procedure

requires notice to all interested parties and an opportunity to be heard before this Court before the

Equity Committee can be disbanded.[13] With the interests of approximately 36,000 beneficial

---

[13] The U.S. Trustee cites <u>Richman v. Straley</u>, 48 F.3d 1139 (10th Cir. 1995) and <u>Carlucci v. Doe</u>, 488 U.S. 93 (1988) for the proposition that the power of removal is implicit in the power of appointment unless there is a express statutory provision to limit the removal power. However, in this case, the removal/disbandment was the subject of a pending

(continued...)

shareholders at stake, the unilateral disbandment of the Equity Committee constitutes an abuse of

discretion because it arose, by the U.S. Trustee's admission, out of the pending Disbandment

Motion.

62.    Because of the procedural irregularities which have violated the Equity Committee's

rights with respect to notice, discovery, and an opportunity to be heard, the issuance of the Notice of

Disbandment was arbitrary and capricious and a clear abuse of discretion.[14]   Accordingly, the

Equity Committee requests that the Notice of Disbandment be set aside immediately.

A.    **The U.S. Trustee Abused Its Discretion in Issuing the Notice of Disbandment**

63.    Section 1102(a)(1) of the Bankruptcy Code provides that the U.S. Trustee "may

appoint additional committees of creditors or of equity security holders as the United States trustee

deems appropriate." 11 U.S.C. § 1102(a)(1). See In re Dow Corning, 212 B.R. 258, 264 (E.D.

Mich. 1997). A majority of bankruptcy courts have held that Section 105 of the Bankruptcy Code

permits review of the U.S. Trustee's decisions regarding committee formation and membership for

abuse of discretion. See Bodenstein v. Lentz (In re Mercury Fin. Co.), 240 B.R. 270, 277-78 (N.D.

Ill. 1999) (Section 105(a) "allows the bankruptcy court to review the trustee's decision for an abuse

of discretion"). Indeed, in this case, this Court has held with respect to the Disbandment Motion

that "the proper standard of review is whether appointment of the Equity Committee was arbitrary,

capricious, or otherwise an abuse of discretion based on the information that the United States

_____

(...continued)

motion before this Court. As the U.S. Trustee's actions were conducted in connection with the pending Disbandment
Motion, the U.S. Trustee's power cannot be unlimited.

[14] See In re Parks Jaggers Aero. Co., 129 B.R. 265 (M.D. Fla. 1991) ("a creditors' committee is considered 'a party in
interest' in a bankruptcy case" and may raise and may appear and be heard on any issue in a case). As a party-in-
interest, the Equity Committee's ability to protect its constituency against the U.S. Trustee's unilateral disbandment was
irreparably harmed by the U.S. Trustee's re-consideration of the appointment under seal and without the ability of the
Equity Committee to conduct discovery.

Trustee had before her at the time she made the decision to appoint the Equity Committee."

Summary Judgment Order, p. 6 (emphasis added).

64.    When faced with challenges to committee formation or membership, a majority of

bankruptcy courts have held that they may review the decisions of the U.S. Trustee under Section

105(a) of the Bankruptcy Code under an abuse of discretion standard. In re Mercury Fin. Co., 240

B.R. at 278 (N.D. Ill. 1999); In re Pierce, 237 B.R. 748, 752-53 (Bankr. E.D. Cal. 1999)

("bankruptcy courts do have the ability to review the UST's committee selections, but only if the

actions of the UST are arbitrary or capricious or otherwise constitute an abuse of . . . discretion"); In

re Voluntary Purchasing Groups, Inc., No. 4:96CV296, 1997 WL 155407, *3 (E.D. Tex. Mar. 21,

1997) ("[b]ecause the bankruptcy court is reviewing an administrative task, the Court finds that the

abuse of discretion or 'arbitrary and capricious' standard should be used").

65.    The Mercury Finance court specifically held that:

> The authority to review the trustee's appointments under the abuse of
> discretion standard means that, if this court finds that the Trustee acted
> arbitrarily and capriciously in forming the combined committee, it can
> issue 'any order necessary or appropriate to rectify the situation . . .'

See id. (citations omitted).

66.    In this case, the U.S. Trustee's decision to disband the Equity Committee and the

filing of the Notice of Disbandment is an abuse of the U.S. Trustee's discretion. The U.S. Trustee

abused its discretion by:

- conducting the review under seal in connection with the pending
  Disbandment Motion which is subject to this Court's determination; [15] and

- failing to provide parties-in-interest reasonable notice and opportunity for
  hearing before this Court.

