C-1

# LEASE

THIS LEASE, made this **1st** day of **May**, 19 **90**

between    **SOUTHERN CENTERS ASSOCIATES, INC., a Florida**

**General Partnership (United Land Development**

**Corporation, a Florida corporation, and RANDALL**

**KELLA, Partners)** ("Landlord")

and    **WINN-DIXIE STORES, INC., a Florida corporation**

_____ ("Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or

plural, and the heirs, legal representatives, successors and assigns of the respective parties;

**PREMISES**

WITNESSETH

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and demise unto

Tenant and the Tenant hereby agrees to take and lease from the Landlord, for the term hereinafter specified,

the following described premises.

That certain store building, approximately **199** feet in width by **190'8"(irregular)**

feet in depth, **together with front vestibule, rear receiving room**

**and exterior concrete pads for the installation of Tenant's**

**exterior coolers and/or freezers for a total of 41,485 sq. ft.**

and the land on which the same shall stand (hereinafter collectively called "demised premises"),

which store building and related improvements are to be constructed by the Landlord according

to plans and specifications to be approved by the parties as herein provided, and shall be in

the location and of the dimensions as outlined in red on the Plot Plan **"Galt Ocean**

**Mile Mixed Use – Commercial Development Center", prepared**

**by Vander Ploeg and Associates, Inc., Boca Raton, Florida,**
**dated March 6, 1990**
attached hereto marked Exhibit "A" and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in detail on

Exhibit "A"), known as _____

("shopping center"), located **southerly of N.E. 41st Street, between**

**A1A and Galt Ocean Drive**

in the City of **Ft. Lauderdale**, County of **Broward**,

State of **Florida**, the legal description of the shopping center being set

forth on Exhibit "B" attached hereto and by this reference made a part hereof.

APPROVED
AS TO ____
____
Legal Dept
Winn Dixie Stores,
Inc

This instrument was prepared by
Charles P. Milford, Jr., Attorney
at Law whose address is P. O.
Box B, Jacksonville, Florida 32203

WD-32-36 (Rev. 3/89)


EXHIBIT
"A"

SC-2

**TERM**  FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens the demised premises for the transaction of its business for an initial term of ___twenty (20)___ years from the commencement date. The parties agree to execute a supplemental agreement documenting the commencement date.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

**RENTAL**  1  The Tenant agrees to pay to the Landlord as minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of  __Two Hundred Ninety___

__Thousand Three Hundred Ninety-Five___   and No/100

Dollars ($_290,395.00_____) per annum  The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of  __Twenty-Four Thousand One Hundred Ninety-Nine___

__and 58 /100--------------------------------------------___

Dollars ($_24,199.58_____) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof

In addition, the Tenant agrees to pay the Landlord a percentage rental equal to the amount, if any, by which___---one---___ per cent ( __---1---__ %) of Tenant's gross sales made from the demised premises in each fiscal year of Tenant during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of the percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold  The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculation of the percentage rental due hereunder, the Tenant's fiscal year shall be approximately July 1st to June 30th of each year  The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

**DEFINITION OF "GROSS SALES"**  1a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold in or from the demised premises, both for cash and on credit  Such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency, (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged, (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines, banks and public telephones; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, lottery entries, money orders, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program  Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF SALES**

1b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address designated for notices  At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year  Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

**USE**

2. The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, or for the conduct of any mercantile, retail or service business (including discount businesses)

Tenant shall be prohibited from placing merchandise price signs in the windows of the demised premises which would be visible from the street. Tenant may not operate or have operated in its demised premises a pharmacy so long as that certain Covenant dated May 13, 1987 by Southern Centers Associates recorded under Clerk's recording number 87-217306 in the Public Records of Broward County, Florida is in effect.

Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of the premises, as such shall relate to the cleanliness and use of the premises and the character and manner of operation of the business conducted in or at the premises

C-4

**CONSTRUCTION** **3.** The Landlord, at its sole cost and expense, shall construct the shopping center, substantially as shown
**OF SHOPPING** on Exhibit "A", consisting of all the buildings shown thereon, together with all ramps, sidewalks, streets,
**CENTER** entranceways, malls, parking areas, service areas, driveways, utility lines, water detention and retention
facilities and related improvements, such improvements (excluding buildings) being sometimes hereinafter
referred to as "common areas". The Landlord, at its sole cost and expense, shall grade and surface with
top quality materials all paved portions of the common areas (including parking area), and shall provide
proper and adequate water drainage and lighting system and operations therefor and shall operate and
maintain the same in good repair and usable condition for use by the patrons of the shopping center and
the tenants and their employees during the term of this lease and any extensions thereof. The arrangement
and location of all store buildings and common areas (including parking area) within the shopping center
shall at all times during the term of this lease, or any extensions thereof, be as shown on Exhibit "A"
and shall not be changed without the written consent of the Tenant. The exterior of the shopping
center (including any store buildings and the demised premises) shall not be materially modified without
Tenant's prior written consent. If not shown on Exhibit "A", Tenant expressly reserves the right to approve
the finish grade elevations of all store buildings and common areas (including parking and service areas)
within the shopping center which are to be constructed concurrently with Tenant's store building.

    Concurrently with the above construction, Landlord agrees at its sole cost and expense, to construct
the store building for occupancy by Tenant in accordance with the plans and specifications to be approved
by both Landlord and Tenant. Plans and specifications shall be approved when initialed by both parties,
and when initialed shall constitute a part of this lease. The plans and specifications shall provide for a
completed store building, commonly referred to as a "lock and key job."

**COMPLETION** **4.** Landlord covenants and agrees that the construction of the shopping center shall begin not later
**DATE** than _____ May 30, 1991 _____ and shall be completed not later than
_____ May 30, 1992 _____; and if the same shall not be begun or
completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and ter-
minate this lease or may extend the Landlord additional time for the beginning or completion of construc-
tion; provided, however, that if after the beginning of construction the Landlord's failure to complete the
improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay
of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are
beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence
commensurate with such delay and in all events not later than _____ August 30, 1992 _____
(the "outside completion date"), this option to terminate shall not arise. "Construction of the shopping
center" shall be deemed to have begun when the first concrete footings have been poured. If pursuant
to this paragraph Tenant shall cancel or terminate this lease or if Landlord fails to commence or complete
construction of the shopping center by the above dates, Landlord agrees that for a period of
three (3) years after such failure or cancellation or termination, Tenant
shall have first refusal right to operate a supermarket in the shopping center
upon the same terms and for the same rents as may have been offered Landlord
by another supermarket operator.

