## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

## DEBTORS' MOTION FOR ORDER AUTHORIZING PAYMENT
## OF CEO RETENTION INCENTIVE

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above captioned cases, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order under 11 U.S.C. §§ 105(a) and 363(b)(1) authorizing the Debtors to pay a retention incentive to their President and Chief-Executive Officer (the "CEO Retention Incentive"). In support of the Motion, the Debtors state as follows:

### Background

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States

Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the

"Creditors Committee") to serve in these cases.  An official committee of equity security holders

appointed by the U.S. Trustee on August 17, 2005, was subsequently disbanded by the U.S.

Trustee by notice dated January 11, 2006.

        3.      The Debtors are grocery and pharmaceutical retailers operating in the

southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace"

banners.  The Debtors' business was founded in 1925 with a single grocery store and has grown

through acquisitions and internal expansion.  As of the Petition Date, the Debtors were considered

to be the eighth-largest food retailer in the United States and one of the largest in the Southeast

with more than 900 stores in the United States.  Following the filing of these cases, the Debtors

have been engaged in a footprint reduction program to sell or close 326 of their stores.

        4.      This Court has jurisdiction over the Motion under 28 U.S.C. § 1334.

Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2).

        5.      The statutory predicates for the relief requested by this Motion are

Bankruptcy Code sections 105 and 363(b)(1).

**Description of CEO Retention Incentive**

        6.      By this Motion, the Debtors request authorization to pay a CEO Retention

Incentive of $2 million (net of any taxes that must be withheld pursuant to applicable law) to Peter

L. Lynch ("Lynch"), the Debtors' President and Chief Executive Officer, in consideration for

Lynch remaining in the Debtors' employ through December 31, 2006.  The CEO Retention

Incentive will be paid as soon as is practicable (but in any event within five (5) days) following the

date upon which the Court enters an order approving payment of the CEO Retention Incentive.

7.    The CEO Retention Incentive will be subject to forfeiture under either of

the following circumstances: (a) the Debtors terminate Lynch for cause on or before December

31, 2006 <u>or</u> (b) Lynch terminates his employment with the Debtors without good reason and

other than for disability on or before December 31, 2006.  As soon as is practicable (but in any

event within five (5) days) following Lynch's termination under either of the circumstances

described in (a) or (b) of the preceding sentence, Lynch will be required to repay the CEO

Retention Incentive, without interest, to the Debtors.

### Basis for Relief

8.    The Debtors have long recognized that their prospects for a successful

reorganization and emergence from chapter 11 depend upon the continued leadership of Lynch as

the Debtors' President and Chief Executive Officer.  Although Lynch's employment agreement

with the Debtors' runs through December 9, 2007, Lynch may, at any time, voluntarily terminate

his employment with the Debtors on 30 days notice without incurring any liability.[2]  Accordingly,

to assure Lynch's continued service to the Debtors through the end of 2005, the Debtors

executed a Retention Bonus Letter Agreement with Lynch dated February 17, 2005 (the

---

[2]    <u>See</u> Employment Agreement between Winn-Dixie Stores, Inc. and Peter L. Lynch dated December 9, 2004 (the "Employment Agreement"), at ¶4(d).  The Employment Agreement is attached as an exhibit to the Debtors' Form 10-Q for the quarterly period ended January 12, 2005, which was publicly filed with the Securities and Exchange Commission and is, therefore, publicly available.  <u>See</u> Winn-Dixie Stores, Inc. Form 10-Q for the Quarterly Period Ended January 12, 2005, Exhibit 10.0 (Feb. 10, 2005).  Moreover, the Debtors will provide copies of the Employment Agreement to interested parties upon request to the Debtors' counsel listed below.

