**MOTION OF KONICA MINOLTA PHOTO
IMAGING U.S.A., INC. TO SET SPECIFIC DATE FOR
THE DEBTORS TO ASSUME OR REJECT EXECUTORY
CONTRACT PURSUANT TO §365(d)(2) OF THE BANKRUPTCY CODE**

**PHOTOFINISHING SYSTEM SUPPLY AND SUPPORT AGREEMENT[1]**

# EXHIBIT "A"

---

[1] The 2003 Agreement has been redacted to remove proprietary and confidential pricing information. The schedules, which are voluminous, have been omitted due to confidential and proprietary information contained therein.

## PHOTOFINISHING SYSTEM SUPPLY AND SUPPORT AGREEMENT

This Photofinishing System Supply and Support Agreement ("Agreement") made this 25th day of February, 2003, by and between **KONICA PHOTO IMAGING, INC.**, a Pennsylvania Corporation, having a principal place of business located at 725 Darlington Ave., Mahwah, New Jersey 07430 ("Konica"), and **WINN-DIXIE STORES, INC.**, a Florida Corporation, having a principal place of business at 5050 Edgewood Court, Jacksonville, Florida 32254 ("Winn-Dixie").

WITNESSETH:

WHEREAS, Konica and Winn-Dixie are parties to a certain Master Lease Agreement dated July, 1994 (the "1994 Lease Agreement"), and pursuant to which Konica leases to Winn-Dixie and Winn-Dixie leases from Konica on-site photofinishing equipment as more particularly described in the 1994 Lease Agreement; and

WHEREAS, Winn-Dixie and Konica both wish to extend and continue their relationship and supersede any remaining term of the 1994 Lease Agreement upon such terms and conditions as contained in this Agreement; and

NOW THEREFORE, in consideration of the mutual promises, covenants and agreements herein contained, the parties agree as follows:

**1. SETTLEMENT OF OUTSTANDING AMOUNTS.** Konica agrees to settle and forgive any and all past due amounts owed by Winn-Dixie under the 1994 Lease Agreement, a portion of which is pursuant to the early termination of locations, in the amount of approximately $3,600,000, provided however, that Winn-Dixie will pay a pro-rated amount of this past due amount if this Agreement is terminated early. Winn-Dixie and Konica agree that this Agreement represents a settlement of all outstanding claims between such parties in existence at or prior to May 28, 2002. The parties agree not to seek payment for any such claims, including, but not limited to any vendor payment audits performed by or on behalf of Winn-Dixie pertaining to periods on or before said date.

**2. THE 1994 LEASE AGREEMENT.** Effective with the execution of this Agreement, the parties agree that the 1994 Lease Agreement shall terminate in all respects except for the obligation to make payments due to Konica for the costs of leases, products or services incurred but not paid prior to the termination of such 1994 Lease Agreement.

**3. SUPPLIER RELATIONSHIP.**

   a. For the term of this Agreement, Konica shall fill all Winn-Dixie purchase orders of on-site photo processing equipment (the "Equipment" or "an item of Equipment"), parts and accessories for Equipment, the color photographic paper and processing chemicals utilized in connection with the operation of such Equipment, and the service and support of such Equipment for stores now or hereafter owned, operated or managed by Winn-Dixie, at store locations where Winn-Dixie, in its sole discretion, decides to

1

install or retain Konica photo processing capability. Winn-Dixie agrees to purchase or lease Equipment from Konica pursuant to the terms hereunder, or enter into a lease with Konica's designated third party leasing vendor; provided that such lease has no less favorable terms than those contained herein.

b. **Account Representation.** Konica shall provide an Account Team, which will consist of Konica's Vice President Sales, the Regional Sales Manager assigned to build programs, provide analysis of sales and marketing programs and various Training/Marketing Representatives. The Regional Manager will work full time with Winn-Dixie's Photo Category Manager within Winn-Dixie's Central Procurement office. Training/Marketing Representatives ("KR") in the ratio of one for up to 30 Winn-Dixie stores in addition to Konica's Technical/Service Support organization also will be a part of the Account Team. The Account Team will be available to answer questions and assist store management in solving problems related to the services provided hereunder. Additionally, the KR's shall provide the store personnel with training, upon reasonable request of Winn-Dixie and as reasonably necessary for individual store needs.

4. **TERM.**

   a. Each item of Equipment leased after the Beginning Term, as defined below, of this Agreement (the "Leased Equipment") shall have a lease term of sixty (60) months, provided, however, that if Winn-Dixie does not meet the average of fifty (50) Rolls Per Day ("RPD") for newly installed equipment after installation, as set forth in **Schedule H**, during the first six (6) months of this Agreement, the lease for said newly installed Equipment (only that Equipment installed in the first six (6) months hereof) shall be for a term of sixty six (66) months rather than sixty (60) months. The term of this Agreement shall commence as of the date first written above (the "Beginning Term") and shall be in effect until such time as every Lease Term, as defined below, including all renewal terms, of all Equipment leased by Konica or Konica's designated third party leasing vendor has expired, however, in no event shall such term be less than five (5) years.

