IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                    :
                                                          :    Case No.: 3-05-bk-03817-JAF
WINN-DIXIE STORES, INC., et al.,                          :    Chapter 11
                                                          :    JOINTLY ADMINISTERED
                        Debtor(s).                        :
                                                          :

## RESPONSE BY THE COMMITTEE OF EQUITY SECURITY HOLDERS TO THE JOINT MOTION OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR TELEPHONIC STATUS CONFERENCE

### I. Introduction

The Board of Directors of Debtor Winn-Dixie Stores, Inc. ("Winn-Dixie") is entrenched. There are no independent or disinterested Board members. Not one. From 2000 through 2004, the entrenched Board declared and paid dividends totaling approximately $400 million. Just eight (8) months later, it sought protection from this Court. There is not one risk factor in all Winn-Dixie's public filings during the period 2000 through 2004 suggesting that Winn-Dixie was in danger of going into bankruptcy. Not one. During this time the value of the stockholders' equity went from over $4 billion to zero as alleged by the Debtors.

The unusual joint motion of the Official Committee of Unsecured Creditors (the "Creditors Committee") and the Debtors to hold a telephonic status conference is another step in furtherance of a collusive strategy which raises the central questions truly before this Court: (1) Will the entrenched officers, directors and representatives of the Debtors, and the entirely in-the-money creditors, be allowed, through procedurally infirm back channel discussions with the U.S.

Trustee,[1] to disenfranchise approximately 36,000 equity holders and to eliminate the one entity that has effectively represented equity?;[2] (2) Will those who benefit the most from a truncated, underfunded, and ineffective forensic and factual investigation (the entrenched Debtors' agents and the creditors who seek to take all, or substantially all, of the equity in the reorganized Debtors) be allowed to continue to delay, diminish and undermine the investigation demanded by the Equity Committee?; (3) Will the approximately 36,000 equity holders have, as they did until a week and a half ago, an official committee to protect against the possibility that, at the time of exit, the entrenched Debtors' agents will trade equity value owned by others to the creditors in exchange for releases from the estates, an enhanced financial position, and/or continued post-exit control over the very same enterprise they mis-managed into bankruptcy?

As these questions suggest, the issues before this Court are far larger and far more critical to the estate as a whole than the Debtors and the Creditors Committee would have this Court believe.

## II.  The Equity Committee's Position as to the Appropriate Outcome of the January 23, 2006 Telephonic Conference

### The Joint Movant's Efforts to Misdirect this Court and Delay, Through Discovery and Process, the Reinstatement of the Equity Committee Should Be Rejected and this Court  Should Immediately Reinstate the Equity Committee

The Debtors at all times represented to this Court and to Winn-Dixie's 36,000 shareholders that they support the Equity Committee.  Outside the presence of this Court, however, the Debtors secretly lobbied the U.S. Trustee to disband the one committee seeking to

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Official Committee of Equity Security Holders' (I) Objection and Motion to Set Aside the United States Trustee's Notice of Disbandment of Equity  Security Holders Committee and (II) Motion for Appointment of Equity Security Holders Committee Nunc Pro Tunc to January 11, 2006.

[2] The U.S. Trustee's issuance of a unilateral notice of disbandment constitutes an abuse of discretion designed to deprive this Court of jurisdiction over the pending, but abated, Disbandment Motion.

ensure a recovery of the full value of the Debtors' estates through (A) the negotiation of the plan of reorganization and (B) a truly independent investigation of precisely how Winn-Dixie's entrenched Board led this enterprise into bankruptcy. The Debtors told the U.S. Trustee that they believed there was no possibility of recovery to equity holders despite the *improving* operational performance of the Debtors, as evidenced by public filings and comments made by management to the press, and did so only *after* the Equity Committee sought an independent investigation.

Irrespective of the duplicity of the Debtors and the U.S. Trustee's fatally flawed January 11, 2006 decision, this Court has the authority to appoint the Equity Committee *de novo*. In sum, the entire thrust of the telephonic status conference sought by the Debtors and the Creditors Committee, namely the supposed need for delay and cumbersome discovery, is a straw man and an attempt to misdirect this Court from determining the actual issues at hand in this proceeding.

In today's status conference, the Court will hear that time-consuming and expensive discovery is required to decide whether to reinstate the Equity Committee. No doubt, the Court will also hear that this discovery must precede the already-delayed independent investigation initially announced publicly on December 8, 2005 at the Equity Committee's insistence. These observations, of course, are untrue and irrelevant. This Court already has before it sufficient facts to apply the appropriate standard and to immediately reinstate the Equity Committee. Moreover, the discovery the Debtors and the Creditors Committee will demand at today's status conference bears no relation to the question of whether the Equity Committee should remain in place.

### The Court Has the Authority to Immediately Reinstate the Equity Committee

Under Section 1102(a)(2) of the Bankruptcy Code, bankruptcy courts "may order appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." A three-prong

standard is used to determine the need for an equity committee.  In re Johns-Manville Corp., 68

B.R. 155, 159 (S.D.N.Y. 1986); In re Edison Bros. Stores, Inc., 1996 U.S. Dist. LEXIS 13769

(D. Del. 1996).  The Edison Brothers Court held:

> courts have considered (1) the number of shareholders, (2) the
> complexity of the case, and (3) whether the cost of the additional
> committee outweighs the concern for adequate representation.  In
> re Wang Laboratories, Inc., 149 B.R. 1 (Bankr. D. Mass. 1992)
> (citing tripartite test of In re Johns-Manville Corp., 68 B.R. 155
> (S.D.N.Y. 1986).

