## LEASE BUYOUT AGREEMENT
### (WD Store #2386)

THIS LEASE BUYOUT AGREEMENT ("Agreement") is made as of September 30, 2004, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation (together with its successors and assigns, "Tenant") and **WOOLBRIGHT/SSR MARKETPLACE, LLC**, a Delaware limited liability company (together with its successors and assigns, "Landlord").

### RECITALS:

1. Landlord has entered into a contract to purchase the Shopping Center, as hereinafter defined, from Orlando Marketplace, Ltd. (the "Seller").

2. Tenant is a party to a lease dated April 13, 1982 (as amended from time to time, the "Lease"), pursuant to which Tenant rented and occupied certain real property and improvements located in the City of Orlando, Orange County, Florida, such property being more particularly described in the Lease (the "Premises").

3. A Short Form Lease dated April 13, 1982 has been recorded in Official Records Book 3335, page 192 of the public records of Orange County, Florida and the Amendment of Lease and Short Form Lease dated November 21, 2000, recorded in Official Records Book 6142, page 124 of the public records of Orange County, Florida (collectively, the "Short Form").

4. The term of the Lease is scheduled to expire on December 31, 2007 (the "Scheduled Expiration Date").

5. Contingent on Tenant's acquisition of the Shopping Center and the consent of the Lender (as that term is defined below) to this Agreement, Tenant and Landlord desire to terminate the Lease and to enter into a lease buyout agreement and to release Tenant from any obligations under the lease on the Release Date (as that term is defined below), upon the terms and conditions stated herein.

1

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant agree, represent, and/or warrant, as applicable, as follows:

1. The foregoing recitals are true and correct and incorporated herein by reference.

2. Provided that Landlord closes the acquisition of the Shopping Center, and provided further that the Lender consents in writing to this Agreement, then on the next business day following the later to occur of the closing of the acquisition of the Shopping Center by Landlord or the receipt by Landlord of the written consent of the Lender to this Agreement (such date is hereinafter called the "Release Date"), the Lease shall terminate, subject to the provisions set forth herein. On the Release Date, Tenant shall tender to Landlord, and Landlord shall accept from Tenant, the Premises "as is," in its then current condition; provided, however, that Tenant will not remove any fixtures from the Premises from and after the date of this Agreement without the prior written consent of Landlord. The parties acknowledge and agree that the rights and obligations arising under this Agreement are contingent upon the acquisition of the Shopping Center by Landlord and the receipt by Landlord of the written consent to this Agreement by Lender. If either of these two conditions are not satisfied by October 1, 2004, then this Agreement shall terminate and be of no further force or effect, the parties will be released from any further obligation or liability hereunder, and the Lease shall remain in full force and effect.

3. Beginning on the Release Date, Tenant shall not be obligated to pay minimum guaranteed rental (or any additional rental or other charges under the Lease). Instead, Tenant will pay to Landlord, or Landlord's designee, $550,000.00 (the "Termination Payment"). The Termination Payment shall be paid in ten (10) monthly installments of $55,000.00 each, which installments shall be due and payable on the first day of the month. Upon Landlord's receipt of the full Termination Payment, Tenant shall be released from any and all obligations relating to payments under this Agreement. If the Release Date shall be after September 1, 2004, then Tenant will receive as a credit against the Termination Payment any base rent and operating expense pass throughs actually paid on or after September 1, 2004, by Tenant under the Lease, with any such

payments credited to the total amount due and with a corresponding pro-rata reduction in the amount of each monthly payment.

The failure of or refusal by Tenant to make any payment due under this Agreement when due, and the subsequent failure or refusal by Tenant to cure such failure or refusal within ten (10) days after written notice is given to Tenant by Landlord specifying such failure, shall constitute an Event of Default ("Event of Default") hereunder. Upon the occurrence of any Event of Default, Landlord shall have the option to declare the entire amount due under this Agreement immediately due and payable without further notice or demand, and Landlord may exercise any of its rights under this Agreement or at law or in equity. After acceleration or maturity, Tenant shall pay interest on the outstanding balance due under this Agreement at the rate of 15% per annum. Venue for any litigation arising out of this Agreement shall be exclusively in Orange County, Florida.

If this Agreement is placed in the hands of an attorney for collection, Tenant agrees to pay reasonable attorneys' fees and costs incurred by Landlord in connection therewith, and in the event suit or action is instituted to enforce or interpret this Agreement (including without limitation efforts to modify or vacate any automatic stay or injunction), the prevailing party shall be entitled to recover all expenses reasonably incurred at, before or after trial and on appeal, whether or not taxable as costs, or in any bankruptcy proceeding, or in connection with post-judgment collection efforts, including, without limitation, attorneys' fees, witness fees (expert and otherwise), deposition costs, copying charges and other expenses.

