# Exhibit "A"

# LEASE

THIS LEASE, made this **19th** day of **June**, 19**89**,

between   **BAUMGARDNER-HOGAN, INC., a Kentucky corporation,**

_____ (hereinafter called "Landlord"),

and   **WINN-DIXIE LOUISVILLE, INC., a Kentucky corporation,**

_____ (hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## WITNESSETH:

**PREMISES**

That the Landlord, in consideration of the rents herein reserved and of the covenants of the Tenant, does hereby lease and demise unto the Tenant, for the term hereinafter specified, the following described land and improvements thereon:

That certain piece, parcel or tract of land located at **the southerly corner of the intersection of Cane Run Road and Crums Lane**

in the ~~City of~~ _____, County of **Jefferson**,

State of **Kentucky**, more particularly described as:

> See Exhibit "B" attached hereto and by this reference made a part hereof for legal description of demised premises.

Together with a store building, approximately 220 feet in width by 200 feet in depth together with vestibule entry measuring approximately 82 feet in width by 11 feet 9 inches in depth, containing approximately 46,328 square feet, and pad mounted cooler and freezer annexes on the rear thereof, parking area, sidewalks, service areas and other improvements to be constructed thereon by Tenant according to plans and specifications to be approved by the parties as herein provided, such improvements being more particularly shown on Plot Plan dated April 18, 1989 by Daugherty & Trautwein, Incorporated, Louisville, Kentucky, attached hereto as Exhibit "A" and by this reference made a part hereof.



WD 33-13

TERM    1.    FOR THE TENANT TO HAVE AND TO HOLD for an initial term of twenty (20) years from the date of completion of Tenant's store building and the opening thereof for business and upon full reimbursement by Landlord to Tenant of Tenant's construction costs of the improvements and the real property described on Exhibit "B" in the total sum of Two Million Nine Hundred Thirty-One Thousand Five Hundred and 00/100 Dollars ($2,931,500.00).

In the event Landlord shall fail to reimburse Tenant in full for the amount of Tenant's construction cost of the improvements and the real property described on Exhibit "B" in the total sum of Two Million Nine Hundred Thirty-One Thousand Five Hundred and 00/100 Dollars ($2,931,500.00), within thirty (30) days after demand therefor, Tenant shall have the right to terminate this lease or to offset the amount thereof, or such portion thereof as shall remain unpaid from time to time together with the highest rate of interest allowed under Kentucky law, against any and all rentals payable under the terms of this lease.

RENTAL    2. The Tenant agrees to pay to the Landlord as a minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of __Three Hundred One Thousand Nine Hundred Forty-Four and 00/100_____ Dollars ($__301,944.00__) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of __Twenty-Five Thousand One Hundred Sixty-Two and 00/100_____ Dollars ($__25,162.00__) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof.

In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which __---one---__ per cent ( --------1%) of Tenant's gross sales made from the demised premises in each fiscal year ending approximately June 30th during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental.

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

**DEFINITION OF "GROSS SALES"**

2a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) ~~any~~, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

incidental

**RECORD OF SALES**

2b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord. In the event Landlord shall audit Tenant's records, and such audit shall show a discrepancy of three percent (3%) or more in the annual statement of gross sales, the cost of the audit shall be borne by the Tenant.

**CONSTRUCTION OF DEMISED PREMISES**

3. Tenant, at its sole cost and expense, has heretofore or shall complete construction of the store building, sidewalks, service area and cooler pads in the locations as shown on Exhibit "A" attached hereto for Tenant's use and occupancy. Tenant at its own expense, has also furnished and installed its own trade fixtures, and its compactor on concrete pads erected by Tenant. The trade fixtures, equipment, and compactor paid for by Tenant and not reimbursed by Landlord, shall remain the property of Tenant and may be removed by Tenant from the demised premises at any time. Any damage to the store building as result of Tenant's removal of such fixtures or equipment will be repaired by the Tenant. Trade fixtures shall mean those items of removable personal property which constitute trade fixtures under Kentucky law.

