UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, DIVISION

F I L E D
JACKSONVILLE, FLORIDA

FEB 1   2006

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

In re:

    WINN-DIXIE STORES, INC.,

        Debtor.              CASE NO. 05-03817-3F1

_____/

TRANSCRIPT OF PROCEEDINGS

    Telephonic Status Conference held before the
Honorable Jerry A. Funk, United States Bankruptcy Judge,
Courtroom 4D, 300 North Hogan Street, Jacksonville,
Florida, Monday, January 23, 2006, to commence at 10:00
a.m., as reported by Loretta D. McDonald, a Notary Public
in and for the State of Florida at Large.

- - -

**STATEWIDE REPORTING SERVICE**
606 BLACKSTONE BUILDING
JACKSONVILLE, FLORIDA 32202
(904) 353-7706                    249-9952
EXPERTS IN MEDICAL, TECHNICAL & EXPEDITED TRANSCRIPTS

ORIGINAL

1                        A P P E A R A N C E S

2                            (Telephonically)

3

4

5           STEPHEN D. BUSEY, Esquire

6               Attorney for the debtor.

7

           ELENA ESCAMILLA, U.S. trustee

8

9           ALAN SIBARIUM, U.S. trustee

10

           JOHN MACDONALD, Esquire
11         JAN BAKER, Esquire

12              Attorneys for unsecured creditors
               committee (local counsel)
13

14         BETSY COX, Attorney at Law
           STEVE SOLL, Esquire
15
               Attorney for Wachovia Bank
16

17         MATTHEW BARR, Esquire

18              Attorney for official
               creditors committee.
19

20         JAMES WAREHAM, Esquire
           KAROL DENNISTON, Attorney at Law
21         CHAD BOWEN, Esquire

22              Attorneys for equity
               committee.
23

24                           - - -

25

1                    P R O C E E D I N G S

2    January 23, 2006                          10:00 a.m.

3                          - - -

4            THE COURT:  We are here today on the case of

5    Winn-Dixie Stores, request for status conference.

6            I'll take appearances of who's here, starting with

7    anybody here on behalf of the debtor.

8            MR. BUSEY:  Yes, Your Honor, this is Steve Busey;

9    and Jan Baker is also on the phone on behalf of the

10   debtors and Jay Castle from Winn-Dixie is on the phone

11   as well.

12           THE COURT:  Thank you.

13           Creditor's committee?

14           MR. BARR:  Thank you, Your Honor, Matthew Barr

15   of Milbank Tweed and John MacDonald.

16           THE COURT:  Equity committee?

17           MR. WAREHAM:  Thank you, Your Honor.  This is James

18   Wareham in the Washington office of Paul Hastings, on

19   behalf the committee.  My partner Karol Denniston is on

20   as well as our local council.  And he can identify who's

21   there with him.

22           MR. BOWEN:  This is Chad Bowen, cocounsel, and I am

23   by myself.

24           THE COURT:  On behalf of Wachovia?

25           MS. COX:  Good morning, Your Honor, Betsy Cox, with

1    Rogers Towers.  And also on the line is Steve Soll with

2    Otterbourg, Steindler Firm in New York who is cocounsel.

3         MR. SOLL:  Good morning, Your Honor.

4         THE COURT:  Good morning.

5         United States trustee?

6         MS. ESCAMILLA:  Elena Escamilla, on behalf of

7    the office of the United States trustee.  And with me on

8    the phone is Al Sibarium from the executive office of

9    the United States Trustee's Office.

10        MR. SIBARIUM:  Good morning, Your Honor.

11        THE COURT:  Good morning.

12        Okay.  I believe the initial request I believe came

13   from was it the creditors committee or a joint creditor

14   and the debtor?

15        MR. BARR:  Your Honor, it's a joint request but --

16   this is Matthew Barr.  And I'll start, if that's okay

17   with the Court.

18        THE COURT:  That's fine.

19        MR. BARR:  Thank you, Your Honor.

20        Your Honor, as you know, the equity committee filed

21   a pleading seeking review of the United States trustee's

22   decision to disband the equity committee and also in

23   the alternative to appoint an equity committee under the

24   circumstances and facts of these cases.

