UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**APPLICATION TO EMPLOY ASSESSMENT TECHNOLOGIES, LTD.
AS PROPERTY TAX CONSULTANTS FOR THE DEBTORS NUNC PRO TUNC**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), apply for an order authorizing the retention of Assessment Technologies, Ltd. ("ATL") as their property tax consultants, pursuant to Section 327(a) of the Bankruptcy Code, nunc pro tunc to November 1, 2005, and in support state:

1.  On February 21, 2005, the Debtors each filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. The cases are being jointly administrated.

2.  Pursuant to the Debtors' Ninth Supplement to the Ordinary Course Motion (Docket No. 3751), the Debtors have retained ATL as an ordinary course tax consulting professional. The Debtors now desire to employ ATL as a bankruptcy professional under Section 327(a) of the Bankruptcy Code to consult the Debtors in appealing and/or challenging tax assessments and objecting to claims filed by tax collectors on properties owned and leased by the Debtors pursuant to the terms of the service agreement attached as Exhibit A (the "Service Agreement").

3. ATL is one of the largest ad valorem tax consulting firms in the South. ATL's staff is comprised of economists, appraisers, tax strategists and client service professionals. Pursuant to the terms of the Service Agreement, ATL will:

(i) review the current and proposed tax assessments on the Debtors' real and personal properties (both owned and leased);

(ii) consult the Debtors regarding tax assessments and proofs of claim filed by taxing authorities; and

(iii) where necessary, represent the Debtors before the appropriate tax assessment and collection authorities in an effort to negotiate the lowest possible assessment or tax claim amount.

4. In consideration for these services, the Debtors will pay ATL 35% of all Net Tax Savings (as defined in the Service Agreement) received by the Debtors. These Net Tax Savings include the difference between the proposed assessed valuation and the final assessed value; the amount of refunds, credits and interest recovered and the reduction in claims fees.

5. ATL has asked the Debtors to be relieved from any requirement to maintain detailed time records for services rendered under the Service Agreement. ATL believes that this request is reasonable because ATL is seeking to be compensated on a contingency fee rather than an hourly billing basis. ATL has agreed, however, to keep reasonably detailed descriptions of the services it is rendering to the Debtors under the Service Agreement.

6. Because of the contingency basis upon which ATL is to be compensated, ATL has advised the Debtors that it further seeks relief from complying with the monthly, interim and final fee application requirements of the Final Order Approving Interim Compensation Procedures for Professionals (Docket No. 434) (the "Fee Order").

00511643.DOC.3

Instead, ATL proposes to submit detailed invoices to the those parties identified in the Fee Order and if no objection is made within ten days, the Debtors may pay the invoice in full.

7.   To the best of the Debtors' knowledge, ATL: (i) neither holds nor represents any interest adverse to the Debtors or to their estates, (ii) is a "disinterested person" within the meaning of 11 U.S.C. §§101(14) and 327(a), and (iii) has no connection with the Debtors, their creditors, or any party in interest or their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or the Bankruptcy Judge presiding over these cases, except as specifically disclosed in the Declaration filed in support of this Application, a copy of which is attached as Exhibit B.

8.   ATL is well qualified to serve as the Debtors' property tax consultants. Moreover, ATL will only be paid by the Debtors if the Debtors recover a Tax Savings benefit. Accordingly, the Debtors employment of ATL is in the best interests of the Debtors, their creditors and estates.

WHEREFORE, for the foregoing reasons, the Debtors respectfully request entry of an order authorizing the retention of ATL as property tax consultants nunc pro tunc to November 1, 2005, and for such other and further relief as is just and proper.

