**Hearing Date: February 23, 2006, 1:00 p.m.**
**Objection Deadline: February 16, 2006, 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT RELATING TO SUMMERVILLE, SOUTH CAROLINA PROPERTY**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (the "Debtors"), move for entry of an order under 11 U.S.C. §§ 105(a), 363(b), 365, and Fed. R. Bankr P. 9019 approving a settlement providing for (i) the assumption and assignment (to the sublessee) of a non-residential real property lease under which Equity Property and Development ("Equity Property" or the "Landlord") is the landlord and Winn-Dixie Raleigh, Inc. ("Winn-Dixie Raleigh") is the tenant (ii) the termination of a related sublease under which Winn-Dixie Raleigh is the sublessor and Pivotal Fitness-Charleston-Summerville, LLC ("Pivotal") is the sublessee and (iii) the compromise of past due rent amounts that Pivotal owes to Winn-Dixie Raleigh under the sublease (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**Background**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee. On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005, was subsequently disbanded by the U.S. Trustee by noticed dated January 11, 2006.

3. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. As of the Petition Date, the Debtors were considered to be the eighth-largest food retailer in the United States and one of the largest in the Southeast, with more than 900 stores in the United States. Since the Petition Date, the Debtors have been engaged in a footprint reduction program to sell or close 326 of their stores. To date, the Debtors have sold or closed over 300 stores.

4. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested in the Motion are sections 105(a), 363(b) and 365 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**The Lease and Sublease**

6. Winn-Dixie Raleigh, as tenant, and Equity Property, as landlord, are successors in interest to a lease dated as of August 25, 1994 (the "Lease") at the Debtors' Store Number 1261 located in Summerville, South Carolina (the "Premises"). Pivotal, as successor in interest to Profit Management, Inc., subleases the Premises from Winn-Dixie Raleigh pursuant to a sublease dated April 23, 2003 (the "Sublease").

7. The rental obligation that Pivotal is obligated to pay under the Sublease is substantially less than Winn-Dixie Raleigh's rental obligation to the Landlord under the Lease (by approximately $10,000 per month). Because of this shortfall, it is not in the Debtors' best interests to continue the Lease and the Sublease.

**The Settlement**

8. Pivotal has informed the Debtors that it would like to remain in the Premises under the terms of the Debtors' Lease. The parties have now reached an agreement which, subject to Court approval, is comprised of the following terms (collectively, the "Settlement"):

- Winn-Dixie Raleigh will assume and assign the Lease to Pivotal pursuant to the Assignment and Assumption of Lease attached as Exhibit A.
- Winn-Dixie Raleigh and Pivotal will terminate the Sublease effective as of August 22, 2005 pursuant to the Sublease Termination Agreement attached as Exhibit B.
- Pursuant to the terms of the Settlement Agreement attached as Exhibit C, Winn-Dixie Raleigh's claim against Pivotal for the past due rental amounts will be reduced to

$120,000, which amount will be released from escrow and remitted to Winn-Dixie Raleigh within two (2) business days of the date of entry of entry of the Court's order approving the Settlement.

- Pivotal will waive any claims it may have under the Sublease.

**Relief Requested**

9. By this Motion, the Debtors request that the Court approve the Settlement on the terms set forth in the Assignment and Assumption of Lease, the Sublease Termination Agreement, and the Settlement Agreement (collectively, the "Settlement Documents"), which Settlement principally includes (a) the assumption and assignment (to Pivotal) of the Lease effective as of August 22, 2005, (b) the termination of the Sublease effective as of August 22, 2005 and (c) the compromise of Winn-Dixie Raleigh's claim against Pivotal for past due rent as described in the Settlement Agreement.

**Basis for Relief**

10. The Settlement provides the Debtors with the benefit of being able to transfer Winn-Dixie Raleigh's obligations under the Lease, but also (a) to avoid a rejection damage claim by the Landlord, and (b) ensure, by terminating the Sublease (rather than rejecting it), that Pivotal will not assert any rejection damage claim against Winn-Dixie Raleigh -- a claim amount that could have been significant.

**Applicable Authority**

11. A settlement constitutes a disposition of property of the estate that must be approved by the Bankruptcy Court if outside the ordinary course of business. See 11 U.S.C. § 363(b). Bankruptcy Rule 9019 sets forth the standard for bankruptcy court approval of compromises of controversies, providing that "[o]n motion by the trustee and after notice and a

hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

12. To approve a settlement under Bankruptcy Rule 9019, a bankruptcy court must determine that the settlement is supported by adequate consideration and that it is fair, equitable, and in the best interests of the debtor's estate. In doing so, bankruptcy courts consider a variety of factors, including (a) the probability of success in the litigation; (b) the difficulties associated with collection; (c) the complexity of the litigation and the attendant expense, inconvenience and delay; and (d) the paramount interests of, and deference to the views of, the creditors. See *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990).

