## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors. | ) | Jointly Administered |

## ORDER (A) AUTHORIZING THE DEBTORS TO SELL OVIEDO PROPERTY AND RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS, AND (B) GRANTING RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363 and Fed. R. Bankr. P. 6004 (a) authorizing Winn-Dixie Stores, Inc., a Florida corporation, as Owner Trustee of the Dixon Realty Trust 1999 – 1, a Utah trust ("Winn-Dixie") to sell a closed grocery store and the underlying tract of land located in Oviedo, Florida to Equity One (Florida Portfolio), Inc., or to the party submitting a higher or otherwise better offer, free and clear of liens, claims, interests and encumbrances and (b) granting related relief (the "Motion").[1]  A hearing on the Motion was held by the Court on February 9, 2006 (the "Sale Hearing").  The Court has read the Motion and considered the representations of counsel.  Upon the representations of counsel and without objection from the United States Trustee or any other interested party, the Court makes the following findings of fact:

---

[1]   All capitalized terms not otherwise defined by this Order will have the meaning ascribed to them in the Motion or the Purchase Agreement.

WD- Order Sale of Oviedo Tract (00522055).DOC

A.    This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

B.    The Debtors solicited the highest or otherwise best offer for the Assets described in the Purchase Agreement (the "Assets") in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures"). A competing bid was received for the Assets and the Debtors conducted an auction for the Assets on February 8, 2006 (the "Auction"). At the Auction, AHG Group, LLC (the "Purchaser") submitted the final bid of $5 million, representing the highest or otherwise best offer received for the Assets.

C.    The Debtors have provided interested parties (including all parties asserting claims on interests of the Assets, if any) with proper notice of the Motion, the Auction, the Sale Hearing and the transactions contemplated by the Sale pursuant to 11 U.S.C. §§ 102(1), 105(a), 363 and Fed. R. Bankr. P. 2002 and 6004 and Local Rule 2002-1, the Bidding Procedures Order and the Notice Procedures Order.

D.    A reasonable opportunity to object or be heard with respect to the Motion and the sale of the Assets has been afforded to all parties in interest (including all third parties asserting Interests or Claims (as such terms are defined below) in, to or against the Assets, if any).

E.    The Debtors marketed the Assets and conducted the Sale process in compliance with the Bidding Procedures Order. The bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner. Through the

2

Debtors' marketing efforts and Auction process, the Debtors afforded all interested parties a reasonable opportunity to make higher or betters offers to purchase the Assets.

      F.     Winn-Dixie (i) has full corporate power and authority to execute and consummate the purchase agreement attached as Exhibit A to this Order (the "Purchase Agreement") and all related documents, and the sale of the Assets has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

      G.     Winn-Dixie has good business reasons to sell the Assets prior to filing a plan or reorganization pursuant to 11 U.S.C. § 363(b).

      H.     Neither Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

      I.     The Purchase Agreement was proposed, negotiated and entered into by Winn-Dixie and the Purchaser without collusion, in good faith and at arms'-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

      J.     The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m).

      K.     The consideration being provided by the Purchaser to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the

Assets; and (iii) constitutes reasonably equivalent value and fair consideration for the Assets.

        L.     Winn-Dixie's transfer of the Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with good and valid title in and to the Assets free and clear of any lien, interest or encumbrance of any kind or nature (collectively, the "Interests") and claim (as such term is defined in 11 U.S.C. § 101(5)) ("Claims") with the exception of the Permitted Encumbrances, as defined in the Purchase Agreement.

        M.    Winn-Dixie may sell and transfer the Assets free and clear of all Interests and Claims (other than the Permitted Encumbrances) because any entity with any Interests or Claims, if any, in the Assets to be transferred (i) has consented to the sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Holders of Interests and Claims, if any, who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

        N.     The Court's approval of the Purchase Agreement and the sale of the Assets to the Purchaser, or its designee, is in the best interests of the Debtors, their estates, their creditors and other parties in interest. Accordingly, it is

        ORDERED AND ADJUDGED THAT:

        1.     The Motion is granted.

2.    Any objections to the entry of this Order or to the relief granted and requested in the Motion that have not been withdrawn, waived or settled are denied and overruled on the merits.

3.    The terms and conditions of the Purchase Agreement are approved. Pursuant to 11 U.S.C. §§ 105(a), 363(b) and this Order, the Debtors are authorized to consummate the Sale in accordance with the terms and conditions of the Purchase Agreement.

