Hearing Date: March 9, 2006
Objection Deadline:
March 1, 2006 at 4:00 p.m. (E.T.)

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors.[1] | ) | Jointly Administered |

## MOTION FOR AN ORDER (A) AUTHORIZING THE DEBTORS TO SELL THE MCCOMB PROPERTY AND RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS, AND (B) GRANTING RELATED RELIEF

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 6004(g): (a) authorizing Winn-Dixie Montgomery, Inc., a Florida corporation, ("WD Montgomery") to sell its closed fuel center (Number 1378) and underlying tract of land located in McComb, Mississippi, as more particularly described on Exhibit A attached to this Motion, (collectively, the "McComb Property") and related personal property to CPM Associates, L.P. ("CPM") (the "Purchaser") or to a party submitting a higher or better offer, free and clear of liens, claims and

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

interests and (b) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

## Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  As of the Petition Date, the Debtors were considered the eighth-largest food retailer in the United States and one of the largest in the Southeast with more than 900 stores.

4.      The Debtors have engaged in a footprint reduction resulting in the sale or closure of 326 stores and related facilities.

2

5.      Prior to the Petition Date, the Debtors operated the McComb Property as a fuel center adjacent to a Winn-Dixie grocery store (Store No. 1337) which the Debtors leased from CPM (the "McComb Store Lease"). As part of the Debtors' footprint reduction, the Debtors have rejected the McComb Store Lease and exited the Mississippi market. As such, the Debtors no longer need the McComb Property and its sale will bring cash into the Debtors' estates.

6.      The Debtors have marketed the McComb Property extensively through DJM Asset Management, Inc. ("DJM"). DJM sent over 10,000 sale notices of sale to potential purchasers. Through DJM's efforts, the Debtors received one offer for the McComb Property, the offer by CPM for $100,000, plus a waiver of any rejection claims CPM may have against the Debtors for the rejection of the McComb Store Lease. After reviewing all offers, including all terms of all offers, the Debtors have determined that CPM's offer is the highest or best offer for the McComb Property.

## Relief Requested

7.      By this Motion, the Debtors request authority to sell WD Montgomery's fee simple title interest in the McComb Property and personal property located at the premises, together with all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments (collectively, the "Assets"), free and clear of liens, claims and interests, subject to higher or better

offers. The Assets are more fully described in the Real Estate Purchase Agreement (defined below).

### The Real Estate Purchase Agreement

8.    On December 16, 2005, WD Montgomery and the Purchaser entered into the Real Estate Purchase Agreement attached to this Motion as Exhibit A. The Real Estate Purchase Agreement together with the four amendments to the Real Estate Purchase Agreement are collectively, the "Purchase Agreement".

9.    A summary of the material terms of the transaction with CPM, subject to this Court's approval, are as follows:[2]

(a)    Assets. The assets to be sold and transferred to the Purchaser include:

(i)    WD Montgomery's fee simple title interest in the McComb Property and all of the improvements on the property;

(ii)    WD Montgomery's interest in all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments; and

(iii)    WD Montgomery's interest in personal property located at the fuel center as described on Exhibit B to the Purchase Agreement.

(b)    Purchase Price. On the terms and subject to the conditions set forth in the Purchase Agreement, the net aggregate purchase price for the Assets is $100,000, plus a waiver of any rejection damage claims CPM may have against the Debtors under the McComb Store Lease (the "Purchase Price"). The Purchaser has paid $5,000 in escrow as an earnest money deposit. At Closing, the total Deposit will be delivered to the

---

[2]    This summary of the Purchase Agreement is provided as a convenience only. To the extent that this summary differs in any way from the terms of the Purchase Agreement, the terms of the Purchase Agreement control.

Closing Agent and the unpaid balance of the Purchase Price will be due and payable by wire transfer or cashier's check.

(c)     Sale Free and Clear. The Purchase Agreement provides that the Assets are to be transferred free and clear of any liens, claims, interests and encumbrances, other than the liens for taxes for the year 2006 and subsequent years (the "Permitted Encumbrances").

(d)     Overbid Protection. Pursuant to the Order Establishing Bidding for the Sale of Assets, dated June 20, 2005, the initial minimum overbid that may be accepted by the Debtors at any auction must have a value of at least $103,000.

10.     The Debtors now move for authority to consummate the sale of the Assets with CPM or, alternatively, to the party submitting a higher or better offer for the Assets.

## Solicitation of Higher and Better Offers

11.     Notwithstanding that the Assets have been sufficiently marketed, the Debtors are soliciting higher and better bids for the Assets. Any person or entity interested in submitting a higher and better bid for the Assets must submit such bid so that it is received by James Avallone at DJM, 445 Broadhollow Road, Suite 417, Melville, NY 11747 with a copy to undersigned counsel for the Debtors no later than 12:00 p.m. (prevailing Eastern Time) on March 2, 2006. All bids must comply with the bidding procedures approved by order of the Bankruptcy Court dated June 21, 2005 (Docket No. 1801). To qualify as a competing bid, the offer must net the Debtors' estates at least $150,000 and be accompanied by a certified check made out to Winn-Dixie Stores, Inc. in an amount equal to 10% of the competing bid. The required deposit must be sent to undersigned counsel.

5

12.    If the Debtors receive a higher or better offer for the Assets, they will conduct an auction (the "Auction") for the Assets in accordance with the Bidding Procedures Order. The Auction will take place at 10:00 a.m. (prevailing Eastern Time) at the offices of Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida on March 8, 2006 (the "Auction Date"). The Debtors will conduct the Auction in consultation with the Creditors' Committee and the DIP Lender and on terms the Debtors determine to be in the best interests of their estates and their creditors.

**Applicable Authority**

A.    Bankruptcy Code Section 363(b) Authorizes the Sale

13.    Bankruptcy Code section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 1107 (a) gives the Debtors, as debtors-in-possession, the same authority as a trustee to use, sell or lease property under section 363(b)(1). *See* 11 U.S.C. § 1107(a).

14.    A debtor's sale under section 363(b)(1) should be approved when supported by a sound business reason. *See In re B.D.K. Health Mgmt., Inc.* ("B.D.K. Health Mgmt."), Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); *see also Official Comm. of Unsecured*

6

*Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.),*
973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a § 363(b)
application must find from the evidence presented before him a good business
reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp.
(In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *Fulton State
Bank v. Schipper (In re Schipper),* 933 F.2d 513, 515 (7th Cir. 1991); *Stephens
Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a
bankruptcy court can authorize a sale of all a chapter 11 debtor's assets under
§ 363(b)(1) when a sound business purpose dictates such action"); *In re Del. &
Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D. Del. 1991).

