## FIRST AMENDMENT TO LEASE

**THIS FIRST AMENDMENT TO LEASE** (the "Amendment") is made as of July 23, 1996 (the "Effective Date") by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Tenant") and **MARKETPLACE PORT ST. LUCIE LIMITED PARTNERSHIP**, a Florida limited partnership ("MPSL") and **TYRINGHAM RIDGE, INC.**, a Nevada corporation ("Ridge" and together with MPSL, "Landlord").

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Tenant and Landlord, as the current Tenant and Landlord under that certain lease dated July 23, 1996 (the "Original Lease") hereby amend the Original Lease and otherwise agree as follows:

1. Paragraph 7 of the Lease is hereby amended and restated in its entirety so that from and after the Effective Date, such paragraph 7 shall read and provide as follows:

   7. The Store shall initially be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, but may also be used for the conduct of any mercantile, retail, or service business (including discount businesses, except that, so long as Wal-Mart, or any affiliate of Wal-Mart, is the user of Tract 1, either as owner or lessee, no space in or portion of Tract 2, Pad A, Pad B, or Pad C and no space in or portion of any other real property adjacent to the Shopping Center shall be leased or occupied by or conveyed to any other party for use as a discount department store or other discount store; provided, however, that the foregoing shall not be deemed to restrict or prohibit the use of the Store as a typical Winn-Dixie "low price leader" grocery store/supermarket) (the "Permitted Use").

   Tenant shall have the exclusive right to operate a supermarket, and the nonexclusive right to operate a pharmacy or prescription drug concession, photo lab or film development business, and an automatic teller machine and banking business in the Shopping Center. Landlord will not directly or indirectly lease or rent any property located within the Shopping Center, or within 1,000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish, seafood, or vegetable market, nor will Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm, or corporation engaged in any such business without the prior written permission of Tenant; Landlord will not permit or suffer any property located within the Shopping Center to be used for, or occupied by, any business dealing in or keeping in stock or selling for off-premises consumption any staple or fancy groceries, meats, fish, seafood, vegetables, fruits, bakery goods, dairy products, or frozen foods without the prior written permission of Tenant except (1) by a business or businesses for which the sale of such items does not exceed the lesser of 500 square feet of sales area or ten percent (10%) of the square foot area of any storeroom within the Shopping Center, and is incidental only to the conduct of another business, or (2) by a restaurant located no closer than 50 feet from any boundary of the Store, as prepared, ready-to-eat food items, for consumption either on or off site. With the exception of package stores, no other tenant in the Shopping Center may sell beer and wine for off-premises consumption. Except for Schlotzky's deli-style restaurant, which shall be located no closer than 80 feet to any boundary of the Store as it is proposed to be enlarged, only Tenant may operate a bakery, delicatessen, or similar department in the Shopping Center.

   Without the prior written consent of Tenant, which may be withheld or conditioned in Tenant's sole discretion, only retail and/or service stores shall be allowed to operate in the Shopping Center, or any enlargement thereof, and no spa or health club (other than "Gold's Gym" which may be operated in the area labeled on the Site Plan as "Retail A" only), lounge, bar, "teen lounge", bowling alley, pawn shop, skating rink, bingo or electronic or other game parlor, theater (either motion or legitimate), business or professional offices, medical offices or clinics, automobile dealership, church, or health (except as set forth above), recreational or entertainment-type activities, or "pay" telephones shall be permitted.

   Notwithstanding the foregoing, Tenant shall not operate the Store for any use or purpose for which Landlord grants an exclusive to another tenant of the Shopping Center occupying 10,000 s.f. of

EXHIBIT 2

space or more provided that, with respect to such exclusive use or purpose (a) Landlord gives Tenant ten (10) days' written notice prior to granting same; (b) it does not violate any exclusive use granted to Tenant under this Lease; (c) Tenant is not, on the date of Landlord's notice, using the Store for the proposed exclusive use or purpose, and (d) it does not preclude or unreasonably limit Tenant's operation of the Store as a supermarket.

2.      Paragraph 13 of the Lease is hereby amended and restated in its entirety so that from and after the Effective Date such Paragraph 13 shall read and provide as follows:

**PARKING AND COMMON AREAS**

13.      Tenant, its employees, agents, suppliers, customers and invitees, shall have the nonexclusive right at all times to use, free of charge, during the Term, the Common Areas. Tenant may use the sidewalks adjacent to the Store and the exterior surfaces thereof for the display and sale of merchandise and services.

