Our File No. TTD2X001

United States Bankruptcy Court
Middle District of Florida
Jacksonville Division

IN RE:                                                CASE NO.: 3:05-bk-03817-JAF

Winn-Dixie Stores, Inc.

FILED
JACKSONVILLE, FLORIDA
FEB 21 2006
CLERK, U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

Debtor(s)                                             CHAPTER 11

### NOTICE OF TRANSFER OF PROOF OF CLAIM

***AN OBJECTION TO THIS NOTICE MUST BE FILED WITHIN TWENTY (20) DAYS OF THE MAILING OF THIS NOTICE. IF A TIMELY OBJECTION IS NOT FILED WITHIN THIS TIME, THE TRANSFEREE NAMED HEREIN SHALL BE SUBSTITUTED FOR THE TRANSFEROR.***

COMES NOW, CadleRock, L.L.C. and files this Notice of Transfer of Proof of Claim pursuant to Bankruptcy Rule 3001. Comerica Bank previously filed a proof of claim in the above-referenced bankruptcy case. The Transferor assigned or transferred this claim to CadleRock, L.L.C. pursuant to an Asset Sale Agreement dated December 7, 2005 and Bill of Sale dated December 15, 2005. Payments on this claim should now be made to the Transferee at the following address:

CadleRock, L.L.C.
100 North Center Street
Newton Falls, OH 44444

Transferor's address is as follows:

Comerica Bank
C/o J. Maxwell Tucker, Esq.
Winstead Sechrest & Minick, P.C.
1201 Elm Street, Suite 5400
Dallas, TX 75270-2199

The original amount of secured claim is $554,449.85

Original Proof of Claim No. 6420
Date Filed: July 15, 2005

2006 FEB -3 PM 2:40 LOGAN & COMPANY, INC. RECEIVED

Dated: January 31, 2006

_____
Vic Buente, Account Officer for Transferee

# United States Bankruptcy Court
## Middle District of Florida

**PROOF OF CLAIM**

| In re: Winn-Dixie Stores, Inc., et al | | Chapter 11 |
|---|---|---|

| Name of Debtor Against Which Claim is Asserted | Case Number |
|---|---|
| Winn-Dixie Stores, Inc., et al | Case No. 05-03817-JAF |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U S C § 503

DEBTOR WINN - DIXIE STORES, INC
U S. BANKRUPTCY COURT M D -FLORIDA
JOINTLY ADMINISTERED UNDER
CASE 05-03817 (3F1)
CHAPTER 11
CLAIM NO.: 6420

**Name of Creditor**
Comerica Bank

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars
☐ Check box if you have never received any notices from the bankruptcy court in this case
☐ Check box if the address differs from the address on the envelope sent to you by the court

**Name and Addresses Where Notices Should be Sent**
J Maxwell Tucker
Jaime Myers
Winstead Sechrest & Minick, P C.
1201 Elm Street, Suite 5400
Dallas, Texas 75270-2199

408212

This Space Is For Court Use Only

**ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR**

Check here if this claim ☐ replaces or ☐ amends a previously filed claim

**1  BASIS FOR CLAIM**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other- lease rejection claim

☐ Retiree benefits as defined in 11 U S C § 1114(a)
☐ Wages, salaries, and compensations (Fill out below)
Your SS # _____

Unpaid compensations for services performed
from _____ to _____
       (date)              (date)

**2  DATE DEBT WAS INCURRED** September 26, 2000

**3  IF COURT JUDGMENT, DATE OBTAINED**

**4  Total Amount of Claim at Time Case Filed**   $554,449 85 (See attached Addendum)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

**5  SECURED CLAIM**

☐ Check this box if your claim is secured by collateral (including a right of setoff)

Brief Description of Collateral _____

☐ Real Estate    ☐ Motor Vehicle
☐ Other _____

Value of Collateral _____

Amount of arrearage and other charges at time case filed included in secured claim, if any  $ _____

**6  UNSECURED PRIORITY CLAIM**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim
☐ Wages, salaries, or commissions (up to $4650*), earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier --11 U S C §507(a)(3)
☐ Contributions to an employee benefit plan-- 11 U S C § 507(a)(4)
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use--11 U S C § 507(a)(6)
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child--11 U S C §507(a)(7)
☐ Taxes or penalties for governmental units-- 11 U S C § 507(a)(8)
☐ Other--Specify applicable paragraph of 11 U S C § 507(a)(__)
*Amounts are subject to adjustment on 04/01/2004 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**7  CREDITS** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim
**8  SUPPORTING DOCUMENTS** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of liens  DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain.  If the documents are voluminous, attach a summary
**9  DATE-STAMPED COPY** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE FOR COURT USE ONLY

| Date | Comerica Bank |
|---|---|
| 07/06/2005 | By _____ |
| | J Maxwell Tucker, counsel for Comerica Bank |

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| WINN-DIXIE STORES, INC., et al., | § | Case No. 3:05-bk-03817-JAF |
| | § | |
| Debtors. | § | |

## ADDENDUM TO PROOF OF CLAIM

1. Pursuant to an Assignment of Rents and Leases (the "Assignment"), First Westgate Mall, L.P. ("Landlord") assigned all rents due under its lease (the "Lease") with Winn Dixie Louisiana, Inc. (the "Debtor") to Comerica Bank ("Comerica"). A copy of the Lease is attached hereto as **Exhibit A**. A copy of the Assignment of Rents and Leases is attached hereto as **Exhibit B**. The Lease was effectively rejected by the Debtor on February 23, 2005, pursuant to the Order Authorizing the Debtors to Reject Certain Real Property Leases, effective as of February 28, 2005, entered by this Court on February 23, 2005.

