**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., <u>et</u> <u>al.</u>, | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## <u>DEBTORS' POST-TRIAL BRIEF</u>

SMITH HULSEY & BUSEY
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)

Attorneys for the Debtors

## Table of Contents

                                                                                    Page

I.    Material Facts Established at Trial ........................................................................ 1

II.   Argument    ....................................................................................................... 5

      A.    A motion for stay relief is a procedurally improper means
            for determining the rights of a debtor and its landlord
            under a lease which has not yet been assumed or rejected ........................ 5

      B.    Sarria's pre-petition demand for payment of the 1999-
            2004 property taxes did not constitute a post-petition
            default under the Lease ........................................................................... 6

      C.    Sarria failed to establish "cause" for relief from stay
            under 11 U.S.C. §362(d)(1) ...................................................................... 7

            1.    Lifting the stay would not be in the interest of judicial
                  economy ........................................................................................... 9

            2.    Sarria's claim is directly tied to, and interferes with,
                  the Debtors' Chapter 11 cases ........................................................... 9

            3.    Allowing a state court resolution of the underlying
                  dispute would prejudice the Debtors and their estates ................... 10

      D.    Sarria is precluded from seeking relief under 11 U.S.C. § 362(d)(2) ...... 12

            1.    Sarria did not allege in its Motion any issues relevant to
                  11 U.S.C. §362(d)(2) ..................................................................... 12

            2.    Sarria failed to establish that the Debtors lack equity
                  in the Lease ................................................................................... 13

            3.    The evidence at trial established that Store 237 was among
                  those being considered for the Debtors' post-confirmation
                  operations and, therefore, necessary for the Debtors'
                  effective reorganization ................................................................. 14

      E.    The stay relief requested by Sarria over a good faith dispute
            should be denied ................................................................................... 15

III.  Conclusion ..................................................................................................... 17

i

## DEBTORS' POST-TRIAL BRIEF

Pursuant to the Court's instructions at the evidentiary hearing held on February 13, 2006, on Motion for Relief from Stay filed by Sarria Enterprises, Inc. ("Sarria"), Winn-Dixie Stores, Inc. ("Winn-Dixie") and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors")[1] submit this post-trial brief.

## I.      Material Facts Established at Trial

1.       Winn-Dixie is a tenant under a lease dated December 18, 1980 (the "Lease"), for a store (Store No. 237) located at 12254 Southwest 8th Street, Miami, Florida (the "Property") (Debtors' Exhibits 1-4).

2.       Sarria was the landlord under the Lease at all times relevant to this contested matter (Debtors' Exhibits 1-4).

3.       Pursuant to this Court's Order Granting Third Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property, Winn-Dixie has until March 20, 2006 to assume or reject the Lease (Docket No. 4682).

4.       On June 3, 2005, Sarria filed its Motion for Relief from Stay by which it sought relief from the automatic stay to "commence eviction procedures" in state court due to Winn-Dixie's alleged default under the Lease (the "Motion") (Docket No. 1542).  The *sole* default alleged by Sarria in its Motion was that Winn-Dixie

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

failed to pay its pro rata portion of tax liabilities relating to the Property for the tax years 1999 through 2004 (the "Disputed Tax Liability").  Sarria alleged in its Motion that, pursuant to paragraph 37 of the Lease, Winn-Dixie owes the amount of $124,035.70.

5.       No other default by Winn-Dixie under the Lease was alleged in Sarria's Motion.

6.       On January 20, 2006, the Debtors' filed their Response in Opposition to Sarria's Motion for Relief From Stay  (the "Response") (Docket No. 5229).

7.       A hearing on the Motion was initially scheduled for June 27, 2005. After several continuances stipulated to by the parties (Docket Nos. 2767, 3256, 3700 and 5257), an evidentiary hearing on the Motion was held on February 13, 2006 (Tr. 1-52)[2].

8.       Sarria made its demand for payment of Winn-Dixie's pro rata share of the Disputed Tax Liability by letter dated January 26, 2005 -- 26 days prior to Winn-Dixie's petition date of February 21, 2005 (Motion, para. 4; Tr. 29-30).[3]  The January 26, 2005 letter was the first time Winn-Dixie became aware that this debt was being demanded by Sarria (Tr. 43-44).

---

[2]    "(Tr. ___)" refers to the transcript and page number of the evidentiary hearing held on the Motion on February 13, 2006 (Docket No. 6084).

