UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                              Case No.: 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., et al.,    Chapter 11

      Debtors.                      Jointly Administered

_____/

### JOINDER OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' POST-TRIAL BRIEF WITH RESPECT TO MOTION FOR RELIEF FROM STAY OF SARRIA ENTERPRISES, INC.

The official committee of unsecured creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Winn-Dixie Stores, Inc. ("Winn-Dixie") and its affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submits this joinder to the Debtors' Post-Trial Brief (Docket No. 6163, the "Debtors' Brief") with respect to the Motion For Relief From Stay (Docket No. 1542, the "Motion") of Sarria Enterprises, Inc. ("Sarria"), and represents as follows:

    1.    The Committee agrees with the statement of facts, the legal arguments, and the assertions set forth in the Debtors' Brief, and hereby joins in the Debtors' Brief.

    2.    In further support of the Debtors' Brief, the Committee respectfully submits that Sarria does not have a basis to seek stay relief. Sarria, as party to an unexpired lease of non-residential real property, is limited to seeking relief under sections 503 and 365 of the Bankruptcy Code. See In re El

Paso Refinery, L.P., 220 B.R. 37, 43 (Bankr. W.D. Tex. 1998)
("[D]uring the period from the date of filing until the date on
which the [debtor] rejects or assumes an executory contract, the
non-debtor is bound to perform while the [debtor] temporarily is
not bound to perform . . . [t]he rights of a party to an
executory contract with the debtor are not "stayed" by section
362; those rights are rendered temporarily unenforceable by
section 365.") (citations and quotations omitted). See also In
re Enron Corp., No. 01-16034 (AJG) (decision regarding motions
by Natural Gas Pipeline Company of America and Trailbrazer
Pipeline Company et al., dated Jan. 25, 2002, at 20-21, a copy
of which is attached hereto as Exhibit A) ("Foreclosing a
debtor's options by permitting early termination through relief
from the stay is not in keeping with the strictures of section
365 permitting debtors a breathing spell in order to evaluate
whether to assume or reject a particular contract, thus
benefiting the estate as a whole.") (citations omitted).

3.   Consequently, as stated above, Sarria's sole
remedy is to file a motion to compel payment or compel
assumption or rejection of its lease. See El Paso, 220 B.R. at
44 ("By limiting the non-debtor party to the section 365
remedies, the value of the executory contract can be preserved

2

for the estate, while allowing the estate an appropriate time to

evaluate its options"). The Enron court further noted:

> If the contracts at issue are assumed, the
> Debtor must cure all pre- and post-petition
> defaults with respect to the contract, 11
> U.S.C. section 365(b), and the non-debtor
> party may be entitled to an administrative
> claim upon a subsequent breach or failure to
> fulfill the cure provisions.  If the
> contracts are rejected, then the outstanding
> default, unless established by the non-
> debtor as an administrative claim as a
> benefit conferred upon the estate, become
> pre-petition unsecured claims.  The Court
> notes that the movants' request at this time
> for an administrative expense claim is
> premature and can be resolved upon proper
> motion to this Court pursuant to section 503
> of the Bankruptcy Code.  In re Enron Corp.,
> No. 01-16034 (AJG) (decision dated Jan. 25,
> 2002, at 20-21).

**[CONTINUED ON NEXT PAGE]**

WHEREFORE, the Committee respectfully requests that the Bankruptcy Court sustain the Debtors' opposition and deny the Motion in its entirety.

Dated:  February 28, 2006

AKERMAN SENTERFITT

By: /s/ Patrick P. Patangan
John Macdonald
Florida Bar No. 230340
E-mail:john.macdonald@akerman.com
Patrick P. Patangan
Florida Bar No. 348340
E-mail: patrick.patangan@akerman.com
50 North Laura Street, Suite 2500
Jacksonville, Florida  32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

Co-counsel for Official Committee of
Unsecured Creditors of Winn-Dixie
Stores, Inc., et al.

and

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
Matthew S. Barr (MB 9170)
Michael E. Comerford (MC 7049)
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000

Co-counsel for Official Committee of
Unsecured Creditors of Winn-Dixie
Stores, Inc., et al.

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x

      In the Matter
         of           Case No.

1                         01-16034
ENRON CORP.,

         Debtors.

