# EXHIBIT "B"

FIRST AMENDMENT TO LEASE

THIS FIRST AMENDMENT TO LEASE, made this _15th_ day of _September_, 1978 between JAMERSON CONSTRUCTION CORPORATION, a Florida corporation, (hereinafter called "Landlord"), and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"), which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

W I T N E S S E T H:

WHEREAS, by Lease dated May 23, 1978, Landlord did lease and demise unto Tenant those certain premises therein more particularly described, located in a shopping center development known as Pine Island Shopping Center, situated one-half mile south of the intersection of State Road #78 and State Road #767, on the east side of State Road #767 in the City of Pine Island, Lee County, Florida, for an initial term of twenty years, commencing upon a date dependent upon completion of certain construction, which date has not yet been determined, and for such rentals and upon such terms and conditions as are more particularly set forth therein, a short form of said Lease being recorded in Volume 1278, page 485, current public records of Lee County, Florida; and

WHEREAS, said Lease is in process of being amended in certain respects by First Amendment to Short Form Lease of co-even date herewith; and

WHEREAS, the legal description of the shopping center has been changed and the parties have therefore agreed to substitute a new legal description for that attached to the Lease dated May 23, 1978 as Exhibit "B" and the parties also by mutual agreement desire to amend said Lease by substitution of a new plot plan for that presently attached to said Lease as Exhibit "A",

This instrument was prepared by
Ronald D. Peterson, Attorney-at-Law
whose address is 5050 Edgewood
Court, Jacksonville, Florida 32205

and the parties desire to modify and amend the Lease dated May 23, 1978 as to other matters all as more particularly set forth hereinafter;

NOW THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to Landlord, the receipt and sufficiency of which are hereby acknowledged, the parties mutually agree that said Lease dated May 23, 1978, shall be and the same is hereby amended in the following particulars, which amendment shall supercede any provisions of said Lease in conflict herewith;

1. There is hereby deleted from said Lease the document attached thereto and identified as Exhibit "B" in its entirety. There is hereby substituted for said Exhibit "B" as attached to said Lease dated May 23, 1978, the document attached hereto as Exhibit "B-1" and whereinsoever in said Lease dated May 23, 1978 any reference is made to the legal description or Exhibit "B" same shall be henceforth considered to refer to Exhibit "B-1" as attached hereto and incorporated herein by this reference.

2. There is hereby deleted from the second gramatical paragraph appearing after the word "WITNESSETH:", appearing at page one of the Lease dated May 23, 1978, the following wording commencing with the seventh line of said second gramatical paragraph, as follows: "Plot Plan entitled 'Pine Island Shopping Center, Lee County, Florida' prepared by D. Wilkinson of Huber Construction Co., dated February 20, 1978, and last revised May 10, 1978," in its entirety. In lieu and substitution therefor there is inserted at the seventh line of the second gramatical paragraph after the word "WITNESSETH:" on page one of the Lease dated May 23, 1978, the following wording: "Plot Plan entitled 'Pine Island Shopping Center', prepared by Catalyst Incorporated, Architecture-Planning, 135 N. Magnolia, Orlando, Florida, dated "final, September 1, 1978," a copy of said plot plan dated September 1, 1978 is attached hereto as Exhibit "A", and by this reference incorporated herein, and henceforth whereinsoever in said Lease dated May 23, 1978 reference is made to the lay-out

-2-

or plot plan of the shopping center it shall be considered to refer to the document attached hereto as Exhibit "A".

3. The Lease is amended by adding to Article 2, on page 3, immediately after the word "business" at line 3 the words "and for no other purpose".

4. The Lease is amended by adding to Article 6, page 7, the first line of the first printed paragraph after the word "tenants" the following language: "at the beginning of the term hereof".

