# EXHIBIT "C"

## SECOND AMENDMENT OF LEASE

THIS SECOND AMENDMENT OF LEASE, made this 13TH day of November, 1992 between 100 PARK AVENUE, a Florida General Partnership (hereinafter called "Landlord"), and WINN-DIXIE STORES, INC., a Florida corporation (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

### W I T N E S S E T H:

WHEREAS, by Lease dated May 23, 1978, Jamerson Construction Corporation, a Florida corporation, did lease and demise unto Tenant certain premises located in a shopping center development known as "Pine Island Shopping Center", situated one-half mile south of the intersection of State Road #78 and State Road #767, on the east side of State Road #767, in the City of Pine Island, County of Lee and State of Florida, reference being made to said lease for a more detailed description of the demised premises, for a term of twenty (20) years commencing on March 13, 1980 and presently fixed to expire on March 12, 2000, and upon such other terms and conditions as are set forth therein, and:

WHEREAS, a short form of said Lease was recorded in Official Records Volume 1278, at Page 485, Public Records of Lee County, Florida, and

WHEREAS, said Lease and Short Form Lease were amended by First Amendment to Lease and First Amendment to Short Form Lease, each dated September 14, 1978, the said First Amendment to Short Form Lease being recorded in Official Records Volume 1301, page 5076 of the Public Records of Lee County, Florida; and



gal Dept.
Dixie Stores,
Inc.

This instrument was prepared by
William O. Scaife, Jr., Attorney-at Law, whose address is 5050 Edgewood Court, Jacksonville, Florida 32205.

WHEREAS, said Lease was further amended by letter agreement dated January 4, 1980 and Supplemental Lease Agreement dated March 13, 1980; and

WHEREAS, all rights, title and interest of the said Jamerson Construction Corporation, as Landlord under said lease, have been duly transferred to and are presently vested absolutely in Landlord herein, and

WHEREAS, the parties hereto have agreed to enlarge the Tenant's present store building by constructing additions thereto and to make other related renovations, alterations and improvements to the existing building as necessary to make the entire enlarged building suitable for use by Tenant in the conduct of its business, and the parties desire to make certain modifications and amendments to said lease, as previously amended, and to increase the rentals thereunder, all as hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1. Tenant, with the approval and consent of Landlord hereby evidenced, covenants and agrees to proceed at its own cost and expense (Tenant to be reimbursed by Landlord as hereinafter set forth) with due diligence to erect or cause to be erected permanent additions measuring approximately 60 feet in depth on the northerly side of Tenant's existing store building and measuring 40 feet in depth on the easterly side of Tenant's existing store building and also vestibule measuring 77.8 feet in width by 12 feet in depth, together with such renovations, alterations and remodeling of the existing building and vestibule as is necessary to make the entire enlarged building suitable for use by Tenant in the conduct of its business. Upon    completion

the enlarged demised store building shall then contain approximately forty-six thousand two hundred ninety-three (46,293) square feet.

The new addition, together with the other alterations, renovations and related improvements as herein contemplated, shall be constructed in accordance with plans and specifications therefor which have already been prepared at the instance of Tenant and approved by both the Landlord and Tenant. Tenant agrees to indemnify and hold harmless the Landlord from any mechanics', materialmen's, or laborers' liens or encumbrances arising out of such construction work and to cause such liens, if any, to be promptly discharged.

Upon completion, the aggregate cost of the construction of the building addition and the other related improvements, alterations and renovations herein contemplated, shall be certified to by the general contractor performing the work; provided however, there shall be expressly excluded from such construction cost (for the purpose of Landlord's reimbursement) the expense of any and all of Tenant's racks, counters, shelves, and other merchandising fixtures and equipment.

2. It is understood that in order to permit Tenant to utilize the adjoining building spaces on the northerly side of Tenant's building to effect the enlargement, the Landlord agrees to cause the tenants presently occupying such adjoining spaces to remove therefrom, which removal Landlord agrees to effect on or before November 1,1992. In the event Landlord fails for any reason to deliver possession to Tenant of all the space contemplated for the enlargement by the stipulated date, Tenant may at its option and election cancel and terminate this lease amendment whereby the said lease dated May 23, 1978, as amended, shall continue in full force and effect as if this amendment had not been executed.

3. Upon completion of the addition and related

improvements by Tenant and the delivery to Landlord by Tenant of a certificate of occupancy, the total cost of the construction work of the addition and all related improvements contemplated hereunder, certified to by the general contractor performing the same, shall be repaid forthwith by Landlord to Tenant. However, in no event will Landlord's reimbursement to Tenant for such cost of construction work exceed $1,000,000.00.

