**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3Fl |
| | ) | |
| WINN-DIXIE STORES, INC., *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**OBJECTION TO DEBTORS' MOTION FOR ORDER GRANTING FOURTH**
**EXTENSION OF TIME TO ASSUME OR REJECT UNEXPIRED LEASES**
**OF NONRESIDENTIAL REAL PROPERTY**

NOW COMES Turney Dunham Plaza Partners Limited Partnership, an Ohio limited partnership ("TDPP"), lessor of non-residential real property located at Back Beach Road @ State Route 30, Panama City, Florida (Store No. 488) and 6300 North Wickham Rd., Melbourne, Florida (Store No. 2298), by and through the undersigned counsel, and objects to Debtors' Motion for Order Granting Fourth Extension of Time Within Which Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Motion"). In support of its objection, TDPP states as follows:

1.      TDPP is the lessor of two shopping centers located Back Beach Road @ State Route 30, Panama City, Florida and 6300 North Wickham Rd., Melbourne, Florida, at which Debtor Winn-Dixie Stores, Inc. is a tenant.

2.      The above-captioned bankruptcy proceedings were commenced on February 21, 2005 by the referenced Debtor and approximately 21 of its affiliates (collectively, "Debtors"). The statutory period in which Debtors were to elect to assume or reject executory contracts and unexpired leases would have expired on or about April

1

22, 2005, but for the three prior extensions granted by the Court. The current period is scheduled to expire March 20, 2006.

      3.     Debtors have requested an extension for an indefinite period, defined only as "through and including the date upon which their confirmed plan of reorganization becomes effective." (Motion, Paragraph 12)

      4.     While TDPP acknowledges that the size of Debtors' operations may have required some additional time for analysis to assist in the formulation of an acceptable business plan, given the three prior extensions and the passage of over a year since the filing of these proceedings, TDPP asserts that the current extension sought is excessive and unreasonable, and that TDPP is being unduly burdened by delay in Debtors' decision whether to assume or reject its leases. The delay in Debtors' lease decisions affects TDPP's own business decision planning, including the pending sale of the Melbourne center.

      5.     Although there are many leases at issue in this proceeding, Debtors have previously rejected in excess of 150 leases, indicating that they have already taken time to analyze their leases. TDPP submits that no additional time is necessary, but in the spirit of cooperation, TDPP would voluntarily agree to an extension until March 31, 2006 with respect to its two leases.

      6.     In the enactment of the provisions of the Bankruptcy Code, especially §365(d)(4) and the other provisions concerning shopping centers, Congress attempted to balance public policy and the inherent tension between debtor-tenants and landlords. An extension for the duration currently sought by Debtors would provide them with well over a year to decide whether to assume or reject TDPP's leases. This delay prevents

2

landlords like TDPP from developing their own strategic planning. *See In re Bonita Glen II*, 152 B.R. 751 (Bankr. C.D. Calif. 1993)(purpose of §365(d)(4) is to strengthen protection to shopping center owners and address concern about delay and uncertainty for lessors). *See also, In re Aneiro,* 72 B.R. 424, 427 (Bankr. S.D. Calif. 1987)(§365(d)(4) "was clearly intended by Congress to protect lessors from delay and uncertainty surrounding assumption or rejection of nonresidential leases......by requiring prompt action"); *In re Child World, Inc.* 146 B.R. 89, 90 (Bankr. S.D.N.Y. 1992), *affirmed,* 147 B.R. 854 (S.D.N.Y. 1992) (an extension beyond 60 days may cause hardship to a landlord who does not know whether or not a lease will remain in effect and whether or not to seek another tenant).

7.    To delay the lease decisions for the additional time now sought by Debtors would constitute a penalty to TDPP (and others similarly situated) which Congress sought to avoid by enacting a 60-day period for the assumption or rejection of leases. Debtors have previously been granted ample time to make their decisions and further delay is an unwarranted.

8.    Further, pursuant to Bankruptcy Code §365(d)(4) and contrary to Debtors' allegation in Paragraph 19 of their Motion, it is Debtors that have the obligation to establish cause for the extension of the time period to assume or reject. Debtors' suggestion that the rights of individual lessors are preserved by allowing them to seek to shorten the period during which Debtors are permitted to assume or reject such leases is a thinly-veiled effort to reverse the burden to establish cause. The Court should not extend the time period unless Debtors are able to show cause for such action, as §364(d)(4) requires.

