UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

---------------------------------------------------------- x
:
In re:                                                     :     Case No. 05-03817-3F1
:
WINN-DIXIE STORES, INC., et al.,                           :     Chapter 11
:
           Debtors.                                   :     (Jointly Administered)
:
:     Obj. Deadline: March 2, 2006 @ 4:00 p.m.
:     Hrg. Date: March 9, 2006 @ 1:00 p.m.
:
---------------------------------------------------------- x

**LIMITED OBJECTION OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA TO THE DEBTORS' MOTION FOR ORDER GRANTING FOURTH EXTENSION OF TIME WITHIN WHICH DEBTORS MAY ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**

The Prudential Insurance Company of America (the "Landlord") hereby submits this Limited Objection (the "Limited Objection") to the Debtors' Motion For Order Granting Fourth Extension Of Time Within Which Debtors May Assume Or Reject Unexpired Leases Of Nonresidential Real Property (the "Extension Motion"), and respectfully represents as follows:

### I. INTRODUCTION

The Debtors should not be permitted an open-ended extension of time to assume or reject their leases. Any extension should be tailored to be consistent with the requested extension of the exclusivity period. Finally, under no circumstances does the Bankruptcy Code afford the Debtors the ability to extend the time to assume, assume and assign, or reject the Leases beyond the date the court confirms any plan of reorganization.

### II. BACKGROUND FACTS

1. Winn-Dixie Stores, Inc. and certain affiliated parties (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code on

February 21, 2005. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[1]

2. Landlord is the owner or managing agent of the following three (3) shopping centers wherein Debtors remain tenants operating their store locations (the "Premises") pursuant to unexpired leases of nonresidential real property (the "Leases").

| The Prudential Insurance Company of America | |
|---|---|
| St. John's Commons | Jacksonville, FL |
| Park View Square | Miramar, FL |
| Lake City Shopping Center | Lake City, FL |

3. Each Lease is a "lease of real property in a shopping center" as that term is used in Section 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3rd Cir. 1990).

4. On or about February 17, 2006 the Debtors filed the Extension Motion. While the Landlord does not oppose a limited extension of time, the Landlord requests that the Court limit any extension as set forth herein.

### III. OBJECTIONS

5. Landlord does not oppose a limited extension of time to assume or reject the Leases; provided that: (i) the extension is limited to coincide with the Debtors request for a fourth extension of the exclusivity period within which the Debtors may file and confirm a plan of reorganization, (ii) the Debtors pay all post-petition lease obligations and otherwise continue to perform all obligations under the Leases; and (iii) in no event is an extension granted beyond the date of confirmation of a plan of reorganization.

---

[1] Unless otherwise specified, all statutory reference to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code")

## IV. ARGUMENT

**A. Section 365(d)(4) contemplates only a short, finite extension of time to assume or reject unexpired leases and only in limited circumstances.**

*i. Section 365(d)(4) is the result of Bankruptcy Code amendments aimed at providing greater protections to Landlord*

6. Section 365(d)(4) requires a debtor to assume or reject unexpired leases of non-residential real property within sixty (60) days of the filing of the bankruptcy petition unless the Bankruptcy Court modifies such time for "cause." 11 U.S.C. § 365(d)(4). This provision emanated from those 1984 amendments to the Bankruptcy Code colloquially referred to as the Shopping Center Amendments. The legislative history behind the Shopping Center Amendments provides helpful insights into their purpose and intent.

7. Congress intended the original version of Code §365(d) to protect lessors "from being left in doubt concerning their status vis-à-vis the estate." H.R. Rep. No. 95-595, at 348 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6304; S. Rep. No. 95-989, at 59 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5845. Prior to 1984, however, Section 365(d)(2) permitted chapter 11 debtors to assume or reject unexpired leases, including leases of non-residential real property, "at any time before the confirmation of a plan." As a result, unexpired leases of nonresidential real property were treated the same as all other executory contracts and unexpired leases: the debtor in possession or trustee could assume or reject any executory contract or unexpired lease at any time until confirmation, with the lessor entitled to receive, upon rejection, an administrative claim for the debtor's use and occupancy of the premises.

8. In 1984, Congress enacted amendments which carved-out non-residential real property leases from Section 365(d)(2), and placed them in two newly-enacted subsections, Section 365(d)(3) and Section 365(d)(4).

