# EXHIBIT "A"

## DECLARATION OF LYNDA OSCHIN

I, Lynda Oschin, declare:

1.  I am an individual over the age of eighteen, and I am the Trustee of the Lynda Oschin Trust dated December 11, 1997 (the "Lynda Oschin Trust"), which owns a 56.18% interest in certain nonresidential real property located in a shopping center in New Orleans, Louisiana, known as Winn-Dixie Marketplace, which is being leased to debtor Winn Dixie Montgomery, Inc. I am authorized by the Lynda Oschin Trust to make this declaration on its behalf.

2.  Except as otherwise indicated, all statements made herein are based on my personal knowledge or my review of relevant documents. If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

3.  I make this declaration in support of the *Limited Opposition to Debtors' Motion for Order Granting Fourth Extension of Time Within with Debtors May Assume or Reject Unexpired Lease of Nonresidential Real Property* (the "Limited Opposition").

4.  (1) Michael Oschin, Daniel Oschin and Richard H. O'Hara, Trustees of the Michael Oschin Trust under Will of Helen Oschin; (2) Michael Oschin, Daniel Oschin and Richard H. O'Hara, Trustees of the Barbara Oschin Primicerio Trust under Will of Helen Oschin; (3) Lynda Oschin, Trustee of the Lynda Oschin Trust dated December 11, 1997; and (4) Michael Oschin, as an individual (collectively, the "Lessors"); are the owners of certain nonresidential real property located in a shopping center in New Orleans, Louisiana, known as Winn-Dixie Marketplace (the "Property"). The Lessors are currently leasing the Property to one of the debtors, Winn Dixie Montgomery, Inc. ("WD Montgomery"), pursuant to a lease agreement dated April 13, 1987, originally between the Lessors' predecessor in interest, Biencar Investments #3, and WD Montgomery's successor in interest, Winn-Dixie Louisiana, Inc. (the "Unexpired Lease").

1  5. A true and correct copy of the Unexpired Lease as attached hereto as

2  **Exhibit 1**. A true and correct copy of the Guaranty by which debtor Winn-Dixie Stores,

3  Inc. guaranteed the obligations of WD Montgomery's predecessor under the Unexpired

4  Lease is attached hereto as **Exhibit 2**. A true and correct copy of the Supplemental

5  Lease Agreement relating to the Unexpired Lease is attached hereto as **Exhibit 3**. A true

6  and correct copy of the Amendment of Lease relating to the Unexpired Lease is attached

7  hereto as **Exhibit 4**. A true and correct copy of an Estoppel Certificate relating to the

8  Unexpired Lease is attached hereto as **Exhibit 5**.

9  6. The Unexpired Lease provides that WD Montgomery's predecessor

10  would lease the Property for an initial term of twenty (20) years, which by supplement,

11  commenced on March 31, 1988. The Unexpired Lease is currently scheduled to expire

12  on June 20, 2015, unless renewed or terminated in accordance with the terms of the

13  Unexpired Lease. The lease, as amended, requires WD Montgomery to make monthly

14  payments in the amount of $59,433.33, due and payable on the first day of each month.

15  The lease also requires WD Montgomery to pay Lessors any amount by which 1% of its

16  gross sales made from the Property in each fiscal year ending approximately June 30th

17  exceeds $713,200.00. In addition, the Unexpired Lease requires WD Montgomery to

18  reimburse Lessors for certain property taxes and insurance costs. WD Montgomery is

19  required to make such reimbursement within thirty (30) days after Lessors tender to WD

20  Montgomery statements that the taxes and insurance have been paid by Lessors.

21  7. As of the date of the Limited Opposition, I have not received notice that

22  WD Montgomery has either assumed or rejected the Unexpired Lease.

23  8. Although WD Montgomery has made certain payments under the

24  Unexpired Lease after the filing of WD Montgomery's bankruptcy petition on February 21,

25  2005 (the "Petition Date"), WD Montgomery is currently in default. Specifically, WD

26  Montgomery (1) has paid only 30% of the rent for January 2006, (2) has not paid any

27  portion of the rent for February 2006, which became due on February 1, 2006, and (3)

28  has failed to reimburse Lessors for a portion ($23,970.01) of insurance costs, which

reimbursement became due in January 2006. An additional rent payment of $59,433.33 will become due on March 1, 2006, and an additional insurance reimbursement of $56,070.00 will become due on or about March 6, 2006. Such defaults will soon hinder and/or prevent the Lessors from making their mortgage payments on the Property, which total $41,883.40 per month. WD Montgomery has also refused to allow the Lessors and/or their insurance adjusters access to the Property for the purpose of assessing and/or possibly repairing any damage that may have been sustained to the Property.

9. The failure of WD Montgomery and Winn-Dixie Stores, Inc. to pay rent has caused damages to Lessors totaling approximately $101,037 as of February 27, 2006, and will cause additional damages of $59,433.33 on March 1, 2006, and $59,433.33 each month thereafter in which the default continues. (The debtors failed to pay an approximate $41,603.33 portion of rent due for January 2006, and the entire $59,433.33 of rent for February 2006. An additional $59,433.33 will become due on March 1, 2006, and on the first day of each month thereafter.) In addition, these debtors' failure to reimburse Lessors for insurance costs have caused damages of $23,970.01 as of February 27, 2006. An additional insurance reimbursement of $56,070.00 will become due on or about March 6, 2006.

10. In addition to denying the Lessors compensation for their Property, the failure of WD Montgomery and Winn-Dixie Stores, Inc. to pay rent to Lessors will soon hinder and/or prevent Lessors from servicing their mortgage payments on the Property (which requires payments of $41,883.40 per month), thereby putting the Property at risk. The failure of these debtors to pay rent has also jeopardized the Lessors' ability to make insurance, tax, and other payments required by the Lessors in connection with the Property. Furthermore, WD Montgomery's refusal to grant the Lessors and their insurance adjusters access to the Property precludes the Lessors from assessing the status of the Property and taking any remedial actions that may be required.

1        11. In light of WD Montgomery's failure to pay rent and make

2   reimbursements to the Lessors, the Lessors submit that the open-ended extension

3   requested by the Debtors is unreasonable long.

4           I declare under penalty of perjury that the foregoing is true and correct.

5           EXECUTED THIS 1st DAY OF MARCH 1, 2006 AT LOS ANGELES,

6   CALIFORNIA.

7

8                                                    Lynda Oschin

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[MAT\REP\504468.2 3/1/06 (11:22 AM)]                -14-

**EXHIBIT 1**

# LEASE

THIS LEASE, made this _____ day of _____ , 19_87_

between __BIENCAR INVESTMENTS #3, a Louisiana ordinary partnership,__

_____ (hereinafter called "Landlord"),

and _WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified_

_to do business in Louisiana,_ _____ (hereinafter called "Tenant"),

which terms "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties.

## WITNESSETH

PREMISES

That the Landlord, in consideration of the rents herein reserved and of the covenants of the Tenant, does hereby lease and demise unto the Tenant, for the term hereinafter specified, the following described land and improvements thereon:

That certain piece, parcel or tract of land located at _the westerly corner_

_of the intersection of North Scott Street and Toulouse Str._

in the City of __New Orleans__ , Parish of __Orleans__

State of __Louisiana__ , more particularly described as

See Exhibit "B" attached hereto and by this reference
made a part hereof for the legal description of de-
mised premises

Together with a store building, approximately __220__ feet in width by __200__ feet in depth and pad-mounted coolers and freezers and compactor on the rear thereof*, with vestibule entry measuring approximately 88' in width by 12' in depth,

*(It is expressly understood that Tenant shall provide the coolers, freezers and compactor)

parking area, sidewalks, service areas and other improvements to be constructed thereon by Landlord according to plans and specifications to be approved by the parties hereto and such improvements being more particularly shown on plot plan dated revised February 20, 1987 by Verges & Associates, Architects, New Orleans, Louisiana, identified and attached hereto as Exhibit "A" and by this reference made a part hereof.

C00004

FOR THE TENANT TO HAVE AND TO HOLD from the date when the Tenant or said premises for the transaction of business as hereafter provided, for an initial term

of __twenty (20)__ years from said commencement date. Landlord and Tenant agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided

This lease is granted and accepted upon the foregoing and upon the following terms covenants, conditions and stipulations

RENTAL

1. The Tenant agrees to pay to the Landlord as rental for the demised premises during the term of this lease, and any extensions thereof, the sum of _Five Hundred Sixty-Three Thousand Two Hundred and 00/100------------------- ----_ Dollars ($_563,200.00_____) per annum. The rental shall be paid in twelve (12) equal monthly installments of _Forty-Six Thousand Nine Hundred Thirty-Three and 33/100_

Dollars ($_46,933.33_____) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof. Rent for fractional years and fractional months at the beginning and end of the term shall be pro rated on the basis of the annual rate. The first monthly payment of rent shall be due on the first day of the next succeeding calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month

In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which_____one_____ _____ per cent (--------1%) of Tenant's gross sales made from the demised premises in each fiscal year ending approximately June 30th during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

DEFINITION "GROSS SALES"

1a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made; and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies, (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, government bonds or savings stamps or for charity; (7) returns of merchandise to suppliers or manufacturers (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value, and (9) over the value or other things of value used as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises

000005

CORD
'SALES

1b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord

CONSTRUCTION
OF
IMPROVEMENTS

2. The Landlord, at its sole cost and expense, shall diligently proceed to construct a store building, parking area, sidewalks, service area and other improvements for use and occupancy by Tenant in conformity with the plans and specifications to be approved by both Landlord and Tenant. Said plans and specifications will be initialled by the parties hereto and when initialled shall constitute a part of this lease. Said plans and specifications shall provide for a complete store building, commonly referred to as a "lock and key job," and shall include, but without limitation, the following

interior partitions, all plumbing and plumbing fixtures, drains, electrical wiring, lighting fixtures to Tenant's requirements, connection of Tenant's trade fixtures to plumbing and electrical outlets, insulated ducts, automatic sprinkler system, manager's office, delicatessen department, music and P.A. systems (except microphones and amplifiers to be furnished by Tenant), vinyl asbestos floor covering in sales area and vinyl asbestos, quarry tile and ceramic tile floor covering as specified in other areas (color at Tenant's option), and connection to all utilities. Tenant, at its own expense, shall furnish and install its own trade fixtures.  All equipment and fixtures provided by Tenant shall remain the property of Tenant and may be removed by Tenant from the demised premises at any time.

