IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re

WINN-DIXIE STORES, INC., et al.,

Debtor.

_____/

Chapter 11
Case No. 3:05-03817-JAF
(Jointly Administered)

## DIVERSIFIED MAINTENANCE SYSTEMS, INC.'S MOTION TO COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT

Creditor, Diversified Maintenance Systems, Inc. ("Diversified"), by and through its undersigned counsel, files its Motion to Compel Assumption or Rejection of Executory Contract and in support thereof states as follows:

### Background

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court.

2. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. On March 1, 2005, the Official Committee of Unsecured Creditors (the "Creditor's Committee") was appointed to serve in these cases pursuant to § 1103 of the Bankruptcy Code.

4. The Debtors are grocery and pharmaceutical retailers operating in southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion. The Debtors currently operate more than 900 stores in the United States with nearly 79,000 employees.

5. The Debtors sought and obtained two extensions of the exclusive periods for filing Chapter 11 plans until December 19, 2005 and obtaining acceptances until February 20, 2006. The Debtors' third motion to extend the exclusive periods seeks an extension until March 20, 2006 to file plans and May 22, 2006 to solicit acceptances.

6. Diversified is a national janitorial and floor care service company.

7. Prior to the Petition Date, the Debtors and Diversified entered into a contract entitled, "Winn-Dixie Stores, Inc. Agreement for Floor Care/Janitorial Services," dated March 4, 2004 (the "Diversified Janitorial Service Agreement") Diversified agreed to clean all flooring for the Debtors' facilities, as well as restrooms, office and training rooms, and back areas of certain grocery stores of the Debtors. In return, the Debtors agreed to compensate Diversified based upon annual price per square feet. At that time, Diversified provided janitorial services to the Debtors for 431 of its facilities throughout Florida and Georgia. A true and correct copy of the Diversified Janitorial Service Agreement is attached hereto as **Exhibit "A."**

8. Diversified and SBM of Davie, Inc. ("Sub-contractor") entered into a Subcontractor General Agreement dated July 19, 2004 (the "Sub-contractor Agreement"), Diversified is required to pay the Sub-contractor for services rendered to the Debtors' facilities only after payment by the Debtors to Diversified. See Paragraph 3 of the Sub-contractor Agreement. A true and correct copy of the Sub-contractor Agreement is hereto as **Exhibit "B."**

## Relief Requested

9. By this Motion, Diversified seeks entry of an order under 11 U.S.C. § 365(d)(2), compelling the Debtors to assume or reject the Diversified Janitorial Service Agreement.

10. Diversified is owed approximately $946,000 in pre-petition services provided by Diversified to the Debtors for the one month period prior to the Petition Date for services from January 23, 2005 through February 21 2005. See Diversified's Proof of Claim filed on or about May 18, 2005.

11. As referenced above, the Sub-contractor Agreement paragraph 3 states as follows:

> Para. 3. Payment. Upon satisfactory completion of all required Services by Subcontractor, Subcontractor shall submit to Contractor (i) an invoice setting forth with specificity all hours actually worked by Subcontractor and/or the employees thereof while performing the Services and (ii) an approved and fully executed work completion order or Janitorial Service Report form to Contractor. Subject to Paragraph 13 hereunder, Subcontractor will be

> paid when Customer [Debtor] has reviewed the submitted, signed Janitorial Service Report and/or work completion order **and paid Contractor therefor**, but in no event shall Subcontractor be paid for any Services not performed to the full satisfaction of the Customer.

(Emphasis supplied).

12. As a result of the pre-petition payment due by the Debtors to Diversified, the Sub-contractor initiated a state court action against Diversified styled <u>SBM Of Davie, Inc. v. Diversified Maintenance Services, Inc.</u>, Case No. 05-CA-010095, for payments comprised in the pre-petition services rendered to the Debtors by Diversified (the "State Court Action").

13. Diversified filed a notice of removal of the State Court Action on January 9, 2006, thereby initiating adversary proceeding no. 06-10.

14. Diversified has continued to do business with the Debtors. As a result of the filing of the bankruptcy case and the automatic stay, Diversified is stayed from collecting the pre-petition debt for services rendered for the one month prior to the Debtors' filing.

15. The Debtors have neither accepted nor rejected the executory contract, the Diversified Janitorial Service Agreement, and accordingly, have not cured the pre-petition arrears under the agreement between Diversified and the Debtors.

16. As a result of the filing of the bankruptcy case, Diversified is faced with shouldering a substantial payment to the Sub-contractor at Diversified's expense

## Applicable Authority

Section 365(d)(2) of the Bankruptcy Code provides, in pertinent part,

> In a case under chapter ... 11 ... of this title, the trustee may assume or reject an executory contract ... at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C § 365(d)(2). Thus, § 365(d)(2) allows a creditor who cannot afford to be left in limbo about its status vis-à-vis the estate to ask the court to impose a deadline on the debtor to decide whether to accept or reject a lease. See In re Sae Young Westmont-Chicago, L.L.C., 276 B.R. 888, 893 (Bankr. N.D. Ill 2002).

