## UNITED STATES BANKRUPTCY COURT
## THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **WINN-DIXIE STORES, INC.,** *et al.,* ) | **Case No. 05-03817-3F1** |
| ) | **Chapter 11** |
| **Debtors.** ) | **Jointly Administered** |
| ) | |
| ) | |
| ) | |

## THIRD INTERIM APPLICATION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 1, 2005 THROUGH AND INCLUDING JANUARY 31, 2006

Name of Applicant:      Houlihan Lokey Howard & Zukin Capital, Inc.

Authorized to Provide Professional Services to:      The Official Committee of Unsecured Creditors Winn-Dixie Stores, Inc., et al.

Date of Retention:      March 3, 2005

Periods for which Compensation and Reimbursement is Sought:      October 1, 2005 through and including January 31, 2006

Amount of Compensation Sought as Actual, Reasonable, and Necessary:      $400,000.00 (subject to any applicable holdback)

Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary[1]:      $26,407.13

---

[1] Houlihan Lokey Howard & Zukin Capital, Inc. reserves the right to supplement this Application with expenses not yet accounted for or processed in its accounting system.

# UNITED STATES BANKRUPTCY COURT
## THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| **In re:** )<br><br>**WINN-DIXIE STORES, INC.,** *et al.,* )<br><br>**Debtors.** )<br>)<br>)<br>) | **Case No. 05-03817-3F1**<br>**Chapter 11**<br>**Jointly Administered** |

## THIRD INTERIM APPLICATION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES FOR THE PERIOD <u>OCTOBER 1, 2005 THROUGH AND INCLUDING JANUARY 31, 2006</u>

Houlihan Lokey Howard & Zukin Capital, Inc. ("<u>Houlihan Lokey</u>"), financial advisor to the Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Winn-Dixie Stores, Inc. (the "<u>Debtors</u>"), hereby makes this Third Interim Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the period October 1, 2005 through and including January 31, 2006 (the "<u>Application</u>"). In support of this Application, Houlihan Lokey respectfully represents as follows:

1.     This Application is made pursuant to (<u>i</u>) Sections 328(a), 331, and 1103(a) of the Bankruptcy Code; (<u>ii</u>) Bankruptcy Rules 2016 (the "<u>Bankruptcy Rules</u>"); (<u>iii</u>) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. §330 dated January 30, 1996; (iv) the final Order approving interim compensation procedures for professionals ("<u>Fee Procedures Order</u>") entered by the Court on March 15, 2005; and (<u>v</u>) this Court's Order, dated June 3, 2005, authorizing the

Committee to retain and employ Houlihan Lokey as financial advisor to the Committee in these Chapter 11 cases (the "Retention Order").

2.      By this Application, Houlihan Lokey requests allowance and approval of interim compensation in the amount of $400,000.00 in fees, subject to any applicable holdback, and reimbursement of actual and necessary expenses in the amount of $26,407.13 for the period October 1, 2005 through and including January 31, 2006 (the "Third Interim Period").

## Background

3.      On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

4.      On March 1, 2005, the United States Trustee duly appointed the Committee.[2]

5.      By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

---

[2] The United States Trustee originally appointed the following entities to the Committee:  R$^2$ Investments, LDC, Deutsche Bank Trust Company Americas, New Plan Excel Realty Trust, Inc., Kraft Foods Global, Inc., PepsiCo & Subsidiaries, OCM Opportunities Fund V, L.P., and Capital Research & Management Company.  Current members of the Committee include:  Deutsche Bank Trust Company Americas, New Plan Excel Realty Trust, Inc., Kraft Foods Global, Inc., PepsiCo & Subsidiaries, Capital Research & Management Company, and Wilmington Trust Company.

6.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of the Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 328 and 331 of the Bankruptcy Code.

## Retention of Houlihan Lokey

7.      On March 3, 2005, the Committee retained Houlihan Lokey to act as the financial advisor to the Committee.

8.      On March 29, 2005, the Committee filed an application with this Court (the "Retention Application") requesting authorization to employ and retain Houlihan Lokey as financial advisor to the Committee pursuant to Sections 328(a) and 1103 of the Bankruptcy Code.  As noted in the Committee's retention application, Houlihan Lokey performed services for the Committee effective nunc pro tunc to March 3, 2005.

9.      On June 3, 2005, this Court authorized the Committee to retain and employ Houlihan Lokey as financial advisor to the Committee in these Chapter 11 cases, pursuant to the terms of the engagement letter between the Committee and Houlihan Lokey dated March 3, 2005 (the "Engagement Letter") as modified by the Retention Order.  A copy of the Retention Order is attached hereto as Exhibit "C".

10.      Pursuant to the Retention Order, Houlihan Lokey has been authorized to provide such financial advisory related services as may be requested by the Committee, including the following:

a)  Evaluating the assets and liabilities of the Debtors;

b) Analyzing and reviewing the financial and operating statements of the Debtors;

c) Analyzing the Business Plan and forecasts of the Debtors;

d) Evaluating all aspects of the Debtors' DIP financing; cash collateral usage and adequate protection therefor; any exit financing in connection with any chapter 11 plan and any budgets relating thereto; and any KERP or similar proposed compensation plan or program;

e) Assisting the Committee, as needed, in identifying potential alternative sources of liquidity in connection with any chapter 11 plan or otherwise;

f) Providing such specific valuation or other financial analyses as the Committee may require in connection with the cases;

g) Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

h) Providing testimony in court on behalf of the Committee, if necessary; and

i) Assessing the financial issues and options concerning (a) the sale of any assets of Winn-Dixie and/or its non-debtor affiliates, either in whole or in part, and (b) the Debtors' chapter 11 plan(s) or any other chapter 11 plan(s).

## Terms and Conditions of Compensation of Houlihan Lokey

11.     On a monthly basis, pursuant to the Retention Order, Houlihan Lokey is to be compensated as follows:

a) a monthly fee (the "Monthly Fee") equal to $100,000.00 per month, payable in cash for each month or any part thereof [3]; and

---

[3] Houlihan Lokey shall be paid an additional fee (a "Distribution Fee") equal to 0.75% of the aggregate value received by the non-priority unsecured creditors of the Company. The Distribution Fee shall be paid in the same consideration received by the non-priority unsecured creditors of the Company (including but not limited to all related rights, options and contractual benefits); provided, however, that the Committee may determine, in its sole discretion, that the Distribution Fee be paid in cash at a value to be determined by Houlihan Lokey and the Committee as of the effective date of a plan of reorganization or other relevant distribution date. The Distribution Fee shall be reduced by one hundred percent (100%) of all Monthly Fees paid to Houlihan Lokey after the twelfth Monthly Fee that was timely paid, but in no event shall the Distribution Fee be reduced to less than zero.

     b) Houlihan Lokey shall be entitled to reimbursement of all out-of-pocket expenses reasonably incurred by Houlihan Lokey before termination (or related to Houlihan Lokey's pre-termination services) in connection with the matters contemplated by the Engagement Letter. Out-of-pocket expenses include, but are not limited to, all reasonable travel expenses, duplicating charges, on-line service charges, messenger services, delivery services, meeting services, long distance and mobile telephone and facsimile charges incurred by Houlihan Lokey.

