UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                          )    Chapter 11

WINN-DIXIE STORES, INC., et al., )   Case No. 05-03817-3F1

Debtors.                        )    Jointly Administered

**THIRD INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS
AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM
OCTOBER 1, 2005 THROUGH AND INCLUDING JANUARY 31, 2006**

| | |
|---|---|
| **Name of Applicant** | **Alvarez & Marsal, LLC** |
| **Authorized to Provide Services to:** | **The Official Committee of Unsecured Creditors of Winn-Dixie Stores, LLC, et al.** |
| **Date of Retention** | **Order entered on June 3, 2005 nunc pro tunc to March 4, 2005** |
| **Period for which Interim Compensation and Reimbursement is sought** | **October 1, 2005 though and including January 31, 2006** |
| **Amount of Interim Compensation sought as actual, reasonable and necessary** | **$400,000.00** |
| **Amount of Interim Reimbursement sought as actual, reasonable and necessary** | **$16,691.10** |

This is an interim application

## Summary of Professional's Hours

| Professional | Title | 10/1/05 - 10/31/05 | 11/1/05 - 11/30/05 | 12/1/05 - 12/31/05 | 1/1/06 - 1/31/06 | Total |
|---|---|---|---|---|---|---|
| Martha Kopacz | Managing Director | 23.5 | 97.5 | 92.0 | 34.0 | 247.0 |
| William McGuire | Managing Director | 2.7 | 8.8 | 4.0 | 5.2 | 20.7 |
| Andrew Hede | Managing Director | 19.0 | 60.0 | 39.5 | 28.0 | 146.5 |
| Dirk Aulabaugh | Senior Director | - | 2.0 | 18.3 | 33.0 | 53.3 |
| Gregory Ford | Director | 4.0 | 11.0 | - | - | 15.0 |
| Erin Scanlan | Senior Associate | 41.4 | 16.7 | 16.0 | - | 74.1 |
| Matthew Gavejian | Senior Associate | 27.9 | 88.5 | 63.3 | 57.5 | 237.2 |
| Brian Abbott | Associate | - | 3.2 | - | - | 3.2 |
| Ian McCready | Analyst | - | - | 6.0 | - | 6.0 |
| **Total Hours** | | **118.5** | **287.7** | **239.1** | **157.7** | **803.0** |

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                          )    Chapter 11

WINN-DIXIE STORES, INC., et al., )    Case No. 05-03817-3F1

Debtors.                        )    Jointly Administered

**THIRD INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM OCTOBER 1, 2005 THROUGH AND INCLUDING JANUARY 31, 2006**

Alvarez & Marsal, LLC ("A&M"), operations and real estate advisor to the official committee of unsecured creditors (the "Committee") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors-in-possession appointed in the above-captioned cases (collectively, "Winn-Dixie" or the "Debtors"), hereby submits its application (the "Application"), pursuant to sections 328 and 331 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 328 effective January 30, 1996 (the "U.S. Trustee Guidelines"), and the Final Order Approving Interim Compensation Procedures for Professionals, dated March 15, 2005 (Docket No. 434) (the "Interim Compensation Order"), for the allowance of

interim compensation for professional services rendered from October 1, 2005 through and including January 31, 2006 (the "Third Interim Compensation Period"), and for reimbursement of expenses incurred in connection with such services, and in support thereof respectfully represents as follows:

## I. <u>INTRODUCTION</u>

### A. <u>Background</u>

1.     On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

2.     On March 1, 2005, the United States Trustee duly appointed the Committee.

3.     By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

4.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of the

2

Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 328 and 331 of the Bankruptcy Code.

**B.    Retention of A&M and Billing History**

5.    On June 3, 2005, pursuant to the Order Under 11 U.S.C. § 1103 And Fed. R. Bankr. P. 2014 And 5002, Authorizing Retention And Employment Of Alvarez & Marsal, LLC As Committee's Operations and Real Estate Advisors (Docket No. 1557) (the "Retention Order"), the Committee's retention of A&M in these cases was authorized effective as of March 4, 2005.

6.    This Application is A&M's third interim application for approval and allowance of compensation and reimbursement of expenses. A&M makes this interim application pursuant to sections 328 and 331 of the Bankruptcy Code. A&M's first interim application for allowance of compensation and reimbursement of expenses for the period March 4, 2005 through May 31, 2005 was submitted on July 15, 2005. A&M's second interim application for allowance of compensation and reimbursement of expenses for the period June 1, 2005 through September 30, 2005 was submitted on November 11, 2005.

7.    In accordance with the engagement letter between the Committee and A&M (dated March 4, 2005), A&M seeks reimbursement for its fixed fee of $100,000.00 per month.

8.      In accordance with the Interim Compensation Order, A&M submitted a monthly fee statement to, among others, the Debtors seeking interim compensation and reimbursement of expenses.  During the Third Interim Compensation Period, A&M submitted the following fee statements:

(a)    On October 6, 2005, pursuant to the Interim Compensation Order and the Notice of Approval of Retention Terms, A&M served its fifth fee statement for the period from October 1, 2005 through and including October 31, 2005 (the "Fifth Fee Statement").  The Fifth Fee Statement sought an allowance of $100,000.00 (representing one month of services at a fixed fee of $100,000.00 per month) as compensation for services rendered and the reimbursement of $187.11 in expenses.

(b)    On November 6, 2005, pursuant to the Interim Compensation Order and the Notice of Approval of Retention Terms, A&M served its sixth fee statement for the period from November 1, 2005 through and including November 30, 2005 (the "Sixth Fee Statement").  The Sixth Fee Statement sought an allowance of $100,000.00 (representing one month of services at a fixed fee of $100,000.00 per month) as compensation for services rendered and the reimbursement of $342.94 in expenses.

(c)    On January 11, 2006, pursuant to the Interim Compensation Order and the Notice of Approval of Retention Terms, A&M served its seventh fee statement for the period from December 1, 2005 through and including December 31, 2005 (the "Seventh Fee Statement").  The Seventh Fee Statement sought an allowance of $100,000.00 (representing one month of services at a fixed fee of $100,000.00 per month) as compensation for services rendered and the reimbursement of $6,562.76 in expenses.

(d)   On February 22, 2006, pursuant to the Interim
      Compensation Order and the Notice of Approval of
      Retention Terms, A&M served its eighth fee statement
      which included the period from January 1, 2006 through
      and including January 31, 2006 (the "Eighth Fee
      Statement").  The Eighth Fee Statement sought an
      allowance of $100,000.00 for the period January 1,
      2006 though January 31, 2006 (representing one month
      of services at a fixed fee of $100,000.00 per month)
      as compensation for services rendered and the
      reimbursement of $10,268.81 in expenses.

(e)   On November 7, 2005, A&M issued a credit note, in the
      amount of $626.97, to be offset against A&M billings.
      The credit note was issued in order to reverse the
      invoicing of certain A&M legal fees and a
      transportation charge inadvertently billed to Winn-
      Dixie.

(f)   Additionally, A&M is issuing an additional $43.55
      credit with this Fee Application to reverse the
      double-billing of certain telecommunications charges.

9.   As of the filing of this Application, A&M has
received payment in the amount of 80% of fees and 100% of
expenses with respect to the Fifth, Sixth, Seventh and Eighth
Interim Fee Statements, less $626.97 for the November 7, 2005
credit, for a total of $336,734.65.

10.   A&M has not entered into any agreement, express
or implied, with any other party for the purpose of fixing or
sharing fees or other compensation to be paid for professional
services rendered in these cases.

11.   No promises have been received by A&M or any
member thereof as to compensation in connection with these cases

other than in accordance with the provisions of the Bankruptcy
Code.

## II.  <u>CASE STATUS</u>

12.  The Debtors have not filed a disclosure statement
or a plan of reorganization in these cases.

## III. <u>APPLICATION</u>

13.  By this Application, A&M is seeking full
allowance of (a) compensation for professional services rendered
by A&M, as operation and real estate advisor to the Committee,
during the Third Interim Compensation Period and (b)
reimbursement of expenses incurred by A&M in connection with
such services during the Third Interim Compensation Period.

14.  In this Application, A&M seeks approval of the
amount of $400,000.00 for advisory services rendered on behalf
of the Committee during the Third Interim Compensation Period
and the amount of $16,691.10 (net of the newly issued credit of
$43.55) for reimbursement of expenses incurred in connection
with the rendition of such services, for a total award of
$416,691.10.

15.  Pursuant to the Interim Compensation Order, A&M,
together with all other retained professionals, is entitled to
eighty percent (80%) of its fees sought in A&M's Third Interim
Compensation Period and reimbursement of one hundred percent
(100%) of A&M's expenses.  As noted above, A&M has received to

date 80% of fees and 100% of expenses for the Fifth, Sixth,

Seventh and Eighth Fee Statements (totaling $336,734.65).  A&M

is, therefore, seeking a total payment of $79,956.45 pursuant to

this Application, representing the unpaid balance of 100% of

fees and 100% of expenses for the Fifth, Sixth, Seventh and

Eighth Fee Statement.

