**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**SUMMARY OF THIRD INTERIM APPLICATION**
**FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**
**(SMITH HULSEY & BUSEY)**

1. Name of Applicant: **Smith Hulsey & Busey**

2. Role of Applicant: **Co-Counsel to the Debtors**

3. Date Case Filed: **February 21, 2005**

5. Date of Application for Employment: **April 18, 2005**

6. Date of Order Approving Employment: **April 20, 2005**

7. Date of this Application: **March 17, 2005**

8. Dates Covered by Application: **October 1, 2005 through January 31, 2006**

   **FEES**

9. Total Fees Requested for Application Period                          $ 985,669.00

10. Balance Remaining in Fee Retainer Account, Not Yet Received                N/A

11. Fees Paid or Advanced for this Period                                $ 361,278.40

**12. NET AMOUNT OF FEES**
    **REQUESTED FOR THIS PERIOD**                                   **$ 624,390.60**

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**EXPENSES**

| | | |
|---|---|---:|
| 13. | Total Expense Reimbursement Requested for Application Period | $ 22,215.64 |
| 14. | Balance Remaining in Expense Retainer Account, Not Yet Received | N/A |
| 15. | Expenses Paid or Advanced for this Period | $ 12,306.46 |
| **16.** | **NET AMOUNT OF EXPENSE REIMBURSEMENT REQUESTED FOR THIS PERIOD** | **$     9,909.18** |
| **17.** | **TOTAL AWARD REQUESTED BY THIS APPLICATION** | **$1,007,884.64** |

**HISTORY OF FEES AND EXPENSES**

| | | |
|---|---|---:|
| 1. | Dates, sources, and amounts of retainers received: | N/A |
| 2. | Dates, sources and amounts of third-party payments received: | N/A |
| 3. | Prior fee and expense awards: | $1,616,060.21 |

**First Interim Application for Compensation and Reimbursement of Expenses**

| | |
|---|---:|
| Dates covered by First Interim Application: | March 28, 2005 through April 30, 2005 |
| Amount of fees requested: | $ 124, 944.50 |
| Amount of expenses requested: | 3,318.02 |
| Amounts of fees awarded: | 124,944.50 |
| Amount of expenses awarded: | 3,318.02 |
| Amount of fee retainer authorized to be used: | N/A |
| Amount of expense retainer authorized to be used: | N/A |
| Fee award, net of retainer: | 124,944.50 |
| Expense award, net of retainer: | 3,318.02 |
| Date of First Interim Application award: | August 4, 2005 |
| Amount of fees actually paid: | 124,944.50 |
| Amount of expenses actually paid: | 3,318.02 |
| Portion of fees requested but not awarded: | 0 |
| Portion of expenses requested but not awarded: | 0 |

**Second Interim Application for Compensation and Reimbursement of Expenses**

| | |
|---|---:|
| Dates covered by Second Interim Application: | May 1, 2005 through September 30, 2005 |
| Amount of fees requested: | $1,428,768.50 |
| Amount of expenses requested: | 59,029.21 |
| Amounts of fees awarded: | 1,428,768.50 |
| Amount of expenses awarded: | 59,029.21 |
| Amount of fee retainer authorized to be used: | N/A |
| Amount of expense retainer authorized to be used: | N/A |
| Fee award, net of retainer: | 1,428,768.50 |
| Expense award, net of retainer: | 59,029.21 |
| Date of Second Interim Application award: | December 1, 2005 |
| Amount of fees actually paid: | 1,428,768.50 |
| Amount of expenses actually paid: | 59,029.21 |
| Portion of fees requested but not awarded: | 0 |
| Portion of expenses requested but not awarded: | 0 |

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

**THIRD INTERIM APPLICATION OF SMITH HULSEY & BUSEY
FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF COSTS ADVANCED**

**(October 1, 2005 through January 31, 2006)**

Pursuant to Section 331 of the Bankruptcy Code (the "Code"), Smith Hulsey & Busey applies for entry of an order allowing interim compensation to the firm for services rendered and costs advanced as bankruptcy co-counsel for Winn-Dixie Stores, Inc. and its subsidiaries and affiliates (collectively, the "Debtors"). By this application, Smith Hulsey is seeking interim compensation for the period from October 1, 2005 through January 31, 2006, for services rendered during the period in the amount of $985,669.00 and reimbursement for costs advanced in the amount of $22,215.64.

