## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:                                          Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., et al.,                Chapter 11

       Debtors.                                 Jointly Administered

_____/

**THIRD APPLICATION OF MILBANK, TWEED, HADLEY & McCLOY LLP, COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM OCTOBER 1, 2005 THROUGH AND INCLUDING JANUARY 31, 2006**

Name of Applicant:                   Milbank, Tweed, Hadley & McCloy LLP

Authorized to Provide
Professional Services to:            Official Committee of Unsecured
                                     Creditors

Date of Retention                    April 12, 2005 (effective as of
(Final Approval):                     March 1, 2005)

Period for which compensation
and reimbursement is sought:  October 1, 2005 – January 31, 2006

Amount of Compensation
requested:                           $832,307.50

Amount of Expense
Reimbursement requested:             $75,815.03

This is a(n): ___X___ interm   _____ final application.

This is the third interim fee application filed by Milbank,
Tweed, Hadley & M[c]Cloy LLP in these cases.

Prior Applications:

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| March 1, 2005 – May 31, 2005 | 1,194,617.50 | 108,654.51 | 1,194,617.50 | 108,654.51 |
| June 1, 2005 – September 30, 2005 | 1,283,088.00 | 101,383.95 | 1,283,088.00 | 101,383.95 |

THIRD INTERIM FEE APPLICATION OF MILBANK, TWEED,
HADLEY & McCLOY LLP: AS COUNSEL TO OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF WINN DIXIE STORES, INC., ET AL.
(OCTOBER 1, 2005 – JANUARY 31, 2006)

| Name | Position; Experience | Hourly Rate | Total Hours | Total Compensation |
|------|---------------------|-------------|-------------|--------------------|
| Luc Despins | Financial Restructuring Partner for 12 years; admitted in 1986. | $805 | 31.00 | $24,955.00 |
| Dennis Dunne | Financial Restructuring Partner for 9 years; admitted in 1991. | $850 $790 | 71.80 129.40 | $61,030.00 $102,226.00 |
| Matthew Barr | Financial Restructuring Partner for 2 years; admitted in 1997. | $650 $550 | 63.20 116.00 | $41,080.00 $63,800.00 |
| Robert Winter | Financial Restructuring Associate for 10 years; admitted in 1997. | $555 $525 | 100.90 135.30 | $55,999.50 $71,032.50 |
| Sabina Clorfeine | Litigation Associate for 6 years; admitted in 1997. | $525 | 3.50 | $1,837.50 |
| Lena Mandel | Financial Restructuring Senior Attorney for 16 years; admitted in 1990. | $535 $505 | 15.00 14.40 | $8,025.00 $7,272.00 |
| James MacInnis | Financial Restructuring Associate for 6 years; admitted in 2001. | $510 $475 | 4.70 40.10 | $2,397.00 $19,047.50 |

| Jeffrey Milton | Financial Restructuring Associate for 5 years; admitted in 1999. | $510 $475 | 7.90 36.40 | $4,029.00 $17,290.00 |
|---|---|---|---|---|
| Ryan Katz | Global Corporate Associate for 5 years; admitted in 2001. | $495 $440 | 3.10 6.70 | $1,534.50 $2,948.00 |
| Michael Comerford | Financial Restructuring Associate for 4 years; admitted in 2003. | $470 $400 | 157.30 252.50 | $73,931.00 $101,000.00 |
| Samina Uddin | Financial Restructuring Associate for 4 years; admitted in 2003. | $400 | 38.60 | $15,440.00 |
| Irene Bogdashevsky | Financial Restructuring Associate for 3 years; admitted in 2004. | $375 | 21.10 | $7,912.50 |
| Brian Kinney | Financial Restructuring Associate for 3 years; admitted in 2004. | $435 $375 | 43.80 43.40 | $19,053.00 $16,275.00 |
| Soham Naik | Financial Restructuring Associate for 3 years; admitted in 2004. | $435 $375 | 44.20 164.80 | $19,227.00 $61,800.00 |

| Rena Ceron | Case Manager | $180 | 14.70 | $2,646.00 |
|---|---|---|---|---|
| | | $170 | 8.40 | $1,428.00 |
| Holly Erick | Legal Assistant | $160 | 11.20 | $1,792.00 |
| | | $150 | 18.80 | $2,820.00 |
| Louisa Crespi | Legal Assistant | $145 | 51.40 | $7,453.00 |
| | | $135 | 45.40 | $6,129.00 |
| Jacqueline Brewster | Managing Attorney Clerk | $145 | 16.50 | $2,392.50 |
| | | $135 | 63.00 | $8,505.00 |
| **Total** | | **$469.04**[1] | **1,774.50 hours** | **$832,307.50** |

---

[1] The blended rate <u>excluding</u> paraprofessionals is $517.21 per hour.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                    Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., <u>et al.</u>,    Chapter 11

     Debtors.                           Jointly Administered

_____/

**THIRD APPLICATION OF MILBANK, TWEED, HADLEY & M<u>c</u>CLOY LLP,
COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR
INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM
<u>OCTOBER 1, 2005 THROUGH AND INCLUDING JANUARY 31, 2006</u>**

