Hearing Date: April 6, 2006, 1:00 p.m.
Objection Deadline: March 30, 2006, 4:00 p.m.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
|  | ) |  |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
|  | ) |  |
| Debtors.[1] | ) | Jointly Administered |
|  | ) |  |

## MOTION FOR ORDER APPROVING
## ASSUMPTION OF MODIFIED AGREEMENTS WITH AT&T CORP.

Winn-Dixie Stores, Inc. ("Winn-Dixie") and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order under 11 U.S.C. §§ 105 and 365 and Fed. R. Bankr. P. 6006 approving Winn-Dixie's assumption of modified agreements with AT&T Corp. ("AT&T") and granting related relief (the "Motion"). In support of the Motion, the Debtors state as follows:

### Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace"

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks,

banners.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On March 1, 2005, pursuant to Section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases.  An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4.    This Court has jurisdiction over the Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.    The statutory predicates for the relief requested by this Motion are Sections 105 and 365 of the Bankruptcy Code, supported by Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relevant Facts

6.    Winn-Dixie and AT&T are parties to the AT&T Master Agreement (No. 121087), the AT&T Service Order Attachment-Voice/Data Service (No. 22053), and the Addendum to AT&T Service Order Attachment-Voice/Data Service, each effective as of November 5, 2003 (collectively, the "Prepetition Agreements").  The Prepetition Agreements provide Winn-Dixie and its affiliates with data frame relay network services that allow them to transport critical data, including point of sale authorizations, inventory inquiries and sales reports, between their various locations.

---

Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

7.      The Prepetition Agreements have become uneconomically unfavorable to Winn-Dixie.  The Prepetition Agreements contain, among other problematic terms, contract pricing provisions intended to guarantee a return to AT&T that will satisfy a "minimum annual revenue commitment" or "MARC" that is based upon the number of stores previously operated by the Debtors.  With the Debtors' decision to sell or close in excess of 300 stores as part of the chapter 11 restructuring process, Winn-Dixie is now unable to satisfy the MARC.  Moreover, Winn-Dixie's ability to adjust contract pricing based on the existing "business downturn" provision in the Prepetition Agreements has been exceeded.  As a result, the Debtors are subject to a shortfall penalty or a rate increase.

8.      The Debtors have been engaged in negotiations with AT&T in an effort to modify the MARC and address other problematic terms in the Prepetition Agreements.  The negotiations have produced an agreement in principal that is substantially reflected in the Addendum #1 to AT&T Master Agreement attached as Exhibit A, the amended and restated AT&T Service Order Attachment-Voice/Data Service attached as Exhibit B, and the amended and restated Addendum to AT&T Service Order Attachment-Voice/Data Service attached as Exhibit C (collectively, the "Postpetition Amendments").

9.      As part of the agreement in principle evidenced by the Postpetition Amendments, (a) Winn-Dixie's MARC will be reduced from $3.48 million per year to $1.68 million per year, (b) the business downturn provision will permit a further 15% reduction in commitment before a rate increase is triggered, (c) the early termination penalties applicable to the last two years of the contract term will be reduced, and (d) Winn-Dixie will be entitled to credits of $138,300 during the first month and, if agreed terms are satisfied, $276,000 in the forty-fifth month of the amendment term.

10.     The agreement in principle contemplates that Winn-Dixie will move to assume the Prepetition Agreements as modified by the Postpetition Amendments (the "Modified Agreements") under Section 365(a) of the Bankruptcy Code.  In conjunction with assumption of the Modified Agreements, Winn-Dixie has agreed that the prepetition unsecured non-priority claim asserted by AT&T in the amount of $1,129,757.90, as evidenced by proof of claim no. 833 (the "Prepetition Claim"), will be allowed in full.  For its part, AT&T will facilitate the assumption by agreeing that (a) Winn-Dixie will not be required to pay the amount of the Prepetition Claim as cure under Section 365(b)(1)(A) of the Bankruptcy Code, (b) the requirements of Section 365(b)(1) of the Bankruptcy Code will be waived in full by AT&T, (c) the Prepetition Claim will not have administrative expense status as a result of the assumption of the Modified Agreements or for any other purpose, and (d) the Prepetition Claim will retain the status of a prepetition unsecured non-priority claim.

### Relief Requested

11.     Pursuant to Sections 105 and 365 of the Bankruptcy Code and Rule 6006 of the Bankruptcy Rules, the Debtors seek entry of an order (a) approving Winn-Dixie's assumption of the Modified Agreements, (b) enforcing AT&T's waiver of the requirements of Section 365(b)(1) of the Bankruptcy Code, (c) allowing the Prepetition Claim in the amount of $1,129,757.90, and (d) providing that the Prepetition Claim will not be paid as cure but will instead retain the status of a prepetition unsecured non-priority claim.

### Support for Relief Requested

12.     Winn-Dixie and AT&T have reached an agreement in principle under the Postpetition Amendments that will favorably adjust the terms of the Prepetition Agreements to reflect the current and future needs of the Debtors' business.  Under the resulting Modified

Agreements, as stated above, AT&T has agreed to changes in the MARC obligations, the business downturn provision and the early termination penalties, and has agreed to allow certain credits.  In addition, by waiving its cure rights, AT&T has made a significant accommodation with respect to the treatment of its Prepetition Claim.  This is the best possible result for the Debtors' estates and creditors.

13.     The Debtors cannot sustain their day-to-day operations without a private data network of the type provided under the Prepetition Agreements.  The network supports a variety of critical data communications, including point of sale authorizations, inventory inquiries and sales reports.  Rejection of the Prepetition Agreements for the purpose of entering into a new agreement with an alternative provider is not feasible as it will cause significant business disruption, will create significant rejection damages, and is not likely to result in a replacement arrangement that will deliver material savings.  On the other hand, assumption of the Prepetition Agreements on their existing terms, without the modifications proposed in the Postpetition Amendments, is not economic as it will expose the Debtors to rate increases or penalties and will result in a large cure obligation.

14.     The assumption of the Modified Agreements should be approved pursuant to Section 365(a) of the Bankruptcy Code.  Under Section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

15.     A debtor's decision to assume or reject an unexpired lease is subject to review under the business judgment standard.  See *In re Gardiner, Inc.*, 831 F.2d 974, 975 n.2 (11th Cir. 1987);  *In re Orion Pictures Corp.*, 4 F.3d at 1098-99.  Upon finding that the Debtors have exercised their sound business judgment in determining that assumption of a particular executory contract is in the best interests of their estates, the Court should approve assumption under Section 365(a) of the Bankruptcy Code.  *In re Gucci*, 193 B.R. 411, 415-17 (S.D.N.Y. 1996) (affirming bankruptcy court's approval of assumption of executory contract upon determining that assumption "was in the best interest of the estate"); *Blue Cross Blue Shield of Conn. v. Gurski (In re Gurski)*, Nos. 94-51202 & 3:95CV1883, 1996 WL 684397, at *2 (D. Conn. Jan. 25, 1996) (affirming bankruptcy court's determination that executory contracts were beneficial to the debtor such that the debtor could assume them under Section 365(a)).

16.     Based upon the foregoing, the Debtors respectfully submit that they have satisfied the "business judgment" standard for assuming the Modified Agreements.  Accordingly, the relief requested in the Motion is in the best interests of the Debtors' estate and creditors and should be approved.

## Notice

17.     Notice of the Motion has been provided to (a) counsel to the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) AT&T.  No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (a) enter an order in the form of Exhibit D, (i) approving Winn-Dixie's assumption of the Modified Agreements, (ii) allowing the Prepetition Claim in the amount of $1,129,757.90, (iii) enforcing AT&T's waiver of the requirements of Section 365(b)(1) of the Bankruptcy Code, and (iv) providing that the Prepetition Claim will not be paid as cure but will instead retain the status of a prepetition unsecured non-priority claim, and (b) grant such other and further relief as the Court deems just and proper.

Dated:  March 17, 2006

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By ____*s/ D. J. Baker*____
    D. J. Baker
    Sally McDonald Henry
    Rosalie Walker Gray
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for the Debtors

SMITH HULSEY & BUSEY

By ____*s/ Cynthia C. Jackson*____
    Stephen D. Busey
    James H. Post
    Cynthia C. Jackson (Bar # 498882)
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for the Debtors

**EXHIBIT A**

**Addendum #1 to AT&T Master Agreement**



**AT&T MA Reference No.** 121087

**AT&T Master Agreement**
**Addendum # 1**

| CUSTOMER Legal Name ("Customer") | AT&T Corp. (or enter AT&T signing entity) ("AT&T") | AT&T Sales Contact Name ☒ Primary Contact |
|---|---|---|
| Winn Dixie | AT&T Corp. | Name Linda J. Leonard |
| **CUSTOMER Address** | **AT&T Corp. Address and Contact** | **AT&T Sales Contact Information** |
| Street Address 5050 Edgewood Court City Jacksonville State / Province FL Country USA Domestic / International / Zip Code 32254 | 55 Corporate Drive Bridgewater, New Jersey 08807 Attn: Master Agreement Support Team | Street Address 8649 Baypine Rd. City Jacksonville State / Province FL Country USA Domestic / International / Zip Code 32256 Fax 904-730-6333  Email ljleonard@att.com Sales/Branch Manager Hernandez SCVP Name Boza |
| **CUSTOMER Contact** | **AT&T Address and Contact (if signing entity other than AT&T Corp.)** | **AT&T Authorized Agent Information (if applicable) ☐ Primary Contact** |
| Name Charlie Weston Title Vice President, Strategy & Architecture Telephone 904-370-6538 Fax 904-783-5724 Email charlieweston@winn-dixie.com | Name Title Telephone Street Address City State / Province          Country Domestic / International / Zip Code | Name Company Name Agent Address City State / Province          Country Domestic / International / Zip Code Telephone Fax          Email Agent Code |
| **CUSTOMER Billing Address** | | |
| Street Address 5050 Edgewood Court City Jacksonville State / Province FL Country USA Domestic / International / Zip Code: 32254 | | |

This Addendum #1 to **AT&T Master Agreement (# 121087)** is part of the Agreement between AT&T and Customer referenced above.

**AGREED:**
**CUSTOMER: Winn Dixie Stores, Inc.**

By:_____
(Authorized Signature)


(Typed or Printed Name)


(Title)


(Date)

**AGREED:**
**AT&T Corp.**

By:_____
(Authorized Signature)


(Typed or Printed Name)


(Title)


(Date)

**Deleted:** WD_ABN_Contract_Amend_ 22053_Downturn_trkchgs_031506.doc

**Addendum # 1 to**

**AT&T Master Agreement # 121087**

1.    **SERVICES AND/OR CONTRACT DOCUMENT NAME**

AT&T Master Agreement

2.    **TERMS AND CONDITIONS**

**Replace section 7.0 of Existing Master Agreement (ADJUSTMENTS TO MINIMUM ANNUAL REVENUE COMMITMENTS) with 7.0 (below):**

**7.0** In the event of a business downturn beyond Customer's control, or a corporate divestiture, merger, acquisition or significant restructuring or reorganization of Customer's business, or network optimization using other AT&T Services, or reduction of AT&T's rates and charges, or a five percent (5%) or more reduction in number of Customer's stores (whether or not a result of business downturn) or force majeure events, any of which significantly impairs Customer's ability to meet Customer's minimum commitments, if any, AT&T will offer to adjust the affected minimum commitments so as to reflect Customer's reduced traffic volumes, after taking into account the effect of such a reduction on AT&T's costs and the AT&T prices that would otherwise be available at the revised minimum commitment levels. If the parties reach mutual agreement on revised minimum commitments, AT&T will amend or replace the affected Attachment, as applicable, *provided, however,  that any adjustment made to the affected minimum annual revenue commitments under this clause 7.1 does not exceed fifteen (15) percent, AT&T will not change any rates currently contained in the affected pricing schedules*.  Notwithstanding the foregoing, this provision shall not apply to a change resulting from a decision by Customer to transfer portions of Customer's traffic or projected growth to service providers other than AT&T.  Customer must give AT&T written notice of the conditions Customer believes will require the application of this provision. This provision does not constitute a waiver of any charges, including, but not limited to, monthly recurring charges and shortfall charges, incurred by Customer prior to amendment or replacement of the affected Pricing Schedules."
Customer may request a MARC adjustment pursuant to this clause 7.0 only once during the term of the Agreement.

