UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER APPROVING DEBTORS' (A) SALE OF PHARMACEUTICAL ASSETS FREE AND CLEAR OF LIENS AND CLAIMS AND (B) GRANTING RELATED RELIEF

These cases came before the Court on the motion (Docket No. 6556) of Winn Dixie Stores, Inc. and twenty three of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363 and 554(A) and Fed. R. Bankr. P. 6004 (a), authorizing the Debtors to close stores and sell merchandise including pharmaceutical assets located at the Closing Stores[1], including the assets described in the asset purchase agreement attached as Exhibit A (the "Purchase Agreement), free and clear of liens, claims, interests and encumbrances to CVS Corporation (by or through existing or newly formed wholly owned subsidiary corporations or limited liability companies) (the "Purchaser") and (b) granting related relief (the "Motion").  The Court held a hearing on the Motion on March 23, 2006 to approve the sale (the "Sale Hearing"). The Court has reviewed the Motion and heard the representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:

---

[1] All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Motion.

A.    This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B.    The Debtors solicited the highest or otherwise best offer for the assets described in the Purchase Agreement (the "Pharmaceutical Assets"), in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 21, 2005 (the "Bidding Procedures"). An Auction for the Pharmaceutical Assets was held on March 23, 2006 at 9:00 a.m. (the "Auction"). At the Auction, the Purchaser submitted the final bid of $260,000, representing the highest or otherwise best offer received for the Pharmaceutical Assets.

C.    The Debtors have provided interested parties (including all parties asserting claims or interests in the Pharmaceutical Assets, if any) with proper notice of the Motion, the Sale Hearing and the Auction, in accordance with 11 U.S.C. §§ 102(1), 105(a) and 363, Fed. R. Bankr. P. 2002(a) and 6004(a) and Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

D.    The Debtors marketed the Pharmaceutical Assets and conducted the sale process in compliance with the Bidding Procedures, the Bankruptcy Code and all other Orders entered in these cases. The bidding on the Pharmaceutical Assets and the Auction was conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make the highest or otherwise best offer for the Pharmaceutical Assets. In their sound business judgment, the Debtors determined that the bid submitted by the Purchaser at the Auction represented the highest or otherwise best offer for the Pharmaceutical Assets.

E.      The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A, and all related documents, and the sale of the Pharmaceutical Assets has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

F.      The Debtors have good business reasons to sell the Pharmaceutical Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

G.      Neither the Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

H.      The Debtors and the Purchaser proposed, negotiated and entered into the Purchase Agreement, without collusion, in good faith and at arms' length bargaining positions.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

I.      The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the protections afforded by that section.

J.      The consideration the Purchaser is providing to the Debtors for the Pharmaceutical Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Pharmaceutical Assets; and (iii) constitutes reasonably equivalent value.

K.      The Debtors have provided notice of this transfer of the Pharmaceutical Assets, as required by applicable state and federal law.

L.      The Debtors' transfer of the Pharmaceutical Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Pharmaceutical

Assets. The Debtors' transfer of the Pharmaceutical Assets to the Purchaser vests the Purchaser with good and valid title in and to the Pharmaceutical Assets, free and clear of any liens, claims, encumbrances, pledges, mortgages, security interests, charges, options or other interests of any kind or nature. The only known claim or interest in the Pharmaceutical Assets (other than the Debtors) is that of Wachovia Bank, National Association, as Administrative Agent and Collateral Agent for itself ("Agent") and the other financial institutions from time to time parties to the Credit Agreement dated as of February 23, 2005, as may be amended or modified (collectively, "Lenders" and together with Agent, collectively, the "DIP Lender"). The DIP Lender consents to sale of the Pharmaceutical Assets on the terms set forth in this Order.

M.    The DIP Lender is adequately protected because the Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Pre petition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

N.    The Purchaser will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Pharmaceutical Assets by virtue of the transfer of the Pharmaceutical Assets to the Purchaser. The Purchaser will not be deemed, as

a result of any action taken in connection with the purchase of the Pharmaceutical Assets, to be a successor to the Debtors or to have, de facto or otherwise, merged with or into the Debtors.

O.     The Court's approval of the Purchase Agreement is in the best interests of the Debtors, their estates and their creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted.

2.     The Debtors provided adequate notice of the Motion, the Bidding Procedures, the Auction and the Sale Hearing and complied with any applicable state and federal law regarding notice of their transfer of the Pharmaceutical Assets.

