**Hearing Date: April 20, 2006, 1:00 p.m.**
**Objection Deadline: April 13, 2006, 4:00 p.m.**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
|  | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
|  | ) |
| Debtors. [1] | ) Jointly Administered |

## DEBTORS' MOTION FOR ORDER GRANTING FIFTH EXTENSION OF EXCLUSIVE PERIODS FOR FILING CHAPTER 11 PLANS AND OBTAINING ACCEPTANCES OF SUCH PLANS

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move for entry of an order under 11 U.S.C. § 1121(d), granting an additional extension of their exclusive periods for proposing and obtaining acceptances of one or more plans of reorganization (the "Motion").  In support of the Motion, the Debtors respectfully represent as follows:

### Background

1.     On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code").  The Debtors' cases are being jointly administered for procedural purposes only.

---

[1]   In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On March 1, 2005, pursuant to Section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases.  An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested in the Motion are sections 105(a) and 1121(d) of the Bankruptcy Code.

### Exclusive Periods

6.      Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose a plan of reorganization (the "Exclusive Proposal Period").  In addition, section 1121(c)(3) of the Bankruptcy Code provides that if a debtor proposes a plan within the Exclusive Proposal Period, it has the balance of 180 days after the commencement of the chapter 11 case to solicit acceptances of such plan (the "Exclusive Solicitation Period").  During the Exclusive Proposal Period and the Exclusive Solicitation Period (together, the "Exclusive Periods"), plans may not be proposed by any party in interest other than the debtor.

2

7.    Under section 1121(d) of the Bankruptcy Code, the Exclusive Periods may be extended for cause.  Pursuant to the Order Granting Fourth Extension of Exclusive Periods for Filing Chapter 11 Plans and Obtaining Acceptances of Such Plans dated March 9, 2006 (the "Fourth Exclusivity Order"), this Court extended the Debtors' Exclusive Periods, for the fourth time, to April 19, 2006 for the Exclusive Proposal Period and to June 21, 2006 for the Exclusive Solicitation Period.  Contemporaneously with the filing of this Motion, the Debtors have filed a Motion for Bridge Order Extending Exclusive Plan Proposal Period Pending Hearing on Motion for Further Extension (the "Bridge Motion"), noticed for hearing on April 6, 2006, requesting that the Debtors' Exclusive Proposal Period be extended by one day, to April 20, 2006, to enable the Debtors to preserve their Exclusive Proposal Period until this Motion could be heard on reasonable notice.[2]

8.    Since entry of the Fourth Exclusivity Order, the Debtors have continued to engage in discussions with the Creditors Committee regarding the appropriate structure of and terms for a plan of reorganization (the "Plan").  The Debtors have made continued progress with respect to a number of issues.  The most significant open issue remains the respective treatment of unsecured claims against each of the individual affiliated Debtors, or in the alternative, consideration of the substantive consolidation of the Debtors' estates (the "Substantive Consolidation Issue").  The Debtors and the Creditors Committee are working together to attempt to forge a compromise of the Substantive Consolidation Issue to permit the Debtors to file a plan of reorganization that will be consensual among the various creditor constituencies and avoid protracted litigation.  To this end, the Debtors have, over the last several months, provided representatives of the Creditors

---

[2]    In the event the Bridge Motion is denied, the Debtors intend to promptly seek to have this Motion heard at an emergency hearing to be held on a date that is prior to April 19, 2006 (the current date on which the Exclusive Proposal Period is scheduled to terminate).  Any such emergency motion will be noticed to all parties who were served with a copy of this Motion.

Committee with thousands of pages of documents and analyses regarding the Substantive

Consolidation Issue.  More recently, the Debtors have shared such information with

representatives of the indenture trustee for the Debtors' publicly traded notes, and are in the

process of sharing such information with representatives of an ad hoc committee of trade

creditors.

9.      Although discussions with respect to the Substantive Consolidation Issue are

continuing in earnest, the creditor constituencies have not yet reached a consensus on this issue.

