UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

**MOTION FOR ORDER AUTHORIZING THE DEBTORS TO ENTER INTO SURETY
AGREEMENT WITH RLI INSURANCE COMPANY
AND GRANTING RELATED RELIEF**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order under 11 U.S.C. §§ 363, authorizing the Debtors to enter into a commercial surety agreement (the "Surety Agreement") with RLI Insurance Company ("RLI"). In support of the Motion, the Debtors state as follows:

**Background**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

599579.04-New York Server 4A - MSW

2. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested by this Motion are sections 105, 363 and 364 of the Bankruptcy Code.

**Relief Requested**

6. By this Motion, the Debtors seek entry of an order under section 363 of the Bankruptcy Code, authorizing the Debtors to enter into the Surety Agreement with RLI in substantially the form attached as Exhibit A and for such other and further relief as the Court deems just.

**Basis for Relief**

7. In order to comply with various federal and state laws and regulations, as well as various utility provider requirements, the Debtors must post, or have a surety post, bonds or other forms of security including, by way of example, bonds (i) under the federal Perishable

Agricultural Commodities Act ("PACA") regulations in order for the Debtors to purchase agricultural goods and services on credit, (ii) to comply with federal and state workers' compensation insurance regulations and (iii) to maintain or establish water, waste, telephone and electric utility accounts.

8. After lengthy negotiations, the Debtors and RLI have agreed to enter into the attached Surety Agreement by which (i) RLI agrees in its sole discretion to issue bonds on behalf of the Debtors (up to $10 million) and pay any claims made against the bonds and (ii) the Debtors agree to indemnify RLI for any losses it incurs as a result. The Debtors have agreed to pay RLI a percentage of each bond issued and the Debtors agree based upon their anticipated needs, to a minimum annual payment (the "Premium Commitment"). The Surety Agreement requires the Debtors to deposit collateral with RLI as security for each bond issued. The Debtors intend to post letters of credit as collateral under the bonds and, under the Court's order dated March 23, 2005 (the "Final Financing Order") the Debtors are authorized to obtain these letters of credit from the DIP Lender. By the Surety Agreement, the Debtors have agreed to pay RLI's reasonable attorneys' fees incurred in negotiating, documenting and obtaining approval of the Surety Agreement.

9. The Surety Agreement is beneficial to the Debtors and their estates for the following reasons. First, RLI has agreed to a financing fee equal to two percent[2] of the principal amount of any bond issued (with a minimum fee of $100 for any one bond). This is competitive with the rates of other sureties, including the Debtors' current sureties. Second, RLI will only require collateral equal to 100% of any bond issued--other sureties require the Debtors to post

---

[2] While RLI does not currently anticipate increasing the two percent fee, it has the right to do so. Any rate will however, only apply prospectively to new bonds issued by RLI or renewals of existing bonds.

3

599579.04-New York Server 4A - MSW

collateral equal to 125% of the face amount of the bond. Third, RLI has agreed to a $120,000 Premium Commitment compared to other sureties which required the Debtors to make a Premium Commitment of $250,000 or more. Moreover, the Debtors are satisfied that the Premium Commitment will be met because the Debtors are now required to post a $6 million PACA bond, which bond alone will result in a fee payment of $120,000 to RLI (2% of $6 million, or $120,000). Fourth, establishing a relationship with a surety willing to help the Debtors meet the demands of the marketplace will assist the Debtors greatly as they prepare to exit from bankruptcy. For all of these reasons, the Debtors' entry into the Surety Agreement constitutes sound business judgment.

### Applicable Authority

10. Under Bankruptcy Code sections 105(a) and 363(b), the Debtors seek authority to enter into the Surety Agreement. Bankruptcy Code section 363(b) serves as a basis to approve the Surety Agreement. After notice and a hearing, Bankruptcy Code section 363(b)(1) permits the Debtors to use property of the estate outside the ordinary course of business. Because section 363 does not set forth a standard for determining what uses are appropriate, courts require evidence that the proposed use represents the exercise of the debtor's sound business judgment. See In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992) (holding that debtors may use estate assets when the evidence presented demonstrates good business judgment); In re Tropical Sportswear Int'l, 320 B.R. 15 (Bank. M.D. Fla. 2005) (sound business justification a factor in authorizing use of estate property); In re Southern Biotech, Inc., 37 B.R. 318 (Bankr. M.D. Fla. 1983) (debtors may purchase property if sound business judgment exists for use of estate property).

