UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, DIVISION

In re:

    WINN-DIXIE STORES, INC., et al.,

        Debtors.             CASE NO. 05-3817-3F1
_____/

TRANSCRIPT OF PROCEEDINGS

    Various Motions before the Honorable Jerry A. Funk, United States Bankruptcy Judge, Courtroom 4D, 300 North Hogan Street, Jacksonville, Florida, Thursday, September 1, 2005, to commence at 1:00 p.m., as reported by Loretta D. McDonald, a Notary Public in and for the State of Florida at Large.

- - -

**STATEWIDE REPORTING SERVICE**
606 BLACKSTONE BUILDING
JACKSONVILLE, FLORIDA 32202
(904) 353-7706        249-9952
EXPERTS IN MEDICAL, TECHNICAL & EXPEDITED TRANSCRIPTS

ORIGINAL

1                          A P P E A R A N C E S

2

3

4

5          CYNTHIA JACKSON, Attorney at Law,
           STEPHEN BUSEY, Esquire,
6          JAMES POST, Esquire,

7              Attorneys for the Debtor.

8

           JOHN B. MACDONALD, Esquire,
9
               Attorney for Unsecured
10             Creditors.

11

           KAROL K. DENNISTON, Attorney at Law,
12         DOUG CHUNN, Esquire,

13             Attorneys for Equity Committee.

14

           EDDIE HELD, Esquire,
15         KIM ISREAL, Attorney at Law,

16             Attorneys for Catamount.

17

           EARL BARKER, Esquire,
18
               Attorney for Victory
19             Real Estate Investments.

20

           PHIL CANOVA, Esquire,
21
               Attorney for the City of
22             Plaquemine.

23

           ROBERT WILCOX, Esquire,
24
               Attorney for the City
25             of Jacksonville.

3

1              P R O C E E D I N G S

2    September 1, 2005                            1:00 p.m.

3                        - - -

4         THE COURT:  Good afternoon.  We're here today on

5    Winn-Dixie Stores, Inc., various motions.  I will take

6    the motions in order they appear on the final agenda,

7    unless there's any objection.

8         THE COURT:  Mr. Busey, we'll take up the motion for

9    authorizing sell of pharmaceuticals to I believe CVS.

10        MR. BUSEY:  The motion that was noticed and is

11   being heard today is Docket Number 1963, which is a

12   motion filed earlier and heard earlier by the Court in

13   which we obtained Court authorization for the sale of

14   pharmaceutical assets at a number of stores.

15        We have notice for hearing today for -- pursuant to

16   that motion, an additional contract for sale.  The

17   contract is for the sale of the pharmaceutical assets at

18   Store Number 2056 in Dallas, North Carolina.  And the

19   proposed purchaser of those assets is CVS Corporation.

20   And the price is $95,000 for the prescriptions and our

21   costs for inventory.  There are no objections, Your

22   Honor, and we have a proposed order.

23        THE COURT:  Anybody here have any objection or

24   comment?

25        (No response.)

1        THE COURT:  There being none the Court will approve

2   the sale, and will sign the order.  Order is signed.

3   This matter is concluded.

4        The next matter is a motion to sell leasehold

5   interest and/or to reject certain leases.

6        Mr. Busey.

7        MR. BUSEY:  Mrs. Jackson will handle that matter,

8   Your Honor.

9        THE COURT:  Thank you.

10       MS. JACKSON:  Good afternoon, Your Honor.  This is

11   a continued motion from two hearings ago.  It's Docket

12   2707.  It's our amended motion to sell stores from the

13   second auction, the second phase of the sales.

14       The first purchaser is MD Investment, Store 2002,

15   which has been continued to September 8th.

16       THE COURT:  MD Investment is continued?

17       MS. JACKSON:  To September the 8th, Your Honor.

18       THE COURT:  Very well.  We'll deal with that then.

19       Next.

20       MS. JACKSON:  The second is Newton Associates,

21   Store 2079, which is in Englewood.  I mean -- I'm sorry,

22   Your Honor, Store 700 in Englewood, Florida.  This is

23   actually purchased by the landlord in the termination of

24   the lease, and the landlord is paying $11,890.15 and

25   waiving any cure claims and rejection damage claims.

1    And the rejection damage claims could be over 150,000.

2    THE COURT:  Very well.  Any comments or

3    objections?

4    (No response.)

5    THE COURT:  There being none, order approved.

6    MS. JACKSON:  I have a proposed order.

7    THE COURT:  This is Store Number 2079; is that

8    correct?

9    MS. JACKSON:  Store 700, Your Honor.  I misspoke.

10    THE COURT:  Well, my notice said 2079.  What does

11    the motion say?

