**Hearing Date: May 4, 2006, 1:00 p.m.**
**Objection Deadline: May 1, 2006, 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

**APPLICATION FOR ORDER APPROVING SUPPLEMENT TO DEBTORS' RETENTION OF PRICEWATERHOUSECOOPERS LLP**

Winn-Dixie Stores, Inc. ("Winn-Dixie") and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order supplementing the terms of the Debtors' previously approved retention of PricewaterhouseCoopers LLP ("PwC") pursuant to 11 U.S.C. §§ 327(a) to include, effective as of April 14, 2006, the provision by PwC of services related to the enhancement of the Debtors' information technology security program (the "Supplemental Application"). In support of the Supplemental Application, the Debtors state as follows:

**Background**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005, was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4. On March 22, 2005, the Debtors filed an application seeking authorization to retain PwC to provide documentation, testing, and other internal auditing services in connection with the Debtors' compliance with section 404 of the Sarbanes-Oxley Act of 2002 and the Debtors' other internal auditing needs. (Docket No. 487, the "PwC Application"). On May 20, 2005, the Court entered an order authorizing the Debtors to retain PwC. (Docket No. 1317, the "PwC Order").

5. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**Relief Requested**

6. By this Supplemental Application, the Debtors seek entry of an order supplementing the terms of the Debtors' previously approved retention of PwC to include, effective as of April 14, 2006, the provision by PwC of services related to the enhancement of the Debtors'

information technology security program. The Debtors request authority to retain PwC to perform such services on the terms provided in the letter agreement between the Debtors and PwC dated March 28, 2006 (the "New Engagement Letter") and the Supplemental Declaration of Kevin W. Campbell in Support of the Application for Order Approving Supplement to Debtors' Retention of PricewaterhouseCoopers LLP dated April 13, 2006 (the "Supplemental Declaration").[2] Copies of the New Engagement Letter and the Supplemental Declaration are respectively attached as Exhibit A and Exhibit B to this Supplemental Application.

**Basis for Relief**

7. The Debtors need the services of PwC to ensure that the security of their information technology remains at the highest possible level. Although PwC has previously been retained to provide services to the Debtors in accordance with the PwC Order, the current terms of PwC's approved retention do not encompass services related to the enhancement of the Debtors' information technology security. Accordingly, by this Supplemental Application, the Debtors propose to supplement the terms of PwC's retention to include such services.

8. The Debtors' proposed supplement to PwC's retention includes the following services, as described in the New Engagement Letter:

(a) IT Security Strategy Development: PwC will work with the Debtors to: (i) confirm the current state of security; (ii) determine the relevant business objectives, risks, and regulatory and legal drivers for security; (iii) establish a desired future state; and (iv) create a maturity model to assist with the prioritization and implementation of security initiatives over the next 12-24 months. To that end, PwC will focus on the following areas of security: (a) Governance – Defining the purpose and scope of the information technology security governance program (an "IT Governance Program"); (b) Policies, Procedures, and Standards – Determining the structure around security policy management and defining a framework within which to develop new policies, procedures, and standards; (c) Awareness & Training – Defining current security

[2] The services for which the Debtors seek to retain PwC are ordinary course professional services that would normally be subject to the Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business (the "OCP Order") dated March 4, 2005. The Debtors filed the PwC Application and are filing this Supplemental PwC Application pursuant to section 327(a) of the Bankruptcy Code because they anticipate that the cost of services to be provided by PwC will exceed the monthly and case caps provided in the OCP Order.

awareness initiatives and identifying new programs to support the strategy; (d) Risk Identification – Defining the desired components of a program to identify risks to information security assets; (e) Information Management – Defining the desired components of a program to analyze security events and escalate those that present a risk to the business; (f) Remediation – Defining the desired actions for a program to mitigate and resolve security incidents; (g) Change Control – Establishing a framework for security to leverage and interact with current change control processes; (h) Asset Management – Defining the integration points with existing or proposed asset management processes to leverage asset data and increase the value and effectiveness of the IT security strategy; and (i) Reporting – Defining the desired scope of security reporting and determining the appropriate integration with existing reporting capabilities and developing a framework to allow future security initiatives to support that scope.

