Objection Deadline: May 31, 2006, 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors.¹ | ) Jointly Administered |
| | ) |

**DEBTORS' MOTION FOR ORDER (I) AUTHORIZING ASSUMPTION OF LEASE**
**FOR STORE NUMBER 1335, (II) FIXING CURE AMOUNTS AND**
**(III) AUTHORIZING RELATED RELIEF**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (the "Debtors"), move for entry of an order under 11 U.S.C. §§ 105, 365(a), 365(b)(1) and 365(d)(4) (i) authorizing the Debtors to assume, effective as of the effective date of the Debtors' plan of reorganization, a terminated real property lease in order to afford the Debtors the benefit of a right of first refusal provision contained in such lease, (ii) fixing cure amounts owed under such lease, and (iii) authorizing related relief (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

**Background**

1.   On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-

---

¹   In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

1330 as amended (the "Bankruptcy Code").  The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On March 1, 2005, pursuant to Section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases.  An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested herein are Sections 105(a), 365(a), 365(b) and 365(d)(4) of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure.

**Background of Lease**

6. Predecessors in interest to Winn-Dixie Montgomery, Inc. (as tenant) ("Winn-Dixie") and Markettown Investors, Inc. (as landlord) (the "Landlord") entered into a lease dated September 11, 1981 (as amended, the "Lease").[2]  The Lease relates to non-residential real property located at MarkeTown Shopping Center in Bay St. Louis, Mississippi (the

---

[2] The original signatories to the Lease were Wayne F. Wandell d/b/a W. F. Wandell & Company (as landlord) and Southern Jitney-Jungle Co., Inc. (as tenant).

"Premises"). The initial term of the Lease ran through January 31, 2003, but the Lease entitles tenant to elect up to five successive renewals (each for a term of five years) upon the same terms and conditions as contained in the Lease. Winn-Dixie had already exercised one-such renewal option as of the Petition Date.

7. From January 23, 2001 to August 28, 2005, the Debtors operated a grocery store at the Premises. On August 29, 2005 Hurricane Katrina significantly damaged the Premises, rendering them incapable of use as a grocery store. The Lease, in pertinent part, provides:

> If the demised property shall be damaged by fire, casualty, or other causes, there shall be an abatement or a proportionate reduction of the rent. If such premises shall be condemned by lawful authority as unsafe or unfit for use, or if they shall become partially or wholly destroyed by fire or other causes, so as to render them untenantable for a period in excess of ninety (90) days, the Lease shall terminate, <u>provided, however, that if Landlord commences restoration of the premises within three years of the date on which the premises were rendered untenantable, it shall give notice of such fact to Tenant and Tenant shall have sixty (60) days after receipt thereof to elect whether to take a new lease thereon commencing upon the completion of such restoration for a term equal to the balance of the term remaining under the Lease at the time the premises became untenantable.</u> All other conditions of such lease, including renewal terms, shall be the same as are contained herein and in the Lease.

Lease, Paragraph 16 (emphasis added).

8. By letter dated November 29, 2005, the Debtors (a) provided the Landlord with notice of the fact that the ninety-day period set forth in Paragraph 16 of the Lease had expired and (b) advised the Landlord that the Debtors expected the Landlord to honor its obligations under Paragraph 16 of the Lease. Although there is no dispute that the Premises have "become partially or wholly destroyed . . . so as to render them untenantable for a period in excess of ninety (90) days," and notwithstanding the unambiguous language of Paragraph 16 of the Lease, the Landlord has indicated to the Debtors that, upon restoration of the Premises, it

does not intend to honor its clear obligation to afford the Debtors a right of first refusal to enter into a new lease for the Premises.

9. As of the date of this Motion, the only amount outstanding under the Lease is $9,800 (the "Proposed Cure Amount"), which amount is comprised of prepetition real estate taxes and insurance.

**Relief Requested**

10. By this Motion, the Debtors seek entry of an order approving the assumption of the Lease, on the terms described below, so that the Debtors can retain the benefit of a right of first refusal to take a new lease for the Premises for a term equal to the balance of the term remaining under the Lease at the time the Premises became untenantable and on terms that are the same as those contained in the Lease, including all renewal terms (such right, the "RFR").

