**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**DEBTORS' OBJECTION TO CLAIMS FILED BY STATE OF LOUISIANA
DEPARTMENT OF REVENUE (CLAIM NOS. 456 AND 457) AND RELATED CLAIM
FILED BY PUGH, PUGH & PUGH, L.L.P. (CLAIM NO. 7765)**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), object upon the grounds specified below to the allowance of Claim Nos. 456 and 457, each filed by the State of Louisiana Department of Revenue (the "Louisiana DOR") against Winn-Dixie Montgomery, Inc. ("WD Montgomery"), a Debtor in these cases, as successor to Winn-Dixie Louisiana, Inc ("WD Louisiana"). The Debtors further object upon the grounds specified below to the allowance of Claim No. 7765 (together with Claim Nos. 456 and 457, the "Claims") filed by Pugh, Pugh & Pugh, LLP ("Pugh") against WD Montgomery as successor to WD Louisiana. In making these objections, the Debtors reserve the right to assert further or additional objections to the Claims.

**General Grounds for Objection to Claims**

1.  The Claims arise from the Louisiana DOR's efforts to improperly impose upon WD Louisiana, a predecessor to WD Montgomery, additional Louisiana corporation income

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

tax (the "Income Tax") and related interest[2] now totaling over $17 million for the Income Tax periods that ended on various dates in June of 1992 through 1999, inclusive (the "Contested Years"). These efforts have been the subject of litigation between the parties (the "Litigation")[3] that has languished without trial since first filed in state court by the Louisiana DOR in 1995.[4] In Claim No. 457, the Louisiana DOR asserts a general unsecured claim of $17,257,265.98, representing Income Tax and interest that are allegedly due to the Louisiana DOR by WD Montgomery as successor to WD Louisiana. In Claim No. 456, the Louisiana DOR asserts a general unsecured claim of $37,378.31, representing fees allegedly owed by WD Montgomery as successor to WD Louisiana for deposition testimony by expert witnesses for the Louisiana DOR in connection with the Litigation. Pugh's Claim No. 7765 asserts an unsecured <u>priority</u> claim against WD Montgomery for 10% times $16,467,976.28, representing fees allegedly earned by Pugh in representing the Louisiana DOR in the Litigation.

2. As more fully described below, the Louisiana DOR's efforts to extract additional Income Tax and interest as part of the Litigation are grounded upon a computation of Income Tax for each of the Contested Years that is contrary to applicable law. Accordingly, and to avoid further delay in the resolution of the Claims, this Court should consider this Objection and enter an order (a) disallowing Claim Nos. 457 and 7765 in their entirety and (b) reducing Claim No.

---

[2] Interest on the alleged Income Tax deficiencies was computed by the Louisiana DOR at the rate of 15% per annum simple interest. <u>See</u> La. Rev. Stat. 47:1601.

[3] <u>See</u> <u>John Neely Kennedy, Sec'y Dep't Rev. & Tax., La. v. Winn-Dixie Louisiana, Inc.</u>, Docket No. 487-680 (24th Jud. Dist. Ct. Parish of Jefferson, La. Dec. 28, 1995) <u>consolidated</u> <u>with</u> <u>Cynthia Bridges, Sec'y Dep't Rev. & Tax., La. v. Winn-Dixie Louisiana, Inc.</u>, Docket No. 561-806 (24th Jud. Dist. Ct. Parish of Jefferson, Nov. 25, 1997).

[4] The Louisiana DOR has also filed additional claims against Debtors in these cases that are not subject to the Litigation. Although not addressed in this Objection, the Debtors reserve all rights to object to these claims in a separate objection filed with the Court.

456 to a reasonable fee for deposition attendance by the Louisiana DOR's expert witnesses in connection with the Litigation.

3.   The Commerce Clause and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States of America prohibit a state from imposing a tax on the income, property, or activities of a corporation that are attributable to a state other than the taxing state.  Thus, if a state imposes a corporate income tax, it is necessary to determine the amount of a multi-state corporation's income that is attributable to the taxing state.  At the state level, depending upon the laws of the particular state, members of a multi-corporation, multi-state group determine their state taxable incomes using either the separate return method, the combined report method, or the consolidated return method.  Each of these methods is a separate and distinct method of state corporate taxation and varies from state to state depending upon the specific method legislatively imposed in the state.[5]  Under the separate return method, each corporation that has a federal constitutional nexus with the taxing state must file a separate return and determine its taxable income for the purposes of that return by reference to the stand-alone operations of the reporting entity (as opposed to the combined or consolidated operations of the larger corporate group to which the reporting entity belongs).[6]  Under the combined report method, a member of a unitary, multi-corporation group that has a constitutional nexus with the taxing state determines its state taxable income by apportioning the entire group's combined business income to the taxing state on the basis of certain specified apportionment factors.[7]  The consolidated return method is used by

---

[5]   See William L. Goldman, et al., Income Taxes: Consolidated Returns and Combined Reporting, 1130:0002 (Tax Management, Inc. 2005).

[6]   See id.

[7]   See id.

some states to allow multi-corporation groups to report their taxable incomes on a single, consolidated return.[8]

4. Since the inception of the Income Tax and its predecessor income tax, Louisiana has adopted by statute the separate return method. The Louisiana corporate tax statute provides that, "when a corporation is included with its affiliates in a consolidated federal income tax return in accordance with federal law, the terms and provisions of [the Income Tax] shall apply as if the corporation had been required to file an income tax return with the Internal Revenue Service on a separate corporation basis for the current and all prior taxable years, in accordance with federal law."[9] Moreover, Louisiana's strict adherence to the separate return method has survived despite several legislative proposals to change the reporting method.[10]

5. As required by Louisiana law, WD Louisiana filed Income Tax returns based on the separate return method for each of the Contested Years. Because WD Louisiana sustained losses during certain of the Contested Years and was able to carry forward net operating losses from Income Tax periods prior to certain of the Contested Years, its total Income Tax liability – and the amount of Income Tax that actually was paid by WD Louisiana – for the Contested Years was $3,794,289. Dissatisfied with this reported Income Tax liability, the Louisiana DOR has alleged that

---

[8] See id., at 1130:0003.

[9] La. Rev. Stat. § 47:287.733(A).

[10] See, e.g., H.R., House Bill No. 381, H.L.S. 94-954, Reg. Sess. 1994 (La. 1994) (proposing to require "members of federal consolidated groups to file unitary tax returns"); H.R., Louisiana House Study Request No. 4, Regular Session 1994, Adopted (La. 1994) ("WHEREAS, to enhance the Department of Revenue and Taxation's ability to efficiently calculate, for corporate income tax purposes, the income apportionable to operations in this state, the legislature should consider amending Louisiana law regarding corporations which are members of a group of unitary corporations in other states ….").

WD Louisiana, and WD Montgomery as its successor, owe additional Income Tax and related interest now totaling over $17 million for the Contested Years.  Significantly, the Louisiana DOR has not alleged that these amounts are due because WD Louisiana improperly applied the separate return method required by Louisiana law.  Rather, the Louisiana DOR seeks to unilaterally change WD Louisiana's Income Tax liability by recalculating WD Louisiana's income tax liability under a combined report method, which is not permitted under applicable Louisiana law.

6. As the Debtors will demonstrate at the hearing to consider this Objection, the Louisiana DOR's recalculation of WD Louisiana's Income Tax liability under a combined report method is contrary to applicable law and the Debtors owe no additional Income Tax liability or related interest for the Contested Years.  Accordingly, Claim No. 457 should be disallowed in its entirety.

7. Pugh's Claim No. 7765 should also be disallowed in its entirety.  Under applicable law, the Debtors can only be liable for attorney's fees related to the Louisiana DOR's attempt to recover unpaid taxes and related amounts to the extent that such taxes and related amounts are actually owed by the Debtors.  Given that the Debtors have no additional Income Tax liability for the Contested Years, the Debtors also have no liability for Claim No. 7765.[11]  Moreover, assuming arguendo that the Debtors do have additional Income Tax liability, in order to collect the 10% asserted pursuant to Louisiana statute, Pugh would be required to demonstrate that this amount is reasonable given the facts of the case.[12]  The more than $1.6 million claimed by Pugh is

---

[11]   See La. Rev. Stat. § 47:1512; Louisiana v. B.P. Exploration & Oil, Inc., 686 So.2d 823, 831 (La. 1997) (holding that corporation was not required to pay Louisiana DOR's attorney's fees in action to collect taxes because corporation did not owe any additional taxes).

[12]   See City of Baton Rouge v. Stauffer Chemical Co., 500 So. 2d 397, 401 (La. 1987) (holding that La. Rev. Stat. § 47:1512 is subject to judicial scrutiny on a case by case basis with respect to whether the 10% fee specified is reasonable and not excessive under the circumstances); J. Ray McDermott, Inc. f/k/a/ OPI Int'l, Inc. v. Morrison, 702 So. 2d 364 (La. App. 1st Cir. 1997) (affirming trial court's conclusion that 10% award specified in La. Rev. Stat. § 47:1512 was excessive).

5

unreasonable given the nature of the Litigation, the unusually long time during which Pugh failed to pursue the Litigation, and the amount of time that the Debtors believe Pugh spent on the Litigation. Finally, the Debtors further object to Claim No. 7765 on the ground that it incorrectly asserts an unsecured priority claim. Claim No. 7765 asserts priority based upon section 507(a)(8) of the Bankruptcy Code. However, Pugh is neither a governmental unit (to which section 507(a)(8) grants priority status) nor does his claim fall within any of the categories for priority status. Accordingly, to the extent that Claim No. 7765 is allowed in any amount, it should only be allowed as a general unsecured claim rather than an unsecured priority claim.

8. Furthermore, Claim No. 456 – for fees and expenses associated with deposition attendance by the Louisiana DOR's expert witnesses – is also objectionable. Article 1425 of the Louisiana Code of Civil Procedure entitles the Louisiana DOR to recover, and the Debtors have agreed to pay for, the _reasonable_ fees associated with deposition attendance by the Louisiana DOR's expert witnesses in connection with the Litigation.[13] The Debtors do not, therefore, object to Claim No. 456 in its entirety. However, Claim No. 456 should only be allowed to the extent that the fees requested are reasonable. As the Debtors will demonstrate at the hearing on this Objection, the claimed fees and expenses sought by the Louisiana DOR are not reasonable. Instead, Claim No. 456 should be reduced to a reasonable fee for deposition attendance by the Louisiana DOR's expert witnesses in connection with the Litigation.

### Court's Jurisdiction Over the Claims

9. The Court's consideration of this Objection constitutes a proper exercise of jurisdiction over the Claims. Both the Louisiana DOR and Pugh have filed proofs of claim and have

---

[13] La. Code Civ. Proc. art. 1425(d)(3).

thereby consented to the jurisdiction of this Court to consider the validity of the Claims.[14] Moreover, because the Litigation remains pending and because no final determination has been made regarding WD Montgomery's Income Tax liability, section 505 of the Bankruptcy Code[15] provides an additional basis for the Court's jurisdiction to consider the propriety of the Claims.[16]

        10.     The circumstances of these cases underscore the need for this Court's jurisdiction over the Claims. The Litigation has been pending for over ten years. Although the parties have completed discovery, no trial has been scheduled before the state court and there is no end in sight to the delay that has plagued the Litigation. By contrast, the Debtors believe that an evidentiary hearing before this Court to determine the validity and allowed amounts of the Claims can be completed in approximately three days. Given the significance of the Claims (alleged to be in excess of $17 million), this Court should exercise its jurisdiction over the Claims. Indeed, this Court's exercise of jurisdiction over the Claims would fulfill the underlying purpose of section 505 of the Bankruptcy Code which "allows the prompt resolution of a debtor's tax liability, where that

---

[14] See Lagenkamp v. C.A. Culp, 498 U.S. 42, 44 (1991) ("[B]y filing a proof of claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power.") (citing Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 58-59, n.14 (1989)); Lykes Bros. S.S. Co., Inc. v. Hanseatic Marine Serv., 207 B.R. 282, 285-286 (Bankr. M.D. Fla. 1997) (holding that creditor had consented to jurisdiction of bankruptcy court by filing proof of claim) (citations omitted); In re Elec. Theatre Restaurants, Inc., 85 B.R. 45, 47 (Bankr. N.D. Ohio 1988) (holding that municipality had consented to bankruptcy court's jurisdiction to determine tax claim by filing proof of claim).

[15] Section 505(a) of the Bankruptcy Code provides, in relevant part, that:
  (1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax ….
  The court may not so determine – (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.
11 U.S.C. § 505(a).

[16] See Mantz v. Cal. Bd. of Equalization (In re Mantz), 343 F.3d 1207 (9th Cir. 2003) (holding that bankruptcy court had jurisdiction to consider state tax liability where there had been no final determination of that liability prior to the debtor's bankruptcy filing); Chance Rides, Inc. v. Director, Div. of Tax., Dep't Treas., N.J. (In re Chance Rides, Inc.), 2001 WL 34656216 (Bankr. D. Kan. Dec. 5, 2001) (holding that bankruptcy court had jurisdiction to consider state tax liability where proceedings on the tax claim were pending before state court at the time of debtor's bankruptcy filing); Lipetzky v. Dep't Rev. St. Mont. (In re Lipetzky), 64 B.R. 431 (Bankr. D. Mont. 1986) (same).

liability has not yet been determined prior to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition."[17]

### Notice

11.  Notice of this Objection has been provided to (a) the Louisiana DOR, (b) Pugh, (c) counsel to the United States Trustee, (d) counsel for the Debtors' postpetition secured lenders, and (e) counsel for the Creditors Committee. No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (a) enter an order (i) disallowing in its entirety the Louisiana DOR's Claim No. 457, (ii) reducing Claim No. 456 to a reasonable fee for deposition attendance by the Louisiana DOR's expert witnesses in connection with the Litigation, and (iii) disallowing in its entirety Pugh's Claim No. 7765 and (b) grant such other and further relief as the Court deems just and proper.

Dated: April 24, 2006.

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By   *s/ D. J. Baker*   <br>    D. J. Baker <br>    Sally McDonald Henry <br>    Rosalie Walker Gray <br>    David M. Turetsky <br>Four Times Square <br>New York, New York 10036 <br>(212) 735-3000 <br>(212) 735-2000 (facsimile) <br>djbaker@skadden.com <br><br>Co-Counsel for the Debtors | By   *s/ James H. Post*   <br>    Stephen D. Busey <br>    James H. Post <br>    Cynthia C. Jackson <br>    Florida Bar Number 175460 <br>225 Water Street, Suite 1800 <br>Jacksonville, Florida 32202 <br>(904) 359-7700 <br>(904) 359-7708 (facsimile) <br>cjackson@smithhulsey.com <br><br>Co-Counsel for the Debtors |

---

[17] In re Chance Rides, Inc., 2001 WL 34656216, at *3; cf. In re Lipetzky, 64 B.R. at 434 ("Clearly, this Court not only has the jurisdiction, but it has a duty, to determine the proper debt due Flathead County since none of the taxes levied by such taxing authority have been finally adjudicated under Montana law.")