**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WINN DIXIE STORES, INC., et al | Case No. 05-03817-JAF |
| Debtors. | (Jointly Administered) |

**OBJECTION BY LANDLORD, T/A WESTERN, LLC, TO DEBTORS'**
**PROPOSED CURE AMOUNT FOR STORE NO. 217**

Creditor TA/WESTERN, LLC, the landlord of Store No. 217 (the "Landlord"), files its objection to Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates' (collectively, the "Debtors") proposed cure amount as provided in Exhibit "E" to the Debtors' Motion for Order (A) Authorizing the Sale of Additional Stores and Related Equipment Free and Clear of Liens, Claims and Interests, (B) Authorizing the Assumption and Assignment or Alternatively, the Rejection of Leases and Establishing a Claims Bar Date and (C) Granting Related Relief [Docket No. 7092] (the "Sale Motion") and states in support as follows:

**BACKGROUND**

The Debtors operate Winn-Dixie Store No. 217 on the Landlord's property located in Pompano Beach, Florida. The Debtor and the Landlord entered into the lease for Store No. 217 on May 10, 1988, as amended, evidenced by (a) the lease dated May 10, 1988, (b) the letter agreement dated January 17, 1989, (c) the Supplemental Lease Agreement dated November 13, 1989, (d) the First Amendment to Lease dated August 1, 1990, and (e) the Second Amendment to Lease dated November 30, 1997 (collectively, the "Lease"), copies of all of which are collectively attached as Exhibit "A".

The Landlord's proof of claim evidences that as of July 28, 2005, the Debtors owed the Landlord $757.37 for unpaid post-petition water bills. Since the filing of that proof of claim, the cure costs on the Lease have increased significantly.

As evidenced by the summary attached hereto as Exhibit "B", the correct cure amount for this lease of non-residential real property, as of the date of the filing of the instant Objection is $66,593.52.

Case No.04-11819-BKC-AJC<br>
Case No. 04-11820-BKC-AJC

The cure amount includes:

    (a) unpaid rent and common area maintenance expenses for the period from May 1, 2006 through May 18, 2006, (the date of the hearing on assignment and assumption) in the amount of $17,178.01;

    (b) the Debtors' share of estimated prorated real estate taxes for the period January 1, 2006 through May 18, 2006, (based on the actual 2005 real estate taxes) in the amount of $30,920.52;

    (c) the Debtors' share of prorated real estate taxes for the periods from January 1, 2005 to the Petition Date in the amount of $10,810.34;

    (d) the Debtors' share of pre and post-petition water bills (as provided in paragraph 10 of the May 10, 1988 lease) in the amount of $6,683.71; and

    (e) attorneys' fees and costs incurred by the Landlord in the enforcement of its rights under the Lease through March 31, 2006 in the amount of $1,000.54.

The Landlord hereby reserves its right to amend or supplement the cure amount. The Landlord also reserves the right to request additional attorneys' fees and costs incurred after March 31, 2006 or by predecessor counsel.

## ARGUMENT

The Landlord objects to the Debtors' proposed cure amount of $757.37 provided in Exhibit "E" of the Sale Motion which is significantly less than the actual cure costs totaling $66,593.52. The insufficient cure amount provided by the Debtors does not satisfy the requirements for assumption of a lease as codified in Section 365(b)(1). Section 365(b)(1) provides in pertinent part:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee:

Case No.04-11819-BKC-AJC<br/>Case No. 04-11820-BKC-AJC

(A)    cures or provides adequate assurance that the trustee will promptly cure, such default;
(B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
(C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

The Debtors' duty to effect a prompt cure under section 365(b)(1) extends to all monetary and non-monetary defaults either pre or post-petition. See In re Westview 74th Street Drug, 59 B.R. 747, 754 (Bankr. SDNY 1986). Section 365 is broad with respect to curing defaults and bankruptcy courts have required that "all contractual defaults thereunder must be cured by payments, and all contractual provisions enforced. There are no exceptions." In re Entertainment, Inc., 223 B.R. 141, 150 (Bankr. N.D. Ill. 1998) (citing Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996)).

Pursuant to Section 365(b)(1), the Debtors must compensate the Landlord for "any actual pecuniary loss" resulting from default on the lease. Monetary defaults include all elements of rent (base rent, percentage rent), common area maintenance charges, insurance, real estate taxes, marketing fees and utilities that the lease obligates the debtor to pay. Indeed, a bankruptcy court in this district has required the payment of cure costs including, rent arrearage, real estate taxes and compensatory damages arising from the default including attorneys' fees as provided in the lease. In re Haute Cuisine, 58 B.R. 390, 394 (Bankr. M.D. Fla. 1986). The Haute court also required the debtor to commence making timely contract payments as a condition precedent to assumption of a lease. See id.

Further, bankruptcy courts have held that a debtor is obligated to pay the prorated portion of real estate taxes accruing post-petition and pre-rejection of the lease. See In re Handy Andy Home Improvement Centers, Inc., 144 F.3d 1125, 1126-28 (7th Cir. 1998). This Court agreed with the decision

Case No.04-11819-BKC-AJC
Case No. 04-11820-BKC-AJC

in Handy Andy where the Seventh Circuit adopted the "accrual" or "pro-ration" approach requiring that lease obligations that become due after the petition date be pro-rated between the pre and post-petition periods and only those post-petition obligations were considered administrative expenses. See In re Winn-Dixie, Inc., 333 B.R. 870, 873 (Bankr. M.D. Fla. 2005). When applying the accrual approach, the real estate tax obligations arise before the debtor is contractually obligated to reimburse the landlord for the real estate taxes it has paid. Id. "'But since death and taxes are inevitable and [the debtor's] obligation under the leases to pay the taxes was clear, that obligation could realistically be said to have arisen piecemeal every day . . . .'" Id. (quoting Handy Andy, 144 F.3d at 1127). Pursuant to this Court's decision, the Debtors are obligated to pay the real estate taxes accruing post-petition up until the date that the Lease is assumed and assigned or rejected. While the Debtors have paid post-petition real estate taxes for the year 2005, which was billed on December 2, 2005, they have not paid their post-petition real estate taxes for 2006. The Landlord has estimated the amount of 2006 taxes that the Debtors will owe based on the actual taxes paid in 2005. Thus, the $30,920.52 in real estate taxes for the period January 1, 1006 through May 18, 2006, is an element of cure. Further, pursuant to paragraph 37 of the May 10, 1988 lease, the Debtors are obligated to pay the real estate taxes levied against Store No. 217 in full. Therefore, the Debtors owe $10,810.34 in pre-petition 2005 real estate taxes, which is also an element of the cure.

Thus, in accordance with Section 365 and applicable case law, the Landlord is unquestionably entitled to payment of the cure costs requested arising from unpaid rent for May 1, 2006 through May 18, 2006, prorated real estate taxes for the periods from January 1, 2005 through the Petition Date and January 1, 2006 through May 18, 2006, and pre and post-petition water bills.

In addition, the Landlord asserts its entitlement to attorneys' fees and costs incurred in enforcing its contractual rights under the Lease as provided for in paragraph 15 of the May 10, 1988 lease.

Case No.04-11819-BKC-AJC
Case No. 04-11820-BKC-AJC

Bankruptcy courts have found that landlords are often entitled to attorneys' fees incurred in the enforcement of their rights under the lease. See Westview, 59 B.R. at 756; see also, In re Entertainment, Inc., 223 B.R. at 151. Entitlement to any attorneys' fees or costs is dependent on the express terms of the lease, state law and the reasonableness of the fees. See id.; see also, Hillsborough, 126 B.R. at 898 (adopting the American Rule, which requires each party to bear the cost of his own litigation, absent a specific contractual provision to the contrary). Importantly, bankruptcy courts have also held that a landlord's use of bankruptcy procedures to enforce a lease should not preclude recovery of attorney fees and costs for such enforcement activity, provided there is a clause in the lease obligating the debtor to reimburse the landlord for such expenses. In re Entertainment, Inc., 223 B.R. at 152. This is particularly true where the bankruptcy court is the exclusive forum where the landlord can obtain any relief, and the landlord is prevented from seeking state court relief by automatic stay. See id.

Accordingly, the Landlord is entitled to receive payment from the Debtors for the attorneys' fees and costs incurred in objecting to the cure amount stated in the Sale Motion and in enforcing its contractual rights to payment of rent, real estate taxes and indemnification under the Lease. As of the filing of the Objection, the attorneys' fees and costs total $1,000.54. The Landlord reserves the right to amend the amount of such fees and costs and to include fees and costs for predecessor counsel.

While the Landlord is only asserting cure costs for monetary defaults and actual pecuniary loss at this time, it should be noted that bankruptcy courts also require the curing of non-monetary defaults, which primarily include lease violations that relate to the upkeep and repair of the leased property or that prohibit the debtor from committing certain acts on the property. For example, in In re Vitanza 1998 WL 808629 *22 (Bankr. E.D. Pa. 1998), the debtor was required to repair certain identified defects and hire an electrician and a plumber to do repairs on a set schedule in order to cure his non-monetary defaults. Here, the Debtors are in the process of conducting a liquidation sale on the premises, and their motion indicates

Case No.04-11819-BKC-AJC<br>
Case No. 04-11820-BKC-AJC

that they have the right to abandon any fixtures, furniture or equipment at the conclusion of the liquidation process. If the Debtors are successful in consummating the sale of the Lease without selling the fixtures contained in Store No.217, then the Debtors must be required to remove such fixtures at their cost. If the Landlord is forced to remove such fixtures due to the Debtors' failure to do so, then the costs of such removal must be passed on to the Debtors and will be an element of cure.

In addition, the Debtors are obligated under the terms of the Lease to return possession of the premises in as good a condition as originally received. Since the Landlord has not been able to inspect the premises, it is now unknown what repair or reconditioning expenses will have to be incurred, and therefore also included in the cure amount. Thus, the Landlord reserves the right to amend this Objection to include in the cure amount any expenses incurred to remove any furniture, fixtures or equipment that the Debtors may leave on site, or to render the premises in the condition specified in the Lease upon the Debtors' tender of the premises to the Landlord.

Finally, the Landlord requests that the Debtors and/or the assignee of the Lease of Store No. 217 be required to comply with all contractual obligations to indemnify and hold the Landlord harmless with regard to events which may have occurred pre-assumption, including but not limited to, claims for personal injury which occurred at the leased premises, damage and destruction to the leased premises or property by Debtors or its agents, and environmental damage or environmental clean-up.

## **CONCLUSION**

For the foregoing reasons, the Landlord, T/A WESTERN, LLC, respectfully requests that this Court (i) sustain its objection to the Debtors' proposed cure amount; (ii) enter an Order setting the cure amount at $66,593.52 plus any additional attorneys' fees and costs incurred by the Landlord in the enforcement of the Lease and any additional amounts due under the Lease, and including in any cure amount a provision confirming the obligations of the Debtors and/or their assignee to comply with any

Case No.04-11819-BKC-AJC<br>Case No. 04-11820-BKC-AJC

and all indemnification obligations under the Lease; and (iii) grant such other and further relief as is appropriate.

Dated: <u>April 25, 2006.</u>

Respectfully submitted,

**SCRUGGS & CARMICHAEL, P.A.**

<u>/s/ Karen K. Specie, Esquire</u>
**KAREN K. SPECIE, ESQUIRE**
Post Office Box 23109
Gainesville, FL 32602
Telephone: 352-376-5242
Facsimile: 352-375-0690
Florida Bar No. 260746
Attorney for Terranova Corp.

**TEW CARDENAS LLP**
**THOMAS R. LEHMAN, P.A.**
**CASANDRA PEREZ, ESQUIRE**
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131
Telephone:  305-536-1112
Facsimile:  305-536-1116
Florida Bar No. 351318

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was electronically filed with the U. S. Bankruptcy Court on this 25th day of April, 2006, and that a copy of this document was furnished either by electronic transmission or by United States first class mail postage prepaid to: **Adam Ravin**, Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square, New York, NY  10036; **Cynthia C. Jackson, Esquire**, Smith Hulsey & Busey, 225 Water St., Suite 1800, Jacksonville, FL  32201; Official Committee of Unsecured Creditors, c/o **Dennis F. Dunne, Esquire**, Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, NY  10005; **John B. Macdonald, Esq.,** Akerman, Senterfitt, 50 North Laura Street, Suit 2500, Jacksonville, FL  32202; and  **Elena L. Escamilla, Esquire**, Office of United States Trustee – JAX, 135 W. Central Blvd., Suite 620, Orlando, FL  32801.

<u>/s/ Terri L. Darden</u>