Hearing Date: May 18, 2006, 1:00 p.m.
Objection Deadline: May 11, 2006, 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

**MOTION FOR ORDER APPROVING ASSUMPTION OF**
**MODIFIED AGREEMENT WITH HALLMARK MARKETING CORPORATION**

Winn-Dixie Stores, Inc. ("Stores") and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order under 11 U.S.C. §§ 105 and 365 and Fed. R. Bankr. P. 6006 approving the assumption of a modified agreement between Winn-Dixie Procurement, Inc. ("Procurement") and Hallmark Marketing Corporation ("Hallmark") and granting related relief (the "Motion"). In support of the Motion, the Debtors state as follows:

**Background**

1.  On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On March 1, 2005, pursuant to Section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested by this Motion are Sections 105 and 365 of the Bankruptcy Code, supported by Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relevant Facts**

6. Procurement and Hallmark are parties to the Expressions from Hallmark Marketing Agreement dated April 19, 2002 (including all attachments),[2] as amended by the Addendum to Expressions from Hallmark Agreement dated November 4, 2002 (together, the "Prepetition Agreement"). Under the Prepetition Agreement, Procurement obtains greeting cards and other personal expression products from Hallmark for sale in the Debtors' stores.

---

[2] The attachments to the Prepetition Agreement include, without limitation, a Scan Based Trading Agreement, a Data Synchronization Protocol Agreement, an Indemnity Agreement, and a Hallmark Marketing Corporation Fixture Terms Acknowledgement.

7. The Prepetition Agreement has become economically unfavorable to the Debtors. First, the Prepetition Agreement contains a volume quota that obligates the Debtors to purchase from Hallmark wholesale product valued at $262,886,000, with the term of the agreement continuing until the volume quota is satisfied. As of March 31, 2006, the Debtors had made wholesale product purchases of approximately $84,000,000. At their current level of purchasing, the Debtors estimate that they would be bound to the Prepetition Agreement for at least another 10 years.

8. Second, the Prepetition Agreement requires the Debtors to devote an aggregate of 101,861 permanent linear feet of store space to the display of Hallmark's products. With the recent footprint reductions, the Debtors have fallen far short of that requirement. As a consequence, the Prepetition Agreement allows Hallmark, at its option, (a) to obtain a prorated refund from the Debtors of previously paid signing bonus and department replacement allowance amounts, approximating $7,800,000, or (b) to increase the amount of the already exorbitant volume quota, thereby adding to the length of the already excessive term.

9. The Debtors have been engaged in negotiations with Hallmark in an effort to modify the volume quota and linear footage terms of the Prepetition Agreement. The negotiations have produced an agreement in principal that is substantially reflected in the Second Addendum to Expressions from Hallmark Marketing Agreement attached as Exhibit A (the "Postpetition Amendment"). Under the Postpetition Amendment, (a) Hallmark will reduce the volume quota, of which approximately $178,886,000 would otherwise remain outstanding, to $61,000,000 for the period after March 31, 2006, (b) Hallmark will eliminate the linear footage requirement and the penalties for failing to satisfy the linear footage requirement, and (c) the Debtors will pay Hallmark an amount equal to $3,969,000 in full and complete satisfaction of

3

obligations existing under the Prepetition Agreement, representing a substantial discount of the amount that Hallmark would otherwise assert as cure.

10. The Postpetition Amendment contemplates that the Debtors will move to assume the Prepetition Agreement as modified by the Postpetition Amendment (the "Modified Agreement") under Section 365(a) of the Bankruptcy Code. In conjunction with assumption of the Modified Agreement, Hallmark has agreed that, subject to payment of $3,969,000, all liabilities as to which cure or compensation would otherwise be required under Section 365(b)(1) of the Bankruptcy Code (except for continuing payment obligations arising from pending invoices for post-petition product and ongoing obligations arising under the Modified Agreement) have been satisfied or waived. With such agreement, the proofs of claim filed by Hallmark against the Debtors – including proof of claim number 7292 filed against Procurement in the amount of $38,829,976 and proof of claim number 7293 filed against Stores in the amount of $38,829,976 – would be disallowed in full.

### Relief Requested

11. Pursuant to Sections 105 and 365 of the Bankruptcy Code and Rule 6006 of the Bankruptcy Rules, the Debtors seek entry of an order (a) approving the assumption of the Modified Agreement, (b) requiring the Debtors to pay $3,969,000 to Hallmark as cure, (c) holding that, with such payment, all requirements of Section 365(b)(1) of the Bankruptcy Code are satisfied or waived, and (d) disallowing proof of claim number 7292 and proof of claim number 7293.

### Support for Relief Requested

12. The Debtors and Hallmark have reached an agreement in principle under the Postpetition Amendment that will favorably adjust the terms of the Prepetition Agreement to

reflect the current and future needs of the Debtors' business. Under the resulting Modified Agreement, as stated above, Hallmark has agreed to reduce the volume quota and to eliminate the linear footage requirement and associated penalties. Hallmark has also agreed to accept a payment of $3,969,000 in full and complete satisfaction of its cure and compensation rights under Section 365(b)(1) and its asserted claims of $38,829,976. This is the best possible result for the Debtors' estates and creditors.

        13.      The Debtors cannot operate a successful grocery store business without offering a full selection of quality greeting cards and related products. Hallmark is nationally recognized as a high quality provider of such products. Rejection of the Prepetition Agreement for the purpose of entering into a new agreement with an alternative card provider is not feasible as it will cause significant business disruption, will create significant rejection damages, and is not likely to result in a replacement arrangement of the same recognized quality. On the other hand, assumption of the Prepetition Agreement on its existing terms, without the modifications proposed in the Postpetition Amendment, is not economic given the volume quota and linear footage requirements and will result in a significantly larger cure obligation.[3]

        14.      The assumption of the Modified Agreement should be approved pursuant to Section 365(a) of the Bankruptcy Code. Under Section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

15. A debtor's decision to assume or reject an unexpired lease is subject to review under the business judgment standard.  See *In re Gardiner, Inc.*, 831 F.2d 974, 975 n.2 (11th Cir. 1987); *In re Orion Pictures Corp.*, 4 F.3d at 1098-99.  Upon finding that the Debtors have exercised their sound business judgment in determining that assumption of a particular executory contract is in the best interests of their estates, the Court should approve assumption under Section 365(a) of the Bankruptcy Code.  *In re Gucci*, 193 B.R. 411, 415-17 (S.D.N.Y. 1996) (affirming bankruptcy court's approval of assumption of executory contract upon determining that assumption "was in the best interest of the estate"); *Blue Cross Blue Shield of Conn. v. Gurski (In re Gurski)*, Nos. 94-51202 & 3:95CV1883, 1996 WL 684397, at *2 (D. Conn. Jan. 25, 1996) (affirming bankruptcy court's determination that executory contracts were beneficial to the debtor such that the debtor could assume them under Section 365(a)).

16. Based upon the foregoing, the Debtors respectfully submit that they have satisfied the "business judgment" standard for assuming the Modified Agreement.  Accordingly, the relief requested in the Motion is in the best interests of the Debtors' estate and creditors and should be approved.

**Notice**

17. Notice of the Motion has been provided to (a) counsel to the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) Hallmark.  No other or further notice need be given.

---

[3] At a minimum, the cure obligation associated with the Prepetition Agreement would be approximately $7,800,000.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (a) enter an order in the form of Exhibit B, (i) approving the assumption of the Modified Agreement, (ii) requiring the Debtors to pay $3,969,000 to Hallmark as cure, (iii) holding that, with such payment, all requirements of Section 365(b)(1) of the Bankruptcy Code are satisfied or waived, and (iv) disallowing proof of claim number 7292 and proof of claim number 7293; and (b) grant such other and further relief as the Court deems just and proper.

Dated: April 28, 2006

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By  *s/ D. J. Baker*  <br> D. J. Baker <br> Sally McDonald Henry <br> Rosalie Walker Gray | By  *s/ Cynthia C. Jackson*  <br> Stephen D. Busey <br> James H. Post <br> Cynthia C. Jackson, F.B.N. 498882 |
| Four Times Square <br> New York, New York 10036 <br> (212) 735-3000 <br> (212) 735-2000 (facsimile) <br> djbaker@skadden.com | 225 Water Street, Suite 1800 <br> Jacksonville, Florida  32202 <br> (904) 359-7700 <br> (904) 359-7708 (facsimile) <br> cjackson@smithhulsey.com |
| Co-Counsel for the Debtors | Co-Counsel for the Debtors |

**EXHIBIT A**

**SECOND ADDENDUM TO EXPRESSIONS FROM HALLMARK AGREEMENT**

### SECOND ADDENDUM TO EXPRESSIONS FROM HALLMARK AGREEMENT

This Second Addendum made as of April 26, 2006, constitutes an amendment to the existing Expressions from Hallmark Marketing Agreement between Hallmark Marketing Corporation ("HMC") and Winn-Dixie Procurement, Inc. ("Retailer") dated April 19, 2002 ("Original Agreement") as amended by the Addendum to Expressions from Hallmark Agreement between HMC and Retailer dated November 4, 2002 ("First Addendum") (the Original Agreement as amended by the First Addendum is hereinafter referred to as the "Agreement").

Whereas, HMC and Retailer are parties to the Agreement; and

Whereas, on February 21, 2005, Retailer filed for protection under Chapter 11 of the United States Bankruptcy Code; and

Whereas, pursuant to the provisions of the United States Bankruptcy Code, Retailer wishes to assume the Agreement, subject to the amendments set forth in this Second Addendum.

Now, therefore, in consideration of the promises and the mutual covenants herein contained, the parties agree as follows:

1. As soon as practicable after the date of execution of this Second Addendum, Retailer will file a motion with the United States Bankruptcy Court under 11 U.S.C. §365(a), in a form acceptable to HMC, seeking an order approving the assumption of the Agreement as modified by this Second Addendum ("Assumption Order"). HMC will support the motion and hereby authorizes the Retailer to represent in the motion that the requirements of 11 U.S.C. §365(b) are satisfied in full by the terms of this Second Addendum.

2. Within 14 days of entry of the Assumption Order, Retailer will pay HMC the amount of $3,969,000 via electronic funds transfer as directed by HMC, and upon receipt of such payment by HMC ("Payment Date"), HMC shall be deemed to have forgiven (a) any liability Retailer has to HMC pursuant to paragraph 4(d) of the Agreement and (b) any other liability existing as of the Payment Date as to which cure or compensation would otherwise have been required under 11 U.S.C. §365(b), except for continuing payment obligations arising from pending invoices for post-petition product and ongoing obligations arising under the Agreement as modified by this Second Addendum.

3. Effective as of the Payment Date, the Agreement is amended as follows:

(a) Attachment A to the Agreement is amended and replaced by Attachment A to this Second Addendum, which lists Existing Stores as of the date of this Second Addendum. References in the Agreement to Existing Stores shall mean the stores listed on Attachment A to this Second Addendum.

(b)  Paragraph 1 of the Agreement is deleted in its entirety and replaced with the following:

**Agreement Period:** The time period covered by this Agreement (the "Agreement Period") shall begin on June 14, 2002 (the "Beginning Date") and end on the date on which Retailer has made Wholesale Purchases of Products (as defined below) from HMC after March 31, 2006 in the amount of $61,000,000 ("Volume Quota"). Wholesale Purchases of Products shall be defined as the full wholesale value of all Products sold in the Stores as communicated via the EDI 852 POS scan data provided by Retailer. HMC shall have no obligation to ship Products hereunder upon the expiration of the Agreement Period, but this Agreement shall otherwise remain in effect until all purchases of Products made by Retailer from HMC have been paid for by Retailer.

(c)  Paragraph 2(j) of the Agreement is deleted in its entirety.

(d)  Paragraph 4(a) of the Agreement is deleted in its entirety.

(e)  Paragraph 4(d) of the Agreement is deleted in its entirety.

4.  All other terms and provisions of the Agreement shall remain in full force and effect.

5.  The parties agree that the Original Agreement as modified by the First Addendum and as further modified by this Second Addendum, together with all attachments, constitutes the entire agreement between the parties.

In witness whereof, the parties hereto have executed this Second Addendum in duplicate.

HALLMARK MARKETING CORPORATION       WINN-DIXIE PROCUREMENT, INC.

By: _Michael Bragioli_ (signature)        By: _(signature)_
Title: VP of Finance - Sales Division      Title: TOM ROBBINS, SVP, Merchandising
Date: 04-27-06                             Date: April 26, 2006

LEGAL APPROVED
ATTY: _BJC_
DATE: 4/26/06

**EXHIBIT B**

**ORDER APPROVING ASSUMPTION OF
MODIFIED AGREEMENT WITH HALLMARK MARKETING CORPORATION**

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER APPROVING ASSUMPTION OF**
**MODIFIED AGREEMENT WITH HALLMARK MARKETING CORPORATION**

These cases came before the Court for hearing on May 18, 2006, upon the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order under 11 U.S.C. §§ 105 and 365 and Fed. R. Bankr. P. 6006 approving the assumption of a modified agreement with Hallmark Marketing Corporation ("Hallmark") and granting related relief (the "Motion").[1] The Court has read the Motion and considered the representations of counsel. Based upon the representations of counsel and without objection by the United States Trustee or any other interested parties, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

2. The Prepetition Agreement as modified by the Postpetition Amendment substantially in the form attached to the Motion (the "Modified Agreement") is assumed under 11 U.S.C. § 365(a).

3. No later than fourteen (14) days after the date of entry of this Order, the Debtors shall pay to Hallmark the sum of $3,969,000.

---

[1] All capitalized terms not otherwise defined in this order shall have the meaning ascribed to them in the Motion.

4. Any other liability as to which cure or compensation would otherwise have been required under 11 U.S.C. §365(b)(1), except for continuing payment obligations arising from pending invoices for post-petition product and ongoing obligations arising under the Modified Agreement, is forgiven.

5. All applicable requirements of 11 U.S.C. § 365(b) are satisfied or waived.

6. Proof of claim number 7292 filed by Hallmark against Winn-Dixie Procurement, Inc. in the amount of not less than $38,829,976 and proof of claim number 7293 filed by Hallmark against Winn-Dixie Stores, Inc. in the amount of not less than $38,829,976 are each disallowed in full.

7. Notwithstanding any provisions to the contrary in Fed. R. Bankr. P. 6006, this Order shall take effect immediately upon entry.

Dated _____, 2006 in Jacksonville, Florida.

                                                        Jerry A. Funk
                                                        United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

2

1105338.02-New York Server 7A - MSW