IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., *et al.* | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## MOTION TO COMPEL PAYMENT OF CURE AMOUNTS

COMES NOW Crowder Family Joint Venture ("<u>CFJV</u>"), a creditor in the above referenced action, and moves the Court to compel the Debtors to pay CFJV cure payments that have remained unpaid and outstanding for over six (6) months. In support of its Motion, CFJV respectfully shows the Court as follows:

### Procedural Background

1.  On or about July 1, 2005, the Debtors filed and served their <u>Motion for Order (A) Authorizing the Sale of Assets Free and Clear of Liens, Claims and Interest and Exempt from Taxes, (B) Authorizing the Assumption and Assignment of Leases and Contracts, and (C) Granting Related Relief</u> (the "<u>Motion</u>") (Docket No. 1961). The Motion scheduled the cure amount required for Store No. 1328 at $14,683.16.

2.  Pursuant to the Notice accompanying the Motion, the last day for objections was July 20, 2005.

3.  On July 16, 2005, CFJV, by and through its counsel, timely filed its Limited Objection to the Motion (Docket No. <u>2255</u>), which objected solely to Debtors' proposed cure amount. Prior to this date, counsel for CFJV and the Debtors had extensive conversations and correspondence about the cure amounts and how to define and resolve such amounts.

4. Between July 16, 2005 and the date hereof, there was no settlement between the Debtors and CFJV concerning the above referenced Limited Objection.

5. On August 8, 2005, the Court entered the <u>Order Approving Debtors' (A) Sale of Assets Free and Clear of Liens, (B) Assumption and Assignment of Leases and (C) Related Relief</u> (the "<u>Order</u>") (Docket No. 2890) after a hearing on the merits of the Motion was held. As represented to and understood by undersigned counsel, disputed cure amounts were not addressed at such hearing and were to be addressed at some point in the future. No hearing has yet been scheduled thereon.

6. The Order failed to acknowledge the filing of or the disputed amounts stated in the Limited Objection. Counsel for CFJV brought this error to the attention of Debtors' counsel, who acknowledged that this omission resulted from a mistake and represented that it would be corrected. Out of an abundance of caution and in order to ensure that CFJV's rights were protected, CFJV timely filed a Motion to Alter or Amend the Order (Docket No. 3080).

7. To date, no amended or corrected order has been entered correcting this error.

8. Nevertheless, the Debtors assumed, sold and assigned the Lease, and the assignee, Kaye Food Companies, LLC ("<u>Kaye</u>"), entered and has occupied the premises since on or about September 1, 2005.

**Debtors Have Refused to Address Cures**

9. Attached hereto as <u>Exhibits "A"</u> through <u>"E"</u> are numerous documents and correspondence that have been exchanged between counsel for the Debtors and CFJV regarding the Debtors' failure to fulfill their repair obligations under the Lease. These documents clearly show that the issues relating to the Debtors' defaults under the Lease were documented and

continuously discussed, with some action taken by the Debtors with respect thereto as evidenced by the correspondence from Debtors' counsel attached hereto as Exhibit "F".

10. Beginning on or about June 17, 2004, CFJV engaged Alpha Inspections to inspect the premises to determine the number and scope of defaults that existed. Their initial report is attached hereto as Exhibit "G" and was provided to the Debtors shortly after CFJV received it.

11. Alpha Inspections updated its report on June 9, 2005, a copy of which is attached hereto as Exhibit "H". The updated report reflects that some of the repairs had been satisfactorily made, while others, particularly the more expensive items such as the repairs to the roof and the back wall, had yet to be repaired. Demand was made by CFJV counsel by letter dated May 17, 2005, attached hereto as Exhibit "I", that the Debtors immediately address these ongoing and continued defaults or the Lease would be terminated.

12. Adam Ravin, one of Debtors' counsel, became engaged in the process and began working diligently to investigate these issues very shortly after demand was made. Inspectors on the Debtors' behalf were engaged, and on June 8, 2005, they went to the premises with Alpha Inspections to jointly inspect and discuss the items of repair and to formulate a plan for addressing them. The Debtors' inspectors acknowledged repairs were needed, but stated that the Debtors had failed to approve the funding requests for such repairs.

13. Some of the repairs were made by the Debtors, as they were obligated to do. Further, for a period of time, the Debtors acknowledged that they owed these obligations and acted as if they would fulfill them. Never once did the Debtors deny their repair obligations.

14. However, shortly after the June 8, 2005 joint inspection, the Debtors ceased all communication with CFJV and its counsel, and no further efforts were made by the Debtors to

address these defaults. The disengagement of the Debtors from this process coincided with the filing of the Motion and the closing of the sale/assignment to Kaye.

15. CFJV continued its efforts to urge the Debtors to address the repairs. All information regarding estimates for costs to repair was forwarded to the Debtors with the request that the Debtors reciprocate in obtaining and submitting counterproposals, if any, so that a final cure amount could be agreed upon. *See* Correspondence dated September 7, 2005, attached hereto as Exhibit "J". The urgency for the Debtors to commence curing the defaults was that now CFJV had a new tenant, Kaye, who needed the repairs made as it was making new investments in the premises and, for example, could not operate its business in a building with a leaking roof that needed to be replaced.[1] No response from the Debtors was received thereto.

16. After giving the Debtors a final ultimatum on September 12, 2005, a copy of which is attached hereto as Exhibit "K", to which again no response whatsoever was given, CFJV commissioned the necessary work required to cure all of Debtors' defaults, which are as follows:

- Roof:                          $106,802.00; *see* Exhibits "L" through "Q".
- Back Wall:                     18,821.02; *see* Exhibit "R".
- Electrical:                    460.00; *see* Exhibit "S".
- Plumbing (roof related):       797.58; *see* Exhibit "T".
- Replace Warehouse Doors:       614.54; *see* Exhibit "U".

In addition to the foregoing, CFJV has incurred and continues to incur interest and other financing related charges for funds borrowed in order to pay for the repairs that the Debtors have refused to pay. The Debtors are liable for these costs as well, which will be more specifically shown at trial. *See* Exhibit "K" above.

---

[1] During this time period, and as a result of the rain from Hurricane Katrina, roof leaks resulted in Kaye losing inventory ruined by water damage, and a patron of the store slipped and fell on water that had leaked onto the floor.

17. CFJV never received any correspondence from the Debtors as to any of these repairs or the costs thereof (no objections, disputes nor any additional quotes).

18. Due to the difficulty in communicating with the Debtors, CFJV engaged local counsel to try and reopen communications in order to have the cure issue addressed. Remarkably, and despite correspondence and prior actions that are clearly to the contrary, the position of the Debtors, as evidenced by correspondence dated March 7, 2006 from Cyndi Jackson, one of its counsel, a copy of which is attached hereto as Exhibit "V", is that the damage requiring repair occurred after closing of the sale to Kaye and that the Debtors have no obligation to cure the defaults. The facts simply demonstrate that the Debtors' position in this regard is entirely baseless and contradictory to its own actions, not to mention its statutory and contractual obligations.

19. In addition to the repair costs, the Debtors are also responsible for amounts owed under the Lease for percentage rent. The amounts owed for percentage rent constitute additional cure amounts for which the Debtors are responsible. The Debtors are obligated to pay CFJV 1.5% of gross sales over $4 million. CFJV has not been provided any information regarding the Debtors' gross sales for 2004, thus CFJV is unable to quantify the amount owed for 2004 percentage rent. Upon receipt of such information, the amount owed for 2004 can be easily determined. With respect to 2005, the Debtors provided information to CFJV indicating their gross sales were $5,708,238.12 for that year. 1.5% of $1,708,238.12 ($5,708,238.12 minus $4,000,000.00) equals $25,623.57. The Debtors are entitled to a $25,000 deduction having timely exercised their option to take such deduction, leaving a balance due to CFJV of $623.57. Thus $623.57, and the amount yet to be determined for 2004, constitute additional cure amounts the Debtors must pay CFJV.

20.  CFJV has provided the Debtors with ample opportunities to address these obligations that have, for extended periods prior to and after the petition date, been in continued default. However, the Debtors have failed to fulfill their statutory obligations to promptly cure the defaults described herein.

WHEREFORE, CFJV respectfully requests that the Court compel the Debtor to immediately pay the cure amounts set forth herein, including interest and other financing related charges for funds borrowed in order to pay for the repairs. CFJV requests such other and further relief as the Court deems just and proper.

THIS the 1st day of May, 2006.

HELD & ISRAEL

By: /s/ Edwin W. Held, Jr.
Edwin W. Held, Jr., Esquire
Florida Bar #162574
Adam N. Frisch, Esquire
Florida Bar #635308
1301 Riverplace Blvd., Suite 1916
Jacksonville, Florida 32207
(904) 398-7038 Telephone
(904) 398-4283 Facsimile

and

Douglas C. Noble, MS Bar No. 10526
**PHELPS DUNBAR LLP**
111 East Capitol, Suite 600
Post Office Box 23066
Jackson, Mississippi 39225-3066
Telephone: (601) 352-2300
Facsimile: (601) 360-9777