Hearing Date: June 1, 2006
Objection Deadline:
   May 26, 2006 at 4:00 p.m. (E.T.)

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors.[1] | ) | Jointly Administered |

## MOTION FOR ORDER AUTHORIZING THE DEBTORS
## TO SELL HOLLYWOOD TRACT AND RELATED ASSETS
## FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS
## AND  GRANTING RELATED RELIEF

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order pursuant to 11 U.S.C. §§ 105(a), 363 and Fed. R. Bankr. P. 6004(g): (a) authorizing Winn-Dixie Stores, Inc., as owner trustee under the Dixon Realty Trust 1999-1, a Utah Trust (the "Debtors") to sell a tract of land located in Hollywood, Florida, more particularly described on Exhibit A attached to this Motion (the "Hollywood Tract"), together with all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments to South Florida Investment Group, LLC (the "Purchaser"), or to a party submitting a higher or

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

better offer, free and clear of liens, claims and interests, and granting related relief.
In support of the Motion, the Debtors respectfully state as follows:

### Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  As of the Petition Date, the Debtors were considered the eighth-largest food retailer in the United States and one of the largest in the Southeast with more than 900 stores.

4.      Prior to the Petition Date, the Debtors purchased a tract of land located in Hollywood, Florida for the purpose of building a grocery store.  Since

the Petition Date, the Debtors have decided they no longer wish to develop the Hollywood Tract and have decided to sell the property.

5.      The Debtors have marketed the Hollywood Tract extensively through DJM Asset Management, Inc. ("DJM").  DJM sent over 2,500 sale notices for the tract to potential purchasers.  Through DJM's efforts, the Debtors have received 5 offers, including the offer by the Purchaser for $6,250,000.  After reviewing all offers, including all terms of all offers, the Debtors have determined that the Purchaser's offer is the highest and best offer for the Hollywood Tract.

## Relief Requested

6.      By this Motion, the Debtors request (a) authority to sell their fee simple title interest in the Hollywood Tract and all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments (collectively, the "Assets"), free and clear of liens, claims and interests, subject to higher or better offers and (b) related relief.   The Assets are more fully described in the Real Estate Purchase Agreement (defined below).

## The Real Estate Purchase Agreement

7.      On May 1, 2006, the Debtors and the Purchaser entered into the Real Estate Purchase Agreement attached to this Motion as Exhibit A (the "Purchase Agreement").

8.    A summary of the material terms of the transaction with the Purchaser, subject to this Court's approval, are as follows:[2]

(a)    <u>Assets</u>.  The assets to be sold and transferred to the Purchaser include:

(i)    the Debtors' fee simple title interest in the Hollywood Tract; and

(ii)    the Debtors' interest in all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments.

(b)    <u>Purchase Price</u>.  On the terms and subject to the conditions set forth in the Purchase Agreement, the net aggregate purchase price for the Assets is $6,250,000 (the "Purchase Price").  The Purchase Price is to be paid by the Purchaser on or before the Closing Date, as defined in the Purchase Agreement.  A deposit of $500,000 has been paid by the Purchaser.

(c)    <u>Sale Free and Clear</u>.  The Purchase Agreement provides that the Assets are to be transferred free and clear of any liens, claims, interests and encumbrances other than the Permitted Encumbrances, as defined in the Purchase Agreement.

(d)    <u>Brokerage Commission</u>.    The Debtors will be responsible for payment of a brokerage commission, due to Purchaser's broker, Wiz Realty, in the amount of one percent (1%) of the purchase price, only if the transaction is consummated at the date and time of Closing..  The Debtors will be responsible for payment of the Debtors' broker pursuant to the Retention Order.

9.    The Debtors move for authority to consummate the sale of the Assets with the Purchaser or, alternatively, to the party submitting a higher or better offer for the Assets.

---

[2]    This summary of the Purchase Agreement is provided as a convenience only.  To the extent that this summary differs in any way from the terms of the Purchase Agreement, the terms of the Purchase Agreement control.

## Solicitation of Higher and Better Offers

10.     Notwithstanding that the Assets have been sufficiently marketed, the Debtors are soliciting higher and better bids for the Assets.  Any person or entity interested in submitting a higher and better bid for the Assets must submit such bid so that it is received by James Avallone at DJM, 445 Broadhollow Road, Suite 417, Melville, NY 11747 with a copy to undersigned counsel for the Debtors no later than 12:00 p.m. (prevailing Eastern Time) on Friday, May 26, 2006.  All bids must comply with the bidding procedures approved by order of the Bankruptcy Court dated June 21, 2005 (Docket No. 1801).  To qualify as a competing bid, the offer must net the Debtors' estates at least $6,260,000 and be accompanied by a certified check  or wire transfer made out to Winn-Dixie Stores, Inc. in an amount equal to 10% of the competing bid.

11.     If the Debtors receive a higher or better offer for the Assets, they will conduct an auction (the "Auction") for the Assets in accordance with the Bidding Procedures Order.  The Auction will take place at 10:00 a.m. (prevailing Eastern Time) at the offices of Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida, on Wednesday, May 31, 2006.  The Debtors will conduct the Auction in consultation with the Creditors' Committee and the DIP Lender and on terms the Debtors determine to be in the best interests of their estates and their creditors.

## Applicable Authority

A.  Bankruptcy Code Section 363(b) Authorizes the Sale

12.  Bankruptcy Code section 363(b)(1) provides:  "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy Code section 1107 (a) gives the Debtors, as debtors-in-possession, the same authority as a trustee to use, sell or lease property under section 363(b)(1).  *See* 11 U.S.C. § 1107(a).

13.  A debtor's sale under section 363(b)(1) should be approved when supported by a sound business reason.  *See In re B.D.K. Health Mgmt., Inc.* ("B.D.K. Health Mgmt."), Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp.* (*In re Chateaugay Corp.*), 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all a chapter 11 debtor's assets under

§ 363(b)(1) when a sound business purpose dictates such action"); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

14.    Once a court is satisfied that a sound business reason for the sale exists, the Court must also consider whether (a) the sale price is fair and reasonable, (b) the purchaser is proceeding in good faith, and (c) the Debtor has provided interested parties with adequate and reasonable notice.  *Delaware & Hudson*, 124 B.R. at 175-176.

15.    The Debtors have a sound business reason for the sale of the Assets. The Debtors have decided not to develop the Hollywood Tract and by selling it, the Debtors will bring at least $6,250,000 into the Debtors' estates.

16.    The Debtors' sale of the Assets to the Purchaser is subject to competing bids, ensuring that the Debtors will receive the highest or best value for the Assets.   Thus, the fairness and reasonableness of the consideration to be received for the Assets ultimately will be demonstrated by a "market check" and auction process -- the best means for establishing whether a fair and reasonable price is being paid.

17.    If required, the Debtors are prepared to present further evidence of good faith during the course of the Sale Hearing that the Debtors believe will satisfy this Court and the mandates of Bankruptcy Code section 363(m).

18.    In accordance with Local Rule 2002-1, the Debtors will serve notice of the Motion on the following parties: (a) each taxing authority known to the

Debtors to have a potential interest in the Assets, (b) all parties that expressed interest in purchasing the Assets; (c) the Purchaser; (d) counsel for the DIP Lenders; (e) counsel for the Creditors' Committee; (f) counsel for the Equity Committee; (g) all known holders of Interests and Claims (as defined below) in the Assets; (h) all entities having requested notices pursuant to Fed. R. Bankr. P. 2002; and (i) the Office of United States Trustee.

B.     **Bankruptcy Code Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims**

19.     The Debtors request that this sale of Assets be approved free and clear of any liens, claims or interests.   Pursuant to Bankruptcy Code section 363(f), a debtor may sell property of the estate free and clear of all liens, claims and interests after notice and hearing. *See In re Parrish*, 171 B.R. 138 (Bankr. M. D. Fla. 1994).

20.     The Debtors believe that with the exception of the Permitted Encumbrances, there are no interests in or claims against the Assets other than the interest of Wachovia Bank, National Association, as Administrative Agent and Collateral Agent (collectively, the "DIP Lender").   The interest of the DIP Lender will be satisfied because the Debtors will cause the proceeds from the sale to be paid in accordance with the terms of the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and

Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-petition Secured Lenders dated March 23, 2005 (Docket No. 501) (the "Final Financing Order") and the Loan Documents (as defined in the Final Financing Order).

C.      Good Faith Purchaser

21.     The Debtors request that the Court find that the Purchaser, or the party who ultimately submits the highest or best offer for the Assets, acted in good faith within the meaning of Bankruptcy Code section 363(m).

22.     Bankruptcy Code section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m)

23.     The Bankruptcy Code does not define the term "good faith." Courts, however, indicate that a party would have to show fraud or collusion between the purchaser and the debtor-in-possession or trustee in order to demonstrate a lack of good faith.

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the

purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Apex Oil Co.*, 2 B.R. 847, 865
(Bankr. E.D. Mo. 1988)

*Accord Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.* (*In re Colony Hill Assocs.*), 111 F.3d 269, 276 (2d Cir. 1997).  No such facts exist here.

24.    The Debtors assert that:  (a) the proposed sale is the subject of arm's length negotiations with the Purchaser and is made in good faith; (b) the Purchaser has no affiliation with the Debtors; (c) the Assets were marketed extensively and the purchase price is fair and reasonable; (d) to the best of the Debtors' knowledge, the Purchaser has taken no action to chill or otherwise collude with any other party to restrict bidding on the Assets; and (e) the marketing process that occurred and the notice of the Sale Hearing ensure that the Purchaser has not exerted undue influence over the Debtors.  Accordingly, the Debtors request that the Court find that the Purchaser, or the party submitting a higher or better offer, acted in good faith within the meaning of Bankruptcy Code section 363(m).  *See B.D.K. Health Mgmt.*, 1998 WL, at *4 (finding that the purchaser is entitled to the protections of Bankruptcy Code section 363(m) because the sale was negotiated at arms-length, proposed in good faith and the consideration for the assets was fair and reasonable).  The Debtors' proposed sale of the Assets is the product of arm's length negotiations with the Purchaser and was made in good faith.  The Purchaser has no affiliation with the Debtors, and the ability of third parties to make higher

or better bids ensures that the Purchaser has not exerted any undue influence over the Debtors.

D.    <u>Elimination of 10-Day Stay Under Rules 6004(g)</u>

25.    Pursuant to Rule 6004(g), F.R. Bankr. P., unless the Court orders otherwise, all orders authorizing the sale of property outside of the ordinary course of business pursuant to Bankruptcy Code section 363 are automatically stayed for ten days after entry of the order.  Given the requirements of the Purchase Agreement and the need to close the sale as promptly as possible, the Debtors request that the Court waive the 10-day stay period.

E.    <u>Objection Deadline</u>

27.    Only objections filed and served on Sally McDonald Henry at shenry@skadden.com, Skadden, Arps, Slate, Meagher, & Flom, LLP, Four Times Square, New York, New York 10036 and on Cynthia C. Jackson at cjackson@smithhulsey.com, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 so as to be received by May 26, 2006 at 4:00 p.m. (E.T.) will be considered by the Bankruptcy Court at the Hearing.

**Conclusion**

For the foregoing reasons, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit B (a) granting the Motion and authorizing the sale of the Assets to the Purchaser in accordance with the Purchase Agreement, or to the party submitting a higher or otherwise better offer for the Assets; (b) authorizing the Debtors to take all actions reasonably necessary to effectuate the sale of the Assets in accordance with the Purchase Agreement; and (c) granting such other and further relief as the Court deems just and proper.

Dated: May 8, 2006

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By    */s/ D. J. Baker*
      D. J. Baker
      Sally McDonald Henry
      Rosalie W. Gray

Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for Debtors

SMITH HULSEY & BUSEY

By    */s/ Cynthia C. Jackson*
      Stephen D. Busey
      James H. Post
      Cynthia C. Jackson  (F.B.N. 498882)

225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Debtors

00530440

# **EXHIBIT A**

FINAL

## REAL ESTATE PURCHASE AGREEMENT
[Hollywood Tract]

**THIS REAL ESTATE PURCHASE AGREEMENT** (this "Agreement") is made as of May 1, 2006 (the "Effective Date"), between

**SOUTH FLORIDA INVESTMENT GROUP, LLC**, a Florida limited liability company ("Buyer"), and

**WINN-DIXIE STORES, INC.**, a Florida corporation as Owner Trustee under the Dixon Realty Trust 1999-1, a Utah Trust ("Seller").

1.   SALE AND PURCHASE. Seller agrees to sell, assign, transfer and convey to Buyer, and Buyer agrees to purchase from Seller, that certain tract of land situated in Broward County, Florida, as more particularly described on attached Exhibit A, together with all appurtenances, rights, easements, rights-of-way, tenements and hereditaments incident thereto (collectively, the "Property").

2.   PURCHASE PRICE AND PAYMENT. In consideration of the conveyance of the Property to Buyer, Buyer will pay to Seller the sum of $6,250,000 (the "Purchase Price"), payable as follows:

   (a)   An earnest money deposit of $500,000 (the "Deposit") has been delivered to Gabriel Martin, P.A., as escrow agent ("Escrow Agent"), and is non-refundable.

   (b)   At Closing, the Deposit will be delivered to Closing Agent (as hereinafter defined) and credited against the Purchase Price, and the unpaid balance of the Purchase Price will be due and payable in cash (as adjusted by prorations and payment of expenses as herein provided).

   (c)   Any reference in this Agreement to the "Deposit" will include any interest earned thereon.  Buyer will be responsible for payment of taxes, if any, associated with interest accrued on the Deposit.  Buyer's FEI number for federal income tax reporting purposes is 65-1067385.

3.   PROPERTY CONDITION AND INVESTIGATION.

   (a)   Property Conveyed AS IS. BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING, SELLER WILL SELL AND CONVEY TO BUYER AND BUYER WILL ACCEPT THE PROPERTY **"AS IS, WHERE IS,"** WITH ALL FAULTS, AND THERE ARE NO ORAL AGREEMENTS, WARRANTIES OR REPRESENTATIONS COLLATERAL TO OR AFFECTING THE PROPERTY BY SELLER OR ANY THIRD PARTY. THE TERMS AND CONDITIONS OF THIS PARAGRAPH WILL EXPRESSLY SURVIVE THE CLOSING AND NOT MERGE THEREIN.

(b)     <u>Use Restrictions</u>. Buyer acknowledges that a deed restriction ("<u>Deed Restriction</u>") will be established at closing for the purpose of protecting Seller's continuing commercial interests within the general area of the Property, as set forth in the form of Deed with Deed Restrictions attached as <u>Exhibit B</u> (the "<u>Deed</u>"). Seller intends the Deed Restriction to ensure that no portion of the Property will be used for the purposes of a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products.

Seller will incorporate the Deed Restriction into the Deed at Closing for the purpose of establishing the foregoing use restriction and Buyer hereby consents to such action as Permitted Encumbrances, as defined below, as covenants running with the land.

(c)     <u>Investigation Period</u>.

(i)     Buyer has inspected the Property and waives all further investigation of the Property and has determined that the same is satisfactory to Buyer.

(ii)    Seller previously has provided to Buyer, to the extent in the possession of Seller or its legal counsel, copies of all documents listed as Permitted Encumbrances on the Schedule of Permitted Encumbrances attached as <u>Exhibit C</u> (the "<u>Permitted Encumbrances</u>"), a copy of Seller's most recent available boundary survey or site plan, environmental site assessment report, and engineering reports, if any, relating to the Property (collectively, the "<u>Property Reports</u>"). Buyer acknowledges that the Property Reports were provided for informational purposes only, are not warranted by Seller for accuracy, completeness, or fitness for a particular purpose, and are not a substitute for Buyer's own investigation and inspection of the Property using its own due diligence service providers. If Buyer fails to close for any reason, all materials provided by Seller to Buyer (including without limitation, the Property Reports), all materials relating to the Property obtained by Buyer, and all copies of any such materials, will be delivered to Seller promptly, and in any event not later than 5 business days following such termination.

(iii)   Buyer agrees to accept the transfer and conveyance of the Property by Seller without any warranty or representation concerning the quantity, quality, or condition of the Property, the availability of water, sewer, utilities or necessary governmental authorizations, or any other matter not expressed in this Agreement. Buyer is accepting the Property "AS IS" with all faults. Seller has no obligation to make any independent investigation or verification of the condition of the Property. THERE ARE NO EXPRESS OR IMPLIED WARRANTIES GIVEN TO BUYER IN CONNECTION WITH THE SALE OF THE SUBJECT PROPERTY (other than the warranties set forth in the Special Warranty Deed to be delivered by Seller to Buyer at Closing).

2

4.    TITLE AND SURVEY MATTERS.

    (a)    Title Commitment. Prior to the Effective Date, Seller has delivered to Buyer a title insurance commitment (the "Commitment") from Fidelity National Title Insurance Company (the "Title Insurer") committing to insure Buyer's fee simple title to the Property for the amount of the Purchase Price, and stating all exceptions and conditions to such title, including, without limitation, those encumbrances created pursuant to the Credit Agreement dated as of February 23, 2005, as amended, between Seller and certain banks and financial institutions, and certain documents executed by Seller in connection with such Credit Agreement (the "Credit Agreement Liens"), any other liens and encumbrances affecting the Property ("Other Liens"), and the Permitted Encumbrances.   Buyer has evaluated the Title Commitment and has determined that the same is satisfactory to Buyer, subject to satisfaction of the Schedule B-I requirements to the issuance of a title insurance policy.

    (b)    Boundary Survey. Prior to the Effective Date, Seller has delivered to Buyer and Title Insurer a current boundary survey of the Property (the "Survey"), prepared by a licensed surveyor in accordance with the minimum technical standards for surveys under the laws of the state in which the Property is located, certified to Buyer, Seller and Title Insurer, and showing a metes and bounds legal description for the Property (the "Legal Description"). Buyer has evaluated the Survey and has determined that the same is satisfactory to Buyer.

5.    WARRANTIES OF SELLER AND BUYER.

    (a)    Seller's Warranties. Seller warrants to Buyer as follows:

        (i)    Corporate Existence and Authority. Seller is a Florida corporation acting in its capacity as Owner Trustee of the Dixon Realty Trust 1999-1, a Utah Trust, and its status is active. Subject to the satisfaction of the Approval Condition pursuant to paragraph 6 below, Seller has the corporate power and authority to enter this Agreement and to consummate the transactions contemplated herein.

        (ii)    Title to Property. Seller owns fee simple title to the Property, subject to the Permitted Encumbrances and the Credit Agreement Liens.

        (iii)    Power to Convey. To the best of Seller's knowledge, and subject to satisfaction of the Approval Condition pursuant to paragraph 6 below, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Seller of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To the best of Seller's knowledge, other than the Bankruptcy Cases, as defined in paragraph 6 below, there is no action, suit, proceeding or investigation pending which would prevent the transactions contemplated by this Agreement or which would become a cloud on the title to the Property

3

or any portion thereof or which questions the validity or enforceability of the transactions contemplated by this Agreement or any action taken pursuant hereto.

(b)     Buyer's Warranties. Buyer warrants to Seller as follows:

   (i)     Existence and Authority. Buyer, or its permitted assigns, has full power and authority to enter this Agreement and to consummate the transactions contemplated herein, and if Buyer's assign is a business entity, such entity is duly authorized, validly existing and active in the state of its formation.

   (ii)    Power to Acquire. To the best of Buyer's knowledge, and subject to satisfaction of the Approval Condition pursuant to paragraph 6 below, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Buyer of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To the best of Buyer's knowledge, other than the Bankruptcy Cases, there is no action, suit, proceeding or investigation pending which would prevent the transactions contemplated by this Agreement or which questions the validity or enforceability of the transactions contemplated by this Agreement or any action taken pursuant hereto.

   (iii)   Financial Condition. Buyer represents, warrants and covenants that as of the Effective Date and continuing through the Closing Date, Buyer has and will have the sufficient funds on hand to perform its obligations under this Agreement, including payment of the Purchase Price at Closing.

(c)     Survival of Warranties. The respective warranties of Buyer and Seller above will not survive the Closing but will merge into the conveyance instrument, and will have no further force or effect after the Closing, and the liability of Seller under or with respect to the warranties will be limited to the express remedies of Buyer set forth in this Agreement.

6.     CLOSING CONDITIONS.

(a)     Approval Condition.

   (i)     Chapter 11 Cases. Seller (Winn-Dixie Stores, Inc. and certain of its affiliated companies) filed voluntary petitions for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, U.S.C. §101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "Filing Date") and have operated its businesses as debtors-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date (the "Bankruptcy Cases"). By order entered on April 13, 2005, the Bankruptcy Cases were

4

transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "<u>Bankruptcy Court</u>") where they are being jointly administered under Case No. 05-03817-3F1.

(ii)     <u>Competitive Bid Process</u>. By Order dated June 20, 2005, the Bankruptcy Court approved bidding procedures and bid protections for use in the sale of assets in the Bankruptcy Cases (the "<u>Bidding Procedures</u>"). This Agreement is subject to the competitive bid process described in the Bidding Procedures. Promptly following expiration of the Investigation Period, provided that Buyer has not earlier terminated this Agreement in accordance with <u>paragraphs 3 or 4</u> above, Seller will file a motion with the Bankruptcy Court seeking approval of the transactions contemplated by this Agreement, subject to higher or better offers, and the transfer of the Property free and clear of all claims and liens including the Credit Liens, other than Permitted Encumbrances, pursuant, <u>inter alia</u>, to 11 U.S.C. Sections 105, 363 and 1146(c) (the "<u>Sale Motion</u>"). The Bankruptcy Court will set a date for hearing on the Sale Motion and to consider entry of the Sale Order relating to the successful bid (the "<u>Sale Hearing</u>"). Prior to the Sale Hearing, the debtors will conduct an Auction pursuant to the Bidding Procedures. The Bidding Procedures allow Seller to accept competitive bids to determine the successful bid for the Property. Buyer may participate in the Auction, and may submit purchase terms different from those set forth in this Agreement as Buyer may deem appropriate in seeking to become the successful bidder. Prior to the Sale Hearing, upon consultation with the Creditors' Committee and DIP Lender, Seller will select the highest or otherwise best offer to purchase the Property, as determined by Seller in its sole discretion in accordance with the Bidding Procedures, as the Successful Bid (as defined in the Bidding Procedures). Seller will submit the Successful Bid to the Bankruptcy Court at the Sale Hearing, for entry of a Sale Order with respect to the Property by the Bankruptcy Court, either (a) approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, if Buyer is the Successful Bidder under the terms of this Agreement (or as modified during the Auction) or (b) approving the more favorable terms of purchase and sale offered by the Successful Bidder, whether Buyer or otherwise (the "<u>Sale Order</u>").

(iii)    <u>Sale Order Approving Agreement</u>. It will be a condition to the Closing of the transaction contemplated by this Agreement that the Bankruptcy Court will have issued the Sale Order approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, and such Sale Order either will have become final and non-appealable, or the Sale Order will contain a waiver of the stay set forth in Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "<u>Approval Condition</u>").

5

    (iv)   <u>Continuing Effectiveness of Agreement</u>. Notwithstanding that Buyer may not be the successful bidder following the Bidding Procedures, this Agreement, as modified by Buyer's last bid made during the Bidding Procedures, will remain in effect in accordance with, and will remain subject to, the Bidding Procedures. If the Approval Condition is not otherwise satisfied by June 28, 2006 (the "<u>Outside Date</u>") through no fault of Buyer, or if the sale of the Property closes with another successful bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other.

    (b)   <u>Conditions Precedent to Seller's Obligations</u>. The obligations of Seller under this Agreement are subject to the Approval Condition and satisfaction on or before the Closing Date, or such other date as herein provided, of all conditions contained in this Agreement, including each of the following (any of which may be waived by Seller in its sole discretion, unless otherwise stated herein):

    (i)   Buyer will have performed in all material respects all of its covenants contained in this Agreement which are not qualified by reference to a materiality standard; and Buyer will have performed in all respects all of its covenants contained in this Agreement which are qualified by reference to a materiality standard. All of Buyer's representations and warranties contained in this Agreement will be true and accurate in all material respects as of the Effective Date and the Closing Date.

    (ii)   No order, injunction or decree issued by any applicable governmental authority or other legal restraint or prohibition preventing the consummation of the transactions contemplated by this Agreement with respect to such Store will be in effect.

If any of the foregoing conditions has not been satisfied on or before the Outside Date, then Seller will have the right to terminate this Agreement; provided, however, that if any of the foregoing conditions has not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations will be determined in accordance with <u>paragraph 13</u> of this Agreement.

7.   <u>LOSS BY FIRE OR OTHER CASUALTY</u>. If, prior to Seller's legal delivery of the Deed and Buyer's delivery of the Purchase Price, the Property or any material part thereof, are destroyed or materially damaged, then either party will have the right, exercisable by giving notice of such decision to the other within 5 business days after receiving written notice of such damage or destruction, to terminate this Agreement, and thereafter none of the parties will have any further rights or obligations hereunder; provided, however, that Buyer will be entitled to the return from the Escrow Agent of the Deposit. If neither party exercises its right of termination the Assets are sold to Buyer pursuant to the terms of this Agreement, as Buyer's sole remedies, Seller will assign to Buyer any rights it may have, and is entitled to assign, to recover insurance proceeds and will promptly pay over and deliver to Buyer any such proceeds received by it.

Real Estate Purchase Agreement
Hollywood Tract – Florida
Winn-Dixie Stores, Inc. S/T South Florida Investment Group, LLC
April 24, 2006
SGRJAX\77165.3

8.    CLOSING AND CLOSING DATE. The consummation of the transactions contemplated herein by Buyer and Seller (the "Closing") will be held on or before that date which is 10 days following the satisfaction of the Approval Condition (the "Closing Date"), at a time and place mutually acceptable to the parties, but if none is agreed to, at the offices of Smith, Gambrell & Russell, LLP, as closing agent ("Closing Agent") in Jacksonville, Florida. Closing may be conducted by use of mail-away procedures including escrow and Closing disbursement and delivery of documents and funds administered by Closing Agent.

9.    CLOSING DELIVERIES. On the Closing Date, Seller will execute and deliver the Deed to Buyer as will be required to convey title to the Property to Buyer subject to the Permitted Encumbrances and in accordance with this Agreement. Additionally, on the Closing Date, Seller will execute and deliver the title affidavit as required by the Title Insurer to allow the issuance of the title insurance policy without the standard exceptions other than for taxes for the year of Closing, those standard exceptions required under the laws of the state in which the Property is located, and for specific matters disclosed by the Survey, and a non-foreign affidavit as required under the Internal Revenue Code. At Closing, Buyer and Seller will execute and deliver a closing statement setting forth the disbursement of the Purchase Price and closing costs associated with the transactions contemplated herein. On the Closing Date, Seller will turn over exclusive physical possession of the Property to Buyer upon confirmation to Seller by the Escrow Agent that Escrow Agent has received and holds the entire Purchase Price for disbursement without further condition.

10.   CLOSING COSTS. At or prior to Closing, Seller will pay one-half the cost of documentary stamp taxes on the Deed (if required to be paid), the cost of the title commitment and insurance policy to be issued pursuant to the Commitment in the amount of the Purchase price, the cost of the Survey, the commission payable to Buyer's Brokers and Seller's Brokers as disclosed in paragraph 12, and Seller's attorneys' fees and costs ("Seller's Closing Costs"). At or prior to Closing, Buyer will pay one-half the cost of documentary stamp taxes on the Deed (if required to be paid), the cost of its due diligence investigations of the Property, recording fees, all financing costs of Buyer incurred to purchase or develop the Property including simultaneous issue mortgagee title insurance and related endorsements, Buyer's attorneys' fees and costs and all other fees, costs and expenses incurred by the Buyer in connection herewith ("Buyer's Closing Costs"). If this transaction fails to close for any reason, and without waiving any right or remedy that either party may have against the other in the event of a default hereunder, Seller promptly will pay Seller's Closing Costs, and Buyer promptly will pay Buyer's Closing Costs.

11.   PRORATIONS. All ad valorem taxes for the year in which the Closing occurs will be prorated between Seller and Buyer as of midnight immediately preceding the Closing Date. The proration will be based upon the latest available tax figures with known changes (based on earliest payment discount, if any). The tax proration at Closing may be based on an estimate using the previous year's tax amount. Buyer will have responsibility for payment of 2006 taxes when due.

7

12.     BROKERAGE. Seller and Buyer agree that Buyer has employed Wiz Realty ("Buyer's Broker") with respect to the sale of the Property, and Seller has retained DJM Asset Management, LLC ("Seller's Broker") pursuant to Order Authorizing Debtors to Retain DJM Asset Management, LLC as Special Real Estate Consultants to the Debtors, issued by the Bankruptcy Court on June 10, 2005 (the "Retention Order"). Seller will be responsible for payment of the brokerage commission due to Buyer's Broker only if the transaction is consummated at the date and time of Closing, in the amount of one percent (1%) of the Purchase Price. Seller will also be responsible for payment of the Seller's Broker pursuant to the Retention Order. Each party indemnifies and agrees to hold harmless the other from any claim made by any other broker or agent who claims to act for the party sought to be charged for a commission, compensation, brokerage fees, or similar payment in connection with this transaction and against any and all expense or liability arising out of any such claim.

13.     REMEDIES.

(a)     Seller's Default. In the event that Seller defaults in the performance of its obligations under this Agreement, and such default is not cured on or before the Closing Date, Buyer will be entitled to terminate this Agreement upon written notice to Seller and Escrow Agent and obtain a refund of the Deposit. Buyer waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided in paragraph 12 above, which indemnification will survive separately from the termination of this Agreement.

(b)     Buyer's Default. If Buyer fails to make the Deposit when due or to comply with or perform any of the covenants, agreements, or obligations to be performed by Buyer under the terms and provisions of this Agreement, then Seller will be entitled to terminate this Agreement upon written notice to Buyer and Escrow Agent, and the Deposit will be paid to Seller as reasonable liquidated damages. Seller waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided under paragraph 3(c)(ii) and paragraph 12 above, which indemnifications will survive separately from the termination of this Agreement.

14.     ESCROW AGENT.

(a)     Duties. By joining in the execution of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Upon receipt, Escrow Agent will hold the Deposit in trust, and deposit the same into an interest bearing escrow account (money market rates), to be disposed of in accordance with the provisions of this Agreement.

(b)     Indemnity. Escrow Agent will not be liable to either party except for claims resulting from the negligence or willful misconduct of Escrow Agent. If the escrow is involved in any controversy or litigation, the parties hereto will jointly and severally indemnify and hold Escrow Agent free and harmless from and against any and all loss cost, damage, liability or expense, including costs of reasonable attorneys' fees to which Escrow Agent may be put or which may incur by reason of or in connection with such controversy or litigation, except to the extent it is finally determined that such controversy or litigation

8

resulted from Escrow Agent's negligence or willful misconduct. If the indemnity amounts payable hereunder result from the fault of Buyer or Seller (or their respective agents), the party at fault will pay, and hold the other party harmless against, such amounts.

(c)   <u>Withdrawal</u>. No party will have the right to withdraw any monies or documents deposited by it with Escrow Agent prior to the Closing or termination of this Agreement except in accordance with the terms of this Agreement.

(d)   <u>Written Objection</u>. If a written objection is filed with Escrow Agent, or Escrow Agent otherwise is in doubt as to its duties, Escrow Agent may continue to hold the funds in escrow until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court having jurisdiction of the dispute or the Escrow Agent may interplead the same in the Circuit Court and be relieved of any and all liability therefor. In any action or proceeding regarding the Deposit brought by Escrow Agent or to which Escrow Agent is made a party Escrow Agent will be entitled to recover its reasonable costs and attorney's fees (through appeal).

15.   <u>NOTICES</u>. All notices, demands, requests and other communications hereunder will be in writing and will be deemed to have been given (i) on the same business day if delivered personally, (ii) 3 business days following mailing by registered or certified mail, return receipt requested, postage prepaid, or (iii) on the same business day if sent by telefax, to Buyer, Seller or Escrow Agent at its respective address set forth below:

| | |
|---|---|
| If to Seller: | Winn-Dixie Stores, Inc., as Owner Trustee<br>Dixon Realty Trust 1999-1<br>5050 Edgewood Court<br>Jacksonville, Florida  32254<br>Attention: Catherine Ibold<br>Telefax No.: 904 783 5138 |
| with a copy to: | Smith, Gambrell & Russell, LLP<br>50 N. Laura Street, Suite 2600<br>Jacksonville, Florida  32202<br>Attention: Douglas Stanford<br>Telefax No.: 904 598 6126 |
| If to Buyer: | South Florida Investment Group, LLC<br>P.O. Box 601545<br>N. Miami Beach Florida  33160<br>Attention: Ely Hadad<br>Telefax No.: _____ |
| with a copy to: | Law Office of Bennet Feldman<br>2655 Lejeune Road, Suite 514<br>Coral Gables, Florida  33134<br>Attention: Bennet Feldman<br>Telefax No.: 305 461 5088 |

9

If to Escrow Agent:             Gabriel Martin, P.A.
                                501 N.E. 1st Avenue
                                Suite 200
                                Miami, Florida  33132
                                Telefax No.: 305 577 8477

or at such other address as the party may specify from time to time by written notice to the other party.


16.    MISCELLANEOUS PROVISIONS.

    (a)    Successors And Assigns; Assignment Of Agreement. All terms of this Agreement will be binding upon, and will inure to the benefit of and be enforceable by the parties hereto and their respective legal representatives, heirs, successors and assigns.  Except as set forth below, this Agreement may not be assigned by either party without the express written consent of the other.  Notwithstanding the foregoing to the contrary, Buyer may freely assign its rights under this Agreement, without Seller's consent, as long as Buyer remains liable under this Agreement, and Buyer and its assignee have executed a written instrument pursuant to which such assignee expressly assumes Buyer's obligations hereunder, and a copy of such written assignment is delivered to Seller.

    (b)    Exchange Provision.  Buyer and Seller acknowledge that either or both of them may desire to structure the sale contemplated hereby as a tax-deferred exchange pursuant to section 1031 of the Internal Revenue Code, as amended. Accordingly, Buyer and Seller agree that they shall cooperate with and assist one another in accomplishing any such exchange provided that (a) the consummation of the transactions contemplated hereby is not thereby delayed, and (b) no party hereto shall be obligated to incur any expense or liability (actual or potential) beyond that which it is otherwise obligated to incur hereunder, and (c) in no event shall Buyer be obligated to contract for the purchase of or to take title to any so-called "replacement property".

    (c)    Governing Law. This Agreement will be governed and construed in accordance with the laws of the State of Florida.  Any dispute arising out of or under this Agreement will be litigated in the Bankruptcy Court.

    (d)    Captions. The captions of this Agreement are inserted for convenience or reference only and not to define, describe or limit the scope or the intent of this Agreement or any term hereof.

    (e)    Counterparts. This Agreement may be executed in any number of counterparts, each of which will be deemed to be an original but all of which together will constitute one and the same instrument.

10

(f)    <u>Changes And Modifications; Prior Agreements</u>. This Agreement may not be orally changed, modified or terminated; it supersedes any and all prior understandings and/or letter agreements; other matters of similar nature will be deemed to be of no force or effect in the interpretation of this Agreement, it being intended that this Agreement represents the entire understanding of the parties. No waiver of any provision hereof will be valid unless in writing and signed by a party against whom it is to be enforced.

(g)    <u>Waiver</u>. No failure of either party to exercise any power given hereunder or to insist upon strict compliance with any obligations specified herein, and no custom or practice at variance with the terms hereof, will constitute a waiver of any party's right to demand exact compliance with the terms hereof; provided, however, that any party may, at its sole option, waive any requirement, covenant or condition herein established for the benefit of such party without affecting any of the other provisions of this Agreement.

(h)    <u>Further Assurances; Cooperation</u>. Seller and Buyer each agree to execute and deliver to the other such further documents and instruments as may be reasonable and necessary in furtherance of and to effectuate the intent of the parties as expressed by the terms and conditions hereof. Additionally, Seller agrees to cooperate with Buyer in a reasonably and timely manner, in the execution of any necessary documentation required by the various governmental agencies, through the development and approval process, to assist Buyer in obtaining appropriate zoning, and to allow the development of the Property for multi-family residential uses as contemplated by Buyer. Provided, however, Seller is not obligated to expend any costs or expenses in the course of such cooperation.

(i)    <u>Attorneys' Fees</u>. If either party commences an action against the other to enforce any of the terms hereof or because of the breach by either party of any of the covenants, terms or conditions hereof, the losing or defaulting party will pay to the prevailing party reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution and defense of such action.

(j)    <u>Time Of Essence</u>. Time is of the essence of each party's performance of this Agreement.

(k)    <u>WAIVER OF TRIAL BY JURY</u>. BUYER AND SELLER EACH AGREE THAT THE NATURE OF THIS AGREEMENT MAKES A JURY DETERMINATION OF ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR THE PROPERTY UNDESIRABLE. ACCORDINGLY, BUYER AND SELLER EACH SPECIFICALLY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT EITHER OF THEM MAY HAVE IN ANY COURT WITH RESPECT TO ANY ACTION RELATING TO THIS AGREEMENT OR THE PROPERTY. THE FOREGOING WAIVER IS MADE KNOWINGLY, VOLUNTARILY AND INTENTIONALLY BY BOTH BUYER AND SELLER.

(l)    <u>CONSENT TO JURISDICTION OF BANKRUPTCY COURT</u>. THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED

11

TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in paragraph 15 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.  Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

**[SIGNATURES ON FOLLOWING PAGES]**

12

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement as of the Effective Date.

**SELLER:**

Signed, sealed and delivered
In the presence of:

**WINN-DIXIE STORES, INC.**, a Florida corporation as Owner Trustee of the Dixon Realty Trust 1999-1, a Utah trust



Name: SUSAN MAGADDINO

By: _____
Name: _____
Title: Senior Vice President

Name: REBECCA L. SAWYER

[Corporate Seal]

**BUYER:**

Signed, sealed and delivered
In the presence of:

**SOUTH FLORIDA INVESTMENT GROUP, LLC,**
a Florida limited liability company

Name: _____

By: _____
Name: _____
Title: _____

Name: _____

[Seal]

SCHEDULE OF EXHIBITS:

Exhibit A - Legal Description of Property
Exhibit B – Form of Deed with Deed Restriction
Exhibit C - Schedule of Permitted Encumbrances

Reviewed By

LEGAL APPROVED
ATTY: _____
DATE: 4/26/06

XRoads
Date: _____

13

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Agreement as of the Effective Date.

**SELLER:**

Signed, sealed and delivered
In the presence of:

**WINN-DIXIE STORES, INC.,** a Florida
corporation

Name: _____

By: _____
Name: _____
Title: Senior Vice President

Name: _____

[Corporate Seal]


**BUYER:**

Signed, sealed and delivered
In the presence of:

**SOUTH FLORIDA INVESTMENT GROUP, LLC,**
a Florida limited liability company

Name: _____

By: _____
Name: _____ HAOAD
Title: _____ LLCRVER

Name: _____

[Seal]


SCHEDULE OF EXHIBITS:

Exhibit A - Legal Description of Property
Exhibit B – Form of Deed with Deed Restriction
Exhibit C - Schedule of Permitted Encumbrances


13

04/27/2006  00:15   0000000000                                          PAGE  15/19

Mar 29 2006 10:05AM  SOUTH FLORIDA INV GROUP L  2059403099               p.15

04/25/2006  02:01   0000000000                                          PAGE  15/19

The undersigned, Escrow Agent, hereby consents and joins in the execution of this Real
Estate Purchase Agreement for the limited purposes stated herein.

**GABRIEL MARTIN, P.A.**

By:
Name: _Gabriel Garcia_ _Gabriel Martin,_
Title: _Closing Agent_ _Closing Agent_

Dated: April 25, 2006

Real Estate Purchase Agreement
Hollywood Tract - Florida
Winn-Dixie Stores, Inc. S/T South Florida Investment Group, LLC
April 24, 2006
#GR1AK\77159.3

## EXHIBIT A

LEGAL DESCRIPTION OF PROPERTY

PARCEL I =
Parcel A of Griffin – 441 Plaza according to the Plat thereof recorded in Plat Book 167, Page 20 of the Public Records of Broward County, Florida.

PARCEL II =
Parcel A of Marlene Plaza according to the Plat thereof recorded in Plat Book 155, Page 3 of the Public Records of Broward County, Florida.

## EXHIBIT B

FORM OF DEED WITH DEED RESTRICTION

## SPECIAL WARRANTY DEED

**THIS SPECIAL WARRANTY DEED**, is given this __ day of _____, 2006, by **WINN-DIXIE STORES, INC.**, a Florida corporation as Owner Trustee under the Dixon Realty Trust 1999-1, a Utah Trust, whose address is 5050 Edgewood Court, Jacksonville, Florida 32254 ("Grantor") to _____, a _____, whose mailing address is _____ ("Grantee").

## W I T N E S S E T H:

**THAT** Grantor, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, to it in hand paid by Grantee, the receipt and sufficiency of which is hereby acknowledged, has granted, bargained, sold and conveyed unto Grantee, its successors and assigns, forever, that parcel or parcels of land, situate, lying and being in the County of Broward, State of Florida, as more particularly described on Schedule A attached hereto ("Property"), together with all tenements, hereditaments and appurtenances belonging thereto.

**TO HAVE AND TO HOLD** the same unto Grantee in fee simple forever.

**SUBJECT, HOWEVER,** to the matters set forth on attached Schedule B (the "Permitted Encumbrances")

**AND FURTHER SUBJECT** to the following restrictions on the use of the Property:

For a period of 75 years following the date hereof, no portion of the Property will be used for the purposes of a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to the sale of foods and food products. Grantor, its successors or assigns, will be entitled to seek a temporary and permanent injunction enjoining and restraining any attempted or threatened breach of the foregoing restriction, in addition to any other remedies that Grantor, its successors or assigns, may possess.

**AND** Grantor does hereby fully warrant the title to the Property and will defend the same against the lawful claims of all persons claiming by, through or under Grantor, but against none other, subject to the Permitted Encumbrances.

**IN WITNESS WHEREOF**, Grantor has caused these presents to be executed in its name the day and year first above written.

Signed, sealed and delivered
in the presence of:

**GRANTOR:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation as Owner Trustee under the Dixon Realty Trust 1999-1, a Utah Trust

_____
Name:_____

By: _____
Print Name: _____
Its: Senior Vice President

_____
Name:_____

STATE OF FLORIDA
COUNTY OF DUVAL

This instrument was acknowledged before me this _____ day of _____, 2006, by _____, a Senior Vice President of Winn-Dixie Stores, Inc., a Florida corporation as Owner Trustee under the Dixon Realty Trust 1999-1, a Utah Trust, on behalf of the corporation. He either [___] is personally known to me or [___] has produced _____ as identification.

_____
Print Name:_____
Notary Public, State of Florida
Commission No.:_____
My Commission Expires:_____

[NOTARY SEAL]

# SCHEDULE A

### Legal Description

PARCEL I
Parcel A of Griffin – 441 Plaza according to the Plat thereof recorded in <u>Plat Book 167, Page 20</u> of the Public Records of Broward County, Florida.

PARCEL II
Parcel A of Marlene Plaza according to the Plat thereof recorded in <u>Plat Book 155, Page 3</u> of the Public Records of Broward County, Florida.

## **EXHIBIT C**

SCHEDULE OF PERMITTED ENCUMBRANCES

1. All assessments and taxes for the year 2006 and all subsequent years, which are not yet due and payable.

2. Restrictions (deleting therefrom any restrictions indicating any preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin), covenants, easement(s), setback(s), if any, as may be shown on the Plat recorded in Plat Book 155, Page 3, as affected by Agreement for Amendment of Notation on Plat. filed in Official Records Book 28918, Page 1515, of the Public Records of Broward County, Florida.

3. Restrictions (deleting therefrom any restrictions indicating any preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin), covenants, easement(s), setback(s), if any, as may be shown on the Plat recorded in Plat Book 167, Page 20, of the Public Records of Broward County, Florida.

4. Easement(s) for the purpose(s) as may be shown below and rights incidental thereto as set forth in a document:

   Purpose:  FP&L
   Recorded: December 20, 1984
   O.R. Book 12209, Page 24, of the Public Records of Broward County, Florida.

5. Easement(s) for the purpose(s) as may be shown below and rights incidental thereto as set forth in a document:

   Purpose:  FP&L
   Recorded: December 20, 1984
   O.R. Book 12209, Page 22, of the Public Records of Broward County, Florida.

6. Easement(s) for the purpose(s) as may be shown below and rights incidental thereto as set forth in a document:

   Purpose:  FP&L
   Recorded: March 15, 1985
   O.R. Book 12392, Page 910, of the Public Records of Broward County, Florida.

7. Agreement as recorded May 5, 1992 in Official Records Book 19448, Page 407 of the Public Records of Broward County, Florida.

8. Restriction as set forth in Warranty Deed as recorded February 13, 1956 in Official Records Book 562, Page 100 of the Public Records of Broward County, Florida.

9. Easement Agreement as recorded August 4, 1998 in Official Records Book 28676, Page 655 of the Public Records of Broward County, Florida.

10. Declaration of Restrictive Covenants as recorded August 4, 1998 in Official Records Book 28676, Page 668 of the Public Records of Broward County, Florida.

11. Reciprocal Easement for Ingress and Egress as recorded August 4, 1998 in Official Records Book 28676, Page 678 of the Public Records of Broward County, Florida.

**<u>EXHIBIT B</u>**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors. | ) | Jointly Administered |

**ORDER (A) AUTHORIZING THE DEBTORS TO SELL**
**HOLLYWOOD TRACT AND RELATED ASSETS FREE AND CLEAR OF**
**LIENS, CLAIMS AND INTERESTS (B) GRANTING RELATED RELIEF**

These cases came before the Court upon the motion of Winn-Dixie Stores,

Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-

possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a) and 363

and Fed. R. Bankr. P. 6004 (a) authorizing the Debtors to sell the Hollywood Tract and

related assets to South Florida Investment Group, LLC (the "Purchaser") or to the party

submitting a higher or otherwise better offer, free and clear of liens, claims, interests and

encumbrances and (b) granting related relief (the "Motion").[1]  A hearing on the Motion

was held by the Court on June 1, 2006 (the "Sale Hearing").  The Court has read the

Motion and has considered the representations of counsel.  After due deliberation and

good and sufficient cause existing, the Court makes the following findings of fact:

A.    This Court has jurisdiction over the Motion under 28 U.S.C.

§§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1]     All capitalized terms not otherwise defined by this Order shall have the meaning ascribed to them
in the Motion or the Purchase Agreement.

2

00512715

B.      The Debtors solicited the highest or otherwise best offer for the Assets described in the Purchase Agreement (the "Assets") in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 16, 2005 (the "Bidding Procedures").

C.      The Debtors have provided interested parties (including all parties asserting claims on interests of the Assets, if any) with proper notice of the Motion, the Auction, the Sale Hearing and the transactions contemplated by the Sale pursuant to 11 U.S.C. §§ 102(1), 105(a), 363 and Fed. R. Bankr. P. 2002 and 6004 and Local Rule 2002-1, the Bidding Procedures Order and the Notice Procedures Order.

D.      A reasonable opportunity to object or be heard with respect to the Motion and the sale of the Assets has been afforded to all parties in interest (including all third parties asserting Interests or Claims (as such terms are defined below) in, to or against the Assets, if any).

E.      The Debtors marketed the Assets and conducted the Sale process in compliance with the Bidding Procedures Order.  The bidding on the Assets and the Auction (if any) were conducted in a non-collusive, fair and good faith manor.  Through the Debtors' marketing efforts and Auction process, the Debtors afforded all interested parties a reasonable opportunity to make higher or betters offers to purchase the Assets.

F.      The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A and all related documents, and the sale of the Assets has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals,

3

other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

G.    The Debtors have good business reasons to sell the Assets prior to filing a plan or reorganization pursuant to 11 U.S.C. § 363(b).

H.    Neither Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

I.    The Purchase Agreement was proposed, negotiated and entered into by the Debtors and the Purchaser without collusion, in good faith and at arms'-length bargaining positions.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

J.    The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m).

K.    The consideration being provided by the Purchaser to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration for the Assets.

L.    The Debtors' transfer of the Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with good and valid title in and to the Assets free and clear of any lien, interest or encumbrance of any kind or nature (collectively, the "Interests") and claim (as such term is defined in 11 U.S.C. § 101(5)) ("Claims") with the exception of the Permitted Encumbrances, as defined in the Purchase Agreement.

4

00512715

M.     The Debtors may sell and transfer the Assets free and clear of all Interests and Claims (other than the Permitted Encumbrances) because any entity with any Interests or Claims, if any, in the Assets to be transferred (i) has consented to the sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  Holders of Interests and Claims, if any, who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

N.     The Debtors will cause the proceeds from the Sale to be paid in accordance with the terms of the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order"), and the Loan Documents (as defined in the Final Financing Order).

O.     The Court's approval of the Purchase Agreement and the sale of the Assets to the Purchaser, is in the best interests of the Debtors, their estates, their creditors and other parties in interest.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted.

5

00512715

2.      Any objections to the entry of this Order or to the relief granted and requested in the Motion that have not been withdrawn, waived or settled are denied and overruled on the merits.

3.      The terms and conditions of the Purchase Agreement are approved. Pursuant to 11 U.S.C. §§ 105(a), 363(b) and this Order, the Debtors are authorized to consummate the Sale in accordance with the terms and conditions of the Purchase Agreement.

4.      The Debtors are authorized to consummate and implement fully the Purchase Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement, and the Debtors are authorized to take all further actions as may reasonably be necessary or appropriate for the purpose of conveying the Assets to the Purchaser, or as may be necessary or appropriate to the performance of the Debtors' obligations under the Purchase Agreement.

5.      Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties without further order of the Court; provided, however, that, (a) the Debtors will first obtain the prior written consent of (i) the DIP Lender, and (ii) the Creditors' Committee, which consent will not be unreasonably withheld and (b) any such modification, amendment or supplement does not have a materially adverse effect on the Debtors' estates.

6.      The Debtors will transfer the Assets to the Purchaser upon Closing free and clear of all Interests and Claims (except for the Permitted Encumbrances).   The only Claims and/or Interests in the Assets are those with the DIP Lender.   The senior

6

00512715

liens and superpriority administrative Claims and/or Interests of the DIP Lender will attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

7. The Debtors' transfer of the Assets to the Purchaser is a legal, valid, and effective transfer of the Assets and will vest the Purchaser with all right, title and interest of the Debtors in and to the Assets, free and clear of all Interests and Claims (except for the Permitted Encumbrances).

8. The Debtors will cause the net proceeds from the sale to be paid to the DIP Lender to the extent required in accordance with the terms of the Final Financing Order and the Loan Documents.

9. The consideration provided by the Purchaser for the Assets constitutes reasonably equivalent value and fair and reasonable consideration under the Bankruptcy Code and applicable non-bankruptcy law, and may not be avoided under 11 U.S.C. § 363(n).

10. Upon Closing of the Sale in accordance with the Purchase Agreement and this Order, the Purchaser is deemed to have acted in good faith in purchasing the Assets, as that term is used in 11 U.S.C § 363(m). Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Assets will not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

11. All entities that are presently in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors. Each of the Debtors' creditors is authorized and directed to execute any and all documents and take

00512715

all other actions as may be necessary to release its Interests in and Claims against the Assets (except for the Permitted Encumbrances) (provided that the taking of such actions shall not require such creditor to incur any material costs) as such Interests and Claims may have been recorded or may otherwise exist.  In the event any creditor fails to release its Interests in or Claims against the Assets, the Debtors are authorized to file or record a copy of this Order.  Once filed, registered or otherwise recorded, this Order will constitute conclusive evidence of the release of all Interests in and Claims against the Assets (except for the Permitted encumbrances).

12.    The Debtors' transfer of the Assets to the Purchaser will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

13.    Other than the Permitted Encumbrances, the Assumed Liabilities and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets.  The Debtors' transfer of the Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state or territory.

8

00512715

14.     This Order is and shall be effective as a determination that any and all Interests or Claims are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

15.     Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in the Assets to the Purchaser.  Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

16.     This Order is binding in all respects upon, and inures to the benefit of, the Debtors, their estates and creditors, the Purchaser and its respective affiliates, successors and assigns, and this Order is binding in all respects upon all persons asserting an Interest in or Claim against the Debtors' estates or the Assets.  The sale is enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any chapter 7 or chapter 11 trustee of the Debtors and their estates.

17.     During the pendency of the Debtors' jointly administered cases, this Court will retain exclusive jurisdiction (a) to enforce and implement the Purchase Agreement and any agreements and instruments executed in connection with the Purchase Agreement, (b) to compel delivery of possession of the Assets to the Purchaser, (c) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement and (d) to interpret, implement, and enforce the provisions of this Order.

00512715

18.     All persons and entities that hold Interests in or Claims against the Debtors or the Assets are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale of the Assets.

19.     Nothing contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or any order of this Court confirming such a plan, or any other order entered in these chapter 11 cases or in any subsequent chapter 7 cases will conflict with or derogate from the terms of this Order.

20.     The failure specifically to include any particular provision of the Purchase Agreement in this Order will not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

21.     After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Interests or Claims or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

10

00512715

22.     To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the this Order will control.

23.     Notwithstanding Fed. R. Bankr. P. 6004(g), this Order will take effect immediately upon entry.

Dated this ____ day of June, 2006 in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed
to serve a copy of this Order
on all persons served with
the Motion.

11

00512715