1   issue for all the constituencies.
2       The reason for this request is to provide us
3   one last opportunity to try to reach that
4   compromise before the debtors proceed
5   unilaterally.  There are no objections to the
6   motion.
7       THE COURT:  Anybody else want to comment, or
8   are there objections?
9       If you'll come forward and stand behind the
10  lectern and state your name.
11      MS. DUBAN:  Thank you, Your Honor.  I'm
12  Janice Duban of DLA Piper Rudnick Gray Cary.  I
13  represent the ad hoc trade committee, Your Honor,
14  which has recently been reformed and
15  reconstituted over the substantive consolidation
16  issue.
17      I appear before Your Honor pursuant to a
18  prior order granting me leave to appear in these
19  cases pro hac vice, Your Honor.
20      My clients as of yesterday, Your Honor,
21  totaled 14, and their aggregate unsecured claims
22  in these cases exceeded $50 million.
23      They strongly support the substantive
24  consolidation issue in this case.  They think
25  these cases should be substantively

1   consolidated.
2   But, Your Honor, they applaud the debtors
3   filing this motion.  They applaud the debtors'
4   wisdom in recognizing that, if consensus is not
5   reached, there could be a very substantial delay
6   and possible impairment to the successful
7   emergence of Winn-Dixie from bankruptcy.
8   Our clients, as much as they support the
9   substantive consolidation issue, they also hope
10  and support a strong Winn-Dixie emergence from
11  bankruptcy with strong prospects for the future.
12  So they fully support this motion, and would
13  like to work with the other creditor
14  constituencies to reach a consensual resolution,
15  if possible, on this issue.
16  THE COURT:  Thank you.
17  MR. RICH:  Good afternoon, Your Honor.  I'm
18  Brian Rich from Berger Singerman.  I'm cocounsel
19  to Wilmington Trust Company.
20  Your Honor, present with me is with Theresa
21  Foudy.  We have filed pro hac papers for her
22  appearance before Your Honor.  We would request
23  that she be permitted to speak today.
24  THE COURT:  That's fine.
25  MR. RICH:  Thank you, Judge.

1       MS. FOUDY: Thank you, Your Honor. Theresa
2  Foody of Curtis, Mallet-Prevost, Colt & Mosley.
3  We represent the Wilmington Trust Company, which
4  is the indentured trustee for Winn-Dixie's
5  publicly held bonds.
6       The bondholders in this case have a claim
7  against the estate for approximately $310
8  million.
9       We filed a joinder to the debtors' motion
10 for an extension of the exclusivity period and we
11 do support the motion.
12      The substantive consolidation issue is a
13 very significant one in this case and could lead,
14 as the debtors' counsel pointed out, to
15 protracted litigation if a consensual resolution
16 is not worked out.
17      Therefore, we feel it is very important that
18 this extension be granted so that the parties can
19 continue to work towards a consensual resolution,
20 and that the extension be without prejudice in
21 case a further extension should be needed down
22 the line.
23      Thank you, Your Honor.
24      THE COURT: Thank you.
25      Yes.

1  MR. COMERFORD: Afternoon, Your Honor.
2  Michael Comerford with Milbank, Tweed, Hadley &
3  McCloy on behalf of the official committee of
4  unsecured creditors.
5  The committee filed a statement in support
6  of the debtors' motion to extend exclusivity, and
7  we do believe that that statement speaks for
8  itself. However, we are here today to state that
9  we do believe that additional time is necessary
10  in order to try to reach a consensual resolution
11  of the substantive consolidation issue.
12  The committee continues to work towards
13  that, and we hope that, if a consensual
14  resolution can be reached, then that will allow a
15  consensual plan to be prepared and drafted and
16  filed as well.
17  THE COURT: Thank you.
18  Anybody else?
19  (No response.)
20  THE COURT: Do you think, Mr. Busey, that --
21  do you want to say something, sir?
22  MR. BUTLER: Yes, sir.
23  THE COURT: If you'll come forward. I'm
24  sorry. State your name.
25  MR. BUTLER: My name is Rodney Butler. I

1   was injured at Winn-Dixie two years ago, and I
2   was coming to see if you had a resolution for my
3   case.
4           THE COURT:  Did you file a claim?
5           MR. BUTLER:  Yes, sir.
6           THE COURT:  That will be dealt with.  It's
7   not on the calendar for today, but I assume that
8   eventually that has to be dealt with when the
9   claim is filed, and there's a procedure set forth
10  -- I don't know if you're involved in it or not
11  -- to try to resolve those.
12          MR. BUTLER:  Thank you.
13          THE COURT:  You're welcome.  Good luck to
14  you.
15          Mr. Busey, any chance of a mediator getting
16  in to resolve this?  I know you've got a lot of
17  great people working together.  Do you think a
18  disinterested mediator could help bring this --
19  or have you discussed that, or has that even been
20  considered?
21          I know it's complex, and it's hard for one
22  person to grasp all that.
23          MR. BUSEY:  Well, the real problem is that
24  there are so many different interested parties,
25  constituencies, so it would be difficult to have

1    a formal organized mediation, certainly, that
2    could bind anybody.
3        And, no, we have not considered it or
4    discussed it with the creditors committee or the
5    two other groups that we're dealing with, but I
6    think it's a good suggestion.
7        And what the debtors will do is take the
8    Court's suggestion and talk to those
9    constituencies and see if we can device a process
10   during this time period.
11       Just to give the Court an idea of the time,
12   one of the things that the debtor is doing for
13   the constituencies is revising and updating its
14   five-year business plan.
15       Originally this business plan was provided
16   to the constituencies last fall, but now we've
17   got another six months under our belt or so, and
18   we wanted to revise the business plan and update
19   the financial forecast, because the updated
20   financial forecast will be material to valuation
21   of the enterprise, and thus it will be material
22   to the determination of the returns to the
23   unsecured creditors of the value of what they are
24   to receive.
25       We have agreed with the creditors committee

1   that we're going to provide them that updated
2   financial forecast by early May.  We intend to
3   let the creditor constituencies talk among
4   themselves during the course of May, and our
5   objective is to reach an agreement during early
6   June which can be documented in order to file a
7   plan by late June.  So that's roughly our
8   timing.
9       For the next several weeks, while we are
10  completing that plan and giving the creditors an
11  opportunity to consider it, talk among
12  themselves, we will discuss with them the Court's
13  suggestion about mediation and whether or not we
14  can devise a process and put it in place during
15  that period by agreement among the parties.
16      THE COURT:  Yes.
17      MR. COMERFORD:  Thank you.  Again, Michael
18  Comerford for the official committee.
19      Just to reiterate, the committee is leading
20  the charge here and we do believe that we are
21  advancing the ball, and that this additional time
22  would provide what we hope will be sufficient
23  time to reach a resolution on this issue.
24      And, additionally, we are waiting for that
25  revised business plan, as Mr. Busey has

1   mentioned, but we do believe that this is a
2   process that is starting to move in the right
3   direction.
4       THE COURT: Thank you.
5       Obviously, the faster any business can come
6   out of Chapter 11, the better it is for the
7   business, and we like to try to move these cases
8   forward.
9       On the other hand, there's nothing I enjoy
10  more than protracted litigation. I'm really
11  anxious to get my teeth into something like
12  that.
13      (Laughter.)
14      THE COURT: But before I would do that, I
15  would probably order some kind of mediation. So
16  it might be something to at least have in mind if
17  it doesn't look like you're going to get
18  somewhere.
19      That being said, the Court will grant the
20  motion.
21      Do you have an order, Mr. Busey?
22      MR. BUSEY: Yes, sir.
23      THE COURT: The order is signed, and this
24  matter is concluded.
25      Next item is the fifth omnibus objection to

```
 1      worker's compensation claims.
 2              MR. BUSEY:  Mr. Post will address that
 3      matter, Your Honor.
 4              MR. POST:  Thank you, Your Honor.
 5              Your Honor, this Court previously entered an
 6      order on the fifth omnibus objection sustaining
 7      the debtors' objection as to the misclassified
 8      claims.  It was part (b) of those objections.
 9              The hearing of the debtors' objections to
10      the worker comp claims, which was part (a) of
11      those objections, was continued today at the
12      request of the worker's compensation insurer,
13      Liberty Mutual.
14              With the Court's permission, the debtors and
15      Liberty Mutual have agreed to continue the
16      hearing on these objections as to the worker's
17      compensation claims to June 15th, 2006.
18              I have a proposed order, if the Court would
19      care to look at it.
20              THE COURT:  You can pass it up.
21              Sir, do you have an interest in this
22      matter?
23              MR. KRAUSE:  Yes, Your Honor.  Good
24      afternoon, Your Honor.  Jim Krause with Regan,
25      Zebouni & Walker, for Liberty Mutual and Ohio
```

1       Mutual Casualty.
2           I'm here for the sole purpose of clarifying
3       for the record that we've also moved the
4       objection deadline to June 8th, 2006.
5           MR. POST: Your Honor, that is in the
6       proposed order.
7           THE COURT: Very well. Pass up the order.
8           The order is signed, and this matter is
9       concluded.
10          Next item is motion for leave to allow late
11      filing of proof of claim by Maxine Simmons.
12          MR. POST: Your Honor, the debtors and Ms.
13      Simmons have agreed to continue the hearing on
14      this motion until further notice by either
15      party. And we do not believe another order would
16      be necessary on that, Your Honor.
17          THE COURT: Very well. Anybody have any
18      comment?
19          There being none, this matter is continued
20      until further notice.
21          Mr. Readdick, you'll just make that notation
22      on the docket. Thank you very much. This matter
23      is concluded.
24          Next item is a motion to modify claims
25      resolution procedure to increase the aggregate

1 amount of cash payments the debtors can make to
2 settle de minimis litigation claims and require
3 mediation as a prerequisite to stay relief for
4 liquidation of litigation claims, and the motion
5 is filed by the debtor.
6 　　　MR. POST: Thank you, Your Honor.
7 　　　By this motion the debtors seek
8 authorization, as the title says, to modify the
9 claims resolution procedure in two respects:
10 First to increase the present cap by the amount
11 of cash available to settle litigation claims for
12 de minimis payments, and, two, to require
13 mediation of litigation claims as a prerequisite
14 for stay relief for litigation claimants.
15 　　　As to the increase in the present cap of
16 settlement of litigation claims for de minimis
17 payments, the present cap is $1.5 million. We
18 have requested authority for another million
19 dollars.
20 　　　At this point in time, we've utilized a
21 little bit more than a million dollars of that
22 fund.
23 　　　No objections were filed to this request for
24 relief.
25 　　　The payment of de minimis cash amounts to

1  settle litigation claims has been an important
2  component of the success to date we've had in the
3  claims resolution procedure.
4      A Winn-Dixie management team, which includes
5  the team of adjustors provided by Sedgwick &
6  Company, have settled over 1,010 of the 2500
7  litigation claims since this process began last
8  September.
9      The aggregate amount of the settled claims
10 exceed a million dollars on their face, and the
11 negotiated settlements were made for
12 approximately $11 million, or 11 percent of the
13 aggregate claims amount.
14     Of that $11 million of settled claims,
15 approximately ten of that were in the form of
16 allowed unsecured claims, and only a million or
17 so of that was in the form of cash through the de
18 minimis settlements.
19     Legal fees alone which the company has saved
20 in litigation of these 1,010 claims, both in
21 state court and in the Chapter 11 process, is in
22 itself perhaps in the millions.
23     There are still, however, another
24 approximately 1400 litigation claims which need
25 to be liquidated by settlement or litigation.

```
 1         The company estimates that it can resolve up
 2    to another perhaps 300 of these claims on a de
 3    minimis basis if the cap on the use of the funds
 4    is increased as requested.
 5         And with respect to the mediations, the
 6    company also believes that significant additional
 7    benefits, including cost savings, can be obtained
 8    from the Chapter 11 estate if this Court modifies
 9    the claims resolution procedure to make the
10    existing mediation procedures a prerequisite for
11    stay relief for each litigation claimant.
12         Presently the company has only 76 of the
13    remaining 1400 litigation claimants agreed to
14    mediation at this point.  Only a few of those
15    remaining litigation claimants have actually
16    sought stay relief.  The vast majority of these
17    claimants are sitting on the fence, so to speak.
18         We have a panel of three experienced
19    mediators who have been assembled under the
20    claims resolution procedure and are willing and
21    able to devote a majority of their time in the
22    second half of this year and early next year if
23    necessary to mediate these claims.
24         The three mediators are attorneys Terry
25    Schmidt, William Cooper and Isaac Levy.
```