1    Winn-Dixie.  They were always told, they were

2    promised:  If you take care of Winn Dixie,

3    Winn-Dixie will take care of you.  And they want

4    to know if Winn-Dixie is going to live up to that

5    promise.

6         Your Honor, we feel this motion is necessary

7    because we have concerns that the Milbank

8    investigation is not thorough with regard to the

9    issues we're concerned with, with the MSP plan.

10        I have talked with the representatives of

11   Milbank today and spoke with them yesterday, and

12   they're willing to work with us to make sure that

13   there's no duplication of effort in this matter.

14   But we feel that the fact that no retirees have

15   been contacted in this investigation prove that

16   point.

17        For example, one of the members of the ad

18   hoc committee of Winn-Dixie retirees, Terry

19   Quals, was a former director of accounting for

20   Winn-Dixie, yet he's not contacted by an

21   investigator regarding the allegations.

22        So we feel a 2004 Exam would allow us to

23   make sure that our issues are addressed.

24        Your Honor, with regard to the debtors'

25   arguments and their objection to our motion,

40

1       first of all, if you ask any debtor in any

2       bankruptcy case, whether it be a Chapter 7, a

3       Chapter 13, or a complex Chapter 11 like we're in

4       here today, they all think that any investigation

5       is overly burdensome.

6           Dealing with my Chapter 13 clients, they are

7       always complaining that the trustee's business

8       questionnaire is overly taxing and they shouldn't

9       have to fill that out.

10          Dealing with Chapter 7 clients, they're

11      always complaining that they have to turn over 12

12      months worth of bank statements.

13          The debtor always says that the

14      investigation is overly burdensome, but we firmly

15      believe that we have an idea in mind what we're

16      looking for, and there are some questions that

17      just need to be answered, Your Honor.

18          Secondly, we don't have the ability to

19      overtax the debtor.  We just don't have the

20      resources.  I'm handling this case on my own.

21      I'm in a small law firm, and I don't have the

22      resources that Milbank Tweed and these other law

23      firms have.  It's impossible for me to overtax

24      the debtor with my investigation.

25          In addition, once again, we're not seeking

41

1    to overly duplicate or duplicate anything that

2    the creditors committee has done, but what we are

3    seeking is to get some answers that they

4    deserve.

5        And, Your Honor, if they bring up dollars

6    and cents, the bottom line is we've seen

7    thousands of dollars spent and we've seen

8    thousands of dollars wasted in this case.

9        If you look at the equity committee, for

10    example, the debtor spent thousands of dollars

11    fighting for an equity committee and they spent

12    thousands of dollars fighting to disband the

13    equity committee.  And for them to come in and

14    say that our investigation will be overly costly

15    and burdensome is disingenuous.

16        Your Honor, the bottom line today is that my

17    clients were willing to invest their future in

18    Winn-Dixie because of the promises made, and what

19    they sought fell to an older generation.

20        They're just seeking to know what happened

21    and where their investment stands.

22        These men gave a lot to Winn-Dixie, and the

23    bottom line is that, once they have the answers,

24    it may not make them feel any better, but at

25    least they'll know they did everything they could

42

1    to see that the men and women who invested in the

2    MSP plan along with them got the maximum benefit

3    they could given the circumstances.  That's why

4    we feel this investigation is important.

5          THE COURT:  Thank you.

6          Mr. Busey.

7          MR. BUSEY:  Thank you, Your Honor.

8          First let me say that the debtors are very

9    mindful of their obligations to these

10    participants and are very respectful of them

11    because of the years of service that these

12    participants have given to the company.

13          In fact, the company is so mindful and so

14    respectful that when the company first filed this

15    case in New York, among the first-day orders that

16    the company sought from the Southern District of

17    New York was an order which permitted the debtors

18    to continue to make payments from these non-

19    qualified plans to the participants of the plan

20    during the course of the proceedings.

21          As a matter of law, ordinarily those

22    payments which are simply unsecured obligations

23    of the company in a nonqualified plan are

24    prepetition obligations and could not be paid

25    postpetition, but the debtors specifically sought

43

1    that relief and obtained it with the consent of

2    the creditors committee, and those payments have

3    been continued to be made during the course of

4    these proceedings.

5         The participants are at risk because there

6    is an issue of whether or not the MSP plan will

7    be assumed as a part of the confirmation of the

8    plan of reorganization or whether it will be

9    rejected.

10        If the plan is assumed, all the benefits

11   under the plan will be honored and paid in full

12   by reason of the order of confirmation.

13        If the plan is rejected, the participants of

14   the plan will become unsecured creditors for the

15   remaining obligations payable under the plan and

16   will participate as unsecured creditors in the

17   debtors' plan of reorganization and whatever

18   unsecured creditors are receiving.

19        That decision hasn't yet been made, and

20   therefore at this point Mr. McConnell represents

21   what are essentially contingent unsecured

22   creditors.

23        I give you that background because it's

24   material and it also lets the Court know that

25   we're very mindful of these people and are

44

1    concerned about them.

2         But also the debtors are good stewards of

3    this estate.  The debtors were proactive in

4    asking and assisting the committee in conducting

5    this investigation, which is our Exhibit 1,

6    because we thought these matters should be here.

7         But, like all things in this case, it's

8    expensive.  Milbank Tweed has had several lawyers

9    for a long time in New York having dozens of

10   interviews of former and existing employees of

11   the case, and we produced thousands of

12   documents.

13        My estimate, although I haven't quantified

14   it, is that investigation to date has cost the

15   estate hundreds of thousands of dollars.  And

16   these inquiries and these motions for a 2004 are

17   taken from that inquiry.

18        And talk about the burden, Mr. McConnell

19   says he doesn't want to burden the estate, but if

20   you would look at his motion, on Page 3,

21   Paragraph K, and just see that one paragraph --

22   this is a several-page motion -- that one

23   paragraph asks for all correspondence, memoranda,

24   billing records, studies, analysis, and other

25   records or communications by or among anybody on

1    behalf of the debtors or any of its professionals

2    with any of its advisors or other professionals

3    or the committee for a five-year period of time

4    regarding a page-long list of subject matters.

5         It would take some number of people full

6    time to respond to that one paragraph, and it's

7    wholly duplicative of what has already been given

8    to Milbank Tweed.  And there's simply no reason

9    at this point to replicate it.  It'd be a

10   complete replication of that effort for the

11   debtors to produce what is being asked for by

12   this pleading that has been filed by Mr.

13   McConnell.

14        You will see that are three general areas of

15   inquiry of the proposed 2004 Exam 4.

16        One on Page 2 is "Dividends Paid and Other

17   Transfers to Shareholders of the Debtor," and you

18   will see that that heading is on the top of Page

19   2 of the motion.

20        If you look at the letter, which is Exhibit

21   1, you will see that that is the subject matter

22   of Paragraph 2 of the letter, "The issuance of

23   dividends to Winn-Dixie shareholders from 2000 to

24   2004 despite its declining financial condition."

25        It's the same inquiry.  You'll see all the

46

1    things he asks for on Pages 2, 3 and 4 regarding

2    that topic are within that subject matter, and

3    it's all stuff that we have provided to Milbank.

4        You'll see on Page 4 of his motion that the

5    second subject matter is the MSP retirement plan,

6    and they ask for three paragraphs of

7    information.  Those three paragraphs are not the

8    subject of the letter, are not mentioned in the

9    letter.  The MSP is not specifically mentioned in

10   the letter.

11       And you'll see the third subject matter of

12   the motion, again on Page 4, is "Surrenders of

13   life insurance policy owned by the debtors."  And

14   if you look at Paragraph 4 of Exhibit 1, you'll

15   see that company-owned life insurance policies is

16   the subject of inquiry.

17       So it would be wholly replicative of the

18   issue of the dividends and the issue regarding

19   company-owned life insurance policies.

20       The debtors are aware of the interest of Mr.

21   McConnell's clients in the MSP, and what the

22   debtors are willing to do -- and we've offered

23   this before we came to court today -- is to

24   provide the information sought by this motion in

25   Paragraphs M, N and O on Page 4, which is all

47

1    three paragraphs relating to the MSP, and we will

2    provide that information to Mr. McConnell's

3    clients because that is not the subject of this

4    letter.  We're willing to permit that inquiry as

5    specified in those three paragraphs regarding the

6    MSP.

7         Beyond that, this letter is wholly

8    duplicative of the investigation being conducted

9    by Milbank.

10        And Mr. McConnell mentioned there is a

11   possibility that Milbank's report will be filed

12   under seal.  There is a possibility of that, but

13   we don't anticipate that happening.  If that were

14   to happen for any reason, we could reconsider it

15   at that time.

16        The last page of Exhibit 1 says, "The

17   committee will file such report with the

18   Bankruptcy Court and serve it on the debtors and

19   the Office of the United States Trustee.  The

20   committee, however, reserves the right to seek to

21   file the report under seal should it deem it

22   appropriate."

23        And so the anticipation is that it will be

24   filed, and only if the committee thinks it's

25   appropriate to file it under seal, it will seek

48

1    Court approval to file it under seal.  But we

2    shouldn't anticipate that's going to happen, but

3    if it does happen, we can deal with it at the

4    time.

5        For that reason, Your Honor, what we ask the

6    Court to do is deny this motion with the

7    exception of permitting us to respond to the

8    inquiries regarding the MSP as specified on Page

9    4 of the motion in Paragraphs M, N and O.

10       THE COURT:  Anything else, Mr. McConnell?

11       MR. MCCONNELL:  Your Honor, just a brief

12   rebuttal.  For Mr. Busey to say that --

13       MR. BUSEY:  Oh, Your Honor, excuse me.  One

14   other thing I wanted to say before Mr. McConnell

15   replies.

16       Mr. McConnell had stated a number of facts

17   in his argument which were not the subject of

18   evidence, and particularly regarding the tie

19   between the MSP and the company-owned life

20   insurance policies.  He said they were tied, in

21   fact they were secured.

22       We simply disagree with that statement of

23   facts, and we ask the Court not to consider as

24   part of your ruling any of the factual matters

25   asserted by Mr. McConnell during his argument.