UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 05-03817-F1 |
| | ) | |
| WINN-DIXIE STORES, INC., ET AL., | ) | CHAPTER 11 |
| | ) | (JOINTLY ADMINISTERED) |
| DEBTORS. | ) | |
| | ) | |

SUPPLEMENTAL OBJECTION OF GATOR JACARANDA, LTD. AND GATOR
CARRIAGE PARTNERS, LTD. TO DEBTORS' MOTION FOR ORDER (A)
AUTHORIZING THE SALE OF ADDITIONAL STORES AND RELATED
EQUIPMENT FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (B)
AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OR ALTERNATIVELY,
THE REJECTION OF LEASES AND ESTABLISHING A CLAIMS BAR DATE AND (C)
GRANTING RELATED RELIEF

Gator Jacaranda, Ltd. ("Jacaranda") and Gator Carriage Partners, Ltd. ("Carriage" and together with Jacaranda, "Gator"), by their undersigned counsel, submit this Supplemental Objection to the Debtors' Motion for Order (A) Authorizing the Sale of Additional Stores and Related Equipment Free and Clear of Liens, Claims and Interests, (B) Authorizing the Assumption and Assignment or Alternatively, the Rejection of Leases and Establishing a Claims Bar Date and (C) Granting Related Relief (the "Sale Motion") as to two unexpired leases of non-residential real property under which the Debtors are the tenants. In support of this Supplemental Objection, Gator respectfully states:

I.    **Introduction**

1.    As set forth in detail below, the Debtors have failed to provide Gator with adequate assurance of future performance as required by section 365 of the Bankruptcy Code. The Debtors failure includes:

(a)     the Debtors have not provided any information on the proposed assignees, other than their names.

(b)     The Debtors fail to make clear whether the principal(s) of the proposed assignees will provide a guaranty of lease obligations.

(c)     The Debtors have failed to provide audited financial statements or an opinion from a certified public accountant which demonstrate a net worth of the proposed assignees and any guarantor sufficient to satisfy all lease obligations as they come due.

(d)     The Debtors have failed to provide detailed information on the other financial obligations of the proposed assignees and any guarantor, including whether any guarantor has also guaranteed other leases.

(e)     The Debtors have failed to provide detailed information which demonstrates that the proposed assignees' financial condition and operating performance are similar to that of the Debtors at the time of the signing of the leases. Winn-Dixie Stores, Inc. is the tenant under the two Gator leases.

(f)     The Debtors have failed to indicate whether the proposed assignees will provide a substantial security deposit or other form of security.

(g)     The Debtors have failed to provide sufficient evidence of the proposed assignees ability to (i) pay the purchase price for the leases, (ii) invest sufficient capital to allow the stores to open for business fully stocked in first class condition, (iii) operate the stores in the manner required by the leases, and (iv) satisfy all obligations under the leases as they come due.

2.      Based on the serious and substantial deficiencies in the purported adequate assurance information provided by the Debtors, Gator objects to the assignment of its leases to the proposed assignees. In addition, regardless of the financial and other information which may be provided by the Debtors, the proposed assignees, which are involved with only three grocery stores, all of which are in New York, simply can not satisfy the requirements of section 365 of the Bankruptcy Code, which requires, among other things, that the proposed assignees' financial condition and operating performance be similar to that of Winn-Dixie Stores, Inc. at the time Winn-Dixie Stores, Inc. signed the leases with Gator. A three store mom and pop operation located solely in New York is clearly not similar to the Debtors portfolio of over 900 stores throughout the

2

Southeast. Section 365 of the Bankruptcy Code does not permit the Debtors to assign leases of the eighth-largest food retailer to an unknown three store grocer without the landlord's consent. Because the Debtor can not provide adequate assurance of future performance, this Court should deny the Sale Motion with respect to the assignment of Gator's leases to the proposed assignees.

## II.    Background

3.      On February 21, 2005 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United Sates Code (the "Bankruptcy Code").

4.      Jacaranda is the owner of the shopping center known as Jacaranda Square (Store No. 211) located in Plantation, Florida and Carriage is the owner of the shopping center known as Carriage Hills Plaza (Store No. 339) located in Davie, Florida  (collectively, the "Leased Premises") in which the Debtors lease retail space from Gator pursuant to written leases (the "Leases").

5.      On April 11, 2006, the Debtors filed the Sale Motion seeking, among other things, authorization from this Court to assume and assign the Leases to an unknown bidder(s) or such higher bidder at an auction to be held by the Debtors.  On April 25, 2006, Gator filed its Objection to the Debtors' Motion for Order (A) Authorizing the Sale of Additional Stores and Related Equipment Free and Clear of Liens, Claims and Interests, (B) Authorizing the Assumption and Assignment or Alternatively, the Rejection of Leases and Establishing a Claims Bar Date and (C) Granting Related Relief (the "Objection").

6.      The Debtors conducted an auction of the Leases on May 9, 2006 (the "Auction"). At the conclusion of the Auction, the Debtors selected Sunrise Properties, Inc. ("Sunrise") as the successful bidder for the Leases. By letter dated May 10, 2006, the Debtors advised that although Sunrise was the successful bidder for the Leases, the entities which would operate the stores under

the Gator Leases were Summit Holdings, LLC ("Summit")(in the case of Store No. 211) and Legacy Group, LLC ("Legacy")(in the case of Store No. 339).

7.     Also on May 10, 2006, the Debtors provided Gator with financial declarations of Mr. Esmail Mobarak purporting to demonstrate adequate assurance of future performance.  But the information provided by the Debtors is wholly inadequate and does not provide Gator with adequate assurance of future performance as mandated by section 365 of the Bankruptcy Code.  Attached hereto as Exhibit A is the Debtors letter dated May 10, 2006 and its enclosures, which include, among other things, the Declaration of Esmail Mobarak with respect to Summit and the Declaration of Esmail Mobarak with respect to Legacy (collectively, the "Mobarak Declarations").  Attached to the Mobarak Declarations as Exhibit A are (i) a letter dated May 2, 2006 from Peter Lavoy, as President and COO of Foodtown, Inc. stating that Mr. Mobarak is a member of a cooperative of independent Foodtown Store operators and that Mr. Mobarak owns three stores in New York; and (ii) a letter and unaudited balance sheet prepared by Interactive Business Services for Mr. Mobarak. These purported adequate assurance materials fall well short of satisfying the requirements of section 365 of the Bankruptcy Code.

**III. Law and Argument**

8.     Adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance: (A) of the source of rent and other consideration due under the Lease, and that the financial condition and operating performance of the proposed assignee and any guarantor shall be similar to the financial condition and operating performance of the Debtors and any guarantor of the Debtors at the time the Debtors entered into the Lease with the Gator; (B) that any percentage rent due under the Lease will not decline substantially; (C) that assumption and assignment of the Lease is subject to all provisions of the Lease, including but not limited to radius,

4

location, use or exclusivity provisions, and will not breach any such provision contained in another lease; and (D) that assumption or assignment of the Lease will not disrupt any tenant mix in the Leased Premises. See 11 U.S.C. § 365(b)(3).

9.    The purported adequate assurance information provided by the Debtors is deficient for a host of reasons. First, the Debtors provided no information (financial, corporate structure, or otherwise) regarding Summit or Legacy even though they are the proposed tenants under the Leases. This complete lack of disclosure leads Gator to the conclusion that Summit and Legacy are newly formed shell companies, with no assets, operating history or ability to satisfy the obligations under the Leases. Thus, Summit and Legacy clearly can not satisfy the adequate assurance requirements of section 365 of the Bankruptcy Code.

10.    Second, the purported adequate assurance documents fail to make clear whether Mr. Mobarak will provide a personal guaranty of the tenant's obligations under the Leases. If Mr. Mobarak will provide a personal guaranty, at a minimum section 365 of the Bankruptcy Code requires audited financial statements or an opinion from a certified public accountant which demonstrate a net worth for Mr. Mobarak sufficient to satisfy all lease obligations (monetary and non-monetary) as they arise under the Leases. The unaudited balance sheet provided by the Debtors is wholly insufficient and should not be relied on by this Court as evidence of adequate assurance of future performance. In fact, in the cover letter from Mr. Mobarak's accountant, the accountant expressly states that "[t]his Financial Statement is prepared primarily for your financial guidance, and as such, our examination did not include confirmation of Assets and Liabilities. Accordingly, we do no express an opinion on the accompanying statement." (emphasis added). This documentation clearly does not provide Gator with adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

11.    In addition, Mr. Mobarak must also provide information detailing his other financial obligations, including whether he is a guarantor under his three New York leases and whether he will personally guarantee all four stores he intends to purchase from the Debtors. Gator has significant concerns about Mr. Mobarak's ability to successfully open and operate four additional grocery stores given the fact that the assignment of these four stores to Mr. Mobarak will more than double the number of grocery stores operated by Mr. Mobarak and will place Mr. Mobarak in a completely new market thousands of miles from his current grocery stores. Gator has serious concerns with Mr. Mobarak's ability to be successful in such a broad expansion. Any failure by Mr. Mobarak to be fully successful at this new endeavor will likely result in direct harm to Gator and the other tenants at its shopping centers.

12.    Third, the Debtors failed to provide any information which would permit Gator to determine whether the proposed assignee's financial condition and operating performance are similar to that of the Debtors at the time of the signing of the Leases as required by section 365 of the Bankruptcy Code. In re Service Merchandise Company, Inc., 297 B.R. 675, 682 (Bankr. M.D. Tenn. 2002)(aff'd Ramco-Gershenson Properties, L.P. v. Service Merchandise Company, Inc., 293 B.R. 169 (M.D. Tenn. 2003)(to satisfy debtor's burden under section 365, "debtor must establish that the financial condition and operating performance of [the assignee] are similar to the debtors' at the time of lease signing."); In re The Casual Male Corp., 120 B.R. 256, 264 (Bankr. D. Mass. 1990)(financial condition and operating performance of assignee must be at least as strong as that of the debtors at the time of lease signing). The difference between the financial condition and operating performance of the Debtors vis a vis the proposed assignee is staggering. The proposed assignee operates only three stores, all in New York. Conversely, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast (where the Gator stores are

located).  In addition, as of the Petition Date, the Debtors operated more than 900 stores in the United States.  Clearly, the assignee can not satisfy the requirements of section 365 of the Bankruptcy Code.  Casual Male, 120 B.R. at 264, n. 8 ("To further protect shopping centers, Congress also amended § 365(b)(3)(A) to require the debtor to provide adequate assurance that an assignee has a financial condition and operating performance similar to that of the original tenant when the lease was executed."  "The legislative history indicates that the purpose of this language was 'to insure that the assignee itself will not soon go into bankruptcy and will provide operating and advertising benefits to the other tenants similar to those provided by the original tenant when its lease was executed.'")(citing 130 Cong. Rec. S889 *reprinted in* App. 3 *Collier on Bankruptcy* XX-71 (15th ed. 1989).

13.     Fourth, the proposed assignee has not offered to provide a security deposit or other form of security which may provide Gator comfort that the proposed assignee can satisfy all obligations under the Leases as they come due as required by section 365 of the Bankruptcy Code.

14.     Finally, the Debtors failed to provide any evidence of the proposed assignee's ability to (i) pay the purchase price for the Leases and the other two leases for which it was deemed to be the successful bidder; (ii) invest sufficient capital to allow the stores to open for business fully stocked in first class condition; (iii) operate the stores in the manner required by the Leases; and (iv) satisfy all obligations under the Leases as they come due.  The Debtors provided insufficient evidence regarding the proposed assignee's experience in the industry including the past operating performance of the proposed assignee's New York grocery stores.  The Debtors also failed to provide Gator with any financial projections or operating performance projections for the stores. The Debtors simply have not demonstrated that the proposed assignee has the financial wherewithal, requisite experience or other intangibles necessary to enter a new market, more than

7

double one's obligations, and do all other things necessary to successfully open and operate a grocery store, including satisfying all lease obligations as they arise.

WHEREFORE, Gator respectfully requests that this Court:  (a) deny the Sale Motion to the extent it seeks to authorize the Debtors to assume and assign the Leases to Summit, Legacy, Mr. Mobarak or Sunrise, and (b) grant Gator such other and further relief as this Court deems just and appropriate under the circumstances.

Dated:    May 12, 2006

**HOLLAND & KNIGHT LLP**


By:    /s/ Alan M. Weiss
      Alan M. Weiss
      15 North Laura Street
      Suite 3900
      Jacksonville, FL 32202
      (904) 798-5459 Telephone
      (904) 358-1872 Facsimile

      - and -

      Kyle R. Grubbs
      Ohio Bar No. 0073947
      **FROST BROWN TODD LLC**
      2200 PNC Center
      201 East Fifth Street
      Cincinnati, Ohio  45202
      (513) 651-6800 Telephone
      (513) 651-6981 Facsimile
      kgrubbs@fbtlaw.com

**ATTORNEYS FOR GATOR JACARANDA, LTD. AND GATOR CARRIAGE PARTNERS, LTD.**

## CERTIFICATE OF SERVICE

I certify that that service of the foregoing was made on May 12, 2006 via ECF Noticing and first class mail upon the parties listed below.

/s/ Alan M. Weiss

| | |
|---|---|
| D.J. Baker<br>Skadden, Arps, Slate, Meagher, & Flom LLP<br>Four Times Square<br>New York, NY 10036 | Cynthia C. Jackson<br>Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, FL 32202 |

# 3783244_v1

10