UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., *et al.*, ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | Jointly Administered |

**RESPONSE OF MERCHANDISING CORP. OF AMERICA, INC. TO DEBTOR'S NINTH OMNIBUS OBJECTION TO (A) NO LIABILITY CLAIMS (B) NO LIABILITY MISCLASIFIED CLAIMS AND (C) MISCLASSIFIED CLAIMS**

Merchandising Corp. of America, Inc., ("MCA"), a creditor of Winn-Dixie Stores, Inc. (the "Debtor") in the above-captioned chapter 11 case, hereby files this response to the Ninth Omnibus Objection to (A) No Liability Claims (B) No Liability Misclassified Claims and (C) Misclassified Claims (the "Objection"), as it pertains to the proof of claim filed by MCA against the Debtor on August 1, 2005, and docketed as Claim No. 10633 (the "MCA Claim"). In support of this response, MCA respectfully represents and states as follows:

1.  The MCA Claim arises from services rendered by MCA in setting up Planograms in Winn-Dixie stores for various third-party vendors who sold their products to the Debtor. Prior to rendering the services, MCA was informed by a Winn-Dixie employee that "funds have already been obtained and they are sitting in our account waiting for the completion of this project." (*See* correspondence to Thomas Palombo from Greg Gentry dated October 12, 2004, a true copy of which is attached to the MCA Claim (the "October 12 Confirmation")). These funds were obtained from the third-party vendors. After receiving this confirmation, MCA rendered the services. After MCA's performance, the Debtor filed for bankruptcy under Chapter 11 before turning over to MCA the funds that it had received

from the third-party vendors; funds that were earmarked for MCA's services and segregated for MCA's payment.

2.  The MCA Claim is properly classified as a secured claim because the Debtor held the $92,000 paid by third-party vendors for the benefit of MCA in an actual or a constructive trust with MCA as the beneficiary of that trust. In Florida, the elements for a constructive trust are: (1) a promise; (2) a transfer of the property and reliance thereon; (3) a confidential relationship; and (4) unjust enrichment. *Bergmann v. Slater*, 922 So.2d 1110, 1112 (Fla.Dist.Ct.App. 2006); *see also Claycomb v. Combs*, 676 So.2d 523, 524 (Fla.Dist.Ct.App. 1996)(finding a confidential relationship can be predicated on a legal confidence, such as a contract). These four elements are present in this case. The Debtor promised MCA that it would be paid $92,000 for their services and in reliance upon that promise MCA rendered the services. There also was a confidential relationship between the Debtor and MCA under Florida law. The representation by the Debtor and the performance by MCA created the confidential relationship. Additionally, the Debtor would be unjustly enriched if it was allowed to receive the benefits of the services rendered by MCA and retain the payments that the third-party vendors made for those services. The Debtor collected the funds from third-party vendors for the sole purpose of paying MCA for the services rendered. The funds were never intended to pay the Debtor for other goods or services.

3.  In *T & B Scottdale Contractors, Inc v. U.S.*, the Court of Appeals for the 11th Circuit addressed whether property held in constructive trust was property of a debtor's estate. *T & B Scottdale Contractors, Inc v. U.S.*, 866 F.2d 1372 (11th Cir. 1989). In *T & B Scottdale* the debtor was a subcontractor on a construction contract. *Id.* at 1373. In the contract, the general contractor was required to open a banking account in the debtor's name

for the sole purpose of paying for the debtor's materials. *Id.* Prior to the debtor's filing, the general contractor deposited $135,264.89 in the account for the debtor to pay for materials. *Id.* at 1374. Before paying for the materials, the debtor filed for bankruptcy. *Id.* On appeal the 11th Circuit held that the balance in the account was not property of the estate because the debtor held the funds in a constructive trust for the materialmen. *Id.* at 1377.

   4. Citing the congressional history of §541 of the Bankruptcy Code the court in *T & B Scottdale* stated

> [s]ituations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.

*Id*. Relying on this history, the court reasoned that because the funds in the account were meant for the debtor's materialmen, the debtor held those funds in a constructive trust. *Id.* The court concluded that the funds therefore were not property of the debtor's estate. *Id.*

   5. In circumstances similar to those addressed by the 11th Circuit in *T & B Scottdale*, the Debtor was holding the $92,000 paid by the third-party vendors in either an actual or constructive trust for the benefit of MCA. The money was meant to pay for MCA's services. The Debtor admitted as much when it sent the October 12 Confirmation to MCA specifying that the funds had been received and set aside for that purpose.

   6. A timely filed proof of claim is *prima facie* evidence of the validity and amount of the claim. *In re Bateman*, 331 F.3d 821, 827 (11th Cir. 2003); Fed. R. Bank. P. 3001(f). The party objecting to the claim has the burden of going forward with equivalent

probative evidence to rebut the presumption of validity and amount. *In re O'Callaghan*, 304 B.R. 500, 505 (Bankr.M.D.Fla. 2003).

7. In the Objection, the Debtor has not set forth any factual or legal contentions or provided any documentation that would rebut the presumption in favor of the secured status of the MCA Claim.

8. **WHEREFORE**, Merchandising Corp. of America, Inc., respectfully requests that the Court deny the Debtor's objection to the secured status of the MCA Claim, allow the MCA Claim as an allowed secured claim in the amount of $92,000, and award such other and further relief as the Court deems equitable and just.

Respectfully Submitted,

KILPATRICK STOCKTON, LLP


*/s/ Deborah L. Fletcher*
Deborah L. Fletcher
N.C. Bar No. 20254
Bill D. Bensinger
Alabama Bar No ASB-2320-I53B
214 N. Tryon Street, Suite 2500
Charlotte, North Carolina 28202
Telephone: (704) 338-5243
dfletcher@KilpatrickStockton.com

Attorneys for Merchandising Corp.
of America, Inc.