**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CASE NO. 05-03817-F1** |
| | ) | |
| **WINN-DIXIE STORES, INC., ET AL.,** | ) | **CHAPTER 11** |
| | ) | **(JOINTLY ADMINISTERED)** |
| **DEBTORS.** | ) | |
| | ) | |

---

**GATOR JACARANDA, LTD.'S AND GATOR CARRIAGE PARTNERS, LTD.'S EMERGENCY REQUEST FOR ADJOURNMENT OF SALE HEARING WITH RESPECT TO GATOR LEASES, AND SECOND SUPPLEMENTAL OBJECTION TO DEBTORS' MOTION FOR ORDER (A) AUTHORIZING THE SALE OF ADDITIONAL STORES AND RELATED EQUIPMENT FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OR ALTERNATIVELY, THE REJECTION OF LEASES AND ESTABLISHING A CLAIMS BAR DATE AND (C) GRANTING RELATED RELIEF**

---

Gator Jacaranda, Ltd. ("Jacaranda") and Gator Carriage Partners, Ltd. ("Carriage" and together with Jacaranda, "Gator"), by their undersigned counsel, submit this Emergency Request for Adjournment of Sale Hearing With Respect to Gator Leases, and Second Supplemental Objection to the Debtors' Motion for Order (A) Authorizing the Sale of Additional Stores and Related Equipment Free and Clear of Liens, Claims and Interests, (B) Authorizing the Assumption and Assignment or Alternatively, the Rejection of Leases and Establishing a Claims Bar Date and (C) Granting Related Relief (the "Sale Motion") as to two unexpired leases of non-residential real property (store nos. 211 and 339) under which the Debtors are the tenants.[1] In support of this Request for Adjournment and

---

[1] Jacaranda is the owner of the shopping center known as Jacaranda Square (Store No. 211) located in Plantation, Florida and Carriage is the owner of the shopping center known as Carriage Hills Plaza (Store No. 339) located in Davie, Florida (collectively, the "Leased Premises") in which the Debtors lease retail space from Gator pursuant to written leases (the "Gator Leases").

Second Supplemental Objection,[2] Gator respectfully states:

## I. Request for Adjournment.

1.    Gator requests that this Court adjourn the hearing (the "Sale Hearing") to approve the Sale Motion, currently scheduled for May 18, 2006 at 1:00 p.m., with respect to the Gator Leases, to allow Gator the opportunity to conduct discovery with respect to the financial condition and operating history of the proposed assignees of the Gator Leases.[3] Adjourning the Sale Hearing is necessary and appropriate under the facts and circumstances because the Debtors and the proposed assignees have failed or otherwise refused information to Gator and this Court regarding their adequate assurance of future performance under the Gator Leases and have further failed or otherwise refused to respond to Gator's repeated requests for information regarding the proposed assignees' ability to satisfy adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

---

[2] Gator hereby incorporates by reference its (i) Objection to the Debtors' Motion for Order (A) Authorizing the Sale of Additional Stores and Related Equipment Free and Clear of Liens, Claims and Interests, (B) Authorizing the Assumption and Assignment or Alternatively, the Rejection of Leases and Establishing a Claims Bar Date and (C) Granting Related Relief (the "Objection") [DE #7408] filed on April 25, 2006; and (ii) Supplemental Objection to the Debtors' Motion for Order (A) Authorizing the Sale of Additional Stores and Related Equipment Free and Clear of Liens, Claims and Interests, (B) Authorizing the Assumption and Assignment or Alternatively, the Rejection of Leases and Establishing a Claims Bar Date and (C) Granting Related Relief (the "Supplemental Objection") [DE #7800] filed on May 12, 2006.

[3] At the conclusion of the auction held on May 9, 2006, in which Office Depot and Wal-Mart also submitted compelling and significant bids for the Jacaranda lease and other entities submitted compelling and significant bids for the Carriage lease, the Debtors, without consultation of Gator, selected Sunrise Properties, Inc. ("Sunrise") as the successful bidder for the Gator Leases. By letter dated May 10, 2006, the Debtors advised that although Sunrise was the successful bidder for the Gator Leases, the entities which would operate the stores under the Gator Leases were Summit Holdings, LLC ("Summit")(in the case of Store No. 211) and Legacy Group, LLC ("Legacy")(in the case of Store No. 339). As purported adequate assurance, the Debtors provided the Declaration of Esmail Mobarak with respect to Summit and the Declaration of Esmail Mobarak with respect to Legacy (collectively, the "Mobarak Declarations"). Attached to the Mobarak Declarations as Exhibit A are (i) a letter dated May 2, 2006 from Peter Lavoy, as President and COO of Foodtown, Inc. stating that Mr. Mobarak is a member of a cooperative of independent Foodtown Store operators and that Mr. Mobarak owns three stores in New York; and (ii) a letter and unaudited balance sheet prepared by Interactive Business Services for Mr. Mobarak.

2. On May 10, 2006, the Debtors sent a letter to counsel for Gator advising that Sunrise was the "successful bidder" and that Summit and Legacy would be the proposed new tenants under the Gator Leases. The May 10th letter also indicated that Mr. Mobarak, upon information and belief, a principal of Summit and Legacy, may provide a guaranty of the Gator Leases, but did not definitively state that Mr. Mobarak would guaranty the obligations of Summit and Legacy under the Gator Leases. In response to the May 10th letter from counsel for the Debtors, counsel for Gator sent counsel for the Debtors a letter advising that the information provided by the Debtors to Gator with respect adequate assurance of future performance was wholly inadequate, did not satisfy section 365 of the Bankruptcy Code, and specifically listed additional information Gator requested of the proposed assignees to satisfy adequate assurance of future performance. Attached hereto and incorporated herein as <u>Exhibit A</u> is a copy of the May 10th letter from counsel for Gator to counsel for the Debtors. As of the date hereof, Gator has not received a response from the Debtors or Sunrise to its request for additional information with respect to the proposed assignees of the Gator Leases and any guarantors.

3. On or about May 12, 2006, Gator also requested additional adequate assurance information from the proposed assignee via telephone calls to Mr. Mobarak and his counsel. Once again, as of the date hereof, Gator has not received any additional information from the proposed assignee of the Gator Leases with respect to the financial wherewithal or operating performance of the proposed assignee or any guarantors. In addition to these requests, Gator has taken additional action in an attempt to obtain as much information about the proposed assignees as possible. Specifically, at his own expense, Gator's principal, James Goldsmith, traveled to New York and toured one of Mr. Mobarak's New York grocery stores with Mr. Mobarak on Sunday May 14, 2006. During this time, Mr. Goldsmith explained to Mr. Mobarak that the adequate assurance information

provided to Gator was wholly insufficient and requested additional information with respect to the financial condition and operating performance of the proposed assignees and Mr. Mobarak. Once again, as of the date hereof, Gator has not received any additional information.

4.    Although Gator has been extremely diligent in its efforts to obtain documentation from the Debtors and the proposed assignees (and guarantors) that would satisfy section 365 of the Bankruptcy Code, Gator has received no additional information from the Debtors, the proposed assignees or any guarantors. In addition, Gator has not been provided a list of documents the Debtors and/or proposed assignees intend to introduce at the Sale Hearing in support of adequate assurance of future performance. Similarly, Gator has not been provided with a list of witnesses who may testify at the Sale Hearing in support of the Debtors and/or proposed assignees. In addition, even if the Debtors or the proposed assignees provided additional adequate assurance information to Gator at this time, there is simply not enough time for Gator to review, analyze and make a determination as to whether the proposed assignees have satisfied the adequate assurance requirements of section 365 of the Bankruptcy Code.

5.    Given the diligent efforts of Gator and the complete lack of response by the Debtors, the proposed assignees and Mr. Mobarak, this Court should adjourn the Sale Hearing to permit Gator to conduct formal discovery, including document requests and depositions, which will permit Gator and this Court to determine whether the proposed assignees and any guarantors can satisfy the adequate assurance requirements of section 365 of the Bankruptcy Code. Gator is agreeable to an expedited discovery schedule which will cause the least amount of delay to the sale process while also providing Gator with adequate time to conduct the necessary due diligence. This Court should not permit the Debtors and proposed assignees to simply ignore the repeated requests of Gator for

adequate assurance information and assign the Gator Leases without complying with the adequate assurance requirements of section 365 of the Bankruptcy Code.

## II.     The Sale Motion Should Be Denied.

6.     As set forth in detail in the Supplemental Objection, the Debtors and proposed assignees have completely failed to provide Gator and this Court with evidence of the adequate assurance of future performance of the proposed assignees of the Gator Leases as required by section 365 of the Bankruptcy Code.  Gator can not and should not be expected to approve the assumption and assignment of the Gator Leases to a completely unknown party which has provided virtually no adequate assurance information.  Specifically, the Debtors and proposed assignees failures with respect to adequate assurance include:

- (a)    complete failure to provide any information on the proposed assignees, other than their names.

- (b)    failure to make clear whether the principal(s) of the proposed assignees will provide a guaranty of lease obligations; and failure to provide any evidence as to who owns the proposed assignees.

- (c)    failure to provide audited financial statements or an opinion from a certified public accountant which demonstrate a net worth of the proposed assignees and any guarantor sufficient to satisfy all lease obligations as they come due.  In fact, with respect to the unaudited financial statement provided by Mr. Mobarak, Mr. Mobarak's accountant expressly states that "[t]his Financial Statement is prepared primarily for your financial guidance, and as such, <u>our examination did not include confirmation of Assets and Liabilities.  Accordingly, we do no express an opinion on the accompanying statement</u>." (emphasis added).  Attached hereto and incorporated herein as <u>Exhibit B</u> is the accountant's letter.  Gator should not be required to rely on a financial statement which Mr. Mobarak's own accountant won't confirm to be true and accurate.

- (d)    complete failure to provide any information with respect to other financial obligations of the proposed assignees and any guarantor, including whether any guarantor has also guaranteed other leases.

- (e)    complete failure (and complete inability) to provide any information which demonstrates that the proposed assignees' financial condition and operating

5

performance are similar to that of the Debtors at the time of the signing of the leases. Winn-Dixie Stores, Inc. is the tenant under the two Gator leases. Mr. Mobarak represents that he has three stores in New York, which based on the verbal information provided by Mr. Mobarak, are 10,000 square feet, 15,000 square feet and 25,000 square feet.

(f) failure to indicate whether the proposed assignees will provide a substantial security deposit or other form of security.

(g) complete failure to provide sufficient evidence of the proposed assignees ability to (i) pay the purchase price for the leases, (ii) invest sufficient capital to allow the stores to open for business fully stocked in first class condition, (iii) operate the stores in the manner required by the leases, and (iv) satisfy all obligations under the leases as they come due; which failure includes the failure to provide any projections as to expected sales or the level of sales required to operate at a profit (which is particularly relevant since, upon information and belief, the Debtors have been losing money in the two Gator locations), the source of financing such as a line of credit; and evidence of the ability to successfully operate the four stores in Florida, including evidence of distribution capabilities in a new market to Mr. Mobarak.

7. Given the Debtors and proposed assignees' complete lack of disclosure, it is impossible for this Court and Gator to evaluate the financial wherewithal or operating history of the proposed assignees. Given what little Gator knows of Mr. Mobarak, Gator has serious concerns with Mr. Mobarak's ability to successfully operate the stores under the Gator Leases. Specifically, Mr. Mobarak's stores are all located in New York, range in size from approximately 10,000 square feet to 25,000 square feet and do not have national name recognition. Conversely, the four store package Mr. Mobarak seeks to purchase are all located in Florida, total approximately 160,000 square feet, and with respect to the Gator Leases, have had the benefit of national name recognition of the Debtors, but nonetheless, continue to have declining sales. In addition, upon information and belief, Mr. Mobarak has no experience in Florida, has no provided no evidence that he has a source of financing for the four new Florida stores, and no evidence of distribution capabilities or other operational capabilities. Gator has serious concerns with the ability of an unknown grocer to be

successful in these tough markets given the apparent complete lack of experience with the Florida market, stores of these sizes and no evidence of a source of financing.

8.     If the proposed assignee fails in its sizable attempt to operate the Florida stores, its failure will not only cause significant harm to Gator, but will also adversely affect the overall shopping center, which will adversely affect the surrounding community. Frankly, Gator is somewhat perplexed by the Debtors' decision to select Sunrise as the successful bidder given Sunrise's complete failure, refusal, or inability to provide any adequate assurance information, when other parties of significant financial wherewithal and operating performance, including Office Depot[4] and Wal-Mart[5] placed significant bids on at least one of the Gator Leases. In particular, with respect to Wal-Mart, a nationally known grocer, it appears that Wal-Mart would have satisfied the requirements of adequate assurance of future performance and the use clause of the Jacaranda lease, saving the this Court, the Debtors' estate, Gator and other parties in interest the time and expense associated with evaluating an entity who simply can not satisfy the adequate assurance requirements of section 365 of the Bankruptcy Code.

9.     Because the proposed assignees have not and can not satisfy the adequate assurance requirements of section 365 of the Bankruptcy Code, the Debtors should not continue to seek approval of an inappropriate assignment where other parties have demonstrated significant interest in the Gator Leases. Gator is not attempting to completely derail the sale process or suggest that the Debtors can not assign the Gator Leases to a qualified assignee. Rather, Gator is simply asserting that the Sunrise, Summit, Legacy, and Mr. Mobarak have not and, upon information and belief,

---

[4] Although Office Depot may have the financial wherewithal to perform under the Jacaranda lease, Office Depot can not comply with the use clause as it restricts the use to grocery stores or general merchandise stores.
[5] Upon information and belief, Wal-Mart bid $1,000,000 for the Jacaranda lease, exclusive of the equipment. If Wal-Mart was the successful bidder, the Debtors could still sell the equipment to another party.

based upon the information made available to Gator, can not satisfy the substantial adequate assurance requirements of section 365 of the Bankruptcy Code with respect to the Gator Leases. The Bankruptcy Code does not permit the Debtors to force Gator to accept a complete unknown entity, which provides no financial or operating history. This is particularly true where, as here, the current tenant had significant financial wherewithal and operating history at the time the Gator leases were signed. If the Debtors are permitted to assume and assign the Gator Leases to the proposed assignees, the significant protections afforded by Congress to shopping center landlords such as Gator would be completely obviated. This Court should not permit such a complete disregard of the Bankruptcy Code.

10. In addition, with respect to the Carriage lease, in accordance with Section 16 of the lease, Carriage has the right to forego repairs and terminate the lease if the building is damaged in excess of fifty percent of its value and the Debtors fail to provide notice to Gator of their intent to extend the term of the lease for an additional period. Upon information and belief, the building was damaged more than fifty percent of its value by Hurricane Wilma and the Debtors did not provide Gator with the required notice. As a result, Gator reserves its right to file the appropriate pleadings with this Court to seek this Court's approval to terminate the Carriage lease in accordance with its terms.

WHEREFORE, Gator respectfully requests that this Court: (a) adjourn the Sale Hearing to permit Gator sufficient time to conduct discovery, (b) deny the Sale Motion to the extent it seeks to authorize the Debtors to assume and assign the Leases to Summit, Legacy, Mr. Mobarak or Sunrise, and (c) grant Gator such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: May 16, 2006

        **HOLLAND & KNIGHT LLP**

By: /s/ Kyle R. Grubbs
    Alan M. Weiss
    15 North Laura Street
    Suite 3900
    Jacksonville, FL 32202
    (904) 798-5459 Telephone
    (904) 358-1872 Facsimile

    - and -

    Kyle R. Grubbs
    Ohio Bar No. 0073947
    **FROST BROWN TODD LLC**
    2200 PNC Center
    201 East Fifth Street
    Cincinnati, Ohio 45202
    (513) 651-6800 Telephone
    (513) 651-6981 Facsimile
    kgrubbs@fbtlaw.com

    **ATTORNEYS FOR GATOR JACARANDA, LTD. AND GATOR CARRIAGE PARTNERS, LTD.**

## **CERTIFICATE OF SERVICE**

I certify that that service of the foregoing was made on May 16, 2006 via ECF Noticing and/or facsimile and first class mail upon the parties listed below.

                /s/ Kyle R. Grubbs

D.J. Baker
Skadden, Arps, Slate, Meagher, & Flom LLP
Four Times Square
New York, NY 10036

Cynthia C. Jackson
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202

Robert B. White, Jr., Esq.
Sobering, White & Luczak, P.C.
558 West New England Avenue, Suite 240
Winter Park, Florida 32789
(407) 647-9336 Facsimile

CINLibrary 0101031.0540818  1634425v.3