condemnation proceedings are commenced against any material part of the Real Property associated with the Store, then either Buyer or Seller will have the right, exercisable by giving notice of such decision to the other within 5 Business Days after receiving written notice of such damage, destruction, or condemnation proceedings, to terminate this Agreement, and thereafter neither of the parties will have any further rights or obligations hereunder; provided, however, that if Buyer is not in breach of this Agreement, then Buyer will be entitled to the return from Escrow Agent of the Deposit. If neither party exercises such right of termination as affected by such casualty or proceeding and the Store is sold to Buyer pursuant to the terms of this Agreement, then, as Buyer's sole remedies, Seller will assign to Buyer any rights it may have, and is entitled to assign, to recover insurance proceeds or to receive condemnation compensation and will promptly pay over and deliver to Buyer any such proceeds or compensation received by it.

## 14.0  **Closing Date and Closing.**

14.1  Closing Date; Procedures.  Promptly following satisfaction of the Approval Condition, Seller will designate a Business Day reasonably acceptable to Buyer that falls on or before the Outside Date as the closing date for the Store.  Such designated closing date is referred to herein as the "Closing Date."  The Closing will be conducted by use of escrows administered by Escrow Agent, including delivery of documents and funding into escrow and subsequent release and legal delivery of the same from escrow following authorization given by Buyer and Seller based on satisfaction of the terms and conditions of this Agreement.

14.2  Seller's Closing Deliveries.  Subject to the conditions contained in paragraph 12.0 of this Agreement, on or before the Closing Escrow Date as determined based on the designated Closing Date, Seller will deliver the following ("Seller's Escrowed Items") into escrow with Escrow Agent:

(i)     Two counterparts of the Conveyance Instrument, executed by Seller;

(ii)    The Bill of Sale, executed by Seller;

(iii)   Two counterparts of the Closing Statement, executed by Seller;

(iv)    Such other instruments as are reasonably required by the Title Insurer in accordance with the terms hereof; provided, however, that in no event will Seller be required to indemnify the Title Insurer, Buyer, or any other party pursuant to any such instrument, or undertake any other material liability not expressly contemplated in this Agreement, unless Seller elects to do so in its sole discretion; and

(v)     Any other documents, instruments, or agreements called for herein for delivery by Seller that have not previously been delivered.

Buyer may waive Seller's compliance as to any of the foregoing items in a manner permitted by paragraph 17.6 of this Agreement.  Seller's delivery of all of Seller's Escrowed Items (other than those waived by Buyer) to Escrow

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

Agent, will not be deemed to be an acknowledgement by Seller that the conditions of <u>paragraph 12.0</u> of this Agreement have been fulfilled or waived until Seller's Closing Direction is delivered.

14.3    <u>Buyer's Closing Deliveries</u>.  Subject to the conditions contained in <u>paragraph 11.0</u> of this Agreement, on or before the Closing Escrow Date as determined based on the designated Closing Date, Buyer will deliver the following ("<u>Buyer's Escrowed Items</u>") into escrow with Escrow Agent:

(i)      Two counterparts of the Conveyance Instrument, executed by Buyer;

(ii)     Two counterparts of the Replacement Guaranty, if required, executed by the requisite parent Affiliate of Buyer;

(iii)    Two counterparts of the Closing Statement, executed by Buyer;

(iv)    Such other instruments as are reasonably required by the Title Insurer in accordance with the terms hereof; and

(v)     Any other document, instrument, or agreement called for herein for delivery by Buyer that has not previously been delivered.

(vi)    All funds required to be transferred and delivered by Buyer to Escrow Agent pursuant to <u>paragraph 3.0</u> of this Agreement.

Seller may waive compliance by Buyer as to any of the foregoing items in a manner permitted by <u>paragraph 17.6</u> of this Agreement.  Buyer's delivery of all of Buyer's Escrowed Items (other than those waived by Seller) to Escrow Agent will not be deemed to be an acknowledgement by Buyer that the conditions of <u>paragraph 11.0</u> of this Agreement have been fulfilled or waived until Buyer's Closing Direction is delivered.

14.4    <u>Title Insurer Requirements</u>.  On the Closing Date, Seller and Buyer will each deposit with Escrow Agent such other instruments as are reasonably required by the Title Insurer or otherwise required to consummate the purchase of the Assets in accordance with the terms hereof; provided, however, that in no event will Seller be required to indemnify the Title Insurer, Buyer, or any other party pursuant to any such instrument, or undertake any other material liability not expressly contemplated in this Agreement, unless Seller elects to do so in its sole discretion.

14.5    <u>Payment of Closing Costs</u>.  Except as provided in <u>paragraph 16.0</u> of this Agreement, at or before Closing for the Store, or if Closing does not occur due to earlier termination of this Agreement in accordance with its terms, (i) Seller will pay Seller's Closing Costs; and (ii) Buyer will pay Buyer's Closing Costs.

14.6    <u>Closing Direction</u>.  On the Closing Date, Escrow Agent will notify Buyer and Seller, if this be the case, that Escrow Agent is in possession of all of Seller's Escrowed Items and all of Buyer's Escrowed Items and is prepared to release

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

21

such items for legal delivery subject only to receipt of (i) written notice from Seller or Seller's counsel to Escrow Agent and Buyer confirming that Seller is prepared to proceed to closing and that all of the conditions of paragraph 12.0 of this Agreement have been fulfilled or otherwise waived ("Seller's Closing Direction"), and (ii) written notice from Buyer or Buyer's counsel to Escrow Agent and Seller confirming that Buyer is prepared to proceed to closing and that all of the conditions of paragraph 11.0 of this Agreement have been fulfilled or otherwise waived ("Buyer's Closing Direction").  Upon receipt of Buyer's Closing Direction and Seller's Closing Direction, Escrow Agent will be deemed authorized and directed to release and disburse, as appropriate, the Seller's Escrowed Items and the Buyer's Escrowed Items, without further condition, on the Closing Date.

14.7    Closing Turnover.  Contemporaneously with delivery of the latter of Seller's Closing Direction and Buyer's Closing Direction to Escrow Agent, all right, title, and interest of Seller in and to the Assets will pass to Buyer, and Seller thereafter will have no further right, title, interest, or obligation with respect to the Store or the Assets, except as may be expressly provided in this Agreement.    Promptly following Closing, Seller will turn over to Buyer exclusive physical possession of the Store and the Assets associated therewith, including, to the extent in Seller's possession, control or custody, all keys, combinations to safes, security codes, and passwords, and Buyer may commence preparation for opening of the Store as a Buyer's store, including, without limitation, disconnecting items of equipment that are included in Excluded Personal Property and moving such items aside, and commencing electrical and wiring work required in order to install Buyer's point of sale and other equipment, signage, and similar items.

14.8    Closing Deliveries and Disbursements.    Subject to satisfaction of the requirements set forth in paragraph 14.6 above, at the commencement of business on the Closing Date, Escrow Agent will release and disburse, as appropriate, the Buyer's Escrowed Items and the Seller's Escrowed Items, with disbursements of Buyer's Closing Costs, Seller's Closing Costs, and the Purchase Price, as provided in the Closing Statement.

15.0    **Termination**.

15.1    Termination.  This Agreement may be terminated, and the transaction contemplated herein abandoned, only as follows:

15.1.1    by written consent of Seller and Buyer, in which case the applicable Deposit will be disbursed as provided in such written consent (but if such written consent does not provide for the disbursement of the Deposit, then Escrow Agent will pay over the Deposit to Seller as consideration for Seller's agreement to terminate this Agreement);

15.1.2    at the election of Seller if and to the extent permitted under paragraph 16.1 of this Agreement, in which case the Deposit will be disbursed as provided in such paragraph 16.1;

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

22

15.1.3   at the election of Buyer if and to the extent permitted under paragraph 16.2 of this Agreement, in which case the Deposit will be disbursed as provided in such paragraph 16.2;

15.1.4   at the election of Buyer if any of the conditions set forth in paragraph 11.0 of this Agreement has not been satisfied or waived by Buyer on or before the Outside Date, in which case Seller will direct Escrow Agent to return the Deposit to Buyer; provided, however, that if any of such conditions has not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies, and obligations, including any right of termination, will be determined in accordance with paragraph 16.0 of this Agreement rather than pursuant to this paragraph 15.1.4;

15.1.5   at the election of Seller if any of the conditions set forth in paragraph 12.0 of this Agreement has not been satisfied or waived by Seller on or before the Outside Date, in which case Seller will direct Escrow Agent to return the Deposit to Buyer; provided, however, that if any of such conditions has not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies, and obligations, including any right of termination, will be determined in accordance with paragraph 16.0 of this Agreement rather than pursuant to this paragraph 15.1.5;

15.1.6   at the election of Buyer or Seller as provided in paragraph 4.4, 13.0, or 22.0 of this Agreement, in which case Seller will direct Escrow Agent to return the Deposit to Buyer; provided, however, that if at the time any such election is made, Buyer is in breach of this Agreement, then Buyer's and Seller's respective rights, remedies, and obligations (including any right of termination) will be determined in accordance with paragraph 15.2 of this Agreement rather than pursuant to this paragraph 15.1.6;

15.1.7   at the election of Seller, if this Agreement is terminated by Buyer for any reason, including, without limitation, because of Seller's breach of this Agreement, in which case Seller will direct Escrow Agent to return the Deposit to Buyer; provided, however, that if at the time such election is made, Buyer is in breach of this Agreement, then Buyer's and Seller's respective rights, remedies, and obligations (including any right of termination) will be determined in accordance with paragraph 15.2 of this Agreement rather than pursuant to this paragraph 15.1.7;

15.1.8   at the election of Seller (A) if this Agreement is not the Successful Bid with respect to the Store or (B) if the Approval Condition is not satisfied or (C) if this Agreement is terminated by Seller for any reason other than as provided in paragraph 15.1.9 below, in which case Seller will direct Escrow Agent to return the Deposit to Buyer;

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

23

provided, however, that if at the time any such election is made, Buyer is in breach of this Agreement, then Buyer's and Seller's respective rights, remedies, and obligations (including any right of termination) will be determined in accordance with paragraph 15.2 of this Agreement rather than pursuant to this paragraph 15.1.8;

15.1.9    at the election of Seller, if the Cure Costs with respect to the Lease exceed 15% of the Purchase Price, provided that in such case Seller may terminate this Agreement under this paragraph 15.1.9, in which case Seller will direct Escrow Agent to return the Deposit to Buyer; provided, however, that if at the time such election is made Buyer is in breach with respect to this Agreement, then Buyer's and Seller's respective rights, remedies, and obligations (including any right of termination) will be determined in accordance with paragraph 15.2 of this Agreement rather than pursuant to this paragraph 15.1.9; or

15.1.10    at the election of Buyer or Seller, if the Closing has not occurred on or before the Outside Date for any reason other than as contemplated in paragraphs 15.1.1 through 15.1.9 of this Agreement, in which case Seller will direct Escrow Agent to return the Deposit to Buyer; provided that neither Buyer nor Seller, as the case may be, will be entitled to terminate this Agreement pursuant to this paragraph 15.1.10 if such party's breach of this Agreement has been the cause of, or resulted in, the failure of the Closing to occur on or before such date and in the case of any such breach Buyer's and Seller's respective rights, remedies, and obligations (including any right of termination) will be determined in accordance with paragraph 16.0 of this Agreement rather than pursuant to this paragraph 15.1.10.

15.2    Reservation of Remedies.  Upon any termination of this Agreement pursuant to paragraphs 15.1.3 through 15.1.10 of this Agreement, each party will retain those rights (if any) it may have under paragraph 16.0 of this Agreement against any other party for breach by such other party prior to such termination of any of its covenants or other obligations under or relative to this Agreement.

## 16.0    **Default and Remedies**.

16.1    Buyer's Default.  If the Closing as contemplated under this Agreement is not consummated due to Buyer's breach of this Agreement, or if this Agreement is terminated due to Buyer's breach of this Agreement, then Seller will be entitled, as its sole and exclusive remedy for such breach, (A) to terminate this Agreement or (B) to receive the Deposit (the "Liquidated Deposit") as liquidated damages for the breach of this Agreement and not as a penalty, it being agreed between the parties hereto that the actual damages to Seller in the event of such a breach are impractical to ascertain and the amount of the Liquidated Deposit is a reasonable estimate thereof.  Seller hereby expressly waives and relinquishes any and all other remedies at law or in equity.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

Seller's right to receive the Liquidated Deposit is intended not as a penalty, but as full-liquidated damages. The right to receive the Liquidated Deposit as full liquidated damages is Seller's sole and exclusive remedy in the event of breach of this Agreement by Buyer, and Seller hereby waives and releases any right to (and Seller hereby covenants that it will not) sue Buyer: (a) for specific performance of this Agreement or (b) to recover any damages of any nature or description other than or in excess of the Liquidated Deposit. Buyer hereby waives and releases any right to (and hereby covenants that it will not) sue Seller or seek or claim a refund of the Liquidated Deposit (or any part thereof) on the grounds that the Liquidated Deposit is unreasonable in amount and exceeds Seller's actual damages or that its retention by Seller constitutes a penalty and not agreed upon and reasonable liquidated damages. This paragraph 16.1 is subject to paragraph 16.3 and 16.4 of this Agreement.

16.2   **Default by Seller.**   In the event of Seller's breach of its covenants, representations, or warranties as provided in this Agreement, or if, following satisfaction of the Approval Condition, the sale of the Store as contemplated under this Agreement is not consummated due to Seller's refusal or inability to Close the transaction contemplated herein, then Buyer will be entitled, as its sole and exclusive remedy for such breach, to receive the return of the Deposit, which return will operate to terminate this Agreement and release Seller from any and all liability under this Agreement. Buyer expressly waives and releases (i) any right to seek specific performance of Seller's obligations under this Agreement and (ii) any right to seek or collect any damages, including any actual, consequential, speculative, remote, or punitive damages. This paragraph 16.2 is subject to paragraphs 16.3 and 16.4 of this Agreement.

16.3   **Notice of Default; Opportunity to Cure.**   Neither Seller nor Buyer will be deemed to be in default hereunder until and unless such party has been given written notice of its failure to comply with the terms hereof and thereafter does not cure such failure within 5 Business Days after receipt of such notice; provided, however, that this paragraph 16.3: (i) will not be applicable to Buyer's failure to deliver any Deposit or any portion thereof on the date required under this Agreement or to a party's failure to make any deliveries required of such party on the Real Property Escrow Date or the Closing Date and, accordingly, (ii) will not have the effect of extending the Closing Date or the due date of the Deposit.

16.4   **Recoverable Damages.**   In no event will the provisions of paragraphs 16.1 and 16.2 of this Agreement limit (i) either Buyer's or Seller's obligation to indemnify the other party, or the damages recoverable by the indemnified party against the indemnifying party due to a party's express obligation to indemnify the other party in accordance with the Confidentiality Agreement and paragraphs 16.5 and 17.3 of this Agreement, or (ii) either Buyer's or Seller's obligation to pay costs, fees, or expenses under the Confidentiality Agreement and paragraphs 3.4.2 and 3.4.3 of this Agreement, or the damages recoverable by any party against any other party due to a party's failure to pay such costs. In addition, if this Agreement is terminated for any

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

25

reason, and Buyer or any Affiliate of Buyer asserts any claim or right to the Assets that would otherwise delay or prevent Seller from having clear, indefeasible, and marketable title to the Assets, then Seller will have all rights and remedies available at law or in equity with respect to such assertion by Buyer and any loss, damage, or other consequence suffered by Seller as a result of such assertion.

16.5    <u>Buyer Indemnification of Seller</u>. Buyer will indemnify and save and hold harmless Seller and its Affiliates and representatives from and against any and all costs, losses liabilities, damages, lawsuits, deficiencies, claims, and expenses (whether or not arising out of third-party claims), including, without limitation, interest, penalties, reasonable attorneys' fees, and all amounts paid in investigation, defense, or settlement for any of the foregoing (herein, the "<u>Damages</u>") incurred in connection with or arising out of or resulting from (a) any breach of any covenant or warranty by Buyer (including any payment obligation), or the inaccuracy of any representation made by Buyer in or pursuant to this Agreement or other transaction documents, (b) any liability, obligation, or commitment of any nature (absolute, accrued, contingent, or otherwise) of Buyer that is due to or arises in connection with Buyer's acts or omissions prior to, on, or after the Closing Date, including any claim, liability, or obligation that is assumed by Buyer pursuant to this Agreement or in any transaction documents signed by Buyer.    Notwithstanding the foregoing, Buyer will not be liable for any matter (i) with respect to which Seller has not given Buyer written notice within a reasonable period of time following Seller's receiving written notice of such matter, specifying the claim and the basis for the claim in reasonable detail (unless the failure to provide such information did not have a Material Adverse Effect on Buyer), or (ii) that is due to Seller's acts or omissions.    The provisions of this <u>paragraph 16.5</u> will cover all obligations and liabilities of whatsoever kind, nature, or description relating, directly or indirectly, to product liability, third party litigation, or third party claims against Buyer or Seller in connection with, arising out of, or relating to the Assets.    This <u>paragraph 16.5</u> will survive the Closing or earlier termination of this Agreement.

16.6    <u>Mutuality of Remedies</u>.    Buyer and Seller each hereby knowingly, voluntarily, and intentionally waive and relinquish the right to assert mutuality of remedies as a defense to enforceability of this Agreement by either party.

17.0    **Miscellaneous.**

17.1    <u>Notices</u>. All notices, requests, demands, offers, and other communications required or permitted to be given pursuant to this Agreement will conform to the requirements of this <u>paragraph 17.1</u> and will be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number or by attachment to an e-mail transmission to the recipient's e-mail address and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next Business Day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

26

given by e-mail transmission when confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next Business Day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iv) if delivered by United States Mail, 3 days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; or (v) if given by nationally recognized or reputable overnight delivery service, on the next Business Day after receipted deposit with same, addressed to Seller or Buyer at their respective addresses stated below:

If to Seller:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn: Michael Chlebovec, Director – Asset Management
Telefax No.: 904 783-5646
e-mail: *michaelchlebovec@winn-dixie.com*

With a copy to:

Winn-Dixie Stores, Inc. – Legal Department
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn: Catherine B. Ibold, Esquire, Group Leader - Real Estate
Telefax No.: 904-783-5138
e-mail: *catherineibold@winn-dixie.com*

and

Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Attn: Douglas G. Stanford, Esquire
Telefax No.: 904-598-6300
e-mail: *dstanford@sgrlaw.com*

If to Buyer:

Tropical Supermarket No. 15, Inc.
2828 Coral Way, Suite 300
Miami, Florida 33145
Telefax No.: _____
e-mail: *fausto@bellsouth.net*

With a copy to:

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

27

Gaston R. Alvarez, Esquire
2701 LeJune Road, Suite 407
Coral Gables, Florida 33134
Telefax No.: 305-441-9109
e-mail: *agaston@bellsouth.ne*t

If to Escrow Agent:

Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Attn: Douglas G. Stanford, Esquire
Telefax No.: 904-598-6300
e-mail: *dstanford@sgrlaw.com*

or such other address as any party may from time to time specify by notice to the other.

17.2    Notice of Certain Inquiries.  If any party is contacted, whether before or after the Closing and whether orally or in writing, by the United States Department of Justice or the Federal Trade Commission, or any similar state governmental authority, with respect to the transaction contemplated by this Agreement, such party will promptly notify the other party of such contact and describe the facts and circumstances thereof.

17.3    Brokers and Finders.    The parties agree that there is no brokerage commission due in connection with the transaction contemplated by this Agreement other than that due by Seller to Seller's Brokers.  Seller agrees to pay all fees and commissions claimed by Seller's Brokers as a result of the transaction contemplated by this Agreement, which fees and commissions will be considered payable with respect to the Store only if, as and when the Closing contemplated by this Agreement occurs.  Except for Seller's Brokers, neither Seller nor Buyer has dealt with any investment adviser, real estate broker, real estate consultant, or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with the sale of the Assets or this Agreement.  Seller and Buyer hereby indemnify and agree to hold harmless each other from and against any claims by any other Person for brokerage fees, commissions, or other similar costs related to the purchase of the Assets and this Agreement by reason of Seller's or Buyer's own acts, said indemnifications by Seller and Buyer to survive the Closing or earlier termination of this Agreement.

17.4    Successors and Assigns.  This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

17.5    Assignment.  Neither Seller nor Buyer may assign or delegate any duties or obligations under this Agreement without the prior written consent of the

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

28

other, which consent may be granted or withheld in the sole discretion of the party whose consent is so required.  No assignment by Buyer will release or relieve Buyer of its liabilities and obligations hereunder, which will remain in full force and effect notwithstanding any such assignment.

17.6   <u>Amendments</u>.  Except as otherwise provided herein, this Agreement may be amended by, and only by, a written instrument executed by Seller and Buyer (and delivered physically or by facsimile transmission from any party or its counsel to the other party or its counsel) and subject to approval of the Bankruptcy Court, if applicable.

17.7   <u>Governing Law</u>.  The application and effect of this Agreement as to any particular Store or Stores will be governed by and construed in accordance with the laws of the State in which the Store is located; the application and effect of this Agreement as to any matter of the rights and obligations of the parties generally will be governed by and construed in accordance with the laws of the State of Florida.

17.8   <u>Merger of Prior Agreements</u>.   This Agreement, together with the Confidentiality Agreement which is hereby incorporated into this Agreement by reference, supersedes all prior agreements and understandings between the parties hereto and constitutes the entire agreement of the parties with respect to the matters contained herein.   **BUYER ACKNOWLEDGES ITS OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT CONTINUE AFTER THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT**.

17.9   <u>Survival</u>.  Acceptance by Buyer of the Conveyance Instrument will constitute an acknowledgement by Buyer that all of Seller's representations, covenants, and obligations under this Agreement and all conditions to Buyer's obligations to close under this Agreement have been performed, satisfied, and/or waived. Seller's representations, warranties, covenants, and obligations under this Agreement will not survive the Closing but will merge into the Conveyance Instrument, and will have no further force or effect after the Closing, except that those covenants of Seller under <u>paragraph 18.3</u>  of this Agreement that are expressly provided to be performed after the Closing will survive.  All representations, warranties, and covenants of obligations of Buyer under this Agreement will survive the Closing.   In addition, all representations, covenants, and obligations of Buyer under the Confidentiality Agreement will survive the termination or consummation of this Agreement.

17.10   <u>Time is of the Essence</u>.  Time is of the essence for this Agreement.

17.11   <u>No Recordation</u>.  This Agreement will not be recorded in any public office or court other than as part of the process of satisfying the Approval Condition or in connection with any HSR Act requirement, except that upon default it may be presented to a court of competent jurisdiction.

17.12   <u>State Specific Provisions:</u>

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

29

17.12.1  **With respect to Florida**: <u>Radon Gas</u>. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

17.12.2  Intentionally deleted.

## 18.0  <u>Escrow Agent</u>.

18.1  <u>Duties</u>. By signing a copy of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Upon its receipt of funds from Buyer, Escrow Agent will receive and hold such funds and interest, if any, accrued thereon, in trust to be disposed of in accordance with the provisions of this Agreement.

18.2  <u>Indemnity</u>. Escrow Agent will not be liable to any party except for claims resulting from the negligence or willful misconduct of Escrow Agent. If the escrowed funds or interest, if any, accrued thereon is involved in any controversy or litigation, the parties hereto will jointly and severally indemnify and hold Escrow Agent free and harmless from and against any and all loss, cost, damage, liability, or expense, including costs of reasonable attorneys' fees to which Escrow Agent may be put or which may incur by reason of or in connection with such controversy or litigation, except to the extent it is finally determined that such controversy or litigation resulted from Escrow Agent's negligence or willful misconduct. If the indemnity amounts payable herein result from the fault of Buyer or Seller (or their respective agents), the party at fault will pay, and hold the other party harmless against, such amounts. Otherwise, Buyer and Seller each will be responsible for one-half of such amounts.

18.3  <u>Dispute</u>. If a written objection is filed within the time allowed or if Escrow Agent is in doubt as to its duties, Escrow Agent may continue to hold the escrowed funds and interest, if any, accrued thereon until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court, or Escrow Agent may interplead the same in such court and be relieved of any and all liability therefor. In any action or proceeding regarding the escrowed funds or interest, if any, accrued thereon brought by Escrow Agent or to which Escrow Agent is made a party, the Escrow Agent will be entitled to recover its reasonable costs and attorneys' fees (through appeal) from whichever of Seller or Buyer is not the prevailing party in such action or proceeding. If there is no prevailing party, Seller and Buyer each will be responsible for one-half of such costs and fees.

18.4  <u>Execution by Escrow Agent</u>. Escrow Agent has executed this Agreement solely for the purpose of acknowledging and agreeing to the provisions of this <u>paragraph 18.0</u>. Escrow Agent's consent to and execution of any modification or amendment of this Agreement other than this <u>paragraph 18.0</u> will not be required.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

30

19.0 **Waiver of Jury Trial**.  Buyer and Seller each acknowledge and agree that the nature of this Agreement makes a jury determination of any dispute arising out of this Agreement or relating to the transaction contemplated herein undesirable. Accordingly, Buyer and Seller each knowingly, voluntarily, and intentionally waive any right to a trial by jury that either of them may have in any court with respect to any action relating to this Agreement or the transaction contemplated herein.

20.0 **Confidentiality**.  Buyer acknowledges and agrees that Seller is a beneficiary of the Confidentiality Agreement and is entitled to enforce all obligations of Buyer and exercise all rights and remedies of Winn-Dixie under such agreement, acting alone or acting jointly with Winn-Dixie.  The Confidentiality Agreement will be a continuing agreement of Buyer and Winn-Dixie, and will be applicable to the transaction that are the subject matter herein to the same extent as if the Confidentiality Agreement was fully incorporated into this Agreement.

21.0 **Consent to Jurisdiction.  THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTION AND THE INTERPRETATION, IMPLEMENTATION, AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.**

Buyer and Seller further agree that service of any process, summons, notice, or document by U.S. registered mail to any such party's respective address set forth in paragraph 17.1 of this Agreement will be effective service of process for any action, suit, or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.  Each of Buyer and Seller irrevocably and unconditionally waive any objection to the laying of venue of any action, suit, or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waive and agree not to plead or claim in such court that any such action, suit, or proceeding brought in such court has been brought in an inconvenient forum.  If a court finds that subject-matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Middle District of Florida, Jacksonville Division, or if such court will not have jurisdiction, then to the appropriate courts of the State of Florida sitting in Duval County, Florida.

22.0 **HSR Filings.**  The parties anticipate that the transaction contemplated herein is exempt from review and filing under the HSR Act.  However, if for any reason the transaction contemplated herein is determined to be subject to regulatory review and clearance or approval under the HSR Act, then either Buyer or Seller will have the right, exercisable prior to satisfaction of the Approval Condition by giving notice of such decision to the other within 5 Business Days after receiving written notice of such HSR Act requirements, to terminate this Agreement and thereafter neither of the parties will have any further rights or obligations hereunder; provided, however, that if Buyer is not then in breach of this Agreement, then Buyer will be entitled to the return from the Escrow Agent of the Deposit.  This termination right is not

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

31

exercisable after satisfaction of the Approval Condition. If neither party exercises its right of termination as provided above, or if such right of termination is no longer exercisable, then Seller and Buyer will seek regulatory approval or HSR clearance and prepare and submit, in a timely manner, all necessary filings for Seller and Buyer in connection with this Agreement under the HSR Act and the rules and regulations thereunder, and it will be a condition precedent to the obligations of both Buyer and Seller that all such required HSR Act approvals or clearance are obtained, as provided in paragraph 11.2 and paragraph 12.2 above. In such latter event, Seller and Buyer will request expedited treatment of such HSR Filing by the Federal Trade Commission, will make promptly any appropriate or necessary subsequent or supplemental filings, and will furnish to each other copies of all HSR Filings at the same time as they are filed with the appropriate governmental authority, except to the extent such party is legally restricted from providing or believes, based where appropriate on the advice of counsel, that it should not provide such copies, as Buyer's sole remedies, Seller will assign to Buyer any rights it may have, and is entitled to assign, to recover insurance proceeds, or to receive condemnation compensation and will promptly pay over and deliver to Buyer any such proceeds or compensation received by it.

23.0  **Disclaimers and Waivers.**

23.1  **NO RELIANCE ON DOCUMENTS.** **EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN PARAGRAPHS 6.0 AND 7.0 HEREOF (THE "CONTRACT WARRANTIES"), SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE TRUTH, ACCURACY, OR COMPLETENESS OF ANY MATERIALS, DATA, OR INFORMATION DELIVERED BY OR ON BEHALF OF SELLER TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY. BUYER ACKNOWLEDGES AND AGREES THAT ALL MATERIALS, DATA, AND INFORMATION DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY (WHETHER DELIVERED OR MADE AVAILABLE ORALLY, IN WRITING, IN ELECTRONIC FORMAT, OR ON THE MERRILL WEBSITE) ARE PROVIDED TO BUYER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF SUCH MATERIALS, DATA, OR INFORMATION BY BUYER WILL BE AT THE SOLE RISK OF BUYER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BUYER ACKNOWLEDGES AND AGREES THAT (A) ANY TITLE, ENVIRONMENTAL, ENGINEERING, SALES, FINANCIAL, OR OTHER REPORT WITH RESPECT TO THE ASSETS WHICH IS DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER WILL BE FOR GENERAL INFORMATIONAL PURPOSES ONLY, (B) BUYER WILL NOT HAVE ANY RIGHT TO RELY ON ANY SUCH REPORT DELIVERED BY SELLER OR ANY AFFILIATE TO BUYER, BUT RATHER WILL RELY ON ITS OWN INVESTIGATIONS AND ANY REPORTS COMMISSIONED BY BUYER WITH RESPECT THERETO, AND (C) NEITHER SELLER, ANY AFFILIATE OF SELLER, NOR THE PERSON WHICH PREPARED ANY SUCH REPORT DELIVERED OR MADE AVAILABLE BY SELLER, OR ANY AFFILIATE TO BUYER, WILL HAVE ANY LIABILITY TO BUYER FOR ANY INACCURACY IN OR OMISSION FROM ANY SUCH REPORT.**

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

32

23.2    **Disclaimers.**  EXCEPT FOR THE CONTRACT WARRANTIES,  BUYER UNDERSTANDS AND AGREES THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESSED OR IMPLIED, WITH RESPECT TO THE ASSETS, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ASSETS WITH LAWS, THE ABSENCE OR PRESENCE OF HAZARDOUS MATERIALS OR OTHER TOXIC SUBSTANCES (INCLUDING WITHOUT LIMITATION MOLD OR ANY MOLD CONDITION), COMPLIANCE WITH ENVIRONMENTAL LAWS, THE TRUTH, ACCURACY, OR COMPLETENESS OF ANY DOCUMENTS, MATERIALS, REPORTS, OR OTHER INFORMATION PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE TO BUYER, OR ANY OTHER MATTER OR THING REGARDING THE ASSETS. BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER WILL SELL AND CONVEY TO BUYER AND BUYER WILL ACCEPT THE ASSETS "<u>AS IS, WHERE IS, WITH ALL FAULTS</u>".  BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND NEITHER SELLER NOR ANY AFFILIATE IS LIABLE FOR OR BOUND BY, ANY EXPRESSED OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS, OR INFORMATION PERTAINING TO THE ASSETS OR RELATING THERETO PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER OR ANY AFFILIATE, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY, IN WRITING, IN ELECTRONIC FORMAT, OR ON THE MERRILL WEBSITE, OTHER THAN THE CONTRACT WARRANTIES.

BUYER ACKNOWLEDGES THAT BUYER'S ACCESS AND INSPECTION RIGHTS HAVE BEEN LIMITED AS SET FORTH IN THIS AGREEMENT AND THAT BUYER UNDERSTANDS THE RISKS ASSOCIATED WITH PURCHASING THE ASSETS ON THE BASIS OF SUCH LIMITED INVESTIGATIONS.  BUYER REPRESENTS TO SELLER THAT NOTWITHSTANDING SUCH LIMITATIONS BUYER HAS CONDUCTED SUCH INVESTIGATIONS AS BUYER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE ASSETS AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS MATERIALS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE ASSETS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION), AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AFFILIATES, AGENTS, OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN THE CONTRACT WARRANTIES. UPON CLOSING, BUYER WILL ASSUME THE RISK THAT ADVERSE MATTERS, INCLUDING, BUT NOT LIMITED TO,

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

33

CONSTRUCTION DEFECTS AND ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY BUYER'S INVESTIGATIONS, AND BUYER, UPON CLOSING, WILL BE DEEMED TO HAVE WAIVED, RELINQUISHED AND RELEASED SELLER AND SELLER'S AFFILIATES (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AND AGENTS) FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING CAUSES OF ACTION IN TORT OR UNDER ANY ENVIRONMENTAL LAW), LOSSES, DAMAGES, LIABILITIES (WHETHER BASED ON STRICT LIABILITY OR OTHERWISE), LOSSES, DAMAGES, LIABILITIES, COSTS, AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS) OF ANY AND EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, WHICH BUYER MIGHT HAVE ASSERTED OR ALLEGED AGAINST SELLER AND SELLER'S AFFILIATE'S (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AND AGENTS) AT ANY TIME BY REASON OF OR ARISING OUT OF ANY LATENT OR PATENT CONSTRUCTION DEFECTS OR PHYSICAL CONDITIONS, VIOLATIONS OF ANY APPLICABLE LAWS (INCLUDING, WITHOUT LIMITATION, ANY ENVIRONMENTAL LAWS), AND ANY AND ALL OTHER ACTS, OMISSIONS, EVENTS, CIRCUMSTANCES, OR MATTERS REGARDING THE ASSETS.

BUYER AGREES THAT SHOULD ANY INVESTIGATION, CLEANUP, REMEDIATION, OR REMOVAL OF HAZARDOUS SUBSTANCES OR OTHER ENVIRONMENTAL CONDITIONS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION) ON OR RELATED TO THE ASSETS BE REQUIRED AFTER THE DATE OF CLOSING, NEITHER SELLER NOR ANY AFFILIATE WILL HAVE ANY LIABILITY TO BUYER TO PERFORM OR PAY FOR SUCH INVESTIGATION, CLEAN-UP, REMOVAL, OR REMEDIATION, AND BUYER EXPRESSLY WAIVES AND RELEASES ANY CLAIM TO THE CONTRARY.

BUYER FURTHER ACKNOWLEDGES THAT (1) THE CONTRACT WARRANTIES WILL NOT SURVIVE THE CLOSING BUT WILL MERGE INTO THE CONVEYANCE INSTRUMENT, AND WILL HAVE NO FURTHER FORCE OR EFFECT AFTER THE CLOSING FOR SUCH STORE AND (2) THE LIABILITY OF SELLER UNDER OR WITH RESPECT TO THE CONTRACT WARRANTIES WILL BE LIMITED TO THE EXPRESS REMEDIES OF BUYER SET FORTH IN THIS AGREEMENT.

BUYER REPRESENTS AND WARRANTS THAT THE TERMS OF THE DISCLAIMERS, WAIVERS, AND RELEASES CONTAINED HEREIN AND THEIR CONSEQUENCES HAVE BEEN COMPLETELY READ AND UNDERSTOOD BY BUYER, AND BUYER HAS HAD THE OPPORTUNITY TO CONSULT WITH, AND HAS CONSULTED WITH, LEGAL COUNSEL OF BUYER'S CHOICE WITH REGARD TO THE TERMS OF SUCH DISCLAIMERS, WAIVERS, AND RELEASES. BUYER ACKNOWLEDGES AND WARRANTS THAT BUYER'S EXECUTION OF THESE DISCLAIMERS, WAIVERS, AND RELEASES IS FREE AND VOLUNTARY.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

34

23.3   <u>Effect and Survival of Disclaimers</u>.  Seller and Buyer acknowledge that the provisions of this <u>paragraph 23.0</u> are an integral part of the transaction contemplated in this Agreement and a material inducement to Seller to enter into this Agreement and that Seller would not enter into this Agreement but for the provisions of this <u>paragraph 23.0</u>.  Seller and Buyer agree that the provisions of this <u>paragraph 23.0</u> will survive Closing or any earlier termination of this Agreement.

[SIGNATURE PAGE FOLLOWS]

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

35

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Agreement as of the Effective Date.

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

Name: _____

By: _____
Name: _____
Title: _____

Name: _____

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**BUYER:**

**TROPICAL SUPERMARKET NO. . 16, INC.,**
a Florida corporation

Name: _Gaston R Alvarez_

By: _Pedro O Rodriguez_
Name: _Pedro O. Rodriguez_
Title: _President_

Name: _TERESA M. ALVAREZ_

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

36

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement as of the Effective Date.

| | |
|---|---|
| Signed, sealed and delivered in the presence of the following subscribing witnesses: | **SELLER:** |

**WINN-DIXIE STORES, INC.,**
a Florida corporation

_____

Name: _____

By: _____
Name: _____
Title: _____

_____

Name: _____

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**BUYER:**

**TROPICAL SUPERMARKET NO. 15, INC.,**
a Florida corporation

_____

Name: _____

By: _____
Name: _____
Title: _____

_____

Name: _____

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

36

Acknowledged and agreed this _____ day of _____, 2006 for the limited purposes set forth in paragraph 18.0 of this Agreement:

**ESCROW AGENT:**

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
Name: Douglas G. Stanford
Title:  Partner

Schedule of Exhibits

Exhibit A  –  Lease and Property Descriptions
Exhibit B  –  Allocation Schedule
Exhibit C  –  Form of Bill of Sale
Exhibit D  –  Form of Closing Statement
Exhibit E  –  Confidentiality Agreement
Exhibit F  –  Form of Conveyance Instrument
Exhibit G  –  Schedule of Excluded Personal Property
Exhibit H  –  Schedule of Permitted Encumbrances

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets
Winn-Dixie Store #205
May 17, 2006
SGRJAX\86041.1

37

<u>Store No.</u>:
   205

<u>LIST OF EXHIBITS</u>

Exhibit A  –   Leases and Property Descriptions
Exhibit B  –   Allocation Schedule
Exhibit C  –   Form of Bill of Sale
Exhibit D  –   Form of Closing Statement
Exhibit E  –   Confidentiality Agreement
Exhibit F  –   Form of Conveyance Instrument
Exhibit G  –   Schedule of Excluded Personal Property
Exhibit H  –   Schedule of Permitted Encumbrances

EXHIBIT A
To Asset Purchase Agreement

LEASES AND PROPERTY DESCRIPTIONS

WINN-DIXIE STORE # 205
Miami, Florida

Lease:          Lease dated October 30, 1995 between Miami Gardens Shopping Center Joint
                Venture, as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

                As evidenced by Short Form Lease dated October 30, 1995, recorded in Book
                16999, page 948, and also recorded in Book 17177, Page 2642, of the public
                records of Miami-Dade County, Florida.

Amendments:

                First Amendment of Lease dated August 2, 1996 between Landlord and
                Tenant; and

                Supplemental Lease Agreement dated July 17, 1997 between Landlord and
                Tenant.

Premises:       That certain store building and related improvements located at 18350 NW 7th
                Avenue, Miami, Miami-Dade County, Florida.

Legal Description:   The real property as more particularly described as follows:

                [SEE ATTACHMENT BELOW]

Exhibit A

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarket No. 15, Inc.
Store No. 205
May 17, 2006
SGRJAX\86042.1

EXHIBIT A
To Asset Purchase Agreement

STORE #205

PARCEL A

A portion of Tract G as shown on that certain Plat entitled NORWOOD THIRD ADDITION, SECTION 2, lying in the Southeast 1/4 of Section 2, Township 52 South, Range 41 East, and recorded in Plat Book 57, at Page 33, with the Public Records of Miami-Dade County, Florida, lying and being in Miami-Dade County, Florida, and being more particularly described as follows:

Commence at a point in the intersection of the West Right-of-Way line of Northwest 7th Avenue with the North Right-of-Way line of Northwest 183rd Street, as shown on said Plat of NORWOOD THIRD ADDITION, SECTION 2; thence run in a Westerly direction, along an extension of the said North Right-of-Way line of Northwest 183rd Street for 24.93 feet to the Point of Beginning; thence continue in a Westerly direction along the said North Right-of-Way line of Northwest 183rd Street for 596.36 feet to a point; thence run North at right angles to the said North Right-of-Way line of Northwest 183rd Street for 303.00 feet; thence run North 33 degrees 14 minutes 21 seconds West, for 172.17 feet; thence run North 46 degrees 04 minutes 56 seconds West, for 51.16 feet to a point in the Southeasterly Right-of-Way line of Northwest 183rd Drive as shown on that certain Plat of NORWOOD THIRD ADDITION SECTION 2; thence run North 44 degrees 53 minutes 04 seconds East along the said Southeasterly Right-of-Way line of Northwest 183rd Drive for 373.85 feet to a point of curvature; thence run in a Northeasterly and Easterly direction along a circular curve to the right having a radius of 25 feet and a central angle of 76 degrees 29 minutes 01 seconds for an arc distance of 33.37 feet to a point of reverse curvature; thence run in a Southeasterly direction along a circular curve to the left coincident with the South Right-of-Way line of Northwest 185th Street as shown on that certain Plat of NORWOOD THIRD ADDITION, SECTION 2, having a radius of 600 feet and a central angle of 15 degrees 57 minutes 54 seconds for an arc distance of 167.19 feet to a point; thence run South 20 degrees 21 minutes 09 seconds East, for 186.12 feet to a point; thence run North 76 degrees 29 minutes 35 seconds East, for 139.36 feet; thence run North 89 degrees 57 minutes 29 seconds East, for 125 feet to a point in the aforesaid West Right-of-Way line of Northwest 7th Avenue; thence run South 0 degrees 09 minutes 42 seconds West along the said West Right-of-Way line of Northwest 7th Avenue for 513.87 feet to a point of curvature; thence run in a Southwesterly direction along a circular curve to the right, having a radius of 25 feet and a central angle of 89 degrees 50 minutes 18 seconds for an arc distance of 39.20 feet to the Point of Beginning.

LESS AND EXCEPT

A portion of Tract G of the Plat of NORWOOD THIRD ADDITION SECTION 2, as recorded in Plat Book 57, at Page 33, of the Public Records of Miami-Dade County, Florida, lying in the Southeast one-quarter (S.E. 1/4) of Section 2, Township 52 South, Range 41 East, Miami-Dade County, Florida, and being more particularly described as follows:

Exhibit A

EXHIBIT A (Cont'd.)
To Asset Purchase Agreement
STORE #205

That portion of external area of a 9.600 meter (31.50 foot) radius circular curve, concave to the Northwest, tangent to the East and South line of said Tract G, Less that contained external area formed by a 7.620 meter (25.00 foot) radius circular curve, concave to the Northwest, and tangent also to the East and South lines of said Tract G.

AND

A portion of Tract G, NORWOOD 3RD ADDITION SECTION 2, as recorded in Plat Book 57, Page 33 of the Public Records of Miami-Dade County, Florida, being more particularly described as follows:

Commence at the Point of Intersection of the East and South lines of said Tract G; thence South 89 degrees 50 minutes 18 seconds West along the South line of said Tract G for 232.93 feet to the Point of Beginning of the following described parcel of land; thence continue South 89 degrees 50 minutes 18 seconds West along the last described course for 162.00 feet; thence North 00 degrees 09 minutes 42 seconds West for 195.00 feet; thence North 89 degrees 50 minutes 18 seconds East along a line 195.00 feet North of and parallel to the South line of said Tract G for 162.00 feet; thence south 00 degrees 09 minutes 42 seconds East for 195.00 feet to the Point of Beginning, all lying and being in Miami-Dade County, Florida.

PARCEL B

A portion of Tract G of that certain Plat of NORWOOD THIRD ADDITION SECTION 2, as recorded in Plat Book 57, at Page 33 of the Public Records of Miami-Dade County, Florida, being more particularly described as follows:

Commence at the intersection of the West Right-of-Way line of Northwest 7th Avenue with the North Right-of-Way line of Northwest 183rd Street as shown on said Plat of NORWOOD THIRD ADDITION, SECTION 2 and run North 0 degrees 09 minutes 42 seconds East along the West Right-of-Way line of Northwest 7th Avenue for 538.80 feet; thence South 89 degrees 57 minutes 29 seconds West along a line parallel with and 125.00 feet South of the North line of the aforementioned Tract G, for 125.00 feet to the Point of Beginning of the following described parcel; thence North 0 degrees 09 minutes 42 seconds East parallel with the aforesaid West Right-of-Way line of Northwest 7th Avenue for 125.00 feet; thence South 89 degrees 57 minutes 29 seconds West for 21.00 feet to a Point of Curvature; thence Northwesterly along a circular curve to the right, having a radius of 600.00 feet and a central angle of 15 degrees 57 minutes 54 seconds, for an arc distance of 162.09 feet (said last mentioned two courses being coincident with the Northerly boundary of the aforementioned Tract G); thence South 20 degrees 21 minutes 09 seconds East for 186.12 feet; thence North 76 degrees 29 minutes 35 seconds East for 119.36 feet to the Point of Beginning, lying and being in Miami-Dade County, Florida.

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarket No. 15, Inc.
Store No. 205
May 17, 2006
SGRJAX\86042.1

<u>EXHIBIT B</u>
To Asset Purchase Agreement

<u>ALLOCATION SCHEDULE</u>

| <u>Asset Description</u> | <u>Purchase Price</u> | <u>Initial Deposit</u> [1] | <u>Second Deposit</u> [2] |
|---|---|---|---|
| LEASE/EQUIPMENT/FIXTURES | $100,000.00 | $35,000.00 | $65,000.00 |

---

[1] **The Initial Deposit shall be the greater of (i) $35,000 or (ii) 10% of the Purchase Price.**

[2] **The Second Deposit shall be the greater of (i) $65,000 or (ii) 20% of the Purchase Price.**

Exhibit B

EXHIBIT C
To Asset Purchase Agreement

FORM OF BILL OF SALE

### BILL OF SALE

**WINN-DIXIE STORES, INC.,** a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2006, among **TROPICAL SUPERMARKET NO. 15, INC.,** a Florida corporation ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign, and convey unto Buyer all of Seller's right, title, and interest in the Assets described in the Agreement (other than the Leases and any sublease or permit, which are subject to separate instruments of conveyance and assignment), relating to Seller's store location as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement.  All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

This conveyance is made pursuant to the order of the Bankruptcy Court in *In re Winn-Dixie Stores, Inc., et al.,* Case No. 05-11063 (RDD)(Jointly Administered), United States Bankruptcy Court, Middle District of Florida, Jacksonville Division.

**IN WITNESS WHEREOF,** Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of May, 2006.

"SELLER"

**WINN-DIXIE STORES, INC.,** a Florida corporation

By:      _____
Name:  _____
Title:    _____

Exhibit C