<u>EXHIBIT D</u>
To Asset Purchase Agreement

<u>FORM OF CLOSING STATEMENT</u>

(Excel Spreadsheet Schedule D.XLS)

[ATTACHED BELOW]

Exhibit D

### Exhibit D - Form of Closing Statement

### CLOSING STATEMENT

**SELLER/ASSIGNOR:**   Winn-Dixie _____, Inc., a Florida corporation

**BUYER/ASSIGNEE:**

**TRANSACTION:**   Acquisition of Leasehold Interests and Related Assets

**PURCHASE PRICE:**

Store #_____   $   -

Store #_____   $_____ -

**TOTAL PURCHASE PRICE:**   $   -

**CLOSING DATE:**   _____, 2006

### SELLER'S STATEMENT

**Purchase Price:**   $   -

**Total Purchase Price:**   $   -

**Less Adjustments:**

1. Seller's Prorated Share of Taxes and
   Other Charges Payable Under Leases (1)   $   -

   **Total Adjustments:**   $   -   $   -

**Plus Adjustments:**

1. Seller's Prorated Share of _____ 2006
   Rents, and Other Charges Paid in Advance
   Under Leases (2)   $   -

   **Total Adjustments:**   $   -   $   -

**Less Closing Costs to be Paid by Seller:**

1. Seller's Attorneys' Fees & Costs   P.O.C.
   (Smith, Gambrell & Russell, LLP)
2. Seller's Brokers Fees   P.O.C.
   (The Food Partners)
3. Seller's Brokers Fees   P.O.C.
   (DJM Asset Management, LLC)

   **Total Seller's Closing Costs:**   P.O.C.   P.O.C.

**TOTAL AMOUNT DUE TO SELLER:**   $   -

## BUYER'S STATEMENT

| | | |
|---|---|---|
| **Purchase Price:** | | $ — |
| **Total Purchase Price:** | | $ — |
| **Less Adjustments:** | | |
| 1. Earnest Money Deposit with Escrow Agent | $ — | |
| 2. Seller's Prorated Share of Taxes and Other Charges Payable Under Leases (1) | $ — | |
| **Total Adjustments:** | $ — | $ — |

| | | |
|---|---|---|
| **Plus Adjustments:** | | |
| 1. Seller's Prorated Share of _____ 2006 Rents, and Other Charges Paid in Advance Under Leases (3) | $ — | |
| **Total Adjustments:** | $ — | $ — |

| | | |
|---|---|---|
| **Plus Closing Costs to be Paid by Buyer:** | | |
| 1. Buyer's Attorney's Fees & Costs | P.O.C. | |
| 2. Title Examination/Commitment Fees (3) (First American Title Insurance Company) | $ — | |
| 3. Title Insurance Premiums (Leasehold) (3) (First American Title Insurance Company) | $ — | |
| 4. Recording/Filing Fees (First American Title Insurance Company) | $ — | |
| 6. Surveyor's Fees (4) ( _____ ) | $ — | |
| 7. Environmental Site Assessment Fees ( _____ ) | $ — | |
| 8. Documentary/Transfer Taxes (First American Title Insurance Company) | $ — | |
| **Total Buyer's Closing Costs:** | $ — | $ — |
| **AMOUNT DUE FROM BUYER:** | | $ — |
| **DEPOSIT DUE FROM ESCROW AGENT:** | | $ — |
| **TOTAL AMOUNT DUE AT CLOSING:** | | $ — |

60391

Exhibit I-1
2 of 6

Winn-Dixie Stores, Inc. S/T_____

Closing Statement

5/18/2006

The undersigned parties acknowledge and agree to the foregoing Closing Statement as of this
_____ day of _____, 2006, and hereby authorize Smith, Gambrell & Russell, LLP,
as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER/ASSIGNOR:**                              **BUYER/ASSIGNEE:**

**WINN-DIXIE** _____, **INC.**, a Florida    _____

corporation                                        a _____ corporation

By:_____                       By:_____

Name:_____                       Name:_____

Title: _____ President                   Title: _____ President

**Notes:**

(1) <u>2006 Prorations - Amounts Not Yet Paid and Payable</u>. Prorations are based on (i) estimate of 2006 real estate taxes derived from actual 2005 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2006 common area maintenance charges derived from actual 2005 amounts paid by Seller in arrears in accordance with applicable leases. <u>All prorated amounts are hereby stipulated as final, and shall not be subject to readjustment after closing, notwithstanding that actual amounts when available may differ from the stipulated amounts herein</u>. Buyer shall be responsible for the payment of such charges for 2006 and accruing from and after the closing date and subsequent years. Prorations are as follows:

**Real Estate Taxes**

| Store #_____ | | | | Totals |
|---|---|---|---|---|
| - 2006 Real Estate Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| Store #_____ | | | | |
| - 2006 Real Estate Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| **Total Real Estate Taxes:** | | | $ | - |

**Personal Property Taxes**

| Store #_____ | | | | |
|---|---|---|---|---|
| - 2006 Personal Property Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| Store #_____ | | | | |
| - 2006 Personal Property Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| **Total Personal Property Taxes:** | | | $ | - |

**CAM Charges**

| Store #_____ | | | | |
|---|---|---|---|---|
| - 2006 CAM Charges | $ | - | | |
| - Per Diem Amount | $ | - | | |
| - Seller's Share of 2006 CAM Charges | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| Store #_____ | | | | |
| - 2006 CAM Charges | $ | - | | |
| - Per Diem Amount | $ | - | | |
| - Seller's Share of 2006 CAM Charges | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| **Total CAM Charges:** | | | $ | - |
| **Total Amount of Seller's Prorated Share of 2006 Prorations:** | | | $ | - |

(2) <u>2006 Prorations - Amounts Previously Paid by Seller</u>.  Prorations are based on
_____, 2006 rents, insurance and other charges previously paid by Seller in
accordance with applicable leases.  Buyer shall be responsible for the payment of such
charges that become due and payable for _____, 2006 and thereafter.
Prorations are as follows:

**<u>Rent</u>**

| Store # ____ | | | Totals |
|---|---|---|---|
| - Total _____, 2006 rent paid: | $        - | | |
| - Per diem rent: | $        - | | |
| - Buyer's prorated share | | | |
|   (__/__/06 - __/__/06) (_____ days) | $ _____ - | $ | - |
| Store # ____ | | | |
| - Total _____, 2006 rent paid: | $        - | | |
| - Per diem rent: | $        - | | |
| - Buyer's prorated share | | | |
|   (__/__/06 - __/__/06) (_____ days) | $ _____ - | $ | - |
| **Total Amount of Buyer's Prorated Share of Prorations:** | | **$** | **-** |

(3) <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination
fees and title insurance premiums, are as follows:

| Store # ____ | | | Totals |
|---|---|---|---|
| - Title Search Fees and Costs | $        - | | |
| - Title Premium | $ _____ - | $ | - |
| Store # ____ | | | |
| - Title Search Fees and Costs | $        - | | |
| - Title Premium | $ _____ - | $ | - |
| **Total Amount of Title Fees and Expenses:** | | **$** | **-** |

(4) <u>Survey Fees</u>.  Survey fees are as follows:

| Store # ____ | $        - | | |
|---|---|---|---|
| Store # ____ | $ _____ - | | |
| **Total Survey Fees:** | | **$** | **-** |

(5) <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the
respective utility companies.  Seller will be responsible for payment of any portion of any
utility charges attributable to utility service (including telephone service) provided through
and including the date hereof.  Buyer will be responsible for payment of any new utility
deposits which may be assessed by the respective utility companies and for payment of
any portion of such utility charges attributable to utility service provided subsequent to
the date hereof.  The party responsible for each share of such utility charges shall pay
such charges promptly and without demand therefor.  Each party agrees to indemnify and
hold harmless the other party from and against liability for payment of the first party's
share of such utility charges.

(6) <u>Capitalized Terms</u>.  Capitalized terms used herein shall have the meanings ascribed to
them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

RECEIPTS:

|     |                               |     |     |     |     |
|-----|-------------------------------|-----|-----|-----|-----|
| 1.  | Deposit Due from Escrow Agent | $   | -   |     |     |
| 2.  | Cash Due from Buyer           | $   | -   |     |     |

TOTAL CASH RECEIVED:                            $        -        $        -

DISBURSEMENTS:

| 1. | _____ | $ | - |
|----|------------------------------|---|---|
|    | (Survey Fees)                |   |   |
| 2. | _____ | $ | - |
|    | (Environmental Site Assessment Fees) |   |   |
| 3. | First American Title Insurance Company | $ | - |
|    | (Title Premium & Costs, Taxes and Recdg.) |   |   |
| 4. | Winn-Dixie Stores, Inc.     | $ | - |
|    | (Seller's Proceeds)         |   |   |

TOTAL DISBURSEMENTS:                            $        -

<u>EXHIBIT E</u>
To Asset Purchase Agreement

<u>CONFIDENTIALITY AGREEMENT</u>


[ATTACHED BELOW]

Exhibit E

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarkets, LLC
Store No. 205
May 9, 2006
SGRJAX\86042.1



March 3, 2006

Tropical Supermarkets (the "Prospective Purchaser")
Address _2828 CORAL WAY, ST 300_
City, State Zip _MIAMI - FL  33145_


Attention: Pedro O. Rodriguez

RE:      Winn-Dixie Stores, Inc./Project Panther 06 - Possible Transaction with Prospective Purchaser –
         Confidentiality Letter Agreement

Ladies and Gentlemen:

This letter sets forth specific terms with respect to information provided to the Prospective Purchaser, or
to be provided to the Prospective Purchaser, by Winn-Dixie Stores, Inc. or one or more of its direct or
indirect wholly-owned subsidiaries (collectively, the "Company"). The Prospective Purchaser is
considering a possible acquisition of certain assets of the Company as described on the internet website
maintained by Merrill Corporation (the "Merrill Web Site") on behalf of the Company under the name
"Project Panther 06" (the "Assets"), by a sale of assets or otherwise (a "Transaction"). The Prospective
Purchaser has requested certain information concerning the Company and the Assets.

As a condition to the Company furnishing the Prospective Purchaser with such information, including
any Confidential Information Memorandum prepared by the Company, the Prospective Purchaser
agrees, in its entity capacity, and on behalf of its officers, directors, shareholders, partners, members,
managers and employees (collectively, the "Purchaser Parties") to consider and treat all Evaluation
Material as strictly confidential, in accordance with the provisions of this letter. The term "Evaluation
Material" shall mean:

(a)      any information concerning the Assets or the Company that is furnished to the Prospective
         Purchaser by or on behalf of the Company, whether furnished before or after the date of this
         letter and whether furnished on the Merrill Web Site, or otherwise in writing, orally,
         electronically, or by other means; and

(b)      any analyses, compilations, studies or other documents prepared by the Purchaser Parties or any
         of the Prospective Purchaser's contractors, agents or advisers (including, without limitation,
         attorneys, accountants, consultants, bankers, financial advisers and any representatives of your
         advisers) (collectively, the "Representatives") that contain or otherwise reflect such information;

(c)      but excluding, information that (a) was or becomes generally available to the public other than as
         a result of a disclosure by the Purchaser Parties or the Representatives or (b) was or becomes
         available to the Prospective Purchaser on a non-confidential basis from a source other than the
         Company or its advisers, provided that such source was not known by the Prospective Purchaser
         to be bound by any letter with the Company to keep such information confidential or to
         otherwise be prohibited from transmitting the information to the Prospective Purchaser by a
         contractual, legal or fiduciary obligation.


Winn-Dixie Stores, Inc.    5050 Edgewood Court    P.O. Box B    Jacksonville, Florida  32203-0297    (904) 783-5000

Tropical Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 2

The Prospective Purchaser hereby agrees that the Evaluation Material shall be used solely for the purpose of evaluating a possible Transaction between the Company and the Prospective Purchaser, and that such information shall be kept confidential by the Purchaser Parties and the Representatives, except to the extent that disclosure of such information (a) has been consented to in writing by the Company, (b) is required by law, regulation, supervisory authority or other applicable judicial or governmental order or (c) is made to the Representatives who need to know such information for the purpose of evaluating any such possible Transaction between the Company and the Prospective Purchaser (it being understood that the Representatives shall have been advised of this letter and shall have agreed to be bound by the provisions hereof). In any event, the Prospective Purchaser shall be responsible for any breach of this letter by any of the Purchaser Parties or the Representatives and the Prospective Purchaser agrees, at the Prospective Purchaser's sole expense, to take all reasonable measures (including but not limited to court proceedings) to restrain the Purchaser Parties and the Representatives from prohibited or unauthorized disclosure or use of the Evaluation Material.

In addition, without the prior written consent of the Company, the Prospective Purchaser shall not disclose, and shall direct the Purchaser Parties and the Representatives not to disclose, to any person:

(a)     that the Evaluation Material has been made available to the Purchaser Parties or the Representatives;

(b)     that discussions or negotiations are taking place concerning a possible Transaction between the Company and the Prospective Purchaser, or

(c)     any terms, conditions or other facts with respect to any such possible Transaction, including the status thereof or any announcement of the existence of a Transaction.

In the event that any of the Purchaser Parties or the Representatives are requested or required by law, regulation, supervisory authority or other applicable judicial or governmental order to disclose any Evaluation Material, the Prospective Purchaser shall provide the Company with prompt written notice of such request or requirement so that the Company may seek an appropriate protective order. If, failing the entry of a protective order, the Purchaser Parties or the Representatives are, in the written opinion of the Prospective Purchaser's counsel, compelled to disclose Evaluation Material, then the Prospective Purchaser may disclose that portion of the Evaluation Material that the Prospective Purchaser's legal counsel advises that the Purchaser Parties or the Representatives are compelled to disclose; provided, however, that in making such disclosure, the Prospective Purchaser shall exercise reasonable efforts to obtain assurance that confidential treatment shall be accorded to that portion of the Evaluation Material that is being disclosed. In any event, the Prospective Purchaser shall not oppose action by the Company to obtain an appropriate protective order or other reliable assurance that confidential treatment shall be accorded the Evaluation Material.

If any Purchaser Party or Representative is contacted, whether orally or in writing, by the United States Department of Justice or the Federal Trade Commission, or any similar state governmental authority, with respect to a Transaction that is the subject matter of this letter, then such party shall promptly notify the Company of such contact and describe the facts and circumstances thereof.

The Prospective Purchaser agrees that neither the Purchaser Parties nor any Representatives shall initiate or maintain contact with any third party in interest in the Assets or real and personal property related thereto, including any landlord, lender, subtenant, contractor or licensee, or (except for those contacts made in the ordinary course of business) with any officer, director or employee of the Company

Tropical Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 3

regarding the business, operation, prospects or finances of the Company or the Assets, except with the express permission of the Company or its legal counsel.

For one (1) year from the date hereof, the Purchaser Parties shall not directly or indirectly solicit for employment or employ any employee of the Company to whom the Purchaser Parties or the Representatives had been directly or indirectly introduced or otherwise became aware of as a result of the Prospective Purchaser's consideration of a Transaction, as long as such employees continue to be employed by the Company. Notwithstanding the foregoing, nothing herein shall restrict or preclude the Prospective Purchaser's ability to make generalized searches for employees by use of advertisements in any medium or to hire any individual responding to such advertisements.

The Prospective Purchaser hereby acknowledges that the Prospective Purchaser is aware and that the Prospective Purchaser shall advise the Purchaser Parties and the Representatives that federal and state securities laws prohibit any person who has material, non-public information about a company from purchasing or selling securities of such a company or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

All Evaluation Material disclosed by the Company shall be and shall remain the property of the Company. Within five (5) business days after being so requested by the Company, the Purchaser Parties and the Representatives shall return all tangible Evaluation Material furnished to the Prospective Purchaser by the Company. Except to the extent a party is advised in writing by counsel that such destruction is prohibited by law, following the Company's request, the Purchaser Parties and the Representatives shall destroy all other Evaluation Material, including written material, memoranda, notes, copies, excerpts and other writings or recordings whatsoever prepared by the Purchaser Parties or the Representatives. Any destruction of materials shall be confirmed by the Prospective Purchaser in writing to the Company, including an itemization of the specific materials destroyed, the medium in which such materials were recorded, and the method of such destruction. Any Evaluation Material that is not returned or destroyed, including without limitation any oral Evaluation Material, shall remain subject to the confidentiality obligations set forth in this letter.

You understand and acknowledge that any and all information contained in the Evaluation Material is being provided without any representation or warranty, express or implied, as to the accuracy or completeness of the Evaluation Material, on the part of the Company. You agree that none of the Company or any of its directors, officers, stockholders, owners, affiliates, agents, or representatives shall have any liability to you or any of your Representatives. It is understood that the scope of any representations and warranties to be given by the Company shall be negotiated along with other terms and conditions in arriving at a mutually acceptable form of definitive agreement should discussions between you and the Company progress to such a point.

The Prospective Purchaser agrees that unless and until a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser has been executed, neither the Company nor the Prospective Purchaser shall be under any legal obligation of any kind whatsoever with respect to such a Transaction by virtue of this letter except for the matters specifically agreed to herein. The Prospective Purchaser further acknowledges and agrees that the Company reserves the right, in its sole discretion, to reject any and all proposals made by the Purchaser Parties or the Representatives with regard to a Transaction between the Company and the Prospective Purchaser, and to terminate discussions and negotiations with the Prospective Purchaser at any time prior to entry into a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser.

Tropical Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 4

The Prospective Purchaser acknowledges and agrees that, at any time prior to entry into a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser:

(a)    the Company shall be free to conduct any process with respect to a possible Transaction as the Company in its sole discretion shall determine (including, without limitation, by negotiating with any prospective party and entering into a definitive written agreement without prior notice to the Prospective Purchaser or any other person, and by making the Merrill Web Site and other Evaluation Materials available for review by others);

(b)    any procedures relating to such Transaction may be changed at any time without notice to the Prospective Purchaser or any other person; and

(c)    the Prospective Purchaser shall not have any claim whatsoever against the Company or any of its directors, officers, stockholders, owners, affiliates, agents or representatives, arising out of or relating to any possible or actual Transaction (other than those pursuant to this letter or as against parties to a definitive written agreement between the Company and the Prospective Purchaser in accordance with the terms thereof).

If the Company and the Prospective Purchaser enter into a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser, then the terms of this letter nonetheless shall be deemed continuing, and shall be incorporated into such definitive agreement by reference; provided, however, that to the extent the terms of this letter and the terms of the definitive agreement are in conflict or are inconsistent, the terms of the definitive agreement shall be controlling.

It is understood and agreed that money damages would not be a sufficient remedy for any breach of this letter and that, in the event of a breach of this letter by any of the Purchaser Parties or the Representatives, the Company shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach. The Prospective Purchaser further agrees to waive any requirement for the security or posting of any bond in connection with any such remedy available to the Company. Such remedy shall not be deemed to be the exclusive remedy for breach of this letter but shall be in addition to all other remedies available at law or equity to the Company.

In the event of litigation relating to this letter, if a court of competent jurisdiction determines in a final, non-appealable order that any Purchaser Party or Representative has breached this letter, then the Prospective Purchaser shall be jointly and severally liable with such breaching party and shall pay to the Company the reasonable legal fees and actual costs that the Company incurred in connection with such litigation, including any appeal therefrom.

All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this letter shall conform to the requirements below and shall be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number or by attachment to an e-mail transmission to the recipient's e-mail address and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if given by e-mail transmission when confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iv) if delivered by United States Mail, three days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (v) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same, addressed to the Company

Tropical Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 5

or the Prospective Purchaser at their respective addresses stated below:

    If to the Company:

        Winn-Dixie Stores, Inc.
        c/o The Food Partners, LLC
        1250 Eye Street NW, Suite 850
        Washington, DC 20005
        Attention: Matthew Morris, Principal
        Telefax No. 202 589 0433
        e-mail: msmorris@thefoodpartners.com

    With a copy to:

        Winn-Dixie Stores, Inc.
        5050 Edgewood Court
        Jacksonville, Florida 32254-3699
        Attn: Office of General Counsel
        Telefax No. 904 783 5651
        e-mail: larryappel@winn-dixie.com

    If to the Prospective Purchaser:

        TROPICAL SUPERMARKETS
        2828 CORAL WAY, ST 300
        MIAMI, FL 33145
        Telefax No. 305-442-
        e-mail: FAULTO@Bellsouth.net

    With a copy to:

        GASTON R. ALVAREZ, ESq.
        2701 LeJeune Rd. Sk 407
        Coral Gables, FL 33134
        Telefax No. 305.461-9109
        e-mail: AGASTON@bellsouth.net

or such other address as any party may from time to time specify by notice to the other.

This letter is for the benefit of the Company and is governed by the laws of the State of Florida without regard to conflict of laws principles. Any action brought in connection with this letter shall be brought in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, and the parties hereto hereby irrevocably consent to the jurisdiction of such court.

This letter may not be amended except in writing signed by both parties hereto. No failure or delay by the Company in exercising any right hereunder or any partial exercise thereof shall operate as a waiver thereof or preclude any other or further exercise of any right hereunder. The invalidity or unenforceability of any provision of this letter shall not affect the validity or enforceability of any other provisions of this letter, which shall remain in full force and effect.

Tropical Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 6

This letter may be executed in counterparts (including by means of telecopied signature pages). Please confirm that the foregoing is in accordance with your understanding of our letter by signing and returning a copy of this letter to The Food Partners, LLC. Your correspondence with The Food Partners, LLC, should be directed as follows:

> Winn-Dixie Stores, Inc. – Project Panther 06
> c/o The Food Partners, LLC
> 1250 Eye Street, NW, Suite 850
> Washington, DC 20005
> Attention: Matthew Morris, Principal
> Telefax No. 202 589 0433
> e-mail: msmorris@thefoodpartners.com

Upon your delivery of an acknowledged copy of this letter as provided above, this letter shall constitute the valid and binding agreement of the Company and the Prospective Purchaser, and referred to as the "Confidentiality Letter Agreement."

Sincerely,

THE COMPANY:

WINN-DIXIE STORES, INC.


By: _____
Name: Larry B. Appel
Title: Senior Vice President and General Counsel


ACKNOWLEDGED AND AGREED as of the date first set forth above

THE PROSPECTIVE PURCHASER:

TROPICAL SUPERMARKET
[Prospective Purchaser Name]
a Florida Corporation
[state of formation, business entity type]

By: _Pedro O Rodriguez_
Name: PEDRO O. RODRIGUEZ
Title: PRESIDENT

Confidentiality Letter Agreement
Winn-Dixie Stores, Inc. – Project Panther 06

EXHIBIT F
To Asset Purchase Agreement

FORM OF CONVEYANCE INSTRUMENT

**ASSIGNMENT AND ASSUMPTION OF LEASE**
[Store #205]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of [x], 2006 (the "Effective Date"), by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Assignor"), and **TROPICAL SUPERMARKET NO. 15., Inc.**, a Florida corporation ("Assignee").

**R E C I T A L S :**

A.       Assignor, as Seller, and Assignee, as Buyer, are parties to that certain Asset Purchase Agreement dated effective _____ _____, 2006, as amended from time to time (the "Agreement"), pursuant to which Assignor has agreed to sell and assign, and Assignee has agreed to purchase and assume, certain assets in connection with Assignor's retail supermarket store location described on attached Schedule A (the "Premises").

B.       Under the Agreement, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title, and interest, as tenant or lessee, in and to the Premises pursuant to that certain Lease, together with any and all amendments thereto, as described on the attached Schedule A (the "Lease"), and all of Assignor's right, title, and interest as sublandlord or sublessor, in and to the subleases, together with all amendments thereto, described on Schedule A (the "Subleases"), if any; and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Subleases from and after the Effective Date, all subject to and in accordance with the terms of the Lease, the Subleases, the Agreement, and this Assignment.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.       **EFFECTIVE DATE**.  This Assignment shall be effective as of the Effective Date.

2.       **ASSIGNMENT**.

    (a)       Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest, and obligation as tenant or lessee in and to the Lease and all of the rights, benefits, and privileges of the tenant or lessee thereunder.

    (b)       Assignor hereby assigns, transfers, and conveys unto Assignee all of

Exhibit F

Assignor's right, title, interest and obligation as sublandlord or sublessor in and to the Subleases and all of the rights, benefits, and privileges of the sublandlord or sublessor thereunder.

3. **ASSUMPTION; ACCEPTANCE OF PREMISES.**

(a) Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies and agrees to save, insure, defend, and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b) Assignee hereby accepts the aforesaid assignment of the Subleases and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Subleases from and after the Effective Date, and Assignee hereby indemnifies and agrees to save, insure, defend, and hold harmless Assignor from and against all liabilities and obligations of the sublandlord or sublessor that accrue under the Subleases on or after the Effective Date.

(c) Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections, and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate. Assignee acknowledges that the Premises is being assigned to Assignee in "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters, and rules and regulations. Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections, and investigations of the Premises and has not relied and will not rely on any representations of Assignor. Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives, or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or its fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4. **NOTICES.**   All notices, requests, demands, offers, and other communications required or permitted to be given pursuant to this Agreement will conform to the requirements of this paragraph 4 and will be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next Business Day after

EXHIBIT F

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarket No. 15, Inc.
Store No. 205
May 17, 2006
SGRJAX\86042.1

confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if delivered by United States Mail, 3 days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; or (iv) if given by nationally recognized or reputable overnight delivery service, on the next Business Day after receipted deposit with same, addressed to Seller or Buyer at their respective addresses stated below:

>       If to Assignor:
>
>       Winn-Dixie Stores, Inc.; Re: Store #205
>       5050 Edgewood Court
>       Jacksonville, FL 32254-3699
>       Attn: Chief Financial Officer
>       Telefax No.: 904/783-5646
>
>       With a copy to:
>
>       Winn-Dixie Stores, Inc.
>       5050 Edgewood Court
>       Jacksonville, FL 32254-3699
>       Attn: Office of General Counsel
>       Telefax No.: 904/783-5641
>
>       If to Assignee:
>
>       _____
>       _____
>       _____
>       Attn: _____
>       Telefax No. _____
>
>       With a copy to:
>
>       _____
>       _____
>       _____
>       Attn: _____
>       Telefax No. _____

or such other address as any party may from time to time specify by notice to the other.

5.    **NOTICE OF ASSIGNMENT**.  Promptly following the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title, and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in

EXHIBIT F

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarket No. 15, Inc.
Store No. 205
May 17, 2006
SGRJAX\86042.1

this Assignment.

6.     **BINDING EFFECT**.  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7.     **FURTHER ASSURANCES**.  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

8.     **ATTORNEYS' FEES**.  If Assignor becomes a party to any suit or proceeding affecting the Premises or involving this Assignment or Assignee's interest under this Assignment, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Assignment, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Assignment, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand.  All references in this Assignment to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment and appellate levels and in connection with bankruptcy proceedings.

9.     **WAIVER OF JURY TRIAL**.  Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease, and the Subleases makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease, or the Subleases undesirable.  Accordingly, Assignor and Assignee each knowingly, voluntarily, and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease, or the Subleases.

[SIGNATURES TO FOLLOW]

EXHIBIT F

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed, and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

_____
Name:_____

By:     _____
Name: _____
Title:  _____
               [CORPORATE SEAL]

_____
Name:_____


STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me under oath on this _____ day of _____, 2006 by _____, the _____ of Winn-Dixie _____, Inc., a Florida corporation, on behalf of the corporation, who is personally known to me.


                                  _____
                                    Notary Public, State of Florida
                                    Seal:

EXHIBIT F

Signed, sealed, and delivered
in the presence of:

**ASSIGNEE:**

**TROPICAL SUPERMARKET NO. 15, INC.,**
a Florida corporation

_____
Name:_____

By:     _____
Name: _____
Title:   _____
                [CORPORATE SEAL]

_____
Name:_____


STATE OF _____
COUNTY OF _____

The foregoing instrument was acknowledged before me under oath on this _____ day of _____, 2006 by _____, the _____ of [Y], Inc., a [z] corporation, on behalf of the corporation, (  ) who is personally known to me or (  ) who produced _____ as identification.

_____
Notary Public, State of _____
Seal:


EXHIBIT F

<u>SCHEDULE A</u>
To Assignment and Assumption of Leases

<u>DESCRIPTION OF PREMISES AND LEASE</u>


<u>STORE #</u>:

<u>STREET ADDRESS</u>:

<u>SHOPPING CENTER</u>:

<u>LEASE</u>:



<u>AMENDMENTS TO LEASE</u>:



<u>SUBLEASES</u>:


<u>AMENDMENTS TO SUBLEASES</u>:


EXHIBIT F

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarket No. 15, Inc.
Store No. 205
May 17, 2006
SGRJAX\86042.1

EXHIBIT G
to Asset Purchase Agreement

SCHEDULE OF EXCLUDED PERSONAL PROPERTY

(a)   Inventory;

(b)   packaging materials, and supplies not included in the term "Supplies";

(c)   store shelf tags and pricing cards;

(d)   leased or owned point-of-sale equipment, photo lab equipment and security equipment;

(e)   other leased equipment (including all other leased equipment described on attached Schedule G-1 to this Agreement – See Excel Spreadsheet Schedule G-1.XLS);

(f)   sound intercom and music service equipment and contracts;

(g)   owned computers and routers, including Cisco 2651 routers, IBM 4029 (Pharmacy) servers, ACM BOSS (back office system servers), and 64k Frame circuits;

(h)   computer equipment that contains software subject to a license that restricts its transfer or imbedded data files that in either case is not easily and effectively deleted or removed;

(i)   equipment and other personal property that is neither owned nor leased by Seller, including by way of example but not as a limitation, third-party owned or supplied equipment such as payphones, vending machines, kiosks, blood pressure machines, sanitation chemical mixing equipment, copiers, Western Union equipment, money order equipment, coin rolling, sorting or counting equipment, ATM's, rug cleaners, and equipment owned by product vendors;

(j)   shopping carts;

(k)   over-the-road motor vehicles;

(l)   computer software subject to a license that restricts its transfer or that resides on equipment comprising Excluded Personal Property;

(m)   data files, including pharmacy prescription records and files;

(n)   lottery equipment and tickets;

(o)   accounts receivable, bank accounts, cash, and cash equivalents;

EXHIBIT G

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarket No. 15, Inc.
Store No. 205
May 17, 2006
SGRJAX\86042.1

(p)     trademarks, trade names, private labels, logos, and designs of Seller, Winn-Dixie, or its Affiliates;

(q)     building signs and panels in all pole and pylon signs that advertise Seller's business in the Stores;

(r)     intellectual property and rights relating to any of the foregoing;

(s)     service agreements;

(t)     leases of personal property; and

(u)     contracts and warranties relating to Seller's possession and operation of the Stores.

NOTES:

1.      Any equipment transferred from a Store to another Seller location must be accounted for using the proper equipment transfer forms.  Seller's "Store Maintenance" department will undertake this task for Seller.  No equipment is to be removed from the Store unless it has been determined to constitute "Excluded Personal Property" and has been approved and the proper equipment transfer forms have been completed by Store Maintenance.

2.      For any and all computers to remain in the Store, the following procedures will be performed:

        (a)     All computers left behind will have data and software removed to a point at which the computers can no longer "boot" off an internal drive.  Buyer is responsible for reloading any and all computer systems with Buyer's own software so that it will work in a new environment.

        (b)     Generic POS files will be provided upon request.  Buyer will get the same file. It will consist of UPC, item description, pack size, and department code. Seller will not provide any electronic price information.

        (c)     Seller's 64k Frame circuits will not be transferred.  Buyer will be responsible for installing its own frame, DSL, or VSAT data solution before the Store is transferred.

        (d)     Any Verifone "Everest Plus" Pinpads left behind in the Store will have its encryption keys destroyed by the act of opening up the pinpad.  Seller will not provide additional pinpads.  Buyer is responsible for its own EPS solution.

        (e)     Category 5 cabling will be left in place.

        (f)     Seller will not train, assist, or otherwise help in the setup of Buyer's POS or back office environment.

EXHIBIT G

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarket No. 15, Inc.
Store No. 205
May 17, 2006
SGRJAX\86042.1

<u>SCHEDULE G-1</u>
To Exhibit G

<u>EXCLUDED LEASED EQUIPMENT</u>


(Excel Spreadsheet Schedule G-1.XLS)

[ATTACHED BELOW]

EXHIBIT G

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarket No. 15, Inc.
Store No. 205
May 17, 2006
SGRJAX\86042.1

EXHIBIT H
To Asset Purchase Agreement

SCHEDULE OF PERMITTED ENCUMBRANCES

1.    Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2006 and subsequent years.

2.    All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.    Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.    Rights of the landlord under the Lease, including the rights of any Landlord's mortgagee.

5.    Rights of Subtenants under the Subleases.

6.    All matters set forth as exceptions in the Title History or the site plans, other than Monetary Liens.

7.    All other matters not set forth in the Title History that are set forth as exceptions in the Title Commitment, other than Monetary Liens.

      **Note to Buyer: Buyer has limited rights to object to certain matters set forth in the Title Commitment pursuant to paragraphs 4.2 and 4.4 of the Asset Purchase Agreement.**

8.    All other restrictions, reservations, covenants, agreements, easements, limitations, and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

EXHIBIT H
Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Tropical Supermarket No. 15, Inc.
Store No. 205
May 17, 2006
SGRJAX\86042.1