## ARTICLE IX

## MISCELLANEOUS

Section 9.1    Force Majeure. In the event that the Service Provider is wholly or partially prevented from, or delayed in, providing one or more Services, or one or more Services are interrupted or suspended, by reason of events beyond its reasonable control including without limitation acts of God, fire, explosion, accident, floods, embargoes, epidemics, war, acts of terrorism, nuclear disaster or riot) (each, a "**Force Majeure Event**"), the Service Provider shall not be obligated to deliver (or timely deliver, as applicable) the affected Services during such period, and the Service Recipient shall not be obligated to pay for any Services not delivered. Upon the occurrence of a Force Majeure Event, the Service Provider promptly shall give written notice to the Service Recipient of the Force Majeure Event upon which it intends to rely to excuse its performance and of the expected duration of such Force Majeure Event. The duties and obligations of the Service Provider with regard to the Services hereunder that are directly affected by such Force Majeure Event shall be tolled for the duration of the Force Majeure Event, but only to the extent that the Force Majeure Event prevents the Service Provider from performing its duties and obligations hereunder. During the duration of the Force Majeure Event, the Service Provider shall use its commercially reasonable efforts to avoid or remove such Force Majeure Event and shall use its commercially reasonable efforts to resume its performance under this Agreement with the least practicable delay. From and during the occurrence of a Force Majeure Event, the Service Recipient may replace the affected Services by providing such Services for itself or engaging a third party to provide such Services at the Service Recipient's sole cost and expense.

Section 9.2    Interpretation.

(a) Whenever the words "include," "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "without limitation."

(b) Words denoting any gender shall include all genders. Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning.

(c) A reference to any party to this Agreement or any other agreement or document shall include such party's successors and permitted assigns.

(d) A reference to any legislation or to any provision of any legislation shall include any modification or re enactment thereof, any legislative provision substituted therefor and all regulations and statutory instruments issued thereunder or pursuant thereto.

(e) All references to "$" and dollar shall be deemed to refer to United States currency unless otherwise specifically provided.

Section 9.3    Preparation of this Agreement. The Service Recipient and the Service Provider hereby acknowledge that (a) the Service Recipient and the Service Provider jointly and equally participated in the drafting of this Agreement, (b) the Service Recipient and the Service Provider have been adequately represented and advised by legal counsel with respect to this Agreement and the transactions contemplated hereby, and (c) no presumption shall be made that any provision of this Agreement shall be construed against either party by reason of such role in the drafting of this Agreement and any other agreement contemplated hereby.

Section 9.4    Relationships of the Parties. The parties hereto are and shall remain independent contractors and not employees or agents of each other. Except as expressly granted by the other party in writing, neither the Service Recipient nor the Service Provider shall

9

have any authority, express or implied, to act as an agent of the other parties or their subsidiaries or affiliates under this Agreement. It is not the intent of the parties hereto to create, nor should this Agreement be construed to create, a partnership, joint venture or employment relationship among or between the parties (including their respective officers, employees, agents or representatives).

Section 9.5    Entire Agreement; No Third Party Beneficiaries. This Agreement, along with the Share Purchase Agreement and the Non-Competition Agreement (a) constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof and thereof and (b) are not intended to confer, and shall not confer, upon any Person other than the parties hereto and thereto any remedies, claims of liability or reimbursement, causes of action or any other rights whatsoever, except those rights conferred on the Service Provider Indemnified Parties pursuant to Section 5.1.

Section 9.6    Governing Law. The application and effect of this Agreement and all matters arising from it shall be governed by and construed in accordance with the laws of the State of Florida.

Section 9.7    Jurisdiction. Each of the parties hereto (a) consents to submit itself to the personal jurisdiction of any federal court located in the State of Florida or any Florida state court in the event any dispute arises out of this Agreement; (b) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any court; and (c) agrees that it shall not bring any action or proceeding relating to this Agreement in any court other than a federal or state court sitting in the State of Florida. Each party further agrees that service of any process, summons, notice or document by registered or certified mail to such party's address for the giving of notice as set forth in Section 9.9 shall be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each party also agrees that a final judgment (after all appeals, if any) against it in any action or proceeding relating to this Agreement brought in federal court located in the State of Florida or any Florida state court shall be conclusive and binding upon it as to the subject of such final judgment and may be enforced in any other jurisdiction.

Section 9.8    Dispute Resolution; Escalation Procedure. The parties shall attempt in good faith to resolve any dispute, controversy or claim arising out of, in connection with, or relating to this Agreement (each, a "**Dispute**") in accordance with the following procedure: Upon the written request of either party, an employee of each party responsible for the day to day management of the Services under this Agreement shall meet within fifteen (15) days of receipt by the other party of the written request and attempt in good faith to resolve any Dispute. If such Dispute is not resolved by discussions between such employees within fifteen (15) days after the parties meet in response to a party's written request, then either party may request that the Dispute be further escalated to the chief executive officer or the chief operating officer (or a designee of such person) of each party who shall meet to resolve the Dispute. Promptly after receipt of such request, the chief executive officer or the chief operating officer (or a designee of such person) of each party shall meet to resolve the Dispute. In the event that a Dispute is not resolved by the parties, then such dispute shall be submitted to the Bankruptcy Court for resolution.

Section 9.9    Notices. Any notice or other communication pursuant to, or in connection with, this Agreement shall be in writing and delivered personally, or sent by reputable overnight courier service or by facsimile or other form of electronic transmission to the parties at the addresses or the numbers set out below (or to such other address as may from time to time have been notified in writing to the other Parties in accordance with this Section 9.9)

If to the Service Recipient, to:

    BSL Holdings Limited.
    Fidelity House,
    51 Frederick Street,
    Nassau, Bahamas
    Tel. No. 1-242-356 7764
    Fax No. 1-242-326-3000

    BSL Supermarkets Limited
    [address]
    Tel. No.
    Fax No.

With concurrent copies, which shall not constitute notice, to:

    Counsel to the Purchaser
    Davis & Co
    Del Bern House
    11 Victoria Avenue
    P.O. Box N-7940

    Nassau, Bahamas
    Tel. No. 1-242-322-2715
    Fax No. 1-242-326-7360
    Attention: Philip B. Davis

If to the Service Provider, to:

    Winn Dixie Stores, Inc.
    5050 Edgewood Court
    Jacksonville, Florida 32254-3699
    Attn: Office of General Counsel
    Telecopy: (904) 783-5651

With concurrent copies, which shall not constitute notice, to:

    Skadden, Arps, Slate, Meagher & Flom LLP
    1440 New York Avenue, N.W.
    Washington, D.C. 20005
    Attn: Ronald C. Barusch
    Telecopy: (202) 393-5760

Any notice or other communication shall be deemed to have been served:

    (a) if delivered personally, when left at the address referred to in this Section 9.9;

    (b) when sent by reputable overnight courier service;

    (c) if sent by facsimile or other form of electronic transmission, at the time of transmission (provided that to be effective such transmission must be followed up within one (1) Business Day by reputable overnight courier service).

If a notice is given or deemed given at a time or on a date which is not a Business Day, it shall be deemed to have been given on the next Business Day.

Section 9.10    Descriptive Headings. The headings of the Sections herein are inserted for convenience of reference only and are not intended to be a part of, or to affect the meaning or interpretation of, this Agreement.

Section 9.11    Extension, Waiver. A party hereto may (a) extend the time for the performance of any of the obligations or other acts of the other party hereto; (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein, to the extent permitted by applicable law. Any agreement on the part of a party hereto to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such party. The failure of any party to this Agreement to assert any of its rights under this Agreement or otherwise shall not constitute a waiver of such rights.

Section 9.12    Amendment and Modification. This Agreement may be amended, modified and supplemented in any and all respects, but only by a written instrument signed by each of the parties hereto expressly stating that such instrument is intended to amend, modify or supplement this Agreement.

Section 9.13    Assignment and Sub-Contracting.

(a) Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by either party hereto (whether by operation of law or otherwise) without the prior written consent of the other party, provided that Service Provider may assign this Agreement or any of the rights, interests or obligations hereunder in connection with a sale of all or substantially all of its business.

(b) The Service Provider is free to sub-contract the Services to third parties, provided that the Service Provider remains liable for performance of the Services in accordance with this Agreement, including the Service Standards set forth in Section 2.2. The Service Recipient is prohibited from sub-contracting its obligations under this Agreement without the prior written consent of the Service Provider.

Section 9.14    Severability. Any term or provision of this Agreement that is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction. If the final judgment of a court of competent jurisdiction or other authority declares that any term or provision hereof is invalid, void or unenforceable, the parties agree that the court making such determination shall have the power to reduce the scope, duration, area or applicability of the term or provision, to delete specific words or phrases, or to replace any invalid, void or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision.

Section 9.15    Counterparts; Effect. This Agreement may be executed and delivered (including via facsimile) in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

Section 9.16    Costs and Expenses. Except as expressly set forth in this Agreement, all costs and expenses incurred by or on behalf of the parties to this Agreement including all fees of representatives, solicitors, counsel and accountants employed by any of the Parties in connection with the negotiation, preparation and execution of this Agreement shall be

borne solely by the party who shall have incurred the same and the other party shall have no liability in respect of such costs and expenses. Notwithstanding the foregoing, in any action or proceeding brought to enforce any provisions of this Agreement, or where any provision hereof is validly asserted as a defense, the successful party in such action or proceeding shall be entitled to recover reasonable attorneys' fees and disbursements.

Section 9.17    Survival. The provisions of Articles V, VI, VIII and IX, and Sections 7.1 and 7.2 and the obligation to pay any Fees accrued prior to termination shall survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers on the day and year first above written.

Winn-Dixie Stores, Inc.

By: _____

Title:

BSL Holdings Limited

By: _____

Title:

13

**SCHEDULE A**

**Services**

The following IT support services will be provided to Service Recipient.

| Business Function | Service | Description of Services |
|---|---|---|
| Systems | Store Ordering | Store ordering for Warehouse product only. Support of Polling application and division RS600, KE3, and Bahamas VSE systems |
| Systems | Merchandising – Tags and Signs | Support of the Shelf Tag system and supporting subsystems referred to as Price analysis and the Perpetual Inventory (PIF) system which create the Bahamas Store Average file. |
| Systems | Warehouse Replenishment | Support and maintenance of the OMI Biceps system (for GMD) running on MVS. Support and maintenance for buying Activities utilizing the Chainstore application running on the Miami VSE. This includes support of the KE3 System |
| Systems | Billing | Support and maintenance of the OMI ABS and Legacy Billing systems to cover inventory updates and Store Order Information. *Note* – Billing information is passed to Accounts Payable for payment. An interface will need to be built to pass billing information from these systems to Service Recipient's Payables system. Building a new interface would be considered an additional service subject to Section 2.1(b). |
| Systems | Warehousing | Support and Maintenance of the KE3 system for the Nassau DC. |
| Systems | Payroll and Time Reporting | HRp5 will not be supported by Service Provider. The vendor will provide primary support. Service Provider will provide support and maintenance for the Workbrain and CMI software for Time and Attendance. Should a clock need to be serviced, such service will be provided pursuant to a separate maintenance agreement in place with the vendor. |
| Systems | Import Register | Maintenance and support for the online system running on the Bahamas VSE machine. |

14

| Business Function | Service | Description of Services |
|---|---|---|
| Systems | Store Source | Maintenance and support of the application. |
| Systems | Store Transfers | Maintenance and support of the Bahamas Host Store transfer application that allows the manual input of transfer information. *Note – The ROI application is not utilized in the Bahamas and will not be configured for Service Recipient's use. |
| Systems | Gross Profits | Maintenance and support of the existing A23BY program. *Note – No change requests will be considered for this program. |
| Systems | Financials | Service Provider will maintain its existing PeopleSoft 7.53 installation and provide the same reporting support that in place as of Closing. *Note – Changing or building interfaces to Service Provider's financials or other systems would be considered additional services subject to Section 2.1(b). |
| Systems | Network | Network Support, which includes only the following:<br>1) If the Business has a problem with its communications lines, either to the stores or to the office, Service Provider will work with the vendor, Cable Bahamas, to resolve to the problem.<br><br>2) If the Business has a problem with a router, Service Provider will provide it with a spare as follows: If a store or office has a failure, Service Provider will configure the router remotely and work with Service Recipient to swap out the equipment. Service Provider will then send Service Recipient a new spare router. Service Recipient will send Service Provider the damaged router and Service Provider will have it repaired.<br><br>3) Ethernet switches for the Business will be handled the same way as the routers. If a store or office has a failure, Service Provider will configure the device remotely, work with the Business to swap out the switch and send a replacement spare. Service Recipient will have the damaged unit sent back to Service Provider for repair. |

| Business Function | Service | Description of Services |
|---|---|---|
| Systems | | 4) Switch firmware upgrades (i.e., loading new firmware and configurations) will be performed by Service Provider on-site at Service Recipient's locations in the Bahamas.<br><br>5) Router upgrades (i.e., loading new firmware and configurations) will be performed by Service Provider on-site at Service Recipient's locations in the Bahamas.<br><br>6) Service Provider will provide support for the UPS units that supply power to the network gear. |
| Systems | Backup and Recovery | Mainframe/VSE disaster recovery is part of Service Provider's overall corporate process, and includes backup and recovery of the VSE machines and data. Non Mainframe Networked data is passed through the VPN and backed up at corporate for recovery. Hardware housed in the corporate data center is covered in the corporate recovery plans. |

The following logistic support services will be provided to the Service Recipient.

| Business Function | Service | Description of Services |
|---|---|---|
| Warehousing | Process and select store/warehouse orders | Route store/warehouse orders, select product, audit load containers and prepare paperwork for export. |
| Warehousing | Milk/Water crates | Ship product in plastic crates that must be returned to the main land. Service Recipient will be charged separately for lost crates. |
| Warehousing | GM/HBA product | Receive orders of General Merchandise and Health/Beauty Aides at the Miami DC for loading and documentation completion |

16

| Business Function | Service | Description of Services |
|---|---|---|
| Warehousing | Ship outside vendors product to Nassau | Receive, sort, verify and obtain invoices for products from the following outside vendors that ship products through Miami to the Bahamas:<br>Shoe Shack<br>GFI gourmet Foods<br>United Natural Foods<br>Hobart Corp.<br>The Stellar Group (Generator Muffler)<br>Tree of Life Foods<br>Spice World<br>EHS Corp. (Floor Mats)<br>Gourmet Awards<br>McArthur Milk |

17

**SCHEDULE B**

**Additional Services**

**EXHIBIT C**

# NON-COMPETITION AGREEMENT

THIS NON-COMPETITION AGREEMENT, dated as of May    , 2006 (this "**Agreement**"), is entered into by and between Winn-Dixie Stores, Inc. ("**Winn-Dixie**"), a Florida corporation, and BSL Holdings Limited ("**BSL Holdings**"), a company incorporated and existing under the laws of the Commonwealth of The Bahamas with its registered office at Fidelity House, 51 Frederick Street, in the Island of New Providence in the said Commonwealth of The Bahamas.

## W I T N E S S E T H:

WHEREAS, BSL Holdings and W-D (Bahamas) Ltd., a company incorporated and existing under the laws of the Commonwealth of The Bahamas, have entered into that certain Share Purchase Agreement, dated as of May    , 2006 (the "**Share Purchase Agreement**"), pursuant to which Seller has agreed to sell to BSL Holdings, and BSL Holdings has agreed to purchase from the Seller, certain shares (the "Shares") in the capital of Bahamas Supermarkets Limited; and

WHEREAS, the Share Purchase Agreement contemplates that, as an inducement to BSL Holdings to enter into the Share Purchase Agreement, Winn-Dixie will enter into this Agreement.

NOW, THEREFORE, in consideration of the transactions contemplated by the Share Purchase Agreement and the covenants contained herein, the parties hereto, intending to be legally bound hereby, agree as follows:

1. Definitions

    Capitalized terms used but not defined in this Agreement shall have the meanings ascribed to such terms in the Share Purchase Agreement.

2. Non-competition

    From the Closing Date until the second anniversary of the Closing Date, Winn-Dixie shall not directly or indirectly undertake to carry on or be engaged, concerned or interested either alone or in partnership with or as manager, agent or servant of any other person, firm or company or otherwise in the retail sale of groceries, meat, produce and delicatessen products in the Commonwealth of The Bahamas; provided, however, that nothing herein shall be construed as prohibiting W-D (Bahamas) Ltd. from continuing its existence as a company incorporated and existing under the laws of the Commonwealth of The Bahamas.

3. Entire Agreement

   This Agreement, along with the Share Purchase Agreement and Transition Services Agreement, constitutes the entire agreement among the parties hereto with respect to the subject matter addressed herein, and there are no understandings (written or oral) or agreements, conditions or qualifications relative to this Agreement that are not fully reflected in this Agreement.

4. Governing Law; Jurisdiction

   The application and effect of this Agreement and all matters arising from it shall be governed by and construed in accordance with the laws of the State of Florida.

5. Jurisdiction

   Each of the parties hereto (a) consents to submit itself to the personal jurisdiction of any federal court located in the State of Florida or any Florida state court in the event any dispute arises out of this Agreement; (b) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any court; and (c) agrees that it shall not bring any action or proceeding relating to this Agreement in any court other than a federal or state court sitting in the State of Florida. Each party further agrees that service of any process, summons, notice or document by registered or certified mail to such party's address for the giving of notice as set forth in Section 6 hereof shall be effective service of process for any action, suit or proceeding relating to this Agreement with respect to any matters to which it has submitted to jurisdiction as set forth above. Each party also agrees that a final judgment (after all appeals, if any) against it in any action or proceeding relating to this Agreement brought in federal court located in the State of Florida or any Florida state court shall be conclusive and binding upon it as to the subject of such final judgment and may be enforced in any other jurisdiction.

6. Notices

   Any notice or other communication pursuant to, or in connection with, this Agreement shall be in writing and delivered personally, or sent by reputable overnight courier service or by facsimile or other form of electronic transmission to (or to such other address as may from time to time have been notified in writing) such party in accordance with this Section 6.

2

If to BSL Holdings, to:

    BSL Holdings Limited.
    Fidelity House,
    51 Frederick Street,
    P.O. Box N- 4853
    Nassau, Bahamas
    Tel. No. 1-242-356-7764
    Fax No. 1-242-326-3000
    e-mail: michael.anderson@fidelitybahamas.com

With concurrent copies, which shall not constitute notice, to:

    Davis & Co
    Del Bern House
    11 Victoria Avenue
    P.O. Box N-7940
    Nassau, Bahamas
    Tel. No. 1-242-322-2715
    Fax No. 1-242-326-7360
    Attention: Philip B. Davis

If to Winn-Dixie, to:

    Winn Dixie Stores, Inc.
    5050 Edgewood Court
    Jacksonville, Florida 32254-3699
    Attn: Office of General Counsel
    Telecopy: (904) 783-5651
    e-mail: LarryAppel@winn-dixie.com

With concurrent copies, which shall not constitute notice, to:

    Skadden, Arps, Slate, Meagher & Flom LLP
    1440 New York Avenue, N.W.
    Washington, D.C. 20005
    Attn: Ronald C. Barusch
    Telecopy: (202) 393-5760
    e-mail: RBarusch@skadden.com

Any notice or other communication shall be deemed to have been served:

  (a) if delivered personally, when left at the address referred to in this Section 6;

  (b) when sent by reputable overnight courier service, two (2) clear days after sending it;

  (c) if sent by facsimile or other form of electronic transmission (including e-mail), at the time of transmission (provided that to be effective such transmission must be followed up within one (1) Business Day by reputable overnight courier service).

If a notice is given or deemed given at a time or on a date which is not a Business Day, it shall be deemed to have been given on the next Business Day.

7. Descriptive Headings

The headings of the Sections herein are inserted for convenience of reference only and are not intended to be a part of, or to affect the meaning or interpretation of, this Agreement.

8. Amendment and Modification

This Agreement may be amended, modified and supplemented in any and all respects, but only by a written instrument signed by each of the parties hereto expressly stating that such instrument is intended to amend, modify or supplement this Agreement.

9. Termination

This Agreement shall terminate and be of no further force and effect upon the second anniversary of the Closing Date.

10. Severability

Any term or provision of this Agreement that is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction. If the final judgment of a court of competent jurisdiction or other authority declares that any term or provision hereof is invalid, void or unenforceable, the parties agree that the court making such determination shall have the power to reduce the scope, duration, area or applicability of the

term or provision, to delete specific words or phrases, or to replace any invalid, void or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision.

11. <u>Counterparts; Effect</u>

This Agreement may be executed and delivered (including via facsimile) in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

12. <u>Specific Performance</u>

The parties hereto agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement or to enforce specifically the performance of the terms and provisions hereof in any federal court located in the State of Florida or any Florida state court, in addition to any other remedy to which they are entitled at law or in equity.

13. <u>Costs and Expenses</u>.

Except as expressly set forth in this Agreement, all costs and expenses incurred by or on behalf of the parties to this Agreement including all fees of representatives, solicitors, counsel and accountants employed by any of the parties hereto in connection with the negotiation, preparation and execution of this Agreement shall be borne solely by the party who shall have incurred the same and the other party shall have no liability in respect of such costs and expenses. Notwithstanding the foregoing, in any action or proceeding brought to enforce any provisions of this Agreement, or where any provision hereof is validly asserted as a defense, the successful party in such action or proceeding shall be entitled to recover reasonable attorneys' fees and disbursements.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers on the day and year first above written.

WINN-DIXIE STORES, INC.

By:_____
    Name:
    Title:

BSL HOLDINGS LIMITED.

By:_____
    Name:
    Title: