**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ORDER APPROVING DEBTORS' LEASE
<u>TERMINATION AGREEMENT FOR STORE 2357</u>**

These cases came before the Court for hearing on May 18, 2006 at 1:00 p.m. (the

"Sale Hearing") on the motion of Winn-Dixie Stores, Inc. and twenty-three of its

subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the

"Debtors"), for an order under 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P.

6004 and 6006 (a) Authorizing the Sale of Additional Stores and Related Equipment Free

and Clear of Liens, Claims and Interests, (b) Authorizing the Assumption and

Assignment or Alternatively, the Rejection of Leases and Establishing a Claim Bar Date,

and (c) Granting Related Relief, filed with the Court on April 26, 2006 (the "Motion")

(Docket No. 7517).[1] On May 10, 2006, IRT Partners, L.P., a Georgia limited partnership,

as successor to Treasure Coast Plaza Development Joint Venture (the "Landlord"), the

landlord for Store No. 2357, filed a limited objection to the Motion (Docket No. 7748)

(the "Objection").  The Court has reviewed the Motion and heard the representations of

counsel.  Upon the representations of counsel, the Landlord agrees that the Objection is

---

[1]     All capitalized terms not otherwise defined in this Order have the same meaning provided to them
in the Motion.

moot and without objection by the United States Trustee or any other interested party, the

Court makes the following findings of fact:

A.      This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

B.      The Debtors solicited the highest or otherwise best offer for the lease of

Store No. 2357 (the "Lease") in accordance with bidding procedures approved by the

Court by order (Docket No. 1801) dated June 16, 2005 (the "Bidding Procedures"). The

Debtors held an auction for the Lease on May 9, 2006 (the "Auction"). The Landlord

submitted the highest or otherwise best offer for the Lease, agreeing to a termination of

the Lease, as more particularly described in the Lease Termination Agreement attached to

this Order as Exhibit A (the "Termination Agreement"), for $525,000.00 in cash, plus the

waiver of any claims for lease rejection damages with respect to the Lease.

C.      The Debtors have provided interested parties (including all parties

asserting claims or interests in the Lease, if any) with proper notice of the Motion, the

Sale Hearing, the Auction and the termination of the Lease, in accordance with 11 U.S.C.

§§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local

Rule 2002-1, the Notice Procedures Order and the Order approving the Bidding

Procedures.

D.      The Debtors marketed the Lease and conducted the sale process in

compliance with the Order approving the Bidding Procedures, the Bidding Procedures,

the Bankruptcy Code and all other Orders entered in these cases. The bidding on the

Lease and the Auction were conducted in a non-collusive, fair and good faith manner,

and the Landlord has acted in good faith (as that term is used in 11 U.S.C. § 363(m). The

Debtors have given all interested parties a reasonable opportunity to make their highest or otherwise best offer for the Lease. In their sound business judgment, the Debtors determined that the bid submitted by the Landlord represented the highest or otherwise best offer for the Lease.

E.    The Debtors (i) have full corporate power and authority to execute and consummate the Termination Agreement and all related documents, and the termination of the Lease has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Termination Agreement, are required to consummate the transactions contemplated by the Termination Agreement.

F.    The consideration the Landlord is providing to the Debtors for termination of the Lease (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Lease; and (iii) constitutes reasonably equivalent value.

G.    The Debtors' termination of the Lease pursuant to the Termination Agreement will be a legal, valid, and effective termination of the Lease.

H.    Notwithstanding the Termination Agreement or the Lease terms, the Debtors will have the right to remain in the premises up to the Termination Date (as defined in the Termination Agreement) to discontinue its operations. The Debtors have already conducted a store closing sale for Store No. 2357.

I.    Until the Termination Date, the Debtors will pay all amounts and perform all obligations under the Lease in accordance with 11 U.S.C. § 365(d)(3).

J.    The Debtors will cause the net proceeds from the termination of the Lease to be paid to the DIP Lender, to the extent required, in accordance with the terms and

conditions of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

K.    The Debtors' entry into the Termination Agreement is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

L.    The Court's approval of the Termination Agreement and consummation of the transaction contemplated in the Termination Agreement in the best interests of the Debtors, their estates and their creditors.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.    The Motion is granted.

2.    The Objection is denied as moot.

3.    The Termination Agreement is approved in all respects.  The Lease is terminated effective on the Termination Date.

4.    Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and directed to consummate and implement fully the Termination Agreement, together with all additional instruments and documents that may be necessary to implement the Termination Agreement.  The Debtors are authorized and directed to take all actions

4

necessary for the purpose of assigning, transferring, granting, conveying, and conferring any assets to the Landlord and terminating the Lease.

5.      Notwithstanding the terms of the Lease, the Debtors are authorized to remain on the premises up to the Termination Date and to discontinue operations.

6.      Any agreements, documents, or other instruments executed in connection with the Termination Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Termination Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld, and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

7.      The Debtors will cause the net proceeds from the Termination Agreement to be paid in accordance with the terms of the Final Financing Order and the Loan Documents.

8.      This Court retains exclusive jurisdiction to (a) enforce and implement the Termination Agreement and any other agreements and instruments executed in connection with the Termination Agreement, and (b) interpret, implement and enforce the provisions of this Order.

9.      The terms and provisions of the Termination Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Landlord and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any

chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

10.     Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f), Federal Rules of Bankruptcy Procedure.

11.     Notwithstanding Federal Rule of Bankruptcy Procedure 6004(h), this Order shall be effective immediately upon its entry.

Dated this ___18___ day of May, 2006 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to
serve a copy of this Order on all parties
who were served with copies of the Motion.

00531630

6

**<u>EXHIBIT A</u>**

.

## LEASE TERMINATION AGREEMENT

**THIS LEASE TERMINATION AGREEMENT** (the "Agreement") made as of the 24th day of May, 2006, by and between **IRT PARTNERS, L.P.**, a Georgia limited partnership ("Landlord"), and **WINN-DIXIE STORES, INC.,** a Florida Corporation ("Tenant").

### Recitals

A.      Landlord and Tenant entered into a lease dated September 23, 1994 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 2357, located at the southeasterly corner of the intersection of 21st Street and 6th Avenue in the City of Vero Beach, County of Indian River, State of Florida, more fully described in the Lease (the "Premises").

B.      On February 21, 2005, Winn-Dixie, Inc., and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C.      On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures").   The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D.      On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E.      On May 9, 2006, pursuant to the Bidding Procedures, the Debtors conducted an auction for the sale of assets, including the Lease, and the Landlord was the successful bidder for the Lease.

F.      The parties desire to terminate the Lease and end the Lease term effective as of the date hereof (the "Termination Date").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.      **Termination Date.**  Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will end and terminate, and Tenant will surrender the Premises in accordance with this Agreement. Tenant will continue to pay and remain liable for all rent and additional rent, if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Termination Date.  After the Termination Date, neither party will have any further rights or obligations under the Lease.

2.      **Surrender of Premises**.  Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in its "As Is" condition, broom-clean and empty of all inventory and merchandise owned by Tenant.  Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express

representations or warranties regarding the condition of the Premises.  Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises.    This provision will survive the termination of the Lease. Notwithstanding the foregoing, the Tenant has the right, but not the obligation, to remove by sale or otherwise prior to the Termination Date any trade fixtures, signs and other personal property of Tenant including lighting systems, counters, modular wall units, shelving and other movable personal property, external signage and any other items that Tenant is permitted to remove under the Lease.

3.      **Right to "Go Dark" and Conduct Store Closing Sale.**  Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date.  Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Bankruptcy Court's Order approving store closing sales entered March 23, 2006.

4.      **Termination Fee.**  On the Termination Date, following Tenant's satisfaction of the terms set forth in Paragraph 2 above, the Landlord will pay the Tenant as consideration for entering into this Agreement, and surrendering the Premises in accordance with the terms of this Agreement, a fee of $525,000.00, less the amount of rent and additional rent determined by the Bankruptcy Court, if any, due and owing by Tenant to Landlord under the Lease accruing after February 21, 2005, up to and including the Termination Date (the "Termination Fee"), plus credit for waiver of Landlord's claim in the amount of Eight Thousand Eight Hundred Fifty Six Dollars ($8,856.00).

5.      **Reimbursement of Prepaid Expenses.**  Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease.

6.      **Irrevocable Bid.**  Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord.  Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures.  In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7.      **Representations.**  Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement.   Tenant has not assigned, transferred, encumbered or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

Lease Termination Agreement
Store #2357
Winn-Dixie Stores, Inc./IRT Partners, L.P.
May 24, 2006
SGRJAX\85627.1

8. **Release.** As of the Termination Date, except as to the obligations of Tenant pursuant to this Agreement, Landlord waives, releases and discharges Tenant, its successors and assigns, its estate, affiliates and the Debtors from all manner of actions or claims in law or in equity that Landlord ever had, currently has, or may have against Tenant or its successors and assigns relating to or arising out of the Lease, this Agreement or the Premises, including lease rejection claims under Section 502 of the Bankruptcy Code, administrative expense claims under Section 503 of the Bankruptcy Code or any other claims relating to the Tenant's use and occupancy of the Premises. To the extent Landlord has filed, or files, a proof claim with respect to the Lease and/or Premises, Landlord consents to the disallowance and expungement of such claim, with prejudice.

9. **Condition Precedent.** It shall be a condition precedent to Landlord's obligations under this Agreement that the Termination Date shall have occurred on or before June 30, 2006.

10. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

11. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

12. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

13. **Bankruptcy Court Approval.** The Tenant's obligations are subject to approval by the Bankruptcy Court, and Landlord and Tenant agree to cooperate in obtaining such approval.

14. **Discharge of Memorandum.** If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

15. **Jurisdiction.** The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

16. **Governing Law**. This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

[SIGNATURES APPEARING ON THE NEXT PAGE]

3

**IN WITNESS WHEREOF,** the Landlord and Tenant have executed this Agreement as of the day and year first above written.

**Tenant:**

**WINN-DIXIE STORES, INC.,** a Florida corporation


By: _____
Name: _____
Its: _____

**Landlord:**

**IRT PARTNERS, L.P.,** a Georgia limited partnership

       By:    Equity One, Inc., a Maryland Corporation, its general Partner

By: _____
Name: _____Agnew L Gallagher_____
Its: _____General Counsel & Secretary___

4

**IN WITNESS WHEREOF,** the Landlord and Tenant have executed this Agreement as of the day and year first above written.

**Tenant:**                                            **Landlord:**

**WINN-DIXIE STORES, INC.**, a Florida        **IRT PARTNERS, L.P.**, a Georgia limited
corporation                                           partnership

5.17.06

By: _____                By:    Equity One, Inc., a Maryland
Name: __Bennett L. Nussbaum__                              corporation, its general
Its: ___SENIOR VICE PRESIDENT__                            Partner

                                                   By: _____
                                                   Name: _____
                                                   Its: _____

LEGAL APPROVED
ATTY: _CB2_
DATE: _5/16/06_

Reviewed By
_____
XRoads
Date: _5/16/06_

Lease Termination Agreement
Store #2357
Winn-Dixie Stores, Inc./IRT Partners, L.P.
May 24, 2006
SGRJAX\85627.1