UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

## ORDER APPROVING DEBTORS' LEASE
## TERMINATION AGREEMENT FOR STORE NO. 719

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and

twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession

(collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363 and 365 and

Fed. R. Bankr. P. 6004 and 6006 (a) Authorizing the Sale of Additional Stores and

Related Equipment Free and Clear of Liens, Claims and Interests, (b) Authorizing the

Assumption and Assignment or Alternatively, the Rejection of Leases and Establishing a

Claim Bar Date, and (c) Granting Related Relief filed with the Court on April 26, 2006

(the "Motion") (Docket No. 7517)[1]. The Court has reviewed the Motion and heard the

representations of counsel. Upon the representations of counsel and without objection by

the United States Trustee or any other interested party, the Court makes the following

findings of fact:

A.    This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1]    All capitalized terms not otherwise defined in this Order have the same meaning provided to them
in the Motion.

B.     The Debtors solicited the highest or otherwise best offer for the Additional Stores in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 16, 2005 (the "Bidding Procedures"). The Debtors held an auction for the Additional Stores on May 9, 2006 (the "Auction"). GRE Coralwood, L.P. (the "Landlord"), submitted the highest or otherwise best offer for the lease of Store 719 (the "Lease"), agreeing to a termination of the Lease, as more particularly described in the Lease Termination Agreement attached to this Order as Exhibit A (the "Termination Agreement"), for $1,450,000.00, plus a waiver of all claims against the Debtors and their estates.

C.     The Debtors have provided interested parties (including all parties asserting claims or interests in the Lease, if any) with proper notice of the Motion, the sale hearing, the Auction and the termination of the Lease, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order.

D.     The Debtors marketed the Lease and conducted the sale process in compliance with the Order approving the Bidding Procedures, the Bidding Procedures, the Bankruptcy Code and all other Orders entered in these cases. The bidding on the Lease and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Lease. In their sound business judgment, the Debtors determined that the bid submitted by the Landlord represented the highest or otherwise best offer for the Lease.

E.      The Debtors (i) have full corporate power and authority to execute and consummate the Termination Agreement and all related documents, and the termination of the Lease has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Termination Agreement, are required to consummate the transactions contemplated by the Termination Agreement.

F.      The consideration the Landlord is providing to the Debtors for termination of the Lease (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value.

G.      The Debtors' termination of the Lease pursuant to the Termination Agreement will be a legal, valid, and effective termination of the Lease.

H.      Notwithstanding the Termination Agreement or the Lease terms, the Debtors will have the right to remain in the premises up to May 22, 2006 (the "Termination Date" to discontinue its operations and to conduct a store closing sale in accordance with the Court's Order of March 24, 2006 (Docket No. 6783) (the "Store Closing Order").

I.      Until the Termination Date, the Debtors will pay all amounts and perform all obligations under the Lease in accordance with 11 U.S.C. §365(d)(3).

J.      The Debtors will cause the net proceeds from the termination of the Lease to be paid to the DIP Lender, to the extent required, in accordance with the terms and conditions of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing

on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

K.     The Debtors' entry into the Termination Agreement is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

L.     The Court's approval of the Termination Agreement is in the best interests of the Debtors, their estates and their creditors.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted.

2.     All objections to the entry of this order or to the relief granted and requested in the Motion, that have not been withdrawn, waived or settled at or before the hearing, are denied and overruled on the merits.

3.     The Termination Agreement is approved in all respects.  The Lease is terminated effective on the Termination Date.

4.     Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Termination Agreement, together with all additional instruments and documents that may be necessary to implement the Termination Agreement.  The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Lease to the Landlord.

5.      Notwithstanding the terms of the Lease, the Debtors are authorized to remain on the premises up to the Termination Date, to discontinue operations and to conduct store closing sales on the premises pursuant to the Store Closing Order.

6.      Any agreements, documents, or other instruments executed in connection with the Termination Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Termination Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

7.      The Debtors will cause the net proceeds from the Termination Agreement to be paid to the DIP Lender, to the extent required, in accordance with the terms of the Final Financing Order and the Loan Documents.

8.      This Court retains exclusive jurisdiction to (a) enforce and implement the Termination Agreement and any other agreements and instruments executed in connection with the Termination Agreement, and (b) interpret, implement and enforce the provisions of this Order.

9.      The terms and provisions of the Termination Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Landlord and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

10.    Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f), Federal Rules of Bankruptcy Procedure.

Dated this ___18___ day of May, 2006 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to
serve a copy of this Order on all parties
who received copies of the Motion.

00531663.2

6

**<u>EXHIBIT A</u>**

## LEASE TERMINATION AGREEMENT

**THIS LEASE TERMINATION AGREEMENT** (the "Agreement") made as of the 22nd day of May, 2006, by and between **GRE CORALWOOD, L.P.,** a Delaware limited partnership, as successor to Tulip Properties, Inc., a Delaware corporation ("Landlord"), and **WINN-DIXIE STORES, INC.,** a Florida Corporation ("Tenant").

## Recitals

A.      Landlord and Tenant entered into a lease dated February 7, 1992 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn-Dixie's Store No. 719, located at Coralwood Shopping Center, 2301 Del Prado Boulevard, Cape Coral, Florida, more fully described in the Lease (the "Premises").

B.      On February 21, 2005, Winn-Dixie, Inc., and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., as amended (the "Bankruptcy Code").

C.      On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures").  The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests.

D.      On June 16, 2005, the Bankruptcy Court entered an order approving the Motion and authorized the Debtors to implement the Bidding Procedures.

E.      On May 9, 2006, pursuant to the Bidding Procedures, the Debtors conducted an auction for the sale of assets, including the Lease, and the Landlord was the successful bidder for the Lease.

F.      The parties desire to terminate the Lease and end the Lease term effective as of the date hereof (the "Termination Date").

**NOW, THEREFORE,** in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.      **Termination Date.**  Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p.m., E.T., on the Termination Date, at which time the Lease and the Lease term will end and terminate.  Tenant will continue to pay and remain liable for all rent and additional rent, if any, due and owing under the Lease accruing after February 21, 2005, up to and including the Termination Date.  After the Termination Date, neither party will have any further rights or obligations under the Lease.

2.      **Surrender of Premises**.  Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in its "As Is" condition.  Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any

express representations or warranties regarding the condition of the Premises.   Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises.   This provision will survive the termination of the Lease.   Notwithstanding the foregoing, the Tenant has the right, but not the obligation, to remove by sale or otherwise prior to the Termination Date any trade fixtures, signs and other personal property of Tenant including lighting systems, counters, modular wall units, shelving and other movable personal property, external signage and any other items that Tenant is permitted to remove under the Lease.

3.     **Right to "Go Dark" and Conduct Store Closing Sale.**   Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date.   Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Bankruptcy Court's Order approving store closing sales entered March 23, 2006.

4.     **Termination Fee.**   On or before the Termination Date, the Landlord will pay the Tenant a fee of $1,450,000.00 as consideration for entering into this Agreement.

5.     **Reimbursement of Prepaid Expenses.**   Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date. The Landlord will also return to the Tenant any security deposit made in connection with the Lease.

6.     **Irrevocable Bid.**   Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord.   Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures.   In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern.

7.     **Representations.**   Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement.   Tenant has not assigned, transferred, encumbered or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement.

8.     **Release.**   As of the Termination Date, except as to the obligations of Tenant pursuant to this Agreement, Landlord waives, releases and discharges Tenant, its successors and assigns, its estate, affiliates and the Debtors from all manner of actions or claims in law or in equity that Landlord ever had, currently has, or may have against Tenant or its successors and assigns relating to or arising out of the Lease, this Agreement or the Premises, including lease rejection claims under Section 502 of the Bankruptcy Code,

Lease Termination Agreement
Store #719
Winn-Dixie Stores, Inc./GRE Coralwood, L.P.
May 22, 2006
SGRJAX\85612.1

administrative expense claims under Section 503 of the Bankruptcy Code or any other claims relating to the Tenant's use and occupancy of the Premises. To the extent Landlord has filed, or files, a proof of claim with respect to the Lease and/or Premises, Landlord consents to the disallowance and expungement of such claim, with prejudice.

9.  **Entire Agreement.**  This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

10.  **Counterparts.**  This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement.

11.  **Severability.**  Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable.

12.  **Bankruptcy Court Approval.**  The Tenant's obligations are subject to approval by the Bankruptcy Court, and Landlord and Tenant agree to cooperate in obtaining such approval.

13.  **Discharge of Memorandum.**  If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant. Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

14.  **Jurisdiction.**  The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction.

15.  **Governing Law**.  This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located.

[SIGNATURES APPEARING ON THE NEXT PAGE]

Lease Termination Agreement
Store #719
Winn-Dixie Stores, Inc./GRE Coralwood, L.P.
May 22, 2006
SGRJAX\85612.1

**IN WITNESS WHEREOF,** the Landlord and Tenant have executed this Agreement as of the day and year first above written.

**Tenant:**

**WINN-DIXIE STORES, INC.**, a Florida corporation

By: _____
Name: ~~Bennett L. Nussbaum~~
Its: ~~SENIOR VICE PRESIDENT~~

5.17.06

LEGAL APPROVED
ATTY: _CBL_
DATE: _5/16/06_

**Landlord:**

**GRE CORALWOOD, L.P.**, a Delaware limited partnership

By: Stiles Corporation, as Investment Advisor

By: _____
Name: Rocco Ferrera
Its: Authorized Representative

Reviewed By
Roads
Date: 5/16/06

4