

# Chamberlain Hrdlicka
### Attorneys at Law

JIMMY L. PAUL
SHAREHOLDER
DIRECT DIAL NO. 404.658.5468
E-MAIL: jimmy.paul@chamberlainlaw.com

May 23, 2006

Thomas R. Califano, Esq.　　　　　　　　　*via thomas.califano@dlapiper.com*
DLA Piper Rudnick Gray Cary US LLP　　　*and via facsimile (212) 835-6001*
1251 Avenue of the Americas
New York, New York 10020-1104

    Re:    *In Re Winn Dixie Stories, Inc., et al.*, United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, Chapter 11 Jointly Administered Proceeding; Case No. 05-03817-3F1

Dear Mr. Califano:

    Confirming my voice mail message to you today:

(1)    We represent Lassiter Properties, Inc., which is the landlord on four separate leases to Winn-Dixie Stores, Inc. or its subsidiaries.

(2)    We spoke with Mike Comeford of Millbank Tweed today regarding the Ad Hoc Trade Committee's Motion for Substantive Consolidation and the objection and hearing dates set forth in the Notice of Hearing issued under your name on May 11, 2006. Mike Comeford said that his clear understanding of the deadlines was that the hearing on June 1, 2006 related to the question of whether or not filings would continue to be under seal, and not on the ultimate issue of substantive consolidation. Mr. Comeford also stated that objection deadlines noticed for May 25, 2006 were likewise related only to objections pertaining to the motion to file matters under seal, and not to the Motion for Substantive Consolidation.

    We would not anticipate filing objections to the Motion to File Documents Under Seal assuming documents are available pursuant to arrangements for confidentiality. However, at this point, we have not accepted the concept of substantive consolidation.

Atlanta p: 404.659.1410  p: 800.800.0745  f: 404.659.1852
191 Peachtree Street, N.E., 9th Floor, Atlanta, GA 30303

EXHIBIT "A"

Thomas R. Califano, Esq.
May 23, 2006
Page 2

We would appreciate you:

(1) Calling or having someone call us today to confirm what Mr. Comeford has stated, *i.e.*, that the hearing on June 1, 2006 relates to the Motion to File Documents Under Seal and not to the Motion for Substantive Consolidation, and that the May 25, 2006 objection date, likewise, relates only to the Motion to File Documents Under Seal.

(2) Informing us whether the documents and Brief filed under seal are available upon execution of any necessary confidentiality agreement and forward us a copy of the confidentiality agreement.

I realize you have limits on your time; however, I would appreciate a call back today to either me or John Rezac in my office so we may be clear about deadlines.

Thanks for your cooperation.

Yours very truly,

Jimmy L. Paul

JLP/prw
cc   John K. Rezac
     Lauri J. McKenna

224012.1
971152-000022:5/23/2006



## Chamberlain Hrdlicka
Attorneys at Law

JIMMY L. PAUL
SHAREHOLDER
DIRECT DIAL NO. 404.658.5468
E-MAIL: jimmy.paul@chamberlainlaw.com

May 24, 2006

Thomas R. Califano, Esq.  *via thomas.califano@dlapiper.com*
DLA Piper Rudnick Gray Cary US LLP  *and via facsimile (212) 835-6001*
1251 Avenue of the Americas
New York, New York 10020-1104

Re:   *In Re Winn Dixie Stories, Inc., et al.*, United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, Chapter 11 Jointly Administered Proceeding; Case No. 05-03817-3F1

Dear Mr. Califano:

I have not yet received a call or reply to my letter to you, yesterday. Meanwhile, after I transmitted that letter, we received a Notice from the Debtors' attorneys which seems to confirm Mike Comeford's statements to me yesterday regarding the purpose of the June 1, 2006 hearing, *i.e.*, a status and scheduling conference rather than a hearing on the merits of the Substantive Consolidation Motion.

This still leaves us with uncertainty about access to the brief, affidavits, and other documents the Ad Hoc Trade Committee has filed under seal.

Please transmit to me by email, the Confidentiality Agreement which the Ad Hoc Trade Committee is insisting creditors sign in order to gain access to the brief and supporting affidavits filed by the Ad Hoc Trade Committee. Also, please confirm that if we and our clients execute the Confidentiality Agreement, we will be furnished access to the documents filed under seal.

If you will not be in position to respond on the two above points today, please let us know immediately, and we will go forward with any necessary objections.

## EXHIBIT "B"

Thomas R. Califano, Esq.
May 24, 2006
Page 2

    Thanks for your cooperation.

                                    Yours very truly,

                                    Jimmy L. Paul

JLP/prw
cc    Clients
       R. Scott Shuker *(via email)*
       John K. Rezac
       Lauri J. McKenna

224012.1
971152-000022:5/23/2006

**Wright, Pamela**

**From:** Roldan, Vincent J. [Vincent.Roldan@dlapiper.com]
**Sent:** Wednesday, May 24, 2006 1:23 PM
**To:** Paul, James
**Subject:** Winn Dixie

Jimmy,

Tom Califano forwarded me your correspondence to him, relating to access to the brief and affidavit supporting our motion for substantive consolidation.

We would like to send you PDFs of the documents, but we are bound by a confidentiality agreement with the Debtors. We may disclose the documents to you if you have a written confidentiality agreement with the Debtors. Please contact counsel to the Debtors, Keith Sambur at Skadden Arps, at 212.735.3000.

Regards,

Vince


Vincent J. Roldan
DLA PIPER RUDNICK GRAY CARY US LLP
1251 Avenue of the Americas
New York, NY 10020-1104
212.896.2969 (direct phone)
212.884.8569 (direct fax)
vincent.roldan@dlapiper.com

www.dlapiper.com

**Serving clients globally**

---

The information contained in this email may be confidential and/or legally privileged. It has been sent fo the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communicatio in error, please contact the sender by reply email and destroy all copies of the original message. To contact our email administrator directly, send to postmaster@dlapiper.com

Thank you.

---



## Chamberlain Hrdlicka
Attorneys at Law

JIMMY L. PAUL
SHAREHOLDER
DIRECT DIAL NO. 404.658.5468
E-MAIL: jimmy.paul@chamberlainlaw.com

May 24, 2006

Mr. Keith Sambur            *via email ksambur@skadden.com*
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, New York 10036

     Re:     *In Re Winn Dixie Stories, Inc., et al.*, United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, Chapter 11 Jointly Administered Proceeding; Case No. 05-03817-3F1

Dear Mr. Sambur:

Please find self-explanatory correspondence from me to Tom Califano, dated May 23, 2006 and today. Also, please find enclosed the reply to this correspondence from Vincent J. Roldan. The Notice dated May 11, 2006 implied we should deal with the Trade Committee. However, Mr. Rodan's letter directs us to you.

Please send us the form of the Confidentiality Agreement mentioned in Vincent Roldan's letter to me, and in the motion papers filed by the Ad Hoc Trade Creditors Committee. We need to see the form of the Confidentiality Agreement and we need you to confirm that if we and our clients sign the agreement we will have access to the papers filed by the Ad Hoc Trade Creditors Committee. Because of the objection deadline (*i.e.*, tomorrow), we would appreciate you forwarding the Confidentiality Agreement today, at the earliest possible time.

     Thanks for your cooperation.

                                     Yours, very truly,

                                     James L. Paul

JLP/als
Enclosures
cc:    R. Scott Shuker *(via email)*
       Jimmy D. Parrish *(via email)*
       John K. Rezac
       Lauri J. McKenna

224111.1
971152-000022:5/24/2006

## EXHIBIT "D"

## Wright, Pamela

| | |
|---|---|
| **From:** | Roldan, Vincent J. [Vincent.Roldan@dlapiper.com] |
| **Sent:** | Wednesday, May 24, 2006 6:39 PM |
| **To:** | Paul, James; MBakst@ebcblaw.com; Staib@BlankRome.com; embarker@bellsouth.net; lworley@glynncounty_ga.gov |
| **Cc:** | Califano, Thomas R. |
| **Subject:** | Winn Dixie- confidentiality agreement |

All,

As you may know, we filed, on behalf of the Ad Hoc Trade Committee, a motion that seeks substantive consolidation of the debtors in the Winn Dixie case. We are seeking authority to file a brief and affidavit in support of this motion (the "Supporting Documents") under seal.

Attached please find our confidentiality agreement with the Debtors. If you agree to be bound by this document, please indicate such consent by indicating whom you represent, counter-signing this agreement and sending it to me.

Regards,

Vince

<<ca.pdf>>


Vincent J. Roldan
DLA PIPER RUDNICK GRAY CARY US LLP
1251 Avenue of the Americas
New York, NY 10020-1104
212.896.2969 (direct phone)
212.884.8569 (direct fax)
vincent.roldan@dlapiper.com

www.dlapiper.com

**Serving clients globally**

---

The information contained in this email may be confidential and/or legally privileged. It has been sent fo the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you ar( hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communicatioi in error, please contact the sender by reply email and destroy all copies of the original message. To contact our email administrator directly, send to postmaster@dlapiper.com

5/25/2006                                                      EXHIBIT "E"

Thank you.

---

March 30, 2006

**<u>VIA FACSIMILE</u>**

WINN-DIXIE STORES, INC.
5050 Edgewood Court
Jacksonville, FL 32254-3699

Attn: Lawrence Appel, Esq.
Senior Vice President and General Counsel

   Re: In re Winn-Dixie Stores, Inc., et al. –Ad Hoc Committee of
     <u>Trade Creditors Confidentiality Agreement</u>

Dear Mr. Appel:

   DLA Piper Rudnick Gray Cary US LLP ("<u>we</u>" or "<u>us</u>") is counsel to the Ad Hoc Committee of Trade Creditors (including its legal and financial advisors, the "<u>Trade Committee</u>"), whose members are listed on Exhibit A[1] hereto (the "Members"), formed in the chapter 11 cases (the "<u>Chapter 11 Cases</u>") of Winn-Dixie Stores, Inc. and certain of its subsidiaries (together, the "<u>Company</u>") pending in the United States Bankruptcy Court for the Middle District of Florida (the "<u>Bankruptcy Court</u>"). In connection with the Chapter 11 Cases, you will furnish us with certain information that we may request from time to time in connection with the Chapter 11 Cases and that you may consider non-public, confidential or proprietary in nature relating to the Company, upon the terms and subject to the conditions set forth herein.

   As used in this Agreement, the following terms have the following meanings:

   "<u>Confidential Information</u>" includes all information that is non-public, confidential or proprietary, whether written or oral, furnished to us by you or on your behalf from the date hereof through the term of this Agreement that is identified as either confidential, propriety or otherwise not generally available to the public including, without limitation, information relating to the terms of any proposed changes in your operations or organizational or capital structure; <u>provided</u>, <u>however</u>, that "Confidential Information" shall in no event include any information that:

   (a) is filed with the Bankruptcy Court without seal or is or becomes generally available to the public generally, other than as a result of knowing and wrongful disclosure or actions by us or our Representatives (as defined below), or disclosed to us on a nonconfidential basis from a source (other than the Company or its Representatives) that we reasonably believe is not prohibited from disclosing such

---

[1] It is contemplated that members will be added to the Trade Committee. From time to time we will advise the Company of additions to Exhibit "A." All new members will agree to the provisions hereof before they are provided Confidential Information.

1

-CHGO1:30771634.v2 1

information to us by a contractual, legal or fiduciary obligation to the Company or any of its Representatives;

(b)     was in our or any of our Representatives' (or any of the Members' or their Representatives') possession (except if obtained on a confidential basis) before the commencement of the Chapter 11 Cases and was obtained from a source that we reasonably believe was not prohibited by a contractual, legal or fiduciary obligation to the Company or any of its Representatives from disclosing such information to us; or

(c)     is developed by us or our Representatives (or any of the Members' or their Representatives') from information that we or our Representatives (or any of the Members or their Representatives) have or receive from a source (other than the Company or its Representatives) that we reasonably believe is not prohibited from disclosing such information to us by a contractual, legal or fiduciary obligation to the Company or any of its Representatives.

"Representatives" means, with respect to any person or entity, the directors, officers, and employees of such person or entity, and any partners, trustees, agents, representatives, consultants, accountants, financial advisors, investment advisers, experts, "affiliates" (within the meaning of section 101(2) of the Bankruptcy Code), legal counsel or other professional advisors to such person or entity; and with respect to us, also means other legal counsel and other professional advisors to the Trade Committee.

"You" or "you" refers, collectively, to:

(a)     the Company;

(b)     the Company's officers and directors;

(c)     any financial advisors to the Company, including, without limitation, The Blackstone Group and XRoads Solutions Group, LLC; and

(d)     any legal counsel to the Company, including, without limitation, Skadden, Arps, Slate, Meagher & Flom LLP and Smith Hulsey & Busey;

and the term "your" has a correlative meaning.

In consideration of your furnishing us with the Confidential Information and the mutual promises made herein, you and we agree as follows:

1.     We hereby agree with the Company for the term of this Agreement to maintain as confidential and protect the Confidential Information in accordance with the standards with which we treat our own confidential information but in no event less than a reasonable standard of care.

2

2. We agree to cause our Representatives and to cause each Member and their Representatives to observe the terms of this Agreement, and we acknowledge that we will be responsible for any breach of this Agreement by our Representatives and agree to cause each Member to acknowledge that it will be responsible for any breach of this Agreement by its Representatives to the same extent as if we or any respective Member, as the case may be, had breached this Agreement directly.

3. If a Representative believes that any material that has been classified or designated as "Confidential" is not properly subject to the confidentiality provisions of this Agreement or does not constitute non-public information, that party may at any time so notify the Company in writing (the "Objection Notice") and provide a description of the material that the objecting party believes should be freed from the constraints of this Agreement. Unless the Company responds in writing within ten (10) days of receipt of the Objection Notice and agrees that such material may be removed from the "Confidential" classification or designation provided by this Agreement, the objecting party may file a motion with the Bankruptcy Court seeking a judicial determination of whether such material should be classified or designated as confidential in light of the material or applicable law. Any such motion shall be filed under seal or shall be presented in a manner that does not disclose any information claimed to be "Confidential." Until the Bankruptcy Court rules on such motion, the objected to material shall continue to be deemed "Confidential."

4. If Confidential Information subject to a claim of attorney-client privilege, work product doctrine or any other ground on which production of such information should not be made is nevertheless inadvertently produced by the Company to us or one of our Representatives, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege, work product or other ground for withholding production to which the Company would otherwise be entitled. If a claim of inadvertent production is made pursuant to this paragraph with respect to information then in our custody or in the custody of one of our Representatives, we or such Representative shall, upon written request by the Company, and to the extent practicable, promptly return to the Company that material (including all copies thereof) as to which inadvertent production has been made, and we or such Representative shall not further use such information for any purpose. In the event of a dispute, however, the Company shall have the right to make application to the Bankruptcy Court to compel the return of such documents at the Company's sole expense and the Committee shall have the right to contest whether such documents are subject to a valid claim of privilege or otherwise should have been produced.

5. Notwithstanding the provisions of Section 1 hereof, we may disclose the Confidential Information: (i) to each Member and their and our Representatives, provided that any of such Members and Representatives (including any additional Members and their Representatives not presently set forth on Exhibit A hereto) shall have first agreed in writing to be bound by the terms of this Agreement; (ii) to any other creditor, equity holder or party in interest of the Company that is party to a written confidentiality agreement with the Company, the existence and validity of which is confirmed in writing by the Company; (iii) as may be required by law, rule or regulation; (iv) to the Bankruptcy Court in connection with the Chapter

3

11 Cases and any proceedings related thereto under seal or in camera; and (v) to any other person or entity if the Company consents in advance in writing.

6. Any restrictions imposed upon us and each Member, including those regarding the disclosure of Confidential Information, shall terminate upon the earliest to occur of two (2) years from (i) the effective date of a chapter 11 plan(s), (ii) the dismissal of the Chapter 11 Cases or (iii) the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. Notwithstanding the foregoing, any Confidential Information given by the Company to us or our Representatives or any summaries, copies or reports created therefrom that you designate as "Highly Confidential," will remain subject to this Agreement unless and until made public by you; provided, however, that the terms of Paragraph 3 to this Agreement shall also apply to this Paragraph 6.

7. We (and each Member solely as to itself) may at any time terminate this Agreement, but shall remain bound by the terms hereof with respect to Confidential Information received prior to the date of such termination. If we (or any Member solely as to itself) determine to terminate this Agreement, you will promptly be advised in writing of that decision.

8. In the event that we are or one of our Members or a Representative, of any of the foregoing, is requested or required by oral question or request for information or documents in a legal proceeding or by interrogatory, subpoena, civil investigative demand or similar process (any of these circumstances rendering a person a "<u>Witness</u>") to disclose any Confidential Information, we will, unless prohibited by law, rule or regulation, provide the Company with prompt notice of such request or requirement, being not less than ten (10) days before the required disclosure, or if impracticable under the circumstances, such shorter period of time as is practicable under the circumstances, in order that the Company may seek an appropriate protective order at its sole expense or waive compliance with the provisions of this Agreement (or both). If, in the absence of a protective order or the receipt of a waiver under this Agreement, the Witness is nonetheless compelled to disclose Confidential Information to any tribunal, governmental authority or administrative agency under applicable law, then the Witness may disclose such information to the tribunal, governmental authority or administrative agency. We (and any Member) shall not be liable for the disclosure to such tribunal, governmental authority or administrative agency unless such disclosure was caused or resulted from a previous disclosure by us or the Member (as the case may be) or of any Representative of the foregoing not permitted under this Agreement or unless we failed to give the notice described in this Paragraph.

9. Nothing in this Agreement shall preclude us from taking any action to obtain information relating to the Company or the Chapter 11 Cases through any other lawful means, including, without limitation, in, through or in connection with any legal proceeding, by subpoena, discovery request or otherwise. In addition to the rights hereunder, we shall have the right to seek discovery of any information already provided hereunder. Any information obtained by us pursuant to action taken under this Paragraph 9 shall be "Confidential Information" for purposes of this Agreement if so identified by you.

10. We will (and each Member shall so commit to) promptly, upon the reasonable request of the Company, either (at our and the Member's option) (i) return all materials containing Confidential Information furnished by you to us, without retaining any copy or reproduction thereof; or (ii) destroy such materials; provided, however, that prior to the return of such materials, counsel or other Representatives for the Trade Committee may review and redact therefrom any information that is protected by the attorney-client privilege or work product doctrine; provided further, however, that we and our Representatives shall have the right to retain copies of any such returned or destroyed Confidential Information for archival purposes only. In the event of a request for the return or destruction of less than all the Confidential Information in our (or a Member's) possession, all other documents constituting Confidential Information shall be held subject to this Agreement and, to the extent permitted or required by any document retention or similar policy, may be destroyed. Notwithstanding the return or destruction of any Confidential Information, we (and each Member signatory) will continue to be bound by our obligations (including your obligations of confidentiality) under this Agreement for the term hereof.

11. We agree that money damages may not be a sufficient remedy for any breach of this Agreement and that the Company would be irreparably harmed in the event of such a breach. Accordingly, the Company shall be entitled to seek from a court of competent jurisdiction specific performance and injunctive or other equitable relief as a remedy for any such breach.

12. It is understood and agreed that no failure or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. The agreement set forth in this Agreement may only be waived or modified by an agreement in writing signed on behalf of the parties hereto.

13. We agree that we will not contact, and will refrain from initiating directly or indirectly, any communications with any potential purchaser of the Company's assets identified in the Confidential Information, unless any such contact or communication has been previously consented to in writing by the Company.

14. THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO ANY PRINCIPLES OF CHOICE OF LAW THEREOF WHICH WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION TO THE EXTENT NOT PREEMPTED BY FEDERAL BANKRUPTCY LAW.

15. This Agreement may be delivered by courier, mail, facsimile or telecopy. It may be executed in counterparts, each of which shall be deemed to be an original, and all of such counterparts taken together shall be deemed to constitute one and the same instrument.

16. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successor and assigns. This Agreement may not be assigned

by us without the prior written consent of the Company. There are no third-party beneficiaries of this Agreement. As used herein, the word "or" shall not be construed as exclusive.

17. This Agreement represents the entire agreement of the parties hereto with respect to the subject matter hereof and any amendment, supplement or modification hereto must be in writing and signed on behalf of the parties hereto. The Company hereby represents and warrants that the requisite corporate approvals have been obtained with respect to the execution of this Agreement and that the undersigned is duly authorized to execute this Agreement on behalf of the Company.

18. *Except as otherwise provided herein, all notices and other communications required under this Agreement shall be in writing and shall become effective when delivered by facsimile and electronic mail (confirmed by mail), overnight courier service, registered or certified mail, postage prepaid, addressed as set forth below or to such other addresses as may be hereafter designated in writing by such party to the other parties or by hand delivery to such party at its address as set forth below:*

    (a)    <u>For the Company</u>:

        Skadden, Arps, Slate, Meagher & Flom LLP
        Four Times Square
        New York, New York 10036
        Attn: Sally M. Henry
        Telephone: 212-735-2560
        Facsimile: 212-735-2000
        and by electronic mail: shenry@skadden.com

    (b)    <u>For the Trade Committee</u>:

        DLA Piper Rudnick Gray Cary US LLP
        6225 Smith Avenue
        Baltimore, Maryland 21209
        Attn: Mark J. Friedman
        Telephone: (410) 580-4153
        Facsimile: (410) 580-3153
        and by electronic mail: mark.friedman@dlapiper.com

and with a copy to:

        DLA Piper Rudnick Gray Cary
        1251 Avenue of the Americas
        New York, NY 10020
        Attn: Thomas R. Califano
        Telephone: (212) 835-6190
        Facsimile: (212) 884-8690
        and by electronic mail: thomas.califano@dlapiper.com

19. We acknowledge that neither the Company, the Company's management, nor any of their respective affiliates, agents or advisors makes any express or implied representation or warranty as to the accuracy or completeness of the Confidential Information, and each such party expressly disclaims any and all liability that may be based on the Confidential Information, errors therein or omissions therefrom.

Please confirm your agreement with the foregoing by signing and returning to the undersigned the duplicate copy of this Agreement enclosed herewith.

Sincerely,

DLA PIPER RUDNICK GRAY CARY US LLP

By:_____
Name: Mark J. Friedman
Title: Partner, Counsel to Trade Committee

Accepted and agreed as of
the date first written above:

**WINN-DIXIE STORES, INC.**

By:_____
Name:
Title:

7

~CHGO1:30771634.v2 1