Hearing Date: June 15, 2006, 1:00 p.m.
Objection Deadline: June 8, 2006, 4:00 p.m.

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | *Chapter 11* |
| Debtors.¹ | Jointly Administered |

## MOTION FOR ORDER APPROVING COMPROMISE OF DISPUTES BETWEEN DEBTORS AND SCHREIBER FOODS, INC., INCLUDING AGREED DISMISSAL OF LAWSUIT, REJECTION OF SUPPLY AGREEMENT, EXECUTION OF NEW AGREEMENT AND DISPOSITION OF CLAIMS

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order under 11 U.S.C. §§ 105, 363, 365 and 502 and Fed. R. Bankr. P. 9019 approving a compromise reached between the Debtors and Schreiber Foods, Inc. ("Schreiber") that resolves all issues in dispute between them, including pending litigation, past and future business relationship issues, and associated bankruptcy claims (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

### Background

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On March 1, 2005, pursuant to Section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested by this Motion are Sections 105, 363, 365 and 502 of the Bankruptcy Code, and such relief is subject to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9019").

**Relevant Facts**

6. Schreiber is a manufacturer and distributor of various food products, including natural and processed cheese. On April 2, 2002, Schreiber purchased from Winn-Dixie a cheese manufacturing facility. As part of the transaction, Schreiber and Winn-Dixie entered into a 10-year supply agreement, under which Schreiber agreed to supply cheese products to Winn-Dixie (as later defined, the "Original Contract"). Also as part of the transaction, Schreiber and

Winn-Dixie settled certain patent infringement allegations made by Schreiber relating to a machine used by Winn-Dixie at the manufacturing facility, with Winn-Dixie agreeing to make payments or provide credits to Schreiber not to exceed $6 million, depending on certain contingencies (the "Patent Settlement").

7. At the time of the transaction, Schreiber was involved in patent litigation against the manufacturer of the machine at issue. It is Winn-Dixie's position that it agreed to the Patent Settlement only because Schreiber had successfully obtained on appeal the reinstatement of a $26 million jury verdict against the machine manufacturer. Nevertheless, Winn-Dixie's $6 million obligation was structured to be contingent upon certain further developments in Schreiber's patent litigation against the manufacturer.

8. The reinstated jury verdict upon which Winn-Dixie relied in agreeing to the Patent Settlement was later vacated by the trial court. Although the appeals court agreed that the jury verdict was properly vacated, it held that Schreiber was entitled to a new trial. No new trial has ensued to date, due in part to a waiver by Schreiber of its damage claim against the machine manufacturer.

9. In the meantime, Winn-Dixie had paid approximately $2.3 million of the $6 million owed under the Patent Settlement and Schreiber was seeking to collect the balance. Upon learning of the events in Schreiber's patent litigation, Winn-Dixie filed suit against Schreiber in the United States District Court for the Eastern District of Wisconsin, Green Bay Division (as later defined, the "Litigation"), alleging material misrepresentation in the negotiation of the Patent Settlement and seeking a return of amounts paid and cancellation of further obligations owed. Schreiber counterclaimed for the remaining amount due under the Patent Settlement.

10. As of the Petition Date, the Litigation was pending and the Original Contract continued in effect with a remaining term of six years. Schreiber filed in the chapter 11 cases a proof of claim against Winn-Dixie in the amount of $4,066,837.70, representing remaining amounts allegedly owed under the Patent Settlement, and a proof of claim in the amount of $2,200,407.99, representing prepetition amounts allegedly owed under the Original Contract for sales of product by Schreiber to Winn-Dixie.[2] On October 7, 2005, Schreiber also filed a motion to compel Winn-Dixie to assume or reject the Original Contract, which motion remains pending.

### Relief Requested

11. The Debtors request that the Bankruptcy Court enter an order approving a compromise of all disputed issues existing between them and Schreiber, with the following components:

    (a)    Dismissal with prejudice of the lawsuit entitled *Winn-Dixie Stores, Inc. v. Schreiber Food, Inc.*, pending in the Eastern District of Wisconsin, Green Bay Division, C.A. No. 2:04cv794, including all issues raised in the complaint, the counterclaim and other filings (the "Litigation").

    (b)    Rejection of the Supply Agreement between Winn-Dixie Stores, Inc. and Schreiber, dated April 2, 2002, including any amendments (the "Original Contract").

    (c)    Execution of a new supply agreement in the name of Winn-Dixie Procurement, Inc. (the "New Contract") that will have the following material terms:

        (i)    A three-year duration;

        (ii)    No liability termination right in favor of the Debtors in the event the Debtors' chapter 11 plan of reorganization is not confirmed or does not become effective, except as provided in (d) below;

        (iii)    Exclusivity for Schreiber as the Debtors' sole Winn-Dixie branded cheese supplier;

---

[2] The $2,200,407.99 proof of claim has been transferred by Schreiber to JP Morgan Chase Bank NA. and is not part of the settlement proposed in this Motion.

4

      (iv)    No minimum volume purchase obligations on the part of the Debtors, but price incentives (discounts) in favor of the Debtors based upon the pounds of product purchased;

      (v)    Agreed upon pricing and agreed terms for packaging and promotion; and

      (vi)    Credit terms for the Debtors of net 15 EFT.

(d)    Disallowance of proof of claim no. 10961 against Winn-Dixie Stores, Inc. in the amount of $4,066,837.70, at such time as the Debtors' confirmed chapter 11 plan of reorganization becomes effective; provided, however, that if the new supply agreement is terminated because the Debtors' chapter 11 plan of reorganization is not confirmed or does not become effective, then proof of claim no. 10961 will be allowed as a general unsecured claim in the amount of $4,066,837.70.

(e)    Waiver by Schreiber of all claims (except as conditionally provided in (d) above with respect to proof of claim no. 10961) it had or may have had against the Debtors as of May 10, 2006, including, without limitation, any claim for liquidated damages arising from early termination of the Original Contract or any claim for rejection damages arising from the rejection of the Original Contract.

(f)    Waiver by the Debtors of all claims they had or may have had against Schreiber as of May 10, 2006, including, without limitation, any claim under chapter 5 of the Bankruptcy Code.

## **Support for Requested Relief**

12.    A compromise constitutes a disposition of property of the estate that must be approved by the bankruptcy court if outside the ordinary course of business. See 11 U.S.C. § 363(b). Bankruptcy Rule 9019 sets forth the standard for bankruptcy court approval of compromises of controversies, providing that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

13.    To approve a settlement under Bankruptcy Rule 9019, a bankruptcy court must determine that the settlement is supported by adequate consideration and that it is fair, equitable, and in the best interests of the debtor's estate. In doing so, bankruptcy courts consider

5

a variety of factors, including (a) the probability of success in the litigation; (b) the difficulties associated with collection; (c) the complexity of the litigation and the attendant expense, inconvenience and delay; and (d) the paramount interests of, and deference to the views of, the creditors. See *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990).  A consideration of these factors in the context of the compromise outlined above clearly supports approval of the compromise.

14. Assuming a successful conclusion to these cases, the compromise will relieve the Debtors from the obligation to pay the remaining amount owed under the Patent Settlement, which Schreiber alleges to be $4,066,837.70.  Although the Debtors believe their chances of avoiding the obligation by proving misrepresentation in the Litigation are good, any misrepresentation case possesses complexities that impact the likelihood of success.  In this case, the complexities are heightened because the direct misrepresentations were made to a court, not to the Debtors.

15. Schreiber will argue that the Debtors did not rely upon the alleged misrepresentations in agreeing to the Patent Settlement in conjunction with the sale transaction, but settled instead because it made economic sense in the context of the larger deal.  Also, because the representations concerned the value of a legal claim, Schreiber will argue that the Debtors had the opportunity to independently judge the value of that claim and come to its own determination based upon the advice of legal counsel.  Also, Schreiber has argued that the misrepresentation involves technical legal issues that do not reflect upon the value of the jury award itself.

16. These complexities create risk in the Litigation and that risk supports compromise of the issues in dispute.  The release by Schreiber of remaining amounts owed under

6

the Patent Settlement in exchange for the dismissal of the misrepresentation charges, when combined with a re-negotiation of the supply relationship through the rejection of the Original Contract and execution of the New Contract with more favorable terms, and the waiver of claims, fairly concludes the issues between the parties. As for the waiver of claims by the Debtors, the Debtors are not aware of any material claims against Schreiber, other than those asserted in the Litigation, that will be foreclosed by the waiver.

17. In the absence of the compromise, the parties would be required in the continuing Litigation to take a number of depositions, retain experts, probably engage in summary judgment practice, and then prepare for trial. While the costs for that work have not been calculated, they certainly would, at a minimum, consume several hundred thousand dollars. In the best case, trial would take place near the end of 2006, with an appeal to follow. In addition, the Debtors' key witness is a former employee and therefore not within the Debtors' control. Although he has been cooperative to date, there is no assurance that he will be cooperative in the future, or that he will be willing to travel from his home in Jacksonville, Florida for a trial in Green Bay, Wisconsin.

18. With confirmation of the Debtors' plan of reorganization, the compromise will result in the extinguishment of a $4,066,837.70 obligation without further draining the Debtors' resources in both prosecuting the claims against Schreiber and defending against Schreiber's efforts to enforce the Patent Settlement. Moreover, the compromise has facilitated the re-negotiation of the supply terms in the Original Contract, which have become uneconomic in the context of the Debtors' new footprint. Without the settlement, the Debtors would be forced to reject the Original Contract and incur the potential disruption of finding an alternative supplier, along with a significant rejection damage claim, or would be forced to assume the Original

Contract with all of its burdens and incur cure obligations that would have administrative claim status.

19.     Although the proposed extinguishment of the $4,066,837.70 obligation is contingent upon confirmation of a plan of reorganization, the remote possibility that the contingency will not be satisfied is more than outweighed by the waiver of a rejection damage claim relating to the Original Contract and by the no liability termination right granted under the New Contract in the event a plan is not confirmed.

20.     As to the rejection component of the compromise, Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." A debtor's right to reject executory contracts and unexpired leases is a fundamental component of the bankruptcy process, as it provides a debtor with a mechanism to eliminate financial burdens to the estate. See In re Wells, 227 B.R. 553, 564 (Bankr. M.D. Fla. 1998). The decision to reject an executory contract or unexpired lease is primarily administrative and should be given great deference by a court, subject only to review under the "business judgment" rule. See In re Gardinier, Inc., 831 F.2d 974, 976 n.2 (11th Cir. 1987). The business judgment rule requires the debtor to establish that rejection of the agreement will likely benefit the estate. Here, for the reasons discussed above, the Debtors' business judgment clearly supports rejection of the Original Contract as a component of the proposed compromise.

21.     The proposed compromise is in the best interest of the Debtors and their estates and creditors and should be approved.

**<u>Notice</u>**

22. Notice of this Motion has been provided to (a) counsel to the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) counsel for Schreiber. No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (i) enter an order in the form of Exhibit A approving the compromise reached with Schreiber, including authorizing as part of such compromise the dismissal of the Litigation, the rejection of the Original Contract, and the disposition of the proof of claim held by Schreiber, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: May 26, 2006

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By  *s/ D. J. Baker*  <br>     D. J. Baker <br>     Sally McDonald Henry <br>     Rosalie Walker Gray | By  *s/ Cynthia C. Jackson*  <br>     Stephen D. Busey <br>     James H. Post <br>     Cynthia C. Jackson, F.B.N. 498882 |
| Four Times Square <br> New York, New York 10036 <br> (212) 735-3000 <br> (212) 735-2000 (facsimile) <br> djbaker@skadden.com | 225 Water Street, Suite 1800 <br> Jacksonville, Florida 32202 <br> (904) 359-7700 <br> (904) 359-7708 (facsimile) <br> cjackson@smithhulsey.com |
| Co-Counsel for the Debtors | Co-Counsel for the Debtors |

1068372.03-New York Server 7A - MSW

EXHIBIT A

ORDER APPROVING COMPROMISE OF DISPUTES BETWEEN
DEBTORS AND SCHREIBER FOODS, INC., INCLUDING AGREED DISMISSAL OF
LAWSUIT, REJECTION OF SUPPLY AGREEMENT, EXECUTION OF NEW AGREEMENT
<u>AND DISPOSITION OF CLAIMS</u>

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER APPROVING COMPROMISE OF DISPUTES BETWEEN
DEBTORS AND SCHREIBER FOODS, INC., INCLUDING AGREED DISMISSAL OF
LAWSUIT, REJECTION OF SUPPLY AGREEMENT, EXECUTION OF NEW
AGREEMENT AND DISPOSITION OF CLAIMS**

These cases came before the Court for hearing on June 15, 2006, upon the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors")[1], for entry of an order under 11 U.S.C. § 105, 363, 365 and 502 and Fed. R. Bankr. P. 9019 approving a compromise reached between the Debtors and Schreiber Foods, Inc. ("Schreiber") that resolves all issues in dispute between them, including pending litigation, past and future business relationship issues, and associated bankruptcy claims (the "Motion"). The Court has read the Motion and considered the representations of counsel. Based upon the representations of counsel and without objection by the United States Trustee or any other interested parties, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

2. The compromise described in the Motion is approved.

3. The Debtors are authorized to seek the dismissal with prejudice of the lawsuit entitled Winn-Dixie Stores, Inc. v. Schreiber Food, Inc., pending in the Eastern District

---

[1] All capitalized terms not otherwise defined in this order shall have the meaning ascribed to them in the Motion.

of Wisconsin, Green Bay Division, C.A. No. 2:04cv794, including all issues raised in the complaint, the counterclaim and other filings therein.

       4.     The Supply Agreement between Winn-Dixie Stores, Inc. and Schreiber dated April 2, 2002, including any amendments (the "Original Contract"), is rejected effective as of the commencement date of the new supply agreement between Winn-Dixie Procurement, Inc. and Schreiber (the "New Contract").

       5.     Proof of claim no. 10961 against Winn-Dixie Stores, Inc. in the amount of $4,066,837.70 shall be disallowed and expunged in full at such time as the Debtors' confirmed chapter 11 plan of reorganization becomes effective, without further action by the Debtors, Schreiber or this Court; provided, however, that if the New Contract is terminated because the Debtors' chapter 11 plan of reorganization is not confirmed or does not become effective, then proof of claim no. 10961 shall be allowed as a general unsecured claim in the amount of $4,066,837.70, without further action by the Debtors, Schreiber or this Court.

       6.     Except as conditionally provided for in paragraph 5, all claims that Schreiber had or may have had against the Debtors as of May 10, 2006, including, without limitation, any claim for liquidated damages arising from early termination of the Original Contract or any claim for rejection damages arising from the rejection of the Original Contract, are waived and relinquished in full.

       7.     All claims that the Debtors had or may have had against Schreiber as of May 10, 2006, including, without limitation, any claim under chapter 5 of the Bankruptcy Code, are waived and relinquished in full.

       8.     The Motion of Schreiber Foods, Inc. to Have the Court Set a Specific Date for the Debtor to Assume or Reject Executory Contract, Pursuant to Bankruptcy Code § 365(d)(2)

3

dated October 7, 2005 (Docket No. 3815) is resolved by the terms of this Order and is dismissed with prejudice.

        9.       The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

        10.     Notwithstanding any provisions to the contrary in the Federal Rules of Bankruptcy Procedure, including Rules 6004(g) and 6006(d), this Order shall take effect immediately upon entry.

Dated _____, 2006 in Jacksonville, Florida.

                                                                  Jerry A. Funk
                                                                  United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.