# EXHIBIT A

LINK 23

BOOK 2919 PAGE 118

This instrument was prepared by, and the
recorded original should be returned to:

Patrick J. Clarke, Esq.
Glass, McCullough, Sherrill & Harrold, LLP
1409 Peachtree Street, N.E.
Atlanta, Georgia 30309



# COLLATERAL ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT made as of the 17th day of December, 1997, by N. K. C. PROPERTIES, a Georgia general partnership having its principal place of business at 1716 Cleveland Highway, Dalton, Georgia 30720 ("Assignor"), to MAIN AMERICA CAPITAL, L.C., a limited liability company organized and existing under the laws of the State of Florida, having its principal place of business at 800 Mt. Vernon Highway, Suite 120, Atlanta, Georgia 30328-4225 ("Assignee").

## WITNESSETH:

THAT Assignor for good and valuable consideration, receipt whereof is hereby acknowledged, hereby grants, transfers and assigns to Assignee the entire lessor's interest in and to all leases and other agreements affecting the use, enjoyment, or occupancy of all or any part of that certain lot or piece of land, more particularly described in Exhibit "A" annexed hereto and made a part hereof, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (hereinafter collectively referred to as the "Mortgaged Property");

TOGETHER WITH all other leases and other agreements affecting the use, enjoyment or occupancy of the Mortgaged Property now or hereafter made affecting the Mortgaged Property or any portion thereof, together with any extension or renewal of the same, this Assignment of other present and future leases and present and future agreements being effective without further or supplemental assignment;

The leases and other agreements described above together with all other present and future leases and present and future agreements and any extension or renewal of the same are hereinafter collectively referred to as the "Leases";

TOGETHER WITH:

(a)    all rents, income, issues and profits arising from the Leases and renewals thereof and together with all rents, income, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Mortgaged Property (hereinafter collectively referred to as the "Rents"),

GIVEN AS ADDITIONAL SECURITY FOR THAT CERTAIN MORTGAGE AND SECURITY AGREEMENT OF EVEN DATE HEREWITH.

334170.1/2207.2146

BOOK 2919 PAGE 119

(b) all of Assignor's claims and rights (the "Bankruptcy Claims") to the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code, 11 U.S.C. §101 et seq., as the same may be amended (the "Bankruptcy Code").

(c) all of Assignor's right, title and interest in and claims under any and all lease guaranties, letters of credit and any other credit support given by any guarantor in connection with any of the Leases (individually, a "Lease Guarantor", collectively, the "Lease Guarantors") to Assignor (individually, a "Lease Guaranty", collectively, the "Lease Guaranties").

(d) All proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

THIS ASSIGNMENT is made in consideration of that certain mortgage loan made by Assignee to Assignor evidenced by that certain note made by Assignor to Assignee, dated the date hereof, in the principal sum of $5,080,000.00 (the "Note"), and secured by that certain deed to secure debt and security agreement given by Assignor to Assignee, dated the date hereof, covering the Mortgaged Property and intended to be duly recorded (the "Mortgage"). The principal sum, interest and all other sums due and payable under the Note and Mortgage are collectively referred to as the "Debt". The documents other than this Assignment, the Note or the Mortgage now or hereafter executed by Assignor and/or others and by or in favor of Assignee which wholly or partially secure or guarantee payment of the Debt are hereinafter referred to as the "Other Security Documents."

ASSIGNOR WARRANTS that (i) Assignor is the sole owner of the entire lessor's interest in the Leases; (ii) the Leases are valid and enforceable and have not been altered, modified or amended in any manner whatsoever except as herein set forth; (iii) none of the Rents reserved in the Leases have been assigned or otherwise pledged or hypothecated; (iv) none of the Rents have been collected for more than one (1) month in advance; (v) Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Assignor or the Mortgaged Property; (vi) the premises demised under the Leases have been completed and the tenants under the Leases have accepted the same and have taken possession of the same on a rent-paying basis; and (vii) there exist no offsets or defenses to the payment of any portion of the Rents.

ASSIGNOR COVENANTS with Assignee that Assignor (a) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (b) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed, short of termination thereof; (c) shall not collect any of the Rents more than one (1) month in advance; (d) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (e) shall not alter, modify or change the terms of the Leases without the prior written consent of Assignee, or, except if the lessee is in default thereunder, cancel or terminate any Lease or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Mortgaged Property or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (f) shall not alter, modify or change the terms of any guaranty of any of the Leases or cancel or terminate any such guaranty without the prior written consent of Assignee; (g) shall not consent to any assignment of or subletting under the Leases not in accordance with its terms, without the prior written consent of Assignee; (h) shall execute and deliver at the request of Assignee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Assignee shall from time to time require; and (i) shall not enter into any new lease of the Mortgaged Property except on a form of lease approved by Assignee.

ASSIGNOR FURTHER COVENANTS with Assignee that (A) all Leases shall be written on the standard form of lease which has been approved by Assignee; (B) upon request, Assignor shall furnish Assignee with executed copies of all Leases; (C) no material changes may be made to the Assignee-approved standard lease without the prior written consent of Assignee; (D) in addition, all renewals of Leases and all proposed leases shall provide for rental rates comparable to existing local market rates and shall be arms-length transactions; (E) all Leases shall provide that they are subordinate to the Mortgage and that the lessees agree to attorn to Assignee.

2

BOOK 2919 PAGE 120

THIS ASSIGNMENT is made on the following terms, covenants and conditions:

## GENERAL PROVISIONS

1. **PRESENT ASSIGNMENT.** Assignor does hereby absolutely and unconditionally assign to Assignee Assignor's right, title and interest in all current and future Leases and Rents, Lease Guaranties, and Bankruptcy Claims, it being intended by Assignor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Assignee shall not be construed to bind Assignee to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise impose any obligation upon Assignee. Assignor agrees to execute and deliver to Assignee such additional instruments, in form and substance satisfactory to Assignee, as may hereafter be requested by Assignee to further evidence and confirm such assignment. Nevertheless, subject to the terms of this paragraph 1, Assignee grants to Assignor a revocable license to operate and manage the Mortgaged Property and to collect the Rents and other sums due under the Lease Guaranties and Bankruptcy Claims. Assignor shall hold the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Assignee for use in the payment of such sums. Upon an Event of Default, as defined in the Note and the Mortgage, the license granted to Assignor herein shall automatically be revoked, and Assignee shall immediately be entitled to possession of all Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, whether or not Assignee enters upon or takes control of the Mortgaged Property. Assignee is hereby granted and assigned by Assignor the right, at its option, upon revocation of the license granted herein, to enter upon the Mortgaged Property in person, by agent or by court-appointed receiver to collect the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims. Any Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims collected after the revocation of the license may be applied toward payment of the Debt in such priority and proportions as Assignee in its discretion shall deem proper.

2. **REMEDIES OF ASSIGNEE.** (a) Upon or at any time after an Event of Default, Assignee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Mortgaged Property and have, hold, manage, lease and operate the Mortgaged Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Mortgaged Property in its own name, demand, sue for or otherwise collect and receive all Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee and may apply the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Mortgaged Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem necessary or desirable and all expenses of operating and maintaining the Mortgaged Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Assignee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Mortgaged Property; and (b) the Debt, together with all costs and attorneys' fees. In addition to the rights which Assignee may have herein, upon the occurrence of an Event of Default, Assignee, at its option, may either require Assignor to pay monthly in advance to Assignee, or any receiver appointed to collect the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be in possession of Assignor or may require Assignor to vacate and surrender possession of the Mortgaged Property to Assignee or to such receiver and, in default thereof, Assignor may be evicted by summary proceedings or otherwise. Assignee shall be entitled to require that all payments due under any Lease, including, without limitation, all rental payments under any Lease, be paid directly to a lockbox account designed by Assignee. For purposes of this paragraph 2, Assignor grants to Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Mortgaged Property. The exercise by Assignee of the option granted it in this paragraph 2 and the collection of the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Mortgage, the Leases, this Assignment or the Other Security Documents.

3

BOOK 2919 PAGE 121

(b) Upon or at any time after the occurrence of an Event of Default, Assignee shall have the right in its own name or in the name of Assignor in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Assignor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(c) If there shall be filed by or against Assignor a petition under the Bankruptcy Code, and Assignor, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Assignor shall give Assignee not less than ten (10) days' prior notice of the date on which Assignor shall apply to the bankruptcy court for authority to reject the Lease. Assignee shall have the right, but not the obligation, to serve upon Assignor within such ten-day period a notice stating that (i) Assignee demands that Assignor assume and assign the Lease to Assignee pursuant to Section 365 of the Bankruptcy Code and (ii) Assignee covenants to cure or provide adequate assurance of future performance under the Lease. If Assignee serves upon Assignor the notice described in the preceding sentence, Assignor shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Assignee of the covenant provided for in clause (ii) of the preceding sentence.

3. NO LIABILITY OF ASSIGNEE. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Mortgaged Property after an Event of Default or from any other act or omission of Assignee in managing the Mortgaged Property after default unless such loss is caused by the willful misconduct or bad faith of Assignee. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured hereby and by the Mortgage and the Other Security Documents and Assignor shall reimburse Assignee therefor immediately upon demand and upon the failure of Assignor so to do Assignee may, at its option, declare all sums secured hereby and the Mortgage and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Mortgaged Property by the tenants or any other parties, or for any dangerous or defective condition of the Mortgaged Property, including, without limitation, the presence of any Hazardous Materials (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

4. NOTICE TO LESSEES. Assignor hereby authorizes and directs the lessees named in the Leases or any other or future lessees or occupants of the Mortgaged Property upon receipt from Assignee of written notice to the effect that Assignee is then the holder of the Mortgage and that a default exists thereunder or under this Assignment, the Note or the Other Security Documents to pay over to Assignee all Rents and all sums under any Lease Guaranty and to continue so to do until otherwise notified by Assignee.

5. OTHER SECURITY. Assignee may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

6. OTHER REMEDIES. Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, the Mortgage, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the Debt and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

334170.1/2281.3846

4

BOOK 2919 PAGE 122

7. **NO MORTGAGEE IN POSSESSION.** Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

8. **CONFLICT OF TERMS.** In case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms of the Mortgage shall prevail.

9. **NO ORAL CHANGE.** This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

10. **CERTAIN DEFINITIONS.** Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Mortgaged Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage and all other sums due pursuant to the Note, the Mortgage, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

11. **NON-WAIVER.** The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Assignor shall not be relieved of Assignor's obligations hereunder by reason of (i) failure of Assignee to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Mortgage, the Note or the Other Security Documents, (ii) the release regardless of consideration, of the whole or any part of the Mortgaged Property, or (iii) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Mortgage or the Other Security Documents. Assignee may resort for the payment of the Debt to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect. Assignee may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment. The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

12. **INAPPLICABLE PROVISIONS.** If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

13. **DUPLICATE ORIGINALS.** This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

14. **GOVERNING LAW.** This Assignment shall be governed and construed in accordance with the laws of the State of Georgia.

15. **TERMINATION OF ASSIGNMENT.** Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Mortgage duly executed by Assignee, this Assignment shall become and be void and of no effect.

16. **TRANSFER BY ASSIGNEE.** No consent by Assignor shall be required for any assignment or reassignment of the rights of Assignee under this Assignment. All references to "Assignee" hereunder shall be deemed to include the assigns of Assignee.

334170.1/3287.2846

5

BOOK 2919 PAGE 123

17. EXCULPATION. (a) Subject to the provisions of this paragraph 17, and notwithstanding any other provision in the Note, this Assignment or any of the Other Security Documents, the personal liability of Assignor, and of any general partner of Assignor, to pay the Debt shall be limited to (i) the Mortgaged Property, and (ii) the Rents, including any Rents received or collected by or on behalf of Assignor after an Event of Default, except to the extent that Assignor did not have the legal right, because of a bankruptcy, receivership or similar judicial proceeding, to direct the disbursement of such sums.

(b) Except as provided in this paragraph 17, Assignee shall not seek (i) any judgment for a deficiency against Assignor, any general partner of Assignor, or Assignor's heirs, legal representatives, successors or assigns, in any action to enforce any right or remedy under this Assignment, or (ii) any judgment on the Note except as may be necessary in any action brought under this Assignment to enforce the lien against the Mortgaged Property. No provision of this paragraph shall (i) affect any guaranty or similar agreement executed in connection with the debt evidenced by the Note, (ii) release or reduce the debt evidenced by the Note, or (iii) impair the lien of the Mortgage.

(c) Assignor, and any general partner of Assignor, shall be personally liable in the amount of any loss, damage or cost resulting from (i) fraud or intentional misrepresentation by Assignor, or any person or entity employed by or an agent of Assignor, in connection with obtaining the loan evidenced by the Note, (ii) insurance proceeds, condemnation awards, or other sums or payments attributable to the Mortgaged Property not applied in accordance with the provisions of this Assignment, except to the extent that Assignor did not have the legal right, because of a bankruptcy, receivership, or similar judicial proceeding, to direct disbursement of such sums or payments, (iii) all Rents received following any Event of Default under the Note or this Assignment and not applied to payment of principal and interest due under the Note (including any such Rents received or collected by or on behalf of Assignor after an Event of Default, except to the extent that Assignor did not have the legal right, because of a bankruptcy, receivership or similar judicial proceeding, to direct the disbursement of such Rents), and payments of utilities, taxes and assessments and insurance on the Mortgaged Property, as they become due or payable, (iv) Assignor's failure to pay transfer fees and charges due Assignor under the Note or this Assignment in connection with any transfer of all or any part of the Mortgaged Property, or any interest therein, to the extent permitted herein by Assignee, from Assignor to Assignor's transferee, or transfer of beneficial interest in Assignor (if Assignor is not a natural person or persons but is a corporation, partnership, trust or other legal entity), (v) a default by Assignor under paragraph 32 of the Mortgage, (vi) failure to pay any recording taxes or documentary stamps or other charges required in connection with the Mortgage, (vii) misapplication or misappropriation of Rents or security deposits collected in advance, (viii) the inability of Assignee to enforce the Collateral Assignment of Leases and Rents executed by Assignor in favor of Assignee with regard to the Mortgaged Property; provided, however, if a court of competent jurisdiction declares the Collateral Assignment of Rents and Leases to be unenforceable, this subsection shall not be enforceable by Assignee; (ix) subject to all applicable cure provisions, including, without limitation, cure periods for cure of non-monetary defaults, failure of Assignor to comply with all provisions of the Note, the Mortgage or Other Security Documents regarding delivery of financial or operating statements, (x) Assignor's violation of Paragraph 9 or 51 of the Mortgage, (xi) Assignor's failure to maintain the Mortgaged Property, (xii) Assignor's failure to restore and replace personal property at the Mortgaged Property, and (xiii) Assignor's commission of waste or arson at the Mortgaged Property.

(d) No provision of this paragraph shall (i) affect any guaranty or similar agreement executed in connection with the debt evidenced by the Note, (ii) release or reduce the debt evidenced by the Note, or (iii) impair the lien of this Assignment.

18. NOTICES. All notices or other written communications hereunder shall be deemed to have been properly given (i) upon delivery, if delivered in person or by facsimile transmission with receipt acknowledged by the recipient thereof, (ii) one (1) Business Day (defined below) after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

BOOK 2919 PAGE 124

|  |  |
|---|---|
| If to Assignor: | N. K. C. Properties<br>1716 Cleveland Highway<br>Dalton, Georgia 30720<br>Attention: William D. Combs<br>Facsimile No. _____ |
| With a copy to: | Coppedge, Leman and Ward<br>508 South Thornton Avenue<br>Dalton, Georgia 30720<br>Attention: J. Tracy Ward, Esq.<br>Facsimile No. (706) 226-5545 |
| If to Assignee: | Main America Capital, L.C.<br>800 Mt. Vernon Highway, Suite 120<br>Atlanta, Georgia 30328-4225<br>Attention: Richard C. Warner<br>Facsimile No. (770) 522-4924 |
| With a copy to: | Glass, McCullough, Sherrill & Harrold, LLP<br>1409 Peachtree Street, N.E.<br>Atlanta, Georgia 30309<br>Attention: Patrick J. Clarke, Esq.<br>Facsimile No. (404) 885-6694 |

or addressed as such party may from time to time designate by written notice to the other parties.

Either party by notice to the other may designate additional or different addresses for subsequent notices or communications.

For purposes of this Subsection, "Business Day" shall mean a day on which commercial banks are not authorized or required by law to close in Atlanta, Georgia.

19. **WAIVER OF TRIAL BY JURY.** ASSIGNOR HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THE NOTE, THE MORTGAGE, OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF ASSIGNEE, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

20. **COSTS.** In the event it should become necessary for Assignee to employ legal counsel to collect the Debt or enforce Assignee's rights under this Assignment, Assignor agrees to pay all reasonable fees and expenses of Assignee including, without limitation, reasonable attorney's fees for the services of such counsel whether or not suit be brought.

21. **DECISIONS OF ASSIGNEE.** Whenever Assignee is entitled to make a decision hereunder, Assignee shall be entitled to make the decision in its discretion.

THIS ASSIGNMENT, together with the covenants and warranties therein contained, shall inure to the benefit of Assignee and any subsequent holder of the Mortgage and shall be binding upon Assignor, his heirs, executors, administrators, successors and assigns and any subsequent owner of the Mortgaged Property.

334170.1/2207.2846

7

BOOK 2919 PAGE 125

IN WITNESS WHEREOF, Assignor has executed this instrument the day and year first above written.

"ASSIGNOR":

Signed, sealed and delivered
in the presence of:

N. K. C. PROPERTIES, a Georgia general partnership

By: _____
William D. Combs, Authorized General Partner

_____
Unofficial Witness

_____
Notary Public

[NOTARY SEAL]
STATE OF GEORGIA
COUNTY OF WHITFIELD

VIRGINIA ALLISON
Notary Public, Whitfield County, Georgia
My Commission Expires June 7, 2001

FILED & RECORDED
TIME: 9:30
DATE: 12-19-97
DEED BOOK: 2919
PAGE: 118-126
BETTY NELSON, C.S.C.
WHITFIELD COUNTY, GA

334170.1/2207.2846

BOOK 2919 PAGE 126

### EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lots 88 and 89 of the 12th District and 3rd Section of Whitfield County, Georgia, as per a plat prepared by Joseph R. Evans, Georgia Registered Land Surveyor No. 2168, dated September 5, 1997, and revised November 10, 1997, and being more particularly described as follows:

**TO FIND THE TRUE POINT OF BEGINNING** begin at a right-of-way marker located at the intersection of the southerly side of the 50 foot right-of-way along Pleasant Hills Drive and the westerly side of the 100 foot right-of-way along Georgia Highway No. 71 a/k/a Cleveland Highway; thence proceed across said 100 foot right-of-way South 38 degrees 24 minutes East a distance of 133.57 feet to an iron pin located on the easterly side of the 100 foot right-of-way along Georgia Highway No. 71 a/k/a Cleveland Highway; thence continuing along the easterly right-of-way of Georgia Highway No. 71, North 10 degrees 12 minutes East 193.61 feet to an iron pin and the **TRUE POINT OF BEGINNING**; thence along the east side of the 100 foot right-of-way of Georgia Highway No. 71 a/k/a Cleveland Highway, North 10 degrees 12 minutes East 352.39 feet to an iron pin; thence South 79 degrees 48 minutes East 185.0 feet to an iron pin; thence North 10 degrees 12 minutes East 185.0 feet to an iron pin on the south right-of-way of N.K.C. Drive (80 foot right-of-way); thence along said right-of-way, South 79 degrees 48 minutes East 545.82 feet to an iron pin; thence North 10 degrees 12 minutes East 15.0 feet to an iron pin on the south right-of-way of N.K.C. Drive; thence along said right-of-way, South 79 degrees 48 minutes East 38.47 feet to an iron pin; thence continuing along the curvature of said south right-of-way in an easterly direction along the arc of a 225.00 foot radius curve an arc distance of 62.32 feet with a chord bearing of South 87 degrees 44 minutes East with a chord distance of 62.12 feet to an iron pin; thence South 10 degrees 12 minutes West 655.08 feet to an iron pin; thence North 90 degrees 0 minutes West 661.96 feet to an iron pin; thence North 10 degrees 12 minutes East 145.83 feet to an iron pin; thence North 34 degrees 48 minutes West 49.50 feet to an iron pin; thence North 79 degrees 48 minutes West 112.95 feet to an iron pin; thence South 68 degrees 21 minutes 17 seconds West 36.93 feet to the **TRUE POINT OF BEGINNING**.