---

[15] No one knows what the U.S. Trustee relied upon as no information other than the Notice of Disbandment have been
made available. However, conversations with the U.S. Trustee suggest financial circumstances were the dominant
consideration to the exclusion of all other applicable factors.

The Disbandment Motion Remains Pending Before This Court

67.    The Disbandment Motion was adjourned at the request of the U.S. Trustee and remains pending before this Court. The U.S. Trustee expressly stated:



U.S. Trustee's Information Request, p. 2.[16] Unilaterally disbanding the Equity Committee under this procedure and these circumstances constitutes a blatant abuse of its discretion.

68.    As the matter is pending before the Court, the appropriate process and procedure is to file a response or joinder to the Disbandment Motion and provide parties-in-interest with reasonable notice and the opportunity to be heard by this Court. This is particularly true because the U.S. Trustee's prior responses to the Disbandment Motion were in support of the appointment of the Equity Committee.[17]

69.    The SEC expressed its concern regarding conducting the review under seal and stated in the SEC Letter ███████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ SEC Letter, p. 2 (emphasis added).[18] A determination regarding the disbandment of an Equity Committee, which equity holders have relied on to protect their interest, must be conducted in the open with the opportunity for equity holders to be heard at hearing before this Court.[19]

---

[16] This portion of the pleading is subject to the Seal Order and has been redacted accordingly. See fn. 6, supra.

[17] See U.S. Trustee's Objections.

[18] This portion of the pleading is subject to the Seal Order and has been redacted accordingly. See fn. 6, supra.

[19] The public filings still do not show the Debtors are hopelessly insolvent. Indeed, the Debtors have advised the Court they are anticipating a plan of reorganization prior to the expiration of exclusivity. See In re Exide Technologies, 2002 U.S. Dist. LEXIS 27210, *6 (D. Del. December 23, 2002) ("appellee presented expert evidence consistent with the expectation that debtors intend to reorganize and not liquidate . . . . Thus, . . . there is evidence of record that the debtor is not hopelessly insolvent").

70.    Moreover, by unilaterally disbanding the Equity Committee in connection with the

Disbandment Motion, the U.S. Trustee has substituted her judgment for this Court's. The

determination to disband the Equity Committee was clearly before this Court pursuant to the

Disbandment Motion. Based on the U.S. Trustee's representations that her review was in

connection with the Disbandment Motion, the Equity Committee fully, and appropriately, expected

that any determination to disband the Equity Committee would be made after reasonable notice and

an opportunity for an evidentiary hearing before this Court on the Disbandment Motion. The U.S.

Trustee's reconsideration of its appointment of the Equity Committee under seal and the issuance of

the unilateral Notice of Disbandment deprives the approximately 36,000 beneficial holders of

Winn-Dixie stock of due process protections provided by the Bankruptcy Code. The U.S. Trustee's

determination of the Disbandment Motion without the notice process and evidentiary protections

provided by a hearing before this Court is a clear abuse of the U.S. Trustee's discretion and nothing

more than a blatant attempt to deprive this Court of jurisdiction over the Disbandment Motion.

The U.S. Trustee Failed to Provide Reasonable Notice and Opportunity for Hearing

71.    The U.S. Trustee's review of its initial appointment decision took place – by the U.S.

Trustee's admission – in connection with the Disbandment Motion and related Seal Order. As such,

the outcome of the review which has apparently resulted in the reversal of the U.S. Trustee's initial

determination and the positions set forth in the U.S. Trustee's Objections filed in response to the

Disbandment Motion have occurred under seal and outside the procedures and protections provided

by the Federal Rules of Bankruptcy Procedure.

72.    The U.S. Trustee cannot use the Disbandment Motion and Seal Order to conduct the

review and then issue the Notice of Disbandment without filing appropriate responsive pleadings

with this Court. As a result of the Disbandment Motion, this Court, not the U.S. Trustee, has

jurisdiction over the determination that the Equity Committee should be disbanded. The U.S.

Trustee cannot unilaterally disband the Equity Committee.

73.    Under Rule 2020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), "a proceeding to contest any act or failure to act by the United States trustee is governed by

Rule 9014." Bankruptcy Rule 9014 provides in relevant part as follows:

> In a contested matter not otherwise governed by these rules, relief shall be
> requested by motion, and reasonable notice and opportunity for hearing
> shall be afforded the party against whom relief is sought.

74.    A motion, the Disbandment Motion, is pending and any action the U.S. Trustee seeks

to take is subject to that motion. As a result, the U.S. Trustee cannot now unilaterally rescind its

decision to appoint an Equity Committee without complying with Bankruptcy Rules 2020 and 9014

and providing the Equity Committee, and other parties-in-interest, a reasonable notice and

opportunity for a hearing before this Court. See In re Parks Jaggers Aero. Co., 129 B.R. 265, 267-

68 (M.D. Fla. 1991) ("[a]s a party in interest, a creditors' committee 'may raise and may appear and

be heard on any issue in a case under . . . chapter [11]'");[20] In re Wedgestone Financial, 152 B.R.

786 (Bankr. D. Mass. 1993) (the court held that the equity committee was a "party in interest" for

purposes of commencing an adversary proceeding despite the dissolution of the committee under

the confirmed plan of reorganization).

75.    The need for reasonable notice and a hearing is even more important in this case

where approximately 36,000 individual shareholders have relied on the U.S. Trustee's appointment

of the Equity Committee to protect their interests in these Bankruptcy Cases. It is these individual

shareholders who are aggrieved parties who deserve notice of the U.S. Trustee's determination,

which was made without their input or knowledge through a review conducted in connection with

---

[20] The Parks Jaggers court held "[a] creditors' committee does not automatically dissolve at the time a chapter 11 reorganization plan is confirmed. Justifiable reasons may exist for it to continue to monitor the debtor's actions." See id. at 268.

the Disbandment Motion under the related Seal Order. The U.S. Trustee's attempt to deprive this

Court of jurisdiction over the Disbandment Motion must fail because it violates procedural due

process and all notions of fair play.

The U.S. Trustee Abused Her Discretion By Failing to Consider All the Factors in Continued
Existence of the Equity Committee

76.    Under Section 1102(a)(1) of the Bankruptcy Code, the U.S. Trustee "may appoint

additional committees of ... equity security holders as the United States trustee deems appropriate."

The Courts have adopted a three-prong standard to determine the need for an equity committee. In

re Johns-Manville Corp., 68 B.R. 155, 159 (S.D.N.Y. 1986); In re Edison Bros. Stores, Inc., 1996

U.S. Dist. LEXIS 13769 (D. Del. 1996). The Edison Brothers Court held:

> courts have considered (1) the number of shareholders, (2) the complexity
> of the case, and (3) whether the cost of the additional committee
> outweighs the concern for adequate representation.    In re Wang
> Laboratories, Inc., 149 B.R. 1 (Bankr. D. Mass. 1992) (citing tripartite test
> of In re Johns-Manville Corp., 68 B.R. 155 (S.D.N.Y. 1986).

See id. at 11.

77.    In this case, the U.S. Trustee after careful consideration of the circumstances of the

case and notice to all parties-in-interest deemed it appropriate to appoint the Equity Committee.

However, in determining that the Equity Committee should be disbanded, based on what little

information has been made known to the Equity Committee, the U.S. Trustee focused too heavily

on the Debtors' financial situation and failed to consider the need for adequate representation of the

equity holders, who have relied on the Equity Committee to protect their interests since the U.S.

Trustee's appointment on August 17, 2005. See In re White Motor Creditor Corp., 27 B.R. 554,

558 (N.D. Ohio 1982) (holding that a debtor's solvency is not a controlling factor in a motion to

appoint or disband an equity committee).



The U.S. Trustee's determination based on the Debtors'

current financials is premature;[22] particularly, where the independent investigation into whether, and

what claims, may be asserted against Winn-Dixie's pre-petition directors, officers, senior

management and third party professionals has not been completed.[23]

---

[21] This portion of the pleading is subject to the Seal Order and has been redacted accordingly. See fn. 6, supra. In depth analysis of a debtor's insolvency by conducting a valuation of the debtor is not necessary in considering a motion to appoint or disband an equity committee but is more appropriately considered at confirmation. See In re Wang Laboratories, Inc., 149 B.R. 1 (Bankr. D. Mass. 1992).

[22] At the December 15, 2005 hearing, Holly Etlin, one of the Debtors' financial advisors, testified:

> For the eight weeks that ended November 16th, which was right before Thanksgiving, the company had positive comp sales chainwide of 2.9 percent, and that's a significant turnaround in the business.

Transcript of December 15, 2005 Hearing Before the Honorable Judge Jerry A. Funk, p. 56. A copy of the relevant portions of the transcript are attached hereto as Exhibit D.

[23] In addition, the financial information reviewed by the U.S. Trustee was approved by the same board of directors which, as the Debtors acknowledge, may be subject to the investigation regarding claims with respect to the Debtors' bankruptcy filings. Moreover, in a press release dated December 8, 2005, Peter Lynch, Winn-Dixie's CEO, stated:

> We are very pleased with the progress we are making. **Although it may not be immediately obvious from our financial reports, we have generally met or exceed our internal performance objectives so far in fiscal 2006.** Clearly, the operational improvements we have been implementing are beginning to pay off, thanks to the dedication and loyalty of our associates and the continued support of our customers and suppliers. To be sure there is still a lot of hard work and challenges ahead for our company, but we believe we are making steady improvement and building momentum.

(emphasis added).

79.     In addition, on or about September 29, 2005, the Debtors expressly acknowledged

that an Equity Committee was necessary to represent the interests of equity holders:



Debtors' Motion for Summary Judgment, ¶ 42 (emphasis added).[24]

80.     As set forth in greater detail below, the U.S. Trustee could not reasonably conclude

that the equity holders were adequately represented where:

- Winn-Dixie has approximately 36,000 beneficial holders of common stock;

- Winn-Dixie's board of directors owe fiduciary duties to parties other than shareholders;

- Winn-Dixie may have claims against it pre-petition directors, officers and senior management and such pre-petition directors remain in control of Winn-Dixie;

- Winn-Dixie's board of directors, officers and senior management have direct ties to the Davis Family, Winn-Dixie's controlling shareholders; and

- the Creditors Committee has economic incentives and interest that are adverse to existing shareholders.[25]

81.     Accordingly, for the reasons stated above, the Notice of Disbandment should be set

aside because it violates fundamental notions of due process and fair play and is arbitrary,

capricious and an abuse of discretion.  Since the U.S. Trustee's appointment of the Equity

---

[24] This portion of the pleading is subject to the Seal Order and has been redacted accordingly. See fn. 6, supra.

[25] Moreover, the Creditors Committee may face significant internal conflicts of its own should the Debtors decide to substantively consolidate the cases.

Committee, Winn-Dixie's shareholders have relied on the Equity Committee to protect their interests during the bankruptcy proceeding, including the plan negotiation process, and should not be denied such representation without a full opportunity to be heard.

**B.    Alternatively, the Court Should Appoint the Equity Committee Pursuant to Section 1102(a)(2) Nunc Pro Tunc to January 11, 2006**

82.    Under Section 1102(a)(2) of the Bankruptcy Code, bankruptcy courts "may order appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." Because of the serious need for an Equity Committee as discussed above, the Equity Committee seeks re-appointment by Court order nunc pro tunc to January 11, 2006.

83.    The Courts have adopted a three-prong standard to determine the need for an equity committee. In re Johns-Manville Corp., 68 B.R. 155, 159 (S.D.N.Y. 1986); In re Edison Bros. Stores, Inc., 1996 U.S. Dist. LEXIS 13769 (D. Del. 1996). The Edison Brothers Court held:

> courts have considered (1) the number of shareholders, (2) the complexity of the case, and (3) whether the cost of the additional committee outweighs the concern for adequate representation. In re Wang Laboratories, Inc., 149 B.R. 1 (Bankr. D. Mass. 1992) (citing tripartite test of In re Johns-Manville Corp., 68 B.R. 155 (S.D.N.Y. 1986).

See id. at 11.

Winn-Dixie's Stock is Widely Held and Publicly Traded

84.    As stated by the Johns-Manville court, "when the debt is widely held [or in this case, equity] official committee representation is usually necessary to ensure that the shareholders are adequately represented." 68 B.R. at 159. See also, In re Baldwin-United Corp., 45 B.R. 375, 376 (Bankr. S.D. Ohio 1983) ("[An equity committee] is necessary to assure adequate representation of the 15,000-plus holders of Baldwin-United common stock"); In re White Motor Credit Corp., 27 B.R. 554, 558 (N.D. Ohio 1982). Here, Winn-Dixie's common stock is held by approximately 36,000 shareholders of record so this factor is easily satisfied.

The Debtors' Cases Are Large and Complex

85.     It is factually undisputed that the Debtors' cases are large and complex. As established by the record, the cases involve twenty-four (24) debtors and the Debtors' have a complex financial structure including an $800 million debtor-in-possession secured financing facility.  In addition, over 10,000 creditors have filed proofs of claim in these cases and there are approximately 36,000 equity holders at the parent level.  See, e.g., In re Beker Industries Corp., 55 B.R. 945, 949 (Bankr. S.D.N.Y. 1985) ("[a] large case brings with it not only a varied debt structure but a complex business requiring significant post-petition financing and heavily negotiated plan").

86.     The appointment of the Equity Committee ensures that equity holders are represented during these bankruptcy proceedings, including participating in plan negotiation.  In large cases such as these, there are many events, including plan negotiation, which impact the value of equity and shareholder rights.  In light of the complexity of the issues in this case, the continued existence of the Equity Committee is necessary to ensure adequate representation and meaningful participation in the plan negotiations on a level playing field with the Debtor and the other parties.[26] Shareholders should not be left without representation during these critical events.  See id. (noting that the complexity of the case is an important factor in justifying the appointment of an equity committee).

---

[26] Indeed, at the December 15, 2005 hearing, it became apparent that the Debtors and the Debtors' professionals had conducted numerous discussions with the Creditors Committee regarding the structure of a proposed plan reorganization.  The disclosures prompted the Court to state:

> I think the equity committee is a committee, and they're valid, and they've got financial advisors and legal advisors and, as long [as] they're there, they need to be included in the loop, and we don't need to have any litigation and request for production and discovery situation here.  They just sidetrack things.

Transcript of December 15, 2005 Hearing Before the Honorable Jerry A. Funk, U.S. Bankruptcy Court Judge, p. 105. Despite the statements on the record and the requests from the Equity Committee's professionals, the Debtors have not provided the Equity Committee with any information regarding the structure of a proposed plan of reorganization.  The Debtors' refusal to negotiate with the Equity Committee only highlights the necessity of an official committee to adequately represent the interests of all shareholders.

87.    The Debtors and the Creditors Committee should not be permitted to negotiate and proceed to confirmation in this case without an official equity committee. To allow this to happen would in effect allow the wolf to guard the hen house and is truly tantamount to giving the Creditors Committee a premature economic cram-down plan which eliminates the equity holders by denying them representation. It is even more egregious to allow the Equity Committee to be eliminated when viable claims against those responsible for the bankruptcy filings have not been investigated and the investigation irreparably undermined because of the Notice of Disbandment.[27]

The Need for Adequate Representation Far Outweighs the Cost of an Official Committee

88.    The cost of an official committee is far outweighed by the large number of shareholders, the complexity of this case and the need for adequate representation of the interests of the equity holders. As established by the record in this case, the Equity Committee is necessary to ensure that equity holders are adequately represented during these proceedings. The need for adequate representation of the shareholders is paramount in this case where:

- Winn-Dixie's board of directors owe fiduciary duties to parties other than shareholders;

- Winn-Dixie's board of directors, officers and senior management have direct ties to the Davis Family, Winn-Dixie's controlling shareholders;

- Winn-Dixie may have claims against its pre-petition directors, officers and senior management and such parties remain in control of Winn-Dixie;

- the Creditors Committee has an economic incentive that is adverse to existing shareholders; and

- there are no other parties to represent the approximately 36,000 equity holders of Winn-Dixie.

---

[27] Specifically, it provides Winn-Dixie's pre-petition board of directors and controlling shareholder the opportunity to negotiate their own releases without equity holders being represented.

89.    In this case, Winn-Dixie's board of directors owes fiduciary duties to parties other
than the shareholders and as a result cannot represent shareholders from a fiduciary standpoint. <u>See</u>
<u>CFTC v. Weintraub</u>, 471 U.S. 343, 355 (1985).

90.    As set forth in the Motion to Appoint an Examiner, Winn-Dixie's board of directors
lack independence and failed to investigate the actions, or inactions, which caused or contributed
the bankruptcy filings.  The lack of independence of the board of directors underscores the need of
an Equity Committee to adequately represent the shareholders and the need for the immediate
appointment of an independent examiner.

91.    It is critical that an Equity Committee be appointed to negotiate on behalf of all
equity holders and to ensure that Winn-Dixie does not waive or release in connection with a plan of
reorganization any potential claims against Winn-Dixie's pre-petition directors, officers, senior
management or third party professionals.  As set forth in the Motion to Appoint an Examiner, the
Areas of Investigation clearly identify areas where interests of the equity holders require protection.

92.    In this case, it cannot be disputed that shareholders' interests are not protected by the
Creditors Committee.  Specifically, the Creditors Committee has economic interests that are adverse
to existing shareholders.  The parties are competing for the same pot of value – mainly the new
equity in the reorganized Debtors.  The divergent interests of the Creditors Committee is clearly
evident in its opposition to the appointment of an Equity Committee in this case.

93.    The Equity Committee is necessary in this case because there are few, if any,
institutional investors to represent all the equity holders.  Indeed, institutional shareholders do not
have fiduciary obligations to represent all shareholders; accordingly, such large shareholders cannot
be assumed to adequately represent the interests of all shareholders.  The <u>Beker Industries</u> court
held that "[t]he position that some members of the class may have resources sufficient to protect
their interests is of little significance, in our judgment, at least where the security is widely held."

In re Beker Industries Corp., 55 B.R. 945, 949. In this case, only one (1) of the members of the Equity Committee is an institutional investor. The other members of the Equity Committee are more representative of Winn-Dixie's approximately 36,000 individual shareholders who in the absence of the Equity Committee will have no representation in this case.

94.    Moreover, it is clear that the Debtors and the Creditors Committee intend to move forward with negotiations of a plan of reorganization. The Debtors have announced their intent to file a proposed plan of reorganization on or before March 20, 2006. The Debtors and the Creditors Committee should not be permitted to negotiate and proceed to confirmation in this case without an official equity committee particularly where viable claims against those responsible for the bankruptcy filings have not been investigated and the investigation irreparably undermined because of the Notice of Disbandment. Every day that passes without an official Equity Committee immediately and irreparably harms the approximately 36,000 equity holders of Winn-Dixie who have relied on the Equity Committee to pursue their interests during the plan negotiation process and the bankruptcy proceeding.

## **REQUEST FOR RELIEF**

95.    As set forth in the SEC Letter, the Equity Committee ████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████ SEC Letter, p. 3.[28]  In this case, where the directors lack independence and the Creditors Committee is openly adverse to the interests of equity holders, the Equity Committee should be reappointed nunc pro tunc to January 11, 2006.

96.    Accordingly, the Equity Committee hereby moves this Court to:

a)    immediately set aside the Notice of Disbandment and reinstate the Equity Committee because the U.S. Trustee abused its discretion in issuing the

---

[28] This portion of the pleading is subject to the Seal Order and has been redacted accordingly. See fn. 6, supra.

Notice of Disbandment which improperly deprived this Court of jurisdiction over the pending but abated Disbandment Motion pursuant to which the U.S. Trustee conducted its review of its initial appointment;

b)    require the U.S. Trustee, to the extent the U.S. Trustee believes that disbandment is appropriate, to file appropriate pleadings with the Court seeking to disband the Equity Committee so that all interested parties will receive notice, opportunity to conduct discovery and be heard at a hearing before this Court;

c)    appoint an equity committee nunc pro tunc to January 11, 2005 pursuant to Section 1102(a)(2); and

d)    grant such other and further relief as the Court deems just and necessary.

[signature on next page]

Respectfully submitted this 17th day of January, 2006.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

*Karol K Denniston*

Karol K. Denniston
Ga. Bar No. 218333
Carolyn (Keri) Chayavadhanangkur
Ga. Bar No. 122152
600 Peachtree Street, Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400
karolkdenniston@paulhastings.com
carolynchayavadhanangkur@paulhastings.com

And

PAUL, HASTINGS, JANOFSKY & WALKER LLP
James D. Wareham
DC Bar No. 411799
875 15th Street
Washington, DC  20005
Telephone: (202) 551-17000
jameswareham@paulhastings.com

And

JENNIS & BOWEN, P.L.

/s/Chad S. Bowen
David Jennis
Fla. Bar No. 775940
Chad S. Bowen
Fla. Bar No. 0138290
400 North Ashley Drive, Suite 2540
Tampa, FL 33602
Telephone: (813) 229-1700
djennis@jennisbowen.com
cbowen@jennisbowen.com

***Co-Counsel for the Official Committee of Equity Holders***