SC-5

**COMMENCE-MENT DATE**

5. The Tenant shall open its store for business within sixty (60) days following performance of the following:

(a) Tenant's store building and other improvements constructed on the premises shall have been delivered to Tenant completed in accordance with the plans and specifications, and Landlord shall have delivered to Tenant, at Landlord's expense, a Certificate of Occupancy or equivalent document for the demised store building,

(b) Construction of all of the common areas shall have been completed substantially as shown on Exhibit "A",

(c) All drives, entrances, median cuts, acceleration and deceleration lanes and traffic control devices shown on Exhibit "A" in or connecting the common areas to the adjacent rights-of-way shall have been installed and opened for use by vehicular traffic

(d) Construction of at least ____230____ lineal feet of store frontage and ____15,800____ sq ft of total building area (excluding Tenant's store building) shall have been completed as shown on Exhibit "A",

(e) The stores to be operated by each of the following tenants shall have been completed and opened for business simultaneously with Tenant.    NONE

In the event that all the above requirements shall not have been met on or prior to the outside completion date, the Tenant at its sole option may cancel and terminate this lease.

Rent shall begin to accrue hereunder upon the date the Tenant opens its store for business, or upon the expiration of sixty (60) days following the performance of all the above requirements, whichever date shall sooner occur  No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications

Notwithstanding the other provisions of Articles 4 and 5 hereof, Landlord agrees that if for any reason the requirements of Article 5 are met by Landlord on or after December 1 of any year and on or before January 31 of the succeeding year, Tenant shall not be required to open its store for business and rent shall not begin to accrue until the later of February 1 of the succeeding year, or 30 days after the requirements of Article 5 are met, unless Tenant actually opens its store for business sooner.

**OTHER TENANTS**

6. As a condition and inducement to Tenant's entering into this lease, Landlord represents and warrants that it has entered into firm commitments for leases with the tenants listed below for the terms and for the amount of floor space indicated.

| Name | Minimum Term Years | Minimum Floor Area (sq. ft.) |
|------|--------------------|------------------------------|
| NONE |                    |                              |

Landlord further warrants and represents that such tenants shall occupy the space in the shopping center in the locations indicated on Exhibit "A" and in the minimum amounts set opposite their respective names above; and Landlord agrees, on demand, to furnish evidence satisfactory to Tenant, prior to and as a further condition to the establishment of the commencement date of this lease, that Landlord has entered into non-cancellable leases, except for default, with such tenants.

SC-6

**RETAIL AND SERVICE STORES ONLY**

7. Without the prior written consent of Tenant herein only retail and/or service stores shall be allowed to operate in the shopping center, or any enlargement thereof, it being the intent of the parties hereto that no spa, ▇▇▇▇▇ "teen lounge", bowling alley, skating rink, bingo or electronic or other game parlor, theatre (either motion picture or legitimate), ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, sales of automobiles, or health, recreational or entertainment-type activities, non-retail or non-service type activities, shall be permitted.

15,000 square feet of business or professional offices shall be allowed in the center providing that none of the same is located closer than 275 feet to the nearest point of Tenant's demised premises.

It is further agreed that a cocktail lounge and/or bar shall be allowed in the center provided that the same is located no closer than 350 feet from the nearest point of Tenant's demised premises.

**PARKING AND COMMON AREAS**

8. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees, a non-exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common areas, as defined in Article 3 hereof and as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks. Tenant may use the sidewalks adjacent to the demised premises or exterior surfaces of its building for the display and sale of merchandise and services, subject to applicable deed restrictions and governmental laws and regulations.

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide:

(a) a minimum ratio of at least ___3.1___ automobile parking spaces for each 1,000 sq. ft of gross building area (including additional floor levels) in the shopping center, and

(b) facilities for convenient parking of at least ___130___ automobiles (minimum);

and in the event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, the Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination. All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during Tenant's food store shopping hours, and Landlord further agrees that no signboards or other construction shall be erected in any of the said common areas shown on Exhibit "A" or so as to obstruct the view of the demised premises from the adjoining public streets. Without prior written consent of Tenant herein, no carnivals, fairs or shows nor sales by merchants utilizing vehicles or booths in the common areas shall be allowed in the shopping center, or any enlargement thereof.

**SERVICE AREA**

9. Landlord agrees to provide for the exclusive use of the Tenant at its service entrances parking spaces for two large trailer trucks for continuous use. Landlord further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such spaces as may be reasonably needed by Tenant for refuse disposal and for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances, subject to applicable deed restrictions and governmental laws and regulations.

SC-7

**UTILITIES**   10. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities and services used by Tenant at the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities. Tenant shall not be responsible for any charges for the fire alarm system, static or flowing water to supply the fire sprinkler system, or any "hook up" fees or other charges incident to providing access to any utility.

**TENANT'S**   11. Upon completion of construction by Landlord and acceptance of the demised premises by Tenant,
**REPAIRS**   Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire or the elements or other casualty covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear.

Within the repair and maintenance responsibilities of Tenant shall be included: automatic doors, heating and air conditioning systems and equipment, floor surfacing and the replacement of windows and plate glass (except for damage which is caused by faulty construction or settling of the building or such as is covered by Landlord's fire and extended coverage insurance, which shall be Landlord's responsibility). Landlord shall accord to Tenant the benefit of any and all warranties extended by the manufacturers or installers of such items of equipment for which Tenant has repair and maintenance responsibility.

**LANDLORD'S**   12. The Landlord shall, at its cost and expense, keep and maintain, in good condition and repair, the com-
**REPAIRS**   mon areas, the exterior of Tenant's store building, including the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, roof, gutter, downspouts, exterior painting, masonry walls, foundation and structural members, the automatic sprinkler system (including central alarm system therefor, if required by governmental authority), the plumbing (including septic tank, if any), wiring, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ of the store building in good condition and repair, and shall make any and all structural repairs to both the *exterior and interior of said premises. If any portion of the common areas (as defined in Article 3 hereof) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that the Landlord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements, or other casualty covered by Landlord's fire and extended coverage insurance* (and see Article 11 above).

If in order to protect persons or property it shall be necessary to make emergency repairs which are the responsibility of the Landlord, or if the Landlord after receipt of notice as above provided fails or neglects to make with all due diligence such other repairs to the store building or common areas, as defined in Article 3 hereof, which are the responsibility of the Landlord, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs. Landlord further covenants that the store building (excluding any improvements built by Tenant) will be so constructed and maintained at all times so as structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that the premises may conform to such ordinances, statutes, rules or regulations now in force or which may be hereafter passed, adopted or promulgated.

**SIGNS**    13. Tenant may place, erect and maintain any signs on the roof, walls, and any other places on or about the demised premises, which signs shall remain the property of Tenant and may be removed at any time during the term of this lease, or any extension thereof, provided Tenant shall repair or reimburse Landlord for the cost of any damage to the demised premises resulting from the installation or removal of such signs

Landlord agrees that Tenant, at its cost, may elect to install its own pylon sign so long as Tenant does not unreasonably interfere with the construction work on the shopping center being performed at the instance of Landlord in the shopping center in the location labeled "W-D pylon sign" on Exhibit "A" and shall be permitted to install suitable electrical underground conduit and wiring extending from Tenant's demised store building to the pylon site. However, Tenant agrees that the construction and design of its pylon sign shall be in accordance with all applicable ordinances, regulations and laws, subject to applicable deed restrictions and governmental laws and regulations.

**FIXTURES AND ALTERATIONS**    14. The Tenant, at its own expense, shall have the right from time to time during the term of this lease to make any interior or exterior alterations, additions and improvements, including doors and partitions, in and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good, workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. This right of Tenant shall include the erection of interior partitions and the installation of additional front and rear doors. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease

Tenant may construct and build or install in the premises any and all racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from the premises at any time, provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to the premises resulting from the installation or removal of such items.

**INDEMNIFI-CATION**    15 Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises. Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss (including costs of investigation, court costs and reasonable attorneys' fees) by reason of an accident or damage to any person or property happening on or about all common areas (as defined in Article 3 hereof) of the shopping center, and Landlord further agrees to carry, at its expense, comprehensive general liability insurance coverage with Tenant named as an additional insured on all common areas (as defined in Article 3 hereof) of the shopping center, in a company qualified to transact business in the state where the premises are located, stipulating limits of liability of not less than $2,000,000.00. Certificate of such coverage from the insurer providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant.

and trash areas
**CLEANLINESS**    16. Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the delivery areas at the rear of the building reasonably clean and free from rubbish and dirt Tenant will not make or suffer any waste of the demised premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit the Landlord or its agent at all reasonable times to enter upon the premises for the purpose of making repairs and for examining or showing the same to prospective purchasers.

during the last twelve (12) months of the term
of the Lease.

**FIRE**

17. In the event that Tenant's demised premises shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, then Tenant may elect within thirty (30) days after such damage, to terminate this lease by giving to the Landlord a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease. If Tenant's demised premises shall thereby suffer damage to any extent less than 75% of the value thereof, or if Tenant does not elect to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored. If at any time during the term of this lease or any extensions thereof any of the buildings in the shopping center, exclusive of Tenant's demised premises, are damaged by fire or by the elements or otherwise, Landlord shall immediately commence and diligently prosecute to completion repair of all such damage and shall restore said improvements to their condition prior to such damage.

Landlord shall carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant and on all other buildings within the shopping center in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees; and Tenant hereby expressly waives any and all claims against the Landlord for loss or damage to Tenant's merchandise, fixtures and equipment due to fire, explosion, windstorm or other casualty covered by standard fire and extended insurance policies, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Landlord, its agents, servants or employees.

**QUIET ENJOYMENT**

18. The Landlord covenants, warrants and represents that upon commencement of the lease term, the shopping center, including the demised premises, will be free and clear of all liens and encumbrances superior to the leasehold hereby created (except for existing mortgages as evidenced by Landlord's title insurance policy, a copy of which Landlord will deliver to Tenant as a condition of this Lease), that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

The Landlord warrants the non-existence of any food supermarket zoning or other restriction preventing or restricting use of the demised premises for the conduct of a ~~mercantile, retail or service business~~ or use of common areas for parking purposes, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting Tenant from conducting a mercantile, retail or service business or using the common areas (as defined in Article 3 hereof) in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

SC-10

**TAXES AND LIENS**

19. All taxes, assessments and charges on land or improvements and obligations secured by mortgage or other lien upon the demised premises or the shopping center shall be promptly paid by the Landlord prior to delinquency. The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the demised premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the demised premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at the maximum rate allowed by law

(exercisable within ninety (90) days after such taking),

**CONDEM-NATION**

20. If any part of the demised premises or more than twenty per cent (20%) of the buildings, exclusive of Tenant's building, within the shopping center, be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease, the Landlord shall immediately commence and diligently prosecute to completion the repair and restoration of the improvements, including Tenant's store building, within the shopping center to a condition comparable to their condition at the time of taking and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances

In the event that any portion of the common areas (including parking area and access thereto) designated as such on Exhibit "A", be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, so as to materially or substantially interfere with the conduct of Tenant's business in the demised premises, or so as to reduce the required parking area by an amount in excess of --ten----- per cent ( 10 %) or reduce the number of cars which may be conveniently parked to less than____117____, the Tenant may, at its option, terminate this lease and shall be liable for rent only up to the time of such taking

**DEFAULT**

21. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom, but Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default

**BANKRUPTCY** 22  The Tenant further covenants and agrees that if, at any time, Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease agreement at an end and shall forthwith be entitled to immediate possession of the said premises

**CONSTRUCTION RISKS** 23.  Nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing the improvements, and the Landlord shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the Tenant's store building for the causes herein stated and to request change orders to be paid by Tenant. The Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their sub-contractors, employees, agents or servants by reason of Landlord's constructing the improvements pursuant to the terms of this lease Landlord shall indemnify Tenant and save Tenant harmless from and against. all mechanics', materialmen's, sub-contractors' and similar liens, all claims and suits for damage to persons or property from defects in material or from the use of unskilled labor, or from any negligence caused by Landlord, Landlord's contractors, sub-contractors or by any of their employees, agents or servants during the progress of the work in constructing the improvements or from any faulty construction thereof.    Likewise, Tenant shall indemnify Landlord and save it harmless from and against: all mechanics', materialmen's, sub-contractors' and similar liens; all claims and suits for damage to persons or property for defects in material or from the use of any unskilled labor; or from any negligence caused by Tenant, its contractors, sub-contractors or by any of their employees, agents or servants during the process of any work in constructing leasehold improvements at the instance of Tenant or from any faulty construction of any leasehold improvements made by or at the instance of Tenant.

**NOTICES** 24  All notices required to be given to Landlord hereunder shall be sent by registered or certified mail

or delivery service with receipt to, and all rent payments shall be made to Landlord at _____

3701 Galt Ocean Drive

Ft. Lauderdale, FL  33308

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail or delivery service with receipt.

All notices required to be given to Tenant shall be sent by registered or certified mail to Tenant at

1141 S.W. 12th Avenue

Pompano, FL   33069

or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail or delivery service with receipt

**END OF TENANCY** 25  The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenant-able condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct It is understood, however, that Tenant shall not be required to restore the demised premises to their original state Any holding over by Tenant of the demised premises after the expiration of the term of this lease, or any extensions thereof, shall operate and be construed as a tenancy from month to month only at the same rentals reserved herein and upon the same terms and conditions as contained in this lease. Tenant agrees to repair, at its cost, any damage to the demised premises resulting from removal of Tenant's fixtures and equipment.

**ASSIGNMENT AND SUBLEASING** 26  The Tenant may without the consent of the Landlord assign this lease, or sublease or vacate the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease

In the event Tenant shall vacate the entire demised premises or cease *selling merchandise therein for in excess of a period of six* (6) months, while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant), Landlord shall have the continuing option thereafter for a period of sixty (60) days (unless Tenant shall have reoccupied the premises) to terminate and cancel this lease upon fifteen (15) days' written notice to Tenant of its election so to do, unless within such fifteen (15) day period Tenant shall advise Landlord that Tenant had prior to receipt of such notice in good faith committed to assign this lease or sublease the demised premises to a third party for occupancy within two (2) months.

**EXTENSIONS** 27  It is further agreed that Tenant, at its option, shall be entitled to the privilege of _____.

five _____ ( -5- ) successive extensions of this lease, each extension to be for a period of five _____ (-5- ) years and at the same rentals and upon the same terms and conditions as required herein for the initial term

Such option privilege may be exercised by Tenant giving to the Landlord a notice in writing at least
six (6) months _____ before the expiration of the initial term, and if extended, at least___six (6) months_____ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document

Landlord shall send to Tenant a written reminder notice concerning the expiration of the initial term or of an option term, such reminder to be sent not less than eight (8) months prior to expiration.  If Landlord fails to render such notice, the sole effect shall be that Tenant shall have a continuing right to renew this Lease as *hereinabove* provided at any time up to sixty (60) days prior to the expiration date.

**EXCLUSIVE** 28.  Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket
**SUPERMARKET** in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant, and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant; except the sale of such items in not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared, ready-to-eat food items, for consumption either on or off the premises, shall not be deemed a violation hereof. With the exception of package stores, only Tenant may sell beer and wine in the shopping center for off-premises consumption  Only Tenant may operate a bakery, delicatessen or similar department in the shopping center

Notwithstanding the foregoing, the following facilities shall be allowed to operate in the shopping center: (1) a deli-restaurant provided the *same is* no larger than 6,400 square feet and located no closer than 275 feet from the nearest point of Tenant's demised premises; (2) one ice cream parlor provided the same is no larger than 2,000 square feet; (3) one bakery provided the same is no larger than 2,000 square feet; and (4) one wine and cheese shop provided the same is no larger than 2,000 square feet.

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name and address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provisions herein to the contrary, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of the terms of this exclusive provision as to property located within 1000 feet of any exterior boundary of the shopping center, but nothing herein shall deprive Tenant of any rights of recourse against Landlord, its successors and assigns, by way of suit for damages or injunctive relief, or as otherwise provided by law, in the event of any such violation. If the holder of such first mortgage should succeed to ownership of the demised premises by virtue of foreclosure or transfer of title thereto in lieu of such foreclosure or otherwise, in such event the terms of this exclusive provision shall apply to the holder of such first mortgage as owner-landlord only with respect to the land which was formerly encumbered by the lien of said first mortgage. For the purposes hereof, the term "first mortgage" shall include any first security instrument.

**SUBORDINATE** 29. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord, and Tenant agrees, upon demand, without cost, to execute any instrument (in a form acceptable to Tenant) as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge *the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed*, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the purchaser at such foreclosure sale shall be bound to Tenant for the term of this lease, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

**NOTICE TO LENDER** 30. Tenant agrees that it will give notice to any holder of a first mortgage (which term shall include all security instruments) encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate this lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate this lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period, provided, however, the Tenant shall not be required to deliver such notice to the mortgage holder or to extend to it an opportunity to perform in respect of emergency repairs which Tenant is permitted to make under the provisions of Article 12 of this lease.

**COMMON AREA MAINTENANCE** 31. Landlord agrees to operate and maintain in good condition and repair all the common areas, as defined in Article 3 hereof, and provide therefor all such services as are reasonably required, including, but without limitation, ▬▬▬▬▬▬, cleaning and sweeping at least three (3) times weekly, lighting, snow and ice removal if necessary, general repair and maintenance of all paved surfaces, repainting of parking area striping, and watering and maintenance of landscaped areas. If the Landlord, after fifteen (15) days following receipt of written notice from Tenant to do so, shall fail to make the repairs or perform the services described in this Article, the Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred therein

For such services, Tenant shall pay to the Landlord as additional rental hereunder and as reimbursement for the annual cost thereof, the amount of Tenant's pro-rata share thereof, computed in the proportion which the square footage of Tenant's store building bears to the total square footage of all buildings (including additional floor levels) existing in the shopping center from time to time, provided, however, such amount in no event shall exceed $31,113.75 per year.   Such amount shall be payable in twelve (12) equal monthly installments of $2,592.81, payable at the same time that rentals are required to be paid under Article 1 of this Lease.  Landlord agrees, within ninety (90) days after the end of each calendar year of the term of this Lease, to deliver to Tenant a true and accurate listing (to include copies of supporting invoices and statements) of such expenses allocable for all such items for the immediately preceding calendar year and Landlord's calculations showing Tenant's pro-rata share thereof.  If the amount so paid to Tenant by Landlord for such immediate preceding calendar year is not exactly the same as Tenant's pro-share of the amount of such expenses, then Landlord or Tenant shall, within thirty (30) days after such determination is made, pay to the other the amount so owing.  Should Landlord not make refund to Tenant of its excess contributions (if applicable), then Tenant may deduct the amount of such overage contributions from its estimated payments under this Article 31 in the future.  It is understood that Tenant shall not reimburse Landlord for any expense not reasonably connected with the necessary maintenance and repair of the shopping center common areas.  Examples of expenses for which Tenant shall not make reimbursement are rental insurance premiums, shopping center management fees and administrative costs.  Tenant shall not be required to make any payments in the future for these expenses upon Landlord's failure to supply the listings above described to Tenant within ninety (90) days after the end of any calendar year of the lease term.

During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of the premiums for Landlord's fire and extended coverage insurance allocable to the demised premises.  If such premiums shall not be billed separately upon Tenant's demised store premises the same shall be fairly apportioned to determine Tenant's share thereof.  Such apportionment shall be made in the ratio which the square footage of the ground floor of Tenant's store building bears to the total square footage of the ground floor of all buildings from time to time existing in the shopping center.  The amount of premiums for which Tenant is to reimburse Landlord shall be less any available abatements, discounts or refunds thereon.  Landlord shall at all times use its earnest and best efforts to obtain such fire and extended coverage insurance at the most reasonable rates available  Tenant shall be entitled to receive from the Landlord copies of the statements for such insurance premiums.  Notwithstanding the above, it is agreed that Tenant's obligations to make the payments herein described is expressly conditioned upon receipt from Landlord of the written invoice for such insurance premiums no later than six (6) months after the due date thereof.  Further, Tenant shall not be required to make the payments herein described unless and until Tenant is furnished with photocopies of the applicable insurance policy to include the declaration page.

During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of the premiums for Landlord's liability insurance above described.  Tenant shall be responsible for its pro-rata share of such premiums, Tenant's pro-rata share to be an apportionment made in the ratio which the square footage of the ground floor of Tenant's store building bears to the total square footage of the ground floor of all buildings from time to time existing in the shopping center.  The amount of premiums for which Tenant is to reimburse Landlord shall be less any available abatements, discounts or refunds thereon.  Landlord shall at all times use its best and earnest efforts to obtain such coverage at the most reasonable rates available.  Tenant shall be entitled to receive from the Landlord copies of the statements for such insurance premiums.  Notwith-standing the above, it is agreed that Tenant's obligations to make the payments herein described is expressly conditioned upon receipt from Landlord of the written invoice for such insurance premiums no later than six (6) months after the due date thereof.  Further, Tenant shall not be required to make the payments herein described unless and until Tenant is furnished with photocopies of the applicable insurance policy to include the declaration page

However, the amounts paid by Tenant in respect of Landlord's insurance premiums, as above set forth, in no event shall exceed the sum of $10,371.00 per year.

**BENEFIT**      32  This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto  Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

TANSFER BY 33. In the event Landlord transfers Landlord's interest in this lease, Landlord agrees to promptly provide
LANDLORD Tenant with documentary evidence, satisfactory to Tenant, of such transfer of Landlord's interest in this lease

SHORT 34. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease
FORM in form permitting its recording
LEASE

MARGINAL 35. The marginal titles appearing in this lease are for reference only and shall not be considered as part
TITLES of this lease or in any way to modify, amend or affect the provisions thereof.

COMPLETE 36. This written lease contains the complete agreement of the parties with reference to the leasing of the
AGREEMENT demised premises, except plans and specifications for Tenant's store and related improvements to be for-
mally approved by the parties prior to the effective date of this lease  No waiver of any breach of covenant
herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

REAL 37.    During the term of this lease and any extensions thereof, Tenant agrees
ESTATE to pay  to Landlord as  additional rental the amount of ad valorem real estate
TAXES taxes levied against the demised premises.   Tenant shall be responsible only
for its pro-rata share of such taxes for fractional years occurring at the
expiration of the term of this lease and any extensions thereof.

If such taxes shall not be assessed separately, but shall be included
within an assessment of the demised premises and others, said assessments
shall be fairly apportioned to determine Tenant's share thereof.   Such
apportionment shall be made in the ratio which the square footage of Tenant's
store building bears to the total square footage of all store buildings
(including additional floor levels) from time to time existing in the shopping
center.   The amount of taxes attributable to the shopping center, and for
which Tenant is to reimburse Landlord in part, shall be less any abatements,
discounts or refunds thereon.   Upon request of Tenant, Landlord agrees to
exhibit to Tenant the paid tax statements as evidence of the basis upon which
any increase in taxes is chargeable to Tenant and an "as built" survey of the
shopping center, and such additional rental shall be payable by Tenant on
demand after payment by Landlord.   All taxes, other than ad valorem real
estate taxes, including special assessments, improvement liens and the like
shall remain the sole responsibility of the Landlord.   However, Tenant shall
remain responsible for sales taxes on rentals levied by law on lessees.

Tenant shall have the right from time to time to contest or protest or
review by legal proceedings or in such other manner as may be provided, any
such taxes, assessments or other governmental impositions aforementioned, and
to institute such proceedings in the name of the Landlord as the Tenant may
deem necessary; provided, however, any expense incurred by reason thereof
shall be borne by the Tenant and such proceedings conducted free of all
expense to the Landlord.

Notwithstanding the above, it is agreed that Tenant's obligation to make
the payments herein described is expressly conditioned upon receipt from
Landlord of a written statement for such ad valorem real estate tax increase
contributions (as well as the other documents described herein if requested by
Tenant) no later than December 31 of the calendar year following the year in
which the taxes were due.

RADON 38.  Radon is a naturally occurring radioactive gas that, when it has accumu-
GAS lated in a building in sufficient quantities, may present health risks to
persons who are exposed to it over time.  Levels of radon that exceed federal
and state guidelines have been found in buildings in Florida.   Additional
information regarding radon and radon testing may be obtained from your county
public health unit.

ESTOPPEL 39.  Upon written request of either party,  the other party agrees  within
CERTIFI- thirty (30) working days after receipt of request, to deliver written notice
CATES to therequesting party and/or to its  designee of the status of this lease,
including the following:

(a)   Whether or not this lease is in effect;

(b)   Whether or not this lease is in good standing; and,

(c)   If the requesting party is in default in any respect, and if so,
the full nature and extent of said default and all particulars
thereof.

(d)   Whether or not the lease has been modified or amended.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

SOUTHERN CENTERS ASSOCIATES, INC.
a Florida General Partnership

BY: UNITED LAND DEVELOPMENT CORPORATION

By: _____
    Its    PRESIDENT

Attest: _____

(CORPORATE SEAL)

_____
RANDALL KELLA

As to Landlord

As to Landlord

LANDLORD

WINN-DIXIE STORES, INC.

By: _____
    Its    VICE President

Attest: _____
    Its    Secretary

Susan G. Clarkson
As to Tenant

(CORPORATE SEAL)

TENANT

STATE OF FLORIDA          )
                          )
COUNTY OF _Broward_       )

The foregoing instrument was acknowledged before me this _26_ day of
_____April_____, 1990,      by
_Randall Kella_ _____ _____, _____
President and _____ Secretary, respectively, of UNITED LAND DEVELOPMENT
CORPORATION, a Florida corporation, on behalf of the corporation,.as
authorized signatory partner of SOUTHERN CENTERS ASSOCIATES, INC., a Florida
General Partnership.

_Traci Lindler_____
Notary Public
State and County aforesaid        NOTARY PUBLIC STATE OF FLORIDA
My commission expires:            MY COMMISSION EXP FEB 19,1993
                                  BONDED THRU GENERAL INS UND.    (NOTARIAL SEAL)


STATE OF FLORIDA          )
                          )
COUNTY OF _Broward_       )

The foregoing instrument was acknowledged before me this _26_ day of
_____April_____, 1990, by RANDALL KELLA,as
authorized signatory partner of SOUTHERN CENTERS ASSOCIATES, INC., a Florida
General Partnership.

_Traci Lindler_____
Notary Public
State and County aforesaid        NOTARY PUBLIC STATE OF FLORIDA
My commission expires:            MY COMMISSION EXP FEB 19,1993
                                  BONDED THRU GENERAL INS UND    (NOTARIAL SEAL)


STATE OF FLORIDA          )
                          )
COUNTY OF DUVAL           )

The foregoing instrument was acknowledged before me this _10th_ day of
_____May_____, 1990,        by
_A. Dano Davis_____ and _J.S. Bryan, Jr._____, _Vice_
President and _____ Secretary, respectively, of WINN-DIXIE STORES, INC., a
Florida corporation, on behalf of the corporation.

_Susan H. Clarkson_____
Notary Public
State and County aforesaid  Notary Public  State of Florida
My commission expires: _My Com____ _expires Apr 11, 1992_      (NOTARIAL SEAL)

## LEGAL DESCRIPTION

All that certain parcel, piece or tract of land situate in Broward County, Florida more particularly described as Parcels "E", "F" and "G" of Galt Ocean Center, according to the plat thereof, as recorded in Plat Book 116, at page 7 of the public records of Broward County, Florida, subject to all easements, restrictions, protective covenants of record affecting the said property.

*90211483 - 5/24/90*
*Bk 17445 Pg. 0687*

## SHORT FORM LEASE

THIS SHORT FORM LEASE, made this *1st* day of *May*,
1990, between SOUTHERN CENTERS ASSOCIATES, INC., a Florida
General Partnership (UNITED LAND DEVELOPMENT CORPORATION, a
Florida corporation, and RANDALL KELLA, Partners), (hereinafter
called "Landlord") and WINN-DIXIE STORES, INC., a Florida
corporation (hereinafter called "Tenant"); which terms "Landlord"
and "Tenant" shall include, wherever the context admits or
requires, singular or plural, and the heirs, legal
representatives, successors and assigns of the respective
parties;

### W I T N E S S E T H :

That the Landlord, in consideration of the covenants of the
Tenant, does hereby lease and demise unto said Tenant and the
Tenant hereby agrees to take and lease from the Landlord, for the
term hereinafter specified, the following described premises:

That certain store building, approximately 199 feet in
width by 190 feet 8 inches in depth, together with
concrete pads at rear of store building for
installation of Tenant's exterior freezers and/or
coolers, a front vestibule, a rear receiving room, and
the land on which the same shall stand (hereinafter
collectively called "demised premises"), which store
building and related improvements are to be constructed
by Landlord according to plans and specifications to
be approved by the parties hereto and shall be in the
location and of the dimensions as outlined in red on
the Plot Plan attached as Exhibit "A" to a certain
collateral lease agreement executed by the parties
hereto and of even date herewith ("The Lease").



APPROVED
AS TO
By
Winn-Dixie
Stores, Inc.

This Instrument was prepared by
Charles P. ____ Jr. Attorney
a ____ w ___ e address is P O
Box B ____ ___ Florida J2203

The demised premises are located in a shopping center development (hereinafter called "shopping center"), located at the southerly corner of the intersection of N.E. 41st Street, between AIA and Galt Ocean Drive, in the City of Ft. Lauderdale, County of Broward, State of Florida, the legal description of the shopping center being attached hereto as Exhibit "A" and by this reference made a part hereof.

FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said premises for the transaction of its business for an initial term of twenty (20) years.

IT IS FURTHER AGREED that Tenant, at its option, shall be entitled to the privilege of five (5) successive extensions of this lease, each extension to be for a period of five (5) years.

Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1,000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant; except the sale of such items in not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared, ready-to-eat food items, for consumption either on or

off the premises, shall not be deemed a violation hereof.  With
the exception of package stores, only Tenant herein may sell beer
and wine in the shopping center for off-premises consumption.
Only Tenant may operate a bakery, delicatessen or similar
department in the shopping center.

Notwithstanding the foregoing, the following facilities
shall be allowed to operate in the shopping center: (1) a deli-
restaurant provided the same is no larger than 6,400 square feet
and located no closer than 275 feet from the nearest point of
Tenant's demised premises; (2) one ice cream parlor provided the
same is no larger than 2,000 square feet; (3) one bakery provided
the same is no larger than 2,000 square feet; and (4) one wine
and cheese shop provided the same is no larger than 2,000 square
feet.

In the event the demised premises are at any time subject to
a first mortgage (provided Tenant has been notified in writing of
the name and address of the holder thereof) and so long as said
mortgage shall encumber the demised premises, and notwithstanding
any provisions herein to the contrary, the Tenant shall have no
right to cancel or terminate this lease or to withhold rental
payments because of a violation of the terms of this exclusive
provision as to property located within 1000 feet of any exterior
boundary of the shopping center, but nothing herein shall deprive
Tenant of any rights or recourse against Landlord, its successors
and assigns, by way of suit for damages or injunctive relief, or
as otherwise provided by law, in the event of any such violation.
If the holder of such first mortgage should succeed to ownership
of the demised premises by virtue of foreclosure or transfer of
title thereto in lieu of such foreclosure or otherwise, in such
event the terms of this exclusive provision shall apply to the
holder of such first mortgage as owner-landlord only with respect
to the land which was formerly encumbered by the lien of said
first mortgage.  For the purposes hereof, the term "first
mortgage" shall include any first security instrument.

Landlord covenants and agrees that the construction of the
shopping center shall begin not later than November 30, 1990 and

shall be completed not later than November 30, 1991; and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction; provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than February 15, 1992, said option to terminate shall not arise. If pursuant to this paragraph Tenant shall cancel or terminate this lease, Landlord agrees that for a period of three (3) years after such cancellation or termination Tenant shall have "first refusal" of the right to operate any food supermarket in the shopping center, provided however, Tenant must accept or reject any such offer within thirty (30) days after receiving same from Landlord.

Without the prior written consent of Tenant herein only retail and/or service stores shall be allowed to operate in the shopping center, or any enlargement thereof, it being the intent of the parties hereto that no spa, "teen lounge", bowling alley, skating rink, bingo or electronic or other game parlor, theatre (either motion or legitimate), sales of automobiles, or health, recreational or entertainment-type activities, non-retail or non-service type activities, shall be permitted. 15,000 square feet of business or professional offices shall be allowed in the center providing that none of the same is located closer than 275 feet to the nearest point of Tenant's demised premises. It is further agreed that a cocktail lounge and/or bar shall be allowed in the center provided that the same is located no closer than 350 feet from the nearest point of Tenant's demised premises.

The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument (in a form acceptable to Tenant) as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the purchaser at such foreclosure sale shall be bound to Tenant for the term of this lease, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

Tenant agrees that it will give notice to any holder of a first mortgage (which term shall include all security instruments) encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate this lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate this lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period, provided, however, the Tenant shall not be required to deliver such notice to the mortgage holder or to extend to it an opportunity to perform in respect of emergency repairs which Tenant is permitted to make under the provisions of Article 12 of this lease.

In connection with any construction work to be performed with regard to leasehold improvements by Tenant on the demised premises, Tenant agrees to indemnify and hold harmless the Landlord from any and all mechanics', materialmen's or laborers' liens or encumbrances arising out of such construction work and to cause any such liens to be promptly discharged or else bonded if litigated.

IT IS UNDERSTOOD AND AGREED that this is a Short Form Lease which is for the rents and upon the terms, covenants and conditions contained in the aforesaid collateral lease agreement executed by the parties hereto and bearing even date herewith, which collateral lease agreement is and shall be a part of this instrument as fully and completely as if the same were set forth herein.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

SOUTHERN CENTERS ASSOCIATES, INC.
a Florida General Partnership

BY: UNITED LAND DEVELOPMENT CORPORATION

x _____
Witness

By _____
    Its                    President

As to Landlord
_____

Attest _____
        Its                Secretary

(CORPORATE SEAL)

_____

_____
RANDALL KELLA

                              LANDLORD

_____
Witness

WINN-DIXIE STORES, INC.

By _____
   Its          VICE    President

Susan G. Clarkson
As to Tenant

Attest _____
        Its               Secretary

(CORPORATE SEAL)

                              TENANT

FIRST AMENDMENT TO LEASE

THIS FIRST AMENDMENT TO LEASE, made this _6th_ day of
_____May_____, 1991, between SOUTHERN CENTERS
ASSOCIATES, INC., a Florida general partnership, (hereinafter
called "Landlord") and WINN-DIXIE STORES, INC., a Florida
corporation, (hereinafter called "Tenant"), which terms
"Landlord" and "Tenant" shall include, wherever the context
admits or requires, singular or plural, and the heirs, legal
representatives, successors and assigns of the respective
parties;

W I T N E S S E T H :

WHEREAS, by Lease dated May 1, 1990, a short form of which
is recorded in Book 17445, Page 687 of the Public Records of
Broward County, Florida, Landlord did lease and demise unto
Tenant those certain premises, in said Lease more particularly
described, located in a shopping center development situated at
the southerly corner of the intersection of N.E. 41st Street,
between Highway A1A and Galt Ocean Drive, in the City of Fort
Lauderdale, County of Broward, and State of Florida, upon the
terms and conditions set forth in said Lease; and

WHEREAS, the parties desire to amend the said Lease, as
hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the sum
of Ten and No/100 Dollars ($10.00) and other good and valuable
considerations in hand paid by Tenant to Landlord, the receipt
and sufficiency of which are hereby acknowledged, it is mutually
agreed that the said lease is hereby amended as follows:

1.    The last four lines of the second paragraph of Article
2 appearing on page 3 of the Lease are deleted and the following



language substituted in lieu thereof: "Tenant reserves the non-exclusive right to operate in its demised premises a pharmacy."

2.    The following language is added at the end of Article 15 appearing on page 8 of the Lease:

> " During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of the premiums for Landlord's liability insurance above described.  Tenant shall be responsible for its pro-rata share of such premiums, Tenant's pro-rata share to be an apportionment made in the ratio which the square footage of the ground floor of Tenant's store building bears to the total square footage of the ground floor of all buildings from time to time existing in the shopping center.  The amount of premiums for which Tenant is to reimburse Landlord shall be less any available abatements, discounts or refunds thereon.  Landlord shall at all times use its best and earnest efforts to obtain such coverage at the most reasonable rates available.  Tenant shall be entitled to receive from the Landlord copies of the statements for such insurance premiums.  Notwith-standing the above, it is agreed that Tenant's obligations to make the payments herein described is expressly conditioned upon receipt from Landlord of the written invoice for such insurance premiums no later than six (6) months after the due date thereof. Further, Tenant shall not be required to make the payments herein described unless and until Tenant is furnished with photocopies of the applicable insurance policy to include the declaration page.  It is agreed, however, that in no event shall Tenant's contribution for its pro-rata share of such insurance coverage exceed the sum of $10,371.25 per year."

3.    The following language is added at the end of Article 17 appearing on page 9:  "It is agreed, however, that in no event shall Tenant's pro-rata share of such insurance coverage premiums exceed the sum of $10,371.25 per year."

4.    The figure "$10,371.00" appearing in the next to last line of Article 31 on page 14 of the Lease is deleted and the figure "$31,113.75" is substituted in lieu thereof.

5.    The said Lease shall be and remain in full force and effect and unmodified except as the same is specifically modified and amended hereby.    All covenants, terms, obligations and conditions of the Lease which are not modified or amended by this First Amendment to Lease, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed the day and year first above written.

Signed, sealed and delivered
in the presence of:

SOUTHERN CENTERS ASSOCIATES, INC.,
a Florida General Partnership

BY: UNITED LAND DEVELOPMENT
    CORPORATION

By _____
    Its _____ President

Attest _____
    Its _____ Secretary

(CORPORATE SEAL)

_____
Witness

_____
As to Landlord

By _____
    RANDALL KELLA

_____
Witness

_____
As to Landlord

LANDLORD

WINN-DIXIE STORES, INC.

By _____
    Its _____ President

Attest _____
    Its _____ Secretary

_____
Witness

Susan G. Clarkson
As to Tenant

(CORPORATE SEAL)

TENANT

- 3 -

STATE OF FLORIDA                    )
                                   )
COUNTY OF _BROWARD_                 )

The foregoing instrument was acknowledged before me this _6th_

day    of    _MAY_____, 1991, by

_RANDALL KELLA_ and _____N/A_____, _____

President and _____ Secretary, respectively, of UNITED LAND

DEVELOPMENT CORPORATION, a Florida corporation, as authorized

signatory partner of SOUTHERN CENTERS ASSOCIATES, INC., a Florida

General Partnership.

_Anna Maria Wilder_
Notary Public
State and County aforesaid
My commission expires:      NOTARY PUBLIC STATE OF FLORIDA      (NOTARIAL SEAL)
                            MY COMMISSION EXP JULY 19,1992
                            BONDED THRU GENERAL INS UND

STATE OF FLORIDA                    )
                                   )
COUNTY OF _BROWARD_                 )

The foregoing instrument was acknowledged before me this _6th_

day of _MAY_____, 1991, by RANDALL KELLA, as

authorized  signatory  partner  of  UNITED  LAND  DEVELOPMENT

CORPORATION, a Florida corporation, on behalf of SOUTHERN CENTERS

ASSOCIATES, INC., a Florida General Partnership.

_Anna Maria Wilder_
Notary Public
State and County aforesaid
My commission expires:     NOTARY PUBLIC STATE OF FLORIDA      (NOTARIAL SEAL)
                           MY COMMISSION EXP JULY 19,1992
                           BONDED THRU GENERAL INS UND

STATE OF FLORIDA                    )
                                   )
COUNTY OF DUVAL                     )

The foregoing instrument was acknowledged before me this _20th_

day    of    _May_____, 1991, by

_J. Jerome Kidt_ and _W.E. Ripley, Jr_, _____

President and _Asst._ Secretary, respectively, of WINN-DIXIE

STORES,  INC.,  a  Florida  corporation,  on  behalf  of  the

corporation.

_Susan G. Clarkson_
Notary Public
State and County aforesaid
My commission expires: _____      (NOTARIAL SEAL)

- 6 -

## LEGAL DESCRIPTION

All that certain parcel, piece or tract of land situate in Broward County, Florida more particularly described as Parcels "E", "F" and "G" of Galt Ocean Center, according to the plat thereof, as recorded in Plat Book 116, at page 7 of the public records of Broward County, Florida, subject to all easements, restrictions, protective covenants of record affecting the said property.

#386

### SUPPLEMENTAL LEASE AGREEMENT

THIS SUPPLEMENTAL LEASE AGREEMENT, made this 29th day of
_September_____, 1992, between
SOUTHERN CENTERS ASSOCIATES, INC., a Florida general partnership,
hereinafter called "Landlord", and WINN-DIXIE STORES, INC., a
Florida corporation, hereinafter called "Tenant", which terms
"Landlord" and "Tenant" shall include, wherever the context
admits or requires, singular or plural, and the heirs, legal
representatives, successors and assigns of the respective
parties;

### W I T N E S S E T H :

WHEREAS, by Lease dated   May 1, 1990 Landlord did lease
and demise unto Tenant those certain premises located southerly
of N. E. 41st Street, between Highway AIA and Galt Ocean Drive,
in the City of Ft. Lauderdale, County of Broward, State of
Florida, reference being made to said Lease for a more detailed
description of the demised premises, for an initial term of
twenty (20) years commencing upon a date dependent upon the
completion of certain construction, and upon such other terms and
conditions as are set forth therein; and

WHEREAS, a Short Form of said Lease is recorded in Official
Records Book 17445, Pages 0687 through 0694 of the Current Public
Records of Broward County, Florida; and

WHEREAS, said Lease has been amended by Letter Agreement
dated November 19, 1990; First Amendment to Lease dated May 6,
1991; Letter Agreement dated May 20, 1991 and Letter Agreement
dated October 22, 1991; and

WHEREAS, Tenant has now opened for business in the demised
premises and the parties desire to fix the commencement date of
said Lease as hereinafter set forth;

NOW THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable considerations paid by Tenant to Landlord, the receipt and sufficiency whereof are hereby acknowledged, it is mutually agreed:

1.    The commencement date of the above-described Lease is fixed at August 27, 1992 and the expiration of the initial term of twenty (20) years demised therein shall be at midnight on August 26, 2012.

2.    All covenants, terms and conditions of the above-described Lease not modified or amended by this Supplemental Lease Agreement are hereby ratified and confirmed.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Supplemental Lease Agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

Printed Name: SVED JAMISON

Printed Name: Robert THomas

SOUTHERN CENTERS ASSOCIATES, INC.
a Florida General Partnership

BY: UNITED LAND DEVELOPMENT
    CORPORATION

By
Printed Name: Randall Kelle
Its              President
Address: 3701 GAIT OCEAN DR
    FT. Lauderdale, FL 33308

Attest
Printed Name: Randall Kelle
Its              Secretary
Address: 3701 GAIT OCEAN DR
    FT. Lauderdale, FL 33308

(CORPORATE SEAL)

LANDLORD

Printed Name: Barbara A. Smucysz

Printed Name: Susan G. Clark

WINN-DIXIE STORES, INC.

By
Printed Name: James Knight
Its              President
Address: P. O. Box B
Jacksonville, FL 32203-0297

Attest
Printed Name: Wayne E. Ripley, Jr.
Its              Secretary
Address: P. O. Box B
Jacksonville, FL 32203-0297

(CORPORATE SEAL)

TENANT

- 2 -

STATE OF FLORIDA )
)
COUNTY OF Broward )

The foregoing instrument was acknowledged before me this
September 9th , 1992, by RANDALL KELLA ,
President of UNITED LAND DEVELOPMENT CORPORATION, a
Florida corporation, as authorized signatory partner of SOUTHERN
CENTERS ASSOCIATES, INC., a Florida General Partnership, who is
[Please check] ✓ personally known to me or _____ who has
produced _____ as identification [Check One] and or
___✓___ who did not take an oath _____ who did take an oath.

Given under my hand and official seal this 9th day of
September , 1992.

_____
Printed Name: SANDRA L STEIN

Notary Public, State and County
aforesaid.
My Commission Expires:_____
Notary ID No.: _____

(NOTARIAL SEAL)

STATE OF FLORIDA )
)
COUNTY OF BROWARD )

SANDRA L STEIN
My Comm Exp 6/25/96
Bonded By Service Ins
No CC211172]
[ ] Personally known   [ ] Other I.D.

The foregoing instrument was acknowledged before me this
September 9th , 1992, by RANDALL KELLA, as authorized
signatory partner of UNITED LAND DEVELOPMENT CORPORATION, a
Florida corporation, as authorized signatory partner of SOUTHERN
CENTERS ASSOCIATES, INC., a Florida General Partnership, who is
[Please check] ✓ personally known to me or _____ who has
produced _____ as identification [Check One] and or
___✓___ who did not take an oath _____ who did take an oath.

Given under my hand and official seal this 9th day of
September , 1992.

_____
Printed Name: SANDRA L STEIN

Notary Public, State and County
aforesaid.
My Commission Expires:_____
Notary ID No.: _____

(NOTARIAL SEAL)

SANDRA L STEIN
My Comm Exp 6/25/96
Bonded By Service Ins
No. CC211172]
[ ] Personally known   [ ] Other I.D.

- 3 -

STATE OF FLORIDA )
                 )
COUNTY OF DUVAL  )


        The foregoing instrument was acknowledged before me this
_____ 15 , 1992, by ~~Harriss Kul~~ _____
and ~~Wayne E Ripley Jr~~ , _____ President and
_____ Secretary, respectively, of **WINN-DIXIE STORES, INC.**, a
Florida corporation, on behalf of the corporation, who are
personally known to me and did not take an oath.

                         _Susan G. Clarkson_
                         Printed Name: Susan G. Clarkson

                         Notary Public, State and County
                         aforesaid.
                         My Commission Expires:_____
                         Notary ID No.:_____

                              ,otary Public, State of Florida
                                SUSAN G CLARKSON
                              4, Comm Exp Jan 15, 1996
                                Comm No CC 174382


(NOTARIAL SEAL)