"2005 Letter Agreement"), which provided Lynch a $1.5 million retention bonus in consideration

for Lynch remaining in the Debtors' employ through December 31, 2005.[3]

       9.     The events of the last year have validated the Debtors' business judgment

in executing the 2005 Letter Agreement with Lynch.  Throughout the course of these cases,

Lynch has led the Debtors' reorganization efforts and is, more than any other person, responsible

for the remarkable progress that the Debtors have made toward achieving a successful turnaround

of their businesses and emergence from chapter 11.  Among other things, Lynch's leadership has

been pivotal to: (a) the development and implementation of the Debtors' footprint reduction

program (the "Footprint Program"), which will provide the Debtors with an optimal foundation

for the growth of their businesses; (b) the sale or closure of more than 300 stores as part of the

Footprint Program, including the sale of 81 stores yielding gross proceeds exceeding $40 million

(exclusive of consideration paid for inventory) and the liquidation of 245 stores producing net

proceeds of approximately $136 million (including inventory); (c) the implementation of various

operational initiatives, including (i) a sustainable strategic sourcing program, (ii) a significant

reduction of corporate overhead costs, (iii) the reorganization of the Debtors' "field team" by

reducing the number of district managers from 96 to 30, (iv) the establishment of several

merchandising and marketing programs designed to improve product offerings, (v) the rolling out

of customer service initiatives, and (vi) the realignment of the overhead structure to reflect the

new footprint; (d) the development of a reclamation and trade vendor lien program; and (e) the

development of a business plan that provides the road map by which the Debtors intend to operate

---

[3]     The 2005 Letter Agreement is attached as an exhibit to the Debtors' Form 8-K dated February 24, 2005, which was publicly filed with the Securities and Exchange Commission and is, therefore, publicly available.  See Winn-Dixie Stores, Inc. Form 8-K, Exhibit 10.1 (Feb. 24, 2005)  Moreover, the Debtors will provide copies of the 2005 Letter Agreement to interested parties upon request to the Debtors' counsel listed below.

their businesses during the next several years and that will eventually serve as the platform for the development and negotiation of a plan of reorganization.

10.    Moreover, Lynch has significantly enhanced the Debtors' reorganization prospects through his demonstrated leadership in communications with: (a) the Debtors' employees, thereby building the trust and confidence in the employee base throughout the course of the restructuring; (b) external constituencies, thereby providing customers, vendors, community leaders, the media, and the public at large with important information about the Debtors' business initiatives and restructuring progress; and (c) the Debtors' Board of Directors, the Creditors Committee, and other key constituencies, thereby advancing the dialogue among these parties and, by extension, the Debtors' reorganization efforts.

11.    Based upon the foregoing, it is clear that Lynch's continued leadership as the Debtors' President and Chief Executive Officer is vital if the Debtors are to emerge successfully from chapter 11 and that the Debtors' prospects for a successful reorganization would be harmed immeasurably were the Debtors to lose Lynch's services.  It is also clear that the cost to the Debtors of the CEO Retention Incentive is far less than the harm that would result were Lynch to cease his employment with the Debtors.  Accordingly, and to assure Lynch's continued service to the Debtors through December 31, 2006, the Debtors, by and through the Compensation Committee of the Board of Directors of Winn-Dixie Stores, Inc., and based upon the advice of their advisors, have determined, in the exercise of their business judgment, that the payment of the CEO Retention Incentive to Lynch serves a sound business purpose and is in the best interests of the Debtors, their estates, and all parties in interest.

**Applicable Authority**

12.     Section 363(b) of the Bankruptcy Code permits the Debtors to use property of the estate "other than in the ordinary course of business," after notice and a hearing. 11 U.S.C. § 363(b)(1).  The standard applicable to a motion under section 363(b) of the Bankruptcy Code and to the relief sought by this Motion is whether a debtor has exercised sound business judgment.  See Order Authorizing Debtors to Implement Employee Retention and Severance Plan, Case No. 05-03817-3F1 (Bankr. M.D. Fla. Jun. 27, 2005) (Docket No. 1888) (holding that the Debtors had demonstrated sound business purpose to implement and make payments under Chapter 11 Retention Plan and Corporate Benefits Severance Program and approving such plan and program); In re BDK Health Mgmt., 1998 WL 34188241, at *4-5 (Bankr. M.D. Fla. Nov. 16, 1998) (approving a sale of the debtor's assets under § 363(b) of the Bankruptcy Code where sale was found to serve a sound business purpose); In re First Merchants Acceptance Corp., Nos. 97-1500 & 97-1892 (JJF), 1997 Bankr. LEXIS 1492, at *10 (D. Del. Sept. 11, 1997) (applying sound business judgment standard to section 363(b) sale of assets); In re America West Airlines, Inc., 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (holding that proposal to pay bonuses on confirmation of reorganization plan was exercise of debtor's sound business judgment); In re Interco, Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) (concluding that implementation of a critical employee retention plan was a proper exercise of debtor's business judgment).

13.     Once the debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).

14.    The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing.  In re Integrated Resources, Inc., 147 B.R. at 656; see also In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").[4]

15.    As described above, there are sound business justifications for payment of the CEO Retention Incentive.  The Debtors' prospects for a successful reorganization and emergence from chapter 11 depend upon the continued leadership of Lynch as the Debtors' President and Chief Executive Officer and the cost of the CEO Retention Incentive is far less than the harm that would befall these estates were Lynch to leave the Debtors' employ.  Accordingly, the Debtors have, in a valid exercise of their business judgment, determined that the relief requested by this Motion is in the best interests of their estates and all interested parties, and such relief should be approved.

## Notice

16.    Notice of this Motion has been provided to (a) counsel to the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee, and (d) the other parties in interest named on the Master Service List maintained in these cases.  No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (i) enter an order substantially in the form of Exhibit A, authorizing the Debtors to (a)

---

[4]    Subject to certain exceptions that are not here applicable, the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA") apply only to cases filed on or after October 17, 2005.  See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, PL 109-8, 119 Stat 23, § 1501 (Apr. 20, 2005).  Accordingly, the CEO Retention Incentive does not implicate the limitations on retention payments to insiders imposed by BAPCA.

pay the CEO Retention Incentive and (ii) grant the Debtors such other and further relief as the

Court deems just and proper.

Dated:  January 18, 2006.

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By      *s/ D. J. Baker*
      D. J. Baker
      Sally McDonald Henry
      Rosalie Walker Gray
      David M. Turetsky
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

Co-Attorneys for Debtors

SMITH HULSEY & BUSEY

By      *s/ Cynthia C. Jackson*
      Stephen D. Busey
      James H. Post
      Cynthia C. Jackson,
       Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)

Co-Attorneys for Debtors

## Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER AUTHORIZING PAYMENT OF**
**CEO RETENTION INCENTIVE**

These cases came before the Court for hearing on February 9, 2006, upon the motion of Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned jointly-administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order authorizing the Debtors to pay a retention incentive (the "CEO Retention Incentive") to Peter L. Lynch ("Lynch"), the Debtors' President and Chief-Executive Officer (the "Motion").[1]  The Court has reviewed the Motion and has considered the evidence and heard the argument of counsel.  After due deliberation and finding proper notice has been given and that a sound business reason exists for paying the CEO Retention Incentive, as described in the Motion, the Court determines that good cause exists to grant the relief requested in the Motion and that granting such relief is in the best interest of these estates and creditors.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted.

2.     The Debtors are authorized to pay Lynch a CEO Retention Incentive of $2 million (net of any taxes that must be withheld pursuant to applicable law) in consideration for Lynch's remaining in the Debtors' employ through December 31, 2006.

---

[1]     All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Motion.

3.      Notwithstanding the foregoing, the CEO Retention Incentive shall be subject to forfeiture under either of the following circumstances: (a) the Debtors terminate Lynch for cause on or before December 31, 2006 or (b) Lynch terminates his employment with the Debtors without good reason and other than for disability on or before December 31, 2006.  As soon as is practicable (but in any event within five (5) days) following Lynch's termination under either of the circumstances described in (a) or (b) of the preceding sentence, Lynch shall repay the CEO Retention Incentive, without interest, to the Debtors.

4.      The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated February ___, 2006 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge


Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.

2