   b. Each item of Equipment which was leased under the 1994 Lease Agreement and has a lease term thereunder not yet expired (the "1994 Lease Agreement Equipment") shall be subject to this Agreement and bound by the terms hereof. Such Equipment is described on **Schedule A** attached hereto and made a part hereof, which schedule also includes the remaining term for each such item of Equipment.

   c. The lease term for Leased Equipment as described in subsection (a) above, and the lease term for Equipment described on **Schedule A** pursuant to subsection (b) above shall be collectively referred to herein as "Lease Term."

   d. Each item of Equipment leased under the 1994 Lease Agreement whose lease term thereunder has expired but remains installed in a Store location (the "1994 Off-Lease Equipment") shall be subject to the terms of this Agreement until the lease of such Equipment is terminated by either party upon thirty (30) days advance written notice to

2

the other party. Such Equipment is described on **Schedule B** attached hereto and made a part hereof.

5. **EQUIPMENT.** Each new installation of Leased Equipment shall be evidenced by a schedule similar in form to **Schedule C** attached hereto and made a part hereof ("Rental Schedule"); or in the case where the Equipment is leased from Konica's designated third party leasing vendor, Winn-Dixie shall execute all necessary documents in order to effectuate any such lease with Konica's designated third party leasing vendor, and any such documents shall not affect the terms and conditions hereof, except that the Equipment Lease Fees and other rental costs and fees provided for hereunder and any other provisions relating to the lease of Equipment shall not apply.

6. **EQUIPMENT LEASE FEES.**
   a. Effective with the Beginning Term hereof and continuing throughout the respective Lease Term for each 1994 Lease Agreement Equipment as listed on **Schedule A**, the following monthly lease fees shall apply:

   | Type of Equipment | Monthly Lease Fee |
   |---|---|
   | 808J | $▅▅▅ |
   | QD-21 | $▅▅▅ |

   b. Effective with the Beginning Term hereof and continuing until the respective equipment is returned to Konica pursuant to the terms hereof, for each 1994 Off-Lease Equipment as listed on **Schedule B**, the following monthly lease fees shall apply:

   | Type of Equipment | Monthly Lease Fee |
   |---|---|
   | 808J | $▅▅▅ |
   | QD-21 | $▅▅▅ |

   c. Effective with the Beginning Term hereof and continuing throughout the respective Lease Term for each Leased Equipment, the following monthly lease fees shall apply:

   

   | Type of Equipment | Monthly Lease Fee |
   |---|---|
   | R-1 | $▅▅▅ |

   d. Upon expiration of the respective Lease Term, the lease of any Equipment that is not returned to Konica by Winn-Dixie shall be leased on a month-to-month arrangement and all Equipment Monthly Lease Fees shall be reduced to one-half of the amounts set forth above.

7. **USE OF EQUIPMENT.** The Equipment shall be located at all times at the location set forth on **Schedule A, Schedule B**, or Rental Schedules hereinafter executed by the parties, and shall not be moved from such location without the prior written consent of Konica, which consent shall not be unreasonably withheld. Winn-Dixie shall use the Equipment at its places of business in a careful and proper manner and shall comply with and conform to all federal, state, municipal, and other laws, statutes, rules, ordinances, licensing requirements and regulations in any way relating to the possession, use, maintenance, and repair of such Equipment including, without limitation, laws, regulations, rules and ordinances relating to

3

zoning, land use, environmental regulations, building codes, sewer codes, and hazardous waste storage and/or disposal. Provided Winn-Dixie is not in default hereunder, Winn-Dixie shall have the right to quiet and peaceful use of the Equipment.

8. **RISK OF LOSS.** During the term of this Agreement, Winn-Dixie shall be solely responsible for the risk of loss, theft, destruction or damage to the Equipment, whether arising through its operation or otherwise once the Equipment is located at a Store.

9. **STATUS AND OWNERSHIP OF THE EQUIPMENT.** All Equipment leased hereunder is, and shall at all times remain, the personal property of Konica, irrespective of any use, manner of attachment to realty or classification or taxation for regulatory purposes. Title to the Equipment shall at all times be and remain in Konica's name. Winn-Dixie hereby grants to Konica the right to file financing statements (UCC-1) without the signature of Winn-Dixie reflecting its ownership and lease of the Equipment. Winn-Dixie shall not cause or permit any Equipment to be used or located in such a manner that it might be deemed affixed to realty under applicable law without obtaining the prior written consent of Konica. Winn-Dixie shall defend Konica's title against, and keep all Equipment free of all liens, claims and encumbrances of any kind, affecting or with respect to such Equipment or this Agreement or any of Konica's interests hereunder. Winn-Dixie shall give Konica immediate notice of any attachment or judicial process affecting the Equipment or Konica's ownership thereof.

10. **A. TAXES AND ASSESSMENTS.** Konica, as owner of the Equipment, is required to make annual property reports to various taxing jurisdictions in which Konica maintains a personal property base. As such, Konica is also required to pay personal property tax on the Equipment. In addition, various taxing jurisdictions assess a use tax on equipment used within their political boundaries. Konica and Winn-Dixie hereby agree that Konica will file the necessary reports and returns with the proper taxing authorities. Such personal property taxes and use taxes, shall constitute additional rent and will be due and payable by Winn-Dixie on the next rental payment date.

**B. SALES TAX ON CONSUMABLES.** Winn-Dixie and Konica agree that sales tax is due on items consumed during the photofinishing process. These items are hereby agreed to, as set forth on **Schedule Q**. Winn-Dixie and Konica agree to abide by those determinations for the purpose of this Agreement. Should either party desire to re-interpret these conclusions, it is agreed that both parties must reach agreement prior to the proposed implementation of any revised interpretation. The desire to revise these tax conclusions shall be presented in writing to the other party, a minimum of ninety (90) days prior to the proposed implementation and the parties shall negotiate in good faith to reach a mutual agreement regarding such determinations.

**C. PERMITS AND LICENSES.** It shall be Winn-Dixie's obligation to obtain all permits and licenses reasonably necessary as a result of Equipment placement. In the case of failure of Winn-Dixie to obtain necessary permits and licenses, Konica shall have the right, but shall not be obligated to obtain them. The costs and expenses Konica incurs as a result of these licenses and permits shall constitute additional rent and will be due and payable on the next rental payment date.

11. **INSPECTION.** Konica shall be permitted to inspect the Equipment during Winn-Dixie's regular business hours upon five (5) days advance written notice, Winn-Dixie agrees to provide reasonable and safe access to Equipment for these inspections.

12. **PURCHASE OPTION/RETURN OF EQUIPMENT.** Provided Winn-Dixie is not in default hereunder and Winn-Dixie has performed all of its obligations under this Agreement, upon the termination of a Lease Term with respect to any item of the 2003 Lease Agreement Equipment, Winn-Dixie shall have the option to (i) purchase such Equipment for the amount of ███████████, or (ii) continue to lease such item of Equipment under the terms and conditions hereof on a month to month basis at a monthly lease fee of ████████████████████████████. Upon (i) Winn-Dixie's default hereunder, or (ii) termination of a Lease Term and Winn-Dixie's failure to exercise the purchase option, or should Winn-Dixie choose not to continue operating the Equipment on a month to month basis, then Winn-Dixie, at its own expense, shall crate, insure and transport the Equipment to Konica or to a location designated by Konica to receive the Equipment that is no further away from the terminating store than Konica's warehouse that receives returned Equipment. Such Equipment shall be returned in the same condition it was in at the commencement of the lease, reasonable wear and tear excepted.

13. **MINIMUM NUMBER OF INSTALLS.** Winn-Dixie agrees to generate a minimum of one hundred twenty (120) R-1 Equipment installations to replace existing equipment or to open new on-site photo processing laboratories during the twenty-four (24) month period commencing sixty (60) days following the execution of this contract ("Installation Period") at an average rate of five (5) per month. Such installations shall follow the schedule as outlined on **Schedule D** attached hereto and made a part hereof. Specific store locations may change due to changing market conditions, but the number of stores will remain at one hundred twenty (120). Winn-Dixie understands and agrees that the price of the Equipment is based on its commitment to have this number of pieces of Equipment installed in said twenty-four (24) month period. If Winn-Dixie does not install one hundred twenty (120) pieces of Equipment in stores during the Installation Period, the Monthly Lease Fees shall be adjusted as reflected in **Schedule O.** If Winn-Dixie installs more than one hundred twenty (120) pieces of Equipment in stores during the term of this Agreement, the Monthly Lease Fees shall be adjusted as reflected in **Schedule O**.

14. **TECHNICAL SERVICE AND SUPPORT.** The term "Technical Service and Support" shall be defined to include the following:

   a. <u>Equipment Installation.</u> Each new item of Equipment shall be delivered to the Store location at Konica's expense. The initial installation of such Equipment shall be performed by an authorized Konica representative, and at Konica's expense, provided that Winn-Dixie has the site reasonably prepared and ready for the installation. In order to ensure that installation of Equipment will occur as smoothly as practical, the parties agree that the time between receipt of an order and delivery of Equipment will be a minimum of thirty (30) days and a maximum of 45 days. Konica shall provide initial Equipment operating training for Winn-Dixie's employees or personnel for each Equipment installation by Konica. Such training shall include instruction in basic operation (including start-up and shut-down procedures), and routine maintenance of the Equipment. In addition, Konica shall assist Winn-Dixie on issues

5

involving environmental and regulatory compliance on the federal and state levels. Notwithstanding the foregoing, Konica assumes no liability with respect to Winn-Dixie's compliance with environmental and occupational safety and health laws and/or regulations or any other applicable environment or hazardous waste laws and/or regulations, except to the extent caused by incorrect information or training provided by Konica pursuant to this Section 14a.

b. <u>Training</u>. The process of installation and training of up to four (4) Winn-Dixie associates per store will take three (3) consecutive business days. Konica shall perform this training of Winn-Dixie's associates at no additional charge. If additional training is required beyond the three (3) day period, Konica will provide such training at no additional charge. Konica personnel will visit each store monthly and perform certification testing and training as needed for any Winn-Dixie associates that need additional on-the-job training at no cost to Winn-Dixie

c. <u>Equipment Location</u>. Once installed, the Equipment shall be located at all times at the location where installed and shall not be moved from that location without the prior written consent of Konica, which consent shall not be unreasonably withheld. In the event Konica consents to a relocation of an item of Equipment, such relocation shall only be performed by Konica and Winn-Dixie will pay for the reasonable costs of such relocation.

d. <u>Periodic Preventive Maintenance</u>. Konica shall provide quarterly on-site preventive maintenance service for the Equipment. Winn-Dixie shall be responsible for providing unencumbered access to the Equipment during Konica's normal business hours for this preventive maintenance service. Konica and Winn-Dixie shall agree in advance on a schedule, **refer to Schedule R** for preventive maintenance service. For purposes of this Agreement, normal business hours shall be defined as 9:00 AM to 5:00 PM Monday through Friday (local time), excluding holidays. Konica reserves the right to change its normal business hours from time to time.

e. <u>Hot Line Support</u>. Konica shall make available to Winn-Dixie toll-free telephone hot-line support seven days each week between the hours of 8:30 AM and 6:30 PM Eastern time Monday through Friday, and 9:00 AM and 5:00 PM Eastern time Saturday and Sunday, with the exception of major holidays, for help relating to the Equipment (hours are subject to change upon thirty (30) days written notice to Winn-Dixie).

f. <u>Equipment Repair Service</u>. In addition to the periodic preventive maintenance described above, in the event that an operational problem cannot be resolved via the Telephone Hot-line service, Konica will dispatch a field technician to repair the Equipment at Winn-Dixie's site. Under the terms of this Agreement, Winn-Dixie is allowed up to five (5) field repair visits per year for each Equipment location, at no additional charge. After the fifth (5th) field service visit, Winn-Dixie will be billed at Konica's current time & material rate. For the purpose of determining field repair visits at no charge, Winn-Dixie will not be charged unless the total field visits for all stores exceed each contract year, 5 times the total number of Equipment locations in effect as of the last day of the applicable contract year, provided that Konica may

charge at its then current rates for any field visits in excess of ten (10) per year for any one (1) piece of Equipment. For all repairs necessitated by normal wear and tear, Konica will provide repair parts (excluding consumable parts) at no additional charge. All replaced parts shall be returned to Konica. Winn-Dixie agrees to provide unencumbered access to the Equipment for all repair service, which will be provided during Konica's normal business hours. Konica will make reasonable business efforts to respond to any such field repair requests within 24 hours after determining that the problem cannot be solved by utilizing the Hot-Line support.

g. <u>Ongoing Training/Marketing Support.</u> Konica shall provide KR's to support Winn-Dixie's on-site photo processing program by assisting Winn-Dixie with on-going training of Winn-Dixie personnel (company wide) including (i) Equipment training (printer/processor and all ancillary items); (ii) lab operational and safety procedures; (iii) customer service; and (iv) marketing and sales assistance as required by Winn-Dixie. Winn-Dixie and Konica shall agree in advance on a training schedule each quarter for certain agreed-upon locations. There shall be a ratio of no more than 30 stores per each KR. An update on training/support shall be provided by Konica to Winn-Dixie's Category Operations Manager each month, quarter and year, describing the training/support services provided to the stores during the reporting period.

h. <u>Hot Swap Program.</u> For the list of Equipment related accessories outlined on **Schedule E** attached hereto and made a part hereof, in the event Winn-Dixie encounters a problem with any of these items which cannot be resolved by utilizing the Konica Hotline, Konica shall, within 48 hours, repair or replace such item at Konica's sole option and at Konica's expense.

**15. TECHNICAL SERVICE & SUPPORT CHARGE.** Winn-Dixie shall pay Konica a monthly service fee (the "Technical Service and Support Charge") for the Technical Service and Support as described above for each Equipment location. The Technical Service and Support Charge is guaranteed for one year from the date hereof. Annual increases after that date will not exceed the lesser of 80% of the increase in the Consumer Price Index for the previous 12 months or 3%. The Technical Service and Support Charge shall be ▓▓▓▓ per month.

**16. ADDITIONAL CHARGES.** In the event that (i) Winn-Dixie requests service to be performed outside of Konica's normal business hours, (ii) a faster than standard response time is requested by Winn-Dixie, or (iii) Winn-Dixie requires a field technician to be dispatched in excess of the number of field visits permitted under Section 14 without additional charge to Winn-Dixie, then Winn-Dixie shall pay for these additional services at Konica's then standard rates for labor and travel for after hours or emergency service. The Winn-Dixie contact shall authorize these additional services prior to their performance by Konica. Winn-Dixie is responsible for paying for all consumable parts for all Equipment, including but not limited to, chemical filters, leader cards, lamps and reflectors. Consumable parts are outlined for current equipment models on **Schedule F** attached hereto and made a part hereof. This schedule is subject to change as new equipment parts/models are introduced. Pricing of parts and services shall be at Konica's then current standard charges and fees.

7

17. **ADDITIONAL SERVICES.** Konica's obligation to provide Technical Service and Support pursuant to this Agreement is contingent upon the proper use of the Equipment by or on behalf of Winn-Dixie. However Winn-Dixie's obligation to pay Technical Service & Support charges are contingent upon Konica providing Technical Service & Support. Service covered by the warranty and/or service program is set forth on **Schedule P.** Service and parts provided under the following conditions are not covered by this Agreement. Service performed due to any conditions not within the normal wear and tear and handling of the Equipment according to its specifications, including but not limited to the following conditions will be invoiced for labor, travel and all parts at Konica's then current standard charges and fees:

   a. accident, neglect, abuse, or misuse of the Equipment or unusual electrical stress due to malfunctions in the power supply as determined jointly by Konica and Winn-Dixie.
   b. failure of Winn-Dixie to perform routine maintenance on the Equipment in accordance with Konica's recommended procedures;
   c. failure of electrical power, air conditioning or humidity control;
   d. repairs or attempted repairs to the Equipment by unauthorized persons without Konica's prior approval;
   e. removal of Equipment from its initial installation site or reinstallation of the Equipment without Konica's prior approval;
   f. alteration of the Equipment without Konica's prior approval;
   g. use of the Equipment with supplies or devices not supplied or approved by Konica, which approval shall not be unreasonably withheld;
   h. use of parts, attachments or supplies including but not limited to paper and chemistry, which were not approved by Konica, which approval shall not be unreasonably withheld; or
   i. unauthorized software has been installed

18. **WINN-DIXIE RESPONSIBILITIES.**

   a. At Winn-Dixie's sole cost and expense, Winn-Dixie shall ensure that Equipment is placed in an environment that conforms with Konica's reasonable specifications and requirements. Winn-Dixie will bear all cost and expense for any additional items required for installation such as telephone and electrical wiring, remodeling, and noise and power filters. In addition, it will be the sole responsibility of Winn-Dixie to provide the following with respect to the Equipment:

      (i) replacement of operating supplies, accessories, optional equipment, chemicals, paper, or other consumable items including, but not limited to, leader cards, lamps and reflectors;
      (ii) electrical work external to the Equipment (i.e. associated peripheral equipment, power, transmission and phone lines, and modems) and equipment line cord, or plumbing work external to the Equipment;
      (iii) routine maintenance as defined by Konica including, but not limited to, printer balancing, chemical control of equipment and cleaning of racks;
      (iv) support and maintenance of Winn-Dixie's computer network; and
      (v) all regulatory and environmental compliance items;

8

b. Winn-Dixie acknowledges and is aware that the possession and use of the Equipment and the possession, storage, use and disposal of the chemicals and other materials used and/or produced in connection with the Equipment, are or may be subject to federal, state and local laws, regulation, rules and ordinances relating to zoning, land use, building codes, sewer codes, and environmental and/or hazardous waste storage and disposal, including but not limited to silver recovery. WINN-DIXIE ACKNOWLEDGES AND AGREES THAT ALL OF THE MATTERS DESCRIBED IN THIS PARAGRAPH ARE THE SOLE RESPONSIBILITY OF WINN-DIXIE AND, EXCEPT AS PROVIDED IN PARAGRAPH 14, WINN-DIXIE SHALL HOLD KONICA HARMLESS FOR ANY MATTER RELATED THERETO AS SET FORTH IN PARAGRAPH 30 HEREOF. Winn-Dixie further agrees to possess, use and operate the Equipment and to hold, use, store and dispose of the chemicals and effluents used and/or produced in connection with the Equipment, in full compliance with all applicable federal, state and local land, use, environmental and hazardous waste laws and regulations.

19. **PAPER AND CHEMICALS.** Winn-Dixie agrees to purchase all paper and chemicals for the Equipment directly from Konica. Subject to Section 20 hereof, color negative photographic paper and chemistry shall be provided at the prices shown on **Schedule G** attached hereto and made a part hereof. The prices shown on **Schedule G** (in the $.18 per sq. ft. column) are FOB Shipping Point, and shall remain in effect for a period of one year from the date hereof. Annual increases after that date will not exceed the lesser of 80% of the increase in the Consumer Price Index for the previous 12 months or 3%. In the event that Winn-Dixie provides substantive evidence to Konica that Konica's prices for color negative photographic paper or any of the chemicals listed on **Schedule G** are not competitive with the prices charged by Konica to other large retailers, Winn-Dixie reserves the right to renegotiate with Konica to both parties' satisfaction the prices charged by Konica hereunder.

20. **PAPER PRICING.**

   a. Winn-Dixie and Konica acknowledge that the lease price offered under this Agreement is based upon Winn-Dixie purchasing certain minimum amounts of paper and chemistry per machine, for the duration of this Agreement. After the first six (6) months from the Beginning Term, Winn Dixie agrees to pay 39 cents per square foot for Konica photoprocessing paper, which will consist of 18 cents for the paper, 19 cents for lease subsidy and 2 cents for marketing accruals. Once the 39 cent per square foot price becomes effective, Winn-Dixie will be entitled to a rebate of the difference in price per square foot based upon the achievement of certain levels of RPD, determined in accordance with **Schedule H, Exhibit D**. These funds will be rebated to Winn-Dixie in the form of a credit memo on a quarterly basis.

   b. Winn-Dixie and Konica agree that the measurement of RPD as well as the formula to determine pricing is set forth in **Schedule H** attached hereto. In the event Winn-Dixie does not achieve the minimum RPD as set forth on **Schedule H**, Winn-Dixie agrees to pay the shortfall penalty determined in accordance with **Schedule H**. Konica shall invoice for the shortfall penalty on a quarterly basis and Winn-Dixie shall pay such invoice within thirty (30) days of receipt thereof.

21. **MARKETING FUND.** Konica shall accrue a marketing fund to help defray the cost of marketing and advertising materials to promote Winn-Dixie's on-site photo processing business (the "Marketing Fund"). Konica shall accrue the Marketing Fund at a rate of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ for net paid purchases of photographic paper purchased from Konica. This accrual will begin the first full month after the Beginning Term. As a result, Winn-Dixie invoice price for paper will be ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ for the first six (6) months of this Agreement, and thereafter for the term of the Agreement, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in accordance with **Schedule H, Exhibit D**. Within thirty (30) days following submission of a request for funding from Winn-Dixie, Konica shall pay to Winn-Dixie the amount requested or the balance of the accrual of the Marketing Fund, whichever is less.
    On a monthly basis, Konica will provide Winn-Dixie with a statement of the accrued Marketing Funds.

22. **SUPPLIES.** Winn-Dixie may, but is not obligated to, purchase from Konica all materials and supplies for the Equipment. Such materials and supplies shall be supplied by Konica to Winn-Dixie at Konica's then current prices. For purposes of this Paragraph, supplies do not include paper and chemistry.

23. **PAYMENT.** Terms for lease payments and contracted services are due upon receipt ("DUR") of invoice. Terms for all Service/Repair costs and consumables invoicing are net thirty (30) days of receipt of invoice. The parties agree that invoicing procedure and required supporting documentation will be as follows:

    - Lease Invoices – Invoices for Equipment lease payments shall be sent quarterly, in advance of each quarter to the Category Manager of Photoprocessing in Winn-Dixie's Central Procurement Office located at 7595 Centurion Parkway, Jacksonville, FL. Invoices will contain the following detail: Summary invoices by region, identifying separate lease amounts, service charges and taxes (including personal property taxes, if any), supported by worksheets with detail by store, similar in format to the sample enclosed as **Schedule I**. Remittance will be paid by Winn Dixie upon receipt of invoice to the lockbox that Konica designates on the invoice.
    - Contracted Service Invoices – Similar to lease invoices, invoices for contracted maintenance service shall be sent quarterly, in advance of each quarter, to the Category Manager of Photoprocessing in Winn-Dixie's Central Procurement Office located at 7595 Centurion Parkway, Jacksonville, FL. Invoices will be similar in format to the sample enclosed as **Schedule I** and shall be remitted to the lockbox that Konica designates on the invoice.
    - Service Invoices – Invoices for service/technical assistance not covered within the Agreement shall be sent as work is performed. Signed field work agreements will be sent to the Photoprocessing Category Manager for approval. Invoices will be accompanied by a signed proof of service (Example in **Schedule K**). Remittance will be paid by Winn-Dixie to the lockbox that Konica designates on the invoice.
    - Paper, Chemistry, Supplies, Products Shipped Directly to Stores – Invoices for these items shall be enclosed with product as they are shipped directly to the stores. Winn-Dixie and Konica agree to use reasonable commercial efforts to ensure that invoices are properly received into Winn-Dixie's DSD system, in accordance with Winn-

Dixie's procedure set forth in that letter and procedure dated October 4th, 2002 from Steve H. Elliott, Business Development Manager attached as **Schedule L**. Once entered into this system, payments will be generated on the 20th day. If invoices are not received into the DSD system, the KR will present invoices to Store Manager to obtain a Winn-Dixie DSD system generated invoice. Remittance will be paid by Winn-Dixie to the lockbox that Konica designates on the invoice.

- If a Store manager refuses to provide a DSD system generated invoice, the KR will send the invoice and explanation to Konica's in house Winn-Dixie Regional Sales Manager to work with Winn-Dixie's field organization to resolve the matter. If the matter cannot be resolved within thirty (30) days, the Winn-Dixie photoprocessing Category Manager will work with the General Merchandise Managers to resolve.
- <u>Paper, Chemistry, Supplies, and Product Shipped to Winn-Dixie Distribution Centers</u> – Invoices for these items shall be sent as products are shipped to Winn-Dixie's Accounting Department located at 5050 Edgewood Court, Jacksonville, FL. Remittance will be paid by Winn-Dixie to such lockbox that Konica designates on the invoice.
- <u>Paper Purchase Rebate/Shortfall</u> – Checks/Credit Memos/Invoices will be sent to the Category Manager of Photoprocessing in Winn-Dixie's Central Procurement Department, 7595 Centurion Parkway, Jacksonville, FL. These invoices will be supported by a calculation of the shortfall and the amount due similar in format to the example provided in **Schedule M** attached. Remittance of invoices will be paid by Winn-Dixie to the lockbox that Konica designates on the invoice.
- <u>Other</u> – Invoices for any other items not specifically identified above will be sent to the Directs Supervisor located at 5050 Edgewood Court, Jacksonville, FL. Remittance will be paid by Winn-Dixie to the lockbox that Konica designates on the invoice.

Further, Winn-Dixie acknowledges that it will not change the processing requirements without giving Konica thirty (30) days notice of these changes, where those changes are mutually acceptable to both parties.

Once per month, Konica will provide to Winn-Dixie a Statement of Account similar in format to that attached as **Schedule N**. Winn-Dixie acknowledges that the inclusion of an invoice on this statement does serve as notification that an invoice is in arrears. Accordingly, the inclusion of an invoice on this statement as a past due transaction satisfies the notice requirement of a past due invoice, in accordance with the procedure as outlined in Winn-Dixie's Letter to Vendors dated April 3, 2001, attached as **Schedule L, Exhibit A**. As such, if an invoice is included on this monthly statement, within 180 days of it's original due date, Konica will have satisfied this procedure, and Winn-Dixie will not dispute the transaction on the basis of it being out of compliance with this procedure.

Winn-Dixie shall provide advance written notice to Konica of any changes in personnel or billing addresses.

**24. DEFAULT.** If Winn-Dixie is in default in the payment of Equipment Lease Fees or any other material term, Konica may, in addition to any right or remedy which may be available to Konica at law or equity, (i) terminate this Agreement in whole or in part, and (ii) immediately take possession of the Equipment, parts, and/or supplies which are the subject of the default and replace and sell the same, and apply the proceeds of any such replacement or sale after

11

deducting all costs and expenses incurred in connection with the recovery, repair, storage and replacement or sale of the Equipment, in payment of the Equipment lease fees and other obligations due from Winn-Dixie to Konica after the date Konica takes possession hereunder, with Winn-Dixie remaining obligated and liable for any lease fees and other obligations prior to Konica taking possession, as well as any deficiency, including, but not limited to, collection costs, expenses, and attorney's fees. Notwithstanding the foregoing, in the event a default relates to a payment due to Konica or other event that can be corrected, Konica shall not have the right to terminate this Agreement until ten days after written notice to Winn-Dixie and opportunity to cure. In the event Konica is in default of any material term or condition of this Agreement, Winn-Dixie may, in addition to any right or remedy which may be available to Winn-Dixie at law or equity, terminate this Agreement in whole or in part and return the Equipment to Konica without any further obligations hereunder; provided, however, that in the event the default relates to a payment due Winn-Dixie or other event that can be corrected, Winn-Dixie shall not have the right to terminate this Agreement until ten days after notice to Konica and an opportunity to cure. The non-defaulting party shall be required to mitigate its damages in all events.

25. **DELIVERY AND FREIGHT.** Konica shall use its standard packaging. Konica shall choose the method of delivery. In the case of Equipment delivery, Konica shall pay the freight. Konica shall pay the freight for parts and supplies if the order is for ▓▓▓▓ ▓▓▓▓ dollars or more. Winn-Dixie shall pay the freight for all parts and supplies if the amount of the order is less than ▓▓▓▓▓▓▓ dollars.

26. **ASSIGNMENT.** This Agreement shall not be assigned by either party without the express written consent of the other party, which consent shall not be unreasonably withheld. Winn-Dixie also agrees that Konica has the right to subcontract any or all of its obligations hereunder to a third party of its choosing with prior written notice to Winn-Dixie, and provided that Konica remains primarily responsible for all of its responsibilities and obligations under this Agreement.

27. **NOTICES.** All notices required to be given under this Agreement shall be in writing and shall be sent by U.S. first class mail addressed to the respective parties at the addresses shown on Page 1 hereof, or at such addresses as the parties may later specify for such purpose.

28. **LIMITATION / DISCLAIMER OF LIABILITY.**

   a. Except for indemnified matters, and to the extent permitted by applicable law, the parties agree that Konica disclaims and hereby limits all liability of Konica with respect to, arising from, or in connection with this Agreement, or from the manufacture, installation, maintenance, repair or use of any Equipment covered by or furnished under this Agreement, whether in contract, or in tort, or otherwise, to the amount paid by Winn-Dixie to Konica hereunder.

   b. Konica represents and warrants that: (i) the Equipment and services provided hereunder shall materially conform to applicable specifications, drawings, samples and descriptions; (ii) the Equipment shall be of good material and workmanship and free from defects; (iii) the services shall be performed in a professional and good workmanlike manner; and (iv) the design, manufacture, use and lease of the

12

Equipment does not infringe upon or violate any patent, trademark, trade secret, copyright or other rights of any party. As long as this Agreement is in effect, all warranties shall survive inspection, acceptance and payment and shall remain in effect for the period of the lease of the Equipment. NOTWITHSTANDING THE FOREGOING, KONICA DISCLAIMS THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND THE IMPLIED WARRANTY OF MERCHANTABILITY.

c. KONICA DISCLAIMS LIABILITY FOR INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOSS OF USE, REVENUE, OR PROFIT) WHETHER SUCH CLAIM ALLEGES BREACH OF CONTRACT, TORTIOUS CONDUCT INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE, OR ANY OTHER THEORY, WHETHER OR NOT INFORMED OR AWARE OF SUCH CLAIM OF DAMAGE. REMEDIES SET FORTH HEREIN ARE EXCLUSIVE.

d. Konica hereby grants to Winn-Dixie a personal, nontransferable, non-assignable, limited software license to use the Equipment for its day-to day operations at the address where the Equipment is located. Neither Winn-Dixie nor anyone under its control shall make or permit to be made copies of or otherwise reproduce any documentation or software provided by Konica or included with or in the Equipment.

## 29. INDEMNITY.

a. Winn-Dixie agrees to indemnify, protect and hold Konica, as well as any and all of its employees, officers and directors harmless from and against any and all liabilities (including, but not limited to, negligence, tort, and strict liability), obligations, losses, damages, claims (including any third party claims), demands, penalties, actions, costs and expenses, including reasonable attorney fees, of whatsoever kind and nature (including without limitation, claims arising out of the theory of strict liability in tort and any claims under or in any way based on any environmental laws or regulations, claims of injury, death or property damage) which are the result of the acts or omissions of Winn-Dixie or its employees, agents, licensees, invitees, guests or contractors and which arise out of or in connection with (a) this Agreement, (b) the modification of the Equipment without Konica's prior written consent; (c) the use or operation of the Equipment; provided that Winn-Dixie shall have no such liability to the extent arising from the negligence or willful misconduct of Konica, its agents, contractors, employees, officers and directors.

b. Konica agrees to indemnify, protect and hold Winn-Dixie, as well as any and all of its employees, officers and directors harmless from and against any and all liabilities (including, but not limited to, negligence, tort, and strict liability), obligations, losses, damages, claims (including any third party claims), demands, penalties, actions, costs and expenses, including reasonable attorney fees, of whatsoever kind and nature (including without limitation, claims arising out of the theory of strict liability in tort and any claims under or in any way based on any environmental laws or regulations, claims of injury, death or property damage ) which are the result of the acts or omissions of Konica or its employees, agents, licensees, invitees, guests or contractors

and which arise out of or in connection with (a) this Agreement; (b) the ownership, leasing, financing, maintenance, use, condition, operation or return of the Equipment; (c) any trademark infringement related to any Equipment or Konica brand supplies; (d) the condition of the Equipment when leased or disposed of after use by Winn-Dixie, and Konica shall at its sole expense defend any and all such claims, proceedings, actions and suits, provided that Konica shall have no such liability to the extent arising from the negligence or willful misconduct of Winn Dixie, its agents, employees, officers or directors.

c. The indemnities and assumptions of liabilities and obligations contained in this section shall continue in full force and effect notwithstanding the expiration or termination of this Agreement.

30. **FORCE MAJEURE.** Neither party shall be responsible for delays or failure in performance of this Agreement (other than failure to make payment) to the extent that such party was hindered in its performance by any act of God, civil commotion, labor dispute, or any other occurrence beyond its reasonable control.

31. **SEVERABILITY.** If any provision of this Agreement shall be unlawful, void or for any reason unenforceable, then that provision shall be deemed severable from this Agreement and shall not affect the validity and enforceability of the remaining provisions of this Agreement.

32. **APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Florida and the Uniform Commercial Code as adopted therein without regard to choice of law principles.

33. **WINN-DIXIE DOCUMENTATION.** Winn-Dixie agrees that any Purchase Order or other documentation issued to Konica covering the Equipment or maintenance is issued for purposes of Winn-Dixie's authorization and internal use, and any terms and conditions contained therein shall be null and void, and of no effect, and shall not modify or add to the terms and conditions of this Agreement.

34. **ENTIRE AGREEMENT.** This Agreement, the Indemnity Agreement dated _____ by and between Winn-Dixie and Konica, and the agreements and documents referred to herein constitute the entire agreement of the parties with respect to the transactions contemplated hereby and supersede all other agreements between the parties, whether written or oral, with respect to such transactions. This Agreement may not be amended, except in a writing signed by each of the parties hereto.

35. **WAIVER OF JURY TRIAL.** EACH PARTY TO THIS AGREEMENT EXPRESSLY AND VOLUNTARILY WAIVES ANY AND ALL RIGHTS TO DEMAND A JURY TRIAL IN ANY ACTION CONCERNING THIS AGREEMENT.

**IN WITNESS WHEREOF,** this Agreement shall become effective on the date first written above when signed by authorized representatives of both parties.

Winn-Dixie Stores, Inc.                        Konica Photo Imaging, Inc.

By: _____                    By:_____
Duly Authorized                                Duly Authorized
Print Name _____                     Print Name_____

Date: _____                    Date: _____

/j
wd02
1/28/03