See id. at 11.[3]

### a)    Winn-Dixie's Stock is Widely Held and Publicly Traded

In Johns-Manville, the court ruled that, "when the debt is widely held [or in this case,

equity] official committee representation is usually necessary to ensure that the shareholders are

adequately represented." 68 B.R. at 159.  See also, In re Baldwin-United Corp., 45 B.R. 375,

376 (Bankr. S.D. Ohio 1983) ("[An equity committee] is necessary to assure adequate

representation of the 15,000-plus holders of Baldwin-United common stock"); In re White Motor

Credit Corp., 27 B.R. 554, 558 (N.D. Ohio 1982).  As acknowledged by the Debtors, this factor

is easily satisfied.

### b)    The Debtors' Cases Are Large and Complex

These cases involve twenty-four (24) debtors and a complex financial structure including

an $800 million debtor-in-possession secured financing facility.  More than 10,000 creditors

have filed proofs of claim in these cases and there are approximately 36,000 equity holders at the

parent level.  See, e.g., In re Beker Industries Corp., 55 B.R. 945, 949 (Bankr. S.D.N.Y. 1985)

---

[3] In all their prior filings with this Court, the Debtors have represented to this Court, and to all equity holders, that
the factors have been met and that they support the appointment of the Equity Committee.

("[a] large case brings with it not only a varied debt structure but a complex business requiring significant post-petition financing and heavily negotiated plan").

The Equity Committee ensures that equity holders are represented during these bankruptcy proceedings, including participating in plan negotiation. This factor is particularly critical in this case given prior efforts to exclude the Equity Committee from plan negotiations, and the surreptitious nature of the relationship between the Debtors and the Creditors Committee.[4]

    c)    <u>The Need for Adequate Representation Far Outweighs the Cost of an Official Equity Committee</u>

The cost of an official committee is far outweighed by the large number of shareholders, the complexity of this case, and the need for adequate representation of the interests of *all* equity holders. The need for adequate representation of the shareholders is paramount in this case because:

- Winn-Dixie's board of directors owe fiduciary duties to parties other than shareholders;

- Winn-Dixie's board of directors, officers and senior management are hardly independent or disinterested;

- Winn-Dixie may have claims against its pre-petition directors, officers and senior management and such parties remain in control of Winn-Dixie;

---

[4] The Debtors and the Debtors' professionals have excluded the Equity Committee from numerous discussions with the Creditors Committee regarding the structure of a proposed plan reorganization. The disclosures prompted the Court to state:

> I think the equity committee is a committee, and they're valid, and they've got financial advisors and legal advisors and, as long [as] they're there, they need to be included in the loop, and we don't need to have any litigation and request for production and discovery situation here. They just sidetrack things.

Transcript of December 15, 2005 Hearing Before the Honorable Jerry A. Funk, U.S. Bankruptcy Court Judge, p. 105. Despite the statements on the record and the requests from the Equity Committee's professionals, the Debtors never provided the Equity Committee with any information regarding the structure of a proposed plan of reorganization. The Debtors' refusal to negotiate with the Equity Committee only highlights the necessity of an official committee to adequately represent the interests of all shareholders.

- the Creditors Committee has an economic incentive directly adverse to existing shareholders; and

- there are no other parties to represent the approximately 36,000 equity holders of Winn-Dixie.

Only the Equity Committee can negotiate on behalf of all equity holders and ensure that the full value of the Debtors' estates is established and the Debtors do not upon exit waive or release any potential claims against Winn-Dixie's pre-petition directors, officers, senior management or third party professionals.

The shareholders' interests are clearly not protected by the Creditors Committee. Indeed, the Creditors Committee is not interested in expanding the size of the estate. Rather, the Creditors Committee is interested only in taking for itself all or substantially all of the equity in the reorganized Debtors.

The Debtors and the Creditors Committee intend to move forward with negotiation of a plan of reorganization. Indeed, the Debtors have announced their intent to file a proposed plan of reorganization on or before March 20, 2006. The Debtors and the Creditors Committee should not be permitted to negotiate and proceed to confirmation in this case without an official equity committee, particularly where the true value of the Debtors' estates have not been established, the financial operations of the Debtors continues to improve and viable claims against those responsible for the bankruptcy filings have not been investigated.

### III. Conclusion

This Court must act immediately to reinstate the Equity Committee nunc pro tunc to January 11, 2006. This Court must also act immediately to initiate a full and fair investigation of the facts and circumstances leading up to the Debtors' filings for bankruptcy.

Although the U.S. Trustee clearly abused its discretion in disbanding the Equity Committee, this Court should not fall into the Debtors and Creditors Committee's trap by

reviewing the details of that flawed decision but should act fully within its own powers under the

Bankruptcy Code by immediately reinstating the Equity Committee and appointing an examiner.

[signatures on next page]

Respectfully submitted this 23rd day of January, 2006.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

Karol K. Denniston
Ga. Bar No. 218333
Carolyn (Keri) Chayavadhanangkur
Ga. Bar No. 122152
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400
karolkdenniston@paulhastings.com
carolynchayavadhanangkur@paulhastings.com

And

PAUL, HASTINGS, JANOFSKY & WALKER LLP
James D. Wareham
DC Bar No. 411799
875 15th Street
Washington, DC 20005
Telephone: (202) 551-17000
jameswareham@paulhastings.com

And

JENNIS & BOWEN, P.L.

/s/David Jennis_____
David Jennis
Fla. Bar No. 775940
Chad S. Bowen
Fla. Bar No. 0138290
400 North Ashley Drive
Suite 2540
Tampa, FL 33602
Telephone: (813) 229-1700
djennis@jennisbowen.com
cbowen@jennisbowen.com

*Co-Counsel for the Official Committee of Equity Holders*