4. Except for Tenant's obligation to continue to pay the Termination Payment, commencing on the Release Date, the Lease and all covenants, representations, warranties, agreements, duties, obligations, and liabilities contained in or arising from the Lease are terminated. Except for Tenant's obligations to continue to pay the Termination Payment, as of the Release Date, Landlord and Tenant do hereby release and discharge each other, including their respective subsidiaries, affiliates, officers, directors, agents, and employees from all covenants, representations, warranties, agreements, duties, obligations, and liabilities, whether known or unknown, foreseen or unforeseen, under or in connection with the Lease or Tenant's use or

occupancy of the Premises.

5. Landlord represents and warrants to Tenant that, as of the Release Date, Landlord will be the owner and holder of fee simple title to the Premises and that Landlord's title shall be unencumbered by the lien or security interest of any lender, except LaSalle Bank National Association, in its capacity as trustee for the registered holders of CDC Commercial Mortgage Trust 2002 FX-1, Commercial Mortgage Pass-Through Certificates, Series 2002-FX-1 (the "Lender").

6. Tenant represents and warrants to Landlord that it is the sole owner of the leasehold interest created by the Lease and that such leasehold interest is unencumbered. Landlord and Tenant each represents and warrants to the other that it and the person signing on its behalf have the power and the lawful authority to execute, deliver and enforce this Agreement, and that no consent, authorization, approval, or notice to any other party is necessary in connection with the execution and delivery of this Agreement by Landlord or Tenant, respectively, or their respective representatives, or as a prerequisite to its enforceability against Landlord or Tenant, respectively.

7. The financial terms of this Agreement are proprietary in nature to the parties hereto, and shall be kept strictly confidential. Neither party shall provide this Agreement, a copy of this Agreement, or any financial information contained herein to any third party without the prior written consent of the other party. Notwithstanding the foregoing, Landlord shall be permitted to disclose the financial terms of this Agreement without the consent of Tenant to the Lender, any prospective lender, Landlord's prospective investors, Landlord's counsel and accountants, and other agents involved in the acquisition of the Shopping Center, provided they agree to maintain such terms in strict confidence, and as otherwise required by law.

8. Neither Landlord nor Tenant shall record this Agreement, but, after the Release Date, a counterpart of this Agreement, with financial terms stricken, may be recorded in the Office of the Clerk of Court of Orange County, Florida, to evidence termination of the Lease of record.

9. This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10. The parties hereby knowingly and voluntarily waive any right which either or both of them may have to receive a trial by jury with respect to any controversies directly or indirectly arising out of, or related to, this Agreement.

11. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which when considered together shall be deemed one instrument.

*[remainder of page left blank intentionally]*

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this Agreement as of the date first above written.

Signed, sealed and delivered
in the presence of:

Print Name: _Dolinne Roggin_

Print Name: _Xuan Nguyen_

**WOOLBRIGHT/SSR MARKETPLACE, LLC, a Delaware limited liability company**, by Woolbright/SSR Marketplace Manager, LLC, a Delaware limited liability company, its Managing Member

By: _Michael Fimiani_
Its: _Member_

Print Name: _NANCY B. BAILEY_

Print Name: _LUCY W. McCOOK_

**WINN-DIXIE STORES, INC.**

By: _Paul Novak_
Its: _CHIEF DEVELOPMENT OFFICER & SR. V.P._

## CONSENT

The undersigned, the owner and holder of a mortgage upon the Premises, hereby consents to the terms and conditions of this Agreement.

LASALLE BANK NATIONAL ASSOCIATION, in its capacity as trustee for the registered holders of CDC Commercial Mortgage Trust 2002 FX-1, Commercial Mortgage Pass-Through Certificates, Series 2002-FX-1

Print Name: _____

By: _____

Print Name: _____

Its: _____

STATE OF _____ )
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ ____, 200__, by _____, as _____ of LaSalle Bank National Association, a national banking association, in its capacity as trustee for the registered holders of CDC Commercial Mortgage Trust 2002 FX-1, Commercial Mortgage Pass-Through Certificates, Series 2002-FX-1, on behalf of the Bank, who **[PLEASE CHECK ONE]** _____ is personally known to me or _____ has produced _____ as identification.

Printed Name: _____
Notary Public, State and County aforesaid.
My Commission Expires: _____
Notary ID No.: _____

(NOTARIAL SEAL)