**UTILITIES**

4. Tenant agrees to pay all charges for telephone, gas, electricity, water and all other utilities used by Tenant on the premises, and the Landlord agrees to provide access to such utilities at all times during the term of this lease.

REPAIRS     5. Upon completion of construction of the improvements upon the demised premises in accordance with the plans and specifications, Tenant agrees, at its sole cost and expense, to maintain the building and appurtenances and other improvements on the demised premises and the sidewalks, parking and service areas, in good and tenantable condition and repair throughout the term of this lease, and any extensions thereof; and to make all repairs to the improvements, structural and otherwise, both interior and exterior, necessary to preserve the same in good order and condition; and to repair, at or before the end of the term of this lease, or any extensions thereof, all injury done by the installation or removal of furniture, fixtures and property.

         with an earthquake endorsement

TAXES AND    6. During the term of this lease, and any extensions thereof, Tenant agrees
INSURANCE    to pay and reimburse to Landlord as additional rental the amount of the annual ad valorem real estate taxes levied against the demised premises, and also the annual premium cost of public liability and fire and extended coverage insurance on the building on the demised premises. The amount of taxes attributable to the demised premises and for which Tenant is to reimburse Landlord shall be less the maximum amount of any abatements, discounts or refunds permitted by law thereon. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements and insurance premium statements as evidence of the taxes and insurance premiums chargeable to Tenant, and such additional rental shall be payable by Tenant within thirty (30) days after tender by Landlord to Tenant of such paid tax and insurance statements. Any payments made by Tenant to Landlord under the provisions of this Article shall be prorated for fractional years occurring at the beginning and expiration of the term of this lease, or any extensions thereof. Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of the Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to Landlord. Any special assessments, improvement liens and the like (other than ad valorem real estate taxes) which are assessed during the term of this lease, or any exercised option extensions hereof, but which are payable in whole or in installments after the expiration or termination of this lease, shall be adjusted and prorated and Landlord shall pay the prorated share thereof for the period subsequent to such expiration or termination, and Tenant shall pay the prorated share thereof prior to such expiration or termination, it being intended that Tenant shall be obligated to reimburse Landlord only for such installments as may become due during the term of this lease, or any exercised option extensions thereunder.

FIXTURES     7. The Tenant, at its own expense, may from time to time during the term of this lease make
AND            any alterations, additions and improvements in, on and to the demised premises which it may
ALTERATIONS   deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

        Tenant may construct and build or install on and in said premises any and all signs, racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which signs, racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

-4-

**INDEMNIFICATION** 8. The Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of accident or damage to any person or property happening on or about the demised premises, except in case of accident or damage caused by the fault or negligence of Landlord, its servants, agents or employees.

**FIRE** 9. In the event that Tenant's building shall be totally destroyed or damaged to any extent by fire or other casualty Landlord agrees to proceed promptly and without expense to Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored, provided, however, if such damage to Tenant's building to the extent of fifty percent (50%) or more occurs within the last three (3) years of the lease term hereof (whether the original lease term or an extension thereof, if then or theretofore this lease has been extended pursuant to the term hereof), then in such event Landlord shall have no obligation to restore Tenant's building unless Tenant agrees to extend the lease term hereof on the same conditions and for the same rentals so as to expire ten (10) years from date of completion of such restoration by Landlord, such extension to be in addition to and not in lieu of any renewal privileges then remaining available to Tenant, which renewal options shall not thereby be exercised. Failing such notice to extend, Landlord at its option shall have the right to terminate this lease or to restore the premises and the lease shall continue for the remainder of the then unexpired term.

In the event that Landlord shall fail within a reasonable time, not to exceed thirty (30) days following such damage (except as in this paragraph provided), to proceed with and within a reasonable time commensurate with the amount of damage, not to exceed six (6) months following such damage, to complete any repairs and restoration of the demised premises as herein required Tenant may, at its option, in either of such events, terminate this lease by giving to Landlord written notice thereof. If Landlord's failure to commence or complete said repairs within the stipulated times shall be due to strikes, war, material shortages, weather conditions or similar happenings beyond its control, and provided further the repairs are completed with all due diligence commensurate with such delay, such option to terminate shall not arise. If the lease shall terminate as aforesaid and any rent shall have been paid by Tenant in advance, Landlord agrees to refund to Tenant all rent so paid applicable to the period subsequent to such damage or destruction.

Landlord shall carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant ~~and~~ ~~~~ in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees; and Tenant hereby expressly waives any and all claims against the Landlord for loss or damage to Tenant's merchandise, fixtures and equipment due to fire, explosion, windstorm or other casualties, regardless of the cause of such damage, including without limitation, damages resulting from the negligence of the Landlord, its agents, servants, or employees.

**QUIET ENJOYMENT** 10. The Landlord covenants, warrants, and represents that upon commencement of the lease term, the demised premises will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

-5-

The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business, including parking in conjunction therewith, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting the Tenant from conducting a general mercantile business, including parking in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

**TAXES AND LIENS**

11. All taxes, assessments, and charges on land or improvements and obligations secured by mortgage or other lien upon the premises shall be promptly paid by Landlord when due. The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at six per cent (6%) per annum.

**CONDEMNATION**

12. If any part of the store building located on the demised premises be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, or in the event that any portion in excess of ___fifteen___ per cent ( 15 %) of the overall parking area constructed for Tenant's use on the demised premises be so taken, or in the event that any portion of the demised premises (including parking area) be so taken so as to interfere materially or substantially with the conduct of Tenant's business in the demised premises, then in any such event, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as above provided, or in the event of any taking which does not permit a termination by the Tenant, the Landlord shall promptly restore the premises to a condition comparable to the condition at the time of taking, and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances.

Notwithstanding the foregoing, however, Tenant shall not be entitled to any award for the loss of or loss in value of leasehold, but only to an award for loss of or damage to its trade fixtures and for the unamortized cost of any improvements made by Tenant, and moving expenses if allowable, and such awards as are provided to Tenant under law.

**DEFAULT**

13. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but the Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default.

**BANKRUPTCY**     14. The Tenant further covenants and agrees that if, at any time, the Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease at an end and shall forthwith be entitled to immediate possession of the premises.

**EXCLUSIVE SUPERMARKET**     15. The Landlord agrees that, if it owns or controls any property located within five hundred (500) feet of the demised premises, it will not, without the written permission of the Tenant, directly or indirectly, lease or rent such property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any staple or fancy groceries, meats, fish, fruits, vegetables, dairy products, bakery goods, or frozen foods; nor will the Landlord permit any tenant of any such property to sublet in any manner, directly or indirectly, any such property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any of the above listed items.

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name an address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provision herein to the contrary, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of the terms of this exclusive provision as to property located within 1500 feet of any exterior boundary of the demised premises, but nothing herein shall deprive Tenant of any rights of recourse against Landlord, its heirs, legal representatives, successors and assigns, by way of suit for damages or injunctive relief, or as otherwise provided by law, in the event of any such violation.

For purposes of this Article 15, the term "Landlord" shall mean the then current Landlord under this lease and a violation of this Article by a previous Landlord shall not constitute a default under the terms of this lease.

**NUISANCES**     16. The Tenant agrees that the leased demised premises or any portion thereof shall not be used for any illegal or unlawful purpose, and that the Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon.

**EXTENSIONS**     17. It is further agreed that Tenant, at its option, shall be entitled to the privilege of __four__ ( 4 ) successive extensions of this lease, each extension to be for a period of __five__ ( 5 ) years and on the same terms and conditions and at __the same rental as provided herein for the initial lease term.__

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least __six (6) months__ before the expiration of the initial term, and if extended, at least __six (6) months__ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

-7-

**NOTICES**

18. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at, _____

_____ P. O. Box 7606 _____

_____ Louisville, Kentucky  40207 _____
or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by certified or registered mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to the Tenant at P. O. Box 17121, Shelby Station

_____ Louisville, Kentucky  40217 _____

or to such other address as Tenant may from time to time direct by written notice forwarded to Landlord by registered or certified mail.

**END OF TENANCY**

19. The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct.

**ARBITRATION**

20. In the event there should arise any misunderstanding between the parties hereto as to the compliance with the terms and conditions of this lease upon the part of either of the parties hereto, or as to whether the premises tendered by the Landlord have been improved in substantial conformity with the plans and specifications approved by the parties, or as to whether either party has ground hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties hereto agree upon one; otherwise, to a board of three arbitrators, of whom one shall be selected by each party within ten (10) days after such 30-day period, and a third person shall be selected by these two; and the decision and award of such single arbitrator if only one is used, or any two of such board, if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively, and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction. Each of the parties hereto covenants to abide by any such arbitration decision.

**ASSIGNMENT AND SUBLEASING**

21. The Tenant may without the consent of the Landlord vacate the demised premises, or assign this lease or sublease the demised premises in whole or in part; provided, however, Tenant may not without written consent of Landlord, so assign this lease or sublease the demised premises for use other than as a supermarket, and if Tenant desires to so assign or sublease for any other use, it shall give written notice to Landlord of its intention and shall reveal the identity of the intended assignee or sublessee, in which case Landlord shall within three (3) months of the date of delivery of such notice advise Tenant in writing of its approval or disapproval of such intended assignment or subleasing. If Tenant receives notice of Landlord's approval within such period, Tenant may proceed in due course. If Landlord shall disapprove the intended assignment or subleasing by written notice to Tenant, this lease shall be deemed terminated and cancelled without the execution of any other or further document, and both parties hereto shall be released of and from any further liability thereafter hereunder. If Landlord does not respond within such time period, Landlord shall be deemed to have consented to such subletting or assignment.

-8-

In the event Tenant shall voluntarily vacate the entire demised premises or cease selling merchandise therein for in excess of a period of six (6) months while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant, Landlord shall have the continuing option thereafter (unless Tenant shall have reoccupied the premises and recommenced selling merchandise) to terminate and cancel this lease upon fifteen (15) days' written notice to Tenant of its election so to do, unless within such fifteen (15) day period Tenant shall advise Landlord that Tenant had prior to receipt of such notice in good faith committed to assign this lease or sublease the demised premises to a third party, in which event the provisions of the preceding sub-paragraph shall govern.

In the event of vacating or of any assignment or subleasing as herein permitted, the Tenant shall continue to remain liable and responsible for the payment of rentals and the due performance of all other terms, covenants and conditions of this lease.

In the event of any assignment or sublease or vacating of the entire premises, the rental thereafter shall be the greater of: (1) a fixed rental only consisting of the average percentage rental, if any, paid by Tenant for the two years immediately preceding such assignment, vacating or subletting plus the minimum guaranteed rental provided for herein; or (2) the rentals therein reserved. provided, however, this provision shall not apply in the event such assignment or sublease shall be to any corporation or entity which is the parent of, subsidiary to or affiliated with Tenant or to any corporation or entity with which Tenant merges or consolidates or to which it sells all or substantially all of its business in the state where the demised premises are situated. The provisions of this paragraph shall not be construed to limit or restrict the right of Tenant to sublease a portion or department of the demised premises without consent of Landlord to any concessionaire or licensee or otherwise in connection with the operation of Tenant's business in the demised premises, provided the sales of such concessionaire or licensee shall be included within the gross sales of Tenant, as defined hereinabove in Article 2a.

It is agreed that Tenant's use of the premises for the operation of a supermarket is a material factor and inducement to Landlord to enter into this lease and should Tenant either vacate the premises or assign or sublease the premises for any purpose other than the operation of a supermarket, or should this lease be terminated for any reason, then Landlord shall not be bound by the terms and conditions set forth in Article 15 of this lease.

**SUBORDINATE**  22. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

**BENEFIT**  23. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties.

-9-

**SHORT FORM LEASE**    24. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

**MARGINAL TITLES**    25. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

**COMPLETE AGREEMENT**    26. This written lease contains the complete agreement of the parties with reference to the leasing of said property, except plans and specifications of said building and improvements to be approved formally by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

**NOTICE TO LENDER**    27. Tenant agrees that it will give notice to any holder of a first mortgage encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate the lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate the lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period.

                                                       an initial term

**OPTION FOR EXPANSION**    28. Tenant is hereby granted the option and privilege at any time during the term of this lease, or any extensions thereof, of enlarging its store building by incorporating therein the area to the westerly side thereof, such addition to be sixty (60) feet in width by two hundred (200) feet in depth. This option may be exercised only at such times as the adjoining storerooms may be vacant, XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX it being contemplated that Landlord shall not lease such area to other tenants for in excess of ten (10) years, and that Tenant shall have the expansion privilege herein described no later than ten (10) years from the commencement date hereof and at five (5) year intervals thereafter. Landlord shall give notice to Tenant of any such expiration date and, during the period between six (6) months and three (3) months prior to such expiration date, afford to Tenant the opportunity to exercise this option, and upon Tenant giving to Landlord a notice in writing of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence following the vacation of the necessary area by any other tenant, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant. In order to facilitate the expansion of Tenant's demised store building as herein contemplated, Landlord agrees that any adjacent building or buildings within the expansion area shall be of like structural quality and in architectural harmony with Tenant's store building, shall front on a line

-10-

which is the interior sidewalk line of Tenant's demised store building extended and shall have a finish floor level, roof and ceiling heights which shall be at the same elevations as the finish floor level, roof and ceiling heights of Tenant's demised store building. Further, Landlord agrees that the wall of Tenant's demised store building, adjoining the expansion area shall be constructed with steel column supports therein equivalently spaced to the nearest row of steel column supports within the open area of Tenant's demised store building and such wall supports shall be of sufficient load bearing capacity to carry the roof support system across the full span of the original and of the expanded building width. Upon completion of such building addition, or tender of such additional space to Tenant, if there shall not at such date remain at least ten (10) years of the then term of this lease, such term shall be extended for such period of time as shall be necessary to provide a full ten (10) years from such date Thereafter, during such extended term, the annual minimum guaranteed rental (and the base for computation of percentage rental hereunder) shall be increased by the greater of: an amount equal to fourteen percent (14%) of the cost of such addition, or an amount equal to $6.52 per square foot of the enlargement area, or an amount equal to a computed percentage times the cost of such addition, such percentage consisting of four percent (4%) plus the current prime interest rate charged by New York City banks at the time of the exercise of the option. At Tenant's request, construction cost shall be established by bids obtained by Landlord from at least three (3) reputable contractors acceptable to Tenant, with the final cost of the addition upon completion to be certified to by the general contractor performing the work. During such extended term the provisions of this lease shall remain in effect and the option periods herein provided, if any shall then remain, shall be construed to follow upon the end of the extended term and the rentals to remain as adjusted in consequence of the addition. Upon completion of the addition, it shall be and become a portion of the demised premises and this lease thereby be taken and construed as so amended.

Nothing herein contained shall constitute any express or implied obligation on the part of the holder of a first mortgage encumbering the fee simple title to the demised premises, or of any purchaser at a sale under foreclosure of such mortgage, to comply with the terms and provisions of this Article, it being the understanding of the parties that the obligation to cause such expansion is the sole obligation of the Landlord, its heirs, legal representatives, successors and assigns, but this paragraph shall not limit Tenant's right to carry out the expansion at its own cost as provided herein.

In the event Landlord shall for any reason fail or refuse to construct the building addition contemplated hereunder after Tenant has properly exercised its option herein and prior to a foreclosure of the Landlord's title by the holder of a first mortgage encumbering the same, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments on account of such breach and the Tenant's sole remedy shall be to construct the contemplated building addition at its own expense, with the then term of the lease to be extended for a 10-year period as above contemplated and Tenant shall be entitled to occupy the enlarged building during the construction and for a 10-year period thereafter without obligation to pay any minimum guaranteed rental in respect of such enlargement area.

Also, for the duration of such 10-year period there shall be an adjustment in the percentage rentals which would otherwise be payable under the provisions of Article 2 hereof whereby the Tenant shall pay to the Landlord a percentage rental equal to the amount, if any, by which one and one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30th exceeds the original annual minimum guaranteed rental payable hereunder as increased by a sum equal to $6.52 per square foot of the enlargement area.

With respect to the Tenant's constructing the addition at its expense, upon the expiration of the extended 10-year term hereunder and for the remainder of the lease term, and any extensions thereof, the original annual minimum guaranteed rental for the demised premises shall be increased by a sum equal to $6.52 per square foot of the enlargement area, with the percentage rental thereafter to be computed by taking into consideration the upward adjustment of the minimum guaranteed rental as above provided. Both guaranteed rentals and percentage rentals for fractional years and fractional months occurring at the beginning and end of such extended 10-year term shall be prorated between

the rentals payable before and those payable after the rental adjustments provided herein.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

*[signature]*

_____
As to Landlord

BAUMGARDNER-HOGAN, INC.

By _[signature]_ Pres.
   Its  President

Attest _[signature]_ Sec.
    Its  Secretary

(Corporate Seal)

LANDLORD

*[signature] Susan G. Clarkson*
*[signature] Lauren E. Baughman*
As to Tenant

WINN-DIXIE LOUISVILLE, INC.

By _[signature]_
   Its  Vice President

Attest _[signature]_
    Its  Secretary

(Corporate Seal)

TENANT

This instrument was prepared by
William O. Scaife, Jr., Attorney-
at-Law, whose address is 5050
Edgewood Court, Jacksonville,
Florida.

_[signature]_
William O. Scaife, Jr.

-12-

KENTUCKY        Corporate double

STATE OF KENTUCKY.

COUNTY OF AT LARGE

I, __WILLIAM E. NORTHCUT__, a Notary Public in and for the State and County aforesaid, do certify that on this day the foregoing instrument of writing from __BAUMGARDNER-HOGAN, INC.__ _____ was produced to me in my County by the parties and acknowledged and delivered before me by __LARRY K. BAUMGARDNER__, __—__ President of __BAUMGARDNER-HOGAN, INC.__, a __Kentucky__ corporation, party thereto, to be the act and deed of said corpoation by him as its _____ President, thereunto duly authorized, and the seal of said corporation as affixed to said instrument was attested and proven before me by __LARRY K. BAUMGARDNER__, as its __—__ Secretary.

GIVEN under my hand and seal of office this __19TH__ day of __JUNE__, 19_89_.

My commission expires: 12/10/91

_____
Notary Public
(NOTARIAL SEAL)


STATE OF FLORIDA

COUNTY OF DUVAL

I, __LAURA E. BAUGHMAN__, a Notary Public in and for the State and County aforesaid do certify that on this day the foregoing instrument of writing from __WINN-DIXIE LOUISVILLE, INC.__ _____ was produced to me in my County by the parties and acknowledged and delivered before me by __James Kufeldt__, __Vice__ President of __WINN-DIXIE LOUISVILLE, INC.__, a __Kentucky__ corporation, party thereto, to be the act and deed of said corporation by him as its __Vice__ President, thereunto duly authorized, and the seal of said corporation as affixed to said instrument was attested and proven before me by __U. S. Bryan, Jr.__, as its __—__ Secretary.

GIVEN under my hand and seal of office this __30__ day of __June__, 19_89_.

My commission expires: 7-17-90

_____
Laura E. Baughman
Notary Public
(NOTARIAL SEAL)