25        The debtors and the committee, when we were in

1    The debtors and the committee, when we were in

2    front of you the end of last week, Your Honor thought it

3    was appropriate and necessary to try to get guidance

4    from not only the Court but the equity committee of what

5    actually they intend to go forward on January 30th.  We

6    understand there's a short window of time that Your

7    Honor has available and if this is a full-blown

8    evidentiary hearing, and all the facts and circumstances

9    surrounding number one, the United States trustee's

10   decision under the abuse and discretion standard and

11   number two, whether a committee is appropriate under the

12   circumstances.

13      Number one, we don't believe there will be enough

14   time to deal with such a thing, such a type of

15   evidentiary hearing in the allotted slot.  And number

16   two, I think it would be appropriate, at least with

17   respect to the alternative relief, that whatever

18   witnesses are presented or proffered be subject to

19   depositions and whatever documentary evidence that's

20   going to be proffered be made available for review

21   before an evidentiary hearing before Your Honor.

22      So we believe that it was necessary to get an

23   understanding of what actually is going to be going

24   forward and what time frame would that be going forward

25   under Your Honor.  And that was the premise of this

1          status conference.

2                  THE COURT:  Okay.  Ms. Denniston?

3                  MR. WAREHAM:  Your Honor, it's James Wareham.

4          I'm the --

5                  THE COURT:  Yeah, I'm sorry.

6                  MR. WAREHAM:  -- speaker on behalf of the equity

7          committee.

8                  THE COURT:  Okay.

9                  MR. WAREHAM:  If Your Honor would give me some

10         guidance, there's a fairly short but somewhat historical

11         presentation that I'd like to take the Court through.

12         If the Court would prefer a short bulletpoint before I

13         get to that as to where we stand, I'll do that first,

14         and then take guidance from the Court.

15                 THE COURT:  Well, I think what the question is I

16         gave you some time, you signed an affidavit that it was

17         an emergency matter.  And I'm giving you a hearing next

18         week.  And the creditors committee and the debtors

19         want to know what are you intending to put on at that

20         hearing, what kind of evidentiary presentation that

21         you intend to put on so that they can then know what

22         their preparations need to be.

23                 MR. WAREHAM:  Well, the first instance, Your Honor,

24         we think that the deflection toward discovery, toward

25         delay, toward the facts that lead to a conclusion that

1    the trustee abused her discretion is really not where

2    this Court ought to turn it's attention.  We think that

3    as early as today, the Court has the power under the

4    Bankruptcy Code to take the facts that are judicially

5    noticed, take the facts that have been admitted to by

6    the debtors and to reinstate the committee.

7        We are concerned that the deflection toward

8    discovery that the focus on the trustee's decision skips

9    over the first and most important way in which this can

10    be resolved for the betterment of the 36,000

11    shareholders that are right now disenfranchised.  And

12    that, Your Honor, is simply that you have the authority,

13    you have the power to reinstate the committee today

14    without a bunch of folderol and a bunch of wasteful

15    discovery.

16        If the Court is disinclined to do that, then we

17    could go very quickly through a series of discovery

18    requests that would go out today to get the information

19    that went to and documents, the behind-the-scene

20    discussions between the creditors, the debtors and the

21    agents of the trustee.

22        MR. BUSEY:  Your Honor, this is Steve Busey.  If I

23    can respond to that.

24        THE COURT:  Certainly.

25        MR. BUSEY:  I don't think that the equity committee

1   just answered the question that was asked by Matt Barr.

2   And it is, what do you propose to do on the 30th?  If

3   what the equity committee wants to do, do I think from

4   what they just said, they want to have an argument in

5   the hour that you've given them and they've noticed on

6   the hearing on the 30th regarding the fact that you

7   should appoint an equity committee, then fine.  If

8   that's what they're going to do, just tell us; and we'll

9   come and we'll be prepared to argue that.

10        We're not trying to secure delay, and we certainly

11   don't want to burden this estate with further discovery

12   and unnecessary effort by the professionals all being

13   paid by the debtor in this case.  So just tell us what

14   you're going to do on Monday morning on the 30th, and we

15   will prepare accordingly.  But that's what I think Matt

16   Barr asked, and that's what the debtors would like to

17   know as well.

18        THE COURT:  Mr. Wareham?

19        MR. WAREHAM:  What I think, Your Honor, my

20   statement, one response is if the Court is disinclined

21   to avoid the delay and the expense of having the

22   discovery needed for an evidentiary hearing, and it

23   disinclines to simply do the things that makes the most

24   logical sense to reinstate the committee today, that we

25   would serve a very short number of discovery request.

1       And we would do two things on the 30th, Your Honor.

2   We would argue the law and your power, and we would talk

3   in terms that we have in the pleadings of in effect that

4   independent and brand new suggestion and proof that

5   an equity committee is required.

6       And we would also, as a fall-back position, want to

7   know and want to talk about some factual bases for our

8   view that the way this was conducted in secret and

9   once the Court had already had before it, an application

10  for a formal approval of the committee.  We would also

11  therefore argue and deal with the facts associated with

12  the trustee's contacts with folks outside the purview of

13  the equity committee or the purview of the Court.

14      So if the Court is not going to reinstate, then

15  we would do two things on the 30th, again, in a

16  nutshell.  We would argue that the Court has the power

17  to, on its own volition, in effect ignore what happened

18  factually vi-sa-vi the trustee and reinstate the

19  committee, and we would take off reasonable steps

20  between now and the 30th to understand the unknown facts

21  and to argue a second level which is that the trustee

22  abused her discretion in the proceedings and the

23  request, that the debtor made, particularly requests

24  that are contrary to what the Court has been told in

25  open court by representatives of the debtor, that the

1    debtor had at all times moved the Court in support of

2    the equity committee but has more or less served

3    pretentiously on the opposite once the committee asked

4    for and demanded in a full and independent investigation

5    of the audit firm of the board and of the reasons that

6    this enterprise ended up in bankruptcy.

7        We had an unknown, undisclosed but very serious

8    change in attitude between the way the debtor held fort

9    with the committee in your presence, Your Honor, and in

10    the presence of the 36,000 shareholders and what it

11    apparently did vis-a-vi the trustee.

12        So that's really kind of a nutshell description of

13    how we believe this Court should best proceed, and we're

14    happy to move expeditiously as possible on a fact basis

15    if that's necessary, although, we don't think it is.

16        MR. BUSEY:  What I just heard Mr. Wareham say, I

17    think, was that there would be two arguments.

18        THE COURT:  This is Mr. Busey?

19        MR. BUSEY:  Yes, sir.

20        THE COURT:  Go ahead.

21        MR. BUSEY:  That there would be two arguments that

22    they propose to make on the 30th in the hour that they

23    have.  The first is that I take it as a matter of law,

24    based upon the record today before the Court, you should

25    appoint -- reappoint the equity committee; and

1    secondly, alternatively, that the U.S. trustee abuse her

2    discretion in disbanding it.  We can make the argument

3    of law I think the first point readily enough in an hour

4    on January 30th.

5        My question reasonably whether or not we can make

6    an evidentiary showing, which would be required for the

7    Court to determine whether or not the U.S. trustee

8    abused her discretion in disbandment.  We can try to

9    put somebody on the stand in an hour and have

10   cross-examination and argument, but then they'd be a bit

11   ambitious.  But that's why we're having this status

12   conference is to find out what they're proposing to do

13   and whether or not we have adequate time to do it on the

14   30th.

15       THE COURT:  Ms. Escamilla?

16       MS. ESCAMILLA:  Yes, Your Honor.

17       THE COURT:  Anything you want to add?

18       MS. ESCAMILLA:  Your Honor, yes.  The motion, as

19   filed by the equity committee, seeks alternative grounds

20   for relief; and the United States trustee believes that

21   they do require separate proceeding and a briefing

22   schedule.

23       The first thing that the equity committee

24   requires -- request is to set aside the notice of

25   disbandment under an abusive discretion standard.  It's

1    unclear whether they're arguing the United States

2    trustee has lack of authority to disband generally or a

3    lack of authority to disband due to a motion pending by

4    the creditor's committee.  There needs to be a

5    determination as to what the administrative record would

6    be for the Court to make a determination as to abuse

7    of discretion.

8        This is a central program area for the United

9    States trustee, and we believe that there's no way that

10   it can be done in one hour of time.  And we need

11   sufficient time to brief it and to have a separate

12   proceeding.

13       The second relief that the equity committee is

14   basically requesting is that the U.S trustee file

15   separate pleadings and have a notice -- have a hearing

16   on the disbandment issue.  The United States trustee

17   believes that this is basically seeking injunctive

18   relief, and it needs to be in the form of an adversary.

19   It basically seeks to enjoin the United States trustee

20   from using their administrative means in the oversight

21   and of appointment and selection of the committee.

22       The third is de novo review for the appointment of

23   a committee under 1102(a)(2).  We think that needs to be

24   completely separate, because the issues under abusive

25   discretion and what the United States trustee reviewed,

1    may be in fact different than what would be under the

2    1102(a)(2) standard.   The discovery would probably be

3    required on that.   The equity committee is seeking nunc

4    pro tunc approval of the equity committee.   So the

5    United States trustee would have to brief that issue,

6    and that is a legal issue that needs to be determined

7    by the Court.

8         And the equity committee is also attempting to give

9    the Court, if in fact the Court would appoint an Equity

10   committee under 1102(a)(2), the authority to appoint

11   members of an equity committee.   And the United States

12   trustee would also need an opportunity to brief that.

13        So what the United States trustee would request is

14   that we have separate proceedings and a briefing

15   schedule for those.

16        THE COURT:   Okay.   Who else wants to weigh in or

17   respond?

18        MR. SOLL:   Judge, Stephen Soll, on behalf of

19   Wachovia.

20        I think that we certainly support the motion at

21   this conference to get a clarification as to what would

22   be expected at the hearing on the 30th.   Now that we

23   have that, it seems that there's a pretty broad range

24   of items that are proposed to be addressed.   And many of

25   them do go to the factual consideration that require

1   some level of discovery.

2        What hasn't been addressed on this phone call is

3   the extent of the quote, unquote emergency nature of

4   the relief that the equity committee requests.  I think

5   it's clear to everybody that each constituency would

6   like this issue to be addressed as promptly as possible,

7   and that prolonging it simply delays important issues in

8   the Chapter 11 case.

9        But, nonetheless, based upon what I'm hearing from

10  the various parties, it would seem that these issues are

11  going to take another week or two, beyond the

12  January 30th date, for it to be addressed in an

13  efficient and complete manner.  So I see a scenario,

14  based upon the motivations of each constituency here,

15  that would suggest that a hearing a week or so after the

16  original scheduled date might be appropriate so that

17  the discovery that is sought under briefing that's going

18  to be needed can be done in a proper and efficient

19  manner.

20        THE COURT:  Thank you.

21        Anybody else?  Mr. Wareham?

22        MR. WAREHAM:  No, Your Honor.  I think that the

23  relative parties have in effect expressed a fair amount

24  of agreement.  We would argue that what should -- as

25  soon as it feels it's got the appropriate papers from

1 the appropriate parties by the issue of whether there's

2 been a violation of the abatement order and decide the

3 issue of whether it has independent de novo grounds to

4 appoint the committee and to defer, we think ultimately

5 unnecessary discovery, evidentiary proof, vis-a-vis the

6 abusive discretion of the United States trustee.

7  So we, in effect, I think all of us on the phone

8 agree that we want it done quickly, we want it done

9 rationally.  And I think I've outlined what I think

10 makes the most sense, what the equity committee thinks

11 makes the most sense.

12  Because, Your Honor, one of the things that's not

13 happening while this is going forward, we're not having

14 the independent investigation that the debtor announced

15 through a public filing would happen.  We have had

16 discussions with the debtor, Your Honor, in which we had

17 arrangements, we had agreements that a serious outside

18 law firm, that a serious outside forensic firm like FBI

19 or Navie (phonetic) would be retained.

20  And we have, after that agreement, at an inability

21 to reach an agreement as to what entity would control

22 that investigation on behalf of the debtor, we have in

23 effect the written proposal now for a 60-day $200,000

24 whitewash.  So it is, in our view, the equity

25 committee's view, imperative that we find a quick and

1   sensible way to reinstate the committee to not have a

2   bunch of deflective discovery on the question of the

3   U.S. trustee as possible and to make sure we get going

4   on the independent investigation as required to add the

5   significant value to the estate that we think it

6   might result.

7       So we, I think agree, Your Honor, on many, many

8   things.  And we propose -- the equity committee proposes

9   that we front-load the two arguments and the two

10   briefings that I outlined.

11      MR. BUSEY:  Your Honor, Steve Busey, on behalf of

12   the debtors.

13      Obviously, what Mr. Wareham just referred to

14   are factual issues that are both inflammatory and wrong.

15   And I don't want to undertake to respond on the factual

16   issues in this call, which is the status conference.

17   But we obviously, vigorously disagree with what

18   Mr. Wareham just said.

19      .   The issue that we need to address is what are we

20   going to do Monday morning?  I think what I've heard the

21   equity committee suggest is a bifurcation of the relief

22   that it's seeking, and they want to argue as a matter of

23   law about the Court should appoint an equity committee

24   on its own as a matter of law right now, and wants to

25   argue that on Monday morning but does not want to

1      proceed on Monday morning on the other issue of whether

2      or not the U.S. trustee abused her discretion in

3      disbanding the equity committee and to set that for

4      subsequent evidentiary hearing with a briefing and

5      discover schedule.

6          I think that's what I just heard, and we would like

7      to have some clarification of confirmation on that.

8          MR. WAREHAM:  I think, Your Honor, that that

9      adequately describes our effort to accommodate what we

10     just heard from the U.S. trustee.  The important issues

11     that the U.S. trustee has, I think, do cut in favor of

12     adding some time to the factual generation of a record

13     and a briefing of those issues.  I actually believe that

14     they'll turn out to be unnecessary, but I think

15     Mr. Busey adequately described our attempt to

16     accommodate what we heard this morning from the

17     trustee.

18         THE COURT:  Is there anybody else that wants to

19     weigh in?

20         MS. ESCAMILLA:  Well, Your Honor, I'm not clear if

21     on Monday the issue is, as a matter of law, should the

22     Court appoint an equity committee under 1102(a)(2).

23     I guess we're going to need to know what is the record

24     that they're going to present.

25         THE COURT:  Okay.  Anybody else?

1          MR. BUSEY:  Let me say this, Your Honor, in

2     response of what Ms. Escamilla just said.  It is the

3     equity committee on its motion who has the burden of

4     proof, and I think that what I've heard, my

5     understanding of what I heard the equity committee say

6     this morning, is they want to make that argument as a

7     matter of law with no evidentiary record come Monday

8     morning.  And that is my understanding.  And if I'm

9     wrong, I should be corrected.

10         THE COURT:  Okay.  Based on what I've heard today,

11    we will proceed Monday and the equity committee is going

12    to make their argument as a matter of law the Court

13    should appoint an equity committee or reappoint an

14    equity committee.  I'm not denying their motion or

15    granting their motion today.  I'm just deferring it

16    until after the evidentiary hearing where both sides can

17    argue the law.

18         This talk about the examiner, I think I'm required

19    to appoint an examiner under 1104, I believe, if

20    requested by a party in interest.  So I'm not sure we

21    need a committee to request it or a particular

22    stockholder could do it or the U.S. trustee, who

23    indicated they were considering that at the time of the

24    notice of disbandment of the committee.  I'm just

25    throwing that out.  I'm not sure that is something that

1    you need the committee, an equity committee to have for

2    that one issue.

3         All that being said, I would hope that as a

4    fall-back position, that between now and next Monday

5    while everybody is preparing their legal arguments,

6    you'll also communicate with each other to see that if

7    the Court doesn't reinstate the committee at that time

8    or may take it under advisement for a period of time,

9    that you want to go ahead and have a discovery schedule

10   or a hearing schedule worked out between you as to,

11   you know, that we can present to the Court if that

12   becomes necessary, so we don't have to have another

13   status conference, you know, down the road.  I'm

14   throwing that out.  You can do whatever you deem is

15   appropriate.

16        But next Monday we'll just take the argument.  And

17   if we have time left over and if the Court is -- if the

18   Court rules in favor of the creditors committee, that's

19   the end of it, subject to any appeals.  If the Court

20   rules against the committee on that issue or declines to

21   act on that, if we have some time, we can look at what

22   our, you know, hearing times are further down the road.

23        MR. WAREHAM:  Your Honor, it's Mr. Wareham in

24   response to your suggestion.  I will take it upon myself

25   to coordinate with the various parties on that

1    scheduling issue.

2        I have a specific request of the Court vi-sa-vi the

3    examiner issue.  As I indicated in my earlier

4    discussion, there has been disagreements, somewhat

5    new-found disagreements on the scope of the examiner's

6    review.  And we are concerned that the creditors

7    together with the debtors are working toward a less

8    intense, less important and less relevant investigation

9    than we would like.  And we would ask the Court

10   direct that we be included, until this issue is

11   resolved, in any discussions that would be had between

12   any of the parties and particularly the trustee in

13   setting up the scope of what the examiner will do.

14       MR. BUSEY:  Your Honor, Steve Busey.

15       There are discussions with the U.S trustee and the

16   debtor and the creditors committee and formerly with

17   the equity committee when they existed, regarding the

18   completion of the inquiry that the debtors previously

19   announced that they're going to do in this regard.  And

20   those discussions are ongoing.  They had not reached a

21   conclusion yet.

22       And the Court will be made aware of it when we have

23   reached an agreement among ourselves.  I don't think it

24   would be appropriate this morning for the Court to

25   direct the debtors to do anything on a motion that's not

1    filed and that's not before the Court this morning.

2         If the equity committee either as an ad hoc

3    committee are in some other role that wants to take some

4    action, that's appropriate but just in this status

5    conference to ask you to direct something, I think would

6    be inappropriate.

7         MR. WAREHAM:  If the Court decides that it's

8    illogical, we will file today an emergency request

9    seeking that order.  Because we are fairly convinced,

10   Your Honor, that this more or less Kabuki dance where

11   the debtor has said publicly to you and to the

12   shareholders, we support an investigation and we support

13   the equity committee, it's starting to come to a

14   nebular fruition on behalf of the 36,000 shareholders.

15        We think that the reason that the disbandment

16   efforts were undertaken was to narrow this

17   investigation.  And you can hear from Mr. Busey's

18   comments that they have proceeded a pace without us in

19   setting the scope and negotiating not just the plan,

20   which is highly important obviously to equity, but also

21   the plan for the investigation.  So if the Court needs

22   an emergency motion to have that narrow relief, we will

23   do that today.

24        MR. BUSEY:  Your Honor, the allegation that the

25   debtors are conducting a Kabuki dance with the U.S.

1        trustee and the official creditors committee is an

2        allegation of fact which we deny.  And if the equity

3        committee wants in some form to have an evidentiary

4        hearing on that, we will address it and establish to you

5        that that's not right and that the debtors are

6        proceeding to do what they said they were going to do

7        consistent with their fiduciary leads to all of the

8        constituencies of this estate.  And it's just simply

9        inappropriate for a now disenfranchised equity committee

10       to make those kind of allegations in this status

11       conference.  But I won't respond to it any further until

12       they file something.

13            THE COURT:  That's enough.

14            MS. ESCAMILLA:  Your Honor  --

15            THE COURT:  Who is this?

16            MS. ESCAMILLA:  Elena Escamilla, on behalf of the

17       United States trustee.

18            I just wanted some further clarification for the

19       hearing on Monday.  My understanding is that the equity

20       committee will make an argument as a matter of law for

21       the appointment of an equity committee under 1102(a)(2).

22       I just wanted clarifications whether they were seeking

23       it nunc pro tunc at that time and whether they were

24       requesting the Court to also select a membership if

25       in fact that would happen.  Because those are issues

1    that we're going to have to respond to by Wednesday,

2    which is a pretty short time frame.

3        MR. WAREHAM:  Your Honor, we set out in some

4    written detail what we propose.  And I'll state it very

5    clearly for this call.

6        The simplest, most logical, most effective thing to

7    do the nunc pro tunc to the Wednesday last when the

8    one-page disbandment letter came from the trustee's

9    office to reinstate the existing committee and not to

10   have additional process.  So that is, in the first

11   instance, the most logical relief and what we will, on

12   the 30th, be seeking most concretely from the Court,

13   a nunc pro tunc reinstatement of the committee as is and

14   as represented by Jeffries and Paul Hastings.

15       MS. ESCAMILLA:  Then that would be under an abuse

16   issue then, because it doesn't work under 1102(a)(2).

17       MR. WAREHAM:  It works --

18       THE COURT:  All right.  All right.

19       MR. WAREHAM:  -- appearing that there's an

20   abatement order in place and that this entire

21   disbandment is violative of the Court's power.  So

22   there's two separate legal theories that would allow

23   the nunc pro tunc.  And I'm really, since we're talking

24   about deferring the evidence, the discovery and the

25   question of abuse, I think that would be wrapped up in

1       that later to-be-discussed time table.

2           THE COURT:  All right.  Everybody come and take

3       your best shot Monday.  That's all I can say.  I'm not

4       going to make any rulings today.  I'm a pragmatist.

5       Unfortunately, I try not to get bogged down in some of

6       this stuff and try to get to the end of what's going to

7       ultimately benefit the estate.  And that's the way I

8       sort of look at things as to the committee, as to an

9       investigation, as to the overall mover of the case.

10      So knowing that much of the way I am, that may filter in

11      a little bit to what you're going to present.

12          That being said, I think everybody knows as best

13      they can as to what they expect Monday.  The Court is

14      not going to make a decision unless everybody has been

15      heard.  I'm not going to cut anybody short.  If we need

16      more time, then we'll find it somewhere.  But I don't --

17      I like to make sure everybody has said everything

18      they want to say before I make my final determination.

19          But it's my understanding there's strictly going to

20      be legal argument other than based on whatever evidence

21      that had been previously presented in other hearings I

22      suppose or what the Court just knows as a matter of fact

23      in the case.

24          That being said, is there anything else, any other

25      comments?

1        (No response.)

2        THE COURT:  Thank you very much.  It's been a

3    pleasure talking to you folks.  I look forward to seeing

4    you next week.

5        (Whereupon, at 10:35 a.m., on Monday, January 23,

6    2006, the hearing in the above-entitled matter was

7    concluded.)

8                            - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3     STATE OF FLORIDA )

4     COUNTY OF DUVAL  )

5          I, Loretta D. McDonald, Professional Court Reporter, do

6     hereby certify that the attached material represents the

7     original records of proceedings before the United States

8     Bankruptcy Court, Middle District of Florida, Jacksonville

9     Division, before the Honorable Jerry A. Funk, United States

10    Bankruptcy Judge, in the matter of WINN-DIXIE; such Record is

11    an accurate and complete recordation of the proceedings which

12    took place.  A transcript of this Record has been produced on

13    January 30, 2006, the original of which was delivered to the

14    Transcript Copy Custodian, Jacksonville, Florida.

15

16                            STATEWIDE REPORTING SERVICE

17

18          _Loretta D. McDonald_
                    LORETTA D. MCDONALD

19

20

21                              LORETTA DATUIN MCDONALD
                                MY COMMISSION # DD 265996
22                              EXPIRES: November 15, 2007
                                Bonded Thru Budget Notary Services

23

24

25