Dated: February 3, 2006

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By  *s/ D. J. Baker*<br>    D. J. Baker<br>    Sally McDonald Henry<br>    Rosalie Walker Gray | By  *s/ Cynthia C. Jackson*<br>    Stephen D. Busey<br>    James H. Post<br>    Cynthia C. Jackson, F.B.N. 498882 |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(212) 735-2000 (facsimile)<br>djbaker@skadden.com | 225 Water Street, Suite 1800<br>Jacksonville, Florida 32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

# Exhibit A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No.05-3817 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

### DECLARATION OF ASSESSMENT TECHNOLOGIES, LTD. AND DISCLOSURE OF COMPENSATION

I, James Hausman, pursuant to 28 U.S.C. §1746, declare that the following is true to the best of my knowledge, information and belief:

1. I am a Senior Vice President of the property tax consulting firm of Assessment Technologies, Ltd. ("ATL"). I submit this declaration and disclosure pursuant to Sections 327 and 329 of the Bankruptcy Code and Rule 2014 and 2016, F.R.B.P. in support of the Debtors' application to retain ATL under Section 327(a).

2. ATL is qualified to represent the Debtors as their property tax consultants. ATL is one of the largest ad valorem tax consulting firms in the southern United States with more than 40 tax professionals. ATL has been retained by numerous Chapter 11 debtors for its services.

3. Subject to the disclosures set forth below, neither ATL nor any of its officers or employees holds or represents any interest adverse to the Debtors, their

creditors and estates and each of ATL and its officers and employers are "disinterested persons" within the meaning of section 101(14) of the Bankruptcy Code,

4. To check for potential conflicts of interest in these cases, ATL has researched its client database to determine whether it has any relationship with any of the following entities provided to ATL by the Debtors (collectively, the "Interested Parties"):

(a) the Debtors;

(b) the agents for and the lenders in the Debtors' senior secured credit facility;

(c) the indenture trustee for the Debtors' noteholders;

(d) the Debtors' fifty largest unsecured trade creditors on a consolidated basis as of February 18, 2005;

(e) the Debtors' non-debtor affiliates;

(f) the Debtors' current officers and directors and former officers and directors during the prior four years;

(g) the Debtors' accountants for the prior three years;

(h) the Official Committee of Unsecured Creditors; and

(i) those other creditors and parties in interest on the attached list.

5. ATL's research indicated no adverse relationships with any of these Interested Parties. Despite its efforts to identify conflicts however, because of the number of creditors of the Debtors, ATL is unable to state with certainty that every connection has been disclosed. If ATL discovers additional connections, ATL will file a supplemental disclosure.

6. Subject to Court approval, the Debtors have agreed to compensate ATL under an agreement dated February 3, 2006 (the "Service Agreement") on a contingency

fee basis equal to 35% of the Net Tax Savings recovered for the Debtors by ATL (as defined in the Service Agreement). The Debtors have also agreed to reimburse ATL for its reasonable expenses incurred in connection with the representation of the Debtors.

7. No agreement in any form exists between ATL and any other person for any division of compensation for services rendered in or in connection with these Chapter 11 cases and no such division will be made. ATL has not shared or agreed to share any compensation received in these cases.

8. For the reasons set forth above, I believe the Debtors' retention of ATL is appropriate under Section 327(a) of the Bankruptcy Code and is not prohibited by or improper under Rule 5002, F.R.B.P.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Feb 3, 2006

ASSESSMENT TECHNOLOGIES, LTD.

By: _____
James Hausman
Senior Vice President

00521065

# Exhibit B

Exhibit B

## Service Agreement

I. **Contracting Parties:** This agreement is made between Winn-Dixie Stores, Inc. and its related entities ("Client") and Assessment Technologies, Ltd., a Texas Limited Partnership ("Consultant") as of December 1, 2005. This Service Agreement acknowledges and incorporates by reference the Confidentiality Agreement previously executed as of June 14, 2005 between Client and Consultant.

II. **Statement of Services:** Client hereby engages Consultant on an exclusive basis, and Consultant agrees to provide property tax consulting services under the scope of services set forth herein with respect to appealing tax assessments and/or challenging tax claim amounts for property ("Property") owned, managed or leased by Client. Tax years and claims included in this Service Agreement are 2006 and all prior years that Consultant is able to generate Tax Savings (as defined below) either by state administrative or judicial proceedings or by remedies made available within the Bankruptcy Code.

III. **Scope of Services:** This Agreement concerns property tax consulting services provided by Consultant, which relates solely to the pursuit of Tax Savings on behalf of the Client ("Tax Savings Services"). Such services include but are not limited to:

- Reviewing targeted tax assessments on the Property(s), whether paid or unpaid, including supporting data, calculations and assumptions produced by the appropriate appraisal/assessing authority, together with information provided by the Client;
- Analyzing economic feasibility of attaining a reduced assessment/tax;
- Participating in weekly project strategy and progress conference calls with Client representatives and providing continuing intermittent written reports on progress of Tax Savings Services at intervals as reasonably requested by Client, but in no event less frequently than quarterly;
- With direction by and interaction of Client's counsel as required by Client, representing the Client before the appropriate tax assessing/collecting and/or court authorities using all reasonable, appropriate and available means provided by statute or within the Bankruptcy Code to adjust the assessment, unclaimed tax or claimed tax amount; and
- With direction by and interaction of Client's counsel as required by Client, utilizing any and all local, state or federal remedies Consultant deems necessary and appropriate.

Consultant shall deliver its preliminary findings as to the equitable nature (according to the statutes) of individual property tax assessments and recommend a preferred method of dealing with each property tax assessment/bill/claim consistent with Client's position on administering payments and closing out these liabilities. Consultant must have Client's and its counsel's approval, which shall not be unreasonably withheld, of Consultant's 'proposed' plan for administration prior to taking any contemplated actions beyond review, analysis and reporting. Once Client and its counsel have approved Consultant's plan for administration, Consultant may take action in furtherance of Consultant's plan without additional approval requirements. Any material change in Consultant's plan will require a subsequent approval of the changes before Consultant can proceed with the proposed administration and resolution.

This Agreement does **not** provide for general tax compliance services outside of the Tax Savings Services scope of work described above in this Section III. General tax compliance services are generally administrative or research-intensive in nature and include but are not limited to:

- Production of statutorily required tax returns/renditions;
- Collection, verification and payment of tax bills;
- Collection of fully paid tax receipts; or
- Collection or verification of tax office information.

Any request for general tax compliance work, additional services or reporting services requested at a greater frequency than contemplated herein, will be addressed as a separate service agreement for that specific task.

Service Agreement – Winn-Dixie Stores, Inc. and Assessment Technologies, Ltd
December 1, 2005

Client Initials: _____  Consultant Initials: _[signature]_

Consultant agrees to use all reasonable efforts to obtain a reduction in assessments but does not promise or represent any reduction will be obtained. Client represents it has fully and faithfully complied with all statutory return filing requirements for the years covered in this agreement and represents no omitted property exists. Any increased audit assessment for which Consultant has NOT been forewarned of a discrepancy, though its own research or that of the Client, will reset the initial billing point for the calculation of Tax Savings.

If, before reduction activities begin, Consultant becomes aware through its own research or notification by the Client, that substantial omitted property exists that can cause an increased audit assessment, Consultant must request a waiver to proceed with reduction activities at the new "potential" assessment to use that as an adjusted billing point for Tax Savings. Failure to receive a waiver in these "advance knowledge" situations fixes the initial billing point at the original number and, in such event, any reductions that occur above the original baseline number will not add to Tax Savings. Additionally, in such event, any increase in valuation that remains after adjudication above the original baseline number will reduce Tax Savings.

IV. **Basis for Calculating Fees:** In consideration of the Tax Savings Services to be performed by the Consultant, Client shall pay the following fees for <u>each</u> tax year:

- **35% of all Net Tax Savings.** Consultant shall be paid 35% of all Net Tax Savings received by Client as a result of Consultant's efforts for each tax year. The term "Net Tax Savings" shall mean the balance of Tax Savings that remains after deducting for reasonable Reimbursable Expenses (as defined below).

    - The term "Tax Savings" shall mean the aggregate of:

        - The positive difference between the proposed assessed valuation and the final assessed valuation for the Property for each tax year, multiplied by that year's tax rate. In the event a tax is reduced without adjustment of the corresponding assessed valuation, the positive difference between the beginning tax and the reduced tax shall constitute Tax Savings;
        - Refunds, credits, interest received, reductions in claims and other tax offsets;
        - Reduction in taxes arising from correction of errors in the tax roll for prior tax years, and
        - Reduction of statutory penalties, interest or collection fees payable; to the extent that any statutory penalties, interest or collection fees are payable as unsecured, nonpriority claims and thus subject to compromise, Tax Savings for such penalties, interest and fees shall equal the difference between (i) the amount thereof originally asserted by the taxing authority multiplied by the compromise percentage (e.g., $0.10 on $1.00 or ten percent (10%)) and (ii) the amount actually paid on such penalties, fees and interest, as compromised

    - In the event a final assessed valuation is negotiated in advance of the formal posting of a proposed assessed valuation, the proposed assessed valuation for purposes of calculating Tax Savings will be established by adding capital additions to the property tax account's original assessed value (pre-adjustment) for the prior tax year.
    - Actual tax rates will be used for the calculation of fees unless current year rates have not been set at the time the service is rendered. In that instance, the prior year's rate will be used as an estimator for the purposes of calculating a fee.
    - Penalties, interest and collection fees payable to a taxing authority do not reduce Tax Savings.
    - Penalties or collection fees that accrue statutorily post-filing on Claimed pre-petition tax liabilities on property of the estate AND which are procedurally barred by the Bankruptcy Code do not enter into the calculation of Tax Savings.
    - Disallowance of duplicate (whether filed by a taxing authority, landlord or other party) or otherwise invalid claims shall not constitute Tax Savings.

V. **Payment for Services:** Payment for services shall be paid in accordance with the fee calculation referenced in Section IV to Consultant within 45 days of Client's receipt of ATECH's invoice for fees then due following the Actual Receipt Date of Tax Savings.

Service Agreement – Winn-Dixie Stores, Inc. and Assessment Technologies, Ltd
December 1, 2005

Client Initials: _____                                                                                   Consultant Initials: *[initialed]*

- If Tax Savings is in the form of a refund to Client, "Actual Receipt Date" shall be defined as the date on which Tax Savings funds are received by Client and available for deposit into Client's bank account.

- If Tax Savings is in any form other than a refund to Client, such as a reduction in claims or an offset to other taxes, (i) "Actual Receipt Date" for any tax relating to calendar year 2005 or prior shall be defined as the date the Tax Savings is created, either by posted notification of a reduced liability, passing of tax office response/audit deadlines, the tax office execution of a stipulation or other agreement to accept a lesser tax or other offset, or entry date of an order of the court adjusting a tax liability; and (ii) "Actual Receipt Date" for any tax relating to calendar year 2006 or after shall be defined to occur as the tax liability generally would have been paid.

Client agrees to facilitate Bankruptcy Court approval of Consultant's Tax Savings Services so as to permit Consultant to receive payment on a timely basis for all professional services rendered and with the same priority treatment afforded other administrative claimants. Fees payable hereunder shall be due within forty-five (45) days of the invoice date, subject to any applicable Bankruptcy Court requirements as to approval of fees. Fees are earned and invoiced at the time that the service is rendered and written confirmation and approval of a Tax Savings is received. All sums due Consultant by Client remaining unpaid sixty (60) days after the later of the invoice date or the date of receipt of any required court approval shall bear interest from the date of invoicing at a rate of twelve percent (12%) interest per annum until paid.

VI. **Reimbursement for Expenses:** Consultant is responsible for paying all Reimbursable Expenses, subject to reimbursement by Client to the extent described below. "Reimbursable Expenses" shall be reasonable, documented, and include special property tax counsel legal fees (which, if required, may be subject to Bankruptcy Court review and approval and, in such instance, only to the extent so approved), third party appraisal fees, travel expenses and any other fees and expenses incurred by Consultant in pursuing Tax Savings under this Agreement. Consultant is reimbursed these expenses, by Client, at cost, solely out of the first dollars of Tax Savings. To the extent Tax Savings are not sufficient to reimburse Consultant for the Reimbursable Expenses, Client shall not be responsible for such deficiency. Client authorizes an initial budget of $400,000 ("Initial Budget") for Reimbursable Expenses. Client accepts that it is Consultant's expectation for budgeted expense amounts to vary as Consultant's scope of work progresses. Consultant will notify client of any material change in the running budget of Reimbursable Expenses that will cause the total to exceed the Initial Budget. Client has the right to review and approve any budget increase for Reimbursable Expenses above the Initial Budget amount, which approval will not be unreasonably withheld. Client is entitled to review periodic statements of reimbursable expenses upon request. Client remains responsible for fees of its counsel and any other fees Client incurs as part of this process.

VII. **Payments upon Termination, Cancellation:** If Consultant breaches any material term of this Agreement, Client may terminate this Agreement for cause, in which event Client shall (a) reimburse Consultant for any Reimbursable Expenses not previously reimbursed to Consultant from Tax Savings and (b) pay Consultant's fees not previously covered by payments to Client from corresponding realized Tax Savings. If Client otherwise (i) cancels this Agreement prior to completion of the services contemplated herein or (ii) causes an 'effective cancellation' by paying (without previous communication to, and agreement by, Consultant) pre-petition taxes early or entering into a plan of confirmation or other action that 'functionally' prohibits or nullifies the actions contemplated herein, then Client shall (a) reimburse Consultant for any Reimbursable Expenses not previously reimbursed to Consultant, (b) pay Consultant for any uncharged professional time at its standard hourly rates and (c) pay Consultant an additional break-up fee equal to the greater of, (i) twenty-five percent (25%) of the sum of such uncharged professional time, or (ii) the discounted Lost Fee Opportunity schedule amount found in Table 1 (attached hereto and hereby incorporated herein) for the month of Consultant's first notification of cancellation. Such reimbursement and payments shall be due within forty-five (45) days of Consultant invoicing Client.

VIII. **Status of the Parties.** Consultant is an independent contractor and is not an agent, representative or joint venture partner of Client. Consultant cannot enter into any contract or commitment, beyond the scope of the services contemplated herein, on behalf of Client and is solely responsible for making all payments to and on behalf of its employees, suppliers and subcontractors including those required by law and has no power to obligate or bind Client or its lessors, beyond the scope of services contemplated herein. Neither Client nor its lessors are liable for any debts or other liabilities whatsoever of Consultant. The services to be provided by Consultant to Client do not and

Service Agreement – Winn-Dixie Stores, Inc. and Assessment Technologies, Ltd
December 1, 2005

Client Initials: _____                              Consultant Initials: _SPH6_

will not constitute construction, engineering, architectural or other similar services, services to improve or modify real property, or any other services relating to construction or improvements upon real property. Furthermore, nothing in this Agreement shall be construed to create the relationship of employer and employee between Client and Consultant. To that end, the parties understand and expressly agree that Client will not make any deductions required by law to be made from the compensation paid by an employer to an employee. As an independent contractor, the parties understand and expressly agree that Consultant will be responsible for results only and will not be subject to the control of either Client or any officers or employees of Client.

IX.  **Warranties.** Consultant warrants and represents to Client that:

- It has the experience and abilities necessary to perform all required services with a high standard of quality and that: (i) the Services will conform in all material respects with the specifications set forth in this Agreement; and (ii) the Services will be provided to Client exclusively and on a best efforts basis in a timely, professional and workmanlike manner and with the degree of care and expertise as is standard for the provision of such Services in accordance with industry practices;

- All services, will be as represented by Consultant, suitable for the purposes of generating Tax Savings and in conformance with any performance criteria provided to Consultant in advance;

- It has the right to enter into and fully perform this Agreement, and no service, equipment, or materials or reports furnished to Client will in any way infringe upon or violate any applicable law, rule or regulation, any contract with third party or any rights of any third party, including without limitation, rights of patent, trade secret, trademark or copyrights;

- With respect to all individuals Consultant uses to perform the services required under this Agreement, Consultant will make all appropriate tax payments and tax withholdings and has verified that such individuals are legally able to work in the United States and that to its best information and belief, its third party subcontractors are making all appropriate tax payments and tax withholdings and has verified that such individuals are legally able to work in the United States;

- It is not utilizing child or illegal immigrant labor, paying unreasonable low wages or maintaining unsafe working conditions with respect to the services it is providing to Client, and that to its best information and belief, its third party subcontractors are not utilizing child or illegal immigrant labor, paying unreasonable low wages or maintaining unsafe working conditions with respect to the services it is providing; and

- It is adequately capitalized and has sufficient reserves to pay all of its subcontractors, employees, suppliers, and other third parties in the ordinary course of its business without regard to or reliance upon the payments to be made hereunder by Client.

X.  **Obligations.**

- Consultant is responsible for the direct control and supervision of Consultant's assistants, employees, subcontractors and suppliers in the performance of the Services.

- Consultant must identify to Client readily accessible personnel to address and resolve any inquiries, concerns or complaints Client may have about the services to be provided hereunder.

- Consultant must direct all of its inquiries about the services to be performed hereunder to the authorized Client officer executing this Agreement or Client's attorney, and can rely upon any oral or written statements that may be offered by any other employee of Client.

- Except for the authorized Client officer executing this Agreement (or his designee or successor) or Client's attorney, no other Client employee is authorized to explain, modify or alter any of the requirements set forth herein, and only then upon a writing signed by such authorized Client officer or Client's attorney.

Service Agreement – Winn-Dixie Stores, Inc. and Assessment Technologies, Ltd
December 1, 2005

Client Initials: _____                                                                        Consultant Initials: _____

- No liens, claims of lien, or any other similar encumbrances may be filed against the property of Client or of Client's lessors for Consultant's failure to pay its assistants, laborers, employees, subcontractors, suppliers, or any other third parties.

XI. **Indemnity.** Unless due to the gross negligence of Client, but in no event in an amount or to an extent greater that the Tax Savings realized by Client as a result of Consultant's performance of the Tax Savings Services, Consultant must defend, indemnify and hold harmless Client, its subsidiaries, divisions, and affiliates, from all losses including attorneys' fees and court costs incurred by, or claims made against, Client, its subsidiaries, divisions, and affiliates, as a result of Consultant's performance under this Agreement and/or Consultant's breach of the representations or warranties herein. This indemnity does not limit any other obligation of Consultant to indemnify Client. Consultant agrees to promptly notify Client in writing of any such losses or claims setting forth all known details thereof. Unless due to the gross negligence of Consultant, but in no event in an amount or to an extent greater that the Tax Savings realized by Client as a result of Consultant's performance of the Tax Savings Services, Client must defend, indemnify and hold harmless Consultant, its subsidiaries, divisions, and affiliates, from all losses including attorneys' fees and court costs incurred by, or claims made against, Consultant, its subsidiaries, divisions, and affiliates, as a result of Client's performance under this Agreement and/or Client's breach of the representations or warranties herein. This indemnity does not limit any other obligation of Client to indemnify Consultant. Client agrees to promptly notify Consultant in writing of any such losses or claims setting forth all known details thereof. Consultant understands and expressly agrees that, in the event Consultant is injured by an accident arising out of and during his performance of services for Client, the provisions of the Florida Workers' Compensation Act shall not apply and neither Client nor its insurance carrier shall be liable for any claims arising therefrom.

XII. **Miscellaneous.**

  (1) **Governing Law and Exclusive Jurisdiction.** The laws of the State of Florida, U.S.A., govern this Agreement without reference to any conflict of law principles. The parties hereby consent to the exclusive jurisdiction and venue of the United States Bankruptcy Court for the Middle District of Florida for the resolution of any disputes hereunder.

  (2) **Compliance With Laws.** Consultant warrants that it will comply with the provisions of the Fair Labor Standards Act, the Occupational Safety and Health Act and all other applicable Executive, federal, state, county and local laws, ordinances, regulations and codes (as adopted or amended from time to time) applicable to Consultant's performance of the Services under this Agreement.

  (3) **Terms of Agreement; Work Product.** The continuing obligations, responsibilities and undertakings of the parties contained in this Agreement shall survive the expiration or termination of this Agreement. All work product ("Work Product") first created by Consultant for delivery to Client in connection with the Tax Savings Services shall be owned by Client and shall be delivered to Client, if not previously delivered, as Client may reasonably request but in no event later than sixty (60) days following the conclusion of Consultant's performance of the Tax Savings Services.

  (4) **Notices.** Any notices to be given under this Agreement by either party to the other may be effected by registered or certified mail, with postage prepaid and return receipts requested. Mail notices shall be addressed to the parties at the addresses appearing in the signature paragraph of this Agreement. However, each party may change the address for receipts of notice by giving written notice in accordance with this paragraph. Mailed notices will be deemed communicated upon receipt, as evidenced in the return receipt.

  (5) **Entire Agreement.** This Agreement supersedes any and all agreements except those referenced in the introductory paragraph, both oral and written, between the parties with respect to the rendering of Services by Consultant for Client and contains all of the covenants and agreements between the parties with respect to the rendering of these Services in any manner whatsoever. Each party acknowledges that no representations, by either party, or by any one acting on behalf of either party, unless specifically authorized, and that are not embodied or referenced in this Agreement or subsequent Amendment are

Service Agreement – Winn-Dixie Stores, Inc. and Assessment Technologies, Ltd
December 1, 2005

Client Initials: _____                                                                Consultant Initials: _JPHS_

not part of this Agreement. Any modification of this Agreement will be effective only if it is in writing signed by both parties.

(6) **Severability.** If any provision in this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions will nevertheless continue in full force without being impaired or invalidated in any way.

(7) **Waiver.** Waiver of a breach of this Agreement shall not constitute waiver of another breach. Failure to enforce a provision of this Agreement does not constitute a waiver or create an estoppel from enforcing such provision. Any waiver of a provision of this Agreement is not be binding unless such waiver is in writing and signed by the waiving party.

(8) **Assignment.** Neither Consultant nor Client may assign this Agreement or any part thereof without the prior written consent of the other, which will not be unreasonably withheld. No assignment will relieve Consultant of the responsibility for performance of any obligation under this Agreement. No assignment will relieve Client of the responsibility for payment of any obligation under this Agreement. Consultant may not assign the right to receive payment from Client to any assistant, employee, subcontractor or supplier. Consultant is solely responsible for contracting with and making necessary payments to its assistants, employees, subcontractors, or suppliers.

(9) **Non-Solicitation.** Client agrees not to solicit or hire Consultant's employees, assistants, subcontractors or agents during the term of this Agreement, any of its renewals or twelve (12) months following the expiration of this agreement or any of its renewals.

(10) **Headings.** The headings and captions of this Agreement are inserted for reference convenience and do not define, limit or describe the scope or intent of the terms of the applicable provisions.

(11) **Counterparts.** This Agreement may be executed in counterparts, each of which shall be an original, but which together shall constitute one and the same instrument.

**[SIGNATURE PAGES FOLLOW]**

Service Agreement – Winn-Dixie Stores, Inc. and Assessment Technologies, Ltd
December 1, 2005

Client Initials: _____                                         Consultant Initials: 

In witness whereof, Client and Consultant have entered into this Service Agreement as of December 1, 2005.

| CLIENT | CONSULTANT |
|---|---|
| **Winn-Dixie Stores, Inc.**<br>5050 Edgewood Court<br>Jacksonville, Florida 32254 | **Assessment Technologies, Ltd.**<br>111 Soledad, Suite 1100<br>San Antonio, Texas 78205 |
| By: _____ | By: ATECH Management, LLC, General Partner |
| (Print Name) _____ | By: _[signature]_____ |
| Title: _____ | (Print Name) _James Anusma_ |
| Date: _____ | Title: _Sr. VP._ |
| | Date: _Feb 3, 2006_ |

Service Agreement – Winn-Dixie Stores, Inc. and Assessment Technologies, Ltd
December 1, 2005

Client Initials: _____     Consultant Initials: _[initials]_

In witness whereof, Client and Consultant have entered into this Service Agreement as of December 1, 2005.

| CLIENT | CONSULTANT |
|---|---|
| Winn-Dixie Stores, Inc. | Assessment Technologies, Ltd. |
| 5050 Edgewood Court | 111 Soledad, Suite 1100 |
| Jacksonville, Florida 32254 | San Antonio, Texas 78205 |
| By: /s/ | By: ATECH Management, LLC, General Partner |
| (Print Name) Bennett L. Nussbaum | By: _____ |
| Title: Sr. VP & Chief Financial Officer | (Print Name) _____ |
| Date: _____ | Title: _____ |
| | Date: _____ |

LEGAL APPROVED
ATTY: JSS
DATE: 2/3/06

Reviewed By
BMB
XRoads
Date: 2-3-06

Service Agreement – Winn-Dixie Stores, Inc. and Assessment Technologies, Ltd
December 1, 2005

Client Initials: _____    Consultant Initials: _____

SGR.IAX7888

Table 1: Lost Fee Opportunity Schedule

Client acknowledges (i) that, although ultimately resolved via a contingency-based fee structure if the Tax Savings process runs its full term, this Agreement contemplates that Consultant's professional time will be at risk; (ii) that Consultant's professional time values increase and opportunity costs rise dramatically during the valuation analysis and objection/motion preparation, filing, and other tax reduction administration phases ("Revaluation Stage"); and (iii) that, if this Agreement is cancelled without cause during the Revaluation Stage, Consultant would not be made whole by reimbursement of its time at fee rates. Accordingly, the Lost Fee Opportunity Schedule below approximates the actual damages to Consultant and appropriate discounted "breakup fees" for any cancellation of services, not for cause, during or following the Revaluation Stage.

At Client's request, Consultant previously has provided and updated a good-faith estimate of possible tax savings to be generated by this Agreement ("Savings Opportunity"). As Consultant works through the Revaluation Stage, new information may become available that has an impact, positive or negative, to the projected/estimated Savings Opportunity. If Consultant collects enough information to suggest a 'material' (ten percent (10%) or greater) change to this projection/estimate, Consultant will update Client with a revised projected/estimated Savings Opportunity.

| Period | 35% times Discounted Fee % | Plus | 35% times Discounted Fee % |
|---|---|---|---|
| Month Consultant receives Notice of Cancellation | 35 % times (Fee reduction percentage applicable to Portion of latest estimated Savings Opportunity NOT in a current Obj/Mot filed with the Court or other statutory administrative hearings (the "Unfiled Adjustment Fee Reduction Percentage")) | Plus | 35 % times (Fee reduction percentages applicable to portion of latest estimated Savings Opportunity PENDING in a current Obj/Mot filed with the Court or (other statutory administrative hearings) AND which Client chooses to cancel (the "Filed Adjustment Fee Reduction Percentage")) |
| Feb-06 | 35% x 15% | Plus | 35% x 50.0% |
| Mar-06 | 35% x 22.5% | Plus | 35% x 50.0% |
| Apr-06 and beyond | 35% x 30.0% | Plus | 35% x 50.0% |

Example: Suppose the Savings Opportunity for February of 2006 was $10,000,000 Net Tax Savings. If Consultant were allowed to complete the services and accomplished the full Net Tax Savings, Consultant would receive a fee of:

- Fee = Net Tax Savings * 35% OR 10,000,000 *35% = $3,500,000

However, if notified in February 2006 that the project were to be cancelled immediately without cause AND the $10,000,000 of Savings Opportunity was allocated $9,000,000 unfiled objections, motions for determinations or other statutory administrative hearings and $1,000,000 filed/pending resolution to active pursuits, the Discounted Lost Fee Opportunity to Consultant would calculate to:

- Discounted Lost Fee Opportunity = Savings Opportunity * 35% * Discounted Fee %, OR

- {$9,000,000 * 35% * 15%} PLUS {$1,000,000 * 35% * 50%} = $647,500.00

Service Agreement – Winn-Dixie Stores, Inc. and Assessment Technologies, Ltd
December 1, 2005

Client Initials: _____                                            Consultant Initials: _____