13. The Settlement was the product of extensive arms-length negotiation between the Debtors and Pivotal. By providing for the assumption and assignment of the Lease, the Settlement enables the Debtors to limit the potential rejection damage claim that the Landlord could otherwise assert if the Debtors had instead rejected it. Further, assumption and assignment of the Lease benefits the Debtors' estates by alleviating monthly costs, including taxes, insurance premiums, and other charges due under the Lease. Additionally, the termination of the Sublease benefits the Debtors by eliminating any rejection damage claim that Pivotal could assert if the Debtors were forced to reject the Sublease. Against these benefits, the Debtors believe that the compromise of the past due rent that Pivotal owes to Winn-Dixie Raleigh--especially given the fact that Pivotal has agreed to undertake a higher rental obligation under the Lease than it was paying under the Sublease--is justified and reasonable. Accordingly, and for the reasons set forth above, the Settlement should be approved.

**Notice**

14. Notice of the Motion has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the

Creditors' Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, (e) the Landlord, and (f) counsel for Pivotal. No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached as Exhibit D approving the Settlement on the terms set forth in the Settlement Documents including (a) the assumption and assignment of the Lease; (b) the termination of the Sublease; and (c) the compromise of Winn-Dixie Raleigh's claim against Pivotal; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: February 7, 2006

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By *s/ D. J. Baker*
D. J. Baker
Sally McDonald Henry
Rosalie Walker Gray
Adam S. Ravin
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for Debtors

SMITH HULSEY & BUSEY

By *s/ Cynthia C. Jackson*
Stephen D. Busey
James H. Post
Cynthia C. Jackson,
Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Debtors

# EXHIBIT A

**ASSIGNMENT AND ASSUMPTION OF LEASE**
[Store #1261, Summerville, South Carolina]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of August 22, 2005 (the "Effective Date"), by and between

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("Assignor"), whose address is 5050 Edgewood Court, Jacksonville, Florida 32254 Attention: Legal Department, and

**PIVOTAL FITNESS-CHARLESTON-SUMMERVILLE, LLC**, a Delaware limited liability company ("Assignee"), whose address is 401 E. LAS OLAS BLVD STE 1140 FT LAUDERDALE FL 33301;

**RECITALS:**

A. Assignor is debtor-in-possession under voluntary petition (the "Petition") for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, U.S.C. §101 et seq., as amended (the "Code"), in the United States Bankruptcy Court for the Middle District of Florida (the "Court"), under Case No. 05-03817-3F1 (the "Proceeding").

B. Assignor is the tenant under that certain lease, together with any and all amendments thereto, as described on attached Exhibit A (the "Lease"), relating to the premises as described on attached Exhibit A (the "Premises").

C. Assignee, as subtenant, through an Assignment of Sublease and Interest with Pro Fit Management, Inc., d/b/a Omni Health and Fitness, has subleased the Premises from Assignor, as sublandlord, pursuant to Sublease dated April 23, 2003 (the "Sublease"), subject to the Lease.

D. Assignor has agreed to assign to Assignee all of Assignor's right, title and interest, as tenant or lessee, in and to the Lease, and Assignee has agreed to assume and perform all of Assignor's liabilities and obligations arising under the Lease, all subject to and in accordance with the terms of the Lease and this Assignment. Pursuant to the *Order Authorizing the Sale of De Minimus Assets Without Court Approval* dated on June 2, 2005, consideration for this Assignment is substantially less than $75,000.00 and, accordingly, is not subject to the Court's approval.

E. Assignor and Assignee desire to set forth the terms and conditions of such assignment and assumption, and have entered into this Assignment in furtherance of the foregoing.

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **RECITALS; DEFINITIONS**. The foregoing Recitals are true and correct and are a material part of this Assignment.

2. **ASSIGNMENT**. Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as lessee in and to the Lease and all of the rights, benefits and privileges of the lessee thereunder. Assignor hereby agrees that it will remain, and will be, responsible for all liabilities and obligations of the

lessee that have accrued under the Lease prior to the Effective Date, subject, however, to Assignee's payment and performance of its obligations under the Sublease accruing prior to the Effective Date.

3. **ASSUMPTION**. Assignee hereby accepts the aforesaid assignment and assumes and agrees to pay and perform all liabilities and obligations of the lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the lessee that accrue under the Lease on or after the Effective Date.

4. **ASSIGNOR'S WARRANTY OF TITLE**. Assignor represents and warrants to Assignee that Assignor has good and lawful right, title and interest in the Premises under the Lease, as lessee thereunder and that Assignor will defend Assignee's interest as tenant or lessee thereunder from and against the lawful claims of all persons claiming by, through or under Assignor, but against none other; in all cases, however, subject to the Proceeding.

5. **NOTICE OF LEASE ASSIGNMENT**. Assignor and Assignee will execute and deliver a Notice of Assignment of Lease (in a mutually acceptable form) evidencing the assignment of the Lease as a matter of public record, for recordation in the public records of the county in which the Premises is located.

6. **RENT**. Assignee hereby agrees to pay rent monthly in the amount of $24,000.00 due and payable according to the terms of the Lease.

7. **RECONCILIATION OF RENT, OPERATING COSTS AND CLOSING COSTS**. Assignor shall not be obligated to pay rent or other charges under the Lease accruing on or after the Effective Date; however, to the extent that any rent or charges paid in advance by Assignor are attributable to any partial year, partial quarter or partial month that falls after the Effective Date, then Assignee will provide a prorata credit to Assignor for that portion of such payment attributable to such period. Likewise, to the extent that any unpaid rent or charges payable in arrears by Assignee are attributable to any partial year, partial quarter or partial month that falls before the Effective Date, then Assignor will provide a prorata credit to Assignee for that portion of such payment attributable to such period. Reconciliation of rent, operating costs, closing costs, credits for partial period prorations, and other financing matters, will be set forth in a Statement of Closing Costs and Reconciliation to be signed by Assignor and Assignee on the Effective Date. Transfer costs and taxes will be paid by Assignee. Each party will bear their own attorneys fees and costs.

8. **NOTICES**. Except with respect to the notices contemplated under paragraph 5 above, notices and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (a) as of the date and time the same is personally delivered with a receipted copy; (b) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (c) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same; or (d) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next

business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

If to Assignor: Winn-Dixie Raleigh, Inc.; Re: Store #1261
Attn: Legal Department
5050 Edgewood Court
Jacksonville, FL 32254
Telefax No.: 904 783 5138

With a copy to: Smith, Gambrell & Russell, LLP
Attn: Douglas, G. Stanford
50 North Laura Street
Suite 2600
Jacksonville, Florida 32202
Telefax No.: (904) 598-6226

or to such other address or telefax number as Assignor may direct from time to time.

If to Assignee: Pivotal Fitness-Charleston-Summerville LLC
Attn: 401 E. LAS OLAS BLVD
STE 1140, FT LAUDERDALE FL
33301
Telefax No.: 954-713-2275

With a copy to: GREENBERG TRAURIG
Attn: PETER TUNIS
401 E. LAS OLAS BLVD STE 200
FT LAUDERDALE FL 33301
Telefax No.: 954-765-1477

or to such other address or telefax number as Assignee may direct from time to time.

9. **BINDING EFFECT**. This Assignment will be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

10. **FURTHER ASSURANCES**. Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered in the presence of:

[signature]
Name: SUSAN MAGADDINO

[signature]
Name: Rebecca Campbell

**ASSIGNOR:**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

By: [signature]
Name: RICHARD C. JUDD
Title: Vice President

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 9th day of ~~August~~ Sept, 2005, by RICHARD C. JUDD, the ______ Vice President of Winn-Dixie Raleigh, Inc., a Florida corporation, on behalf of the corporation. He is personally known to me.

[signature]
Notary Public, State of Florida
Printed Name: LISA KAY CHACON
Commission Number: ______
My commission expires: ______

[NOTARIAL SEAL]

LISA K. CHACON
Notary Public, State of Florida
My comm. expires Nov. 16, 2006
Comm. No. DD 148809

LEGAL APPROVED
ATTY: CBE
DATE: 9/9/05

Reviewed By SM
XRoads
Date: ______

Store #1261

Signed, sealed and delivered
in the presence of:

Name: Thomas E. Anaya

Name: Hugo D. Byrne

**ASSIGNEE:**

**PIVOTAL FITNESS-CHARLESTON-SUMMERVILLE LLC**, a Delaware limited liability company

By: ______________________
Name: MICHAEL BUSH
Title: MANAGER

STATE OF FLORIDA
COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this 22 day of August, 2005, by Michael Bush, the Manager of PIVOTAL FITNESS-CHARLESTON-SUMMERVILLE LLC, a Delaware limited liability company, on behalf of the company He/She either [✓] is personally known to me or [ ] has produced ______________________ as identification.

DELORES S. ATKINSON
MY COMMISSION # DD402803
EXPIRES: March 15, 2009
1-800-3-NOTARY Fl. Notary Discount Assoc. Co.

______________________
Notary Public, State of Florida
Printed Name: Delores S. Atkinson
Commission Number: DD402803
My commission expires: March 15, 2009

[NOTARIAL SEAL]

Store #1261

**EXHIBIT A**
to Assignment and Assumption of Lease

Description of Premises and Lease

STORE #1261
1645 Old Trolley Road, Summerville, South Carolina

LEASE:

Lease Agreement dated as of August 25, 1994, between Peregrine Properties Limited Partnership, as landlord, and Winn-Dixie Greenville, Inc., as tenant; and

a short form of which is recorded in Book 1373, page 94, of the Dorchester County Clerk's office, Dorchester County, South Carolina.

# EXHIBIT B

**SUBLEASE TERMINATION AGREEMENT**
[Store #1261]

**THIS SUBLEASE TERMINATION AGREEMENT** (this "Agreement") is made effective as of August 22, 2005 (the "Effective Date"), by and between

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation ("Sublandlord"), whose address is 5050 Edgewood Court, Jacksonville, Florida 32254 Attention: Legal Department, and

**PIVOTAL FITNESS-CHARLESTON-SUMMERVILLE, LLC**, a Delaware limited liability company ("Subtenant"), whose address is 401 E. LAS OLAS BLVD STE 1140, FT. LAUDERDALE FL 33301;

**RECITALS:**

A. Sublandlord is the tenant under that certain lease, together with any and all amendments thereto, as described on attached Exhibit A (the "Lease"), relating to the premises as described on attached Exhibit A (the "Premises").

B. Subtenant has subleased the Premises from Sublandlord pursuant to an Assignment of Sublease and Interest with Pro Fit Management, Inc., d/b/a Omni Health and Fitness and Sublease dated April 23, 2003 (the "Sublease").

C. The term of the Sublease is scheduled to expire on August 30, 2014 (the "Scheduled Expiration Date"), and Sublandlord and Subtenant have determined that termination of the Sublease prior to the Scheduled Expiration Date is in the best interests of both Sublandlord and Subtenant.

D. Sublandlord and Subtenant have agreed to terminate the Sublease as of the Effective Date and prior to the Scheduled Expiration Date upon the terms and conditions stated herein.

E. This termination of the Sublease is occurring contemporaneously with the assignment of Lease between Sublandlord and Subtenant.

**NOW THEREFORE**, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Landlord and Tenant agree, represent, and/or warrant, as applicable, as follows:

1. Recitals. The foregoing recitals are true and correct and incorporated herein by reference.

2. Tender of Possession. On and as of the Effective Date, Subtenant tendered or shall tender to Landlord, and Landlord accepted or shall accept from Tenant, (a) all rent and other charges payable by Subtenant as accruing prior to the Effective Date, and (b) exclusive possession of the Premises free and clear of all liens, claims or encumbrances created by or through Subtenant.

3. Reconciliation of Sublease Rent and Charges. Subtenant shall not be obligated to pay rent or other charges under the Sublease accruing on or after the Effective Date; however, to the extent that any rent or charges paid in advance by Subtenant are attributable to any partial year, partial quarter or

partial month that falls after the Effective Date, then Sublandlord will provide a prorata credit to Subtenant for that portion of such payment attributable to such period. Likewise, to the extent that any unpaid rent or charges payable in arrears by Sublandlord are attributable to any partial year, partial quarter or partial month that falls before the Effective Date, then Subtenant will provide a prorata credit to Sublandlord for that portion of such payment attributable to such period. Reconciliation of closing costs, credits for partial period prorations, and other financing matters, will be set forth in a Statement of Closing Costs and Reconciliation to be signed by Sublandlord and Subtenant on the Effective Date. Recording costs for recording a notice of termination of the Sublease will be paid by Sublandlord. Recording costs for title curative action by Subtenant necessary to enable Subtenant to deliver the Premises free and clear of such matters created by or through it will be paid by Subtenant. Each party will bear their own attorneys fees and costs.

4. Sublease Termination. As of the Effective Date, the Sublease is or shall be terminated, and Sublandlord and Subtenant hereby release and discharge each other, including their respective subsidiaries, affiliates, officers, directors, agents, and employees as of the Effective Date from all obligations and liabilities, whether known or unknown, foreseen or unforeseen, under or in connection with the Sublease or Subtenant's use or occupancy of the Premises; provided, however, that such release will not affect the parties respective rights and obligations under this Agreement.

5. Binding Agreement. This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

6. Counterparts. This Agreement may be executed in one or more counterparts, each if which shall be deemed an original, and all of which when considered together shall be deemed one instrument.

**[END OF PAGE]**

**IN WITNESS WHEREOF**, Sublandlord and Subtenant have executed this Agreement as of the date first above written.

Signed, sealed and delivered in the presence of:

Name: SUSAN MAGADDINO

Name: Rebecca Campbell

**SUBLANDLORD:**

**WINN-DIXIE RALEIGH, INC.**, a Florida corporation

By: ______________________

Name: RICHARD C. JUDD

Title: Vice President

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 9th day of ~~August~~ September, 2005, by RICHARD C. JUDD, the Vice President of Winn-Dixie Raleigh, Inc., a Florida corporation, on behalf of the corporation. He is personally known to me.

LISA K. CHACON
Notary Public, State of Florida
My comm. expires Nov. 16, 2006
Comm. No. DD 148809

Notary Public, State of Florida
Printed Name: LISA KAY CHACON
Commission Number: ______________
My commission expires: ______________

[NOTARIAL SEAL]

LEGAL APPROVED
ATTY: CBE
DATE: 9/9/05

Reviewed By SM
XRoads
Date: ______

SGRJAX\70322.2

Signed, sealed and delivered
in the presence of:

Name: Thomas E. Aucoy

Name: Thomas Byrn

**SUBTENANT:**

**PIVOTAL FITNESS-CHARLESTON-SUMMERVILLE LLC**, a Delaware limited liability company

By: ______________________
Name: MICHAEL BUSH
Title: MANAGER

STATE OF ~~GEORGIA~~ FLORIDA
COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this 22 day of August, 2005, by Michael Bush, the Manager of PIVOTAL FITNESS-CHARLESTON-SUMMERVILLE LLC, a Delaware limited liability company, on behalf of the company. He/She either [✓] is personally known to me or [ ] has produced ______________ as identification.

DELORES S. ATKINSON
MY COMMISSION # DD402803
EXPIRES: March 15, 2009
NOTARY PUBLIC STATE OF FLORIDA
1-800-3-NOTARY Fl. Notary Discount Assoc. Co.

______________________
Notary Public, State of Georgia
Printed Name: Delores S. Atkinson
Commission Number: DD402803
My commission expires: March 15, 2009

[NOTARIAL SEAL]

**EXHIBIT A**
to Sublease Termination Agreement

Description of Premises and Lease

STORE #1261
1645 Old Trolley Road, Summerville, South Carolina

LEASE:

Lease Agreement dated as of August 25, 1994, between Peregrine Properties Limited Partnership, as landlord, and Winn-Dixie Greenville, Inc., as tenant; and

a short form of which is recorded in Book 1373, page 94, of the Dorchester County Clerk's office, Dorchester County, South Carolina.

**EXHIBIT C**

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | **)** | **SETTLEMENT AGREEMENT** |
| | **)** | |
| **COUNTY OF DORCHESTER** | **)** | |

THIS SETTLEMENT AGREEMENT is made and entered into this ______ day of January 2006, ("Agreement") by and between Winn Dixie Raleigh, Inc. ("Winn Dixie") and Pivotal Fitness-Charleston-Summerville, LLC ("Pivotal Fitness").

WHEREAS, Winn Dixie leases a commercial building located at 1645 Old Trolley Road, Summerville, South Carolina (the "Leased Property");

WHEREAS, Profit Management, d/b/a Omni Health and Fitness ("Profit") subleased the Leased Property from Winn Dixie and Pivotal Fitness is the successor in interest to Profit; and

WHEREAS, a dispute has arisen between Winn Dixie and Pivotal Fitness regarding the non-payment of rent due under the Sublease and Winn Dixie filed an Application for Ejectment and Pivotal Fitness has requested a hearing on that Application; and

WHEREAS, based upon the alleged default under the sublease as asserted by Winn Dixie, Winn Dixie alleges that it has the right to seek ejectment of Pivotal Fitness and to reject the lease and sublease regarding the Leased Property; and

WHEREAS, Pivotal Fitness desires to remain in its current location in the Leased Property and Winn Dixie desires to no longer be a party to any lease agreements relating to the Leased Property; and

WHEREAS, to avoid continued litigation the parties have agreed to settle the claims at issued in the litigation as more fully described below; and

WHEREAS, the parties hereto now wish and intend to execute this Agreement for the purposes of defining, evidencing, and effecting the terms of the settlement which has been agreed upon between them.

NOW, THEREFORE**,** Winn Dixie and Pivotal Fitness agree as follows:

1. Pivotal Fitness shall pay to Winn Dixie $120,000.00 by electronic wire transfer by February 1, 2006 into the trust account of Winn Dixie's counsel to be paid to Winn Dixie upon approval by the Bankruptcy Court of this settlement as set forth in paragraph 3 below. If this settlement is not approved by the Bankruptcy Court, these funds shall remain in trust until such time as a court of competent jurisdiction determines whether rent is due to Winn Dixie and the amount of such rent. At that time, the funds shall be paid out according to the terms of the court's order. The parties agree to cooperate with each other and use their best efforts in seeking the approval of this settlement from the Bankruptcy Court in the manner set forth in paragraph 3 below.

2. In consideration of the payment specified in paragraph 1 above, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Winn Dixie shall dismiss the Application for Ejectment without prejudice, each party to bear its own attorney's fees, expenses and costs.

3. The parties further agree that Winn Dixie will cause to be filed appropriate pleadings or other documents requesting the approval of the Bankruptcy Court having jurisdiction over the Winn Dixie bankruptcy for the Assumption of the lease between Winn Dixie and its landlord ("Landlord") and the assignment of that lease to Pivotal Fitness. The parties agree to cooperate with each other and use their best efforts in seeking the approval of the Bankruptcy Court. In the event the Bankruptcy Court does not approve the assumption and assignment, Winn Dixie may pursue any remedies available to it regarding the Leased Property, including ejectment of any tenants or subtenants and rejection of any leases or subleases relating to the Leased Property and the basis for pursuing such remedies may include Pivotal Fitness's failure to pay the entire amount of rent due as alleged in Winn Dixie's Application for Eviction. Pivotal Fitness retains the right to defend against any such ejectment action and may assert any and all defenses it may have in any ejectment proceeding.

4. This Agreement shall be governed by the laws of the State of South Carolina.

This Agreement is entered into as of the day and year first written above.

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement and General Release to be executed on the date above written.

_________________
Witness

**Winn Dixie Raleigh, Inc.**

_________________
Witness

By:____________________________________

Its:____________________________________

**Pivotal Fitness-Charleston-Summerville, LLC**

_________________
Witness

By:____________________________________

Its:____________________________________

_________________
Witness

**EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ORDER APPROVING SETTLEMENT**
**RELATING TO SUMMERVILLE, SOUTH CAROLINA PROPERTY**

These cases came before the Court for hearing on February 23, 2006, upon the motion of Winn-Dixie Stores, Inc. and certain of its subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order approving a settlement involving (i) the assumption and assignment of a non-residential real property lease under which Equity Property and Development ("Equity Property" or the "Landlord") is the landlord and Winn-Dixie Raleigh, Inc. ("Winn-Dixie Raleigh") is the tenant (ii) the termination of a related sublease under which Winn-Dixie Raleigh is the sublessor and Pivotal Fitness-Charleston-Summerville, LLC ("Pivotal") is the subtenant and (iii) the compromise of past due rent amounts that Pivotal owes Winn-Dixie Raleigh under the Sublease (the "Motion").[1] The Court has read the Motion and considered the representations of counsel. Based upon the representations of counsel and without objection by the United States Trustee or any other interested parties, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

2. The Settlement is approved.

---

[1] All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Motion.

3. The Debtors are authorized to take any and all actions that may be required to implement the Settlement described in the Settlement Documents.

4. The Debtors are authorized to assume and assign the Lease to Pivotal in accordance with the terms of the Assignment and Assumption of Lease.

5. The Debtors are authorized to terminate the Sublease in accordance with the terms of the Sublease Termination Agreement.

6. Within two (2) business days of the date of this Order, the $120,000 that Pivotal has placed in escrow shall be released to Winn-Dixie Raleigh in full satisfaction of all amounts owed to Winn-Dixie Raleigh under the Sublease.

7. Pivotal shall be deemed to have waived any claims it may have under the Sublease.

8. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated this ___ day of ___________, 2006 in Jacksonville, Florida.

____________________________________
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve a copy of this Order on all parties who received copies of the Motion.