4.    Winn-Dixie is authorized to consummate and implement fully the Purchase Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement, and the Debtors are authorized to take all further actions as may reasonably be necessary or appropriate for the purpose of conveying the Assets to the Purchaser, or its designee, or as may be necessary or appropriate to the performance of the Debtors' obligations under the Purchase Agreement.

5.    Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties without further order of the Court; provided, however, that, (a) the Debtors will first obtain the prior written consent of (i) the DIP Lender, and (ii) the Creditors' Committee, which consent will not be unreasonably withheld and (b) any such modification, amendment or supplement does not have a materially adverse effect on the Debtors' estates.

WD- Order Sale of Oviedo Tract (00522055).DOC

6.    Winn-Dixie will transfer the Assets to the Purchaser, or its designee, upon Closing free and clear of all Interests and Claims (except for the Permitted Encumbrances).    The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender and any other valid and enforceable liens, if any, will attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

7.    Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, is a legal, valid, and effective transfer of the Assets and will vest the Purchaser, or its designee, with all right, title and interest of the Debtors in and to the Assets, free and clear of all Interests and Claims (except for the Permitted Encumbrances).

8.    The consideration provided by the Purchaser, or its designee, for the Assets constitutes reasonably equivalent value and fair and reasonable consideration under the Bankruptcy Code and applicable non-bankruptcy law, and may not be avoided under 11 U.S.C. § 363(n).

9.    Upon Closing of the Sale in accordance with the Purchase Agreement and this Order, the Purchaser is deemed to have acted in good faith in purchasing the Assets, as that term is used in 11 U.S.C § 363(m).    Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Assets will not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

10.    All entities who are presently in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors.    Each of the

6

Debtors' creditors is authorized and directed to execute any and all documents and take all other actions as may be necessary to release its Interests in and Claims against the Assets (except for the Permitted Encumbrances) (provided that the taking of such actions will not require such creditor to incur any material costs) as such Interests and Claims may have been recorded or may otherwise exist. In the event any creditor fails to release its Interests in or Claims against the Assets, the Debtors are authorized to file or record a copy of this Order. Once filed, registered or otherwise recorded, this Order will constitute conclusive evidence of the release of all Interests in and Claims against the Assets (except for the Permitted encumbrances).

11.     Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

12.     Other than the Permitted Encumbrances, the Assumed Liabilities and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser and its designee, (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets. The Debtors' transfer of the Assets to the Purchaser, or its designee, does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or

the Assets by reason of such transfer under the laws of the United States or any state or territory.

13.    This Order is and will be effective as a determination that any and all Interests or Claims are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

14.    Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in the Assets to the Purchaser, or its designee. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

15.    This Order is binding in all respects upon, and inures to the benefit of, the Debtors, their estates and creditors, the Purchaser and its designee, and its respective affiliates, successors and assigns, and this Order is binding in all respects upon all persons asserting an Interest in or Claim against the Debtors' estates or the Assets. The sale is enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any chapter 7 or chapter 11 trustee of the Debtors and their estates.

16.    During the pendency of the Debtors' jointly administered cases, this Court will retain exclusive jurisdiction (a) to enforce and implement the Purchase Agreement and any agreements and instruments executed in connection with the Purchase Agreement, (b) to compel delivery of possession of the Assets to the Purchaser,

8

(c) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement and (d) to interpret, implement, and enforce the provisions of this Order.

17.    All persons and entities that hold Interests in or Claims against the Debtors or the Assets are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale of the Assets.

18.    Nothing contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or any order of this Court confirming such a plan, or any other order entered in these chapter 11 cases or in any subsequent chapter 7 cases will conflict with or derogate from the terms of this Order.

19.    The failure specifically to include any particular provision of the Purchase Agreement in this Order will not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

20.    After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Interests or Claims or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing

9

portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement.   No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

21.    To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the this Order will control.

22.    Notwithstanding Fed. R. Bankr. P. 6004(g), this Order will take effect immediately upon entry.

Dated this ___ day of February, 2006 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed
to serve a copy of this Order
on all persons served with
the Motion.

10

**EXHIBIT A**

## REAL ESTATE PURCHASE AGREEMENT
[Oviedo – Store #2375]

**THIS REAL ESTATE PURCHASE AGREEMENT** (this "Agreement") is made as of February 8, 2006 (the "Effective Date"), between

**AHG GROUP, LLC,** a Florida limited liability company, or its designee ("Buyer"), and

**WINN-DIXIE STORES, INC.,** a Florida corporation as Owner Trustee of the Dixon Realty Trust 1999-1, a Utah trust  ("Seller").

1.      SALE AND PURCHASE.  Seller agrees to sell, assign, transfer and convey to Buyer, and Buyer agrees to purchase from Seller, that certain tract of land situated in Seminole County, Florida, as more particularly described on attached Exhibit A, together with all improvements and appurtenances, rights, easements, rights-of-way, tenements and hereditaments incident thereto (collectively, the "Property").  The Property to be conveyed does not include furniture, fixtures and equipment ("FF&E").

2.      PURCHASE PRICE AND PAYMENT.  In consideration of the conveyance of the Property to Buyer, Buyer will pay to Seller the sum of $5,000,000 (the "Purchase Price"), payable as follows:

(a)      An earnest money deposit of $385,000 (the "Deposit") was delivered to Smith, Gambrell & Russell, LLP, through its Jacksonville, Florida office, as escrow agent ("Escrow Agent") under the provisions of paragraph 14 and is non-refundable to Buyer.

(b)      At Closing, the Deposit will be credited against the Purchase Price, and the unpaid balance of the Purchase Price will be due and payable in cash (as adjusted by prorations and payment of expenses as herein provided).

3.      PROPERTY CONDITION AND INVESTIGATION.

(a)      Property Conveyed AS IS.  BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING, SELLER WILL SELL AND CONVEY TO BUYER AND BUYER WILL ACCEPT THE PROPERTY "**AS IS, WHERE IS**," WITH ALL FAULTS, AND THERE ARE NO ORAL AGREEMENTS, WARRANTIES OR REPRESENTATIONS COLLATERAL TO OR AFFECTING THE PROPERTY BY SELLER OR ANY THIRD PARTY. THE TERMS AND CONDITIONS OF THIS PARAGRAPH WILL EXPRESSLY SURVIVE THE CLOSING AND NOT MERGE THEREIN.

(b)      Property Improvements.  Buyer acknowledges that Buyer is acquiring property and improvements without any specialized equipment for grocery store operation.  Improvements will include standard HVAC, but will not include Seller's prefabricated refrigeration rooms, freezers or mechanical rooms which will be removed prior to Closing.

(c)      Investigation Period.  Buyer has inspecetd the Property and determined that the same is satisfactory to Buyer.

4.   <u>TITLE AND SURVEY MATTERS</u>.

   (a)   <u>Title Commitment</u>. Buyer has examined a title insurance commitment (the "<u>Commitment</u>") from Fidelity National Title Insurance Company (the "<u>Title Insurer</u>") committing to insure fee simple title to the Property and has determined that the same is satisfactory to Buyer.  The Title Commitment states all exceptions and conditions to such title, including, without limitation, those encumbrances created pursuant to the Credit Agreement dated as of February 23, 2005, as amended, between Seller and certain banks and financial institutions, and certain documents executed by Winn-Dixie Stores, Inc. or Seller in connection with such Credit Agreement (the "<u>Credit Agreement Liens</u>"), any other liens and encumbrances affecting the Property ("<u>Other Liens</u>"), the additional encumbrances as more fully described on the Schedule of Permitted Encumbrances attached as <u>Exhibit B</u> (the "Permitted Encumbrances"), and all other easements, restrictions, covenants, reservations, and other encumbrances (collectively, the "<u>Exceptions</u>").

   (b)   <u>Boundary Survey</u>. Buyer has examined a survey of the Property (the "<u>Survey</u>"), showing a metes and bounds legal description for the Property (the "<u>Legal Description</u>") and determined that the same is satisfactory to Buyer.

5.   <u>WARRANTIES OF SELLER AND BUYER</u>.

   (a)   <u>Seller's Warranties</u>.  Seller warrants to Buyer as follows:

      (i)   <u>Corporate Existence and Authority</u>. Seller is a Florida corporation acting in its capacity as Owner Trustee of the Dixon Realty Trust 1999-1, a Utah Trust, and its status is active. Seller has the corporate and trust power and authority to enter this Agreement and to consummate the transactions contemplated herein.

      (ii)   <u>Title to Property</u>. Seller owns fee simple title to the Property, subject to the Permitted Encumbrances and the Credit Agreement Liens.

      (iii)   <u>Power to Convey</u>. To Seller's knowledge, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Seller of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To Seller's knowledge, other than the Bankruptcy Cases, as defined in <u>paragraph 6</u> below, there is no action, suit, proceeding or investigation pending which would prevent the transactions contemplated by this Agreement or which would become a cloud on the title to the Property or any portion thereof or which questions the validity or enforceability of the transactions contemplated by this Agreement or any action taken pursuant hereto.

      (iv)   <u>Leases; Contracts</u>.  To Seller's knowledge, there are no leases or contracts of any kind or type that affect the Property, except those listed on attached <u>Exhibit C</u>.

2

(b)     Buyer's Warranties.  Buyer warrants to Seller as follows:

   (i)     Existence and Authority. Buyer, or its permitted assigns, has full power and authority to enter this Agreement and to consummate the transactions contemplated herein, and if Buyer's assign is a business entity, such entity is duly authorized, validly existing and active in the state of its formation.

   (ii)    Power to Acquire. To Buyer's knowledge, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Buyer of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To Buyer's knowledge, other than the Bankruptcy Cases, there is no action, suit, proceeding or investigation pending which would prevent the transactions contemplated by this Agreement or which questions the validity or enforceability of the transactions contemplated by this Agreement or any action taken pursuant hereto.

   (iii)   Financial Condition.  Buyer has and will have the sufficient funds on hand as of the Effective Date and continuing through the Closing Date to perform its obligations under this Agreement, including payment of the Purchase Price at Closing.

(c)     Survival of Warranties. The respective warranties of Buyer and Seller above will not survive the Closing but will merge into the Deed, and will have no further force or effect after the Closing, and the liability of Seller under or with respect to the warranties will be limited to the express remedies of Buyer set forth in this Agreement.

6.   CLOSING CONDITIONS.

(a)     Approval Condition.

   (i)     Chapter 11 Cases. Winn-Dixie Stores, Inc., a Florida corporation, and its subsidiaries, including Seller, filed voluntary petitions for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, U.S.C. §101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "Filing Date") and have operated its businesses as debtors-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date (the "Bankruptcy Cases").  By order entered on April 13, 2005, the Bankruptcy Cases were transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") where they are being jointly administered under Case No. 05-03817-3F1.

   (ii)    Competitive Bid Process. By Order dated June 20, 2005, the Bankruptcy Court approved bidding procedures and bid protections for use in the sale of assets in the Bankruptcy Cases (the "Bidding

3

Procedures"). The debtors conducted an Auction on February 8, 2006, pursuant to the Bidding Procedures (the "Auction"). Buyer submitted the successful bid for the Property (the "Successful Bidder"). The Bankruptcy Court set a date of February 9, 2006, for a hearing relating to the successful bid (the "Sale Hearing"). The Bankruptcy Court entered an order effective February ___, 2006 (the "Sale Order") approving the terms of purchase and sale offered by Buyer, and authorizing Seller to consummate the transaction contemplated hereby.

(b)    Conditions Precedent to Seller's Obligations. The obligations of Seller under this Agreement are subject to satisfaction on or before the Closing Date, or such other date as herein provided, of all conditions contained in this Agreement, including each of the following (any of which may be waived by Seller in its sole discretion, unless otherwise stated herein):

(i)    Buyer will have performed in all material respects all of its covenants contained in this Agreement which are not qualified by reference to a materiality standard; and Buyer will have performed in all respects all of its covenants contained in this Agreement which are qualified by reference to a materiality standard. All of Buyer's representations and warranties contained in this Agreement will be true and accurate in all material respects as of the Effective Date and the Closing Date.

(ii)    No order, injunction or decree issued by any applicable governmental authority or other legal restraint or prohibition preventing the consummation of the transactions contemplated by this Agreement with respect to the Property will be in effect.

If any of the foregoing conditions has not been satisfied on or before the Closing Date, then Seller will have the right to terminate this Agreement; provided, however, that if any of the foregoing conditions have not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations will be determined in accordance with paragraph 13 of this Agreement.

7.    LOSS BY FIRE OR OTHER CASUALTY; CONDEMNATION. If, prior to Seller's legal delivery of the Deed and Buyer's delivery of the Purchase Price, the Property or any material part thereof, is destroyed or materially damaged, or made the subject of a condemnation action, then Buyer will have the right, exercisable by giving notice of such decision to the other within 5 business days after receiving written notice of such damage, destruction or threatened condemnation, to terminate this Agreement, and thereafter neither of the parties will have any further rights or obligations hereunder; provided, however, that Buyer will be entitled to the return from the Escrow Agent of the Deposit. If Buyer does not exercise its right of termination and the Property is sold to Buyer pursuant to the terms of this Agreement, then as Buyer's sole remedies, Seller will assign to Buyer any assignable rights it may have to recover insurance or condemnation proceeds and will promptly pay over and deliver to Buyer any such proceeds received by it.

8.    CLOSING AND CLOSING DATE. The consummation of the transactions contemplated herein by Buyer and Seller (the "Closing") will be held on February 20, 2006 (the "Closing Date"), at a time and place mutually acceptable to the parties, but if none is

4

agreed to, at the offices of Escrow Agent in Jacksonville, Florida. Closing may be conducted by use of mail-away procedures including escrow and Closing disbursement and delivery of documents and funds administered by Escrow Agent, as Closing Agent.

9.      CLOSING DELIVERIES. On the Closing Date, Seller will execute and deliver a special warranty deed (the "Deed") to Buyer, or its designee as identified by written notice to Seller not later than ten days prior to Closing, as will be required to convey title to the Property to Buyer subject to the Permitted Encumbrances and in accordance with this Agreement. The Deed will be in form and substance reasonably satisfactory to Seller and Buyer and in proper form for recording. Additionally, on the Closing Date, Seller will execute and deliver the title affidavit as required by the Title Insurer to allow the issuance of the title insurance policy without the standard exceptions other than for taxes for the year of Closing, those standard exceptions required under the laws of the state in which the Property is located, and for specific matters disclosed by the Survey, and a non-foreign affidavit as required under the Internal Revenue Code. At Closing, Buyer and Seller will execute and deliver a closing statement setting forth the disbursement of the Purchase Price and closing costs associated with the transactions contemplated herein. On the Closing Date, Seller will turn over exclusive physical possession of the Property to Buyer upon confirmation to Seller by the Escrow Agent that Escrow Agent has received and holds the Deposit and balance of the Deposit and balance of the Purchase Price for disbursement without further condition.

10.    CLOSING COSTS. At or prior to Closing, Seller will pay the cost of documentary stamp taxes on the Deed (if required to be paid), the cost of the Survey, the cost of the commission payable to Seller's Brokers as disclosed in paragraph 12, and Seller's attorneys' fees and costs ("Seller's Closing Costs"). At or prior to Closing, Buyer will pay the cost of the title commitment and insurance policy to be issued pursuant to the Commitment in the amount of the Purchase price, the cost of its due diligence investigations of the Property, recording fees, all financing costs of Buyer incurred to purchase or develop the Property including simultaneous issue mortgagee title insurance and related endorsements, Buyer's attorneys' fees and costs and all other fees, costs and expenses incurred by the Buyer in connection herewith ("Buyer's Closing Costs"). If this transaction fails to close for any reason, and without waiving any right or remedy that either party may have against the other in the event of a default hereunder, Seller promptly will pay Seller's Closing Costs, and Buyer promptly will pay Buyer's Closing Costs.

11.    PRORATIONS. All ad valorem taxes for the year in which the Closing occurs will be prorated between Seller and Buyer as of midnight immediately preceding the Closing Date, and will be paid at Closing. The proration will be based upon the latest available tax figures with known changes (based on earliest payment discount, if any). The tax proration at Closing may be based on an estimate using the previous year's tax amount.

12.    BROKERAGE. Seller and Buyer warrant each to the other (and it is agreed that this warranty will survive delivery of the Deed) that no broker or agent has been employed with respect to the sale of the Property, other than Seller's brokers, DJM Asset Management, LLC ("Seller's Broker"), which has been retained by Seller pursuant to Order Authorizing Debtors to Retain DJM Asset Management, LLC as Special Real Estate Consultants to the Debtors, issued by the Bankruptcy Court on June 10, 2005 (the "Retention Order"). Seller will be responsible for payment of the

5

brokerage commission to Seller's Broker pursuant to the Retention Order. Each party indemnifies and agrees to hold harmless the other from any claim made by brokers or agents who claim to act for the party sought to be charged for a commission, compensation, brokerage fees, or similar payment in connection with this transaction and against any and all expense or liability arising out of any such claim.

13.    REMEDIES.

(a)    Seller's Default. In the event that Seller defaults in the performance of its obligations under this Agreement, and such default is not cured on or before the Closing Date, then Buyer will be entitled to terminate this Agreement upon written notice to Seller and Escrow Agent and obtain a refund of the Deposit.    Additionally, if Seller's default is Seller's refusal to close the transaction contemplated herein, and Buyer otherwise is ready, willing and able to close, then Buyer further will be entitled to recover from Seller Buyer's actual documented out-of-pocket expenses, including reasonable attorneys' fees and costs, incurred in negotiating this Agreement, investigating the feasibility of acquiring the Property, and preparation for closing, up to a maximum amount of $15,000.  Buyer waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided in paragraph 12 above, which indemnification will survive separately from the termination of this Agreement.

(b)    Buyer's Default. If Buyer fails to comply with or perform any of the covenants, agreements, or obligations to be performed by Buyer under the terms and provisions of this Agreement, then Seller will be entitled to terminate this Agreement upon written notice to Buyer and Escrow Agent, and the Deposit will be paid to Seller as reasonable liquidated damages. Seller waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided under paragraph 12 above, which indemnifications will survive separately from the termination of this Agreement.

14.    ESCROW AGENT.

(a)    Duties. By joining in the execution of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Escrow Agent will hold the Deposit in trust, and deposit the same into an escrow account, to be disposed of in accordance with the provisions of this Agreement.

(b)    Indemnity. Escrow Agent will not be liable to either party except for claims resulting from the negligence or willful misconduct of Escrow Agent.

(c)    Role as Counsel.  The parties acknowledge that Escrow Agent also serves as special real estate counsel to Seller.  In the event of a dispute between Seller and Buyer concerning this Agreement to the Property, Escrow Agent may continue to serve both in its capacity as counsel to Seller and in its capacity as Escrow Agent, it being understood that Escrow Agent's duties and obligations as Escrow Agent are purely ministerial in nature.

6

(d)     <u>Withdrawal</u>. No party will have the right to withdraw any monies or documents deposited by it with Escrow Agent prior to the Closing or termination of this Agreement except in accordance with the terms of this Agreement.

(e)     <u>Written Objection</u>. If a written objection is filed with Escrow Agent, or Escrow Agent otherwise is in doubt as to its duties, Escrow Agent may continue to hold the funds in escrow until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court having jurisdiction of the dispute or the Escrow Agent may interplead the same in the Circuit Court and be relieved of any and all liability therefor. In any action or proceeding regarding the Deposit brought by Escrow Agent or to which Escrow Agent is made a party Escrow Agent will be entitled to recover its reasonable costs and attorney's fees (through appeal).

15.   <u>NOTICES</u>. All notices, demands, requests and other communications hereunder will be in writing and will be deemed to have been given (i) on the same business day if delivered personally, (ii) 3 business days following mailing by registered or certified mail, return receipt requested, postage prepaid, or (iii) on the same business day if sent by telefax, to Buyer, Seller or Escrow Agent at its respective address set forth below:

| | |
|---|---|
| If to Seller: | Winn-Dixie Stores, Inc., as Owner Trustee<br>Dixon Realty Trust 1999-1<br>5050 Edgewood Court<br>Jacksonville, Florida  32254<br>Attention: Catherine Ibold<br>Telefax No.: 904 783 5138 |
| with a copy to: | Smith, Gambrell & Russell, LLP<br>50 N. Laura Street, Suite 2600<br>Jacksonville, Florida  32202<br>Attention: Douglas G. Stanford<br>Telefax No.: 904 598 6226 |
| If to Buyer: | AHG Group, LLC<br>875 Concourse Parkway S.<br>Suite 150<br>Maitland, Florida  32751<br>Attention: Alan Ginsburg<br>Telefax No.: 407 691 5631 |
| If to Escrow Agent: | Smith, Gambrell & Russell, LLP<br>50 N. Laura Street, Suite 2600<br>Jacksonville, Florida  32202<br>Attention: Douglas G. Stanford<br>Telefax No.: 904 598 6226 |

or at such other address as the party may specify from time to time by written notice to the other party.

7

16.    <u>MISCELLANEOUS PROVISIONS</u>.

(a)    <u>Successors And Assigns; Assignment Of Agreement</u>. All terms of this Agreement will be binding upon, and will inure to the benefit of and be enforceable by the parties hereto and their respective legal representatives, heirs, successors and assigns. Except as set forth below, this Agreement may not be assigned by either party without the express written consent of the other. Buyer may assign its rights and obligations under this Agreement to an Affiliate as the "Buyer" hereunder, provided, however, that Buyer shall remain fully liable for performance of the obligations, including indemnifications, of the "Buyer" hereunder. For purposes of the foregoing, "Affiliate" will mean a Person that (either directly or indirectly, through one or more intermediaries) controls, is in common control with or is controlled by, another Person, and any Person that is a director, trustee, officer, employee, agent, partner, shareholder, subsidiary or attorney of any of the foregoing, and will include, without limitation, any limited liability company, partnership or corporation directly or indirectly controlled by, or in common control with, Buyer or Seller.

(b)    <u>Governing Law</u>. This Agreement will be governed and construed in accordance with the laws of the State of Florida. Any dispute arising out of or under this Agreement will be litigated in the Bankruptcy Court.

(c)    <u>Captions</u>. The captions of this Agreement are inserted for convenience or reference only and not to define, describe or limit the scope or the intent of this Agreement or any term hereof.

(d)    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which will be deemed to be an original but all of which together will constitute one and the same instrument.

(e)    <u>Changes And Modifications; Prior Agreements</u>. This Agreement may not be orally changed, modified or terminated; it supersedes any and all prior understandings and/or letter agreements; other matters of similar nature will be deemed to be of no force or effect in the interpretation of this Agreement, it being intended that this Agreement represents the entire understanding of the parties. No waiver of any provision hereof will be valid unless in writing and signed by a party against whom it is to be enforced.

(f)    <u>Waiver</u>. No failure of either party to exercise any power given hereunder or to insist upon strict compliance with any obligations specified herein, and no custom or practice at variance with the terms hereof, will constitute a waiver of any party's right to demand exact compliance with the terms hereof; provided, however, that any party may, at its sole option, waive any requirement, covenant or condition herein established for the benefit of such party without affecting any of the other provisions of this Agreement.

(g)    <u>Further Assurances</u>. Seller and Buyer each agree to execute and deliver to the other such further documents and instruments as may be reasonable and necessary in furtherance of and to effectuate the intent of the parties as expressed by the terms and conditions hereof.

8

(h)     Attorneys' Fees.  If either party commences an action against the other to enforce any of the terms hereof or because of the breach by either party of any of the covenants, terms or conditions hereof, the losing or defaulting party will pay to the prevailing party reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution and defense of such action.

(i)     Time Of Essence.  Time is of the essence of each party's performance of this Agreement.

(j)     Business Day.   Whenever a date specified herein shall fall on a Saturday, Sunday or legal holiday, the date shall be extended to the next succeeding Business Day.   For purposes of the foregoing, "Business Day" will mean any day, other than a Saturday, Sunday or legal holiday.

(k)     WAIVER OF TRIAL BY JURY.  BUYER AND SELLER EACH AGREE THAT THE NATURE OF THIS AGREEMENT MAKES A JURY DETERMINATION OF ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR THE PROPERTY UNDESIRABLE. ACCORDINGLY, BUYER AND SELLER EACH SPECIFICALLY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT EITHER OF THEM MAY HAVE IN ANY COURT WITH RESPECT TO ANY ACTION RELATING TO THIS AGREEMENT OR THE PROPERTY. THE FOREGOING WAIVER IS MADE KNOWINGLY, VOLUNTARILY AND INTENTIONALLY BY BOTH BUYER AND SELLER.

(l)     CONSENT TO JURISDICTION OF BANKRUPTCY COURT. THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in paragraph 15 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.   Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

(m)    Radon Gas.  Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time.  Levels of radon that exceed federal and state guidelines have been found in buildings in Florida.   Additional information regarding radon and radon testing may be obtained from your county health department.

Real Estate Purchase Agreement – Store #2375 – Oviedo, Florida
Winn-Dixie Stores, Inc. S/T AHG Group, LLC
February 8, 2006
SGRJAX\80526.1

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement as of the Effective Date.

**SELLER:**

Signed, sealed and delivered
In the presence of:

**WINN-DIXIE STORES, INC.,** a Florida corporation as Owner Trustee of the Dixon Realty Trust 1999-1, a Utah trust

_____

Name: _____

By: _____

Name: _____

Title: Senior Vice President

_____

Name: _____

[Corporate Seal]

**BUYER:**

Signed, sealed and delivered
In the presence of:

**AHG GROUP, LLC,** a Florida limited liability company

_____

Name: _____

By: _____

Name: _____

Title: _____

_____

Name: _____

[Seal]

SCHEDULE OF EXHIBITS:

Exhibit A - Legal Description of Property
Exhibit B - Schedule of Permitted Encumbrances
Exhibit C – Schedule of Leases and Contracts

10

The undersigned, Escrow Agent, hereby consents and joins in the execution of this Real Estate Purchase Agreement for the limited purposes stated herein.

**SMITH, GAMBRELL & RUSSELL, LLP**


By: _____
Name: Douglas G. Stanford
Title: Partner

Dated: February ____, 2006

## **EXHIBIT A**

LEGAL DESCRIPTION OF PROPERTY

Lot 2, Carillon – Parcel 202 according to the plat thereof as recorded in Plat Book 53, Pages 27 and 28, of the Public Records of Seminole County, Florida.

Together with Easement benefitting the property contained in that certain Declaration of Easements and Restrictive Covenants recorded August 13, 1998 in Official Records Book 3480, Page 313, of the Public Records of Seminole County, Florida.

**EXHIBIT B**

SCHEDULE OF PERMITTED ENCUMBRANCES

1.  The lien of the taxes for the year 2006 and all subsequent years, which are not yet due and payable.

2.  Provisions of the Plat of Carillon Parcel 202, recorded in Plat Book 53, Pages 27 and 28, inclusive of the Public Records of Orange County, Florida.

3.  Resolution by the Board of Seminole County Commissioners recorded May 25, 1979, in O.R. Book 1225, Page 1277, of the Public Records of Seminole County, Florida.

4.  Terms and conditions of the Agreement between Paul L. Vines, Jr. and Firstdev Three, a Florida joint venture, recorded in O.R. Book 2059, Page 725, of the Public Records of Seminole County, Florida.

5.  Conservation Easement granted to State of Florida Department of Environmental Regulation, according to instrument recorded in O.R. Book 2069, Page 1828, of the Public Records of Seminole County, Florida.

6.  Terms and conditions of the Affidavit of Corporate Identity/Authority by Joseph J. Gardner recorded in O.R. Book 2087, Page 1078, of the Public Records of Seminole County, Florida.

7.  Terms and conditions of the Affidavit of Corporate Identity/Authority by Joseph J. Gardner recorded in O.R. Book 2087, Page 1188, of the Public Records of Seminole County, Florida.

8.  Bill of Sale, recorded December 4, 1990, in O.R. Book 2245, Page 577, of the Public Records of Seminole County, Florida.

9.  Terms and conditions of the Cross Access Agreement and Grant of Easement between Firstdev Three, a Florida joint venture and Seminole County, Florida, recorded in O.R. Book 3440, Page 1872, of the Public Records of Seminole County, Florida.

10.  Declaration of Easements and Restrictive Covenants, which contains provisions for a rivate charge or assessments, recorded in  O.R. Book 3480, Page 313, of the Public Records of Seminole County, Florida, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

11.  Terms and Conditions of the Conditional Utility Agreement for Water Service between Seminole County, Florida and Sunbelt-Dix, Inc., a Delaware corporation, recorded in O.R. Book 3525, Page 1191, as affected by Notice of Satisfaction of Connection Fees Relating to Utility Agreement, recorded in O.R. Book 3654, Page 1222, both of the Public Records of Seminole County, Florida.

12.    Terms and conditions of the Conditional Utility Agreement for Sewer Service between Seminole County, Florida and Sunbelt-Dix, Inc., a Delaware corporation recorded in O.R. Book 3525, Page 1228, of the Public Records of Seminole County, Florida.

13.    Ordinance No. 98-57, (Re: Street Lighting), recorded December 24, 1998, in O.R. Book 3560, Page 755; as amended in O.R. Book 3784, Page 18, both of the Public Records of Seminole County, Florida.

14.    Distribution Easement granted to Florida Power Corporation, a Florida corporation, according to instrument recorded in O.R. Book 3780, Page 208, of the Public Records of Seminole County, Florida.

**<u>EXHIBIT C</u>**

SCHEDULE OF LEASES AND CONTRACTS

1.     Agreement for services between Winn-Dixie Stores, Inc. and All Clean Sweeping Services, dated March 31, 2004, and cancelable upon 30 days written notice.

2.     Agreement for services between Winn-Dixie Stores, Inc. and Hinton Enterprises, dated June 5, 2001, and cancelable upon 30 days written notice.