15.     Once a court is satisfied that a sound business reason for the sale
exists, the Court must also consider whether (a) the sale price is fair and
reasonable, (b) the purchaser is proceeding in good faith, and (c) the Debtor has
provided interested parties with adequate and reasonable notice. *Delaware &
Hudson,* 124 B.R. at 175-176.

16.     The Debtors have a sound business reason for the sale of the Assets.
The McComb Property is located adjacent to a store formerly leased by the
Debtors in a market that the Debtors have exited.   By selling the McComb
Property, the Debtors will bring at least $100,000 into the Debtors' estates.

17.     WD Montgomery's sale of the Assets to the Purchaser is subject to
competing bids, ensuring that the Debtors will receive the highest or best value for

the Assets.   Thus, the fairness and reasonableness of the consideration to be received for the Assets ultimately will be demonstrated by a "market check" and auction process -- the best means for establishing whether a fair and reasonable price is being paid.

18.    If required, the Debtors are prepared to present further evidence of good faith during the course of the Sale Hearing that the Debtors believe will satisfy this Court and the mandates of Bankruptcy Code section 363(m).

19.    In accordance with Local Rule 2002-1, the Debtors will serve notice of the Motion on the following parties: (a) each taxing authority known to the Debtors to have a potential interest in the Assets, (b) all parties that expressed interest in purchasing the Assets; (c) the Purchaser; (d) counsel for the DIP Lenders; (e) counsel for the Creditors' Committee; (f) counsel for the Equity Committee; (g) all known holders of Interests and Claims (as defined below) in the Assets; (h) all entities having requested notices pursuant to Fed. R. Bankr. P. 2002; and (i) the Office of United States Trustee.

B.    Bankruptcy Code Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims

20.    The Debtors request that this sale of Assets be approved free and clear of any liens, claims or interests. Pursuant to Bankruptcy Code section 363(f), a debtor may sell property of the estate free and clear of all liens, claims and interests after notice and hearing. *See In re Parrish*, 171 B.R. 138 (Bankr. M. D. Fla. 1994).

21.    The Debtors believe that with the exception of the Permitted Encumbrances, there are no interests in or claims against the Assets other than the interest of Wachovia Bank, National Association, as Administrative Agent and Collateral Agent (collectively, the "DIP Lender"). The interest of the DIP Lender will be satisfied because the Debtors will cause the proceeds from the sale to be paid in accordance with the terms of the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-petition Secured Lenders dated March 23, 2005 (Docket No. 501) (the "Final Financing Order") and the Loan Documents (as defined in the Final Financing Order).

C.    Good Faith Purchaser

22.    The Debtors request that the Court find that the Purchaser, or the party who ultimately submits the highest or best offer for the Assets, acted in good faith within the meaning of Bankruptcy Code section 363(m).

23.    Bankruptcy Code section 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith,

9

whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m)

24.     The Bankruptcy Code does not define the term "good faith." Courts, however, indicate that a party would have to show fraud or collusion between the purchaser and the debtor-in-possession or trustee in order to demonstrate a lack of good faith.

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

> *In re Apex Oil Co.*, 2 B.R. 847, 865
> (Bankr. E.D. Mo. 1988)

*Accord Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997). No such facts exist here.

25.     The Debtors assert that: (a) the proposed sale is the subject of arm's length negotiations with the Purchaser and is made in good faith; (b) the Purchaser has no affiliation with the Debtors; (c) the Assets were marketed extensively and the purchase price is fair and reasonable; (d) to the best of the Debtors' knowledge, the Purchaser has taken no action to chill or otherwise collude with any other party to restrict bidding on the Assets; and (e) the marketing process that occurred and the notice of the Sale Hearing ensure that the Purchaser has not exerted undue

influence over the Debtors.  Accordingly, the Debtors request that the Court find that the Purchaser, or the party submitting a higher or better offer, acted in good faith within the meaning of Bankruptcy Code section 363(m).  *See B.D.K. Health Mgmt.*, 1998 WL, at *4 (finding that the purchaser is entitled to the protections of Bankruptcy Code section 363(m) because the sale was negotiated at arms-length, proposed in good faith and the consideration for the assets was fair and reasonable).  The Debtors' proposed sale of the Assets is the product of arm's length negotiations with the Purchaser and was made in good faith.  The Purchaser has no affiliation with the Debtors, and the ability of third parties to make higher or better bids ensures that the Purchaser has not exerted any undue influence over the Debtors.

D.    Elimination of 10-Day Stay Under Rules 6004(g)

26.    Pursuant to Rule 6004(g), F.R. Bankr. P., unless the Court orders otherwise, all orders authorizing the sale of property outside of the ordinary course of business pursuant to Bankruptcy Code section 363 are automatically stayed for ten days after entry of the order.  Given the requirements of the Purchase Agreement and the need to close the sale as promptly as possible, the Debtors request that the Court waive the 10-day stay period.

E.      Objection Deadline

27.    Only objections filed and served on Sally McDonald Henry at

shenry@skadden.com, Skadden, Arps, Slate, Meagher, & Flom, LLP, Four Times

Square, New York, New York 10036 and on Cynthia C. Jackson at

cjackson@smithhulsey.com, Smith Hulsey & Busey, 225 Water Street, Suite 1800,

Jacksonville, Florida 32202 so as to be received by March 1, 2006 at 4:00 p.m.

(E.T.) will be considered by the Bankruptcy Court at the Hearing.

## Conclusion

For the foregoing reasons, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit B (a) granting the Motion and authorizing the sale of the Assets to the Purchaser in accordance with the Purchase Agreement, or to the party submitting a higher or otherwise better offer for the Assets; (b) authorizing the Debtors to take all actions reasonably necessary to effectuate the sale of the Assets in accordance with the Purchase Agreement; and (c) granting such other and further relief as the Court deems just and proper.

Dated: February 17, 2006

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By   /s/ D. J. Baker                          By   /s/ Cynthia C. Jackson
    D. J. Baker                                  Stephen D. Busey
    Sally McDonald Henry                         James H. Post
    Rosalie W. Gray                              Cynthia C. Jackson  (F.B.N. 498882)

Four Times Square                          225 Water Street, Suite 1800
New York, New York 10036                   Jacksonville, Florida  32202
(212) 735-3000                             (904) 359-7700
(212) 735-2000 (facsimile)                 (904) 359-7708 (facsimile)
djbaker@skadden.com                        cjackson@smithhulsey.com

Co-Counsel for Debtors                     Co-Counsel for Debtors

00522219.DOC

13

# **EXHIBIT A**

## REAL ESTATE PURCHASE AGREEMENT

**SELLER:**  **WINN-DIXIE MONTGOMERY, INC.,** a Florida corporation
5050 Edgewood Court
Jacksonville, Florida 32254
Attention: Catherine Ibold

**BUYER:**  **CPM ASSOCIATES, L.P.,** a Tennessee limited partnership
537 Market Street
Suite 400
Chattanooga, Tennessee 37402
Attention: *Fletcher Bright*

**PROPERTY:**  Real Property, as more particularly described on attached Exhibit A, and related Improvements; together with personal property, as more particularly described on attached Exhibit B (collectively, the "Assets") located at 1209 Delaware Avenue, McComb, Mississippi.

**PURCHASE PRICE:**  $100,000.00

**CONTRACT DATE:**  December 16 2005

**REVIEW DATE:**  December 29, 2005

**CLOSING DATE:**  January 30, 2006

**ESCROW/CLOSING AGENT:**  Smith, Gambrell & Russell, LLP
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Attention: Douglas G. Stanford

**BROKER:**  DJM Asset Management, LLC

---

**IN CONSIDERATION OF** the mutual covenants and agreements of Buyer and Seller contained in this Agreement, the undersigned Buyer and Seller agree as follows:

1.  **Definitions.** Unless otherwise defined below, capitalized terms used in this Agreement will have the meanings given to such terms above.

2.  **Buy/Sell Agreement.** Seller agrees to sell and Buyer agrees to buy the Property for the Purchase Price on the Closing Date subject to and in accordance with this Agreement. Conveyance of the Property constituting real property will be by special warranty deed free and clear of any interests, liens, mortgages, judgments, taxes or other encumbrances other than the lien for taxes for the year 2006 and subsequent years, and subject only to covenants, easements, restrictions and reservations of record acceptable to Buyer (the "Deed"). Conveyance of the Property constituting personal property as described on attached Exhibit B will be by bill of sale (the "Bill of Sale") substantially in form and substance as set forth in attached Exhibit C, free and

clear of all interests, liens, claims or encumbrances. Upon conveyance of the Property as provided herein, and as further consideration in addition to the Purchase Price, Buyer agrees to waive any claim for damages associated with the rejection by Seller of that certain lease of commercial real estate by and between Buyer and Seller relating to store number 1337 located in McComb, Mississippi.

3.    **Property**. The Property consists of the Real Property described above, together with all improvements, easements, rights of way, licenses, privileges, hereditaments, and appurtenances, if any, inuring to the benefit of such land, and all Assets located thereon.

4.    **Earnest Money**. Within 3 business days after the Contract Date, Buyer will deposit $5,000 in escrow with Escrow Agent as Buyer's earnest money deposit (the "Deposit"). Upon receipt of the Deposit, Escrow Agent will place the Deposit in an escrow account, to be disbursed in accordance with the requirements of this Agreement.

5.    **Property Condition: Buyer's Right to Inspect**.  Buyer acknowledges and agrees that upon closing, Seller will sell and convey to Buyer and Buyer will accept the Property "as is, where is", with all faults, and there are no oral agreements, express or implied warranties or representations collateral to or affecting the Property by Seller or any third party except for Seller's warranties under the Deed. Buyer agrees to accept the transfer and conveyance of the Property by Seller without any warranty or representation concerning the quantity, quality, or condition of the Property, the availability of water, sewer, utilities or necessary governmental authorizations, or any other matter not expressed in this Agreement. Buyer must satisfy itself that legal title to the Property, the physical condition of the Property, and Buyer's ability to use the Property for its intended purposes are acceptable to Buyer. For this reason, Buyer will have until the Closing Date to enter onto the Property and inspect the Property and to investigate the Property, at Buyer's own expense. Such inspections and investigations may include, but are not limited to:

(a)    a title insurance commitment and policy to be issued thereunder (to be obtained by Buyer within 10 days after the Contract Date) satisfactory to Buyer in its sole discretion;

(b)    a boundary map or survey (to be obtained by Buyer within 10 days after the Contract Date) satisfactory to Buyer in its sole discretion;

(c)    a report of the physical condition of the Property relating to hazardous waste or environmental contamination satisfactory to Buyer in its sole discretion;

(d)    a report of the physical condition of the Property relating to soil and rock formations and quality underlying the surface of the Property satisfactory to Buyer in its sole discretion;

(e)    confirmation of the current zoning of the Property and any land use restrictions affecting the Property satisfactory to Buyer in its sole discretion;

(f)    a report of the wetlands and/or protected animals and plants on the Property satisfactory to Buyer in its sole discretion; and

2

(g)    such other studies, investigations, and reports as Buyer may find necessary or advisable.

Buyer's Investigations will be at Buyer's expense.  Buyer indemnifies and agrees to defend and hold harmless Seller from and against any loss, damages or liability related to physical damage of the property or injury to any person arising out of Buyer's investigation of the Property, including reasonable attorney's fees.  Buyer further Indemnifies and agrees to defend and hold harmless Seller from and against all claims or liens against Seller or the Property filed by contractors, materialmen or laborers performing work and tests for Buyer. If Buyer finds that legal title to the Property, the physical condition of the Property, or Buyer's ability to use the Property for its intended purposes is unacceptable in Buyer's sole discretion, then Buyer may terminate this Agreement by written notice given to Seller not later than the Review Date. After such notice, this Agreement and Buyer's obligation to buy the Property and Seller's obligation to sell the Property will be terminated, and Escrow Agent will return the Deposit to Buyer.  If Buyer does not terminate this Agreement by the Review Date, then Buyer will be considered to have elected to proceed with the acquisition of the Property, and the Deposit will be non-refundable to Buyer except as provided in this Agreement.

If Buyer decides that it wants to proceed with the purchase of the Property, but finds defects in the legal title to the Property, Buyer may notify Seller of such problems on or before the Review Date, and Seller will cooperate with Buyer in attempting to solve such defects to Buyer's satisfaction, but Seller will have no obligation to cure the same except for Monetary Liens, as described below.  If the time needed to solve such defects goes beyond the Review Date, then at Buyer's election, Seller will have until the Closing Date in which to cure such defects.  In such case, Buyer will have the right to terminate this Agreement by written notice to Seller given on or before the Closing Date if Seller is not willing or able to solve such defects, and Escrow Agent will refund the Deposit to Buyer.  However, Seller is obligated to pay off and remove any liens, mortgages, judgments, taxes or other money items (the "Monetary Liens") from the Property so that Seller can convey good title on the Closing Date.

6.    **Closing Conditions.**

(a)    **Chapter 11 Cases.**    Winn-Dixie Stores, Inc. and certain of its affiliated companies, including Seller, filed voluntary petitions for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, U.S.C. §101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "Filing Date") and have operated its businesses as debtors-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date (the "Bankruptcy Cases"). By order entered on April 13, 2005, the Bankruptcy Cases were transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") where they are being jointly administered under Case No. 05-03817-3F1.

(b)    **Competitive Bid Process.**  By Order dated June 20, 2005, the Bankruptcy Court approved bidding procedures and bid protections for use in the sale of assets in the Bankruptcy Cases (the "Bidding Procedures").  This Agreement is subject to

3

the competitive bid process described in the Bidding Procedures. Promptly following the Review Date, Seller will file a motion with the Bankruptcy Court and duly serve the parties in interest. Seller will seek approval from the Bankruptcy Court of the transactions contemplated by this Agreement, subject to higher or better offers, and the transfer of the Property free and clear of all claims, liens, interests and encumbrances, including the Monetary Liens, other than Permitted Encumbrances, pursuant, inter alia, to 11 U.S.C. Sections 105, 363 and 1146(c) (the "Sale Motion"). The Bankruptcy Court will set a date for hearing on the Sale Motion and to consider entry of the Sale Order relating to the successful bid (the "Sale Hearing"). Seller will afford Buyer a reasonable opportunity to review the proposed Sale Order (as hereinafter defined) prior to filing same with the Bankruptcy Court, however, Seller is not obligated to accept or incorporate into the Sale Order any comments that Buyer may provide to Seller. Prior to the Sale Hearing, the debtors will conduct an auction pursuant to the Bidding Procedures (the "Auction"). Buyer may participate in the Auction, and may submit purchase terms different from those set forth in this Agreement as Buyer may deem appropriate in seeking to become the successful bidder. Prior to the Sale Hearing, upon consultation with the Creditors' Committee and DIP Lender, Seller will select the highest or otherwise best offer to purchase the Property, as determined by Seller in its sole discretion in accordance with the Bidding Procedures, as the Successful Bid (as defined in the Bidding Procedures), subject to the Overbid Protection as set forth in subparagraph (c) below. Seller will submit the Successful Bid to the Bankruptcy Court at the Sale Hearing, for entry of a Sale Order with respect to the Property by the Bankruptcy Court, either (a) approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, if Buyer is the Successful Bidder under the terms of this Agreement (or as modified during the Auction) or (b) approving the more favorable terms of purchase and sale offered by the Successful Bidder, whether Buyer or otherwise (the "Sale Order").

(c)     Overbid Protection. Seller agrees, subject to Bankruptcy Court approval, that the initial minimum overbid that may be accepted by Seller in the competitive bid process will have a value of at least $103,000 (three percent (3%) higher than the Purchase Price).

(d)     Sale Order Approving Agreement. It will be a condition to the Closing of the transaction contemplated by this Agreement that the Bankruptcy Court will have issued the Sale Order approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, and such Sale Order either will have become final and non-appealable, or the Sale Order will contain a waiver of the stay set forth in Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Approval Condition").

(e)     Continuing Effectiveness of Agreement. Notwithstanding that Buyer may not be the successful bidder following the Bidding Procedures, this Agreement, as modified by Buyer's last bid made during the Bidding Procedures, will remain in effect in accordance with, and will remain subject to, the Bidding Procedures. If the Approval Condition is not otherwise satisfied by January 31, 2006 (the "Outside Date") through no fault of Buyer, or if the sale of the Property closes

4

with another successful bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other.

7.    **Closing.** Conveyance of the Property from Seller to Buyer and the payment of the Purchase Price from Buyer to Seller (the "Closing") will occur on the Closing Date by mail-away procedures coordinated by Escrow Agent, effective as of a time acceptable to Buyer and Seller. At the Closing, Buyer will deliver the Purchase Price plus Buyer's closing costs to Escrow Agent by wire transfer or cashier's check made payable to Escrow Agent for subsequent delivery to Seller, net of Seller's closing costs, and Seller will sign and deliver the Deed, Bill of Sale and possession of the Property to Buyer. On the Closing Date, Seller also will sign and deliver an affidavit prepared by the title insurance company asking Seller to confirm, among other things, (a) the legal title to the Property, (b) Seller's exclusive possession of the Property, and (c) that Seller is not a foreign person for purposes of the Internal Revenue Service's code and regulations. If Seller is a foreign person, then Buyer will be required to withhold a portion of the Purchase Price to pay taxes.   Buyer and Seller will execute and deliver such other documents and instruments as reasonably may be necessary to consummate the transactions described in this Agreement on the Closing Date.   Closing Agent is responsible for recording the Deed.

8.    **Closing Costs; Prorations.** At Closing, Seller will be responsible for paying its own attorney's fees and costs, payoff of any Monetary Lien, the cost of recording any release of Monetary Liens, and Seller's Brokerage Commissions, as hereinafter defined. At Closing, Buyer will be responsible for paying the costs of Buyer's investigation of the Property (including the cost of all items described in paragraph 5 above), transfer tax on the Deed (if required to be paid), the cost of recording the Deed, Buyer's own attorneys' fees and costs, and any fees and costs relating to Buyer's financing, if any.

Responsibility for paying property taxes for the year of closing will be prorated between Seller and Buyer, with Seller responsible for taxes accruing prior to the Closing Date, and Buyer responsible for taxes accruing after the Closing Date.  Buyer may elect to pay all the taxes when they become due, and the amount of the taxes that Seller is obligated to pay will be subtracted from the Purchase Price on the Closing Date.  If Seller has already paid all the taxes for the year, then the amount of the taxes that Buyer is obligated to pay will be added to the Purchase Price on the Closing Date.

9.    **Loss By Fire or Other Casualty; Condemnation.** If, prior to Seller's legal delivery of the Deed and Buyer's delivery of the Purchase Price, the Property or any material part thereof, is destroyed or materially damaged, or made the subject of a condemnation action, then either party will have the right, exercisable by giving notice of such decision to the other within 5 business days after receiving written notice of such damage, destruction or threatened condemnation, to terminate this Agreement, and thereafter neither of the parties will have any further rights or obligations hereunder; provided, however, that Buyer will be entitled to the Deposit. If neither party exercises its right of termination, Buyer will purchase the Property pursuant to the terms of this Agreement, and then as Buyer's sole remedy, Seller will assign to Buyer any assignable rights it may have to recover insurance or condemnation proceeds and will promptly pay over and deliver to Buyer any such proceeds Seller receives.

5

10. **Seller's Representations to Buyer.** Seller represents to Buyer that:

    (a)    Seller owns fee simple title to the Property and has the power and authority to sign this Agreement with Buyer and to convey the Property to Buyer as required under this Agreement.

    (b)    Seller is a corporation duly organized and validly existing under Florida law, and its status is active.

    (c)    To Seller's knowledge, and subject to satisfaction of the Approval Condition, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Seller of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority.

Seller's representations must be true on the Contract Date and remain true on the Closing Date, and Seller will be liable to Buyer for any misstatement of such representations discovered either before or after the Closing.

11. **Seller's Other Obligations.** Between the Contract Date and the Closing Date, Seller will:

    (a)    allow Buyer and its agents full access to the Property for purposes of inspecting the Property;

    (b)    not convey any interest, including a lease or tenancy, in the Property to any person other than Buyer; and

    (c)    notify Buyer promptly if Seller becomes aware of any fact that would cause any of Seller's representations made in paragraph 10 above to be untrue or misleading.

12. **Default and Remedies.** If Seller defaults in the performance of its obligations under this Agreement, and such default is not cured on or before the Closing Date, Buyer will be entitled to terminate this Agreement upon written notice to Seller and Escrow Agent and obtain a refund of the Deposit. Additionally, following satisfaction of the Approval Condition, if Seller's default is Seller's refusal to close the transaction contemplated herein, and Buyer otherwise is ready, willing and able to close, then Buyer further will be entitled to recover from Seller Buyer's actual documented out-of-pocket expenses, including reasonable attorneys' fees and costs, incurred in negotiating this Agreement, investigating the feasibility of acquiring the Property, and preparation for closing, up to a maximum amount of $3,000. Buyer waives all other remedies it may have at law or in equity.

If Buyer fails to perform its obligations under this Agreement, Seller may choose to either (a) terminate this Agreement by written notice to Buyer and Escrow Agent and receive the Deposit as Seller's full measure of damages, or (b) allow Buyer additional time to perform its obligations. Seller waives all other remedies it may have at law or in equity. If Buyer and Seller become involved in a law suit to decide a dispute

6

between them concerning this Agreement or the Property, the losing party will pay the winning party's reasonable attorneys' fees and costs.

13. **General Matters.**

(a)   Time of Performance. Time is of the essence of each party's performance of its obligations under this Agreement.

(b)   Notices. If either Buyer or Seller is required or wants to provide any notice to the other, then the notice must be sent to the other by either delivery by hand, by overnight delivery service such as Federal Express or United Parcel Service, or by United States Mail, certified and return receipt requested. Notice will be considered given upon receipt by the addressee if hand delivered or mailed, and on the next business day after placing for delivery with an overnight delivery service.    The addresses for sending notices are on the first page of this Agreement, and may be changed by sending a notice of address change following the procedure for notices described in this paragraph.

(c)   Whole Agreement. This Agreement contains the whole and final agreement between Seller and Buyer relating to the purchase and sale of the Property, and all previous discussions or agreements, whether oral or written, are of no effect. This Agreement cannot be changed except by a written amendment signed by both Buyer and Seller.

(d)   Assignment. All terms of this Agreement will be binding upon, and will inure to the benefit of and be enforceable by the parties hereto and their respective legal representatives, heirs, successors and assigns. Except as set forth below, this Agreement may not be assigned by either party without the express written consent of the other. Buyer may assign its rights and obligations under this Agreement to an Affiliate as the "Buyer" hereunder, provided, however, that Buyer shall remain fully liable for performance of the obligations, including indemnifications, of the "Buyer" hereunder.    For purposes of the foregoing, "Affiliate" will mean a Person that (either directly or indirectly), through one or more intermediaries) controls, is in common control with or is controlled by, another Person, and any Person that is a director, trustee, officer, employee, agent, partner, shareholder, subsidiary or attorney of any of the foregoing, and will include, without limitation, any limited liability company, partnership or corporation directly or indirectly controlled by, or in common control with, Buyer or Seller.

(e)   Governing Law. The law of the State of Mississippi will control this Agreement.

(f)   Escrow Agent. Escrow Agent signs this Agreement only for the purpose of indicating Escrow Agent's agreement to comply with the terms of this Agreement as they apply to Escrow Agent. Escrow Agent will not be liable to either party except for claims resulting from the gross negligence or willful misconduct of Escrow Agent. Escrow Agent also serves as legal counsel to Seller; the parties agree that if a dispute arises between Seller and Buyer concerning this Agreement or the Property, Escrow Agent may continue to serve in its capacity as legal counsel, even though Escrow Agent will continue to serve in its capacity as Escrow Agent. If Escrow Agent is in doubt as to its duties

7

relating to the Deposit, or receives conflicting claims for the Deposit, then Escrow Agent may continue to hold the Deposit until Buyer and Seller have resolved the matter and have given written instructions to Escrow Agent regarding such resolution, or may interplead the Deposit into a court of appropriate jurisdiction and be relieved of any further responsibility for the Deposit.  In any legal action regarding the Deposit brought by Escrow Agent or to which Escrow Agent is made a party, Escrow Agent will be entitled to recover its reasonable costs and attorney's fees.  Notices given to escrow agent will be considered properly delivered if given in accordance with the provisions of paragraph (b) above at the address of Escrow Agent that appears on the first page of this Agreement.

(g)    WAIVER OF JURY TRIAL.  BUYER AND SELLER EACH AGREE THAT THE NATURE OF THIS AGREEMENT MAKES A JURY DETERMINATION OF ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR THE PROPERTY UNDESIRABLE. ACCORDINGLY, BUYER AND SELLER EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT EITHER OF THEM MAY HAVE IN ANY COURT WITH RESPECT TO ANY ACTION RELATING TO THIS AGREEMENT OR THE PROPERTY.

(h)    BROKERAGE.  Seller and Buyer warrant each to the other that no broker or agent has been employed with respect to the sale of the Property, other than Seller's brokers, DJM Asset Management, LLC ("Seller's Broker"), which has been retained by Seller pursuant to Order Authorizing Debtors to Retain DJM Asset Management, LLC as Special Real Estate Consultants to the Debtors, issued by the Bankruptcy Court on June 10, 2005 (the "Retention Order"). Seller will be responsible for payment of the brokerage commission to Seller's Broker pursuant to the Retention Order (the "Brokerage Commission").  Each party indemnifies and agrees to hold harmless the other from any claim made by brokers or agents who claim to act for the party sought to be charged for a commission, compensation, brokerage fees, or similar payment in connection with this transaction and against any and all expense or liability arising out of any such claim.

14.    **Consent to Jurisdiction of Bankruptcy Court.**  The Bankruptcy Court will have jurisdiction over all matters, including any legal action, suit or proceeding arising out of or relating to this Agreement, any related agreements, or the contemplated transactions and the interpretation, implementation and enforcement of this Agreement, and the parties hereto irrevocably submit and consent to such jurisdiction. Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in paragraph 13(b) of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.  Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum.

8

**THIS AGREEMENT** is signed by Buyer and Seller, and joined by Escrow Agent as of the Contract Date.

Witnesses:

SELLER:

**WINN-DIXIE MONTGOMERY, INC.,** a Florida corporation

_Susan Magaddino_
Print Name: **SUSAN MAGADDINO**

By: _Bennett L. Nusebaum_
Name: _____
Title: Vice President

_Rebecca L. Sawyer_
Print Name: **REBECCA L. SAWYER**

Reviewed By
_XRoads_
Date: _____

LEGAL APPROVED
ATTY: _CBL_
DATE: _12/13/05_

Witnesses:

BUYER:

**CPM ASSOCIATES, L.P.,** a Tennessee limited liability partnership

_Jenny Fitzsimmons_
Print Name: Jenny Fitzsimmons

By: _Fletcher Bright_
Name: _Fletcher Bright_
Title: _Gene Partner_

_Mitzi A. Stewart_
Print Name: _Mitzi A. Stewart_

**ESCROW AGENT:**

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
Name: Douglas G. Stanford
Title: Partner

Dated: December 8, 2005

9

**THIS AGREEMENT** is signed by Buyer and Seller, and joined by Escrow Agent as of the Contract Date.

Witnesses:

**SELLER:**

**WINN-DIXIE MONTGOMERY, INC.,** a Florida corporation

_____
Print Name:_____

By: _____
Name: _____
Title: Vice President

_____
Print Name: _____

Witnesses:

**BUYER:**

**CPM ASSOCIATES, L.P.,** a Tennessee limited liability partnership

Print Name: _TERESA BROWN_

By: _____
Name: _____
Title: _Fletcher Bright_
_gene partner_

Print Name: _Mitzi A. Stewart_

**ESCROW AGENT:**

**SMITH, GAMBRELL & RUSSELL, LLP**

By:_____
Name: Douglas G. Stanford
Title: Partner

Dated:  December __, 2005

9

## EXHIBIT A

### LEGAL DESCRIPTION OF PROPERTY

A tract of land containing 0.431 acres situated in Square 352 of the City of McComb, Pike County, Mississippi and being more particularly described as follows:

Begin at an iron rod that is 200.0 feet East and 12.0 feet South of the Northwest corner of the aforesaid Square 352 of the City of McComb according to the Survey made by Willie A. Moak on September 13, 1978 and said iron rod is also described as being a bearing of South 89 degrees 37 minutes 43 seconds East and a distance of 196.52 feet from a concrete monument marking the intersection of the Eastern right-of-way line of West Avenue and the Southern right-of-way line of Delaware Avenue, as they are now laid out and in use and run South for a distance of 186.85 feet; thence West for a distance of 100.0 feet; thence North for a distance of 187.5 feet to the aforesaid Southern right-of-way line of Delaware Avenue; thence South 89 degrees 37 minutes 43 seconds East along said Southern right-of-way line for a distance of 100.0 feet to the POINT OF BEGINNING. The above-described parcel is within the boundary of the property conveyed to C. E. Jackson, Jr. and Nancy B. Jackson described in Deed Book 215 at page 277 in the offices of the Chancery Clerk of Pike County, Mississippi.

10

**EXHIBIT B**

SCHEDULE OF PERSONAL PROPERTY

The following described personal property, if any, located on the Real Property:

Routers, Air Compressors, Canopy, Kiosk, Fuel Pumps, Fuel Tanks (Including underground storage tanks), Pipes, Valves, Fittings, Lines, Shelves, Registers, and Monitoring Devices.

11

**EXHIBIT C**

FORM OF BILL OF SALE

**WINN-DIXIE MONTGOMERY, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Real Estate Purchase Agreement (the "Agreement") dated effective December __, 2005, between **CPM ASSOCIATES, L.P.**, a Tennessee limited liability partnership ("Buyer") and Seller, does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement, including the specific items of personal property described on attached Exhibit B.

Seller represents and warrants to Buyer that Seller has good and lawful right, title and interest in the Assets, that the Assets are free and clear of all interests, liens, claims or encumbrances. This conveyance is made pursuant to the order of the Bankruptcy Court in *In re Winn-Dixie Stores, Inc., et al.*, Case No. 05-11063 (RDD)(Jointly Administered), United States Bankruptcy Court, Middle District of Florida, Jacksonville Division.

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of January, 2006.

"SELLER"

**WINN-DIXIE MONTGOMERY, INC.**, a Florida corporation

By: _____

Name: _____

Title: _____

12

**SECOND AMENDMENT TO**
**REAL ESTATE PURCHASE AGREEMENT**

**THIS SECOND AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Amendment") is made effective as of January 12, 2006, by and between **WINN-DIXIE MONTGOMERY, INC.**, a Florida corporation ("Seller") and **CPM ASSOCIATES, L.P.**, a Tennessee limited partnership ("Buyer").

**RECITALS:**

A.    Seller and Buyer are parties to that certain Real Estate Purchase Agreement (the "Agreement") dated effective December 16, 2005, as amended December 28, 2005 (the "Contract Date"), pursuant to which Seller has agreed to sell to Buyer the Property described therein located at 1209 Delaware Avenue, McComb, Mississippi.

B.    The Agreement as amended provided Buyer with a period commencing on the Contract Date and expiring on January 12, 2006 (the "Review Date"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.    Seller and Buyer have opted to extend the Review Date through January 19, 2006.

D.    Seller and Buyer desire to amend the Agreement and enter into this Amendment for the purpose of evidencing such extension.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    Extension of Review Date. Seller and Buyer hereby extend the Review Date to January 19, 2006.

2.    Title Defects.  The last unnumbered paragraph of paragraph 5 of the Agreement is deleted in its entirety and in its place is substituted the following:

> "If Buyer decides that it wants to proceed with the purchase of the Property, but finds defects in the legal title to the Property, Buyer may notify Seller of such problems, and Seller will cooperate with Buyer in attempting to solve such defects to Buyer's satisfaction before the Review Date, but Seller will have no obligation to cure the same except for Monetary Liens, as described below.  Buyer will have the right to terminate this Agreement by written notice to Seller given on or before the Review Date if Seller is not willing or able to solve such defects, and Escrow Agent will refund the Deposit to Buyer. However, Seller is obligated to pay off and remove any liens, mortgages, judgments, taxes or other money items (the "Monetary Liens") from the Property so that Seller can convey good title on the Closing Date."

3.    Miscellaneous.  Except as expressly provided in this Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Amendment and the Agreement, the provisions of this Amendment shall be controlling.  Capitalized terms used in this Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF,** Seller and Buyer have executed this Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE MONTGOMERY, INC.,** a Florida corporation

Name:_____

By:_____
Name:_____
Title: Vice President

Name:_____

[CORPORATE SEAL]

**BUYER:**

**CPM ASSOCIATES, L.P.,** a Tennessee limited partnership

Name: _Jeanetta Lykins_

By: _[signature]_
Name: _Fletcher Bright_
Title: _genl partner_

Name: _Donna Crowe_

[CORPORATE SEAL]

2

The undersigned, Escrow Agent, hereby acknowledges the foregoing Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

Smith, Gambrell & Russell, LLP

By: _____
Name: DOUGLAS G. STANFORD
Title: Partner

Dated: January 12, 2006

3

**THIRD AMENDMENT TO**
**REAL ESTATE PURCHASE AGREEMENT**

**THIS THIRD AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Amendment") is made effective as of January 19, 2006, by and between **WINN-DIXIE MONTGOMERY, INC.**, a Florida corporation ("Seller") and **CPM ASSOCIATES, L.P.**, a Tennessee limited partnership ("Buyer").

**RECITALS:**

A.    Seller and Buyer are parties to that certain Real Estate Purchase Agreement (the "Agreement") dated effective December 16, 2005, as amended December 28, 2005 and January 12, 2006, pursuant to which Seller has agreed to sell to Buyer the Property described therein located at 1209 Delaware Avenue, McComb, Mississippi.

B.    The Agreement as amended provided Buyer with a period expiring on January 19, 2006 (the "Review Date"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.    Seller and Buyer have opted to extend the Review Date through February 2, 2006, for limited purposes.

D.    Seller and Buyer desire to amend the Agreement and enter into this Amendment for the purpose of evidencing such extension, subject to the conditions set forth in paragraph 2 below.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    Extension of Review Date. Seller and Buyer hereby extend the Review Date to February 2, 2006.

2.    Conditions to Extension of Review Date.  Seller and Buyer agree that the foregoing extension is for the sole purpose of allowing Buyer to satisfy itself as to (a) the condition of title to the property and (b) the existence, if any, of potential environmental hazards on or about the Property.  Other than the matters in clauses (a) and (b) above, Buyer agrees that it is satisfied with the condition of the Property and waives any and all objections to the condition of the Property.

3.    Miscellaneous.  Except as expressly provided in this Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Amendment and the Agreement, the provisions of this Amendment shall be controlling.  Capitalized terms used in this Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE MONTGOMERY, INC.,** a Florida corporation

By: _____
Name: _____Bennett L. Nussbaum_____
Title: Vice President

[CORPORATE SEAL]

Name: ____SUSAN MAGADDINO____

Name: _____

**BUYER:**

**CPM ASSOCIATES, L.P.,** a Tennessee limited partnership

By: _____
Name: _____
Title: _____

Name: _____

Name: _____

[SEAL]

Reviewed By                LEGAL APPROVED
                           ATTY: CBL
XRoads                     DATE: 1/23/06
Date: _____

2

**IN WITNESS WHEREOF,** Seller and Buyer have executed this Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE MONTGOMERY, INC.,** a
Florida corporation

Name:_____

By:_____
Name:_____
Title: Vice President

Name:_____

[CORPORATE SEAL]

**BUYER:**

**CPM ASSOCIATES, L.P.,** a Tennessee
limited partnership

Name: *Paulette Smith*

By:_____
Name: *Fletcher Bright*
Title: *general partner*

Name: *Mitzi A. Stewart*

[SEAL]

2

The undersigned, Escrow Agent, hereby acknowledges the foregoing Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**Smith, Gambrell & Russell, LLP**

By: _____
Name: _____
Title: _____

Dated: January 2, 2006

3

## FOURTH AMENDMENT TO
## REAL ESTATE PURCHASE AGREEMENT

**THIS FOURTH AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Amendment") is made effective as of February 2, 2006, by and between **WINN-DIXIE MONTGOMERY, INC.**, a Florida corporation ("Seller") and **CPM ASSOCIATES, L.P.**, a Tennessee limited partnership ("Buyer").

### RECITALS:

A.     Seller and Buyer are parties to that certain Real Estate Purchase Agreement (the "Agreement") dated effective December 16, 2005, as amended December 28, 2005, January 12, 2006 and January 19, 2006, pursuant to which Seller has agreed to sell to Buyer the Property described therein located at 1209 Delaware Avenue, McComb, Mississippi.

B.     The Agreement as amended provided Buyer with a period expiring on February 2, 2006 (the "Review Date"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.     Seller and Buyer have opted to extend the Review Date through February 15, 2006, for limited purposes.

D.     Seller and Buyer desire to amend the Agreement and enter into this Amendment for the purpose of evidencing such extension, subject to the condition set forth in paragraph 2 below.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.     Extension of Review Date. Seller and Buyer hereby extend the Review Date to February 15, 2006.

2.     Conditions to Extension of Review Date. Seller and Buyer agree that the foregoing extension is for the sole purpose of allowing Buyer to satisfy itself as to the existence, if any, of potential environmental hazards on or about the Property. Other than the matter above, Buyer agrees that it is satisfied with the condition of the Property and waives any and all objections to the condition of the Property.

3.     Miscellaneous. Except as expressly provided in this Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Amendment and the Agreement, the provisions of this Amendment shall be controlling. Capitalized terms used in this Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE MONTGOMERY, INC.,** a Florida corporation

_____
Name:_____

By:_____
Name:_____
Title: Vice President

_____
Name:_____

[CORPORATE SEAL]

**BUYER:**

**CPM ASSOCIATES, L.P.,** a Tennessee limited partnership

_____
Name:_____

By:_____
Name:_____
Title:_____

_____
Name:_____

[SEAL]

2

The undersigned, Escrow Agent, hereby acknowledges the foregoing Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**Smith, Gambrell & Russell, LLP**

By: _____
Name: _____
Title: _____

Dated:  February ____, 2006

3

# **EXHIBIT B**

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors. | ) | Jointly Administered |

## ORDER (A) AUTHORIZING THE DEBTORS TO SELL MCCOMB PROPERTY AND RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS, AND (B) GRANTING RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363 and Fed. R. Bankr. P. 6004(g): (a) authorizing Winn-Dixie Montgomery, Inc., a Florida corporation ("WD Montgomery"), to sell its closed fuel center (Number 1378) and underlying tract of land located in McComb, Mississippi, as more particularly described on Exhibit A attached to the Motion (collectively, the "McComb Property"), together with all related personal property and all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments to CPM Associates, L.P. (the "Purchaser"), or to a party submitting a higher or better offer, free and clear of liens, claims, interests and encumbrances and (b) granting related relief (the "Motion").[1]  A hearing on the Motion was held by the Court on March 9, 2006 (the "Sale Hearing").  The Court has read the Motion and considered the representations of counsel.  Upon the representations of

---

[1]   All capitalized terms not otherwise defined by this Order will have the meaning ascribed to them in the Motion or the Purchase Agreement.

counsel and without objection from the United States Trustee or any other interested party, the Court makes the following findings of fact:

A.      This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

B.      The Debtors solicited the highest or otherwise best offer for the Assets described in the Purchase Agreement (the "Assets") in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures").

C.      The Debtors have provided interested parties (including all parties asserting claims on interests of the Assets, if any) with proper notice of the Motion, the Auction, the Sale Hearing and the transactions contemplated by the Sale pursuant to 11 U.S.C. §§ 102(1), 105(a), 363 and Fed. R. Bankr. P. 2002 and 6004 and Local Rule 2002-1, the Bidding Procedures Order and the Notice Procedures Order.

D.      A reasonable opportunity to object or be heard with respect to the Motion and the sale of the Assets has been afforded to all parties in interest (including all third parties asserting Interests or Claims (as such terms are defined below) in, to or against the Assets, if any).

E.      The Debtors marketed the Assets and conducted the Sale process in compliance with the Bidding Procedures Order.  The bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner.  Through the Debtors' marketing efforts and Auction process, the Debtors afforded all interested parties a reasonable opportunity to make higher or betters offers to purchase the Assets.

2

00522737.DOC

F.      WD Montgomery (i) has full corporate power and authority to execute and consummate the purchase agreement attached as Exhibit A to this Order (the "Purchase Agreement") and all related documents, and the sale of the Assets has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

G.      WD Montgomery has good business reasons to sell the Assets prior to filing a plan or reorganization pursuant to 11 U.S.C. § 363(b).

H.      Neither Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

I.      The Purchase Agreement was proposed, negotiated and entered into by WD Montgomery and the Purchaser without collusion, in good faith and at arms'-length bargaining positions.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

J.      The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m).

K.      The consideration being provided by the Purchaser to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration for the Assets.

3

00522737.DOC

L.    WD Montgomery's transfer of the Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with good and valid title in and to the Assets free and clear of any lien, interest or encumbrance of any kind or nature (collectively, the "Interests") and claim (as such term is defined in 11 U.S.C. § 101(5)) ("Claims") with the exception of the Permitted Encumbrances, as defined in the Motion.

M.    WD Montgomery may sell and transfer the Assets free and clear of all Interests and Claims (other than the Permitted Encumbrances) because any entity with any Interests or Claims, if any, in the Assets to be transferred (i) has consented to the sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Holders of Interests and Claims, if any, who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

N.    The Court's approval of the Purchase Agreement and the sale of the Assets to the Purchaser, or its designee, is in the best interests of the Debtors, their estates, their creditors and other parties in interest. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.    The Motion is granted.

4

2.      Any objections to the entry of this Order or to the relief granted and requested in the Motion that have not been withdrawn, waived or settled are denied and overruled on the merits.

3.      The terms and conditions of the Purchase Agreement are approved. Pursuant to 11 U.S.C. §§ 105(a), 363(b) and this Order, the Debtors are authorized to consummate the Sale in accordance with the terms and conditions of the Purchase Agreement.

4.      WD Montgomery is authorized to consummate and implement fully the Purchase Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement, and the Debtors are authorized to take all further actions as may reasonably be necessary or appropriate for the purpose of conveying the Assets to the Purchaser, or its designee, or as may be necessary or appropriate to the performance of the Debtors' obligations under the Purchase Agreement.

5.      Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties without further order of the Court; provided, however, that, (a) the Debtors will first obtain the prior written consent of (i) the DIP Lender, and (ii) the Creditors' Committee, which consent will not be unreasonably withheld and (b) any such modification, amendment or supplement does not have a materially adverse effect on the Debtors' estates.

00522737.DOC

6.     WD Montgomery will transfer the Assets to the Purchaser, or its designee, upon Closing free and clear of all Interests and Claims (except for the Permitted Encumbrances).   The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender and any other valid and enforceable liens, if any, will attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

7.     WD Montgomery's transfer of the Assets to the Purchaser, or its designee, is a legal, valid, and effective transfer of the Assets and will vest the Purchaser, or its designee, with all right, title and interest of the Debtors in and to the Assets, free and clear of all Interests and Claims (except for the Permitted Encumbrances).

8.     The consideration provided by the Purchaser, or its designee, for the Assets constitutes reasonably equivalent value and fair and reasonable consideration under the Bankruptcy Code and applicable non-bankruptcy law, and may not be avoided under 11 U.S.C. § 363(n).

9.     Upon Closing of the Sale in accordance with the Purchase Agreement and this Order, the Purchaser is deemed to have acted in good faith in purchasing the Assets, as that term is used in 11 U.S.C § 363(m).   Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Assets will not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

10.     All entities who are presently in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors.   Each of the

00522737.DOC

Debtors' creditors is authorized and directed to execute any and all documents and take all other actions as may be necessary to release its Interests in and Claims against the Assets (except for the Permitted Encumbrances) (provided that the taking of such actions will not require such creditor to incur any material costs) as such Interests and Claims may have been recorded or may otherwise exist. In the event any creditor fails to release its Interests in or Claims against the Assets, the Debtors are authorized to file or record a copy of this Order. Once filed, registered or otherwise recorded, this Order will constitute conclusive evidence of the release of all Interests in and Claims against the Assets (except for the Permitted encumbrances).

11. WD Montgomery's transfer of the Assets to the Purchaser, or its designee, will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

12. Other than the Permitted Encumbrances, the Assumed Liabilities and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser and its designee, (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets. The Debtors' transfer of the Assets to the Purchaser, or its designee, does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or

7

00522737.DOC

the Assets by reason of such transfer under the laws of the United States or any state or territory.

13.    This Order is and will be effective as a determination that any and all Interests or Claims are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

14.    Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in the Assets to the Purchaser, or its designee. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

15.    This Order is binding in all respects upon, and inures to the benefit of, the Debtors, their estates and creditors, the Purchaser and its designee, and its respective affiliates, successors and assigns, and this Order is binding in all respects upon all persons asserting an Interest in or Claim against the Debtors' estates or the Assets. The sale is enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any chapter 7 or chapter 11 trustee of the Debtors and their estates.

16.    During the pendency of the Debtors' jointly administered cases, this Court will retain exclusive jurisdiction (a) to enforce and implement the Purchase Agreement and any agreements and instruments executed in connection with the Purchase Agreement, (b) to compel delivery of possession of the Assets to the Purchaser,

8

(c) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement and (d) to interpret, implement, and enforce the provisions of this Order.

17.     All persons and entities that hold Interests in or Claims against the Debtors or the Assets are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale of the Assets.

18.     Nothing contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or any order of this Court confirming such a plan, or any other order entered in these chapter 11 cases or in any subsequent chapter 7 cases will conflict with or derogate from the terms of this Order.

19.     The failure specifically to include any particular provision of the Purchase Agreement in this Order will not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

20.     After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Interests or Claims or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing

9

portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

21.    To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the this Order will control.

22.    Notwithstanding Fed. R. Bankr. P. 6004(g), this Order will take effect immediately upon entry.

Dated this ___ day of March, 2006 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed
to serve a copy of this Order
on all persons served with
the Motion.

10

00522737.DOC