Landlord shall not designate any portion of the Common Areas for the exclusive use of any party and shall at all times during the Term provide and maintain a surfaced parking area substantially as shown on the Site Plan, and of sufficient area to provide:

(a)    a minimum ratio of at least 5.00 automobile parking spaces for each 1,000 square feet of gross building area (including additional floor levels) in the Shopping Center, and

(b)    facilities for convenient parking of at least 829 automobiles (minimum) in the entire Shopping Center, subject to possible reduction as noted below.

The aforementioned parking shall be provided as follows:

(i)    On Parcel D, facilities for the convenient parking of at least 541 automobiles; provided, however, in the event Tenant expands under Paragraph 44, *Expansion*, said requirement will be reduced by the twenty (20) spaces in Tenant's expansion area shown on the Site Plan immediately behind Retail G;

(ii)    On Pad A, facilities for the convenient parking of at least 111 automobiles; provided, however, said requirement may be reduced by no more than twenty (20) parking spaces if necessary to provide for drive-thru facilities on Pad A;

(iii)    On Pad B, facilities for the convenient parking of at least 90 automobiles; and

(iv)    On Pad C, facilities for the convenient parking of at least 96 automobiles; provided, however, said requirement may be reduced by no more than twelve (12) parking spaces if necessary to provide for a drive-thru facility on Pad C.

Notwithstanding the foregoing, if Legal Requirements mandate that a greater number of parking spaces be provided and maintained, such Legal Requirements shall control. If the parking area furnished should at any time be less, and such deficiency of parking facilities shall continue for thirty (30) days

after written notice thereof is sent to Landlord giving reasonable details, Tenant shall have the right to terminate this Lease. No signboards or other construction shall be erected in any of the Common Areas or so as to obstruct the view of the Store from the adjoining public streets. Without the prior written consent of Tenant, which consent may be withheld or conditioned in Tenant's sole discretion, no carnivals, fairs, shows, park and ride" lots, or sales by merchants utilizing vehicles or booths in the Common Areas shall be allowed in the Shopping Center.

Landlord shall not impose or designate any "employee parking areas" that would be applicable to Tenant's employees.

3. Paragraph 10 of the Lease, *Completion Date*, is hereby modified so that the "Construction Start Date" shall be the earlier of thirty (30) days after Landlord obtains an unrestricted building permit issued by the appropriate governmental authorities or April 24, 1997. All other terms and conditions of said Paragraph 10 shall remain the same.

4. Paragraph 11 of the Lease, *Commencement Date*, is amended by adding the following requirements:

(f) Landlord has received approval from the City of Port St. Lucie for the revised Site Plan attached hereto as Exhibit "A", and

(g) Landlord has provided Tenant with a binding letter from an appropriate official of the City of Port St. Lucie stating that:

(i) The parking provided or to be provided on Pad A, Pad B, and Pad C shall be counted toward all applicable parking ratio and other parking requirements necessary for Tenant's future expansion under Paragraph 44, *Expansion*, notwithstanding the fact that at the time of expansion one or more of said Pads and the balance of the Shopping Center may not be under common ownership.

(ii) The sixteen (16) parking spaces located along and bisected by the south boundary of the Shopping Center and being partially located on the adjacent Wal Mart parcel count in full toward all Shopping Center parking ratio and other parking requirements including, but not limited to, those applicable to Tenant's future expansion pursuant to Paragraph 44, *Expansion*.

All other terms and provisions of Paragraph 11 shall remain in full force and effect.

5. Paragraph 22, *Insurance*, is hereby amended by adding the following:

(c) <u>Landlord's Other Insurance</u>. Landlord shall at all times carry the insurance required by Article 8.b. of Easements with Covenants and Restrictions Affecting Land ("ECR") recorded at O.R. Book 927, Page 2510 of the Public Records of St. Lucie County, Florida, to the extent required by Wal-Mart, its successors and assigns.

All other terms and conditions of said Paragraph 22 shall remain in full force and effect.

3

6. Paragraph 38 of the Lease is hereby amended and restated in its entirety so that from and after the Effective Date, such paragraph 38 shall read and provide as follows:

**DECLARATION** 38. Landlord shall have recorded in the public records of St. Lucie County, Florida, declaration(s) of covenants and restrictions substantially in the form attached hereto as Exhibit "I" (collectively, the "Declaration"), as a primary encumbrance(s) and so as not be subject to foreclosure or removal without the express written permission of Tenant, providing that:

(a) no portion of the Shopping Center nor any portion of the tracts of land designated on the Site Plan as "Pad A, Pad B, or Pad C" shall be used for any of the activities or uses prohibited by this Lease;

(b) no structure constructed in the Shopping Center (other than the Store) or on the tracts designated on the Site Plan as "Pad A, Pad B, or Pad C" shall exceed a maximum building area of twenty-five percent (25%) of the ground area thereof or exceed a maximum vertical height of 22 feet as measured from ground level; provided, however, the structure to be located on Pad A may be built to a maximum vertical building height of twenty-five (25) feet measured from ground level; and provided further:

(i) the structure to be located on Pad A shall not exceed 4,200 square feet of gross building area;

(ii) the structure to be located on Pad B shall not exceed 5,000 square feet of gross building area;

(iii) the structure to be located on Pad C shall not exceed 3,200 square feet of gross building area.

7. Paragraph 46, subparagraph (c) is hereby amended and restated in its entirety so that from and after the Effective Date, such subparagraph shall read and provide as follows:

(c) On or before March __, 1997 (the "Financing Deadline"), Landlord shall have obtained construction and permanent financing (the "Financing") for the Shopping Center. Landlord shall notify Tenant within five (5) days of the Financing Deadline as to whether it has obtained the Financing. If Landlord has not obtained the Financing on or before the Financing Deadline, as stated in Landlord's Notice, or if Landlord fails to so notify Tenant, this Lease shall terminate as of the Financing Deadline.

8. <u>Representations and Warranties</u>.

(a) Landlord: Landlord represents and warrants to Tenant that

(i) each of MPSL and TR is duly formed under the law of its origination and its status is active;

(ii) each of MPSL and TR has the organizational power and authority to execute, deliver, and cause to be performed Landlord's obligations under the Original Lease and this Amendment, which execution, delivery, and performance has been authorized by all necessary organizational action and does not require any consent or approval of, or notice to, any third party.

(b) Tenant. Tenant represents and warrants to Landlord that:

4

(i) it is incorporated under Florida law and its status is active;

(ii) it has the corporate power and authority to execute, deliver, and perform its obligations under the Original Lease and this Amendment, which execution, delivery, and performance has been authorized by all necessary corporate action and does not require any consent or approval of, or notice to, any third party.

9. Site Plan and Legal Description. The Lease has attached thereto as Exhibit "A" a site plan prepared by Cuhaci & Peterson Architects (the "Original Site Plan"). The Original Site Plan is hereby deleted from the Lease and is replaced with the revised Site Plan attached hereto as Exhibit "A", the same being a site plan prepared by Culpepper & Terpening, Inc. entitled "Marketplace Overall Site Plan", Job No. 9628, Sheet 1 of 3, dated August 7, 1996 and last revised February 27, 1997. Any reference in the Lease to the "Site Plan" shall mean and refer to the revised Site Plan attached hereto. The legal description of the Shopping Center attached as Exhibit "B" to the Lease is hereby deleted and the revised legal description attached hereto as Exhibit "B" is substituted in its place. Any reference in the Lease to the "legal description" shall mean and refer to the revised legal description attached hereto. Landlord represents and warrants to Tenant that the revised Site Plan has been submitted to and approved by the City of Port St. Lucie, Florida.

10. The Lease is hereby amended by the inclusion of the following Paragraph 48:

**PADS**

48. Landlord and Tenant acknowledge that the original Site Plan and original Lease contemplated the Shopping Center to be comprised of one unified parcel. However, Landlord has requested that it be allowed to sell Pad A, Pad B, and/or Pad C now or at some time in the future. Tenant is agreeable to this, subject to the following conditions:

(a) The Short Form Lease and Declaration, as amended, are recorded in the public records of St. Lucie County, Florida prior to: (i) the sale or conveyance of any Pad; (ii) the recording of Landlord's mortgage and related loan documents; and (iii) the recordation of a Notice of Commencement for any Shopping Center improvements.

(b) Notwithstanding the terms and provisions of Paragraphs 3(c), *Additional Rent*, 3(d), *Common Area Maintenance*, 3(e), *Real Property Taxes*, and 3(f), *Shopping Center Insurance*, no charges relating to the same for Pad A and/or Pad C shall be charged to Tenant, and all such expenses shall be paid by Landlord until said Pads are conveyed to a third party purchaser. The charges for said items under Paragraphs 3(c), 3(d), 3(e) and 3(f) applicable to Pad B shall be included within the expenses for the Shopping Center and Tenant shall pay its Pro rata Share of said expenses applicable to Pad B until the earlier of Pad B being separately assessed for ad valorem tax purposes or Landlord conveying Pad B to a third party purchaser, at which time said expenses for Pad B shall be paid by Landlord or the third party purchaser, as applicable.

(c) The next-to-the-last paragraph of Paragraph 3 of the Lease is hereby amended to read: "Tenant's "Pro rata Share" shall be the ratio of the gross rentable square footage of the Store, which, as of the Execution Date, is 48,466, to the total gross rentable square footage of the Shopping Center, as constructed in accordance with the Site Plan from time to time, but excluding Pad A and Pad C; provided, however, upon the earlier of Pad B being separately assessed for ad valorem tax purposes or conveyed to a third party purchaser, Tenant's Pro rata Share shall be the ratio of the gross rentable square footage of the Store to gross rentable square footage of the Shopping Center, as constructed in accordance with the Site Plan from time to time, but excluding Pad A, Pad B, and Pad C.

(d) Except as set forth above, any and all other provisions of this Lease applicable to the Pads shall remain in full force and effect. By way of example and not by way of limitation: (i) Landlord's obligation to construct and maintain the Common Areas on the Pads pursuant to Paragraphs 9, 10, 11, 13 and 17; and (ii) Tenant's remedies pursuant to Paragraph 25 if any portion of the Common Areas on the Pads are taken pursuant to an eminent domain action.

11. <u>No Novation</u>. Except as expressly modified herein, the Original Lease and all terms and conditions thereof remain in full force and effect.

IN WITNESS WHEREOF, Tenant and Landlord have executed this Amendment as of the date first above written,

Witnesses:

_____
Print name:_____

**WINN-DIXIE STORES, INC.**

_____
Print name:_____

By:_____

Its:_____
Date:_____

_____
Print name: Jo Marie T Andrews

_____
Print name: Roxanne M. Blaze

**MARKETPLACE PORT ST. LUCIE LIMITED PARTNERSHIP**
a Florida limited partnership

By: MARKETPLACE DEVELOPMENT CORP.,
    a Florida corporation
    its authorized general partner

By:_____
   Scott A. LaBonte
Its: Exec - Vice President

_____
Print name: Jo Marie T Andrews

_____
Print name: Roxanne M. Blaze

**TYRINGHAM RIDGE, INC.**
Devcon Enterprises, Inc.

By:_____
   Scott A. LaBonte
Its: Exec Vice President

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this March ___, 1997, by _____, as _____ President of Winn-Dixie Stores, Inc., a Florida corporation, on behalf of the corporation, who is personally known to me.

_____
Printed Name: _____
Notary Public, State and County aforesaid.
My Commission Expires:_____
Notary ID No.: _____
(NOTARIAL SEAL)


STATE OF Connecticut
COUNTY OF Natick

The foregoing instrument was acknowledged before me this March 26, 1997, by Scott A. Rakute as Exec VP of Marketplace Development Corp., a Florida corporation, as authorized general partner of Marketplace Port St. Lucie Limited Partnership, a Florida limited partnership, on behalf of the corporation and the limited partnership, [PLEASE CHECK ONE] ✓ who is personally known to me or ____ who has produced _____ as identification.

Roxanne M. Blaze
Printed Name: Roxanne M. Blaze
Notary Public, State and County aforesaid.
My Commission Expires:_____
Notary ID No.: _____
(NOTARIAL SEAL)

ROXANNE M. BLAZE
COMMISSIONER OF DEEDS
MY COMMISSION EXPIRES JULY 27, 1998


STATE OF Connecticut
COUNTY OF Hartford

The foregoing instrument was acknowledged before me this March 26, 1997, by Scott A. Rakute as Exec Vice President of Tyringham Ridge, Inc., a Nevada corporation, on behalf of the corporation, [PLEASE CHECK ONE] ✓ who is personally known to me agent for or ____ who has produced _____ as identification.

Roxanne M. Blaze
Printed Name: Roxanne M. Blaze
Notary Public, State and County aforesaid.
My Commission Expires:_____
Notary ID No.: _____
(NOTARIAL SEAL)
O:\TRANSFER\ORLANDO\2361\AMEND5.1ST

ROXANNE M. BLAZE
COMMISSIONER OF DEEDS
MY COMMISSION EXPIRES JULY 27, 1998

7

**EXHIBIT A**

**SITE PLAN**

PARCEL D

DESCRIPTION

A parcel of land, being a portion of Lots 5, 8 and 9, a portion of Tract "C", a portion of water management Tract "A", a portion of Tract "B", and a portion of Tract "D", PORT ST. LUCIE SQUARE, according to the plat thereof, as recorded in Plat Book 28, at Page 22, of the Public Records of St. Lucie County, Florida, being more particularly described as follows:

For a point of reference, start at the intersection of the easterly right-of-way line of U.S. Highway No. 1, with the south right-of-way line of Jennings Road, as shown on said plat (said point also being the northwest corner of Lot 7); thence, along the South right-of-way line of Jennings Road, North 89 degrees 43 minutes 17 seconds East (deed - North 89 degrees 43' minutes 03 seconds East), 353.27 feet to the POINT OF BEGINNING; thence continue along the South right-of-way line of Jennings Road, North 89 degrees 43 minutes 17 seconds East (deed - North 89 degrees 43' minutes 03 seconds East), 1058.13 feet to the Northeast corner of Tract "B", as shown on said plat; thence, along the East line of said Tract "B", South 00 degrees 00 minutes 53 seconds East (deed - South 00 degrees 00 minutes 55 seconds East), 835.21 feet (deed - 835.41 feet); thence North 27 degrees 53 minutes 46 seconds West, 192.51 feet (deed - 192.58 feet); thence South 62 degrees 06 minutes 14 seconds West, 248.10 feet; thence North 27 degrees 53 minutes 46 seconds West, 214.00 feet; thence South 62 degrees 06 minutes 14 seconds West, 350.63 feet to a point on the easterly boundary line of Lot 4, as shown on said plat; thence, along said line, North 29 degrees 54 minutes 30 seconds West, 180.64 feet to a point on the arc of a tangent curve; thence northwesterly along the arc of said curve being concave to the southwest, having a radius of 40.00 feet, a central angle of 87 degrees 59 minutes 16 seconds, an arc distance of 61.43 feet; thence, tangent to said curve, and along the northerly line of said Lot 4, South 62 degrees 06 minutes 14 seconds West, 214.96 feet (deed - 214.97 feet) to a point on said easterly right-of-way line of U.S. Highway No. 1; thence, along said right-of-way line, North 27 degrees 53 minutes 46 seconds West, 50.00 feet; thence North 62 degrees 06 minutes 14 seconds E along proposed Out Parcel "C", 251.00 feet; thence North 27 degrees 53 minutes 46 seconds W along proposed Out Parcels "C" and "B" and a portion of Out Parcel "A", 434.59 feet; thence North 00 degrees 16 minutes 43 seconds West, 133.79 feet to the POINT OF BEGINNING. The herein described parcel contains 15.32 acres, more or less.

Unless otherwise stated, all bearings and distances reflect the findings of an actual field survey conducted by Culpepper and Terpening, Inc.. Referenced (deed) dimensions are as appear in existing deeds of record.

Description prepared by Culpepper and Terpening, Inc..

594

DESCRIPTION - OUT PARCEL "A" / Pad A

A parcel of land, being a portion of Lots 6, 7 and 8, of PORT ST. LUCIE SQUARE, according to the plat thereof, as recorded in Plat Book 28, at Page 22, of the Public Records of St. Lucie County, Florida, the herein described parcel being more particularly described as follows:

For a point of reference, start at the intersection of the easterly right-of-way line of U.S. Highway No. 1, with the south right-of-way line of Jennings Road, as shown on said plat (said point also being the northwest corner of said Lot 7); thence, along the South right-of-way line of Jennings Road, North 89 degrees 43 minutes 17 seconds East (shown as North 89 degrees 43 minutes 03 seconds East on recorded plat), 48.27 feet to the POINT OF BEGINNING; thence continue North 89 degrees 43 minutes 17 seconds East, along the South right-of-way line of Jennings Road, 305.00 feet; thence South 00 degrees 16 minutes 43 seconds East, 133.79 feet; thence South 27 degrees 53 minutes 46 seconds East, 29.21 feet; thence South 62 degrees 06 minutes 14 seconds West, 251.00 feet to a point on said easterly right-of-way line of U.S. Highway No. 1; thence North 27 degrees 53 minutes 46 seconds West, along said easterly right-of-way line of U.S. Highway No. 1, 263.24 feet; thence North 30 degrees 54 minutes 45 seconds East, 50.00 feet to the Point of Beginning. The herein described parcel contains 1.501 acres, more or less.

DESCRIPTION - OUT PARCEL "B" / Pad B

A parcel of land, being a portion of Lots 6, 7, 8 and 9 of PORT ST. LUCIE SQUARE, according to the plat thereof, as recorded in Plat Book 28, at Page 22, of the Public Records of St. Lucie County, Florida, the herein described parcel being more particularly described as follows:

For a point of reference, start at the intersection of the easterly right-of-way line of U.S. Highway No. 1, with the south right-of-way line of Jennings Road, as shown on said plat (said point also being the northwest corner of Lot 7 of said PORT ST. LUCIE SQUARE); thence South 27 degrees 53 minutes 46 seconds East, along the easterly right-of-way line of U.S. Highway No. 1, 311.51 feet to the POINT OF BEGINNING; thence continue South 27 degrees 53 minutes 46 seconds East, along the easterly right-of-way line of said U.S. Highway No. 1, 186.50 feet; thence North 62 degrees 06 minutes 14 seconds East, 251.00 feet; thence North 27 degrees 53 minutes 46 seconds West, 186.50 feet; thence South 62 degrees 06 minutes 14 seconds West, 251.00 feet to the POINT OF BEGINNING. The herein described parcel contains 1.075 acres, more or less.

DESCRIPTION - OUT PARCEL "C" / Pad C

A parcel of land, being a portion of Lots 5, 6 and 9, and also a portion of Tract "C" of PORT ST. LUCIE SQUARE, according to the plat thereof, as recorded in Plat Book 28, at Page 22, of the Public Records of St. Lucie County, Florida, the herein described parcel being more particularly described as follows:

For a point of reference, start at the intersection of the easterly right-of-way line of U.S. Highway No. 1, with the south right-of-way line of Jennings Road, as shown on said plat (said point also being the northwest corner of Lot 7 of said PORT ST. LUCIE SQUARE); thence South 27 degrees 53 minutes 46 seconds East, along the easterly right-of-way line of U.S. Highway No. 1, 498.01 feet to the POINT OF BEGINNING; thence continue South 27 degrees 53 minutes 46 seconds East, along the easterly right-of-way line of said U.S. Highway No. 1, 218.88 feet; thence North 62 degrees 06 minutes 14 seconds East, 251.00 feet; thence North 27 degrees 53 minutes 46 seconds West, 218.88 feet; thence South 62 degrees 06 minutes 14 seconds West, 251.00 feet to the POINT OF BEGINNING. The herein described parcel contains 1.261 acres, more or less.

## SECOND AMENDMENT TO LEASE

THIS SECOND AMENDMENT OF LEASE, made this August 18, 1998, by and between **WINN-DIXIE STORES, INC.**, a Florida Corporation, ("Tenant"), and **MARKETPLACE PORT ST. LUCIE LIMITED PARTNERSHIP**, a Florida limited partnership ("Landlord"), recites and provides as follows:

### RECITALS:

1.  By that lease, dated February 23, 1996, as amended and/or evidenced by: (a) Short Form Lease dated February 23, 1996, recorded in Volume 1070, page 0503 of the public records of Indian River County, Florida; (b) Amendment to Short Form Lease dated July 23, 1996, recorded in Volume 1070, page 0509 of the public records of St. Lucie County, Florida; (c) First Amendment to Lease dated July 23, 1996 (the "Lease"), Tenant leased from Landlord the "demised premises" (as defined in the Lease) located in the Indian River County, Florida.

2.  Landlord and Tenant desire to amend and modify the Lease as hereinafter set forth.

### WITNESSETH:

For and in consideration of the sum of Ten and No/100 Dollars ($10.00), the mutual promises and agreements contained in the Lease, and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, Tenant and Landlord agree as follows:

1.  The foregoing recitals are true and correct and incorporated here by this reference.

2.  The site plan depicting the shopping center referenced in Article 1 of the Lease as being attached as Exhibit "A" thereof is hereby deleted and the site plan depicting the shopping center entitled MARKETPLACE Port St. Lucie, prepared by Culpepper & Terpening, Inc., dated August 7, 1996, last revised on June 1, 1998 and attached hereto as Exhibit "A-2" (the "Site Plan") is substituted in the place of Exhibit "A-1". From and after the date hereof, any and all references in the Lease to a site or plot plan shall be deemed to and shall refer to the Site Plan.

3.  Paragraph 13 of the Lease is hereby amended and restated in its entirety so that from and after the date hereof such Paragraph 13 shall read and provide as follows:

**PARKING AND COMMON AREAS**

13. Tenant, its employees, agents, suppliers, customers and invitees, shall have the nonexclusive right at all times to use, free of charge, during the Term, the Common Areas. Tenant may use the sidewalks adjacent to the Store and the exterior surfaces thereof for the display and sale of merchandise and services so long as such use is permitted by applicable Legal Requirements and does not unreasonably interfere with pedestrian traffic or the rights of other tenants in the Shopping Center to use the Common Areas.

Landlord shall not designate any portion of the Common Areas for the exclusive use of any party and shall at all times during the Term provide and maintain a surfaced parking area substantially as shown on the Site Plan, and of sufficient area to provide:

Prior to construction of the Addition, as hereinafter defined:

(a) a minimum ratio of at least 5.0 ~~ten (10) foot wide~~ automobile parking spaces for each 1,000 square feet of gross building area (including additional floor levels) in the Shopping Center, and

        (b)    facilities for convenient parking of at least 786 automobiles (minimum); on the basis of arrangement as provided on the Site Plan and

After construction of the Addition, as hereinafter defined:

        (a)    a minimum ratio of at least 5.0 automobile parking spaces for each 1,000 square feet of gross building area (including additional floor levels) in the Shopping Center, and

        (b)    facilities for convenient parking of at least 766 automobiles (minimum).

Notwithstanding the foregoing, if Legal Requirements mandate that a greater number of parking spaces be provided and maintained, such Legal Requirements shall control. Without Tenant's prior written consent, Landlord will not seek or permit another tenant of the Shopping Center to seek a variance or waiver from the minimum parking requirements applicable to the Shopping Center pursuant to such Legal Requirements. No signboards or other construction shall be erected in any of the Common Areas or so as to materially obstruct the view of the Store from the adjoining public streets. Without the prior written consent of Tenant, which consent may be withheld or conditioned in Tenant's sole discretion, no carnivals, fairs, shows, "park and ride" lots, or sales by merchants utilizing vehicles or booths in the Common Areas shall be allowed in the Shopping Center.

    4.    The Lease, except as expressly modified and amended by this Second Amendment to Lease shall remain in full force and effect and contains the entire agreement between the parties.

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this Second Amendment to Lease to be executed as of the date and year first above written.

Signed, sealed and delivered
in the presence of:

MARKETPLACE OF PORT ST. LUCIE
LIMITED PARTNERSHIP

Print name: Joseph R. Cody III

Print name: Shirley A. Redo

By: Marketplace Development Corp., its authorized general partner

By: _____
Its: Vice-President
Date: 8-17-98

Print name: BRENDA J. BABCOCK

Print name: AMY P. WILEY

Winn-Dixie Stores, Inc.

By: R. P. McCook
    R. P. McCook
Its: Vice President

Date: August 18, 1998

STATE OF Connecticut )
COUNTY OF HARTFORD )

The foregoing instrument was acknowledged before me this August 1, 1998, by Scott H. LaRonte as V.P. Marketplace Development Corp., the authorized general partner of Marketplace Port St. Lucie Limited Partnership, a Florida limited partnership, on behalf of the limited partnership, who [PLEASE CHECK ONE] ✓ is personally known to me or ____ has produced _____ as identification.

*Shirley A. Redo*
Printed Name: Shirley A. Redo
Notary Public, State and County aforesaid.
My Commission Expires: 11/30/99
Notary ID No.: _____
(NOTARIAL SEAL)


STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this August 18, 1998, by R. P. McCook, as Vice President of Winn-Dixie Stores, Inc., a Florida corporation, on behalf of the corporation, who is personally known to me.

*Lucy W. McCook*
Printed Name: LUCY W. McCOOK
Notary Public, State and County aforesaid.
My Commission Expires: _____
Notary ID No.: _____
(NOTARIAL SEAL)

> LUCY W. McCOOK
> Notary Public, State of Florida
> Commission No. 571884
> My Commission Exp. 07/24/2000
> 1-800-3-NOTARY - Fla. Notary Service & Bonding Co.



MARKETPLACE — OVERALL SITE PLAN