2. The Debtor was, as of the Petition Date, indebted to Comerica in the aggregate amount of not less than $104,497.85 (the "Petition Date Indebtedness"). An itemized list of the charges comprising the Petition Date Indebtedness is attached hereto as **Exhibit C**. Additionally, pursuant to 11 U.S.C. § 502(b)(6), Comerica is entitled to lease rejection damages in the amount of not less than $450,000. Comerica's total claim, therefore, totals not less than $554,449.85.

3. <u>Open Account</u>. This claim is not founded on an open account.

4. <u>Judgments</u>. No judgment has been rendered on this claim.

5. <u>Credits</u>. The amounts of all payments prior to the petition date on this claim have been credited and deducted for purposes of making this proof of claim.

6. <u>Setoffs</u>. To the best of Comerica's knowledge, this claim is not subject to any setoff rights and is not subject to any counterclaim.

7. <u>Collateral</u>. To the best of Comerica's knowledge, Comerica's claim is not secured by any collateral.

8. <u>Unsecured and Priority Status</u>. This claim is filed as an unsecured claim.

9. <u>Notices</u>. All notices to Comerica are to be sent to Max Tucker and Jaime Myers, Winstead Sechrest & Minick P.C., 5400 Renaissance Tower, 1201 Elm Street, Dallas, Texas 75270.

10. <u>Payments</u>. All payments and distributions to Comerica with respect to this Proof of Claim are to be made directly to Comerica, as directed by Comerica's counsel.

11. <u>Amendments</u>. Comerica reserves the right to amend and supplement this Proof of Claim, to specify (and quantify) costs, expenses, and other charges or claims incurred by or owed to it, and to file additional proofs of claim for additional claims.

DATED: July 14, 2005.

_____
J. Maxwell Tucker
Jaime Myers
Winstead Sechrest & Minick P.C.
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 745-5400 (Telephone)
(214) 745-5390 (Facsimile

**ATTORNEYS FOR COMERICA BANK**

Dallas_1\4185448\1
3134-731 7/5/2005

---

**ADDENDUM TO PROOF OF CLAIM**    Page 2 of 2

## BILL OF SALE

\_\_\_\_\_Comerica Bank\_\_\_\_\_ (the "Seller"), for value received and pursuant to the terms and conditions of that certain Asset Sale Agreement dated *December 7, 2005* between the Seller and \_\_\_CadleRock, L.L.C.\_\_\_ (the "Buyer"), does hereby sell, assign, transfer and convey to Buyer, all rights, title and interests of the Seller, as of the date hereof, in, to and under the Loan(s) described in the Asset Sale Agreement.

THIS BILL OF SALE IS EXECUTED WITHOUT RECOURSE AND WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, EXPRESSED, IMPLIED OR IMPOSED BY LAW, EXCEPT AS PROVIDED IN THE ASSET SALE AGREEMENT.

EXECUTED this *15th* day of *December*, *2005*.

SELLER:
Comerica Bank

By: *[signature]*
Joseph W. Sullivan
Its: Sr. Vice President

## SCHEDULE A

## LOANS

Note for $8,500,000.00 dated 09/26/00

Balance of $7,351,000.00 as of 11/30/05



## ASSET SALE AGREEMENT

THIS ASSET SALE AGREEMENT ("Agreement"), entered into this 7th day of December, 2005, by and between the undersigned Seller and Buyer sets forth the terms and conditions whereby the Seller agrees to sell and the Buyer agrees to purchase the Loan(s) identified herein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Seller and the Buyer hereby agree as follows:

1. **Definitions**. Capitalized terms shall be defined as set forth in this Agreement, including in Appendix A to this Agreement.

2. **Agreement to Purchase and Sell**. Subject to and in accordance with the terms and conditions of this Agreement, the Seller hereby agrees to sell, assign, transfer and convey to the Buyer on the Closing Date, and the Buyer hereby agrees to purchase and accept on the Closing Date, all rights, title, and interests of the Seller, as of the Closing Date, in, to and under the Loan(s) set forth on Schedule A attached hereto.

3. **Closing**. The closing shall occur on the Closing Date, by delivery of closing documents by hand or overnight delivery. In the event a copy of the Seller's signature to this Agreement is not delivered to Buyer within one Business Day after the Date hereof, the Buyer may extend the Closing Date by one Business Day for each Business Day of such delay.

   **3.1** **Payment of Adjusted Purchase Price.** On the Closing Date, the Buyer shall pay to the Seller, either in cash or by wire transfer in immediately available funds, the amount of the Purchase Price, adjusted as follows: (i) less the Earnest Money previously received by Seller, (ii) less all principal payments received by Seller on account of the Loan(s) from the Calculation Date through the day before the Closing Date multiplied by the Bid Percentage, (iii) less any escrows held by, or plus any escrows owed to, Seller relating to the Loan(s), (iv) plus any protective advances made by Seller, in its reasonable discretion between the Calculation Date and the Closing Date. The adjusted Purchase Price shall be calculated on a settlement statement prepared by the Seller and available for the Buyer's review two Business Days prior to the Closing Date.

   **3.2** **Conveyance.** Upon receipt of the Purchase Price, the Seller shall sell, assign, transfer and convey the Loan(s) to the Buyer subject to and in accordance with the provisions of this Agreement.

   **3.3** **Taxes, Fees, Etc.** The Buyer shall pay all transfer, filing and recording fees, taxes, costs and expenses, and any applicable documentary taxes, required to be paid by either

the Seller or the Buyer in connection with the transactions contemplated hereby, including, any assignment fees that may be payable to any agent in connection with the sale, assignment and transfer of any Loan(s), and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims, liability, costs and expenses arising out of or in connection with the failure of the Buyer to pay any such amount on a timely basis. The Seller shall be entitled to require the payment of any such fees, taxes, costs and expenses at or prior to the closing and as a condition thereof.

**3.4** **Payments Subsequent to the Closing Date.** From time to time after the Closing Date the Seller shall pay to the Buyer, promptly after receipt thereof, the net amount of any Collections received by the Seller on or after the Closing Date (to the extent collected in good funds by the Seller) and not already so paid to the Buyer, but only after all payments due to Seller from Buyer in connection with the sale of the Loan(s) have been paid to Seller, including, without limitation, any costs and expenses related to any Collections.

**4.** **Transfer of Loan(s).**

**4.1** **Closing Documents.** Not later than the Business Day prior to the Closing Date, Seller shall deliver to Escrow Agent (i) a Bill of Sale in the form attached hereto as Attachment 1, selling, assigning, transferring and conveying to the Buyer all rights, title and interests of the Seller in, to and under the Loan(s), all on the terms and conditions set forth in this Agreement; (ii) the original Note(s), or affidavits of lost Note(s), endorsed to the Buyer by allonge in the form attached hereto as Attachment 2; and (iii) assignment(s) of the Mortgage(s) in the form attached hereto as Attachment 3 (collectively, to the extent delivered to Escrow Agent, the "Closing Documents"). The endorsements and assignments included in the Closing Documents shall be without recourse, representation or warranty of any kind or nature. Such qualifying language on the endorsements and assignments shall not affect, limit or enlarge the obligations of the Seller and the rights, remedies and recourse of the Buyer under this Agreement.

**4.2** **Escrow Agent's Delivery of Closing Documents.** The Escrow Agent shall have no obligation to review the Closing Documents for completeness, authenticity, sufficiency, or otherwise. The Escrow Agent shall make the Closing Documents available for review by the Buyer prior to the closing. The Escrow Agent shall have the Closing Documents delivered to Buyer by hand or overnight delivery upon Escrow Agent's receipt of notification that the Seller has received the adjusted Purchase Price. In the event of a dispute or disagreement concerning delivery of the Closing Documents or Escrow Agent's duties hereunder, Escrow Agent shall take action at the written direction of both the Buyer and Seller or upon an order of a court of competent jurisdiction. Buyer and Seller, jointly and severally, agree to defend, indemnify and hold Escrow Agent harmless from and against any and all costs, losses and other liabilities of any and every kind in serving as Escrow Agent under this Agreement.

2

**4.3    Delivery of Collateral Documents, Etc.** Promptly after the closing, the Seller shall deliver to the Buyer the Review File including, without limitation, originals of each Collateral Document to the extent originals are in the Seller's possession.

**4.4    Execution of Separate Loan Assignments.** At and after the closing, to the extent prepared by Buyer, the Seller shall execute, and acknowledge if appropriate, for delivery to the Buyer one or more additional documents to the extent required by applicable public recording or filing laws to transfer to such Buyer the rights, title and interests of the Seller in, to and under the purchased Loan(s) (collectively, "Separate Loan Assignments"). The Separate Loan Assignments shall be without recourse, representation or warranty of any kind or nature. Such qualifying language on the Separate Loan Assignments shall not affect, limit or enlarge the obligations of the Seller and the rights, remedies and recourse of the Buyer under this Agreement. Buyer shall prepare and furnish any and all further Separate Loan Assignments, if necessary, in form satisfactory to Seller. The Buyer shall promptly file or record each Separate Loan Assignment, at its sole cost and expense.

**4.5    Hazard, Liability Insurance, Etc.** At the request and sole cost and expense of the Buyer, the Seller shall cooperate with the Buyer in executing written requests to each hazard, casualty and liability insurer, and to the writing agent for each flood hazard insurer, issuing a policy of insurance obtained by an Obligor with respect to the Loan(s), requesting an endorsement of its policy of insurance effective on the Closing Date adding the Buyer as the mortgagee, the loss payee and/or an insured named therein, as the case may be, together with instructions that such endorsement be forwarded directly to the Buyer, with a copy to the Seller at the address herein specified for notices. Each such request shall be prepared by the Buyer at its sole cost and expense, and any additional premium or other charge in connection therewith shall be paid by the Buyer. The Buyer shall not be entitled to be added to or acquire an interest in any policy of insurance obtained by the Seller. Any loss on or after the Closing Date either to an Obligor, the Buyer or to the value or collectability of the Loan(s) due to the Seller's cancellation of collateral or real property risk insurance or its failure to identify Buyer as loss payee, mortgagee or other insured is the sole responsibility of the Buyer.

**5.    Representations and Warranties of the Buyer.** The Buyer hereby represents and warrants as follows:

**5.1    Organization, Existence, Etc.** The Buyer is duly formed or organized, validly existing and in good standing under the laws of the jurisdiction of its formation or organization, and is registered or qualified to conduct business in all other jurisdictions in which the failure to be so registered or qualified would materially and adversely affect the ability of Buyer to perform its obligations hereunder.

**5.2    Authority and Enforceability, Etc.** The Buyer has the power and authority to execute, deliver and perform each of the Sale Documents to which it is a party and has taken all

3

necessary action to authorize such execution, delivery and performance. The Buyer's execution of this Agreement and its performance of its obligations hereunder are not subject to any further approval, vote or contingency from any person or committee. Assuming due authorization, execution and delivery by the Seller, the Sale Documents and all obligations of the Buyer thereunder are the legal, valid and binding obligations of the Buyer, enforceable in accordance with the terms of the Sale Documents, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

**5.3  Conflict with Existing Laws or Contracts.** The execution and delivery of the Sale Documents and the performance by the Buyer of its obligations thereunder will not conflict with or be a breach of any provision of any law, regulation, judgment, order, decree, writ, injunction, contract, agreement or instrument to which the Buyer is subject; and the Buyer has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery and performance by the Buyer of the Sale Documents.

**5.4  Financial Condition.** Neither the Buyer nor any general partner, limited partner, shareholder, member or joint venturer in or of the Buyer is involved in any financial difficulties which would impair or prevent a closing pursuant to this Agreement on the Closing Date. The Buyer has now and will have as of the Closing Date sufficient liquid assets, capital and net worth to meet its obligations under the Sale Documents and to pay the Purchase Price without any financing or other contingencies.

**5.5  Decision to Purchase.** The Buyer's bid and decision to purchase the Loan(s) is based upon its own comprehensive review and independent expert evaluation and analysis of the Review File and other materials deemed relevant by the Buyer and its agents. The Buyer has made such independent investigation as the Buyer deems to be warranted into the nature, title, attachment, perfection, priority, validity, enforceability, collectability, and value of the Loan(s), the title, condition and value of any collateral securing the Loan(s), the market conditions and other characteristics of the places where any such collateral is located, and all other facts it deems material to the purchase of the Loan(s).

**5.6  No Reliance.** In entering into this Agreement and the other Sale Documents, the Buyer has not relied upon any oral or written information from the Seller, DebtX, or any of their respective employees, agents, attorneys or representatives, other than the limited representations and warranties of the Seller contained herein. The Buyer acknowledges that no employee, agent, attorney or representative of the Seller or DebtX has been authorized to make, and that the Buyer has not relied upon, any statements, representations or warranties other than those specifically contained in this Agreement.

**5.7  No Intent to Sell.** The Buyer is acquiring the Loan(s) for its own account and not for the benefit or account of any other person or entity, or with a view toward making any public sale or

4

distribution thereof, and the Buyer does not intend to sell, offer for sale or syndicate securities or fractional interests in the Buyer in connection with the purchase of the Loan(s).

**5.8    Buyer an Accredited Investor.** The Buyer qualifies as an "accredited investor," as such term is defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended (17 C.F.R. §§230.501(e)(l)). The Buyer can withstand the loss of the entire Purchase Price.

**5.9    Information True and Correct, Full Disclosure.** The information provided by the Buyer in connection with its qualification as a bidder, was true and correct on the date provided and did not omit any information necessary to the accuracy and full disclosure of information provided and such information is accurate and complete on the date hereof except as the Buyer has otherwise disclosed in writing to the Seller upon or prior to submitting its bid.

**5.10    Confidentiality Agreement.** The Buyer has not violated any of the terms of the Confidentiality Agreement. At no time has Buyer or any of its representatives or agents communicated with any Obligor or any of its representatives or agents regarding the Loan(s). Buyer has no affiliation with, any ownership interest in, or agreement with the Obligor or any of its representatives or agents regarding the Loan(s).

**5.11    Brokers.** No broker or other party entitled to a commission is involved in connection with this transaction other than DebtX.

**6.    Seller's Representations, Warranties and Recourse.** This sale is made without recourse against the Seller, or representation or warranty by the Seller, whether expressed, implied or imposed by law, of any kind or nature except as provided in Section 6 of this Agreement. The Seller has attempted to provide accurate information to all prospective Bidders. Without limiting the generality of the foregoing, the Seller does not represent, warrant or insure the accuracy or completeness of any information or its sources of information contained in the Bid Package or in the Review File, Collateral Documents, Note(s) or Loan(s) (whether contained in originals, duplicate originals, copies, or magnetic media, including computer tapes and disks), including without limitation any reports or other information prepared by accountants, engineers, appraisers, environmental consultants or other professionals. The Seller has not, does not and will not make any representations or warranties with respect to the collectibility of any Loan or the value or condition of the Mortgaged Property.

**6.1    Representations and Warranties by the Seller.** The Seller hereby represents and warrants as follows:

**6.1.1    Organization, Existence, Etc.** The Seller is duly formed or organized, validly existing and in good standing under the laws of the jurisdiction of its formation or organization, and is registered or qualified to conduct business in all other jurisdictions in which the failure to

execution and delivery of the Sale Documents and the consummation of the transactions contemplated thereby together with such other certificates of incumbency and other evidences of authority as the Seller or the Buyer or their respective counsel may reasonably require.

**8.     Certain Obligations of the Buyer.**

**8.1     Collection Practices.** The Buyer will not violate any laws relating to unfair credit collection practices in connection with the Loan(s). The Buyer hereby agrees to indemnify the Seller and to hold it harmless from and against any and all claims, demands, losses, damages, penalties, fines, forfeitures, judgments, legal fees and any other costs, fees, and expenses incurred by the Seller as a result of (1) a breach by the Buyer of the aforesaid warranty or (2) any claim, demand, or assertion that, after the Closing Date, the Seller was in any way involved in or had in any way authorized any unlawful collection practices in connection with the Loan(s) transferred to the Buyer pursuant to this Agreement. The Buyer agrees to notify the Seller within ten (10) Business Days of notice or knowledge of any such claim or demand.

**8.2     Reporting to or for the Internal Revenue Service.** The Buyer agrees to submit all Internal Revenue Service Forms and Information Returns for the Loan(s) for the period during which it owns the Loan(s).

**8.3     Buyer's Duties Regarding Litigation.**

**8.3.1** If any Loan is the subject of pending litigation on the Closing Date (including bankruptcy, arbitration and other alternate dispute resolution proceedings), the Buyer shall provide the attorney representing the Seller, within ten (10) days after Closing, the name of the attorney selected by the Buyer to represent the Buyer's interests in the litigation. The Buyer shall within twenty (20) days after Closing notify the clerk of the court, all counsel of record and all arbitrators and mediators, as applicable, that ownership of the Loan(s) was transferred from the Seller to the Buyer. The Buyer shall have its attorney file appropriate pleadings with the court within thirty (30) days after the Closing substituting the Buyer's attorney for the Seller's attorney and also removing the Seller as a party to the litigation (except to the extent claims have been made against the Seller) and substituting the Buyer as the real party in interest. The Seller will notify its attorney to cease participating in the litigation upon the first to occur of (a) the filing of the pleading substituting the Buyer's attorney for the Seller's attorney, or (b) thirty (30) days after Closing. The Seller may proceed unilaterally to have such matter dismissed, either with or without prejudice, in the event such substitution is not effected as prescribed by this Section 8.3.1.

**8.3.2** Buyer shall not litigate or prosecute any claim in the name of the Seller, and the Buyer shall not intentionally or unintentionally, through misdisclosure or nondisclosure, mislead or conceal its identity or its ownership of the Loan(s).

**8.3.3** The Seller in its sole discretion may terminate this Agreement if, following the date

8

hereof but prior to Closing, any Loan becomes the subject of litigation between any Debtor and the Seller. In the event of such termination, the Earnest Money shall be returned to the Buyer, the Information (as defined in the Confidentiality Agreement) shall be returned to the Seller, and this Agreement shall be of no further force and effect. Nothing contained herein shall be construed to obligate the Seller to repurchase any Loan in the event any litigation is commenced with respect to the Loan(s) after the Closing.

**8.4** **Buyer's Duties Regarding Loan(s) in Bankruptcy.** In accordance with Bankruptcy Rule 3001(e), the Buyer shall take all actions necessary to timely file (i) proofs of claims in pending bankruptcy cases involving any Loan(s) purchased for which the Seller has not already filed a proof of claim, and (ii) evidence of the terms of the purchase of such Loan(s), both of the same to be filed with the appropriate bankruptcy court in cases in which the Seller has filed proofs of claims. Nothing contained in this Section shall relieve the Buyer of its obligations set forth in Section 8.3 above

**9.** <u>Notice to Obligor</u>. The Buyer shall, within five (5) Business Days after the Closing Date, give notice of this transfer to the Obligor, with a copy to the notice to the Seller, by first class U.S. Mail.

**10.** <u>Notice of Claim</u>. The Buyer shall immediately notify the Seller of any claim, threatened claim, or any litigation against the Seller, DebtX, or any of their predecessors or affiliates, which may come to its attention relating to the Loan(s).

**11.** <u>Notices</u>. All notices or deliveries required or permitted hereunder shall be in writing and delivered personally or by facsimile or generally recognized overnight delivery service, and shall be deemed given (a) when delivered, if delivered personally or by facsimile, or (b) on the following Business Day, if sent by generally recognized overnight delivery service, in each case to the Seller at the following address, to the Buyer at the address set forth on the signature page below, or such other address as either party may hereafter designate by notice given in compliance with this Section to the other party:

SELLER:   Comerica Bank
          1508 W. Mockingbird Lane
          Dallas, TX 75235
          Attention: Joe W. Sullivan
          Telephone Number: (214) 589-4718
          Fax Number:       (214) 589-4724

[The Seller information will change depending on the Loan and its State of origin]

And in each case with a copy to:

   The Debt Exchange, Inc.
   101 Arch Street
   Suite 400
   Boston, Massachusetts 02110
   Attention: William F. Looney III, Esq.

   Telephone Number:   (617) 443-9199
   Facsimile Number:   (617) 443-9099

**12.   Use of Seller's Name.** Buyer shall not use or permit the use by its agents, successors or assigns, of any name which is similar to the name of the Seller. Buyer will not represent or imply that it is affiliated with, authorized by, or in any way related to the Seller. Buyer and the Seller agree and stipulate that any breach of the provisions of this Section will result in actual and substantial damages to the Seller in an amount that cannot be determined with precision. It is therefore agreed that, in the event of such breach, Buyer shall pay the sum of Twenty-Five Thousand and No/100 Dollars ($25,000.00) to the Seller for each such breach, as liquidated damages, together with such fees and expenses as the Seller may incur in preventing further breaches or the continuation of a breach or in recovering liquidated damages.

**13.   Release of Seller.** If Buyer shall compromise, settle, or release any indebtedness or obligation which results in less than a full payoff of any Loan, Buyer shall cause all Debtors to simultaneously release and discharge the Seller and each of the Seller's affiliates and all of their respective officers, directors, employees, agents, attorneys, representatives and assigns (collectively, the "Released Parties") from all claims, demands and causes of action which any such Debtor may have against any such Released Party arising from or growing out of any act or omission occurring prior to the date of such release. Such release shall contain the form and content of Attachment 4 hereto. If Buyer fails to obtain such release, Buyer shall protect, save, and hold the Seller and the other Released Parties harmless from any expense, damage or liability of each and every nature whatsoever suffered or incurred by the Seller or any Released Party that could have been prevented had Buyer obtained said release. Buyer acknowledges that the Seller and the other Released Parties are intended beneficiaries of this Section 13.

10

**14.** **Severability**. Each part of this Agreement is intended to be severable. If any term, covenant, condition or provision hereof is unlawful, invalid, or unenforceable for any reason whatsoever, and such illegality, invalidity, or unenforceability does not affect the remaining parts of this Agreement, then all such remaining parts hereof shall be valid and enforceable and have full force and effect as if the invalid or unenforceable part had not been included.

**15.** **Construction**. Unless the context otherwise requires, singular nouns and pronouns (including defined terms), when used herein, shall be deemed to include the plural and vice versa, and impersonal pronouns shall be deemed to include the personal pronoun of the appropriate gender.

**16.** **Assignment**. This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including any attachments hereto, shall be binding upon, and shall inure to the benefit of, the undersigned parties and their respective heirs, executors, administrators, representatives, successors, and assigns. Notwithstanding anything herein to the contrary, however, Buyer shall not assign its rights, or delegate its obligations or duties under this Agreement without the prior written consent of the Seller, except that Buyer may assign its rights under this Agreement to an affiliate, and in the event of any assignment both Buyer and assignee shall be jointly and severally liable hereunder.

**17.** **Prior Understandings**. This Agreement supersedes any and all prior discussions and agreements between the Seller and the Buyer with respect to the purchase of the Loan(s) and other matters contained herein, and this Agreement contains the sole and entire understanding between the parties hereto with respect to the transactions contemplated herein.

**18.** **Survival**. Each and every covenant made by the Buyer or the Seller in this Agreement shall survive the closing and shall not merge into the closing documents, but instead shall be independently enforceable, provided, however, that the Seller's representations and warranties set forth in Section 6.1 shall expire six months after the Closing Date and the Seller's representations and warranties set forth in Section 6.2 shall expire ninety days after the Closing Date, after which time no claim for breach of Seller's representations or warranties may be made.

**19.** **Choice of Law**. This Agreement and claims arising out of or in connection therewith shall be governed by and construed and enforced in accordance with the laws of the state of the Seller's incorporation or organization, or, if Seller is organized under the laws of the United States or a foreign jurisdiction, the state of the Seller's principal place of business, and the Buyer consents to jurisdiction in the federal or state courts situated in the city or county of the Seller's principal place of business.

**20.** **Loan Sale Without Recourse and No Warranties or Representations by the Seller**. THE

SALE OF THE LOAN(S) SHALL BE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY OTHER THAT AS SPECIFICALLY PROVIDED IN SECTION 6 OF THIS AGREEMENT, AND BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY DISCLAIMS, AND BUYER IS NOT RELYING ON SELLER WITH RESPECT TO, ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO: (a) THE MARKETABILITY, VALUE, QUALITY OR CONDITION OF THE LOAN(S); (b) THE VALIDITY, ENFORCEABILITY, OR COLLECTABILITY OF THE NOTES OR LOAN AGREEMENTS EVIDENCING THE LOAN(S) OR ANY OF THE COLLATERAL DOCUMENTS, (c) THE VALIDITY, PRIORITY, OR PERFECTION OF THE SECURITY INTERESTS OR OTHER LIENS CREATED BY THE COLLATERAL DOCUMENTS, (d) THE STATE OF TITLE TO THE LOAN(S) OR ANY COLLATERAL FOR ANY LOAN, (e) THE PRIORITY OF SECURITY INTERESTS OR OTHER LIENS PURPORTING TO SECURE ANY LOAN, (f) THE ZONING, TAX CONSEQUENCES, PHYSICAL CONDITION, UTILITY CAPACITY OR COMMITMENT FOR UTILITY CAPACITY, OPERATING HISTORY OR PROJECTIONS, VALUATIONS, GOVERNMENTAL APPROVALS OR GOVERNMENTAL REGULATIONS WHICH MAY BE APPLICABLE, COMPLIANCE WITH SPECIFICATIONS, LOCATION, EXISTENCE OF, OR COMPLIANCE WITH APPLICABLE LAWS, RULES, REGULATIONS, RESTRICTIVE COVENANTS OR OTHER ENCUMBRANCES OF, TO OR BY THE PROPERTIES SECURING (OR PURPORTING TO SECURE) ANY LOAN, (g) COMPLIANCE BY ANY DEBTOR OR ANY PROPERTY SECURING (OR PURPORTING TO SECURE) ANY LOAN WITH ANY FRANCHISE, MANAGEMENT OR OPERATING AGREEMENT, ANY LIQUOR, USE OR OCCUPANCY PERMIT, (h) THE ADEQUACY OF DESIGN, SUITABILITY, QUALITY, DESCRIPTION, DURABILITY, OR QUALITY OF MATERIAL OR WORKMANSHIP OF THE PROPERTIES WHICH ARE COLLATERAL FOR ANY OF THE LOAN(S), (i) THE COMPLIANCE BY SELLER WITH ANY AND ALL APPLICABLE FEDERAL, STATE OR LOCAL LAWS OR ANY RULES, REGULATIONS, OR ORDINANCES PROMULGATED PURSUANT THERETO, PERTAINING TO OR IN ANY MANNER RELATED TO ANY OF THE LOAN(S) OR THE PROPERTIES WHICH ARE COLLATERAL FOR ANY OF THE LOAN(S) OR ANY STRUCTURES AND IMPROVEMENTS LOCATED THEREON, (j) THE COMPLIANCE OF ANY LOAN WITH ANY STATE OR FEDERAL USURY LAWS OR REGULATIONS, (k) THE ACCURACY OR COMPLETENESS OF ANY INFORMATION, DATA, STATEMENTS, AMOUNTS OR SOURCES OF INFORMATION CONTAINED IN THE REVIEW FILES, COLLATERAL DOCUMENTS, OR LOAN(S), OR (l) ANY OTHER MATTERS PERTAINING TO THE LOAN(S) OR THE PROPERTIES WHICH ARE COLLATERAL (OR PURPORT TO BE COLLATERAL) FOR ANY OF THE LOAN(S). IN ADDITION, SELLER EXPRESSLY DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WITHOUT LIMITING THE FOREGOING, SELLER DOES NOT MAKE AND HAS NOT MADE ANY REPRESENTATION OR WARRANTY REGARDING THE PRESENCE OR

ABSENCE OF ANY HAZARDOUS SUBSTANCES ON, UNDER OR ABOUT THE PROPERTIES SECURING THE LOAN(S) OR THE COMPLIANCE OR NONCOMPLIANCE OF SUCH PROPERTIES WITH THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT, THE SUPERFUND AMENDMENT AND REAUTHORIZATION ACT, THE RESOURCE CONSERVATION RECOVERY ACT, THE FEDERAL WATER POLLUTION CONTROL ACT, THE FEDERAL ENVIRONMENTAL PESTICIDES ACT, THE CLEAN WATER ACT, THE CLEAN AIR ACT, ANY APPLICABLE STATE NATURAL RESOURCES CODE, ANY APPLICABLE STATE WATER CODE, ANY APPLICABLE STATE SOLID WASTE DISPOSAL ACT, ANY APPLICABLE STATE HAZARDOUS SUBSTANCES SPILL PREVENTION AND CONTROL ACT, ANY SO CALLED FEDERAL, STATE OR LOCAL "SUPERFUND OR "SUPERLIEN" STATUTE, OR ANY OTHER STATUTE, LAW, ORDINANCE, CODE, RULE, REGULATION, ORDER OR DECREE REGULATING, RELATING TO OR IMPOSING LIABILITY (INCLUDING STRICT LIABILITY) OR STANDARDS OF CONDUCT CONCERNING ANY HAZARDOUS SUBSTANCES OR THE HEALTH OR SAFETY OF ANY PERSON OR PROPERTY OR THE ENVIRONMENT. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT BUYER HAS BEEN GIVEN THE OPPORTUNITY TO INSPECT THE LOAN(S), AND THEREFORE, BUYER WILL BE PURCHASING THE LOAN(S) PURSUANT TO ITS INDEPENDENT EXAMINATION, STUDY, INSPECTION AND KNOWLEDGE OF THE LOAN(S). BUYER IS RELYING UPON ITS OWN DETERMINATION OF THE QUALITY, VALUE AND CONDITION OF THE LOAN(S) AND THE PROPERTY SECURING PAYMENT OF THE LOAN(S), AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE LOAN(S) WAS OR WILL BE OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE AND WILL NOT RE OBLIGATED TO MAKE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION .AND SELLER MAKES NO REPRESENTATION AS TO THE INFORMATION WHICH, IF KNOWN TO BUYER, COULD HAVE A MATERIAL IMPACT ON ITS DETERMINATION OF VALUE OF THE LOAN(S). The Closing shall constitute an acknowledgment by Buyer that the Loan(s) were accepted without representation or warranty, express or implied and otherwise in an "AS IS," "WHERE IS" and "WITH ALL FAULTS" condition based solely on Buyer's own inspection except as provided in Section 6 of this Agreement. Except as provided by Section 25, no event or condition shall entitle Buyer to have the Loan(s) repurchased by the Seller.

21. **DTPA Waiver.** Buyer has knowledge and experience in financial and business matters that enable Buyer to evaluate the merits and risks of the transactions contemplated hereby. Buyer is not in a disparate bargaining position vis-a-vis the Seller, and Buyer hereby waives, to the maximum extent permitted by law, any and all rights, benefits and remedies under the Texas Deceptive Trade Practices - Consumer Protection Act set forth in Subchapter E of Chapter 17 of the Texas Business and Commerce Code (other than Section 17.555 thereof) with respect to any matters pertaining to this Agreement or the transaction contemplated hereby.

13

[Use for Texas loans only; waiver may be modified to address Michigan, California and other applicable State's comparable laws]

**22.    Jury Trial.** TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE BUYER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY IN RESPECT OF ANY CONTROVERSY CONCERNING THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**23.    Time of the Essence.** Time is of the essence of all provisions of this Agreement.

**24.    Remedies and Recourse.** In the event that the Seller shall have any liability hereunder or in connection with the transactions contemplated hereby with respect to the Loan(s), the Buyer's sole claim shall be against Seller and Buyer shall not make any claim against DebtX, its parents, subsidiaries, affiliates, agents or employees. DebtX shall not have any personal liability hereunder or in connection with the transactions contemplated hereby.

**25.    Limitation of Damages.** Neither party shall be liable to the other party for any consequential, special or punitive damages. If after the Closing Date the Seller breaches any representation or warranty set forth in Section 6 which has not expired, the Buyer shall give written notice to the Seller within 30 days of discovery of such breach, and the Seller shall have the right to cure such breach during a period of ninety (90) days after receipt of such notice. If such breach or failure is not duly cured within such ninety (90) day period, or not waived or consented to in writing by the Buyer, the Seller shall elect, in its sole discretion, to either (i) repurchase the Loan(s) at the Repurchase Price, or (ii) to pay to Buyer the Buyer's actual damages directly caused by such breach, up to an amount not exceeding the Repurchase Price. The Buyer's remedies set forth in this Section 25, shall be the exclusive remedies of the Buyer, and the Buyer shall not be entitled to any other rights, remedies or other relief, at law or in equity, for Seller's breach of any representation or warranty set forth in this Agreement.

[Signatures on Following Page]
[Remainder of Page Intentionally Left Blank]

EXECUTED AS AN INSTRUMENT UNDER SEAL AS OF THE DATE WRITTEN ABOVE.

BUYER*:  SELLER:

CadleRock, L.L.C.  COMERICA BANK
By: The Cadle Company, Manager

By: _/s/ William E. Shaulis_  By: _/s/ Joseph W. Sullivan_
　　　　　　　　　　　　　　　　Joseph W. Sullivan

Title: William E. Shaulis,  Title:  Senior Vice President
　　　　Exec. V.P.

Buyer's Address for Notice:

100 N. Center Street
Newton Falls, OH 44444

Attention: _____

Telephone Number: (330) 872-0918
Fax Number: (330) 872-5367

* THE BUYER ACKNOWLEDGES AND ACCEPTS THAT THE BID PROCESS SPECIFICALLY REQUIRED THAT THIS AGREEMENT, THE OTHER SALE DOCUMENTS AND ALL OTHER DOCUMENTS CONTAINED IN THE BID PACKAGE BE SIGNED WITHOUT MODIFICATION THERETO, AND THAT ANY SUCH MODIFICATION, IF MADE BY THE BUYER, ARE OF NO FORCE AND EFFECT. THE BUYER AGREES THAT THE FAILURE OR REFUSAL OF THE SELLER TO ALTER OR MODIFY IN ANY WAY THE TERMS OR CONDITIONS OF THIS AGREEMENT SHALL NOT AFFECT THE OBLIGATION OF THE BUYER TO PERFORM HEREUNDER.