[3]    Sarria did not file any motion with this Court seeking (i) to compel Winn-Dixie to make an early determination of its rejection or assumption of the Lease on Store 237 or (ii) to compel Winn-Dixie to pay the disputed real property tax liability as an administrative claim.

9.    The following material facts were also established at trial:

A.    The Lease is one of approximately 585 leases which Winn-Dixie is presently evaluating under its business plan for the purposes of assuming or rejecting (Tr. 40);

B.    The statutory period for Winn-Dixie to make its assumption or rejection determination as to these leases, including Sarria's Lease, has been extended by order of this Court and will not expire any earlier than March 20, 2006 (Tr. 40);

C.    Winn-Dixie is current on all of its rent obligations to Sarria with regard to Store 237, except for the Disputed Tax Liability and a pro rata share of the real property tax liability for January 1 through February 20, 2005 (Tr. 28); and

D.    Paragraph 37 of the Lease governs when Winn-Dixie's debt for real taxes becomes due and provides, in part, that:

> Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant, and **such additional rental shall be payable by Tenant on demand after payment by Landlord.**

> (Debtors' Exhibit 1; Tr. 7-8).

10.    As to the prejudice Winn-Dixie would incur if the stay relief requested by Sarria was granted, the testimony of Winn-Dixie's witness, Jay Castle, was undisputed:

> Q.    And, sir, have you had an opportunity to reflect on whether or not the company would be prejudiced if

3

Sarria was granted relief from the stay to pursue this prepetition unsecured claim?

A.    Yes, I have reflected on that issue.

Q.    How would the company be prejudiced?

A.    In a number of ways.  We would be forced to litigate this issue in a forum that would not be convenient for our reorganization process, most likely in South Florida.  We would face the prospect of multiple landlords seeking similar relief.  We would expend additional litigation expenses fending off those efforts. And it would generally interfere with the attention of management which right now is very closely focused on preparing and filing a plan of reorganization.

(Tr. 48).

11.    In contrast, the Landlord's witness, Francisco Sarria, testified that the "impact" of Winn-Dixie's failure to pay the Disputed Tax Liability is that the Landlord must pay its debts relating to the Property (the mortgage, insurance and real estate tax liabilities) notwithstanding "Winn-Dixie's failure to pay these sums":

Q.    Could you describe for the court what impact the, if Winn-Dixie's failure to pay these sums may have with respect to your other tenants, your other lease holder obligations?

A.    I have to pay -- Winn-Dixie is not paying is -- is -- I still have to pay my mortgage, I have to pay my real estate tax.  If I default in any of the insurance premiums and any of my real estate tax payments, I'm in default with the entire center, that's the obligation that I have under the lease.  Whether it's Winn-Dixie or any other tenant I have to pay these fixed costs rain or shine.

(Tr. 25).

4

## II.   Argument

**A.   A motion for stay relief is a procedurally improper means for determining the rights of a debtor and its landlord under a lease which has not yet been assumed or rejected.**

A motion for relief from stay under Section 362(d) is a procedurally improper means for determining the rights of a debtor-tenant and its landlord under an executory non-residential lease where the time by which the debtor has to assume or reject the lease has not yet expired.  *See Bistrian v. East Hampton Sand & Gravel Co., Inc., ( In re East Hampton Sand & Gravel Co., Inc.),* 25 B.R. 193 (Bankr. E.D.N.Y. 1982).

In *Bistrian*, the Bankruptcy Court held that the exercise of a landlord's rights under Section 362(d) are pre-empted until the debtor has made its determination of whether to accept or reject its lease with that landlord under Section 365(a):

> Having established the assumability of the lease this Court notes that the creditor is proceeding pursuant to 11 U.S.C. §362(d)(2).  ***Procedurally, this is an improper statutory vehicle for determining the rights of parties involved in a non-terminated leasing arrangement.***  Section 365(a) of the Bankruptcy Code as applied though § 1107, affords the debtor the discretionary right to assume the lease.  The decision on whether to assume is based upon business considerations and is only reviewable by this Court to verify its benefit to the estate and to see whether the debtor is capable of curing the default and providing assurance of future performance.  Within a Chapter 11 reorganization, the debtor is to be afforded a reasonable time to make its assumption or rejection decision, subject to the limitation that it must be made before confirmation.  ***Prior to the debtor's election, the exercise of creditors' rights under § 362(d) are preempted.***

> 25 B.R. at 197-98 (citations omitted).

5

In this case, the Debtors have until March 20, 2006 to make a decision on whether to assume or reject the Lease. Until the Debtors' time for making their decision expires, Sarria is preempted from exercising its rights under Section 362(d). For this reason alone, the stay relief requested by Sarria must be denied.

**B.      Sarria's pre-petition demand for payment of the 1999-2004 property taxes did not constitute a post-petition default under the Lease.**

Sarria's argument that Winn-Dixie's refusal to pay the Disputed Tax Liability constituted a post-petition default is directly contrary to a prior ruling by this Court in this case. Specifically, on November 15, 2005, this Court entered an order in this case in which it rejected a landlord's argument that Winn-Dixie's liability for pre-petition taxes under a lease constituted a post-petition default of that lease merely because the invoice for that debt was physically delivered to Winn-Dixie post-petition. *See* Order Denying Application for Payment of Administrative Expenses Filed by Transamerica Life Insurance Company (Docket No. 4182), and accompanying Findings of Fact and Conclusions of Law (Docket No. 4181) (determining that, regardless of when the landlord invoices a lessee's tax liability, the tax liability is pre-petition if it "accrued" pre-petition.). *Accord Handy Andy Home Improvement Ctrs., Inc.*, 144 F.3d 1125, 1126-28 (7th Cir. 1998); *El Paso Props. Corp. v. Gonzales (In re Furr's Supermarkets, Inc.)*, 283 B.R. 60, 68-70 (B.A.P. 10th Cir. 2002); *Newman v. McCrory Corp. (In re McCrory Corp.)*, 210 B.R. 934, 936-40 (S.D.N.Y. 1997); *Schneider & Reiff v. William Schneider, Inc. (In re William Schneider, Inc.)*, 175 B.R. 769, 771-73 (S.D. Fla. 1994).

6

In this contested matter, as in *Transamerica*, the Landlord's claim for the property taxes constitutes a pre-petition claim because:

(i)     the Disputed Tax Liability is for the years 1999-2004 (Motion, para. 4);

(ii)    Sarria first demanded payment of the Disputed Tax Liability from Winn-Dixie on January 26, 2005 (almost one month before the Debtors filed their Chapter 11 petitions) (Tr. 29-30 and 43-44); and

(iii)   paragraph 37 of the Lease expressly states that the taxes are payable "on demand" which, in this case, was made on January 26, 2005 (Tr. 29-30 and 43-44).

Because the Disputed Tax Liability accrued pre-petition, Sarria is the holder of a general unsecured claim.   The Debtors are precluded, as a matter of law, from paying the pre-petition claims of unsecured creditors without Bankruptcy Court authorization.  *See In re Chateaugay Corporation*, 80 B.R. 279 (S.D.N.Y. 1987).

**C.      Sarria failed to establish "cause" for relief from stay under 11 U.S.C. §362(d)(1).**

Section 362(d)(1) of the Bankruptcy Code provides that a court may terminate the automatic stay for "cause."   Because the Bankruptcy Code does not define the term "cause," determinations as to whether cause exists must be made on a case-by-case basis.  *See In re Paxson Electric Co.*, 242 B.R. 67, 70 (Bankr. M.D. Fla. 1999); *In re Consolidated Indus. Corp.*, 234 B.R. 84, 87 (Bankr. N.D. Ind. 1999).   Whether sufficient cause exists is a matter committed to the bankruptcy court's sole discretion. *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982); *Consolidated Indus.*, 234 B.R. at 87.   In determining whether cause exists, "a court

7

must balance the potential hardship that will be incurred by the party seeking relief if the automatic stay is not lifted, against the potential prejudice to the debtor and the debtor's estate." *Paxson,* 242 B.R. at 70. The party moving for relief has the burden of establishing a prima facie showing of cause. *See id; Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.),* 99 B.R. 591, 595 (D.Vt. 1989), *aff'd* 907 F.2d 1280, 1287 (2d Cir. 1990); *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990). When the moving party is an unsecured creditor, that creditor's burden is especially high. *See In re Tristar Automotive Group, Inc*., 141 B.R. 41 (Bankr. S.D.N.Y. 1992) (absent extraordinary circumstances, unsecured creditors are not entitled to relief from the automatic stay) (citing *Sonnax,* 99 B.R. at 595; *In re Ronald Perlstein Enterprises, Inc.*, 70 B.R. 1005, 1009-10 (Bankr. E.D.Pa. 1987). If a moving party fails to establish a prima facie showing of cause, a motion for relief from stay cannot be granted. *See Paxson*, 242 B.R. at 70.

In determining whether an unsecured creditor has met its burden of establishing a prima facie showing of cause to lift the automatic stay, *Paxson* and other courts generally consider four factors:

> (i)    whether lifting the stay was in the interest of judicial economy;
>
> (ii)   whether the underlying dispute was directly tied to the bankruptcy case;
>
> (iii)  whether lifting the stay would interfere with the pending bankruptcy case; and
>
> (iv)   whether allowing a state court resolution of the underlying dispute would

> substantially prejudice the debtor and
> other interested parties.

*Paxson*, 242 B.R. at 70.

In this case, all four factors weigh in favor of the Debtors.

### 1.      Lifting the stay would not be in the interest of judicial economy.

Granting the relief requested by Sarria would result in a significant waste of judicial resources.  This Court is at least as capable as a state court of liquidating Sarria's claims.  Moreover, if Sarria were allowed to liquidate its claim in state court, any state court findings will likely need to be reviewed by this Court to resolve future objections to Sarria's potential claims.

Furthermore, it is quite possible that the Debtors will assume or reject the Lease within the next 60 to 90 days.  If the Debtors assume the Lease, the Debtors will be required by 11 U.S.C. §365 to cure any pre-petition defaults under the Lease, including those alleged in the Motion.   In that event, Sarria will be made whole without the need for protracted and expensive litigation.  Judicial economy, therefore, weighs heavily in favor of continuing the automatic stay and permitting Sarria's claim to be resolved through the ordinary chapter 11 process.

### 2.      Sarria's claim is directly tied to, and interferes with, the Debtors' Chapter 11 cases.

Sarria's claim for relief directly implicates and threatens to frustrate the Debtors' ability to assume the Lease under 11 U.S.C. §365.  The Debtors presently have until March 20, 2006 to decide whether to assume or reject the Lease. Permitting Sarria to pursue its remedies in state court at this time could result in a

9

termination of the Lease before the Debtors have made a determination as to whether to assume or reject the Lease. Because the Debtors' authority to assume the Lease arises out of the Debtors' Chapter 11 cases, Sarria's underlying dispute, which threatens to terminate that right, is directly tied to and interferes with the Debtors' Chapter 11 cases. The second and third factors of *Paxson*, therefore, also weigh heavily in favor of the Debtors.

###     3.     Allowing a state court resolution of the underlying dispute would prejudice the Debtors and their estates.

Granting Sarria's requested relief to pursue a pre-petition unsecured claim would prejudice the Debtors' reorganization efforts and the Debtors' estates in that:

(i)     the Debtors would be compelled to litigate these issues in a state court in South Florida which would interfere with Winn-Dixie's reorganization process (Tr. 48);

(ii)     the Debtors would be faced with the prospect of multiple landlords seeking similar relief (Tr. 48);

(iii)     the Debtors would expend additional litigation expenses defending such litigation (Tr. 48); and

(iv)     such litigation would generally interfere with the attention of management which is focused on the task of preparing and filing a plan of reorganization (Tr. 48).

Even a slight interference with the administration of the bankruptcy case is grounds to deny relief from the automatic stay. *See In re Curtis*, 40 B.R. 795, 806

(Bankr. D. Utah 1984); *In re Penn-Dixie Indus.*, *Inc.,* 6 B.R. 832, 835 (Bankr. S.D.N.Y. 1980).

Conversely, Sarria will incur no hardship if its request for relief from stay is denied.  Sarria testified at the hearing that it delayed seeking payment of these pre-petition tax liabilities from the Debtors for over five years (Tr. 30).  Moreover, even after it filed its Motion, Sarria entered into several stipulations agreeing to postpone the hearing on this Motion for another seven months (Tr. 28).  Sarria will suffer little, if any, harm if it is required to wait 60 to 90 days more to have its claim paid in full or liquidated pursuant to the chapter 11 process.

Moreover, except for the non-payment of the Disputed Tax Liability, the Debtors are current on all rental obligations under the Lease (Tr. 28).  Allowing Sarria to pursue eviction proceedings in the state court under these circumstances is far too harsh a consequence for the Debtors' non-payment based upon their good faith belief that the Disputed Tax Liability is a pre-petition general unsecured claim which cannot be paid without prior Court approval.  This is especially true when, as discussed above, it is possible that the Disputed Tax Liability will be paid in full upon the Debtors' assumption of the Lease.

Applying the four *Paxson* factors, Sarria failed to establish a prima facie showing of cause to lift the stay and  the Motion should be denied.

**D.**   **Sarria is precluded from seeking relief under §362(d)(2).**

      **1.**   **Sarria did not allege in its Motion any issues relevant to §362(d)(2).**

To be granted relief under 11 U.S.C. §362(d)(2), a movant must allege and prove that (i) the debtor lacks equity in the property, and (ii) the property is not necessary for the debtor's effective reorganization.  In this case, however, Sarria's Motion did not allege 11 U.S.C. §362(d)(2) or its elements as grounds for relief.

Having failed to allege 11 U.S.C. §362(d)(2) or its elements in its Motion, Sarria is precluded, as a matter of law, from seeking relief from stay on such grounds. See *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 814 (9th Cir. 1994):

> "[T]he main purpose of the complaint is to provide notice of what plaintiff's claim is and the grounds upon which the claim rests…[The] plaintiff must at least set forth enough details so as to provide defendant and the court with a *fair idea of the basis of the complaint and the legal grounds claimed for recovery*."
>
> > *Id.* at 814 (quoting *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990)) (emphasis in original).

Nor can Sarria successfully argue that Winn-Dixie implicitly consented at trial to litigate Section 362(d)(2) issues not presented by the pleadings because, as a matter of law, the introduction of evidence arguably relevant to pleaded issues cannot serve to give the opposing party fair notice of new issues.  *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1487 (11th Cir. 1987) (citing *Jimenez v. Tuna Vessel "Granada"*, 652 F.2d 415, 421 (5th Cir. 1981) and 6 C.

Wright & A. Miller, *Federal Practice and Procedure*, § 1493 at 462 (1971)).  In this case, all the issues raised at the hearing were arguably relevant to whether sufficient cause existed for lifting the stay pursuant to Section 362(d)(1).

Accordingly, any request by Sarria for relief under Section 362(d)(2) should be denied.[4]

### 2.    Sarria failed to establish that the Debtors lack equity in the Lease.

Even if this Court were inclined to consider Sarria's improper attempt to now rely upon Section 362(d)(2) for relief, Sarria's Motion still fails.  Section 362(d)(2) permits a court to lift the automatic stay to allow a creditor to commence an action against property of the estate if the debtor lacks equity in the property and the property is not necessary for the debtor's effective reorganization.

The party moving for relief under Section 362(d)(2) has the burden of proving by a preponderance of the evidence that the debtor has no equity in the property.  *See* 11 U.S.C. §362(g); *Matter of Foxcroft Square Co.*, 184 B.R. 671, 678 (E.D.Pa. 1995); *In re Opelika Mfg Corp.,* 66 B.R. 444, 447 (Bankr. N.D.Ill. 1986).  When the property at issue is an executory non-residential lease, the appropriate measure of equity is the difference between the lease price paid by the debtor and the current market price for the leased space.  *See In re Food Barn Stores, Inc.*, 159 B.R. 264, 267-68 (Bankr. W.D. Mo. 1993).  If the lease price paid by the debtor is less than the current market

---

[4]    It was for this same reason that this Court sustained the Debtors' objection to Sarria's attempt to introduce evidence at trial of alleged defaults other than Winn-Dixie's non-payment of the Disputed Tax Liability -- the Motion failed to provide notice of any such alleged defaults (Tr. 11-21).

price for the leased space, then the debtor has equity in the lease, and relief under Section 362(d)(2) should be denied. *Id*.

At the hearing, Sarria presented no evidence of the current market price for the Lease, or of any other measure of equity (Tr. 34-38). There is simply no evidence in the record from which the Court can conclude that the Debtors lack equity in the Lease.

Accordingly, because Sarria failed to establish by a preponderance of the evidence that the Debtors lack equity in the Lease, any request by Sarria for relief under Section 362(d)(2) should be denied.

> **3.    The evidence at trial established that Store 237 was among those being considered for the Debtors' post-confirmation operations and, therefore, necessary for the Debtors' effective reorganization.**

Since the Petition Date, the Debtors have exited from approximately 326 stores – some through assumption and assignment of the subject lease and others through lease rejection (Docket Nos. 4314 and 4682).[5]  Additionally, the Debtors have rejected leases for over 200 non-operating stores and facilities. (*Id.*) At present, the Debtors are lessees under approximately 585 remaining unexpired leases of non-residential real property, including, without limitation, unexpired leases for retail stores, distribution facilities and administrative offices. (*Id.*)

The statutory period within which the Debtors must assume or reject the remainder of these leases has been extended by order of this Court and will not expire

---

[5]    Motion for Order Under 11 U.S.C. §365(d)(4) Granting Third Extension of Time Within Which Debtors May Assume or Reject Unexpired Lease of Nonresidential Real Property and Order Granting Third Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property, respectively.

any earlier than March 20, 2006 (Tr. 40).  Without the benefit of this time period for assuming and rejecting their leases, the Debtors' ability to operate and preserve the going-concern value of their business for the benefit of all creditors and other parties in interest would be impaired (Docket Nos. 4314 and 4682).  Preserving the benefits of this time period, and maintaining the flexibility to assume or reject their unexpired leases, including the Sarria Lease, is necessary for the Debtors' effective reorganization (*Id.*).

Given the large number of unexpired leases that still exist in these proceedings, the Debtors have not yet made a final determination as to whether to assume or reject the Sarria Lease (Tr. 50).  This decision will likely be made before the time period for assuming or rejecting the Lease has expired.  Because Sarria's Motion threatens to impair the Debtors' ability to assume or reject the Lease before this time period has expired, Sarria's Motion should be denied.

### E. The stay relief requested by Sarria over a good faith dispute should be denied as "too harsh" and unwarranted.

Debtors' refusal to pay the Disputed Tax Liability is based upon a good faith dispute over whether such liability constitutes a pre-petition or post-petition obligation. (Response at 2-4). Under these circumstances, granting Sarria stay relief to commence eviction proceedings in state court would be harsh and unwarranted.  *See In re Consolidated Industries Corp.*, 234 B.R. 84, 87 (Bankr. N.D. Ind. 1999).

In *Consolidated*, a chapter 11 debtor did not pay its pro rata real estate tax liability under an unexpired lease because the debtor believed the taxes to be pre-petition obligations.  Although the court disagreed with the debtor, and held that the tax obligations accrued post-petition, the court determined that the stay should not be

15

lifted to allow the landlord to pursue state court remedies. In so holding, the court observed that cause did not exist to lift the automatic stay where the debtor's failure to pay real estate taxes was based on a good faith argument that the taxes accrued pre-petition, and the debtor dutifully made all monthly rental payments owing to its landlord. *Id.* at 87. The court therefore denied the requested stay relief as "too harsh" a consequence and "not warranted":

> In this case, relief from the automatic stay is not warranted at the present time. Since the case was filed, the debtor has dutifully made all of the monthly rental payments due its landlords. Its failure to pay the real estate taxes in question was based upon a good faith argument that it was not required to do so. More importantly, the cause of the landlords' complaint is a situation that can easily be rectified. Under these circumstances, granting them relief from the automatic stay, so that they may proceed to evict the debtor from its corporate offices and manufacturing facilities, would be a too harsh a consequence for the debtor's decision to litigate a legitimate dispute over its obligations under § 365(d)(3).

> *Consolidated Industries Corp.*, 234 B.R. at 87.

In this case, as in *Consolidated*, the Debtors have a good faith argument that the Disputed Tax Liability constitutes a pre-petition obligation. The stay relief requested by Sarria should therefore be denied as too harsh and unwarranted.

### III.    Conclusion

For the foregoing reasons, Sarria's Motion should be denied.


Dated: February 28, 2006.


SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By    */s/ D. J. Baker*                        By    */s/ James H. Post*
      D. J. Baker                              Stephen D. Busey
      Sally McDonald Henry                     James H. Post (175460)
      Rosalie W. Gray                          Beau Bowin

Four Times Square                        225 Water Street, Suite 1800
New York, New York  10036                Jacksonville, Florida  32202
(212) 735-3000                           (904) 359-7700
(212) 735-2000 (facsimile)               (904) 359-7708 (facsimile)
djbaker@skadden.com                      jpost@smithhulsey.com

Co-Counsel for Debtors                   Co-Counsel for Debtors

## **Certificate of Service**

I certify that a copy of the foregoing has been furnished electronically and/or by mail to Alan M. Burger, Esq., Burger, Trailor & Farmer, P.A., 1601 Forum Place, Suite 404, West Palm Beach, FL 33401; Michael A. Kaufman, Esq., Law Offices of Michael A. Kaufman, 1601 Forum Place, Suite 404, West Palm Beach, FL 33401; Matthew Barr, Esq., Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, New York 10005; John B. Macdonald, Esq., Akerman Senterfitt, 50 N. Laura Street, Jacksonville, Florida 32202; and Elena L. Escamilla, Esq., 135 W. Central Boulevard, Suite 620, Orlando, Florida 32806, this 28th day of February, 2006.



*s/James H. Post*
Attorney

00523287.DOC

18