---------------------------------------x

         January 25, 2002

         United States Custom House
         One Bowling Green
         New York, New York 10004

     Motion by Natural Gas Pipeline Company of
America and Trailblazer Pipleline Company for relief
from stay and to compel Enron North American Corp. to
assume or reject executory contracts; Motion by
Southern California Gas Company setting date for
assumption or rejection of executory contracts and
adequate protection or in the alternative for relief
from stay; Motion by San Diego Gas & Electric Co. for
relief from stay and to compel the Debtor to assume
or reject executory contract; Motion by Superior
Industries International, Inc. for relief from stay
or to compel Enron Energy Services, Inc. to assume or
reject contract; Objection of Debtors to above
motions; Follow-up Re 2004 Hearing.

B E F O R E :

         HON. ARTHUR J. GONZALEZ,
             Bankruptcy Judge.

DOYLE REPORTING  INC.,    (212) 374-9516♀

1                                        2

2        1            ENRON CORP.

2        2  A P P E A R A N C E S :

2        3

2        4     WEIL GOTSHAL & MANGES, ESQS.

2        5         Attorneys for Debtors

2        6         767 Fifth Avenue

2        7         New York, New York  10153

2        8

2        9     BY:   PETER GRUENBERGER, ESQ., of Counsel

2       10          MARSHALL TURNER, ESQ. (via phone)

2       11

2       12     MILBANK TWEED HADLEY & MCCLOY, LLP, ESQS.

2       13         Attorneys for Creditors' Committee

2       14         1 Chase Manhattan Plaza

2       15         New York, New York 10005

2       16

2       17     BY:   LUC A. DESPINS, ESQ., of Counsel

2       18          MATTHEW S. BARR, ESQ., of Counsel

2       19

2       20     WILLKIE FARR & GALLAGHER, ESQS.

2       21         Attorneys for Wal-Mart Stores

2       22         787 Seventh Avenue

2       23         New York, New York 10019

2        24

2        25        BY:   MICHAEL HANDLER, ESQ., of Counsel

DOYLE REPORTING  INC.,    (212) 374-9516♀

2                                  3

3        1                ENRON CORP.

3        2    A P P E A R A N C E S (Continued) :

3        3

3        4        HAHN & HESSEN, ESQS.

3        5            Attorneys for Nisource

3        6            350 Fifth Avenue

3        7            New York, New York  11018

3        8

3        9        BY:   ROSANNE THOMAS MATZAT, ESQ., (via phone)

3        10

3        11       CHADBOURNE & PARKE, LLP, ESQS.

3        12           Attorneys for St. Paul Fire & Marine

3        13           30 Rockefeller Plaza

3        14           New York, New York 10112

3        15

3        16       BY:   DAVID M. LEMAY, ESQ., of Counsel

3        17           ANDREW ROSENBLATT, ESQ., of Counsel

3        18

3        19       TORRE, LENTZ, GAMELL, GARY & RITTMASTER, LLP

3        20           For Lumberman, Hartford, Safeco

| 3 | 21 | 2 Penn Plaza, Ste. 1500 |
| 3 | 22 | New York, New York 10121 |
| 3 | 23 | |
| 3 | 24 | BY:   LAWRENCE S. NOVAK, ESQ., of Counsel |
| 3 | 25 | |

DOYLE REPORTING  INC.,    (212) 374-9516°

| 3 | | 4 |

| 4 | 1 | ENRON CORP. |
| 4 | 2 | A P P E A R A N C E S (Continued) : |
| 4 | 3 | |
| 4 | 4 | UNITED STATES DEPARTMENT OF JUSTICE |
| 4 | 5 | OFFICE OF THE UNITED STATES TRUSTEE |
| 4 | 6 | 33 Whitehall Street, 21st Floor |
| 4 | 7 | New York, New York  10004 |
| 4 | 8 | |
| 4 | 9 | BY:   CAROLYN S. SCHWARTZ, ESQ., of Counsel |
| 4 | 10 | |
| 4 | 11 | KLESTADT & WINTERS, LLP ESQS. |
| 4 | 12 | Attorneys for Albertson's |
| 4 | 13 | 381 Park Avenue South |
| 4 | 14 | New York, New York 10016 |
| 4 | 15 | |
| 4 | 16 | BY:   TRACY L. KLESTADT, ESQ., (via phone) |
| 4 | 17 | SEAN C. SOUTHARD, ESQ. (via phone) |
| 4 | 18 | |

| 4 | 19 | TRAUB BONACQUIST & FOX, LLP, ESQS. |
| 4 | 20 | Attorneys for Superior |
| 4 | 21 | 655 Third Avenue |
| 4 | 22 | New York, New York  10017 |
| 4 | 23 | |
| 4 | 24 | BY:   ADAM H. FRIEDMAN, ESQ., (via phone) |
| 4 | 25 | |

DOYLE REPORTING  INC.,    (212) 374-9516♀

| 4 | | 5 |
| 5 | 1 | ENRON CORP. |
| 5 | 2 | A P P E A R A N C E S (Continued) : |
| 5 | 3 | |
| 5 | 4 | HENNIGAN BENNETT & DORMAN, ESQS. |
| 5 | 5 | Attorneys for Southern California Gas & |
| 5 | 6 | San Diego Gas & Electric |
| 5 | 7 | 601 S. Figueroa Street, Ste. 3300 |
| 5 | 8 | Los Angeles, California  90017 |
| 5 | 9 | |
| 5 | 10 | BY:  MICHAEL A. MORRIS, ESQ., (via phone) |
| 5 | 11 | |
| 5 | 12 | ADELMAN GETTLEMAN MERENS BERISH & CARTER |
| 5 | 13 | Attorneys for Safeco Insurance |
| 5 | 14 | 53 W. Jackson Boulevard, Ste. 1050 |
| 5 | 15 | Chicago, Illinois  60604 |

| | | |
|---|---|---|
| 5 | 16 | |
| 5 | 17 | BY:  CHAD GETTLEMAN, ESQ., (via phone) |
| 5 | 18 | BRAD BERISH, ESQ., (via phone) |
| 5 | 19 | |
| 5 | 20 | HODGSON RUSS |
| 5 | 21 | Attorney for Natural Gas, Trailblazer |
| 5 | 22 | One M&T Plaza, Ste. 2000 |
| 5 | 23 | Buffalo, New York  14203 |
| 5 | 24 | |
| 5 | 25 | BY:  GARRY M. GRABER, ESQ., (via phone) |

DOYLE REPORTING  INC.,    (212) 374-9516

| | | |
|---|---|---|
| 5 | | 6 |
| 6 | 1 | ENRON CORP. |
| 6 | 2 | |
| 6 | 3 | P R O C E E D I N G S |
| 6 | 4 | THE COURT:  Those of you who are here |
| 6 | 5 | by way of conference call, please identify |
| 6 | 6 | yourselves. |
| 6 | 7 | MR. FRIEDMAN:  Adam Friedman from |
| 6 | 8 | Traub Bonacquist and Fox for Superior Industries. |
| 6 | 9 | MR. MORRIS:   Michael Morris |
| 6 | 10 | appearing on behalf of Southern California Gas and |
| 6 | 11 | San Diego Gas and Electric. |
| 6 | 12 | MR. KLESTADT:  Tracy Klestadt and |
| 6 | 13 | Sean Southard for Albertsons. |

6      14          MR. GRABER:  Garry Graber for Natural

6      15  Gas Pipeline and Trailblazer Pipeline.

6      16          MS. MATZAT:  Rosanne Thomas Matzat on

6      17  behalf of the Nisource Inc. and entities.

6      18          MR. TURNER:  Marshall Turner on

6      19  behalf of the Debtors.

6      20          THE COURT:  All right.  And in court?

6      21          MR. BARR:  Matthew Barr for the

6      22  Committee.

6      23          MR. HANDLER:  Michael Handler from

6      24  Willkie Farr and Gallagher on behalf of Wal-Mart

6      25  Stores, Inc.

6                                    7

7      1          ENRON CORP.

7      2          THE COURT:  All right.  I will read

7      3  the decision and in reading the decision I may not

7      4  fully cite a case, but on the transcript it will

7      5  be cited by way of me giving the citation to the

7      6  court reporter after I read the decision in full.

7      7          Before the Court are motions to

7      8  compel certain of the Debtors to assume or reject

7      9  executory contracts, for adequate protection and

7      10  for relief from the stay filed by Natural Gas

7    11  Pipeline Company of America and Trailblazer

7    12  Pipeline Company, San Diego Gas & Electric Company

7    13  (hereinafter referred to as SDG&E) and Southern

7    14  California Gas Company.  A hearing on those

7    15  motions was held on January 16th, 2002.  Also

7    16  before the Court is a similar motion for an order

7    17  lifting the stay or compelling immediate

7    18  assumption or rejection filed by Superior

7    19  Industries International, Inc.  A hearing on the

7    20  Superior motion was held on January 23rd, 2002.

7    21        Pursuant to section 365(d)(2) of the

7    22  Bankruptcy Code, the debtor has until any time

7    23  prior to confirmation within which to assume or

7    24  reject an executory contract or unexpired lease of

7    25  residential real property or of personal property.


DOYLE REPORTING  INC.,    (212) 374-9516

7                              8

8    1         ENRON CORP.

8    2  However, any party to such lease or contract may

8    3  move the Court to order the debtor to assume or

8    4  reject within the specific time.  The issues

8    5  before the Court are whether this Court should

8    6  compel the Debtor to immediately assume or reject

8    7  the contracts at issue just seven weeks into this

8    8  large and complex bankruptcy filing and to what

8    9  extent, if any, the parties are entitled to

8    10  adequate protection or relief from the automatic

8    11  stay.

8    12        Courts have uniformly examined the

8    13  issue in terms of what constitutes a reasonable

8    14  time for a debtor to assume or reject an executory

8    15  contract or lease.  Collier on Bankruptcy,

8    16  Paragraph 365.04[2], 365-30-31 (citing cases).

8    17  The Bankruptcy Code provides the debtor breathing

8    18  space until confirmation of a plan in which to

8    19  assume or reject.  Skeen v. Denver Coca-Cola

8    20  Bottling Co.(In re Feyline Presents, Inc.) 81 B.R.

8    21  623, 626 (Bankr. D.Colo. 1998).  The Second

8    22  Circuit stated in Theatre Holding Corp. v. Mauro,

8    23  681 F.2d 102, 105 (2d Cir. 1982), that "[w]hat

8    24  constitutes a reasonable time is left to the

8    25  bankruptcy court's discretion in light of the

DOYLE REPORTING  INC.,    (212) 374-9516♀

8                                  9

9    1        ENRON CORP.

9    2  circumstances of each case."

9    3        The Second Circuit in Theatre Holding

9    4  addressed several factors to consider:  A, the

9    5  damage the non-debtor will suffer beyond the

9    6   compensation available under the Bankruptcy Code;

9    7   B, the importance of the contract to the debtor's

9    8   business and reorganization; C, whether the debtor

9    9   has had sufficient time to appraise its financial

9   10   situation and the potential value of its assets in

9   11   formulating a plan; and D, whether exclusivity has

9   12   term interested.  681 F.2d at 105-06.  These

9   13   considerations were adopted by the court in the

9   14   Teligent, Inc. case, and applied to an executory

9   15   contract, 268 B.R., 723, 738-39 (Bankr. S.D.N.Y.

9   16   2001).  Furthermore, the Second Circuit in In re

9   17   Burger Boys, Inc. affirmed the use of the Theatre

9   18   Holding factors in considering what constitutes a

9   19   reasonable time for assumption or rejection, and

9   20   apply them to a debtor's motion for an extension

9   21   of time to assume or reject a lease.  94, F.3d,

9   22   755, 761 (1996).  The Second Circuit in Burger

9   23   Boys further noted that in appropriate cases,

9   24   additional circumstances in determining whether to

9   25   give a debtor an extension of time may include the

9                                  10

10    1            ENRON CORP.

10    2   complexity of the case facing the debtor, the

10    3   number of leases that the debtor must evaluate,

10    4  and the need for judicial determination of whether

10    5  a lease exists.  94 F.2d at 761.  This Court

10    6  relies upon the factors set forth in Theatre

10    7  Holding, as amplified by additional considerations

10    8  of the complexity of the case and the number of

10    9  leases set forth in Burger Boys in the context of

10    10  a motion to extend the time to assume or reject a

10    11  lease.  The additional considerations set forth in

10    12  Burger Boys lend further support for this Court's

10    13  holding today regarding executory contracts.

10    14        Prior to the petition date, the

10    15  Debtors had fully and timely performed their

10    16  obligations to San Diego Gas & Electric and

10    17  Southern California Gas Company and Superior.  For

10    18  a short period of time following the commencement

10    19  of these cases, the Debtors were unable to meet

10    20  all of their obligations to San Diego Gas &

10    21  Electric, Southern California Gas Company and

10    22  Superior, but the Debtors are currently

10    23  substantially performing under the agreements.

10    24        There has been no interruption in

10    25  supply of natural gas to Superior at any time

DOYLE REPORTING  INC.,    (212) 374-9516

11          1            ENRON CORP.

11          2    during the post-petition period.  When the Debtors

11          3    were unable to satisfy Superior's gas

11          4    requirements, Southern California Gas Company

11          5    fulfilled Superior's supply needs as required.

11          6    Accordingly, Superior has never been without a

11          7    natural gas supply for the relevant period of time

11          8    and has not shown any real likelihood that their

11          9    requirement will not be met.

11          10            With respect to Natural Gas and

11          11    Trailblazer, it's unclear what capacity is being

11          12    utilized under the storage and transportation

11          13    contracts.  The ambiguity lies in part in each

11          14    party's definition of "utilization."  Natural Gas

11          15    and Trailblazers argue, with respect to their

11          16    particular contracts, that storage capacity is

11          17    being used regardless of the withdrawal or

11          18    non-withdrawal of gas from storage and that

11          19    transportation capacity is being used in the

11          20    Debtor's right as a firm capacity holder and in

11          21    that the Debtor is seeking to release capacity.

11          22    The Debtors have indicated they will pay for

11          23    storage actually nominated and the gas actually

11          24    transported post-petition.  The Debtors also argue

11          25    that they are trying to release the capacity and

11                                              12

12        1              ENRON CORP.

12        2   if they cannot, Natural Gas and Trailblazer have

12        3   the ability to sell unused transportation and

12        4   storage capacity.  Natural Gas and Trailblazer

12        5   responded by stating that the value of the

12        6   transportation capacity that they could provide

12        7   could be significantly less than the value under

12        8   the current contracts given that such capacity

12        9   could only be provided on an "interruptible"

12       10   basis.  Furthermore, Natural Gas states that its

12       11   ability to mitigate damages with respect to

12       12   storage capacity is limited in that the vast

12       13   majority of the reserve storage capacity of the

12       14   Debtor currently contains gas.

12       15              Natural Gas and Trailblazers contend

12       16   in a Letter Brief submitted post-hearing that they

12       17   are entitled to an administrative claim for the

12       18   utilization of storage and transportation

12       19   capacity.  That issue is not before the Court at

12       20   this time and any argument for an administrative

12       21   claim, as well as regarding what constitutes an

12       22   administrative expense, should be brought before

12       23   the Court upon proper motion.

12       24              Finally, the Court notes that the

12       25   largest portion of the financial burden on Natural

DOYLE REPORTING  INC.,    (212) 374-9516♀

12                                            13

13        1              ENRON CORP.

13        2   Gas and Trailblazer - about 88 percent of the

13        3   capacity at issue - are related to North Shore and

13        4   Peoples and the movants are being paid in full

13        5   with respect to these contracts.

13        6              Furthermore, Southern California Gas

13        7   and SDG&E cite the accrual of imbalance charges.

13        8   The monetary defaults cited by any of the parties

13        9   are anticipated by the Bankruptcy Code which

13       10   provides for certain remedies to the non-debtor

13       11   party whether the contracts are assumed or

13       12   rejected.  Any harm cited by the parties with

13       13   respect to monetary damages relating to a breach

13       14   or the imposition of charges to such parties can

13       15   be addressed in the claims process.  The parties

13       16   have cited no harm that they will suffer beyond

13       17   the compensation available under the Bankruptcy

13       18   Code.  See Theatre Holding, 681 F.2d at 105-06

13       19   (debtor's continued occupation of property

13       20   pursuant to lease without paying for use or paying

13       21   taxes could damage lessors beyond compensation

13       22   provided in Code).

13       23              With respect to the remaining factors

13   24   to be considered by the Court, as noted by the

13   25   Court in Teligent, quotes "[a]bove all, the court

DOYLE REPORTING  INC.,    (212) 374-9516♀

13                                14

14   1          ENRON CORP.

14   2    should interpret a reasonable time consistent with

14   3    the broad purpose of Chapter 11, which is 'to

14   4    permit successful rehabilitation of debtors,'" end

14   5    quotes.  268, B.R. at 738-39 (citing In re Dunes

14   6    Casino Hotel, 63 B.R. 939, 949 (D.N.J 1986)

14   7    (quoting NLRB v. Bildisco & Bildisco, 465 U.S.

14   8    513, 527 (1984)).  Forcing an early decision to

14   9    assume or reject could generate a loss of value to

14   10   the estate.  The Debtors need time to evaluate the

14   11   importance of the contracts, but at this stage

14   12   have stated that the contracts may have potential

14   13   value to the estate.  Perhaps the potential

14   14   importance of giving the Debtors a reasonable time

14   15   to evaluate whether to assume or reject these

14   16   executory contracts is best shown by the objection

14   17   of the parties such as Albertsons, Inc., Wal-Mart

14   18   Stores and the Committee of Unsecured Creditors

14   19   opposing an entry of an order that would force the

14   20   Debtors to assume or reject immediately in a

14   21   hastened and uninformed fashion.

14    22        The Debtors are an international

14    23    corporation with assets and liabilities in the

14    24    billions of dollars.  It has only been

14    25    approximately seven weeks since the filing of its

DOYLE REPORTING  INC.,    (212) 374-9516♀

14                            15

15    1            ENRON CORP.

15    2    massive bankruptcy cases.  Furthermore,

15    3    exclusivity has not terminated.  As noted by the

15    4    court in In re Taber Farm Associates, quotes "it

15    5    appears that the debtors should at least be

15    6    allowed the 120 day period during which a debtor

15    7    is granted the exclusive right to formulate a plan

15    8    of reorganization, unless a compelling reason is

15    9    established for shortening the time."  115 B.R.

15    10    455, 457 (Bankr.S.D.N.Y. 1990) (citing Theatre

15    11    Holding Corp. v. Mauro, 681 F.2d 102 (2d Cir.

15    12    1982)).  As such, the Court finds that less than

15    13    two months into these bankruptcy cases is not a

15    14    reasonable time for the Debtors to appraise the

15    15    above cited factors and decide, in its business

15    16    judgment, whether to assume or reject the

15    17    contracts.  The Debtors are in the process of

15    18    evaluating over 25,000 contracts, and have

15    19   completed evaluation and rejected nearly 1,200

15    20   accounts (representing 6- to 700 contracts) as of

15    21   January 4, 2002.  Nevertheless, the Court finds in

15    22   weighing all the factors and the arguments of the

15    23   parties, the Debtors should be in a position to

15    24   assume or reject by a date certain.

15    25        The Court sees no reason to compel


DOYLE REPORTING  INC.,    (212) 374-9516

15                                16

16    1        ENRON CORP.

16    2   the Debtors to make a hasty decision whether to

16    3   assume or reject the contracts at issue without

16    4   being afforded a reasonable time to do so.

16    5   Accordingly, the Court finds that approximately

16    6   sixty days - April 2nd, 2002 - from today's date

16    7   should provide a reasonable time for the Debtors

16    8   to evaluate and determine whether to assume or

16    9   reject these particular contracts, without

16    10  prejudice to the ability of either party to come

16    11  back to this Court for an earlier determination or

16    12  an extension of time if the circumstances warrant.

16    13  With respect to Natural Gas' agreement to place

16    14  those contracts related to North Shore and Peoples

16    15  on a parallel track and defer consideration until

16    16  mid-February, the Court leaves those negotiations

16    17  to the parties and excludes those contracts from

16    18  its ruling.

16    19          Adequate Protection and Relief from

16    20  Stay:

16    21          Southern California Gas Company and

16    22  SDG&E argue that any time period the Debtors are

16    23  given should be conditioned upon a grant of

16    24  adequate protection.  Furthermore, if the Debtors

16    25  are unable to assume or assign, then all parties

DOYLE REPORTING  INC.,    (212) 374-9516♀

16                                    17

17    1          ENRON CORP.

17    2  are seeking some form of modification of the

17    3  automatic stay.  The movants do not cite any

17    4  persuasive authority for either relief.  In

17    5  support of their motion, the movants cite case law

17    6  in support of the proposition that while some

17    7  cases have held that the exclusive remedies for

17    8  parties executory contracts are contained within

17    9  Section 365, more recent cases have held that

17    10  adequate protection under Section 363 is available

17    11  to non-debtor parties to executory contracts.

17    12  However, the overwhelming weight of authority

17    13  provided by the movants involves leaseholds

17    14    interests.  See, e.g., In re P.J. Clarke's

17    15    Restaurant Corp., 265 B.R., 392, (Bankr. S.D.N.Y.

17    16    2001) (non-residential real property lease); In re

17    17    Reice, 88 B.R., 676 (Bankr. E.D.Pa. 1988) (lessor

17    18    of laundrymat equipment to a Chapter 13 debtor).

17    19         The Bankruptcy Code provides greater

17    20    protections for leasehold interests as evidenced

17    21    in Section 365(d)(3) and (d)(10).  Many leasehold

17    22    cases holding that the lessors are entitled to

17    23    adequate protection pursuant to Section 363 cite

17    24    the lessor's right to obtain continuing

17    25    performance by the Trustee or Debtor-in-Possession

DOYLE REPORTING  INC.,    (212) 374-9516♀

17                              18

18    1              ENRON CORP.

18    2    under the lease.  See P.J. Clarke's, 265 B.R. at

18    3    404; In re Ernst Home Center, Inc., 209 B.R. 955,

18    4    966 (Bankr. W.D. Wash. 1997); In re Mr. Gatti's,

18    5    Inc., 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994);

18    6    In re MS Freight Distribution, Inc., 172 B.R. 976,

18    7    980 (Bankr. W.D. Wash. 1994).  Accordingly, these

18    8    cases are inapplicable to the matter before the

18    9    Court.

18    10             Furthermore, some cases involving

18    11    leasehold interests have refused to give adequate

18    12  protection to a lessor prior to assumption or

18    13  rejection.  See Sweetwater, 40 B.R., 733 (Bankr.

18    14  D. Utah 1984); In re Wheeling-Pittsburgh Steel

18    15  Corp., 54 B.R. 385 (Bankr. W.D. Pa. 1985).  In

18    16  Sweetwater, the court engaged in a lengthy

18    17  analysis of the legislative history and concluded

18    18  that the sole remedy provided lessors is in

18    19  Section 365, not Section 363 or 361.  40 B.R. at

18    20  745.

18    21         The sole case cited by movants

18    22  involving an executory contract is In re

18    23  Charrington Worldwide Enterprises, Inc., 98 B.R.

18    24  65, (Bankr. M.D.Fla. 1989).  The contract in

18    25  Charrington involved an executory contract between

18                              19

19    1          ENRON CORP.

19    2  a travel agency debtor and a clearing house

19    3  corporation for airline tickets sold by travel

19    4  agents.  The court concluded that the clearing

19    5  house corporation was entitled to adequate

19    6  protection in the form of a bond while in the

19    7  process of assuming the executory contract.  98

19    8  B.R. at 70.

19    9        Even if the Court were to adopt the

19    10   analysis provided by the Court in Charrington,

19    11   which this Court is not inclined to do, this Court

19    12   finds that based on the facts and circumstances of

19    13   this case the movants are not entitled to adequate

19    14   protection.

19    15        Failing to grant relief from the stay

19    16   or order adequate protection to the non-debtor

19    17   party to an executory contract does not leave such

19    18   party without remedy.  The Bankruptcy Code

19    19   specifically provides remedies upon assumption and

19    20   rejection.  These remedies arguably provide the

19    21   equivalent to adequate protection and in some

19    22   instances, greater protections than those afforded

19    23   by obtaining relief from the stay.  See El Paso

19    24   Refinery, L.P., 220 B.R., 37, 45 (Bankr. W.D. Tex.

19    25   1998). "By limiting a non-debtor party to the

DOYLE REPORTING  INC.,    (212) 374-9516♀

19                          20

20    1        ENRON CORP.

20    2   Section 365 remedies, the value of the executory

20    3   contract can be preserved for the estate, while

20    4   allowing the estate an appropriate period of time

20    5   to evaluate its options." El Paso, 220 B.R. at

20    6   44.

20      7       Pursuant to Section 365, the

20      8    non-debtor party is bound to perform under the

20      9    terms of the contract and the debtor is given

20      10   until confirmation to evaluate whether to assume

20      11   or reject the contract.  In re Public Service Co.,

20      12   884 F.2d 11, 14 (1st Cir. 1989); In re Feyline

20      13   Presents, 81 B.R. at 627.  Nowhere in Section

20      14   365(d)(2) is adequate protection a prerequisite to

20      15   obtaining this breathing spell.  As noted by the

20      16   court in El Paso, an offer [or the Court's setting

20      17   of a specific time period] to assume or reject by

20      18   a date certain is a form of adequate protection

20      19   provided to the parties of an executory contract.

20      20   El Paso, 220 B.R. at 45.  Furthermore, the rights

20      21   of the non-debtor are not stayed pursuant to

20      22   Section 362 - they are temporarily unenforceable

20      23   pursuant to Section 365.  See El Paso, 220 B.R. at

20      24   43-44.

20      25       In keeping with the general policy of

DOYLE REPORTING  INC.,    (212) 374-9516♀

20                      21

21      1           ENRON CORP.

21      2    considering the creditors collectively and a

21      3    bankruptcy estate as a whole, relegating the

21    4    non-debtor party to an executory contract to a

21    5    superior position than that of any other unsecured

21    6    creditor by permitting relief from the stay is

21    7    inappropriate.  See El Paso, 220 B.R. at 43.

21    8    Foreclosing a debtor's options by permitting early

21    9    termination through relief from the stay is not in

21    10   keeping with the strictures of Section 365

21    11   permitting debtors a breathing spell in order to

21    12   evaluate whether to assume or reject a particular

21    13   contract, thus benefitting the estate as a whole.

21    14   See Feyline Presents, 81 B.R. at 626.

21    15   See also In re El Paso Refinery, 220 B.R. at 44

21    16   (citing NLRB v. Bildisco and Bildisco, 465 U.S.

21    17   513, 528 (1984); In re Public Service Co., 884

21    18   F.2d 11, 14-15 (1st Cir.1989) (other citations

21    19   omitted)).

21    20          If the contracts at issue are

21    21   assumed, the Debtor must cure all pre- and

21    22   post-petition defaults with respect to the

21    23   contract, 11 U.S.C. Section 365(b), and the

21    24   non-debtor party may be entitled to an

21    25   administrative claim upon a subsequent breach or

21                            22

22        1              ENRON CORP.

22    2    failure to fulfill the cure provisions.  If the

22    3    contracts are rejected, then the outstanding

22    4    defaults, unless established by the non-debtor as

22    5    an administrative claim as a benefit conferred

22    6    upon the estate, become pre-petition unsecured

22    7    claims.  The Court notes that the movants' request

22    8    at this time for an administrative expense claim

22    9    is premature and can be resolved upon proper

22    10    motion to this Court pursuant to Section 503 of

22    11    the Bankruptcy Code.

22    12            Finally, Natural Gas and Trailblazer

22    13    argue that any release of capacity by the Debtor

22    14    would have to be done in the context of assumption

22    15    and then a subsequent assignment subject to

22    16    Section 365 of the Bankruptcy Code.  However, the

22    17    Debtors argue that the capacity releases referred

22    18    to by the Debtor are actions in the ordinary

22    19    course of the Debtor's business contemplated by

22    20    the Federal Energy Regulatory Commission, and the

22    21    Debtor has represented, to the extent applicable,

22    22    that it is attempting to release what it can in

22    23    order to mitigate potential damages.  In the event

22    24    such circumstances arise, the movants can raise

22    25    its objection at that time including its argument

22                          23

23    1           ENRON CORP.

23    2    that assumption of the underlying contract is

23    3    required.

23    4           Based on the facts and circumstances

23    5    of these contracts, the Court determines that a

23    6    reasonable time for the Debtors to assume or

23    7    reject the contracts at issue is approximately 60

23    8    days from today - April 2nd, 2002 - without

23    9    prejudice to the ability of either party to come

23    10   back to this Court for an earlier determination or

23    11   an extension of time if the circumstances warrant.

23    12   The Court further finds that the movants are not

23    13   entitled to adequate protection or relief from the

23    14   automatic stay.

23    15          The Debtors are directed to settle an

23    16   order with respect to each motion.  All right.

23    17          We will take a short break and then

23    18   begin the status conference that is to begin --

23    19   was to begin at 12:30 beginning at about 12:45.

23    20          (Recess.)

23    21          THE COURT:  We are here on a status

23    22   report regarding, I believe, it was earlier this

23    23   week the 2004 hearing.  All right.

23    24          Counsel for the Debtor?

23    25          MR. GRUENBERGER:  Peter Gruenberger

41   10   that on paper.  And we will certainly take that up

41   11   because I think it is important that the Mahonia

41   12   documents, the ones that are at issue here, are

41   13   identified and put in a particularly safe place.

41   14   They're at the crux really of this morning's

41   15   proceedings so we'll have something for the Court,

41   16   Your Honor.

41   17        THE COURT:  All right.  Thank you.

41   18

41   19

41   20

41   21

41   22

41   23

41   24

41   25

DOYLE REPORTING  INC.,    (212) 374-9516♀

42

42   1

42   2        C E R T I F I C A T E
          – – – – – – – – – – –

42   3   STATE OF NEW YORK    )
                  ) ss.:
42   4   COUNTY OF NEW YORK    )

42   5        I, SABRINA SALAS, a Shorthand

42   6        Reporter and Notary Public within and for

| 42 | 7 | the State of New York, do hereby certify: |
| 42 | 8 | That I reported the proceedings in |
| 42 | 9 | the within entitled matter, and that the |
| 42 | 10 | within transcript is a true record of such |
| 42 | 11 | proceedings. |
| 42 | 12 | I further certify that I am not |
| 42 | 13 | related, by blood or marriage, to any of |
| 42 | 14 | the parties in this matter and that I am |
| 42 | 15 | in no way interested in the outcome of this |
| 42 | 16 | matter. |
| 42 | 17 | IN WITNESS WHEREOF, I have hereunto |
| 42 | 18 | set my hand this_____day of_____, |
| 42 | 19 | 2002. |
| 42 | 20 | |
| 42 | 21 | _____ SABRINA SALAS |
| 42 | 22 | |
| 42 | 23 | |
| 42 | 24 | |
| 42 | 25 | |

DOYLE REPORTING  INC.,   (212) 374-9516º