5. The Lease is amended by adding to Article 7, page 7, after the last typed in paragraph ending "debris" the following language:

"As long as Commonwealth Life of Kentucky or its assign has an interest in the mortgaged property either as mortgagee or as owner of the legal title, a default in any of the conditions of the Lease or covenants or agreements of the Landlord which are to be performed on or which apply to property other than the mortgaged property, or a taking by eminent domain, or a denial of Tenant's right to possession of any property other than the mortgaged property shall not give rise in Tenant to: (a) a right to terminate the Lease; (b) a right to a reduction of rent; (c) a right to offset against rent for any such default, or (d) a cause of action for damages against Commonwealth or its assigns. Nothing herein shall prejudice any right Tenant may have to compel performance of the defaulted obligation by action or specific performance or for a right to damages against anyone other than Commonwealth or its assigns."

6. The Lease is amended by deleting Article 9, at page 8, in its entirety and substituting in lieu thereof the following:

"UTILITIES 9. The Tenant agrees to pay all charges for telephone, electricity, water, gas and sewer used by Tenant on the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities."

7. The Lease is amended by deleting therefrom Article 16, appearing at page 10 of said Lease and substituting in lieu thereof the following:

"FIRE 16. In the event the Tenant's building shall be totally destroyed or damaged to any extent by fire or other casualty, Landlord agrees to proceed, without expense to Tenant, to repair the damage and restore the premises to substantially the same condition as existed prior to such damage. In the event that Landlord shall fail within a reasonable time, not to exceed thirty (30) days as to partial destruction or ninety (90) days as to complete destruction, following such damage, to proceed with and within a reasonable time commensurate with the amount of damage, not to exceed 270 days following such damage, to complete the repairs and restore the premises, Tenant may, at its option, in either of such events, terminate this Lease by giving

-3-

to the Landlord written notice thereof.

Tenant shall be entitled to an abatement of a fair and just portion of the rent, according to the unusable space, from the date of such damage until said premises are completely reinstated or restored. If the Landlord's failure to commence or somplete said repairs within the stipulated times shall be due to strikes, war, material shortages, weather conditions or similar happenings beyond its control (provided further the repairs are completed with all due diligence commensurate with such delay), such option to terminate shall not arise.

If at any time during the term of this Lease or any extensions thereof any of the buildings in the shopping center, exclusive of Tenant's store building, are damaged by fire or by the elements or otherwise, Landlord shall promptly commence and diligently prosecute to completion, the repair and restoration to substantially their condition as of the date of the commencement of this Lease, so much of such damaged buildings as necessary to meet the greater of the following requirements:

(1) All those buildings required to be restored under the lease agreements Landlord may have with the particular tenants affected (provided such tenants shall not have cancelled their leases); or

(2) At least seventy-five percent (75%) of the buildings then in the shopping center, exclusive of Tenant's store building.

Landlord agrees to carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant and on all other buildings with the shopping center in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees."

8. The Lease is amended by deleting from Article 17, page 10, second paragraph thereof, line 5 after the word "conducting" the following: "a general mercantile business" and substituting therefor "a grocery store or supermarket".

Said Article 17, page 10, is further amended by adding at the end of the second printed paragraph thereof the following:

"Tenant's option to terminate as above set forth shall become effective, however, only if Tenant is actually prevented from conducting its business as permitted herein and such option shall not arise if the property may be used as herein permitted by reason of being a non-conforming use."

9. The Lease is amended by deleting from Article 19, page 11, first line, the words, "If any part of the demised premises or more than" and substituting in lieu thereof:

"Notwithstanding any provisions herein to the contrary, if any part of the demised premises in excess of ten

-4-




percent (10%) thereof, or any lesser portion which would materially and substantially interfere with the conduct of the Tenant's business therein, or more than".

Said Article 19 is further amended by adding thereto after the word "option" appearing in the fourth line thereof, the following:

> "effective upon the date physical possession is taken by the condemming authority, by giving notice thereof within thirty (30) days after notice of the condemn-nation is given to Tenant,"

10. The Lease is amended by adding to Article 20, page 11, after the last line thereof the following:

> "The enumeration of remedies hereinabove shall in no way restrict the right of Landlord to pursue any other remedies permitted under the laws of the State of Florida."

11. The Lease is amended by deleting Article 30, page 14, in its entirety and in lieu thereof substituting:

> "BENEFIT 30.  This Lease and all of the covenants and provisions thereof sahll inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto.  Each provision hereof shall be deemed a covenant and shall run with the land, so long as this Lease is in effect and during any extensions hereof."

12. The Lease is amended by adding after Article 36, page 17, a new Article 37, as follows:

> "NOTICE TO LENDER 37.  Anything in this lease to the contrary notwithstanding, Tenant agrees that it will not terminate this lease because of Landlord's default in performance hereof or undertake to cure any default on the part of Landlord hereunder until Tenant has first given written notice as herein stipulated to Landlord and to any holder of a first mortgage encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of said mortgage holder) specifying the nature of the default by Landlord and allowing Landlord and said mortgage holder, or either of them, fifteen (15) days after such notice to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said fifteen (15) day period, provided, however, that no such notice shall be required in emergencies as herein stipulated. Tenant further agrees not to prepay any rents more than fifteen (15) days in advance of the due dates thereof as provided herein without the prior written consent of said first mortgagee."

13. Except as hereinabove amended, all terms and conditions of the aforesaid Lease are hereby ratified and affirmed and shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the parties have executed this First

-5-

Amendment to Lease the day and year first above written and hereby ratify and confirm all the provisions of said Lease as amended hereby.

Signed, sealed and delivered
in the presence of:

JAMERSON CONSTRUCTION CORPORATION,
a Florida corporation

_Mary L. Dean_
_Jery B. Whelan_
As to Landlord

By _[signature]_
Its President

Attest _[signature]_
Its Secretary

LANDLORD

(CORPORATE SEAL)

WINN-DIXIE STORES, INC., a
Florida corporation

_Laura F. Baughman_
_Sharon L. Pruett_
As to Tenant

By _[signature]_
Its Vice President

Attest _F. P. Hamilton_
Its Assistant Secretary

TENANT

(CORPORATE SEAL)

STATE OF FLORIDA    )
COUNTY OF           )

    The foregoing instrument was acknowledged before me this _September 15_, 19_78_ by _Ory H. Jamerson_ and _Homer B. Jamerson_, _____ President and _____ Secretary, respectively, of _Jamerson Construction Corporation_, _____, a _Florida_ corporation, on behalf of the corporation.

                              _Mary L. Drew_
(NOTARIAL SEAL)        Notary Public, State and County aforesaid

My commission expires:

NOTARY PUBLIC STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES AUG. 19 1981
BONDED THRU GENERAL INS. UNDERWRITERS

STATE OF  FLORIDA    )
COUNTY OF  Duval     )

    The foregoing instrument was acknowledged before me this _September 14_, 19_78_ by _J. S. Bryan, Jr._ and _F. P. Hamilton_, _Vice_ President and _Asst._ Secretary, respectively, of _WINN-DIXIE STORES, INC._ _____, a _Florida_ corporation, on behalf of the corporation.

                              _Sharon L. Pruett_
(NOTARIAL SEAL)        Notary Public, State and County aforesaid

My commission expires:
NOTARY PUBLIC STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES AUG. 6, 1982

EXHIBIT "A"

## LEGAL DESCRIPTION OF OUT PARCELS

Those certain pieces, parcels or tracts of land lying and being in Lee County, Florida, more particularly described as follows:

### OUT PARCEL A

From the Northeast Corner of Section 33, Twp. 44 South, Rge. 22 East, Lee County, Florida, run S 88° 59' 03" W, 1225.00 ft., along the North line of said Section 33; thence S 01° 00' 57" E 745 feet to the P.C. of a curve concave to the Southwest, with a radius of 30.00 ft. and a central angle of 90° 00'; run thence Northwesterly, 47.12 ft along the arc of said curve to the P.T.; thence S 88° 59' 03" W; 463.33 ft. to the point of beginning; Continue thence S 88° 59' 03" W, 107.96 ft., to the P.C. of a curve to the left with a radius of 30.00 ft. and a central angle of 104° 55' 05"; run thence Southwesterly, 54.93 ft., along the arc of said curve to the Easterly right-of-way line (33 ft. from the center line) of Pine Island Boulevard (S.R. No. 767); thence N 15° 56' 02" W, 163.22 ft., along said right-of-way; thence N 88° 59' 03" E; 178.97 ft., thence S 01° 00' 57" E, 120.00 ft., to the point of beginning.
Contains 0.457 acres.

### OUT PARCEL B

From the Northeast Corner of Section 33, Twp. 44 South, Rge. 22 East, Lee County, Florida, run S 88° 59' 03" W, 2055.82 ft., along the North line of said Section 33, to the Easterly R/W line (33 ft. from the center line) of Pine Island Boulevard (S.R. No. 767); thence S 15° 56' 02" E, 54.85 ft., along said R/W line, to the point of beginning. Thence run N 88° 59' 03" E, 170.00 ft.; thence S 01° 00' 57" E, 130.00 ft.; thence S 88° 59' 03" W, 135.17 ft; to the aforesaid Easterly R/W line; thence N 15° 56' 02" W, 134.53 ft. to the point of beginning.
Contains 0.4557 acres

EXHIBIT "B-1"

That certain piece, parcel or tract of land situate, lying and being in the City of Pine Island, County of Lee, State of Florida, more particularly described as follows:

A parcel of land lying in Section 33, Township 44 South, Range 22 East, Pine Island, Lee County, Florida, described as follows:

From the Northeast corner of said Section 33 run S 88° 59' 03" W along the north line of said Section 33 for 1225.00 feet; thence run S 01° 00' 57" E for 225.00 feet to the point of beginning. From said point of beginning continue S 01° 00' 57" E for 490.00 feet; thence run S 88° 59' 03" W for 439.00 feet thence run N 01° 00' 57" W for 120.00 feet; thence run S 88° 59' 03" W for 233.30 feet to the easterly right of way line of Pine Island Boulevard (SR No. 767) (66 feet wide); thence run N 15° 56' 02" W along said easterly right of way line for 283.56 feet; thence run N 88° 59' 02" E for 306.30 feet; thence run N 01° 00' 57" W for 96.00 feet; thence run N 88° 59' 03" E for 439.00 feet to the point of beginning.
Containing 6.635 acres. SUBJECT TO a public utility easement (20 feet wide) lying over and across the easterly 20 feet thereof; and

A parcel of land lying in Section 33, Township 44 South, Range 22 East, Pine Island, Lee County, Florida, described as follows:

From the northeast corner of said Section 33 run S 88° 59' 03" W along the north line of said Section 33 for 1225.00 feet to the point of beginning. From said point of beginning continue S 88° 59' 03" W along said north line for 830.82 feet to the easterly right of way line of Pine Island Boulevard (SR No. 767) (66 feet wide); thence run S 15° 56' 02" E along said easterly right of way line for 54.85 feet, thence run N 88° 59' 03" E for 220.00 feet; thence run S 01° 00' 57" E for 150.00 feet; thence run S 88° 59' 03" W for 180.04 feet to said easterly right of way line; thence run S 15° 56' 02" E along said easterly right of way line for 122.11 feet; thence run N 88° 59' 03" E for 306.30 feet; thence run N 01° 00' 57" W for 96.00 feet; thence run N 88° 59' 03" E for 439.00 feet; thence run N 01° 00' 57" W for 225.00 feet to the point of beginning.
Containing 4.151 acres. SUBJECT TO a public utility easement (20 feet side) lying over and across the easterly 20 feet and the northrly 20 feet thereof.