The reimbursement payment shall be made by cashier's or certified check, or wire transfer. Should Landlord not make full reimbursement to Tenant of the amount of such certified construction costs up to the sum of $1,000,000.00 within thirty (30) days after completion of the addition and occupancy thereof by Tenant (such date of completion and occupancy to be established by Tenant giving to Landlord written notice thereof), Tenant shall have the right to deduct from all increased rentals provided in Article 4(c) hereof in excess of the current rentals, then due or thereafter to become due, such portion of the sum not reimbursed by Landlord to Tenant with interest thereon at the highest rate permitted under the laws of the State of Florida.

Concurrently with the above construction of the building additions, Tenant also shall cause certain improvements to be made on behalf of the Landlord to the common areas of the shopping center, such work to include the installation of additional turning lanes, removal and installation of pavement, landscaping, relocation of rear drainage line, and installation of outfall structure. The additional construction on behalf of the Landlord shall be in accordance with plans and specification to be furnished by the Landlord. At the same time as the Landlord reimburses the Tenant for the certified construction costs for the improvements to Tenant's store building, as described above, the Landlord shall also reimburse the Tenant for the additional work described herein performed by Tenant on Landlord's behalf, presently estimated at a construction price of $200,000.00. Landlord shall also pay to Tenant interest at the

rate of eight (8%) percent per annum on the funds expended on Landlord's behalf from the time progress payments are made to the general or subcontract performing the work until the date of reimbursement to the Tenant in full.

4.   Upon completion of the building addition for Tenant as described above, the following further modifications to said lease, as previously amended, shall become effective:

(a)   The additions to Tenant's building, together with all related improvements to the building made hereunder shall be and become a part of the demised premises and all references in the lease shall be construed to apply to the enlarged building and the land on which it stands.   All improvements to the common areas made hereunder shall be and become a part of the common areas, and all references in the Lease shall be construed to apply to common areas as so modified.

(b)   The initial term of said lease shall be extended so as to expire twenty (20) years from such date during which extended period the same covenants and conditions as provided in said lease, shall remain in full force and effect except as herein modified.   Such extension shall be in addition to and not in lieu of the five (5) extension options remaining available to Tenant under the provisions of said lease, which renewal options are not hereby exercised, it being further agreed, however, that during said option extension periods rentals due hereunder shall be the increased rentals specified in sub-paragraph (c) below.

(c)   The annual minimum guaranteed rental under said lease shall be increased to the total sum of Three Hundred Three Thousand Seven Hundred Fifty and 00/100 Dollars ($303,750.00), due and payable in advance in twelve (12) equal monthly installments of Twenty-Five Thousand Three Hundred Twelve and 50/100 Dollars ($25,312.50) on the first day of each and every calendar month of the initial lease term, and any extensions thereof.   In addition, instead of the percentage rentals

currently required under said lease, as amended, Tenant agrees to pay to Landlord a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from the said enlarged demised premises in each fiscal year of Tenant ending approximately June 30 during the term of said lease, and any extensions thereof, exceeds Three Hundred Three Thousand Seven Hundred Fifty and 00/100 Dollars ($303,750.00).

(d) The parties hereto agree to execute a further supplement to the Lease for the purpose of fixing the commencement date for the new rentals and further amendments as herein provided. Rentals shall be calculated and paid under the present applicable rates of the original Lease, as previously amended, until the rentals begin to accrue under the above substituted provisions, and the rentals for any month in which a change of rate occurs shall be prorated between the previously effective rates and the rates effective after the date of rental adjustment.

(e) It is agreed that Tenant's obligation to indemnify and save harmless Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises, as stipulated in Article 14 appearing on Page 9 of said lease, as amended, shall extend and apply to the building addition herein described, and further agreed that Landlord's obligation to carry fire and extended coverage insurance on Tenant's building as stipulated in that portion of Article 16 appearing on Page 10 of said lease shall extend and apply to the building addition herein described;

(f) The respective repair responsibilities of the parties as stipulated in Articles 10 and 11 appearing on Pages 8 and 9 of said lease, as amended, shall apply and extend to the additional store building area herein required except Tenant shall henceforth pay all expenses in connection with repair or replacement of the air conditioning and heating equipment for the Tenant's demised store building.

(g) In view of the increase in the square footage

to Tenant's demised store building which will be brought through the completion of the addition contemplated by this Amendment, Tenant's annual contribution towards common area maintenance expenses as set forth in Article 36 appearing on Page 17 of said Lease shall be increased to the sum of Eleven Thousand Two Hundred Fifty and 00/100 Dollars ($11,250.00) per year, payable in equal monthly installments of Nine Hundred Thirty-Seven and 50/100 Dollars ($937.50).

Tenant's right to credit such payments against percentage rents on a non-cumulative basis shall remain in full force and effect.

(h)   Article 34 ("TAXES") appearing on page 15 said lease is hereby deleted in its entirety.   In lieu thereof the following is hereby substituted:

"TAXES        34.   During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of any increase in annual ad valorem real estate taxes levied against the demised premises in excess of the amount of such taxes levied thereon for the tax year 1992. Any additional rental payable hereunder by the Tenant may be credited on a non-cumulative basis against any and all percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the taxes chargeable to Tenant, and such additional rentals shall be payable by Tenant with the next installment of rental due hereunder not less than fifteen (15) days after receipt of such paid tax statements. Any payments due by Tenant to Landlord under the provisions of this Article 34 shall be prorated for fractional years occurring at the beginning and expiration of the term of this lease, or any extension thereof. Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions and to institute such proceedings in the name of Landlord as Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to Landlord. Tenant shall also be responsible for and pay promptly when due any sales or other tax imposed upon the rent payable pursuant to this lease. All taxes (other than ad valorem real estate taxes and such sales taxes) including special assessments, improvement liens and the like, shall remain the sole responsibility of Landlord.

If such taxes shall not be assessed separately, but included within an assessment of the demised premises and others, the assessments bill shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio which the square footage of Tenant's store building bears to the total square footage of all store buildings (including additional floor levels, if any) from time to time existing in the shopping center, as determined from an as built survey, a copy of which shall be furnished to Tenant.

Notwithstanding the above, it is agreed that Tenant's obligation to make the payments herein described in expressly conditioned upon receipt from Landlord of a written statement for such ad valorem real estate tax contributions (as well as the other documents described herein if requested by Tenant) no later than December 31 of the calendar year following the year in which the taxes were due."

5.    By virtue of substituting a new plot plan attachment to the lease, as previously amended, for the purpose of graphically' showing the contemplated enlargement of Tenant's store building, the increased dimensions thereof, and certain changes in site layout of the shopping center, the said lease dated May 23, 1978, as previously amended, is further amended by deleting from the first page thereof the words "Plot Plan entitled 'Pine Island Shopping Center, Lee County, Florida' prepared by D. Wilkinson of Huber Construction Co., dated February 20, 1978, and last revised May 10, 1978" and substituting in lieu thereof the words "Plot Plan entitled 'Proposed Winn-Dixie Expansion, Project No. 91105-3', prepared by Duane Hall Engineering Company, Inc., dated October 30, 1991". Attached hereto and by this reference made a part hereof is a copy of said plot plan revised October 30, 1991 and this plot plan shall be substituted in all respects for the plot plan previously attached to the said lease dated May 23, 1978 as Exhibit "A" thereto, which former plot plan is hereby deleted in its entirety.    Whereinsoever in said lease, as amended, reference is made to Exhibit "A" or to the plot plan or layout of the shopping center, the same shall be construed to apply to the plot plan attached hereto.  Tenant hereby consents to the changes in site layout as evidenced by the above substituted plot plan.

6.    It is mutually agreed that the said lease dated May 23, 1978, as previously amended, shall be and remain in full force and effect except only as the same is specifically modified hereby.  All covenants, terms, obligations and conditions of said lease, as previously amended, not changed by the within Second Amendment of Lease, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord has hereunto set his hand and seal, and Tenant has caused this Second Amendment of Lease to be executed in its corporate name and its corporate seal to be hereunto affixed and attested by its officers thereunto duly

-8-

authorized the day and year first above written.

Signed, sealed and delivered
in the presence of:

Printed Name: P. MICHAEL VILLALOBOS

Printed Name: KATHERINE RIGHTFORT

Printed Name: P. MICHAEL VILLALOBOS

Printed Name: KATHERINE RIGHTFORT

Printed Name: P. MICHAEL VILLALOBOS

Printed Name: KATHERINE RIGHTFORT

Printed Name: P. MICHAEL VILLALOBOS

Printed Name: KATHERINE RIGHTFORT

AS TO LANDLORD

100 PARK AVENUE, A Florida
General Partnership,
By its Partners

_____ (SEAL)
LARRY CHARAPATA
Address: 2024 W. HENRIETTA RD
STE 3-D ROCHESTER NY 14623

_____ (SEAL)
THOMAS B. BIRCH
Address: P.O. BOX 1136
FORT MYERS, FL 33902-1136

_____ (SEAL)
JOSEPH CHARAPATA
Address: RT 1, 25TH RD
CRIVITZ, WI 54114

_____ (SEAL)
LUCILLE CHARAPATA
Address: RT 1, 25TH
CRIVITZ, WI 54114

LANDLORD

Printed Name: Rebecca L. Sawyer

Printed Name: Laura F. Baughman

As to Tenant

WINN-DIXIE STORES, INC.

By: _____
Its                President
Printed Name: James Kufeldt
Address: P. O. Box B
Jacksonville, FL 32203-0297

Attest: _____
Its                Secretary
Printed Name: Wayne E. Ripley, Jr.
Address: P. O. Box B
Jacksonville, FL 32203-0297

(Corporate Seal)
TENANT

-9-

STATE OF _Florida_ )
                        )
COUNTY OF _Lee_ )

The foregoing instrument was acknowledged before me by LARRY CHARAPATA, Partner, 100 PARK AVENUE, a Florida General Partnership, who is: (check one)

    1, _____ personally known to me

or

    2. __✓__ who has produced as identification _C08037655_
_6034715246_____ and who did/did not take an oath.

Given under my hand and official seal this _13th_ day of _November_, 1992.

_Vicky R. Pierce_
Printed Name: _Vicky R. Pierce_
Notary Public, State and
County aforesaid.
My Commission Expires:
Notary ID No: 

> VICKY R. PIERCE
> My Comm Exp. 6/13/96
> Bonded By Service Ins
> No. CC209876
> [ ] Personally Known [✓] Other I.D.

STATE OF _Florida_ )
                        )
COUNTY OF _Lee_ )

The foregoing instrument was acknowledged before me by THOMAS B. BIRCH, Partner, 100 PARK AVENUE, a Florida General Partnership, who is: (check one)

    1. __✓__ personally known to me

or

    2. _____ who has produced as identification _____
_____ and who did/did not take an oath.

Given under my hand and official seal this _13th_ day of _November_, 1992.

_Vicky R. Pierce_
Printed Name: _Vicky R. Pierce_
Notary Public, State and
County aforesaid.
My Commission Expires:
Notary ID No:

> VICKY R. PIERCE
> My Comm Exp. 6/13/96
> Bonded By Service Ins
> No. CC209876
> [✓] Personally Known [ ] Other I.D.

STATE OF _Florida_ )
                        )
COUNTY OF _Lee_ )

The foregoing instrument was acknowledged before me by JOSEPH CHARAPATA, Partner, 100 PARK AVENUE, a Florida General Partnership, who is: (check one)

    1. _____ personally known to me

or

    2. __✓__ who has produced as identification _C613-4982-_
_0006-01_____ and who did/did not take an oath.

Given under my hand and official seal this _13th_ day of _November_, 1992.

_Vicky R. Pierce_
Printed Name: _Vicky R. Pierce_
Notary Public, State and
County aforesaid.
My Commission Expires:
Notary ID No:

> VICKY R. PIERCE
> My Comm Exp. 6/13/96
> Bonded By Service Ins
> No. CC209876
> [ ] Personally Known [✓] Other I.D.

STATE OF _Florida_ )
                  )
COUNTY OF _Lee_ )

The foregoing instrument was acknowledged before me by **LUCILLE CHARAPATA, Partner, 100 PARK AVENUE, a Florida General Partnership,** who is: (check one)

1. _____ personally known to me

or

2. ___✓___ who has produced as identification _C-613-5322-3627-08_____ and who did/_did_ _not_ take an oath.

Given under my hand and official seal this _13th_ day of _November_, 1992.

_Vicky R. Pierce_
Printed Name: _Vicky R. Pierce_
Notary Public, State and
County aforesaid.
My Commission Expires:_____
Notary ID No:_____

VICKY R. PIERCE
NOTARY PUBLIC STATE OF FLORIDA
My Comm Exp. 6/13/96
Bonded By Service Ins
No. CC209876
[ ] Personally Known  [ ] Other I.D.


STATE OF FLORIDA      )
                      )
COUNTY OF DUVAL       )

The foregoing instrument was acknowledged before me by _James Kufeldt_, _____ President and by _Wayne E. Ripley, Jr._, _____ Secretary, of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation, who are personally known to me and who did not take an oath.

Given under my hand and official seal this _24th_ day of _November_, 1992.

_Laura E. Baughman_
Printed Name: Laura E. Baughman
Notary Public, State and
County aforesaid.

NOTARY PUBLIC
★
STATE OF FLORIDA
LAURA E. BAUGHMAN
My Comm. Exp. July 17, 1994
Comm. No. CC 021236

RESERVED FOR PLOT PLAN
EXHIBIT "A"



EXHIBIT "A"

NOV 13, 1992   Thomas B. Birch    Joseph Charepata