9.      Moreover, TDPP has been advised in writing by Debtors that they do not intend to satisfy their post-petition obligations under at least one of the leases with TDPP to remit real estate taxes. A copy of such letter with regard to the Melbourne lease is attached. As Debtors acknowledge in footnote 2 to Paragraph 19 of their Motion, Bankruptcy Code §365(d)(3) requires debtors-in-possession to timely perform their post-petition leasehold obligations allocable to period preceding the debtor's rejection of the lease." *In re Handy Andy Home Improvement Ctrs., Inc.*, 144 F.3d 1125, 1126-27 (7th Cir. 1998); *Schneider & Reiff v. William Schneider, Inc.*, (*In re William Schneider, Inc.*), 175 B.R. 769, 770 (S.D. Fla. 1994); *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 80 (Bankr. S.D.N.Y. 2004). TDPP asserts that the obligation to pay such taxes did not accrue under its leases until post-petition and that satisfaction of such obligation is required immediately. Given Debtors' request to further delay the time period for assumption or rejection, TDPP demands, whether or not such deadline is extended, but certainly as a condition precedent to any extension beyond the current March 20, 2006 deadline, that Debtors be compelled to make such real estate tax payments in a timely manner.

10.     If this Court is inclined to grant Debtors any additional time to assume or reject TDPP's leases, such extension should be limited to no later than March 31, 2006 and such deadline should be firm and without further extension. This will allow Debtors ample time to evaluate and decide whether to assume or reject the leases of TDPP's stores, while at the same time minimizing the already-lengthy period of uncertainty to TDPP as landlord.

WHEREFORE, TDPP respectfully requests that Debtors' request for extension of the time to assume or reject be denied, or alternatively, that Debtors be held to a shorter time period to assume or reject TDPP's nonresidential real estate leases, not beyond March 31, 2006.

Dated:  March 2, 2006                                        Respectfully submitted:

/s/ T. David Mitchell
T. David Mitchell, Of Counsel
(OH Bar No. 0042601)
(FL Bar No. 0016789)
BRENNER KAPROSY, L.L.P.
50 East Washington Street
Chagrin Falls, Ohio 44022
Tel:  440-247-5555
Fax:  440-247-5551

Attorney for Turney Dunham Plaza
Partners Limited Partnership

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Notice of

Appearance and Request for Notices was served by electronic mail to the following this

2nd day of March, 2006:


     Skadden, Arps, Slate, Meagher & Flom, LLP
     Four Times Square
     New York, NY 10036
     Attn:  D.J. Baker, Esq.
     djbaker@skadden.com

     Smith Hulsey & Busey
     225 Water Street, Suite 1800
     Jacksonville, FL  32202
     Attn:  Cynthia C. Jackson
     cjackson@smithhulsey.com


                        /s/ T. David Mitchell

4010757



February 15, 2006

RICHARD M. TANSI
Manager, Sales/Use and Property Tax

*Via Telecopy with Confirmation and*
*Certified mail, Return Receipt*
7100 6921 9020 0007 1551

CW Capital LLC
One Charles River Place
63 Kendrick Street
Needham, MA 02494

Re:    Store # 2298

Dear Landlord:

    On February 21, 2005 (the "Petition Date"), Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), filed petitions for relief under Chapter 11 of the United States Bankruptcy Code. These cases are being jointly administered in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, as Case no. 05-03817-3F1 (the "Bankruptcy Court").

    The Debtors have received a property tax invoice for the above referenced store in the amount of $42,942.37 representing the state or local property taxes. These taxes are usually paid directly by Winn-Dixie Stores Inc. to the applicable taxing authority. A portion of the taxes billed are accrued on or prior to the Petition Date, and the Debtors are not at this time directed by the Bankruptcy Court to pay pre-petition obligations. If the Debtors assume the lease of the referenced property pursuant to section 365 of the Bankruptcy Code, you will be reimbursed in full at the time of the assumption. If the Debtors reject the lease, you will receive a distribution only if (i) you filed a timely proof of claim for the taxes (ii) the claim is allowed by the Bankruptcy Court and (iii) a plan of reorganization is confirmed by the Bankruptcy Court. The Debtors will make any such distribution at that time and in the amount and form provided by the confirmed plan.

    The enclosed check in the amount of $36,824.55 represents the taxes which accrued after the petition. We calculated this amount based on a February payment date. We forward this to you, so that, as the owner of the property, you may ensure that the entire tax bill is paid in a timely manner.

Sincerely,

Richard M. Tansi
Winn Dixie Stores, Inc.

WINN-DIXIE JACKSONVILLE     PO BOX B, 5050 EDGEWOOD COURT     JACKSONVILLE, FL 32203-0297     (904) 783-5000
JACKSONVILLE DIVISION