9. The legislative comments surrounding the enactment of Section 365(d)(4) demonstrate the intent behind Section 365(d)(4), an excerpt of which provides as follows:

> In all but the most complicated reorganization cases sixty (60) days should be a sufficient period to make this determination [whether to assume or reject the leases]. Even in large reorganization cases the Debtor presumably knows his own

> business and understands the value of his assets well enough to make such decisions in sixty (60) days. Also, that Debtor is generally aware in advance that the bankruptcy may be necessary and can plan ahead to decide which leases should be retained. The Debtor should consequently be able to make this determination shortly after the petition is filed and certainly within sixty (60) days in all but the most complicated cases. Nonetheless, the Court has the authority to grant extensions for cause. [emphasis added]

130 Cong. Rec. §§ 891, 8894-95, Daily ed. June 29, 1984, Senator Orrin Hatch.

10. The Shopping Center Amendments also demonstrate Congress' recognition that delays, partial use, or non-use of shopping center space will have particularly deleterious effects on a shopping center, its owner and the debtor's co-tenants. The Congressional Record reflects this concern:

> Approximately half of all U.S. retail is conducted in shopping centers. Retail merchants in shopping centers depend upon the operation of a carefully chosen mix of stores, all contributing to the success of the entire shopping center. If shopping center tenants, especially major tenants, are not paying charges necessary for the upkeep of the shopping center or are using their space in ways not provided for in the lease and which disrupt the tenant mix, the financial health of all of the other merchants and of the shopping center itself can be threatened. This bill will reduce the likelihood that provisions of the bankruptcy code will themselves add to the economic distress of retail merchants in shopping centers.

1984 U.S.C.C.A.N. 576, 600-01.

11. The Shopping Center Amendments ushered in significant changes to Section 365(d) (specifically through the addition of Section 365(d)(4)) to better protect commercial landlords. Section 365(d)(4) alleviates "the unfairness of placing the burden of persuasion on landlords" and correctly places "the burden on debtors-in-possession to show cause why the time to determine whether to assume or reject should be extended." In re Wedtech Corporation, 72 B.R. 464, 469 (Bankr. S.D.N.Y. 1987).

ii.   *The Debtors request for an open-ended extension is contrary to Section 365(d)(4).*

12. The purpose of Section 365(d)(4) is "to protect lessors (particularly shopping center operators) from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases." Sea Harvest Corp. v. Riviera Land Co. (In re Sea Harvest Corporation), 868 F.2d 1077, 1079 (9th Cir. 1988) (citations omitted); *see also* In the Matter of American Healthcare Management, Inc., 900 F.2d 827, 830 (5th Cir. 1990). The

policy to compel a debtor to quickly determine the fate of its leases is an integral protection provided by the Shopping Center Amendments.

13. If the Court decides that some extension is appropriate is this case, such extension must reflect the policy behind Section 365(d)(4). An open-ended extension does not reflect this policy and is excessive. Even where the circumstances justify an extension, an overly long extension is "inconsistent with the spirit and intent of the Code." In re Service Merchandise Company, 256 B.R. 744, 749 (Bankr. M.D. Tenn. 2000).

iii. *Short, multiple extensions better embrace the intentions of the Bankruptcy Code*

14. The Bankruptcy Code and prevailing case law favor multiple, short extensions that more equitably balance the rights of landlords and the debtors. In deliberating between one 120-day extension and two 60-day extensions, the Bankruptcy Appellate Panel for the Ninth Circuit said the following:

> the latter scenario [two 60-day extensions] is preferable because it requires the debtor to establish cause for any additional extensions and allows the Bankruptcy Court to insure the protection of lessors, which is the clear legislative purpose of 365(d)(4).

In re Victoria Station, Inc., 88 B.R. 231, 237 (9th Cir. BAP 1988), *aff'd* 875 F.2d 1380 (9th Cir. 1989); *see also* Tigr Restaurant, Inc. v. Rouse S.I. Shopping Center, Inc., 79 B.R. 954 (E.D.N.Y. 1987).

15. Similarly, in allowing a second extension of time to assume or reject, the Fifth Circuit cautioned:

> The granting of open ended extensions is likely to result in the type of delay and uncertainty Congress sought to eliminate in enacting section 365(d)(4) . . . To obtain additional extensions, lessees would have to return to court and again demonstrate cause justifying the extensions. This approach gives bankruptcy courts greater control over bankrupt lessees' actions and allows the courts to more closely monitor lessees' activities to ensure that they resolve the status of their leases in a diligent manner.

American Healthcare Management, 900 F.2d at 830.

16. A series of limited extensions provides this Court with the ability to fairly consider, on a regular basis, both the Debtors' progress and the Landlord's rights under Section 365(d)(4). Accordingly, the Debtors are not prejudiced, and the Landlord does not suffer undue and unnecessary hardship.

17. Finally, in striking a balance between the needs and interests of debtors and landlords, Congress deemed that sixty (60) days was an appropriate period for a debtor to decide whether to assume or reject unexpired leases. In this case, the Debtors are also seeking an extension of their exclusivity period to file a plan through April 19, 2006 and to solicit acceptances for the plan through May 21, 2006. A sixty (60) day extension is consistent with the requested exclusivity extension, and the Debtors should be required to show cause for any extension of the time to assume, assume and assign, or reject the Leases beyond that date. This properly maintains the evidentiary burdens where Congress intended – with the Debtors. Therefore, if an extension is authorized, incremental extensions of sixty (60) days logically comports with Congress' intent and the progress of this case.

**B.  Any additional extension cannot extend beyond the confirmation of the Debtors' Plan of Reorganization.**

18. The Debtors request an extension through the effective date of its plan of reorganization. *See* Motion at ¶ 12. This is contrary to both the letter and spirit of the Bankruptcy Code. While the prior version Bankruptcy Code provides for extensions of time to assume and reject leases up to the confirmation of a plan, it did not contemplate granting a debtor an extension of time to assume or reject beyond plan confirmation. *See* 11 U.S.C. § 365(d)(2).

19. The former Section 365(d)(2) allowed a debtor to assume or reject all unexpired leases, including leases of non-residential real property, "at any time before the confirmation of a plan." With respect to residential real property leases, Section 365(d)(2) still provides, in pertinent part, that "the trustee may assume or reject an executory contract . . . at any time **before** the confirmation of a plan." 11 U.S.C. § 365(d)(2) (emphasis added); *see also*, In re Nat'l Sugar

Refining Co., 27 B.R. 565, 573 (S.D.N.Y. 1983) (stating that "the trustee may wait to assume or reject [an executory] contract until the confirmation of the plan"). There is no evidence in any of the legislative history that Congress intended to extend the time for a debtor to assume or reject its leases <u>beyond</u> the time period set forth under the pre-1984 version of section 365(d)(2).

20. Nowhere in the Bankruptcy Code is a debtor given the right to assume or reject leases post-confirmation/post-effective date. Rather, a debtor can assume a lease in accordance with Section 365, or under the terms of a plan. *See* In re Valley View Shopping Center, L.P., 260 B.R. 10, 39 (Bankr. D. Kan. 2001). Congress specifically limited the time to assume or reject expired non-residential real property leases in Section 365(d)(4) to a greater extent than other leases. Allowing a debtor to extend the time to assume or reject a non-residential real property lease beyond the confirmation date circumvents the protections that Congress provided to commercial landlords through the Bankruptcy Code. Moreover, the authority to assume or reject leases is limited by the express terms of Section 365(a) to a trustee, which includes a debtor-in-possession by virtue of Section 1107(a), but does not extend to reorganized debtors. *See* In re Grinstead, 75 B.R. 2, 3 (Bankr. D. Minn. 1985) ("There is no debtor in possession status of a debtor post-confirmation.").

21. Additionally, Debtors' proposal removes the role of the Court in approving any assumption or rejection of a lease. Section 365(a) requires that a decision to assume or reject leases be "subject to Court approval". If the Debtors are free to make a decision on assumption or rejection after the Court confirms their plan, in addition to attempting to deprive the Court of jurisdiction, other parties will be deprived of the benefit of the Court's review of the Debtors' actions.

22. Furthermore, postponing the decision until after confirmation also permits the Debtors to hold Landlord hostage with respect to its cure claims. It will permit a situation where the Debtors can use the threat of a rejection of the Lease to seek a reduction in the Landlord's legitimate cure claims under the Leases.

23. Finally, rejecting a lease creates the likelihood that a sizable unsecured claim will be created. 11 U.S.C. § 502(b)(6). In fact, rejection of any of Landlord's leases will result in substantial additional claims against the estate. Allowing Debtors to change their decision to assume or reject leases after confirmation effectively disenfranchises landlords, blocking them from the voting process. Therefore, the Debtors' proposed extension jeopardizes a potentially large voting class by delaying rejection until the post-confirmation period.

### C. The Debtors must pay all post-petition balances owing under the Leases pursuant to Section 365(d)(3).

24. Where a debtor continues to occupy leased space after the filing of the bankruptcy petition, the Bankruptcy Code requires that the debtor "shall timely perform all the obligations of the debtor..." 11 U.S.C. § 365(d)(3). The plain language of the statute demonstrates that the requirements of Section 365(d)(3) dictate that Debtors must timely perform all obligations arising under the Leases -- not simply the obligation to pay rent. In re Montgomery Ward Holding Corp., 242 B.R. 142 (D. Del. 1999); In re Cukierman, 242 B.R. 486, 490 (Bankr. 9th Cir. BAP 1999). Therefore, the debtor-tenant must timely perform all post-petition obligations due under the Leases pending assumption or rejection. In re Pacific-Atlantic Trading Co., 27 F.3d 401 (9th Cir. 1994); In re Twigland Fashions, Inc., 198 B.R. 199, 200 (W.D. Tex. 1996).

25. This Court should condition any extension of time to assume or reject the Leases upon the Debtors' timely performance of all outstanding post-petition obligations and all future obligations as they come due under the Leases, until such time as they are assumed or rejected. In re Tandem Group, Inc., 60 B.R. 125, 127 (Bankr. C.D. Cal. 1986) (conditioning an extension of time to assume or reject an unexpired lease on timely performance under that lease, and ordering automatic rejection upon failure to timely perform under the lease).

**D. Any extension of the time to assume or reject unexpired non-residential real property leases should provide for lease rejection upon a default by the debtor.**

26. A bankruptcy proceeding raises concerns as to a debtor's ability to meet post-petition obligations. The Debtors continue these concerns when they request an extension of time to assume or reject the Leases in that it forces Landlord to maintain its Leases with tenants whose financial condition and intentions with respect to the Leases are uncertain.

27. Landlord should not unnecessarily shoulder the risk of the Debtors inability to reorganize. To ease the burden on Landlord, it should have the ability to quickly recapture the leased premises in the event Debtors fail to remain current on their Lease obligations. Therefore, any extension to assume or reject the Leases should provide Landlord expedited relief from the automatic stay in the event of a future default by the Debtors.

28. In the event the Debtors default on any obligation under the Leases, or under the order entered on the Extension Motion, the defaulted Lease should be deemed rejected at the Landlord's option (without affecting the Landlord's right to receive administrative rent) if the default thereunder is not cured within ten (10) days after receipt of written notice from the respective Landlord or its counsel, to the Debtors or their counsel.

**E. Landlord joins in the objections of other landlords.**

29. To the extent not inconsistent with the relief sought herein, Landlord joins in any opposition to Debtors' requested extension.

**V. CONCLUSION**

Based on the foregoing, Landlord respectfully requests that the Court enter an Order:

    a. Limiting the Debtors' extension of time to assume or reject unexpired leases to sixty (60) days;

    b. Denying any request to extend the time to assume, assume and assign, or reject the Leases beyond the confirmation date of a plan of reorganization;

c.  Requiring timely payment of all post-petition administrative expenses associated with the Leases pursuant to 11 U.S.C. § 365(d)(3) during any period of extension;

d.  Granting expedited relief in the event the Debtors default on their obligations under Leases; and

e.  Granting such other and further relief as the Court deems just and proper.

Dated: March 2, 2006

**KATTEN MUCHIN ROSENMAN LLP**
Attorneys for Prudential Insurance Company of America

Thomas J. Leanse (TL-8802)
Dustin P. Branch (DB-3553)
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Phone: (310) 788-4400
FAX: (310) 788-4471

and

HELD & ISRAEL

By: /s/ 
Edwin W. Held, Jr., Esquire
Florida Bar #162574
Adam N. Frisch, Esquire
Florida Bar #635308
1301 Riverplace Blvd., Suite 1916
Jacksonville, Florida 32207
(904) 398-7038 Telephone
(904) 398-4283 Facsimile