The Landlord, at its sole cost and expense, shall grade and pave the parking areas, together with the sidewalks, driveways and service area, and shall provide proper and adequate water drainage and lighting system.

The extra cost of construction arising as a result of any deviation or modification of the Winn-Dixie Guide Plans "G" dated 10/14/85 and stamped New Orleans – N. Carrollton and Conti Streets shall be borne by the Tenant and shall be paid by the Tenant to the Landlord promptly upon submission by the Landlord of the invoice for such additional cost.

CONSTRUCTION
PERIOD

3. The final plans and specifications for construction of Tenant's store building and other improvements provided for herein shall be approved by both parties on or before ____

1, 1987__ and in the event the parties shall not approve the final plans and specifications as evidenced by their initials thereon within said period this lease shall be and become void and of no further force and effect and the parties hereto shall mutually agree ... to extend the period for approval of said plans and specifications

000008

The Landlord covenants and agrees that the construction of the store building, parking area and other improvements shall begin within _____ sixty (60) days _____ after the approval of the plans and specifications by the parties hereto and shall be completed and tendered to the Tenant ready for occupancy within _____ eight (8) months _____ from such date; that failing therein, the Tenant may, at its option, cancel and terminate this lease by delivering to the Landlord a writing evidencing its election to so terminate and the Tenant shall thereupon be relieved of and from all liability hereunder; provided, however, that if the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events on or before _____ May 1, 1988 _____ said option to terminate shall not arise.

MERCHANT 4. The Tenant shall open its store for business within thirty (30) days following completion by the Landlord of the construction of the store building, parking area and other improvements and delivery of same to the Tenant as herein provided, and rent shall begin to accrue hereunder upon the date that the Tenant opens its store for business, or upon the expiration of thirty (30) days following completion by the Landlord of the construction of the improvements and delivery of same to the Tenant, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications.

THIS 5. Tenant agrees to pay all charges for telephone, gas, electricity, water and all other utilities used by Tenant on the premises, and the Landlord agrees to provide access to such utilities at all times during the term of this lease.

JHT'S 6. Upon completion of said construction by Landlord and acceptance of the premises by Ten-
TAS ant, Tenant agrees to keep the ~~entire~~ demised premises in good condition ~~reasonable~~ excepting structural repairs and all repairs hereinafter made the responsibility of the Landlord or made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear.

~~and make such necessary repairs to the premises as are required and keep the same in good condition and repair and in particular to repair to keep the parking area~~

Tenant to maintain landscaping, parking lot cleaning, restriping and minor parking lot repairs.

OLORD'S 7. The Landlord shall, at its cost and expense, keep and maintain the ~~roof, downspouts, exterior~~
LRS ~~loss, exterior~~ walls, foundation and structural members, ~~exterior~~ roof, gutters, downspouts, exterior masonry walls, foundation and structural members, ~~except the entire~~ maintaining ~~the outside~~ of the store building in good condition and repair, and shall make any structural repairs to both the exterior ~~outside~~ of said premises. If any portion of the demised premises which is the responsibility of the Landlord hereunder shall at any time be in need of repairs, Landlord will proceed to repair same immediately upon receipt of written notice. Failure to do so except that the Landlord shall not be obligated to make or pay for any repairs to the demised premises rendered necessary by the fault, act or negligence of the Tenant, or of its servants, employees, agents, invitees, or customers, except in the case of damage ~~by~~ fire or the elements or other casualty covered by Landlord's fire and extended coverage insurance.

including ~~maintenance~~ of failure to keep parking lot and fence

000007

If in order to protect the Tenant's property in the demised premises it shall be necessary to make emergency repairs to any portion of the demised premises which is the responsibility of the Landlord, or if the Landlord after receipt of notice in writing as above provided fails or neglects to make with all due diligence other repairs which are the responsibility of the Landlord, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or incurred by it in making such repairs. Landlord further covenants that the demised premises will be so constructed and maintained at all times so as structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules, or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that said premises may conform to such ordinances, statutes, rules or regulations now in force or which may be hereafter passed adopted or promulgated.

**FIXTURES AND ALTERATIONS**

8.  The Tenant, at its own expense, may from time to time during the term of this lease make any alterations, additions and improvements in, on and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

Tenant may construct and build or install on and in said premises any and all signs, racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which signs, racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time, provided Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

**INDEMNIFICATION**

9.  ~~The Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of accident or damage to any person or property happening on or about the demised premises, except in case of accident or damage caused by the fault or negligence of Landlord its servants, agents or employees.~~

See INDEMNIFICATION Page 5A

**FIRE**

10.  In the event that the demised premises shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty then either party may elect within thirty (30) days after such damage to terminate this lease by giving to the other a written

000068

INDEMNIFICATION

9.   The Tenant shall indemnify and hold harmless the Landlord from and against any and all claims arising from the Tenant's use of the premises, or from the conduct of the Tenant's business or from any activity, work or things done, permitted or suffered by the Tenant in or about the premises or elsewhere and shall further indemnify and hold harmless the Landlord from and against any and all claims arising from any breach or default in the performance of any obligation on the Tenant's part to be performed under the terms of this lease, or arising from any negligence of the Tenant, or any of the Tenant's agents, contractors or employees and from and against all costs, attorney's fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon, and in case any action or proceeding be brought against the Landlord by reason of any such claim, the Tenant upon notice from the Landlord shall defend the same at the Tenant's expense by counsel satisfactory to the Landlord. The Tenant, as a material part of the consideration to the Landlord, hereby assumes all risk of damage to property or injury to persons, in, upon or about the premises arising from any cause and the Tenant hereby waives all claims in respect thereof against the Landlord.

The Tenant hereby agrees that the Landlord shall not be liable for (i) injury to Lessee's business or any loss of income therefrom or (ii) for damage to the goods, wares, merchandise or other property of the Tenant, the Tenant's employees, invitees, customers or any other person in or about the premises, nor (iii) shall the Landlord be liable for injury to the person of the Tenant's employees, invitees, customers, agents, contractors or any other person in or about the premises, whether such injury is caused by or results from fire, steam, electricity, gas, water or rain, or from the breakage, leakage, obstruction or other defects of pipes, sprinklers, wires, appliances, plumbing, air conditioning, or lighting fixtures or from any other cause, whether the same damage or injury results from conditions arising upon the premises.

Notwithstanding anything contained in this paragraph 9, the Tenant shall not be obligated to indemnify or hold the Landlord harmless for any accident or damage caused solely by the fault or negligence of the Landlord, its servants, agents or employees.

- 5A -

of termination, and thereupon both parties shal       d released of and from all further
li... .ty under this lease. If the demised premises shall .. ..eby suffer damage to any extent less
than 75% of the value thereof, or if neither party has elected to terminate as aforesaid, then the
Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage
or restore the improvements, remitting a fair and just portion of the rent, according to the
unusable space, until said premises are completely reinstated or restored

Landlord agrees to carry fire and extended coverage insurance on the demised premises
in the amount of full insurable value thereof, above foundation walls, and hereby expressly
waives any and all claims against the Tenant for loss or damage due to fire, explosion, wind
storm or other casualty covered by such insurance, regardless of the cause of such damage, in-
cluding without limitation, damage resulting from the negligence of the Tenant, its agents,
servants or employees.
The Tenant and Landlord each hereby release and relieve the other, and
waive their entire right of recovery against the other for loss or dama-
arising out of or incident to any perils insured against, which perils
occur in or about the premises, whether due to the negligence of the
Landlord or the Tenant or their agents, employees, contractors and/or
invitees. The Tenant and the Landlord shall give notice to the

QUIET
ENJOYMENT

app?pp.r..e Landlord agrees, and represents that upon commencement of the lease
term, the demised premises will be free and clear of all liens and encumbrances superior to the
leasehold hereby created, that the Landlord has full right and power to execute and perform
this lease and to grant the estate demised herein, and that the Tenant on paying the rent herein
reserved and performing the covenants and agreements hereof shall peaceably and quietly have,
hold and enjoy the demised premises and all rights, easements, appurtenances and privileges
belonging or in anywise appertaining thereto, during the full term of this lease and any ex-
tensions thereof.

The Landlord warrants the non existence of any zoning or other restriction preventing or
restricting use of the demised premises for the conduct of a general mercantile business, includ
ing parking in conjunction therewith, and that should such zoning or other restriction be in ef
fect or adopted at any time during the term of this lease, preventing or restricting the Tenant
from conducting a general mercantile business, including parking in conjunction therewith,
the Tenant at its option may terminate this lease and shall stand released of and from all fur
ther liability hereunder.

TAXES
AND
LIENS

12. All taxes, assessments, and charges on land or improvements and obligations secured by mort
gage or other lien upon the premises shall be promptly paid by Landlord when due  The Ten-
ant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Land-
lord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated
to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed
by the Landlord for resulting expenses and disbursements, together with interest thereon at six
per cent (6%) per annum. The Landlord may perform, acquire or satisfy any lien,
encumbrance, agreement or obligation of the Tenant and if it does so, it shall
be subrogated to all rights of the obligee against the Tenant and the Landlord
shall be reimbursed by the Tenant for resulting expenses and disbursements
together with interest thereon at six per cent (6%) per annum

CONDEMNATION

13. If any part of the store building located on the demised premises be taken for any public
or quasi public use, under any statute or by right of eminent domain, or private purchase in

lieu thereof, or in the event t.. any portion in excess of   ten ____ per cent (-10  ...(
the overall parking area co  ...ected for Tenants use on the demised premises be ta.. '
or in the event that any portion of the demised premises (including parking area) be ...
taken so as to interfere materially or substantially with the conduct of Tenant's business in t
demised premises, then in at ; s ch event  the Tenant shall be entitled to terminate.  I th s

000010

lease 'ts option, and any unearned rent or other charges  d in advance shall be refunded to the  at In the event the Tenant does not elect to ter  : this lease as above provided, or in the _rent of any taking which does not permit a termin.. .n by the Tenant, the Landlord shall promptly restore the premises to a condition comparable to the condition at the time of taking, and the lease shall continue, but Tenant shall be entitled to such division of pro ceeds and abatement of rent and other adjustments as shall be just and equitable under all cir cumstances.

**DEFAULT**

14  In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such fail ure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property there from and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but the Tenant shall remain liable for the deficiency if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting How ever, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the perform ance required to cure such default

**BANKRUPTCY**

15.  The Tenant further covenants and agrees that if, at any time the Tenant is adjudged bank rupt or insolvent under the laws of the United States or of any state, or makes a general as signment for the benefit of creditors, or if a receiver of all the property of the Tenant is appoin ted and shall not be discharged within ninety (90) days after such appointment, then the Land lord may, at its option, declare the term of this lease at an end and shall forthwith be entitled to immediate possession of the premises

**CONSTRUCTION OF IMPROVEMENTS**

16.  It is understood and agreed that nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing said improvements, and that the Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the premises for the causes herein stated.  The Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their subcontractors, employees, agents or servants by reason of Landlord constructing said improvements pursuant to the terms of this lease Landlord shall indemnify and save Tenant harmless from and against all claims and suits for damages to persons or property from defects in material or from the use of un skilled labor or from any negligence caused by Landlord Landlord's contractors or by any of their employees, agents or servants during the progress of the work in constructing said improve ments, or from any faulty construction thereof

**EXCLUSIVE SUPERMARKET**

17.  The Landlord agrees that, if it owns or controls(?) property located within five hundred (500) feet of the demised premises, it will not, with the written permission of the Tenant

d      or indirectly, lease or rent such property to any      on, firm or corporation to be used for      occupied by any business dealing in or which shall      , in stock or sell any staple or fancy groceries, meats, fish, fruits, vegetables, dairy products, bakery goods, or frozen foods nor will the Landlord permit any tenant of any such property to sublet in any manner, directly or indirectly, any such property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any of the above listed items

NUSANCES

18  The Tenant agrees that the leased demised premises or any portion thereof shall not be used for any illegal or unlawful purpose, and that the Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon. Tenant shall not cause or permit the demised premises to be used in anyway which constitutes a violation of any law, ordinance, government regulation or order.  Tenant shall not be in violation of this paragraph so long as Tenant is in good faith contesting any governmental action or charge which would otherwise be in violation of the provisions hereof.

EXTENSIONS

19  It is further agreed that Tenant, at its option, shall be entitled to the privilege of

_ four _ __ ( 4 ) successive extensions of this lease, each extension to be for a period of

_five_ _____ ( 5 ) years and on the same terms and conditions and at xxxxxxxxxxx

_the same rentals as provided herein for the initial lease term._

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in

writing at least __ six (6) months____ _____ before the expiration of the initial term

and if extended, at least __six (6) months_____ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document

NOTICES

20. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at, _____ _____

_c/o Mr. Walter L. Brown, Jr., 3901 Tulane Avenue,_ _____

_New Orleans, Louisiana  70119_ _____

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by certified or registered mail

All notices required to be given to Tenant shall be sent by registered or certified mail to

the Tenant at _____ _P. O. Box 51059_ ____ _____

_New Orleans, Louisiana  70151_ _____

or to such other address as Tenant may from time to time direct by written notice forwarded to Landlord by registered or certified mail

C00012

or
ANCT

21. T    Tenant will yield up the demised premises and all additions thereto (except signs, equip_    . and trade fixtures installed by Tenant at its    nc) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct

IIIRATION

22  In the event there should arise any misunderstanding between the parties hereto as to the compliance with the terms and conditions of this lease upon the part of either of the parties hereto, or as to whether the premises tendered by the Landlord have been improved in substantial conformity with the plans and specifications approved by the parties, or as to whether either party has ground hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties hereto agree upon one otherwise, to a board of three arbitrators, of whom one shall be selected by each party within ten (10) days after such 30 day period, and a third person shall be selected by these two and the decision and award of such single arbitrator if only one is used, or any two of such board if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively, and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction. Each of the parties hereto covenants to abide by any such arbitration decision

ICUMEIT

23  The Tenant may without the consent of the Landlord assign or sublease or vacate the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease

ORDINATE

24  The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination, provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure of any enforcement of any such mortgage the rights of Tenant hereunder shall expressly survive and this lease shall in all respects continue in full force and effect, provided, however that Tenant fully performs all of its obligations hereunder

IEIT

. . . i his lease and all of the covenants and provisions thereof shall inure to the benefit of and bing upon the heirs, legal representatives, successors and assigns of the parties

'.    ided that the provisions set forth hereinbelow in this
        paragraph are provided

000013

SHORT FORM
LASE

26    Landlord agrees that at any time on request of the Tenant it will execute a short form of lease in form permitting its recording

MARGINAL
TITLES

27  The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof

COMPLETE
AGREEMENT

28. This written lease contains the complete agreement of the parties with reference to the leasing of said property, except plans and specifications of said building and improvements to he approved formally by the parties prior to the effective date of this lease No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof

TICE TO
IDER

29. Tenant agrees that it will give notice to any holder of a first mortgage (which term shall include all security instruments) encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate this lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate this lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period, provided, however, the Tenant shall not be required to deliver such notice to the mortgage holder or to extend to it an opportunity to perform in respect of emergency repairs which Tenant is permitted to make under the provisions of Article 12 of this lease

ANSFER BY
NDLORD

30'. In the event Landlord transfers Landlord's interest in this lease, Landlord agrees to promptly provide Tenant with documentary evidence, satisfactory to Tenant, of such transfer of Landlord's interest in this lease.

VOES AND
ISURANCE

31.   During the term of this lease, and any extensions thereof, Tenant agrees to pay and reimburse to Landlord as additional rental the amount of the annual ad valorem real estate taxes levied against the demised premises, and also the annual premium cost of fire and extended coverage insurance on the building and the demised premises.   The amount of taxes attributable to the demised premises and for which Tenant is to reimburse Landlord shall be less the maximum amount of any abatements, discounts or refunds permitted by law thereon.    Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements and insurance premium statements as evidence of the taxes and

*any special assessments, forced contributions and other
governmental charges

C00014

ins   nce premiums chargeable to Tena  , and such additional
rental shall be payable by Tenant within thirty (30) days after
tender by Landlord to Tenant of such paid tax and insurance
statements.  Any payments made by Tenant to Landlord under the
provisions of this Article shall be prorated for fractional years
occurring at the beginning and expiration of the term of this
lease, or any extensions thereof.  Tenant shall have the right
from time to time to contest or protest or review by legal
proceedings or in such other manner as may be provided, any such
taxes, assessments or other governmental impositions afore-
entioned, and to institute such proceedings in the name of the
Landlord as the Tenant may deem necessary; provided, however, any
expense incurred by reason thereof shall be borne by the Tenant
and such proceedings conducted free of all expense to Landlord.
Any special assessments, improvement liens and the like (other
than ad valorem real estate taxes) which are assessed during the
term of this lease, or any exercised option extensions hereof,
t it which are payable in whole or in installments after the expi-
ation or termination of this lease, shall be adjusted and
prorated and Landlord shall pay the prorated share thereof for
the period subsequent to such expiration or termination, and
Tenant shall pay the prorated share thereof prior to such
expiration or termination. it being intended that Tenant shall be
obligated to reimburse Landlord only for such installments as may
become due during the term of this lease, or any exercised option
extensions hereunder.


        IN WITNESS WHEREOF, the Landlord and Tenant have executed
this agreement the day and year first above written.


Signed, sealed and delivered              BIRNCAR INVESTMENTS #3
in the presence of:                       A Louisiana Ordinary
                                          Partnership, By its
                                          Managing Partners


_Margaret 'n Knight_                       _____ (SEAL)
                                          ERNEST E. VERGES
_Wanda J Howe_
As to Ernest E. Verges

_Margaret 'n. Knight_                     _____ (SEAL)
                                          WALTER L. BROWN, JR.
_Wanda J Howe_
As to Walter L. Brown, Jr                    LANDLORD



_Lily of Patrson_                         WINN-DIXIE LOUISIANA, INC


                                          By _____
_Darline k Wilson_                           Its         Vice President
As to Tenant
                                          Attest _T.P.Hamilton_
                                               Its Asst. Secretary
                                               (Corporate Seal)
                                                  TENANT


                                             000015

STATE OF

PARISH OF

      BE IT KNOWN that on this 13th day of ___April___, 19 87, before me the undersigned authority, personally came and appeared ERNEST E. VERGES, one of the managing partners of BIENCAR INVESTMENTS #3, a Louisiana ordinary partnership, to me known, and known by me to be the persons whose genuine signatures are affixed to the foregoing lease, who signed said lease before me and in the presence of the two witnesses whose names are thereto subscribed as such, and each acknowledge in my presence and in the presence of said witnesses that he signed the above and foregoing instrument as his own free act and deed and for the uses and purposes therein set forth.

      IN WITNESS WHEREOF the said appearers have signed these presents and I have hereunto affixed my official hand and seal on the day and date first above written.

WITNESSES:

_____

_____        ERNEST E. VERGES

SWORN to and subscribed before me this 13th day of ___April___, 19 87.      My commission expires:

_____
Notary Public

(NOTARIAL SEAL)

STATE OF

PARISH OF

      BE IT KNOWN that on this 13th day of ___April___, 19 87, before me the undersigned authority, personally came and appeared WALTER L. BROWN, JR., one of the managing partners of BIENCAR INVESTMENTS #3, a Louisiana ordinary partnership, to me known, and known by me to be the persons whose genuine signatures are affixed to the foregoing lease, who signed said lease before me and in the presence of the two witnesses whose names are thereto subscribed as such, and each acknowledge in the presence and in the presence of said witnesses that he signed the above and foregoing instrument as his own free act and deed and for the uses and purposes therein set forth.

      IN WITNESS WHEREOF the said appearers have signed these presents and I have hereunto affixed my official hand and seal on the day and date first above written.

WITNESSES:

_____

_____        WALTER L. BROWN, JR.

SWORN to and subscribed before me this 13th day of ___April___, 19 87.      My commission expires:

_____
Notary Public

G00016

Louisiana - Corporate    11-9-73  CB

STATE OF  FLORIDA
COUNTY OF  DUVAL

BE IT KNOWN that on this _22_ day of the month of _____
_April_, 19 _87_, before me the undersigned authority personally
came and appeared _C. Dans Davies_, _Vice_ President
of _____WINN-DIXIE LOUISIANA, INC., a Florida corporation._____
_____ to me known,
who signed and executed the above and foregoing lease before me and in
the presence of the two witnesses whose names are thereto subscribed as
such, and who acknowledged in my presence and in the presence of the
said witnesses that  he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appeared has signed hereto, together
with the said witnesses and I have hereunto affixed my official hand and
seal on the day and year first above written.

WITNESSES:

_Betty L. Patterson_                    By _____
_Sultan K. Wilson_                               Vice President

SWORN to and subscribed before me
this _22_ day of _April_,
19 _87_.

_Laura K. Baughman_
        Notary Public
     (NOTARIAL SEAL)

My commission expires:

_____

## G U A R A N T Y

In consideration of the sum of Ten Dollars ($10.00) paid by

BIENCAR INVESTMENTS #3, a Louisiana ordinary partnership,

_____

_____

_____

_____

hereinafter called "Landlord", to WINN-DIXIE STORES, INC., a Florida corpor-
ation with its principal office at 5050 Edgewood Court, Jacksonville,
Florida 32205, hereinafter called "Guarantor", the receipt and suffi-
ciency whereof are hereby acknowledged, Guarantor does hereby guarantee
unto Landlord, its heirs, legal representatives, successors and assigns,
the due performance and observance by ___WINN-DIXIE LOUISIANA, INC., a

Florida corporation qualified to do business in Louisiana,

_____

hereinafter called "Tenant", of all the terms, covenants and conditions
on the part of Tenant to be performed and observed including, without
limitation, payment of rentals under the attached and foregoing lease
agreement dated ___April 13, 1987___ , covering certain premises
located ___at the westerly corner of the intersection of North Scott___

___Street and Toulouse Street in the City of New Orleans, Parish___

___of Orleans, and State of Louisiana.___

_____

        IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be
executed in its corporate name and its corporate seal to be hereunto
affixed and attested by its officers thereunto duly authorized this
___22___ day of ___April___ , 19 _87_ .

Signed, sealed and delivered
in the presence of:

_Betty L. Pabisan_                          WINN-DIXIE STORES, INC.

                                            By_____
_LaCanc K. Isles_                             Its              President

                                            Attest: _F. P. Hamilton_
                                              Its  Asst. Secretary

                                               (CORPORATE SEAL)

                                            GUARANTOR

                                            006013

Louisiana - Corporate   11-9-73  CB

STATE OF  FLORIDA

COUNTY OF  DUVAL

        BE IT KNOWN that on this *227* day of the month of _____

*April* , 19 87 , before me the undersigned authority personally

came and appeared _____*G. Davie Davis*_____ , _____ President

of _____WINN-DIXIE STORES, INC., a Florida corporation,_____

_____ to me known,

who signed and executed the above and foregoing lease before me and in

the presence of the two witnesses whose names are thereto subscribed as

such, and who acknowledged in my presence and in the presence of the

said witnesses that  he signed the above and foregoing lease as his

free act and deed and for the uses and purposes therein set forth.

        IN WITNESS WHEREOF the said appeared has signed hereto, together

with the said witnesses and I have hereunto affixed my official hand and

seal on the day and year first above written.

WITNESSES:

_____*Betty L Roberson*_____          By _____

_____*Joanne K Wilson*_____                              President

SWORN to and subscribed before me

this *22* day of *April* ,

· 19 87 .

_____*Laura L Bamburg*_____

        Notary Public

    (NOTARIAL SEAL)

My commission expires:

_____

## MID CITY PLAZA

Westerly corner of the intersection of
North Scott Street and Toulouse Street,
New Orleans, Orleans Parish, Louisiana

All that certain piece, parcel or tract of land, lying and
being situated in the City of New Orleans, Parish of Orleans,
State of Louisiana, together with all improvements thereon or
to be constructed thereon and all appurtenances thereto
belonging or in anywise appertaining, more particularly
described as follows, to-wit:

### Lot 1, Square 527

A certain portion of ground, together with all the
building and improvements thereon, including the air
conditioning and heating systems presently located on
said property, and all of the rights, ways, privileges,
servitudes, appurtenances and advantages thereunto
belonging or in anywise appertaining, situated in the
Second District of the City of New Orleans, in Square
527, bounded by Carrollton Avenue, St. Louis, Toulouse
and Pierce Streets, beginning 66 feet from the corner of
Carrollton Avenue and St. Louis Street, measuring thence
toward Toulouse Street 193'7'4''' front on Carrollton
Avenue, 189'10" on Toulouse Street, 193'9"3''' on Pierce
Street to a point beginning 66 feet from the corner of
St. Louis and Pierce Streets, thence 206'3"6''' on the
side towards St. Louis Street.

### Lot 2, Square 527

A CERTAIN PORTION OF GROUND with all the buildings and
improvements thereon, situated in the SECOND DISTRICT of
the City of New Orleans, Louisiana in Square 527 and
bounded by N. Carrollton Avenue, N. Pierce, St. Louis and
Toulouse Streets and measuring 66 feet front on N.
Carrollton Avenue by a depth of 211'9" on St. Louis St.,
and fronting 66 feet on N. Pierce St., by a depth of
206'3" on the side line nearest Toulouse Street.

### Square 526

The entire square of ground No. 526 situated in the
Second District of the City of New Orleans together with
all the buildings and improvements thereon, and all the
rights, ways, privileges, servitudes, appurtenances and
advantages thereunto belonging or in anywise
appertaining, measuring as shown on survey by P.C.
Gandolfo, under date of December 2, 1942, a copy of which
is annexed to an Act of Sale before Hood Brown, N.P.,
dated December 14, 1942, as follows:

Three hundred twenty feet, one inch, one line
(320'1'1''') front on each St. Louis and Toulouse
Streets, two hundred sixty feet, one inch, three lines
(260'1'3''') on North Pierce Street, and two hundred
sixty-two feet, one inch, and no lines (262'1"0''') on
North Scott Street.

### Lot 1, Square 509

That portion of ground, together with all the buildings
and improvements thereon and all of the rights, ways,
privileges, servitudes, appurtenances and advantages
thereunto belonging or in anywise appertaining, situated
in the Second District of the City of New Orleans, in
Square no. 509, bounded by Toulouse, St. Louis, N. Scott
and N. Cortez Street, and located at the corner of
Toulouse and N. Scott St. and measuring 90 feet 4 inches
front on Toulouse St. and 120 feet 9 inches front on N.
Scott St., and a width on the rear line towards and
parallel to St. Louis St. of 90 feet, 4 inches, and a
width on the rear line towards and parallel to N. Cortez

000020



C00021

EXHIBIT 2

GUARANTY

In consideration of the sum of Ten Dollars ($10.00) paid by

BIENCAR INVESTMENTS #3, a Louisiana ordinary partnership,

hereinafter called "Landlord", to WINN-DIXIE STORES, INC., a Florida corpor-
ation with its principal office at 5050 Edgewood Court, Jacksonville,
Florida 32205, hereinafter called "Guarantor", the receipt and suffi-
ciency whereof are hereby acknowledged, Guarantor does hereby guarantee
unto Landlord, its heirs, legal representatives, successors and assigns,
the due performance and observance by __WINN-DIXIE LOUISIANA, INC., a__

__Florida corporation qualified to do business in Louisiana,__

hereinafter called "Tenant", of all the terms, covenants and conditions
on the part of Tenant to be performed and observed including, without
limitation, payment of rentals under the attached and foregoing lease
agreement dated ____April 13, 1937____, covering certain premises
located __at the westerly corner of the intersection of North Scott__
__Street and Toulouse Street in the City of New Orleans, Parish__
__of Orleans, and State of Louisiana.__

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be
executed in its corporate name and its corporate seal to be hereunto
affixed and attested by its officers thereunto duly authorized this
__22~__ day of __April__, 19 __87__.

Signed, sealed and delivered
in the presence of:

_Betty L. Peterson_

_LaCure K. Dobes_

WINN-DIXIE STORES, INC.

By _____
Its                    President

Attest: __F. P. Hamilton__
Its  Asst. Secretary

(CORPORATE SEAL)

GUARANTOR

Louisiana - Corporate   11-9-73  CB

STATE OF  FLORIDA

COUNTY OF  DUVAL

BE IT KNOWN that on this _22_ day of the month of _____

_April_ , 19 _87_ , before me the undersigned authority personally

came and appeared _____ _A. Dave Davis_ ___ , _____ President

of _____ WINN-DIXIE STORES, INC., a Florida corporation, _____

_____ to me known,

who signed and executed the above and foregoing lease before me and in

the presence of the two witnesses whose names are thereto subscribed as

such, and who acknowledged in my presence and in the presence of the

said witnesses that  he signed the above and foregoing lease as his

free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appeared has signed hereto, together

with the said witnesses and I have hereunto affixed my official hand and

seal on the day and year first above written.

WITNESSES:

_Betty L. Robinson_

_JoLene K. Wilson_

By _A. Dave Davis_

                                          President

SWORN to and subscribed before me

this _22_ day of _April_ ,

19 _87_ .

_Laura L. Baughman_

Notary Public

(NOTARIAL SEAL)

My commission expires:

_____

OOOO19

# EXHIBIT 3

SUPPLEMENTAL LEASE AGREEMENT

THIS SUPPLEMENTAL LEASE AGREEMENT, made this 8th day of ____ 1988 between BIANCAR INVESTMENT #3, a Louisiana ordinary partnership, hereinafter called "Landlord", and WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do business in the State of Louisiana, hereinafter called "Tenant", which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties,

W I T N E S S E T H,

WHEREAS, by lease dated April 13, 1987, Biancar Investments #3, a Louisiana ordinary partnership, as Landlord, did lease and demise unto Tenant certain premises located at the westerly corner of the intersection of North Scott Street and Toulouse Street, in the City of New Orleans, Parish of Orleans and State of Louisiana, reference being made to said lease for a more detailed description of the demised premises, for a term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, and upon such terms and conditions as are set forth therein, a short form of said lease appearing of record in Book 813H, Folio 73-75, in the Office of the Register of Conveyances, Orleans Parish, Louisiana, and

WHEREAS, Tenant has now opened for business in the demised premises and the parties desire to fix the commencement date of said lease as hereinafter set forth,

NOW THEREFORE, in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations paid by Tenant to Landlord, the receipt and sufficiency whereof are hereby acknowledged, it is mutually agreed:



The commencement date of the above-described lease

JUN-07-05 WED 11:58    WINN DIXIE                    FAX NO. 904 783 5294          P. 05

dated April 13, 1987, is fixed at March 31, 1988 and the expiration of the initial term of twenty (20) years demised therein shall be at midnight on March 30, 2008.

2.    All covenants, terms and conditions of the above-described lease, not modified or amended by this supplemental lease agreement are hereby ratified and confirmed.

IN WITNESS WHEREOF, Landlord and Tenant have executed this supplemental lease agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

BIENCAR INVESTMENTS #3,
A Louisiana Ordinary
Partnership, By

_____                    _____ (SEAL)
                                            ERNEST E. VERGES

_____
As to Ernest E. Verges

_____                    _____ (SEAL)
                                            WALTER L. BROWN, JR.

_____
As to Walter L. Brown, Jr.                  LANDLORD


                                            WINN-DIXIE LOUISIANA, INC.

_____                     By_____
                                              Its            Vice President

_____                     Attest_____
As to Tenant                                  Its               Secretary

                                            (CORPORATE SEAL)

                                            TENANT

-2-

Louisiana – Individual – Doub    CH 9-12-67

STATE OF Louisiana

PARISH OF Orleans

BE IT KNOWN that on this 8th day of June, 19 88,
before me the undersigned authority, personally came and appeared
ERNEST E. VERGES, one of the managing partners of
BIENCAR INVESTMENTS #3, a Louisiana ordinary partnership,
to me known, and known by me to be the persons whose genuine signatures
are affixed to the foregoing lease, who signed said lease before me and
in the presence of the two witnesses whose names are thereto subscribed
as such, and each acknowledge in my presence and in the presence of said
witnesses that he signed the above and foregoing instrument as his own
free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appearers have signed these presents
and I have hereunto affixed my official hand and seal on the day and date
first above written.

WITNESSES:

_____        _____
_____        ERNEST E. VERGES

SWORN to and subscribed before me this
8th day of June, 19 88.

_____
Notary Public                           My commission expires:

(NOTARIAL SEAL)                         is for life.


STATE OF Louisiana

PARISH OF Orleans

BE IT KNOWN that on this 8th day of June, 19 88,
before me the undersigned authority, personally came and appeared
WALTER L. BROWN, JR., one of the managing partners of
BIENCAR INVESTMENTS #3, a Louisiana ordinary partnership,
to me known, and known by me to be the persons whose genuine signatures
are affixed to the foregoing lease, who signed said lease before me and
in the presence of the two witnesses whose names are thereto subscribed
as such, and each acknowledge in my presence and in the presence of said
witnesses that he signed the above and foregoing instrument as his own
free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appearers have signed these presents
and I have hereunto affixed my official hand and seal on the day and date
first above written.

WITNESSES:

_____        _____
_____        WALTER L. BROWN, JR.

SWORN to and subscribed before me this
8th day of June, 19 88.

_____
Notary Public                           My commission expires:

(NOTARIAL SEAL)                         is for life

JUN-07-95 WED 11:59    WINN DIXIE                FAX NO. 904 783 5294              P. 05

Louisiana - Corporate    11-9-73  CB

STATE OF FLORIDA
COUNTY OF DUVAL

BE IT KNOWN that on this _23rd_ day of the month of _____
_June_ , 19_88_ , before me the undersigned authority personally
came and appeared _____James Kufeldt_____ , ___Vice___ President
of ___WINN-DIXIE LOUISIANA, INC., a Florida corporation,_____
_____ to me known,
who signed and executed the above and foregoing lease before me and in
the presence of the two witnesses whose names are thereto subscribed as
such, and who acknowledged in my presence and in the presence of the
said witnesses that he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appeared has signed hereto, together
with the said witnesses and I have hereunto affixed my official hand and
seal on the day and year first above written.

WITNESSES:
_Rebecca S. Sauer_              By _James Kufeldt_
_Susan G. Clarkin_                    Vice President

SWORN to and subscribed before me
this _23rd_ day of _June_ ,
19_88_ .
_Laura E. Baughman_
       Notary Public
    (NOTARIAL SEAL)
My commission expires:
   _7-17-90_

EXHIBIT 4

AMENDMENT OF LEASE

THIS AMENDMENT OF LEASE, made this ___25ᵗ'___ day of __APRIL__
_____, 1994, between S.S. PROPERTIES ASSOCIATES I, a New Jersey
Limited Partnership (hereinafter called "Landlord"), and WINN-DIXIE
LOUISIANA, INC., a Florida corporation qualified to do business in
the State of Louisiana (hereinafter called "Tenant"), which terms
"Landlord" and "Tenant" shall include, wherever the context admits
or requires, singular or plural, and the heirs, legal
representatives, successors and assigns of the respective parties,

W I T N E S S E T H :

WHEREAS, by Lease dated April 13, 1987, as amended, Biencar
Investments #3, a Louisiana ordinary partnership, as Landlord, did
lease and demise unto Tenant certain premises located at the
westerly corner of the intersection of North Scott Street and
Toulouse Street, in the City of New Orleans, Parish of Orleans,
State of Louisiana, reference being made to said lease for a more
detailed description of the demised premises, for a term of twenty
(20) years commencing upon a date dependent upon the completion of
certain construction, and upon such terms and conditions as are set
forth therein, a short form of said lease appearing of record in
Book 813H, folio 73-75, in the Office of the register of
Conveyances, Orleans Parish, Louisiana, and

WHEREAS, Landlord and Tenant now desire to add certain
additional property to the demised premises and the operation of
same, and

WHEREAS, the parties hereto have agreed to enlarge the
Tenant's present store building by constructing an addition thereto
and to make other related renovations, alterations and improvements
to the existing building as necessary to make the entire enlarged
building suitable for use by Tenant in the conduct of its business,
and the parties desire to make certain modifications and amendments
to said lease and to increase the rentals thereunder, all as
hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the sum of
TEN AND NO/100 ($10.00) DOLLARS, and other good and valuable

JTD
BUS\0324 1

000022

considerations in hand paid by Tenant to the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1.    Tenant, with the approval and consent of Landlord hereby evidenced, covenants and agrees to proceed at its own cost and expense (Tenant to be reimbursed by Landlord as hereinafter set forth) with due diligence to erect or cause to be erected a permanent addition measuring approximately 40 feet in width by 200 feet in depth on the northerly side of Tenant's existing store building, together with such renovations, alterations and remodeling of the existing building and vestibule as is necessary to make the entire enlarged building suitable for use by Tenant in the conduct of its business.

The new addition, together with the other alterations, renovations and related improvements as herein contemplated, shall be constructed in accordance with plans and specifications therefor which have already been prepared at the instance of Tenant and approved by both the Landlord and Tenant.  Tenant agrees to indemnify and hold harmless the Landlord from any mechanics', materialmen's or laborers' liens or encumbrances arising out of such construction work and to cause such liens, if any, to be promptly discharged

Upon completion, the aggregate cost of the construction of the building addition and the other related improvements, alterations and renovations herein contemplated, shall be certified to by the general contractor performing the work; provided however, there shall be expressly excluded from such construction cost (for the purpose of Landlord's reimbursement) the expense of any and all of Tenant's racks, counters, shelves, and other merchandising fixtures and equipment.

2.    Upon completion of the addition and related improvements and commencement of doing business therein by Tenant and the delivery to Landlord by Tenant of an architect's certificate of substantial completion, the total cost of the construction work of the addition and all related improvements contemplated hereunder,

000023

certified to by the general contractor performing the same, shall be repaid forthwith by Landlord and Tenant   However, in no event will Landlord's reimbursement to Tenant for such cost of construction work exceed $1,250,000.

The reimbursement payment shall be made by cashier's or certified check or wire transfer.  Should Landlord not make full reimbursement to Tenant of the amount of such certified construction costs up to the sum of $1,250,000 within thirty (30) days after completion of the addition and occupancy thereof by Tenant (such date of completion and occupancy to be established by Tenant giving to Landlord written notice thereof), Tenant shall have the right to deduct from all increased rentals provided in Article 3(d) hereof in excess of the current rentals, then due or thereafter to become due, such portion of the sum not reimbursed by Landlord to Tenant with interest thereon at the rate of ~~twelve~~ *six* (~~12%~~ *10%*) percent per annum.  In the event Landlord delivers to Tenant the contemplated reimbursement in the sum of $1,250,000, prior to construction and/or completion of the addition by Tenant then upon such date of receipt of said amount by Tenant, the increased rentals and other lease modifications provided in Article 3 hereunder shall then commence and become effective and the additional property to be added to the demised property as provided hereinbelow shall be conveyed to Landlord simultaneously upon receipt of said amount and Landlord shall have no further obligation to reimburse Tenant hereunder.

Landlord and Tenant acknowledge and agree that this Amendment shall not become effective unless and until Landlord has obtained new mortgage financing which is satisfactory to Landlord.

3.   Upon completion of the building addition for Tenant and occupancy thereof by Tenant, the following further modifications to said lease shall become effective:

(a)   The addition to Tenant's building, together with all related improvements to the building made hereunder shall be and become a part of the demised premises and all references in the lease shall be construed to apply to the enlarged building and the

000024

land on which it stands.  All improvements to the common areas
hereunder shall be and become a part of the common areas, and all
references in the Lease shall be construed to apply to common areas
as so modified.

(b)  The initial term of said lease shall be extended so
as to expire twenty (20) years from such date during which extended
period the same covenants and conditions as provided in said lease,
shall remain in full force and effect except as herein modified
Such extension shall be in addition to and not in lieu of the four
(4) extension options remaining available to Tenant under the
provisions of said lease, which renewal options are not hereby
exercised, it being further agreed, however, that during said
option extension periods rentals due hereunder shall be the
increased rentals specified in sub-paragraph (d) below

(c)  It is further agreed that Tenant, at its option,
shall be entitled to the privilege to one (1) further extension of
said lease, such extension to be for a period of five (5) years and
on the same covenants and conditions but for increased rentals
specified in sub-paragraph (d) below

(d)  The annual minimum guaranteed rental under said
lease shall be increased to the total sum of Seven Hundred Thirteen
Thousand Two Hundred and No/100 ($713,200 000) Dollars, due and
payable in advance in twelve (12) equal monthly installments of
Fifty-Nine  Thousand  Four  Hundred  Thirty-Three  and  33/100
($59,433.33) Dollars on the first day of each and every calendar
month of the initial lease term, and any extensions thereof   In
addition, instead of the percentage rentals currently required
under said lease Tenant agrees to pay to Landlord a percentage
rental equal to the amount, if any, by which one (1%) percent of
Tenant's gross sales made from the said enlarged demised premises
in each fiscal year of Tenant ending approximately June 30 during
the term of said lease, and any extensions thereof, exceeds Seven
Hundred Thirteen Thousand Two Hundred and 00/100 ($713,200 00)
Dollars.

000625

(e)  The parties hereto agree to execute a further supplement to the Lease for the purpose of fixing the commencement date for the new rentals and further amendments as herein provided Rentals shall be calculated and paid under the present applicable rates of the original Lease until the rentals begin to accrue under the above substituted provisions, and the rentals for any month in which a change of rate occurs shall be prorated between the previously effective rates and the rates effective after the date of rental adjustment.

(f)  It is agreed that Tenant's obligation to indemnify and save harmless Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises, as stipulated in Article 9 appearing on Page 5A of said lease shall extend and apply to the building addition herein described, and further agreed that Landlord's obligation to carry fire and extended coverage insurance on Tenant's building as stipulated in the portion of Article 10 appearing on Page 6 of said lease shall extend and apply to the building addition herein described.

(g)  Articles 6 and 7 appearing on Page 4 of said lease are hereby deleted, and the following provision is substituted in lieu thereof:

> "REPAIRS:  Tenant agrees, at its sole cost and expense, to maintain the building and appurtenances and other improvements on the demised premises and the sidewalks, parking and service areas, in good and tenantable condition and repair throughout the term of this lease, and any extensions thereof; and to make all repairs to the improvements, structural and otherwise, both interior and exterior, necessary to preserve the same in good order and condition; and to repair, at or before the end of the term of this lease, or any extensions thereof, all injury done by the installation or removal of furniture, fixtures and property."

(h)  It is understood and agreed that the contribution by the Tenant for ad valorem real estate taxes and insurance premiums as presently provided under Article 31 in said lease shall specifically apply to all the increased taxes and insurance premiums which are to be expected as a result of the completion of

G00026

construction of the addition to Tenant's building and the related improvements contemplated hereunder.

4.    The taxes which Tenant is to reimburse Landlord pursuant to Paragraph 31 of the Lease shall include, without limitation (1) all taxes and assessments, levies, fees, water and sewer rents, charges, licenses, permit fees and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are, at any time prior to or during the term of the Lease, imposed or levied upon or assessed against (A) the demised premises or any part thereof or any interest therein, (B) any annual minimum guaranteed rental, or additional rent or other sum payable under the Lease, or (C) the Lease, the leasehold estate created thereby or which arises in respect of the operation, possession or use of the demised premises or any part thereof, (11) all gross receipts or similar taxes imposed or levied upon, assessed against or measured by any minimum guaranteed rental, additional rent, or other sum payable hereunder, (111) all sales, use and similar taxes at any time levied, assessed or payable on account of the acquisition, leasing or use of the demised premises or any part thereof; and (iv) all charges for utilities servicing the demised premises.   Tenant shall not be required to pay any franchise, estate, inheritance, transfer, income, capital gains or similar taxes of Landlord (other than any tax referred to in Clause (ii); unless such taxes imposed, levied or assessed in substitution for, in whole or in part, any other tax, assessment, charge or levy which Tenant is required to pay pursuant to this paragraph (i)

5    The legal description of the demised premises appearing on Exhibit "B" attached to said lease dated April 13, 1987, and also appearing in a short form of said lease of even date therewith, is amended to add thereto, and to include within the operation of said lease, the following described parcel of land

THAT PORTION OF GROUND, together with all the buildings and improvements thereon, situated in the SECOND DISTRICT, City of New Orleans, State of Louisiana in that part thereof designated as Square 509, being bounded by North Scott Street, St. Louis Street, Toulouse Street and North Cortéz Street.   Said portion of ground is designated as Lot B-2 on a plan of resubdivision prepared by John D. Luecke, Professional Land Surveyor dated May

C00627

12, 1987 approved by the City Planning Commission under date of June 30, 1987, registered in COB 810, folio 659, according to which said Lot B-2 forms the corner of North Cortez Street and Toulouse Street and measures 247 feet, 9 inches, 1 line front on Toulouse Street, same width in the rear by a depth and front on North Cortez Street of 120 feet, 9 inches, 0 lines and a depth on the opposite sideline adjoining Lot B-1 of 120 feet, 9 inches, 0 lines.

Being the same property acquired by Winn-Dixie Louisiana, Inc., by act before John D. Kitchen, Notary Public, dated February 10, 1994, recorded Conveyance Instrument No 82415, Notarial Archives No. 94-06778 February 10, 1994

SUBJECT TO:  Location of six (6') foot chain link fence as shown on resubdivision survey dated June 30, 1987, registered in COB 810, folio 659.

    6.    Article 13 is hereby deleted and the following is substituted in lieu thereof:

    (a)   Tenant, immediately upon obtaining knowledge of the institution of any proceedings for condemnation "(Condemnation"), shall notify Landlord thereof and Landlord shall be entitled to participate in any Condemnation proceeding   Landlord immediately upon obtaining knowledge of the institution of any proceeding for Condemnation, shall notify Tenant thereof and Tenant shall have the right to participate in such proceedings at its own expense Subject to the provisions of this Paragraph 6, Tenant hereby irrevocably assigns to the holder ("Lender") of any first mortgage ("Mortgage") on the Premises or to Landlord, in that order, any award or payment to which Tenant is or may be entitled by reason of any Condemnation, whether the same shall be paid or payable for Tenant's leasehold interest hereunder or otherwise, but nothing in this Lease shall be deemed to (i) assign to Landlord or Lender any award or payment on account of Tenant's trade fixtures, or other tangible personal property, moving expenses, or similar claims, if available, to the extent Tenant shall have a right to make a separate claim therefor against the condemnor or (ii) impair Tenant's right to any such award or payment so long as such claim is not based upon the value of Tenant's leasehold interest, it being agreed, however, that (x) Tenant shall in no event be entitled to any payment for the items specified in clauses (i) and (ii) of this subparagraph (a) if the same shall reduce in any manner the amount of the award which Landlord would have been

000028

entitled to receive as a result of such condemnation had no such payment been made to Tenant and (y) any such amount payable to Tenant shall be subject and subordinate to the amount of the award payable to the Lender, whether or not this Lease shall be prior to or subject to the Mortgage.

(b)   If (i) the entire demised premises or (ii) any substantial portion of the demised premises, the loss of which even after restoration would be, in a reasonable and good faith opinion of the Tenant, substantially and materially adverse to the business operations of Tenant, shall be subject to a taking by a duly constituted authority or agency having jurisdiction ("Taking"), then Tenant shall, not later than sixty (60) days after a Taking has occurred, serve notice upon Landlord ("Tenant's Termination Notice") of its intention to terminate the Lease on any date monthly minimum guaranteed rental ("Basic Rent") is payable hereunder ("Basic Rent Payment Date") as specified in such notice, which date (the "Termination Date") shall be no sooner than the first Basic Rent Payment Date occurring after the date of Tenant's Termination Notice.   In addition to the foregoing, an officer of Tenant shall, not later than sixty (60) days after a Taking has occurred, serve a certificate of Tenant certifying to Landlord and Lender that the Taking substantially and materially adversely affects the business operations of Tenant.   In the event that during the initial term Tenant shall serve such notice upon Landlord of its intention to terminate the Lease on the Termination Date, Tenant shall, as part of such notice, offer to purchase the demised premises and the award, or if no part of the demised premises shall remain, the entire award, for the applicable price computed in accordance with the schedule annexed hereto and marked Exhibit "A" ("Purchase Price").   If Landlord and Lender shall not elect to accept Tenant's said offer to purchase, Landlord shall give notice thereof to Tenant within thirty (30) days after the giving of Tenant's Termination Notice.   Should said offer to purchase not be accepted by Landlord and Lender, this Lease shall be terminated as above provided and the entire award made in the

000023

Condemnation proceeding shall be paid to Lender or to Landlord in
that order. Landlord's notice not to elect to accept Tenant's said
offer to purchase shall be void and of no effect unless accompanied
by a written notice of Lender to the effect that Lender also elects
not to accept Tenant's said offer to purchase. Should said notices
of Landlord and Lender accepting Tenant's said offer to purchase
not be served within said period of thirty (30) days, then and in
that event, the said offer shall be deemed accepted

In the event that Landlord or Lender shall accept or be deemed
to have accepted Tenant's offer to purchase, title shall close and
purchase price shall be paid as hereinafter provided and in such
event Tenant shall be entitled to and shall receive any and all
awards thereafter made in the Condemnation proceeding and Landlord
shall assign or in case of any award previously made, deliver to
Tenant on the Closing Date such award as may be made

In the event Landlord and Lender shall accept Tenant's offer
to purchase, title shall close thirty (30) days after the
Termination Date (the "Closing Date"), and Tenant shall pay the
Purchase Price by transferring immediately available federal funds
to such account or accounts and in such bank or banks as Lender or
Landlord in that order shall designate, upon delivery of a special
warranty deed conveying the demised premises and all other required
documents including an assignment or any award in connection with
such Taking. The special warranty deed shall convey a good and
clear record and marketable title, free from encumbrances other
than (i) covenants, easements and restrictions of records; (ii)
liens or encumbrances created or suffered through or by Tenant
failing to observe or perform any of the terms, covenants or
agreements herein provided to be observed and performed by Tenant;
(iii) any installments of Impositions due and payable after the
Closing Date, and (iv) the Lease. Such deed shall contain an
agreement by grantee to observe and perform all of the covenants,
conditions and restrictions contained in any instruments of record
which were assumed by Landlord or deemed to have been assumed by
Landlord on its acquisitions of title. The Purchase Price payable

000036

as hereinabove provided shall be charged or credited, as the case may be, on the Closing Date, to reflect adjustments of Basic Rent paid or payable to the Closing Date, apportioned as of the Closing Date. If on the Closing Date, there may be any liens or encumbrances which Landlord is obligated to remove, Landlord shall use reasonable efforts to remove the same, and the Closing Date shall be extended for a reasonable period to permit Landlord to discharge such liens or encumbrances. During such period and until the Closing Date, Tenant shall continue to pay Basic Rent, without abatement, deduction or setoff. If by said extension date such liens or encumbrances shall not be removed and such liens or encumbrances shall be subordinate to a Mortgage, Tenant shall seek to purchase the Mortgage from the holder thereof at a price which shall in no event exceed the Purchase Price and the demised premises shall be conveyed by Landlord to Tenant subject to the Mortgage and in such event the amount payable by Tenant to the holder of the Mortgage shall be deducted from the Purchase Price payable to Landlord. Landlord shall not be obligated to discharge any such lien or encumbrance if Tenant's title insurance company shall issue affirmative insurance to the effect that the same shall not be collected from or enforced against the insured premises The acceptance of the deed by Tenant shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Landlord to be performed pursuant to the provisions hereof. Tenant shall pay all conveyance, transfer, sale and like taxes required in connection with the purchase. If there be any liens or encumbrances against the demised premises which Landlord is obligated to remove, upon request made a reasonable time before the Closing Date, Tenant shall provide at the Closing separate funds for the foregoing, payable to the holder of such lien or encumbrances.

In the event that during any renewal term Tenant shall serve Tenant's Termination Notice upon Landlord, this Lease and the term hereof shall terminate on the Termination Date   In such event the

G00031

entire award made in Condemnation proceeding shall be paid to Lender, or to Landlord, in that order.

(c)    In the event of any other Condemnation of part of the demised premises which does not result in a termination of this Lease, or in the event of a requisition of any of the demised premises, the Lease shall continue in full force and effect without abatement or reduction of Basic Rent, additional rent, or other sums payable by Tenant hereunder, notwithstanding the partial Taking or requisition.    Tenant shall, promptly after any such requisition, at its expense, repair damage caused thereby in conformity with the requirements of Paragraph 3(g) hereof (the "Restoration"), so that, thereafter, the demised premises shall be, as nearly as possible, in a condition as good as the condition thereof immediately prior to such requisition.  In the event of any such partial Taking, Landlord shall make the Net Award available to Tenant to make such repair, but if such Net Award shall be in excess of $100,000, only against certificates of Tenant delivered to Landlord from time to time as such work or repair progresses, each such certificate describing the work or work repair for which Tenant requesting payment and the cost incurred by Tenant in connection therewith and stating that Tenant has not theretofore received payment for such work. Any Net Award remaining after such repairs have been made, shall be delivered to Tenant, but only to the extent that the aggregate amount of such Net Award as remaining and all amounts theretofore paid to Tenant pursuant to this sentence do not exceed $100,000. If such amounts exceed $100,000, the excess may be retained by Landlord and applied in reduction of the principal amount of the indebtedness secured by the Mortgage then outstanding at Landlord's sole option. If Landlord retains any such amount the Basic Rent payable on or after the Second Basic Payment Date occurring after such retention shall be reduced equitably by in no event shall the Basic Rent be reduced lower than the monthly debt payments due under the Mortgage  In the event of such requisition, Tenant shall be entitled to receive the entire Net Award payment by reason of such requisition or portion of such

000032

requisition occurring during the term hereof, less any costs incurred by the Landlord in connection therewith  If the cost of any repairs required to be made by Tenant pursuant to this paragraph shall exceed the amount of the Net Award, the deficiency shall be paid by Tenant.  No payments shall be made to Tenant pursuant to this paragraph if any default shall have happened and shall be continuing under the Lease

(d)  Except with respect to an award or payment to which Tenant is entitled pursuant to the provisions of Paragraphs 6(a), 6(b) and 6(c) above, no agreement with any condemnor in settlement of or under threat of any Condemnation shall be made by either Landlord or Tenant without the written consent of the other, and by Lender, if the demised premises are then subject to a Mortgage, which consent shall not be unreasonably withheld or delayed

7.  It is mutually agreed that the said lease dated April 13, 1987, as amended, shall be and remain in full force and effect except only as the same is specifically modified hereby  All covenants, terms, obligations and conditions of said lease not changed by the within Amendment of Lease, are hereby ratified and confirmed.

WINN-DIXIE STORES, INC., a Florida corporation, hereinafter called "Guarantor", joins in the execution hereof for the purpose of evidencing its consent to the execution of the within Amendment of Lease by Tenant, its wholly-owned subsidiary corporation, and to further evidence unto Landlord, and Landlord's successors and assigns, the continuing guaranty by Guarantor, and Guarantor's successors and assigns, of the due performance by Tenant, and Tenant's successors and assigns, of Tenant's obligations under said lease dated April 13, 1987, as amended, and the within Amendment of Lease including, without limitation, the payment of rentals during the entire term of this lease, and any extension thereof

000033

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be duly executed the day and year first above written.

WITNESSES:

S.S. PROPERTIES ASSOCIATES I
a New Jersey Limited Partnership
By All Its General Partners
(Landlord)

FINANCIAL PACKAGING COMPANY

By: _____
       Its Partner

F.P.C. CORPORATION

By: _____
       Its President

Attest _____
       Its Secretary

SHELDON J. STREISAND, INC

By: _____
       Its President

Attest: _____
       Its Secretary

S. D. ASSOCIATES

By: _____
       Its Partner

_____
SHELDON J. STREISAND
Individually

WINN-DIXIE LOUISIANA, INC
a Florida Corporation
(Tenant)

By: _____
       Its Vice President

Attest: _____
       Its Secretary

WINN-DIXIE STORES, INC
(Guarantor)

By: _____
       Its Vice President

Attest _____
       Its Secretary

000034

STATE OF _New York_ )
COUNTY OF _New York_ )

BE IT KNOWN, that on this _3_ day of _May_ ____,
1994, before me, the undersigned authority, personally came and
appeared _Stephen F. Easton_____, Partner of Financial
Packaging Company, One of the General Partners of S S. Properties
Associates I, a New Jersey Limited Partnership, to me known, and
known by me to be the person whose genuine signature is affixed to
the foregoing lease who signed said lease before me and in the
presence of the two witnesses whose name are hereto subscribed as
such, and each acknowledged in my presence and in the presence of
said witnesses that he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set forth

IN WITNESS WHEREOF the said appearers have signed these
presents and I have hereunto affixed my official hand and seal on
the day and year first above written

WITNESSES:

_____      By: _____

_____      Its: _____

SWORN TO AND SUBSCRIBED BEFORE
ME, THIS _3_ DAY OF
_May_____, 1994.

_____                (NOTARIAL SEAL)
Notary Public                    RINA TULLO
My Commission Expires._____     Notary Public, State of New York
                                   No. 30-4979706
                                 Qualified in Nassau County
                              Commission Expires Dec 18, 19 _94_

STATE OF _New York_ )
COUNTY OF _Nassau_ )

BE IT KNOWN, that on this _4th_ day of _May_____,
1994, before me, the undersigned authority, personally came and
appeared _Sheldon J. Strecsisa___, President of FPC
Corporation, One of the General Partners of S S. Properties
Associates I, a New Jersey Limited Partnership, to me known, and
known by me to be the person whose genuine signature is affixed to
the foregoing lease who signed said lease before me and in the
presence of the two witnesses whose name are hereto subscribed as
such, and each acknowledged in my presence and in the presence of
said witnesses that he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set forth

IN WITNESS WHEREOF the said appearers have signed these
presents and I have hereunto affixed my official hand and seal on
the day and year first above written.

WITNESSES:

_____      By: _____

_____      Its: _President___

SWORN TO AND SUBSCRIBED BEFORE
ME, THIS _4th_ DAY OF
_May_____, 1994.

_____                (NOTARIAL SEAL)
Notary Public
My Commission Expires._10/15/95___
                         JUDY A. KENNEDY
                   NOTARY PUBLIC, State of New York
                           No. 4647650
                     Qualified in Nassau County
                  Commission Expires October 15, 19_95_       14

BUS\8324.1

666663

STATE OF _New York_ )
COUNTY OF _Nassau_ )

BE IT KNOWN, that on this ___4th___ day of ___May___,
1994, before me, the undersigned authority, personally came and
appeared ___Sheldon S Streisand___, President of Sheldon J
Streisand, Inc., One of the General Partners of S S Properties
Associates I, a New Jersey Limited Partnership, to me known, and
known by me to be the person whose genuine signature is affixed to
the foregoing lease who signed said lease before me and in the
presence of the two witnesses whose name are hereto subscribed as
such, and each acknowledged in my presence and in the presence of
said witnesses that he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set forth

IN WITNESS WHEREOF the said appearers have signed these
presents and I have hereunto affixed my official hand and seal on
the day and year first above written.

WITNESSES:

By: _____

Its: ___President___

SWORN TO AND SUBSCRIBED BEFORE
ME, THIS ___4th___ DAY OF
___May___, 1994.

_____    (NOTARIAL SEAL)
Notary Public
My Commission Expires: ___10/15/95___

JUDY A KENNEDY
NOTARY PUBLIC, State of New York
No 4667880
Qualified in Nassau County
Commission Expires October 15, 1995

STATE OF _New York_ )
COUNTY OF _New York_ )

BE IT KNOWN, that on this ___3rd___ day of ___May___,
1994, before me, the undersigned authority, personally came and
appeared ___Robert Sylvor___, Partner of S D
Associates, One of the General Partners of S.S Properties
Associates I, a New Jersey Limited Partnership, to me known, and
known by me to be the person whose genuine signature is affixed to
the foregoing lease who signed said lease before me and in the
presence of the two witnesses whose name are hereto subscribed as
such, and each acknowledged in my presence and in the presence of
said witnesses that he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set forth

IN WITNESS WHEREOF the said appearers have signed these
presents and I have hereunto affixed my official hand and seal on
the day and year first above written.

WITNESSES:

By: _____

Its: ___Partner___

SWORN TO AND SUBSCRIBED BEFORE
ME, THIS ___3rd___ DAY OF
___May___, 1994.

_____    (NOTARIAL SEAL)
Notary Public
My Commission Expires: _____

RICHARD L GOLD
Notary Public, State of New York
No 31-4643598
Qualified in New York County
Commission Expires August 31, 1995

15

BUS\9224 1

STATE OF New York    )
COUNTY OF Nassau    )

BE IT KNOWN, that on this 4th day of May,
1994, before me, the undersigned authority, personally came and
appeared Sheldon J. Streisand, One of the General Partners of S  S
Properties, I, a New Jersey Limited Partnership, to me known, and
known by me to be the person whose genuine signature is affixed to
the foregoing lease who signed said lease before me and in the
presence of the two witnesses whose name are hereto subscribed as
such, and each acknowledged in my presence and in the presence of
said witnesses that he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set forth

IN WITNESS WHEREOF the said appearers have signed these
presents and I have hereunto affixed my official hand and seal on
the day and year first above written

WITNESSES:

_Kathleen Plakitis_

_Edward C. Raffa_

SWORN TO AND SUBSCRIBED BEFORE
ME, THIS 4th DAY OF
May, 1994.

_Judy A. Kennedy_                (NOTARIAL SEAL)
Notary Public
My Commission Expires: 10/15/95

JUDY A. KENNEDY
NOTARY PUBLIC, State of New York
No. 4087680
Qualified in Nassau County
Commission Expires October 15, 1995


STATE OF FLORIDA )
COUNTY OF DUVAL  )

BE IT KNOWN, that on this 25th day of April,
1994, before me, the undersigned authority, personally came and
appeared       James Kufeldt       , Vice President of WINN-
DIXIE LOUISIANA, INC., a Florida corporation qualified to do
business in the State of Louisiana, to me known, and known by me to
be the person whose genuine signature is affixed to the foregoing
lease who signed said lease before me and in the presence of the
two witnesses whose name are hereto subscribed as such, and each
acknowledged in my presence and in the presence of said witnesses
that he signed the above and foregoing lease as his free act and
deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appearers have signed these
presents and I have hereunto affixed my official hand and seal on
the day and year first above written.

WITNESSES:

_July Gaye_                        By: _____

_Jane Michette_                    Its: Vice President

SWORN TO AND SUBSCRIBED BEFORE
ME, THIS 25th DAY OF
April, 1994.

_Laura E. Baughman_                (NOTARIAL SEAL)
Notary Public
My Commission Expires: _____

LAURA L. BAUGHMAN
My Commission Exp July 17, 1994
Comm No LC 021735

BUS\8324 1

STATE OF FLORIDA }
COUNTY OF DUVAL  }

    BE IT KNOWN, that on this ___25th___ day of ___April_____,
1994, before me, the undersigned authority, personally came and
appeared _____James Kufeldt_____, ~~Vice~~ President of WINN-
DIXIE STORES, INC , a Florida corporation, to me known, and known
by me to be the person whose genuine signature is affixed to the
foregoing lease who signed said lease before me and in the presence
of the two witnesses whose name are hereto subscribed as such, and
each acknowledged in my presence and in the presence of said
witnesses that he signed the above and foregoing lease as his free
act and deed and for the uses and purposes therein set forth

    IN WITNESS WHEREOF the said appearers have signed these
presents and I have hereunto affixed my official hand and seal on
the day and year first above written.

WITNESSES

_____          By: _____

_____          Its: ____President____

SWORN TO AND SUBSCRIBED BEFORE
ME THIS _25th_ DAY OF
___April_____, 1994

_____          (NOTARIAL SEAL)
Notary Public
My Commission Expires._____
                        My Comm Exp July 17, 1991
                        Comm No CC 6/12 6

000038

## CONSENT

WESTERN NATIONAL LIFE INSURANCE COMPANY, a _____

_____ corporation, as the owner and holder of a mortgage

encumbering the premises described in the attached Amendment of

Lease does hereby consent to the attached and foregoing Amendment

of Lease.

IN WITNESS WHEREOF, WESTERN NATIONAL LIFE INSURANCE COMPANY

has caused these presents to be executed in its corporate name and

its corporate seal to be hereunto affixed and attested by its

officers thereunto duly authorized, this _____ day of _____.

1994.

<div style="margin-left:40%">

WESTERN NATIONAL LIFE
INSURANCE COMPANY

By·_____
    Its Vice President

Attest _____
    Its Secretary

</div>

_____

_____

STATE OF         )
COUNTY OF       )

BE IT KNOWN, that on this _____ day of _____,
1994, before me, the undersigned authority, personally came and
appeared WESTERN NATIONAL LIFE INSURANCE COMPANY, a _____
_____ corporation, to me known, and known by me to be the person
whose genuine signature is affixed to the foregoing lease who
signed said lease before me and in the presence of the two
witnesses whose name are hereto subscribed as such, and each
acknowledged in my presence and in the presence of said witnesses
that he signed the above and foregoing lease as his free act and
deed and for the uses and purposes therein set forth

IN WITNESS WHEREOF the said appearers have signed these
presents and I have hereunto affixed my official hand and seal on
the day and year first above written.

WITNESSES.

_____      _____

_____

SWORN TO AND SUBSCRIBED BEFORE
ME, THIS _____ DAY OF
_____, 1994.

(NOTARIAL SEAL)

_____
Notary Public
My Commission Expires·_____

060069

## CONSENT

BANKAMERICA NATIONAL TRUST COMPANY, F/K/A SECURITY PACIFIC NATIONAL TRUST COMPANY (NEW YORK), as Trustee under the Pooling and Servicing Agreement dated as of February 9, 1989, Series 1989-1, a National Banking Association, as the owner and holder of a mortgage encumbering the premises described in the attached Amendment of Lease does hereby consent to the attached and foregoing Amendment of Lease    CONSECO CAPITAL MANAGEMENT, INC. is the servicer of the mortgage described herein pursuant to a Pooling and Servicing Agreement dated as of February 9, 1989.    Under the terms of said Pooling and Servicing Agreement CONSECO CAPITAL MANAGEMENT, INC. is authorized and empowered to enter into and execute this Consent on behalf of BANKAMERICA NATIONAL TRUST COMPANY

IN WITNESS WHEREOF, CONSECO CAPITAL MANAGEMENT, INC. has caused these presents to be executed in its corporate name this _30th_ day of May, 1995.

> CONSECO CAPITAL MANAGEMENT, INC ,
> Servicer, for and on behalf of
> BANKAMERICA NATIONAL TRUST COMPANY
>
> BY:  _____
> ROBERT N  WILKINSON, JR
> Its Vice-President

## CORPORATE ACKNOWLEDGEMENT

STATE OF TEXAS           §
                         §
COUNTY OF POTTER         §

BE IT KNOWN, that on this _30th_ day of May, 1995, before me, the undersigned authority, personally came and appeared ROBERT N WILKINSON, JR., Vice-President of CONSECO CAPITAL MANAGEMENT, INC , a Delaware corporation, to me known, and known by me to be the person whose genuine signature is affixed to the foregoing Consent who signed said Consent before me and in the presence of the two witnesses whose names are hereto subscribed as such, and each acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing Consent as his free act and deed and for the uses and purposes therein set forth

IN WITNESS WHEREOF the said appearers have signed these presents and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES.
_____

_____          _____

SWORN TO AND SUBSCRIBED BEFORE
ME, THIS _30th_ DAY OF
_May_____, 1995

_____          (NOTARIAL SEAL)
Notary Public
My Commission expires:_____

LORETA KUNKEL
MY COMMISSION EXPIRES
October 21, 1997

000040

EXHIBIT 5

### ESTOPPEL CERTIFICATE

WINN-DIXIE STORE #1419
Winn-Dixie Marketplace
New Orleans, Louisiana

The undersigned officer of Winn-Dixie Montgomery, Inc., a Florida corporation, successor in interest to Winn-Dixie Louisiana, Inc ("WD") hereby certifies, on behalf of WD, that as of February 2, 2005 (the "Certificate Date"), the following is true and correct.

1.     That WD is the tenant ("Tenant") under a currently effective lease (as amended as described below, the "Lease") with Michael Oschin, an individual, The Lynda Oschin Trust, The Barbara Oschin Primicerio Trust created under Will of Helen Oschin, and The Michael Oschin Trust created under Will of Helen Oschin, as the current landlord ("Landlord") dated April 13, 1987, conveying a leasehold estate of the property described therein (the "Premises") located in a shopping center known as Winn-Dixie Marketplace (the "Shopping Center"), and the Lease has been amended or is evidenced only by:

> (a)     Short Form Lease dated April 13, 1987, recorded in Register of Conveyances Book 813-H, folio 73-75 of the public records of Orleans Parish, Louisiana;
>
> (b)     Supplemental Lease Agreement dated June 8, 1988;
>
> (c)     Amendment of Lease dated April 25, 1994.

2.     That the term of the Lease commenced March 31, 1988, and is scheduled to expire on June 20, 2015, unless renewed or terminated in accordance with the terms of the Lease.  Pursuant to the Lease, Tenant is entitled to renew the Lease for five (5) terms of five (5) years each.

3.     That, to Tenant's knowledge, and subject to Tenant's right of audit and review as provided in the Lease, all rent and other sums due from Tenant to Landlord have been paid through and including February 28, 2005, and Tenant currently has no defense, set-offs, or counterclaims to the payment of rent or other sums due Landlord under the Lease

4.     That, to Tenant's knowledge, Landlord is not in default under the Lease.

5.     That the Lease contains no provision for purchase of the Premises by Tenant

6.     Tenant has received no notice of any sale, transfer, assignment, or pledge of Landlord's interest in the Lease or the rent due thereunder to any party except  First National Bank of Commerce and Western National Life Insurance Company.

7     Tenant is not the subject of any filing for bankruptcy or reorganization under any applicable bankruptcy law.

8.     Notwithstanding anything to the contrary herein·

> (a)     No acceptance or possession of the Premises, opening for or operation of business by Tenant therein, execution of this certificate, or payment of rent under the Lease constitutes or will constitute acceptance by Tenant of work or materials that are defective or not completed or maintained in accordance with Tenant's plans and specifications and/or the site plan, or a waiver of Tenant's rights against Landlord in connection therewith.
>
> (b)     Tenant makes no representation or warranty that the Premises or the Shopping Center, or any portion thereof is in compliance with the Americans With Disabilities Act or other applicable laws or regulations, however, it has not received notification from any government agency of any noncompliance therewith.

9       The address for notices to Tenant is 600 Edwards Avenue, Harahan, Louisiana 70123-3185, Attn Asset/Property Management with a copy to: General Counsel, Winn-Dixie Stores, Inc., 5050 Edgewood Ct (32254), P O. Box B, Jacksonville, FL 32203-0297.

10.      This certificate is not valid and may not be relied upon unless and until it is executed by the Landlord and a signed counterpart is received by Tenant

IN WITNESS WHEREOF, the undersigned has executed this certificate on behalf of Tenant.

WINN-DIXIE MONTGOMERY, INC.

By    _____
            Bennett L Nussbaum
      Its.   VICE PRESIDENT

The undersigned, on behalf of Winn-Dixie Stores, Inc , a Florida corporation, guarantor of the Lease ("Guarantor"), hereby affirms that, to Guarantor's knowledge, the foregoing statements are true and correct, and that the Guaranty of the Lease by Winn-Dixie Stores, Inc., is in full force and effect.

Winn-Dixie Stores, Inc.

By:   _____
            Bennett L Nussbaum
      Its:    Senior Vice-President

The undersigned, on behalf of Landlord, affirms that the certifications by Tenant in the foregoing certificate are true and correct to the best of Landlord's knowledge. Further, Landlord certifies that, to the best of Landlord's knowledge, Tenant has fully performed its obligations under the Lease to date and Tenant is not in default thereunder.

IN WITNESS WHEREOF, the undersigned has executed this certificate on behalf of Landlord.

MICHAEL OSCHIN, individually and as Trustee of

The Barbara Oschin Primicerio Trust created under Will of Helen Oschin, and

The Michael Oschin Trust created under Will of Helen Oschin

By  _____
      Michael Oschin
      Date._____

AND

The Lynda Oschin Trust

By   _____
      Lynda Oschin, Trustee
      Date:_____

000042