The settled rule under § 365(d)(2) is that the debtor has a reasonable time within which to decide whether to assume or reject an executory contract. See In re Enron Corp., 279 B.R. 695, 702 (Bankr. S.D. N.Y. 2002)(four months is reasonable time for debtor to make a determination to assume or reject executory contracts with movant). The determination of what is a reasonable time is within the bankruptcy court's discretion "in light of the circumstances of each case." Id. quoting Theatre Holding Corp. v. Mauro, 681 F.2d 102, 105 (2nd Cir. 1982); accord, In re Braniff, 118 B.R. 819, 845 (Bankr. M.D. Fla 1989). In determining what constitutes a reasonable time, the Second Circuit in Theatre Holding considered several factors, including:

> 1) the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;
> 2) the importance of the contract to the debtor's business and reorganization;
> 3) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its

5

       assets in formulating a plan; and
4) whether exclusivity has terminated.

Id., quoting Theatre Holding, 681 F.2d at 105-106.

    Here, Diversified cannot afford to be left in limbo about its status vis-à-vis the estates.

    Diversified will suffer severe damage beyond the compensation available under the Bankruptcy Code unless the Debtors are compelled to assume or reject the Diversified Janitorial Service Agreement. Although Diversified's position is that Diversified is not required to pay the Sub-Contractor until the Debtors pay Diversified, Diversified is embroiled in litigation commenced by the Sub-contractor for payment of amounts owed pre-petition. If the Debtors assume the Diversified Janitorial Service Agreement and propose a prompt cure, then Diversified's litigation will be resolved.

    The Debtors have had more than sufficient time to determine the importance of the Diversified Janitorial Service Agreement to the Debtors' business and reorganization and has had more than ample time to appraise its financial situation and the value of its assets in formulating a plan. This case was filed over a year ago. The Debtors have sought and obtained three extensions of exclusivity and to date no plan has been filed. The Debtors' latest request for an extension seeks an extension of the solicitation period until May 22, 2006.

    Diversified should not be required to shoulder the burden of litigation with the Sub-contractor until at least the end of May 2006 before it will know whether the Debtors will assume the executory contract and cure the pre-petition arrearages. Requiring Diversified to wait approximately fifteen (15) months to determine whether the Debtors

6

will assume and cure approximately $1 Million in pre-petition arrearages is unreasonable.

**WHEREFORE**, Diversified respectfully requests that this Court enter an order (a) granting the Motion; (b) compelling the Debtors to assume or reject the Diversified Janitorial Service Agreement within the next thirty (30) days; and (c) granting such other and further relief as this Court deems appropriate.

Respectfully Submitted,

/s/ Dawn A. Carapella
RICHARD J. MCINTYRE
Florida Bar No. 962708
DAWN A. CARAPELLA
Florida Bar No. 0741911
LARA ROESKE FERNANDEZ
Florida Bar No. 0088500
TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.
Suite 2700, Bank of America Plaza
101 East Kennedy Boulevard
Tampa, Florida 33602
Telephone: (813) 223-7474
Fax: (813) 229-6553
Attorneys for Diversified
Maintenance Systems, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Diversified Maintenance Systems, Inc.'s Motion to Compel Assumption or Rejection of Executory Contract (with attached Exhibits A & B) has been furnished by U.S. Mail on March 2, 2006 to:

| | |
|---|---|
| **Paul M. Renner, Esquire**<br>233 E. Bay Street, Suite 901<br>Jacksonville, Florida 32202 | **Winn-Dixie Stores, Inc.**<br>5050 Edgewood Court<br>Jacksonville, Florida 32254-3699 |
| **Adam Ravin, Esquire**<br>Skadden Arps, et al<br>Four Times Square,<br>New York, New York 10036 | **Cynthia Jackson, Esquire**<br>**Stephen D. Busey, Esquire**<br>Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, Florida 32201 |
| **Elena L. Escamilla, Esquire**<br>**U.S. Trustee's Office**<br>135 W. Central Boulevard<br>Suite 620<br>Orlando, Florida 32801 | **Official Committee of Unsecured**<br>**Creditors c/o Dennis F. Dunne, Esquire**<br>Milbank, Tweed, Hadley & McCloy, LLP<br>1 Chase Manhattan Plaza<br>New York, New York 10005 |
| **John B. MacDonald, Esquire**<br>**Patrick P. Patangan, Esquire**<br>Akerman Senterfitt<br>50 North Laura Street<br>Suite 2500<br>Jacksonville, Florida 32202 | **Robert D. Wilcox, Esquire**<br>6817 Southpoint Parkway<br>Suite 1302<br>Jacksonville, Florida 32216 |

/s/ Dawn A. Carapella
Attorney

motion compel ass/rej-1554751v1