12.    As noted by the Committee in the Retention Application, Houlihan Lokey's fee structure under the Engagement Letter appropriately reflects the nature of the services to be provided by Houlihan Lokey and the fee structures typically utilized by leading financial advisors when billing on a non-hourly basis.

### Summary of Services Provided by Houlihan Lokey

13.    The Committee selected Houlihan Lokey as its financial advisor because of its extensive and diverse experience, knowledge, and reputation in the restructuring field, its understanding of the issues involved in chapter 11 cases, and because the Committee believes that Houlihan Lokey is well-qualified to provide the financial advisory services that will be required here. Houlihan Lokey has served as financial advisor in many large chapter 11 cases.

14.    Although a number of professionals have worked on this engagement, the following professionals have performed substantial services to the Committee in these cases (biographies of such professionals are annexed hereto as Exhibit "F"):

        David R. Hilty – Managing Director
        Saul E. Burian – Managing Director
        Joshua S. Scherer – Director
        Agnes K. Tang – Vice President
        Elisa S. Coimbra - Associate
        Peter W. Chidyllo – Analyst

15.     During the Third Interim Period, Houlihan Lokey's work on behalf of the

Committee has involved five general project categories[4], including:

     (a)     Diligence and Review of Company Business Plan and Footprint;

     (b)     Analysis of Financial Statements and Operational Performance of the Debtors;

     (c)     Correspondence, Meetings, and Discussions with Parties-In-Interest;

     (d)     Evaluating and monitoring of Company asset divestitures; and

     (e)     Case Administration.

16.     **Diligence and Review of Company Business Plan and Footprint.**  Houlihan

Lokey expended considerable time and effort in understanding the Company's five year Business

Plan submitted to the Committee.  Houlihan Lokey visited the Company's core operations and

performed due diligence regarding the Company's store expenditures and operational initiatives.

Furthermore, Houlihan Lokey held numerous in-person and phone discussions with senior

management of each of the Company's operational and regional divisions.  In addition, Houlihan

Lokey researched the state of the retail grocery industry to assess the strategic long-term viability

of the Company and benchmark against assumptions in the Company's Business Plan.  Houlihan

Lokey continues to review the Company's planned operational initiatives as the Company

executes its long-term Business Plan.

---

[4] While specific work could qualify under more than one of these categories, Houlihan Lokey has assigned each of its various tasks/services to the most representative category. As an example, work performed evaluating projected cash flows would pertain on some basis to all of the categories outlined above and would not be specifically assignable to any one.

17.    **Analysis of Financial Statements and Operational Performance of the Debtors.**  Throughout the Third Interim Period, Houlihan Lokey performed substantial due diligence on the Debtors' financial projections, actual financial results, general operations, and key operating initiatives.  During the Third Interim Period, Houlihan Lokey evaluated the Debtors' 12-week cash flow forecasts, as provided, in order to analyze trends in cash receipts and cash disbursements.  In addition, Houlihan Lokey participated in frequent calls with the Debtors to evaluate current financial and operational performance and subsequently reported to the Committee on major trends and business developments.

18.    **Correspondence, Meetings, and Discussions with Parties-In-Interest.**  Houlihan Lokey engaged in extensive correspondence and preparation for meetings with the Committee, the Debtors, the Debtors' advisors, and various parties-in-interest in these Chapter 11 cases.  Houlihan Lokey expended significant time and effort (both in-person and via conference call) meeting the due diligence requirements of the Committee.  In addition, Houlihan Lokey conducted numerous meetings via conference call with parties-in-interest to provide situational updates.  Furthermore, during the Third Interim Period, Houlihan Lokey actively participated in extensive discussions with the Company, the Company's advisors, and the Committee related to substantive consolidation.

19.    **Evaluating and monitoring of Company asset divestitures.**  As part of the Company's operational restructuring efforts, there are substantial assets to be divested based on the Company's reorganized geographic store footprint.  In addition, there are non-core assets (i.e., manufacturing facilities) that are to be sold as part of the Company's focus on its core

business. Houlihan Lokey has worked closely with Xroads and Blackstone in analyzing bids received on manufacturing assets, individual stores, and groups of stores to be divested.

20.     **Case Administration.** This category includes various services related to the Chapter 11 cases generally, retention matters, addressing questions of individual members of the Committee, Chapter 11 procedures, communications and administrative functions and other matters not falling into any of the other categories listed above.

21.     During these Chapter 11 cases, Houlihan Lokey coordinated the services it performed at the Committee's request with services of other advisors and counsel, as appropriate, in an effort to avoid unnecessary duplication of effort.

## Relief Requested

22.     By this Application, Houlihan Lokey seeks allowance of compensation and reimbursement of expenses for the Third Interim Period as follows:

> (a)     Compensation of $400,000.00, subject to any applicable holdback, in respect of fees accrued during the Third Interim Period, consisting of monthly fees for the period beginning October 1, 2005 and ending January 31, 2006 (all of the full amount sought is currently unpaid). A summary of the Monthly Fees due and paid during the Third Interim Period is attached hereto as Exhibit "D".

> (b)     Reimbursement of reasonable, actual, and necessary expenses in the amount of $26,407.13 (all of this amount is currently unpaid) incurred in connection with Houlihan Lokey's services. A summary and itemization of these expenses is attached hereto as Exhibit "E".

## Authority for Requested Relief

23.     By its Retention Order, this Court specifically provided that (a) "the Committee is authorized to retain and employ Houlihan Lokey effective as of March 3, 2005, pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code, as its financial advisors on terms set forth

in the [Retention] Application and the Engagement Letter...." and (b) "Houlihan Lokey's compensation in accordance with the terms of the Engagement Letter...shall not...hereafter be subject to challenge except under the standard of review of Section 328(a) of the Bankruptcy Code", provided, however, solely as to the Office of the United States Trustee, such fees and expense reimbursements shall hereafter be subject to challenge under the standard of review under Section 330 of the Bankruptcy Code.

24.     Section 330 of the Bankruptcy Code provides for the award of compensation to professionals.  11 U.S.C. § 330.  Section 330, by its terms, is "subject to" the provisions of Section 328 of the Bankruptcy Code.  *Id.*  Section 328(a) permits a debtor, with the Court's approval, to employ a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

25.     Section 328 represents a departure from the practice that prevailed prior to the enactment of the Bankruptcy Code in 1978.  The purpose of Section 328 is to permit the pre-approval of compensation arrangements as a method of insuring that the most competent professionals are available to provide services in bankruptcy cases.  *See In re Westbrooks*, 202 B.R. 520, 521 (Bankr. N.D. Ala. 1996) (percentage fee arrangements "comport with the Bankruptcy Code's goal of attracting highly qualified professionals to the bankruptcy forum"); *In re Olympia Holding Corp.*, 176 B.R. 962, 964 (Bankr. M.D. Fla. 1994).  Once the terms of a professional's retention have been approved under Section 328(a), the agreed-upon compensation cannot be altered unless the agreed terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and

conditions." 11 U.S.C. § 328(a); *see also In re Reimers*, 972 F.2d 1127, 1128 (9th Cir. 1992)

(compensation agreement approved under Section 328(a) must be enforced in the absence of

unforeseeable circumstances, and is not subject to a "reasonableness" review under Section 330);

*In the Matter of National Gypsum Company*, 123 F.3d 861 (5th Cir. 1997) (same); *In re Olympia*

*Holding Corp.*, 176 B.R. at 964 (same). As the Court explained in *National Gypsum*:

> If the most competent professionals are to be available for complicated
> capital restructuring and the development of successful corporate
> reorganization, they must know what they will receive for their expertise
> and commitment. Courts must protect those agreements and expectations,
> once found to be acceptable.

123 F.3d at 863.

26.     There have been no developments since the Petition Date that were "not capable

of being anticipated" and that would justify any modification to the fees and expense

reimbursements specified in the Engagement Letter. Accordingly, under Section 328, the fees

and expenses requested herein are appropriate.

27.     The fees and expenses sought in the Application are also appropriate under

section 330 of the Bankruptcy Code. With respect to the level of compensation, Section

330(a)(1) provides, in pertinent part, that the Court may award to a professional person:

> reasonable compensation for actual, necessary service rendered…

Section 330(a)(3)(A), in turn, provides that

> In determining the amount of reasonable compensation to be awarded, the court
> shall consider the nature, the extent, and the value of such services, taking into
> account all relevant factors, including:
>
> (a)     the time spent on such services;
>
> (b)     the rate charged for such services;

    (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and,

    (e)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

28.    Houlihan Lokey's fees and expenses fulfill the requirements of Section 330 of the Bankruptcy Code.  As discussed above, Houlihan Lokey, among many other things, (a) spent significant time analyzing the Company's operations and Business Plan, (b) actively analyzed substantive consolidation issues with the Company and the Committee, (c) continued to monitor asset sale proceeds and movements in the borrowing base and outstanding balance of the DIP, and (d) updated the Committee on the Company's progress on various operational initiatives and asset divestiture programs.  The professional services and related expenses that are the subject of this Application were rendered and incurred in connection with these Chapter 11 cases, and in discharge of Houlihan Lokey's professional responsibilities as financial advisor for the Committee in these Chapter 11 cases.  Houlihan Lokey's services have been substantial, necessary, and beneficial to the Committee and other parties-in-interest.  Houlihan Lokey believes that the fees and expenses requested by this Application are reasonable, similar to the compensation charged by comparably skilled practitioners in cases other than those in bankruptcy, and necessary given the variety and complexity of the issues involved in these cases and the need to act or respond on an expedited basis to those issues.

WHEREFORE, Houlihan Lokey requests the Court enter an Order substantially in the form of the Order annexed hereto as Exhibit "H", (i) allowing the compensation for financial advisory services rendered to the Committee during the Third Interim Period in the amount of $400,000.00 subject to any applicable holdback and reimbursement of actual and necessary expenses in the amount of $26,407.13, and (ii) authorizing and directing the Debtors to pay to Houlihan Lokey all amounts requested pursuant to the Fee Procedures Order.

Dated:  March _10_, 2005

**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.**

By:  _____
David R. Hilty
Houlihan Lokey Howard & Zukin Capital, Inc.
245 Park Avenue, 20th Floor
New York, New York 10167
(212) 497-4133
Financial Advisors for the Debtors

- 12 -

**EXHIBIT A**

**Hilty Certification**

UNITED STATES BANKRUPTCY COURT
THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) |
| WINN-DIXIE STORES, INC., *et al.*, | ) Case No. 05-03817-3F1 |
|  | ) Chapter 11 |
| Debtors. | ) Jointly Administered |
|  | ) |
|  | ) |

## CERTIFICATION OF DAVID R. HILTY

DAVID R. HILTY, under penalty of perjury, declares and says:

    1.    I am a Managing Director of the firm of Houlihan Lokey Howard & Zukin

Capital, Inc., and I make this certification in support of the Third Interim Fee Application of

Houlihan Lokey Howard & Zukin Capital, Inc. for Compensation of Services Rendered and

Reimbursement of Expenses for the Period of October 1, 2005 through and including January 31,

2006 (the "Application").

    2.    I have read the Local Rules, and believe that this Application complies with the

provisions of the Local Rules, the United States Bankruptcy Code and the Orders of this Court.

Sworn to before me on this *10* day of
*March* 2006

_____
Notary Public

YEMI O. FAWEHINMI
Notary Public, State of New York
No. 01FA6104127
Qualified in New York County
Commission Expires January 12, 2008

_____
David R. Hilty, Managing Director

**EXHIBIT B**

**Copy of the Engagement Letter**



## HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL

**INVESTMENT BANKERS**

www.hlhz.com

As of March 3, 2005

To:    The Official Committee of Unsecured Creditors (the "Committee") of Winn-Dixie
       Stores, Inc. and its affiliated debtors and debtors-in-possession (the "Debtors") and its
       remaining affiliate and subsidiary corporations (collectively with the Debtors, the
       "Company"), in care of:

Counsel to the Official Committee

Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005-1413

Attn: Dennis Dunne, Esq.

Dear Dennis:

This letter confirms the terms of the agreement between Houlihan Lokey Howard & Zukin
Capital ("Houlihan Lokey" or the "Firm") and the Committee concerning the Committee's
engagement of Houlihan Lokey to provide financial advisory and related services to the
Committee, effective as of March 3, 2005 (the "Effective Date"), in connection with the Debtors'
Chapter 11 cases (the "Cases"), which are pending in the United States Bankruptcy Court for the
Southern District of New York (the "Bankruptcy Court").

1.      **Scope of Engagement**.  Pursuant to its engagement by the Committee, Houlihan Lokey's
services will include:

   a)  Evaluating the assets and liabilities of the Debtors;

   b)  Analyzing and reviewing the financial and operating statements of the
       Debtors;

   c)  Analyzing business plans and forecasts of the Debtors;

   d)  Evaluating all aspects of the Debtors' DIP financing; cash collateral
       usage and adequate protection therefor; any exit financing in
       connection with any chapter 11 plan and any budgets relating thereto;
       and any KERP or similar proposed compensation plan or program;

e) Assisting the Committee, as needed, in identifying potential alternative sources of liquidity in connection with any chapter 11 plan or otherwise;

f) Providing such specific valuation or other financial analyses as the Committee may require in connection with the cases;

g) Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

h) Providing testimony in court on behalf of the Committee, if necessary; and

i) Assessing the financial issues and options concerning (a) the sale of any assets of Winn-Dixie and/or its non-debtor affiliates, either in whole or in part, and (b) the Debtors' chapter 11 plan(s) or any other chapter 11 plan(s).

2.    **Committee Engagement**.   Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("Committee Counsel")), shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder.  All financial advice, written or oral, provided by Houlihan Lokey to the Committee pursuant to this Agreement is intended solely for the use and benefit of the Committee, and such advice may not be disclosed publicly or made available to third-parties without the prior consent of Houlihan Lokey, which consent shall not be unreasonably withheld.  Houlihan Lokey is providing its services as the financial advisor to the Committee, and is not providing any services on behalf of the individual members of the Committee.  To the extent any issue arises as to the scope, nature or substance of Houlihan Lokey's analysis, the Committee, with the advice of Committee Counsel, shall resolve such issue.  At the direction of Committee Counsel, certain communication and correspondence between Houlihan Lokey and the Committee, and work product and analyses prepared by Houlihan Lokey for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Debtors, and accordingly will be subject to the attorney-client privilege and work-product privilege between Houlihan Lokey, Committee Counsel and the Committee.

3.    **Advisor**.   Houlihan Lokey's services are limited to those specifically provided in this Agreement or subsequently agreed-upon by the parties hereto, and Houlihan Lokey shall have no obligation or responsibility for any other services.  Houlihan Lokey is providing its services hereunder as an independent contractor, and the parties agree that this Agreement does not create an agency or fiduciary relationship between Houlihan Lokey and the parties to this Agreement.

4.    **Consideration**.   As consideration for the services being provided by Houlihan Lokey to the Committee, the Company shall pay Houlihan Lokey a fee of $100,000 per month (the "Monthly Fee") commencing as of the Effective Date. The Company shall pay the Monthly Fee in advance on each monthly anniversary of the Effective Date of this Agreement, provided that the first payment shall be made upon approval of this Agreement by the Bankruptcy Court and

shall be in respect of the period as from the Effective Date through the month in which the payment is made. Payment shall be made to Houlihan Lokey at the address above, Attention: Saul E. Burian / David R. Hilty. In addition, the Company agrees to promptly reimburse Houlihan Lokey, upon request from time to time, for all out-of-pocket expenses reasonably incurred by Houlihan Lokey in connection with the matters contemplated by this Agreement. Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, duplicating charges, on-line service charges, messenger services, delivery services, meeting services, long distance telephone and facsimile charges incurred by Houlihan Lokey.

In addition, Houlihan Lokey shall be paid an additional fee (a "Distribution Fee") equal to 0.75% of the aggregate value received by the non-priority unsecured creditors of the Company. The Distribution Fee shall be paid in the same consideration received by the non-priority unsecured creditors of the Company (including but not limited to all related rights, options and contractual benefits); provided, however, that the Committee may determine, in its sole discretion, that the Distribution Fee be paid in cash at a value to be determined by Houlihan Lokey and the Committee as of the effective date of a plan of reorganization or other relevant distribution date[1]. If paid in kind, the Distribution Fee shall be paid as and when distributions are made to non-priority unsecured creditors of the Company (whether pursuant to a plan of reorganization or any other manner approved by the Bankruptcy Court). The Distribution Fee shall be reduced by one hundred percent (100%) of all Monthly Fees paid to Houlihan Lokey after the twelfth Monthly Fee that was timely paid, but in no event shall the Distribution Fee be reduced to less than zero.

The parties acknowledge that a substantial professional commitment of time and effort will be required by Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for the Firm. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the Firm. Given the numerous issues which may arise in these cases, the Firm's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature whether in, or out of court, the parties agree that the fee arrangement

---

1 For the purpose of calculating the value of the consideration received by non-priority unsecured creditors of the Debtors, all consideration received, including, without limitation, cash, debt securities, equity securities, property, rights, options and other interests and consideration, will be valued using one of the following three methods, in order of preference: (i) to the extent such securities are traded on a when-issued basis and the market for these securities is reasonably liquid, the securities will be valued at the mean of the closing bid and asked quotations averaged for the ten trading days immediately prior to the effective date of the relevant plan of reorganization or the applicable distribution date for the securities, whichever is more appropriate (the "Value Date"); (ii) to the extent such securities have not been traded prior to the Value Date or if the market for such securities is not reasonably liquid, and the 8.875% Senior Notes due 2008 ("Senior Notes") continue to trade and the market for the Senior Notes is reasonably liquid, the mean of the closing bid and asked quotations averaged for the ten trading days immediately prior to the Value Date will be used as a proxy to value the securities and such other consideration being distributed in respect of the Senior Notes; or (iii) to the extent the trading price of the Senior Notes is not available or is not a fair proxy for value, then debt securities will be valued at face value and, for all other securities, consideration and assets to be distributed to the non-priority unsecured claims of the debtors, Houlihan Lokey and the Committee will mutually agree on a fair valuation thereof for the purposes of calculating the Distribution Fee.

hereunder is reasonable, fairly compensates Houlihan Lokey and provides certainty to the Debtors and the Committee.

5.    **Bankruptcy Court**. The Committee shall, as soon as practicable following the execution of this Agreement by the Committee, seek an order from the Bankruptcy Court authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to (and subject to the standard of review of) Section 328(a) and 1103 of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules, and shall use its best efforts to cause such application to be considered on the most expedited basis. The employment application and the order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey sufficiently in advance of their filing, and must be acceptable to Houlihan Lokey in its discretion. If the order authorizing the employment of Houlihan Lokey is obtained, the Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Agreement, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. The terms of this paragraph are solely for the benefit of Houlihan Lokey and may be waived, in whole or in part, only by Houlihan Lokey.

6.    **Termination**. This Agreement is terminable upon thirty (30) days written notice by the Committee or Houlihan Lokey, provided, however, that the Company shall pay Houlihan Lokey all previously unpaid Monthly Fees and the pro-rata portion of the Monthly Fee for the month in which the Agreement is terminated. The termination of this Agreement will not affect (a) the Debtors' indemnification, reimbursement, contribution and other obligations set forth in this Agreement and (b) Houlihan Lokey's right to receive, and the Debtors' obligation to pay (i) any and all fees and expenses accrued as of the effective date of termination of this Agreement, and (ii) provided that Houlihan Lokey does not terminate the Agreement, the Distribution Fees in respect of (a) creditor distributions pursuant to a plan of reorganization confirmed by the Bankruptcy Court prior to termination of this Agreement or within twelve months following the effective date of any termination of this Agreement or (b) creditor distributions otherwise made prior to termination of this Agreement or within the twelve month period following such termination.

7.    **Information**. The Committee acknowledges and agrees that, in rendering its services hereunder, Houlihan Lokey will be using and relying on information made available to it by the Debtors and their advisors (the "Information") (and information available from public sources and other sources deemed reliable by Houlihan Lokey) without independent verification thereof by Houlihan Lokey or independent appraisal by Houlihan Lokey. Houlihan Lokey does not assume responsibility for the accuracy or completeness of the Information or any other information regarding the Company. The Committee and Company acknowledge that, in rendering services to the Committee, Houlihan may obtain information, including non-public information, from various independent sources provided that Houlihan keeps such non-public information confidential in accordance with its duties to the Committee. Such independent

sources may provide information to Houlihan Lokey notwithstanding any confidentiality agreement.

8.    **Choice of Law; Jurisdiction.**  THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.  REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK, PROVIDED THAT SUCH CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT.  EACH PARTY HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.   THE PARTIES HERETO CONSENT TO SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW. THE PARTIES HERETO WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.

9.    **Authority**.  The parties hereto have all requisite corporate power and authority to enter into this Agreement and the transactions contemplated hereby and have fully reviewed this Agreement, have obtained counsel on its terms, and have participated in the drafting of this Agreement such that it shall not be construed against any one party.  This Agreement has been duly and validly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

10.    **Counterparts**.  For the convenience of the parties, any number of counterparts of this Agreement may be executed by the parties hereto. Each such counterpart shall be, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

11.    **Severability**. If it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that any term or provision hereof is invalid or unenforceable, (i) the remaining terms and provisions hereof shall be unimpaired and shall remain in full force and effect and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

12.    **Entire Agreement**. This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understanding relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

13.    **Indemnification**. As a material part of the consideration for Houlihan Lokey to furnish its services under this Agreement, the Debtors shall indemnify Houlihan Lokey shall hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the Agreement, any actions taken or omitted to be taken by an Indemnified Party in connection with Houlihan Lokey's provision of services to the Committee or the proposed transactions contemplated thereby. In addition, the Debtors shall reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, there shall be no liability to the Company under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.

If for any reason the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection with a proposed transaction and/or the services rendered by Houlihan Lokey. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Debtors shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection therewith, as well as any other relevant equitable considerations.

The Committee and the Debtors shall not affect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification

from the Debtors unless, such settlement or release contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.  The Committee and/or the Debtors shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the prior written consent of the Committee and the Debtors.

The Committee and the Company further agree that neither Houlihan Lokey nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the Committee, the Debtors or any other person or entity (including the Debtors' equity holders and creditors) related to or arising out of Houlihan Lokey's engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the Committee and/or the Debtors which are finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party. The indemnity, reimbursement, contribution and other obligations and agreements of the Committee and the Debtors set forth herein shall apply to any modifications of this Agreement, shall be in addition to any liability which these parties may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of these parties and each Indemnified Party. The foregoing indemnification provisions shall survive the consummation of any transaction and/or any termination of the relationship established by this Agreement.

The obligations of Houlihan Lokey are solely corporate obligations, and no officer, director, employee, agent, shareholder or controlling person of Houlihan Lokey shall be subjected to any personal liability whatsoever to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement or any person relying on the services provided hereunder. The Debtors' obligations with respect to any and all payments owing to Houlihan Lokey and the indemnification, reimbursement, contribution and other similar obligations of the Debtors under this Agreement shall survive any termination of this Agreement.

*Official Committee of Unsecured Creditors of Winn-Dixie, Inc.*     *Page 8*
*March 3, 2005*

Dated and effective as of the 3rd day of March 2005.

**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL**

By: Saul E. Burian
Managing Director

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
WINN-DIXIE STORES, INC.**

By:     Dennis Dunne, Esq.
        Milbank, Tweed, Hadley & McCloy LLP
        1 Chase Manhattan Plaza
        New York, NY  10005

**EXHIBIT C**

**Copy of the Retention Order**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 05-03817-3F1 |
| Debtors. | ) | Jointly Administered |

### ORDER UNDER 11 U.S.C. §§ 328(a) AND 1103 AUTHORIZING EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL AS COMMITTEE'S FINANCIAL ADVISORS

This matter having come before the Court on the application (the "Application") of the Official Committee of Unsecured Creditors (the "Committee") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, "Winn-Dixie" or the "Debtors") for an order, under sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code"), rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the employment and retention of Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey") as its financial advisor effective as of March 3, 2005; and upon the Declaration of Saul E. Burian, a Managing Director of Houlihan Lokey, in support of the Application (the "Burian Declaration"); and upon the engagement letter between the Committee and Houlihan Lokey, dated as of March 3, 2005 (the "Engagement Letter"); and due and proper notice of the Application and of this Order having been

provided; and the Court being satisfied, based on the
representations made in the Burian Declaration, that Houlihan
Lokey does not represent any entity, other than the Committee,
having an adverse interest in connection with these cases; and
the Court being satisfied that the terms of compensation being
sought by Houlihan Lokey, as described in the Engagement Letter
(as modified by this Order), are reasonable; and the Court
having jurisdiction to consider the Application and the relief
requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and
consideration of the Application and the relief requested
therein being a core proceeding pursuant to 28 U.S.C. § 157(b);
and venue being proper before this Court pursuant to 28 U.S.C.
§§ 1408 and 1409; and the employment of Houlihan Lokey being in
the best interests of the Debtors, their estates and creditors;
and the United States Trustee ("UST") having filed an objection
to the Application, dated May 10, 2005; and the Court having
determined that the legal and factual bases set forth in the
Application establish just cause for the approval of the relief
requested; and upon all of the proceedings had before the Court;
and after due deliberation and sufficient cause appearing
therefor, it is

ORDERED that the Application is granted on the terms
set forth herein; and it is further

2

ORDERED that the Committee is authorized to retain and employ Houlihan Lokey effective as of March 3, 2005, pursuant to sections 328(a) and 1103 of the Bankruptcy Code, as its financial advisors on the terms set forth in the Application, the Engagement Letter, and the Burian Declaration (as modified by this Order); and it is further

ORDERED that if any supplemental affidavits or declarations are filed and served after the entry of this Order, absent any objections filed within twenty (20) days after the filing and service of such supplemental affidavits or declarations, Houlihan Lokey's employment shall continue as authorized pursuant to this Order; and it is further

ORDERED that the terms of the Engagement Letter are "reasonable" as such term is used in section 328(a) of the Bankruptcy Code, and Houlihan Lokey shall be compensated in accordance with the terms of the Engagement Letter (as modified by this Order), and Houlihan Lokey's compensation in accordance with the terms of the Engagement Letter (as modified by this Order) shall not (except as set forth in the next decretal paragraph) hereafter be subject to challenge except under the standards of review under section 328(a) of the Bankruptcy Code; and it is further

ORDERED that notwithstanding the preceding decretal paragraph, all compensation and reimbursement of expenses to be

3

paid to Houlihan Lokey shall be subject to prior approval of this Court, and only the UST shall retain the right to object to Houlihan Lokey's interim and final fee applications (including expense reimbursement) on all grounds, including but not limited to the reasonableness standards provided for in section 330 of the Bankruptcy Code; provided, however, that while Houlihan Lokey's professionals shall not be required to keep detailed time records in one-tenth of hour increments, Houlihan Lokey's professionals shall keep daily time records describing generally the services rendered, the name of the individuals rendering such services and the time such individuals expended each day in rendering such services in half-hour increments; and it is further

ORDERED that all requests of Houlihan Lokey for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Houlihan Lokey be indemnified in the case of its own willful misconduct, gross negligence, bad faith or self-dealing; and it is further

4

ORDERED that in no event shall Houlihan Lokey be indemnified if a Debtor or a representative of the estate asserts a claim for, and a court determines by final order that such claim arose out of, Houlihan Lokey's own willful misconduct, gross negligence, bad faith or self-dealing; and it is further

ORDERED that in the event Houlihan Lokey seeks reimbursement for attorneys' fees from the debtors pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Houlihan Lokey's own applications (both interim and final), and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under any provision of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED that notwithstanding anything to the contrary contained herein or in the Engagement Letter, in the event a plan of reorganization is confirmed by this Court that provides all unsecured creditors of the Debtors are paid in full in cash, and such plan is consummated, then the maximum "distribution

5

fee" payable to Houlihan Lokey under the Engagement Letter shall be $3,750,000, which shall be paid in cash and otherwise in accordance with the terms of the Engagement Letter; provided, further, that in any such event, the "distribution fee" payable to Houlihan Lokey shall not be subject to any reduction as a result of crediting of monthly fees paid to Houlihan Lokey as provided in the Engagement Letter; and it is further

ORDERED that Houlihan Lokey shall serve upon all creditors of the Debtors a notice in a form approved by the UST that discloses the material terms of Houlihan Lokey's approved retention under section 328 of the Bankruptcy Code and provides thirty (30) days from service of such notice in which any objections to such retention must be filed with the Court and served upon Houlihan Lokey (the "Notice Deadline"); provided, however, that parties in interest who previously received notice of the Application and an opportunity to object and who failed to file an objection by the previously applicable objection deadline (the "Previously Noticed Creditors") shall not be entitled to file and serve objections or to have their objections heard; provided, further, that the Court shall consider any objections (other than objections filed by Previously Noticed Creditors, which shall be denied) at the next omnibus hearing following the expiration of the Notice Deadline; and it is further

ORDERED that this Order shall be final as to all creditors who do not file a timely objection prior to the Notice Deadline and to all Previously Noticed Creditors; and it is further

ORDERED that to the extent this Order is inconsistent with the Engagement Letter, this Order shall govern; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: June 3         , 2005

_____
UNITED STATES BANKRUPTCY JUDGE
JERRY A. FUNK

7

**EXHIBIT D**

**Summary of Monthly Fees**

| Calculation of Monthly Fees, Amounts Paid and Amounts Due | | | | | | |
|---|---|---|---|---|---|---|
| Billing Period | Monthly Fees | Less: 20% Holdback | Fees Billed | Less: Amount Paid | Holdback Amount Paid | Total Fees Owed |
| March 3, 2005 - March 31, 2005 | $   93,548.39 | ($18,709.68) | $74,838.71 | ($74,838.71) | ($18,709.68) | $0.00 |
| April 1, 2005 - April 30, 2005 | 100,000.00 | (20,000.00) | 80,000.00 | (80,000.00) | (20,000.00) | 0.00 |
| May 1, 2005 - May 31, 2005 | 100,000.00 | (20,000.00) | 80,000.00 | (80,000.00) | (20,000.00) | 0.00 |
| **Subtotal First Interim Application Period** | **$293,548.39** | **($58,709.68)** | **$234,838.71** | **($234,838.71)** | **($58,709.68)** | **$0.00** |
| June 1, 2005 - June 30, 2005 | 100,000.00 | (20,000.00) | 80,000.00 | (80,000.00) | (20,000.00) | 0.00 |
| July 1, 2005 - July 31, 2005 | 100,000.00 | (20,000.00) | 80,000.00 | (80,000.00) | (20,000.00) | 0.00 |
| August 1, 2005 - August 31, 2005 | 100,000.00 | (20,000.00) | 80,000.00 | (80,000.00) | (20,000.00) | 0.00 |
| September 1, 2005 - September 30, 2005 | 100,000.00 | (20,000.00) | 80,000.00 | (80,000.00) | (20,000.00) | 0.00 |
| **Subtotal Second Interim Application Period** | **$400,000.00** | **($80,000.00)** | **$320,000.00** | **($320,000.00)** | **($80,000.00)** | **$0.00** |
| October 1, 2005 - October 31, 2005 | 100,000.00 | (20,000.00) | 80,000.00 | 0.00 | 0.00 | 100,000.00 |
| November 1, 2005 - November 30, 2005 | 100,000.00 | (20,000.00) | 80,000.00 | 0.00 | 0.00 | 100,000.00 |
| December 1, 2005 - December 31, 2005 | 100,000.00 | (20,000.00) | 80,000.00 | 0.00 | 0.00 | 100,000.00 |
| January 1, 2006 - January 31, 2006 | 100,000.00 | (20,000.00) | 80,000.00 | 0.00 | 0.00 | 100,000.00 |
| **Subtotal Third Interim Application Period** | **$400,000.00** | **($80,000.00)** | **$320,000.00** | **$0.00** | **$0.00** | **$400,000.00** |
| **Total Monthly Fees:** | **$1,093,548.39** | **($218,709.68)** | **$874,838.71** | **($554,838.71)** | **($138,709.68)** | **$400,000.00** |

**EXHIBIT E**

**Summary of Expenses**

| Summary of Expenses | | | |
|---|---|---|---|
| Billing Period | Expenses Billed | Expenses Paid | Expenses Owed |
| March 3, 2005 - March 31, 2005 | $7,213.95 | ($7,213.95) | $0.00 |
| April 1, 2005 - April 30, 2005 | 11,787.71 | (11,787.71) | 0.00 |
| May 1, 2005 - May 31, 2005 | 675.02 | (675.02) | 0.00 |
| **Subtotal First Interim Application Period** | **$19,676.68** | **($19,676.68)** | **$0.00** |
| June 1, 2005 - June 30, 2005 | 13,844.60 | (13,844.60) | 0.00 |
| July 1, 2005 - July 31, 2005 | 4,677.53 | (4,677.53) | 0.00 |
| August 1, 2005 - August 31, 2005 | 2,449.94 | (2,449.94) | 0.00 |
| September 1, 2005 - September 30, 2005 | 374.33 | (374.33) | 0.00 |
| **Subtotal Second Interim Application Period** | **$21,346.40** | **($21,346.40)** | **$0.00** |
| October 1, 2005 - October 31, 2005 | 7,256.89 | 0.00 | 7,256.89 |
| November 1, 2005 - November 30, 2005 | 7,472.17 | 0.00 | 7,472.17 |
| December 1, 2005 - December 31, 2005 | 2,347.34 | 0.00 | 2,347.34 |
| January 1, 2006 - January 31, 2006 | 9,330.73 | 0.00 | 9,330.73 |
| **Subtotal Third Interim Application Period** | **$26,407.13** | **$0.00** | **$26,407.13** |
| **Total** | **$67,430.21** | **($41,023.08)** | **$26,407.13** |

Houlihan Lokey's policy is to pass along to its clients its expenses incurred on behalf of such clients, without markup or interest charges. Such expenses include the following: airfare, taxi or other airport transportation, hotel charges, travel and working meals, computer research, messenger charges, overnight delivery (when necessary), internal and external photocopying expenses, postage, telecopy expenses, long-distance telephone charges, and other travel-related expenses. To assist the Court in reviewing Houlihan Lokey's request for reimbursement of the expenses incurred in connection with its representation of the Committee, Houlihan Lokey's billing procedures and the general categories of expenses for which it seeks reimbursement by this Application are described below:

A.   **Airfare:**   (coach fare only)   Airfare includes necessary travel expenses associated with airplane travel when there is a need for in-person meetings, management interviews, due diligence and working sessions.

During the Third Interim Period, Houlihan Lokey billed the Debtors for $8,226.75 in total expenses related to Airfare.

B.   **Lodging:**   Lodging includes expenses associated with hotel stays and related expenses incurred when out-of-town meetings were required or for necessary overnight stays in connection with working sessions.

During the Third Interim Period, Houlihan Lokey billed the Debtors for $1,915.87 in total expenses related to Lodging.

C.   **Other Transportation:**   Other Transportation includes train ticket expenses, cab fare or other airport transportation, and parking and rental car charges.

During the Third Interim Period, Houlihan Lokey billed the Debtors for $2,932.31 in total expenses related to Other Transportation.

D.   **Travel / Working Meals:**   Houlihan Lokey charged for overtime meals and other meals consumed during meetings with individuals regarding the Chapter 11 cases in order to expedite or facilitate working sessions or for necessary meals during travel.

During the Third Interim Period, Houlihan Lokey billed the Debtors for $3,718.74 in total expenses related to Travel/Working Meals.

E.   **Telephone/Fax:**   Expenses include all telephone/fax usage related to the case.

During the Third Interim Period, Houlihan Lokey billed the Debtors for $1,801.28 in total expenses related to Telephone/Fax.

F.   **Computer On-Line Service:**   Expenses associated with research on database systems or document retrieval relating to this case.   These expenses include disclosure document

2

charges for comparable public companies' 10Q and 1OK reports filed with the SEC that were used to perform valuation analysis. Database charges are incurred using the Lexis/Nexis system in order to obtain analyst reports for the comparable companies. Dow Jones and Bloomberg services are used to obtain current and historical security pricing and news wires. Houlihan Lokey believes these expenses to be required in order to complete standard financial and valuation analysis.

During the Third Interim Period, Houlihan Lokey billed the Debtors for $6,624.27 in total expenses related to On-line Resources.

G.   **Delivery, Mail & Fed-X:** Houlihan Lokey utilized Federal Express and other overnight delivery services when documents had to be distributed the next day.

During the Third Interim Period, Houlihan Lokey billed the Debtors for $219.30 in total expenses related to Delivery.

H.   **Office Expense:** Includes photocopy charges, color copy charges, binding materials, etc.

During the Third Interim Period, Houlihan Lokey billed the Debtors for $968.61 in total expenses related to Office Expense.

**EXHIBIT F**

**Professional Biographies**

**Professional Biographies**

## David R. Hilty

*Managing Director*

Mr. Hilty is a Managing Director in the New York office of Houlihan Lokey Howard & Zukin and head of the Financial Restructuring Group in New York. Mr. Hilty has been employed by Houlihan Lokey for approximately fifteen years and has been working in the Houlihan Lokey's Financial Restructuring Group for approximately fourteen years. While in the Financial Restructuring Group at Houlihan Lokey, Mr. Hilty has advised companies, bondholders and other creditor groups in out-of-court restructurings, "pre-packaged" or "pre-arranged" chapter 11's, and unplanned chapter 11 reorganizations. In addition, Mr. Hilty has been involved in the financial restructuring of several European and Latin American based companies advising both debtors and creditors, including designing and structuring out-of-court exchange offers and "pre-arranged" reorganizations in local European and Latin American jurisdictions.

In addition to assisting clients with financial restructurings services at Houlihan Lokey, Mr. Hilty has provided clients with a variety of other investment banking and valuation services. These investment banking and valuation services have included debt financings for distressed and non-distressed companies, advising on the acquisition or sale of companies and/or operating divisions in a distressed and non-distressed environment, and raising debt and equity capital. Since 1995, Mr. Hilty has also served as the National Director of Marketing for the Financial Restructuring Group and has coordinated the firm's tracking, monitoring and marketing of engagements.

Mr. Hilty earned a B.S. in Commerce with a concentration in Finance from the University of Virginia's McIntire School of Commerce.

## Saul E. Burian

*Managing Director*

Mr. Burian is a Managing Director in the Financial Restructuring Group of Houlihan Lokey Howard & Zukin. His recent clients include Arthur D. Little, Aviation Sales (Timco), Avery Weigh-Tronix, HQ Global Workplaces, J&L Steel, Jillians Entertainment, Lantis Eyewear, Marcal Paper, Omni Facilities, Outsourcing Services Group, Protection One Security, PTC Alliance, Starband Communications, Tony Roma's, and Wise Foods. Mr. Burian has also handled a significant number of creditor-side engagements, including the official creditors' committees of Magellan Health Services, Inc. and Knology Broadband, Inc., and the unofficial committee of HealthSouth Noteholders.

Prior to joining Houlihan Lokey, Mr. Burian was a partner of the New York law firm Kramer Levin Naftalis & Frankel, LLP and specialized in the area of Creditors' Rights and Bankruptcy. During Mr. Burian's 12 years at Kramer Levin, he represented a broad spectrum of clients that were often the primary "at risk" constituency in the relevant in- and out-of-court restructurings and bankruptcies, including bank lenders, debtors, creditors' committees and secondary purchasers of distressed paper.

Mr. Burian is a director of Magellan Health Services and serves on the Waterfront Commission

1

of the City of New Rochelle, NY.  He is also a director of the New York Chapter of the Turnaround Management Association and of S/A/R Academy of Riverdale, and is a member of the American Bankruptcy Institute.

He received his B.A. with honors in economics at Yeshiva University and a J.D. from Columbia University School of Law in 1988, where he was a Harlan Fiske Stone Scholar.

### Joshua S. Scherer

*Director*

Mr. Scherer is a Director in Houlihan Lokey Howard & Zukin's New York office.  Prior to joining Houlihan Lokey in 1999, Mr. Scherer spent two years with a Malaysia-based corporate restructuring firm focused on servicing debtors.  In addition, for three years Mr. Scherer was a member of Merrill Lynch & Co.'s investment banking group in New York and Hong Kong.  Mr. Scherer has substantial experience providing restructuring, M&A and financing services to clients in North America and in countries throughout the Asia Pacific and Latin American regions.

Mr. Scherer graduated summa cum laude, with a B.A. in economics with honors from Middlebury College, and in addition was elected to Phi Beta Kappa.

### Agnes K. Tang

*Vice President*

Ms. Tang is a Vice President in the firm's Financial Restructuring Group in New York office. Ms. Tang has worked on a variety of debtor and creditor side engagements across a number of different industries including textiles, paper, and consumer products sectors.  Prior to joining Houlihan Lokey in 2002, Ms. Tang was a Senior Associate at Mercer Management Consulting and Marsh and McLennan Capital's venture capital fund.

Ms. Tang received her B.A., with distinction, in Economics and Mathematics from Northwestern University and her M.B.A. from the Harvard Business School.

### Elisa S. Coimbra

*Associate*

Ms. Coimbra is an Associate in the FRG group of Houlihan Lokey Howard & Zukin's New York office. Prior to joining Houlihan Lokey in 2005, she spent several years in investment banking at Brascan Financial Corporation, in Toronto, Canada and Sao Paulo, Brazil. She has worked on a variety of financial transactions including M&A transactions, corporate restructuring assignments, and general corporate planning.

Ms. Coimbra received a B.A. in Public Administration from EAESP – Fundacao Getulio Vargas in Sao Paulo, and an M.B.A. from Columbia Business School.

**Peter W. Chidyllo**

*Analyst*

Mr. Chidyllo joined Houlihan Lokey's New York office as a Financial Analyst in 2004. Prior to joining Houlihan Lokey, he was a financial analyst with the Edgar Lomax Company, an asset management firm based outside of Washington D.C. At Edgar Lomax he focused on analysis and research regarding dividend-yielding stocks within the firm's portfolio. Prior to that he was a pre-professional accountant at IBM's Latin American HQ Accounting.

Mr. Chidyllo received a B.S. in commerce, with distinction, from the University of Virginia, McIntire School of Commerce.

**EXHIBIT G**

**Schedule of Daily Time Records**

# Winn-Dixie Stores, Inc.
### *Houlihan Lokey Howard & Zukin Capital - General Summary of Tasks and Hours*

| | | |
|---|---|---|
| **DRH** | -- | David R. Hilty - Managing Director |
| **SEB** | -- | Saul E. Burian - Managing Director |
| **JSS** | -- | Joshua S. Scherer - Director |
| **AKT** | -- | Agnes K. Tang - Vice President |
| **ESC** | -- | Elisa S. Coimbra - Associate |
| **PWC** | -- | Peter W. Chidyllo - Financial Analyst |

| | | |
|---|---|---|
| **1** | = | *Analysis of Debtors' Business Plan and Assets* |
| **2** | = | *Meetings/Telephone Conferences/Reorganization Process* |
| **3** | = | *Coordinating DMA and Store Divestiture Process* |
| **4** | = | *General Research, Analysis and Administrative* |
| **5** | = | *Hearings, Court Filings, Prep and Testimony* |

| October 1, 2005 - October 31, 2005 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|
| DRH | 1.5 | 13.5 | 0.0 | 10.5 | 5.0 | 30.5 |
| SEB | 0.5 | 11.3 | 0.0 | 11.4 | 5.0 | 28.2 |
| JSS | 0.5 | 9.5 | 0.0 | 11.5 | 5.0 | 26.5 |
| AKT | 0.5 | 9.0 | 0.0 | 39.5 | 6.0 | 55.0 |
| ESC | 0.5 | 5.0 | 0.0 | 33.5 | 3.0 | 42.0 |
| PWC | 0.5 | 17.5 | 0.0 | 174.5 | 9.5 | 202.0 |
| **Total Hours** | **4.0** | **65.8** | **0.0** | **280.9** | **33.5** | **384.2** |

| November 1, 2005 - November 30, 2005 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|
| DRH | 4.5 | 36.0 | 0.0 | 5.5 | 0.0 | 46.0 |
| SEB | 6.0 | 45.5 | 0.0 | 9.3 | 0.0 | 60.8 |
| JSS | 8.0 | 50.5 | 0.0 | 7.0 | 0.0 | 65.5 |
| AKT | 27.0 | 48.0 | 0.0 | 12.0 | 0.0 | 87.0 |
| ESC | 19.0 | 46.0 | 0.0 | 0.0 | 0.0 | 65.0 |
| PWC | 55.5 | 47.0 | 0.0 | 38.0 | 3.0 | 143.5 |
| **Total Hours** | **120.0** | **273.0** | **0.0** | **71.8** | **3.0** | **467.8** |

| December 1, 2005 - December 31, 2005 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|
| DRH | 0.0 | 27.0 | 0.0 | 10.5 | 2.0 | 39.5 |
| SEB | 0.0 | 38.6 | 0.0 | 16.5 | 2.0 | 57.1 |
| JSS | 0.0 | 30.0 | 0.0 | 9.5 | 4.5 | 44.0 |
| AKT | 14.0 | 34.0 | 0.0 | 15.5 | 5.0 | 68.5 |
| ESC | 15.0 | 31.5 | 0.0 | 19.0 | 1.0 | 66.5 |
| PWC | 26.0 | 28.0 | 0.0 | 53.0 | 5.5 | 112.5 |
| **Total Hours** | **55.0** | **189.1** | **0.0** | **124.0** | **20.0** | **388.1** |

| January 1, 2005 - January 31, 2005 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|
| DRH | 0.0 | 28.0 | 0.0 | 12.5 | 2.5 | 43.0 |
| SEB | 0.0 | 32.3 | 0.0 | 11.5 | 2.0 | 45.8 |
| JSS | 0.0 | 22.0 | 0.0 | 12.0 | 2.5 | 36.5 |
| AKT | 0.0 | 29.5 | 0.0 | 44.5 | 2.5 | 76.5 |
| ESC | 0.0 | 18.5 | 0.0 | 12.5 | 1.0 | 32.0 |
| PWC | 0.0 | 29.0 | 0.0 | 120.0 | 2.5 | 151.5 |
| **Total Hours** | **0.0** | **159.3** | **0.0** | **213.0** | **13.0** | **385.3** |

*Note: Houlihan Lokey has provided copies of daily time records and expense detail to the United States Trustee, but such records have not been attached hereto.*

**EXHIBIT H**

**Form of Order**

UNITED STATES BANKRUPTCY COURT
THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                          )
                                                )
WINN-DIXIE STORES, INC., *et al.*,              )    Case No. 05-03817-3F1
                                                )    Chapter 11
          Debtors.                              )    Jointly Administered
                                                )
                                                )
                                                )

ORDER GRANTING THE THIRD INTERIM APLICATION OF HOULIHAN LOKEY
HOWARD & ZUKIN CAPITAL, INC. FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES FOR THE PERIOD
October 1, 2005 THROUGH AND INCLUDING January 31, 2006

This matter coming before the Court on the Third Interim Application for

Compensation and Reimbursement of Expenses for the Period October 1, 2005 through and

including January 31, 2006 (the "Application") filed by Houlihan Lokey Howard & Zukin

Capital, Inc. ("Houlihan Lokey"), the financial advisor to the Official Committee of Unsecured

Creditors (the "Committee") of the above-captioned debtors and debtors in possession

(collectively, the "Debtors"); the Court having reviewed the Application and all pleadings

relating thereto; and the Court having determined that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein;

THE COURT HEREBY FINDS THAT:[5]

        A.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

        B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

        C.      The Application complies, as applicable, with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. §330 dated January 30, 1996 and the Orders of this Court.

        D.      Houlihan Lokey's requested interim compensation for services rendered in connection with its representation of the Committee during the Third Interim Period is reasonable and appropriate under sections 328 and 331 of the Bankruptcy Code.

        E.      Houlihan Lokey's expenses incurred during the Third Interim Period for which it seeks reimbursement were actual and necessary expenses under section 330(a)(1)(B) and 331 of the Bankruptcy Code.

---

[5] Capitalized terms not otherwise defined herein have the meanings ascribed to the in the Application.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Application is GRANTED.

2.      Houlihan Lokey's request for an allowance and compensation of $400,000.00 subject to any applicable holdback and reimbursement for expenses of $26,407.13 for the Third Interim Period is hereby approved.

3.      The Debtors are hereby authorized and directed to pay Houlihan Lokey the foregoing approved fees and expenses.

4.      The relief granted in this Order is without prejudice to the rights of Houlihan Lokey to seek further allowance and payment of additional compensation and reimbursement of expenses, including any such amounts incurred during the Application Period for which approval has not previously been sought and denied, upon application to this Court.

5.      All interim fees and expenses are subject to final review and no determination is made as to reasonableness.  To the extent the estates become administratively insolvent, interim fees and expenses awarded pursuant to this Order may be subject to disgorgement.


Dated: Jacksonville, Florida
             _____, 2006


                                   _____
                                        United States Bankruptcy Judge

3