16.  The fees sought by this Application reflect an

aggregate of 803.0 hours of professional time spent and recorded

in performing services for the Committee during the Third

Interim Compensation Period.

17.  A&M rendered to the Committee all services for

which compensation is sought solely in connection with these

cases in furtherance of the duties and functions of the

Committee.

18.  A&M maintains electronic records of the time

expended in the rendering of the professional services required

by the Committee.  These records are maintained in the ordinary

course of A&M's business.  For the convenience of the Court and

parties in interest, a billing summary for the Third Interim

Compensation Period is attached as part of the cover sheet,

setting forth the name of each professional for whose work on

these cases compensation is sought, each professional's title

and the amount of time expended by each such professional.

19.   Attached hereto as Exhibit A are time entry records broken down in halves of an hour by professional, based on guidelines from the Retention Order, setting forth a description of services performed by each professional on behalf of the Committee for the Third Interim Compensation Period.

20.   A&M also maintains electronic records of all expenses incurred in connection with the performance of professional services.  A summary of the amounts and categories of expenses for which reimbursement is sought for the Third Interim Compensation Period is attached hereto as Exhibit B.

### IV.  SUMMARY OF PROFESSIONAL SERVICES RENDERED

21.   The following summary is intended to highlight the services rendered by A&M and segregate those services into categories where A&M has expended a number of hours on behalf of the Committee.  It is not meant to be a detailed description of all of the work performed; detailed descriptions of the day-to-day services provided by A&M during the Third Interim Compensation Period and the time expended performing such services are fully set forth in Exhibit A hereto.  Such detailed descriptions show that A&M was heavily involved in the performance of services for the Committee on a daily basis, including night and weekend work, often under time constraints to meet the needs of the Committee in these cases. Furthermore, sixty percent (60%) of the time incurred by A&M professionals,

from October 1, 2005 through January 31, 2006, was incurred by Managing Directors and Directors, the most experienced professionals in the firm.

## A.   Retention/Fee Matters

22.   A&M participated in discussions with the Committee counsel, Debtors' professionals and representatives of Stuart Maue (Fee Examiner). A&M filed its Second Interim Fee Application for the period June 1, 2005 through September 30, 2005 and subsequent monthly fee statements. Additionally, A&M submitted its First and Second Interim Compensation period fee statements in the required format to the Fee Examiner.

## B.   Business Plan Due Diligence / Store Analysis

23.   A&M performed an operational review of the Debtor's business plan (FY 2006 – 2010) and footprint rationalization.  A&M has participated in several discussions with the Debtors' operations management regarding all business plan elements including operating initiatives to improve store performance, industry benchmarking and historical operating practices.  A&M submitted several information request items and monitored the status of information flow from the Debtor and its advisors.  A&M respectfully asserts that its operating experience is vital to the proceedings as the Debtor's operating performance will help maximize the distributions to the Debtors' unsecured creditors.

C.    **Case Management**

24.    A&M discussed case issues, case timeline and next steps and has coordinated work product and work flow with other advisors and Committee counsel.

D.    **Reclamation / Trade Program / Preferences**

25.    A&M participated in several discussions with Winn-Dixie trade vendors in order to get vendors involved in the trade program.    A&M reviewed and discussed potential preference payments and appropriate waivers of these claims with the Debtors' professionals.

E.    **Real Estate**

26.    A&M reviewed proposed lease rejections, specific-store lease agreements, real estate impacts of proposed store closures and leasing impacts of the revised footprint.    A&M real estate professionals participated in discussions with landlords, Debtor's representatives and advisors as well as the Committee.

F.    **Executory Contracts**

27.    A&M reviewed proposed rejections of executory contracts, and discussed same with the Debtors' advisors, to better understand the business purposes for rejection or assumption, potential damages and, as an alternative and in an effort to maximize creditor recovery, potential realizable value from assignment of contracts.    A&M prepared schedules detailing

contracts to be rejected and presented its findings to the Committee.

## G.    Insurance Financing

28.   A&M reviewed proposed insurance premium financings, collateral requirements, premium pricing levels, factors behind pricing increases, insurance coverage and factors behind the selection of insurance providers with Winn-Dixie's advisors and the Committee.  A&M discussed coverage policies and the factors behind pricing and coverage changes.

## H.    Insurance Claims

29.   A&M reviewed supporting documentation and discussed with the Debtor and XRoads the Debtors' insurance claims related to Hurricane Katrina and other named 2005 storms. A&M reviewed inventory, real property damage and construction claims and presented its findings to the Committee. Additionally, A&M reviewed and discussed the Debtors methodology and timing for calculating business interruption claims.  A&M also reviewed a proposed settlement of all 2004 named storm insurance claims.

## I.    Teleconference / Meetings

30.   A&M team members participated in numerous in-person meetings and teleconferences with the Debtors, the Debtors' advisors and legal counsel, as well as the Committee members and their counsel, on a variety of issues.

**J.**   **Employee Retention / Severance**

31.   A&M reviewed the Company's proposed retention and severance plan for CEO Peter Lynch.   A&M analyzed historical payroll and other compensation data, benchmarked Winn-Dixie's compensation program to other companies and participated in discussions with the Committee and its advisors/counsel.

**K.**   **Store / Company Financials**

32.   A&M updated its database of detailed store-by-store financials including several revenue, operating and profitability analyses.   A&M team members prepared informational memoranda for the Committee, detailing store performance results and analyzing such items as shrink, operating expenses and revenue.

**L.**   **Business Plan Presentation**

33.   A&M prepared, on a joint basis with HLHZ, a presentation summarizing the Debtors Business Plan and the pertinent impacts on the Committee.   A&M prepared analyses and commentary, focusing on the operational aspects of the Business Plan and presented its findings at a meeting of the Committee.

**VI.**   **ALLOWANCE OF COMPENSATION**

34.   The professional services rendered by A&M, particularly in light of A&M's specialized role as operations and real estate advisor, have required a high degree of professional competence and expertise to address the numerous

issues requiring evaluation and action by the Committee.   A&M respectfully submits that the services rendered to the Committee were performed efficiently, effectively and economically, and that the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditors as a whole and the Debtors' estates.

35.   The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

36.   With respect to the allowance of compensation, section 328(a) of the Bankruptcy Code provides that with Court approval:

> A committee . . . may employ or authorize the employment of a professional person . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis, compensation for actual, necessary services rendered.

11 U.S.C. § 328(a).

37.   The total time spent by A&M professionals during the Third Interim Compensation Period was 803.0 hours.   As shown

by this Application and supporting exhibits, A&M's services were rendered economically, primarily by the most experienced members of the team, and without unnecessary duplication of efforts.  In addition, the work involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.

## VII. **EXPENSES**

38.  A&M has incurred a total of $16,691.10 (net of the newly issued credit) in expenses in connection with representing the Committee during the Third Interim Compensation Period.  A&M records all expenses incurred in connection with the performance of professional services.  A summary and a detailed listing of these expenses is annexed hereto as Exhibit B.

39.  In connection with the reimbursement of expenses, A&M's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients.  The expenses charged to A&M's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals and computerized research costs.

40.   A&M charges the Committee for these expenses at rates consistent with those charged to A&M's other bankruptcy clients, which rates are equal to or less than the rates charged by A&M's to its non-bankruptcy clients.

41.   Professionals at A&M have not incurred expenses for luxury accommodations or deluxe meals.   The Application does not seek reimbursement of any air travel expenses in excess of coach fares, unless coach airfares were unavailable and travel could not be rescheduled.   Throughout the Third Interim Compensation Period, A&M has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII.  **NOTICE**

42.   Notice of this Motion has been given to counsel to the Debtors, counsel to the agent for the Debtor's DIP lender, the United States Trustee, the chair of the Committee, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases.   In light of the nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.

## IX.   CONCLUSION

WHEREFORE, A&M respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit C, (a) allowing A&M (i) interim compensation for professional services rendered as advisor to the Committee during the Third Interim Compensation Period in the amount of $400,000.00 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $16,691.10, for a total award of $416,691.10; (b) authorizing and directing the Debtors to pay to A&M $79,956.45, which is the amount outstanding for services rendered and expenses incurred during the Third Interim Compensation Period; and (c) granting such further relief as is just.

Dated: March 16, 2005

**ALVAREZ & MARSAL, LLC**

By: /s/ Martha E. M. Kopacz    _____
    Martha E. M. Kopacz
    600 Lexington Avenue
    Sixth Floor
    New York, New York 10022
    (212) 759-4433

    Operation and Real Estate
    Advisor to Official Committee
    of Unsecured Creditors of Winn-
    Dixie Stores, Inc., et al.

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Martha Kopacz | 10/5/05 | 4.0 | Trade Credit Program review - Pepsi, Church & Dwight, Ralston, JaRu, Atlanta Foods, Beaver Fisheries, L'Oreal, Unilever, Georgia Pacific, Elmer Candy, Campbell Soup, Unarco |
| Martha Kopacz | 10/6/05 | 5.0 | Review third wave of preference analysis from XRoads; review Period 1 memo; review operating results |
| Martha Kopacz | 10/12/05 | 3.0 | Trade Credit Program Review  - Peace River Citrus, Dell Marketing,  Mead Johnson, Specialty Brands, Cardinal Health (special stip) |
| Martha Kopacz | 10/13/05 | 1.5 | Trade Credit Program Review - Benson's, Swedish Match NA, Flowers, Inc.; review agenda and memo for October 14 committee call |
| Martha Kopacz | 10/14/05 | 3.0 | Committee Conference call; review weekly reports of operations; trade credit program - Red Gold |
| Martha Kopacz | 10/18/05 | 2.0 | Review Period 2 results; review and edit memo; review and edit Bahamas memo |
| Martha Kopacz | 10/26/05 | 1.5 | Call with Holly Etlin regarding delay of business plan; follow up with HLHZ and A&M team; review A&M memos to the Committee regarding insurance matters and operating results |
| Martha Kopacz | 10/27/05 | 3.0 | Committee conference call; review weekly reports of operations; trade credit program - revisions to three previous agreements |
| Martha Kopacz | 10/31/05 | 0.5 | Call with Dennis Simon regarding plan issues and employee issues |
| Martha Kopacz | 11/1/05 | 0.5 | Business plan due diligence planning; insurance question from committee member |
| Martha Kopacz | 11/2/05 | 3.0 | Trade Credit Program:  Pepperidge Farms, Malt O Meal, Crowley Foods, Kemps, Heluva Good Cheese, AEP, Minute Maid; Due diligence scheduling; review Period 3 results; review A&M memo regarding same |
| Martha Kopacz | 11/7/05 | 5.0 | Trade Credit Program - Unilever; review second fee app and monthly invoice; review weekly reports received from Winn Dixie; Business Plan review |
| Martha Kopacz | 11/8/05 | 8.0 | Business plan review; travel to Jacksonville |
| Martha Kopacz | 11/9/05 | 10.0 | Committee meeting; meeting with company; due diligence meetings with management; store tours |
| Martha Kopacz | 11/10/05 | 9.0 | Due diligence meetings with professionals and management; travel from Jacksonville |
| Martha Kopacz | 11/11/05 | 4.0 | Business plan due diligence - info and data requests; Premier Beverage trade program |
| Martha Kopacz | 11/14/05 | 6.0 | Business plan due diligence - info and data requests, financial model |
| Martha Kopacz | 11/15/05 | 5.0 | Business plan due diligence - info and data requests, financial model; weekly performance reports from WD |
| Martha Kopacz | 11/16/05 | 6.0 | Business plan due diligence; meeting with HLHZ |
| Martha Kopacz | 11/17/05 | 5.0 | Business plan due diligence; review Blackstone model; email review and responses |
| Martha Kopacz | 11/18/05 | 6.0 | Business plan due diligence; teleconference with M Gavejian regarding A&M work product outline; identify additional requests |
| Martha Kopacz | 11/21/05 | 4.0 | Business plan due diligence |
| Martha Kopacz | 11/22/05 | 5.0 | Business plan due diligence |
| Martha Kopacz | 11/28/05 | 8.0 | Business plan due diligence; review draft slides |
| Martha Kopacz | 11/29/05 | 8.0 | Business plan due diligence; conference call with HLHZ; Unilever Best Foods preference waiver; conference with trade creditors |
| Martha Kopacz | 11/30/05 | 5.0 | Business plan due diligence; conference call with Dave Henry |
| Martha Kopacz | 12/1/05 | 6.0 | Business plan due diligence; conference call with Mark Sellers; Committee Conference Call |
| Martha Kopacz | 12/2/05 | 7.0 | Business plan due diligence; liquidation analysis |
| Martha Kopacz | 12/5/05 | 8.0 | Business plan due diligence; conference call with Tom Robbins; liquidation analysis |
| Martha Kopacz | 12/6/05 | 8.0 | Business plan due diligence; draft presentation slides; liquidation analysis |
| Martha Kopacz | 12/7/05 | 8.0 | Business plan due diligence; conference call with Mark Sellers; liquidation analysis; status update with HLHZ |
| Martha Kopacz | 12/8/05 | 13.0 | Business plan due diligence; Committee conference call; liquidation analysis |
| Martha Kopacz | 12/9/05 | 7.0 | Business plan due diligence; edit presentation slides |
| Martha Kopacz | 12/11/05 | 3.5 | Business plan due diligence; conference call with HLHZ |
| Martha Kopacz | 12/12/05 | 8.0 | Finalize liquidation presentation; review weekly sales reports |
| Martha Kopacz | 12/13/05 | 14.0 | Preparation for presentation; meeting with HLHZ regarding presentation; travel to NY (@ 50%) |
| Martha Kopacz | 12/14/05 | 7.5 | Creditors' Committee meeting; follow up call with Debtors' professionals; travel from NY (@ 50%) |
| Martha Kopacz | 12/20/05 | 1.0 | Review weekly results; review email and respond |

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Martha Kopacz | 12/22/05 | 1.0 | Preference waivers for Southern Spirits, Coca-cola Enterprises, Doane Pet Care; follow up with XRoads regarding outstanding vendors |
| Martha Kopacz | 1/3/06 | 2.0 | Review email from past weeks and response; teleconference with S.Burian (HLHZ) regarding case status |
| Martha Kopacz | 1/4/06 | 5.0 | Teleconference with H.Etlin (XRoads) regarding scheduling follow up work from Business Plan; review operating results; review MOR; review executive compensation comparative analysis; Dannon stipulation |
| Martha Kopacz | 1/5/06 | 3.0 | Committee conference call; review pleadings regarding examiner and resume of suggested examiner candidate; preference waiver for Gerber |
| Martha Kopacz | 1/9/06 | 8.0 | Call with XRoads - next steps on business plan due diligence; review sensitivity analysis; review term sheet; review Equity committee communications/emails/responses |
| Martha Kopacz | 1/11/06 | 2.0 | Call with XRoads - follow up on prior call regarding next steps on business plan due diligence and business monitoring; Teleconference with HLHZ regarding Lynch contract |
| Martha Kopacz | 1/12/06 | 3.0 | Teleconference with HLHZ regarding Lynch contract; review operational performance reports; review and respond to email regarding substantive consolidation |
| Martha Kopacz | 1/17/06 | 1.5 | Meeting with Milbank - planning next phase of work |
| Martha Kopacz | 1/18/06 | 3.0 | Review email and respond; review weekly reports; Teleconference regarding Lynch contract |
| Martha Kopacz | 1/19/06 | 2.5 | Committee conference call; review pleadings regarding equity committee disbandment; Teleconference with candidate for Examiner |
| Martha Kopacz | 1/25/06 | 1.5 | Review weekly performance reports; teleconference with S.Burian (HLHZ) regarding Lynch contract; teleconference with S.Schirmang regarding same |
| Martha Kopacz | 1/26/06 | 1.0 | Committee conference call |
| Martha Kopacz | 1/30/06 | 1.5 | Conference call with XRoads, Blackstone & HLHZ regarding liquidation analysis; follow-up with XRoads regarding same |
| **Total** | | **247.0** | |
| | | | |
| William McGuire | 10/11/05 | 1.7 | Review latest rejection motion |
| William McGuire | 10/11/05 | 0.3 | Call with company to discuss rejection motion |
| William McGuire | 10/11/05 | 0.7 | Memo to attorneys re: rejection motion |
| William McGuire | 11/28/05 | 1.6 | Review Winn-Dixie Plan |
| William McGuire | 11/28/05 | 0.8 | Review Winn-Dixie motion to affirm lease on store #2197 |
| William McGuire | 11/29/05 | 0.8 | Review Winn-Dixie Plan |
| William McGuire | 11/29/05 | 0.5 | Review staff comments on Winn-Dixie Plan |
| William McGuire | 11/29/05 | 1.8 | Prepare list of questions for Winn-Dixie related to Plan |
| William McGuire | 11/29/05 | 0.5 | Email correspondence related to Winn-Dixie Plan |
| William McGuire | 11/30/05 | 2.4 | Review Plan support form Winn-Dixie |
| William McGuire | 11/30/05 | 0.4 | Emails related to Plan questions |
| William McGuire | 12/12/05 | 2.3 | Review Company's proposed rejection motion; Review filings related to by-pass property |
| William McGuire | 12/14/05 | 1.7 | Calls with Company regarding proposed lease rejections; Review information related to proposed lease rejections; Emails with attorneys regarding proposed lease rejections |
| William McGuire | 1/18/06 | 2.4 | Review proposed rejection motion; Emails, phone calls regarding rejection motion |
| William McGuire | 1/19/06 | 2.8 | Review information from Company on proposed rejection; Emails, phone calls regarding rejection motion |
| **Total** | | **20.7** | |
| | | | |
| Andrew Hede | 10/4/05 | 4.5 | Phone call with L.Despin (Milbank); Phone call with E.Scanlan; Time Detail; Period 1 Store Results Memo; Review Equity Committee Objection Responses |
| Andrew Hede | 10/5/05 | 2.0 | Period 1 Store Results Memo; Call with Debtors and XRoads regarding Insurance Claim |
| Andrew Hede | 10/6/05 | 2.0 | Insurance Claim Memo and Analysis; Review Insurance Policies |
| Andrew Hede | 10/7/05 | 1.5 | Review Hurricane Katrina Insurance Claim; Finalize Period 1 Store Results Memo; Phone call with M.Comerford (Milbank) |
| Andrew Hede | 10/12/05 | 1.0 | Review Period 2 Store Results |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Andrew Hede | 10/13/05 | 2.0 | Review Hurricane Katrina Insurance Claim; Review Bahamas Store Budgets and Period 1 Results Memo |
| Andrew Hede | 10/14/05 | 2.0 | Committee Call; Bahamas Store Budgets and Period 1 Results Memo |
| Andrew Hede | 10/16/05 | 1.0 | Period 2 Store Results Memo |
| Andrew Hede | 10/19/05 | 0.5 | Review Hurricane Katrina Insurance Claim #2 |
| Andrew Hede | 10/22/05 | 0.5 | Hurricane Katrina Claim Memo |
| Andrew Hede | 10/28/05 | 2.0 | Review Period 3 Store Results; Hurricane Katrina Claim Memo |
| Andrew Hede | 11/1/05 | 1.5 | Review CLC settlement motion; Review CLC settlement Committee Memo |
| Andrew Hede | 11/2/05 | 1.0 | Review of Period 3 Store and Consolidated Results Memos |
| Andrew Hede | 11/3/05 | 2.0 | Review of CLC settlement Committee Memo; Review of Period 3 Store and Consolidated Results Memos |
| Andrew Hede | 11/4/05 | 1.0 | Review of Period 3 Consolidated Results |
| Andrew Hede | 11/7/05 | 3.0 | Review of Business Plan |
| Andrew Hede | 11/8/05 | 4.0 | Review of Business Plan and Travel to Jacksonville (@50%) |
| Andrew Hede | 11/9/05 | 9.5 | Committee Meetings; Committee/Company Meeting; Business Plan due diligence meetings |
| Andrew Hede | 11/10/05 | 8.0 | Business Plan due diligence meetings and Travel to New York (@50%) |
| Andrew Hede | 11/11/05 | 2.0 | Business Plan Review |
| Andrew Hede | 11/14/05 | 3.0 | Business Plan Review |
| Andrew Hede | 11/15/05 | 2.0 | Business Plan Review |
| Andrew Hede | 11/16/05 | 2.0 | Phone call with A.Stevenson (XRoads); Phone call with M.Comerford (Milbank); Business Plan Review |
| Andrew Hede | 11/17/05 | 3.0 | Committee Call; Business Plan Review; Review Milbank Memos |
| Andrew Hede | 11/18/05 | 2.0 | Business Plan Review |
| Andrew Hede | 11/21/05 | 1.0 | Business Plan Review |
| Andrew Hede | 11/22/05 | 2.0 | Business Plan Review |
| Andrew Hede | 11/23/05 | 3.5 | Review Milbank Memo; Business Plan Review |
| Andrew Hede | 11/24/05 | 3.0 | Business Plan Review Presentation |
| Andrew Hede | 11/28/05 | 2.0 | Business Plan Review Presentation |
| Andrew Hede | 11/29/05 | 3.0 | Review of Management Questions re: Business Plan; Business Plan Review Presentation |
| Andrew Hede | 11/30/05 | 1.5 | Business Plan Review Presentation |
| Andrew Hede | 12/5/05 | 2.0 | Business Plan Review Presentation; Meeting with M.Gavejian |
| Andrew Hede | 12/6/05 | 4.0 | Business Plan Review Presentation |
| Andrew Hede | 12/7/05 | 5.5 | Review Business Plan Presentation; Meeting with HLHZ |
| Andrew Hede | 12/8/05 | 3.0 | Committee Call; Business Plan Review Presentation |
| Andrew Hede | 12/9/05 | 2.0 | Call with Milbank and HLHZ |
| Andrew Hede | 12/11/05 | 5.0 | Review Business Plan Presentation; Call with HLHZ |
| Andrew Hede | 12/12/05 | 2.5 | Business Plan Review Presentation |
| Andrew Hede | 12/13/05 | 4.5 | Review Examiner Motion; Meeting with HLHZ; Prepare for Committee Presentation |
| Andrew Hede | 12/14/05 | 4.0 | Committee Meeting |
| Andrew Hede | 12/19/05 | 2.0 | Call with $R^2$ |
| Andrew Hede | 12/21/05 | 1.5 | Review Hurricane Insurance Claims 3 & 4 |
| Andrew Hede | 12/29/05 | 2.0 | Hurricane Insurance Claims 3 & 4 and Committee Memo |
| Andrew Hede | 12/31/05 | 1.5 | Time/Billing Detail |
| Andrew Hede | 1/3/06 | 0.5 | Review Florida Tax Collector Motion and Milbank Memo |
| Andrew Hede | 1/4/06 | 1.0 | Call with HLHZ; Review Business Plan Sensitivities |
| Andrew Hede | 1/5/06 | 1.0 | Review Monthly Operating Report |
| Andrew Hede | 1/6/06 | 1.0 | Committee Call |
| Andrew Hede | 1/9/06 | 1.5 | Review Business Plan Sensitivity Presentation |
| Andrew Hede | 1/10/06 | 1.0 | Review Lynch retention documents |
| Andrew Hede | 1/11/06 | 2.5 | Review Business Plan Sensitivity Presentation |
| Andrew Hede | 1/12/06 | 1.5 | Committee Call |
| Andrew Hede | 1/16/06 | 1.0 | Periods 4 & 5 store results memo |
| Andrew Hede | 1/17/06 | 1.0 | Periods 4 & 5 store results memo |
| Andrew Hede | 1/18/06 | 2.0 | Review equity committee reinstatement motion; Period 4 & 5 store results memo |
| Andrew Hede | 1/19/06 | 1.5 | Committee Call |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Andrew Hede | 1/20/06 | 1.5 | Periods 4 & 5 store results memo |
| Andrew Hede | 1/23/06 | 2.0 | Periods 4 & 5 store results memo; Review plan term sheet |
| Andrew Hede | 1/25/06 | 2.5 | Review Period 6 consolidated and store results |
| Andrew Hede | 1/26/06 | 1.5 | Committee Call |
| Andrew Hede | 1/30/06 | 2.5 | Call with XRoads, HLHZ, Blackstone; Period 4-6 results memo |
| Andrew Hede | 1/31/06 | 2.5 | Committee Call; Contract Rejection Memo |
| **Total** | | **146.5** | |
| | | | |
| Dirk Aulabaugh | 11/30/05 | 1.6 | Preliminary review of Winn-Dixie Business Plan |
| Dirk Aulabaugh | 11/30/05 | 0.4 | Review Winn-Dixie Penman Plaza motion to reject or assume lease |
| Dirk Aulabaugh | 12/1/05 | 2.0 | Review Winn-Dixie Plan (pgs 1-25), Comment on business plan (pgs 1-25) |
| Dirk Aulabaugh | 12/2/05 | 2.0 | Review Winn-Dixie Plan (pgs 25-50), Comment on business plan (pgs 25-50) |
| Dirk Aulabaugh | | 5.6 | Conference call with XRoads to discuss RE Questions, Research Building costs information, Call with Biff to discuss WD info sent by XRoads, Draft slides for Creditor presentation |
| Dirk Aulabaugh | 12/5/05 | 0.5 | Discussion with AM REAS about cost data |
| Dirk Aulabaugh | 12/6/05 | 2.4 | Review Penman Plaza lease and cure amounts, Conference call with HLHZ and A&M |
| Dirk Aulabaugh | 12/7/05 | 2.2 | Draft Penman Plaza Memo |
| Dirk Aulabaugh | 12/8/05 | 1.2 | Review Filings relating to Pines-Carter Lease |
| Dirk Aulabaugh | 12/20/05 | 2.4 | Continue review of Pines-Carter Motion/phone calls with Biff/initial draft of memo |
| Dirk Aulabaugh | 12/21/05 | 1.7 | Review Store 62 and 1643 rejection motions; research data |
| Dirk Aulabaugh | 1/18/06 | 3.2 | Conference call with Jeffrey Milton at Milbank regarding Store 62 and 1643, etc.; conference call with Bryan Gaston at XRoads regarding Store 62 and 1643; Review Lease Assumption motion on Store 658 |
| Dirk Aulabaugh | 1/19/06 | 4.8 | Initial draft of Memos relating to Store 62 and 1643; Review Oviedo Property APA, Motion and Order to sell |
| Dirk Aulabaugh | 1/20/06 | 5.2 | Draft memo on Oviedo sale; review Store 658 and buyout offer; Discuss and revise memos with A&M |
| Dirk Aulabaugh | 1/23/06 | 4.3 | Review Store 658 performance, compare to portfolio, review deposition notes; follow up with attorneys |
| Dirk Aulabaugh | 1/24/06 | 2.6 | Draft memo on lease buyout offer on Store 658 |
| Dirk Aulabaugh | 1/25/06 | 3.3 | Review motions to reject leases and contracts |
| Dirk Aulabaugh | 1/26/06 | 3.5 | Revise, draft memos store 658, 62, 1643 |
| Dirk Aulabaugh | 1/30/06 | 4.4 | Research and draft memos on By-Pass Property, discussions with Milbank |
| Dirk Aulabaugh | 1/31/06 | | |
| **Total** | | **53.3** | |
| | | | |
| Gregory Ford | 10/11/05 | 2.0 | Conference call and drafting of Commonwealth Lease Rejection Memo |
| Gregory Ford | 10/18/05 | 1.0 | Review and editing of Commonwealth Lease Rejection Memo |
| Gregory Ford | 10/19/05 | 1.0 | Review and editing of Commonwealth Lease Rejection Memo |
| Gregory Ford | 11/2/05 | 1.0 | Review and editing of Commonwealth Lease Rejection Memo |
| Gregory Ford | 11/8/05 | 2.0 | Review & prepare Store #1297 Lease Rejections Memo |
| Gregory Ford | 11/9/05 | 2.0 | Review & prepare Store #1297 Lease Rejections Memo |
| Gregory Ford | 11/11/05 | 1.0 | Review, and final editing of the 7th Round of Lease Rejections Memo |
| Gregory Ford | 11/14/05 | 1.0 | Review, and final editing of the 7th Round of Lease Rejections Memo |
| Gregory Ford | 11/15/05 | 1.0 | Review, and final editing of the 7th Round of Lease Rejections Memo |
| Gregory Ford | 11/18/05 | 1.0 | Review, and final editing of the 7th Round of Lease Rejections Memo |
| Gregory Ford | 11/21/05 | 1.0 | Review, and final editing of the 7th Round of Lease Rejections Memo |
| Gregory Ford | 11/22/05 | 1.0 | Review, and final editing of the 7th Round of Lease Rejections Memo |
| **Total** | | **15.0** | |
| | | | |
| Erin Scanlan | 10/3/05 | 5.0 | Update financial results memo, review Period 1 financials and compare to FY 2005 results |
| Erin Scanlan | 10/4/05 | 3.8 | Update Period 1 data; prepare Period 1 financial results memo |
| Erin Scanlan | 10/5/05 | 3.0 | Review Bahamas DMA Budget and related memo; Update Period 1 financial results memo |

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Erin Scanlan | 10/6/05 | 1.6 | Finalize and send out financial summary memo |
| Erin Scanlan | 10/7/05 | 2.1 | Update information for Bahamas and create YTD data for financial summary memo |
| Erin Scanlan | 10/9/05 | 1.9 | Update information for Bahamas and create YTD data for financial summary memo |
| Erin Scanlan | 10/10/05 | 4.5 | Prepare Period 2 financial analysis; Update Period 2 memo |
| Erin Scanlan | 10/11/05 | 5.5 | Update Period 2 memo; Prepare questions for Debtors |
| Erin Scanlan | 10/13/05 | 1.3 | Call with A.Shah (XRoads); Prepare and send information to A.Shah (XRoads) |
| Erin Scanlan | 10/15/05 | 0.8 | Update Period 2 memo based on XRoad's comments regarding Period 2 data / results |
| Erin Scanlan | 10/17/05 | 1.9 | Emails and call with A.Shah (XRoads); Update Period 2 memo |
| Erin Scanlan | 10/18/05 | 0.5 | Update Period 2 memo |
| Erin Scanlan | 10/19/05 | 0.8 | Various calls regarding Period 2 memo; Finalize memo |
| Erin Scanlan | 10/20/05 | 0.5 | Various calls and emails with M.Gavejian regarding inventory liquidation sale update |
| Erin Scanlan | 10/27/05 | 3.2 | Conference call and review Period 3 store financials |
| Erin Scanlan | 10/28/05 | 4.1 | Prepare Period 3 financial analysis; Update Period 3 memo |
| Erin Scanlan | 10/30/05 | 1.0 | Prepare and send questions to XRoads regarding Period 3 store data |
| Erin Scanlan | 11/1/05 | 3.8 | Review and reformatting of store-by-store financial data Period 3 2005 |
| Erin Scanlan | 11/2/05 | 6.8 | Analysis of store financial data and draft preparation of Store Results Memo for Period 3 2005 |
| Erin Scanlan | 11/3/05 | 5.1 | Revision and refining of Store Results Memo for Period 3 2005, discussion with XRoads regarding questions on Period 3 2005 performance |
| Erin Scanlan | 11/4/05 | 1.0 | Finalize and distribute Store Results memo for Period 3 2005 |
| Erin Scanlan | 12/6/05 | 4.0 | Initial preparation of Liquidation analysis under various scenarios; review of borrowing base certificates; discussed analysis with M.Kopacz |
| Erin Scanlan | 12/7/05 | 3.0 | Discussed retirement plans and store liquidations with M.Gavejian; revision Liquidation analysis; discussed analysis with M.Kopacz |
| Erin Scanlan | 12/8/05 | 6.0 | Continued revision of Liquidation analysis based on store results and information received relative to recent borrowing base certificates; discussed analysis with M.Kopacz |
| Erin Scanlan | 12/9/05 | 3.0 | Finalized liquidation analysis for presentation and discussed with M.Gavejian; discussed analysis with M.Kopacz |
| **Total** | | **74.1** | |
| Matthew Gavejian | 10/4/05 | 4.5 | Review of Bahamas DMA (12 stores) FY 2006 budget; analysis and reformatting of data; initial preparation of memo regarding budgets |
| Matthew Gavejian | 10/5/05 | 3.5 | Review of Bahamas DMA (12 stores) Period 1 results; analysis and reformatting of data; revision of memo on Bahamas budgets |
| Matthew Gavejian | 10/6/05 | 2.5 | Preparation of memo summarizing Debtors initial Hurricane Katrina insurance claims |
| Matthew Gavejian | 10/11/05 | 0.8 | Phone call with C.Boucher (XRoads) to discuss proposed settlement with Computer Leasing Co. |
| Matthew Gavejian | 10/12/05 | 0.5 | Preparation of chart summarizing proposed settlement; discussed settlement with S.Naik (Milbank) |
| Matthew Gavejian | 10/13/05 | 1.3 | Revision of Bahamas memo to include Period 1 results |
| Matthew Gavejian | 10/14/05 | 1.3 | Committee Call; finalized Bahamas Store Budgets and Period 1 Results Memo |
| Matthew Gavejian | 10/18/05 | 1.5 | Further discussions of proposed Computer Leasing Co. settlement with C.Boucher (XRoads); initial preparation of memo on the same |
| Matthew Gavejian | 10/20/05 | 2.0 | Various calls and emails with E.Scanlan regarding inventory liquidation sale update; preparation of memo on Debtors' second Hurricane Katrina insurance claim |
| Matthew Gavejian | 10/21/05 | 2.5 | Continued revision of various memos (insurance claims, inventory liquidation, settlement); discussed inventory liquidation with R.Damore (XRoads) |
| Matthew Gavejian | 10/24/05 | 1.0 | Discussion of business interruption claims with A&M personnel to understand process of Debtor's claims preparation |
| Matthew Gavejian | 10/25/05 | 1.0 | Review of HLHZ memos and preparation of case update for team members |
| Matthew Gavejian | 10/28/05 | 3.5 | Review of latest proposed AFCO premium financing documents; discussion of financing with R.Damore (XRoads); discussion of AFCO financing with L.Mandel (Milbank) |
| Matthew Gavejian | 10/31/05 | 2.0 | Revision of settlement memo; discussion with S.Naik (Milbank); review of 2004 insurance settlement documents for Hurricane claims; preparation of time detail and billing documents |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 11/1/05 | 5.0 | Review of latest AFCO premium financing agreement and communication of review to Milbank; review of team members time descriptions, initial preparation of monthly invoice; review of Computer Leasing Corporation ("CLC") settlement motion; discussions with XRoads |
| Matthew Gavejian | 11/2/05 | 4.5 | Preparation of second interim fee application (time reporting schedules and organizing of information); e-mails with XRoads regarding monthly reporting packages |
| Matthew Gavejian | 11/3/05 | 4.0 | Final revision of CLC settlement memo; continued preparation of second interim fee application |
| Matthew Gavejian | 11/4/05 | 4.0 | E-mails to XRoads requesting information on 2040 Hurricane Settlement; continued preparation and modification of second interim fee application; modification of fee order per new language from US Trustee |
| Matthew Gavejian | 11/7/05 | 5.5 | Review of 2004 Hurricane Insurance settlement data; e-mails with Winn-Dixie personnel for information related to settlement; review of responses to requests; discussion of settlement with M.Comerford (Milbank); revision of A&M Second fee application |
| Matthew Gavejian | 11/8/05 | 6.5 | Review of business plan documents; preparation of questions list; Travel to Jacksonville (@50%) |
| Matthew Gavejian | 11/9/05 | 8.0 | Committee Meetings; Committee/Company Meeting; Business Plan due diligence meetings |
| Matthew Gavejian | 11/10/05 | 6.0 | Business Plan due diligence meetings with Management and various advisors; Travel to New York (@50%) |
| Matthew Gavejian | 11/11/05 | 4.0 | Review of Winn-Dixie financial forecasting model provided by Blackstone; preparation of combined HLHZ and A&M Business Plan due diligence request list |
| Matthew Gavejian | 11/14/05 | 2.5 | Revision, finalization and distribution of Business Plan due diligence request list; responded to Milbank question regarding funding of AFCO premiums through  financing rather than DIP borrowings |
| Matthew Gavejian | 11/15/05 | 3.5 | Meeting with HLHZ and Blackstone to discuss Business Plan questions and modeling; initial preparation of due diligence request list |
| Matthew Gavejian | 11/16/05 | 2.0 | Clarified question from Business Plan due diligence request list; meeting with HLHZ |
| Matthew Gavejian | 11/18/05 | 4.5 | Call with M.Kopacz regarding A&M work product outline and document additional information requests |
| Matthew Gavejian | 11/21/05 | 4.5 | Updated Business Plan due diligence request list for new items; communicate with A&M Real Estate team on timing for Business Plan review deliverables; discussed Deloitte & Touche application to provide internal audit services with A.Shah (XRoads) and M.Comerford (Milbank) |
| Matthew Gavejian | 11/22/05 | 4.0 | Preparation and revision of slides (charts and commentary) for presentation on Winn-Dixie Business Plan to the Committee |
| Matthew Gavejian | 11/23/05 | 2.5 | Preparation and revision of slides (charts and commentary) for presentation on Winn-Dixie Business Plan to the Committee |
| Matthew Gavejian | 11/28/05 | 6.5 | Preparation of discussion items list for upcoming call with D.Henry; Review of Penman Plaza assumption motion and order; Coordination with A&M Real Estate team; Revision of slides for presentation to the Committee; review of article discussing Winn-Dixie deferred capital expenditures |
| Matthew Gavejian | 11/29/05 | 7.5 | Conference call with Winn-Dixie trade creditors to discuss market reaction to emerging companies; conference call with HLHZ; review of preliminary template for liquidation analysis; scheduling of conference calls with Blackstone, Review of week 21 borrowing base certificate; Revised information request list for requests from A&M Real Estate group and coordinated with Blackstone and XRoads; review of revised work plan calendar |
| Matthew Gavejian | 11/30/05 | 3.5 | Conference call with D.Henry (Winn-Dixie, Marketing) to discuss on-going and new marketing efforts; review of second round distribution of requested Business Plan due diligence items from Blackstone; preparation of discussion topics list for future discussions with Winn-Dixie personnel |
| Matthew Gavejian | 12/1/05 | 2.0 | Prepared for and participated in Committee call; business plan due diligence conference call with Mark Sellers (Winn-Dixie) |
| Matthew Gavejian | 12/2/05 | 2.5 | Conference call with Stuart Maue to discuss fee examiner role and professional hours documentation to be provided; revision of A&M business plan presentation slides based on discussion with M.Sellers (Winn-Dixie) |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 12/4/05 | 1.0 | Revision of business plan presentation slides |
| Matthew Gavejian | 12/5/05 | 5.5 | Business plan due diligence conference call with Tom Robbins (Winn-Dixie); discussion with A.Hede; preparation of working capital slide based on information provided by vendors; discusses Hispanic resets with J.O'Connell (Blackstone); revision of presentation slides; e-mail additional questions to J.O'Connell related to business plan due diligence |
| Matthew Gavejian | 12/6/05 | 6.0 | Business plan due diligence conference call with Mark Sellers (Winn-Dixie); updated due diligence request list and distributed to Blackstone; incorporated Real Estate slides into business plan presentation; review of period 4 and 5 financial statements; incorporate comments from M.Kopacz into presentation; review of deferred capital expenditures analysis and presentation from HLHZ; preparation of lead-in slide for presentation; distributed updated business plan slides to HLHZ for integration into combined presentation |
| Matthew Gavejian | 12/7/05 | 7.5 | Status update meeting with HLHZ; discussed store liquidations and MSP/SRP with E.Scanlan; revised Neighborhood Marketing demographics chart per comments from HLHZ; prepared slides for review by A&M team members; revised slides per comments from A.Hede |
| Matthew Gavejian | 12/8/05 | 6.0 | Committee call; revised A&M slides per comments from M.Kopacz; review of meat program data from T.Robbins (Winn-Dixie); distributed updated slides for integration to HLHZ; distributed follow-up questions for T.Robbins and M.Sellers to J.O'Connell; discussed pass-through certificates with J.O'Connell |
| Matthew Gavejian | 12/9/05 | 6.0 | Discussed liquidation analysis with E.Scanlan; transitioned slides and analysis; discussed time entries and distributed information to L.Cooper (Stuart Maue); integrated liquidation analysis slides into presentation; review of documents from Blackstone regarding shrink, Jump Start program, Bahamas sale and Marketing questions; updated slides of business plan presentation for new information |
| Matthew Gavejian | 12/11/05 | 6.5 | Call with HLHZ and A&M to discuss business plan presentation; integrated revised Operation Jump Start and Pharmacy slides into business plan presentation; revised slides per comments from A.Tang (HLHZ); revised slides per comments from A.Hede; revised liquidation analysis per comments from M.Kopacz; reviewed status of all slides in presentation |
| Matthew Gavejian | 12/12/05 | 6.5 | Revised liquidation analysis; reviewed latest borrowing base certificates;  stratified store performance data based on EBITDA; review of September, October and November MORs; final revision of liquidation analysis slides; distributed slides to HLHZ; review of Period 4 and 5 store P&L's; revised one-off liquidation analysis for changing scenario; review list of talking points for meeting |
| Matthew Gavejian | 12/13/05 | 4.5 | Meeting with HLHZ in preparation for presentation; discussed Blackstone transaction fees with J.O'Connell; review and update request list for received items; review of HLHZ presentation on Management Incentive Plan |
| Matthew Gavejian | 12/14/05 | 4.5 | Preparation for and participation in Committee meeting to discuss Winn-Dixie business plan |
| Matthew Gavejian | 12/15/05 | 0.5 | Review of exclusivity motion; e-mail to J.MacInnis (Milbank) on real estate issue |
| Matthew Gavejian | 12/21/05 | 1.1 | Review of third and fourth Hurricane insurance claims; e-mail questions to M.Dussinger (XRoads) |
| Matthew Gavejian | 12/23/05 | 0.7 | Review of executive compensation data of Winn-Dixie comparable companies for comparison to P.Lynch compensation |
| Matthew Gavejian | 12/27/05 | 0.5 | Preparation of December invoice; review of time entries |
| Matthew Gavejian | 12/28/05 | 2.0 | Discussed Hurricane claims with K.Romeo (Winn-Dixie); prepared memo summarizing third and fourth claims |
| Matthew Gavejian | 1/4/06 | 0.5 | Review of business plan sensitivities provided by HLHZ |
| Matthew Gavejian | 1/9/06 | 1.0 | Call with XRoads to discuss next steps on business plan due diligence |
| Matthew Gavejian | 1/10/06 | 0.5 | Revisions to Period 4 and 5 store results memo |
| Matthew Gavejian | 1/11/06 | 1.0 | Preparation of December 2005 invoice |
| Matthew Gavejian | 1/12/06 | 3.5 | Review of compensation package support including Compensation Committee notes and Watson Wyatt report; UCC call |
| Matthew Gavejian | 1/13/06 | 1.0 | Further revisions to Period 4 and 5 store results memo |
| Matthew Gavejian | 1/17/06 | 2.5 | Continued preparation and revision of December 2005 invoice; review of Period 1 and 2 store results information and period reporting statements |
| Matthew Gavejian | 1/18/06 | 0.5 | Reviewed store performance data for New Orleans DMA |

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 1/19/06 | 7.0 | UCC Call; revised Period 4 and 5 store results memo and analyses to include only selected New Orleans DMA stores; redrafting of memo |
| Matthew Gavejian | 1/20/06 | 7.0 | Continued revision of store results memo; review of copier equipment and utilities contracts to be rejected by the Debtor |
| Matthew Gavejian | 1/23/06 | 1.0 | Final review and distribution of Period 4 and 5 store memo |
| Matthew Gavejian | 1/24/06 | 2.5 | Data input of Period 6 store results; review of HLHZ flash memo |
| Matthew Gavejian | 1/25/06 | 5.0 | Review, analysis and reformatting of Period 6 YTD financial statements for distribution to the Committee |
| Matthew Gavejian | 1/26/06 | 4.5 | Review of several operating plans (Bank Plan and AOP), UCC call to discuss plan term sheet; discussed store results with M.Comerford (Milbank); conference call with A&M, Winn-Dixie, Skadden, Blackstone, XRoads, HLHZ and Milbank to discuss substantive consolidation |
| Matthew Gavejian | 1/27/06 | 6.0 | Consolidation and integration of A&M memos related to real estate and executory contract rejections; distribution of same to Milbank; discussed contracts with E.Lane (XRoads); continued preparation of Period 6 YTD financial statements memo |
| Matthew Gavejian | 1/30/06 | 7.0 | Conference call with XRoads, Blackstone & HLHZ to discuss liquidation analysis; analysis of financial statements including revision of statement of cash flows; update of financial statements memo and work with data for Period 6 store results memo; revise rejected contracts memo to the Committee per comments from Milbank |
| Matthew Gavejian | 1/31/06 | 7.0 | Reorganization plan subcommittee call; discussions with Milbank and A&M; final revisions to rejected contract memo per discussions with A&M and Milbank; continued work on Period 6 store results memo and financial statements memo |
| **Total** | | **237.2** | |
| | | | |
| Brian Abbott | 11/25/05 | 2.0 | Review Winn-Dixie Plan and support docs |
| Brian Abbott | 11/25/05 | 0.2 | Emails related to Plan questions |
| Brian Abbott | 11/28/05 | 0.7 | Prepare list of questions for Winn-Dixie related to Plan |
| Brian Abbott | 11/28/05 | 0.3 | Email related to Winn-Dixie Plan |
| **Total** | | **3.2** | |
| | | | |
| Ian McCready | 12/21/05 | 6.0 | Researched grocery store directors and officers salary and compensation structures for Winn-Dixie comparable companies |
| **Total** | | **6.0** | |
| **Grand Total** | | **803.0** | |

**EXHIBIT B**

**Winn-Dixie Stores, Inc., et al.**

Expense Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Amount | Type | Description |
|---|---|---|---|---|
| Martha Kopacz | 11/8/05 | 25.00 | Transportation | Travel arrangement fee |
| Martha Kopacz | 11/8/05 | 35.00 | Transportation | Taxi from JAX to Omni Jacksonville |
| Martha Kopacz | 11/8/05 | 145.10 | Transportation | Car service from home to BOS |
| Martha Kopacz | 11/8/05 | 8.15 | Business Meals | Dinner during layover at PHL en route to JAX |
| Martha Kopacz | 11/10/05 | 150.10 | Transportation | Car service from BOS to home |
| Martha Kopacz | 11/10/05 | 218.80 | Transportation | Roundtrip airfare between BOS and JAX |
| Martha Kopacz | 11/10/05 | 6.85 | Business Meals | Dinner during layover at DCA en route to BOS |
| Martha Kopacz | 11/10/05 | 29.67 | Business Meals | Meals in Jacksonville |
| Martha Kopacz | 11/10/05 | 343.52 | Lodging | 2 nights at Omni Jacksonville for diligence meetings |
| Martha Kopacz | 11/16/05 | 35.00 | Transportation | Taxi from LGA to New York |
| Martha Kopacz | 11/16/05 | 145.10 | Transportation | Car service from home to BOS |
| Martha Kopacz | 11/17/05 | 25.00 | Transportation | Travel arrangement fee |
| Martha Kopacz | 11/17/05 | 35.00 | Transportation | Taxi from New York to LGA |
| Martha Kopacz | 11/17/05 | 150.10 | Transportation | Car service from BOS to home |
| Martha Kopacz | 11/17/05 | 276.90 | Transportation | Roundtrip flight from BOS to LGA |
| Martha Kopacz | 11/17/05 | 533.84 | Lodging | Hotel stay in New York |
| Martha Kopacz | 11/18/05 | 28.73 | Lodging | Subsequent charge from 11/17/05 hotel stay |
| Martha Kopacz | 12/7/05 | 637.27 | Lodging | Hotel stay in New York |
| Martha Kopacz | 12/13/05 | 15.00 | Transportation | Taxi from HLHZ offices to Hotel |
| Martha Kopacz | 12/13/05 | 15.00 | Transportation | Taxi from Hotel to HLHZ offices |
| Martha Kopacz | 12/13/05 | 35.00 | Transportation | Taxi from LGA to hotel |
| Martha Kopacz | 12/13/05 | 145.10 | Transportation | Car service from home to BOS |
| Martha Kopacz | 12/13/05 | 40.45 | Business Meals | Au Mandarin - working |
| Martha Kopacz | 12/14/05 | 5.00 | Transportation | Taxi from hotel to Milbank offices |
| Martha Kopacz | 12/14/05 | 25.00 | Transportation | Travel arrangement fee |
| Martha Kopacz | 12/14/05 | 45.00 | Transportation | Taxi from Milbank offices to LGA |
| Martha Kopacz | 12/14/05 | 150.10 | Transportation | Car service from BOS to home |
| Martha Kopacz | 12/14/05 | 276.90 | Transportation | Rountrip airfare from BOS to LGA |
| Martha Kopacz | 12/14/05 | 569.85 | Lodging | Hilton Hotel for Committee meeting |
| Martha Kopacz | 1/17/06 | 25.00 | Transportation | Travel arrangement fee |
| Martha Kopacz | 1/17/06 | 33.00 | Transportation | Taxi from Milbank offices to LGA |
| Martha Kopacz | 1/17/06 | 38.00 | Transportation | Taxi from LGA to Milbank offices |
| Martha Kopacz | 1/17/06 | 145.10 | Transportation | Car service from home to BOS |
| Martha Kopacz | 1/17/06 | 150.10 | Transportation | Car service from BOS to home |
| Martha Kopacz | 1/17/06 | 296.45 | Transportation | Rountrip airfare from BOS to LGA |
| Martha Kopacz | | 7.33 | Telecommunications allocation [1] | 7/23 - 8/22 Wireless Usage Charges |
| Martha Kopacz | | 4.27 | Telecommunications allocation [1] | 7/23 - 8/22 Wireless Usage Charges |
| Martha Kopacz | | 3.69 | Telecommunications allocation [1] | 8/23 - 9/22 Wireless Usage Charges |
| **Total** | | **4,854.47** | | |
| | | | | |
| William McGuire | | 2.97 | Telecommunications allocation [1] | 6/23 - 07/22 Wireless Usage Charges |
| William McGuire | | 4.09 | Telecommunications allocation [1] | 7/23 - 8/22 Wireless Usage Charges |
| William McGuire | | 2.97 | Telecommunications allocation [1] | 6/23 - 07/22 Wireless Usage Charges |
| William McGuire | | 4.09 | Telecommunications allocation [1] | 7/23 - 8/22 Wireless Usage Charges |
| William McGuire | | 5.85 | Telecommunications allocation 1 | 8/23 - 9/22 Wireless Usage Charges |
| **Total** | | **19.97** | | |
| | | | | |
| Andrew Hede | 10/5/05 | 24.13 | Telecommunications | Business cell phone usage (7/20/05 - 8/19/05) |
| Andrew Hede | 10/21/05 | 36.24 | Telecommunications | Business cell phone usage (8/20/05 - 9/19/05) |
| Andrew Hede | 11/3/05 | 47.19 | Telecommunications | Business cell phone usage (9/20/05 - 10/19/05) |
| Andrew Hede | 11/8/05 | 45.00 | Transportation | Taxi from JAX to Omni Jacksonville |
| Andrew Hede | 11/9/05 | 548.76 | Business Meals | Dinner with A&M, HLHZ and Jeffries teams (10 people) |
| Andrew Hede | 11/10/05 | 1,216.90 | Transportation | Rountrip flight from EWR to JAX |
| Andrew Hede | 11/10/05 | 488.13 | Lodging | 2 nights at Omni Jacksonville for diligence meetings |
| Andrew Hede | 1/6/06 | 30.22 | Telecommunications | Business cell phone usage (10/20/05 - 11/19/05) |
| Andrew Hede | 1/19/06 | 26.13 | Telecommunications | Business cell phone usage (11/20/05 - 12/19/05) |
| Andrew Hede | | 65.30 | Telecommunications allocation [1] | 7/23 - 8/22 Wireless Usage Charges |
| Andrew Hede | | 4.76 | Telecommunications allocation [1] | 9/23 - 10/22 Wireless Usage Charges |

**EXHIBIT B**

**Winn-Dixie Stores, Inc., et al.**

Expense Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Amount | Type | Description |
|---|---|---|---|---|
| Andrew Hede | | 13.59 | Telecommunications allocation [1] | 8/23 - 9/22 Wireless Usage Charges |
| **Total** | | **2,546.35** | | |
| Gregory Ford | | 2.93 | Telecommunications allocation [1] | 6/23 - 07/22 Wireless Usage Charges |
| Gregory Ford | | 0.52 | Telecommunications allocation [1] | 7/23 - 8/22 Wireless Usage Charges |
| Gregory Ford | | 2.93 | Telecommunications allocation [1] | 6/23 - 07/22 Wireless Usage Charges |
| Gregory Ford | | 0.52 | Telecommunications allocation [1] | 7/23 - 8/22 Wireless Usage Charges |
| Gregory Ford | | 3.55 | Telecommunications allocation 1 | 8/23 - 9/22 Wireless Usage Charges |
| **Total** | | **10.45** | | |
| Erin Scanlan | 8/25/05 | 49.47 | Transportation | Car service from LGA to New York |
| Erin Scanlan | 10/10/05 | 36.81 | Telecommunications | Business cell phone usage (9/9/05 - 10/8/05) |
| Erin Scanlan | 11/9/05 | 142.68 | Telecommunications | Business cell phone usage (10/9/05 - 11/8/05) |
| Erin Scanlan | | 48.13 | Telecommunications allocation [1] | 8/23 - 9/22 Wireless Usage Charges |
| Erin Scanlan | | 14.62 | Telecommunications allocation [1] | 9/23 - 10/22 Wireless Usage Charges |
| **Total** | | **291.71** | | |
| Matthew Gavejian | 11/8/05 | 57.63 | Transportation | Car service from NY Office to LGA |
| Matthew Gavejian | 11/10/05 | 483.64 | Lodging | 2 nights at Omni Jacksonville for diligence meetings |
| Matthew Gavejian | 11/10/05 | 33.00 | Transportation | Taxi from LGA to home |
| Matthew Gavejian | 11/10/05 | 1,016.91 | Transportation | Rountrip flight from LGA to JAX |
| Matthew Gavejian | 11/29/05 | 10.00 | Transportation | Taxi from office to home - working late |
| Matthew Gavejian | 12/5/05 | 10.00 | Transportation | Taxi from office to home - working late |
| Matthew Gavejian | 12/6/05 | 10.00 | Transportation | Taxi from office to home - working late |
| Matthew Gavejian | 12/7/05 | 10.00 | Transportation | Taxi from office to home - working late |
| Matthew Gavejian | | 33.04 | Telecommunications allocation [1] | 7/23 - 8/22 Wireless Usage Charges |
| Matthew Gavejian | | 33.04 | Telecommunications allocation [1] | 7/23 - 8/22 Wireless Usage Charges |
| Matthew Gavejian | | 13.01 | Telecommunications allocation [1] | 8/23 - 9/22 Wireless Usage Charges |
| **Total** | | **1,710.27** | | |
| Corporate charges | 9/19/05 | 22.42 | Miscellaneous | DHL Charges |
| Corporate charges | 10/5/05 | 22.92 | Miscellaneous | DHL Charges |
| Corporate charges | 10/6/05 | 23.88 | Telecommunications | Conference America teleconference charges |
| Corporate charges | 10/10/05 | 30.27 | Miscellaneous | Federal Express charges |
| Corporate charges | 10/21/05 | 11.57 | Miscellaneous | Conference America teleconference charges |
| Corporate charges | 10/21/05 | 15.42 | Miscellaneous | Federal Express charges |
| Corporate charges | 11/1/05 | 30.00 | Telecommunications | Conference America teleconference charges |
| Corporate charges | 11/3/05 | 16.25 | Miscellaneous | DHL Charges |
| Corporate charges | 11/3/05 | 56.95 | Miscellaneous | DHL Charges |
| Corporate charges | 11/6/05 | 47.30 | Telecommunications | Conference America teleconference charges |
| Corporate charges | 11/7/05 | 81.22 | Miscellaneous | Federal Express charges |
| Corporate charges | 11/9/05 | 7.33 | Miscellaneous | DHL Charges |
| Corporate charges | 11/14/05 | 42.12 | Miscellaneous | Federal Express charges |
| Corporate charges | 12/6/05 | 7,500.00 | Miscellaneous | F&D Reports customized research for business plan review |
| Corporate charges | 1/27/06 | 20.75 | Telecommunications | Conference America teleconference charges |
| **Total** | | **7,928.40** | | |
| Credit | 11/7/05 | (49.47) | Transportation | Credit issued for car service charge (8/25/05) for A&M personnel for trip to New York office for project transition; billed in November invoice. |
| Credit | 11/7/05 | (472.50) | Miscellaneous | Credit issued for Cronin & Vris legal fees for April and May not allowed to be billed per Retention Agreement; originally billed in June invoice. |

**EXHIBIT B**

**Winn-Dixie Stores, Inc., et al.**

Expense Detail: October 1, 2005 through January 31, 2006

| Professional | Date | Amount | Type | Description |
|---|---|---|---|---|
| Credit | 11/7/05 | (105.00) | Miscellaneous | Credit for Cronin & Vris legal fees for June not allowed to be billed per Retention Agreement; originally billed in August invoice. |
| Credit | | (33.04) | Telecommunications allocation [1] | Matthew Gavejian - 7/23 - 8/22 Wireless Usage Charges (double-billed) |
| Credit | | (2.93) | Telecommunications allocation [1] | Greg Ford - 6/23 - 07/22 Wireless Usage Charges (double-billed) |
| Credit | | (0.52) | Telecommunications allocation [1] | Greg Ford - 7/23 - 8/22 Wireless Usage Charges (double-billed) |
| Credit | | (2.97) | Telecommunications allocation [1] | William McGuire - 6/23 - 07/22 Wireless Usage Charges (double-billed) |
| Credit | | (4.09) | Telecommunications allocation 1 | William McGuire - 7/23 - 8/22 Wireless Usage Charges (double-billed) |
| | | **(670.52)** | | |
| **Grand Total** | | **$   16,691.10** | | |

---

[1] It is A&M policy to bill for certain telecommunications charges. These charges are allocated based on total client hours.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 05-03817-3F1 |
| Debtors. | ) | Jointly Administered |

**ORDER APPROVING THIRD INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM OCTOBER 1, 2005 THROUGH AND INCLUDING JANUARY 31, 2006**

Upon the third interim application of Alvarez & Marsal, LLC ("A&M") for allowance of compensation for services rendered and reimbursement of expenses as operations and real estate advisor to the official committee of unsecured creditors (the "Committee") of Winn-Dixie Stores, Inc. et al., (the "Application"); and due and proper notice of the Application having been given under the circumstances; and it appearing that no further notice need be given; and after a hearing on April 6, 2006; and after statements provided in support of the Application; and the Court having determined that the factual and legal bases set forth in the Application establish just cause for the approval of compensation and reimbursement requested; and upon all the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore it is hereby

1

ORDERED ADJUDGED AND DECREED THAT:

1.  The Application is granted

2.  A&M is allowed (a) interim compensation for professional services rendered as operations and real estate advisor to the Committee during the Second Interim Compensation Period in the amount of $400,000.00 and (b) reimbursement of expenses incurred in connection with rendering such services in the amount of $16,691.10, for a total award of $416,691.10.

3.  The Debtors are authorized and directed to pay to A&M within five days from the date of entry of this Order $79,956.45, which is the total amount outstanding to A&M (net of newly issued credit) and unpaid by the Debtors pursuant to the Interim Compensation Order for professional services rendered and expenses incurred during the Third Interim Compensation Period.

4.  The relief granted in this Order is without prejudice to the rights of A&M to seek further allowance and payment of additional compensation and reimbursement of expenses, including any such amounts incurred during the Application Period for which approval has not previously been sought and denied, upon application to this Court.

2

5.  All interim fees and expenses are subject to review by
    the fee examiner to be appointed by the Court, parties
    in interest and this Court, and no determination is
    made at this time as to reasonableness.  Interim Fees
    and expenses awarded pursuant to this Order may be
    subject to disgorgement.


Dated this __ day of _____, 2006, in Jacksonville, Florida




                                    _____

                                    HONORABLE JERRY A. FUNK
                                    United States Bankruptcy Judge