**Legal Services Rendered by Smith Hulsey & Busey**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court. The Debtors' cases are being jointly administered for procedural purposes only.

2. On April 20, 2005, the Court authorized the Debtors to retain Smith Hulsey as co-counsel in this case *nunc pro tunc* to March 28, 2005.

3. In accordance with Final Order Approving Interim Compensation Procedures for Professionals entered by the New York Court on March 15, 2005 (Docket No. 434) (the "Fee Order"), Smith Hulsey has been paid $373,584.86 by the Debtors, which represents 80% of the fees ($361,278.40) and 100% of the costs ($12,306.46) actually incurred by Smith Hulsey for the period of October 1 through November 30, 2005. The total amount of fees sought by this application include $90,319.60 (representing the holdback for October and November) and $543,980.18, representing all fees and costs for December and January.

4. Smith Hulsey seeks allowance of fees for services provided to the Debtors during this period in the following areas of its representation:

| Areas of Representation | Total Fees | Total Hours |
| --- | --- | --- |
| Asset Disposition | $ 40,788.00 | 168.4 |
| Automatic Stay (Relief Actions) | 140,159.00 | 521.0 |
| Business Operations/Strategic Planning | 9,723.5 | 28.3 |
| Case Administration | 46,170.00 | 270.6 |
| Claim Admin. (General) | 209,106.00 | 958.6 |
| Claims Litigation | 51,387.50 | 196.4 |
| Claims Admin. (Reclamation/Trust Funds) | 7,120.50 | 22.9 |
| Claims Admin. (PACA) | 1,590.00 | 7.4 |
| Creditor Meetings/Statutory Committees | 83,913.50 | 249.6 |
| Disclosure Statement/Plan Issues | 335.50 | 1.1 |
| Employee Matters (General) | 3,001.50 | 10.1 |
| Environmental Matters | 2,364.00 | 6.8 |

| | | |
|---|---:|---:|
| Executory Contracts | 14,385.00 | 48.9 |
| General Corporate Advice | 1,303.50 | 3.3 |
| Insurance | 6,087.50 | 25.0 |
| Leases (Real Property) | 194,053.00 | 832.6 |
| Litigation (General) | 1,832.50 | 8.5 |
| Reports and Schedules | 2,516.00 | 9.6 |
| Reorganization Plan/Plan Sponsors | 30,356.00 | 108.9 |
| Retention/Fee Matters (Smith Hulsey) | 9,386.00 | 38.8 |
| Retention/Fee Matters (Others) | 24,941.00 | 116.7 |
| Tax Matters | 90,738.00 | 364.3 |
| U.S. Trustee Matters | 1,611.50 | 9.5 |
| Utilities | 12,800.00 | 45.1 |
| Totals | 985,669.00 | 4,052.4 |

5. The services rendered by Smith Hulsey in connection with these matters included:

(a) **Asset Disposition.**[2] Smith Hulsey assisted the Debtors and their advisors in connection with the marketing and sale of owned properties including the Debtors' Miami Dairy Plant, Miami Reclamation Center, the Hollywood, Dallas and Oveido outparcels and several fuel centers, recovering over $14 million in proceeds for these estates.

(b) **Automatic Stay (Relief and Enforcement Actions).** Smith Hulsey represented the Debtors in defense of 20 motions for relief from the automatic stay filed by creditors asserting personal injury, employee, reclamation, landlord, secured and contract claims. The defense of these actions included the negotiation of settlement agreements, the negotiation of standstill agreements and the successful defense of contested evidentiary hearings. In addition, Smith Hulsey responded almost daily to communications from attorneys representing creditors demanding or seeking stay relief and, in most instances, persuaded these prospective movants not to seek such relief. Smith Hulsey also coordinated the enforcement of the automatic stay on behalf of the Debtors in 9 state and federal court actions which were commenced or prosecuted in violation of 11 U.S.C. 362, including the commencement and prosecution of an adversary proceeding seeking sanctions against one creditor for violating the automatic stay. In addition, Smith Hulsey coordinated with local counsel for the Debtors on issues and

---

[2] For purposes of this fee application, Smith Hulsey has combined its billing categories of "Asset Dispositions (General)," "Asset Dispositions (Inventory)" and "Asset Dispositions (Real Property)."

4

strategy necessary to enforce the automatic stay provisions in the multitude of lawsuits pending as of the petition date.

**(c)** **Business Operations/Strategic Planning.** Smith Hulsey participated in weekly conferences with the Debtors' senior management and their advisors to coordinate the restructuring of business operations, coordinate the Chapter 11 proceedings and prepare for court hearings in the bankruptcy.

**(d)** **Case Administration.** Smith Hulsey (i) responded daily to requests for information from interested parties made in correspondence, telephone calls, pleadings and other papers, monitored filings and communicated with the Debtors regarding these matters, and (ii) coordinated the Debtors' restructuring and provided information regarding hearings (including preparing weekly agendas) for the Bankruptcy Court, the Clerk of the Bankruptcy Court, the Creditors' Committee, the United States Trustee and the DIP Lender.

**(e)** **Claims Administration.**[3] Smith Hulsey assisted the Debtors in the establishment and implementation of a litigation claims resolution procedure designed to facilitate liquidation of approximately 3800 litigation claims. As of January 27, 2006, those procedures had resulted in the resolution of 719 litigation claims asserting an aggregate liability of $56,233,267.79 by agreed orders for a total settlement amount of $6,210,694.75 ($680,021.30 in cash and the balance in allowed claims). Smith Hulsey continued to provide legal analysis and counseling to the Debtors necessary to address the treatment of Medicare liens and claims in connection with the resolution of personal injury claims. As part of the claims administration in this case, Smith Hulsey also defended the Company against the motion for adequate protection and related motions

---

[3] For purposes of this fee application, Smith Hulsey has combined its billing categories for "Claims Administration (General)" and "Claims Litigation."

5

filed by Florida Tax Collectors.  Smith Hulsey also prosecuted the Debtors' First and Second Omnibus Objection to Claims and assisted the Company in establishing procedures and guidelines for the mediation of the remaining litigation claims.

**(f)** **Claims Administration.**[4]  Smith Hulsey communicated with creditors regarding their reclamation claims and presented the Debtors' motion for determination of unresolved reclamation claims.

**(g)** **Creditor Meetings/Statutory Committees.**  Smith Hulsey represented the Debtors in intense litigation regarding the Creditors Committee's motion to disband the Equity Committee, the U. S. Trustee's ultimate disbandment of the Equity Committee, and the Equity Committee's motions for reconsideration of its disbandment, including responding to discovery requests by parties in interest, preparation of pleadings and briefs, and attending court proceedings.

**(h)** **Disclosure Statement/Plan Issues.**  Smith Hulsey consulted the Debtors regarding the development of a disclosure statement.

**(i)** **Employee Matters (General).**  Smith Hulsey assisted the Debtors in obtaining court authorization to pay the Debtors' Chief Executive Officer, Peter Lynch, a retention incentive bonus to assure that Mr. Lynch continues to lead the company through the remainder of these Chapter 11 cases.

**(j)** **Environmental Matters.**  Smith Hulsey counseled the Debtors and their advisors regarding environmental issues relating to asset sales, lease rejections and abandonment.

**(k)** **Executory Contracts.**  Smith Hulsey assisted the Debtors in assuming and rejecting executory contracts, including the resolution of Computer

---

[4] For purposes of this fee application, Smith Hulsey has combined its billing categories of "Claims Administration (Reclamation/Trust Funds) and "Claims Administration (PACA)."

6

Leasing Company's motion to compel the Debtors to assume or reject equipment leases for over 38,000 pieces of equipment and preparing settlement documents and pleadings, resulting in savings of over $1 million a month to these estates.

      **(l)**    **<u>General Corporate Advice</u>.** Smith Hulsey attended the Debtors' Board of Directors' meetings and provided advice to the Board on bankruptcy issues.

      **(m)**    **<u>Insurance</u>.** Smith Hulsey assisted the Debtors in their successful prosecution of (i) a motion to approve premium financing agreements for employee fidelity and related coverage with AFCO Premium Finance, LLC and (ii) a motion to approve a settlement agreement with the Debtors' property insurers resulting in the insurers payment of approximately $15 million to the Debtors for 2004 hurricane damage.

      **(n)**    **<u>Leases (Real Property)</u>.** Smith Hulsey assisted the Debtors in (i) filing and prosecution of adversary proceedings against landlords for stay violations, (ii) the rejection of store leases, distribution centers and manufacturing facilities, (iii) the assumption and assignment of leases, (iv) their motion to extend time to assume or reject leases, (v) the establishment of cure costs for leases the Debtors sold to enterprise purchasers, (vi) the defense of landlords' motions to compel or for stay relief including extensive litigation with the landlord for the Debtors' Madeira Beach store over both its motion to compel and objection to assumption. Smith Hulsey also conducted extensive legal research on issues regarding the effect of lease rejection, termination of leases, stay violations relating to lease defaults, post-petition defaults, and the Debtors' ability to exercise lease options and to obtain injunctive relief against recalcitrant landlords. Smith Hulsey also communicated and negotiated with landlords' counsel in resolving disputes

over cure, rejection, post-petition rent payments, abandonment of personal property, hurricane damages and surrendering of leased premises.

   **(o)**   **Litigation (General).** Smith Hulsey represented the Debtors in defense of administrative claims, motions to compel the assumption or rejection of executory contracts, motions to extend the deadline for proofs of claim and other contested matters. Matters in this category to which Smith Hulsey devoted significant time included (i) the settlement of the Stokes and Reddick $1.4 million claim, (ii) the implementation of a strategy for the resolution of four state court actions filed against the Company and its agent due to issuance of settlement checks prepetition which were not honored post-petition and (iii) the resolution of NISM's motion for leave to file a late claim.

   **(p)**   **Reorganization Plan/Plan Sponsors.** Smith Hulsey represented the Debtors in their successful efforts to obtain a third extension of exclusivity, assisted the Debtors in the negotiation and resolution of the Creditors and Equity Committees' objections to the exclusivity extension and consulted the Debtors on the terms of the plan and related restructuring issues. Smith Hulsey also performed extensive analysis and legal research in connection with the treatment of claims filed by Securities Class Action plaintiffs in the Debtors' proposed plan.

   **(q)**   **Reports and Schedules.** Smith Hulsey assisted the Debtors in (i) filing monthly operating reports and amendments to schedules of assets and liabilities, (ii) payment of quarterly fees to the Office of the United States Trustee, and (iii) communications with the United States Trustee.

**(r)     Retention/Fee Matters (Smith Hulsey).**  Smith Hulsey prepared and presented Smith Hulsey's second interim fee application and communicated with the fee auditor regarding fee procedures.

**(s)     Retention/Fee Matters (Others).**  Smith Hulsey (i) assisted and consulted the Debtors' professionals in filing and hearings on their second interim applications, (ii) assisted the Debtors in connection with their retention of Assessment Technologies, Ltd. as Section 505 tax consultants and negotiated with the Creditors Committee and the U.S. Trustee over the terms of such retention, (iii) assisted the Debtors in retaining Stuart Maue as fee auditors and Deloitte Touche for internal audit review, and (iv) assisted the Debtors in objecting to the former official Equity Committee's proposed retention of counsel and financial advisors.

**(t)     Taxes.**  Smith Hulsey consulted with the Debtors regarding their ability to have the Bankruptcy Court review and determine the Debtors' tax liabilities under Section 505 of the Bankruptcy Code and provided extensive legal research on each aspect of the Section 505 process.  The Debtors also worked closely with Assessment Technologies to develop procedures for adjudication of these tax liabilities.

**(u)     U.S. Trustee Matters.**  Smith Hulsey communicated with the Office of the United States Trustee on a continuous basis and responded to information requests by the U.S. Trustee in connection with its ultimate disbandment of the official Equity Committee.

**(v)     Utilities.**  Smith Hulsey represented the Debtors at a hearing to resolve Florida Power's motion for adequate assurance and successfully defended the Debtors in connection with JEA's renewed motion for adequate assurance.

**Compensation and Reimbursement Requested by Smith Hulsey**

5.   By this application, Smith Hulsey requests interim compensation for services rendered of $985,669.00 (less $361,278.40 previously paid by the Debtors for this period) and reimbursement of expenses of $22,215.64 (less $12,306.46 previously paid by the Debtors) incurred in connection with this case from the October 1, 2005 through January 31, 2006.

6.   During the period from October 1, 2005 through January 31, 2006, Smith Hulsey devoted 3,169.6 hours of attorney time and 882.8 hours of legal assistant time to the representation of the Debtors, resulting in an average hourly rate of $243.23. Attached as Schedule A is a daily summary of Smith Hulsey's services rendered for this period in its representation of the Debtors, including time devoted each day by individual attorneys and legal assistants. This daily summary is condensed from individual time slips, completed as services were rendered, which contain a description of those services.

7.   Attached as Schedule B is a summary of the total time devoted by each attorney and legal assistant during the period between October 1, 2005 through January 31, 2006, together with a computation of the value of that time at the ordinary hourly rates of Smith Hulsey that were in effect during the time the services were rendered. The fees requested by this application were determined by the computation of the total time at those ordinary hourly rates.

8.   In connection with the rendering of these services, Smith Hulsey advanced expenses on behalf of the Debtors in the amount of $22,215.64 for long distance toll charges, duplicating expenses, postage, express delivery, travel expense and other items, on which Smith Hulsey seeks approval for the Debtors' reimbursement in the amount of

$22,215.64. These expenses are described more particularly in Schedule A and are summarized in Schedule C.

### Application of Legal Standards to the Services of Smith Hulsey

9.      In considering the criteria of Bankruptcy Code section 330 and <u>In the Matter of First Colonial Corp. of America</u>, 544 F.2d 1291 (5th Cir. 1977), for the determination of a reasonable attorney's fee, the following considerations justify the allowance of a fee to Smith Hulsey in the amount of its hourly rates, in addition to those matters which are otherwise apparent to the Court from its familiarity with this case:

  a.      Apparent from Smith Hulsey's application, the time and labor required by the representation was significant. A material demand was placed upon the available services of Smith Hulsey, which demand precluded employment of Smith Hulsey on other matters.

  b.      Because the volume of services required of Smith Hulsey, the demand placed on its resources was intense and extraordinary, resulting in its lawyers and staff working beyond ordinary business hours on a regular basis for the benefit of the estate. Included in this demand was the need to investigate, research, respond to discovery, prepare and resolve the dozens of matters scheduled for hearing almost every week before the Court.

  c.      The requested fee is Smith Hulsey's customary fee in commercial bankruptcy matters of this kind and there exists no reason in the circumstances of this case to award a lesser fee for the services rendered.

  d.      Additionally, consideration of the difficulty and intensity of the case, the skill of Smith Hulsey in performing its legal services, and the experience, reputation and ability of Smith Hulsey, all support an award of a fee

to Smith Hulsey in an amount equivalent to its hourly rates for the time devoted to the case.

10. Smith Hulsey has made no arrangement regarding the sharing of compensation for services rendered in connection with this Chapter 11 case.

## Coordination With Co-Counsel

11. The Debtors have directed a division of responsibilities between Smith Hulsey and its bankruptcy co-counsel, Skadden, Arps, Slate, Meagher & Flom LLP, to ensure the most efficient rendition of bankruptcy services with a minimum of overlap of effort. Smith Hulsey and Skadden Arps have worked diligently to avoid duplication of efforts and to assure the timely and efficient accomplishment of the Debtors' objectives. Mindful of Smith Hulsey's lower rates, the Debtors have asked Smith Hulsey to assume principal responsibility for court approval of asset sales, lease dispositions, the Section 505 process, claim's administration and communications with the United States Trustee, and significant responsibility for reclamation and stay litigation. Because of the sheer volume of work, Smith Hulsey from time to time has drawn upon the resources of Skadden Arps, obtaining assistance when necessary to timely accomplish the Debtors' objectives. The close coordination between Smith Hulsey and Skadden Arps, coupled with Smith Hulsey's geographical proximity to the Court and more advantageous rates, and the experience of Skadden Arps, have together served the best interests of the Debtors by providing the best of services at a reasonable cost.

12

WHEREFORE, Smith Hulsey respectfully requests the Court to (i) approve all previously authorized compensation of Smith Hulsey and reimbursement of its expenses and (ii) allow as interim compensation in the amount of $985,669.00 for professional services rendered and reimbursement for costs advanced in the amount of $22,215.64.

Dated: March 17, 2006.

                                      SMITH HULSEY & BUSEY


By     *s/ Cynthia C. Jackson*
       Stephen D. Busey
       James H. Post
       Cynthia C. Jackson

Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)

Co-Counsel for the Debtors

13

**Schedule B**

| Name | Years experience | Hours | Rate | Amount |
|---|---|---|---|---|
| **Shareholders:** | | | | |
| Stephen D. Busey | 36 | 185.7 | 395.00/ | 73,351.50 |
| | | 77.3 | 405.00 | 31,306.50 |
| James H. Post | 31 | 476.0 | 355.00/ | 168,980.00 |
| | | 193.5 | 370.00 | 71,595.00 |
| Tim S. Sleeth | 30 | 5.8 | 355.00 | 2,059.00 |
| Cynthia C. Jackson | 20 | 454.9 | 295.00/ | 134,195.50 |
| | | 169.9 | 305.00 | 51,819.50 |
| Charles H. Keller | 9 | 24.2 | 265.00 | 6,413.00 |
| Subtotal: | | 1,587.3 | | 539,720.00 |
| | | | | |
| **Associates:** | | | | |
| Leanne McKnight Prendergast | 10 | 441.4 | 250.00 | 110,350.00 |
| Beau Bowin | 3 | 414.6 | 205.00/ | 84,993.00 |
| | | 163.5 | 220.00 | 35,970.00 |
| David D. Burns | 1 | 9.2 | 190.00 | 1,748.00 |
| Elizabeth M. Schule | 1 | 423.4 | 190.00/ | 80,446.00 |
| | | 130.2 | 195.00 | 25,389.00 |
| Subtotal: | | 1,582.3 | | 338,896.00 |
| | | | | |
| **Paralegals:** | | | | |
| Kimberly S. Ward | 18 | 245.5 | 120.00/ | 29,460.00 |
| | | 111.7 | 130.00 | 14,521.00 |
| Tana L. Copeland | 1 | 525.6 | 120.00 | 63,072.00 |
| Subtotal | | 882.8 | | 107,053.00 |
| | | | | |
| **Total Fees** | | | | $985,669.00 |
| | | | | |
| **Total Hours** | | 4,052.4 | | |
| **Blended Hourly Rate** | | | $243.23 | |

14

## Schedule C

| Expenses | Total Amount |
| --- | ---: |
| Deposition/Court Reporter | $ 130.00 |
| Document Duplicating (37,693 pages @ $0.15) | 5,653.95 |
| Express Mail | 461.85 |
| Facsimile (176 pages @ $1.00) | 176.00 |
| Filing Fee | 255.00 |
| Information and Research (Westlaw) | 8,540.52 |
| Meals | 1,122.52 |
| Messenger Services | 40.78 |
| Outside Document Duplicating Costs | 2,272.93 |
| Postage | 908.42 |
| Telephone | 1,970.97 |
| Transcript Charges | 682.70 |
| Total | $22,215.64 |

Certificate of Service

I certify that a copy of this document was furnished by mail and/or electronically to Elena L. Escamilla, Esq., Assistant U.S. Trustee, 135 West Central Boulevard, Room 620, Orlando, Florida 32801, Linda K. Cooper, Stuart, Maue, Mitchell & James, Ltd., 3840 McKelvey Road, St. Louis, Missouri 63044, Sarah Robinson Borders, King & Spalding LLP, 191 Peachtree Street, Atlanta, Georgia 30303, D.J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Matthew Barr, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Jonathan N. Helfat, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, 29th Floor, New York, New York 10169, and Laurence B. Appel, Winn-Dixie Stores, Inc., 5050 Edgewood Court, Jacksonville, Florida 32254-3699, this 17th day of March, 2006.



                                        s/ *Cynthia C. Jackson*
                                                 Attorney

00525067.4