     Milbank, Tweed, Hadley & M<u>c</u>Cloy LLP ("<u>Milbank</u>"),

counsel to the official committee of unsecured creditors (the

"<u>Committee</u>") of Winn-Dixie Stores, Inc. and its affiliated

debtors and debtors-in-possession appointed in the above-

captioned cases (collectively, "<u>Winn-Dixie</u>" or the "<u>Debtors</u>"),

submits its application (the "<u>Application</u>"), pursuant to

sections 330 and 331 of title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"), rule

2016 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under Section 330 of the Bankruptcy Code

effective January 30, 1996 (the "<u>U.S. Trustee Guidelines</u>") and

the Final Order Approving Interim Compensation Procedures for

Professionals, dated March 15, 2005 (Docket No. 434) (the "Interim Compensation Order"), for the allowance of interim compensation for professional services rendered from October 1, 2005 through and including January 31, 2006 (the "Third Interim Compensation Period"), and for reimbursement of expenses incurred in connection with such services, and in support thereof respectfully represents as follows:

## I. INTRODUCTION

### A. Background

1.    Bankruptcy Filing.  On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

2.    Statutory Committees.  On March 1, 2005, the United States Trustee duly appointed the Committee (Docket No. 176).  On August 17, 2005, the United States Trustee appointed the Equity Security Holders' Committee (the "Equity Committee") (Docket No. 3027), which was disbanded on January 11, 2006 (Docket No. 5098).

3.    Venue Transfer.  By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.  The Debtors continue

2

to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

4.    Fee Examiner.  On August 10, 2005, this Court ordered the appointment of a fee examiner, pursuant to the Order Granting Motion To Appoint Fee Examiner (Docket No. 2933).

5.    Jurisdiction.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.

B.    **Retention of Milbank and Billing History**

6.    Authorization for Milbank's Retention.  On April 12, 2005, pursuant to the Order Under 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002, Authorizing Retention and Employment of Milbank, Tweed, Hadley & McCloy LLP as Counsel to Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al. (Docket No. 702) (the "Retention Order"), the Committee's

retention of Milbank in these cases was authorized effective as of March 1, 2005.[1]

      7.   <u>First Interim Fee Application</u>.  On July 15, 2005, Milbank submitted the First Application of Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from March 1, 2005 Through and Including May 31, 2005 (the "<u>First Interim Compensation Period</u>," and such interim fee application being the "<u>First Interim Fee Application</u>") (Docket No. 2242).

      8.   In accordance with the Interim Compensation Order, Milbank submitted monthly fee statements to, among others, the Debtors seeking interim compensation and reimbursement of expenses.  During the First Interim Compensation Period, Milbank submitted the following fee statements:

---

[1]    On March 30, 2005, the New York Bankruptcy Court entered an order (Docket No. 607) approving Milbank's retention on an interim basis subject to final approval, which occurred pursuant to the Retention Order.

(a)  On May 4, 2005, pursuant to the Interim Compensation
     Order, Milbank served its first fee statement for the
     period from March 1, 2005 through and including March
     31, 2005 (the "First Fee Statement").  The First Fee
     Statement sought an allowance of $447,752 as
     compensation for services rendered and reimbursement
     of $35,345.75 in expenses.

(b)  On May 25, 2005, pursuant to the Interim Compensation
     Order, Milbank served its second fee statement for the
     period from April 1, 2005 through and including April
     30, 2005 (the "Second Fee Statement").  The Second Fee
     Statement sought an allowance of $362,756 as
     compensation for services rendered and reimbursement
     of $37,266.13 in expenses.

(c)  On June 30, 2005, pursuant to the Interim Compensation
     Order, Milbank served its third fee statement for the
     period from May 1, 2005 through and including May 31,
     2005 (the "Third Fee Statement" and, together with the
     First Fee Statement and Second Fee Statement,
     collectively the "First Interim Fee Statements").  The
     Third Fee Statement sought an allowance of $384,109.50
     as compensation for services rendered and
     reimbursement of $36,042.63 in expenses.

9.    On August 5, 2005, this Court granted the First
Interim Fee Application and allowed Milbank's request for
$1,194,617.50 in fees and $108,654.51 in expenses, for a total
award of $1,303,272.01 (Docket No. 2811).

10.    Second Interim Fee Application.  On November 11,
2005, Milbank submitted the Second Application of Milbank,
Tweed, Hadley & M^cCloy LLP, Counsel to Official Committee of
Unsecured Creditors, for Interim Allowance of Compensation for
Services Rendered and for Reimbursement of Expenses Incurred
During Period from June 1, 2005 Through and Including September
30, 2005 (the "Second Interim Compensation Period," and such

5

interim fee application being the "Second Interim Fee

Application") (Docket No. 4151).

     11.  During the Second Interim Compensation Period,

Milbank submitted the following fee statements:

    (a)  On August 10, 2005, pursuant to the Interim
Compensation Order, Milbank served its fourth fee
statement for the period from June 1, 2005 through and
including June 30, 2005 (the "Fourth Fee Statement").
The Fourth Fee Statement sought an allowance of
$441,629 as compensation for services rendered and
reimbursement of $36,978.62 in expenses.

    (b)  On October 25, 2005, pursuant to the Interim
Compensation Order, Milbank served its fifth fee
statement for the period from July 1, 2005 through and
including July 31, 2005 (the "Fifth Fee Statement").
The Fifth Fee Statement sought an allowance of
$340,372 as compensation for services rendered and
reimbursement of $27,457.91 in expenses.

    (c)  On November 3, 2005, pursuant to the Interim
Compensation Order, Milbank served its sixth fee
statement for the period from August 1, 2005 through
and including August 31, 2005 (the "Sixth Fee
Statement").  The Sixth Fee Statement sought an
allowance of $300,627.50 as compensation for services
rendered and reimbursement of $19,618.06 in expenses.

    (d)  On November 4, 2005, pursuant to the Interim
Compensation Order, Milbank served its seventh fee
statement for the period from September 1, 2005
through and including September 30, 2005 (the "Seventh
Fee Statement" and, together with the Fourth Fee
Statement, Fifth Fee Statement and Sixth Fee
Statement, collectively the "Second Interim Fee
Statements").  The Seventh Fee Statement sought an
allowance of $200,459.50 as compensation for services
rendered and reimbursement of $17,329.36 in expenses.

     12.  On December 1, 2005, this Court granted the

Second Interim Fee Application and allowed Milbank's request for

$1,283,088 in fees and $101,383.95 in expenses, for a total

award of $1,384,447.95 (Docket No. 4421).

13.  <u>Third Interim Fee Application</u>.  This Application

is Milbank's third interim application for approval and

allowance of compensation and reimbursement of expenses.

Milbank makes this interim application pursuant to sections 330

and 331 of the Bankruptcy Code.  No prior application has been

made to this or any other court for the relief requested herein.

14.  During the Third Interim Compensation Period,

Milbank submitted the following fee statements:

(a)  On December 6, 2005, pursuant to the Interim
Compensation Order, Milbank served its eighth fee
statement for the period from October 1, 2005 through
and including October 31, 2005 (the "<u>Eighth Fee
Statement</u>").  The Eighth Fee Statement sought an
allowance of $192,014.50 as compensation for services
rendered and reimbursement of $19,653.68 in expenses.

(b)  On January 17, 2006, pursuant to the Interim
Compensation Order, Milbank served its ninth fee
statement for the period from November 1, 2005 through
and including November 30, 2005 (the "<u>Ninth Fee
Statement</u>").  The Ninth Fee Statement sought an
allowance of $172,860.50 as compensation for services
rendered and reimbursement of $13,662.09 in expenses.

(c)  On February 7, 2006, pursuant to the Interim
Compensation Order, Milbank served its tenth fee
statement for the period from December 1, 2005 through
and including December 31, 2005 (the "<u>Tenth Fee
Statement</u>").  The Tenth Fee Statement sought an
allowance of $165,005.50 as compensation for services
rendered and reimbursement of $17,985.81 in expenses.

(d)  On March 14, 2006, pursuant to the Interim
Compensation Order, Milbank served its eleventh fee
statement for the period from January 1, 2006 through

and including January 31, 2006 (the "Eleventh Fee Statement" and, together with the Eighth Fee Statement, Ninth Fee Statement and Tenth Fee Statement, collectively the "Third Interim Fee Statements").  The Eleventh Fee Statement sought an allowance of $302,427 as compensation for services rendered and reimbursement of $24,513.45 in expenses.

15.  As of the filing of this Application, Milbank has received one payment with respect to the Third Interim Fee Statements totaling $173,265.28.  Milbank has applied this payment to 80% of the fees and 100% of the expenses requested pursuant to the Eighth Fee Statement.

16.  Milbank has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

17.  No promises have been received by Milbank or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## II.   CASE STATUS

18.  The Debtors have not filed a disclosure statement or a plan of reorganization in these cases.

## III.  APPLICATION

19.  By this Application, Milbank is seeking full allowance of (a) compensation for professional services rendered by Milbank, as counsel for the Committee, during the Third

Interim Compensation Period and (b) reimbursement of expenses incurred by Milbank in connection with such services during the Third Interim Compensation Period.

20.  In this Application, Milbank seeks approval of the amount of $832,307.50 for legal services rendered on behalf of the Committee during the Third Interim Compensation Period and the amount of $75,815.03 for reimbursement of expenses incurred in connection with the rendition of such services, for a total award of $908,122.53.

21.  Pursuant to the Interim Compensation Order, Milbank, absent objection within 20 days of submitting a fee statement, is entitled to eighty percent (80%) of the fees and one hundred percent (100%) of the expenses sought in each of the Third Interim Fee Statements, prior to Court approval of such fees and expenses in connection with this Application.  However, even though there has been no objection to the Ninth Fee Statement and Tenth Fee Statement prior to the applicable deadline[2], Milbank has only received one payment with respect to the Third Interim Fee Statements totaling $173,265.28.  Milbank has applied this payment to 80% of the fees and 100% of the expenses requested pursuant to the Eighth Fee Statement.

---

[2]      The deadline to object to the Eleventh Fee Statement is April 3, 2006.

Therefore, Milbank is seeking a total payment of $734,857.25 pursuant to this Application, representing the unpaid balance of 100% of fees and 100% of expenses for the Third Interim Compensation Period.[3]

22.   The fees sought by this Application reflect an aggregate of 1,774.50 hours of attorney and paraprofessional time spent and recorded in performing services for the Committee during the Third Interim Compensation Period, at a blended average hourly rate of $469.04 for both professionals and paraprofessionals.

23.   Milbank rendered to the Committee all services for which compensation is sought solely in connection with these cases in furtherance of the duties and functions of the Committee.

24.   Milbank maintains computerized records of the time expended in rendering the professional services required by the Committee.   These records are maintained in the ordinary course of Milbank's business.   For the convenience of the Court and parties in interest, a billing summary for the Third Interim Compensation Period is attached as part of the cover sheet,

---

[3]      To the extent Milbank receives any payment for the Ninth Fee Statement, Tenth Fee Statement, and/or the Eleventh Fee Statement prior to the hearing on this Application, Milbank will advise the Court and amend its request accordingly.

setting forth the name of each attorney and paraprofessional for whose work on these cases compensation is sought, each attorney's year of bar admission, the aggregate amount of time expended by each attorney or paraprofessional, the hourly billing rate for each attorney or paraprofessional at Milbank's current billing rates and the individual amounts requested as part of the total amount of compensation requested.  In addition, set forth in the billing summary is additional information indicating whether each attorney is a partner or associate, the number of years each attorney has held such position, and each attorney's area of concentration.  The compensation requested by Milbank is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

25.   Attached hereto as Exhibit A are time entry records broken down in tenths of an hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description of services performed by each attorney and paraprofessional on behalf of the Committee for the Third Interim Compensation Period.

26.   Milbank also maintains computerized records of all expenses incurred in connection with the performance of professional services.  A summary of the amounts and categories of expenses for which reimbursement is sought for the Third

11

Interim Compensation Period, as well as a breakdown of expenses

by project category and detailed descriptions of these expenses,

are attached hereto as <u>Exhibit B</u>.

**IV.   <u>SUMMARY OF PROFESSIONAL SERVICES RENDERED</u>**

27.   To provide an orderly summary of the services

rendered on behalf of the Committee by Milbank, and in

accordance with the U.S. Trustee Guidelines, Milbank has

established the following separate project billing categories in

connection with these cases:

```
(a) Adequate Protection Issues and Litigation
(b) Asset Sales
(c) Automatic Stay Enforcement & Litigation
(d) Business Plan Review and Analysis
(e) Change of Control Transactions
(f) Claims Analysis and Estimation
(g) Committee Administration
(h) Committee Meetings
(i) Court Hearings
(j) Customer Contracts & Programs
(k) Debtor-in-Possession Meetings and Communications
(l) DIP and Exit Financing
(m) Disclosure Statement
(n) Employee Issues
(o) Environmental Issues
(p) Equipment/Personal Property Leases
(q) Exclusivity Issues
(r) Executory Contracts
(s) Fee Applications – Other
(t) File, Docket and Calendar Maintenance
(u) General Communications with Creditors
(v) Insurance Matters
(w) PACA
(x) Pension Issues
(y) Preparation of Milbank Fee Applications
(z) Real Property Leases
(aa) Reclamation Issues
(bb) Regulatory Issues
(cc) Reorganization Plan
```

(dd) Reporting Requirements
(ee) Retention of Professionals
(ff) Rule 2004 Examinations
(gg) Secured Transactions
(hh) Substantive Consolidation
(ii) Tax Issues
(jj) Travel Time
(kk) Union Issues
(ll) Utilities Advice
(mm) Vendor Issues
(nn) Voidable Transfers and other potential claims
(oo) Venue Issues
(pp) Equity Committee
(qq) Examiner

28.   The following summary is intended to highlight a number of the services rendered by Milbank in the separate project billing categories where Milbank has expended a considerable number of hours on behalf of the Committee, and it is not meant to be a detailed description of of all of the work performed.  Detailed descriptions of the day-to-day services provided by Milbank during the Third Interim Compensation Period and the time expended performing such services in each project billing category are fully set forth in Exhibit A hereto.  Such detailed descriptions show that Milbank was heavily involved in the performance of services for the Committee on a daily basis, including night and weekend work, often under extreme time constraints to meet the needs of the Committee in these cases.

A.   **Asset Sales**

29.   During the Third Interim Compensation Period, on behalf of the Committee, Milbank attorneys worked closely with

the Committee's financial advisors and the Debtors' legal and financial advisors to negotiate enhanced asset sale values and transaction terms for the Debtors' estates in connection with such sales.  During the Third Interim Compensation Period, Milbank attorneys (i) reviewed and analyzed the terms of the sale of the Debtors' Miami dairy facility, (ii) began the review and analysis of a proposed sale of the Debtors' interests in certain stores operated in the Bahamas, (iii) engaged in continual interaction with the Debtors regarding discrete asset sale issues that arose throughout the Third Interim Compensation Period through conference calls and other correspondence and (iv) informed the Committee of pending asset sales, analyzed the proposed transactions and recommended courses of action for the Committee.

**B.**   **Automatic Stay Enforcement & Litigation**

30.   During the Third Interim Compensation Period, Milbank attorneys reviewed and analyzed numerous motions to obtain relief from the automatic stay.  Milbank attorneys worked closely with the Debtors' legal counsel regarding the strategy with respect to dealing with the relief from stay motions.  This included evaluating whether such motions should be opposed because a movant had failed to comply with the Debtors' claims resolution procedures, which address prepetition litigation claims.

14

### C.   **Business Plan Review and Analysis**

31.   During the Third Interim Compensation Period,
Milbank attorneys worked closely with the Debtors' counsel and
financial advisors and the Committees' financial advisors to
review and analyze the Debtors' business plan.  Milbank
attorneys attended numerous business plan presentations with the
Debtors and their professionals, reviewed materials relating to
the Debtors' business plan, and identified and outlined
potential issues in consultation with the Committee.

### D.   **Claims Analysis & Estimation**

32.   During the Third Interim Compensation Period,
Milbank attorneys reviewed and analyzed the Debtors proposed
procedures for the resolution of thousands of prepetition
litigation claims.  In consultation with the Committee, Milbank
attorneys negotiated modifications to the proposed procedures
and prepared and filed a limited objection to part of the
Debtors' proposed procedures.  Further negotiations between
Milbank attorneys and the Debtors' counsel led to a consensual
resolution of the limited objection.  In addition, Milbank
attorneys and paraprofessionals reviewed each of the proposed
litigation claims settlements filed during the Third Interim
Compensation Period and provided Committee members with regular
updates regarding the status of such settlements and compliance
with the claims resolution procedures.

33.   Furthermore, during the Third Interim
Compensation Period, Milbank attorneys reviewed various requests
to file late proofs of claim or motions to amend proofs of claim
by certain claimants in these cases.  Milbank attorneys worked
closely with Debtors' counsel to formulate appropriate responses
to such requests and filed various joinders to the Debtors'
responsive pleadings.

**E.   <u>Committee Administration</u>**

34.   Milbank's attention to the Committee's
organizational needs enabled the Committee to promptly complete
the administrative matters that were necessary to the
Committee's effective participation in these cases.  Throughout
the Third Interim Compensation Period, Milbank attorneys
counseled and advised the Committee regarding its statutory and
fiduciary duties to the unsecured creditor body and the
fiduciary obligations of the other parties in interest in
general.

35.   Milbank prepared memoranda, and provided advice
orally when time constraints so required, on the numerous
pending issues arising in these cases.  Milbank analyzed issues
and motions filed in the Debtors' cases and recommended action.

36.   Due to Milbank attorneys' experience in
counseling various parties in interest in restructurings and
bankruptcy cases, Milbank believes it provided and will continue

to provide to the Committee a unique perspective and
sophisticated understanding of all issues relating to the
administration of the Debtors' cases.

**F.**   **Committee Meetings**

37.   Numerous issues arose during the Third Interim
Compensation Period requiring meetings of the Committee.
Committee meetings generally occur weekly via teleconference.
Prior to such meetings Milbank organized the Committee meetings
by drafting agendas that included topics from all of the
Committee's professionals and by distributing certain other
materials for Committee members to review.  Milbank discussed
with the Committee all significant matters arising in these
cases during the Third Interim Compensation Period and assisted
the Committee in formulating positions on issues as they arose.

38.   Through Committee meetings and conference calls,
and numerous other communications with members of the Committee,
Milbank has assisted the Committee in (i) fulfilling its
obligations to unsecured creditors and (ii) making informed
decisions regarding the numerous issues that have arisen in
these cases.

**G.**   **Court Hearings**

39.   Throughout the Third Interim Compensation Period,
Milbank attorneys, on behalf of the Committee, prepared for and
attended numerous court hearings.  To prepare for these

17

hearings, Milbank attorneys expended considerable time reviewing and analyzing pleadings filed by the Debtors and third parties and conducted independent legal and factual research, as necessary.  In addition, Milbank attorneys drafted and argued numerous pleadings on behalf of the Committee.  Milbank attorneys were often called upon to present oral argument in court not only with respect to the Committee's own pleadings, but also with respect to various forms of relief sought by the Debtors or other interested parties.

## H.    Employee Issues

40.    During the Third Interim Compensation Period, Milbank attorneys reviewed and analyzed compensation issues in connection with the Debtors' Chief Executive Officer ("CEO Compensation").  In consultation with the Committee and the Committees' financial advisors, Milbank submitted numerous comments to the Debtors regarding the proposed CEO Compensation. Additionally, Milbank attorneys and other Committee professionals engaged in extensive negotiations with counsel to the Debtors' and the Debtors' other professionals over the terms and conditions of the CEO Compensation.

## I.    Exclusivity Issues

41.    During the Third Interim Compensation Period, Milbank attorneys reviewed and analyzed the terms of the Debtors' third proposed extension of its exclusive period in

which to file a plan of reorganization and solicit acceptances of such a plan.  Milbank attorneys participated in conference calls with the Debtors in an effort to negotiate a consensual extension of such periods.  Furthermore, upon request of the Committee, Milbank attorneys drafted, filed and prosecuted an objection to certain elements of the Debtors' motion to extend exclusivity.

## J.   File, Docket & Calendar Maintenance

42.   During the Third Interim Compensation Period, Milbank's paraprofessionals maintained a filing and record-keeping system as well as monitored the docket in these cases. To ensure that the Committee was apprised of filings as they occurred, Milbank paraprofessionals routinely reviewed the docket and obtained any necessary papers or exhibits on an ongoing basis.

43.   In addition, Milbank paraprofessionals maintained an internal calendar tracking system to alert the Committee of pending motions and deadlines in the Debtors' cases.  As needed, Milbank also circulated pleadings and other documents to, and discussed upcoming hearings and motions with, the Committee.

## K.   Real Property Leases

44.   During the Third Interim Compensation Period, Milbank attorneys reviewed, analyzed and negotiated the terms and conditions under which the Debtors sought to reject numerous

real property leases.  Milbank attorneys engaged in extensive
negotiations with counsel to the Debtors' over the terms and
conditions of proposed lease rejections and worked with the
Committee's financial advisors to prepare memoranda for the
Committee regarding each set of lease rejections.

45.  In addition, Milbank attorneys reviewed and
analyzed various motions for payment of administrative expenses
by certain of the Debtors' real property lessors.  Milbank
attorneys worked closely with the Debtors' legal counsel
regarding the strategy with respect to dealing with
administrative expense motions.

L.   **Reorganization Plan**

46.  During the Third Interim Compensation Period,
Milbank attorneys reviewed and analyzed the Debtors' proposed
term sheet for a plan of reorganization.  In conjunction with
the foregoing, Milbank attorneys worked with the Committee's
other advisors to begin a comprehensive analysis of numerous
issues relating to the formulation of a consensual plan of
reorganization including, among other things, potential
distributions of estate assets and, more specifically, the
treatment of various claims of the Committee's constituents.
Milbank attorneys also attended numerous conferences and
meetings with the Committee to discuss the plan term sheet,

issues relating to same and counter-proposals that the Committee would submit to the Debtors.

**M.   Substantive Consolidation**

47.   During the Third Interim Compensation Period, Milbank attorneys regularly corresponded with and conferred in-person with the Debtors' legal and financial advisors and the Committee's financial advisors regarding substantive consolidation issues.  Milbank attorneys conducted extensive research as to the legal and factual bases, if any, for the potential substantive consolidation of the Debtors' estates. Milbank attorneys reviewed thousands of pages of due diligence documents relating to the potential consolidation of the Debtors' estates.  As part of Milbank's factual investigation, Milbank attorneys interviewed numerous employees of the Debtors. Milbank attorneys reviewed numbers internal financial, organizational and operational documents produced in response to specific document requests made as part of the substantive consolidation investigation.  Milbank also reviewed large quantities of publicly available information on the Debtors. Milbank attorneys drafted detailed memoranda to the Committee regarding the status of Milbank's analysis in connection with determining whether the Debtors' estates should be treated separately for purposes of distributions to unsecured creditors or whether a form of substantive consolidation is warranted.

N.   **Equity Committee**

48.   During the Third Interim Compensation Period,
Milbank attorneys, at the direction of the Committee, filed
objections to the retention of professionals by the Equity
Committee and appeared at a hearing regarding same.  Milbank
attorneys, in connection with the Committee's motion to disband
the Equity Committee (the "Disbandment Motion"), also filed a
response to the dispositive motions filed by the Debtors, the
United States Trustee, and the Equity Committee opposing the
Disbandment Motion.  In connection with the Court's denial of
summary judgment on the Disbandment Motion, Milbank attorneys,
on behalf of the Committee, filed a motion seeking clarification
of the Court's ruling and initiated further discussions with
other parties in interest regarding the scope and timetable for
discovery with respect to the Disbandment Motion.

49.   Subsequently, at the request of the United States
Trustee, Milbank prepared and filed a motion seeking to abate
the Disbandment Motion, while the United States Trustee
conducted a review of whether the Equity Committee should
continue to exist.  Following the United States Trustee's
decision to disband the Equity Committee, Milbank reviewed the
former Equity Committee's motion for reinstatement and, at the
direction of the Committee, filed an objection thereto.

**O.**    **Examiner**

50.    During the Third Interim Compensation Period, Milbank attorneys reviewed and analyzed issues with the Committee regarding a motion filed by the disbanded Equity Committee to appoint an Examiner in the Debtors' cases.  In addition, Milbank attorneys, upon the Committee's request, drafted and filed a response to the Equity Committee's examiner motion and appeared at the hearing to oppose the motion.  In connection with the Court's determination not to grant the disbanded Equity Committee's examiner motion, the Committee, after discussions with the United States Trustee and the Debtors' counsel, initiated an investigation into various prepetition matters -- many of which were raised in the Examiner motion -- in connection with the plan process, which investigation is still ongoing.

**V.**    **FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

51.    The factors to be considered in awarding attorneys fees as enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been

adopted by most courts.[4]  Milbank respectfully submits that the
consideration of these factors should result in this Court's
allowance of the full compensation sought.

    (A)   The Time and Labor Required.  The professional
           services rendered by Milbank on behalf of the
           Committee have required the continuous expenditure of
           substantial time and effort, under time pressures
           which sometimes required the performance of services
           late into the evening and, on a number of occasions,
           over weekends and holidays.  The services rendered
           required a high degree of professional competence and
           expertise in order to be administered with skill and
           dispatch.

    (B)   The Novelty and Difficulty of Questions.  Novel and
           complex issues have arisen in the course of these
           chapter 11 cases, and it can be anticipated that other
           such issues will be encountered.  In these cases, as
           in many others in which the firm is involved,
           Milbank's effective advocacy and creative approach to
           problem solving have helped clarify and resolve
           difficult issues and will continue to prove
           beneficial.

    (C)   The Skill Requisite to Perform the Legal Services
           Properly.  Milbank believes that its recognized
           expertise in the area of financial restructuring, its

---

[4]    Grant v. Florida Power Corp. (In re American Fabricators, Inc.), 197
B.R. 987, 993-94 (Bankr. M.D. Fla. 1996) (adopting the First Colonial
factors and noting that Fifth Circuit decisions before 1981 are binding
precedent in the Eleventh Circuit).  The factors embraced by the Fifth
Circuit in First Colonial were adopted by the Fifth Circuit's decision
in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.
1974), except that First Colonial also included the "spirit of economy"
as a factor which was expressly rejected by Congress in enacting
section 330 of the Bankruptcy Code.  Strook & Stroock & Lavan v.
Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127
F.3d 1398, 1403 (11th Cir. 1997).  The remaining First Colonial factors
continue to apply to determine the reasonableness of fees awarded under
the Bankruptcy Code.  3 Collier on Bankruptcy ¶ 330.04[3][c] (Lawrence
P. King, et al., eds., 15th ed. 1997).  In addition, a majority of the
First Colonial factors are now codified in section 330(a)(3).  Id.

ability to draw from highly experienced professionals
in other areas of its practice such as structured
finance, mergers and acquisitions, litigation,
environmental and regulatory law and its practical
approach to the resolution of issues will help
maximize distributions to the Debtors' unsecured
creditors.

(D)   <u>The Preclusion of Other Employment by Applicant Due to
      Acceptance of the Case</u>.  Due to the size of Milbank's
      financial restructuring department and the firm as a
      whole, Milbank's representation of the Committee has
      not precluded the acceptance of new clients.  However,
      the number of matters needing attention on a
      continuous basis has required several of Milbank's
      attorneys to commit significant portions of their time
      to these cases.

(E)   <u>The Customary Fee</u>.  The compensation sought herein is
      based upon Milbank's normal hourly rates for services
      of this kind.  Milbank respectfully submits that the
      compensation sought herein is not unusual given the
      magnitude and complexity of these cases and the time
      dedicated to the representation of the Committee.
      Such compensation is commensurate with fees Milbank
      has been awarded in other cases, as well as with fees
      charged by other attorneys of comparable experience.

(F)   <u>Whether the Fee is Fixed or Contingent</u>.  Milbank
      charges customary hourly rates for the time expended
      by its attorneys and paraprofessionals in representing
      the Committee, and Milbank's fee is not outcome
      dependent.

(G)   <u>Time Limitations Imposed by Client or Other
      Circumstances</u>.  As stated above, Milbank has been
      required to attend to various issues as they have
      arisen in these cases.  Often, Milbank has had to
      perform these services under significant time
      constraints requiring attorneys and paraprofessionals
      assigned to these cases to work evenings and on
      weekends.

(H)   <u>The Amount Involved and Results Obtained</u>.  The
      Committee represents the interests of unsecured
      creditors holding unsecured claims estimated at well
      over $500 million dollars.  Through Milbank's efforts,
      the Committee has been an active participant in these

chapter 11 cases.  The Committee's participation, with Milbank's counsel and guidance, has greatly contributed to the efficient administration and prospects for reorganization of these cases.

(I)   The Experience, Reputation and Ability of the Attorneys.  Milbank has a sophisticated and nationally recognized corporate reorganization and financial restructuring practice, and Milbank attorneys involved in this representation have played a major role in numerous complex restructurings including, for example, the chapter 11 cases of Enron Corp., Refco Inc., RCN Corp., Intermet Corp., Fruit of the Loom Inc., Adelphia Communications Corp., US Airways Group, Inc., Global Crossing Ltd., Fleming Companies, Inc., Dairy Mart Convenience Stores, Inc., Lernout & Hauspie Speech Products N.V., Teligent, Inc., World Access, Inc., ORBCOMM Global, L.P., ICO Global Communications Inc., Safety-Kleen Corp., HomePlace Stores, Inc., Hvide Marine, Inc., Sun TV and Appliances, Inc., Seven-Up/RC Bottling Company of Southern California, Inc. and Ames Department Stores, Inc.  Milbank's experience enables it to perform the services described herein competently and expeditiously.

(J)   The "Undesirability" of the Case.  These cases are not undesirable but, as already indicated, have required a significant commitment of time from many of Milbank's attorneys.

(K)   Nature and Length of Professional Relationship. Milbank was selected as the Committee's counsel shortly after the Committee's formation, on March 1, 2005, and was retained effective as of that date pursuant to an order of the Court dated April 12, 2005.  Milbank has been rendering services continuously to the Committee since the Committee was formed, and Milbank has rendered such services in a necessary and appropriate manner.

## VI.  ALLOWANCE OF COMPENSATION

52.  The professional services rendered by Milbank have required a high degree of professional competence and expertise to address, with skill and dispatch, the numerous

26

issues requiring evaluation and action by the Committee.
Milbank respectfully submits that the services rendered to the
Committee were performed efficiently, effectively and
economically, and that the results obtained to date have
benefited not only the members of the Committee, but also the
unsecured creditors as a whole and the Debtors' estates.

        53.   The allowance of interim compensation for
services rendered and reimbursement of expenses in bankruptcy
cases is expressly provided for in section 331 of the Bankruptcy
Code:

> Any professional person . . . may apply to the
> court not more than once every 120 days after an
> order for relief in a case under this title, or
> more often if the court permits, for such
> compensation for services rendered . . . as is
> provided under section 330 of this title.

11 U.S.C. § 331.

        54.   With respect to the level of compensation,
section 330(a)(1)(A) of the Bankruptcy Code provides, in
pertinent part, that the Court may award to a professional
person, "reasonable compensation for actual, necessary services
rendered."  Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable
> compensation to be awarded, the court shall
> consider the nature, the extent, and the value of
> such services, taking into account all relevant
> factors, including –
>
> (A)  the time spent on such services;
> (B)  the rates charged for such services;

    (C)   whether the services were necessary to
the administration of, or beneficial at
the time at which the service was
rendered toward the completion of, a
case under this title;

    (D)   whether the services were performed
within a reasonable amount of time
commensurate with the complexity,
importance, and nature of the problem,
issue, or task addressed; and

    (E)   whether the compensation is reasonable
based on the customary compensation
charged by comparably skilled
practitioners in cases other than cases
under this title.

11 U.S.C. § 330(a)(3)(A).

55.   The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases.  In re Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("Congress determined, it appears, that on average the gain to the estate of employing able, experienced, expert counsel would outweigh the expense to the estate of doing so, and that unless the estate paid competitive [market] sums it could not retain such counsel on a regular basis.") (citations and quotations omitted).

56.   The total time spent by Milbank attorneys and paraprofessionals during the Third Interim Compensation Period was 1,774.50 hours and has a fair market value of $832,307.50.  As shown by this Application and supporting exhibits, Milbank's services were rendered economically and

28

without unnecessary duplication of efforts.  In addition, the work involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.

## VII. **EXPENSES**

57.  Milbank has incurred a total of $75,815.03 in expenses in connection with representing the Committee during the Third Interim Compensation Period.  Milbank records all expenses incurred in connection with the performance of professional services.

58.  In connection with the reimbursement of expenses, Milbank's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients. The expenses charged to Milbank's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

59.  Milbank charges the Committee for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients.

60.  In providing or obtaining from third parties services which are reimbursable by clients, Milbank does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

61.  Milbank regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.

62.  Attorneys at Milbank have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of any air travel expenses in excess of coach fares.  Throughout the Third Interim Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII. NOTICE

63.  Pursuant to the Interim Compensation Order, notice of this Motion has been given to bankruptcy counsel to the Debtors, corporate counsel to the Debtors, counsel to the agent for the Debtor's post-petition secured lender, the United States Trustee, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases.  In light of the

30

nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.

### IX.    CONCLUSION

WHEREFORE, Milbank respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit C, (a) allowing Milbank (i) interim compensation for professional services rendered as counsel for the Committee during the Third Interim Compensation Period in the amount of $832,307.50 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $75,815.03, for a total award of $908,122.53; (b) authorizing and directing the Debtors to pay to Milbank $734,857.25, which is an amount equal to the unpaid balance of fees and expenses incurred during the Third Interim Compensation Period; and (c) granting such further relief as is just.

Dated: March 17, 2006

MILBANK, TWEED, HADLEY & McCLOY LLP

By: /s/ Matthew S. Barr              
    Matthew S. Barr (MB 9170)
    Michael E. Comerford (MC 7049)
    1 Chase Manhattan Plaza
    New York, New York 10005
    (212) 530-5000

    Co-counsel for Official
    Committee of Unsecured
    Creditors of Winn-Dixie Stores,
    Inc., et al.