**Deleted:** WD_ABN_Contract_Amend_22053_Downturn_trkchgs_031506.doc

**EXHIBIT B**

**Amended and Restated AT&T Service Order Attachment-Voice/Data Service**

**Winn-Dixie Stores, Inc.    WK-54307V8**

<table>
<tr><td colspan="2">For AT&T Administrative Use Only</td></tr>
<tr><td>**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**</td><td>**Master Agreement No. 121087**<br>**Attachment No. 22053**<br>**Original Effective Date: November 5, 2003**<br>**Amended Effective Date:**</td></tr>
</table>

## AT&T Service Order Attachment-Voice/Data Services

### 1. THE SERVICE

#### 1.1 Services Provided
AT&T will provide the following Service as ordered by Customer under this Attachment.  The service descriptions and other provisions relating to the Service will be as set forth in this Attachment, the Agreement's general terms and conditions and the appropriate sections of the Service Guide.  Except to the extent that credits, waivers, discounts and stabilized prices are specified in this Attachment, pricing for the Services Provided will be as set forth in the Service Guide.

• AT&T Business Network (ABN) Service

#### 1.2 Definitions
Capitalized terms used but not defined in this Attachment are defined elsewhere in the Agreement.
**A. "AT&T CPE**" means, collectively, equipment provided under this Attachment by AT&T or its suppliers and located on Customer's premises.  AT&T CPE includes the software required to operate such equipment.
**B. "Effective Date**" is the date on which the last party signs this Attachment.
**C. "Purchased Equipment**" means equipment sold under this Attachment by AT&T or its suppliers to Customer.
**D. "Service**" means collectively all of the Service Components Customer orders under this Attachment, as more fully described in the Service Guide.
**E. "Service Guide**" consists of the standard AT&T service descriptions, pricing and other provisions, as revised by AT&T from time to time, relating to Services Provided under this Attachment.  The Service Guide is located at http://www.serviceguide.att.com/ABS/ext or http://www.att.com/abs/serviceguide or such other AT&T designated location.

### 2. TERM AND TERMINATION

**2.1**   The term of this Attachment ("Attachment Term") is 54 months.  The Attachment Term, discounts and rates commence beginning with the first full billing cycle following establishment of the billing structure of the ABN Service.  No renewal option is available under this Attachment.

**2.2**  Customer may terminate this Attachment under one of the following provisions without incurring Termination Charges:
(i)   In the event of a breach of any material term or condition of this Attachment or the underlying applicable sections of the Service Guide by AT&T where such failure continues unremedied for thirty (30) days after receipt of written notice by AT&T.

(ii)  On the 3rd anniversary of the Attachment Term start date, provided: (1) AT&T receives, in writing, the Customer's order to terminate at least 30 days prior to the day on which the service is to be terminated; and (2) the Customer, by the time of termination, has satisfied an amount equal to the sum of the MARCs for years 1, 2 and 3.
(iii) Prior to the end of the Attachment Term, provided Customer: (1) is current in payment to AT&T for Services Provided; and (2) replaces this Attachment with other domestic and/or international telecommunications Services provided by AT&T having: (i) an equal or greater new MARC, and (ii) a new term equal to or greater than the remaining term of this Attachment.  If Customer is terminating more than one Attachment concurrent with the termination of this Attachment, the new MARC must be equal to or greater than the sum of all the MARCs in the terminated Attachments.  For purposes of this section, the Shortfall Charge, if any, shall be equal to the difference between:  (1) the prorated MARC for the year in which the Customer terminates and (2) the total MARC-Eligible Charges incurred for that year through the effective date of termination.

**2.3**   In the event of a termination of this Attachment either by Customer for its convenience (other than under Section 2.2) or by AT&T as permitted for cause under the Agreement, then Customer must pay a Termination Charge.
(i)   If the Customer discontinues during Year 1 of the Attachment Term,, the Termination Charge is an amount equal to (1) 35% of the unsatisfied MARC plus (2) 35% of the MARC for year 2 plus (3) 50% of the MARC for each year remaining in the Attachment Term.
(ii)  If the Customer discontinues during Year 2 of the Attachment Term,, the Termination Charge is an amount equal to (1) 35% of the unsatisfied MARC plus (2) 50% of the MARC for each year remaining in the Attachment Term.
(iii) If the Customer discontinues during Year 3 or 4 of the Attachment Term,, the Termination Charge is an amount equal to (1) 50% of the unsatisfied MARC plus (2) 50% of the MARC for each year remaining in the Attachment Term.

**2.4**  Customer must pay all charges incurred as of the effective date of termination. In addition, in the event of termination of the Service, in whole or in part, other than under 2.2(i), Customer must pay any: (i) waived installation charges for Service Components which have been installed and have not met the applicable minimum retention period (specified in this Attachment or the Service Guide) as of the termination date; (ii) access facilities termination charges and other third party charges incurred by AT&T due to the termination; and, (iii) remaining charges accrued with respect to any AT&T CPE and Purchased Equipment. Customer must also pay any minimum

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:**

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

payment period charges for Service Components, as specified in the Service Guide or this Attachment.

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:**

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

## AT&T Service Order Attachment-Voice/Data Services

### 3.  MINIMUM COMMITMENTS/CHARGES

**3.1**  The Minimum Annual Revenue Commitments (MARC) for each 12 month period beginning in the 7th month following the start of the Attachment Term for the AT&T Business Network (ABN) Service provided under this Attachment is $6,500,000 for Year One (1), $8,500,000 for Year Two (2); $1,680,000 for Year Three (3) and $1,680,000 for Year Four (4) of the Attachment Term.

**3.1.1**  For each of Years 1 and 2 of the Attachment Term, the MARC will be satisfied by the following "MARC-Eligible Charges":

Customer's total gross (undiscounted) monthly non-recurring, recurring (including any which may have been waived) and usage charges for ABN Service as defined in the Service Guide, including eligible Voice, FRS, Access, Local, Intrastate, ATM and MIS Services purchased under the ABN Service offer.

**3.1.2**  For each of Years 3 and 4 of the Attachment Term, the MARC will be satisfied by the following "MARC-Eligible Charges", after the application of the applicable discounts.

Customer's total gross monthly non-recurring, recurring (including any which may have been waived) and usage charges (after the application of the applicable discounts) for ABN Service as defined in the Service Guide, including eligible Voice, FRS, Access, Local, Intrastate, ATM and MIS Services purchased under the ABN Service offer.

If, at the end of each 12 month period beginning with the 7th month following the start of the Attachment Term, the Customer has failed to satisfy the MARC for the preceding 12 month period, the Customer will be billed a shortfall charge in an amount equal to 50% of the difference between the MARC and the total of the actual MARC-eligible charges incurred during the 12 month period.  The shortfall charge payable under this Attachment shall be reduced by an amount equal to any shortfall charges actually paid by the Customer under other Voice/Data Service Attachments to the extent such Attachments are coterminous with this Attachment and cover services designed by the parties as MARC-eligible pursuant to this Section.

### 4.  SERVICE SPECIFIC AND OTHER PROVISIONS

#### 4.1.  MIS

**4.1.1.**  AT&T may terminate MIS Service upon one hundred eighty (180) days written notice to Customer, or any MIS Service Component upon ninety (90) days written notice, if AT&T decides to cease providing such Service to its customers generally, in whole or in part.

**4.1.2.**  Customer agrees to be bound by and shall assure that Users comply with AT&T's Acceptable Use Policy ("AUP"). The AUP details the types of Customer and User activities that are prohibited.  The AUP may be revised from time to time, and is available for review at: <http://www.ipservices.att.com/policy.html>, or at such other address as AT&T may specify by posting or email notice.  If Customer wishes to be notified of modifications to the AUP, Customer may visit such address and subscribe to the AUP modification notification service.

If Customer fails to rectify a violation of the AUP within ten (10) days after receiving notice thereof from AT&T, then AT&T may terminate or suspend this MIS Service, except that Service may be suspended without notice (i) in response to a court order or government demand, or (ii) if AT&T determines, in its reasonable discretion, that the violation is likely to cause AT&T to be in violation of law or expose AT&T to irreparable harm or cause harm to the integrity or normal operation of AT&T's network or AT&T's ability to provide services to customers.

**4.1.3**  AT&T Security Services, such as Managed Firewall Services, are intended for use in conjunction with a single AT&T-approved Internet connection to Customer's network.  AT&T only monitors Internet connections included in AT&T Security Services.

**4.1.4.**  Customer may, from time to time, request AT&T to host Customer's IP addresses or domain names, in accordance with the terms and conditions set forth herein and at the following web site, which site may be revised from time to time: https://mis-att.bus.att.com/mys/dns_res_terms.html.

**4.1.5.**  Except for IP addresses expressly registered in Customer's name, all IP addresses, AT&T-based domain names and telephone numbers shall remain, at all times, property of AT&T and shall be nontransferable and Customer shall have no right to use same upon termination or expiration of MIS Service.

**4.1.6.**  AT&T will use reasonable commercial efforts in providing the Service.  However, AT&T does not guarantee network security or the integrity of any data which is backed up, stored or subject to load balancing.  Except as set forth in the Service Guide, AT&T will not provide support directly to, or interface with, any User.

**4.1.7.**  Local Access, which is the connection between the Customer premises and the nearest AT&T point of presence, is required for MIS Service.  Customer may choose to have AT&T provide the Local Access or to have the Local Access provided by another carrier.  Local Access provided by AT&T under this Attachment may be used for AT&T MIS only.  AT&T will not manage Local Access provided by another carrier, and AT&T will not be responsible for the availability of such Local Access. Customer will not be able to use the Service if Local Access is unavailable.

**Winn-Dixie Stores, Inc.   WK-54307V8**

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

## AT&T Service Order Attachment-Voice/Data Services

**4.1.8.**  In addition to the MIS Service charges set forth in this Attachment, Customer is responsible for payment of applicable local access charges and any Domain Name registration fees.

**4.1.9**  AT&T will use reasonable commercial efforts in providing the Service. However, AT&T does not guarantee network security, or the integrity of any data which is sent, backed up, stored or subject to load balancing or that AT&T's security procedures will prevent the loss of, alteration of, or improper access to, Customer data and information. Except as set forth in the Service Guide, AT&T will not provide support directly to, or interface with, any User.

### 4.2.  Equipment

**4.2.1.**  If AT&T installs AT&T CPE on Customer's premises for the purpose of enabling AT&T to provide the Service to Customer, and then Customer will have no right, title or interest in AT&T CPE.  Customer shall keep the AT&T CPE free from all liens, charges, or encumbrances.  Customer is liable for damage to or loss of AT&T CPE (including damage or loss caused by force majeure events) except to the extent caused by AT&T or its Suppliers.  On termination or expiration of this Attachment, Customer will, upon AT&T's request, return all AT&T CPE in the same condition as originally installed, ordinary wear and tear excepted, to an AT&T specified address or Customer shall be liable for its then-current market value.  AT&T will not be obligated to restore the premises to its original condition.

**4.2.2.**  Title to and risk of loss of Purchased Equipment will pass to Customer as of the delivery date, upon which date, AT&T will have no further obligations of any kind (including without limitation operation and maintenance) with respect to that Purchased Equipment.  AT&T retains a purchase money security interest in each item of Purchased Equipment until Customer pays for it in full; Customer appoints AT&T as AT&T's agent to sign and file a financing statement to perfect AT&T's security interest.

**4.2.3.**  All Purchased Equipment and Third Party Software provided under this Attachment is provided on an "as is" basis, except that AT&T will pass through to Customer any warranties available from its Purchased Equipment and Third Party Software suppliers, to the extent that AT&T is permitted to do so under its contracts with those suppliers. If Purchased Equipment is manufactured by Cisco Systems, Inc., Customer must refer to the following URL regarding equipment warranty provisions:

http://stage.business.att.com/acs/equipment_and_materials.doc and the following URL regarding associated software licensing provisions:

http://stage.business.att.com/acs/software_license.doc.       No maintenance, repair or other support is provided for Purchased Equipment or Third Party Software, except as expressly stated in the Service Guide or the terms and conditions provided with the Third Party Software, respectively.

### 4.3  OC3 Local Channel Service Provisions

**4.3.1**  Upon expiration of the Attachment Term, for any OC3 Local Channel Service component that has time remaining in its minimum payment period, the provisions of this Attachment relating to such component, including discounts and rates, will continue in effect until the end of the minimum payment period.

**4.3.2**  Unless otherwise specified in this Attachment, the minimum payment period for On-Net OC3 Local Channel Service is one year and the minimum payment period for Off-Net OC3 Local Channel Service is three years, as specified in the Service Guide.  The OC3 Local Channel Services provided under this Attachment are subject to the availability of the underlying access provider services on terms acceptable to AT&T.

### 4.4.  Eligibility/Other Requirements

This Attachment is available to Customers who order this Attachment only once, either by the Customer or any Affiliate of the Customer, for establishment of billing structure within 30 days after the date ordered.

### 5.  DISCOUNTS

All discounts are applied in the same manner as specified in the Service Guide, and no other discounts will apply.  These discounts will apply to the applicable rates in the Service Guide as well as those stabilized rates in Section 7 of this Attachment.

| ABN Service Component/Capability | Discount% |
|---|---|
| Domestic Voice - Standard | 64.74% |
| Domestic Voice – Partially Connected | 68.63% |
| Domestic Voice – Fully Connected | 70.24% |
| International Voice | 50% |
| Other Qualifying Service Category | 33% |
| Domestic Frame | 68% |
| Regional Frame | 52% |
| International Frame | 19% |
| ACCUNET T1.5 Service | 50% |
| ACCUNET T45 Service | 59% |
| SONET OC12 Service | 44% |

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:**

**AT&T Service Order Attachment-Voice/Data Services**

| | |
|---|---|
| Terrestrial 1.544 Mbps Local Channels not connected to Managed Internet Service | 30% |
| Terrestrial 1.544 Mbps Local Channels connected to Managed Internet Service* | 47% |
| Terrestrial 45 Mbps Local Channels | 40% |
| 9.6/56/64 ACCUNET Generic Digital Access Local Channels | 30% |
| SONET OC3 Local Channel Service and associated Access Coordination Function | 30% |
| ACCUNET T1.5 Service Primary Rate Interface Office Functions | 85% |
| AT&T Frame Relay Plus Service | |
| 56 kbps Monthly Recurring Charge | 11% |
| T1.5 Monthly Recurring Charge | 11% |
| T45 Monthly Recurring Charge | 11% |

**Winn-Dixie Stores, Inc.   WK-54307V8**

| For AT&T Administrative Use Only |
|---|
| **Master Agreement No. 121087**<br>**Attachment No. 22053**<br>**Original Effective Date:  November 5, 2003**<br>**Amended Effective Date:** |

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

| Asynchronous Transfer Mode (ATM) Service | |
|---|---|
| Domestic ATM and FRS/ATM Interworking | 68% |
| International ATM and International ATM Interworking | 19% |
| Local ATM and FRS/ATM Interworking | 52% |
| AT&T Managed Internet Service (MIS) | |
| Tiered – excluding 56 kbps | 60% |
| Burstable | 60% |
| Tele-Installation | 100% |
| AT&T Managed Firewall | |
| Router Based | 23% |
| Server Based | 6% |
| Router Based Installation Charges | 100 % |
| Server Based Installation Charges | 100% |

\* - This discount only applies to those Local Channels with mileage of no more than 25 miles.  If the mileage is greater than 25 miles, then the discount specified for Local Channels not connected to MIS Service will apply to those Local Channels.

**Monthly Growth Incentive (MGI) Discount -** The Customer is not eligible for the MGI Discount as specified in the applicable section of the Service Guide.

The Customer will receive an additional discount on the total Monthly Billed Charges for Other Qualifying Service Category usage for the following states:

| State | Discount |
|---|---|
| Alabama | 10% |
| Florida | |
|    Intralata – Standard | 14.3% |
|    Intralata – Partially Connected | 13% |
|    Intralata – Fully Connected | 18% |
| Florida | |
|    Interlata – Standard | 5% |
|    Interlata – Partially Connected | 7% |
|    Interlata – Fully Connected | 18% |
| Georgia | 10% |
| Kentucky | 10% |
| Indiana | 10% |
| Louisiana | 22% |
| Mississippi | 10% |
| North Carolina | 3% |
| Ohio | 10% |
| South Carolina | 10% |
| Tennessee | 10% |
| Virginia | 5% |

The Customer will receive an additional discount on the undiscounted Frame Relay Service Monthly Recurring Charges for the following Port speeds:

| Frame Port Speed | Discount% |
|---|---|
| 44.736 Mbps | 11.93% |

The Customer will receive an additional discount on the undiscounted Frame Relay Service Monthly Recurring Charges for the following PVC speeds:

| Frame PVC Speed | Discount% |
|---|---|
| 4 kbps | 14.05% |
| 16 kbps | 6.91% |
| 32 kbps | 20% |
| 64 kbps | 21.51% |
| 128 kbps | 20.76% |
| 256 kbps | 18.62% |
| 512 kbps | 12.49% |
| 768 kbps | 10.85% |
| 1.544 Mbps | 17.54% |

The Customer will receive an additional discount on the undiscounted Frame Relay Service Monthly Recurring Charges for the following Back-Up PVC speeds:

| Frame Back-Up PVC Speed | Discount% |
|---|---|
| 64 kbps | 14.32% |
| 128 kbps | 13.27% |

The Customer will receive an additional discount on the undiscounted Frame Relay Service Monthly Recurring Charges for the following Enterprise PVC speeds:

| Frame Enterprise PVC Speed | Discount% |
|---|---|
| 4 kbps | 19% |
| 32 kbps | 20% |
| 64 kbps | 21% |
| 128 kbps | 22% |

The Customer will receive an additional discount on the undiscounted Domestic ATM Service Monthly Recurring Charges for the following Port speeds:

| Domestic ATM Ports | Discount% |
|---|---|
| 155 Mbps | 14.93% |

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:**

If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)

### AT&T Service Order Attachment-Voice/Data Services

#### 6.  PROMOTIONS, CREDITS AND WAIVERS

#### 6.1  PROMOTIONS
Customer is eligible for ABN Service waivers as designated in the Service Guide.  Customer is ineligible for any and all other promotions, credits or waivers in the Service Guide.

#### 6.2  CREDITS
**6.2.1**  A credit of $138,300 will be applied in month 1 of the Attachment Term.

**6.2.2**  A credit of $276,000 will be applied in month 45 of the Attachment Term provided that Customer satisfies the requirements mutually agreed upon by both parties.

#### 6.3  WAIVERS
AT&T will waive the following charges, provided such components remain installed for a minimum retention period of 12 months, except for upgrades to higher speeds, or unless otherwise indicated below, equal to:

**6.3.1**  Those Installation Charges for ATM Ports and PVCs that are specified in the Service Guide as waived for ABN customers.

**6.3.2**  The Monthly Charges and minimum usage requirement for Per Main Billed Account, Per Customer Location-Switched Access and Per Customer Location-Dedicated Access.

**6.3.3**  The recurring charges for all new and existing Frame Relay Service and ATM Service Ports and PVCs and AT&T Terrestrial 1.544 Mbps Local Channels in service in the 10th and 11th months following Effective Date of Attachment (EDA) will be waived for that month.

**6.3.4**  100**%** of the monthly recurring charges for the following in lieu of the waiver specified in the Service Guide:  ACCUNET T1.5 Access Connection, ACCUNET T1.5 M-24 Office Function, ACCUNET T45 Access Connection, ACCUNET T45 M-28 Office Function, Terrestrial 1.544 Mbps Access Coordination Function, Terrestrial 45 Mbps Access Coordination Function and Generic Digital Access Coordination Function.

**6.3.5**  In lieu of the corresponding waivers set forth in the Service Guide for ABN Service, the retention period for the following components will be reduced to three months if the Customer happens to be upgrading any of these components to higher speeds.   If the Customer is not upgrading any of these components to higher speeds, then the minimum retention period of 12 months as specified in the Service Guide will apply.

| | Installation |
|---|---|
| **ACCUNET Generic Digital Access Local Channel** | ■  Access Coordination Function<br>■  ASDS Access Connection<br>■  ASDS Function Connection<br>■  Local Channel |
| **Terrestrial 1.544 Mbps Local Channel\*** | ■  Access Coordination Function<br>■  ACCUNET T1.5 Service Access Connection<br>■  Local Channel<br>■  ACCUNET T1.5 Service M24 Multiplexing Office Function<br>■  ACCUNET T1.5 Service Primary Rate Interface (PRI) Office Function<br>■  ACCUNET T1.5 Service Function Connection |

**Winn-Dixie Stores, Inc.   WK-54307V8**

| For AT&T Administrative Use Only |
|---|
| **Master Agreement No. 121087**<br>**Attachment No. 22053**<br>**Original Effective Date: November 5, 2003**<br>**Amended Effective Date:** |

If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)

## AT&T Service Order Attachment-Voice/Data Services

### 7. RATES

**7.1 Regulatory Surcharges**
Regardless of any stabilization that may appear in this Attachment for the Services Provided, AT&T reserves the right to increase charges as a result of expenses incurred by AT&T reasonably relating to regulatory assessments stemming from an order, rule or regulation of the Federal Communications Commission or other regulatory authority or court having competent jurisdiction (including but not limited to payphone, PICC and USF related expenses).

**7.2 ABN Domestic Dial Station Outbound/Inbound Calling** - The following rates apply in lieu of the corresponding rates set forth in the Service Guide and are stabilized for the Attachment Term.

| Call Type | Initial 30 Seconds or Fraction | Each Add'l Second or Fraction |
|---|---|---|
| Standard | $0.0780 | $0.0026 |
| Partially Connected | $0.0510 | $0.0017 |
| Fully Connected | $0.0420 | $0.0014 |

**7.3  AT&T Terrestrial 1.544 Mbps Local Channels** - The following rates apply in lieu of the corresponding rates set forth in the Service Guide and are stabilized for the Attachment Term.

| NPA-NXX | Monthly Charge | USOC |
|---|---|---|
| All | $500.00 | 1LNV9 |

**7.4  AT&T Frame Relay Service - Domestic Access Port Charges**
* The following rates are stabilized for the Attachment Term.

When the service components specified below are ordered together as a unit at the same location, the Customer will be billed the following in lieu of the individual service component charges:

Domestic Access Port (a Domestic Access Port consists of one Domestic Port, one Access Connection, one Digital Local Channel, and one Access Coordination Function).  Domestic Access Ports are only available in the United States, Puerto Rico and the United States Virgin Islands.

| Domestic Access Port | Domestic Access Port Monthly Charge | Domestic Access Port Installation Charge |
|---|---|---|
| 64 kbps (DS0 Access) | $603.00 | $2,500.00 |
| 128 kbps | $1,328.00 | $2,500.00 |
| 256 kbps | $1,484.00 | $2,500.00 |
| 512 kbps | $2,532.61 | $2,500.00 |
| 768 kbps | $3,316.70 | $2,500.00 |
| 1.544 Mbps | $2,562.00 | $2,500.00 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

| For AT&T Administrative Use Only |
|---|
| **Master Agreement No. 121087**<br>**Attachment No. 22053**<br>**Original Effective Date:  November 5, 2003**<br>**Amended Effective Date:** |

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

## AT&T Service Order Attachment-Voice/Data Services

**AT&T Frame Relay Service – Ports and PVCs**

**Port Charges Table**

The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

**Domestic and Global Port Installation and Monthly Recurring Charges**

**Port Charges Table**

| Port Speed<br>(bps) | Domestic Port Monthly Charge | Global Port Monthly Charge | Port Installation Charge |
|---|---|---|---|
| 56 k | $      515.00 | $1,645.00 | $     800.00 |
| 64 k | $      525.00 | $1,645.00 | $     800.00 |
| 128 k | $      885.00 | $3,085.00 | $ 1,000.00 |
| 192 k | $   1,115.00 | $3,685.00 | $ 1,000.00 |
| 256 k | $   1,290.00 | $4,285.00 | $ 1,000.00 |
| 320 k | $   1,500.00 | $4,830.00 | $ 1,000.00 |
| 384 k | $   1,695.00 | $5,380.00 | $ 1,000.00 |
| 448 k | $   1,845.00 | $6,135.00 | $ 1,000.00 |
| 512 k | $   2,040.00 | $6,885.00 | $ 1,000.00 |
| 576 k | $   2,055.00 | $7,060.00 | $ 1,000.00 |
| 640 k | $   2,195.00 | $7,245.00 | $ 1,000.00 |
| 704 k | $   2,295.00 | $7,430.00 | $ 1,000.00 |
| 768 k | $   2,395.00 | $7,610.00 | $ 1,000.00 |
| 1024 k | $   2,820.00 | $8,700.00 | $ 1,000.00 |
| 1544 k | $   3,485.00 | $8,700.00 | $ 1,000.00 |
| 44.736 M | $12,500.00 | $12,500.00 | $ 1,000.00 |

AT&T reference date:  04/20/2003

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

Master Agreement No. 121087
Attachment No. 22053
Original Effective Date: November 5, 2003
Amended Effective Date:

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

**Other Monthly Recurring Port Charges**

| Port Speed (bps) | Additional Port Interconnection Monthly Charge | Additional Hawaii/Puerto Rico/US Virgin Islands Port Monthly Charge |
|---|---|---|
| 56 k | $ 2,495.00 | $ 593.00 |
| 64 k | $ 2,495.00 | $ 608.00 |
| 128 k | $ 2,260.00 | $ 1,020.00 |
| 192 k | $ 2,115.00 | $ 1,290.00 |
| 256 k | $ 2,000.00 | $ 1,500.00 |
| 320 k | $ 1,870.00 | $ 1,740.00 |
| 384 k | $ 1,755.00 | $ 1,965.00 |
| 448 k | $ 1,655.00 | $ 2,145.00 |
| 512 k | $ 1,535.00 | $ 2,370.00 |
| 576 k | $ 1,435.00 | $ 2,385.00 |
| 640 k | $ 1,345.00 | $ 2,550.00 |
| 704 k | $ 1,265.00 | $ 2,670.00 |
| 768 k | $ 1,205.00 | $ 2,790.00 |
| 1024 k | $ 0.00 | $ 3,822.00 |
| 1544 k | $ 0.00 | $ 4,793.00 |
| 44.736 M | $ 0.00 | $19,575.00 |

**Domestic Port and Global Port Speed Change/Port Type Change Charge**
The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

**Port Change Charge**

|  | Port Change Charge |
|---|---|
| - per port speed change or port type change | $100.00 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

Master Agreement No. 121087
Attachment No. 22053
Original Effective Date: November 5, 2003
Amended Effective Date:

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

**Permanent Virtual Circuits**
The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

**Domestic PVC Monthly Recurring Charges**

| PVC CIR   (bps) | Asymmetrical Charge | Symmetrical Charge |
|---|---|---|
| 4 k | $    23.00 | $    39.00 |
| 8 k | $    26.00 | $    49.00 |
| 16 k | $    36.00 | $    65.00 |
| 32 k | $    56.00 | $    119.00 |
| 48 k | $    83.00 | $    167.00 |
| 56 k | $    94.00 | $    194.00 |
| 64 k | $    100.00 | $    203.00 |
| 128 k | $    180.00 | $    356.00 |
| 192 k | $    266.00 | $    534.00 |
| 256 k | $    354.00 | $    710.00 |
| 320 k | $    439.00 | $    887.00 |
| 384 k | $    528.00 | $ 1,064.00 |
| 448 k | $    707.00 | $ 1,274.00 |
| 512 k | $    790.00 | $ 1,492.00 |
| 576 k | $    841.00 | $ 1,576.00 |
| 640 k | $    940.00 | $ 1,702.00 |
| 704 k | $ 1,044.00 | $ 1845.00 |
| 768 k | $ 1,148.00 | $ 2,011.00 |
| 832 k | $ 1,184.00 | $ 2,133.00 |
| 896 k | $ 1,239.00 | $ 2,263.00 |
| 960 k | $ 1,249.00 | $ 2,432.00 |
| 1024 k | $ 1,342.00 | $ 2,566.00 |
| 1536 k | $ 1,480.00 | $ 2,766.00 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

| For AT&T Administrative Use Only |
|---|
| Master Agreement No. 121087<br>Attachment No. 22053<br>Original Effective Date:  November 5, 2003<br>Amended Effective Date: |

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

| PVC CIR   (bps) | Asymmetrical Charge | Symmetrical Charge |
|---|---|---|
| 2 M | $ 1,517.00 | $ 3,030.00 |
| 3 M | $ 1,599.00 | $ 3,196.00 |
| 4 M | $ 2,132.00 | $ 4,262.00 |
| 5 M | $ 2,664.00 | $ 5,327.00 |
| 6 M | $ 3,197.00 | $ 6,391.00 |
| 7 M | $ 3,729.00 | $ 7,456.00 |
| 8 M | $ 4,262.00 | $ 8,520.00 |
| 9 M | $ 4,794.00 | $ 9,586.00 |
| 10 M | $ 5,327.00 | $ 10,651.00 |
| 15 M | N/A | $15,375.00 |
| 20 M | N/A | $20,500.00 |
| 25 M | N/A | $25,625.00 |
| 30 M | N/A | $30,750.00 |
| 35 M | N/A | $35,874.00 |
| 40 M | N/A | $41,000.00 |

**Domestic FRS PVC CIR Change Charge and PVC Installation Charge**
The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

**FRS PVC CIR Change Charge**

|  | PVC Change Charge |
|---|---|
| Per PVC CIR Change | $ 25.00 |

**FRS PVC Installation Charge**

|  |  |
|---|---|
| Per PVC Install | $ 25.00 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

| For AT&T Administrative Use Only |
|---|
| **Master Agreement No. 121087** |
| **Attachment No. 22053** |
| **Original Effective Date: November 5, 2003** |
| **Amended Effective Date:** |

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

## AT&T Service Order Attachment-Voice/Data Services

**Interstate IntraLATA PVC Charges**
The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

**Interstate IntraLATA PVC Charges Table**

| PVC CIR   kbps | Symmetrical PVC Monthly Charge |
|---|---|
| 4 | $ 20.00 |
| 8 | $ 20.00 |
| 16 | $ 20.00 |
| 32 | $ 20.00 |
| 48 | $ 20.00 |
| 56 | $ 20.00 |
| 64 | $ 20.00 |
| 128 | $ 20.00 |
| 192 | $ 20.00 |
| 256 | $ 20.00 |
| 320 | $ 20.00 |
| 384 | $ 20.00 |
| 448 | $ 20.00 |
| 512 | $ 20.00 |
| 576 | $ 20.00 |
| 640 | $ 20.00 |
| 704 | $ 20.00 |
| 768 | $ 20.00 |
| 832 | $ 20.00 |
| 896 | $ 20.00 |
| 960 | $ 20.00 |
| 1024 | $ 20.00 |
| 1536 | $ 20.00 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

Master Agreement No. 121087
Attachment No. 22053
Original Effective Date: November 5, 2003
Amended Effective Date:

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

## AT&T Service Order Attachment-Voice/Data Services

**Back-Up PVC Recurring Charges**

The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

### Back-Up PVC Recurring Charges

| PVC CIR bps | FR Back-Up PVC Monthly Charge |
|:---:|:---:|
| 4 k | $ 22.00 |
| 8 k | $ 24.00 |
| 16 k | $ 26.00 |
| 32 k | $ 28.00 |
| 48 k | $ 31.00 |
| 56 k | $ 36.00 |
| 64 k | $ 38.00 |
| 128 k | $ 82.00 |
| 192 k | $125.00 |
| 256 k | $166.00 |
| 320 k | $208.00 |
| 384 k | $249.00 |
| 448 k | $315.00 |
| 512 k | $374.00 |
| 576 k | $425.00 |
| 640 k | $476.00 |
| 704 k | $528.00 |
| 768 k | $581.00 |
| 832 k | $635.00 |
| 896 k | $694.00 |
| 960 k | $747.00 |
| 1024 k | $803.00 |
| 1536 k | $885.00 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

Master Agreement No. 121087
Attachment No. 22053
Original Effective Date:  November 5, 2003
Amended Effective Date:

### AT&T Service Order Attachment-Voice/Data Services

**Back-Up PVC Recurring Charges**

| PVC CIR bps | FR Back-Up PVC Monthly Charge |
|---|---|
| 2 M | $943.00 |
| 3 M | $995.00 |
| 4 M | $1,327.00 |
| 5 M | $1,659.00 |
| 6 M | $1,990.00 |
| 7 M | $2,322.00 |
| 8 M | $2,654.00 |
| 9 M | $2,986.00 |
| 10 M | $3,317.00 |
| 15 M | $4,976.00 |
| 20 M | $6,634.00 |
| 25 M | $8,293.00 |
| 30 M | $9,952.00 |
| 35 M | $11,610.00 |
| 40 M | $13,269.00 |

**Domestic Back-Up PVC CIR Change Charge and PVC Installation Charge**
The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

**Back-Up PVC CIR Change Charge**

| | Charge |
|---|---|
| per PVC CIR change | $150.00 |

**Back-Up PVC Installation Charges**

| | Charge |
|---|---|
| per PVC | $150.00 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

<table>
<tr><td>For AT&T Administrative Use Only</td></tr>
<tr><td>
Master Agreement No. 121087<br>
Attachment No. 22053<br>
Original Effective Date:  November 5, 2003<br>
Amended Effective Date:
</td></tr>
</table>

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

**Global Permanent Virtual Circuits (PVC) Recurring Charges**

The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

#### Global PVC Charges Table

| PVC CIR  kbps | One-Way Half Channel PVC Monthly Charge | Asymmetrical Half Channel PVC Monthly Charge | Symmetrical Half Channel PVC Monthly Charge |
|---|---|---|---|
| 4 | $     56.00 | $     28.00 | $     54.00 |
| 8 | $     83.00 | $     55.00 | $    108.00 |
| 16 | $    138.00 | $    110.00 | $    218.00 |
| 32 | $    246.00 | $    218.00 | $    436.00 |
| 48 | $    356.00 | $    328.00 | $    654.00 |
| 56 | $    464.00 | $    436.00 | $    870.00 |
| 64 | $    464.00 | $    436.00 | $    870.00 |
| 128 | $    900.00 | $    872.00 | $ 1,741.00 |
| 192 | $ 1,334.00 | $ 1,306.00 | $ 2,611.00 |
| 256 | $1,770.00 | $ 1,742.00 | $ 3,482.00 |
| 320 | $ 2,205.00 | $ 2,177.00 | $ 4,352.00 |
| 384 | $2,640.00 | $ 2,612.00 | $ 5,223.00 |
| 448 | $ 3,075.00 | $ 3,047.00 | $ 6,093.00 |
| 512 | $3,511.00 | $ 3,483.00 | $ 6,964.00 |
| 576 | $ 3,946.00 | $ 3,918.00 | $ 7,834.00 |
| 640 | $4,381.00 | $ 4,353.00 | $ 8,705.00 |
| 704 | $ 4,816.00 | $4,788.00 | $ 9,575.00 |
| 768 | $ 5,252.00 | $ 5,224.00 | $10,446.00 |
| 832 | $ 5,687.00 | $ 5,659.00 | $11,316.00 |
| 896 | $ 6,122.00 | $ 6,094.00 | $12,187.00 |
| 960 | $ 6,557.00 | $6,529.00 | $13,057.00 |
| 1024 | $ 6,993.00 | $ 6,965.00 | $13,928.00 |

**Winn-Dixie Stores, Inc.  WK-54307V8**

| For AT&T Administrative Use Only |
|---|
| **Master Agreement No. 121087**<br>**Attachment No. 22053**<br>**Original Effective Date:  November 5, 2003**<br>**Amended Effective Date:** |

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

**Global and Canada PVC Installation Charge and PVC CIR Change Charge**
The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

**Global and Canada PVC Installation Charge**

| Per PVC | $25.00 |
|---|---|

**Global and Canada PVC CIR Change**

| Per PVC CIR Change | $25.00 |
|---|---|

**Canada PVC Recurring Charges**
The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

| Canada PVC Charges Table | | | |
|---|---|---|---|
| **PVC CIR  kbps** | **One-Way Half Channel PVC Monthly Charge** | **Asymmetrical Half Channel PVC Monthly Charge** | **Symmetrical Half Channel PVC Monthly Charge** |
| 4 | $    60.00 | $    30.00 | $    59.00 |
| 8 | $    75.00 | $    45.00 | $    88.00 |
| 16 | $    89.00 | $    59.00 | $  119.00 |
| 32 | $  121.00 | $    91.00 | $  178.00 |
| 48 | $  129.00 | $    99.00 | $  195.00 |
| 56 | $  153.00 | $  123.00 | $  245.00 |
| 64 | $  153.00 | $  123.00 | $  245.00 |
| 128 | $  275.00 | $  245.00 | $  488.00 |
| 192 | $  397.00 | $  367.00 | $  733.00 |
| 256 | $  519.00 | $  489.00 | $  977.00 |
| 320 | $  641.00 | $  611.00 | $ 1,221.00 |
| 384 | $  763.00 | $  733.00 | $ 1,465.00 |
| 448 | $  886.00 | $  856.00 | $ 1,709.00 |
| 512 | $1,008.00 | $  978.00 | $ 1,953.00 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

<table>
<tr><td>For AT&T Administrative Use Only</td></tr>
<tr><td align="right">Master Agreement No. 121087<br>Attachment No. 22053<br>Original Effective Date: November 5, 2003<br>Amended Effective Date:</td></tr>
</table>

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

#### Canada PVC Charges Table

| PVC CIR  kbps | One-Way Half Channel PVC Monthly Charge | Asymmetrical Half Channel PVC Monthly Charge | Symmetrical Half Channel PVC Monthly Charge |
|---|---|---|---|
| 576 | $ 1,128.00 | $ 1,098.00 | $ 2,198.00 |
| 640 | $1,251.00 | $ 1,221.00 | $ 2,441.00 |
| 704 | $ 1,374.00 | $1,344.00 | $ 2,686.00 |
| 768 | $ 1,496.00 | $ 1,466.00 | $ 2,929.00 |
| 832 | $ 1,618.00 | $ 1,588.00 | $ 3,174.00 |
| 896 | $ 1,739.00 | $ 1,709.00 | $ 3,418.00 |
| 960 | $ 1,862.00 | $ 1,832.00 | $ 3,662.00 |
| 1024 | $ 1,984.00 | $ 1,954.00 | $ 3,906.00 |

#### Enterprise Permanent Virtual Circuits
The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

#### Enterprise PVC Monthly Charges

| Enterprise PVC CDR   Kbps | Symmetrical Enterprise PVC Monthly Charge |
|---|---|
| 4 | $   78.00 |
| 8 | $   98.00 |
| 16 | $   127.00 |
| 32 | $   227.00 |
| 48 | $   309.00 |
| 56 | $   350.00 |
| 64 | $   366.00 |
| 128 | $   588.00 |
| 192 | $   828.00 |
| 256 | $ 1,065.00 |
| 320 | $ 1,331.00 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

<table>
<tr><td>For AT&T Administrative Use Only</td></tr>
<tr><td align="right">Master Agreement No. 121087<br>Attachment No. 22053<br>Original Effective Date: November 5, 2003<br>Amended Effective Date:</td></tr>
</table>

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

| Enterprise PVC CDR   Kbps | Symmetrical Enterprise PVC Monthly Charge |
|---|---|
| 384 | $ 1,596.00 |
| 448 | $ 1,848.00 |
| 512 | $ 2,089.00 |
| 576 | $ 2,128.00 |
| 640 | $ 2,213.00 |
| 704 | $ 2,307.00 |
| 768 | $ 2,414.00 |
| 832 | $ 2,453.00 |
| 896 | $ 2,490.00 |
| 960 | $ 2,554.00 |
| 1024 | $ 2,566.00 |
| 1536 | $ 2,766.00 |
| 2000 | $ 3,030.00 |
| 3000 | $ 3,196.00 |
| 4000 | $ 4,262.00 |
| 5000 | $ 5,327.00 |
| 6000 | $ 6,491.00 |
| 7000 | $ 7,456.00 |
| 8000 | $ 8,520.00 |
| 9000 | $ 9,586.00 |
| 10000 | $ 10,651.00 |
| 15000 | $15,375.00 |
| 20000 | $20,500.00 |
| 25000 | $25,625.00 |
| 30000 | $30,750.00 |
| 35000 | $35,874.00 |
| 40000 | $41,000.00 |

AT&T reference date:  04/20/2003

**Winn-Dixie Stores, Inc.   WK-54307V8**

<table>
<tr><td>For AT&T Administrative Use Only</td></tr>
<tr><td>Master Agreement No. 121087<br>Attachment No. 22053<br>Original Effective Date: November 5, 2003<br>Amended Effective Date:</td></tr>
</table>

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

**Enterprise PVC CDR Change Charge and PVC Installation Charge**

The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

#### Enterprise PVC CDR Change Charge

|  | Change Charge |
|---|---|
| Per Enterprise PVC CDR Change | $ 25.00 |

#### Enterprise PVC Installation Charge

|  | Installation Charge |
|---|---|
| Per Enterprise PVC | $ 25.00 |

**AT&T International End-to-End Frame Relay Service (FRS)**

For International End-to-End FRS, Service Guide Schedule B rates and the Schedule B Country Availability Matrix will apply to applicable service components.  Note: Not all speeds are available in all countries.

**AT&T IP Enabled Frame Relay-International Service (IPFR-I)**

For AT&T IP Enabled Frame Relay-International Service, Service Guide Schedule B rates and the Key will apply to applicable service components.  Note: Not all speeds are available in all countries.

**7.5  ACCUNET T1.5 Service Inter Office Channel**

The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

| ACCUNET T1.5 Service<br>Inter Office Channel Monthly Charges | | |
|---|---|---|
| Mileage | Fixed | Per Mile |
| 1 – 300 | $684.00 | $0.00 |
| 301+ | $260.00 | $1.57 |
| | | AT&T reference date:  N/A |

**7.6  ACCUNET T45 Service InterOffice Channel**

The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

| ACCUNET T45 Service<br>Interoffice Channel Monthly Charges | | |
|---|---|---|
| Mileage | Fixed | Per Mile |
| 1 – 300 | $10,000.00 | $12.00 |
| 301+ | $3,100.00 | $35.00 |
| | | AT&T reference date:  N/A |

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

Master Agreement No. 121087
Attachment No. 22053
Original Effective Date:  November 5, 2003
Amended Effective Date:

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

## AT&T Service Order Attachment-Voice/Data Services

#### 7.7  AT&T SONET OC12 Service

The following rates apply in lieu of the corresponding rates set forth in the Service Guide, and are stabilized for the Attachment Term.

| SONET OC12 Service InterOffice Channel Monthly Charges | | |
|---|---|---|
| Mileage | Fixed | Per Mile |
| 1-50 | $21,500.00 | $0.00 |
| 51-100 | $10,500.00 | $200.00 |
| 101-500 | $9,600.00 | $190.00 |
| 501-1,000 | $9,600.00 | $160.00 |
| 1,001+ | $0.00 | $150.00 |
| | AT&T reference date:  N/A | |

#### 7.8  AT&T Asynchronous Transfer Mode Service

The recurring and non-recurring charges for the following AT&T ATM Services under this Attachment shall be as specified in the Service Guide and are stabilized for the Attachment Term.

- Domestic ATM and Local ATM, with a rate effective date of 4/20/2003
- International Bilateral ATM Canada with a rate effective date of 03/01/2003
- International End-to-End ATM with a rate effective date of 11/22/2002

The recurring and non-recurring charges for Domestic FRS/ATM Interworking, Local FRS/ATM Interworking, and International Service Interworking Ports and PVCs are the same as Domestic FRS, Local FRS, and International FRS, respectively, as specified in this Attachment or the AT&T Business Service Guide for Frame Relay Service.

#### 7.9  AT&T Managed Internet Service – The following rates are stabilized for the Attachment Term.

NOTE:  The minimum payment period for MIS Service Components is 12 months.  Customer will be obligated to pay the remaining scheduled charges for any MIS Service component that does not remain installed for at least 12 months.

#### 7.9.1  Monthly Fees:

**A.  Tiered Service**

**56/64 Kbps**

| Speed | MIS Monthly Service Fee | MIS w/Managed Router Monthly Service Fee |
|---|---|---|
| 56/64 Kbps | $745 | $845 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:**

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

**TIERED T-1 and NxT-1**

| Access Method | Speed | MIS Monthly Service Fee | MIS w/Managed Router Monthly Service Fee |
|:---:|:---:|:---:|:---:|
| T-1 | 128 Kbps | $895 | $995 |
| T-1 | 256 Kbps | $1,120 | $1,220 |
| T-1 | 384 Kbps | $1,340 | $1,440 |
| T-1 | 512 Kbps | $1,560 | $1,660 |
| T-1 | 768 Kbps | $1,630 | $1,730 |
| T-1 | 1024 Kbps | $1700 | $1800 |
| T-1 | 1.544 Mbps | $1,870 | $1,970 |
| 2xT-1 | 3 Mbps | $3,400 | $3,900 |
| 3xT-1 | 4.5 Mbps | $4,400 | $4,900 |
| 4xT-1 | 6 Mbps | $5,000 | $5,500 |

**Tiered T-3**

| Access Method | Speed | MIS Monthly Service Fee | MIS w/Managed Router Monthly Service Fee |
|:---:|:---:|:---:|:---:|
| T-3 | 6 Mbps | $5,000 | $5,500 |
| T-3 | 10 Mbps | $7,350 | $8,350 |
| T-3 | 15 Mbps | $9,850 | $10,850 |
| T-3 | 20 Mbps | $12,350 | $13,350 |
| T-3 | 25 Mbps | $14,900 | $15,900 |
| T-3 | 30 Mbps | $17,400 | $18,400 |
| T-3 | 35 Mbps | $19,950 | $20,950 |
| T-3 | 40 Mbps | $22,450 | $23,450 |
| T-3 | 45 Mbps | $25,000 | $26,000 |

**Tiered OC-3**

| Speed | MIS Monthly Service Fee | MIS w/Managed Router Monthly Service Fee |
|:---:|:---:|:---:|
| 155 Mbps | $71,200 | $72,200 |

**Tiered OC-12**

| Speed | MIS Monthly Service Fee | MIS w/Managed Router Monthly Service Fee |
|:---|:---|:---|
| 622 Mbps | $202,800 | $207,800 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

<table>
<tr><td>For AT&T Administrative Use Only</td></tr>
</table>

| | |
|---|---|
| | **Master Agreement No. 121087** |
| If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements) | **Attachment No. 22053** |
| | **Original Effective Date:  November 5, 2003** |
| | **Amended Effective Date:** |

### AT&T Service Order Attachment-Voice/Data Services

**B.  Burstable Service**

**BURSTABLE T-1**

| Sustained Usage | MIS Monthly Service Fee | MIS w/Managed Router Monthly Service Fee |
|---|---|---|
| up to 128.0 Kbps | $1,080 | $1,180 |
| 128.01 - 256 Kbps | $1,350 | $1,450 |
| 256.01 - 384 Kbps | $1,610 | $1,710 |
| 384.01 - 512 Kbps | $1,880 | $1,980 |
| 512.01 Kbps - 1.544 Mbps | $2,250 | $2,350 |

**Burstable T-3**

| Sustained Usage | MIS Monthly Service Fee | MIS w/Managed Router Monthly Service Fee |
|---|---|---|
| up to 6.0 Mbps | $6,050 | $6,550 |
| 6.01 - 7.5 Mbps | $7,150 | $8,150 |
| 7.51 - 9.0 Mbps | $8,250 | $9,250 |
| 9.01 - 10.5 Mbps | $9,150 | $10,150 |
| 10.51 - 12.0 Mbps | $10,050 | $11,050 |
| 12.01 - 13.5 Mbps | $10,950 | $11,950 |
| 13.51 - 15.0 Mbps | $11,850 | $12,850 |
| 15.01 - 16.5 Mbps | $12,600 | $13,600 |
| 16.51 - 18.0 Mbps | $13,350 | $14,350 |
| 18.01 - 19.5 Mbps | $14,100 | $15,100 |
| 19.51 - 21.0 Mbps | $14,850 | $15,850 |
| 21.01 - 45.0 Mbps | $30,050 | $31,050 |

**Flexible Bandwidth Billing Option - Burstable T-3**

| Tiered Bandwidth Minimum Commitment | MIS Monthly Fee | MIS with Managed Router Monthly Fee | Incremental Usage Fee Per Mbps |
|---|---|---|---|
| 2 Mbps | $2,350 | $2,850 | $1,410 |
| 3 Mbps | $3,400 | $3,900 | $1,360 |
| 4 Mbps | $4,300 | $4,800 | $1,290 |
| 5 Mbps | $4,500 | $5,000 | $1,080 |
| 6 Mbps | $5,000 | $5,500 | $1,000 |
| 7 Mbps | $5,650 | $6,650 | $969 |
| 8 Mbps | $6,250 | $7,250 | $938 |
| 9 Mbps | $6,850 | $7,850 | $913 |
| 10 Mbps | $7,350 | $8,350 | \\$882 |
| 15 Mbps | $9,850 | $10,850 | $788 |
| 20 Mbps | $12,350 | $13,350 | $741 |
| 25 Mbps | $14,900 | $15,900 | $715 |
| 30 Mbps | $17,400 | $18,400 | $696 |
| 35 Mbps | $19,950 | $20,950 | $684 |
| 40 Mbps | $22,450 | $23,450 | $674 |
| 45 Mbps | $25,000 | $26,000 | N/A |

**Winn-Dixie Stores, Inc.   WK-54307V8**

| For AT&T Administrative Use Only |
|---|
| **Master Agreement No. 121087**<br>**Attachment No. 22053**<br>**Original Effective Date:  November 5, 2003**<br>**Amended Effective Date:** |

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

**Burstable OC-3**

| Sustained Usage | MIS Monthly Service Fee | MIS w/Managed Router Monthly Service Fee |
|---|---|---|
| Up to 35.0 Mbps | $23,950 | $24,950 |
| 35.01 to 45.0 Mbps | $30,050 | $31,050 |
| 45.01 to 55.0 Mbps | $35,050 | $36,050 |
| 55.01 to 65.0 Mbps | $40,100 | $41,100 |
| 65.01 to 75.0 Mbps | $45,150 | $46,150 |
| 75.01 to 85.0 Mbps | $50,200 | $51,200 |
| 85.01 to 100.0 Mbps | $57,750 | $58,750 |
| 100.01 to 125.0 Mbps | $70,350 | $71,350 |
| 125.01 to 155.0 Mbps | $85,450 | $86,450 |

**Flexible Bandwidth Billing Option - Burstable OC-3**

| Tiered Bandwidth Minimum Commitment | MIS Monthly Fee | MIS with Managed Router Monthly Fee | Incremental Usage Fee Per Mbps |
|---|---|---|---|
| Up to 35 Mbps | $19,950 | $20,950 | $684 |
| 40 Mbps | $22,450 | $23,450 | $674 |
| 45 Mbps | $25,000 | $26,000 | $667 |
| 60 Mbps | $31,300 | $32,300 | $626 |
| 70 Mbps | $35,500 | $36,500 | $609 |
| 80 Mbps | $39,700 | $40,700 | $596 |
| 90 Mbps | $43,900 | $44,900 | $585 |
| 100 Mbps | $48,100 | $49,100 | $577 |
| 120 Mbps | $56,500 | $57,500 | $565 |
| 144 Mbps | $64,900 | $65,900 | $551 |
| 155 Mbps | $71,200 | $72,200 | N/A |

**Burstable OC-12**

| Sustained Usage | MIS Monthly Service Fee | MIS w/Managed Router Monthly Service Fee |
|---|---|---|
| Up to 75.0 Mbps | $45,150 | $46,150 |
| 75.01  to 150.0 Mbps | $75,000 | $76,000 |
| 150.01 to 225.0 Mbps | $104,850 | $105,850 |
| 225.01 to 300.0 Mbps | $134,650 | $135,650 |
| 300.01 to 375.0 Mbps | $160,150 | $161,150 |
| 375.01 to 450.0 Mbps | $185,650 | $186,650 |
| 450.01 to 525.0 Mbps | $210,850 | $211,850 |
| 525.01 to 622.0 Mbps | $243,400 | $244,400 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

<table>
<tr><td>For AT&T Administrative Use Only</td></tr>
<tr><td>

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:**
</td></tr>
</table>

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

**Flexible Bandwidth Billing Option - Burstable OC-12**

| Tiered Bandwidth Minimum Commitment | MIS Monthly Fee | MIS with Managed Router Monthly Fee | Incremental Usage Fee Per Mbps |
|---|---|---|---|
| Up to 70 Mbps | $35,500 | $36,500 | $609 |
| 80 Mbps | $39,700 | $40,700 | $596 |
| 90 Mbps | $43,900 | $44,900 | $585 |
| 100 Mbps | $48,100 | $49,100 | $577 |
| 120 Mbps | $56,500 | $57,500 | $565 |
| 144 Mbps | $64,900 | $65,900 | $551 |
| 155 Mbps | $71,200 | $72,200 | $541 |
| 200 Mbps | $83,900 | $88,900 | $503 |
| 250 Mbps | $98,050 | $103,050 | $471 |
| 300 Mbps | $112,200 | $117,200 | $449 |
| 350 Mbps | $126,400 | $131,400 | $433 |
| 400 Mbps | $140,550 | $145,550 | $422 |
| 450 Mbps | $154,700 | $159,700 | $413 |
| 500 Mbps | $168,850 | $173,850 | $405 |
| 550 Mbps | $183,000 | $188,000 | $399 |
| 600 Mbps | $197,150 | $202,150 | $394 |
| 622 Mbps | $202,800 | $207,800 | N/A |

**7.9.2  Installation Fees**

**Tele Installation**

| MIS Speed | MIS | MIS with Managed Router |
|---|---|---|
| 56 Kbps | $1,000 | $1,000 |
| 128 Kbps - 1.5 Mbps | $1,000 | $1,000 |
| NxT-1 (3.0 Mbps, 4.5 Mbps & 6.0 Mbps) | $2,500 | $2,500 |
| T-3 | $5,000 | N/A |
| OC-3, OC-12 | $10,000 | N/A |

**On-Site Installation**

| MIS Speed | MIS with Managed Router Only |
|---|---|
| 56 Kbps | $3,800 |
| 128 Kbps - 1.5 Mbps | $4,800 |
| NxT-1 (3.0 Mbps  –  6.0 Mbps) | $5,000 |
| T-3 | $5,000 |
| OC-3, OC-12, | $10,000 |

**AT&T/CUSTOMER PROPRIETARY**

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:**

If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)

### AT&T Service Order Attachment-Voice/Data Services

#### 7.9.3  Options

| | |
|---|---|
| Additional Primary DNS (available in increments of up to 15 zones with a maximum of 150 Kilobytes of zone file data) | $100 per DNS increment, per month |
| Additional Secondary DNS (available in increments of up to 15 zones with a maximum of 150 Kilobytes of zone file data) | $100 per DNS increment, per month |
| Outbound Mail Relay - monthly fee | $150 per domain per month |
| Outbound Mail Relay - installation fee | $100 per domain installation fee |

#### 7.10  Managed Firewall Services

#### 7.10.1  Monthly Fees

| Option | Monthly Service Fee List Price |
|---|---|
| **Router Based Firewall Option** | $350 |
| **Server Based Firewall Option** | $2,500 |

#### 7.10.2  Installation Fees

| Option | Tele-Installation Fee - List Price |
|---|---|
| **Router Based Firewall** | $2500 |
| **Server Based Firewall** | $5000 |

#### 7.10.3  Options

#### A.  Monthly Fees

| Server Based Firewall Options | Monthly Service Fees List Price |
|---|---|
| **Triple Homed Option** (DMZ) (Server Based) | $500 |
| **Double Homed Option** (Unprotected DMZ) | $0 |
| **URL Screening** (Websense) | |
| Managed Firewall URL Screening 100 User | $100.00 |
| Managed Firewall URL Screening 500 User | $350.00 |
| Managed Firewall URL Screening 1000 User | $500.00 |
| Managed Firewall URL Screening 3000 User | $900.00 |
| Managed Firewall URL Screening 5000 User | $1,250.00 |
| **Support For Customer Managed and Provided Software** | $0 |
| **100 Mb Ethernet Support -** Managed Firewall 100Mb Ethernet | $200.00 |
| **Support For Customer-Provided Strong Authentication Server** | $50.00 |
| **Managed Firewall - Support For Extranet** | $750.00 |
| **Managed Firewall - Support For Remote User VPN** | $0 |

**Winn-Dixie Stores, Inc.   WK-54307V8**

<table>
<tr><td colspan="2">For AT&T Administrative Use Only</td></tr>
<tr><td></td><td>Master Agreement No. 121087<br>Attachment No. 22053<br>Original Effective Date: November 5, 2003<br>Amended Effective Date:</td></tr>
</table>

**If this attachment is not executed by the customer by 04/30/2006, AT&T reserves the rights to withdraw this attachment. (Addendum also attached for further requirements)**

### AT&T Service Order Attachment-Voice/Data Services

**B.  Installation Fees**

| | Installation Fees List Price |
|---|---|
| **Server Based Firewall Options:** | |
| **Triple Homed Option** (DMZ) (Server Based) | $0 |
| **Double Homed Option** (Unprotected DMZ) | $200 |
| **URL Screening** (Websense) | |
| Managed Firewall URL Screening 100 User | $350.00 |
| Managed Firewall URL Screening 500 User | $350.00 |
| Managed Firewall URL Screening 1000 User | $350.00 |
| Managed Firewall URL Screening 3000 User | $350.00 |
| Managed Firewall URL Screening 5000 User | $350.00 |
| **Support For Customer Managed and Provided Software** | $500.00 |
| **100 Mb Ethernet Support - Managed Firewall 100Mb Ethernet** | $200.00 |
| **Support For Customer Provided Strong Authentication Server** | $250.00 |
| **Managed Firewall - Support for Extranet** | $500.00 |
| **Managed Firewall - Support for Remote User VPN** | $1000.00 |
| **Router Based Firewall Options:** | |
| Triple Homed Option | $500 |

**7.10.4  On-Site Maintenance Monthly Charges**

| Maintenance/Service Level Response Time | Monthly Service Charge* |
|---|---|
| 5 days/week, 8 hours/day, Next Business Day | Standard - available at no additional charge |
| 5 days/week, 8 hours/day, 4 Business Hours | $150.00 |
| 7 days/week. 8 hours/day Next Business Day | $300.00 |
| 7 days/week, 24 hours/day, 4 Business Hours | $500.00 |

**EXHIBIT C**

**Amended and Restated Addendum to**
**AT&T Service Order Attachment-Voice/Data Service**

**Winn-Dixie Stores, Inc.   WK-54307V8**

For AT&T Administrative Use Only

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:  _____**

**If this Addendum is not executed by the Customer by 4/30/2006, AT&T reserves the rights to withdraw this Addendum.**

## AT&T Service Order Attachment – Voice/Data Services
## Addendum

This is the Addendum to the Service Order Attachment Number 22053 by and between WINN-DIXIE STORES, INC. ("CUSTOMER", "You", or "Your"), a Florida corporation having a place of business at 5050 Edgewood Court, Jacksonville, FL  32254 and AT&T Corp., a New York corporation ("AT&T"), with offices at 55 Corporate Drive, Bridgewater, NJ  08807, on behalf of itself and its Affiliates.

CUSTOMER and AT&T hereby agree to the following Terms and Conditions, which are applicable to the Services/Offers Provided in the Service Order Attachment.

As a condition of AT&T's executing the Attachment, AT&T requires that Winn-Dixie first formally acknowledge, as part of a motion to assume a modified contract assumption motion before to be filed with the United States Bankruptcy Court, that AT&T's pre-petition claim is valid and that the dollar amount of the claim is as stated by AT&T.  AT&T agrees, as a condition to Winn-Dixie's filing and obtaining court approval of a motion to assume a modified contract with AT&T, (i) that Winn-Dixie shall not be required to pay the amount of the pre-petition claim of AT&T as cure under 11 U.S.C. § 365(b)(1)(A), (ii) that the requirements of 11 U.S.C. § 365(b)(1) are waived in full by AT&T, (iii) that the pre-petition claim of AT&T shall not have administrative expense status as a result of the assumption or for any other purpose, and (iv) that notwithstanding the assumption, the pre-petition claim of AT&T shall continue to have the status of a general unsecured claim and shall be treated under a plan of reorganization as a general unsecured claim.

1.   AT&T will bill Customer an amount equal to all credits received pursuant to Section 6.2.2 if Customer fails to satisfy the following requirements:

 1.   Customer incurs at least $2,900,000 in discounted MARC-eligible charges in the 12 month period immediately preceding the month in which the credit is to be applied.
 2.   DELETED
 3.   DELETED

In the event that Customer fails to satisfy this requirement, or if Customer discontinues this agreement prior to expiration of the Attachment Term, AT&T will bill the Customer, an amount equal to all credits received pursuant to Section 6.2.2.

2.   **Architecture and Provisioning of Winn-Dixie Network.**

 2.1.   **Flexible Design.**  AT&T shall implement and maintain the Winn-Dixie Network in conformance with the network architectural design set forth in the Network Architecture Document (Exhibit A), as such design may be changed if mutually agreed upon by both parties. The parties acknowledge that the architecture of the Winn-Dixie Network is likely to change during the course of its implementation and continued operation.

 2.2.   **Disclosure and Optimization of Engineering During the Circuit Ordering Process**

 AT&T will endeavor in good faith to assign each Remote Location to the best available AT&T POP and best available AT&T Frame Relay Switch so as to optimize availability and latency from the Remote Location to Customer's headquarters in Jacksonville, Florida.

 During the initial AT&T project managed network roll out phase, following receipt of an order for frame relay service at a Remote Location, but before installation, AT&T will disclose to Customer the remote circuit number, local Telephone Company servicing the Remote Location and the AT&T POP assignment for the remote location. If Customer believes the assignments of the Remote Location to either the AT&T POP or AT&T Frame Relay Switch are not appropriate, AT&T will offer alternatives, if any exist.  If an alternative exists and Customer requests that AT&T change an order to reprovision frame relay service at a Remote Location, additional charges may apply as specified in the Service Guide.  AT&T shall provide AT&T Frame Relay POP and Frame Relay Switch assignments on a monthly basis for the initial network implementation.  After the initial network implementation , AT&T shall provide the AT&T Frame Relay Pop and Switch assignments for subsequent orders ("Life Cycle Orders") as requested by customer.

**Winn-Dixie Stores, Inc.   WK-54307V8**

| |
|---|
| For AT&T Administrative Use Only |

**If this Addendum is not executed by the Customer by 4/30/2006, AT&T reserves the rights to withdraw this Addendum.**

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:  _____**

### AT&T Service Order Attachment – Voice/Data Services
### Addendum

**3.   Implementation of Winn-Dixie Network.**

**3.1.   Implementation Plan.**  AT&T and Customer will work together diligently to develop an implementation plan ("Implementation Plan") to be prepared by AT&T for the initial implementation of the of the Winn-Dixie Network. The parties shall cooperate in good faith to complete the Implementation Plan as soon as commercially feasible after the effective date of this Attachment, but in any event no later than thirty (30) days after such date.  The Implementation Plan will, without limitation, identify the quantities of Services/Offers provided and the Due Dates for each of Customer's locations within the Initial Design.

**3.2.   Completion of Implementation.**  AT&T shall use commercially reasonable efforts to complete the installation and implementation of the Winn-Dixie Network no later than June 30, 2004, subject to the terms of the Implementation Plan and provided that AT&T shall not be deemed responsible for any delay in completing installation by such date to the extent the delay is due to Customer's postponement, Customer's non-readiness, Customer's site conditions, services or products not supplied by AT&T, acts or omissions of Customer or any of Customer's agents, employees, or acts or omissions of a third party (that is not an agent or contractor of AT&T).

**4.   Training.**

**4.1.**   Upon Customers written request and to the extent that AT&T makes training generally available for a Service, AT&T shall provide appropriate training for Customer's personnel responsible for administering AT&T Services, including placing orders, reviewing invoices, and reporting interruptions and other troubles.  Training shall be provided at sites or through electronic or other means as agreed upon by the parties.  Each party shall be responsible for its own travel and lodging expenses.  AT&T shall offer to "train the trainers", so that Customer can retrain its employees, as necessary, to accommodate normal turnover among its employees.  Where reasonably practicable under the circumstances, the parties shall endeavor to complete training prior to the first availability of the Service component or service capability to which the training applies.  The foregoing shall apply to training on matters of administration, not technical training.  AT&T may charge Customer for training consistent with AT&T's general practice in relation to other customers of such Services.

**4.2.   Sessions.**  AT&T shall conduct group training sessions, as reasonably requested by customer in the use of AT&T's electronic billing system and AT&T's network monitoring tools for Customer's personnel at no additional cost to customer.

**5.   Periodic Re-evaluation of Price and Commitment.**  Upon Customer's written request, but not more than once in any rolling 12-month period and no later than the ninth month of any term year of Attachment, the parties will meet to discuss technological and marketplace developments, competitive service alternatives, the status of Customer's revenue/volume commitments compared to available traffic, and the pricing (taken as a whole) of the AT&T services provided under this Attachments compared to similarly-situated AT&T customers.  AT&T and Customer will cooperate in good faith efforts to develop a mutually agreeable proposal for revision to such attachments that will satisfy the concerns of both parties and comply with all applicable legal and regulatory requirements.  By way of example and not limitation, alternative proposals may include changes in rates, nonrecurring charges, revenue and/or volume commitments, discounts, the Attachment term and other provisions.  If the parties reach mutual agreement on an alternative, AT&T will prepare and file any necessary tariff revisions and/or the parties will sign a contractual amendment, or replacement Attachment(s), to implement any mutually agreeable alternative proposal, subject to all applicable legal and regulatory requirements.  This provision shall not apply to a change resulting from a decision by Customer to transfer portions of its traffic or projected growth to carriers other than AT&T.  This provision does not constitute a waiver of any charges, including shortfall charges, or any terms and conditions applicable to Customer prior to the time the parties mutually agree to amend or replace the Attachment(s).

**Winn-Dixie Stores, Inc.  WK-54307V8**

For AT&T Administrative Use Only

**If this Addendum is not executed by the Customer by 4/30/2006, AT&T reserves the rights to withdraw this Addendum.**

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:  _____**

## AT&T Service Order Attachment – Voice/Data Services
## Addendum

**6.  Digital Radio**

In the event that the AT&T Frame Relay Service does not perform in accordance with the applicable Service Level Agreements (SLAs) set forth in this Attachment and the Service Guide, customer will be eligible to receive credits as set forth in the applicable SLA.

**7.  Service Level Agreement for AT&T Domestic Frame Relay Service.**  The following AT&T Service Level Agreements are applicable to Customer under this Attachment to assist Customer in meeting its own internal network targets for Frame Relay Service (as shown in Exhibit B).  Although AT&T acknowledges that Customer has its own internal network targets, AT&T is not obligated to meet such targets.  Customer acknowledges and agrees that AT&T shall provide AT&T Domestic Frame Relay Service in accordance with the applicable Service Level Agreements set forth in the Service Guide and this Addendum.  AT&T will work diligently to achieve the AT&T Frame Relay SLA's set forth in the service guide and section 1 of this addendum in order to assist Winn Dixie in maximizing attainment of its internal network targets.

**1.  In lieu of the Transfer Delay Performance Objective Section specified in the AT&T Service Guide:**

The Transfer Delay performance objective for PVCs, except Enterprise PVCs, is no more than **60** milliseconds of delay (no more than 140 milliseconds of delay if the PVC is connected to Alaska, Hawaii, Puerto Rico or US Virgin Islands Port), measured round trip, excluding access and Customer Premises Equipment.  The Transfer Delay performance objective for Enterprise PVCs is no more than 120 milliseconds of delay (no more than 140 milliseconds of delay if the PVC is connected to Alaska, Hawaii, Puerto Rico, or US Virgin Islands Port), measured round trip, excluding access and Customer Premises Equipment.

"Delay" is the interval of time it takes for a test packet of data to travel from the Service Interfaces (SI) of an ingress Port to the SI of the egress Port for an unloaded PVC.  "Delay" for Enterprise PVCs is also measured from SI to SI which included both the unloaded Enterprise PVC connected to the ingress Port and the unloaded Enterprise PVC connected to the egress Port.  "Unloaded" refers to a PVC that is not being used to transmit any other data at the time the delay measurement is being performed.  "Round trip" refers to the time it takes for the test packet of data to travel from ingress Port SI to egress Port SI and back to the ingress Port SI using the same PVC(s).  NOTE:  For AT&T Frame Relay Plus Customers who have AT&T provided access lines, "Delay" is measured from DSU to DSU, and "Round trip" refers to the time it takes the test packet to travel from the ingress DSU to the egress DSU and back to the ingress DSU.

If the Customer reports a PVC, except for Enterprise PVCs, delay problem and AT&T's testing verifies that the delay exceeds 60 milliseconds (or, if applicable, 140 milliseconds) round trip and AT&T fails to remedy the problem within **15** days, the Customer will be entitled to a credit in an amount equal to one month's discounted Monthly Charge for such PVC for each month (or part of a month) thereafter that the problem continues unremedied.

If the Customer reports an Enterprise PVC delay problem and AT&T's testing verifies that the delay exceeds 120 milliseconds (or, if applicable, 140 milliseconds) round trip and AT&T fails to remedy the problem within **15** days, the Customer will be entitled to a credit based on the number of Enterprise PVCs which are affected by the delay problem.  The Transfer Delay Credit applies for each Enterprise PVC experiencing a delay problem.  To determine the Transfer Delay Credit multiply the discounted Monthly Charge for each affected Enterprise PVC by the Transfer Delay Credit Percentage.  The Transfer Delay Credit Percentage is calculated as follows:

| Transfer Delay Credit Percentage | = Total Egress Site Enterprise PVCs |
|---|---|
| | (Total Enterprise PVCs - Ingress Site) |

Winn-Dixie Stores, Inc.    WK-54307V8

For AT&T Administrative Use Only

**If this Addendum is not executed by the Customer by 4/30/2006, AT&T reserves the rights to withdraw this Addendum.**

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date: November 5, 2003**
**Amended Effective Date: _____**

### AT&T Service Order Attachment – Voice/Data Services
### Addendum

The "Total Egress Site Enterprise PVCs" is the total number of Enterprise PVCs connected to an egress Port to which the Customer is experiencing a delay problem when transmitting from the Enterprise PVC connected to the ingress Port.  The "Total Enterprise PVCs" is the total number of Enterprise PVCs for the Customer.  The "Ingress Site" is the Enterprise PVC from which the Customer is transmitting when experiencing a delay problem.

Example:  A Customer has in service Enterprise PVCs at three locations:

| Customer Location | Enterprise PVC CDR | Monthly Charge |
|---|---|---|
| New York, New York | 64 kbps | $340.00 |
| Chicago, Illinois | 64 kbps | $340.00 |
| Los Angeles, California | 128 kbps | $549.00 |

The Customer reports a delay problem when transmitting from New York to Los Angeles.  AT&T confirms the delay from New York to Los Angeles is greater than 120 milliseconds and does not correct the problem within **15** days.

| | |
|---|---|
| Total Egress Site Enterprise PVCs | = 1 (Los Angeles) |
| Total Enterprise PVCs | = 3 (New York, Chicago and Los Angeles) |
| Ingress Site | = 1 (New York) |
| Transfer Delay Credit Percentage | = 1/(3-1) = 50% |
| 50% * discounted Monthly Charge for New York Enterprise PVC: | = 50% * $340.00 = $170.00 |
| 50%* discounted Monthly Charge for Los Angeles Enterprise PVC: | = 50% * $549.00 = $274.50 |
| Total Transfer Delay Credit | = ($170.00 + $274.50) = $444.50 |

The Customer must release the PVC(s) and provide access to the Customer's premises as required for testing by AT&T and to fix the trouble.

2.    **In lieu of the Data Delivery Ratio (DDR) Performance Objective Section specified in the AT&T Service Guide:**

99.99% of the frames received from the Customer's ingress Port will be delivered to the Customer's egress Port provided the Customer (1) is transmitting the frames within the CIR of the PVC or the CDR of the Enterprise PVC; (2) is not marking the frames "Discard Eligible"; and (3) has not oversubscribed the egress Port (i.e., the sum of the CIRs and CDRs terminating at an egress Port cannot exceed two times the egress Port speed).

If the Customer reports a PVC data delivery problem and AT&T's testing verifies that the DDR, as defined above, is less than 99.99%, and AT&T fails to remedy the problem within **15** days, the Customer will be entitled to a credit in an amount equal to one month's discounted Monthly Charge for such PVC for each month (or part of a month) thereafter that the problem continues unremedied.  The Customer must release the PVC for testing by AT&T and to fix the trouble.

**Winn-Dixie Stores, Inc.   WK-54307V8**

**If this Addendum is not executed by the Customer by 4/30/2006, AT&T reserves the rights to withdraw this Addendum.**

For AT&T Administrative Use Only

**Master Agreement No. 121087**
**Attachment No. 22053**
**Original Effective Date:  November 5, 2003**
**Amended Effective Date:  _____**

## AT&T Service Order Attachment – Voice/Data Services Addendum

3.   **In lieu of the SLA Credit Section specified in the AT&T Service Guide:**

**Credits**

Calculations for the following Time To Restore (TTR), Transfer Delay, Data Delivery Ratio (DDR) and Network Availability performance objectives will be based on troubles reported by the Customer using AT&T's designated web-based interfaces, or AT&T's designated alternative reporting procedures if the designated web-based interfaces are inaccessible.  The performance objectives which follow apply only to Domestic Ports, Regional Access Ports, Domestic PVCs, Regional PVCs, Interstate IntraLATA PVCs and Enterprise PVCs and the references to Ports and PVCs following means Domestic Ports, Regional Access Ports, Domestic PVCs, Regional PVCs, Interstate IntraLATA PVCs and Enterprise PVCs.

In order to receive credit for AT&T's failure to meet the performance objectives, the Customer must request the credit in writing within 30 days of the last day in the calendar month in which the failure occurred.

A PVC or Port can only receive one credit during any calendar month.  PVCs that receive a credit for failure to meet TTR, Transfer Delay or DDR performance objectives, will not be included in the credit calculation for Network Availability.  Unless otherwise specifically set forth in the performance objective description, AT&T is not responsible for failure to meet performance objectives for any of the following reasons:  (1) the negligence of the Customer or others authorized by the Customer to use FRS, (2) interruptions or delays due to the failure of power, equipment, services or systems not provided by AT&T, (3) interruptions or delays due to access lines or Customer Premises Equipment whether provided by AT&T or others (except as specifically set forth in the On Time Provisioning Performance Objective, Time to Restore Performance Objective, and Transfer Delay Performance Objective), (4) interruptions or delays during any period in which AT&T or its agents are not afforded access to the premises where access lines associated with the Services are terminated, (5) interruptions or delays during any period when the Customer or User has released a Service(s) to AT&T for maintenance or rearrangement purposes or for the implementation of a Customer order, (6) interruptions or delays during any period when the Customer elects not to release the Service(s) for testing and/or repair and the Customer continues to use Service, (7) interruptions not reported to AT&T or where there is a trouble reported, but no trouble found, or, (8) interruptions or delays due to labor difficulties, governmental orders, civil commotion, acts of God and other circumstances beyond AT&T's reasonable control.

AGREED:
CUSTOMER:  Winn-Dixie Stores, Inc.

By: _____
       (Authorized Signature)

_____
(Typed or Printed Name)

_____
(Title)

_____
(Date)

AGREED:
AT&T Corp.

By: _____
       (Authorized Signature)

_____
(Typed or Printed Name)

_____
(Title)

_____
(Date)

**EXHIBIT D**

**ORDER APPROVING ASSUMPTION OF
MODIFIED AGREEMENTS WITH AT&T CORP.**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER APPROVING**
**ASSUMPTION OF MODIFIED AGREEMENTS WITH AT&T CORP.**

These cases came before the Court for hearing on April 6, 2006, upon the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order under 11 U.S.C. §§ 105 and 365 and Fed. R. Bankr. P. 6006 approving the assumption of modified agreements with AT&T Corp. ("AT&T") and granting related relief (the "Motion").[1] The Court has read the Motion and considered the representations of counsel. Based upon the representations of counsel and without objection by the United States Trustee or any other interested parties, it is

ORDERED AND ADJUDGED THAT:

1.      The Motion is granted.

2.      The Prepetition Agreements as modified by the Postpetition Amendments substantially in the form attached to the Motion (the "Modified Agreements") are assumed under 11 U.S.C. § 365(a).

3.      By agreement with AT&T, all applicable requirements of 11 U.S.C. § 365(b) are waived.

---

[1]      All capitalized terms not otherwise defined in this order shall have the meaning ascribed to them in the Motion.

4.      AT&T's prepetition claim in the amount of $1,129,757.90, evidenced by proof of claim no. 833, is allowed in full as a prepetition unsecured non-priority claim (the "Prepetition Claim").

5.      By agreement with AT&T, the Debtors shall not be required to pay the Prepetition Claim as cure under 11 U.S.C. § 365(b).  Notwithstanding the assumption of the Modified Agreements, the Prepetition Claim shall retain the status of a prepetition unsecured non-priority claim and shall be treated as such under the Debtors' plan of reorganization.

6.      Notwithstanding any provisions to the contrary in Fed. R. Bankr. P. 6006, this Order shall take effect immediately upon entry.

Dated _____, 2006 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

2