3.     All objections to the entry of this order or to the relief granted and requested in the Motion, that have not been withdrawn, waived or settled at or before the Sale Hearing, are denied and overruled on the merits.

4.     The Purchase Agreement is approved in all respects. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized (subject to applicable closing conditions set forth in the Purchase Agreement), to consummate the sale including transferring and conveying the Pharmaceutical Assets to the Purchaser, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

5.     Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Purchase Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement. The Debtors are authorized to take all actions necessary for the purpose of

assigning, transferring, granting, conveying, and conferring the Pharmaceutical Assets to Purchaser.

6.     Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Purchase Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

7.     The Debtors will transfer the Pharmaceutical Assets to the Purchaser upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f). The only known Claims and/or Interests are those of the senior liens and superpriority administrative claims of the DIP Lender. The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender will attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

8.     The Purchaser will  not be liable for any Claims and/or Interests against the Debtors or the Pharmaceutical Assets, and the Purchaser will have no successor, common control or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors under or by reason of any theory at law or equity.

9.     The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Financing Order and the Loan Documents.

10.     The Purchaser provided the Debtors with reasonably equivalent value and fair consideration for the Pharmaceutical Assets under the Bankruptcy Code and applicable non-bankruptcy law, and acted in a non-collusive, fair and good faith manner. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

11.     Upon closing of the sale of the Pharmaceutical Assets in accordance with the Purchase Agreement and this Order, the Purchaser will be deemed to have acted in good faith in purchasing the Pharmaceutical Assets under the Purchase Agreement as that term is used in 11 U.S.C. § 363(m) and the Purchaser will be entitled to the protections afforded a good faith purchaser pursuant to such section. For that reason, any reversal or modification of this Order on appeal will not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

12.     The Debtors' transfer of the Pharmaceutical Assets to the Purchaser will not result in (a) the Purchaser having any liability for any Claim and/or Interest against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

13.     Upon closing, this Order will constitute a complete general assignment, conveyance and transfer of the Pharmaceutical Assets and a bill of sale transferring good and marketable title in the Pharmaceutical Assets to Purchaser. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

14.     This Order is effective as a determination that upon Closing any and all Claims and/or Interests, if any, will be, and are, without further action by any person or

7

entity, unconditionally released, discharged and terminated with respect to the Pharmaceutical Assets.

15.    This Order is binding upon all entities who may be required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Pharmaceutical Assets.

16.    This Court retains exclusive jurisdiction to (a) enforce and implement the Purchase Agreement and any other agreements and instruments executed in connection with the Purchase Agreement, (b) compel delivery of possession of the Pharmaceutical Assets to the Purchaser, (c) resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, and (d) interpret, implement and enforce the provisions of this Order.

17.    The terms and provisions of the Purchase Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

18.    Upon Closing, all persons who hold Claims and/or Interests against the Debtors are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

19.    After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest

8

against any of the Pharmaceutical Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Claims and/or Interests, or (ii) for any period commencing before and concluding prior to or on Closing or any pre Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

20.    To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in this Order will control.

21.    Within ten days after closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f), Federal Rules of Bankruptcy Procedure.

22.    Notwithstanding Fed. R. Bankr. P. 6004(g) and 6006(d), this Order will take effect immediately upon entry.

Dated this 23 day of March, 2006 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to
serve a copy of this Order on all
parties who received copies of
the Motion.

00526574.DOC

## Exhibit A

## PHARMACY ASSETS PURCHASE AND SALE AGREEMENT

**THIS PHARMACY ASSETS PURCHASE AND SALE AGREEMENT** (this "2006 Agreement") is entered into and takes effect as of the 23rd day of March, 2006 (the "Effective Date"), by and between **WINN-DIXIE STORES, INC.,** a Florida corporation (on behalf of itself and its affiliate, Winn-Dixie Montgomery, Inc., a Florida corporation, hereinafter collectively or individually, as appropriate to the context, "Seller"), and **CVS Corporation,** a Delaware corporation (by or through existing or newly formed wholly-owned subsidiary corporations or limited liability companies designated by CVS Corporation to take title to specified "Assets" as such term is defined herein).

### RECITALS:

A.    Seller and Buyer entered into that certain Purchase and Sale Agreement on July 19, 2005 (the "2005 Agreement"), with regard to the sale and purchase of certain assets related to pharmacies formerly operated by Seller and located within Seller's former supermarket locations as identified on Exhibit A of the 2005 Agreement.

B.    Seller has announced that it will be divesting certain assets related to additional pharmacies and has issued an invitation to Buyer to bid for and, upon bankruptcy court approval, purchase such additional assets.

C.    Seller and Buyer wish to supplement the 2005 Agreement to memorialize the terms of which such additional assets will be purchased by Buyer, as hereinafter provided.

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

1.    Capitalized terms not defined in this 2006 Agreement will have the same meanings given to them in the 2005 Agreement.

2.    Exhibit A of the 2005 Agreement is hereby modified to include, as of the Effective Date, the pharmacy locations into the description of Pharmacies (the "Additional Pharmacies") set forth on Exhibit A-1 attached hereto.

3.    Buyer and Seller have agreed that the Records for the Additional Pharmacies will be valued at the amounts set forth on Exhibit A-1

4.    Notwithstanding any provision of the 2005 Agreement, (i) Seller agrees to indemnify Buyer against any liability related to or in any way arising from the Additional Pharmacies assets prior to the physical transfer to Buyer of the same, and (ii) Buyer agrees to indemnify Seller against any liability related to or in any way arising from the Additional Pharmacies assets from and after the physical transfer to Buyer of the same.

5.    Notwithstanding any provision of the 2005 Agreement, Buyer and Seller agree that there will be no adjustments to the Records Price after Seller's acceptance of the same.

6.    The terms of the 2005 Agreement are deemed to be incorporated in this 2006 Agreement as if set forth in full herein.  In the event of any inconsistency between or among

the terms of this 2006 Agreement and any provision of the 2005 Agreement or the pre-qualification letter issued to bidders for the Additional Pharmacies from Winn-Dixie dated March 13, 2006, then the terms of this 2006 Agreement shall first govern and control and then the terms of such pre-qualification letter shall govern and control.

7.     Neither party has any knowledge of any default of any covenants of the 2005 Agreement and the 2005 Agreement is unmodified, except to those terms as expressly set forth in this 2006 Agreement. This 2006 Agreement may be executed in counterparts, each of which, when so executed, will be deemed an original.   Any signature delivered by facsimile will be deemed to be an original signature.

8.     Notwithstanding any provision of the 2005 Agreement, the transfer and timing on delivery of funds, execution of a master closing statement, execution by Seller of a separate Bill of Sale to the entity identified by Buyer as its nominee, and other mechanics of inventory and delivery of assets shall be consistent with the actual practices utilized by Buyer and Seller in implementing the 2005 Agreement.

Pharmacy Assets Purchase and Sale Agreement
Winn-Dixie Stores, Inc./[Buyer's name]
March 2006

**SELLER:**

**WINN-DIXIE STORES, INC.,**

By: _____
Name: _____
Title: _____

**BUYER:**

**CVS Corporation, and affiliates**

By: _~~Dino M. DeThomas~~_
Name: _DINO  M.  DeThomAS_
Title: _V P  OF  REAL  Estate_

Pharmacy Assets Purchase and Sale Agreement
Winn-Dixie Stores, Inc./[Buyer's name]
March 2006

3
926050.2 3/20/06

**EXHIBIT 1**

| STORE NO. | ADDRESS | CITY | ST | ZIP | Latest 6 week Prescription average as of 3/1/06 | Closing Inventory @ cost as of 3/1/06 | Records Price |
|---|---|---|---|---|---|---|---|
| 71 | 412 N. VIRGINIA AVENUE | TIFTON | GA | 31794 | 942.7 | $ 207,347 | $ 30,000 |
| 149 | 1101 16TH AVENUE EAST | CORDELE | GA | 31015 | 605.0 | $ 140,784 | $ 25,000 |
| 659 | 5400 CLARK RD | SARASOTA | FL | 34233 | 215.8 | $ 100,013 | $ 40,000 |
| 725 | 4151 HANCOCK BRIDGE PARKWAY | NORTH FORT MYERS | FL | 33903 | 292.7 | $ 79,509 | $ 40,000 |
| 735 | 12628 EAST TAMIAMI TRAIL | NAPLES | FL | 34113 | 345.5 | $ 94,618 | $ 110,000 |
| 1571 | 811 E. LASALLE STREET | VILLE PLATTE | LA | 70586 | 429.0 | $ 78,134 | $ 5,000 |
| 1579 | 58045 BELLEVIEW ROAD | PLAQUEMINE | LA | 70764 | 952.3 | $ 159,187 | $ 5,000 |
| 2324 | 2300 SR 524 | COCOA | FL | 32926 | 465.5 | $ 102,787 | $ 5,000 |
| | | | | | | Total | $ 260,000 |