Accordingly, the Debtors believe it to be likely that negotiations will not be completed prior to the

expiration of the current Exclusive Proposal Period.  The Debtors believe that the on-going

negotiations are constructive and, hopefully, will lead to a consensual resolution of the

Substantive Consolidation Issue.  In addition, prior to determining to seek an extension of the

Exclusive Periods, the Debtors consulted with representatives of the major creditor

constituencies, to obtain their views on the merits of seeking a further extension.  All of such

representatives indicated that they believed that an extension would enhance the chances that

creditors might reach a consensus on the Substantive Consolidation Issue.  The Debtors believe

that a consensual resolution, by minimizing the risk of litigation delay, would be in the best

interest of all of the parties.  For each of these reasons, the Debtors have filed this Motion

requesting a 70 day extension of the Exclusive Periods in order to provide additional time for (a)

the Creditors Committee to continue discussions among its members regarding the Substantive

Consolidation Issue, and (b) the Debtors and the Creditors Committee to thereafter have the

opportunity to reach a consensual resolution of the Substantive Consolidation Issue.

10.      During this extension period, the Debtors intend to continue refining their business

plan and providing representatives of the Creditors Committee (and others) with documents that

will help them in understanding the facts underlying the Substantive Consolidation Issue.  If at the

end of the 70 day extension, the Debtors and the Creditors Committee are not able to agree on a

Plan treatment of the Substantive Consolidation Issue, it is the Debtors' current intention to file a

plan of reorganization that proposes to compromise the Substantive Consolidation Issue on terms

that will be fair to all creditor constituencies and preferable to the risk, expense and delay

otherwise attendant to extended litigation of those issues.

### Relief Requested

11.      By this Motion, the Debtors request entry of an order further extending their

Exclusive Proposal Period for approximately 70 days, to and including June 29, 2006, and

extending their Exclusive Solicitation Period also for approximately 70 days, to and including

August 29, 2006.

### Applicable Authority

12.      Section 1121(d) of the Bankruptcy Code provides that this Court may extend the

Exclusive Periods for cause:

> On request of a party in interest made within the respective periods
> specified in subsections (b) and (c) of this section and after notice and a
> hearing, the court may for cause reduce or increase the 120-day period or
> the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

13.      The factors which Bankruptcy Courts examine in determining whether or not

cause exists to extend the Exclusive Periods include: (a) the size and complexity of the case; (b)

the debtor's progress in resolving issues facing the estate; and (c) whether an extension of time

will harm the debtor's creditors.  See, e.g., In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr.

S.D.N.Y. 1987); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re

Truck Extrusion Corp., 844 F.2d 1142, 1161 (5th Cir. 1988); In re Homestead Partners, Ltd.,

197 B.R. 706, 720 (Bankr. N.D. Ga. 1996) (among other factors, "sufficient 'cause' may exist when … the presence of complex legal issues has occupied much of the debtor's plan-making opportunity") (citations omitted).

14.     In evaluating these factors, the courts are given maximum flexibility to review the particular facts and circumstances presented in the cases before them.  See In re Public Serv. Co. of N.H., 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent ... [is] to promote maximum flexibility . . . ."); First Am. Bank of N.Y. v. SW. Gloves & Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986) (acknowledging flexibility that section 1121(d) provides); H.R. Rep. No. 95-595, at 232 (1978) ("[T]he bill allows the flexibility for individual cases that is unavailable today.") as reprinted in 1978 U.S.C.C.A.N. 5963, 6191; In re Hoffinger Indus., Inc., 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) (stating that not all factors "are relevant in every case" and court has discretion to "decide which factors are relevant and give the appropriate weight to each").

15.     In the Debtors' cases, the 70-day extensions of each of the Exclusive Periods are fully justified for the reasons set forth below:

(a)  The Debtors' cases are large and complex;

(b)  The Debtors have made good-faith progress toward proposing a plan; and

(c)  This requested extension will not prejudice the rights of creditors.

A.     The Debtors' cases are complex.

16.     Courts frequently grant an extension of the exclusive periods based upon the size and complexity of a chapter 11 case.  See In re Texaco, Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987); McLean, 87 B.R. at 834; Homestead 197 B.R. at 720 (recognizing the presence of complex legal issues as one of the bases for cause pursuant to 11 U.S.C. § 1121(d)) ; see also Gaines v. Perkins (In re Perkins), 71 B.R. 294, 296-97 (W.D. Tenn. 1987) (in case involving 100

creditors holding approximately 225 claims aggregating $10 million against estate valued at $13 million, district court affirmed bankruptcy court's enlargement of the exclusivity period and held that cause may exist if the case is unusually large).

17.    The Debtors' chapter 11 cases are large and complex.  Their financial structure consists of (a) an $800 million debtor-in-possession secured financing facility, (b) other prepetition secured obligations, (c) publicly-traded senior unsecured notes, with a remaining principal amount of approximately $300 million (due 2008), (d) trade, litigation and other general unsecured liabilities and (e) publicly-held equity securities at the parent level.  There are thousands of creditors and other parties in interest in these cases -- claim bar date notices were sent to in excess of 290,000 parties in interest.

18.    Winn-Dixie, a publicly-owned Florida corporation, is the ultimate parent of a group of companies that includes the twenty-four Debtors in these cases.  The Debtors conduct business through their corporate headquarters in Jacksonville, Florida and operate grocery stores and other facilities throughout the Southeast United States.  The Debtors also have affiliates in the Bahamas, which are not involved in these cases.

19.    In sum, the sheer size and complexity of the Debtors' businesses and chapter 11 cases constitute cause to extend the Exclusive Periods.  Although the Debtors have previously been granted four extensions of the Exclusive Periods, the Debtors submit that the further extension now being sought is reasonable and appropriate given the complexity and size of these cases, and is not larger than extensions granted by many other courts in cases of similar, and even lesser, size.

B.    The Debtors have made good faith progress toward proposing a plan.

20.    Since the Petition Date, the Debtors have made significant progress in their chapter 11 cases, including the implementation of a market area reduction program pursuant to which the Debtors have closed or sold 326 stores.[3]  More recently, the Debtors and their financial advisors identified 35 additional stores that are unprofitable and should be sold or closed to further refine the Debtors' store "footprint".  To maximize the amounts that could be realized from this decision, the Debtors recently filed a motion seeking authority to, among other things, sell existing inventory, equipment, supplies, furniture, fixtures and equipment as well as the pharmaceutical inventory and prescriptions (the "Pharmaceutical Assets") at the closing stores.  An auction that was recently held for the Pharmaceutical Assets produced in excess of $1 million for the Debtors' estates.

21.    Additionally, contemporaneously with the filing of this Motion, the Debtors have filed a motion seeking, among other things, authorization for Winn-Dixie to exercise its consent to the sale by W-D (Bahamas) Ltd., a Bahamas company, of shares of common stock of Bahamas Supermarkets Limited pursuant to the terms of a share purchase agreement.  The Debtors hope to generate approximately $50 million for the sale of the shares.

22.    The Debtors believe that no party in interest would benefit from the filing of a plan of reorganization while the resolution of the Substantive Consolidation Issue is under negotiation.  Moreover, under the circumstances, a termination of the Exclusive Periods would deny the Debtors a meaningful opportunity to finalize and propose a consensual plan.  A termination of the Debtors' Exclusive Periods at this time would encourage the development of competing multiple plans that could lead to unwarranted confrontations, litigation and increased administrative costs.

C.    <u>Creditors will not be prejudiced by an extension.</u>

23.    The requested extension of the Exclusive Periods will not prejudice the legitimate interests of any creditor or other party in interest.  To the contrary, the proposed extension will advance the Debtors' efforts to preserve value and avoid unnecessary and wasteful litigation practice.

24.    Moreover, given the current posture of these cases, it would be premature and counter-productive for any non-Debtor party in interest to initiate the plan proposal process. Instead, the requested extension will increase the likelihood of a consensual resolution of these cases that preserves reorganization value much more than any plan that the Debtors might file at this time simply to preserve their exclusive rights—or any creditor initiated plan process that lacks necessary foundation and support.

D.    <u>Conclusion.</u>

25.    In short, in the event that the status of negotiations with the Creditors Committee preclude the Debtors from filing a consensual plan by the date upon which the current Exclusive Proposal Period expires, the Debtors deserve and should be afforded a full and fair opportunity to continue such negotiations in the hopes that they are able to propose a chapter 11 plan that builds on the significant reorganization progress made to date.  Accordingly, the requested extension is warranted under the circumstances.

26.    Courts in various jurisdictions have been willing to grant subsequent extensions of exclusivity periods that result in a total extension of exclusivity that is of a similar or greater length than the sum of the number of days that exclusivity in these cases will have been extended

---

[3]    Many examples of the progress made since the Petition Date have been set forth in the four prior motions to extend the Exclusive Periods that were filed in these cases and such examples are incorporated by reference in this Motion.

if the relief requested by this Motion is granted.    See, e.g., In re TL Administration Corp., Case No. 03-15564 (Bankr. S.D.N.Y. Mar. 23, 2005) (five extensions granted, cumulatively extending the exclusive periods by approximately 16 months); In re Global Crossing Ltd., Case No. 02-40188 (Bankr. S.D.N.Y. Dec. 4, 2003) (multiple extensions granted, cumulatively extending the exclusive periods by approximately 18 months); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. June 30, 2003) (multiple extensions granted, cumulatively extending the exclusive periods by approximately 15 months); In re Casual Male Corp., Case No. 01-41404 (Bankr. S.D.N.Y. May 12, 2003) (multiple extensions granted, cumulatively extending the exclusive periods by almost two years); In re UAL Corporation, Case No. 02-48191 (Bankr. N.D. Ill. 2002) (aggregate exclusivity extended for approximately 32 months); In re Kaiser Aluminum Corp., Case No. 02-10429 (Bankr. D. Del. 2002) (aggregate exclusivity extended for more than 42 months); In re Bethlehem Steel Corp., Case No. 01-15288 (Bankr. S.D.N.Y. 2002) (aggregate exclusivity extension of more than 17 months); In re Safety-Kleen, Corp., Case No. 00-02303 (Bankr. D. Del. 2000) (aggregate exclusivity extended for more than 30 months); In re Service Merchandise Company, Case. No. 99-02649 (Bankr. M.D. Tenn. 1999) (aggregate exclusivity granted for more than 47 months); Gaines v. Perkins, 71 B.R. 294, 296 (W.D. Tenn. 1987) (exclusivity extended for over two years). Consistent with these cases, sufficient cause exists for the Court to extend the Exclusive Periods as requested by the Debtors in this Motion.

## Notice

27.    Notice of the Motion has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, and (d) the other parties in interest named on the Master Service List maintained in these cases.  No other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached as Exhibit A, extending their Exclusive Proposal Period to June 29, 2006, and extending their Exclusive Solicitation Period to and including August 29, 2006, without prejudice to the Debtors' rights to seek further extensions, and (ii) grant the Debtors such other and further relief as is just and proper.

Dated: March 31, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By  ___s/ D. J. Baker_____
    D. J. Baker
    Sally McDonald Henry
    Rosalie Walker Gray
    Adam S. Ravin
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for Debtors


SMITH HULSEY & BUSEY

By  ___s/ Stephen D. Busey_____
    Stephen D. Busey
    James H. Post
    Cynthia C. Jackson,
    Florida Bar Number 117790
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Debtors

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER GRANTING FIFTH EXTENSION OF EXCLUSIVE PERIODS**
**FOR FILING CHAPTER 11 PLANS AND OBTAINING**
**ACCEPTANCES OF SUCH PLANS**

These cases came before the Court for hearing on April 20, 2006, upon the

motion of Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned

cases, as debtors and debtors-in-possession (the "Debtors")[4], for entry of an order under

11 U.S.C. § 1121(d) further extending their exclusive periods for proposing and obtaining

acceptances of one or more plans of reorganization for an additional 70 days (the

"Motion").  The Court has reviewed the Motion, considered the evidence, and heard

argument of counsel.  After due deliberation and good and sufficient cause existing, it is

ORDERED AND ADJUDGED THAT:

1.    The Motion is granted.

2.    The Debtors' Exclusive Proposal Period is extended to and including

June 29, 2006.

3.    The Debtors' Exclusive Solicitation Period is extended to and

including August 29, 2006.

---

[4]       All capitalized terms not otherwise defined in this order shall have the meaning ascribed to them
in the Motion.

4.    Entry of this Order is without prejudice to (a) the Debtors' right to seek from this Court other or further extensions of the Exclusive Periods, or (b) any party in interest's right to seek to reduce the Exclusive Periods for cause.

Dated April ___, 2006 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.