11. The Debtors entry into the Surety Agreement with RLI represents sound business judgment. The Debtors and RLI tailored the terms of the Surety Agreement to meet the Debtors' specific needs. The Debtors ability to obtain goods and services on credit is critical to the Debtors' operations. The Surety Agreement gives the Debtors increased options, based on liquidity, collateral requirements and other business and financial considerations, in determining how to fulfill these requirements. Because (i) the Debtors need a surety in place to operate successfully, (ii) the terms of the Surety Agreement are favorable to the Debtors; and (iii) the Debtors' current sureties have not offered terms as favorable to the Debtors for going forward facilities, the Debtors believe they satisfy the burden imposed by section 363(b)(1).

### Notice

12. Notice of this Motion has been provided to (a) counsel to the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee, the other parties in interest named on the Master Service List maintained in these cases and (d) counsel for RLI. No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (a) enter an order in the form of Exhibit B authorizing the Debtors to enter into the Surety Agreement in substantially the form attached hereto as Exhibit A and (b) for such other and further relief as the Court deems just.

Dated: April 3, 2006

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By  *s/ D. J. Baker*  <br> D. J. Baker <br> Sally McDonald Henry <br> Rosalie Walker Gray <br> Keith N. Sambur <br> Four Times Square <br> New York, New York 10036 <br> (212) 735-3000 <br> (212) 735-2000 (facsimile) <br> djbaker@skadden.com | By  *s/ Cynthia C. Jackson* <br> Stephen D. Busey <br> James H. Post <br> Cynthia C. Jackson, <br> Florida Bar Number 498882 <br> 225 Water Street, Suite 1800 <br> Jacksonville, Florida 32202 <br> (904) 359-7700 <br> (904) 359-7708 (facsimile) <br> cjackson@smithhulsey.com |
| Co-Counsel for the Debtors | Co-Counsel for the Debtors |

6

Exhibit A



RLI Surety
*A Division of RLI Insurance Company*
P.O. Box 3967 Peoria, IL 61612-3967
Phone: 309-692-1000   Fax: 309-692-8637

# Commercial Surety General Indemnity Agreement

This Commercial Surety General Indemnity Agreement, made and entered into this ____ day of _____, _____, is executed by the Undersigned for the purpose of indemnifying from all losses and costs of any kind incurred by RLI INSURANCE COMPANY, as Surety (Surety is defined hereunder), in connection with any Bond (Bond is defined hereunder) for which RLI INSURANCE COMPANY now or hereafter become Surety for any of the following as Principal (Principal is defined hereunder):

Winn-Dixie Stores, Inc. as Debtor-In-Possession
_____

any subsidiary, division, affiliated corporation or partnership, and/or joint venture, now existing or hereafter formed or acquired, whether partially or wholly owned or controlled, and any other entity, individual or unrelated company for which a bond is requested in writing, as fully as if the names and signatures of such subsidiaries or affiliates appeared herein as Undersigned.

The liability and obligation of all signatories hereto shall be joint and several; and a default of any signatory in performance of any of its obligations to Surety under this or any other indemnity agreements shall constitute a default hereunder. The Undersigned acknowledge that they have substantial, material, and beneficial interest in obtaining bonds on behalf of various related Principal(s). In consideration of the execution of any such Bonds for Principal and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows:

1. **DEFINITIONS** - The following definitions apply in this Agreement:

    **Bond:** Any contractual obligation undertaken by Surety for Principal, before or after the date of this Agreement and any renewal or extension of said obligation.

    **Principal:** The person(s) or entity(ies) set forth above or any one of them or any combination thereof, or their successors in interest, whether alone or in joint venture with others named herein or not.

    **Surety:** RLI INSURANCE COMPANY, an Illinois corporation with its principal office in Peoria County, Peoria, Illinois, and any other person(s) or entity(ies) which such Surety may procure to act as surety or as a co-surety on any Bond, or any other person or entity who executes a Bond at the request of Surety.

2. **INDEMNITY**

    a. Undersigned agrees to pay to Surety upon demand:

        (i) all losses, costs, damages, reasonable attorneys' fees, costs of collection and expenses of whatever kind or nature which arise by reason of, or in consequence of, (i) the Surety having executed any Bond on behalf of the Principal, (ii) in enforcing this agreement against any of the undersigned, (iii) in procuring or attempting to procure its release from liability or a settlement under any bond.

        (ii) an amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond.

        (iii) any premium due for any Bond; at a rate equal to that charged by the Surety for such Bond; and for any renewal premiums until such time as adequate proof is presented to the Surety discharging it from any further liability.

    b. Regarding claims against Surety:

        (i) Surety shall have the exclusive right for itself and the Undersigned to determine whether any claim or suit upon any Bond shall on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.

        (ii) Surety shall have the right to incur such expenses in handling a claim as it shall reasonably deem necessary including but not limited to the expenses for investigative accounting, technical and legal services.

        (iii) Surety shall have the foregoing rights irrespective of the fact that the Undersigned may have assumed or offered to assume the defense of the Surety upon such claim. In any claim or suit hereunder, an itemized statement of the aforesaid losses and expenses, sworn to by an officer of the Surety or the vouchers or other evidence of disbursement by Surety shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned.

        (iv) Repeated actions may be maintained by Surety on this instrument as breaches of it occur without any former action operating as a bar to any subsequent action.

        (v) Undersigned shall authorize Surety to join any and all of the Undersigned as defendants in any action, regardless of venue, against the Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned and without the necessity of first proceeding against the Principal.

3. **GENERAL PROVISIONS**

    a. Surety may consent or refuse to consent to changes in a Bond, but either action shall not affect the obligations of the Undersigned under this Agreement.

_____INITIALS        _____DATE

b. Surety shall have the right, at its option and in its sole discretion, to issue or cancel or decline the execution of any Bond, or renewal thereof.

c. Until Surety has been furnished with conclusive evidence of its discharge without loss from any Bonds, and until Surety has been otherwise fully indemnified as hereunder provided, Surety shall have the right of free access to the books, records and accounts of the Undersigned for the purpose of examining and copying them. The Undersigned hereby authorize third parties, including but not limited to depositories of funds of the Undersigned, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information, which it now has or may hereafter acquire concerning the Undersigned, to other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms, or entities as it may deem appropriate.

d. Surety shall have every right, defense, or remedy which a personal surety without compensation would have, including the right of exoneration, and the right of subrogation. Undersigned will, upon the request of the Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such Bond or Bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s). Undersigned warrants that each of them is specifically and beneficially interested in obtaining each Bond and agree to pay the initial, renewal, and additional premiums thereon according to the Surety's current rate manual or rate filings recognizing that the initial premium is fully earned upon execution of each Bond. If the execution of this Agreement by any of the Undersigned shall be found defective or invalid for any reason, such defect or invalidity shall not affect the validity of this Agreement with respect to any other of the Undersigned. The invalidity of any provision of this Agreement by reason of the law of any state or by any other reason shall not affect the validity of any other provision of this Agreement.

e. Undersigned consents and agrees that any and all collateral deposited with Surety shall be available at the Surety's sole discretion as collateral security on any or all bonds heretofore or hereafter executed for or at the request of the Undersigned. If Undersigned provides Surety with a letter of credit or similar instrument as collateral, Undersigned hereby agrees that Surety may draw on such collateral to enforce provisions under section 2a of this Agreement, at any time, in whole or in part, for any reason, and to hold proceeds thereof as collateral to pay any obligations of the Undersigned arising hereunder. Any cash provided as collateral will be available, in the Surety's sole discretion, to pay any of the obligations arising hereunder. Any cash security held by Surety shall be deposited with a financial institution selected by the Surety in its sole discretion, in an account in the name of and exclusively controlled by the Surety. Investment income, if any, generated from such account, shall accrue to the benefit of the Undersigned providing the collateral. The Undersigned hereby grants to Surety a security interest or lien on any collateral, including letters of credit or cash arising from draws thereunder, now or hereafter deposited with Surety.

f. Liability of Undersigned hereunder shall not be affected by:

(i) the failure of the Principal to sign any Bond;

(ii) any claim that other indemnity or security was to have been obtained;

(iii) the release of any indemnity; and

(iv) the return or exchange of any collateral that may have been obtained.

g. This Agreement may not be changed or modified orally. No change or modification shall be effective unless specifically agreed to in writing. Surety shall have the right to fill in any blanks left herein and to correct any errors by filling in any blanks herein.

h. This Agreement may be executed in multiple counterparts, and by the undersigned on separate counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument. Delivery by telecopy of a signed counterpart of this Agreement shall be as effective as physical delivery.

i. Undersigned consents and agrees that the laws of the State of Illinois shall apply to this Commercial Surety General Indemnity Agreement.

j. Undersigned consents and agrees to the jurisdiction of the courts located in Peoria County, Peoria, Illinois for the enforcement of this Commercial Surety General Indemnity Agreement.

4. **TERMINATION** - This Agreement is a continuing obligation of Undersigned unless terminated by written notice to Surety as provided hereafter. In order to terminate liability as to future Bonds of Principal, Undersigned must:

a. give written notice of such termination by means of certified mail to Surety at its office as listed above; and

b. state in such notice the effective date (not less than thirty days after receipt thereof by Surety) of termination of such Undersigned's liability for future Bond(s). After the effective date of such termination by giving notice, Undersigned shall nonetheless be liable hereunder for Bond(s) executed or authorized prior to such date and renewals, substitutions and extensions thereof. Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

_____ INITIALS    _____ DATE

| CORPORATIONS - To be signed and attested to by authorized officers of the corporation |
|---|

Winn-Dixie Stores, Inc. as Debtor-in-Possession

Attest: _____  By: _____ (Seal)
Print Name                                                    Print Name
And Title                                                     And Title

Attest: _____  By: _____ (Seal)
Print Name                                                    Print Name
And Title                                                     And Title

Attest: _____  By: _____ (Seal)
Print Name                                                    Print Name
And Title                                                     And Title

Attest: _____  By: _____ (Seal)
Print Name                                                    Print Name
And Title                                                     And Title

Attest: _____  By: _____ (Seal)
Print Name                                                    Print Name
And Title                                                     And Title

Attest: _____  By: _____ (Seal)
Print Name                                                    Print Name
And Title                                                     And Title

| PARTNERSHIPS - To be signed by Partner (or General Partner if a Limited Partnership) |
|---|

By: _____  By: _____ (Seal)
Print Name                                                    Print Name
And Title                                                     And Title

By: _____  By: _____ (Seal)
Print Name                                                    Print Name
And Title                                                     And Title

| INDIVIDUALS - Including Proprietorships |
|---|

By: _____  By: _____ (Seal)
Print Name                                                    Print Name

By: _____  By: _____ (Seal)
Print Name                                                    Print Name

By: _____  By: _____ (Seal)
Print Name                                                    Print Name

| ALL SIGNATURES MUST BE NOTARIZED |
|---|

_____ INITIALS     _____ DATE

Page 3 of 4
P0048305

**ACKNOWLEDGEMENTS**

State of _____

County of _____

On _____ before me, _____ (here insert name) Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

---

State of _____

County of _____

On _____ before me, _____ (here insert name) Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

---

State of _____

County of _____

On _____ before me, _____ (here insert name) Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

---

State of _____

County of _____

On _____ before me, _____ (here insert name) Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

---

State of _____

County of _____

On _____ before me, _____ (here insert name) Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

---

_____ INITIALS    _____ DATE

<u>CONFIDENTIALITY AGREEMENT</u>

AGREEMENT, dated _____, by and between _____ ("Company") and RLI Insurance Company (the "Underwriter") located at _____.

<u>WITNESSETH</u>

WHEREAS, Company possesses certain technical, financial, strategic and other proprietary and confidential information relating to its business, operations and properties ("Confidential Information");

WHEREAS, Underwriter requires access to such Confidential Information for the purpose of providing services to Company;

WHEREAS, Company considers such Confidential Information to have significant value and Company agrees to disclose such information to Underwriter only for the purpose and upon the terms and conditions set forth below, and Underwriter agrees to receive such Confidential Information only for such purpose and upon such terms and conditions.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and conditions contained herein, the parties agree as follows:

1. <u>Nondisclosure of Confidential Information</u>

    (a) <u>Nondisclosure</u>. Neither Underwriter nor any of its employees or agents directly or indirectly shall disclose to any third party or use any Confidential Information furnished by or on behalf of Company to Underwriter for any purpose except in furtherance of insurance or surety-related services to be rendered by Underwriter to Company, which may include in the normal course of business the release to reinsurers of Confidential Information relevant to the underwriting and/or evaluation of Company's creditworthiness. Underwriter shall take all steps reasonably required to maintain the confidentiality of Confidential Information in Underwriter's possession. The transmission of Confidential Information via electronic data transmission networks which provide for the security of users' data shall be deemed consistent with Underwriter's obligations hereunder unless such use is contrary to Company's express instructions.

    (b) <u>Return of Information</u>. As between Company and Underwriter, Confidential Information shall be the sole and exclusive property of Company, and, upon termination of Underwriter's engagement by Company or at any other time, if requested by Company, all documents and records in Underwriter's possession containing Confidential Information shall be returned to Company; provided, however, that Underwriter may retain copies of documents that may contain Confidential Information which are necessary for the conduct and proper record keeping of Underwriter's business in accordance with standard operating procedures or applicable law.

1

2. <u>Scope of Agreement</u>

The restrictions and agreements set forth in paragraph 1 of this Agreement shall not apply to any Confidential Information:

(a) which at the time disclosed to or obtained by Underwriter is in the public domain;
(b) which becomes part of the public domain through no act, omission or fault of Underwriter;
(c) which Underwriter's records demonstrate was developed independently by Underwriter or was received by Underwriter from a third party which Underwriter had no reason to believe had any confidentiality or fiduciary obligation to Company with respect to such information;
(d) which is required to be disclosed by law, including, without limitation, pursuant to the terms of a subpoena or other similar document; provided, however, Underwriter shall give prior timely notice of such disclosure to Company to permit Company to seek a protective order, and, absent the entry of such protective order, Underwriter shall disclose only such Confidential Information that Underwriter is advised by its counsel must be disclosed by law; or
(e) following the lapse of two years after disclosure of such information to Underwriter.

3. <u>Injunctive Relief</u>

It is understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement and Company shall be entitled to injunctive relief as a remedy for such breach, without prejudice to any other rights or remedies available to Company under applicable law.

4. <u>Binding Effect; Severability</u>

This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns. If any provision of this Agreement is declared void or unenforceable, such provision shall be deemed to be severed from this Agreement, which otherwise shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

RLI INSURANCE COMPANY

By: _____

By: _____

2

Exhibit B

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 )|
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 ) |
| Debtors. | ) Jointly Administered ) |

**ORDER AUTHORIZING THE DEBTORS TO ENTER INTO THE SURETY
AGREEMENT WITH RLI INSURANCE COMPANY
AND GRANTING RELATED RELIEF**

These cases came before the Court for hearing on April 20, 2006, upon the motion of Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned jointly-administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order authorizing the Debtors to (i) enter into the Surety Agreement in substantially the form attached to the Motion as Exhibit A and (ii) cause Wachovia Bank, National Association ("Wachovia") to issue letters of credit ("LC") in accordance with the Surety Agreement (the "Motion").[1] The Court has reviewed the Motion and has considered the representations of counsel. Based upon the representations of counsel and without objection by the United Sates Trustee or any other interested parties, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

2. The Debtors are authorized to (i) enter into the Surety Agreement in substantially the form attached to the Motion as Exhibit A and (ii) cause Wachovia to issue LC in accordance with the Surety Agreement.

---

[1] All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Motion.

3. The Court retains jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated _____, 2006 in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.

2

599582.03-New York Server 4A - MSW