12    MS. JACKSON:  Okay.  Your Honor, it is Tatone

13    Properties.  I think that's why I confused the Court.

14    Tatone is the 700.

15    THE COURT:  Tatone is the first one.

16    MS. JACKSON:  Thank you, Your Honor.

17    THE COURT:  Okay.  So the order you sent me --

18    MS. JACKSON:  Yeah.

19    THE COURT:  -- was it Tatone?

20    MS. JACKSON:  Yes, Your Honor.

21    THE COURT:  Okay.  Tatone is a sale, it's not a

22    termination?

23    MS. JACKSON:  No, Your Honor, it is also a

24    termination.

25    THE COURT:  Do you want to check if you did.  This

1    is going to be Bill of Sale assignment assumption.  I

2    just want to make sure we're all on the same page here.

3        Wait a minute.  Wait a minute.  Wait a minute.

4    Wait a minute.  Maybe I'm on the wrong one.  Number one

5    is Tatone.

6        I'm sorry.  I'm looking at the wrong one.

7        MS. JACKSON:  It is a termination, Your Honor.

8        THE COURT:  I'm looking at MD.  MD is the one we

9    continued.  Tatone is the termination.

10        MS. JACKSON:  Yes, Your Honor.

11        THE COURT:  Order is signed.  This matter is

12    concluded.

13        Next matter.

14        MS. JACKSON:  Newton Associates, Your Honor, Store

15    2079 in Newton, North Carolina.  It's also a landlord

16    termination agreement.  The landlord is paying the

17    debtor 30,000 -- $35,000.  There is a potential cure

18    of $30,799 and potential rejection damages of over

19    $400,000 that the landlord is waiving.

20        THE COURT:  Any objections or comments?

21        (No response.)

22        THE COURT:  There being none, the Court will

23    approve the request.

24        MS. JACKSON:  I have a proposed order, Your Honor.

25        THE COURT:  Order is signed.  The matter is

1        concluded.

2            Next is Willowood --

3            MS. JACKSON:  Partners, Your Honor, which is also

4        a landlord termination agreement.  The landlord is

5        paying the debtors $25,000.  It's for Store 1834 in

6        Athens, Georgia.  The landlord is waiving both potential

7        cure cost and rejection damages which are over $140,000

8        potentially together.

9            THE COURT:  The Court will approve the agreement.

10       Do you have an order?

11           MS. JACKSON:  Yes, Your Honor.

12           THE COURT:  Order is signed, and the hearing is

13       concluded.

14           Next is McDaniel --

15           MS. JACKSON:  Food Management, Your Honor.  This is

16       a tri-party agreement.  It's actually a sale to McDaniel

17       Food Management and a termination of the lease

18       agreement.  They're going to enter into a new lease.

19       The landlord signed the agreement as well.  It's for

20       Store 1566 in Pineville, Louisiana.  There is a

21       potential cure of 27,000 and rejection damages of almost

22       200,000 that are also being waived by the landlord.

23           THE COURT:  Any objection or comment?

24           (No response.)

25           THE COURT:  There being none, the Court will

1    approve the agreement.

2        MS. JACKSON:  I have a proposed order, Your Honor.

3        THE COURT:  It's a total of $115,000?

4        MS. JACKSON:  Part of it -- the 115,000 goes to the

5    estate and the difference goes to the landlord for the

6    termination fee for the lease.

7        THE COURT:  115,000.

8        MS. JACKSON:  Yes, Your Honor.

9        THE COURT:  Order is signed.  This matter is

10   concluded.

11       MS. JACKSON:  The next one, Your Honor, is similar.

12   They're related companies, the purchasers are related

13   companies.  It's Store Number 1541, located in

14   Marksville, Louisiana.  And the purchaser is paying the

15   estate $117,000 and paying the termination fee to the

16   landlord.  Same similar arrangement.

17       THE COURT:  Any objection or comment?

18       (No response.)

19       THE COURT:  There being none, the Court will

20   approve the transaction.

21       MS. JACKSON:  I have a proposed order, Your Honor.

22       THE COURT:  If you'll pass it up, please.

23       Order is signed.  This hearing is concluded.

24       Next matter is a motion for authorizing retroactive

25   rejection of real property leases.

1          MS. JACKSON:  Yes, Your Honor.  This is a motion to

2     reject four leases, Store 992 in Virginia; 1233 in West

3     Columbia, South Carolina; 1247 in Mebane, North Carolina

4     and 1676 in Louisville, Kentucky.  All of these are

5     actually subleases in which the debtor is being paid

6     less than what the debtor is having to pay the ultimate

7     landlord.  So this rejection is in the best interest of

8     the estate, and these are also in nonmarket -- noncore

9     market areas.  So the markets were exiting.

10          THE COURT:  Well, I understand.

11          Any objections, Mr. Held?

12          MR. HELD:  Your Honor, for the record, Eddie Held,

13     on behalf of Catamount, Store Number 1676 and Woodbury,

14     Store Number 1233.  We had filed objections.  The

15     objections have been resolved.

16          THE COURT:  Very well.  There being no other

17     objections -- any comments?

18          (No response.)

19          THE COURT:  Being no comment, the Court will grant

20     the motion.

21          MS. JACKSON:  I have a proposed order, Your Honor.

22          THE COURT:  Very well.

23          Order is signed.  This matter is concluded.

24          The Court will take before it debtor's motion for

25     an order establishing the claims resolution procedure.

1          MS. JACKSON:  Your Honor -- yes, Your Honor.

2     Mr. Post is going to handle that matter.

3          THE COURT:  Very well.

4          MR. POST:  May it please the Court.

5          THE COURT:  Yes, sir.

6          MR. POST:  Your Honor, on this motion the debtor is

7     seeking authorization to implement procedures which we

8     believe will enable the debtors to settle or liquidate a

9     substantial number of prepetition litigation claims on

10    an expedited and cost-efficient basis.  These procedures

11    are similar to those implemented in other Chapter 11

12    cases having large numbers prepetition litigation

13    claims.

14         Although our numbers are presently being updated

15    as to the petition date, we estimated we have

16    approximately 3,800 claimants which threatened or

17    commenced litigation against the debtors seeking an

18    aggregate claim amount of $44 million.  Although the

19    litigation claims run the gamete in terms of asserted

20    liability, most are seeking relatively small amounts.

21         After our motion was initially objected to by the

22    committee, the creditors committee, the U.S. trustee and

23    two creditors, we agreed to make certain provisions to

24    our proposed order and procedures.  And as the result,

25    those four entities have advised me they will not oppose

1    the entry of a revised order which we prepared.

2    One particular matter, which needs to be pointed

3    out, relates to the provision of the proposed procedures

4    by which the debtors would be authorized to make

5    ordinary course settlements of small claims in cash

6    payments, not to exceed $5,000 per claim, with an

7    aggregate cap of $5 million.  This particular provision

8    was the subject to rejections from the committee and the

9    U.S. trustee.  And the revised order being submitted to

10    the Court today precludes the debtors from making any

11    cash settlement payments until that particular issue can

12    be adjudicated.

13    The revised order being submitted to you today

14    schedules that issue for hearing, an omnibus hearing

15    scheduled for September 22nd, 2005.  The revised order

16    was circulated to the rejecting parties prior to this

17    hearing.  The revisions in the order and procedures do

18    not adversely affect the rights of any party in

19    interest.

20    And with permission of the Court, I would like to

21    hand up the revised order at this time and request

22    it's entry.

23    THE COURT:  Very well.

24    Ms. Israel.

25    MS. ISREAL:  Yes, sir.  Your Honor, Kim Israel, on

1        behalf of four claimants.  Our objection is listed as

2        Letter B on the agenda, and our objections have been

3        resolved.

4              THE COURT:  Thank you very much.

5              Mr. MacDonald.

6              MR. MACDONALD:  Thank you, Your Honor.  We confirm

7        that the committee's objections to the underlying

8        procedures have been resolved and the revised -- excuse

9        me -- the order, which has been circulated, confirms

10       that that single issue that we still have open, which is

11       a payment of $5,000 claims or less, will be adjourned

12       over until September 22.  So it's subject to that

13       revision in the order which has been made, we're

14       satisfied with the order, Your Honor.

15             THE COURT:  That was the only thing you objected

16       to, wasn't it?

17             MR. MACDONALD:  Not entirely, Your Honor.

18             THE COURT:  For the most part.

19             U.S. trustee.

20             MS. ESCAMILLA:  Your Honor, I'd like to know of

21       some of the changes in the proposed order that will be

22       submitted.  The questionnaire will no longer serve as an

23       objection to claims.  There was no grounds listed in

24       the -- in the motion or in the questionnaire or in the

25       proposed order.  So they've taken out that provision.

1    So the debtors will have to file objections to claims

2    and actually state whatever the grounds are for those

3    objections.  So that's a major change.

4         Claimants are still not receiving notice of this

5    motion on the claims procedure, and that is a

6    substantial issue for us.  However, it does provide for

7    them to file a motion for relief from stay and raise

8    those issues with the Court.  Whether or not they have

9    an issue with due process, is something they can raise

10   in their motion for relief from stay as to the claims

11   procedure motion.

12        The questionnaire will still be sent out as part of

13   the claims procedure, and the debtor will have to file a

14   motion to object to their claim if they don't return

15   that questionnaire.  But they have to separate -- file

16   a separate objection to that.  So they can raise any

17   issues regarding the service of receiving the

18   questionnaire at that time.  So it allows the litigants

19   to raise those issues.

20        There still is no resolution as to an opt-out

21   provision or an automatic relief from stay.  That's an

22   issue that if in fact they do, they can raise that with

23   the Court.  So they have made substantial changes, and

24   we have no objection to the bifurcation of the ordinary

25   course payments of $5,000 up to 5 million to be resolved

1       on September 22nd.

2           They have also taken out the provision regarding

3       their inability to vote because of an objection.

4           THE COURT:  Anybody else have any objections or

5       comments?

6           MR. CHUNN:  Yes, Your Honor.  Your Honor, Doug

7       Chunn.  We have not -- I have with me Carol Denniston of

8       the Paul Hasting's Law Firm in Atlanta.  We have not

9       filed an application for retention because, frankly, I'm

10      caught in the electronic filing more or less.  And I

11      can't get trained until the 13th of September.

12          But I would ask Your Honor for permission, one,

13      orally to admit Ms. Denniston pro hac vice -- she's a

14      member of the bar in California, Texas, Georgia and a

15      number of other bars -- and to prove us I guess on an

16      interim basis until we can get the filings made

17      electronically, Judge.

18          And Ms. Denniston would like to speak to this

19      particular matter, if she could.

20          THE COURT:  Certainly.  I'll listen.

21          MS. DENNISTON:  Thank you, Your Honor.  Carol

22      Denniston of Paul Hastings Janofsky & Walker, proposed

23      counsel to the equity committee.

24          Your Honor, we have been engaged only for some

25      number of days after meeting with the committee.  We are

1   prepared to support this motion on the terms outlined

2   for the Court.  However, the -- we have not seen a copy

3   of the order.  And we have two comments that we would

4   ask for the Court's consideration in terms of the form

5   of the order.

6        With regard to Paragraph 10 of the order, we would

7   request that the equity committee be provided with the

8   same rights as the creditors committee in terms of

9   notice and an opportunity to object.  And with that the

10  equity committee is prepared to support the motion as

11  outlined for the Court today.

12       THE COURT:  Thank you.

13       MS. DENNISTON:  Thank you, Your Honor.

14       THE COURT:  Mr. Post.

15       MR. POST:  Your Honor, as a matter of courtesy, if

16  nothing else, we would being willing -- the debtors

17  would be willing to provide such notices to the equity

18  committee if and when they're established in this Court.

19  I would respectfully request that we not be required to

20  actually go back and make change in this order since

21  it's -- it has been done and final and agreed to.  And I

22  think that by making this commitment, the equity

23  committee's concern would be taken care of.

24       We -- timing is important to us.  We would like to

25  get the approval immediately so we can start our process

1    right away.

2    THE COURT:  Okay.  The notice that you have on the

3    questionnaire that's in bold print:  If you've not fully

4    completed and returned this questionnaire, et cetera.

5    MR. POST:  Yes, Your Honor.

6    THE COURT:  Are you changing that notice in any way

7    from the one that was in the proposed order?

8    MR. POST:  Yes, Your Honor.

9    THE COURT:  And how are you changing it?

10   MR. POST:  We changed it at the request of the

11   United States trustee.  It simply says that:  The

12   debtors did not fully complete and return this

13   questionnaire to the debtors by November 1, 2005.  The

14   debtors shall, for that reason alone -- excuse me -- the

15   debtor shall have the right, for that reason alone, to

16   seek, to disallow and expunge a Proof of Claim with

17   respect to the applicable litigation claim.

18   THE COURT:  You leave out the votes though?

19   MR. POST:  Yes, Your Honor.

20   THE COURT:  Okay.  I would like to see that on

21   the -- where it is, but I also think it needs to be --

22   this is significant.  And on the very first page of the

23   notice, that should be there so they see that first.

24   And it should be on the first page of any correspondence

25   that it covers, the company sent.  So when they open the

1    envelope, they know -- if they don't pay attention to

2    this, they may find themselves without a claim.

3         MR. POST:  Yes, Your Honor.

4         THE COURT:  I'm not asking you to change the order.

5    Just like the equity committee, I trust you if you say

6    you can do that.

7         MR. POST:  We can do that, Your Honor.

8         MS. ESCAMILLA:  Your Honor, I have a redline

9    version of the changes, if that would be helpful to the

10   Court.

11        THE COURT:  No, I've got my own notes.  I'm just

12   seeing if there's anything that y'all -- I thought of.

13   That's the only thing I'm requiring so far.

14        MR. POST:  I understand, Your Honor.

15        THE COURT:  Did you consider putting the notice in

16   English and Spanish?  Do you have a lot of multi -- a

17   lot of that is South Florida stuff.  I don't know if

18   that's beneficial.

19        MR. POST:  Candidly, Your Honor, we did not

20   consider that.

21        THE COURT:  All right.  Anybody else have any

22   comments?

23        (No response.)

24        THE COURT:  All right.  The Court will approve the

25   claims resolution procedure as presented in court today

1  with the exception of the matter raised by the creditors

2  committee.  That will be continued until September 28th.

3      MR. MACDONALD:  22, Your Honor.

4      THE COURT:  22nd calendar.  The Court will not

5  require you to include in the order, but it's understood

6  that you'll reform the notice to put in the language

7  that I suggested according to the locations --

8      MR. POST:  Yes, Your Honor.

9      THE COURT:  -- suggested in the questionnaire and

10 that you will -- if the equity committee retains counsel

11 who is duly appointed by this Court and exists, they

12 will be noticed in accordance with their request on this

13 document.

14     MR. POST:  Yes, Your Honor.

15     THE COURT:  You understood exactly what I said?

16     MR. POST:  I did.

17     THE COURT:  Okay.  The equity oppose -- possible

18 equity attorneys agree to that?

19     MS. DENNISTON:  No, Your Honor, we don't oppose

20 that.  Thank you so much.

21     THE COURT:  You cannot appear in this court unless

22 you're electronically literate.  In this case, that's

23 the law of this case.

24     MS. DENNISTON:  Thank you, Your Honor.

25     THE COURT:  Get that way.

1        MS. DENNISTON:  Yes, Your Honor.

2        THE COURT:  Mr. Chunn, I'm ashamed you're not

3    already that way.

4        MR. CHUNN:  Your Honor, if I had known 15 months

5    ago I was going to be here, I wouldn't be here.  I

6    would be betting on interest swings.

7        THE COURT:  That being said, I'll look at your

8    order if you want to pass it up.

9        MR. POST:  Thank you, Your Honor.

10       THE COURT:  This order is signed.  Matter

11   concluded.

12       MR. POST:  Thank you, sir.

13       THE COURT:  Now, we have the motion for order

14   approving notice procedures regarding omnibus claim

15   objections and schedule amendment motions, filed by the

16   debtor.

17       Mr. Post.

18       MR. POST:  Yes, sir.  On this motion the debtors

19   seek approval of notice and service procedures regarding

20   omnibus claim objections, which we believe would reduce

21   the administrative burdens of the debtor's estate and

22   the Court and reserve estate and judicial resources.

23   These procedures are similar to those implemented a

24   number of large Chapter 11 cases having large numbers of

25   claims.  Although our numbers are presently being

1    updated, we -- as of August 1st, we estimate that there

2    were 11,000 claims filed in this case.

3         Our motion was initially objected to by one

4    attorney, Mr. Earl Barker, who represents several

5    creditors.  We've had discussions with Mr. Barker and

6    have agreed to make certain provisions to our proposed

7    order of procedures which, as a result, Mr. Barker

8    advised me that he will not oppose the entry of the

9    revised order.  The revised order was circulated to Mr.

10   Barker and other parties prior to this hearing.  The

11   provisions of the order procedures do not adversely

12   affect rights of any party in interest.

13        And with the permission of the Court, I would like

14   to hand up the revised order and request its entry at

15   this time.

16        THE COURT:  Mr. Barker.

17        MR. BARKER:  Your Honor, Earl Barker, for Victory

18   Real Estate Investments.  Our objections have been

19   resolved.

20        THE COURT:  Very well.  Pass it up.

21        Let me ask you this one question.  If you do the

22   amendment to the schedules, do you notice a particular

23   creditor that you've changed their listed amount from

24   $10,000 to $7,300?  Do you say to the creditor in the

25   notice that if you have already filed a claim, you don't

1    need to do anything else because their claim, they're

2    not going to lose the claim that they filed?  These are

3    people that are just relying on the schedules; is that

4    correct?

5        MR. POST:  That's correct, Your Honor.

6        THE COURT:  So somebody that has a claim, they'll

7    be giving an objection to that claim?

8        MR. POST:  Correct.

9        THE COURT:  You know, if their claim was 8,500 or

10   whatever it was --

11       MR. POST:  Correct.

12       THE COURT:  -- different from what your ultimately

13   amended schedules are.

14       MR. POST:  That's correct, Your Honor.

15       MR. BARKER:  Correct.

16       THE COURT:  Is that correct?

17       MR. BARKER:  Yeah.  Your Honor, that's one of the

18   issues that we've resolved.

19       MS. ESCAMILLA:  The order does not specifically

20   state that if you file a Proof of Claim that that --

21   these amendments to the schedules will apply to that.

22   Any of the changes that I saw did not include that, Your

23   Honor.

24       MR. BARKER:  There's a change in the notice, Your

25   Honor.

1         THE COURT:  That's okay.  That's all I wanted --

2         MR. BARKER:  It's in the notice.

3         THE COURT:  When the debtor -- when the creditor

4    gets the notice that they've changed the schedules and

5    you say if you filed a claim, your claim is good

6    until --

7         MR. BARKER:  It's been objected.

8         THE COURT:  You've taken care of --

9         MR. BARKER:  Yes, sir.  That's in Paragraph 7, I

10   believe, with the amendment notice.

11        THE COURT:  That's good.  There being no other

12   objections or comments, the Court will --

13        MS. ESCAMILLA:  Your Honor, I just wanted to state

14   one of the resolutions with Mr. Barker.  Mr. Barker and

15   the debtor are entering into a stipulation where they

16   agree not to file multiple claims, objections to claims.

17        In this motion it says that the debtor has a right

18   to file multiple objections ongoing.  So it requires the

19   person that's filed a Proof of Claim, they may get ten

20   objections to their claims.  That's still in the order.

21   However, there's going to be a stipulation between the

22   debtor and Mr. Barker that there will only be one

23   objection to those claims.  And I just wanted to put

24   that on the record.

25        THE COURT:  So it's just Mr. Barker's client's

1    claims or to everybody?

2        MS. ESCAMILLA:   It generally applies to

3    Mr. Barker's claim.   That was the debtor's resolution

4    with Mr. Barker.

5        THE COURT:   Okay.   Anything else?

6        (No response.)

7        THE COURT:   Good.   Order is signed, and the hearing

8    is concluded as to this matter.

9        MR. POST:   Thank you, Your Honor.

10       THE COURT:   Take the matter of the motion for the

11   determination of adequate assurance and utilities and a

12   motion for modification of the deposit, filed by the

13   City of Plaquemine.

14       MR. POST:   Plaquemine, Your Honor (pronounced

15   differently.)

16       THE COURT:   Plaquemine, just plain ole -- I should

17   have known.   Plain ole Plaquemine.   I assume we can

18   take these up -- they're related; is that correct?

19       MR. BUSEY:   That's correct, Your Honor.

20       By the motion for determination of adequate

21   assurance, the debtors sought relief as to 12 utilities

22   who continued to object to the absence of security

23   deposits.   The Court has adjudicated four of those

24   objections by denying their request for utilities.   And

25   the Court has -- and we've resolved seven.   And the

1   remaining objection of that entire process now is the

2   City of Plaquemine.  And I think that we've reached

3   a resolution of the City of Plaquemine.

4       I give great credit to its counsel who lives just

5   north of New Orleans to be here today, and I'll let him

6   speak to the resolution that we've reached.

7       MR. CANOVA:  Thank you, Your Honor.  For the record

8   my name is Phil Canova.  I represent the City of

9   Plaquemine.  And we have entered a resolution today,

10  and beg the Court's indulgence, I'll go ahead and read

11  it.  We weren't able to actually get one prepared for

12  the Court.

13      "The City of Plaquemine hereby resonates to the

14  Court that we agree to the entry of the following order,

15  that the debtor's motion is granted as to the City of

16  Plaquemine.  The Plaquemine motion is denied and that

17  when Winn-Dixie is not required to provide postpetition

18  security deposit to the City of Plaquemine at this time.

19  And this order is without prejudice to the City of

20  Plaquemine's ability to renew it's request for a

21  security deposit should circumstances warrant."

22      I might disclose to the Court this is I think

23  identical to the order rendered by the Court for the

24  Jacksonville Energy Authority, which would allow the

25  City of Plaquemine to come back to this Court should --

1       God forbid -- Winn-Dixie fails to pay it's utility bill,

2       postpetition utility bill promptly.

3            THE COURT:  I'll ask you two questions.  Number

4       one, is Plaquemine still there?

5            MR. CANOVA:  Yes.  Yes, Your Honor.  Plaquemine is

6       fortunate to be 85 miles northwest of New Orleans.  As I

7       was telling everyone here, we just got normal hurricane

8       damage without utilities a day, that kind of thing.

9            THE COURT:  So that store is still open.

10           MR. CANOVA:  That store is still open as we speak.

11      Though I must tell Winn-Dixie, unfortunately for them,

12      they're getting some great advertising.  There's a store

13      in New Orleans right now that's being lewded that's got

14      Winn-Dixie Marketplace all over the place.

15           THE COURT:  As long as we don't have to pay the

16      liquidator.

17           (Laughter.)

18           THE COURT:  That being said, Mr. Post, do you have

19      an appropriate order or you'll have to furnish one?

20           MR. CANOVA:  We'll have to submit one, Your Honor.

21           MR. BUSEY:  We're going to have to prepare an order

22      and address it.  We'll do that and get it to the Court,

23      Your Honor.

24           THE COURT:  Thank you.

25           MR. WILCOX:  Your Honor, if I may.  Robert Wilcox

1       and I'm filing a notice of appearance for the City.

2               THE COURT:  Very well.  Thank you.

3               Mr. Busey, I'll look to you for the appropriate

4       orders.

5               MR. BUSEY:  Yes, Your Honor.

6               THE COURT:  And is there anything else we need to

7       deal with?

8               MR. BUSEY:  I believe there is, Your Honor.

9               THE COURT:  There's nothing else on the agenda.

10              MR. BUSEY:  No, there's not, Your Honor.  But

11      Mr. MacDonald wants to talk to you.

12              THE COURT:  It's Mr. MacDonald, I'll have to make

13      time, I guess.

14              MR. MACDONALD:  Thank you, Your Honor.  Yesterday

15      there were two companion motions filed with the Court.

16      First the unsecured creditors committee filed a motion

17      for authority to file a motion to disband the equity

18      committee under seal.  And the jist of that motion was

19      that the anticipated motion to disband would contain

20      confidential, sensitive information of the company.

21              There was also then shortly thereafter filed a

22      companion motion by the debtor, which sought to expand

23      the confidentiality concerns and direct that any

24      pleadings filed in response to the motion also be filed

25      under seal and that the limited recipients, as defined

1       in those motions, be defined and that hearings on the

2       motions be limited to the limited recipients.

3           The nature of the motions we believe is

4       administrative.  The actual Rule 90118 permits them to

5       be entered in certain circumstances without notice.  In

6       this instance, we understand that the committee supports

7       the debtor's motion and the debtor in return supports

8       the committee's motion.  And we ask that, in order to

9       advance the process, the Court considered granting both

10      of those motions entering the proposed orders so that

11      the underlying motion to disband can be filed in the

12      process advances.

13          THE COURT:  The Court will respectfully refuses to

14      do that.  I'm going to have the hearing next week.  I'm

15      going to put it on the calendar short notice to next

16      week.  Then we avoid a situation under the same

17      provision that people can later file objections and

18      there's no real window for that.  This way we do it with

19      notice, we avoid a certain amount of objecting to the

20      order after the hearing.  You know, once we consent --

21          MR. MACDONALD:  Your Honor, my --

22          THE COURT:  Tell me a reason why I can't wait a

23      week.

24          MR. BUSEY:  Your Honor, let me try to do that, if I

25      can.

1          MR. MACDONALD:  Then me also, Your Honor.

2          THE COURT:  I understand you put yours on the

3   agenda for next week.

4          MR. BUSEY:  We did.  We did on a notice of hearing

5   for next week, Your Honor.

6          There's a difference between these two motions.

7   The motion of the committee, which Mr. McDonald

8   presents, asks only for authority to file its motion

9   challenging the equity committee under seal, just the

10  motion.  The motion that the debtors have filed asks

11  that that motion, all responsive motions, pleadings,

12  evidence and argument and proceedings be held in camera.

13  That is the entire contested matter.

14         All for the same reasons, because they will contain

15  one, confidential business information that would be of

16  interest to competitors of the debtor and, therefore,

17  harmful to the estates; and two, we anticipate that the

18  evidence and arguments will contain material nonpublic

19  information that is sensitive to the publicly traded

20  securities of the debtor.

21         The committee -- the creditors committee has this

22  information, because they are already under a

23  confidentiality agreement with the debtor.  And the

24  motions contemplate that those matters will be limited

25  in circulation to parties in interest who agree to those

1        confidentiality terms.

2            The debtor does not object to the committee's

3        motion being filed under seal.  We know the committee is

4        anxious to have its motion filed.  And if you permit the

5        committee to file this motion under seal and then to

6        have the hearing next week on our motion on notice of

7        hearing, if for any reason you determine that none of

8        this should be done under seal, you could permit the

9        committee to withdraw its motion and file a motion that

10       it chooses to file.  That would be public in that

11       information.

12           But we don't -- we think -- we want the committee

13       to be satisfied that they are being -- the concern is

14       that they act promptly.  We don't see any problem with

15       their filing their motion under seal and then hearing

16       our motion as noticed next week.

17           MR. MACDONALD:  Your Honor, one final observation.

18       If the committee were permitted to file its motion under

19       seal, then the hearing next week will be based upon an

20       actual issue rather than a theoretical issue; and,

21       therefore, I believe next week's hearing will be more

22       meaningful since we will actually have the details

23       with which to wrestle.  And at that point if Your Honor

24       concludes that sealing is not appropriate, the quick

25       remedy is simply unseal it.  And it's no harm, no fowl

1  to anyone for the week.

2       MR. BUSEY:  No, the quick remedy would be for you

3  to withdraw it, not hear it.

4       (Laughter.)

5       THE COURT:  That was one of the thoughts.

6       (Laughter.)

7       THE COURT:  Well, I've got your proposed order.

8  I'll consider that.  I'm going to have to think about

9  that a little bit.

10      MR. MACDONALD:  Thank you, Your Honor.

11      THE COURT:  Yes.

12      MS. DENNISTON:  Your Honor, if I could be heard

13  briefly on this issue, since I am proposed counsel to

14  the equity committee that is about to -- the motion is

15  about to be filed regarding its existence.  I would ask

16  that the equity committee's proposed council be provided

17  with notice of all these pleadings so that it will be

18  able to react accordingly.

19      We have received copies of the pleadings from the

20  debtor's counsel, but not the committee.  And,

21  obviously, there are issues next Thursday that will be

22  near and dear to the equity committee's heart.  And

23  I would just ask that the request for notice to the

24  proposed counsel will be noted in the record and

25  complied with.

1    THE COURT:  Mr. McDonald, any problem giving them a

2    courtesy copy?

3    MR. MACDONALD:  No, Your Honor.  In fact, our order

4    contemplates that the equity committee and their

5    professionals would be within the limited recipients.

6    MR. BUSEY:  And we sent it to Mr. Chunn

7    electronically.

8    THE COURT:  Oh yeah.

9    (Laughter.)

10   MR. MACDONALD:  You see how well the system is

11   working, Your Honor.

12   THE COURT:  Ms. Escamilla.

13   MS. ESCAMILLA:  Your Honor, without going into the

14   reasons for the creation of 107(a) and the public's

15   general right to inspect and copy public documents, I

16   guess the issue is we don't know what the information is

17   and to know whether it fits within the exceptions

18   of 107.

19   I'm glad that the Court is continuing the hearing.

20   I have seen the notice that was prepared by the debtor,

21   and it requests that all objections be filed on Labor

22   Day.  I don't particularly want to work on Labor Day.

23   So I ask the Court to continue the objection period

24   either the day before the hearing on the 8th, but

25   September 5th is now the deadline to file the

1    objections, which will give me tomorrow to file it,

2    which I may be able to do.  But I'd like to have the

3    option of making it a better objection.

4         MR. BUSEY:  Your Honor, we -- to clarify the

5    confusion about that, we obviously weren't sensitive to

6    the date.  We don't pay as much attention to holidays,

7    but we have no objection to Ms. Escamilla filing on the

8    following Tuesday.

9         THE COURT:  Anybody that files it the next business

10   day after the holiday couldn't be penalized in my book,

11   That's mostly understood.

12        MS. ESCAMILLA:  One of our objections will be that

13   it's not specific in nature as to the information that

14   they're requesting to be sealed.

15        THE COURT:  I understand.

16        MS. ESCAMILLA:  Thank you, Your Honor.

17        THE COURT:  I'll get something out one way or the

18   other on that, Mr. McDonald.  Either I'll grant it or

19   I'll notice it at the hearing.

20        MR. MACDONALD:  Your Honor, I have a nice bond copy

21   of the order if you would be pleased to have it.

22        THE COURT:  Once it's electronically converted, it

23   doesn't matter whether it's on bond paper.

24        Hearing is concluded.

25        (Whereupon, at 1:44 p.m., on Thursday, September 1,

1        2005, the hearing in the above-entitled matter was

2        concluded.)

3                              - - -

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3     STATE OF FLORIDA )

4     COUNTY OF DUVAL  )

5          I, Loretta D. McDonald, Professional Court Reporter, do

6     hereby certify that the attached material represents the

7     original records of proceedings before the United States

8     Bankruptcy Court, Middle District of Florida, Jacksonville

9     Division, before the Honorable Jerry A. Funk, United States

10    Bankruptcy Judge, in the matter of WINN-DIXIE STORES, INC.;

11    such Record is an accurate and complete recordation of the

12    proceedings which took place.  A transcript of this Record

13    has been produced on March 29, 2006, the original of which

14    was delivered to the Transcript Copy Custodian, Jacksonville,

15    Florida.

16

17                         STATEWIDE REPORTING SERVICE

18

19                         *Loretta D. McDonald*
                           LORETTA D. MCDONALD

20

21

22

23

24

25