(b) Capability Development: PwC will work with the Debtors to establish a sustainable IT Governance Program by: (i) developing the charter; (ii) defining team composition; (iii) defining the organizational structure; (iv) establishing sponsorship; (v) defining roles and responsibilities; (vi) defining decision processes; and (vii) defining accountabilities. PwC will also work with the Debtors to develop an information classification model to allow the Debtors to prioritize security efforts, allocate appropriate security resources, and align security control initiatives to business objectives and the security strategy by: (i) identifying the scope of information assets; (ii) identifying the relevant business risks; (iii) establishing a classification scheme; and (iv) classifying a sample of information assets.

Subject to the Court's approval of this Supplemental Application, PwC has indicated its willingness to provide the services described above.

9. The proposed supplement to PwC's retention as described in this Supplemental Application is critical to ensuring the successful enhancement of the Debtors' information technology security in a cost-effective manner. As a result of its prior engagements with the Debtors, PwC has worked closely with the Debtors and has acquired significant knowledge of the Debtors' business. Moreover, PwC has extensive experience in this area and has provided similar services to other companies. Accordingly, the supplement to PwC's retention proposed by this Supplemental Application is in the best interests of the Debtors, their estates, and all parties in interest.

10. To the best of the Debtors' knowledge, except as described in (a) the PwC Application, (b) this Supplemental Application, (c) the Declaration of Elizabeth Dantin and Disclosure of Compensation attached as Exhibit B to the PwC Application, and (d) the Supplemental Declaration: (i) PwC neither holds nor represents any interest adverse to the Debtors' estates; (ii) PwC has had no affiliation with the Debtors, their creditors or any party in interest, or their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or the Bankruptcy Judge presiding over these cases; and (iii) PwC is a "disinterested person" within the meaning of Sections 101(14) and 327(a) of the Bankruptcy Code.

11. Consistent with the New Engagement Letter and as described in the Supplemental Declaration, the Debtors have agreed to pay PwC reasonable sums in accordance with the normal rates charged by PwC for the services described in this Supplemental Application, and to compensate PwC for reasonable and necessary out of pocket expenses incurred, which expenses may include travel, report preparation, delivery services, and other necessary costs in providing services to the Debtors in accordance with PwC's customary reimbursement policies. PwC's hourly rates for professional services are based upon the individual resources provided from PwC's various lines of business and are currently as follows:

| | |
|---|---|
| Partners | $325 to $500 |
| Directors/Senior Managers | $275 to $375 |
| Managers | $200 to $350 |
| Senior Associates/Associates | $175 to $250 |

These rates are PwC's normal and customary rates for the type of services to be provided. The Debtors are advised that these rates are subject to change but that any changes will remain in line with market rates for comparable services.

12. Except as supplemented by the terms described in this Supplemental Application and the Supplemental Declaration, the Debtors propose, and the parties have agreed, that the terms of PwC's retention in these cases will otherwise remain the same.

**Notice**

13. Notice of this Supplemental Application has been provided to (a) counsel for the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) PwC. No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (a) enter an order in the form of Exhibit C supplementing the terms of the Debtors' previously approved retention of PwC to include, effective as of April 14, 2006, the provision by PwC of services related to the enhancement of the Debtors' information technology security program and (b) grant such other and further relief as the Court deems just and proper.

Dated: April 18, 2006.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By *s/ D. J. Baker*
D. J. Baker
Sally McDonald Henry
Rosalie Walker Gray
David M. Turetsky
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for the Debtors

SMITH HULSEY & BUSEY

By *s/ Cynthia C. Jackson*
Stephen D. Busey
James H. Post
Cynthia C. Jackson
Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for the Debtors

**Exhibit A**



PricewaterhouseCoopers LLP
10 Tenth Street, Suite 1400
Atlanta GA 30309-3851
Telephone (678) 419 1000
Facsimile (678) 419 1239

March 28, 2006

Mr. Jeffrey Gleason
Director of Internal Audit
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254

Subject: Information Technology Security Strategy Assessment

Dear Mr. Gleason;

This letter confirms that, subject to approval by the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"), PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PricewaterhouseCoopers" or "we") has been retained by Winn-Dixie Stores, Inc (Winn-Dixie). ("Client" or "you") to provide the services (the "Services") set out below. The purpose of this letter, including the attached Terms and Conditions, is to confirm the understanding of our respective responsibilities and the terms of this engagement (the "Agreement"). If PricewaterhouseCoopers commenced the performance of the Services prior to the execution of this Agreement, this Agreement shall be effective as of the commencement of such Services.

Scope of Our Services

Winn-Dixie's security organization transformation requires an ongoing commitment of resources and focus to deliver both immediate and long-term payback. The objective of this project is to identify and formalize a sustainable IT Security Strategy while developing the initial capabilities that will allow Winn-Dixie to realize that strategy.

The goal of the IT Security Strategy Development is to design short and long term plans to create an IT security organization and establish the relevant and necessary areas of focus to mature over time. The goal of the Capability Development is to begin executing upon that strategy by implementing the first foundational components. These capabilities include detailed development of the IT Security Governance program and an information classification model. This engagement will consist of the following tasks:

PRICEWATERHOUSECOOPERS

You have engaged us to perform the following advisory services:

1) IT Security Strategy Development
   - In this task, PwC will work with Winn-Dixie to:
     - Confirm the current state of security;
     - Determine the relevant business objectives, risks, and regulatory and legal drivers for security;
     - Establish a desired future state; and,
     - Create a maturity model to assist with the prioritization and implementation of security initiatives over the next 12-24 months.
   - To that end, PwC will focus on the following areas of security:
     - Governance - Defining the purpose and scope of the IT security governance program
     - Policies, Procedures, and Standards - Determining the structure around security policy management and defining a framework within which to develop new policies, procedures, and standards
     - Awareness & Training - Defining current security awareness initiatives and identifying new programs to support the strategy
     - Risk Identification - Defining the desired components of a program to identify risks to information security assets
     - Information Management - Defining the desired components of a program to analyze security events and escalate those that present a risk to the business
     - Remediation - Defining the desired actions for a program to mitigate and resolve security incidents
     - Change Control - Establishing a framework for security to leverage and interact with current change control processes
     - Asset Management - Defining the integration points with existing or proposed asset management processes to leverage asset data and increase the value and effectiveness of the IT security strategy
     - Reporting - Defining the desired scope of security reporting and determining the appropriate integration with existing reporting capabilities and developing a framework to allow future security initiatives to support that scope.
2) Capability Development
   - In this task, PwC will work with Winn-Dixie to:
     a) Establish a sustainable IT Security Governance program by:
        - Developing the Charter;
        - Defining Team Composition;
        - Defining the Organizational Structure;
        - Establishing Sponsorship;
        - Defining Roles and Responsibilities;
        - Defining Decision Processes; and,
        - Defining Accountabilities.



b) Develop an information classification model to allow Winn-Dixie to prioritize security efforts, allocate appropriate security resources, and align security control initiatives to business objectives and the security strategy by:
   - Identifying the Scope of Information Assets;
   - Identifying the relevant Business Risks;
   - Establishing a Classification Scheme; and,
   - Classifying a sample of Information Assets.

We will perform the Services in accordance with the Standards for Consulting Services established by the American Institute of Certified Public Accountants ("AICPA"). Accordingly, we will provide no opinion, attestation or other form of assurance with respect to our work or the information upon which our work is based. The procedures we will be performing under this Agreement will not constitute an examination or a review in accordance with generally accepted auditing standards or attestation standards. We will not audit or otherwise verify the information supplied to us in connection with any engagement under this Agreement, from whatever source, except as may be specified in this Agreement.

The Services do not include the provision of legal advice and PricewaterhouseCoopers makes no representations regarding questions of legal interpretation. Client should consult with its attorneys with respect to any legal matters or items that require legal interpretation, under federal, state or other type of law or regulation. Changes in the law or in regulations and/or their interpretation may take place after the date that our engagement commences, or may be retrospective in impact; we accept no responsibility for changes in the law or regulations or their interpretation which may occur after the effective date of our engagement.

Client Responsibilities

Client shall provide PricewaterhouseCoopers with all information relevant to the Services and any reasonable assistance as may be required to properly perform the Services. Client represents and warrants to PricewaterhouseCoopers that all such information will be accurate and complete in all material respects. The overall definition and scope of the work to be performed, and its adequacy in addressing Client's needs, is Client's responsibility. Client shall perform all management functions and make all management decisions in connection with the Services, and shall assign competent individuals to oversee the Services. Client is also responsible for the implementation of actions identified in the course of this engagement and results achieved from using any Services or Deliverables (as defined below). Any timing or fee estimate we have provided for this engagement takes into account the agreed-upon level of assistance from Client and commitment of Client resources.

PRICEWATERHOUSECOOPERS

Client shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Client shall perform the tasks and provide the assistance described in this services engagement contract. Client shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides. Client consents to the use, by staff visiting or working from the Client site, of the Client's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources. Client agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the parties and set forth herein.

PricewaterhouseCoopers has not been engaged to, nor will PricewaterhouseCoopers provide any management functions or make management decisions for Client under this Agreement. It is Client's responsibility to establish and maintain its internal controls. You confirm that the requirements for audit committee pre-approval under the Sarbanes-Oxley Act of 2002 have been complied with relating to this engagement.

Deliverables

The term "deliverables" will generally be used when written or oral reports will be developed by PricewaterhouseCoopers and submitted to the client. The term "project outputs" will generally be used when we work with the client and do not provide written or oral reports (e.g., facilitating development of action plans, providing oral advice, assisting the client in drafting their policies/procedures and the like).

We expect as a result of this project the following deliverables will be created:

1) IT Security Strategy Development
   - A report, in Microsoft Word format, detailing the current state of the areas described above, the drivers for improving security, a desired state with relevant timelines, and a set of capability maturity curves representing a path from the current state to the desired state.
   - A presentation, in Microsoft PowerPoint format, summarizing the security strategy
2) Capability Development
   a) IT Security Governance Program
      - A set of documents, in Microsoft Word format, containing all of the program components as defined above and an awareness/education workshop.
   b) Information Classification Model
      - A document, in Microsoft Word format, describing the model and how to use it, an awareness/education workshop, and a sample of classified assets (documentation describing how those assets were classified using the model and their specific classifications).

During the time frame of the development and delivery of these work outputs, PwC will conduct a specific, detailed knowledge transfer session to a dedicated IT security employee designated by Winn-Dixie.

PRICEWATERHOUSECOOPERS

Subject to the restrictions in this Agreement, Client will own all tangible written material originally prepared expressly for Client and delivered to Client under this Agreement (the "Deliverables"), excluding any PwC Materials contained or embodied therein. PricewaterhouseCoopers shall own any general skills, know-how, expertise, ideas, concepts, methods, techniques, processes, software, materials or other intellectual property or information which may have been discovered, created, developed or derived by PricewaterhouseCoopers either prior to or as a result of its provision of Services under this Agreement ("PwC Materials"). PricewaterhouseCoopers' working papers and PricewaterhouseCoopers' Confidential Information (as defined in the attached Terms and Conditions) belong exclusively to PricewaterhouseCoopers. Client will have a non-exclusive, non-transferable license to use PricewaterhouseCoopers' Confidential Information for Client's own internal use and only for the purposes for which they are delivered to the extent that they form part of the Deliverables.

All Deliverables are solely for Client's internal use and benefit. Client shall not authorize any third Party ("Third Party") to rely upon any of the Deliverables without PricewaterhouseCoopers' prior written consent. Client shall not distribute to, discuss with, or otherwise disclose the Deliverables to any Third Party without PricewaterhouseCoopers' prior written consent, and Client shall not otherwise discuss the fact or substance of the Services hereunder with Third Parties without PricewaterhouseCoopers' prior written consent. PricewaterhouseCoopers accepts no liability or responsibility to any Third Party who benefits from or uses the Services or gains access to the Deliverables. PricewaterhouseCoopers and Client may have discussions regarding the Services and/or Deliverables; provided, however, that oral or preliminary information, drafts or advice given by PricewaterhouseCoopers may not be relied upon or attributed to PricewaterhouseCoopers unless PricewaterhouseCoopers specifically confirms such information or advice or otherwise reduces such draft to a final writing.

Because PricewaterhouseCoopers accepts no liability to third parties with respect to the Services and Deliverables, Client agrees (without limiting any other indemnification provision set forth in this Agreement) to indemnify and hold PricewaterhouseCoopers harmless from and against any and all Third Party claims, suits and actions, and all associated damages, settlements, losses, liabilities, costs, and expenses, including without limitation reasonable attorneys fees, arising from or relating to the Services and/or Deliverables under this Agreement, except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of PricewaterhouseCoopers relating to such Services and/or Deliverables.



Our team

The project team will be led by:

- Kevin Campbell, a Partner in our Advisory Performance Improvement practice
- Paul Benz, a Director in our Advisory IT Effectiveness practice
- David Goldman, a Director in our Advisory IT Security practice

We will give you prompt notice of any personnel change and, on request; you may review the qualifications of and approve any replacement personnel.

Timetable

This engagement is estimated to take approximately eight weeks to complete, beginning on May 1, 2006.

PricewaterhouseCoopers will use all reasonable efforts to perform the Services in accordance with the timeframe set out herein; however, dates are targets used for planning purposes and, depending on circumstances and Client cooperation, may need to be adjusted.

Fees and Expenses

Invoices will be rendered and are payable in accordance with applicable provisions of the United States Bankruptcy Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Federal Rules"), the local rules of the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), and applicable orders entered by the Bankruptcy Court in Client's Chapter 11 case ("Orders").

Our fees for completion of this project, as previously described, will be based upon the time and materials expended by our professionals, plus our reasonable out-of-pocket expenses. We estimate that our professional fees will be $288,000. In the event this project is expected to exceed this estimate, we will advise you in a timely manner

We also will bill Client for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel. Our internal per ticket travel charge is an allocation of estimated costs of running our travel department in a manner to maximize cost savings and minimize total costs.

Subject to applicable provisions of the Bankruptcy Court, the Federal Rules, the Local Rules, and the Orders, invoices are due upon receipt.



Choice of law and forum

This Agreement will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to the provisions relating to conflict of laws. The federal or state courts of the state of New York shall have exclusive jurisdiction of any claims arising out this engagement. Notwithstanding the foregoing, during the pendency of the Client's Chapter 11 case, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine all matters arising from the Agreement.

* * * * *

This letter and the attached Terms and Conditions set forth the rights and responsibilities of the parties with respect to the Services. The attachment is an integral part of this agreement.

We are pleased to have the opportunity to provide our services to Winn-Dixie Stores, Inc. and appreciate your confidence in us. If you have any questions about the contents of this letter, please discuss them with Kevin Campbell, 678-419 1656. If the Services and terms outlined herein are acceptable, please sign one copy of this letter in the space provided and return it to me.

Very truly yours,

PricewaterhouseCoopers LLP

PricewaterhouseCoopers LLP

ACKNOWLEDGED AND AGREED:

**Winn Dixie Stores, Inc.**

PL 4-4-06

**Signature of client official:** ____________

**Please print name:** PETER LYNCH / BENNETT NUSSBAUM

**Title:** CEO / CFO

**Date:** 4/4/06

LEGAL APPROVED
ATTY: JFC
DATE: 3/31/06



**Terms and Conditions**

These Terms and Conditions and the engagement letter (and any attachments) (the "Engagement Letter"), and any subsequent amendments or addenda thereto, to which these Terms and Conditions are attached (collectively, the "Agreement") constitute the entire agreement between the client to which such engagement letter is addressed ("Client") and PricewaterhouseCoopers LLP, a limited liability partnership organized under the laws of the State of Delaware ("PricewaterhouseCoopers"), regarding the project described in the Engagement Letter. Capitalized terms not otherwise defined herein, shall have the meaning ascribed to them in the Engagement Letter.

Timing. PricewaterhouseCoopers shall not be responsible for any delay, cost increase or other consequences due to Client's failure to perform any of its obligations under this Agreement or otherwise due to factors beyond PricewaterhouseCoopers' reasonable control. PricewaterhouseCoopers will use commercially reasonable efforts to mitigate such costs or expenses. Any PricewaterhouseCoopers deadline that is affected by any Client default or factors beyond PricewaterhouseCoopers' reasonable control shall be extended by an amount of time equal to the length of such failure plus an additional period of time, if reasonably necessary, to compensate for such default or factors.

Electronic Mail Communications. Each party shall use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

Acceptance. The passage of ten (10) working days from the date when a Deliverable is provided to Client without receipt by PricewaterhouseCoopers of notice of non-acceptance by Client, or use by Client of a Deliverable will constitute final acceptance by Client.

Termination. Either party may terminate this Agreement at any time by giving the other written notice of termination. In the event of termination, Client will be responsible for fees earned and expenses incurred through the effective date of termination. PricewaterhouseCoopers may also resign from performing all or any portion of the Services and terminating this Agreement immediately upon written notice in the event that circumstances arise that would make continuation of all or any portion of the Services by PricewaterhouseCoopers in conflict with any independence or other professional regulations, standards or guidelines to which PricewaterhouseCoopers conforms.

Warranty. PricewaterhouseCoopers warrants that it has the requisite power and authority to enter into and perform its obligations under this Agreement. PricewaterhouseCoopers further warrants that the Services will be performed by qualified personnel. PricewaterhouseCoopers will provide Services in a manner consistent with the terms and conditions of this Agreement and in accordance with the Standards for Consulting Services established by the American Institute of Certified Public Accountants ("AICPA"). THE WARRANTIES IN THIS SECTION, ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, OR WHETHER ARISING BY COURSE OF DEALING OR PERFORMANCE, CUSTOM, USAGE IN THE TRADE OR PROFESSION OR OTHERWISE, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

Confidentiality. All data relating specifically to a party's business and any other information which reasonably should be understood to be confidential in nature are confidential information of such party. PricewaterhouseCoopers' proprietary software, tools, methodologies, techniques, ideas, discoveries, inventions, know-how and any other information which reasonably should be understood to be confidential to PricewaterhouseCoopers are confidential information of PricewaterhouseCoopers. Client confidential information and PricewaterhouseCoopers confidential information are collectively referred to as "Confidential Information." Each party shall use Confidential Information of the other party only in furtherance of the purposes of this Agreement and shall not disclose such Confidential Information to any Third Party without the other party's prior written consent. Each party agrees to take reasonable measures to protect the confidentiality of the other party's Confidential Information and to advise its employees of the confidential nature of the Confidential Information and of the confidentiality provisions and use prohibitions herein.

Notwithstanding anything to the contrary contained in this Agreement, neither party shall be obligated to treat as confidential any information disclosed by the other party (the "Disclosing Party") which: (i) is rightfully known to the recipient prior to its disclosure by the Disclosing Party; (ii) is released by the Disclosing Party to any other person or entity (including governmental agencies) without restriction; (iii) is independently developed by the recipient without any use of or reliance on Confidential Information; or (iv) is or later becomes publicly available without violation of this Agreement or may be lawfully obtained by a party from any nonparty. Notwithstanding the foregoing, either party may disclose Confidential Information of the other to a Third Party as may be required by law, statute, rule or regulation, including any subpoena or other similar form of process, provided that (and without breaching any legal or regulatory requirement) the party to which the request is made provides the other party with prompt written notice thereof and, if practicable under the circumstances, allows the other party to seek a restraining order or other appropriate relief. In addition, PricewaterhouseCoopers may disclose Confidential Information pursuant to requirements of any professional self-regulatory authority. Subject to PricewaterhouseCoopers' confidentiality obligations in this Agreement, nothing herein shall preclude or limit PricewaterhouseCoopers from providing services similar to the Services to other PricewaterhouseCoopers clients.

Indemnification and Liabilities. Subject to the provisions hereof, each party shall indemnify, defend and hold harmless the other from and against any and all amounts payable under any judgment, verdict, court order or settlement for death or bodily injury or the damage to or loss or destruction of any real or tangible personal property, but only to the extent the foregoing arise out of the indemnitor's negligence or intentional misconduct in the performance of this Agreement.

PRICEWATERHOUSECOOPERS

PricewaterhouseCoopers agrees to indemnify, defend and hold harmless Client from and against any and all amounts payable under any judgment, verdict, court order or settlement for Third Party claims of infringement of any trade secrets, copyrights, trademarks or trade names alleged to have occurred and arising from the Deliverables. Should Client's use of such Deliverables be determined to have infringed, or if, in PricewaterhouseCoopers' judgment, such use is likely to be infringing, PricewaterhouseCoopers may, at its option: (i) procure for Client the right to continue using such Deliverables provided, or (ii) replace or modify them to make their use non-infringing while yielding substantially equivalent results. If neither of the above options are or would be available on a basis that PricewaterhouseCoopers finds commercially reasonable, then, PricewaterhouseCoopers may terminate this Agreement, Client shall return such Deliverables provided to PricewaterhouseCoopers and PricewaterhouseCoopers will refund to Client the fees paid for the Deliverables provided, less a reasonable allowance for use. This infringement indemnity does not cover claims arising from: the combination of such Deliverables with products or services not provided by PricewaterhouseCoopers; the modification of such Deliverables by any person, other than PricewaterhouseCoopers; Deliverables complying with or based upon: (1) designs provided by or at the direction of Client or (2) specifications or other information provided by or at the direction of the Client; or use of systems, materials or work performed in a manner not permitted or contemplated hereunder or by another obligation of Client to PricewaterhouseCoopers.

Client agrees on behalf of all of its business operations in which Client has a direct or indirect controlling interest and that are receiving Services or Benefits of Services under this Agreement ("Service Recipients"), that they are bound by these provisions as if they were parties to this Agreement. Without limiting any other indemnification provision set forth in this Agreement, except to the extent finally judicially determined to have resulted primarily from the gross negligence, fraud, or willful misconduct of PricewaterhouseCoopers, client agrees to indemnify and hold harmless PricewaterhouseCoopers and the Beneficiaries from and against any claim that is asserted by any Service Recipient other than Client arising out of or relating to the Services and/or Deliverables provided under this Agreement, and all liabilities, costs, damages and expenses imposed or incurred in connection therewith, including reasonable attorneys' fees.

EXCEPT TO THE EXTENT FINALLY DETERMINED TO HAVE RESULTED FROM THE GROSS NEGLIGENCE, FRAUD, OR WILLFUL MISCONDUCT OF PRICEWATERHOUSECOOPERS, PRICEWATERHOUSECOOPERS' LIABILITY TO PAY DAMAGES FOR ANY LOSSES INCURRED BY CLIENT AS A RESULT OF BREACH OF CONTRACT, NEGLIGENCE OR OTHER TORT COMMITTED BY PRICEWATERHOUSECOOPERS, REGARDLESS OF THE THEORY OF LIABILITY ASSERTED, IS LIMITED TO NO MORE THAN THE TOTAL AMOUNT OF FEES PAID TO PRICEWATERHOUSECOOPERS UNDER THIS AGREEMENT. IN ADDITION, PRICEWATERHOUSECOOPERS WILL NOT BE LIABLE IN ANY EVENT FOR LOST PROFITS OR ANY CONSEQUENTIAL, INDIRECT, PUNITIVE, EXEMPLARY OR SPECIAL DAMAGES. In addition, PricewaterhouseCoopers shall have no liability to Client arising from or relating to any Third Party hardware, software, information or materials selected or supplied by Client.

Should the results of the Services be relied upon by a PricewaterhouseCoopers audit team, the liability limitations and the indemnification from Client will not apply to such Services.

<u>Changes; Additional Services</u>. PricewaterhouseCoopers will not be responsible for work that is beyond the scope of Services set forth in this Agreement. Either party may request changes to the Services. Changes must be agreed in writing between the parties.

For the duration of the Assignment, and for 12 months after its termination or completion, Client will not solicit, directly or indirectly, any PricewaterhouseCoopers employee who has taken part in the performance of the Services, without PricewaterhouseCoopers' prior written consent. PricewaterhouseCoopers, in furnishing Services to Client, is acting only as an independent contractor and is not acting as a fiduciary of Client. No delay or omission by either party in exercising any right or power shall impair such right or power or be construed to be a waiver. A waiver by either party of any of the covenants to be performed by the other or any breach thereof shall not be construed to be a waiver of any succeeding breach or of any other covenant. No waiver or discharge shall be valid unless in writing and signed by an authorized representative of the party against whom such waiver or discharge is sought to be enforced. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their permitted successors and assigns, and, except as expressly provided herein, nothing in this Agreement shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement. Neither party may, nor shall have the power to, assign or transfer this Agreement or any rights or obligations hereunder or claims arising hereunder, without the prior written consent of the other party. This Agreement supersedes any prior understandings, proposals or agreements with respect to the Services. Client accepts and acknowledges that any legal proceedings arising from or in connection with the Services must be commenced within one year from the date Client became aware or ought reasonably to have become aware of the facts which give rise to PricewaterhouseCoopers' alleged liability and in any event no later than two years after any such cause of action accrued. The terms and conditions of this Agreement shall be considered Confidential Information and neither party may disclose the terms and conditions of this Agreement without the other party's prior written consent. However, Client agrees that PricewaterhouseCoopers may use Client's name in experience citations. The provisions of this Agreement, which expressly or by implication are intended to survive its termination or expiration, will survive and continue to bind both parties. If any provision of this Agreement is declared or found to be illegal, unenforceable or void, then both parties shall be relieved of all obligations arising under such provision, but if the remainder of this Agreement shall not be affected by such declaration or finding and is capable of substantial performance, then each provision not so affected shall be enforced to the extent permitted by law. Except as expressly provided herein, all remedies provided for in this Agreement shall be cumulative and in addition to and not in lieu of any other remedies available to either party at law, in equity or otherwise. Where agreement, approval, acceptance, consent or similar action by Client or PricewaterhouseCoopers is required, such action shall not be unreasonably delayed or withheld. Headings in this Agreement are for convenience only, and shall not be used in interpreting this Agreement. Neither party shall be liable to the other for any delay or failure to perform any of the Services or obligations set forth in this Agreement due to causes beyond its reasonable control.

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.1 | ) | Jointly Administered |

**SUPPLEMENTAL DECLARATION OF KEVIN W. CAMPBELL IN SUPPORT OF THE APPLICATION FOR ORDER APPROVING SUPPLEMENT TO DEBTORS' RETENTION OF PRICEWATERHOUSECOOPERS LLP**

I, Kevin W. Campbell, pursuant to 28 U.S.C. § 1746, herby declare that the following is true to the best of my knowledge, information and belief:

1. I am a Certified Public Accountant and a partner of PricewaterhouseCoopers LLP ("PwC"), an accounting and financial services firm with offices at numerous locations around the world, including an office located at 10 Tenth Street, Suite 1400, Atlanta, Georgia 30309, and am authorized to execute this declaration on behalf of PwC.

---

1 In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2. I submit this declaration on behalf of PwC ("the Supplemental Declaration") in support of the Application for Order Approving Supplement to the Debtors' Retention of PricewaterhouseCoopers LLP (the "Supplemental Application") of Winn-Dixie Stores, Inc, *et al.*, the Debtors and Debtors-in-Possession (the "Debtors") in the above-captioned Chapter 11 cases for an order supplementing the terms of the Debtors' previously approved retention under 11 U.S.C. § 327(a) of PwC to include the provision that PwC will provide advisory services related to the transformation and enhancement of the Debtors' information technology security program. Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[2]

3. Pursuant to our agreements with the Debtors, PwC's hourly rates for the professional services called for in the Supplemental Application are based upon the individual resources provided from PwC's various lines of business and are as follows:

| | |
|---|---|
| Partners | $325 to $500 |
| Directors/Senior Managers | $275 to $375 |
| Managers | $200 to $350 |
| Senior Associates/Associates | $175 to $250 |

---

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals and paraprofessionals at PwC and are based on information provided by them.

4. I have reviewed the Declaration of Elizabeth Dantin, dated March 22, 2005 in support of the initial employment of PwC in this case and I believe that the information filed therein remains accurate and complete and does not need to be supplemented at this time to support the Supplemental Application. Accordingly, to the best of my knowledge, PwC is a "disinterested person," as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b). PwC will continue to monitor its relationships with creditors and other interested parties in this bankruptcy proceeding and should any relationships arise that would pose a potential conflict or cause PwC to not be disinterested in this case we will file an additional declaration and provide notice to the Court of the potential conflict.

5. I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge, information and belief.

Executed at Atlanta, Georgia on April 13, 2006

Name: Kevin W. Campbell
Title: Partner

**Exhibit C**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ORDER APPROVING SUPPLEMENT TO DEBTORS' RETENTION OF PRICEWATERHOUSECOOPERS LLP**

These cases came before the Court for hearing on April 20, 2006, upon the application of Winn-Dixie Stores, Inc. and its twenty-three subsidiaries and affiliates in the above-captioned jointly-administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order supplementing the terms of the Debtors' previously approved retention under 11 U.S.C. §§ 327(a) of PricewaterhouseCoopers LLP ("PwC") to include, effective as of April 14, 2006, the provision by PwC of services related to the enhancement of the Debtors' information security program (the "Supplemental Application").[1] The Court has reviewed the Supplemental Application, the letter agreement between the Debtors and PwC dated March 28, 2006 and attached as Exhibit A to the Supplemental Application (the "New Engagement Letter") and the Supplemental Declaration of Kevin W. Campbell in Support of the Application for Order Approving Supplement to Debtors' Retention of PricewaterhouseCoopers LLP dated April 13, 2006 and attached as Exhibit B to the Supplemental Application (the "Supplemental Declaration"). The Court has also considered the representations of counsel. Based upon the representations of counsel, after due deliberation and finding proper notice has been given, the Court determines that good cause exists to grant the relief requested in the Supplemental

---

[1] All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Supplemental Application.

Application and that granting such relief is in the best interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1. The Supplemental Application is granted.

2. The terms of the Debtors' previously approved retention of PwC are supplemented to include, effective as of April 14, 2006, the provision by PwC of services to the Debtors related to the enhancement of the Debtors' information security program on the terms set forth in the Supplemental Application, the New Engagement Letter, and the Supplemental Declaration.

3. Except as supplemented by this Order, the terms of the Debtors' retention of PwC shall remain unchanged and shall be governed by the Order Authorizing Retention of PricewaterhouseCoopers LLP to Provide Certain Sarbanes-Oxley and Other Services to the Debtors dated May 19, 2005 and filed at Docket No. 1317 (the "PwC Order").

4. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order and the PwC Order.

Dated May ___, 2006 in Jacksonville, Florida.

____________________________________
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve a copy of this Order on all parties included on the Master Service List.