11. The assumption of the Lease is proposed to be effective as of the effective date of the Debtors' plan of reorganization (the "Effective Date"). This contingency is necessary because, although the Debtors believe that the assumption of the Lease is at this time in the Debtors' best interests, the Debtors also recognize that unforeseen circumstances may arise prior to the Effective Date that may compel an alternate conclusion. The Debtors are also aware that circumstances may arise that might compel the Landlord to request its own relief with respect to the Lease. Accordingly, prior to the Effective Date, the Debtors propose that either party may seek reconsideration of the order approving this Motion. To preserve the necessary flexibility pending the Effective Date, and for the reasons set forth in the Debtors' Motion for Order Granting Fourth Extension of Time Within Which Debtors may Assume or Reject Unexpired Leases of Non-Residential Real Property (Docket No. 5888) (the "365(d)(4) Motion"), by this

Motion the Debtors also seek to extend their time under Section 365(d)(4) to assume or reject the Lease through the Effective Date.[3]

12. In addition, the Debtors seek certainty as to the Proposed Cure Amount prior to approval of the proposed assumption. To the extent the Landlord disagrees with the Proposed Cure Amount or otherwise objects to the Motion, the Landlord must file an objection with the Bankruptcy Court on or before May 31, 2006 (the "Objection Deadline"). In the absence of a timely objection, the Landlord will be deemed to have consented to the assumption and the Proposed Cure Amount and will be deemed to have waived all claims under the Lease against the Debtors other than the Proposed Cure Amount. Following the passage of the Objection Deadline, the Debtors will notice the Motion for hearing.

13. In light of the fact that the assumption is contingent upon the occurrence of the Effective Date, the Debtors propose that any payments made on the Proposed Cure Amount will be made on or soon as practicable after the Effective Date. If there is no Effective Date, the Lease will not be assumed by the Debtors and no payments will be made on the Proposed Cure Amount.

### Basis for Relief

14. The Debtors are entitled to entry of an order authorizing the assumption of the Lease so that they can retain the benefit of the RFR. The RFR is a bargained for provision of the Lease that was, upon information and belief, negotiated at arms-length. The RFR provides the Debtors with a valuable property interest under terms that the Debtors believe to be reasonable.

---

[3] The 365(d)(4) Motion is incorporated into this Motion by reference.

5

15. Accordingly, the Debtors have determined that, to the extent necessary to preserve their ability to exercise the RFR, the assumption of the Lease as of the Effective Date is in the Debtors' best interests. The Debtors' decision, however, is based upon their understanding of the costs of assumption, including, in particular, the Proposed Cure Amount. If the Proposed Cure Amount for the Lease is less than the cure amount that may be asserted by the Landlord or determined by the Court, the Debtors reserve the right not to proceed with the assumption. The Debtors' decision is also based upon current market conditions and other factors and, thus, the Debtors have proposed that the assumption of the Lease, itself, be contingent upon the occurrence of the Effective Date (and that the 365(d)(4) time period for such Lease be further extended through the Effective Date) in order to afford the necessary flexibility to respond to changed circumstances that may arise prior to the Effective Date.

16. To the extent that there has been any default under the Lease, the Debtors represent that the requirements of Section 365(b)(1) of the Bankruptcy Code will be satisfied through payment of the Proposed Cure Amount on or as soon as practicable after the Effective Date, which will cure such default and compensate the Landlord for any actual pecuniary loss resulting from such default.

**Applicable Authority**

17. The Debtors believe that, although the Lease has been terminated, it contains provisions that are executory and, thus, the RFR is enforceable through the assumption of the Lease pursuant to Section 365(a) of the Bankruptcy Code. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon

burdensome property.'" Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993).

18.   Prevailing case law supports the view that the existence of the RFR, itself, renders the Lease an executory "contract" that can be assumed by Winn-Dixie. Indeed, most courts that have considered the issue have found that a right of first refusal is an executory contract that can be assumed or rejected pursuant to Section 365 of the Bankruptcy Code. See, e.g., In re Kellstrom Indus., Inc., 286 B.R. 833, 835 (Bankr. D. Del. 2002) (right of first refusal to buy property deemed executory and subject to rejection); In re Fleishman, 138 B.R. 641, 646 (Bankr. D. Mass. 1992) (right of first refusal contained in deed deemed executory). Because the RFR is executory, the Lease, itself, is executory, and it may be assumed as long as the Debtors meet the requisite standards for assumption.

19.   A debtor's decision to assume or reject an unexpired lease is subject to review under the business judgment standard. See In re Gardiner, Inc., 831 F.2d 974, 975 n.2 (11th Cir. 1987); In re Orion Pictures Corp., 4 F.3d at 1098-99. Upon finding that the Debtors have exercised their sound business judgment in determining that assumption of a particular executory contract is in the best interests of their estates, the Court should approve assumption under Section 365(a) of the Bankruptcy Code. In re Gucci, 193 B.R. 411, 415-17 (S.D.N.Y. 1996) (affirming bankruptcy court's approval of assumption of executory contract upon determining that assumption "was in the best interest of the estate"); Blue Cross Blue Shield of Conn. v. Gurski (In re Gurski), Nos. 94-51202 & 3:95CV1883, 1996 WL 684397, at *2 (D. Conn. Jan. 25, 1996) (affirming bankruptcy court's determination that executory contracts were beneficial to the debtor such that the debtor could assume them under section 365(a)). In the case of assumption, "[t]he § 365 election permits a trustee to . . . continue performance on a

7

contract which will benefit the estate." In re Diamond Mfg., Co., 164 B.R. 189 (Bankr. S. D. Ga. 1994) (citing In re Brada Miller Freight Sys., Inc., 702 F.2d 890, 893-94 (11th Cir. 1983)). The Debtors respectfully submit that they have satisfied the "business judgment" standard for assuming the Lease. Upon such assumption, the Debtors should be afforded the ability to continue to enjoy the benefit of the RFR and, upon exercise of the RFR, to enjoy all attendant benefits under the Lease, including the renewal terms as contemplated by Paragraph 16 of the Lease.

20. Notably, even if the Lease were deemed to be non-executory, the RFR would nevertheless be enforceable. Case law holds that outstanding contractual rights remain in place even if the underlying contract is otherwise terminated and no longer "executory" within the meaning of Section 365 of the Bankruptcy Code. See Gencor Indus., Inc.v. CMI Terex Corp. (In re Gencor Indus., Inc.), 298 B.R. 902, 913 (Bankr. M.D. Fla. 2003) (indicating that the terms and conditions of a settlement remained in effect even though settlement was not an executory contract); In re Howe, 221 B.R. 552, 554 (Bankr. M.D. Fla. 1998) (noting that covenant not to compete survives termination of non-executory contract); In re CVA General Contractors, Inc., 267 B.R. 773, 778-780 (Bankr. W.D. Tex. 2001) (holding that the rights and duties of insured and insurer under an insurance contract did not terminate even though the contract itself had terminated and, thus, was not executory). Accordingly, even if the Lease, itself, were deemed to be non-executory, Winn-Dixie is entitled to the continued benefit of the RFR which will, based upon the express language of Paragraph 16 of the Lease, allow the Debtors the continued benefit of various terms of the Lease including renewal terms. Thus, any argument by the Landlord that the provision is somehow not enforceable because the Lease has terminated is contrary to (a) the plain reading of the Lease provision, (b) applicable case law, and (c) common sense.

21. The Debtors recognize that because a default has occurred with respect to the Lease, Section 365(b) of the Bankruptcy Code imposes an obligation upon the Debtors to (a) cure or provide adequate assurance to the Landlord that the Debtors will cure such default, (b) compensate or provide adequate assurance that the Debtors will promptly compensate the Landlord for any actual pecuniary loss to such party resulting from the Lease, and (c) provide adequate assurance of future performance under such Lease. The Debtors submit that, in light of the payments proposed to be made to cure any outstanding obligations under the Lease and the nature of the Debtors' future obligations under the Lease, these requirements are satisfied.

**Notice**

22.     Notice of this Motion has been provided to (a) the Landlord, (b) the U.S. Trustee, (c) counsel for the Debtors' postpetition secured lender, (d) counsel for the Creditors' Committee, and (e) the other parties in interest named on the Master Service List maintained in these cases.  The Debtors submit that no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached as Exhibit A (a) authorizing the Debtors to approve the assumption of the Lease effective as of the Effective Date so that the Debtors can obtain the benefit of the RFR, (b) fixing the cost of assumption at the Proposed Cure Amount, and (c) extending their time under Section 365(d)(4) of the Bankruptcy Code to assume or reject the Lease through the Effective Date; and (ii) grant such other and further relief as is just and proper.

Dated: April 20, 2006

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By   *s/ D. J. Baker*  <br>     D. J. Baker <br>     Sally McDonald Henry <br>     Rosalie Walker Gray <br>     Adam S. Ravin <br> Four Times Square <br> New York, New York 10036 <br> (212) 735-3000 <br> (212) 735-2000 (facsimile) <br> djbaker@skadden.com | By   *s/ Cynthia C. Jackson*  <br>     Stephen D. Busey <br>     James H. Post <br>     Cynthia C. Jackson, <br>     Florida Bar Number 498882 <br> 225 Water Street, Suite 1800 <br> Jacksonville, Florida  32202 <br> (904) 359-7700 <br> (904) 359-7708 (facsimile) <br> cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

## **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., <u>et</u> <u>al.</u>, | ) *Chapter 11* |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER (I) AUTHORIZING ASSUMPTION OF LEASE FOR STORE NUMBER 1335, (II) FIXING CURE AMOUNTS AND (III) AUTHORIZING RELATED RELIEF**

These cases came before the Court for hearing, upon the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order under 11 U.S.C. §§ 105, 365(a), 365(b)(1) and 365(d)(4) (i) authorizing the Debtors to assume, effective as of the effective date of the Debtors' plan of reorganization, a terminated real property lease in order to afford the Debtors the benefit of a right of first refusal provision contained in such lease, (ii) fixing cure amounts owed under such lease, and (iii) authorizing related relief (the "Motion). The Court has read the Motion and considered the representations of counsel. Upon the representations of counsel and without objection from the United States Trustee or any other interested party, the Court determines that good cause exists to grant the relief requested by the Motion and granting the relief is in the best interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

2. The Debtors are authorized to assume the Lease pursuant to 11 U.S.C. § 365(a), effective as of the effective date of the Debtors' plan of reorganization (the "Effective Date").

3. For purposes of 11 U.S.C. § 365(b)(1), the only cure or compensation amounts owed by the Debtors is the Proposed Cure Amount.

4. The Landlord is deemed to have waived any and all claims it may have against the Debtors for cure or compensation under the Lease, except for the Proposed Cure Amount.

5. The Proposed Cure Amount shall be paid by the Debtors on or as soon as practicable after the Effective Date and in accordance with the Debtors' plan of reorganization.

6. Contingent upon payment of the Proposed Cure Amount, the requirements of 11 U.S.C. § 365(b)(1) are satisfied with respect to the Lease.

7. The Debtors' time under 11 U.S.C. § 365(d)(4) to assume or reject the Lease is extended through the Effective Date.

8. Provided that the Lease is assumed on the Effective Date, the Landlord shall honor its continuing obligations under the Lease, including the obligation, upon restoration of the Premises, to afford Winn-Dixie the right, in accordance with Paragraph 16 of the Lease, to elect to take a new lease (a) for a term equal to the balance of the term remaining under the Lease at the time the Premises became untenantable, and (b) on terms that are the same as those contained in the Lease, including all renewal terms.

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

3

10. The Court retains jurisdiction to hear and determine all matters arising from the implementation of this Order.

11. Prior to the Effective Date, the Debtors and/or the Landlord may seek reconsideration of this Order.

12. In the event the Debtors' plan of reorganization does not become effective, this Order shall be null and void.

Dated this _____ day of \_\_\_\_, 2006 in Jacksonville, Florida.

                                                                                            _____
                                                                                            Jerry A. Funk
                                                                                            United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion